# EXHIBIT 1

Contains Highly Confidential - Attorneys' Eyes Only  Portions

```
                                                            Page 1
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                       --o0o--
 4   APPLE INC., a California
     corporation,
 5
                      Plaintiff,
 6
                 Vs.              Case No. 11-CV-01846-LHK
 7
     SAMSUNG ELECTRONICS CO., LTD.,
 8   a Korean business entity;
     SAMSUNG ELECTRONICS AMERICA,
 9   INC., a New York corporation;
     SAMSUNG TELECOMMUNICATIONS
10   AMERICA, LLC, a Delaware
     limited liability company,
11
                      Defendants.
12   _____/
13
14        VIDEOTAPED DEPOSITION OF COOPER WOODRING
15             Redwood Shores, California
16               Friday, August 5, 2011
17        (HIGHLY CONFIDENTIAL ATTORNEYS' EYES
              ONLY PORTIONS BOUND SEPARATELY)
18
19   Reported By:  CAROL S. NYGARD, CSR No. 4018
                    Registered Merit Reporter
20
21
22
23
24
25
```

Contains Highly Confidential - Attorneys' Eyes Only  Portions

Page 206

1   at all with your reliance upon market research from the
2   1986 and earlier time period from J.C. Penney in order
3   to reach your opinions in this case in lieu of any
4   market research undertaken in the course of the last
5   decade concerning smartphones and tablet computers;
6   right?
7           MR. MONACH:  Object to form.
8           THE WITNESS:  No, I don't find it unusual at
9   all in that all of this -- the whole consumer research
10  issue that we're discussing is all targeted toward what
11  a hypothetical ordinary observer might think.
12          So in that context I don't --
13          No, I don't think the it's unusual at all.
14          I think it's probably highly reliable.
15          MR. ZELLER:  Let's please mark as Exhibit 67 a
16  one-page document consisting of a design.
17          (Exhibit 67 was marked for Identification.)
18          MR. ZELLER:  Just so you know -- yeah, this is
19  the top part, the speaker hole.
20  BY MR. ZELLER:
21      Q.   Do you know what Exhibit 67 depicts?
22      A.   I could surmise it's a smartphone.
23      Q.   In your view is the design that's depicted
24  here on Exhibit 67 substantially the same as the design
25  that's depicted in Exhibit 6, which is the 087 design

Page 207

1  patent?
2          MR. MONACH:  Object to the form of the
3  question.  Vague, and incomplete hypothetical.  Calling
4  for a legal conclusion without providing the required
5  information or adequate time.
6          But the witness can respond.
7          THE WITNESS:  Ask the question again.
8          Did I think it was what?
9  BY MR. ZELLER:
10      Q.   Do you believe that the design that's
11  reflected here on Exhibit 67 is substantially the same
12  from the perspective of the ordinary observer or
13  purchaser as the design that's depicted in the 087
14  design patent which is Exhibit 6?
15          MR. MONACH:  Same objection.
16          THE WITNESS:  Yes, it certainly is --
17  substantially the same in the eyes of the ordinary
18  observer of at least one embodiment of the 087.
19  BY MR. ZELLER:
20      Q.   And you would agree that it is also
21  substantially the same from the perspective of the
22  ordinary purchaser or observer as the design that's
23  depicted in Exhibit 7, which is the 677 design patent;
24  correct?
25          MR. MONACH:  Same objection.

