# EXHIBIT 39

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4    APPLE INC., a California
     corporation,

5
               Plaintiff,              Case No.

6
       vs.                             11-CV-01846-LHK

7

     SAMSUNG ELECTRONICS CO., LTD.,

8    a Korean business entity;
     SAMSUNG ELECTRONICS AMERICA,

9    INC., a New York corporation;
     SAMSUNG TELECOMMUNICATIONS

10   AMERICA, LLC, a Delaware
     limited liability company,

11
               Defendants.

12

13

14

15     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16

17     VIDEOTAPED DEPOSITION OF RICHARD HOWARTH

18            San Francisco, California

19            Monday, October 31, 2011

20

21

22

23   REPORTED BY:

24   CYNTHIA MANNING, CSR No. 7645, CLR, CCRR

25   JOB NO. 43007

Highly Confidential - Attorneys' Eyes Only

Page 91

1    tablet designs that you worked on there for Apple.

2           Is there -- is there an area that, on the

3    front face of the tablet computer devices that you

4    worked on, that you understood to include a border

5    or mask area?

6           MR. MONACH:  Objection; vague and

7    compound.

8           THE WITNESS:  Yeah, I'm sorry.

9           Could you repeat the question?

10          MR. ZELLER:  Yes.  If you could read it

11   back, please.

12          (Whereupon the reporter read the record

13          as follows:

14          "Question:  Is there an area that, on the

15          front face of the tablet computer devices

16          that you worked on, that you understood

17          to include a border or mask area?")

18          MR. MONACH:  And I objected; vague and

19   compound.

20          THE WITNESS:  Sometimes some people refer

21   to -- or I refer to the area around the display as

22   a border.

23   BY MR. ZELLER:

24      Q.  But in general, you don't think that

25   those terms are precise enough or clear enough

Highly Confidential - Attorneys' Eyes Only

Page 92

1    that you could be -- you'd be able to say it's

2    really definite; right?

3              MR. MONACH:  Objection; vague and

4    ambiguous.

5              THE WITNESS:  I don't know what other

6    people think.

7    BY MR. ZELLER:

8        Q.  Well, I'm not asking about what other

9    people think.  I'm asking you.

10             Do you think that the word "border" or

11   "mask" is a clear term to you as to what it is

12   referring to in the context of tablet computer

13   designs that Apple has made?

14             MR. MONACH:  Objection; vague and

15   ambiguous, both a compound and incomplete

16   hypothetical.

17             THE WITNESS:  It could be.

18   BY MR. ZELLER:

19       Q.  I'm going to show you what was previously

20   marked as Exhibit 8, which for the record is

21   United States Design Patent 504,889.

22             And please let me know when you've had an

23   opportunity to review the '889 design patent.

24       A.  (Witness reviewing document.)

25             Okay.

Highly Confidential - Attorneys' Eyes Only

1      Q.   You're named as an inventor of the '889

2   design?

3      A.   I was one of the industrial design team

4   that worked on this product.

5      Q.   Looking at the drawings, these figures

6   that are in the '889 design patent, do any of

7   those drawings show what you, in your view --

8   well, I'm sorry.  Let me rephrase it.

9           Directing your attention to the figures

10  and drawings in the '889 design patent.

11          Do any of those drawings show a mask

12  area?

13          MR. MONACH:  Objection; lack of

14  foundation.  Objection; compound.  Objection;

15  calls for a legal conclusion by a nonlawyer

16  witness.

17          THE WITNESS:  I'm not a patent lawyer.

18  BY MR. ZELLER:

19     Q.   I'm not asking you as a patent lawyer.

20  I'm asking you as an inventor of the '889 design

21  patent.

22          Do any of the drawings or figures in the

23  '889 design patent depict a mask area?

24          MR. MONACH:  Same objection; lack of

25  foundation --

Highly Confidential - Attorneys' Eyes Only

Page 94

1          THE WITNESS:  As --

2          MR. MONACH:  Hang on a second.

3          Lack of foundation.  Objection, to the

4    extent it calls for a legal conclusion.

5          THE WITNESS:  As an industrial designer,

6    and not a patent lawyer, it isn't clear to me that

7    there is an area here that is definitely a mask or

8    border.

9    BY MR. ZELLER:

10       Q.  Directing your attention to Figure 1.

11       A.  Yes.

12       Q.  You'll see that on the interior of

13   Figure 1, that there is a rectangular line.

14          Do you see that?

15       A.  I see a dotted line.

16       Q.  Do you know, is that -- is that a broken

17   line?

18          MR. MONACH:  Objection; lack of

19   foundation.  Under the Best Evidence Rule the

20   document speaks for itself.  Vague.

21          THE WITNESS:  It looks like a dotted

22   line.  It looks like an inconsistent dotted line.

23   BY MR. ZELLER:

24       Q.  Do you know why it's in that form?  Do

25   you have an understanding?

Highly Confidential - Attorneys' Eyes Only

Page 95

1          MR. MONACH:  Objection; lack of

2     foundation.

3          And let me just caution you.  I'm not

4     saying you did have any such communications, but I

5     don't want you, in answering any of these

6     questions, to reveal any attorney-client

7     communications.

8          THE WITNESS:  Okay.  I'm not exactly sure

9     what that rectangle is depicting.

10    BY MR. ZELLER:

11       Q.  Do you know if that dotted line that you

12    were talking about that's in that rectangular

13    shape on the interior of Figure 1 has some

14    relationship to separating the active area of the

15    display from the mask or nonactive areas of the

16    display?

17          MR. MONACH:  Objection; lack of

18    foundation, calls for speculation.  Object, to the

19    extent it's asking for a legal conclusion.

20          THE WITNESS:  I'm not sure what that line

21    represents.

22    BY MR. ZELLER:

23       Q.  And I take it you don't have an

24    understanding as to whether or not that particular

25    line, this rectangular line on the interior of

Highly Confidential - Attorneys' Eyes Only

1    Figure 1 that's dotted, is part of the claimed

2    design here?

3              MR. MONACH:  Objection; lack of

4    foundation.  Objection, to the extent it calls for

5    a legal conclusion.

6              THE WITNESS:  I'm not sure what that line

7    represents.

8    BY MR. ZELLER:

9         Q.  Directing your attention to Figure 2 of

10   the '889 design patent.

11             You'll see that there are three sets of

12   diagonal lines on the interior of this.

13        A.  Yes.

14        Q.  And then directing your attention to

15   Figure 4.

16             You'll see that it doesn't have those

17   diagonal lines.

18        A.  Okay.

19        Q.  Do you see that?

20        A.  Yes, I see that.

21        Q.  Do you have any understanding or

22   explanation as to why those diagonal lines don't

23   appear in Figure 4 but they do appear in Figure 2?

24             MR. MONACH:  Objection; lack of

25   foundation.  Objection, to the extent it calls for

Highly Confidential - Attorneys' Eyes Only

1  a legal conclusion.

2          THE WITNESS:  I'm not sure why those

3  lines are in one view and not in another.

4  BY MR. ZELLER:

5      Q.  Do you know if the design that's shown

6  here in the '889 design patent is showing a back

7  surface or bottom surface that is flat and clear?

