# EXHIBIT 42

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 1

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4                     --oOo--

5     APPLE INC., A CALIFORNIA     )

6     CORPORATION,                 )

7            PLAINTIFF,            ) No.  11-CV-01846-LHK

8        vs.                       )

9     SAMSUNG ELECTRONICS CO.,     )

10    LTD.,  A KOREAN BUSINESS     )

11    ENTITY; SAMSUNG ELECTRONICS  )

12    AMERICA, INC., A NEW YORK    )

13    CORPORATION; SAMSUNG         )

14    TELECOMMUNICATIONS AMERICA,  )

15    LLC, A DELAWARE LIMITED      )

16    LIABILITY COMPANY,           )

17            DEFENDANTS.          )

18    _____ )

19        VIDEOTAPED DEPOSITION OF RICO ZORKENDORFER

20       CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

21             Redwood Shores, California

22             Friday, October 21, 2011

23

24    Reported By:
      KATHLEEN WILKINS, CSR #10068, RPR, CRR, CCRR, CLR
25    JOB NO. 42998

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 43

1   this transcript as highly confidential subject to

2   the protective order in force in this case.

3          Also, the witness will reserve the

4   opportunity to review the transcript to make

5   corrections at the conclusion of the deposition.

6          MR. ZELLER:  Let's please mark as

7   Exhibit 841 a multipage document bearing Bates

8   Numbers APLPROS0000018778 through -18798.

9          (Whereupon, Deposition Exhibit 841 was

10          marked for identification.)

11  BY MR. ZELLER:

12     Q.   And you're free to take a look here at

13  841, but I had some specific questions first for

14  you.

15          If you could look at the last page of

16  Exhibit 841.  Do you know who that person is?

17          And for the record, also, if you look

18  at -18789, which is also somewhat close to the end,

19  you'll see another image of this individual, if that

20  helps.

21          MR. BARTLETT:  Talking about this page

22  (indicating).

23          MR. ZELLER:  Oh.

24          THE WITNESS:  Okay.

25          MR. BARTLETT:  -789.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 44

1           THE WITNESS:  I believe that's our patent

2    lawyer.

3    BY MR. ZELLER:

4        Q.   That's Quin?

5        A.   I think it's -- I think it's Quin.

6           MR. BARTLETT:  One N.

7           THE WITNESS:  But I can't be certain

8    because the picture quality is fairly bad.

9           MR. BARTLETT:  I just want to make sure

10   this is clarified for the record.  I think --

11   because the court reporter interpreted Quin as being

12   Quinn Emanuel, but Quin is the first name of an

13   individual, Q-U-I-N.

14          MR. ZELLER:  It would be startling if it

15   was us.

16          MR. BARTLETT:  It would, indeed.

17   BY MR. ZELLER:

18       Q.   I'm going to show you what was previously

19   marked as Exhibit 8, which is United States Design

20   Patent 504,889.

21          Let me know when you've had a chance to

22   look at the '889 design patent.

23          Do you recognize the '889 design patent as

24   a patent that you're a named inventor on?

25       A.   Yes.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 45

1      Q.   I take it at some point you became aware,

2    just generally speaking, that there was a dispute

3    between Samsung and Apple?

4      A.   Yes.

5      Q.   At any time prior to the time when you

6    first became aware that there was a dispute between

7    the companies, had you actually seen the '889 design

8    patent?

9      A.   I must have, yes.

10      Q.   And you are named as an inventor here, as

11   we talked about?

12      A.   Yes.

13      Q.   What is it you invented that's depicted

14   here?

15           MR. BARTLETT:  Objection.  Vague.  Calls

16   for a legal conclusion.  Calls for expert testimony.

17           THE WITNESS:  I can't call out any -- any

18   specifics.

19   BY MR. ZELLER:

20      Q.   Well, is there anything generally that you

21   can identify here that you were the inventor of?

22           MR. BARTLETT:  Objection.  Calls for a

23   legal conclusion.

24           THE WITNESS:  I can't call out any -- any

25   specifics.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 46

1   BY MR. ZELLER:

2      Q.   But were there any -- any general aspects

3   of this that you were the inventor of?

4           MR. BARTLETT:  Calls for a legal

5   conclusion.

