KARL OLSON (SBN 104760)
kolson@rocklawcal.com
XINYING VALERIAN (SBN 254890)
xvalerian@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

*Attorneys for Third-Party REUTERS AMERICA LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean Business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO.  11-cv-01846-LHK<br><br>**THIRD PARTY REUTERS AMERICA LLC'S OPPOSITION TO VARIOUS THIRD PARTY MOTIONS TO SEAL**<br><br>Date:     July 27, 2012<br>Time:     3:00 p.m.<br>Place:    Courtroom 1, 5th Floor<br>**Judge:    Hon. Lucy H. Koh** |

## I.    INTRODUCTION

Various third parties have filed administrative motions to seal, primarily based upon the claim that they have license agreements with either Apple or Samsung (or both) whose terms should remain confidential.  Well-settled rules govern the disposition of these motions and, we respectfully submit, call for their denial.

## II.    NON-PARTY RELIANCE UPON PROTECTIVE ORDER OR CONFIDENTIALITY AGREEMENT IS UNREASONABLE AND NOT A COMPELLING REASON TO SEAL.

First, as the Ninth Circuit explained in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1183 (9th Cir. 2006), "we have held that a non-party's reliance on a blanket protective order is unreasonable and is not a 'compelling reason' that rebuts the presumption of access." Thus, even if the third parties negotiated contracts with Apple or Samsung providing for

1   confidentiality, those agreements cannot and do not control in the arena of a public courtroom.

2   "[T]he claimed reliance on the order is not a 'compelling reason' that rebuts the presumption of

3   access." (*Id.* at 1183; *see also Littlejohn v. BIC Corporation*, 851 F.2d 673, 676  (3rd Cir. 1988).

4   **III.    ALLEGED CONFIDENTIALITY IS NOT WITHOUT MORE A TRADE SECRET**
        **AND NOT A COMPELLING REASON TO SEAL.**

5

6   Second, talismanic incantations that information is a trade secret are not enough to meet

7   the "compelling reasons" standard required to rebut the presumption of openness.  As the Third

8   Circuit explained in *Littlejohn v. BIC Corporation*, 851 F.2d 673, 685, "documents do not

9   contain trade secrets merely because they are confidential."  Thus, the mere fact that a line from

10   an expert's exhibit may contain a financial term from a licensing arrangement that a third party

11   would prefer to keep under wraps is not enough to meet the "compelling reasons" standard

12   required for sealing.

13   As the Third Circuit in *Littlejohn* explained, in terms entirely consistent with the Ninth

14   Circuit's *Kamakana* decision, "The presumption of public access to evidentiary materials is

15   strong."  (851 F.2d at 684.)  In that case, the district court rejected arguments that portions of the

16   judicial record contained trade secret or confidential business information (*id.* at 685), and the

17   Third Circuit affirmed.  (*Id.* at 685.)  The Third Circuit explained: "The affidavit does support

18   BIC's contention that the documents contain confidential information which might injure its

19   commercial standing.  But documents do not contain trade secrets merely because they are

20   confidential. [Citation.] Under these circumstances, we cannot find that the district court's

21   finding of fact is clearly erroneous."  (*Ibid.*)

22   In *Littlejohn*, the Third Circuit drew the line where this Court drew it on July 18 in telling

23   the parties that while "third party source code" might merit sealing, the rest of the trial would be

24   open and no other sealing would be allowed.  (July 18 Transcript at 87-89.)  The Third Circuit

25   explained, "Further, non-trade secret but confidential business information is not entitled to the

26   same level of protection from disclosure as trade secret information.  A private interest in secrecy

27   has not been weighed heavily once the information has been used at trial...."  (851 F.2d at 685.)

28   The Third Circuit rejected an argument, identical to the one asserted by Apple, Samsung and the

1  third parties here, that "disclosure 'would work a clearly defined and serious injury to its

2  interests.'  The injury that BIC describes is an adverse effect on its disposable lighter sales by

3  competitive use of the information and a potential loss in its capital stock value." (*Ibid*.)  The

4  Court explained that the presumption of openness is "not overcome by the proprietary interest of

5  present stockholders in not losing stock value or the interests of upper-level management in

6  escaping embarrassment." (*Ibid*.)

7       The same conclusion follows here as to assertions by such behemoth companies as Nokia

8  and IBM.  These companies have not demonstrated that "a clearly defined and serious injury" is

9  likely to result from disclosure of license terms.  (851 F.2d at 685.)  Their license terms may or

10  may not be confidential but they are not trade secrets like the so-called "secret formula of Coke"

11  so often used to describe that term.

