# EXHIBIT 46

Confidential Business Information Subject to Protective Order

Page 1

1   UNITED STATES INTERNATIONAL TRADE COMMISSION
2                    Washington, D.C.
3       Before the Honorable Charles E. Bullock
4         Acting Chief Administrative Law Judge
5
6   In the Matter of:                  )
7   CERTAIN ELECTRONIC DIGITAL         )
8   MEDIA DEVICES AND COMPONENTS ) Inv. No. 337-TA-796
9   THEREOF                            )
10                                     )
11
12
13
14            CONFIDENTIAL BUSINESS INFORMATION
15               SUBJECT TO PROTECTIVE ORDER
16
17              DEPOSITION OF RICHARD HOWARTH
18                WEDNESDAY, FEBRUARY 8, 2012
19
20
21
22
23  Job Number: 45710
24  REPORTED BY:
25  JANIS JENNINGS, CSR 3942, CLR, CCRR

Confidential Business Information Subject to Protective Order

Page 161

1  page, the left column at the top says "U.S. Patent
2  Documents," and if you read about two-thirds of the
3  way down you see a reference to the 558,757 patent.
4         Do you see that?
5     A.  Yes, I do.
6     Q.  And the 558,757 patent is Exhibit 4 that
7  we were just talking about a moment ago.  Can you
8  take a look at Exhibit 4.
9     A.  Yes.
10    Q.  Which is the '757 patent.
11    A.  Okay.
12    Q.  And the '757 patent, which is Exhibit 4,
13 is a cited reference in the '678 patent, which is
14 Exhibit 6.
15        Can you tell me what's new or original in
16 the '678 patent compared to the '575 [sic] patent --
17 I'm sorry -- compared to the '757 patent?
18        MS. TAYLOR:  Calls for a legal conclusion.
19        THE WITNESS:  I don't -- I can't answer
20 that, no.  I really don't understand patent drawings
21 very well.  It's difficult for me.
22        MS. TAYLOR:  Scott, is this a good time
23 to -- I need something more to drink.  Is it a good
24 time to take a break?
25        MR. KIDMAN:  Sure.

Confidential Business Information Subject to Protective Order

Page 162

1          MS. TAYLOR:  Thanks.
2          THE VIDEOGRAPHER:  The time is 4:02 p.m.
3  and we are off the record.
4          (Off the record.)
5          THE VIDEOGRAPHER:  The time is 4:19 p.m.,
6  and we are on the record.
7          MR. KIDMAN:  Let's mark the next document
8  as Exhibit 7.
9          (Exhibit 7 was marked for identification
10         and attached hereto.)
11 BY MR. KIDMAN:
12    Q.   And Exhibit 7 is a copy of U.S. design
13 patent 504,889.  And, Mr. Howarth, do you recognize
14 the '889 design patent as a patent on which you are
15 an inventor?
16    A.   I see my name is written here in the list
17 of inventors.
18    Q.   And have you seen this patent before?
19    A.   I don't recall.
20    Q.   Do you recall having any role in the
21 application or prosecution of this patent?
22    A.   I'm not sure exactly what you mean by
23 "application or prosecution" of it.
24    Q.   Do you recall having any role in the
25 preparation of the application for this patent?

Confidential Business Information Subject to Protective Order

Page 163

1    A.    I don't recall that.
2    Q.    And what's new or original about the
3    design shown in the drawings of the '889 patent?
4          MS. TAYLOR:  Calls for a legal conclusion.
5          THE WITNESS:  I can't tell from this what
6    is new -- new about this.
7    BY MR. KIDMAN:
8    Q.    Do you have any understanding as to what's
9    new or original about the design is shown in the
10   '889 patent?
11         MS. TAYLOR:  Calls for a legal conclusion.
12         THE WITNESS:  I'm not trained in reading
13   these sort of patent drawings, so I can't tell you
14   what's new or original based on these.
15   BY MR. KIDMAN:
16   Q.    As a named inventor of the '889 patent,
17   can you tell me if you have any understanding as to
18   what's new or original in the design shown in this
19   patent?
20         MS. TAYLOR:  Calls for a legal conclusion.
21         THE WITNESS:  Again, I -- I haven't been
22   trained in reading patent drawings, and I can't -- I
23   can't tell what these drawings are trying to show.
24   BY MR. KIDMAN:
25   Q.    Did Apple release to market any product

