# EXHIBIT 47

Confidential Business Information Pursuant to Protective Order

Page 1

1    UNITED STATES INTERNATIONAL TRADE COMMISSION
2                  WASHINGTON, D.C.
3
4  In the Matter of:
                                   Investigation No.
5  CERTAIN ELECTRONIC DIGITAL
   MEDIA DEVICES AND COMPONENTS    337-TA-796
6  THEREOF
7
8
9
10          CONFIDENTIAL BUSINESS INFORMATION
11          PURSUANT TO THE PROTECTIVE ORDER
12
13
14      VIDEOTAPED DEPOSITION OF MATTHEW ROHRBACH
15              San Francisco, California
16            Thursday, February 23, 2012
17
18
19
20
21
22
23  REPORTED BY:
24  CYNTHIA MANNING, CSR No. 7645, CLR, CCRR
25  JOB NO. 45582

Confidential Business Information Pursuant to Protective Order

1  is what I remember.  I -- I don't have any reason
2  to question somebody else's memory.
3  BY MR. KIDMAN:
4      Q.  Take a look back at Exhibit 1, which is
5  the '757 patent.
6          MS. TAYLOR:  Are you done with this?
7          MR. KIDMAN:  I'm sorry?
8          MS. TAYLOR:  Are you done with this?
9          MR. KIDMAN:  You can set it aside for
10 now.
11         MS. TAYLOR:  You can take it later.
12 BY MR. KIDMAN:
13     Q.  And if you look at the second page of
14 the '757 patent under U.S. Patent documents, do
15 you see that?
16     A.  On the left?  Yeah.
17     Q.  Yeah, on the left.  And do you see
18 about a -- a third of the way down, there's a
19 reference to patent No. D504,889.
20         Do you see that?
21     A.  Okay.  Yes.
22     Q.  And it lists the designer -- designers
23 as Andre, et al.
24     A.  Okay.
25     Q.  Do you see that?

Confidential Business Information Pursuant to Protective Order

1    A.   Yes.
2    Q.   You know who Bart Andre is; correct?
3    A.   (Witness nods head.)
4    Q.   Now, look -- take a look at --
5         MR. KIDMAN:  Did we mark this yet?
6    Let's -- let's mark the next document as Exhibit
7    3.
8         (Deposition Exhibit 3 was marked for
9         identification)
10        THE WITNESS:  (Witness reviewing
11   document.)
12        MR. KIDMAN:  And for the record,
13   Exhibit 3 is United States Design -- Design
14   Patent No. 504,889.
15   BY MR. KIDMAN:
16   Q.   And have you seen this patent before?
17   A.   I don't recall seeing it.
18   Q.   Do you see that you're -- I'm sorry?
19   A.   Maybe when I was here for another
20   deposition, but I'm not sure.
21   Q.   Okay.  Apart from what you may have
22   seen in any other deposition, do you recall
23   having seen the '889 patent before?
24   A.   I don't really recall seeing it before
25   that.

Confidential Business Information Pursuant to Protective Order

Page 112

1  Q.  Do you see that you're a named inventor
2  of the '889 patent?
3  A.  Yes.
4  Q.  And do you see that the -- what we've
5  marked as Exhibit 3, and what I'm calling the
6  '889 patent, is referenced as a -- as a cited
7  reference in the '757 patent?
8  A.  Right.  On that second page.  Yeah,
9  okay.
10  Q.  And do you recognize the design that's
11  shown in the figures to the '889 patent?
12  A.  Vaguely.
13  Q.  And what do you recognize the figures
14  in the '889 patent as -- as being?
15  A.  I don't -- I don't recognize it as
16  anything specific, so much as it looks like some
17  of the studies we were doing, design studies.
18  Q.  What design studies are you referring
19  to?
20  A.  Early, early tablet studies, it looks
21  like.
22  Q.  And do you recall when you were doing
23  those early tablet studies?
24  A.  No, I don't recall when.
25  Q.  Do you have any -- any approximation of

Confidential Business Information Pursuant to Protective Order

Page 113

1   when you were doing what you referred to as the
2   early, early tablet studies?
3        A.   No.
4        Q.   Do you recognize the design shown in
5   the figures of the '889 patent as any product
6   shipped by Apple?
7        A.   I -- I don't know what the figures
8   represent.
9        Q.   And, therefore, you can't tell me
10  whether this design in the '889 patent is the
11  design of any product shipped by Apple; is that
12  correct?
13       A.   Yeah, I don't know what -- what it's
14  representing, so I don't know if it's something
15  that shipped or not.
16       Q.   And when you say you don't know what
17  it's representing, what -- what do you mean by
18  that?
19       A.   I mean my understanding is that this
20  is -- this is a document that's used to protect
21  some of our work and -- and so I don't know how
22  this is -- how this is used, so...
23       Q.   Okay.  Well, if you just look at the --
24  the figures themselves --
25       A.   Mm-hmm.

