# EXHIBIT A

```
                              Volume 10
                          Page 1870 - 2046

                   UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
              BEFORE THE HONORABLE JAMES WARE, CHIEF JUDGE
-------------------------------)
                               )
Mformation Technologies, Inc., )
                               )
            Plaintiff,         )
                               )
   v.                          )  No. C 08-4990 (JW)
                               )
Research In Motion, Ltd.,      )
et al.,                        )
                               )
            Defendants.        )  San Francisco, California
                               )  Tuesday, July 3, 2012
-------------------------------)


                        TRANSCRIPT OF PROCEEDINGS

APPEARANCES:


For Plaintiff:          Foley & Lardner, LLP
                        3579 Valley Centre Drive
                        Suite 300
                        San Diego, California 92130
                  BY:   AMAR L. THAKUR
                        LISA MARIE NOLLER
                        SHAWN E. MCDONALD
                        ALLEN A. ARNTSEN
                        RUBEN RODRIGUES

Also Present:           Rakesh Kushwaha, MTO, CEO
```

Connie Kuhl, Certified Realtime Reporter
Official Reporter - USDC  (415) 431-2020

```
APPEARANCES (cont.):


For Defendant:          WilmerHale
                        305 South Grand Avenue
                        Suite 2100
                        Los Angeles, California 90071
                  BY:   MARK G. MATUSCHAK
                        ANDREW B. GROSSMAN

                        Kirkland & Ellis, LLP
                        300 North LaSalle
                        Chicago, Illinois 60654
                  BY:   LINDA S. DeBRUIN
                        AARON D. CHARFOOS
                        TIFFANY PATRICE CUNNINGHAM
                        FERLILLA VICTORIA ROBERSON
                        MARIA A. MARAS
                        MICHAEL DALEY KARSON

Also Present:           Ray Dikun, RIM Vice-President
```

Connie Kuhl, Certified Realtime Reporter
Official Reporter - USDC  (415) 431-2020

Tuesday, July 3, 2012

                                                (9:00 a.m.)

        (In open court; jury not present)
        DEPUTY CLERK:  Remain seated and come to order.
        THE COURT:  Good morning.
        Very well.  We're on the record out of the
presence of the jury.
        I received some requests having to do with
matters that are coming up, but they don't deal with the
current witness, correct?
        MR. MATUSCHAK:  That's correct, your Honor.
        MR. CHARFOOS:  We do have one issue that relates
to the current witness, and I believe Mr. Matuschak has
another issue more generally relating to the trial.
        THE COURT:  So how long -- who is the current
witness, remind me.
        MR. CHARFOOS:  Julie Davis, RIM's damages expert.
        THE COURT:  I see.  And how long will that be?
        MR. CHARFOOS:  The testimony?  Or the argument
about what we need to argue about?
        THE COURT:  Is there an argument with respect to
that witness?
        MR. CHARFOOS:  There is.
        THE COURT:  All right, what's that motion?
        MR. CHARFOOS:  Your Honor, we had submitted to

you last week Exhibit 853, which was the cost to
recreate the '917 patent.  That particular document was
in fact created in the overall context of the Mesirow
valuation for the patent itself; and, therefore,
plaintiffs argue that it should be excluded under the
Court's motion in limine.
        That document, however, was created by
Dr. Kushwaha himself.  And although it was provided to
Mesirow, it was an independent analysis of the cost to
recreate the patent.
        THE COURT:  I'm sorry, what is a cost to recreate
a patent?
        MR. CHARFOOS:  It was his estimated amount of
time and effort put in to develop the '917 patent.
Which came to roughly a million dollars.
        Now, Georgia-Pacific Factor No. 8 goes to the
overall profitability of the product.  And I'm concerned
in particular, in addition to its relevance to the
analysis that Ms. Davis conducted, that Mr. Basu may
have left the jury with a misimpression that, if you
recall, Mformation had lost money in all the years
leading up to 2010, and Mr. Basu said that one of the
reasons they lost money was because they were
reinvesting in the company.
        And he specifically says at page 409, starting at

Connie Kuhl, Certified Realtime Reporter
Official Reporter - USDC  (415) 431-2020

