# EXHIBIT B

INTEL/SAMSUNG CONFIDENTIAL

# PATENT CROSS LICENSE AGREEMENT

## BETWEEN

## SAMSUNG ELECTRONICS CO., LTD. AND INTEL CORPORATION

This agreement ("Agreement") is made by and between Samsung Electronics Co., Ltd., a Korean corporation, having an office at 10th floor, Samsung Main Bldg., 250-2-KA, Taepyung-RO, Chung-Ku, Seoul, Korea ("SAMSUNG") and Intel Corporation, a Delaware corporation, having an office at 2200 Mission College Blvd., Santa Clara, California 95052, U.S.A. ("INTEL").

### WITNESSETH

WHEREAS, SAMSUNG and INTEL each own patents and patent applications covering inventions pertinent to the design and manufacture of semiconductor products; and

WHEREAS, SAMSUNG and INTEL are both engaged in their respective continuing programs of research and development of semiconductor and integrated circuit technology, which will result in new discoveries and inventions many of which will become the subject of new patent applications and patents;

WHEREAS, SAMSUNG and INTEL each want to respect the technology contributions of the other and want to increase their freedom to design and manufacture their own new products without infringing the rights of the other under any patent or patent application owned or controlled by the other; and

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties agree as follows:

1.0 DEFINITIONS

1.1 "Subsidiary" shall mean a business entity which is at least fifty percent (50%) owned, directly or indirectly, by either INTEL or SAMSUNG. Any right extended to a Subsidiary shall remain in force only during the time that the business entity is at least fifty percent (50%) owned, directly or indirectly, by its parent.

TJ0019/2-4-93                                    1.

592DOC000014
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

1.2 "Effective Date" shall be January 1, 1993, provided that, subsequently, the execution of this Agreement and any approval by or notification of the Government of Korea, if required, has occurred.



1.6 "SAMSUNG Proprietary Products" shall mean any digital logic product originally introduced by SAMSUNG and having at least 32-bit internal processing including without limitation microprocessors, math coprocessors and other semiconductor circuits having an instruction set that are Object Code Compatible with such digital logic products.

1.7 "Object Code Compatible" shall mean a microprocessor, math coprocessor or semiconductor circuit that executes the binary object code statement of substantially all the instructions of a product either in the INTEL Proprietary Products or in the SAMSUNG Proprietary Products.

1.8 "Semiconductor Material" shall mean any material whose conductivity is intermediate to that of metals and insulators at room temperature and whose conductivity, over some temperature range, increases with increases in temperature. Such materials shall include, but not be limited to, refined products, reaction products, reduced products, mixtures and compounds.

1.9 "Semiconductor Device" shall mean a device and any material therefor, comprising a body of one or more Semiconductor Materials and one or more electrodes associated therewith, and, if provided therewith, housing and/or supporting means therefor.

TJ0019/2-4-93                    2.

592DOC000015
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

1.10   "Integrated Circuit" shall mean an integral unit comprising a plurality of active and/or passive circuit elements associated on one or more substrates, such unit forming, or contributing to the formation of, a circuit for performing electrical and electronic functions and, if provided therewith, housing and/or supporting means therefor.

1.11   "SAMSUNG Patents" shall mean all classes or types of patents, utility models and design patents (including, without limitation, originals or divisions, continuations, continuations-in-part or reissues), and applications for these classes or types of all countries of the world now owned or controlled by SAMSUNG (or its Subsidiaries) or later acquired by SAMSUNG (or its Subsidiaries) which (a) have a first effective filing date prior to the expiration or termination of this Agreement and (b) have no requirement to pay consideration to another for the grant of a license under this Agreement, except for consideration paid to employees including, without limitation, U.S. patents 4,025,907; 4,141,027; 4,125,933; 4,338,621 and 4,296,456.  In the event a consideration for a grant of a license under this Paragraph 1.11(b), INTEL shall have the option to extend the consideration and obtain the license grant.



1.14   "INTEL Licensed Products" shall mean any products constituting: (a) Semiconductor Material, (b) Semiconductor Device, or (c) Integrated Circuit excluding any SAMSUNG Proprietary Products.

