# Exhibit A

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S REPLY IN SUPPORT OF RENEWED MOTION TO SEAL** |

Third party intervenor Reuters America LLC seeks unfettered disclosure of *all* confidential information with no consideration for whether materials are trade secrets or would cause significant injuries to the parties upon disclosure. (Dkt. No. 1248 at 4) ("[E]ven if some of the exhibits and testimony at issue do contain highly confidential commercial information or trade secrets, the disclosure of which would cause a demonstrated and significant competitive injury . . . the Court can and should find that the public's interest in the information sought outweighs the defendants' competitive interests.") It is therefore no surprise that Reuters urges the Court to classify all interests as "conclusory" and reject sealing *anything*. Reuters opposes every motion to seal, regardless of where the harm will flow: to Apple, Samsung, or bystander third parties who have appeared to seal their materials. (*See, e.g.*, Dkt. No. 1383) (opposing motions to seal filed by Nokia, IBM, and Interdigital).

Reuters' opposition fails for several reasons. Reuters incorrectly applies the "compelling reasons" standard to all of the documents at issue, even though many of the documents at issue were filed months ago and the majority pertain to non-dispositive motions, governed by the lower "good cause" standard. Reuters ignores arguments and cited cases, instead citing inapposite cases that did not even involve declarations or the relevant standard and cases involving only the most threadbare sealing declarations. Finally, Reuters mischaracterizes Apple's detailed declarations as "conclusory" and incorrectly suggests they should be ignored simply because they are declarations from attorneys. As additional support for the declarations already filed by Apple, Apple submits herewith the declarations of Mark Buckley and Gregory Joswiak in support of Apple's Motions to Seal.

### 1. Non-dispositive motions are governed by the "good cause" standard, not the higher "compelling reasons"

Reuters' argument that "the parties must show compelling reasons to seal anything at this stage of the proceedings" is wrong.[1] The "compelling reasons" standard governs dispositive

---

[1] Contrary to Reuters' suggestion, Apple did not "concede" that the "compelling reason" standard governs its motion. Apple focuses on the compelling reasons standard because all of the documents it seeks to seal meet that standard, so *a fortiori* Apple meets the "good cause" standard.
(Footnote continues on next page.)

motions. Motions to seal are not governed by the higher standard simply because trial is near—were it otherwise, the "compelling reasons" standard would govern motions *in limine*, and it does not. *Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 U.S. Dist. LEXIS, 38654, at *2-4 (N.D. Cal. Mar. 30, 2011) (order granting in part motion to seal pretrial filings, stating "good cause standard applies . . . to the parties' motions *in limine*, which are nondispositive motions[.]"); *Adobe Sys. v. Hoops Enter. LLC*, No. C 10-2769 CW, 2012 U.S. Dist. LEXIS 72741, at *2-3 (N.D. Cal. May 24, 2012) (applying good cause standard and granting motion to seal motions *in limine*); *see also Reilly v. Medianews Group, Inc.*, No. 06-04332 SI, 2007 U.S. Dist. LEXIS 8139, at *11-12 (N.D. Cal. Jan. 24, 2007) (denying intervenor's motion to unseal documents as to seventeen of nineteen documents, holding that "detailed financial information" met good cause standard attached to nondispositive motions).

**2.  Reuters ignores Apple's arguments and the relevant case law**

Reuters ignores Apple's arguments and case law, dismissing Apple's detailed declarations as "conclusory" while citing only cases that bear no resemblance to the facts here. (Dkt. No. 1130 at 2-4). Neither *Hagestad v. Tragesser*, 49 F.3d 1430, 1434-35 (9th Cir. 1995) nor *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) even involved an alleged inadequate declaration. Those cases involved district court orders that the Ninth Circuit found too vague to review on appeal. *Allegro Corp. v. Only New Age Music*, No. CV-01-790-HU, 2004 U.S. Dist. LEXIS 9061, at *3-4 (D. Or. 2004) involved an affidavit stating simply that sales, earnings, salaries, *and* profit margins "could be highly damaging to [the party's] business," with absolutely no indication in the opinion that the declaration explained *why* such disclosure would be damaging. *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 305 (2002) did not even involve the relevant standard (it is a state court case) and it involved an attempt to classify a

---

(Footnote continued from previous page.)

But this higher standard governs only the documents Apple seeks to seal that were submitted with the parties' summary judgment briefing.

