1     [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK

12              Plaintiff,                         **JOINT MOTION REGARDING
                                                   SEALING OF TRIAL EXHIBITS**
13          v.
                                                   Date:     July 27, 2012
14   SAMSUNG ELECTRONICS CO., LTD., a              Time:     3:00 pm
     Korean corporation; SAMSUNG                   Place:    Courtroom 1, 5th Floor
15   ELECTRONICS AMERICA, INC., a New              Judge:    Hon. Lucy H. Koh
     York corporation; and SAMSUNG
16   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
17
                Defendants.
18

19

20

21

22

23

24

25

26

27

28

1  Pursuant to the Minute Order and Case Management Order of July 24, 2012 (Dkt. No.

2  1329), Apple Inc. and Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and

3  Samsung Telecommunications America, LLC (collectively, "Samsung") have met and conferred

4  regarding the treatment of confidential information at trial.

5  Pursuant to Civil L.R. 7-11, the Parties jointly move for an order allowing the parties to

6  request that certain types of highly sensitive information be sealed and establishing a protocol

7  during trial for *in camera* review of proposed redacted versions of trial exhibits.

8  <u>**Relief Sought**</u>

9  Although the Parties' negotiations continue, they have agreed to propose for the Court's

10  consideration the following protocol:

11  1.   As previously ordered, the Parties will disclose direct examination  exhibits to be

12  used in witness examinations at 7 pm two days before the witness is scheduled to testify.

13  Before the next day's trial session, the parties will jointly lodge copies of such exhibits

14  highlighted to show the redactions requested, enabling the Court to review and reject any

15  overbroad sealing requests.

16  2.   As previously ordered, the Parties will disclose cross examination exhibits to be

17  used in witness examinations at 2 pm the day before the witness is scheduled to testify.

18  By 5 pm the day before the witness is scheduled to testify, the parties will jointly lodge

19  copies of such exhibits highlighted to show the redactions requested, enabling the Court to

20  review and reject any overbroad sealing requests.

21  3.   The Parties would limit their sealing requests to the categories of highly

22  confidential, sensitive information enumerated below, except to the extent good cause

23  exists to expand the categories.

24  4.   To the extent that the Court approves any such sealing requests, only the approved

25  redacted versions of the trial exhibits shall be displayed to the public.  The Court, the

26  witness and the jury may review the unredacted versions and the unredacted versions shall

27  be received in evidence and maintained under seal.

28

5.   For certain categories of confidential information enumerated below, only those portions of documents, if any, that are actually published to the jury would be received in evidence and made public.  The parties would meet and confer promptly after the end of each day's court session to prepare exhibits comprising the published exhibit portions.

The Parties submit the accompanying proposed order implementing the protocol outlined above. They respectfully request that the Court adopt this protocol because it minimizes the amount of Court time required to adjudicate sealing issues in advance of trial, preserves the Parties' ability to seek sealing of confidential information to the extent compelling reasons exist to justify such sealing, and ensures that the public receives timely access to the evidence actually presented to the jury during the course of trial.  The Parties do not intend to restrict each other's ability to present materials contained in the trial exhibits to the jury; instead the Parties seek an order establishing a protocol for dealing with highly sensitive information on a case-by-case basis.

## <u>Argument</u>

**1.     The Parties have conferred extensively, and continue to confer, in an attempt to reduce the amount of sensitive information required to be received in evidence.**

On the same day that the parties exchanged revised trial exhibits, counsel for Samsung and Apple participated in a telephonic conference and attempted to reach an agreement that would reduce the need to introduce exhibits that contain highly sensitive information. (Declaration of Prashanth Chennakesavan in Support of the Parties' Joint Motion Regarding the Sealing of Trial Exhibits ("Chennakesavan Decl.") ¶ 3.)  The parties re-convened the following morning for an in-person meet-and-confer session and exchanged various specific proposals that would help ensure that few exhibits would be introduced at trial that would require sealing.  (*Id.* ¶¶ 4-5)  While the parties have yet to reach a final agreement that would eliminate the need to introduce exhibits that contain highly sensitive information, both Samsung and Apple are committed to negotiating in good faith to minimize the need for maintaining the confidentiality of trial exhibits and ensuring that the trial remains an open forum.  (*Id.* ¶ 6.)

