HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**DECLARATION OF GREGORY JOSWIAK IN SUPPORT OF APPLE MOTIONS TO SEAL** |

I, Gregory Joswiak, hereby declare as follows:

1. I am a Vice President in Apple's Product Marketing department. I submit this declaration in support of Apple's motions regarding sealing, filed contemporaneously herewith. I have personal knowledge of the matters set forth below. If called as a witness I could and would competently testify as follows.

2. I understand Apple seeks to seal sensitive categories of market strategy and financial information: (a) portions of recent market research reports; and (b) highly sensitive and non-public financial and manufacturing information (cost data, product line details, detailed product-level and model-level profit margins, and capacity data). If disclosed to the public, these categories of information would expose Apple to serious competitive harm. Such information would also be highly likely to impact Apple's share price and, in turn, its shareholders.

3. Among the documents the parties have selected as potential exhibits in this action are the quarterly iPhone buyers surveys that Apple conducts. The surveys reveal, country-by-country, what is driving our customers to buy our products versus other products such as the Android products that Samsung sells. No competitor has access to our customer base to conduct such in-depth analysis. Getting access to this analysis would be of enormous benefit to our competitors. Today, a competitor who is trying to take away Apple market share can only speculate how Apple's customers weigh the relative value of, for instance, FaceTime video calling, battery life, or Siri voice capability. They have to guess as to what demographics – age, gender, occupation – are most satisfied with Apple's products. Certainly, they do not know how the preferences of customers in, for example, Japan differ from those in Australia, Korea, France or the United States. Perhaps most importantly, they are unable to observe trends over time. All of that information is set out in exacting detail in the proposed exhibits. No other entity could replicate this research because no other entity has access to the customer base that Apple has.

4. Just as important as the survey data itself are the *conclusions* Apple has drawn from the data. Knowing about Apple's customer base preferences is extremely useful to a competitor, but knowing about what Apple thinks about its customer base preferences is even more valuable. If Apple had access to this kind of in-depth analysis of our competitors, we could

1  infer what product features our competitors are likely to offer next, when, and in what markets.
2  Our probability of success in predicting our competitors' next move next would improve
3  dramatically.  Having that level of insight and confidence in our competitors' next moves would
4  allow us to target our efforts to prepare products and marketing counterstrategies in the short
5  term, and target our long-term product plans to stay far ahead of the competition.  Given
6  unfettered access to Apple's recent internal market research, I have no doubt that Apple's
7  competitors would use it as described above, resulting in serious competitive harm to Apple.

8       5.      Because of the extreme sensitivity of this product research information,
9  distribution is very tightly controlled within Apple.  In fact, *no* internally conducted surveys of
10 Apple customers are allowed to circulate outside a small, select group of Apple executives.  No
11 iPhone-related surveys are allowed to be distributed to *anyone* outside this group without my
12 personal express permission, which I regularly refuse.  When I do approve further distribution, it
13 is almost always on a survey question-by-survey question basis, and even then distribution is
14 limited to individuals who have a demonstrated need to know.

15      6.      Also included among the documents that Apple seeks to seal are documents
16 revealing Apple's cost, product line details, detailed product-level and model-level profit
17 margins, and production capacity.  Disclosure of this data would severely harm Apple.  Part of
18 my responsibilities as Vice President in the Product Marketing department of Apple are to help
19 make competitive decisions about what products to offer, with what features, when, and at what
20 price points.  When we make those decisions, two of the critical components of our decision
21 making process are (1) what our customers value, and (2) what are our competitors are offering or
22 are likely to be offering in the future.  Apple (like other companies) makes an extensive effort and
23 invests heavily in getting the best possible information about those factors.

24      7.      If I and others in my department had access to my competitors' precise cost and
25 profit data, that would give us a significant competitive advantage.  We would know exactly what
26 price points to aim for in what markets.  It would reveal our competitors' weaknesses because we
27 would know what products have thin or negative profit margins.  We could then target those
28 markets for competition on feature sets knowing that our competitors are unable to withstand

DECLARATION OF GREGORY JOSWIAK
CASE NO. 11-CV-01846-LHK
sf-3175959

2

1  additional competitive pressure.  It would also reveal the soft spots in the market where our
2  competitors are commanding unusually high profit margins.  We could target those markets for
3  competition too.  If competitors gain access to similar information regarding Apple's cost and
4  profit structure, I am confident they will use the information to gain unfair advantage over Apple
5  in the marketplace.

6       8. As discussed above, I have reviewed certain Apple documents that the Parties have
7  selected as exhibits for this case.  I note that they contain detailed cost and profit information,
8  units and revenues broken down by market, model, and submodel.  This information is extremely
9  sensitive.  For example, only Apple knows how many 16 GB iPhone 4S devices Apple sold last
10 quarter in the United States as compared to 64 GB iPhone 4S devices or 8 GB iPhone 3GS
11 devices, and what Apple's profit margins on each of those products was.  Such information is
12 contained, for example, in DX 756.  If the information contained in the documents I reviewed
13 were distributed, however, competitors would know that and would be able to target their product
14 offerings at Apple's most successful and profitable products.  It is a treasure trove of competitive
15 intelligence.

16       9. Exhibit DX 776 is an example of a recent survey of iPhone buyers which contains
17 highly sensitive intelligence on Apple customers and customer preferences worldwide, as
18 discussed above.  Exhibits DX 777-780 are examples of documents contain highly sensitive
19 financial data.  For the reasons detailed above, disclosure of these documents would irreparably
20 harm Apple's business.

21       I declare under penalty of perjury that the foregoing is true and correct.  Executed this
22 27th day of July, 2012 at Cupertino, California.

                                            */s/ Gregory Joswiak*
                                            Gregory Joswiak

DECLARATION OF GREGORY JOSWIAK
CASE NO. 11-CV-01846-LHK
sf-3175959

3

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Greg Joswiak has concurred in this filing.

Dated: July 27, 2012                      */s/ Michael A. Jacobs*
                                                         Michael A. Jacobs