# EXHIBIT 9

Page 1

1        UNITED STATES INTERNATIONAL TRADE COMMISSION
2                      WASHINGTON, D.C.
3
4
5   In the Matter of:
6   CERTAIN ELECTRONIC DIGITAL
    MEDIA DEVICES AND COMPONENTS    Inv. No.   337-TA-796
7   THEREOF
    _____/
8
9
10
11           CONFIDENTIAL BUSINESS INFORMATION
12         PURSUANT TO THE PROTECTIVE ORDER
13
14
15       VIDEOTAPED DEPOSITION OF DOUGLAS SATZGER
16           SAN FRANCISCO, CALIFORNIA
17          THURSDAY, FEBRUARY 9, 2012
18
19
20
21
22
23  BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR
24  CSR LICENSE NO. 9830
25  JOB NO. 45787

Page 6

1              MR. ZELLER:  Mike Zeller for Samsung.
2              MR. HALL:  Scott Hall for Samsung.
3              MR. DAVIS:  Derek Davis here for the witness.
4              MR. HUNG:  Richard Hung for Apple.
5              THE WITNESS:  Doug Satzger.
6              THE VIDEOGRAPHER:  Thank you.
7         Will the court reporter please administer the
8    oath, and we may proceed.
9
10                    DOUGLAS SATZGER,
11           having been sworn as a witness
12         by the Certified Shorthand Reporter,
13                   testified as follows:
14
15              EXAMINATION BY MR. ZELLER
16         MR. ZELLER:  Q.  Good morning.
17    A    Good morning.
18    Q    If you could please state your full name for
19    the record.
20    A    Douglas Bernard Satzger.
21    Q    And where do you currently reside?
22    A    California, Menlo Park.
23    Q    And are you currently employed?
24    A    Yes.
25    Q    What's your current job?

Confidential Business Information Pursuant to Protective Order

Page 193

1   you're referring to?
2       A   Yes.
3       Q   And then if you take a look at Exhibit 2,
4   you'll see that there are a couple of more pages of
5   CAD drawings, as well as a file listing.
6       A   Yes.
7       Q   And then with respect to those two pages of
8   CAD images that are a part of Exhibit 2, do you also
9   recognize those as early iterations of the mobile
10  phone?
11      A   Yes.
12      Q   And I take it at some point the decision was
13  made not to go with the -- the design or the -- the
14  hardware that's shown here in Exhibits 1 and 2?
15      A   Yes.
16      Q   And -- and why -- what was the -- the reason
17  for that --
18          MR. HUNG:  Objection.
19          MR. ZELLER:  Q.  -- this change in direction?
20          MR. HUNG:  Objection; foundation.
21          THE WITNESS:  My recollection of it was that
22  to get the extruded aluminum design that was applied
23  to the iPod to work for the iPhone, there were too
24  many added features to allow it to be comfortable and
25  to work properly.

Confidential Business Information Pursuant to Protective Order

Page 194

1  MR. ZELLER:  Q.  And if you can please tell
2  me what you mean by that?
3     A   If you put an iPod up to your ear, the sharp
4  edges, because of the processes, aren't comfortable,
5  and you can't get antennas to work properly in a fully
6  enclosed metal jacket.
7         So each one of those things needed to apply
8  other features that started.  I mean, if you look at
9  the initial concept compared to this one, there's a
10 lot more features than this, and there's a lot more
11 parts so...
12    Q   And so as a result, this phone design shown
13 in Exhibits 1 and 2 that we're talking about here to
14 the Stringer declaration would be more complicated to
15 manufacture, more prone to break, and all the other
16 kinds of disadvantages that having a more complex
17 product involved?
18    MR. HUNG:  Objection; calls for expert
19 opinion; mischaracterizes prior testimony.
20    THE WITNESS:  I -- from a design point of
21 view, it was a lot more challenging.
22    MR. ZELLER:  Q.  And from your understanding,
23 is having a more complicated product of that kind also
24 more challenging or expensive from a manufacturing
25 standpoint"?

Confidential Business Information Pursuant to Protective Order

Page 195

1    MR. HUNG:  Objection; vague; incomplete
2  hypothetical; calls for an expert opinion.
3    MR. ZELLER:  Q.  Or from a reliability
4  standpoint?
5    MR. HUNG:  Same objections.
6    THE WITNESS:  I can't -- no, I wouldn't say
7  so.
8    MR. ZELLER:  Q.  You just don't know one way
9  or another?
10    A   I don't know, yes.
11    Q   And when you say from a design point of view
12  it was a lot more challenging, it was for those
13  reasons you mentioned earlier?
14    MR. HUNG:  Objection; vague; asked and
15  answered; mischaracterizes.
16    THE WITNESS:  Yes.
17    MR. ZELLER:  Q.  And you mentioned that it
18  was more difficult to get the antenna, for example, to
19  work in a fully enclosed jacket of the kind that's
20  shown here in Exhibits 1 and 2?
21    A   Yes.
22    Q   Do you recall, was there testing that you saw
23  or that you heard about being done that -- that backed
24  that up?
25    A   Yes.

Confidential Business Information Pursuant to Protective Order

1   Q   And then also you mentioned that another
2   aspect of this design that was shown in Exhibits 1 and
3   2 to the Stringer declaration is, is that by having
4   those sharper edges, it's just not as comfortable up
5   against the user's ear?
6   A   Yes.
7   Q   Were there other reasons why this was not as
8   comfortable from the -- the user perspective?
9       MR. HUNG:  Objection; vague; foundation.
10      THE WITNESS:  Not that I recall.
11      MR. ZELLER:  Q.  And I take it that people
12  within industrial design thought that -- that lack of
13  comfort, having something with the sharp edges up to
14  someone's ear or up next to their head was a -- was a
15  reason not to go with this design?
16      MR. HUNG:  Objection; foundation; calls for
17  speculation.
18      THE WITNESS:  I think that the solutions that
19  lent themselves to make it more comfortable were not
20  good for the overall design, the extruded shape.
21      MR. ZELLER:  Q.  And what were those -- those
22  solutions or potentially solu- -- potential solutions
23  you're referring to?
24  A   If you look at the -- there's no number on
25  this page, but under Exhibit 2, the second page of

Confidential Business Information Pursuant to Protective Order

Page 197

1   images where all the images are, the parts on top and
2   bottom have a radius on them.  And those, from a
3   design point of view, detracts a lot from why you use
4   those materials and what the intent was originally.
5        If you look at the first exhibit, those edges
6   are sharp, which represents the manufacturing process
7   that we were familiar with with doing the iPods, and
8   the design intent was that you -- you cut and you put
9   a few holes into a metal extrusion without doing too
10  much to it, you know.
11       From my point of view, the first design is
12  actually very nice.  The second design is way
13  overworked.  So Steve did not like the solutions.
14       MR. ZELLER:  And I see.
15    Q   So if I -- Exhibit 1 represents at least one
16  iteration of the design and then Exhibit 2 shows
17  further revisions to that design --
18    A   Yes.
19    Q   -- that were made in order to try and address
20  these issues you were talking about in terms of
21  comforts and -- and having the antenna work --
22    A   Uh-huh.
23    Q   -- is that right?
24    A   Yes.
25    Q   And then once you got to, and you and the