QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S [CORRECTED] OPPOSITION TO APPLE'S MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS** |

# I. INTRODUCTION

During discovery, and for months after, Apple withheld evidence that the design of Apple's "iconic" iPhone was conceived as part of a study of Sony designs that was ordered by Apple executives. It took Samsung four separate court orders – three from this Court and one from the International Trade Commission – compelling Apple to produce the testimony and documents that are the subject of Apple's motion before Apple finally disclosed it.[1] This evidence is core to the story behind Apple's creation of the iPhone – an issue that Apple has put squarely at issue in this case. It also directly contradicts Apple's claims that the iPhone was "revolutionary" and refutes the testimony of Apple's witnesses that it considered alternative designs but rejected them solely for aesthetic reasons – another issue that Apple has chosen to put at issue in this case. And because this evidence confirms Samsung's point that it was not copying Apple, but instead that the industry at large was moving toward the basic design concepts that Apple claims are protected by its design patents, the evidence is directly relevant to Samsung's defense against Apple's claims in this suit.

Apple's motion seeks to exclude two types of evidence: (1) documents relating to the influence of "Sony style" on Apple's design and development of the iPhone; and (2) deposition testimony given by one of the Apple designers that was central to Apple's efforts to emulate Sony's style in its design of the iPhone, Mr. Shin Nishibori. Apple's claim that the former category of evidence has already been excluded from the case is demonstrably false. The exclusion order on which Apple relies was expressly limited to certain expert opinions and in no way relates to the "Sony-style" CAD drawings or internal Apple emails that Apple seeks to

---

[1] *See* Dkt. 292 (Oct. 4, 2011 Order Granting Samsung's Motion to Compel Inventor Depositions); Dkt. 536 (Dec. 22, 2011 Order Granting Samsung's Motion to Compel Production of Documents and Things); Apr. 12, 2012 Order in ITC Inv. No. 337-TA-796, at 12:12-16 (ordering that "[i]f any of what [Samsung] says is going on, I want you to produce that guy [Mr. Nishibori] in the next five days for deposition. Let's not have any of that nonsense."); Dkt. 867 (Apr. 12, 2012 Order Granting Samsung's Motion to Compel and to Enforce December 22, 2011 Order).

exclude. Indeed, Apple nowhere even sought exclusion of the documents or testimony it now baselessly claims was the subject of the Magistrate Judge's Order.

Apple's other contention that the deposition testimony was untimely and should be excluded should be rejected as well. After refusing to produce Mr. Nishibori for deposition for months based on false claims that he was unavailable, Apple was compelled by the Administrative Law Judge to produce him. Apple now argues that it should be rewarded by its misrepresentations and relies on its own delay to argue that the deposition is untimely, citing a sworn declaration from its counsel that "Apple *never* agreed that Mr. Nishibori's deposition would be taken after the close of fact discovery in the Northern District of California case." *See* Declaration of Kristen L. Yohannan, ¶ 2 (Dkt. 1420-2). That representation is false, as shown by Apple's own letters. Apple's counsel agreed in writing on April 18, 2012 that "Mr. Shin Nishibori is available for deposition ***in both the 796 Investigation and the Northern California action*** on May 2, 2012." Declaration of Curran M. Walker ("Walker Dec."), Exh. 1. At the deposition itself, the official transcript reflects that the deposition was taken for this action as wells as the ITC investigation. Mr. Nishibori's testimony is clearly admissible in this trial.

As a further extension of its year-long efforts to prevent any of this evidence from surfacing, Apple now seeks wholesale exclusion of the story of how the iPhone was created on the alleged basis that it is entirely irrelevant to Apple's claims (including its iPhone design claims) and that Samsung didn't tell Apple soon enough that it believed the evidence is important. In reality, with the trial fast approaching, Apple hopes to avoid public disclosure of the full, detailed story of how the iPhone in its present form came to be. The Court should not permit Apple to hide the truth any longer, and this relevant, indeed critical, evidence should be a part of this trial where Apple seeks to hinder competition in the U.S. market and seeks damages running in to the billions of dollars based on, among other things, the design of the iPhone.

