| | |
|---|---|
| HAROLD J. MCELHINNY (CA SBN 66781) <br> hmcelhinny@mofo.com <br> MICHAEL A. JACOBS (CA SBN 111664) <br> mjacobs@mofo.com <br> RACHEL KREVANS (CA SBN 116421) <br> rkrevans@mofo.com <br> JENNIFER LEE TAYLOR (CA SBN 161368) <br> jtaylor@mofo.com <br> ALISON M. TUCHER (CA SBN 171363) <br> atucher@mofo.com <br> RICHARD S.J. HUNG (CA SBN 197425) <br> rhung@mofo.com <br> JASON R. BARTLETT (CA SBN 214530) <br> jasonbartlett@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 | WILLIAM F. LEE <br> william.lee@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Facsimile: (617) 526-5000 <br> <br> MARK D. SELWYN (SBN 244180) <br> mark.selwyn@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 950 Page Mill Road <br> Palo Alto, California 94304 <br> Telephone: (650) 858-6000 <br> Facsimile: (650) 858-6100 |

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.   11-cv-01846-LHK (PSG) <br><br> **APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS** |

Apple filed this motion because Judge Grewal's Order prevents Samsung from relying on Sony handset designs, Apple's "Sony-style" CAD drawings, or Sony "design language" to argue the invalidity of Apple's designs. All such evidence was stricken from Mr. Sherman's expert report. Samsung's attempt to prove otherwise fails, as does its effort to devise other theories to support the admissibility of this evidence.

## I. JUDGE GREWAL HAS EXCLUDED EVIDENCE OF SONY DESIGN TO PROVE INVALIDITY

Mr. Sherman opined in stricken portions of his report that "the design language of Sony and Sony Ericsson apparently inspired the Apple design team" and that "the iPhone designs reflect explicit reference to Sony and some of the elements of the Sony Ericsson handset designs of that time." (Dkt. No. 939-4, Ex. 27 (Sherman report) at 48.) The stricken portions of his report include photographs of Apple's "'Sony style' CAD drawings" and an explanation of the design exercise in which they were created. (*Id*. at 48-49.) Also stricken were images of the Sony Ericsson W950 handset, along with Mr. Sherman's opinion that "[t]he CAD drawings created by Apple designers demonstrate that the W950 had a major influence on the development of the iPhone." (*Id*.) Mr. Sherman points to this evidence, along with a Sony Ericsson K800i camera phone, to support his conclusion that Apple's iPhone-related "design patents are obvious in light of prior art." (*Id*. at 50.) Apple successfully moved to have <u>all</u> of this material stricken from Mr. Sherman's report. Samsung is simply wrong that Judge Grewal's exclusion order "in no way relates to the 'Sony-style' CAD drawings or internal Apple emails that Apple seeks to exclude." (Dkt. No. 1428 (Opp.) at 2-3.)

Samsung acknowledges that Judge Grewal's order struck the two Sony handsets in Mr. Sherman's report, but offers these counter-arguments: Mr. Sherman "did not rely on the Sony-style CAD drawings *as prior art*" and Apple's proposed order did not specifically enumerate the CAD drawings or Tony Fadell's email. (*Id.* at 11.) Samsung draws too fine a distinction. Apple's proposed order expressly states, "the Court strikes the portions of the expert reports of" Mr. Sherman and others "that are highlighted in the copies of those reports," that were attached as exhibits in support of Apple's motion. (Dkt. No. 939-12 (Proposed Order) at 1.)

1  Also, when the argument about the Sony Ericsson W950 Walkman phone is specifically

2  enumerated, it includes "pp. 48-50" (*id.*, at 9), where the CAD drawings and Mr. Sherman's

3  opinions about Sony "design language" appear. Mr. Sherman relied on Apple's "Sony-style"

4  CAD drawings (which are not prior art) in explaining why he thought Sony's prior art invalidated

5  Apple's designs. Mr. Fadell's email circulating a news article about Sony design is additional

6  evidence Samsung proffers in support of the same theory. None of this is admissible to prove

7  invalidity under the express terms of Judge Grewal's Order.

8  Samsung argues that Apple "moved to strike expert opinions," but not to exclude the

9  evidence underlying them. As Apple explained in opposing Samsung's motion to clarify portions

10 of the Court's Order denying summary judgment, this distinction does not withstand scrutiny.

11 Judge Grewal's Order struck only expert reports because, at the time, Samsung had not presented

12 its untimely contentions anywhere else. But Judge Grewal's findings warrant the exclusion of

13 Samsung's untimely contentions at trial, regardless of how they are presented. Rule 37(c)(1)

14 "*mandates*" such exclusion, absent substantial justification or harmlessness. (*See* Dkt. 1282

15 (Opp. Br.) at 5 (quoting *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009)

16 (emphasis in original)).)

17 Judge Grewal found that neither substantial justification nor harmlessness excused

18 Samsung's failure timely to disclose invalidity theories based on Sony designs. (Dkt. No. 1144

19 (Order) at 4-5.) Consistent with that finding, Samsung does not here dispute that Apple produced

20 for inspection in July 2011 the CAD drawings of a design Mr. Nishibori made with a few typical

21 Sony-style details, such as slanted buttons and a jog wheel, and that Apple produced physical

22 printouts of the CAD drawings a few months later. (Dkt. No. 1420 (Mot.) at 2.) Samsung also

23 does not dispute that Apple produced the Fadell email in November 2011. (*Id.*) The evidence

24 Apple seeks to exclude was thus in Samsung's hands by last autumn. The single piece of

25 evidence that Samsung complains it did not see until discovery concluded is an email from

26 Mr. Howarth, but that email was not even a subject of Apple's motion. (*Compare* Dkt. No. 1420

27 (Mot.) at 4 *with* Dkt. No. 1428 (Opp.) at 6.) Mr. Sherman opined that the rounded corners of the

28 iPhone were functional, supporting his opinion with reference to Mr. Howarth's email, and Apple

APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3176316

2

1  did not move to strike those portions of Mr. Sherman's report.  (Dkt. No. 939-4, Ex. 27  (Sherman

2  Report) at 96-97)  Apple's motion does not seek to exclude this email.

3  **II.  SAMSUNG'S EVIDENCE IS NOT ADMISSIBLE IN SUPPORT OF OTHER THEORIES BECAUSE IT IS NOT RELEVANT TO THE DEVELOPMENT OF THE IPHONE DESIGN**

5  Samsung argues that its trial exhibits are admissible because they are relevant to other

6  issues.  Other than Mr. Howarth's email, which Samsung may use in support of its functionality

7  defense, Samsung is mistaken.  Exhibits related to "Sony-style" design are <u>not</u> admissible "to

8  prove that the design features of Apple's patents were . . . publicly known prior to the time the

9  iPhone was conceived," as Samsung suggests. (Dkt. No. 1428 (Opp.) at 13.)  That is a re-

10 packaging of Mr. Sherman's obviousness theory, which Judge Grewal has already stricken.  Nor

11 are the exhibits relevant "to rebut allegations of copying" or "willfulness," the other rationales

12 Samsung offers.  (*Id*.)  There is no allegation in this case that Apple copied Sony's trade dress or

13 willfully infringed Sony's patents.  And the evidence has no bearing on whether *Samsung* copied

14 and willfully infringed Apple's design patents.

15 Samsung no doubt intends to distract the jury from its own copying by suggesting that

16 Apple, too, has copied a competitor.  The evidence is not admissible to prove this point, and

17 Samsung's attempt to proffer it on this basis should be rejected under Rules 402 and 403.

18 Mr. Nishibori's design and Mr. Fadell's email had no influence on the development of the

19 iPhone's design, and to suggest otherwise is a waste of the jury's precious time.

20 During development of the iPhone, Apple's industrial designers created numerous

21 concepts, including this one dated August 2005—a rectangular shaped phone with evenly

22 rounded corners, a band running around the midpoint of its body, a centered display on the front

23 face, a menu button centered below the screen, and a speaker slot centered above the screen.

24 (APLNDC-NCC282-286.)

APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3176316

3



This design (code-named "purple") predates by many months Mr. Fadell's 2006 e-mail forwarding an article about Sony design and Sony's new Walkman. (DX649.) It also predates Mr. Nishibori's March 2006 design. (DX623.) The existence of this design conclusively rebuts Samsung's suggestion that Apple looked to Sony for a portable electronic device that is "square with a screen," has "corners [which] have been rounded," and lacks "excessive ornamentation" or buttons. (Dkt. No. 1300 (Samsung Trial Br.) at 7.) Mr. Howarth, another Apple designer, testified that he and Mr. Nishibori together selected an earlier iPhone model to use as the basis to which Mr. Nishibori would add his "Sony" design details. (Declaration of Alison M. Tucher in Support of Apple's Reply in Suppport of Motion to Enforce Court Orders Regarding Sony Designs "Tucher Decl." Ex. A (Howarth Dep.) at 58:21-59:14.)

There was no conspiracy among Apple inventors to minimize Mr. Nishibori's design exercise. Mr. Nishibori himself testified that the design exercise was to be an "enjoyable" side project and that he merely applied details, "buttons and switches," to express the Sony style on a model phone Apple had already developed. (Tucher Decl. Ex. B (Nishibori Dep.) at 23:3-12; 33:21-34:5; 37:10-25.) Mr. Stringer confirmed an understanding that it was a "fun" "role-

APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3176316

4

playing" type of exercise that asked "what would Sony do if they were us?" (Tucher Decl. Ex. C (Stringer Dep.) at 111:5-112:6.)

In the end, nothing came of Mr. Nishibori's "Sony-style" detailing. First, none of its "buttons and switches" was adopted into the iPhone design. (APLNDC-NCC282-286; DX623; PX162.)  Second, iPhone designs both before and after the Nishibori exercise embodied a symmetrical aesthetic, with centered displays and menu buttons. In contrast, Nishibori's design places the screen above center to make room for distinctive Sony-style diagonal buttons, and adds these asymmetrical buttons and a jog-wheel to the right side of the device. Third, Mr. Nishibori's



design features a protruding speaker element, as shown above and in the side view below, which is inconsistent with the flat front surface of Apple's iPhone designs before and after Mr. Nishibori's exercise.



APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3176316

5

1    Other Apple models attest to the fact that the final iPhone design is a product of Apple's
2  exploration of symmetrical rectangular shapes with rounded corners, in the line of Apple's 2005
3  "purple" design, and not the result of Mr. Nishibori's short-lived experiment.



Finally, Samsung cannot introduce into evidence the Sony-style CAD drawings on the basis that Mr. Howarth's email is admissible to support its (far-fetched) functionality argument. Mr. Howarth's email mentions Mr. Nishibori's Sony-style design, and says the design is "only half a step away from where we were . . . before we changed to the 3-equal-striped sandwich" design. (DX 562.001.) Although witnesses have repeatedly testified that Mr. Howarth's e-mail does <u>not</u> depict a comparison between Mr. Nishibori's design and the later-abandoned "extrudo" design, Samsung apparently intends to argue otherwise at trial. (Dkt. No. 1428 (Opp.) at 6-7.) The e-mail itself states that the photographs show "the 3-equal-striped sandwich" design beside the silver extruded design. (DX562.) When shown Mr. Howarth's e-mail, Mr. Nishibori testified that he did not recognize the black-colored model and had not worked on it. (Tucher Decl. Ex. B

APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3176316

6

1  (Nishibori Dep.) at 48:23-49:18.)  And Mr. Howarth confirmed it was not Mr. Nishibori's model
2  in the photographs attached to his email.  (Tucher Decl. Ex. A (Howarth Dep.) at 65:9-16.)[1]

### III. MR. NISHIBORI'S TESTIMONY SHOULD BE EXCLUDED UNDER RULE 403

Apple strenuously rejects Samsung's charge of "discovery misconduct" but withdraws its timeliness objection to Mr. Nishibori's testimony.  Apple originally did not produce Mr. Nishibori for deposition because, although at the time still an Apple employee, Mr. Nishibori was out on an extended personal leave and under the care of a physician.  (*See* Dkt. 1429-2, Ex. 1 (Walker Decl.) at 2.)  When Judge Pender ordered him to sit for two hours of deposition in the ITC matter, Apple did agree that the deposition could also count in this case, and Apple regrets the error in our moving papers asserting otherwise.

Mr. Nishibori's testimony should nonetheless be excluded under Rule 403 because any probative value it has is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues [and] wasting time."  Fed. R. Evid. 403.  Mr. Nishibori's exercise in adding "Sony-style" details to a previously existing iPhone model was a diversion that did not affect the development of the iPhone design.  Also, Mr. Nishibori's testimony is internally inconsistent.  Immediately before he offered the testimony that Samsung has quoted, Mr. Nishibori answered a related question this way:

> Q: Were you one person who contributed to the look of the hardware of the exterior of the first iPhone?
>
> A: I do not know.

(Dkt. 1429-4, Ex. 2 (Walker Decl..) at 5.)  And immediately after the testimony that Samsung quotes, Mr. Nishibori acknowledged that his Sony-style details were "not in the final product." (*Id.*, at 7.)

---

[1] In addition to the Fadell email and the "Sony-style" CAD drawings, Samsung's exhibit list includes .jpeg images of a model made of the design shown in Mr. Nishibori's "Sony-style" CAD drawings.  These .jpeg images were in Mr. Nishibori's possession (not Apple's) until the day before his deposition.  (Tucher Decl. ¶ 2.)  They are inadmissible for the same reason as the CAD drawings, of which they are cumulative (*Compare* DX690 (.jpeg images of model) *with* DX623 (CAD drawings).)

**CONCLUSION**

Apple requests that the Court enforce Judge Grewal's Order by excluding evidence that Apple's designs were derived from Sony's design language, from Mr. Nishibori's exercise in applying Sony-style design details to the iPhone, or from Sony handsets of the time.  Because this evidence is not admissible to prove the invalidity of Apple's patents, it should not come in for any purpose.

Dated: July 29, 2012                              MORRISON & FOERSTER LLP


                                                  By:   */s/ Michael A. Jacobs*
                                                        Michael A. Jacobs

                                                        Attorneys for Plaintiff
                                                        APPLE INC.

APPLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE COURT ORDERS REGARDING SONY DESIGNS
CASE NO. 11-CV-01846-LHK (PSG)
sf-3176316

8