1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                      UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 APPLE INC., a California corporation,      CASE NO. 11-cv-01846-LHK

19         Plaintiff,

                                              **SAMSUNG'S RESPONSES TO APPLE'S**
20    vs.                                     **OBJECTIONS TO SAMSUNG'S**
                                              **OPENING SLIDES**
21 SAMSUNG ELECTRONICS CO., LTD., a
   Korean business entity; SAMSUNG
22 ELECTRONICS AMERICA, INC., a New
   York corporation; SAMSUNG
23 TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,
24
           Defendants.
25

26

27

28

Samsung hereby submits responses to Apple's objections to Samsung's opening.

**Slides 5 and 6:**   The information contained in slides 5 and 6 will be introduced through one or more of the following witnesses: H.S. Park, M.H. Lee, W.P. Hong, Deongseok Ryu, Jin Soo Kim and Dale Sohn.

**Slides 8 and 50:**   Apple objects to slide 8 based on its claims that the LG Prada was released after the iPhone, and because the image of the JP'638 is allegedly misleading because it does not show the side view.   The Court has already made clear that the "the LG KE 750 Prada may be admissible as a prior art reference under 35 U.S.C. § 102," among other purposes, such as to rebut allegations of copying.   Dkt. 1267 at 3.   Apple is also mistaken that the Federal Circuit's Order compels Samsung to include a side view of the JP'638.   The Federal Circuit's Order says nothing of the sort.   Apple is of course free to introduce the side view of the JP'638 in its case and on cross. The same is true for slide 50.

**Slide 9:**   Apple objects to the reference to U.S. Patent Pub. 2004/0041504 in slide 9 as stricken by Judge Grewal, and irrelevant because it is allegedly not portable.   But U.S. Patent Pub. 2004/0041504 is not mentioned anywhere in the Proposed Order Apple submitted in connection with its Motion to Strike (Dkt. 939-12), the briefs Apple filed in support of its motion (Dkt. 939-3, 1054), or in Judge Grewal's Order striking certain expert opinions.   (Dkt. 1144). Apple is simply wrong in its claim that U.S. Patent Pub. 2004/0041504 has been excluded from this case.   Moreover, Apple's argument that Samsung may not refer to U.S. Patent Pub. 2004/0041504 because it is "not portable" is disproved by its own assertion that "the function of tablet computers does not dictate a specific size."   (Dkt. 1136, at 11).   There is no requirement of "portability" to serve as a proper prior art reference for Apple's patent on an "electronic device."   Moreover, this is a factual issue for the jury to consider and not an admissibility issue.

**Slide 10:**   Apple objects to Samsung's slide 10 as presenting scaling issues, and disclosing phones and mockups that are only admissible for limited purposes and that were allegedly not produced for inspection.   The images on slide 10 are being offered not as invalidating prior art, but rather to show independent creation and to rebut allegations of copying, consistent with the Court's prior orders.   (Dkt. 1267.)   The Court has rejected Apple's efforts to

1  exclude documents showing a lack of copying so this objection is overruled.   Issues of scaling

2  therefore do not have the same importance as they do in the infringement analysis. Nothing

3  prevents Samsung from showing trial exhibits in its opening simply because they may be subject

4  to a limiting order later.   In addition, although Apple has not specified which models it claims

5  were not produced for inspection, photos of the models were produced during discovery, and

6  many were exhibits to the reports and declarations filed by Apple's own experts.   For example,

7  numerous images of the models Apple now complains of were produced at SAMNDCA00321707-

8  766 on February 3, 2012, well before the close of fact discovery, and are contained in Samsung's

9  Ex. 625

**Slides 11-19:**   Apple's objection to slides 11-19 on the ground that they contain "undisclosed theories" is meritless.   Samsung has argued since the inception of this case that it has not copied Apple's products, and that it independently pursues its own designs.   Apple cannot claim surprise now that the time has come to prove those theories using documents that were timely produced to Apple.   In addition, Apple's argument that slides 11-15 contain undisclosed models is untrue.   Samsung timely produced photos of the models depicted in the slide, and Apple does not claim otherwise, as well as the physical models it had.   Like Apple, Samsung did not retain all of its models going back almost a decade, but where it did not, Samsung timely produced images of them.

**Slides 20-22:**   Apple's argues that slides 20-22 are misleading because they "wash out" detail on the side of the "Sony" phone.   The image of the "Sony" CAD drawing depicted in the slide was taken from Apple's own documents.   As to Apple's additional objections based on its alleged motion to enforce, Apple's argument fails for reasons stated in Samsung's pleadings

**Slides 24, 30, 31, 58, 63, 78 and 167:**   Even though Apple itself has included numerous deposition excerpts in its opening slides, including video of depositions, Apple objects to Samsung's use of deposition testimony in Slide Nos. 24, 30, 31, 38-40, 58, 63, 78 and 167.   The testimony Samsung seeks to use in its slides will be coming in during the trial regardless of whether Apple's witnesses testify live or by deposition.   If they testify live, their testimony will either be consistent with their prior sworn testimony in Samsung's slides, or they will be

1  impeached with that testimony if their testimony is inconsistent with their prior testimony.  Either

2  way, the statements in Samsung's slides will be part of this trial, so there is no reason they should

3  not be used in opening statements.  Indeed, courts that have considered this issue have permitted

4  written deposition testimony to be used in opening statements.  *See, e.g., MBI Acquisition*

5  *Partners, L.P. v. Chronicle Pub. Co.*, 2002 WL 32349903, at *1 (W.D.Wis. Oct. 2, 2002).

6    Moreover, Apple's position – that Apple should be allowed to use deposition testimony

7  while Samsung should not – is fundamentally unfair and would prejudice Samsung's trial

8  presentation from the very start.  Apple has argued that its position is justified because its

9  witnesses are available for trial.  Even if true, Apple should not be handed the tremendous

10 advantage of being the only party that can use deposition testimony in opening statements.

11   Apple's objections to slide 24 are also baseless for the additional reason that these

12 witnesses are managing agents.  Moreover, Greg Joswiak testified as a 30(b)(6) witness on behalf

13 of Apple.  (*See* Milowic Dec., Ex. E.)

14   **Slides 25 and 26:** Apple objects to the use of the word "regularly" in the headings, but

15 evidence will show that Apple frequently reviews its competitors' products.

16   **Slide 29:** Apple's claim that slide 29 is objectionable because it features a document that

17 was produced after discovery and includes a purportedly "undisclosed theory" is misleading.

18 The document featured in the slide is Apple's own publicly-available application for a trademark

19 on its "home" button.  That document was in Apple's possession.  Apple failed to produce it

20 even though it was responsive to a number of Samsung's document requests.  Samsung was

21 forced to obtain the document itself, and produced it to Apple during discovery in the ITC

22 investigation.  After producing the document to Apple, Samsung used it in depositions of

23 Apple's expert witnesses.  Apple never objected on timeliness grounds.

24   **Slides 38-40:**  Apple claims that slides 38-40 are improper because lack of confusion is

25 irrelevant to a trade dress dilution claim.  Lack of confusion bears on the statutory factor of

26 association and is relevant to a lack of willfulness or bad intent, as well as Samsung's other claims

27 and defenses, such as to rebutting Apple's claim that Samsung's products look deceptively similar

28 to Apple's.

1 **Slides 41 and 42**:   Apple's argument that the marketplace is irrelevant once dilution 2 begins is unsupported.   To the extent that Apple is claiming liability and seeking damages based 3 on allegedly ongoing dilution, evidence of lack of distinctiveness throughout that relevant period 4 is probative and admissible to rebut Apple's allegations.

5 **Slide 48**:   Samsung should be allowed to communicate this Court's holding with respect 6 to the test for design patent infringement.   The Court has repeatedly noted that the Gorham test 7 for design patent infringement established by the U.S. Supreme Court over a century ago is the 8 controlling standard.   (*See* Dkt. 1425; *see also* Dkt. 449, at 10-11.)   There is no basis to prevent 9 Samsung from communicating that standard to the jury.

10 **Slide 49**:   Apple objects to Samsung's slide excerpting the language from the Supreme 11 Court's decision in *Gorham*, but does not challenge the relevance of that decision to this case, or 12 the accuracy of Samsung's excerpt.

13 **Slide 51**:   Apple incorrectly claims that the non-infringement theory reflected in slide 51 14 was "undisclosed" and has been stricken.   Samsung's expert Robert Anders did not proffer this 15 opinion, and it was not a subject of Apple's Motion to Strike or Judge Grewal's Order.   This 16 evidence of non-infringement will be put on by Samsung's witnesses, or on cross-examination.

17 **Slide 60**:   Samsung's slide shows one figure of the D'305 patent in black and white, and 18 the other in color, just as the design is shown in the patent.

19 **Slide 77**:   Apple claims that slide 77 is misleading because it compares Samsung's 20 Galaxy Tab in landscape view (i.e., its natural orientation) with figure 9 of the D'889 patent, in 21 which the patent is shown in a portrait orientation.   That is no basis to strike a portion of 22 Samsung's opening.   Apple's remedy is to use other comparisons.

23 **Slide 86**:   Apple objects to Slide 86 as not being supported by the exhibit, but it included 24 a typographical error.   It should cite to Exhibit 548, which is evidence relating to the MERL 25 DiamondTouch prior art touch screen.   The video is a demonstrative video of the touch screen 26 running the Mandelbrot application.   Apple's objection that this specific piece of evidence is not 27 in Samsung's invalidity contentions is unclear and meritless.   Apple appears to be attempting to 28 relitigate an issue it already lost before Judge Grewal.   (Dkt. No. 1144.)   Whether or not that is

true, Apple's argument fails.   Earlier in the case, Apple moved to strike expert testimony with respect to an invalidity theory based on the Mandelbrot prior art (also called FractalZoom). Samsung opposed Apple's motion as to invalidity theories based on three references: the Mandelbrot, DTLens, and DTMouse applications. (Apple's Reply, Dkt. No. 1054 at 1.)   Because Apple dropped its dependent claims, Samsung did not oppose the remainder of Apple's motion. (Samsung Opposition, Dkt. No. 1000 at 2-4.)   In his Order, Judge Grewal denied Apple's motion as to the Mandelbrot invalidity theory and evidence supporting it.   (Dkt. No. 1144 at 3.) Consequently, Samsung should not be precluded from presenting that invalidity theory or evidence supporting it at trial, including a video and other evidence demonstrating that Mandelbrot/FractalZoom invalidates the '915 patent.

**Slide 92:**   In Slide 92, Apple objects to the Han video as hearsay regarding the state of the art.   There are no statements in the Han video that are being offered for the truth of the matter asserted.   Instead, the Han video will be offered as a demonstration of Mr. Han's prior art device.

**Slide 97:**   There is nothing inaccurate about the statement in Slide 97 Apple is objecting to because, as Apple observes, the provisional application for the Microsoft patent was filed on the identified date.   The Microsoft patent issued from this provisional application.   Moreover, the relevant disclosure from the Microsoft patent was in the provisional application.

**Slides 107-109:**   In Slides 107-109, Apple first objects to the date the '381 patent was filed.   However, the filing date of the '381 patent is December 14, 2007.   Apple next objects that Samsung's expert does not rely on the January 2005 version of Tablecloth.   The basis for this objection is unclear, as Samsung's expert, Dr. van Dam relies on the January 2005 version of Tablecloth.   (*See* Expert Report of van Dam, dated March 22, 2012.)   Apple next asserts a hearsay objection.   The exhibit and citations in slides 107-109 are not hearsay.   The article has valid, non-hearsay purposes, such as establishing the prior art dates, and Exhibit 696 was authored by Dr. Forlines who will testify as to the facts contained on slide 108.

**Slides 125 and 134**:   Apple objects to slides 125 and 134, which relate to the deposition of Intel, on the grounds that the depositions occurred after the close of fact discovery.   Because

Apple stipulated that the deposition would take place out of time, Apple's objection should be overruled.

The Court ruled that depositions taken after the discovery cutoff would be allowable "to the extent that any deposition or discovery was allowed by Judge Grewal or the parties stipulated to allowing that discovery to happen after the fact discovery cut off . . . ." R.T., 7/18/12 at 34:21-35:8.   The parties agreed to take the Intel deposition after the close of discovery.   On March 1, 2012, Intel indicated that its witnesses would be available for deposition in Germany on March 9-15, 2012.[1]   (Milowic Dec., at Ex. A).   Samsung immediately told Apple.   (Milowic Dec., Ex. B).   On March 6, 2012, just 2 days before the close of discovery, Apple's counsel emailed indicating that Apple would serve its own subpoena on Intel (which it did) and that Apple's deposition of Intel "will proceed *on these same dates*."   (*Id.*)[2]   In the same email, Apple also demanded equal questioning time of the Intel witnesses.   (*Id.*)   After Intel temporarily postponed the deposition, on March 16, 2012—eight days after the close of fact discovery—Apple once again demanded equal questioning time at the deposition and even offered to host the deposition at its counsels' offices in Brussels.   (Milowic Dec., Ex. D.)   The deposition took place at Apple's counsel's office.   Apple participated in the deposition, questioned the witnesses, and lodged no objections.   (Milowic Dec., at ¶ 6.)   Apple reiterated on the record that it was "entitled" to half of the deposition time.   (Milowic Dec., at ¶ 7).   Apple's actions prove that it agreed to, and participated in, the Intel deposition.

The Intel testimony concerns the chips at the heart of the accused functionality in Apple's products.   Both Apple's and Samsung's experts relied on the testimony in reaching their opinions.   Apple's gamesmanship would preclude the jury from considering a full record on Samsung's claim.   Apple's objection should be rejected.

---

[1]   Samsung subpoenaed Intel in December 2011, over 3 months before the close of fact discovery and worked with Intel to craft a protective order satisfactory to Intel.
[2]   Apple subpoenaed Intel on March 6, 2012 seeking a deposition in Germany for March 8, 2012 "or another date agreed upon by the parties."   (Milowic Dec., Ex. D.)

**Slide 136:**  Samsung will revise the text in this slide to read, "Samsung's Disclosure of and Offer to License Its Standard Essential Patents."

**Slide 140:**  Apple objects to slide 140 as irrelevant, misleading, and discussing a patent that is not in the litigation.  None of these objections has merit.  Slide 140 sets forth Apple's responses to request for admission to address Apple's contentions that Samsung breached its obligations to ETSI by untimely disclosing its patents.  The admissions are relevant because they demonstrate that Apple's practices with respect to the disclosure of its IPR do not accord with the standard to which it holds Samsung.  *See Qualcomm Inc. v. Broadcom Corp.*, 548 F. 3d 1004, 1020 (Fed. Cir. 2008) (assessing scope of duty created by standard setting organization by noting conduct of members).  Because Apple does not allege infringement of any standards essential patents in this litigation, Samsung must necessarily refer to non-asserted patents to describe such conduct.  The Court has not barred introducing such evidence regarding non-asserted patents.  Finally, the slide consists of Apple's own admissions and is not misleading.

**Slides 144, 145 and 153:**  Apple incorrectly objects to slides 144, 145, and 153 for allegedly suggesting that Samsung practices the technologies claimed by its '460 and '893 patents. The slides depict a generic device performing the claimed functions of the '460 and '893 patents. They do not make any claim that Samsung practices the claimed technologies.  Rather, they refer to the asserted claims of the '893 and '460 patents, and illustrate each element of these claims.

**Slide 159:**  Apple objects to the third bullet point on Slide 159 as false and misleading. The third bullet point states:  "The Patent Office rejected invalidity arguments now made by Apple."  This statement is true.  During the prosecution of the '711 patent, Samsung overcame the Patent Office's assertion that the Sony K750 device was invalidating prior art.  (*See* TX 1067 at APLNDC-WH-A0000016941 and APLNDC-WH-A0000016969, and TX 1071). Furthermore, also during prosecution of the '711 patent, Samsung disclosed to the Patent Office another reference on Apple's trial exhibit list as prior art to the '711 patent—the Miyasaka reference—and sought to distinguish the claimed invention from the Miyasaka reference.  (*See* TX 1067-68 at APLNDC-WH-A 0000016846).  Although both the Sony K750 device and the Miyasaka reference were properly before the Patent Office, the '711 patent issued.

1    **Slide 162:**   This slide does not cite DX 592 "misleadingly."   Slide 162 cites data taken
2    directly from Apple's own document.

3    **Slide 164:**   Slide 164 summarizes evidence that will be presented to rebut Apple's
4    allegations that it is entitled to lost profits or trade dress damages, and is further relevant to the
5    amount of reasonable royalty.   The existence of factors other than the patented features that are
6    considered in buyers' choices shows that Apple cannot prove its patented or trade dress features
7    drive demand.   Samsung will present evidence from Apple documents identifying these as
8    important factors in choosing to buy.   *See, e.g.*, TX572 at 2007634 (large screen / operating
9    system / brand / turn-by-turn GPS navigation / game apps); '681 (easy to use); '689 (carrier /
10   brand / large screen / market for apps / turn-by-turn GPS navigation).   This slide will be
11   supported by trial testimony from Art Rangel and/or Eric Jue.   Also, testimony of Apple's expert
12   Terry Musika will support these factors.   *See* Musika Depo. Tr. at 34:20-35:17 ("Brand, price,
13   carrier, operating system").   Apple's reference to apportionment is a red-herring.   This evidence
14   will be used to rebut Apple's allegations that its patented or trade dress features drive demand.

15   **Slides 165 and 166:**   Slides 165 and 166 properly use the word "essential" to describe
16   Samsung's declared-essential patents.   Samsung is not obligated to characterize its own patents
17   in the way that Apple would prefer to characterize them, namely as "FRAND" patents.
18   Moreover, Apple cannot complain that these patents are characterized as "essential" while at the
19   same time telling the jury that these patents are subject to unenforceability and antitrust defenses
20   premised on that very characterization.   Samsung will present testimony from its experts,
21   including Dr. Tim A. Williams, that certain of its patents are declared essential to the UMTS
22   standard.   Slides 165 and 166 also describe Samsung's other patents, as well as Apple's patents
23   as "non-essential."   There is no dispute about the accuracy of this description.   Samsung does
24   not contend that its feature patents are essential to the functioning of products, and Apple does not
25   contend that its patents are essential to the functioning or appearance of products.   Finally,
26   Samsung will change 166 to "Apple asserts no essential patents."

27   **Slide 168:**   Apple's objection to this testimony from its expert is meritless because it
28   claims that the patents-in-suit are embodied by several iPhone models.

1  DATED: July 29, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Victoria F. Maroulis*
Charles K. Verhoeven
Victoria F. Maroulis
Kevin P.B. Johnson
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC