IRELL & MANELLA LLP
Andrei Iancu (184973)
aiancu@irell.com
Alan J. Heinrich (212782)
aheinrich@irell.com
David A. Schwarz (159376)
dschwarz@irell.com
Jonathan Lange (238056)
jlange@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Nonparties
Research In Motion Corporation and
Research In Motion Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 11-CV-01846-LHK |
| Plaintiff, | **NONPARTIES RESEARCH IN MOTION CORPORATION AND RESEARCH IN MOTION LTD.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS ADMINISTRATIVE MOTION TO SEAL THIRD PARTY CONFIDENTIAL INFORMATION** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2680927

NONPARTIES RESEARCH IN MOTION CORPORATION AND RESEARCH IN MOTION LTD.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL

1  Nonparties Research In Motion Corporation and Research In Motion Ltd. (collectively,
2  "RIM") respectfully submit this supplemental brief to address two issues raised by the Court
3  during its July 27, 2012 hearing regarding motions to seal.  RIM respectfully believes that the
4  showing made by its initial motion to seal and supporting declarations (Docket No. 1396) amply
5  demonstrates compelling reasons why three key license terms in one line of Trial Exhibit 630
6  should be redacted from any publicly-filed document and otherwise held under seal.  Nonetheless,
7  out of an abundance of caution, RIM submits this supplemental brief and the Supplemental
8  Declaration of Michael J. Crowley ("Supp. Crowley Decl."), filed concurrently herewith, to
9  address two points: *first*, the importance of maintaining the confidentiality of license terms,
10 whether or not that agreement has expired; *second*, the need to accord protection to license terms
11 which disclose the scope of the patent license, as reflected in the description of the products and
12 technology at issue in the license.

13  First, the three key terms of RIM's Patent License Agreement ("Patent Agreement") with
14 Samsung summarized in Trial Exhibit 630 are RIM's highly confidential business information and
15 trade secrets, regardless whether the Patent Agreement is currently in force.  As the Court
16 recognized during the July 27, 2012 hearing, the key financial terms of patent license agreements
17 are properly sealed.  *See, e.g., In re Electronic Arts, Inc.*, 298 Fed. Appx. 568, 569-70 (9th Cir.
18 2008) (granting mandamus relief and sealing terms of third party license agreement).[1]  The
19 grounds justifying sealing such terms apply to expired agreements, especially where, as here, RIM
20 is at the present time involved in active patent licensing negotiations which cover, amongst other
21 patents, certain of the RIM patents that were subject to the Patent Agreement.  Supp. Crowley
22 Decl. ¶ 3.

---

[1] *Accord Powertech Tech., Inc. v. Tessera, Inc.*, No. 11-CV-6121, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012) (sealing license agreement); *AMC Tech., L.L.C. v. Cisco Sys.*, No. 11-CV-03403, 2012 U.S. Dist. LEXIS 9934, at *5 (N.D. Cal. Jan. 27, 2012) (sealing patent licensing terms); *TriQuint Semiconductor v. Avago Techs.*, No. 09-CV-1531, 2011 WL 4947343 (D. Ariz. Oct. 18, 2011) (sealing draft patent licensing terms); *see also Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (citing "trade secrets" as an example of sealable information).

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2680927

- 1 -

NONPARTIES RESEARCH IN MOTION CORPORATION AND RESEARCH IN MOTION LTD.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL

1        At any given time, RIM is engaged in the negotiation or renegotiation of numerous non-exclusive licenses related to its intellectual property with entities, including those who compete (or may potentially compete) with RIM.  Supp. Crowley Decl. ¶ 2.  Many of the RIM patents that are subject to the Patent Agreement purportedly summarized in Trial Exhibit 630 have not yet expired. *Id*. ¶ 3.  In addition, the products and technology subject to the Patent Agreement continue to be relevant to RIM's ongoing business and licensing activities.  *Id*.

        Disclosure of the terms purportedly summarized in Trial Exhibit 630 would reveal the identity and terms under which RIM was willing to license its patents, both of which would be valuable to a counterparty negotiating with RIM regarding those same patents or similar products and technology.  *Id.* ¶ 3.  The counterparty would be able to craft its negotiations around the terms that it believes RIM had been willing to agree to in the Patent Agreement, whereas RIM would remain unaware of its counterparty's past negotiating strategies and positions .  *Id.*  Moreover, bound by the confidentiality of the Patent Agreement, RIM would not be able to correct any erroneous conclusions that the counterparty may have drawn from Trial Exhibit 630.  *Id.*  With such an information asymmetry, RIM would likely find it much more difficult to amicably conclude licensing negotiations with the counterparty.  *Id*.

        Indeed, it is likely that counterparties (including competitors of RIM) negotiating or renegotiating license agreements with RIM have entered or may enter into license agreements with Samsung.  *Id.* ¶ 4.  RIM will not know the terms of these agreements, which may involve many of the same Samsung patents, products or technology subject to the Patent Agreement.  *Id.*  The counterparty, on the other hand, would purport to know how RIM valued these Samsung patents, and could use this information to negotiate (or renegotiate) terms as favorable (or more favorable) than those obtained by RIM, thus providing the counterparty with a competitive advantage.  *Id*.

        RIM does not disclose this information to counterparties or to competitors, precisely because RIM derives value from maintaining the secrecy of this information.  Crowley Decl. (Docket No. 1396-2) ¶¶ 8, 11.  Given the importance of licensing efforts to RIM's business, RIM would be substantially and irreparably harmed by such a disclosure.  Supp. Crowley Decl. ¶ 5.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2680927

- 2 -

NONPARTIES RESEARCH IN MOTION CORPORATION AND RESEARCH IN MOTION LTD.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL

1      Second, the *scope* of patent licenses, *i.e.*, the nature and type of the intellectual property
2  involved, should be redacted and sealed in Trial Exhibit 630.  In that exhibit, the scope is denoted
3  by the column heading "Licensed Products/Technology."  Such information is RIM's highly
4  sensitive and confidential business and trade secret information.  Crowley Decl. (Docket No.
5  1396-2) ¶ 7.  As with the other key terms of the Patent Agreement, RIM maintains the
6  confidentiality of this scope, derives substantial value from its secrecy, and would be severely
7  harmed by such disclosure.  *Id*. ¶¶ 8, 11-12.  Indeed, the scope of the license is what gives the
8  Patent Agreement meaning; disclosure of the type of patents RIM would license itself reveals
9  important information relating to RIM's confidential business plans, including whether it would
10 choose to grant a non-exclusive license as to certain patents.  *Id*.  As already noted, the products
11 and technology subject to the Patent Agreement continue to be relevant to RIM's ongoing business
12 and licensing activities.  Supp. Crowley Decl. ¶ 3.  Thus, the scope provides information regarding
13 what intellectual property RIM was willing to license to Samsung, or from Samsung, and thus
14 would be just as revelatory to RIM's counterparties in ongoing patent negotiations as the other
15 business terms already found by the Court to be sealable.  As with the other key business terms in
16 the columns "Term" and "Payments," the key business terms in the "Licensed Products/
17 Technology" column should be redacted or sealed.

18     While "pricing terms, royalty rates, and guaranteed minimum payment terms" may be
19 "the precise sort of information" "that plainly falls within the definition of 'trade secrets'", *In re*
20 *Electronic Arts, Inc.*, 298 Fed. Appx. at 569, the Ninth Circuit's opinion did not suggest that these
21 terms were the only types of information that would qualify for trade secret protection, a point
22 recognized by this Court in acknowledging that the duration or term of a particular license would
23 be sealable.  Although the scope of the license grant was not mentioned by the Court of Appeals in
24 *Electronic Arts* (and non-party Electronic Arts did not seek to redact that information), that
25 opinion did not purport to be an exhaustive list of confidential or trade secret licensing terms that
26 may satisfy the "compelling reasons" standard.  *Id.* (holding that the terms at issue "fall[] within"
27 the definition of trade secrets that are sealable).  Where, as here, the license's scope is also a trade
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2680927

- 3 -

NONPARTIES RESEARCH IN MOTION CORPORATION AND RESEARCH IN MOTION LTD.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL

1  secret that is just as sensitive, and its disclosure would be just as damaging, as other key terms of
2  the license, sealing is proper.
3       In addition, RIM respectfully reiterates its request that testimony or argument regarding
4  any term from Trial Exhibit 630 found by the Court to be properly redacted and sealed, or any
5  other financial or business term of the Patent Agreement, be held only in a closed courtroom and
6  that any transcript portions reflecting such testimony or argument be sealed.

8  Dated: July 30, 2012                          Respectfully submitted,

9                                              IRELL & MANELLA LLP

11                                              By:    /s/ *Jonathan Lange*
                                                   Jonathan Lange

13                                              Attorneys for Nonparties
                                            Research In Motion Corporation and
                                            Research In Motion Ltd.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2680927

- 4 -

NONPARTIES RESEARCH IN MOTION CORPORATION AND RESEARCH IN MOTION LTD.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL