QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendant.

CASE NO. 11-cv-01846-LHK

**SAMSUNG'S MOTION TO SEAL TRIAL EXHIBITS**

Pursuant to the Court's July 27, 2012 Case Management Order (Dkt. No. 1426), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") hereby bring this motion for an order to seal certain trial exhibits that contain highly-sensitive, non-public source code, business plans, and cost data. Since the parties' trial exhibits have not yet been admitted into evidence, Samsung will lodge the exhibits at issue with the Court for *in camera* review.

**Request for Relief**[1]

Samsung requests that the court seal from the public record Trial Exhibits 29, 31, 180, and 676 in their entirety and Trial Exhibits 25, 27, 28, 60, and 781 in part. Samsung also requests that the Court exclude from evidence and the public record any portion of Trial Exhibits 183, 184, and 185 not shown to the jury.

**Argument**

On July 25, 2012, Samsung and Apple, Inc. ("Apple") exchanged lists of proposed trial exhibits. Among the hundreds of exhibits are a small number containing highly sensitive source code and cost data. In anticipation of the introduction of these exhibits into evidence at trial, Samsung now requests (1) that the Court determine the confidential Samsung information is properly sealable; and (2) admit the exhibits, if at all, only as sealed in the form described herein.

Conforming to this Court's guidance provided at the hearing on July 27, 2012, Samsung does not seek to seal financial statements, public filing, earnings information, or any other publicly available financial information. Nor does Samsung seek to seal numerous types of non-public financial information, such as revenues, units sold, or average selling price. Instead, Samsung's

---

[1] On July 27th, Apple and Samsung filed a Joint Motion Regarding Sealing of Trial Exhibits. The Court has not yet ruled on this motion, and Samsung would prefer for the Court to grant the Joint Motion. However, in accordance with the Court's instruction to specify the trial exhibits at issue, Samsung is filing this Motion to Seal Trial Exhibits to preserve its arguments relating to the individual exhibits at issue.

Pursuant to the Court's July 17, 2012 Order Denying Administrative Motions to Seal with leave to re-file and the Court's instructions during the July 27, 2012 hearing, Samsung will also file a separate Renewed Administrative Motion to File Under Seal a limited set of documents at issue in the Court's July 17, 2012 Order.

request is limited to detailed cost information that is closely guarded, highly sensitive, and likely to cause Samsung competitive harm if disclosed. Similarly, Samsung request to seal source code is highly-specific and narrow; Samsung only seeks to seal printouts of Samsung's proprietary code. It does not seek to seal descriptions of the code, such as those contained in expert reports.

**I. Samsung's Request is Limited and Narrow**

Samsung seeks to seal only four of the exhibits in their entirety, and to redact portions of another eight exhibits. Eight of the twelve exhibits contain extremely sensitive confidential financial information of Samsung that is subject to stringent protections against disclosure, even within Samsung, and has never been disclosed to the public. (Declaration of GiHo Ro ("Ro Decl.") ¶¶ 12-16.) One of the exhibits contains confidential source code that is also subject to stringent internal protections and was never disclosed to the public. (Declaration of YoungJin Kwon ("Kwon Decl.") ¶ 3.) Three of the exhibits contain detailed business plans, including future business plans. (Ro Decl. ¶ 17.)

The twelve exhibits at issue present compelling reasons for sealing. Samsung recognizes that a "strong presumption of access to judicial records applies . . . because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1177 (9th Cir. 2006), citing *Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1294 (9th Cir. 1986). Nonetheless, "compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana.* 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 598 (1978)). Indeed, in a complex trial such as this one involving multinational corporations with legitimate business interests in the secrecy of certain types of information, "documents of exceptionally sensitive information" exist "that truly deserve protection." (July 17, 2012 Order re: Sealing Motions, Dkt. No. 1256 at 3.) The Court should allow this information "to be redacted or kept from the public." *Id*.

**A. Compelling Reasons Exist to Seal Samsung's Per Product Cost and Profit Information.**

The detailed cost and profit information at issue is highly confidential, never been disclosed to the public, and protected stringently within Samsung. (Ro Decl. ¶ 5.) If disclosed, the information would allow Samsung's competitors to undercut Samsung's pricing, gain leverage against Samsung in business and supply agreement negotiations, or engage in a variety of other behaviors that would damage Samsung's ability to compete. (Ro Decl. ¶¶ 7-10.) Far more detailed than "financial information" that's generally available to the public or Wall Street experts, the specific cost data, bills of materials, and product-by-product profits are closely guarded secrets in the mobile device industry. The amount it costs Samsung to make a product per unit and how much each product line has earned after expenses is far more sensitive and confidential than company-wide financials because it tells competitors what is the lowest price that Samsung could charge for a particular product and still make a profit. (Ro Decl. ¶ 7.) Armed with that information, a competitor can charge a lower price and undercut Samsung's sales. (*Id.*) The information Samsung seeks to seal provides all competitors with a playbook for how to out-price Samsung on at least 32 different product lines. Per product profits inform competitors which products are performing best and worst, allowing competitors to target such product lines specifically in its advertising campaigns and marketing strategies. (*Id.* ¶¶ 7-10.) Because of the competitive harm to Samsung from its disclosure, this information is not just exceptionally sensitive, it is among the most confidential and valuable information that Samsung possesses. (*Id.* ¶ 9.)

Courts have consistently recognized that a company's detailed financial information, such as costs of goods sold, and detailed revenue and profit information, present a strong danger of improper use by the company's competitors, and may be sealed even under the heightened "compelling reasons" standard. For example, the Southern District of California has held financial information such as customer lists, revenues per product, revenue reductions, merchandise costs, royalty costs, promotional costs, personnel costs, and costs of goods sold sealable when a company's business competitors could use the information to replicate the company's business

practices. *Bauer Bros. LLC v. Nike, Inc.*, No. 09cv500–WQH–BGS, 2012 WL 1899838, at *3-4 (S.D. Cal. May 24, 2012) (sealing deposition testimony and documents containing financial data relating to sales and marketing information, product development, profits, advertising and marketing, "the financial data sought to be sealed by Nike could be used for improper purposes for Nike's business competitors, as it includes . . . business sales and accounting data . . . and costs analysis").

Similarly, this district has found that "long-term financial projections, discussions of business strategy, and competitive analyses" provide compelling reasons for sealing. *Kreiger v .Atheros Commc'ns, Inc.*, No. 11–CV–00640–LHK, 2011 WL 2550831, at *1 (N.D. Cal. Jun. 25, 2011) (sealing presentation containing highly sensitive and confidential financial information). Finally, production information and "precise revenue information results" and "exact sales and production numbers" which could be used by competitors to calibrate their pricing and distribution methods to undercut defendant also provide compelling reasons for sealing. *Bean v. John Wiley & Sons, Inc.*, No. CV 11–08028–PCT–FJM, 2012 WL 1078662, at *6-7 (D. Ariz. Mar. 30, 2012) (sealing charts summarizing defendant's sales and revenue figures broken out by product). The information at issue here would be subject to the same misuse in the hands of competitors.

Trial Exhibits 25, 27, 28, 29, 60, 180, 676, and 781 contain detailed financial information for each of the Samsung entities, including sales figures, manufacturing costs, operating expenses, operating profit, and gross margins. This information has never been disclosed to the public and is kept in the strictest confidence within Samsung. (Ro Decl. ¶¶ 9-16.). *See Bean*, 2012 WL 1078662, at *6-7 (finding additional justification to seal "information . . . kept confidential not only from the public, but also from [defendant's] own employees"). Samsung takes extraordinary steps to maintain the secrecy of its confidential information.[2] Moreover, the format of Samsung's production of highly sensitive information in this case was designed to maintain

---

[2] Samsung instructs its employees to keep hard copies of business documents in secure locations, hires private security forces to monitor its facilities, asks each employee to walk through a metal detector when exiting its offices, and uses special paper that triggers metal detectors if carried outside Samsung offices. (Dkt. 987-47, Decl. of Han-Yeol Ryu at ¶¶ 12-14.).

confidentiality. Samsung produced documents containing highly sensitive financial data in this litigation only to Apple's outside counsel and experts who had signed the Protective Order. (Ro Decl. ¶ 6.) Samsung went to great lengths to protect the confidentiality of disclosed data; Samsung distributed a limited number of numbered compact discs that contained soft copies of the data, retrieved the discs after a certain amount of time, and only permitted the inspection of the most confidential data in a secure location to prevent the copying or dissemination of Samsung's data. (*Id.*)

As explained more fully in the attached Declaration of GiHo Ro, disclosure of the confidential portions of these trial exhibits will cause Samsung competitive harm.

**B. <u>Compelling Reasons Exist to Seal Samsung's Highly Confidential Source Code.</u>**

Nonpublic, proprietary source code is properly sealed under the "compelling reasons" standard because such "information represents trade secrets sufficiently sensitive to outweigh the public's interest in accessibility of the evidence." *Network Appliance v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 841274, *1, *4 (N.D.Cal. March 10, 2010); *see also Wacom Co., Ltd. v. Hanvon Corp.*, No. C06-5701RJB, 2007 WL 3026889, *3 (W.D.Wash. Oct. 16, 2007) (sealing confidential, nonpublic, proprietary source code under the compelling reasons standard); *Omax Corp. v. Flow Intern. Corp.*, No. C04-2334RSL, 2007 WL 4108604, *1-2 (W.D.Wash. Nov. 13, 2007) (sealing or redacting various instances of source code upon a "compelling showing that that the public's right of access is outweighed by the interests of the public and the parties in protecting files, records, or documents from public view.").

Trial Exhibit 31 contains highly confidential, nonpublic, proprietary Samsung source code. Samsung maintains a high degree of internal confidentiality with regard to its source code. (Kwon Decl. ¶ 3.) Samsung source code, including the code contained in Trial Exhibit 31, is confidential and proprietary to Samsung. (*Id.*) Public release of this source code would allow Samsung's competitors to replicate the code for their own ends, thereby unfairly competing with Samsung and taking advantage of the extensive research and development efforts Samsung employed in developing its source code. (*Id.*) Compelling reasons therefore exist to seal Trial Exhibit 31.

**C. Compelling Reasons Exist to Seal Samsung's Business Plans.**

Trial Exhibits 183, 184, and 185, which consist of detailed business plans, including future plans, should be sealed. (*See* July 27, 2012 Hearing Tr. at 8-10 (noting that product schematics, production capacities, and market survey results are sealable)). Competitors with an access to Samsung's playbook will be able to out-maneuver Samsung, beat it to the market, and negate any first mover advantage Samsung may have as a result of its research and development expenditures. (Ro Decl. ¶ 17.) However, after carefully evaluating the documents at issue, Samsung has concluded that disclosing certain pages to the jury and making those pages public will not necessarily harm Samsung's competitive standing in the same way that the disclosure of the entireties of the documents would. In the interest of public access, Samsung does not move to seal those pages shown to the jury and entered into evidence. However, Samsung requests that the Court exclude from evidence and the public record those pages that are not shown to the jury.

**Conclusion**

Because compelling reasons in favor of sealing exist, Samsung respectfully requests the Court seal Trial Exhibits 29, 31, 180, and 676 in their entirety and portions of Trial Exhibits 25, 27, 28, 60, and 781. Samsung also requests that the Court exclude from evidence and the public record any pages of Trial Exhibits 183, 184, and 185 that are not shown to the jury. Samsung will lodge the exhibits at issue with the Court for *in camera* review.

DATED: July 30, 2012

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *  /s/ Victoria F. Maroulis*

Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC