HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>  Defendants. | Case No. 11-cv-01846-LHK<br><br>**DECLARATION OF GREGORY JOSWIAK IN SUPPORT OF APPLE'S MOTION TO SEAL TRIAL EXHIBITS** |

I, Gregory Joswiak, hereby declare as follows:

1. I am a Vice President in Apple's Product Marketing department. I submit this declaration in support of Apple's motions regarding sealing, filed contemporaneously herewith. I have personal knowledge of the matters set forth below. If called as a witness I could and would competently testify as follows.

2. I understand Apple seeks to seal highly sensitive documents that disclose Apple's market research and strategy. If disclosed to the public, this information would expose Apple to serious competitive harm.

3. I understand that Samsung has selected as potential trial exhibits in this action eight of the quarterly iPhone buyer survey reports that compile and analyze results obtained from the monthly surveys of iPhone buyers that Apple conducts. The surveys reveal, country-by-country, what is driving our customers to buy Apple's iPhone products versus other products such as the Android products that Samsung sells, what features they most use, our customers' demographics and their level of satisfaction with different aspects of iPhone.

4. I understand that Samsung has also selected six iPad tracking studies as potential trial exhibits. These are very similar in nature to the iPhone buyer surveys. On a quarterly basis, these studies report on and analyze results obtained from surveys of iPad buyers that Apple conducts every month. These reports are also international in scope, and report on, and compare, for different countries, what is driving our customers' decisions to purchase iPad, provide detailed information on the features and attributes they use, customer demographics, consideration of other brands and level of satisfaction with different attributes of the product.

5. Apple seeks to seal all surveys and tracking studies of iPhone and iPad buyers. No competitor has access to our customer base to conduct the type of in-depth analysis contained in our buyer surveys and tracking studies. Getting access to this analysis would be of enormous benefit to our competitors. Today, a competitor who is trying to take away Apple market share can only speculate as to the importance that Apple's customers place, for instance, on FaceTime video calling, battery life, or Siri voice capability. They have to guess as to what demographics – age, gender, occupation – are most satisfied with Apple's products. Certainly, they do not know

how the preferences of customers in, for example, Japan differ from those in Australia, Korea, France or the United States.  Perhaps most importantly, they are unable to observe trends over time.  All of that information is set out in exacting detail in the proposed exhibits.  No other entity could replicate this research because no other entity has access to the customer base that Apple has.  And no other entity could replicate the trend data by conducting its own survey today.

6. Also important are the *conclusions* Apple has drawn from the data.  Knowing about Apple's customer base preferences is extremely useful to a competitor, but knowing what Apple thinks about its customer base preferences is even more valuable.  If Apple had access to this kind of in-depth analysis of our competitors, we could infer what product features our competitors are likely to offer next, when, and in what markets.  Our probability of success in predicting our competitors' next move next would improve dramatically.  Having that level of insight and confidence in our competitors' next moves would allow us to target our efforts to prepare products and marketing counterstrategies in the short term, and target our long-term product plans to stay far ahead of the competition.  Given unfettered access to Apple's recent internal market research, I have no doubt that Apple's competitors would use it as described above, resulting in serious competitive harm to Apple.

7. Because of the extreme sensitivity of this product research information, distribution of the iPhone buyer surveys and iPad tracking studies is very tightly controlled within Apple.  The documents are stamped as confidential on a "need to know" basis.  Consistent with this designation, *no* internally conducted surveys of Apple customers are allowed to circulate outside a small, select group of Apple executives.  No iPhone-related surveys or iPad-related surveys are allowed to be distributed to *anyone* outside this group without my personal express permission, which I regularly refuse.  When I do approve further distribution, it is almost always on a survey question-by-survey question basis, and even then distribution is limited to individuals who have a demonstrated need to know.

8. Trial Exhibit DX614 is the iPhone buyer survey report for the one month period of August 2010.  Trial Exhibit DX772 is the iPhone buyer survey report for the second quarter of Apple's 2010 fiscal year ("FY '10 Q2").  Trial Exhibit DX773 is the iPhone buyer survey report

1  for FY '10 Q3.  Trial Exhibit DX774 is the iPhone buyer survey report for FY '10 Q4.  DX775 is
2  the iPhone buyer survey report for FY '11 Q1.  Trial Exhibit DX534 is the iPhone buyer survey
3  report for FY '11 Q2.  DX776 is the iPhone buyer survey report for FY '11 Q3.  Trial Exhibit
4  DX767 is the iPhone buyer survey report for FY '11 Q4.  Each of these documents follows a
5  substantially similar format, reporting on the same type of information for iPhone buyers from
6  surveys conducted during the period of time that it covers.  During this time there was a slight
7  change to some of the countries on whom we report internationally, but otherwise the reports are
8  quite similar.

9       9.     Each of the eight iPhone buyer survey reports listed in paragraph 8 above are
10 treated as highly confidential within Apple and are distributed only to a very limited group and on
11 a need to know basis, as described in paragraph 7 above.  Public disclosure of these reports would
12 cause significant competitive harm to Apple for the reasons described above.  It would allow
13 competitors to target the features that most attract our customers, to learn precisely how different
14 demographic groups of customers and customers in geographic regions view our products and
15 how they make use of them.  The survey reports contain the conclusions Apple has drawn from
16 the data.  In addition, because these reports span a 2 year period beginning in the second quarter
17 of 2010, they show the trend as to how this data has changed over time.  We consider each of
18 these eight iPhone buyer survey reports to be current and to contain information of which we
19 make active use.  The earliest survey report, for the month of August 2010, covers iPhone 4, a
20 phone which Apple still actively markets and sells today.  No competitor could replicate this
21 information without obtaining the information internally from Apple.

22       10.    DX768 is the iPad tracking study for the one month period of July 2010, created in
23 September 2010. DX769 is the iPad tracking study for FY '10 Q4.  DX770 is the iPad tracking
24 study for FY '11 Q1.  DX617 is the iPad tracking study for FY '11 Q2.  DX771 is the iPad
25 tracking study for FY '11 Q3.  DX766 is the iPad tracking study for FY '11 Q4.  As is the case
26 with the iPhone buyer surveys discussed in this declaration, each of these iPad tracking studies
27 follows a substantially similar format, and reports and analyses data in response to surveys
28 containing the same types of questions for the period of time that they address.

1        11.     Apple strictly maintains the confidentiality of each of these iPad tracking studies in accordance with the procedures described in paragraph 7 above. Public disclosure of the studies would seriously harm Apple. As with the iPhone buyer studies, it would give our competitors full access from surveys conducted of our customer database to the reasons why our customers purchase iPads, how they make use of them and their level of satisfaction broken down by demographics and country, as well as to the conclusions that Apple itself has drawn from this data. Together, the five surveys show how this data has changed over the past two years. We still consider all of this information to be current and make use of it in our marketing and product decisions. When iPad was first released in April 2010, there was no other product of its kind. Obtaining information from July 2010 would be incredibly valuable to companies who are trying to put forward competing products. It shows in great detail how customer preferences have evolved over the time that iPad has been sold. Even if competitors could reliably survey Apple's current customers (they cannot) to determine their preferences today, they certainly cannot reliably reconstruct what Apple customer's preferences were in the past. Accordingly only Apple has access to the extremely valuable time series of information that shows how customer preferences have evolved. As the first company to successfully launch a tablet computer with broad consumer appeal, Apple is far ahead of its competitors in understanding this important new category of mobile electronic devices. Both the underlying data sets and the insights Apple has drawn from them are carefully guarded Apple trade secrets. Disclosure to Apple's competitors would give them inside knowledge of the market and what Apple's customers are thinking and valuing.

        12.     I wish to add that Apple is not seeking to seal all of its marketing research documents in this action. In particular, Apple has made the difficult decision not to seek sealing of certain marketing research reports that report survey results on iPhone or iPad that were not limited to Apple's customer base. Some of these reports were created by third party ComTech. Others were created by Apple's internal marketing research department. Apple has expended significant effort and expense gathering the information in these different reports and surveys, and internally treats these documents on a strictly confidential basis as well. However, I

DECLARATION OF GREGORY JOSWIAK ISO MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 11-CV-01846-LHK
sf-3176932

4

1  understand that the Court wants the parties to restrict their requests to seal to only their most
2  sensitive confidential information.  We view the iPhone buyer surveys and iPad tracking studies,
3  and similar surveys taken of our Apple customer database, which cannot be replicated by
4  competitors, as the crown jewels of the marketing research group.

5         13.     There is one additional document containing Apple's marketing research that
6  Apple is seeking to seal.  Exhibit DX701 is a summary that I understand was created by Samsung.
7  It reports data taken from the iPhone quarterly buyer surveys and the iPad tracking surveys
8  discussed above.  Pages 1 through 3 explicitly state that they report actual data taken from the
9  iPhone quarterly buyer surveys covering Q2 2010 through Q4 2011 relating to the importance of
10 features to the consumers' iPhone purchase, and other brands that were considered.  Pages 7
11 through 9 consist of actual data taken from iPhone quarterly buyer surveys and iPad tracking
12 studies for the period June 2010 through Q2 2011 in the case of page 7 and Q4 2011 for pages 8
13 and 9.  These pages report on the importance of features to consumers' decisions to purchase an
14 iPhone or iPad.  As I described above, this summary reports data that can only be obtained from
15 Apple's customer base, which no competitor can replicate.  As reported in this format, it contains
16 precisely the type of trend data that Apple believes is valuable in evaluating purchase decisions.
17 This information would be of great value to any competitor who is trying to take away Apple
18 market share for iPhone or iPad because it shows the importance that Apple's customers place on
19 features or attributes such as screen size, weight, battery life and camera capability.  Consistent
20 with the approach that Apple has taken to sealing other marketing research documents, Apple is
21 not requesting to seal pages 4 through 6 of exhibit 701, which report information obtained from a
22 third party report commissioned by Apple, even though I believe that such data would still be of
23 value to competitors and Apple has taken steps to guard the confidentiality of this data as well.

26      I declare under penalty of perjury that the foregoing is true and correct.  Executed this
27 30th day of July, 2012 at Cupertino, California.

DECLARATION OF GREGORY JOSWIAK ISO MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 11-CV-01846-LHK
sf-3176932

5

*/s/ Gregory Joswiak*
Gregory Joswiak

DECLARATION OF GREGORY JOSWIAK ISO MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 11-CV-01846-LHK
sf-3176932

6

**ATTESTATION OF E-FILED SIGNATURE**

I, Jason R. Bartlett, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Greg Joswiak has concurred in this filing.

Dated: July 30, 2012                                    */s/ Jason R. Bartlett*
                                                         Jason R. Bartlett

DECLARATION OF GREGORY JOSWIAK ISO MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 11-CV-01846-LHK
sf-3176932                                                                                           7