1  John P. Bovich (SBN 150688)
   Email: jbovich@reedsmith.com
2  James A. Daire (SBN 239637)
   Email: jdaire@reedsmith.com
3  REED SMITH LLP
   101 Second Street, Suite 1800
4  San Francisco, CA  94105-3659
   Telephone:    +1 415 543 8700
5  Facsimile:    +1 415 391 8269

6  Attorneys for NON-PARTY
   Siemens AG
7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         San Jose Division

| 11 | APPLE INC., a California corporation, | No.: 11-cv-01846-LHK (PSG) |
|---|---|---|
| 12 | Plaintiff, | **NON-PARTY SIEMENS AG'S ADMINISTRATIVE MOTION TO SEAL** |
| 13 | vs. | Honorable Lucy H. Koh |
| 14-17 | SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 18 | Defendants. | |

Pursuant to Civil L.R. 7-11 and 79-5(c), and the Court's Order of July 23, 2012 (Docket No. 1288), non-party Siemens AG ("Siemens") respectfully submits this administrative motion for an order to seal portions of a single exhibit – Trial Exhibit 77 – that contain highly confidential and extremely sensitive business information of Siemens' relating to the financial terms of a license agreement with Samsung Electronics Co., LTD.

### Request for Relief

Siemens seeks an order sealing the royalty rates, payment terms and consideration, technological scope, and duration of its Patent License Agreement with Samsung ("the Agreement")

set forth in Trial Exhibit 77.  As the Court explained during its Friday, July 27, 2012 hearing, confidential terms in a patent license agreement are inherently sealable under *Electronic Arts, Inc. v. U.S. District Court for the Northern District of California*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) ("*E.A.*").  [Exh. C (Transcript Excerpt) p. 9:8-17.]  Siemens' narrowly tailored request to seal is grounded in both the Court's reasoning during the hearing and its own compelling reasons to keep the confidential terms of the Agreement from unfettered public view.

### Background Facts

On July 21, 2012, trial counsel for Samsung informed Siemens that Samsung intended to use the Agreement and a summary of its key terms as Trial Exhibit 77.  This was the first time that Siemens had any notice that Samsung intended to use Siemens' highly confidential information at trial.  Trial counsel for Samsung also told Siemens that "Samsung has not identified any compelling reasons" to request sealing the Agreement and summary.  [Bovich Decl. ¶2, Exh. A.]  Over the past week, including on Saturday and Sunday, Siemens has attempted to reach an agreement with Samsung's trial counsel to present a redacted version of the Agreement and the summary to the jury and the Court.  On Saturday, Siemens asked Samsung to agree to submit redacted versions of the Agreement and the summary for consideration by the Court and/or jury, to avoid burdening the Court with this issue during trial.  This would have protected Siemens' interest by preventing the disclosure of Siemens' highly sensitive licensing terms.  It also would have mooted the need for a separate motion to seal by Siemens.  Trial counsel for Samsung, though, refused this arrangement because Samsung did want to take on the burden of treating Siemens differently from other intervening non-parties or of resubmitting Trial Exhibit 77 with the appropriate redactions.  [Bovich Decl. ¶¶ 3-5] Without adequate assurances that party Samsung would act to protect the highly confidential license terms, non-party Siemens was forced to undertake the cost and burden of filing a separate administrative motion to seal at its own expense and on very short notice.

### There Are Compelling Reasons to Grant Siemens' Proposed Order to Seal

Siemens has submitted redacted versions of Trial Exhibit 77, consisting of the Agreement and Samsung's summary of the Agreement with this Motion to Seal (Exhibits A and B, respectively).  The redacted information relates to the royalty rates, other consideration terms,

technological scope, and duration of the Agreement.  This information is extremely sensitive to non-party Siemens.  Siemens owns one of the largest and most important patent portfolios in the world.  To date, Siemens holds approximately 58,000 patents worldwide.  The protection, utilization, and expansion of Siemens' intellectual property rights are vital to Siemens' success.  Siemens is in constant negotiations with multiple companies regarding patent licenses, including the technology at issue in the Agreement.  Siemens' ability to negotiate these licenses on competitive terms would be severely hampered if the confidential terms of its existing license agreements were made public.  This is especially true where, as in the Agreement here, the confidential terms relate a license involving unexpired patents or patents for which there remains an enforceable term, the monetary consideration paid for the license rights granted, and/or the technological scope of the license.  [Nuzzi Decl. ¶¶6-7.]  Siemens would thus be severely harmed should the information contained in Trial Exhibit 77 become public without redactions.  [*Id.* ¶ 8.]

The information that Siemens seeks to have sealed more than meets the "compelling reasons" standard of the Ninth Circuit.  "[P]ricing terms, royalty rates and guaranteed minimum payment terms" found in licensing agreements "plainly fall[] within the definition of 'trade secrets.'"  *E.A., supra*, 298 F. App'x at 569; *see also Powertech Tec., Inc., v. Tessera, Inc.*, No. C 11-6121 CW, 2012 U.S. Dist. LEXIS 75831, at *5 (N.D. Cal. May 31, 2012) (compelling reasons to seal license agreement).  Moreover, there is very little public interest in knowing the specific licenses and agreements that Samsung entered into, and disclosing the information would risk substantial competitive harm to non-party Siemens.  *Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 U.S. Dist. LEXIS 21721, at *7 (N.D. Cal. Mar. 10, 2010) (material that would subject third parties to competitive harm sealable).

Indeed, this Court explained that this type of information meets the compelling reasons standard for sealing in this case as recently as Friday, July 27, 2012, when it stated:

> THE COURT:  BASED ON THE NINTH CIRCUIT'S DECISION IN
> ELECTRONIC ARTS, PRICING, ROYALTY RATES, MINIMUM PAYMENT
> TERMS OF LICENSING AGREEMENTS WILL BE SEALABLE. AND I THINK
> TO DO OTHERWISE GOT THE DISTRICT JUDGE REVERSED, SO I'M GOING

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

TO FOLLOW THE NINTH CIRCUIT PRECEDENT ON THAT. NOW, THE NINTH CIRCUIT DECISION DID NOT ADDRESS THE DURATION OF THE LICENSE, BUT I WILL ALLOW THAT ALSO TO BE SEALED. [Exh. C (Transcript Excerpt) p. 9:8-17.]

During the same hearing, the Court also explained that it would consider who the request was coming from when considering highly confidential information of non-parties who did not voluntarily initiate this litigation:

THE COURT: SO AS FAR AS THE THIRD PARTIES ARE CONCERNED, YOUR REQUEST TO PROTECT THOSE, YOU KNOW, ROYALTY RATE AND THE NO PAYMENT TERM, COMPENSATION TERM, HOWEVER IT'S STRUCTURED AND THE DURATION PRICING, THAT'S FINE. [Exh. C (Transcript Excerpt) p.27:15-19.]

The relief requested in this motion is narrowly tailored to protect only non-party Siemens' extremely sensitive, competitive business information. Granting this motion will not impede the public's ability to understand the substantive questions in this case. As a result, Siemens respectfully requests that the Court grant this motion, accept under seal unredacted versions of the Agreement and summary in Trial Exhibit 77, and allow only the redacted versions of the same to be used in a matter that would render them to become public information.

DATED this the 30th day of July, 2012.

*/s/ John P. Bovich*
John P. Bovich
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
*Counsel for NON-PARTY*
*Siemens AG*