HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 11-cv-01846-LHK <br><br> **DECLARATION OF GREGORY JOSWIAK IN SUPPORT OF APPLE'S MOTION TO SEAL PREVIOUSLY FILED MOTIONS AND EXHIBITS THERETO** |

DECLARATION OF GREGORY JOSWIAK ISO MOT. TO SEAL PREV. FILED MOTIONS & EXS. THERETO
CASE NO. 11-CV-01846-LHK

I, Gregory Joswiak, hereby declare as follows:

1. I am a Vice President in Apple's Product Marketing department. I submit this declaration in support of Apple's motions regarding sealing, filed contemporaneously herewith. I have personal knowledge of the matters set forth below. If called as a witness I could and would competently testify as follows.

2. I understand Apple seeks to seal two highly sensitive documents that disclose Apple's market research and strategy. If disclosed to the public, this information would expose Apple to serious competitive harm.

3. The first exhibit, APLNDC-Y0000027256-27303, contains a lengthy excerpt from a quarterly iPhone buyer survey report for the fourth quarter of Apple's 2010 fiscal year. iPhone buyer survey reports compile and analyze results obtained from the monthly surveys of iPhone buyers that Apple conducts. The excerpt included from this survey reveals, country-by-country, what is driving our customers to buy Apple's iPhone products versus other products such as the Android products that Samsung sells. This report covers iPhone 4, a phone which Apple still actively markets and sells today. We consider the report to be current and it contains information of which we make active use.

4. The second exhibit, APLNDC-Y0000023361-23393 is a lengthy excerpt from an August 2010 iPad buyer survey. The iPad buyer survey is very similar in nature to the iPhone buyer surveys described above. It reports on and analyzes results obtained from surveys of iPad buyers that Apple conducted in 2010. The filed excerpt discusses what is driving our customers' decisions to purchase iPad, and provides detailed information on the features and attributes they use. We still consider this information to be current and make use of it in our marketing and product decisions. When iPad was first released in April 2010, there was no other product of its kind. Obtaining information from August 2010 would be very valuable to companies who are trying to put forward competing products

5. No competitor has access to our customer base to conduct the type of in-depth analysis contained in our quarterly iPhone buyer surveys and the iPad buyer survey. Getting access to this analysis would be of enormous benefit to our competitors. Today, a competitor

1  who is trying to take away Apple market share can only speculate as to the importance that
2  Apple's customers place, for instance, on FaceTime video calling, battery life, or Siri voice
3  capability.  They have to guess as to what demographics – age, gender, occupation – are most
4  satisfied with Apple's products.  Certainly, they do not know how the preferences of customers
5  in, for example, Japan differ from those in Australia, Korea, France or the United States.  All of
6  that information is set out in exacting detail in the proposed exhibits.  No other entity could
7  replicate this research because no other entity has access to the customer base that Apple has.  .

8         6.     Also important are the *conclusions* Apple has drawn from the data.  Knowing
9  about Apple's customer base preferences is extremely useful to a competitor, but knowing about
10 what Apple thinks about its customer base preferences is even more valuable.  If Apple had
11 access to this kind of in-depth analysis of our competitors, we could infer what product features
12 our competitors are likely to offer next, when, and in what markets.  Our probability of success in
13 predicting our competitors' next move next would improve dramatically.  Having that level of
14 insight and confidence in our competitors' next moves would allow us to target our efforts to
15 prepare products and marketing counterstrategies in the short term, and target our long-term
16 product plans to stay far ahead of the competition.  Given unfettered access to Apple's recent
17 internal market research, I have no doubt that Apple's competitors would use it as described
18 above, resulting in serious competitive harm to Apple.

19        7.     Because of the extreme sensitivity of this product research information,
20 distribution of the iPhone buyer surveys and iPad buyer surveys and tracking studies is very
21 tightly controlled within Apple.  The documents are stamped as confidential on a "need to know"
22 basis. Consistent with this designation, *no* internally conducted surveys of Apple customers are
23 allowed to circulate outside a small, select group of Apple executives.  No iPhone-related surveys
24 or iPad-related surveys are allowed to be distributed to *anyone* outside this group without my
25 personal express permission, which I regularly refuse.  When I do approve further distribution, it
26 is almost always on a survey question-by-survey question basis, and even then distribution is
27 limited to individuals who have a demonstrated need to know.

28

8. I wish to add that Apple is not seeking to seal all of its marketing research documents in this action. In particular, Apple has made the difficult decision not to seek sealing of certain marketing research reports that report survey results on iPhone or iPad that were not limited to Apple's customer base. Some of these reports were created by third party ComTech. Others were created by Apple's internal marketing research department. Apple has expended significant effort and expense gathering the information in these different reports and surveys, and internally treats these documents on a strictly confidential basis as well. However, I understand that the Court wants the parties to restrict their requests to seal to only their most sensitive confidential information. We view the iPhone buyer surveys and iPad tracking studies, and similar surveys taken of our Apple customer database, which cannot be replicated by competitors, as the crown jewels of the marketing research group.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of July, 2012 at Cupertino, California.

*/s/ Gregory Joswiak*
Gregory Joswiak

1 **ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Gregory Joswiak has concurred in this filing.

Dated: July 30, 2012                                     /s/  *Michael A. Jacobs*
                                                                      Michael A. Jacobs