| | |
|---|---|
| HAROLD J. MCELHINNY (CA SBN 66781) | WILLIAM F. LEE (*pro hac vice*) |
| hmcelhinny@mofo.com | william.lee@wilmerhale.com |
| MICHAEL A. JACOBS (CA SBN 111664) | WILMER CUTLER PICKERING |
| mjacobs@mofo.com |  HALE AND DORR LLP |
| RICHARD S.J. HUNG (CA SBN 197425) | 60 State Street |
| rhung@mofo.com | Boston, Massachusetts 02109 |
| MORRISON & FOERSTER LLP | Telephone: (617) 526-6000 |
| 425 Market Street | Facsimile: (617) 526-5000 |
| San Francisco, California  94105-2482 | |
| Telephone:  (415) 268-7000 | MARK D. SELWYN (SBN 244180) |
| Facsimile:  (415) 268-7522 | mark.selwyn@wilmerhale.com |
| | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| | 950 Page Mill Road |
| | Palo Alto, California 94304 |
| | Telephone: (650) 858-6000 |
| | Facsimile: (650) 858-6100 |

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation, | Civil Action No. 11-CV-01846-LHK |
| Plaintiff, | |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **APPLE INC.'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION** |
| Defendants. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| APPLE INC., a California corporation, | |
| Counterclaim-Defendant. | |

Plaintiff Apple Inc. ("Apple") hereby submits this Response to the Declaration of John B. Quinn and Recommendation Regarding Appropriate Sanction.

Pursuant to the Court's inherent authority and California Professional Rule of Conduct 5-120, Apple seeks a finding that Samsung and its counsel have engaged in bad faith litigation misconduct by attempting to prejudice the jury by issuing a statement that attaches and discusses excluded evidence, and suggests that it be provided to the jury. Apple requests that the Court issue sanctions granting judgment that Apple's asserted phone design patent claims are valid and infringed by Samsung.

## I.   INTRODUCTION

Samsung apparently believes that it is above the law, and that it—not this Court—should decide what evidence the jury should see. Yesterday, the Court once again rejected Samsung's attempt to introduce evidence related to a defense that was not timely disclosed to Apple. Undaunted, and apparently unwilling to accept the Court's ruling, Samsung chose self-help to get its excluded evidence before the jury: it issued a "statement" attaching a set of excluded demonstrative slides and proclaiming that "[f]undamental fairness" required the jury to consider them. On its own initiative, Samsung emailed reporters claiming that "Samsung was not allowed to tell the jury the full story," that "excluded evidence would have established" Samsung's case, and that "[f]undamental fairness requires that the jury decide the case based on all the evidence," including the evidence that the Court excluded. (Ex. A ("Samsung, After 'Begging' to Get Sony Into Apple Patent Trial, Flouts Judge And Releases 'Excluded Evidence' Anyway").)[1] This press statement wrongly calls into question the very integrity of the Court and the judicial process, and undermines Apple's fundamental right to a fair trial by impartial jurors uninfluenced by extrajudicial statements. The Court should not condone this behavior; the Court can, and should, severely sanction it.

Remarkably, it was counsel for Samsung—John Quinn—who authorized Samsung's statement, shortly after an outburst in court in which he demanded that the Court explain itself to

---

[1] All exhibits cited herein are attached to the Declaration of Peter J. Kolovos, filed herewith.

- 1 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

him and asked, rhetorically, "What's the point . . . of having the trial? What's the point?" (Tr. July 31, 2012, at 291-92.) California Professional Rule of Conduct 5-120—as well as common sense—precluded that release. In his declaration in response to this Court's order, Mr. Quinn seeks to minimize the significance of Samsung's statement, suggesting that it was a limited response to certain "requests from members of the media." (Dkt. 1533 ("Quinn Decl.") at ¶ 2.) Even if the press had asked for these materials, he should not have provided them. But that is not what the press is reporting:

> At 2:48 p.m., after openings were done and a suave Apple industrial designer was testifying, a Samsung press statement hit our inbox (along with those of other reporters) with a link to the excluded slides.
>
> . . .
>
> Quinn said Samsung was merely responding to press inquiries about the issue (though this reporter didn't ask about it) . . .

(Ex. B ("In Apple-Samsung trial, it's John Quinn v. Judge Koh").)

Regrettably, this is merely the latest and most extraordinary example of Samsung's willful disregard for the rules of practice and the orders of this Court. Samsung already has been sanctioned *four times* in this case for discovery abuses. Most recently, Samsung was sanctioned for destroying evidence. Litigation misconduct is apparently a part of Samsung's litigation strategy—and limited sanctions have not deterred Samsung from such misconduct. Now, with so much at stake, Samsung has taken the calculated risk that any sanctions arising from its attempt to influence the jury with its excluded arguments are a price it is willing to pay. Indeed, Samsung may have determined that its gambit could lead to a mistrial—which it apparently would welcome.

But Apple will not request a mistrial. Apple—like the Court—has invested enormous time and resources in expeditiously preparing the case for trial, a jury has been seated, and the evidence has begun. That case should proceed on the current schedule, to bring closure to Apple's claims and Samsung's counterclaims. A mistrial would play directly into Samsung's strategy of delay, and only reward Samsung's misconduct.

- 2 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1      The proper remedy for Samsung's misconduct is judgment that Apple's asserted phone
2  design patents are valid and infringed.  Through its extraordinary actions yesterday, Samsung
3  sought to sway the jury on the design patent issues, and the proper remedy is to enter judgment
4  against Samsung on those same patents.  It would be, to be sure, a significant sanction.  But
5  serious misconduct can only be cured through a serious sanction—and here, Samsung's
6  continuing and escalating misconduct merits a severe penalty that will establish that Samsung is
7  not above the law.

## II.     FACTUAL BACKGROUND

9      On the morning of July 31, 2012, Samsung's counsel John Quinn once again sought
10 reconsideration of this Court's ruling that Samsung was precluded from raising a defense that
11 was not timely discussed to Apple.  (Tr. July 31, 2012 at 290-93.)  Mr. Quinn's argument
12 became increasingly heated, and, at one point, he interrupted the Court asking, "What's the point
13 . . . of having the trial?  What's the point?"  (*Id.* at 291-92.)  Despite the Court's repeated
14 requests that Mr. Quinn end his argument, Mr. Quinn did not relent until the Court threatened to
15 sanction him.  (*Id.* at 292-93.)

16     Later that day, Samsung issued a statement publishing the excluded evidence and inviting
17 the jury to consider the excluded evidence out of court.  According to multiple reports, the full
18 text of Samsung's statement is as follows:

> The Judge's exclusion of evidence on independent creation meant
> that even though Apple was allowed to inaccurately argue to the
> jury that the F700 was an iPhone copy, Samsung was not allowed
> to tell the jury the full story and show the pre-iPhone design for
> that and other phones that were in development at Samsung in
> 2006, before the iPhone.  The excluded evidence would have
> established beyond doubt that Samsung did not copy the iPhone
> design.  Fundamental fairness requires that the jury decide the case
> based on all the evidence.

(*See, e.g.*, Ex. A; Ex. C ("Samsung Goes Public With Excluded Evidence to Undercut Apple's Design Claims").)

- 3 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1    After Apple's counsel brought Samsung's press statement to the Court's attention, the
2    Court ordered that Mr. Quinn submit a declaration regarding his role in the statement and to
3    identify "who released it, who authorized it, and who drafted it."  (Tr. at 555.)  Mr. Quinn's
4    declaration states that he "approved and authorized the release of a brief statement" and the
5    demonstrative exhibits that had been excluded by the Court.  (Quinn Decl. at ¶ 2.)  His
6    declaration does not identify who released or drafted the press statement.  Although Mr. Quinn
7    stated that he was simply responding to requests for explanation from the media, at least one
8    reporter who received Samsung's press statement wrote that she had never made any such
9    request.  *See* page 2 *supra*.  Indeed, while the press inquiry that Mr. Quinn attached to his
10   declaration sought "what, exactly, you get to use" (Dkt. 1533-1 at 2), Samsung released exactly
11   the opposite:  the excluded material.

12   Mr. Quinn's declaration also includes uninvited legal argument, including the claim that
13   he was entitled to publicize Samsung's excluded defenses (1) because the excluded information
14   was part of the public pretrial record and thus "part of trial," (2) because an extrajudicial
15   statement was necessary, in light of the Court's exclusion order, to protect his client from the
16   prejudicial effect of the media's reporting on Apple's claims, and (3) because under the First
17   Amendment "truth is an absolute defense."  Mr. Quinn did not provide the Court with a copy of
18   the text of Samsung's press statement.

19   **III.    LEGAL STANDARDS**

20   "Courts of justice are universally acknowledged to be vested, by their very creation, with
21   power to impose silence, respect, and decorum, in their presence, and submission to their lawful
22   mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  "This power reaches both
23   conduct before the court and that beyond the court's confines, for '[t]he underlying concern that
24   gave rise to the contempt power was not . . . merely the disruption of court proceedings.  Rather,
25   it was disobedience to the orders of the Judiciary, regardless of whether such disobedience
26   interfered with the conduct of trial.'" *Id.* at 44 (quoting *Young v. United Sates ex. Rel. Vuitton et*

27
28

- 4 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1  *Fils S.A.*, 481 U.S. 787 (1987)). A court has broad discretion to fashion appropriate sanctions for
2  litigation misconduct, including the dismissal of claims and defenses. *Id.* at 44-45.
3        Under California Rule of Professional Conduct 5-120, a lawyer "who is participating or
4  has participated in the investigation or litigation of a matter shall not make an extrajudicial
5  statement that a reasonable person would expect to be disseminated by means of public
6  communication if the member knows or reasonably should know that it will have a substantial
7  likelihood of materially prejudicing an adjudicative proceeding in the matter."

**IV. ARGUMENT**

    **A. <u>SAMSUNG'S BAD FAITH ATTEMPT TO INFLUENCE THE JURY WARRANTS SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY.</u>**

The Court has the authority to sanction Samsung for "bad faith conduct" that offends the legal process. *Chambers*, 501 U.S. at 46; *see also Am. Sci. & Eng'g , Inc. v. AutoClear, LLC*, 606 F. Supp. 2d 617, 620 (E.D. Va. 2008) ("Courts have inherent power to impose sanctions on a party for bad faith conduct that offends the legal process."). Here, Samsung has attempted to influence the jury by issuing a press statement describing and attaching excluded evidence, and claiming that "[f]undamental fairness" requires that the jury decide the case based on that excluded evidence. (Exs. A, C.) This conduct warrants severe sanctions.

    **1. Samsung's statement was a bad faith attempt to influence the jury with excluded evidence.**

Samsung's release was targeted to expose the jury to excluded evidence through the press. By the terms of the statement itself, it is describing "excluded evidence." (Exs. A, C. (discussing "The Judge's exclusion of evidence" and what "[t]he excluded evidence would have established").) It attached precisely the demonstrative slides that the Court had excluded. (Exs. B, C.; Dkt. 1456; Dkt. 1510.) And the release specifically stated Samsung's position that this excluded evidence should be provided to *the* jury—that is, the specific jury that has been seated for this trial:

- 5 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

> The excluded evidence would have established beyond doubt that Samsung did not copy the iPhone design. Fundamental fairness requires that *the* jury decide the case based on all the evidence.

(Exs. A, C (emphasis added).)

Samsung's press statement contains a clear message to any friend or family member of any juror: "[f]undamental fairness" requires that the jury have access to information that the Court has supposedly unjustly excluded. (*Id.*) The statement includes the excluded demonstratives, as well as the conclusion that the jury is supposed to draw from them—that "Samsung was not allowed to tell the jury the full story" and that the excluded evidence "established beyond doubt that Samsung did not copy." (*Id.*) This is an invitation to anyone with any connection to the case or to the jury to provide this information—or, at minimum, to tell the members of the jury that they are not getting the "full story" or "all the evidence." In short, Samsung was inviting and encouraging readers of the press statement to share this properly excluded evidence with the jury.

Moreover, it was Samsung that affirmatively chose to go on the offensive with this press statement. In his declaration, Mr. Quinn implies that the release was a response to specific inquiries, calling it a "brief statement" in response to "requests from members of the media seeking further explanation" about the excluded evidence. (Quinn Decl. ¶ 2; *see also id.* ¶ 4 (claiming that "Samsung did not issue a general press release").) Even if this were true, it would be no excuse: simply because the press asks for materials does not give an attorney license to provide those materials. Indeed, attorneys routinely decline such requests where it would breach legal or ethical obligations to make a disclosure.

But, in fact, press reports make clear that this was a broader release, made unsolicited to certain press members, affirmatively aimed to disseminate Samsung's excluded evidence widely among the press:

> At 2:48 p.m., after openings were done and a suave Apple industrial designer was testifying, a Samsung press statement hit our inbox (along with those of other reporters) with a link to the excluded slides. (The linked material has since been removed, but All Things D snagged it.) "The excluded evidence would have established beyond doubt that Samsung did not copy the iPhone

- 6 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

design," the statement said. "Fundamental fairness requires that the jury decide the case based on all the evidence."

(Ex. B.)

It was Samsung that took the initiative to email reporters with its statement, and Samsung that chose to disseminate the excluded evidence with the instruction that the jury should decide the case based on it. "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991). Samsung's attempt to undermine this right by broadcasting the excluded evidence and suggesting that the jury should consider it is precisely the kind of "bad faith" litigation misconduct that warrants sanctions.

### 2. Samsung's actions substantially increased the likelihood that the jury will see the excluded evidence.

Samsung's actions have undoubtedly substantially increased the risk that the jury will see—or, at minimum, be influenced by someone who has seen—precisely the evidence that the Court has excluded. While disseminating excluded evidence to the media would be a problem in any case, it is particularly problematic in a high profile technology case in the internet age, when intentional or inadvertent exposure to excluded evidence is extraordinarily easy. "As the Supreme Court long ago recognized, 'every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.' That may be particularly true in today's 'information age,' where the internet and other technologies make information more widely available and easily accessible than ever before." *United States v. Diehl-Armstrong*, 739 F. Supp. 2d 786, 806 (W.D. Pa. 2010) (quoting *Reynolds v. United States*, 98 U.S. 145, 155-1556, 25 L.Ed. 244 (1879)). Indeed, Samsung knows from the *voir dire* that this particular jury pool includes frequent internet users, which only increases the likelihood that a juror (or a friend or family member) might be exposed to the excluded evidence.

- 7 -

APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1   Moreover, what Samsung has done cannot be undone.  If a juror, a juror's family
2   member, or a juror's friend agrees with Samsung that "[f]undamental fairness requires that the
3   jury decide the case based on all the evidence" that the Court excluded, then the excluded
4   evidence is readily and permanently available.  Even Samsung's own apparent attempt to conceal
5   its release of the excluded evidence was unsuccessful.  After disseminating its press statement
6   and a link to the excluded demonstratives to reporters, Samsung apparently removed the linked
7   slides.  (*See* Ex. B ("The linked material has since been removed").)  But it remains readily
8   available, because at least one press outlet "snagged it" and maintained a public copy.  (*Id.*)  The
9   damage that Samsung has caused is therefore not reversible.

### 3. Samsung's misconduct is particularly egregious, because it impugned the integrity of the Court.

Though Samsung's dissemination of the excluded evidence and its suggestion that the jury should consider it would alone be bad faith litigation misconduct warranting sanctions, Samsung compounded the harm to the judicial process by impugning the integrity of the Court itself.  Mr. Quinn made clear Samsung's position on whether it would respect the Court's determinations during arguments on July 31.  Confronted with the Court's decision to exclude the disputed evidence (after multiple failed motions for reconsideration), Mr. Quinn challenged, "What's the point . . . of having the trial?  What's the point?"  (Tr. July 31, 2012, at 291-92.) Samsung then took its "What's the point?" message to the public—claiming that the Court was improperly denying Samsung a fair trial.

Specifically, Samsung asserted that "[t]he Judge's exclusion of evidence" will allow Apple to make "inaccurate[]" arguments, and will prevent Samsung from "tell[ing] the jury the full story" that "would have established beyond doubt that Samsung did not copy."  (Exs. A, C.) The clear implication of Samsung's press statement is that the Court is somehow biased or unfair, and that the trial will violate "[f]undamental fairness" because the jury's decision will not be "based on all the evidence."  (*Id.*)  Samsung's statement is a frontal assault on the integrity of the Court and calls the judicial process into question.  It is precisely to protect the "integrity of

- 8 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

the courts" that the courts have the inherent authority to sanction such extrajudicial statements aimed at influencing the jury. *Chambers*, 501 U.S. at 44.

### 4. Samsung's press statement is the latest in a string of litigation misconduct.

As the Court is aware, this is not the first time that Samsung has engaged in sanctionable conduct in this litigation. In particular:

- On April 23, 2012, Judge Grewal granted monetary sanctions to Apple as a result of Samsung's failure to comply with two discovery orders, after Apple *twice* moved to compel documents reflecting Samsung's analysis or consideration of Apple's products. (*See* Dkt. 880.)

- Judge Grewal's April 23 Order also granted Apple's motion for sanctions due to Samsung's non-compliance with a prior Court order compelling Samsung to produce financial information relevant to establishing Apple's damages. As a sanction, Judge Grewal allowed Apple to supplement its damages expert report and limited Samsung's deposition of Apple's damages expert to half the time otherwise allowed under the Court's rules. (*See id.*)

- On May 4, 2012, Judge Grewal issued an Order precluding Samsung from offering any evidence at trial of its design-around efforts for the '381, '891, and '163 patents because Samsung had failed to comply with Judge Grewal's prior order compelling production of source code for the accused Samsung products. (*See* Dkt. 898 and Dkt. 1106.)

- On July 25, 2012, based on a finding that Samsung had "consciously disregarded" its obligation to preserve relevant evidence by leaving in place "an adjudicated spoliation tool [] for seven months and tak[ing] almost no steps to avoid spoliation beyond telling employees not to allow what will otherwise certainly happen," Judge Grewal granted Apple's motion for an adverse inference and ordered that the jury be instructed that Samsung destroyed relevant evidence that was favorable to Apple. (*See* Dkt. 1321.)

### 5. The Court can and should sanction Samsung for its bad faith conduct in the litigation.

Samsung's bad faith press offensive warrants severe sanctions. Even apart from a party's violation of a court order and attorney violations of rules of professional conduct (discussed below), the Court has the inherent authority to "sanction a litigant for bad faith conduct." *Chambers*, 501 U.S. at 35. "Generally, the Court must find that the party acted in 'bad faith' before the Court invokes its inherent powers." *American Science*, 606 F. Supp. 2d at 620. This bad faith can be shown—as here—by a party's "conduct of the litigation." *Roadway Express, Inc. v. Piper Jr.*, 447 U.S. 752, 766 (1980) (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973)).

- 9 -

APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1  Moreover, the Court has the authority to sanction Samsung's actions in this case, even though
2  they occurred outside of the courtroom:  "This power reaches both conduct before the court and
3  that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt
4  power was not . . . merely the disruption of court proceedings.  Rather, it was disobedience to the
5  orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of
6  trial.'"  *Chambers*, 501 U.S. at 44 (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*,
7  481 U.S. 787, 798 (1987)).

8  Sanctions for issuance of a press statement of the type that Samsung issued is well within
9  the Court's authority.  For example, in *American Science*, the court issued sanctions under its
10 inherent authority for "issu[ance of an] objectionable press release intentionally and in bad
11 faith."  606 F. Supp. 2d at 625; *see also Chambers*, 501 U.S. at 44 (listing other examples of
12 appropriate exercise of inherent sanctioning authority).

13 Here, Samsung's effort to place excluded evidence before the jury by press statement has
14 threatened to taint the fair outcome of this case, and cannot help but undermine the public trust in
15 the judiciary.  In this closely watched case, Samsung's misconduct cannot and should not be
16 permitted to go unchecked.  Samsung's press statement has "violate[d] [Apple's] fundamental
17 right" to "a fair trial by 'impartial' jurors" and called the Court's integrity and impartiality into
18 question with its "What's the point?" message.  *Gentile*, 501 U.S. at 1075.  Those actions can
19 and should result in serious sanctions, as discussed in detail below.

20  **B.  SAMSUNG'S ATTORNEY'S AUTHORIZATION OF THE PRESS STATEMENT VIOLATED CALIFORNIA ETHICAL RULE 5-120.**

21  In authorizing and approving Samsung's press statement, Mr. Quinn made an
22 "extrajudicial statement" that a "a reasonable person would expect to be disseminated by means
23 of public communication" with the expectation—indeed, the intent—that it "have a substantial
24 likelihood of materially prejudicing" the jury's determination.  California Rule of Professional
25 Conduct 5-120.  By its own terms, Samsung's statement was designed to influence jurors,
26 contrary to Mr. Quinn's representations in his declaration (Quinn Decl., ¶ 12.) The statement
27
28

encourages the jury to consider the evidence by demanding that "[f]undamental fairness requires that the jury decide the case based on all the evidence"—including the evidence and arguments that have been precluded by the Court.

The Discussion of Rule 5-120 lists four factors to consider in determining whether there has been a violation of the Rule, three of which are directly relevant here:

> Whether an extrajudicial statement violates rule 5-120 depends on many factors, including: (1) **whether the extrajudicial statement presents information clearly inadmissible as evidence in the matter for the purpose of proving or disproving a material fact in issue**; (2) **whether the extrajudicial statement presents information the member knows is false, deceptive, or the use of which would violate Business and Professions Code section 6068(d)**; (3) whether the extrajudicial statement violates a lawful "gag" order, or protective order, statute, rule of court, or special rule of confidentiality (for example, in juvenile, domestic, mental disability, and certain criminal proceedings); and (4) **the timing of the statement**."

(*See* http://rules.calbar.ca.gov/Rules/RulesofProfessionalConduct/CurrentRules/Rule5120.aspx (emphasis added).)[2]  The first factor strongly weighs in favor of finding a violation – indeed, the *very purpose* of Samsung's statement to the press and release of the excluded slides was to "present[] information clearly inadmissible as evidence in the matter for the purpose of proving or disproving a material fact in issue."

Likewise, the second factor weighs in favor of a finding of a violation.  Specifically, the first sentence in Samsung's press statement falsely asserted that "Apple was allowed to inaccurately argue to the jury that the F700 was an iPhone Copy" – a charge repeated by Samsung's counsel after Apple's opening statement, when Samsung yet again sought to re-argue the Court's prior rulings on inadmissibility.  (Tr. at 346-49.)  However, Apple made no such claim during its opening statement (and, as Samsung well knows, Apple has not and does not accuse the F700 in this case).  (Dkt. 1178.)  Rather, Apple's opening statement accused Samsung

---

[2] Professional Rule 1-100 explains "the comments contained in the Discussions of the rules, while they do not add independent basis for imposing discipline, are intended to provide guidance for interpreting the rules and practicing in compliance with them."

- 11 -

APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1    of introducing "a complete iPhone clone" in June 2010 with the Galaxy S i9000.  (Tr. at 321.)
2    Apple said that "the success of the Galaxy Series has led to a series of iPhone knock-offs."  (*Id.*)
3    But Apple did *not* state that the F700, an earlier Samsung product, was an iPhone copy; counsel
4    simply said that the F700 "is what's called a slider phone.  You would slide it open to get to the
5    keyboard."  (*Id.*)

6    The fourth factor – the timing of the statement – also weighs in favor of a finding of
7    violation.  Samsung issued the press statement and the excluded slides as a direct response to the
8    Court's rulings earlier in the day.  Moreover, by issuing the release at a time when the jury will
9    be away from Court for two days, Samsung increased the likelihood that a juror might learn of
10   the information before trial resumes, and maximized the time between a juror's potential
11   exposure and any curative instruction that the Court might provide when Court resumes.

12   Mr. Quinn's extrajudicial appeal to the jury flouts the judicial process and the safeguards
13   designed to ensure a fair trial.  Such prejudicial statements are not, as Mr. Quinn suggests (Quinn
14   Decl., ¶ 13), protected by the First Amendment.  In *Gentile*, 501 U.S. 1030, the Supreme Court
15   explained that "[f]ew, if any, interests under the Constitution are more fundamental than the right
16   to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would
17   violate that fundamental right."  *Id.* at 1075.  Accordingly, the Supreme Court held that the State
18   has a substantial interest in preventing officers of the court, such as lawyers, from making
19   comments that (1) are "likely to influence the actual outcome of the trial," or (2) "are likely to
20   prejudice the jury venire, even if an untainted panel can ultimately be found."  *Id.*

21   In addition, Mr. Quinn is wrong that his press statement can be justified under California
22   Ethics Rule 5-120(B)(2) on the ground that it contained public information.  The slides Mr.
23   Quinn disclosed to the press did not merely recite "information contained in a public record."
24   Those slides and the accompanying press statement were, in fact, the very argument to the jury
25   that this Court has repeatedly held inadmissible.  A direct appeal to the jury to subvert the
26   Court's exclusion order is not encompassed by Rule 5-120(B)(2).

27
28

1      Mr. Quinn's remaining purported justification for his statement only belies his claim that

2  he did not intend to influence the jury.  Mr. Quinn claims that his statement was necessary to

3  protect his client from unfair prejudice, and is thus allowable under California Ethics Rule 5-

4  120(C).  But his statement is in direct response to the Court's exclusion of Samsung's untimely

5  defenses.  Exclusion of untimely produced evidence and argument is not "unfair prejudice."

6  Rule 5-120(C) does not give Mr. Quinn the right to make extrajudicial appeals to the jury to

7  "protect" his client from a ruling of the Court.

8      **C.   JUDGMENT IN APPLE'S FAVOR ON ITS PHONE DESIGN PATENT INFRINGEMENT CLAIMS IS AN APPROPRIATE SANCTION FOR SAMSUNG'S AND ITS COUNSEL'S MISCONDUCT.**

9

10     As a sanction for Samsung's and Mr. Quinn's extraordinary misconduct and ethical

11  violations, Apple requests that the Court order judgment in Apple's favor on its phone design

12  patent infringement claims.  Terminating sanctions are without doubt an extraordinary remedy—

13  but Samsung and Mr. Quinn engaged in extraordinary misconduct, in an extraordinary case.

14     It is fully within the Court's authority to order judgment in Apple's favor as a sanction

15  for this misconduct.  *See, e.g.*, *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988)

16  ("Dismissal under a court's inherent powers is justified in extreme circumstances, in response to

17  abusive litigation practices, and to insure the orderly administration of justice and the integrity of

18  the court's orders." (citations omitted)); *see also Chambers* 501 U.S. at 45 ("[O]utright dismissal

19  of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion").  The

20  misconduct at issue is "extreme"—it is exceptional for a party to issue a press statement

21  encouraging dissemination of excluded evidence to a sitting jury and disparaging the judge who

22  entered the order for denying them a "fair trial."  Likewise, the press statement is an "abusive

23  litigation practice[]" insofar as it sought to increase the chance that the jury considered excluded

24  evidence.  "In cases where the drastic sanctions of dismissal or default are ordered, . . . the losing

25  party's non-compliance must be due to willfulness, fault, or bad faith.  A finding of any of these

26  circumstances can justify the sanction of dismissal."  *Halaco*, 843 F.2d at 380 (citations omitted).

27

28

- 13 -   APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

1   Here, Samsung's press statement was certainly willful, and the circumstances demonstrate a bad
2   faith effort to manipulate the jury.
3         In assessing whether to exercise its discretion to order judgment in Apple's favor, the
4   Court should consider whether any sanction other than judgment could remedy the harm caused
5   by the misconduct of Samsung and its counsel. "A primary aspect of that discretion is the ability
6   to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*,
7   501 U.S. at 44-45. In other words, the sanction must remedy the harm: "The proper remedy
8   must rectify 'whatever improper effect the attorney's misconduct may have had in the case
9   before it.'" *United States v. Sierra Pacific Indus.*, __ F. Supp. 2d. __, 2011 WL 5828017, at *9
10  (E.D. Cal. Nov. 18, 2011) (quoting *McMillan v. Shadow Ridge at Oak Park Homeowner's Ass'n*,
11  165 Cal. App. 4th 960, 968 (Cal. Ct. App. 2008)).
12        No remedy other than judgment on Apple's phone design patent claims could fully
13  rectify the harm that Samsung and Mr. Quinn have caused. No exclusionary sanction would be
14  sufficient—the evidence that the press statement addresses has already been excluded. Nor
15  would a mistrial be appropriate. A mistrial would only further delay resolution of Apple's
16  claims—which would be to Samsung's benefit, and Apple's detriment. Moreover, a mistrial
17  would impose significant additional expense on the parties and the Court. *Cf. Gentile*, 501 U.S.
18  at 1075 ("The State has a substantial interest in preventing officers of the court, such as lawyers,
19  from imposing such costs on the judicial system and on the litigants.").
20        Likewise, monetary sanctions cannot remedy the harm that Samsung's press statement
21  has caused. Apple is seeking permanent injunctive relief precisely because monetary relief is
22  inadequate to address the harms caused by Samsung's infringement; Samsung should not be
23  allowed to reduce the risk of injunctive relief by manipulating the jury with extrajudicial
24  statements, then simply pay a fine. Moreover, it is evident that monetary sanctions have been
25  insufficient to deter misconduct by Samsung and its counsel. The Court previously imposed
26  monetary sanctions on Samsung, yet its pattern of misconduct persisted. (*See* Dkt. 880.) The
27
28

1  only sanction that can fully rectify the harm caused by these actions is judgment on Apple's phone design patent claims.

In addition to sanctions in the form of judgment, Samsung and Mr. Quinn should also be ordered to comply with the Court's order identifying who released the press statement, and who drafted it.  (Tr. at 555.)  Mr. Quinn's declaration fails entirely to address these aspects of the Court's order.

## V.     CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court sanction Samsung by granting judgment in favor of Apple on its claim that Samsung infringes Apple's phone design patents, and granting judgment that those patents are not invalid.  In the alternative, and at a minimum, the Court should (i) instruct the jury that Samsung engaged in serious misconduct and that, as a result, the Court has made a finding that Samsung copied the asserted designs and features from Apple products; and (ii) preclude Samsung from further mentioning or proffering any evidence regarding the "Sony design exercise" for any purpose.

Dated:  August 1, 2012

                WILMER CUTLER PICKERING
                  HALE AND DORR LLP

                By:     /s/ William F. Lee
                         William F. Lee

                         Attorneys for Plaintiff
                         APPLE INC.

- 15 -

APPLE'S RESPONSE TO DECLARATION OF
JOHN B. QUINN AND RECOMMENDATION
REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

**ATTESTATION OF E-FILED SIGNATURE**

I, Mark D. Selwyn, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that William F. Lee has concurred in this filing.

Dated: August 1, 2012           By:        */s/ Mark D. Selwyn*
                                              Mark D. Selwyn

- 16 -

APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on August 1, 2012 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

          /s/ Mark D. Selwyn
          Mark D. Selwyn

- 17 -

APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND RECOMMENDATION REGARDING APPROPRIATE SANCTION
Case No. 11-cv-01846 (LHK)