# EXHIBIT D

Page 1

1            UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                  SAN JOSE DIVISION
4
5   APPLE INC., a California corporation,
6
                Plaintiff,
7
    vs.                         CASE NO.  11-cv-01846-LHK
8
    SAMSUNG ELECTRONICS CO.,
9   LTD., a Korean business
    entity; SAMSUNG ELECTRONICS
10  AMERICA,INC., a New York
    corporation; SAMSUNG
11  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited
12  liability company,
13              Defendants.
    _____/
14
15
16       H I G H L Y   C O N F I D E N T I A L
17         O U T S I D E   C O U N S E L   O N L Y
18
19     VIDEOTAPED DEPOSITION OF SCOTT FORSTALL
20           REDWOOD SHORES, CALIFORNIA
21            THURSDAY, OCTOBER 27, 2011
22
23  BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR
24  CSR LICENSE NO. 9830
25  JOB NO. 43002

Highly Confidential - Outside Counsels Eyes Only

Page 18

1  in -- are you asking in terms of Claim 2?
2         MR. JOHNSON:  Sure.
3         THE WITNESS:  So the way I read Claim 2, to
4  mean that this structured electronic document can have
5  multiple of these -- these sort of semantic elements,
6  these logical elements, these -- these boxes which
7  are, you know, potentially illustrated here on
8  Figure 5 as these blocks.  And so you can have
9  multiple of these pieces of structure that you may
10 want to double tap to zoom in in one embodiment --
11        MR. JOHNSON:  Okay.
12    Q   And if you read down a little further, it
13 uses the term "enlarging and translating"; do you see
14 that?
15    A   Uh-huh.
16    Q   What does that mean?
17        MR. JACOBS:  Objection; form; legal
18 conclusion.
19        THE WITNESS:  -- okay.  So you're asking
20 about where it says:
21        "Enlarging and translating the structured
22 electronic document so that the first box is
23 substantially centered on the touch screen display."
24        MR. JOHNSON:  Right.
25        THE WITNESS:  So I read this to mean that one

Page 19

1  of these elements that you have chosen by, I believe
2  it says, you know, first gesture, which could be, say,
3  a double tap, would involve potentially zooming in,
4  so -- so enlarging that region.
5        So let's say you had many small areas,
6  regions, all being displayed, say, on your iPhone, and
7  you -- you double tap on one of these small logical
8  regions.  Let's say it's a -- it's a single column of
9  a story.  Then it would enlarge that to fill the
10 display, potentially filling it from one side to the
11 other.
12       And it may translate it because it might have
13 been shifted over slightly to the left, and so it
14 translates it so that the column is centered now on
15 the display of the iPhone.
16       MR. JOHNSON:  Q.  What does "substantially
17 centered" mean?
18       MR. JACOBS:  Objection; form; legal
19 conclusion.
20       MR. JOHNSON:  I know what "centered" means.
21    Q   What does substantially centered mean?
22    A   So I'm not a lawyer, but the way I would take
23 that to mean is, there are -- there are times, based
24 on some -- some elements or some portion of a display,
25 that you may not have it precisely in the center.  So

Highly Confidential - Outside Counsels Eyes Only

Page 20

1   you might not actually just take the -- the X length,
2   divide by two, and then center that, you know,
3   precisely from -- from one end of the screen to
4   another.  You may have it slightly off for some
5   reason.
6           And there's a lot of reasons for that.  I can
7   postulate on several.  One would be if we had a UI
8   element at one side of the screen or another, and so
9   you wouldn't want to center it within the entire
10  display, but we'd want to center it within the region
11  that isn't being taken up by the chrome of -- of the
12  rest of the user interface.
13      Q   Okay.  And you mentioned, you know, X, then
14  whatever -- whatever the length is and divide it up by
15  two.
16          How much -- how much is substantially
17  centered versus not substantially centered?  At what
18  point -- where do you draw the line, so to speak?
19          MR. JACOBS:  Objection; form; legal
20  conclusion.
21          THE WITNESS:  I think many people can draw
22  the line in many different ways.  It's like asking,
23  you know, what's the -- when you're taking a photo of
24  someone, a portrait, what's -- what's the right way
25  to -- to center them in a photo?

Highly Confidential - Outside Counsels Eyes Only

Page 21

1    And so people center someone when they take a
2 photo of someone.  Some people will put the face of
3 the person they're taking the photo of precisely and
4 exactly in the -- you know, the midpoint of both X and
5 Y of the viewfinder.
6    Some people will use the golden rule; right?
7 So the golden rule is -- it's about 60-point-something
8 percent up toward the -- the ver -- you know, the top
9 of the viewfinder.
10    And so I would consider an example like that
11 to be substantially centered but not in the center.
12 It actually gives you a better feel for -- for the
13 look and the composition of that.
14    So when I say it's substantially centered,
15 you know, there are, you know, different ways to take
16 it.  But I would -- I would -- I would say that, you
17 know, both of those would be valid ways of thinking of
18 centering.
19    MR. JOHNSON:  Okay.
20  Q  And if -- if I wanted to try and avoid using,
21 you know, this particular element by enlarging and
22 translating the structured electronic document so that
23 the first box is substantially centered, if I wanted
24 to try and avoid using this, you know, substantially
25 centered piece of this claim, how would I do that?

Page 160

1            THE VIDEOGRAPHER:  The time is 1:49 p.m., and
2   we are off the record.
3            (Recess taken.)
4            (The following was recorded at the request of
5             counsel off the video record:)
6            MR. JACOBS:  I'd like to reserve the 30 days
7   to review the transcript and designate the transcript
8   outside counsel, pursuant to the protective order,
9   "Highly Confidential Outside Counsel."
10           Thank you.
11           (Recess taken.)
12           THE VIDEOGRAPHER:  The time is 2:01 p.m. and
13  we are on the record.
14           MR. JOHNSON:  Okay.
15      Q    So I want to show you an iPhone that has
16  been -- it's got the New York Times website up, and I
17  want to ask you -- I'm just going to show you -- and
18  we can have our man here zoom in when appropriate,
19  but -- so Mr. Forstall, when I, for example, you know,
20  double tap on one of these boxes over here, for
21  example -- I'm just picking, you know, whatever --
22  this; right?  It zooms in on a particular box here.
23           That in and of itself wasn't something that
24  Apple invented or you invented, right?  Just the
25  double -- the double tap to zoom in and of itself like

Page 161

1  I just did wasn't something that Apple invented;
2  right?
3          MR. JACOBS:  Objection; form.
4          THE WITNESS:  So I -- I would not say what
5  you just said.  This patent itself doesn't appear to
6  cover pure double tap to zoom --
7          MR. JOHNSON:  Okay.
8          THE WITNESS:  -- just in the raw form without
9  any semantic, you know, meaning to it.  I mean, it
10 covers some things not even related to double tap to
11 zoom in this same patent.
12         But this -- if you're saying in the example
13 earlier of double tap to zoom into, say, a photo of --
14 you know, of a white wall, this patent doesn't cover
15 that concept.
16         MR. JOHNSON:  Q.  Well, even a double tap to
17 zoom to a logical area -- just the single double tap
18 to zoom in a logical area is not covered by the
19 '163 patent; right?
20         MR. JACOBS:  Objection to form; calls for a
21 legal conclusion.
22         THE WITNESS:  I -- we could go through all
23 the claims to see what's actually covered in there.
24         MR. JOHNSON:  Yeah.
25     Q   I mean, for example --

Page 162

1    A    I'm not saying --

2    Q    -- if you'd turn to Claim 2.

3    A    Uh-huh. Okay.

4    Q    Okay. What I just did on this iPhone isn't

5  covered by -- by Claim 2; right?

6         MR. JACOBS: Objection; form.

7         THE WITNESS: You're saying, does double

8  tap -- that -- the logical piece even, you're saying?

9  I mean, because what you just showed there, I think,

10 is -- is captured in this patent.

11        Are you saying Claim 2 -- how are you saying

12 Claim 2 does not cover that?

13        MR. JOHNSON: Well, I think Claim 2 requires

14 a second gesture.

15   Q    So the initial gesture of double tapping on

16 this box, for example, like I'm doing again --

17        THE VIDEOGRAPHER: Okay. Wait.

18        MR. JOHNSON: Rewind the tape. Like that.

19 And then zooming into that box is not simply covered

20 by Claim 2. Claim 2 requires a second gesture while

21 the first box is enlarged.

22   Q    You see that down around Line 65?

23   A    I see that.

24        So I -- I can't make a legal analysis of what

25 is required as a part of Claim 2 to claim the first

Page 163

1  several paragraphs of Claim 2.
2      Q   Okay.  So do you have an opinion one way or
3  the other as to the -- the gesture that I'm doing now
4  on the phone of just double tapping on a particular
5  box, and it's zooming in on that box, do you have an
6  opinion as to whether that in and of itself is what is
7  contemplated by Claim 2 in the '163 patent?
8      A   My opinion is that would be covered by this
9  patent.
10     Q   Okay.  Do you know whether what I just did,
11 you know, the double tap to zoom on -- is actually
12 disclosed in the prior art to the '163 patent?
13     A   I do not know.
14     Q   How --
15     A   I don't believe that it's -- there's prior
16 art to that.
17     Q   How involved were you in the prosecution
18 once -- we talked a little bit about this in the
19 application process.  And what I'm asking is -- there
20 were rejections by the patent offers, and it took
21 about four years for this patent to actually issue.
22         And my question was, you know, were you
23 involved in the later stages of the prosecution of --
24 of this patent?
25         For example, when the patent was rejected

Page 164

1  over prior art, were you consulted by the lawyers, and
2  did you talk to them about what the prior art
3  disclosed and didn't disclose?
4      A   I don't remember.
5      Q   Okay.  Going back to the second gesture,
6  what -- what's the second gesture that's -- that's
7  discussed in Claim 2?
8          MR. JACOBS:  Objection; form; legal
9  conclusion.
10         THE WITNESS:  So I think there's -- there's
11 several possibilities for what a second gesture could
12 be.  I'd say one interpretation is, a double tap could
13 be a second gesture.
14         MR. JOHNSON:  So the second tap or --
15         THE WITNESS:  A second tap or second double
16 tap could be a -- a gesture.  And there's -- I mean,
17 second versus -- first of all, I think the order of
18 all these things isn't necessarily critical.  I know
19 there's a statement somewhere in here about, you know,
20 order of first, second, third not being required.
21         MR. JOHNSON:  Q.  And why -- why do you --
22 why do you agree with that?  Why do you think the
23 order doesn't really matter?
24     A   Well, when a first -- if you have a box that
25 is enlarged already, it could be a first gesture that

Highly Confidential - Outside Counsels Eyes Only

Page 170

1   without actually moving content and having this gutter
2   that we would not do because there's no reason to have
3   an empty gutter on the side.
4       Q   So -- so going back to what it -- to where it
5   was before, this is -- this is substantially centered
6   on the left side; right?
7       A   Uh-huh.
8       Q   At this point, has this met all of the
9   elements of the claim?
10          MR. JACOBS:  Objection; calls for a legal
11  conclusion.
12          THE WITNESS:  I can't make the legal
13  conclusion on what that is.
14          MR. JOHNSON:  Yeah.
15      Q   I mean, there's still -- at this point,
16  it's -- we still need a second gesture; right?  There
17  hasn't been a second gesture, or has there been?
18      A   I can't make -- I've not seen a second
19  gesture in what you've done.
20      Q   Okay.  So the next element of the claim says
21  while the first box is enlarged, a second gesture is
22  detected on the box -- on the second box other than
23  the first box?
24      A   Yes.
25      Q   Okay.  So that would require me to, for

Highly Confidential - Outside Counsels Eyes Only

Page 171

1  example, double click on this?

2     A   That would be one way to do it, uh-huh.

3     Q   Okay.  And in -- the next element is:

4         "In response to detecting the second gesture,

5  the structured electronic document is translated so

6  that the second box is substantially centered on the

7  touch screen display."

8         Now, this one is substantially centered?

9     A   As was the last one, yeah.

10    Q   Okay.  So that iteration of the two double

11 taps with enlargement meets the elements of the claim?

12        MR. JACOBS:  Objection; lacks foundation.

13        MR. JOHNSON:  Q.  Would you agree with that?

14    A   It appears to me that that series of actions

15 met the Claim 2.

16    Q   Okay.  So if I go back to where we started,

17 which is the New York Times web page, and I just

18 double tap on the single box, that's not enough to

19 meet all the elements of the claim; right?

20        MR. JACOBS:  Objection; calls for a legal

21 conclusion.

22        THE WITNESS:  I -- I can't say whether that

23 is or not.

24        MR. JOHNSON:  Q.  Well, there wasn't a second

25 gesture; was there?

Highly Confidential - Outside Counsels Eyes Only

Page 172

1  A   I did not see a second gesture.

2  Q   Okay.  So are you aware during the
3  prosecution of the '163 patent that Apple had to add
4  this notion of a second gesture to get around some
5  prior art?

6  A   I do not know what was added.

7  Q   Okay.  Do you -- do you have any quantitative
8  understanding of how many users actually use the
9  two-gesture demonstration I just did to -- to -- to
10 move, you know, between the two documents?

11     So as opposed to, for example, the single
12 double tap where you zoom in like that, how many
13 people actually, you know, will double tap on
14 something over here, and then, you know, end up over
15 here, and then double tap on something over here?

16     Do you have any quantifiable data that tells
17 us, you know, how many people actually use that?

18 A   Right.  I don't have quantitative data.  I
19 know personally I do it quite a bit, but I don't have
20 quantitative data to -- to tell you how many people do
21 it.

22 Q   Okay.  I think I read -- or I -- or during
23 your -- the Keynote in June -- you know, a couple of
24 weeks ago or a few weeks ago, I heard that there are
25 200 new features on the iOS 5 --

Highly Confidential - Outside Counsels Eyes Only

1  record.
2  (WHEREUPON, the deposition ended at 3:28 p.m.)
3                    ---oOo---
4
5       _____
6            Scott Forstall
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| | | |
|---|---|---|
| 1 | Name of Case: | *Apple Inc. v. Samsung Electronics Co., Ltd., et al.*, Case No. 11-cv-1846 LHK |
| 2 | Date of deposition: | October 27, 2011 |
| 3 | Name of witness: | Scott Forstall |
| 4 | Reason Codes: | |
| 5 | 1. | To clarify the record. |
| 6 | 2. | To conform to the facts. |
|   | 3. | To correct transcription errors. |

| Page | Line | Now Reads | Should Read | Reason |
|---|---|---|---|---|
| 7 | 13 | "an anatomic element" | "an atomic element" | 1, 3 |
| 79 | 9 | "as the step" | "as the stuff" | 1, 3 |
| 120 | 4 | "some of the offices" | "some of the offsites" | 1, 3 |
| 128 | 10 | "directly responsible engineer" | "directly responsible individual" | 2 |
| 189 | 23 | "report to IT" | "reported to Steve" | 1, 2, 3 |
| 194 | 10 | "got and interpolate and copy" | "go and sort of blatantly copy" | 3 |
| 199 | 6-7 | "so it trained on it." | "because people get trained on it." | 3 |
| 219 | 19 | "resets" | "recents" | 1, 3 |

Signed: _/s/ Scott Forstall_   Date: 11/3/11

SCOTT FORSTALL

sf-3061058