1               UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

5

      APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6     CORPORATION,                )
                                  )  SAN JOSE, CALIFORNIA
7                   PLAINTIFF,    )
                                  )  JULY 30, 2012
8             VS.                 )
                                  )  VOLUME 1
9     SAMSUNG ELECTRONICS CO.,    )
      LTD., A KOREAN BUSINESS     )  PAGES 1-282
10    ENTITY; SAMSUNG             )
      ELECTRONICS AMERICA,        )
11    INC., A NEW YORK            )
      CORPORATION; SAMSUNG        )
12    TELECOMMUNICATIONS          )
      AMERICA, LLC, A DELAWARE    )
13    LIMITED LIABILITY           )
      COMPANY,                    )
14                                )
                    DEFENDANTS.   )
15    _____

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17             UNITED STATES DISTRICT JUDGE

18

19

20            APPEARANCES ON NEXT PAGE

21

22

23    OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595
24

25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF         MORRISON & FOERSTER
      APPLE:                   BY:  HAROLD J. MCELHINNY
 3                                  MICHAEL A. JACOBS
                                    RACHEL KREVANS
 4                              425 MARKET STREET
                               SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT   WILMER, CUTLER, PICKERING,
      APPLE:                   HALE AND DORR
 7                              BY:  WILLIAM F. LEE
                               60 STATE STREET
 8                             BOSTON, MASSACHUSETTS  02109

 9                              BY:  MARK D. SELWYN
                               950 PAGE MILL ROAD
10                             PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:    QUINN, EMANUEL, URQUHART,
                               OLIVER & HEDGES
12                             BY:  CHARLES K. VERHOEVEN
                               50 CALIFORNIA STREET, 22ND FLOOR
13                             SAN FRANCISCO, CALIFORNIA  94111

14                              BY:  VICTORIA F. MAROULIS
                                    KEVIN P.B. JOHNSON
15                             555 TWIN DOLPHIN DRIVE
                               SUITE 560
16                             REDWOOD SHORES, CALIFORNIA  94065

17                              BY:  MICHAEL T. ZELLER
                                    WILLIAM C. PRICE
18                             865 SOUTH FIGUEROA STREET
                               10TH FLOOR
19                             LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA              JULY 30, 2012
 2                P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE COURT:  DID THE ATTORNEYS BRING THE
 6    TRIAL DATE SHEET?  DO YOU HAVE THAT?  YOU WERE ALSO
 7    GOING TO BRING 34 COPIES OF THE WITNESS LIST AND
 8    LAWYERS.
 9              THE CLERK:  I HAVE THAT.
10              THE COURT:  CAN I JUST TAKE A QUICK LOOK
11    AT THAT, AND MAYBE WE CAN HAVE THOMAS PUT IT ON THE
12    CHAIRS.
13              (PAUSE IN PROCEEDINGS.)
14              THE COURT:  DID YOU ALL BRING THE COPIES
15    OF THE PRELIMINARY JURY INSTRUCTIONS THAT WE'D
16    ASKED FOR FOR THE JURY NOTEBOOKS?
17              (PAUSE IN PROCEEDINGS.)
18              MR. JACOBS:  YOUR HONOR, ON THE TOPIC OF
19    THE JUROR NOTEBOOKS.
20              THE COURT:  YES.
21              MR. JACOBS:  WOULD YOU BE INTERESTED IN
22    HAVING THE DESIGN PATENT CLAIM CONSTRUCTION ORDER
23    DISTILLED IN A SIMILAR WAY AS THE UTILITY PATENT
24    CLAIM CONSTRUCTION ORDER INCLUDED IN THE BINDER?
25              THE COURT:  YES.
```

```
 1              IS THERE ANY OBJECTION TO THAT?
 2              MR. ZELLER:  YES, YOUR HONOR, WE DO
 3     OBJECT.
 4              THE COURT WILL RECALL THAT THE CLAIM
 5     CONSTRUCTION ORDER OF THE COURT IS ESSENTIALLY
 6     TENTATIVE BECAUSE CERTAIN ISSUES AND CERTAIN
 7     FUNCTIONALITY HAVE BEEN DEFERRED, SO WE DON'T THINK
 8     IT WOULD BE APPROPRIATE TO INCLUDE A SIMILAR CHART
 9     OR SUMMARY OF THE CLAIM CONSTRUCTION AT THIS
10     JUNCTURE BECAUSE IT MAY LEAD TO CONFUSION.  IT MAY
11     BE CHANGED.
12              IT IS NOT A FINAL ORDER, AS THE COURT IS
13     AWARE, AND THAT IS THE REASON WHY WE DO NOT AGREE
14     WITH APPLE THAT IT SHOULD BE SUBMITTED TO THE
15     JURORS AT THIS TIME.
16              THE COURT:  WELL, IT'S COMPLETE EXCEPT AS
17     TO FUNCTION AND THE FUNCTION OF THE LAYER.  BUT THE
18     OTHER THINGS I'VE DECIDED ARE FINAL.
19              MR. ZELLER:  BUT THE JURORS WILL NOT KNOW
20     THAT THERE WILL BE FURTHER, POTENTIALLY,
21     LIMITATIONS THAT THE COURT WILL INSTRUCT THEM ON AT
22     THE END, AND THEY WILL, MEANWHILE, FOR THE WEEKS
23     THAT THE TRIAL GOES ON, WILL ACTUALLY HAVE A BINDER
24     WHERE THEY'LL BE LOOKING AT THOSE CONSTRUCTIONS AND
25     THEY ARE NECESSARILY INCOMPLETE.
```

```
 1                  SO WE DO NOT BELIEVE THAT THAT BELL CAN
 2       BE UNRUNG AT THE END OF THE TRIAL.
 3                  AND OF COURSE, YOUR HONOR, IT WILL BE
 4       PROVIDED TO THE JURORS AT THE END IN A PROPER AND
 5       COMPLETE FORM.
 6                  THE COURT:  WELL, LET'S GO AHEAD AND CALL
 7       THE CASE AND SEE WHO'S HERE.
 8                  THE CLERK:  CALLING CASE NUMBER
 9       C-11-01846 LHK, APPLE INCORPORATED VERSUS SAMSUNG
10       ELECTRONICS, COMPANY, LIMITED, ET AL.
11                  MR. MCELHINNY:  GOOD MORNING, YOUR HONOR.
12       HAROLD MCELHINNY AND MICHAEL JACOBS AT COUNSEL
13       TABLE FOR APPLE FROM MORRISON & FORESTER.
14                  MR. LEE:  GOOD MORNING.  BILL LEE FROM
15       WILMER, HALE AT COUNSEL TABLE FOR APPLE.
16                  MR. VERHOEVEN:  GOOD MORNING, YOUR HONOR.
17       CHARLES VERHOEVEN.  WITH ME IS BILL PRICE,
18       KEVIN JOHNSON, MIKE ZELLER AND VICTORIA MAROULIS
19       AND WE'RE REPRESENTING THE DEFENDANT SAMSUNG.
20                  THE COURT:  OKAY.  GOOD MORNING.
21                  DO YOU WANT TO BE HEARD ON THE DESIGN
22       CLAIM CONSTRUCTION ISSUE, MR. JACOBS?
23                  MR. JACOBS:  YES, YOUR HONOR.  THE DESIGN
24       PATENT CLAIM CONSTRUCTION IS VERY CLEAR ON THE
25       POINTS THAT IT ADDRESSES, AND THIS READING OF
```

1    DESIGN PATENTS IS, OF COURSE, A BIT OF TECHNICAL

2    EXERCISE.  SO WE THINK IT WOULD BE QUITE HELPFUL TO

3    THE JURY TO BE ABLE TO SEE THE COURT'S CONSTRUCTION

4    OF THE VARIOUS LINES AND THE POINTS THE COURT HAS

5    ADDRESSED ALREADY.

6             ANY INSTRUCTIONS THE JURY GETS IN THE WAY

7    OF PRELIMINARY INSTRUCTIONS, FOR EXAMPLE, ARE

8    PRELIMINARY.  AS THE COURT SAID, THESE ARE NOT

9    FINAL AND THERE WILL BE MORE TO COME.

10            THERE WILL BE MORE TO COME ON HOW TO DEAL

11   WITH INFRINGEMENT ON THE UTILITY PATENTS AS WELL,

12   BUT THAT DOESN'T NEGATE OUR -- THE VALUE OF THIS

13   HARD WORKED THROUGH MATERIAL IN THE BINDERS NOW.

14            THE COURT:  ALL RIGHT.  THAT SHOULD BE

15   INCLUDED, BUT PLEASE SHOW THEM TO SAMSUNG AND GET

16   SOME AGREEMENT.

17            MR. JACOBS:  ABSOLUTELY, YOUR HONOR.

18            THE COURT:  OKAY.  SO THE ISSUE I'D LIKE

19   TO RAISE FOR TODAY IS THAT WITH REGARD TO

20   SHIN NISHIBORI.  I AGREE THAT SOME TESTIMONY SHOULD

21   COME IN.  HE IS AN INVENTOR ON THREE OF THE DESIGN

22   PATENTS.  I GUESS THE QUESTION IS, HOW CAN HIS

23   TESTIMONY STILL BE RELEVANT AND ADMISSIBLE, BUT NOT

24   GET INTO WHAT'S BEEN EXCLUDED?

25            SO LET ME HEAR A PROFFER FROM SAMSUNG AS

```
1      TO WHAT HIS TESTIMONY WILL BE.

2             MR. ZELLER:  YOUR HONOR, MR. NISHIBORI

3      WILL TESTIFY THAT THE ONLY CONTRIBUTION HE MADE TO

4      THE DESIGNS THAT HE'S A NAMED INVENTOR ON IS THE

5      SONY-STYLE WORK.  THAT IS ALL HE DID.

6             APPLE HAS TAKEN THE POSITION NOW THAT

7      IT'S IRRELEVANT AND HE DIDN'T ACTUALLY -- NONE OF

8      THAT WORK WAS USED.

9             IF THAT'S THE CASE, YOUR HONOR, OBVIOUSLY

10     HE'S NOT A PROPERLY NAMED INVENTOR.

11            AND THIS GOES TO THE CREDIBILITY OF THE

12     INVENTORS.  IT GOES TO THE CREDIBILITY OF APPLE IN

13     THIS SCENARIO.

14            WE DO THINK THAT THE CAD DRAWING OUGHT TO

15     BE ADMITTED.  WE BRIEFED THAT ISSUE, YOUR HONOR,

16     AND THAT IS PART OF --

17            THE COURT:  JUDGE GREWAL'S RULED ON IT, I

18     RULED ON IT, I KNOW YOU FILED ANOTHER

19     RECONSIDERATION THIS MORNING, BUT THAT IS NOT GOING

20     TO CHANGE.

21            SO LET ME HEAR FROM YOU, WHAT CAN BE THE

22     SCOPE THAT'S RELEVANT AND ADMISSIBLE?  HASN'T

23     ALREADY BEEN PRECLUDED BY TWO JUDICIAL ORDERS?  AND

24     I'LL SEE IF THE SCOPE CAN COME IN.

25            MR. ZELLER:  THE COURT IS NECESSARILY
```

1    EXCLUDING THE ENTIRETY OF MR. NISHIBORI'S TESTIMONY

2    BECAUSE THAT IS ALL HE DID IN CONNECTION WITH THE

3    IPHONE DESIGNS THAT HE IS A NAMED INVENTOR ON.

4              THE COURT:  LET ME HEAR FROM APPLE.

5              YOU AGREE THAT THE MARCH 8TH, 2006 E-MAIL

6    FROM RICHARD HOWARTH TO JONATHAN -- IS IT IVE OR

7    IVE? -- IS IN.

8              SO WHY NOT THE VERY FIRST SENTENCE THAT'S

9    ALL ABOUT MR. NISHIBORI'S WORK ON THE SONY-STYLE?

10             MR. MCELHINNY:  TO BE CLEAR, YOUR HONOR,

11   WE AGREE THAT THAT E-MAIL HAS MET ALL THE

12   EVIDENTIARY ITEMS.  THERE'S NO EVIDENTIARY

13   OBJECTION TO IT.

14             WHETHER OR NOT -- HOW THEY TRY TO USE IT

15   AND WHO THEY TRY TO USE IT WITH AND WHETHER THERE'S

16   ANY RELEVANT ISSUE AT THE TIME, THAT OBJECTION IS

17   STILL RESERVED, YOUR HONOR.

18             AND THAT'S WHAT'S REALLY CRITICAL BECAUSE

19   THERE IS -- GIVEN JUDGE GREWAL'S ORDER, THIS IS THE

20   THAT ISSUE WE'VE BEEN TALKING ABOUT, THERE IS NO --

21   IT'S TWO THINGS.

22             ONE, THERE IS NO RELEVANT ISSUE.  YOU

23   JUST ASKED MR. ZELLER WHAT IT'S RELEVANT TO AND HE

24   JUST TOLD YOU THAT IT'S TO AN INVALIDITY ISSUE FOR

25   INCORRECT NAMING OF THE INVENTORS.

```
 1          THAT'S AN ENTIRELY NEW DEFENSE THAT'S
 2   NEVER BEEN DISCLOSED BEFORE.
 3          SO THE COMBINATION OF THE FACT THAT
 4   THERE'S NO RELEVANCE, IT DOES NOT -- THEY TRIED TO
 5   GET IT IN FROM DERIVATION.  THEY CAN'T.
 6          THEY'VE TRIED TO GET IT IN FOR NOW
 7   INCORRECT INVENTORSHIP.  THEY CAN'T.  IT HAS
 8   ABSOLUTELY NO RELEVANCE.
 9          AND THE 403 ISSUES, GIVEN JUDGE GREWAL'S
10   ORDER, WHY IT'S IN THERE, WHAT IT COULD MEAN, WHAT
11   THE RELEVANCE OF IT IS GOING TO BE INCREDIBLY
12   CONFUSING TO THIS JURY.
13          THE COURT:  I THINK THAT THERE COULD BE
14   A, A SCOPE THAT'S CARVED OUT THAT REBUTS APPLE'S
15   MAGICAL, REVOLUTIONARY STORY.
16          MR. VERHOEVEN:  EXACTLY, YOUR HONOR.
17          THE COURT:  BUT DO YOU SEE, IT'S GOING TO
18   BE CLOSE TO THE LINE BECAUSE THERE HAVE BEEN
19   RULINGS THAT IT'S NOT COMING IN FOR INVALIDITY.  SO
20   IF THERE'S A WAY THAT YOU CAN CARVE OUT THE
21   SCOPE --
22          MR. VERHOEVEN:  I WILL REPRESENT, YOUR
23   HONOR, WE WILL NOT ARGUE THAT THAT GOES TO
24   INVALIDITY.
25          THE SOLE PURPOSE FOR THIS IS TO SHOW THE
```

```
 1    STORY OF HOW THE DESIGN TEAM CAME UP WITH THE

 2    DESIGN AND IT'S PROBATIVE BECAUSE IT SHOWS, YOUR

 3    HONOR, THAT COMPETITORS GET INSPIRED BY OTHERS.

 4            AND WHAT WE HAVE HERE IS AN ALLEGATION

 5    AGAINST MY CLIENT, YOUR HONOR, THAT WE'RE SLAVISHLY

 6    COPYING -- OR SLAVISHLY COPYING, HOWEVER YOU

 7    PRONOUNCE THAT, YOUR HONOR -- AND WE -- THERE'S TWO

 8    THINGS THAT ARE IN THIS MOTION THAT WE FILED THIS

 9    MORNING THAT ARE CRITICAL, I THINK, AND ONE GOES TO

10    THIS SHOWING THAT, IN FACT, JUST LIKE WE LOOK TO

11    COMPETITORS TO GET INSPIRED, SO DOES APPLE.

12            AND IN FACT, IN THE CREATION OF THE

13    INITIAL IPHONE, THE EVIDENCE IS GOING TO SHOW, YOUR

14    HONOR, THAT APPLE'S DESIGN TEAM STARTED OUT WITH A

15    FORM FACTOR THAT LOOKED LIKE THE OLD IPOD.  THEY

16    CALLED IT THE EXTRUDED FORM FACTOR.

17            THE COURT:  LET ME ASK YOU A QUESTION.

18    WOULD YOU BE ABLE TO -- I'D LIKE A PROFFER ON --

19    BECAUSE I DO THINK IT IS RELEVANT TO REBUT THE

20    CREATION STORY.

21            MR. VERHOEVEN:  YES, YOUR HONOR.

22            THE COURT:  AND I DON'T THINK IT'S

23    APPROPRIATE FOR APPLE TO BASICALLY HIDE AN INVENTOR

24    ON THREE OF THE DESIGN PATENTS.

25            SO I THINK IT SHOULD COME IN, BUT I DON'T
```

```
1    THINK IT SHOULD COME IN FOR ANY PURPOSES THAT HAVE

2    BEEN EXCLUDED BY JUDGE GREWAL AND BY ME.

3             SO IS THERE SOME WAY THAT YOU CAN MAKE A

4    PROFFER AND --

5             MR. VERHOEVEN:  YES, YOUR HONOR.

6             THE COURT:  I DON'T THINK WE'RE GOING TO

7    BE DOING OPENING ANY TIME THIS MORNING, SO IS THERE

8    SOME POINT PERHAPS THAT YOU CAN PUT TOGETHER A

9    PROFFER?  I JUST DON'T WANT THERE TO BE OBJECTIONS

10   DURING OPENING.

11            MR. VERHOEVEN:  WE CAN, YOUR HONOR.  WE

12   CAN.

13            THIS IS VERY IMPORTANT TO US, YOUR HONOR,

14   SO WE -- I DON'T KNOW HOW LONG ALL THE PROCEEDINGS

15   ARE GOING TO TAKE THIS MORNING, SO I WOULD ASK FOR

16   ENOUGH TIME TO PUT IT TOGETHER.

17            BUT WE'D BE HAPPY TO DO THAT, YOUR HONOR,

18   AND YOU'LL SEE FOR YOURSELF THAT THIS IS JUST GOING

19   TO THE STORY OF HOW THEY CAME UP WITH THIS, WITH

20   THEIR DESIGN AND HOW THEY WERE INSPIRED BY ANOTHER

21   COMPANY.

22            THERE'S ANOTHER ISSUE IN THE RULINGS WE

23   GOT LATE LAST NIGHT, OR LATE LAST EVENING, YOUR

24   HONOR, THAT IS VERY, VERY CRITICAL TO US AND I

25   THINK FALLS INTO THE SAME CATEGORY.
```

```
 1                MR. MCELHINNY:  MAY I JUST BE HEARD?

 2      BEFORE WE SWITCH TOPICS, MAY I BE HEARD BRIEFLY,

 3      YOUR HONOR?

 4                THE COURT:  OKAY, GO AHEAD.

 5                MR. MCELHINNY:  THE QUESTION OF HOW APPLE

 6      COMES UP WITH ITS DESIGNS CANNOT IN ANY WAY, SHAPE,

 7      OR FORM BE RELEVANT TO THE QUESTION OF WHETHER OR

 8      NOT SAMSUNG COPIED.

 9                THERE IS NO LOGICAL CONNECTION BETWEEN

10      THAT IN ANY WAY, SHAPE, OR FORM WHATSOEVER.

11                THE QUESTION OF WHETHER IT'S

12      REVOLUTIONARY IS PRESENTED IN OUR CASE BY THE

13      JUDGMENTS OF EXTERNAL PEOPLE.

14                SO WE HAVE THE FACT THAT WHEN IT CAME

15      OUT, IT WAS RATED AS REVOLUTIONARY BY THESE OTHER

16      PEOPLE.

17                SO, AGAIN, THE QUESTION OF WHETHER

18      THERE'S ANY RELEVANCE TO THIS IS SOMETHING THAT WE

19      WOULD LIKE TO RESERVE UNTIL WE'VE ACTUALLY SEEN THE

20      PROFFER.

21                BUT -- BUT IF, IF WE LOSE THAT, IF YOU

22      LET IT IN, WE ARE GOING TO ASK THAT IT COMES IN

23      WITH A VERY SPECIFIC LIMITING INSTRUCTION ABOUT WHY

24      IT'S IN AND WHAT IT'S RELEVANT TO AND WHAT IT IS

25      NOT RELEVANT TO.
```

```
 1              THE COURT:  WELL, WHY DON'T YOU START

 2    WORKING ON THAT NOW THEN?

 3              MR. MCELHINNY:  AND -- BUT -- WE WILL

 4    ONCE WE SEE THE PROFFER.

 5              BUT GIVEN THAT POINT, GIVEN THAT POINT,

 6    IT'S INAPPROPRIATE TO RAISE IT IN THE OPENING AT

 7    ALL BECAUSE WE DON'T KNOW WHETHER IT'S GOING TO

 8    COME IN AND WE DON'T KNOW -- THERE'S NO WAY YOU'RE

 9    GOING TO GIVE A LIMITING INSTRUCTION IN THE

10    OPENING, AND SO THE CONFUSION WILL HAVE BEEN DONE

11    THERE.

12              IF THIS IS GREAT EVIDENCE, THEN YOUR

13    HONOR WILL GET TO SEE IT.  YOU'LL GET TO SEE IT

14    WITH WITNESSES TESTIFYING ABOUT IT.  YOU'LL MAKE

15    THE DECISION ABOUT WHETHER OR NOT TO GIVE A

16    LIMITING INSTRUCTION AND AT THE END OF THE CASE, IF

17    IT'S RELEVANT, IT CAN GET ARGUED.

18              BUT TRYING TO MAKE IT INTO SOMETHING THAT

19    IT'S NOT IN THE OPENING, WHEN NEITHER I HAVE ANY

20    CONTROL ABOUT IT OTHER THAN OBJECTIONS, OR YOUR

21    HONOR HAS ANY CONTROL OVER IT IS NOT THE

22    APPROPRIATE TIME TO DO IT.

23              MR. VERHOEVEN:  YOUR HONOR, WE THINK --

24              THE COURT:  WHY DON'T WE GO AHEAD AND

25    HAVE -- PREPARE THE PROFFER AS SOON AS YOU CAN.
```

```
1              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
2              THE COURT:  AND I THINK APPLE SHOULD
3     START WORKING ON A LIMITING INSTRUCTION.  I HAVE NO
4     PROBLEMS WITH GIVING A LIMITING INSTRUCTION DURING
5     OPENING OR AS PART OF THE PRELIMINARY INSTRUCTIONS.
6              MR. VERHOEVEN:  YOUR HONOR, THERE'S
7     ANOTHER ISSUE THAT'S VERY IMPORTANT TO US, AT
8     LEAST, THAT YOUR HONOR EXCLUDED SOME SLIDES, AND I
9     DON'T -- HOPEFULLY IT'S JUST A MISUNDERSTANDING.
10             BUT THIS RELATES TO SLIDES -- I DON'T
11    KNOW, DO WE HAVE OUR AUDIO/VISUAL ON?  I COULD JUST
12    PERHAPS SHOW YOU.
13             THE COURT:  SURE.  WHY DON'T YOU JUST
14    TELL ME WHAT THEY ARE.  I'M FAMILIAR WITH YOUR
15    SLIDES.
16             MR. VERHOEVEN:  OKAY.
17             THE COURT:  IF YOU GIVE ME THE NUMBER, I
18    THINK THAT'S FINE.
19             MR. VERHOEVEN:  THIS IS -- HOPEFULLY I
20    HAVE THE RIGHT NUMBERS, YOUR HONOR.
21             THE COURT:  OKAY.
22             MR. VERHOEVEN:  SO, FOR EXAMPLE, ON SLIDE
23    16, YOUR HONOR, THESE ARE DOCUMENTS THAT -- 11
24    THROUGH 19 WAS YOUR RULING.
25             THESE ARE DOCUMENTS, YOUR HONOR, THAT
```

1    YOUR HONOR WAS -- THAT I THINK APPLE SUGGESTED THAT

2    THEY -- THAT WE WERE ASSERTING THAT THEY RELATE TO

3    INVALIDITY AND PRIOR ART.

4         BUT WE'RE NOT, YOUR HONOR.  THESE

5    DOCUMENTS ARE CRITICAL TO OUR CASE AND WHAT THEY GO

6    TO, YOUR HONOR, IS INDEPENDENT DERIVATION, SO

7    YOU -- AS YOUR HONOR WELL KNOWS, APPLE IS ALLEGING

8    THAT SAMSUNG COPIED THE APPLE DESIGN.

9         WHAT THESE DOCUMENTS GO TO, YOUR HONOR,

10   THEY'RE INTERNAL SAMSUNG DOCUMENTS.  THEY PREDATE

11   THE ANNOUNCEMENT OF THE IPHONE, YOUR HONOR, AND

12   THEY SHOW THAT SAMSUNG INTERNALLY, BEFORE HAVING

13   KNOWN ANYTHING ABOUT THE IPHONE, THERE WAS NO

14   KNOWLEDGE PRIOR TO JANUARY OF 2007 OF AN IPHONE,

15   APPLE KEPT THAT STRICTLY SECRET AND THEY ANNOUNCED

16   IT IN JANUARY OF 2007.

17        THESE DOCUMENT ARE FROM 2006, YOUR HONOR,

18   AND WHAT THEY GO TO IS NOT INVALIDITY.  WE'RE NOT

19   ARGUING THEM AS THE INVALIDITY OF THE APPLE

20   INTELLECTUAL PROPERTY.

21        BUT WE'RE REBUTTING THE ALLEGATION THAT

22   WE COPIED BY SHOWING THAT PRIOR TO THE ISSUANCE,

23   PRIOR TO THE ANNOUNCEMENT OF THE IPHONE, THAT IN

24   DEVELOPMENT WITHIN SAMSUNG WERE PHONES THAT HAD

25   VERY SIMILAR FORM FACTORS.

```
 1              FOR EXAMPLE, IF YOU LOOK AT SLIDE 17,

 2    YOUR HONOR, THIS IS FROM AN INTERNAL SAMSUNG

 3    DOCUMENT DATED SEPTEMBER 14TH, 2006, PRIOR TO THE

 4    ISSUANCE -- PRIOR TO THE ANNOUNCEMENT OF THE

 5    IPHONE.

 6              AND YOU CAN SEE FOR YOURSELF, YOUR HONOR,

 7    IN THE SLIDE, IT'S VERY PROBATIVE OF INDEPENDENT

 8    DEVELOPMENT.

 9              IT SHOWS -- BY LOOKING AT IT YOU CAN SEE

10    IT SHOWS A -- IF WE JUST PUT IT UP THERE, YOU CAN

11    SEE IT ON THE SCREEN, YOUR HONOR, IT SHOWS A LARGE

12    SCREEN WITH A RECTANGULAR SHAPE, FORM FACTOR WITH

13    ROUNDED CORNERS.

14              AND IT ALSO SHOWS, TO THE RIGHT, THAT IN

15    DEVELOPMENT WITHIN SAMSUNG, PRIOR TO THE ISSUANCE

16    OF THE IPHONE, THEY ALREADY WERE DEVELOPING STACKS

17    OF ICONS WITH ROUNDED CORNERS, WHICH IS ANOTHER ONE

18    OF THE PIECES OF INTELLECTUAL PROPERTY THAT APPLE

19    IS SAYING SAMSUNG COPIED.

20              THE COURT:  WELL, THESE -- YOU KNOW,

21    JUDGE GREWAL ORDERED THAT THESE SHOULD HAVE BEEN IN

22    SAMSUNG'S CONTENTION INTERROGATORY RESPONSES, BOTH

23    AS TO INVALIDITY AND AS TO NON-INFRINGEMENT, AND

24    THOSE WERE NOT DISCLOSED.

25              MR. VERHOEVEN:  YOUR HONOR, THIS IS NOT
```

```
1    AN INVALIDITY ARGUMENT.
2              THE COURT:  I KNOW.  IT'S A
3    NON-INFRINGEMENT ARGUMENT.  BUT THE CONTENTIONS
4    ASKED FOR BOTH.  THE CONTENTIONS ASKED FOR BOTH
5    INVALIDITY AND NON-INFRINGEMENT.  CONTENTION
6    INTERROGATORIES WERE NOT LIMITED TO INVALIDITY.
7              MR. VERHOEVEN:  IT'S NOT
8    NON-INFRINGEMENT.  IT'S INDEPENDENT DERIVATION OF
9    OUR PRODUCTS.
10             THEY'RE ALLEGING COPYING, YOUR HONOR.
11   THEY'RE ALLEGING THAT WE WERE DOING ONE THING AND
12   THEN THE IPHONE CAME OUT AND WE SWITCHED TO DO
13   ANOTHER.
14             IT'S THE COPYING ALLEGATIONS THAT THEY'RE
15   MAKING, YOUR HONOR.  WE'RE NOT POINTING TO THIS AND
16   SAYING THIS SHOWS NON-INFRINGEMENT, YOUR HONOR.
17   WE'RE POINTING TO THIS TO SHOW WE DIDN'T COPY.
18             AND IF YOU LOOK AT --
19             THE COURT:  ALL RIGHT.  SO TELL ME THE
20   DATE THAT THEY WERE IN YOUR CONTENTION
21   INTERROGATORY RESPONSES.
22             MR. VERHOEVEN:  I CAN'T TELL YOU OFF THE
23   TOP OF MY HEAD.
24             THE COURT:  WHEN DID YOU RAISE THIS
25   INDEPENDENT DERIVATION THEORY?
```

```
 1              MR. VERHOEVEN:  I'LL HAVE TO GO BACK --

 2              THE COURT:  MARCH 14TH?

 3              MR. VERHOEVEN:  I'LL HAVE TO GO BACK AND

 4    CHECK TO SEE IF THERE'S A CONTENTION ROG AS TO

 5    INDEPENDENT DERIVATION, YOUR HONOR.

 6              THIS IS NOT SOMETHING THAT WE WOULD CITE

 7    TO FOR NON-INFRINGEMENT, YOUR HONOR.  IT'S

 8    SOMETHING THAT WE'RE HAVING PERCIPIENT WITNESSES --

 9              THE COURT:  UNDERSTOOD.  GIVE ME THE DATE

10    AND THE -- AND WHEREVER IT'S IN THE ECF DOCKET

11    WHERE I CAN FIND THAT THIS THEORY WAS TIMELY

12    DISCLOSED AND I'LL RECONSIDER.  OKAY?

13              MR. VERHOEVEN:  CAN WE HAVE SOME TIME TO

14    DO THAT, YOUR HONOR?

15              THE COURT:  YOU'VE GOT SIX PAGES OF TWO

16    TO THREE COLUMNS OF LAWYERS, BOTH SIDES DO, WORKING

17    ON THIS CASE.  I'M ASSUMING YOU HAVE OTHER FOLKS

18    WHO CAN WORK ON IT RIGHT NOW.  PLEASE DO SO.

19              MR. VERHOEVEN:  YES, YOUR HONOR.

20              THE COURT:  BECAUSE I WANT TO GO FORWARD

21    TODAY.

22              MR. VERHOEVEN:  YES, YOUR HONOR.

23              MR. MCELHINNY:  MAY I RAISE ONE SMALL

24    ISSUE, YOUR HONOR, WHICH I THINK IS JUST A TYPO?

25              THE COURT:  WHAT'S THAT?
```

```
 1              MR. MCELHINNY:  IT'S IN YOUR ORDER TO
 2      SAMSUNG'S OBJECTIONS TO APPLE'S OPENING SLIDES.
 3              THE COURT:  OKAY.
 4              MR. MCELHINNY:  AND CALLING YOUR
 5      ATTENTION TO APPLE'S SLIDE NUMBER 32.
 6              THE COURT:  OKAY.
 7              MR. MCELHINNY:  IF YOU SEE ALL THAT SET
 8      FROM 13 TO 32, IT HAS THE SAME TEXT EXPLAINING THE
 9      REASON, BUT THE OBJECTION WAS OVERRULED IN ALL THE
10      OTHERS AND SUSTAINED HERE, AND FROM THE TEXT, IT
11      LOOKS LIKE YOUR HONOR MEANT TO OVERRULE THE
12      OBJECTION TO 32.
13              THE COURT:  LET ME SEE.  SO 32.
14              MR. MCELHINNY:  MAY I APPROACH, YOUR
15      HONOR?
16              THE COURT:  YES.
17              (PAUSE IN PROCEEDINGS.)
18              THE COURT:  YOU'RE RIGHT.
19              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
20              THE COURT:  OKAY.  WHAT ELSE?
21              MR. VERHOEVEN:  I HAVE ONE --
22              THE COURT:  SO YOU'RE GOING TO MAKE A
23      PROFFER --
24              MR. VERHOEVEN:  YES, YOUR HONOR.
25              THE COURT:  -- ON MR. NISHIBORI, PLEASE;
```

```
 1    APPLE IS GOING TO MAKE A PROPOSAL FOR A LIMITING

 2    INSTRUCTION; YOU'RE GOING TO GIVE ME THE DATE ON

 3    WHEN INDEPENDENT DERIVATION WAS DISCLOSED.

 4              AND THEN WHAT ELSE?

 5              MR. VERHOEVEN:  THERE'S ONE OTHER ITEM I

 6    WOULD LIKE TO RAISE, YOUR HONOR.  IT'S

 7    DEMONSTRATIVE 51 FROM THE -- FROM THE SAMSUNG

 8    SLIDES.

 9              THE COURT:  OKAY.

10              MR. VERHOEVEN:  YOUR HONOR HAD EXCLUDED

11    THAT STATING THAT IT WASN'T PREVIOUSLY DIS -- THAT

12    PARTICULAR NON-INFRINGEMENT THEORY ARE NOT BEEN

13    PREVIOUSLY DISCLOSED.

14              YOUR HONOR, THIS EXACT THEORY WAS ARGUED

15    AT THE PRELIMINARY INJUNCTION STAGE.  MR. SHERMAN

16    SUBMITTED A DECLARATION TO THE COURT IN WHICH HE

17    NOTED THE DIFFERENCES BETWEEN THE FLUSH FRONT FACE

18    CLAIMED IN THE '087 PATENT AND THE UPPER EDGE OF

19    THE BEZEL PATENT IN THE SAMSUNG GALAXY S4G.

20              IT'S DOCKET 172, PAGES 39 THROUGH 41.

21    THAT'S THE PRECISE NON-INFRINGEMENT THEORY SET

22    FORTH IN SLIDE 51.

23              THIS HAS BEEN IN THE CASE.  THERE'S BEEN

24    ARGUMENT IN THIS CASE THROUGHOUT.

25              THE COURT:  OKAY.  I'M SORRY.  I'M TRYING
```

```
 1    TO WRITE THIS DOWN.

 2              SO SAMSUNG SLIDE 51.  AND WOULD YOU

 3    PLEASE GIVE ME THE DOCKET NUMBER.  YOU SAID 177?

 4              MR. VERHOEVEN:  172 AT PAGES 39 THROUGH

 5    41.

 6              THE COURT:  OKAY.  I WILL GO BACK AND

 7    LOOK AT THAT.

 8              WHAT ELSE?

 9              MR. JACOBS:  YOUR HONOR, ON OUR SLIDE 54,

10    YOU HAD -- YOU GRANTED AN OBJECTION BY SAMSUNG ON

11    THE TRANSLATION.

12              THE COURT:  ON YOUR SLIDE 54?

13              MR. JACOBS:  IT WAS --

14              THE COURT:  THE TRANSLATION -- I ONLY

15    HAVE 58 AS AN EXHIBIT THAT A TRANSLATION OBJECTION

16    WAS MADE ON YOUR SLIDES.

17              MR. JACOBS:  GIVE ME A MINUTE, YOUR

18    HONOR.

19              YOU KNOW WHAT?  THE NUMBERING CHANGED

20    BECAUSE -- I'M SORRY, MY ERROR, YOUR HONOR.  OUR

21    SLIDE 58 IN THE NEW DECK, BECAUSE WE DELETED SOME

22    SLIDES, WAS 54.

23              THE COURT:  ALL RIGHT.

24              MR. JACOBS:  THE TRANSLATION ISSUE WAS

25    DULL VERSUS PLAIN, AND IT WAS LATE RAISED BY
```

```
1    SAMSUNG.

2                 ACTUALLY, WE DIDN'T EVEN KNOW ABOUT THE

3    TRANSLATION ISSUE UNTIL THEY OBJECTED TO THE SLIDE,

4    BUT IN THE INTEREST OF MOVING FORWARD, WE'VE AGREED

5    TO THEIR TRANSLATION AND WOULD PROPOSE, THEREFORE,

6    TO RESTORE THAT SLIDE AND THE EXHIBIT WITH THE

7    SAMSUNG TRANSLATION.

8                 MS. MAROULIS:  YOUR HONOR, WE NEED TO

9    PREVIEW THE TRANSLATION.  THE TRANSLATION PROCESS

10   MEETING IS CONTINUING.  THEY HAD ANOTHER MEETING

11   YESTERDAY.  SO WE WANT TO VIEW THAT SLIDE AND SEE

12   HOW THEY'RE GOING TO USE THE LANGUAGE.

13                MR. MCELHINNY:  WELL, THE PURPOSE OF THE

14   MEET AND CONFER WAS TO HAVE ALL THESE THINGS

15   RESOLVED BEFORE THE OPENING DAY.

16                WHAT WE GET IS WE HAD A LIST OF DOCUMENTS

17   THERE WERE DISPUTES ABOUT, THOSE WERE RESOLVED, WE

18   SENT THEM THE SLIDES AND THEY LOOKED AT --

19                THE COURT:  I'M SORRY TO INTERRUPT.  IF

20   THE ISSUE WAS DULL VERSUS PLAIN AND APPLE HAS

21   ACCEPTED SAMSUNG'S TRANSLATION, THEN WHAT'S THE

22   PROBLEM?

23                MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

24   WE'LL ACCEPT THAT.

25                THE COURT:  ALL RIGHT.  SO THEN 19 WILL
```

1      COME IN AND I WILL ACCEPT SAMSUNG'S TRANSLATION.

2              ALL RIGHT.  ANY OTHERS?

3              MR. VERHOEVEN:  YEAH.  I HAVE A REQUEST

4      FOR A POINT OF CLARIFICATION ON THE MOTION IN

5      LIMINE WE FILED, YOUR HONOR, WITH RESPECT TO

6      DISCUSSIONS OR MENTIONS OF STEVE JOBS.

7              THE COURT:  YES.

8              MR. VERHOEVEN:  IN THE APPLE SLIDES, AS I

9      PREDICTED --

10             THE COURT:  I THINK THOSE SLIDES ARE

11     FINE.

12             MR. VERHOEVEN:  YOUR HONOR, THERE'S A

13     SLIDE HERE THAT -- FROM THE --

14             THE COURT:  PATENT AND TRADEMARK OFFICE?

15             MR. VERHOEVEN:  YEAH.  I MEAN, THAT'S

16     COMPLETELY PREJUDICIAL, YOUR HONOR.  THEY'VE GOT A

17     PICTURE OF HIM THERE.

18             YOU KNOW HE'S GOING TO GET UP AND TALK

19     ABOUT IT AND TRY TO INFLUENCE THE JURY AND

20     PREJUDICE THE JURY INTO THIS POPULARITY CONTEST

21     ISSUE WE TALKED ABOUT BEFORE.

22             YOUR HONOR ALREADY GRANTED THE MOTION IN

23     LIMINE.

24             THE COURT:  BUT IT'S THE IPHONE DESIGN

25     THAT THE PATENT OFFICE IS --

```
 1                    MR. MCELHINNY:  IT'S A PATENT OFFICE --

 2                    THE COURT:  -- RECOGNIZING.

 3                    MR. MCELHINNY:  THE FACT THAT THE PATENT

 4      OFFICE DID THIS, THE FACT THAT THIS IS A PUBLIC

 5      DISPLAY -- WE DIDN'T PUT THE PICTURE OF STEVE JOBS

 6      ON THERE.

 7                    THE COURT:  THAT'S OVERRULED.  LET'S MOVE

 8      ON.  I GOT THIS -- I GOT NISHIBORI; INDEPENDENT

 9      DERIVATION; AND SLIDE 51.

10                    ARE THERE ANY OTHERS YOU'D LIKE TO RAISE?

11                    AND I'LL GO BACK AND LOOK AT THOSE.

12                    MR. VERHOEVEN:  THERE'S ONE MORE AND

13      MR. ZELLER WILL HANDLE IT.

14                    THE COURT:  OKAY.

15                    MR. ZELLER:  AND THIS GOES TO THE HOME

16      BUTTON DOCUMENT.

17                    THE COURT:  I'M SORRY.  EXCUSE ME.

18                    (PAUSE IN PROCEEDINGS.)

19                    THE COURT:  GO AHEAD, PLEASE.

20                    MR. ZELLER:  THANK YOU, YOUR HONOR.

21                    THIS GOES TO DEMONSTRATIVE 29.

22                    THE COURT:  29?

23                    MR. ZELLER:  YES.

24                    THE COURT:  ONE SECOND, PLEASE.  LET ME

25      JUST FIND THAT.
```

```
 1                ALL RIGHT.  GO AHEAD, PLEASE.

 2                MR. ZELLER:  THANK YOU, YOUR HONOR.

 3                THIS IS A PUBLICLY FILED APPLE

 4    APPLICATION WITH THE UNITED STATES PATENT AND

 5    TRADEMARK OFFICE.

 6                IT GOES TO THE HOME BUTTON WHICH, AS THIS

 7    APPLICATION SAYS, IS SOMETHING THAT APPLE SAID TO

 8    THE PATENT OFFICE WAS A PROMINENT, CONSISTENT AND

 9    UNMISTAKABLE FEATURE OF APPLE PRODUCT DESIGN FOR

10    FIVE YEARS.

11                THE COURT:  OKAY.  JUST GIVE ME THE

12    TIMELY DISCLOSURE INFORMATION, BECAUSE THAT'S ALL

13    THIS IS GOING TO RIDE ON.  SO IF YOU GIVE ME THE

14    TIMELY DISCLOSURE INFORMATION, I'LL RECONSIDER.

15                MR. ZELLER:  IT WAS, YOUR HONOR.  IT WAS

16    DISCLOSED IN EXPERT DISCOVERY IN RESPONSE TO

17    APPLE'S EXPERT ON TRADE DRESS, PROFESSOR WINER,

18    W-I-N-E-R.

19                AND ITS PURPOSE AND THE REASON WHY IT WAS

20    PRODUCED THEN WAS IN ORDER TO IMPEACH AND REBUT

21    PROFESSOR WINER'S THEORIES ABOUT THE TRADE DRESS.

22    HE DID NOT TAKE THIS INTO ACCOUNT, WHICH WE BELIEVE

23    IS A SIGNIFICANT FLAW IN HIS APPROACH.

24                WE OBVIOUSLY COULD NOT HAVE KNOWN WHAT

25    HIS THEORY AND APPROACH WAS UNTIL HE GAVE US HIS
```

1    EXPERT REPORT.

2              I QUESTIONED HIM ON THIS DOCUMENT 59 AT

3    HIS DEPOSITION DURING EXPERT DISCOVERY.

4              SO THIS WAS TIMELY DISCLOSED, TIMELY USED

5    DURING A DEPOSITION.

6              I WOULD ALSO NOTE, IT IS AN APPLE

7    PUBLICLY FILED DOCUMENT.

8              WE ALSO USED IT IN THE '79 --

9              THE COURT:  OKAY.  SO YOU DIDN'T PRODUCE

10   THIS DURING FACT DISCOVERY?

11             MR. ZELLER:  CORRECT.

12             THE COURT:  THAT CUT OFF AS MARCH 9TH,

13   RIGHT?  OKAY.  WAS IT IN YOUR CONTENTION

14   INTERROGATORY RESPONSES THAT WERE SERVED ON

15   MARCH 14TH, I BELIEVE?

16             MR. ZELLER:  THERE WERE NO

17   INTERROGATORIES, YOUR HONOR, THAT ASKED FOR THIS

18   INFORMATION.

19             THE COURT:  ALL RIGHT.  AND HOW ARE YOU

20   CLASSIFYING THIS?  YOU'RE NOT SAYING THIS IS

21   NON-INFRINGEMENT?  HOW ARE YOU CLASSIFYING THIS?

22             MR. ZELLER:  NO, YOUR HONOR.

23             WE'RE USING IT TO SAY THAT APPLE'S TRADE

24   DRESS EXPERTS, WHO DON'T TAKE INTO ACCOUNT WHAT

25   APPLE HAS SAID ITSELF IS THIS PROMINENT,

```
 1    CONSISTENT, UNMISTAKABLE FEATURE, THEY HAVE
 2    COMPLETELY FACTORED THIS OUT OF THEIR ANALYSIS,
 3    THEIR EXPERT ANALYSIS, AND WE BELIEVE THAT WE'RE
 4    ENTITLED TO ARGUE THAT IT IS A SIGNIFICANT FLAW IN
 5    THEIR APPROACH.  IT'S A REASON WHY THEIR APPROACH
 6    TO TRADE DRESS SHOULD BE REJECTED.
 7              IT IS NOT ACTUALLY PROPERLY TAKING INTO
 8    ACCOUNT THE -- WHAT CONSUMERS PERCEIVE AND EVEN
 9    WHAT APPLE ITSELF HAS SAID IN PUBLICLY FILED
10    DOCUMENTS.
11              THE COURT:  OKAY.  I'M SORRY.  LET ME
12    INTERRUPT YOU.
13              WHAT IS APPLE'S RESPONSE ON THIS?
14              MR. JACOBS:  YOUR HONOR HAS DRAWN A LINE
15    THAT YOU AND JUDGE GREWAL HAVE APPLIED TO BOTH
16    SIDES.  IT HAS BEEN THE ANSWERS TO THE QUESTION YOU
17    JUST ASKED, WHEN WAS IT DISCLOSED AND WAS IT TIMELY
18    DISCLOSED DURING THE DISCLOSURE PERIOD?
19              SAMSUNG HAS CONCEDED THAT THIS WAS SPRUNG
20    ON AN EXPERT AT HIS DEPOSITION AND NOT PRODUCED
21    EVEN BEFORE THAT.
22              AND ON THAT BASIS, AND ON THE BASIS OF
23    PRIOR RULINGS OF THIS COURT, INCLUDING RULINGS THAT
24    HAVE EXCLUDED INFRINGEMENT CLAIMS THAT HAVE A
25    SIGNIFICANT INTEREST, IMPACT ON OUR CASE BECAUSE
```

```
 1     THEY WERE ONLY IN EXPERT DISCOVERY, THIS EXHIBIT

 2     AND THE USE OF IT AT TRIAL AND IN THE OPENING

 3     SHOULD BE STRUCK.

 4             MR. ZELLER:  BRIEFLY, YOUR HONOR.

 5             THE -- ONE REASON WHY WE INTRODUCED THIS

 6     DOCUMENT IS TO REBUT --

 7             THE COURT:  DID YOU PRODUCE IT BEFORE --

 8     WINER IS APPLE'S EXPERT; IS THAT RIGHT?

 9             MR. JACOBS:  THAT'S CORRECT, YOUR HONOR.

10             THE COURT:  DID YOU PRODUCE IT BEFORE

11     WINER'S DEPOSITION?

12             MR. ZELLER:  NO, YOUR HONOR.

13             BUT IF I MAY ADDRESS --

14             THE COURT:  AND WHY WAS THAT?

15             MR. ZELLER:  BECAUSE, YOUR HONOR, I'LL

16     REMIND THE COURT THAT THE ARTICLES THAT APPLE IS

17     RELYING UPON --

18             THE COURT:  YOU MUST HAVE HAD IT BEFORE

19     THE DEPOSITION, RIGHT?  DON'T TELL ME YOU FOUND IT

20     IN THE MIDDLE OF HIS DEPOSITION.

21             MR. ZELLER:  WE FOUND IT THAT DAY, YOUR

22     HONOR.  THAT WAS THE DAY THAT WE FOUND IT.

23             APPLE DID NOT PRODUCE IT.  THERE WERE

24     ORDERS THAT CERTAINLY REQUIRED APPLE TO PRODUCE

25     SUCH STATEMENTS ABOUT ITS TRADE DRESS.  IT DID NOT
```

```
 1   DO IT.  WE FOUND IT THROUGH OUR OWN INDEPENDENT
 2   RESEARCH.
 3           TO BE MORE SPECIFIC IN TERMS OF WHAT THIS
 4   REBUTS, YOUR HONOR, THE COURT WILL RECALL THAT ALL
 5   THESE ARTICLES THAT APPLE IS RELYING ON WERE
 6   THEMSELVES NOT PRODUCED UNTIL EXPERT DISCOVERY.
 7           WE MOVED IN LIMINE ON THAT VERY POINT
 8   BECAUSE WE DID NOT THINK THEY WERE TIMELY
 9   DISCLOSED.  THE COURT OVERRULED THAT OBJECTION.
10           THIS RESPONDS TO THE ARTICLES AS WELL.
11           APPLE IS GOING TO BE INTRODUCING THESE
12   ARTICLES ABOUT WHAT IS SUPPOSEDLY FAMOUS,
13   WELL-KNOWN AND DISTINCTIVE AND THE LIKE ABOUT THE
14   APPLE TRADE DRESS.
15           THIS IS AN APPLE STATEMENT TO REBUT
16   THOSE.
17           SO, YOUR HONOR, THE IDEA THAT, THAT WE
18   SOMEHOW HAD TO ANTICIPATE THAT THEY WERE GOING TO
19   BE PRODUCING ALL THESE ARTICLES AND THAT WE'D HAVE
20   TO RESPOND TO PROFESSOR WINER -- AND THE COURT WILL
21   RECALL THAT THERE WAS VERY LITTLE TIME BETWEEN THE
22   TIME THAT EXPERT REPORTS WERE SERVED AND WHEN THESE
23   DEPOSITIONS OCCURRED.  IT WAS A MATTER OF DAYS.
24           SO, YOUR HONOR, THIS IS NOT A MATTER OF
25   US SANDBAGGING OR THAT THEY DIDN'T KNOW.
```

```
1              THE OTHER POINT I WOULD MAKE, YOUR HONOR,

2    IS THAT THIS WAS ALSO LITIGATED IN '796.  THE COURT

3    THE OTHER DAY POINTED OUT THAT THERE COULDN'T BE

4    SURPRISES HERE BECAUSE THE PARTIES RECENTLY

5    LITIGATED THE '796 TRIAL IN THE ITC.  THIS DOCUMENT

6    WAS USED THERE WITHOUT ANY OBJECTION.

7              THEY HAVE BEEN ON NOTICE OF THIS DOCUMENT

8    FOR SOME PERIOD OF TIME, AND IT'S THEIR OWN

9    STATEMENT AND WE BELIEVE THAT WE'RE ENTITLED TO USE

10   IT IN ORDER TO EXPLORE APPLE'S CLAIMED TRADE DRESS

11   THEORY HERE AND IT'S PROPER REBUTTAL.

12             AND BY THE WAY, THIS WAS NEVER RAISED

13   WITH JUDGE GREWAL, NEVER.  THIS DOCUMENT IS NOT

14   EVEN ARGUABLY WITHIN THE SCOPE OF HIS ORDER.

15             MR. JACOBS:  YOUR HONOR, OUR THEORY THAT

16   OUR TRADE DRESS IS DISTINCTIVE HAS BEEN SET OUT IN

17   THE COMPLAINT.  THE AMENDED COMPLAINT LAYS OUT

18   EXACTLY WHAT THE ELEMENTS OF THE TRADE DRESS ARE.

19             SO FOR SAMSUNG TO SAY THAT THEY DIDN'T

20   KNOW WHAT WE WOULD BE ARGUING THE TRADE DRESS IS

21   UNTIL EXPERT REPORTS MAKES NO SENSE AT ALL.

22             MR. ZELLER:  THAT'S NOT MY ARGUMENT, YOUR

23   HONOR.

24             MR. JACOBS:  AND TO SAY THAT WE WOULDN'T

25   BE ARGUING THAT THAT DISTINCTIVE TRADE DRESS WAS
```

```
1    FAMOUS AS LAID OUT IN OUR COMPLAINT MAKES NO SENSE

2    AT ALL BECAUSE WE WERE CLAIMING DILUTION FROM THE

3    AMENDED COMPLAINT.

4              SO SAMSUNG HAS BEEN ON NOTICE OF OUR

5    THEORY OF THE CASE SINCE LAST JUNE AT THE LATEST.

6    THERE IS NO REASON THIS COULD NOT HAVE BEEN PICKED

7    UP BY THEM EARLIER AND THERE'S BEEN NO CLAIM OF

8    NON-PRODUCTION BASED ON SOME DISCOVERY RESPONSE.

9              THE CUT OFF WAS THE CUT OFF.  YOU HELD

10   US --

11             THE COURT:  ALL RIGHT.

12             MR. JACOBS:  YOU HELD THAT WE COULD NOT

13   ACCUSE A PHONE CALLED THE SMART GRAVITY BECAUSE WE

14   CALLED IT THE GRAVITY SMART AND WE'RE NOT MOVING

15   FOR RECONSIDERATION ON THAT.  WE'RE TAKING YOUR

16   ORDERS AND MOVING ON.

17             MR. ZELLER:  YOUR HONOR, THIS DOESN'T --

18             THE COURT:  ALL RIGHT.  WELL, THIS

19   RECONSIDERATION IS DENIED.  OKAY?

20             WHAT ELSE DO YOU HAVE?  ANYTHING ELSE?

21             WHAT IS OUR UPDATE FROM MR. YOUNGER?

22             THE CLERK:  I HAVE NOT HEARD ANYTHING,

23   WHICH I ASSUME HE'S STILL DOING HIS PRESENTATION.

24             THE COURT:  OKAY.

25             THE CLERK:  HE'LL LET ME KNOW AS SOON AS
```

```
1    THEY'RE READY.
2              THE COURT:  OKAY.  WELL, LET ME -- I'D
3    LIKE TO GO THROUGH THE JURY SELECTION QUESTIONS
4    JUST TO GIVE YOU A SENSE OF HOW I'M PLANNING TO DO
5    IT.
6              SO I'M GOING TO ASK THE PART -- PARDON
7    ME -- THE JURORS WHETHER THEY HAVE SUCH STRONG
8    FEELINGS ABOUT THE CASE BASED ON EITHER WHAT
9    THEY'VE ALREADY HEARD IN THE MEDIA, HOW THEY FEEL
10   ABOUT THE PARTIES, HOW THEY FEEL ABOUT THE U.S.
11   PATENT SYSTEM, AND JUST GET A YES OR NO ANSWER AS
12   TO WHETHER THEY CAN BE FAIR AND IMPARTIAL.
13             BUT I'M ONLY GOING TO HAVE THE
14   CONVERSATION AS TO WHETHER THAT'S A BASIS TO EXCUSE
15   THEM FOR CAUSE PRIVATELY.
16             SO WE'LL SORT OF GO THROUGH THE MORE
17   GENERAL QUESTIONS WITH EVERYONE IN THE ROOM AND
18   THEN WHEN IT'S TIME TO HAVE THE ONE-ON-ONE
19   DISCUSSIONS, THEN I'M GOING TO HAVE THE REMAINING
20   JURORS I THINK GO TO JUDGE DAVILA'S COURTROOM AND
21   SOME OF THE COURT CLERK'S OFFICE WILL REMAIN WITH
22   THEM, AND WE'LL HAVE THE ONES WHO HAVE RAISED THEIR
23   HAND THAT THEY CAN'T BE FAIR AND IMPARTIAL IN
24   JUDGE LLOYD'S JURY ROOM AND IN OUR JURY ROOM AND
25   WE'LL JUST BRING THEM IN ONE BY ONE TO HAVE A
```

```
1    CONVERSATION.
2              IF, AFTER THAT PROCESS, WE CAN GET 18,
3    THEN I DON'T FEEL A NEED TO REPLENISH OUR BOX
4    BECAUSE ALL WE NEED IS 18, ASSUMING BOTH SIDES
5    EXERCISE ALL FOUR PEREMPTORIES THAT YOU HAVE AND WE
6    STILL HAVE 10.
7              OBVIOUSLY IF WE'RE LESS THAN 18, THEN
8    WE'RE GOING TO HAVE TO REPLENISH.
9              THIS PANEL HAS ALREADY BEEN SCREENED FOR
10   HARDSHIP.  THEY WERE GIVEN THE DATES AND TIMES OF
11   THIS TRIAL AND PREVIOUSLY REPRESENTED THAT THEY
12   COULD MAKE THOSE DATES.
13             NOW, IT'S POSSIBLE THAT THERE'S BEEN A
14   CHANGE IN CIRCUMSTANCES AND WE MAY LOSE SOME FOR
15   HARDSHIP, BUT I -- I DON'T THINK IT SHOULD BE A
16   SIGNIFICANT NUMBER SINCE THEY'VE ALREADY BEEN
17   SCREENED FOR AVAILABILITY.
18             OKAY?  IS THAT -- SO WE WON'T FOLLOW UP
19   WITH INDIVIDUAL POTENTIAL BIASES UNTIL WE'RE IN
20   PRIVATE.
21             NOW, SOME OF THESE I THINK I'M NOT AS
22   WORRIED ABOUT AN INDIVIDUAL TAINTING THE REST OF
23   THE PANEL, SO SOME OF IT WE WILL DO.
24             BUT AS FAR AS SPECIFIC PREJUDICE MORE
25   RELATED TO THIS CASE, WE'LL DO THAT IN PRIVATE.  IS
```

```
 1    THAT OKAY?

 2              MR. LEE:  THAT'S FINE WITH APPLE, YOUR

 3    HONOR.

 4              MR. PRICE:  YES, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  DO WE HAVE ANY

 6    UPDATES?

 7              THE CLERK:  I'M CHECKING.

 8              (PAUSE IN PROCEEDINGS.)

 9              THE CLERK:  FIVE MINUTES.

10              THE COURT:  FIVE MINUTES.  OKAY.  WHY

11    DON'T WE -- IS THERE --

12              MR. MCELHINNY:  I'M SORRY.  THIS IS THE

13    HAROLD-MCELHINNY-EXPLAIN-ONE-MORE-TIME QUESTION.

14              THE COURT:  YES?

15              MR. MCELHINNY:  WHEN WE ARE EXERCISING

16    OUR STRIKES --

17              THE COURT:  YES.

18              MR. MCELHINNY:  -- WE KNOW WHO THE TEN

19    ARE IN -- WE KNOW WHO THE TEN ARE IN THE JURY PANEL

20    AND WE KNOW WHO THE EIGHT ARE THAT ARE SITTING OUT

21    HERE.

22              THE COURT:  YES.

23              MR. MCELHINNY:  DO WE KNOW THE ORDER IN

24    WHICH THE REPLACEMENT TAKES PLACE?

25              SO WE HAVE A RANDOMIZED LIST, SO IF ONE
```

```
 1    OF THE JURORS LEAVE, WE KNOW WHO THE NEXT ONE IS?
 2            THE COURT:  YES.  SO YOU'LL GET -- AS
 3    SOON AS MR. YOUNGER COMES UP, BOTH SIDES WILL GET
 4    AN ALPHABETIZED AND A RANDOMIZED LIST.  I THINK WE
 5    HAVE 72 PEOPLE COMING.
 6            THE CLERK:  74.
 7            THE COURT:  TWO MORE PEOPLE HAVE SHOWN
 8    UP.  SO WE'LL PUT THEM IN THE BOX IN ORDER.
 9            NOW, I WAS PLANNING ON, IF WE HAVE TO
10    REPLENISH, RATHER THAN HAVING EVERYONE SORT OF
11    ADJUST CHAIRS, OF JUST CALLING THE NEXT PERSON IN
12    THE LINE AND FILL IN SEAT NUMBER 3, NEXT PERSON IN
13    LINE, FILL IN SEAT NUMBER 7.  DO YOU HAVE ANY
14    OBJECTION TO THAT OR DO YOU WANT THEM ALL TO MOVE
15    UP AND HAVE NEW PEOPLE ON THE LIST COME UP AT THE
16    END?
17            MR. MCELHINNY:  THAT'S FINE.  I JUST
18    WANTED TO -- THE RANDOMIZED LIST IS THE ORDER IN
19    WHICH PEOPLE ARE SELECTED?
20            THE COURT:  YES, YES.
21            MR. MCELHINNY:  THANK YOU, YOUR HONOR.
22            THE COURT:  BUT I WASN'T PLANNING ON
23    HAVING EVERYONE HAVE TO SHIFT CHAIRS.  THE NEXT
24    PERSON IN THE LINE WILL JUST HAVE TO TAKE WHATEVER
25    EMPTY SEAT THERE IS.
```

```
 1              MR. PRICE:  THAT'S FINE.

 2              MR. LEE:  THAT'S FINE.

 3              THE COURT:  WE SHOULD HAVE THEM IN FIVE

 4   MINUTES.

 5              IS THERE ANYTHING ELSE WE NEED TO COVER?

 6   OTHERWISE WE'LL TAKE A FIVE-MINUTE BREAK.

 7              MR. LEE:  ONE MORE LOGICAL QUESTION.

 8              AT THE END OF THE ATTORNEY VOIR DIRE, I

 9   DOUBT IT WOULD -- GIVEN YOUR HONOR'S PROCEDURE THAT

10   IT IS GOING TO HAPPEN, BUT THERE IS THE POSSIBILITY

11   THAT THERE MIGHT BE OBJECTION FOR CAUSE.  WE'LL

12   TAKE THOSE BEFORE WE EXERCISE OUR STRIKES?

13              THE COURT:  YES.  THE PROBLEM IS THAT,

14   UNFORTUNATELY, NONE OF THE MICROPHONES ARE WORKING,

15   SO I NORMALLY COULD DO THIS AT A SIDE-BAR, BUT THAT

16   ONE IS NOT WORKING AND ANOTHER ONE IS NOT WORKING.

17              SO --

18              (DISCUSSION OFF THE RECORD BETWEEN THE

19   COURT AND THE REPORTER.)

20              THE COURT:  SO THEN WHAT I'M GOING TO

21   SUGGEST IS IF THERE ARE ANY FURTHER CHALLENGES FOR

22   CAUSE, MAYBE WE'LL JUST GO TO THE JURY ROOM.  WE

23   COULD JUST GO TO THE JURY ROOM, BECAUSE

24   UNFORTUNATELY, I THINK WITH OUR MICROPHONES BEING

25   BROKEN, I DON'T THINK THAT WE CAN MAINTAIN SORT OF
```

```
1     PRIVACY WITHOUT THE JURORS HEARING.

2              MR. LEE:  THAT'S FINE, YOUR HONOR.

3              THE COURT:  OKAY.  ALSO, SO YOU KNOW, I

4     LIKE TO DO THE CAUSE OUT -- THE EXCUSES AS WE'RE

5     GOING, BECAUSE I DON'T WANT TO WASTE TIME ON ASKING

6     A BUNCH OF QUESTIONS OF SOMEONE WHO'S NOT GOING TO

7     BE AROUND.  SO I'LL JUST ASK YOU IF THERE'S ANY

8     OBJECTION TO THANK AND EXCUSE JUROR SO-AND-SO FOR

9     CAUSE.

10             MR. PRICE:  YOUR HONOR, JUST FOR THE

11    PROCEDURE, ONCE IT'S ALL DONE AND THEN WE'RE

12    GETTING TOGETHER TO EXERCISE OUR PEREMPTORIES, AT

13    THAT TIME COULD WE TAKE LIKE A 20 MINUTE BREAK OR

14    SOMETHING SO -- LET THEM LEAVE THE ROOM SO THAT WE

15    CAN THEN EXCHANGE OUR CHALLENGES AND ARRIVE AT A

16    JURY?  RATHER THAN HAVE THEM SIT HERE AND WAIT FOR

17    US TO DO THAT.

18             THE COURT:  THE ONLY REASON I LIKE TO DO

19    THAT IS SO YOU CAN SEE PEOPLE AND REMEMBER WHICH

20    ONES THEY ARE IF THAT'S HELPFUL TO YOU TO BE ABLE

21    TO LOOK AT THEIR FACES AND SEE MORE QUICKLY WHO'S

22    GOING TO COME IN IF YOU STRIKE THAT PERSON.

23             MR. PRICE:  WE DON'T NEED THAT.

24             THE COURT:  YOU DON'T WANT THAT?

25             MR. PRICE:  I THINK A BREAK IS MORE
```

```
 1    IMPORTANT.  WE JUST DON'T WANT THEM TO SEE AND

 2    WATCH THE SAUCE BEING MADE.

 3              THE COURT:  OKAY.  WHATEVER YOUR

 4    PREFERENCE IS, THAT'S FINE.

 5              MR. LEE:  THAT MAKES GOOD SENSE.

 6              THE COURT:  OKAY.  THAT'S FINE.  SO WE'LL

 7    JUST GO AHEAD AND EXCUSE THEM DURING THAT PERIOD.

 8              ANY OTHER REQUESTS ON HOW YOU'D LIKE THIS

 9    DONE?

10              MR. LEE:  NOT FOR APPLE, YOUR HONOR.

11              THE COURT:  OKAY.

12              MR. PRICE:  NOTHING FROM SAMSUNG, YOUR

13    HONOR.

14              THE COURT:  AND WOULD YOU PLEASE JUST

15    REMIND ME IF I FORGET, BECAUSE I NORMALLY KEEP THEM

16    IN THE BOX SO YOU CAN KIND OF LOOK AT THEM AND

17    REMIND YOURSELVES AS TO WHO YOU'RE GETTING NEXT IF

18    YOU STRIKE THAT ONE OR NOT.  JUST REMIND ME,

19    PLEASE.

20              OKAY.  THEN WHY DON'T WE TAKE A FEW

21    MINUTE BREAK SO THAT OUR PANEL CAN ARRIVE.

22    APPARENTLY MR. YOUNGER -- DID HE SAY THEY'RE DONE?

23    HE SAYS THEY'RE JUST ABOUT DONE.

24              OKAY.  WE'LL TAKE A FEW MINUTE RECESS.

25    THANK YOU.
```

```
 1                (WHEREUPON, A RECESS WAS TAKEN.)
 2                THE COURT:  OKAY.  LET'S JUST GO BACK ON
 3      THE RECORD A MINUTE.
 4                WITH REGARD TO SAMSUNG'S SLIDE 51, WE
 5      HAVE CONFIRMED THAT IT WAS DISCLOSED, SO APPLE'S
 6      OBJECTION IS OVERRULED WITH REGARD TO SLIDE 51.
 7                WITH THE INDEPENDENT DERIVATION, THAT I'M
 8      DENYING THE MOTION FOR RECONSIDERATION.  IT WASN'T
 9      TIMELY DISCLOSED.  IT IS ESSENTIALLY INVALIDITY
10      THAT YOU INVENTED IT FIRST.
11                NOW, WITH REGARD TO THIS SLIDE 29 -- WITH
12      REGARD TO SLIDE 29, I'M GOING TO -- WELL, I GUESS I
13      WOULD LIKE A LITTLE BIT OF INFORMATION ON IF IT
14      REALLY IS REBUTTAL OR NOT.
15                AND THEN CAN YOU ALL HAVE JUST SOMEONE IN
16      OUR TEAMS DO JUST LIKE A ONE PARAGRAPH
17      EXPLAINING -- I MEAN, I MIGHT MAKE AN EXCEPTION
18      BECAUSE THIS IS AN APPLE DOCUMENT.
19                IS THERE A JUROR OUT THERE?  CAN WE KEEP
20      THAT DOOR CLOSED?  ARE THEY OUT THERE IN THE
21      HALLWAY?  CAN THEY HEAR WHAT I'M SAYING?
22                THE MARSHAL:  I DON'T BELIEVE SO, YOUR
23      HONOR.
24                THE COURT:  OKAY.  IT'S AN APPLE
25      DOCUMENT.  IT'S A PUBLIC DOCUMENT.  SO CAN YOU JUST
```

```
1     HAVE SOMEONE PREPARE, LIKE, A ONE PARAGRAPH --

2               MR. JACOBS:  WILL DO, YOUR HONOR.

3               THE COURT:  -- ON SLIDE 29?

4               BUT SLIDE 51 IS IN.  THE OBJECTION IS

5     OVERRULED.

6               INDEPENDENT DERIVATION THEORY, MOTION FOR

7     RECONSIDERATION IS DENIED.

8               AND I'LL WAIT TO GET THE NISHIBORI ORDER

9     FROM YOU.

10              MR. VERHOEVEN:  YOUR HONOR, I THOUGHT YOU

11    SAID THAT YOU WOULD GIVE US AN OPPORTUNITY TO MAKE

12    A SHOWING THAT THESE DOCUMENTS, THE INDEPENDENT --

13    YOU'RE REFERRING TO AN INDEPENDENT DERIVATION

14    BECAUSE THAT ALSO GOES TO REBUT WILLFULNESS.

15              THIS IS VERY IMPORTANT TO US FOR OUR

16    CASE.  WE'D LIKE THE OPPORTUNITY TO SHOW YOU THAT

17    THERE WAS NO -- THAT THERE -- THAT AN EXCLUSION IS

18    IMPROPER HERE, YOUR HONOR.  THAT'S VERY IMPORTANT

19    TO US IN THIS CASE.

20              WHAT WE'VE GOT HERE IS AN OBJECTION --

21              THE COURT:  GIVE ME ONE PARAGRAPH.  OKAY?

22    BOTH SIDES GIVE ME ONE PARAGRAPH ON SLIDE 59.

23              ALL RIGHT.  ARE WE READY TO GO?

24              THE CLERK:  ALMOST.

25              DO YOU WANT ME TO GIVE COUNSEL COPIES OF
```

```
 1   THIS AS WELL, THE QUESTIONNAIRE?

 2              THE COURT:  THAT'S FINE.  THANK YOU.

 3              (PAUSE IN PROCEEDINGS.)

 4              THE CLERK:  ARE WE READY TO HAVE THEM

 5   BROUGHT IN?

 6              THE COURT:  YES, PLEASE.

 7              (PAUSE IN PROCEEDINGS.)

 8              THE CLERK:  IF ALL THE POTENTIAL JURORS

 9   COULD PLEASE STAND AND RAISE YOUR RIGHT HANDS,

10   PLEASE.

11              (PROSPECTIVE JURORS SWORN.)

12              JURORS:  I DO.

13              THE CLERK:  THANK YOU.

14              THOSE WHO HAVE A SEAT CAN SIT AND THE

15   REST OF YOU WON'T BE STANDING FOR LONG BECAUSE

16   WE'RE GOING TO CALL A BUNCH OF PEOPLE UP HERE.

17              OKAY.  THE FIRST FEW NAMES, THE FIRST

18   SEVEN NAMES WILL GO IN THE BACK ROW, STARTING UP

19   HERE BY THE WATER COOLER, AND THE SECOND ROW WILL

20   GO THE SAME WAY, AND SAME FOR ALL THE OTHER ROWS.

21              CHAIR NUMBER 1 WILL BE SELFIA HALIM;

22   STEVE OKAMOTO; VELVIN HOGAN; TERRY BELLA;

23   LUZVIMINDA ROUGIERI; NICOLE FLAVIN; MARK BURGE;

24   LYNN LEROSE; MANUEL REYES; RONALD TRIPIANO;

25   MARICRUZ FRIESEN; CHRISTINE HUYNH; BRIAN BARRAGAN;
```

```
 1    PETER CATHERWOOD; CASSANDRA PHAN; KYLE DEPRIEST;

 2    SUNIL SHAH; CHRISTOPHER ROGERS; AVI TEPMAN; AARTI

 3    MATHUR; MANUEL ILAGAN; DAVID DUNN; DENISE HOLLOWAY;

 4    DAVID KRETZMANN; EVAN COYLE; SING WONG; MARK

 5    FLADELAND; KERM LADWIG; AMIR SAYAH SINA; PAUL

 6    WARMAN; JENNIFER DOMINGO; HARVEY THORPE; KWOKFU

 7    CHIU; SHERRY HUMPHRY, AND ANASTACIA JARO.

 8               (PAUSE IN PROCEEDINGS.)

 9               THE COURT:  OKAY.  THANK YOU.  WELL,

10    WELCOME.  THANK YOU SO MUCH FOR YOUR SERVICE.

11               WE ARE GOING TO RESPECT YOUR TIME AND TRY

12    TO BE AS EFFICIENT AS POSSIBLE.

13               AND LET ME TELL YOU A LITTLE BIT ABOUT

14    THIS PARTICULAR CASE AND WHAT WE'RE ABOUT TO DO

15    THIS MORNING.

16               THIS CASE IS ENTITLED APPLE, INC., TO

17    WHICH I'LL REFER TO AS APPLE, VERSUS SAMSUNG

18    ELECTRONICS COMPANY, SAMSUNG ELECTRONICS AMERICA,

19    AND SAMSUNG TELECOMMUNICATIONS AMERICA, AND I WILL

20    REFER TO THOSE ENTITIES AS SAMSUNG.

21               AND IN THIS CASE, APPLE ACCUSES SAMSUNG

22    OF PATENT INFRINGEMENT; TRADE DRESS DILUTION AND

23    INFRINGEMENT; VIOLATION OF ANTITRUST LAW; AND

24    BREACH OF CONTRACT; AND SAMSUNG ACCUSES APPLE OF

25    PATENT INFRINGEMENT.
```

```
1              SO I THINK THAT IF YOU ARE ULTIMATELY

2    SELECTED AS A JUROR, THIS WILL BE A VERY

3    INTERESTING CASE AND WE WILL TRY TO KEEP THIS ON A

4    TIGHT TIME FRAME TO RESPECT YOUR TIME.

5              AND WHAT WE'RE DOING THIS MORNING IS A

6    PROCESS OF JURY SELECTION, WHICH MEANS THAT BOTH

7    SIDES ARE ENTITLED TO HAVE A FAIR AND IMPARTIAL

8    JURY.

9              WHAT THAT MEANS IS THAT WHOEVER IS

10   SELECTED AS A JUROR WOULD ULTIMATELY MAKE DECISIONS

11   BASED SOLELY ON THE EVIDENCE THAT'S ADMITTED DURING

12   THE TRIAL AND APPLY THE LAW ONLY AS I INSTRUCT YOU.

13             SO WE'RE GOING TO GO THROUGH A PROCESS

14   THIS MORNING TO HELP THE PARTIES AND THE COURT

15   IDENTIFY WHO MIGHT BE AN APPROPRIATE PERSON FOR

16   THIS JURY, AND IT MAY BE THAT YOU'RE NOT AN

17   APPROPRIATE PERSON FOR THIS JURY, BUT THERE MAY BE

18   OTHER TYPES OF CASES FOR WHICH YOU WOULD BE.

19             SO FIRST OF ALL, LET ME THANK YOU SO MUCH

20   FOR YOUR SERVICE.  OUR WHOLE JURY SYSTEM WAS IN THE

21   CONSTITUTION.  OUR FOREFATHERS THOUGHT IT WAS

22   IMPORTANT TO HAVE THE COMMUNITY, TO BRING IN

23   COMMUNITY VALUES, COMMUNITY WISDOM IN OUR JUSTICE

24   SYSTEM.

25             AND THERE ARE MANY COUNTRIES THROUGHOUT
```

1    THE WORLD WHO ACTUALLY ADMIRE OUR JURY SYSTEM AND

2    ARE ACTUALLY SLOWLY INCORPORATING IT INTO THEIR OWN

3    LEGAL SYSTEMS.

4                SO YOU ARE DOING A TREMENDOUS SERVICE AND

5    WE THANK YOU.

6                WITH THAT, LET'S GO AHEAD AND BEGIN.

7                NOW, I APOLOGIZE.  WE'RE GOING TO ASK YOU

8    SOME QUESTIONS THAT ARE SOMEWHAT PERSONAL.  IF AT

9    ANY POINT YOU WANT PRIVACY, JUST PLEASE LET ME

10   KNOW.

11               OBVIOUSLY THE PARTIES ARE ENTITLED TO BE

12   HERE, SO THERE WILL BE SOME PEOPLE IN THE

13   COURTROOM, BUT YOU WON'T HAVE QUITE THIS LARGE OF

14   AN AUDIENCE WHEN WE HAVE THAT MORE PRIVATE

15   DISCUSSION.

16               ALSO, THIS JURY SELECTION PROCESS IS

17   INTENDED TO BRING OUT ANY STRONG FEELINGS THAT YOU

18   MAY HAVE, ANY STRONG LIKES OR DISLIKES THAT MAY

19   AFFECT YOUR ABILITY TO BE FAIR TO BOTH SIDES.

20               AND DURING THIS PROCESS, NO ONE IS HERE

21   TO JUDGE ANYONE AS A PERSON.  IN FACT, IF YOU'RE

22   CANDID ABOUT YOUR STRONG LIKES AND DISLIKES, YOU'RE

23   ACTUALLY DOING WHAT WE'RE ASKING YOU TO DO AND WE

24   THANK YOU FOR YOUR FRANKNESS AND THAT IS JUST A WAY

25   THAT WE CAN JUST ENSURE THAT BOTH SIDES GET A FAIR

```
 1    AND IMPARTIAL JURY.
 2              OKAY.  SO WITH THAT, LET ME ASK, BASED
 3    ON -- NOW YOU KNOW WHO THE PARTIES ARE IN THE CASE
 4    AND WHAT TYPES OF CLAIMS HAVE BEEN BROUGHT.
 5              BASED ON THAT, DOES -- WOULD YOU RAISE
 6    YOUR HAND IF YOU HAVE SUCH STRONG FEELINGS ABOUT
 7    THIS CASE, THE PARTIES, WHAT THE CHARGES AND THE
 8    CLAIMS ARE THAT YOU COULD NOT BE FAIR AND
 9    IMPARTIAL.  WOULD YOU RAISE UP YOUR JUROR NUMBERS?
10              OKAY.  LET ME JUST QUICKLY -- RAISE THEM
11    UP.  OKAY.
12              SO MR. TRIPIANO, IS THAT CORRECT?
13              PROSPECTIVE JUROR:  YES.
14              THE COURT:  AND IS IT MR. DEPRIEST?
15              PROSPECTIVE JUROR:  YES.
16              THE COURT:  AND MR. SHAH?
17              PROSPECTIVE JUROR:  YEP.
18              THE COURT:  OKAY.  SO 16, DEPRIEST; 17,
19    MR. SHAH.
20              12, IS THAT MS. HUYNH?
21              PROSPECTIVE JUROR:  YEAH.
22              THE COURT:  OKAY.  AND THEN I SAW A
23    COUPLE OTHERS -- OKAY.  IS THAT MR. LADWIG?  OKAY.
24    28, LADWIG.
25              ANYONE ELSE OTHER THAN THESE FIVE
```

```
 1    INDIVIDUALS BASED ON WHO THIS CASE IS, WHAT THE

 2    CLAIMS ARE, WHO WOULD NOT BE ABLE TO BE FAIR AND

 3    IMPARTIAL?

 4            OKAY.  THE RECORD SHOULD REFLECT THAT NO

 5    MORE HANDS HAVE BEEN RAISED.

 6            AND I'M GOING TO GO THROUGH WITH THOSE

 7    FIVE INDIVIDUALS IN PRIVATE, OKAY?  SO YOU WILL BE

 8    ABLE TO STATE YOUR REASONS, BUT WE'LL JUST DO THAT

 9    A LITTLE LATER.  OKAY?

10            LET'S MOVE ON.

11            NOW, IF YOU LOOK ON YOUR CHAIRS, THERE IS

12    A LIST OF LAWYERS, WITNESSES, AND LAW FIRMS THAT

13    ARE INVOLVED IN THIS CASE.

14            AND I WANT TO MAKE SURE YOU'RE NOT SCARED

15    OFF BY THE LENGTH OF THAT LIST.  MANY OF THOSE

16    WITNESSES ARE NOT GOING TO BE CALLED, BUT JUST TO

17    MAKE SURE THAT BOTH SIDES GET A FAIR AND IMPARTIAL

18    JURY, WE DO HAVE TO ASK WHETHER YOU'RE FAMILIAR

19    WITH ANY OF THEM.

20            (PAUSE IN PROCEEDINGS.)

21            THE COURT:  IF YOU WOULD LIKE MORE TIME

22    TO REVIEW THAT LIST OF ATTORNEYS, WITNESSES AND LAW

23    FIRMS, WOULD YOU PLEASE RAISE YOUR HAND?

24            THE RECORD SHOULD REFLECT THAT NO ONE HAS

25    RAISED THEIR HAND.
```

```
 1                 SO WHO KNOWS ANYONE ON THAT LIST?  YOU'VE

 2      HEARD ABOUT THEM, READ ABOUT THEM, YOU KNOW THEM,

 3      YOU HAVE SOME PRIOR KNOWLEDGE OR ACQUAINTANCE WITH

 4      ANY OF THEM?

 5                 IF YOU DO, WOULD YOU PLEASE RAISE YOUR

 6      HAND?

 7                 OKAY.  THAT'S MR. DEPRIEST; CORRECT?

 8                 PROSPECTIVE JUROR:  YES, MA'AM.

 9                 THE COURT:  OKAY.  AND WHO IS IT THAT YOU

10      KNOW, SIR?

11                 PROSPECTIVE JUROR:  SCOTT FORSTALL AND

12      PHIL SCHILLER.

13                 THE COURT:  AND HOW DO YOU KNOW THEM?

14                 PROSPECTIVE JUROR:  I'M AN EMPLOYEE OF

15      APPLE COMPUTER AND THEY ARE APPLE EXECUTIVES.

16                 THE COURT:  I SEE.

17                 ALL RIGHT.  ANYONE ELSE KNOW ANY OF THE

18      ATTORNEYS, WITNESSES ON THE LIST, LAW FIRMS?  IF

19      SO, PLEASE RAISE YOUR HAND.

20                 NO HANDS HAVE BEEN RAISED.

21                 OKAY.  I APOLOGIZE.  I SHOULD HAVE DONE

22      THIS FIRST.  LET ME GIVE THE PARTIES AN OPPORTUNITY

23      TO IDENTIFY THEMSELVES.  GO AHEAD, PLEASE.

24                 MR. LEE:  THANK YOU, YOUR HONOR.  LADIES

25      AND GENTLEMEN, MY NAME IS BILL LEE.  I'M ONE OF THE
```

```
1    LAWYERS REPRESENTING APPLE.

2              LET ME INTRODUCE TO YOU A FEW FOLKS.

3    FIRST, FROM APPLE, BRUCE SEWELL AND NOREEN KRALL.

4              AND THEN THE LAWYERS WHO WILL BE UP ON

5    THEIR FEET ASKING QUESTIONS DURING THE TRIAL

6    INCLUDE HAROLD MCELHINNY, MICHAEL JACOBS, RACHEL

7    KREVANS, JOE MUELLER, AND MARK SELWYN, SINCE WE ALL

8    KNOW YOUR NAMES.

9              AND DOUG GREEN AND JANEY LAIRD ARE ALSO

10   PART OF OUR TEAM.

11             THANK YOU, YOUR HONOR.

12             THE COURT:  IF YOU KNOW OF, HAVE SEEN

13   BEFORE OR HAVE PRIOR ACQUAINTANCE OR FAMILIARITY

14   WITH ANY OF THOSE INDIVIDUALS WHO HAVE JUST BEEN

15   IDENTIFIED AND HAVE JUST STOOD UP, WOULD YOU PLEASE

16   RAISE YOUR HAND?

17             THE RECORD SHOULD REFLECT THAT NO HANDS

18   HAVE BEEN RAISED.

19             MR. VERHOEVEN, PLEASE.

20             MR. VERHOEVEN:  GOOD MORNING.  MY NAME IS

21   CHARLES VERHOEVEN AND I'M COUNSEL FOR SAMSUNG.

22             AND SOME OF THE LAWYERS HERE WHO ARE

23   GOING TO BE SPEAKING IN THIS CASE ARE

24   MR. BILL PRICE, KEVIN JOHNSON, AND WE HAVE

25   VICKI MAROULIS, MR. MIKE ZELLER OVER HERE.
```

```
 1              AND AS PART OF OUR TEAM, WE ALSO HAVE

 2    REIKO HASUIKE, AND FROM SAMSUNG, VICE-PRESIDENT

 3    KEN KOREA IS HERE AS WELL.

 4              THE COURT:  IF ANY OF THE JURORS IN OUR

 5    PANEL RECOGNIZE, HAVE MET BEFORE, KNOW OF, HEARD

 6    OF, HAD ANY PRIOR ACQUAINTANCE OR RELATIONSHIP WITH

 7    ANY OF THOSE INDIVIDUALS WHO HAVE JUST STOOD UP AND

 8    BEEN INTRODUCED, WOULD YOU PLEASE RAISE YOUR HAND?

 9              ALL RIGHT.  THE RECORD SHOULD REFLECT

10    THAT NO HANDS HAVE BEEN RAISED.

11              NOW, LET ME ALSO INTRODUCE OUR COURT TEAM

12    HERE AND SEE IF YOU KNOW ANY OF US.

13              MY NAME IS LUCY KOH AND I WILL BE WITH

14    YOU THROUGHOUT THIS TRIAL AS YOUR JUDGE.

15              WE HAVE MARTHA PARKER BROWN, WHO'S OUR

16    COURTROOM DEPUTY.  SHE WILL BE INTERFACING WITH YOU

17    QUITE A BIT, SO YOU'LL DEAL QUITE A LOT WITH

18    MARTHA.

19              AND WE ALSO HAVE LEE-ANNE SHORTRIDGE, WHO

20    IS OUR COURT REPORTER.  SHE IS ACTUALLY

21    TRANSCRIBING WORD FOR WORD EVERYTHING THAT IS BEING

22    SAID.

23              SO IF YOU WOULD, PLEASE, SPEAK OUT IN

24    YOUR ANSWER.  SHE WILL NOT BE ABLE TO RECORD A

25    NODDING OR SHAKING OF THE HEAD.  YOU'LL NEED TO
```

```
 1    SPEAK OUT SO THAT SHE CAN CREATE A CLEAR TRANSCRIPT
 2    FOR US.
 3              I ALSO HAVE LAW CLERKS AND EXTERNS WHO
 4    ARE LAW STUDENTS WHO ARE HELPING ME DURING THIS
 5    SUMMER, MANY OF WHOM WILL ALL BE LEAVING DURING
 6    THIS TRIAL, BUT IF YOU RECOGNIZE ANY OF OUR TEAM --
 7    I'M GOING TO STATE THEIR NAMES AS WELL -- I'D LIKE
 8    YOU TO RAISE YOUR HAND AND LET US KNOW IF YOU KNOW
 9    OF ANY OF THESE INDIVIDUALS.
10              LAURIE DEAN, CONNIE CHAN, THOMAS FU.  I
11    HAVE OTHER FOLKS WHO ARE LEAVING BUT WHO PREVIOUSLY
12    WORKED ON THIS CASE AS WELL, JUAN VALDIEVIESO,
13    ASHER HODES, DANIEL KUO, KATE WEIS, MONICA LIENKE.
14              DOES ANYONE RECOGNIZE ANY OF THOSE NAMES,
15    HAVE HEARD OF THEM, HAD ANY PRIOR ACQUAINTANCE WITH
16    ANYONE?
17              IF YOU HAVE, WOULD YOU PLEASE RAISE YOUR
18    HAND.
19              THE RECORD SHOULD REFLECT THAT NO ONE HAS
20    RAISED THEIR HAND.
21              OKAY.  WELL, LET'S GET INTO THE QUESTION
22    OF DO YOU, A FAMILY MEMBER, CLOSE FRIEND, WORK FOR
23    OR HAVE EVER WORKED FOR APPLE, SAMSUNG, GOOGLE, OR
24    MOTOROLA?  SO I THINK A LOT OF HANDS ARE GOING TO
25    GO UP.  LET'S SEE.
```

```
 1              OKAY.  LET'S -- IF IT'S ALL RIGHT, LET'S
 2    JUST START WITH SEAT NUMBER 1 AND WE'LL JUST GO
 3    DOWN EACH ROW.
 4              OKAY.  GO AHEAD, PLEASE IS IT MS. HALIM.
 5              PROSPECTIVE JUROR:  YES.
 6              THE COURT:  GO AHEAD, PLEASE.
 7              PROSPECTIVE JUROR:  I HAVE A FRIEND WHO
 8    WORKS AT APPLE.
 9              THE COURT:  OKAY.  AND WOULD THAT IN ANY
10    WAY AFFECT YOUR ABILITY TO BE FAIR TO BOTH SIDES IN
11    THIS CASE?
12              PROSPECTIVE JUROR:  MAY NOT BE.
13              THE COURT:  YOU'RE NOT SURE?
14              PROSPECTIVE JUROR:  I'M NOT SURE.
15              THE COURT:  HAS THAT PERSON TOLD YOU
16    ANYTHING ABOUT THIS CASE?
17              PROSPECTIVE JUROR:  NO.
18              THE COURT:  ALL RIGHT.  WOULD THAT, YOUR
19    FRIENDSHIP, WOULD -- IS IT A CURRENT EMPLOYEE?
20              PROSPECTIVE JUROR:  YES.
21              THE COURT:  OKAY.  YOU EXPRESSED SOME
22    HESITATION ABOUT WHETHER THAT WOULD AFFECT YOUR
23    ABILITY TO BE FAIR AND IMPARTIAL.  IS THAT BECAUSE
24    YOU MIGHT SHOW SOME SYMPATHY TOWARDS ONE SIDE OR
25    THE OTHER?  OR TELL US A LITTLE BIT ABOUT THAT.
```

```
 1              PROSPECTIVE JUROR:  IT MIGHT.
 2              BUT ON THE OTHER HAND, I -- WELL, I'M
 3    ABOUT TO BUY A SMARTPHONE AND I'M NOT SURE WHICH
 4    ONE I'M GOING TO BUY STILL, SO THAT --
 5              (LAUGHTER.)
 6              PROSPECTIVE JUROR:  SO THAT MAKES ME
 7    THINK THAT MAYBE I'M NOT THAT PARTIAL, SO THAT'S
 8    ALL.
 9              BUT MY FRIEND THAT I HAVE AT APPLE IS
10    PRETTY CLOSE FRIEND.
11              THE COURT:  LET ME ASK, DURING THE COURSE
12    OF THIS TRIAL, COULD YOU NOT SEE THAT FRIEND AND
13    NOT TALK TO THAT FRIEND OR WOULD THAT BE A
14    DIFFICULTY FOR YOU?
15              PROSPECTIVE JUROR:  YEAH, I COULD.
16              THE COURT:  ALL RIGHT.  BECAUSE I'M GOING
17    TO ASK YOU TO DO THAT.
18              PROSPECTIVE JUROR:  I SEE.  OKAY.
19              THE COURT:  AND YOU CAN DO THAT; RIGHT?
20              PROSPECTIVE JUROR:  YES.
21              THE COURT:  OKAY.  DURING THIS TRIAL
22    YOU'RE GOING TO HEAR EVIDENCE BEING ADMITTED AND
23    I'M GOING TO INSTRUCT YOU ON THE LAW.  CAN YOU BASE
24    YOUR VERDICT, YOUR DECISION IN THIS CASE, SOLELY ON
25    WHAT YOU HEAR THAT'S ADMITTED DURING THIS TRIAL AND
```

```
1    THE LAW AS I INSTRUCT YOU?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  OKAY.  SO IF I -- YOU'RE

4    GOING TO GET A JURY INSTRUCTION THAT YOU CANNOT

5    BASE YOUR DECISION ON ANY SYMPATHY, PREJUDICE, LIKE

6    OR DISLIKE.

7              CAN YOU DO THAT?

8              PROSPECTIVE JUROR:  YES.

9              THE COURT:  OKAY.  THANK YOU.

10             LET'S GO TO MR. OKAMOTO, PLEASE.

11             PROSPECTIVE JUROR:  YES.  SO -- HELLO.

12   YEAH.

13             SO I'M CURRENTLY EMPLOYED AT GOOGLE

14   AND -- YEAH, SO THAT I RAISED MY HAND.

15             THE COURT:  ALL RIGHT.  WHAT DO YOU DO AT

16   GOOGLE?

17             PROSPECTIVE JUROR:  SO I'M A USER

18   INTERFACE DESIGNER.

19             THE COURT:  OKAY.  AND WOULD THAT IN ANY

20   WAY AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN

21   THIS CASE?

22             PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

23             THE COURT:  OKAY.  WOULD YOU BASE YOUR

24   DECISION, IF YOU'RE SELECTED AS A JUROR, SOLELY ON

25   THE EVIDENCE THAT'S ADMITTED DURING THIS TRIAL AND
```

```
1    APPLY THE LAW AS I INSTRUCT YOU?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  OKAY.  CAN YOU SET ASIDE ANY

4    SYMPATHIES, PREJUDICES, LIKES, DISLIKES?

5              PROSPECTIVE JUROR:  YES.

6              THE COURT:  OKAY.  THANK YOU.

7              WHO ELSE IN ROW 1?

8              ALL RIGHT.  NO HANDS HAVE BEEN RAISED.

9              LET'S GO TO ROW 2.  WHO ELSE IN ROW 2 HAS

10   A FAMILY MEMBER, CLOSE FRIEND OR YOU YOURSELF EVER

11   WORKED FOR APPLE, SAMSUNG, GOOGLE OR MOTOROLA?

12   NUMBER 13.

13             ALL RIGHT.  MR. BARRAGAN, GO AHEAD,

14   PLEASE.

15             PROSPECTIVE JUROR:  I HAVE A FRIEND WHO

16   WORKS AT APPLE.

17             THE COURT:  WHO USED TO OR CURRENTLY?

18             PROSPECTIVE JUROR:  CURRENTLY.

19             THE COURT:  OH.  AND WHAT IS THAT

20   PERSON'S JOB?

21             PROSPECTIVE JUROR:  I DON'T KNOW.

22             THE COURT:  LET ME ACTUALLY GO BACK TO

23   MS. HALIM.  WHAT DOES YOUR FRIEND AT APPLE DO?

24             PROSPECTIVE JUROR:  ASIC DESIGN FOR IPAD

25   AND IPHONE.
```

```
1                    THE COURT:  I'M SORRY, MR. BARRAGAN.  LET
2       ME GO BACK TO MS. HALIM A MOMENT.
3                    HAVE YOU SPOKEN TO YOUR FRIEND ABOUT HER
4       ACTUAL JOB?
5                    PROSPECTIVE JUROR:  NO, NOT -- NOT IN
6       DETAIL, BUT I KNOW HE, HE DOES ASIC DESIGN.
7                    THE COURT:  AND WHAT DO YOU YOURSELF DO?
8                    PROSPECTIVE JUROR:  I USED TO BE
9       ENGINEER, BUT NOW I WORK FOR A START-UP, MOSTLY ON
10      THE OPERATING AND FINANCE.
11                   THE COURT:  AND HOW DID YOU MEET THIS
12      FRIEND WHO CURRENTLY WORKS AT APPLE?
13                   PROSPECTIVE JUROR:  WE USED TO WORK
14      TOGETHER FOR A LONG TIME AT CISCO.
15                   THE COURT:  I SEE.  OKAY.  ALL RIGHT.
16      THANK YOU.
17                   LET'S GO BACK TO MR. BARRAGAN.  YOUR
18      FRIEND AT APPLE, HOW DO YOU KNOW THIS FRIEND?
19                   PROSPECTIVE JUROR:  I USED TO WORK WITH
20      HIM AT MY CURRENT EMPLOYER.
21                   THE COURT:  WHO IS YOUR CURRENT EMPLOYER?
22                   PROSPECTIVE JUROR:  SPACE SYSTEMS LORAL.
23                   THE COURT:  AND HOW OFTEN DO YOU SEE THIS
24      FRIEND?
25                   PROSPECTIVE JUROR:  I DON'T SEE HIM IN
```

```
1     PERSON.  IT'S MAINLY THROUGH TEXTING AND PHONE.
2              THE COURT:  OKAY.  HAVE YOU SPOKEN WITH
3     THIS FRIEND AT ALL ABOUT THIS CASE?
4              PROSPECTIVE JUROR:  NO.
5              THE COURT:  OKAY.  HOW FREQUENTLY DO YOU
6     TEXT AND PHONE YOUR FRIEND?
7              PROSPECTIVE JUROR:  MAYBE FOUR OR FIVE
8     TIMES A WEEK.  A LITTLE LESS THAN THAT I GUESS.
9              THE COURT:  OKAY.  I WOULD -- I WILL
10    INSTRUCT YOU, IF YOU'RE SELECTED AS A JUROR, THAT
11    YOU ARE NOT TO HAVE CONTACT WITH THAT FRIEND.  CAN
12    YOU DO THAT?
13             PROSPECTIVE JUROR:  YES.
14             THE COURT:  ALL RIGHT.  WOULD YOUR
15    RELATIONSHIP WITH THIS FRIEND AFFECT YOUR ABILITY
16    TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS
17    CASE?
18             PROSPECTIVE JUROR:  NO.
19             THE COURT:  ALL RIGHT.  YOU WOULD DECIDE
20    THIS CASE SOLELY BASED ON THE EVIDENCE THAT'S
21    ADMITTED AT THIS TRIAL AND APPLYING THE LAW AS I
22    INSTRUCT YOU?
23             PROSPECTIVE JUROR:  THAT IS CORRECT.
24             THE COURT:  OKAY.  THANK YOU.
25             LET'S GO TO THE THIRD ROW.  I THINK THERE
```

```
 1        WERE A COUPLE OF HANDS RAISED.

 2                 LET'S GO TO MS. PHAN.

 3                 PROSPECTIVE JUROR:  OKAY.  I HAVE A

 4        FRIEND WHO WORKS AT GOOGLE, A FRIEND THAT WORKS AT

 5        APPLE, AND A FRIEND WHO WORKS AT -- WHO WAS THE

 6        OTHER COMPANY?

 7                 THE COURT:  THEY WERE MOTOROLA AND

 8        SAMSUNG WERE THE OTHER TWO COMPANIES.

 9                 PROSPECTIVE JUROR:  OKAY.  THEN THAT'S

10        IT.

11                 THE COURT:  THAT'S IT.  OKAY.  CAN YOU

12        TELL ME, YOUR FRIEND THAT IS AT GOOGLE, IS HE OR

13        SHE CURRENTLY AT GOOGLE?

14                 PROSPECTIVE JUROR:  YEAH.

15                 THE COURT:  AND WHAT DOES HE OR SHE DO?

16                 PROSPECTIVE JUROR:  I DON'T REMEMBER.

17                 THE COURT:  OKAY.  AND HOW DO YOU KNOW

18        THIS FRIEND?

19                 PROSPECTIVE JUROR:  I'VE KNOWN HIM SINCE

20        HIGH SCHOOL.

21                 THE COURT:  OKAY.  AND HOW FREQUENTLY DO

22        YOU HAVE CONTACT WITH HIM?

23                 PROSPECTIVE JUROR:  ONCE OR TWICE A

24        MONTH.

25                 THE COURT:  ONCE OR TWICE A MONTH.  AND
```

1    THAT'S JUST SOCIAL?

2              PROSPECTIVE JUROR:  WE'RE BOTH IN A

3    NONPROFIT ORGANIZATION, SO HE HELPS OUT WITH CIRCLE

4    K.

5              THE COURT:  I WOULD INSTRUCT YOU NOT TO

6    HAVE ANY CONTACT WITH THIS PERSON DURING THE

7    DURATION OF THIS TRIAL.  CAN YOU DO THAT?

8              PROSPECTIVE JUROR:  I COULD DO THAT.

9              THE COURT:  OKAY.  WOULD YOUR

10   RELATIONSHIP WITH YOUR FRIEND AT GOOGLE IN ANY WAY

11   IMPACT YOUR ABILITY TO BE FAIR TO BOTH SIDES?

12             PROSPECTIVE JUROR:  I COULD BE FAIR.

13             THE COURT:  OKAY.  LET ME HEAR ABOUT YOUR

14   FRIEND AT APPLE.  CURRENT OR PAST EMPLOYEE?

15             PROSPECTIVE JUROR:  CURRENT.

16             THE COURT:  AND DO YOU KNOW WHAT THE JOB

17   IS?

18             PROSPECTIVE JUROR:  NO.  SHE'S JUST KNOWN

19   ME SINCE I WAS A KID, BUT WE DON'T REALLY TALK

20   ABOUT JOB STUFF.

21             THE COURT:  ALL RIGHT.  HOW FREQUENTLY DO

22   YOU HAVE CONTACT WITH THIS FRIEND AT APPLE?

23             PROSPECTIVE JUROR:  PROBABLY ONCE EVERY

24   TWO MONTHS.

25             THE COURT:  SOCIAL OR SOME OTHER CONTACT?

```
 1              PROSPECTIVE JUROR:  FAMILY STUFF.  NOT

 2    DIRECT FAMILY.  SHE'S JUST -- I JUST KNOW HER

 3    THROUGH MY COUSIN BECAUSE -- A LOT OF, LIKE,

 4    CAMPING EVENTS WITH FAMILY AND GIRL SCOUTS AND

 5    STUFF.

 6              THE COURT:  DID YOU SAY GIRL SCOUTS?

 7              PROSPECTIVE JUROR:  KIND OF, YEAH.

 8              THE COURT:  ALL RIGHT.  NOW, I WILL

 9    INSTRUCT YOU THAT YOU ARE NOT TO HAVE ANY CONTACT

10    WITH THAT PERSON DURING THIS TRIAL.  CAN YOU DO

11    THAT?

12              PROSPECTIVE JUROR:  NO PROBLEM.

13              THE COURT:  ALL RIGHT.  ANYTHING ABOUT

14    YOUR RELATIONSHIP WITH THIS FRIEND WHO CURRENTLY

15    WORKS AT APPLE THAT WOULD AFFECT YOUR ABILITY TO BE

16    FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

17              PROSPECTIVE JUROR:  I COULD BE FAIR.

18              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19              LET'S -- MR. DEPRIEST, YOU'RE A CURRENT

20    APPLE EMPLOYEE; CORRECT?

21              PROSPECTIVE JUROR:  YES, MA'AM.

22              THE COURT:  AND WHAT'S YOUR JOB THERE?

23              PROSPECTIVE JUROR:  I'M A Q.A. ENGINEER

24    FOR THE ICLOUD PRODUCT.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

```
 1                    MR. SHAH, YOU RAISED YOUR HAND.  GO

 2      AHEAD.

 3                    PROSPECTIVE JUROR:  YEAH.  MY SON WORKS

 4      AT APPLE.

 5                    THE COURT:  OKAY.  AND WHAT DOES YOUR SON

 6      DO?

 7                    PROSPECTIVE JUROR:  HE'S IN THE LEGAL

 8      DEPARTMENT, CORPORATE LAW.

 9                    THE COURT:  ALL RIGHT.  HAS HE HAD ANY

10      INVOLVEMENT IN THIS CASE THAT YOU KNOW OF?

11                    PROSPECTIVE JUROR:  WELL, WE DON'T TALK

12      ABOUT --

13                    THE COURT:  HIS WORK?

14                    PROSPECTIVE JUROR:  -- THE CASES, YES.

15                    THE COURT:  AND HE'S A CURRENT EMPLOYEE;

16      CORRECT?

17                    PROSPECTIVE JUROR:  YES.

18                    THE COURT:  ALL RIGHT.  WELL, WE'LL DELVE

19      INTO THAT A LITTLE LATER.

20                    ANYONE ELSE?  I THINK, MR. TEPMAN, YOU --

21                    PROSPECTIVE JUROR:  I HAVE A QUESTION.

22                    THE COURT:  OKAY.  MR. ROGERS?

23                    PROSPECTIVE JUROR:  I DON'T HAVE ANYONE

24      WHO WORKS AT APPLE, BUT DO I KNOW MY GRANDPARENTS

25      HAVE STOCK.  IS THAT RELEVANT AT THIS TIME?
```

```
 1                    THE COURT:  YES.  THAT WAS GOING TO BE MY
 2      NEXT QUESTION.
 3                    PROSPECTIVE JUROR:  SO SHOULD I PASS IT
 4      ON AND TALK ABOUT THAT LATER?
 5                    THE COURT:  NO, GO AHEAD.  SO YOU'RE
 6      GRANDPARENTS CURRENTLY OWN STOCK IN APPLE.  IS THAT
 7      RIGHT?
 8                    PROSPECTIVE JUROR:  YES.
 9                    THE COURT:  ARE YOU A BENEFICIARY ON
10      THEIR INVESTMENT OR ANYTHING LIKE THAT?
11                    PROSPECTIVE JUROR:  NOT DIRECTLY.  I
12      THINK BOTH THEY AND MY PARENTS WOULD HAVE TO PASS
13      ON FOR ME TO BENEFIT FROM THAT AT ALL.
14                    THE COURT:  OKAY.  WOULD THAT IN ANY WAY,
15      YOUR POTENTIAL FINANCIAL BENEFIT IN ANY WAY, OR
16      ANYTHING ABOUT YOUR GRANDPARENTS' INVESTMENT AFFECT
17      YOUR ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE?
18                    PROSPECTIVE JUROR:  I DON'T THINK SO.
19      I'M FAIRLY CERTAIN IT WOULDN'T.
20                    THE COURT:  ALL RIGHT.  WOULD YOU DECIDE
21      THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S
22      ADMITTED DURING THIS TRIAL AND APPLY THE LAW AS I
23      INSTRUCT YOU?
24                    PROSPECTIVE JUROR:  YES.
25                    THE COURT:  OKAY.  AND YOU'LL SET ASIDE
```

1    ANY SYMPATHIES OR LIKES OR DISLIKES?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

4              LET'S GO TO MR. TEPMAN, PLEASE.

5              PROSPECTIVE JUROR:  YEAH, MY SON WORKS IN

6    GOOGLE.  HE'S AN ECONOMIST.

7              THE COURT:  HE'S CURRENTLY AN ECONOMIST

8    AT GOOGLE?

9              PROSPECTIVE JUROR:  YES.

10             THE COURT:  OKAY.  HAVE YOU SPOKEN WITH

11   YOUR SON ABOUT THIS CASE?

12             PROSPECTIVE JUROR:  NO.

13             THE COURT:  ALL RIGHT.  WOULD YOUR SON'S

14   CURRENT EMPLOYMENT AT GOOGLE IN ANY WAY AFFECT YOUR

15   ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN

16   THIS CASE?

17             PROSPECTIVE JUROR:  I DON'T THINK SO.

18             THE COURT:  ALL RIGHT.  THANK YOU.

19             WHO ELSE ON THE THIRD ROW?  NO ONE ELSE?

20             ALL RIGHT.  CAN WE PLEASE GO -- DID

21   ANYONE RAISE THEIR HAND IN THE FOURTH ROW?  NO.  NO

22   HANDS HAVE BEEN RAISED.

23             FIFTH ROW.

24             ALL RIGHT.  LET'S GO TO MR., IS IT

25   FLADELAND?

```
 1            PROSPECTIVE JUROR:  YES.
 2            THE COURT:  ALL RIGHT.  IF YOU COULD
 3    PLEASE TAKE THE MICROPHONE AND -- OKAY.  GO AHEAD,
 4    PLEASE.
 5            PROSPECTIVE JUROR:  TWO FRIENDS.  ONE IS
 6    A CURRENT EMPLOYEE OF APPLE; ONE IS A FORMER
 7    EMPLOYEE OF APPLE AND NOW HE WORKS FOR AMAZON.
 8            THE COURT:  AND WHAT IS THE CONTEXT IN
 9    WHICH YOU KNOW THESE TWO FRIENDS?
10            PROSPECTIVE JUROR:  JUST FRIENDS I'VE
11    KNOWN SEVEN, EIGHT YEARS.
12            THE COURT:  HOW FREQUENTLY DO YOU
13    INTERACT WITH THE CURRENT EMPLOYEE OF APPLE?
14            PROSPECTIVE JUROR:  A COUPLE OF TIMES A
15    MONTH.
16            THE COURT:  IF I ASKED YOU -- OR I WOULD
17    INSTRUCT YOU NOT TO HAVE ANY CONTACT WHATSOEVER, NO
18    TWEETS, NO FACEBOOK, NO NOTHING WITH THAT PERSON
19    DURING THE COURSE OF THIS TRIAL, CAN YOU DO THAT?
20            PROSPECTIVE JUROR:  YES.
21            THE COURT:  ALL RIGHT.  HAS THAT CURRENT
22    EMPLOYEE TOLD YOU ANYTHING ABOUT THIS CASE?
23            PROSPECTIVE JUROR:  NO.
24            THE COURT:  ALL RIGHT.  WHAT ABOUT THE
25    FORMER APPLE EMPLOYEE WHO IS NOW AT AMAZON?  HOW
```

```
1    FREQUENTLY DO YOU INTERACT WITH THAT PERSON?

2              PROSPECTIVE JUROR:  MAYBE ONCE A MONTH.

3              THE COURT:  IS THAT IN PERSON OR JUST BY

4    ELECTRONIC --

5              PROSPECTIVE JUROR:  USUALLY IN PERSON.

6              THE COURT:  OKAY.  AND I WOULD INSTRUCT

7    YOU NOT TO HAVE ANY CONTACT WITH THAT PERSON DURING

8    THIS TRIAL.  CAN YOU DO THAT?

9              PROSPECTIVE JUROR:  YES.

10             THE COURT:  OKAY.  HAS THAT PERSON AT ALL

11   COMMENTED TO YOU ABOUT THIS CASE?

12             PROSPECTIVE JUROR:  NO.

13             THE COURT:  ALL RIGHT.  ANYTHING ABOUT

14   EITHER OF THOSE RELATIONSHIPS THAT WOULD AFFECT

15   YOUR ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES

16   IN THIS CASE?

17             PROSPECTIVE JUROR:  NO.

18             THE COURT:  OKAY.  THANK YOU.

19             MR. LADWIG, I THINK YOU RAISED YOUR

20   NUMBER.  GO AHEAD, PLEASE.

21             PROSPECTIVE JUROR:  I'M A TEN YEAR FORMER

22   EMPLOYEE, PAST EMPLOYEE OF MOTOROLA.

23             THE COURT:  ALL RIGHT.  DO YOU HAVE ANY

24   CURRENT RELATIONSHIPS WITH MOTOROLA?

25             PROSPECTIVE JUROR:  NOT REALLY, NO.
```

```
 1                THE COURT:  OKAY.  WOULD YOUR PREVIOUS

 2    EMPLOYMENT AT MOTOROLA AFFECT YOUR ABILITY TO BE

 3    FAIR AND IMPARTIAL IN THIS CASE?

 4                PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

 5                THE COURT:  ALL RIGHT.  THANK YOU.

 6                ANYONE ELSE ON ROW FIVE?

 7                OKAY.  LET'S GO TO ROW 6.  DID ANYONE

 8    RAISE YOUR CARD IN RESPONSE TO THIS QUESTION?

 9                OKAY.  THE RECORD SHOULD REFLECT THAT NO

10    HANDS HAVE BEEN RAISED.

11                ALL RIGHT.  NOW, LET'S GO TO THE STOCK

12    QUESTION THAT MR. ROGERS HAS ALREADY ANSWERED, BUT

13    LET'S SEE, WHO ELSE -- DO YOU, A FAMILY MEMBER,

14    CLOSE FRIEND HAVE ANY BUSINESS RELATIONSHIP -- AND

15    I'M GOING TO INCLUDE IN THIS QUESTION EITHER YOU

16    OWN STOCK OR YOU'RE A CONTRACTOR OR DO SOME KIND OF

17    CONSULTING WORK OR -- AND I DON'T MEAN A RETAIL

18    CUSTOMER, BUT SORT OF A BIGGER CUSTOMER/SUPPLIER,

19    THAT KIND OF RELATIONSHIP WITH APPLE, SAMSUNG,

20    GOOGLE OR MOTOROLA?

21                WOULD YOU RAISE YOUR HAND, PLEASE.

22                ALL RIGHT.  LET'S -- IT LOOKS LIKE THERE

23    ARE FOUR.

24                LET'S GO TO MR. OKAMOTO, PLEASE.  IS THE

25    MICROPHONE -- WOULD YOU PLEASE PASS THAT BACK?
```

```
1              PROSPECTIVE JUROR:  SO BEING A GOOGLE

2     EMPLOYEE, I HAVE GOOGLE STOCK OPTIONS, BUT I DON'T

3     HAVE ANYTHING WITH APPLE OR SAMSUNG.

4              THE COURT:  ALL RIGHT.  AND WOULD YOUR

5     STOCK OWNERSHIP AFFECT YOUR ABILITY TO BE FAIR AND

6     IMPARTIAL TO BOTH SIDES IN THIS CASE?

7              PROSPECTIVE JUROR:  NO.

8              THE COURT:  ALL RIGHT.  THANK YOU.

9              I BELIEVE WE HAD -- I GUESS NEXT WAS

10    MR. LADWIG, AND WHO ELSE RAISED THEIR HAND?  OKAY.

11    LET'S GO TO MR. DEPRIEST AND MR. SHAH.

12             PROSPECTIVE JUROR:  I OWN STOCK IN APPLE

13    COMPUTER.

14             THE COURT:  ALL RIGHT.  AND WOULD THAT

15    AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN

16    THIS CASE?

17             PROSPECTIVE JUROR:  NOT MY STOCK

18    HOLDINGS, NO.

19             THE COURT:  ALL RIGHT.  BUT OTHER REASONS

20    WE'LL GET INTO IN A MINUTE.

21             OKAY.  LET ME ASK MR. SHAH, OTHER THAN

22    YOUR --

23             PROSPECTIVE JUROR:  YES, MY SON AND I OWN

24    STOCK, AND I'VE DONE CONSULTING WORK AT APPLE.

25             THE COURT:  OKAY.  SO YOU AND YOUR SON
```

```
1     OWN STOCK IN APPLE?

2               PROSPECTIVE JUROR:  YEP.

3               THE COURT:  AND YOU HAVE DONE -- WHAT

4     KIND OF CONSULTING WORK HAVE YOU DONE FOR APPLE?

5               PROSPECTIVE JUROR:  COMPLIANCE ON

6     SARBAINS-OXLEY, AND I DID CONSULTING.

7               THE COURT:  WOULD YOU AND YOUR SON'S

8     STOCK OWNERSHIP AND YOUR CONSULTING WORK FOR APPLE

9     AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL TO

10    BOTH SIDES IN THIS CASE?

11              PROSPECTIVE JUROR:  I DON'T THINK SO.

12              THE COURT:  ALL RIGHT.  THANK YOU.

13              LET'S GO -- I KNOW MR. LADWIG.  ANYONE

14    ELSE IN ROW 3, 4, 5 AND 6?  WERE YOU GOING TO RAISE

15    YOUR HAND?

16              PROSPECTIVE JUROR:  YEAH.

17              THE COURT:  OKAY.  GO AHEAD, PLEASE.

18              PROSPECTIVE JUROR:  SO MY COMPANY IS

19    DOING VOICE OVER I.P. AND A LOT OF OUR CUSTOMER

20    USES GOOGLE VOICE FOR THEIR SERVICE.

21              THE COURT:  AND WHAT'S THE NAME OF YOUR

22    COMPANY?

23              PROSPECTIVE JUROR:  OBIHAI TECHNOLOGY.

24              THE COURT:  OKAY.  IS THERE ANYTHING

25    ABOUT YOUR COMPANY'S RELATIONSHIP WITH GOOGLE THAT
```

```
 1    WOULD AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL
 2    TO BOTH SIDES IN THIS CASE?
 3              PROSPECTIVE JUROR:  NO.
 4              THE COURT:  OKAY.  THANK YOU.
 5              WHO ELSE RAISED THEIR HAND IN RESPONSE TO
 6    THAT QUESTION?
 7              OKAY.  SO WE HAVE MR. LADWIG AND
 8    MR. WARMAN.
 9              ALL RIGHT.  WOULD YOU PLEASE PASS THE
10    MICROPHONE FORWARD?
11              OKAY.  LET'S GO TO MR. LADWIG.
12              PROSPECTIVE JUROR:  I'M AN APPLE
13    SHAREHOLDER.
14              THE COURT:  OKAY.  WOULD THAT IN ANY WAY
15    IMPACT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN
16    THIS CASE?
17              PROSPECTIVE JUROR:  I HAVE SEVERAL
18    THOUSAND REASONS TO FIND IN FAVOR OF APPLE, BUT I
19    COULD TRY TO BE FAIR.
20              THE COURT:  ALL RIGHT.  WELL, WE'LL --
21    OKAY.  WE'LL GET INTO THAT IN PRIVATE.
22              OKAY.  LET'S GO TO MR. WARMAN.
23              PROSPECTIVE JUROR:  I WORKED FOR APPLE
24    YEARS AGO DOING A CONSULTING PROJECT.
25              THE COURT:  HOW LONG AGO WAS THAT?
```

```
 1                PROSPECTIVE JUROR:  I THINK 2004 OR '05.

 2                THE COURT:  AND HOW LONG -- WHAT WAS THE

 3      DURATION OF YOUR CONSULTING PROJECT?

 4                PROSPECTIVE JUROR:  I WAS PROBABLY THERE

 5      ABOUT FIVE WEEKS.

 6                THE COURT:  ANYTHING ABOUT THAT

 7      CONSULTING PROJECT THAT WOULD AFFECT YOUR ABILITY

 8      TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS

 9      CASE?

10                PROSPECTIVE JUROR:  NO.

11                THE COURT:  ALL RIGHT.  THANK YOU.

12                DID ANYONE ELSE RAISE THEIR HAND TO THIS

13      QUESTION ABOUT THE BUSINESS RELATIONSHIP?

14                PROSPECTIVE JUROR:  I HAVE A QUESTION.

15                THE COURT:  YES?  AND THAT'S MR. ROGERS.

16                PROSPECTIVE JUROR:  WOULD I BE ASKED TO

17      NOT TALK TO MY GRANDMOTHER DURING THE ENTIRE CASE

18      OF THE TRIAL?

19                THE COURT:  OH, THAT'S REALLY HARD.  I'M

20      NOT GOING TO MAKE YOU DO THAT.  BUT I'M GOING TO

21      SAY THAT IF YOU GET SELECTED, YOU CANNOT --

22                PROSPECTIVE JUROR:  TALK ABOUT THE CASE?

23                THE COURT:  AT ALL.

24                PROSPECTIVE JUROR:  I WOULD CERTAINLY BE

25      WILLING TO DO THAT.
```

```
 1                THE COURT:  YOU CAN DO THAT; RIGHT?

 2                PROSPECTIVE JUROR:  YEAH, I CAN.

 3                THE COURT:  OKAY.  ALL RIGHT.  AND I --

 4     YOU KNOW, ONCE -- I WILL GIVE YOU AN INSTRUCTION

 5     THAT YOU CANNOT EVEN TALK TO EACH OTHER ABOUT THIS

 6     CASE.  YOU SHOULD TALK TO NO ONE.  IF YOU'RE

 7     SELECTED ON THE JURY, YOU SHOULD TALK TO NO ONE

 8     ABOUT THIS CASE.  YOU CAN ONLY TALK ABOUT IT WITH

 9     YOUR FELLOW JURORS ONCE EVERYTHING IS DONE AND YOU

10     GO TO THE JURY DELIBERATION ROOM.

11                CAN YOU DO THAT?

12                PROSPECTIVE JUROR:  (NODS HEAD UP AND

13     DOWN.)

14                THE COURT:  OKAY.  AND YOU WILL FIND THAT

15     ONCE PEOPLE KNOW YOU'RE ON THIS CASE, YOUR

16     NEIGHBOR, YOUR UNCLE, EVERYONE IS GOING TO HAVE A

17     VIEWPOINT AND YOU HAVE TO SAY "STOP.  I'M SORRY.

18     THE JUDGE TOLD ME THAT I CANNOT HEAR ANY COMMENTS

19     ABOUT THIS CASE.  I'D BE HAPPY TO TALK WITH YOU AT

20     A LATER POINT."

21                CAN YOU DO THAT?

22                PROSPECTIVE JUROR:  (NODS HEAD UP AND

23     DOWN.)

24                THE COURT:  ALL RIGHT.  NOW, HOW MANY OF

25     YOU HAVE READ ANY BOOKS ABOUT APPLE OR SAMSUNG?
```

```
1              OKAY.  IT LOOKS LIKE WE HAVE A FEW HANDS
2     IN ROW 1 THROUGH 3.
3              OKAY.  LET'S GO TO MS. HALIM.
4              PROSPECTIVE JUROR:  I'VE READ STEVE JOBS'
5     BOOK.
6              THE COURT:  OKAY.  AND -- OKAY.  WOULD
7     READING THAT BOOK AFFECT YOUR ABILITY TO BE FAIR
8     AND IMPARTIAL TO BOTH SIDES IN THIS CASE?
9              PROSPECTIVE JUROR:  NO.
10             THE COURT:  ALL RIGHT.  NOW -- AND WOULD
11    YOU STILL DECIDE THIS CASE BASED SOLELY ON THE
12    EVIDENCE THAT'S ADMITTED DURING THIS TRIAL?
13             PROSPECTIVE JUROR:  YES.
14             THE COURT:  OKAY.  ALL RIGHT.  ANYTHING
15    ABOUT THAT BOOK MAKE YOU LIKE OR DISLIKE ANY OF THE
16    COMPANIES INVOLVED IN THIS CASE?
17             PROSPECTIVE JUROR:  NO, NO.  I ACTUALLY,
18    YOU KNOW, THE TECHNOLOGY IS SPREAD, RIGHT?  IT'S --
19    PEOPLE USE TECHNOLOGY AND IMPROVE UPON IT, SO I
20    DON'T -- I DON'T SEE, YOU KNOW --
21             THE COURT:  OKAY.
22             PROSPECTIVE JUROR:  -- THAT IT WOULD MAKE
23    ME TO LIKE OR DISLIKE ONE.
24             THE COURT:  OR THE OTHER?  YOU CAN BE
25    FAIR TO BOTH SIDES IN THIS CASE?
```

```
 1                    PROSPECTIVE JUROR:  YES.

 2                    THE COURT:  OKAY.  SO MR. OKAMOTO, WHAT

 3        BOOK HAVE YOU READ, SIR?

 4                    PROSPECTIVE JUROR:  SO I ACTUALLY READ

 5        THE STEVE JOBS BOOK.

 6                    THE COURT:  OKAY.  ANYTHING ABOUT THAT

 7        BOOK THAT WOULD AFFECT YOUR ABILITY TO BE FAIR AND

 8        IMPARTIAL TO BOTH SIDES IN THIS CASE?

 9                    PROSPECTIVE JUROR:  NO.

10                    THE COURT:  ALL RIGHT.  ANYTHING ABOUT

11        THAT BOOK THAT MAKES YOU LIKE OR DISLIKE, FAVOR OR

12        DISFAVOR ONE OF THE SIDES IN THIS CASE?

13                    PROSPECTIVE JUROR:  NO.

14                    THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.

15                    NOW LET'S GO -- ANYONE ELSE ON ROW 1?  NO

16        HANDS HAVE BEEN -- OH, YES.  OKAY.  SO --

17                    PROSPECTIVE JUROR:  YES, I READ THE BOOK

18        OF STEVE JOBS.

19                    THE COURT:  OKAY.  AND DID THAT IN ANY

20        WAY -- OR DOES THAT IN ANY WAY AFFECT YOUR ABILITY

21        TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS

22        CASE?

23                    PROSPECTIVE JUROR:  NO.

24                    THE COURT:  OKAY.  BASED ON THAT BOOK,

25        DID THAT CREATE A LIKE OR DISLIKE, FAVOR OR
```

```
 1    DISFAVOR IN YOU THAT WOULD AFFECT YOUR ABILITY TO

 2    BE FAIR AND IMPARTIAL IN THIS CASE?

 3              PROSPECTIVE JUROR:  NO.

 4              THE COURT:  ALL RIGHT.  THANK YOU.

 5    ANYONE ELSE ON ROW 2?

 6              OKAY.  NO HANDS HAVE BEEN RAISED.

 7              OH, OKAY.  LET'S GO TO MR. TRIPIANO.

 8              PROSPECTIVE JUROR:  NOT A BOOK

 9    PARTICULARLY, BUT WALL STREET JOURNAL ARTICLE

10    TODAY --

11              THE COURT:  OH.  OKAY.

12              PROSPECTIVE JUROR:  -- THAT I READ PRIOR

13    TO KNOWING WHAT --

14              THE COURT:  WHAT THIS CASE WAS ABOUT?

15              PROSPECTIVE JUROR:  -- WHAT THIS CASE WAS

16    ABOUT.

17              THE COURT:  OKAY.  I'M GOING TO ASK YOU,

18    IF YOU WOULDN'T MIND, TO RECYCLE THAT.  WE'LL

19    RECYCLE IT FOR YOU.

20              I WOULD ASK YOU ALL TO SET ASIDE ANYTHING

21    YOU'VE PREVIOUSLY HEARD ABOUT THIS CASE AND KEEP AN

22    OPEN MIND AND DECIDE THIS CASE BASED SOLELY ON THE

23    EVIDENCE THAT IS ADMITTED DURING THE TRIAL.

24              CAN YOU DO THAT?

25              PROSPECTIVE JUROR:  WELL, PART OF THIS IS
```

```
 1    THE REASON I RAISED MY HAND TO THE VERY FIRST

 2    QUESTION.

 3              THE COURT:  AH, OKAY.  THEN YOU KNOW

 4    WHAT?  WE'LL HAVE THAT CONVERSATION IN PRIVATE.

 5    THANK YOU.

 6              ALL RIGHT.  ANYONE ELSE IN ROW 3?  WHAT

 7    ABOUT ROW 3?

 8              OKAY.  LET'S GO TO MR. DEPRIEST.  WHAT

 9    HAVE YOU READ?

10              PROSPECTIVE JUROR:  I READ THE STEVE JOBS

11    BIOGRAPHY.

12              THE COURT:  ALL RIGHT.  ANYTHING ABOUT

13    THAT BOOK THAT WOULD AFFECT YOUR ABILITY TO BE FAIR

14    AND IMPARTIAL?

15              PROSPECTIVE JUROR:  THAT BOOK DID NOT

16    CHANGE ANY OPINIONS I ALREADY HAD.

17              THE COURT:  OKAY.  ALL RIGHT.  WELL,

18    WE'LL GET INTO THAT MORE.

19              LET ME ASK MR. SHAH, DID YOU ALSO READ

20    THAT BOOK?

21              PROSPECTIVE JUROR:  SAME BOOK.

22              THE COURT:  OKAY.  DID THAT AFFECT YOUR

23    ABILITY TO BE FAIR AND IMPARTIAL?

24              PROSPECTIVE JUROR:  NO.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

```
1                I BELIEVE MR. TEPMAN?

2                PROSPECTIVE JUROR:  YEAH, SAME BOOK AND

3      SAME ANSWER.

4                THE COURT:  OKAY.  YOU CAN BE FAIR AND

5      IMPARTIAL; CORRECT?

6                PROSPECTIVE JUROR:  YEAH.

7                THE COURT:  ALL RIGHT.  AND LET'S GO TO

8      ROWS 4, 5 AND 6.  ANYONE ELSE READ ANYTHING?

9                ALL RIGHT.  THE RECORD SHOULD REFLECT NO

10     ADDITIONAL HANDS HAVE BEEN RAISED.

11               NOW THIS IS ONE, I THINK, THAT EVERYONE

12     CAN ANSWER.

13               I WANT TO KNOW WHAT KIND OF PHONE DO YOU

14     HAVE?  DO YOU HAVE A CELL PHONE?  DO YOU HAVE A

15     MOBILE PHONE?  DO YOU HAVE A SMARTPHONE?  AND

16     WHATEVER YOU HAVE, I WANT TO KNOW WHO MAKES IT.

17               SO MAYBE WE SHOULD JUST GO STRAIGHT DOWN

18     THE LINE.  CAN WE START WITH MS. HALIM JUST TO KEEP

19     IT STRAIGHT.

20               PROSPECTIVE JUROR:  I HAVE REGULAR CELL

21     PHONE.  NO SMARTPHONE YET.

22               THE COURT:  OKAY.  WHO MAKES YOUR PHONE?

23               PROSPECTIVE JUROR:  LG.

24               THE COURT:  LG, OKAY.  YOU KNOW, WHY

25     DON'T I ALSO ASK YOU, DO YOU HAVE A TABLET
```

```
 1    COMPUTER?

 2              PROSPECTIVE JUROR:  NO.

 3              THE COURT:  ALL RIGHT.  HAVE YOU EVER

 4    OWNED A PRODUCT OF EITHER APPLE OR SAMSUNG?

 5              PROSPECTIVE JUROR:  I BOUGHT -- WELL,

 6    YES.  I HAVE AN ISHUFFLE, IPOD SHUFFLE, AND I

 7    BOUGHT IPAD FOR MY NEPHEW.

 8              THE COURT:  OKAY.  ARE YOU THINKING ABOUT

 9    BUYING A PRODUCT OF EITHER COMPANY?

10              PROSPECTIVE JUROR:  YES.

11              THE COURT:  I KNOW YOU SAID YOU'RE

12    THINKING ABOUT A SMARTPHONE; RIGHT?

13              PROSPECTIVE JUROR:  YES.

14              THE COURT:  OKAY.  WHAT ARE YOU THINKING

15    ABOUT RIGHT NOW?

16              PROSPECTIVE JUROR:  THE IPHONE 5 OR THE

17    SAMSUNG GALAXY.

18              THE COURT:  ALL RIGHT.

19              (LAUGHTER.)

20              THE COURT:  OKAY.  SO LET'S GO TO

21    MR. OKAMOTO.  I WANT TO KNOW ABOUT YOUR PHONES,

22    YOUR TABLETS.

23              PROSPECTIVE JUROR:  SO BEING A GOOGLE

24    EMPLOYEE, WE GET COMPANY -- I GUESS EVERY HOLIDAY

25    WE GET A GIFT, AND USUALLY IT'S A SMARTPHONE,
```

```
 1    ANDROID SMARTPHONE.
 2              SO THE CURRENT ONE I HAVE IS A GALAXY
 3    NEXUS FROM SAMSUNG, WHICH I JUST SENT IN FOR
 4    REPAIRS, AND NOW I HAVE MY BACK-UP PHONE, WHICH IS
 5    A SAMSUNG GALAXY S II.
 6              THE COURT:  ALL RIGHT.  DO YOU HAVE A
 7    TABLET COMPUTER AS WELL?
 8              PROSPECTIVE JUROR:  I DO HAVE -- THERE IS
 9    AN IPAD -- WELL, THERE'S TWO IPADS IN OUR HOUSE,
10    AND I ALSO HAVE A GALAXY TAB 7 FROM SAMSUNG.
11              THE COURT:  OKAY.  WHO BOUGHT THE
12    DIFFERENT TABLETS?
13              PROSPECTIVE JUROR:  THAT WOULD BE ME.  I
14    DID.
15              THE COURT:  YOU BOUGHT ALL OF THEM?
16              PROSPECTIVE JUROR:  YEAH.
17              THE COURT:  OKAY.  ANY OTHER PRODUCTS OF
18    EITHER APPLE OR SAMSUNG THAT YOU OWN OR SOMEONE IN
19    YOUR FAMILY OWNS?
20              PROSPECTIVE JUROR:  I'VE GOT AN IPOD
21    TOUCH.
22              THE COURT:  OKAY.
23              PROSPECTIVE JUROR:  I'VE GOT A MACBOOK
24    AIR.  MY WORK GAVE US A MACBOOK PRO.  I'VE GOT AN
25    APPLE -- ACTUALLY, AN APPLE MINI.  I'VE GOT AN
```

```
 1      APPLE PRO, OR MAC PRO.

 2              I'VE GOT -- I'VE GOT, LIKE, AN AMAZON

 3      FIRE, WHICH IS NOT REALLY APPLE OR SAMSUNG.

 4              BUT I'VE GOT A LOT OF GADGETS, BASICALLY.

 5              THE COURT:  OKAY.  YEAH.

 6              PROSPECTIVE JUROR:  I'VE GOT A NOOK

 7      COLOR.  I'VE GOT -- MY WIFE HAS AN IPOD SHUFFLE.

 8              THE COURT:  YOU'RE GOOD FOR THE ECONOMY.

 9              PROSPECTIVE JUROR:  YEAH.

10              (LAUGHTER.)

11              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

12              MR. HOGAN?

13              PROSPECTIVE JUROR:  YES.  I HAVE A

14      SMARTPHONE.  IT'S A DROID 2 MADE BY MOTOROLA.

15              THE COURT:  OKAY.  WHAT ABOUT ANY TABLET

16      COMPUTERS?

17              PROSPECTIVE JUROR:  I DON'T OWN A TABLET.

18              THE COURT:  ALL RIGHT.  HAVE YOU EVER

19      OWNED A PRODUCT OF EITHER APPLE OR SAMSUNG?

20              PROSPECTIVE JUROR:  I PERSONALLY HAVE

21      NOT.  MY WIFE CURRENTLY JUST RECENTLY BOUGHT A

22      SAMSUNG.  IT'S NOT A SMARTPHONE, BUT --

23              THE COURT:  THAT WAS YOUR WIFE?

24              PROSPECTIVE JUROR:  MY WIFE, YES.

25              THE COURT:  OKAY.  ARE YOU THINKING ABOUT
```

```
 1    BUYING A PRODUCT OF EITHER COMPANY?

 2              PROSPECTIVE JUROR:  NO.

 3              THE COURT:  OKAY.  ALL RIGHT, THANK YOU.

 4              LET'S GO TO MR. BELLA.

 5              PROSPECTIVE JUROR:  I HAVE TWO PHONES,

 6    ONE WORK PHONE IS A VERIZON, WHICH I JUST GOT.

 7    PERSONAL PHONE IS AN OLDER AT&T.  I DON'T KNOW WHO

 8    MAKES IT.  IT'S A FLIP PHONE.

 9              THE COURT:  DO YOU OWN ANY TABLET

10    COMPUTERS?

11              PROSPECTIVE JUROR:  I DO NOT.

12              THE COURT:  ALL RIGHT.  HAVE YOU EVER

13    OWNED ANY PRODUCT OF EITHER APPLE OR SAMSUNG?

14              PROSPECTIVE JUROR:  YES.  WE'RE A MAC

15    FAMILY.

16              THE COURT:  OKAY.  CURRENTLY ARE YOU

17    THINKING ABOUT BUYING A PRODUCT OF EITHER COMPANY?

18              PROSPECTIVE JUROR:  NOT NOW.

19              THE COURT:  NOT NOW, OKAY.

20              ALL RIGHT.  WHEN YOU SAY YOU'RE A MAC

21    FAMILY, DO YOU MEAN FOR YOUR PC'S AND YOUR LAPTOPS?

22              PROSPECTIVE JUROR:  YES.  AT HOME, AND MY

23    SON AND HIS WIFE ALL ARE BIG APPLE USERS.

24              THE COURT:  OKAY.  ALL RIGHT.

25              LET ME GO TO -- IS IT MS. ROUGIERI?  DID
```

```
 1    I PRONOUNCE THAT CORRECTLY?  WHAT KIND OF PHONE DO

 2    YOU HAVE, MA'AM?

 3              PROSPECTIVE JUROR:  I HAVE AN LG.

 4              THE COURT:  LG, OKAY.  DO YOU HAVE A

 5    TABLET COMPUTER?

 6              PROSPECTIVE JUROR:  NO.

 7              THE COURT:  HAVE YOU EVER OWNED A PRODUCT

 8    OF EITHER APPLE OR SAMSUNG?

 9              PROSPECTIVE JUROR:  SAMSUNG.

10              THE COURT:  AND WHAT HAVE YOU OWNED?

11              PROSPECTIVE JUROR:  FIRST I DON'T

12    REMEMBER.  IT'S NOT A SMARTPHONE.  IT'S AN OLDER

13    PHONE.  I CAN'T REMEMBER WHAT IT'S CALLED.

14              BUT THERE'S THREE OF US AT HOME THAT HAVE

15    HAD SAMSUNG PHONES.

16              THE COURT:  AND WHEN YOU SAY "THREE OF

17    US," YOU MEAN FAMILY MEMBERS?

18              PROSPECTIVE JUROR:  FAMILY MEMBERS.

19              THE COURT:  OKAY.  ARE YOU THINKING ABOUT

20    BUYING A PRODUCT OF EITHER COMPANY CURRENTLY?

21              PROSPECTIVE JUROR:  I'M THINKING OF

22    BUYING AN IPAD.

23              THE COURT:  OKAY.  ALL RIGHT.

24              AND LET ME SAY TO OUR JURORS WHO ARE IN

25    THE AUDIENCE, I AM ASKING THAT YOU PAY CLOSE
```

```
 1      ATTENTION BECAUSE AS YOU'LL SEE, MANY OF THE JURORS
 2      IN THIS PANEL MAY BE EXCUSED AND YOU MAY BE THEN
 3      CALLED UP TO FILL THEIR PLACE, AND SO YOU WILL HAVE
 4      TO ANSWER SIMILAR QUESTIONS.
 5              SO YOU WOULD PLEASE JUST MAKE A MENTAL
 6      NOTE OF HOW YOU WOULD ANSWER THESE QUESTIONS IN THE
 7      EVENT THAT YOU ARE CALLED IN?
 8              LET'S GO NOW TO MR. FLAVIN, OR
 9      MS. FLAVIN, EXCUSE ME.
10              PROSPECTIVE JUROR:  I HAVE A SMARTPHONE.
11      IT'S LG.  I CURRENTLY OWN TWO SAMSUNG PRODUCTS.
12              I DON'T OWN ANYTHING FROM APPLE.  I DID
13      YEARS AGO.  AM I MISSING ANYTHING?
14              THE COURT:  WHAT DID YOU PREVIOUSLY OWN
15      FROM APPLE?
16              PROSPECTIVE JUROR:  IPODS BEFORE.  THEY
17      DON'T LAST VERY LONG.
18              THE COURT:  CAN WE HAVE THE MICROPHONE
19      PASSED TO MS. FLAVIN SO I CAN HEAR HER A LITTLE
20      BETTER?
21              I WENT THROUGH THREE OR FOUR IPODS BEFORE
22      I LEARNED MY LESSON.  THEY DON'T LAST VERY LONG.
23      THAT WAS YEARS AGO.
24              THE COURT:  OKAY.  ARE YOU THINKING ABOUT
25      BUYING A PRODUCT OF EITHER COMPANY CURRENTLY?
```

```
 1              PROSPECTIVE JUROR:  NOT CURRENTLY.

 2              THE COURT:  ALL RIGHT.  WHAT DO YOU USE

 3      NOW TO REPLACE YOUR IPOD?  YOUR SMARTPHONE?

 4              PROSPECTIVE JUROR:  YEAH, I JUST HAVE A

 5      SMARTPHONE.

 6              THE COURT:  ALL RIGHT.  THANK YOU.

 7              LET'S GO TO MR. -- IS IT BURGE?

 8              PROSPECTIVE JUROR:  YES, MA'AM.

 9              THE COURT:  OKAY.

10              PROSPECTIVE JUROR:  I HAVE AN APPLE

11      IPHONE.

12              THE COURT:  ALL RIGHT.  DO YOU OWN A

13      TABLET COMPUTER AS WELL?

14              PROSPECTIVE JUROR:  YES.  WE HAVE AN

15      IPAD.

16              THE COURT:  OKAY.  AND HAVE YOU EVER

17      OWNED A PRODUCT OF SAMSUNG?

18              PROSPECTIVE JUROR:  I HAVE SEVERAL YEARS

19      AGO.  I USED TO WORK FOR AT&T WIRELESS, SO I'VE HAD

20      SEVERAL DEVICES.

21              THE COURT:  AND WHAT SAMSUNG DEVICES DID

22      YOU HAVE?

23              PROSPECTIVE JUROR:  IT'S HARD TO RECALL

24      NOW.  THEY WERE THE FLIP PHONES.  THEY WEREN'T THE

25      SMARTPHONES.
```

```
 1                THE COURT:  OKAY.  ARE YOU CURRENTLY

 2    THINKING ABOUT PURCHASING A PRODUCT OF EITHER OF

 3    THE COMPANIES THAT ARE INVOLVED IN THIS LAWSUIT?

 4                PROSPECTIVE JUROR:  WITHIN THE NEXT

 5    PROBABLY THREE TO SIX MONTHS WE'LL UPGRADE THE IPAD

 6    TO THE NEWEST VERSION.

 7                THE COURT:  ALL RIGHT.  THANK YOU.

 8                LET'S GO TO MS. LEROSE.

 9                COULD YOU PASS THE MICROPHONE?  THANK

10    YOU.

11                PROSPECTIVE JUROR:  THIS IS GOING TO

12    SOUND INCREDULOUS, BUT NO, I DO NOT HAVE A CELL

13    PHONE.  NOT INTERESTED.

14                THE COURT:  THAT'S FINE.  AND DO YOU OWN

15    A TABLET COMPUTER?

16                PROSPECTIVE JUROR:  NO.

17                THE COURT:  OKAY.  AND HAVE YOU EVER

18    OWNED A PRODUCT OF EITHER COMPANY, APPLE OR

19    SAMSUNG?

20                PROSPECTIVE JUROR:  YES.

21                THE COURT:  WHAT HAVE YOU OWNED?

22                PROSPECTIVE JUROR:  I HAVE A MACBOOK, AN

23    APPLE MACBOOK, YEAH.

24                THE COURT:  ALL RIGHT.  ARE YOU CURRENTLY

25    THINKING ABOUT BUYING A PRODUCT FROM EITHER
```

```
 1    COMPANY?

 2              PROSPECTIVE JUROR:  NO.

 3              THE COURT:  ALL RIGHT.  ANYONE IN YOUR

 4    FAMILY OWN ANY PRODUCTS OF APPLE OR SAMSUNG?

 5              PROSPECTIVE JUROR:  YEAH.  MY SON, OLDEST

 6    SON OWNS APPLE.  HE HAS AN APPLE COMPUTER AND ALSO

 7    A MACBOOK, I THINK.

 8              I DON'T KNOW WHAT KIND OF PHONES THEY

 9    USE.

10              THE COURT:  OKAY.

11              PROSPECTIVE JUROR:  AND THEN MY HUSBAND

12    HAS A PC AND I DON'T KNOW WHAT KIND IT IS, VERY

13    OLD.

14              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

15              PROSPECTIVE JUROR:  UM-HUM.

16              THE COURT:  LET'S GO TO MR. REYES.

17              PROSPECTIVE JUROR:  YEAH.  I OWN A CASIO.

18              THE COURT:  ALL RIGHT.  DO YOU ALSO OWN A

19    TABLET COMPUTER?

20              PROSPECTIVE JUROR:  NO.

21              THE COURT:  ALL RIGHT.  HAVE YOU EVER

22    OWNED A PRODUCT OF EITHER APPLE OR SAMSUNG?

23              PROSPECTIVE JUROR:  I THINK MY WIFE DOES.

24    SHE HAS A -- HER PHONE IS A SAMSUNG.

25              THE COURT:  OKAY.  AND DO YOU KNOW IF
```

```
 1    IT'S A SMARTPHONE OR --
 2              PROSPECTIVE JUROR:  IT'S A SMARTPHONE,
 3    YES.
 4              THE COURT:  OKAY.  ARE YOU THINKING ABOUT
 5    BUYING A PRODUCT FROM EITHER COMPANY?
 6              PROSPECTIVE JUROR:  NO, NOT AT THIS TIME.
 7              THE COURT:  ALL RIGHT.  THANK YOU.
 8              ALL RIGHT.  MR. TRIPIANO.
 9              PROSPECTIVE JUROR:  I HAVE AN HTC PHONE
10    WITH VERIZON, WHICH HAS THE DROID OPERATING SYSTEM
11    ON IT.
12              THE COURT:  UM-HUM.
13              PROSPECTIVE JUROR:  I DO NOT HAVE A
14    TABLET.  ALL MY COMPUTERS ARE PC AND SMART TV WHICH
15    HAS THE GOOGLE OPERATING SYSTEM ON IT.
16              THE COURT:  ALL RIGHT.  ARE YOU THINKING
17    ABOUT BUYING A PRODUCT OF EITHER COMPANY CURRENTLY?
18              PROSPECTIVE JUROR:  NOT CURRENTLY.
19              THE COURT:  OKAY.  AND HAVE YOU
20    PREVIOUSLY OWNED ANY SAMSUNG PRODUCT?
21              PROSPECTIVE JUROR:  WE HAD A SAMSUNG TV A
22    WHILE BACK.
23              THE COURT:  OKAY.  ALL RIGHT.  BUT NO
24    APPLE PRODUCTS; CORRECT?
25              PROSPECTIVE JUROR:  CORRECT.
```

```
 1                    THE COURT:  ALL RIGHT.  THANK YOU.

 2               LET'S GO TO MS. -- IS IT FRIESEN?

 3               PROSPECTIVE JUROR:  CORRECT.

 4               THE COURT:  ALL RIGHT.  PLEASE GO AHEAD

 5    WITH YOUR ANSWER.

 6               PROSPECTIVE JUROR:  I HAVE A MOTOROLA

 7    SMARTPHONE.

 8                    THE COURT:  ANY TABLET COMPUTERS?

 9               PROSPECTIVE JUROR:  NO.

10               THE COURT:  HAVE YOU EVER OWNED A PRODUCT

11    OF EITHER APPLE OR SAMSUNG?

12                    PROSPECTIVE JUROR:  AN OLD SAMSUNG PHONE.

13               THE COURT:  ARE YOU CURRENTLY THINKING

14    ABOUT BUYING A PRODUCT OF EITHER COMPANY?

15                    PROSPECTIVE JUROR:  POSSIBLY A MAC.  I'M

16    NOT SURE.

17                    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

18               LET'S GO TO MS. HUYNH.  IS THAT

19    PRONOUNCED CORRECTLY?

20                    PROSPECTIVE JUROR:  YEAH.

21               THE COURT:  OKAY.  GO AHEAD.

22                    PROSPECTIVE JUROR:  I HAVE A SMARTPHONE

23    BY LG, AND I HAVE AN IPAD.

24                    THE COURT:  OKAY.  HAVE YOU EVER OWNED A

25    PRODUCT OF SAMSUNG?
```

```
 1                    PROSPECTIVE JUROR:  YES.
 2               THE COURT:  AND WHAT IS THAT?
 3               PROSPECTIVE JUROR:  IT WAS A PHONE.  I
 4   CAN'T REMEMBER WHAT IT'S CALLED.
 5               THE COURT:  OKAY.  AND ARE YOU CURRENTLY
 6   THINKING ABOUT BUYING A PRODUCT FROM EITHER
 7   COMPANY?
 8               PROSPECTIVE JUROR:  NO.
 9               THE COURT:  OKAY.  LET'S GO TO
10   MR. BARRAGAN.
11               PROSPECTIVE JUROR:  I DO NOT OWN OR USE A
12   SMARTPHONE, AND I DO NOT HAVE ANY IPADS OR TABLETS.
13               THE COURT:  OKAY.  WHAT ABOUT A CELL
14   PHONE?
15               PROSPECTIVE JUROR:  IT'S AN OLDER
16   GENERATION NOKIA.
17               THE COURT:  OKAY.  AND HAVE YOU EVER
18   OWNED A PRODUCT OF EITHER APPLE OR SAMSUNG?
19               PROSPECTIVE JUROR:  NO.
20               THE COURT:  OKAY.  ARE YOU THINKING ABOUT
21   BUYING A PRODUCT FROM EITHER COMPANY CURRENTLY?
22               PROSPECTIVE JUROR:  NO.
23               THE COURT:  ALL RIGHT.  THANK YOU.
24               LET'S GO TO, IS MR. -- IS IT
25   MR. CATHERWOOD?
```

```
 1                    PROSPECTIVE JUROR:  YES.

 2                    THE COURT:  ALL RIGHT.  GO AHEAD, PLEASE.

 3                    PROSPECTIVE JUROR:  I CURRENTLY HAVE A

 4      SAMSUNG, A SAMSUNG PHONE, NOT A SMARTPHONE, AND I

 5      HAVE A SONY S TABLET.

 6                    THE COURT:  HAVE YOU EVER OWNED A PRODUCT

 7      OF EITHER APPLE OR SAMSUNG?

 8                    PROSPECTIVE JUROR:  JUST A CELL PHONE

 9      FROM SAMSUNG.

10                    THE COURT:  ALL RIGHT.  ARE YOU CURRENTLY

11      THINKING ABOUT BUYING A PRODUCT FROM EITHER

12      COMPANY?

13                    PROSPECTIVE JUROR:  NO.

14                    THE COURT:  ALL RIGHT.  THANK YOU.

15                    LET'S GO TO MS. PHAN ON ROW 3.

16                    PROSPECTIVE JUROR:  I HAVE AN IPHONE AND

17      IPAD AND IPOD.

18                    MY MOM HAS A SAMSUNG WHICH I GOT FOR HER,

19      AND I USED TO ALSO OWN A SAMSUNG.

20                    AND I DON'T PLAN TO BUY ANYTHING FROM

21      EITHER COMPANY RIGHT NOW.

22                    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

23

24                    PROSPECTIVE JUROR:  I HAVE AN APPLE IPOD,

25      I HAVE AN APPLE IPHONE, I OWN AN APPLE IPAD.  MY
```

```
1    HOUSE IS FILLED WITH APPLE PRODUCTS.

2              I DO HAVE A SAMSUNG TELEVISION AND I AM

3    CONSIDERING PURCHASING PRODUCTS FROM ONE OF THOSE

4    COMPANIES.

5              THE COURT:  AND WHICH COMPANY IS THAT?

6              PROSPECTIVE JUROR:  APPLE.

7              THE COURT:  OKAY.  ALL RIGHT.  LET'S GO

8    TO MR. SHAH, PLEASE.

9              PROSPECTIVE JUROR:  I HAVE AN IPHONE, MY

10   FAMILY HAS IPHONES.  I HAVE AN IPAD, FAMILY HAS

11   IPADS.  WE HAVE SEVERAL APPLE PRODUCTS IN THE

12   HOUSE.

13             THE COURT:  OKAY.  ANY SAMSUNG PRODUCTS

14   IN THE HOUSE?

15             PROSPECTIVE JUROR:  NONE.

16             THE COURT:  PREVIOUSLY THOUGH?

17             PROSPECTIVE JUROR:  NONE.

18             THE COURT:  OKAY.  ALL RIGHT.

19             PROSPECTIVE JUROR:  AND WE WILL BUY MORE

20   APPLE PRODUCTS.  WE CONTINUE TO EVEN TODAY.

21             THE COURT:  ALL RIGHT.  THANK YOU.

22             LET'S GO TO MR. ROGERS.

23             PROSPECTIVE JUROR:  I CURRENTLY DON'T

24   HAVE A PHONE.  I THINK THE LAST ONE I HAD WAS AN

25   LG.  BEFORE THAT WE WERE ON AT&T, SO I'M PRETTY
```

```
 1    SURE AT LEAST ONE WAS MADE BY SAMSUNG.  I VAGUELY

 2    REMEMBER THAT.

 3              WE HAVE A SAMSUNG TV, AND I HAVE AN IPOD.

 4              THAT'S ALL I CAN THINK OF AT THIS MOMENT.

 5              THE COURT:  OKAY.  CURRENTLY THINKING

 6    ABOUT BUYING ANY PRODUCTS FROM EITHER COMPANY?

 7              PROSPECTIVE JUROR:  NOT IN THE NEAR

 8    FUTURE.

 9              THE COURT:  OKAY.  THANK YOU.

10              MR. TEPMAN?

11              PROSPECTIVE JUROR:  IPHONE IS A COMPANY

12    PHONE.  I DIDN'T BUY.  AND I HAVE TWO IPHONE --

13    IPODS, BUT I DON'T USE THEM ANYMORE SINCE I USE MY

14    IPHONE FOR MUSIC.

15              THE COURT:  ALL RIGHT.

16              PROSPECTIVE JUROR:  AND NO OTHER APPLE

17    PRODUCTS, NO TABLET.

18              AND IN THE BEDROOMS WE HAVE, LIKE, TWO

19    OLD SAMSUNG TV'S.

20              THE COURT:  AND HAVE YOU EVER OWNED ANY

21    SAMSUNG PRODUCTS?

22              PROSPECTIVE JUROR:  I SAID WE HAVE IN TWO

23    BEDROOMS, WE HAVE OLD SAMSUNG TELEVISIONS.

24              THE COURT:  I SEE.  OKAY.  CURRENTLY

25    THINKING ABOUT BUYING ANY PRODUCTS FROM EITHER
```

1    COMPANY?

2              PROSPECTIVE JUROR:  NOT IN MY PLAN.

3              THE COURT:  ALL RIGHT.  THANK YOU.

4              MS. MATHUR?

5              PROSPECTIVE JUROR:  I HAVE AN IPHONE AND

6    AN IPAD.

7              THE COURT:  OKAY.  HAVE YOU EVER OWNED

8    ANY SAMSUNG PRODUCTS?

9              PROSPECTIVE JUROR:  I DON'T KNOW.  MAYBE

10   A TELEVISION, BUT I'M NOT SURE.

11             THE COURT:  ALL RIGHT.  ARE YOU CURRENTLY

12   THINKING ABOUT BUYING A PRODUCT FROM EITHER

13   COMPANY?

14             PROSPECTIVE JUROR:  NO.

15             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

16             MR. ILAGAN?

17             PROSPECTIVE JUROR:  YES.  I HAVE A

18   REGULAR LG PHONE, AND I'M THINKING OF MAYBE

19   UPGRADING TO A SMARTPHONE, BUT I DON'T KNOW WHICH

20   KIND YET.

21             THE COURT:  OKAY.

22             PROSPECTIVE JUROR:  AND MY FAMILY, THEY

23   ALL OWN IPHONES.

24             AND WE HAVE A, A SAMSUNG FLAT SCREEN TV.

25             THE COURT:  OKAY.  AND OTHER THAN THE

```
 1    SMARTPHONE FOR WHICH YOU HAVEN'T DECIDED WHICH ONE

 2    YOU WILL BUY, ARE YOU CURRENTLY THINKING ABOUT

 3    BUYING PRODUCTS FROM EITHER COMPANY IN THIS

 4    LAWSUIT?

 5              PROSPECTIVE JUROR:  WE NEED TO REVIEW, SO

 6    I HAVEN'T DECIDED YET.

 7              THE COURT:  ALL RIGHT.  THANK YOU.

 8              ALL RIGHT.  LET'S GO TO MR. DUNN.

 9              IF YOU WOULD PLEASE PASS THE MICROPHONE.

10    THANK YOU.

11              PROSPECTIVE JUROR:  I DO NOT HAVE A -- I

12    DO NOT HAVE A SMARTPHONE, BUT I DO HAVE A

13    NON-SMARTPHONE FROM SAMSUNG.  I DON'T HAVE ANY

14    TABLETS.

15              AND I DO NOT ANTICIPATE ANY FUTURE

16    PURCHASES THROUGH EITHER COMPANY AT THIS TIME.

17              THE COURT:  ALL RIGHT.  THANK YOU.

18              AND OTHER THAN YOUR CURRENT SAMSUNG

19    PHONE, ANY OTHER PRODUCTS THAT YOU'VE OWNED FROM

20    EITHER COMPANY PREVIOUSLY?

21              PROSPECTIVE JUROR:  IPOD A FEW YEARS AGO.

22              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

23              MS. HOLLOWAY?

24              PROSPECTIVE JUROR:  GOOD MORNING.

25    EVERYONE IN THE FAMILY OWNS IPHONES.
```

```
 1                THE COURT:  OKAY.

 2                PROSPECTIVE JUROR:  I HAVE AN IPAD.  WE

 3     HAVE TWO SAMSUNG TV'S IN THE HOUSE.

 4                I DON'T PLAN TO PURCHASE ANY ITEMS IN THE

 5     FUTURE.

 6                THE COURT:  ALL RIGHT.  THANK YOU.

 7                MR. KRETZMANN?

 8                PROSPECTIVE JUROR:  MY CELL PHONE IS AN

 9     OLDER GENERATION FLIP PHONE MADE BY MOTOROLA.

10                I RECALL WE HAVE A SAMSUNG DVD PLAYER AT

11     HOME.  I CAN'T SPECIFICALLY THINK OF ANY OTHER

12     APPLE OR SAMSUNG PRODUCTS, NOR DO I HAVE ANY

13     PURCHASING INTENTIONS AT THIS TIME.

14                THE COURT:  THANK YOU.

15                MR. COYLE?

16                PROSPECTIVE JUROR:  YEAH.  LET'S SEE.  I

17     OWN TWO SAMSUNG ANDROID PHONES.  I OWN TWO IPODS.

18     I HAVE A SAMSUNG TV.

19                I THINK THAT'S IT.

20                THE COURT:  OKAY.  THANK YOU.  AND

21     CURRENTLY NOT THINKING ABOUT BUYING ANY PRODUCTS?

22                PROSPECTIVE JUROR:  WELL, YEAH.  I'M

23     PROBABLY GOING TO BUY A SAMSUNG TABLET, SURE.

24                THE COURT:  OKAY.

25                PROSPECTIVE JUROR:  YEAH.
```

```
 1                    THE COURT:  ALL RIGHT.  THANK YOU.

 2                    LET'S GO TO THE NEXT JUROR, PLEASE.

 3         MR. WONG.

 4                    PROSPECTIVE JUROR:  I CURRENTLY HAVE A

 5         CELL PHONE, LG.

 6                    THE COURT:  OKAY.

 7                    PROSPECTIVE JUROR:  AND A TOUCHPAD FROM

 8         HEWLETT-PACKARD.

 9                    THE COURT:  OKAY.

10                    PROSPECTIVE JUROR:  AND I HAVE A VERY

11         OLD, OVER 30 YEARS OLD MICROWAVE OVEN FROM SAMSUNG.

12         IT WORKS.  AND REFRIGERATOR FROM SAMSUNG ALSO.

13                    THE COURT:  OKAY.

14                    PROSPECTIVE JUROR:  I DON'T INTEND TO BUY

15         ANYTHING FROM EITHER COMPANY IN THE FUTURE.

16                    THE COURT:  ALL RIGHT.

17                    PROSPECTIVE JUROR:  NOT IN THE NEAR

18         FUTURE.

19                    THE COURT:  ALL RIGHT.  HAVE YOU EVER

20         OWNED ANY PRODUCT OF APPLE'S?

21                    PROSPECTIVE JUROR:  NO.

22                    THE COURT:  ALL RIGHT.  THANK YOU.

23                    LET'S GO TO THE NEXT JUROR, AND IF YOU

24         COULD PLEASE PASS THE MICROPHONE TO MR. FLADELAND.

25                    PROSPECTIVE JUROR:  YES.
```

```
1            PROSPECTIVE JUROR:  I HAVE AN LG ANDROID
2    SMARTPHONE.  MY TABLET IS A KINDLE FIRE.  AND I
3    HAVE A MACBOOK AND AN IPOD TOUCH AND I HAVE A
4    SAMSUNG TV AND A SAMSUNG DVD PLAYER.
5            NO PLANS TO BUY PRODUCTS IN THE FUTURE AT
6    THIS TIME.
7            THE COURT:  ALL RIGHT.  THANK YOU.
8            MR. LADWIG?
9            PROSPECTIVE JUROR:  MY WIFE AND I BOTH
10   HAVE IPHONES.  I HAVE A SHUFFLE.  WE PLAN ON -- I
11   ALSO HAVE A SAMSUNG TV.  WE PLAN ON UPGRADING TO
12   THE NEW IPHONES WHEN OUR CURRENT CONTRACT EXPIRES.
13           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
14           GO AHEAD, PLEASE, MR. SINA.
15           PROSPECTIVE JUROR:  YES.  I DON'T HAVE A
16   SMARTPHONE.  MY PHONE IS A KYOCERA.  BUT MY WIFE
17   HAS A SAMSUNG PRODUCT AND APPLE IPAD.
18           THE COURT:  AND SOMEONE HAS A SAMSUNG,
19   WHAT, PHONE?
20           PROSPECTIVE JUROR:  A GALAXY, I THINK IT
21   IS.  YES.
22           THE COURT:  OKAY.
23           PROSPECTIVE JUROR:  YEAH.
24           THE COURT:  ALL RIGHT.  HAVE YOU
25   PREVIOUSLY, YOURSELF, EVER OWNED EITHER AN APPLE OR
```

```
 1    A SAMSUNG PRODUCT?

 2                 PROSPECTIVE JUROR:  NO, I HAVEN'T.

 3                 THE COURT:  OKAY.  CURRENTLY HAVE ANY

 4    THOUGHTS ABOUT BUYING A PRODUCT FROM EITHER

 5    COMPANY?

 6                 PROSPECTIVE JUROR:  NOT AT THIS TIME.

 7                 THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 8                 LET'S GO TO MR. WARMAN, PLEASE.

 9                 PROSPECTIVE JUROR:  I HAVE AN IPHONE.  MY

10    WIFE HAS AN IPHONE AND AN IPAD.

11                 WE HAVE HAD SAMSUNG TV'S IN THE PAST, AS

12    WELL AS OTHER MAC PRODUCTS.

13                 I DON'T HAVE ANY PLANS TO REPLACE ANY OF

14    THOSE OR BUY ANYTHING IN THE FUTURE.

15                 THE COURT:  OKAY.  THANK YOU.

16                 LET'S GO TO MS. DOMINGO.

17                 PROSPECTIVE JUROR:  I HAVE AN OLD SONY

18    ERICSSON PHONE.

19                 THE COURT:  UM-HUM.

20                 PROSPECTIVE JUROR:  MY HUSBAND HAS THE

21    IPAD AND WE OWN THREE ITOUCH.

22                 I DON'T PLAN TO BUY ANY HOUSEHOLD

23    PRODUCTS.

24                 THE COURT:  OKAY.  HAVE YOU OR ANYONE IN

25    YOUR FAMILY EVER OWNED A SAMSUNG PRODUCT?
```

```
 1              PROSPECTIVE JUROR:  NOT THAT I KNOW OF.
 2              THE COURT:  THANK YOU.  MAY WE PLEASE GO
 3    TO THE FINAL ROW.
 4              PROSPECTIVE JUROR:  I HAVE AN LG CELL
 5    PHONE, AN IPOD TOUCH, A KINDLE, AND I PREVIOUSLY
 6    OWNED A SAMSUNG CELL PHONE.
 7              AND I DON'T PLAN TO BUY ANY OTHER PRODUCT
 8    IN THE FUTURE.
 9              THE COURT:  ALL RIGHT.  THANK YOU.
10              LET'S GO TO MR. CHIU.
11              PROSPECTIVE JUROR:  I HAVE A PHONE, AN
12    OLD PHONE.  MY WIFE HAS AN IPOD.  AND I HAVE NO
13    TABLET.
14              AND NO PLANS TO BUY ANYTHING IN THE NEAR
15    FUTURE.
16              THE COURT:  HAVE YOU OR YOUR WIFE OR
17    ANYONE IN YOUR FAMILY EVER PREVIOUSLY OWNED A
18    SAMSUNG PRODUCT?
19              PROSPECTIVE JUROR:  NO, I DON'T THINK SO.
20              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
21              AND DID YOU SAY THAT YOUR PHONE, WAS THAT
22    A SONY ERICSSON, OR WHAT WAS IT?
23              PROSPECTIVE JUROR:  T-MOBILE.  I DON'T
24    KNOW WHAT IT IS.
25              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
```

```
 1                    OKAY.  MS. HUMPHRY?

 2                    PROSPECTIVE JUROR:  I HAVE AN IPOD TOUCH

 3       AND A SAMSUNG TV, AND I MIGHT BUY AN IPHONE IN THE

 4       FUTURE.

 5                    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 6       LET'S GO TO MS. JARO.  DID I PRONOUNCE THAT

 7       CORRECTLY?

 8                    PROSPECTIVE JUROR:  YES.

 9                    THE COURT:  OKAY.

10                    PROSPECTIVE JUROR:  I HAVE A REGULAR

11       SAMSUNG CELL PHONE, AND MY SON HAS A MACBOOK,

12       IPHONE, ITOUCH, AND AN APPLE WRISTWATCH.

13                    THE COURT:  THAT'S YOUR SON?

14                    PROSPECTIVE JUROR:  YEAH.

15                    THE COURT:  OKAY.  DOES YOUR SON LIVE

16       WITH YOU?

17                    PROSPECTIVE JUROR:  YEAH.  HE'S STILL A

18       STUDENT.

19                    THE COURT:  ALL RIGHT.  ANY OTHER

20       PRODUCTS THAT YOU PERSONALLY HAVE OWNED, EITHER

21       FROM APPLE OR SAMSUNG?

22                    PROSPECTIVE JUROR:  (SHAKES HEAD BACK AND

23       FORTH.)

24                    THE COURT:  NO.  OKAY.  AND NO CURRENT

25       INTENTION ON BUYING ONE; IS THAT CORRECT?
```

```
1              PROSPECTIVE JUROR:  NO, NOT YET.

2              THE COURT:  OKAY.

3              PROSPECTIVE JUROR:  JUST BOUGHT A NEW

4     ONE.

5              THE COURT:  ALL RIGHT.  SO YOUR SAMSUNG

6     PHONE IS A NEW ONE?

7              PROSPECTIVE JUROR:  NO.  NO, IT'S NOT.

8     THE CELL PHONE IS THE APPLE CELL PHONE.

9              THE COURT:  ALL RIGHT.

10             PROSPECTIVE JUROR:  IPHONE.

11             THE COURT:  ALL RIGHT.  NOW, MR. TRIPIANO

12    RAISED AN ISSUE, AND THAT IS THAT THERE HAS BEEN

13    SOME, SOME COVERAGE ABOUT THIS CASE.

14             WOULD YOU PLEASE RAISE YOUR HAND IF YOU

15    HAVE READ OR HEARD ANYTHING ABOUT THIS LAWSUIT?

16             OKAY.  GIVE ME JUST ONE SECOND.  I'M

17    GOING TO NEED A MOMENT TO -- OKAY.

18             SO I HAVE MS. HALIM; MR. OKAMOTO;

19    MR. BELLA, CORRECT, HE IS NUMBER 4; I HAVE

20    MR. BURGE, WHO'S NUMBER 7; MS. LEROSE, WHO'S NUMBER

21    8 -- YES, IF YOU COULD HOLD UP YOUR NUMBERS,

22    PLEASE, MR. TRIPIANO, WHO'S NUMBER 10.

23             ANYONE ELSE ON THE SECOND ROW?  14 IS

24    MR. CATHERWOOD; CORRECT?

25             PROSPECTIVE JUROR:  CORRECT.
```

```
 1                    THE COURT:  OKAY.  16 IS MR. DEPRIEST; 17

 2      IS MR. SHAH; 18 IS MR. ROGERS; 19 IS MR. TEPMAN; 21

 3      IS MR. ILAGAN.  DID I PRONOUNCE THAT CORRECTLY?

 4                    PROSPECTIVE JUROR:  ILAGAN.

 5                    THE COURT:  ILAGAN, OKAY, THANK YOU.

 6                    22 IS MR. DUNN; 24 IS MR. KRETZMANN;

 7      CORRECT?

 8                    PROSPECTIVE JUROR:  YES.

 9                    THE COURT:  OKAY.  26 IS MR. WONG; 29 IS

10      MR. SINA; NUMBER 30 IS MR. WARMAN; AND NUMBER 34 IS

11      MS. HUMPHRY.

12                    ALL RIGHT.  THANK YOU.  WE'LL GET INTO IT

13      MORE IN PRIVATE, BUT RAISE YOUR HAND IF WHAT YOU

14      HAVE READ OR HEARD ABOUT THIS CASE WOULD AFFECT

15      YOUR ABILITY TO BE FAIR AND IMPARTIAL TO BOTH

16      SIDES.

17                    AND I KNOW SOME OF YOU HAVE ALREADY

18      RAISED YOUR HAND, BUT ANYONE ELSE OTHER THAN

19      MR. TRIPIANO, BASED ON WHAT YOU'VE READ OR HEARD

20      ABOUT THIS CASE, THAT YOU CANNOT BE FAIR AND

21      IMPARTIAL TO BOTH SIDES?  IS IT ONLY MR. TRIPIANO

22      OR ANYONE ELSE?

23                    OKAY.  THE RECORD SHOULD REFLECT THAT.

24                    ALL RIGHT.  LET ME ASK YOU IF YOU'VE

25      BASICALLY ALREADY FORMED AN IMPRESSION IN YOUR MIND
```

```
1    ABOUT -- AND THIS IS FOR EVERYBODY -- IF YOU'VE

2    BASICALLY ALREADY FORMED AN IMPRESSION IN YOUR MIND

3    ABOUT WHO YOU THINK OUGHT TO WIN THIS CASE BASED ON

4    WHAT YOU'VE READ.

5             CAN YOU RAISE YOUR HAND, PLEASE?  OKAY.

6    THAT'S MR. TRIPIANO AND MR. DEPRIEST.

7             ANYONE ELSE?  I GUESS RAISE YOUR HAND IF

8    YOU CAN BE OPEN MINDED AND FAIR EVEN IF YOU'VE

9    ALREADY PREVIOUSLY READ ABOUT THIS CASE.

10            PROSPECTIVE JUROR:  IF YOU CAN BE?

11            THE COURT:  THAT MIGHT BE TOO

12   COMPLICATED.  I'M SORRY.  LET ME STRIKE THAT.

13            LET ME SAY IF YOU CANNOT KEEP AN OPEN

14   MIND AND YOU CANNOT DECIDE THIS CASE BASED SOLELY

15   ON THE EVIDENCE THAT'S ADMITTED DURING THIS TRIAL,

16   BASED ON WHAT YOU'VE READ PREVIOUSLY ABOUT THIS

17   CASE, RAISE YOUR HAND.

18            OKAY.  I GOT MR. TRIPIANO.

19            I ASSUME MR. DEPRIEST IS THE SAME; RIGHT?

20            PROSPECTIVE JUROR:  YES.

21            THE COURT:  ANYONE ELSE?

22            OKAY.  THE RECORD SHOULD REFLECT THAT NO

23   ONE ELSE HAS RAISED THEIR HANDS.

24            OKAY.  NOW, LET ME ASK IF YOU HAVE ANY

25   BELIEF OR FEELING TOWARDS ANY OF THE PARTIES, ANY
```

```
1     OF THE LAWYERS, ANY OF THE WITNESSES THAT WOULD

2     MAKE IT DIFFICULT FOR YOU TO BE FAIR AND IMPARTIAL.

3              IF SO, WOULD YOU RAISE YOUR HAND?

4              OKAY.  THE RECORD SHOULD REFLECT NO HANDS

5     HAVE BEEN RAISED.

6              OTHER THAN WHAT WE'VE ALREADY TALKED

7     ABOUT IN TERMS OF STOCK OWNERSHIP, DOES ANYONE ELSE

8     HAVE ANY SPECIAL INTEREST, FINANCIAL OR OTHERWISE,

9     IN THE OUTCOME OF THIS TRIAL?  IF SO, WOULD YOU

10    RAISE YOUR HAND?

11             THE RECORD SHOULD REFLECT THAT NO HANDS

12    HAVE BEEN RAISED.

13             IS THERE ANYONE WHO, FOR RELIGIOUS OR

14    PHILOSOPHICAL REASONS, WOULD BE UNABLE TO RESOLVE A

15    CONFLICT IN EVIDENCE?  IF SO, WOULD YOU RAISE YOUR

16    HAND, PLEASE?

17             THE RECORD SHOULD REFLECT NO HANDS HAVE

18    BEEN RAISED.

19             ALL RIGHT.  IT MAY APPEAR THAT ONE OR

20    MORE OF THE PARTIES, THE ATTORNEYS, OR THE

21    WITNESSES COME FROM A PARTICULAR NATIONAL, RACIAL,

22    RELIGIOUS GROUP OR MAY HAVE A LIFESTYLE THAT'S

23    DIFFERENT THAN YOURS.

24             IF THIS WOULD IN ANY WAY AFFECT YOUR

25    JUDGMENT OR THE WEIGHT AND CREDIBILITY THAT YOU
```

1    WOULD GIVE TO SUCH PERSON'S TESTIMONY, WOULD YOU

2    PLEASE RAISE YOUR HAND?

3             THE RECORD SHOULD REFLECT THAT NO HANDS

4    HAVE BEEN RAISED.

5             OKAY.  ANY -- ANYONE HAVE ANY BIASES OR

6    PREJUDICES, LIKES OR DISLIKES BASED ON THE

7    NATIONALITY OF ANY OF THE PARTIES IN THIS CASE?

8    AND BY THAT I MEAN THE COMPANIES.

9             OKAY.  THE RECORD SHOULD REFLECT THAT NO

10   HANDS HAVE BEEN RAISED.

11            ANYONE HAVE ANY POSITIVE OR NEGATIVE

12   IMPRESSIONS BASED ON THE PARTIES BASED ON WHERE

13   THEY'RE LOCATED?

14            OKAY.  THE RECORD SHOULD REFLECT NO HANDS

15   HAVE BEEN RAISED.

16            NOW, MANY OF YOU MAY HAVE YOUR OWN VIEWS

17   ABOUT WHAT OUR LAWS SHOULD BE, BUT I JUST NEED TO

18   ASK YOU ONE MORE TIME WHETHER YOU WOULD ACCEPT THE

19   INSTRUCTIONS ON THE LAW THAT I GIVE YOU AND NOT

20   INSERT AND SUBSTITUTE YOUR OWN PERSONAL VIEWS OF

21   WHAT THE LAWS SHOULD BE.  WHETHER YOU DISAGREE OR

22   DISAGREE WITH WHAT I TELL YOU THE LAW IS, WILL YOU

23   ACCEPT IT?  IF YOU CANNOT DO THAT, WILL YOU PLEASE

24   RAISE YOUR HAND?

25            OKAY.  THE RECORD SHOULD REFLECT THAT NO

1    HANDS HAVE BEEN RAISED.

2              ALL RIGHT.  HAVE ANY OF YOU BEEN

3    NEGATIVELY IMPACTED BY THE RECENT ECONOMIC

4    DOWNTURN?  IF YOU WOULD PLEASE RAISE YOUR HAND.

5              OKAY.  CAN WE PASS THE MICROPHONE,

6    PLEASE?

7              PROSPECTIVE JUROR:  I'M CURRENTLY

8    UNEMPLOYED.

9              THE COURT:  OKAY.  I'M SORRY.  CAN WE

10   JUST GO ROW BY ROW?  OTHERWISE I MIGHT MISS

11   SOMEBODY.

12             LET ME START WITH MR. HOGAN.  GO AHEAD,

13   PLEASE.

14             PROSPECTIVE JUROR:  WHEN THE ECONOMY --

15   EXCUSE ME -- WENT SOUTH, I WAS TRYING TO ESTABLISH

16   A START-UP AND IT WENT BELLY UP AND, IN THE COURSE

17   OF EVENTS, I DIMINISHED ALL SAVINGS THAT I HAD AND

18   SUBSEQUENTLY, THROUGH FORECLOSURE, LOST MY HOUSE.

19             THE COURT:  I'M SORRY TO HEAR THAT.

20             PROSPECTIVE JUROR:  SO THAT WAS A

21   NEGATIVE IMPACT.

22             BUT IN TERMS OF ANYTHING ELSE, I FEEL

23   TOTALLY IMPARTIAL TO THE PROCEEDINGS.

24             THE COURT:  OKAY.  WOULD YOU -- YOU'VE

25   SEEN THE NUMBER OF DAYS THAT THIS TRIAL WOULD

```
1    REQUIRE; CORRECT?

2                 PROSPECTIVE JUROR:  YES.

3                 THE COURT:  WOULD IT BE A HARDSHIP FOR

4    YOU TO SERVE THIS MANY DAYS?

5                 PROSPECTIVE JUROR:  NO, NOT AT THIS TIME.

6                 THE COURT:  OKAY.  ALL RIGHT.  AND

7    NOTHING ABOUT YOUR EXPERIENCE -- I'M VERY SORRY TO

8    HEAR ABOUT IT -- THAT WOULD MAKE YOU FEEL RESENTFUL

9    TO ONE OF THESE PARTIES HERE TODAY?

10                 PROSPECTIVE JUROR:  OF COURSE NOT.

11                 THE COURT:  OKAY.  THANK YOU.

12                 ANYONE ELSE ON ROW 1?

13                 ALL RIGHT.  LET'S GO TO MR. BURGE,

14   PLEASE, IF YOU WOULD PASS THE MICROPHONE DOWN.

15                 OH, OKAY.  LET'S GO TO MS. FLAVIN.

16                 PROSPECTIVE JUROR:  SORRY, YOUR HONOR.

17                 I WAS LAID OFF BACK IN APRIL OF THIS

18   YEAR, AND I RECENTLY STARTED A NEW POSITION WITH

19   RESPONSIBILITY FOR OTHER EMPLOYEES, SOME OF WHICH

20   START THIS WEEK.

21                 THE COURT:  ALL RIGHT.  WOULD IT BE A

22   HARDSHIP FOR YOU TO SERVE THIS MANY DAYS AFTER YOU

23   STARTED A NEW JOB?

24                 PROSPECTIVE JUROR:  IT COULD BE DONE.  I

25   COULD DO IT.  I HAVE SOME NEW EMPLOYEES THAT ARE
```

```
1    STARTING THAT I'M RESPONSIBLE FOR TRAINING.  THAT'S
2    THE DIFFICULT PART.
3              THE COURT:  WELL, IF YOU'VE GOTTEN THIS
4    NEW POSITION, I DON'T WANT TO JEOPARDIZE IT IN ANY
5    WAY BY TAKING YOU AWAY FROM YOUR JOB.  WHAT -- TELL
6    ME HOW YOU FEEL AND HOW YOU THINK YOUR EMPLOYER
7    WOULD FEEL IF YOU WERE TO BE ABSENT FROM WORK THIS
8    MANY DAYS.
9              PROSPECTIVE JUROR:  I THINK IT WOULD BE
10   CONSIDERED DIFFICULT FROM THE EMPLOYER'S
11   PERSPECTIVE.  I'M ABOUT TWO MONTHS INTO THE
12   POSITION AS A DIRECTOR FOR THE COMPANY IN OUR SALES
13   DIVISION.
14             LIKE I SAID, I WOULD DO IT.  I THINK THAT
15   THE EMPLOYER WOULD SEE IT AS A DIFFICULT MATTER TO
16   OVERCOME.
17             THE COURT:  OKAY.  ALL RIGHT.  HAVE YOU
18   HAD CONVERSATIONS WITH YOUR EMPLOYER ABOUT THIS
19   JURY SERVICE?
20             PROSPECTIVE JUROR:  I DID LAST WEEK, JUST
21   IN CONTEXT OF, YOU KNOW, I'VE BEEN SUMMONED AND
22   I'LL KNOW MORE DETAILS, OBVIOUSLY, AS WE GO
23   FORWARD.
24             THE COURT:  ALL RIGHT.  I DON'T WANT TO
25   CREATE A PRECEDENT HERE, BUT IS THERE AN OBJECTION
```

```
 1    TO EXCUSING MR. BURGE FOR HARDSHIP?

 2              MR. LEE:  NO, YOUR HONOR.

 3              MR. PRICE:  NO, YOUR HONOR.

 4              THE COURT:  OKAY.  YOU'RE THANKED AND

 5    EXCUSED.

 6              NOW, I DON'T WANT TO HAVE EVERYONE LEARN

 7    A LESSON HERE.

 8              BUT I GREATLY APPRECIATE YOUR WILLINGNESS

 9    TO SERVE.  THAT'S REALLY ADMIRABLE AND THANK YOU, I

10    REALLY APPRECIATE THAT, BUT I DON'T WANT TO

11    JEOPARDIZE YOUR NEW POSITION.  OKAY.

12              PROSPECTIVE JUROR:  THANK YOU, YOUR

13    HONOR.

14              THE COURT:  SO IF YOU WOULD PLEASE GO

15    BACK TO THE JURY ASSEMBLY ROOM ON THE SECOND FLOOR,

16    GO BACK TO MR. YOUNGER AND HE'LL GIVE YOU PROOF

17    THAT YOU DID YOUR JURY DUTY AND WORK OUT THE

18    LOGISTICS.

19              THANK YOU.  YOU ARE THANKED AND EXCUSED.

20              PROSPECTIVE JUROR:  THANK YOU, YOUR

21    HONOR.

22              THE COURT:  ALL RIGHT.  AND I'M SORRY,

23    MS. FLAVIN, YOU RAISED YOUR HAND?

24              PROSPECTIVE JUROR:  I WAS JUST TRYING TO

25    GET THE MIKE TO HIM.
```

```
 1                    THE COURT:  OH, OKAY.  ALL RIGHT.  THANK

 2        YOU.

 3                    ALL RIGHT.  WHO ON THE SECOND ROW RAISED

 4        THEIR HAND?  ANYONE ON THE SECOND ROW?  NO?  OKAY.

 5                    WHAT ABOUT ON THE THIRD ROW?

 6                    ALL RIGHT.  LET'S GO TO MR. ROGERS.

 7                    CAN YOU PASS THE MICROPHONE, PLEASE?

 8                    PROSPECTIVE JUROR:  NOT SO MUCH DIRECTLY,

 9        BUT INDIRECTLY, MY DAD'S A CARPENTER AND HE HASN'T

10        BEEN ABLE TO FIND MANY JOBS SINCE -- THAT ARE

11        WILLING TO GO THROUGH WITH REMODELS AND STUFF

12        SINCE, YOU KNOW, STUFF HAS GOTTEN WORSE AND HE'S

13        ACTUALLY HAD TO FILE FOR UNEMPLOYMENT TO KIND OF

14        HELP PAY FOR THE DEFICIT.

15                    THE COURT:  ALL RIGHT.  DO YOU NEED TO

16        WORK TO HELP SUPPORT YOUR FAMILY?  OR --

17                    PROSPECTIVE JUROR:  I'M CURRENTLY

18        UNEMPLOYED.

19                    THE COURT:  OKAY.  WOULD IT BE A HARDSHIP

20        FOR YOU TO SERVE ON THIS JURY THIS MANY DAYS?

21                    PROSPECTIVE JUROR:  I DON'T THINK SO.

22        THE HARDEST THING IS I'M A DEPENDENT, SO I MIGHT

23        HAVE TO GET RIDES.  THAT MIGHT GET A LITTLE

24        COMPLICATED.  BUT I DON'T BELIEVE THAT'LL BE THAT

25        COMPLEX.
```

```
 1              THE COURT:  OKAY.  I'M SORRY TO HEAR
 2    ABOUT YOUR FATHER'S SITUATION.  IS THERE ANYTHING
 3    ABOUT HIS CURRENT CHALLENGES THAT WOULD AFFECT YOUR
 4    ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE?
 5              PROSPECTIVE JUROR:  I DON'T -- I BELIEVE
 6    NO.
 7              THE COURT:  OKAY.
 8              PROSPECTIVE JUROR:  I DON'T THINK IT HAS
 9    ANYTHING TO DO WITH ELECTRONIC COMPANIES.
10              THE COURT:  OKAY.  AND WHAT ABOUT THE
11    RIDE SITUATION?  DO YOU THINK YOU CAN WORK THAT
12    OUT?
13              PROSPECTIVE JUROR:  THERE -- IT SEEMS
14    LIKE ALL THE DATES ARE IN THE MORNING, SO I -- IT
15    SHOULD PROBABLY BE NO PROBLEM AT ALL.
16              THE COURT:  OKAY.  AND PICK UPS AT THE
17    END OF THE DAY?
18              PROSPECTIVE JUROR:  YEAH.  I CAN WORK
19    THAT OUT.
20              THE COURT:  ALL RIGHT.  AND WHAT I MAY DO
21    IS ASK IF THERE ARE ANY JURORS WHO LIVE NEAR YOU,
22    LET ME FIND THAT OUT AND SEE IF THERE'S SOME
23    CARPOOLING WE COULD DO TO MAKE SURE THAT'S NOT A
24    BURDEN ON YOUR FAMILY.  OKAY?
25              PROSPECTIVE JUROR:  YEAH.
```

```
1              THE COURT:  ALL RIGHT.  THANK YOU.

2              ANYONE ELSE ON THE THIRD ROW?

3              OKAY.  MR. ILAGAN, RIGHT?

4              PROSPECTIVE JUROR: YES.

5              THE COURT:  GO AHEAD, PLEASE.

6              PROSPECTIVE JUROR: MY WIFE WAS LAID OFF

7   IN JANUARY OF 2008 AND SHE'S BEEN WORKING AS A TEMP

8   ON AND OFF SINCE THEN.

9              THE COURT:  OKAY.  AND WHAT WAS HER JOB

10  BEFORE SHE GOT LAID OFF?

11             PROSPECTIVE JUROR: SHE WAS IN PAYROLL.

12             THE COURT:  OKAY.  FOR WHOM DID SHE WORK?

13             PROSPECTIVE JUROR: OH, SEVERAL

14  COMPANIES.  SHE WORKS FOR ACCOUNT TEMPS RIGHT NOW.

15             THE COURT:  I SEE.  OKAY.  ANYTHING

16  ABOUT -- I'M SORRY TO HEAR ABOUT THAT.  ANYTHING

17  ABOUT THAT EXPERIENCE THAT WILL AFFECT YOUR ABILITY

18  TO BE FAIR AND IMPARTIAL IN THIS CASE?

19             PROSPECTIVE JUROR: NO.

20             THE COURT:  ALL RIGHT.  THANK YOU.

21             LET'S GO TO, I KNOW MS. HOLLOWAY, YOU

22  WANTED TO SPEAK, AND WE'LL DO ANYONE ELSE ON ROW 4.

23             PROSPECTIVE JUROR: I'M CURRENTLY

24  UNEMPLOYED.

25             THE COURT:  OKAY.  AND WHAT DID YOU
```

```
 1        PREVIOUSLY DO FOR WORK?

 2                  PROSPECTIVE JUROR:  GENERAL MANAGER FOR

 3        SODEXO SCIENCES IN FOSTER CITY.

 4                  THE COURT:  OKAY.  WOULD SERVING ON THIS

 5        JURY BE A HARDSHIP FOR YOU?

 6                  PROSPECTIVE JUROR:  NO HARDER THAN BEING

 7        UNEMPLOYED, NO.

 8                  THE COURT:  ALL RIGHT.  ANYTHING -- I'M

 9        SORRY TO HEAR ABOUT THIS.

10                  ANYTHING ABOUT YOUR SITUATION THAT WOULD

11        MAKE IT DIFFICULT FOR YOU TO BE FAIR AND IMPARTIAL

12        TO BOTH SIDES?

13                  PROSPECTIVE JUROR:  NONE AT ALL.

14                  THE COURT:  ALL RIGHT.  THANK YOU.

15                  ANYONE, I THINK MR. WONG, YOU RAISED YOUR

16        HAND.  IS THAT RIGHT?

17                  OH, OKAY, LET'S GO TO MR. COYLE THEN

18        FIRST.  GO AHEAD.

19                  PROSPECTIVE JUROR:  YEAH.  I'M CURRENTLY

20        EMPLOYED AT POWER HOUSE ELECTRONICS AS AN

21        ELECTRICIAN, AND I REALLY NEED TO WORK AS MUCH AS

22        POSSIBLE RIGHT NOW SO I CAN PAY RENT AND LIVE

23        HEALTHY.

24                  THE COURT:  OKAY.  AND YOU WILL NOT GET

25        PAID DURING THE JURY DAYS; IS THAT RIGHT?
```

```
 1                PROSPECTIVE JUROR:  WHAT?

 2                THE COURT:  YOU WILL NOT GET PAID BY

 3      POWER HOUSE ELECTRIC WHEN YOU ARE ON THE JURY?

 4                PROSPECTIVE JUROR:  NO, I WON'T.

 5                THE COURT:  AND THAT WOULD BE A HARDSHIP

 6      FOR YOU?

 7                PROSPECTIVE JUROR:  YEAH.

 8                THE COURT:  ANY OBJECTION TO EXCUSING

 9      MR. COYLE FOR HARDSHIP?

10                MR. LEE:  NO OBJECTION.

11                MR. PRICE:  NO OBJECTION.

12                THE COURT:  ALL RIGHT.  THEN YOU ARE

13      THANKED AND EXCUSED.  THANKS FOR BEING WILLING TO

14      SERVE, SIR, BUT YOU'RE THANKED AND EXCUSED.

15                IF YOU COULD PLEASE GO TO THE SECOND

16      FLOOR AND CHECK IN WITH MR. YOUNGER BEFORE YOU

17      LEAVE, HE CAN GIVE YOU THE PAPERWORK.

18                PROSPECTIVE JUROR:  ALL RIGHT, COOL.

19      HAVE A GOOD DAY.

20                THE COURT:  THANK YOU.  YOU, TOO.

21                ALL RIGHT.  LET'S GO TO MR. WONG.

22                PROSPECTIVE JUROR:  YEAH, I'M RECENTLY

23      LAID OFF FROM HEWLETT-PACKARD, AND I'M CURRENTLY

24      APPLYING FOR JOBS IN A FEW -- IN MANY COMPANIES.

25                AND SO I WOULD LIKE NOT TO MISS ANY
```

```
 1    OPPORTUNITIES DURING THIS TIME FOR POTENTIAL

 2    INTERVIEWS.

 3              THE COURT:  OKAY.  ALL RIGHT.  IS THERE

 4    ANY OBJECTION TO THANKING AND EXCUSING MR. WONG FOR

 5    HARDSHIP?

 6              MR. LEE:  NO, YOUR HONOR.

 7              MR. PRICE:  NO, YOUR HONOR.

 8              THE COURT:  ALL RIGHT.  MR. WONG, THANK

 9    YOU FOR YOUR WILLINGNESS TO SERVE AND GOOD LUCK IN

10    YOUR JOB SEARCH.

11              PROSPECTIVE JUROR:  THANK YOU.

12              THE COURT:  IF YOU WOULD, PLEASE, SIR, GO

13    TO THE SECOND FLOOR AND JUST CHECK IN WITH

14    MR. YOUNGER BEFORE YOU GO.

15              ALL RIGHT.  LET'S GO TO THE FIFTH ROW,

16    PLEASE.  ANYONE ON THE FIFTH ROW RAISE THEIR HAND?

17              ALL RIGHT.  LET'S GO TO MR. LADWIG.

18              PROSPECTIVE JUROR:  I'M UNEMPLOYED.  I'VE

19    BEEN OUT OF WORK SINCE 2007 LOOKING FOR A JOB.  I

20    WORKED FOR CREDENCE SYSTEMS IN THE PAST AS AN

21    ENGINEER AND I'M STILL LOOKING FOR A JOB.

22              THE COURT:  ALL RIGHT.  WOULD IT BE A

23    HARDSHIP FOR YOU TO SERVE ON THIS JURY WHEN YOU'RE

24    GOING TO BE OCCUPIED WITH THIS MANY DAYS, THIS MANY

25    WEEKS?
```

```
1              PROSPECTIVE JUROR:  NO.

2              THE COURT:  NO?  OKAY.  I'M SORRY TO HEAR

3    ABOUT YOUR SITUATION.

4              WOULD THIS IN ANY WAY AFFECT YOUR ABILITY

5    TO BE -- WELL, I THINK WE'RE ALREADY GOING TO BE

6    TALKING ABOUT SOME OF THESE ISSUES.

7              BUT BASED ON THE EMPLOYMENT SITUATION,

8    WOULD THAT AFFECT YOUR ABILITY TO BE FAIR TO BOTH

9    SIDES?

10             PROSPECTIVE JUROR:  NO.

11             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

12             ANYONE ELSE ON ROWS 5 OR 6?

13             ALL RIGHT.  THE RECORD SHOULD REFLECT

14   THAT NO FURTHER HANDS HAVE BEEN RAISED.

15             ALL RIGHT.  LET ME JUST ASK, I KNOW THAT

16   YOU ALL PREVIOUSLY HAD SAID YOU COULD ATTEND OUR

17   DATES, AND I THINK YOU HAVE ON YOUR CHAIR THE DATES

18   AND TIMES OF THIS TRIAL, BUT, YOU KNOW,

19   CIRCUMSTANCES CHANGE.

20             IS THERE ANYONE HERE THAT WE HAVEN'T

21   COVERED FOR WHOM IT WOULD BE A HARDSHIP TO SERVE

22   THIS MANY DAYS?

23             AND LET ME JUST TELL YOU THAT, AS I SAID

24   BEFORE, I HAVE IMPOSED TIGHT TIME LIMITS ON THE

25   PARTIES IN RESPECT OF YOUR TIME, AND AS WE GO
```

```
1    THROUGH THIS TRIAL, I'M GOING TO BE ANNOUNCING HOW
2    MUCH TIME PEOPLE ARE TAKING UP.
3              SO IT'S POSSIBLE THAT WE MAY FINISH THE
4    EVIDENCE PORTION OF THIS TRIAL POSSIBLY AS EARLY AS
5    THE 17TH OF AUGUST, BUT PROBABLY MORE LIKELY THE
6    20TH OR THE 21ST OF AUGUST.
7              AND THEN THE REST OF THE DAYS ARE FOR
8    YOUR DELIBERATIONS, AND I DON'T HAVE ANY LIMITS ON
9    YOUR DELIBERATIONS.  IF YOU NEED TO GO BEYOND
10   AUGUST THE 24TH, BY ALL MEANS, WE'RE AVAILABLE FOR
11   THAT.  BUT THE JURY DELIBERATION IS SOMETHING THAT
12   WE DON'T CONTROL THE LENGTH OF THAT.
13             SO LOOKING AT THIS SCHEDULE OF TRIAL
14   DATES AND TIMES, IS THERE ANYONE ELSE FOR WHOM
15   SERVICE WOULD BE A HARDSHIP?  IF SO, WOULD YOU
16   RAISE YOUR HAND?
17             LET'S GO TO ONLY MS. PHAN ON LINE --
18   JUROR NUMBER 15.  GO AHEAD.
19             PROSPECTIVE JUROR:  JUST ON THE JURY
20   DELIBERATION DATES, THAT'S WHEN SCHOOL STARTS AT
21   SAN JOSE STATE, AND I DON'T REALLY WANT TO LOSE MY
22   CLASSES ON THOSE DATES.
23             THE COURT:  SURE.  WHEN DOES SCHOOL
24   START?
25             PROSPECTIVE JUROR:  ON THE 22ND.
```

1          THE COURT:  OKAY.  ANY OBJECTION TO

2   EXCUSING MS. PHAN FOR HARDSHIP?

3          MR. LEE:  NONE, YOUR HONOR.

4          MR. PRICE:  NO, YOUR HONOR.

5          THE COURT:  ALL RIGHT.  MS. PHAN, THANK

6   YOU FOR YOUR WILLINGNESS TO SERVE, BUT I'M GOING TO

7   THANK AND EXCUSE YOU.

8          CAN YOU JUST LEAVE ALL THE PAPERS ON YOUR

9   CHAIR AND THE MICROPHONE, PLEASE?

10          AND IF YOU WOULD PLEASE JUST GO TO CHECK

11   IN WITH MR. YOUNGER, BUT THANK YOU SO MUCH FOR YOUR

12   WILLINGNESS TO SERVE TODAY.

13          OKAY.  ANYONE ELSE FOR WHOM THIS SCHEDULE

14   IS A HARDSHIP?

15          LET'S GO BACK UP TO MR. REYES, PLEASE.

16          PROSPECTIVE JUROR:  YEAH.  JUST BY

17   LOOKING AT THE LENGTH OF TIME, I DIDN'T REALIZE HOW

18   LONG THIS WOULD, MIGHT PROLONG.

19          THE COURT:  YES.

20          PROSPECTIVE JUROR:  THAT -- I MEAN, FOR

21   ME, IT'S OKAY.  BUT WE'RE -- YOU KNOW, WITH THE

22   CITY OF GILROY WHERE I WORK FOR, WE'RE KIND OF

23   SHORT STAFFED IN MY DEPARTMENT.

24          THE COURT:  YES.

25          PROSPECTIVE JUROR:  SO I DON'T KNOW, AND

1    I DIDN'T GO OVER WITH MY, YOU KNOW, MY SUPERVISOR

2    THE LENGTH OF TIME THAT IT COULD BE, SO I'M JUST --

3    FOR ME IT'S OKAY.

4            BUT FOR, YOU KNOW, BEING SHORT STAFFED,

5    SINCE THE LAYOFFS AND STUFF THAT THEY HAD BACK

6    WHEN, WE HAVEN'T RECOVERED FROM THAT YET.

7            BUT THAT'S THE ONLY THING.

8            THE COURT:  OKAY.  AND THERE'S NO ONE

9    ELSE WHO CAN DO YOUR JOB IN YOUR ABSENCE?

10           PROSPECTIVE JUROR:  WELL, YEAH, THERE IS.

11   IT'S JUST THAT WE'RE SHORT STAFFED.

12           THE COURT:  I SEE.

13           PROSPECTIVE JUROR:  THERE'S A LOT TO DO

14   THERE.  FOR ME, I CAN DO IT.  BUT I JUST DIDN'T

15   MAKE A GOOD CONTACT WITH MY SUPERVISOR ABOUT HOW

16   LONG IT'S GOING TO BE, SO I'M NOT SURE IF -- YOU

17   KNOW, I'M COVERED BUT, YOU KNOW, I DON'T KNOW HOW

18   HE WOULD TAKE IT.

19           THE COURT:  I SEE.  AND MAY I ASK WHAT

20   YOU DO AT -- FOR THE CITY OF GILROY?

21           PROSPECTIVE JUROR:  STREET MAINTENANCE

22   DEPARTMENT FOR THE CITY OF GILROY.

23           THE COURT:  OKAY.  SO YOU HAVE COVERAGE,

24   BUT YOUR CO-WORKERS MAY BE REALLY BURDENED BY THE

25   EXTRA WORK?

```
 1              PROSPECTIVE JUROR:  YEAH.  WE'RE JUST

 2    SHORT STAFFED WITH THE STUFF WE HAVE TO DO THERE.

 3              THE COURT:  OKAY.  ALL RIGHT.  WELL, I

 4    APPRECIATE THAT, BUT I'M NOT GOING TO EXCUSE YOU

 5    FOR HARDSHIP.  THANK YOU.

 6              PROSPECTIVE JUROR:  WHAT'S THAT?

 7              THE COURT:  OKAY.  LET'S GO TO NUMBER 13.

 8    MR. BARRAGAN, GO AHEAD, PLEASE.

 9              PROSPECTIVE JUROR:  JUST A QUESTION.  IF

10    I'M SELECTED, COULD I TAKE THE 17TH?  I ALREADY

11    RSVP'D FOR MY COUSIN'S WEDDING.

12              THE COURT:  SO THE 17TH YOU WOULD BE

13    GONE?

14              PROSPECTIVE JUROR:  YEAH.  I ALREADY HAVE

15    IT OFF FROM WORK.

16              THE COURT:  OKAY.  WELL, I THINK THAT

17    WOULD PROBABLY BE PROBLEMATIC BECAUSE WE CAN'T GO

18    FORWARD WITHOUT OUR FULL JURY, SO WE WOULDN'T BE

19    ABLE TO DO THE EVIDENCE, AND YOU CAN ONLY

20    DELIBERATE WHEN ALL TEN ARE IN THE ROOM.  YOU

21    CAN'T -- YOU REALLY SHOULD EVEN WAIT IF SOMEONE IS

22    IN THE BATHROOM, BECAUSE EVERYONE WOULD NEED TO BE

23    PART OF THE DISCUSSION.

24              SO WOULD YOU BE LEAVING THE 16TH AS WELL,

25    OR JUST THE 17TH?
```

1       PROSPECTIVE JUROR:  NO.  IT'S JUST THE

2    17TH.

3       THE COURT:  ALL RIGHT.  IS THERE ANY

4    OBJECTION TO EXCUSING MR. BARRAGAN FOR CAUSE FOR

5    HARDSHIP EXCUSE?

6       MR. LEE:  NONE.

7       MR. PRICE:  NO, YOUR HONOR.

8       THE COURT:  ALL RIGHT.  THEN YOU ARE

9    THANKED AND EXCUSED, SIR.  PLEASE GO CHECK IN ON

10   THE SECOND FLOOR WITH MR. YOUNGER.

11      THE CLERK:  SIR, IF YOU COULD PLEASE

12   LEAVE THE INFORMATION ON YOUR CHAIR HERE.  THANK

13   YOU.

14      THE COURT:  YEAH, LEAVE THE INFORMATION

15   ON YOUR CHAIR.

16      I'M AFRAID TO ASK, BUT ANYONE ELSE?

17   OKAY.  I GOT TWO MORE.

18      ALL RIGHT.  LET'S GO TO MS. HUYNH.

19      PROSPECTIVE JUROR:  I START SCHOOL AT

20   EVERGREEN COLLEGE ON THE 23RD.

21      THE COURT:  ALL RIGHT.  ANY OBJECTION TO

22   EXCUSING MS. HUYNH FOR HARDSHIP?

23      MR. LEE:  NO, YOUR HONOR.

24      MR. PRICE:  NO, YOUR HONOR.

25      THE COURT:  ALL RIGHT.  THEN YOU'RE

```
 1    THANKED AND EXCUSED.  PLEASE JUST CHECK IN WITH

 2    MR. YOUNGER.

 3              ALL RIGHT.  I BELIEVE MR. WARMAN, YOU

 4    RAISED YOUR HAND.

 5              PROSPECTIVE JUROR:  YES.

 6              THE COURT:  GO AHEAD, PLEASE.

 7              PROSPECTIVE JUROR:  I FEEL KIND OF BAD

 8    ABOUT IT, BUT I HAVE A WEEK VACATION THAT'S ALREADY

 9    PRESCHEDULED AT THAT TIME EVERY YEAR, AND I

10    CAN'T -- I DON'T KNOW IF I CAN CHANGE IT OR NOT.  I

11    CAN CALL THEM AND ASK.

12              THE COURT:  WHEN IS IT SCHEDULED FOR?

13              PROSPECTIVE JUROR:  IT'S THE WEEK OF THE

14    20TH.

15              THE COURT:  AND YOU WOULD BE OUT THE

16    WHOLE WEEK?

17              PROSPECTIVE JUROR:  YEAH.  I DIDN'T

18    REALIZE THIS WENT ALL THE WAY TO THAT WEEK.  I

19    THOUGHT IT WAS THE WEEK BEFORE.  I APOLOGIZE FOR

20    THAT.

21              THE COURT:  THAT'S OKAY.  IS THIS A

22    PREPAID VACATION?

23              PROSPECTIVE JUROR:  YEAH.

24              THE COURT:  YOU'VE ALREADY PAID FOR IT?

25              PROSPECTIVE JUROR:  EVERY YEAR, YEAH.
```

```
 1              THE COURT:  OKAY.  HOW MANY PEOPLE DO I
 2    HAVE?
 3              ALL RIGHT.  ANY OBJECTION TO EXCUSING
 4    MR. WARMAN FOR HARDSHIP?
 5              MR. LEE:  NONE, YOUR HONOR.
 6              THE COURT:  ALL RIGHT.
 7              MR. PRICE:  NO, YOUR HONOR.
 8              THE COURT:  MR. WARMAN, YOU'RE THANKED
 9    AND EXCUSED.  IF YOU WOULD PLEASE LEAVE THE PAPERS
10    ON YOUR CHAIR AND PLEASE CHECK IN WITH MR. YOUNGER.
11              THANK YOU.
12              PROSPECTIVE JUROR:  I JUST NEED TO TAKE A
13    SMALL BREAK.
14              THE COURT:  YES, WHY DON'T WE TAKE A --
15    WHY DON'T WE TAKE BIO BREAK?  CAN WE TAKE IT FOR --
16    I'D LIKE TO KEEP GOING.  WHAT ABOUT -- WOULD TEN
17    MINUTES BE SUFFICIENT?  OKAY.  LET'S TAKE A
18    TEN-MINUTE BREAK.  THANK YOU.
19              (WHEREUPON, A RECESS WAS TAKEN.)
20              THE COURT:  ALL RIGHT.  LET ME READ YOU A
21    PRELIMINARY JURY INSTRUCTION BECAUSE WE'RE ABOUT TO
22    BREAK FOR LUNCH.  I SORT OF TOLD YOU MOST OF THE
23    SUBSTANCE OF THIS ALREADY, BUT BECAUSE YOU HAVE TO
24    DECIDE THIS CASE BASED SOLELY ON THE EVIDENCE
25    THAT'S ADMITTED DURING THIS TRIAL AND TO APPLY THE
```

```
 1   LAW ONLY AS I INSTRUCT YOU, YOU CAN'T BE EXPOSED TO

 2   ANY OTHER INFORMATION UNTIL THE END OF THE CASE OR

 3   UNTIL I TELL YOU OTHERWISE.

 4        DO NOT COMMUNICATE WITH ANYONE IN ANY

 5   WAY.  DO NOT LET ANYONE ELSE COMMUNICATE WITH YOU

 6   IN ANY WAY ABOUT THE MERITS OF THE CASE OR ANYTHING

 7   TO DO WITH IT.  THIS INCLUDES DISCUSSING THE CASE

 8   IN PERSON, IN WRITING, BY PHONE OR ELECTRONIC MEANS

 9   VIA E-MAIL, TEXT MESSAGES, OR ANY INTERNET CHAT

10   ROOM OR BLOG, WEBSITE OR OTHER FEATURE.

11        THIS APPLIES TO COMMUNICATING WITH YOUR

12   FELLOW JURORS UNTIL I GIVE YOU THE CASE FOR

13   DELIBERATION, AND IT APPLIES TO COMMUNICATING WITH

14   ANYONE ELSE, INCLUDING YOUR FAMILY MEMBERS, YOUR

15   EMPLOYER, THE MEDIA, THE PRESS, AND THE PEOPLE

16   INVOLVED IN THE TRIAL.

17        ALTHOUGH YOU MAY NOTIFY YOUR FAMILY AND

18   YOUR EMPLOYER THAT YOU HAVE BEEN SEATED AS A JUROR

19   IN THIS CASE IF YOU ARE, IN FACT, SEATED, BUT IF

20   YOU'RE ASKED OR APPROACHED IN ANY WAY ABOUT YOUR

21   JURY SERVICE OR ANYTHING ABOUT THIS CASE, YOU MUST

22   RESPOND THAT YOU HAVE BEEN ORDERED NOT TO DISCUSS

23   THE MATTER AND TO REPORT THE CONTACT TO THE COURT.

24        BECAUSE YOU WILL RECEIVE ALL THE EVIDENCE

25   AND LEGAL INSTRUCTION YOU PROPERLY MAY CONSIDER TO
```

1    RETURN A VERDICT, YOU ARE NOT TO READ, WATCH, OR

2    LISTEN TO ANY NEWS OR MEDIA ACCOUNTS OR COMMENTARY

3    ABOUT THE CASE OR ANYTHING TO DO WITH IT.

4         DO NOT DO ANY RESEARCH, SUCH AS

5    CONSULTING DICTIONARIES, SEARCHING THE INTERNET, OR

6    USING OTHER REFERENCE MATERIALS, AND DO NOT MAKE

7    ANY INVESTIGATION OR IN ANY OTHER WAY TRY TO LEARN

8    ABOUT THE CASE ON YOUR OWN.

9         SO NO ONE IS TO DO THEIR OWN CSI

10   INVESTIGATION.  IT'S LIMITED TO WHAT YOU CAN

11   CONSIDER FROM THE COURTROOM IN THIS TRIAL.

12        THE LAW REQUIRES THESE RESTRICTIONS TO

13   ENSURE THE PARTIES HAVE A FAIR TRIAL BASED ON THE

14   SAME EVIDENCE THAT EACH PARTY HAS HAD AN

15   OPPORTUNITY TO ADDRESS.

16        A JUROR WHO VIOLATES THESE RESTRICTIONS

17   JEOPARDIZES THE FAIRNESS OF THESE PROCEEDINGS AND A

18   MISTRIAL COULD RESULT THAT WOULD REQUIRE US TO DO

19   THE ENTIRE TRIAL PROCESS ALL OVER FROM THE

20   BEGINNING.

21        SO IF ANY JUROR IS EXPOSED TO ANY OUTSIDE

22   INFORMATION, PLEASE NOTIFY THE COURT IMMEDIATELY.

23        NOW, BECAUSE NONE OF US CAN SPEAK WITH

24   YOU IF WE RUN INTO YOU IN THE HALLWAY OR IN THE

25   BATHROOM AND DON'T SHOW ANY EXPRESSION AND ARE NOT

```
1    FRIENDLY, IT'S NOT THAT WE DON'T LIKE YOU.  BUT WE

2    JUST CANNOT CREATE ANY SITUATION WHERE A

3    CONVERSATION WOULD START.

4              I'M SAYING THAT AS WELL FOR THE PARTIES

5    AND THE LAWYERS.  IT'S NOT THAT THEY'RE UNFRIENDLY.

6    IT'S JUST THAT WE CAN'T HAVE ANY COMMUNICATION WITH

7    YOU.  IF YOU SEE SOME SLIGHT AWKWARD AVOIDANCE,

8    IT'S BECAUSE EVERYONE IS TRYING TO RESPECT THE

9    INTEGRITY OF THE JURY.

10             OKAY.  ALL RIGHT.  WHAT I'D LIKE TO DO IS

11   I HAVE SOME MORE QUESTIONS AND THEN I'M GOING TO

12   EXCUSE EVERYONE EARLY AND THEN I'D LIKE TO HAVE

13   MR. TRIPIANO AND MR. DEPRIEST AND MR. SHAH AND --

14   ACTUALLY, MS. HUYNH IS NOW GONE -- BUT MR. LADWIG,

15   YOU'LL STAY BEHIND.  I WILL ASK YOU JUST TO WAIT IN

16   OUR JURY ROOM HERE AND I'LL BRING YOU OUT ONE BY

17   ONE AND THEN WE'LL HAVE A MORE PRIVATE

18   CONVERSATION.

19             OKAY?  BUT UNTIL WE GET TO THAT POINT,

20   LET'S KEEP GOING.

21             LET ME ASK, WHO HERE HAS OWNED A

22   BUSINESS?  CAN YOU RAISE YOUR HAND IF YOU'VE OWNED

23   A BUSINESS?

24             ALL RIGHT.  CAN WE HAVE THE MICROPHONE

25   PASSED BACK, PLEASE?  THANK YOU.
```

125

```
 1                THE CLERK:  YOU WANT TO START BACK HERE?
 2                THE COURT:  YES.  LET'S START WITH
 3     MR. HOGAN.
 4                WHAT KIND OF BUSINESS HAVE YOU HAD, SIR?
 5                PROSPECTIVE JUROR:  I HAVE -- I HAD -- I
 6     HAD A START-UP -- I HAD A START-UP IN VIDEO
 7     COMPRESSION FROM ABOUT 2000 UNTIL IT WENT BELLY UP
 8     IN 2007.
 9                THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
10     WE'LL GET INTO A LITTLE MORE OF YOUR BACKGROUND IN
11     A MINUTE.
12                LET ME ASK MR. BELLA, DID YOU RAISE YOUR
13     HAND?
14                PROSPECTIVE JUROR:  YES.  MY FATHER AND
15     MY BROTHERS HAD OUR OWN BUSINESS, A TWO-WAY RADIO
16     BUSINESS STARTING IN THE 1970S, ABOUT 18 YEARS.
17     THAT WAS THE BEGINNING OF GPS AND CELL PHONES, SO
18     WE WERE KIND OF ON THE GROUND FLOOR ON THAT, AS
19     WELL AS THE TWO-WAY RADIO BUSINESS.
20                THE COURT:  OKAY.  THANK YOU.
21                ANYONE ELSE ON ROW 1?  NO.
22                WHAT ABOUT ROW 2?
23                ALL RIGHT.  LET'S GO TO MS. LEROSE.
24                PROSPECTIVE JUROR:  YES, I OWN MY OWN
25     NATIONALLY ACCREDITED PRESCHOOL AND CLOSED IT IN
```

```
 1    2005 TO TAKE CARE OF A SISTER WHO HAS SINCE PASSED;

 2    AND OWNED A VACATION RENTAL, WHICH IS ALSO CLOSED

 3    BECAUSE OF THE ECONOMY ACTUALLY.

 4              THE COURT:  OKAY.  I'M NOT SURE I HEARD

 5    ALL OF THAT.  SO YOU CLOSED THE PRESCHOOL IN 2005

 6    TO TAKE CARE OF A RELATIVE WHO'S SINCE PASSED AWAY?

 7              PROSPECTIVE JUROR:  YES.

 8              THE COURT:  AND YOU ALSO HAD A VACATION

 9    RENTAL, BUT NOT ANYMORE?

10              PROSPECTIVE JUROR:  CORRECT.

11              THE COURT:  OKAY.  WHO ELSE?  THANK YOU.

12              MR. TRIPIANO, GO AHEAD.

13              PROSPECTIVE JUROR:  I HAD AN OFFSITE

14    ON-LINE BACKUP, DATA BACKUP BUSINESS, ONE OF THE

15    FIRST ONES WHEN THAT INDUSTRY WAS FIRST GETTING

16    STARTED.  US PIONEERS ARE GONE AND -- BUT THE

17    INDUSTRY HAS GONE ON TO BE PRETTY DOMINANT TODAY.

18              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19              WHAT ABOUT MS. FRIESEN?

20              PROSPECTIVE JUROR:  CORRECT.  I HAVE -- I

21    USED TO OWN A FRANCHISE INSURANCE AGENCY.

22              THE COURT:  AND HOW LONG AGO WAS THAT?

23              PROSPECTIVE JUROR:  2006, I BELIEVE.

24              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25              MR. CATHERWOOD?  YOU DIDN'T RAISE YOUR
```

```
1    HAND.  OKAY.

2              WHAT ABOUT ON -- MR. DEPRIEST?

3              PROSPECTIVE JUROR:  I OWNED TWO RESALE

4    STORES.  I STARTED IN 1998 AND CLOSED IN 2003.  ONE

5    WAS IN DOWNTOWN SANTA CRUZ, ONE WAS ON CANNERY ROW

6    IN MONTEREY.

7              THE COURT:  AND WHAT WAS SOLD THERE?

8              PROSPECTIVE JUROR:  TCHOTCHKES THAT

9    TOURISTS BUY.

10             THE COURT:  THANK YOU.  MR. SHAH, DID YOU

11   RAISE YOUR HAND?  NO?  OKAY.

12             ANYONE ELSE ON ROW 3?  NO?  OKAY.

13             ROW 4, ROW 5, ROW 6, ANYONE ELSE OWNED A

14   BUSINESS?

15             ALL RIGHT.  LET'S GO, PLEASE, TO

16   MR. THORPE.

17             PROSPECTIVE JUROR:  I HAD A COFFEE CART

18   THAT I RAN FOR EIGHT AND A HALF YEARS AND I SOLD IT

19   SIX YEARS AGO.  IT WAS LOCATED INSIDE OF A

20   HOSPITAL.

21             THE COURT:  OKAY.  THANK YOU.

22             ALL RIGHT.  LET ME ASK -- OH, I'M SORRY.

23   WE HAVE ONE MORE HAND UP.  MS. MATHUR.

24             PROSPECTIVE JUROR:  YES.

25             THE COURT:  NUMBER 20.
```

```
1                PROSPECTIVE JUROR:  I WORK AS A HUMAN

2       RESOURCES CONSULTANT FOR AN AGENCY, BUT I WAS

3       LISTING MY HOME AS MY OFFICE.

4                THE COURT:  OKAY.

5                PROSPECTIVE JUROR:  BUT I CLOSED DOWN

6       LAST YEAR.

7                THE COURT:  OKAY.

8                PROSPECTIVE JUROR:  SO IT WASN'T

9       PREDOMINANTLY A BUSINESS, BUT I JUST WANTED TO

10      BRING THIS UP.

11               THE COURT:  THANK YOU.  THANK YOU.

12               OKAY.  LET ME ASK HERE --

13               MR. LEE:  YOUR HONOR, THERE'S ONE MORE

14      HAND.

15               THE COURT:  I'M SORRY.  CAN WE PASS THE

16      MICROPHONE TO MS. HALIM?

17               PROSPECTIVE JUROR:  I DON'T DIRECTLY OWN

18      IT, BUT I'M THE GENERAL PARTNER OF A PARTNERSHIP

19      THAT OWNS THE CURRENT COMPANY THAT I'M WORKING IT.

20               THE COURT:  OKAY.  AND THAT'S THE VOICE

21      OVER I.P. COMPANY?

22               PROSPECTIVE JUROR:  YES.

23               THE COURT:  OKAY.  ALL RIGHT.  ANYONE

24      ELSE?

25               OKAY.  THE RECORD SHOULD REFLECT NO ONE
```

```
 1    ELSE HAS RAISED THEIR HANDS.

 2              LET ME ACTUALLY GO AHEAD, I'M GOING TO

 3    EXCUSE YOU A LITTLE EARLY AND I'D LIKE TO SPEAK IN

 4    PRIVATE WITH MR. TRIPIANO, MR. DEPRIEST, MR. SHAH,

 5    AND MR. LADWIG.

 6              I'M GOING TO GO AHEAD AND EXCUSE YOU TEN

 7    MINUTES EARLY FOR LUNCH.  WE ARE TO START BACK UP

 8    AT 1:00 O'CLOCK.

 9              SO IF YOU WOULD, PLEASE --

10              MARTHA --

11              (DISCUSSION OFF THE RECORD BETWEEN THE

12    COURT AND THE CLERK.)

13              THE COURT:  IF YOU WOULD, PLEASE, BY 1:00

14    O'CLOCK GO TO THE JURY ASSEMBLY ROOM, THAT'S THE

15    ROOM WHERE YOU WERE THIS MORNING ON THE SECOND

16    FLOOR, AND JUST REPORT IN THERE.

17              IN THE MEANTIME, SAME ADMONITION.  DO NOT

18    SPEAK WITH ANYONE ABOUT THIS CASE.  DO NOT DO ANY

19    RESEARCH ABOUT THIS CASE.

20              MR. TRIPIANO, I WANT TO SEIZE THAT PAPER.

21              NO ONE PLEASE DO ANY OF YOUR OWN RESEARCH

22    ON THE CASE BECAUSE THE INTEGRITY OF THE JURY

23    REQUIRES THAT YOUR ONLY ACCESS TO INFORMATION ABOUT

24    THIS CASE IS THE EVIDENCE THAT'S ADMITTED DURING

25    THE TRIAL.  OKAY?  ALL RIGHT.  SO PLEASE GO AHEAD.
```

```
 1            I'M GOING TO ASK THAT THE FOUR

 2    INDIVIDUALS THAT I'VE NAMED, IF YOU WOULD PLEASE

 3    STAY.

 4            PROSPECTIVE JUROR:  LEAVE THIS HERE?

 5            THE COURT:  YES.  KEEP ALL YOUR PAPERS

 6    AND YOUR NUMBERS ON YOUR CHAIRS, PLEASE, NUMBERS

 7    AND ALL PAPERWORK.

 8            OKAY.  SO WHAT WE'RE GOING TO DO, I'M

 9    GOING TO ASK MR. DEPRIEST, MR. SHAH, AND

10    MR. LADWIG, WE'LL KEEP MR. TRIPIANO HERE FOR A

11    MINUTE, IF THE THREE OF YOU GENTLEMEN WOULD PLEASE

12    GO INTO OUR JURY ROOM, WE'RE GOING TO HAVE A

13    CONVERSATION OUTSIDE YOUR PRESENCE, AND THEN WE'LL

14    JUST BRING YOU IN EACH ONE BY ONE.  OKAY?  THANK

15    YOU.

16            (WHEREUPON, THE FOLLOWING PROCEEDINGS

17    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

18    JURORS WITH ONLY MR. TRIPIANO PRESENT.)

19            THE COURT:  OTHER THAN MR. TRIPIANO, IS

20    THERE ANY OTHER JUROR IN THE COURTROOM?

21            OKAY.  THE RECORD SHOULD REFLECT THAT

22    THERE ARE NONE.

23            ALL RIGHT.  MR. TRIPIANO, GO AHEAD AND

24    TELL ME WHY YOU CAN'T BE FAIR AND IMPARTIAL IN THIS

25    CASE.
```

```
1              PROSPECTIVE JUROR:  THERE ARE SEVERAL,

2     SEVERAL REASONS, BUT DIRECTLY RELATING TO WHAT I

3     READ THIS MORNING THAT HAS TO DO WITH THIS, TO ME

4     THIS SEEMS LIKE SOMETHING THAT WAS HASHED OUT YEARS

5     AGO WHEN APPLE SUED MICROSOFT FOR BASICALLY THE

6     SAME REASON, WHICH WAS --

7              THE COURT:  OH, HANG ON A SECOND.

8              PROSPECTIVE JUROR:  WHICH WAS THAT APPLE

9     HAD A VERY NICE OPERATING SYSTEM THAT WAS VERY

10    POPULAR.

11             MICROSOFT, THROUGH THEIR WINDOWS PRODUCT,

12    PRETTY MUCH REPLICATED IT, BUT HAD SOME SLIGHTLY

13    DIFFERENT FEATURES.

14             AND SO WE WENT THROUGH THIS WHOLE THING

15    BACK THEN, AND OBVIOUSLY MICROSOFT PREVAILED IN

16    THAT SITUATION.

17             SO, YOU KNOW, IN MY MIND THIS IS -- THIS

18    IS PRACTICALLY THE EXACT SAME THING, BUT NOW WE'RE

19    JUST DEALING WITH SLIGHTLY DIFFERENT TECHNOLOGY,

20    WHICH WAS THE TABLETS AND THE SMARTPHONES.

21             THE COURT:  OKAY.  LET ME INTERRUPT YOU

22    JUST A SECOND.  I'M SORRY TO DO THIS.  BUT -- SO

23    YOU CANNOT BE FAIR TO BOTH SIDES IN THIS CASE?

24             PROSPECTIVE JUROR:  I THINK WE'VE DONE

25    THIS ALREADY.
```

```
 1                  THE COURT:  I NEED A YES OR NO ANSWER TO

 2      MY QUESTION.

 3                  PROSPECTIVE JUROR:  NO.

 4                  THE COURT:  YOU CANNOT.

 5                  ANY OBJECTION TO EXCUSING MR. TRIPIANO

 6      FOR CAUSE?

 7                  MR. LEE:  NO OBJECTION.

 8                  THE COURT:  ALL RIGHT.  MR. PRICE?

 9                  MR. PRICE:  YOUR HONOR, MY ONLY REASON TO

10      NOT OBJECT AT THIS POINT IS I THINK THERE MIGHT BE

11      A MISUNDERSTANDING FOR -- AS TO WHAT THIS CASE IS

12      ABOUT.  I'M NOT SURE THE PRESS WAS ACCURATE.

13                  SO I'M WONDERING IF MR. TRIPIANO WAS

14      GIVEN, LIKE, A GENERAL DESCRIPTION AS TO, AS TO,

15      FOR EXAMPLE, THE FACT THAT THE OPERATING SYSTEMS

16      AREN'T INVOLVED HERE, WHETHER OR NOT THAT AFFECTS

17      WHETHER OR NOT HE THINKS HE MIGHT BE ABLE TO JUDGE

18      THIS CASE INDEPENDENTLY.

19                  THE COURT:  ALL RIGHT.  HEARING THAT IT

20      DOESN'T INVOLVE OPERATING SYSTEMS --

21                  PROSPECTIVE JUROR:  RIGHT.  AND I REALLY

22      DON'T KNOW, WHEN YOU GET DOWN TO THE WEEDS OF THIS,

23      AS TO WHAT THE ACTUAL TECHNOLOGY IS THAT WE'RE

24      TALKING ABOUT.

25                  BUT IT IS SIMILAR -- IN MY MIND, FROM
```

```
1    WHAT I READ THIS MORNING, IT IS SIMILAR TO WHAT

2    APPLE AND MICROSOFT WENT THROUGH YEARS AGO BECAUSE

3    YOU'RE TALKING ABOUT, ACCORDING TO THE ARTICLE, HOW

4    THE APPS ARE ALIGNED ON THE SCREEN, THE CORNERS OF

5    HOW THE SCREEN LOOKS.

6           THERE IS SUPPOSEDLY A SMOKING GUN, WHICH

7    IS AN E-MAIL THAT A SAMSUNG EMPLOYEE, OR

8    CONSULTANT, WROTE INTERNALLY THAT SAID, "BOY, WE

9    NEED TO MAKE THIS LOOK A LITTLE BIT DIFFERENTLY.

10   IT LOOKS TOO MUCH LIKE THE APPLE PRODUCT."

11          IN MY MIND, THAT DOESN'T HOLD ANY WATER.

12   THERE IS COMPANIES THAT --

13          THE COURT:  MR. TRIPIANO, I'M SORRY, LET

14   ME INTERRUPT YOU ONE MORE TIME.  WOULD YOU BE ABLE

15   TO KEEP AN OPEN MIND IN THIS CASE?

16          PROSPECTIVE JUROR:  HERE'S THE OTHER

17   ASPECT OF THIS.  THIS IS THE THIRD KIND OF LEGAL

18   PROCEEDINGS THAT I'VE GONE THROUGH.  ONE WAS A, A

19   TRIAL.  THE OTHER ONE WAS AN ARBITRATION.

20          THE COURT:  WERE YOU A PARTY IN THOSE

21   CASES?

22          PROSPECTIVE JUROR:  I WAS A PARTY IN ONE,

23   I WAS A JUROR IN THE OTHER.

24          THE COURT:  OKAY.

25          PROSPECTIVE JUROR:  AND THE ONE WHERE I
```

1    WAS A JUROR, I REALLY DIDN'T FEEL LIKE JUSTICE GOT

2    DONE.

3            I MEAN, BETWEEN THE TWISTING AND THE

4    CONVOLUTED LOGIC THAT WE GOT FROM THE ATTORNEYS AND

5    THEN THE INSTRUCTIONS, IT WAS LIKE OUR HANDS WERE

6    TIED.

7            AND SO YOU SAID SEVERAL TIMES THAT, YOU

8    KNOW, BASED ON WHAT WE HEARD AND BASED ON YOUR

9    INSTRUCTIONS, WHAT YOU'RE TELLING ME IS I CAN'T --

10   I CAN'T USE MY --

11           THE COURT:  YOU CAN'T SUBSTITUTE YOUR OWN

12   VIEWS OF WHAT THE LAW SHOULD BE.

13           PROSPECTIVE JUROR:  NOT VIEWS OF THE LAW.

14           THE COURT:  OKAY.

15           PROSPECTIVE JUROR:  BUT JUST MY OWN SENSE

16   OF RIGHT AND WRONG, MY OWN SENSE OF JUSTICE.  YOU

17   KNOW, IT'S ALL -- IT SEEMS, IN THIS SETTING, IT

18   SEEMS TO GET ALL TWISTED UP.

19           IN THE CASE WHERE I WAS A PARTY TO IT, WE

20   HAD -- OUR FAMILY HAD SOME RENTALS THAT WE HAD,

21   THERE WAS A FIRE ON CHRISTMAS EVE.  THE WIFE DIED.

22   THE HUSBAND WAS BURNED OVER 30 PERCENT OF HIS BODY.

23   THE BABY, 18-MONTH-OLD BABY WAS BURNED OVER 85

24   PERCENT OF HIS BODY.

25           THE FIRE DEPARTMENT'S REPORT WAS THAT,

```
 1    THAT THEY TOOK THE SMOKE DETECTOR --

 2              THE COURT:  I'M SORRY.  I HAVE TO

 3    INTERRUPT YOU.

 4              PROSPECTIVE JUROR:  THE BOTTOM LINE IS --

 5              THE COURT:  WHAT'S THE BOTTOM LINE?  GIVE

 6    ME THE BOTTOM LINE.

 7              PROSPECTIVE JUROR:  THE BOTTOM LINE OF

 8    THAT WHOLE SITUATION WAS WE DIDN'T DO ANYTHING

 9    WRONG, BUT OUR INSURANCE COMPANIES HAD TO PAY

10    MILLIONS OF DOLLARS TO -- FOR THE BABY.

11              NOW, I FELT BADLY FOR THE BABY.

12              BUT IN TERMS OF DOING JUSTICE AND WHAT'S

13    RIGHT AND WRONG --

14              THE COURT:  YOU DON'T THINK THE JUSTICE

15    SYSTEM DID THAT IN THE TWO CASES WHERE YOU WERE A

16    JUROR AND ONE WHERE YOU WERE A PARTY?

17              PROSPECTIVE JUROR:  RIGHT.

18              MR. PRICE:  WE WITHDRAW OUR OBJECTION.

19              THE COURT:  ALL RIGHT.  THEN I'M GOING TO

20    THANK YOU AND EXCUSE YOU.  THANK YOU FOR YOUR

21    WILLINGNESS TO SERVE.

22              IF YOU WOULD PLEASE LEAVE THE NUMBER AND

23    THE PAPERS ON YOUR CHAIR, AND IF YOU WOULD PLEASE

24    GO TO THE SECOND FLOOR AND JUST CHECK IN WITH

25    MR. YOUNGER AND HE CAN GIVE YOU THE PAPERWORK.
```

```
 1                    YOU CAN TAKE THAT WITH YOU.

 2                    ALL RIGHT.  THANK YOU, SIR.

 3                    PROSPECTIVE JUROR:  THANK YOU.

 4                    THE COURT:  ALL RIGHT.  LET'S BRING IN

 5       MR. DEPRIEST.

 6                    (WHEREUPON, THE FOLLOWING PROCEEDINGS

 7       WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

 8       JURORS WITH ONLY MR. DEPRIEST PRESENT.)

 9                    THE COURT:  ALL RIGHT.  YOU CAN TAKE ANY

10       SEAT YOU WISH.

11                    WHY DON'T YOU BRIEFLY TELL US WHY YOU

12       THINK YOU CAN'T BE FAIR AND IMPARTIAL.

13                    PROSPECTIVE JUROR:  ONE OF THE PLAINTIFFS

14       IS MY EMPLOYER.

15                    THE COURT:  ALL RIGHT.  AND SO YOU COULD

16       NOT KEEP AN OPEN MIND?  YOU WOULD FEEL PRESSURE TO

17       HAVE YOUR EMPLOYER PREVAIL IN THIS CASE?

18                    PROSPECTIVE JUROR:  I FEEL -- YES.  I

19       MEAN, I WOULD LIKE FOR MY EMPLOYER TO PREVAIL.

20                    THE COURT:  ALL RIGHT.  WELL, IS THERE AN

21       OBJECTION TO EXCUSING MR. DEPRIEST FOR CAUSE?

22                    MR. PRICE:  NO, YOUR HONOR.

23                    MR. LEE:  NONE, YOUR HONOR.

24                    THE COURT:  ALL RIGHT.  THEN I'M GOING TO

25       THANK YOU AND EXCUSE YOU, MR. DEPRIEST.  THANK YOU
```

```
 1    FOR YOUR WILLINGNESS TO SERVE.

 2              IF YOU WOULD LEAVE WHATEVER PAPERS ON THE

 3    CHAIR.

 4              AND THEN WOULD YOU PLEASE JUST REPORT TO

 5    MR. YOUNGER AND MAKE SURE THAT --

 6              PROSPECTIVE JUROR:  YES, MA'AM.

 7              THE COURT:  ALL RIGHT.  THANK YOU.

 8              CAN YOU PLEASE BRING IN MR. SHAH.

 9              (WHEREUPON, THE FOLLOWING PROCEEDINGS

10    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

11    JURORS WITH ONLY MR. SHAH PRESENT.)

12              THE COURT:  THANK YOU, MR. SHAH.  TAKE A

13    SEAT ANYWHERE.

14              MR. SHAH, YOU WANT TO JUST TELL US VERY

15    BRIEFLY WHY YOU DON'T THINK YOU COULD BE FAIR AND

16    IMPARTIAL IN THIS CASE?

17              PROSPECTIVE JUROR:  BECAUSE MAINLY I'VE

18    BEEN ASSOCIATED WITH APPLE FROM ITS FOUNDING DAYS.

19    ACTUALLY, MY BROTHER, WHEN IT WAS FOUNDED, EVEN

20    WORKED THERE FOR A BRIEF PERIOD OF TIME.

21              AND SO, LIKE, FROM THE STANDPOINT OF

22    KNOWING THE GROWTH OF APPLE AND HOW THE UPS AND

23    DOWNS OF APPLE HAVE TAKEN PLACE OVER THE PAST 30

24    YEARS, I FEEL, AND WITH MY SON WORKING OVER THERE

25    ALSO, ESPECIALLY, I FEEL THAT IT'S KIND OF BRED
```

```
 1    INTO THE FAMILY THAT WE ARE AN APPLE KIND OF

 2    FAMILY.

 3               THE COURT:  ALL RIGHT.  SO YOU CANNOT BE

 4    FAIR TO SAMSUNG IN THIS CASE?

 5               PROSPECTIVE JUROR:  I BELIEVE SO.

 6               THE COURT:  ALL RIGHT.  ANY OBJECTION TO

 7    EXCUSING MR. SHAH FOR CAUSE?

 8               MR. PRICE:  OBVIOUSLY NOT.

 9               MR. LEE:  NO, YOUR HONOR.

10               THE COURT:  ALL RIGHT.  MR. SHAH, THANK

11    YOU VERY MUCH FOR YOUR WILLINGNESS TO SERVE, SIR,

12    BUT YOU'RE THANKED AND EXCUSED.

13               IF YOU WOULD LEAVE THE PAPERWORK ON THE

14    CHAIR AND JUST GO TO THE SECOND FLOOR AND REPORT TO

15    MR. YOUNGER.  THANK YOU.

16               ALL RIGHT.  LET'S BRING IN MR. LADWIG,

17    PLEASE.

18               (WHEREUPON, THE FOLLOWING PROCEEDINGS

19    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

20    JURORS WITH ONLY MR. LADWIG PRESENT.)

21               THE COURT:  ANYWHERE YOU WANT, SIR.  ALL

22    RIGHT.  THE RECORD SHOULD REFLECT THAT MR. LADWIG

23    IS THE ONLY JUROR IN THE COURTROOM.

24               SIR, CAN YOU JUST VERY BRIEFLY TELL US

25    WHY YOU CAN'T BE FAIR AND IMPARTIAL TO BOTH SIDES
```

```
 1    IN THIS CASE?

 2              PROSPECTIVE JUROR:  I PURCHASED A HUNDRED

 3    SHARES OF APPLE STOCK WHEN IT WAS $618, WHEN THE

 4    HYPE WAS IT WAS GOING TO GO TO 700 TO A THOUSAND.

 5              BUT ANYWAY, AS YOU KNOW, I'M -- I'M AT A

 6    LOSS RIGHT NOW.  SO I'M -- I KEEP UP THE SPEED ON

 7    THE NEWS, APPLE NEWS EVERY DAY.  I'M SIGNED UP TO

 8    SEEKING NEWSLETTERS.  I GET DOZENS AND DOZENS OF

 9    E-MAIL NEWSLETTERS BY THE HOUR ABOUT APPLE STOCK.

10              AND I HAVE A LOT OF INTEREST IN APPLE

11    STOCK.

12              THE COURT:  ALL RIGHT.  SO YOU CANNOT BE

13    FAIR AND IMPARTIAL TO SAMSUNG IN THIS CASE?

14              PROSPECTIVE JUROR:  TO BE HONEST, I'M --

15    I'M BIASED.

16              THE COURT:  ALL RIGHT.  IS THERE ANY

17    OBJECTION TO EXCUSING MR. LADWIG FOR CAUSE?

18              MR. LEE:  NO, YOUR HONOR.

19              MR. PRICE:  NO, YOUR HONOR.

20              THE COURT:  ALL RIGHT.  MR. LADWIG, THANK

21    YOU VERY MUCH, SIR, FOR YOUR WILLINGNESS TO SERVE.

22    YOU'RE THANKED AND EXCUSED.

23              AND IF YOU WOULD PLEASE JUST GO TO THE

24    SECOND FLOOR TO CHECK IN WITH MR. YOUNGER.

25              (WHEREUPON, THE FOLLOWING PROCEEDINGS
```

```
1    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

2    JURORS.)

3              THE COURT:  OKAY.  THE RECORD SHOULD

4    REFLECT THAT NO JURORS ARE IN THE COURTROOM.

5              I AM NOT PLANING TO REPLENISH THE POOL

6    BECAUSE WE HAVE ENOUGH HERE.  I'LL CONTINUE WITH MY

7    QUESTIONS AND THEN I'LL GIVE YOU EACH YOUR 20

8    MINUTES.

9              I'M HOPING THAT WHEN I GO THROUGH ALL OF

10   MY QUESTIONS THAT PERHAPS YOU MAY NOT NEED YOUR

11   FULL 20 BECAUSE I PRETTY MUCH AM ASKING EVERYTHING

12   THAT YOU ALL HAVE SUGGESTED AND TRYING TO BE FAIRLY

13   COMPREHENSIVE ABOUT IT.

14             IF WE DIP BELOW 18, THEN I WILL REPLENISH

15   THE POOL WITH THAT NUMBER OF ADDITIONAL

16   INDIVIDUALS.  OKAY.

17             MR. LEE:  YOUR HONOR, MAY I JUST ASK A

18   QUESTION?

19             THE COURT:  YES.

20             MR. LEE:  AT SOME POINT IN YOUR

21   QUESTIONING, WILL THEY BE ASKED TO ANSWER THE

22   BIOGRAPHICAL QUESTIONS?

23             THE COURT:  YES.  I HAVE A FEW MORE JUST

24   GENERAL QUESTIONS.  I'M GOING TO ASK WHETHER

25   THEY'VE BEEN INVOLVED IN A LAWSUIT; WHETHER THEY'VE
```

```
1     EVER APPLIED FOR A PATENT, COPYRIGHT OR TRADEMARK;

2     WHETHER THEY'VE EVER BEEN ACCUSED OF OR ACCUSED

3     ANYONE ELSE OF TAKING AN IDEA; ASK THEM ABOUT HOW

4     MUCH THEY BLOG, TWEET, FACEBOOK; AND JUST THEIR

5     GENERAL IMPRESSIONS OF THE PATENT SYSTEM.

6            I'LL ASK ABOUT SPECIFIC TECHNICAL

7     KNOWLEDGE -- I MEAN, THIS IS STARTING TO GET A

8     LITTLE BIT REDUNDANT -- AND THEN ASK THE INDIVIDUAL

9     QUESTIONS.

10           SO I'M REALLY HOPING THAT THIS WILL BE

11    EXHAUSTIVE ENOUGH THAT YOU WON'T NEED YOUR FULL 20

12    MINUTES.

13           AND THEN THEY'LL ANSWER THE QUESTIONS ON

14    THAT SHEET AND THEN I'LL TURN IT OVER TO YOU AND

15    I -- I DON'T REALLY -- I TRY TO DO THE CAUSES AS

16    WE'RE GOING ALONG TO SAVE TIME, SO YOU CAN MAKE A

17    FOR-CAUSE CHALLENGE LATER, BUT UNDERSTAND I FEEL

18    LIKE I'M DOING IT AS WE GO, SO IT MIGHT BE AN

19    UPHILL BATTLE.  BUT WE'LL SEE HOW THE QUESTIONS HOW

20    AND HOW THINGS EVOLVE.

21           MR. LEE:  YOUR HONOR, I ASK THAT QUESTION

22    BECAUSE AS TO JUROR NUMBER 2, WHO ACTUALLY HAS

23    STOCK OWNERSHIP IN GOOGLE, WE WOULD MAKE A

24    FOR-CAUSE CHALLENGE.

25           THE COURT:  YES.
```

```
1              MR. LEE:  I DIDN'T KNOW WHAT THE PRECISE

2     TIMING IS, BUT IF YOUR HONOR IS DOING IT AS WE GO

3     ALONG, I WOULD MAKE IT NOW.

4              THE COURT:  ALL RIGHT.  WELL, THAT'S

5     DENIED BECAUSE MR. OKAMOTO HAS VERY CREDIBLY AND

6     REPEATEDLY SAID THAT HE WOULD BE FAIR AND IMPARTIAL

7     TO BOTH SIDES.

8              HE HIMSELF OWNS AN IPAD, IPOD, A MAC AIR,

9     A MAC MINI, A MAC PRO.

10             I THINK THAT HIS CREDIBILITY, AS FAR AS

11    I'M CONCERNED, I BELIEVE HIM WHEN HE SAYS THAT HE

12    WILL BE FAIR AND IMPARTIAL.

13             SO AT THIS POINT THAT FOR-CAUSE CHALLENGE

14    IS DENIED.

15             ANYONE ELSE?  YOU WANT TO GO FOR ANYONE

16    ELSE RIGHT NOW AND I CAN TELL YOU WHAT MY ANSWER IS

17    GOING TO BE.

18             MR. LEE:  NONE FOR APPLE, YOUR HONOR.

19             MR. PRICE:  NONE FOR SAMSUNG, YOUR HONOR.

20             THE COURT:  WE'LL DO FURTHER VOIR DIRE OF

21    HIM AND SEE IF THAT CHANGES, BUT RIGHT NOW HE'S

22    BEEN SOLID THAT HE CAN BE FAIR AND IMPARTIAL, SO

23    HE'S STAYING ON UNTIL HE CONVINCES US OTHERWISE.

24             ALL RIGHT.  LET'S TAKE A BREAK.

25             MR. MCELHINNY:  HOUSEKEEPING MATTER.
```

```
 1   LAST WEEK YOU SAID YOU DIDN'T WANT TO DIVIDE THE
 2   OPENINGS.
 3            THE COURT:  YES.
 4            MR. MCELHINNY:  I'M WONDERING IF YOU'RE
 5   GOING TO RECONSIDER THAT OR IF WE'RE NOT GOING TO
 6   DO THE OPENING TODAY.
 7            MR. VERHOEVEN:  WE ALREADY REACHED
 8   AGREEMENT LAST WEEK THAT THE OPENINGS WOULD BE DONE
 9   TOGETHER.
10            THE COURT:  THAT'S WHAT YOU WANTED AS
11   WELL.
12            MR. MCELHINNY:  SO I'M JUST TRYING TO --
13   FOR OUR PLANNING PURPOSES, IT LOOKS LIKE THE
14   OPENINGS WILL BE TOMORROW MORNING.
15            THE COURT:  UNFORTUNATELY, I THINK IT'S
16   NOT LIKELY TODAY.  IT DEPENDS ON -- IF YOU WANT TO
17   WAIVE YOUR 20 MINUTES EACH, WE MIGHT BE ABLE TO DO
18   THEM TODAY.
19            MR. MCELHINNY:  LET THE RECORD REFLECT NO
20   HANDS APPEARED.
21            (LAUGHTER.)
22            THE COURT:  ALL RIGHT.  I DIDN'T THINK
23   SO.
24            BUT THEN WE HAVE TO SHOW THEM THE JURY
25   VIDEO, WHICH IS 18 MINUTES; I'VE GOT TO READ THEM
```

```
 1      THE PRELIMINARY JURY INSTRUCTIONS, AS WELL AS THE
 2      STATEMENT THAT YOU ALL HAVE AGREED UPON ABOUT THE
 3      FJC VIDEO.
 4           SO I THINK IF YOU WANT TO KEEP IT
 5      CONSOLIDATED, IT'S UNLIKELY.
 6           BUT LET ME HEAR FROM YOU HOW LONG IS EACH
 7      OF YOUR OPENINGS.  I KNOW I'VE GIVEN YOU AN HOUR
 8      AND A HALF EACH, BUT WHAT'S YOUR PLAN?
 9           MR. VERHOEVEN:  I THINK WE'RE BOTH GOING
10      TO TAKE CLOSE TO THE TIME.  WE CERTAINLY ARE.
11           MR. MCELHINNY:  AT THE MOMENT, WE'RE
12      CLOSE, YOUR HONOR.
13           THE COURT:  ALL RIGHT.  WE NEED A THREE
14      HOUR BLOCK OF TIME.  I MEAN, WE CAN SEE, BUT I
15      THINK IT WOULD BE VERY DIFFICULT TO DO A THREE HOUR
16      BLOCK OF TIME THIS AFTERNOON.  OKAY?
17           NOW, IN THE MEANTIME, IF YOU CAN, THE
18      DIFFERENT RECONSIDERATIONS AND I BELIEVE EVEN MORE
19      HAVE BEEN FILED SINCE WE'VE BEEN SITTING HERE, THE
20      PARAGRAPHS THAT YOU'RE GOING TO SUBMIT.
21           MR. VERHOEVEN:  YES, YOUR HONOR.
22           THE COURT:  CAN YOU DO THAT OVER THE
23      LUNCH HOUR?
24           MR. VERHOEVEN:  WE CAN BE PREPARED TO
25      DISCUSS THAT AFTER WE FINISH WITH THIS AND SUBMIT
```

1    IT, YES, YOUR HONOR.

2              THE COURT:  OKAY.  WELL, IF YOU COULD

3    SUBMIT IT AS SOON AS POSSIBLE, I APPRECIATE IT.

4              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

5              THE COURT:  OKAY.  THANK YOU ALL.

6              MR. MCELHINNY:  YOU WANT US BACK AT 1:00,

7    YOUR HONOR?

8              THE COURT:  YES.

9              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

10             THE COURT:  THANK YOU.

11             (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    AFTERNOON SESSION

 2              (WHEREUPON, THE FOLLOWING PROCEEDINGS

 3    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

 4    JURORS.)

 5              THE COURT:  OKAY.  ONE QUESTION THAT I

 6    HAVE -- WELCOME BACK, EVERYBODY -- IS WHAT WE

 7    SHOULD DO TODAY AFTER THE JURY IS SELECTED.

 8              I COULD SHOW THEM THE VIDEO AND READ THE

 9    STATEMENT REGARDING THE FEDERAL JUDICIAL CENTER

10    VIDEO.

11              I'M RELUCTANT TO START WITH THE JURY

12    INSTRUCTIONS IF WE DON'T HAVE THE LIMITING

13    INSTRUCTION AS TO MR. NISHIBORI COMPLETELY

14    RESOLVED, AND I DON'T WANT TO SORT OF READ IT

15    SEPARATELY AS AN ADD-ON TOMORROW.

16              DOES THAT MAKE ANY SENSE?  BECAUSE THEN

17    IT JUST MAKES IT SEEM LIKE THAT'S NOT PART OF THE

18    PACK.

19              MR. VERHOEVEN:  YES, YOUR HONOR.

20              THE COURT:  SO SHOULD WE AT LEAST SHOW

21    THE VIDEO?  I DON'T WANT TO ALSO LOSE A GOOD CHUNK

22    OF TIME THIS AFTERNOON, EITHER.

23              SO WE COULD SHOW THE VIDEO AND JUST READ

24    THE FJC STATEMENT AND JUST SAVE THE READING OF ALL

25    THE JURY INSTRUCTIONS UNTIL TOMORROW, OR I COULD AT
```

```
1    LEAST READ THE PRELIMINARY ONES AND GIVE THEM THE

2    BOOKS TOMORROW FOR ALL OF THEM.

3              DO HAVE ANY THOUGHTS ON THIS?

4              MR. VERHOEVEN:  I THINK WE AGREE THAT IT

5    WOULDN'T MAKE SENSE TO SEPARATE THE NISHIBORI

6    INSTRUCTION SEPARATE FROM THE OTHERS AND THE

7    INITIAL INCLINATION WOULD BE CORRECT.

8              MR. MCELHINNY:  I ACTUALLY DON'T -- I

9    THINK THE PROPER TIME FOR A LIMITING INSTRUCTION IS

10   WHEN THE EVIDENCE -- I BELIEVE THAT THE TIME FOR

11   THE LIMITING INSTRUCTION IS WHEN THE EVIDENCE COMES

12   INTO EVIDENCE.

13             BUT IF YOUR HONOR IS GOING TO ALLOW IT IN

14   THE OPENING, THEN I THINK THAT'S THE FIRST TIME

15   THEY'LL HEAR IT AND THAT'S IT.

16             I THINK A LIMITING INSTRUCTION THAT

17   POINTS TO SPECIFIC EVIDENCE AND SAYS "THIS IS THE

18   REASON I'M LETTING THIS IN," TO FOLD THAT IN A

19   PACKAGE OF FOUR MINUTES OF PRELIMINARY -- I THINK

20   IT OBVIATES THE PURPOSE OF IT BECAUSE IT'S SUPPOSED

21   TO BE TYING THE JURY'S MIND TO WHEN THEY FIRST HEAR

22   THE EVIDENCE SO THEY KNOW WHAT YOU'RE TALKING

23   ABOUT.

24             THE COURT:  ALL RIGHT.  LET'S BRING OUR

25   JURY UP --
```

```
 1              THE CLERK:  I'M WAITING TO HEAR FROM
 2    MR. YOUNGER IF THEY'RE ALL DOWN THERE.
 3              THE COURT:  I'M SORRY?
 4              THE CLERK:  I'M WAITING TO HEAR FROM J
 5    WHETHER THEY'RE ALL DOWN THERE.  HE WAS GOING TO DO
 6    ANOTHER ROLE CALL.
 7              THE COURT:  OH, ON ALL OF THEM?  OKAY.
 8              (DISCUSSION OFF THE RECORD BETWEEN THE
 9    COURT AND THE CLERK.)
10              (PAUSE IN PROCEEDINGS.)
11              (WHEREUPON, THE FOLLOWING PROCEEDINGS
12    WERE HELD IN OF THE PRESENCE OF THE PROSPECTIVE
13    JURORS.)
14              THE COURT:  OKAY.  WELCOME BACK.  PLEASE
15    TAKE A SEAT.  WE HAD A FEW MORE DEPARTURES IN YOUR
16    ABSENCE.
17              LET'S CONTINUE WITH THE QUESTIONS.
18              THE NEXT QUESTION IS, HAVE YOU OR A
19    FAMILY MEMBER OR SOMEONE VERY CLOSE TO YOU EVER
20    BEEN INVOLVED IN A LAWSUIT, EITHER AS A PLAINTIFF,
21    A DEFENDANT, OR AS A WITNESS?
22              LET'S SEE.  ON THE FIRST ROW, WHO WOULD
23    RAISE THEIR HAND TO THAT QUESTION?
24              ALL RIGHT.  LET'S GO TO MR. HOGAN.
25              PROSPECTIVE JUROR:  IN 2008, AFTER MY
```

1    COMPANY WENT BELLY UP, THE PROGRAMMER THAT WORKED

2    FOR ME FILED A LAWSUIT AGAINST ME AND ULTIMATELY,

3    ACROSS THE NEXT FEW MONTHS, IT WAS DISMISSED AND IN

4    SUCH A FASHION THAT NEITHER ONE OF US COULD SUE THE

5    OTHER ONE FOR THAT MATTER.

6            THE COURT:  WHAT WAS HIS -- WHAT WAS THE

7    EMPLOYEE'S CLAIM?

8            PROSPECTIVE JUROR:  IT WAS A DISPUTE OVER

9    THE SOFTWARE THAT WE HAD DEVELOPED, WHETHER IT

10   BELONGED TO THE COMPANY OR TO HIM, AND I HAD

11   DOCUMENTS THAT SHOWED IT BELONGED TO THE COMPANY.

12           ULTIMATELY, AS I SAID, IT WOULD -- WE

13   SETTLED OUT OF COURT AND IT WAS DISMISSED.

14           THE COURT:  ALL RIGHT.  ANYTHING ABOUT

15   THAT EXPERIENCE THAT WOULD AFFECT YOUR ABILITY TO

16   BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

17           PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

18           THE COURT:  OKAY.  WAS THERE ANY

19   DISPUTE -- WAS THERE ANY DISPUTE AS TO WHO HAD

20   CREATED AND INVENTED THE TECHNOLOGY, OR WAS IT

21   LARGELY WHO HAD OWNERSHIP OF IT?

22           PROSPECTIVE JUROR:  IT WAS STRICTLY WHO

23   HAD OWNERSHIP OF IT, AND ULTIMATELY IT WAS

24   ESTABLISHED THAT THE COMPANY DID HAVE OWNERSHIP OF

25   IT, ALTHOUGH -- AND I STILL DO -- ALTHOUGH THE

```
 1    COMPANY IS NOT IN BUSINESS ANY LONGER.

 2              THE COURT:  I SEE.  BUT WAS THERE A SORT

 3    OF DISPUTE AS TO WHO HAD CREATED OR INVENTED THE

 4    TECHNOLOGY AS PART OF THAT OWNERSHIP QUESTION?

 5              PROSPECTIVE JUROR:  YES, THERE WAS.

 6              THE COURT:  UM-HUM.

 7              PROSPECTIVE JUROR:  BUT LIKE I SAID, WE

 8    SETTLED THAT -- BECAUSE OF DOCUMENTATION I HAD, WE

 9    WERE ABLE TO SETTLE IT OUT OF COURT AND THEN WE

10    WENT BACK TO COURT ONE LAST TIME FOR THE DISMISSAL

11    PAPERWORK.

12              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

13              MS. ROUGIERI, I THINK YOU RAISED YOUR

14    CARD?

15              PROSPECTIVE JUROR:  YES, I DID.

16              THE COURT:  GO AHEAD.

17              PROSPECTIVE JUROR:  I BROUGHT A LAWSUIT

18    AGAINST A DENTIST.  THAT WAS IN 2005, 2006.

19              THE COURT:  OH, CAN WE HAVE THE

20    MICROPHONE?  APPARENTLY IN THE OVERFLOW ROOM, THEY

21    CAN'T HEAR THE JURORS WITHOUT THE MICROPHONE.

22              THANK YOU.

23              PROSPECTIVE JUROR:  I HAD A SMALL CLAIM

24    AGAINST A DENTIST THAT WAS IN 2005.  IT WORKED OUT

25    THAT WHEN WE DID THE SMALL CLAIM, I WON THE FIRST
```

```
 1    TIME, AND HE HAD AN APPEAL AND HE BROUGHT HIS

 2    LAWYER AND I LOST.

 3              THE COURT:  ALL RIGHT.  SO YOU

 4    REPRESENTED YOURSELF?  WAS THAT IN SMALL CLAIMS

 5    COURT?

 6              PROSPECTIVE JUROR:  IT WAS IN SMALL

 7    CLAIMS COURT.

 8              THE COURT:  OKAY.  ANYTHING ABOUT THAT

 9    EXPERIENCE THAT WOULD AFFECT YOUR ABILITY TO BE

10    FAIR AND IMPARTIAL IN THIS CASE?

11              PROSPECTIVE JUROR:  WELL, NO.

12              BUT IT AFFECTED ME BECAUSE THE LAWYER

13    KNOWS THE JUDGE.  THE LAWYER THAT WAS AGAINST ME

14    KNOWS THE JUDGE, SO THEY WERE TALKING FRIENDLY

15    TERMS IN A WAY THAT THE CHILDREN, THEY PLAYED EACH

16    OTHER TOGETHER IN SCHOOL.

17              AND THAT REALLY I THINK -- MY BELIEF IS

18    THAT THAT'S HOW I LOST THE CASE, BECAUSE THE LAWYER

19    KNOWS THE JUDGE.

20              THE COURT:  WAS THAT AFTER IT WAS

21    APPEALED TO THE SUPERIOR COURT JUDGE?

22              PROSPECTIVE JUROR:  YES.

23              THE COURT:  AND YOU'RE SAYING THAT THE

24    LAWYER KNEW THE SUPERIOR COURT JUDGE?

25              PROSPECTIVE JUROR:  CORRECT, YES.
```

```
 1                    THE COURT:  I SEE.  AND YOU THOUGHT THAT
 2      THERE WAS SOME UNFAIRNESS?
 3                    PROSPECTIVE JUROR:  UNFAIRNESS TO THAT,
 4      YES.
 5                    THE COURT:  OKAY.  WOULD YOUR NEGATIVE
 6      IMPRESSION FROM THAT EXPERIENCE SPILL OVER INTO
 7      THIS CASE AT ALL?
 8                    PROSPECTIVE JUROR:  NO, NO, YOUR HONOR.
 9                    THE COURT:  OKAY.
10                    PROSPECTIVE JUROR:  I -- NO, YOUR HONOR.
11                    THE COURT:  ALL RIGHT.  AND THIS IS FOR
12      EVERYONE.
13                    WE'LL TALK FURTHER ABOUT WHO'S BEEN ON
14      JURY DUTY, BUT THERE ARE DEFINITELY DIFFERENT, YOU
15      KNOW, STANDARDS OF PROOF IN DIFFERENT CASES, AND I
16      JUST WANTED TO MAKE SURE -- YOU ALL HAD CIVIL
17      CASES, SO I WOULD ASSUME THAT YOU ALSO HAD, YOU
18      KNOW, PREPONDERANCE OF THE EVIDENCE.  DOES THAT
19      SOUND FAMILIAR?
20                    AND WE'LL TALK ABOUT THIS A LITTLE BIT
21      LATER ON, BUT IN DIFFERENT TYPES OF CASES, THERE
22      MAY BE DIFFERENT STANDARDS OF PROOF, AND ALSO THE
23      LAW MAY HAVE CHANGED SINCE WHENEVER YOU WERE A
24      LITIGANT.
25                    SO I WANT TO MAKE SURE THAT BOTH
```

```
 1    MR. HOGAN, AND MS. ROUGIERI, THAT YOU WOULD APPLY

 2    THE LAW AS I INSTRUCT YOU AND NOT BASED ON YOUR

 3    UNDERSTANDING OF THE LAW BASED ON YOUR OWN CASES.

 4              IS THAT CORRECT, MR. HOGAN?

 5              PROSPECTIVE JUROR:  YES.

 6              THE COURT:  AND MS. ROUGIERI?

 7              PROSPECTIVE JUROR:  YES.

 8              THE COURT:  OKAY.  ANYONE ELSE IN THE

 9    FIRST ROW?

10              PROSPECTIVE JUROR:  YES, SMALL CLAIMS --

11              THE COURT:  WOULD YOU PLEASE USE THE

12    MICROPHONE?  THANK YOU.

13              PROSPECTIVE JUROR:  SMALL CLAIMS COURT,

14    AND I THINK IT WAS AT THE END OF 2011.

15              THE COURT:  WHAT WAS THE BASIS OF THE

16    CLAIM?  WERE YOU A DEFENDANT OR A CLAIMANT?

17              PROSPECTIVE JUROR:  I BROUGHT SOMEONE TO

18    COURT WHO OWED ME MONEY.

19              THE COURT:  AND WHAT WAS THE -- HOW DID

20    THAT RESOLVE?

21              PROSPECTIVE JUROR:  IT WAS IN MY FAVOR.

22              THE COURT:  DID YOU REPRESENT YOURSELF?

23              PROSPECTIVE JUROR:  YES.

24              THE COURT:  ALL RIGHT.  ANYTHING BASED ON

25    THAT EXPERIENCE THAT LEAVES YOU WITH A LASTING
```

```
1     IMPRESSION ABOUT THE JUSTICE SYSTEM, ABOUT THE

2     COURTS, ABOUT --

3              PROSPECTIVE JUROR:  NO, NO.

4              THE COURT:  -- THE JUDICIARY THAT WOULD

5     AFFECT YOUR ABILITY TO BE FAIR HERE?

6              PROSPECTIVE JUROR:  NO, NO PROBLEM.

7              THE COURT:  ALL RIGHT.  THANK YOU.

8              ANYONE ELSE ON ROW 2?

9              ALL RIGHT.  LET'S GO TO MS. FRIESEN.

10             PROSPECTIVE JUROR:  THERE WAS A SMALL

11    CLAIMS COURT CASE IN REGARDS TO THE BUSINESS I HAD,

12    IT WAS AN ADVERTISING CASE, AND THE OTHER COMPANY

13    WON THE SUIT.

14             THE COURT:  WERE YOU THE PLAINTIFF OR THE

15    DEFENDANT?

16             PROSPECTIVE JUROR:  DEFENDANT.

17             THE COURT:  AND THIS WAS WITH REGARD TO

18    YOUR FRANCHISE INSURANCE AGENCY?

19             PROSPECTIVE JUROR:  CORRECT.

20             THE COURT:  OKAY.  WHEN WAS THIS LAWSUIT?

21             PROSPECTIVE JUROR:  I THINK IT WAS 2008.

22             THE COURT:  I THOUGHT YOUR BUSINESS ENDED

23    IN 2006.

24             PROSPECTIVE JUROR:  CORRECT.

25             THE COURT:  OH.  THIS WAS AFTER THE
```

1    BUSINESS HAD ALREADY RESOLVED?

2              PROSPECTIVE JUROR:  CORRECT.

3              THE COURT:  OKAY.  AND YOU REPRESENTED

4    YOURSELF; RIGHT?

5              PROSPECTIVE JUROR:  YES.

6              THE COURT:  OKAY.  ANYTHING FROM THAT

7    EXPERIENCE THAT LEFT YOU WITH A, EITHER A BAD TASTE

8    IN YOUR MOUTH OR A GOOD TASTE IN YOUR MOUTH ABOUT

9    THE SYSTEM, ABOUT JUDGES, LAWYERS THAT WOULD AFFECT

10   YOUR ABILITY TO BE FAIR HERE?

11             PROSPECTIVE JUROR:  NOT THAT I KNOW OF.

12             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

13             WHAT ABOUT ROW 3?  ANYONE RAISE THEIR

14   HAND?  NO?

15             THE RECORD SHOULD REFLECT NO HANDS HAVE

16   BEEN RAISED.

17             WHAT ABOUT ROW 4, ROW 5?

18             OH, I'M SORRY.  MS. HOLLOWAY, DID YOU

19   HAVE YOUR HAND RAISED?

20             IF YOU COULD PASS THE MICROPHONE, PLEASE,

21   TO MS. HOLLOWAY.

22             PROSPECTIVE JUROR:  WORK-RELATED LAWSUIT

23   BACK IN 1986.

24             THE COURT:  AND WERE YOU THE PLAINTIFF OR

25   THE DEFENDANT?

```
 1                PROSPECTIVE JUROR:  DEFENDANT.

 2                THE COURT:  AND WHAT WAS THE CLAIM?

 3                PROSPECTIVE JUROR:  AT THE TIME I WAS

 4     WORKING FOR INTEL, AND SO ONE OF MY STAFF MEMBERS

 5     BROUGHT A LAWSUIT AGAINST INTEL.  WE WENT AS FAR AS

 6     A DEPOSITION AND THEN HE DROPPED THE CASE.

 7                THE COURT:  OKAY.  WAS IT SOME TYPE OF

 8     EMPLOYMENT CASE?

 9                PROSPECTIVE JUROR:  YES, IT WAS.

10                THE COURT:  I SEE.  SO WERE YOU ACTUALLY

11     DEPOSED?

12                PROSPECTIVE JUROR:  I WAS THE MANAGER.

13                THE COURT:  I SEE.  BUT YOU WERE DEPOSED,

14     OR NOT?  DID THEY TAKE YOUR DEPOSITION?

15                PROSPECTIVE JUROR:  OH, ABSOLUTELY, YES.

16                THE COURT:  I SEE.  ALL RIGHT.  AND YOU

17     SAID THAT CASE RESOLVED HOW?  IT WAS --

18                PROSPECTIVE JUROR:  HE DROPPED THE CASE.

19                THE COURT:  HE DROPPED THE CASE.  OKAY.

20                ANYTHING FROM YOUR EXPERIENCE IN THAT

21     CASE THAT WOULD AFFECT YOUR ABILITY TO BE FAIR AND

22     IMPARTIAL HERE?

23                PROSPECTIVE JUROR:  NONE WHATSOEVER.

24                THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25                ANYONE ON ROWS -- I KNOW MR. SINA, YOU
```

```
 1        RAISED YOUR HAND.  GO AHEAD.

 2                PROSPECTIVE JUROR:  YES.  BACK IN 1998, I

 3        HAD A SURGERY.  I DIDN'T HAVE INSURANCE.  I WAS

 4        PURSUED BY THE DOCTOR AND I WENT TO THE JUDGE AND

 5        WE AGREED TO -- I AGREED TO PAY THE FEES IN

 6        INSTALLMENTS.  THAT'S ALL I HAVE.

 7                THE COURT:  WAS THAT IN SMALL CLAIMS

 8        COURT?

 9                PROSPECTIVE JUROR:  I'M SORRY.  AT THAT

10        TIME, MY ENGLISH WAS NOT VERY GOOD, SO --

11                THE COURT:  ALL RIGHT.  WAS THAT HERE IN

12        SANTA CLARA COUNTY?

13                PROSPECTIVE JUROR:  NO, NO.  IT WAS IN

14        INDIANA.

15                THE COURT:  I SEE.  AND IT WAS -- WERE

16        YOU REPRESENTING YOURSELF?

17                PROSPECTIVE JUROR:  I BELIEVE SO.

18                THE COURT:  OKAY.  ANYTHING FROM THAT

19        EXPERIENCE THAT WOULD IMPACT YOUR ABILITY TO BE

20        FAIR AND IMPARTIAL IN ANY WAY?

21                PROSPECTIVE JUROR:  I HOPE NOT.

22                THE COURT:  NO?

23                PROSPECTIVE JUROR:  NO.

24                THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25                ANYONE ON ROW 5?  OR ROW 6?  I'M SORRY.
```

```
 1              OKAY.  THE RECORD SHOULD REFLECT NO HANDS
 2    HAVE BEEN RAISED.
 3              OKAY.  NOW, RAISE YOUR HAND, PLEASE, IF
 4    YOU HAVE EVER APPLIED FOR A PATENT, A COPYRIGHT, A
 5    TRADEMARK OR TRADE DRESS REGISTRATION.
 6              ALL RIGHT.  SO WE HAVE THREE HANDS
 7    RAISED.  IF YOU WOULD -- OH, FOUR.  ALL RIGHT.
 8              WELL, SINCE THE MICROPHONE IS DOWN THERE,
 9    WHY DON'T YOU GO AHEAD PLEASE AND GIVE THAT TO
10    MR. CHIU.
11              PROSPECTIVE JUROR:  I WORK FOR -- I WORK
12    FOR THE NATIONAL SEMICONDUCTOR BEFORE AND THEY WERE
13    ACQUIRED BY TEXAS INSTRUMENTS, AND I FILED PATENTS
14    FOR THE COMPANY.
15              THE COURT:  OKAY.  AND WERE YOU AN
16    INVENTOR ON THAT PATENT?
17              PROSPECTIVE JUROR:  YES.
18              THE COURT:  WAS A PATENT ISSUED?
19              PROSPECTIVE JUROR:  YES.
20              THE COURT:  AND WITHOUT SPECIFICS, WHAT
21    WAS THE GENERAL TECHNOLOGY?
22              PROSPECTIVE JUROR:  IT IS THE INTEGRATED
23    CIRCUIT RELATED.
24              THE COURT:  INTEGRATED CIRCUIT DESIGN?
25              PROSPECTIVE JUROR:  YES.
```

```
1              THE COURT:  OKAY.  HOW LONG AGO WAS THAT?

2              PROSPECTIVE JUROR:  I THINK FROM 3 TO 15

3     YEARS.  I HAVE SEVERAL PATENTS.

4              THE COURT:  YOU HAVE SEVERAL.  AND WERE

5     THEY ALL WHILE YOU WERE EMPLOYED AT NATIONAL

6     SEMICONDUCTOR?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  AND ARE THEY ALL RELATED TO

9     INTEGRATED CIRCUIT DESIGN?

10             PROSPECTIVE JUROR:  YES.

11             THE COURT:  ALL RIGHT.  AND -- OKAY.  ALL

12    RIGHT.  AND THEY WERE ROUGHLY 15 YEARS AGO?

13             PROSPECTIVE JUROR:  YES, FROM 3 TO 15

14    YEARS.

15             THE COURT:  3 TO 15 YEARS.  OKAY.  SO

16    VERY RECENTLY.

17             DO YOU HAVE PATENT APPLICATIONS PENDING

18    NOW?

19             PROSPECTIVE JUROR:  YES.

20             THE COURT:  YOU DO.  OKAY.  ALL WITHIN

21    INTEGRATED CIRCUIT DESIGN --

22             PROSPECTIVE JUROR:  YES.

23             THE COURT:  -- FIELD?

24             PROSPECTIVE JUROR:  RIGHT.

25             THE COURT:  OKAY.  ALL RIGHT.  WOULD THAT
```

```
 1    IN ANY WAY -- YOU'LL BE INSTRUCTED ON WHAT THE LAW

 2    IS AND WOULD YOU BE ABLE TO FOLLOW THE INSTRUCTIONS

 3    I GIVE YOU ON THE LAW, EVEN IF IT MAY NOT

 4    COMPLETELY CORRESPOND TO WHAT YOU MAY KNOW ABOUT

 5    THE PATENT SYSTEM OR THE INTELLECTUAL PROPERTY

 6    LAWS?

 7                PROSPECTIVE JUROR:  YES, I FOLLOW YOUR

 8    INSTRUCTIONS.

 9                THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10                LET'S GO, I THINK, TO MS. HALIM,

11    MR. OKAMOTO, AND MR. HOGAN.  YOU RAISED YOUR HANDS.

12                OKAY.  LET'S PLEASE START WITH MS. HALIM.

13                PROSPECTIVE JUROR:  OKAY.  I HAVE TWO

14    PATENTS.  ONE IS ISSUED WHEN I WAS AT WEITEK, ALSO

15    I.C. DESIGN.

16                ANOTHER ONE WAS AT SILICON GRAPHICS.

17                THE COURT:  AND IT WAS ALSO ON I.C.

18    DESIGN?

19                PROSPECTIVE JUROR:  YES, RIGHT.

20                THE COURT:  OKAY.  WERE PATENTS ISSUED?

21                PROSPECTIVE JUROR:  YES.

22                THE COURT:  AND YOU WERE THE INVENTOR ON

23    BOTH?

24                PROSPECTIVE JUROR:  YES.

25                THE COURT:  OKAY.  ALL RIGHT.  ANYTHING
```

```
 1    FROM THAT EXPERIENCE -- BASICALLY YOU OBVIOUSLY

 2    WILL BRING YOUR LIFE EXPERIENCE TO YOUR ROLE AS A

 3    JUROR, BUT WOULD YOU BE ABLE TO SET THAT ASIDE,

 4    YOUR PREVIOUS EXPERIENCE WITH PATENTS, AND DECIDE

 5    THIS CASE BASED SOLELY ON THE LAW AS YOU'RE

 6    INSTRUCTED AND THE EVIDENCE THAT'S ADMITTED DURING

 7    THE TRIAL?

 8              PROSPECTIVE JUROR:  YES.

 9              THE COURT:  OKAY.  THANK YOU.

10              LET'S GO TO MR. OKAMOTO, PLEASE.

11              PROSPECTIVE JUROR:  SO A COUPLE OF MY

12    PROJECTS AT GOOGLE INVOLVED, I THINK THE FIRST

13    PATENT WAS SOME TYPE OF VIDEO U/I LAYOUT.

14              THE COURT:  UM-HUM.

15              PROSPECTIVE JUROR:  AND IT WAS ME AND

16    SEVERAL MEMBERS OF OUR TEAM.  SO IT WAS SO-AND-SO

17    THAT WAS ONE.

18              THERE'S ACTUALLY -- I THINK I FILED A

19    FEW.  I'M NOT SURE IF I REMEMBER ALL OF THEM IN

20    DETAIL, BUT MOSTLY RELATED TO VIDEO PRESENTATION

21    AND BEHAVIOR.

22              THE COURT:  SO THEY'RE ALL USER INTERFACE

23    PATENTS?

24              PROSPECTIVE JUROR:  YES.

25              THE COURT:  OKAY.  AND WHAT'S THE TIME
```

1    PERIOD?

2              PROSPECTIVE JUROR:  SO I STARTED

3    GOOGLE -- IT'S WITHIN THE LAST SEVEN YEARS, MOSTLY

4    ABOUT SIX TO SEVEN YEARS AGO.

5              THE COURT:  OKAY.  AND PATENTS HAVE

6    ISSUED?  HOW MANY?

7              PROSPECTIVE JUROR:  ONE HAS ISSUED AND

8    THE MOST RECENT ONE THAT'S GOING THROUGH RIGHT NOW

9    IS WITH REGARD TO SOME OF THE NEW FEATURES IN THE

10   LATEST ANDROID DEVELOPMENT.

11             THE COURT:  THE OPERATING SYSTEM?

12             PROSPECTIVE JUROR:  YEAH.

13             THE COURT:  UM-HUM.

14             PROSPECTIVE JUROR:  SO THAT ONE IS FAIRLY

15   RECENTLY, A FEW MONTHS.  THE OTHER ONES ARE FAIRLY

16   OLD.

17             THE COURT:  OKAY.  ALL RIGHT.  LET ME ASK

18   IF YOU WOULD -- OBVIOUSLY YOU KEEP YOUR LIFE

19   EXPERIENCE AND YOUR COMMON SENSE AND ALL THE OTHER

20   THINGS THAT YOU BRING HERE.

21             BUT WOULD YOU BE ABLE TO DECIDE THIS CASE

22   BASED SOLELY ON THE EVIDENCE THAT'S ADMITTED DURING

23   THE TRIAL AND NOT ON PREVIOUS TECHNOLOGICAL PATENT

24   EXPERIENCE THAT YOU HAVE?

25             PROSPECTIVE JUROR:  YES.

```
 1                THE COURT:  OKAY.  LET ME ASK MS. HALIM,

 2     HOW LONG AGO WAS YOUR PATENT FOR SILICON GRAPHICS

 3     AND HOW LONG WAS YOUR PATENT FOR -- DID YOU SAY

 4     WAYNE TECH?

 5                PROSPECTIVE JUROR:  WEITEK, YES.

 6                THE COURT:  WEITEK, HOW IS THAT SPELLED?

 7                PROSPECTIVE JUROR:  W-E-I-T-E-K.

 8                THE COURT:  OKAY.  THANK YOU.  HOW LONG

 9     AGO WERE THOSE TWO PATENTS?

10                PROSPECTIVE JUROR:  FOR WEITEK, IT WAS IN

11     THE LATE '90S -- LATE '80S.

12                THE COURT:  OKAY.

13                PROSPECTIVE JUROR:  AND FOR SILICON

14     GRAPHICS, IT'S MID-1990S.

15                THE COURT:  OKAY.  AND DO YOU HAVE ANY

16     PATENT APPLICATIONS PENDING NOW?

17                PROSPECTIVE JUROR:  NO.

18                THE COURT:  NO.  OKAY.  ALL RIGHT.

19                LET'S GO TO MR. HOGAN.  YOU HAD SOME?

20                PROSPECTIVE JUROR:  EXCUSE ME.  IN 2002,

21     I FILED FOR A PATENT IN VIDEO COMPRESSION SOFTWARE,

22     AND IN 2008, THE PATENT WAS ISSUED TO ME.

23                AND IN 2008 I FILED A FOLLOW-ON PATENT IN

24     MORE DETAIL AND THAT IS CURRENTLY PENDING.

25                THE COURT:  I SEE.  OKAY.  ALL RIGHT.
```

```
1    THANK YOU.

2             ALL RIGHT.  NEXT QUESTION IS, HAVE YOU

3    EVER CREATED OR DEVELOPED SOMETHING AND YOU BELIEVE

4    YOU HAD THE IDEA TAKEN FROM YOU?  IF YOU WOULD

5    ANSWER YES TO THAT QUESTION, WOULD YOU PLEASE RAISE

6    YOUR HAND?

7             THE RECORD SHOULD REFLECT THAT NO HANDS

8    HAVE BEEN RAISED.

9             AH, ALL RIGHT.  LET'S GO TO -- LET'S GO

10   TO MR. TEPMAN.  GO AHEAD, PLEASE.

11             PROSPECTIVE JUROR:  I BELIEVE THIS ONE IS

12   PATENTS.

13             THE COURT:  CAN YOU USE THE MICROPHONE,

14   PLEASE?  THANK YOU.

15             PROSPECTIVE JUROR:  THE PREVIOUS ONE, THE

16   PATENTS, I HAVE 125 PATENTS.

17             THE COURT:  YOU HAVE 125 PATENTS?

18             PROSPECTIVE JUROR:  YES.

19             THE COURT:  IN WHAT FIELD?

20             PROSPECTIVE JUROR:  PHYSICS,

21   SEMICONDUCTOR MANUFACTURING, ROBOTICS.

22             THE COURT:  AND THESE ARE ALL ISSUED

23   PATENTS; CORRECT?

24             PROSPECTIVE JUROR:  IT'S ALL ISSUED.  AND

25   PENDING, PROBABLY THREE.
```

```
 1              THE COURT:  YOU HAVE THREE PENDING?

 2              PROSPECTIVE JUROR:  ABOUT.

 3              THE COURT:  ROUGHLY WHEN WERE THESE 125

 4   PATENTS ISSUED?

 5              PROSPECTIVE JUROR:  I STARTED EARLY '90S

 6   AND UNTIL RECENTLY.

 7              THE COURT:  AND FOR WHOM DID YOU -- DID

 8   YOU ASSIGN YOUR RIGHTS TO THESE PATENTS?

 9              PROSPECTIVE JUROR:  IT'S ALL ASSIGNED

10   TO -- IT'S ALL APPLIED MATERIALS.

11              THE COURT:  OH, APPLIED MATERIALS, OKAY.

12   ALL RIGHT.

13              NOW, SAME FOR MR. TEPMAN, AS WELL AS TO

14   MR. HOGAN.  YOU ALL HAVE A LOT OF EXPERIENCE, BUT

15   WILL YOU BE ABLE TO DECIDE THIS CASE BASED SOLELY

16   ON THE EVIDENCE THAT'S ADMITTED DURING THE TRIAL?

17              PROSPECTIVE JUROR:  YES.

18              THE COURT:  OKAY.  MR. HOGAN SAYS YES.

19              WHAT ABOUT MR. TEPMAN?

20              PROSPECTIVE JUROR:  I THINK SO, TOO.

21              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

22              NOW, WAS ANYONE ELSE GOING TO ANSWER YES

23   TO THE QUESTION OF HAVE YOU EVER HAD AN IDEA TAKEN

24   FROM YOU?

25              THE RECORD SHOULD REFLECT NO HANDS HAVE
```

```
 1    BEEN RAISED.

 2              NOW, THE NEXT QUESTION, HAVE YOU EVER

 3    BEEN ACCUSED OF TAKING AN IDEA FROM SOMEONE ELSE?

 4    WOULD YOU PLEASE RAISE YOUR HAND?

 5              ALL RIGHT.  LET'S GO TO MR. HOGAN.

 6              WOULD YOU PLEASE PASS THE MICROPHONE,

 7    MR. TEPMAN?  THANK YOU.

 8              PROSPECTIVE JUROR:  AS I HAD STATED

 9    EARLIER, THAT WAS -- IN 2008, THAT WAS THE

10    ACCUSATION AGAINST ME BEFORE THE PATENT WAS ISSUED.

11              BUT AS I SAID, THAT CASE ULTIMATELY WAS

12    DROPPED IN MY FAVOR.

13              THE COURT:  NOW, WHEN THE PROGRAMMER SUED

14    YOU, WAS THAT PROGRAMMER ALSO A CO-INVENTOR ON THE

15    PATENT?

16              PROSPECTIVE JUROR:  NO.

17              THE COURT:  NO.  I SEE.

18              PROSPECTIVE JUROR:  THE PATENT WAS ISSUED

19    TOTALLY -- EXCLUSIVELY IN MY NAME.

20              THE COURT:  I SEE.

21              PROSPECTIVE JUROR:  AND I HAD FILED FOR

22    THAT PATENT PRIOR TO HIS JOINING THE EFFORT TO WORK

23    FOR IT.  THAT WAS PART OF MY DOCUMENTATION SHOWING

24    THAT IT WAS MINE.

25              THE COURT:  OKAY.  ALL RIGHT.
```

```
 1              LET ME ASK, IF YOU HAVE STRONG FEELINGS

 2      OR STRONG OPINIONS ABOUT EITHER THE UNITED STATES

 3      PATENT SYSTEM OR INTELLECTUAL PROPERTY LAWS, WOULD

 4      YOU RAISE YOUR HAND, PLEASE?

 5              THE RECORD SHOULD REFLECT THAT NO HANDS

 6      HAVE BEEN RAISED.

 7              LET'S JUST -- I WANT TO GO DOWN THE LINE

 8      AND JUST ASK YOU IF YOU USE ANY OF THE FOLLOWING

 9      AND HOW OFTEN YOU USE THEM, OKAY?

10              SO -- I'LL JUST GIVE YOU A LIST:  THAT

11      YOU EITHER DO INTERNET SEARCHING; YOU MAINTAIN YOUR

12      OWN BLOG OR YOU LIKE TO BLOG A LOT; YOU MAINTAIN A

13      TWITTER ACCOUNT, A FACEBOOK ACCOUNT.

14              LET ME GO STRAIGHT DOWN THE LINE, PLEASE.

15              PROSPECTIVE JUROR:  I USE THE INTERNET A

16      LOT.

17              I DON'T HAVE A BLOG.

18              THE COURT:  OKAY.  WHAT ABOUT DO YOU

19      TWEET?  DO YOU FACEBOOK?  MYSPACE OR ANYTHING?

20              PROSPECTIVE JUROR:  NO.

21              THE COURT:  OKAY.  WHAT ABOUT

22      MR. OKAMOTO?

23              PROSPECTIVE JUROR: SO I GOOGLE A LOT.

24              I DON'T HAVE A BLOG.  I HAVE A TWITTER

25      ACCOUNT, BUT I NEVER REALLY POST TO IT OR READ IT.
```

```
1              MY GOOGLE PLUS, A LITTLE BIT MORE THAN
2     TWITTER, BUT NOT TOO OFTEN.
3              NO FACEBOOK ACCOUNT.
4              AND THAT'S ABOUT IT.
5              THE COURT:  I'M SORRY.  I DIDN'T
6     UNDERSTAND THE LAST PART.
7              PROSPECTIVE JUROR:  THAT'S ABOUT IT.
8              THE COURT:  OKAY.  THANK YOU.
9              MR. HOGAN?
10             PROSPECTIVE JUROR:  SO I USE THE INTERNET
11    A LOT.  I, OF COURSE, GOOGLE A LOT.
12             I DON'T HAVE A FACEBOOK ACCOUNT OF MY OWN
13    OR A TWITTER ACCOUNT, JUST STRICTLY E-MAIL.
14             THE COURT:  DO YOU BLOG?
15             PROSPECTIVE JUROR:  NO.
16             THE COURT:  ALL RIGHT.  THANK YOU.
17             LET'S GO TO MR. BELLA.
18             PROSPECTIVE JUROR:  GOOGLE A LOT.
19             NO FACEBOOK, TWITTER, TWEETING, WHATEVER.
20             THE COURT:  AND NO BLOGGING?
21             PROSPECTIVE JUROR:  NO BLOGGING.
22             THE COURT:  LET'S GO TO MS. ROUGIERI.
23             PROSPECTIVE JUROR:  I DON'T GOOGLE A LOT.
24             I HAVE A FACEBOOK THAT I JUST OPENED IT.
25             AND THAT'S ABOUT IT.
```

```
1              THE COURT:  THAT'S ABOUT IT.  OKAY.

2              MS. FLAVIN?

3              PROSPECTIVE JUROR:  I GOOGLE A LOT ALSO.

4              I DON'T HAVE A FACEBOOK, MYSPACE,

5    TWITTER.  I DON'T BLOG.

6              THE COURT:  OKAY.  THANK YOU.

7              LET'S GO TO MS. LEROSE.

8              PROSPECTIVE JUROR:  I USE THE INTERNET

9    AND GOOGLE, AND I DON'T ENJOY FACEBOOK OR BLOGGING

10   OR TWEETING OR ANY OF THAT, WHATEVER IT IS.

11             THE COURT:  WHAT WAS THE LAST THING YOU

12   SAID?

13             PROSPECTIVE JUROR:  WHATEVER THEY ARE, I

14   DON'T INTERACT WITH THOSE THINGS.

15             THE COURT:  ALL RIGHT.

16             MR. REYES?

17             PROSPECTIVE JUROR:  I DO INTERNET

18   SEARCHING.

19             I DO HAVE A FACEBOOK ACCOUNT.  I RARELY,

20   RARELY USE IT.  BUT I DON'T BLOG OR TWEET OR

21   ANYTHING LIKE THAT.

22             THAT'S ABOUT IT.

23             THE COURT:  OKAY.  THANK YOU.

24             LET'S GO TO MS. FRIESEN.

25             PROSPECTIVE JUROR:  I USE THE INTERNET
```

```
1    AND GOOGLE PRETTY MUCH ON A DAILY BASIS, AND I DO

2    HAVE A FACEBOOK THAT I MIGHT CHECK ONCE A DAY.

3              OTHER THAN THAT, THAT'S PRETTY MUCH IT.

4              THE COURT:  OKAY.  THANK YOU.

5              MR. CATHERWOOD?

6              PROSPECTIVE JUROR:  I USE THE INTERNET

7    SEARCH ENGINES, PRETTY MUCH ALL OF THEM.

8              AND NO FACEBOOK OR BLOG OR TWEETING.

9              THE COURT:  ALL RIGHT.  THANK YOU.

10             MR. ROGERS?

11             PROSPECTIVE JUROR:  I THINK I HAVE AN

12   ACCOUNT FOR MOST SOCIAL PLATFORMS, BUT LATELY I

13   TYPICALLY USE THE INTERNET SOLELY FOR YOUTUBE,

14   CHECKING MY E-MAIL, AND CHECKING THE FORUMS FOR A

15   SPECIFIC GAME I PLAY LATELY.  THAT'S ABOUT IT

16   LATELY.

17             THE COURT:  OKAY.  THANK YOU.

18             MR. TEPMAN?

19             PROSPECTIVE JUROR:  I GOOGLE, OF COURSE,

20   FOR LOOKING FOR STUFF.  I HAVE SOME DORMANT

21   FACEBOOK ACCOUNT WHICH I NEVER APPLY TO, NEVER USE.

22             AND I HAVE LINKEDIN ACCOUNT WHICH I NEVER

23   USE AND I DON'T TWEET OR BLOG OR ANYTHING LIKE

24   THAT.

25             THE COURT:  ALL RIGHT.  THANK YOU.
```

```
 1                    MS. MATHUR?
 2                    PROSPECTIVE JUROR:  I USE INTERNET AND
 3       E-MAIL FOR EVERY DAY USE.
 4                    AND I HAVE A FACEBOOK ACCOUNT THAT I JUST
 5       CHECK MAYBE ONCE IN A WHILE, BUT I DON'T DO
 6       ANYTHING MUCH ON THERE.
 7                    THE COURT:  ALL RIGHT.  THANK YOU.
 8                    MR. ILAGAN?
 9                    PROSPECTIVE JUROR:  YES.  I YAHOO A LOT,
10       AND I HAVE A FACEBOOK ACCOUNT AND A LINKEDIN
11       ACCOUNT.
12                    THE COURT:  ALL RIGHT.  THANK YOU.
13                    LET'S GO TO MR. DUNN.
14                    PROSPECTIVE JUROR:  SO I USE -- I DO
15       REGULAR INTERNET SEARCHES.
16                    I HAVE A FACEBOOK ACCOUNT WHICH I USE
17       OCCASIONALLY, BUT NO BLOG, LINKEDIN, OR TWITTER
18       ACCOUNTS.
19                    THE COURT:  ALL RIGHT.  THANK YOU.
20                    MS. HOLLOWAY.
21                    PROSPECTIVE JUROR:  INTERNET, E-MAIL,
22       LINKEDIN, FACEBOOK, TWITTER.
23                    THE COURT:  OKAY.
24                    PROSPECTIVE JUROR:  NO BLOG.
25                    THE COURT:  YOU SAID NO BLOG?
```

```
 1                    PROSPECTIVE JUROR:  NO BLOG.

 2                    THE COURT:  THANK YOU.

 3                    MR. KRETZMANN?

 4                    PROSPECTIVE JUROR:  YES.  I USE THE

 5      INTERNET DAILY, SEARCHING.

 6                    NO BLOG AND NO SOCIAL MEDIA ACCOUNTS.

 7                    THE COURT:  ALL RIGHT.  THANK YOU.

 8                    MR. FLADELAND?

 9                    PROSPECTIVE JUROR:  I USE THE INTERNET,

10      GOOGLE FOR E-MAIL.

11                    I HAVE A FACEBOOK ACCOUNT, BUT NOTHING

12      ELSE.

13                    THE COURT:  ALL RIGHT.  THANK YOU.

14                    MR. SINA?

15                    PROSPECTIVE JUROR:  GENERAL USE OF THE

16      INTERNET, SEARCH ENGINES, E-MAIL.

17                    BUT NONE OF THE REST.

18                    THE COURT:  ALL RIGHT.  THANK YOU.

19                    MS. DOMINGO?

20                    PROSPECTIVE JUROR:  I USE THE INTERNET

21      DAILY.

22                    I DO HAVE A FACEBOOK ACCOUNT.  I DO NOT

23      BLOG OR HAVE TWITTER.

24                    THE COURT:  ALL RIGHT.  THANK YOU.

25                    LET'S GO TO MR. THORPE, IF YOU WOULD HAND
```

```
 1    THE MICROPHONE, PLEASE, DOWN TO THE END.  THANK

 2    YOU.

 3              PROSPECTIVE JUROR:  I SEARCH THE INTERNET

 4    OCCASIONALLY, GOOGLE OCCASIONALLY.

 5              I DON'T BLOG, TWEET, OR I DO NOT HAVE A

 6    FACEBOOK ACCOUNT.

 7              THE COURT:  ALL RIGHT.  THANK YOU.

 8              LET ME GO TO MR. CHIU.

 9              PROSPECTIVE JUROR:  I USE THE INTERNET A

10    LOT FOR SEARCHING.

11              I DO NOT HAVE A FACEBOOK OR TWITTER AND

12    NO BLOG.

13              THE COURT:  ALL RIGHT.  THANK YOU.

14              MS. HUMPHRY?

15              PROSPECTIVE JUROR:  I USE THE INTERNET

16    FOR SEARCHING.

17              I DON'T HAVE A FACEBOOK, TWITTER, OR

18    BLOG.

19              THE COURT:  ALL RIGHT.  THANK YOU.

20              MS. JARO?

21              PROSPECTIVE JUROR:  I USE THE INTERNET

22    FOR SEARCHING USING DIFFERENT TYPES OF SEARCH

23    ENGINES, BUT I DON'T HAVE FACEBOOK NOR A TWITTER

24    ACCOUNT.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

```
 1              SO THE NEXT QUESTIONS ARE GOING TO BE

 2      ABOUT SPECIFIC AREAS.  RAISE YOUR HAPPENED, PLEASE,

 3      IF YOU HAVE ANY SPECIAL TRAINING, EDUCATION, OR

 4      WORK EXPERIENCE -- AND THIS IS YOU OR YOUR

 5      FAMILY -- IN LAW, LAW FIRMS, COURT SYSTEM.

 6              AND IF YOU'VE ALREADY MENTIONED THE

 7      LITIGATION OF WHICH YOU'VE BEEN A PARTY, YOU DON'T

 8      HAVE TO RAISE IT AGAIN.

 9              BUT ANYONE HERE HAVE ANY SPECIAL

10      TRAINING, EDUCATION, WORK EXPERIENCE IN LAW, LAW

11      FIRMS OR COURT SYSTEMS?  RAISE YOUR HAND, PLEASE.

12              ALL RIGHT.  MR. KRETZMANN.

13              WOULD YOU PLEASE HAND THE MICROPHONE TO

14      MR. KRETZMANN AND THEN WE'LL HAND IT TO MR. SINA.

15              PROSPECTIVE JUROR:  YES.  I WAS -- I'M A

16      RETIRED MILITARY OFFICER, AND SO I HAD SPECIAL

17      TRAINING IN A FORM OF CODE OF MILITARY JUSTICE AND

18      HAD TO DO INVESTIGATIONS OCCASIONALLY IN THE NAVY.

19              THE COURT:  ALL RIGHT.  BUT DID YOU

20      ACTUALLY DO ANY REPRESENTATION OF ACCUSED

21      INDIVIDUALS OR ANY ACTUAL LITIGATION, OR YOU WERE

22      DOING THE INVESTIGATION THAT MIGHT HAVE LED UP TO A

23      PROSECUTION?  OR -- WHAT WAS YOUR ROLE?

24              PROSPECTIVE JUROR:  NO.  I'VE DONE A

25      COUPLE JAG MANUAL INVESTIGATIONS.
```

```
 1                THE COURT:  WHAT DOES THAT MEAN, THAT YOU
 2     DID A JAG MANUAL INVESTIGATION?
 3                PROSPECTIVE JUROR:  IT'S BASICALLY AN
 4     INVESTIGATION INTO AN INCIDENT OR A SAFETY ISSUE TO
 5     DETERMINE CAUSES.
 6                THE COURT:  OKAY.  BUT YOU WERE NOT IN
 7     THE JAG YOURSELF?
 8                PROSPECTIVE JUROR:  I WAS NOT.
 9                THE COURT:  OKAY.  SO YOU WERE MORE
10     SUPPORTING A JAG OFFICER BY DOING THE
11     INVESTIGATION --
12                PROSPECTIVE JUROR:  YES.
13                THE COURT:  -- INTO WHETHER A CHARGE
14     SHOULD BE BROUGHT?
15                PROSPECTIVE JUROR:  YES.
16                THE COURT:  OKAY.  NOW, YOU UNDERSTAND
17     THAT THE STANDARDS OF PROOF MAY BE DIFFERENT IN
18     THAT SITUATION, WHICH IS MORE CRIMINAL; CORRECT?
19                PROSPECTIVE JUROR:  OF COURSE.
20                THE COURT:  SO HERE IT'S MORE, YOU KNOW,
21     MORE PROBABLY TRUE THAN NOT OR A HIGHLY PROBABLE
22     STANDARD.  IT'S NOT BEYOND A REASONABLE DOUBT,
23     WHICH IS THE CRIMINAL STANDARD.
24                PROSPECTIVE JUROR:  I UNDERSTAND.
25                THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
```

```
1              ANYONE ELSE WITH LEGAL TRAINING?

2              MR. SINA, YOU RAISED YOUR HAND.  GO

3    AHEAD, PLEASE.

4              PROSPECTIVE JUROR:  MY FATHER IS A

5    RETIRED POLICEMAN.

6              THE COURT:  YOUR FATHER?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  WHERE WAS THAT?

9              PROSPECTIVE JUROR:  IN THE MIDDLE EAST,

10   IRAN.

11             THE COURT:  ALL RIGHT.  AND SAME WITH

12   YOU, MR. SINA.  YOU UNDERSTAND THAT THE BURDENS OF

13   PROOF ARE DIFFERENT IN A CRIMINAL CASE AND THIS IS

14   A CIVIL CASE?

15             PROSPECTIVE JUROR:  I DO.

16             THE COURT:  OKAY.  ALL RIGHT.  ANYTHING

17   ABOUT THAT EXPERIENCE WHICH WOULD AFFECT YOUR

18   ABILITY ONE WAY OR THE OTHER TO BE FAIR AND

19   IMPARTIAL IN THIS CIVIL CASE?

20             PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

21             THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.

22             WE'VE ALREADY TOUCHED UPON THIS, BUT EVEN

23   IF YOU HAVE NOT YOURSELF APPLIED FOR A PATENT, A

24   COPYRIGHT OR A TRADEMARK, DO YOU YOURSELF HAVE ANY

25   SPECIAL TRAINING OR EDUCATION OR WORK EXPERIENCE IN
```

1    PATENTS, COPYRIGHTS, TRADEMARKS, TRADE DRESSES?  IF

2    SO, WOULD YOU PLEASE RAISE YOUR HAND?

3            THE RECORD SHOULD REFLECT NO HANDS HAVE

4    BEEN RAISED.

5            DO YOU OR ANYONE IN YOUR FAMILY HAVE ANY

6    SPECIAL TRAINING, EDUCATION, OR WORK EXPERIENCE IN

7    CELL PHONE OR COMPUTER TABLET TECHNOLOGY,

8    MANUFACTURING, OR SALES?

9            IF SO, RAISE YOUR HAND.

10           MR. REYES AND MR. CATHERWOOD AND

11   MS. LEROSE.  OKAY.

12           CAN YOU PLEASE PASS THE MICROPHONE TO

13   MS. LEROSE?

14           GO AHEAD, PLEASE.

15           PROSPECTIVE JUROR:  MY YOUNGEST SON JESSE

16   IS SELLING PC'S, I'M NOT SURE WITH WHAT COMPANY,

17   AND THAT'S SOMETHING RECENTLY HAS JUST TAKEN ON.

18           THE COURT:  ALL RIGHT.  DO YOU KNOW IF

19   HE -- IS HE DOING IT AT THE RETAIL LEVEL?

20           PROSPECTIVE JUROR:  RETAIL.  RETAIL.

21           THE COURT:  I SEE.  ALL RIGHT.  IS THAT

22   AROUND HERE?

23           PROSPECTIVE JUROR:  IN SANTA CRUZ.

24           THE COURT:  SANTA CRUZ, ALL RIGHT.  WOULD

25   HE HAVE ANY FINANCIAL INTEREST IN THE OUTCOME OF

```
1    THIS CASE?
2              PROSPECTIVE JUROR:  NO, NOT THAT I'M
3    AWARE OF.  I DON'T THINK SO.
4              THE COURT:  OKAY.  ALL RIGHT.
5              LET ME ASK MR. REYES, YOU RAISE YOUR
6    HAND, RIGHT?
7              PROSPECTIVE JUROR:  YES, MA'AM.  YEAH, MY
8    WIFE WORKS FOR SALINAS VALLEY PRISON.  SHE'S AN
9    I.T. PERSON THAT WORKS ON COMPUTERS AND PHONE
10   HARDWARE, I GUESS.
11             THE COURT:  UM-HUM.  ALL RIGHT.  NOW, I'M
12   GOING TO ASK BOTH MS. LEROSE AND MR. REYES THAT,
13   DURING THE COURSE OF THIS TRIAL, YOU DON'T GO
14   AND -- YOU CAN'T TALK TO ANYBODY ABOUT THIS CASE,
15   ESPECIALLY YOU CAN'T GO AND ASK QUESTIONS ABOUT HOW
16   DOES THIS TECHNOLOGY ACTUALLY WORK?  CAN YOU DO
17   THAT?
18             PROSPECTIVE JUROR:  SURE.
19             THE COURT:  YOU'LL RESIST ASKING,
20   MR. REYES?
21             PROSPECTIVE JUROR:  YES.
22             THE COURT:  ALL RIGHT.  LET ME GO TO
23   MR. CATHERWOOD.  YOU RAISED YOUR HAND?
24             PROSPECTIVE JUROR:  I WORKED FOR AT&T IN
25   NETWORK OPERATION, PROJECT MANAGEMENT, AND SOME OF
```

```
1    OUR PROJECTS INVOLVED CELL PHONE TECHNOLOGY AND
2    TOWER INFRASTRUCTURE, BUT NOTHING SPECIFIC TO ANY
3    MANUFACTURERS.
4            THE COURT:  YOU MAY HAVE SOME SPECIALIZED
5    KNOWLEDGE ABOUT SOME TECHNOLOGY THAT'S GOING TO BE
6    IN THIS CASE.  WOULD YOU DECIDE THIS CASE BASED ON
7    THE EVIDENCE THAT'S ADMITTED DURING THIS TRIAL
8    EXCLUSIVELY?
9            PROSPECTIVE JUROR:  YES.
10           THE COURT:  ALL RIGHT.  THANK YOU.
11           DO YOU OR ANYONE CLOSE TO YOU HAVE ANY
12   SPECIAL TRAINING, EDUCATION, WORK EXPERIENCE IN
13   ACCOUNTING?
14           THE RECORD SHOULD REFLECT THAT NO HANDS
15   HAVE BEEN RAISED.
16           WHAT ABOUT CONTRACTS?
17           THE RECORD SHOULD REFLECT -- AH, OKAY.
18   WE'VE GOT TWO PEOPLE.
19           LET'S GO TO MS. MATHUR AND THEN
20   MS. HOLLOWAY.
21           PROSPECTIVE JUROR:  I'M IN H.R., SO I
22   LOOK AT THE EMPLOYMENT CONTRACTS.
23           THE COURT:  UM-HUM.
24           PROSPECTIVE JUROR:  A LITTLE BIT OF
25   ACCOUNTING.  NOT MUCH.  THAT'S IT.
```

```
1              THE COURT:  AND TELL ME A LITTLE BIT

2    ABOUT YOUR ACCOUNTING EXPERIENCE.

3              PROSPECTIVE JUROR:  I DON'T DO ACCOUNTING

4    MYSELF.  I JUST REPORT THE NUMBERS TO THEM.

5              THE COURT:  AND WHAT ARE -- LIKE WHAT

6    KINDS OF CATEGORIES OF NUMBERS?

7              PROSPECTIVE JUROR:  EMPLOYEE BENEFITS.

8              THE COURT:  I SEE.

9              PROSPECTIVE JUROR:  AND PAYROLL.

10              THE COURT:  OKAY.  ALL RIGHT.  SO -- AND

11    YOU'VE HAD QUITE A BIT OF EXPERIENCE LOOKING AT

12    PROFIT AND LOSS STATEMENTS?

13              PROSPECTIVE JUROR:  NO, I DON'T GET TO

14    LOOK AT THOSE.

15              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

16              LET'S GO TO MS. HOLLOWAY.

17              PROSPECTIVE JUROR:  IN MY FIELD OF SUPPLY

18    CHAIN, I'VE BEEN A PURCHASING MANAGER AND SO I LOOK

19    AT SUPPLIER CONTRACTS, I NEGOTIATE CONTRACTS,

20    DANGEROUS GOODS, CHEMICALS, COMPRESSED GASES,

21    SERVICE AGREEMENTS, LEASING.

22              THE COURT:  ALL RIGHT.  BUT YOU WOULD

23    STILL BE ABLE TO DECIDE THIS CASE BASED ON THE

24    EVIDENCE THAT'S ADMITTED DURING THE TRIAL?

25              PROSPECTIVE JUROR:  ABSOLUTELY.
```

```
 1              THE COURT:  ALL RIGHT.  THANK YOU.

 2              WHO IS AT ALL INVOLVED, EITHER THROUGH

 3    EDUCATION, WORK, OR TRAINING, IN RESEARCH AND

 4    DEVELOPMENT?  I THINK THAT'S GOING TO TAKE UP A LOT

 5    OF PEOPLE.

 6              MR. HOGAN -- MR. OKAMOTO, YOU'RE NOT

 7    RAISING YOUR HAND.

 8              PROSPECTIVE JUROR:  FOR SOFTWARE, YEAH.

 9              THE COURT:  SO WE TALKED ABOUT THAT.

10              ANYONE ELSE WE HAVEN'T TALKED ABOUT?

11              MR. HOGAN, WE SORT OF TALKED ABOUT YOUR

12    R&D.

13              MS. HALIM, WE TALKED ABOUT YOURS.

14              ANYONE ELSE ON THE FRONT ROW THAT WE

15    HAVEN'T TALKED ABOUT YOUR R&D WORK?

16              WHAT ABOUT ON THE SECOND ROW?  WHO'S GOT

17    R&D EXPERIENCE THAT THEY HAVEN'T DISCUSSED SO FAR?

18              MR. CATHERWOOD.

19              PROSPECTIVE JUROR:  NOT A GREAT DEAL.

20    MOST -- I'VE GOT TWO PROJECTS WORKING WITH AT&T

21    LABS WITH THE TEAM.

22              THE COURT:  AND ARE THEY ON NETWORK

23    OPERATIONS OR WHAT'S THE SORT OF FIELD?

24              PROSPECTIVE JUROR:  YEAH, NETWORK

25    OPERATIONS SUPPORT.
```

```
 1              THE COURT:  ALL RIGHT.  THANK YOU.

 2              WHAT ABOUT IN -- OH, MS. HALIM.  DO YOU

 3    WANT TO --

 4              PROSPECTIVE JUROR:  YEAH, I'M SORRY.

 5    IT'S THE PREVIOUS QUESTION ABOUT READING CONTRACTS.

 6    I DO READ CONTRACTS, YEAH, IN MY CURRENT JOB.

 7              THE COURT:  IN YOUR CURRENT JOB YOU READ

 8    CONTRACTS?

 9              PROSPECTIVE JUROR:  YEAH, UM-HUM.

10              THE COURT:  AND, WHAT, ARE THESE SUPPLY

11    CHAIN OR CONSULTING OR WHAT KIND OF CONTRACTS?

12              PROSPECTIVE JUROR:  CUSTOMER, CONTRACT

13    WITH CUSTOMERS.

14              THE COURT:  OKAY.

15              PROSPECTIVE JUROR:  OR SUPPLY, SUPPLIERS.

16              THE COURT:  OKAY.  SO THESE ARE, LIKE,

17    ORIGINAL EQUIPMENT MANUFACTURER CUSTOMERS?  THESE

18    ARE NOT RETAIL --

19              PROSPECTIVE JUROR:  NO.

20              THE COURT:  -- PRIVATE CONSUMERS?  THESE

21    ARE OEM CONTRACTS?

22              PROSPECTIVE JUROR:  YES.

23              THE COURT:  ALL RIGHT.  AND YOU DO

24    SUPPLIER CONTRACTS AS WELL.  OKAY.  ALL RIGHT.

25    THANK YOU.
```

```
1              ANYONE ELSE ON THE FIRST ROW?

2              NO?  ANYONE ON THE SECOND ROW, OTHER THAN

3    MR. CATHERWOOD?  NO?

4              OKAY.  LET'S GO TO MR. TEPMAN.

5              PROSPECTIVE JUROR:  MAY I BE EXCUSED TO

6    GO TO THE REST ROOM?

7              THE COURT:  OH, YES.  DOES ANYONE ELSE

8    NEED TO GO TO THE REST ROOM?  SHOULD WE TAKE A

9    FIVE-MINUTE BREAK?

10             THERE ACTUALLY IS -- DO YOU NEED TO USE

11   THE REST ROOM AS WELL?

12             ALL RIGHT.  WHY DON'T WE TAKE A

13   FIVE-MINUTE BREAK.  IF IT'S JUST THE JURORS, YOU

14   CAN USE THE JURY ROOM IN HERE SO YOU DON'T HAVE TO

15   WAIT.

16             TAKE A FIVE-MINUTE BREAK AGAIN.  SAME

17   INSTRUCTION.  PLEASE DON'T DISCUSS THE CASE WITH

18   ANYONE, DON'T DO ANY OF YOUR OWN RESEARCH.

19             THANK YOU.

20             (WHEREUPON, A RECESS WAS TAKEN.)

21             THE COURT:  ALL RIGHT.  LET'S START BACK,

22   PLEASE.

23             ANYONE IN ROWS 3 THROUGH 6 WHO HAS BEEN

24   INVOLVED IN RESEARCH AND DEVELOPMENT AND HASN'T HAD

25   A CHANCE TO TALK ABOUT IT YET?
```

```
 1                  OKAY.  LET'S GO TO MR. TEPMAN AND THEN

 2      MR. KRETZMANN.

 3                  GO AHEAD, PLEASE.

 4                  PROSPECTIVE JUROR:  MOSTLY THE

 5      SEMICONDUCTOR.

 6                  THE COURT:  WOULD YOU USE THE MICROPHONE,

 7      PLEASE?  THANK YOU.

 8                  PROSPECTIVE JUROR:  IT'S MOSTLY -- MOST

 9      OF THE R&D WORK IS IN THE SEMICONDUCTOR

10      MANUFACTURING.

11                  THE COURT:  ALL RIGHT.

12                  PROSPECTIVE JUROR:  AND SOME PROCESSING

13      AS WELL.

14                  THE COURT:  ALL RIGHT.  HAS THAT ALL BEEN

15      WITH APPLIED MATERIALS?

16                  PROSPECTIVE JUROR:  YEAH.

17                  THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

18                  PROSPECTIVE JUROR:  INTEL BEFORE.

19                  THE COURT:  I'M SORRY?

20                  PROSPECTIVE JUROR:  AND BEFORE THAT, IT

21      WAS INTEL.

22                  THE COURT:  OKAY.  THANK YOU.

23                  I BELIEVE, MR. KRETZMANN, YOU RAISED YOUR

24      HAND AS WELL.

25                  PROSPECTIVE JUROR:  I RAISED MY HAND.
```

```
 1              THE COURT:  I'M SORRY, MR. ROGERS.

 2              PROSPECTIVE JUROR:  I JUST REMEMBERED

 3    THAT, LIKE, A COUPLE WEEKS AGO I WAS SELECTED TO DO

 4    TESTING FOR A DEVELOPER, A LOCAL DEVELOPER.

 5              I'M NOT SURE HOW MUCH I CAN SAY.  I

 6    SIGNED A CONFIDENTIALITY AGREEMENT SAYING I

 7    WOULDN'T SAY ANYTHING ABOUT IT.

 8              BUT TECHNICALLY I HELP THEM DO RESEARCH

 9    AND DEVELOPMENT.

10              AND I'M NOT SURE IF THIS QUALIFIES, BUT

11    ABOUT A YEAR AGO, MY MOM TALKED TO HER WORK AND HAD

12    THEM HIRE ME FOR ABOUT TWO WEEKS.  I DID QUALITY

13    OF -- IT WAS A NEW LUNCH BOX.  THEY MAKE TRAVEL

14    EQUIPMENT AND TRAVEL STUFF AND IT WAS A NEW LUNCH

15    BOX, SO I WAS TESTING THE QUALITY OF THE PRODUCT,

16    SEEING HOW GOOD IT LOOKED BEFORE THEY SENT IT OFF

17    TO THEIR CUSTOMERS.

18              THE COURT:  ALL RIGHT.  THANK YOU.

19              I DON'T WANT YOU TO DISCLOSE ANYTHING

20    THAT YOU ARE NOT FREE TO, BUT DOES IT HAVE ANYTHING

21    TO DO WITH CELL PHONES, COMPUTER TABLETS, OR

22    COMPUTERS?

23              PROSPECTIVE JUROR:  IT'S A VIDEO GAME.

24              THE COURT:  VIDEO GAME, OKAY, THAT'S

25    FINE.
```

```
 1                    ALL RIGHT.  THANK YOU.

 2                    ANYONE ELSE?

 3                    MR. KRETZMANN, I KNOW YOU HAD YOUR HAND

 4      RAISED.  GO AHEAD, PLEASE.

 5                    PROSPECTIVE JUROR:  I WAS FORMERLY A

 6      DIRECTOR OF A RESEARCH CENTER AT THE NAVAL

 7      POST-GRADUATE SCHOOL.

 8                    THE COURT:  AND WHAT WAS THE FIELD?

 9                    PROSPECTIVE JUROR:  IT WAS THE CENTER FOR

10      RECONNAISSANCE RESEARCH, SO IT'S MOSTLY SATELLITE

11      SENSING AND COMMUNICATIONS.

12                    THE COURT:  AND WAS THAT RESEARCH ON THE

13      TECHNOLOGY SIDE OR MORE ON THE POLICY SIDE?

14                    PROSPECTIVE JUROR:  IT WAS BOTH

15      TECHNOLOGY AND APPLICATIONS, OPERATIONS.

16                    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

17                    ANYONE ELSE?  OKAY.  THE RECORD SHOULD

18      REFLECT THAT NO HANDS HAVE BEEN RAISED.

19                    LET'S GO TO THE SHEET ON YOUR CHAIR.

20      IT'S CALLED JUROR BIOGRAPHICAL INFORMATION.

21                    IF YOU WOULD PLEASE HAND THE MICROPHONE

22      BACK TO MS. HALIM AND WE'RE JUST GOING TO GO

23      STRAIGHT DOWN EVERY ROW, PLEASE.  IF YOU WOULD

24      ANSWER THE QUESTIONS ON YOUR SHEET?

25                    PROSPECTIVE JUROR:  MY NAME IS SELFIA
```

```
 1    HALIM.  I WAS BORN IN INDONESIA.  I LIVE IN

 2    LOS GATOS.

 3              I HAVE BACHELOR OF SCIENCE FROM UCLA IN

 4    MATHEMATICS AND COMPUTER SCIENCE.

 5              I'M CURRENTLY A CFO OF THE A COUPLE I.P.

 6    COMPANIES.  IT'S A START-UP, SO WE HAVE LESS THAN

 7    20 EMPLOYEES.

 8              FAVORITE HOBBY?  I LIKE TO DO GARDENING

 9    AND TRAVELLING.

10              I AM MARRIED AND LIVING WITH MY HUSBAND.

11              I HAVE WORKED AS ENGINEERS.  MY PREVIOUS

12    EMPLOYERS ARE WEITEK, SILICON GRAPHICS, CISCO, AND

13    CURRENTLY OBIHAI.

14              I HAVE THREE CHILDREN, ALL MALES, AGES

15    23, 21, AND 18.

16              I NEVER HAD A JURY EXPERIENCE BEFORE.

17              THE COURT:  WHAT WAS THE OCCUPATION OF --

18    AND EMPLOYER OF YOUR HUSBAND?

19              PROSPECTIVE JUROR:  CURRENTLY?

20              THE COURT:  YES.

21              PROSPECTIVE JUROR:  WE WORK AT THE SAME

22    COMPANY.

23              THE COURT:  OH, THE SAME START-UP?

24              PROSPECTIVE JUROR:  YES.

25              THE COURT:  OKAY.  ALL RIGHT.  AND WHAT
```

```
 1     ABOUT PREVIOUSLY?  WHAT WERE HIS EMPLOYERS?
 2               PROSPECTIVE JUROR:  CISCO SYSTEMS.
 3               THE COURT:  I SEE.  OKAY.  AND ARE ANY OF
 4     YOUR CHILDREN CURRENTLY WORKING?  ARE THEY
 5     STUDENTS?
 6               PROSPECTIVE JUROR:  THEY ARE STUDENT.
 7     ONE IS WORKING ON INTERNSHIP AT FACEBOOK.
 8               THE COURT:  OKAY.
 9               PROSPECTIVE JUROR:  YEAH.
10               THE COURT:  AND THE OTHERS ARE STUDENTS?
11               PROSPECTIVE JUROR:  YES.
12               THE COURT:  OKAY.  THANK YOU.
13               PROSPECTIVE JUROR:  THANK YOU.
14               THE COURT:  WOULD YOU PLEASE PASS THE
15     MICROPHONE TO MR. OKAMOTO PLEASE?
16               PROSPECTIVE JUROR:  MY NAME IS STEVE
17     OKAMOTO.  I WAS BORN IN LAGUNA BEACH, CALIFORNIA.
18     I CURRENTLY RESIDE IN SAN JOSE.
19               I HAVE A MASTER'S DEGREE IN INDUSTRIAL
20     PSYCHOLOGY FROM CAL STATE LONG BEACH.  UNDERGRAD AT
21     U.C. IRVINE IN PSYCHOLOGY.
22               CURRENT JOB TITLE, I'M A DESIGNER FOR
23     GOOGLE.  RESPONSIBILITIES INCLUDE DESIGNING
24     INTERFACES -- RESPONSIBILITIES INCLUDE DESIGNING
25     THE USER INTERFACE, RUNNING TESTS ON THOSE, AND
```

```
1    ITERATIONS, WORKING WITH ENGINEERING TO GET THOSE

2    CODED.

3              PREVIOUS JOBS, I'VE BEEN AT EBAY, I'VE

4    BEEN AT IBM, I'VE BEEN AT CADENCE DESIGN SYSTEMS

5    AND PROPEL, WHICH WAS A START-UP.

6              FAVORITE HOBBY, I KIND OF LIKE GADGETS,

7    ELECTRONICS.

8              WE HAVE TWO KIDS, SO I LIKE TO DO A LOT

9    OF SPORTS WITH THE KIDS, SO SPORTS.

10             I'M CURRENTLY MARRIED.  MY WIFE WORKS FOR

11   THE COUNTY AS A COURT OFFICER.  SHE'S BEEN DOING

12   THAT FOR SEVERAL YEARS NOW.

13             PRIOR TO THAT, THAT WOULD BE IN '98 SHE

14   BECAME A COURT OFFICER, OR SHE WORKED FOR THE

15   COUNTY.  PRIOR TO THAT, SHE WAS DOING CANCER

16   RESEARCH.

17             MY CHILDREN, I HAVE A SON WHO'S 8 AND MY

18   DAUGHTER IS 11, AND THEY'RE BOTH GOING TO SCHOOL.

19             AND I HAVE HAD NO PRIOR JURY EXPERIENCE.

20             THE COURT:  THANK YOU.  CAN YOU TELL ME A

21   LITTLE BIT MORE WHAT YOUR WIFE DOES FOR THE COURT?

22             PROSPECTIVE JUROR:  SO SHE WAS A

23   PROBATION OFFICER.

24             THE COURT:  UM-HUM.

25             PROSPECTIVE JUROR:  AND NOW SHE'S A COURT
```

1    OFFICER, SO I GUESS SHE JUST REPRESENTS THE COUNTY

2    IN COURT.

3            THE COURT:  AS A PROBATION OFFICER?

4            PROSPECTIVE JUROR:  YEAH.  WELL, I GUESS

5    SHE'S A COURT OFFICER, BUT SHE REPRESENTS THE

6    PROBATION DEPARTMENT.

7            THE COURT:  RIGHT.  OKAY.  AND THAT'S FOR

8    SANTA CLARA COUNTY?

9            PROSPECTIVE JUROR:  YES.

10           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11           MR. HOGAN?

12           PROSPECTIVE JUROR:  MY NAME -- EXCUSE ME,

13   MY NAME IS VELVIN HOGAN.  I WAS BORN IN GREENVILLE,

14   TEXAS.  I RESIDE IN SAN JOSE, CALIFORNIA.

15           I HAVE AN A.A. DEGREE FROM SAN JOSE CITY

16   COLLEGE AND I ATTENDED SAN JOSE STATE IN THE

17   ELECTRICAL ENGINEERING DEPARTMENT, THOUGH I DID NOT

18   GRADUATE.

19           I HAVE BEEN IN -- I WAS IN THE HARD DRIVE

20   INDUSTRY FOR 35-PLUS YEARS AS AN ELECTRICAL

21   ENGINEER.  I WORKED FOR COMPANIES LIKE MEMOREX,

22   DIGITAL EQUIPMENT CORPORATION TO NAME A FEW, SEVEN

23   ALTOGETHER.

24           AND MY HOBBIES ARE WHAT I WAS DOING IN

25   THE REALM OF VIDEO COMPRESSION.

1            AND I AM MARRIED.

2            AND MY -- I HAVE TWO CHILDREN, A SON 43

3    AND A DAUGHTER 42.

4            MY DAUGHTER WORKS FOR THE COUNTY AND MY

5    SON WORKS IN PRIVATE INDUSTRY.

6            AND I HAVE BEEN A JUROR IN THE PAST ON

7    THREE DIFFERENT OCCASIONS, BUT THEY WERE ALL THREE

8    CIVIL CASES.

9            THE COURT:  CAN YOU TELL US -- LET ME

10   BACK UP A SECOND.  WHAT ABOUT YOUR SPOUSE?  WHAT

11   DOES SHE DO OR DID SHE WORK OUTSIDE THE HOUSE?

12           PROSPECTIVE JUROR:  SHE'S RETIRED

13   CURRENTLY, BUT BEFORE SHE RETIRED, SHE WORKED FOR

14   THE SAN JOSE UNIFIED SCHOOL DISTRICT.  SHE WAS A

15   SPECIAL EDUCATION -- NOT A CREDENTIALED TEACHER,

16   BUT A CERTIFIED ASSISTANT.

17           THE COURT:  ALL RIGHT.  AND CAN YOU TELL

18   US THE SEVEN COMPANIES YOU WORKED FOR?  DIGITAL

19   EQUIPMENT, MEMOREX?

20           PROSPECTIVE JUROR:  OKAY.  TO BEGIN WITH,

21   I WORKED FOR A COMPANY THAT NO LONGER EXISTS CALLED

22   CAYLIS MEMORIES; THEN MEMOREX CORPORATION; THEN

23   STORAGE TECHNOLOGY CORPORATION IN COLORADO; DIGITAL

24   EQUIPMENT CORPORATION IN COLORADO SPRINGS; I WORKED

25   FOR SEAGATE TECHNOLOGY; AND THE LAST COMPANY WAS --

```
 1    AND THEN MICROPOLIS CORPORATION, WHICH NO LONGER

 2    EXISTS; AND QUANTUM.

 3            THE COURT:  ALL RIGHT.  AND YOUR DAUGHTER

 4    THAT WORKS FOR THE COUNTY, IS THAT IN ANY WAY FOR

 5    THE COURT SYSTEM?

 6            PROSPECTIVE JUROR:  NO, NO.  SHE IS A --

 7    A DIRECTOR'S ASSISTANT.  SHE WAS DOING WORK PRIOR

 8    TO THE CENSUS FOR THE CENSUS, PUTTING EVERYTHING

 9    TOGETHER TO GET THAT GOING.

10            AND CURRENTLY I'M NOT 100 PERCENT SURE

11    WHAT SHE'S DOING.  SHE JUST RECENTLY TRANSFERRED TO

12    A NEW POSITION.

13            THE COURT:  OKAY.  AND YOUR SON WHO'S IN

14    PRIVATE INDUSTRY, IS THAT IN ANY WAY RELATED CELL

15    PHONES, COMPUTERS, TABLETS, NOTHING IN THE TECH

16    INDUSTRY?

17            PROSPECTIVE JUROR:  NO.  IT'S IN OPTICS,

18    BASICALLY, FIBER OPTICS.

19            THE COURT:  ALL RIGHT.  THANK YOU.

20            MR. BELLA?

21            PROSPECTIVE JUROR:  MY NAME IS TERRY

22    BELLA.  MY BIRTH PLACE IS PALO ALTO AND I'M A

23    RESIDENT OF MOUNTAIN VIEW.

24            MY EDUCATION BACKGROUND, A.A. DEGREE IN

25    AUTOMATIC TECHNOLOGY AND AN A.A. AGREE IN
```

```
1    ELECTRONICS, TECHNICIAN, COLLEGE OF SAN MATEO.

2             PAST JOBS, I WAS PART OWNER IN

3    COMMUNICATIONS RESEARCH FOR MANY YEARS, A TWO-WAY

4    RADIO COMPANY.  AND I CURRENTLY WORK AT STANFORD

5    POLICE DEPARTMENT AS LOGISTICS.

6             HOBBIES, I LIKE TO DO REMODELS ON MY

7    HOUSE AND CAMPING AND WORK ON CARS AS HOBBIES.

8             I'M CURRENTLY MARRIED, 41 YEARS NEXT

9    WEEK.

10            THE COURT:  CONGRATULATIONS.

11            PROSPECTIVE JUROR:  THANK YOU.

12            AND MY WIFE WORKS CURRENTLY WITH TRADER

13   JOE'S IN PALO ALTO, AND DURING THE SCHOOL TIME

14   SHE'S AN ART TEACHER AT SPRINGER SCHOOL IN

15   LOS ALTOS.

16            I HAVE A SON WHO'S 25.  HE'S MARRIED AND

17   THEY JUST MOVED BACK FROM MARYLAND AND THEY'RE

18   LIVING WITH US NOW UNTIL THEY CAN FIND A JOB, BOTH

19   OF THEM CAN FIND A JOB.

20            PAST JURY, I REMEMBER TWO JURY SERVICES I

21   DID.  BOTH WERE GUILTY.

22            ONE HAD TO DO WITH DRUGS AND I DON'T

23   REMEMBER WHAT THE OTHER ONE WAS.

24            THE COURT:  ALL RIGHT.  BUT THEY WERE

25   BOTH CRIMINAL?
```

```
 1                PROSPECTIVE JUROR:  YES.

 2                THE COURT:  AND WERE THEY IN THIS COUNTY?

 3                PROSPECTIVE JUROR:  YES.

 4                THE COURT:  AND WERE THEY STATE COURT OR

 5     FEDERAL COURT, IF YOU REMEMBER?

 6                PROSPECTIVE JUROR:  I DON'T KNOW.

 7                THE COURT:  THAT'S FINE.  HOW LONG AGO

 8     WERE THESE?

 9                PROSPECTIVE JUROR:  OH, JEEZ.  PROBABLY

10     20-SOME YEARS AGO.

11                THE COURT:  20-SOME ODD YEARS AGO.  OKAY.

12                AND YOU UNDERSTAND THAT THE STANDARD IN A

13     CRIMINAL CASE IS BEYOND A REASONABLE DOUBT, WHICH

14     IS HIGHER THAN THE STANDARDS THAT WOULD APPLY IN

15     THIS CASE?

16                PROSPECTIVE JUROR:  YES.

17                THE COURT:  ALL RIGHT.  I FORGOT TO ASK

18     MR. HOGAN, THE THREE CIVIL LAWSUITS FOR WHICH YOU

19     WERE A JUROR, DO YOU REMEMBER WHAT THE CAUSES OF

20     ACTION WERE?

21                PROSPECTIVE JUROR:  ONE OF THEM WAS AN

22     ACCIDENT THAT OCCURRED THAT WAS BACK IN 1973 AND

23     WE, THE JURY, DID NOT RULE IN FAVOR OF THE

24     DEFENDANT IN THAT CASE.

25                THE COURT:  OH.  AND I'M NOT ASKING
```

```
1    ANYONE TO REVEAL THE VERDICT.  I JUST WANT TO KNOW
2    WHETHER YOU REACHED A VERDICT.
3               PERSONAL INJURY, CAR ACCIDENT?
4               PROSPECTIVE JUROR:  ALL THREE WE REACHED
5    A VERDICT.  THAT ONE WAS PERSONAL INJURY.
6               THE COURT:  OKAY.
7               PROSPECTIVE JUROR:  THE NEXT ONE WAS
8    SPOUSAL ABUSE, BUT NOT CRIMINAL, SO IT WAS DONE IN
9    SUPERIOR COURT.
10              THE COURT:  OKAY.
11              PROSPECTIVE JUROR:  THE OTHER ONE WAS A
12   LITTLE BIT OLDER AND RIGHT NOW I CAN'T REMEMBER THE
13   DETAILS.  I REMEMBER WE REACHED A VERDICT.
14              THE COURT:  DO YOU REMEMBER ROUGHLY, WHAT
15   WAS THE ONE TWO DECADES AGO?
16              PROSPECTIVE JUROR:  WELL, ONE WAS IN '73;
17   ONE WAS IN THE MID '80S, '87, I THINK IT WAS; AND
18   THE OTHER ONE THAT WAS MORE RECENT WAS 1990.
19              THE COURT:  SO YOU'RE DUE FOR ANOTHER
20   ONE.
21              PROSPECTIVE JUROR:  YEAH.
22              THE COURT:  OKAY.  ALL RIGHT.  OKAY.
23   THANK YOU.
24              LET'S GO TO MS. ROUGIERI.
25              PROSPECTIVE JUROR:  MY NAME IS LUZVIMINDA
```

```
1    ROUGIERI.  MY PLACE OF BIRTH IS PHILIPPINES, BUT I
2    GREW UP IN THE UNITED STATES.  CITY OF RESIDENCE,
3    EVERGREEN IN SAN JOSE.
4            EDUCATIONAL BACKGROUND, I HAVE A
5    BACHELOR'S DEGREE IN FOREIGN LANGUAGE.
6            PAST AND CURRENT JOB, I HAVE NOT WORKED
7    FOR 23 YEARS.  I'VE BEEN RAISING OUR SON.
8            I WORKED AT NATIONAL SEMICONDUCTOR AND
9    THAT WAS WHEN WE WERE LIVING IN -- I MOVED TO
10   MASSACHUSETTS AND CHANGED CAREER AND GET INTO
11   RETAIL.
12           FAVORITE HOBBY WOULD BE PAINTING,
13   COOKING, AND GARDENING.
14           I AM CURRENTLY MARRIED.  IT'LL BE 25
15   YEARS BY NEXT MONTH.
16           THE COURT:  CONGRATULATIONS.
17           PROSPECTIVE JUROR:  CURRENT JOB, MY
18   HUSBAND, HE WORKED FOR APPLIED MATERIALS.  HE
19   WORKED FOR K.L.A.  HE WORKED FOR HARRIS, ETON, AND
20   NOW HE WORKS FOR A MEDICAL START-UP COMPANY WORKING
21   WITH -- TEAM UP WITH LAWRENCE LIVERMORE.
22           WE HAVE ONE CHILD WHO IS NOW IN COLLEGE,
23   A 21 YEAR OLD.
24           PRIOR JURY SERVICE, THIS IS THE FIRST
25   TIME, SO I'M OVERWHELMED AND A JURY, IT'S -- THIS
```

```
1    IS THE FIRST TIME.

2              THE COURT:  OKAY.  THANK YOU.

3              LET ME ASK, WITH YOUR RETAIL NOW, IS THAT

4    IN ANY WAY RELATED TO PHONES, TABLETS, COMPUTERS?

5              PROSPECTIVE JUROR:  NO, IT HAD NOTHING TO

6    DO WITH THAT.

7              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

8              MS. FLAVIN?

9              PROSPECTIVE JUROR:  MY NAME IS NICOLE

10   FLAVIN.

11             THE COURT:  FLAVIN, EXCUSE ME.

12             PROSPECTIVE JUROR:  IT'S ALL RIGHT.

13   PLACE OF BIRTH, LOS GATOS, CALIFORNIA.  I CURRENTLY

14   LIVE IN SUNNYVALE.

15             EDUCATIONAL BACKGROUND, SOME COLLEGE.

16             I CURRENTLY WORK AT UPS.  I'M A

17   SUPERVISOR.  I'M RESPONSIBLE FOR PACKAGE PLANNING

18   AND DISPATCH.

19             I'M NOT MARRIED.  I DON'T HAVE ANY

20   CHILDREN.  AND I'VE NEVER SERVED ON A JURY BEFORE.

21             THE COURT:  OKAY.  THANK YOU.

22             MS. LEROSE, IF YOU WOULD PLEASE PASS THE

23   MICROPHONE OVER.  THANK YOU.

24             PROSPECTIVE JUROR:  MY NAME IS LYNN

25   LEROSE.  PLACE OF BIRTH IS EASTON, PENNSYLVANIA.  I
```

```
 1    RESIDE IN RIO DEL MAR IN SANTA CRUZ COUNTY.

 2              I HAVE MY MASTER'S IN EARLY CHILDHOOD

 3    EDUCATION AND SPEECH PATHOLOGY -- MY MASTER'S IS

 4    NOT IN SPEECH PATHOLOGY.  IT'S A B.S. IN SPEECH

 5    PATHOLOGY.

 6              I'VE OWNED MY OWN BUSINESS, A NATIONALLY

 7    ACCREDITED PRESCHOOL FOR 20 YEARS, CLOSED, WHICH I

 8    HAVE ALREADY DISCLOSED, IN 2005.

 9              AND PREVIOUS TO THAT, THEY WERE JUST

10    PART-TIME JOBS TO GET ME THROUGH SCHOOL TO GET TO

11    WHERE I WAS GOING, AND I CAN'T REMEMBER THOSE

12    LITTLE JOBS, BUT I HAVE BEEN GRATEFUL FOR THEM.

13              FAVORITE HOBBIES, I LOVE READING AND

14    GARDENING AND PLANTING MY -- THE RECREATIONAL

15    ACTIVITIES, PLANTING MY FEET ON ANY BEACH THAT I

16    CAN WALK ON FOR AT LEAST A COUPLE OF HOURS.

17              I AM MARRIED.  MY PARTNER'S CURRENT

18    OCCUPATION IS IN INFORMATION TECHNOLOGY WITH

19    SANTA CLARA MEDICAL.

20              MY CHILDREN, I HAVE TWO, A 29 YEAR OLD

21    AND A 34 YEAR OLD.  ONE IS IN RETAIL, COMPUTERS,

22    AND MY OTHER ONE OWNS HIS OWN CONSTRUCTION

23    BUSINESS.

24              AND NO, NO PRIOR SERVICE.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

```
 1                   MR. REYES?

 2                   PROSPECTIVE JUROR:  MY NAME IS MANNY

 3       REYES.  I WAS BORN IN SAN MATEO, CALIFORNIA.  I

 4       RESIDE IN GILROY, CALIFORNIA.

 5                   MY EDUCATION WAS WILCOX HIGH SCHOOL.

 6                   MY FIELD OF WORK THAT I'VE ALWAYS BEEN IN

 7       IS CONSTRUCTION.  I DID DO RESTORATION ON CARS FOR

 8       TEN YEARS.  I WORK FOR THE CITY OF GILROY NOW.

 9                   MY FAVORITE HOBBIES ARE WORKING ON CARS

10       AND MOTORCYCLES, CAMPING.

11                   THIS IS MY SECOND MARRIAGE.  MY WIFE NOW,

12       SHE WORKS FOR SALINAS VALLEY CORRECTION PRISON.

13       SHE HAS THREE KIDS.  I HAVE TWO, A BOY AND A GIRL.

14       SHE HAS TWO BOYS AND A GIRL.  AGES OF MINE ARE 29

15       AND 32.  HERS ARE 21, 26, AND 29.

16                   I NEVER HAVE BEEN ON A JURY BEFORE.

17                   THE COURT:  ALL RIGHT.  AND WHAT ABOUT

18       YOUR TWO KIDS?  ARE THEY CURRENTLY WORKING?

19                   PROSPECTIVE JUROR:  YES.  MY SON IS,

20       LIKE, PART-TIME FOR A SCHOOL IN GILROY, ELEMENTARY

21       SCHOOL.

22                   THE COURT:  OKAY.

23                   PROSPECTIVE JUROR:  AND MY DAUGHTER, SHE

24       WORKS IN A CONVALESCENT HOSPITAL IN SACRAMENTO.

25                   THE COURT:  OKAY.  WHAT ABOUT THE THREE
```

200

```
 1     STEP-CHILDREN?
 2               PROSPECTIVE JUROR:  THE YOUNGEST ONE, 21,
 3     HE WORKS IN RETAIL.
 4               THE COURT:  UM-HUM.
 5               PROSPECTIVE JUROR:  HER DAUGHTER WORKS
 6     FOR THE CITY OF CAMPBELL, AND HER SON IS GOING TO
 7     SCHOOL IN SAN FRANCISCO.
 8               THE COURT:  OKAY.  THANK YOU.
 9               ALL RIGHT.  MS. FRIESEN?
10               PROSPECTIVE JUROR:  MY NAME IS MARY
11     FRIESEN.  I WAS BORN IN MEXICO.  I LIVE IN SALINAS.
12               I HAVE A HIGH SCHOOL EDUCATION.  I DO
13     HAVE A STATE OF CALIFORNIA INSURANCE LICENSE.  I'VE
14     BEEN AN INSURANCE AGENT FOR ABOUT 22 YEARS.  I DID
15     FINANCE, RETAIL FINANCE BEFORE THAT.
16               MY HOBBIES ARE READING, SPENDING TIME
17     WITH MY FAMILY.
18               I AM MARRIED.  MY HUSBAND CURRENTLY WORKS
19     FOR PG&E AS A GAS SERVICE REP AND HE'S A RETIRED
20     CORRECTIONAL OFFICER.
21               MY DAUGHTER IS 17 AND MY SON IS 14 AND
22     THEY'RE BOTH STUDENTS.
23               AND I HAVE NOT BEEN ON A JURY BEFORE.
24               THE COURT:  OKAY.  THANK YOU.
25
```

```
 1                   PROSPECTIVE JUROR:  I'M PETER CATHERWOOD.
 2       I WAS BORN IN FERNANDINA BEACH, FLORIDA.  I LIVE IN
 3       SAN JOSE.
 4                   I HAVE AN M.B.A. AND BACHELOR'S OF
 5       SCIENCE DEGREES.  I CURRENTLY WORK FOR AT&T IN
 6       PROJECT MANAGEMENT.  I ALSO WORKED FOR SBC.  AND
 7       THEN I WAS WITH THE U.S. NAVY IN AVIONICS
 8       TECHNOLOGY.
 9                   I'M CURRENTLY MARRIED.  MY WIFE WORKS FOR
10       LOCKHEED MARTIN AND SHE'S A SOFTWARE ENGINEER.
11                   WE HAVE NO CHILDREN.
12                   MY PRIOR JURY SERVICE WAS CIVIL MORE THAN
13       30 YEARS AGO, AND THERE WAS A VERDICT.
14                   THE COURT:  ALL RIGHT.  AND DO YOU RECALL
15       WHAT TYPE OF CASE IT WAS?
16                   PROSPECTIVE JUROR:  IT WAS A CONTRACT
17       DISPUTE.
18                   THE COURT:  OKAY.  THANK YOU.
19                   PROSPECTIVE JUROR:  MY NAME IS
20       CHRISTOPHER ROGERS.  I WAS BORN IN SAN JOSE AND
21       CURRENTLY LIVE IN SAN JOSE.
22                   I GRADUATED HIGH SCHOOL AND HAVE ONE
23       SEMESTER IN COMMUNITY COLLEGE.
24                   I'M CURRENTLY UNEMPLOYED.  THE LAST TIME
25       I WORKED WAS FOR ABOUT TWO WEEKS AT MY MOM'S WORK.
```

1           I WOULD SAY MY TOP HOBBY IS PROBABLY

2     VIDEO GAMES.  I ALSO DON'T MIND DRAWING OR MESSING

3     AROUND WITH THE INTERNET AND STUFF.

4           I'M NOT CURRENTLY IN ANY SERIOUS

5     RELATIONSHIP, I DON'T HAVE ANY CHILDREN, AND THIS

6     IS THE FIRST TIME I'VE BEEN ON A JURY.

7           THE COURT:  ALL RIGHT.  THANK YOU.

8           MR. TEPMAN?

9           PROSPECTIVE JUROR:  IT'S AVI TEPMAN.

10    PLACE OF BIRTH IS ISRAEL.  CITY OF RESIDENCE IS

11    CUPERTINO.

12          EDUCATION, B.S.M.E.  EDUCATION

13    BACKGROUND, B.S.M.E.  AND CURRENT JOB IS AT APPLIED

14    MATERIALS, V-P OF ENGINEERING.  AND PREVIOUSLY

15    ENGINEERING MANAGER AT INTEL.

16          HOBBY IS MY JOB.

17          (LAUGHTER.)

18          PROSPECTIVE JUROR:  I'M MARRIED WITH

19    THREE CHILDREN.  AND OH, MY WIFE, WHAT IS -- OH, MY

20    SPOUSE, I GUESS.  SHE IS AN R.N., BUT SHE'S A

21    HOMEMAKER FOR THE LAST 20 YEARS.

22          AND MY CHILDREN ARE 35, 32, AND 28.  AND

23    THE 35 IS A GIRL, 30 AND 28 IS BOYS.

24          SHE'S -- MY DAUGHTER IS COACHING THE

25    YOUNG PEOPLE FOR THE CONFIDENCE.  MY OTHER SON

1    IS -- MY SON IS IN REAL ESTATE, AND MY THIRD KID IS

2    AN ECONOMIST AT GOOGLE.

3              AND I NEVER SERVED ON A JURY SERVICE.

4              THE COURT:  THANK YOU.

5              MS. MATHUR?

6              PROSPECTIVE JUROR:  MY NAME IS AARTI

7    MATHUR.  I WAS BORN IN INDIA AND I LIVE IN SAN JOSE

8    RIGHT NOW.

9              I HAVE A MASTER'S IN BUSINESS MANAGEMENT

10   AND TWO CERTIFICATE COURSES FROM THE U.C.

11   SANTA CRUZ EXTENSION IN HUMAN RESOURCES AND PROJECT

12   MANAGEMENT.

13             I HAVE WORKED WITH I.T. START-UPS IN THE

14   PAST AS A BENEFITS/PAYROLL ADMINISTRATOR.

15             I LIKE TO TRAVEL AND COOKING AND

16   GARDENING.

17             I AM MARRIED AND LIVE WITH MY HUSBAND.

18   HE IS A -- HE'S IN PRODUCT MANAGEMENT WITH CITRIX

19   SYSTEMS.

20             WE HAVE NO CHILDREN.

21             AND I HAVE NOT SERVED ON A JURY BEFORE.

22   THIS IS THE FIRST TIME.

23             THE COURT:  THANK YOU.

24             PROSPECTIVE JUROR:  MY NAME IS MANUEL

25   ILAGAN AND I WAS BORN IN THE PHILIPPINES.  I'M A

```
 1    RESIDENT OF SAN JOSE, CURRENTLY.

 2              I HAVE A BACHELOR'S DEGREE IN MECHANICAL

 3    ENGINEERING.  AND I'VE WORKED FOR WESTERN

 4    ELECTRONIC AS A SYSTEMS ENGINEER, AND ALSO AN

 5    APPLICATIONS ENGINEER FOR STANFORD TELECOM.  I WAS

 6    IN SALES AND MARKETING FOR INTEL AND I'M CURRENTLY

 7    WORKING FOR SYMTECH.

 8              MY FAVORITE HOBBY IS READING.

 9              I'M CURRENTLY MARRIED AND MY WIFE WORKS

10    FOR -- AS A TEMP FOR ACCU -- ACCU TEMPS.

11              AND SHE'S WORKING FOR VOCERA

12    COMMUNICATIONS RIGHT NOW AS A TEMPORARY WORKER.

13              SHE PREVIOUSLY WORKED FOR THE CITY OF

14    SAN JOSE AND FOR VTA.

15              WE HAVE TWO CHILDREN.  THE GIRL IS 20

16    YEARS OLD, SHE'S STUDYING AT SANTA CLARA U; AND MY

17    SON IS 26 AND HE'S A SWIMMING INSTRUCTOR AT

18    SANTA CLARA INTERNATIONAL SWIM CENTER.

19              AND I HAVE NOT -- I HAVE NO EXPERIENCE IN

20    JURY DUTY.

21              THE COURT:  ALL RIGHT.  THANK YOU.

22              MR. DUNN?

23              PROSPECTIVE JUROR:  MY NAME IS DAVID

24    DUNN.  I WAS BORN IN SAN JOSE.  I CURRENTLY LIVE IN

25    MORGAN HILL.
```

```
 1              I HAVE A BACHELOR'S OF ARTS IN BUSINESS.
 2   I CURRENTLY WORK AS A STORE OPERATIONS MANAGER FOR
 3   A CYCLING RETAIL SHOP.
 4              FAVORITE HOBBY IS PRETTY MUCH RELATED TO
 5   MY JOB, CYCLING, AS WELL AS SWIMMING AND OTHER
 6   OUTDOOR ACTIVITIES.
 7              I'M NOT CURRENTLY MARRIED, NOR DO I HAVE
 8   ANY CHILDREN, NOR HAVE I SERVED AS A JUROR.
 9              THE COURT:  OKAY.  THANK YOU.
10              MS. HOLLOWAY?
11              PROSPECTIVE JUROR:  DENISE HOLLOWAY, BORN
12   IN SAN FRANCISCO, LIVE IN CUPERTINO.
13              SOME COMMUNITY COLLEGE, BUT PURSUING MY
14   B.A. DEGREE AT GOLDEN GATE UNIVERSITY.
15              PAST EMPLOYERS HAVE BEEN MBI, THERMO
16   FISHER, AFFYMETRIX, INTEL, AND SODEXO.
17              FAVORITE HOBBY, INDOOR SPINNING AND
18   WEIGHT LIFTING.
19              MY DOMESTIC PARTNER, WHO STILL PUTS UP
20   WITH ME, WORKS AT INTEL.  SHE IS THE EXECUTIVE
21   ADMIN PARTNER TO THE V-P OF MARKETING.
22              AND WE HAVE TWO SONS, AGE 25 WHO WORKS AT
23   COSTCO, AND 22 WHO WORKS AT WELLS FARGO BANK AND
24   ATTENDS SAN FRANCISCO STATE.
25              THE COURT:  ANY JURY SERVICE PREVIOUSLY?
```

```
 1                PROSPECTIVE JUROR:  NO, NO JURY SERVICE.

 2                THE COURT:  ALL RIGHT.  THANK YOU.

 3                MR. KRETZMANN.

 4                PROSPECTIVE JUROR:  MY NAME IS DAVID

 5      KRETZMANN.  I WAS BORN IN ROCHESTER, MINNESOTA.  I

 6      CURRENTLY LIVE IN ROYAL OAKS IN NORTHERN MONTEREY

 7      COUNTY.

 8                I HAVE A MASTER'S IN COMPUTER SYSTEMS

 9      MANAGEMENT.  I SERVED FOR 28 YEARS IN THE U.S. NAVY

10      IN THE FIELD OF CRYPTOLOGY.  I RETIRED AS A

11      COMMANDER IN 2000 AND THEN WORKED FOR A FEW YEARS

12      AT THE NAVAL POST-GRADUATE SCHOOL.  MY ACTUAL

13      EMPLOYER DURING THAT TIME WAS AEROSPACE

14      CORPORATION.

15                HOBBIES OR RECREATION, I ENJOY CAMPING

16      AND TENNIS.

17                I AM MARRIED.  MY WIFE IS RETIRED FROM

18      THE DEPARTMENT OF SERVICE, CIVIL SERVICE.

19                WE HAVE FOUR CHILDREN, A DAUGHTER AGE 43,

20      COORDINATE SPECIAL EVENTS AT THE MONTEREY BAY

21      AQUARIUM; DAUGHTER AGE 41 IS A PHYSICAL THERAPIST;

22      SON AGE 40 IS A REGISTERED NURSE; AND SON AGE 39 IS

23      A RACE CAR DRIVER, STUNT CAR DRIVER, AND TELEVISION

24      HOST.

25                I'VE NEVER SERVED ON A JURY BEFORE.
```

```
1              THE COURT:  ALL RIGHT.  THANK YOU.

2              LET'S GO TO MR. FLADELAND.

3              PROSPECTIVE JUROR:  MAY NAME IS MARK

4     FLADELAND.  BORN IN BURBANK, CALIFORNIA.  CURRENTLY

5     LIVE IN SAN JOSE.

6              I HAVE A MASTER'S DEGREE IN SOCIAL WORK

7     FROM SAN JOSE CITY UNIVERSITY.  I CURRENTLY WORK

8     FOR THE COUNTY OF SANTA CLARA IN CHILD PROTECTIVE

9     SERVICES.

10             I SING AND PLAY GUITAR IN TWO BANDS.

11             I AM MARRIED.  NO CHILDREN.  SHE WORKS AS

12    A HOSPICE SOCIAL WORKER FOR PATHWAYS.

13             AND I'VE BEEN CALLED FOR JURY DUTY

14    SEVERAL TIMES, BUT I'VE YET TO SERVE.

15             THE COURT:  ALL RIGHT.  THANK YOU.

16             MR. SINA?

17             PROSPECTIVE JUROR:  MY NAME IS AMIR SAYAH

18    SINA.  I WAS BORN IN IRAN AND I LIVE IN SAN JOSE.

19             I HAVE AN ASSOCIATE DEGREE IN GENERAL

20    STUDIES, PHYSICAL SCIENCES.  AND WHEN I GRADUATED A

21    COUPLE OF YEARS AGO, I COULDN'T FIND WORK, SO I'M

22    DELIVERING PIZZA.

23             AND MY FAVORITE HOBBY IS GERMAN CARS AND

24    LIBERTARIAN POLITICS.

25             AND I'M NOT MARRIED.  I'M SINGLE.  NO
```

1    KIDS.

2              AND I WAS SUMMONED TO JURY SERVICE LAST

3    YEAR AND I WAS DISMISSED FIRST PERSON.  SO THEY

4    DIDN'T NEED ME FOR SOME REASON.

5              THE COURT:  ALL RIGHT.  THANK YOU.

6              CAN WE PLEASE GO TO MS. DOMINGO?

7              PROSPECTIVE JUROR:  MY NAME IS JENNIFER

8    DOMINGO.  I WAS BORN IN MOUNTAIN VIEW.  I LIVE IN

9    SAN JOSE.

10             I HAVE A BACHELOR'S IN MICROBIOLOGY.  I

11   CURRENTLY WORK AS A DOCUMENT CONTROL SPECIALIST AT

12   AFFYMETRIX.  MY PREVIOUS EMPLOYERS INCLUDE ALTA

13   CORPORATION, HOME TECH LABORATORIES, AND AMERICAN

14   BIO SCIENCES.

15             I LIKE TO READ.

16             I AM MARRIED.  MY SPOUSE WORKS FOR AT&T,

17   AND PRIOR TO THAT, HE WAS IN THE UNITED STATES

18   MARINE CORPS.

19             I HAVE TWO CHILDREN, BOTH DAUGHTERS.  THE

20   OLDER ONE IS NINE, THE YOUNGER ONE IS TWO.

21             AND I HAVE SERVED ON A CRIMINAL JURY IN

22   2000 AND A VERDICT WAS REACHED.

23             THE COURT:  FOR YOUR DOCUMENT CONTROL

24   SPECIALIST WORK, DO YOU DEAL WITH LITIGATION?

25             PROSPECTIVE JUROR:  NO.

```
 1                    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
 2                    LET'S GO TO MR. THORPE, PLEASE.
 3                    PROSPECTIVE JUROR:  MY NAME IS HARVEY
 4          THORPE.  I WAS BORN IN WATSONVILLE, CALIFORNIA, AND
 5          I STILL RESIDE THERE.
 6                    I HAVE A HIGH SCHOOL EDUCATION.  I WORK
 7          IN CONSTRUCTION, CARPENTER, ALL MY LIFE.  I WAS A
 8          SUPERINTENDENT IN MY LAST POSITION.
 9                    MY FAVORITE HOBBY -- OH, I WORKED FOR A
10          COUPLE OF BIG CONTRACTORS IN SANTA CRUZ COUNTY.
11                    MY FAVORITE HOBBY IS GOLF.
12                    I AM MARRIED.  AND SHE STAYED HOME AND
13          TOOK CARE OF THE KIDS AND THE HOME WHILE I WORKED.
14          AND I DO HAVE TWO CHILDREN.  I HAVE A SON, 43,
15          WHO'S A GENERAL CONTRACTOR; AND A DAUGHTER THAT'S
16          41 WHO WORKS FOR AN ELECTRICAL CONTRACTOR.
17                    AND I DID SERVE ON A JURY APPROXIMATELY
18          20 YEARS AGO.  IT WAS A CRIMINAL CASE IN SANTA CRUZ
19          COUNTY, AND WE DID REACH A VERDICT.
20                    THE COURT:  ALL RIGHT.  THANK YOU.
21                    LET'S GO TO MR. CHIU?
22                    PROSPECTIVE JUROR:  YEAH.  MY NAME IS
23          KWOKFU CHEW.  I WAS BORN IN HONG KONG AND NOW I
24          LIVE IN SAN JOSE.  I HAVE MASTER'S IN EE.
25                    THE COURT:  ELECTRICAL ENGINEERING.
```

1             PROSPECTIVE JUROR:  I WORK FOR

2    SEMICONDUCTOR COMPANIES, FAIRCHILD SEMICONDUCTORS

3    AND THEN CYPEX AND FOR THE LAST 20 YEARS, ALMOST 30

4    YEARS IS NATIONAL SEMICONDUCTORS, WHICH WAS

5    ACQUIRED LAST YEAR BY TEXAS INSTRUMENTS.  AND I WAS

6    RESPONSIBLE FOR THE ANALOG CIRCUIT DESIGN AS A

7    PRINCIPAL DESIGNER.

8             I LIKE TO TAKE PHOTOS, PHOTO TAKING.

9             AND I'M MARRIED.  MY WIFE IS WORKING FOR

10   CITY LIBRARY.

11            WE HAVE TWO CHILDREN.  MY SON IS 24 YEARS

12   OLD AND WORKING FOR SOFTWARE COMPANY; AND MY

13   DAUGHTER IS 22, JUST GRADUATED AND LOOKING FOR A

14   JOB.

15            I HAD JURY DUTY ABOUT 30 YEARS AGO IN

16   HONG KONG, WHICH WAS A CRIMINAL CASE.

17            THE COURT:  OKAY.  THANK YOU.

18            WHICH COMPANY IS YOUR SON DOING SOFTWARE

19   DEVELOPMENT FOR?

20            PROSPECTIVE JUROR:  ALENCIA.  ALENCIA.

21            THE COURT:  OKAY.  THANK YOU.

22            LET'S GO TO MS. HUMPHRY.

23            PROSPECTIVE JUROR:  I'M SHERRY HUMPHRY.

24   I WAS BORN -- SHERRY HUMPHRY.  BORN IN SOUTHERN

25   CALIFORNIA.  LIVE IN SUNNYVALE.

```
 1              AND SOME COLLEGE CLASSES.  AND I WORKED

 2     AS CUSTOMER SERVICE.  I'M AN ASSISTANT AT INTERSIL,

 3     AMERICAN WAYS, MERVYNS, ROBIN PRODUCTS, SEE'S.

 4              AND I'M NOT MARRIED.  I DON'T HAVE ANY

 5     CHILDREN.

 6              I LIKE TO HIKE.

 7              AND I'VE NEVER BEEN ON JURY DUTY BEFORE.

 8              THE COURT:  OKAY.  THANK YOU.

 9              MS. JARO?

10              PROSPECTIVE JUROR:  MY NAME IS ANASTACIA

11     JARO.  I WAS BORN IN THE PHILIPPINES.  I LIVE IN

12     MILPITAS.

13              I HAVE A DEGREE IN CHEMISTRY.  RIGHT NOW

14     I'M A TECHNICIAN AT THERMO FISHER SCIENTIFIC.  AND

15     MY PREVIOUS EMPLOYERS ARE SELECTRON CORPORATION,

16     V.A. SYSTEMS.

17              MY FAVORITE HOBBIES ARE COOKING, PLAYING

18     COMPUTER GAMES, WATCHING TV'S.

19              I'M A SINGLE MOM WITH ONE CHILD WHO IS 19

20     YEARS OLD AND CURRENTLY A STUDENT AT SAN JOSE STATE

21     UNIVERSITY.

22              THE COURT:  HAVE YOU PREVIOUSLY SERVED ON

23     A JURY?

24              PROSPECTIVE JUROR:  NO.

25              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
```

```
1              ALL RIGHT.  I'M GOING TO GIVE THE
2    ATTORNEYS NOW TIME TO ASK YOU QUESTIONS.  THEY HAVE
3    20 MINUTES, BUT IT'S UP TO THEM IF THEY WANT TO USE
4    THEIR FULL 20 MINUTES.
5              OKAY.  SO THE TIME IS NOW 2:41.  GO
6    AHEAD.
7              MR. LEE:  MAY I PROCEED, YOUR HONOR?
8              THE COURT:  PLEASE.
9              MR. LEE:  LADIES AND GENTLEMEN, AS I
10   MENTIONED EARLIER THIS MORNING, MY NAME IS BILL LEE
11   AND I'M ONE OF THE LAWYERS REPRESENTING APPLE.
12             I'M JUST GOING TO ASK A FEW MORE
13   QUESTIONS.  HER HONOR HAS ASKED YOU A TON OF
14   QUESTIONS ALREADY AND WE'VE GOT A LOT OF
15   INFORMATION.
16             I'M NOT GOING TO ASK QUESTIONS OF ALL OF
17   YOU.  THERE'S JUST A FEW THINGS I WOULD LIKE TO
18   FOLLOW UP ON.
19             AS HER HONOR SAID, WE DON'T MEAN TO PRY
20   PERSONALLY.  IF THERE IS SOMETHING THAT WE ASK THAT
21   YOU WOULD LIKE TO DISCUSS IN PRIVATE, IF YOU WOULD
22   LET HER HONOR KNOW, WE'LL BE HAPPY TO DO IT.
23             AND I WILL BE BRIEF AND LESS THAN MY 20
24   MINUTES.
25             MY NOTES MAY BE WRONG, BUT I TAKE IT
```

```
1    MR. HOGAN, MR. BELLA, MR. CATHERWOOD, MR. SINA,

2    MR. THORPE, MR. CHIU HAVE ALL BEEN ON JURIES AT

3    SOME POINT IN TIME.  WAS THERE ANYBODY WHO I

4    MISSED?  YOU ALSO HAVE BEEN ON A JURY?

5            IS -- WERE ANY OF YOU THE FOREPERSON OF

6    THE JURY ON ANY OF THESE JURY DELIBERATIONS?

7            PROSPECTIVE JUROR:  NO.

8            PROSPECTIVE JUROR:  NO.

9            MR. LEE:  MR. KRETZMANN, YOU TALKED ABOUT

10   YOUR WORK WITH THE CODE OF MILITARY JUSTICE AND THE

11   JAG MANUAL.  COULD YOU JUST TELL ME A LITTLE BIT

12   ABOUT THAT?

13           PROSPECTIVE JUROR:  I WAS AN EXECUTIVE

14   OFFICER AT THE NAVAL AIR STATION AT SKAGGS ISLAND

15   ON THE NORTH SIDE OF SAN FRANCISCO AND HAD TO

16   INVESTIGATE MISCONDUCT AND THINGS LIKE THAT.

17           MR. LEE:  AND THE CODE OF MILITARY

18   JUSTICE WAS A SET OF RULES?

19           PROSPECTIVE JUROR:  IT APPLIES TO SAILERS

20   AND OTHER MILITARY RESIDENTS.  I HAD A WEEK'S

21   TRAINING AT TREASURE ISLAND IN THAT.

22           MR. LEE:  FAIR ENOUGH.

23           AND MR. CATHERWOOD, I THINK YOU WERE IN

24   THE NAVY AS WELL.

25           PROSPECTIVE JUROR:  YES.
```

214

```
1           MR. LEE:  CAN YOU TELL ME JUST A LITTLE
2    BIT ABOUT WHAT YOU DID WHILE YOU WERE IN THE NAVY?
3           PROSPECTIVE JUROR:  I WAS IN AVIONICS.  I
4    WORKED FOR VARIOUS PROGRAMS AND SPECIAL PROGRAMS AS
5    A FLIGHT CREW AND ALSO DOING DEVELOPMENT ON SOME OF
6    THE SYSTEMS.
7           MR. LEE:  AND HOW LONG HAVE YOU BEEN WITH
8    AT&T?
9           PROSPECTIVE JUROR:  15 YEARS NOW.  WELL,
10   SBC/AT&T.
11          MR. LEE:  AND PRETTY MUCH DOING THE SAME
12   THING?
13          PROSPECTIVE JUROR:  WELL, PARTS AND
14   MANAGEMENT, YES.  IT'S VERY DIFFERENT.
15          MR. LEE:  OKAY.  MS. HOLLOWAY, I THINK,
16   IT SOUNDED LIKE YOU WERE AT INTEL FOR A WHILE.
17   COULD YOU JUST GIVE ME AN IDEA OF HOW LONG YOU WERE
18   THERE AND WHAT YOU DID?
19          PROSPECTIVE JUROR:  18 YEARS.  I STARTED
20   OFF SHIPPING AND RECEIVING AND QUICKLY BECAME THE
21   MANAGER AND THEN I WENT INTO COMMODITY BUYING.
22          MR. LEE:  AS YOU PROGRESSED THROUGH THE
23   18 YEARS?
24          PROSPECTIVE JUROR:  UM-HUM.
25          MR. LEE:  AND YOUR PARTNER IS STILL AT
```

1    INTEL TODAY?

2                    PROSPECTIVE JUROR:  YES.

3                    MR. LEE:  MS. LEROSE, I THINK YOU TOLD US

4    THAT YOU HAD RUN A NATIONALLY ACCREDITED DAY CARE

5    CENTER FOR A NUMBER OF YEARS.

6                    THE CLERK:  EXCUSE ME, MR. LEE.  CAN WE

7    PASS THE MICROPHONE BACK?

8                    MR. LEE:  I'M SORRY.  I'LL TRY TO DO IT

9    IN A WAY THAT MAKES THE MICROPHONE A LITTLE CLOSER.

10                   PROSPECTIVE JUROR:  YES.

11                   MR. LEE:  I'LL START AGAIN.

12                   MS. LEROSE, I THINK YOU MENTIONED THAT

13   YOU HAD A NATIONALLY ACCREDITED DAY CARE CENTER.

14   WHAT WAS THE PROCESS OF THE ACCREDITATION?

15                   PROSPECTIVE JUROR:  OH.  IT WAS -- IT WAS

16   HEART RENDERING AND GRUELING.  THERE ARE A SET OF

17   STANDARDS THAT ARE PRODUCED NATIONALLY FOR RUNNING

18   A PRESCHOOL WITH SEVEN DIFFERENT AREAS THAT ARE

19   SCRUTINIZED AND BROUGHT IN BY NATIONALLY ACCREDITED

20   PEOPLE IN THAT FIELD TO COME IN, ONE, TO SET UP THE

21   PROGRAM FOR YOU; AND THEN TO PROCEED WITH YOUR

22   CLIENTELE AND THE PRESENT PRESCHOOL CHILDREN IN ALL

23   THOSE AREAS EXPLAINING AND DOCUMENTING AND

24   EXPLORING, YOU KNOW, WHAT I NEEDED TO DO TO ATTAIN

25   A CERTAIN LEVEL OF THAT ACCREDITATION.

```
 1                 MR. LEE:  AND YOU HAD TO SATISFY EACH OF

 2      THOSE LEVELS?

 3                 PROSPECTIVE JUROR:  OH, YEAH.

 4                 MR. LEE:  THANK YOU.

 5                 PROSPECTIVE JUROR:  IN FACT, THAT'S A

 6      GOOD THING.

 7                 MR. LEE:  THANKS.

 8                 MR. TEPMAN, LET ME ASK JUST A COUPLE

 9      QUESTIONS.  I THINK YOU SAID YOU HAD 150 PATENTS.

10                 PROSPECTIVE JUROR:  125.

11                 MR. LEE:  125.  I JUST GAVE YOU 25 MORE.

12                 WERE THOSE INTEL AND APPLIED MATERIALS?

13                 PROSPECTIVE JUROR:  NO.

14                 MR. LEE:  ALL APPLIED MATERIAL?

15                 PROSPECTIVE JUROR:  ALL APPLIED

16      MATERIALS, YES.

17                 MR. LEE:  AND HAS ANYONE EVER BROUGHT A

18      LAWSUIT BASED UPON ONE OF YOUR PATENTS?

19                 PROSPECTIVE JUROR:  THERE WAS A LAWSUIT.

20      IT WAS A WEIRD THING.  SO ACTUALLY IT WAS $535

21      MILLION LAWSUIT WHICH END UP IN $7 MILLION.

22                 MR. LEE:  AND IT WAS ON ONE OF YOUR

23      PATENTS?

24                 PROSPECTIVE JUROR:  NO.  IT WAS --

25      THEY -- CAN I MENTION NAME OF COMPANIES?
```

```
 1                MR. LEE:  I THINK -- WITH YOUR HONOR'S
 2      PERMISSION, YES.
 3                PROSPECTIVE JUROR:  CAN I -- HE ASKED ME
 4      ABOUT THE PATENTS, THAT WAS SUING THE PATENTS, SO
 5      I'M ASKING, CAN I SAY WHAT COMPANY IT WAS?
 6                THE COURT:  I DON'T KNOW WHAT YOUR -- IF
 7      THERE WAS A SETTLEMENT WHAT THE TERMS OF THAT
 8      SETTLEMENT ARE AS TO CONFIDENTIALITY, SO I REALLY
 9      CAN'T ADVISE YOU PROPERLY ON THAT.
10                MR. LEE:  LET'S --
11                PROSPECTIVE JUROR:  ANYWAY, SO IT WAS --
12      IT'S LIKE THEY -- THE THING WAS THAT THEY HAD THE
13      PATENT THAT THEY CANNOT DO SOMETHING UNLESS YOU
14      MAKE FLAT EROSION, AND WE MADE NO FLAT EROSION
15      BECAUSE I THINK THAT WON'T DO THE JOB.
16                I HAVE HUNDREDS OF -- WE HAD HUNDRED
17      PERCENT MARKET HERE TODAY, BY THE WAY, ON THAT, AND
18      THEY HAVE ZERO.
19                BUT THEN THE PATENT ONLY FLAT EROSION
20      WILL WORK, AND I THINK THAT -- I THOUGHT THAT FLAT
21      EROSION WON'T WORK, NEED TO BE CONICAL EROSION, NOT
22      FLAT.
23                AND THEN MY DESIGN WAS -- MY PATENT WAS
24      CONICAL EROSION.
25                AND -- BUT THEY GOT A PATENT THAT IF YOU
```

```
 1     CAN ACHIEVE THIS, YOU MUST HAVE FLAT EROSION, WHICH
 2     IT'S A WEIRD PATENT.
 3               AND EVENTUALLY THEY -- AS I SAID, THE
 4     VERDICT -- IT WAS OUT OF COURT, TOOK LAWYER FEES OR
 5     SOMETHING, THEY STILL GOT $7 MILLION OUT OF $535
 6     MILLION LAWSUIT.
 7               MR. LEE:  FAIR ENOUGH.  THAT'S PLENTY OF
 8     INFORMATION WITHOUT REVEALING THE PARTIES.
 9               I THINK YOU SAID YOUR SON IS -- ONE OF
10     YOUR THREE CHILDREN IS A SON WHO'S AN ECONOMIST AT
11     GOOGLE.
12               PROSPECTIVE JUROR:  YES.
13               MR. LEE:  AND HOW LONG HAS HE BEEN THERE
14     AND WHAT DOES HE DO?
15               PROSPECTIVE JUROR:  HE'S BEEN THERE ONE
16     HALF YEAR AND ACTUALLY DOING CUSTOMER SATISFACTION.
17               MR. LEE:  LET ME ASK ALL OF YOU IF YOU
18     RECOGNIZE ANY OF THESE NAMES:  BJORN BRINGER;
19     CARY CLARK, DIANNE HACKBORN; JIM MILLER;
20     KEN WAKAJA.
21               WHICH ONE OF THEM DO YOU KNOW?
22               PROSPECTIVE JUROR:  SO I GUESS
23     DIANNE JACKBORN.
24               MR. LEE:  AND HOW DO YOU KNOW HER?
25               PROSPECTIVE JUROR:  WELL, I BELIEVE SHE'S
```

```
1     AT GOOGLE AND SHE'S WORKING ON THE ANDROID SYSTEM.

2     SO SOMETIMES I WOULD SEE SOME E-MAILS COMING

3     THROUGH HER REGARDING SOME ANDROID STUFF.

4               MR. LEE:  AND HAVE YOU WORKED WITH HER?

5               PROSPECTIVE JUROR:  NO, I HAVE NOT.  I

6     HAVE JUST SEEN HER NAME.

7               MR. LEE:  AND YOU'VE SEEN HER NAME ON

8     E-MAILS THAT COME BY YOU AT GOOGLE?

9               PROSPECTIVE JUROR:  YES.

10              MR. LEE:  MR. OKAMOTO, LET ME ASK YOU A

11    COUPLE QUESTIONS.  CAN YOU JUST TELL ME -- LET ME

12    GET THE MICROPHONE TO YOU FIRST.

13              ALL SET?

14              PROSPECTIVE JUROR:  YES.

15              MR. LEE:  COULD YOU JUST TELL ME A LITTLE

16    BIT MORE ABOUT WHAT YOU HAVE DONE AND WHAT YOUR

17    PATENT APPLICATIONS ARE ON THE OPERATING SYSTEM

18    THAT YOU MENTIONED EARLIER?

19              PROSPECTIVE JUROR:  OKAY.  SO WHEN I

20    STARTED AT GOOGLE, I WORKED ON GOOGLE VIDEO, AND IT

21    WAS IT WAS PRE-YOUTUBE KIND OF PURCHASE, SO WE DID

22    SOME U/I LAYOUTS THAT WERE -- U/I LAYOUTS AND ALSO

23    VIDEO PLAYER FUNCTIONALITY THAT WE PATENTED.

24              SO THAT'S THE EXTENT OF THOSE PATENTS FOR

25    AROUND THE VIDEO PLAYER AND WITH THE U/I LAYOUT.
```

220

```
1              I'VE SINCE WORKED ON GOOGLE AD WORDS,
2     GOOGLE BUILDING, GOOGLE PLUS.  I WORKED ON GOOGLE
3     MOBILE MAPS.
4              BUT THOSE ARE THE MAIN PROJECTS THAT I'VE
5     WORKED ON.  THERE'S, OF COURSE, SOME SMALLER
6     PROJECTS THAT KIND OF COME THROUGH WHEN YOU WORK ON
7     SOMETHING AND DELIVER A U/I SPEC FOR THAT, BUT THAT
8     WAS PRETTY INSIGNIFICANT COMPARED TO THE BIGGER
9     PROJECT.
10             AND WITH REGARD TO THE PATENTS, I CAN'T
11    REMEMBER THE DETAILS OF ALL OF THEM.  SOME OF THEM
12    ARE QUITE LONG AGO.
13             BUT THE ONE THAT ACTUALLY WAS PATENTED
14    WAS THE VIDEO U/I TOOL WHICH I MENTIONED.
15             THE OTHER ONES WERE CONDENSING SPACE.
16    THE MOST RECENT ONE HAS TO DO WITH SOME OF THE
17    TECHNOLOGY IN GOOGLE NOW.  I DON'T KNOW IF YOU'VE
18    SEEN THAT, IT'S THE JELLY BEAN.  BUT I GOT MY NAME
19    ON A PATENT WITH A TEAM.
20             MR. LEE:  AND HAS ANYONE EVER BROUGHT A
21    LAWSUIT BASED UPON ANY OF YOUR PATENTS?
22             PROSPECTIVE JUROR:  NOT TO MY KNOWLEDGE.
23             MR. LEE:  JUST A FEW MORE QUESTIONS.
24             MR. ROGERS, I TRUST YOU HAVE A FAVORITE
25    VIDEO GAME.  IT SOUNDED LIKE YOU HAVE A FAVORITE
```

```
1     VIDEO GAME.  CAN YOU TELL ME WHAT IT IS?
2               PROSPECTIVE JUROR:  MASS EFFECT.
3               MR. LEE:  AND LET ME ASK ALL OF YOU THIS
4     QUESTION.  HAVE ANY OF YOU HEARD OF SOMETHING
5     CALLED OPEN SOFTWARE, OPEN SOURCE SOFTWARE, OR OPEN
6     SOURCE SOFTWARE CODE?
7               AND FOR THOSE OF YOU WHO HAVE HEARD ABOUT
8     IT, LET ME ASK YOU FIRST, DO YOU HAVE ANY
9     INFORMATION ABOUT IT BEYOND JUST YOU'VE HEARD OF
10    THE WORD BEFORE?  IF YOU KNOW SOMETHING ABOUT IT
11    BEYOND THAT, WOULD YOU RAISE YOUR HAND?
12              OKAY.  SO IF I ASKED -- OH, MR. ROGERS, I
13    THINK THERE'S FIVE.
14              SO WHAT DO YOU KNOW ABOUT IT?
15              PROSPECTIVE JUROR:  FROM WHAT I
16    UNDERSTAND, IT'S -- WHEN SOMEBODY DEVELOPS A
17    PROGRAM, THEY LEAVE THE, THE ACTUAL CODE THAT MAKES
18    THE PROGRAM WORK OPEN FOR OTHER PEOPLE TO SEE AND
19    MESS WITH IF THEY FEEL LIKE IT SO THAT THEY CAN DO
20    WHAT THEY WANT WITH IT AND MAKE IT MORE USEFUL FOR
21    THEM OR ADD TO IT OR IMPROVE IT IN SOME WAYS.
22              MR. LEE:  OKAY.  AND HAVE YOU EVER WORKED
23    WITH IT YOURSELF?
24              PROSPECTIVE JUROR:  I'VE NEVER MESSED
25    WITH PROGRAMMING AND STUFF.
```

```
 1              MR. LEE:  OKAY.  I THINK MR. DUNN, YOU
 2    WERE --
 3              PROSPECTIVE JUROR:  MY EXPERIENCE IS VERY
 4    SIMILAR.  I KNOW THAT IT'S A FORM OF A DESIGNER
 5    PROGRAMMING THAT YOU CAN THEN ADD ON TO BY LEAVING
 6    IT, AS IT SOUNDS, OPEN FOR OTHER PEOPLE TO
 7    MANIPULATE, AS LONG AS THEY GIVE CREDIT TO THE
 8    PREVIOUS PEOPLE.
 9              MR. LEE:  AND HAVE YOU HAD A CHANCE TO DO
10    IT YOURSELF?
11              PROSPECTIVE JUROR:  NO.
12              THE COURT:  ALL RIGHT.  WAS MR. --
13              PROSPECTIVE JUROR:  I DON'T HAVE ANYTHING
14    TO ADD TO WHAT HAS ALREADY BEEN SAID, SO --
15              MR. LEE:  OKAY.
16              PROSPECTIVE JUROR:  JUST -- SAME FOR ME
17    ESSENTIALLY.
18              MR. LEE:  THANK YOU.  I THINK WE NEED TO
19    SEND THE MICROPHONE TO THE BACK ROW.  I THINK I SAW
20    A COUPLE HANDS BACK THERE.
21              MR. HOGAN?
22              PROSPECTIVE JUROR:  I TOO DON'T HAVE
23    ANYTHING TO ADD.  I MEAN, I KNOW WHAT IT IS AND I
24    KNOW HOW IT'S USED, BUT ANYTHING I WOULD SAY HAS
25    ALREADY BEEN SAID.
```

```
1              MR. LEE:  OKAY.  MR. BELLA, THE SAME?
2              PROSPECTIVE JUROR:  THE SAME.
3              MR. LEE:  AND DID ANYBODY ELSE HAVE THEIR
4     HAND UP?  I'M SORRY.  MR. BELLA, THE SAME?
5              PROSPECTIVE JUROR:  THAT WAS IT, JUST
6     REAFFIRMING WHAT WAS SAID ALREADY.
7              THE COURT:  AND MR. OKAMOTO HAD HIS HAND
8     UP?
9              PROSPECTIVE JUROR:  SO BASICALLY THE SAME
10    THING.  I BASICALLY KNOW THE CONCEPT, BUT I HAVE
11    NOT HAD ANY HANDS ON ANY OF THAT STUFF.
12             MR. LEE:  ALL RIGHT.  THANK YOU ALL VERY
13    MUCH.
14             THAT'S ALL THE QUESTIONS I HAVE, YOUR
15    HONOR.
16             THE COURT:  OKAY.  THANK YOU.
17             MR. PRICE:  YOUR HONOR, WOULD IT BE
18    POSSIBLE TO HAVE WHAT YOU REFERRED TO AS BIO BREAK?
19             THE COURT:  YES.  DO YOU WANT TO DO THAT
20    NOW?  I WAS HOPING WE COULD DO YOURS AND THEN DO
21    THE BREAK.
22             MR. PRICE:  I MIGHT BE HOPPING A LITTLE
23    BIT.
24             THE COURT:  ALL RIGHT.  LET'S THEN JUST
25    TAKE A 15-MINUTE BREAK RIGHT NOW.  ALL RIGHT.
```

```
 1              AGAIN, PLEASE DON'T DISCUSS THE CASE WITH

 2     ANYONE.  PLEASE DON'T DO ANY OF YOUR OWN RESEARCH.

 3     THANK YOU FOR YOUR SERVICE.

 4              (WHEREUPON, A RECESS WAS TAKEN.)

 5              THE COURT:  ALL RIGHT.  WELCOME BACK.

 6              ALL RIGHT.  MR. PRICE, PLEASE GO AHEAD.

 7              MR. PRICE:  GOOD AFTERNOON, LADIES AND

 8     GENTLEMEN.  MY NAME IS BILL PRICE AND I REPRESENT

 9     SAMSUNG AND I WANT TO FOLLOW-UP WITH A FEW

10     QUESTIONS.

11              OF COURSE BOTH PARTIES WANT TO MAKE SURE

12     THAT THEY GET AS FAIR OF A TRIAL AS POSSIBLE, SO

13     THERE ARE A FEW THINGS THAT I WANT TO FOLLOW UP ON

14     AND A FEW THINGS THAT I'M CURIOUS ABOUT.

15              OF COURSE I WANT TO THANK YOUR HONOR FOR

16     GIVING US THAT RIGHT.

17              SO, YOU KNOW, THERE WERE A LOT OF HANDS

18     THAT WENT UP WHEN HER HONOR ASKED HAS ANYONE HERE

19     READ ANYTHING ABOUT THIS CASE, AND I KNOW YOU ALL

20     SAID THAT -- NOT YOU ALL, BUT I THINK AT THE TIME

21     ABOUT 18 PEOPLE RAISED THEIR HANDS.  I CAN'T

22     REMEMBER WHO'S LEFT WHO RAISED THEIR HANDS.

23              BUT YOU ALL SAID -- OR NO ONE SAID THAT,

24     YOU KNOW, THEY COULDN'T BE UNFAIR.

25              SO MY QUESTION, I'VE GOT ONE THAT'S A
```

```
1    LITTLE DIFFERENT, AND THAT IS, YOU KNOW, HAVE --
2    FOR THOSE OF YOU WHO HAVE READ ABOUT THE CASE, I
3    KNOW YOU'VE SAID, THOSE WHO HAVE READ ABOUT THE
4    CASE, THAT YOU COULD BE FAIR AND THAT YOU'RE GOING
5    TO BE OPEN MINDED.
6             MY QUESTION IS A BIT DIFFERENT.  OF THOSE
7    WHO READ ABOUT THE CASE, DID ANY OF YOU THINK,
8    AFTER HAVING READ WHATEVER YOU READ, YOU KNOW, "I
9    CAN BE FAIR, BUT RIGHT NOW I'VE GOT TO SAY THAT
10   SAMSUNG HAS GOT A LITTLE BIT OF AN EDGE, OR APPLE
11   IS A LITTLE BIT BEHIND?"
12            THOSE ARE THE SAME THINGS I GUESS.  OR
13   THAT SAMSUNG IS A LITTLE BIT BEHIND.
14            (LAUGHTER.)
15            MR. PRICE:  SO IS THERE ANYBODY WHO,
16   HAVING READ ALL THIS, THINKS, "OKAY, I DO HAVE AN
17   IMPRESSION.  I'M GOING TO TRY TO KEEP IT OUT OF MY
18   MIND, BUT RIGHT NOW I THINK ONE PARTY OR THE OTHER
19   IS A LITTLE BIT AHEAD" BASED ON WHAT YOU READ AND
20   THE ARTICLES WRITTEN BY SOME OF THE FOLKS OUT THERE
21   IN THE AUDIENCE.
22            DOES ANYONE HAVE THAT VIEW?  YOU MIGHT --
23   ANYONE HAVE ANY VIEW AT ALL ABOUT REALLY, YOU KNOW,
24   ANY SPECIFIC PIECES OF EVIDENCE IN THIS CASE, OR
25   ANYTHING THAT YOU'VE READ?  NO?
```

```
 1            LET ME ASK, I THINK SPECIFICALLY, THERE
 2     ARE A FEW PEOPLE I KNOW WHO RAISED THEIR HANDS.
 3            LET'S SEE.  MR. KRETZMANN, I THINK YOU
 4     RAISED YOUR HAND ON THAT, RIGHT?
 5            PROSPECTIVE JUROR:  I RAISED MY HAND -- I
 6     NEED THE MICROPHONE.
 7            I RAISED MY HAND TO INDICATE THAT I HAD
 8     SEEN SOMETHING ABOUT THIS IN THE NEWSPAPER.  IN
 9     FACT, WHEN I WALKED INTO THE COURTHOUSE, THE
10     RECORDER, WHICH IS, I GUESS, SOME SORT OF LEGAL
11     NEWSLETTER --
12            MR. PRICE:  YEAH.
13            PROSPECTIVE JUROR:  -- THE CASE WAS ON
14     THE FRONT PAGE.  I SAW THE TITLE, BUT I
15     DELIBERATELY DID NOT READ IT.
16            MR. PRICE:  OKAY.
17            PROSPECTIVE JUROR:  I HAVEN'T READ ANY
18     ARTICLES AT ALL.
19            MR. PRICE:  LET'S SEE.  I THINK MR. --
20     I'M GOING TO ASK A COUPLE OF YOU HERE WHOSE HANDS I
21     SAW GO UP, AND THAT WOULD INCLUDE -- AND I'M SORRY,
22     I'M BAD WITH NAMES, BUT I WILL DO MY BEST --
23     MS. MATHUR.
24            LET'S MAKE THIS EASY.  WHO RAISED THEIR
25     HAND?  OKAY.  AND SO ALL OF YOU FOLKS, YOU'RE
```

```
1    ANXIOUS AND READY TO HEAR WHAT THE EVIDENCE REALLY

2    IS AND EVERYONE WILL GIVE EVERYBODY A FAIR SHAKE,

3    RIGHT?  GOOD.

4              I WANTED -- BY THE WAY, AS KIND OF A

5    PROCEDURAL MATTER, EARLIER WE ASKED YOU WHETHER YOU

6    KNEW SOME NAMES AND THERE ARE SOME ATTORNEYS HERE

7    WHO YOU'RE GOING TO HEAR SPEAK.

8              THIS MAY BE THE LAST TIME I GET TO SPEAK

9    DIRECTLY TO YOU, BUT ONE OF THE ATTORNEYS THAT YOU

10   MAY HEAR FROM AND ONE OF THE WITNESSES WHO'S

11   WORKING FOR SAMSUNG IS MR. JOHN QUINN, WHO IS THIS

12   GENTLEMEN OUT THERE, AND WE NEGLECTED TO MENTION

13   HIS NAME.

14             SO I GUESS THE QUESTION IS, HAS ANYBODY

15   EVER SEEN HIM BEFORE, HEARD ABOUT HIM, CARE ABOUT

16   HIM, GOT A SCORE AGAINST HIM?  OKAY.  GOOD.

17             AND SO LET ME ASK YOU FOLKS A FEW

18   SPECIFIC QUESTIONS.  AND I WANT TO START WITH

19   MS. HALIM.  YOU'VE BEEN IN THE INDUSTRY -- IT SEEMS

20   LIKE YOU'VE BEEN INVOLVED IN TECHNOLOGY FOR A LONG

21   TIME.

22             PROSPECTIVE JUROR:  YES.

23             MR. PRICE:  A COUPLE PATENTS, AND I HEARD

24   YOU SAY YOU HAVE A REGULAR CELL PHONE.

25             PROSPECTIVE JUROR:  YES.
```

```
 1              MR. PRICE:  AND I GUESS I'M JUST

 2    WONDERING, SOMETHING WHO'S IN THE INDUSTRY AND HAS

 3    A COUPLE PATENTS AND KIND OF TECHNOLOGY SAVVY, YOU

 4    KNOW, WHAT'S WRONG WITH A SMARTPHONE?

 5              PROSPECTIVE JUROR:  WELL, I DON'T LIKE

 6    THE, THE DATA PLAN WITH JUST THAT.

 7              MR. PRICE:  SO IT'S JUST NOT WORTH IT FOR

 8    YOU IN TERMS OF THE VALUE?

 9              PROSPECTIVE JUROR:  NO, YEAH.  BECAUSE I

10    USE PHONE TO CALL PEOPLE.

11              MR. PRICE:  UM-HUM.

12              PROSPECTIVE JUROR:  FOR THE VOICE, RIGHT?

13    FOR THE DATA, WELL, I'M ON A COMPUTER ALL THE TIME.

14    SO --

15              MR. PRICE:  OKAY.  THAT'S FAIR.

16              LET ME ASK, AND I'M JUST GOING TO -- AND

17    I APOLOGIZE, TOO, THAT I CAN'T TALK TO ALL OF YOU,

18    BUT WE DON'T HAVE ENOUGH TIME.

19              I WANT TO ASK MR. HOGAN, I'M GOING TO

20    START WITH YOU AND ASK THIS QUESTION IN GENERAL FOR

21    YOU PATENT FOLKS, THAT IS, THOSE OF YOU WHO HAVE

22    ACTUALLY CREATED TECHNOLOGY THAT HAS BEEN PATENTED.

23              MR. HOGAN, WOULD -- WERE YOU ACTIVELY

24    INVOLVED IN THE PROSECUTION OF YOUR PATENT?  THAT

25    IS, OBVIOUSLY YOU HAD AN ATTORNEY?
```

```
 1              PROSPECTIVE JUROR:  YES.

 2              MR. PRICE:  AND MY UNDERSTANDING IS YOURS

 3     WAS NOT FOR YOUR COMPANY, BUT IT WAS ACTUALLY YOU?

 4              PROSPECTIVE JUROR:  YES.

 5              MR. PRICE:  SO HOW -- HOW ACTIVE WERE YOU

 6     IN THAT PROCESS OF WORKING WITH THE PATENT OFFICE?

 7              PROSPECTIVE JUROR:  WE SPOKE ALMOST EVERY

 8     DAY UNTIL WE GOT IT PENNED AND SUBMITTED.  VERY

 9     ACTIVE.

10              MR. PRICE:  AND YOU --

11              PROSPECTIVE JUROR:  EVEN WHEN THE OFFICE

12     ACTIONS CAME BACK, I WAS ACTIVE IN -- WITH MY

13     ATTORNEY TO SETTLE THOSE.

14              MR. PRICE:  OKAY.  AND SO YOU HAVE A LOT

15     OF BACK AND FORTH?  WAS IT LIKE A SIX-YEAR PERIOD,

16     I THINK?

17              PROSPECTIVE JUROR:  FROM 2001 WHEN --

18     2002, EXCUSE ME, UNTIL 2008 WHEN IT WAS ACTUALLY

19     ISSUED.  SO YES.

20              MR. PRICE:  OKAY.  NOW, DOES THAT

21     EXPERIENCE GIVE YOU ANY BIAS FOR OR AGAINST, FOR

22     EXAMPLE, THE PATENT OFFICE?

23              PROSPECTIVE JUROR:  NO, NOT REALLY.

24     ALTHOUGH I WILL SAY I WAS GLAD TO HEAR THAT THEY

25     OPENED -- THAT THEY'RE CONTEMPLATING OPENING UP AN
```

```
 1    OFFICE HERE IN TOWN TO SPEED THE PROCESS ALONG.  IT

 2    TOOK ME SEVEN YEARS TO GET MY PATENT, AND THAT

 3    SEEMED LIKE A LONG TIME TO WAIT, YOU KNOW?

 4              MR. PRICE:  AND DID YOU GO TO D.C.?

 5              PROSPECTIVE JUROR:  NO, NO, NO.  IT WAS

 6    ALL DONE OVER THE PHONE AND THROUGH CORRESPONDENCE.

 7              BUT SEVEN YEARS SEEMED LIKE A LONG TIME,

 8    AND THE FIRST FOUR YEARS OF THAT, THERE WAS NO

 9    ACTIVITY FROM THE PATENT OFFICE WHATSOEVER.

10              MR. PRICE:  AND I WASN'T EXACTLY CLEAR

11    THEN, WHAT WAS THE TECHNOLOGY THAT YOUR PATENT WAS

12    ON?

13              PROSPECTIVE JUROR:  VIDEO COMPRESSION.

14              MR. PRICE:  THAT'S YOUR HOBBY, TOO.

15    THAT'S YOUR HOBBY ALSO I THINK YOU SAID?

16              PROSPECTIVE JUROR:  YES.

17              MR. PRICE:  ANYTHING ELSE THAT YOU HAVE

18    AS A HOBBY?  NO?  OKAY.

19              LET'S ASK MR. BELLA, ONE OF THE THINGS

20    THAT YOU SAID, I THINK, WAS THAT THE PIONEERS ARE

21    GONE.  DID YOU SAY SOMETHING ABOUT PIONEERS IN YOUR

22    ANSWER OR WAS THAT SOMEONE ELSE?

23              PROSPECTIVE JUROR:  REGARDING WHAT?

24              MR. PRICE:  I JUST HEARD -- MAYBE WHAT

25    YOU DID -- IT WAS THE PERSON --
```

```
 1              PROSPECTIVE JUROR:  THAT WAS THE
 2    INDIVIDUAL WHO SAT IN THIS SEAT RIGHT THERE.
 3              MR. PRICE:  AH, THANK YOU.
 4              YOU SAID, MR. BELLA, THAT YOU'RE PART OF
 5    A MAC FAMILY.  IS THAT RIGHT?
 6              PROSPECTIVE JUROR:  MAC, YES.
 7              MR. PRICE:  AND YOU HAVE A, A VERIZON
 8    PHONE?
 9              PROSPECTIVE JUROR:  THAT'S FURNISHED BY
10    WORK.
11              MR. PRICE:  OKAY.  SO IS THAT THE PHONE
12    YOU WOULD SELECT?
13              PROSPECTIVE JUROR:  I'M SORRY, WHAT?
14              MR. PRICE:  IS THAT THE PHONE THAT YOU
15    PERSONALLY WOULD SELECT?
16              PROSPECTIVE JUROR:  NOT REALLY.  I'M NOT
17    BIG INTO -- I HAVE A -- I HAVE A REALLY OLD FLIP
18    PHONE.  I THINK IT'S A SAMSUNG.  I DON'T KNOW.  I
19    DON'T CARRY IT MUCH.
20              THAT'S SUPPLIED BY WORK BECAUSE NEXTEL IS
21    NO LONGER AROUND MUCH.  THAT'S WHAT IT'S REALLY
22    USED FOR.
23              MR. PRICE:  WELL, IF YOU HAD YOUR OWN
24    CHOICE, IF IT WASN'T IMPOSED ON YOU BY YOUR BOSS,
25    WHO -- WOULD YOU HAVE A PREFERENCE?
```

```
1              PROSPECTIVE JUROR:  NOT REALLY.  I DON'T

2     KNOW MUCH ABOUT THEM.  MY SON IS THE ONE THAT'S

3     REALLY INTO THAT STUFF.  HE WOULD TELL ME OR GUIDE

4     ME.

5              MR. PRICE:  AND WHAT'S YOUR SON INTO?

6              PROSPECTIVE JUROR:  HE'S INTO MAC REAL

7     HEAVY.  I MEAN, HE'S A USER AND HE'S GOT ALL KINDS

8     OF STUFF.

9              MR. PRICE:  SO MS. ROUGIERI, IS THAT --

10    IS THAT CORRECT?

11             PROSPECTIVE JUROR:  CORRECT.

12             MR. PRICE:  YOU SAID THAT YOU'RE THINKING

13    ABOUT BUYING AN IPAD, AND I -- I PERHAPS CRINGE TO

14    ASK YOU THIS, BUT WHY?

15             PROSPECTIVE JUROR:  WHY?  I -- I LOVE THE

16    TECHNOLOGY.  I MEAN, YOU COULD SIT AROUND IN THE

17    YARD AND PLAY WITH IT.

18             MR. PRICE:  YOU KNOW, OTHER COMPANIES

19    SELL TABLETS.

20             (LAUGHTER.)

21             PROSPECTIVE JUROR:  APPLE COMES OUT WITH

22    REALLY, REALLY NICE STUFF.

23             MR. PRICE:  NICE WHAT?  OH, DON'T REPEAT

24    THAT.  I'M SORRY.

25             MS. FLAVIN -- AND I'M SORRY, I'M GOING TO
```

1    SKIP SOME OF YOU AND HAVE -- I JUST WANTED TO ASK

2    YOU, I KNOW YOU SAID YOU WERE A UPS SUPERVISOR.  IS

3    THAT RIGHT?

4              PROSPECTIVE JUROR:  YES.

5              MR. PRICE:  SO YOU'RE THE PERSON IN

6    CHARGE OF GETTING THE PACKAGE TO SOMEONE BY

7    10:00 A.M. OR WHATEVER?

8              PROSPECTIVE JUROR:  I PLAY A PART OF IT.

9              MR. PRICE:  SO YOU'RE NOT TAKING

10   RESPONSIBILITY OR BLAME?

11             PROSPECTIVE JUROR:  I DON'T DRIVE THE

12   TRUCKS.

13             MR. PRICE:  OKAY.  SO I WAS JUST

14   WONDERING, IS THIS -- FOR YOUR CAREER PATH, BECAUSE

15   YOU'RE FAIRLY YOUNG, AT LEAST COMPARED TO ME, SO

16   WHAT DO YOU EXPECT TO DO IN THE FUTURE?  WHAT'S

17   YOUR IDEAS IF YOU'RE -- WHAT'S YOUR DREAM JOB?

18             PROSPECTIVE JUROR:  I'LL BE STAYING WITH

19   UPS AND I'LL BE DOING MANY JOBS.

20             MR. PRICE:  OKAY.  SO YOU LIKE THE

21   COMPANY AND THAT'S WHERE YOU WANT TO STAY?

22             PROSPECTIVE JUROR:  YEAH.

23             MR. PRICE:  SPEAKING ABOUT WHAT YOU WANT

24   TO DO, I WANTED TO ASK MR. ROGERS, IF I COULD,

25   SINCE YOU DON'T HAVE A JOB, OR HAVEN'T HAD ANY

```
1    SIGNIFICANT JOBS, AND I DON'T REALLY GET A SENSE OF
2    MAYBE WHAT YOU WANT TO DO IN THE WORK FORCE, SO
3    WHAT -- WHAT DO YOU THINK -- IT SOUNDS LIKE AN
4    INTERVIEW QUESTION AND I'M SORRY, BUT I'M JUST KIND
5    OF CURIOUS, IN THE NEXT TEN YEARS, WHERE DO YOU SEE
6    YOURSELF?
7              (LAUGHTER.)
8              PROSPECTIVE JUROR:  I THINK LONG-TERM
9    WHAT I'M MOST LIKELY GOING TO END UP DOING IS I
10   WANT TO GO TO COLLEGE FOR SOFTWARE ENGINEERING AND
11   DIGITAL DESIGN AND EVENTUALLY END UP WORKING FOR A
12   VIDEO GAME DESIGNER.
13             MR. PRICE:  OKAY.  SO THAT YOUR HOBBY
14   WILL BE YOUR WORK AS WELL?
15             PROSPECTIVE JUROR:  YES.
16             MR. PRICE:  OKAY.  AND YOU SAID YOU PLAY
17   A LOT OF VIDEO GAMES, AND I WAS TRYING TO -- BUT
18   YOU DON'T HAVE A SMARTPHONE.  DID YOU HAVE A MAC OR
19   A COMPUTER?  WHAT DO YOU PLAY THE GAMES ON?
20             PROSPECTIVE JUROR:  I HAVE -- LATELY I'VE
21   BEEN PLAYING A LOT ON MY XBOX, BUT I HAVE A VERY
22   OLD DESKTOP.  I DON'T PLAY MUCH ON THAT ANYWAY.
23             BUT I ALSO HAVE A TOSHIBA THAT'S LIKE
24   FOUR OR FIVE YEARS OLD.  I DON'T PLAY LIKE -- I
25   TYPICALLY DON'T PLAY THE NEWER COMPUTER GAMES.  I
```

1    PLAY THE NEWER GAMES ON XBOX.  I ALSO PLAY SOME ON

2    HANDHELDS SOMETIMES.

3              MR. PRICE:  OKAY.  THANK YOU.  I

4    APPRECIATE IT.

5              MR. REYES, I NOTICED THAT, I THINK YOU

6    SAID THAT YOU HAVE A CASIO PHONE, WHICH IS NOT A

7    SMARTPHONE.  IS THAT RIGHT?

8              PROSPECTIVE JUROR:  NO, IT IS A

9    SMARTPHONE.

10             MR. PRICE:  OH, OKAY.

11             PROSPECTIVE JUROR:  IT'S A COMMANDO.

12             MR. PRICE:  I THOUGHT YOU SAID YOU DIDN'T

13   AND YOUR WIFE DID AND I WAS GOING TO ASK YOU HOW

14   THAT CAME ABOUT.

15             HOW IS IT THAT YOU SELECTED YOUR

16   SMARTPHONE?

17             PROSPECTIVE JUROR:  JUST THROUGH VERIZON,

18   THROUGH ANOTHER CO-WORKER THAT HAD IT.  THE TYPE OF

19   WORK I DO, IT'S INDESTRUCTIBLE WHEN YOU DROP IT.

20             MR. PRICE:  AND DO YOU KNOW WHY YOUR WIFE

21   CHOSE A SAMSUNG SMARTPHONE?

22             PROSPECTIVE JUROR:  JUST SOMETHING THAT

23   SHE LIKED.

24             MR. PRICE:  SO YOU WEREN'T INVOLVED IN

25   THE RESEARCH OF THAT?

```
1              PROSPECTIVE JUROR:  NO, HUM-UM.

2              MR. PRICE:  OKAY.  MR. TEPMAN, I THINK

3    YOU SAID THAT -- AND TELL ME IF I'M WRONG -- THAT

4    YOU ALSO USE AN IPHONE THAT YOUR COMPANY SUPPLIED?

5              PROSPECTIVE JUROR:  YES.

6              MR. PRICE:  IS -- AND YOUR SON WORKS AT

7    GOOGLE; RIGHT?

8              PROSPECTIVE JUROR:  YEAH.

9              MR. PRICE:  OKAY.  DO YOU KNOW WHAT KIND

10   OF SMARTPHONE HE HAS?

11             PROSPECTIVE JUROR:  YEAH.  HE GOT FOR

12   CHRISTMAS PRESENT, HE GOT THE SAMSUNG.  NO, I'M

13   SORRY -- YEAH, SAMSUNG.  SMARTPHONE.

14             MR. PRICE:  AND HE GOT IT FOR CHRISTMAS

15   FROM?

16             PROSPECTIVE JUROR:  FROM GOOGLE.

17             MR. PRICE:  FROM GOOGLE.  AND HOW ABOUT

18   YOU?  IF YOU -- YOU'VE BEEN FORCED -- WELL, NOT

19   FORCED -- I MEAN YOUR COMPANY HAS PROVIDED YOU WITH

20   AN IPHONE.  WOULD THAT HAVE BEEN YOUR CHOICE

21   NATURALLY?

22             PROSPECTIVE JUROR:  AFTER THOUGHT, YES.

23             MR. PRICE:  AFTER THOUGHT?

24             PROSPECTIVE JUROR:  I HAD A BLACKBERRY

25   AND IT WAS OKAY WITH ME AND ONE DAY THEY CHANGED.
```

```
 1    BUT THE BLACKBERRY WAS GOOD ENOUGH.

 2             MR. PRICE:  YEAH.

 3             PROSPECTIVE JUROR:  BUT THEY CHANGED TO

 4    IPHONE.  I GUESS YOU CHANGE TO SOMETHING, YOU DO

 5    SOMETHING.

 6             MR. PRICE:  SO YOU PERSONALLY DON'T

 7    REALLY HAVE A PREFERENCE FOR ONE OR THE ANOTHER?

 8             PROSPECTIVE JUROR:  TODAY, IT'S LIKE IF

 9    YOU TAKE A CAR FROM TOYOTA, A CAR FROM HONDA,

10    EVERYTHING IS IN THE SAME PLACE, THE SWITCHES,

11    EVERYTHING IN THE SAME PLACE.

12             THE PROBLEM IS NOW THAT IPHONE AND

13    SAMSUNG, IT'S NOT THE SAME PLACE.  IT'S NOT THE

14    SAME.

15             SO FOR ME, I WILL FORGET.  I'M NOT ABLE

16    TO -- IF I GO TO SAMSUNG, I WON'T KNOW.

17             AND THIS WILL GO TO DO THE SAME LIKE

18    CARS.  SWITCH -- PUT THE SWITCHES THE SAME PLACE.

19             MR. PRICE:  IT TAKES A WHILE TO LEARN

20    THEM, TO GET SOMETHING DIFFERENT.

21             PROSPECTIVE JUROR:  YES.  BUT IF I GO BUY

22    A NEW CAR, I CAN'T CARE, I BUY NISSAN, I BUY

23    TOYOTA, IT'S ALL THE TIME.

24             BUT IF THEY WERE ALL DIFFERENT, I WOULD

25    BUY THE SAME CAR ALL THE TIME.
```

```
1              MR. PRICE:  OKAY.  I'M NOT THE PERSON TO
2     SPEAK TO ABOUT THAT, BUT I UNDERSTAND.
3              MR. CATHERWOOD, BY THE WAY, I THINK YOU
4     SAID YOU HAVE A BACHELOR OF SCIENCE DEGREE.  IS
5     THAT RIGHT?
6              I'M SORRY TO KEEP THE MICROPHONE -- I'M
7     TRYING TO KEEP IT IN THE GENERAL AREA.
8              PROSPECTIVE JUROR:  YES.  ACTUALLY, I
9     HAVE A BACHELOR'S OF SCIENCE IN PROFESSIONAL
10    AERONAUTICS, AND THEN I HAVE A GENERAL BACHELOR'S
11    OF SCIENCE DEGREE.
12             MR. PRICE:  WHEN YOU SAY AERONAUTICS,
13    YOUR WIFE WORKS FOR LOCKHEED; IS THAT RIGHT?
14             PROSPECTIVE JUROR:  CORRECT.
15             MR. PRICE:  SO ARE YOU BOTH IN -- IN --
16             PROSPECTIVE JUROR:  WHEN I WAS GOING TO
17    COLLEGE, I WAS IN THE NAVY, I WAS FLIGHT CREW
18    INVOLVED WITH VARIOUS AVIATION WORK, SO IT SEEMED
19    LIKE WHERE I WAS GOING, INSTEAD OF
20    TELECOMMUNICATIONS WHERE I ENDED UP.
21             MR. PRICE:  WELL, LIFE GIVES YOU
22    SURPRISES.
23             LET ME SEE IF I HAVE ANY OTHER QUESTIONS.
24    I ACTUALLY DID WANT TO ASK MR. KRETZMANN, OUT OF
25    CURIOSITY -- NO, I'M SORRY, MR. TEPMAN AGAIN --
```

```
 1     YOUR DAUGHTER'S A SELF CONFIDENCE COACH?

 2                PROSPECTIVE JUROR:  YEAH, FOR CHILDREN.

 3                MR. PRICE:  AH, OKAY.  SO IT'S NOT LIKE A

 4     TONY ROBERTS OR SOMETHING?

 5                PROSPECTIVE JUROR:  NO.  CHILDREN AGE 12

 6     TO 18.

 7                MR. PRICE:  OKAY, YEAH.  I WANT TO ASK

 8     YOU FOLKS ABOUT SOME GENERAL CONCEPTS WHICH THE

 9     COURT TALKED TO YOU ABOUT, AND ONE OF THEM IS THAT,

10     YOU KNOW, YOU'RE SUPPOSED TO WAIT UNTIL YOU HEAR

11     THE EVIDENCE TO DECIDE THINGS.

12                AND IN THIS PARTICULAR CASE, AS IN ALL

13     CASES, ONE PARTY GOES FIRST AND THE OTHER PARTY

14     GOES SECOND.

15                SO APPLE IS GOING TO PRESENT EVIDENCE

16     FIRST AND THEN SAMSUNG SECOND.

17                SO IT'S PARTICULARLY IMPORTANT THAT YOU

18     KEEP AN OPEN MIND UNTIL EVERYBODY'S HAD THEIR TURN

19     AND YOU'VE HEARD ALL THE EVIDENCE.

20                NOW, DOES ANYONE THINK THAT THAT MAY BE A

21     LITTLE BIT CHALLENGING FOR THEM?

22                WELL, LET ME ASK IT LIKE THIS, AND

23     MAYBE -- I THINK AT LEAST THERE WAS ONE PERSON UP

24     THERE WHO SAID THAT SPORTS WERE THEIR HOBBIES,

25     MR. OKAMOTO.
```

```
 1              PROSPECTIVE JUROR:  YEAH.

 2              MR. PRICE:  SO HAVE YOU EVER BEEN IN A

 3    SITUATION WHERE, SAY, IN A BASKETBALL GAME, YOU'VE

 4    BEEN WATCHING A GAME WITH A FRIEND AND YOU'RE

 5    ROOTING FOR ONE TEAM AND THEY'RE ROOTING FOR THE

 6    OTHER AND TWO BODIES THAT ARE, LIKE, 6'9" HIT HIGH

 7    IMPACT AND THE REF CALLS A CHARGE, AND IF IT'S

 8    AGAINST YOUR TEAM, YOU GO, "THAT'S RIDICULOUS, HIS

 9    FEET WERE MOVING," AND YOUR FRIEND SAYS, "NO, I SAW

10    IT CLEARLY AND IT WAS A CHARGE."

11              HAVE YOU EVER BEEN IN THAT KIND OF A

12    SITUATION WHERE, BECAUSE YOU'RE ALREADY LEANING ONE

13    WAY OR ANOTHER, YOU KIND OF SEE THINGS DIFFERENTLY?

14              PROSPECTIVE JUROR:  I DON'T KNOW IN THAT

15    SPECIFIC CASE.  I'M MORE LIKE MAYBE HOCKEY OR

16    FOOTBALL.

17              MR. PRICE:  LET'S CALL IT PASS

18    INTERFERENCE.

19              PROSPECTIVE JUROR:  PASS INTERFERENCE,

20    OKAY.

21              USUALLY IF I'M WATCHING A GAME, I USUALLY

22    HAVE THE TEAM I WANT TO WIN, SO IF IT'S THE NINER'S

23    VERSUS SOMEBODY, I WANT THE NINERS TO WIN.

24              OBVIOUSLY, IF I THOUGHT THE PLAY WAS PASS

25    INTERFERENCE AGAINST US, I WOULD BE OKAY WITH
```

```
 1    SAYING THAT WAS PASS INTERFERENCE.

 2              BUT IF IT WAS CLOSE AND I THOUGHT -- I'LL

 3    SOMETIMES DISAGREE WITH THE COMMENTATORS AND I'LL

 4    GET MY TIVO AND GO SLOW MOTION AND WATCH IT AGAIN

 5    AND I'LL KIND OF SAY THAT WAS NOT PASS

 6    INTERFERENCE, OR THAT WAS.

 7              SO I LIKE TO -- I DON'T SWAY BASED ON MY

 8    FEELINGS, EVEN THOUGH I'LL WATCH IT, BUT OF COURSE

 9    I'M ROOTING FOR MY HOME TEAM AND I'LL WATCH IT AND

10    BASE MY OPINION ON WHAT I SEE.

11              SO IN THOSE SITUATIONS, THAT'S WHAT I'LL

12    DO.

13              MR. PRICE:  YOU'RE VERY ANALYTICAL,

14    AREN'T YOU?

15              PROSPECTIVE JUROR:  WHAT'S THAT?

16              MR. PRICE:  YOU'RE VERY ANALYTICAL,

17    AREN'T YOU?

18              HOW MANY PEOPLE LOOK AT SPORTS WITH A

19    LITTLE EMOTION?

20              THERE YOU GO.

21              WELL, IN THIS CASE, AS IN LIFE, IF YOU

22    START ROOTING FOR ONE SIDE OR ANOTHER, EITHER SIDE,

23    YOU MIGHT LOOK AT THE EVIDENCE DIFFERENTLY, AND

24    THAT REALLY IS HARD TO DO, I MEAN, TO SUSPEND

25    JUDGMENT FOR FOUR WEEKS, YOU KNOW, UNTIL YOU'VE
```

```
1    HEARD ALL THE EVIDENCE.  THAT'S KIND OF A

2    CHALLENGE.

3             SO I DO ASK YOU, AND APPLE WILL ASK YOU

4    AS WELL, TO TRY TO DO THAT AND WAIT UNTIL YOU HEAR

5    ALL THE EVIDENCE.

6             LET ME ASK, YOU KNOW --

7             THE COURT:  YOU HAVE ONE MINUTE.

8             MR. PRICE:  THANK YOU.  AND THIS WILL BE

9    MY FINAL QUESTION.

10            THERE'S -- WE ARE A SOUTH KOREAN COMPANY

11   AND YOU WERE ASKED ABOUT IS THERE ANY BIAS BASED

12   UPON WHERE COMPANIES ARE SITUATED.

13            AND I JUST WANT TO ASK -- YOU KNOW, I

14   GUESS I WANT TO ASK IT THIS WAY:  DOES ANYONE HERE

15   THINK THAT, FOR EXAMPLE, IT'S -- THAT ASIAN

16   COMPANIES OR SOUTH KOREAN COMPANIES, YOU KNOW, ARE

17   MORE DISHONEST THAN AMERICAN COMPANIES IN BUSINESS

18   OR, OR CHEAT OR, YOU KNOW, JUST DON'T -- YOU JUST

19   DON'T HAVE THE SAME POSITIVE FEELINGS ABOUT THOSE

20   COMPANIES AS YOU WOULD ABOUT SOMEONE WHO, YOU KNOW,

21   IS LOCATED NEARBY AND KIND OF ICONIC?  DOES ANYONE

22   THINK THAT BASICALLY SAMSUNG IS STARTING A LITTLE

23   BIT BEHIND BECAUSE OF THAT?

24            OKAY.  THANK YOU VERY MUCH.  IT'S BEEN A

25   LONG AFTERNOON.
```

```
 1                    THANK YOU, YOUR HONOR.

 2                    THE COURT:  ALL RIGHT.  THANK YOU.

 3                    ALL RIGHT.  WE ARE JUST GOING TO TAKE A

 4     VERY QUICK SIDE-BAR AND I WILL MEMORIALIZE THIS

 5     DURING THE RECESS ON ANY CAUSE CHALLENGES.

 6                    WELL, YOU CAN TELL ME NOW, ARE THERE ANY?

 7                    MR. PRICE:  NO CAUSE CHALLENGES.

 8                    THE COURT:  ALL RIGHT.  WE MAY NOT NEED

 9     TO DO THIS IF --

10                    (PAUSE IN PROCEEDINGS.)

11                    MR. LEE:  MAY WE APPROACH THE SIDE-BAR,

12     YOUR HONOR?

13                    THE COURT:  YES.

14                    (SIDE-BAR DISCUSSION OFF THE RECORD.)

15                    THE COURT:  ALL RIGHT.  WE ARE GOING TO

16     TAKE A 20-MINUTE RECESS FOR OUR JURORS, AND WHEN

17     YOU COME BACK, WE WILL HAVE OUR JURY SELECTED AT

18     THAT POINT.

19                    IN YOUR ABSENCE, THE PARTIES ARE GOING TO

20     MAKE THEIR OWN SELECTIONS.  OKAY?

21                    SO IN THE MEANTIME, IT IS NOW 3:30 BY THE

22     OFFICIAL CLOCK AND WE'RE GOING TO TAKE A 20-MINUTE

23     BREAK.

24                    AND AGAIN, PLEASE DON'T DISCUSS THE CASE

25     WITH ANYONE.  PLEASE KEEP AN OPEN MIND UNTIL THE
```

```
 1    END OF THE CASE.

 2              YOU ARE NOT -- THERE'S BEEN NO EVIDENCE

 3    RIGHT NOW, SO THERE'S REALLY NOTHING THAT SHOULD BE

 4    WEIGHING ON YOU ONE WAY OR THE OTHER.  AND PLEASE

 5    DON'T DO ANY RESEARCH.  OKAY?

 6              (DISCUSSION OFF THE RECORD BETWEEN THE

 7    COURT AND THE CLERK.)

 8              THE COURT:  ALL RIGHT.  THANK YOU VERY

 9    MUCH.  WE'LL SEE YOU BACK HERE IN 20 MINUTES.

10    THANK YOU.

11              (WHEREUPON, THE FOLLOWING PROCEEDINGS

12    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

13    JURORS:)

14              THE COURT:  ARE THERE ANY JURORS STILL

15    LEFT IN THE COURTROOM?  ANY JURORS STILL LEFT?  ARE

16    ANY JURORS LEFT IN THE COURTROOM?  NO?

17              OKAY.  THE RECORD SHOULD REFLECT THAT ALL

18    THE JURORS HAVE LEFT.

19              LET ME JUST MEMORIALIZE THAT LAST

20    SIDE-BAR.

21              APPLE RENEWED ITS FOR-CAUSE CHALLENGE AS

22    TO MR. OKAMOTO BASED ON THE -- WELL, ACTUALLY, YOU

23    WANT TO JUST MEMORIALIZE WHAT YOU STATED DURING THE

24    SIDE-BAR?

25              MR. LEE:  SURE.
```

```
 1              WE RENEWED OUR OBJECTION TO MR. OKAMOTO

 2    FOR THE REASONS I ARTICULATED EARLIER, BUT ALSO

 3    BECAUSE HE HAS PATENTS AND THE PATENTS GO TO THE

 4    ANDROID OPERATING SYSTEM.

 5              I ALSO READ A LIST OF FIVE DECLARANTS

 6    FROM GOOGLE IN THE PRELIMINARY INJUNCTION

 7    PROCEEDING.  HE KNEW OF ONE AND HAD BEEN ON THE

 8    CHAIN.

 9              I THINK -- YOUR HONOR, WE THINK THE

10    COMBINATION OF HIS STOCK OPTIONS, THE RELATIONSHIP

11    BETWEEN GOOGLE AND SAMSUNG IS JUST TOO CLOSE, AND

12    WHILE HE HAS SAID THAT HE COULD BE FAIR AND

13    IMPARTIAL, OVER A MONTH LONG TRIAL INVOLVING THE

14    LARGEST BUSINESS PARTNER OF GOOGLE, WE THINK THAT

15    WOULD BE IMPOSSIBLE TO DO.

16              THE COURT:  ALL RIGHT.  THE FIVE

17    DECLARANTS, THE NAMES THAT YOU READ OFF, ARE NOT ON

18    THE WITNESS LIST.

19              I DO ACKNOWLEDGE THAT ONE OF THE FIVE --

20    NOT -- WELL, OF THE FIVE NAMES THAT YOU LISTED OFF,

21    NONE OF THEM ARE ON THE WITNESS LIST FOR THIS

22    TRIAL.

23              MR. LEE:  THAT'S CORRECT.

24              THE COURT:  ALL RIGHT.  AND MR. OKAMOTO

25    HAS BEEN VERY CREDIBLE IN RESPONSE TO ALL QUESTIONS
```

```
 1    CONSISTENT THROUGHOUT THIS ENTIRE DAY OF JURY

 2    SELECTION THAT HE WILL BE FAIR AND IMPARTIAL AND

 3    THAT HIS EMPLOYMENT AND STOCK OWNERSHIP WILL NOT

 4    BIAS OR PREJUDICE HIM IN ANY WAY IN FAVOR OF EITHER

 5    PARTY, AND BASED ON HOW CREDIBLY AND CONSISTENTLY

 6    HE HAS ANSWERED QUESTIONS, THE COURT DENIES THAT

 7    FOR-CAUSE CHALLENGE.

 8              ALL RIGHT.  WAS THAT AN ACCURATE

 9    REPRESENTATION OF THE SIDE-BAR?

10              MR. LEE:  FOR APPLE, YES, YOUR HONOR.

11              MR. VERHOEVEN:  YES, YOUR HONOR.

12              THE COURT:  OKAY.  GO AHEAD, PLEASE, AND

13    DO YOUR CHALLENGES.

14              DO THEY HAVE THE SHEET, MS. PARKER BROWN?

15              THE CLERK:  YES.

16              (PAUSE IN PROCEEDINGS.)

17              (WHEREUPON, THE FOLLOWING PROCEEDINGS

18    WERE HELD IN OF THE PRESENCE OF THE PROSPECTIVE

19    JURORS:)

20              THE COURT:  OKAY.  PLEASE TAKE A SEAT.

21              THE CLERK:  PLEASE BE SEATED, IF YOU HAVE

22    A SEAT.

23              I'M GOING TO CALL OUT TEN NAMES WHO WILL

24    BE THE JURY IN THIS CASE.  THE FIRST FIVE WILL SIT

25    IN THE BACK ROW STARTING BY THE WATER COOLER, AND
```

```
1    THE LAST FIVE WILL SIT IN THE FRONT ROW.

2            THE FIRST JUROR IS VELVIN HOGAN;

3    LUZVIMINDA ROUGIERI; MANUEL REYES; MARICRUZ

4    FRIESEN; PETER CATHERWOOD; CHRISTOPHER ROGERS, AND

5    MR. ROGERS, YOU'RE GOING TO START THE FRONT ROW;

6    AARTI MATHUR.

7            PROSPECTIVE JUROR:  I WAS GOING TO GO

8    AROUND.

9            THE CLERK:  YEAH, YOU CAN GO AROUND.

10           MANUEL ILAGAN, AND DAVID DUNN.

11           PROSPECTIVE JUROR:  THERE'S SOME STUFF ON

12   THE FIRST CHAIR.

13           THE COURT:  IT'S SOMEBODY'S JACKET.

14           PROSPECTIVE JUROR:  THAT'S FINE.

15           THE CLERK:  AND MARK FLADELAND.

16           DID I SAY THAT RIGHT?

17           AND IF THE TEN OF YOU WOULD STAND,

18   PLEASE, AND RAISE YOUR RIGHT HANDS.

19           (JURY PANEL SWORN.)

20           JURORS:  YES.

21           THE CLERK:  THANK YOU.  YOU MAY BE

22   SEATED.

23           THE COURT:  ALL RIGHT.  WELL, THE REST OF

24   YOU MAY BE FEELING EXHILARATED, LIKE YOU ESCAPED A

25   BULLET, BUT YOU ALSO MAY BE FEELING DISAPPOINTED
```

```
 1    THAT YOU WERE NOT SELECTED IN WHAT SHOULD BE AN
 2    INTERESTING CASE.
 3             BUT I WANT TO THANK YOU SO MUCH FOR YOUR
 4    PATIENCE AND FOR YOUR SERVICE THE ENTIRE DAY, AND
 5    I'M GOING TO EXCUSE YOU NOW.
 6             IF YOU WOULD PLEASE JUST GO TO THE SECOND
 7    FLOOR AND CHECK IN WITH MR. YOUNGER.
 8             THE CLERK:  THEY HAVE THINGS UP HERE.
 9             THE COURT:  I'M SORRY.  PLEASE GO AHEAD
10    AND COME AND TAKE YOUR BELONGINGS.
11             THANK YOU SO MUCH FOR YOUR PATIENCE AND
12    FOR YOUR SERVICE TODAY.  THANK YOU ALL.
13             (PROSPECTIVE JURORS NO LONGER PRESENT.)
14             THE COURT:  ALL RIGHT.  CAN YOU HAND OUT
15    THE JURY NOTEBOOKS, PLEASE.
16             MR. THORPE, ARE THERE ANY MORE JACKETS,
17    PURSES?
18             THE CLERK:  YOUR HONOR, CAN THE PEOPLE
19    FROM THE OVERFLOW MOVE IN?
20             THE COURT:  YEAH, THEY CAN COME ON IN.
21             (PAUSE IN PROCEEDINGS.)
22             THE COURT:  ALL RIGHT.  THANK YOU AGAIN
23    FOR YOUR WILLINGNESS TO SERVE.
24             WE ARE GOING TO MAKE VERY GOOD USE OF
25    YOUR TIME AND TRY TO BE AS EFFICIENT AS POSSIBLE SO
```

1    WE DON'T WASTE YOUR TIME.

2             WHAT I'M GOING TO DO NOW IS I'M GOING TO

3    READ THE PRELIMINARY JURY INSTRUCTIONS.  THEY ARE

4    IN YOUR JUROR NOTEBOOKS.  IF YOU'LL LOOK AT THE

5    THIRD TAB, IT SAYS PRELIMINARY JURY INSTRUCTIONS.

6             AND EVEN THOUGH THEY ARE IN PRINT BEFORE

7    YOU, I DO HAVE TO READ THEM TO YOU, SO YOU CAN

8    FOLLOW ALONG IF THAT'S HELPFUL AT ALL.  WE'LL START

9    WITH NUMBER ONE, THE DUTY OF THE JURY.

10            LADIES AND GENTLEMEN, YOU ARE NOW THE

11   JURY IN THIS CASE.  IT IS MY DUTY TO INSTRUCT YOU

12   ON THE LAW.  THESE INSTRUCTIONS ARE PRELIMINARY

13   INSTRUCTIONS TO HELP YOU UNDERSTAND THE PRINCIPLES

14   THAT APPLY TO CIVIL TRIALS AND TO HELP YOU

15   UNDERSTAND THE EVIDENCE AS YOU LISTEN TO IT.

16            YOU WILL BE ALLOWED TO KEEP THIS SET

17   THROUGHOUT THE TRIAL TO WHICH TO REFER.

18            THIS SET OF INSTRUCTIONS IS NOT TO BE

19   TAKEN HOME AND MUST REMAIN IN THE JURY ROOM WHEN

20   YOU LEAVE IN THE EVENINGS.

21            AT THE END OF THE TRIAL, I WILL GIVE YOU

22   A FINAL SET OF INSTRUCTIONS.  IT IS THE FINAL SET

23   OF INSTRUCTIONS THAT WILL GOVERN YOUR

24   DELIBERATIONS.

25            ALSO, WHEN YOU LEAVE FOR ANY BREAKS OR

1    LUNCH, PLEASE LEAVE THE JURY NOTEBOOKS IN THE JURY

2    ROOM.

3              YOU MUST NOT INFER FROM THESE

4    INSTRUCTIONS OR FROM ANYTHING I MAY SAY OR DO AS

5    INDICATING THAT I HAVE AN OPINION REGARDING THE

6    EVIDENCE OR WHAT YOUR VERDICT SHOULD BE.

7              IT IS YOUR DUTY TO FIND THE FACTS FROM

8    ALL THE EVIDENCE IN THE CASE.  TO THOSE FACTS YOU

9    WILL APPLY THE LAW AS I GIVE IT TO YOU.

10             YOU MUST FOLLOW THE LAW AS I GIVE IT TO

11   YOU, WHETHER YOU AGREE WITH IT OR NOT.  AND YOU

12   MUST NOT BE INFLUENCED BY ANY PERSONAL LIKES OR

13   DISLIKES, OPINIONS, PREJUDICES, OR SYMPATHY.

14             THAT MEANS THAT YOU MUST DECIDE THE CASE

15   SOLELY ON THE EVIDENCE BEFORE YOU.  YOU WILL RECALL

16   THAT YOU TOOK AN OATH TO DO SO.

17             IN FOLLOWING MY INSTRUCTIONS, YOU MUST

18   FOLLOW ALL OF THEM AND NOT SINGLE ONE -- SINGLE OUT

19   SOME AND IGNORE OTHERS.  THEY ARE ALL IMPORTANT.

20             THE EVIDENCE YOU ARE TO CONSIDER IN

21   DECIDING WHAT THE FACTS ARE CONSISTS OF THE SWORN

22   TESTIMONY OF ANY WITNESS; THE EXHIBITS WHICH ARE

23   RECEIVED INTO EVIDENCE; AND ANY FACTS TO WHICH THE

24   LAWYERS HAVE AGREED.

25             IN REACHING YOUR VERDICT, YOU MAY

1    CONSIDER ONLY THE TESTIMONY AND EXHIBITS RECEIVED

2    INTO EVIDENCE.  CERTAIN THINGS ARE NOT EVIDENCE AND

3    YOU MAY NOT CONSIDER THEM IN DECIDING WHAT THE

4    FACTS ARE.  I WILL LIST THEM FOR YOU.

5            ARGUMENTS AND STATEMENTS BY LAWYERS ARE

6    NOT EVIDENCE.  THE LAWYERS ARE NOT WITNESSES.  WHAT

7    THEY HAVE SAID IN THEIR -- OR WHAT THEY WILL SAY IN

8    THEIR OPENING STATEMENTS TOMORROW, WILL SAY IN

9    THEIR CLOSING ARGUMENTS AT THE END OF THE CASE AND

10   AT OTHER TIMES IS INTENDED TO HELP YOU INTERPRET

11   THE EVIDENCE, BUT IT IS NOT EVIDENCE.  IF THE FACTS

12   AS YOU REMEMBER THEM DIFFER FROM THE WAY THE

13   LAWYERS HAVE STATED THEM, YOUR MEMORY OF THEM

14   CONTROLS.

15           QUESTIONS AND OBJECTIONS BY LAWYERS ARE

16   NOT EVIDENCE.  ATTORNEYS HAVE A DUTY TO THEIR

17   CLIENTS TO OBJECT WHEN THEY BELIEVE A QUESTION IS

18   IMPROPER UNDER THE RULES OF EVIDENCE.  YOU SHOULD

19   NOT BE INFLUENCED BY THE OBJECTION OR BY THE

20   COURT'S RULING ON IT.

21           TESTIMONY THAT HAS BEEN EXCLUDED OR

22   STRICKEN OR THAT YOU HAVE BEEN INSTRUCTED TO

23   DISREGARD IS NOT EVIDENCE AND MUST NOT BE

24   CONSIDERED.

25           IN ADDITION, SOMETIMES TESTIMONY AND

```
 1    EXHIBITS ARE RECEIVED ONLY FOR A LIMITED PURPOSE.
 2    WHEN I GIVE YOU A LIMITING INSTRUCTION, YOU MUST
 3    FOLLOW IT.
 4             ANYTHING YOU MAY HAVE SEEN OR HEARD WHEN
 5    THE COURT WAS NOT IN SESSION IS NOT EVIDENCE.  YOU
 6    ARE TO DECIDE THE CASE SOLELY ON THE EVIDENCE
 7    RECEIVED AT THE TRIAL.
 8             SOME EVIDENCE MAY BE ADMITTED FOR A
 9    LIMITED PURPOSE.  WHEN I INSTRUCT YOU THAT AN ITEM
10    OF EVIDENCE HAS BEEN ADMITTED FOR A LIMITED
11    PURPOSE, YOU MUST CONSIDER IT ONLY FOR THAT LIMITED
12    PURPOSE AND FOR NO OTHER.
13             EVIDENCE MAY BE DIRECT OR CIRCUMSTANTIAL.
14    DIRECT EVIDENCE IS DIRECT PROOF OF A FACT, SUCH AS
15    TESTIMONY BY A WITNESS ABOUT WHAT THAT WITNESS
16    PERSONALLY SAW OR HEARD OR DID.
17             CIRCUMSTANTIAL EVIDENCE IS PROOF OF ONE
18    OR MORE FACTS FROM WHICH YOU COULD FIND ANOTHER
19    FACT.
20             YOU SHOULD CONSIDER BOTH KINDS OF
21    EVIDENCE.  THE LAW MAKES NO DISTINCTION BETWEEN THE
22    WEIGHT TO BE GIVEN TO EITHER DIRECT OR
23    CIRCUMSTANTIAL EVIDENCE.  IT IS FOR TO YOU DECIDE
24    HOW MUCH WEIGHT TO GIVE TO ANY EVIDENCE.
25             THERE ARE RULES OF EVIDENCE THAT CONTROL
```

1       WHAT CAN BE RECEIVED INTO EVIDENCE.  WHEN A LAWYER

2       ASKS A QUESTION OR OFFERS AN EXHIBIT INTO EVIDENCE

3       AND A LAWYER ON THE OTHER SIDE THINKS THAT IT IS

4       NOT PERMITTED BY THE RULES OF EVIDENCE, THAT LAWYER

5       MAY OBJECT.

6            IF I OVERRULE THE OBJECTION, THE QUESTION

7       MAY BE ANSWERED OR THE EXHIBIT RECEIVED.

8            IF I SUSTAIN THE OBJECTION, THE QUESTION

9       CANNOT BE ANSWERED AND THE EXHIBIT CANNOT BE

10      RECEIVED.

11           WHENEVER I SUSTAIN AN OBJECTION TO A

12      QUESTION, YOU MUST IGNORE THE QUESTION AND MUST NOT

13      GUESS WHAT THE ANSWER MIGHT HAVE BEEN.

14           SOMETIMES I MAY ORDER THAT EVIDENCE BE

15      STRICKEN FROM THE RECORD AND THAT YOU DISREGARD OR

16      IGNORE THE EVIDENCE.  THAT MEANS THAT WHEN YOU ARE

17      DECIDING THE CASE, YOU MUST NOT CONSIDER THE

18      EVIDENCE THAT I TOLD YOU TO DISREGARD.

19           IN DECIDING THE FACTS IN THIS CASE, YOU

20      MAY HAVE TO DECIDE WHICH TESTIMONY TO BELIEVE AND

21      WHICH TESTIMONY NOT TO BELIEVE.  YOU MAY BELIEVE

22      EVERYTHING A WITNESS SAYS, OR PART OF IT, OR NONE

23      OF IT.  PROOF OF A FACT DOES NOT NECESSARILY DEPEND

24      ON THE NUMBER OF WITNESSES WHO TESTIFY ABOUT IT.

25           IN CONSIDERING THE TESTIMONY OF ANY

```
1    WITNESS, YOU MAY TAKE INTO ACCOUNT:

2              THE OPPORTUNITY AND ABILITY OF THE

3    WITNESS TO SEE OR HEAR OR KNOW THE THINGS TESTIFIED

4    TO;

5              THE WITNESS'S MEMORY;

6              THE WITNESS'S MANNER WHILE TESTIFYING;

7              THE WITNESS'S INTEREST IN THE OUTCOME OF

8    THE CASE AND ANY BIAS OR PREJUDICE;

9              WHETHER OTHER EVIDENCE CONTRADICTED THE

10   WITNESS'S TESTIMONY;

11             THE REASONABLENESS OF THE WITNESS'S

12   TESTIMONY IN LIGHT OF ALL THE EVIDENCE; AND

13             ANY OTHER FACTORS THAT BEAR ON

14   BELIEVABILITY.

15             THE WEIGHT OF THE EVIDENCE AS TO A FACT

16   DOES NOT NECESSARILY DEPEND ON THE NUMBER OF

17   WITNESSES WHO TESTIFY ABOUT IT.

18             THE EVIDENCE THAT A WITNESS LIED UNDER

19   OATH OR GAVE DIFFERENT TESTIMONY ON A PRIOR

20   OCCASION MAY BE CONSIDERED, ALONG WITH ALL OTHER

21   EVIDENCE, IN DECIDING WHETHER OR NOT TO BELIEVE THE

22   WITNESS AND HOW MUCH WEIGHT TO GIVE THE TESTIMONY

23   OF THE WITNESS AND FOR NO OTHER PURPOSE.

24             I WILL NOW SAY A FEW WORDS ABOUT YOUR

25   CONDUCT AS JURORS.
```

1             FIRST, KEEP AN OPEN MIND THROUGHOUT THE

2    TRIAL AND DO NOT DECIDE WHAT THE VERDICT SHOULD BE

3    UNTIL YOU AND YOUR FELLOW JURORS HAVE COMPLETED

4    YOUR DELIBERATIONS AT THE END OF THE CASE.

5             SECOND, BEFORE YOU MUST DECIDE THIS

6    CASE -- BECAUSE -- EXCUSE ME -- BECAUSE YOU MUST

7    DECIDE THIS CASE BASED ONLY ON THE EVIDENCE

8    RECEIVED IN THE CASE AND ON MY INSTRUCTIONS AS TO

9    THE LAW THAT APPLIES, YOU MUST NOT BE EXPOSED TO

10   ANY OTHER INFORMATION ABOUT THE CASE OR TO THE

11   ISSUES IT INVOLVES DURING THE COURSE OF YOUR JURY

12   DUTY.

13            THUS, UNTIL THE END OF THE CASE OR UNTIL

14   I TELL YOU OTHERWISE, DO NOT COMMUNICATE WITH

15   ANYONE IN ANY WAY AND DO NOT LET ANYONE ELSE

16   COMMUNICATE WITH YOU IN ANY WAY ABOUT THE MERITS OF

17   THE CASE OR ANYTHING TO DO WITH IT.

18            THIS INCLUDES DISCUSSING THE CASE IN

19   PERSON, IN WRITING, BY PHONE OR ELECTRONIC MEANS

20   VIA E-MAIL, TEXT MESSAGES, OR ANY INTERNET CHAT

21   ROOM, BLOG, WEBSITE OR OTHER FEATURE.

22            THIS APPLIES TO COMMUNICATING WITH YOUR

23   FELLOW JURORS UNTIL I GIVE YOU THE CASE FOR

24   DELIBERATION, AND IT APPLIES TO COMMUNICATING WITH

25   EVERYONE ELSE, INCLUDING YOUR FAMILY MEMBERS, YOUR

1   EMPLOYER, AND THE PEOPLE INVOLVED IN THE TRIAL,

2   ALTHOUGH YOU MAY NOTIFY YOUR FAMILY AND YOUR

3   EMPLOYER THAT YOU HAVE BEEN SEATED AS A JUROR IN

4   THIS CASE.

5           BUT, IF YOU ARE ASKED OR APPROACHED IN

6   ANY WAY ABOUT YOUR JURY SERVICE OR ANYTHING ABOUT

7   THIS CASE, YOU MUST RESPOND THAT YOU HAVE BEEN

8   ORDERED NOT TO DISCUSS -- NOT TO DISCUSS THE MATTER

9   AND TO REPORT THE CONTACT TO THE COURT.

10          BECAUSE YOU WILL RECEIVE ALL THE EVIDENCE

11  AND THE LEGAL INSTRUCTION YOU PROPERLY MAY CONSIDER

12  TO RETURN A VERDICT, DO NOT READ, WATCH, OR LISTEN

13  TO ANY NEWS OR MEDIA ACCOUNTS OR COMMENTARY ABOUT

14  THE CASE OR ANYTHING DO WITH IT; DO NOT DO ANY

15  RESEARCH, SUCH AS CONSULTING DICTIONARIES,

16  SEARCHING THE INTERNET, OR USING OTHER REFERENCE

17  MATERIALS; AND DO NOT MAKE ANY INVESTIGATION OR IN

18  ANY OTHER WAY TRY TO LEARN ABOUT THE CASE ON YOUR

19  OWN.

20          THE LAW REQUIRES THESE RESTRICTIONS TO

21  ENSURE THE PARTIES HAVE A FAIR TRIAL BASED ON THE

22  SAME EVIDENCE THAT EACH PARTY HAS HAD AN

23  OPPORTUNITY TO ADDRESS.

24          A JUROR WHO VIOLATES THESE RESTRICTIONS

25  JEOPARDIZES THE FAIRNESS OF THESE PROCEEDINGS, AND

```
1   A MISTRIAL COULD RESULT THAT WOULD REQUIRE THE

2   ENTIRE TRIAL PROCESS TO START OVER.

3            IF ANY JUROR IS EXPOSED TO ANY OUTSIDE

4   INFORMATION, PLEASE NOTIFY THE COURT IMMEDIATELY.

5            DURING DELIBERATIONS, YOU WILL HAVE TO

6   MAKE YOUR DECISION BASED ON WHAT YOU RECALL OF THE

7   EVIDENCE.  YOU WILL NOT HAVE A TRANSCRIPT OF THE

8   TRIAL.  I URGE YOU TO PAY CLOSE ATTENTION TO THE

9   TESTIMONY AS IT IS GIVEN.

10           IF AT ANY TIME YOU CANNOT HEAR OR SEE THE

11  TESTIMONY, EVIDENCE, QUESTIONS, OR ARGUMENTS, LET

12  ME KNOW SO THAT I CAN CORRECT THE PROBLEM.

13           IF YOU WISH, YOU MAY TAKE NOTES TO HELP

14  YOU REMEMBER THE EVIDENCE.  IF YOU DO TAKE NOTES,

15  PLEASE KEEP THEM TO YOURSELF UNTIL YOU AND YOUR

16  FELLOW JURORS GO TO THE JURY ROOM TO DECIDE THE

17  CASE.  DO NOT LET NOTE TAKING DISTRACT YOU.

18           WHEN YOU LEAVE, YOUR NOTES SHOULD BE LEFT

19  IN THE JURY ROOM.  NO ONE WILL READ YOUR NOTES.

20  THEY WILL BE DESTROYED AT THE CONCLUSION OF THE

21  CASE.

22           WHETHER OR NOT YOU TAKE NOTES, YOU SHOULD

23  RELY ON YOUR OWN MEMORY OF THE EVIDENCE.  NOTES ARE

24  ONLY TO ASSIST YOUR MEMORY.  YOU SHOULD NOT BE

25  OVERLY INFLUENCED BY YOUR NOTES OR THOSE OF YOUR
```

1    FELLOW JURORS.

2           THE PARTIES HAVE AGREED TO CERTAIN FACTS

3    THAT WILL BE READ TO YOU.  YOU SHOULD, THEREFORE,

4    TREAT THESE FACTS AS HAVING BEEN PROVED.

5           A DEPOSITION IS THE SWORN TESTIMONY OF A

6    WITNESS TAKEN BEFORE TRIAL.  THE WITNESS IS PLACED

7    UNDER OATH TO TELL THE TRUTH AND LAWYERS FOR EACH

8    PARTY MAY ASK QUESTIONS.  THE QUESTIONS AND ANSWERS

9    ARE RECORDED.

10          YOU SHOULD CONSIDER DEPOSITION TESTIMONY,

11   PRESENTED TO YOU IN COURT IN LIEU OF LIVE

12   TESTIMONY, INSOFAR AS POSSIBLE, IN THE SAME WAY AS

13   IF THE WITNESS HAD BEEN PRESENT TO TESTIFY.

14          EVIDENCE MAY BE PRESENTED TO YOU IN THE

15   FORM OF ANSWERS OF ONE OF THE PARTIES TO WRITTEN

16   INTERROGATORIES SUBMITTED BY THE OTHER SIDE.  THESE

17   ANSWERS WERE GIVEN IN WRITING AND UNDER OATH BEFORE

18   THE ACTUAL TRIAL IN RESPONSE TO QUESTIONS THAT WERE

19   SUBMITTED IN WRITING UNDER ESTABLISHED COURT

20   PROCEDURES.  YOU SHOULD CONSIDER THE ANSWERS,

21   INSOFAR AS POSSIBLE, IN THE SAME WAY AS IF THEY

22   WERE MADE FROM THE WITNESS STAND.

23          SOME WITNESSES, BECAUSE OF EDUCATION OR

24   EXPERIENCE, ARE PERMITTED TO STATE OPINIONS AND THE

25   REASONS FOR THOSE OPINIONS.

```
 1              OPINION TESTIMONY SHOULD BE JUDGED JUST
 2    LIKE ANY OTHER TESTIMONY.  YOU MAY ACCEPT IT OR
 3    REJECT IT, AND GIVE IT AS MUCH WEIGHT AS YOU THINK
 4    IT DESERVES, CONSIDERING THE WITNESS'S EDUCATION
 5    AND EXPERIENCE, THE REASONS GIVEN FOR THE OPINION,
 6    AND ALL THE OTHER EVIDENCE IN THE CASE.
 7              LANGUAGES OTHER THAN ENGLISH MAY BE USED
 8    DURING THIS TRIAL.  WITNESSES WHO DO NOT SPEAK
 9    ENGLISH OR ARE MORE PROFICIENT IN ANOTHER LANGUAGE
10    TESTIFY THROUGH AN OFFICIAL COURT INTERPRETER.
11              ALTHOUGH SOME OF YOU MAY KNOW KOREAN OR
12    JAPANESE, IT IS IMPORTANT THAT ALL JURORS CONSIDER
13    THE SAME EVIDENCE.  THEREFORE, YOU MUST ACCEPT THE
14    INTERPRETER'S TRANSLATION OF THE WITNESS'S
15    TESTIMONY.  YOU MUST DISREGARD ANY DIFFERENT
16    MEANING.
17              YOU MUST NOT MAKE ANY ASSUMPTIONS ABOUT A
18    WITNESS OR A PARTY BASED SOLELY UPON THE USE OF AN
19    INTERPRETER TO ASSIST THAT WITNESS OR PARTY.
20              FROM TIME TO TIME DURING THE TRIAL, IT
21    MAY BECOME NECESSARY FOR ME TO TALK WITH THE
22    ATTORNEYS OUT OF THE HEARING OF THE JURY, EITHER BY
23    HAVING A CONFERENCE AT THE BENCH WHEN THE JURY IS
24    PRESENT IN THE COURTROOM, OR BY CALLING A RECESS.
25              PLEASE UNDERSTAND THAT WHILE YOU ARE
```

```
 1    WAITING, WE ARE WORKING.

 2             THE PURPOSE OF THESE CONFERENCES IS NOT

 3    TO KEEP RELEVANT INFORMATION FROM YOU, BUT TO

 4    DECIDE HOW CERTAIN EVIDENCE IS TO BE TREATED UNDER

 5    THE RULES OF EVIDENCE AND TO AVOID CONFUSION AND

 6    ERROR.

 7             OF COURSE WE WILL DO WHAT WE CAN TO KEEP

 8    THE NUMBER AND LENGTH OF THESE CONFERENCES TO A

 9    MINIMUM.

10             I MAY NOT ALWAYS GRANT AN ATTORNEY'S

11    REQUEST FOR A CONFERENCE.  DO NOT CONSIDER MY

12    GRANTING OR DENYING A REQUEST FOR A CONFERENCE AS

13    ANY INDICATION OF MY OPINION OF THE CASE OR OF WHAT

14    YOUR VERDICT SHOULD BE.

15             THIS CASE INVOLVES DISPUTES RELATING TO

16    UNITED STATES UTILITY AND DESIGN PATENTS.  BEFORE

17    SUMMARIZING THE POSITIONS OF THE PARTIES AND THE

18    LEGAL ISSUES INVOLVED IN THE DISPUTE, LET ME TAKE A

19    MOMENT TO EXPLAIN WHAT PATENTS ARE AND HOW THEY ARE

20    OBTAINED.

21             PATENTS ARE GRANTED BY THE UNITED STATES

22    PATENT AND TRADEMARK OFFICE, SOMETIMES CALLED THE

23    "PTO."

24             THERE ARE TWO TYPES OF BASIC PATENTS IN

25    THE UNITED STATES:  UTILITY PATENTS AND DESIGN
```

1    PATENTS.

2         IN GENERAL TERMS, A "UTILITY PATENT"

3    PROTECTS THE WAY AN ARTICLE IS USED AND WORKS.  IT

4    ALSO PROTECTS A METHOD OR PROCESS OF MAKING OR

5    DOING SOMETHING.

6         ON THE OTHER HAND, A "DESIGN PATENT"

7    PROTECTS THE WAY AN ART LOOKS.  A DESIGN PATENT

8    PROTECTS THE ORNAMENTAL DESIGN OF AN ARTICLE OF

9    MANUFACTURE.  ORNAMENTAL DESIGN MEANS THE SHAPE OF

10   THE DESIGN AND/OR THE SURFACE DECORATION ON THE

11   DESIGN.

12        A VALID UNITED STATES PATENT GIVES THE

13   PATENT OWNER THE RIGHT TO PREVENT OTHERS FROM

14   MAKING, USING, OFFERING TO SELL, OR SELLING THE

15   PATENTED INVENTION WITHIN THE UNITED STATES, OR

16   FROM IMPORTING IT INTO THE UNITED STATES, DURING

17   THE TERM OF THE PATENT WITHOUT THE PATENT HOLDER'S

18   PERMISSION.

19        A VIOLATION OF THE PATENT OWNER'S RIGHTS

20   IS CALLED INFRINGEMENT.  THE PATENT OWNER MAY TRY

21   TO ENFORCE A PATENT AGAINST PERSONS BELIEVED TO BE

22   INFRINGERS BY A LAWSUIT FILED IN FEDERAL COURT.

23        A PATENT INCLUDES WHAT IS CALLED A

24   "SPECIFICATION."  FOR A UTILITY PATENT, THE

25   SPECIFICATION MUST CONTAIN A WRITTEN DESCRIPTION OF

1    THE CLAIMED INVENTION TELLING WHAT THE INVENTION

2    IS, HOW IT WORKS, HOW TO MAKE IT, AND HOW TO USE IT

3    SO OTHERS SKILLED IN THE FIELD WILL KNOW HOW TO

4    MAKE OR USE IT.

5              THE SPECIFICATION CONCLUDES WITH ONE OR

6    MORE NUMBERED SENTENCES.  THESE ARE THE PATENT

7    "CLAIMS."

8              WHEN THE PATENT IS EVENTUALLY GRANTED BY

9    THE PTO, THE CLAIMS DEFINE THE BOUNDARIES OF ITS

10   PROTECTION AND GIVE NOTICE TO THE PUBLIC OF THOSE

11   BOUNDARIES.

12             FOR A DESIGN PATENT, THE SPECIFICATION

13   MUST CONTAIN ONE OR MORE DRAWINGS OF THE DESIGNS,

14   AS WELL AS A DESCRIPTION OF THE DRAWINGS, AND IT

15   SERVES AS A SINGLE CLAIM.  THE "CLAIM" FOR DESIGN

16   PATENTS GENERALLY REFERS TO THE DRAWINGS AND HOW

17   THEY ARE DESCRIBED.

18             THE PROCESS OF OBTAINING A PATENT IS

19   CALLED PATENT PROSECUTION.  TO OBTAIN A PATENT, ONE

20   MUST FILE AN APPLICATION WITH THE PTO.  THE PTO IS

21   AN AGENCY OF THE FEDERAL GOVERNMENT AND EMPLOYS

22   TRAINED EXAMINERS WHO REVIEW APPLICATIONS FOR

23   PATENTS.

24             AFTER THE APPLICANT FILES THE

25   APPLICATION, A PTO EXAMINER REVIEWS THE PATENT

1    APPLICATION TO DETERMINE WHETHER THE CLAIMS ARE

2    PATENTABLE AND WHETHER THE SPECIFICATION ADEQUATELY

3    DESCRIBES THE INVENTION CLAIMED.

4         IN EXAMINING A PATENT APPLICATION, THE

5    PATENT EXAMINER REVIEWS RECORDS AVAILABLE TO THE

6    PTO FOR WHAT IS REFERRED TO AS "PRIOR ART."

7         THE EXAMINER ALSO WILL REVIEW PRIOR ART

8    IF IT IS SUBMITTED TO THE PTO BY THE APPLICANT.

9         PRIOR ART IS DEFINED BY LAW, AND I WILL

10   GIVE YOU AT A LATER TIME SPECIFIC INSTRUCTIONS AS

11   TO WHAT CONSTITUTES PRIOR ART.

12        HOWEVER, IN GENERAL, PRIOR ART INCLUDES

13   THINGS THAT EXISTED BEFORE THE CLAIMED INVENTION,

14   THAT WERE PUBLICLY KNOWN, OR USED IN A PUBLICLY

15   ACCESSIBLE WAY IN THIS COUNTRY, OR THAT WERE

16   PATENTED OR DESCRIBED IN A PUBLICATION IN ANY

17   COUNTRY.

18        THE EXAMINER CONSIDERS, AMONG OTHER

19   THINGS, WHETHER EACH CLAIM DEFINES AN INVENTION

20   THAT IS NEW, USEFUL, AND NOT OBVIOUS IN VIEW OF THE

21   PRIOR ART.  A PATENT LISTS THE PRIOR ART THAT THE

22   EXAMINER CONSIDERED; THIS LIST IS CALLED THE "CITED

23   REFERENCES."

24        AFTER THE PRIOR ART SEARCH AND

25   EXAMINATION OF THE APPLICATION, THE PATENT EXAMINER

 1    THEN INFORMS THE APPLICANT IN WRITING WHAT THE

 2    EXAMINER HAS FOUND AND WHETHER ANY CLAIM IS

 3    PATENTABLE, AND THUS WILL BE "ALLOWED."  THIS

 4    WRITING FROM THE PATENT EXAMINER IS CALLED AN

 5    "OFFICE ACTION."

 6          IF THE EXAMINER REJECTS THE CLAIMS, THE

 7    APPLICANT THEN RESPONDS AND SOMETIMES CHANGES THE

 8    CLAIMS OR SUBMITS NEW CLAIMS.

 9          THIS PROCESS, WHICH TAKES PLACE ONLY

10    BETWEEN THE EXAMINER AND THE PATENT APPLICANT, MAY

11    GO BACK AND FORTH FOR SOME TIME UNTIL THE EXAMINER

12    IS SATISFIED THAT THE APPLICATION AND CLAIMS MEET

13    THE REQUIREMENTS FOR A PATENT.  THE PAPERS

14    GENERATED DURING THIS TIME OF COMMUNICATION BACK

15    AND FORTH BETWEEN THE PATENT EXAMINER AND THE

16    APPLICANT MAKE UP WHAT IS CALLED THE "PROSECUTION

17    HISTORY."

18          ALL OF THIS MATERIAL BECOMES AVAILABLE TO

19    THE PUBLIC NO LATER THAN THE DATE WHEN THE PATENT

20    ISSUES.

21          THE FACT THAT THE PTO GRANTS A PATENT

22    DOES NOT NECESSARILY MEAN THAT ANY INVENTION

23    CLAIMED IN THE PATENT, IN FACT, DESERVES THE

24    PROTECT OF A PATENT.  FOR EXAMPLE, THE PTO MAY NOT

25    HAVE HAD AVAILABLE TO IT ALL THE INFORMATION THAT

```
 1    WILL BE PRESENTED TO YOU.

 2              A PERSON ACCUSED OF INFRINGEMENT HAS THE

 3    RIGHT TO ARGUE HERE IN FEDERAL COURT THAT A CLAIMED

 4    INVENTION IN THE PATENT IS INVALID BECAUSE IT DOES

 5    NOT MEET THE REQUIREMENTS FOR A PATENT.

 6              THERE ARE NINE UTILITY PATENTS ASSERTED

 7    IN THIS CASE.  APPLE ACCUSES SAMSUNG OF INFRINGING

 8    UNITED STATES PATENT NUMBERS 7,469,381; 7,844,915;

 9    AND 7,864,163.  UTILITY PATENTS ARE OFTEN REFERRED

10    TO BY THEIR LAST THREE DIGITS, SO APPLE'S UTILITY

11    PATENTS MAY BE REFERRED TO IN THE SHORTHAND AS THE

12    '381, '915 AND '163 PATENTS.

13              SAMSUNG ACCUSES APPLE OF INFRINGING

14    UNITED STATES PATENT NUMBERS 7,675,941; 7,447,516;

15    7,698,711; 7,577,460; AND 7,456,893.  SAMSUNG'S

16    UTILITY PATENTS MAY BE REFERRED TO IN SHORTHAND AS

17    THE '941; THE '516; THE '711, THE '460, AND THE

18    '893 PATENTS.

19              THERE ARE FOUR DESIGN PATENTS ASSERTED IN

20    THIS CASE.

21              APPLE ACCUSES SAMSUNG OF INFRINGING FOUR

22    DESIGN PATENTS.  THEY ARE UNITED STATES PATENT

23    NUMBERS D504,889, D593,087, D618,677, AND D604,305.

24              DESIGN PATENTS ARE OFTEN REFERRED TO BY

25    THEIR LAST THREE DIGITS, SO THE DESIGN PATENTS HERE
```

```
1     MAY BE REFERRED TO BY THEIR LAST THREE DIGITS, SO

2     THE DESIGN PATENTS HERE MAY BE REFERRED TO IN

3     SHORTHAND AS THE D'889, D'087, D'677, AND D'305

4     PATENTS.

5              TO HELP YOU FOLLOW THE EVIDENCE, I WILL

6     NOW GIVE YOU A SUMMARY OF THE POSITIONS OF THE

7     PARTIES WITH RESPECT TO THE PATENT CLAIMS.

8              THE PARTIES IN THIS CASE ARE APPLE,

9     INCORPORATED, WHICH WE WILL REFER TO AS "APPLE,"

10    AND SAMSUNG ELECTRONICS COMPANY LIMITED, SAMSUNG

11    ELECTRONICS AMERICA INCORPORATED, AND SAMSUNG

12    TELECOMMUNICATIONS AMERICA, A LIMITED LIABILITY

13    CORPORATION, LLC, WHICH I WILL REFER TO

14    COLLECTIVELY AS "SAMSUNG" UNLESS I THINK IT IS

15    IMPORTANT TO DISTINGUISH BETWEEN THESE ENTITIES FOR

16    THE PURPOSE OF A SPECIFIC INSTRUCTION.

17             YOU MUST DECIDE THE CASE AS TO SAMSUNG

18    ELECTRONICS COMPANY, SAMSUNG ELECTRONICS AMERICA,

19    AND SAMSUNG TELECOMMUNICATIONS AMERICA SEPARATELY

20    REGARDLESS OF WHETHER I REFER TO THEM COLLECTIVELY

21    AS "SAMSUNG" OR INDIVIDUALLY.

22             THE CASE INVOLVES THREE UNITED STATES

23    UTILITY PATENTS AND FOUR UNITED STATES DESIGN

24    PATENTS OWNED BY APPLE, AND FIVE UNITED STATES

25    UTILITY PATENTS OWNED BY SAMSUNG.
```

```
1              APPLE FILED THIS LAWSUIT AGAINST SAMSUNG
2     SEEKING MONEY DAMAGES FROM SAMSUNG FOR ALLEGEDLY
3     INFRINGING THE '381, '915, '163, D'889, D'087,
4     D'677, AND D'305 PATENTS BY MAKING, IMPORTING,
5     USING, SELLING AND/OR OFFERING FOR SALE THE TABLET
6     AND SMARTPHONE PRODUCTS THAT APPLE ARGUES ARE
7     COVERED BY CLAIM 19 OF THE '381 PATENT, CLAIM 8 OF
8     THE '915 PATENT, CLAIM 50 OF THE '163 PATENT, AND
9     THE D'889, D'087, D'677, AND D'305 PATENTS.
10             APPLE ALSO ARGUES THAT SAMSUNG'S KOREAN
11    PARENT, SAMSUNG ELECTRONICS COMPANY, ACTIVELY
12    INDUCED THE U.S. SAMSUNG ENTITIES, SAMSUNG
13    ELECTRONICS AMERICA, INC., AND SAMSUNG
14    TELECOMMUNICATIONS AMERICA LLC, TO INFRINGE.
15             APPLE CONTENDS THAT SAMSUNG'S
16    INFRINGEMENT HAS BEEN WILLFUL.
17             SAMSUNG DENIES THAT IT HAS INFRINGED THE
18    CLAIMS AND PATENTS AND ARGUES THAT, IN ADDITION,
19    THE CLAIMS ARE INVALID.  INVALIDITY IS A DEFENSE TO
20    INFRINGEMENT.
21             SAMSUNG HAS ALSO BROUGHT CLAIMS AGAINST
22    APPLE FOR PATENT INFRINGEMENT.  SAMSUNG SEEKS MONEY
23    DAMAGES FROM APPLE FOR ALLEGEDLY INFRINGING THE
24    '941, THE '516, '711, '460, AND '893 PATENTS BY
25    MAKING, IMPORTING, USING, SELLING AND/OR OFFERING
```

```
 1    FOR SALE APPLE'S IPHONE, IPAD, AND IPOD PRODUCTS
 2    THAT SAMSUNG ARGUES ARE COVERED BY CLAIMS 10 AND 15
 3    OF THE '941 PATENT, CLAIMS 15 AND 16 OF THE '516
 4    PATENT, CLAIM 9 OF THE '711 PATENT, CLAIM 1 OF THE
 5    '460 PATENT, AND CLAIM 10 OF THE '893 PATENT.
 6              SAMPLE ALSO CONTENDS THAT APPLE'S
 7    INFRINGEMENT HAS BEEN WILLFUL.
 8              APPLE DENIES THAT IT HAS INFRINGED THE
 9    CLAIMS ASSERTED BY SAMSUNG AND ARGUES THAT THE
10    CLAIMS ASSERTED BY SAMSUNG ARE INVALID AND, FOR THE
11    '516 AND '941 PATENTS, ALSO UNENFORCEABLE.
12    INVALIDITY AND UNENFORCEABILITY ARE DEFENSES TO
13    INFRINGEMENT.
14              FOR EACH PARTY'S PATENT INFRINGEMENT
15    CLAIMS AGAINST THE OTHER, THE FIRST ISSUE YOU WILL
16    BE ASKED TO DECIDE IS WHETHER THE ALLEGED INFRINGER
17    HAS INFRINGED THE CLAIMS OF THE PATENT HOLDER'S
18    PATENTS AND WHETHER THOSE PATENTS ARE VALID.
19              IF YOU DECIDE THAT ANY CLAIM OF EITHER
20    PARTY'S PATENTS HAS BEEN INFRINGED AND IS NOT
21    INVALID, YOU WILL THEN NEED TO DECIDE ANY MONEY
22    DAMAGES TO BE AWARDED TO THE PATENT HOLDER TO
23    COMPENSATE IT FOR THE INFRINGEMENT.
24              YOU WILL ALSO NEED TO MAKE A FINDING AS
25    TO WHETHER THE INFRINGEMENT WAS WILLFUL.  IF YOU
```

1    DECIDE THAT ANY INFRINGEMENT WAS WILLFUL, THAT

2    DECISION SHOULD NOT AFFECT ANY DAMAGES AWARD YOU

3    GIVE.  I WILL TAKE WILLFULNESS INTO ACCOUNT LATER.

4          BEFORE YOU DECIDE WHETHER EITHER PARTY

5    HAS INFRINGED THE OTHER'S PATENTS, OR WHETHER THOSE

6    PATENTS ARE INVALID, YOU WILL NEED TO UNDERSTAND

7    THE PATENT CLAIMS.

8          AS I MENTIONED, THE PATENT CLAIMS FOR

9    UTILITY PATENTS ARE NUMBERED SENTENCES AT THE END

10   OF THE PATENT THAT DESCRIBE THE BOUNDARIES OF THE

11   PATENT'S PROTECTION.  THE PATENT CLAIMS FOR DESIGN

12   PATENTS ARE THE DRAWINGS AND DESCRIPTIONS OF THE

13   DRAWINGS.  IT IS MY JOB AS JUDGE TO EXPLAIN TO YOU

14   THE MEANING OF ANY LANGUAGE IN THE CLAIMS THAT

15   NEEDS INTERPRETATION.

16         I HAVE ALREADY DETERMINED THE MEANING OF

17   CERTAIN TERMS OF THE CLAIMS OF SOME OF THE PATENTS

18   AT ISSUE.  YOU WILL BE ASKED TO APPLY MY

19   DEFINITIONS OF THESE TERMS IN THIS CASE.

20         HOWEVER, MY INTERPRETATION OF THE

21   LANGUAGE OF THE CLAIMS SHOULD NOT BE TAKEN AS AN

22   INDICATION THAT I HAVE A VIEW REGARDING ISSUES SUCH

23   AS INFRINGEMENT AND INVALIDITY.  THOSE ISSUES ARE

24   YOURS TO DECIDE.

25         I WILL PROVIDE YOU WITH MORE DETAILED

1    INSTRUCTIONS ON THE MEANING OF THE CLAIMS BEFORE

2    YOU RETIRE TO DELIBERATE YOUR VERDICT.

3              JUST A FEW MORE INSTRUCTIONS.

4              THIS CASE ALSO INVOLVES DISPUTES RELATING

5    TO TRADE DRESS.  APPLE SEEKS DAMAGES FROM SAMSUNG

6    FOR TRADE DRESS INFRINGEMENT AND TRADE DRESS

7    DILUTION.  SAMSUNG DENIES THAT ITS PRODUCTS

8    INFRINGE OR DILUTE APPLE'S TRADE DRESS AND CONTENDS

9    THE TRADE DRESS IS INVALID.

10             TO HELP YOU UNDERSTAND THE EVIDENCE THAT

11   WILL BE PRESENTED IN THIS CASE, I WILL EXPLAIN WHAT

12   A TRADE DRESS IS, AND I WILL GIVE YOU A SUMMARY OF

13   THE POSITIONS OF THE PARTIES.

14             TRADE DRESS IS THE NON-FUNCTIONAL

15   PHYSICAL DETAIL AND DESIGN OF A PRODUCT, WHICH

16   IDENTIFIES THE PRODUCT'S SOURCE AND DISTINGUISHES

17   IT FROM THE PRODUCTS OF OTHERS.  TRADE DRESS IS THE

18   PRODUCT'S TOTAL IMAGE AND OVERALL APPEARANCE, AND

19   MAY INCLUDE FEATURES SUCH AS SIZE, SHAPE, COLOR,

20   COLOR COMBINATIONS, TEXTURE, OR GRAPHICS.

21             IN OTHER WORDS, TRADE DRESS IS THE FORM

22   IN WHICH A PERSON PRESENTS A PRODUCT OR SERVICE TO

23   THE MARKET, ITS MANNER OF DISPLAY.

24             A TRADE DRESS IS NON-FUNCTIONAL IF, TAKEN

25   AS A WHOLE, THE COLLECTION OF TRADE DRESS ELEMENTS

```
 1     IS NOT ESSENTIAL TO THE PRODUCT'S USE OR PURPOSE OR

 2     DOES NOT AFFECT THE TOTAL COST OR QUALITY OF THE

 3     PRODUCT EVEN THOUGH CERTAIN PARTICULAR ELEMENTS OF

 4     THE TRADE DRESS MAY BE FUNCTIONAL.

 5            TRADE DRESS CONCERNS THE OVERALL VISUAL

 6     IMPRESSION CREATED IN THE CONSUMER'S MIND --

 7     CREATED IN THE CONSUMER'S MIND WHEN VIEWING THE

 8     NON-FUNCTIONAL ASPECTS OF THE PRODUCT AND NOT FROM

 9     THE UTILITARIAN OR USEFUL ASPECTS OF THE PRODUCT.

10            IN CONSIDERING THE IMPACT OF THESE

11     NON-FUNCTIONAL ASPECTS, WHICH ARE OFTEN A COMPLEX

12     COMBINATION OF MANY FEATURES, YOU MUST CONSIDER THE

13     APPEARANCE OF FEATURES TOGETHER, RATHER THAN

14     SEPARATELY.

15            A PERSON ACQUIRES THE RIGHT TO EXCLUDE

16     OTHERS FROM USING A TRADE DRESS BY BEING THE FIRST

17     TO USE IT IN THE MARKETPLACE, OR BY USING IT BEFORE

18     THE ALLEGED INFRINGER.

19            THE OWNER OF A VALID TRADE DRESS HAS THE

20     RIGHT TO PREVENT OTHERS FROM "DILUTING" OR

21     "INFRINGING" IT.  "DILUTION" REFERS TO REDUCING THE

22     CAPACITY OF THE FAMOUS TRADE DRESS TO IDENTIFY AND

23     DISTINGUISH PRODUCTS OR SERVICES.  "INFRINGEMENT"

24     REFERS TO ANOTHER COMPANY'S USE SIMILAR TO THE

25     OWNER'S TRADE DRESS THAT IS LIKELY TO CAUSE
```

```
1     CONFUSION IN THE MARKETPLACE.  RIGHTS IN TRADE

2     DRESS ARE OBTAINED ONLY THROUGH COMMERCIAL USE OF A

3     TRADE DRESS.

4              APPLE ACCUSES SAMSUNG OF DILUTING APPLE'S

5     REGISTERED TRADE DRESS NUMBER 3,470,983.  THIS

6     TRADE DRESS RELATES TO THE IPHONE.

7              APPLE ALSO ACCUSES SAMSUNG OF DILUTING

8     TWO UNREGISTERED TRADE DRESSES RELATED TO THE

9     IPHONE.

10             FINALLY, APPLE CLAIMS THAT SAMSUNG HAS

11    DILUTED AND INFRINGED ITS UNREGISTERED TRADE DRESS

12    RELATING TO THE IPAD.

13             FOR EACH OF APPLE'S TRADE DRESS DILUTION

14    AND INFRINGEMENT CLAIMS, THE FIRST ISSUE YOU WILL

15    HAVE TO DECIDE IS WHETHER THE APPLE TRADE DRESS IS

16    PROTECTABLE.  AN ASSERTED TRADE DRESS IS ONLY

17    PROTECTABLE IF THE TRADE DRESS AS A WHOLE IS BOTH

18    DISTINCTIVE AND NON-FUNCTIONAL.

19             FOR APPLE'S DILUTION CLAIMS, THE NEXT

20    ISSUES YOU WILL DECIDE ARE WHETHER APPLE'S TRADE

21    DRESS WAS FAMOUS BEFORE SAMSUNG STARTED SELLING ITS

22    ACCUSED PRODUCTS, AND WHETHER SAMSUNG'S ACCUSED

23    PRODUCTS ARE LIKELY TO CAUSE DILUTION OF THE

24    ASSERTED APPLE TRADE DRESSES.

25             APPLE'S TRADE DRESS INFRINGEMENT CLAIM
```

1    WILL REQUIRE YOU TO RESOLVE DIFFERENT ISSUES.  YOU

2    WILL NEED TO DETERMINE WHETHER APPLE'S TRADE DRESS

3    HAD ACQUIRED DISTINCTIVENESS BEFORE SAMSUNG STARTED

4    SELLING ITS ACCUSED PRODUCTS AND WHETHER SAMSUNG'S

5    ACCUSED PRODUCTS ARE LIKELY TO CAUSE CONFUSION

6    ABOUT THE SOURCE OF APPLE'S OR SAMSUNG'S GOODS.

7             IF YOU DECIDE THAT ANY PROTECTABLE APPLE

8    TRADE DRESS HAS BEEN INFRINGED OR WILLFULLY DILUTED

9    BY SAMSUNG, YOU WILL THEN NEED TO DECIDE THE MONEY

10   DAMAGES TO BE AWARDED TO APPLE.

11            SAMSUNG DENIES THAT IT HAS INFRINGED OR

12   DILUTED ANY APPLE TRADE DRESS AND ARGUES THAT EACH

13   ASSERTED TRADE DRESS IS NOT PROTECTABLE.

14            IF A TRADE DRESS IS NOT PROTECTABLE, THAT

15   IS A DEFENSE TO INFRINGEMENT AND DILUTION.

16            I WILL GIVE YOU MORE DETAILED

17   INSTRUCTIONS ON ALL OF THESE ISSUES AT THE

18   CONCLUSION OF THE CASE.

19            ALL RIGHT.  LAST TWO INSTRUCTIONS.

20            APPLE HAS ALSO BROUGHT COUNTERCLAIMS

21   AGAINST SAMSUNG WITH RESPECT TO TWO PATENTS THAT

22   SAMSUNG DECLARED TO AN INTERNATIONAL STANDARD

23   SETTING ORGANIZE CALLED THE EUROPEAN

24   TELECOMMUNICATION STANDARDS INSTITUTE, "ETSI," TO

25   BE ESSENTIAL TO THE USE OF CERTAIN INDUSTRY

```
 1    STANDARDS FOR WIRELESS TECHNOLOGIES, AND THEN

 2    ASSERTED AGAINST APPLE.

 3            THESE "DECLARED ESSENTIAL" PATENTS

 4    INCLUDE SAMSUNG'S '516 AND '941 PATENTS WHICH I

 5    HAVE ALREADY DESCRIBED TO YOU.

 6            APPLE CONTENDS THAT, BY ASSERTING THESE

 7    PATENTS AGAINST APPLE, SAMSUNG BOTH VIOLATED THE

 8    ANTITRUST LAWS AND BREACHED ITS CONTRACTUAL

 9    OBLIGATIONS TO TIMELY DISCLOSE AND THEN LICENSE

10    THESE PATENTS ON FAIR AND REASONABLE TERMS.

11            APPLE ALSO CONTENDS THAT SAMSUNG'S '516

12    AND '941 PATENTS ARE UNENFORCEABLE AS A RESULT OF

13    THIS CONDUCT.

14            SAMSUNG DENIES THAT IT HAS VIOLATED THE

15    ANTITRUST LAWS OR BREACHED ANY CONTRACTUAL

16    OBLIGATIONS.

17            FOR APPLE'S ALLEGATIONS REGARDING THESE

18    PATENTS, YOUR JOB WILL BE TO DECIDE WHETHER SAMSUNG

19    VIOLATED THE ANTITRUST LAWS AND WHETHER SAMSUNG

20    BREACHED ITS CONTRACTUAL OBLIGATIONS.

21            IF YOU DECIDE THAT SAMSUNG DID SO, YOU

22    WILL THEN NEED TO DECIDE WHAT MONEY DAMAGES TO

23    AWARD TO APPLE.

24            YOU WILL ALSO BE ASKED TO DECIDE WHETHER

25    SAMSUNG'S CONDUCT BARS SAMSUNG FROM ENFORCING THESE
```

1    PATENTS AGAINST APPLE.

2              THE TRIAL WILL NOW BEGIN.  FIRST, EACH

3    SIDE MAY MAKE AN OPENING STATEMENT.  AN OPENING

4    STATEMENT IS NOT EVIDENCE.  IT IS SIMPLY AN OUTLINE

5    TO HELP YOU UNDERSTAND WHAT THAT PARTY EXPECTS THE

6    EVIDENCE WILL SHOW.

7              THE PRESENTATION OF EVIDENCE WILL THEN

8    BEGIN.  WITNESSES WILL TAKE THE WITNESS STAND AND

9    THE DOCUMENTS WILL BE OFFERED AND ADMITTED INTO

10   EVIDENCE.

11             THERE TWO STANDARDS OF PROOF THAT YOU

12   WILL APPLY TO THE EVIDENCE DEPENDING ON THE ISSUE

13   YOU ARE DECIDING.  ON SOME ISSUES, YOU MUST DECIDE

14   WHETHER SOMETHING IS MORE LIKELY TRUE THAN NOT.  ON

15   OTHER ISSUES, YOU MUST USE A HIGHER STANDARD AND

16   DECIDE WHETHER IT IS HIGHLY PROBABLE THAT SOMETHING

17   IS TRUE.

18             APPLE WILL START BY PRESENTING ITS

19   EVIDENCE ON ITS CONTENTIONS THAT SAMSUNG HAS

20   INFRINGED APPLE'S UTILITY AND DESIGN PATENTS, THAT

21   SAMSUNG HAS DILUTED AND INFRINGED APPLE'S IPHONE

22   AND IPAD RELATED TRADE DRESSES, AND THAT SAMSUNG'S

23   INFRINGEMENT AND DILUTION HAVE BEEN WILLFUL.

24             THESE WITNESSES WILL BE QUESTIONED BY

25   APPLE'S COUNSEL IN WHAT IS CALLED DIRECT

1    EXAMINATION.  AFTER THE DIRECT EXAMINATION OF A

2    WITNESS IS COMPLETED, SAMSUNG HAS AN OPPORTUNITY TO

3    CROSS-EXAMINE THE WITNESS.

4           TO PROVE INFRINGEMENT OF ANY CLAIM, APPLE

5    MUST PERSUADE YOU THAT IT IS MORE LIKELY THAN NOT

6    THAT SAMSUNG HAS INFRINGED OR DILUTED APPLE'S

7    PATENTS OR TRADE DRESSES.

8           AFTER APPLE HAS PRESENTED ITS WITNESSES,

9    SAMSUNG WILL CALL ITS WITNESSES, WHO WILL ALSO BE

10   EXAMINED AND CROSS-EXAMINED.  SAMSUNG WILL PRESENT

11   ITS EVIDENCE ON ITS CONTENTIONS THAT APPLE HAS

12   INFRINGED SAMSUNG'S UTILITY PATENTS.

13          TO PROVE INFRINGEMENT OF ANY CLAIM,

14   SAMSUNG MUST PERSUADE YOU THAT IT IS MORE LIKELY

15   THAN NOT THAT APPLE HAS INFRINGED SAMSUNG'S

16   PATENTS.

17          SAMSUNG WILL ALSO PRESENT ITS EVIDENCE

18   THAT ASSERTED CLAIMS OF APPLE'S UTILITY AND DESIGN

19   PATENTS ARE INVALID.

20          TO PROVE INVALIDITY OF ANY CLAIM, SAMSUNG

21   MUST PERSUADE YOU THAT IT IS HIGHLY PROBABLE THAT

22   THE CLAIM IS INVALID.

23          SAMSUNG WILL ALSO PRESENT EVIDENCE THAT

24   THE APPLE TRADE DRESSES ARE INVALID.

25          APPLE WILL THEN RETURN AND WILL PUT ON

```
 1    EVIDENCE RESPONDING TO SAMSUNG'S CONTENTION THAT

 2    THE APPLE PATENTS AND TRADE DRESSES ARE INVALID.

 3              APPLE THEN WILL PRESENT ITS

 4    NON-INFRINGEMENT AND INVALIDITY DEFENSES ON

 5    SAMSUNG'S UTILITY PATENTS.

 6              TO PROVE INVALIDITY OF ANY CLAIM, APPLE

 7    MUST PERSUADE YOU THAT IT IS HIGHLY PROBABLE THAT

 8    THE CLAIM IS INVALID.

 9              APPLE WILL FURTHER PRESENT ITS EVIDENCE

10    OF ITS PATENT EXHAUSTION DEFENSE AND ITS DEFENSE

11    THAT SAMSUNG'S CONDUCT WITH RESPECT TO STANDARD

12    SETTING ORGANIZATIONS RENDERED ITS PATENTS

13    UNENFORCEABLE OR GIVES APPLE A RIGHT TO A LICENSE.

14              APPLE WILL ALSO PRESENT ITS EVIDENCE THAT

15    SAMSUNG ENGAGED IN BREACH OF CONTRACT OR VIOLATED

16    ANTITRUST LAW.

17              TO PROVE THAT SAMSUNG'S PATENT RIGHTS ARE

18    UNENFORCEABLE DUE TO EXHAUSTION, APPLE MUST

19    DEMONSTRATE THAT IT IS MORE LIKELY THAN NOT THAT

20    SAMSUNG EXHAUSTED ITS PATENT RIGHTS.

21              APPLE MUST PROVE THAT IT IS HIGHLY

22    PROBABLE THAT SAMSUNG WAIVED ITS RIGHTS TO ENFORCE

23    CERTAIN OF ITS PATENTS IN CONNECTION WITH ITS

24    STANDARDS-RELATED CONDUCT OR ITS ASSERTION OF

25    PATENTS THAT IT HAS DECLARED ESSENTIAL TO INDUSTRY
```

1    STANDARDS.

2            APPLE MUST PROVE BY A PREPONDERANCE OF

3    THE EVIDENCE THAT SAMSUNG HAS VIOLATED THE

4    ANTITRUST LAW IN CONNECTION WITH THE SAME

5    STANDARDS-RELATED CONDUCT.

6            FINALLY, SAMSUNG WILL HAVE THE OPTION TO

7    PUT ON REBUTTAL EVIDENCE TO ANY EVIDENCE OFFERED BY

8    APPLE ON THE VALIDITY OF SAMSUNG'S PATENTS.

9            SAMSUNG WILL ALSO PRESENT ITS EVIDENCE

10   RESPONDING TO APPLE'S PATENT EXHAUSTION DEFENSE AND

11   APPLE'S DEFENSES RELATING TO SAMSUNG'S

12   STANDARDS-SETTING CONDUCT.

13           SAMSUNG WILL ALSO PRESENT EVIDENCE

14   RESPONDING TO APPLE'S CONTRACT AND ANTITRUST

15   CLAIMS.

16           BECAUSE THE EVIDENCE IS INTRODUCED

17   PIECEMEAL, YOU NEED TO KEEP AN OPEN MIND AS THE

18   EVIDENCE COMES IN AND WAIT FOR ALL THE EVIDENCE

19   BEFORE YOU MAKE ANY DECISIONS.  IN OTHER WORDS, YOU

20   SHOULD KEEP AN OPEN MIND THROUGHOUT THE ENTIRE

21   TRIAL.

22           AFTER THE EVIDENCE HAS BEEN PRESENTED, I

23   WILL GIVE YOU FINAL INSTRUCTIONS ON THE LAW THAT

24   APPLIES TO THE CASE AND THE ATTORNEYS WILL MAKE

25   CLOSING ARGUMENTS.  CLOSING ARGUMENTS ARE NOT

1    EVIDENCE.

2              AFTER THE INSTRUCTIONS AND CLOSING

3    ARGUMENTS, YOU WILL THEN DECIDE THE CASE.

4              ALL RIGHT.  SO WHAT IS GOING TO HAPPEN

5    TOMORROW, WE'LL START AT 9:00 O'CLOCK AND YOU WILL

6    BE SHOWN A VIDEO ABOUT PATENTS THAT'S PRODUCED BY

7    THE FEDERAL JUDICIAL CENTER.  IT'S ABOUT AN 18

8    MINUTE LONG VIDEO.

9              AFTER THAT I WILL READ A SHORT STATEMENT

10   TO ACCOMPANY THAT VIDEO AND THEN YOU'LL HEAR

11   OPENING STATEMENTS FROM THE PARTIES.

12             OKAY?  NOW, MS. PARKER BROWN HAS TO MEET

13   WITH YOU JUST A FEW MINUTES AND SHE'LL MEET WITH

14   YOU IN THE JURY ROOM.  YOU CAN CHECK IT OUT.  AND

15   SHE'LL GIVE YOU YOUR BADGES AND ALSO GIVE YOU

16   INFORMATION ABOUT HOW TO GET IN AND OUT OF THE

17   BUILDING.  BEFORE AND AFTER COURT, YOU'LL BE

18   REPORTING TO THE JURY ROOM.  OKAY?  THAT'S DIRECTLY

19   ATTACHED TO THIS COURTROOM.

20             SO THANK YOU AGAIN FOR YOUR SERVICE AND

21   YOUR PATIENCE.  YOU CAN GO AHEAD AND TAKE YOUR JURY

22   NOTEBOOKS AND JUST LEAVE THEM IN THE JURY ROOM.

23             AGAIN, PLEASE DO NOT DISCUSS THE CASE

24   WITH ANYONE.  DO NOT DO ANY RESEARCH OR

25   INVESTIGATION, NO TWEETING OR BLOGGING ABOUT THIS

```
 1    CASE.  ALL RIGHT?

 2               THANK YOU VERY MUCH.  WE'LL SEE YOU

 3    TOMORROW MORNING.

 4               (WHEREUPON, THE FOLLOWING PROCEEDINGS

 5    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

 6               THE COURT:  THE RECORD SHOULD REFLECT ALL

 7    THE JURORS HAVE LEFT THE COURTROOM.

 8               SO TOMORROW WE HAVE OUR 8:30 CONFERENCE

 9    AND I'LL RULE ON THE OUTSTANDING EVIDENTIARY

10    ISSUES.

11               BUT WE'LL BEGIN WITH THE FJC VIDEO, WHICH

12    YOU ALL ARE PROVIDED; CORRECT?

13               MR. JACOBS:  THAT'S RIGHT, YOUR HONOR.

14               THE COURT:  ALL RIGHT.  SO WE'LL BEGIN

15    WITH THAT, I'LL READ THE STATEMENT, AND THEN PLEASE

16    PROCEED WITH OPENING.

17               OKAY.  ANYTHING ELSE FOR TODAY?

18               MR. QUINN:  YOUR HONOR, THERE IS A SIGN

19    OUTSIDE THE ELEVATOR AND DOWNSTAIRS THAT SAYS

20    "APPLE VERSUS SAMSUNG."  I DON'T KNOW WHETHER

21    THAT'S GOING TO STAY UP.

22               THE COURT:  WELL, IT DEPENDS ON IF WE

23    NEED AN OVERFLOW ROOM TOMORROW.  I MEAN, BASED ON

24    HOW CROWDED TODAY IS, I THINK FOR TOMORROW FOR THE

25    OPENING STATEMENTS, WE'LL KEEP THE OVERFLOW ROOM
```

```
 1    RIGHT NEXT DOOR.

 2              MR. QUINN:  BUT DOWNSTAIRS IN THE LOBBY

 3    ON THE FIRST FLOOR, THERE'S A SIGN THAT SAYS "APPLE

 4    VERSUS SAMSUNG," AND I'M SUGGESTING MAYBE AT THIS

 5    POINT, WE DON'T NEED A SIGN AT ALL; BUT IF WE DO,

 6    IT ALSO SHOULD SAY "SAMSUNG VERSUS APPLE."

 7              IT'S THE FIRST THING THEY SEE AND THEN

 8    YOU SEE IT AGAIN WHEN YOU COME OFF THE ELEVATOR UP

 9    HERE.  IT JUST SAYS "APPLE VERSUS SAMSUNG."

10              THE COURT:  THAT'S FINE.  WE CAN CHANGE

11    THE SIGN.

12              MR. QUINN:  THANK YOU, YOUR HONOR.

13              THE COURT:  ALL RIGHT.  SO WE'LL HAVE AN

14    OVERFLOW ROOM TOMORROW AS WELL, AND THE OPENINGS,

15    THE LAWYERS ARE ACTUALLY GOING TO BE LIVE VIDEOED

16    INTO THE OVERFLOW ROOM.  OKAY.  AND THEN WE WON'T

17    HAVE AN OVERFLOW ROOM AFTER TOMORROW UNLESS THINGS

18    CHANGE.

19              ANYTHING ELSE?

20              MR. VERHOEVEN:  YOUR HONOR?

21              THE COURT:  YES.

22              MR. VERHOEVEN:  WE DID SUBMIT THE OFFER

23    OF PROOF AND MR. QUINN ACTUALLY WAS INVOLVED IN

24    PREPARING THIS SINCE WE WERE IN COURT TODAY.  I

25    DON'T KNOW IF YOU WANT TO HEAR ABOUT THAT NOW OR IN
```

```
1    THE MORNING.
2              THE COURT:  NO.  I'D LIKE TO BE ABLE TO
3    REVIEW EVERYTHING.  I DID SEE THAT IT WAS SUBMITTED
4    AT LUNCH TIME.
5              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
6              MR. QUINN:  THANK YOU, YOUR HONOR.
7              THE COURT:  ALL RIGHT.  THANK YOU ALL
8    VERY MUCH.
9              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
10             (WHEREUPON, THE EVENING RECESS WAS
11   TAKEN.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3

4                         CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20                    /S/

21                    _____
                      LEE-ANNE SHORTRIDGE, CSR, CRR
22                    CERTIFICATE NUMBER 9595

23

24                    DATED:  JULY 30, 2012

25