QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floorfdd
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S MOTION TO STRIKE APPLE INC.'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND PURPORTED RECOMMENDATION REGARDING SANCTION** |

02198.51855/4888530.1

Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     FACTUAL BACKGROUND ......................................................................................3

        A.      Samsung's Statement ......................................................................................3

        B.      The Information at Issue Was Publicly Disclosed Before Samsung's
                Disclosure To The Media ................................................................................4

        C.      The Media Has Previously Published Extensive Information About This
                Case, Much of Which Is Not Admissible .........................................................5

        D.      The Court Has Endorsed Public Disclosures of Pretrial and Trial
                Proceedings. ....................................................................................................7

        E.      Relevant Procedural Background ....................................................................8

III.    THE COURT SHOULD STRIKE APPLE'S "RECOMMENDATION" FOR
        FAILURE TO COMPLY WITH THE RULES GOVERNING MOTIONS FOR
        SANCTIONS ...........................................................................................................12

IV.     APPLE'S "RECOMMENDATION" IS IMPROPER UNDER THE FIRST
        AMENDMENT AND FAILS TO MEET THE REQUIREMENTS FOR AN
        INHERENT POWER DISMISSAL ............................................................................12

        A.      Apple's Attempts To Interfere With Samsung's First Amendment Rights
                Should Be Rejected Out of Hand ..................................................................12

        B.      Apple Ignores The Stringent Standards Governing Requests For Dismissal
                Under The Court's Inherent Powers ..............................................................14

        C.      There Is No Basis for Inherent Power Sanctions ...........................................15

                1.      Apple Has Not Shown That Samsung Engaged Deliberately In
                        Deceptive Practices .............................................................................15

                2.      Apple Has Not Shown That Samsung's Conduct Undermines The
                        Integrity Of This Court's Proceedings .................................................17

                3.      Apple Has Not Shown That Samsung Acted In Bad Faith .......................18

                4.      The Release Of Samsung's Statement Does Not Threaten To
                        Interfere With The Rightful Decision Of The Case ..............................19

                5.      None Of The *Leon* Factors Supports The Harsh Dismissal Sanction
                        Apple Seeks ........................................................................................19

V.      CONCLUSION .......................................................................................................21

02198.51855/4888530.1

-i-                                   Case No. 11-cv-01846-LHK (PSG)

SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION

# TABLE OF AUTHORITIES

**Page**

## Cases

*American Science and Engineering, Inc. v. Autoclear*,
   606 F. Supp. 2d 617 (E.D. Va. 2008)................................................................2, 16, 21

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
   69 F.3d 337 (9th Cir. 1995).......................................................................................14, 19

*Avago Technologies General IP Pte Ltd. v. Elan Microelectornics Corp.*,
   2007 WL 1449758 (N.D. Cal. May 15, 2007) .............................................................20

*Berndt v. Cal. Dep't of Corrections*,
   2004 WL 1774227 (N.D. Cal. Aug. 9, 2004) ...............................................................20

*Chambers v. Nasco, Inc.*,
   501 U.S. 32, 111 S. Ct. 2123 (1991) .......................................................................14, 15

*Christensen v. Stevedoring Services of America, Inc.*,
   430 F.3d 1032 (9th Cir. 2005)......................................................................................18

*Ciampi v. City of Palo Alto*,
   2011 WL 4915785 (N.D. Cal. 2011)............................................................................12

*Coleman-Hill v. Governor Mifflin Sch. Dist.*,
   2010 WL 5014352 (E.D. Pa. Dec. 2, 2010) ...............................................................20

*Constand v. Cosby*,
   229 F.R.D. 472 (E.D. Pa. 2005) ............................................................................13, 14

*Craig v. Harney*,
   331 U.S. 367 (1947) ......................................................................................................13

*Doe v. Hawaii*,
   2011 WL 4954606 (D. Haw. Oct. 14, 2011) ...............................................................20

*Evon v. Law Offices of Sidney Mickell et al.*,
   __ F.3d __, 2012 U.S. App. LEXIS 15861 (9th Cir. Aug. 1, 2012)...........................14

*Gentile v. State Bar of Nevada*,
   501 U.S. 1030 (1991) ..............................................................................................13, 14, 19

*Halaco Engineering Co. v. Costle*,
   843 F.3d 376 (9th Cir. 1988)..............................................................................2, 14, 15

*Landmark Communications, Inc. v. Virginia*,
   435 U.S. 829 (1978) ......................................................................................................12

*Leon v. IDX Systems Corp.*,
   464 F.3d 951 (9th Cir. 2006)..................................................................14, 16, 19, 21

*Martinez v. City of Pittsburg,*
  2012 WL. 699462 (N.D. Cal. 2012)........................................................................12

*Miller v. City of Los Angeles,*
  661 F.3d 1024 (9th Cir. 2011)................................................................................17

*Mills v. Alabama,*
  384 U.S. 214 (1966)..............................................................................................12

*Pennekamp v. State of Fla.,*
  328 U.S. 331 (1946)..............................................................................................13

*People v. Crayton,*
  28 Cal. 4th 346 (2002)..........................................................................................18

*People v. McKenzie,*
  34 Cal. 3d 616 (1983)...........................................................................................18

*Richardson v. Marsh,*
  481 U.S. 200 (1987)..............................................................................................17

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752, 100 S. Ct. 2455 (1980) ..................................................................10

*In re Sawyer,*
  360 U.S. 622 (1959) .............................................................................................13

*Sheppard v. Maxwell,*
  384 U.S. 333 (1966)..............................................................................................12

*Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman,*
  55 F.3d 1430 (9th Cir. 1995).................................................................................13

*U.S. v. Wunsch,*
  84 F.3d 1110 (9th Cir. 1996).................................................................................13

1    PLEASE TAKE NOTICE that Samsung Electronics Co., Ltd., Samsung Electronics

2    America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") hereby

3    move to strike Apple's Response To Declaration of John B. Quinn and Recommendation

4    Regarding Appropriate Sanction (Dkt. 1539) as an improperly filed motion for inherent power

5    sanctions that fails to comply with this Court's Local Rules or the Federal Rules of Civil

6    Procedure governing motion practice.

7    In the event Apple is permitted to re-file as a proper motion, or the Court decides to

8    consider Apple's "recommendation," Samsung respectfully submits this response.  However,

9    given the nature of the relief sought, and the limited time Samsung has had to prepare a response,

10   Samsung respectfully requests an opportunity to file a further response should the Court determine

11   to consider this matter further.

12   **I.    PRELIMINARY STATEMENT**

13   Apple seeks an unprecedented sanction of outright dismissal of Samsung's defenses to its

14   design patent claims, in the guise of an alleged "recommendation" about Samsung's release of

15   information that was already publicly available.  Apple cites no authority supporting such an

16   extreme sanction for conduct protected by the First Amendment.  There is no such authority.

17   Apple's "recommendation" is frivolous at every level, and can only be viewed as another plea that

18   it be relieved from its obligation to prove its claims to a jury.

19   Apple's request is an affront to the integrity of the jury.  Apple proceeds on the groundless

20   assumption that the jury, already instructed by the Court not to read media accounts, will violate

21   the Court's instructions and do precisely that.  As explained in the Quinn declaration, Apple's

22   premise is factually unfounded and contrary to settled law.  Nowhere does Apple even address, let

23   alone refute, these points.  Apple does not even ask that the Court confirm with the members of

24   the jury that they are continuing to follow this Court's instruction.  Nor does it address the

25   implications of its unfounded assumption that this jury, because it cannot be trusted to obey the

26   strict orders of the Court, cannot be trusted to decide this case fairly.  Indeed, if in fact the jury has

27   been monitoring the press in contravention of the Court's instructions, it would be exposed to

28   virtually unlimited coverage of inadmissible aspects of this case.

While it seeks inherent power dismissal sanctions, Apple neither articulates the requirements for such sanctions nor seeks to establish they have been satisfied.  The draconian sanction that Apple seeks is limited to "extreme circumstances" where a party has engaged in deliberately deceptive practices that undermine the integrity of judicial proceedings, and plainly no sanctions of any type can issue for conduct protected by the First Amendment.

Applying the correct legal standard, it is abundantly clear that no sanctions whatsoever are warranted.  Nothing in the statement released by Samsung was false, let alone deceptive.  Nor did the statement undermine the integrity of this Court's proceedings.  As Mr. Quinn's declaration explained, the statement was released by Samsung in response to media requests for information and media reports relating to the evidence this Court had addressed and excluded  in open court.  It was made after countless stories impugning Samsung's reputation (many of which cited Apple sources) with false accusations of copying had been published, both before and after the jury was impaneled.  Samsung provided information that was already public and the subject of extensive media reports, and responded to these repeated attacks against Samsung which plainly injured Samsung's reputation in the market.  Samsung's actions were not only protected by the First Amendment, but also consistent with every ethical and legal requirement regarding press statements.

Set against this background, Apple's request for dismissal is utterly unprecedented.  Apple has offered no authority affirming an inherent powers dismissal based on a disclosure to the press – let alone a truthful dissemination of publicly available information.  In fact, the *only* dismissal case Apple has cited *reversed* a dismissal based on alleged discovery abuse for failure to satisfy the stringent requirements to impose such a remedy.  *Halaco Engineering Co. v. Costle*, 843 F.3d 376 (9th Cir. 1988).  In the only case Apple cites that even involved a statement to the press, *American Science and Engineering, Inc. v. Autoclear*, 606 F. Supp. 2d 617 (E.D. Va. 2008), the court did no more than order the party to retract an offending statement, issue corrective language and pay a modest amount of attorney's fees – and that was where the statement *was* false and misleading, unlike here.  Nor is there any basis to infer bad motive from the prior sanctions rulings cited by Apple, particularly where those rulings either did not involve a question of bad faith at all

1   or expressly *declined* Apple's request for a finding that Samsung had engaged in bad faith

2   conduct.  And Apple's argument that counsel's expression of disagreement in open Court

3   somehow justifies dismissal of his client's case is patently absurd; a lawyer is obligated to

4   zealously advocate for his client, which is what Mr. Quinn did here.

5          In addition to lacking any merit, Apple's request is fatally flawed procedurally.  Apple has

6   not complied with any of the rules for a motion before this Court, or the due process requirements

7   for obtaining what amounts to dismissal of Samsung's defenses.  Apple's "recommendation"

8   should be stricken for that reason alone, and its attempt to escape having to present its case to the

9   jury should be summarily rejected.

10  **II.     FACTUAL BACKGROUND**

11         **A.     Samsung's Statement**

12         On July 31, 2012, representatives of Samsung emailed a statement to certain selected

13  media members and transmitted to them several of Samsung's proposed trial demonstrative

14  exhibits.  Samsung's statement read:

> The Judge's exclusion of evidence on independent creation meant that even
> though Apple was allowed to inaccurately argue to the jury that the F700 was an
> iPhone copy, Samsung was not allowed to tell the jury the full story and show the
> pre-iPhone design for that and other phones that were in development at Samsung
> in 2006, before the iPhone.  The excluded evidence would have established
> beyond doubt that Samsung did not copy the iPhone design.  Fundamental
> fairness requires that the jury decide the case based on all the evidence.[1]

20         Samsung's statement followed multiple requests from members of the media[2] seeking

21  further explanation—including requesting the demonstrative exhibits at issue—as to the basis for

_____

23  [1]  The documents accompanying the statement are attached as Exhibit A to the Declaration of
    Joby Martin, filed concurrently ("Martin Decl.").

24  [2]  Apple claims that one reporter who did not make a formal press inquiry nonetheless
25  received Samsung's statement.  But that reporter had closely followed the case and in fact had
    previously characterized a ruling by Judge Grewal as one that "took Samsung to task for trying to
26  keep as a secret information that is otherwise publicly available."  Alison Frankel, *Anti-sealing
    guidelines take hold in Apple-Samsung IP case*, Thomson Reuters News & Insight (June 25,
27  2012), http://newsandinsight.thomsonreuters.com/Legal/News/2012/06_-_June/Anti-
    sealing_guidelines_take_hold_in_Apple-Samsung_IP_case/.  Samsung's efforts in rebutting the
28         (footnote continued)

Samsung's claims, made in open court and in its public trial brief, that it had the right to present evidence that (1) the iPhone was inspired by "Sony style," and (2) Samsung had independently created the design for the F700 phone—that was alleged in Apple's opening statement to be an iPhone copy—in 2006, well before the announcement of the iPhone.[3]

**B.** **The Information at Issue Was Publicly Disclosed Before Samsung's Disclosure To The Media**

The same information that Samsung shared with select members of the media on July 30, 2012, had already been disclosed to the public *before* July 30, 2012.  In fact, the materials Samsung transmitted to the media *previously* had been the subject of several publicly filed briefs and public Court hearings.  For example:

- On July 10, 2012, Samsung filed public briefs (without any objection by Apple), which included descriptions and images of the F700 designs, and argued that the "2006 Samsung smart phone and GUI designs . . . are found in the internal documents Apple improperly seeks to exclude, and the jury should see all of them."  *See* Dkt. No. 1208-3 at 11.

- At Apple's request to file the trial briefs publicly and consistent with the Court's guidance regarding openness, Samsung publicly filed its evidence of independent creation as Exhibits 5, 6 and 8 to the Declaration of Joby Martin in Support of Samsung's Trial Brief; Apple's "Sony-style" CAD drawings and models were attached as Exhibits 1 and 2 to the Martin Declaration.  *See* Dkt. No 1322.

- Apple itself publicly filed Shin Nishibori's testimony that the direction of the iPhone's design was completely changed by the "Sony-style" designs that Jonathan Ive directed him to make. *See* Dkt. No. 1428-1.

- Samsung also publicly filed this information in its Motion for Reconsideration of the Court's decision to exclude this information from Samsung's opening statement (Dkt. No. 1463) and Samsung's Offers of Proof (Dkt. Nos. 1473 and 1474).

- Other public filings, including filings by Apple, that disclosed the information at issue and/or attached the exhibits at issue include Docket Numbers 1438-2 (attaching Shin Nishibori testimony regarding "Sony-like design" to Tucher Declaration in Support of Apple's Motion to Enforce), 1429 (explaining that "Apple has listed images of the model . . . us[ed] as a comparison point for the

---

negative press it had received is protected both by the First Amendment and the California Rules of Professional Conduct, as discussed *infra*.

[3]  *See* Dkt. No. 1533-1 (Exhibit A to the Declaration of John B. Quinn, attaching emails from press).

Sony-style design . . . as evidence of alternative designs for the iPhone Apple claims it was considering before the 'Sony-style' exercise," and attaching images as Exhibit 12, Dkt. 1429-13), and 1451-2 (attaching Shin Nishibori's testimony that the direction of the iPhone's design was completely changed by the "Sony-style" to Cashman Declaration in Support of Motion for Leave).

C.    **The Media Has Previously Published Extensive Information About This Case, Much of Which Is Not Admissible.**

Apple urges that the media's publication of inadmissible information transmitted by Samsung is likely to cause prejudice.  As the Court has recognized, there is indeed intense public and media scrutiny of this case.  And because of that scrutiny, virtually all the information and images in the excluded slides not only appeared in publicly filed documents, but also had already appeared in media reports, including by the New York Times, Los Angeles Times, Huffington Post, and CNET:

- The New York Times, in "Apple—Samsung Trial Highlights Tricky Patent Wars," dated July 30, 2012,[4] reported that Samsung's trial brief "cites internal Apple documents and deposition testimony to conclude that Apple borrowed its ideas from others, especially Sony . . . Samsung, quoting its own documents, said it had touch-screen phones in development before the iPhone was introduced in January 2007, pointing to the Samsung F700 model."  The article then included this photo of the F700 which was among the material included with Samsung's statement at issue here:



---

[4]    Available at http://www.nytimes.com/2012/07/30/technology/apple-samsung-trial-highlights-patent-wars.html?_r=3&pagewanted=all.

- In an article entitled, "iPhone inspired by Sony designs, Samsung argues in court filing," dated July 27, 2012,[5] the Los Angeles Times likewise provided images that were among the material disclosed wish Samsung's July 31, 2012 statement.

- In an article entitled, "iPhone Prototypes That Never Left Apple's Lab (PHOTOS)", the Huffington Post on July 28, 2012,[6] reported the following: "photos from court documents [linked in the article] showing an array of iOS Apple products in multiple stages of production – and one of those designs has a Sony label on it." The article then included eight different photos of products which were also the subject of Samsung's subsequent statement to the press at issue here.

- On July 30, 2012 in an article entitled, "Apple says 'Purple' iPhone concept predates Sony's art,"[7] CNET news linked to a full PDF of Apple's Reply in Support of its Motion to Enforce (Dkt. No. 1437) which included numerous photos of designs that were among the images released by Samsung on July 31, 2012. The article wrote that "[b]oth companies' court filings have been a treasure trove of goodies for reporters…"

The sheer number of articles concerning this case, and the specific issues addressed in Samsung's statement, is enormous. *See* Martin Decl., ¶¶ 2-7. The media has published information critical of Samsung on numerous occasions. For example, as early as April 2011, in the days after Apple filed its lawsuit, the media was widely reporting about the F700 phone, including photos and detailed discussions—many of which were inaccurate and highly prejudicial to Samsung—of the timing of its production.[8] Even on the eve jury selection, Apple itself was issuing statements to the media, including a July 27, 2012 statement that accused Samsung of "blatantly copying" and "stealing our ideas."[9] And the press has widely reported all manner of

---

[5]   Available at http://www.latimes.com/business/technology/la-fi-tn-apple-iphone-samsung-sony-20120727,0,3791879.story.

[6]   Available at http://www.huffingtonpost.com/2012/07/28/iphone-prototypes-that-never-left-apples-lab-photos_n_1710443.html?utm_hp_ref=technology.

[7]   Available at http://news.cnet.com/8301-13579_3-57482028-37/apple-says-purple-iphone-concept-predates-sonys-art/.

[8]   *See, e.g.*, Cory Gunther, "Who was really first?  Apple vs Samsung F700 Story Truly Debunked," dated April 20, 2011 (available at http://androidcommunity.com/who-was-really-first-apple-vs-samsung-story-truly-debunked-20110420/).

[9]   *See, e.g.*, Ina Fried, "Apple Files Lawsuit Against Samsung Over Galaxy Line of Phones and Tablets," AllThingsD, Apr. 18, 2011, http://allthingsd.com/20110418/apple-files-patent-suit-against-samsung-over-galaxy-line-of-phones-and-tablets/  (quoting Apple representative accusing
(footnote continued)

1   prejudicial information about this case – including the rulings of the Court which the Court itself

2   has ruled are inadmissible – meaning that any jurors who peruse the press on this case in violation

3   of the Court's Orders will be exposed to vast quantities of inflammatory, extra-judicial statements.

4         **D.**      **<u>The Court Has Endorsed Public Disclosures of Pretrial and Trial Proceedings.</u>**

5         Samsung made its statement to the press in the context of this Court's recent rulings that

6   this would be an "open trial" to which the public and the media would receive the maximum

7   possible access. In the days and weeks leading up to jury selection and Samsung's subsequent

8   statement regarding public court proceedings, the Court stressed the importance of making these

9   proceedings public and denied both parties' motions to seal.  (*See* Dkt. Nos. 1256; 1269; 1321 at 2

10  n.4).  Samsung's sharing of information already disclosed in pretrial filings with the press and the

11  public is entirely consistent with this Court's statements in its orders that "[t]he United States

12  district court is a public institution, and the workings of litigation must be open to public view.

13  Pretrial submissions are a part of trial."  *See* Dkt. No. 1256 at 2.  Indeed, the Court told the parties

14  that "the whole trial is going to be open," *id.* at 3, and again noted on July 20, 2012 "the plethora

15  of media and general public scrutiny" of these proceedings and that "[t]he public has a significant

16  interest in these court filings."  *See* Dkt. No. 1269; *see also id.* at 2 ("The mere fact that the

17  production of records may lead to a litigant's embarrassment, incrimination, or exposure to further

18  litigation will not, without more, compel the court to seal its records.  Unlike private materials

19  unearthed during discovery, judicial records are public documents almost by definition, and the

20  public is entitled to access by default.") (internal quotations omitted).

---

22  Samsung of "blatant copying" and "stealing our ideas"); Kelly Olson, "Samsung to Step Up Apple Patent War," Business Week, Sept. 23, 2011,

23  http://www.businessweek.com/ap/financialnews/D9PU7AJ80.htm/ (same); Paul Barrett, "Apple's Patent War Seen Leading to Retaliatory Strikes," Business Week, Mar. 29, 2011,

24  http://www.businessweek.com/news/2012-03-29/apple#p3 (same); Andrea Chang, "Samsung unhappy with court's ban on U.S. sales of Galaxy Tab 10.1", LA Times, June 27, 2012, available

25  at http://www.latimes.com/business/technology/la-fi-tn-samsung-galaxy-tab-

26  20120627,0,5661410.story/ (same); "'Not as Cool' Galaxy Wins Round Against iPad," Chicago Tribune, Jul. 9, 2012, available at http://articles.chicagotribune.com/2012/jul/09 (same); Ashby

27  Jones, "In Silicon Valley, Patents Go on Trial," Wall Street Journal, Jul. 24, 2012, at B1, available

28  at http://online.wsj.com/article/SB10000872396390443295404577543221814648592.html (same).

1

2        **E.        Relevant Procedural Background**

3            <u>On July 30, 2012, the Court Impaneled and Instructed the Jurors.</u>  Jury selection was

4    completed on July 30, 2012, and the Court instructed the jury at that time.  In the course of this

5    process, the Court repeatedly instructed the jury not to view press or Internet articles about this

6    case:

7            THE COURT: Because you will receive all the evidence and the legal instruction
             you properly may consider to return a verdict, do not read, watch, or listen to any
8            news or media accounts or commentary about the case or anything to do with it;
             do not do any research, such as consulting dictionaries, searching the internet, or
9            using other reference materials; and do not make any investigation or in any other
             way try to learn about the case on your own.
10

11           So no one is to do their own CSI investigation.  It's limited to what you can
             consider from the courtroom in this trial.  The law requires these restrictions to
12           ensure the parties have a fair trial based on the same evidence that each party has
             had an opportunity to address.
13

14           A juror who violates these restrictions jeopardizes the fairness of these
             proceedings and a mistrial could result that that would rquire us to do the entire
15           trial process all over from the beginning.

16           ***So if any juror is exposed to any outside information, please notify the Court
             immediately.***
17

18    7/30/12 Hearing Tr., Vol. 1, at 122:24-123:22 (emphasis added).  The Court reiterated this

19    instruction multiple times.  *See id.* at 129:17-19 ("THE COURT:  In the meantime, same

20    admonition.  Do not speak with anyone about this case."); *id.* at 255:5-257:4 (same); *id.* at

21    279:23-280:1 (same).  As of this filing, the Court has not informed the parties of any such

22    notification from a juror.

23            <u>After the Jury Was Impaneled and Instructed, Samsung Petitioned the Court to Allow</u>

24    <u>Admission of the Evidence at Issue, and Prejudicial Negative Publicity Ensued.</u>  Prior to

25    commencement of opening statements on July 31, counsel for Samsung sought an explanation for

26    the Court's Order precluding Samsung from introducing evidence of its smartphone designs that

27    predated the iPhone as evidence of independent creation for purposes of rebutting Apple's

28    allegations of copying and willfulness.  7/31/12 Hearing Tr. at 290:13-293:10.  The Court declined

SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION

to consider the matter further.  *Id.*  Following the Court's denial of Samsung's request, numerous media outlets began reporting that Samsung would not be able to use key evidence in the case, and that Samsung's case was likely to be impaired by the Court's ruling.  *See* Martin Decl.[10]

   **During Opening Statements, Apple's Counsel Falsely Accuses Samsung's F700 Phone of Copying iPhone:**  During his opening statement, Apple's counsel displayed a chart of a number of Samsung phones he claimed pre-dated the iPhone.  This was Slide 23:



---

[10]  *See also, e.g.*, http://allthingsd.com/20120731/live-apple-and-samsung-get-their-first-chance-to-address-the-jury/?mod=googlenews.

SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION

1

2 Counsel then showed Slide 24:



17   Counsel claimed that slide 24 depicted phones that "Samsung introduced right after the

18 iPhone came out for the next period of time." Among the phones on that slide was the F700,

19 which counsel went on to describe: "The one that is called an F700 is what's called a slider

20 phone. You would slide it open to get to the keyboard." Apple's counsel thus expressly argued to

21 the jury that the F700 was one of the phones introduced right after the iPhone came out, and that it

22 was a copy of the iPhone. Samsung argued in response – in open court and unsuccessfully – that

23 this opened the door to Samsung's evidence that the F700 was independently created. Hearing Tr.

24 of July 31, 2012 at 320-21, 346-349.

25   This evidence of independent creation is undisputed, irrefutable, and has been asserted by

26 Samsung since at least the preliminary injunction proceedings. Dkt. 181a at 4. Additional images

27 of the F700 and Samsung's related internal models for that design were timely produced to Apple

28 on February 3, 2012, and Apple deposed the F700's principal designer, Hyoung Shin Park, on

SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION

February 29, 2012.  Over the course of her ten-hour deposition, Apple questioned Ms. Park at length about the development of the F700 design, including the time period in which F700 was developed, the nature of the project, the inspiration for the phone designs, and the additional designs that were created during the project.  *See* Dkt. 1474.  Apple's claim that the F700 copied Apple's patented designs was consistent with the allegations of its original Complaint, where it included the F700 as one of the accused products –  although it later chose to drop this claim (Dkt. No. 1178 at 2), undoubtedly recognizing it was frivolous because the F700 predated the iPhone.  It is important to remember that when Apple moved to exclude the F700 from evidence, Dkt. No. 1184-3, at 6, the Court *denied* Apple's motion, ruling that all evidence as to the F700 was admissible, "including to rebut an allegation of copying." Nonetheless, the Court later excluded all such evidence from Samsung's opening statement.  *See* Dkt. No. 1267, at 3.  At a minimum, the existence of the pre-iPhone designs for the F700 is powerful evidence of a lack of willfulness. This was the occasion for Samsung's motion for reconsideration and Mr. Quinn's argument, both of which the Court rejected.

        In Response to Samsung's Transmission of Public Information, Apple Publicly Makes False "Contempt of Court" Accusations.  No Court Order prohibited Samsung's statement and transmission of public information after opening statements and after the arguments held in open Court.  Indeed, Apple now concedes this—its "recommendation" is not based in any way on supposed violation of any prior Court Order.  Yet in open court with media present, Apple's lawyers falsely accused Samsung's counsel of "contempt of court" and "intentional attempt[s] to pollute this jury."[11]  In fact, Samsung was merely responding to repeated media inquiries requesting additional information about evidence that had been discussed and ultimately excluded

---

[11]   7/31/12 Hearing Tr., Vol. 2, at 554:4-7 and 554:14-16.

in public court hearings.[12]  Apple then publicly filed a letter to the Court reiterating these accusations, and apparently distributed this letter to the media.[13]

## III.    THE COURT SHOULD STRIKE APPLE'S "RECOMMENDATION" FOR FAILURE TO COMPLY WITH THE RULES GOVERNING MOTIONS FOR SANCTIONS

Apple's "recommendation" is a request for dismissal sanctions.  Yet it does not even begin to comply with the requirements of Local Rule 7-8 governing such motions.  It was not noticed for hearing in accordance with Rule 7-2; it was not separately filed; it and it does not comply with the form requirements of the local rules.  Accordingly, the Court should strike or deny the motion without the need to consider its substantive request.  *Martinez v. City of Pittsburg*, 2012 WL 699462, at *4 n.5 (N.D. Cal. March 1, 2012); *Ciampi v. City of Palo Alto*, 2011 WL 4915785, at *5 (N.D. Cal. Oct. 17, 2011).

## IV.    APPLE'S "RECOMMENDATION" IS IMPROPER UNDER THE FIRST AMENDMENT AND FAILS TO MEET THE REQUIREMENTS FOR AN INHERENT POWER DISMISSAL

### A.    Apple's Attempts To Interfere With Samsung's First Amendment Rights Should Be Rejected Out of Hand

As Apple ignores, Samsung's First Amendment rights bar its requested sanction.  Public scrutiny of the judicial process is to be promoted, not feared, for "[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs."  *Mills v.*

---

[12]  *See* supra, at 4-5.

[13]  *See, e.g.*, http://www.latimes.com/business/technology/la-fi-tn-apple-letter-20120801,0,6845741.story (last checked Aug. 2, 2012); http://news.cnet.com/8301-13579_3-57484757-37/apple-seeks-emergency-sanctions-against-samsung/ (last checked Aug. 2, 2012); http://www.zdnet.com/apple-seeks-sanctions-against-samsung-7000002013/ (last checked Aug. 2, 2012); *see also* Andrea Chang, Apple to file emergency motion for sanctions against Samsung, LA Times (Aug. 1, 2012), available at http://www.latimes.com/business/technology/la-fi-tn-apple-letter-20120801,0,6845741.story; Josh Lowensohn, Apple seeks 'emergency' sanctions against Samsung, CNET.com (Aug. 1, 2012), available at http://news.cnet.com/8301-13579_3-57484757-37/apple-seeks-emergency-sanctions-against-samsung/; San Jose Mercury News, Document: Apple's letter of intent to seek sanctions against Samsung attorney (Aug. 1, 2012), http://www.mercurynews.com/business/ci_21211383/document-apple-letter-intent-seek-sanctions-samsung-attorney-quinn.

1   *Alabama*, 384 U.S. 214, 218 (1966).  "The operations of the courts and the judicial conduct of

2   judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S.

3   829, 839 (1978), for "[t]he press does not simply publish information about trials but guards

4   against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to

5   extensive public scrutiny and criticism."  *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).

6   "Freedom of discussion," even when it comes to pending trials, "should be given the widest range

7   compatible with the essential requirement of the fair and orderly administration of justice."

8   *Pennekamp v. State of Fla.*, 328 U.S. 331, 347 (1946).

9         This Court itself has recognized that "[t]he United States district court is a public

10  institution, and the workings of litigation must be open to public view."  Dkt. No. 1256 at 2.  To

11  pay heed to these principles, the traditional rule has been that "[s]tatements may be punished only

12  if they 'constitute an imminent, not merely a likely, threat to the administration of justice.  The

13  danger must not be remote or even probable; it must immediately imperil.'"  *Standing Committee*

14  *on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1442 (9th

15  Cir. 1995) (quoting *Craig v. Harney*, 331 U.S. 367, 376 (1947)).  While this "'clear and present

16  danger' standard does not apply to statements made by lawyers participating in pending cases,"

17  which can be proscribed if they pose a "'substantial likelihood' of materially prejudicing the

18  fairness of the proceeding," *id.*, Apple ignores that the extra-judicial statement it impugns here

19  was made by Samsung, not counsel, and offers no authority that *Samsung's* First Amendment

20  rights are limited by the Rules of Professional Conduct or other lawyer-specific guidelines.  To the

21  contrary it has long been the law, as the Supreme Court explained in *Gentile* in adopting the

22  "substantial likelihood of material prejudice" standard specific to attorney statements, that

23  "lawyers in pending cases [a]re subject to ethical restrictions on speech to which an ordinary

24  citizen would not be."  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991) (citing *In re*

25  *Sawyer*, 360 U.S. 622 (1959)); *see Constand v. Cosby*, 229 F.R.D. 472, 475 (E.D. Pa. 2005)

26  ("limiting parties and witnesses from making extrajudicial statements during a pending civil

27  proceeding raises constitutional questions where similar limitations upon lawyers do not.").

28

1   Even under the special standards that apply to extra-judicial statements by lawyers,

2   "prejudice to the administration of justice must be highly likely before speech may be punished,"

3   *Yagman,* 55 F.3d at 1442; *see United States v. Wunsch*, 84 F.3d 1110, 1117 (9th Cir. 1996)

4   (recognizing that, under *Yagman,* "attorney speech may not be sanctioned absent showing that

5   conduct was 'highly likely' to prejudice administration of justice").  Under the *Gentile* Court's

6   "substantial likelihood of material prejudice" test, which is incorporated in California Rules of

7   Professional Conduct 5-120, "the court must be convinced, not merely suspect, that there is a

8   substantial likelihood that extrajudicial statements by counsel, in light of the circumstances of the

9   case, will materially prejudice the pending proceedings."  *Constand*, 229 F.R.D. at 475 (citing

10  *Gentile*, 501 U.S. at 1075).  Moreover, Rule 5-120 imposes a state of mind requirement,

11  proscribing only extra-judicial statements that a lawyer "knows or reasonably should know" will

12  have "a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

13  *Cal. R. Prof. Conduct* 5-120(A).  Rule 5-120(B) expressly permits statements of "the information

14  contained in a public record," and Rule 5-120(C) expressly permits statements that "a reasonable

15  member would believe is required to protect a client from the substantial undue prejudicial effect

16  of recent publicity not initiated by the member or the member's client. A statement made pursuant

17  to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse

18  publicity."

19  Samsung's statement here was and is fully protected by the First Amendment, and

20  complied with Rule 5-120 to the extent that Rule applies at all.   Apple makes no showing

21  otherwise, and indeed simply ignores the First Amendment protection that Samsung enjoys.

22  **B.**      **Apple Ignores The Stringent Standards Governing Requests For Dismissal**
    **Under The Court's Inherent Powers**

23

24  Even apart from Apple's failure to meet the heightened requirements involved here

25  because of Samsung's First Amendment rights, Apple fails to meet the standards imposed for any

26

27

28

type of inherent sanctions dismissal.[14]  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991). "[O]utright dismissal of a lawsuit . . . is a particularly severe sanction . . . ."  *Id.*  Accordingly, it is justified only in "extreme circumstances."  *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

A court may not dismiss a party's claims or defenses absent, among other things, a finding of "willfulness, fault, or bad faith."  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also Evon v. Law Offices of Sidney Mickell et al.*, __ F.3d. __, 2012 U.S. App. LEXIS 15861, at *11 (9th Cir. Aug. 1, 2012).  "Due process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case."  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

"Before imposing the 'harsh sanction' of dismissal, however, the district court should consider the following factors:  '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'"  *Id.*  "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists, and in its [determination of the sanction]."  *Chambers*, 501 U.S. at 50.  This includes "fair notice and an opportunity for a hearing on the record."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).

## C.    There Is No Basis for Inherent Power Sanctions

### 1.    Apple Has Not Shown That Samsung Engaged Deliberately In Deceptive Practices

---

[14]  Even Apple's alternative recommendation for a severe adverse inference instruction is likewise without merit.  *Keithley v. Homestore.com, Inc.*, 2008 WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008) ("[A]n adverse inference instruction is a harsh remedy").

1    Apple's "recommendation" does not even begin to show that Samsung's sharing of already

2    public information or its reactive statement to the press constitutes "deliberately deceptive

3    conduct" that would give rise to sanctions of any kind, let alone the "drastic sanctions of

4    dismissal." *Halaco*, 843 F.2d at 380.

5    First, Samsung's statement was factual and not misleading.  In response to media inquiries,

6    the statement accurately stated that the Court had excluded certain evidence, and how, in

7    Samsung's opinion, that ruling would affect the presentation of evidence at the trial.  It concluded

8    with Samsung's belief that "[f]undamental fairness requires that the jury decide the case based on

9    all the evidence."  Nothing in this statement was deceptive at all, let alone deliberately so.

10   The only portion of the statement Apple claims was false is the first sentence, which Apple

11   claims inaccurately reported that "Apple was allowed to inaccurately argue to the jury that the

12   F700 was an iPhone Copy."  Dkt 1539 at 11.  This statement was entirely accurate.  As discussed

13   above, Apple included an image of the F700 in Slide 24, and claimed to the jury that it was one of

14   the phones that Samsung produced after Apple introduced the iPhone, in contrast to the phones

15   shown in Slide 23, which counsel argued pre-dated the iPhone.  Contrary to Apple's argument in

16   its "recommendation," counsel did not merely describe the F700 as a slider phone – it did so in the

17   context of discussing phones it claimed were copies of the iPhone.  Samsung counsel objected and

18   argued that this copying allegation opened the door to Samsung's previously excluded evidence

19   regarding the independent creation of the F700, but the Court overruled the objection.  Thus, it

20   was entirely accurate for Samsung to state that Apple was allowed to make an inaccurate copying

21   allegation to the jury with regard to the F700 – that is precisely what Apple's counsel did.

22   Because there was nothing false or misleading in the Samsung statement, there is no basis

23   for inherent power sanctions at all.  Apple cites no case sanctioning a party or counsel for an

24   accurate statement.  The only remotely relevant authority in Apple's "recommendation" is

25   *American Science and Engineering, Inc. v. Autoclear*, 606 F. Supp. 2d 617 (E.D. Va. 2008), but

26   the press release there that formed the basis of the Court's sanction was expressly found to contain

27   "false, misleading, and damaging statements."  606 F. Supp. 2d at 625.  Even in the face of such

28   misconduct, the Court simply ordered defendants to remove the offending statement, issue a

1   correction, and pay $10,000 to reimburse the plaintiff for its fees incurred as a result of the

2   issuance of the release.  *Id*. at 626-27.  Even this limited sanction would not be justified here,

3   where the statement was neither false nor misleading.

### 2.   Apple Has Not Shown That Samsung's Conduct Undermines The Integrity Of This Court's Proceedings

5       Inherent power sanctions are also inappropriate here because Apple cannot show

6   Samsung's conduct undermined the integrity of this Court's proceedings or the orderly

7   administration of justice.  *Leon*, 464 F.3d at 958.

8       There is no basis for Apple's accusation that the statement or the information was a bad

9   faith attempt to influence the jury with excluded evidence.  All of the information was, as

10  demonstrated above, already in the public record and had been the subject of numerous media

11  reports.  Samsung's statement and further sharing of this already public information also was

12  made *after* the jury had been impaneled, and *after* the jury had been instructed, repeatedly, not to

13  read the papers or go on the Internet.  Far from an effort to influence the jury, the statement was a

14  reaction to counter the substantial negative and prejudicial publicity that became prevalent after

15  Samsung petitioned the Court to reconsider admission of the evidence at issue – a type of

16  disclosure that is categorically exempted even from the prohibitions in California's Professional

17  Conduct Rule 5-120(C).

18      Nor did Samsung's statement increase the risk that the jury will see this evidence.

19  Whatever risk there was that a of a juror might learn about this evidence already existed based on

20  prior public court filings and prior media reports about those filing.  Indeed the timing of

21  Samsung's reactive press statement – after the jury already had been impaneled and instructed not

22  to research the case – made it even less likely that the jury would learn of the evidence.  Apple's

23  assumption that the jurors will ignore their instructions is not only factually baseless (and insulting

24  to the jury), but flatly contrary to law.  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (applying

25  "the almost invariable assumption of the law that jurors follow their instructions"); *Miller v. City*

26  *of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011) ("We have a strong presumption that jurors

27

28

1   follow instructions").[15]  Apple does not bother to address the settled principle that jurors are

2   presumed to have complied with the Court's instructions.

3        Also baseless is Apple's alternative argument that Samsung's statement impugned this

4   Court's integrity, because it was released after Samsung's counsel made a vigorous argument

5   challenging this Court's exclusion of the evidence in question.  Lawyers are obligated to zealously

6   advocate on their client's behalf, *Christensen v. Stevedoring Services of America, Inc.*, 430 F.3d

7   1032, 1036 (9th Cir. 2005),[16] and it would be absurd to suggest that a lawyer's in-court comments

8   concerning a critical issue could somehow give rise to a sanction of dismissal.

9        **3.**     **Apple Has Not Shown That Samsung Acted In Bad Faith**

10       As Apple concedes, inherent power sanctions may not be imposed absent an express

11  finding of bad faith.  Dkt. 1539 at 9.  There is no basis for any such finding here.  As Mr. Quinn's

12  declaration explains, the press statement was "not motivated by or designed to influence jurors."

13  Dkt. 1531, ¶ 12.  Rather, the statement was issued to defend Samsung's reputation from the

14  substantial undue prejudicial effect of recent publicity.  Rule 5-120(C).  "Samsung's brief

15  statement and transmission of public materials in response to medias inquiries was lawful, ethical,

16  and fully consistent with the relevant California Rules of Professional Responsibility . . . and legal

17  authorities regarding attorneys' communications with the press."  *Id*. ¶ 10.

---

18

19

20      [15]  For these same reasons, Samsung's statement cannot be found to violate California

21  Professional Responsibility Rule 5-120(A)'s prohibition on statements that "have a substantial likelihood of materially prejudicing an adjudicative proceeding."  Of course, that prohibition

22  applies only to members of the bar, and Apple offers no authority that non-lawyer statements fall within its purview.  In any event, the Rule expressly authorizes counsel in any circumstances to

23  "state . . . the information contained in a public record."  Moreover, a recent commentary notes that "[t]here is not a single reported decision imposing discipline on a California lawyer for

24  violation of the rule, and *The State Bar Court Reporter* fails to indicate if a violation has ever been charged. . . . A former chief trial counsel in a private conversation said they would not enforce the

25  rule.  It is that controversial."  Diane Karpman, *There's a TV news crew in the lobby asking for a*

26  *partner . . .*", *CA Bar Journal* (March 2012).

    [16]  *See also People v. McKenzie*, 34 Cal. 3d 616, 631 (1983) ("The duty of a lawyer both to his

27  client and to the legal system, is to represent his client zealously within the bounds of the law." (emphasis omitted)), *abrogated on other grounds by People v. Crayton*, 28 Cal. 4th 346 (2002).

28

As noted above, the fact that Samsung's counsel expressed strong disagreement with the Court's exclusion ruling does not demonstrate that *Samsung* engaged in bad faith in responding to media inquiries.  Nor is bad faith with respect to *this statement* demonstrated by reference to prior sanctions rulings based on discovery conduct having nothing to do with the media or the particular exclusionary ruling in question.  None of these rulings contained a finding of bad faith, and indeed Magistrate Judge Grewal most recently *refused* to make a bad faith finding in response to Apple's request for an adverse inference instruction.  *See* Dkt. No. 1321.  Apple too has been sanctioned for its discovery violations in this case,[17] and Apple offers no authority finding that prior unrelated sanctions rulings not involving bad faith can support the required bad faith in connection with subsequent unrelated conduct.

### 4.  The Release Of Samsung's Statement Does Not Threaten To Interfere With The Rightful Decision Of The Case

As noted above, due process requires that before any sanction can issue under the Court's inherent power, Apple must establish that the relationship between the alleged conduct and the matter in controversy is such that it threatens to interfere with a rightful decision in the case. *Anheuser-Busch*, 69 F.3d at 348.  Apple makes no such showing here, nor could it, given the prior media reports on the information Samsung disclosed, and the fact that the jury had already been impaneled and instructed.  Accordingly, any sanction would violate Samsung's due process rights.

### 5.  None Of The *Leon* Factors Supports The Harsh Dismissal Sanction Apple Seeks

---

[17]  *See* Dkt. No. 1213.  This was not the first time Judge Grewal took exception with Apple's conduct.  In his April 12, 2012 order granting Samsung's motion to enforce his order to produce materials from "related proceedings," he noted that Apple's conduct had been prejudicial.  (Dkt. No. 867, at 9:18-19, 10:6-8.)  Later, in his July 11, 2012 Order granting Samsung's motion for sanctions for its refusal to produce those materials, he pointed out that there "is really no question that Apple violated the [Court's] December 22 Order" by imposing "unreasonable," "self-serving," and "tortured" limitations on the Court's order.  (Dkt. No. 1213, at 9:4-10:5.)  He also explained that he was forced to order Apple to comply with his ruling "not once, but twice," despite the fact that it is "fundamental that, when a court orders you to produce it, you produce it." (June 21, 2012 Hearing Tr., at 87:24-88:12.)  This consistent refusal to comply with orders is an Apple tactic in other cases, including the parallel ITC action where Judge Pender referred to it as "nonsense."  (ITC-796 Teleconference, April 4, 2012, at 12:18-21).

1    Apple's "recommendation" seeks the ultimate sanction of dismissal of Samsung's

2    defenses, yet it does not even attempt to show that the relevant factors support such a harsh result.

3    As explained below, none of the factors supports dismissal here.

4    First, nothing in Samsung's statement has affected the expeditious resolution of this

5    litigation.  The trial will proceed on the schedule set by the Court, without any interruption.

6    Similarly, with regard to the second factor – the need to manage the court's dockets – there is no

7    impact here on the Court's docket.  The third factor considers the risk of prejudice to the party

8    seeking sanctions.  As discussed above, nothing in the publication of public-record material that

9    had already been widely reported can possibly prejudice Apple, particularly where the publication

10   occurred after the jury already had been impaneled and instructed.  *See, e.g., Gentile,* 501 U.S. at

11   1046 ("Much of the information provided by petitioner had been published in one form or another,

12   obviating any potential for prejudice.") (opinion of Kennedy, Marshall, Blackmun & Stevens, JJ.);

13   *Berndt v. Cal. Dep't of Corrections*, 2004 WL 1774227, at *4 (N.D. Cal. Aug. 9, 2004) (attorney's

14   extra-judicial statements regarding pending case did not create a "substantial likelihood of material

15   prejudice" in part because the information "is contained in the public record, and Ms. Price may

16   freely state any information in the public record").

17   Apple's assumptions of material prejudice overlook the high standards that apply to any

18   such finding.  In *Mu'Min v. Virginia*, for example, the Supreme Court ruled no new trial was

19   required, and that it was not even necessary for the trial court to ask jurors about their individual

20   exposure to out-of-court publicity in a criminal case, even though 8 of the 12 jurors admitted

21   exposure to such publicity and the publicity had detailed the defendant's inadmissible murder

22   confession.  500 U.S. 415, 422, 431 (1991).  The risk of juror influence here does not even

23   approach this level of taint, which itself does not constitute sufficient prejudice to warrant a new

24   trial as a matter of Supreme Court precedent.  *See also, e.g.*, *Doe v. Hawaii*, 2011 WL 4954606, at

25   *4 (D. Haw. Oct. 14, 2011) (holding that "the Court cannot conclude that the statements were so

26   inflammatory that this Court should impose a restraint on [an attorney's] freedom of speech by

27   Court order" because "the substance of the grand majority of [the attorney's] statements to the

28   media are already part of the public record"); *Coleman-Hill v. Governor Mifflin Sch. Dist.*, 2010

1   WL 5014352, at *3 (E.D. Pa. Dec. 2, 2010) (declining to issue a gag order because "[t]he press

2   release contained information that is already available to the public through the docket").

3            The fourth factor – the public policy favoring disposition of cases on their merits – plainly

4   weighs against dismissal of Samsung's defenses.  This is particularly true in a patent case, where

5   the public interest favors having patent invalidity issues determined on their merits.  *Avago*

6   *Technologies General IP Pte Ltd. v. Elan Microelecs. Corp.*, 2007 WL 1449758, at *2 (N.D. Cal.

7   May 15, 2007).

8            The final factor – the availability of less drastic sanctions – also weighs against dismissal.

9   In reviewing this factor, the Ninth Circuit considers: "(1) whether the district court explicitly

10  discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would

11  be inappropriate; (2) whether the district court implemented alternative sanctions before ordering

12  dismissal; and (3) whether the district court warned the party of dismissal before ordering

13  dismissal."  *Leon*, 464 F.3d at 960.

14           In this case, because Samsung's statement did not violate any Court Order and did not

15  satisfy the requirements for inherent power sanctions, no sanctions at all are appropriate.  But even

16  if the requirements for inherent power sanctions were satisfied (which they are not), there is no

17  question but that sanctions less drastic than outright dismissal would be feasible.  These would

18  include ordering Samsung to retract the statement, issue a corrective statement, and/or pay some

19  form of monetary sanction.  As discussed above, that was the relief ordered by the Court in the

20  *American Science* case Apple cites, where the conduct involved issuance of a false and misleading

21  release.  Here, as there was nothing false or misleading in the statement Samsung issued, there is

22  no basis for any sanctions whatsoever, let alone sanctions as draconian as a dismissal.

23           Apple cites no case imposing a dismissal remedy for the issuance of a press statement, let

24  alone for one that is neither false nor misleading.  Because each of the five factors favors

25  dismissal, and in view of the availability of lesser sanctions, it would be reversible error to grant

26  the relief Apple has "recommended."

27  **V.      CONCLUSION**

28

SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION

1    Apple's request should be denied as meritless and procedurally improper.  Apple's self-

2   serving "recommendation" does not even purport to satisfy the requirements for a motion under

3   this Court's rules.  It was submitted after midnight on August 2, 2012, and Samsung has had only

4   a few hours to prepare this response.  Given the severity of the relief Apple has "recommended,"

5   in the event the Court does not reject the recommendation summarily as it should, then Samsung

6   requests a further opportunity to submit a more detailed opposition.  Due process, which must be

7   adhered to before imposition of an inherent power sanction, let alone one as harsh as judgment,

8   requires no less.

9   DATED: August 2, 2012                     QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
10

11

12                                          By  /s/ Victoria F. Maroulis
                                               Victoria F. Maroulis
13                                             Attorneys for SAMSUNG ELECTRONICS CO.,
                                               LTD., SAMSUNG ELECTRONICS AMERICA,
14                                             INC. and SAMSUNG
                                               TELECOMMUNICATIONS AMERICA, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S MOTION TO STRIKE APPLE'S RESPONSE TO DECLARATION OF JOHN B. QUINN AND
PURPORTED RECOMMENDATION REGARDING SANCTION