# EXHIBIT B

| | |
|---|---|
| 1 | |
| 2 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>  Defendants. | Case No.   11-cv-01846-LHK<br><br>**EXPERT REPORT OF PETER W. BRESSLER, FIDSA** |

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | QUALIFICATIONS | 3 |
| III. | MATERIALS CONSIDERED | 7 |
| IV. | MY UNDERSTANDING OF THE LAW OF PATENT INFRINGEMENT | 7 |
| V. | MY UNDERSTANDING OF THE ORDINARY OBSERVER | 9 |
| VI. | MY UNDERSTANDING OF THE LAW ON TRADE DRESS FUNCTIONALITY | 9 |
| VII. | BACKGROUND OF THE PATENTS AND APPLE'S ICONIC DESIGNS | 10 |
| VIII. | APPLE'S ASSERTED DESIGNS | 16 |
|   | A. The D'889 Patent | 16 |
|   | B. No Element of the D'889 Patent Is Dictated by Function | 17 |
|   | C. The D'087 Patent | 20 |
|   | D. No Element of the D'087 Patent Is Dictated by Function | 21 |
|   | E. The D'677 Patent | 25 |
|   | F. No Element of the D'677 Patent Is Dictated by Function | 26 |
|   | G. The D'270 Patent | 29 |
|   | H. No Element of the D'270 Patent Is Dictated by Function | 30 |
| IX. | MANY OF SAMSUNG'S DESIGNS HAVE BECOME SUBSTANTIALLY SIMILAR TO APPLE'S | 32 |
| X. | SAMSUNG INFRINGES THE D'889 PATENT | 34 |
|   | A. Identification of Infringing Products | 34 |
|   | B. Comparison of the Prior Art | 36 |
| XI. | SAMSUNG INFRINGES THE D'087 PATENT | 47 |
|   | A. Identification of Infringing Products | 47 |
|   | B. Comparison of the Prior Art | 48 |
|   | C. Samsung's Galaxy S i9000 Infringes the D'087 Patent | 53 |
|   | D. Samsung's Galaxy S 4G Infringes the D'087 Patent | 55 |
|   | E. Samsung's Infuse 4G Infringes the D'087 Patent | 58 |
|   | F. Samsung's Vibrant Infringes the D'087 Patent | 60 |
|   | G. Samsung's Galaxy S II (Epic 4G Touch) Infringes the D'087 Patent | 62 |
|   | H. Samsung's Galaxy S II (AT&T) Infringes the D'087 Patent | 65 |
|   | I. Samsung's Galaxy S II (Skyrocket) Infringes the D'087 Patent | 67 |
|   | J. Samsung's Galaxy S II (i9100) Infringes the D'087 Patent | 70 |
| XII. | SAMSUNG INFRINGES THE D'677 PATENT | 72 |
|   | A. Identification of Infringing Products | 72 |

52.     Moreover, the examples of alleged prior art cited by Samsung in its opposition to Apple's Motion for Preliminary Injunction against the D'889 design look very different from that patented design and also constitute alternative designs that could have been used by Samsung without infringing Apple's patented design.  For example, JP1142127, JP0887388, JP0921403, U.S. Patent No. D461,802, the TC 1000, and the 1994 Fidler Mock-up are all far afield from the D'889 design aesthetically.

53.     Indeed, Samsung's own commercially released tablet prior to the iPad – the Samsung Q1 – constituted an alternative design to the D'889 design.  Photos of the Samsung Q1 are shown below.





54.     Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing tablets.  For example, one of the Samsung tablet models featured a wide, opaque frame on the front surface around the display screen.  *See* Ex. 14, Samsung model production no. Tab 30.

55.     The fact that Samsung and other manufacturers have commercially released tablets with alternative, different-looking designs shows that Samsung had access to a variety of design options that would have provided equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that utilitarian or functional considerations dictated the design of the D'889 patent or of Samsung's Galaxy Tab 10.1.

56.     The alternative designs discussed in the foregoing are in no way comprehensive.  The tablet computer field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of Apple's patented design.  Other available alternative designs to the D'889 design include, for instance, the Sony Reader, GriDPAD 2050, the Motion Computing LS800, the

1  Freescale smartbook concept, Panasonic Toughbook Tablet, and the Panasonic Toughpad.  *See*
2  Ex. 13.
3       57.    Accordingly, I conclude that there are no elements in the design of the D'889
4  Patent that are purely functional, so the proper infringement analysis of the D'889 Patent takes
5  into account the overall design depicted in the patent, without excluding any elements.
6   **C.    The D'087 Patent**



22       58.    The D'087 Patent is directed toward the ornamental design of the front face and
23  bezel of an electronic device as shown in selected embodiments as depicted in Figures 5-9, 11, 17
24  & 19 (reproduced above).
25       59.    The D'087 Patent states that "The broken lines showing the remainder of the
26  electronic device are directed to environment.  The broken lines, within the claimed design, in
27  embodiments 1, 2, and 4 that depict an elongated oval shape and the broken lines, within the
28

1  claimed design, in embodiments 2, 3, and 6 that depict a circle shape are superimposed on a
2  continuous surface and are for illustrative purposes only.  The broken lines, within the claimed
3  design, in embodiments 1, 3, and 5 that depict a large rectangular shape, indicate a non claimed
4  shape below the continuous front surface and are for illustrative purposes only.  None of the
5  broken lines form a part of the claimed design." D'087 Patent at Description.

6        60.     Because of the iPhone's distinctiveness and popularity, the design disclosed in the
7  D'087 Patent has become instantly recognizable as the front face and bezel of the iPhone.  The
8  front face of the iPhone derives its distinctive appearance among smartphone designs from a
9  combination of elements including the flat surface that extends all the way to the perimeter,
10 narrow balanced borders on either side of the active area of the display, wider balanced borders
11 above and below the active area of the display, evenly curved corners, a lozenge-shaped speaker
12 slot[43] horizontally centered in the area above the screen, and a bezel encircling the front face.
13 This group of elements is distinctive in terms of visual impression.

14       61.     Based on my review of CAD renderings cited in Apple's Response to Samsung's
15 Interrogatory No. 1, I understand that the D'087 Patent was conceived of and reduced to practice
16 at least as early as April 20, 2006.  The CAD renderings are found at APLNDC00014230-231;
17 APLNDC00014237-244.

18      **D.**    **No Element of the D'087 Patent Is Dictated by Function**

19       62.     It is my understanding that Apple considered alternative designs that were
20 different from the final commercially released design of the iPhone, a design which is embodied
21 in the D'087 Patent.  CAD renderings and photographs of prototypes of some such alternative
22 designs are at APLNDC-Y0000149051-052, 059 & 062, in Exhibits 1-6 to the Reply Declaration
23 of Christopher Stringer in Support of Apple's Motion for a Preliminary Injunction, and Exhibits
24 15-20.[44]  Based on testimony from Apple industrial designers and product designers, it is my
25 understanding that it would have been feasible for Apple to pursue these alternatives, though

---

[43] The speaker slot is sometimes referred to as the "receiver hole."

[44] Apple Protos 355, 363, 383, 399, 834, 1105 respectively.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
21

1  Apple elected not to do so for aesthetic reasons.  *See, e.g.,* Dec. 1, 2011 Ive Dep. at 38:23-41:8;
2  44:20-46:14; 63:21-66:4; 227:12-229:12; 240:21-20; Feb. 7, 2012 Ive Dep. at 292:8-25; 302:24-
3  303:24; Aug. 3, 2011 Stringer Dep. at 183:23-184:5; 207:25-208:19; 323:21-324:21; Nov. 4,
4  2011 Stringer Dep. at 18:14-23; 20:1-7; 78:15-22; Mar 2, 2012 Tan Dep. at 20:15-24:14; 28:4-30:
5  22; 56:10-61:18; 64:9-65:20; 74:18-75:1, Feb. 28, 2012 Hobson Dep. at 35:3-36:1.

6        63.    Furthermore, numerous alternative designs to the patented D'087 design were and
7  are commercially available.  Because these alternative designs were commercially released, they
8  show that the D'087 design is not required for a smartphone, and that multiple alternative designs
9  are available for a functioning smartphone.  Some of these alternative designs are shown below:[45]



17        64.    Indeed, many of Samsung's own commercially released phones are themselves
18  alternative designs to the patented D'087 design.  Samsung alternative designs include, for
19  instance, the following:[46]

---

[45] From left to right:  Sony Ericsson Xperia Arc S; Pantech Crossover; Nokia Lumia 800; Casio G'zOne Commando LG Optimus T.  *See* Ex. 21. These phones do not constitute an exhaustive list of alternative designs that may be relevant; they are merely representative of some alternatives that have been commercialized.

[46] From left to right:  Samsung i8910 Omnia HD (released May 2009); Samsung M7600 Beat DJ (released May 2009); Samsung Sunburst SGH-A697 (released March 2010); Samsung Gravity Touch SGH-T669 (released June 2010); Samsung Gem SCH-I100 (released February 2011).  *See* Ex. 21.  These phones do not constitute an exhaustive list of Samsung's alternative designs that may be relevant; they are merely representative of some alternatives that Samsung has commercialized.

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
22

65. Additionally, it is my understanding that Samsung considered alternative designs that were different from the final commercially released designs of its infringing phones. Such alternative designs are depicted in Exhibits 22-23. These alternatives illustrate, for example: a curved, clear material on the front surface of the phone (for example, Ex. 22, Samsung model production No. 38); a display screen that is not centered on the front surface of the phone (*Id.*); a drastically non-uniform and stylized bezel (*Id.*); and a front surface that is not entirely covered with a clear material (Ex. 23, Samsung model production No. 9.6.3).

66. Samsung itself has applied for and received design patents on the ornamental design for its phones – many of which feature relatively large screens suitable for use as a touch screen. Samsung's own design patents undercut any contention that smartphone design (or more specifically, touch-screen smartphone design) is restricted by function to the iPhone design. For example, U.S. D555,131 to Samsung claims a phone design with a large display screen. But the D'131 design, as shown below, also has curved top and bottom sides, angled corners, adornments on the front face, and numerous other differences from Apple's iconic iPhone design.



67. Other Samsung design patents similarly illustrate the design alternatives available to Samsung for every feature of a phone, including U.S. Patent Nos. D561,156, D616,857, D561,155, D562,794, D624,046, D616,856, and D629,780.[47]

68. The alternative designs discussed in the foregoing are in no way comprehensive. The smartphone field is filled with alternative, commercially viable designs that illustrate the nonfunctionality of Apple's patented design.  Other designs that illustrate alternative renderings of individual design elements include HTC Touch Dual, T-Mobile My-Touch, Palm Treo 700p, HTC 7 Trophy T8686, Sony Ericsson Xperia S, Pantech Hotshot CDM8992VW, Modu 1 and associated jackets, Modu T and associated jackets, Modu W, and Nokia X5-01.  These designs illustrate the vast array of design choices Samsung possessed with respect to every design element of its phones and undercut any contention that utilitarian or functional considerations dictated the iPhone design or Samsung's infringing designs.  *See* Ex. 21.

69. The fact that Samsung and other manufacturers have commercially released phones with different-looking, alternative designs shows that Samsung had numerous design options for offering equivalent or similar functionality for the end user.  These alternative designs belie any suggestion that functional considerations dictated the iPhone design or the design of Samsung's accused phones.

---

[47] APLNDC-Y0000232341; -346; -351; -358; -365; -374; -389.

1        97.    After the announcement of the iPhone in January 2007, Samsung began to
introduce smartphones with a reduced number of buttons on the front face, a more rectangular
shape, and rounder corners. While these phones appeared more similar to the iPhone than the
Samsung phones that came before the iPhone, these phones were not copies of the iPhone and the
designs of these phones were not substantially the same as the D'087, D'677 and/or D'270
Patents. The designs of Samsung's phones were differentiated based on the overall shape of the
device; the proportion of the screen; the size, location, and shape of the buttons; the size, location,
and shape of the speaker slot; and/or the size and shape of the bezel, if one was present.
Moreover, the front surfaces of the devices were not flat and clear across the entire face to the
perimeter.

98.    Samsung's Galaxy S i9000, released in the second quarter of 2010, was the first
Samsung smartphone that looked substantially similar to the iPhone. This phone contained all of
the patented features of the iPhone—with similar proportions—including the clear front surface
running from edge to edge of the front face of the device. Additionally, the design features of the
Galaxy S i9000 have a similar proportion and layout to the iPhone. The Galaxy S line has
included numerous smartphones released under product names including Vibrant, Mesmerize,
Fascinate, and others.

99.    Although Samsung has continued to manufacture and release products that are
clearly distinguishable from the iPhone, Samsung has also released numerous additional
smartphones, including the Accused Products, that, like the Galaxy S i9000, are substantially
similar to Apple's iPhone.[52]

---

[52] From left to right: Samsung Galaxy S 4G; Samsung Fascinate; Apple iPhone (original), Samsung Vibrant; Samsung Infuse 4G.

100.     I have also created timelines (Exhibits 26-27) of phones and tablets that Samsung and third parties released beginning before the announcement of the iPhone and iPad and extending through 2011.  As can be seen from the timelines, at least as of the time of the introduction of the iPhone and iPad, no other mobile phones and tablets, respectively, looked like the iPhone and the iPad.

101.     Moreover, as can be shown below, Samsung made and sold a very different looking touch screen tablet before the iPad 2 was released.  After the iPad 2 was released, Samsung's tablet, the Galaxy Tab 10.1, looked substantially similar to the iPad 2.  Samsung's Q1 tablet, Apple's iPad 2, and Samsung's Galaxy Tab 10.1 are shown below.



## X. SAMSUNG INFRINGES THE D'889 PATENT

### A. Identification of Infringing Products

102.     It is my opinion that the Galaxy Tab 10.1 infringes the D'889 Patent.

103.     In forming this opinion, I reviewed the prosecution history of the D'889 Patent and analyzed and familiarized myself with the prior art cited therein.  I have also analyzed and familiarized myself with the relevant portions of the prior art references Samsung cited in its

EXPERT REPORT OF PETER W. BRESSLER, FIDSA
Case No. 11 cv-01846-LHK
34

1  December 19, 2011 Response to Apple's Interrogatory No. 12 and the relevant portions of prior
2  art references cited in Samsung's August 22, 2011 Opposition to Apple's Motion for a
3  Preliminary Injunction and in Itay Sherman's August 22, 2011 Declaration in Support of
4  Samsung's Opposition to Apple's Motion for a Preliminary Injunction.[53]

104.   In addition, I have reviewed news articles and publications drawing attention to the similarity between the iPad and Samsung's Galaxy Tab 10.1.  For example, *eWeek* noted that "if mimicry is flattery, the Galaxy Tab has compliments galore for the iPad. … Looking like an unlikely offspring between the iPad and the iPhone 4, the Tab has an iPad-like front fascia as well as a camera-equipped back cover similar to the not-yet-released white iPhone. … Even the dock connector very closely mimics Apple's standard pinout."[54]  A *PC Magazine* review of the Galaxy Tab 10.1 stated that "most laymen could mistake [the Galaxy Tab 10.1] for an iPad."[55]  Likewise, a *PCWorld* article stated that: "In my hands-on testing, the Tab 10.1 achieved perhaps the best design compliment an Android tablet could hope for—often being mistaken by passers-by (including Apple iPad users) for an iPad 2.  The confusion is understandable when you see and hold the Tab 10.1 for the first time."[56]

105.   Moreover, Samsung's own documents indicate that it has received reports of consumers confusing the Galaxy Tab 10.1 and iPad 2, and returning it to the retailer for that very reason.  *See* SAMNDCA10154003-053 (*See* translation in Apple's Appendix of Certified Translation in Support of Opening Expert Reports); *see also* Feb. 24, 2012 S.E. Lee Dep. at 12:25-13:10; 27:12-20; 35:13-24; 48:18-51:17.

---

[53] I reserve the right to address any other prior art references that Samsung identifies.

[54] Michelle Maisto, "Samsung Galaxy Tab Nods to Apple iPad But Goes Own Way iFixit," eWeek, Nov. 12, 2010, http://www.eweek.com/c/a/Desktops-and-Notebooks/Samsung-Galaxy-Tab-Nods-to-Apple-iPad-But-Goes-Own-Way-iFixit-314074/.

[55] Michael Muchmore, "Unboxing the Samsung Galaxy Tab 10.1; It Doesn't Run Android 3.1 Yet, But the New Samsung Tablet Gives the iPad 2 A Run for Its Money," PC Magazine, May 10, 2011, http://www.pcmag.com/article2/0,2817,2385154,00.asp.

[56] Melissa Perenson, "Samsung Galaxy Tab 10.1 Wi-Fi:  A Worthy Rival to the iPad 2," PCWorld, June 8, 2011, http://www.pcworld.com/article/229763/samsung_galaxy_tab_101_wifi_a_worthy_rival_to_the_ipad_2.html.

# Exhibit 25



# iPhone Product Timeline

## Apple & Samsung

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

# Exhibit 27



Tablet Product Trends: Apple, Samsung, & Others