Timothy T. Scott (State Bar No. 126971)
tscott@kslaw.com
Geoffrey M. Ezgar (State Bar No. 184243)
gezgar@kslaw.com
Leo Spooner, III (State Bar No. 241541)
lspooner@kslaw.com
KING & SPALDING LLP
333 Twin Dolphin Drive, Suite 400
Redwood Shores, CA 94065
Telephone: +1 650 590 0700
Facsimile: +1 650 590 1900

Attorneys for Non-Party
INTERNATIONAL BUSINESS MACHINES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-CV-01846-LHK (PSG)<br><br>NON-PARTY INTERNATIONAL BUSINESS MACHINES CORPORATION'S REPLY IN SUPPORT OF ITS EMERGENCY ADMINSTRATIVE MOTION FOR A LIMITED SEALING ORDER<br><br>Judge: Hon. Judge Lucy H. Koh |

**NON-PARTY INTERNATIONAL BUSINESS MACHINES CORPORATION'S REPLY IN SUPPORT OF ITS EMERGENCY ADMINISTRATIVE MOTION FOR A LIMITED SEALING ORDER**

Non-Party International Business Machines Corporation ("IBM") hereby submits the following reply brief in support of its Emergency Administrative Motion for a Limited Sealing Order (the "Motion to Seal") and in response to Third-Party Intervenor Reuters America LLC's ("Reuters") Opposition to Motion to Seal Trial and Pretrial Evidence (the "Opposition" or "Opp.").

## I. INTRODUCTION

In its Opposition, Reuters argues that IBM's Motion to Seal is "moot" because "the licensing terms involving [IBM] were disclosed" with IBM's initial filing. Opp. at 19:6-7. On the contrary, IBM did not publicly file or otherwise publicly disclose its confidential payment information. Instead, IBM served a copy of its Motion to Seal on the attorney for Reuters based on Reuters' status as an intervening party, under the compulsion of Local Rule 79-5 and General Order 62, and under the reasonable expectation that Reuters' counsel would comply with his legal and ethical obligations to protect the confidentiality of the information until, at least, this Court could rule on IBM's Motion to Seal. IBM's disclosure under that compulsion and reasonable expectation cannot be the basis for "mooting" the very Motion to Seal to which it pertains. Reuters would violate the Protective Order in this case should it attempt to publicly disclose IBM's confidential information before the Court decided IBM's Motion to Seal.[1]  For the reasons set forth in IBM's opening brief, there are compelling reasons for a narrowly tailored sealing of this information, and IBM's Motion to Seal should be granted.

## II. FACTS

On July 17, 2012, Reuters America LLC ("Reuters") filed a motion to intervene in the above captioned matter. (Dkt. No. 1247). On July 26, 2012, IBM filed its Motion to Seal to restrict public access to IBM's confidential and proprietary payment terms in its December 22, 2010 IBM-Samsung Patent License Agreement ("IBM-Samsung PLA"), which is contained in

---

[1] Even if IBM's Motion to Seal is denied, unless and until IBM's confidential payment terms are introduced through proposed trial exhibit 630, Reuters remains bound by the Protective Order and should not independently disclose this information.

IBM's Repy ISO Motion to Seal      1      Case No. 11-cv-01846-LHK (PSG)

1  proposed trial exhibit No. 630. (Dkt. No. 1376). Local Civil Rule 79-5(c)(3) sets forth the

2  requirements for seeking to file of a portion of a document under seal and requires that "counsel

3  seeking to file that portion of the document under seal *must*…Lodge with the Clerk *and serve the*

4  *entire document*…" (emphasis added). Similarly, General Order No. 62 states that "In order to

5  move to electronically file … a portion of a document under seal pursuant to Civil Local Rule 79-

6  5(c) … (4) *serve manually*, but do not e-file, *the documents to be filed under seal*. (emphasis

7  added).

8       Thus, in order to comply with the requirements of Local Rule 79-5 and General Order 62,

9  upon the electronic filing of IBM's Motion to Seal, IBM was compelled to serve Reuters with an

10 unredacted copy of the exhibit that was filed under seal. In addition to complying with Local

11 Rule 79-5 and General Order 62, IBM also had the reasonable expectation that as an intervenor in

12 this case, Reuters would abide by the Protective Order entered by this Court on January 30, 2012,

13 pursuant to Federal Rule of Civil Procedure 26(c). (Dkt. No. 687). As a result, Reuters would

14 not have had access to IBM's confidential payment information that was the subject of its Motion

15 to Seal but for Reuters' status as an intervening party, and IBM's reasonable presumption that

16 Reuters would keep this information confidential pursuant to the terms of the Protective Order.

17      That Order explicitly applies to "any party to the case" and does not condition that

18 application on whether the party has signed the Protective Order. *Id*. ¶ 2(d). The Order also

19 states that "Protected Material designated under the terms of this Protective Order shall be used

20 by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other

21 purpose whatsoever." *Id*. ¶ 1(a). The Order further states that "Protected Material shall not

22 voluntarily be distributed, disclosed or made available to anyone except as expressly provided in

23 this Order" (*id*. ¶ 6(a)) and "[a]bsent written permission from the Producing Party or a court

24 Order secured after appropriate notice to all interested persons, a Receiving Party may not file in

25 the public record any Protected Material" (*id*. ¶ 15(a)).

26      Moreover, "[t]he inadvertent production by a Party of Discovery Material subject to the

27 attorney-client privilege, work-product protection, or any other applicable privilege or protection

28 … will not waive the applicable privilege and/or protection if a notice and request for return of

1  such inadvertently produced Discovery Material is made promptly after the Producing Party
2  learns of its inadvertent production." *Id*. ¶ 16(a). Finally, "inadvertent disclosure does not
3  change the status of Discovery Material or waive the right to hold the disclosed document or
4  information as Protected." *Id*. ¶ 18(b).[2]

5  After receiving IBM's unredacted exhibit to its Motion to Seal on July 27, Reuters failed
6  to inform IBM that it did not consider itself a "party" to the action, alert IBM that it would not
7  abide by the terms of the Protective Order or, as a result of those positions, alert IBM that the
8  document was inadvertently produced to Reuters. Rather, on Sunday July 29 at approximately
9  9:52 p.m., a Reuters employee named Dan Levin emailed IBM directly stating that Reuters had
10 obtained an unredacted copy of IBM's confidential information from Reuters' counsel, and that
11 Reuters intended to publish that information through its wire service, suggesting its deadline was
12 11 a.m. the following day.

13 Reuters' proposed action was both contrary to the provisions of the Protective Order, and
14 its confidentiality obligations associated with IBM's Motion to Seal. As such, IBM promptly
15 moved for a Temporary Restraining Order prohibiting publication of this information. (Dkt. No.
16 1472). This motion was heard before Magistrate Judge Paul Singh Grewal at 11:15 a.m. on July
17 30. (Dkt. No. 1471). While Magistrate Grewal ultimately denied IBM's request for a temporary
18 restraining order (Dkt. No. 1478), he left open the question of whether Reuters, should it publish
19 IBM's confidential information, was subject to both sanctions and possibly contempt of court for
20 violating the Protective Order.

21 **III. ARGUMENT**

22 IBM's Motion to Seal is not "moot" and should be granted. As an intervenor, Reuters
23 became a party to case and is bound by all prior orders and adjudications, including the
24 previously-entered Protective Order. *See* Fed. R. Civ. Pro. 24(b); *Hartley Pen Co. v. Lindy Pen*
25 *Co.*, 16 F.R.D. 141 (S.D. Cal. 1954); Wright & Miller 2d. 1920; 5 CFR 1201.34(d) (2010)
26 ("Intervenors have the same rights and duties as parties, with the following two exceptions: (1)

---

[2] Because IBM moved to seal this very information, and only provided it to Reuters counsel because of Reuters status as an intervenor, IBM obviously intended that the information would be protected, as set forth above.

IBM's Repy ISO Motion to Seal          3          Case No. 11-cv-01846-LHK (PSG)

intervenors do have an independent right to a hearing; and (2) Permissive intervenors may participate only on the issues affecting them."). By intervening and becoming a party, Reuters is not entitled to any special status simply because it is a member of the press corps; it remains subject to the Protective Order. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Based on its status as an intervenor, and pursuant to the terms of Local Rule 79-5 and General Order 62, IBM was compelled to serve Reuters with an unredacted copy of the document it intended to file under seal. That compulsion cannot "moot" IBM's Motion to Seal or otherwise act as a waiver of the confidential nature of the information. *See In re Adoble Systems, Inc. Sec. Litigation*, 141 F.R.D. 155, 161-62 (N.D. Cal. 1992) (under-seal filings preserve third parties' "legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated").

To the extent that Reuters contends it was not a party to this action or subject to the Protective Order, it should have immediately alerted IBM to what should be considered under Reuter's approach an "inadvertent production." Indeed, IBM believes that Reuters possessed this information prior to the hearing before this Court on Friday, July 27, 2012, and yet Reuters' counsel failed to raise mootness or seek any other guidance from the Court, and never brought the issue to IBM's attention. Rather, Reuters' counsel waited until the weekend and provided the information to his client, who then independently contacted IBM and threatened publication. As this Court previously held: "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged." *Oracle Am., Inc. v. Tech Distribs.*, LLC 2011 U.S. Dist. LEXIS 78786, at *19-20 (N.D. Cal. July 20, 2011) *citing Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817, 68 Cal. Rptr. 3d 758, 171 P.3d 1092 (Cal. 2007).

1  As a result, Reuters' counsel was required, at the very minimum, to immediately notify IBM and return the information since it was subject to the Motion to Seal and obviously appeared to be confidential. Indeed, Reuters' counsel should not have even shared the information with its client prior to the determination of IBM's Motion to Seal. *See, e.g., Wallis v. PHL Associates, Inc.*, 168 Cal. App. 4th 882 (2008) (upholding sanctions on attorney for instructing his client to review documents containing trade secrets that were intended to be filed under seal).

As set forth in IBM's Motion to Seal, there are compelling reasons to seal IBM's confidential balancing payment terms with Samsung. Motion to Seal at 2:18-3:7. Public disclosure of the payment terms under IBM's licensing agreements would negatively impact IBM in future license and settlement negotiations by giving counterparties unfair access to IBM's methodology and a significant data point to attempt to reverse engineer IBM's negotiation strategy and analyses, thereby providing an unfair advantage in calibrating future negotiations with IBM. As a result, confidential license agreements have been consistently held to meet the "compelling reasons" standard to support a limited motion to seal. *See, e.g., Electronic Arts, Inc. v. United States Dist. Ct. for the Northern District of California*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) (pricing terms, royalty rates, guaranteed minimum payment terms of licensing agreement constituted trade secrets). Thus, there are compelling reasons to grant IBM's narrowly tailored request to seal two balancing payment amounts that are revealed in proposed trial exhibit No. 630.

## IV. CONCLUSION

For all the reasons set forth above and in IBM's opening Motion to Seal, IBM's Motion is not "moot" and should be granted.

DATED: August 3, 2012          KING & SPALDING LLP

                                /s/ TIMOTHY T. SCOTT
                                TIMOTHY T. SCOTT
                                Attorneys for Non-Party
                                INTERNATIONAL BUSINESS MACHINES
                                CORPORATION