HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION FOR SPOLIATION ADVERSE INFERENCE INSTRUCTION AGAINST APPLE** |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

I. SAMSUNG FAILS TO MAKE A THRESHOLD SHOWING THAT ANY EVIDENCE WAS SPOLIATED ................................................................................... 2

    A. Unlike Samsung, Apple Does Not Use An Auto-Delete Email System ................ 2

    B. Apple Has Implemented Rigorous Measures To Preserve Evidence ..................... 3

    C. Apple Custodians Identified In Samsung's Charts Were Subject To Litigation Holds Independent Of This Lawsuit. ....................................................... 4

    D. Samsung's Charts Do Not Indicate Spoliation Of Evidence ................................. 5

II. THE FACTS AND CONCLUSIONS THAT LED THIS COURT TO SANCTION SAMSUNG DO NOT LEAD TO THE SAME RESULT AGAINST APPLE .................. 8

    A. Samsung Fails To Show That The Apple Was Under A Duty To Preserve Relevant Evidence Beginning In August 2010 ......................................................... 9

    B. Samsung Fails To Show That Apple Acted With A Culpable State Of Mind ...... 10

    C. Samsung Fails To Show That Any Documents That Supposedly Were Not Preserved Would Have Been Relevant ................................................................. 12

III. SAMSUNG IS NOT ENTITLED TO ANY ADVERSE INFERENCE INSTRUCTION AGAINST APPLE ............................................................................ 13

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Coburn PN II, Inc.*,
   No. 2:07-cv-00662-KJD-LRL,
   2010 WL 3895764 (D. Nev. Sept. 30, 2010) .................................................................... 11

*Fed. Trade Commc'n v. Lights of Am. Inc.*,
   No. SACV 10-1333 JVS (MLGx), 2012 WL 695009 (C.D. Cal. Jan. 20, 2012) ................... 11

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993) ............................................................................................ 2

*Kinally v. Rogers Corp.*,
   No. CV-06-2704-PHX-JAT, 2008 WL 4850116 (D. Ariz. Nov. 7, 2008) .............................. 11

*Micron Tech., Inc. v. Rambus Inc.*,
   645 F.3d 1311 (Fed. Cir. 2011) ....................................................................................... 10

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ..................................................................................... 9

**OTHER AUTHORITIES**

Cass R. Sunstein and Richard H. Thaler, *Libertarian Paternalism Is Not an Oxymoron*,
   70 U. Chi. L. Rev. 1159, 1172 (2003) ........................................................................... 3, 4

**INTRODUCTION**

Unlike Samsung, Apple did not spoliate evidence. Apple does not use an email system that automatically deletes emails after 14 days. Apple was not sanctioned before for its "decision not to flip an 'off-switch' even after litigation began." (Dkt. No. 1321 at 2.) Apple employs rigorous measures to ensure that relevant emails and other evidence are preserved.

Also unlike Samsung, Apple did not anticipate litigation in August 2010. The Court relied on the fact that Samsung itself had resolved all doubts about whether it anticipated litigation when it notified employees that "there is a reasonable likelihood of future patent litigation . . . ." (*Id.* at 16.) Samsung knew that it intended to continue making and releasing infringing products, and would thus provoke litigation with Apple, which is why it issued notices. Apple was not privy to Samsung's intent, nor did it issue any similar statement.

Samsung's "me too" motion falls far short of meeting the standards set forth in this Court's Order that imposed an adverse inference jury instruction against Samsung. Samsung's motion rests entirely on two charts showing limited email productions from some Apple custodians. But the Court's Order did not sanction Samsung just because of "statistical contrasts" in its productions. The Order that found that "Apple has suffered prejudice as a result of Samsung's spoliation of evidence" because "senior Samsung employees whose internal communications would have been especially probative to the claims at issue in this litigation" "used mySingle and produced little or no relevant documents." (Dkt. No. 1321 at 23.) The Court discussed specific documents and categories of documents these custodians should have produced but did not. (*Id*. at 19-20.)

Samsung makes no comparable showing, and fails to offer any analysis of why the custodians it identified should have had a larger number of relevant emails in the timeframe it places at issue. Nor could Samsung have made such a showing, had it tried. There are logical reasons that these Apple custodians produced limited numbers of documents—and few documents between August 2010 and April 2011. Samsung's charts include custodians who left Apple before August 2010, whose documents were privileged, and who played no role in designing Apple's products.

Samsung's motion reveals a gross misunderstanding of the Court's Order and a complete lack of contrition for the conduct that led to that Order. The motion is meritless and must be denied.

## I.  SAMSUNG FAILS TO MAKE A THRESHOLD SHOWING THAT ANY EVIDENCE WAS SPOLIATED

Courts have authority "to make appropriate evidentiary rulings *in response to the destruction or spoliation of relevant evidence.*" *See*, *e.g.*, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (emphasis added). Without a threshold showing that evidence has been destroyed, there is obviously no basis for spoliation sanctions of any kind.

There is no basis to find that Apple spoliated evidence. Unlike Samsung, Apple has a practice of document retention and does not use an auto-delete email system. Apple employs rigorous measures to ensure that relevant evidence is preserved for litigation—and most of the Apple custodians identified in Samsung's charts were subject to litigation holds well before August 2010. As Samsung well knows, there are logical reasons that these Apple custodians produced a limited number of documents and few documents between August 2010 and April 2011.

### A.  Unlike Samsung, Apple Does Not Use An Auto-Delete Email System.

Apple has no automatic email deletion policies or systems. (*See* Decl. of Beth Kellermann in Supp. of Apple's Opp. to Samsung's Mot. for Spoliation Adverse Inference Instruction Against Apple ("Kellermann Decl.") ¶ 3.) Apple has no policy requiring employees to delete particular emails. (*Id.* ¶ 5.) Apple employees who are *not* subject to document retention notices are encouraged to keep the size of their email accounts below certain limits, but Apple ensures that employees who *are* under document retention obligations *do not* receive any notices about the size of their email accounts. (*Id.*) Even for employees who are not under any obligation to retain documents, Apple's attempts to limit the size of email accounts goes no further than the issuance of automatic notices. (*Id.*) There simply is no automatic email deletion system or policy at Apple, period. (*Id.* ¶ 3.)

This is a crucial difference between Apple and Samsung. To preserve emails, Samsung's employees had to take the extraordinary steps of reviewing their emails to identify the relevant ones and then hitting "save," and had to do so every two weeks. As described in the Introduction to the July 24 Order, despite Samsung's having been sanctioned before for its "decision not to flip an 'off-switch' even after litigation began," it chose not to "build[] itself an off-switch." (Dkt. No. 1321 at 2.) The Order explained:

> In effect, Samsung kept the shredder on long after it should have known about this litigation, and simply trusted its custodial employees to save relevant evidence from it. The stark difference in production from mySingle and Microsoft Outlook custodians makes clear that this plan fell woefully short of the mark.

(*Id*. at 23.)

By contrast, Apple's emails were preserved unless its employees took affirmative steps to delete them. Empirical research establishes that there is an enormous difference between systems like Samsung's that require individuals to "opt in," by taking affirmative actions to preserve, and systems like Apple's that require individuals to "opt out," by taking affirmative actions to delete. *See* Cass R. Sunstein and Richard H. Thaler, *Libertarian Paternalism Is Not an Oxymoron*, 70 U. Chi. L. Rev. 1159, 1172 (2003). Moreover, for many key employees Apple separately retained a copyset of their work-related emails as a result of earlier document collections. Samsung's unwavering adherence to its auto-delete email system caused spoliation, and Apple used no such auto-delete system.

### B. Apple Has Implemented Rigorous Measures To Preserve Evidence.

Apple's policies and practices for document retention in connection with litigation are rigorous, thorough, and state-of-the-art. (Kellermann Decl. ¶ 2.) Apple has a team of litigation eDiscovery specialists who operate under the direction of Litigation eDiscovery Manager Beth Kellermann, whom Samsung deposed more than five months ago as Apple's corporate representative on document preservation and collection. As Ms. Kellermann has explained, Apple issues document retention notices to all employees who counsel has determined may have information that is potentially relevant to a specific matter. (*Id.* ¶ 4.) Document retention notices are typically sent by email from the Vice President, Litigation to individual custodians. (*Id.* ¶ 5.)

After a legal hold issues, counsel may conduct individual data-collection interviews of those individuals identified as likely to have relevant information. (*Id.* ¶ 4.) During the interview, employees are asked questions about their document- and email-storage practices. (*Id.*) Counsel also separately confirms that each individual interviewed has received a document retention notice and understands his or her document retention obligations. (*Id.*) If relevant documents are identified during the course of the interview, a collection is conducted by a computer analyst specially trained in techniques for collecting data from Apple computer equipment in a forensically sound manner. (*Id.*) Typically, such a collection includes making a *complete* copy of *all* of the employee's work-related email accounts. (*Id.*)

### C. Apple Custodians Identified In Samsung's Charts Were Subject To Litigation Holds Independent Of This Lawsuit.

Over the years leading up to this action, many Apple employees were subject to multiple document retention notices relating to different lawsuits. As a result, the rigorous document retention preservation methods described above had already been implemented before August 2010 for many of the custodians named in Samsung's charts:

- Bart Andre received 19 retention notices
- Brian Huppi received 3 retention notices
- Christopher Stringer received 14 retention notices
- Duncan Kerr received 16 retention notices
- Eugene Whang received 8 retention notices
- Jonathan Ive received 41 retention notices
- Matthew Rohrback received 17 retention notices
- Rico Zorkendorfer received 1 retention notice
- Shin Nishibori received 3 retention notices
- Steven Lemay received 32 retention notices
- Scott Forstall received 78 retention notices

(Kellerman Decl. ¶ 7.)

1    The net effect of the regular issuance of so many document retention notices is that many Apple employees have adopted the practice of attempting to retain all substantive documents and communications relating to their work. (*Id.* ¶ 7.) Thus, although the subject matter of the documents subject to the prior retention notices may not have overlapped entirely with those of the instant case and many would have expired, those notices greatly reduced any risk that relevant information was destroyed.

In addition to having received retention notices in other cases, many Apple employees have been through prior collections in other cases. Apple typically makes a complete copy of all work-related email when it conducts a document collection. (*Id.* ¶ 4.) This preserves not only those emails that may be relevant to the particular issue triggering the litigation hold, but *all* the employees' work emails, which are then available for production in future cases. Prior email collections of senior executives such as Steve Jobs, Jonathan Ive, and Scott Forstall—all of whom are listed in Samsung's charts—were among those retained and used for this case. (*Id.* ¶ 9.) This safeguard further reduced the risk that any relevant email was lost.

Apple implemented separate procedures for its former CEO Steve Jobs, who was regularly identified as having data that could potentially be relevant to many different pieces of litigation. (*Id.* ¶ 8.) Apple retained and searched his data and apprised him of the materials he was required to preserve. (*Id.*) As part of these procedures, Apple from time to time made and retained copies of his email account. (*Id.*) There is no basis to speculate that any Jobs emails were destroyed.

### D.    Samsung's Charts Do Not Indicate Spoliation Of Evidence

Samsung's supposed "evidence" of spoliation consists of nothing more than charts identifying (1) some Apple custodians who produced few to no emails and documents, and (2) some custodians whose productions contained fewer emails that they sent or received than were produced from the files of others. These charts, standing alone, do not establish or even suggest spoliation.

First, the "statistical contrasts" that Samsung attempts to establish are insufficient to establish spoliation. Samsung's insistence that this Court sanctioned Samsung based solely on comparable statistics shows a gross misunderstanding of the Court's Order. The Order

specifically addressed the consequences of Samsung's failure to suspend its auto-delete function, analyzing the lack of evidence produced by "at least 14 key fact witnesses" who would have had evidence "especially probative to the claims at issue in this litigation." (Dkt. No. 1321 at 19-21, 23.) The Order did not create a per se rule that a custodians' failure to produce email, large quantities of documents, or documents produced by other employees warrants an adverse inference instruction. Samsung does not explain why the custodians it points to would have had relevant evidence between August 2010 and April 2011, and offers no analysis of documents that other employees produced that these custodians did not. Samsung's charts provide far less than what the Court's Order relied upon to find that a spoliation sanction against Samsung was warranted.

Samsung knows perfectly well why many of the individuals included in its first chart (Mot. at 6-7) would have few to no emails or documents in Apple's production. For instance:

- Chris Harris and Mark Lee are model builders who have *no role* in designing Apple's products. (*See* Decl. of Jason Bartlett in support of Apple's Opp. to Samsung's Mot. for Spoliation Adverse Inference Instruction Against Apple ("Bartlett Decl.") Ex. 7 at 43:25-45:3; Bartlett Decl. Ex. 8 at 36:25-37:22, 64:4-15.) There is no reason to believe that they would have generated emails responsive to Samsung's document requests.
- Mark Buckley is a financial analyst who prepares financial information obtained from Apple's Finance department for production in litigation. He also regularly testifies as Apple's corporate representative in depositions. Apple told Samsung that it would collect but not produce Mr. Buckley's emails because they are predominantly work product. Instead, Apple produced the financial summaries Mr. Buckley prepared for this case—exactly what Apple said it would do. (Bartlett Decl. Ex. ¶ 3; Ex. 1.)
- Brian Huppi *left* Apple in April 2010, as he informed Samsung's lawyers who deposed him. (Bartlett Decl. ¶ 7; Ex. 4 at 9:20-10:17.) He was recently rehired,

1    which is the reason he received a document retention notice relating to this case in
2    January 2012.  (Bartlett Decl. ¶ 7.)

3  • Douglas Satzger left Apple in 2008 when he was not subject to a document
4    retention notice, so his emails were not retained.  (Kellermann Decl. ¶ 10; Bartlett
5    Decl. Ex. 6.)

6  • Samsung alleges that Quinn Hoellwarth worked on the prosecution of the '949 and
7    '757 patents.  Samsung is wrong, but in any event those are patents at issue in the
8    parties' separate ITC litigation, not this one.  The prosecution work
9    Mr. Hoellwarth did in connection with the patents-in-suit in *this* case took place
10   *before* he joined Apple, and Apple collected and produced documents regarding
11   that work from his former employer.  (Bartlett Decl. ¶ 5.)

12 • Evans Hankey is not an inventor on any patent in suit and did not work on the
13   industrial design of the original iPhone.  (*Id.* Ex. 10.)  She does not consider
14   herself an industrial designer.  She manages meetings and supervises CAD
15   computer operators and human factors engineers.  (*Id.*)

16  Samsung's continued willingness to play fast-and-loose with the facts further discredits
17  Samsung's baseless motion.

18         Samsung's second chart lists nine custodians who produced fewer emails than were
19  produced, with their names on them, from the files of others.  Many of the numbers in this chart
20  are simply wrong.  For example, according to Samsung's chart, Apple produced 1,676 non-
21  custodial emails for Scott Forstall.  (Mot. at 8.)  Our records show that Apple produced a total of
22  1,027 emails sent by, received by, or copying Mr. Forstall, counting both custodial and non-
23  custodial email.  (Bartlett Decl. ¶ 2.)  Similarly, Samsung claims that Apple produced 2,028 non-
24  custodial emails for Stephen Lemay (Mot. at 8), even though Apple produced a total of 1,029
25  custodial *and* non-custodial emails sent by, received by, or copying Mr. Lemay.  (Bartlett Decl.
26  ¶ 2.)  Samsung's count of non-custodial emails is also incorrect for Eugene Whang, Jonathan Ive,
27  Matthew Rohrbach, Shin Nishibori, Chris Stringer, and Steve Jobs.  (*Id.*)

28

1    Samsung also is wrong that the identified custodians' failure to produce some emails
2 produced from others' files establishes spoliation. Samsung fails to account for the fact that
3 Apple used different search parameters in searching for documents in the custodial files of
4 different employees, in accordance with their roles in the company and their relationship to the
5 case. Thus, it can be perfectly appropriate for one employee to produce a document that another
6 does not. Apple's search terms were disclosed to Samsung during discovery in correspondence
7 and in the "transparency disclosures" that the Court ordered the parties' to provide. (Bartlett
8 Decl. ¶ 6.)
9    Nor does Samsung account for the fact that the bulk of Apple's production of custodial
10 and non-custodial emails from the nine employees listed in Samsung's chart were created before
11 August 23, 2010, when Samsung contends Apple became subject to a duty to preserve. (*Id.* ¶ 2.)
12 Samsung can hardly fault Apple for any discrepancies among employees in retaining emails
13 created before Samsung asserts Apple had a duty to preserve. To the contrary, the fact that Apple
14 produced more than 4,000 emails from these nine employees that pre-dated August 23, 2010
15 confirms that Apple preserved rather than destroyed evidence—even before it was supposedly
16 under a preservation duty. For example, Samsung points to non-custodial emails sent or received
17 by Douglas Satzger. Mr. Satzger left Apple in 2008 when he was not under a document retention
18 obligation. His work emails were not retained. (Kellermann Decl. ¶ 10; Bartlett Decl. Ex. 6.)
19 Samsung's chart confirms that others retained emails long after Mr. Statzger left Apple, but that is
20 surely no evidence of spoliation.
21    In sum, Samsung fails to show that Apple destroyed *any* relevant evidence, let alone that it
22 did so at a time and in a manner that constitutes spoliation. For this reason alone, Samsung's
23 motion should be denied. There is, moreover, nothing in the Court's Order sanctioning Samsung
24 for spoliation that would lead to a contrary conclusion.
25
26 **II.    THE FACTS AND CONCLUSIONS THAT LED THIS COURT TO SANCTION SAMSUNG DO NOT LEAD TO THE SAME RESULT AGAINST APPLE**
27    In issuing spoliation sanctions against Samsung, the Court applied the following three-part
28 test:

> "[a] party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

(Dkt. No. 1321 at 6-7 (footnotes omitted) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). Even if Samsung had established the threshold requirement that documents were destroyed—which it did not—Samsung fails to establish any of the three required elements for spoliation. The facts that led the Court to sanction Samsung for its spoliation do not apply to Apple.

### A. Samsung Fails To Show That The Apple Was Under A Duty To Preserve Relevant Evidence Beginning In August 2010

The Court's Order relied on evidence that on August 23, 2010, Samsung issued litigation hold notices to some employees stating in relevant part that "'*there is a reasonable likelihood of future patent litigation between Samsung and Apple unless a business resolution can be reached*,'" which the Court found to be an admission that Samsung recognized that litigation was foreseeable. (Dkt. No. 1321 at 16-17 (footnote omitted).) Samsung contends that Apple was necessarily under a duty to preserve at the same time, because Apple prepared the August presentation to Samsung and it was "Apple that chose to litigate." (Mot. at 5.)

Samsung is wrong that Apple's duty to preserve mirrored Samsung's. Apple negotiated with Samsung in good faith after first apprising Samsung of its infringement claims. It was only after Samsung announced a new round of infringing products in Spring 2011 that Samsung made clear to Apple that it would not stop copying Apple's products. (Dkt. No. 128 ¶¶ 18-22.) Samsung, in contrast, was designing and planning to release new infringing products throughout that period, and therefore cannot claim that it did not anticipate litigation. (*See, e.g.*, Dkt. No. 987 (under seal) at 4 (describing pre-complaint documents as "relat[ing] to steps in the design and development process).) Only Samsung knew that its continuing conduct would provoke litigation between the parties, and that is why Samsung notified its employees that litigation was reasonably likely.

Samsung's cited authority recognizes that litigation "will generally be less foreseeable" when parties "have a business relationship that is mutually beneficial," as Samsung and Apple had. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1325 (Fed. Cir. 2011). (*See* Dkt. No. 1392 at 2 (Samsung's description of parties' "longstanding business relationship . . . and the history of successful negotiations between them").)[1] In the absence of additional information about Samsung's plans, Apple was entitled to rely on the parties' business relationship while the parties negotiated. Samsung, on the other hand, knew it was planning a new round of infringing products, and thus was not entitled to rely on this business relationship.

### B. Samsung Fails To Show That Apple Acted With A Culpable State Of Mind

Samsung's attempt to transfer this Court's findings of Samsung's conscious disregard of its preservation duties to Apple smacks of both denial and defiance. The Court's discussion of Samsung's disregard of its preservation duties is firmly set in the context of Samsung's auto-delete email system. The Court explained:

> It is Samsung's continued use of its biweekly email destruction policy, Apple argues, without any methodology for verifying whether Samsung employees at all complied with the instructions they were given, that is dispositive to the instant question [of Samsung's "culpable state of mind"].... The court agrees with Apple.

(Dkt. No. 1321 at 17-18.) Even after having been sanctioned before for auto-deleting emails during litigation, Samsung chose not to "build[] itself an off-switch—and us[e] it—in future litigation such as this one," the Court observed. (*Id.* at 2.) Apple does not auto-delete, and therefore did not need to build an off-switch.

Samsung asserts that Apple acted in conscious disregard of its preservation obligations because it did not issue litigation hold notices until after it filed its complaint. As shown above,

---

[1] Contrary to Samsung's argument (Mot. at 4, 9), *Micron* did not hold that a plaintiff's duty to preserve necessarily arises before its opponent's does. There the court noted that "when Rambus sued Hitachi," it was the plaintiff and made the decision that "was the determining factor in whether or not litigation would in fact ensue." 645 F.3d at 1325 (emphasis added). But that was just one factor in the "totality of the circumstances" that the court considered in determining when litigation was reasonably foreseeable. *Id.* Here, unlike in *Micron*, Apple was entitled to rely on the parties' long-standing, mutually beneficial business relationship, which was another factor identified by the *Micron* court. *Id.*

Apple was under no duty to preserve until it learned of Samsung's intent to release new infringing products in Spring 2011. Samsung cites no authority finding any impropriety—much less "conscious disregard"—in a short delay between filing a complaint and issuing hold notices. To the contrary, Samsung relied on authority holding that "[m]ere speculation that documents must have been destroyed in the absence of a litigation hold is insufficient to show spoliation." *Federal Trade Commc'n v. Lights of Am. Inc.*, No. SACV 10-1333 JVS (MLGx), 2021 WL 1095008, at *4 (C.D. Cal. Jan. 20, 2012). See also *Coburn PN II, Inc.*, No. 2:07-cv-00662-KJD-LRL, 2010 WL 3895764, at *6 (D. Nev. Sept. 30, 2010) (Defendant's "protest that . . . it should have received more emails from a specific time period, is insufficient to support a claim that [plaintiff] intentionally destroyed relevant evidence"); *Kinally v. Rogers Corp.*, No. CV-06-2704-PHX-JAT, 2008 WL 4850116, at *5 (D. Ariz. Nov. 7, 2008) (lack of production of email insufficient to prove spoliation).

Nor was Apple remiss simply because it issued notices in January 2012 to five employees who Samsung describes as "critical designers and inventors of the very patents it asserted were infringed." (Mot. at 3.) This wild accusation is premised on the dates that document retention notices were issued to Christopher Harris, Christopher Hood, Mark Lee, Chris Prest and Brian Huppi. (Mot. at 4 (naming Huppi and citing Binder Decl. ¶ 8); Binder Decl. ¶ 8 (naming Harris, Hood, Lee, and Prest).) Brian Huppi is the *only* inventor in that bunch. Yet as discussed above, he *left* Apple in April 2010 and received a document retention notice less than a month after he returned to Apple January 31 of this year. (Bartlett Decl. ¶ 7.)[2]

None of the other four employees was an inventor or designer on the patents at issue. Christopher Harris and Mark Lee are model makers who, as Apple told Samsung on multiple occasions, did not participate in designing Apple's products. (*Id*. Ex. 3.) As predicted, Mark Lee had only eight emails that met the criteria for production in this case and Christopher Harris *none*. (*Id*. ¶ 2.) Christopher Hood is a CAD computer operator whose job is to implement designs

---

[2] Notably, Brian Huppi was an inventor on the '607 patent, which has been *dismissed* without prejudice from the case.

created by the industrial designers in computer models. (*Id*. Ex. 3.) Apple did not identify him as potentially relevant to the issues in dispute, but issued a hold notice anyway after Samsung noticed his deposition in December. (*Id*.) In any event, Samsung does not complain that too few documents were produced from his files—Mr. Hood does not appear in Samsung's charts. Christopher Prest is a mechanical designer, not an industrial designer, who worked on *materials* relating to later generation iPhones. He did not work on the original iPhone at all, nor on the project that led to the issuance of the D'889 tablet design patent. (Bartlett Decl. Ex. 11 at 6:18-21, 25:1-20.) Further, none of the asserted claims contain materials-related elements. Mr. Prest's role was, *at most*, peripheral to the issues in dispute. Apple issued a hold notice to Mr. Prest only in an abundance of caution after Samsung noticed him for deposition in December.

### C. Samsung Fails To Show That Any Documents That Supposedly Were Not Preserved Would Have Been Relevant

Unlike Samsung, Apple has few documents created between August 2010 and April 2011 that are relevant to this dispute. Apple's discoverable documents, especially those from the custodians Samsung mentions in its brief, largely date from before August 2010. This is because the work Apple inventors and designers did that pertains to this case was largely finished by 2007 in the case of the iPhone, and by early 2010 in the case of the iPad. Of all the witnesses identified in Samsung's analysis, only one was identified as having evidence relevant to Samsung's counterclaims against Apple. (Mot. at 6 (identifying Curt Rothert).) And except for Steve Jobs, none was involved in negotiations with Samsung. Nearly all of the witnesses are involved in the case because of their work *before* August 2010 relating to Apple's claimed designs and inventions.

Samsung, by contrast, had just launched its first round of infringing products when the parties started negotiating in August 2010, and (unknown to Apple) started working on a second round of infringing products with an intent to release them in Spring 2011. Thus Samsung's failure to implement its litigation hold after August 2010 led to the destruction of a great deal of evidence that is *directly* relevant to the facts in dispute. For example, Apple showed that "Minyouk Lee, the head Samsung designer responsible for the industrial design of Samsung's

accused Galaxy S products, did not produce any emails." (Dkt. No. 1321 at 20.) Mr. Lee's documents were clearly relevant, especially as Samsung has informed Apple and this Court that Mr. Lee "will testify regarding ... design of the accused Samsung products." (Dkt. No. 1278 at 4.)

Nor is Mr. Lee the only example Apple cited in support of its motion. Also on Samsung's witness list is Dr. Won Pyo Hong. (Dkt. No. 1278 at 24.) As discussed in the Court's Order, Dr. Hong is

> the head of Samsung's Product Strategy Team, which includes the Design Group responsible for designing Samsung's 'Galaxy' smart phones and tablet computers.... Dr. Hong failed to preserve his April 17, 2011 email regarding comparisons of Apple products that the court cited in granting Apple's motion to compel his deposition. Dr. Hong also failed to preserve an email he received that describe how Samsung needed to respond to the iPad2 with a slimmer Galaxy Tab.

(Dkt. No. 1321 at 19-20 (footnotes omitted).) The Court discussed three other "particularly noteworthy" examples of key Samsung employees who had failed to preserve relevant emails. (*Id.*) Based on Apple's showing, the Court found that "Apple has suffered prejudice as a result of Samsung's spoliation of evidence," including because several "senior Samsung employees whose internal communications would have been especially probative to the claims at issue in this litigation" "used mySingle and produced little or no relevant documents." (Dkt. No. 1321 at 23.)

In contrast to Apple's fulsome showing that the missing documents would have been relevant, Samsung relies *only* on statistics. (Mot. at 6-8.) Thus, Samsung's motion does not even attempt to establish the critical element of relevance. And for reasons discussed above, Samsung could not have established relevance if it had tried.

### III.  SAMSUNG IS NOT ENTITLED TO ANY ADVERSE INFERENCE INSTRUCTION AGAINST APPLE

*If* actual spoliation occurs, and *if* the party seeking sanctions establishes all three elements of the test for sanctions, a court must then determine "the least drastic [sanction] available to adequately mitigate the prejudice" to the other party. (Dkt. No. 1321 at 22.) Because Samsung has failed to establish actual spoliation or *any* of the three elements required for sanctions, there has been no sanctionable conduct and no sanction is warranted.

Samsung's argument for an adverse inference sanction against Apple does not even attempt to apply the three-part legal test for sanctions. Samsung simply asserts that, because Apple "fail[ed] to issue *any* litigation hold notices until after it filed this lawsuit . . . any adverse inference instruction given as against Samsung must be given as against Apple as well." (Mot. at 8-9.) That is no argument at all.

## CONCLUSION

Samsung's "me too" motion for an adverse inference instruction against Apple shows Samsung's absolute lack of contrition for its own spoliation of evidence and its status as a serial spoliator, and reveals a gross misunderstanding of the Court's July 25 Order. Samsung's motion is deficient on every level and should be denied.

Dated: August 6, 2012    MORRISON & FOERSTER LLP

By:   */s/ Jason R. Bartlett*
     Jason R. Bartlett

     Attorneys for Plaintiff
     APPLE INC.