1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
2 | charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
3 | San Francisco, California 94111
Telephone: (415) 875-6600
4 | Facsimile: (415) 875-6700

5 | Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
6 | Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
7 | 555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
8 | Telephone: (650) 801-5000
Facsimile: (650) 801-5100

9 |
Michael T. Zeller (Cal. Bar No. 196417)
10 | michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
11 | Los Angeles, California 90017
Telephone: (213) 443-3000
12 | Facsimile: (213) 443-3100

13 | Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
14 | AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

15 |

16 | UNITED STATES DISTRICT COURT

17 | NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation,                    CASE NO. 11-cv-01846-LHK (PSG)

19 |               Plaintiff,                                 **SAMSUNG'S REPLY IN SUPPORT OF
                                                             MOTION FOR SPOLIATION ADVERSE
20 |        vs.                                               INFERENCE INSTRUCTION AGAINST
                                                             APPLE**
21 | SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity; SAMSUNG
22 | ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG
23 | TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,
24 |
                 Defendants.
25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................................... 1

II.   ARGUMENT ................................................................................................................... 2

    A.   Apple Offers No Basis To Conclude That Its Preservation Duty For Its Own
        Claims Only Arose Months After Samsung Became Subject To That Same
        Duty ...................................................................................................................... 2

    B.   Apple Destroyed Evidence With A Culpable State Of Mind.................................... 5

    C.   Apple's Admitted Failure To Preserve Evidence, While Encouraging
        Deletion Of Email, Resulted In Destruction Of Relevant Evidence ........................ 9

    D.   The Evidence At Trial So Far Confirms That Apple's Spoliation Has
        Prejudiced Samsung .............................................................................................. 14

III.  CONCLUSION ............................................................................................................... 15

**SAMSUNG'S MOTION TO COMPEL APPLE TO PRODUCE RECIPROCAL EXPEDITED DISCOVERY**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
   910 F.2d 804 (Fed.Cir.1990)....................................................................................14

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
   591 F. Supp. 2d 1038 (N.D. Cal. 2006),  ...............................................................14

*Micron Tech. v. Rambus, Inc.*,
   645 F.3d 1311 (Fed. Cir. 2011)...................................................................1, 3, 4, 14

*Stewart v. Ragland*,
   934 F.2d 1033 (9th Cir. 1991)..................................................................................15

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed Cir. 2011)................................................................................14

**SAMSUNG'S MOTION TO COMPEL APPLE TO PRODUCE RECIPROCAL EXPEDITED DISCOVERY**

## I.   PRELIMINARY STATEMENT

Why was August 2010 the right date triggering Samsung's obligation to preserve documents while the right date for Apple was not until April 2011?

In its opposition to Samsung's request for equal treatment – what this Court twice described, in the earlier spoliation argument, as a "terrific motion" – Apple argues it was entitled to rely on the "longstanding business relationship between the parties" to assume there would be no lawsuit, but Samsung was not.   Yet Apple knew that it considered products Samsung had already released as of August 2010 to be infringing; Apple admits this.   Opp. at 12.   And it was *only* Apple that knew this, and *only* Apple that knew that it planned to accuse such products of infringement, for Apple's design patents were not even a part of its August 2010 presentation to Samsung.   Apple's position that Samsung was on notice of the claims Apple ultimately decided to bring eight months before Apple was, despite Apple's admitted belief that Samsung had already infringed Apple's design patents, is unprecedented, unsupported, and directly contrary to the Federal Circuit's teachings in *Micron.*

Thus, the case for a duty to preserve as of August 2010 is much stronger as to Apple than Samsung; if Samsung had a duty, plainly Apple did as well.   Despite this duty, Apple admits that it issued *no* litigation holds whatsoever and took *no* steps to preserve documents in connection with *this* case until at least eight months had passed since the duty to preserve was triggered. Apple argues that its failure to preserve caused no prejudice because it did not have an automatic delete policy in place.   But it had an automatic reminder to delete policy, which regularly reminded and indeed "encouraged" employees to delete emails in order "to keep their email accounts below certain limits."   Opp. at 2.   Apple did not "turn off" its automatic deletion encouragement system until at least April 2011.   No case has ever held that it is perfectly okay to destroy relevant documents despite an obligation to preserve so long as the destruction is "opt in" versus "opt out"; plainly that is not the law.

Moreover, that Apple's "encouragement" of email destruction actually caused prejudice is apparent here.   Nowhere does Apple deny that among the 19 key custodians Samsung identified in its motion, Apple has produced only *66 emails* from the August 2010 to April 2011 period.

1    And the trial testimony so far has confirmed that employees for whom Apple's production was

2    remarkably scant had key roles in the development of the products at issue, and likely would have

3    had emails discussing the Samsung products Apple claims were released during the time Apple

4    admits it failed to take any preservation steps related specifically to this case.

5            This also answers Apple's vague assertions about *other* litigation holds it has issued in

6    connection with *other* unnamed cases.    Whatever Apple's preservation and collection activities

7    *not* connected to this case have been, they demonstrably did not preserve evidence relevant to *this*

8    case because so little Apple evidence from the August 2010-April 2011 period has been produced.

9    Indeed, as the charts below demonstrate, none of the people called out by Apple for receiving

10   repeated notices in *other* cases made substantial productions in *this* one.    Moreover, documents

11   that Apple destroyed through its policy of encouraging email deletions surely were relevant; Apple

12   monitored, analyzed and benchmarked Samsung's products during the time period when it utterly

13   ignored its duty to preserve relevant evidence.    Without question, documents that Apple

14   destroyed contained product comparisons and admissions that should have been preserved and

15   produced for Samsung's use in this case.

16          The evidence demonstrates that Apple destroyed and did not produce relevant evidence,

17   particularly from the August 2010-April 2011 time period.    Apple's admitted failure to take steps

18   to preserve evidence during this period and its policy of encouraging email deletions where no

19   litigation hold is in place explains this.    As a matter of law, Apple had a duty to preserve

20   evidence relating to its own unasserted claims if Samsung did.    The elements for a permissive

21   adverse inference are therefore met, and such an instruction should be given.

22   **II.        ARGUMENT**

23           **A.      Apple Offers No Basis To Conclude That Its Preservation Duty For Its Own
                         Claims Only Arose Months After Samsung Became Subject To That Same
24                       Duty**

25           Apple admits it made no effort at document preservation relevant to *this case* until after the

26   complaint was filed in April 2011.    Yet it claims that does not matter because it had no

27   preservation obligations until it filed its complaint, while Samsung's obligations on those very

28   same claims arose more than seven months earlier.    How can that possibly be?    Apple's

1  untenable response is that Samsung was on notice of Apple's claims before Apple was.    This

2  turns the law on its head, for Apple has no answer to the Federal Circuit's holding that it is the act

3  of a "plaintiff-patentee," who makes the "decision whether to litigate or not," that is "the

4  determining factor in whether or not litigation would in fact ensue.    In other words, whether

5  litigation was reasonably foreseeable was largely dependent on whether [Apple] chose to litigate.

6  It is thus more reasonable for a party in [Apple]'s position as a patentee to foresee litigation that

7  does in fact commence, than it is for a party in the manufacturers' position as the accused."

8  *Micron Tech. v. Rambus, Inc.*, 645 F.3d 1311, 1325 (Fed. Cir. 2011).

9        Apple defends its request for a seven-month deferral of the preservation duty it claims

10  arose as to Samsung in August 2010 by claiming that "[i]t was only after Samsung announced a

11  *new* round of infringing products in Spring 2011 that Samsung made clear to Apple that it *would*

12  *not stop* copying Apple's products."    Opp. at 9 (emphasis added).    But Apple admits that it

13  believed Samsung *had already released* "infringing products when the parties started negotiating

14  in August 2010" (Opp. at 12), and in fact eight separate Samsung products that Apple ultimately

15  accused as infringing were released between July 2010 and April 2011.[1]    Apple thus knew (1)

16  what Samsung's products looked like, (2) how broadly it construed its own patents, and (3) that it

17  believed Samsung's products were infringing—which is more than enough, under the Court's

18  prior ruling and the Federal Circuit's *Micron* decision, to trigger a duty to preserve.    It is also

19  much *more* notice of forthcoming claims than Samsung had since Samsung had no idea that Apple

20  broadly construed its design patents or planned to sue Samsung for allegedly infringing them.    If

21  the products Samsung issued after August 2010 were so different as to give rise to an entirely

22  distinct set of claims, such that Apple's preservation obligation only arose after those new

23  products were issued, then that same logic compels the conclusion that Samsung had no

24  preservation obligation on the claims Apple ultimately brought until those claims were filed.

25  _____

26  [1]    These are the Vibrant (released 7/15/10); Captivate (7/18/10); Fascinate (9/8/10);
    Mesmerize (10/27/10); Continuum (11/11/10) Galaxy S Showcase (i500) (11/15/10); Galaxy S 4G
27  (2/23/11); and Gem (4/1/11).    (*See* Joint Pretrial Statement and Proposed Order (Dkt. 1189) at 2-
    3 and 11-12.)

28

1    After all, it is notice of specific claims that triggers the preservation duty.    Apple's argument that

2    Samsung was on notice of Apple's own undisclosed claims before Apple was is incoherent, and

3    wrong.

4            Apple also argues that it "was entitled to rely on the parties' long-standing, mutually

5    beneficial business relationship" and their ongoing licensing negotiations as a justification to defer

6    a preservation obligation for seven months after it made its so-called infringement presentation to

7    Samsung.   Opp. at 10 n.1.   But Apple offers no explanation for why *Samsung* was not entitled

8    to rely on the same ongoing negotiations on which Apple purportedly relied other than to say that

9    Samsung "knew" it had infringing products in development.   Actually, Samsung has never

10   "known" its products are infringing—they are not, and Samsung has never believed otherwise.

11   The question is whether *Apple* was going to sue, and Apple, on the other hand, indisputably *did*

12   know of its own overbroad constructions of its design patents—something Samsung knew nothing

13   about as of the parties' August 2010 negotiations.   If anyone was entitled to rely on the parties'

14   licensing negotiations, it was Samsung, not Apple.

15           Apple points, lastly, to Samsung's limited document retention notice from August 2010 to

16   distinguish the parties.   It is true that Samsung made at least some efforts to preserve documents

17   starting in August 2010, while Apple made none.   Yet this could not possibly mean that Samsung

18   had a one-way preservation obligation on claims that Apple contemplated bringing, but had not

19   even threatened to bring at that time.   As the Federal Circuit has explained, "[t]he important

20   inquiry is not whether a particular document made litigation reasonably foreseeable, but whether

21   the totality of the circumstances as of the date of document destruction made litigation reasonably

22   foreseeable." *Micron*, 645 F.3d at 1325.   Samsung issued a limited document retention notice

23   in August 2010 *based on a presentation made by Apple* in the course of licensing negotiations—a

24   presentation that did not discuss, or threaten, litigation on any of Apple's design patents.   Dkt.

25   418, Ex. B.   If that presentation and statement triggered a duty to preserve as to infringement

26   claims brought by Apple eight months later, plainly Apple too had a duty to preserve as of August

27   2010, for it was only Apple, and not Samsung, that knew it was broadly construing its design

28   patents and intended to sue on them.

1    Apple admits it thought that Samsung's already-released products were infringing by

2    August 2010, and it ultimately sued on those products.    Apple had a duty to preserve by that date.

3    **B.    Apple Destroyed Evidence With A Culpable State Of Mind**

4    In the context of Apple's motion for adverse inference, conscious disregard was found

5    based on Samsung's failure "to send litigation hold notices in August 2010, beyond a select

6    handful of employees, when its duty to preserve relevant evidence arose" and its failure to provide

7    "follow-up" until April 2011, after Apple filed its complaint.    Dkt. 1321 at 19:1-5.    These

8    arguments apply with far greater force to Apple's conduct.    Apple issued *no* litigation hold

9    notices until *after* it filed its complaint, and did not issue hold notices to key inventors and other

10   fact witnesses until months *after* filing its complaint.    (*See* Dkt. 1388-1 Binder Decl., ¶¶ 7-12.)

11   Likewise, Apple has shown no evidence that it ever "checked whether even a single [Apple]

12   custodian was at all in compliance with the given directives."    Dkt. 1321 (Order) at 19:4-5.

13   Apple's complete failure to take steps to preserve evidence relevant to this case during a lengthy

14   period when it had an obligation to do so reflects conscious disregard of its obligations.

15   Apple does not even attempt to defend its admitted failure to take any preservation steps

16   until after the Complaint was filed.    Apple's state of mind argument begins and ends with its

17   *post-Complaint* efforts.    Opp. at 10-12.    Even as to the post-April 2011 period, Apple's

18   corporate designee and declarant Beth Kellerman testified on behalf of Apple that she "can't speak

19   specifically to what we did in this case," so it is not surprising that her declaration does not even

20   address this key question.    Kellerman 30(b)(6) Deposition at 51:13-14.    As for its pre-

21   Complaint conduct—during the period August 2010 to April 2011 when Apple was subject to a

22   preservation obligation—here is what we now know, courtesy of Ms. Kellerman's declaration:

23   We know that Apple's preservation system only kicks in with the issuance of a formal litigation

24   hold.    It is only "*[a]fter a legal hold issues*, [that] counsel may conduct individual data collection

25   interviews" and other procedures are followed.    *See* Kellerman Decl., ¶ 4 (emphasis

26   added).    Apple's admission that its "rigorous measures" are triggered by the issuance of a

27   litigation hold renders them irrelevant, as nowhere does Apple dispute that it did not issue any

28   hold in connection with this case, to anyone, prior to the filing of the Complaint, and that some

-5-                          Case No. 11-cv-01846-LHK (PSG)
SAMSUNG'S REPLY ISO MOTION FOR ADVERSE INFERENCE INSTRUCTION AGAINST APPLE

1   witnesses did not receive holds until much later than that.    Nor does Apple contend that it

2   followed any of these steps here before April 2011, despite the preservation obligations that

3   applied much earlier.   Samsung followed these same procedures and more after it issued litigation

4   holds.  *See* Dkt. 987 (Samsung Opp. to Motion for Adverse Inference) at 7:7-9:9.   If conducting

5   such procedures after this lawsuit started did not suffice for Samsung, so too for Apple.

6          We also know that before a hold is formally issued, and therefore during the seven months

7   prior to April 2011, Apple employed an automatic reminder system that encourages employees to

8   delete emails.    According to Ms. Kellerman, employees are affirmatively "*encouraged* to keep

9   the size of their email accounts below certain limits, and "may receive automatic notices

10  requesting that they reduce the size of their email accounts."   *Id.* ¶ 5 (emphasis

11  added).   "Employees who are under document retention do not receive such notices," *id.*, but *no*

12  employees were under document retention in connection with this case for at least eight months

13  before Apple sued.   Encouraging witnesses to destroy emails in order to save space even after a

14  duty to preserve has been triggered is, far from a rigorous process that "ensure[s] that relevant

15  emails and other evidence are preserved" (Opp. at 1), conscious disregard of the obligation to

16  preserve relevant evidence.

17         Apple trumpets its claims that it "has no automatic email deletion policies or systems" and

18  "has no policy requiring employees to delete particular emails," proclaiming "[t]here simply is no

19  automatic email deletion system or policy at Apple, period."   Opp. at 2.   But Apple's reminder

20  system is as automatic as Samsung's—emails encouraging reduction of email in-boxes are sent

21  automatically.    Moreover, the question for the Court is not whether records were destroyed

22  *pursuant to an "automatic email deletion system"*; it is whether they were destroyed when there

23  was an obligation to preserve them, period.   Apple records plainly were destroyed despite a

24  preservation obligation here, as the sheer lack of emails from the August 2010 to April 2011

25  period shows.   Apple's point is thus *not* that it did not destroy evidence—it plainly did.   Its point

26  is that it did not *automatically* destroy evidence ("opt-out"), and instead encouraged its personnel

27  to do so manually ("opt-in").   It is no surprise that Apple cites no authority that such a distinction

28

1  matters when it comes to spoliation. Obviously manual destruction of relevant evidence counts as

2  spoliation when there is a duty to preserve.

3      So we know that Apple did not put in place any preservation methods from August 2010 to

4  April 2011, and that during that time, employees were encouraged to delete emails to reduce the

5  size of their in-boxes. But Apple still claims none of this matters and does not show that it acted

6  with a culpable state of mind, because some witnesses received litigation hold notices relating to

7  *other* lawsuits at *other* periods of time regarding *other* products. Why Apple believes a

8  discussion of unspecified litigation holds issued in *other* cases satisfies its obligations in *this* case

9  is unclear—especially since Apple itself admits "the subject matter of the documents subject to the

10  prior retention notices may not have overlapped entirely with those of the instant case and many

11  would have expired". Opp. at 5. Apple offers no evidence of either the subject matter of its

12  other cases or the time frame of the holds it issued, and does nothing to answer the question of

13  what it did to preserve documents *relevant to this case* from August 2010, when it had a duty to

14  preserve, until it finally issued litigation hold notices after April 2011.

15      Moreover, despite Apple's claim that its litigation hold notices in other cases "greatly

16  reduced any risk that relevant information was destroyed" (Opp. at 5), Apple cites prior litigation

17  hold notices for only 11 of the 21 custodians discussed in Samsung's motion, omitting Mr. Jobs

18  and others from this discussion. And even as to the custodians Apple identifies, the fact remains

19  undisputed that each produced very low numbers of total emails in this litigation—showing that

20  other-case hold notices did not preserve this-case evidence:

| Custodian | Number of Litigation Holds Received | Total Number of Emails Produced |
|---|---|---|
| Bart Andre | 19 | 14 |
| Brian Huppi | 3 | 0 |
| Christopher Stringer | 14 | 15 |
| Duncan Kerr | 16 | 41 |
| Eugene Whang | 8 | 36 |
| Jonathan Ive | 41 | 45 |
| Matthew Rohrback | 17 | 32 |
| Rico Zorkendorfer | 1 | 15 |
| Shin Nishibori | 3 | 18 |
| Steven Lemay | 32 | 43 |

SAMSUNG'S REPLY ISO MOTION FOR ADVERSE INFERENCE INSTRUCTION AGAINST APPLE

| Scott Forstall | 78 | 172 |

(Dkt. 1593 (Kellerman Decl.), ¶ 7; Dkt. 1388-1 (Binder Decl.), ¶¶13 and 15).

Apple also claims that the emails of some witnesses were completely collected in connection with other cases and that it followed other procedures to preserve Mr. Jobs' emails. Opp. at 5. Yet here as well Apple raises more questions than it answers, for it neither identifies these other cases nor states when the emails were collected nor states what Mr. Jobs was instructed to preserve or when his emails accounts were copied. And Apple identifies only *three* witnesses for whom these alternative means of preserving evidence purportedly apply – Steve Jobs, Jonathan Ive, and Scott Forstall – meaning this argument is utterly irrelevant as to every other witness in this case and does nothing to show that *Apple*, as a party, satisfied its preservation obligations.

Even as to these three witnesses Apple cannot make a case, for the numbers belie Apple's claim that alternative preservation means adequately replaced an actual litigation hold. Apple produced zero Steve Jobs emails from the key August 2010 to April 2011 period (and 51 emails overall), and nine emails from Mr. Ive (45 overall) from that period. Dkt. 1388-1 (Binder Decl.) at ¶ 14. These are absolutely critical witnesses—it is inconceivable that Mr. Jobs, CEO of Apple during a portion of the relevant time period and inventor of the '949, '678, D'087, D'677, D'270, D'889, D'757 and D'678 patents, actually had so few emails on issues in this case and none between August 2010 and April 2011. Apple's purportedly "rigorous, thorough and state of the art" (Opp. at 3), preservation efforts were no substitute for the simple remedy of a litigation hold notice, and insufficient in light of its ongoing, automatic encouragement of its witnesses to destroy their emails.

Apple also attempts to minimize its failure to issue hold notices until January 2012 as to five individuals, including one inventor and four members of its industrial design group. Opp. at 11. That argument of course has no impact on Apple's failure to issue hold notices to *any* witnesses for this case for the eight months between August 2010 and April 2011. Moreover, these five individuals possess information concerning the functionality of Apple's asserted designs, CAD drawings of the products at issues, and a host of other information concerning the designs Apple claims to own and for which it is seeking billions of dollars—all five were deposed

SAMSUNG'S REPLY ISO MOTION FOR ADVERSE INFERENCE INSTRUCTION AGAINST APPLE

1    in this case.[2]   Indeed, every one of them is listed on Apple's Transparency Disclosures as

2    custodians whose documents were searched for purposes of this litigation, demonstrating that they

3    are undoubtedly among the individuals who should have received litigation hold notices.

4         Apple similarly argues that one of the custodians included in Samsung's charts, Brian

5    Huppi, was an inventor on Apple's '607 patent, which Apple dismissed from the case.   But that

6    dismissal did not occur until *July 2012*, so it cannot possibly excuse the earlier failure to issue a

7    hold.   More importantly, if dismissal of patents from the case cures any prejudice, no adverse

8    inference should be made as against Samsung:   Of all the patents included in Apple's

9    presentation to Samsung in August 2010 (which supposedly triggered Samsung's duty to preserve),

10   all but one have been dismissed from the case.   *Compare* Dkt. 418, Ex. B *with* Dkt. 1189 at 1-2.

11        In short, Apple acted with at least a conscious disregard of its preservation obligations

12   when, during the period from August 2010 when it made its presentation to Samsung through

13   April 2011 when it issued hold notices, it (1) did not undertake any preservation efforts at all

14   relevant to this case, and (2) actively encouraged employees to delete emails to maintain the size

15   of their mailboxes.

16        **C.      Apple's Admitted Failure To Preserve Evidence, While Encouraging Deletion Of Email, Resulted In Destruction Of Relevant Evidence**

17

18        Samsung's motion relied on the very same analysis presented by Apple and accepted by

19   this Court to raise a sufficient inference that relevant evidence was destroyed as a result of Apple's

20   admitted failure to follow *any preservation steps* from August 2010 until after the Complaint was

21   filed.   Just as this Court concluded that "the nature of the auto-delete function is such that the

22   Court will never know how much relevant material was lost," (Dkt. 1321 at 21), the nature of

23   Apple's automatic reminders for employees to delete emails from their accounts prevents the

24   Court and Samsung from ever knowing how much relevant material Apple destroyed.   Apple's

25   attempt to diminish the import of Samsung's charts is unpersuasive.

26   ─────────────

27        [2]   Mark Lee was deposed on February 28, 2012, Brian Huppi was deposed on October 18, 2011, Chris Prest was deposed on March 8, 2012, Christopher Harris was deposed on March 6, 2012 and Christopher Hood was deposed on March 6, 2012.

28

Samsung's first chart (Mot. at 6) outlined the custodians with deficient custodial productions.    Without conceding Apple is correct, even after removing *all* the individuals for whom Apple contends there are innocent explanations, 13 key Apple personnel (of the 19 in the original chart) remain, as shown below:

| Custodian | Relevance | No. of Emails in Custodial Production | No. of Documents in Custodial Production |
|---|---|---|---|
| Bartley Andre | named inventor of D270, D899, D087, and D677patents | 14 | 135 |
| Chris Stringer | named inventor of D677, D270, and D889 patents | 15 | 38 |
| Curt Rothert | software engineer | 30 | 30 |
| Duncan Kerr | named inventor of D087, D677, D270, and D899 patents | 41 | 130 |
| Eugene Whang | named inventor of D087, D677, D270, and D899 patents | 36 | 146 |
| Jonathan Ive | named inventor of D087, D677, D270, and D899 patents | 45 | 173 |
| Matthew Rohrbach | named inventor of D087, D677, D270, and D889 patents | 32 | 385 |
| Peter Russell-Clarke | named inventor of D270 patent | 56 | 190 |
| Rico Zorkendorfer | named inventor of D087, D677, D270, and D889 patents | 15 | 62 |
| Shin Nishibori | named inventor of D889, D087, D677, D270, and D899 patents | 18 | 94 |
| Stephen Lemay | named inventor of '163 patent | 43 | 59 |
| Steve Jobs | named inventor of '949, '678, D087, D677, D270, D889, D757, and D678 patents; former CEO | 51 | 54 |
| Wei Chen | technical director | 12 | 37 |

(Dkt. 1388, at 6-7 (deleting the individuals referenced in Dkt. 1591, at 6-7)).

For Samsung's second chart, Apple challenges some of the numbers for *non-custodial* email production, but does not dispute the far more important *custodial* email production figures. The custodial email production demonstrates what an individual custodian actually preserved; the noncustodial production provides a relevant reference point for what they could have preserved. Thus a significantly larger *noncustodial* production provides a "statistical contrast" that shows—as the Court previously recognized—prejudice from a failure to preserve.    (Dkt. 1321, at 21:6.) The chart below incorporates Apple's figures from its opposition, and fully supports an adverse inference.

| Witness | Relevance | Non-Custodial Emails | Custodial Emails |
|---------|-----------|----------------------|------------------|
| Chris Stringer | named inventor of D677, D270, and D889 patents | 519 | 15 |
| Eugene Whang | named inventor of D087, D677, D270, and D899 patents | 149 | 36 |
| Jonathan Ive | named inventor of D087, D677, D270, and D899 patents | 688 | 45 |
| Matthew Rohrbach | named inventor of D087, D677, D270, and D889 patents | 103 | 32 |
| Scott Forstall | Named inventor of '163 patent | 1,027 | 172 |
| Shin Nishibori | named inventor of D889, D087, D677, D270, and D899 patents | 136 | 18 |
| Stephen Lemay | named inventor of '163 patent | 1,029 | 43 |
| Steve Jobs | named inventor of '949, '678, D087, D677, D270, D889, D757, and D678 patents; former CEO | 1,670 | 51 |

(Dkt. 1388, at 7-8 (incorporating the figures from Dkt. 1592, at ¶ 2)).

1    Apple argues that Samsung fails to account for the fact that it used different search

2  parameters in searching different employees' documents and, thus, "it can be perfectly appropriate

3  for one employee to produce a document that another does not."   (Opp. 8:1-8.)   The same is true

4  of Samsung, and it was still found by this Court to have failed to preserve and produce relevant

5  evidence.   (*See* Samsung's Third Supplemental and Amended Identification of Custodians,

6  Litigation Hold Notices and Search Terms (Dkt. 987-33) at 3-13 (identifying unique search terms

7  for each Samsung witness based on the witness' role in the case).)

8    Apple attempts to excuse its spoliation by asking the Court to focus on the number of

9  documents it was able to preserve prior to August 2010 (Opp. at 8:9-2), instead of on the number

10  of documents (or lack thereof) from Apple between August 2010 to April 2011.   However,

11  evidence of limited preservation prior to August 2010 is not proof Apple met its preservation

12  obligations between August 2010 and April 2011.   In fact, comparing the number of documents

13  Apple produced per month between the time period before August 2010 and after August 2010 is

14  instructive because it demonstrates two time periods of document production where Apple says it

15  did not change its document preservation policies.

16    Looking at this comparison, as the chart below demonstrates, it is clear that after August

17  2010 – during the critical time when Apple was gearing up to file its claims against Samsung and

18  Samsung was allegedly releasing a wave of accused products – the amount of Apple's relevant

19  documents produced per month *decreased*.   What Apple failed to address in its Opposition is

20  how that number could possibly decrease as it got closer to filing its claims without the destruction

21  of evidence.   If Apple employees believed Samsung products were competing unfairly using

22  Apple's intellectual property, it would be reasonable to expect the number of responsive emails to

23  spike; instead, based on Apple's document production, it plummeted.

24

25

26

27

28

| Custodian | Total Number of Pre-8/23/2010 Emails Produced | Number of Months Apple Searched Documents Prior to August 23, 2010 | Average Number of Emails Per Month Before August 23, 2010 | Projected Custodial Email Production for August 1, 2010 through March 31, 2011 Based on Pre-August 23, 2010 Average | Actual Custodial Email Production for August 1, 2010 through March 31, 2011 |
|---|---|---|---|---|---|
| Christopher Stringer | 388 | 87 | 4.45 | 35.6 | 4 |
| Jonathan Ive | 522 | 87 | 6.00 | 48.00 | 5 |
| Steve Jobs | 1183 | 32 | 36.96 | 295.68 | 3 |

(Dkt. 1592, at ¶ 2; Apple's Transparency Disclosures, Feb. 22, 2012, at 1-4.)

Apple attempts to explain this result, claiming that it "has few documents created between August 2010 and April 2011 that are relevant to this dispute," but Apple itself proves that statement false a few lines later, arguing that Samsung "had just launched its first round of infringing products when the parties started negotiating in August 2010."   Opp at 12:13-14; *id.* at 12:23-24.   Of course, many of the most relevant documents in Apple's possession would be documents reflecting Apple's *reactions* to the "launch" of Samsung's "first round of infringing products."   The record is clear that when Samsung products are released, Apple discusses them, analyzes them, and those non-privileged discussion are critical to defenses such as invalidity. *See, .e.g.*, Defense Trial Exhibit 715 (August 10, 2010 Apple document entitled "Mini-Teardown: Samsung Galaxy S (T-Mobile Vibrant)"); Defense Trial Exhibit 687 (January 20, 2011 Email from Christopher Stringer to Evans Hankey regarding "CES-Tablet Summary," summarizing tablet competitors including the Samsung Galaxy Tab); *see also* Defense Trial Exhibit 586 (October 5, 2010 presentation entitled "Samsung-Apple licensing discussion").   In short, what were Apple's own internal assessments of Samsung products when they were released?

Other custodians would have had relevant documents for different reasons.   For example Stephen LeMay had relevant documents in the August 2010 to April 2011 time period because he was an inventor on Apple's '163 patent, and that patent did not issue until January 4, 2011.   The

inventors' duty to disclose prior art to the patent office and other obligations extend until the patent issues.   Therefore, key documents and communications relevant to inequitable conduct and invalidity would have been in Mr. LeMay's possession during this time.   Moreover, Apple filed a continuation application on December 29, 2010 (App. No. 12/981,433).   Mr. LeMay's disclosure obligations extend to continuations, and inequitable conduct committed with respect to a patent family member renders the entire patent family unenforceable.   *See, e.g., Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-1289 (Fed Cir. 2011) ("Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family. *See, e.g., Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808–12 (Fed.Cir.1990).").

Apple's failure to issue a litigation hold to any witnesses means that these documents were – consistent with Apple's policies encouraging its employees to delete documents absent a litigation hold – destroyed.

### D.   <u>The Evidence At Trial So Far Confirms That Apple's Spoliation Has Prejudiced Samsung</u>

Under Apple's interpretation of the case law, Apple's spoliation of evidence gives rise to a presumption in favor of Samsung that it has been prejudiced by Apple's misconduct.   Dkt. 1531, at 5 (citing *Hynix Semiconductor, Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006) (stating "if spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation" because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing"), *rev'd on other grounds*, 645 F.3d 1336, 1344-1347 (Fed. Cir. 2011)).   Even the few days of trial that already have occurred confirm the actual prejudice Apple's spoliation has caused.

For example, Scott Forstall recently testified at trial about his membership in Apple's Executive Committee and his efforts leading the project to develop the iPhone's software, yet he produced only 172 emails.   (*See* 8/31/12 Trial Tr. 741:18-743:15, 725:6-7; Binder Decl. ¶ 15 (Dkt. 1388-1).)   Christopher Stringer, a named inventor on three Apple design patents and one of only four Apple employees who testified in Apple's case-in-chief, produced only 15 emails.   (7/31/12

1  Trial Tr. 469:24-470:16, 471:9-11; Binder Decl. ¶ 15 (Dkt. 1388-1).)   And the late Steve Jobs

2  produced 51 emails despite being a named inventor on several patents-in-suit and the former

3  Apple CEO.   (Binder Decl. ¶ 15 (Dkt. 1388-1).)   These individuals, among others cited in

4  Samsung's Motion, are "particularly noteworthy" examples of key *Apple* employees who failed to

5  preserve relevant emails.   Opp. at 13 (*citing* Dkt. 1321 at 19-20).   Thus, while Apple's attempts

6  to point the finger back at Samsung when calling out Minyouk Lee and Dr. Won Pyo Hon's

7  purported failure to preserve documents, this simply underscores the glass house problem it

8  has.   Opp.   12-13.   The production of emails for Apple's most important custodian witnesses is

9  more deficient, and Samsung is if anything even more prejudiced by Apple's actions.

10  **III.    CONCLUSION**

11          The Court is required to instruct the jury where the facts warrant a legal instruction

12  *Stewart v. Ragland*, 934 F.2d 1033, 1042 (9th Cir. 1991) (finding error for failure to give

13  Instruction because a party "is entitled to an instruction concerning his theory of the case if it is

14  supported by the law and has some foundation in the evidence").   The facts here warrant an

15  adverse inference instruction as to Apple, and Samsung respectfully requests that the Court grant

16  adverse inference jury instructions against Apple that mirror any that it gives against Samsung.

17  Samsung further requests that the Court instruct the jury that it should presume that it was more

18  reasonable for Apple to foresee this litigation than it was for Samsung to do so.

19  DATED: August 7, 2012                    Respectfully submitted,

20                                           QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
21

22

23                                           By    */s/ Victoria Maroulis*
                                                  Charles K. Verhoeven
24                                                Kevin P.B. Johnson
                                                  Victoria F. Maroulis
25                                                Michael T. Zeller
                                                  Attorneys for SAMSUNG ELECTRONICS CO.,
26                                                LTD., SAMSUNG ELECTRONICS AMERICA,
                                                  INC. and SAMSUNG
27                                                TELECOMMUNICATIONS AMERICA, LLC
28