# EXHIBIT A

STEVEN D. HEMMINGER (SBN 110665)
steve.hemminger@alston.com
**ALSTON & BIRD LLP**
275 Middlefield Road, Suite 150
Menlo Park, CA 94025-4008
Telephone:    650-838-2000
Facsimile:    650-838-2001

Attorneys for Non-Party
NOKIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 11-CV-01846-LHK<br><br>**NON-PARTY NOKIA CORPORATION'S REPLY TO REUTERS AMERICA LLC'S SUPPLEMENTAL OPPOSITION TO MOTIONS TO SEAL TRIAL AND PRETRIAL EVIDENCE** |

**NON-PARTY NOKIA CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

Non-Party Nokia Corporation ("Nokia") respectfully submits this reply brief in support of its administrative motion to file under seal, originally filed on July 25, 2012 (Dkt. No. 1328).

By its motion, Nokia asked this Court to seal very limited information relating to two trial exhibits concerning Nokia's extremely confidential licensing terms with Apple and Samsung. At the hearing on July 27, 2012, the Court provided the following guidance from the bench:

Based on the Ninth Circuit's decision in *Electronic Arts*[1], pricing, royalty rates, minimum payment terms of licensing agreements will be sealable. And I think to do otherwise got the District Judge reversed, so I'm going to follow the Ninth Circuit precedent on that. Now, the Ninth Circuit decision did not address the duration of the license, but I will allow that also to be sealed. … So as far as the third parties are concerned, your request to protect those, you know, royalty rates and the [] payment term, compensation term, however it's structured and the duration [and] pricing, that's fine.

Based upon the Court's guidance, Nokia's motion should be granted in its entirety. Nokia seeks only to redact the very specific terms of the licenses mentioned by the Court.

With the Court's permission, on August 2, 2012 (Docket No. 1556) Reuters filed a supplemental opposition with regard to the Court's guidance and specifically addressed for a second time Nokia's motion.

In that paper, Reuters initially argues that because of the notoriety this case is receiving the Court should not seal any information. That argument is contrary to the law of the Ninth Circuit. The notoriety of the case does not dictate what should and should not be sealed. Instead, the question is whether the information sought to be sealed meets the compelling reasons standard -- a standard that must be applied in even the most non-notorious cases.

Also, Reuters has lumped together its opposition to Samsung's, Apple's and all the third parties' motions to seal in a single opposition. Given the differences among the parties and third parties most of Reuters' arguments are simply not applicable to Nokia. For example, Reuters makes much of the fact that Samsung and Apple have chosen this open forum and as such they should not be seen to complain about the fact that their financial information which they are seeking to have admitted into evidence will be revealed. Obviously, Nokia did not select the forum nor is it seeking to rely on any of the information it has asked the Court to seal. Indeed, the sensitive information sought to be sealed is not relevant at all to whether Apple and Samsung are using each other's intellectual property.

Reuters also suggests that IBM and Qualcomm's actions in serving Reuters' counsel with unredacted versions of their respective agreements somehow impacts Nokia's right to have its

---

[1] The complete citation to that decision is *In re Electronic Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) (unpublished) (finding license agreement to be a trade secret).

trade secret information remain secret. This position is nonsensical. Even were two particular licenses to become public based upon an action that IBM and Qualcomm took, such a fact has no logical bearing on Nokia's licensing terms – which have always remained a confidential trade secret.

Reuters' position remains contrary to the overwhelming majority of courts, including the Ninth Circuit, which have ruled that the precise type of information that Nokia is asking to be sealed satisfies the compelling reasons standard. (*see* Nokia's Opening Brief, Dkt. No. 1328, at 5-6). Reuters also attempts to distinguish *Electronic Arts*, and to minimize its importance because it is not citable as precedent. The reason that *Electronic Arts* is not citable as precedent is that it does not change the Ninth Circuit law regarding sealing of documents; it merely applies it. While it is not binding upon this Court, as acknowledged during the hearing, it is certainly instructive concerning what is properly sealable under Ninth Circuit law because it is factually similar to the situation presented by Nokia' motion. In *Electronic Arts*, Electronic Arts, a third party, intervened to ask the court to seal at least portions of its licensing agreement. In the present case Nokia, a third party, has filed a motion to seal portions of its licensing agreements. The motion in *Electronic Arts* was decided during trial as is Nokia's motion in this case. The fact that the motion was presented in the form of letter briefs in *Electronic Arts* is of no import. The fact that *Electronic Arts* was not a patent case is, however, an important distinction. In *Electronic Arts*, as opposed to the patent infringement issues in this case, the licensing agreement was relevant to plaintiff's prima facie case. Here the terms sought to be sealed have no bearing on Samsung's or Apple's prima facie cases of liability. Even in view of the relevance of the license agreement in *Electronic Arts*, the Ninth Circuit found the financial terms of the license to meet the compelling reasons standard. Here, given the lack of relevance of the information sought to be sealed, the compelling reasons standard is easily met.

The final point of distinction raised by Reuters is that there was no public interest at stake in *Electronic Arts* while there is great public interest at stake in this case. While the public is interested in the present case (in part as a result of Reuters' own articles), there is no "public interest" from a standpoint of the law or the judicial process. While the products are highly

popular, the parties are major corporations, and the facts are juicy and salacious (who copied whom, who destroyed documents and what evidence should be heard), the legal issues are routine patent infringement questions. Hence, while the public is interested, the "public interest" is not at stake.

Additionally, Reuters suggests that were the Court to disclose the terms of all third-party licenses in Exhibit 630, there would no longer be an information asymmetry. This is equally nonsensical. Trial Exhibit 630 contains information concerning only a very small sample of telecommunications companies. Many other companies not implicated by the information in Trial Exhibit 630 would gain a tremendous advantage in licensing negotiations were they to have the third party information that Reuters seeks to expose – as affirmed in the various third-party declarations, including that from Nokia.

Finally, Reuters offers a declaration of "patent professors" in support of its position. But this declaration is completely divorced from the context of this litigation. Reuters' alleged interest in this lawsuit is to provide the public with a report of the proceedings relating to this litigation. Satisfying a handful of professors' collective curiosity by publicizing sensitive business information is neither this Court's nor Reuters' responsibility. The declaration does not even attempt to set forth any nexus between the professors' statement and the public's interest in knowledge regarding this particular litigation. As a result, it deserves no weight in the Court's analysis.

Reuters cannot and has not challenged the information presented in Mr. Melin's declaration: Nokia is almost always in negotiations with several companies at a time regarding licenses to its standard-essential patents (Dkt. No. 1329 at Ex. D). Nokia's ability to negotiate licenses on competitive terms would be severely hampered were the confidential terms of its license agreements, including the financial terms negotiated with competitors and the scope of the licenses covering patents that are both standards-essential as well as others that are not standards-essential, to become public. (*Id.*) Providing this sensitive information to Nokia's competitors would force Nokia into an uneven bargaining relationship with licensees or potential licensees, who would have access to Nokia's license information and insight into Nokia's negotiation

strategies, while at the same time Nokia would not have access into their corresponding information. This would leave Nokia at a strategic and business disadvantage, and allow Nokia's competitors to use this information to gain an unfair advantage. This threat is neither abstract nor theoretical. As mentioned above, Nokia is currently engaged in licensing negotiations with several other companies. The harm to Nokia would be immediate.

Given the extremely sensitive nature of the information and the at best tangential relevance of the information to the issues in this case, the Court should grant Nokia's motion.

## **CONCLUSION**

The relief requested in Nokia's motion is narrowly tailored to protect only non-party Nokia's extremely sensitive, competitive business information – and is exactly that which the Court indicated to be within the narrow ambit of materials to be sealed. Granting this motion will not impede the public's ability to understand the substantive questions involved in this litigation. As a result, Nokia respectfully requests that its motion be granted, and that the Court accept under seal unredacted Trial Exhibits 77 and 630, and only allow the redacted versions of the same to be used in a manner that would render them to become public information.

DATED: August 7, 2012                           Respectfully submitted,

By: */s/ Steven D. Hemminger*
    Steven D. Hemminger
    ALSTON & BIRD, LLP
    275 Middlefield Road, Suite 150
    Menlo Park, CA 94025-4008

*Attorneys for Non-Party Nokia Corporation*