1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                         SAN JOSE DIVISION

4

5

      APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6     CORPORATION,                )
                                  )  SAN JOSE, CALIFORNIA
7                  PLAINTIFF,     )
                                  )  AUGUST 6, 2012
8          VS.                    )
                                  )  VOLUME 4
9     SAMSUNG ELECTRONICS CO.,    )
      LTD., A KOREAN BUSINESS     )  PAGES 931-1296
10    ENTITY; SAMSUNG             )
      ELECTRONICS AMERICA,        )
11    INC., A NEW YORK            )
      CORPORATION; SAMSUNG        )
12    TELECOMMUNICATIONS          )
      AMERICA, LLC, A DELAWARE    )
13    LIMITED LIABILITY           )
      COMPANY,                    )
14                                )
                   DEFENDANTS.    )
15    _____

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17             UNITED STATES DISTRICT JUDGE

18

19

20            APPEARANCES ON NEXT PAGE

21

22

23    OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24                            IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074
25

1    A P P E A R A N C E S:

2    FOR PLAINTIFF        MORRISON & FOERSTER
     APPLE:               BY:  HAROLD J. MCELHINNY
3                              MICHAEL A. JACOBS
                               RACHEL KREVANS
4                         425 MARKET STREET
                          SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
     APPLE:               HALE AND DORR
7                         BY:  WILLIAM F. LEE
                          60 STATE STREET
8                         BOSTON, MASSACHUSETTS  02109

9                         BY:  MARK D. SELWYN
                          950 PAGE MILL ROAD
10                        PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
12                        BY:  CHARLES K. VERHOEVEN
                               ALBERT P. BEDECARRE
13                        50 CALIFORNIA STREET, 22ND FLOOR
                          SAN FRANCISCO, CALIFORNIA  94111
14
                          BY:  VICTORIA F. MAROULIS
15                             KEVIN P.B. JOHNSON
                          555 TWIN DOLPHIN DRIVE
16                        SUITE 560
                          REDWOOD SHORES, CALIFORNIA  94065
17
                          BY:  MICHAEL T. ZELLER
18                             WILLIAM C. PRICE
                               JOHN B. QUINN
19                        865 SOUTH FIGUEROA STREET
                          10TH FLOOR
20                        LOS ANGELES, CALIFORNIA  90017

21   FOR INTERVENOR       RAM, OLSON,
     REUTERS:             CEREGHINO & KOPCZYNSKI
22                        BY:  KARL OLSON
                          555 MONTGOMERY STREET, SUITE 820
23                        SAN FRANCISCO, CALIFORNIA  94111

24

25

1

2

3                          INDEX OF WITNESSES

4    PLAINTIFF'S

5

     **JUSTIN DENISON**
6          AS-ON DIRECT EXAM BY MR. QUINN      P. 946
           AS-ON RECROSS-EXAM BY MR. LEE       P. 977
7          AS-ON REDIRECT EXAM BY MR. QUINN    P. 997

8

     **PETER BRESSLER**
9          DIRECT EXAM BY MS. KREVANS          P. 1002
           CROSS-EXAM BY MR. VERHOEVEN         P. 1098
10         REDIRECT EXAM BY MS. KREVANS        P. 1236

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           INDEX OF EXHIBITS

2                                    MARKED          ADMITTED

3        PLAINTIFF'S

4        40                                          995
         8                                           1021
5        7                                           1049
         17                                          1055
6        1032                                        1061
         1034                                        1062
7        3                                           1071
         4                                           1076
8        173                                         1079
         59                                          1086
9        10                                          1097

10
         DEFENDANT'S
11
         1010                                        949
12       1011                                        953
         1012                                        953
13       1013                                        953
         1019                                        953
14       1031                                        954
         1033                                        954
15       1034                                        954
         1035                                        954
16       1020                                        957
         1022                                        959
17       1015                                        959
         1017                                        959
18       1026                                        959
         1005                                        961
19       1007                                        961
         1037                                        961
20       1038                                        972
         511                                         1114
21       728                                         1115
         727                                         1115
22       3750                                        1118

23

24

25

```
 1   SAN JOSE, CALIFORNIA              AUGUST 6, 2012
 2                   P R O C E E D I N G S
 3             (WHEREUPON, THE FOLLOWING PROCEEDINGS
 4   WERE HELD OUT OF THE PRESENCE OF THE JURY:)
 5             THE COURT:  ALL RIGHT.  I'VE REVIEWED THE
 6   TWO BRIEFING PROPOSALS, AND I'M ADOPTING APPLE'S
 7   BECAUSE SAMSUNG DID NOT GIVE ME SUFFICIENT TIME TO
 8   REVIEW THE OBJECTIONS.  SO THAT'S HOW WE'LL PROCEED
 9   GOING FORWARD.
10             YOU DIDN'T FILE ANY OBJECTIONS YESTERDAY,
11   AND I WAS HOPING THAT MAYBE YOU HAD SETTLED.
12             SO WHAT DID YOU WANT TO ARGUE TODAY?
13   THE -- HOW MUCH MORE DO YOU HAVE ON
14   MR. MR. DENISON?
15             MR. QUINN:  YOUR HONOR, I HOPE LESS THAN
16   A HALF HOUR ON DIRECT.
17             THE COURT:  OKAY.
18             MR. LEE:  AND WE WOULD BE BRIEF ON CROSS.
19             THE COURT:  ALL RIGHT.  AND THEN WE'LL GO
20   TO MS. KARE?
21             MR. MCELHINNY:  PETER BRESSLER, YOUR
22   HONOR.
23             THE COURT:  ALL RIGHT.  ANY OBJECTIONS
24   THAT YOU WANT TO DISCUSS WITH REGARD TO
25   MR. BRESSLER?
```

```
 1              MS. KREVANS:  YES, YOUR HONOR.

 2              THE COURT:  OKAY.

 3              MS. KREVANS:  WE HAVE THREE.

 4              GOOD MORNING, YOUR HONOR.  RACHEL KREVANS

 5      FOR APPLE.

 6              MR. VERHOEVEN:  YOUR HONOR -- I'M SORRY0,

 7      THIS IS MR. VERHOEVEN.

 8              MY UNDERSTANDING FROM WHAT YOUR HONOR'S

 9      DIRECTIONS WERE LAST WEEK WERE THAT YOU'D ALREADY

10      DEALT WITH OBJECTIONS ON BRESSLER, YOU'VE ALREADY

11      RULED ON THOSE, AND THAT THE ONLY -- THE PROCEDURE

12      THAT WE'RE GOING TO EXCHANGE AND SUBMIT THE TWO

13      OBJECTIONS PER WITNESS STARTED WITH WINER BECAUSE

14      BRESSLER AND KARE HAD ALREADY BEEN PROCESSED AND

15      YOU'D ALREADY RULED ON THE OBJECTIONS.

16              SO I HAVE NO NOTICE OF WHAT COUNSEL FOR

17      APPLE IS GOING TO RAISE NOW.

18              THE COURT:  LET'S HEAR WHAT SHE HAS TO

19      SAY.

20              GO AHEAD, PLEASE.

21              MR. VERHOEVEN:  YES, YOUR HONOR.

22              MS. KREVANS:  YOUR HONOR, THIS IS GOING

23      TO BE QUICK.  THERE ARE THREE THINGS AND THEY'RE

24      ALL THINGS THAT WERE IN OUR MOTION FOR

25      RECONSIDERATION, SO SAMSUNG DOES HAVE NOTICE OF
```

1    THEM.  THIS IS PX 174, 175 AND 179.

2              SAMSUNG HAD OBJECTED -- THESE ARE THREE

3    NEWS ARTICLES, YOUR HONOR.  SAMSUNG HAD OBJECTED

4    THAT THESE ARE NOT TIMELY DISCLOSED, AND ONE --

5              THE COURT:  I DON'T EVEN HAVE A KARE

6    BINDER OR A --

7              MS. KREVANS:  WE HAVE THE MATERIALS HERE,

8    YOUR HONOR.

9              THE COURT:  I DON'T HAVE ANY BRESSLER

10   BINDERS, I DON'T HAVE ANY WINER BINDERS, LEERY,

11   BALAKRISHNAN, SINGH.

12             WHEN WAS I GOING TO GET THOSE?

13             MS. KREVANS:  THESE WERE ACTUALLY

14   SUBMITTED LAST WEEK, YOUR HONOR, BUT I HAVE FOLDERS

15   THAT HAVE -- THEY'RE SMALLER THAN BINDERS AND THEY

16   HAVE THE EXHIBIT AND THE BACK UP FOR WHERE IT WAS

17   ACTUALLY DISCLOSED FOR EACH OF THESE.

18             THE COURT:  ALL RIGHT.  LET ME ASK --

19             (DISCUSSION OFF THE RECORD BETWEEN THE

20   COURT AND THE CLERK.)

21             MS. KREVANS:  YOUR HONOR, I HAVE A BENDER

22   WITH MR. BRESSLER'S THREE EXHIBITS IF YOUR HONOR

23   WOULD LIKE THAT.

24             THE COURT:  OKAY.

25             MS. KREVANS:  THANK YOU (HANDING).

```
 1              MS. KREVANS:  SO THE FIRST EXHIBIT IS
 2    174, AND THE OBJECTION THAT SAMSUNG MADE WAS THAT
 3    THE DOCUMENTS WERE NOT PRODUCED UNTIL AFTER --
 4              THE COURT:  I DON'T SEE 174 IN HERE.
 5              OH, OKAY.
 6              MS. KREVANS:  THE OBJECTION THAT SAMSUNG
 7    MADE WAS THAT THIS DOCUMENT WAS PRODUCED AFTER THE
 8    CLOSE OF DISCOVERY, AND THAT WAS SUSTAINED.  IN
 9    FACT, THE DOCUMENT WAS FIRST DISCLOSED IN JULY OF
10    2011.  SO ABOUT NINE MONTHS BEFORE THE CLOSE OF
11    DISCOVERY, AND IT WAS ATTACHED TO THE DECLARATION
12    OF ONE OF THE MOFO ATTORNEYS, MR. PATRICK ZHUANG,
13    IN SUPPORT OF APPLE'S MOTION FOR A PRELIMINARY
14    INJUNCTION, AND I HAVE A COPY OF IT HERE.
15              THE COURT:  LET ME STOP YOU RIGHT THERE.
16              LET ME HEAR FROM SAMSUNG ON THIS
17    QUESTION.
18              MR. VERHOEVEN:  YOUR HONOR, YOU ALREADY
19    HAVE RULED ON THIS OBJECTION.  WE WENT THROUGH THE
20    PROCESS, AND NOW THEY'RE ASKING TO --
21              THE COURT:  BUT WAS THIS DISCLOSED TIMELY
22    OR NOT?
23              MR. VERHOEVEN:  I HAD NO NOTICE THAT SHE
24    WAS GOING TO RAISE THIS, SO YOU CAN'T --
25              THE COURT:  WELL, YOU BRIEFED THE
```

 1    OBJECTION.  YOU BRIEFED THE OBJECTION THAT IT WAS

 2    UNTIMELY DISCLOSED, SO I ASSUME YOU HAVE SOME BASIS

 3    TO MAKE THAT OBJECTION.

 4            MR. VERHOEVEN:  I'LL HAVE TO GO GET MY

 5    BRIEF, YOUR HONOR.

 6            MS. KREVANS:  AND YOUR HONOR, WE DID --

 7    IN OUR MOTION FOR RECONSIDERATION WE DID POINT OUT

 8    TO SAMSUNG WHERE THIS WAS DISCLOSED IN 2011.  I

 9    THINK THEY HAD MADE AN ERROR IN THINKING IT WAS NOT

10    DISCLOSED PRIOR TO THE CLOSE OF DISCOVERY.

11            THE COURT:  BUT WAS THIS NOT PRODUCED

12    DURING THE CLOSE OF DISCOVERY?  I KNOW WHAT YOU'RE

13    SAYING ABOUT A DECLARATION TO AN INJUNCTION.  BUT

14    WAS THIS TIMELY DISCLOSED?

15            MS. KREVANS:  WELL, YOUR HONOR, IT WAS

16    GIVEN TO THEM --

17            THE COURT:  THAT'S A SEPARATE QUESTION.

18            MS. KREVANS:  IT WAS ALSO PRODUCED, YOUR

19    HONOR, ON MARCH 8TH, WHICH WAS BEFORE THE CLOSE OF

20    DISCOVERY.  I THINK THAT'S REDUNDANT BECAUSE, OF

21    COURSE, THEY HAD IT, BUT IT WAS, IN FACT, FORMALLY

22    PRODUCED ON THAT DATE.

23            MR. VERHOEVEN:  YOUR HONOR, IT WAS

24    PRODUCED ON THE LAST DAY OF DISCOVERY.  THAT WAS

25    OUR OBJECTION.  SHE'S REFERRING TO SOMETHING ELSE

1    THAT I DON'T HAVE IN FRONT OF ME, AND SHE HASN'T

2    HANDED ME A COPY OF IT SO IT'S HARD FOR ME TO

3    RESPOND.

4            THE COURT:  SO IT WAS PRODUCED BEFORE THE

5    FACT DISCOVERY CUT OFF?

6            MS. KREVANS:  IT WAS, IN FACT, PROVIDED

7    TO THEM NINE MONTHS BEFORE THAT, YOUR HONOR, AND

8    THIS IS NOT NEW BECAUSE WE FILED A BRIEF LAST WEEK

9    IN WHICH WE POINTED THESE FACTS OUT.

10           SO I THINK THE FACTUAL BASIS FOR THE

11   EXCLUSION OF THIS DOCUMENT WAS SIMPLY INCORRECT AS

12   PRESENTED IN SAMSUNG'S BRIEF.

13           MR. VERHOEVEN:  YOUR HONOR, OUR RECORDS

14   INDICATE THAT THIS WAS NOT PRODUCED IN A TIMELY

15   MANNER AND WE STAND BY THAT OBJECTION.  YOUR HONOR

16   HAS ALREADY SUSTAINED THAT.

17           MS. KREVANS:  YOUR HONOR, IT WAS --

18           THE COURT:  DO YOU HAVE THE PAGE THAT HAS

19   THE BATES NUMBER THAT THIS BATES NUMBER WAS

20   PRODUCED ON.

21           MS. KREVANS:  I DO, YOUR HONOR.  I HAVE

22   THE E-MAIL --

23           THE COURT:  ALL RIGHT.  LET ME SEE IT,

24   PLEASE, AND SHOW IT TO MR. VERHOEVEN.

25           MY RULING DEPENDED ON THE REPRESENTATION

```
 1    THAT THESE EXHIBITS WERE PRODUCED AFTER THE CLOSE

 2    OF FACT DISCOVERY.  IF THAT'S AN ERRONEOUS

 3    CONCLUSION BECAUSE IT WAS PRODUCED BEFORE THE CLOSE

 4    OF FACT DISCOVERY, THEN I'M GOING TO OVERRULE THE

 5    OBJECTION.

 6              MR. VERHOEVEN:  OKAY.  THIS IS DATED

 7    MARCH 8TH, YOUR HONOR.  THAT'S THE LAST DAY OF

 8    DISCOVERY.

 9              THE COURT:  WELL, YOU CAN PRODUCE IT ON

10    THE LAST DAY OF DISCOVERY.  THE REPRESENTATION THAT

11    WAS MADE IN THE BRIEF WAS THAT IT WAS NOT PRODUCED

12    DURING THE FACT DISCOVERY.

13              MS. KREVANS:  YOUR HONOR, WOULD YOU LIKE

14    TO SEE THE E-MAIL?  IT SHOWS -- I'VE NOW SHOWN IT

15    TO COUNSEL.  IT SHOWS PRODUCTION ON THE 8TH.

16              THE COURT:  YES.

17              ALL RIGHT.  WELL, THE OBJECTION IS

18    OVERRULED.

19              MS. KREVANS:  OKAY.  THE NEXT DOCUMENT,

20    YOUR HONOR, IS 175.

21              THE COURT:  CAN I ASK YOU -- I'M LOOKING

22    AT SAMSUNG'S OBJECTIONS, CORRECTED OBJECTIONS.

23    IT'S DOCUMENT 1542.  IT SAYS PX 174 WAS PRODUCED

24    TWO WEEKS AFTER DISCOVERY CUTOFF ON MARCH 21, 2012.

25              WHY IS THAT REPRESENTATION IN HERE?
```

1    THAT'S WHAT I BASED MY RULING ON BECAUSE I ASSUMED

2    THAT THIS WAS CORRECT.

3              MR. VERHOEVEN:  YOUR HONOR, I'LL --

4              THE COURT:  I DON'T SEE THIS BATES NUMBER

5    IN THIS BATES RANGE.  IT SAYS THE FOLLOWING

6    PRODUCTION IS APL NDC-Y 142086 THROUGH 148288.

7              THE BATES NUMBER I SEE FOR 174 IS 236157.

8    SO THIS E-MAIL IS NOT RELEVANT TO THIS DOCUMENT.

9              MS. KREVANS:  YOUR HONOR, MAY I SHOW YOU

10   THE DOCUMENT WITH THE BATES NUMBER 147450, WHICH IS

11   IN THE RANGE?

12             THE COURT:  IS THAT IN THIS RANGE --

13   WELL, GIVE ME THAT -- WELL, LET ME SEE IT.

14             (PAUSE IN PROCEEDINGS.)

15             THE COURT:  ALL RIGHT.  WELL, IT'S THE

16   SAME DOCUMENT, BUT IT'S A DIFFERENT BATES NUMBER.

17   LET ME SEE IF THIS IS IN THIS RANGE.

18             147450, OKAY, IT IS IN THIS RANGE.  ALL

19   RIGHT.  THAT'S OVERRULED.

20             MS. KREVANS:  OKAY.  THE NEXT ONE IS 175,

21   AND THIS IS ANOTHER NEWS ARTICLE, AND THE OBJECTION

22   AS TO THIS ONE WAS THAT IT WAS PRODUCED AFTER THE

23   CLOSE OF DISCOVERY, AND, THEREFORE, UNTIMELY AND ON

24   THAT BASIS YOUR HONOR SUSTAINED THE OBJECTION.

25             THE COURT:  GIVE ME JUST ONE SECOND,

```
1    PLEASE.

2              MS. KREVANS:  SURE.

3              THE COURT:  LET ME TAKE THAT OFF MY LIST.

4              MS. KREVANS:  AS TO 175, YOUR HONOR,

5    SAMSUNG IS CORRECT THAT IT WAS FORMALLY PRODUCED

6    AFTER THE CLOSE OF DISCOVERY, BUT IT WAS PROVIDED

7    TO THEM NINE MONTHS BEFORE IN JULY OF 2011.  SO

8    THERE IS NO ARGUMENT BY THEM THAT THEY DID NOT GET

9    THIS DOCUMENT IN A TIMELY WAY.

10              AGAIN, IT WAS ATTACHED TO THE DECLARATION

11    OF MR. ZHUANG.

12              THE COURT:  OBJECTION SUSTAINED.  YOU

13    DIDN'T PRODUCE IT TIMELY.  IT'S NOT COMING IN.

14              MS. KREVANS:  AND THEN, FINALLY, YOUR

15    HONOR, PX 173.  173 IS AN ARTICLE ABOUT THE GALAXY

16    TAB, AND FOR THIS DOCUMENT, THE OBJECTION WAS THAT

17    IT WAS NOT CONSIDERED BY THE WITNESS AND DISCLOSED

18    IN HIS EXPERT REPORT AND, IN FACT, IT WAS

19    EXPLICITLY DISCUSSED IN THE EXPERT REPORT OF

20    MR. BRESSLER AT PARAGRAPH 104, AND I HAVE A COPY OF

21    THE REPORT HERE WITH THE PARAGRAPH MARKED.

22              THE COURT:  SHOW IT TO MR. VERHOEVEN.

23              (DISCUSSION OFF THE RECORD BETWEEN

24    COUNSEL.)

25              MS. KREVANS:  YOUR HONOR, MR. VERHOEVEN
```

1     TELLS ME THEY'RE WITHDRAWING THE OBJECTION.

2              THE COURT:  THEY'RE WITHDRAWING THE

3     OBJECTION?

4              MS. KREVANS:  THEY'RE WITHDRAWING THE

5     OBJECTION.

6              THE COURT:  THAT WAS THE BASIS OF MY

7     EXCLUSION ORDER WAS THAT IT WAS NOT CONSIDERED BY

8     MR. BRESSLER IN HIS EXPERT REPORT.  SO 173 IS

9     COMING IN.

10             OKAY.  ARE WE DONE?

11             MS. KREVANS:  I WOULD NOTE FOR THE RECORD

12    THAT THERE ARE A FEW OTHER PHOTOGRAPHIC

13    COMPILATIONS THAT MR. BRESSLER WAS SPONSORING AND

14    THERE WAS AN OBJECTION THAT WAS SUSTAINED THAT SOME

15    ITEMS IN THE COMPILATION THAT WERE IMPROPER OR THE

16    WRONG PHOTO.  WE DID REPLACE ALL THREE OF THOSE,

17    AND THERE'S BEEN NO FURTHER OBJECTION.

18             THE COURT:  I SAW WHAT YOU FILED OVER THE

19    WEEKEND.

20             OKAY.

21             MS. KREVANS:  THANK YOU, YOUR HONOR.

22             THE COURT:  ALL RIGHT.  ANY DENISON

23    OBJECTIONS THAT WE CAN TAKE CARE OF, OR ANYONE

24    ELSE?  KARE?

25             LET ME JUST TELL YOU WITH REGARD TO TIME,

```
1    APPLE HAS USED 3 HOURS AND 51 MINUTES AND SAMSUNG

2    HAS USED 3 HOURS AND 11 MINUTES.

3              WHAT ELSE?  ANYTHING ELSE?  CAN WE BRING

4    OUR JURY IN?  IF THEY'RE HERE, I THINK WE CAN JUST

5    GET STARTED EVEN THOUGH IT'S NOT 9:00 O'CLOCK.

6              THE CLERK:  THEY'RE ALL HERE.  THEY'RE

7    ASKING IF THEY CAN HAVE MORE NOTEPAPER.

8              THE COURT:  MORE NOTEPAPERS?  DO YOU ALL

9    HAVE MORE NOTEPAPER?  COULD YOU, PLEASE?

10             DOES ANYONE AT SAMSUNG WANT TO TAKE A

11   LOOK AT THE NOTE PAPER?

12             MR. QUINN:  YOUR HONOR, SHOULD

13   MR. DENISON TAKE THE STAND?

14             THE COURT:  PLEASE, GO AHEAD.

15             (WHEREUPON, THE FOLLOWING PROCEEDINGS

16   WERE HELD IN THE PRESENCE OF THE JURY:)

17             THE COURT:  GOOD MORNING AND WELCOME

18   BACK.

19             YOU ARE RECEIVING MORE NOTEPAPER, AND WE

20   WILL CERTAINLY PROVIDE MORE AS YOU NEED IT.

21             IT IS NOW EXACTLY 9:00 A.M.  WE ARE

22   CONTINUING WITH MR. QUINN'S EXAMINATION OF

23   MR. DENISON, AND MR. DENISON, YOU'RE STILL UNDER

24   OATH.

25   /   /   /
```

1              **JUSTIN DENISON,**

2    BEING CALLED AS AN ADVERSE WITNESS ON BEHALF OF THE

3    PLAINTIFF, HAVING BEEN PREVIOUSLY SWORN, WAS

4    FURTHER EXAMINED AND TESTIFIED AS FOLLOWS:

5              GO AHEAD, PLEASE.  IT'S 9:00 A.M.

6         MR. QUINN:  THANK YOU, YOUR HONOR.

7            **AS-ON DIRECT EXAMINATION**

8    BY MR. QUINN:

9    Q    GOOD MORNING, LADIES AND GENTLEMEN.

10             MR. DENISON.

11   A    GOOD MORNING.

12   Q    LAST FRIDAY YOU TOLD US THAT IN ANY GIVEN

13   YEAR, SAMSUNG INTRODUCES ABOUT 50 NEW PHONES IN THE

14   UNITED STATES; IS THAT CORRECT?

15   A    THAT'S ABOUT RIGHT, YES.

16   Q    CAN YOU TELL US, AT ANY GIVEN TIME,

17   APPROXIMATELY HOW MANY PHONES, INCLUDING MODELS

18   THAT AREN'T INTRODUCED THAT YEAR, SAMSUNG HAS FOR

19   SALE IN THE UNITED STATES?

20   A    I WOULD JUST ESTIMATE, AGAIN, IT COULD BE AS

21   MANY AS 100 THAT ARE IN THE MARKET AT ANY GIVEN

22   TIME LET'S SAY.

23   Q    NOW, DOES SAMSUNG ELECTRONICS, THE COMPANY

24   HEADQUARTERED IN SEOUL, KOREA, ACTUALLY ITSELF SELL

25   ANY PHONES IN THE UNITED STATES?

1    A    NO, IT DOES NOT.

2    Q    DOES ANY SAMSUNG ENTITY, OTHER THAN THE ENTITY

3    YOU WORK FOR, SAMSUNG TELECOMMUNICATIONS AMERICA,

4    SELL ANY PHONES IN THE UNITED STATES?

5    A    NO, THEY DO NOT.

6    Q    IF WE COULD PUT UP ON THE SCREEN A

7    DEMONSTRATIVE EXHIBIT, YOUR HONOR, EXHIBIT 3584.

8              AND DO YOU HAVE THAT BEFORE YOU,

9    MR. DENISON, 3584?

10   A    I DO.

11   Q    AND CAN YOU SUMMARIZE, IF THERE'S NO

12   OBJECTION, YOUR HONOR, IT'S ON THE SCREEN -- WHAT

13   DOES THIS DEMONSTRATIVE EXHIBIT SHOW US?

14   A    THIS EXHIBIT BASICALLY SHOWS PHONES THAT ARE

15   AT ISSUE IN THIS CASE MAPPED BY CARRIER ON THE

16   HORIZONTAL ROWS, AND THEN IN THE VERTICAL COLUMNS,

17   YOU SEE THEM BROKEN UP BY GALAXY GENERATION OR IN

18   SOME CASES PHONES THAT AREN'T ADVERTISED AS GALAXY

19   PHONES.

20   Q    ALL RIGHT.  THESE ARE THE PHONES THAT ARE AT

21   ISSUE IN THIS CASE?

22   A    YES.

23   Q    AND WHEN YOU SAY MAPPED OUT BY CARRIER, WHAT

24   DO YOU MEAN BY THAT?

25   A    I JUST MEAN THAT, YOU KNOW, FOR INSTANCE, THE

1    GALAXY S CAPTIVATE, WHICH IS RIGHT NEXT TO AT&T,

2    THAT PHONE IS SOLD FROM STA TO AT&T AND NOT TO ANY

3    OTHER CARRIERS.  SO THAT'S TRUE OF ALL OF THESE.

4    Q    WE'VE TAKEN A LOOK AT THESE PHONES, BUT FIST

5    I'D LIKE TO TURN TO THE NEXT DEMONSTRATIVE EXHIBIT,

6    3585.  AND WHAT ARE THESE PHONES THAT ARE

7    REFERENCED HERE?

8    A    THESE ARE THE, THE LAST THREE REMAINING PHONES

9    AT ISSUE, BASED ON MY UNDERSTANDING.  THESE ARE

10   GLOBAL, GLOBAL DEVICES.

11   Q    AND ARE ANY OF THESE PHONES SOLD BY ANY

12   SAMSUNG ENTITY IN THE UNITED STATES?

13   A    NO, THEY'RE NOT.

14   Q    SO LET'S TAKE A LOOK AT SOME PHONES NOW,

15   INCLUDING TWO THAT RELATE TO THAT INVESTIGATION

16   THAT YOU DID, THE INFUSE 4G, WHICH IS IN EVIDENCE.

17           YOUR HONOR, IT'S JOINT EXHIBIT 1027.  IF

18   THAT COULD BE PLACED BEFORE MR. DENISON.  UNLESS

19   THE GALAXY VIBRANT, JOINT EXHIBIT 1010.

20           DO YOU HAVE THOSE TWO WITH YOU?

21   A    I DO.

22   Q    AND EXHIBIT 1010, THAT'S THE GALAXY VIBRANT?

23   A    NO.  EXHIBIT 1010 IS THE T-MOBILE GALAXY --

24   YES.  I'M SORRY.  YOU SAID VIBRANT, DIDN'T YOU?

25   Q    YES.

```
 1    A    YOU'RE RIGHT, I'M WRONG.

 2              MR. QUINN:  I'LL OFFER THAT IN EVIDENCE,

 3    YOUR HONOR.  IT'S ONE OF THE PHONES THAT ARE

 4    ACCUSED IN THIS CASE.

 5              MR. LEE:  NO OBJECTION, YOUR HONOR.

 6              THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

 7    AND THAT NUMBER IS 1010?

 8              MR. QUINN:  1010, YOUR HONOR, JOINT

 9    EXHIBIT 1010.

10              THE COURT:  I'M SORRY.  WHICH ONE IS THAT

11    ONE?

12              MR. QUINN:  THAT'S THE GALAXY VIBRANT.

13              THE COURT:  OKAY.  THANK YOU.  IT'S

14    ADMITTED.

15              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

16              1010, HAVING BEEN PREVIOUSLY MARKED FOR

17              IDENTIFICATION, WAS ADMITTED INTO

18              EVIDENCE.)

19    BY MR. QUINN:

20    Q    ARE THESE TWO PHONES, THE INFUSE AND THE

21    VIBRANT, ARE THEY BOTH PART OF THE GALAXY FAMILY OF

22    PHONES?

23    A    YES, THEY WERE PART OF THE GALAXY I

24    GENERATION.

25    Q    HAVE THERE BEEN MORE THAN ONE GENERATION OF
```

```
 1     GALAXY PHONES?

 2     A     THERE HAVE BEEN.  THERE'S BEEN THREE AT THIS

 3     POINT.

 4     Q     AND THE GALAXY VIBRANT, WHO DOES SAMSUNG

 5     TELECOMMUNICATIONS AMERICA SELL THAT TO?

 6     A     THE VIBRANT WAS SOLD TO T-MOBILE.

 7     Q     AND WHICH CARRIER GETS THE INFUSE 4G?

 8     A     THAT WAS SOLD TO AT&T.

 9     Q     ARE THESE TWO PHONES, BOTH GALAXY PHONES, ARE

10     THEY BOTH THE SAME DESIGN?

11     A     THEY'RE NOT.

12     Q     AND WHY NOT?

13     A     WELL, THERE'S MANY DIFFERENCES THAT I SEE.

14     YOU KNOW, FIRST, WHEN YOU LOOK AT THE INFUSE --

15               MR. LEE:  YOUR HONOR, I OBJECT.  THIS IS

16     NOT -- THIS IS TRYING TO BACKDOOR IN THE --

17               THE COURT:  THAT'S SUSTAINED.

18               MR. LEE:  THANK YOU.

19               MR. QUINN:  WELL, YOUR HONOR, I'D REQUEST

20     PERMISSION, THEN, TO PASS THESE TWO PHONES TO THE

21     JURY SO THE JURY HAS AN OPPORTUNITY TO LOOK AT

22     THESE.

23               THE COURT:  I THINK THAT'S FINE.  DO YOU

24     HAVE ANY OBJECTION, MR. LEE?

25               MR. LEE:  NONE AT ALL, YOUR HONOR.
```

1          THE COURT:  OKAY.  PLEASE DO SO.

2          MR. QUINN:  SO THESE TWO PHONES, EXHIBIT

3    1027, THE INFUSE 4G AND THE GALAXY VIBRANT, EXHIBIT

4    1010, ARE BEING PASSED TO THE JURY.

5    Q    NOW, SAMSUNG SELLS OTHER GALAXY S PHONES TO

6    OTHER CARRIERS?

7    A    THAT'S RIGHT.

8    Q    AND IF WE COULD LOOK AT THE EXHIBIT 1011, THE

9    CAPTIVATE; EXHIBIT 1013, THE FASCINATE; EXHIBIT

10   1012, THE EPIC 4G; AND THE GALAXY S 4G.

11         DO YOU HAVE ALL FOUR OF THOSE?  WE'RE

12   STILL FISHING ONE OUT.

13   A    YES, I HAVE THEM ALL.

14   Q    NOW, WHY DOES SAMSUNG SELL DIFFERENT GALAXY

15   PHONES TO EACH OF THE DIFFERENT CARRIERS?

16   A    WELL, GENERALLY SPEAKING, THE CARRIERS

17   THEMSELVES WANT TO DIFFERENTIATE THE PORTFOLIOS

18   THEY OFFER OF BOTH DEVICES, AS WELL AS SERVICES,

19   FROM EACH OTHER.

20         SO THEY TYPICALLY ASK US FOR SOME ELEMENT

21   OF UNIQUENESS IN EVEN THE PHYSICAL DESIGN OF THE

22   PRODUCTS THAT THEY SELL VERSUS THEIR COMPETITION.

23   HENCE ALL THE GALAXY S I DEVICES LOOKED DISTINCTLY

24   DIFFERENT.

25   Q    AND DOES SAMSUNG WORK WITH THE DIFFERENT

1    CARRIERS TO COME UP WITH DIFFERENCES FOR THE

2    DIFFERENT GALAXY PHONES?

3    A    YES, YES, ABSOLUTELY.

4    Q    NOW, IS THIS TRUE FOR THE NEXT GENERATION, THE

5    GALAXY 2 PHONES AS WELL?  ARE THEY DIFFERENT?

6            MR. LEE:  YOUR HONOR, I OBJECT.

7    JUDGE GREWAL STRUCK ALL OF THE NON-INFRINGEMENT

8    ARGUMENTS BASED UPON THESE DIFFERENCES.

9            THE COURT:  SUSTAINED.

10            MR. QUINN:  YOUR HONOR, THERE ARE TRADE

11   DRESS CLAIMS AT ISSUE AS WELL, AND I DON'T -- I

12   DON'T AGREE WITH COUNSEL'S STATEMENT CONCERNING THE

13   HISTORY HERE.

14            THE COURT:  IT'S SUSTAINED.  GO AHEAD,

15   PLEASE, WITH THE NEXT QUESTION.

16   BY MR. QUINN:

17   Q    HOW MANY DIFFERENT GALAXY 2 PHONES DOES

18   SAMSUNG SELL TO THE FIGURE FOUR CARRIERS?

19   A    SAMSUNG HAS SOLD FOUR GALAXY S II DEVICES TO

20   CARRIERS.

21   Q    NOW, THE CAPTIVATE, EXHIBIT 1011, DO YOU HAVE

22   THAT BEFORE YOU?

23   A    I DO.

24   Q    AND WHO IS THAT SOLD -- WHAT CARRIER IS THAT

25   SOLD TO?

1    A    THIS IS SOLD TO AT&T.

2    Q    AND THE FASCINATE, EXHIBIT 1013?

3    A    THIS WAS SOLD TO VERIZON.

4    Q    AND THE EPIC 4G?

5    A    THIS WAS SOLD TO SPRINT.

6    Q    AND THE GALAXY S 4G?

7    A    AND THIS WAS SOLD TO T-MOBILE.

8              MR. QUINN:  YOUR HONOR, WE WOULD OFFER IN

9    EVIDENCE EXHIBIT 1011, THE CAPTIVATE; EXHIBIT 1013,

10   THE FASCINATE; EXHIBIT 1012, THE EPIC; AND EXHIBIT

11   1019, THE GALAXY S 4G.

12             MR. LEE:  NO OBJECTION, YOUR HONOR.

13             THE COURT:  THEY'RE ADMITTED.  DO YOU

14   ALSO WANT 1012?

15             MR. QUINN:  1012.

16             THE COURT:  THE 4G, YES.

17             MR. QUINN:  YES, THAT'S THE EPIC.  I

18   HOPED I HAD SAID THAT.

19             THE COURT:  1011, 1012, 1013 AND 1019 ARE

20   ALL ADMITTED.

21             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

22             1011, 1012, 1013, AND 1019, HAVING BEEN

23             PREVIOUSLY MARKED FOR IDENTIFICATION,

24             WERE ADMITTED INTO EVIDENCE.)

25             MR. QUINN:  THANK YOU, YOUR HONOR.

1    Q    IF WE CAN TURN TO THE NEXT GENERATION, THE

2    GALAXY 2 PHONES.  YOU TOLD US THAT SAMSUNG SELLS A

3    DIFFERENT GALAXY 2 PHONE TO?

4    A    WE SOLD FOUR DIFFERENT GALAXY T 2 PHONES TO

5    THREE CARRIERS.

6    Q    IF MR. DENISON COULD BE PROVIDED WITH EXHIBIT

7    1034, 1035, 1033, AND 1031.

8             AND COULD YOU PLEASE IDENTIFY THOSE FOR

9    US, PLEASE?

10   A    SO 1031 IS THE ORIGINAL GALAXY S II THAT WAS

11   SOLD TO AT&T.

12            EXHIBIT 1035 IS KNOWN AS THE GALAXY S II

13   SKYROCKET, IT INCLUDED LTE, AND IT WAS SOLD TO

14   AT&T.

15            THE 1034 IS THE GALAXY S II EPIC 4G

16   TOUCH, SOLD TO SPRINT.

17            AND EXHIBIT 1033 IS THE GALAXY S II THAT

18   WAS SOLD TO T-MOBILE.

19            MR. QUINN:  YOUR HONOR, WE WOULD OFFER

20   THOSE FOUR EXHIBITS, EXHIBIT 1034, 35, 33, AND 31.

21            MR. LEE:  NO OBJECTION, YOUR HONOR.

22            THE COURT:  THEY'RE ADMITTED.

23            (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

24            1031, 1033, 1034, AND 1035, HAVING BEEN

25            PREVIOUSLY MARKED FOR IDENTIFICATION,

```
 1                WERE ADMITTED INTO EVIDENCE.)
 2      BY MR. QUINN:
 3      Q    NOW, IN THE RECORD GENERATION OF GALAXY
 4      PHONES, DID THE SCREEN GET LARGER THAN IN THE
 5      PREVIOUS GENERATION.
 6      A    DID --
 7               MR. LEE:  YOUR HONOR, THIS IS -- THE
 8      DIFFERENCES, AGAIN, THAT JUDGE GREWAL HAS
 9      DETERMINED ARE NOT RELEVANT.
10               MR. QUINN:  I DON'T BELIEVE THAT'S
11      CORRECT, YOUR HONOR.
12               THE COURT:  OVERRULED.  GO AHEAD, PLEASE.
13      BY MR. QUINN:
14      Q    DID THE SCREENS GET LARGER AS THE GENERATIONS
15      OF GALAXY PHONES WENT ON?
16      A    THEY DID, AS WELL THE SCREEN TECHNOLOGY ITSELF
17      ADVANCED.
18      Q    CAN YOU TELL US WHETHER OR NOT THAT WAS KIND
19      OF A TREND IN THE INDUSTRY, THAT SCREENS WOULD GET
20      LARGER ON SMARTPHONES?
21      A    IT DEFINITELY HAS BEEN FROM SAMSUNG'S
22      PERSPECTIVE.
23      Q    AND WERE ADDITIONAL FEATURES ADDED OVER TIME
24      OVER THE DIFFERENT GENERATIONS OF GALAXY PHONES?
25      A    YES.
```

1    Q    AND CAN YOU TELL US WHETHER OR NOT, AS THE --

2    AS THERE WERE NEW GENERATIONS OF GALAXY PHONES AND

3    THE SCREENS GOT LARGER AND NEW FEATURES WERE ADDED,

4    WERE THE PHONES MORE SUCCESSFUL THAN THE PREVIOUS

5    GENERATIONS?

6    A    YES, THEY ABSOLUTELY WERE.

7    Q    OKAY.  WHAT OTHER PHONES THAT ARE AT ISSUE IN

8    THIS CASE DOES SAMSUNG TELECOMMUNICATIONS AMERICA

9    SELL TO THE MAJOR CARRIERS?

10   A    SO THERE'S THREE DEVICES REMAINING.  ONE IS

11   CALLED THE DROID CHARGE; ONE IS CALLED THE GEM; AND

12   ONE IS CALLED CONTINUUM.

13   Q    AND IF WE COULD HAVE EXHIBIT 1025, THE DROID

14   CHARGE; EXHIBIT 1020, THE GEM; AND EXHIBIT 1016,

15   THE CONTINUUM PLACED BEFORE MR. DENISON.

16        ARE THOSE THE THREE PHONES THAT YOU JUST

17   REFERRED TO THAT ARE AT ISSUE IN THIS CASE?

18   A    THEY ARE.

19        MR. QUINN:  YOUR HONOR, I BELIEVE EXHIBIT

20   1025 AND 1016 ARE ALREADY IN EVIDENCE, I BELIEVE.

21   AND WE'D OFFER THE GEM, EXHIBIT 1020.

22        THE COURT:  YES, THE DROID CHARGE IS

23   DEFENDANT'S EXHIBIT 11; AND THE CONTINUUM IS

24   DEFENDANT'S EXHIBIT 8.  SO THOSE HAVE ALREADY BEEN

25   ADMITTED ON FRIDAY.

```
1              AND ANY OBJECTION TO EXHIBIT 1020?

2              MR. LEE:  NONE, YOUR HONOR.

3              THE COURT:  THAT'S ADMITTED.

4              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

5              1020, HAVING BEEN PREVIOUSLY MARKED FOR

6              IDENTIFICATION, WAS ADMITTED INTO

7              EVIDENCE.)

8              THE COURT:  GO AHEAD, PLEASE.

9    BY MR. QUINN:

10   Q    AND THOSE -- WHAT CARRIER ARE THOSE SOLD TO?

11   A    ALL THREE OF THOSE WERE SOLD TO VERIZON.

12   Q    AND WITH THE COURT'S PERMISSION, I'D REQUEST

13   THAT THE JURY HAVE A CHANCE TO HANDLE AND SEE THE,

14   TWO OF THE GALAXY TWO PHONES, WE WON'T PASS ALL

15   FOUR OF THEM OUT, THAT IS THE EPIC 1034 AND THE

16   SKYROCKET 1035.

17             THE COURT:  NO OBJECTION, CORRECT?

18             MR. LEE:  NO OBJECTION.

19             THE COURT:  YEAH, PLEASE DO SO.

20   BY MR. QUINN:

21   Q    SO THESE ARE TWO OF THE SECOND GENERATION

22   GALAXY PHONES?

23   A    CORRECT.

24   Q    OKAY.  SO HAVE WE NOW COVERED THE GALAXY

25   PHONES THAT SAMSUNG AMERICA SELLS TO THE FOUR MAJOR
```

1      CARRIERS?

2      A    YES.

3      Q    DOES SAMSUNG SELL TELEPHONES TO OTHER CARRIERS

4      AS WELL, OTHER THAN THE FOUR MAJOR CARRIERS?

5      A    WE DO.

6      Q    AND DO THESE -- WHAT OTHER CARRIERS DOES

7      SAMSUNG SELL PHONES TO?

8      A    WELL, AS I THINK I PREVIOUSLY TESTIFIED, WE

9      SELL TO THE WIDEST VARIETY OF CARRIERS IN THE U.S.

10     MARKET.

11             WITH RESPECT TO PRODUCTS AT ISSUE,

12     THERE'S ADDITIONAL DEVICES SOLD TO U.S. CELLULAR; C

13     SPIRE, METRO PCS, AND BOOST MOBILE.

14     Q    IF EXHIBIT 1022, THE PREVAIL, 1015, MESMERIZE;

15     1017, SHOWCASE; AND INDULGE, EXHIBIT 1026 COULD BE

16     GIVEN TO THE WITNESS, PLEASE.

17             SO ARE THOSE ALL PHONES THAT ARE AT ISSUE

18     IN THIS CASE WHICH SAMSUNG SELLS TO OTHER CARRIERS

19     OTHER THAN THE MAJOR FOUR CARRIERS?

20     A    THEY ARE, EXCEPT I'M MISSING THE PREVAIL.  I

21     DON'T HAVE THE PREVAIL.

22     Q    THAT'S EXHIBIT 1022.

23             GOT IT?

24     A    I HAVE IT, YES.

25             MR. QUINN:  YOUR HONOR, WE'D OFFER

1     EXHIBIT 1022, THE PREVAIL; 1015, THE MESMERIZE;

2     1017, THE SHOWCASE; AND 1026, THE INDULGE.

3                    THE COURT:  NO OBJECTION?

4                    MR. LEE:  NO OBJECTION, YOUR HONOR.

5                    THE COURT:  THEY'RE ALL ADMITTED.

6                    (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

7                    1022, 1015, 1017, AND 1026, HAVING BEEN

8                    PREVIOUSLY MARKED FOR IDENTIFICATION,

9                    WERE ADMITTED INTO EVIDENCE.)

10    BY MR. QUINN:

11    Q    SO I BELIEVE THERE ARE THREE REMAINING PHONES

12    WHICH ARE AT ISSUE IN THIS CASE, EXHIBIT 1030, THE

13    GALAXY ACE; THE 1007, THE GALAXY S; THE 1032,

14    GALAXY S II I9100.

15                    IF THOSE COULD BE GIVEN TO MR. DENISON,

16    PLEASE.

17                    ARE YOU MISSING ONE?

18    A    I'M MISSING ONE.

19    Q    WHAT ARE THE PHONES THAT YOU HAVE?

20    A    THIS IS THE GALAXY S I9000.  THIS IS THE

21    GALAXY ACE.

22                    MR. QUINN:  WE'D OFFER BOTH OF THOSE,

23    YOUR HONOR.

24                    MR. LEE:  NO OBJECTION, YOUR HONOR.

25                    THE COURT:  OKAY.  LET ME JUST QUICKLY --

```
1    SOME OF THESE -- 1007 AND 1032; CORRECT?

2              MR. QUINN:  YES, YOUR HONOR.

3              THE COURT:  OKAY.  THOSE ARE ADMITTED.

4              MR. QUINN:  AND THEN WE JUST NEED THE

5    GALAXY ACE, 1030.  DO WE HAVE THAT?

6              THE WITNESS:  NO.  WE HAVE THE GALAXY

7    APPLE AND SAMSUNG.  WE'RE MISSING THE I9100.

8              MR. QUINN:  I'M SORRY, YOUR HONOR.  I'LL

9    OFFER EXHIBIT 1030.

10             THE COURT:  I THOUGHT 1007 WAS THE ACE.

11   I'M SORRY.  1007 IS THE --

12             MR. QUINN:  IS THE I9000.

13             THE COURT:  RIGHT.  AND YOU HAVE THAT

14   ONE?

15             THE WITNESS:  YES, I DO.

16             THE COURT:  OKAY.  SO THAT ONE'S -- THAT

17   ONE IS ADMITTED.

18             AND WHAT IS THE OTHER ONE THAT YOU WANT?

19             MR. QUINN:  THE REMAINING ONE, EXHIBIT

20   1032, THE I9100.

21             WE DON'T HAVE THAT, I TAKE IT.

22             I THINK WE DO NOT HAVE THAT ACTUALLY.

23             THE COURT:  I'M SORRY.  LET'S DO A LITTLE

24   CLEAN UP HERE.

25             SO I HAVE EXHIBIT 1007, WHICH IS THE
```

```
 1    GALAXY S I9000, THAT'S BEEN ADMITTED; AND WHAT WAS
 2    THE OTHER -- DID YOU MOVE IN 1030, WHICH IS THE --
 3              MR. QUINN:  YES, I DID, THE GALAXY ACE.
 4              THE COURT:  OKAY.
 5              MR. QUINN:  I GUESS WE DON'T HAVE --
 6              THE COURT:  THAT'S 1032, SO THAT'S NOT --
 7              MR. QUINN:  YOUR HONOR, WE'LL FIND ON
 8    I9100 AND MAYBE I CAN MOVE IT IN LATER ON.
 9              THE COURT:  OKAY, THAT'S FINE.
10              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS
11              1005, 1007, AND 1037, HAVING BEEN
12              PREVIOUSLY MARKED FOR IDENTIFICATION,
13              WERE ADMITTED INTO EVIDENCE.)
14    BY MR. QUINN:
15    Q    BUT THESE THREE PHONES, THE GALAXY ACE, THE
16    GALAXY S, AND THE GALAXY S I9100, THE I9000 AND THE
17    I9100, ARE THEY SOLD BY SAMSUNG IN THE
18    UNITED STATES?
19    A    THEY'RE NOT.
20    Q    OKAY.  TURNING --
21              MOVING ON NOW, IF WE COULD PUT ON THE
22    SCREEN, AT THIS POINT, YOUR HONOR, JUST AS A
23    DEMONSTRATIVE, EXHIBIT 684001.
24              MR. LEE:  YOUR HONOR, WE WOULD OBJECT TO
25    THIS.  WE DO OBJECT.  THIS HAS THE PRIOR PHONES.
```

1    IT GOES TO ISSUES ON WHICH YOUR HONOR HAS EXCLUDED

2    THE EVIDENCE.

3               MR. QUINN:  I DON'T BELIEVE SO, YOUR

4    HONOR.  THIS WAS SHOWN IN OPENING STATEMENT.  IF

5    THERE WERE OBJECTIONS, THEY WERE OVERRULED.

6               AT THIS POINT, IT'S JUST A

7    DEMONSTRATIVE --

8               THE COURT:  I'M SORRY.  I'M SEEING TWO ON

9    THE SCREEN.  WHICH ONE ARE YOU OBJECTING TO?  THE

10   FIRST ONE OR THE SECOND ONE?

11              MR. QUINN:  IT'S ACTUALLY ONLY ONE.

12              MR. LEE:  IT'S ONLY ONE, YOUR HONOR.

13              MR. QUINN:  IT'S EXHIBIT 684.001.

14   THERE'S A LINE ON THE MIDDLE, AND THAT'S ACTUALLY

15   ON THE SLIDE.

16              THE COURT:  RIGHT.  BUT I THINK YOU HAD

17   TWO DIFFERENT VERSIONS THAT I SAW ON MY SCREEN, BUT

18   THAT'S OKAY.

19              MR. LEE:  AND THE -- IT'S A TOP AND A

20   BOTTOM AND IT'S THE TOP IN PARTICULAR, YOUR HONOR.

21              MR. QUINN:  YOUR HONOR, THIS WAS SHOWN

22   IN OPENING STATEMENT.

23              MR. LEE:  AS YOUR HONOR INSTRUCTED THE

24   JURY, OPENING STATEMENT IS NOT EVIDENCE.  THIS IS

25   NOW EVIDENCE AND THIS PORTION HAS BEEN EXCLUDED

```
 1    MULTIPLE TIMES.
 2              MR. QUINN:  NOT TO MY KNOWLEDGE, YOUR
 3    HONOR.  AT THIS POINT WE'RE ONLY OFFERING IT AS A
 4    DEMONSTRATIVE, ALTHOUGH WE DO, AFTER WE LINKED UP
 5    SOME THINGS, INTEND TO OFFER IT IN EVIDENCE.
 6              THE COURT:  WELL, WHY DON'T YOU WAIT
 7    UNTIL YOU OFFER IT INTO EVIDENCE, OKAY.
 8              MR. QUINN:  I DO NEED TO LAY SOME
 9    FOUNDATION WITH THIS WITNESS, YOUR HONOR, BECAUSE
10    IT WILL REQUIRE TWO WITNESSES TO IDENTIFY ALL THE
11    FOUNDATION.
12              THE COURT:  RIGHT.  BUT I'M NOT GOING TO
13    HAVE THIS PUBLISHED TO THE JURY IF IT'S NOT AT THIS
14    POINT ADMISSIBLE.  SO YOU'LL HAVE TO LAY THE
15    FOUNDATION WITHOUT THE DEMONSTRATIVE.
16    BY MR. QUINN:
17    Q    ALL RIGHT.  CAN YOU SEE IT THERE?  IS IT ON
18    YOUR SCREEN?
19    A    I CAN SEE IT.
20    Q    ALL RIGHT.  CAN YOU IDENTIFY THE PHONES THAT
21    APPEAR HERE ON THIS PAGE, EXHIBIT 684.001?
22    A    I CAN IDENTIFY THE PHONES THAT ARE ON THIS
23    SLIDE THAT HAVE ALL BEEN COMMERCIALLY LAUNCHED,
24    YES.
25    Q    ALL RIGHT.  AND CAN YOU IDENTIFY -- ARE THE
```

1    PHONES -- THERE'S A LINE ACROSS THE MIDDLE OF THE

2    PAGE?

3    A    YES, I SEE THAT.

4    Q    AND ABOVE IT SAYS "BEFORE"?

5    A    YES.

6    Q    BEFORE THE IPHONE?

7    A    UM-HUM.

8    Q    AND BELOW THAT SAYS AFTER?

9    A    CORRECT.

10   Q    AND CAN YOU IDENTIFY ALL OF THE PHONES

11   ILLUSTRATED HERE AS BEING SAMSUNG PHONES?

12          MR. LEE:  YOUR HONOR, CAN WE HAVE A

13   FOUNDATION FOR THIS?  EVERYTHING ON THE "BEFORE" IS

14   TWO YEARS OR MORE BEFORE HE ARRIVED AT THE COMPANY.

15   SO THERE'S NO FOUNDATION FOR HIM KNOWING ABOUT

16   EVENTS.

17          THE COURT:  THAT'S ENOUGH.  GO AHEAD AND

18   PLEASE LAY A FOUNDATION FOR MR. DENISON.

19          MR. QUINN:  ALL RIGHT.

20   Q    MR. DENISON, ARE YOU AWARE OF WHAT PHONES

21   SAMSUNG OFFERED EVEN BEFORE YOU ACTUALLY JOINED THE

22   COMPANY?

23   A    I'VE BEEN IN THE INDUSTRY FOR ABOUT 16 YEARS

24   AND CERTAINLY HAVE WATCHED SAMSUNG, EVEN WHEN I WAS

25   WORKING AT COMPETITORS OF SAMSUNG.

```
 1              SO AS I SAID, I'M GENERALLY AWARE OF ALL

 2    THE PHONES THAT HAVE BEEN COMMERCIALLY LAUNCHED

 3    THAT APPEAR ON THIS PAGE.

 4    Q    YOU TOLD US BEFORE THAT BEFORE JOINING SAMSUNG

 5    YOU WORKED AT NOKIA?

 6    A    CORRECT.

 7    Q    MOTOROLA?

 8    A    YES.

 9    Q    AND CAN YOU TELL US WHETHER OR NOT, IN THOSE

10    -- WORKING IN THOSE JOBS FOR SAMSUNG COMPETITORS,

11    WAS IT PART OF YOUR JOB TO KNOW WHAT PHONES SAMSUNG

12    WAS OFFERING IN THE MARKETPLACE?

13    A    YES, SURE.

14    Q    ALL RIGHT.  SO BASED ON THAT, CAN YOU IDENTIFY

15    THE PHONES REFLECTED HERE ON EXHIBIT 684.001 AS

16    BEING PHONES THAT SAMSUNG OFFERED?

17    A    YES.

18    Q    AND ARE THERE ANY THAT YOU CANNOT?

19    A    WELL, WHAT I CAN SAY IS IN THE UPPER LEFT-HAND

20    CORNER, I THINK THERE ARE SOME DEVICES THAT MAY NOT

21    HAVE BEEN COMMERCIALLY LAUNCHED.  OKAY.  SO THE

22    UPPER LEFT QUADRANT OF THIS SLIDE, I WAS NOT AT

23    SAMSUNG AND WOULD NOT HAVE LIKELY SEEN THOSE.

24              HOWEVER, EVERYTHING ELSE ON THE SLIDE,

25    INCLUDING THE UPPER RIGHT QUADRANT, AS WELL AS THE
```

1    LOWER HALF OF THE DOCUMENT, I RECOGNIZE ALL THE

2    DEVICES.

3    Q    ALL RIGHT.  SO WHEN YOU SAY IN THE UPPER LEFT,

4    THE ONES THAT YOU COULD NOT IDENTIFY, ARE YOU

5    REFERRING TO THOSE THAT ARE UNDER BAR TYPE

6    TOUCHSCREEN DISPLAY?  IS THAT WHAT YOU'RE REFERRING

7    TO?

8    A    YES, I AM.

9    Q    AND CAN YOU IDENTIFY ALL THE OTHER PHONES

10   REFLECTING ON EXHIBIT 684.001 AS BEING PHONES THAT

11   SAMSUNG OFFERED AS -- ON OR ABOUT THE DATES AND

12   YEARS INDICATED?

13   A    YES, ALL THAT LOOKS RIGHT.

14   Q    LET'S CHANGE THE SUBJECT NOW.  WE'VE BEEN

15   TALKING ABOUT PHONES AND LET'S TALK ABOUT TABLETS A

16   LITTLE BIT.

17           IF WE COULD PUT BEFORE THE WITNESS

18   EXHIBIT 1037, A GALAXY TAB 10.1 AND EXHIBIT 1005,

19   AN IPAD 2.

20           AND WE'D OFFER THESE TWO, YOUR HONOR.

21           MR. LEE:  MAY I HAVE THE NUMBERS JUST

22   ONCE MORE?

23           MR. QUINN:  1037, THE GALAXY TAB 10.1;

24   AND 1005, AN IPAD 2.

25           MR. LEE:  NO OBJECTION.

```
 1              THE COURT:  THEY'RE ADMITTED.

 2              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

 3              1037 AND 1005 HAVING BEEN PREVIOUSLY

 4              MARKED FOR IDENTIFICATION, WERE ADMITTED

 5              INTO EVIDENCE.)

 6   BY MR. QUINN:

 7   Q    OKAY.  AND CAN YOU IDENTIFY THOSE AS BEING

 8   WHAT I SAID?

 9   A    YES.  THIS APPEARS TO BE AN IPAD 2.

10   Q    ALL RIGHT.

11   A    THIS IS A GALAXY TAB 10.1, WI-FI EDITION.

12   Q    AND AS PART OF THE INVESTIGATION THAT YOU DID

13   THAT MR. LEE WAS QUESTIONING YOU ABOUT, DID YOU

14   LOOK INTO THE ORIGINS OF THE DESIGN OF THE GALAXY

15   TAB 10.1?

16   A    YES, I DID.

17   Q    AND DID YOU LEARN WHAT THE INSPIRATION WAS FOR

18   THAT?

19   A    YES.  THE INSPIRATION WAS --

20              MR. LEE:  OBJECTION.

21              THE COURT:  SUSTAINED.  YOU'RE ELICITING

22   HEARSAY.  PLEASE MOVE TO YOUR NEXT QUESTION.

23              MR. QUINN:  YOUR HONOR, MAY THOSE TWO

24   TABS, THOSE TWO EXHIBITS, PLEASE BE GIVEN TO THE

25   JURY?
```

```
 1              THE COURT:  YES.  I ASSUME NO OBJECTION,
 2     MR. LEE, RIGHT?
 3              MR. LEE:  NO OBJECTION, YOUR HONOR.
 4              THE COURT:  OKAY.
 5     BY MR. QUINN:
 6     Q    NOW, WE'VE HEARD SOME REFERENCE IN THIS TRIAL
 7     TO WHAT ARE CALLED TEAR-DOWN ANALYSES OF
 8     COMPETITORS' PRODUCTS.
 9     A    YES.
10     Q    ARE YOU FAMILIAR WITH THOSE?
11     A    I AM.
12     Q    AND DOES SAMSUNG DO TEAR-DOWN ANALYSES LIKE
13     APPLE DOES OF ITS COMPETITORS' PRODUCTS?
14     A    WELL, AT SATURDAY, WHAT I CAN SAY IS WE
15     ACTUALLY SUBSCRIBE TO A TEAR-DOWN SERVICE FROM A
16     THIRD PARTY COMPANY.
17     Q    THIS IS SOME THIRD PARTY THAT OFFERS THIS
18     SERVICE?
19     A    THAT'S RIGHT.
20     Q    AND AS -- IN THE COURSE OF YOUR WORK IN THE
21     JOB -- IN YOUR JOB, DO YOU BECOME FAMILIAR WITH
22     WHAT THOSE TEAR-DOWN ANALYSES SHOW?
23     A    YES, I DO LOOK AT THEM.
24     Q    AND I THINK YOU TOLD US LAST WEEK YOU HAVE AN
25     ADVANCED AGREE IN ENGINEERING?
```

```
 1     A    I DO.  I HAVE A MASTER'S.

 2     Q    AND AS A RESULT OF THAT, DO YOU HAVE AN

 3     UNDERSTANDING ABOUT WHAT PERCENTAGE OF THE COST OF

 4     THE COMPONENTS IN THE IPHONE IS ACTUALLY SUPPLIED

 5     BY SAMSUNG?

 6     A    YES, I DO.  IT'S ABOUT 25, 26 PERCENT.

 7     Q    OKAY.  AND DOES THAT INCLUDE SOMETHING CALLED

 8     THE AP, THE APPLICATIONS PROCESSOR?

 9     A    IT DOES.

10     Q    AND COULD YOU TELL THE JURY WHAT THE

11     APPLICATIONS PROCESSOR IS?

12     A    WELL, THE APPLICATIONS PROCESS, OR AP AS YOU

13     CALLED IT, IS NO DIFFERENT THAN THE MAIN PROCESSOR

14     OF YOUR COMPUTER, YOUR CPU.  IT'S THE BRAIN, LET'S

15     SAY, OF THE DEVICE THAT DOES MOST OF THE GENERAL

16     COMPUTATION FUNCTIONS AND MULTIMEDIA FUNCTIONS AND

17     THINGS LIKE THAT.

18     Q    AND WHAT IS THE DIVISION OF SAMSUNG THAT MAKES

19     THAT APPLICATIONS PROCESSOR THAT'S THEN SUPPLIED TO

20     APPLE TO BE THE PROCESSOR FOR THE IPHONE?

21     A    THAT'S THE, WHAT WE CALL THE SYSTEM LSI

22     DIVISION WITHIN SAMSUNG SEMICONDUCTOR.

23     Q    WE'VE HEARD PHRASES IN THIS CASE, IN OPENING

24     STATEMENT, YOU WEREN'T HERE, BUT THINGS LIKE

25     SAMSUNG EXECUTIVES SAYING THERE'S A CRISIS OF
```

```
 1    DESIGN AND THAT THE DIFFERENCE BETWEEN A PARTICULAR

 2    SAMSUNG PHONE AND THE IPHONE IS LIKE HEAVEN AND

 3    EARTH.

 4              IS THERE A PARTICULAR STYLE OF

 5    COMMUNICATION THAT, YOU KNOW, IS PREVALENT AT

 6    SAMSUNG BY WHICH MANAGEMENT MOTIVATES PEOPLE?

 7    A    YES.  I WOULD SAY THAT AT SAMSUNG -- AND THIS

 8    IS UNIQUE FROM OTHER COMPANIES THAT I'VE WORKED FOR

 9    IN AND AROUND THIS INDUSTRY -- SAMSUNG DOES AN

10    EXCELLENT JOB OF REMAINING VERY HUMBLE, VERY

11    SELF-CRITICAL, AND CONSTANTLY CREATING A SENSE OF

12    URGENCY WITHIN ITS OWN RANKS TO REALLY DRIVE HARD

13    WORK AND CHANGE AND INNOVATION SO THAT IT NEVER,

14    YOU KNOW, RESTS ON ITS LAUREL AND BECOMES

15    COMPLACENT, LET'S SAY.

16    Q    ARE HYPERBOLIC STATEMENTS LIKE THAT, CRISIS OF

17    DESIGN, HEAVEN AND EARTH, ARE THOSE THE KINDS OF

18    THINGS THAT YOU WOULD HEAR AT WORK?

19    A    YES, THOSE TYPES OF PHRASES ARE QUITE COMMON.

20    Q    IS SAMSUNG SATISFIED WITH ITS SUCCESS?

21    A    NO, NO.  WE -- I THINK HISTORICALLY WE HAVE

22    CELEBRATED WINS VERY BRIEFLY AND THEN MOVED ON TO

23    THE NEXT CHALLENGE.

24    Q    HAVE THERE BEEN ANY PARTICULAR SORT OF GRAPHIC

25    INCIDENTS OR EXAMPLES OF THIS, YOU KNOW, THE WAY OF
```

1    TRYING TO MOTIVATE PEOPLE IN KIND OF A GRAPHIC WAY

2    THAT YOU CAN THINK OF?

3    A    YES.  THERE'S ACTUALLY A, I GUESS KIND OF A

4    FAMOUS STORY, INSIDE SAMSUNG AT LEAST, WHERE THE

5    CHAIRMAN OF THE COMPANY, K.H. LEE, ACTUALLY WAS,

6    WAS UPSET WITH SOME OF THE QUALITY OF THE PRODUCTS

7    THAT WERE COMING OUT OF THE FACTORY AND VISITED THE

8    FACTORY AND PROCEEDED TO -- OF COURSE I WASN'T

9    THERE, BUT, AGAIN, THIS STORY IS SHARED INSIDE,

10   INSIDE SAMSUNG.

11              MR. LEE:  YOUR HONOR --

12              THE COURT:  OBJECTION.  WHAT IS THE

13   OBJECTION?

14              MR. LEE:  HEARSAY.  HE WASN'T THERE.

15              THE COURT:  SUSTAINED.

16   BY MR. QUINN:

17   Q    WELL, IS THIS KIND OF A FAMOUS EPISODE WITHIN

18   SAMSUNG?

19   A    IT IS.  IT'S ACTUALLY BEEN PUBLISHED IN PUBLIC

20   DOCUMENTS LIKE THE ECONOMIST.  IT APPEARED IN A

21   DOCUMENT IN THE ECONOMIST.

22   Q    WHAT DID HE DO?

23              THE COURT:  SUSTAINED.  COME ON, PLEASE.

24              MR. QUINN:  CAN WE HAVE EXHIBIT 1038, THE

25   TABLET.

1    Q    CAN YOU IDENTIFY THAT FOR US?

2    A    THIS IS THE GALAXY TAB 10.1 EDITION THAT WAS

3    SOLD TO T-MOBILE.

4              MR. QUINN:  AND OFFER THAT IN EVIDENCE

5    ALSO, YOUR HONOR.

6              THE COURT:  THAT'S ADMITTED.

7              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

8              1038, HAVING BEEN PREVIOUSLY MARKED FOR

9              IDENTIFICATION, WAS ADMITTED INTO

10             EVIDENCE.)

11   BY MR. QUINN:

12   Q    DOES SAMSUNG HAVE EMPLOYEES IN THE SAN JOSE

13   AREA?

14   A    YES, IT DOES.

15   Q    AND CAN YOU DESCRIBE WHAT BUSINESS UNITS ARE

16   HERE IN THE SAN JOSE AREA AND WHAT IT IS THAT THEY

17   DO?

18   A    THERE ARE ABOUT FOUR, LET'S SAY, DIVISIONS OF

19   SAMSUNG THAT RESIDE IN AND AROUND THIS AREA.  ONE

20   IS CALLED THE MOBILE COMMUNICATIONS LAB.  IT

21   EMPLOYS PEOPLE THAT WERE -- WORK ALONG SIDE OF

22   GOOGLE IN TERMS OF COMMUNICATING AND ENGINEERING

23   TYPE CONVERSATIONS.

24   Q    DOES THAT RELATE TO THE ANDROID OPERATING

25   SYSTEM?

```
1    A    IT DOES, YES.

2              WE HAVE A DIVISION CALLED SAMSUNG

3    INFORMATION SYSTEMS AMERICA, OR SISA, AND THEY DO

4    I.T. SERVICES AND, YOU KNOW, CONSULTING SERVICES,

5    LET'S SAY, WITHIN SAMSUNG.  THEY'RE BASED HERE AS

6    WELL.

7              WE HAVE A DIVISION CALLED SAMSUNG DESIGN

8    AMERICA THAT HAS, YOU KNOW, DESIGNERS, INDUSTRIAL

9    DESIGNERS THAT ARE RESIDENT HERE IN THE AREA.

10              AND AS WELL WE HAVE WHAT'S CALLED THE

11    MEDIA SOLUTIONS CENTER AMERICA HERE IN SAN JOSE,

12    AND THAT GROUP HELPS TO DEVELOP SOME OF THE CONTENT

13    SERVICES THAT SOME OFFERS DIRECTLY TO CONSUMERS

14    LIKE THE MEDIA HUB APPLICATION, THAT'S A VIDEO

15    SERVICE WE DELIVER TO CONSUMERS, AS WELL AS THE

16    MUSIC HUB APPLICATION THAT WE JUST LAUNCHED THAT

17    DELIVERS MUSIC TO CONSUMERS.

18    Q    ALL RIGHT.  WE'VE HEARD TESTIMONY THUS FAR

19    FROM APPLE WITNESSES THAT THEY BELIEVE THAT SAMSUNG

20    RIPPED OFF APPLE AND THAT THEY WERE OUTRAGED BY IT,

21    THAT THEY FELT OUTRAGED.

22              AND LET ME JUST ASK YOU, WHAT IS YOUR

23    REACTION TO BEING ACCUSED OF RIPPING OFF APPLE?

24    A    I FIND IT VERY OFFENSIVE.

25              AT SAMSUNG, WE'RE VERY, VERY PROUD OF THE
```

```
1    PRODUCTS WE PRODUCE, OF ALL THE HARD WORK THAT GOES

2    INTO BRINGING THOSE PRODUCTS TO MARKET.

3              WE'VE BEEN IN THE MOBILE BUSINESS FOR 20

4    YEARS GLOBALLY, JUST OVER 20 YEARS.  WE'VE BEEN IN

5    THE MOBILE BUSINESS IN THE UNITED STATES 15 YEARS.

6              AND THE LAST FOUR YEARS, WE'VE BEEN

7    NUMBER ONE IN THE U.S. MARKET.

8              WHAT WE WOULD -- WHAT WE WOULD LIKE TO --

9    WHAT WE WOULD LIKE TO BE ABLE TO DO IS SIMPLY JUST

10   COMPETE IN THE MARKET, JUST CONTINUE WHAT WE'VE

11   BEEN DOING FOR THE LAST 15 YEARS IN THE U.S. MARKET

12   AND CONTINUE TO TRY AND DELIVER THE BEST PRODUCTS

13   WITH THE LATEST TECHNOLOGY MORE QUICKLY THAN OUR

14   COMPETITORS DO AS MANY CARRIERS AS POSSIBLE WITHIN

15   REACH OF AS MANY CONSUMERS AS POSSIBLE.  THAT'S

16   SIMPLY WHAT WE'D LIKE TO DO.

17   Q    ARE THERE SOME CELL PHONE FEATURES THAT

18   SAMSUNG HAS ADDED TO ITS PHONES BEFORE APPLE DID

19   AND THEN APPLE LATER ON ADDED THOSE FEATURES TO ITS

20   PHONES?

21   A    YES.

22   Q    AND COULD YOU NAME WHAT SOME OF THOSE ARE,

23   PLEASE?

24   A    WELL, ONE, FOR INSTANCE, IS VOICE, VOICE

25   RECOGNITION, VOICE COMMAND CAPABILITIES.  WE HAD
```

```
 1     THAT IN OUR PHONES PRIOR TO APPLE.

 2              ONE IS ADVANCED SCREEN TECHNOLOGY.  WE

 3     LAUNCHED SUPER AMOLED AND THEN LATER ON APPLE

 4     LAUNCHED ANOTHER ADVANCED SCREEN TECHNOLOGY

 5     FOLLOWING US.

 6              WE LAUNCHED THE FIRST CLOUD-BASED

 7     MUSIC -- OR CLOUD-BASED VIDEO SERVICE IN THE U.S.

 8     AND DID THAT PRIOR TO APPLE.

 9     Q    AND THEN WHEN APPLE LATER OFFERED THOSE

10     FEATURES IN ITS PHONES, DID YOU FEEL LIKE THEY'D

11     RIPPED YOU OFF?

12     A    NO, NOT REALLY.

13     Q    WERE YOU OUTRAGED?

14     A    NO, I WASN'T.

15     Q    IF APPLE COMES OUT, SAY, IN THE IPHONE 5 WITH

16     A SCREEN THAT'S BIGGER THAN THE EXISTING SCREEN,

17     THAT'S MORE LIKE THE SIZE OF THE GALAXY 2 SCREEN,

18     ARE YOU GOING TO REGARD THAT AS COPYING?

19     A    NO.

20     Q    NOW, YOU WERE ASKED SOME QUESTIONS LAST WEEK

21     BY MR. LEE ABOUT THE DIFFERENCE BETWEEN

22     BENCHMARKING COPYING.

23              DO YOU RECALL THAT?

24     A    YES.

25     Q    AND LET ME ASK YOU A SLIGHTLY DIFFERENT
```

```
 1    QUESTION.

 2              IF WE COULD PUT UP DEMONSTRATIVE 3586.

 3    THIS WAS ALREADY ON THE SCREEN LAST WEEK, 3586.

 4              DO YOU SEE A DIFFERENCE BETWEEN COPYING

 5    THINGS THAT NO ONE OWNS OR CAN OWN AND COPYING

 6    THINGS THAT ARE ACTUALLY, YOU KNOW, PROPRIETARY,

 7    THAT BELONG TO OTHER PEOPLE?

 8              MR. LEE:  YOUR HONOR, THIS IS -- THIS

 9    COMPARISON BY HIM, AGAIN, IS THE BACKDOOR EFFORT.

10    THESE ARE ALL PHONES YEARS AFTER THE IPHONE.

11              MR. QUINN:  THAT'S TRUE, YOUR HONOR.

12              THE COURT:  THIS HAS ALREADY BEEN -- IT

13    WAS DEFENSE EXHIBIT 28.  GO AHEAD, PLEASE,

14    MR. QUINN.

15    BY MR. QUINN:

16    Q   MY QUESTION TO YOU IS, YOU WERE ASKED THIS

17    QUESTION ABOUT IS THERE A DIFFERENCE BETWEEN

18    BENCHMARKING AND COPYING, AND I'LL ASK YOU A

19    SLIGHTLY DIFFERENT QUESTION.

20              DO YOU SEE A DIFFERENCE BETWEEN EMULATING

21    OR COPYING THINGS THAT NOBODY CAN OWN AND COPYING

22    THINGS THAT ARE ACTUALLY OWNED BY SOMEBODY ELSE,

23    SOMEBODY ELSE'S INTELLECTUAL PROPERTY?

24              MR. LEE:  YOUR HONOR, THIS IS LEADING.

25    THESE ARE JUST OPINIONS AND CONCLUSIONS.
```

```
 1              THE COURT:  OVERRULED.  GO AHEAD, PLEASE.
 2              THE WITNESS:  YES, I SEE A BIG DIFFERENCE
 3    IN THEM.
 4    BY MR. QUINN:
 5    Q    IN YOUR EXPERIENCE -- YOU'VE BEEN IN THE CELL
 6    PHONE INDUSTRY FOR HOW LONG?
 7    A    I'VE BEEN IN AND AROUND IT FOR ABOUT 16 YEARS.
 8    Q    IS -- TO YOUR KNOWLEDGE, IS THERE ANY HANDSET
 9    MANUFACTURER THAT OWNS THE RIGHTS TO BLACK,
10    RECTANGULAR DEVICES WITH ROUNDED CORNERS AND THE
11    SCREEN'S ON THE TOP?
12              MR. LEE:  I OBJECT, YOUR HONOR.
13              THE COURT:  SUSTAINED.  LET'S GO TO THE
14    NEXT QUESTION.
15    BY MR. QUINN:
16    Q    WELL, FROM YOUR PERSPECTIVE, SIR, AND YOUR
17    EXPERIENCE IN THE INDUSTRY, IS IT -- IS THERE
18    ANYTHING WRONG WITH SAMSUNG TRYING TO DO AS WELL OR
19    BETTER THAN APPLE AT THINGS THAT APPLE DOESN'T OWN?
20    A    NO, ABSOLUTELY NOT.
21              MR. QUINN:  NOTHING FURTHER.
22              THE COURT:  ALL RIGHT.  THE TIME IS NOW
23    9:34.
24              GO AHEAD, MR. LEE.
25              AS-ON RECROSS-EXAMINATION
```

```
 1     BY MR. LEE:

 2     Q    GOOD MORNING, MR. DENISON.

 3               GOOD MORNING, LADIES AND GENTLEMEN.

 4               MR. DENISON, MR. QUINN JUST ASKED YOU

 5     SOME QUESTIONS ABOUT COMPETING.  DO YOU REMEMBER

 6     THOSE?

 7     A    SURE.

 8     Q    AND YOU SAID SAMSUNG WANTS TO COMPETE IN THE

 9     MARKETPLACE; CORRECT?

10     A    THAT'S RIGHT.

11     Q    NOW, THERE'S FAIR AND SQUARE COMPETITION, AND

12     THAT'S WHAT YOU WERE TALKING ABOUT; CORRECT?

13     A    YES.

14     Q    AND THERE'S ALSO COMPETING WHEN YOU'RE

15     INFRINGING ON SOMEONE ELSE'S INTELLECTUAL PROPERTY;

16     CORRECT?

17     A    I ASSUME THERE'S SUCH A THING, YES.

18     Q    WELL, MR. DENISON, ON FRIDAY AFTERNOON, YOU

19     SHOWED THE JURY, AND YOU TALKED TO THE JURY ABOUT

20     ALL OF SAMSUNG'S PATENTS.  DO YOU REMEMBER THAT?

21     A    I BELIEVE I HIGHLIGHTED OUR NUMBER 2 RANKING

22     IN PATENTS.

23     Q    RIGHT.  AND WITH SOME DEGREE OF PRIDE; RIGHT?

24     A    YES.

25     Q    AND IF SOMEONE WAS COMPETING WITH YOU BY
```

1    INFRINGING YOUR PATENTS, THAT'S NOT FAIR AND SQUARE

2    COMPETITION, IS IT, SIR?

3    A    NO, IT'S NOT.

4    Q    RIGHT.  SO THERE'S A DIFFERENCE BETWEEN

5    COMPETING FAIRLY AND SQUARELY AND THERE'S A

6    DIFFERENCE BETWEEN COMPETING WITH SOMEONE BY TAKING

7    THEIR INTELLECTUAL PROPERTY; CORRECT?

8    A    YES.

9    Q    ALL RIGHT.  NOW, LET'S SEE IF WE CAN CLEAR UP

10   A COUPLE OF THINGS.

11         YOU TALKED TO THE JURY ABOUT THE

12   COMPONENTS THAT SAMSUNG BUYS FROM -- THAT APPLE

13   BUYS FROM SAMSUNG; CORRECT?

14   A    THAT'S RIGHT.

15   Q    AND YOU SAID YOU HAVE AN ENGINEERING

16   BACKGROUND AND YOU'VE LOOKED AT TEAR-DOWN REPORTS;

17   CORRECT?

18   A    YES, I'VE SEEN THEM.

19   Q    HAVE YOU LOOKED AT TEAR-DOWN REPORTS OF THE

20   PROCESSOR THAT SAMSUNG SELLS TO APPLE?

21   A    THE TEAR-DOWN OF THE PROCESSOR ITSELF?

22   Q    YES.

23   A    NO, NO, I HAVE NOT.

24   Q    OH.  SO YOU HAVEN'T SEEN THAT?

25   A    I'VE SEEN THE TEAR-DOWN REPORT OF THE IPHONE

1    PRODUCT, NOT THE PROCESSOR TAKEN APART.

2    Q    RIGHT.  AND LET'S TELL THE LADIES AND

3    GENTLEMEN OF THE JURY, THAT DESIGN, THE DESIGN OF

4    THAT PROCESSOR, IS DONE BY APPLE; CORRECT?

5    A    IN MORE RECENT IPHONE, YES.

6    Q    AND APPLE GIVES THAT INFORMATION TO SAMSUNG;

7    CORRECT?

8    A    WELL, CERTAINLY THEY HAVE TO GIVE THEM THE

9    FILE TO MANUFACTURE IT.

10   Q    IT GIVES -- APPLE GIVES SAMSUNG ITS VERY

11   CONTENTION INFORMATION ON WHAT IT WANTS IN A

12   PROCESSOR; CORRECT?  ISN'T THAT RIGHT, SIR?

13   A    I'M NOT SURE THAT'S AN ACCURATE DEPICTION.

14   Q    WELL, LET'S BACK UP.

15        APPLE GIVES THE DESIGN PARAMETERS OF THIS

16   PROCESSOR YOU DESCRIBED TO SAMSUNG; CORRECT?

17   A    I ASSUME THAT'S THE CASE, YES.

18   Q    SAMSUNG MAKES THE PRODUCT ACCORDING TO APPLE'S

19   SPECIFICATIONS; CORRECT?

20   A    AGAIN, I'LL ANSWER IT JUST ON BEHALF OF MY

21   EXPERIENCE IN THE APPLICATION PROCESSOR INDUSTRY,

22   AND SO MY ASSUMPTION IS YES.

23        BUT I DON'T HAVE DIRECT KNOWLEDGE OF HOW

24   IT HAPPENS.

25   Q    RIGHT.  AND APPLE GIVES CONFIDENTIAL

1   INFORMATION ABOUT APPLE'S PRODUCTS TO SAMSUNG

2   DURING THAT PROCESS; CORRECT?

3   A    SURE.

4   Q    AND APPLE PAYS BILLIONS OF DOLLARS TO SAMSUNG

5   FOR THOSE PROCESSORS THAT ARE MADE ACCORDING TO

6   APPLE'S DESIGNS; CORRECT?

7   A    I ACTUALLY BELIEVE THEY'RE PAYING FOR THE

8   MANUFACTURING TECHNOLOGY, NOT THE PROCESSOR ITSELF.

9   Q    THEY'RE PAYING FOR THE MANUFACTURING

10  TECHNOLOGY AND FOR THE PROCESSORS THAT RESULT

11  ACCORDING TO APPLE'S DESIGN; CORRECT?

12  A    YES, YES.

13  Q    OKAY.  NOW, ON A NUMBER OF CASES, LAST FRIDAY

14  AS WELL AS TODAY, YOU'VE TALKED A LITTLE BIT ABOUT

15  THE DESIGN OF SAMSUNG'S PRODUCTS.

16            DO YOU REMEMBER THAT?

17  A    YES.

18  Q    NOW, THE LADIES AND GENTLEMEN OF THE JURY HAVE

19  HEARD FROM SCOTT FORSTALL, WHO HELPED DESIGN THE OS

20  SYSTEM OF THE APPLE PRODUCTS.

21            HAVE YOU EVER DESIGNED AN OS SYSTEM?

22  A    NO, I DON'T BELIEVE I HAVE.

23  Q    HAVE YOU EVER DESIGNED ANY COMPONENT OF AN OS

24  SYSTEM FOR A MOBILE PHONE?

25  A    NO, I DON'T BELIEVE I HAVE.

1    Q    HAVE YOU EVER DESIGNED ANY COMPONENT OF AN OS

2    SYSTEM FOR A SMARTPHONE?

3    A    NO, I HAVE NOT.

4    Q    THE LADIES AND GENTLEMEN OF THE JURY ALSO

5    HEARD FROM CHRISTOPHER STRINGER, WHO HELPED DESIGN

6    THE IPHONE AND THE IPAD.

7         HAVE YOU EVER HELPED DESIGN ANY OF THE

8    SAMSUNG CELL PHONES OR SMARTPHONES THAT YOU

9    DESCRIBED TO THE JURY?

10   A    I HAVE NOT PARTICIPATED IN THE DESIGN.

11   Q    DID YOU PARTICIPATE IN ANY WAY IN DESIGNING

12   ANY OF THE TABLET COMPUTERS THAT YOU TALKED TO THE

13   LADIES AND GENTLEMEN OF THE JURY ABOUT?

14   A    NO, I DID NOT.

15   Q    YOU'RE NOT A PRODUCT DESIGNER; CORRECT?

16   A    NO, I AM NOT.

17   Q    YOU'RE NOT A SOFTWARE ENGINEER; CORRECT?

18   A    NO, I'M NOT.

19   Q    THE FACT OF THE MATTER IS, WHILE AT SAMSUNG,

20   YOU HAVE NOT DESIGNED OR PARTICIPATED IN THE DESIGN

21   OF ANY PRODUCT; CORRECT?

22   A    THAT'S RIGHT.

23   Q    AND YOU'RE NOT AN INVENTOR ON ANY OF THE

24   PATENTS, THE SAMSUNG PATENTS THAT YOU DESCRIBED TO

25   THE JURY ON FRIDAY; CORRECT?

```
1    A    THAT'S RIGHT.

2    Q    YOUR PRINCIPAL JOB IS IN SALES AND MARKETING

3    AND STRATEGY; CORRECT?

4    A    I WOULD SAY BUSINESS STRATEGY, YES.

5    Q    NOW, THERE ARE PEOPLE AT SAMSUNG WHO ARE

6    INVOLVED WITH PRODUCT DESIGN; CORRECT?

7    A    SURE.

8    Q    AND SOFTWARE DESIGN; CORRECT?

9    A    YES.

10   Q    AND OPERATING SYSTEM DESIGN; CORRECT?

11   A    YES.  THERE ARE 50,000 OF THEM, YES.

12   Q    YOU'RE JUST NOT ONE OF THEM?

13   A    NO, I'M NOT.

14   Q    OKAY.  NOW, LET ME ASK YOU AND GO TO A

15   DIFFERENT TOPIC.

16        MR. QUINN ASKED YOU SOME QUESTIONS ABOUT

17   THIS INVESTIGATION THAT YOU DID.  DO YOU REMEMBER

18   THAT?

19   A    YES.

20   Q    AND YOU SAID YOU INVESTIGATED AND YOU

21   INTERVIEWED SEVERAL OF SAMSUNG'S DESIGNERS;

22   CORRECT?

23   A    YES.

24   Q    AND IF I HAVE YOUR TESTIMONY CORRECTLY, BUT

25   YOU CORRECT ME IF I'M WRONG, ONE OF THE PEOPLE YOU
```

1    TALKED TO IS NAMED MIN, M-I-N, HYOUK, H-Y-O-U-K,

2    LEE; CORRECT?

3    A    YES, THAT'S RIGHT.

4    Q    YOU DESCRIBE HIM AS A PRINCIPAL DESIGNER OF

5    SAMSUNG'S GALAXY S AND GALAXY S 4G PRODUCTS;

6    CORRECT?

7    A    YES, THAT'S RIGHT.

8    Q    OKAY.  NOW, AS PART OF YOUR INVESTIGATION, DID

9    YOU ASK MR. LEE FOR HIS DESIGN DOCUMENTS, THE

10   DOCUMENTS THAT WOULD ACTUALLY SHOW WHAT HE DID?

11   A    I THINK AS A GENERAL RULE, WE TALKED ABOUT THE

12   INSPIRATION BEHIND THE DESIGN AND I BELIEVE IN ALL

13   CASES WE ASKED HIM FOR, YOU KNOW, CAD FILES, LET'S

14   SAY.

15   Q    ALL RIGHT.  I'M ASKING YOU -- I'M NOT ASKING

16   YOU ABOUT WHAT THEY SAID.  I'M ASKING YOU ABOUT

17   WHAT THEY GAVE YOU, WHICH WOULD BE THE PHYSICAL

18   RECORD OF WHAT THEY DID IN DESIGN.

19            SO FOCUSSING ON MIN-HYOUK LEE, AND I

20   APOLOGIZE IF I'M PRONOUNCING IT INCORRECTLY, DID HE

21   GIVE YOU THE DOCUMENTS OR THE CAD FILES THAT SHOWED

22   THE WORK THAT HE DID?

23   A    I DON'T ACTUALLY REMEMBER IF I RECEIVED CAD

24   FILES FROM MIN-HYOUK LEE.

25   Q    NOW, MR. DENISON, DID YOU ASK MIN-HYOUK LEE

```
 1    WHETHER ANY OF HIS FILES OR DOCUMENTS HAD BEEN

 2    DESTROYED?

 3    A    NO, IT WOULD NOT OCCUR TO ME TO ASK SUCH A

 4    QUESTION.

 5    Q    DO YOU KNOW ONE WAY OR ANOTHER WHETHER ANY OF

 6    HIS FILES --

 7              MR. QUINN:  YOUR HONOR, OBJECTION.

 8              THE COURT:  OVERRULED.

 9              THE WITNESS:  SHOULD I REPEAT OR FINISH

10    THE QUESTION.

11    BY MR. LEE:

12    Q    SURE.  LET ME STATE IT AGAIN.

13              DO YOU KNOW ONE WAY OR ANOTHER WHETHER

14    ANY OF MIN-HYOUK LEE'S FILES WERE DESTROYED?

15    A    I CAN'T ASK HIM THAT.

16    Q    DO YOU ASK HIM THAT?

17    A    I DON'T RECALL ASKING HIM THAT.

18    Q    NOW, SIR, MR. QUINN ASKED YOU SOME QUESTIONS

19    ABOUT YOUR INVESTIGATION AND A COUPLE QUESTIONS

20    SPECIFICALLY ABOUT RUBBER BANDING.

21              DO YOU REMEMBER THAT?

22    A    YES.

23    Q    IF THERE WERE SAMSUNG'S DOCUMENTS THAT SHOWED

24    COPYING OF THE RUBBER BANDING FEATURE, YOU WOULD

25    HAVE TOLD US ABOUT THOSE; CORRECT?
```

```
1    A    I'M SORRY.  I GUESS I DON'T UNDERSTAND THE

2    QUESTION.  MAYBE YOU CAN REPHRASE IT.

3    Q    IF YOUR INVESTIGATION HAD RESULTED IN A

4    SAMSUNG DOCUMENT THAT SHOWED AN APPLE PRODUCT AND A

5    SAMSUNG PRODUCT AND COMPARED THE RUBBER BANDING

6    FEATURE, YOU HAVE TOLD US ABOUT THAT; RIGHT?

7    A    I DON'T RECALL A DOCUMENT THAT WOULD HAVE

8    SUGGESTED THAT, SO --

9    Q    ALL RIGHT.  THAT'S MY QUESTION.  YOUR

10   INVESTIGATION, THOROUGH AS IT WAS, DIDN'T

11   UNDERCOVER ANY DOCUMENTS LIKE THAT; CORRECT?

12   A    THAT'S RIGHT.

13   Q    ALL RIGHT.  NOW, YOU ALSO TOLD THE JURY ON

14   FRIDAY THAT YOU WERE NOT AWARE OF ANY EXAMPLES OF A

15   CONSUMER BUYING A SAMSUNG PRODUCT THINKING IT WAS

16   AN APPLE PRODUCT.  CORRECT?

17   A    THAT'S RIGHT.

18   Q    YOU ARE AWARE THAT SAMSUNG HAS INVESTIGATED

19   THE REASONS THAT SAMSUNG PRODUCTS ARE RETURNED TO

20   RETAIL STORES LIKE BEST BUY, AREN'T YOU?

21   A    THAT'S ENTIRELY POSSIBLE.  THAT SEEMS LIKE

22   SOMETHING WE WOULD DO.

23   Q    YOU DON'T KNOW ONE WAY OR ANOTHER?

24   A    WELL, I'M NOT DIRECTLY INVOLVED IN THE RETURNS

25   ANALYSIS PROCESS, SO I WOULDN'T KNOW DIRECTLY.
```

```
1    Q    WELL, CAN YOU TELL US ONE WAY OR ANOTHER

2    WHETHER SAMSUNG CONDUCTED AN INVESTIGATION ON ITS

3    OWN THAT SHOWED THAT THE GREATEST NUMBER OF

4    CUSTOMER RETURNS AT BEST BUY WERE BECAUSE THOSE

5    CUSTOMERS HAD PURCHASED A GALAXY TAB THINKING IT

6    WAS AN APPLE IPAD.

7             CAN YOU TELL US WHETHER THAT'S TRUE OR

8    NOT TRUE?

9    A    NO, I CAN'T.

10   Q    ALL RIGHT.  YOU DON'T KNOW ONE WAY OR ANOTHER;

11   CORRECT?

12   A    NO, I DON'T.

13   Q    NOW, SIR, YOU WERE ASKED SOME QUESTIONS BY

14   MR. QUINN ABOUT DOCUMENTS THAT MENTIONED A CRISIS

15   IN DESIGN.

16             DO YOU REMEMBER THAT?

17   A    I REMEMBER THAT PHRASE.

18   Q    A DIFFERENCE BETWEEN HEAVEN AND EARTH.

19             DO YOU REMEMBER THAT?

20   A    YES, I REMEMBER THAT PHRASE, TOO.

21   Q    YOU WERE ASKED ABOUT SYSTEM LSI?

22   A    YES.

23   Q    NOW, ON FRIDAY I ASKED YOU ABOUT SYSTEM LSI ON

24   AN EXHIBIT AND YOU WEREN'T QUITE SURE WHAT IT WAS.

25             DO YOU REMEMBER THAT?
```

```
 1              MR. QUINN:  MISSTATES THE TESTIMONY.

 2              THE COURT:  OVERRULED.

 3              THE WITNESS:  I BELIEVE WHAT I SAID WAS I

 4   CAN'T CONFIRM THAT THIS IS NECESSARILY A SAMSUNG

 5   PRESENTATION OR SAMSUNG DIVISION THAT'S NAMED.

 6   SYSTEM LSI IS KIND OF A GENERIC TECHNOLOGY IN THE

 7   INDUSTRY.

 8   BY MR. LEE:

 9   Q    WELL, DON'T PUT THIS ON THE SCREEN.  TURN, IF

10   YOU WOULD, TO PX 34, WHICH IS TAB 15 ON THE

11   NOTEBOOK.

12              MR. QUINN:  YOUR HONOR, THERE'S NO

13   FOUNDATION.  THE COURT ALREADY SUSTAINED AN

14   OBJECTION TO THIS.

15              MR. LEE:  WELL, YOUR HONOR -- YOUR HONOR

16   SUSTAINED THE OBJECTION WHEN HE SAID HE DIDN'T KNOW

17   WHAT SYSTEM LSI WAS.

18              MR. QUINN:  YOUR HONOR, HE DIDN'T SAY HE

19   DIDN'T KNOW WHAT SYSTEM LSI WAS.

20              THE COURT:  OVERRULED.  GO AHEAD, PLEASE.

21   BY MR. LEE:

22   Q    DO YOU HAVE THAT DOCUMENT BEFORE YOU?

23   A    I DO.

24   Q    DO YOU SEE IT SAYS SYSTEM LSI?

25   A    I DO.
```

1    Q    AND IF YOU TURN TO THE NEXT PAGE, YOU SEE THE

2    IPHONE EFFECT ANALYSIS?

3    A    LET'S SEE.  I'VE NOT SEEN THIS BEFORE, SO I

4    NEED TO LOOK FOR IT.

5           MR. QUINN:  YOUR HONOR, OBJECT TO

6    QUESTIONING ABOUT THE DOCUMENT.  THE COURT

7    SUSTAINED THE OBJECTION.  THERE'S NO FOUNDATION.

8    BY MR. LEE:

9    Q    MR. DENISON, DO YOU HAVE ANY DOUBT THAT THIS

10   IS A SAMSUNG DOCUMENT?

11   A    YES, I DO.  I HAVE NOT SEEN THIS DOCUMENT

12   BEFORE, AND I BELIEVE IT'S, IT'S BEEN TRANSLATED,

13   HASN'T IT?

14   Q    IT HAS, AND WE'VE AGREED WITH YOUR LAWYERS ON

15   WHAT THE TRANSLATION IS.

16          MR. QUINN:  YOUR HONOR, I OBJECT TO THE

17   COMMENTS BEFORE THE JURY.  THAT'S -- AND I'D

18   REQUEST THAT THAT BE STRICKEN, YOUR HONOR, THAT

19   COUNSEL'S COMMENTS ABOUT AN ALLEGED AGREEMENT BE

20   STRICKEN.

21          MR. LEE:  YOUR HONOR, IT'S JUST A

22   STATEMENT OF WHAT WE'VE COOPERATED ON SO IT'LL BE

23   EASIER FOR THE JURY.

24   Q    MR. DENISON, THE DOCUMENT SAYS ON THE BOTTOM

25   RIGHT-HAND CORNER, "PRODUCED BY SAMSUNG," IT SAYS

```
1     "SYSTEM LSI."

2              DO YOU HAVE ANY DOUBT THIS IS A SAMSUNG

3     DOCUMENT?

4     A    AGAIN, PRIOR TO PREPARING FOR THIS TESTIMONY,

5     I HAVE NEVER SEEN THIS DOCUMENT.

6     Q    ALL RIGHT.  AND WHEN THE LAWYERS GAVE YOU THE

7     DOCUMENTS FOR YOUR INVESTIGATION, THIS WASN'T IN

8     THE PACKAGE; RIGHT?

9     A    NO.  I JUST SAID THAT I SAW THIS IN

10    PREPARATION BECAUSE IT WAS AN EXHIBIT THAT WAS

11    NAMED IN MY TESTIMONY.

12    Q    NOW, SIR, LET ME ASK YOU ABOUT THESE TWO

13    QUOTES THAT YOU TALKED TO MR. QUINN ABOUT.

14             ONE WAS A CRISIS IN DESIGN.  DO YOU

15    REMEMBER THAT?

16    A    YES, I REMEMBER THAT PHRASE.

17    Q    NOW, DID YOU SEE THAT IN A SAMSUNG DOCUMENT?

18    A    YOU KNOW, THERE WERE SO MANY DOCUMENTS THAT

19    WERE IN THE EXHIBIT LIST AND NOT IN THE EXHIBIT

20    LIST, I'M NOT SURE.

21    Q    WELL, MR. DENISON, YOU GAVE THE LADIES AND

22    GENTLEMEN OF THE JURY AN EXPLANATION FOR WHY THAT

23    STATEMENT WAS MADE BY SAMSUNG.

24             MY QUESTION IS, DID YOU SEE IT IN A

25    SAMSUNG DOCUMENT?
```

```
 1              MR. QUINN:  OBJECTION, YOUR HONOR,

 2     MISSTATES THE TESTIMONY.

 3              THE COURT:  OVERRULED.  GO AHEAD.

 4              THE WITNESS:  AGAIN, I'M NOT SURE IF I

 5     SAW IT IN PREPARATION FOR THIS TESTIMONY OR PRIOR

 6     TESTIMONY IN OTHER CASES.  SO I CAN'T ACTUALLY

 7     PINPOINT IT.

 8     BY MR. LEE:

 9     Q    ALL RIGHT.  BUT YOU KNOW THAT SAMSUNG SAID

10     THAT THERE WAS A CRISIS IN DESIGN BECAUSE OF THE

11     IPHONE; CORRECT?

12     A    NO.  WHAT I KNOW WAS WHAT MR. QUINN ASKED ME,

13     WHICH IS THERE WAS A PHRASE USED AT SOME POINT IN

14     THE TRIAL ABOUT CRISIS IN DESIGN AND WHETHER THAT

15     SEEMED LIKE A FAMILIAR THING THAT SOMEONE AT

16     SAMSUNG MIGHT SAY.  AND I SAID IT SOUNDED LIKE

17     SOMETHING THAT A SAMSUNG MANAGER OR A SENIOR LEADER

18     MIGHT SAY TO ENCOURAGE PEOPLE TO WORK HARDER AND TO

19     MOTIVATE THEM.

20     Q    WELL, LET'S SEE IF WE CAN REFRESH YOUR

21     RECOLLECTION.

22              MAY I APPROACH, YOUR HONOR?

23              THE COURT:  YES.

24     BY MR. LEE:

25     Q    I'M GOING TO GIVE YOU PLAINTIFF'S EXHIBIT 40
```

1    (HANDING).

2              DO YOU HAVE THAT BEFORE YOU?

3    A    I DO.

4    Q    NOW, YOU RECOGNIZE THE NAMES OF THE FOLKS ON

5    THE E-MAILS, CORRECT?

6              MR. QUINN:  YOUR HONOR, I OBJECT.  THIS

7    WAS NOT ON THE LIST OF EXHIBITS THEY GAVE US TO USE

8    WITH THIS WITNESS.

9              MR. LEE:  YOUR HONOR, WE HAD NO IDEA HE

10   WAS GOING TO TESTIFY TO THE CRISIS --

11             THE COURT:  YOU'VE OPENED THE DOOR BY

12   ASKING HIM ON YOUR DIRECT.  SO GO AHEAD.

13             THE WITNESS:  I'M SORRY.  CAN YOU REPEAT

14   THE QUESTION.

15   BY MR. LEE:

16   Q    YES.  YOU SEE THAT ON THE VERY FIRST PAGE OF

17   EXHIBIT 40, IT'S FROM BONG-HEE KIM TO OTHERS.

18             DO YOU SEE THAT?

19   A    I DO.

20   Q    TURN, IF YOU WOULD, TO THE PAGE WHICH HAS THE

21   BATES STAMP NUMBER 377.

22             MR. QUINN:  YOUR HONOR, THERE'S BEEN NO

23   FOUNDATION.  I OBJECT TO READING ANY OF THE

24   CONTENTS OF THE DOCUMENT.

25             THE COURT:  OVERRULED.  YOU'VE OPENED THE

```
 1    DOOR.

 2    BY MR. LEE:

 3    Q    DO YOU HAVE IT BEFORE YOU?

 4    A    I DO.

 5    Q    AND YOU SEE THE PHRASE, "IT IS A CRISIS OF

 6    DESIGN."  THAT'S THE VERY PHRASE MR. QUINN ASKED

 7    YOU ABOUT; CORRECT?

 8    A    I DO.

 9    Q    ALL RIGHT.  AND AT THE BOTTOM IT SAYS, "THE

10    IPHONE'S EMERGENCE MEANS THE TIME WE HAVE TO CHANGE

11    OUR METHODS HAS ARRIVED."

12            CORRECT?

13    A    I SEE THAT, YES.

14            MR. LEE:  YOUR HONOR, WE OFFER

15    PLAINTIFF'S EXHIBIT 40.

16            MR. QUINN:  LACKS FOUNDATION, YOUR HONOR.

17    ALL HE'S DONE IS POINT OUT SOME PHRASES.  HE HASN'T

18    EVEN TRIED TO LAY A FOUNDATION.

19            MR. LEE:  YOUR HONOR --

20            MR. QUINN:  AND THIS IS A SCREEN LANGUAGE

21    TRANSLATION OF A DOCUMENT THAT HIS NAME DIDN'T

22    APPEAR ON.

23            MR. LEE:  YOUR HONOR, THREE THINGS.

24    WE'VE AGREED THAT IT'S AUTHENTIC; WE'VE AGREED TO

25    THE TRANSLATION; AND IT'S THE VERY PHRASE THAT
```

```
 1    MR. QUINN USED, AND I'M PUTTING BEFORE THE JURY THE

 2    DOCUMENT FROM WHICH THE PHRASE APPEARS AND WHICH HE

 3    THEN PURPORTED TO EXPLAIN.

 4              MR. QUINN:  YOUR HONOR, IT'S A PHRASE

 5    THEY USED IN OPENING STATEMENT.  I ASKED HIM ABOUT

 6    THE PHRASE THEY INTRODUCED IN OPENING STATEMENT.

 7              THE COURT:  IT'S ADMITTED.

 8              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

 9              40, HAVING BEEN PREVIOUSLY MARKED FOR

10              IDENTIFICATION, WAS ADMITTED INTO

11              EVIDENCE.)

12    BY MR. LEE:

13    Q    NOW, YOU WERE ALSO ASKED ABOUT A DIFFERENCE

14    BETWEEN HEAVEN AND EARTH.

15              DO YOU REMEMBER THAT?

16    A    YES, I DO.

17    Q    AND YOU'VE SEEN THAT PHRASE IN THE SAMSUNG

18    DOCUMENTS AS WELL IN PREPARING FOR YOUR TESTIMONY,

19    HAVEN'T YOU, SIR?

20    A    ACTUALLY, I DON'T RECALL SEEING THIS DOCUMENT

21    BEFORE TODAY.

22    Q    WELL, LET'S SEE WHAT SAMSUNG SAYS.

23              "ALL THIS TIME, WE'VE BEEN PAYING ALL OUR

24    ATTENTION TO NOKIA."

25              HAVE I READ THAT CORRECTLY?
```

1    A    IT LOOKS LIKE IT, YES.

2    Q    OKAY.  THAT'S YOUR FORMER EMPLOYER, CORRECT?

3    A    YES, ONE OF THEM.

4    Q    "AND CONCENTRATED OUR EFFORTS ON THINGS LIKE

5    FOLDER, BAR, SLIDE, YET WHEN OUR UX IS COMPARED TO

6    THE UNEXPECTED COMPETITOR APPLE'S IPHONE, THE

7    DIFFERENCE IS TRULY THAT OF HEAVEN AND EARTH.

8              "IT IS A CRISIS IN DESIGN."

9              CORRECT?

10   A    I SEE THAT.

11   Q    THOSE ARE THE PHRASES MR. QUINN USED IN ASKING

12   YOU THE QUESTIONS THIS MORNING; CORRECT?

13   A    RIGHT, AND I CONFIRMED THAT THIS WAS PRETTY

14   TYPICAL HYPERBOLE USED AT SAMSUNG.

15   Q    ALL RIGHT.  SO CAN YOU SHOW ME THE DOCUMENT

16   THAT SAYS THERE'S A CRISIS IN DESIGN WHEN COMPARED

17   TO NOKIA?

18   A    WELL, I DON'T KNOW HOW I WOULD DO THAT.

19   Q    THE ANSWER IS YOU CAN'T, CAN YOU, SIR?

20   A    I DON'T THINK IT'S PART OF THIS CASE.

21   Q    THE ONLY CRISIS IN DESIGN THAT YOU'VE SEEN

22   ANYWHERE IN SAMSUNG'S DOCUMENTS REFERS TO THE

23   IPHONE AFTER IT WAS INTRODUCED IN 2007; ISN'T THAT

24   CORRECT?

25   A    I'M SORRY .  CAN YOU REPEAT THE QUESTION?

1    Q    THE ONLY DOCUMENTS THAT YOU CAN IDENTIFY FROM

2    SAMSUNG THAT REFER TO A CRISIS IN DESIGN AFTER THE

3    IPHONE WAS INTRODUCED IN 2000 SEARCH REFER TO THE

4    IPHONE; CORRECT?

5    A    I CAN'T EVEN IDENTIFY THIS DOCUMENT, SIR.  I'M

6    SORRY.

7    Q    ALL RIGHT.  AND YOU KNOW WHAT THE DIFFERENCE

8    BETWEEN HEAVEN AND EARTH IS?  IT'S A BIG

9    DIFFERENCE; CORRECT?

10   A    YES, IT'S HYPERBOLE, EXAGGERATION.

11   Q    LET ME TAKE YOU TO PAGE 7374 OF THIS EXHIBIT.

12   AND LET'S SEE WHAT ELSE SAMSUNG SAID.

13         CAN I HAVE THE PORTION THAT BEGINS "I

14   HEAR THINGS."  A LITTLE FURTHER DOWN.

15         "I HEAR THINGS LIKE THIS:  LET'S MAKE

16   SOMETHING LIKE THE IPHONE.

17         "WHEN EVERYBODY, BOTH CONSUMERS AND

18   INDUSTRIES TALK ABOUT UX, THEY WEIGH IT AGAINST THE

19   IPHONE.  THE IPHONE HAS BECOME THE STANDARD.

20   THAT'S HOW THINGS ARE ALREADY.

21         "DO YOU KNOW HOW DIFFICULT THE OMNIA IS

22   TO USE?  WHEN YOU COMPARE THE 2000 SEARCH VERSION

23   OF THE IPHONE WITH OUR CURRENT OMNIA, YOU CAN

24   HONESTLY SAY THE OMNIA IS BETTER?  IF YOU COMPARE

25   THE UX WITH THE IPHONE, IT'S A DIFFERENCE BETWEEN

1    HEAVEN AND EARTH."

2              HAVE I READ THAT CORRECTLY?

3    A    IT LOOKS LIKE IT, YES.

4    Q    UX IS USER EXPERIENCE; CORRECT?

5    A    THAT WOULD BE MY GUESS.

6    Q    THE OMNIA IS SAMSUNG'S PRODUCT; CORRECT?

7    A    YES, IT IS.

8    Q    AND YOUR TESTIMONY IS THIS IS HYPERBOLE?

9    A    WELL, AGAIN, I'M ASKED TO INTERPRET IT.  I'VE

10   NEVER SEEN IT BEFORE, SO THAT'S MY INTERPRETATION.

11   Q    IT'S HYPERBOLE?

12   A    YES.

13             MR. LEE:  NOTHING FURTHER, YOUR HONOR.

14             THE COURT:  ALL RIGHT.  TIME IS 9:53.

15             GO AHEAD, PLEASE.

16             **AS-ON REDIRECT EXAMINATION**

17   BY MR. QUINN:

18   Q    THE OMNIA, WHAT WAS THE OPERATING SYSTEM ON

19   THE OMNIA?

20   A    THAT WAS WINDOWS MOBILE SEPARATING SYSTEM.

21   Q    SO THAT WASN'T AN ANDROID OPERATING SYSTEM?

22   A    IT WAS NOT.

23   Q    AND AFTER THAT, DID SAMSUNG COME UP WITH

24   SMARTPHONES THAT WERE POWERED BY ANDROID OPERATING

25   SYSTEMS?

1    A    YES.

2    Q    AND DID, IN FACT, SAMSUNG NOTICE THE IPHONE

3    FROM YOUR PERSPECTIVE AT LEAST, SAMSUNG AMERICA,

4    DID PEOPLE NOTICE THE IPHONE?

5    A    SURE.

6    Q    AND DID THEY NOTICE IT WAS SUCCESSFUL?

7    A    SURE.

8    Q    CAN YOU TELL US WHETHER OR NOT PEOPLE AT

9    SAMSUNG FELT CHALLENGED BY THE SUCCESS OF THE

10   IPHONE?

11   A    YES, ABSOLUTELY.

12   Q    IF WE COULD LOOK AT THAT LAST EXHIBIT THAT

13   COUNSEL WAS SHOWING YOU, IF WE COULD LOOK AT THE

14   PAGES ENDING IN 7377, THAT SAME E-MAIL.  AND UP AT

15   THE TOP, IF WE COULD ENLARGE THOSE FIRST COUPLE OF

16   LINES THERE, THE AUTHOR SAYS, "I HAVE CONFIDENCE IN

17   OUR PRODUCTS' H/W."

18          WHAT DOES H/W MEAN TO YOU?

19   A    HARDWARE, AND MORE SPECIFICALLY IN THIS

20   CONTEXT, IT SAYS EXTERIOR DESIGN AFTERWARDS.

21   Q    "IN THEIR EXTERIOR DESIGN," RIGHT?

22   A    YES.

23   Q    THIS IS THE SAME PERSON THAT MR. LEE IS

24   QUOTING?

25   A    YES, I BELIEVE SO.

1    Q    "AND IN THEIR QUALITY.  BUT WHEN IT COMES TO

2    THE EASE OF USE OF OUR UX, I LACK SUCH CONFIDENCE."

3             NOW, WHAT IS THE UX?

4    A    I BELIEVE THAT'S THE USER EXPERIENCE.

5    Q    AND THEN IF WE GO DOWN BLOW ABOUT TWO-THIRDS

6    OF THE WAY DOWN, THERE'S A SENTENCE THAT BEGINS,

7    "OUR MOST IMPORTANT ASSET IS OUR SCREEN," AND IT

8    GOES ON TO SAY, "IT'S VERY IMPORTANT THAT WE MAKE

9    SCREEN SIZE BIGGER AND IN THE FUTURE MOBILE PHONES

10   WILL ABSORB EVEN THE FUNCTION OF E-BOOKS."

11             DID, IN FACT, SAMSUNG GO AHEAD AND BRING

12   TO MARKET SMARTPHONES WHERE THE SCREENS WERE

13   BIGGER?

14   A    YES.

15   Q    BIGGER THAN THE IPHONE SCREENS?

16   A    YES.

17   Q    AND THE LAST SENTENCE, IT SAYS, "A JUDGE

18   SPEAKS THROUGH JUDGMENTS, AN ENGINEER SPEAKS

19   THROUGH PRODUCTS, AND A DESIGNER SHOULD NOT NEED TO

20   SPEAK."

21             DO YOU HAVE ANY UNDERSTANDING OF WHAT

22   THAT MEANS?

23   A    I THINK THAT'S JUST A LITTLE BIT OF POETRY AT

24   THE END.  I'M NOT SURE WHAT THAT MEANS.

25   Q    MAYBE A DESIGNER SPEAKS THROUGH HIS DESIGNS?

1    A    I ASSUME THEY MEAN -- AGAIN, IT'S JUST MY

2    INTERPRETATION -- THE DESIGNER SHOULD JUST LET THE

3    PRODUCT STAND FOR ITSELF.

4    Q    AND THAT'S A SAMSUNG PERSON, APPARENTLY,

5    SPEAKING?

6    A    YES.

7    Q    AND YOU WERE ASKED SOME QUESTIONS ABOUT

8    WHETHER YOU YOURSELF WERE A DESIGNER.  IN YOUR JOB

9    AS A PERSON WHO DEALS WITH PRODUCTS AND STRATEGY,

10   IS IT IMPORTANT TO YOU THAT YOU KNOW ABOUT THE

11   CONFIGURATION AND DESIGNS OF THE VARIOUS KINDS OF

12   SMARTPHONES THAT ARE ON THE MARKET?

13   A    YES.  BEING IN THE INDUSTRY AND PARTICIPATING

14   IN SELLING THE DEVICES IN THE U.S., WE'RE ALWAYS

15   EXCITED TO SEE THE NEW DESIGNS.  WE ALWAYS WANT TO

16   SEE THEM, TOUCH THEM, HOLD THEM.  IT HELPS GIVE US

17   CONFIDENCE AS TO HOW WELL THAT DEVICE WILL DO IN

18   THE MARKET.

19   Q    AND THEN FINALLY ABOUT THIS, THE INVESTIGATION

20   THAT YOU, YOU WERE ASKED SOME QUESTIONS ABOUT CAD

21   FILES.

22        WHAT ARE CAD FILES?

23   A    CAD FILES ARE THE, YOU KNOW, ELECTRONIC FILES

24   THAT CONTAIN THE DESIGN DRAWINGS, INFORMATION IS

25   THE BEST OF MY UNDERSTANDING.  SO I THINK IT STANDS

1    FOR COMPUTER-AIDED DESIGN.

2    Q    AND IN DOING YOUR INVESTIGATION, DID YOU

3    ACTUALLY SEE SOME DOCUMENTS, INCLUDING CAD FILES,

4    ABOUT MOBILE PRODUCT DESIGNS?

5    A    I REMEMBER SEEING SOME DOCUMENTS THAT INCLUDED

6    CAD SKETCHES AND THINGS LIKE THAT.

7              MR. QUINN:  THANK YOU.

8              THE COURT:  ALL RIGHT.  TIME IS NOW 9:57.

9              MAY THIS WITNESS BE EXCUSED?

10             MR. LEE:  IF HE COULD STEP DOWN.  HE'S

11   SUBJECT TO RECALL, YOUR HONOR.

12             THE COURT:  ALL RIGHT.  YOU'RE EXCUSED

13   SUBJECT TO RECALL.

14             GO TO YOUR NEXT WITNESS, PLEASE.

15             MR. MCELHINNY:  YOUR HONOR, WE CALL PETER

16   BRESSLER, AND AT THIS POINT, I WOULD LIKE TO

17   REINTRODUCE TO THE COURT MY PARTNER, RACHEL

18   KREVANS.

19             THE COURT:  OKAY.

20             (PAUSE IN PROCEEDINGS.)

21             THE CLERK:  WOULD YOU RAISE YOUR RIGHT

22   HAND, PLEASE.

23                   **PETER BRESSLER,**

24   BEING CALLED AS A WITNESS ON BEHALF OF THE

25   PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS

1002

1    EXAMINED AND TESTIFIED AS FOLLOWS:

2              THE WITNESS:  I DO.

3              THE CLERK:  WOULD YOU HAVE A SEAT,

4    PLEASE.

5              THE COURT:  OKAY.  IT'S 9:58.  GO AHEAD,

6    PLEASE.

7              THE CLERK:  WOULD YOU STATE YOUR NAME

8    PLEASE AND SPELL IT.

9              THE WITNESS:  PETER BRESSLER,

10   B-R-E-S-S-L-E-R.

11             THE COURT:  DO YOU HAVE THE CROSS

12   EXHIBITS?

13             OKAY.  GO AHEAD, PLEASE.

14                   **DIRECT EXAMINATION**

15   BY MS. KREVANS:

16   Q    GOOD MORNING, MR. BRESSLER.

17   A    GOOD MORNING.

18   Q    ARE YOU SITUATED OKAY UP THERE?

19   A    I THINK SO, YES.

20   Q    OKAY.  COULD YOU PLEASE STATE YOUR FULL NAME?

21   A    PETER W. BRESSLER.

22   Q    AND WHAT DO YOU DO PROFESSIONALLY,

23   MR. BRESSLER?

24   A    I'M IN INDUSTRIAL DESIGNER.

25   Q    AND WOULD YOU JUST REMIND THE JURY WHAT YOU

1    MEAN WHEN YOU SAY "INDUSTRIAL DESIGNER"?

2    A    INDUSTRIAL DESIGN IS THE PROFESSION THAT GIVES

3    THE SHAPE AND FORM AND TEXTURE AND THE COLOR AND

4    BASICALLY THE OVERALL APPEARANCE TO THE PRODUCTS

5    THAT OUR CLIENTS MANUFACTURE AND PEOPLE BUY.

6    Q    OKAY.  COULD WE LOOK AT YOUR SLIDE PDX 26,

7    SLIDE 1.

8              COULD YOU JUST WALK THE JURY

9    CHRONOLOGICALLY THROUGH FIRST YOUR EDUCATION AND

10   THEN YOUR PROFESSIONAL BACKGROUND, MR. BRESSLER?

11   A    SURE.  I GRADUATED IN 1968 FROM RHODE ISLAND

12   SCHOOL OF DESIGN WITH A BACHELOR'S OF FINE ART IN

13   INDUSTRIAL DESIGN.

14             THEN WORKED AT THE SCHOOL FOR ABOUT SIX

15   MONTHS WORKING ON A THESIS PROJECT AND MASTER'S

16   LEVEL WORK.

17             AND THEN WORKED AT PHILADELPHIA COLLEGE

18   OF ART AS A SHOP INSTRUCTOR UNTIL I BEGAN TO -- I

19   BEGAN MY DESIGN FIRM, WHICH EVENTUALLY BECAME KNOWN

20   AS BRESSLER GROUP IN 1970.

21             BRESSLER GROUP HAS BECOME A 25-PERSON

22   PRODUCT DESIGN DEVELOPMENT FIRM THAT HAS WORKED FOR

23   OVER 600 CLIENTS ON OVER PROBABLY A COUPLE THOUSAND

24   PROJECTS AT THIS POINT WORKING FOR BOTH NATIONAL

25   AND INTERNATIONAL CLIENTS.

1004

```
1   Q    AND HOW DID YOU GO ABOUT STARTING BRESSLER
2   GROUP?  WHO DID THAT WITH YOU?
3   A    UNFORTUNATELY I DID THAT FROM SCRATCH.
4   Q    JUST YOU?
5   A    TELEPHONE BOOK AND A CHAMBER OF COMMERCE
6   DIRECTORY.
7   Q    CAN YOU TELL US WHAT KINDS OF PROJECTS, JUST
8   GENERALLY, BRESSLER GROUP HAS DONE OVER THE PERIOD
9   FROM 1970 WHEN YOU STARTED IT THROUGH THIS YEAR.
10  A    BRESSLER GROUP'S WORK IS PRETTY WELL DIVIDED
11  EVENLY BETWEEN INDUSTRIAL PRODUCTS, COMMERCIAL
12  PRODUCTS, MEDICAL PRODUCTS, AND CONSUMER PRODUCTS.
13       PROBABLY 50 PERCENT ARE ELECTRONICS OF
14  SOME KIND.
15  Q    AND ARE YOU STILL WITH BRESSLER GROUP?
16  A    ACTUALLY, I GAVE UP MY OWNERSHIP IN THE FIRM
17  IN FEBRUARY, AND I'M NOW WORKING FOR THEM PART-TIME
18  UNDER CONTRACT DOING PR AND BUSINESS DEVELOPMENT.
19  Q    OKAY.  ARE YOU DOING ANY OTHER ACTIVITIES
20  CURRENTLY OUTSIDE OF BRESSLER GROUP?
21  A    YES.  I'M ALSO TEACHING AS AN ADJUNCT
22  ASSOCIATE PROFESSOR AT THE UNIVERSITY OF
23  PENNSYLVANIA IN THE INTEGRATED PRODUCT DESIGN
24  PROGRAM, AND I DO SOME INDEPENDENT CONSULTING FOR A
25  COUPLE OF SMALL START-UPS.
```

```
1    Q    WHAT IS THIS INTEGRATED PRODUCT DESIGN COURSE

2    THAT YOU'RE TEACHING AT THE UNIVERSITY OF

3    PENNSYLVANIA?  WHAT'S INTEGRATED PRODUCT DESIGN?

4    A    WHAT WE CALL IPD IS A PROGRAM ACTUALLY WITHIN

5    THE ENGINEERING DEPARTMENT, BUT IT IS A PROGRAM

6    THAT IS INTEGRATING THE DESIGN SCHOOL AND THE

7    BUSINESS SCHOOL AND THE ENGINEERING SCHOOL SO THAT

8    IT CAN TEACH A TEAM PROCESS OF PRODUCT DESIGN.

9    Q    ARE YOU AN INVENTOR ON ANY PATENTS?

10   A    I AM.  I'M AN INVENTOR ON APPROXIMATELY 70

11   PATENTS, ABOUT HALF OF WHICH ARE DESIGN PATENTS.

12   Q    AND DO YOU HAVE ANY EXPERIENCE PERSONALLY IN

13   DESIGNING ELECTRONIC DEVICES?

14   A    YES, SUBSTANTIAL EXPERIENCE, INCLUDING CELL

15   PHONE CONCEPTS FOR MOTOROLA; A NUMBER OF STEREO

16   COMPONENTS AND SPEAKERS FOR POLK AUDIO.

17            I'VE DONE A TABLET COMPUTER FOR A COMPANY

18   CALLED TELEPAD.

19            I'VE DONE TOUCHSCREEN GAMING DEVICES THAT

20   ARE USED IN BARS FOR A COMPANY NAMED MERIT

21   INDUSTRIES, M-E-R-I-T, AND MISCELLANEOUS LITTLE

22   THINGS LIKE DIGITAL TIRE GAUGES.

23   Q    DO YOU HAVE ANY EXPERIENCE AND/OR TRAINING IN

24   HOW ORDINARY CONSUMERS, PEOPLE WHO ARE NOT

25   DESIGNERS LIKE YOU, PERCEIVE INDUSTRIAL DESIGNS?
```

1006

1    A    YES.  THROUGHOUT THE MAJORITY OF MY CAREER,

2    I'VE WORKED WITH MY CLIENTS TO WORK WITH THEIR

3    CUSTOMERS TO UNDERSTAND WHAT THEIR CONSUMERS OR

4    THEIR CUSTOMERS WANT AND WHAT THEIR CLIENT'S NEEDS

5    ARE, WHAT THE CONSUMERS' NEEDS ARE.

6            AND WE DO A GREAT DEAL OF RESEARCH WITH

7    THOSE CONSUMERS TO UNDERSTAND HOW THEY SEE THE

8    DESIGNS WE DO SO THAT WE CAN IMPROVE THOSE DESIGNS

9    TO GET THEM TO FIND THEM MORE ATTRACTIVE.

10   Q    IN YOUR EXPERIENCE, IN YOUR 40-YEAR CAREER,

11   WHAT'S THE MAIN DIFFERENCE BETWEEN THE WAY AN

12   ORDINARY CONSUMER WOULD SEE A DESIGN OF A PRODUCT

13   AND THE WAY THAT AN INDUSTRIAL DESIGNER LIKE

14   YOURSELF WOULD SEE THAT DESIGN?

15   A    SURE.  BASICALLY A TRAINED INDUSTRIAL DESIGNER

16   IS TRAINED TO PAY ATTENTION TO A LOT OF THE LITTLE

17   DETAILS THAT WORK TOGETHER TO FORM THE OVERALL

18   IMPRESSION THAT THE USUAL CONSUMER OR THE ORDINARY

19   CONSUMER WOULD VIEW.

20           SO THEY MAY SEE THOSE DETAILS, BUT THEY

21   TEND TO BE SOMEWHAT SUBCONSCIOUS AND THEY FORM AN

22   OVERALL VIEW OF WHAT THEIR IMPRESSION OF THE DEVICE

23   IS.

24   Q    NOW, ARE YOU A MEMBER OF ANY PROFESSIONAL

25   ASSOCIATIONS RELATED TO INDUSTRIAL DESIGN?

1007

```
 1    A    YES.  SINCE 1973 I HAVE BEEN ASSOCIATED WITH

 2    THE INDUSTRIAL DESIGNER'S SOCIETY OF AMERICA AND

 3    HAVE BEEN ACTIVE IN THAT ORGANIZATION.  I WAS

 4    PRIVILEGED TO BE ITS PRESIDENT FROM 1989 THROUGH

 5    1990.

 6    Q    AND COULD YOU TELL US WHAT THE INDUSTRIAL

 7    DESIGNER'S SOCIETY OF AMERICA IS?

 8    A    SURE.  THE -- WE CALL IT THE IDSA IS THE

 9    EQUIVALENT OF THE ARCHITECTS, AIA, OR THE AMERICAN

10    MEDICAL ASSOCIATIONS, AMA.  IT'S A PROFESSIONAL

11    ORGANIZATION.

12    Q    I SEE ON YOUR SLIDE SUMMARIZING YOUR

13    EXPERIENCE, AFTER YOUR NAME IT SAYS FIDSA.  WHAT

14    DOES FIDSA STAND FOR, MR. BRESSLER?

15    A    THEY HAVE A GROUP IN THE SOCIETY CALLED THE

16    ACADEMY OF FELLOWS.  IT'S KIND OF A PRIVILEGE YOU

17    GET TO AFTER YOU'VE PUT A LOT OF WORK IN AND YOU

18    GET OLD ENOUGH, AND TEN YEARS AGO, I WAS ELECTED TO

19    THE ACADEMY OF FELLOWS.

20    Q    IS IT AN HONOR TO BE ELECTED TO BE A FELLOW OF

21    THAT ACADEMY?

22    A    VERY MUCH SO.  I THINK OF THE TOTAL MEMBERSHIP

23    OF 3,000, THERE MAY BE A TOTAL OF 50 FELLOWS.

24    Q    HAVE YOU RECEIVED ANY OTHER RECOGNITION FOR

25    YOUR WORK IN THE INDUSTRIAL DESIGN FIELD?
```

```
 1     A    YES.  THAT SAME ORGANIZATION TWO OR THREE

 2     YEARS AGO, I BELIEVE IT WAS, GAVE ME WHAT'S CALLED

 3     A PERSON OF RECOGNITION AWARD, WHICH IS KIND OF A

 4     LIFETIME ACHIEVEMENT THING, AGAIN, SOMETHING YOU

 5     HAVE TO BE OLD TO GET.

 6              MS. KREVANS:  YOUR HONOR, WE WOULD TENDER

 7     MR. BRESSLER AS AN EXPERT IN THE FIELD OF

 8     INDUSTRIAL DESIGN.

 9              THE COURT:  ANY OBJECTION?

10              MR. VERHOEVEN:  NO OBJECTION.

11              MS. KREVANS:  ALL RIGHT.

12     Q    LET'S TURN TO THE WORK YOU DID IN THIS CASE,

13     MR. BRESSLER.

14              DID YOU CONDUCT ANALYSIS FOR THIS CASE TO

15     DETERMINE WHETHER OR NOT CERTAIN SAMSUNG PRODUCTS

16     INFRINGED ONE OF THE APPLE DESIGN PATENTS IN THE

17     CASE, THE D'677, THE D'087 OR THE D'889?

18     A    I DID.

19     Q    AND HAVE YOU FORMED ANY OPINIONS ABOUT THAT

20     TOPIC?

21     A    YES.  IT IS MY OPINION THAT THERE ARE A NUMBER

22     OF SAMSUNG PHONES AND TWO SAMSUNG TABLETS THAT ARE

23     SUBSTANTIALLY THE SAME AS THE DESIGNS IN THOSE

24     PATENTS.

25     Q    CAN YOU JUST DESCRIBE FOR THE JURY, IN A
```

1009

1    GENERAL WAY, THE PROCESS YOU USED IN COMING TO YOUR

2    CONCLUSIONS ABOUT INFRINGEMENT OF THE APPLE DESIGN

3    PATENTS?

4    A    YES.  THE PROCESS FOR DOING THIS ANALYSIS IS

5    TO REVIEW ALL OF THE DRAWINGS THAT ARE IN THE

6    PATENT AND THE DESIGN THAT'S INHERENT IN THE PATENT

7    IS THOSE SPECIFIC DRAWINGS AND DONE A CERTAIN WAY.

8         YOU FIRST FORMULATE AN UNDERSTANDING OF

9    THE DESIGN THAT'S BEING CLAIMED IN THE PATENT, AND

10   THEN YOU DO AN INVESTIGATION OF WHAT'S CALLED THE

11   PRIOR ART, WHICH IS ALL OF THE DESIGNS THAT HAVE

12   BEEN IDENTIFIED THAT ARE CLEARLY DONE BEFORE THE

13   PATENT.

14        THAT GIVES YOU AN IDEA OF WHAT THE FIELD

15   OF DESIGN IS LIKE AT THE TIME THAT PATENT WAS DONE.

16        YOU THEN COMPARE THE PRODUCTS THAT YOU'RE

17   SEEING IF THEY INFRINGE, OR THAT YOU MAY BE

18   ACCUSING, YOU COMPARE THOSE TO THE DRAWINGS IN THE

19   PATENT AND IF THEY ARE, IN MY MIND, SUBSTANTIALLY

20   THE SAME TO THE EYES OF WHAT I UNDERSTAND AN

21   ORDINARY CONSUMER WOULD SEE, TO THE POINT WHERE

22   THEY MIGHT ACTUALLY MISTAKE THE PRODUCT FOR THE

23   DESIGN IN THE PATENT, THEN YOU CONSIDER THEY

24   INFRINGE.

25   Q    AND IS THE TEST YOU JUST DESCRIBED THE TEST

1    YOU USED IN EACH OF YOUR ANALYSES ABOUT WHETHER ANY

2    PARTICULAR SAMSUNG PRODUCT INFRINGED ONE OF THE

3    APPLE DESIGN PATENTS?

4    A    YES.

5    Q    OKAY.  COULD YOU LOOK AT THE BINDER -- I HOPE

6    YOU HAVE A BINDER IN FRONT OF YOU.

7    A    I DO.

8    Q    OKAY.  COULD YOU LOOK IN THAT BINDER AT THE

9    EXHIBIT LIST THE TAB LABELED JX 1043, AND THIS IS

10   THE '677 PATENT ALREADY ADMITTED, I BELIEVE.

11            LET ME KNOW WHEN YOU'RE THERE,

12   MR. BRESSLER.

13   A    I'M THERE.

14   Q    OKAY.  COULD YOU LOOK AT WHAT IS BEING SHOWN

15   ON THE SCREEN, IT'S THE SECOND PAGE OF THE DOCUMENT

16   IN THE BINDER, THE COVER PAGE OF THE PRINTED

17   PORTION OF THE PATENT.

18            WHAT IS SHOWN HERE WITH RESPECT TO THE

19   '677 PATENT?

20   A    GENERALLY THE, THE ELEMENTS THAT ARE SHOWN ON

21   THE FRONT PAGE, WHICH IS ACTUALLY KIND OF AN

22   ABSTRACT OF THE WHOLE THING, WHICH SHOWS THE

23   THREE-QUARTER FRONT VIEW USUALLY OF THE DESIGN

24   BEING CLAIMED.

25            IT HAS THE PATENT NUMBER UP AT THE UPPER

1    RIGHT-HAND CORNER.  DIRECTLY BELOW THAT IS THE DATE

2    THAT THE PATENT WAS ISSUED.  AND IF YOU FOLLOW DOWN

3    ON THE LEFT-HAND SIDE, YOU WILL SEE THE DATE THAT

4    IT WAS FILED.  AND IF YOU READ CAREFULLY FURTHER,

5    YOU'LL SEE THAT IT MAY OR MAY NOT BE PART OF

6    SOMETHING THAT WAS FILED EARLIER.

7             AND THEN IN THE SECOND COLUMN, THERE'S

8    OTHER INFORMATION ON THERE, BUT THE SECOND COLUMN

9    CONTAINS, TO ME, THE REALLY IMPORTANT STUFF, WHICH

10   IS WHAT THE CLAIM IS AND THE DESCRIPTION OF THE

11   DRAWINGS IN THE PATENT.

12   Q    BEFORE WE GET TO THE CLAIM, OVER ON THE

13   LEFT-HAND COLUMN, CAN YOU POINT OUT TO THE JURY

14   WHAT WAS THE DATE OF THE FIRST APPLICATION THAT WAS

15   FILED ON WHICH THIS PATENT ENDED UP BEING ISSUED,

16   THE EARLIEST DATE OF THE EARLIEST APPLICATION?

17   A    IF YOU READ AT THE BOTTOM OF, I THINK, THE

18   NUMBER IS 60 WITH THE LITTLE PARENS ON THE LEFT, IF

19   YOU READ AT THE BOTTOM OF THAT, YOU'LL SEE THAT

20   THIS IS A DIVISION OF AN APPLICATION WHICH IS A

21   CONTINUATION, WHICH MEANS THAT THERE'S BEEN A LOT

22   OF THEM IN A ROW, WHICH WERE ORIGINALLY FILED ON

23   JANUARY 5TH OF 2007.

24   Q    OKAY.  LOOKING OVER ON THE RIGHT-HAND SIDE

25   THEN WHERE YOU SAID WE STARTED GETTING TO THE

1012

1    IMPORTANT STUFF, DO YOU SEE THE PARAGRAPH -- THE

2    SENTENCE UNDER THE PARAGRAPH THAT'S HEADED CLAIM?

3    A    YES.

4    Q    WHAT DOES THE '677 PATENT SAY THAT IT CLAIMS?

5    A    IT CLAIMS "THE ORNAMENTAL DESIGN OF AN

6    ELECTRONIC DEVICE, AS SHOWN AND DESCRIBED."

7    Q    AND WHAT DO THE WORDS "AS SHOWN AND DESCRIBED"

8    REFER TO?

9    A    THEY REFER TO A LIST OF THE DRAWINGS THAT COME

10   UNDER THE HEADING DESCRIPTION RIGHT BELOW, AND IN

11   THIS CASE AND IN MOST CASES, THERE ARE EIGHT

12   DRAWINGS OR FIGURES IS WHAT THEY CALL THEM, AND

13   THEN SOMETIMES THERE ARE ADDITIONAL SPECIFICATIONS

14   THAT ARE IN A PARAGRAPH BELOW THOSE 8.  BUT IN THIS

15   CASE -- YEAH.

16   Q    OKAY.  SO LET'S KEEP THAT BLOWN UP FOR A

17   MOMENT, MR. LEE.

18          SO WE HAVE THE LIST OF EIGHT DRAWINGS,

19   AND THEN COULD WE LOOK AT THE TEXT THAT'S RIGHT

20   UNDER THAT LIST?

21          WHAT DOES THE TEXT THAT'S PART OF THE

22   DESCRIPTION OF THE D'677 UNDER THE LIST OF FIGURES

23   TELL US, MR. BRESSLER?

24   A    IT TELLS US THAT THE "THE CLAIMED SURFACE OF

25   THE ELECTRONIC DEVICE IS ILLUSTRATED WITH A COLOR

1013

1    DESIGNATION FOR THE COLOR BLACK," WHICH I THINK YOU

2    CAN EVEN SEE IN THE THREE-QUARTER VIEW.

3    Q    OKAY.  AND THE NEXT SENTENCE SAYS "THE

4    ELECTRONIC DEVICE IS NOT LIMITED TO THE SCALE SHOWN

5    HERE IN."

6              WHAT DOES THAT MEAN?

7    A    AS A GENERAL RULE, RULE OF THUMB IN EXAMINING

8    DESIGN PATENTS, SIZE DOESN'T MATTER.  WHATEVER THE

9    DRAWING IS, IT COULD BE ANY SIZE AS LONG AS, IF

10   IT'S NOT SPECIFIED OTHERWISE.

11   Q    SO THE DRAWINGS DON'T PURPORT TO REPRESENT

12   WHAT THE ACTUAL SIZE OF THE DEVICE MIGHT BE?

13   A    CORRECT, UNLESS THERE IS SOME REFERENCE IN THE

14   PATENT THAT GIVES YOU AN UNDERSTANDING OF THAT

15   SIZE.

16   Q    OKAY.  CAN WE LOOK AT YOUR SLIDE PDX 26.4.

17              WHAT HAVE YOU SET OUT ON PDX 26.4,

18   MR. BRESSLER?

19   A    WHAT I'VE DONE HERE IS PUT TOGETHER A SLIDE

20   THAT SHOWS ALL OF THE VIEWS THAT YOU WOULD SEE ON

21   THE SEVERAL PAGES OF THE DESIGN PATENT INTO ONE

22   SHEET SO THAT THEY'RE EASIER TO SEE ALL AT ONE

23   TIME.

24   Q    OKAY.  SO THESE ARE THE EIGHT FIGURES THAT WE

25   JUST LOOKED AT IN THE LIST?

1    A    CORRECT.

2    Q    OKAY.  USING THESE EIGHT FIGURES OF THE '677

3    PATENT, CAN YOU WALK THE JURY THROUGH THE DESIGN

4    THAT IS CLAIMED BY THESE PICTURES?

5    A    YES.  PERHAPS SINCE IT WAS JUST DISCUSSED, YOU

6    CAN SEE FROM THE SHADING THAT WHAT'S BEING CLAIMED

7    IN THIS DESIGN IS THE FRONT FACE OF AN ELECTRONIC

8    DEVICE THAT IS BLACK IN COLOR.

9         IF YOU NOTICE THE DIAGONAL LINES, OR

10   DIAGONAL HATCHING THAT RUNS FROM ONE CORNER TO THE

11   OTHER, OR ALL THE WAY ACROSS THE FRONT FACE, THOSE

12   ARE A CONVENTION FOR INDICATING THAT IT'S

13   REFLECTIVE OR TRANSPARENT OR TRANSLUCENT.

14        AND IN THIS PARTICULAR CASE, I SEE THAT

15   IT'S TRANSPARENT BECAUSE YOU CAN SEE AT A

16   RECTANGULAR, OR WHAT WE'RE PRESUMING TO BE A

17   DISPLAY AREA THAT IS CENTERED IN THAT RECTANGULAR

18   FIELD THAT'S DEFINED THAT IT GOES END TO END ACROSS

19   THE FACE AS TRANSPARENT.

20   Q    AND WHAT FIGURE ARE WE LOOKING AT HERE,

21   MR. BRESSLER?

22   A    I'M SORRY.  WE ARE -- I TEND TO TALK OFF OF

23   FIGURE 1 BECAUSE TO ME, ALL OF THE ELEMENTS ARE

24   SEEN IN THERE.

25        BUT FOR REFERENCING THE THINGS I'M

1    SAYING, YOU COULD ALSO LOOK AT FIGURE 3 THAT SHOWS

2    IT ON A STRAIGHT ON VIEW.

3            BUT YOU SHOULDN'T NOT LOOK AT THE OTHER

4    VIEWS BECAUSE, FOR INSTANCE, FIGURE 5 AND 8 AND 7

5    AND 6 SHOW THE SIDE AND END VIEWS, AND BECAUSE

6    THERE IS A SINGLE, SOLID LINE THERE, THOSE ARE

7    INDICATING THAT ALL IT'S CLAIMING IS THAT FRONT

8    FACE.  OKAY.

9            AND THE OTHER CONVENTION IS THAT THE

10   BROKEN LINES, OR WHAT YOU MIGHT CALL DOTTED LINES,

11   THAT ARE SHOWING OTHER ILLUSTRATED PORTIONS ARE

12   ILLUSTRATING PORTIONS OF WHAT MIGHT BE A DESIGN BUT

13   ARE NOT BEING CLAIMED IN THIS PATENT.

14           SO THE ONLY THING BEING CLAIMED IS THE

15   AREA IN THE SOLID LINES.

16           A COUPLE OTHER DETAILS THAT I WANTED TO

17   POINT OUT, WHICH YOU CAN SEE BOTH IN FIGURE 3 AND

18   FIGURE 1.

19           AS I MENTIONED, THERE IS THIS

20   RECTANGULAR, I THINK I MENTIONED, THERE'S A

21   RECTANGULAR DISPLAY AREA CENTERED IN THE DEVICE

22   THAT HAS LATERAL BORDERS ON EITHER SIDE THAT ARE

23   THIN ON THE SIDE AND THEN THEY'RE WIDER ON THE TOP

24   AND BOTTOM, AND THERE IS A LOZENGE SHAPED EAR SLOT,

25   BASICALLY, OR RECEIVER SLOT IN THE UPPER BORDER

```
 1    AREA.

 2              AND THE DOTTED LINES ARE EVEN A LITTLE

 3    BIT ON THE FACE THERE WHERE THEY'RE DEFINING AN

 4    AREA THAT'S NOT BEING CLAIMED.

 5              SO WHEN YOU LOOK AT THIS FACE, IT DOESN'T

 6    MATTER TO YOU WHAT IS IN THAT SPACE BECAUSE NOTHING

 7    IS BEING CLAIMED THERE.

 8    Q    AND ARE YOU REFERRING THERE TO THE WHITE

 9    CIRCLE INSIDE THE DOTTED LINES?

10    A    YES.

11    Q    OKAY.  WHAT DO THESE FIGURES TELL YOU ABOUT

12    THE SHAPE OF THE FRONT FACE OF THE DEVICE THAT'S

13    CLAIMED?

14    A    IT'S INDICATING THAT THE SHAPE OF THE FRONT

15    FACE OF THIS DEVICE IS A VERY SPECIFIC RECTANGULAR

16    PROPORTION AS INDICATED ON THE DRAWINGS, AS YOU CAN

17    SEE PERHAPS IN FIGURE 3, THE LENGTH AND WIDTH

18    PROPORTION IN COMPARISON TO THE CURVES ON THE

19    CORNERS, THAT'S TO PROVIDE A VERY SPECIFIC

20    IMPRESSION OR DESIGN.

21    Q    NOW, I'D LIKE YOU TO TURN TO THE '087 PATENT,

22    THAT IS EXHIBIT JX 1041 IN YOUR BINDER.

23              AND FOR THE RECORD, I THINK THIS IS

24    ALREADY ADMITTED, YOUR HONOR.

25              COULD YOU LOOK AT THE '087 PATENT?  AND
```

```
 1    LOOKING SPECIFICALLY AT THE FIRST PRINTED PAGE,
 2    TELL THE JURY WHEN THIS PATENT WAS ISSUED AND WHEN
 3    IT WAS FIRST APPLIED FOR.
 4    A    THIS PATENT WAS ISSUED ON MAY 26TH, 2009.  AND
 5    IT WAS FIRST APPLIED FOR IN THE PARENS 63 ON
 6    JANUARY 5TH, 2007.
 7    Q    OKAY.  COULD YOU TURN TO THE NEXT PAGE AND TO
 8    THE SECTION HEADED CLAIM.  AND TELL THE JURY WHAT
 9    IS THE DESIGN THAT IS CLAIMED IN THE '087 PATENT?
10    A    AGAIN, THERE IS A SINGLE CLAIM IN THE PATENT,
11    WHICH IS "THE ORNAMENTAL DESIGN OF AN ELECTRONIC
12    DEVICE SUBSTANTIALLY AS SHOWN AND DESCRIBED," AND
13    THEN THERE'S THE LIST OF FIGURES OR DRAWINGS THAT
14    YOU'RE GOING TO SEE IN THE REST OF THE PATENT.
15    Q    NOW, IN THIS PATENT, THERE'S A MUCH LONGER
16    LIST OF DRAWINGS, RIGHT.
17    A    YES.
18    Q    THERE'S NOT -- INSTEAD OF EIGHT, THERE ARE 48?
19    A    CORRECT.
20    Q    CAN YOU EXPLAIN TO US WHY THERE ARE 48
21    DRAWINGS RATHER THAN 8 DRAWINGS IN THIS PATENT?
22    A    THIS PATENT COVERS SEVEN DIFFERENT VERSIONS,
23    OR COMBINATIONS OF ELEMENTS, OF DIFFERENT DESIGNS
24    WHICH ARE CALLED EMBODIMENTS, AND ALL OF THOSE
25    EMBODIMENTS ARE COVERED BY THE PATENT, BUT THEY'RE
```

1018

```
 1    COVERED SEPARATELY.

 2    Q    AND EACH OF THEM HAS EIGHT DRAWINGS?

 3    A    I'M SORRY.  EACH OF THEM HAS EIGHT DRAWINGS,

 4    FIGURES 1 THROUGH 8, THEN FIGURES 9 THROUGH 16, ET

 5    CETERA, FOR SIX DIFFERENT VERSIONS.

 6    Q    SO 6 TIMES 8 IS 48?

 7    A    YES.

 8    Q    SO 48 FIGURES IS 6 EMBODIMENTS?

 9    A    CORRECT.

10    Q    OKAY.  COULD WE LOOK AT THE SECOND EMBODIMENT?

11          AND, THOMAS, IF YOU COULD PUT UP ON THE

12    SCREEN SIDE BY SIDE THE PAGES THAT SHOW THE EIGHT

13    FIGURES FOR THE SECOND EMBODIMENT, WHICH IS FIGURES

14    9 THROUGH 16.

15          AND YOU'LL FIND THOSE IN YOUR BINDER AS

16    WELL, MR. BRESSLER?

17    A    YES, I HAVE THEM.

18    Q    SO COULD WE SEE THE ACTUAL FIGURES.

19          GREAT.

20          USING THE DRAWINGS THAT ARE INCORPORATED

21    INTO THE CLAIMS OF THE '087 PATENT, COULD YOU WALK

22    THE JURY THROUGH THE DESIGN THAT IS CLAIMED BY

23    THESE FIGURES?

24    A    YES.

25          THIS DESIGN IS CLAIMING THE FRONT FACE,
```

```
1    THE FLAT FRONT FACE AND THE BEZEL OF AN ELECTRONIC

2    DEVICE.  AS YOU CAN SEE BY THE BROKEN LINES, AGAIN,

3    IT'S NOT CLAIMING THE BODY.  IT'S CLAIMING THE

4    BEZEL AND THE FRONT FACE.

5              THAT FRONT FACE IS A RECTANGULAR DESIGN

6    WITH ROUNDED CORNERS IN THE PROPORTIONS AND THE

7    SCALE, LENGTH TO WIDTH AND PROPORTIONAL RATIOS THAT

8    ARE BEING SHOWN HERE IN THE DRAWING.

9              AND IT INCLUDES A RECTANGULAR DISPLAY, AS

10   DID THE OTHER PATENT, WITH NARROW BORDERS ON EITHER

11   SIDE AND WIDER BORDERS TOP AND BOTTOM.

12             AND IT SHOWS THAT RECTANGULAR FRONT FACE

13   AREA AS NOT HAVING ANY SPECIFICATION.  IT DOESN'T

14   HAVE DIAGONAL CROSS ACTION, IT DOESN'T HAVE

15   SHEETING.  SO THAT FLAT FRONT SURFACE COULD BE ANY

16   COLOR.  IT COULD BE TRANSPARENT.  IT COULD BE

17   ANYTHING.  NOTHING IS BEING SPECIFIED.

18             THE OTHER PART OF IT TO NOTICE IS IN THE

19   SIDE VIEWS THAT, AGAIN, THIS IS SPECIFYING A FRONT

20   FACE AND BEZEL THAT ARE ABSOLUTELY FLAT.

21             MS. KREVANS:  YOUR HONOR, MAY I APPROACH

22   THE WITNESS AND HAND HIM SOME OF THE PHONES --

23             THE COURT:  YES.

24             MS. KREVANS:  -- HE HAS TO TALK ABOUT?

25             THE WITNESS:  THANK YOU.
```

1020

```
 1              THE COURT:  LET'S BREAK AT 10:25.  OKAY?

 2    THANK YOU.

 3    BY MS. KREVANS:

 4    Q    MR. BRESSLER, I'VE HANDED YOU FOUR PHONES, THE

 5    ORIGINAL IPHONE; THE 3G; THE 3GS; AND THE IPHONE 4.

 6              THOSE ARE EXHIBITS JX 1000, 1001, 1002

 7    AND 1003, ALL IN EVIDENCE, YOUR HONOR.

 8              DID YOU STUDY THESE IPHONES FOR THIS

 9    CASE?

10    A    I DID.

11    Q    OKAY.  COULD YOU LOOK AT PX 8 IN YOUR BINDER.

12    THAT'S GOING TO BE BACK CLOSER TO THE FRONT.  WHAT

13    IS PX 8, MR. BRESSLER?

14    A    PX 8 IS A PHOTOGRAPHIC PRESENTATION OF ALL OF

15    THE VIEWS OF ALL OF THE PHONES THAT YOU PRESENTED

16    TO ME.

17    Q    SO PX 8 SHOWS A COLLECTION OF PHOTOS OF ALL

18    THE DIFFERENT VIEWS OF THE FOUR IPHONES THAT I JUST

19    GAVE YOU, THE ORIGINAL, 3G, 3GS, AND 4?

20    A    CORRECT.  AND THEY'RE IN VIEWS THAT YOU MIGHT

21    SEE THEM -- SEE A DESIGN THAT IS SIMILAR TO THEM IN

22    THE PATENT.

23    Q    OKAY.

24              YOUR HONOR, WE'D MOVE THE ADMISSION OF PX

25    8.
```

```
1                THE COURT:  ANY OBJECTION?

2                MR. VERHOEVEN:  IT'S A DEMONSTRATIVE,

3      YOUR HONOR, SO MY UNDERSTANDING IS DEMONSTRATIVES

4      SHOULDN'T BE INTRODUCED INTO EVIDENCE.

5                MS. KREVANS:  YOUR HONOR, IT'S NOT A

6      DEMONSTRATIVE.  IT WAS OFFERED AS AN EXHIBIT.

7      THERE WERE OBJECTIONS THAT WERE MADE PREVIOUSLY

8      THAT YOUR HONOR HAS OVERRULED.

9                THE COURT:  IT'S ADMITTED.

10               (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 8,

11                HAVING BEEN PREVIOUSLY MARKED FOR

12                IDENTIFICATION, WAS ADMITTED INTO

13                EVIDENCE.)

14               THE COURT:  GO AHEAD.

15     BY MS. KREVANS:

16     Q    DID YOU REACH ANY CONCLUSIONS, MR. BRESSLER,

17     ABOUT WHETHER THE DESIGNS OF THE IPHONE ARE ANY OF

18     THE IPHONES IN FRONT OF YOU WERE THE DESIGN OF THE

19     D'677 PATENT?

20     A    YES.  I BELIEVE ALL OF THESE PHONES ARE

21     SUBSTANTIALLY THE SAME AS THE '677 PATENT.

22     Q    OKAY.  COULD WE SEE YOUR SLIDE 26.5, PLEASE,

23     MR. LEE.

24               WHAT HAVE YOU DEPICTED ON YOUR SLIDE

25     26.5?
```

1022

```
 1    A    26.5 IS EFFECTIVELY A FOUR-WAY COMPARISON, IF

 2    YOU WILL, THAT SHOWS ALL OF THE FIGURES OF THE '677

 3    DESIGN PATENT, AND IT SHOWS THE CORRESPONDING VIEWS

 4    OF EACH OF THE ORIGINAL IPHONE, THE 3G AND 3GS AND

 5    THE 4.

 6              I THINK IT ILLUSTRATES FAIRLY CLEARLY

 7    THAT ALL OF THEM EMBODY THE DESIGN THAT YOU SEE IN

 8    THE '677 PATENT.

 9    Q    OKAY.  LET ME ASK YOU A QUESTION ON ONE

10    SPECIFIC ASPECT OF THIS DESIGN.

11              DOES THE -- DO THE DRAWINGS IN THE D'677

12    PATENT TELL YOU WHETHER THE MATERIAL THAT'S THE

13    SURFACE OF THE FLAT FRONT FACE YOU DESCRIBED IS THE

14    SAME MATERIAL, EDGE TO EDGE, ACROSS THE WHOLE FACE?

15    A    YES, IT DOES.

16              AS I MENTIONED IN MY DESCRIPTION OF THE

17    '677 PATENT, THE DIAGONAL LINE, IF YOU LOOK AT

18    THEM, I THINK I POINTED IT OUT, GO FROM ONE

19    DIAGONAL CORNER TO THE OTHER ALL THE WAY,

20    UNINTERRUPTED, ACROSS, AND THAT FRONT DIAGONAL

21    CROSS ACTION SHOWS THAT IT GOES ALL THE WAY ACROSS

22    THE FACE.

23    Q    OKAY.  DID YOU DO A SIMILAR ANALYSIS TO

24    DETERMINE WHETHER ANY OF THE FOUR IPHONES I GAVE

25    YOU INCORPORATE THE DESIGN OR EMBODY THE DESIGN OF
```

1    THE '087 PATENT?

2    A    I DID.

3    Q    AND IF WE COULD SEE YOUR SLIDE -- I'M SORRY.

4    WHY DON'T WE DO THIS.  CAN WE SHOW FIGURE 9 FROM

5    THE '087 PATENT, MR. LEE?

6              OKAY.  AND THE IPHONE NEXT TO IT.

7              WHAT ARE WE LOOKING AT IN THIS

8    COMPARISON, MR. BRESSLER?

9    A    THIS IS A COMPARISON BETWEEN FIGURE 9 OF THE

10   '087 PATENT AND -- WHICH IS THE THREE-QUARTER FRONT

11   VIEW, AND A THREE-QUARTER FRONT VIEW OF WHAT

12   APPEARS, IN THIS PHOTOGRAPH, TO BE THE ORIGINAL

13   IPHONE.

14   Q    OKAY.  AND WHAT DID YOU CONCLUDE WITH RESPECT

15   TO THE ORIGINAL IPHONE AND THE '087 PATENT?

16   A    I BELIEVE THE DESIGN OF THE FRONT FACE AND

17   BEZEL IS, IS EXACTLY THE SAME AS EMBODIED IN THIS

18   PHONE.

19   Q    WHAT CONCLUSION DID YOU DRAW ABOUT WHETHER THE

20   IPHONE AND THE IPHONE 3GS EMBODY THE DESIGN OF THE

21   PATENT?

22   A    I BELIEVE THEY DO AS WELL.

23   Q    AND WHAT ABOUT THE IPHONE 4, AND MAYBE YOU

24   COULD HOLD THE IPHONE 4 UP FOR THE JURY, WHAT

25   CONCLUSION DID YOU DRAW ABOUT WHETHER OR NOT THE

1024

```
 1    IPHONE 4 EMBODIED THE DESIGN OF THE '087 PATENT?
 2    A    I BELIEVE THE IPHONE 4 DOES NOT EMBODY THE
 3    DESIGN OF THE '087 PATENT.
 4    Q    AND WHY IS THAT?
 5    A    BECAUSE IT DOES NOT HAVE A BEZEL THAT DIRECTLY
 6    SURROUNDS THE FRONT FACE.  IT HAS A BAND THAT GOES
 7    AROUND THE EDGE.
 8              SO IT WOULD APPEAR THAT GLASS ACTUALLY
 9    STANDS UP IN FRONT OF THE BAND, SO YOU DON'T REALLY
10    SEE A CLEAR BEZEL.
11    Q    OKAY.  ONE OTHER DETAIL ABOUT THE '087 DESIGN,
12    I KNOW WE'RE LOOKING AT ONE FIGURE HERE, BUT THE,
13    THE SHAPE OF THE -- I THINK YOU CALLED IT A LOZENGE
14    SHAPED SPEAKER SLOT AT THE TOP, IS THAT CLAIMED IN
15    THE '087 PATENT IN THE SECOND EMBODIMENT?
16    A    ACTUALLY, IT'S KIND OF IN THE THIRD EMBODIMENT
17    AND IN THE SIXTH.
18    Q    BUT NOT IN THE SECOND?
19    A    BUT NOT IN THE SECOND.
20    Q    SO THAT'S ANOTHER EMBODIMENT THAT DOES THAT?
21    A    YES, IT'S IN THE PATH.
22              MS. KREVANS:  OKAY.  YOUR HONOR, THIS
23    WOULD BE A CONVENIENT TIME AND I THINK IT'S ABOUT
24    10:25.
25              THE COURT:  ALL RIGHT.  IT'S 10:27.
```

1025

```
 1    LET'S TAKE OUR BREAK.

 2             I HAVE SOME ISSUES I'D LIKE TO SPEAK WITH

 3    THE LAWYERS ABOUT.  WE'LL TAKE A SLIGHTLY LONGER

 4    BREAK THIS TIME.  LET'S SAY 10:50, OKAY?

 5             SO, AGAIN, PLEASE KEEP AN OPEN MIND.

 6    PLEASE DON'T SPEAK WITH ANYONE ABOUT THE CASE AND

 7    PLEASE DON'T DO ANY RESEARCH OR READING ABOUT THE

 8    CASE.  ALL RIGHT.  THANK YOU.

 9             WE'LL SEE YOU BACK AT 10:50.

10             (WHEREUPON, THE FOLLOWING PROCEEDINGS

11    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

12             THE COURT:  ALL RIGHT.  YOU CAN STEP

13    DOWN.

14             THE RECORD SHOULD REFLECT THE JURORS HAVE

15    LEFT THE COURTROOM.

16             I JUST WANTED TO MAKE SURE THAT THERE

17    AREN'T ANY ISSUES WITH SOME OF THESE EXHIBITS.

18             NOW, WITH YOUR DEMONSTRATIVE 684, THAT

19    HAS THE F700 IN IT, WHICH HAS BEEN EXCLUDED.  SO

20    WHY ARE YOU STILL TRYING TO GET THAT IN?

21             MR. VERHOEVEN:  YOUR HONOR, I DON'T

22    BELIEVE -- I DON'T BELIEVE THE F700 HAS BEEN

23    EXCLUDED.  THOSE WERE -- I THINK YOU EXCLUDED

24    INTERNAL DEVELOPMENT DOCUMENTS.  THE F700 ITSELF

25    HAS NOT BEEN EXCLUDED AND, IN FACT, IS RELIED UPON
```

```
1    BY THIS WITNESS AS AN ALTERNATIVE DESIGN IN HIS

2    EXPERT REPORTS.

3              AND SO WE THINK THAT THE FACT THAT THIS

4    WITNESS HAS PROFFERED THE F700 --

5              THE COURT:  ALL RIGHT.  LET ME SEE, WHERE

6    IN HIS REPORT DOES HE TALK ABOUT THE F700?  SHOW

7    ME.  I WANT TO SEE THE ACTUAL DOCUMENTS.

8              MR. VERHOEVEN:  YES, YOUR HONOR.

9              THE COURT:  WELL, I HAVE HIS REPORT HERE.

10   YOU JUST GIVE ME A PAGE NUMBER, AND I CAN LOOK AT

11   IT MYSELF.

12             MS. KREVANS:  YOUR HONOR, IF I MAY.

13             THE COURT:  YEAH.

14             MS. KREVANS:  FOR COMPLETENESS, BECAUSE

15   WE WERE NOT SURE HOW ALL THE RULES WERE GOING TO

16   COME OUT IN THE CASE, THIS WITNESS DID GIVE SOME

17   OPINIONS IN HIS REPORT ABOUT THE F700.  WE DON'T

18   INTEND TO OFFER ANY TODAY.

19             THE COURT:  IF IT'S IN THERE, WHY

20   SHOULDN'T IT COME IN?

21             MS. KREVANS:  BECAUSE, YOUR HONOR, THE

22   F700 IS NOT AN ACCUSED PRODUCT IN THE CASE.  IT IS

23   NOT THE BASIS FOR ANY DESIGN OF ANY PRODUCT WHICH

24   IS ACCUSED, AND THE THEORY OF INDEPENDENT

25   DEVELOPMENT THAT SAMSUNG HAS OFFERED SUPPOSEDLY FOR
```

1027

```
 1    THE ACCUSED PRODUCTS IN THE CASE IS BASED ON THE

 2    F700 AND THAT HAS BEEN EXCLUDED.

 3              SO THE ONLY REASON FOR THEM TO TRY TO USE

 4    AN EXHIBIT THAT HAS THE F700 OR ANY MOCKUPS, ANY

 5    DESIGNS OF THE F700 ON IT WOULD BE TO TRY TO

 6    BACKDOOR GET IN THE INDEPENDENT DEVELOPMENT THEORY

 7    WHICH HAS ALREADY BEEN EXCLUDED.

 8              THIS IS THE CUE BALL, THE EARLY F700'S,

 9    THIS WHOLE THEORY WAS NOT DISCLOSED AND IS,

10    THEREFORE, EXCLUDED.

11              MR. VERHOEVEN:  I HAVE THE EXPERT REPORT,

12    YOUR HONOR, IF I CAN HAND IT UP AND JUST SHOW YOU.

13              THE COURT:  PLEASE.

14              MR. VERHOEVEN:  MAY I APPROACH?

15              THE COURT:  YES.  NOW, TELL ME WHERE

16    JUDGE GREWAL'S ORDER, I ASSUME THAT'S WHAT YOU'RE

17    REFERRING TO, WHERE IT EXCLUDED IT?  I WANT TO SEE

18    THE ACTUAL DOCUMENT.  I'M NOT GOING TO RELY ON

19    REPRESENTATIONS ANY MORE FROM EITHER SIDE.

20              THE COURT:  OKAY.  THIS IS PAGES 138 AND

21    139 IN THE REBUTTAL EXPERT REPORT OF PETER

22    BRESSLER.

23              MS. KREVANS:  SO THE REBUTTAL EXPERT

24    REPORT IS NOT AN ISSUE IN THE TESTIMONY TODAY, YOUR

25    HONOR.  THIS IS INFRINGEMENT.
```

1028

```
 1            MR. VERHOEVEN:  YOUR HONOR, IF YOU READ
 2   THE PARAGRAPH, THIS IS ONE OF SEVERAL PARAGRAPHS IN
 3   WHICH THIS WITNESS TALKS ABOUT ALTERNATIVE DESIGNS
 4   THAT WOULD BE NON-INFRINGING, AND IT'S NOT CONTEXT
 5   OF A DISCUSSION ABOUT THE EXTENT TO WHICH
 6   FUNCTIONALITY SHOULD BE CONSIDERED.
 7            AND WHAT THIS WITNESS IS SAYING IN HIS
 8   REPORT, YOUR HONOR, IS NONE OF THE FEATURES AND
 9   DESIGNS THAT HE'S LOOKING AT, DESIGN PAGES THAT
10   HE'S LOOKING AT, ARE FUNCTIONAL, AND HERE'S AN
11   EXAMPLE OF SEVERAL PHONES THAT ALL HAVE ALL OF THE
12   FUNCTIONALITY, THE SAME FUNCTIONALITY, BUT DON'T
13   HAVE INFRINGING DESIGNS, AND HE LISTS THE F700,
14   YOUR HONOR.
15            SO THE REASON WE HAVE THAT THERE IS
16   BECAUSE HE'S NOW BEING PRESENTED ON THE SUBJECT OF
17   WHAT'S SUBSTANTIALLY SIMILAR AND WHAT'S NOT FOR
18   PURPOSES OF INFRINGEMENT, AND HE'S GOING TO TESTIFY
19   ABOUT ALTERNATIVE DESIGNS AS PART OF THAT, YOUR
20   HONOR, AND I WOULD REQUEST THE ABILITY, SINCE HE
21   LISTED THAT AS AN ALTERNATIVE DESIGN, TO ASK HIM
22   QUESTIONS ABOUT THE FACT THAT THIS IS A
23   NON-INFRINGING DESIGN AND COMPARE THIS ADMITTEDLY
24   NON-INFRINGING DESIGN TO THE PHONES AND THE ACTUAL
25   DESIGN PATENT FOR PURPOSES OF CROSS-EXAMINATION.
```

1029

```
 1              MS. KREVANS:  SO, YOUR HONOR --
 2              THE COURT:  LET ME RETURN THIS TO YOU.  I
 3    DO HAVE A COPY OF IT IN THE CROSS-EXAMINATION
 4    DOCUMENTS.
 5              MR. VERHOEVEN:  YES, YOUR HONOR.
 6              THE COURT:  AND I'VE TABBED PAGES 138
 7    THROUGH 139 OF THE REBUTTAL REPORT.
 8              OKAY.  LET ME SEE WHAT --
 9              MS. KREVANS:  SO THREE THINGS, YOUR
10    HONOR.  FIRST, YOU NOTICE HE'S SHOWING YOU
11    SOMETHING FROM THE REBUTTAL REPORT.  IT'S NOT EVEN
12    THE SUBJECT OF TODAY'S TESTIMONY.  HE CAN'T TIE IT
13    TO TODAY'S TESTIMONY.
14              SECOND, WE DON'T INTEND TO OFFER ANY
15    TESTIMONY TODAY ABOUT THE F700, AND AS I SAID, WE
16    DID EARLIER IN THE CASE, BEFORE WE KNEW WHAT THE
17    ALL THE RULINGS WERE GOING TO BE, HAVE TO PROTECT
18    OURSELVES IN THE EVENT, THAT THIS -- WE ALWAYS
19    THOUGHT IT SHOULD BE OUT.
20              THE COURT:  LET ME SEE JUDGE GREWAL'S
21    ORDER.  I DON'T WANT TO HEAR ANY ATTORNEY
22    REPRESENTATION OF WHAT THINGS DO OR DON'T DO.  I
23    WANT TO SEE THE ACTUAL DOCUMENTATION.
24              MS. KREVANS:  LET ME REMIND YOUR HONOR,
25    THE WAY THIS WAS DONE BEFORE JUDGE GREWAL, WAS WE
```

1030

```
 1    SUBMITTED A REPORT WITH YELLOW HIGHLIGHTING OF ON
 2    WHAT WE THOUGHT SHOULD BE STRUCK, AND THEN OUR
 3    MOTION WAS GRANTED.  SO ANYTHING YELLOW WAS STRUCK.
 4    I ALSO HAVE A COPY OF JUDGE GREWAL'S ORDER HERE
 5    (HANDING).
 6            THE COURT:  ALL RIGHT.  WELL, LET ME TAKE
 7    A LOOK AT THIS DURING THE BREAK.  I ASSUME YOU NEED
 8    THIS BACK, RIGHT?
 9            MS. KREVANS:  I DO, YOUR HONOR, BECAUSE
10    THERE ARE THINGS IN THAT BINDER.
11            THE COURT:  ALL RIGHT.  LET ME GET --
12    WHAT'S THE ECF, THE DOCKET NUMBER FOR THIS
13    DOCUMENT?
14            MS. KREVANS:  SO JUDGE GREWAL'S ORDER --
15    WOULD YOUR HONOR LIKE COPIES OF JUDGE GREWAL'S
16    ORDER AND YOUR ORDER?
17            THE COURT:  NO, I HAVE THAT.
18            MS. KREVANS:  OKAY.
19            THE COURT:  ALL RIGHT.  SO THIS IS
20    MR. SHERMAN'S OPENING REPORT, AND IT'S PAGES 57
21    THROUGH 58.  IS THAT RIGHT?
22            MS. KREVANS:  THAT'S CORRECT, YOUR HONOR.
23            AND THEN JUDGE GREWAL'S ORDER WAS DOCKET
24    1144 AND YOUR ORDER DENYING THE MOTION FOR
25    RECONSIDERATION OF IT WAS 1545.
```

```
 1              THE COURT:  ALL RIGHT.  LET ME RETURN
 2      THIS TO YOU.
 3              NOW, I'VE ALREADY ALSO --
 4              MR. VERHOEVEN:  YOUR HONOR, COULD I
 5      JUST --
 6              THE COURT:  -- RULED ON DX 628 AND DX
 7      743, AND I STILL SEE THAT THEY'RE IN YOUR BINDERS.
 8              ARE YOU PLANNING TO USE THOSE, OR NOT?
 9              MR. VERHOEVEN:  I'M SORRY, YOUR HONOR.
10      COULD YOU TELL US THE NUMBERS ONE MORE TIME?
11              THE COURT:  628, 628, AND 743.  ONE HAD
12      TO DO WITH THE HOME BUTTON, THE OTHER HAD TO DO
13      WITH MOTION IN LIMINE NUMBER 2 ABOUT PATENTS THAT
14      ARE NOT PRIOR ART PATENTS.
15              MR. VERHOEVEN:  IF YOU'RE TALKING ABOUT
16      THE HOME BUTTON REGISTRATION, WE DON'T INTEND TO
17      USE THAT, YOUR HONOR.  IT'S JUST LEFT IN THE
18      BINDER.
19              THE COURT:  ALL RIGHT.  THAT'S FINE.
20              MR. VERHOEVEN:  THE SECOND ONE I'M JUST
21      LOOKING AT IT.
22              THE COURT:  743.  IT'S PATENTS THAT WERE
23      APPLIED FOR AFTER THE PATENTS IN SUIT.  THEY'RE
24      NON-PRIOR ART PATENTS.  I ALREADY RULED ON THAT.
25              MR. VERHOEVEN:  YEAH.  I JUST THINK THEY
```

1032

```
1    DIDN'T GET REMOVED FROM THE BINDER, YOUR HONOR.

2              THE COURT:  OKAY, FINE.

3              MR. VERHOEVEN:  BUT -- OKAY.

4              THE COURT:  OKAY.  SO THAT TAKES CARE OF

5    THOSE TWO.  I JUST WANT TO MAKE SURE WE DON'T HAVE

6    ANY OF THESE ISSUES OUTSTANDING.

7              SO I WILL GO BACK AND LOOK AT THE F700.

8              WHAT ELSE?  IS THERE ANYTHING ELSE AS

9    TO --

10             MR. VERHOEVEN:  I JUST WANTED TO SAY ONE

11   THING REALLY BRIEFLY ON THE F700, YOUR HONOR.

12             THE COURT:  YES.

13             MR. VERHOEVEN:  BECAUSE IF YOU LOOK AT

14   JUDGE GREWAL'S ORDER, I THINK IT MIGHT BE HELPFUL

15   TO ALSO LOOK AT THE PROPOSED ORDER THAT WAS

16   SUBMITTED BY APPLE.  IT DOES LIST THE F700, YOUR

17   HONOR, SO YOU SHOULD KNOW THAT, ALTHOUGH THAT IS

18   NOT IN THE GREWAL ORDER.  I JUST THOUGHT THAT MIGHT

19   BE HELPFUL FOR YOUR HONOR.

20             THE COURT:  OKAY.

21             MR. VERHOEVEN:  BUT, SECONDLY, THE

22   PROPOSED ORDER, WHICH I THINK JUDGE GREWAL INTENDED

23   TO ADOPT, IS TALKING ABOUT EXCLUSION FOR PURPOSES

24   OF ARGUMENT THAT THE '087 IS ANTICIPATED OR

25   RENDERED OBVIOUS.
```

```
 1              AND MY -- I JUST WANT TO CLARIFY FOR YOUR
 2    HONOR, MY CROSS ON THIS SUBJECT WOULD NOT DEAL WITH
 3    THAT SUBJECT AT ALL.  IT WOULD BE THAT THIS WITNESS
 4    HAS SAID THE F700 IS A DESIGN ALTERNATIVE.  IT'S A
 5    NON-INFRINGING, IT DOES NOT -- IT IS NOT
 6    SUBSTANTIALLY SIMILAR AND I INTEND TO SAY -- TO THE
 7    OPPOSITE OF WHAT THIS IS TALKING ABOUT AND SAY THIS
 8    IS A NON-INFRINGING DESIGN.  IT'S NOT GOING TO BE
 9    THE ARGUMENT THAT THIS IS A PIECE OF PRIOR ART THAT
10    INVALIDATES OR IS OBVIOUS.
11              SO THE PURPOSE FOR WHICH I WOULD INTEND
12    TO USE THIS ON CROSS WOULD BE TO SHOW, TO CONTRAST
13    WHAT THIS WITNESS HAS SAID IS A NON-INFRINGING
14    DESIGN AGAINST WHAT HE HAS SAID ARE INFRINGING
15    DESIGNS FOR PURPOSES OF IMPEACHMENT.
16              THE COURT:  ALL RIGHT.  I UNDERSTAND.
17              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
18              THE COURT:  AND YOUR POSITION IS THAT IT
19    WAS EXCLUDED FOR EVERYTHING, NOT JUST INVALIDITY?
20              MS. KREVANS:  YES, YOUR HONOR.  AND THE
21    REASON FOR THAT POSITION IS THE BASIS FOR
22    JUDGE GREWAL'S ORDER WAS -- NOT THAT THERE WAS
23    SOMETHING WRONG WITH WHAT WAS IN THE EXPERT REPORT
24    NECESSARILY, ABOUT YOU THAT WHAT WAS IN THE EXPERT
25    REPORT RELATED TO THINGS THAT HAD NEVER BEEN
```

```
1    DISCLOSED IN RESPONSE TO CONTENTION

2    INTERROGATORIES.  AND BECAUSE THAT WAS A BASIS FOR

3    EXCLUSION, IT APPLIES TO TRYING TO GET THE SAME

4    THING IN THROUGH OTHER WAYS.

5             THERE IS NO OTHER RELEVANCE TO THIS PHONE

6    BECAUSE IT'S NOT AN ACCUSED PRODUCT, AND IT'S NOT

7    SOMETHING THAT WAS IN THE DEVELOPMENT OF ANY

8    ACCUSED PRODUCT AND THE INDEPENDENT DEVELOPMENT

9    THEORY HAS BEEN STRUCK.

10            I DO WANT TO RAISE WITH YOUR HONOR --

11            THE COURT:  YEAH.

12            MS. KREVANS:  THESE ARE NOT THE ONLY

13   ISSUES THAT MAY COME UP DURING CROSS-EXAMINATION.

14   IF I CAN FIND IT IN THIS BIG STACK OF PAPER, AMONG

15   THE EXHIBITS THAT WERE GIVEN TO US AS POTENTIAL

16   CROSS EXHIBITS FOR MR. BRESSLER BY SAMSUNG, THERE

17   IS A LONG LIST OF EXHIBITS WHICH WE THINK ARE

18   OBJECTIONABLE BECAUSE THEY ARE DOCUMENTS AND

19   DEMONSTRATIVES DESIGNED TO INTRODUCE INTO THE CASE,

20   THROUGH CROSS, NON-INFRINGEMENT THEORIES THAT HAVE

21   BEEN STRUCK BY JUDGE GREWAL AND THAT ORDER IS

22   FINAL.

23            THE -- AND BECAUSE YOUR HONOR DENIED THE

24   MOTION FOR RECONSIDERATION, YOUR HONOR MAY RECALL

25   IN THEIR RESPONSES TO THE CONTENTION
```

1035

```
1     INTERROGATORIES ABOUT THE BASIS FOR

2     NON-INFRINGEMENT IN THIS CASE, SAMSUNG GAVE A

3     BOILERPLATE ANSWER TO EVERY -- WITH RESPECT TO

4     EVERY DEVICE.

5              THE COURT:  JUST GIVE ME THE NUMBER.

6     WHAT'S THE NUMBER?  ARE YOU REFERRING TO A

7     DEMONSTRATIVE NUMBER?

8              MS. KREVANS:  IT'S MANY, MANY NUMBERS.

9     DO YOU HAVE THE LIST OF WHICH DEMONSTRATIVES IT

10    APPLIES TO?

11             IT IS -- IT'S UNFORTUNATELY A LONG LIST.

12    IN PART IT'S PHOTOS, SO IT IS SDX 3756, 3757, 3760,

13    3761 --

14             THE COURT:  SO THAT WAS NEVER IN YOUR

15    OBJECTIONS?

16             MS. KREVANS:  WE JUST GOT THESE AND WE

17    HAVE OBJECTED ON THIS BASIS.

18             BUT THESE ARE NOT OBJECTIONS THAT WE'VE

19    AGREED TO --

20             MR. VERHOEVEN:  YOUR HONOR, THEY HAD

21    THESE SLIDES AND THIS IS, AGAIN, THE FIRST TIME

22    WE'RE HEARING ABOUT THIS.  THIS IS

23    CROSS-EXAMINATION OF A WITNESS AND, YOU KNOW,

24    THERE'S A DIFFERENCE BETWEEN CROSS-EXAMINING A

25    WITNESS ON HIS OPINIONS AND OFFERING AN EXPERT AND
```

1036

```
 1    THE DISCLOSURE REQUIREMENTS FOR AN EXPERT.  I'M
 2    ENTITLED TO CROSS-EXAMINE THIS WITNESS AS TO HIS
 3    OPINIONS AND TO CHALLENGE HIS CONTENTIONS WITH
 4    RESPECT TO INFRINGEMENT AND POINT OUT TO THE JURY
 5    DIFFERENCES.
 6              MS. KREVANS:  YOUR HONOR, THIS IS --
 7              MR. VERHOEVEN:  THAT --
 8              THE COURT:  I DON'T EVEN SEE THE NUMBERS
 9    IN THE CROSS-EXAMINATION BINDER THAT YOU'VE JUST
10    LISTED.
11              MR. VERHOEVEN:  WE WENT THROUGH THIS
12    WHOLE PROCESS, YOUR HONOR, SO WE WOULDN'T HAVE TO
13    HAVE, YOU KNOW, JUMBLING AROUND WITH ALL THESE
14    OBJECTIONS.  WE'VE BEEN THROUGH THIS PROCESS.  THEY
15    HAVEN'T OBJECTED.  YOUR HONOR HAS ALREADY RULED ON
16    THE OBJECTIONS THEY'VE RAISED.
17              YOU KNOW, WE'LL NEVER GET DONE WITH THIS
18    TRIAL IF WE HAVE TO DO THIS FOR EVERY SINGLE SLIDE.
19              MS. KREVANS:  YOUR HONOR, THIS LIST
20    CONTINUES.  IT'S THE SAME OBJECTION FOR MANY OF THE
21    SLIDES AND THIS IS NOT ABOUT SOME ISSUE ABOUT
22    EXPERT REPORTS.
23              THIS IS ABOUT CONTENTIONS.  JUDGE GREWAL
24    HAS ALREADY RULED, AND YOUR HONOR HAS ALREADY
25    AFFIRMED --
```

```
 1                THE COURT:  WELL, I JUST WANT THE NUMBER,

 2      AND THE NUMBER THAT YOU GAVE ME, I'M NOT SEEING IT

 3      IF IN THE BINDERS.

 4                MS. KREVANS:  1545 IS YOUR HONOR'S RULING

 5      DENYING --

 6                THE COURT:  NO, NO.  I WANT THE EXHIBITS

 7      THAT YOU ARE OBJECTING TO.

 8                MS. KREVANS:  OH.  THESE ARE THEIR --

 9                THE COURT:  I JUST WANT THE NUMBERS.  I

10      DON'T SEE THEM IN YOUR MULTIPLE BRIEFINGS ON THESE

11      EXHIBITS.  I DON'T SEE THEM.

12                MS. KREVANS:  THESE HAVE NOT BEEN IN THAT

13      SERIES OF MULTIPLE BRIEFINGS, YOUR HONOR.  THE

14      OBJECTIONS ON THE CROSS-EXHIBITS WERE NEVER RULED

15      UPON BECAUSE THEY CAME LATER THAN THE LEST.  SO

16      THERE'S A LONG LIST OF SLIDES HERE IN WHICH -- AND

17      I HAVE A COPY OF THE SLIDES.

18                THE COURT:  I HAVE THE DEFENSE

19      CROSS-EXHIBITS.  JUST GIVE ME THE NUMBER.

20                MS. KREVANS:  OKAY.  IT'S, THEY'RE ALL,

21      THESE ARE ALL IN THE SDX, SO I SHOULD SAY THEY ARE

22      DEMONSTRATIVES, AND THEY ARE THE NUMBERS I READ,

23      AND IN ADDITION, 3764 THROUGH --

24                THE COURT:  I JUST DON'T HAVE ANY OF

25      THOSE NUMBERS IN MY BINDER.  THAT'S WHY I'M
```

1038

```
 1        COMPLETELY CONFUSED.  THE ONLY DEMONSTRATIVES I
 2        HAVE FOR MR. BRESSLER ARE 511, 591, 628, WHICH
 3        MR. VERHOEVEN SAID THEY'RE NOT GOING TO USE, 688,
 4        740, 741, 743, THAT'S WHY I DON'T KNOW WHAT YOU'RE
 5        TALKING ABOUT.
 6              MS. KREVANS:  I'M NOT SURE WHAT THEY PUT
 7        IN YOUR BINDER, YOUR HONOR, BUT I HAVE A FULL SET
 8        OF THE DEMONSTRATIVES THAT INCLUDES THE ONES THAT
 9        I'M REFERRING TO.
10              THE COURT:  WELL, IT SOUNDS LIKE -- I
11        DON'T HAVE THESE.  I'M ASSUMING WHAT I WAS GIVEN IS
12        WHAT YOU'RE GOING TO USE, RIGHT?
13              MR. VERHOEVEN:  I HAVEN'T LOOKED THROUGH
14        YOUR BINDER.  I CAN TAKE A LOOK AT IT, YOUR HONOR.
15              THE COURT:  IF YOU WOULD, PLEASE.  I HAVE
16        THREE BINDERS.  ONE OF THEM CONSISTS OF, YOU KNOW,
17        WITNESS STATEMENTS AND DEPOSITIONS AND THE EXPERT
18        REPORTS, AND I JUST DON'T HAVE THOSE EXHIBITS THAT
19        YOU'RE OBJECTING TO.
20              MS. KREVANS:  OKAY.  AND -- I'M NOT SURE
21        WHAT IS IN HIS BINDERS, YOUR HONOR.
22              IF I MAY, THERE HAS BEEN A RULING IN THIS
23        CASE BY JUDGE GREWAL AND YOURSELF THAT SAMSUNG MAY
24        NOT OFFER NON-INFRINGEMENT THEORIES EXCEPT FOR TWO
25        PHONES.  THE ONLY TWO PHONES ON WHICH THEY CAN
```

```
 1    OFFER NON-INFRINGEMENT THEORIES ARE THE INFUSE 4G

 2    AND THE GALAXY S 4G.  AND THAT WAS NOT --

 3              MR. VERHOEVEN:  YOUR HONOR, WE OBVIOUSLY

 4    DISPUTE THAT.

 5              BUT THERE'S A MORE FUNDAMENTAL POINT

 6    HERE.  WE EXCHANGED THESE DEMONSTRATIVES WITH THE

 7    OTHER SIDE.  THEY'VE HAD THEM FOR DAYS.  THEY NEVER

 8    ONCE SAID THEY OBJECTED TO THESE.  NOW ON THE VERY

 9    DAY THAT THIS WITNESS IS ABOUT TO APPEAR FOR

10    CROSS-EXAMINATION, THEY WANT TO WHOLESALE OBJECTION

11    TO CROSS-EXAMINATION DEMONSTRATIVE SLIDES.  THESE

12    ARE JUST DEMONSTRATIVE SLIDES USED -- THEY'RE

13    PICTURES OF, YOUR HONOR, IF I CAN JUST -- THEY'RE

14    PICTURES --

15              THE COURT:  LET ME ASK, ARE THE BINDERS

16    THAT I WAS GIVEN BEFORE MR. BRESSLER STARTED

17    TESTIFYING, ARE THOSE COMPLETE OR IS THERE --

18              MR. VERHOEVEN:  WE'RE CHECKING THAT RIGHT

19    NOW, YOUR HONOR.

20              THE COURT:  OH, OKAY.

21              MR. VERHOEVEN:  BUT THE POINT I WANT TO

22    MAKE, YOUR HONOR, IS WE WENT THROUGH A PROCESS THAT

23    YOUR HONOR SPECIFIED AND THERE WAS NO OBJECTION

24    THAT WAS LODGED TO THESE SLIDES.  THEY WAIVED THEIR

25    OBJECTIONS.  WE NEED TO GET THIS TRIAL GOING.  THE
```

```
 1   WHOLE POINT OF THE PROCESS WAS TO EXCHANGE

 2   OBJECTIONS SO THAT THIS DOESN'T HAPPEN, AND THEY

 3   DID NOT OBJECT.  WE STRONGLY DISPUTE WHAT THEY'RE

 4   SAYING ABOUT THESE ORDERS AND --

 5             THE COURT:  LET ME JUST -- THE ONLY ONES

 6   THAT I HAD AN ISSUE WITH IS THE LG KE850.

 7             NOW, IF THIS WAS IN YOUR INVALIDITY

 8   CONTENTION INTERROGATORY RESPONSE, THEN LET ME SEE

 9   THAT.

10             MR. VERHOEVEN:  I'M SORRY.  WHAT WAS THE

11   NUMBER, YOUR HONOR?

12             THE COURT:  THE LG KE850, THE TOUCHABLE

13   CHOCOLATE.  IT'S IN THE BACK OF, I THINK, VOLUME 1.

14             MS. KREVANS:  AND WHILE HE'S LOOKING THAT

15   UP, YOUR HONOR, I HAVE IN MY HAND THE WRITTEN

16   OBJECTIONS THAT WE SERVED UPON THEM AND FILED WITH

17   THE COURT THAT INCLUDED THE EXACT OBJECTIONS --

18             THE COURT:  IS THIS DOCUMENT NUMBER 1571?

19             MS. KREVANS:  IT IS 1571, YOUR HONOR, AND

20   THIS IS ON PAGE -- NUMBERED PAGE 4 AT THE TOP OF

21   THE PAGE.

22             I THINK MR. VERHOEVEN MAY SIMPLY HAVE

23   OVERLOOKED THIS, BUT WE HAVE OBJECTED.  IT'S AT THE

24   TOP OF THE COLUMN WHERE --

25             THE COURT:  THAT'S THE ONE THAT YOU'RE --
```

```
 1      THAT'S THE ONE THAT YOU'RE --

 2              MR. VERHOEVEN:  YOUR HONOR HAS ALREADY

 3      RULED ON THEIR OBJECTION TO THE LG PRADA IN

 4      CONNECTION WITH MR. DENISON'S TESTIMONY AND YOU

 5      OVERRULED THE OBJECTION.

 6              THE COURT:  I DISAGREE WITH THAT.

 7              MS. KREVANS:  OKAY.  THIS EXHIBIT IS THE

 8      LG KE850.

 9              THE COURT:  RIGHT.  I DISAGREE WITH THAT.

10      I'M GOING TO SUSTAIN THAT OBJECTION.  OKAY?  I'LL

11      GET BACK TO YOU ON THE F700.

12              THE LG KE850, THE OBJECTION IS SUSTAINED.

13              AND --

14              MR. VERHOEVEN:  YOUR HONOR, JUST SO I

15      CAN -- YOU HAVE AN ORDER ON APPLE'S MOTION IN

16      LIMINE NUMBER 3 ON THIS ISSUE, AND I CAN HAND THIS

17      UP IF YOU'D LIKE, YOU GRANTED THE MOTION -- APPLE'S

18      MOTION ON MOTION IN LIMINE NUMBER 3 IN PART AND

19      DENIED IT IN OTHER RESPECTS, AND IT SAYS, QUOTE,

20      "THE MOTION IS DENIED IN ALL OTHER RESPECTS.  IN

21      OTHER WORDS, THE LG KE 750 MAY BE ADMISSIBLE AS A

22      PRIOR ART REFERENCE UNDER 35 U.S.C. SECTION 102."

23              THE COURT:  THIS IS THE LG KE 850.  IT'S

24      A DIFFERENT PRODUCT.

25              MS. KREVANS:  AND, YOUR HONOR, THE
```

```
1     SUBJECT OF THE TESTIMONY ARE --

2              THE COURT:  THIS IS A DIFFERENT PRODUCT.

3     THIS IS TOUCHABLE CHOCOLATE.  KE 850.

4              OKAY.  WELL, I WILL TAKE A LOOK AT THE

5     F700 ISSUE THAT YOU'VE RAISED AND --

6              MR. VERHOEVEN:  YOUR HONOR, I THINK THAT

7     IS ACTUALLY THE SAME PRODUCT.  ON THE BREAK, WE CAN

8     VERIFY THAT.  THE ARTICLE USES A SLIGHTLY DIFFERENT

9     TERMINOLOGY FOR IT.

10             THE COURT:  ALL RIGHT.  AND I'LL TAKE A

11    LOOK AT THIS LAST ONE.  OKAY.

12             ALL RIGHT.  THANK YOU.

13             MR. MCELHINNY:  DO YOU STILL WANT US BACK

14    IN TEN MINUTES, YOUR HONOR.

15             THE COURT:  NO.  UNFORTUNATELY, LET'S

16    TAKE A 15-MINUTE BREAK.  THANK YOU.

17             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

18             (WHEREUPON, A RECESS WAS TAKEN.)

19             (WHEREUPON, THE FOLLOWING PROCEEDINGS

20    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

21             THE COURT:  ALL RIGHT.  WELCOME BACK.  I

22    APOLOGIZE FOR THE DELAY.

23             THE F700 IS -- OH, PLEASE TAKE A SEAT --

24    IT'S NOT ADMISSIBLE FOR OBVIOUSNESS OR INVALIDITY.

25    JUDGE GREWAL DID STRIKE THAT AND I DID AFFIRM HIS
```

1043

```
 1    ORDER, BUT IT WILL BE ADMISSIBLE FOR ALTERNATIVE

 2    DESIGN.

 3             I'M GOING TO ASK MR. VERHOEVEN PLEASE NOT

 4    TO CROSS THE LINE INTO INVALIDITY AND OBVIOUSNESS

 5    SINCE THAT'S BEEN EXCLUDED.

 6             THE DEMONSTRATIVES, I'M GOING TO RESERVE

 7    AND GIVE YOU A RULING ON THAT LATER, SO IF YOU

 8    COULD MAKE THAT TOWARDS THE END OF YOUR CROSS, I'D

 9    APPRECIATE IT.

10             NOW, WITH REGARD TO THE LG CHOCOLATE,

11    IT'S NOT PRIOR ART, BUT IT CAN BE USED FOR OTHER

12    PURPOSES.  WE CAN HAVE A LIMITING INSTRUCTION IF

13    NECESSARY.

14             THE LG PRADA, THAT WAS RAISED IN APPLE'S

15    MOTION IN LIMINE NUMBER 3, AND THERE IS A FACTUAL

16    DISPUTE AS TO WHETHER IT WAS, IN FACT, SOLD IN THE

17    U.S. OR NOT AND WHETHER, IN FACT, IT IS OR IS NOT

18    PRIOR ART.  SO SAMSUNG CAN USE THAT.

19             MS. KREVANS:  YOUR HONOR, WITH RESPECT TO

20    THE SPECIFIC DOCUMENT THAT RAISED THIS ISSUE, THIS

21    DOCUMENT HAS NEVER BEEN PRODUCED OR DISCLOSED

22    BEFORE, SO INDEPENDENT OF WHETHER THEY CAN TALK

23    ABOUT THOSE DEVICES, WE DON'T THINK THEY CAN USE

24    THIS DOCUMENT BECAUSE --

25             THE COURT:  OKAY.  WELL, THEN, LET ME
```

1044

```
 1    HEAR FROM SAMSUNG.  GIVE ME THE DOCUMENT PRODUCTION

 2    NUMBER.

 3              I DON'T SEE THAT THIS IS BATES LABELED AT

 4    ALL.

 5              MR. VERHOEVEN:  YES, YOUR HONOR.  THIS

 6    IS -- THIS IS SIMPLY POTENTIALLY GOING TO BE USED

 7    FOR IMPEACHMENT, OR TO REFRESH THE WITNESSES

 8    RECOLLECTION.

 9              YOUR HONOR HAS DIRECTED US THAT FOR ANY

10    POTENTIAL IMPEACHMENT EXHIBITS, WE NEEDED TO

11    EXCHANGE THEM WITH THE OTHER SIDE.

12              SO THIS KIND OF FALLS UNDER THAT.

13              THE COURT:  ALL RIGHT.  THEN IT'S

14    EXCLUDED.  ALL RIGHT.  OKAY.  LET'S GO FORWARD

15    THEN.  OKAY.  THANK YOU.

16              (WHEREUPON, THE FOLLOWING PROCEEDINGS

17    WERE HELD IN THE PRESENCE OF THE JURY:)

18              THE COURT:  I APOLOGIZE FOR THE DELAY.

19              IT'S NOW 11:19.  GO AHEAD, PLEASE.

20    BY MS. KREVANS:

21    Q   MR. BRESSLER, I'D LIKE YOU TO TURN TO EXHIBIT

22    JX 1040 IN YOUR BINDER, YOU SHOULD FIND IT

23    SOMEWHERE NEAR THE BACK.

24              FOR THE RECORD, 1040 IS ALREADY IN

25    EVIDENCE.
```

1045

1      WHAT IS JX 1040, MR. BRESSLER?

2   A    THIS IS THE '889 PATENT.

3   Q    AND COULD YOU TURN TO THE FIRST PRINTED PAGE,

4   WHICH IS SHOWING ON THE SCREEN, AND TELL US, GOING

5   TO THE SECTION HEADED CLAIM, WHAT IS CLAIMED BY

6   APPLE'S D'889 DESIGN PATENT?

7   A    WHAT IS CLAIMED IS "AN ORNAMENTAL DESIGN FOR

8   AN ELECTRONIC DEVICE, SUBSTANTIALLY AS SHOWN AND

9   DESCRIBED," AND THE SUBSEQUENT DESCRIPTION.

10  Q    OKAY.  AND HOW MANY FIGURES DOES THE '889

11  PATENT HAVE THAT SHOW AND DESCRIBE WHAT IS CLAIMED?

12  A    THERE ARE, IN FACT, NINE FIGURES IN THIS

13  PATENT.

14  Q    TELL US ABOUT THE NINE FIGURES.

15  A    THE FIRST, AS -- THE FIRST EIGHT ARE REALLY

16  THE NORMAL FIGURES THAT YOU WOULD EXPECT TO SEE IN

17  A DESIGN PATENT.

18       THE NINTH FIGURE IS EXPLAINED AT THE

19  BOTTOM OF THE LIST ACTUALLY AS "AN EXEMPLARY

20  DIAGRAM OF THE USE OF THE ELECTRONIC DEVICE THEREOF

21  THE BROKEN LINES BEING SHOWN FOR ILLUSTRATIVE

22  PURPOSES ONLY AND FORM NO PART OF THE CLAIMED

23  DESIGN."

24  Q    OKAY.  COULD WE LOOK AT FIGURE 9, MR. LEE?

25       I TAKE IT, MR. BRESSLER, THAT THAT TEXT

```
1    YOU READ MEANS THAT APPLE WASN'T TRYING TO DISCLAIM

2    THE MAN SHOWING THIS PICTURE ACTUALLY HOLDING THE

3    DEVICE?

4    A    CORRECT.

5    Q    BUT THE DEVICE AND THE UTILITY IS WHAT'S

6    CLAIMED?

7    A    YES.

8    Q    OKAY.  LET'S LOOK AT YOUR SLIDE PDX 26.6.  IS

9    THIS THE FIRST -- IN FACT, THIS IS ALL OF THE

10   FIGURES OF THE '889 PATENT?

11   A    YES.  THIS IS A SLIDE INCLUDING ALL THE

12   FIGURES.

13   Q    OKAY.  USING THESE FIGURES OF THE '889 PATENT,

14   CAN YOU WALK THE JURY THROUGH THE DESIGN THAT IS

15   CLAIMED AND SHOWN IN THESE FIGURES?

16   A    YES.  THIS DESIGN INCLUDES AN ELECTRONIC

17   DEVICE THAT HAS A FLAT, TRANSPARENT, AS YOU CAN SEE

18   BY THE DIAGONAL LINES, AND SHINY, FLAT SURFACE THAT

19   GOES IN A RECTANGULAR FORM AS SHOWN IN THE DRAWING

20   FROM EDGE TO EDGE ACROSS THE FRONT OF THE DEVICE.

21        IT MEETS A THIN EDGE AT THE BORDER AND

22   YOU CAN SEE THROUGH THAT CLEAR MATERIAL A BORDER

23   THAT GOES AROUND THE DISPLAY THAT IS OF EQUAL WIDTH

24   ALL THE WAY AROUND.

25        AND THEN IF YOU LOOK -- I WAS LOOKING AT
```

1    FIGURES 1 AND 3.

2              IF YOU THEN LOOK AT THE OTHER FIGURES,

3    YOU CAN SEE THAT THE BACK OF THE PRODUCT IS FLAT

4    AND THAT -- OR THE BACK OF THE DESIGN IS FLAT AND

5    THAT THE SLIDES CURVE UP TO MEET THE FRONT FROM THE

6    BACK.

7    Q    AND WHAT DO THE FIGURES OF THE '889 PATENT

8    TELL US ABOUT THE OVERALL SHAPE OF THE FRONT OF THE

9    DEVICE?

10   A    THE OVERALL SHAPE OF THE FRONT OF THE DEVICE

11   IS A RECTANGLE IN THE PROPORTION THAT'S SHOWN IN

12   THE DESIGN.

13   Q    WHAT DO YOU MEAN BY "PROPORTION"?

14   A    THE LENGTH TO WIDTH RELATIONSHIP SHOULD BE --

15   SHOULD BE SEEN AS THIS OVERALL DESIGN.

16             AND IT HAS CORNERS THAT ARE RADIUS.

17   Q    NOW, IF I'VE DONE THIS RIGHT, MR. BRESSLER,

18   ONE OF THE MANY DEVICES ON THE TABLE IN FRONT OF

19   YOU SHOULD BE THE IPAD 2, WHICH IS JX 1005.  THERE

20   ARE MANY THINGS THERE.

21             HAVE YOU FOUND JX 1005?

22   A    I'M JUST CHECKING THE STICKER.  YES.

23   Q    OKAY.  AND CAN WE SEE PDX 26.7?

24             WHAT HAVE YOU DEPICTED IN SLIDE 26.7?

25   A    THIS IS A COMPARISON OF THE '889 PATENT AND

1    THE IPAD 2.

2    Q    AND WHAT DID YOU CONCLUDE FROM COMPARING THE

3    '889 PATENT TO THE IPAD 2?

4    A    I CONCLUDED THAT THE DESIGN OF THE IPAD 2 IS

5    SUBSTANTIALLY THE SAME AS THE DESIGN '889 AND WOULD

6    BE IN THE EYES OF THE ORDINARY OBSERVER.

7    Q    SO APPLE'S OWN IPAD 2 PRODUCT IS USING THE

8    DESIGN OF APPLE'S PATENT?

9    A    YES.

10   Q    OKAY.  LET'S TURN TO SAMSUNG'S PRODUCTS, AND

11   I'D LIKE YOU TO GO FIRST TO EXHIBIT PX 7 IN YOUR

12   BINDER.

13             YOU CAN PUT THE IPAD 2 ASIDE FOR NOW.

14             WHAT IS EXHIBIT PX 7?

15   A    EXHIBIT PX 7 IS A PHOTOGRAPHIC COMPILATION OF

16   ALL OF THE SAMSUNG -- OF ALL OF THE SAMSUNG PHONES

17   THAT WERE CONSIDERED IN THIS CASE.

18   Q    OKAY.  WHEN YOU SAY "CONSIDERED," DO YOU MEAN

19   CONSIDERED BY YOU?

20   A    THESE WERE THE ONES THAT WERE REVIEWED BY ME

21   RELATIVE TO THE DESIGN PATENTS.

22             MS. KREVANS:  OKAY.  YOUR HONOR, I'D MOVE

23   PX 7 INTO EVIDENCE.

24             MR. VERHOEVEN:  NO FURTHER OBJECTION.

25             THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

1049

```
 1                    (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 7,

 2                    HAVING BEEN PREVIOUSLY MARKED FOR

 3                    IDENTIFICATION, WAS ADMITTED INTO

 4                    EVIDENCE.)

 5      BY MS. KREVANS:

 6      Q    OKAY.  ALSO ON THE TABLE IN FRONT OF YOU

 7      SHOULD BE EXHIBIT JX 1019, WHICH SHOULD BE THE

 8      GALAXY S 4G.

 9      A    YES.

10      Q    DO YOU HAVE THAT, MR. BRESSLER?

11      A    I DO.

12      Q    IS THIS ONE OF THE SAMSUNG PHONES THAT YOU

13      ANALYZED?

14      A    IT IS.

15      Q    AND WHAT CONCLUSION DID YOU COME TO ABOUT

16      WHETHER THE GALAXY S 4G INFRINGED EITHER THE D'677

17      OR D'087 PATENT?

18      A    IT'S MY OPINION THAT THIS PHONE, THE DESIGN OF

19      THIS PHONE WOULD BE CONSIDERED SUBSTANTIALLY THE

20      SAME AS THE DESIGN OF THE '087 AND '677 PATENTS BY

21      AN ORDINARY OBSERVER.

22      Q    SO THIS IS A PHONE THAT YOU FOUND INFRINGING?

23      A    I FOUND IT INFRINGING, YES.

24      Q    OKAY.  LET'S START WITH THE '677.  CAN WE LOOK

25      AT YOUR SLIDE PDX 26.11?
```

```
 1              WHAT HAVE YOU DEPICTED IN YOUR SLIDE
 2    26.11, MR. BRESSLER?
 3    A     THIS IS A VISUAL COMPARISON OF THE CLAIMED
 4    DESIGN AND THE FIGURES THAT SUPPORT THAT CLAIM AND
 5    THE SAMSUNG GALAXY S 4G.
 6    Q     OKAY.  AND DO YOU HAVE THE S 4G THERE?
 7    A     I DO.
 8              MS. KREVANS:  OKAY.  YOUR HONOR, MAY I
 9    ALLOW THE JURY TO PASS THE S 4G AROUND WHILE THEY
10    SEE THIS DEPICTION OF THE PATENT FIGURES?
11              THE COURT:  THAT'S FINE.
12    BY MS. KREVANS:
13    Q     COULD YOU WALK US THROUGH THE BASIS FOR YOUR
14    OPINION THAT THE GALAXY S 4G PHONE INFRINGED THE
15    D'677 PATENT UNDER THE TEST THAT YOU EXPLAINED TO
16    US BEFORE THE BREAK?
17    A     YES.  THE GALAXY S 4G HAS A FLAT,
18    UNINTERRUPTED SURFACE THAT IS RECTANGULAR IN
19    PROPORTIONS DESCRIBED IN THE '677 PATENT; IT RUNS
20    EDGE TO EDGE ACROSS THE FRONT OF THE PHONE AND IS
21    TRANSPARENT AND IS BLACK; AND IT HAS A DISPLAY THAT
22    IS CENTERED ON THE FACE OF THE PHONE AND A LOZENGE
23    SHAPED SPEAKER SLOT, AND I FIND THOSE FEATURES TO
24    BE SUBSTANTIALLY THE SAME.
25    Q     NOW, I SEE THAT THE GALAXY S 4G HAS A LITTLE
```

1    BUMP STICKING OUT OF THE BOTTOM OF THE BACK OF THE

2    PHONE.  DO YOU SEE THAT?

3    A    I DO.

4    Q    DID YOU CONSIDER THAT IN YOUR ANALYSIS AS TO

5    WHETHER IT HAD THE SAME SIGN AS THE '677 DESIGN?

6    A    IT WAS NOT PART OF THE CLAIMED DESIGN.

7    Q    SO YOU DIDN'T CONSIDER IT?

8    A    I LOOKED AT IT BUT DID NOT CONSIDER IT AS PART

9    OF MY ANALYSIS.

10   Q    AND CAN YOU REMIND US WHY IT IS NOT PART OF

11   THE CLAIMED DESIGN, AND, THEREFORE, NOT PART OF

12   YOUR ANALYSIS?

13   A    BECAUSE IT IS THE BACK OF THE PHONE AND THIS

14   PATENT IS SPECIFICALLY FOR THE FACE OF THE PHONE.

15   Q    OKAY.  AND YOU MENTIONED WHEN YOU DESCRIBED

16   THE TEST YOU APPLIED TO US BEFORE THE BREAK THAT

17   YOU TOOK PRIOR ART INTO ACCOUNT IN DOING THAT TEST.

18        DID YOU ACCOUNT FOR -- CAN YOU EXPLAIN TO

19   THE JURY HOW YOU ACCOUNTED FOR PRIOR ART IN DOING

20   YOUR ANALYSIS OF WHETHER THIS GALAXY S 4G PHONE

21   THAT THE JURY IS LOOKING AT RIGHT NOW INFRINGED THE

22   D'677 PATENT?

23   A    YES.  THE POINT OF THIS PROCESS IS TO EXAMINE

24   THE PRIOR ART THAT YOU CAN FIND, AND PREFERABLY

25   THOSE PIECES OF PRIOR ART THAT IS MOST LIKE THE

```
 1    '677 PATENT, AND YOU COMPARE THE PATENTED DESIGN TO

 2    THE DESIGN IN THE CLOSEST PRIOR ART AND YOU TRY TO

 3    DETERMINE THE MOST SIGNIFICANT DIFFERENCES BETWEEN

 4    THE PRIOR ART AND THE PATENTED DESIGN.

 5            AND IF YOU CAN FIND THOSE SIGNIFICANT

 6    DIFFERENCES IN THE ACCUSED PRODUCT, THAT

 7    SUBSTANTIATES YOUR BELIEF THAT THEY INFRINGE.

 8    Q    OKAY.  LET'S LOOK AT YOUR SLIDE PDX 26.12.

 9            CAN YOU, USING THIS SLIDE, EXPLAIN TO THE

10    JURY HOW YOU DID THIS PRIOR ART ANALYSIS THAT YOU

11    JUST DESCRIBED?

12    A    YES.

13    Q    AND WHY DON'T YOU START WITH TELLING THE JURY

14    WHAT THE PIECE OF PRIOR ART IS THAT'S SHOWN AND WHY

15    YOU CHOSE THAT PIECE OF PRIOR ART.

16    A    THE LEFT-HAND COLUMN IS THE SAME EIGHT VIEWS

17    AS THE OTHER COLUMNS, AND IT DEPICTS WHAT'S SHOWN

18    AS THE JP '638 PATENT, WHICH IS THE PRIOR ART THAT

19    SAMSUNG CLAIMED TO BE THE CLOSEST TO THE PATENTS IN

20    QUESTION.

21    Q    SO WHEN YOU DID THIS TEST, YOU USED WHAT

22    SAMSUNG SAID WAS THEIR BEST SHOT AT PRIOR ART FOR

23    THIS PHONE?

24    A    CORRECT.

25    Q    OKAY.  AND THAT'S THE JP '638?
```

1    A    CORRECT.

2    Q    OKAY.  TELL US WHAT DIFFERENCES YOU SAW

3    BETWEEN THE DESIGN OF THE JP '638 AS SHOWN ON THE

4    LEFT AND THE DESIGN OF THE D'677 AS SHOWN IN THE

5    MIDDLE?

6    A    I BELIEVE THERE ARE SIGNIFICANT DIFFERENCES.

7    IF YOU LOOK AT THE TOP, TOP FIGURE, WHICH SHOWS THE

8    THREE-QUARTER VIEW, AND IF YOU LOOK DOWN TWO LAYERS

9    TO THE SIDE VIEWS, I BELIEVE IT IS VERY CLEAR THAT

10   THE FRONT OF THE '638 PATENT IS NOT FLAT.  IT, IN

11   FACT, IS CONVEX AND HAS SLOPING BORDERS ABOVE AND

12   BELOW THE DISPLAY THAT SLOPE BACK TOWARD THE REAR

13   OF THE PHONE FROM THE DISPLAY.

14          SO IT IS NOT FLAT.

15          IN ADDITION TO THAT, THERE IS NO

16   INDICATION IN THE PATENT THAT IT -- THAT ANY PART

17   OF IT IS TRANSPARENT OR REFLECTIVE, AND THERE IS NO

18   INDICATION THAT IT IS BLACK.

19          SO I TOOK THOSE DIFFERENCES AND BASICALLY

20   COMPARED THE GALAXY S 4G, USING JUST THOSE

21   DIFFERENCES, AND I THINK IT SUPPORTS MY PREMISE

22   THAT THE S 4G INFRINGES ON THE '677.

23   Q    OKAY.  DID YOU REACH THE CONCLUSION THAT ANY

24   OF THE OTHER SAMSUNG PHONES THAT YOU ANALYZED ALSO

25   INFRINGED THE D'677 PATENT?

```
 1    A    I DID.

 2    Q    DID YOU REACH THAT CONCLUSION FOR EVERY

 3    SAMSUNG PHONE THAT YOU LOOKED AT?

 4    A    NO, NOT AT ALL.

 5    Q    OKAY.  COULD YOU LOOK AT THE PHONES THAT ARE

 6    IN FRONT OF YOU WITH THE FOLLOWING EXHIBIT NUMBERS:

 7    THEY SHOULD, I HOPE, BE IN FRONT OF YOU:

 8              THE GALAXY S I9000, WHICH IS JX 1007; THE

 9    S II, AT&T, WHICH IS 1031; THE S II I9100, WHICH IS

10    JX 1032; THE SG EPIC 4G TOUCH, WHICH IS JX 1034;

11    THE S II SKYROCKET, JX 1035; THE INFUSE 4G, JX

12    1027; THE VIBRANT, JX 1010; THE GALAXY S II,

13    T-MOBILE, JX 1033; THE GALAXY S SHOWCASE I 500, JX

14    1017; MESMERIZE, JX 1015?

15              THE COURT:  I'M NOT ABLE TO GET THIS,

16    THESE ARE TOO FAST.

17              MS. KREVANS:  THESE ARE ALREADY IN EXCEPT

18    FOR ONE.

19              THE COURT:  I KNOW, BUT I'M RECORDING

20    WHICH WITNESS LOOKS AT WHICH EXHIBIT.

21              MS. KREVANS:  THE MESMERIZE, 1015, AND

22    GALAXY ACE, JX 1030.

23    Q    DO YOU HAVE THOSE PHONES IN FRONT OF,

24    MR. BRESSLER?

25    A    I DO.
```

```
 1              MS. KREVANS:  YOUR HONOR, I BELIEVE THAT

 2     ALL OF THESE EXCEPT FOR THE GALAXY S SHOWCASE I 500

 3     HAVE BEEN ADMITTED INTO EVIDENCE, THAT IS 1017.

 4     JUST OUT OF AN ABUNDANCE OF CAUTION, I OFFER IT AT

 5     THIS TIME IN CASE IT IS NOT ALREADY IN.

 6              THE COURT:  IT'S ADMITTED.

 7              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

 8              17, HAVING BEEN PREVIOUSLY MARKED FOR

 9              IDENTIFICATION, WAS ADMITTED INTO

10              EVIDENCE.)

11     BY MS. KREVANS:

12     Q    OKAY.  CAN YOU REACH A CONCLUSION ABOUT

13     WHETHER OR NOT EACH OF THOSE PHONES ALSO INFRINGED

14     THE D'677 PATENT, MR. BRESSLER?

15     A    YES.  I CONDUCTED THE SAME ANALYSIS ON THE

16     REST OF THESE PHONES THAT I DID ON THE S 4G AND

17     CONCLUDED THAT THEY INFRINGE THE '677 PATENT.

18     Q    AND ON WHAT BASIS DID YOU DRAW THAT

19     CONCLUSION?

20     A    IT'S MY OPINION THAT IN THE EYES OF THE

21     ORDINARY OBSERVER WHO IS FAMILIAR WITH THE PRIOR

22     ART, IF THEY WOULD INVESTIGATE, WOULD FIND THE

23     DESIGN ELEMENTS OF THE '677 PATENT IN THE DESIGN OF

24     THE GALAXY S 4G TO THE DEGREE THEY MIGHT MISTAKE

25     ONE FOR THE OTHER.
```

1    Q    AND WITH RESPECT TO THE OTHER PHONES THAT YOU

2    EXAMINED THAT ARE NOW IN FRONT OF YOU, THE PHONES

3    IN ADDITION TO THE GALAXY S 4G, DO YOU HAVE A SLIDE

4    THAT DEPICTS THOSE PHONES?

5    A    I BELIEVE SO.

6    Q    OKAY.  LET'S PUT UP PDX 26.13.

7         NOW, ON THIS SLIDE, MR. BRESSLER, YOU'RE

8    SHOWING ONLY THE FRONT VIEW OF EACH OF THE OTHER

9    PHONES THAT YOU SAY YOU FOUND INFRINGED.

10        DID YOU, IN FACT, CONSIDER ALL THE -- ALL

11   EIGHT VIEWS OF THESE PHONES AS WELL?

12   A    CORRECT.  THIS, THIS PRESENTATION WOULD NOT BE

13   APPROPRIATE FOR EVALUATING THE DESIGNS BECAUSE IT

14   DOES NOT SHOW ALL OF THE VIEWS, WHICH YOU NEED TO

15   CONSIDER.

16        HOWEVER, FROM THE STANDPOINT OF SIMPLY

17   SHOWING THE FRONT FACE, WHICH THIS PATENT HAPPENS

18   TO BE CLAIMING, I THINK IT WAS A REASONABLE WAY OF

19   PRESENTING A LIST OF PHONES.

20   Q    OKAY.  AND DID YOU CONCLUDE THAT EACH OF THE

21   PHONES ON THIS SLIDE, THAT IS, THE GALAXY SAMSUNG

22   SMART 4G; THE GALAXY S I9000; THE GALAXY ACE; THE

23   GALAXY S II AT&T; THE GALAXY S II T-MOBILE; THE

24   GALAXY S II EPIC 4G TOUCH; THE GALAXY S II

25   SKYROCKET; THE SHOWCASE; MESMERIZE; AND FASCINATE,

1    WHICH ARE THE I 500; THE INFUSE 4G; THE GALAXY S II

2    I9100; AND THE VIBRANT ALL INFRINGE THE D'677

3    PATENT?

4    A    YES.

5    Q    AND WHAT WAS THE BASIS FOR THAT CONCLUSION?

6    A    THE BASIS FOR THAT CONCLUSION WAS I BELIEVE

7    THE ORDINARY OBSERVER WOULD CONSIDER THE DESIGN OR

8    APPEARANCE OF THESE PHONES TO BE SUBSTANTIALLY THE

9    SAME AS THAT OF THE '677.

10   Q    NOW, LET'S TURN TO THE D'087 PATENT AND LET'S

11   GO BACK JUST TO THE GALAXY S 4G JUST FOR A MOMENT.

12        MR. LEE, COULD YOU PUT UP FIGURES 9

13   THROUGH 16 OF THE D'087 PATENT, WHICH IS JX 1041

14   SIDE BY SIDE SO WE CAN SEE THEM ALTOGETHER.

15        AND DO YOU HAVE THE GALAXY S -- I'M

16   SORRY.  I HAVE THE GALAXY S 4G BACK.  LET ME BRING

17   THIS BACK TO YOU, MR. BRESSLER.

18        MAY I APPROACH THE WITNESS, YOUR HONOR?

19        THE COURT:  GO AHEAD, PLEASE.

20   BY MS. KREVANS:

21   Q    NOW, YOU SAID EARLIER THAT YOU CONCLUDED THAT

22   THE GALAXY S 4G ALSO INFRINGED THE D'087 PATENT;

23   RIGHT?

24   A    THAT'S CORRECT.

25   Q    COULD YOU -- YOU CAN HOLD THE PHONE UP FOR THE

```
1     JURY IF YOU LIKE.
2              COULD YOU DESCRIBE FOR THE JURY THE BASIS
3     FOR YOUR CONCLUSION THAT THE DESIGN AS CLAIMED BY
4     THESE EIGHT FIGURES OF THE D'087 PATENT IS
5     INFRINGED BY THE GALAXY S 4G TELEPHONE?
6     A    I BELIEVE THAT, LOOKING AT THE CONTINUOUS FLAT
7     FACE THAT IS IN THE LENGTH TO WIDTH PROPORTIONS
8     DESCRIBED IN THIS PATENT AND THE CURVED CORNERS AND
9     THE CENTERED DISPLAY AND THE BEZEL, I BELIEVE ALL
10    OF THOSE ELEMENTS ARE PRESENT IN THE DESIGN OF THE
11    S 4G IN MY HAND, AND, THEREFORE, THAT THIS DEVICE
12    INFRINGES THAT PATENT.
13    Q    OKAY.  CAN YOU EXPLAIN TO THE JURORS WHERE YOU
14    ARE SEEING WHAT YOU'RE CALLING A BEZEL IN THE
15    DESIGN OF THE D'087?
16    A    YES.  AROUND THE PERIMETER OF THE RECTANGULAR
17    FACE.
18    Q    FIGURE WHICH?
19    A    YOU CAN EITHER SEE IT IN FIGURE 9 OR IN FIGURE
20    11.  YOU WILL NOTICE THAT THERE IS A BAND, IT LOOKS
21    A LITTLE LIKE A RUBBER BAND FROM THE FRONT VIEW.
22             IF YOU LOOK AT THAT AND THE SIDE VIEWS,
23    THEY WILL SHOW YOU HOW TO VIEW THE THREE-QUARTER
24    VIEW, AND THAT PAIR OF LINES RUNNING AROUND THAT
25    FACE IS A PIECE OF MATERIAL THAT IS FREQUENTLY
```

1059

1    CALLED A BEZEL.

2    Q    OKAY.  MR. LEE, COULD YOU SHOW US EXHIBIT PX

3    7, PAGE 22.

4         OKAY.  YOU'RE LOOKING NOW AT YOUR PHOTOS

5    FROM YOUR COMPILATION OF THE GALAXY S 4G.

6         DO YOU SEE ON THE FRONT FACE THE WORDS

7    T-MOBILE AND SAMSUNG?

8    A    I DO.

9    Q    DID YOU CONSIDER THOSE WORDS IN COMING TO YOUR

10   CONCLUSIONS ABOUT WHETHER ON ORDINARY OBSERVER

11   WOULD THINK THAT THE GALAXY SAMSUNG SMART 4G GAVE

12   THE SAME OVERALL IMPRESSION AS THE DESIGN OF THE

13   D'087 OR '677 PATENTS?

14   A    IT'S MY UNDERSTANDING THIS KIND OF LABELING IS

15   NOT TO BE CONSIDERED IN A DESIGN PATENT AND I

16   PRETENDED THEY WEREN'T THERE.

17   Q    SO TO DO A DESIGN PATENT INFRINGEMENT

18   ANALYSIS, YOU IGNORE THE PRODUCT NAMES?

19   A    YOU IGNORE THE PRODUCT NAMES, YES.

20   Q    OKAY.  DID YOU ACCOUNT FOR PRIOR ART IN YOUR

21   DETERMINATION OF WHETHER THE GALAXY S 4G INFRINGED

22   THE D'087 PATENT?

23   A    I DID.

24   Q    AND WHAT PIECE OF PRIOR ART DID YOU USE IN

25   DOING THAT ANALYSIS?

1    A    IT WAS THE SAME PIECE OF PRIOR ART, THE '638

2    PATENT.

3    Q    OKAY.  SO THAT'S THE PATENT WHERE THE FRONT

4    FACE STUCK OUT AND ANGLED BACK AT THE TOP AND

5    BOTTOM?

6    A    YES, THAT'S CORRECT.

7    Q    OKAY.  WHAT CONCLUSION DID YOU DRAW WHEN YOU

8    CONSIDERED NON-INFRINGEMENT ANALYSIS THE IMPACT OF

9    PRIOR ART, INCLUDING THE '638?

10    A    THE CONCLUSION I DREW WAS THAT THE DESIGN OF

11    THE S 4G WAS SUBSTANTIALLY THE SAME AND DID EXHIBIT

12    SOME OF THE DIFFERENCES BETWEEN THE '087 PATENT AND

13    THE '638 PATENT.

14    Q    OKAY.  DID YOU REACH ANY CONCLUSIONS ABOUT

15    WHETHER ANY OTHER SAMSUNG PHONES ALSO INFRINGE THE

16    D'087 PATENT?

17    A    YES, THERE WERE SEVERAL.

18    Q    OKAY.  LET ME DIRECT YOU TO SOME, BUT NOT ALL,

19    OF THE PHONES IN FRONT OF YOU.  WE HAVE TO DO A

20    LITTLE SORTING HERE.  JX 1007, WHICH IS THE

21    GALAXY S I9000; JX 1031, WHICH IS THE GALAXY S II

22    AT&T; JX 1032, WHICH IS THE GALAXY S II I9100.

23          THE COURT:  AND ON THAT ONE, IS THAT THE

24    ONE THAT YOU HAD MOVED EARLIER?  BECAUSE THAT ONE

25    WAS NOT ADMITTED DURING MR. DENISON'S TESTIMONY.

7061

```
1    THE ACTUAL EXHIBIT WASN'T AVAILABLE.
2              MS. KREVANS:  THE ONE I MOVED WAS 1017,
3    BUT IF THIS ONE DID NOT COME IN, I WILL MOVE THAT
4    AT THIS TIME, YOUR HONOR.
5              THE COURT:  OKAY.  AND THAT'S 1032?
6              MS. KREVANS:  1032.
7              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
8              1032, HAVING BEEN PREVIOUSLY MARKED FOR
9              IDENTIFICATION, WAS ADMITTED INTO
10             EVIDENCE.)
11             THE COURT:  OKAY.  THEN I HEARD YOU
12   CORRECT.  I THOUGHT YOU HAD ASKED ABOUT THE 1007.
13   THAT ONE WAS ADMITTED, BUT THIS ONE WAS NOT YET.
14             ANY OBJECTION TO, MR. VERHOEVEN?
15             MR. VERHOEVEN:  I HAVE NO OBJECTION IF IT
16   IS WHAT IT PURPORTS TO BE.  I HAVEN'T SEEN THE
17   PHYSICAL EXHIBIT, BUT IF THAT'S WHAT SHE PURPORTS
18   IT IS.
19             THE COURT:  IS THAT A JOINT EXHIBIT?
20             MS. KREVANS:  IT IS A JOINT EXHIBIT, YOUR
21   HONOR.
22             MR. BRESSLER, CAN I BORROW BACK 1032 FOR
23   A MOMENT.
24             THE COURT:  IT'S A JOINT EXHIBIT.
25   BY MS. KREVANS:
```

1062

```
 1    Q    WHILE HE'S TAKING A CHANCE TO LOOK AT THAT,
 2   MR. BRESSLER, COULD YOU ALSO HAVE IN FRONT OF YOU
 3   1034 --
 4             MR. VERHOEVEN:  NO OBJECTION, YOUR HONOR.
 5             THE COURT:  ALL RIGHT.  THAT'S ADMITTED.
 6             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
 7             1034, HAVING BEEN PREVIOUSLY MARKED FOR
 8             IDENTIFICATION, WAS ADMITTED INTO
 9             EVIDENCE.)
10             MS. KREVANS:  OKAY.  THANK YOU,
11   MR. VERHOEVEN.
12    Q    1034, WHICH IS THE GALAXY S II EPIC 4G TOUCH;
13   1035, WHICH IS THE GALAXY S II SKYROCKET; 1027, THE
14   INFUSE 4G; AND 1010, THE VIBRANT.
15             MAY I RETURN THIS TO THE WITNESS, YOUR
16   HONOR?
17             THE COURT:  YES.
18             MS. KREVANS:  THAT'S 1032.
19             THE COURT:  NO.  THE VIBRANT IS 1010.
20             MS. KREVANS:  I'M SORRY, YOUR HONOR.  I
21   WAS TELLING THE WITNESS THAT I HAVE RETURNED THE
22   1032 TO HIM.  THE VIBRANT IS 1010.
23    Q    WHAT CONCLUSION DID YOU DRAW, MR. BRESSLER,
24   ABOUT WHETHER THIS ADDITIONAL GROUP OF SAMSUNG
25   PHONES ALSO INFRINGED THE '087 PATENT?
```

1063

```
1    A    IT'S MY OPINION THAT THESE INFRINGE THE '087

2    PATENT.

3    Q    AND WHAT WAS THE BASIS FOR YOUR CONCLUSION

4    THAT THESE SEVEN PHONES ALSO INFRINGE THE '087

5    PATENT?

6    A    IT'S MY OPINION THAT THE OVERALL IMPRESSION AN

7    ORDINARY OBSERVER WOULD HAVE OF THESE PHONES WOULD

8    BE THE SAME AS THEIR IMPRESSION OF THE DESIGN

9    REPRESENTING THE '087 PATENT.

10   Q    OKAY.  MR. LEE, COULD YOU PUT UP THE REVISED

11   VERSION OF PDX 26.10?

12        WHAT IS SHOWN ON 26.10, MR. BRESSLER?

13   A    THIS IS A SIMILAR DEPICTION AS ONE OF THE

14   PRIOR SLIDES OF THE GROUP OF PHONES THAT I FOUND

15   INFRINGING ON THE '087 PATENT.

16   Q    AND WHEN YOU DID YOUR INFRINGEMENT ANALYSIS

17   FOR THESE PHONES, THE GALAXY S 4G AND THE OTHER

18   SEVEN, DID YOU CONSIDER EVERY VIEW OF THE PHONES OR

19   JUST THE VIEWS WE SEE ON THIS SLIDE?

20   A    I CONSIDERED EVERY VIEW IN THE PATENT AND OF

21   THE PHONES.

22   Q    OKAY.  AND DID YOU ALSO CONSIDER THE PRIOR

23   ART?

24   A    I DID.

25   Q    OKAY.  WHAT WAS YOUR OVERALL CONCLUSION?
```

1    A    MY OVERALL CONCLUSION WAS THAT THESE FOUR

2    ADDITIONAL PHONES DO INFRINGE THE '087 PATENT.

3    Q    OKAY.  THERE'S --

4    A    I'M SORRY.  EIGHT ADDITIONAL PHONES.

5    Q    OKAY.  SO NOT TO BE CONFUSING WITH GALAXY S 4G

6    IS ON THE SLIDE AND NOW I'M ASKING ABOUT SEVEN

7    OTHERS.

8    A    OKAY.  JUST TO BE PERFECTLY CLEAR, THERE ARE

9    SEVEN OTHER PHONES THAT ARE BEING SHOWN THAT WOULD

10   BE INCLUDED IN MY OPINION THAT THE TOTAL OF EIGHT

11   INFRINGE ON THE '087 PATENT.

12   Q    OKAY.  LET'S TURN FOR A MOMENT TO TABLETS.

13          MAY I APPROACH THE WITNESS, YOUR HONOR,

14   WITH TWO ADDITIONAL EXHIBITS?

15          THE COURT:  GO AHEAD, PLEASE.

16   BY MS. KREVANS:

17   Q    MR. BRESSLER, I'M GOING TO HAND YOU 1037 AND

18   1028.  THIS IS THE GALAXY 10.1 AND LTE.

19          CAN YOU TELL THE JURY WHAT EXHIBIT 1037

20   AND 1038 ARE?

21   A    LET ME MAKE SURE.  1037 IS THE 10.1 WI-FI.

22   Q    THAT'S THE SAMSUNG TABLET PRODUCT?

23   A    YES.  I'M SORRY, IT'S THE SAMSUNG TABLET 10.1.

24   Q    OKAY.  AND WHAT'S 1038?

25   A    AND 1038 IS THE GALAXY TAB 10.14G LTE.

1    Q    OKAY.  DID YOU ANALYZE THESE TWO PRODUCTS?

2    A    I DID.

3    Q    ARE THERE -- AND WHAT WAS THE ANALYSES THAT

4    YOU PERFORMED?

5    A    I PERFORMED --

6    Q    JUST BRIEFLY?

7    A    PARDON ME?

8    Q    BRIEFLY?

9    A    BRIEFLY, I PERFORMED SIMILAR ANALYSES TO THAT

10   WHICH I DID ON THE PHONES.

11   Q    OKAY.  DID YOU MAKE A DETERMINATION OF WHETHER

12   THESE TWO PRODUCTS INFRINGED THE D'889 APPLE DESIGN

13   PATENT?

14   A    I BELIEVE BOTH OF THESE PRODUCTS DO INFRINGE

15   THE D'889 DESIGN PATENT.

16   Q    OKAY.  CAN YOU JUST HOLD BOTH OF THEM UP FOR A

17   MOMENT SO THE JURY CAN SEE THE TWO OF THEM?

18   A    (INDICATING.)

19   Q    AND I TAKE IT THE PRODUCTS LOOK LIKE THEY DID

20   WHEN YOU EXAMINED THEM, EXCEPT THAT THEY -- THEY

21   DIDN'T HAVE EXHIBIT STICKERS ON THEM?

22   A    CORRECT.

23   Q    OKAY.  ARE THERE ANY DIFFERENCES BETWEEN THESE

24   TWO GALAXY TAB 10.1 MODELS THAT WERE RELEVANT TO

25   THE INFRINGEMENT ANALYSIS THAT YOU PERFORMED?

```
 1    A    NO, THERE WERE NO DIFFERENCES.  THEY'RE

 2    APPROPRIATE TO CONSIDER UNDER A DESIGN PATENT.

 3    Q    OKAY.  WHAT -- WHAT DIFFERENCES, IF ANY, DID

 4    YOU ACTUALLY OBSERVE BETWEEN THE TWO PRODUCTS?

 5    A    THE COLOR OF THE BACKS.  THEY'RE SLIGHTLY

 6    DIFFERENT.

 7    Q    OKAY.

 8    A    BUT THAT WAS THE ONLY OTHER DIFFERENCE THAT I

 9    COULD SEE IN TERMS OF THE APPEARANCE.

10    Q    ALL RIGHT.  LET'S LOOK AT YOUR SLIDE PDX

11    26.14.  WHAT IS DEPICTED ON SLIDE 26.14?

12    A    THIS IS A COMPARISON OF THE EIGHT VIEWS OF --

13    EIGHT OF THE NINE VIEWS OF THE '889 PATENT AND THE

14    EIGHT VIEWS OF THE GALAXY TAB 10.1.

15    Q    OKAY.  IS THIS -- THIS HAPPENS TO BE THE

16    GALAXY TAB 10.1, THE WI-FI?

17    A    ACTUALLY, I BELIEVE THAT THAT ONE SHOWS IT

18    BEING A VERIZON.

19    Q    OKAY.  DOES THAT -- IS THAT 1037 OR 1038?

20    A    THAT'S 1038.

21    Q    OKAY.  WHAT IS YOUR OPINION WITH RESPECT TO

22    WHETHER THE D'889 PATENT DESIGN IS INFRINGED BY THE

23    GALAXY TAB 10.1 PRODUCTS?

24    A    I BELIEVE THAT THOSE PRODUCTS ARE INFRINGING

25    ON THE '889 PATENT.
```

1    Q    OKAY.  AND WHAT WAS THE BASIS FOR YOUR

2    CONCLUSION?  AND MAYBE YOU CAN WALK US THROUGH THE

3    FIGURES OF THE PATENT TO EXPLAIN THAT.

4    A    CERTAINLY.  I BELIEVE THAT BOTH THE GALAXY

5    TAB 10.1 PRODUCTS AND THE '889 DESIGN INCLUDE THE

6    OVERALL IMPRESSION THAT AN ORDINARY OBSERVER WOULD

7    HOLD OF A CONTINUOUS, FLAT, CLEAR GLASS FRONT

8    SURFACE WHICH, IN MY ANALYSIS, IS A MAJOR DEPARTURE

9    FROM THE PRIOR ART.

10            AND THEY WOULD ALSO NOTICE THAT IT IS

11   RECTANGULAR IN FORM, CLOSELY RESEMBLING THE '889

12   FIGURES AS DRAWN.

13            THEY WOULD HAVE CURVED CORNERS.  AND THAT

14   THEY ARE FLAT ON THE BACK WITH CURVING SIDES UP

15   TOWARD THE FRONT EDGE.

16   Q    AND --

17   A    OH, I'M SORRY.  AND I LEFT OUT THAT THERE IS

18   AN EQUILATERAL BAND VISIBLE THROUGH THE GLASS, OR

19   THROUGH THE TRANSPARENCY, EQUALLY ALL THE WAY

20   AROUND THE DISPLAY.

21   Q    CAN YOU POINT OUT TO THE JURY WHERE IN THE

22   FIGURES OF THE '889 PATENT YOU SEE THAT EQUILATERAL

23   BAND THAT FORMS THE BORDER ALL THE WAY AROUND THE

24   FRONT FACE?

25   A    IF FIGURES 1 AND FIGURE 3.

1    Q    OKAY.  AND IS EQUILATERAL YOUR WAY OF TELLING

2    US THAT THE BORDER IS THE SAME THICKNESS ALL THE

3    WAY AROUND?

4    A    CORRECT.

5    Q    OKAY.  CAN YOU HOLD UP ONE OF THOSE GALAXY

6    TABS SO THAT THE JURY CAN LOOK AT THE REAL THING,

7    BECAUSE THE PHOTOS ARE SOMETIMES A LITTLE

8    DIFFICULT.

9    A    (INDICATING.)

10   Q    OKAY.  MAYBE SHOW THEM THE BACK FROM ALL

11   ANGLES AS WELL.

12   A    (INDICATING.)

13   Q    OKAY.  CAN YOU ACCOUNT FOR THE PRIOR ART IN

14   YOUR DETERMINATION THAT YOU BELIEVE THAT THE GALAXY

15   TAB 10.1, BOTH MODELS, INFRINGE THE D'889 PATENT?

16   A    I DID.

17   Q    AND HOW DID YOU ACCOUNT FOR THE PRIOR ART?

18   A    IN THE SAME WAY THAT I ANALYZED IT FOR THE TWO

19   PHONE PATENTS.

20   Q    AND WHAT DID YOU CONCLUDE?

21   A    I CONCLUDED THAT THE GALAXY 10.1 WAS

22   SUBSTANTIALLY MORE SIMILAR TO THE '889 PATENT THAN

23   TO ANY OF THE PRIOR ART.

24   Q    OKAY.  COULD YOU LOOK AT THE BACK OF ONE OF

25   THE GALAXY TAB 10.1'S FOR ME?

```
 1    A    YES.

 2    Q    IS THE ENTIRE BACK, WHEN YOU EXAMINE IT

 3    CAREFULLY, ALL MADE OF THE SAME SINGLE PIECE OF

 4    MATERIAL?

 5              MR. VERHOEVEN:  OBJECTION.  LEADING.

 6              THE COURT:  SUSTAINED.

 7    BY MS. KREVANS:

 8    Q    CAN YOU DESCRIBE FOR US THE COMPOSED -- WHAT

 9    THE BACK OF THE GALAXY TAB 10.1 IS COMPOSED OF?

10    A    YES.  THERE APPEARS TO BE A BAND THAT GOES

11    AROUND THE EDGE, WHICH GIVES ME AN EDGE AT THE

12    FRONT; AND IT DOES HAVE A PARTING LINE AROUND THE

13    CAMERA AREA; AND THE REST OF IT IS A SINGLE PART

14    THAT IS FLAT AND CURVED.

15              SO I BELIEVE THE OVERALL IMPRESSION IS

16    THAT THE BACK IS FLAT, AND IT CURVES UP TOWARDS THE

17    FRONT.

18    Q    WHEN YOU WERE TALKING ABOUT THE BACK -- AND,

19    AGAIN, I'LL ASK YOU TO HOLD THE BACK UP TO THE JURY

20    SO THEY CAN SEE IT.  YOU USED THE TERM "PARTING

21    LINE."  WHAT IS A PARTING LINE?

22    A    PARTING LINE IS A TERM THAT'S USED IN OUR

23    FIELD TO DESCRIBE WHERE ONE PIECE OF MATERIAL MEETS

24    ANOTHER PIECE OF MATERIAL.  SO IT'S ALMOST

25    IMPOSSIBLE -- IF YOU LOOK FOR IT, YOU'LL SEE THAT
```

```
 1    THERE'S A LINE THERE, BUT IT DOESN'T CHANGE THE

 2    OVERALL FORM UNLESS IT CHANGES LEVELS.

 3              MS. KREVANS:  YOUR HONOR, WE WOULD MOVE

 4    JX 1037 INTO EVIDENCE AT THIS TIME.

 5              THE COURT:  ANY OBJECTION?

 6              MR. VERHOEVEN:  I'M SORRY.  I --

 7              MS. KREVANS:  1037.

 8              THE COURT:  WAIT A MINUTE.  THAT'S THE

 9    TAB 10.1 WI-FI?

10              MS. KREVANS:  I THINK OFFICIALLY IT'S THE

11    TAB 10.1 IS THE 1037.

12              THE COURT:  THAT'S BEEN ADMITTED.

13              MS. KREVANS:  10.1 LTE IS 1038.

14              THE COURT:  THEY'VE BOTH BEEN ADMITTED

15    ALREADY.

16              MS. KREVANS:  OKAY.

17    Q    LET'S TURN TO A DIFFERENT TOPIC, MR. BRESSLER.

18              COULD WE LOOK AT EXHIBIT PX 3 IN YOUR

19    BINDER.

20              AND, YOUR HONOR, FOR THE RECORD, THIS IS

21    AN EXHIBIT AS TO WHICH THERE WERE OBJECTIONS THAT

22    SOME OF THE CONTENTS WERE IMPROPER AND THIS IS THE

23    REVISED ONE THAT WE SUBMITTED IN RESPONSE.

24              THE COURT:  OKAY.  GO AHEAD.

25              (PAUSE IN PROCEEDINGS.)
```

```
1              THE COURT:  I'M SORRY.  WHAT ARE YOU
2     WAITING ON?
3              MS. KREVANS:  I JUST WANTED TO MAKE SURE
4     YOUR HONOR WAS SATISFIED WITH THE REVISED EXHIBIT.
5              THE COURT:  I'M FINE.
6              MR. VERHOEVEN:  WE HAVE AN OBJECTION IN
7     THAT THESE WERE NOT IDENTIFIED ON THIS IMAGE, THEY
8     WERE NOT IDENTIFIED AS ALTERNATIVE DESIGNS
9     PREVIOUSLY.  THEY WEREN'T PRODUCED FOR INSPECTION,
10    PHYSICAL INSPECTION DURING DISCOVERY, YOUR HONOR.
11             MS. KREVANS:  YOUR HONOR, THERE ALREADY
12    WERE NUMEROUS OBJECTIONS TO THIS EXHIBIT WHICH --
13             THE COURT:  IT'S OVERRULED.  GO AHEAD.
14             MS. KREVANS:  OKAY.
15    Q    CAN YOU --
16             WELL, YOUR HONOR, WE'D MOVE PX 3 INTO
17    EVIDENCE.
18             MR. VERHOEVEN:  SAME OBJECTIONS.
19             THE COURT:  UNDERSTOOD.  IT'S ADMITTED.
20             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 3,
21             HAVING BEEN PREVIOUSLY MARKED FOR
22             IDENTIFICATION, WAS ADMITTED INTO
23             EVIDENCE.)
24             THE COURT:  GO AHEAD.
25    BY MS. KREVANS:
```

1    Q    MR. BRESSLER, CAN YOU BRIEFLY DESCRIBE FOR THE

2    JURY WHAT YOU ARE SHOWING ON EACH PAGE OF EXHIBIT

3    PX 3?

4    A    YES.  THIS EXHIBIT IS A SERIES OF SLIDES THAT

5    I PUT TOGETHER TO SHOW KIND OF AN OVERVIEW OF THE

6    TIMELINE OF THE PROGRESS OF THE DESIGN OF SAMSUNG'S

7    PHONES BEFORE AND AFTER THE INTRODUCTION OF THE

8    IPHONE.

9    Q    SO ON THE FIRST PAGE SHOWS SOME PHONES BEFORE

10   THE IPHONE.  IS THIS EVERY SAMSUNG PHONE THAT CAME

11   OUT BETWEEN 2004 AND 2007?

12   A    NO.  THIS IS JUST A SELECTION THAT I BELIEVE

13   IS REPRESENTATIVE OF THE DESIGN AT THE TIME, WHICH

14   INCLUDE, AS YOU CAN SEE, SORT OF FRONT SURFACES

15   THAT ARE NOT TOTALLY FLAT, PROMINENT BUTTONS, AND

16   IN ONE CASE, IT INCLUDES A YOUR TEE KEYBOARD ON THE

17   FRONT AND SHARP CORNERS AND THREE OF THEM HAVE

18   ANTENNAS STICKING UP.

19   Q    WHICH ONE IS THE ONE WITH QWERTY KEYBOARD?

20   A    THE BLACKJACK I 607.

21   Q    OKAY.  CAN YOU TELL US WHAT YOU'VE SHOWN ON

22   THE SECOND PAGE OF PX 3?

23   A    THE SECOND PAGE IS AN ADDITIONAL SELECTION OF

24   MANY, A SMALL SELECTION OF MANY OF SAMSUNG'S PHONES

25   THAT DO SHOW THAT THEY ARE, THAT THEIR DISPLAYS ARE

 1   GETTING BIGGER AND THAT THEY'RE USING FEWER BUTTONS

 2   ON THE FRONT OF THE PHONE, BUT THAT NONE OF THEM

 3   LOOK SUBSTANTIALLY THE SAME AS THE IPHONE.

 4   Q    AND I TAKE IT YOU DON'T THINK ANY OF THESE

 5   LOOK SUBSTANTIALLY THE SAME AS THE D'677 OR '087

 6   PATENTS?

 7   A    CORRECT.

 8   Q    OKAY.  WHAT HAVE YOU SHOWN ON THE THIRD PAGE

 9   OF EXHIBIT PX 3?

10   A    THE THIRD PAGE IS A DEPICTION OF THE PHONES

11   THAT, BEGINNING WITH THE GALAXY S I9000 IN 2010

12   BEGAN THE INTRODUCTION OF A LINE OF WHAT I BELIEVE

13   IS THE GALAXY LINE OF PHONES THAT WE'VE BEEN

14   CONSIDERED AND WHICH I CONSIDERED INFRINGE THE

15   APPLE PATENTS.

16   Q    CAN YOU TURN IN YOUR BINDER TO EXHIBIT PX 174.

17   IS PX 174 A DOCUMENT THAT YOU CONSIDERED IN

18   CONNECTION WITH THE OPINIONS THAT YOU FORMED IN

19   THIS CASE?

20   A    IT IS.

21          MS. KREVANS:  AND YOUR HONOR, WE'D MOVE

22   PX 174.  THIS IS THE DOCUMENT --

23          THE COURT:  I KNOW.  I KNOW.  BUT I JUST

24   WANT TO GIVE MR. VERHOEVEN AN OPPORTUNITY TO --

25   SAME OBJECTION AS BEFORE, MR. VERHOEVEN?

```
 1              MR. VERHOEVEN:  JUST ONE SECOND.  I'M

 2    GOING ALONG AS FAST AS I CAN, YOUR HONOR.  I'M

 3    TURNING TO IT.

 4              I THINK WE WITHDREW OUR OBJECTION TO

 5    THIS, DIDN'T WE, MS. KREVANS?  YES, WE WITHDREW OUR

 6    OBJECTION.

 7    BY MS. KREVANS:

 8    Q    OKAY.  MR. BRESSLER, WHAT IS PX 174?

 9    A    PX 174 IS AN ARTICLE FROM WIRED MAGAZINE,

10    GADGET LAB, THAT IS ENTITLED "FIRST LOOK:  SAMSUNG

11    VIBRANT RIPS OFF IPHONE 3G DESIGN."

12    Q    OKAY.  IF WE COULD SCROLL DOWN A LITTLE BIT IN

13    THIS DOCUMENT, MR. LEE, SO WE CAN SEE THE TEXT

14    UNDER THE PICTURE.

15              WHAT PORTION OF THIS TEXT DID YOU FIND

16    RELEVANT TO THE OPINIONS THAT YOU FORMED IN THIS

17    CASE, MR. BRESSLER?

18    A    THE FIRST SENTENCE AND THE NEXT TWO SENTENCES

19    IN THE SECOND PARAGRAPH.

20    Q    OKAY.  COULD YOU READ THEM TO THE JURY,

21    PLEASE?

22    A    SURE.  "SAMSUNG'S LATEST IPHONE, THE VIBRANT,

23    HAS THE BODY OF AN IPHONE AND THE BRAINS OF AN

24    ANDROID.

25              "THE VIBRANT'S INDUSTRIAL DESIGN IS
```

1075

```
 1    SHOCKINGLY SIMILAR TO THE IPHONE 3G.  THE ROUNDED

 2    CURVES OF THE CORNERS, THE CANDYBAR SHAPE, THE

 3    GLOSSY, BLACK FINISH AND THE CHROME-COLORED

 4    METALLIC BORDER AROUND DISPLAY."

 5    Q    HOW DID THE STATEMENTS BY THIS REVIEWER IN

 6    WIRED MAGAZINE THAT HE THOUGHT THIS PHONE LOOKED

 7    LIKE THE DESIGN OF THE IPHONE RELATE TO YOUR

 8    OPINIONS ABOUT THAT TOPIC?

 9              MR. VERHOEVEN:  OBJECTION, YOUR HONOR.

10    WE'VE ALREADY TALKED ABOUT LIMITING INSTRUCTIONS

11    WITH RESPECT TO THESE PRESS ARTICLES AND NOW THIS

12    QUESTIONING IS GOING BEYOND THE LIMITING -- INTO

13    THE AREA OF THE LIMITATION.

14              THE COURT:  SUSTAINED.

15    BY MS. KREVANS:

16    Q    HOW DID THE STATEMENTS BY THIS REVIEWER RELATE

17    TO THE OPINIONS YOU FORMED IN THIS CASE,

18    MR. BRESSLER?

19              MR. VERHOEVEN:  SAME OBJECTION.

20              MS. KREVANS:  YOUR HONOR, THEY'RE --

21              MR. VERHOEVEN:  THIS IS BEING USED IN

22    VIOLATION OF THE LIMITING INSTRUCTION.

23              MS. KREVANS:  YOUR HONOR, THERE IS NO

24    LIMITING INSTRUCTION THAT COMPLETELY BARS THE USE

25    OF THIS DOCUMENT AND IT DOES RELATE TO HIS OPINION
```

1076

```
1     AND I'M GIVING HIM AN OPPORTUNITY TO EXPLAIN HOW.

2              THE COURT:  WELL, YOU'RE ASKING HIM ABOUT

3     THE CONTENT OF THIS AND WHETHER IT'S FOR THE TRUTH.

4     SO IT'S SUSTAINED.

5              GO ON TO ANOTHER LINE OF QUESTIONING,

6     PLEASE.

7     BY MS. KREVANS:

8     Q    MR. BRESSLER, DID THE CONTENTS OF THIS ARTICLE

9     IN ANY WAY CONFIRM TO YOU YOUR VIEWS ABOUT WHAT AN

10    ORDINARY OBSERVER WOULD BELIEVE WHEN THEY LOOKED AT

11    THE VISUAL IMPRESSION OF THE IPHONE?

12             MR. VERHOEVEN:  SAME OBJECTION, YOUR

13    HONOR.

14             THE COURT:  SUSTAINED.

15    BY MS. KREVANS:

16    Q    COULD YOU LOOK AT PX 4 IN YOUR BINDER,

17    MR. BRESSLER?  WHAT IS EXHIBIT PX 4, MR. BRESSLER?

18    YOU HAVE TO FIRST IDENTIFY IT.

19    A    OH, I'M SORRY.  IT IS A PHOTOGRAPHIC

20    PRESENTATION COMPARING THE SAMSUNG Q1 PRODUCT PRIOR

21    TO THE INTRODUCTION OF THE IPADS, IPADS, AND THEN

22    THE DESIGN OF THE SAMSUNG PRODUCTS AFTER THE IPAD

23    INTRODUCTION.

24    Q    AND WHAT DOES THE SECOND PAGE GENERALLY SHOW?

25    A    THE SECOND PAGE SHOWS A -- AN ASSORTMENT OF
```

1077

```
 1    DESIGNS FOR TABLET COMPUTERS THAT WERE AVAILABLE

 2    FROM OTHER COMPANIES PRIOR TO THE INTRODUCTION OF

 3    THE IPAD.

 4              THE CENTER COLUMN SHOWS THE IPAD AND

 5    SAMSUNG PRODUCTS.

 6              AND THE THIRD COLUMN SHOWS A SAMPLING OF

 7    OTHER DESIGNS THAT WOULD BE PERFECTLY ADEQUATE FOR

 8    USE IN TABLET COMPUTERS.

 9              MS. KREVANS:  YOUR HONOR, WE WOULD MOVE

10    THE ADMISSION OF PX 4.

11              MR. VERHOEVEN:  YOUR HONOR, WE OBJECT TO

12    THIS.  AND WE PREVIOUSLY OBJECTED AND YOU SUSTAINED

13    OUR OBJECTION AS TO THIS.

14              MS. KREVANS:  YOUR HONOR, THE OBJECTION

15    WAS SUSTAINED WITH THE PROVISO THAT APPLE COULD

16    RESUBMIT TAKING OUT --

17              THE COURT:  I UNDERSTAND.  THAT'S

18    OVERRULE.

19              GO AHEAD.

20              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 4,

21              HAVING BEEN PREVIOUSLY MARKED FOR

22              IDENTIFICATION, WAS ADMITTED INTO

23              EVIDENCE.)

24              MR. VERHOEVEN:  YOUR HONOR, JUST FOR THE

25    RECORD, THEY DIDN'T -- OVEN THE SECOND PAGE OF THIS
```

```
 1    EXHIBIT, THE LEFT-HAND TWO COLUMNS, THEY DID NOT
 2    REMOVE THOSE.
 3              MS. KREVANS:  YOUR HONOR, WE REMOVED
 4    EVERYTHING THAT WAS NOT IN MR. BRESSLER'S REPORT,
 5    WHICH WAS THE OBJECTION.
 6              AND ON THE LEFT-HAPPENED SIDE, WE
 7    CORRECTED A DATE THAT WAS WRONG COMPARED TO HIS
 8    REPORT.
 9              THE COURT:  ALL RIGHT.  OVERRULED.  GO
10    AHEAD.
11              MS. KREVANS:  SO IS THE DOCUMENT
12    ADMITTED, YOUR HONOR?
13              THE COURT:  YES.
14              MS. KREVANS:  THANK YOU.
15    Q    OKAY.  COULD YOU TELL THE JURY WHAT WE'RE
16    SEEING ON THE FIRST PAGE OF PX 4?
17    A    OH, I'M SORRY.  I THOUGHT I DID ALREADY.  YOU
18    WANT ME TO DO IT AGAIN?
19    Q    YES, THANK YOU.
20    A    I APOLOGIZE.
21              BRIEFLY, THE LEFT-HAND COLUMN IS A
22    PICTURE OF THE SAMSUNG Q1 THAT WAS IN THE MARKET
23    BEFORE THE APPLE PRODUCTS.  THE CENTER COLUMN IS
24    THE APPLE TABLET PRODUCTS; AND THE RIGHT-HAND
25    COLUMN IS THE SAMSUNG TABLET PRODUCTS.
```

1    Q    AND COULD WE SEE THE SECOND PAGE, MR. LEE?

2         WHAT HAVE YOU DEPICTED ON THE SECOND PAGE

3    OF EXHIBIT PX 4?

4    A    AGAIN, THE LEFT-HAND COLUMN IS ALTERNATIVE

5    DESIGNS THAT WERE ON THE MARKET BEFORE THE

6    INTRODUCTION OF THE IPAD; AND THE CENTER COLUMN

7    IS -- SHOWS THE IPAD PRODUCTS AND THE SAMSUNG

8    PRODUCTS; AND THEN THE RIGHT-HAND COLUMN SHOWS

9    ALTERNATIVE DESIGNS THAT ARE CONTEMPORARY TO THESE

10   PRODUCT, TO THE CENTER PRODUCTS.

11   Q    WHEN YOU SAY, "ALTERNATIVE DESIGNS," WHAT DO

12   YOU MEAN?

13   A    I MEAN THAT THEY ARE APPEARANCES FOR TABLET

14   COMPUTERS THAT COULD BE USED FOR A TABLET COMPUTER

15   THAT WOULD PROVIDE THE SAME FUNCTIONS.

16   Q    SAME FUNCTIONS AS WHAT?

17   A    SAME FUNCTIONS AS THE IPAD SAME FUNCTION AS

18   THE SAMSUNG TABLET.

19   Q    IN THE MIDDLE OF THE SECOND PAGE, WHAT'S THAT

20   THING AT THE TOP THAT SAYS MAY 2006, SAMSUNG Q1?

21   A    THAT IS THE SAME PRODUCT FROM THE PAGE BEFORE,

22   WHICH IS THEIR OFFERING IN 2006.

23   Q    "THEIR" BEING SAMSUNG'S?

24   A    YES.

25   Q    OKAY.  COULD YOU LOOK IN YOUR BINDER AT

1    EXHIBIT PX 173.

2              THE COURT:  THIS SHOULD BE THE LAST

3    QUESTION BEFORE THE LUNCH BREAK.

4              MS. KREVANS:  CERTAINLY, YOUR HONOR.

5    Q    IS PX 173 A DOCUMENT YOU CONSIDERED IN THE

6    COURSE OF FORMING YOUR OPINIONS IN THE CASE?

7    A    YES.

8              MS. KREVANS:  YOUR HONOR, WE'D MOVE PX

9    173.

10             MR. VERHOEVEN:  YOUR HONOR, THIS IS ALSO

11   AN EXHIBIT THAT WAS SUBJECT TO A LIMITING

12   INSTRUCTION.  NO FURTHER OBJECTION, BUT I'M JUST

13   REMINDING THE COURT THIS IS SUBJECT TO A LIMITING

14   INSTRUCTION.

15             THE COURT:  THAT'S RIGHT.  THIS IS NOT

16   OFFERED FOR THE TRUTH OF WHAT'S IN THE ACTUAL

17   ARTICLE, BUT YOU CAN CONSIDER IT FOR OTHER

18   PURPOSES.  IT'S ADMITTED.

19             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

20             173 HAVING BEEN PREVIOUSLY MARKED FOR

21             IDENTIFICATION, WAS ADMITTED INTO

22             EVIDENCE.)

23   BY MS. KREVANS:

24   Q    OKAY.  CAN WE LOOK AT EXHIBIT PX 173.  GREAT.

25             WHAT IS EXHIBIT PX 173, MR. BRESSLER?

```
1    A    THIS IS AN ARTICLE FROM P.C. WORLD ENTITLED
2    "SAMSUNG GALAXY TAB 10.1 WI-FI" AND IT -- COLON, "A
3    WORTHY RIVAL TO THE IPAD 2."
4    Q    OKAY.  CAN WE SEE --
5              MR. VERHOEVEN:  YOUR HONOR, I OBJECT TO
6    FURTHER QUESTIONING ON THIS WITH THIS PARTICULAR
7    WITNESS BECAUSE THE ONLY PURPOSE I CAN ENVISION
8    THAT THESE QUESTIONS WOULD GO TO WOULD BE IN
9    VIOLATION OF A LIMITING INSTRUCTION.
10             THE COURT:  DO YOU HAVE MORE QUESTIONS
11   ABOUT THIS EXHIBIT?
12             MS. KREVANS:  I HAVE ONE MORE QUESTION,
13   YOUR HONOR.
14             THE COURT:  WHAT IS IT?
15             MS. KREVANS:  I WANT TO ASK THE WITNESS
16   TO POINT OUT A PORTION OF THE TEXT IN THE ARTICLE
17   TO THE JURY.
18             THE COURT:  GO AHEAD, BUT IT'S SUBJECT TO
19   THE SAME INSTRUCTION THAT YOU'RE NOT TO CONSIDER
20   THIS FOR THE TRUTH OF WHAT'S IN THE ARTICLE ITSELF.
21   BY MS. KREVANS:
22   Q    OKAY.  IF WE COULD LOOK AT THE SECOND PAGE,
23   COULD YOU READ FOR THE JURY WHAT IS SET OUT IN THE
24   SECOND PARAGRAPH OF THIS ARTICLE ON THIS SECOND
25   PAGE.
```

1082

```
 1              MR. VERHOEVEN:  SAME OBJECTION, YOUR

 2     HONOR.

 3              THE COURT:  GO AHEAD.

 4              THE WITNESS:  "IN MY HANDS-ON TESTING,

 5     THE TAB 10.1 ACHIEVED PERHAPS ITSELF BEST DESIGN

 6     COMPLIMENT AN ANDROID TABLET COULD HOPE FOR --

 7     OFTEN BEING MISTAKEN BY PASSERS-BY (INCLUDING APPLE

 8     IPAD USERS) FOR AN IPAD 2.  THE CONFUSION IS

 9     UNDERSTANDABLE WHEN YOU SEE AND HOLD THE TAB 10.1

10     FOR THE FIRST TIME."

11              MS. KREVANS:  THANK YOU, MR. BRESSLER.

12              IS THIS THE TIME THAT YOUR HONOR WOULD

13     LIKE TO TAKE A BREAK?

14              THE COURT:  THAT'S FINE.  IT'S 12:05, AND

15     SO WE'LL TAKE AN HOUR LUNCH BREAK.  I'LL SEE YOU AT

16     1:00 O'CLOCK.  AGAIN, PLEASE KEEP AN OPEN MIND AND

17     DON'T TALK TO ANYONE ABOUT THE CASE AND PLEASE

18     DON'T RESEARCH ANYTHING ABOUT THE CASE.  OKAY.

19     THANK YOU.

20              AND IF YOU COULD LEAVE YOUR JURY

21     NOTEBOOKS IN THE JURY ROOM WHEN YOU GO OUT TO

22     LUNCH.  THANK YOU.

23              (WHEREUPON, THE FOLLOWING PROCEEDINGS

24     WERE HELD OUT OF THE PRESENCE OF THE JURY:)

25              THE COURT:  YOU CAN STEP DOWN.
```

1083

```
1              OKAY.  THE RECORD SHOULD REFLECT THE
2    JURORS HAVE LEFT THE COURTROOM.
3              IT WOULD BE VERY HELPFUL IF THE PARTIES
4    COULD GIVE THE COURT ALL OF THE EXPERT REPORTS,
5    THOSE WERE PRESENTED TO JUDGE GREWAL, BUT NOT
6    BEFORE ME, SO I DON'T HAVE THEM AND IT WOULD BE
7    VERY HELPFUL IN RULING ON YOUR EVIDENTIARY
8    OBJECTIONS.
9              SO CAN I GET SOMETHING OVER THE LUNCH
10   HOUR OF ALL OF THE EXPERT REPORTS IN THE CASE, BOTH
11   OPENING, REBUTTAL, AND REPLIES?  CAN YOU ALL WORK
12   AMONGST YOURSELVES?  WHO'S GOING TO PROVIDE -- EACH
13   OF YOU PROVIDE YOUR OWN EXPERT REPORTS, PLEASE.
14             ALSO, I NEED ALL THE DEMONSTRATIVES, THE
15   DEMONSTRATIVES ARE COMING IN LATER THAN SOME OF THE
16   OTHER EXHIBITS, SO I DON'T HAVE THE DEMONSTRATIVES,
17   I BELIEVE, FOR MS. -- IS IT KARE OR KARE?
18             MR. MCELHINNY:  KARE.
19             MS. KREVANS:  KARE.
20             THE COURT:  SO WHEN CAN I GET -- IT WOULD
21   BE HELPFUL IF I COULD GET THESE, LIKE, NOW.  DO YOU
22   HAVE THEM?  AND I'D ALSO LIKE TO GET THE
23   CROSS-EXHIBITS FOR EVERYONE.
24             I SEE THAT I'VE BEEN GIVEN, WHAT, THE
25   DIRECT EXHIBITS FOR WINER AND BALAKRISHNAN, BUT I'D
```

7084

```
 1    LIKE THE CROSS-EXHIBITS, AND I'D LIKE ALL THE

 2    DEMONSTRATIVES BECAUSE EVERYTHING IS SORT OF

 3    TRICKLING IN AND IT'S DIFFICULT TO RULE ON THESE

 4    OBJECTIONS WHEN I DON'T HAVE EVERYTHING.

 5              SO HOW QUICKLY CAN I GET ALL THESE.

 6              MS. KREVANS:  I'M SURE WE HAVE THE

 7    DEMONSTRATIVES SOMEWHERE IN THE BUILDING, YOUR

 8    HONOR.  I DON'T KNOW IF THEY'RE IN THE COURTROOM.

 9              THE COURT:  IF YOU ALL COULD JUST BUZZ MY

10    CHAMBERS, AND IF YOU COULD GIVE IT TO ME BY, IN THE

11    NEXT TEN MINUTES, IF THAT'S POSSIBLE, AND IF NOT,

12    AS SOON THEREAFTER AS POSSIBLE, I'D APPRECIATE IT.

13              MS. KREVANS:  CERTAINLY, YOUR HONOR.

14              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU

15    ALL.

16              (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)

17

18

19

20

21

22

23

24

25
```

1085

1          **AFTERNOON SESSION**

2               (WHEREUPON, THE FOLLOWING PROCEEDINGS

3     WERE HELD OUT OF THE PRESENCE OF THE JURY:)

4               THE COURT:  ALL RIGHT.  WELCOME BACK.

5     PLEASE TAKE A SEAT.

6               WITH REGARD TO THE DEMONSTRATIVES SDX

7     3756 THROUGH 57, 60 THROUGH 61, 64, 65 THROUGH 67,

8     69, 71 THROUGH 75 AND 3811, WE HAVE REVIEWED THE

9     EXPERT REPORTS AND THOSE NON-INFRINGEMENT THEORIES

10    WERE NOT DISCLOSED IN THE EXPERT REPORT.  SO THAT

11    OBJECTION IS SUSTAINED.

12              ALL RIGHT.  LET'S CALL THE JURY BACK IN

13    AND START BACK UP WITH MR. BRESSLER.

14              (WHEREUPON, THE FOLLOWING PROCEEDINGS

15    WERE HELD IN THE PRESENCE OF THE JURY:)

16              THE COURT:  ALL RIGHT.  WELCOME BACK.  IT

17    IS NOW 1:07.

18              PLEASE CONTINUE.

19    BY MS. KREVANS:

20    Q    GOOD AFTERNOON, MR. BRESSLER.

21    A    GOOD AFTERNOON.

22    Q    DO YOU STILL HAVE THAT BINDER IN FRONT OF YOU?

23    A    I DO.

24    Q    OKAY.  LET'S LOOK AT EXHIBIT PX 59 IN YOUR

25    BINDER.

1    A    YES.

2    Q    IS PX 59 A DOCUMENT THAT YOU CONSIDERED IN

3    CONNECTION WITH THE OPINIONS THAT YOU FORMED IN

4    THIS CASE?

5    A    YES, IT IS.

6    Q    AND GENERALLY, WHAT IS PX 59?  WHAT TYPE OF

7    DOCUMENT IS IT?

8    A    THIS IS A, A TRANSLATION OF A DOCUMENT THAT IS

9    RIGHT BEHIND IT WHICH IS A REPORT GENERATED BY

10   SAMSUNG, BY A TEAM THEY SENT OUT IN THE FIELD TO DO

11   RESEARCH AT BEST BUY.

12   Q    OKAY.  LET ME STOP YOU RIGHT THERE.

13              YOUR HONOR, WE WOULD OFFER EXHIBIT PX 59

14   INTO EVIDENCE.

15              THE COURT:  ANY OBJECTION?

16              MR. VERHOEVEN:  NO FURTHER OBJECTION.

17              THE COURT:  ALL RIGHT.  IT'S ADMITTED.

18              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

19              59, HAVING BEEN PREVIOUSLY MARKED FOR

20              IDENTIFICATION, WAS ADMITTED INTO

21              EVIDENCE.)

22              MS. KREVANS:  OKAY.

23              MR. VERHOEVEN:  YOUR HONOR, I WILL OBJECT

24   TO QUESTIONING ON THIS PARTICULAR EXHIBIT AS NOT

25   BEING WITHIN THE SCOPE OF THE EXPERT REPORT.  THE

7087

```
 1    EXPERT REPORT FOR THIS WITNESS, THERE'S A CITATION
 2    TO THIS DOCUMENT.  THERE'S ABSOLUTELY NO DISCUSSION
 3    OF IT OR DISCLOSURE OF WHAT TESTIMONY HE WOULD LIKE
 4    TO SEEK.
 5    BY MS. KREVANS:
 6    Q    EXPLAIN TO THE JURY WHAT THE GIST OF THE
 7    CONTENTS OF PX 59 ARE, MR. BRESSLER.
 8              THE COURT:  WAIT ONE SECOND.  ONE SECOND.
 9              WHAT'S YOUR RESPONSE TO MR. VERHOEVEN'S
10    OBJECTION?
11              MS. KREVANS:  YOUR HONOR, IN PARAGRAPH
12    105 OF THE REPORT, AND I HAVE A COPY HERE IF YOUR
13    HONOR DOES NOT HAVE IT HANDY.
14              THE COURT:  I HAVE IT HERE.
15              MS. KREVANS:  PARAGRAPH 105 OF THE
16    REPORT, WHICH IS ON PAGE 35, AT THE BOTTOM OF THE
17    PAGE, IT HAS THE SUBSTANCE OF THE TESTIMONY THAT I
18    INTEND TO ELICIT FROM THE WITNESS ABOUT THIS
19    DOCUMENT, AND THE BATES NUMBER CITATION THERE IS
20    THE CITATION TO THIS DOCUMENT.
21              THE COURT:  OVERRULED.
22              GO AHEAD, PLEASE.
23    BY MS. KREVANS:
24    Q    MR. BRESSLER, WHAT'S THE GIST OF THE CONTENTS
25    OF -- ACTUALLY, LET ME BACK UP.
```

1088

```
1              IS PX 59 A DOCUMENT CREATED BY SAMSUNG?

2    A    YES.

3    Q    AND ORIGINALLY IT WAS IN KOREAN, BUT YOU'RE

4    LOOKING AT THE TRANSLATION?

5    A    THAT'S CORRECT.

6    Q    OKAY.  WHAT'S THE GIST OF THE CONTENTS OF PX

7    59?

8    A    THE GIST OF THE CONTENTS IS THIS IS A REPORT

9    THAT A SAMSUNG TEAM CREATED DOING RESEARCH AT BEST

10   BUY STORES TO DETERMINE WHY A LARGER NUMBER THAN

11   USUAL OF GALAXY TAB 10.1'S WERE BEING RETURNED IN

12   CERTAIN REGIONS.

13   Q    OKAY.  WOULD YOU LOOK AT THE TITLE ON THE

14   FRONT PAGE OF THE DOCUMENT.  IT SAYS, "NORTH

15   AMERICAN P4 (P7510 WIFI) BBY RETAIL STORE VISIT TF

16   REPORT."

17            CAN YOU EXPLAIN TO THE JURY WHAT THAT

18   REFERS TO?

19   A    I'LL DO THE BEST I CAN.

20            CERTAINLY IT'S IN NORTH AMERICA.  I

21   BELIEVE THAT P4 MAY HAVE BEEN WHAT THEY REFERRED TO

22   AS THE 10.1.  THE WI-FI SUGGESTS THAT TO ME.

23            THE BBY, AS I UNDERSTAND IT, STANDS FOR

24   BEST BUY.

25            RETAIL STORE VISIT, I THINK THAT'S FAIRLY
```

1    CLEAR THAT THEY'RE DOING RESEARCH IN RETAIL STORES,

2    AND IT'S A TEAM REPORT AS I UNDERSTAND IT.

3    Q    AND THE DATE OF THE DOCUMENT IS WHAT?

4    A    IT IS AUGUST 11TH -- I'M SORRY.  AUGUST 2011.

5    Q    OKAY.  IF WE LOOK AT THE SECOND PAGE OF PX 59.

6    WHAT DOES IT SAY THE PURPOSE OF THIS TASK FORCE

7    VISIT WAS?

8    A    IT SAYS THE PURPOSE IS TO "INVESTIGATE THE

9    REASONS CONSUMERS RETURN THE PRODUCT, AND IDENTIFY

10   AREAS FOR IMPROVEMENT, BY VISITING THE 30 STORES

11   WITH THE HIGHEST NUMBER OF RETURNS, OF OUR LARGEST

12   VENDOR FOR NORTH AMERICAN P4 WI-FI MODEL, BBY."

13   Q    OKAY.  AND DOWN BELOW, SECTION 2, WHAT

14   GENERALLY IS SET OUT IN SECTION 2 OF THIS DOCUMENT

15   ON PAGE 2?

16   A    THIS BASICALLY DEFINES THE PROCESS THEY INTEND

17   TO GO THROUGH.

18   Q    OKAY.  AND THAT INCLUDED IN-PERSON VISITS TO

19   BEST BUY STORES BY A NUMBER OF SAMSUNG PERSONNEL?

20   A    YES.  THERE WAS A TEAM SENT OUT TO THREE

21   REGIONS IN THE COUNTRY.  I BELIEVE IT WAS FLORIDA,

22   L.A., AND NEW YORK.

23   Q    OKAY.  COULD YOU GO TO PAGE 19 OF THIS REPORT.

24   AND COULD YOU TELL US WHAT IS SET OUT ON PAGE 19 OF

25   THIS REPORT WITH RESPECT TO THE FINDINGS THAT THE

1    SAMSUNG TEAM MADE ABOUT THE REASONS FOR RETURNS OF

2    THE GALAXY TAB 10.1?

3    A    THIS IS A PAGE IN THE PORTION OF THE DOCUMENT

4    THAT RELATES TO MARKETABILITY.  AND IF I CAN CALL

5    THE ATTENTION TO THE NOTES BOX, THE NUMBER 1 LINE

6    IN THE NOTES BOX READS "GREATEST NUMBER OF CUSTOMER

7    RETURN TYPE WERE THOSE WHO PURCHASED THINKING IT

8    WAS AN APPLE IPAD 2."

9    Q    THANK YOU, MR. BRESSLER.

10            YOU CAN PUT THAT DOCUMENT ASIDE.  I WANT

11   TO SWITCH TO A DIFFERENT TOPIC.

12            DID YOU PERFORM AN ANALYSIS OF WHETHER

13   THE APPEARANCE OF ANY ELEMENT IN THE DESIGN OF THE

14   THREE APPLE DESIGN PATENTS THAT YOU ANALYZED WAS

15   DICTATED BY FUNCTION?

16   A    I DID.

17   Q    AND DID YOU, AS A RESULT OF THAT ANALYSIS,

18   CONCLUDE THAT ANY OF THE VISUAL ELEMENTS OF THE

19   APPLE DESIGN PATENTS WERE, IN FACT, DICTATED BY

20   FUNCTION?

21   A    I CONCLUDED THEY -- NONE OF THE ELEMENTS WERE

22   DICTATED BY FUNCTION.

23   Q    WHY DID YOU CONCLUDE THAT NONE OF THE ELEMENTS

24   OF THE APPLE DESIGN PATENTS WERE DICTATED BY

25   FUNCTION?

```
 1      A    FOR A COUPLE OF REASONS.  ONE, IN MY
 2   EXPERIENCE, I KNOW FULL WELL THAT VIRTUALLY EVERY
 3   FUNCTION THAT'S INCLUDED CAN BE DESIGNED WITH A
 4   DIFFERENT APPEARANCE.
 5           SECONDLY, I REVIEWED AND IDENTIFIED A
 6   NUMBER OF DIFFERENT ALTERNATIVE DESIGNS THAT
 7   PERFORMED THE SAME OR SIMILAR FUNCTIONS TO THOSE
 8   THAT WERE IN THE PATENTS.
 9      Q    OKAY.  LET'S TURN TO THE OPINIONS YOU GAVE
10   ABOUT TRADE DRESS.
11           DO YOU UNDERSTAND THAT APPLE IS, IN
12   ADDITION TO THE DESIGN PATENTS, ASSERTS IPHONE AND
13   IPAD TRADE DRESS CLAIMS IN THIS CASE?
14      A    I DO.
15      Q    I'D LIKE TO SHOW YOU SLIDE PDX 26.18.
16           ARE THE ELEMENTS OF THE APPLE IPHONE
17   TRADE DRESS THAT YOU ANALYZED FOR THIS CASE SET OUT
18   ON THIS SLIDE?
19      A    YES, THEY ARE.
20      Q    WHICH OF THE BULLET POINT ELEMENTS ON THIS
21   SLIDE DID YOU ANALYZE?
22      A    IT'S THE FIRST FIVE THAT RELATE PRIMARILY TO
23   THE INDUSTRIAL DESIGN OF THE DEVICE ITSELF, NOT THE
24   SCREEN.
25      Q    OKAY.  SO YOU IGNORED THE ICONS IN THE MIDDLE?
```

1    A    CORRECT.

2    Q    OKAY.  DID YOU PERFORM AN ANALYSIS OF WHETHER

3    ANY ELEMENTS OF THE ASSERTED IPHONE TRADE DRESS

4    WERE FUNCTIONAL AS THAT TERM IS USED IN TRADE DRESS

5    ANALYSIS?

6    A    I DID.

7    Q    AND WHAT IS YOUR UNDERSTANDING OF THE LEGAL

8    STANDARD FOR FUNCTIONALITY OF A TRADE DRESS?

9    A    MY UNDERSTANDING UNDER TRADE DRESS IS THAT THE

10   APPEARANCE IS NOT FUNCTIONAL UNDER TRADE DRESS IF

11   IT DOES NOT CONTRIBUTE UNUSUALLY EITHER TO THE

12   USABILITY OR TO THE REDUCTION IN COST OR EASE OF

13   MANUFACTURING.

14   Q    AND DID YOU FIND ANY ELEMENT OF THE INDUSTRIAL

15   DESIGN, THE PHYSICAL DESIGN OF THE IPHONE WAS

16   FUNCTIONAL UNDER THAT TEST?

17   A    UNDER THOSE TESTS, I DID NOT FIND THAT ANY OF

18   THOSE APPEARANCE ELEMENTS WERE FUNCTIONAL.

19   Q    DID YOU, IN YOUR ANALYSIS, DETERMINE WHETHER

20   THERE WERE ALTERNATIVES TO THE HARDWARE ASPECTS OF

21   THE IPHONE TRADE DRESS?

22   A    YES, THERE ARE A SIGNIFICANT NUMBER OF

23   ALTERNATIVES.

24   Q    OKAY.  COULD YOU LOOK AT EXHIBIT PX 10 IN YOUR

25   BINDER.

```
 1              WHAT IS PX 10, MR. BRESSLER?
 2    A    PX 10 IS ANOTHER COMPILATION OF A PHOTOGRAPH
 3    SLIDE THAT IS CREATED TO ILLUSTRATE A NUMBER OF
 4    ALTERNATIVE DESIGNS.
 5              AND ON THE THIRD PAGE SPECIFICALLY FOR
 6    SMARTPHONES.
 7              MS. KREVANS:  YOUR HONOR, WE MOVE PX 10
 8    INTO EVIDENCE.
 9              MR. VERHOEVEN:  OBJECTION.  IT'S A
10    DEMONSTRATIVE.
11              MS. KREVANS:  YOUR HONOR, THIS OBJECTION
12    HAS BEEN MADE AND PREVIOUSLY OVERRULED BY YOUR
13    HONOR.  THIS IS A COMPILATION OF PHOTOGRAPHS OF
14    ACTUAL OBJECTS.
15              THE COURT:  THAT'S ADMITTED.
16    BY MS. KREVANS:
17    Q    ON THE THIRD PAGE OF PX 10, WHAT HAVE YOU
18    SHOWN?
19    A    THESE ARE FIVE EXAMPLES OF A LARGE NUMBER OF
20    ALTERNATIVE CELL PHONE, SMARTPHONE DESIGNS THAT
21    EXIST.
22              THEY'RE CLEARLY MARKETED BY LARGE
23    COMPANIES.
24    Q    DID YOU FIND, IN DOING YOUR ANALYSIS OF
25    FUNCTIONALITY WITH RESPECT TO TRADE DRESS, THAT THE
```

1    PHYSICAL HARDWARE DESIGN OF THE IPHONE WAS THE

2    RESULT OF PARTICULARLY SIMPLE OR INEXPENSIVE

3    MANUFACTURING PROCESS?

4    A    ABSOLUTELY NOT.  IN FACT, I'VE SEEN

5    DOCUMENTATION AND READ DEPOSITIONS FROM APPLE

6    PERSONNEL THAT INDICATE THAT THE AESTHETICS THEY

7    WERE TRYING TO ACHIEVE WERE PARTICULARLY DIFFICULT

8    AND MORE EXPENSIVE TO DO.

9         THEY HAD TO BASICALLY DEVELOP A GLASS

10   THAT WAS NOT BREAKABLE ENOUGH, SCRATCH RESISTANT

11   ENOUGH, AND THEY HAD TO DEVELOP SPECIAL MACHINING

12   PROCESSES TO CREATE THE RECEIVER SLOT IN THE GLASS

13   AND TO MACHINE THE BEZEL.

14   Q    WHAT WAS YOUR OVERALL CONCLUSION ABOUT WHETHER

15   ANY ASPECTS OF THE IPHONE TRADE DRESS WERE

16   FUNCTIONAL?

17   A    IT'S MY OPINION THAT THESE ASPECTS OF THE

18   TRADE DRESS ARE NOT FUNCTIONAL.

19   Q    DID YOU ALSO ANALYZE THE, QUOTE,

20   "FUNCTIONALITY" FOR TRADE DRESS OF THE ASSERTED

21   IPAD TRADE DRESS?

22   A    I DID.

23   Q    LET'S LOOK AT YOUR SLIDE PDX 26.19.

24        ARE THESE THE ELEMENTS OF THE IPAD TRADE

25   DRESS THAT WERE PRESENTED TO YOU FOR CONSIDERATION

1    IN THIS CASE?

2    A    YES.  AGAIN, THE TOP FIVE ARE FOR THE PHYSICAL

3    DEVICE, NOT INCLUDING THE LIT SCREEN.

4    Q    OKAY.  WHAT OPINION DID YOU FORM REGARDING THE

5    FUNCTIONALITY OF THE ASSERTED IPAD TRADE DRESS?

6    A    USING THE SAME PROCESS AS I DID ON THE IPHONE,

7    I DETERMINED THAT NONE OF THESE ELEMENTS OF THE

8    APPEARANCE OF THE IPAD WERE FUNCTIONAL AS THEY

9    RELATE TO TRADE DRESS.

10   Q    DID YOU LOOK TO SEE WHETHER THERE WERE

11   ALTERNATIVE DESIGNS FOR A TABLET DESIGN, THAT IS,

12   ALTERNATIVES TO THE ASSERTED IPAD TRADE DRESS?

13   A    YES.

14   Q    AND DID YOU FIND ANY?

15   A    I DID.

16   Q    OKAY.  COULD WE LOOK BACK AT PX 10, AND THIS

17   TIME I'D ASK YOU TO LOOK AT PAGES 1 AND 2, STARTING

18   WITH PAGE 1.

19        WHAT HAVE YOU SET OUT IN THE FIRST TWO

20   PAGES OF EXHIBIT PX 10, MR. BRESSLER?

21   A    PAGE 1 IS FOUR DIFFERENT TABLET DESIGNS THAT I

22   THINK I TALKED ABOUT EARLIER, ALL OF WHICH ARE

23   DESIGNS THAT COULD BE APPLIED TO A TABLET COMPUTER.

24   THEY ARE CERTAINLY DIFFERENT THAN THE IPHONE AND

25   THE GALAXY 10.1 -- I'M SORRY, THE IPAD 2 AND THE

1    GALAXY 10.1.

2    Q    AND WERE THESE ALL ACTUALLY SOLD?

3    A    I BELIEVE SO.

4    Q    LET'S LOOK AT THE SECOND PAGE.

5             ACTUALLY, LET'S JUST SKIP THE SECOND

6    PAGE.

7             GOING BACK TO THE FIRST PAGE, CAN YOU

8    TELL US A LITTLE BIT MORE ABOUT THAT SONY TABLET S

9    ON THE BOTTOM RIGHT?

10   A    YES.  THE SONY TABLET S IS ACTUALLY A PRETTY

11   INTERESTING DESIGN IN THAT IT HAS A SHEET OF

12   MATERIAL, WHICH I BELIEVE IS PLASTIC, THAT GOES

13   ACROSS THE FRONT AND LITERALLY FOLDS AROUND TO THE

14   BACK OF THE COMPUTER, AND IT PROVIDES THIS KIND OF

15   FOLIO FEELING DEVICE THAT SOME PEOPLE ACTUALLY SAY

16   IS EASIER TO HOLD THAN THINNER TABLET COMPUTERS.

17   Q    IS THAT FOLDED-OVER DESIGN WHAT WE'RE SEEING

18   IN THE MIDDLE PICTURE ON THE BOTTOM RIGHT?

19   A    THAT'S AN ILLUSTRATION OF IT, YES.  THE FRONT

20   IS ON THE LEFT AND WHERE IT FOLDS DOWN PARTIALLY IS

21   ON THE RIGHT.

22   Q    OKAY.

23             THANK YOU, MR. BRESSLER.

24             NO FURTHER QUESTIONS AT THIS TIME, YOUR

25   HONOR.

1097

```
 1            THE COURT:  LET ME DO JUST A LITTLE

 2    CLEANUP, AND THIS IS NOT GOING TO BE CHARGED TO

 3    ANYONE'S TIME.

 4            PX 59, IS THAT ADMITTED?

 5            MS. KREVANS:  DID YOU ADMIT THAT, YOUR

 6    HONOR?

 7            THE COURT:  OKAY.  AND THEN YOU SHOWED

 8    26.18, A DEMONSTRATIVE, AND 26.19.

 9            DID YOU SHOW ANY OTHERS?

10            MS. KREVANS:  SINCE LUNCH?

11            THE COURT:  NO.  JUST -- YES, JUST IN THE

12    LAST FEW MINUTES.  I CAUGHT 18 AND 18, BUT I DON'T

13    KNOW IF I MISSED ONE.

14            MS. KREVANS:  THOSE ARE THE ONLY TWO

15    DEMONSTRATIVES I THINK I'VE SHOWN SINCE LUNCH.

16            I ALSO USED PX 10 AS AN EXHIBIT.

17            THE COURT:  I UNDERSTOOD THAT THAT WAS

18    ADMITTED.  I JUST WANTED TO MAKE SURE I HAVE IT.

19            (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

20            10, HAVING BEEN PREVIOUSLY MARKED FOR

21            IDENTIFICATION, WAS ADMITTED INTO

22            EVIDENCE.)

23            THE COURT:  OKAY.  THANK YOU.

24            ARE YOU READY, MR. VERHOEVEN?

25            MR. VERHOEVEN:  I AM.  EVERYTHING HAS
```

1098

1     BEEN PASSED OUT?  YES.

2              THE COURT:  ALL RIGHT.  WE'RE ALL SET.

3     IT'S 1:23.  PLEASE GO AHEAD.

4              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

5                    **CROSS-EXAMINATION**

6     BY MR. VERHOEVEN:

7     Q     GOOD AFTERNOON, MR. BRESSLER.

8     A     GOOD AFTERNOON.

9     Q     GOOD TO SEE YOU AGAIN.

10    A     AND YOU.

11    Q     WE'RE ALL ON THE CLOCK HERE, SO I'M GOING TO

12    ASK YOU A PRELIMINARY QUESTION, AND THAT IS, AS I

13    GO THROUGH MY QUESTIONING, IF YOU CAN MAKE AN

14    EFFORT, IF MY QUESTION IS FAIRLY ANSWERABLE WITH A

15    YES OR A NO, I'D ASK YOU TO ANSWER IT IN THAT

16    MANNER.  OKAY?

17    A     YES.

18    Q     NOW, MR. BRESSLER, IN FORMING YOUR OPINIONS,

19    IT'S CORRECT THAT YOU DID NOT RELY ON ANY APPLE

20    CONSUMER SURVEYS THAT IDENTIFIED WHAT APPLE

21    CUSTOMERS CONSIDERED TO BE IMPORTANT WITH RESPECT

22    TO IPHONES; TRUE?

23    A     YES.

24    Q     YOU DON'T HAVE ANY FIRST-HAND KNOWLEDGE OF ANY

25    SURVEYS THAT APPLE HAS CONDUCTED WITH RESPECT TO

1   IPHONES; RIGHT?

2   A    I BELIEVE I HAVE SEEN A COUPLE, BUT I DON'T --

3   I HAVEN'T EXAMINED THEM.

4   Q    THE ANSWER IS YOU DON'T HAVE ANY FIRST-HAND

5   KNOWLEDGE OF ANY SURVEYS APPLE CONDUCTED WITH

6   RESPECT TO ITS IPHONES; TRUE?

7   A    NOT TRUE.

8   Q    OKAY.  NOW, YOU TESTIFIED FOR APPLE BEFORE IN

9   ANOTHER HEARING ON MAY 31ST, 2012.

10          DO YOU REMEMBER THAT?

11  A    YES.

12  Q    AND YOU TESTIFIED UNDER OATH; CORRECT?

13  A    YES.

14  Q    AND SO YOU TOOK JUST AS MUCH CARE WITH YOUR

15  ANSWERS TO QUESTIONS DURING THAT HEARING AS YOU ARE

16  TODAY; RIGHT?

17  A    YES.

18  Q    OKAY.  LET'S PUT UP WHAT YOU SAID AT THAT

19  HEARING ON MAY 31ST, 2012, PAGE 705, LINES 6

20  THROUGH 10.

21          MS. KREVANS:  OBJECTION, YOUR HONOR.

22          MR. VERHOEVEN:  MR. FISHER, IF WE COULD

23  DO THAT.

24          MS. KREVANS:  IT'S IMPROPER TO SHOW

25  TESTIMONY UNTIL THE JURY -- UNTIL IT'S BEEN SHOWN

1100

```
 1    THAT IT'S IMPEACHING TO SOMETHING THE WITNESS HAS

 2    SAID AND THAT SHOWING HAS NOT BEEN MADE.

 3              MR. VERHOEVEN:  YOUR HONOR, THIS IS

 4    EXACTLY WHAT COUNSEL IN EXAMINING MR. DENISON DID.

 5              THE COURT:  OVERRULED.

 6              GO AHEAD, PLEASE.

 7              MR. VERHOEVEN:  PULL THAT UP, MR. FISHER.

 8    AND PULL OUT LINES 7 THROUGH 10, AND I'LL READ IT

 9    INTO THE RECORD.

10              "QUESTION:  YOU DON'T HAVE ANY FIRSTHAND

11    KNOWLEDGE OF ANY SURVEYS APPLE'S CONDUCTED WITH

12    RESPECT TO ITS IPHONES, CORRECT?

13              "ANSWER:  CORRECT."

14    Q    WAS THAT TRUTHFUL TESTIMONY WHEN YOU GAVE IT

15    IN MAY?

16    A    IT WAS TRUE THEN, YES.

17    Q    OKAY.  THANK YOU, MR. FISHER.

18              IN FORMING YOUR OPINIONS, YOU DID NOT

19    HAVE ANY INFORMATION ABOUT WHAT PERCENTAGE OF

20    PURCHASERS OF IPHONES PURCHASED THOSE PRODUCTS

21    EITHER FROM AN APPLE STORE OR A WEBSITE; RIGHT?

22    A    CORRECT.

23    Q    YOU DID NOT TALK TO CONSUMERS ABOUT THEIR

24    PERCEPTIONS OF PRODUCTS IN AN APPLE STORE; RIGHT?

25    A    I DID SPEAK TO A FEW CONSUMERS IN SOME VERY
```

 1    BRIEF DISCUSSIONS I HAD WITH THEM.

 2    Q    SIR, YOU DID NOT TALK TO CONSUMERS ABOUT THEIR

 3    PERCEPTIONS OF PRODUCTS AT AN APPLE STORE, DID YOU?

 4    A    AN APPLE STORE, NO, I DID NOT.

 5    Q    OKAY.  YOU DID HAVE A 20-MINUTE PHONE

 6    CONVERSATION WITH MR. STRINGER; RIGHT?

 7    A    YES.

 8    Q    BUT YOU SPOKE WITH NO ONE ELSE AT APPLE IN

 9    FORMING YOUR OPINIONS, DID YOU, SIR?

10    A    NO, I DIDN'T.

11    Q    AND YOU HAVE NO DIRECT EVIDENCE TO SUGGEST

12    THAT ANY CONSUMER HAS EVER PURCHASED A SAMSUNG

13    SMARTPHONE OR AN APPLE SMARTPHONE BELIEVING IT WAS

14    ACTUALLY A DEVICE MANUFACTURED BY THE OTHER, DO

15    YOU?

16    A    WOULD YOU REPEAT THAT, PLEASE?

17         MR. VERHOEVEN:  CAN WE HAVE THE QUESTION

18    READ BACK, PLEASE?

19         (WHEREUPON, THE RECORD WAS READ BY THE

20    COURT REPORTER.)

21         THE WITNESS:  I DO NOT.

22    BY MR. VERHOEVEN:

23    Q    YOU DON'T KNOW WHETHER CONSUMERS HAVE BEEN

24    CONFUSED AT ANY TIME WHEN PURCHASING APPLE DEVICES

25    OR SAMSUNG DEVICES INTO THINKING THEY ARE DEVICES

1    FROM THE OTHER MANUFACTURER; CORRECT?

2    A    I BELIEVE THAT'S CORRECT.  I'M SORRY.  COULD

3    YOU REPEAT THE QUESTION?

4              MR. VERHOEVEN:  CAN WE HAVE IT READ BACK

5    FOR MR. BRESSLER?

6              (WHEREUPON, THE RECORD WAS READ BY THE

7    COURT REPORTER.)

8              THE WITNESS:  THAT'S CORRECT.

9    BY MR. VERHOEVEN:

10   Q    YOU DON'T KNOW WHETHER CONSUMERS CONFUSE APPLE

11   AND SAMSUNG DEVICES DURING THE COURSE OF THEIR

12   PURCHASING DECISIONS, DO YOU?

13   A    I BELIEVE I HAVE SEEN SOME ARTICLES THAT

14   SUGGEST THAT PEOPLE DO GET CONFUSED.

15   Q    WELL, IN ADDITION TO THIS HEARING IN WHICH YOU

16   TESTIFIED, YOU ALSO HAD YOUR DEPOSITION TAKEN.

17             DO YOU REMEMBER THAT IN THIS CASE?

18   A    YES, I DO.

19   Q    AND THAT HAPPENED ON APRIL 24TH, 2012?  DOES

20   THAT SOUND ABOUT RIGHT?

21   A    SOUNDS ABOUT RIGHT, YES.

22   Q    AND A DEPOSITION, YOU UNDERSTAND, IS A

23   PROCEEDING JUST LIKE IN THE COURT HERE WHERE YOU'RE

24   SWORN UNDER OATH AND YOU GAVE TRUTHFUL TESTIMONY;

25   RIGHT?

1    A    YES.

2    Q    LET'S LOOK AT WHAT YOU SAID AT YOUR DEPOSITION

3    AT PAGE 145:24 THROUGH 146, LINE 7, THE DEPOSITION

4    DATED APRIL 24TH, 2012.

5              CAN WE PLAY THAT?

6              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

7    OPEN COURT OFF THE RECORD.)

8    BY MR. VERHOEVEN:

9    Q    THAT WAS TRUTHFUL TESTIMONY WHEN YOU GAVE IT

10   AT THE DEPOSITION IN APRIL OF THIS YEAR; RIGHT,

11   SIR?

12   A    I BELIEVE SO.

13   Q    TO THE BEST OF YOUR KNOWLEDGE, SMARTPHONE

14   CONSUMERS EVALUATE DIFFERENT MODELS, COMPARE THEM

15   TO ONE ANOTHER, EVEN BEFORE GOING INTO THE STORE;

16   RIGHT?

17   A    YES.

18   Q    SMARTPHONE CONSUMERS CONSIDER A NUMBER OF

19   FACTORS, SUCH AS PRICE, PERFORMANCE, AS WELL AS

20   APPEARANCE; RIGHT?

21   A    I GUESS.

22   Q    DO YOU BELIEVE THAT'S TRUE?

23   A    I SUSPECT THEY DO.

24   Q    YOU WOULD EXPECT THAT IF THE PURCHASER WAS

25   ENTERING INTO A MULTI-YEAR CONTRACT, THEY WOULD

1    KNOW WHAT BRAND OF PHONE THEY WERE BUYING; RIGHT?

2    A    YES.

3    Q    YOU BELIEVE, BY THE END OF THE SMARTPHONE

4    PURCHASING PROCESS, THE ORDINARY CONSUMER WOULD

5    HAVE TO KNOW WHICH PHONE THEY WERE BUYING; RIGHT?

6    A    YES.

7    Q    GIVEN THE ENVIRONMENT IN WHICH THESE PHONES

8    ARE BEING SOLD AND THE DEGREE OF ADVERTISING

9    BRANDING, YOU DON'T KNOW WHETHER ANYBODY WOULD EVER

10   BE DECEIVED INTO THINKING THEY WERE BUYING A

11   SAMSUNG PHONE WHEN THEY WERE BUYING AN APPLE PHONE

12   OR VICE-VERSA; ISN'T THAT TRUE, SIR?

13   A    COULD YOU REPEAT THAT AGAIN, PLEASE.

14            MR. VERHOEVEN:  CAN WE READ IT BACK,

15   PLEASE.

16            (WHEREUPON, THE RECORD WAS READ BY THE

17   COURT REPORTER.)

18            THE WITNESS:  YES.

19   BY MR. VERHOEVEN:

20   Q    AND WHEN YOU PERFORMED YOUR INFRINGEMENT

21   ANALYSIS THAT YOU'VE TESTIFIED TO EARLIER TODAY,

22   YOU DID NOT ENDEAVOR TO DETERMINE WHETHER THE

23   SIMILARITY BETWEEN TWO DESIGNS WAS DECEPTIVE, DID

24   YOU?

25   A    YES, I DID.

1    Q    OKAY.  LET'S GO TO YOUR TESTIMONY ON MAY 31ST,

2    2012, PAGE 659, LINES 6 THROUGH 14.

3              CAN WE PUT THAT UP, MR. FISHER?  659,

4    PAGE -- LINES 6 THROUGH 14.  IT'S THE MAY 31ST,

5    2012.  THERE WE GO.

6              "QUESTION:  DID YOU APPLY THIS TEST THAT

7    I HAVE ON THE SCREEN ON RDX-49C, PAGE 20?

8              "ANSWER:  I CERTAINLY APPLIED THE ISSUE

9    OF THE EYE OF THE ORDINARY OBSERVER GIVING AS MUCH

10   ATTENTION AS A PURCHASER USUALLY GIVES TO THE TWO

11   DESIGNS, FINDING THEM SUBSTANTIALLY THE SAME.

12             "IT WAS MY UNDERSTANDING, FROM COUNSEL,

13   THAT IT WAS NOT NECESSARY THAT THE SIMILARITY BE

14   DECEPTIVE."

15   Q    DO YOU SEE THAT?

16   A    I SEE THAT, YES.

17   Q    AND THAT'S THE TESTIMONY YOU GAVE ON MAY 31ST,

18   2012; RIGHT?

19   A    IT IS.

20   Q    AFTER YOU SUBMITTED YOUR OPINIONS IN THIS

21   CASE?

22   A    YES.

23   Q    SO AT THE TIME YOU SUBMITTED YOUR OPINIONS IN

24   THIS CASE, IT WAS YOUR UNDERSTANDING IT WAS NOT

25   NECESSARY TO LOOK INTO WHETHER A SIMILARITY WAS

1    DECEPTIVE; ISN'T THAT TRUE, SIR?

2    A    NO.  IT WAS MY UNDERSTANDING THAT THE

3    MEASUREMENT WAS DIFFERENT THAT YOU'RE DESCRIBING.

4            MS. KREVANS:  YOUR HONOR, MAY I ASK, FOR

5    COMPLETENESS, THAT I BE PERMITTED TO READ AN

6    ADDITIONAL PORTION OF THE TESTIMONY?  THIS IS FROM

7    THE ITC TRIAL.

8            THE COURT:  NO.  YOU'LL HAVE AN

9    OPPORTUNITY IN REDIRECT.

10   BY MR. VERHOEVEN:

11   Q    NOW, I WANT TO SWITCH TO TALKING ABOUT THE

12   DESIGN PATENTS, '087 AND '677 MORE SPECIFICALLY,

13   OKAY?

14   A    YES.

15   Q    WHEN YOU PREPARED YOUR OPINIONS WITH RESPECT

16   TO THOSE DESIGN PATENTS, YOU WERE ASKED TO APPLY

17   CERTAIN PRINCIPALS OR RULES OF THE ROAD FOR YOUR

18   ANALYSIS BY THE ATTORNEYS; CORRECT?

19   A    YES.

20   Q    AND IF WE COULD JUST GO TO, MR. BRESSLER, YOUR

21   OPENING EXPERT REPORT DATED MARCH 22, 2012 AT

22   PARAGRAPH 21.  I THINK THAT'S IN YOUR BINDER IF

23   YOU'D LIKE TO LOOK AT IT.  WE'RE GOING TO PUT IT ON

24   THE SCREEN AS WELL.

25   A    COULD YOU TELL ME WHERE IT WAS IN MY BINDER,

```
 1    PLEASE.

 2

 3              MR. VERHOEVEN:  IF I COULD APPROACH, YOUR

 4    HONOR?

 5              THE COURT:  GO AHEAD, PLEASE.

 6              MR. VERHOEVEN:  THANK YOU.

 7              YOU HAVE MY BINDER, SO -- THERE SHOULD BE

 8    AN EXHIBIT IN THERE.

 9              THE WITNESS:  THANK YOU.

10              MR. VERHOEVEN:  SURE.

11              THE WITNESS:  AND WHAT PAGE WAS THIS

12    AGAIN, PLEASE?

13    BY MR. VERHOEVEN:

14    Q    IT'S PARAGRAPH 21, SIR.  ARE YOU THERE?

15    A    YES.

16    Q    OKAY.  SO OBVIOUSLY YOU'RE NOT A LAWYER;

17    RIGHT?

18    A    THAT'S CORRECT.

19    Q    BUT YOU WERE GIVEN, BY THE LAWYERS, CERTAIN

20    PRINCIPLES THEY ASKED YOU TO APPLY IN CONDUCTING

21    YOUR ANALYSIS; CORRECT?

22    A    YES.

23    Q    AND THIS WAS IN THE PART OF YOUR REPORT WHERE

24    YOU DELINEATE WHAT THOSE PRINCIPLES WERE; CORRECT?

25    "I, THEREFORE, HAVE BEEN ASKED TO APPLY THE
```

```
 1    FOLLOWING PRINCIPLES TO MY ANALYSIS OF

 2    INFRINGEMENT."

 3    A    YES.

 4    Q    AND THEN THIS SECTION 4 GOES ON FOR A FEW

 5    PARAGRAPHS; CORRECT?

 6    A    YES.

 7    Q    I'D LIKE TO DIRECT YOUR ATTENTION TO PARAGRAPH

 8    25.  ARE YOU THERE?

 9    A    I AM.

10    Q    YOU SEE -- THIS IS YOUR REPORT; RIGHT?

11    A    IT IS.

12    Q    THESE ARE YOUR WORDS?

13    A    I BELIEVE IT IS.

14    Q    "MOREOVER, I UNDERSTAND THAT THE HYPOTHETICAL

15    ORDINARY OBSERVER IS DEEMED TO BE 'CONVERSANT WITH

16    PRIOR ART' THAT MAY BE RELEVANT TO INFRINGEMENT."

17             DO YOU SEE THAT?

18    A    YES.

19    Q    AND YOU TESTIFIED ABOUT THAT ON DIRECT

20    EXAMINATION AS WELL; CORRECT?

21    A    YES.

22    Q    AND THEN IT CONTINUES IN THIS PARAGRAPH, DOWN

23    AT THE BOTTOM, "THUS, WHEN THE CLAIMED DESIGN AND

24    THE ACCUSED PRODUCT APPEAR SIMILAR, A PROPER

25    INFRINGEMENT ANALYSIS CONSIDERS THE PRIOR ART IN
```

1    COMPARING THE CLAIMED DESIGN AND THE DESIGN OF THE

2    ACCUSED PRODUCT."

3            SO THAT WAS A PRINCIPLE YOU APPLIED;

4    RIGHT?

5    A    YES.

6    Q    AND THEN IF WE GO TO THE SECOND SENTENCE HERE,

7    AND I'LL JUST READ IT INTO THE RECORD, "FOR

8    EXAMPLE, WHEN THE DIFFERENCES BETWEEN THE CLAIMED

9    AND ACCUSED DESIGN ARE VIEWED IN LIGHT OF THE PRIOR

10   ART, THE ATTENTION OF THE HYPOTHETICAL ORDINARY

11   OBSERVER WILL BE DRAWN TO THOSE ASPECTS OF THE

12   CLAIMED DESIGN THAT DIFFER FROM THE PRIOR ART."

13           DO YOU SEE THAT?

14   A    YES, I DO.

15   Q    AND THAT'S -- THAT'S -- YOU APPLIED THOSE

16   PRINCIPLES IN CONDUCTING YOUR ANALYSIS; CORRECT?

17   A    I DID.

18   Q    SO THE IDEA IS WHEN YOU'RE APPLYING THIS

19   ANALYSIS, YOU LOOK AT WHAT'S IN THE PRIOR ART AND

20   YOU LOOK AT WHAT'S DIFFERENT IN THE DESIGN PATENT

21   OVER THE PRIOR ART AND THEN YOU LOOK AT THOSE

22   DIFFERENCES WHEN YOU'RE LOOKING AT THE ACCUSED

23   PRODUCT.  FAIR?

24   A    I BELIEVE SO.

25   Q    OKAY.  AND THAT'S THE ANALYSIS THAT SHOULD BE

1110

1    APPLIED; CORRECT?

2    A    I BELIEVE YOU THEN COMPARE THE ACCUSED PRODUCT

3    TO THE DESIGN, NOTING WHAT THE DIFFERENCES WERE

4    THAT YOU FOUND.

5    Q    EXACTLY.  AND THAT'S THE APPROPRIATE WAY TO DO

6    THE ANALYSIS?

7    A    YES.

8    Q    OKAY.  NOW, LET'S GO TO JX 1041 AND LET'S

9    DISPLAY FIGURE 43.  LET'S JUST HIGHLIGHT, PULL THIS

10   OUT.

11           THIS IS THE '087 DESIGN PATENT, FRONT

12   VIEW; CORRECT?

13   A    THAT IS A VIEW OF IT, YES.

14   Q    THAT'S THE FRONT VIEW; RIGHT?

15   A    YES, OF ONE OF THE VERSIONS.

16   Q    OKAY.  SO I'M GOING TO ASK -- I'M GOING TO ASK

17   YOU SOME QUESTIONS ABOUT THIS '087 DESIGN PATENT.

18           ARE YOU WITH ME?

19   A    I AM.

20   Q    SO TAKING YOUR PRINCIPLE WHERE YOU LOOK AT THE

21   PRIOR ART IN CONNECTION WITH YOUR INFRINGEMENT

22   ANALYSIS, LET'S LOOK AT THE PRIOR ART.

23           LET'S GO TO DX 511.  AND THIS IS A PIECE

24   OF PRIOR ART THAT YOU REVIEWED; CORRECT?

25   A    IT IS.

2111

1   Q    AND IF WE CAN GO TO PAGE 3 AND PULL OUT THE

2   TOP IMAGE?  DO YOU SEE THAT, SIR?

3   A    I DO.

4   Q    AND CAN WE PUT THIS NEXT TO THE '087, FIGURE

5   43.

6            SO YOU WOULD AGREE WITH ME THAT THE PRIOR

7   ART HERE IS RECTANGULAR?

8   A    YES.

9   Q    WITH ROUNDED CORNERS?

10  A    YES.

11  Q    YOU WOULD AGREE WITH ME THAT IT HAS A LOZENGE

12  SHAPED SPOT HERE FOR A SPEAKER?

13  A    YES.

14  Q    YOU WOULD AGREE WITH ME THAT THIS HAS GOT A

15  LARGE DISPLAY SCREEN?

16  A    YES.

17  Q    AND YOU WOULD AGREE WITH ME THAT THAT DISPLAY

18  SCREEN IS BALANCED VERTICALLY AND HORIZONTALLY

19  WITHIN THE DESIGN?

20  A    YES, THOUGH I BELIEVE THIS IS AN INAPPROPRIATE

21  COMPARISON IN ANALYZING A DESIGN PATENT.

22  Q    THIS IS PRIOR ART; RIGHT?

23  A    YES.

24  Q    AND SO IT'S APPROPRIATE TO LOOK AT PRIOR ART

25  WHEN YOU'RE CONDUCTING THE INFRINGEMENT ANALYSIS;

1112

```
 1    RIGHT?

 2    A    MY UNDERSTANDING OF THE RULE IS YOU'RE TO

 3    COMPARE ALL FIGURES OF THE PATENT, ALL THE --

 4    Q    OKAY.  THIS IS ONE FIGURE -- IS THIS ONE

 5    FIGURE?

 6    A    IT IS ONE FIGURE, YES.

 7    Q    OKAY.  SO IT'S OKAY TO COMPARE THIS; RIGHT?

 8    A    IF YOU WISH.

 9    Q    OKAY.  AND IT'S GOT A VERY NARROW LATERAL

10    BORDER TO THE SCREEN?  DO YOU SEE THAT?

11    A    I DO.

12    Q    AND A THICKER TOP AND BOTTOM BORDER OF THE

13    SCREEN?

14    A    YES.

15    Q    AND IT'S GOT SOME SORT OF THING THAT LOOKS

16    LIKE A BEZEL GOING AROUND IT?

17    A    IT LOOKS LIKE ONE IN THAT VIEW, YES.

18    Q    OKAY.  NOW, LET'S GO TO ANOTHER PIECE OF PRIOR

19    ART, THE DX 728 DESIGN PATENT.  SO THAT'S DX 728.

20    I'M SORRY.

21         THAT'S THE EXHIBIT NUMBER, YOUR HONOR.

22    IT'S ACTUALLY JP 383 DESIGN PATENT.

23         YOU REVIEWED THIS PIECE OF PRIOR ART AS

24    WELL; CORRECT?

25    A    383, YES.
```

7113

1    Q    YOU AGREE IT'S PRIOR ART?

2    A    YES.

3    Q    AND IF WE COULD GO TO PAGE 9 AND PULL OUT THE

4    SECOND IMAGE.  PUT THAT UP NEXT TO -- ON THE RIGHT

5    WE HAVE THE '087 AND ON THE LEFT WE HAVE DX 728.

6    DO YOU SEE THAT?

7    A    I DO.

8    Q    THIS IS A PIECE OF PRIOR ART THAT ALSO IS

9    RECTANGULAR?

10   A    YES.

11   Q    ROUNDED CORNERS?

12   A    YES.

13   Q    LARGE DISPLAY SCREEN?

14   A    YES.

15   Q    MINIMALIST FACE?

16   A    I DON'T KNOW THAT I CAN AGREE WITH THAT

17   BECAUSE IN THE OTHER VIEWS, IT'S NOT SO MINIMALIST.

18   IT HAS A PLASTIC COVER OVER THE UNIT ITSELF.

19   Q    THE LATERAL BORDERS ARE VERY NARROW?

20   A    YES.

21   Q    AND THE TOP AND BOTTOM BORDER ABOVE AND BELOW

22   THE SCREEN ARE WIDE?

23   A    YES, THOUGH IF I RECALL THE PATENT, THERE ARE

24   VIRTUALLY NO BORDERS ON THE SIDES OF THE INTERNAL

25   UNIT OF THAT, ALONG THE SIDES.

```
1    Q    THESE SPACES ABOVE AND BELOW THE SCREEN ARE
2    WIDER?
3    A    YES, THEY ARE.
4    Q    AND THE SCREEN IS BALANCED BOTH HORIZONTALLY
5    AND VERTICALLY IN THE DESIGN?
6    A    YES.
7    Q    OKAY.  LET'S GO TO ANOTHER PIECE OF PRIOR ART.
8    THIS IS DX 727.
9              YOUR HONOR, I FORGOT -- I NEGLECTED TO
10   MOVE A COUPLE OF THESE EXHIBITS INTO EVIDENCE, SO I
11   MIGHT AS WELL DO THAT NOW.
12             THE COURT:  OKAY.
13             MR. VERHOEVEN:  I MOVE INTO EVIDENCE DX
14   511, WHICH IS THE JAPANESE DESIGN PATENT 638.
15             THE COURT:  ALL RIGHT.  ANY OBJECTION?
16             MS. KREVANS:  NO OBJECTION, YOUR HONOR.
17             THE COURT:  IT'S ADMITTED.
18             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
19             511, HAVING BEEN PREVIOUSLY MARKED FOR
20             IDENTIFICATION, WAS ADMITTED INTO
21             EVIDENCE.)
22             MR. VERHOEVEN:  DX --
23             THE COURT:  728.
24             MR. VERHOEVEN:  728, JAPANESE DESIGN
25   PATENT, 383.
```

1                    THE COURT:  NO OBJECTION, RIGHT?

2                    MS. KREVANS:  NO OBJECTION.

3                    THE COURT:  THAT'S ADMITTED.

4                    (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

5                    728, HAVING BEEN PREVIOUSLY MARKED FOR

6                    IDENTIFICATION, WAS ADMITTED INTO

7                    EVIDENCE.)

8                    MR. VERHOEVEN:  AND NOW WE'RE MOVING TO

9      ADMIT DX 727, A KOREAN DESIGN PATENT, 547, WHICH WE

10     JUST PUT ON THE SCREEN.  WE MOVE THAT INTO

11     EVIDENCE.

12                   MS. KREVANS:  NO OBJECTION, YOUR HONOR.

13                   THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

14                   (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

15                   727, HAVING BEEN PREVIOUSLY MARKED FOR

16                   IDENTIFICATION, WAS ADMITTED INTO

17                   EVIDENCE.)

18     BY MR. VERHOEVEN:

19     Q    SO GOING BACK AGAIN, THIS IS ANOTHER PIECE OF

20     PRIOR ART; RIGHT?

21     A    I CAN'T READ THE KOREAN TO CONFIRM IT, BUT

22     I'LL TAKE YOUR WORD FOR IT.

23     Q    OKAY.  WELL, LET'S GO TO PAGE 6 OF THE

24     TRANSLATION.  DO YOU SEE UP HERE IT SAYS

25     PUBLICATION DATE, JULY 6TH, 2006?

1116

```
1    A    YES.

2    Q    OKAY.  THAT PRE-DATES BOTH THE '087 PATENT AND

3    THE '677 PATENT FILINGS; CORRECT, SIR?

4    A    I BELIEVE IT PRE-DATES THE FILING, BUT I'M NOT

5    SURE -- I DON'T THINK IT PRE-DATES THE CONCEPTION

6    DATE THAT'S BEEN IDENTIFIED.

7    Q    WELL, YOU AGREE IT PRE-DATES THE FILING DATE?

8    A    I -- WITHOUT LOOKING AT THE PATENT, I'M NOT

9    100 PERCENT SURE, BUT IT MIGHT.

10   Q    WELL, WOULD YOU AGREE THAT THAT'S

11   APPROXIMATELY SIX MONTHS BEFORE THE IPHONE WAS EVER

12   EVEN ANNOUNCED PUBLICLY?

13   A    YES.

14   Q    NOW, LET'S GO TO PAGE 7, THE SECOND IMAGE ON

15   PAGE 7 AND PULL THAT OUT.  PUT THAT NEXT TO THE

16   '087.

17        SO DX 727, RECTANGULAR IN SHAPE?

18   A    YES.

19   Q    ROUNDED CORNERS?

20   A    YES.

21   Q    IT'S GOT A BIG DISPLAY SCREEN; YES?

22   A    NOT AS BIG, BUT YES.

23   Q    IT'S GOT A LOZENGE SHAPED SPEAKER SLOT?  YES?

24   A    YES.

25   Q    IT'S GOT LATERAL BORDERS THAT ARE NARROWER
```

1    THAN THE TOP AND BOTTOM BORDERS?

2    A    CORRECT.  IT DOES NOT SHOW A BEZEL.

3    Q    THE SCREEN IS BALANCED; RIGHT?

4    A    I'M NOT SURE WHAT YOU MEAN BY "BALANCED."

5    Q    HORIZONTALLY AND VERTICALLY CENTERED?

6    A    YES.  AGAIN, I BELIEVE THIS IS A DISTORTED

7    VIEW OF HOW ONE SHOULD READ A PATENT.

8    Q    NOW, LET'S ALSO LOOK AT JX 1093, I THINK WE

9    HAVE A PHYSICAL -- THAT'S A PHYSICAL EXHIBIT, YOUR

10   HONOR.

11            CAN I JUST SEE THAT AND MAKE SURE IT'S

12   THE RIGHT ONE?

13            YOU'VE SEEN THIS PHYSICAL DEVICE BEFORE;

14   CORRECT?

15   A    YES.

16   Q    IT'S THE LG PRADA PHONE?

17   A    YES.

18   Q    CAN WE PUT UP SDX 3750 ON THE SCREEN, PLEASE.

19            MS. KREVANS:  YOUR HONOR, THERE'S A

20   LIMITING INSTRUCTION WITH RESPECT TO THIS DEVICE,

21   THAT IT IS NOT PRIOR ART FOR PURPOSES OF ANY

22   VALIDITY --

23            MR. VERHOEVEN:  I DISPUTE THAT, YOUR

24   HONOR.

25            THE COURT:  IS THIS THE KE850?

1          MR. VERHOEVEN:  NO, IT IS NOT, YOUR

2     HONOR.  THIS IS NOT -- THIS IS IN EVIDENCE.

3          MS. KREVANS:  IT WAS SUBJECT TO A

4     LIMITING INSTRUCTION --

5          THE COURT:  MOTION IN LIMINE NUMBER 3,

6     THERE WAS A -- THIS IS COMING IN.  OVERRULED

7     PLEASE.

8          GO AHEAD, MR. VERHOEVEN.

9          (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

10         3750, HAVING BEEN PREVIOUSLY MARKED FOR

11         IDENTIFICATION, WAS ADMITTED INTO

12         EVIDENCE.)

13         MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

14    Q    NOW, I'VE GOT A PICTURE OF THIS PHONE ON THE

15    SLIDE SDX 3750.  DO YOU SEE IT ON THE SCREEN?

16    A    I DO.

17    Q    THAT'S THE PHONE YOU HAVE IN YOUR HAND; RIGHT?

18    A    IT IS.

19    Q    OKAY.  AND THIS PHONE IS ALSO RECTANGULAR IN

20    SHAPE; CORRECT?

21    A    YES.

22    Q    ROUNDED CORNERS?

23    A    SLIGHTLY ROUNDED, YES.

24    Q    WHAT WAS THAT?

25    A    THEY'RE SLIGHTLY ROUNDED.

1    Q    OKAY.  IS THERE SOMETHING DIFFERENT THAN

2    SLIGHTLY ROUNDED IN THE '087?

3    A    I BELIEVE THE '087 LOOKS MORE -- THE OVERALL

4    IMPRESSION OF THE '087 IS MORE ROUNDED THAN THESE.

5    Q    OKAY.  AND THAT'S A DISTINGUISHING DIFFERENCE?

6    A    WITHIN A GIVEN RANGE, YES.

7    Q    SO IF THE CORNERS ARE MORE SHARPLY ROUNDED,

8    THAT'S A DISTINGUISHING FACTOR?

9    A    WITHIN THE OVERALL IMPRESSION, YES.

10   Q    OKAY.  IT HAS A LOZENGE SHAPED SLOT FOR THE

11   SPEAKER?

12   A    YES.

13   Q    IT'S GOT A LARGE TOUCHSCREEN?

14   A    I DON'T KNOW THAT IT'S A TOUCHSCREEN.

15   Q    WELL, IT'S A LARGE SCREEN?

16   A    YES.

17   Q    CENTERED?

18   A    IT SEEMS SO.

19   Q    AND THE LATERAL BORDERS ARE NARROWER AND THE

20   TOP AND BOTTOM BORDERS ARE WIDER?

21   A    YES.  AND IT ALSO HAS A HUGE BUTTON ACROSS THE

22   BOTTOM.

23   Q    SO ALL OF THIS ART WE'VE LOOKED AT IS

24   RECTANGULAR IN SHAPE WITH ROUNDED CORNERS; RIGHT?

25   A    I GUESS YOU COULD LOOK AT IT THAT WAY.

```
 1    Q    IS THERE A WAY FOR US TO PUT EACH OF THOSE
 2    IMAGES TOGETHER ON THE SCREEN?  MR. FISHER, I'M
 3    SORRY.
 4              THERE WE GO.  SO HERE WE'VE JUST PUT ALL
 5    OF THESE IMAGES WE'VE LOOKED AT NEXT TO THE '087.
 6    DO YOU SEE THAT, SIR?
 7    A    I DO.
 8    Q    IN ALL OF THESE OTHER DESIGN PATENTS AND THIS
 9    PHONE ARE SIMILARLY RECTANGULAR TO THE '087; RIGHT?
10    A    YES.
11    Q    AND THEY ALL HAVE BIG SCREENS; RIGHT?
12    A    YES.
13    Q    SOME OF THEM HAVE LOZENGE SHAPED EARPIECES;
14    RIGHT?
15    A    YES.
16    Q    THEY ALL HAVE MINIMALIST DESIGN?
17    A    I DON'T KNOW WHAT THAT MEANS.
18    Q    YOU DON'T KNOW WHAT MINIMALIST DESIGN MEANS?
19    A    NOT IN YOUR COMPARISON OF THESE ONE VIEWS OF
20    ALL THESE PHONES.
21    Q    OKAY.
22    A    THIS IS NOT HOW YOU REVIEW FIGURES IN PATENTS.
23    Q    OKAY.  THEY ALL HAVE NARROWER LATERAL BORDERS
24    OF DIFFERING WIDTHS, BUT THEY ALL HAVE NARROWER
25    LATERAL BORDERS?
```

```
1    A    YES.

2    Q    AND LARGER BORDERS ABOVE AND BELOW THE SCREEN;

3    RIGHT?

4    A    THAT'S CORRECT.

5    Q    SO --

6    A    AT LEAST THREE OF THEM DON'T HAVE BEZELS.

7    Q    AND THAT'S IMPORTANT, RIGHT, THAT'S IMPORTANT,

8    THE ABSENCE OF A BEZEL TAKES YOU OUT OF SUBSTANTIAL

9    SIMILARITY, DOESN'T IT?

10   A    IN THE '087 PATENT, IT DOES.

11   Q    OKAY.  SO CIRCLING BACK, AS YOU UNDERSTAND THE

12   RULES OF THE ROAD, THE ORDINARY OBSERVER IS

13   SUPPOSED TO TAKE INTO ACCOUNT THIS PRIOR ART AND

14   LOOK AT WHAT IS DIFFERENT FROM THE PRIOR ART IN THE

15   '087 AND TAKE THOSE DIFFERENCES WHICH FOCUS ON

16   THOSE DIFFERENCES WHEN CONDUCTING THE INFRINGEMENT

17   ANALYSIS AS TO THE ACCUSED PHONES; RIGHT?

18   A    THIS IS AN INCORRECT ANALYSIS.  THESE ARE --

19   YOU ARE SUPPOSED TO BE COMPARING ALL OF THE VIEWS

20   OF EACH OF THESE PATENTS TO DEVELOP AN OVERALL

21   IMPRESSION OF WHAT THE ORDINARY OBSERVER WOULD

22   UNDERSTAND.

23   Q    OKAY.

24   A    YOU CANNOT GET THAT UNDERSTANDING FROM A

25   SINGLE VIEW.
```

7122

```
1    Q    OKAY.  LET'S ACCEPT THAT.  YOU LOOK AT ALL THE
2    VIEWS OF EACH OF THESE FOUR ITEMS HERE TO THE LEFT
3    OF THE '087 PATENT, YOU WOULD AGREE WITH ME THAT
4    WHEN YOU DO THAT, THAT THE ANALYSIS SHOULD BE THAT
5    THE ATTENTION OF THE ORDINARY OBSERVER WOULD BE
6    DRAWN TO THOSE ASPECTS OF THE DESIGN IN THE '087
7    THAT ARE DIFFERENT FROM THE DESIGN ELEMENTS IN THE
8    PRIOR ART; RIGHT?
9    A    IF, IF THIS WERE A PROPER ANALYSIS, YOU COULD
10   SAY THAT, YES.
11   Q    OKAY.  NOW, LET'S GO TO -- LET'S GO TO YOUR
12   OPINIONS WITH RESPECT TO THE ACCUSED DEVICES.
13            NOW, YOU -- THE ONLY PERSON YOU SPOKE TO
14   FROM APPLE IN FORMING YOUR OPINIONS WAS
15   MR. STRINGER; CORRECT?
16   A    THAT'S CORRECT.
17   Q    WERE YOU HERE WHEN HE CAME AND TESTIFIED
18   BEFORE THE JURY?
19   A    I WAS.
20   Q    OKAY.  AND MR. STRINGER IS LISTED AS AN
21   INVENTOR ON THE '087 AND '677 PATENTS; CORRECT?
22   A    YES.
23   Q    AND SO FAR, AT LEAST, HE'S THE ONLY INVENTOR
24   ON THE PATENTS THAT WE'VE HEARD TESTIFY SO FAR;
25   RIGHT?
```

1    A    I DON'T KNOW THAT FOR SURE.

2    Q    HAVE YOU BEEN IN COURT EVERY DAY?

3    A    NO.

4    Q    OKAY.  WELL, I'LL REPRESENT THAT SO FAR HE'S

5    BEEN THE ONLY ONE THAT'S COME.

6    A    OKAY.

7    Q    SO LET'S LOOK AT WHAT HE SAID ABOUT WHAT HE

8    THINKS IS NEW AND UNIQUE ABOUT THE '087 DESIGN, OR

9    THE IPHONE, THE INITIAL IPHONE DESIGN.

10            CAN WE PUT UP SDX 37?

11            MS. KREVANS:  OBJECTION, YOUR HONOR.

12   IRRELEVANT TO THIS WITNESS'S TESTIMONY.  HE'S

13   TESTIFYING ABOUT THE IMPACT ON THE ORDINARY

14   OBSERVER.  MR. STRINGER IS AN INDUSTRIAL DESIGNER.

15   HE'S AN EXPERT.  HE'S NOT AN ORDINARY OBSERVER.

16            THE COURT:  OVERRULED.

17            MS. KREVANS:  CERTAINLY IT'S NOT

18   IMPEACHING.

19            THE COURT:  OVERRULED.  IF HE'S RELIED ON

20   ANY PART OF MR. STRINGER'S STATEMENTS, THEN IT MAY

21   COME IN.

22            GO AHEAD.

23            MR. VERHOEVEN:  MAY WE PUT UP THE SCREEN

24   OR THE SLIDE, THANK YOU.

25            FOR THE RECORD, THIS IS SDX 3191.  IT'S A

1    DEMONSTRATIVE SLIDE.

2    Q    MR. BRESSLER, ON THE LEFT IS A HIGHLIGHTED

3    VERSION OF A COUPLE OF THE FIGURES FROM THE '087

4    PATENT.

5              DO YOU RECOGNIZE THOSE?

6              MS. KREVANS:  OBJECTION, YOUR HONOR.

7    THERE IS NO TESTIMONY OR FOUNDATION THAT THIS

8    WITNESS RELIED ON ANY STATEMENTS FROM MR. STRINGER,

9    CERTAINLY NOT HIS TRIAL TESTIMONY, IN FORMING HIS

10   OPINIONS.  THERE'S NO FOUNDATION FOR THIS TO BE

11   PART OF THIS WITNESS'S OPINION.

12             AND, AGAIN, MR. STRINGER IS NOT THE

13   ORDINARY OBSERVER.

14             THE COURT:  OVERRULED.  GO AHEAD.

15             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

16   Q    SO LET'S LOOK AT, ON JULY 31ST WHAT

17   MR. STRINGER SAID TO THE JURY ABOUT THIS FEATURE

18   THAT I'VE HIGHLIGHTED HERE, THE BEZEL ON THE '087

19   PATENT.

20             "QUESTION:  ANOTHER IMPORTANT DESIGN

21   FEATURE WITH RESPECT TO THE INITIAL IPHONE WAS THE

22   '087 -- AND THE '087 PATENT WAS THAT IT HAD THIS

23   CONTINUOUS RIM, OR BEZEL I THINK IS THE WORD YOU

24   USED.  IS THAT RIGHT?"

25             MR. STRINGER SAYS, "YES."

```
 1                  "QUESTION:  AND YOU AGREE WITH ME, THAT
 2      WAS AN IMPORTANT ASPECT OF THIS DESIGN, RIGHT?
 3                  "ANSWER:  YES.
 4                  "QUESTION:  AND THE -- IT WAS IMPORTANT
 5      THAT THE BEZEL GO CONTINUOUSLY AROUND THE RIM OF
 6      THE PHONE, RIGHT?
 7                  "ANSWER:  YES.
 8                  "QUESTION:  AND IT WAS ALSO IMPORTANT
 9      THAT THE BEZEL BE OF UNIFORM THICKNESS, CORRECT?
10                  "ANSWER:  YES."
11                  AND YOU CAN SEE FROM THE IMAGE, THE BEZEL
12      GOES ALL THE WAY AROUND AND IT HAS UNIFORM
13      THICKNESS ALL THE WAY AROUND.
14                  DO YOU SEE THAT, SIR?
15      A    YES, I SEE IT.
16      Q    NOW, YOU AGREE WITH MR. STRINGER, DON'T YOU?
17      A    I AGREE THAT THAT WAS HIS GOAL AS A DESIGNER.
18      Q    AND THAT WAS AN IMPORTANT DESIGN FEATURE OF
19      THE '087, IT'S A DISTINCTION FROM THESE OTHER PRIOR
20      ART IMAGES WE LOOKED AT, THE UNIFORM BEZEL AND
21      UNIFORM THICKNESS?
22      A    I DON'T BELIEVE THAT'S THE ONLY DISTINCTION
23      FROM IT.  IT WAS ONE OF THEM.
24      Q    IT WAS ONE OF THEM?
25      A    IT MAY BE ONE OF THEM, YES.
```

1126

```
1    Q    SO THIS IS ONE OF THE THINGS THAT THE ORDINARY

2    OBSERVER SHOULD FOCUS ON IN LOOKING AT THE ACCUSED

3    PRODUCTS; RIGHT?

4    A    NO.  I BELIEVE THE ORDINARY OBSERVER IS SEEING

5    AND DEVELOPING AN OVERALL IMPRESSION OF THE DESIGN

6    WHEN ALL OF THOSE ELEMENTS ARE TAKEN INTO

7    CONSIDERATION AT THE SAME TIME.

8              I DON'T BELIEVE AN ORDINARY OBSERVER

9    LOOKS AT ONE PART OF THE PHONE AT A TIME.

10   Q    SIR, DO YOU HAVE THE SAMSUNG INFUSE 4G IN

11   FRONT OF YOU, JX 1027?

12   A    I THINK I HAVE IT HERE SOMEWHERE.

13   Q    IF YOU DON'T --

14   A    CAN I CLOSE THIS BINDER?

15   Q    MS. KHAN HAS IT.  IT'S A PHYSICAL EXHIBIT,

16   SIR.

17              THAT'S THE ACTUAL PHYSICAL PHONE, RIGHT?

18   A    THIS IS WHICH ONE.

19   Q    THE INFUSE 4G, JX 1027.

20   A    YES, I BELIEVE IT IS.

21   Q    OKAY.  LET'S PUT UP SDX 3753.

22              THE INFUSE 4G HAS NO BEZEL, DOES IT, SIR?

23   A    I BELIEVE IT HAS A CREASE LINE THAT INFERS THE

24   SHAPE OF A BEZEL.

25   Q    SIR, THE INFUSE 4G HAS NO BEZEL, DOES IT?
```

1    A     AS A SEPARATE PART, THAT'S CORRECT.

2              MR. VERHOEVEN:  YOUR HONOR, IF I MAY

3    APPROACH AND LET THE JURORS INSPECT THE 4G, THE

4    INFUSE 4G?

5              THE COURT:  YES, GO AHEAD.  CHANGE YOU.

6    BY MR. VERHOEVEN:

7    Q    DIDN'T YOU JUST TESTIFY A FEW MINUTES AGO THAT

8    IF THE PHONE DOESN'T HAVE A BEZEL, THAT TAKES IT

9    OUT OF BEING SUBSTANTIALLY SIMILAR, SIR?

10   A     NO.  I TESTIFIED THAT THE OVERALL IMPRESSION

11   OF THE ORDINARY OBSERVER SHOULD BE SUBSTANTIALLY

12   THE SAME AS THE FIGURES IN THE PATH.

13             WHETHER YOU CALL IT A BEZEL OR NOT, THERE

14   IS A SHAPE ON THIS PHONE THAT CAUSES A BELT LINE,

15   IF YOU WILL, OR A CREASE LINE THAT YOU SEE WITH THE

16   HIGHLIGHT THAT DOES MAKE IT SIMILAR TO THE

17   IMPRESSION THAT THE ORDINARY OBSERVER WOULD HAVE OF

18   THAT DESIGN.

19   Q    SO EVEN THOUGH YOU ADMIT THAT THE INFUSE 4G

20   HAS NO BEZEL, IT'S YOUR TESTIMONY TO THIS JUROR,

21   JURY, THAT IT'S STILL SUBSTANTIALLY SIMILAR TO THE

22   '087?

23   A     I BELIEVE THE OVERALL IMPRESSION IS SIMILAR,

24   YES.

25   Q    MS. KHAN, COULD YOU SHOW MR. BRESSLER PHYSICAL

```
1    PHONE JX 1019, THE GALAXY S 4G?

2    A    DOES THIS HAVE A STICKER ON IT?

3    Q    IS THAT THE CORRECT PHONE?  WE'LL REPRESENT

4    THAT'S THE CORRECT PHONE, SIR.  THE GALAXY S 4G?

5    A    OH, I SEE, IT DOES HAVE A STICKER ON THE SIDE,

6    THE JX 1019.

7    Q    DO YOU AGREE THAT'S THE GALAXY S 4G?

8    A    IT APPEARS TO BE.

9           MS. KREVANS:  YOUR HONOR, THERE IS AN

10   EXHIBIT WHICH HAS BEEN AGREED ON BY THE PARTIES

11   WHICH IS A JOINT EXHIBIT THAT IS THE GALAXY S 4G.

12   IT'S IN EVIDENCE.  THIS IS NOT THAT PHONE.  I

13   OBJECT TO THIS.  THEY SHOULD SHOW THE ACTUAL

14   EXHIBIT WHICH THE PARTIES HAVE AGREED IS THE

15   GALAXY S 4G.

16          THE COURT:  WELL, I THOUGHT IT WAS

17   EXHIBIT 1019.

18          MS. KREVANS:  IT IS.  BUT THAT'S NOT THE

19   PHONE THEY'VE SHOWED HIM.  THIS PHONE HAS NO

20   EXHIBIT STICKER ON IT.

21          MR. VERHOEVEN:  IT DOES.

22          THE COURT:  DOES IT HAVE IT ON THE SIDE?

23          MS. KREVANS:  THAT'S NOT THE EXHIBIT

24   STICKER, YOUR HONOR.  THAT'S NOT THE EXHIBIT

25   THAT'S --
```

```
 1            THE COURT:  IT SAYS JX 1019.
 2            MS. KREVANS:  SOMEONE, I DON'T KNOW WHO,
 3    HAS PUT THAT ON THE PHONE.  I DON'T KNOW IF THAT'S
 4    THE RIGHT ONE.  WE HAVE IT.
 5            THE COURT:  WHERE IS IT?  WHERE IS THE
 6    OTHER ONE.
 7            THE WITNESS:  RIGHT HERE.
 8            MS. KREVANS:  RIGHT THERE.
 9            THE COURT:  OKAY.  DOES IT HAVE A STICKER
10    ON IT?
11            THAT SAYS A-S 469.
12            THE WITNESS:  NO, IT -- OH, NO, THAT'S --
13            THE COURT:  IS THAT -- IS IT SLIGHTLY
14    DIFFERENT?  DOES IT HAVE HAS JX 1019 ON IT
15    ANYWHERE?
16            THE WITNESS:  YES, IT DOES.  I'M HAPPY TO
17    HAND IT TO YOU.
18            THE COURT:  OH, I SEE.  OKAY.  ALL RIGHT.
19    WHY DO WE HAVE TWO UP THERE?
20            MS. KREVANS:  THE A-S NUMBERS, YOUR
21    HONOR, WERE NUMBERS THAT THE PARTIES USED TO KEEP
22    TRACK OF THE DEVICES DURING DEPOSITION AND
23    INSPECTION BEFORE THERE WERE ACTUAL FORMAL EXHIBIT
24    NUMBERS.
25            THE COURT:  WHY DO WE HAVE TWO PHONES UP
```

```
1    THERE?
2              MS. KREVANS:  I DON'T KNOW WHY THERE'S
3    ANOTHER EXHIBIT.  THAT'S WHY I SUGGEST WE USE THE
4    ACTUAL EXHIBIT NUMBER.
5              THE COURT:  WHY DON'T YOU TAKE BACK THE
6    1019 THAT'S NOT THE OFFICIAL ONE, JUST SO WE DON'T
7    GET CONFUSED WHEN THE JURY GOES INTO THE
8    DELIBERATION ROOM, THEY SHOULD HAVE JUST ONE SET.
9              WHERE IS THAT?  THE SECOND ONE.
10             MR. VERHOEVEN:  HE'S GOT IT IN HIS HAND.
11             THE COURT:  ALL RIGHT.  WHAT HAPPENED TO
12   THE OTHER ONE THAT SAYS 1019.
13             MR. VERHOEVEN:  MS. KHAN TOOK IT BACK.
14             THE COURT:  ALL RIGHT.  THANKS.
15             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
16   Q    SO WE'VE GOT IT NOW.
17   A    YES.
18   Q    THAT'S THE GALAXY S 4G, JX 1019 IN FRONT OF
19   YOU?
20   A    YES, I BELIEVE SO.
21   Q    OKAY.  JUST SO THAT WE CAN REFRESH OURSELVES,
22   LET'S GO BACK TO SLIDE SDX 3791.
23             AND, AGAIN, MR. STRINGER SAYS, "IT WAS
24   ALSO IMPORTANT THAT THE BEZEL BE OF UNIFORM
25   THICKNESS," AND IF YOU LOOK AT THE PICTURE FOR THE
```

1    '087, YOU CAN SEE IT'S CLEARLY OF UNIFORM THICKNESS

2    THROUGHOUT THE CIRCUMFERENCE.

3           MR. STRINGER TESTIFIED THAT WAS AN

4    IMPORTANT DESIGN CHARACTERISTIC, DIDN'T HE?

5    A    TO HIM AS THE INDUSTRIAL DESIGNER OF THE PHONE

6    IT WAS, YES.

7    Q    NOW, LET'S GO TO SDX 3755, WHICH IS A

8    DEMONSTRATIVE.

9           NOW, HERE I'VE GOT THE '087 PICTURES ON

10   THE LEFT AND THE IMAGE OF THE GALAXY S 4G, JX 1019,

11   ON THE RIGHT.

12          DO YOU SEE THAT, SIR?

13   A    I DO, BUT I BELIEVE THIS IS NOT WHAT AN

14   ORDINARY OBSERVER WOULD SEE.

15   Q    YOU CAN'T -- I DIDN'T ASK YOU THAT, SIR.  I

16   JUST ASKED YOU IF YOU SAW IT.

17   A    YES, I SEE IT.

18   Q    OKAY.  AND THIS SLIDE HERE, WE'VE HIGHLIGHTED

19   THE BEZEL, THE GALAXY S 4G DOES HAVE A BEZEL;

20   RIGHT?

21   A    IT DOES.

22   Q    BUT THAT BEZEL IS NOT OF UNIFORM THICKNESS, IS

23   IT?

24   A    EITHER IN -- THERE ARE MINOR DIFFERENCES, YES.

25   Q    IT IS NOT OF UNIFORM THICKNESS, IS IT, SIR?

2132

```
1    A    NO.

2              MR. VERHOEVEN:  YOUR HONOR, IF I MAY ASK

3    TO PASS THAT PHONE TO THE JURY AS WELL?

4              THE COURT:  PLEASE, GO AHEAD.

5    BY MR. VERHOEVEN:

6    Q    A CONSUMER, LOOKING AT THE TOP AND BOTTOM OF

7    THE GALAXY S 4G, WOULD CLEARLY SEE THAT ONE SIDE OF

8    THE -- ON ONE SIDE THE BEZEL IS MUCH THINNER AND ON

9    THE OTHER SIDE IT'S MUCH THICKER; RIGHT?

10   A    RIGHT.  BUT THEY NEVER SEE IT LIKE THIS.

11   Q    OH.  THEY NEVER LOOK AT THE TOP AND THE

12   BOTTOM?

13   A    NOT AT THE SAME TIME.

14   Q    THEY'D HAVE TO TURN IT AROUND.

15   A    YEAH, THEY WOULD HAVE TO TURN IT AROUND OR

16   HAVE TWO.

17   Q    OKAY.  THEY COULD TURN IT AROUND, THOUGH,

18   COULDN'T THEY?

19   A    THEY COULD, CERTAINLY.

20   Q    AND IS IT YOUR TESTIMONY THAT THE JUROR THAT

21   THIS ORDINARY OBSERVER WILL JUST GLANCE AT THE

22   PHONE, THEY WOULDN'T STUDY IT AND LOOK CAREFULLY AT

23   THE PHONE?

24   A    IT'S MY OPINION THAT THE ORDINARY OBSERVER

25   FORMS AN OVERALL IMPRESSION OF WHAT THE DESIGN IS.
```

 1              THEY DO NOT FOCUS ON MINUTE DETAILS LIKE

 2       THE CHANGE OF A MILLIMETER ONE DIRECTION OR THE

 3       OTHER IN A THIN PIECE OF MATERIAL AROUND THE EDGE

 4       OF THE PHONE.

 5       Q    YOU WOULD AGREE WITH ME THAT SOMEONE LOOKING

 6       AT THE TOP AND THE BOTTOM OF THE GALAXY S 4G WOULD

 7       SEE IT'S NOT A UNIFORM THICKNESS; RIGHT, SIR?

 8       A    IF THEY CONCENTRATED ON THE DETAIL, YES.

 9       Q    WELL, DETAILS ARE IMPORTANT ON A DESIGN

10       PATENT, AREN'T THEY?  YOU SAID SO ON DIRECT?

11       A    THEY ARE, YES.

12       Q    OKAY.  LET'S GO TO ANOTHER IMPORTANT DESIGN

13       ASPECT THAT MR. STRINGER TALKED ABOUT.

14              CAN WE GO TO SDX 3792.

15              THIS IS FROM THE SAME DAY WHEN

16       MR. STRINGER CAME HERE AND TESTIFIED TO THE JURORS.

17              YOU WERE HERE FOR THIS; RIGHT?

18       A    YES.

19       Q    FOR THE RECORD, THIS IS FROM PAGE 514, LINES 9

20       THROUGH 16 OF THE TRANSCRIPT FROM JULY ARE 31ST,

21       2012.

22              AND I ASKED MR. STRINGER?

23              "QUESTION:  ANOTHER DESIGN ASPECT -- OR

24       AN ASPECT OF THE DESIGN IN THE '087 PATENT THAT WAS

25       IMPORTANT TO YOU AND YOUR TEAM AS DESIGNERS WAS

1    THAT THE FRONT SURFACE, FOR EXAMPLE, IF YOU LOOK AT

2    FIGURE 16 OR FIGURE 15, YOU CAN SEE IT, THE FRONT

3    SURFACE WAS COMPLETELY FLAT ALL THE WAY ACROSS THE

4    FRONT.  THAT WAS AN IMPORTANT DESIGN ELEMENT;

5    RIGHT?

6              "ANSWER:  YES."

7              THAT'S REFERRING TO THIS SURFACE HERE

8    WHERE WE'VE DRAWN THE ARROW; CORRECT?

9    A    I SEE THAT.

10   Q    AND IF WE CAN GO TO SLIDE SDX 3793, I

11   CONTINUED AND ASKED HIM, AND THIS IS FROM 514,

12   LINES 17 THROUGH 22.

13             "QUESTION:  IN FACT," YOU BELIEVE -- "I

14   BELIEVE YOU TESTIFIED TO THIS, BUT ISN'T IT TRUE

15   THAT THE DESIGN HERE INTENTIONALLY WAS THAT THE

16   BEZEL, OR THIS RIM, WAS INTENTIONALLY DESIGNED TO

17   BE NOMINALLY FLUSH WITH THE GLASS?  IS THAT RIGHT?

18             "ANSWER:  YES.

19             "QUESTION:  SOMETHING THAT DISTINGUISHED

20   IT FROM OTHER DESIGNS PREVIOUSLY; RIGHT?

21             "ANSWER:  THAT -- THAT WAS OUR -- THAT

22   WAS OUR DESIGN."

23             DO YOU SEE THAT, SIR?

24   A    I DO.  I BELIEVE "NOMINALLY FLUSH" DOESN'T

25   MEAN EXACTLY FLUSH.

1    Q    OKAY.  IT MEANS NOMINALLY FLUSH?

2    A    YES.

3    Q    IT'S AS FLUSH AS YOU CAN MAKE IT WITHIN DESIGN

4    TOLERANCES?

5    A    OR AS FLUSH AS YOU CAN MAKE IT WITHIN THE

6    OVERALL IMPRESSION OF THE OBSERVER.

7    Q    THE INTENT IS TO MAKE IT FLUSH ALL THE WAY

8    ACROSS FROM EDGE TO EDGE; ISN'T THAT WHAT IT'S

9    SAYING?

10   A    HIS INTENT AS THE DESIGNER, YES.

11   Q    IN FACT, IF WE CAN GO TO THE NEXT SLIDE, 794,

12   HE CONTINUED AND THIS IS 514:23 THROUGH 515:1 OF

13   THE JULY 31ST TRANSCRIPT.

14           "QUESTION:  AND YOU COULD HAVE DESIGNED A

15   PHONE WHERE THE BEZEL PROTRUDED BEYOND THE GLASS,

16   BUT YOU INTENTIONALLY CHOSE NOT TO DO THAT; RIGHT?

17           "ANSWER:  YES."

18           DO YOU REMEMBER THAT TESTIMONY?

19   A    I DO.

20   Q    AND IF WE GO TO THE NEXT SLIDE, 3795,

21   MR. STRINGER CONTINUED ON JULY 31ST AT PAGE 519:2

22   THROUGH 9, "AND, AGAIN, LOOKING AT FIGURE 16 AND

23   15, THE SIDE VIEWS, POSITIONING -- AN IMPORTANT

24   DESIGN ELEMENT HERE WAS POSITIONING THE GLASS FLUSH

25   WITH THE BEZEL; RIGHT?

```
 1              "ANSWER:  YES.

 2              "QUESTION:  EVEN THOUGH THAT MIGHT

 3      PRESENT SOME MANUFACTURING DIFFICULTIES; CORRECT?

 4              "ANSWER:  I AGREE."

 5              DO YOU REMEMBER THAT TESTIMONY?

 6      A    I DO.

 7      Q    YOU DON'T DISAGREE WITH THE INVENTOR, DO YOU?

 8      A    I AGREE THAT WAS HIS INTENTION.

 9      Q    WAS IT AN IMPORTANT DESIGN ELEMENT?

10      A    I AGREE HE BELIEVED IT WAS, YES.

11      Q    ALL RIGHT.  NOW, LET'S GO TO -- I DON'T KNOW

12      IF THE JURORS HAVE PASSED THE PHONE BACK UP.

13              ALL RIGHT.  MS. KHAN?

14              THE WITNESS:  MAY I HAVE THAT ONE BACK?

15      THANK YOU.

16              MR. VERHOEVEN:  MS. KHAN, IF YOU COULD

17      HAND JX 1019 AGAIN, THE GALAXY S 4G.

18              ONE SECOND, YOUR HONOR.

19              THE COURT:  GO AHEAD, PLEASE.

20              MR. VERHOEVEN:  YOUR HONOR, MAY I

21      APPROACH?  I THINK THE WITNESS HAS ANOTHER PHYSICAL

22      EXHIBIT THAT I'D LIKE TO DIRECT HIM TO, BUT I

23      CAN'T -- I NEED TO FIND IT.

24      Q    MR. BRESSLER, I JUST HANDED YOU PHYSICAL

25      EXHIBIT JX 1000.  DO YOU SEE IT?
```

7137

```
1    A    I DO.

2    Q    AND THAT'S THE INITIAL IPHONE; CORRECT?

3    A    IT IS.

4    Q    CAN WE PUT UP SDX 3758?

5              NOW, YOU CAN RUN YOUR FINGER ACROSS THE

6    TOP OF THE INITIAL IPHONE AND FEEL THAT THE FRONT

7    SURFACE, CONSISTENT WITH THE '087 DESIGN ELEMENT

8    THAT MR. STRINGER THOUGHT WAS IMPORTANT, THAT FRONT

9    SURFACE IS COMPLETELY, THE GLASS IS COMPLETELY

10   FLUSH WITH THE SURROUNDING BEZEL; RIGHT?

11   A    I WOULD SAY IT'S NOMINALLY FLUSH.

12   Q    IT'S NOMINALLY FLUSH?

13   A    YES.

14   Q    IT'S IMPORTANT WITH WHAT MR. STRINGER SAID WAS

15   IMPORTANT ON THE '087, AS WELL AS THE INITIAL

16   IPHONE?

17   A    IT IS, YES.

18   Q    SOMETHING THAT WAS IMPORTANT THAT HADN'T BEEN

19   DONE BEFORE; RIGHT?

20   A    I BELIEVE THE CONTINUOUS GLASS FACE HADN'T

21   BEEN DONE BEFORE, YES.

22   Q    THE FRONT SURFACE BEING FLAT ALL THE WAY

23   ACROSS AND THE GLASS BEING FLUSH WITH THE BEZEL HAD

24   NOT BEEN DONE BEFORE?  ISN'T THAT WHAT MR. STRINGER

25   STATED?
```

```
1    A    AS YOU STATED, I'M NOT 100 PERCENT SURE THAT I

2    KNOW.  I KNOW THAT THE CONTINUOUS GLASS FRONT FACE

3    ALL THE WAY EDGE TO EDGE HAD NEVER BEEN DONE

4    BEFORE.

5    Q    WELL, WHY DON'T YOU TAKE A LOOK AT JX 1019,

6    THE GALAXY SAMSUNG SMART 4G, PHYSICAL EXHIBIT?

7    A    YES.

8    Q    AND YOU SEE WE'VE GOT IT DEPICTED HERE IN THE

9    RIGHT BOX ON SDX 3758?

10   A    I SEE THAT.

11   Q    YOU'D AGREE THAT THE FRONT SURFACE OF THE

12   GALAXY S 4G IS NOT FLAT ALL THE WAY ACROSS?

13   A    I SEE THAT YOU'VE DEMONSTRATED THAT, YES.

14   Q    YOU DON'T DISAGREE WITH THAT, DO YOU, SIR?

15   A    I BELIEVE THE OVERALL IMPRESSION THAT THE

16   ORDINARY OBSERVER WOULD HAVE OF THAT DESIGN WAS

17   THAT THEY'RE SUBSTANTIALLY THE SAME.

18   Q    SIR, YOU WOULD AGREE THAT SAMSUNG GALAXY S 4G

19   IS NOT FLAT ALL THE WAY ACROSS?  IN FACT, THE BEZEL

20   PROTRUDES ABOVE THE GLASS?

21   A    ABOUT A HALF A MILLIMETER, YES.

22   Q    AND THAT'S IMPORTANT, ISN'T IT?

23   A    I BELIEVE IT WAS IMPORTANT TO MR. STRINGER.

24   Q    AND IT'S IMPORTANT FOR FUNCTIONAL REASONS?  IF

25   YOU TURN YOUR PHONE UPSIDEDOWN AND THE BEZEL
```

```
 1     PROTRUDES, THEN THE GLASS DOESN'T SCRATCH; RIGHT?

 2     A    THAT IS TRUE.

 3              MR. VERHOEVEN:  YOUR HONOR, MAY I

 4     APPROACH AND HAND THE JURORS THE IPHONE AND THE S G

 5     TO FEEL THE EDGES?

 6              THE COURT:  PLEASE, GO AHEAD.

 7     BY MR. VERHOEVEN:

 8     Q    AND LET'S GO TO --

 9              JUST A SECOND, YOUR HONOR.

10              SDX 3759.  HERE WE'VE GOT THE INFUSE 4G.

11              MS. KHAN, COULD YOU BRING THE PHYSICAL

12     EXHIBIT BACK TO MR. BRESSLER.  JX 1027, UNLESS YOU

13     ALREADY HAVE IT, MR. BRESSLER.

14     A    I THINK I MAY HAVE IT.  WHICH ONE WAS IT

15     AGAIN?  1027?

16     Q    1027, THE INFUSE?

17     A    I HAVE THAT, YES.

18     Q    NOW, YOU CAN RUN YOUR FINGER ACROSS THE FRONT

19     SURFACE OF THE INFUSE AS WELL; RIGHT?

20     A    YES.

21     Q    AND ISN'T IT TRUE, SIR, THAT AS WITH THE

22     GALAXY S 4G, THE INFUSE 4G, THE FRONT SURFACE IS

23     NOT COMPLETELY FLAT ALL THE WAY ACROSS?  THE

24     HOUSING PROTRUDES ABOVE THE GLASS?

25     A    A MINUTE AMOUNT, YES.
```

7140

```
1    Q    THE HOUSING PROTRUDES ABOVE THE GLASS, RIGHT?

2    A    APPARENTLY A MINUTE AMOUNT, YES.

3    Q    SO WHEN YOU PUT THE PHONE DOWN, THE GLASS

4    DOESN'T TOUCH; RIGHT?

5    A    I GUESS.  I MEAN, IT IS SUCH A SMALL AMOUNT

6    THAT YOU HAD TO DRAW AN ARROW ON A BIG PHOTOGRAPH

7    TO SHOW THE DIFFERENCE.

8    Q    WELL, WE COULD SHOW THE JURORS WHAT THE PHONE

9    ACTUALLY --

10   A    THAT'S FINE.

11   Q    -- FEELS LIKE AND LOOKS LIKE IF YOU'D LIKE,

12   SIR?

13   A    SURE, PLEASE.

14        MR. VERHOEVEN:  OKAY.  IF I MAY APPROACH,

15   YOUR HONOR?

16        THE COURT:  PLEASE, GO AHEAD.

17        MR. VERHOEVEN:  SORRY, YOUR HONOR.  I

18   ACCIDENTALLY TURNED IT ON WHEN I WAS HANDING IT TO

19   THEM.  LET ME TURN IT BACK OFF.

20        NOW IT'S BOOTING UP, YOUR HONOR.  I'M

21   SORRY.

22        THE COURT:  THAT'S OKAY.

23        MR. VERHOEVEN:  THERE WE GO.

24        (PAUSE IN PROCEEDINGS.)

25        MR. VERHOEVEN:  THERE WE GO.
```

1    Q    NOW LET'S GO TO SDX 3796.

2              NOW, MR. STRINGER ALSO TESTIFIED ABOUT

3    THE ROUNDED CORNERS ON THE '087 PATENT WHEN HE

4    TESTIFIED ON JULY 31ST.  DO YOU REMEMBER THAT?

5    A    I DO.

6    Q    AND HE WAS ASKED -- AND THIS IS FROM PAGE 513,

7    LINES 9 THROUGH 15.

8              "QUESTION:  NOW I'M GOING TO ASK YOU A

9    FEW QUESTIONS ABOUT THE DESIGN ELEMENTS WITH

10   RESPECT TO THE '087 PATENT.  OKAY?

11             "IN YOUR VIEW, ONE IMPORTANT DESIGN

12   ASPECT OF THE '087 PATENT, AND THE INITIAL IPHONE,

13   WAS THAT IT HAD FOUR EVENLY RADIUS CORNERS;

14   CORRECT?

15             "ANSWER:  YES."

16             DO YOU REMEMBER THAT TESTIMONY?

17   A    I DO.

18   Q    AND YOU ALSO SAW A WITNESS STATEMENT THAT

19   MR. STRINGER SUBMITTED IN CONNECTION WITH AN

20   EARLIER HEARING; RIGHT?

21   A    I BELIEVE SO.

22   Q    AND DO YOU REMEMBER IN THAT SWORN WITNESS

23   STATEMENT, HE REPEATED SEVERAL TIMES THAT AN

24   IMPORTANT DESIGN ELEMENT IN THE IPHONE WAS THAT

25   EACH OF THE CORNERS HAD EQUAL RADII?

2142

```
1    A    I DON'T RECALL THAT.

2    Q    WELL, THAT'S WHAT HE'S SAYING HERE; RIGHT?

3    A    YES.

4    Q    LET'S GO TO SDX 3762.

5              SO WHAT HE'S TALKING ABOUT IS THE SLOPE

6    OF THIS CURVE AND THE ROUNDED CORNERS; RIGHT?

7    A    HE WAS TALKING ABOUT THE CURVATURE, YES.

8    Q    YEAH.  RIGHT.  WHICH IS CALLED THE RADIUS;

9    CORRECT?

10   A    YES.  WELL, THE RADIUS -- THE RADIUS WILL

11   DEFINE THE CURVE.  IT'S NOT CALLED THE RADIUS.

12   Q    RIGHT.  AND SO HE'S SAYING AN IMPORTANT DESIGN

13   ELEMENT FOR THE INITIAL IPHONE AND THE '087 WAS

14   THAT FOR EACH OF THESE CORNERS, THE MEASUREMENT OF

15   THE CURVE, THE RADIUS IS EQUAL, IT'S THE SAME, IT'S

16   SYMMETRICAL; RIGHT?

17   A    I BELIEVE IT WAS HIS INTENTION THAT THEY

18   SHOULD LOOK THE SAME.

19   Q    OKAY.  AND HE ACTUALLY SAID EQUAL RADII IS

20   WHAT HE SAID; RIGHT?

21   A    YES, BUT I THINK HE WAS TALKING ABOUT THE

22   VISUAL IMPRESSION HE WAS TRYING TO CREATE.

23   Q    WELL, HE SAID "EQUAL RADII"?

24   A    HE DID, YES.

25   Q    OKAY.  NOW, LET'S GO TO -- DO YOU HAVE THE --
```

1    DO YOU HAVE THE GALAXY 4S AGAIN, EXHIBIT JX 1019.

2              NOW, SDX 3763, ISN'T IT TRUE, SIR, THAT

3    THE RADII ON THE TOP ROUNDED CORNERS IN THE SAMSUNG

4    GALAXY S 4G ARE DIFFERENT THAN THE RADII ON THE

5    BOTTOM ROUNDED CORNERS?

6    A    THAT'S WHAT THAT SLIDE IS INDICATING.

7    Q    WHEN YOU DID YOUR ANALYSIS, YOU MADE NO EFFORT

8    TO ASCERTAIN WHETHER THE ACCUSED PHONES HAD EQUAL

9    RADII, DID YOU, SIR?

10   A    I DID NOT.

11   Q    DO YOU DISPUTE THAT THE RADII ON THE TOP OF

12   THE -- THE TOP TWO ROUNDED CORNERS OF THE SAMSUNG

13   GALAXY S 4G ARE DIFFERENT FROM THE RADII ON THE

14   BOTTOM ROUNDED CORNERS?

15   A    I COULDN'T DISPUTE YOUR MEASUREMENT BECAUSE I

16   HAVEN'T TAKEN THEM.

17   Q    SO YOU DON'T DISPUTE THAT THAT IMPORTANT

18   DESIGN ELEMENT THAT MR. STRINGER IDENTIFIED IN THE

19   '087 PATENT DOES NOT EXIST IN THE GALAXY, SAMSUNG

20   GALAXY S 4G?

21   A    I BELIEVE HE WAS TALKING OF WHAT SOMEONE

22   WOULD BE SPEAKING OF -- WHAT SOMEONE WOULD

23   UNDERSTAND WHEN THEY SEE THE DESIGN, WHICH I DON'T

24   UNDERSTAND TO BE DIMENSIONALLY IDENTICAL.

25   Q    HE SAID EQUAL RADII, SIR?

1    A    HE DID.

2    Q    THAT'S VERY PRECISE?

3    A    IN WORDS, YES.  IN PEOPLE'S VISUAL PERCEPTION,

4    I DON'T THINK IT IS QUITE SO PRECISE.

5            MR. VERHOEVEN:  CAN I HAVE ONE SECOND TO

6    CONFER WITH COUNSEL, YOUR HONOR?

7            THE COURT:  PLEASE, GO AHEAD.

8            (PAUSE IN PROCEEDINGS.)

9            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

10   Q    NOW, MR. STRINGER ALSO DISCUSSED THE LOZENGE

11   SHAPED DESIGN ELEMENT IN THE '087 PATENT.

12            DO YOU REMEMBER THAT GENERALLY?

13   A    GENERALLY I REMEMBER THAT, YES.

14   Q    AND CAN WE PUT UP SDX 3797.  HERE WE'VE GOT

15   THE '087 ON THE LEFT AND MR. STRINGER'S TESTIMONY

16   FROM JULY 31ST, PAGE 521, 2 THROUGH 11.

17            "QUESTION:  IT WAS IMPORTANT TO YOU, AS

18   THE DESIGN TEAM, THAT THAT LOZENGE SHAPED DESIGN BE

19   CENTERED VERTICALLY ON THE PHONE; RIGHT?

20            "ANSWER:  YES.

21            "QUESTION:  AND THAT -- THAT'S BETWEEN

22   THE TOP OF THE DISPLAY ELEMENT, WHICH WE SEE HERE,

23   AND THE TOP OF THE PHONE?  IS THAT CORRECT?

24            "ANSWER:  CENTERED THAT WAY ALSO.

25            "QUESTION:  OKAY.  SO IT'S CENTERED IN

1     BOTH WAYS?"

2              DO YOU SEE THAT?

3     A    I SEE THAT.  I DON'T EXACTLY AGREE WITH THE

4     WORDS THAT ARE THERE.  BUT, YES, I SEE THAT.

5     Q    SO MR. STRINGER IS SAYING THIS LOZENGE HERE

6     SHOULD BE CENTERED BOTH HORIZONTALLY AND

7     VERTICALLY?

8     A    I BELIEVE THE WORDS SAY IN THE PHONE, AND I

9     BELIEVE HE WAS SAYING -- I BELIEVE HE'S REFERENCING

10    THE BORDER.

11    Q    I'M SORRY.

12    A    NOT CENTERED ON THE PHONE, SIR.  I'M SORRY.

13    Q    I'M SORRY.  I DIDN'T HEAR YOU.  YOU BELIEVE

14    IT'S REFERENCING WHAT?

15    A    THE LOZENGE IS NOT IN THE CENTER OF THE PHONE.

16    Q    NO, NO, CENTERED BETWEEN THE TOP OF THE

17    DISPLAY ELEMENT AND THE BEZEL?

18    A    YES, YES.

19    Q    AND HE'S SAYING AN IMPORTANT DESIGN ELEMENT IN

20    THIS DESIGN -- BY THE WAY, DO YOU KNOW IF THIS IS A

21    MINIMALIST DESIGN?

22    A    I CERTAINLY BELIEVE IT DOESN'T HAVE MUCH

23    ORNAMENT.

24    Q    OKAY.  SO YOU KNOW --

25    A    I BELIEVE IT'S A FAIRLY PURE DESIGN, YES.

```
1    Q    OKAY.  SO HE SAID IT WAS IMPORTANT TO HAVE

2    THIS LOZENGE CENTERED HERE VERTICALLY AND

3    HORIZONTALLY; RIGHT?

4    A    YES.

5    Q    AND THAT WAS ANOTHER IMPORTANT DESIGN ELEMENT

6    THAT DISTINGUISHED HIS DESIGN; RIGHT?

7    A    YES.

8    Q    AND HE ALSO TESTIFIED, I DON'T KNOW IF YOU

9    REMEMBER THIS, IN A REPLY DECLARATION THAT THE

10   WIDTH OF THIS SPEAKER SLOT HERE FOR THE INITIAL

11   IPHONE WAS SET UP TO PROXIMATE THE VISUALLY

12   BALANCED WIDTH OF THE ROUND CONTROL BUTTON ON THE

13   BOTTOM OF THE INITIAL IPHONE.

14             DO YOU REMEMBER THAT?

15   A    DO I BELIEVE HE SAID THAT?

16   Q    OKAY.

17   A    ACTUALLY, I DON'T RECALL EXACTLY IF

18   MR. STRINGER SAID THAT.  I THINK SOMEBODY MAY HAVE

19   SAID THAT.

20   Q    SO LET'S SEE IF WE CAN PUT UP A DEMONSTRATIVE

21   WITH THE INFUSE 4G.

22             SO ON THE LEFT HERE WE'VE GOT THE '087

23   PATENT, WE'VE PULLED OUT THE LOZENGE ELEMENT, AND

24   ON THE RIGHT WE'VE GOT THE INFUSE 4G.

25             DO YOU SEE THAT?
```

```
1    A    I DO.

2    Q    AND WE PULLED OUT THE SPEAKER DETAIL ON THE

3    INFUSE 4G.

4             MS. KREVANS:  I'M SORRY.  CAN I ASK WHAT

5    DEMONSTRATIVE NUMBER THIS IS?

6             MR. VERHOEVEN:  YOUR HONOR, YOU MADE SOME

7    RULINGS ON CERTAIN PHONES AND INDICATED THAT OTHER

8    PHONES WERE APPROPRIATE, AND SO WE SUBSTITUTED OUT

9    THE SLIDES FROM THE PHONES THAT YOU RULED ON TO

10   MAKE SURE WE WERE ON THE RIGHT PHONES, WHICH ARE

11   THE INFUSE --

12            THE COURT:  WHAT'S THE SLIDE NUMBER?

13            MR. VERHOEVEN:  WE JUST CREATED THIS

14   AFTER YOUR RULING, YOUR HONOR.  IT'S JUST A

15   DEPICTION OF THE PHYSICAL EXHIBIT.

16            MS. KREVANS:  I'VE NEVER SEEN THIS BEFORE

17   THIS MOMENT, YOUR HONOR.

18            THE COURT:  SO IT HAS NO NUMBER?

19            MR. VERHOEVEN:  NOT RIGHT THIS SECOND,

20   YOUR HONOR.

21            THE COURT:  ALL RIGHT.  WELL, WHY DON'T

22   YOU MOVE ON TO ANOTHER ONE BECAUSE IT HAS NO NUMBER

23   AND I HAVEN'T RULED ON IT.  WE CAN TALK ABOUT IT.

24   BY MR. VERHOEVEN:

25   Q    WELL, YOU HAVE THE PHYSICAL INFUSE IN FRONT OF
```

```
1      YOU.

2                    CAN WE GET THAT IN FRONT OF HIM?

3      A    THANK YOU.

4                    MR. VERHOEVEN:  YOUR HONOR, COULD I SHOW

5      JUST THE WITNESS THE SLIDE AND ASK HIM IF IT'S AN

6      ACCURATE REPRESENTATION OF THE PHYSICAL EXHIBIT?

7                    THE COURT:  WHY DON'T YOU SHOW THE SLIDE

8      TO MS. KREVANS, PLEASE.

9                    MR. VERHOEVEN:  YES, YOUR HONOR.  IT'S

10     NOT ON THE SCREEN.

11                   MS. KREVANS:  YOUR HONOR, I DON'T THINK

12     IT IS A FAIR DEPICTION OF THE PHYSICAL EXHIBIT.

13                   THE COURT:  ALL RIGHT.  WELL, LET'S

14     HANDLE THIS AFTER THE BREAK, BECAUSE WE'RE GOING TO

15     TAKE A BREAK PROBABLY AT ABOUT 2:45.  SO IF YOU CAN

16     HANDLE SOMETHING ELSE FIRST AND WE CAN TALK ABOUT

17     THIS LATER, PLEASE.

18                   MR. VERHOEVEN:  YES, YOUR HONOR.

19     Q    NOW, LET'S TALK ABOUT THE LATERAL BORDERS ON

20     THE '087 PATENT, THE DESIGN PATENT, SIR.

21                   THE DISPLAY SCREEN BETWEEN THOSE BORDERS

22     IS CENTERED ON THE FRONT FACE; RIGHT?

23     A    ON WHICH PHONE ARE WE TALKING ABOUT?

24     Q    THE '087?

25     A    YES.
```

```
1    Q    AND -- WELL, YOU KNOW, LET'S JUST PUT UP DX

2    688, WHICH IS THE -- A DECLARATION OF MR. STRINGER

3    DESCRIBING THE INITIAL IPHONE DESIGN, AND GO TO

4    PAGE -- PARAGRAPH 24, PLEASE.

5               NOW, THIS IS ALSO IN YOUR EXHIBIT BINDER

6    IF YOU'D LIKE TO LOOK AT IT.

7               THIS IS MR. STRINGER'S SWORN DECLARATION;

8    CORRECT?

9    A    IT APPEARS TO BE.

10   Q    AND ON PARAGRAPH 24, HE SAYS, QUOTE, "THE

11   DISPLAY SCREEN OF THE IPHONE IS CENTERED ON ITS

12   FRONT SURFACE, SO AS TO CREATE A VERY NARROW

13   LATERAL -- SO AS TO CREATE VERY NARROW LATERAL

14   BORDERS AND WIDE, BALANCED BORDERS ON TOP AND

15   BOTTOM."

16               DO YOU SEE THAT?

17   A    I DO.

18   Q    AND HE GOES ON LATER IN THE PARAGRAPH, "FOR

19   EXAMPLE, BOTH THE SCREEN SIZE AND OVERALL DEVICE

20   WIDTH COULD HAVE BEEN MAINTAINED WHILE MAKING THE

21   LATERAL BORDERS WIDER BY ELIMINATING THE BEZEL

22   ALTOGETHER.

23               "AND THERE WAS NO FUNCTIONALITY

24   LIMITATION FROM PREVENTING US FROM ARRANGING THE

25   DISPLAY SCREEN MORE NEAR THE TOP OR BOTTOM OF THE
```

1    FRONT SURFACE, AS HAS BEEN DONE IN NUMEROUS OTHER

2    SMARTPHONE DESIGNS."

3              SO HE'S SAYING, LOOK, WE INTENTIONALLY

4    DECIDED TO HAVE VERY NARROW LATERAL BORDERS.  WE

5    COULD HAVE MADE THEM WIDER, BUT FOR DESIGN

6    PURPOSES, WE CHOSE TO MAKE THEM REALLY NARROW.

7    FAIR?

8    A    THAT'S A FAIR STATEMENT.

9    Q    AND YOU AGREE THAT THE ORDINARY OBSERVER

10   SHOULD BE DRAWN TO THOSE ASPECTS OF THE DESIGN THAT

11   MAKE IT DIFFERENT; RIGHT?

12   A    I BELIEVE THAT THE ORDINARY OBSERVER SHOULD BE

13   GETTING AN OVERALL IMPRESSION OF WHAT THE DESIGN OF

14   THE PHONE IS AND WHAT THE DESIGN THAT'S REPRESENTED

15   IN THE PATENT IS.

16   Q    BUT THEY SHOULD LOOK --

17   A    I DON'T BELIEVE THEY SHOULD BE INVESTIGATING

18   TEENY DETAILS ONE AT A TIME THE WAY YOU'RE DOING.

19   Q    WELL, YOU AGREED WITH ME EARLIER THAT THE

20   ORDINARY OBSERVER WOULD LOOK TO THOSE ASPECTS OF

21   THE DESIGN PATENT WHICH DIDN'T EXIST IN THE PRIOR

22   ART DESIGN PATENTS, THE POINTS OF NOVELTY, AND TAKE

23   THOSE POINTS OF NOVELTY AND LOOK AT THOSE WHEN

24   LOOKING AT THE ACCUSED DEVICES; RIGHT?

25   A    I BELIEVE SO.

1    Q    OKAY.  I --

2    A    I'M SORRY.  THAT ISN'T TRUE.  I DIDN'T SAY THE

3    ORDINARY OBSERVER WOULD DO THAT.  I SAID THAT THE

4    TEST FOR INFRINGEMENT WAS FOR A DESIGNER TO DO THAT

5    AND IDENTIFY THE DIFFERENCES AND COMPARE THEM TO

6    THE, TO THE PHONE, TO THE ACCUSED PHONE.

7    Q    AND THAT TEST IS DIFFERENT FROM YOUR TESTIMONY

8    ABOUT WHAT AN ORDINARY OBSERVER WOULD DO?

9    A    ABSOLUTELY.

10   Q    OKAY.  THE ORDINARY OBSERVER WOULD NOT BE

11   ANALYZING THE PHONE WITH THAT LEVEL OF DETAIL.

12   THEY WOULD BE GETTING AN OVERALL IMPRESSION, AND

13   THAT OVERALL IMPRESSION OF THE DIFFERENCES WOULD BE

14   WHAT THEY WOULD GAIN.

15   Q    SO YOUR TESTIMONY IS THE ORDINARY OBSERVER

16   WOULDN'T LOOK AT THE PRIOR ART, WOULDN'T BE AWARE

17   OF THE PRIOR ART?

18   A    UNDER THE LAW, IT'S MY UNDERSTANDING THEY HAVE

19   TO BE AWARE OF THE PRIOR ART, BUT I DON'T BELIEVE

20   THEY'D BE COMPARING THEM ON A DETAIL LEVEL THAT A

21   DESIGNER WOULD IN THIS CIRCUMSTANCE.

22   Q    WHAT DO YOU BASE THAT ON, SIR?

23   A    MY, MY YEARS OF EXPERIENCE IN WORKING WITH

24   CONSUMERS AND UNDERSTANDING WHAT THEY SEE AND WHAT

25   THEY DON'T SEE WHEN YOU PRESENT THEM WITH A DESIGN.

1    Q    ANYTHING ELSE?

2    A    MY UNDERSTANDING OF THE LAW.

3    Q    OKAY.  WHAT IS THAT UNDERSTANDING, JUST SO WE

4    HAVE A FOUNDATION?

5    A    MY UNDERSTANDING IS THAT -- ARE YOU TALKING

6    ABOUT THE LAW FOR INFRINGEMENT?

7    Q    WHATEVER YOU JUST REFERENCED IN YOUR ANSWER,

8    SIR.

9    A    MY UNDERSTANDING IS THAT AS PART OF THE

10   INFRINGEMENT ANALYSIS, THAT I, AS A DESIGNER, DO.

11   IT'S MY DUTY TO IDENTIFY THE DIFFERENCES BETWEEN

12   THE DESIGN IN QUESTION AND THE PRIOR ART TO

13   DETERMINE IF AN ORDINARY OBSERVER WOULD SEE THOSE

14   DIFFERENCES IN THE ACCUSED PRODUCT.

15   Q    OKAY.  SO LET'S LOOK AT JX 1093 COMPARED TO --

16   LET'S USE THE '677 PATENT THIS TIME, JX 1043.

17        CAN WE PUT THOSE BOTH UP?  AND JUST PULL

18   UP THE FIGURE 3.  CAN YOU JUST PULL -- AND TRY TO

19   SIZE IT WITH THIS FRONT FACE PICTURE, PLEASE,

20   MR. FISHER.

21        SO ON '677, THE NARROW BORDERS, THIS TINY

22   LITTLE SPACE RIGHT THERE; RIGHT?

23   A    YES.

24   Q    THIS PART HERE IS THE BEZEL; THIS PART IS THE

25   SCREEN; AND THEN THE LATERAL BORDER IS VERY, VERY

1    TINY, VERY SMALL; RIGHT?

2    A    YES.

3    Q    AND IN THIS PRADA PHONE, THE LATERAL BORDERS

4    ARE WIDER, AREN'T THEY?

5    A    I DON'T BELIEVE THAT THE PRADA IS PRIOR ART.

6    Q    THAT'S NOT WHAT I ASKED YOU.  I ASKED YOU

7    WHETHER THE BORDERS ARE WIDER?

8    A    BUT I DON'T KNOW WHY I'M COMPARING IT THEN.

9    Q    YES OR NO ARE THE BORDERS WIDER ON THE PRADA?

10   A    YES.

11   Q    NOW, IF WE CAN GO TO SLIDE SDX 3770.  HERE

12   WE'VE GOT THE '677 PATENT, WHICH HAS THIS VERY

13   NARROW LATERAL BORDERS.  DO YOU SEE THAT?

14   A    YES.

15   Q    AND THE '087 HAS SIMILARLY VERY NARROW LATERAL

16   BORDERS; RIGHT?

17          MS. KREVANS:  YOUR HONOR, THIS SLIDE WAS

18   OBJECTED TO AND YOUR HONOR DID NOT PERMIT THEM TO

19   SHOW IT.

20          THE COURT:  NO.  3770 I DID NOT EXCLUDE.

21   BY MR. VERHOEVEN:

22   Q    NOW, DO YOU RECALL THAT YOU DISTINGUISHED THE

23   PRADA PHONE FROM THE '677 AND '087 PATENT ON THE

24   GROUNDS THAT THE LATERAL BORDERS ARE WIDER?

25   A    YOU MEAN JUST ON THE PREVIOUS SLIDE?

```
 1    Q    NO.  IN YOUR EXPERT REPORTS.

 2    A    I DON'T RECALL.  I MAY HAVE.

 3    Q    DO YOU THINK THAT THAT'S A DISTINCTION BETWEEN

 4    THE '677 AND THE '087, THAT THE PRADA LATERAL

 5    BORDERS ON THE DISPLAY SCREEN ARE WIDER?

 6    A    I DON'T THINK IT'S A DRAMATIC DISTINCTION, NO.

 7    Q    OKAY.  DO YOU THINK IT'S A FACTOR THAT TAKES

 8    IT OUT OF BEING SUBSTANTIALLY SIMILAR?

 9    A    IN THE CONTEXT OF THE -- EXCUSE ME.

10         IN THE CONTEXT OF THE REST OF THE DESIGN,

11    I THINK IT DOES TAKE IT OUT OF BEING SUBSTANTIALLY

12    SIMILAR.

13    Q    BUT FOR THE INFUSE 4G, IT DOESN'T?

14    A    THAT'S CORRECT.  IN THE CONTEXT OF THE REST OF

15    THE DESIGN, IT DOESN'T.

16    Q    SO THE 4G HAS A WIDER LATERAL BORDER, MUCH

17    WIDER THAN THE '677 PATENT; RIGHT?

18    A    WELL, YOUR CIRCLE IS INCLUDING THE BEZEL IN

19    THE 4G, WHAT I WOULD CALL THE BEZEL ON THE 4G AS

20    PART OF THE LATERAL BORDER.

21    Q    SIR, DIDN'T YOU JUST ADMIT EARLIER TODAY THAT

22    THE 4G DOES NOT HAVE A BEZEL?

23    A    IT HAS A CASE THAT APPEARS LIKE A BEZEL.

24    Q    MS. KHAN, COULD I HAVE THE INFUSE 4G PHYSICAL

25    EXHIBIT?  THIS IS JX 1027 FOR THE RECORD.
```

```
1              YOUR TESTIMONY IS THAT THE INFUSE 4G
2    LATERAL SPACE WE'RE LOOKING AT ON THE SCREEN IS
3    ACTUALLY THE BEZEL?
4    A    NO.  I'M SAYING THAT CIRCLE THAT YOUR
5    IDENTIFYING IT WITH IS INCLUDING THE WIDTH OF THAT
6    CASE THAT I BELIEVE LOOKS LIKE A BEZEL.
7    Q    AND HOW WIDE --
8    A    IT'S NOT JUST THE FLAT FACE.
9    Q    HOW WIDE IS THAT CASE?
10   A    I WOULD IMAGINE IT MIGHT BE A MILLIMETER.
11   Q    A MILLIMETER?
12   A    YEAH.
13   Q    SO IF YOU TAKE A MILLIMETER OFF THE EDGE, IT'S
14   STILL, WHAT, 10, 15, 20 TIMES WIDER LATERAL BORDER
15   THAN THE '677 PATENT?
16   A    I DON'T THINK IT'S THAT MUCH, BUT IT IS WIDER,
17   YES.
18   Q    BY A FACTOR OF 10?
19   A    AGAIN, THIS IS A LEVEL OF DETAIL THAT THE
20   ORDINARY OBSERVER WOULDN'T EVEN BE INTERESTED IN
21   LOOKING AT.
22   Q    SIR, I DIDN'T ASK YOU ABOUT THAT.  I DIDN'T
23   ASK YOU THAT.  CAN YOU ANSWER MY QUESTION?
24   A    AS A DESIGNER, THE ANSWER TO YOUR QUESTION IS,
25   YES, THEY'RE DIFFERENT WIDTHS.
```

```
1    Q    SUBSTANTIALLY DIFFERENT?

2    A    SUBSTANTIALLY DIFFERENT, I'M SORRY, I NEED TO

3    RESERVE FOR THE OVERALL DESIGN.

4    Q    SO YOU DISAGREE --

5    A    IT'S A LONG LEVEL OF DETAIL TO LOOK AT IN

6    ANALYZING THE DESIGN.

7    Q    DO YOU DISAGREE THAT THEY'RE SUBSTANTIALLY

8    DIFFERENT IN TERMS OF THE LATERAL BORDER?

9    A    PARDON ME.

10   Q    YOU DISAGREE THAT THE IPHONE 4G IS

11   SUBSTANTIALLY DIFFERENT FROM THE '677 PATENT AND

12   THE '087 PATENT IN TERMS OF THE WIDTH OF THE

13   LATERAL BORDER?

14   A    I BELIEVE THERE IS A MINOR DIFFERENCE BETWEEN

15   THEM.  I DON'T BELIEVE IT'S SUBSTANTIALLY

16   DIFFERENT.

17   Q    SO IF THE WIDTH IS MEASURED AND IT TURNS OUT

18   TO BE A FACTOR OF 15 TIMES WIDER, YOU THINK THAT'S

19   JUST A MINOR DETAIL?

20   A    I BELIEVE THAT DEPENDS ON THE CONTEXT OF THE

21   DESIGN AND THE OVERALL IMPRESSION THAT'S BEING

22   CREATED.

23   Q    SO YOU CAN'T SAY?

24   A    OKAY, IF THAT WORKS FOR YOU.

25        I MEAN, THAT'S -- YOU'RE ASKING ME TO
```

1   COMPARE PEANUT BUTTER TO TURKEY.  I'M SORRY.

2   Q    PEANUT BUTTER AND TURKEY?

3   A    YES.

4   Q    WHICH ONE IS PEANUT BUTTER AND WHICH ONE IS

5   TURKEY?

6   A    I HAVE NO IDEA.  I'M JUST GETTING FRUSTRATED

7   THAT YOU'RE ASKING ME TO DESIGN.

8   Q    SIR, DETAILS MATTER IN DESIGN PATENTS, DON'T

9   THEY?

10  A    IN GENERAL, YES.  THEY FORM -- THEY CONTRIBUTE

11  TO HOW AN ORDINARY OBSERVER FORMS AN OVERALL

12  IMPRESSION.

13  Q    LET'S GO TO SDX 3799.

14        NOW, MR. STRINGER ALSO TESTIFIED ON JULY

15  31ST ABOUT THE DARK OILY POND.

16        YOU'VE HEARD ABOUT THE DARK, OILY POND

17  BEFORE; RIGHT?

18  A    YES.

19  Q    THIS IS JULY 31ST, TRANSCRIPT PAGES 521:23

20  THROUGH 522, LINE 12.

21        "QUESTION:  IN FACT, YOU WANTED TO CREATE

22  A PRODUCT THAT EMBODIED THE SIMPLEST OF ICONS, AND

23  ONE KEY IMAGE WAS THAT OF A DARK, OILY POND.  IS

24  THAT RIGHT?

25        "ANSWER:  YES.

```
 1                  "QUESTION:  THAT WAS YOUR DESIGN GOAL;
 2      RIGHT?
 3                  "ANSWER:  THAT WAS ONE --
 4                  "QUESTION:  GO AHEAD.
 5                  "ANSWER:  THAT WAS ONE DESCRIPTION OF A
 6      DESIGN GOAL, YES.
 7                  "QUESTION:  YOU DIDN'T WANT TO PUT
 8      MULTIPLE BUTTONS ON THE FACE OF THE PHONE; CORRECT?
 9                  "ANSWER:  CORRECT.
10                  "QUESTION:  YOU WANTED IT TO BE AS SIMPLE
11      AS POSSIBLE?
12                  "ANSWER:  YES."
13                  DO YOU REMEMBER THAT TESTIMONY?
14      A    I DO.
15      Q    IS THAT WHAT "MINIMALIST DESIGN" MEANS, MAKING
16      IT AS SIMPLE AS POSSIBLE?
17      A    DO YOU REALLY WANT ME TO GET INTO A --
18      Q    I'M ASKING YOU, SIR.  CAN YOU ANSWER THE
19      QUESTION?
20      A    I DON'T BELIEVE IT'S THAT SIMPLE, BUT YES.
21      Q    OKAY.  NOW, LET'S LOOK AT A COMPARISON OF THE
22      '677, DARK, OILY POND AGAINST THE GALAXY S II
23      T-MOBILE.  OOPS.
24                  JUST ONE SECOND, YOUR HONOR.
25                  THE COURT:  OKAY.
```

```
 1                    (PAUSE IN PROCEEDINGS.)

 2                    MR. VERHOEVEN:  I MISSPOKE, YOUR HONOR.

 3     Q    AGAINST THE INFUSE 4G.  THIS IS SDX 3776.

 4                    SO ON THE LEFT HERE, WE'VE GOT THE '677

 5     DESIGN PATENT.  IT'S GOT THE BLACK FACE; RIGHT?

 6     A    YES.

 7     Q    AND IT'S GOT -- IT'S NOT CLAIMING THIS BUTTON

 8     DOWN AT THE BOTTOM; RIGHT?

 9     A    YES.

10     Q    THAT'S WHY THE DOTTED LINES ARE AROUND IT;

11     RIGHT?

12     A    CORRECT.

13     Q    SO THE ONLY DESIGN ELEMENTS IN THIS DARK, OILY

14     POND THAT MR. STRINGER WAS TALKING ABOUT ARE THIS

15     LOZENGE SHAPE AND THIS SCREEN SHAPE; RIGHT?

16     A    YES.

17     Q    NOW, IF YOU LOOK AT THE INFUSE 4G, IT'S GOT A

18     BUNCH OF KEYS, DOESN'T IT, SIR?

19     A    YES.  THEY'RE SO SMALL YOU NEED TO POINT THEM

20     OUT WITH A CIRCLE, BUT, YES, THERE ARE KEYS THERE,

21     YES.

22     Q    THESE ARE KEYS THAT ARE DESIGNED FOR USERS TO

23     TOUCH AND HAVE FUNCTIONS HAPPEN; CORRECT, SIR?

24     A    YES.

25     Q    THE MENU KEY RIGHT THERE, DO YOU HAVE AN
```

```
 1    UNDERSTANDING OF WHAT THAT'S FOR?

 2    A    I DO, BUT THAT HAD NOTHING TO DO WITH MY

 3    DESIGN PATENT INVESTIGATION.

 4    Q    TELL THE JURY WHAT THAT'S FOR?

 5    A    I ASSUME IT'S TO PULL UP A MENU.

 6    Q    THERE'S THIS LITTLE PICTURE OF A HOUSE.

 7    THAT'S A SEPARATE KEY, ISN'T IT?

 8    A    I GUESS.

 9    Q    YOU DON'T KNOW?

10    A    I'M NOT AN EXPERT IN THE FUNCTION OF PHONE,

11    SIR.  I'M SORRY.

12    Q    WELL, YOU'RE A DESIGN --

13    A    I AM ANALYZING THE OVERALL IMPRESSION OF THE

14    DESIGN AND THOSE ARE VISUAL ELEMENTS THAT, IN THIS

15    DESIGN, I HAVE A FEELING YOU BARELY NOTICE UNTIL

16    THE PHONE LIGHTS UP.

17    Q    I THOUGHT I HEARD YOU TESTIFY ABOUT WHETHER OR

18    NOT CERTAIN ELEMENTS OF THE DESIGN ARE FUNCTIONAL

19    WHEN COUNSEL FOR APPLE WAS ASKING YOU QUESTIONS ON

20    YOUR DIRECT EXAM.

21              ARE YOU TELLING ME YOU'RE NOT AN EXPERT

22    IN THAT AREA?

23    A    NO, I'M NOT TELLING YOU THAT.

24    Q    I THOUGHT I JUST HEARD YOU SAY THAT, SIR?

25    A    WHAT?
```

1    Q    THAT YOU'RE NOT AN EXPERT IN THE FUNCTIONALITY

2    OF THE PHONE?

3    A    I'M NOT AN EXPERT IN HOW THE PHONE WORKS.

4    Q    IS THAT DIFFERENT FROM --

5    A    YES, IT IS.

6    Q    -- FROM THE FUNCTIONALITY OF THE PHONE?

7    A    IT'S DIFFERENT FROM THE FUNCTIONALITY AS IT'S

8    UNDERSTOOD IN A DESIGN PATENT.

9    Q    HOW SO?

10   A    PARDON ME?

11   Q    HOW SO?

12   A    FUNCTIONALITY IN A DESIGN PATENT HAS TO DO

13   WITH WHETHER ANY OF THE VISUAL ELEMENTS OF THE

14   APPEARANCE ARE DICTATED BY THE FUNCTION THEY

15   PERFORM.

16   Q    OKAY.  SO FUNCTION IN THAT SENTENCE MEANS HOW

17   IT WORKS?

18   A    NO.  FUNCTIONALITY IN THAT SENTENCE IS

19   RELATING TO THE APPEARANCE, AND IF YOU CAN HAVE A

20   DIFFERENT APPEARANCE THAT PERFORMS THE SAME

21   FUNCTION, THEN IT IS NOT CONSIDERED FUNCTIONAL AS

22   IT RELATES TO A DESIGN PATENT.

23   Q    OKAY.  WHEN YOU USE THE PHRASE "PERFORMS THE

24   SAME FUNCTION," YOU'RE TALKING ABOUT HOW THE PHONE

25   WORKS; RIGHT?

```
 1    A    NOT NECESSARILY.  I MEAN, IF IT'S -- IF IT'S

 2    WHERE THE DISPLAY IS, YOU KNOW, YOU CAN -- A

 3    DISPLAY FUNCTIONS, IT IS FUNCTIONAL.

 4             BUT WHERE IT IS, WHAT SIZE IT IS, THE

 5    LOCATION OF IT AND WHAT THE SHAPE OF THE OUTSIDE OF

 6    IT IS, THOSE ARE ALL APPEARANCE DECISIONS THAT ARE

 7    NOT DRIVEN BY FUNCTION.

 8    Q    WHEN YOU USE THE WORD "FUNCTION" IN THAT LAST

 9    ANSWER, YOU MEAN HOW THE PHONE FUNCTIONS?  NO?

10    A    NO, I DO NOT.

11    Q    OKAY.  AND THAT WAS THE UNDERSTANDING YOU USED

12    WHEN YOU APPLIED YOUR ANALYSIS, WHAT YOU JUST SAID?

13    A    AS I EXPLAINED IT, YES.

14    Q    BUT JUST SO THAT WE'RE CLEAR, YOU'RE NOT AN

15    EXPERT ON FUNCTIONALITY OF THE SMARTPHONES?

16    A    IN YOUR USE OF THE WORD "FUNCTIONALITY" AS IT

17    RELATES TO HOW THEY WORK, THAT'S CORRECT.

18    Q    IS THIS -- DO YOU SEE THESE FOUR KEYS ON THE

19    BOTTOM OF THE INFUSE 4G?

20    A    YES.

21    Q    THAT'S -- THAT'S ORNAMENTATION ON THE FRONT

22    FACE OF THE PHONE; RIGHT?

23    A    YEAH, MINOR ORNAMENTS, YES.

24    Q    AND THAT'S DIFFERENT FROM THE CONCEPT OF A

25    DARK, OILY POND?
```

1    A    NO.  I BELIEVE THE DARK, OILY POND IS THERE

2    AND THOSE HAPPEN TO BE SOME RELATIVELY INDISTINCT

3    ELEMENTS THAT ARE AT THE BOTTOM OF IT.

4    Q    WHAT DOES LITTLE HOUSE SYMBOL MEAN?

5    A    DO YOU WANT ME TO INTERPRET IT SITTING HERE ON

6    THE STAND?

7    Q    TELL THE JURY YOUR UNDERSTANDING?

8    A    I WOULD INTERPRET IT TO BE A HOME BUTTON.

9    Q    SO A USER --

10   A    HOME KEY.

11   Q    SO THAT'S FOR A USER TO TOUCH TO GO BACK TO

12   THE HOME SCREEN?

13   A    YES.

14   Q    OKAY.  YOU SAY THIS IS MINIMALIST AND NO ONE

15   WOULD NOTICE IT?

16   A    PARDON ME?

17   Q    IS IT YOUR TESTIMONY TO THE JURY THAT THIS IS

18   SO MINIMALIST THAT NOBODY WOULD NOTICE IT?

19   A    NO.  IT'S MY TESTIMONY THAT THEY WOULD NOT

20   HAVE A SIGNIFICANT INFLUENCE ON THE OVERALL

21   IMPRESSION THAT THE ORDINARY OBSERVER HAD OF THE

22   DESIGN OF THIS PHONE.

23   Q    THE ORDINARY OBSERVER IS GOING TO LOOK AT THAT

24   AND UNDERSTAND THAT'S COMMUNICATING A HOUSE AND IF

25   THEY TOUCH IT, THEY CAN GO TO THE HOME SCREEN;

1   RIGHT?

2   A    THAT'S TRUE IN HOW THE PHONE OPERATES, THAT'S

3   CORRECT.

4   Q    SO THE USER IS GOING TO KNOW THAT, THEY'RE

5   GOING TO SEE IT, THEY'RE GOING TO UNDERSTAND IT;

6   RIGHT?

7   A    YES.

8   Q    AND THE SAME THING IS TRUE FOR THIS MENU

9   BUTTON; RIGHT?

10  A    YES.

11  Q    DO YOU SEE THIS ARROW THAT CURVES AROUND

12  BACKWARDS?

13  A    YES.

14  Q    WHAT'S YOUR UNDERSTANDING OF WHAT THAT BUTTON

15  IS?

16  A    I'M NOT SURE.  I CAN GUESS IT MEANS GO BACK.

17  Q    WHEN YOU CONDUCTED YOUR ANALYSIS OF THE

18  INFUSE 4G, DID YOU ACTUALLY USE ANY OF THESE

19  BUTTONS?

20  A    IN TERMS OF MY ANALYSIS OF THE DESIGN PATENTS,

21  NO.

22  Q    SO IN ANY EVENT, YOU'D AGREE WITH ME THAT THIS

23  IS SOMETHING THAT A USER WOULD SEE AND UNDERSTAND,

24  THIS IS A BUTTON THEY CAN PRESS IN ORDER TO GO

25  BACKWARDS?

1    A    THAT WOULD BE PART OF THEIR UNDERSTANDING OF

2    THE USE OF THE PHONE, NOT THEIR OVERALL IMPRESSION

3    OF THE DESIGN AS IT RELATES TO A DESIGN PATENT.

4    Q    YOU WOULD AGREE WITH ME THAT IN THEIR OVERALL

5    IMPRESSION, THEY WOULD SEE THERE'S FOUR SEPARATE

6    BUTTONS ON THE BOTTOM OF THIS PHONE?  YES?

7    A    I BELIEVE THEY WOULD SEE THEM AND THAT THEY

8    ARE NOT AS IMPORTANT IN THE OVERALL IMPRESSION AS

9    THE CONTINUOUS GLASS REFLECTIVE, TRANSPARENT BLACK

10   FACE.

11   Q    AND DO YOU SEE THIS SEARCH KEY DOWN AT THE

12   BOTTOM?

13   A    I SEE YOU POINTING TO IT, YES.

14   Q    I GUESS WE LABELED IT A SEARCH KEY.

15        DID YOU UNDERTAKE ANY ANALYSIS OF THAT

16   BUTTON?

17   A    NO.

18   Q    SO YOU DIDN'T FACTOR ANY OF THESE BUTTONS INTO

19   YOUR ANALYSIS, DID YOU, SIR?

20   A    ONLY AS TO WHETHER I COULD SEE THEM AND WHAT

21   FACTOR THEY HAD IN THE OVERALL IMPRESSION OF THE

22   APPEARANCE OF THE PHONE.

23   Q    AND THEN YOU SEE THERE'S, THERE'S BRANDING ON

24   THE PHONE, AT&T AND SAMSUNG?

25   A    I BELIEVE THAT BRANDING IS NOT CONSIDERED --

7166

```
1     Q     DO YOU SEE THAT?

2     A     I SEE IT, YES.

3     Q     AND THEN THERE'S HOLES AT THE TOP THAT ARE

4     HARD TO SEE ON THIS SCREEN, FOR THE CAMERA; RIGHT?

5     A     IF YOU SAY SO.

6     Q     AND THE SENSORS?

7     A     I --

8     Q     YOU DIDN'T EXAMINE THIS TO DETERMINE WHETHER

9     IT'S GOT A CAMERA HOLE?

10    A     TO BE HONEST WITH YOU, I NOTICED THAT THERE

11    WAS AN OPENING IN THE FRONT FACE AS A DESIGNER

12    EXAMINING THE DETAILS OF A PHONE.

13             I DO NOT BELIEVE THAT AN ORDINARY

14    OBSERVER WOULD BE LOOKING AROUND FOR WHERE THE

15    SENSOR IS ON THE FRONT OF THE PHONE.

16             MR. VERHOEVEN:  YOUR HONOR, I'M ABOUT TO

17    SWITCH SUBJECTS.  I DON'T KNOW IF YOU WANT ME TO

18    KEEP GOING OR IF YOU WANT TO TAKE A BREAK NOW.

19             THE COURT:  WE CAN GO AHEAD AND TAKE A

20    BREAK NOW.  IT'S 2:43.  SO WE'LL TAKE A 15-MINUTE

21    BREAK.

22             PLEASE CONTINUE TO KEEP AN OPEN MIND.

23    DON'T TALK AMONG YOURSELVES OR WITH ANYONE ABOUT

24    THE CASE AND PLEASE DON'T READ ABOUT THE CASE OR DO

25    ANY RESEARCH.
```

7167

1                  THANK YOU.

2                  YOU CAN LEAVE YOUR BOOKS EITHER HERE OR

3      IN THE JURY ROOM.  WHATEVER IS EASIER FOR YOU.

4                  (WHEREUPON, THE FOLLOWING PROCEEDINGS

5      WERE HELD OUT OF THE PRESENCE OF THE JURY:)

6                  THE COURT:  YOU CAN STEP DOWN.  THE

7      RECORD SHOULD REFLECT THE JURORS HAVE LEFT THE

8      COURTROOM.

9                  DO WE NEED TO HANDLE THIS '087 COMPARISON

10     WITH THE INFUSE, OR ARE YOU GOING TO MOVE ON?

11                 MR. VERHOEVEN:  I WOULD LIKE TO SHOW

12     THOSE SLIDES, YOUR HONOR.  WHAT WE DID WAS WE

13     DIDN'T REALIZE THAT THEY HAD OBJECTIONS TO THOSE

14     OTHER PHONES.  THEY NEVER TOLD US THAT.  IF WE HAD

15     KNOWN THAT, WE COULD HAVE SWAPPED THESE OUT.  WE'RE

16     SWAPPING OUT THE IMAGE OF THE INFUSE 4G TO BE THE

17     GALAXY S.  IT'S NOT CONTROVERSIAL.

18                 THE COURT:  WHAT IS THIS -- I ONLY

19     THOUGHT THIS WAS ONE THAT WAS IN DISPUTE.

20                 MR. VERHOEVEN:  I DIDN'T USE THE OTHER

21     ONE BECAUSE YOUR HONOR TOLD ME TO MOVE ON.  WE CAN

22     PUT THEM UP.

23                 THE COURT:  ALL RIGHT.  WHY DON'T WE SEE

24     THOSE, PLEASE.

25                 MR. VERHOEVEN:  I DON'T KNOW IF EVERYONE

1    HAS TO STAND UP STILL.

2         THE COURT:  OH, NO.  I'M SORRY.  I ALWAYS

3    FORGET ABOUT THAT.  PLEASE TAKE A SEAT.

4         ALL RIGHT.  SO THAT ONE I HAD AS DEFENSE

5    EXHIBIT 62.  YOU SAID IT'S UNNUMBERED?  DO YOU

6    HAVE --

7         MR. VERHOEVEN:  WHAT WE DID, YOUR HONOR,

8    IS WHEN YOU TOLD US YOUR RULING, WE HAD A DIFFERENT

9    PHONE FOR THIS POINT.

10        THE COURT:  OKAY.

11        MR. VERHOEVEN:  AND ALL WE DID IS WE TOOK

12   A PICTURE OF THE PHONE YOU SAID WE COULD USE

13   INSTEAD OF THE OTHER PHONE.

14        THE COURT:  ALL RIGHT.

15        MR. VERHOEVEN:  AND IT'S THE SAME IMAGE,

16   EXCEPT A DIFFERENT PHONE.

17        THE COURT:  ALL RIGHT.  SO LET ME HEAR

18   FROM MS. KREVANS.  WHAT'S YOUR OBJECTION?

19        MS. KREVANS:  BECAUSE, YOUR HONOR, THEY

20   HAVE BLOWN UP A SMALL PORTION OF THE FACE OF THE

21   PHONE TO A DEGREE THAT NO PERSON WOULD ACTUALLY SEE

22   IT IN THEIR LIFE.  SO IT'S A COMPLETE DISTORTION OF

23   WHAT EITHER AN ORDINARY OBSERVER OR EVEN A DESIGN

24   EXPERT WOULD SEE.  THERE'S TINY DETAIL ON THE FRONT

25   OF THE PHONE AND THEY'VE CREATED THIS BIG IMAGE OF

```
1    IT.  BUT THAT'S NOT WHAT A PERSON ACTUALLY SEES

2    WHEN THEY LOOK AT THE PHONE.

3             THE COURT:  WELL, I THINK THAT'S REALLY

4    MORE WEIGHT AND NOT ADMISSIBILITY.

5             SO IT'S GOING TO COME IN.  YOU CAN ARGUE

6    IT.

7             LET'S SEE THE NEXT ONE -- WELL, LET'S

8    GIVE IT A NUMBER JUST SO I CAN KEEP THIS STRAIGHT.

9             MR. VERHOEVEN:  YES, YOUR HONOR.

10             THE COURT:  CAN WE SAY THIS IS SDX --

11    WHAT WOULD YOU LIKE TO CALL IT?

12             MR. VERHOEVEN:  ONE SECOND, YOUR HONOR,

13    WE'LL GET A NUMBER FOR YOU.

14             THE COURT:  OH, GREAT.  I'M GOING TO CALL

15    THIS ONE DEFENSE EXHIBIT 68, BUT GO AHEAD AND GIVE

16    ME A --

17             MS. KREVANS:  YOUR HONOR, IT'S A

18    DEMONSTRATIVE, SO I THINK YOU SHOULD --

19             THE COURT:  I KNOW.  BUT I'M ACTUALLY

20    TRYING TO KEEP TRACK OF BOTH DEMONSTRATIVES AND

21    EXHIBITS, SO I'M GIVING EVERYTHING A NUMBER,

22    UNDERSTANDING THAT THERE'S GOING TO BE HOLES

23    BECAUSE THE DEMONSTRATIVES FOR THE MOST PART ARE

24    NOT GOING TO COME IN.

25             MS. KREVANS:  YOUR HONOR, I WOULD ASK, IF
```

2170

```
1     THEY'RE PERMITTED TO PERFORM THIS SLIDE, THAT THEY
2     HAVE TO INFORM THE JURY HOW MANY TIMES
3     MAGNIFICATION IS THE PICTURE THAT THEY'RE LOOKING
4     AT.
5               THE COURT:  I REALLY THINK THIS IS
6     WEIGHT, NOT ADMISSIBILITY.
7               YOU CAN ARGUE IT.  OKAY.
8               SO WHAT DO YOU WANT TO CALL THIS ONE?
9     SDX, WHAT'S THE NEXT --
10              MR. VERHOEVEN:  3811-A IS WHAT I'M BEING
11    TOLD.
12              THE COURT:  3811-A.  OKAY.  AND THEN
13    LET'S LOOK AT THE '087 COMPARED TO THE INFUSE.
14              ALL RIGHT.  SAME OBJECTION, MS. KREVANS?
15              MS. KREVANS:  YES, IT IS, YOUR HONOR.
16    AND ALSO, WE DON'T ACTUALLY HAVE EITHER OF THESE
17    SLIDES.
18              THE COURT:  ALL RIGHT.  I'M GOING TO ASK
19    YOU TO PLEASE GIVE THEM TO APPLE OVER THE BREAK,
20    BUT IF IT'S THE SAME OBJECTION, IT GOES TO WEIGHT,
21    NOT ADMISSIBILITY.  IT'S COMING IN.  THE OBJECTION
22    IS OVERRULED.  GIVE ME A NUMBER FOR THIS ONE AS
23    WELL.
24              MR. VERHOEVEN:  3811-B, YOUR HONOR.
25              MS. KREVANS:  AND, YOUR HONOR, BECAUSE
```

```
1   THESE ARE DEMONSTRATIVES, I DON'T THINK THERE IS A

2   QUESTION OF IT GOES TO WEIGHT, NOT ADMISSIBILITY.

3   THESE ARE NOT ADMISSIBLE ANY WAY.

4           THE COURT:  I UNDERSTAND.  IT'S REALLY, I

5   GUESS, A 403 ANALYSIS.  MAYBE I SHOULD BE MORE

6   PRECISE.  IF YOU'RE SAYING THIS IS OVERLY

7   PREJUDICIAL BECAUSE IT'S SOMEHOW MISLEADING, I AM

8   OVERRULING THAT BECAUSE I THINK THE PROBATIVE VALUE

9   OUTWEIGHS ANY PREJUDICE, MISLEADING OF THE JURY,

10  CONFUSION, WASTE OF TIME, ET CETERA.

11          OKAY.  ALL RIGHT.  SO WHEN WE COME BACK,

12  YOU CAN DO THOSE TWO.

13          AND I THINK THAT WAS IT THAT'S

14  OUTSTANDING.

15          MR. MCELHINNY:  I'M SORRY, YOUR HONOR.

16          THE COURT:  YEAH.

17          MR. MCELHINNY:  JUST BECAUSE THE LANGUAGE

18  IS GETTING -- THESE ARE DEMONSTRATIVES, THEY'RE NOT

19  GOING TO GO INTO EVIDENCE, BUT YOUR HONOR HAS SAID

20  ADMITTED A COUPLE OF TIMES.  THEY CAN BE SHOWN TO

21  THE JURY, BUT THEY HAVE NOT BEEN MOVED INTO

22  EVIDENCE.

23          THE COURT:  THAT'S RIGHT, AND I DON'T

24  THINK THEY'RE GOING TO BE MOVED INTO EVIDENCE;

25  RIGHT, MR. VERHOEVEN?
```

```
 1            MR. VERHOEVEN:  I WASN'T INTENDING TO.  I

 2   WAS -- I GUESS I HADN'T FOCUSSED ON THE FACT THAT

 3   THERE'S A BUNCH OF DEMONSTRATIVES THAT COUNSEL FOR

 4   APPLE HAS MOVED INTO EVIDENCE SUCCESSFULLY.

 5            MS. KREVANS:  THAT IS NOT TRUE, YOUR

 6   HONOR.  WE HAVE NOT MOVED ANY DEMONSTRATIVES INTO

 7   EVIDENCE.

 8            THE COURT:  YES, YOU HAVE.

 9            MS. KREVANS:  WE HAVE MOVED PHOTOGRAPHS

10   THAT ARE ACTUAL DEVICES AND COMPILATIONS.  THERE

11   WERE OBJECTIONS WHETHER THEY WERE PROPER

12   COMPILATIONS.  THEY HAVE BEEN OFFERED AND THEY'RE

13   IN.

14            AND ALL THE UNDERLYING PHYSICAL DEVICES

15   WERE AVAILABLE FOR INSPECTION.  THEY WERE NOT

16   ALTERED IN ANY WAY IN THOSE PHOTOGRAPHS.  THIS IS

17   COMPLETELY DIFFERENT.

18            THE COURT:  ALL RIGHT.  WELL, THESE ARE

19   NOT GOING TO COME IN AS EXHIBITS, BUT THEY CAN BE

20   SHOWN TO THE JURY.

21            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

22            THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.

23   WE'LL TAKE OUR BREAK NOW.

24            OH, AND CAN I GET THE SAMSUNG EXPERT

25   REPORTS?  DID I GET THOSE?  CAN I PLEASE GET THOSE
```

```
1    AS SOON AS POSSIBLE.

2              MR. VERHOEVEN:  YES, YOUR HONOR.  WE'RE

3    COMING BACK AT 3:00 DID YOU SAY?

4              THE COURT:  YES, THAT'S FINE.  THANK YOU.

5              (WHEREUPON, A RECESS WAS TAKEN.)

6              THE COURT:  ALL RIGHT.  ARE WE ALL SET?

7    OKAY, YES, PLEASE, GO AHEAD AND BRING THEM IN.

8              (WHEREUPON, THE FOLLOWING PROCEEDINGS

9    WERE HELD IN THE PRESENCE OF THE JURY:)

10             THE COURT:  ALL RIGHT.  THE TIME IS 3:03.

11   PLEASE GO AHEAD.

12             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

13   Q    GO BACK TO SDX 3797, PLEASE.

14             WE LOOKED AT THIS BEFORE THE BREAK,

15   MR. BRESSLER.  DO YOU REMEMBER THIS TESTIMONY FROM

16   MR. STRINGER?

17   A    I DO.

18   Q    I JUST WANT TO REFRESH US WHERE HE WAS TALKING

19   ABOUT THE LOZENGE SHAPED ELEMENT IN THE '087

20   PATENT?

21   A    YES.

22   Q    AND HE TALKED ABOUT IT WAS AN IMPORTANT DESIGN

23   CONSIDERATION THAT IT WAS CENTERED BOTH VERTICALLY

24   AND HORIZONTALLY.

25             DO YOU REMEMBER THAT?
```

2174

1    A    I BELIEVE HE SAID THAT, YES.

2    Q    NOW, IF WE CAN PULL UP DX 511 AT PAGE 3 AGAIN,

3    THE PRIOR ART JP '638 PATENT AND HIGHLIGHT THAT.

4                CAN WE PUT THAT NEXT TO AN IMAGE OF THE

5    FRONT FACE OF THE '087, MR. FISHER?

6                JUST A SECOND, YOUR HONOR, AND WE'LL GET

7    IT UP ON THE SCREEN.

8                SO YOU AGREE THAT IN THE PRIOR ART THAT

9    THERE WAS -- THE PRIOR ART DID DISCLOSE LOZENGE

10   SHAPED SPEAKER OPENINGS; RIGHT?

11               MS. KREVANS:  OBJECTION, YOUR HONOR.  THE

12   IMAGE THAT HE'S SHOWN IN FIGURE 3 FROM THE '087 IS

13   NOT A FIGURE FROM THE EMBODIMENT ABOUT THE -- WHICH

14   MR. BRESSLER GAVE HIS OPINION ANALYSIS.  THIS IS

15   FROM THE FIRST EMBODIMENT, AND HE TALKED ABOUT THE

16   SECOND EMBODIMENT.

17               MR. VERHOEVEN:  I'M JUST ASKING WHAT THE

18   IMAGE SHOWS, YOUR HONOR.  I ALREADY USED THIS IMAGE

19   THREE OR FOUR TIMES IN THE CROSS-EXAMINATION.

20               THE COURT:  OVERRULED.

21               GO AHEAD, PLEASE.

22   BY MR. VERHOEVEN:

23   Q    DO YOU SEE THE LOZENGE OPENING UP HERE,

24   MR. BRESSLER?

25   A    YES.

1    Q    SO THE PRIOR ART HAD LOZENGE OPENINGS, LOZENGE

2    SHAPED OPENINGS IN THE TOP PART OF THE RECTANGULAR

3    SHAPED PHONE ABOVE THE DISPLAY SCREEN; RIGHT?

4    A    ON THAT UPPER SLOPED BORDER, YES.

5    Q    YEAH.  AND WHAT MR. STRINGER IS SAYING IS --

6    WAS THE IMPORTANT DESIGN ELEMENT OF THIS LOZENGE IS

7    THAT IT'S CENTERED BOTH VERTICALLY AND

8    HORIZONTALLY; RIGHT?

9         MS. KREVANS:  SAME OBJECTION, YOUR HONOR,

10   BECAUSE NOW IT'S REALLY MORE IMPORTANT BECAUSE

11   FIGURE 43 SHOWS A FIGURE WITH A LOZENGE SHAPED

12   SPEAKER SLOT THAT'S CLAIMED, THAT'S NOT TRUE IN

13   EVERY EMBODIMENT, AND THAT'S A DIFFERENCE, IT'S A

14   BIG DIFFERENCE IN THE QUESTION HE'S ASKING.

15        THE COURT:  OVERRULED.

16        GO AHEAD, PLEASE.

17        MR. VERHOEVEN:  CAN YOU REPEAT THE

18   QUESTION FOR THE WITNESS, PLEASE?

19        (WHEREUPON, THE RECORD WAS READ BY THE

20   COURT REPORTER.)

21        THE WITNESS:  I BELIEVE THAT WAS

22   IMPORTANT TO HIM.

23   BY MR. VERHOEVEN:

24   Q    RIGHT.  AND AS YOU TESTIFIED EARLIER, WHEN --

25   YOUR UNDERSTANDING OF THE RULES OF THE ROAD WHEN

1    CONDUCTING YOUR INFRINGEMENT ANALYSIS IS THAT THE

2    ORDINARY OBSERVER IS AWARE OF THE PRIOR ART; RIGHT?

3    A    YES.

4    Q    YES?

5    A    TECHNICALLY, YES.

6    Q    AND THAT IN CONDUCTING THE ANALYSIS, THE

7    ORDINARY OBSERVER LOOKS FOR WHAT'S DIFFERENT IN THE

8    CLAIMED DESIGN FROM THE ART; RIGHT?

9    A    MY UNDERSTANDING IS THE ORDINARY OBSERVER

10   DOESN'T DO THE ANALYSIS.  IT'S THE DESIGNER'S ROLE

11   TO DO THE ANALYSIS TO DETERMINE WHAT THE ORDINARY

12   OBSERVER WOULD PERCEIVE.

13   Q    SO HERE WE'VE GOT PRIOR ART THAT SHOWS THE

14   LOZENGE SHAPED SPEAKER OPENING; RIGHT?

15   A    YES.

16   Q    BUT IT'S NOT CENTERED?

17   A    THAT'S CORRECT.

18   Q    SO A POINT OF DISTINCTION HERE, AT LEAST WITH

19   RESPECT TO THIS PIECE OF PRIOR ART, IS A CENTERED

20   LOZENGE SHAPED SPEAKER OPENING; RIGHT?

21   A    OKAY.

22   Q    NOW, LET'S GO TO SDX 3811-B, WHICH IS AN

23   ILLUSTRATION, AND LET'S JUST PUT IT UP, AND HERE WE

24   HAVE ON THE LEFT THE '087 PATENT, WE PUT A BOX

25   AROUND THE LOZENGE SHAPED SPEAKER OPENING AND

```
 1    PULLED IT OUT HERE TO MAKE IT BIGGER.

 2              DO YOU SEE THAT, SIR?

 3    A    I DO.

 4    Q    AND ON THE RIGHT WE HAVE THE INFUSE, WHICH YOU

 5    HAVE AVAILABLE TO YOU, THE PHYSICAL INFUSE, JX

 6    1027.

 7              DO YOU SEE THAT, SIR?

 8    A    CAN YOU GIVE THAT BACK TO ME?  OH, THANK YOU.

 9         YES.

10    Q    AND WE'VE PULLED THAT OUT AS WELL.  DO YOU SEE

11    THAT?

12    A    I DO.

13    Q    NOW, LOOKING AT THE ACTUAL BACKGROUND IMAGE OF

14    THE INFUSE, AND YOU CAN LOOK AT THE PHYSICAL

15    EXHIBIT AS WELL IN FRONT OF YOU, ISN'T IT TRUE,

16    SIR, THAT THE INFUSE SPEAKER OPENING IS NOT

17    CENTERED?

18    A    IT IS NOT EXACTLY CENTERED, THAT'S CORRECT.

19    Q    WELL, IT'S NOT CENTERED, PERIOD; RIGHT?

20    A    WELL, IT'S CENTERED HORIZONTALLY.

21    Q    IT'S NOT CENTERED VERTICALLY, IS IT?

22    A    IN THE THE UPPER BORDER, NO, IT'S NOT.

23    Q    AND IF YOU LOOK AT THE ACTUAL MAGNIFIED

24    VERSION OF THE SPEAKER SLOT, YOU CAN SEE IT HAS

25    MULTIPLE LITTLE HOLES IN IT.  DO YOU SEE THAT?
```

1   A    WHEN IT'S THAT BIG I SEE THEM, YES.

2   Q    AND IT'S MUCH THINNER AND LONGER THAN THE

3   LOZENGE SHAPED IN THE '087 PATENT.  DO YOU SEE

4   THAT?

5   A    IT'S NOT CLEAR TO ME THAT BOTH OF THOSE IMAGES

6   HAVE BEEN BLOWN UNTO THE SAME SCALE.  BUT, YES, IT

7   APPEARS LONGER AND -- IT APPEARS LONGER.

8   Q    JUST LOOK AT IT IN THE BACKGROUND, THEN.  IT'S

9   LONGER AND THINNER AND IT'S --

10  A    YES.

11  Q    -- MUCH HIGHER IN THAT TOP DISPLAY AREA THAN

12  THE CENTERED LOZENGE IN THE '087 PATENT; ISN'T THAT

13  TRUE, SIR?

14  A    YES, IT IS.

15  Q    OKAY.  IF WE COULD GO TO SDX 3811-A, THE

16  GALAXY S, YOU HAVE THE PHYSICAL GALAXY S IN FRONT

17  OF YOU IF YOU WANT IT.  IT'S JX 1019.

18  A    YES.

19  Q    YOU CAN LOOK AT THE GALAXY S 4G AND SEE THAT

20  THE SPEAKER DETAIL HERE AGAIN IS NOT CENTERED;

21  RIGHT?

22  A    IT IS NOT EXACTLY CENTERED VERTICALLY, THAT IS

23  CORRECT.

24  Q    IT'S VERTICALLY NOT CENTERED, PERIOD; RIGHT?

25  A    IF YOU WISH TO SAY IT THAT WAY, YES.

1    Q    WELL, IT'S EITHER CENTERED OR IT'S NOT.

2    RIGHT?

3    A    YOU'RE CORRECT.

4    Q    OKAY.

5    A    BUT TO ME THAT IS A MINOR VARIATION IN THE

6    OVERALL IMPRESSION OF THE ORDINARY OBSERVER.

7    Q    MR. STRINGER THOUGHT IT WAS IMPORTANT TO HIS

8    DESIGN THAT THE LOZENGE SHAPED SPEAKER SLOT WAS

9    CENTERED BOTH VERTICALLY AND HORIZONTALLY; DIDN'T

10   HE?

11   A    HE DID.

12   Q    AND IT WAS IMPORTANT TO BALANCE THE LOOK OF

13   THE IPHONE; RIGHT?

14   A    IT MIGHT HAVE BEEN.  I DON'T KNOW FOR SURE.

15   Q    YOU DON'T KNOW?

16   A    I DON'T RECALL WHERE I HEARD THAT FROM.

17   Q    YOU DIDN'T HEAR FROM MR. STRINGER WHEN YOU

18   SPOKE TO HIM THAT ONE OF THE HALLMARKS OF THIS

19   DESIGN OVERALL WAS SYMMETRY, EVERYTHING WAS

20   SYMMETRICAL AND BALANCED?

21   A    WHEN I SPOKE TO HIM?

22   Q    YEAH.

23   A    NO, I DON'T BELIEVE HE SAID THAT.

24   Q    NOW, THIS GALAXY S 4G, IF YOU LOOK AT THE

25   BLOWOUT, IT'S GOT MANY PINHOLES IN THIS DETAIL FOR

1    THE SPEAKER SLOT.

2              DO YOU SEA THAT?

3    A    I DO.

4    Q    NONE OF THOSE PIN HOLES ARE FOUND IN THE '087

5    PATENT, ARE THEY?

6    A    IN THE PATENT, NO, THEY ARE NOT.

7    Q    AND IF YOU LOOK AT THE SHAPE AND SIZE OF THE

8    SPEAKER SLOT IN THE GALAXY S 4G, NOT ONLY DOES IT

9    HAVE A BUNCH OF PINHOLES THAT ARE NOT IN THE '087,

10   IT'S ALSO SIGNIFICANTLY LONGER AND THINNER IN

11   SHAPE; CORRECT?

12   A    THAT IS CORRECT.

13   Q    THANK YOU, MR. FISHER.  YOU CAN TAKE THAT

14   DOWN.

15             NOW, IN YOUR EXPERT REPORTS, YOU

16   IDENTIFIED A NUMBER OF ALTERNATIVE DESIGNS THAT YOU

17   SAY SAMSUNG COULD HAVE USED.

18             DO YOU REMEMBER THAT GENERALLY?

19   A    YES.

20   Q    AND IN YOUR OPINION AS A DESIGNER, IN ORDER

21   FOR SOMETHING TO BE AN ALTERNATIVE DESIGN TO THE

22   '087 PATENT AND THE '677 PATENT, IT NEEDS TO BE

23   DEMONSTRABLY DIFFERENT; RIGHT?

24   A    THAT SEEMS REASONABLE, YES.

25   Q    NOW, LET'S LOOK AT WHAT YOU IDENTIFIED --

1    A    I'M NOT REALLY SURE --

2    Q    -- AS AN ALTERNATIVE DESIGN IN YOUR APRIL

3    16TH, 2012 EXPERT REPORT.

4              CAN WE PUT UP PARAGRAPH 346.

5              YOU CAN CHECK YOUR REPORTS.  THEY'RE IN

6    THE BINDERS THAT YOU HAVE.

7              MY QUESTION IS, IS THIS PARAGRAPH 346 OF

8    YOUR SWORN EXPERT REPORT?

9              MS. KREVANS:  I'M SORRY, MR. VERHOEVEN,

10   CAN YOU IDENTIFY THE REPORT?  BECAUSE WE'RE LOOKING

11   AT A COPY OF MR. BRESSLER'S INFRINGEMENT REPORT AND

12   THIS DOESN'T LOOK LIKE PARAGRAPH 346.

13             MR. VERHOEVEN:  APRIL 16TH, 2012.

14             MS. KREVANS:  YOUR HONOR, THEN THIS IS

15   NOT THE REPORT ABOUT WHICH MR. BRESSLER HAS

16   TESTIFIED TODAY.  IT'S HIS REBUTTAL REPORT.

17             MR. VERHOEVEN:  THIS IS THE SAME REPORT

18   WE LOOKED AT, YOUR HONOR, EARLIER TODAY.

19             THE COURT:  GO AHEAD.  OVERRULED.

20             MR. VERHOEVEN:  MAY I APPROACH TO MAKE

21   SURE THE WITNESS HAS THE REPORT, YOUR HONOR,

22   LOCATED?

23             THE COURT:  GO AHEAD, PLEASE.

24             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

25             (PAUSE IN PROCEEDINGS.)

BY MR. VERHOEVEN:

Q    OKAY.  MR. BRESSLER, DO YOU HAVE 346 BEFORE
YOU?

A    I DO.

Q    AND THAT, INDEED, IS THE PARAGRAPH FROM YOUR
APRIL 16TH, 2012 SWORN EXPERT REPORT; CORRECT?

A    FROM MY REBUTTAL REPORT, YES.

Q    YOU WROTE THIS?

A    YES.

Q    YOU STAND BY THE STATEMENTS IN HERE?

A    I DO.

Q    OKAY.  SO HERE YOU'RE TALKING ABOUT
ALTERNATIVE DESIGNS RELEASED -- DO YOU SEE WHERE IT
SAYS, WE CAN HIGHLIGHT THIS, MR. FISHER.

        "THERE ARE MANY ALTERNATIVE DESIGNS
RELEASED BY BOTH SAMSUNG AND THIRD-PARTY
COMPETITORS."

        DO YOU SEE THAT?  DO YOU SEE THE WORDS
THERE, SIR?

A    YES, YES, I DO.

Q    OKAY.  AND AS YOU'VE JUST AGREED WITH ME, AN
ALTERNATIVE DESIGN NEEDS TO BE DEMONSTRABLY
DIFFERENT FROM THE '087 OR '677 PATENTS; RIGHT?

A    DEPENDING ON YOUR DEFINITION OF THE WORD
"DEMONSTRABLY," YES.

1183

```
1    Q    NOW, IF WE GO DOWN HERE, YOU PROVIDE A LIST OF

2    ALTERNATIVE DESIGNS, AND YOU SEE ONE OF THE DESIGNS

3    IS SAMSUNG F700?  DO YOU SEE THAT, SIR?

4    A    YES.

5    Q    MS. KHAN, DO WE HAVE PHYSICAL DEVICE 526

6    HANDY?

7              MR. BRESSLER, I'M HANDING YOU THE

8    PHYSICAL SPECIMEN OF THE F700, DX 526.  YOU'VE SEEN

9    THIS BEFORE; RIGHT?

10   A    I HAVE, YES.

11   Q    AND IS IT, IN FACT, THE F700?

12   A    IT IS -- IT IS A PHONE THAT RESEMBLES F700'S

13   I'VE SEEN.  IT SAYS, VODAFONE ACROSS THE TOP.

14   Q    AND THIS IS WHAT YOU'RE REFERRING TO IN YOUR

15   REPORT?

16   A    I BELIEVE SO.

17             MR. VERHOEVEN:  YOUR HONOR, I MOVE DX 526

18   INTO EVIDENCE.

19             MS. KREVANS:  YOUR HONOR, THERE HAS BEEN

20   MANY OBJECTIONS AND RULINGS ABOUT THIS EXHIBIT.  IF

21   IT COMES IN, WE WOULD ASK THAT IT COME IN WITH THE

22   LIMITING INSTRUCTION THAT YOUR HONOR HAS GIVEN THAT

23   IT CAN ONLY BE CONSIDERED FOR FUNCTIONALITY, THAT

24   IT IS AN ALTERNATIVE DESIGN FOR FUNCTIONALITY

25   PURPOSES.
```

1            THE COURT:  THIS EXHIBIT, WHICH IS DX

2     526, CAN ONLY BE CONSIDERED FOR ALTERNATIVE DESIGN

3     AND FUNCTIONALITY PURPOSES.  IT CAN'T BE CONSIDERED

4     FOR INVALIDITY PURPOSES OR OBVIOUSNESS.

5            GO AHEAD.

6            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

7            MS. KREVANS:  I THINK YOUR HONOR WAS ALSO

8     GOING TO INSTRUCT THE JURY THAT THIS IS NOT PRIOR

9     ART.

10           THE COURT:  BECAUSE IT WASN'T SOLD IN THE

11    UNITED STATES?

12           MS. KREVANS:  BECAUSE IT WAS NOT SOLD IN

13    THE UNITED STATES OR DISCLOSED IN THE UNITED STATES

14    BEFORE THE DATE OF THE FILING OF THE PATENT, THAT'S

15    CORRECT.

16           MR. VERHOEVEN:  YOUR HONOR, I OBJECT TO

17    THAT.  THESE STATEMENTS THAT ARE BEING MADE AS IF

18    THEY'RE ESTABLISHED.

19           THE LIMITING INSTRUCTION YOUR HONOR GAVE

20    IS WHAT I THINK WAS WHAT THE RULINGS HAVE BEEN SO

21    FAR.

22           THE COURT:  WELL, MY UNDERSTANDING IS THE

23    F700 WAS THAT IT WAS NOT IN THE U.S.

24           BUT WHY DON'T YOU RESERVE THAT FOR LATER.

25           MR. VERHOEVEN:  OKAY.

1   Q    SO LET'S PUT UP SDX 3803?

2          THE COURT:  ACTUALLY, WHY DON'T YOU, IN

3   THE BREAK, GIVE ME EVIDENCE THAT IT WAS SOLD IN THE

4   U.S.   OKAY?

5          MR. VERHOEVEN:  YES, YOUR HONOR.

6   Q    WHAT WE'VE GOT UP HERE ON THE SCREEN,

7   MR. BRESSLER, IS A PICTURE OF WHAT YOU'VE GOT IN

8   YOUR HAND?

9   A    IT IS.

10          THE COURT:  ACTUALLY, I'M SORRY, I DON'T

11   THINK THAT'S CORRECT.  I THINK IT WAS NOT SOLD IN

12   THE U.S.  SO I'M GOING TO GIVE THAT INSTRUCTION

13   THAT THIS IS NOT PRIOR ART.  OKAY.  IT WAS NOT SOLD

14   OR PUBLISHED IN THE UNITED STATES, THE F700, WHICH

15   IS DX 526.

16   BY MR. VERHOEVEN:

17   Q    SO DX 526, THE F700, JUST TO REFRESH, THIS IS

18   A DEPICTION OF WHAT YOU HAVE IN YOUR HAND; RIGHT?

19   A    I BELIEVE SO.

20   Q    AND THIS IS THE PHONE YOU SAID WAS AN

21   ALTERNATIVE DESIGN TO THE '087 AND THE '677 PATENT;

22   RIGHT?

23   A    YES.

24   Q    WHICH MEANS IT'S NOT SUBSTANTIALLY SIMILAR;

25   RIGHT?

```
 1   A    I WOULDN'T READ IT THAT WAY, NO.

 2   Q    I'M SORRY?

 3   A    CORRECT.  I DON'T SEE IT AS BEING

 4   SUBSTANTIALLY SIMILAR.

 5   Q    SO IN YOUR OPINION TO THIS JURY, THIS PHONE

 6   HERE IS NOT SUBSTANTIALLY SIMILAR TO THE '087 OR

 7   '677 PATENTS?  IT WOULDN'T INFRINGE THOSE PATENTS?

 8   A    I BELIEVE THAT'S WHAT I SAID, YES.

 9   Q    OKAY.  NOW, RYAN, CAN WE PUT UP THE IMAGE HERE

10   OF THE FRONT FACE OF THE F700 NEXT TO AN IMAGE OF

11   THE INITIAL IPHONE, JX 1000.

12              AND YOU HAVE THE INITIAL IPHONE IN FRONT

13   OF YOU AS WELL IF YOU'D LIKE TO LOOK AT IT, SIR.

14   A    DID I GET THAT BACK?  YES, I HAVE IT.

15              (PAUSE IN PROCEEDINGS.)

16   BY MR. VERHOEVEN:

17   Q    THERE WE GO.  SO YOUR TESTIMONY TO THE JURY IS

18   THIS F700 ON THE LEFT HERE IS NOT SUBSTANTIALLY

19   SIMILAR TO THE INITIAL IPHONE; RIGHT?

20              MS. KREVANS:  OBJECTION, YOUR HONOR.

21   THIS QUESTION CAN'T POSSIBLY BE ABOUT FUNCTIONALITY

22   BECAUSE FUNCTIONALITY HAS TO DO WITH WHETHER THERE

23   ARE ALTERNATIVE DESIGNS TO THE DESIGN THAT IS SHOWN

24   IN THE PATENT.

25              WHAT HE IS COMPARING HERE IS NOT EITHER
```

```
 1    THE -- OF THE PATENTS AT ISSUE.  THE ONLY POSSIBLE

 2    RELEVANT QUESTION WOULD BE THIS DEVICE VERSUS THE

 3    '677 OR THE '087 PATENT.  THIS IS CLEARLY MISS --

 4    THIS IS GOING BEYOND THE LINE YOUR HONOR DREW, YOUR

 5    HONOR.

 6              MR. VERHOEVEN:  YOUR HONOR, THIS --

 7              THE COURT:  HAVE I SEEN THIS SLIDE

 8    BEFORE?

 9              MS. KREVANS:  IT'S NOT A SLIDE THAT

10    THEY'VE --

11              MR. VERHOEVEN:  IT'S JUST A CROPPING OF

12    THE SLIDE YOU JUST SAW, YOUR HONOR, AND I'M JUST

13    COMPARING IT TO THE INITIAL IPHONE SO THE JURORS

14    CAN ALL SEE IT RATHER THAN PASSING IT ALL AROUND.

15              MS. KREVANS:  THAT IS NOT RELEVANT.

16              MR. VERHOEVEN:  EXCUSE ME.

17              AND THIS WITNESS HAS TESTIFIED, YOUR

18    HONOR, THAT THE F700 IS NOT SUBSTANTIALLY SIMILAR

19    AND THIS IS CROSS-EXAMINATION, AND I SHOULD BE

20    ENTITLED TO LET THE JURORS SEE THE PHONE THAT'S --

21              THE COURT:  GO AHEAD.  OVERRULED.  GO

22    AHEAD.

23              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

24    Q    NOW, I'M JUST GOING TO CHECK THE RECORD REAL

25    QUICK, YOUR HONOR.
```

```
 1              (PAUSE IN PROCEEDINGS.)

 2              MR. VERHOEVEN:  I'LL JUST REASK THE

 3    QUESTION, YOUR HONOR, IN THE INTEREST OF TIME.

 4    Q    MR. BRESSLER, IT'S YOUR TESTIMONY TO THIS JURY

 5    THAT THE F700 IS NOT SUBSTANTIALLY SIMILAR TO THE

 6    INITIAL IPHONE DESIGN.  YES?

 7    A    WITHIN THE BOUNDS OF THE DESIGNS -- THAT THE

 8    DESIGNS DEFINE, YES.

 9    Q    OKAY.  NOW, RYAN, CAN WE ALSO PUT UP AN IMAGE

10    OF THE ACCUSED INFUSE 4G, JX 1027.

11              MS. KREVANS:  YOUR HONOR, NOW THEY'RE

12    MAKING A NON-INFRINGEMENT ARGUMENT WHICH YOUR HONOR

13    HAS ALREADY SAID IS BEYOND THE LINE OF WHAT THEY

14    CAN DO WITH THE F700.

15              THE COURT:  SUSTAINED.

16              MR. VERHOEVEN:  YOUR HONOR, I'M TRYING TO

17    SHOW --

18              THE COURT:  SUSTAINED.  PLEASE TAKE IT

19    DOWN.  TAKE IT DOWN.

20              MR. VERHOEVEN:  YOUR HONOR, I'M

21    ATTEMPTING TO SHOW, THROUGH IMPEACHMENT, THAT THE

22    PHONES THAT THIS WITNESS IS ACCUSING OF BEING

23    SUBSTANTIALLY SIMILAR LOOK DIFFERENT FROM A PHONE

24    THAT'S NOT ACCUSED THAT THE WITNESS SAYS IS NOT

25    SUBSTANTIALLY SIMILAR.  IT'S IMPEACHMENT.  IT'S
```

1       CROSS-EXAMINATION, YOUR HONOR.

2               THE COURT:  OVERRULED.

3               GO AHEAD.  GO TO YOUR NEXT LINE OF

4       QUESTIONING, PLEASE.

5               MR. VERHOEVEN:  ALL RIGHT.

6       Q    LET'S SWITCH TO THE '889 DESIGN PATENT, JX

7       1061 IN YOUR BINDER.  IF WE CAN GO TO THAT, RYAN,

8       AND PUT UP FIGURES 1A AND 1B.

9       A    I'M SORRY.  WHAT WAS IT AGAIN?

10      Q    IT'S THE '889 DESIGN PATENT, WHICH IS EXHIBIT

11      JX 1061.  GO AHEAD AND PUT THIS UP.  THERE'S NO

12      OBJECTION TO PUTTING THE DESIGN PATENT UP ON THE

13      SCREEN, I ASSUME.  IT'S IN EVIDENCE.

14              DO YOU SEE IT ON THE SCREEN, SIR?

15      A    I'M SORRY.  WHAT WAS THE NUMBER AGAIN?

16      Q    IT'S JX 1061.  GOT IT?

17      A    I DO.  THANK YOU.

18      Q    OKAY.  MR. BRESSLER, I'M HOLDING IN MY HAND A

19      PHYSICAL MODEL.  IT'S CALLED THE 035 MODEL

20      (INDICATING).

21              IT'S BEEN ADMITTED INTO EVIDENCE AS DX

22      741.

23              DO YOU RECOGNIZE THIS AS THE PHYSICAL

24      MODEL CALLED THE 035 MODEL?

25              MS. KREVANS:  YOUR HONOR, I HAVE TWO

1190

```
 1    OBJECTIONS.  FIRST OF ALL, I THINK COUNSEL
 2    REPRESENTED THAT WHAT'S ON THE BOARD IS FIGURES
 3    FROM THE PATENT.  I'M LOOKING AT THE PATENT.  I
 4    DON'T SEE ANY FIGURES 1A AND 1B.
 5              AND THEN SEPARATE AND APART FROM THAT, I
 6    HAVE OBJECTIONS DEPENDING ON THE QUESTION THAT HE
 7    ASKS ABOUT THIS MODEL BECAUSE THERE'S NEVER BEEN
 8    ANY DISCLOSURE OF ANY NON-INFRINGEMENT ARGUMENT
 9    RELATED TO THIS MODEL AND IT'S AN IMPROPER ATTEMPT
10    TO GET A NEW THEORY INTO THE CROSS-EXAMINATION.
11              THE COURT:  WHAT PATENT IS THIS?
12              MR. VERHOEVEN:  THIS IS THE '889 PATENT,
13    YOUR HONOR.  THESE ARE JUST FIGURES 1A AND 1B.
14              MS. KREVANS:  I'M SORRY, YOUR HONOR.  I
15    DON'T MEAN TO CAUSE TROUBLE, BUT I'M LOOKING AT THE
16    PATENT, AND THE FIGURE IS NOT LABELED --
17              MR. VERHOEVEN:  CAN YOU PUT UP THE ACTUAL
18    EXHIBIT, MR. FISHER.  AND GO TO THE FIGURES.
19              MS. KREVANS:  THAT'S CORRECT.
20              THE COURT:  ALL RIGHT.  WHAT WAS YOUR
21    OTHER OBJECTION?
22              MS. KREVANS:  THE OTHER OBJECTION, YOUR
23    HONOR, IS THE MODEL THAT HE'S ABOUT TO SHOW THE
24    WITNESS IN ORDER TO SUPPOSEDLY CROSS-EXAMINE HIM ON
25    HIS IMPEACHMENT OPINIONS HAS NEVER BEEN DISCLOSED
```

```
 1    IN CONNECTION WITH ANY IMPEACHMENT, ANY

 2    NON-INFRINGEMENT THEORIES IN THIS CASE.  THIS IS AN

 3    ISSUE OF DISCLOSURE IN RESPONSE TO CONTENTION

 4    INTERROGATORIES.  WE ASKED INTERROGATORIES.  I HAVE

 5    THE ANSWER HERE.

 6              WHATEVER WE'RE ABOUT TO HEAR IS GOING TO

 7    BE A COMPLETELY NEW LINE.

 8              MR. VERHOEVEN:  YOUR HONOR, YOU RULED ON

 9    THEIR MOTION IN LIMINE --

10              THE COURT:  LET ME SEE IT.  BECAUSE I

11    AGREE WITH THE F700, THERE WAS NEVER A

12    NON-INFRINGEMENT ARGUMENT IN MR. SHERMAN'S REPORT.

13    SO IF THIS IS THE SAME THING THAT'S HAPPENING WITH

14    THIS, I WANT TO KNOW.  SO LET ME SEE IT, PLEASE.

15    LET ME SEE WHERE -- IS IT IN MR. SHERMAN'S REPORT?

16              MS. KREVANS:  MR. ANDERS IS THEIR

17    NON-INFRINGEMENT EXPERT, YOUR HONOR.  AND THERE'S

18    NOTHING ON THIS.

19              THE COURT:  LET ME SEE HIS REPORT WHERE

20    HE DISCUSSES THIS.

21              I HAVE MR. ANDERS'S REPORT HERE, YOUR

22    HONOR.  SINCE IT'S NOT IN, I CAN'T SHOW YOU A PAGE

23    THAT IT'S NOT ON.  I GUESS I WOULD ASK THAT THE

24    QUESTION BE PROPERLY DIRECTED TO SAMSUNG'S COUNSEL

25    THAT IT IS DISCLOSED.
```

```
 1              MR. VERHOEVEN:  AGAIN, WE WERE PROVIDED
 2    NO NOTICE.  WE GAVE THEM A LIST OF THE EXHIBITS.
 3              YOUR HONOR, APPLE MOVED TO ELIMINATE THE
 4    APPLE 035 --
 5              THE COURT:  LET ME JUST ASK YOU, IS IT IN
 6    YOUR EXPERT REPORT?
 7              MR. VERHOEVEN:  AGAIN, WE'LL HAVE TO GO
 8    CHECK.
 9              BUT --
10              THE COURT:  ALL RIGHT.  WHY DON'T WE PASS
11    THIS.
12              MR. VERHOEVEN:  YOUR HONOR, WHETHER IT'S
13    IN THE EXPERT REPORT OR NOT, THERE'S A STIPULATION
14    THAT'S IN THE RECORD THAT THIS IS AN EMBODIMENT OF
15    THE '889 PATENT.  THE NOTION THAT WE COULDN'T
16    USE -- AND THERE'S -- IT'S UNDISPUTED IN THE
17    RECORD --
18              THE COURT:  OKAY.  WHAT I WOULD LIKE TO
19    DO IS LET ME SEE THE REPORT.  WHY DON'T -- IF YOU
20    CAN GO ON, WE CAN TAKE A FEW MINUTE BREAK AND WE
21    CAN ADDRESS THIS.
22              MS. KREVANS:  AND, YOUR HONOR, I THINK TO
23    MAKE IT CONVENIENT, I HAVE LOCATED A COPY OF A
24    PORTION OF MR. ANDERS' REPORT IN WHICH HE DISCUSSES
25    THE '889 PATENT AND IT'S MUCH SHORTER THAN THE
```

1    WHOLE THING AND I CAN GIVE IT TO YOUR HONOR AND YOU

2    CAN SEE THERE'S NOTHING IN THERE ABOUT THIS, ALSO

3    NOTHING IN THEIR CONTENTION INTERROGATORY RESPONSES

4    ABOUT IT.

5            MR. VERHOEVEN:  OUR, OUR ABILITY TO --

6    WHATEVER IS IN AN EXPERT REPORT IS DIFFERENT FROM

7    THE ACTUAL FILE HISTORY OF THIS PATENT AND OUR

8    ABILITY TO USE A STIPULATED EMBODIMENT, IN FACT,

9    THE EVIDENCE --

10           THE COURT:  ALL RIGHT.  I WANT THIS

11   DISCUSSION OUTSIDE THE PRESENCE OF THE JURY.

12           MR. VERHOEVEN:  YES, YOUR HONOR.

13           THE COURT:  CAN YOU PLEASE GO AHEAD WITH

14   SOMETHING ELSE AND I WILL TAKE THIS UP DURING MY

15   NEXT BREAK.  THANK YOU.

16   BY MR. VERHOEVEN:

17   Q    MR. BRESSLER, LET'S TALK A LITTLE BIT ABOUT

18   FUNCTIONALITY, THE FUNCTIONALITY OF THE APPLE'S

19   DESIGN PATENTS AND ITS TRADE DRESS.  OKAY?

20   A    OKAY.

21   Q    NOW, YOU'VE OFFERED AN OPINION ABOUT THE

22   FUNCTIONALITY OF APPLE'S DESIGN PATENTS AND TRADE

23   DRESS; RIGHT?

24   A    SEPARATELY, YES.

25   Q    BUT YOU'RE NOT AN EXPERT ON THE FUNCTIONALITY

1    OF THE PHONES; RIGHT?

2    A    YOU'RE TALKING ABOUT THE FUNCTIONALITY AS IT

3    RELATES TO THE DESIGN PATENTS.

4    Q    YOU'RE NOT AN EXPERT IN HOW THESE PHONES

5    FUNCTION, WHAT KIND OF FUNCTIONAL CONSIDERATIONS GO

6    INTO HOW THEY PERFORM?  YOU DON'T HAVE THAT KIND OF

7    EDUCATION OR BACKGROUND, DO YOU, SIR?

8    A    NO, I DON'T.  BUT I BELIEVE WE'RE TALKING

9    ABOUT A DIFFERENT KIND OF FUNCTION.

10   Q    WHEN YOU PROVIDED YOUR OPINIONS ON

11   FUNCTIONALITY, IT WAS YOUR UNDERSTANDING THAT IF

12   THERE WAS ANY CONCEIVABLE DESIGN ALTERNATIVE, YOU

13   DID NOT CONSIDER THE DESIGN FEATURE TO BE

14   FUNCTIONAL; CORRECT?

15   A    THAT MAY BE ACCURATE.

16   Q    AND IN YOUR OPINION, THERE'S NOT A SINGLE

17   ELEMENT OF APPLE'S DESIGN PATENTS THAT ARE

18   FUNCTIONAL?

19   A    IN THE RESPECT THAT THEY ARE, THAT NONE OF

20   THEM ARE DICTATED BY THE FUNCTION, NO.  I BELIEVE

21   THAT, YES.

22   Q    YOU CONCLUDED THAT NO ASPECT OF THE IPHONE OR

23   IPAD TRADE DRESS IS FUNCTIONAL; RIGHT?

24   A    AS THAT MEANING OF THE WORD "FUNCTIONAL" IS

25   DEFINED, THAT'S CORRECT.  THOSE ARE DIFFERENT

1    MEANINGS.

2    Q    IN FORMING YOUR OPINIONS, DID YOU NOT CONSIDER

3    WHETHER THE DESIGN ELEMENTS FOR THE DESIGN PATENTS

4    WERE PRIMARILY ORNAMENTAL, DID YOU?

5    A    I'M SORRY?

6    Q    IN FORMING YOUR OPINION, YOU DID NOT CONSIDER

7    WHETHER THE DESIGN ELEMENTS WERE PRIMARY, PRIMARILY

8    ORNAMENTAL, DID YOU?

9    A    I CERTAINLY DID.

10   Q    ISN'T IT TRUE WHEN YOU WERE ASKED ABOUT

11   WHETHER YOU WERE INFORMED THAT WHEN ONE IS LOOKING

12   AT FUNCTIONALITY UNDER THE RULES OF THE ROAD AND

13   ASKED WHETHER OR NOT AN ELEMENT IS PRIMARILY

14   FUNCTIONAL, YOU TESTIFIED YOU DON'T EVEN RECALL

15   BEING FAMILIAR WITH THAT TERM?

16   A    I'M SORRY?

17   Q    CAN WE READ IT BACK, PLEASE.

18        (WHEREUPON, THE RECORD WAS READ BY THE

19   COURT REPORTER.)

20        THE WITNESS:  I DON'T RECALL SAYING THAT.

21   BY MR. VERHOEVEN:

22   Q    WELL, LET'S LOOK AT YOUR DEPOSITION TAKEN

23   APRIL 24TH, 2012, LINES 19 -- EXCUSE ME -- PAGE 19,

24   LINES 3 THROUGH 9.

25        (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

```
1    OPEN COURT OFF THE RECORD.)

2              MS. KREVANS:  YOUR HONOR, THAT DOES NOT

3    IMPEACH ANY TESTIMONY THAT THE WITNESS HAS GIVEN

4    HERE IN COURT.

5              THE COURT:  OVERRULED.

6    BY MR. VERHOEVEN:

7    Q    THAT WAS YOUR UNDERSTANDING WHEN YOU TESTIFIED

8    AT YOUR DEPOSITION; RIGHT?

9    A    I GUESS.  I GUESS I SAID THAT IN ANSWER TO

10   THAT QUESTION, YES.

11   Q    AND LET ME ASK IT ONE MORE TIME?

12   A    I WAS CONFUSED.

13   Q    LET ME ASK ONE MORE TIME.  AND, AGAIN, TO THE

14   EXTENT YOU CAN FAIRLY ANSWER MY QUESTION YES OR NO,

15   I WOULD APPRECIATE IT.

16              ARE YOU AN EXPERT IN THE FUNCTIONALITY OF

17   PHONES?

18   A    IN TERMS OF THEIR OPERATION FUNCTIONALITY, NO.

19   Q    OKAY.  YOU'RE NOT AN EXPERT WITH RESPECT TO

20   TOUCH DISPLAY TECHNOLOGY; CORRECT?

21   A    THAT IS CORRECT.

22   Q    IN FACT, YOU'RE NO MORE EQUIPPED THAN ANY

23   ORDINARY OBSERVER TO OPINE ON THE FUNCTIONALITY OF

24   A SMARTPHONE?

25   A    DEPENDS ON WHETHER YOU MEAN FUNCTIONALITY
```

1197

```
1    RELATIVE TO A DESIGN PATENT OR THE GENERAL

2    FUNCTIONALITY OF HOW IT OPERATES.

3    Q    IN TERMS OF THE SPECIFIC TECHNICAL KNOWLEDGE

4    AND SCIENTIFIC FUNCTIONALITY, YOU DON'T HAVE ANY

5    KNOWLEDGE; RIGHT?

6    A    THAT'S CORRECT.

7    Q    IN FACT, YOU BELIEVE THAT YOU ONLY NEED A

8    THIN, TOP LEVEL KNOWLEDGE TO BE ABLE TO PASS

9    JUDGMENT ON THE COMPARABLE FUNCTIONALITY OF THE

10   DIFFERENT PHONES?

11   A    AS IT RELATES TO DESIGN FUNCTION, I BELIEVE

12   THAT'S TRUE.

13   Q    IT'S YOUR TESTIMONY, SIR, THAT HAVING A

14   DISPLAY ELEMENT IS NOT NECESSARY OR FUNCTIONAL FOR

15   A SMARTPHONE?  THAT'S YOUR TESTIMONY TO THIS JURY;

16   RIGHT?

17   A    NO.

18   Q    OKAY.  WELL, LET'S -- YOUR DEPOSITION

19   TESTIMONY, AGAIN, WAS TAKEN APRIL 24TH, 2012;

20   RIGHT?

21   A    THAT'S CORRECT.

22   Q    IT WAS UNDER OATH?

23   A    YES.

24   Q    AND YOU ANSWERED QUESTIONS AS CAREFULLY AS YOU

25   COULD; RIGHT?
```

1    A    YES.

2    Q    LET'S PLAY AN EXCERPT FROM YOUR DEPOSITION,

3    PAGE 210, LINES 14 THROUGH 24.

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. VERHOEVEN:

7    Q    THAT WAS TRUE TESTIMONY WHEN YOU GAVE IT?

8    A    THAT WAS PART OF THE TESTIMONY THAT I GAVE

9    THAT IT TURNS OUT WAS, WAS GOING BOTH DIRECTIONS

10   DEPENDING ON -- BECAUSE I MISUNDERSTOOD THE USE OF

11   THE TERM "FUNCTION" AND THE QUESTION AT THAT TIME.

12   Q    SO THAT TESTIMONY IS NOT TRUE?

13   A    THE TESTIMONY IS TRUE.  I WAS REFERRING TO THE

14   FUNCTION AS IT RELATES TO A DESIGN PATENT, WHICH

15   MEANS THEY CAN BE ANY SHAPE AND LOCATION AND SIZE.

16             AND IN THAT SENSE, IT'S NOT FUNCTIONAL IN

17   THAT SHAPE, LOCATION OR SIZE ARE NOT REQUIRED BY AS

18   FUNCTIONS.

19   Q    CAN WE PUT UP THE HARD COPY TRANSCRIPT OF WHAT

20   WE JUST WATCHED, PAGE 210, LINES 14 THROUGH 24.

21             SO THIS IS 210, LINE 14 THROUGH 24.

22   APRIL 24TH, 2012 DEPOSITION.

23             SIR, DO YOU SEE THE QUESTION, IT DOESN'T

24   TALK ABOUT THE DESIGN PATENTS, IT TALKS ABOUT

25   SMARTPHONES.

```
 1                DO YOU SEE THAT, SIR?

 2    A    I SEE THAT'S WHAT IT SAYS.

 3    Q    THAT'S WHAT YOU WERE ASKED; RIGHT?

 4    A    I BELIEVE IT WAS ASKING ME ABOUT AS IT RELATED

 5    TO DESIGN PATENTS.

 6    Q    BUT IT DOESN'T SAY THAT, DOES IT?

 7    A    I DON'T SEE IT SAYING THAT.

 8    Q    USING YOUR DEFINITION OF FUNCTIONAL, ISN'T IT

 9    TRUE THAT YOUR OPINION TO THIS JURY IS THAT THE USE

10    OF A TRANSPARENT COVER OVER A DISPLAY IS NOT

11    NECESSARY FOR FUNCTIONAL?

12    A    IN DEFINING "FUNCTIONAL" AS NOT BEING DRIVEN

13    BY THE SHAPE AND LOCATION AND IT NOT BEING -- I

14    BELIEVE THAT'S TRUE.  I THINK THE FACT THAT IT IS

15    CLEAR ON A SMARTPHONE NEEDS -- YES, THAT'S

16    FUNCTIONAL.

17    Q    LET'S PLAY PAGE 209 FROM THE SAME DEPOSITION,

18    LINES 9 THROUGH 21.

19              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

20    OPEN COURT OFF THE RECORD.)

21    BY MR. VERHOEVEN:

22    Q    DO YOU STAND BY THAT TESTIMONY?

23    A    I BELIEVE THAT'S WHAT I MAY HAVE JUST SAID A

24    MOMENT AGO.

25    Q    SO IT'S YOUR TESTIMONY TO THIS JURY THAT
```

1    HAVING A CLEAR COVER OVER THE DISPLAY ELEMENT IS

2    NOT SOMETHING THAT'S FUNCTIONAL?

3    A    FROM A PERFORMANCE STANDPOINT AND OPERATIONS

4    STANDPOINT, I BELIEVE IT'S ABSOLUTELY FUNCTIONAL.

5    Q    BUT JUST NOT IN YOUR ANALYSIS?  IS THAT RIGHT?

6    A    IF IT'S CLEAR THAT IT'S A -- IF IT IS CLEAR IN

7    THE DESIGN PATENT THAT IT'S A DISPLAY, THEN ONE

8    WOULD EXPECT IT TO BE TRANSPARENT OVER THAT

9    DISPLAY.

10   Q    BUT YOUR CONCLUSION, WHEN YOU WERE ASKED UNDER

11   OATH ABOUT WHETHER USE OF A COVER THAT IS

12   TRANSPARENT OR A DISPLAY IS FUNCTIONAL, IS THAT

13   IT'S NOT FUNCTIONAL AS YOU'VE DEFINED IT; RIGHT?

14   A    I WAS TALKING ABOUT ITS SHAPE AND LOCATION AND

15   SIZE AND THE DESIGN PATENT DEFINITION OF

16   FUNCTIONALITY.

17   Q    AND YOU ALSO TESTIFIED THAT -- WELL, LET ME

18   ASK YOU, IN YOUR VIEW, IS LOCATING THE SPEAKER IN

19   THE UPPER PORTION OF THE FRONT FACE OF A SMARTPHONE

20   SOMETHING THAT'S NOT FUNCTIONAL AS YOU USE THAT

21   TERM IN YOUR EXPERT REPORTS?

22   A    DEFINING THE PRECISE LOCATION FROM AN

23   AESTHETIC STANDPOINT, IS NOT DRIVEN BY FUNCTION.

24   Q    SO THAT'S NO, IT'S NOT FUNCTIONAL?

25   A    WITH THE CONDITIONS THAT I JUST SAID, YES,

1    IT'S NOT FUNCTIONAL.

2    Q    LET'S PLAY PAGE 212, LINE 25 THROUGH 213, LINE

3    4 OF YOUR APRIL 24TH DEPOSITION.

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. VERHOEVEN:

7    Q    YOU DIDN'T HAVE ANY QUALIFICATIONS WHEN YOU

8    ANSWERED THAT AT YOUR DEPOSITION, DID YOU, SIR?

9    A    BECAUSE I UNDERSTOOD IT TO BE THE WAY I JUST

10   SAID IT.

11   Q    DO YOU STAND BY THAT TESTIMONY?

12   A    YES.

13   Q    NOW, YOU TESTIFIED ON DIRECT EXAMINATION THAT

14   YOUR AN INDUSTRIAL DESIGNER; CORRECT?

15   A    THAT'S CORRECT.

16   Q    BUT, IN FACT, YOU'VE NEVER DESIGNED A

17   SMARTPHONE, HAVE YOU?

18   A    NO, I HAVE NOT DESIGNED A SMARTPHONE.

19   Q    IS IT FAIR TO SAY THAT YOU HAVE NEVER DESIGNED

20   A SMARTPHONE AT ANY STAGE?

21   A    I'M NOT SURE WHAT YOU MEAN BY "ANY STAGE."

22   Q    WELL, LET ME ASK IT THIS WAY:  REGARDLESS OF

23   WHETHER OR NOT THE DESIGN WAS ACTUALLY IMPLEMENTED

24   OR MANUFACTURED OR PRODUCED IN ANY WAY, YOU NEVER

25   HAVE NOT DESIGNED ANY SMARTPHONES AT ANY STAGE IN

1    THAT PROCESS?

2    A    NO.  I'VE DESIGNED CELL PHONES, NOT

3    SMARTPHONES.

4    Q    YOU HAVE DESIGNED SOME CELL PHONES, BUT THOSE

5    DESIGNS ARE ONLY CONCEPTS; RIGHT?

6    A    THAT'S CORRECT.

7    Q    AND NONE OF THOSE CONCEPTS WERE EVER PRODUCED

8    OR MANUFACTURED; CORRECT?

9    A    I DON'T KNOW FOR SURE.

10   Q    WELL, AS FAR AS YOU KNOW, THOSE CONCEPTS WERE

11   NEVER EVEN MADE INTO MODELS OR PROTOTYPES, WERE

12   THEY?

13   A    YES, THEY WERE MADE INTO MODELS.

14   Q    OKAY.  LET'S LOOK AT YOUR DEPOSITION, THIS

15   TIME LET'S JUST PUT UP THE WRITTEN DEPOSITION,

16   PLEASE, MR. FISHER, DATED APRIL 23, 2012.

17             JUST ONE SECOND, YOUR HONOR.

18             (PAUSE IN PROCEEDINGS.)

19             MR. VERHOEVEN:  I'M SORRY, MR. FISHER.

20   CAN WE GO TO THE ITC TRANSCRIPT, PAGE 219, LINES 13

21   THROUGH 24.

22   Q    DO YOU SEE THIS IS FROM THE HEARING THAT YOU

23   ATTENDED AND GAVE TESTIMONY TO RELATED IN ANOTHER

24   PROCEEDING.  DO YOU REMEMBER THAT, IN WASHINGTON?

25   A    IT LOOKS FAMILIAR, YES.

1203

```
 1    Q    AND YOU WERE ASKED, WITH RESPECT TO OTHER CELL
 2    PHONE DESIGNS THAT YOU WORKED ON, DID YOU WORK ON
 3    ANY OF THOSE PRIOR TO 2006?  DO YOU SEE THAT?
 4    A    YES.
 5    Q    AND DOWN AT THE BOTTOM, IT SAYS QUESTION, THIS
 6    IS LINES 21 THROUGH 24?
 7              "QUESTION:  DID ANY OF THEM BECOME MODELS
 8    OR PROTOTYPES OR WERE OTHERWISE EXPRESSED IN
 9    THREE-DIMENSIONAL FORM?"
10              WHAT WAS YOUR ANSWER?
11    A    APPARENTLY I SAID "NOT THAT I KNOW OF," AND
12    I'D APPARENTLY FORGOTTEN THAT MODELS AND MOCK-UPS
13    WERE MADE.
14    Q    SO IN MAY OF THIS YEAR YOU TESTIFIED NONE WERE
15    MADE, AND NOW YOU'RE TESTIFYING THAT SOME WERE
16    MADE?  IS THAT RIGHT?
17    A    YES.  I MEAN, IT WAS A LONG TIME AGO.  I THINK
18    I REMEMBERED THAT THERE WERE MODELS MADE.
19    Q    SO IT THIS TESTIMONY NOT TRUE?
20    A    AT THAT POINT, I DIDN'T REMEMBER THAT.
21    Q    THAT TESTIMONY WAS GIVEN UNDER OATH, SIMILAR
22    TO THIS TESTIMONY; CORRECT?
23    A    TO THE BEST OF MY ABILITY, YES.
24    Q    ISN'T IT TRUE THAT IN ALL YOUR TIME AS AN
25    INDUSTRIAL DESIGNER, YOU ONLY WORKED ON CONCEPTS
```

1204

1    FOR TWO OR THREE CELL PHONE PRODUCTS?

2    A    I'M NOT SURE HOW MANY THERE WERE.  I THINK

3    THERE MAY HAVE BEEN AS MANY AS HALF A DOZEN.

4    Q    ALL RIGHT.  WELL, LET'S GO TO YOUR DEPOSITION,

5    APRIL 23 -- I'M SORRY.  WITHDRAW THAT.

6            LET'S GO TO THE HEARING PROCEEDING, PAGE

7    53, LINE 17 THROUGH 54, LINE 6.

8            I APOLOGIZE, YOUR HONOR.  ONE MORE TIME.

9            LET'S GO TO THE DEPOSITION OF

10   MR. BRESSLER DATED APRIL 23, 2012, PAGE 53, LINE 17

11   THROUGH 54, LINE 6.

12           HERE THIS IS YOUR DEPOSITION.

13           "QUESTION:  THESE DESIGNS OR SKETCHES

14   THAT YOU WORKED ON, WERE THEY FOR ONE CELL PHONE

15   PRODUCT OR MORE THAN ONE?

16           "ANSWER:  MORE THAN ONE.

17           "QUESTION:  CAN YOU TELL ME IN TERMS OF

18   JUST GENERALLY HOW MANY YOU BELIEVE YOU WORKED ON

19   IF YOU WERE TO DEFINE IT AS SORT OF -- AT LEAST THE

20   GOAL WAS ULTIMATELY TO COME UP WITH SOMETHING THAT

21   LOOKED LIKE A PRODUCT?

22           "ANSWER:  I BELIEVE THERE WERE TWO OR

23   THREE PROJECTS.  I DON'T REMEMBER WHETHER IT WAS

24   TWO OR THREE."

25           DO YOU SEE THAT, SIR?

1205

```
1    A    YES.  THOSE ARE PROJECTS.  EACH PROJECT HAS A
2    NUMBER OF DESIGNS FOR CELL PHONES IN IT.
3    Q    OKAY.  SO YOU AGREE THAT YOU ONLY WORKED ON
4    CONCEPTS FOR TWO OR THREE CELL PHONE PROJECTS?
5    A    CORRECT.
6    Q    AND ASIDE FROM PHONES, YOU HELPED DESIGN ONE
7    COMPUTER TABLET; CORRECT?
8    A    THAT'S CORRECT.
9    Q    AND THAT'S IT?
10   A    THAT'S IT.
11   Q    AND THAT WAS SOME TIME WAY BACK IN THE EIGHT
12   '80S; RIGHT?
13   A    I BELIEVE SO.
14   Q    THE VERSION OF THE TABLET COMPUTER THAT
15   REACHED THE MARKET ON THAT PRODUCT WAS
16   SUBSTANTIALLY DIFFERENT THAN THE DESIGN YOU WORKED
17   ON; CORRECT?
18   A    IT WAS DIFFERENT, YES.
19   Q    AND THE PROJECT YOU WORKED ON ONLY REACHED THE
20   PROTOTYPE STAGE; CORRECT?
21   A    YES.  IT WAS A PREPRODUCTION PROTOTYPE.
22   Q    THE PRODUCT WAS INTENDED FOR INSURANCE AGENTS
23   APPRAISING CAR ACCIDENTS; RIGHT?
24   A    THAT'S CORRECT.
25   Q    IT HAD JUST A VERY SMALL DISPLAY LOCATED AT
```

```
 1    THE TOP OF THE DEVICE?

 2    A    THE DISPLAY TOOK UP ABOUT 50 PERCENT OF THE

 3    FRONT OF THE DEVICE.

 4    Q    SMALLER THAN WHAT WE'RE LOOKING AT IN THESE

 5    SMARTPHONES HERE?

 6    A    YES.

 7    Q    IT WASN'T DESIGNED FOR WATCHING MOVIES?

 8    A    NO.

 9    Q    BROWSING THE INTERNET?

10    A    NO.

11    Q    READING BOOKS?

12    A    NO.

13    Q    COMPLETELY DIFFERENT TYPE OF PRODUCT?

14    A    DIFFERENT TYPE OF PRODUCT IN THE SENSE THAT IT

15    DIDN'T DO THE SAME THING, YES.  A LOT OF THE DESIGN

16    QUESTIONS OF VISIBILITY, IMPORTABILITY, AND HOW YOU

17    PRESENT INFORMATION WERE SIMILAR.

18    Q    NOW, FOR EACH OF THE DESIGN PATENT AND TRADE

19    DRESS THAT YOU LOOKED AT, YOU CONCLUDED, HEY,

20    THERE'S OTHER DESIGNS OUT THERE THAT ARE EQUALLY

21    FUNCTIONAL; RIGHT?

22    A    I BELIEVE THAT'S A FAIR STATEMENT.

23    Q    THAT WAS PART OF YOUR ANALYSIS OF WHY YOU

24    DIDN'T THINK THERE'S ANY FUNCTIONAL ELEMENT FOR THE

25    DESIGN PATENTS; RIGHT?
```

```
1    A    I BELIEVE THERE WAS NO FUNCTIONING THAT WAS

2    DRIVEN -- THERE WAS NOTHING IN THE APPEARANCE THAT

3    WAS DRIVEN BY FUNCTION, YES.

4    Q    SO I WANT TO FOCUS ON THAT STATEMENT THAT YOU

5    MADE IN YOUR REPORTS AND YOU'RE MAKING TO THE JURY

6    THAT THESE ALTERNATE DESIGNS OR EQUALLY FUNCTIONAL.

7              ARE YOU WITH ME?

8    A    I AM.

9    Q    OKAY.  ISN'T IT TRUE, SIR, THAT THE EXTENT OF

10   YOUR ANALYSIS OF WHETHER THEY WERE EQUALLY

11   FUNCTIONAL WAS SIMPLY REVIEWING THE PACKAGING OF

12   THESE OTHER PHONES AND TURNING THEM ON TO SEE THAT

13   THEIR OPERATING SYSTEM WAS RUNNING?

14   A    ACTUALLY, MOST OF MY ANALYSIS DID NOT ENTAIL

15   DOING THOSE THINGS.  MOST OF IT ENTAILED REVIEWING

16   THE DESIGN OF THE PHONES, THE APPEARANCE AND DESIGN

17   OF THE PHONES.

18   Q    SO --

19   A    HOW THEY FUNCTION -- HOW THEY FUNCTION REALLY

20   WAS INSIGNIFICANT TO ME.

21   Q    HOW THEY FUNCTION -- OH, HOW THESE ALTERNATIVE

22   DESIGN PHONES FUNCTIONED WAS IRRELEVANT TO YOU?

23   A    IT WAS CERTAINLY A LESSER ELEMENT THAN WHETHER

24   THERE WERE ALTERNATIVE DESIGNS FOR SOMETHING THAT

25   DID THE SAME THING THAT IT WAS CLAIMING ON ITS
```

1    PACKAGING, YES.

2    Q    WHETHER OR NOT THEY FUNCTIONED THE SAME OR NOT

3    WAS INSIGNIFICANT TO YOU?

4    A    AGAIN, THE WAY WE'RE USING THE TERM "FUNCTION"

5    MAKES IT A DIFFICULT QUESTION TO ANSWER, BUT IN

6    BROAD TERMS, YES.

7    Q    BUT IN ANY CASE, TO THE EXTENT YOU DID EVEN

8    LOOK AT THE ISSUE OF THE FUNCTIONALITY OF THESE

9    ALTERNATIVE DESIGNS, THE EXTENT OF YOUR ANALYSIS

10   WAS TO REVIEW THE PACKAGING OF THE PHONE AND SIMPLY

11   TURN IT ON TO SEE THE OPERATING SYSTEM; RIGHT?

12   A    WHAT MATTERED IN THIS ANALYSIS WAS THAT THESE

13   WERE PHONES --

14   Q    SIR, CAN YOU JUST -- CAN YOU ANSWER THE

15   QUESTION?  IS THAT THE EXTENT OF YOUR ANALYSIS?

16   A    NO.

17   Q    OTHER THAN LOOKING AT THE PACKAGING AND

18   TURNING THE PHONES ON TO SEE THEIR OPERATING

19   SYSTEM, YOU DID NOT USE ANY OTHER CRITERIA AS AN

20   EXPERT TO DETERMINE WHETHER OR NOT THE

21   FUNCTIONALITY OF THE ALTERNATIVE PHONES WERE THE

22   SAME OR LARGELY THE SAME; RIGHT?

23   A    IN TERMS OF THE OPERATION, THAT IS CORRECT.

24   Q    SO IN TERMS OF THE OPERATION OF THESE

25   ALTERNATIVE PHONES, FOR MANY OF THEM, YOU DIDN'T

1    LOOK AT IT AT ALL; RIGHT?

2    A    PARDON ME?

3    Q    FOR MANY OF THE ALTERNATIVE PHONES, YOU DIDN'T

4    EVEN LOOK AT THE OPERATION OF THE PHONES AT ALL;

5    RIGHT?

6    A    NO.  I SAID I TURNED THEM ON AND I LOOKED AT

7    THE OPERATING SYSTEM.

8    Q    OKAY.  AND THAT'S ALL YOU DID?

9    A    AND REVIEWED THE CLAIMS ON THE PACKAGING AS TO

10   WHETHER THEY HAD THE SAME PERFORMANCE AS THE

11   IPHONE.

12   Q    SO ALL YOU DID WAS YOU REVIEWED THE PACKAGING

13   AND YOU TURNED THEM ON; RIGHT?

14   A    IF YOU WANT TO SAY IT THAT WAY, YES.

15   Q    OKAY.  AND BASED ON THAT, YOU'RE TESTIFYING TO

16   THE JURY THAT ALL THESE ALTERNATIVE PHONES --

17   A    THAT IS --

18   Q    -- HAVE EQUAL FUNCTIONALITY?

19   A    I'M SORRY.  PARDON ME?

20   Q    AND BASED ON THAT ANALYSIS, IT'S YOUR

21   TESTIMONY TO THE JURY THAT ALL OF THESE ALTERNATIVE

22   PHONES HAVE EQUAL FUNCTIONALITY; RIGHT?

23   A    NOT NECESSARILY.

24   Q    SO THEY DON'T ALL HAVE EQUAL FUNCTIONALITY?

25   A    TO THE DEGREE THAT THEY ARE ALL SMARTPHONES

1210

1    AND THEY CLAIM THEY ARE SMARTPHONES, THEY HAVE

2    SIMILAR FUNCTIONALITY.

3    Q    AND YOUR BASIS FOR THAT OPINION IS READING THE

4    PACKAGING AND TURNING ON THE OPERATING SYSTEM?

5    THAT'S IT; RIGHT?

6    A    AND COMPARING THE DESIGNS TO ONE ANOTHER TO

7    SEE IF ANY OF THEM WERE THE -- WERE REQUIRED BY

8    THOSE FUNCTIONS, YES.

9    Q    THE PHONES THAT YOU IDENTIFIED AS ALTERNATIVE

10   MODELS, MR. BRESSLER, YOU DON'T HAVE ANY

11   INFORMATION AS TO WHETHER THE PRODUCT FEATURES OF

12   THOSE ALTERNATIVE PHONES AFFECT THE COST OF THE

13   PHONES, DO YOU?

14   A    I DID BUY MOST OF THOSE PHONES, AND SO WE HAD

15   A REASONABLY GOOD -- OR I HAD A REASONABLY GOOD

16   SENSE THAT THEY WERE AT LEAST COMPETITIVELY PRICED

17   IN THE MARKETPLACE, WHICH SUGGESTS THAT THEIR

18   MANUFACTURING COST MUST HAVE BEEN COMPETITIVE.

19   Q    LET'S SEE WHAT YOU SAID AT YOUR APRIL 24TH,

20   2012 DEPOSITION, PAGE 171, LINE 24 THROUGH 172,

21   LINE 4.

22            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

23   OPEN COURT OFF THE RECORD.)

24   BY MR. VERHOEVEN:

25   Q    THAT WAS THE QUESTION AND THE ANSWER YOU GAVE

1    AT YOUR SWORN DEPOSITION IN APRIL; RIGHT?

2    A    I WAS BEING ASKED ABOUT A PARTICULAR FEATURE,

3    YES.

4    Q    DO YOU STAND BY THAT TESTIMONY?

5    A    YES.

6            MS. KREVANS:  YOUR HONOR, FOR

7    COMPLETENESS, MAY I READ A PORTION OF THE TESTIMONY

8    JUST PRIOR?

9            THE COURT:  NO.  NO.  YOU'LL HAVE

10   REDIRECT OPPORTUNITY.

11   BY MR. VERHOEVEN:

12   Q    AND YOU DON'T HAVE ANY INFORMATION FOR THE

13   COMPETITIVE PHONES THAT YOU IDENTIFIED IN YOUR

14   REPORT AS TO WHETHER ANY PRODUCT FEATURE AFFECTED

15   THE QUALITY OF THE PHONES; RIGHT?

16   A    QUALITY WAS NOT A PART OF MY ANALYSIS.

17   Q    SO IS THE ANSWER NO?

18   A    I GUESS IT WOULD HAVE TO BE NO, YES.

19   Q    LET ME MAKE SURE THE RECORD IS CLEAR.  IT IS

20   CORRECT THAT YOU DO NOT HAVE ANY INFORMATION FOR

21   THE COMPETITIVE PHONES THAT YOU IDENTIFIED AS TO

22   WHETHER ANY PRODUCT FEATURE AFFECTED THE QUALITY OF

23   THOSE PHONES?

24   A    AGAIN, HOW YOU MEASURE QUALITY IS NOT CLEAR TO

25   ME.

1          BUT, YES, WHAT YOU SAID IS CORRECT.

2      Q     YOU DID NOTHING TO DETERMINE THE COMPARABLE

3      MANUFACTURING COSTS OF THE DIFFERENT ALTERNATIVES;

4      CORRECT?

5      A     I BELIEVE I STATED THE BASIS ON WHICH I

6      BELIEVED THAT THEIR MANUFACTURING COSTS WERE

7      COMPETITIVE AND SIMILAR.

8      Q     LET'S PLAY FROM YOUR APRIL 24TH DEPOSITION,

9      PAGE 168, LINE 18 THROUGH 169, LINE 2.

10          (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

11      OPEN COURT OFF THE RECORD.)

12      BY MR. VERHOEVEN:

13      Q     DO YOU STAND BY THAT TESTIMONY, SIR?

14      A     YES.

15          MR. VERHOEVEN:  YOUR HONOR, I DON'T KNOW

16      IF -- YOU MENTIONED THAT WE MIGHT WANT TO TAKE A

17      SHORT BREAK TO ADDRESS THE 035 ISSUE.

18          THE COURT:  WELL, I -- I'M GOING TO ALLOW

19      IT SOLELY FOR NON-INFRINGEMENT, BUT IT'S NOT

20      ADMISSIBLE FOR INVALIDITY.

21          THE MOCK-UP I'M ASSUMING IS THE SAME AS

22      THE MODELS; CORRECT?

23          MR. VERHOEVEN:  IT'S ONE AND THE SAME

24      THING.

25          THE COURT:  OKAY.

```
 1                MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

 2                MS. KREVANS:  YOUR HONOR, I HAVE THE

 3      REPORT HERE.  THERE'S NOT A WORD OF IT.  I HAVE THE

 4      ROG RESPONSES.  THERE'S NOT A WORD OF IT.

 5                THE COURT:  OKAY.  LET'S TAKE A

 6      TWO-MINUTE BREAK.  JUST A VERY SHORT BREAK, PLEASE.

 7                AGAIN, PLEASE KEEP AN OPEN MIND.  DON'T

 8      SPEAK WITH ANYONE ABOUT THE CASE, AND PLEASE DON'T

 9      GO VERY FAR.  WE'LL GET THIS RESOLVED IN JUST A

10      SECOND.

11                THE WITNESS:  I'M SORRY, YOUR HONOR?  DID

12      YOU SPEAK TO ME?

13                THE COURT:  YOU CAN STEP DOWN.

14                THE WITNESS:  THANK YOU.

15                THE COURT:  LET'S TAKE A QUICK BREAK.

16                (WHEREUPON, A RECESS WAS TAKEN.)

17                THE COURT:  ALL RIGHT.  LET ME SEE

18      MR. SHERMAN'S, OR I'M SORRY, MR. ANDERS', YOU SAID,

19      ANDREWS OR ANDERS' ERROR.

20                MS. KREVANS:  I HAVE HERE, YOUR HONOR, AN

21      EXCERPT FROM MR. ANDERS' REPORT WHICH ADDRESSES THE

22      '889 ON NON-INFRINGEMENT.  HE WAS THEIR

23      NON-INFRINGEMENT EXPERT.  THERE'S NOTHING IN THERE.

24      I ALSO HAVE THEIR INTERROGATORY RESPONSE ON

25      NON-INFRINGEMENT, WHICH HAS NOTHING.
```

```
 1              THE COURT:  LET ME SEE THAT AS WELL.

 2              AND LET ME HEAR FROM MR. VERHOEVEN.  IS

 3    THERE ANY PORTION OF EITHER MR. ANDERS' EXPERT

 4    REPORT YOU WANT ME TO LOOK AT OR TO YOUR

 5    INTERROGATORY RESPONSES?

 6              MR. VERHOEVEN:  WE'RE LOOKING AT THAT

 7    RIGHT THIS SECOND, YOUR HONOR.  I'VE BEEN UP HERE

 8    QUESTIONING THE WITNESS, SO -- BUT I DO KNOW, I'VE

 9    BEEN TOLD THAT THIS WAS IN THE EXCLUSIVE

10    POSSESSION -- I'M HOLDING THE 035, THIS WAS IN THE

11    EXCLUSIVE POSSESSION OF APPLE AND WE COULDN'T

12    GET --

13              THE COURT:  PLEASE TAKE A SEAT.  I'M

14    SORRY.

15              MR. VERHOEVEN:  WE COULDN'T GET IT.  I

16    ACTUALLY MOVED TO COMPEL.

17              MS. MAROULIS:  YOUR HONOR, WE MOVED TO

18    COMPEL THE 035 MOCK-UP LAST YEAR.

19              JUDGE GREWAL GRANTED THIS MOTION.

20    THEREAFTER THERE WAS A STIPULATION BY APPLE THAT HE

21    PUT ON THE EXHIBIT LIST THAT SHOWS THIS IS THE

22    EMBODIMENT OF THE PATENT.

23              THE COURT:  THIS WAS LITIGATED FOR THE

24    PRELIMINARY INJUNCTION.  IT WAS BEFORE THE FEDERAL

25    CIRCUIT.
```

1          MR. VERHOEVEN:  EXACTLY.

2          THE COURT:  IT WENT TO THE FEDERAL

3     CIRCUIT, RIGHT.

4          MR. JACOBS:  FROM THE DISCLOSURE

5     STANDPOINT, FROM THE PRODUCTION STANDPOINT, THAT'S

6     EXACTLY RIGHT.  THE STIPULATION IS IN THE FALL OF

7     2011, YOU HEARD THEM -- YOU HEARD THE BACKGROUND OF

8     THIS WHEN YOU HEARD MR. STRINGER'S TESTIMONY, HOW

9     HE IDENTIFIED THAT THE PHOTOGRAPHS IN HIS

10    DEPOSITION IN OCTOBER, HE IDENTIFIED THE

11    PHOTOGRAPHS AS REPRESENTING THE 035 MODEL.

12         SO THE 035 MODEL HAS BEEN IN THE

13    LITIGATION AND CARRIED FROM DEPOSITION TO

14    DEPOSITION AND COURT PROCEEDING TO COURT PROCEEDING

15    FOR FOUR MONTHS BEFORE THE DISCOVERY CUT-OFF, YOUR

16    HONOR.

17         SO THE INTERROGATORY RESPONSE VERY EASILY

18    COULD HAVE REFLECTED THE 035 MODEL WAS THAT THEIR

19    THEORY.

20         THE COURT:  WELL, MY UNDERSTANDING FROM

21    THE EXPERT REPORTS IS THAT IT WAS ONLY BROUGHT UP

22    IN THE CONTEXT OF INVALIDITY AND THAT WAS STRICKEN

23    FOR NOT BEING TIMELY DISCLOSED AND THAT THERE IS

24    NOT ANY EXPERT REPORT THAT RAISES THE 035 FOR

25    NON-INFRINGEMENT, AND IF THAT'S WRONG, LET ME KNOW

7216

```
 1    WHERE IN THESE DOCUMENTS I SHOULD BE LOOKING FOR

 2    SOMETHING DIFFERENT.

 3              MR. VERHOEVEN:  I'M BEING INFORMED THAT'S

 4    CORRECT, YOUR HONOR.

 5              THE COURT:  YEAH.

 6              MR. VERHOEVEN:  BUT THE POINT I'M TRYING

 7    TO MAKE, YOUR HONOR, IS THIS IS -- THIS IS ACTUALLY

 8    THE MODEL THAT WAS USED TO DRAW THE PICTURES IN THE

 9    '889.  EVERYBODY HAD KNOWLEDGE OF IT.  AND IT'S IN

10    THE PROSECUTION HISTORY, CITED AS AN EMBODIMENT,

11    AND I SHOULD BE ENTITLED --

12              THE COURT:  DIDN'T THE PTO SAY TO STRIKE

13    ALL THOSE --

14              MS. KREVANS:  YES, YOUR HONOR, BECAUSE

15    WHAT HAPPENED IN THE PROSECUTION WAS THE APPLICANT

16    SENT IN THE PHOTOS AND ASKED THAT THEY ACTUALLY BE

17    MADE PART OF THE FIGURES OF THE PATENT, AND THE PTO

18    SAID "WE DON'T DO THAT.  YOU HAVE DRAWINGS AND THE

19    DRAWINGS ARE WHAT GOES IN THE PATENT AND THEREFORE

20    THE DRAWINGS ARE WHAT DEFINE THE CLAIM."

21              BUT JUST TO BE CLEAR, JUDGE GREWAL AND

22    YOUR HONOR HAVE BEEN VERY CONSISTENT IN THIS CASE

23    ABOUT DRAWING A LINE ABOUT WHETHER CONTENTIONS HAVE

24    BEEN DISCLOSED AND ANYTHING IN AN EXPERT REPORT

25    THAT WAS NOT IN CONTENTIONS WAS STRUCK FROM THE
```

1    EXPERT REPORT.

2              ALSO, YOUR HONOR HAS BEEN VERY CONSISTENT

3    WITH ENFORCING WHETHER THINGS WERE IN EXPERT

4    REPORTS.  IF IT WASN'T IN EXPERT REPORT, THE THEORY

5    CAN'T BE PRESENTED.

6              HERE WE HAVE A NON-INFRINGEMENT THEORY

7    WE'D LIKE TO PRESENT THAT WAS NEVER IN THE

8    CONTENTIONS AND IT WAS ALSO NEVER IN THE EXPERT

9    REPORT AND WE'RE GOING TO HEAR IT FOR THE FIRST

10   TIME RIGHT HERE IN FRONT OF THE JURY.

11             THAT IS IMPERMISSIBLE, BECAUSE IF THEY

12   WANTED TO ASSERT A NON-INFRINGEMENT THEORY BASED ON

13   THIS MODEL WHICH THEY'VE KNOWN ABOUT SINCE, AS

14   MR. JACOBS SAID, IN 2011, LONG BEFORE THEY HAD TO

15   ANSWER THE CONTENTION INTERROGS, THEY SHOULD HAVE

16   DISCLOSED IT IN THEIR CONTENTIONS.

17             THEY DIDN'T AND IT CAN'T COME IN.

18             AND OF COURSE IT'S ALSO NOT IN THEIR

19   EXPERT REPORT.

20             WHAT THEY'RE TRYING TO DO IS GET AROUND

21   THE LINE THAT YOU AND JUDGE GREWAL HAVE DRAWN ABOUT

22   PROPER DISCLOSURE BY TRYING TO PUT THIS NEW THEORY,

23   WHICH THEY CAN'T USE IN THEIR OWN CASE, IN THROUGH

24   CROSS-EXAMINATION AND THAT IS IMPROPER.

25             MR. VERHOEVEN:  YOUR HONOR, IT'S NOT A

7218

```
1    NEW THEORY.  THERE'S NO NEW THEORY BEING BANDIED

2    ABOUT.

3              THIS IS A DOCUMENT -- THIS IS A PHYSICAL

4    MODEL THAT WE HAD TO FIGHT JUST TO GET THAT APPLE

5    SUCCESSFULLY PRECLUDED US FROM USING IN THE

6    PRELIMINARY INJUNCTION STAGE BECAUSE THEY DIDN'T

7    PRODUCE IT TO US, AND THE NOTION THAT THEY DIDN'T

8    KNOW THAT WE WERE GOING TO USE THIS TO SHOW, HELP

9    SHOW WHAT AN EMBODIMENT, WHAT APPLE SAYS IS AN

10   EMBODIMENT OF THE '889 PATENT IS JUST NOT CREDIBLE.

11             OF COURSE THEY KNEW WE WERE GOING TO DO

12   THAT, YOUR HONOR.  IT'S NOT A NEW THEORY.

13             THE COURT:  WELL, IT WASN'T IN THE

14   INFRINGEMENT CONTENTIONS.  IT WASN'T IN THE EXPERT

15   REPORT.  SO I --

16             MR. VERHOEVEN:  BUT WHY WOULD IT NEED TO

17   BE IN THE INFRINGEMENT CONTENTIONS?  THIS IS AN

18   EMBODIMENT OF THE ACTUAL '889.

19             THE COURT:  YOU CITED IT ONLY FOR

20   INVALIDITY AND THAT WAS STRICKEN FOR UNTIMELY

21   DISCLOSURE.

22             SO THAT'S MY RULING.  YOU'VE MADE YOUR

23   RECORD.  LET'S BRING BACK THE JURY UNLESS YOU HAVE

24   ANYTHING ELSE.

25             MR. VERHOEVEN:  I'M SORRY, YOUR HONOR.  I
```

```
 1    DON'T KNOW WHAT THE RULING WAS.

 2              THE COURT:  THE RULING IS THAT --

 3              MR. VERHOEVEN:  BECAUSE I THOUGHT YOU

 4    SAID THIS WAS IN FOR INFRINGEMENT IN YOUR EARLIER

 5    RULING.

 6              THE COURT:  WELL, THAT'S BECAUSE IT WAS

 7    NEVER -- FOR WHATEVER REASON, THE ONLY OBJECTION

 8    THAT HAD BEEN -- SAMSUNG ONLY CITED THE 035 MARKUP,

 9    MOCK-UP -- EXCUSE ME -- FOR INVALIDITY.  OKAY?  YOU

10    NEVER CITED IT FOR ANYTHING ELSE.

11              APPLE THEN MOVED TO STRIKE THE EXPERT

12    REPORT USING THE 035 MOCK-UP FOR INVALIDITY FOR

13    UNTIMELINESS.  JUDGE GREWAL GRANTED THAT.  I HAVE

14    AFFIRMED JUDGE GREWAL'S EXCLUSION.

15              AND THEN NOW THERE'S A NEW THEORY OF

16    NON-INFRINGEMENT.

17              NOW, AT THE TIME THAT I ISSUED MY

18    AUGUST 2ND ORDER, THE NON-INFRINGEMENT ISSUE HAD

19    NOT BEEN BRIEFED OR RAISED AT ALL, AND I UNDERSTAND

20    NOW WHY.  IT'S BECAUSE IT HAD NOT BEEN RAISED AS A

21    THEORY IN EITHER SAMSUNG'S EXPERT REPORT OR

22    CONTENTION INTERROGATORIES.

23              BUT I DO THINK THAT IT IS CORRECT THAT IF

24    IT HASN'T BEEN TIMELY DISCLOSED IN AN EXPERT

25    REPORT, OR IN A CONTENTION INTERROGATORY, IT SHOULD
```

1220

```
 1     NOT -- AND IT'S IMPROPER TO RAISE IT NOW.  IT'S
 2     UNTIMELY.
 3               EVERYONE WAS AWARE OF THIS.  ALL OF YOUR
 4     ARGUMENTS WITH REGARD TO THIS PARTICULAR MODEL
 5     SHOULD HAVE BEEN RAISED TIMELY.
 6               MR. VERHOEVEN:  WELL, JUST ONE LAST THING
 7     SO I CAN GET IT IN THE RECORD.
 8               THE COURT:  I'M GOING TO START CHARGING
 9     YOUR TIME ON THIS, OKAY?  BECAUSE I'VE MADE MY
10     RULING.  YOU'VE MADE YOUR RECORD FOR APPEAL.  I'M
11     GOING TO START CHARGING YOU TIME.  GO AHEAD IF YOU
12     WANT TO HAVE RECONSIDERATION.  GO AHEAD.
13               MR. VERHOEVEN:  JUST ONE SENTENCE, YOUR
14     HONOR.  THIS IS NOT A NEW THEORY OF
15     NON-INFRINGEMENT.
16               THE COURT:  WELL, YOU HAVEN'T BEEN ABLE
17     TO POINT TO ME ANY PLACE THAT IS IN YOUR EXPERT
18     REPORT OR IN YOUR INFRINGEMENT CONTENTIONS AND I'M
19     NOW CHARGING THIS TIME TO YOU.
20               SO GO AHEAD.  KEEP TALKING.
21               MR. PRICE:  YOUR HONOR, IF I MAY?  YOU
22     CAN CHARGE US, OF COURSE.
23               OUR NON-INFRINGEMENT OPINION IS WE DON'T
24     LOOK LIKE THE PATENT.  WE DON'T NEED AN EXPERT FOR
25     THAT.  AS THE DEFENDANTS, WE DON'T NEED AN EXPERT
```

```
 1     AT ALL.
 2              THIS IS NOW A FACT QUESTION.  DO OUR
 3     DESIGNS LOOK LIKE THE PATENT?  AND THIS TELLS YOU
 4     WHAT THE PATENT EMBODIES.
 5              WE'RE NOT REQUIRED TO GO INTO GREAT
 6     DETAIL, PARTICULARLY IN A DESIGN CASE, AS TO HOW WE
 7     DON'T LOOK LIKE THE PATENT.
 8              WE DON'T NEED AN EXPERT AT ALL.  WE'RE
 9     NOT REQUIRED TO HIRE ONE.
10              I UNDERSTAND THERE -- OUR EXPERT REPORTS
11     HAVE BEEN EXCLUDED IN SOME MEASURE.  OUR EXPERTS
12     CAN'T SAY CERTAIN THINGS.
13              BUT THAT DOESN'T MEAN THAT WE CAN'T GO
14     WITH OUR INFRINGEMENT POSITION, NON-INFRINGEMENT
15     POSITION HERE, WHICH IS WE DON'T LOOK LIKE THE
16     PATENT.
17              THE COURT:  BUT IT SHOULD HAVE BEEN IN A
18     CONTENTION INTERROGATORY RESPONSE, THOUGH.  THE
19     CONTENTION INTERROGATORY RESPONSE DOESN'T REQUIRE
20     EXPERT TESTIMONY OR AN EXPERT REPORT.
21              MR. PRICE:  NO.  IT REQUIRES US TO SAY WE
22     DON'T LOOK LIKE THE PATENT.  IT DOESN'T REQUIRE
23     ANYTHING ELSE.
24              THE COURT:  WELL, IT DOES REQUIRE YOU TO
25     SAY WHY YOU DON'T LOOK LIKE THE PATENT.
```

```
 1              MR. PRICE:  IN A DESIGN CASE, BECAUSE YOU

 2    CAN LOOK AT IT AND I CAN LOOK AT IT AND I CAN LOOK

 3    AT THIS AND WE CAN DECIDE.  SO THAT TWO MINUTES

 4    GOES ON OUR TIME.

 5              THIS I WOULD BEG YOU TO RECONSIDER

 6    BECAUSE IT IS JUST A, I BELIEVE A MAJOR

 7    MISINTERPRETATION OF WHAT WE'RE REQUIRED TO DO IN

 8    DISCOVERY, AND OBVIOUSLY THIS SERIOUSLY IMPACTS OUR

 9    NON-INFRINGEMENT CASE BECAUSE WE SHOULD BE ABLE TO

10    SAY WE DON'T LOOK LIKE THIS.

11              MS. KREVANS:  YOUR HONOR --

12              MR. PRICE:  "THIS" BEING THE PHYSICAL

13    EXHIBIT.

14              SO HOPEFULLY YOU WON'T CHARGE US FOR

15    THEIR RESPONSE, BUT THAT'S YOUR DISCRETION.

16              MS. KREVANS:  IF YOUR HONOR LOOKS AT

17    THEIR NON-INFRINGEMENT CONTENTIONS AND RESPONSE TO

18    THE INTERROGATORY, THEY ARE SIMPLY BOILERPLATE

19    AFTER BOILERPLATE AFTER BOILERPLATE PARAGRAPHS.

20              THIS HAS NEVER BEEN DISCLOSED.  IT NEEDED

21    TO BE DISCLOSED.  IT IS A CONTENTION.

22              IT'S AN AMBUSH NOW IF YOU LET THEM DO IT.

23              AND YOU HAVE DRAWN THIS LINE

24    CONSISTENTLY.  WE THINK YOU'RE DRAWING IT AGAIN

25    CORRECTLY NOW.
```

```
 1                THE COURT:  ALL RIGHT.  WELL, I'VE MADE
 2      MY RULING.
 3                IT'S 4:05.  I'D LIKE TO BRING THE JURY
 4      BACK IN.  I NEED TO GO BACK INTO THE RECORD AND SEE
 5      WHAT TIME DID WE EXCUSE THE JURY.  I'M SORRY.
 6                (DISCUSSION OFF THE RECORD BETWEEN THE
 7      COURT AND THE REPORTER.)
 8                THE COURT:  OKAY.  LET'S BRING THE JURY
 9      BACK IN, PLEASE.
10                (WHEREUPON, THE FOLLOWING PROCEEDINGS
11      WERE HELD IN THE PRESENCE OF THE JURY:)
12                THE COURT:  ALL RIGHT.  LET'S GO AHEAD,
13      PLEASE.
14                MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
15                THE COURT:  IT'S 4:07.  4:08.  GO AHEAD.
16      BY MR. VERHOEVEN:
17      Q    MR. BRESSLER, LET'S TALK BRIEFLY ABOUT THE
18      '889 DESIGN PATENT.  AND DO YOU HAVE THAT PATENT IN
19      MIND?
20      A    IN MIND?
21      Q    YEAH.  DO YOU NEED -- DO YOU WANT ME TO SHOW
22      YOU WHERE IT IS?
23      A    I THINK I HAVE IT.
24      Q    IT'S JX 1061.  YOU CAN LOOK AT IT.
25      A    YES, I HAVE THAT.  IT'S NOT EXACTLY THE SAME
```

```
 1    AS THE PATENT THAT I'M USED TO SEEING, BUT I

 2    BELIEVE IT REPRESENTS IT.

 3    Q    I'M SORRY.  DO YOU HAVE THAT?

 4    A    I DO.

 5    Q    OKAY.  NOW, DO YOU REMEMBER ON JULY 31ST,

 6    MR. STRINGER TESTIFIED -- PROVIDED SOME TESTIMONY

 7    ABOUT THE DESIGN OF THE '889 PATENT AS WELL?

 8    A    YES.

 9    Q    MR. STRINGER IS ALSO LISTED AS AN INVENTOR ON

10    THE DESIGN '889 PATENT; CORRECT?

11    A    I DON'T KNOW.  I SUSPECT -- I BELIEVE SO.

12    Q    YOU DON'T KNOW?

13    A    I DON'T KNOW FOR CERTAIN.  I BELIEVE SO.

14    Q    WELL, YOU HAVE THE '889 PATENT THERE.  CAN YOU

15    LOOK FOR HIS NAME AS AN INVENTOR?

16    A    I WILL.

17         YES, I SEE.

18    Q    SO WE'RE AGREED HE IS LISTED AS AN INVENTOR?

19    A    YES.

20    Q    NOW LET'S GO LOOK AT WHAT MR. STRINGER SAID

21    WITH RESPECT TO THE '889.

22         THIS IS SDX 3789.

23         SO MR. BRESSLER, JUST FOR CLARITY ON THIS

24    SLIDE, SDX 3789, ON THE LEFT-HAND SIDE IS PULLED

25    OUT TWO FIGURES FROM THE DESIGN PATENT.  YOU HAVE
```

```
 1    THE '889 DESIGN PATENT IN FRONT OF YOU, JUST TO

 2    CHECK ON THAT.

 3              AND THIS IS TESTIMONY FROM

 4    MR. SPRINGER -- STRINGER, EXCUSE ME -- FROM

 5    JULY 31ST, PAGE 522, LINE 24 THROUGH 523, LINE 4.

 6              "QUESTION:  NOW, WITH RESPECT TO THE '889

 7    DESIGN PATENT, ISN'T IT CORRECT THAT THE DESIGN

 8    TEAM'S OBJECTIVES WERE TO REDUCE THE PRODUCT TO

 9    WHAT WAS ESSENTIALLY A SINGLE, SEAMLESS VESSEL,

10    WHICH WAS THE REAR HOUSING?

11              "ANSWER:  THAT WAS THE INSPIRATION OF

12    THIS DESIGN, YES."

13              DO YOU REMEMBER THAT TESTIMONY?

14    A    I DO.

15    Q    AND IF YOU LOOK AT THE BACK OF THE FIGURES FOR

16    THE '889 PATENT, YOU SEE IT'S A SINGLE, SEAMLESS

17    VESSEL; RIGHT?

18    A    IT DOES APPEAR TO BE A SINGLE SHAPE, YES.

19    Q    OKAY.  AND CAN WE GO TO SDX 3790.

20              AND MR. STRINGER CONTINUED ON JULY 31ST,

21    PAGE 523, LINES 5 THROUGH 10 OF THE TRANSCRIPT.

22              "QUESTION:  AND ANOTHER IMPORTANT DESIGN

23    GOAL WAS TO HAVE JUST ONE GAP IN THE PRODUCT

24    BETWEEN THE BACK HOUSING AND WHAT YOU REFER TO AS

25    THE CLEAR GLASS BEZEL THAT EXTENDS ALL THE WAY
```

7226

1    ACROSS THE FRONT, RIGHT?

2              "ANSWER:  YES."

3              DO YOU REMEMBER THAT TESTIMONY?

4    A    I DO.

5    Q    AND THAT'S REFERRING TO, ON THE FRONT OF THE

6    IMAGE, THIS GAP GOING AROUND BETWEEN THE GLASS AND

7    THE EDGE; RIGHT?

8    A    THERE IS A RING AND A SEAM THERE, YES.

9    Q    YES.  THAT'S THE JUST ONE GAP IN THE PRODUCT?

10   A    I BELIEVE HE CALLS SEAMS GAPS, YES.

11   Q    SO HE'S REFERRING TO THAT ON THE FRONT, RIGHT?

12   A    YES, ALL THE WAY ON THE OUTSIDE.

13   Q    RIGHT.  SO THE TWO DESIGN GOALS THAT

14   MR. STRINGER IDENTIFIED AS BEING NEW AND UNIQUE FOR

15   THE '889 WERE, NUMBER ONE, ON THE BACK HOUSING,

16   THERE WAS A SINGLE, SEAMLESS VESSEL; AND THEN THE

17   OTHER IMPORTANT DESIGN GOAL WAS THERE'S JUST ONE

18   GAP BETWEEN THE BACK HOUSING, WHICH IS THE SEAMLESS

19   VESSEL, AND THE FRONT.  FAIR?

20   A    I BELIEVE THAT WAS HIS INTENT, YES.

21   Q    NOW, MS. KHAN, DO WE HAVE THE PHYSICAL EXHIBIT

22   FOR THE SAMSUNG TAB 10.1, JX 1038?

23              OKAY.  NOW, CAN YOU HOLD UP THE BACK SO

24   THE JURY CAN SEE IT?

25   A    (INDICATING.)

1    Q    WITH RESPECT TO THE ACCUSED PRODUCT, THE BACK

2    HOUSING IS NOT A SINGLE -- A SINGLE, SEAMLESS

3    VESSEL, IS IT, SIR?

4    A    NO, IT'S NOT.  I BELIEVE IT GIVES THE

5    IMPRESSION OF ONE.

6    Q    THANK YOU, SIR.

7    A    BUT I DON'T BELIEVE IT IS.

8    Q    IF YOU LOOK AT THE BACK -- ACTUALLY, LET'S GO

9    TO SDX 3784.

10            AND YOUR HONOR, MAY I APPROACH TO HAND

11   THE TAB TO THE JURY?

12            THE COURT:  YES, PLEASE GO AHEAD.

13            MR. VERHOEVEN:  THANK YOU.

14            SO FOR THE RECORD, I'VE HANDED PHYSICAL

15   EXHIBIT JX 1038 TO THE JURY TO INSPECT.  THAT'S THE

16   GALAXY TAB 10.1.

17   Q    AND ON THE SCREEN, SLIDE SDX 3784, WE'VE GOT

18   SOME IMAGES OF THAT SAME TAB 10.1 BLOWN UP SO

19   PEOPLE CAN SEE.

20            SO I'M GOING TO REFER TO THESE IMAGES

21   WHILE THE JURY IS -- JURORS ARE LOOKING AT THE

22   PHYSICAL PRODUCT.  OKAY?

23   A    SURE.

24   Q    SO IF YOU LOOK AT THE ACCUSED PRODUCT, YOU'LL

25   SEE -- IF YOU'RE LOOKING AT THE BACK, THERE'S AT

1    LEAST TWO PIECES; RIGHT?

2    A    YES.

3    Q    AND THERE'S A SEAM THAT GOES ALONG THE BACK

4    AND PROTRUDES DOWN UNDER -- I GUESS THAT'S A

5    CAMERA.  IS THAT A CAMERA?

6    A    I BELIEVE SO.

7    Q    AND THEN THAT WHOLE ASSEMBLY -- LET'S GO TO

8    SDX 3785 -- ALSO FORMS A RIM BETWEEN THE FRONT

9    GLASS SURFACE AND THE BACK SURFACE, THERE'S A WHOLE

10   RIM STRUCTURE THAT GOES ALL THE WAY AROUND THE TAB

11   BETWEEN THOSE TWO; RIGHT?

12   A    I SEE THAT.

13   Q    THERE'S NO RIM BETWEEN THE BACK HOUSING AND

14   THE FRONT GLASS IN THE '889 DESIGN PATENT.  TRUE?

15   A    THAT'S TRUE.

16   Q    AND THERE'S NO SEAM THAT GOES ALONG THE BACK

17   SEPARATING TWO PORTIONS OF THE BACK HOUSING IS

18   THERE, SIR, ON THE '889?

19   A    NO.

20   Q    BUT THERE IS ON THE GALAXY TAB 10.1; RIGHT?

21   A    IT'S AN ABSOLUTELY FLUSH SEAM, YES, THAT MAKES

22   IT APPEAR TO BE A CONTINUOUS SURFACE.

23   Q    YOU'RE SAYING IN THE PHOTO, AN OBSERVER

24   LOOKING AT THIS WOULD THINK THIS IS A CONTINUOUS

25   SURFACE, THIS SILVER COLOR THAT CHANGES COLOR

1    TWO-TONE TO A BLACK COLOR?

2    A    I THINK THEIR PERCEPTION WOULD BE THAT IT'S

3    ALL THE SAME SHAPE, PARTICULARLY IF THERE WASN'T

4    ANY CHANGE IN COLOR, WHICH ON A DESIGN PATENT THERE

5    ISN'T.

6    Q    WELL, MR. STRINGER DIDN'T TALK ABOUT THE

7    BACK -- WE CAN GO BACK TO SDX 3790.  EXCUSE ME.

8    3789.

9           MR. STRINGER DIDN'T TALK ABOUT THE SAME

10   SHAPE OR TWO DIFFERENT PIECES OF THE HOUSING.  HE

11   SAYS THE "OBJECTIVES WERE TO REDUCE THE PRODUCT TO

12   WHAT WAS ESSENTIALLY A SINGLE, SEAMLESS VESSEL,"

13   AND THERE'S NO SEAMS AT ALL VISIBLE ON THE '889;

14   RIGHT?

15   A    I BELIEVE THAT WAS HIS DESIGN, YES.

16   Q    AND THE TAB 10.1 IS NOT A SINGLE, SEAMLESS

17   VESSEL WITH A REAR HOUSING, IS IT, SIR?

18   A    NO.  BUT IT APPEARS TO BE.

19   Q    LET'S GO TO SDX 3787.

20          NOW, THIS IS JUST A SLIDE WITH THE GALAXY

21   TAB 10 ON THE RIGHT AND IMAGES FROM THE '889 PATENT

22   ON THE LEFT.

23          DO YOU SEE THAT, SIR?

24   A    I DO.

25   Q    NOW, YOU KNEW, WHEN YOU FORMED YOUR

1    OPINIONS -- WITHDRAW THE QUESTION.

2          DO YOU SEE THESE LINES ON THE BACK?

3    A    I DO.

4    Q    CAN YOU TELL THE JURORS WHAT THAT -- WELL,

5    WITHDRAW THE QUESTION AGAIN.

6          IS IT FAIR TO REFER TO THAT AS OBLIQUE

7    LINE SHADING?

8    A    THAT'S ONE WAY TO VIEW IT, YES.

9    Q    THAT'S WHAT IT'S CALLED; RIGHT?

10   A    I BELIEVE SO.

11   Q    RIGHT.  AND WHEN YOU FORMED YOUR OPINIONS FOR

12   THE '889 PATENT, YOU KNEW THAT OBLIQUE LINE SHADING

13   MUST BE USED TO SHOW TRANSPARENT, TRANSLUCENT, AND

14   HIGHLY POLISHED SURFACES; RIGHT?

15   A    YES.

16   Q    SO WHAT THIS IS TELLING US IS THAT THE BACK OF

17   THE '889 PATENT IS A SHINY SURFACE?

18   A    I BELIEVE SO.

19   Q    NOW, IF YOU LOOK AT THE TAB, AND I DON'T

20   KNOW -- DID WE -- MAYBE WE CAN PASS IT OUT ONE MORE

21   TIME SO THE JURORS CAN SEE.

22   A    I BELIEVE THE TERM I WOULD USE WOULD NOT BE

23   SHINY.  IT WAS BE REFLECTIVE.

24   Q    MS. KHAN, IF WE COULD JUST HAND THAT TO THE

25   JURORS SO THEY CAN PASS IT AROUND ONE MORE TIME.

```
 1              NOW, WHEN YOU LOOK AT THE BACK SURFACE OF

 2     THE GALAXY TAB 10.1, IT IS NOT A SHINY SURFACE, IS

 3     IT?

 4     A    IT IS NOT SHINY.  IT'S REFLECTIVE.

 5     Q    IT'S BRUSHED MATTE FINISH, ISN'T IT, SIR?

 6     A    IT'S OVER THERE.

 7     Q    DO YOU NEED TO LOOK AT IT?

 8     A    WELL, IT'S -- I DON'T KNOW IF THAT ONE IS

 9     BRUSHED.  I KNOW ONE OF THEM IS BRUSHED.  I KNOW

10     ONE OF THEM IS PAINTED.  THEY ALL HAVE SOME DEGREE

11     OF REFLECTIVITY.

12     Q    AS SOON AS THE JURORS ARE DONE, I'LL SHOW IT

13     TO YOU.  OKAY.

14              YOU DO KNOW WHAT A BRUSHED, MATTE FINISH

15     IS; RIGHT?

16     A    YES.

17     Q    AND A BRUSHED, MATTE FINISH IS NOT THE SAME AS

18     A TRANSPARENT OR HIGHLY POLISHED SURFACE, IS IT?

19     A    NO.  BUT IT IS A REFLECTIVE SURFACE.

20     Q    SO THE ANSWER IS NO; RIGHT?

21     A    IT'S NOT THE WORDS YOU USED, THAT'S CORRECT.

22     Q    IT'S NOT A TRANSPARENT, TRANSLUCENT, OR HIGHLY

23     POLISHED SURFACE, IS IT, A BRUSHED MATTE SURFACE?

24     A    I'M NOT SURE IT'S HIGHLY POLISHED.  I BELIEVE

25     IT'S REFLECTIVE.
```

```
 1              MR. VERHOEVEN:  YOUR HONOR, MAY I
 2     APPROACH?
 3              THE WITNESS:  AND I DO BELIEVE THAT THIS
 4     IS REFLECTIVE.
 5              MR. VERHOEVEN:  MAY I APPROACH?
 6              THE COURT:  PLEASE, GO AHEAD.
 7     BY MR. VERHOEVEN:
 8     Q    OKAY.  WHEN YOU HOLD THIS UP AND LOOK AT IT,
 9     CAN YOU SEE YOUR REFLECTION IN IT, SIR?
10     A    NO, I CAN'T SEE MY REFLECTION.
11     Q    BUT YOU'RE SAYING IT'S REFLECTIVE?
12     A    I CAN SEE LIGHTS REFLECTING OFF OF IT.
13     Q    WELL, YOU CAN SEE LIGHT REFLECTING ON ANY
14     SURFACE, CAN'T YOU, SIR?
15     A    PRETTY MUCH.
16     Q    YOU CAN SEE LIGHT REFLECTING OFF A BRUSHED
17     MATTE FINISH, CAN'T YOU, SIR?
18     A    I BELIEVE SO.
19     Q    BUT YOU'D AGREE THAT THAT PRODUCT RIGHT THERE,
20     THE BACK IS A BRUSHED, MATTE SURFACE?
21     A    YES.
22     Q    AND IT'S TWO --
23     A    I BELIEVE IT'S A BRUSHED SURFACE.  I DON'T
24     KNOW IF I'D QUALIFY IT AS MATTE.
25     Q    YOU CAN'T SEE YOUR FACE IN IT?
```

1    A    YES, I CAN'T SEE MY FACE IN IT.

2    Q    IN FACT, IT'S TWO-TONED; RIGHT?

3    A    YES.  BUT THAT DOESN'T MATTER IN A DESIGN

4    PATENT.

5    Q    TELL THE JURORS WHAT COLORS YOU SEE ON THE

6    BACK.

7    A    I BELIEVE THERE IS A LIGHT GRAY AND A SLIGHTLY

8    DARKER GRAY.

9    Q    OKAY.  YOU CAN PUT THAT DOWN.  THANKS.

10           MR. BRESSLER, APPLE IS PAYING YOU TO

11   TESTIFY AS THEIR EXPERT WITNESS IN THIS CASE;

12   RIGHT?

13   A    YES, THEY ARE.

14   Q    HOW MUCH ARE YOU BEING PAID PER HOUR?

15   A    $400.

16   Q    HOW MUCH MONEY HAS APPLE PAID YOU SO FAR?

17   A    SO FAR?

18   Q    YES.

19   A    FOR THIS CASE, ABOUT $75,000.

20   Q    YOU ADVERTISE YOURSELF ON THE INTERNET AS AN

21   EXPERT WITNESS; CORRECT?

22   A    I BELIEVE I'M LISTED ON THE IDSA WEBSITE

23   HAVING TAKEN A CERTIFICATION COURSE.

24   Q    SO IS THAT YES?

25   A    I GUESS IN THAT ONE PLACE, YES.

```
 1    Q    YOU'RE ALSO LISTED AS AN EXPERT WITNESS ON A

 2    WEBSITE CALLED PETERBRESSLERIDSA.COM; RIGHT?

 3    A    I DON'T BELIEVE I'M LISTED AS AN EXPERT

 4    WITNESS THERE.  I BELIEVE THAT'S A WEBSITE THAT I

 5    TOOK OUT WHEN I SOLD BRESSLER GROUP AND I HAVEN'T

 6    DONE ANYTHING WITH AT ALL YET.  I BELIEVE IT'S

 7    UNDER CONSTRUCTION.

 8    Q    RYAN, CAN WE PUT UP THE SITE

 9    HTTP://PETERBRESSLERIDSA.COM?  KEEP IT OFF THE BIG

10    SCREEN FIRST.  KEEP IT OFF THE BIG SCREEN FIRST.

11         DO YOU SEE THAT ON THE SCREEN THERE, SIR?

12    A    YES, I DO.

13    Q    WELL, WHAT DO YOU KNOW?

14    A    YES, I DO.

15    Q    YOU DO?

16    A    I DO.  I HAD FORGOTTEN ALL ABOUT THAT.

17    Q    YOU FORGOT ABOUT IT?

18    A    I DID.

19    Q    THIS IS YOU -- THIS IS -- YOU'RE THE SAME

20    PETER BRESSLER AS IN THIS WEB LINK; RIGHT?

21    A    I AM.

22    Q    CAN WE PUT IT UP ON THE SCREEN?  THAT'S YOU,

23    PETER BRESSLER; RIGHT?

24    A    THAT'S CORRECT.

25    Q    AND IT SAYS, "EXPERT WITNESSES FOR TRADE
```

```
 1   DRESS, UTILITY AND DESIGN PATENTS AND PRODUCT
 2   LIABILITY."
 3              RIGHT?
 4   A    THAT'S CORRECT.
 5   Q    AND THAT'S YOU ADVERTISING YOURSELF TO BE AN
 6   EXPERT WITNESS IN LIABILITY CASES, PRODUCT CASES,
 7   DESIGN CASES, UTILITY CASES; RIGHT?
 8   A    YES, IT'S THERE.
 9   Q    AND THIS ISN'T THE FIRST TIME YOU'VE PROVIDED
10   PAID TESTIMONY FOR APPLE; RIGHT?
11   A    IF YOU WANT TO COUNT THE ITC CASE, THAT WOULD
12   MAKE IT THE SECOND TIME.
13   Q    AND, INDEED, YOU TESTIFIED AS AN EXPERT IN
14   MANY CASES; RIGHT?
15   A    I BELIEVE I'VE TESTIFIED NOW FOUR TIMES.
16              MR. VERHOEVEN:  OKAY.  I'LL PASS THE
17   WITNESS AT THIS POINT, YOUR HONOR.
18              THE COURT:  ALL RIGHT.
19              IT'S NOW 4:24.  GO AHEAD WITH THE CROSS,
20   PLEASE, OR THE REDIRECT, I'M SORRY.
21              (PAUSE IN PROCEEDINGS.)
22              MS. KREVANS:  LET ME MOVE THE STOOL FOR
23   MR. VERHOEVEN.  I DON'T WANT TO HIT MYSELF.
24              THE COURT:  IT'S 4:25.
25              MS. KREVANS:  THANK YOU, YOUR HONOR.
```

1236

```
1    ///

2                    REDIRECT EXAMINATION

3    BY MS. KREVANS:

4    Q    COULD YOU LOOK AT PX 59 IN THE ORIGINAL BINDER

5    I GAVE YOU, MR. BRESSLER.

6    A    LET ME PUT THIS BACK A SECOND.  IT'S LIKE A

7    LAUREL AND HARDY MOVIE.

8              WHAT PAGE?

9    Q    PX 59.

10   A    YES.

11   Q    OKAY.  YOU RECALL THAT EARLY IN HIS

12   CROSS-EXAMINATION, MR. VERHOEVEN ASKED YOU SOME

13   QUESTIONS ABOUT WHAT KIND OF EVIDENCE YOU HAD OF

14   CONFUSION BY BUYERS OF THE SAMSUNG DEVICES?

15   A    YES.

16   Q    HAVE YOU PERSONALLY DONE ANY SURVEYS OR

17   RESEARCH TO DETERMINE WHETHER BUYERS OF SAMSUNG --

18   CONSUMERS CAN BUY A SAMSUNG DEVICE THINKING THAT

19   IT'S AN APPLE DEVICE?  HAVE YOU DONE SUCH RESEARCH

20   PERSONALLY?

21   A    NO.  I'VE SEEN ARTICLES THAT SUGGEST PEOPLE

22   WOULD MISTAKE ONE FOR THE OTHER, BUT I --

23              MR. VERHOEVEN:  OBJECTION, YOUR HONOR.

24   THIS IS TESTIMONY REFERRING TO THIS FOR THE TRUTH,

25   WHICH THERE'S A LIMITING INSTRUCTION ON.
```

```
 1              MOVE TO STRIKE.

 2              THE COURT:  WHICH EXHIBIT NUMBER IS THIS,

 3    PLEASE?

 4              MS. KREVANS:  IT'S PX 59, YOUR HONOR.

 5              MR. VERHOEVEN:  YOUR HONOR, MY OBJECTION

 6    WAS TO THE WITNESS'S ANSWER, NOT TO PX 59.  HE WAS

 7    REFERRING TO ARTICLES.

 8              THE COURT:  OH, I SEE.

 9              MS. KREVANS:  LET ME REPHRASE, YOUR

10    HONOR, JUST TO ELIMINATE THE PROBLEM.  I'LL ASK A

11    QUESTION THAT CAN BE A YES OR NO ANSWER.

12    Q    MR. BRESSLER, HAVE YOU DONE ANY RESEARCH

13    PERSONALLY TO DETERMINE WHETHER CONSUMERS SOMETIMES

14    PURCHASE SAMSUNG PRODUCTS BELIEVING THEM TO BE

15    APPLE PRODUCTS?

16    A    I'VE SEEN THIS REPORT.  BEYOND THAT, NO, I

17    HAVE NOT DONE ANY INDIVIDUAL SURVEYS, NO.

18    Q    SO YOU HAVEN'T PERSONALLY DONE ANY RESEARCH ON

19    THIS?  YOU HAVEN'T GONE OUT AND INTERVIEWED

20    CONSUMERS YOURSELF?

21    A    NO, I HAVE NOT.

22    Q    OKAY.  HAS SAMSUNG UNDERTAKEN ANY SURVEYS OR

23    INVESTIGATIONS TO DETERMINE WHETHER CONSUMERS HAVE

24    PURCHASED SAMSUNG DEVICES BELIEVING THEM TO BE

25    APPLE DEVICES?
```

```
1              MR. VERHOEVEN:  OBJECTION.  OUTSIDE THE
2    SCOPE OF CROSS.
3              THE COURT:  OVERRULED.
4              THE WITNESS:  I BELIEVE THIS EXHIBIT
5    DEMONSTRATES THAT THEY HAVE DONE THAT KIND OF
6    SURVEY AND HAVE FOUND THAT CONSUMERS WERE MISTAKEN.
7    BY MS. KREVANS:
8    Q    AND YOU'RE TALKING ABOUT PX 59?
9    A    I AM.
10   Q    AND IF WE COULD GO TO PAGE 19, JUST BRIEFLY,
11   MR. BRESSLER, IS THIS THE PAGE THAT REFLECTS THE
12   RESULTS OF SAMSUNG'S INVESTIGATION INTO THAT ISSUE?
13             MR. VERHOEVEN:  OBJECTION.  LEADING,
14   LACKS FOUNDATION.
15             THE COURT:  LEADING IS SUSTAINED.
16   BY MS. KREVANS:
17   Q    WHAT'S SHOWN ON PAGE 59 -- PAGE 19 OF PX 59,
18   MR. BRESSLER?
19   A    THIS IS A PAGE, AMONG MANY IN THIS REPORT,
20   THAT DISCUSSES THE MARKETABILITY ISSUES THAT
21   SAMSUNG IS HAVING WITH THE 10.1 TAB, AND IN THE
22   NOTES PARAGRAPH, IT SAYS, NUMBER 1, THE "GREATEST
23   NUMBER OF CUSTOMER RETURN TYPES WERE THOSE WHO
24   PURCHASED THINKING IT WAS AN APPLE IPAD 2."
25             I BELIEVE THAT SUGGESTS THERE'S
```

1    CONFUSION.

2    Q    OKAY.  COULD YOU GO TO YOUR REPORT, YOUR

3    EXPERT REPORT IN THIS CASE, WHICH MR. VERHOEVEN

4    ASKED YOU SOME QUESTIONS ABOUT.  IT SHOULD BE ONE

5    OF THOSE BLACK BINDERS IN FRONT OF YOU LABELED

6    3-22-12, BRESSLER OPENING EXPERT REPORT.  AND LET

7    ME KNOW WHEN YOU'RE THERE, MR. BRESSLER.

8    A    YEAH, I'M -- MY EXPERT REPORT, 3-22-12, RIGHT?

9    Q    RIGHT.  3-22-12.

10   A    YES.

11   Q    COULD YOU GO TO SECTION 4 OF THAT REPORT,

12   WHICH STARTS ON PAGE 7.

13             MR. VERHOEVEN:  YOUR HONOR, I OBJECT TO

14   HAVING THE WITNESS JUST BE DIRECTED TO HIS EXPERT

15   REPORT AND READING HIS TESTIMONY.

16             THE EXPERT REPORT IS NOTICE FOR OPPOSING

17   COUNSEL.  IT'S HEARSAY.  TO THE EXTENT I USED IT, I

18   USED IT AS AN ADMISSION BY THE WITNESS, BUT IT'S

19   HEARSAY AND IT SHOULDN'T BE USED ON DIRECT EXAM.

20             MS. KREVANS:  YOUR HONOR, THIS IS ONE OF

21   MANY PLACES WHERE, IN ORDER TO CROSS-EXAMINE THE

22   WITNESS, MR. VERHOEVEN SHOWED HIM PART OF SOMETHING

23   HE STATED PREVIOUSLY, AND FOR COMPLETENESS -- AND

24   SUGGESTED TO THE JURY THAT WAS ALL THAT HE USED AS

25   HIS TEST.

7240

```
 1              I SIMPLY WANTED TO HAVE THE WITNESS
 2    EXPLAIN WHAT THE COMPLETE TEST WAS THAT HE SET OUT.
 3              THE COURT:  ALL RIGHT.  OVERRULED.
 4    BY MS. KREVANS:
 5    Q    DO YOU RECALL MR. VERHOEVEN ASKED YOU ABOUT
 6    PARAGRAPH 25 HERE?
 7    A    I DO.
 8    Q    WHAT'S THE ACTUAL FIRST PARAGRAPH IN WHICH YOU
 9    SET OUT THE TEST THAT YOU APPLIED FOR DETERMINING
10    INFRINGEMENT IN THIS CASE?
11    A    THE FIRST PARAGRAPH WOULD BE 22.
12    Q    OKAY.  CAN WE LOOK AT PARAGRAPH 22, PLEASE?
13              AND CAN YOU REMIND THE JURY WHAT THE TEST
14    WAS THAT YOU APPLIED IN DETERMINING YOUR
15    INFRINGEMENT OPINIONS IN THIS CASE?
16    A    YES.  "THE INFRINGEMENT OF THE DESIGN PATENT
17    TURNS ON WHETHER AN ORDINARY OBSERVER WHO IS
18    FAMILIAR WITH THE PRIOR ART WOULD FIND THE OVERALL
19    APPEARANCE OF THE PATENTED DESIGN TO BE
20    SUBSTANTIALLY THE SAME AS THE OVERALL APPEARANCE OF
21    THE CORRESPONDING PORTION OF THE ACCUSED PRODUCT,
22    OR WOULD FIND THAT PRODUCT EMBODIES THE CLAIMED
23    DESIGN OR ANY COLORABLE IMITATION THEREOF."
24    Q    OKAY.  COULD YOU PULL THE MIKE A LITTLE BIT
25    CLOSER TO YOU, MR. BRESSLER?
```

```
1     A     SORRY.

2     Q     I THINK IT GOT MOVED OUT OF THE WAY AND NOW

3     IT'S A LITTLE BIT HARD TO HEAR YOU.

4     A     SORRY.

5     Q     IS THAT THE TEST YOU APPLIED?

6     A     THAT'S PART OF THE TEST.

7     Q     DID YOU ALSO APPLY AN ADDITIONAL TEST WHERE

8     YOU ALSO LOOKED AT THE PRIOR ART?

9     A     I DID.

10    Q     AND IS THAT WHAT PARAGRAPH 25 IS ABOUT?

11    A     YES, THAT'S WHAT PARAGRAPH 25 IS ABOUT.

12          MS. KREVANS:  YOUR HONOR, IS THIS A GOOD

13    TIME TO STOP FOR THE DAY?

14          THE COURT:  THAT'S FINE.  IT'S 4:32.

15          ALL RIGHT.  SO THANK YOU FOR YOUR

16    PATIENCE AND JURY SERVICE.  PLEASE KEEP AN OPEN

17    MIND.  DON'T DO ANY RESEARCH AND PLEASE DON'T

18    DISCUSS THE CASE WITH ANYONE.  BUT YOU'RE EXCUSED

19    FOR THE DAY.  WE'LL SEE YOU BACK HERE AT 9:00

20    O'CLOCK TOMORROW.

21          AND IF YOU WOULD PLEASE LEAVE YOUR JURY

22    NOTEBOOKS IN THE JURY ROOM.

23          THANK YOU.

24          (WHEREUPON, THE FOLLOWING PROCEEDINGS

25    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
```

```
 1              THE COURT:  YOU MAY STEP DOWN.  YOU CAN
 2      STEP DOWN.
 3              ALL RIGHT.  THE RECORD SHOULD REFLECT THE
 4      JURORS HAVE LEFT THE COURTROOM.
 5              LET ME GET A SENSE OF HOW MANY WITNESSES
 6      WE MIGHT GET TO -- THANK YOU.  PLEASE TAKE A
 7      SEAT -- HOW MANY WITNESSES DO YOU THINK WE MIGHT
 8      GET TO TOMORROW?
 9              MS. KREVANS:  WE'RE GOING TO FINISH THIS
10      WITNESS VERY QUICKLY, YOUR HONOR, AND THE NEXT ONE
11      IS DR. KARE, WHO WE INTEND TO PUT ON DIRECT FOR
12      APPROXIMATELY AN HOUR, PERHAPS A LITTLE LESS.
13      ABOUT THAT.
14              I HAVE NO IDEA, AFTER TODAY, HOW LONG THE
15      CROSS WILL BE.
16              THE COURT:  OKAY.  ALL RIGHT.
17              WHAT ABOUT ON MR. BRESSLER?  WILL YOU
18      HAVE MORE, MR. VERHOEVEN?  AND OBVIOUSLY --
19              MR. VERHOEVEN:  WELL, OBVIOUSLY IT
20      DEPENDS ON REDIRECT.  AT THIS POINT I HAVE NOTHING.
21              THE COURT:  ALL RIGHT.
22              MR. VERHOEVEN:  BUT IT'LL DEPEND
23      COMPLETELY UPON WHAT'S BROUGHT OUT.
24              THE COURT:  OKAY.  UNDERSTOOD.
25              SO MS. KARE, YOU'RE THINKING ABOUT AN
```

1   HOWEVER.  WHAT ABOUT MR. WINER?  IS IT WINER OR

2   WINER?

3           MR. JACOBS:  WINER, YOUR HONOR.  PROBABLY

4   ABOUT 45 MINUTES, 50 MINUTES ON DIRECT.

5           THE COURT:  AND THEN YOU SAY PORET AND

6   VAN LIERE ARE POSSIBLE?

7           MR. JACOBS:  YES.  THAT DEPENDS ON HOW

8   MR. WINER'S TESTIMONY GOES.

9           THE COURT:  I SEE.  OKAY.

10          MR. PRICE:  YOUR HONOR, YOUR HONOR, IF I

11  COULD, JUST TO ALERT THE COURT TO AN ISSUE?

12          THE COURT:  WHAT'S THAT?

13          MR. PRICE:  MR. PORET AND MR. VAN LIERE

14  ARE SURVEY EXPERTS WHO DID SURVEYS, AND MY

15  UNDERSTANDING IS THE REASONS THEY MIGHT BE CALLED

16  OR MIGHT NOT IS APPLE IS HOPING THAT THEIR EXPERT,

17  MR. WINER, CAN SAY "I RELIED ON THOSE SURVEYS, AND

18  HERE'S WHAT THEY SAID."

19          AND AN EXPERT CAN'T DO THAT.  AN EXPERT

20  CAN RELY ON HEARSAY, BUT THEY CAN'T REVEAL THE

21  SUBSTANCE OF THAT HEARSAY TO THE JURY.  OTHERWISE

22  WE WOULDN'T BE ABLE TO CROSS-EXAMINE THE EXPERTS

23  HE'S RELYING ON.

24          SO I JUST WANTED TO ALERT YOU, THAT'S A

25  MAJOR ISSUE, THAT IF THEY'RE GOING TO TELL THE JURY

```
1    THAT THE SURVEY EXPERTS SAID SOMETHING, MADE A

2    CONCLUSION, THEY NEED TO HAVE THEM ON THE STAND.

3              THE COURT:  UM-HUM.

4              MR. JACOBS:  THAT'S JUST WRONG, YOUR

5    HONOR.  THERE IS NO SUCH RULE.

6              WE DID BRIEF THESE OBJECTIONS, BUT I'M --

7    THE BRIEFS MAY NOT COMPLETELY HAVE MET BECAUSE WE

8    DIDN'T QUITE KNOW WHAT THEY WERE GOING TO SAY.

9              BUT THAT'S JUST -- THAT'S JUST NOT TRUE.

10             MR. -- DR. WINER RELIED ON THE SURVEY,

11   ANALYZED THE SURVEY.  THERE'S AN INCORRECT CITATION

12   TO HIS DEPOSITION IN THEIR MOTION ON THIS, OR

13   MISLEADING CITATION.  THEY SAY THAT HE ASSUMED THE

14   VERACITY OF THE SURVEY WHEN, IN FACT, HE LOOKED

15   INTO THE SURVEY AND TESTIFIED AT LENGTH AT HIS

16   DEPOSITION ABOUT THE SURVEY AND HE RELIED ON IT FOR

17   HIS OPINIONS AND HE'LL EXPLAIN THAT.

18             THE COURT:  WHEN WERE THOSE OBJECTIONS

19   FILED?

20             MR. JACOBS:  THIS MORNING, YOUR HONOR.

21             THE COURT:  I SEE.  OKAY.  I DON'T

22   BELIEVE I LOOKED AT THOSE YET.

23             SO WHAT IS FULLY BRIEFED IN TERMS OF

24   OBJECTIONS?  ALL THE WAY THROUGH BALAKRISHNAN AND

25   SINGH?  OR ONLY THROUGH --
```

```
 1              MS. MAROULIS:  YOUR HONOR, FOR

 2   BALAKRISHNAN.

 3              WE HAVE NOT BRIEFED THE SINGH OBJECTIONS

 4   YET.

 5              THE COURT:  OKAY.  WELL, AND I WOULD

 6   HIGHLY DOUBT THAT WE WOULD GET TO THAT TOMORROW

 7   ANYWAY.

 8              OKAY.  SO IT'S FULLY BRIEFED, THEN,

 9   THROUGH BALAKRISHNAN.

10              MR. JACOBS:  I BELIEVE THAT'S CORRECT,

11   YOUR HONOR.

12              THE COURT:  OKAY.  ALL RIGHT.

13              MR. PRICE:  AND, YOUR HONOR, MY

14   UNDERSTANDING IS THAT THE SLIDES WE'VE BEEN GETTING

15   FOR MR. WINER, FOR EXAMPLE, SET FORTH THE ACTUAL

16   PERCENTAGE RESULTS OF THE OTHER EXPERTS, AND I

17   THINK -- YOU WERE ONCE A TRIAL LAWYER, AND I THINK

18   THEY ARE SERIOUSLY MISTAKEN.

19              WHILE AN EXPERT CAN SAY "I RELIED ON

20   SOMETHING THAT'S HEARSAY," THEY CANNOT TELL THE

21   SUBSTANCE OF THAT TO THE FINDER OF FACT BECAUSE IT

22   IS HEARSAY.

23              YOU NEED TO BRING IN, YOU KNOW, THE OTHER

24   EXPERT.  OTHERWISE HOW CAN WE ATTACK THESE STUDIES

25   UNLESS WE CALL THE EXPERTS THEMSELVES?
```

```
 1              SO WE'RE LOOKING FORWARD TO ARGUING THAT,

 2     BUT THAT'S WHY THEY'RE SAYING MAYBE.

 3              MR. JACOBS:  YOUR HONOR, THIS IS IN

 4     DR. WINER'S EXPERT REPORT.  THEY HAD OPPORTUNITIES

 5     TO FILE MOTIONS TO STRIKE PORTIONS OF EXPERT

 6     REPORTS.  THAT WAS FULLY DONE.  THERE WAS A LOT OF

 7     RULINGS.

 8              AND SO THAT OPPORTUNITY HAS PASSED.

 9              THE COURT:  ALL RIGHT.  WELL, LET -- LET

10     ME AT LEAST TELL YOU WITH KARE, IF IT'S HELPFUL,

11     SOME OF THE THINGS THAT HAVE ALREADY COME UP.

12              SO WITH KARE, I CAN'T SEE HOW APPLE

13     THINKS THAT SAMSUNG CAN'T IMPEACH HER WITH HER OWN

14     TESTIMONY.  I MEAN, IF YOU ALL KEEP MAKING THAT

15     KIND OF BOGUS OBJECTION, I'M GOING TO START

16     CHARGING YOU TRIAL TIME.  PLEASE DON'T DO THAT.

17              MR. MCELHINNY:  MAY I JUST BE HEARD ON

18     THAT BRIEFLY?

19              THE COURT:  YEAH.

20              MR. MCELHINNY:  I WANT TO MAKE SURE THE

21     COURT UNDERSTANDS WHAT WE'RE -- IT IS ABSOLUTELY

22     CLEAR THAT A TESTIFYING -- ANY WITNESS WHO

23     TESTIFIES CONTRARY TO THEIR SWORN TESTIMONY CAN BE

24     IMPEACHED BY THAT TESTIMONY.

25              BUT THE PROBLEM -- BUT THEY CANNOT BE
```

1    SHOWN TESTIMONY THAT IS NOT IMPEACHING, THAT IS

2    CONSISTENT WITH OR ANSWERS A DIFFERENT QUESTION AND

3    HAVE IT DONE IN FRONT OF THE JURY AS IF IT WERE

4    IMPEACHING.

5         AND THE PROCESS THAT I'M FAMILIAR WITH IS

6    THAT THE DEPOSITION, WHATEVER THE IMPEACHING

7    TESTIMONY, IS CITED SO THAT YOUR HONOR HAS A CHANCE

8    TO LOOK AT IT AND YOU MAKE A DETERMINATION -- IF

9    THERE'S AN OBJECTION -- AND YOU MAKE A

10   DETERMINATION ABOUT WHETHER OR NOT IT IS, IN FACT,

11   IMPEACHING.

12        BUT TO SIMPLY START READING TESTIMONY OUT

13   OF A DEPOSITION, THAT CAN'T BE DONE WITHOUT -- IF

14   THERE'S AN OBJECTION, THAT CAN'T BE DONE UNTIL YOUR

15   HONOR HAS LOOKED AND DETERMINED THAT THERE'S AN

16   INCONSISTENCY, BECAUSE OTHERWISE IT'S JUST

17   MISLEADING TO THE JURY TO SAY, "OH, WELL, LET'S SEE

18   WHAT YOU DID IN YOUR DEPOSITION" IF IT TURNS OUT TO

19   BE A DIFFERENT QUESTION, WHICH IS WHAT HAPPENED

20   FOUR TIMES TODAY.

21        MR. VERHOEVEN:  YOUR HONOR, THAT IS

22   COMPLETELY INCONSISTENT WITH THE PRACTICE THAT I'VE

23   ENGAGED IN IN THE LAST EIGHT TRIALS I'VE DONE IN

24   THE LAST YEAR AND A HALF.

25        THIS IS EXACTLY WHAT YOUR HONOR DOES, HAS

```
1    DONE, IS EXACTLY WHAT THE COURTS HAVE DONE.

2              AND ON REDIRECT, IF IT'S NOT IMPEACHING,

3    THEY CAN POINT THAT OUT.  IF THERE'S 106, THEY CAN

4    POINT THAT OUT.

5              IF THE ATTORNEY SHOWING THE IMPEACHMENT

6    IS, IS NOT IMPEACHING OR IS OUT OF CONTEXT, IN

7    REDIRECT THAT WILL REFLECT BADLY ON THE ATTORNEY.

8              THE COURT:  I UNDERSTAND.  THAT OBJECTION

9    IS, IS OVERRULED.

10             MR. MCELHINNY:  I UNDERSTAND.  THANK YOU,

11   YOUR HONOR.

12             THE COURT:  OKAY.  AND I REALLY DON'T

13   WANT TO WASTE ANY MORE TIME ON OBJECTIONS LIKE

14   THIS.

15             I GUESS THE SAME GOES FOR MR. ANZURES.

16   IF MS. KARE RELIED UPON HIS TESTIMONY OR SPEAKING

17   WITH HIM, THEN SHE CAN'T NOW PICK AND CHOOSE AND

18   ONLY SAY "I CAN ONLY BE ASKED ABOUT THINGS THAT ARE

19   CONSISTENT WITH WHATEVER HE TOLD ME AND WHATEVER

20   I'M RELYING ON."

21             SO SAMSUNG IS FREE TO IMPEACH MS. KARE

22   WITH MR. ANZURES.

23             NOW, I DON'T KNOW, MR. CHAUDHRI, IS HE IN

24   THE SAME POSITION, THAT MS. KARE RELIED ON

25   MR. CHAUDHRI, EITHER THROUGH CONVERSATION OR AS
```

```
 1    WELL?  IS THAT THE SAME SITUATION?

 2              MS. KREVANS:  SHE CONSIDERED THEIR

 3    TESTIMONY.  SHE DOESN'T RELY ON THEM FOR HER

 4    OPINION.  BUT SHE CERTAINLY CONSIDERED IT.

 5              THE COURT:  IF SHE CONSIDERED IT, IT'S

 6    FAIR GAME.  IT'S FAIR GAME.  I THINK IT'S NOT RIGHT

 7    FOR APPLE TO BE ABLE TO PICK AND CHOOSE ONLY WHAT

 8    PORTIONS OF THEIR TESTIMONY COMES IN.

 9              SO THAT OBJECTION IS, IS OVERRULED AS TO

10    BOTH MR. CHAUDHRI AND MR. ANZURES.

11              NOW, LET'S GO TO PX 38 AND PX 55.  THOSE

12    ARE EXCLUDED FOR WILLFULNESS.  I'M NOT PERSUADED BY

13    WHAT APPLE FILED.

14              NOW, I DON'T KNOW, IS THERE A PROBLEM

15    WITH PX 44 ANYMORE?  I ASSUME THAT'S KIND OF

16    RESOLVED.  THAT'S ALREADY IN.  I THINK THAT MAY BE

17    MOOTED.

18              PX 14.37, IF MS. KARE ONLY LOOKED AT THE

19    BLACK AND WHITE VERSION FOR HER EXPERT REPORT, THEN

20    IT'S NOT FAIR TO NOW SWAP IN AND SUBSTITUTE IN THE

21    COLOR VERSION.  SO I'M EXCLUDING THAT.

22              I MEAN, WHATEVER SHE RELIED ON, AND IF

23    THAT'S THE BLACK AND WHITE, THAT'S ALL YOU GET TO

24    USE.  YOU DON'T GET TO SWAP IN A COLOR VERSION.

25              MS. KREVANS:  SHE RELIED ON THE COLOR
```

1    VERSION, YOUR HONOR.

2              CAN WE GO BACK TO -- I'M NOT SURE WHAT

3    NUMBERS YOUR HONOR SAID, BUT 35 AND 55?

4              THE COURT:  NO, 38 AND 55.  AND I'M GOING

5    TO START -- I'VE RULED ON THESE, SO IF YOU WANT A

6    RECONSIDERATION, I'M STARTING TO TRACK IT AGAINST

7    YOUR TRIAL TIME.  SO THIS IS AN APPLE REQUEST FOR

8    RECONSIDERATION.

9              MS. KREVANS:  NO, IT'S --

10             THE COURT:  IT'S NOW 4:41.

11             YES, IT IS.

12             MS. KREVANS:  NO, YOUR HONOR.  YOU

13   ACTUALLY OVERRULED THEIR OBJECTIONS TO THESE

14   EXHIBITS, SO YOU RULED IN OUR FAVOR ON THESE

15   EXHIBITS.

16             THE COURT:  THIS IS APPLE'S MOTION FOR

17   RECONSIDERATION REGARDING RULINGS ON OBJECTIONS TO

18   KARE.  IT'S DOCUMENT NUMBER 1569.  IT'S PAGE 3,

19   LINES 14 THROUGH 26.

20             TAKE A LOOK.  IT SAYS REASON FOR

21   SUSTAINING THE OBJECTION, AND THEN APPLE GOES

22   THROUGH WHY THIS WAS NOT EXCLUDED, WHY IT SHOULD

23   NOT BE EXCLUDED ON WILLFULNESS.

24             SO GO AHEAD.  IT'S 4:41.  THIS IS

25   COUNTING TOWARDS YOUR TRIAL TIME.  GO FOR IT.

```
 1          MS. KREVANS:  SO, YOUR HONOR, WE'RE

 2   NOT -- WE HAVE OTHER PURPOSES BESIDES WILLFULNESS

 3   FOR WHICH WE'RE OFFERING THESE DOCUMENTS.

 4          SO TRADE DRESS DILUTION IS AN ISSUE IN

 5   WHICH COPYING AND CONFUSION ARE RELEVANT AND,

 6   THEREFORE, THESE DOCUMENTS ARE RELEVANT TO THAT.

 7          AND OUR ROG ON DILUTION IDENTIFIED

 8   INTENTIONAL COPYING AS ONE OF THE THINGS WE WERE

 9   RELYING ON TO PROVE DILUTION.

10          SO ALTHOUGH YOUR HONOR HAS SAID THIS

11   DOESN'T COME IN FOR WILLFULNESS -- AND WE DON'T

12   AGREE, BUT WE UNDERSTAND YOUR RULING -- WE THINK

13   THIS DOES COME IN FOR A COMPLETELY SEPARATE THEORY,

14   TRADE DRESS DILUTION.

15          THE COURT:  ALL RIGHT.  THIS IS COUNTING

16   TOWARDS YOUR TIME, BUT I'LL TAKE A LOOK AT IT.

17          MS. KREVANS:  AND I THINK YOUR HONOR'S

18   RULING WAS IT MAY NOT BE USED FOR WILLFULNESS, BUT

19   MAY BE USED FOR OTHER PURPOSES.  DILUTION IS

20   ANOTHER PURPOSE.

21          THE COURT:  ALL RIGHT.  WELL, I HAVE

22   APPLE SUSAN KARE EXHIBITS AND I DON'T EVEN SEE A PX

23   38 IN HERE.

24          MS. KREVANS:  IT'S 35, YOUR HONOR.  I

25   THINK THERE WAS A TYPO SOMEWHERE IN THE BRIEF.
```

```
 1                THE COURT:  AND WHAT WAS THE PURPOSE FOR
 2     WHICH YOU WERE GOING TO USE THIS?
 3                MS. KREVANS:  DILUTION, YOUR HONOR.
 4                THE COURT:  MAKE THE ARGUMENT, BECAUSE
 5     IT'S NOT COMING OUT TO ME WHEN I LOOK AT THIS.
 6     IT'S YOUR OWN EXHIBIT.  GIVE ME A PAGE AND A LINE
 7     NUMBER.
 8                MS. KREVANS:  IN THE EXHIBIT ITSELF, SO
 9     IN THE FRONT PAGE, IN THE FRONT PORTION OF PX 35,
10     THERE'S AN E-MAIL AND THE FRONT PORTION OF IT, THE
11     TOP PARAGRAPHS TALK ABOUT --
12                THE COURT:  OKAY.  THIS IS A LONG E-MAIL
13     CHAIN THAT'S ABOUT 35 OR 40 PAGES.
14                MS. KREVANS:  WE'RE JUST LOOKING AT THE
15     VERY FIRST PAGE, YOUR HONOR.
16                THE COURT:  OKAY.
17                MS. KREVANS:  THE TOP PORTION WHERE IT
18     TALKS ABOUT THE, "WANT TO SHARE FEEDBACK, COMPARING
19     ICONS, WE HAVE IMPLEMENTED PROPOSED, FOR ETERNITY G
20     VERSUS IPHONE, AT&T COMMENTS REGARDING OUR PROPOSED
21     ICON, THE FEATURES ARE CARTOONISH ANIMATED WHICH IS
22     OKAY FOR TARGETING," ET CETERA, AND THEN THEY TALK
23     ABOUT THE IPHONE ICONS.
24                THIS IS THE PORTION WE WANT TO POINT OUT
25     TO THE JURY.  IT IS A DOCUMENT THAT SHOWS THAT IN
```

1    DESIGNING THE ICONS OF THE SAMSUNG PHONES,

2    ETERNITY G ARE SAMSUNG PHONES, THEY ARE BEING TOLD

3    BY AT&T AND THEY DO, IN FACT, LOOK TO THE IPHONE

4    ICONS AS A GUIDE.

5            SAME TOPIC ACTUALLY AS EXHIBIT 44, WHICH

6    IS ALREADY IN EVIDENCE.

7            AND THIS KIND OF COPYING WAS IDENTIFIED

8    BY US IN OUR ROG RESPONSE ON DILUTION AND COPYING

9    IS A FACTOR THAT CAN BE CONSIDERED IN DILUTION AND

10   IT IS ADMISSIBLE FOR THAT PURPOSE, EVEN IF IT IS

11   NOT LET IN BY THIS COURT'S RULING.

12           IT ALSO, WE THINK, IS ADMISSIBLE FOR

13   SECONDARY CONSIDERATIONS.  THERE WAS NO ROG

14   RESPONSE -- ROG PROPOUNDED ON SECONDARY

15   CONSIDERATIONS, SO I CAN'T POINT YOU TO A RESPONSE

16   IN WHICH WE DISCLOSED COPYING, BUT THAT'S BECAUSE

17   THEY DIDN'T ASK AN INTERROGATORY ABOUT IT.

18           IT'S CERTAINLY IN OUR DILUTION RESPONSE

19   THAT WE ARE GOING TO RELY ON COPYING.  THESE ARE

20   DOCUMENTS THAT SHOW COPYING.

21           THE COURT:  OKAY.  BUT INTERROGATORY 7,

22   "STATE ALL FACTS SUPPORTING ANY CONTENTION BY APPLE

23   THAT SAMSUNG DILUTED."  DILUTED.  "THE ORIGIN OF

24   PRODUCTS, EACH PATENT, TRADE DRESS AND TRADEMARK."

25           MS. KREVANS:  RIGHT.

```
 1              THE COURT:  SO IF YOU DIDN'T IDENTIFY

 2    THIS FOR ROG 7, THEN YOU WAIVED.  I MEAN, "DILUTED"

 3    IS RIGHT THERE IN YOUR PARAGRAPH, PAGE 3, LINE 15

 4    OF DOCUMENT 1569 YOU FILED ON AUGUST 3RD.

 5              SO DID YOU DISCLOSE IT FOR INTERROGATORY

 6    7 OR NOT?  I DON'T BELIEVE YOU DID.

 7              MS. KREVANS:  SO WE DISCLOSED THAT --

 8              THE COURT:  LET SEE YOUR RESPONSE.  LET

 9    ME SEE YOUR RESPONSE TO ROG 7, AND I WANT YOU TO

10    SHOW ME WHERE YOU IDENTIFIED THIS DOCUMENT FOR

11    DILUTION, BECAUSE THAT'S WHY YOU'RE ASKING THAT IT

12    COME IN RIGHT NOW.

13              MS. KREVANS:  YOUR HONOR, WE DIDN'T

14    IDENTIFY THIS DOCUMENT SPECIFICALLY.

15              WE IDENTIFIED COPYING AS A THEORY.

16              AND I HAVE TO SAY, THIS WAS A PERIOD IN

17    THE CASE IN WHICH AN ENORMOUS NUMBER OF DOCUMENTS

18    WERE GIVEN TO US JUST BEFORE THE CLOSE OF

19    DISCOVERY.

20              THE COURT:  OKAY.  SAME STANDARD.  IF YOU

21    CAN'T SHOW ME THAT YOU DISCLOSED IT, IT'S NOT

22    COMING IN FOR THAT PURPOSE.

23              SO LET ME SEE IT AND TELL ME WHICH PAGE

24    AND LINE NUMBER I SHOULD LOOK AT TO SEE WHERE YOU

25    DISCLOSED IT FOR DILUTION, WHICH IS THE REASON THAT
```

1    YOU'RE ASKING ME TO GET IT IN RIGHT NOW.

2              MS. KREVANS:  THIS IS THE DILUTION

3    INTERROGATORY, YOUR HONOR.  I'M NOT TELLING YOU WE

4    MENTIONED THIS DOCUMENT SPECIFICALLY.  WE SAID

5    COPYING.

6              THE DOCUMENT DID NOT ASK US TO IDENTIFY,

7    THE ROG DID NOT ASK US TO IDENTIFY ALL DOCUMENTS,

8    AND WE CERTAINLY DISCLOSED THE THEORY (HANDING).

9              THE COURT:  GIVE ME A -- GIVE ME -- IS

10   THAT LINE 12?

11             MS. KREVANS:  IT'S WHERE I PUT THE TAPE

12   FLAG IN THE MIDDLE OF THE PAGE, YOUR HONOR.  I HOPE

13   I PUT THE TAPE FLAG THERE, OR RATHER MR. ZHANG PUT

14   THE TAPE FLAG THERE.

15             THE COURT:  OKAY.  THIS IS WHAT IT SAYS.

16   "MOREOVER, THERE IS SUBSTANTIAL EVIDENCE OF

17   SAMSUNG'S COPYING OF APPLE'S IPHONE AND IPAD

18   PRODUCTS AS SHOWN BY THE NUMEROUS DESIGN

19   SIMILARITIES BETWEEN APPLE'S AND SAMSUNG'S PHONE

20   AND TABLET PRODUCTS."  THAT'S WHAT YOU HAVE TABBED

21   WITH A RED SIGN.  IT'S PAGE 8, LINES 12 THROUGH 14.

22             MS. KREVANS:  THAT'S CORRECT, YOUR HONOR.

23             THE COURT:  ALL RIGHT.  NOT COMING IN.

24   OKAY?

25             NOW, STILL EXCLUDED.  I DON'T BELIEVE YOU

```
 1    HAVE PROPERLY AND TIMELY DISCLOSED IT FOR DILUTION.

 2    OKAY?  SO IT'S EXCLUDED FOR WILLFULNESS AND

 3    DILUTION.

 4             ALL RIGHT.  I DON'T BELIEVE THERE'S AN

 5    ISSUE WITH PX 14.34, 14.36.

 6             NOW, WITH REGARD TO PX 14.37, SHOW ME

 7    WHERE THE COLOR VERSION WAS RELIED UPON IN

 8    MS. KARE'S REPORT.

 9             MS. KREVANS:  YOU'RE LOOKING FOR THE

10    COLOR VERSION OF THE PATENT, CORRECT, YOUR HONOR?

11    IF YOU LOOK AT THE REPORT, PAGE 10, PARAGRAPH 35.

12             THE COURT:  OKAY.

13             MS. KREVANS:  I HOPE WE MADE YOU A COLOR

14    COPY, BUT IF NOT, I HAVE A COLOR COPY OF THE REPORT

15    HERE.

16             THE COURT:  OKAY.  I HAVE PAGE 10.  IT IS

17    BLACK AND WHITE.

18             MS. KREVANS:  OKAY.  CAN I SHOW YOU THE

19    ACTUAL REPORT?  I THINK THAT WAS A QUICK COPY WE

20    RAN FOR YOU THIS MORNING.

21             THE COURT:  OKAY.  THAT'S FINE.  LET ME

22    SEE IT.

23             MS. KREVANS:  IT'S HEAVY (HANDING).

24             THE COURT:  OKAY.  NOW, YOUR

25    RECONSIDERATION TALKS ABOUT THAT IT'S IN PARAGRAPH
```

1    85 OF KARE'S REPORT.

2            MR. VERHOEVEN:  YOUR HONOR, FOR POINT OF

3    CLARIFICATION, WE'RE TRYING TO FIGURE OUT WHICH

4    EXHIBIT WE'RE ON.

5            THE COURT:  THIS LOOKS LIKE IT IS THE

6    MARCH 22ND, 2012 EXPERT REPORT OF SUSAN KARE.

7            MR. VERHOEVEN:  I'M SORRY.  THE EXHIBIT

8    THAT THEY'RE ARGUING FOR ADMISSION.  OR IS IT --

9            THE COURT:  IT'S PDX 14.37.  IT'S A

10   DEMONSTRATIVE.  AND I HAD -- I HAD EXCLUDED IT AND

11   THEY'VE ASKED FOR A RECONSIDERATION.

12           MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

13           THE COURT:  SO WHAT'S YOUR -- LET ME HEAR

14   YOUR RESPONSE, BECAUSE -- PARDON ME -- APPLE'S

15   RECONSIDERATION SAYS "THIS SPECIFIC PAGE OF PX 55

16   IS EXPRESSLY IDENTIFIED AND DISCUSSED AT KARE

17   REPORT PARAGRAPH 85," AND YET WHAT MS. KREVANS HAS

18   GIVEN ME IS PAGE 10 OF THE REPORT, PARAGRAPH 35.

19           SO WHY ARE YOU REFERRING ME TO A

20   DIFFERENT PARAGRAPH THAN WHAT'S IN YOUR

21   RECONSIDERATION MOTION?

22           MS. KREVANS:  I'M SORRY, YOUR HONOR.  I

23   THOUGHT YOU -- NOW YOU'RE TALKING ABOUT WHAT WE

24   SAID ABOUT PX 55, BUT I THOUGHT YOUR HONOR HAD

25   ASKED A QUESTION ABOUT A DEMONSTRATIVE AND WHETHER

```
1    WE -- WHETHER DR. KARE HAD RELIED ON THE COLOR

2    IMAGES IN THE PATENT.

3              THE COURT:  OKAY.  I'M LOOKING AT YOUR

4    RECONSIDERATION MOTION, DOCUMENT NUMBER 1569, FILED

5    AUGUST 3RD, 2012 ASKING FOR RECONSIDERATION OF PDX

6    14.37.

7              MS. KREVANS:  OKAY.

8              THE COURT:  AND YOUR ACTUAL FACTS

9    SECTION, PAGE 4, LINES 4 THROUGH 9, SAYS "PDX 14.37

10   DEPICTS A PAGE FROM PX 55.  THIS SPECIFIC PAGE OF

11   PX 55 IS EXPRESSLY IDENTIFIED AND DISCUSSED AT KARE

12   REPORT PARAGRAPH 85."

13             MS. KREVANS:  YES, YOUR HONOR, THAT IS IN

14   PARAGRAPH 85.

15             I'M SORRY.  I THOUGHT YOU WERE ASKING

16   ABOUT WHETHER SHE RELIED ON THE COLOR COPY OF

17   FIGURE 1 IN THE PATENT.

18             THE COURT:  I DON'T SEE WHAT'S ATTACHED

19   AS PX 55.

20             IS THAT DOOR OPEN?

21             MS. KREVANS:  SO, YOUR HONOR, THIS

22   DOCUMENT WAS PRODUCED TWICE BY SAMSUNG, FIRST IN

23   BLACK AND WHITE WITH ONE SET OF BATES NUMBERS, AND

24   AGAIN IN COLOR WITH A SEPARATE SET OF BATES

25   NUMBERS, AND SO WHEN WE GOT THE BETTER COPY FROM
```

1    SAMSUNG THAT WAS COLOR, WE SUBSTITUTED IT IN.

2              THE COURT:  ALL RIGHT.  DO YOU HAVE ANY

3    OBJECTION --

4              MR. VERHOEVEN:  WELL, YOUR HONOR, THE --

5    PARAGRAPH 85, THE DOCUMENT THAT'S BEING REFERENCED

6    IS A BLACK AND WHITE DOCUMENT.  THAT'S WHAT THE --

7    AND SO THIS IS A DIFFERENT -- THERE'S DIFFERENT

8    CONTROL NUMBERS ON THIS SLIDE, I THINK.

9              THE COURT:  WELL, THEY'RE SAYING LOOK AT

10   PAGE 10, PARAGRAPH 35, WHICH IS IN COLOR.

11             MS. KREVANS:  NO, I'M SORRY.  THAT'S

12   BECAUSE I MISUNDERSTOOD YOUR QUESTION, YOUR HONOR.

13             MR. VERHOEVEN:  YEAH.  THAT'S JUST A

14   PICTURE OF THE DESIGN PATENT, YOUR HONOR, NOT THE

15   DOCUMENT.

16             MS. KREVANS:  WHAT HAPPENED, YOUR HONOR,

17   IS THAT AT FIRST THE DOCUMENT -- THEY PRODUCED A

18   SMALL NOT VERY GOOD BLACK AND WHITE COPY OF THIS

19   DOCUMENT, THE ONE THAT'S NOW BEEN MARKED AS EXHIBIT

20   55.  AND SO THAT'S WHAT WE HAD.  IT'S IN THE

21   REPORT.

22             THEY DID PRODUCE A BETTER COPY, WHICH IS

23   NOT ONLY IN COLOR, BUT BIGGER AND EASIER TO READ,

24   SO WE HAVE SUBSTITUTED THAT IN.

25             THE COURT:  ALL RIGHT.  BUT WHAT MS. KARE

```
 1    RELIED UPON IN HER EXPERT REPORT WAS THE BLACK AND
 2    WHITE VERSION?
 3              MS. KREVANS:  THAT'S RIGHT.
 4              THE COURT:  WELL, I JUST DON'T THINK YOU
 5    CAN NOW SWAP IN THE COLOR VERSION IF WHAT SHE
 6    RELIED UPON WAS A BLACK AND WHITE VERSION.
 7              MS. KREVANS:  YOUR HONOR, IT'S NOT JUST
 8    THAT IT'S COLOR VERSUS BLACK AND WHITE.  IT'S ALSO
 9    JUST A MUCH MORE LEGIBLE COPY.  THERE'S NO DISPUTE
10    THAT IT'S EXACTLY THE SAME DOCUMENT.
11              MR. VERHOEVEN:  WELL, IT'S COLOR VERSUS
12    BLACK AND WHITE.  THAT'S NOT EXACTLY THE SAME
13    DOCUMENT, YOUR HONOR.
14              SHE ALSO SAYS IN HER REPORT, "THE IMAGE
15    QUALITY IS POOR" --
16              THE COURT:  YEAH.
17              MR. VERHOEVEN:  -- IN PARAGRAPH 85.
18              THE COURT:  I'M STILL EXCLUDING PDX
19    14.37.  OKAY?
20              ALL RIGHT.  IS THERE -- I'VE ALREADY SAID
21    I'M GOING TO ADMIT PDX 14.34 AND 14.36.  THOSE COME
22    FROM PX 44, WHICH HAS ALREADY BEEN ADMITTED.
23              ALL RIGHT.  NOW, IT'S 4:54, SO THAT WAS
24    ABOUT 14 MINUTES THAT'LL BE COUNTED AGAINST APPLE'S
25    TIME.
```

1           LET ME GO ON TO -- THESE ARE APPLE'S

2     OBJECTIONS TO PROPOSED CROSS-EXAMINATION.

3           NOW, THIS IS WITH REGARD TO THE ISSUE OF

4     THE MISSING ROW THAT'S IN BETWEEN THE BOTTOM ROW OF

5     ICONS AND THEN THE LARGER SUBSET OF ICONS.  I'M

6     SUSTAINING THESE OBJECTIONS TO SDX 3705, 3706,

7     3707, 3708, 3709, 3710, 3711, 3712, AND 3713.

8           SO IT'S BASICALLY 5 THROUGH 13.

9           MS. KREVANS:  THANK YOU, YOUR HONOR.

10          MR. VERHOEVEN:  YOUR HONOR, POINT OF

11    CLARI -- QUESTION ON THAT.

12          THE COURT:  YES.

13          MR. VERHOEVEN:  THESE SLIDES, THERE IS

14    3706, WHICH EXPRESSLY ADDRESSES THE DESIGN REASONS

15    FOR HAVING THE EMPTY SPACE.

16          THESE OTHER SLIDES SIMPLY DEPICT THE '305

17    AND THE ACCUSED PRODUCTS.

18          SO THOSE DON'T GO TO THAT ISSUE, YOUR

19    HONOR.

20          THE COURT:  WELL, THE '305 DOESN'T GO TO

21    THE BODY STYLE, AND SO ALL OF THOSE DEMONSTRATIVES

22    HAVE THE BODY STYLE IN THEM.

23          MR. VERHOEVEN:  OH, OKAY.  YOUR HONOR --

24          THE COURT:  THAT'S CONFUSING.

25          MR. VERHOEVEN:  WOULD IT BE PERMISSIBLE

1    FOR US TO TAKE OUT THE BODY AND THEN JUST HAVE THE

2    IMAGE TO ADDRESS THAT QUESTION?

3              THE COURT:  NOW, THERE WAS AN OBJECTION

4    TO THE HOME SCREENS, AND I WASN'T CLEAR ON WHAT IS

5    THAT?  IS THAT THE WALLPAPER?  OR WHAT ARE YOU

6    OBJECTING AS TO THE SCREENS?

7              I UNDERSTAND BODY STYLE AND I'M GOING TO

8    GRANT AN OBJECTION AS TO BODY STYLE.

9              BUT I DIDN'T UNDERSTAND WHAT YOUR

10   OBJECTION IS AS TO HOME SCREEN.

11             MS. KREVANS:  THE -- DR. KARE'S OPINION

12   IS THAT THE D'305 USER INTERFACE DESIGN, WHICH

13   DOESN'T SPECIFY WHETHER IT'S A HOME SCREEN OR

14   ANYTHING, IT JUST SAYS IT'S A USER INTERFACE DESIGN

15   FOR DISPLAY OR PORTION OF A DISPLAY, HER OPINION IS

16   THAT THAT DESIGN IS PRESENT IN THE APPLICATION

17   SCREENS OF A NUMBER OF SAMSUNG PHONES.

18             THAT'S THE OPINION SHE'S GIVEN.  SHE

19   HADN'T EXPRESSED ANY OPINION THAT THAT DESIGN IS

20   PRESENT IN THE HOME SCREENS.

21             AND THE ONLY PURPOSE WE CAN IMAGINE FOR

22   THESE HOME SCREEN PICTURES TO BE SHOWN TO THE JURY

23   IS TO ATTEMPT TO CONFUSE THE JURY INTO THINKING

24   THAT DR. KARE HAS ACCUSED THESE HOME SCREENS WHICH

25   DON'T LOOK LIKE THE D'305 AND CONFUSE THEM INTO

```
1      THINKING HER OPINION IS WRONG.
2              MR. VERHOEVEN:  THAT'S ABSOLUTELY
3      INCORRECT, YOUR HONOR.
4              THE '305 ITSELF IS THE APPLE INITIAL
5      IPHONE HOME SCREEN, AND WHAT THEY'RE ACCUSING IS
6      NOT -- WE'LL POINT OUT IS NOT THE HOME SCREENS OF
7      THESE PHONES, BUT RATHER, AN APPLICATION GRID THAT
8      YOU HAVE TO HIT A BUTTON TO GET TO.
9              AND THIS IS TRADE DRESS, YOUR HONOR.  WE
10     SIMPLY WANT TO POINT OUT THAT FOR PURPOSES OF
11     DILUTION, THE USER WILL HAVE TO TURN ON THE PHONE,
12     THEY'LL SEE THE HOME SCREEN, WHICH IS NOT ACCUSED,
13     AND THEY'LL HAVE TO NAVIGATE THROUGH THAT TO THE
14     APPLICATION MENU BEFORE THEY EVEN GET TO THE
15     ACCUSED SCREEN.
16             IT'S HIGHLY RELEVANT TO THE ISSUE OF
17     DILUTION.  THEY'RE ACCUSING A SCREEN THAT'S NOT
18     EVEN ON THE PRODUCT UNTIL YOU HAVE TO NAVIGATE
19     SOMEWHERE, AND WE SHOULD BE ABLE TO LET THE JURORS
20     KNOW THAT FACT, BECAUSE THEY'RE TRYING TO ASSESS,
21     YOUR HONOR, WHAT'S GOING TO HAPPEN?  IS THERE
22     DILUTION IN THE MARKETPLACE?
23             AND THE FACT THAT THE ACCUSED SCREEN IS
24     SOMETHING THAT USERS CAN'T EVEN GET TO UNTIL AFTER
25     THEY'VE MANIPULATED THE PHONE, TURNED IT ON AND HIT
```

7264

```
 1    AN APPLICATION BUTTON IS RELEVANT TO WHETHER
 2    THERE'S GOING TO BE DILUTION, TO ALL THESE
 3    DIFFERENT TRADE DRESS FACTORS, YOUR HONOR.
 4              SO THE FACT, THE SIMPLE FACT THAT SHE
 5    HASN'T ACCUSED THE HOME SCREEN IS NOT A BASIS TO
 6    PREVENT US FROM SHOWING THE JURORS HOW THESE PHONES
 7    ACTUALLY WORK AND WHAT A USER, OR A CONSUMER, WOULD
 8    HAVE TO DO TO EVEN GET EXPOSURE TO WHAT THEY'RE
 9    SAYING IS CAUSING DILUTION IN THE MARKETPLACE
10    BECAUSE OF THESE SCREENS.
11              MS. KREVANS:  YOUR HONOR, I'M AFRAID I
12    HAVE TO POINT OUT TO YOU, THIS IS YET ANOTHER
13    OCCASION TODAY WHEN WHAT SAMSUNG LAWYERS ARE
14    TELLING YOU ABOUT A DOCUMENT IS FLATLY WRONG.
15              MR. VERHOEVEN:  I WASN'T QUITE FINISHED,
16    BUT --
17              MS. KREVANS:  WE'RE TALKING ABOUT 3705.
18    THIS IS NOT A TRADE DRESS DEMONSTRATIVE.  IT'S GOT
19    THE '305 PATENT FIGURE ON IT.
20              AND AS SOON AS MR. VERHOEVEN DEPARTED
21    FROM THE FACTS ABOUT THIS PAGE, EVERYTHING ELSE
22    THAT HE SAID WAS COMPLETELY FALSE.
23              THE COURT:  OKAY.  LET ME -- ONE SECOND,
24    PLEASE.  3705.
25              MR. VERHOEVEN:  IF I COULD FINISH WHAT I
```

1    WAS GOING TO SAY, YOUR HONOR?

2           ON THE DESIGN PATENT FRONT, THE TEST IS

3    WHETHER AN ORDINARY OBSERVER, USING SUCH CARE AS

4    THEY NORMALLY WOULD USE, WOULD FIND SUBSTANTIAL

5    SIMILARITY SUCH THAT, AND IT GOES ON AND ON.

6           SO THE TEST ASKS THE QUESTION, FOR THE

7    DESIGN SIDE, WHAT AN ORDINARY OBSERVER WOULD

8    CONCLUDE USING THE AMOUNT OF CARE THEY WOULD

9    USUALLY USE.

10           WELL, IN ORDER TO EVALUATE THAT, THE

11    JURORS SHOULD BE ABLE TO UNDERSTAND THAT AN

12    ORDINARY OBSERVER WOULD NOT EVEN BE EXPOSED TO THE

13    ACCUSED APPLICATION SCREENS THAT THE D'305 IS

14    ASSERTED AGAINST UNTIL AFTER THEY TURN ON THE

15    PHONE, SEE THE HOME SCREEN, FIGURE OUT WHERE THE

16    APPLICATION MENU IS, AND THEN NAVIGATE TO THE

17    APPLICATION MENU.

18           SO THAT'S HIGHLY RELEVANT TO THE QUESTION

19    THAT THE JURORS ARE GOING TO BE ASKED, WHICH IS,

20    WOULD AN ORDINARY OBSERVER, USING THE CARE THAT ONE

21    ORDINARILY USES FOR THE PRODUCT AT ISSUE, FIND

22    THESE THINGS SUBSTANTIALLY SIMILAR SUCH THAT -- YOU

23    KNOW, THE GORHAM STANDARD, YOUR HONOR.

24           AND WE SHOULD BE ENTITLED TO SHOW THAT AN

25    ORDINARY OBSERVER, IN ORDER TO EVEN GET TO THESE

```
 1    APPLICATION SCREENS, WOULD HAVE TO DO THESE THINGS.

 2            THAT GOES TO THE CARE THAT THEY WOULD

 3    USE.  THAT GOES TO THE REAL WORLD ENVIRONMENT IN

 4    WHICH THEY WOULD ENCOUNTER THESE THINGS.

 5            MS. KREVANS:  YOUR HONOR --

 6            MR. VERHOEVEN:  IT'S HIGHLY RELEVANT,

 7    YOUR HONOR, TO THE -- TO THE FACTUAL -- THOSE FACTS

 8    ARE HIGHLY RELEVANT TO THE ORDINARY OBSERVER TEST

 9    UNDER GORHAM.

10            MS. KREVANS:  YOUR HONOR, THE CLAIM OF

11    THE D'305 PATENT, MUCH AS MR. VERHOEVEN WISHES

12    OTHERWISE, DOESN'T SAY ANYTHING ABOUT THE HOME

13    SCREEN.

14            IT SAYS "THE ORNAMENTAL DESIGN FOR A

15    GRAPHICAL USER INTERFACE FOR A DISPLAY SCREEN OR A

16    PORTION THEREOF."

17            WE HAVE ACCUSED THE APPLICATION SCREENS.

18            THE HOME SCREENS HAVE NOTHING TO DO WITH

19    IT, NOT FOR THE D'305 PATENT.  THERE'S NO

20    LEGITIMATE PURPOSE FOR THIS GRAPHIC, OTHER THAN TO

21    TRY TO CONFUSE THE JURY.

22            THE COURT:  WHICH ONES ARE -- I'M LOOKING

23    AT 3705.  WHICH ONES ARE APPLICATION SCREENS AND

24    WHICH ONES ARE HOME SCREENS?

25            MS. KREVANS:  THEY ARE ALL HOME SCREENS,
```

```
1     YOUR HONOR, AND THE REASON YOU CAN TELL THAT -- I

2     KNOW THESE PHONES SO I CAN TELL YOU THAT.

3              BUT THE REASON YOU CAN TELL THAT IS IN

4     THE LOWER RIGHT-HAND CORNER IN THAT BOTTOM SORT OF

5     FIXED ROW OF ICONS, YOU SEE THE ICON THAT'S BLUE

6     WITH FOUR SORT OF LITTLE ROUNDED SQUARES ON IT?

7              THE COURT:  YES.

8              MS. KREVANS:  THAT'S THE SYMBOL THAT

9     MEANS APPLICATION SCREEN.  TOUCH ME AND I'LL TAKE

10    YOU TO THE APPLICATION SCREEN.  WHEN YOU SEE THAT

11    SYMBOL, YOU KNOW THAT'S NOT THE APPLICATION SCREEN,

12    BECAUSE IF YOU TOUCH THAT, YOU GO THERE.

13             MR. VERHOEVEN:  THAT'S PRECISELY THE

14    POINT, YOUR HONOR.  THE ORDINARY OBSERVER, IF WE'RE

15    LOOKING AT SLIDE SDX 3705 -- IS THAT WHAT YOU'RE

16    LOOKING AT, YOUR HONOR?

17             THE COURT:  I'M LOOKING AT 3705, YES.

18             MR. VERHOEVEN:  THE ORDINARY OBSERVER --

19    THESE ARE NOT ACCUSED SCREENS.  THE ORDINARY

20    OBSERVER, WHEN THEY TURN ON THE PHONES, WILL SEE

21    THIS FIRST.

22             THEN WE HAVE OTHER -- YOUR HONOR, IF YOU

23    GO, FOR EXAMPLE, TO SDX 37 --

24             THE COURT:  BUT IF WHAT IS CHARGED, OR

25    WHAT IS ACCUSED IS THE APPLICATION SCREEN --
```

```
1               MR. VERHOEVEN:  WHICH WE HAVE THOSE TOO,
2     YOUR HONOR.
3               THE COURT:  ALL RIGHT.  WHERE IS THAT?
4               MR. VERHOEVEN:  SO, FOR EXAMPLE, IF YOU
5     GO TO SDX 3707, WE GO ONE BY ONE, SO WE LOOK AT THE
6     CHARGE -- AND I UNDERSTAND YOUR HONOR DOESN'T LIKE
7     US TO HAVE THE ACTUAL PHONES, SO WE'LL -- BUT WE
8     CAN TAKE IT OUT AND JUST SHOW THE SCREEN -- BUT
9     THIS IS THE FIRST SCREEN THAT THE USER SEES.
10              AND THEN YOU GO TO THE NEXT PAGE AND THIS
11    IS THE APPLICATION SCREEN, RIGHT HERE.
12              AND WE'RE SIMPLY MAKING THE POINT THAT
13    THE INITIAL SCREEN IS NOT ACCUSED AND THE USER
14    WOULD HAVE TO, USING THE CARE THAT A USER WOULD
15    NORMALLY USE FOR THIS PRODUCT, WOULD HAVE TO FIGURE
16    OUT WHERE THE APPLICATION BUTTON IS, HIT THE
17    APPLICATION BUTTON, AND GET THIS ROW OF APPLICATION
18    GRID.
19              MS. KREVANS:  AND YOUR HONOR, THAT HAS
20    NOTHING TO DO WITH --
21              MR. VERHOEVEN:  I'M SORRY, COUNSEL, IF I
22    CAN FINISH?
23              THERE'S ABSOLUTELY NOTHING IN THE LAW
24    THAT SAYS THAT WE'RE -- THAT WE CAN'T EXPLAIN TO
25    THE JURORS WHAT AN ACTUAL PERSON USING THESE PHONES
```

 1    WOULD HAVE TO DO IN ORDER TO GET FROM THE POINT OF

 2    THE PHONE BEING TURNED OFF TO TURNING IT ON, SEEING

 3    WHAT IT SHOWS, AND THEN GETTING TO THE PLACE THAT

 4    HAS THE SCREEN THAT THEY'RE ACCUSING.

 5            THAT GOES DIRECTLY TO THE LEVEL TO WHICH

 6    THERE'S GOING TO BE DILUTION HERE ON THESE PHONES.

 7            MS. KREVANS:  YOUR HONOR, IF I MAY?

 8            NOTHING ABOUT WHAT MR. VERHOEVEN JUST

 9    SAID AND NO NUMBER OF STEPS THAT THE USER MIGHT

10    HAVE TO TAKE TO GET TO THE APPLICATION SCREEN HAS

11    ANY RELEVANCE TO WHETHER, ONCE THEY ARE THERE, THAT

12    SCREEN AND THE DESIGN OF THAT SCREEN ARE USING THE

13    DESIGN OF THE D'305 PATENT.

14            THE ONLY REASON THEY WANT TO SHOW THIS TO

15    THE JURY IS TO SUGGEST TO THE JURY THAT THE FACT

16    THAT THE APPLICATION SCREEN ISN'T THE FIRST ONE YOU

17    SEE SOMEHOW IS A REASON FOR IT NOT TO BE HELD

18    INFRINGING, EVEN IF IT'S SUBSTANTIALLY THE SAME

19    DESIGN.

20            THAT WOULD CLEARLY BE LEGALLY INCORRECT,

21    SO THE ONLY PURPOSE HERE IS TO CONFUSE THE JURY

22    WITH RESPECT TO THE PATENT ARGUMENTS.

23            AND NOT ONLY THAT, BUT THAT THEORY AS A

24    THEORY OF, I GUESS, SUPPOSED NON-INFRINGEMENT HAS

25    NEVER BEEN DISCLOSED.

```
1              MR. VERHOEVEN:  YOUR HONOR, CONTESSA FOOD
2    PRODUCTS VERSUS CONAGRA, 282 F.3D 1370, PAGE 1380,
3    PIN SITE 1380, FED CIRCUIT, 2002, QUOTE, "FOR
4    PURPOSES OF DESIGN PATENT INFRINGEMENT, THE
5    ORDINARY OBSERVER ANALYSIS IS NOT LIMITED TO THOSE
6    FEATURES VISIBLE ONLY DURING ONE PHASE OR PORTION
7    OF THE NORMAL USE LIFETIME OF AN ACCUSED PRODUCT."
8              MS. KREVANS:  THE ONLY THING THAT WE'RE
9    ACCUSING, YOUR HONOR, IS THE APPLICATION SCREEN.
10             THE ONLY REASON THEY WANT TO DO THIS --
11   IT'S VERY PLAIN FROM WHAT MR. VERHOEVEN SAYS -- IS
12   TO TRY TO SUGGEST TO THE JURY THAT BECAUSE IT'S NOT
13   THE FIRST SCREEN, IT DOESN'T INFRINGE.
14             THERE IS NO SUCH ARGUMENT.  THIS IS JUST
15   TO CONFUSE THE JURY.  AND --
16             THE COURT:  ALL RIGHT.  WELL, 3705 IS
17   EXCLUDED BOTH BECAUSE OF THE BODY STYLE, AS WELL AS
18   THE HOME SCREEN.
19             3706 IS EXCLUDED BECAUSE JUDGE GREWAL
20   ALREADY STRUCK THE SORT OF MISSING ROW ARGUMENT,
21   WHICH IS THE FOCUS OF THIS SLIDE.
22             NOW, 3707 AND 3708, ARE YOU GOING TO USE
23   THOSE AS A PAIR?  OR YOU'RE ONLY GOING TO USE 3707?
24             MR. VERHOEVEN:  YOUR HONOR, I INTEND TO
25   TAKE ONE OF THESE PHONES AND SHOW THE JURORS, WHEN
```

```
1    YOU TURN IT ON, HERE'S WHAT HAPPENS AND HOW YOU GET

2    FROM TURNING IT ON TO THE APPLICATION MENU.

3              THAT'S RELEVANT TO BOTH THEIR TRADE DRESS

4    DILUTION CLAIMS AND THIS DESIGN PATENT.

5              I -- IT'S INCONCEIVABLE TO ME THAT I

6    WOULD BE BARRED FROM SHOWING THEM WHAT AN ORDINARY

7    OBSERVER WOULD ACTUALLY SEE WHEN THEY ACTUALLY USE

8    THE PHONE.

9              THE COURT:  ALL RIGHT.

10             MR. VERHOEVEN:  THAT'S ALL THESE SLIDES

11   DO.

12             THE COURT:  3707 AND 3708, AS LONG AS YOU

13   TAKE THE BODY STYLE OUT AND IT'S JUST THE SCREEN,

14   WOULD BE ADMITTED.

15             MS. KREVANS:  YOUR HONOR, MAY I RAISE

16   ANOTHER ISSUE ABOUT 3707?

17             THE COURT:  WHAT'S THAT?

18             MS. KREVANS:  I HAVE TAKEN JX 1025 AND I

19   HAVE TURNED IT ON AND I'VE TRIED TO LOOK AT THE

20   SCREENS IN IT AND I CAN'T FIND A SCREEN LIKE THIS.

21             IT'S SHOWN ON HERE AS IF IT WERE THE HOME

22   SCREEN.  THAT'S WHAT MR. VERHOEVEN SAYS HE WANTS TO

23   DO IS SHOW THIS IS THE HOME SCREEN, AND THEN SHOW

24   THE NEXT PAGE IS THE APPLICATION SCREEN.

25             I CAN'T FIND THE HOME SCREEN ON THIS
```

```
 1    PHONE THAT LOOKS LIKE THIS.

 2              IN FACT, YOU SEE ON THE BOTTOM RIGHT-HAND

 3    CORNER, THERE IS AN ICON THAT'S THE HOME ICON.

 4              THE COURT:  UM-HUM.

 5              MS. KREVANS:  YOU DON'T SEE THE HOME ICON

 6    WHEN YOU'RE ON THE HOME SCREEN, YOUR HONOR.

 7              I DON'T BELIEVE THIS IS ACTUALLY A SCREEN

 8    SHOT THAT IS FROM AN ACTUAL SCREEN THAT IS ON THE

 9    1025.  I DON'T KNOW WHERE IT CAME FROM.

10              MR. VERHOEVEN:  WE CAN VERIFY THAT, YOUR

11    HONOR.  IT'S EASY TO DO.

12              THE COURT:  JUST DO IT RIGHT NOW.  DO IT

13    RIGHT NOW.  GO GET ONE OF THESE PHONES.  LET ME SEE

14    IT RIGHT NOW.  THIS IS THE DROID CHARGE.

15              MR. MCELHINNY:  WHILE THEY'RE DOING THAT,

16    MAY I USE THE TIME EFFICIENTLY TO MAKE ANOTHER

17    POINT?

18              THE COURT:  WHAT'S THAT?

19              THE DROID CHARGE IS -- IT'S EXHIBIT 1025.

20              MS. KREVANS:  THE DROID CHARGE IS JX

21    1025, YOUR HONOR.

22              THE COURT:  THAT'S WHAT I SAID.  LET ME

23    SEE IT.  LET ME SEE THE HOME SCREEN.  THANK YOU.

24              MR. VERHOEVEN:  YOUR HONOR.

25              THE COURT:  YES?
```

1          MR. VERHOEVEN:  AS YOU PROBABLY KNOW,

2    HOME SCREENS AND APPLICATION MENUS CHANGE.  PEOPLE

3    CAN CHANGE THEM JUST BY PUSHING AND MOVING THE

4    ICONS AROUND.

5          THE COURT:  UM-HUM.

6          MR. VERHOEVEN:  WHAT I SUGGEST IS WE GET

7    THE -- WE DON'T HAVE PHYSICAL POSSESSION OF THE

8    ACTUAL PHYSICAL PHONE.  IF WE CAN GET THAT AND TAKE

9    IT BACK, MAKE AN IMAGE OF EXACTLY WHAT'S ON THAT TO

10   AVOID ANY CONFUSION ABOUT THAT?

11         THE COURT:  WELL, WHY DOESN'T SOMEONE

12   JUST UNLOCK IT.  I SEE RIGHT NOW IT'S GOT LIKE A

13   PUZZLE AND --

14         MS. KREVANS:  I THINK MR. ZHANG CAN

15   UNLOCK IT FOR YOU, YOUR HONOR.  IT'S NOT THE MOST

16   INTUITIVE THING.  YOU SLIDE IT OVER.

17         THE COURT:  LET ME SEE WHAT THE HOME

18   SCREEN LOOKS LIKE.

19         ALL RIGHT.  YOU WANT TO TAKE A LOOK AT

20   THIS?  IT DOESN'T LOOK IDENTICAL, BUT IT HAS ICONS

21   FOR BIT BOP, VCAST, M-E, GALLERY, VOICEMAIL,

22   E-MAIL, BROWSER, AND MARKET.

23         MS. KREVANS:  THIS LOOKS TO US LIKE A

24   COMBINATION OF TWO DIFFERENT SCREENS HERE, YOUR

25   HONOR, SO WE'RE NOT SURE WHAT IT IS.  IT'S NOT WHAT

```
 1    WE SEE ON THE ACTUAL EXHIBIT.

 2              THE COURT:  YOU ARE CORRECT.  WHEN IT'S

 3    ON THE HOME SCREEN, IT SHOULD NOT SHOW UP ON THE

 4    BOTTOM FOUR ICONS IF IT'S ON THE HOME SCREEN.  SO

 5    I'M NOT SURE WHAT THAT IS.

 6              MR. VERHOEVEN:  YOUR HONOR, WE CAN FIX

 7    THIS EASILY BY JUST TAKING THAT PHONE BACK AND

 8    TAKING AN IMAGE OF IT AND TAKING THE PHONE PART OUT

 9    OF IT SO ALL YOU SEE IS THE SCREEN.

10              THAT WILL ADDRESS ANY OBJECTION THEY HAVE

11    TO IT.  THESE ARE OBVIOUSLY --

12              THE COURT:  I THINK THE BEST THING IS

13    LET'S JUST LET -- THE JURORS WILL HAVE ALL OF THESE

14    PHONES IN THE JURY ROOM.  WHY DON'T WE LET THEM

15    JUST PLAY WITH THEM?

16              MR. VERHOEVEN:  WELL, I WOULD LIKE TO BE

17    ABLE TO SHOW --

18              THE COURT:  OR YOU COULD JUST SHOW -- DO

19    YOU HAVE ANY OBJECTION, THEY CAN JUST SHOW THIS TO

20    THE JURORS?

21              MS. KREVANS:  WE HAVE NO OBJECTION TO

22    HOWEVER MANY TIMES THEY SHOW THE APPLICATIONS

23    SCREEN, YOUR HONOR, WHICH IS WHERE YOU ARE.

24              WHAT WE DON'T AGREE IS PROPER IS TO SHOW

25    EITHER A SCREEN THAT NEVER APPEARED, WHICH IS
```

1    WHAT'S ON 3707, OR THE HOME SCREEN WITH THE PATENT

2    WHICH SUGGESTS WE'RE ACCUSING IT, WHICH WE ARE NOT.

3              MR. VERHOEVEN:  THE ALLEGATION THAT WE

4    FABRICATED THAT IMAGE IS OFFENSIVE.

5              THESE DIFFERENT PHONES HAVE DIFFERENT

6    HOME SCREENS.  YOU CAN MOVE AROUND THE ICONS.  THE

7    FACT THAT THE PHYSICAL PHONE THAT THEY HAVE CONTROL

8    OF MIGHT HAVE A SLIGHTLY DIFFERENT CONFIGURATION IS

9    TOTALLY NORMAL.

10             THE COURT:  ALL RIGHT.  THIS IS WHAT I'D

11   LIKE TO DO.  WITH THIS PHONE, WHICH IS GOING TO

12   STAY HERE, IT'S ALREADY BEEN ADMITTED IN EVIDENCE,

13   YOU CAN SHOW THE HOME SCREEN AND YOU CAN SHOW THE

14   APPLICATION SCREEN AND JUST MAKE IT CLEAR THAT THE

15   ONLY THING THAT'S BEING ACCUSED IS THE APPLICATION

16   SCREEN.

17             MS. KREVANS:  WE WILL CERTAINLY MAKE THAT

18   CLEAR, YOUR HONOR.

19             WE'D LIKE YOU TO ASK SAMSUNG'S COUNSEL

20   ALSO TO MAKE IT CLEAR THAT THE ONLY THING THAT'S

21   BEING ACCUSED IS THE APPLICATION SCREEN.

22             MR. VERHOEVEN:  I INTEND TO MAKE THAT

23   VERY CLEAR, YOUR HONOR.

24             THE COURT:  ALL RIGHT.  SO I THINK THAT

25   SHOULD ELIMINATE THE NEED TO DO 3707, BECAUSE I'M

```
1    GOING TO ALLOW YOU TO JUST HAVE THE ACTUAL ONE BE

2    PASSED AROUND BY THE JURY.  OKAY?

3              MS. KREVANS:  AND YOUR HONOR, WE SHOULD

4    TURN IT OFF SO IT DOESN'T GET UNCHARGED OVERNIGHT.

5              THE COURT:  ALL RIGHT.  SO THAT SHOULD --

6    SO 3708, WHICH IS ACTUALLY A COMPARISON OF THE

7    APPLICATION SCREENS, IS FINE AS LONG AS THE BODY

8    STYLE IS REMOVED AND IT JUST SHOWS THE SCREEN.

9              MR. VERHOEVEN:  YOUR HONOR, WHILE YOU'RE

10   LOOKING THROUGH THAT, AN EFFICIENT WAY OF DOING

11   WHAT YOU JUST SAID WE SHOULD DO FOR THE DROID WOULD

12   BE TO PUT IT ON THE ELMO.  BECAUSE -- WE COULD PASS

13   IT AROUND AS WELL, BUT TO PUT IT ON THE ELMO.

14             THE COURT:  THAT'S FINE.

15             MR. VERHOEVEN:  THAT'S FINE?

16             THE COURT:  THAT'S FINE.

17             MR. VERHOEVEN:  THANK YOU.

18             THE COURT:  OKAY.  3709, THAT'S GOING TO

19   BE EXCLUDED, BUT YOU CAN JUST PUT THAT ON THE ELMO

20   TO SHOW BOTH THE HOME SCREEN AND THE APPLICATION

21   SCREEN.

22             THAT'S THE SAME FOR 3710.  WHY DON'T WE

23   JUST SHOW EVERYONE THE REAL THING AND THEN WE CAN

24   AVOID THESE DISPUTES?

25             NOW, WITH 3713, SAMSUNG, YOU DID NOT
```

```
1     RESPOND -- I DO AGREE THAT THE MISSING ROW WAS
2     STRUCK BY JUDGE GREWAL, SO THAT SHOULD COME OUT.
3              BUT WHAT ABOUT THE DIFFERENT ASPECT
4     RATIOS ISSUE AND DIFFERENT ICON ARGUMENTS?
5     THEY'RE -- APPLE IS CLAIMING THAT IT WAS NOT
6     DISCLOSED IN MR. LUCENTE'S REBUTTAL EXPERT REPORT.
7              DO YOU HAVE A RESPONSE TO THAT?  BECAUSE
8     OTHERWISE THOSE FIRST THREE SHOULD BE STRICKEN FROM
9     THIS SLIDE SDX 3713.
10             MR. VERHOEVEN:  AGAIN, YOUR HONOR,
11    WE'LL -- I DON'T HAVE THE ANSWER OFF THE TOP OF MY
12    HEAD, BUT PEOPLE WILL LOOK AT THESE REPORTS.
13             WE'RE CROSSING A WITNESS ABOUT HER
14    OPINION THAT THIS IS SUBSTANTIALLY SIMILAR, AND IN
15    CROSS-EXAMINATION, REGARDLESS OF WHAT OUR EXPERT
16    SAYS IN HIS REPORT, WE'RE ENTITLED TO POINT OUT
17    IT'S GOT A DIFFERENT ASPECT RATIO, IT'S GOT
18    DIFFERENT ICONS ON IT.
19             THE ICONS ARE ARRANGED ALPHABETICALLY ON
20    IT.  THERE'S PAGE INDICATORS ON IT.  THERE'S NO
21    PAGE -- THESE ARE DIFFERENCES THAT THE ORDINARY
22    OBSERVER WOULD SEE.
23             THERE'S ABSOLUTELY NO BASIS WHY WE CAN'T
24    CROSS-EXAMINE AN EXPERT WITNESS WHO SAYS THESE ARE
25    SIMILAR AND TEST THAT BY POINTING OUT DIFFERENCES.
```

 1    THAT'S ALL WE'RE DOING.

 2              THE COURT:  I THINK THE BOTTOM THREE

 3    DIFFERENCES ARE, ARE FINE.  I DON'T SEE THAT APPLE

 4    HAS EVEN OBJECTED TO THE BOTTOM THREE.

 5              MR. VERHOEVEN:  WELL, YOUR HONOR,

 6    SPEAKING OF OBJECTIONS, APPLE NEVER OBJECTED TO

 7    THIS SLIDE IN THE OPENING STATEMENT, EITHER, AND

 8    NOW THEY'RE COMING BACK AND, AND THIS MANTRA THAT,

 9    YOU KNOW, MAGISTRATE GREWAL HAS STRUCK OUR EXPERT

10    REPORTS ON CERTAIN SECTIONS, THEREFORE, WE CAN'T

11    EVEN TALK ABOUT THINGS, WE CAN'T EVEN CROSS

12    WITNESSES ON THINGS IS CONTRARY TO THE LAW.

13              MS. KREVANS:  YOUR HONOR, MAY I BE HEARD?

14              JUST SO WE'RE CLEAR, OUR POSITION IS THE

15    FIRST TWO ITEMS ON HERE, THE MISSING ROW VERSUS

16    FULL GRID AND DIFFERENT ASPECT RATIOS WERE STRUCK

17    FROM MR. LUCENTE'S REPORT AND YOUR HONOR HAS

18    AFFIRMED THAT BY DENYING THE MOTION FOR

19    RECONSIDERATION.

20              AND WHAT YOUR HONOR SAID WAS THAT

21    JUDGE GREWAL WAS CORRECT IN SAYING IF IT WASN'T

22    DISCLOSED AS A THEORY IN THE CONTENTION

23    INTERROGATORIES, IT COULDN'T BE IN THE EXPERT

24    REPORT IN THE FIRST PLACE.  HE WAS CORRECT TO

25    STRIKE IT.

```
 1                  THE COURT:  SO YOU HAVE NO OBJECTION TO

 2       THE LAST FOUR BULLETS?

 3                  MS. KREVANS:  NO.  WE DO ACTUALLY OBJECT

 4       TO THE REST AS POINTS THAT WERE NEVER DISCLOSED AT

 5       ALL IN CONTENTION INTERROGATORIES.

 6                  THE COURT:  WELL, OVERRULED.  OVERRULED.

 7                  I'M GOING TO SUSTAIN THE OBJECTION AS TO

 8       THE FIRST TWO AND THE REMAINING FOUR BULLETS ARE

 9       FINE.

10                  OKAY.  SO WHAT ELSE FOR MS. KARE?  IS

11       THAT IT FOR MS. KARE?  DO I HAVE ALL THE

12       DEMONSTRATIVES FOR MS. KARE?  ANYTHING ELSE WITH

13       REGARD TO HER, BECAUSE I THINK WE WILL GET TO HER

14       TOMORROW.

15                  ALL RIGHT.  OTHERWISE I THINK I WILL NEED

16       TIME TO LOOK AT WINER, PORET, VAN LIERE, AND I WILL

17       LOOK AT THE ISSUE THAT MR. PRICE RAISED AS TO PORET

18       AND VAN LIERE.

19                  WHAT ELSE?

20                  MS. KREVANS:  YOUR HONOR, I JUST WANT TO

21       MAKE SURE THAT WE'RE CLEAR ABOUT YOUR HONOR'S

22       RULING ABOUT PX 55, THE DOCUMENT ITSELF, WHICH IS

23       DISCUSSED IN THE REPORT.

24                  THE COURT:  I'M SORRY.  WHICH ONE?

25                  MS. KREVANS:  PX 55.  AND THIS IS ONE
```

```
 1    WHERE SAMSUNG'S OBJECTION WAS INITIALLY OVERRULED

 2    BY YOUR HONOR'S RULING IN DOCUMENT -- DOCKET --

 3              THE COURT:  ALL RIGHT.  IF WE'RE

 4    RECONSIDERING THIS ONE, I'M DOCKING YOUR TIME

 5    AGAIN.

 6              IT'S 5:15.  GO AHEAD.

 7              MS. KREVANS:  I WASN'T CLEAR WHETHER YOUR

 8    HONOR'S RULING ABOUT 35 APPLIED TO THIS.  YOUR

 9    HONOR'S RULING WAS WE COULDN'T USE IT FOR

10    WILLFULNESS, BUT WE COULD USE IT FOR OTHER

11    PURPOSES.

12              WE ONLY INTEND TO OFFER IT FOR OTHER

13    PURPOSES.

14              THE COURT:  YOU ARE ASKING FOR YET MORE

15    RECONSIDERATION.  I AM DOCKING YOUR TIME.  YOU HAD

16    ARGUED TO ME, AT ABOUT 4:41, THAT YOU WANTED THIS

17    IN FOR DILUTION, THAT YOU UNDERSTOOD THAT I HAD

18    ALREADY EXCLUDED IT FOR WILLFULNESS, AND THIS SAME

19    INTERROGATORY ASKS THAT APPLE "STATE ALL FACTS

20    SUPPORTING APPLE'S CONTENTION THAT SAMSUNG HAS

21    SALUTED," ALL RIGHT, "DILUTED FOR EACH PATENT,

22    TRADE DRESS, AND TRADEMARK."

23              SO IF YOU DID NOT DISCLOSE THIS IN

24    RESPONSE TO THIS INTERROGATORY, THEN IT DOESN'T

25    COME IN FOR ANY OF THESE ISSUES, WILLFULLY
```

```
1    INFRINGED, DILUTED, FALSELY DESIGNATED, ORIGIN OF

2    PRODUCTS FOR EACH PATENT, TRADE DRESS, AND

3    TRADEMARK.

4              SO IT'S EXCLUDED FOR WILLFULNESS AND IT'S

5    EXCLUDED FOR DILUTION.

6              WHAT IS THE OTHER REASON THAT YOU WANT IT

7    IN FOR?

8              MS. KREVANS:  SECONDARY CONSIDERATION,

9    YOUR HONOR.

10              THE COURT:  FOR WHAT?

11              MS. KREVANS:  NON-OBVIOUSNESS.  THERE WAS

12   NEVER AN INTERROGATORY PROPOUNDED ON THAT.

13              THE COURT:  HOW IS THIS -- LET ME TAKE A

14   LOOK AT IT.

15              MS. KREVANS:  COPYING IS A SECONDARY

16   CONSIDERATION, YOUR HONOR.

17              MR. VERHOEVEN:  YOUR HONOR, THE ARGUMENT

18   IS CIRCULAR.  SHE'S SAYING IT'S RELEVANT TO

19   COPYING, WHICH THEY DIDN'T DISCLOSE; AND THEN

20   THEY'RE SAYING, WELL, IT'S RELEVANT TO SECONDARY

21   CONSIDERATIONS BECAUSE COPYING GOES TO SECONDARY

22   CONSIDERATIONS.

23              SO THEY'RE SAYING IT'S RELEVANT TO

24   COPYING, WHICH WAS NEVER DISCLOSED.

25              MS. KREVANS:  NO.  YOUR HONOR, I THINK
```

```
 1    THE ACTUAL HISTORY HERE IS WE DISCLOSED THE

 2    ALLEGATIONS OF COPYING FOR WILLFULNESS AND FOR

 3    DILUTION.

 4             YOUR HONOR HAS NOW RULED THAT, BECAUSE WE

 5    DIDN'T DISCLOSE THE SPECIFIC DOCUMENT, WE CAN'T USE

 6    IT FOR THOSE.

 7             THAT WAS BECAUSE THERE WAS AN

 8    INTERROGATORY WE DID NOT DISCLOSE THE SPECIFIC

 9    DOCUMENT.

10             THERE NEVER WAS AN INTERROGATORY ON

11    SECONDARY CONSIDERATIONS FOR THE D'305 PATENT.

12             THE COURT:  WELL, COPYING IS THE SAME AS,

13    ESSENTIALLY, INFRINGEMENT, AND IF YOU NEVER

14    DISCLOSED IT FOR WILLFUL INFRINGEMENT OR

15    INFRINGEMENT, IT'S STILL NOT COMING IN.

16             I MEAN, I ASSUME YOU HAD INFRINGEMENT

17    CONTENTIONS, RIGHT, UNDER THE PATENT LOCAL RULES

18    AND OTHERWISE.  DID YOU EVER DISCLOSE IT FOR

19    INFRINGEMENT?  BECAUSE THAT'S THE SAME THING AS

20    COPYING.

21             MS. KREVANS:  IT IS NOT, YOUR HONOR, WITH

22    RESPECT TO THE DESIGN PATENTS.

23             AND THERE WAS NOT AN INTERROGATORY ON

24    INFRINGEMENT THAT WOULD HAVE CALLED FOR THIS.

25             BUT --
```

```
 1                THE COURT:  SO YOU NEVER HAD TO DISCLOSE

 2      YOUR INFRINGEMENT CONTENTIONS?

 3                MS. KREVANS:  NO.  WE NEVER HAD TO

 4      DISCLOSE COPYING AS PART OF AN INFRINGEMENT

 5      CONTENTION.

 6                WE -- THIS IS AN ISSUE ABOUT SECONDARY

 7      CONSIDERATIONS.

 8                THE COURT:  I THINK YOU'RE SLICING THE

 9      BOLOGNA TOO THIN.

10                MS. MAROULIS:  YOUR HONOR, THERE WAS AN

11      INTERROGATORY ON INFRINGEMENT THAT SAMSUNG

12      PROPOUNDED, SO TO SUGGEST TO THE CONTRARY IS NOT

13      CORRECT.

14                MS. KREVANS:  I AGREE WITH HER, YOUR

15      HONOR.  I'M NOT SUGGESTING THERE WAS NO

16      INTERROGATORY FOR INFRINGEMENT.

17                THE COURT:  ALL RIGHT.  WELL, THIS IS

18      EXCLUDED.

19                WE CAN KEEP GOING, BUT THIS IS COUNTING

20      TOWARDS YOUR TRIAL TIME IF YOU WANT TO KEEP GOING.

21                MS. KREVANS:  THAT WAS THE LAST ISSUE,

22      YOUR HONOR.

23                THE COURT:  ALL RIGHT.  IT'S 5:19.  SO 19

24      MINUTE IS GOING TO BE SUBTRACTED FROM APPLE'S TIME

25      FOR THIS RECONSIDERATION RULING.
```

1          OKAY.  WHAT ELSE?  ANYTHING ELSE FOR

2     TODAY?

3          MR. MCELHINNY:  I HAVE ONE LAST ISSUE,

4     YOUR HONOR.  AND I'LL BE BRIEF ABOUT THIS, BUT I

5     WANTED TO START MAKING A RECORD ABOUT IT.  IT HAS

6     TO DO WITH TIMED TRIALS.

7          THE COURT:  YES.

8          MR. MCELHINNY:  I JUST FINISHED, WITH

9     MR. VERHOEVEN, A TIMED TRIAL IN WHICH IT STARTED

10    EXACTLY LIKE THIS IN TERMS OF TIME ALLOCATION AND

11    USE OF TIME IN WHICH SAMSUNG USED THE SAME AMOUNT

12    OF TIME IN THEIR -- IN OUR OPENING CASE AS WE DID,

13    AND THEY'RE EITHER EQUAL OR AHEAD, AND WE GOT TO

14    THE END AND THEY RAN OUT OF TIME, AND THEY

15    STARTED -- WE GOT INTO A BIG FIGHT WITH THE JUDGE

16    OVER EXTENDING TIME AND ADDITIONAL TIME.

17          AND THE ONLY POINT I WANT TO MAKE,

18    BECAUSE I MADE IT THERE AND I -- THE JUDGE THERE

19    GAVE US ON EXTRA DAY, BUT THE POINT I WANT TO MAKE

20    NOW IS WE ARE LIMITING OUR EXAMINATIONS RIGHT THIS

21    MINUTE, AS WE PUT THEM ON, BECAUSE WE ARE MEETING

22    YOUR HONOR'S TIME LIMITS.

23          THE COURT:  I'M NOT GOING TO GIVE ANYONE

24    ANY EXTENSIONS.  I HAD A TRIAL WHERE I STOPPED THE

25    ATTORNEY MID-SENTENCE AND WE JUST CONCLUDED.

```
 1              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
 2              THE COURT:  OKAY.  SO THAT'S -- THIS IS
 3   IT.  SO THIS IS IT.  IF YOU WANT TO LOOK IT UP, IT
 4   WAS JANUARY OF 2011, AND THEY WERE NOT ALLOWED TO
 5   CALL ANY MORE WITNESSES.
 6              SO THIS TIME LIMIT IS GOING TO BE
 7   ENFORCED.
 8              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
 9              MS. MAROULIS:  YOUR HONOR, WE HAVE TWO
10   SHORT HOUSEKEEPING ISSUES IF WE MAY?
11              THE COURT:  YES, WHAT IS IT?
12              MS. MAROULIS:  THE FIRST ONE IS THE JURY
13   INSTRUCTIONS, WE'VE BEEN CONFERRING AND COOPERATING
14   AND REDUCING THE DISPUTES.
15              THE PARTIES WOULD LIKE A FEW EXTRA DAYS
16   TO FINISH THAT.  THEY'RE DUE TODAY, BUT IF WE CAN,
17   WE WOULD LIKE TO FILE THEM BY THE END OF THE WEEK.
18              THE COURT:  THAT'S FINE.  CAN YOU DO IT
19   BY FRIDAY?
20              MS. MAROULIS:  YES.
21              THE COURT:  OR HOW SOON -- THE SOONER YOU
22   CAN DO IT, THE MORE TIME WE WILL HAVE TO TRY TO GO
23   THROUGH YOUR DISPUTED ONES.
24              BUT I DO -- IF YOU CAN REACH AGREEMENT,
25   OF COURSE WE APPRECIATE IT.
```

 1           MS. MAROULIS:  YES, YOUR HONOR.  WE'LL

 2   TRY FOR THURSDAY OR FRIDAY.

 3           THE COURT:  OKAY.  THAT'S FINE.

 4           MS. MAROULIS:  AND, YOUR HONOR, THE

 5   SECOND ISSUE IS APPLE IS GOING TO BE CALLED A

 6   WITNESS NAME BORIS TEKSLER, AND THIS WITNESS IS

 7   GOING TO BE RELEVANT TO SEVERAL TOPICS, INCLUDING

 8   LICENSES AND FRAND-RELATED ISSUES.

 9           AND WE INFORMED APPLE IT'S NOT

10   APPROPRIATE TO CALL HIM FOR THE FRAND PART UNTIL

11   THE REBUTTAL CASE, BECAUSE WE'RE GOING TO NEED TO

12   PRESENT OUR OFFENSIVE CASE FIRST BEFORE THEY CAN

13   SHOW THE WITNESS --

14           THE COURT:  I AGREE WITH THAT.

15           WHY ARE YOU BRINGING IN A FRAND WITNESS

16   IN YOUR AFFIRMATIVE CASE?

17           MR. MUELLER:  JOE MUELLER.

18           THE TOPICS, THERE'S NO CLEAR LINE

19   DIVIDING THEM, AND HE'S OFFERING ONLY FACTUAL

20   TESTIMONY, QUITE BRIEF.

21           MR. MCELHINNY:  HE'S COMING IN IN OUR

22   CASE-IN-CHIEF, YOUR HONOR, IN ORDER TO PROVE NOTICE

23   OF THE PATENTS.

24           HE'S THE PERSON WHO DID THE SETTLEMENT,

25   THE ORIGINAL MEETINGS WITH SAMSUNG.  THERE'S ONE

1    MEETING, THERE'S A SET OF SLIDES, AND IT'S WHAT

2    HAPPENED AT THAT MEETING.

3            AND BOTH NOTICE OF OUR INFRINGEMENT,

4    WHICH IS VERY IMPORTANT IN ORDER TO START DAMAGES

5    PERIODS AND START WILLFULNESS AND ALL THE REST OF

6    THAT, AND FRAND WERE ALL DISCUSSED IN THE SAME

7    MEETING.  THERE'S ONE GUY, ONE MEETING.

8            AND THEY WANT US TO TALK -- YOU KNOW,

9    BRING HIM BACK TWICE TO TALK ABOUT WHAT -- TWO

10   SUBJECTS THAT WERE DISCUSSED SIMULTANEOUSLY.

11           MS. MAROULIS:  YOUR HONOR, IT'S NOT

12   APPROPRIATE TO DISCUSS THOSE TOPICS, IN PARTICULAR

13   THE FRAND-RELATED CORRESPONDENCE THAT TOOK PLACE

14   LONG AFTER THE MEETINGS.

15           IT TOOK PLACE AFTER THE LAWSUIT

16   COMMENCED, IN FACT.

17           THE COURT:  THE FRAND-RELATED ISSUES

18   SHOULD COME IN IN APPLE'S DEFENSIVE CASE.

19           AND LET'S JUST DRAW A CLEAR LINE.  IT

20   SHOULDN'T BE COMING IN IN YOUR AFFIRMATIVE CASE,

21   UNLESS YOU'RE GOING TO DO SOMETHING LIKE YOU DID

22   WITH MR. DENISON WHERE YOU'RE CALLING HIM OUT OF

23   ORDER AND BOTH SIDES ARE GOING TO BASICALLY --

24           MR. MCELHINNY:  WE DID THAT FOR

25   MR. DENISON.

```
 1            MS. MAROULIS:  AND FRAND, DURING THE DUE
 2   COURSE, IF THEY WANT TO TAKE HIM OUT OF ORDER THERE
 3   WITH ADDITIONAL TESTIMONY AND LICENSING, WE CAN DO
 4   THAT.
 5            BUT WE DON'T BELIEVE IT'S APPROPRIATE TO
 6   BRING OUT THIS TESTIMONY NOW BEFORE WE HAVE A
 7   CHANCE TO LAY OUT OUR AFFIRMATIVE CASE.
 8            THE COURT:  I AGREE WITH THAT.
 9            SO ANY FRAND DEFENSIVE TESTIMONY NEEDS TO
10   WAIT UNTIL APPLE'S DEFENSIVE CASE AFTER SAMSUNG HAS
11   HAD AN OPPORTUNITY TO PRESENT ITS AFFIRMATIVE CASE.
12            MR. MUELLER:  THAT'S FINE, YOUR HONOR.
13            ONE POINT OF CLARIFICATION.  TO THE
14   EXTENT THAT HE TALKS ABOUT LICENSING STRATEGY,
15   APPLE'S LICENSING STRATEGY, AND TOUCHES ON FRAND
16   PATENTS AS PART OF THE MIX, WITHOUT GETTING INTO
17   THE DETAILS, IS THAT PERMISSIBLE?
18            THE COURT:  YOU MEAN THE FRAND PATENTS
19   RELATING TO THE SAMSUNG ASSERTED PATENTS OR
20   SOMETHING UNRELATED?
21            MR. MUELLER:  I'M SORRY, YOUR HONOR.  NOT
22   THE PARTICULAR PATENTS, BUT JUST THE CATEGORY OF
23   FRAND PATENTS AS ONE ELEMENT IN THE APPLE LICENSING
24   STRATEGY, JUST TO PROVIDE THE FULL -- APPLE FRAND
25   PATENTS, YOUR HONOR, TO MAKE CLEAR TO THE JURY HOW
```

```
1    THOSE ARE TREATED AS A CATEGORY AND THE DISTINCTION

2    OF CERTAIN OTHER CATEGORIES.

3              THAT'S ACTUALLY RELEVANT TO THE OFFENSIVE

4    CASE IN TERMS OF DAMAGES.

5              MS. MAROULIS:  RIGHT.  THIS IS WHY IT HAS

6    TO GO IN APPLE'S CASE SUBSEQUENTLY.

7              BUT THE POINT HERE BEING IS THAT APPLE IS

8    NOT ASSERTING ANY STANDARDS PATENTS, SO THERE'S NO

9    REASON FOR THEM TO DISCUSS STANDARDS PATENTS IN

10   THEIR CASE-IN-CHIEF RIGHT NOW FOR LICENSING.

11             MR. JOHNSON:  AND, YOUR HONOR --

12   KEVIN JOHNSON.

13             YOU MAY RECALL YOU GRANTED A MOTION IN

14   LIMINE WITH RESPECT TO REQUESTS FOR ADMISSION.  WE

15   WANTED TO BRING IN EVIDENCE WITH RESPECT TO WHAT

16   APPLE HAD DONE IN CERTAIN STANDARD SETTING

17   ORGANIZATIONS.  YOU GRANTED THEIR MOTION IN LIMINE

18   IN THAT RESPECT.

19             NOW WE'RE HEARING THEY'RE GOING TO START

20   TALKING ABOUT APPLE, WHAT THEY DO WITH RESPECT TO

21   APPLE STANDARDS PATENTS, WHICH AREN'T AT ISSUE,

22   CERTAINLY IN THIS CASE, IN THEIR AFFIRMATIVE CASE.

23             IT MAKES NO SENSE.

24             MR. MUELLER:  THAT'S NOT TRUE, YOUR

25   HONOR.
```

```
 1              THE ISSUE OF STANDARD SETTING ON THOSE

 2    PARTICULAR PATENTS WAS A DISCLOSURE ISSUE.

 3              WE'RE NOT GOING TO OFFER ANY DISCLOSURE

 4    TESTIMONY AT ALL THROUGH MR. TEKSLER, AND BY

 5    "DISCLOSURE," I MEAN DISCLOSURE TO STANDARD SETTING

 6    ORGANIZATIONS.

 7              MR. TEKSLER'S TESTIMONY WILL GO TO

 8    LICENSING.  HE'S THE DIRECTOR OF LICENSING.

 9              IT'S RELEVANT TO THE OFFENSIVE DAMAGES

10    CASE, AND THAT'S THE REASON FOR CALLING HIM NOW.

11              TO BE SURE, THERE ARE SOME FACTS THAT

12    WOULD ALSO GO TO FRAND ISSUES AS WELL, AND WE CAN

13    DO OUR BEST TO CARVE OUT THOSE.

14              BUT CERTAIN ISSUES FALL IN BOTH CAMPS AND

15    EFFICIENCY WOULD SUGGEST WE MIGHT DO THEM BOTH NOW

16    WITH YOUR HONOR'S PERMISSION.

17              THE COURT:  NO.  I THINK THAT ANY FRAND

18    DISCUSSION SHOULD HAPPEN IN APPLE'S DEFENSIVE CASE.

19              I'M GOING TO HAVE TO GO BACK AND REFRESH

20    MY MEMORY ABOUT THE MOTION IN LIMINE ON FRAND

21    ISSUES ON APPLE'S PATENTS.  IS THAT RIGHT?

22              MS. MAROULIS:  YOUR HONOR, THAT WAS THE

23    OPENING SLIDE.  YOU STRUCK ONE OF OUR SLIDES THAT

24    HAD APPLE PRACTICES WHICH WE POINTED OUT HOW THEY

25    DISCLOSED THEIR PATENTS MUCH LATER THAN OTHERS.
```

```
 1        THAT'S IN THE CONTEXT OF WHERE IT WAS.

 2               BUT FURTHER TO OUR DISCUSSION, THE

 3        PARTIES AGREED ON THE OUTLINE OF THE TRIAL.  APPLE

 4        GOES FIRST, THEN WE PRESENT OUR CASE, THEN THEIR

 5        DEFENSIVE CASE.

 6               THE COURT:  I AGREE WITH YOU.  I AGREE

 7        WITH YOU.  THEY SHOULDN'T GET FRAND ISSUES IN ON

 8        THEIR AFFIRMATIVE DEFENSE.

 9               BUT I GUESS I'M NOT CLEAR.  YOU'RE

10        RAISING ANOTHER ISSUE?

11               MR. MUELLER:  THE ISSUE IS THIS, YOUR

12        HONOR:  ONE OF THEIR OPENING SLIDES REFERRED TO THE

13        CHRONOLOGY BY WHICH AN APPLE PATENT WAS DISCLOSED

14        TO ETSI.

15               THAT RELATES TO ONE OF THE SETS OF

16        DEFENSES THAT WE'RE MAKING IN THIS CASE, NAMELY,

17        THAT THE TWO ALLEGEDLY ESSENTIAL SAMSUNG PATENTS

18        WERE DISCLOSED LATE TO ETSI.

19               AND SO THEY WERE SAYING THAT THE APPLE

20        PATENT WAS ALSO DISCLOSED LATE.

21               WE SAID, NO, THAT'S NOT AN ISSUE IN THIS

22        CASE, THE APPLE PATENT.

23               AND WE NOTED THAT WE HAD ASKED YOUR HONOR

24        FOR PERMISSION TO IDENTIFY TO THE JURY THE

25        CHRONOLOGIES FOR OTHER SAMSUNG PATENTS THAT WERE
```

1    ACTUALLY IN THIS CASE, BUT DROPPED.

2              AND YOUR HONOR SAID NO.

3              AND WE SAID THAT'S FINE.  IF THOSE ARE

4    OUT, APPLE PATENTS NOT IN THE CASE SHOULD BE OUT AS

5    WELL.

6              SO WHAT WE'RE LIMITING OUR DISCLOSURE

7    PRESENTATION IN THIS TRIAL TO ARE THE TWO

8    PATENTS-IN-SUIT, WHICH IS BOTH SAMSUNG PATENTS.

9              NOTHING MR. TEKSLER SAYS WILL TOUCH ON

10   ANY OF THE DISCLOSURE ISSUES AT ALL.

11             THE COURT:  NO.  BUT I THOUGHT YOU JUST

12   SAID THAT YOUR EXPERT IS GOING TO TALK ABOUT HOW

13   APPLE HANDLES APPLE STANDARD SETTING OR STANDARD

14   ESSENTIAL PATENTS FOR FRAND LICENSES.

15             MR. MCELHINNY:  AS YOU KNOW, YOUR HONOR,

16   ONE OF THE GEORGIA PACIFIC STANDARDS FOR WHAT A

17   REASONABLE ROYALTY IS, IS WHETHER OR NOT THE

18   PARTIES WILL LICENSE, WHETHER THE PARTIES ARE

19   WILLING TO LICENSE, THE CONDITIONS UNDER WHICH

20   THEY'RE WILLING TO LICENSE, AND WHAT WE THOUGHT

21   MR. TEKSLER WOULD DO, WHICH IS TO DESCRIBE APPLE'S

22   LICENSING POLICY, AND THAT OVERLAPS THE TWO.

23             THE COURT:  IS THIS IN HIS EXPERT REPORT?

24             MR. MCELHINNY:  HE'S NOT AN EXPERT, YOUR

25   HONOR.  HE'S A FACT WITNESS.

```
 1              MS. MAROULIS:  HE'S A FACT WITNESS, AND

 2    MR. MUSIKA, THEIR DAMAGES EXPERT, DOES NOT RELY ON

 3    MR. TEKSLER'S DISCUSSION ON ANYTHING ABOUT

 4    STANDARDS PATENTS.

 5              THAT WOULD BE A COMPLETELY NEW THEORY AND

 6    IT SHOULD NOT BE ADMISSIBLE.

 7              MR. VERHOEVEN:  YOUR HONOR, HE'S NOT EVEN

 8    ASSERTED STANDARDS PATENTS, YOUR HONOR.

 9              THE COURT:  YEAH.  I JUST DON'T SEE THE

10    RELEVANCE OF THIS.

11              MR. MUELLER:  OKAY.  MAYBE I CAN BE

12    CLEAR.

13              MR. TEKSLER WILL DESCRIBE FOR THE JURY

14    THE DIFFERENT CATEGORIES OF PATENTS IN THE APPLE

15    PORTFOLIO AND HOW APPLE APPROACHES EACH OF THOSE.

16              THOSE WOULD INCLUDE THE PATENTS THAT ARE

17    ASSERTED IN THIS CASE, OR THE CATEGORY OF PATENTS

18    WHICH ARE ASSERTED BY APPLE IN THIS CASE.  THOSE

19    ARE NOT FRAND PATENTS.

20              AND SO MR. MUSIKA'S OPINIONS -- HE'S THE

21    OFFENSIVE DAMAGES EXPERT THAT APPLE WILL PRESENT --

22    RELY ON APPLE'S LICENSES, BUT NOT WITH RESPECT TO

23    FRAND PATENTS.

24              SO THAT'S ENTIRELY CORRECT.  WHEN SAMSUNG

25    SAYS THAT, THAT'S RIGHT.
```

```
 1              I SIMPLY MEANT THAT WE WOULD PROVIDE THE

 2      FULL CONTEXT OF THE MIX OF PATENTS IN THE APPLE

 3      PORTFOLIO, AND LATER, WITH OTHER EXPERTS, DISCUSS

 4      THE FRAND PATENTS.

 5              SO I DIDN'T MEAN TO SUGGEST THE FRAND

 6      PATENTS WERE RELEVANT TO THE OFFENSIVE DAMAGES

 7      CASE.  THEY'RE NOT.

 8              BUT THEY ARE PART OF THE APPLE PATENT

 9      PORTFOLIO, AND JUST TO PROVIDE AN EXPLANATION OF

10      THE FULL PORTFOLIO, THE CATEGORY LEVEL, MR. TEKSLER

11      WILL BRIEFLY SAY A FEW WORDS ABOUT THEM.

12              IF YOUR HONOR PREFERS THAT WE SAVE THAT

13      FOR LATER, WE CERTAINLY CAN DO THAT.

14              THE COURT:  I THINK ANYTHING FRAND

15      RELATED SHOULD WAIT UNTIL YOUR DEFENSIVE CASE.

16              I'M NOT CLEAR, ON A 403 BASIS, WHETHER

17      HOW APPLE HANDLES ITS OWN FRAND LICENSING AND

18      STANDARD, STANDARD ESSENTIAL PATENTS IS GOING TO BE

19      RELEVANT AND I AM CONCERNED WHETHER IT'S GOING TO

20      BE INCONSISTENT WITH SOME OF THE PRIOR RULINGS IN

21      THIS CASE.

22              I THINK WHAT WOULD BE BEST, NOT THAT I --

23      I THINK IT WOULD BE BEST IS IF YOU COULD MAKE A

24      PROFFER WHEN THAT WITNESS -- WHAT IS HIS NAME

25      AGAIN, PLEASE?
```

1          MR. MUELLER:  BORIS TEKSLER,

2     T-E-K-S-L-E-R, YOUR HONOR.

3          THE COURT:  OKAY.  IF YOU WOULD MAKE A

4     PROFFER, WHEN THAT WITNESS IS RIPE, OF EXACTLY WHAT

5     HE'S GOING TO SAY AND GIVE SAMSUNG AN OPPORTUNITY

6     TO RESPOND TO THAT, AND THEN I CAN MAKE SURE IT'S

7     CONSISTENT WITH THE PRIOR MOTION IN LIMINE RULINGS

8     AND SOME OF THESE OTHER EXCLUSIONARY RULINGS.

9          MR. MUELLER:  CERTAINLY, YOUR HONOR.

10         THE COURT:  OKAY.  ANYTHING ELSE?

11         MR. MUELLER:  THANK YOU.

12         THE COURT:  OTHERWISE WE'LL HANDLE

13    TOMORROW THE WINER AND PORET AND VAN LIERE.  IS

14    IT -- I GUESS IT'S POSSIBLE WE COULD GET TO

15    BALAKRISHNAN TOMORROW, OR NOT?

16         OKAY.  SO WE'LL HAVE TO LOOK AT THOSE AS

17    WELL.

18         OKAY.  ANYTHING ELSE FOR TONIGHT?

19         OH, IF YOU CAN MAKE SURE, PLEASE, THAT I

20    HAVE ALL OF THE DIRECT AND CROSS EXHIBITS FOR ALL

21    OF THESE WITNESSES.  I KNOW I HAVE THEM FOR KARE.

22         IF I DON'T HAVE ANY OF THEM FOR THE NEXT

23    SEVEN WITNESSES, WOULD YOU PLEASE JUST HAVE THEM

24    DELIVERED TO CHAMBERS?  THEY CAN JUST BUZZ THE

25    CHAMBERS DOOR ON THE FOURTH FLOOR IN BETWEEN THE

1    TWO ELEVATOR BANKS.

2              I ALSO WANT TO MAKE SURE I HAVE

3    EVERYONE'S DEMONSTRATIVES, BECAUSE I KNOW THOSE

4    CHANGE THE MOST, FOR ALL OF THESE WITNESSES SO I

5    CAN RULE ON THESE OBJECTION.

6              AND IF YOU HAVEN'T YET GIVEN ME YOUR

7    OFFENSIVE CASE AND DEFENSIVE CASE EXPERT WITNESS

8    REPORTS, IF YOU COULD PLEASE DO THAT.  JUST HAVE

9    THEM DROPPED OFF AND BUZZ OUR CHAMBERS AND WE'LL

10   GET THEM.

11             WHAT ELSE?  ANYTHING ELSE?

12             MR. VERHOEVEN:  NOT FROM US, YOUR HONOR.

13             THE COURT:  NO?  OKAY.

14             MR. MCELHINNY:  NOTHING FURTHER.

15             THE COURT:  ALL RIGHT.  THANK YOU ALL.  I

16   APPRECIATE IT.

17             (WHEREUPON, THE EVENING RECESS WAS

18   TAKEN.)

19

20

21

22

23

24

25

1

2

3

4                          CERTIFICATE OF REPORTERS

5

6

7              WE, THE UNDERSIGNED OFFICIAL COURT

8     REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

9     THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

10    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

11    CERTIFY:

12             THAT THE FOREGOING TRANSCRIPT,

13    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

14    CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

15    SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

16    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

17    TRANSCRIPTION TO THE BEST OF OUR ABILITY.

18

19                    /S/
                      _____
20                    LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
21

22                    /S/
                      _____
23                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER 8074
24

25                    DATED:  AUGUST 6, 2012