Contains Highly Confidential - Attorneys' Eyes Only Portions

Page 208

1                THE WITNESS:  Probably.
2                I -- I can't answer that question
3      definitively, because the 677 claims the front surface
4      of an electronic device that is black, and the Exhibit
5      67 that you've shown me, there's no indication that the
6      front surface is black.
7      BY MR. ZELLER:
8         Q.    Well, let me rephrase it then.
9                Directing your attention to the design that's
10     reflected here in Exhibit 67, setting aside the color
11     limitation that's set forth in the 677 design patent, do
12     you believe that the ordinary observer or purchaser
13     would consider the overall design, again, saying aside
14     the color, of the design in Exhibit 67 to be
15     substantially the same as the design depicted in the 677
16     design patent?
17               MR. MONACH:  Object to the form of the
18     question.
19               Object for the reasons previously stated.
20               THE WITNESS:  Yeah, they're -- they're
21     substantially the same.
22     BY MR. ZELLER:
23        Q.    And specifically the -- the design that's
24     reflected here in Exhibit 67, you'll agree, has a -- has
25     a speaker slot that's smaller and more near the top than

Page 211

1      MR. ZELLER:  No, you can have a standing
2  objection.
3      MR. MONACH:  I'll say "objection," but it
4  includes all the elements previously stated.
5      MR. ZELLER:   Understood.  I appreciate that.
6      MR. MONACH:  Okay.
7      MR. ZELLER:  I'll absolutely agree that you
8  have a standing objection, as well that that's an
9  appropriate shorthand.
10     MR. MONACH:  Okay.
11     THE WITNESS:  If we assume that what I had
12  previously characterized in my declaration -- I called
13  them the "major design elements" that are listed on the
14  top of page 5, the A, B, C, D, if those major design
15  elements that conspicuously depart from the prior art
16  are considered not limited to those, but considered and
17  in combination, no, the -- the movement of that little
18  slot quarter of an inch one way or another is not -- not
19  going to make it a different design.
20  BY MR. ZELLER:
21     Q.   Let me --
22          In fact, maybe we can -- do this a little bit
23  more efficiently then by relying on your declaration.
24          Directing your attention to paragraph 16 of
25  your declaration, as you mention -- you lay out what you

Page 212

1  consider to be the four major design elements of the 677
2  design patent; right?
3      A.    Right.
4      Q.    And in your view all the elements that are
5  listed there in that paragraph under A through D are
6  present in the 6 -- in the design that we've marked as
7  Exhibit 67?
8      A.    Well, you've already testified we can't tell.
9  I can't tell if this is black, for example.
10     Q.    Well, okay.
11           Then setting aside the black portion of it, do
12 you agree that all the other --
13     A.    Well --
14     Q.     -- what you call "major design elements" that
15 listed here in A through D are present in the design we
16 marked as Exhibit 67?
17          MR. MONACH:  Objection.  Lack of foundation.
18 Vague.
19          Incomplete hypothetical in light of the
20 witness' prior testimony that he can't tell what this
21 is.
22          Go ahead.
23          THE WITNESS:  I -- it's an analysis I haven't
24 made previously, so let me attempt to answer your
25 question, and it appears --

Contains Highly Confidential - Attorneys' Eyes Only  Portions

Page 213

1         Although, again, I can't tell if it's flat, I
2    can't tell if it's clear, I can't tell if it's
3    black-colored.
4         I can tell that it's a rectangular front
5    surface with four evenly rounded corners.
6         I can't tell if it has an inset rectangular
7    display screen.
8         I can tell if it's centered on the front
9    surface, and that it leaves very narrow borders on
10   either side of the display screen and substantial
11   borders above and below the display screen.
12        I can tell that it has a rounded horizontal
13   speaker slot centered on the front surface above the
14   display screen, and I can tell that where the
15   rectangular front surface is otherwise substantially
16   free of ornamentation outside of an optional button area
17   centrally below the display.
18        So, if it has most of those major visual
19   characteristics, excusing the ones that we can't make a
20   determination about, then I would have to conclude that
21   it's substantially the same in the eyes of the ordinary
22   observer.
23   BY MR. ZELLER:
24     Q.    And just to make sure I heard everything that
25   you said here, the -- you agree that the major design

Page 214

1    elements that you list in paragraph 16 in A through D
2    are all present in the design that we marked as Exhibit
3    67 except for the part where it says a flat clear black
4    color, those elements you're not sure about, but the
5    rest of them you do see there?
6        A.   No.  I didn't say that.
7             MR. MONACH:  Objection.  Mischaracterizes
8    prior testimony.
9    BY MR. ZELLER:
10       Q.   What are the other ones you can't tell then?
11            That's why I want to make sure I heard you
12   correctly.
13       A.   Apparently you didn't.
14            In B it's impossible to tell from this that it
15   has an inset rectangular display screen.
16       Q.   So you don't know whether it's inset or not,
17   you can see it's a rectangular display screen that's
18   centered on the front surface?
19       A.   It could be protruding.
20       Q.   So --
21            But the rest of it you do agree is present in
22   the design that's Exhibit 67 except for the inset part
23   in B?
24       A.   Yes.
25       Q.   So, again, just --

Contains Highly Confidential - Attorneys' Eyes Only Portions

Page 279

1    A.    I don't know if I need a copy or not because I
2  don't know what you're going to ask.
3         MR. MONACH:  Well, why don't you give it to
4  him so he doesn't have to try to find it in a binder
5  with exhibits.
6         MS. BUCHAKJIAN:  There you go.
7         MR. MONACH:  Thank you.
8  BY MR. ZELLER:
9    Q.    The 889 design patent, which has been
10 previously marked as Exhibit 8, is a design patent that
11 you reviewed previously and you offered an opinion about
12 in your declaration; correct?
13   A.    Yes, that is correct.
14   Q.    Directing your attention to Figure 3 of the
15 889 design patent, you see that there are those diagonal
16 lines on the -- the surface?
17   A.    Yes, I see that.
18   Q.    What's your understanding of what those
19 depict?
20   A.    Those are described in the MPEP as being
21 oblique line shading and that indicates that that
22 surface is flat and clear, or at least translucent.
23   Q.    And you understand that in the figures in the
24 087 design patent anyway, those diagonal lines don't
25 appear; right?

Page 280

1   A.   Is that -- that's correct.
2   Q.   Which is why, when you were saying earlier
3   there's some ambiguity, at least with respect to just
4   the drawings, it's because it doesn't have those
5   diagonal lines; right?
6   A.   That's correct, but the description clarifies
7   it.
8   Q.   Now, you recognize that the 889 design patent
9   was -- was issued as of May 10th, 2005; right?
10  A.   Yep.
11  Q.   And so you'll certainly agree with me that by
12  that time the art taught having a clear continuous
13  surface on the front of an electronic device; correct?
14  A.   Yes.
15  Q.   Whether that was taught some time before that
16  you can't be sure, but you certainly know that by this
17  time that was something the art had taught; right?
18  A.   It was known.
19  Q.   Directing your attention to the 889 design
20  patent, Exhibit 8, in your view are portions of the
21  design that's depicted here significant to the ordinary
22  observer or purchaser?
23       MR. MONACH:  Objection.  Vague.  Incomplete
24  hypothetical.
25       THE WITNESS:  Well, when you say "are they

Contains Highly Confidential - Attorneys' Eyes Only Portions

Page 281

1    important," I -- you know, it begs the question,
2    compared to what?
3              I would say that they're reasonably important,
4    yes.
5    BY MR. ZELLER:
6        Q.   And would you agree that the proportions of
7    the designs that are depicted in the other two design
8    patents, the 087 design patent and the 677 design
9    patent, are important from the perspective of the
10   ordinary observer or purchaser?
11             MR. MONACH:  Objection.  Vague.  Incomplete
12   hypothetical.
13             THE WITNESS: Yeah, reasonably so.
14   BY MR. ZELLER:
15       Q.   You describe one feature of the 889 design --
16   design patent as -- that it -- it's -- has a thin
17   profile; right?
18       A.   Well, I called it a thin -- thin form factor,
19   but I -- you can substitute "profile."
20             That's fine with me.
21       Q.   Directing your attention to Figures 5 through
22   8 of the 889 design patent, you consider that to be
23   thin?
24       A.   Yes, I do.
25       Q.   Do you consider the profile depicted here in