8          MR. MONACH:  Same objection; lack of

9  foundation.  Object, to the extent it calls for a

10  legal conclusion.

11          THE WITNESS:  I'm not sure what that is

12  depicting.

13  BY MR. ZELLER:

14      Q.  Is the design that's shown here in the

15  '889 design patent, by your understanding, does

16  it -- well, I'm sorry.  Let me rephrase that.

17          Directing your attention to the '889

18  design patent.

19          In your view, as an inventor and a

20  designer, does this design show a clear front

21  surface of the device?

22          MR. MONACH:  Objection; lack of

23  foundation.  Objection, to the extent it calls for

24  a legal conclusion.

25          You can give your understanding, if you

Highly Confidential - Attorneys' Eyes Only

1    the device that's shown there is -- from the

2    orientation of the individual holding it -- is

3    somewhat wedge-shaped, or it tapers?

4         MR. MONACH:  Objection; mischaracterizes

5    the evidence, assumes facts not in evidence,

6    argumentative.

7    BY MR. ZELLER:

8         Q.  Do you see that?

9         MR. MONACH:  Object, to the extent it

10   calls for a legal conclusion.

11        THE WITNESS:  I see what you're referring

12   to.  I see it's an object that the guy is holding.

13   BY MR. ZELLER

14        Q.  Well, from the perspective of the guy

15   whose holding it --

16        A.  Yes.

17        Q.  -- how would you describe the shape of

18   the top of the device?

19        A.  What --

20        MR. MONACH:  Objection; vague and

21   ambiguous.  Object, to the extent it calls for a

22   legal conclusion.

23        THE WITNESS:  What are you referring to

24   as "the top"?

25   //

Highly Confidential - Attorneys' Eyes Only

Page 100

1   BY MR. ZELLER:

2       Q.   The top, from the orientation of the

3   individual holding it, which would be your right.

4           MR. MONACH:   Objection.   Objection;

5   vague.

6   BY MR. ZELLER:

7       Q.   If you could hand me your copy.

8       A.   Okay.

9           MR. ZELLER:   Let's please mark as Exhibit

10  1132 a copy of the '889 design patent with a

11  marking that I'm about to give it.   It will be an

12  arrow consisting of an X on Figure 9, and then two

13  arrows with the Figure X, Label X, in Figure 2.

14           (Deposition Exhibit 1132 was marked for

15           identification)

16  BY MR. ZELLER:

17      Q.   So directing your attention to Figure 2.

18      A.   Okay.

19      Q.   You'll see that what I did there is, I

20  put two arrows with the Label X on there.

21      A.   Mm-hmm.

22      Q.   And you'll see that those portions, those

23  sides, appear to taper, or narrow?

24           MR. MONACH:   Object to the form of the

25  question as mischaracterizing the evidence;

1   assumes facts not in evidence.

2       THE WITNESS:  To me, it looks like a

3   slightly perspective drawing of a rectangular

4   object.

5   BY MR. ZELLER:

6       Q.  Do you have an understanding as to

7   whether or not those lines taper because of

8   perspective or because the design that is being

9   communicated here has tapering sides?

10      A.  I couldn't say for certain.  To me

11  personally, as an industrial designer, it looks to

12  me like they're tapering because of perspective.

13      Q.  And in your view, is that an accurate

14  perspective?

15      MR. MONACH:  Objection; vague and

16  ambiguous.

17      THE WITNESS:  I don't know about an

18  accurate perspective.  It looks, perhaps, like

19  that's what was intended.

20  BY MR. ZELLER:

21      Q.  And if I asked you the same questions

22  about that edge that I labeled as X in Figure 9,

23  you'd give me the same answers?

24      MR. MONACH:  Objection, to the extent it

25  calls for a legal conclusion.  But you can give

Highly Confidential - Attorneys' Eyes Only

1    BY MR. ZELLER:

2        Q.   And from your perspective, is that -- is

3    that an accurate depiction of perspective?

4            MR. MONACH:  Objection; lack of

5    foundation, incomplete hypothetical.  Objection;

6    vague.

7            THE WITNESS:  Yes, it could be.

8    BY MR. ZELLER:

9        Q.   Can you say with any certainty if it is?

10           MR. MONACH:  Same objection.

11           THE WITNESS:  I can't say with any

12   certainty without -- whether that's an absolutely

13   accurate perspective view.  But it looks okay.  It

14   looks possible.

15   BY MR. ZELLER:

16       Q.   You'll see also in Figure 9 that there is

17   a portion of it that has a thicker, darker line

18   that runs around the perimeter of the front.

19           Do you see that?

20       A.   Yes, I see that.

21       Q.   What does that depict?

22           MR. MONACH:  Objection; lack of

23   foundation.  Object, to the extent it calls for a

24   legal conclusion.

25           THE WITNESS:  It's unclear to me exactly

Highly Confidential - Attorneys' Eyes Only

1    what that is trying to depict.

2    BY MR. ZELLER:

3        Q.  Does it depict a gap or a groove?

4            MR. MONACH:  Same objection; lack of

5    foundation.  Objection, to the extent it calls for

6    a legal conclusion.

7            THE WITNESS:  I'm not sure what that

8    precise detail is trying to depict.  But it looks

9    like the separation between two parts to me.  Not

10   the separation; it looks like the joint between

11   two parts.

12   BY MR. ZELLER:

13       Q.  And directing your attention to Figure 1,

14   you'll see that also at least on part of the

15   perimeter of this front surface there is a darker

16   line there as well, darker, thicker line?

17       A.  I see that.

18       Q.  And do you have an understanding as to

19   what that's depicting?

20           MR. MONACH:  Objection; lack of

21   foundation.  Object, to the extent it calls for a

22   legal conclusion.

23           THE WITNESS:  I couldn't tell you exactly

24   what that's trying to depict.

25   //

Highly Confidential - Attorneys' Eyes Only

1   BY MR. ZELLER:

2       Q.  Is that darker, thicker line depicting a

3   gap or a groove?

4           MR. MONACH:  Same objection.  Lack of

5   foundation, calls for a legal conclusion.

6           THE WITNESS:  In my opinion as an

7   industrial designer, it doesn't look like that's

8   trying to depict a groove or a gap.  It looks like

9   it's perhaps trying to show a radius or an

10  intersection of the rear housing, perhaps.

11  BY MR. ZELLER:

12      Q.  But you're not certain?

13          MR. MONACH:  Same objection.  Asked and

14  answered.

15          THE WITNESS:  I'm not certain.

16  BY MR. ZELLER:

17      Q.  You'll see that the date of this design

18  patent for filing -- and this is on the first

19  page --

20      A.  Okay.

21      Q.  -- in the middle of the first column,

22  March 17th, 2004.

23          Do you see that date there?

24      A.  Yes, I do.

25      Q.  Prior to March 17th, 2004, which is the

Highly Confidential - Attorneys' Eyes Only

Page 106

1    filing date of the '889 design patent, the Apple

2    design team was working on tablet computer devices

3    that had a gap or groove that ran on the perimeter

4    of the front of the device?

5            MR. MONACH:  Object to form.  Lack of

6    foundation.

7            THE WITNESS:  I don't recall.

8    BY MR. ZELLER:

9        Q.  You just don't recall one way or another?

10       A.  I don't recall.

11       Q.  Do you recall models that were shown

12   there internally at Apple during the time periods

13   when designers were working on the tablet

14   computers that had gaps or grooves on them?

15           MR. MONACH:  Objection; vague, lack of

16   foundation.

17           THE WITNESS:  There might have been.  I

18   don't recall precisely.

19   BY MR. ZELLER:

20       Q.  Do you recall generally that occurring at

21   some him point?

22           MR. MONACH:  Same objection.

23           THE WITNESS:  It might have been.

24   BY MR. ZELLER:

25       Q.  Let me try something a different way.

Highly Confidential - Attorneys' Eyes Only

Page 1

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4    APPLE INC., a California

     corporation,

5

             Plaintiff,              Case No.

6

       vs.                           11-CV-01846-LHK

7

     SAMSUNG ELECTRONICS CO., LTD.,

8    a Korean business entity;

     SAMSUNG ELECTRONICS AMERICA,

9    INC., a New York corporation;

     SAMSUNG TELECOMMUNICATIONS

10   AMERICA, LLC, a Delaware

     limited liability company,

11

             Defendants.

12

13

14

15     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16

17      VIDEOTAPED DEPOSITION OF RICHARD HOWARTH

18           San Francisco, California

19           Monday, October 31, 2011

20

21

22

23   REPORTED BY:

24   CYNTHIA MANNING, CSR No. 7645, CLR, CCRR

25   JOB NO. 43007

Highly Confidential - Attorneys' Eyes Only

1   tablet designs that you worked on there for Apple.

2         Is there -- is there an area that, on the

3   front face of the tablet computer devices that you

4   worked on, that you understood to include a border

5   or mask area?

6         MR. MONACH:  Objection; vague and

7   compound.

8         THE WITNESS:  Yeah, I'm sorry.

9         Could you repeat the question?

10        MR. ZELLER:  Yes.  If you could read it

11  back, please.

12        (Whereupon the reporter read the record

13        as follows:

14        "Question:  Is there an area that, on the

15        front face of the tablet computer devices

16        that you worked on, that you understood

17        to include a border or mask area?")

18        MR. MONACH:  And I objected; vague and

19  compound.

20        THE WITNESS:  Sometimes some people refer

21  to -- or I refer to the area around the display as

22  a border.

23  BY MR. ZELLER:

24     Q.  But in general, you don't think that

25  those terms are precise enough or clear enough

Highly Confidential - Attorneys' Eyes Only

1    that you could be -- you'd be able to say it's

2    really definite; right?

3            MR. MONACH:  Objection; vague and

4    ambiguous.

5            THE WITNESS:  I don't know what other

6    people think.

7    BY MR. ZELLER:

8       Q.  Well, I'm not asking about what other

9    people think.  I'm asking you.

10           Do you think that the word "border" or

11   "mask" is a clear term to you as to what it is

12   referring to in the context of tablet computer

13   designs that Apple has made?

14           MR. MONACH:  Objection; vague and

15   ambiguous, both a compound and incomplete

16   hypothetical.

17           THE WITNESS:  It could be.

18   BY MR. ZELLER:

19      Q.  I'm going to show you what was previously

20   marked as Exhibit 8, which for the record is

21   United States Design Patent 504,889.

22           And please let me know when you've had an

23   opportunity to review the '889 design patent.

24      A.  (Witness reviewing document.)

25           Okay.

Highly Confidential - Attorneys' Eyes Only

Page 93

1    Q.  You're named as an inventor of the '889

2  design?

3    A.  I was one of the industrial design team

4  that worked on this product.

5    Q.  Looking at the drawings, these figures

6  that are in the '889 design patent, do any of

7  those drawings show what you, in your view --

8  well, I'm sorry.  Let me rephrase it.

9        Directing your attention to the figures

10 and drawings in the '889 design patent.

11       Do any of those drawings show a mask

12 area?

13       MR. MONACH:  Objection; lack of

14 foundation.  Objection; compound.  Objection;

15 calls for a legal conclusion by a nonlawyer

16 witness.

17       THE WITNESS:  I'm not a patent lawyer.

18 BY MR. ZELLER:

19    Q.  I'm not asking you as a patent lawyer.

20 I'm asking you as an inventor of the '889 design

21 patent.

22       Do any of the drawings or figures in the

23 '889 design patent depict a mask area?

24       MR. MONACH:  Same objection; lack of

25 foundation --

Highly Confidential - Attorneys' Eyes Only

1          THE WITNESS:  As --

2          MR. MONACH:  Hang on a second.

3          Lack of foundation.  Objection, to the

4     extent it calls for a legal conclusion.

5          THE WITNESS:  As an industrial designer,

6     and not a patent lawyer, it isn't clear to me that

7     there is an area here that is definitely a mask or

8     border.

9     BY MR. ZELLER:

10         Q.  Directing your attention to Figure 1.

11         A.  Yes.

12         Q.  You'll see that on the interior of

13    Figure 1, that there is a rectangular line.

14         Do you see that?

15         A.  I see a dotted line.

16         Q.  Do you know, is that -- is that a broken

17    line?

18         MR. MONACH:  Objection; lack of

19    foundation.  Under the Best Evidence Rule the

20    document speaks for itself.  Vague.

21         THE WITNESS:  It looks like a dotted

22    line.  It looks like an inconsistent dotted line.

23    BY MR. ZELLER:

24         Q.  Do you know why it's in that form?  Do

25    you have an understanding?

Highly Confidential - Attorneys' Eyes Only

1       MR. MONACH:  Objection; lack of

2  foundation.

3       And let me just caution you.  I'm not

4  saying you did have any such communications, but I

5  don't want you, in answering any of these

6  questions, to reveal any attorney-client

7  communications.

8       THE WITNESS:  Okay.  I'm not exactly sure

9  what that rectangle is depicting.

10 BY MR. ZELLER:

11    Q.  Do you know if that dotted line that you

12 were talking about that's in that rectangular

13 shape on the interior of Figure 1 has some

14 relationship to separating the active area of the

15 display from the mask or nonactive areas of the

16 display?

17      MR. MONACH:  Objection; lack of

18 foundation, calls for speculation.  Object, to the

19 extent it's asking for a legal conclusion.

20      THE WITNESS:  I'm not sure what that line

21 represents.

22 BY MR. ZELLER:

23    Q.  And I take it you don't have an

24 understanding as to whether or not that particular

25 line, this rectangular line on the interior of

Highly Confidential - Attorneys' Eyes Only

1    Figure 1 that's dotted, is part of the claimed

2    design here?

3              MR. MONACH:   Objection; lack of

4    foundation.   Objection, to the extent it calls for

5    a legal conclusion.

6              THE WITNESS:   I'm not sure what that line

7    represents.

8    BY MR. ZELLER:

9         Q.   Directing your attention to Figure 2 of

10   the '889 design patent.

11             You'll see that there are three sets of

12   diagonal lines on the interior of this.

13        A.   Yes.

14        Q.   And then directing your attention to

15   Figure 4.

16             You'll see that it doesn't have those

17   diagonal lines.

18        A.   Okay.

19        Q.   Do you see that?

20        A.   Yes, I see that.

21        Q.   Do you have any understanding or

22   explanation as to why those diagonal lines don't

23   appear in Figure 4 but they do appear in Figure 2?

24             MR. MONACH:   Objection; lack of

25   foundation.   Objection, to the extent it calls for

Highly Confidential - Attorneys' Eyes Only

1  a legal conclusion.

2         THE WITNESS:  I'm not sure why those

3  lines are in one view and not in another.

4  BY MR. ZELLER:

5      Q.  Do you know if the design that's shown

6  here in the '889 design patent is showing a back

7  surface or bottom surface that is flat and clear?

8         MR. MONACH:  Same objection; lack of

9  foundation.  Object, to the extent it calls for a

10 legal conclusion.

11        THE WITNESS:  I'm not sure what that is

12 depicting.

13 BY MR. ZELLER:

14     Q.  Is the design that's shown here in the

15 '889 design patent, by your understanding, does

16 it -- well, I'm sorry.  Let me rephrase that.

17        Directing your attention to the '889

18 design patent.

19        In your view, as an inventor and a

20 designer, does this design show a clear front

21 surface of the device?

22        MR. MONACH:  Objection; lack of

23 foundation.  Objection, to the extent it calls for

24 a legal conclusion.

25        You can give your understanding, if you

Highly Confidential - Attorneys' Eyes Only

Page 98

1    have one.

2         THE WITNESS:  I'm not exactly sure what

3    this document -- what this figure is showing.  It

4    could be.

5    BY MR. ZELLER:

6       Q.  And you're not sure one way or another

7    whether what's shown here in the design shows a

8    clear, flat, continuous surface on the front?

9         MR. MONACH:  Objection, to the extent it

10   calls for a legal conclusion.

11        THE WITNESS:  I didn't create these

12   drawings, so I don't know if that's what that is

13   supposed to represent.

14   BY MR. ZELLER:

15      Q.  And even apart from the fact that you

16   didn't create the drawings, you still don't know;

17   is that true?

18        MR. MONACH:  Same objection.  Object, to

19   the extent it calls for a legal conclusion; asked

20   and answered.

21        THE WITNESS:  It isn't completely clear

22   to me that that's what that is representing.

23   BY MR. ZELLER:

24      Q.  Directing your attention to Figure 9.

25        You'll see in Figure 9 that the top of

Highly Confidential - Attorneys' Eyes Only

1    the device that's shown there is -- from the

2    orientation of the individual holding it -- is

3    somewhat wedge-shaped, or it tapers?

4           MR. MONACH:  Objection; mischaracterizes

5    the evidence, assumes facts not in evidence,

6    argumentative.

7    BY MR. ZELLER:

8        Q.  Do you see that?

9           MR. MONACH:  Object, to the extent it

10   calls for a legal conclusion.

11          THE WITNESS:  I see what you're referring

12   to.  I see it's an object that the guy is holding.

13   BY MR. ZELLER

14       Q.  Well, from the perspective of the guy

15   whose holding it --

16       A.  Yes.

17       Q.  -- how would you describe the shape of

18   the top of the device?

19       A.  What --

20          MR. MONACH:  Objection; vague and

21   ambiguous.  Object, to the extent it calls for a

22   legal conclusion.

23          THE WITNESS:  What are you referring to

24   as "the top"?

25   //

Highly Confidential - Attorneys' Eyes Only

Page 100

1    BY MR. ZELLER:

2        Q.  The top, from the orientation of the

3    individual holding it, which would be your right.

4            MR. MONACH:  Objection.  Objection;

5    vague.

6    BY MR. ZELLER:

7        Q.  If you could hand me your copy.

8        A.  Okay.

9            MR. ZELLER:  Let's please mark as Exhibit

10   1132 a copy of the '889 design patent with a

11   marking that I'm about to give it.  It will be an

12   arrow consisting of an X on Figure 9, and then two

13   arrows with the Figure X, Label X, in Figure 2.

14            (Deposition Exhibit 1132 was marked for

15            identification)

16   BY MR. ZELLER:

17       Q.  So directing your attention to Figure 2.

18       A.  Okay.

19       Q.  You'll see that what I did there is, I

20   put two arrows with the Label X on there.

21       A.  Mm-hmm.

22       Q.  And you'll see that those portions, those

23   sides, appear to taper, or narrow?

24            MR. MONACH:  Object to the form of the

25   question as mischaracterizing the evidence;

Highly Confidential - Attorneys' Eyes Only

1    assumes facts not in evidence.

2          THE WITNESS:  To me, it looks like a

3    slightly perspective drawing of a rectangular

4    object.

5    BY MR. ZELLER:

6        Q.  Do you have an understanding as to

7    whether or not those lines taper because of

8    perspective or because the design that is being

9    communicated here has tapering sides?

10       A.  I couldn't say for certain.  To me

11   personally, as an industrial designer, it looks to

12   me like they're tapering because of perspective.

13       Q.  And in your view, is that an accurate

14   perspective?

15         MR. MONACH:  Objection; vague and

16   ambiguous.

17         THE WITNESS:  I don't know about an

18   accurate perspective.  It looks, perhaps, like

19   that's what was intended.

20   BY MR. ZELLER:

21       Q.  And if I asked you the same questions

22   about that edge that I labeled as X in Figure 9,

23   you'd give me the same answers?

24         MR. MONACH:  Objection, to the extent it

25   calls for a legal conclusion.  But you can give

Highly Confidential - Attorneys' Eyes Only

1   your understanding.

2           THE WITNESS:  My understanding is that's

3   what that is trying to represent.

4   BY MR. ZELLER:

5       Q.  It is perspective, but you're not

6   certain?

7           MR. MONACH:  Object to the form of the

8   question.

9           THE WITNESS:  It's possible that that's

10  what that represents.

11  BY MR. ZELLER:

12      Q.  But, again, you can't say with certainty

13  whether or not that's -- that tapering is because

14  of perspective, as opposed to whether or not the

15  design is actually showing that there is some kind

16  of tapering?

17          MR. MONACH:  Objection; lack of

18  foundation.  Objection, to the extent it calls for

19  a legal conclusion; asked and answered.

20          You can do it again.

21          THE WITNESS:  In my opinion, as an

22  industrial designer and not a patent lawyer, I

23  think that that looks like it is an object with

24  perspective and not a tapering geometry.

25  //

Highly Confidential - Attorneys' Eyes Only

1  BY MR. ZELLER:

2      Q.  And from your perspective, is that -- is

3  that an accurate depiction of perspective?

4          MR. MONACH:  Objection; lack of

5  foundation, incomplete hypothetical.  Objection;

6  vague.

7          THE WITNESS:  Yes, it could be.

8  BY MR. ZELLER:

9      Q.  Can you say with any certainty if it is?

10         MR. MONACH:  Same objection.

11         THE WITNESS:  I can't say with any

12  certainty without -- whether that's an absolutely

13  accurate perspective view.  But it looks okay.  It

14  looks possible.

15  BY MR. ZELLER:

16     Q.  You'll see also in Figure 9 that there is

17  a portion of it that has a thicker, darker line

18  that runs around the perimeter of the front.

19         Do you see that?

20     A.  Yes, I see that.

21     Q.  What does that depict?

22         MR. MONACH:  Objection; lack of

23  foundation.  Object, to the extent it calls for a

24  legal conclusion.

25         THE WITNESS:  It's unclear to me exactly

Page 104

1    what that is trying to depict.

2    BY MR. ZELLER:

3        Q.  Does it depict a gap or a groove?

4            MR. MONACH:  Same objection; lack of

5    foundation.  Objection, to the extent it calls for

6    a legal conclusion.

7            THE WITNESS:  I'm not sure what that

8    precise detail is trying to depict.  But it looks

9    like the separation between two parts to me.  Not

10   the separation; it looks like the joint between

11   two parts.

12   BY MR. ZELLER:

13       Q.  And directing your attention to Figure 1,

14   you'll see that also at least on part of the

15   perimeter of this front surface there is a darker

16   line there as well, darker, thicker line?

17       A.  I see that.

18       Q.  And do you have an understanding as to

19   what that's depicting?

20           MR. MONACH:  Objection; lack of

21   foundation.  Object, to the extent it calls for a

22   legal conclusion.

23           THE WITNESS:  I couldn't tell you exactly

24   what that's trying to depict.

25   //

Highly Confidential - Attorneys' Eyes Only

1   BY MR. ZELLER:

2       Q.  Is that darker, thicker line depicting a

3   gap or a groove?

4           MR. MONACH:  Same objection.  Lack of

5   foundation, calls for a legal conclusion.

6           THE WITNESS:  In my opinion as an

7   industrial designer, it doesn't look like that's

8   trying to depict a groove or a gap.  It looks like

9   it's perhaps trying to show a radius or an

10  intersection of the rear housing, perhaps.

11  BY MR. ZELLER:

12      Q.  But you're not certain?

13          MR. MONACH:  Same objection.  Asked and

14  answered.

15          THE WITNESS:  I'm not certain.

16  BY MR. ZELLER:

17      Q.  You'll see that the date of this design

18  patent for filing -- and this is on the first

19  page --

20      A.  Okay.

21      Q.  -- in the middle of the first column,

22  March 17th, 2004.

23          Do you see that date there?

24      A.  Yes, I do.

25      Q.  Prior to March 17th, 2004, which is the

Highly Confidential - Attorneys' Eyes Only

1    filing date of the '889 design patent, the Apple

2    design team was working on tablet computer devices

3    that had a gap or groove that ran on the perimeter

4    of the front of the device?

5            MR. MONACH:  Object to form.  Lack of

6    foundation.

7            THE WITNESS:  I don't recall.

8    BY MR. ZELLER:

9        Q.  You just don't recall one way or another?

10       A.  I don't recall.

11       Q.  Do you recall models that were shown

12   there internally at Apple during the time periods

13   when designers were working on the tablet

14   computers that had gaps or grooves on them?

15           MR. MONACH:  Objection; vague, lack of

16   foundation.

17           THE WITNESS:  There might have been.  I

18   don't recall precisely.

19   BY MR. ZELLER:

20       Q.  Do you recall generally that occurring at

21   some him point?

22           MR. MONACH:  Same objection.

23           THE WITNESS:  It might have been.

24   BY MR. ZELLER:

25       Q.  Let me try something a different way.

1             Do you recall any tablet mockups that

2     were made there at Apple that had a gap or a

3     groove that ran the perimeter of the front surface

4     and then had vents in that gap or groove?

5             MR. MONACH:  Objection; vague.

6             THE WITNESS:  I don't know.

7     BY MR. ZELLER:

8         Q.  And for the record, the word I'm using is

9     vents, V-E-N-T-S.

10            MR. ZELLER:  Maybe we could see the

11    mockup.  That would be helpful.

12            MS. TIERNEY:  Absolutely.

13            MR. MONACH:  Sure.

14            When you're done with this, maybe we

15    should take a lunch break.

16            MR. ZELLER:  Sure.  We'll just wrap up

17    this line and show him the model and take a break.

18            (Pause in the proceedings)

19            MR. ZELLER:  Thank you.

20            And for the record, Apple's counsel has

21    provided me with three physical mockups.  And the

22    first one I'm going to show the witness is a

23    mockup of a tablet computer that has the bottom,

24    the depiction of a -- people generally call 30-pin

25    connector.  Also, aside port in the form of a hole

Highly Confidential - Attorneys' Eyes Only

Page 108

1    that has over it a small icon depicting

2    headphones.

3    BY MR. ZELLER

4        Q.  And I'll hand that mockup to you.

5            And if you could do me a tremendous

6    favor, if you could hold that up for the camera,

7    too, so we'll have a depiction of it.

8        A.  (Witness complies.)

9        Q.  And could you also show the sides with

10   the ports.

11       A.  (Witness complies.)

12       Q.  Thank you.

13           And then there's some writing on the back

14   on the label.  And if you could, please just read

15   that for the record for us.

16       A.  "Apple proto 035."

17       Q.  And first let me ask you, with respect to

18   the model that you have in your hands, had you

19   seen that before?

20           MR. MONACH:  Instruct the witness not to

21   answer with respect to any communications you had

22   with counsel in connection with the deposition or

23   any other communications with counsel.

24           But if you have a recollection of seeing

25   it independently or a recollection that you don't,

Highly Confidential - Attorneys' Eyes Only

1  you can answer.

2          THE WITNESS:  I think so, a long time ago

3  maybe.

4  BY MR. ZELLER:

5      Q.  Generally speaking, do you recognize the

6  mockup that you have there in front of you as a

7  mockup of an Apple tablet computer design that you

8  saw during the course of your work there at Apple

9  as a designer?

10         MR. MONACH:  Objection; asked and

11 answered.

12         THE WITNESS:  It could well be.

13 BY MR. ZELLER:

14     Q.  Is that your recollection?

15     A.  It looks like a prototype we could have

16 made.

17 BY MR. ZELLER:

18     Q.  Do you have any reason to doubt that

19 that's a prototype that Apple made as part of the

20 design project working on a tablet computer?

21         MR. MONACH:  Object to the form of the

22 question as argumentative.  Objection; may call

23 for speculation, in light of the prior testimony.

24         THE WITNESS:  Yeah, it could be.

25 //

Highly Confidential - Attorneys' Eyes Only

1    BY MR. ZELLER:

2        Q.  You'll see that there's a gap, or a

3    groove, that runs the perimeter of the front

4    there.

5        A.  Mm-hmm.

6            MR. MONACH:  Object to the form of the

7    question.

8            THE WITNESS:  I do see that there's

9    something here, a gap.  I see that.

10   BY MR. ZELLER:

11       Q.  And then if you look inside that opening,

12   you'll see something that appears to be the

13   depiction of vents or some kind of openings?

14           MR. MONACH:  Object to the form of the

15   question.

16           THE WITNESS:  I see some sort of

17   detailing of something down there.

18   BY MR. ZELLER:

19       Q.  Do you know what that detailing is?

20       A.  I don't.  I couldn't be sure.

21       Q.  Did you yourself have involvement in the

22   creation of that mockup that you have in front of

23   you?

24           MR. MONACH:  Objection; vague.

25           THE WITNESS:  I can't remember.

Highly Confidential - Attorneys' Eyes Only

1  BY MR. ZELLER:

2      Q.  Did you contribute anything to the design

3  of the tablet computer mockup that you have in

4  front of you?

5          MR. MONACH:  Objection; vague.

6          THE WITNESS:  As part of the industrial

7  design team, perhaps.  We could -- I can't

8  remember.  I can't recall exactly at this minute

9  what I might have contributed to this particular

10 mockup.

11 BY MR. ZELLER:

12     Q.  Is the mockup that you have in your

13 hands, is that the same design that's shown in the

14 '889 design patent?

15         MR. MONACH:  Objection; lack of

16 foundation, vague.  Object, to the extent it calls

17 for a legal conclusion.

18         THE WITNESS:  In my opinion, it doesn't

19 appear to be the same -- the same object that's

20 listed in this patent.

21 BY MR. ZELLER:

22     Q.  And why do you think it's different?

23     A.  Well, I see a number of differences.

24         I don't see this detailing that you're

25 referring to around the outside perimeter.

Highly Confidential - Attorneys' Eyes Only

1       The radii in the corners seem lightly

2  different between the patent and this mockup.

3       The proportions of the object are -- I'm

4  not exactly sure what the proportions in this

5  document are.

6       So there seem to be a number of

7  differences.

8     Q.  And all that leads you to conclude that

9  it's a different design?

10      MR. MONACH:  Object to the form of the

11 question as vague and ambiguous.  Object, to the

12 extent it's calling for a legal conclusion about

13 the scope of the patented design.

14      THE WITNESS:  I'm not exactly sure.  I

15 don't believe that this is the product that is

16 being covered by this.  It could be.

17 BY MR. ZELLER:

18    Q.  And when you say "this product," just for

19 the record to be clear, you're pointing to the

20 mockup that you have in front of you?

21    A.  This particular prototype, I'm not sure.

22 I can't be certain that this -- it doesn't look to

23 me like this patent is the same object as this

24 mockup.

25    Q.  But you're not certain one way or

Highly Confidential - Attorneys' Eyes Only

1   another?

2         MR. MONACH:  Objection; asked and

3   answered, lack of foundation.  Object, to the

4   extent it calls for a legal conclusion.

5         THE WITNESS:  That's correct.  I'm not

6   certain.

7   BY MR. ZELLER:

8       Q.  I'm going to show you what was previously

9   marked as Exhibit 841.

10      A.  Mm-hmm.

11      Q.  And please let me know when you've had an

12  opportunity to review those pages.

13      A.  (Witness reviewing document.)

14          Okay.

15      Q.  I take it generally speaking, at some

16  point, you became aware that there was a dispute

17  between Apple and Samsung, a legal dispute?

18         MR. MONACH:  Object to the form of the

19  question as vague.

20            In answering this question, I'll instruct

21  the witness not to reveal any attorney-client

22  communications.

23            THE WITNESS:  I can't remember when I

24  was -- when I first found out.

25  //

Highly Confidential - Attorneys' Eyes Only

1   BY MR. ZELLER:

2       Q.  Right.  I'm not quite at that question

3   yet.  I'm just trying to understand something

4   generally.  It's to help put some time periods on

5   the questions I'm going to ask.

6       A.  Okay.

7       Q.  So at some point, did you become aware

8   that there was a lawsuit between Apple and

9   Samsung, just generally speaking?

10          MR. MONACH:  You can answer that question

11  yes, no, or I don't recall.

12          THE WITNESS:  At some point, yes.

13  BY MR. ZELLER:

14      Q.  Now, prior to the time that you became

15  aware that there was a lawsuit between Samsung and

16  Apple, had you seen these pages that were marked

17  as Exhibit 841 before that time?

18      A.  I don't recall.

19      Q.  Do you recognize what's depicted here in

20  Exhibit 841?

21          MR. MONACH:  Objection; vague and

22  ambiguous.

23          THE WITNESS:  I'm not -- I'm not clear on

24  what this -- on what's depicted in these pages.

25  //

Highly Confidential - Attorneys' Eyes Only

1    inventors here on the '889 design patent, that the

2    design that's shown here in the '889 design patent

3    is the design of the first iPad?

4           MR. MONACH:  Objection; vague and

5    ambiguous.  Objection; calls for a legal

6    conclusion about the scope of the '889.

7    Objection; lacking in foundation, in light of the

8    prior testimony; asked and answered.

9           THE WITNESS:  I'm not an expert in

10   reading patent drawings, so I couldn't tell you if

11   this represents the exact design of the iPad that

12   was launched.

13   BY MR. ZELLER:

14      Q.  My question is a very specific one.  I'd

15   appreciate if you'd answer it.

16           Do you need it read back?

17           MR. MONACH:  Is that a question to the

18   witness?

19           MR. ZELLER:  Yes.

20           MR. MONACH:  Objection; asked and

21   answered.  Object to the argumentative commentary.

22           The question was asked and answered.  It

23   calls for a legal conclusion about the scope of

24   the patent.  The witness gave his answer and now

25   you're just badgering him.

Highly Confidential - Attorneys' Eyes Only

Page 270

1          Object that it's vague.  Object that it's

2     lacking in foundation.  Object that it's asked and

3     answered.

4          Do you have anything else to add?

5          MR. ZELLER:  Are you instructing him not

6     to answer?

7          MR. MONACH:  No, I am not.  Did you hear

8     me instruct him not to answer?

9          MR. ZELLER:  Well, you're interrupting my

10    questioning.

11         MR. MONACH:  No, I'm objecting to your

12    badging of the witness and characterizing his

13    response because, apparently, you don't care for

14    it, so you keep asking him the same question over

15    and over.

16         MR. ZELLER:  Let the record reflect that

17    counsel directed a question to the witness.

18    BY MR. ZELLER:

19       Q.  Do you believe, as one of the named

20    inventors here on the '889 design patent -- I'm

21    not asking you as an expert, but as a named

22    inventor -- that the design that's shown here in

23    the '889 patent is the design of the first iPad?

24         MR. MONACH:  Objection; asked and

25    answered.  Objection; vague.  Objection; lacking

Highly Confidential - Attorneys' Eyes Only

1    in foundation.  And objection, to the extent it

2    calls for a legal conclusion.

3           THE WITNESS:  In my opinion, I cannot be

4    certain that this -- that the design of -- that

5    this document here represents the exact design of

6    the iPad 1.

7    BY MR. ZELLER:

8      Q.  Again, I didn't ask about the, quote,

9    exact same design.

10          You see that there's a design that's

11   reflected here in the '889 design patent that

12   you're identified as one of the people who

13   invented it; right?

14     A.  I am.

15     Q.  And so my question is:  In your view, as

16   a named inventor on the '889 design patent, do you

17   think that the iPad has this design that's shown

18   here in the '889 design patent, or do you think

19   it's a different design?

20          MR. MONACH:  Objection; vague and

21   ambiguous.  Objection, to the extent it calls for

22   a legal conclusion.  Objection; lacking in

23   foundation.  Objection; asked and answered.

24          THE WITNESS:  I see some similarities and

25   differences, but I couldn't tell you if this --

Highly Confidential - Attorneys' Eyes Only

1   I'm not -- I'm really not a patent reading expert.

2   BY MR. ZELLER:

3       Q.  Do you have anything else to add to your

4   answers to my questions on the comparison between

5   the iPad design and the '889 design patent?

6       A.  No.

7       Q.  Directing your attention to the design in

8   the '889 design patent, is this the design of the

9   iPad2?

10          MR. MONACH:  Objection; vague and

11  ambiguous.  Objection, to the extent it calls for

12  a legal conclusion from a nonlawyer witness.

13          THE WITNESS:  I'm not --

14          MR. MONACH:  Lack of foundation.

15          Go ahead.  Sorry.

16          THE WITNESS:  I'm not a patent reading

17  expert, so it is makes it difficult to answer your

18  question.

19  BY MR. ZELLER:

20      Q.  Do you believe that, in order for someone

21  to understand the design that's shown here in the

22  '889 design patent, that one would have to be a

23  patent expert?

24          MR. MONACH:  Objection; vague.

25  Objection; calls for speculation, incomplete

Highly Confidential - Attorneys' Eyes Only

Page 273

1    hypothetical.

2           THE WITNESS:  I don't know what it would

3    take.

4    BY MR. ZELLER:

5       Q.  Well, is the design that's shown here in

6    the '889 patent understandable to you?

7           MR. MONACH:  Objection; vague and

8    ambiguous.  Objection, to the extent it's calling

9    for a legal conclusion.

10          THE WITNESS:  Not completely.

11   BY MR. ZELLER:

12      Q.  And when you say "not completely," what

13   do you mean?

14      A.  I'm not a patent lawyer.  I'm not a

15   patent reading expert.  So to me, there are things

16   about this that I can say seem different to me

17   than the final design of the iPad.

18      Q.  And again, as I've been telling you, I'm

19   not asking you an expert.  I'm asking you as

20   someone who is named as an inventor on this

21   design.

22          Please tell me what parts of the design

23   that's shown in this '889 design patent is not

24   completely understandable to you.

25          MR. MONACH:  Object --

Highly Confidential - Attorneys' Eyes Only

Page 274

1   BY MR. ZELLER:

2        Q.  I'm talking about your own individual

3   perspective.

4             MR. MONACH:  Object to the form of the

5   question as vague and ambiguous.  Object, to the

6   extent it calls for a legal conclusion.

7             THE WITNESS:  I find it hard to translate

8   these drawings, as an individual.

9   BY MR. ZELLER:

10       Q.  And what is it about the drawings that

11  make it not possible for you to translate them?

12            MR. MONACH:  Objection; mischaracterizes

13  the prior testimony.

14            THE WITNESS:  That I work with 3D objects

15  usually, and two-dimensional drawings are a little

16  bit harder to understand for me.

17  BY MR. ZELLER:

18       Q.  Well, setting aside that this is what we

19  have to work with, in terms of a design patent,

20  are these two-dimensional drawings, are there --

21  let me ask it this way.

22            Again, I'm not asking you as an expert.

23  I'm not asking you as patent law or anything else.

24  I'm just asking you, as your own personal

25  understanding when you look at these drawings, do

1    you feel like you completely understand the design

2    that is being communicated through these drawings,

3    or does it seem uncertain to you in certain

4    respects?

5            MR. MONACH:  Objection; vague and

6    ambiguous.  Objection, to the extent it

7    incorporates or asks for a legal conclusion.

8            THE WITNESS:  Some parts seem clear.

9    BY MR. ZELLER:

10       Q.  Other parts don't seem clear to you?

11           MR. MONACH:  Same objection.

12           THE WITNESS:  Yes.

13   BY MR. ZELLER:

14       Q.  And what parts are you referring to that

15   don't seem clear to you?  Again, we're talk solely

16   about your own individual perspective.

17           MR. MONACH:  Same objection.

18           THE WITNESS:  Well, I'm not sure what

19   these lines represent (indicating).

20   BY MR. ZELLER:

21       Q.  And what figure are you pointing to?

22       A.  Figure 6.

23       Q.  And you're referring to the -- those

24   lines that run horizontally from the perspective

25   of the viewer, or the reader?

Highly Confidential - Attorneys' Eyes Only

1      A.  Just those that -- couple of those ones

2    in particular.

3      Q.  Are there other portions of the design

4    shown in the '889 design patent that aren't clear

5    to you?

6          Again, we're talking totally about your

7    own individual perspective.

8          MR. MONACH:  Same objections.

9          THE WITNESS:  From my perspective, I

10   can -- yes, it doesn't seem like this is exactly

11   the same as the iPad which is what your question

12   was, the iPad 1.

13   BY MR. ZELLER:

14     Q.  Well, I'm asking a slightly different

15   question at this point.

16         You had mentioned, with respect to Figure

17   6, some lines that you thought were unclear to

18   you.

19         Are there other aspects of the design

20   that's shown here, other than what we've talked

21   about, that you think is unclear?

22         MR. MONACH:  Objection; vague.

23   Objection, to the extent it calls for a legal

24   conclusion or incorporates legal terms.

25         THE WITNESS:  It seems -- seems like what

Highly Confidential - Attorneys' Eyes Only

1    I'm looking at in these drawings is a housing

2    coming around, one-piece housing coming around to

3    a piece of glass.  That's what I interpret from

4    these drawings.

5    BY MR. ZELLER:

6        Q.  But you're not sure about that?

7            MR. MONACH:  Object to the form of the

8    question; asked and answered.

9            THE WITNESS:  That's what it looks like

10   to me.

11   BY MR. ZELLER:

12       Q.  But are you certain that's the design

13   that's being communicated here, or are you just

14   telling me that that's how it seems to you?

15           MR. MONACH:  Object to the form of the

16   question.  It's badgering the witness.

17           You've asked him to give his own opinion,

18   and now when he gives it, you seem to be objecting

19   to his own opinion.

20           MR. ZELLER:  I'm asking him how certain

21   he is that that's what the design is.

22           MR. MONACH:  Object to the form of the

23   question as vague, asked and answered.  Object, to

24   the extent you're incorporating a legal term or

25   legal conclusion.

Highly Confidential - Attorneys' Eyes Only

1    BY MR. ZELLER:

2         Q.  You can go ahead and answer.

3         A.  That's how it appears to me, judging from

4    these drawings.

5         Q.  And how certain are you that that's what

6    the drawings show?

7              MR. MONACH:  Objection; vague.

8              THE WITNESS:  I'm not absolutely certain,

9    but it appears that way to me.

10   BY MR. ZELLER:

11        Q.  To go back to the question I was asking,

12   other than what we've talked about, are there

13   other aspects of what's shown here in the '889

14   design that are unclear to you personally?

15             MR. MONACH:  Object to the form of the

16   question for the reasons previously stated.

17             THE WITNESS:  Not really.

18   BY MR. ZELLER:

19        Q.  Directing your attention to Figure 6,

20   you'll see that there is the circular form there

21   on the right-hand side, from the perspective of

22   the person looking at it.

23             Do you see that?

24        A.  Yes.

25        Q.  What is that?

Highly Confidential - Attorneys' Eyes Only

1          A.   It's --

2               MR. MONACH:   Object to the form of the

3     question.

4               THE WITNESS:   It looks like a circle.

5     BY MR. ZELLER:

6          Q.   What's it depict?

7               MR. MONACH:   Object to the form of the

8     question as vague and ambiguous.   Object, to the

9     extent it calls for a legal conclusion.

10              THE WITNESS:   I'm not exactly sure what

11    it's trying to depict.

12    BY MR. ZELLER:

13         Q.   Do you have any idea what it is?

14              MR. MONACH:   Same objection.

15              THE WITNESS:   Not for certain.

16    BY MR. ZELLER:

17         Q.   I'm not asking for certain.   I'm asking:

18    Do you have any understanding as to what that

19    circle depicts?

20              MR. MONACH:   Same objections as before.

21              You can answer.

22              THE WITNESS:   I'm not sure what that

23    circular -- what that circle is depicting.

24    BY MR. ZELLER:

25         Q.   Is that circle being presented with

Highly Confidential - Attorneys' Eyes Only

Page 280

1    broken lines?

2         MR. MONACH:  Objection; lack of

3    foundation.  And object, to the extent it calls

4    for a legal conclusion.  Objection under the Best

5    Evidence Rule.

6         THE WITNESS:  I don't know.  It looks

7    like there's -- it looks like there's a line and

8    some dotted lines or dots around it.

9    BY MR. ZELLER:

10       Q.  Does the design that's showing here in

11   the '889 design patent -- let me step back for a

12   moment.

13            Do you see here on the first page the

14   phrase -- this is under "description" -- where it

15   says, "The broken lines being shown for

16   illustrative purposes only and form no part of the

17   claimed design."

18            Do you see that?

19       MR. MONACH:  Object to the reading of

20   only a portion of the sentence which says,

21   "Figure 9 is an exemplary diagram of the use of

22   the electronic device thereof, the broken lines

23   being shown for illustrative purposes only and

24   form no part of the claimed design."

25   //

Highly Confidential - Attorneys' Eyes Only

Page 281

1   BY MR. ZELLER:

2       Q.  Do you see that part?

3       A.  I do.  "Figure 9 is an exemplary diagram

4   of the use of the electronic device thereof, the

5   broken lines being shown for illustrative purposes

6   only form no part of the claimed design."  Okay.

7       Q.  Directing your attention to Figure 6.

8           Is that circle being shown as broken

9   lines?

10          MR. MONACH:  Objection under the Best

11  Evidence Rule, that the document is the best

12  evidence of whether the lines are broken or not.

13          THE WITNESS:  I can't say for certain.

14  BY MR. ZELLER:

15      Q.  Directing your attention to Figure 8.

16          You'll see in the center there, there is

17  a smaller rectangular shape.

18          Do you see that?

19      A.  Right.

20      Q.  Do you see that?

21      A.  Yes.

22      Q.  What's that depict?

23          MR. MONACH:  Object to the form of the

24  question.  Object, to the extent it calls for a

25  legal conclusion.

Highly Confidential - Attorneys' Eyes Only

Page 282

1       THE WITNESS:  I'm not sure what it's

2  depicting.

3  BY MR. ZELLER:

4     Q.  Are those broken lines?

5       MR. MONACH:  Objection; Best Evidence

6  Rule.  Objection; vague.

7       THE WITNESS:  They look like dots to me.

8  BY MR. ZELLER:

9     Q.  Do you consider those to be broken lines?

10      MR. MONACH:  Object to the form of the

11  question.

12      THE WITNESS:  They look like dots to me.

13  BY MR. ZELLER:

14     Q.  Do you consider dots to be broken lines?

15      MR. MONACH:  Object to the form of the

16  question.  And object, to the extent it calls for

17  a legal conclusion; lacks foundation.

18      THE WITNESS:  I'm not sure what you mean

19  by "broken lines."

20  BY MR. ZELLER:

21     Q.  You see the words "broken lines" that are

22  used under the description heading that we talked

23  about on the first page?

24     A.  Yes.

25     Q.  Do you know what broken lines means in

Highly Confidential - Attorneys' Eyes Only

Page 283

1    this context, or have any understanding as to what

2    it means?

3        A.   Sometimes it can mean there's a dashed

4    line, dot-dash, dot-dash.  "Broken" can be

5    different things.

6        Q.   So then specifically, with respect to

7    that smaller rectangular shape there in Figure

8    8 --

9        A.   Right.

10       Q.   -- are those broken lines that are being

11   shown for illustrative purposes only and form no

12   part of the claimed design, as you understand

13   those terms, as you understand this drawing?

14       MR. MONACH:  Object to the form of the

15   question as vague, lacking in foundation, and,

16   plainly, just calling for a legal conclusion.

17       THE WITNESS:  I don't know what they're

18   trying to represent.  I'm not an expert at reading

19   patent drawings.

20   BY MR. ZELLER:

21       Q.   Do you have any understanding in that

22   regard as an inventor, a named inventor, of the

23   '889 design patent?

24       MR. MONACH:  Same objections; asked and

25   answered.

Highly Confidential - Attorneys' Eyes Only

1       THE WITNESS:  I was an inventor of the

2  product, not the patent drawing.

3  BY MR. ZELLER:

4     Q.  Setting aside -- because I'm not asking

5  you as an expert, again.  All my questions here

6  have been about how you understand these.

7       Do you have an understanding as to

8  whether that -- what you call those dotted lines

9  for that rectangular area in Figure 8 is the same

10  as these broken lines that form no part of the

11  claim design or are they something different?

12       MR. MONACH:  Objection; asked and

13  answered, vague, lack of foundation, calls for a

14  legal conclusion.

15       THE WITNESS:  I'm not exactly sure what

16  those dotted lines mean.

17       MR. ZELLER:  Okay.  Let's take a few

18  minutes.

19       THE VIDEOGRAPHER:  We're off the record

20  at 6:51 p.m.

21       (Recess taken)

22       THE VIDEOGRAPHER:  We are back on the

23  record at 7:07 -- 7:03 p.m.

24       You may proceed.

25  //

Highly Confidential - Attorneys' Eyes Only

Page 285

1    BY MR. ZELLER:

2        Q.  I'm going to show you what's previously

3    marked as Exhibit 6, which is a copy of United

4    States Design Patent 593,087.

5            Can you let us know when you've had a

6    chance to look at the '087 design patent.

7        A.  (Witness reviewing document.)

8            Okay.

9        Q.  Do you recognize the '087 design patent

10   as a patent that you're a named inventor on?

11       A.  Yeah, looks like it.

12       Q.  What, from your perspective as an

13   inventor of the design that's shown here on the

14   '087 design patent, was new or original about this

15   design?

16           MR. MONACH:  Object to the form of the

17   question as vague, lacking in foundation, and

18   incorporating or requesting a legal conclusion.

19           THE WITNESS:  What was new about the

20   iPhone?  What was new about this patent?

21   BY MR. ZELLER:

22       Q.  What was new and original about the

23   design that's shown here in these drawings that

24   make up the '087 design patent?

25           MR. MONACH:  Same objection.