6           THE WITNESS:  I can't call out any

7   specifics.

8   BY MR. ZELLER:

9      Q.   Well, you keep on saying "specifics," and

10  I -- that's what -- that's a red flag to a lawyer.

11          And so I'm trying to find out, is there

12  anything -- even if you can't point out specifics,

13  is there anything that you can generally identify

14  that you were the inventor of with respect to the

15  design in the '889 design patent?

16          MR. BARTLETT:  Objection.  Calls for a

17  legal conclusion.

18          THE WITNESS:  I can't call out any --

19  any -- any specifics on -- on that.

20  BY MR. ZELLER:

21     Q.   Is there anything that you can identify --

22  and I'm talking about anything at all, specifically

23  or generally, that you can identify that you were

24  the inventor of with respect to the '889 design

25  patent?

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 47

1          MR. BARTLETT:  Objection.  Calls for a

2    legal conclusion.  Asked and answered.

3          THE WITNESS:  Again, can't call out any --

4    any specifics.

5    BY MR. ZELLER:

6       Q.   By your understanding, what was new or

7    original about the design that's shown here in the

8    '889 design patent?

9          MR. BARTLETT:  Objection.  Calls for a

10   legal conclusion.  Calls for expert testimony.

11         THE WITNESS:  I can't comment on -- on

12   anything that's, yeah, specifically called out here.

13   BY MR. ZELLER:

14      Q.   Well, is there anything that you can

15   identify that was new or original about the design

16   that's shown here in the '889 design patent at the

17   time it was first thought of or put into some sort

18   of written form or fixed form?

19         MR. BARTLETT:  Objection.  Calls for a

20   legal conclusion.  Calls for expert testimony.

21         THE WITNESS:  Can you actually repeat that

22   question?

23   BY MR. ZELLER:

24      Q.   Sure.

25         Is there anything that you can identify

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 48

1   that was new or original about the design that's

2   shown here in the '889 design patent as of the time

3   it was first thought of or put down into some sort

4   of tangible form by you and -- and the others who

5   are named as inventors here?

6           MR. BARTLETT:  Same objection.

7           THE WITNESS:  Again, I -- I -- I can't

8   talk specifically to this document.

9   BY MR. ZELLER:

10      Q.   When was it that you and the other

11   inventors first came up with the idea for the design

12   that's shown here in the '889 design patent?

13          MR. BARTLETT:  Objection.  Calls for a

14   legal conclusion.

15          THE WITNESS:  I -- I don't recall.

16   BY MR. ZELLER:

17      Q.   I'll represent to you -- well, I'm sorry.

18   Let me ask another question.

19          What was the time period when you and the

20   other named inventors first put this design down

21   into some kind of tangible form, such as in a mockup

22   or a drawing or a CAD drawing?

23          MR. BARTLETT:  Objection.  Calls for a

24   legal conclusion.

25          THE WITNESS:  I can't recall a specific

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 49

1  time line.

2  BY MR. ZELLER:

3      Q.   I'll represent to you that in

4  interrogatory responses in this case, Apple has said

5  that the date when the design that's shown here in

6  the '889 design patent was first conceived of,

7  thought of, or reduced to practice is the legal

8  term, kind of put into some kind of fixed form, was

9  September 3rd, 2003.

10          And so with that date in mind, can you

11  tell me one way or another that -- whether that is

12  consistent with your recollection?

13      A.   I don't have any specific recollection of

14  that -- of that date.

15      Q.   Do you recall if that's generally the time

16  period?

17          MR. BARTLETT:  Objection.  Calls for

18  speculation.

19          THE WITNESS:  No, I don't recall any

20  specific time period.

21  BY MR. ZELLER:

22      Q.   You just don't remember one way or

23  another?

24      A.   I -- I don't remember.  It's been eight

25  years.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 50

1      Q.   Focusing on the September 2003 time

2   period, was it new or original for a design -- for

3   an electronic device to have rounded corners?

4           MR. BARTLETT:  Objection.  Calls for

5   expert testimony.  Vague.

6           THE WITNESS:  I guess it depends what

7   context.  When you say "electronic device," it's a

8   very general term.

9   BY MR. ZELLER:

10     Q.   Well, you'll see that this design patent,

11  the '889 design patent, is entitled "Electronic

12  Device."

13          Do you see that?

14     A.   Yes.

15     Q.   So I'm talking about in the context of the

16  same category that the '889 design patent is in.

17          And so my question is, is in the category

18  of "electronic device" that this '889 design patent

19  identifies, was it new or original at that time that

20  an electronic device would have rounded corners?

21          MR. BARTLETT:  Objection.  Calls for a

22  legal conclusion.  Calls for expert testimony.

23          THE WITNESS:  I -- I can't make a -- I

24  can't make a judgment on that.

25  BY MR. ZELLER:

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 51

1       Q.   Focusing on the September 2003 time

2   period, was it new or original for an electronic

3   device to have an overall rectangular shape?

4            MR. BARTLETT:  Calls for a legal

5   conclusion.  Calls for expert testimony.

6            THE WITNESS:  I can't -- I can't make a --

7   I can't make a judgment on that.

8   BY MR. ZELLER:

9       Q.   During the September or as of the

10  September 2003 time period, was it new or original

11  for the design of electronic devices to have four

12  evenly rounded corners?

13           MR. BARTLETT:  Same objection.

14           THE WITNESS:  Again, I can't make -- I

15  can't make a judgment on that.

16  BY MR. ZELLER:

17      Q.   As of the September 2003 time period, was

18  it new or original for an electronic device to have

19  a flat clear surface covering the front of the

20  device?

21           MR. BARTLETT:  Same objections.

22           THE WITNESS:  Again, I can't make a

23  judgment on that.

24  BY MR. ZELLER:

25      Q.   As of September 2003, was it new or

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 52

1    original for the design of electronic devices to

2    have a front surface that was without ornamentation?

3              MR. BARTLETT:  Same objections.

4              THE WITNESS:  Again, I can't make -- I

5    can't make a judgment on that.

6    BY MR. ZELLER:

7         Q.   As of September of 2003, was it new or

8    original for the design of an electronic device to

9    have a thin rim surrounding the front surface?

10             MR. BARTLETT:  Same objections.

11             THE WITNESS:  I can't make a judgment on

12   that.

13   BY MR. ZELLER:

14        Q.   As of September of 2003, was it new or

15   original for the design of electronic devices to

16   have a substantially flat back panel that rounds up

17   near the edges, to form a thin rim around the front

18   surface?

19             MR. BARTLETT:  Same objections.

20             THE WITNESS:  I can't make a judgment on

21   that.

22   BY MR. ZELLER:

23        Q.   As of September of 2003, was it new or

24   original for the design of an electronic device to

25   have a thin form factor?

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 53

1          MR. BARTLETT:  Same objections.

2          THE WITNESS:  Again, I can't make -- I

3    can't make a judgment on that.

4    BY MR. ZELLER:

5      Q.   Focusing your attention on Figure 1 of the

6    '889 design patent, you'll see on the -- that's an

7    interior rectangular set of -- of lines that appear

8    to be somewhat broken.

9          Do you see that?

10     A.   Which one are you referring to?

11     Q.   This is the rectangular --

12     A.   Yeah.

13     Q.   -- set of lines that run on the interior

14   of the front surface on Figure 1 that appears to be

15   somewhat broken, although it's hard to tell.

16     A.   Mh-hmm.

17     Q.   Do you see that?

18     A.   Yeah.

19     Q.   Do you know what that is?

20         MR. BARTLETT:  Objection.  Calls for a

21   legal conclusion.

22         THE WITNESS:  I don't feel I have the

23   expertise to -- to comment on -- or to speak to the

24   drawing in front of me.

25   BY MR. ZELLER:

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 54

1      Q.   Well, I'm not asking if you -- if you have

2   an expertise.

3           My question is, do you know or have an

4   understanding as to what this interior rectangular

5   line represents?

6           MR. BARTLETT:  Same objections.

7           THE WITNESS:  I don't.

8   BY MR. ZELLER:

9      Q.   Do you know if that interior rectangular

10  line that we're discussing shown here in Figure 1 is

11  part of the design that's depicted here in the

12  '889 design patent?

13          MR. BARTLETT:  Objection.  Calls for a

14  legal conclusion.  Calls for speculation.

15          THE WITNESS:  I -- I don't know.

16  BY MR. ZELLER:

17     Q.   Are those broken lines?

18          MR. BARTLETT:  Same objection.

19          THE WITNESS:  I'm not sure which lines

20  you're referring to.

21  BY MR. ZELLER:

22     Q.   Again, we're talking about the same lines

23  that we've -- that I've been asking questions about,

24  which are the lines -- rectangular lines that run on

25  the inner portion of the -- of Figure 1.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 55

1           MR. BARTLETT:  Same objection.

2           THE WITNESS:  I don't know.

3    BY MR. ZELLER:

4      Q.   If you can please take a look at Figure 2

5    of the '889 design patent.  You'll see that there

6    are those diagonal lines in the interior of that

7    back surface.

8      A.   Yes.

9      Q.   And there are three sets of those diagonal

10   lines?

11     A.   Mh-hmm.

12     Q.   You see that?

13     A.   Yes.

14     Q.   Please take a look at Figure 4.  You'll

15   see that there are no diagonal lines depicted in --

16   in Figure 4?

17     A.   Yes.

18     Q.   Do you know why Figure 2 has those

19   diagonal lines but Figure 4 doesn't?

20          MR. BARTLETT:  Objection.

21          THE WITNESS:  No.

22          MR. BARTLETT:  Calls for -- I do want to

23   caution the witness to give me a chance to interpose

24   my objections before responding.  Thanks.

25          Calls for a legal conclusion.  Calls for

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 56

1    expert testimony.

2    BY MR. ZELLER:

3        Q.   Do you have an understanding as to why

4    Figure 2 has those diagonal lines that represent a

5    flat surface, but Figure 2 -- excuse me -- Figure 4

6    does not?

7            MR. BARTLETT:  Same objections.

8            THE WITNESS:  No.

9    BY MR. ZELLER:

10       Q.   Does the '889 design patent show a design

11   that has a back surface that is -- that is flat --

12           MR. BARTLETT:  Same objection --

13   BY MR. ZELLER:

14       Q.   -- meaning --

15           MR. BARTLETT:  I'm sorry.  I didn't mean

16   to speak over your question, Counsel, I apologize.

17           Same objections.

18           MR. ZELLER:  Actually, I'll rephrase it.

19       Q.   Does -- does -- by your understanding,

20   from everything you can see here in these drawings

21   in the '889 design patent, does this design show a

22   substantially flat back panel?

23           MR. BARTLETT:  Objection.  Calls for a

24   legal conclusion.  Calls for expert testimony.

25           THE WITNESS:  I -- I can't make a judgment

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 57

1    based on these drawings.

2    BY MR. ZELLER:

3         Q.   Directing your attention to Figure 6.

4              You'll see on the right portion of

5    Figure 6 -- and this is a profile of a device -- a

6    generally circular shape there.

7              Do you see that?

8         A.   Mh-hmm.  Yes.

9         Q.   What's that depict?

10             MR. BARTLETT:  Objection.  Calls for a

11   legal conclusion.  Calls for expert testimony.

12             THE WITNESS:  I can't -- I can't depict

13   that.  I can't -- yeah.  I don't know.

14   BY MR. ZELLER:

15        Q.   Directing your attention to Figure 9,

16   you'll see that Figure 9 depicts the side of the

17   device as well as part -- the part of the front

18   surface.

19             Do you see that?

20        A.   Yes.

21        Q.   But you'll see that that -- that circular

22   shape that's part of Figure 6 is not shown on the

23   side of Figure 9.

24             Do you see that?

25        A.   Yes, I see that.  Yeah.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 58

1      Q.   Do you have an explanation as to why that

2   is?

3      A.   I don't know.  Sorry.

4           MR. BARTLETT:  It's okay.

5           Objection.  Vague.  Also calls for

6   speculation and calls for expert testimony.  Calls

7   for a legal conclusion.

8           THE WITNESS:  I don't know.

9   BY MR. ZELLER:

10     Q.   Is this circular shape we've been

11  discussing that's depicted in Figure 6 part of the

12  claim design of the '889 design patent?

13          MR. BARTLETT:  Calls for a legal

14  conclusion.  Calls for expert testimony.  Calls for

15  speculation.

16          THE WITNESS:  I don't know.

17  BY MR. ZELLER:

18     Q.   Directing your attention to Figure 9,

19  you'll see that it shows the top portion of the

20  device, as it's being held by the individual who's

21  shown here, as somewhat of a wedge shape.

22          Do you see that?

23          MR. BARTLETT:  Objection.  Calls for a

24  legal conclusion.  Calls for expert testimony.

25          THE WITNESS:  I'm sorry.  Wedge -- wedge

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 59

1   shape?

2   BY MR. ZELLER:

3       Q.   Yes.   Wedge, W-E-D-G-E.   And I'm referring

4   here to the top portion of the device as -- from the

5   perspective of the individual holding it here in

6   Figure 9.

7               MR. BARTLETT:  Same objection.  Also

8   assumes facts.

9               THE WITNESS:  I don't know.

10  BY MR. ZELLER:

11      Q.   Do you know whether or not the design

12  that's depicted here in the '889 design patent is

13  showing a wedge-shaped profile or a straight-shaped

14  profile?

15              MR. BARTLETT:  Objection.  Calls for a

16  legal conclusion.

17              THE WITNESS:  I don't.

18              MR. BARTLETT:  Calls for expert testimony.

19              One at a time.  So I have to finish my

20  objection before you respond so that she can get

21  them down, one after the other.

22              THE WITNESS:  Okay.

23              MR. ZELLER:  And, I'm sorry, you got the

24  answer?

25              THE REPORTER:  (Nods head.)

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 60

1  BY MR. ZELLER:

2      Q.   Directing your attention to Figure 2,

3  you'll also see that the -- one side shape of the

4  device that's shown here looks thicker in that

5  corner that's closest to us, and then it looks like

6  it goes into a wedge shape as you move to the -- the

7  right.

8           Do you see that?

9           MR. BARTLETT:  Objection.  Calls for a

10 legal conclusion.  Calls for expert testimony.

11          THE WITNESS:  I don't see -- I can't -- I

12 can't say the shape -- I can't see the shape based

13 on these drawings.

14 BY MR. ZELLER:

15     Q.   And when you say you can't see the shape

16 based on these drawings, you can't tell what shape

17 is being depicted here for the profile of the

18 device --

19          MR. BARTLETT:  Objection.

20 BY MR. ZELLER:

21     Q.   -- is that true?

22          MR. BARTLETT:  Objection.  Calls for a

23 legal conclusion.  Calls for expert testimony.

24          THE WITNESS:  I -- I can't make a judgment

25 based on -- on this drawing.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 61

1   BY MR. ZELLER:

2       Q.   Can you make a judgment as to the shape of

3   the profile that's being depicted here in the '889

4   design patent based on all the drawings that are

5   available to you and the other information in the

6   '889 design patent?

7               MR. BARTLETT:  Objection.  Calls for a

8   legal conclusion.  Calls for expert testimony.

9               THE WITNESS:  I can't make a judgment

10  based on this -- on these drawings.

11  BY MR. ZELLER:

12      Q.   Directing your attention to Figure 1.

13              Earlier we were talking about the interior

14  rectangular lines.

15      A.   Yes.

16      Q.   Do you recall that?

17              Is the interior of that -- that area

18  within the interior rectangular lines intended to

19  depict the active area of the display?

20              MR. BARTLETT:  Objection.  Calls for a

21  legal conclusion.  Calls for expert testimony.

22              THE WITNESS:  I don't know.

23  BY MR. ZELLER:

24      Q.   Is there kind of -- any kind of active

25  area of a display screen that's depicted in the '889

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 62

1    design patent?

2              MR. BARTLETT:  Same objections.

3              THE WITNESS:  I can't make that judgment.

4    BY MR. ZELLER:

5        Q.   Does the '889 design patent depict any

6    bands or any kind of margin or area on the front

7    surface that's outside of an active display screen

8    area?

9              MR. BARTLETT:  Same objections.  Also

10   vague.

11             THE WITNESS:  I can't -- I can't make that

12   judgment.

13   BY MR. ZELLER:

14       Q.   You can't tell based on the drawings

15   that -- and the other information that's here in the

16   '889 design patent?

17             MR. BARTLETT:  Same objections.

18             THE WITNESS:  I -- I can't make that

19   judgment based on these -- these patent drawings.

20   BY MR. ZELLER:

21       Q.   Directing your attention to Figure 1,

22   you'll see that there is a -- a line that runs

23   through part of the -- or around part of the

24   perimeter of the device that is thicker and darker

25   than the other lines.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 63

1          You see that portion?

2     A.   Yes.

3          MR. BARTLETT:  Same objections.

4   BY MR. ZELLER:

5     Q.   What does that represent?

6          MR. BARTLETT:  Same objections.

7          THE WITNESS:  I can't make a judgment

8   based -- based on these drawings.

9   BY MR. ZELLER:

10    Q.   Do you have any knowledge or information

11  as to what that darker line running part of the

12  perimeter of Figure 1 represents?

13         MR. BARTLETT:  Same objections.

14         THE WITNESS:  I -- I can't make a judgment

15  based on these drawings.

16  BY MR. ZELLER:

17    Q.   Well, again, I'm now divorcing it from the

18  drawings.

19         Do you have information as to that as --

20  from any source?

21         MR. BARTLETT:  Objection.  Vague.

22         THE WITNESS:  So can you re- -- can you

23  ask that question again?

24  BY MR. ZELLER:

25    Q.   Sure.

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 64

1           What I'm trying to find out is do you have

2    any knowledge or information from any source as to

3    what that darker line represents that runs part of

4    the perimeter of Figure 1?

5           MR. BARTLETT:  Same objections.  Calls for

6    expert testimony.  Calls for a legal conclusion.

7           THE WITNESS:  I can't speak to that darker

8    line that you're referring to.

9    BY MR. ZELLER:

10       Q.   Does that darker line that we're

11   discussing, that's shown here in Figure 1, depict an

12   area that has vents?

13          MR. BARTLETT:  Objection.  Calls for a

14   legal conclusion.  Calls for expert testimony.  And

15   also calls for speculation.

16          THE WITNESS:  I can't make that -- I can't

17   make that judgment.

18   BY MR. ZELLER:

19       Q.   Directing your attention to Figure 9,

20   you'll also see that there's an area where it has a

21   darker, thicker line that runs around the perimeter

22   of the front of the device.

23          You see that --

24       A.   Yes.

25       Q.   -- that portion there?

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 65

1        A.    Mh-hmm.

2        Q.    Is -- do you know what that depicts?

3              MR. BARTLETT:  Same objections.

4              THE WITNESS:  No.

5    BY MR. ZELLER:

6        Q.    Does that depict vents?

7              MR. BARTLETT:  Objection.  Calls for a

8    legal conclusion.  Calls for expert testimony.

9    Calls for speculation.

10             THE WITNESS:  I can't make a judgment

11   based on that drawing.

12   BY MR. ZELLER:

13       Q.    Well, setting aside, then, the '889 design

14   patent for a moment, you do recall that there was a

15   mockup of the tablet design that you worked on there

16   at Apple that had vents that ran part of or all of

17   the perimeter of the front of the device?

18       A.    I don't recall.

19       Q.    Well, let's -- let's perhaps see if a

20   mockup can help refresh your recollection.

21             MR. ZELLER:  Is this one?

22             MS. NEILL:  It is, yeah.

23             MR. ZELLER:  And for the record, Apple's

24   counsel was kind enough to bring the mockup.  It's a

25   three-dimensional tangible item that I will show the

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

Page 66

1    witness.

2            And also when we get to it, I have some

3    photographs too that we can -- we can use to make

4    sure we have a clear record as to what's being

5    discussed.

6            So for the record, I'm now handing you the

7    mockup.

8        Q.   And my first question for you is, setting

9    aside this particular mockup for a moment, but do

10   you recall, generally speaking, seeing from time to

11   time one or more mockups of tablet designs back at

12   the time when you were working on the designs for a

13   tablet computer there at Apple?

14       A.   Yes.

15       Q.   Did you yourself personally participate in

16   the creation of the mockups?

17           MR. BARTLETT:  Objection.  Vague.

18           THE WITNESS:  In the physical building of

19   the mockup?

20   BY MR. ZELLER:

21       Q.   Well, let's start there.

22       A.   We -- well, we have a group of model

23   makers that would -- would build our designs that we

24   come up with.

25       Q.   The model shop personnel were the ones who