12       Indeed, their attempt to seal such information is similar to Apple's assertion that the

13  margin on iPhone products can be sealed:  that information cannot be deemed a secret since

14  Apple's own expert has publicly filed a declaration disclosing both Apple's $33 billion in

15  revenues from the sale of iPhone products over a two-year period *and* its margins (49 to 58

16  percent) on the sale of iPhones.  (Document 1372, ¶ 6; see Ex. A hereto.)  This kind of

17  information is not sealable.

18  **IV.  INSUFFICIENT SHOWING THAT TERMS ARE CURRENT, AND
      INSUFFICIENT SHOWING OF HARM.**

19

20       Third, the parties and third parties have failed to show, amid their conclusory recitations

21  of harm, that their license terms, or the portions they want to seal, are truly current.  As the Third

22  Circuit explained in *Leucadia v. Applied Extrusion Technologies Inc.*, 998 F.2d 157, 167 (3rd Cir.

23  1993), "In determining whether any document or portion thereof merits protection from

24  disclosure, the district court should be guided by our prior advice that continued sealing must be

25  based on '*current evidence* to show how public dissemination of the pertinent materials *now*

26  would cause the competitive harm they claim."[1]  Whatever amount of money that companies

27  _____

28       [1] Interdigital seeks to seal a Patent License Agreement between it and Samsung which was
     entered into in 2008.  (Document 1134 at 3:7-9.)  Four years are light years in the technology
     field.

1    received in the past from license agreements that may or may not be in effect now do not merit

2    sealing.

3        It also bears mention that the redactions sought by third parties would seem to disclose

4    only total numbers and not more sensitive information.  Thus, even if competitors were able to

5    look at such information they would probably not glean the competitive advantage feared by the

6    third parties since they would not necessarily be able to compare apples to apples.

7    **V.    CLOSING THE COURTROOM, AS ONE THIRD PARTY SUGGESTS, WOULD
            BE IMPERMISSIBLE.**

8
         One third party, Interdigital, has gone so far as to request that the courtroom be closed
9
     during any discussion of its license agreement (Document 1334 at 4:22).  This request should be
10
     summarily denied.
11
         To put things in perspective, we quote the Seventh Circuit in *Hicklin Engineering, L. C. v.*
12
     *R. J. Bartell*, 439 F.3d 346 (9th Cir. 2006):
13
         "What happens in federal courts is presumptively open to public scrutiny.  Judges
14       deliberate in private but issue public decisions after public arguments based on
         public records.  The political branches of government claim legitimacy by
15       election, judges by reason.  Any step that withdraws an element of the judicial
         process from public view makes the ensuing decision look more like fiat and
16       requires rigorous justification.  The Supreme Court issues public opinions in all
         cases, even those said to involve state secrets.  *See New York Times Co. v. United*
17       *States*, 403 U. S. 713 (1971).  A district court issued public opinions in a case
         dealing with construction plans for hydrogen bombs. *United States v. Progressive,*
18       *Inc.*, 467 F. Supp. 990 (W. D. Wis. 1979)."

19   If decisions about state secrets and hydrogen bombs are rendered in public, so should the

20   presentation of evidence about a license agreement.

21   **VI.    CONCLUSION**

22       The California Supreme Court in *NBC Subsidiary v. Superior Court*, 20 Cal. 4th 1178,

23   1211 (1999), observed, "[A] trial court is a public governmental institution.  Litigants certainly

24   anticipate, upon submitting their disputes for resolution in a public court, before a state-appointed

25   or publicly elected judge, that the proceedings in their case will be adjudicated in public. . . .' [a]n

26   individual or corporate entity involved as a party to a civil case is entitled to a fair trial, not a

27   private one.'" That observation holds true not just as to the multi-billion-dollar tussle between

28   Apple and Samsung, but as to the third parties who do business with them.  The parties have

invoked a U. S. District court to resolve their dispute, and by doing so they act with full knowledge that they and those with whom they do business cannot insist upon confidentiality.

The third parties' reliance upon agreements they may have made with Apple or Samsung for confidentiality is not a compelling reason to seal, and their license terms do not rise to the level of trade secrets meriting sealing.  The third party motions should be denied.

Dated:  July 26, 2012

By:  _____*/s/ Karl Olson*_____
Karl Olson (SBN 104760)
RAM, OLSON, CEREGHINO & KOPCZYNSKI
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Tel: 415-433-4949; Fax:  415-433-7311
Email:  kolson@rocklawcal.com

*Attorneys for Reuters America LLC*

N:\docs\1273-02\OppThirdPartyMotsSeal3.doc