1  with the design that's shown in the '889 patent?
2          MS. TAYLOR:  Calls for a legal conclusion.
3  It's also not relevant to the ITC case.
4          THE WITNESS:  I'm not sure what -- what
5  design is being shown here, based on these drawings.
6  BY MR. KIDMAN:
7     Q.   And so, therefore, you can't tell me if
8  Apple released any product to market with the design
9  that's shown in the '889 patent; is that correct?
10         MS. TAYLOR:  Calls for a legal conclusion.
11         THE WITNESS:  I -- based on these
12 drawings, I can't tell you if Apple released a
13 product that was -- that was like this.
14 BY MR. KIDMAN:
15    Q.   And take a look back at Exhibit 6, which
16 is the '678 patent, and you see on -- it is actually
17 the third page of the '678 patent.  I think we
18 looked at this before, but maybe not.
19         But the '889 patent is one of the cited
20 references in the '678 patent.  Do you understand --
21 do you see that?  If you look at the column on
22 page 3 of the '678 patent that says "U.S. Patent
23 Documents."
24    A.   The what?  Sorry.
25    Q.   Why don't you take a look at Exhibit 6,

1   page 3.
2       A.    Uh-huh.  Yes.
3       Q.    You see the column on the left that
4   says "U.S. Patent Documents"?
5       A.    Uh-huh, yes.
6       Q.    And about a quarter of the way down, there
7   is a reference to the 504,889 patent.
8       A.    I see that.
9       Q.    Okay.  And so the '889, patent which is
10  Exhibit 7, is one of the references cited in the
11  '678 patent, which is Exhibit 6.
12            Are you with me?
13      A.    Got it.
14      Q.    Okay.  And can you tell me what's new or
15  original about the design in the '678 patent over
16  the design in the '889 patent?
17            MS. TAYLOR:  Calls for a legal conclusion.
18            THE WITNESS:  No, I can't tell you that,
19  based on these drawings.
20  BY MR. KIDMAN:
21      Q.    Do you recognize the design in the '889
22  patent as the design of any version of the iPad?
23            MS. TAYLOR:  Calls for a legal conclusion.
24            THE WITNESS:  I'm not sure what this is
25  trying to show (indicating).

Confidential Business Information Subject to Protective Order

Page 166

```
 1   BY MR. KIDMAN:
 2        Q.   And when you say "this," you are referring
 3   to Exhibit 7, which is the '889 patent?
 4        A.   That's correct.
 5        Q.   What was new or original about the
 6   original iPhone when it was brought to market?
 7             MS. TAYLOR:  Calls for a legal conclusion.
 8             THE WITNESS:  I'm not sure it was new or
 9   original about the original -- about the initial
10   iPhone.  It was -- it was a wonderful product when
11   it came out, and it was beautiful.
12   BY MR. KIDMAN:
13        Q.   Can you identify anything that was new or
14   original about the original iPhone when it was
15   brought to market?
16             MS. TAYLOR:  Asked and answered.
17             THE WITNESS:  I think -- I think it was a
18   beautiful product that people seemed to really,
19   really like.  I really liked it.
20   BY MR. KIDMAN:
21        Q.   My question is a little bit different, and
22   that is:  Was there anything that you can identify
23   that was new or original about it?
24             MS. TAYLOR:  Calls for a legal conclusion.
25   Asked and answered.
```

Confidential Business Information Subject to Protective Order

Page 167

1    THE WITNESS:  I'm not sure what was new
2 and original about it.
3 BY MR. KIDMAN:
4    Q.    How about the iPad?  Can you identify
5 anything that was new or original about the iPad
6 when it was brought to market?
7    MS. TAYLOR:  Calls for a legal conclusion.
8    THE WITNESS:  I don't know about new or
9 original for the iPad, because I'm not a lawyer.
10 BY MR. KIDMAN:
11   Q.    Well, I'm not asking for a legal opinion.
12 I'm asking your understanding as an industrial
13 designer.  In your understanding as an industrial
14 designer, was there anything new or original about
15 the iPad when it was first brought to market?
16   MS. TAYLOR:  Calls for a legal conclusion.
17   THE WITNESS:  I'm not sure what was new or
18 original.
19 BY MR. KIDMAN:
20   Q.    Did you ever discuss competitors' products
21 during meetings with the industrial design team?
22   A.    Might have done.
23   Q.    Do you recall ever having done that?
24   A.    Not right now.
25   Q.    Are competitive products ever brought into