1    Q.  -- and if you just look at the figures
2 as -- as a form of the design drawing, do you
3 recognize the design that's shown in these
4 figures as being any product that Apple has
5 shipped?
6         MS. TAYLOR:  Calls for a legal
7 conclusion.
8         THE WITNESS:  Couldn't say.
9 BY MR. KIDMAN:
10   Q.  And is there a -- a reason why you
11 can't say?
12        MS. TAYLOR:  Asked and answered.
13        Go ahead.
14        THE WITNESS:  Yeah, I'm not -- I don't
15 know how to -- how to -- to read them with a -- I
16 don't know what they mean.
17 BY MR. KIDMAN:
18   Q.  Is that because there's not enough
19 detail in the -- in the figures for you to be
20 able to determine whether this is the design of
21 any product that Apple shipped?
22   A.  It's -- it's because I don't really
23 understand how to interpret what's -- what's
24 presented here for the -- for the purpose of the
25 protection.

Confidential Business Information Pursuant to Protective Order

1    Q.   Okay.  But if somebody were just to
2  hand you design drawings that consisted of these
3  figures that are shown in the '889 patent, would
4  you be able to look at them and -- and identify
5  them as the design of any product that Apple has
6  shipped?
7         MS. TAYLOR:  Objection; calls for a
8  legal conclusion.
9         THE WITNESS:  Can you -- can you ask
10  the question again?
11  BY MR. KIDMAN:
12    Q.   Sure.
13         You seem to be -- have difficulty
14  answering the question because you don't know how
15  to legally interpret the figures of a patent
16  drawing, and I -- and I understand that you're
17  not a patent lawyer or a lawyer, but I'm not
18  asking you for -- for a legal conclusion.
19         So with that background, if you just
20  look at these figures in the patent as if they
21  were design drawings that you were to see in the
22  ordinary course of performing your job as an
23  industrial designer, would you be able to
24  recognize or do you recognize what's shown in
25  these figures as the design of any product that

1  Apple has shipped?
2          MS. TAYLOR:  It's an incomplete
3  hypothetical and it calls for a legal conclusion.
4          THE WITNESS:  Yeah, I can't really -- I
5  can't -- I don't know how to -- how to interpret
6  the drawings.  I -- I can't -- I can't see them
7  as a design.
8  BY MR. KIDMAN:
9      Q.   So when you look at these -- these
10 figures, you don't see them as showing a design
11 of any product that Apple has shipped; is -- is
12 that -- that correct?
13     A.   I'm just not sure what -- what I'm
14 looking at, so that's -- that's what I mean.
15     Q.   And when you say you're not sure what
16 you're looking at, what -- what do you mean by
17 that?
18     A.   I mean it -- it is a -- it is a
19 document that's intended to serve a purpose, so I
20 can't really -- I can't really see past that.  I
21 don't understand the purpose.
22     Q.   And I'm not asking you to draw any kind
23 of legal conclusion, okay.  I'm just asking you
24 to look at these figures and tell me, based on
25 the lines you see on the page, as to whether the

Confidential Business Information Pursuant to Protective Order

Page 117

1  design that's shown in the '889 patent is the
2  design of any product that Apple has shipped?
3          MS. TAYLOR:  Calls for a legal
4  conclusion; it's a incomplete hypothetical.
5          THE WITNESS:  I don't know.
6  BY MR. KIDMAN:
7     Q.   Do you know what was new or original
8  about the design that's shown in the '889 patent
9  at the time that it was thought up?
10         MS. TAYLOR:  Legal -- calls for a legal
11 conclusion.
12         THE WITNESS:  No, I don't.
13 BY MR. KIDMAN:
14    Q.   Do you know when the design that's
15 shown in the '889 patent was conceived of?
16         MS. TAYLOR:  Same objection.
17         THE WITNESS:  No.
18 BY MR. KIDMAN:
19    Q.   Do you know when the design that's
20 shown in the '889 patent was completed?
21         MS. TAYLOR:  Same objection.
22         THE WITNESS:  No, I don't.
23 BY MR. KIDMAN:
24    Q.   You see that you're a named inventor of
25 the design shown in the '889 patent; correct?