Connie Kuhl, Certified Realtime Reporter
Official Reporter - USDC  (415) 431-2020

```
 1   line 22:  "You invest those years with your intellectual
 2   property, and once the revenue starts coming in, your
 3   losses turn into profit."
 4        I don't want the jury to be left with the
 5   impression that Mformation has spent $111 million
 6   investing in the '917 patent when it's only been a
 7   million.  And, therefore, your Honor, we would ask that
 8   Ms. Davis be allowed to discuss 853, and that it be
 9   introduced into evidence.
10        MR. ARNTSEN:  And your Honor, we think that this
11   is part of the Court's ruling.  With the third-party
12   valuations, the Court said that damages for patent
13   infringement are determined on the basis of a
14   hypothetical negotiation at the time infringement began,
15   citing the Unilaw case.  The Court finds that
16   third-party valuations at issue are not relevant and
17   thus are in.
18        In particular, none of the reports at issue
19   attempted to assess the value of the '917 patent at the
20   time infringement began, none assumed the patent was
21   both valid and infringed.  Thus, admission of these
22   reports is likely to confuse the jury by introducing a
23   basis for evaluating damages that differs entirely from
24   that the jury is being asked to apply.
25        And that's exactly the case with this document
```

```
 1   here.  Essentially what it shows is the person here
 2   involved writing the software for Mformation's product.
 3   And it's got nothing to do with the damage
 4   determination.  It's inappropriate for an expert to rely
 5   on it because it's counter to Federal Circuit law and
 6   this Court's in limine decision, and it would only
 7   confuse the jury.
 8        THE COURT:  You're offering it on damages?
 9        MR. CHARFOOS:  Yes, your Honor.  Because it's
10   relevant to, number one, the profitability of the
11   product, as well as the relative value of that product.
12   How much time and effort was put into creating it.
13        THE COURT:  What product?  The patent is not a
14   product.
15        MR. CHARFOOS:  But -- I'm sorry, I misspoke.
16   It's the cost to recreate the '917 patent itself.
17        THE COURT:  Well, how is that -- how is that
18   relevant to damages?  Because someone can come up with a
19   patented idea very quickly and other people can take a
20   long time.  I've never thought about that as a damage
21   issue.
22        MR. CHARFOOS:  Again, the profitability of the
23   commercial invention is one of the Georgia-Pacific
24   Factors, and so to the extent that this document shows
25   the profitability of the commercial invention, then that
```

```
 1   would go to Georgia-Pacific Factor No. 8.  And you know,
 2   other courts, including the Federal Circuit, have
 3   allowed those kinds of inquiries into the profitability.
 4        And again, Mr. Basu suggested that they're
 5   investing all of this money into their intellectual
 6   property, and I think it's important for the jury to
 7   understand that it did not cost $111 million to create
 8   the '917 patent.  It was $1 million, according to
 9   Dr. Kushwaha's own analysis.
10        The other thing --
11        THE COURT:  Okay.  That the testimony you're
12   trying to rebut was that it cost that to develop
13   the '917 patent.  And you can argue that those numbers
14   are not the basis.  The objection is sustained to using
15   this for damages.
16        Now, it seems to me that there might be other
17   purposes, but that is not one of the permissible
18   purposes.
19        Anything else with respect to this witness?
20        By the way, I have the same kind of concern with
21   respect to the rebuttal, but I guess I can wait on that.
22   That's why I was asking about the timing.
23        MR. CHARFOOS:  There is one other thing with
24   respect to this witness, Mformation's counsel, and we've
25   talked about this ahead of time, is intending to use
```

```
 1   some of the RIM's license agreements with Ms. Davis.
 2   These are very, very sensitive license agreements.
 3        Number one, we would request that those
 4   agreements, to the extent that they're introduced into
 5   evidence, be brought in under seal.
 6        And number two, your Honor, we would ask that you
 7   would close the courtroom for the discussion of RIM's
 8   license agreements.  Mr. Arntsen -- and he can step in
 9   if I misrepresent -- has taken those license agreements
10   and grouped them together in a single section of his
11   cross-examination, and we'll notify the Court before he
12   begins that, which will allow that time that the
13   courtroom's closed to be limited and as short as
14   possible.
15        THE COURT:  Any objection?
16        MR. ARNTSEN:  I have no objection.
17        THE COURT:  Very well.  So you have to alert the
18   Court to that.
19        MR. CHARFOOS:  We will alert the Court to that,
20   yes, your Honor.
21        THE COURT:  All right.  Summon the jury.
22        MR. MATUSCHAK:  Your Honor, we have -- we had one
23   other issue.  And that is, I don't know if it's common
24   to you, but there was a -- a report to us last night
25   that there was a contact between a member of the jury
```