2.0   MUTUAL RELEASES

2.1   SAMSUNG hereby releases, acquits and forever discharges INTEL from any and all claims or liability for infringement of any SAMSUNG Patents arising

592DOC000016
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

prior to the Effective Date of this Agreement, to the extent a license is herein granted by SAMSUNG.



### 3.0   GRANT OF LICENSES BY SAMSUNG

3.1   SAMSUNG hereby grants to INTEL non-exclusive, non-transferable, worldwide licenses under SAMSUNG Patents  to make, to have made, to use, to sell (either directly or indirectly), to have developed exclusively for INTEL, to lease and to otherwise dispose of INTEL Licensed Products.  These licenses do not apply to SAMSUNG Proprietary Products which are excluded from INTEL Licensed Products.

3.2   With respect to the foundry activities of INTEL to manufacture products for a third party, the grant of Paragraph 3.1 shall only include the manufacturing activity of INTEL and shall exclude the product designs provided by a third party.  The exclusion stated in this paragraph shall not exclude INTEL's library tools or standard cells that INTEL incorporates into any standard or custom Application Specific Integrated Circuits (ASIC's) that INTEL manufactures for its customers.

3.3   INTEL shall have the right to extend the licenses granted pursuant to Paragraph 3.1 and 3.2 hereof to INTEL Subsidiaries.  The extension to an INTEL Subsidiary shall apply only during the time period when the business entity meets all requirements of a Subsidiary and the extended rights remain in effect for INTEL.  Upon written request by SAMSUNG, INTEL will give SAMSUNG written notice to identify any INTEL Subsidiary to which such a license has been extended.

### 4.0   GRANT OF LICENSES BY INTEL



TJ0019/2-4-93                    4.

592DOC000017
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



592DOC000018
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



### 6.0  EFFECTIVE DATE, TERM AND TERMINATION

6.1   This Agreement shall become effective on the Effective Date, and shall continue in effect, unless sooner terminated as elsewhere provided in this Agreement, through December 31, 2002, expiring at the end of such day.

6.2  (a)   If either party hereto commits a material breach of this Agreement and does not correct such breach within forty-five (45) days after written notice complaining thereof is given to such party, this Agreement may be terminated forthwith by written notice to that effect from the complaining party.

  (b)   Either party hereto may terminate this Agreement by giving written notice of termination to the other party at any time upon or after:

  (1)   the filing by the other party of a petition in bankruptcy or insolvency;

  (2)   any adjudication that the other party is bankrupt or insolvent;

  (3)   the filing by the other party of any petition or answer seeking reorganization, readjustment or arrangement of its business under any law relating to bankruptcy or insolvency;

  (4)   the appointment of a receiver for all or substantially all of the property of the other party;

  (5)   the making by the other party any assignment of substantial assets for the benefit of creditors;  or

  (6)   the institution of any proceedings for the liquidation or winding up of the other party's business or for the termination of its corporate charter;

592DOC000019
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

and this Agreement shall terminate on the thirtieth (30th) day after such notice of termination is given.

6.3 If this Agreement is terminated pursuant to Paragraphs 6.2(b), the licenses granted to either party under SAMSUNG Patents or INTEL Patents, as the case may be, shall survive such termination of this Agreement for the life or lives of SAMSUNG Patents or INTEL Patents then existing, as the case may be. If this Agreement is terminated pursuant to Paragraph 6.2(a), the licenses granted to the defaulting party and its Subsidiaries shall terminate forthwith, but the licenses granted to the party not in default shall survive such termination of this Agreement for the life or lives of SAMSUNG Patents or INTEL Patents, as the case may be.

6.4 Upon the expiration of this Agreement, the licenses granted pursuant to this Agreement by one party hereto to the other party hereto under SAMSUNG Patents or INTEL Patents, as the case may be, shall survive for the life or lives of SAMSUNG Patents or INTEL Patents, as the case may be, except as limited by Paragraph 6.3.

## 7.0 MISCELLANEOUS PROVISIONS



TJ0019/2-4-93                    7.

592DOC000020
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



7.3 This Agreement and the licenses granted herein shall inure to the benefit of the parties hereto and the Subsidiaries of the parties as provided in Paragraphs 3.3 and 4.3. Neither party to this Agreement shall assign or transfer any of its rights or privileges hereunder without the prior written consent of the other party and without such authorization or approval of any competent governmental authority as then may be required.



TJ0019/2-4-93                                8.

592DOC000021
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



7.8 This Agreement and matters connected with the performance thereof shall be construed, interpreted, applied and governed in all respects in accordance with the laws of the United States of America and the State of California.

TJ0019/2-4-93                    9.

592DOC000022
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the date below written.

INTEL CORPORATION

By Robert W Reed

Robert W. Reed
Printed Name

Senior Vice President
Title

Feb 8, 1993
Date

SAMSUNG ELECTRONICS CO., LTD.

By Kwangho Kim

K. H. Kim
Printed Name

President
Title

Feb. 8, 1993.
Date

TJ0019/2-4-93                     10.

592DOC000023
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

**AMENDMENT NUMBER 1
TO THE PATENT CROSS LICENSE AGREEMENT
BETWEEN
SAMSUNG ELECTRONICS CO., LTD. AND INTEL CORPORATION
HAVING AN
EFFECTIVE DATE OF JANUARY 1, 1993**

The parties hereby agree to amend the Patent Cross License Agreement Between Samsung Electronics Co., LTD. and Intel Corporation having an Effective Date of January 1, 1993 ▮▮▮▮ as follows:

(1)   Add the following five new definitions as new Sections 1.15, 1.16, 1.17, 1.18, and 1.19 respectively.



1.17   "Amendment Date" shall mean the date upon which the last of the parties executes this Amendment Number 1.



592DOC000024
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

- 2 -



592DOC000025
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

- 3 -



592DOC000026
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

- 4 -



592DOC000027
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

- 5 -

IN WITNESS WHEREOF, the parties hereto have caused this Amendment Number 1 to be duly executed on the dates written below.

**INTEL CORPORATION**

By _____

Ronald J. Smith
_____
Print Name

Senior VP and General Manager
Wireless Communications and Computing Group
_____
Title

Feb. 24, 2003
_____
Date

**SAMSUNG ELECTRONICS CO., LTD.**

By _____

Yun Seung Shin
_____
Print Name

Executive VP and General Manager
_____
Title

Mar. 18, 2003
_____
Date

592DOC000028
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

**AMENDMENT NUMBER 2**
**WITH AN EFFECTIVE DATE OF JULY 1, 2004 ("EFFECTIVE DATE")**

**TO THE**

**PATENT CROSS LICENSE AGREEMENT ("AGREEMENT")**
**BETWEEN**
**SAMSUNG ELECTRONICS CO., LTD. AND INTEL CORPORATION**
**HAVING AN EFFECTIVE DATE OF JANUARY 1, 1993**
**AND AMENDED BY AMENDMENT NUMBER 1 ("AMENDMENT NUMBER 1"),**
**DATED MARCH 18, 2003**

The parties hereby agree to amend the Patent Cross License Agreement Between Samsung Electronics Co., Ltd. and Intel Corporation having an effective date of January 1, 1993 and amended by Amendment Number 1 dated March 18, 2003, as follows:

(1)     Notwithstanding Section 6.1 of the Patent Cross License Agreement, the Patent Cross License Agreement shall be extended and continue in effect until the date that is five (5) years from the Effective Date of this Amendment Number 2 set out above.

(2)     Delete Sections 1.4, 1.5, and 1.6, and add the below definitions as new Sections 1.20 and following.

1.20    "Complete Computer System" means a computer system designed, developed and marketed for use with INTEL Processors or SAMSUNG Processors (as the case may be) and that is assembled substantially into the form ordinarily sold to end users under SAMSUNG's or INTEL's name (as the case may be), that contains, at a minimum, a functional motherboard, one or more INTEL Compatible Processors (if assembled by SAMSUNG) or SAMSUNG Compatible Processors (if assembled by INTEL), an INTEL Compatible Chipset (if assembled by SAMSUNG) or SAMSUNG Compatible Chipset (if assembled by INTEL), power supply, memory, input controllers for a keyboard and pointer or like devices, controllers for a display or like output device and a long term storage device (e.g., hard drive).

1.21    "INTEL Architecture Emulator" shall mean software that, through emulation, simulation or any other process, allows a computer that does not contain an INTEL Compatible Processor (or a processor that is not an INTEL Compatible Processor) to execute binary code that is capable of being executed on an INTEL Compatible Processor.

1.22    "INTEL Compatible Chipsets" shall mean one or more Integrated Circuits that alone or together are capable of electrically interfacing directly (with or without buffering or pin reassignment) with any portion of an INTEL

1

592DOC000001
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

Processor Bus, provided however that neither a SAMSUNG DRAM Integrated Circuit nor the combination of a SAMSUNG DRAM Integrated Circuit with a SAMSUNG Memory Buffer shall be deemed an INTEL Compatible Chipset.

1.23   "INTEL Compatible Processor" shall mean any Processor that (a) can perform substantially the same functions as an INTEL Processor by compatibly executing or otherwise processing (i) a substantial portion of the instruction set of an INTEL Processor or (ii) object code versions of applications or other software targeted to run on or with an INTEL Processor, in order to achieve substantially the same result as an INTEL Processor; or (b) is substantially compatible with an INTEL Processor Bus.

1.24   "INTEL DRAM Integrated Circuit" shall mean one or more Integrated Circuits developed and marketed for and with the sole function of, storing data in and retrieving data from volatile memory storage cells contained on such Integrated Circuit, each volatile memory storage cell comprising a capacitor controlled by an associated transistor where such capacitor must be refreshed at least several times per second to avoid the loss of data, and the only external interface of such Integrated Circuit shall be to a single SAMSUNG Processor Bus.

1.25   "INTEL Licensed Chipsets" shall mean a SAMSUNG Compatible Chipset that is sold or distributed by INTEL incorporated within Complete Computer Systems manufactured and sold by INTEL under INTEL's name that otherwise meet the definition of INTEL Licensed Products

1.26   "INTEL Memory Buffer" shall mean any Integrated Circuit that receives information from a clock generator or a Processor either directly or through another set of Integrated Circuits to transfer data to and from an INTEL DRAM Integrated Circuit wherein: (a) the sole function of such INTEL Memory Buffer is to transfer data between a single SAMSUNG Processor Bus and INTEL DRAM Integrated Circuits and (b) the only external interfaces of such INTEL Memory Buffer shall be to such SAMSUNG Processor Bus and to such INTEL DRAM Integrated Circuits. Notwithstanding the foregoing, an INTEL Memory Buffer shall not include any of the following functionalities or capabilities: non-memory I/O (including networking communications such as LAN, WAN or PAN), system memory arbitration (other than arbitration of signals transmitted over a memory bus, or received from or transmitted to an INTEL DRAM Integrated Circuit or another INTEL Memory Buffer), or graphics processing.

1.27   "INTEL Processor" shall mean a Processor first developed by, for or with substantial participation by INTEL, or the design of which has been purchased or otherwise acquired by INTEL, including without limitation the INTEL 8086, 80186, 80286, 80386, 80486, Pentium®, Pentium Pro, Pentium® II, Pentium® III, Pentium® 4, Pentium® M, StrongARM, XScale, Itanium® processor, Itanium2® processor, 80860 and 80960

2

592DOC000002
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

' INTEL/SAMSUNG CONFIDENTIAL

microprocessor families, and the 8087, 80287, and 80387 math coprocessor families.

1.28    "INTEL Processor Bus" shall mean a proprietary bus or other data path first solely or jointly introduced by INTEL and at any time implemented on an INTEL Processor where BOTH (a) such bus is capable of transferring information between an INTEL Processor and one or more Integrated Circuits (including without limitation the set of protocols defining the electrical, physical, timing and functional characteristics, sequences and control procedures of such bus or data path); AND (b) INTEL has not publicly disclosed the specification for such bus (provided that disclosures that are subject to obligations of confidentiality shall not be deemed public disclosure). For avoidance of doubt, anytime during the term of this Agreement, when INTEL publicly discloses the specification of an INTEL Processor Bus without obligations of confidentiality imposed upon the recipient of such disclosure, such a bus shall be deemed no longer an INTEL Processor Bus as of the date of such a disclosure.



1.31    "New Patents" shall mean SAMSUNG Patents or INTEL Patents filed on and after January 1, 2003 but prior to the expiration or termination of this Agreement.

1.32    "Processor" shall mean any Integrated Circuit or combination of Integrated Circuits capable of processing digital data, such as a microprocessor or coprocessor (including, without limitation, a math coprocessor, graphics coprocessor, or digital signal processor).

1.33    "SAMSUNG Compatible Chipsets" shall mean one or more Integrated Circuits that alone or together are capable of electrically interfacing directly (with or without buffering or pin reassignment) with a SAMSUNG Compatible Processor through a SAMSUNG Processor Bus, provided however, that neither an INTEL DRAM Integrated Circuit nor the combination of an INTEL DRAM Integrated Circuit with an INTEL Memory Buffer shall be deemed a SAMSUNG Compatible Chipset.

1.34    "SAMSUNG Compatible Processor" shall mean any Processor that can perform substantially the same functions as a SAMSUNG Processor by compatibly executing or otherwise processing (i) a substantial portion of

3

592DOC000003
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

the instruction set of a SAMSUNG Processor or (ii) object code versions of applications or other software targeted to run on or with a SAMSUNG Processor, in order to achieve substantially the same result as a SAMSUNG Processor.

1.35   "SAMSUNG DRAM Integrated Circuit" shall mean one or more Integrated Circuits developed and marketed for and with the sole function of, storing data in and retrieving data from volatile memory storage cells contained on such Integrated Circuit, each volatile memory storage cell comprising a capacitor controlled by an associated transistor where such capacitor must be refreshed at least several times per second to avoid the loss of data, and the only external interface of such Integrated Circuit shall be to a single INTEL Processor Bus.



1.37   "SAMSUNG Memory Buffer" shall mean any Integrated Circuit that receives information from a clock generator or a Processor either directly or through another set of Integrated Circuits to transfer data to and from a SAMSUNG DRAM Integrated Circuit wherein: (a) the sole function of such SAMSUNG Memory Buffer is to transfer data between a single INTEL Processor Bus and SAMSUNG DRAM Integrated Circuits and (b) the only external interfaces of such SAMSUNG Memory Buffer shall be to such INTEL Processor Bus and to such SAMSUNG DRAM Integrated Circuits. Notwithstanding the foregoing, a SAMSUNG Memory Buffer shall not include any of the following functionalities or capabilities: non-memory I/O (including networking communications such as LAN, WAN or PAN), system memory arbitration (other than arbitration of signals transmitted over a memory bus, or received from or transmitted to a SAMSUNG DRAM Integrated Circuit or another SAMSUNG Memory Buffer), or graphics processing.

1.38   "SAMSUNG Processor" shall mean a Processor first developed by, for or with substantial participation by SAMSUNG, or the design of which has been purchased or otherwise acquired by SAMSUNG.

1.39   "SAMSUNG Processor Bus" shall mean a proprietary bus or other data path first solely or jointly introduced by SAMSUNG and at any time implemented on a SAMSUNG Processor where BOTH (a) such bus is capable of transferring information between a SAMSUNG Processor and one or more Integrated Circuits (including without limitation the set of protocols defining the electrical, physical, timing and functional characteristics, sequences and control procedures of such bus or data path); AND (b) SAMSUNG has not publicly disclosed the specification for such bus (provided that disclosures that are subject to obligations of

4

HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

confidentiality shall not be deemed public disclosure). For avoidance of doubt, anytime during the term of this Agreement, when SAMSUNG publicly discloses the specification of a SAMSUNG Processor Bus without obligations of confidentiality imposed upon the recipient of such disclosure, such a bus shall be deemed no longer a SAMSUNG Processor Bus as of the date of such a disclosure.

1.40    "SAMSUNG Proprietary Products" shall mean SAMSUNG Compatible Processors, SAMSUNG Compatible Chipsets (subject to the limited license grant for an INTEL Licensed Chipset set out in Section 3.1(b)), and NAND Flash Memory (subject to the limited license grant set out in Section 3.4).

(3)    Replace Section 3.1 with the following Section 3.1.

3.1.    Subject to the terms and conditions of this Agreement, SAMSUNG hereby grants to INTEL a non-exclusive, non-transferable, ▮▮▮▮▮▮ worldwide license, without the right to sublicense, under SAMSUNG's Patents to:

(a)

(1)    make, use, sell (directly or indirectly), offer to sell, import and otherwise dispose of all INTEL Licensed Products; and

(2)    make, have made (subject to the limitations set forth in Section 3.7), use and/or import any equipment and practice any method or process for the manufacture, use, import and/or sale of all INTEL Licensed Products; and

(3)    have made (subject to the limitations set forth in Section 3.7) INTEL Licensed Products by another manufacturer for supply solely to INTEL for use, import, sale, offer for sale or disposition by INTEL pursuant to the license granted above in Section 3.1(a)(1).

These licenses granted in subsections (1), (2), and (3) above do not apply to SAMSUNG Proprietary Products which are excluded from INTEL Licensed Products.

(b)    Subject to the terms of this Agreement, SAMSUNG grants to INTEL a non-exclusive, non-transferable, ▮▮▮▮▮ worldwide license, without the right to sublicense, under SAMSUNG's Patents to

(1)    make, use, sell, offer to sell, import and otherwise dispose of INTEL Licensed Chipsets; provided that INTEL's right to sell and otherwise dispose of such INTEL Licensed Chipsets shall be limited to distribution as incorporated within Complete Computer

5.

592DOC000005
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

Systems manufactured and sold by INTEL under INTEL's name
pursuant to the license granted in Section 3.1(a)(1) above

(2)    make, have made (subject to Section 3.7), use and/or import any
equipment solely for the manufacture, use and/or sale of INTEL
Licensed Chipsets pursuant to the license granted above in Section
3.1(b)(1); and

(3)    have made (subject to Section 3.7), INTEL Licensed Chipsets
by another manufacturer for supply solely to INTEL for use,
import, sale, offer for sale or disposition by INTEL pursuant
to the license granted above in Section 3.1(b)(1).

(4)    Insert the following new sections after Section 3.3:



6

592DOC000006
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



3.7   Have Made Rights.

(a)   INTEL's rights to have products manufactured for it by third parties under the licenses granted under Section 3.1 above shall apply only when (i) the designs, specifications and working drawings (individually and collectively "Product Specifications") for the manufacture of such products to be manufactured by such third party are furnished to the third party manufacturer by INTEL and (ii) the Product Specifications are not originally provided by the third party manufacturer to INTEL unless INTEL also has unrestricted ownership of such design.

(b)   SAMSUNG understands and acknowledges that INTEL Licensed Products may consist of software, and that software is often distributed to end users by providing a single master copy of such software to a distributor, replicator, VAR, OEM or other agent and authorizing such agent to reproduce such software in substantially identical form. Accordingly, SAMSUNG agrees that the licenses granted in this Section 3 are intended to apply to the reproduction and subsequent distribution of such software INTEL Licensed Products in substantially identical form by such authorized agent.

(c)   Upon written request of SAMSUNG, INTEL shall use reasonable commercial efforts, within 30 days of receiving such request, to inform SAMSUNG in writing whether, and if so to what extent, any manufacturer identified by the SAMSUNG is manufacturing any INTEL Licensed Product for INTEL pursuant to the "have made" rights granted under this Agreement.

(5)   Replace Section 4.1 with the following Section 4.1.



7.

HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



8

592DOC000008
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



9

592DOC000009
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL



(8)    In Section 1.1 replace both occurrences of "at least fifty percent (50%) owned" with "more than fifty percent (50%) owned or controlled".

(9)    In Section 7.8 change "California" to "New York".

(10)    Add the following as new Section 7.11:

    7.11   INTEL and SAMSUNG agree that all disputes and litigation regarding this Agreement and matters connected with its

10

592DOC000010
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

performance shall be subject to the exclusive jurisdiction of the courts of the State of New York or of the Federal courts sitting therein.

(11).  Add the following as new Section 7.12:

7.12  The parties represent, warrant and covenant that they shall not participate in the creation or acquisition of Subsidiaries where a primary purpose of such creation or acquisition is to extend the benefits of this Agreement to a third party and agree that any such attempt to extend such benefits shall not extend this license to such third party.



(13)  Replace Sections 6.2, 6.3, and 6.4 with the following:

6.2  (a)  A party may terminate the other party's (or its Subsidiary's as applicable) rights and licenses hereunder upon notice if the other party (or any of its Subsidiaries) hereto commits a material breach

11

592DOC000011
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

INTEL/SAMSUNG CONFIDENTIAL

of this Agreement and does not correct such breach within sixty (60) days after receiving written notice complaining thereof.

(b)    A party hereto may terminate the other party's (or its Subsidiary's as applicable) rights and licenses hereunder upon sixty (60) days written notice of termination to the other party given at any time upon or after:

(1)    the filing by the other party (or its Subsidiary) of a petition in bankruptcy or insolvency;

(2)    any adjudication that the other party (or its Subsidiary) is bankrupt or insolvent;

(3)    the filing by the other party (or its Subsidiary) of any petition or answer seeking reorganization, readjustment or arrangement of its business under any law relating to bankruptcy or insolvency, or the insolvency of such other party;

(4)    the appointment of a receiver, supervisor or liquidator for all or substantially all of the property of the other party (or its Subsidiary) or a money judgment against the other party (or its Subsidiary) which remains unsatisfied for more than thirty (30) days after entry of judgment and such judgment has not been appealed;

(5)    the making by the other party (or its Subsidiary) of any assignment for the benefit of creditors;

(6)    the institution of any proceedings for the liquidation or winding up of the other party's (or its Subsidiary) business or for the termination of its corporate charter;

(7)    the other party undergoes a Change of Control. For purposes of this Section 6.2(b)(7), "Change of Control" shall mean either (a) a transaction or a series of related transactions in which (i) one or more related parties who did not previously own at least a fifty percent (50%) interest in a party to this Agreement obtain at least a fifty percent (50%) interest in such party, (ii) one or more related parties who did not prior to such transaction or series of transactions have the ability to control the decisions of a party to this Agreement or its successor in interest, and have subsequently obtained the ability to control the decisions of a party to this Agreement or its successors in interest, or (iii) a party to this Agreement merges with or transfers substantially all of its assets to a third party in which the shareholders of such party immediately before the transaction own less than a fifty percent (50%) interest in the acquiring or surviving entity

12

592DOC000012
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC

'INTEL/SAMSUNG CONFIDENTIAL

immediately after the transaction or (b) a party acquires, by merger, acquisition of assets or otherwise, all or any portion of another legal entity such that any of the assets, revenue or market value of such party immediately after the close of such transaction are greater than one and two thirds (1 2/3) of the assets, revenue or market value of such party immediately prior to such transaction.

6.3   In the event of termination pursuant to Section 6.2(a) or 6.2(b), the rights and licenses granted to the terminated party shall terminate, but the rights and licenses granted to the other shall survive such termination of this Agreement subject to the non-terminated party's continued compliance with the terms and conditions of this Agreement.

6.4   Survival.  In addition to the options referenced in Sections 3.5 and 4.5, the provisions of Sections 1, 2, 5.4, 6.3, 6.4 and 7 will survive any termination or expiration of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment Number 2 to be duly executed below.

INTEL CORPORATION

By _____

Print Name CRAIG R BARRET

Title CEO

SAMSUNG ELECTRONICS CO., LTD.

By _____

Print Name Chang Gyu HWANG

Title President & CEO

13

592DOC000013
HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
Produced by Intel Corporation
Re Application of Apple, Inc., et al. No. CV-11-80169-MISC