APPLE'S REPLY IN SUPPORT OF RENEWED MOTION TO SEAL
CASE NO. 11-CV-01846-LHK
sf-3175740

2

1  *telemarketing script* that was disclosed to the *public* as a "trade secret" under California trade
2  secret law.
3     By contrast, the cases Apple cites show a level of detail commensurate with the detail
4  provided by Apple satisfying the "compelling reasons" standard.  In *TriQuint Semiconductor v.*
5  *Avago Techs., Ltd.*, No. CV 09-1531-PHX-JAT, 2011 U.S. Dist. LEXIS 143942, at *8-12 (D.
6  Ariz. Dec. 13, 2011) the court summarized the party's explanation with respect to financial and
7  manufacturing capacity documents:
8  > TriQuint asserts that its competitive standing will be seriously
9  > harmed if certain sales information is released to the public because
10 > it would provide competitors with information regarding TriQuint's
11 > capacity, business strategy related to particular industries and
12 > markets, and the value of its business in certain products . . . .
   > TriQuint asserts that revealing [manufacturing capacity]
   > information to the public would harm its competitive standing
   > because it would allow competitors to tailor their own production
   > and sales strategies to compete with TriQuint more effectively.
13 These are very similar—and if anything, more cursory than—the explanations Apple proffered in
14 support of its renewed motion to seal.  (Dkt. No. 1317-4 ¶ 3.)  The *TriQuint* court held that these
15 were compelling reasons to seal the relevant material.  Similarly, the *Network Appliance* court
16 found compelling reasons to seal where confidential information "was obtained from third-
17 parties . . . designated by third parties as 'Attorneys Eyes Only,' and disclosure could cause harm
18 to the third parties."  *Network Appliance, Inc. v. Sun Microsystems Inc.,* No. C-07-06053 EDL,
19 2010 U.S. Dist. LEXIS 21721, at *7 (N.D. Cal. Mar. 10, 2010); *compare* Dkt. No. 1317-4 ¶¶ 3-4
20 (providing reasons third parties would be harmed), 1317-4 ¶ 5, 1317-2 ¶ 2.  And the *AMC Tech.*
21 court found that a declaration stating a product specification had "a comprehensiveness and level
22 of detail" beyond what was publicly available established compelling reasons for sealing. *Amc*
23 *Tech.,L.L.C. v. Cisco Sys.*, Case No. 5:11-cv-03403-PSG, 2012 U.S. Dist. LEXIS 9934, at *4-6
24 (N.D. Cal. Jan. 27, 2012); *compare* Dkt. No. 1317-4 ¶ 6.
25    Reuters does not rebut Apple's argument that the material at issue does little to nothing to
26 aid the public in understanding the judicial process.  The electrical schematic is irrelevant as there
27 are no hardware patents at issue in the case.  The Court has held that the FingerWorks acquisition
28 is irrelevant (Dkt. No. 1267 at 3), but Reuters ignores this.  Reuters does not explain how the

level of fine detail covered in Apple's proposed redactions and sealing requests is of any value to the general public in terms of understanding the judicial process, the parties' respective positions on the motions which they were offered to support, or the Court's Orders. *Richardson v. Mylan Inc.*, Case No. 09-CV-1041-JM (WVG), 2011 U.S. Dist. LEXIS 23969, at *7-8 (S.D. Cal. Mar. 9, 2011) (information "of comparatively little value to the general public in terms of enhancing its understanding of the judicial process" sealable) (internal quotation omitted); *Network Appliance*, 2010 U.S. Dist. LEXIS 21721, at *13-14 (material that would "do little to aid the public's understanding of the judicial process, but have the potential to cause significant harm" to one of the parties sealable). Reuters' position is simply that all information should be unsealed, no matter how tangential or irrelevant to the facts of the case, and no matter the harm to the parties *or* third parties. That is an unreasonable position and contrary to the law.

### 3. Apple has established compelling reasons for its renewed motion to seal to be granted

Reuters' dismissive reference to "attorney declarations" is a red herring. Reuters cites no authority that would suggest attorneys cannot provide the details the Court needs to evaluate whether compelling reasons justify sealing. *See Traylor Bros, Inc. v. San Diego Unified Port. Dist.*, Civil No. 08-cv-1019-L(WVG), 2012 U.S. Dist. LEXIS 40977, at *1, *4-5 (S.D. Cal. Mar. 26, 2012) (granting motion to seal financial information supported by declaration from outside counsel of record); *G. v. Hawaii*, 2010 U.S. Dist. LEXIS 63199, at *5-9 (D. Haw. June 25, 2010) (granting motion to seal supported by declaration from outside counsel of record).

Nevertheless, Apple submits herewith declarations from two non-attorney Apple employees who confirm the facts addressed in the previously submitted declarations to address any concern that the facts that Apple relies on were testified to by attorneys.

As discussed in the submitted declarations and in the Parties Joint Motion Regarding Sealing of Trial Exhibits filed simultaneously herewith, the sensitive financial data and third-party documents Apple seeks to seal are available only to a limited number of individuals. Buckley Decl. ¶ 3; *see also Bean v. Pearson Educ., Inc.*, CV 11-8030-PCT-PGR, 2012 U.S. Dist. LEXIS 99540, at *6-7 (D. Ariz. July 18, 2012) (steps taken to protect information, including

1  nondisclosure agreements, persuasive in establishing good cause to seal).  Disclosure of capacity
2  data and product line information going beyond the general "iPhone" and "iPad" would allow
3  competitors to predict Apple's supply, and invest in products that specifically counter the Apple's
4  product offering.  Buckley Decl. ¶ 6; Joswiak Decl. ¶ 7-8.  Contract manufacturers would be able
5  to predict when Apple is driven to increase supply use that leverage in negotiations with Apple.
6  Buckley Decl. ¶ 5.  Component suppliers could also adjust pricing on components to take
7  advantage of the unfair knowledge of Apple's cost of goods and profit margins.  *Id.* ¶ 6.  Apple
8  would be disproportionately harmed, as its competitors do not reveal this information either.  *Id.* ¶
9  7.

10       The customer research that Apple seeks to seal is based on in-depth knowledge of its
11  customer base to whom only Apple has access.  Joswiak Decl. ¶ 3.  These surveys reveal in detail
12  what drives Apple's customers to buy its products rather than competitors' products.  *Id.*  They
13  establish how preferences vary from region to region, and across demographics.  *Id.*  They also
14  reveal Apple's *conclusions* from that data, which foreshadow what Apple is likely to offer next,
15  and in what markets.  *Id.* ¶ 4.

16       Public disclosure of the third-party market research that Apple seeks to seal would be
17  harmful in multiple ways, both to the bystander third party and to Apple directly.  Apple
18  established from direct communications with representatives of third parties that public disclosure
19  of a substantial portion of the entirety of one of these reports would supplant the market for that
20  report. (Dkt. No. 1317-3 ¶ 4.)  This is not a complex factual point that can only be made by a
21  person of specialized or inside knowledge—it is simple logic.  If a company operates by
22  researching, creating, and selling reports worth thousands of dollars, and those reports are opened
23  up to the world for free on the public record, the free report will supplant the market for the paid
24  report.  Apple noted that this is not just an issue of third party harm—Apple will also be harmed,
25  as disclosure of this material will damage Apple's relationships and may even permanently
26  prevent Apple from obtaining this critical consumer data. (*Id.* ¶¶ 3-4.)  Reuters does nothing to
27  address the harms Apple raises, nor does it explain why the jury needs to see entire unredacted
28

1  third party market reports, as opposed to the passing references in briefs or data that focuses on
2  Apple and Samsung.
3       If the select documents that Apple seeks to seal and redact are allowed to enter the public
4  record, Apple will be irreparably harmed in innumerable ways.  Apple's business partners will
5  lose trust in Apple when their confidential material, shared with Apple under the understanding it
6  would be protected, is opened to the world, destroying the market for third-party research
7  company's reports and revealing highly sensitive details of heavily negotiated license agreements.
8  Apple's competitors will gain in-depth knowledge of Apple's cost structure and profit margins, as
9  well as intelligence into Apple's market.  Apple respectfully submits that the limited items it
10 seeks to redact or seal—four briefs of the many at issue, and approximately thirty documents out
11 of well over two hundred—are exceptionally sensitive and should be sealed.

13 Dated: July 27, 2012                        MORRISON & FOERSTER LLP

15                                             By:   */s/ Michael A. Jacobs*
16                                                   MICHAEL A. JACOBS

17                                                   Attorneys for Plaintiff
                                                     APPLE INC.

APPLE'S REPLY IN SUPPORT OF RENEWED MOTION TO SEAL
CASE NO. 11-CV-01846-LHK                                                                6
sf-3175740