1    **2.    The Parties request an order allowing sealing of discrete categories of evidence.**

2

3        The parties acknowledge the presumption of access to judicial records arising from the

4    public's interest in understanding of the judicial process and of significant public events.  The

5    parties also recognize that the presumption of openness will apply to all documents introduced at

6    trial.  (Dkt. No. 1256 at 3.)  Nonetheless, "'compelling reasons' sufficient to outweigh the

7    public's interest in disclosure and justify sealing court records exist when such "court files might

8    have become a vehicle for improper purposes," or for release of trade secrets. *Kamakana v. City*

9    *and County of Honolulu*, 447 F.3d 1172, 1177 (9th Cir. 2006) (quoting *Nixon v. Warner*

10   *Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  Indeed, in a complex trial such as this one involving

11   multinational corporations with legitimate business interests in the secrecy of certain types of

12   information, "documents of exceptionally sensitive information" exist "that truly deserve

13   protection."  Dkt. No. 1256 at 3.  The Court should allow this information "to be redacted or kept

14   from the public."  *Id.*

15                  **a.    Highly Sensitive Financial Information**

16       The parties request to seal their most highly sensitive and non-public financial and

17   manufacturing information comprising cost data, profit margins, and revenue and unit sales

18   information by product.

19       There are multiple "compelling reasons" to seal this type of information.  *Bauer Bros.*

20   *LLC v. Nike, Inc.*, No. 09cv500–WQH–BGS, 2012 WL 1899838, at *3-4 (S.D. Cal. May 24,

21   2012) (sealing deposition testimony and documents containing financial data relating to sales and

22   marketing information, product development, profits, advertising and marketing, "the financial

23   data sought to be sealed by Nike could be used for improper purposes for Nike's business

24   competitors, as it includes . . business sales and accounting data . . . and costs analysis"); *TriQuint*

25   *Semiconductor v. Avago Techs., Ltd.*, No. CV 09-1531-PHX-JAT, 2011 U.S. Dist. LEXIS 143942,

26   at *10-12 (D. Ariz. Dec. 13, 2011) (finding compelling reasons to seal information regarding

27   sales, market analysis, capital expenditures, cost, and manufacturing capacity.)  This Court has

28   found that "long-term financial projections, discussions of business strategy, and competitive

1   analyses" provide compelling reasons for sealing.  *Kreiger v . Atheros Commc'ns, Inc.*, No. 11–

2   CV–00640–LHK, 2011 WL 2550831, at *1 (N.D. Cal. Jun. 25, 2011) (sealing presentation

3   containing highly sensitive and confidential financial information).  Production information and

4   "precise revenue information results" and "exact sales and production numbers," which could be

5   used by competitors to calibrate their pricing and distribution methods to undercut defendant, also

6   provide compelling reasons for sealing.  *Bean v. John Wiley & Sons, Inc.*, No. CV 11–08028–

7   PCT–FJM, 2012 WL 1078662, at *6-7 (D. Ariz. Mar. 30, 2012) (sealing charts summarizing

8   defendant's sales and revenue figures broken out by product).

9          Disclosure of the Parties' specific cost information, profit margins, and product line-

10   specific information would give competitors a substantial and unfair advantage.  (Declaration of

11   Mark Buckley in Support of Apple Motions to Seal ("Buckley Decl.") ¶ 4-6; Declaration of

12   Gregory Joswiak in Support of Apple Motions to Seal ("Joswiak Decl.") ¶ 7-8.  Knowledge of

13   this kind of information would allow competitors to tailor their product offerings and pricing to

14   undercut the Parties' product offerings.    Competitors would learn what price points to target in

15   which specific markets, and understand the Parties' weaknesses in connection with products that

16   have weak profit margins or costly components.  (Buckley Decl. ¶ 6; Joswiak Decl. ¶ 7;

17   Declaration of GiHo Ro in Support of the Parties' Joint Motion Regarding the Sealing of Trial

18   Exhibits ("Ro Decl.") ¶¶ 8-9.).  Allowing public access to the parties' cost, profit, and product-

19   line specific information would also harm their competitive position with component suppliers.

20   Buckley Decl. ¶ 6; Ro Decl. ¶¶ 8-10.  Suppliers could use cost information to alter their pricing

21   on components the parties use in their products.  *Id.*

22          Exhibits PX29 and DX777 are exemplary of the kinds of documents at issue.  The Parties

23   will highlight these exhibits to show the highly confidential portions and present them to the

24   Court for inspection during the hearing this afternoon.  Trial exhibit PX29 includes the specific

25   categories of operating expenses and the amounts various Samsung entities spend on each

26   category, specific costs incurred in manufacturing the products at issue, material costs for accused

27   products, and Samsung's profits and profit margins for each accused product.  DX777 contains

28   similarly detailed cost-related information for Apple.  DX777 contains unit and revenue data

1   broken down by market, product model, and product sub-model.  Such information is extremely

2   sensitive.  For example, only Apple knows how many 16 GB iPhone 4S Apple sold last quarter in

3   the United States as compared to 64 GB iPhone 4S or 8 GB iPhone 3GS, and what Apple's profit

4   margins on each of those products was.  (Joswiak Decl. ¶ 8.)  If this sort of treasure trove of

5   competitive intelligence were made public, competitors would be able to target their product

6   offerings at the parties' most successful and profitable products.  (Joswiak Decl. ¶ 8; Ro Decl. at ¶

7   10.)

8          Also highly sensitive is production capacity information such as that shown in PX25.35.

9   If competitors gained access to capacity data, they would learn when the parties' production

10  capacity is typically stretched thinly and when they have excess capacity, and could alter their

11  production timing accordingly.  (Buckley Decl. ¶ 4.)  PX25.35 also contains product-line specific

12  capacity data, which is even more critically sensitive.  *Id.*  Disclosure would allow competitors to

13  see what specific lines of products are increasing its supply and which are decreasing, giving a

14  significant insight into the parties' future business plans.  Such information would similarly

15  reveal to competitors what precise products they need to counter, and how much they should

16  invest in that specific area.  (*Id.*)

17         Also of great concern to the Parties is the potential disclosure of capacity data to contract

18  manufacturers.  It is critical that the Parties maintain negotiation position in relationship to their

19  suppliers and manufacturing services providers.  (*Id.* ¶ 5.)  If such entities learn the Parties'

20  capacity patterns or similar supply chain information, they could predict when the Parties would

21  be most motivated to increase supply and could use that leverage in negotiations relating to

22  manufacturing and component supply services.

23         Because such financial information is so sensitive, both parties guard it carefully.  Apple's

24  highly sensitive financial data is among the most painstakingly protected information at the

25  company.  (Buckley Decl. ¶ 3.)  Even within Apple, only a limited number of individuals are

26  authorized to receive the information.  *Id.*  Apple does not share its nonpublic financial data—

27  including cost data, product line details, profit margins, and capacity data—with third parties or

28

1   vendors.  *Id.*  In the rare instance it is required to share any nonpublic financial data with third

2   parties, Apple insists on very restrictive nondisclosure agreements or protective orders.  *Id.*

3       Similarly, information of the kind described above has never been disclosed to the public

4   and is kept in the strictest confidence within Samsung.  (Ro Decl. ¶ 6.); *see Bean*, 2012 WL

5   1078662, at *6-7 (finding additional justification to seal "information . . . kept confidential not

6   only from the public, but also from [defendant's] own employees").  The financial data at issue

7   here is only made available to a limited number of employees on a need-to-know basis.  Samsung

8   instructs its employees to keep hard copies of business documents in secure locations, hires

9   private security forces to monitor its facilities, asks each employee to walk through a metal

10   detector when exiting its offices, and uses special paper that triggers metal detectors if carried

11   outside Samsung offices.  (Dkt. 987-47; Decl. of Han-Yeol Ryu at ¶¶ 12-14.)  Samsung produced

12   documents containing highly sensitive financial data in this litigation only to Apple's outside

13   counsel and experts who had signed the Protective Order.  Samsung went to great lengths to

14   protect the confidentiality of disclosed data; Samsung distributed a limited number of numbered

15   compact discs that contained soft copies of the data, retrieved the discs after a certain amount of

16   time, and only permitted the inspection of the most confidential data in a secure location to

17   prevent the copying or dissemination of Samsung's data.  (Ro Decl. ¶ 6.)

18       The extensive financial data that the Parties seek to seal would "do little to aid the public's

19   understanding of the judicial process, but have the potential to cause significant harm to [Apple's]

20   competitive and financial position within its industry."  *Network Appliance, Inc. v. Sun*

21   *Microsystems Inc*., No. C-07-06053 EDL, 2010 U.S. Dist. LEXIS 21721, at *13-14 (N.D. Cal.

22   Mar. 10, 2010).*Network Appliance*, 2010 U.S. Dist. LEXIS 21721, at *13-14  While the

23   disclosure of some information during trial may be necessary to challenge the experts'

24   calculations, the exhibits themselves include detailed cost, product line information, and profit

25   margins provide a level of detail far beyond what is necessary to understand the parties' positions

26   and the damages and other remedies the parties seek.  Accordingly, the parties' need to seal this

27   information outweighs any public interest in full disclosure.

28

1    **b.    Specific Terms of Licenses, Settlements, Acquisitions, and Source Code**

2    The Parties are continuing to discuss potential stipulations or summary exhibits that would

3    obviate the need to submit confidential license, settlement and acquisition agreements as exhibits.

4    If this is not practicable, however, the Parties may seek to seal specific license agreements and

5    information derived from license agreements involving third parties, or to at least redact the

6    counterparty names.  Such material is consistently held by courts to meet the "compelling

7    reasons" standard of the Ninth Circuit.  *See, e.g.*, *Electronic Arts, Inc. v. United States District*

8    *Court for the Northern District of California*, 298 F. App'x 568, 569 (9th Cir. 2008) (finding

9    pricing terms, royalty rates, guaranteed minimum payment terms of licensing agreement

10   constituted trade secret and ordering sealing of license agreement filed as trial exhibit);

11   *Powertech Tec., Inc., v. Tessera, Inc.*, No. C 11-6121 CW, 2012 U.S. Dist. LEXIS 75831, at *5

12   (N.D. Cal. May 31, 2012) (compelling reasons to seal license agreement).

13   There are compelling reasons to seal court records containing "pricing terms, royalty

14   rates and guaranteed minimum payment terms" found in licensing agreements which "plainly

15   fall[] within the definition of 'trade secrets.'" *Id.  Electronic Arts, Inc.*, 298 F. App'x at 569

16   (quoting *Kamakana*, 447 F.3d at 1179)  Further, license agreements are the subject of

17   nondisclosure agreements and are generally highly confidential to Apple and the third parties that

18   signed those agreements.  (Tierney Decl. ISO Apple's Renewed Motion to Seal ¶ 5; Buckley

19   Declaration ¶ 9; *see also* previously submitted motions to seal, Dkt. Nos. 1328, 1340, 1376, 1378,

20   1390, 1394, and 1396).  Those third parties also likely consider the content of these license

21   agreements to be highly confidential "trade secrets" and public disclosure of the information in

22   those agreements to be extremely harmful to them.  (Tierney Decl. ¶ 5.)  Apple carefully

23   maintains strict confidentiality of these license provisions.  Even within Apple, very few

24   employees have access to these agreements, and they are maintained in a highly secure manner to

25   prevent inadvertent disclosure.  (Buckley Declaration ¶ 8.)

26   There is very little public interest in knowing the specific licenses and agreements that

27   Apple or Samsung have entered into, the existence of which is a proprietary trade secret not only

28   to the parties to this action but to the counterparties in these agreements as well.  There is even

1   less public interest in the names of the counterparties to Apple's and Samsung's license

2   agreements and disclosing those names would subject those third parties to competitive harm.

3   *Network Appliance*, 2010 U.S. Dist. LEXIS 21721, at *7 (material that would subject third parties

4   to competitive harm sealable).

5          Finally, the Parties' intend to introduce source code contained in their respective trial

6   exhibits into evidence during the trial.  The parties will not oppose each other's efforts to seal the

7   record with respect to this source code as well as with respect to source code of third parties, and

8   will cooperate to preserve the confidentiality of the source code.[1]

9          **c.     Other Sensitive Material – Only to the Extent *Not* Published to the
           Jury**

10

11         Following the Court's suggestion at the July 23 Final Pretrial Conference, the parties have

12   evaluated whether certain foundational confidential information could be eliminated from the

13   record.

14         Apple requests that certain consumer research reports be received in evidence only to the

15   extent shown to the jury.  Among the documents Samsung has selected as potential exhibits in

16   this action are the quarterly iPhone buyers surveys that Apple conducts.  Joswiak Decl. ¶ 3;

17   DX767.  The surveys reveal, country-by-country, the factors driving customers to buy Apple

18   products versus competitive products such as Android.  *Id.*  No competitor has access to Apple's

19   customer base to conduct such in-depth analysis.  *Id.*  Currently, Apple competitors can only

20   speculate how Apple's customers weigh the relative value of, for instance, FaceTime video

21   calling functionality, battery life, or an LED flash, and they have to guess as to what

22   _____

           [1]    District courts in the Ninth Circuit have held that nonpublic, proprietary source code is
23   properly sealed under the "compelling reasons" standard because such "information represents
     trade secrets sufficiently sensitive to outweigh the public's interest in accessibility of the
24   evidence." *Network Appliance v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 841274,
     *1, *4 (N.D.Cal. March 10, 2010); *see also Wacom Co., Ltd. v. Hanvon Corp.*, No. C06-5701RJB,
25   2007 WL 3026889, *3 (W.D.Wash. Oct. 16, 2007) (sealing confidential, nonpublic, proprietary
     source code under the compelling reasons standard); *Omax Corp. v. Flow Intern. Corp.*, No. C04-
26   2334RSL, 2007 WL 4108604, *1-2 (W.D.Wash. Nov. 13, 2007) (sealing or redacting various
     instances of source code upon a "compelling showing that that the public's right of access is
27   outweighed by the interests of the public and the parties in protecting files, records, or documents
     from public view.").

28

1   demographics – age, gender, occupation – are most satisfied with Apple's products. *Id.*

2   Moreover they do not know how the preferences of individuals in, for instance, Japan differ from

3   those in Australia, Korea, France and the United States. *Id.* All of that information is set out in

4   exacting detail in the proposed exhibits. No other entity could replicate this research because no

5   other entity has access to the customer base that Apple has.

6         Just as important as the survey data itself are the *conclusions* Apple has drawn from the

7   data. *Id.* ¶ 4. Knowing what Apple *thinks* about its customer base preferences is extremely

8   valuable to Apple competitors because it would allow them to infer what product features Apple

9   is likely to offer next, when, and in what markets. *Id.* Having an advance look into Apple's next

10  moves would allow competitors to prepare products and marketing strategy to counter Apple's

11  future products and target their product development plans accordingly. *Id.*

12        The Parties' exhibit lists also contain research reports prepared by third parties and

13  purchased by the Parties under subscription. Third-party research reports are assembled by

14  providers at great expense and sold for many thousands of dollars. (Dkt. No. 1317-3, Sabri Decl.

15  ¶ 3.) As a result, the parties are contractually obligated to keep the reports confidential.

16  Disclosure of recent market research reports in their entirety on a publicly accessible website

17  could supplant entirely the market for such reports. If Apple were required to publicly disclose

18  this information, which Apple acquired under an agreement to keep the information private and

19  confidential, the affected third party companies could be reluctant to do business with Apple

20  again in the future, potentially permanently harming Apple's relationships and preventing Apple

21  from obtaining this critical market research data. (*Id.* ¶ 4.)

22        Apple does not request sealing of such documents in their entirety, nor does Apple request

23  that either party be restricted from displaying to the jury portions of reports as they deem

24  necessary. Apple requests merely that *only* those portions of sensitive market research documents

25  that are *actually* displayed to the jury during the course of trial be received in evidence and made

26  public. Such a process balances the public's interest in understanding the evidence that is

27  germane to the issues at trial while protecting Apple's compelling interest to protect its

28

competitive advantage and third party market research providers' compelling interest in protecting their subscription business models.

### 3. The Parties' sealing requests are substantially narrower than those requested pre-trial.

By limiting their sealing requests to the above categories, the parties will allow to be made public large amounts of confidential information that was previously subject to pre-trial sealing motions.  Among the previously undisclosed information that will become available in accordance with this joint motion are:

- **High-level financial information:**  Revenue, number of units sold by product line, price (wholesale and final consumer) data, sources of revenue (search engines, accessories, specific products),  and information regarding revenue deferred over lifespan of product to cover product updates;

- **Advertising expenditures:**  Both total expenditures and expenditures by medium;

- **Discussions relating to licenses:**  The fact that licenses exist, the fact that they relate to the products at issue, the number of license agreements, and identities of entities with whom the parties have has discussed, licenses even if no actual agreement was entered into;

- **Information relating to general consumer behavior:**  Excerpts of market research studies, information relating to loyalty to product platforms, consumer demand for design and particular features at issue in the case;

- **Expert Surveys:**  conducted in connection with this case;

- **Information relating to product design:** confidential communications relating to manufacturing challenges, relevant component options, teardowns of competitive devices, reliability testing, and cost analysis relating to specific features or components at issue;

- **Industrial Design information:**  previously top-secret computer aided design and model and prototype information and designer sketches;

- **Confidential product code names;**

- **General advertising strategy information:** to the extent relevant; and

- **Pre-suit Settlement and licensing negotiations between the Parties**.

From these and other disclosures during the course of trial, the public will learn a great deal about the Parties' businesses and obtain a comprehensive understanding of the judicial process and the issues and facts in dispute.

## <u>Conclusion</u>

Because compelling reasons in favor of secrecy exist, the parties respectfully request that the Court issue an order stating that the parties may request sealing of portions of trial exhibits that include: (1) highly sensitive financial information; (2) confidential licensing information; and/or (3) sensitive technical and business-related.  The Parties further respectfully that the  Court adopt the protocol described above for confirming the extent to which exhibits may be sealed, as set forth in the proposed order submitted herewith.

| | | |
|---|---|---|
| 1 | Dated:  July 27, 2012 | HAROLD J. MCELHINNY (CA SBN 66781) |
| | | hmcelhinny@mofo.com |
| 2 | | MICHAEL A. JACOBS (CA SBN 111664) |
| | | mjacobs@mofo.com |
| 3 | | RACHEL KREVANS (CA SBN 116421) |
| | | rkrevans@mofo.com |
| 4 | | JENNIFER LEE TAYLOR (CA SBN 161368) |
| | | jtaylor@mofo.com |
| 5 | | ALISON M. TUCHER (CA SBN 171363) |
| | | atucher@mofo.com |
| 6 | | RICHARD S.J. HUNG (CA SBN 197425) |
| | | rhung@mofo.com |
| 7 | | JASON R. BARTLETT (CA SBN 214530) |
| | | jasonbartlett@mofo.com |
| 8 | | MORRISON & FOERSTER LLP |
| | | 425 Market Street |
| 9 | | San Francisco, California  94105-2482 |
| | | Telephone:  (415) 268-7000 |
| 10 | | Facsimile:  (415) 268-7522 |
| 11 | | WILLIAM F. LEE |
| | | william.lee@wilmerhale.com |
| 12 | | WILMER CUTLER PICKERING |
| | | HALE AND DORR LLP |
| 13 | | 60 State Street |
| | | Boston, MA 02109 |
| 14 | | Telephone: (617) 526-6000 |
| | | Facsimile: (617) 526-5000 |
| 15 | | |
| 16 | | MARK D. SELWYN (SBN 244180) |
| | | mark.selwyn@wilmerhale.com |
| 17 | | WILMER CUTLER PICKERING |
| | | HALE AND DORR LLP |
| 18 | | 950 Page Mill Road |
| | | Palo Alto, California 94304 |
| 19 | | Telephone: (650) 858-6000 |
| | | Facsimile: (650) 858-6100 |
| 20 | | |
| 21 | | |
| | | By:    *Michael A. Jacobs* |
| 22 | | Michael A. Jacobs |
| 23 | | Attorneys for Plaintiff and |
| | | Counterclaim-Defendant |
| 24 | | APPLE INC. |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| 1 | Dated: July 27, 2012 |

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

By:  *Victoria Maroulis*
      Victoria Maroulis

Attorneys for Defendants and
Counterclaim-Plaintiffs
SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS
AMERICA, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs , am the ECF User whose ID and password are being used to file this Declaration.  In compliance with General Order 45, X.B., I hereby attest that Victoria Maroulis has concurred in this filing.

Dated:  July 27, 2012                              _____/s/  Michael A. Jacobs_____
                                                                              Michael A. Jacobs