## II. STATEMENT OF FACTS

### A. Apple Advances an iPhone Creation Story

In this lawsuit, Apple has repeatedly returned to a theme that Apple is an innovative and uniquely creative company, while Samsung is merely a copyist. In support of its rhetoric, Apple

has claimed credit for creating "elegant and distinctive product designs," for the "unique and refined 'Apple look' of Apple's iPhone," (Dkt. No. 86 at 1) and for creating "a revolutionary and magical product that is literally five years ahead of any other mobile phone."  *E.g.,* Musika Report at 13.  As Apple Senior Director of Industrial Design Christopher Stringer alleged in his declaration in support of Apple's motion for a preliminary injunction, the iPhone "looked nothing like what came before."  (Dkt. No. 282 at ¶ 8.)

But Apple's mythical, contrived creation story of the iPhone's creation omits the central fact that the designs eventually released to market were not chosen for reasons of pure aesthetics. According to Apple, many designs were considered but were rejected as insufficiently beautiful. In his declaration in support of Apple's efforts to obtain a preliminary injunction, Mr. Stringer stated under penalty of perjury that "[m]any different designs were considered for the iPhone that would have provided the same functions as the final iPhone design, but were not selected because they were not as beautiful."  (Dkt. No. 282 at ¶ 9.)  But this is simply false, and Samsung is entitled to prove as much to a jury.  Unknown to the Court or Samsung prior to the preliminary injunction proceedings, Apple had in its possession documents showing that the iPhone creation story it has advanced in this Court, and to the public, is materially false but had nevertheless concealed that evidence for months in violation of multiple court orders.

    **1.  Apple Senior Vice President of Industrial Design Jonathan Ive Directs Shin Nishibori To Prepare A Sony-based iPhone Design**

In February 2006, Apple executive Tony Fadell circulated a news article to Steve Jobs, Jonathan Ive and others regarding Sony's design language.  The article highlighted such Sony designs as the use of black and silver color combinations and portable electronic devices that are "square with a screen," have "corners [which] have been rounded out," fit in the hand and lack "excessive ornamentation" and buttons.  Walker Dec., Exh. 2.  Indeed, the interviewed Sony designer expressed a strong preference for designs with no or few buttons.  *Id.*  These are, of course, features that Apple now claims to have invented and to own exclusive rights to, though the email and article are dated before Apple claims to have conceived of and reduced to practice its asserted iPhone designs.

At the time Mr. Fadell circulated this email to Apple's executives, Apple was working on iPhone designs that were similar to the alternative iPhone designs Mr. Stringer touted in his preliminary injunction declaration. These designs included this model, sometimes referred to by Apple designers as the "extruded" or "extrudo" model:

Contrary to Mr. Stringer's declaration about the origins of the iPhone, however, and as evidence long withheld by Apple now shows, within days after Mr. Fadell circulated his email about Sony design, Mr. Ive instructed designer Shin Nishibori to prepare a design for a Sony-like iPhone. Mr. Nishibori had worked for years as a designer in Japan and, as he later testified, was conversant with Sony's product designs since a child. Walker Dec. Exh.3, at 37:10-25. Pursuant to Mr. Ive's instructions, Mr. Nishibori had CAD drawings and at least one tangible model of the "Sony-like" phone design prepared – designs that Mr. Nishibori testified "changed the flow or direction" of the iPhone project from the "extrudo" design that was then under consideration to the design that became the manufactured iPhone. *Id.* at 15:22-16:12. As Apple's belatedly produced documents show, this "Sony-like" design not only has similarities to the iPhone as manufactured, but actually had "Sony" stamped on it to eliminate any doubt about its true origins:




**2. Apple Withholds Nishibori From Deposition While Its Other Designers Falsely Downplay The Importance Of Nishibori's Sony iPhone Designs**

On September 12, 2011, Samsung noticed Mr. Nishibori's deposition for September 28, 2011. Apple at first refused to schedule depositions for its design patent inventors and only provided dates after the Court compelled it to do so on October 4, 2011. (Dkt. No. 292.) In opposing Samsung's motion to compel, Apple announced for the first time, and without elaboration, that Mr. Nishibori was "on an extended leave of absence." (Dkt. No. 288 at 3, fn2.) Apple subsequently sought from Samsung and obtained a stipulation extending the deadline for Mr. Nishibori's deposition from November 1, 2011 to December 1, 2011. (Dkt. No. 326.) In connection with this stipulation, Apple represented that Mr. Nishibori was "unable to sit for deposition because he currently is on a voluntary leave of absence from Apple." (Dkt. No. 322-2 at ¶ 6.) Shortly thereafter, Apple announced for the first time that Mr. Nishibori would be unavailable for deposition for an indefinite time due to reasons it would not specify.

Meanwhile, Mr. Nishibori's co-inventors engaged in a coordinated plan to downplay the importance of Nishibori's Sony-style designs during their depositions. Mr. Stringer denied that Mr. Nishibori's Sony-style iPhone was a project and claimed that it was instead "just a fun exercise." Walker Dec., Exh.4 at 112:3-6. Design inventor Eugene Whang similarly testified that "it was somewhat of a – kind of a – I mean, not a joke, I would say, but it was – it was kind of like a playful exercise…." *Id.* Exh.5 at 93:16-24. Richard Howarth, lead designer for the first iPhone, testified, "I don't believe that this was an actual part of the iPhone project," and that he thought Nishibori was just "having a bit of fun." *Id.* Exh.6 at 20:6-11.

### 3. In Violation Of The Court's December 22, 2011 Order, Apple Produces Critical Sony-related Documents On The Final Day Of Discovery

On December 22, 2011, this Court ordered Apple to search for and produce documents relating to its use of Sony "design language" by no later than January 15, 2012. Still, Apple withheld until the final day of discovery critical evidence contradicting its designers testimony that the Sony-style iPhone was "just a fun exercise" and not part of the iPhone project, and also contradicting Mr. Stringer's sworn statements during the preliminary injunction phase that the alternative iPhone design was not chosen for aesthetic reasons. In addition to withholding this evidence until the final day of discovery, Apple misled Samsung into believing that Apple had already produced all Sony-related documents, promising that it "ran searches for the keyword[] 'Sony,'…against documents and email collected from Industrial Design inventors and produced any responsive hits." Walker Decl. Exh.7.

The new evidence showed that in March 2006, lead iPhone designer Howarth sent an email to Mr. Ive comparing the "extrudo" iPhone model to Mr. Nishibori's "sony-style" phone. This is the same design that Mr. Stringer's declaration cited as an alternative to the first iPhone design. The previously-withheld email from Mr. Howarth confirms that Apple had dropped the alternative design and pursued the Sony-like design for the final iPhone design not for aesthetic reasons as Mr. Stringer swore, but rather for *functional* ones. Mr. Howarth wrote, "i'm worried about the extrudo shape were using for P2 [i.e., the first iPhone project], etc. *looking at what shin's doing with the sony-style chappy, he's able to achieve a much smaller-looking product with a much nicer shape to have next to your ear and in your pocket*." Walker Dec., Exh. 8 (TX. 562) at 1 (emphasis added). He also stated that the alternative design was "inefficient," while the Sony-like design "does have the size and shape/comfort benefits i mentioned before and these are hard to ignore with a product we have to carry and use all day, every day."[2] *Id.* Mr. Howarth

---

[2] Testimony that Samsung obtained from another then-Apple designer who Apple produced only after the preliminary injunction phase stated that Mr. Stringer's claims about the reasons the alternative design was dropped were factually false. As Douglas Satzger, who worked on the
(footnote continued)

attached to his email images comparing the "extrudo" design with Mr. Nishibori's "sony-style" design that Apple then pursued.   These images included the following:





**4.     Samsung Discovers Mr. Nishibori In Hawaii Running 10-K Races, Climbing Mountains, Surfing and Travelling Internationally**

Based on these revelations, Samsung again requested that Apple produce Mr. Nishibori for deposition, pointing out Mr. Nishibori's now-apparent role as a central iPhone designer.   On March 31, however, Apple informed Samsung that it would not produce Mr. Nishibori due to his alleged inability to sit for deposition.

On April 2, 2012, just two days after yet another representation by Apple that Mr. Nishibori "remains unable to sit for deposition," counsel for Samsung discovered postings from

---

first iPhone testified, the alternative design relied upon by Mr. Stringer was not pursued for entirely functional reasons, namely, because the design had "sharper edges" so "it's just not as comfortable up against the user's ear" and internal Apple testing also showed the design hindered the ability of the "antennas to work properly."   Walker Dec., Exh. 9 at 194:1-6, 195:17-196:6.

Mr. Nishibori in social media demonstrating that he had been running 10-k races, hiking, kayaking, surfing and travelling internationally to run two businesses in addition to his employment at Apple. Based on his Twitter postings, Mr. Nishibori appears to live a happy, athletic and socially active life, and his tweets are perfectly consistent with the idea that he can sit for a deposition. For example, Mr. Nishibori tweeted the following relating to his social and extracurricular activities:

- Jan. 1, 2012: "This morning, I woke up at 6 a.m. and climbed the mountain behind the house to see the sunrise. Let's go climb together." (Walker Dec., Exh. 11 at 42.)

- Jan. 25, 2012: "My first kayak!!" (with photograph) (*Id.* at 27.)

- Feb. 3, 2012: "I first tried surfing but there were no waves and I was disappointed so I decided to run. However since I was exhausted I was not even able to run 10 kilometers . . ." (*Id.* at 18.)

- Feb. 29, 2012: "I am planning to return to Japan at the end of March so if you have time let's grab a drink!"

Mr. Nishibori, who is 45 years of age, also appears to be an avid long-distance runner who is in excellent physical condition, contrary to Apple's previous claims that he was unable to be deposed. His tweets in 2012 regarding his running activities include the following:

- Jan. 14, 2012: "My immediate goal is to complete the half Marathon!" (*Id.* at 32.)

- Jan. 25, 2012: "I just finished a 10.5 km run with a pace of 6'27"/km and a time of 1:07:50 with Nike+ GPS." (*Id.* at 25.)

- Jan. 26, 2012: "If I am able to tighten my body to the extent that I can run a marathon then I would like to sign up for it." (*Id.* at 22.)

- Jan. 27, 2012: "I just finished a 10.0 km run with a pace of 5'59"/km and a time of 1:00:06 with Nike+ GPS." (*Id.*)

- Feb. 3, 2012: "I just finished a 8.70 km run with a pace of 5'57"/km and a time of 51:45 with Nike+ GPS." (*Id.* at 19.)

- Feb. 29, 2012: "I just finished a 11.6 km run with a pace of 8'43"/km and a time of 1:41:38 with Nike+ GPS." (*Id.* at 12.)

In addition to his employment at Apple, Mr. Nishibori appears to be running a restaurant and is a featured designer whose furniture is sold by a distributor in Italy. Mr. Nishibori recently tweeted the following relating to his international travels and business operations:

- Feb. 10, 2012: "We are currently hiring part-time help at efish. Male and female are both welcome." (*Id.* at 16.)

- Feb. 19, 2012: "Thank you very much for the exhibition. I felt that there is a possibility to expand the small space of efish as one idea. The Idea is wonderful. It would be great if we could talk about when I return back next time." (*Id.* at 14.)

- Feb. 23, 2012: "efish is currently hiring part-time workers, men and women. Experience a big plus. Please refer to the top page of our homepage for more information." (*Id.* at 13.)

- Mar. 20, 2012: "Beer at a café in the Honolulu Airport in the morning. Now heading to Kyoto." (*Id.* at 6.)

- Mar. 21, 2012: "I'm here. On the way back I will stop briefly in Tokyo." (*Id.* at 4.)

- Mar. 21, 2012: "I am planning to come to Tokyo from the 30th and return on the flight on the 2nd." (*Id.* at 3.)

- Mar. 21, 2012: "3/27 (Tuesday) there is a temporary closing but we did plan (Morita Moto's kimono class) and as planned it will be held from 8:00 p.m. on the second floor of efish. We think it will be a lot of fun." (*Id.*)

- Mar. 25, 2012: "Tomorrow, Tuesday, 3/27, a kimono class will be held by Motoko Morita from 8:00 p.m. (90 minutes). Only a few seats remain! This is a good opportunity to appreciate the profoundness of kimono." (*Id.* at 2.)

Samsung brought this information to Apple's attention on April 3, but Apple still flatly refused to make Mr. Nishibori available or provide any explanation for not doing so. Meanwhile, Mr. Nishibori's social media activity not coincidentally came to an abrupt halt that same day and has not resumed since.

     **5. Apple Is Ordered To Produce Nishibori For Deposition In The ITC And Produces Additional Documents Responsive To This Court's December 22 Order On The Eve Of Nishibori's Deposition**

When Apple refused to produce Mr. Nishibori for deposition, despite these revelations, Samsung raised the issue in the 796 ITC Investigation in a hearing on April 4. Samsung informed the Court that Mr. Nishibori had been posting on Twitter and other social media about running 10k races, running a business in Japan, and surfing in Hawaii. In response, the Court addressed Apple's counsel, stating that "[i]f any of what [Samsung] says is going on, I want you to produce that guy in the next five days for deposition. Let's not have any of that nonsense." (ITC Inv. No. 337-TA-796, April 4, 2012 Hearing Tr. at 12:12-16.) The Court specifically noted that if Mr. Nishibori "is out there running 10Ks, he can do a deposition, period." (*Id.* 13:6-9.)

Apple thereafter offered to provide Mr. Nishibori for deposition "in both the 796 Investigation and the Northern California action" (Walker Dec. Exh. 1), but limited the deposition to two hours of translated testimony, which boiled down to roughly 22 minutes of substantive testimony for each case. The night before the deposition, Apple suddenly produced new sketchbooks by Mr. Nishibori. They contained drawings relating to numerous design claims Apple has asserted in this lawsuit, but Apple had never previously produced them in response to the Court's September 13, 2011, December 22, 2011 and January 27, 2012 orders. Also on May 1, 2012, Apple produced previously unproduced .jpeg images of Mr. Nishibori's Sony-style iPhone design, also clearly related to Apple's Sony design project, as they contain images of an iPhone-like design prominently stamped with the work "Sony." Apple produced these images also on May 1, 2012, months after the January 15, 2012 deadline for production of documents relating to Sony design set by the Court's December 22, 2011 Order.

## III. ARGUMENT

### A. Apple Has Not Identified any Basis for Wholesale Exclusion of Highly Relevant Evidence Relating to the Origins of the iPhone Design

Apple's claim that Samsung's trial exhibits should be excluded based on Judge Grewal's June 27 Order Granting Apple's Motion to Strike Portions of Samsung's Expert Reports is

meritless.   As set forth below, the trial exhibits that are the subject of Apple's purported Motion to Enforce were not before Judge Grewal, and are unaffected by the plain terms of that Order. Moreover, the trial exhibits are all independently relevant and admissible, separate and apart from any expert opinions or invalidity theories that were adjudicated by Judge Grewal.

**1.   Samsung's Trial Exhibits Were Not At Issue on Apple's Motion to Strike**

Apple's claim (at 1) that Judge Grewal "has already excluded" evidence of Apple's "Sony style" CAD drawings and the February 2, 2006 e-mail from Tony Fadell is demonstrably false. In support, Apple relies in part on the proposed order it submitted in connection with that motion. *See* Dkt. 1420, at 1 (citing Apple's proposed order).   That proposed order was 14 pages long, and set forth in detail the precise evidence Apple sought to exclude.   Dkt. 939-12.   The only Sony-related evidence Apple listed in that pleading was Mr. Sherman's "testimony . . . that [D'677] . . . is invalid on the ground that it is anticipated or rendered obvious by . . . [the] Sony Ericsson W950 Walkman Phone [and the] Sony K800i."   *Id.* at 7-8; *see also id.* at 8-9 (same; D'087 patent). Apple did ***not*** list the "Sony style" CAD drawings, Tony Fadell email, or any other Sony-related trial exhibits Apple now seeks to exclude.   That is because Samsung's invalidity expert, Itay Sherman, did not rely on the Sony-style CAD drawings as prior art and did not refer to the Fadell e-mail anywhere in his report.   These exhibits therefore were not and could have been within the scope of Judge Grewal's Order Granting Apple's Motion to Strike Portions of Samsung's Expert Reports.

**2.   Apple Moved to Strike Expert Opinions, not to Exclude Underlying Evidence**

Even if Apple's prior motion to strike could somehow be extended to encompass to the trial exhibits Apple now seeks to strike, Judge Grewal's Order does not mandate exclusion of the evidence for all purposes.   Apple's Motion to Strike brought before Judge Grewal was directed to specific invalidity and non-infringement theories proffered by certain Expert Witnesses.   *See* Dkt. 939-1.   Apple's Notice of Motion made that fact abundantly clear.   There, Apple stated that Apple was moving "pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Patent Local

Rules to strike certain portions of the expert reports of [Samsung's experts]." *Id.* at 1. In the "Relief Requested" portion of the Notice, Apple stated:

> Pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Patent Local Rules, Apple seeks an order striking portions of certain reports submitted by [Samsung's experts], as identified in the accompanying Memorandum of Points and Authorities and Proposed Order. Specifically, Apple requests that the Court strike the portions of those reports (and exhibits thereto) that present evidence, arguments, or theories that Samsung failed to timely disclosed as required by the Patent Local Rules and Federal Rules of Civil Procedure 26(e) and 33.

*Id.* In the "Statement of Issues to Be Decided," Apple reiterated that the question before Magistrate Judge Grewal was limited to whether "the Court should strike certain portions of" the expert reports of certain Samsung experts. *Id.* at 1-3. Although Apple now attempts to repackage its prior motion as directed to the admissibility of the underlying evidence for all purposes, there is no basis for such *post hoc* enlargement of the relief sought.

Judge Grewal's Order itself makes clear that the scope of relief granted was limited. Specifically, with respect to the opinions of Samsung's expert Itay Sherman, Judge Grewal's Order provides:

> Apple moves to strike *portions of Itay Sherman's expert report* that opine that Apple's D'889, D'677, and D'087 Patents are invalid. Apple argues that Sherman's report includes theories never previously disclosed to Apple during discovery, and also that Sherman's report includes a prior art reference to a Nokia Fingerprint design that was never previously disclosed to Apple during discovery. Apple's motion is GRANTED.

Dkt. 1144, at 4-5 (emphasis added). At the conclusion of the Order, Judge Grewal stated: "In accordance with the foregoing, the court ORDERS that portions of the parties' *expert reports* be struck." *Id.* at 8 (emphasis added). Nowhere is there any language stating that the Court was striking any evidence other than a portion of an expert report. Nowhere is there any language stating that the Court was ruling that any evidence beyond specified expert testimony would be inadmissible at trial. And nowhere is there any language stating that the Court was excluding evidence on issues beyond those addressed in the interrogatories that were the subject of Apple's motion.

The Court has already recognized this distinction in the context of Apple's 035 model, which was among the references stricken by Judge Grewal's June 27 Order. *See* Dkt. 1144; *see also* Dkt. 939-12, at 8-9 (Apple's Proposed Order seeking to strike opinions based on the 035 prototype). Apple moved *in limine* to exclude the 035 model at trial, but the Court denied that motion. Dkt. 1267, at 3. Similarly, Apple has included purported design alternatives within its trial exhibits that were stricken by Judge Grewal's Order, demonstrating that it too recognizes that Judge Grewal's Order was limited to excluding certain expert opinions, and not the underlying evidence that each side sought to rely on to support those opinions. In sum, Judge Grewal's Order does not mandate exclusion of anything other than the specific expert opinions that were the subject of Apple's motion to strike, and does not support Apple's attempt to exclude the Sony style CAD drawings or the Fadell e-mail at trial.

**3. Samsung's Trial Exhibits Are Relevant and Admissible For Purposes Other Than Invalidity**

Apple's motion to enforce is premised on the erroneous assumption that, aside from serving as prior art references, "[t]he evidence has no other relevance to this case." Dkt. 1420, at 3. Not so. To the contrary, the evidence is relevant to a number of issues, including (i) to rebut allegations of copying; (ii) to prove that the design features of Apple's patents were well-known and are basic design concepts that were publicly known prior to the time the iPhone was conceived; (iii) as evidence of design functionality; and (iv) to rebut allegations of willfulness. There is absolutely no basis to hold that an alleged untimely disclosure of Samsung's obviousness theory based on two Sony prior art references means that ***all*** evidence of Sony's influence on the development of the intellectual property assets asserted in this lawsuit is excluded.

Apple also ignores the relevance of the evidence to Samsung's functionality arguments, both as to design patent claim construction and design patent invalidity. Specifically, Apple's designer Richard Howarth recognized that the "Sony-style" design yielded "a much smaller-looking product with a much nicer shape to have next to your ear and in your pocket," attributes

Mr. Howarth noted were "hard to ignore with a product we have to carry and use all day, every day." Walker Dec., Exh. 8 (TX 562).[3] Moreover, Apple has listed images of the model Mr. Howarth was using as a comparison point for the Sony-style design in Ex. 562 as evidence of alternative designs for the iPhone Apple claims it was considering before the "Sony-style" exercise. Walker Dec., Exh. 12 (TX 1) at 14-15, 18-19. Mr. Howarth's message is therefore directly relevant to rebut Apple's claims that functional considerations did not dictate any element of the claimed designs.

**B. Apple Withheld Mr. Nishibori from Deposition for Months in Violation of Court Order, Falsely Representing that He Was Unable to Sit for Deposition**

Apple's attempt to exclude the Nishibori deposition fails. Although Apple's counsel has represented that it did not agree to Mr. Nishibori's deposition in this case, that is contrary to the facts. Rather, Ms. Yohannan expressly stated that "Mr. Shin Nishibori is available for deposition in both the 796 Investigation and the Northern California action on May 2, 2012." Walker Dec. Exh. 1. Apple never rescinded its agreement, and as Apple noted, the caption from Mr. Nishibori's deposition reflects that it was taken in both the ITC and Northern District of California actions. Moreover, any delay in conducting Mr. Nishibori's deposition was caused by Apple, not Samsung, which had diligently sought Mr. Nishibori's testimony for months. Apple's refusal to make Mr. Nishibori available has already prejudiced Samsung. Granting Apple's request to exclude this testimony on the grounds that it was not taken during discovery would reward Apple for its own discovery misconduct.

**C. Apple Has Had Numerous Opportunities to Raise the Issues in its Motion, Waiving the Arguments it Now Makes**

Apple's motion attempts to portray Samsung's trial brief as disclosure of a brand new theory of the case. This is incorrect. Having been compelled to produce these materials over its

---

[3] Despite Apple's concealment of this document until the very last day of fact discovery, Mr. Sherman relied on it as supporting his opinion regarding the functionality of the D'087 and D'677 designs. Apple did not move to strike that portion of Mr. Sherman's expert opinion, *see* Dkt. 939-12, and there is accordingly no basis to prevent Mr. Sherman's testimony about it.

objections, Apple is well aware of the significance of the Sony designs and has been on notice of their relevance for months.

Over eight months ago, on November 8, 2011, Samsung specifically requested that Apple produce all materials related to the Sony design "including but not limited to the notebooks, diagrams, progress reports, studies, internal memoranda, contracts for services, and communications that reflect Sony designs or that include the name or logo of Sony (or "Jony"), depictions of Sony products, or references to Sony's design language" and "physical models that Apple created of the designs generated from this exercise/investigation." Walker Dec. Exh.13. Apple refused, and Samsung moved to compel production of these documents on December 13, 2011. (Dkt. No. 487.) The Court granted Samsung's motion on December 22, 2011, and ordered production of the materials "no later than January 15, 2012." (Dkt. No. 536 at 5:3-5.) Despite the Court order, Apple continued to fight tooth and nail to avoid producing these items. Although Apple represented on February 1, 2012 that it had already "r[u]n searches for the keyword[] "Sony," … against documents and email collected from Industrial Design inventors and produced any responsive hit" prior to January 15, 2012, it did not produce the crucial e-mail from Richard Howarth, the industrial designer in charge of the original iPhone project titled "the sony vs. apple competition" which contained the images of the Sony design and the original iPhone design until March 8, 2012, the last day of discovery in this action and nearly two months after the Court ordered production deadline. Walker Dec. Exh.7. Thus, Apple has long been on notice that Samsung intends to introduce documents and testimony regarding the Sony design. Moreover, to the extent that any disclosure of the relevance of these materials is untimely, Apple has waived its right to object due to its refusal to produce all Sony documents despite a Court order mandating otherwise and its refusal to produce Mr. Nishibori for deposition until May 2, 2012.

Apple had many opportunities to object to the introduction of these materials. Waiting until the eve of trial under the claim that this issue is new is the worst kind of sandbagging. Apple did not include this issue in the "disputed evidentiary issues" section of the Joint Pretrial Statement (Dkt. No. 1281) or as one of its 10 motions *in limine*. (Dkt. 1184.) In fact, just last

night Apple filed its deposition designations and objected to designations from the May 6, 2012 deposition of Brian Agnetta as untimely, but failed to raise any timeliness issue regarding Mr. Nishibori's May 2, 2012 deposition. (Dkt. No. 1401.) Apple further failed to raise *any* objection with respect to many of Samsung's designations of Mr. Nishibori's testimony. *Id.* at 69-70. This belies Apple's claim that it filed its brief in response to Samsung's trial brief, and reveals that Apple's underlying motivation is to attempt prevent the public from hearing the true story about how the iPhone was developed.

## IV.   CONCLUSION

For the foregoing reasons, Samsung requests that the Court deny Apple's motion in its entirety.

DATED: July 27, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Victoria F. Maroulis*
Charles K. Verhoeven
Victoria F. Maroulis
Kevin P.B. Johnson
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC