1          IN THE UNITED STATES DISTRICT COURT

2       FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

    APPLE, INC.,                )  CV-11-1846-LHK
5                               )
                PLAINTIFF,      )  SAN JOSE, CALIFORNIA
6                               )
            VS.                 )
7                               )  AUGUST 7, 2012
    SAMSUNG ELECTRONICS CO.,    )
8   LTD., ET AL,                )
                                )  PAGES 1-46
9               DEFENDANT.      )
    _____

10

11            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PAUL S. GREWAL
12          UNITED STATES DISTRICT JUDGE

13

14  A P P E A R A N C E S:

15

16  FOR THE PLAINTIFF:  MORRISON FOERSTER
                        BY:  ALISON TUCHER
17                           JASON BARTLETT
                        425 MARKET STREET
18                      SAN FRANCISCO, CA 94105

19

20  FOR THE DEFENDANT:  QUINN EMANUEL
                        BY:  SUSAN ESTRICH
21                           JOSEPH ASHBY
                        865 SOUTH FIGUEROA ST., 10TH FL
22                      LOS ANGELES, CA 90017

23       (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25  OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                        CERTIFICATE NUMBER 13185

```
1    FOR THE PLAINTIFF:  WILMER HALE
                         BY:  PETER KOLOVOS
2                        60 STATE STREET
                         BOSTON, MA 02109
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA              AUGUST 7, 2012

 2                    P R O C E E D I N G S

 3              (WHEREUPON, COURT CONVENED AND THE

 4    FOLLOWING PROCEEDINGS WERE HELD:)

 5              THE COURT:  MR. RIVERA, WOULD YOU CALL

 6    THE NEXT MATTER ON THE CALENDAR, PLEASE.

 7              THE CLERK:  YES, YOUR HONOR.

 8              CALLING APPLE INC. V. SAMSUNG

 9    ELECTRONICS, ET AL.  CASE NUMBER CV-11-1846.

10              MATTER ON FOR SAMSUNG'S MOTION FOR

11    SPOLIATION ADVERSE INFRINGEMENT INSTRUCTION AND

12    APPLE'S MOTION TO STRIKE SAMSUNG'S UNTIMELY MOTION

13    FOR ADVERSE INFERENCE INSTRUCTION.

14              COUNSEL, PLEASE COME FORWARD AND STATE

15    YOUR APPEARANCES.

16              MS. TUCHER:  GOOD MORNING, YOUR HONOR.

17              ALISON TUCHER FROM MORRISON & FOERSTER

18    WITH JASON BARTLETT AND NATHAN SABRI ON BEHALF OF

19    APPLE.

20              MR. KOLOVOS:  PETER KOLOVOS ALSO FOR

21    APPLE FROM WILMER CUTLER PICKERING HALE.

22              THE COURT:  COUNSEL, GOOD MORNING.

23    WELCOME BACK.

24              MS. ESTRICH:  GOOD MORNING, YOUR HONOR.

25              SUSAN ESTRICH FOR SAMSUNG.  WITH ME IS MY
```

1      COLLEAGUE MR. JOSEPH ASHBY.

2              THE COURT:  GOOD MORNING EACH OF YOU,

3      PLEASE HAVE A SEAT.

4              ALL RIGHT, WELL THIS CASE IS A GIFT THAT

5      KEEPS GIVING.

6              I UNDERSTAND FROM HER HONOR'S DIRECTIVE

7      THAT I AM TO HEAR ARGUMENTS AND ISSUE AN OPINION ON

8      TWO MOTIONS THIS MORNING.

9              ONE IS THE MOTION BROUGHT BY SAMSUNG FOR

10     ADVERSE INSTRUCTION VIS A VI APPLE, AND THE SECOND

11     IS APPLE'S MOTION TO STRIKE.  OBVIOUSLY THESE ARE

12     FAIRLY INTERTWINED SO I THINK WE CAN ADDRESS THEM

13     TOGETHER.

14             I SEE THIS PRINCIPALLY AS A REQUEST BY

15     SAMSUNG SO I WANT TO START WITH SAMSUNG'S COUNSEL.

16             WHY DON'T YOU GO AHEAD, COUNSEL.

17             MS. ESTRICH:  THANK YOU, YOUR HONOR.

18             TO BRIEFLY ADDRESS THE TIMELINESS ISSUE,

19     THE FEDERAL RULES OF CIVIL PROCEDURE RULE 51(A)(1)

20     PROVIDES THAT REQUESTS FOR JURY INSTRUCTIONS, WHICH

21     IS ESSENTIALLY WHAT THIS IS, ARE PROPERLY MADE ANY

22     TIME BEFORE THE COURT'S DEADLINE -- BEFORE THE

23     CLOSE OF THE CASE OR THE COURT'S DEADLINE.

24             AS THE COURT MAY WELL BE AWARE THE

25     PARTIES CONTINUE TO NEGOTIATE ON THE SUBJECT OF

 1    JURY INSTRUCTIONS.  INDEED, THE DEADLINE FOR

 2    SUBMITTING AGREED UPON INSTRUCTIONS WAS EXTENDED

 3    ONLY YESTERDAY.

 4            THE COURT:  SO COUNSEL, WOULD YOU SUGGEST

 5    THEN THAT ON THE TIMELINESS ISSUE I AM TO LOOK AT

 6    THE NATURE OF THE REMEDY SOUGHT RATHER THAN THE

 7    HARM THAT'S ALLEGED?

 8            MS. ESTRICH:  YOUR HONOR, THIS IS NOT --

 9    I WOULD SAY YOU SHOULD LOOK AT THE NATURE OF THE

10    REMEDIES SOUGHT.

11            THIS IS NOT MY OPPOSING SISTER AND

12    BROTHER'S DISCOVERY CASES WHERE YOU HAVE A CLOSE OF

13    DISCOVERY, AND FOR INSTANCE THEY CITE THE APEX

14    WITNESS ISSUE WHERE DISCOVERY IS ABOUT TO CLOSE AND

15    SOMEBODY COMES RUNNING IN AND SAYS, YOU KNOW, DON'T

16    CLOSE THE DOOR, WE WANT TO EXTEND THE PERIOD.

17            JUDGE KOH HAS YET TO DECIDE OUR APPEAL OF

18    YOUR INITIAL ORDER.  THERE HAVE BEEN NO FINAL

19    DECISIONS ON JURY INSTRUCTIONS.  THE GORDON -- I'M

20    GONNA TO BLOW THE PRONUNCIATION HERE, BUT THE

21    GORDON MAILLOUX ENTERPRISES CASE, GORDON V.

22    FIREMEN'S INSURANCE COMPANY, 366 F.2D 740, THE

23    NINTH CIRCUIT REJECTED AN ARGUMENT THAT A PARTY'S

24    REQUEST FOR JURY INSTRUCTION WAS UNTIMELY WHERE IT

25    WAS MADE FOUR DAYS BEFORE THE CLOSE OF EVIDENCE.

```
1              SO OUR ARGUMENT WOULD BE ON TIMELINESS,

2     THIS IS A TIMELY MOTION.  IT WAS MADE, I BELIEVE

3     WITHIN 24 TO 36 HOURS AFTER THIS COURT RULED THAT

4     THE AUGUST DATE TRIGGERED OUR OBLIGATION TO

5     PRESERVE.

6              THE COURT:  RIGHT.

7              BUT AGAIN, SO YOU'RE ASKING THAT I LOOK

8     EITHER AT THE -- NOW YOU ARE ASKING TO LOOK EITHER

9     AT THE NATURE OF THE REMEDY OR THE TIMING OF MY

10    ORDER ON A MOTION BROUGHT BY APPLE.

11             WHERE IS IT UNDER MY INHERENT AUTHORITY

12    UNDER RULE 37 DOES IT SUGGEST OR UNDER SOME OTHER

13    SOURCE IS IT SUGGESTED THAT'S THE METRIC OR ONE OF

14    THE TWO METRICS I HAVE TO APPLY?

15             MS. ESTRICH:  I WOULD SUGGEST YOU COULD

16    EITHER LOOK AT THE REQUEST FOR THE REMEDY WE'RE

17    SEEKING WHICH IS JURY INSTRUCTIONS, OR IN THE

18    INTEREST OF FAIRNESS AT THE TOTALITY OF THE

19    CIRCUMSTANCES, THE SPEED WITH WHICH SAMSUNG HAS

20    MOVED AND THE LACK OF PREJUDICE TO APPLE.

21             THE COURT:  ON THE SPEED ISSUE, I

22    APOLOGIZE FOR INTERRUPTING.

23             MS. ESTRICH:  CERTAINLY, YOU'RE THE

24    JUDGE.

25             THE COURT:  SOMETIMES I WONDER.
```

```
 1              MS. ESTRICH:  IN MY BOOK YOU ARE.
 2              THE COURT:  IF TIMELINESS IS THE ISSUE
 3     AND APPLE'S COMPLIANCE WITH ITS OBLIGATIONS WAS
 4     WELL KNOWN TO SAMSUNG WELL OVER A YEAR AGO, MAYBE
 5     ALMOST TWO YEARS AGO, HOW IN ANYONE'S RIGHT MIND
 6     COULD WE NOW SAY THAT IN THE MIDDLE OF A TRIAL IT'S
 7     APPROPRIATE TO BRING A MOTION THAT'S CLEARLY
 8     PREDICATED ON A CLAIM OF DISCOVERY, WHETHER YOU ARE
 9     RIGHT ABOUT THAT OR NOT WE WILL DEBATE IN A MOMENT.
10              BUT THIS ISN'T A DISCOVERY MOTION, IS IT?
11              MS. ESTRICH:  WELL NO BECAUSE WHAT IT'S
12     SEEKING IS JURY INSTRUCTIONS.
13              THE COURT:  WELL THEN BASICALLY YOU COULD
14     COUCH ANY DISCOVERY MOTION THAT WOULD OTHERWISE BE
15     BARRED UNDER THE SCHEDULE SET BY JUDGE KOH AS A
16     JURY INSTRUCTION REQUEST AND THEREFORE AVOID THE
17     OBLIGATION OF FILED IN AN UNTIMELY MANNER.
18              MS. ESTRICH:  YOUR HONOR, UNTIL YOU
19     ISSUED YOUR DECISION SAMSUNG HAD CONSISTENTLY TAKEN
20     THE POSITION THAT NO OBLIGATION TO PRESERVE OF THE
21     WAS TRIGGERED BY EITHER PARTY UNTIL APRIL.
22              THE ITC --
23              THE COURT:  I'VE HEARD ALL ABOUT THE ITC
24     AND WE'VE DEBATED THIS ISSUE MULTIPLE TIMES.
25              SO ON THIS ISSUE OF CONSISTENCY IT SEEMS
```

```
 1    TO ME WHAT YOU ARE SAYING IS THAT TODAY SAMSUNG'S

 2    POSITION IS APPLE OUGHT TO GET WHACKED WITH AN

 3    ADVERSE INSTRUCTION TOO; IS THAT RIGHT?

 4              MS. ESTRICH:  NO.

 5              TODAY OUR POSITION IS SIMPLY THAT IF

 6    JUDGE KOH SHOULD REVERSE YOUR ORDER THEN NEITHER

 7    SIDE SHOULD, TO PUT IT MILDLY, GET WHACKED WITH AN

 8    ADVERSE INSTRUCTION.

 9              THE COURT:  SO IF JUDGE KOH REVERSES MY

10    EARLIER ORDER YOU ARE SAYING YOU ARE GOING TO

11    WITHDRAW YOUR MOTION.

12              MS. ESTRICH:  OUR MOTION WOULD BE MOOT.

13              THE COURT:  IT WOULD BE MOOT OR YOU WOULD

14    WITHDRAW IT?

15              MS. ESTRICH:  I THINK IT WOULD BE MOOT

16    AND WE WOULD WITHDRAWN IT BECAUSE OUR PREMISE FOR

17    TODAY'S MOTION IS THAT BOTH SIDES SHOULD BE TREATED

18    THE SAME.  THAT IF WE WERE ON NOTICE IN AUGUST,

19    EVEN THOUGH WE ARE THE DEFENDANT AND THEIR

20    PRESENTATION IN AUGUST ONLY ADDRESSED UTILITY

21    PATENTS, ONLY ADDRESSED ACTUALLY ONE PATENT THAT'S

22    STILL AT ISSUE IN THIS CASE.

23              THE COURT:  RIGHT.  THERE'S NO MOTION FOR

24    RECONSIDERATION.

25              MS. ESTRICH:  NO, I'M NOT ARGUING FOR
```

1    RECONSIDERATION.

2           THE COURT:  BUT YOU'RE SAYING THAT

3    BASICALLY UNTIL JUDGE KOH RULES I CAN'T RULE ON

4    YOUR MOTION.

5           MS. ESTRICH:  YOU CERTAINLY COULD RULE.

6           THE COURT:  HOW?  BECAUSE YOU ARE SAYING

7    IF JUDGE KOH REVERSES ME, THERE'S NO MOTION FOR ME

8    TO DECIDE.

9           MS. ESTRICH:  THAT WE SHOULD BE TREATED

10   THE SAME.  THAT ANY DISCOVERY OBLIGATION, ANY

11   PRESERVATION OBLIGATION THAT IS IMPOSED ON APPLE,

12   THAT IS IMPOSED ON SAMSUNG --

13          THE COURT:  ALL RIGHT.

14          IF THE QUALITY OF TREATMENT IS THE

15   ARGUMENT AS I'VE HEARD MADE IN MANY BRIEFINGS,

16   LET'S GET TO THAT.

17          ARE YOU SAYING THAT YOUR ACTIONS AS OF

18   AUGUST WERE COMPARABLE OR EQUIVALENT TO WHAT APPLE

19   DID?

20          MS. ESTRICH:  ACTUALLY, I THINK THE

21   RECORD WOULD SHOW THAT WE DID A LITTLE BIT MORE AND

22   KNEW A GREAT DEAL LESS.

23          THE COURT:  REALLY.

24          SO YOU ARE SAYING YOU DID MORE BY LEAVING

25   THE AUTO DELETE FUNCTIONALITY IN MYSINGLE ON.  IS

```
 1     THAT WHAT APPLE DID?

 2              MS. ESTRICH:  APPLE HAS NOT TOLD US THAT

 3     IT DID ANYTHING.

 4              THE COURT:  DO YOU HAVE ANY PROOF

 5     WHATSOEVER THAT THEY WERE REGULARLY DELETING

 6     E-MAIL?

 7              MS. ESTRICH:  THEIR OWN DECLARATION IN

 8     THIS CASE SAID THEY HAD A POLICY IN PLACE TO REMIND

 9     CUSTODIANS AND EMPLOYEES ON A REGULAR BASIS THAT

10     THEY SHOULD KEEP THE NUMBER OF E-MAILS IN THEIR

11     FILES BELOW A CERTAIN NUMBER.

12              THE COURT:  IS THAT THE SAME THING AS

13     LEAVING ON AN AUTO DELETE FUNCTIONALITY?

14              MS. ESTRICH:  YOUR HONOR, THEY ARGUE, AND

15     I WANT TO APOLOGIZE IN ADVANCE, WE RECEIVED THEIR

16     OPPOSITION YESTERDAY SOMETIME IN THE AFTERNOON.

17              THE COURT:  WELL I GOT YOUR REPLY AT

18     7:00 A.M. SO WE ARE ALL OPERATING UNDER --

19              MS. ESTRICH:  SO WE STAYED UP ALL NIGHT

20     AND I RESPECTFULLY ASK, I KNOW YOU HAVE A BUSY

21     CALENDAR TODAY, I THINK WE ADDRESSED EVERY QUESTION

22     AND EVERY POINT IN THEIR OPPOSITION, BUT YES, THEIR

23     ARGUMENT BASED ON AN ARTICLE BY PROFESSOR SUNSTEIN

24     NINE YEARS AGO IS THERE'S SOMETHING VERY DIFFERENT

25     ABOUT OPT IN AND OPT OUT.
```

```
 1              WE WOULD SUGGEST THAT THAT DIFFERENCE IS

 2     IMMATERIAL.  AND WE OFFER FOR YOUR CONSIDERATION

 3     THE NUMBER OF E-MAILS THAT WERE ACTUALLY PRESERVED

 4     AND PRESENTED BY APPLE WHICH WAS --

 5              THE COURT:  OKAY.  I WANT TO MAKE SURE

 6     I'M FOLLOWING SAMSUNG'S POSITION HERE.  LET'S BE

 7     CLEAR.

 8              YOU ARE SAYING THAT MAINTAINING A SYSTEM

 9     OF AUTOMATIC DESTRUCTION IS NO DIFFERENT,

10     CONCEPTUALLY OR OTHERWISE, FROM AFFIRMATIVELY

11     INSTRUCTING PEOPLE, REMINDING THEM THAT THEY SHOULD

12     PRESERVE E-MAILS?

13              MS. ESTRICH:  I'M SAYING, YOUR HONOR,

14     THAT THE PRODUCTION OF 66 E-MAILS FROM A TOTAL OF

15     19 KEY CUSTODIANS IN THE PERIOD BETWEEN AUGUST 2010

16     AND APRIL 2011, SUGGESTS THAT WHATEVER SYSTEM APPLE

17     WAS USING FAILED TO PRESERVE RELEVANT EVIDENCE.

18              AND IF THE TRIGGER DATE WAS AUGUST, AS I

19     WOULD SUBMIT IT HAS TO BE FOR BOTH PARTIES, EITHER

20     FOR BOTH OR FOR NEITHER BUT CERTAINLY NOT FOR THE

21     DEFENDANT AND NOT THE PLAINTIFF, THEN A COMPARISON

22     OF THE PRESERVATION AND THE PRODUCTIONS BETWEEN

23     AUGUST AND APRIL FOR THE TWO SIDES MAKES CLEAR THAT

24     APPLE'S PRODUCTION WAS PLAINLY INADEQUATE.

25              THEY MAKE NO ARGUMENT THAT THEY
```

```
 1    INSTITUTED THE KIND OF LITIGATION HOLD MEASURES
 2    WHICH THEY TRUMPET IN THEIR BRIEF IN AUGUST.  THEY
 3    HAVE NO ANSWER TO THE FACT THAT ONLY 66 E-MAILS
 4    WERE PRODUCED FROM KEY CUSTODIANS DURING THAT
 5    PERIOD.
 6             THEY MAKE A GREAT POINT OF THE FACT THAT
 7    MANY OF THESE CUSTODIANS HAD RECEIVED LITIGATION
 8    HOLD NOTICES FROM OTHER CASES.  AND AS YOU WILL SEE
 9    PERHAPS LATER IN THE DAY, WE RESPONDED IN OUR REPLY
10    BRIEF BY LOOKING AT EACH OF THOSE PEOPLE AND
11    SHOWING YOU THAT THEY PRODUCED IN SOME CASES ZERO
12    E-MAILS DURING THIS CRITICAL PERIOD.
13             SO NOTHING APPLE POINTS TO IN THE AUGUST
14    TO APRIL PERIOD ESTABLISHES THAT THEY DID ANY
15    BETTER.  AND IN FACT, WE WOULD SUBMIT THAT THEIR
16    PRODUCTION WAS IN MANY CASES MUCH LEANER THAN OURS
17    DURING THE RELEVANT PERIOD.  THE PROOF IS IN THE
18    PUDDING.
19             THE COURT:  LET ME UNDERSTAND WHERE WE
20    STAND TODAY.
21             AS WE SIT HERE TODAY, IS THE AUTO
22    DISABLE -- THE AUTO DELETE FUNCTIONALITY STILL
23    OPERATING WITHIN SAMSUNG?
24             MS. ESTRICH:  YOUR HONOR, AS I UNDERSTAND
25    IT THERE IS ON THE RECORD, THERE IS NO EVIDENCE
```

```
 1    THAT SAMSUNG CURRENTLY HAS THE CAPACITY TO SIMPLY

 2    TURN THAT ON AND OFF.

 3              THE COURT:  THAT'S BEEN THE ARGUMENT FOR

 4    MONTHS IS THAT THE FUNCTIONALITY STILL OPERATING.

 5              MS. ESTRICH:  AS BEST AS I KNOW, IT IS.

 6              AND NO COURT HAS EVER HELD THAT THAT

 7    SYSTEM, THE MYSINGLE SYSTEM WHICH HAS BEEN IN PLACE

 8    FOR 12 YEARS WITH ITS AUTO DELETE POLICY IS PER SE

 9    UNREASONABLE.

10              THE ONE CASE MY COLLEAGUES CONTINUE TO

11    RELY ON THE MOSAID DECISION WHICH WAS 7, 8 YEARS

12    AGO, WAS A CASE IN WHICH NO LITIGATION HOLD NOTICES

13    WERE ACTUALLY ISSUED.

14              IN THIS CASE, AND I DON'T WANT TO REARGUE

15    BECAUSE I RESPECT YOUR HONOR'S TIME, BUT IN THIS

16    CASE WE ACTUALLY DETAIL THE MEETINGS WE HELD, THE

17    MEASURES WE TOOK, INTERESTINGLY ENOUGH, IN THE

18    OPPOSITION WE RECEIVED YESTERDAY, APPLE CONTINUES

19    TO SAY WHAT THEY WOULD HAVE DONE OR WHAT THEY

20    GENERALLY DO.  THEY DON'T EVEN GO AS FAR AS WE DO

21    IN SAYING, HERE ARE THE MEETINGS WE HELD, HERE ARE

22    THE PEOPLE WE TALKED TO, HERE ARE DECLARATIONS FROM

23    THE LAWYERS WHO ACTUALLY FLEW TO KOREA OR HELD

24    THESE MEETINGS.

25              THE COURT:  THESE ARE ALL AFTER
```

1    AUGUST 2010, RIGHT?

2                MS. ESTRICH:  IT IS ALL AFTER AUGUST.

3                SO I WOULD SUBMIT THAT OUR PRESERVATION

4    EFFORTS AFTER APRIL WERE MORE THAN ADEQUATE.

5                I WOULD ARGUE THAT WE WERE UNDER NO DUTY

6    IN AUGUST.  BUT IF WE WERE UNDER A DUTY, SO WERE

7    THEY.  AND IF WE EXAMINE THE RELATIVE PRODUCTIONS

8    OF THE TWO PARTIES BETWEEN AUGUST AND APRIL, WE

9    ACTUALLY WILL FIND THAT ON KEY CUSTODIANS I THINK

10   WE COMPARE BETTER THAN THEY DO.

11               FINALLY, IF I COULD MAKE ONE FINAL POINT,

12   YOUR HONOR.

13               APPLE ARGUES THAT THEY COULDN'T HAVE

14   KNOWN IN AUGUST THAT THEY SHOULD PRESERVE BECAUSE

15   THEY WERE RELYING ON THE LONG STANDING BUSINESS

16   RELATIONSHIP BETWEEN US.  WELL, WE WERE CONTINUING

17   TO MAKE PRODUCTS.

18               TWO POINTS.  IF ONE SIDE IS ALLOWED TO

19   RELY ON A LONG STANDING BUSINESS RELATIONSHIP TO

20   ASSUME THAT THERE WILL BE AN AMICABLE RESOLUTION,

21   THEN BOTH SIDES ARE.

22               THE COURT:  BUT WHAT IF ONE SIDE IS

23   KNOWINGLY KEEPING IN PLACE A SYSTEM WHICH WILL

24   DESTROY RELEVANT INFORMATION AND THE OTHER ISN'T?

25               MS. ESTRICH:  THERE IS NOTHING UNLAWFUL,

```
 1    I WOULD SUGGEST, CERTAINLY NO PRECEDENT FOR SAYING

 2    THAT THERE IS ANYTHING UNLAWFUL PER SE ABOUT

 3    SAMSUNG'S SYSTEM IN THE ABSENCE OF AN OBLIGATION, A

 4    TRIGGER OBLIGATION TO PRESERVE EVIDENCE.

 5              AS OF AUGUST --

 6              THE COURT:  WELL, I WOULD RESPECTFULLY

 7    DISAGREE.

 8              I WOULD THINK IF THERE WERE REASONABLE

 9    NOTICE, NOTICE UPON WHICH A REASONABLE PARTY WOULD

10    ANTICIPATE LITIGATION AND THERE IS A SYSTEM IN

11    PLACE WHICH IS KNOWINGLY DESTROYING RELEVANT DATA,

12    THAT PLACES YOU IN A SLIGHTLY DIFFERENT POSITION

13    FROM AN OPPOSING PARTY WHICH DOES NOT HAVE ANY

14    SIMILAR SYSTEM IN PLACE.

15              MS. ESTRICH:  BUT APPLE HAD NO SYSTEM IN

16    PLACE TO PRESERVE THAT EVIDENCE, AND THEY DIDN'T.

17              THE COURT:  YOU ARE SAYING THERE'S NO

18    MATERIAL DIFFERENCE BETWEEN PRESERVATION AND

19    DESTRUCTION.

20              MS. ESTRICH:  MY POINT IS ONCE THE

21    OBLIGATION TO PRESERVE IS TRIGGERED, YOU MUST

22    PRESERVE.  BUT THERE IS NO GENERAL REQUIREMENT THAT

23    SAMSUNG DISABLED ACROSS THE BOARD FOR HUNDREDS OF

24    THOUSANDS OF EMPLOYEES AT A COST OF SOME

25    $40 MILLION A YEAR, THAT IT DISABLED A SYSTEM WHICH
```

```
1    HAS BEEN IN PLACE ABSENT A TRIGGER.

2              AND THE IDEA THAT WE WERE TRIGGERED TO

3    KNOW THAT IN THE FUTURE THEY WOULD ASSERT DESIGN

4    PATENTS WHICH WEREN'T EVEN PART OF THE AUGUST

5    PRESENTATION, THE AUGUST PRESENTATION DIDN'T

6    INCLUDE DESIGN PATENTS.

7              THE COURT:  DOES THE AUGUST PRESENTATION

8    PRESERVE, STAND OR FALL OR IS IT OTHERWISE

9    DEPENDENT UPON THIS PRECISE NATURE OF THE CLAIMS

10   THAT ARE BEING ASSERTED?

11             MS. ESTRICH:  I THINK IF YOU READ THE

12   KITSAP CASE YOU WILL SEE THAT YOU MUST BE ON

13   KNOWLEDGE, IF NOT OF EVERY DETAIL OF THE CLAIM, OF

14   THE NATURE OF THE "SPECIFIC CLAIMS."

15             CERTAINLY, THE FACT THAT THEY WERE

16   PRESENTING UTILITY PATENT CLAIMS, ONLY ONE OF WHICH

17   I SHOULD ADD IS CURRENTLY AT ISSUE IN THIS TRIAL

18             THE COURT:  BUT YOU WOULD ALSO AGREE WHAT

19   IS CURRENTLY AT ISSUE UPSTAIRS IS A FUNCTION OF

20   MORE THAN SIMPLY WHAT THE PARTIES HAVE CHOSEN TO

21   ASSERT, RIGHT?

22             HER HONOR HAS PUT IN PLACE VERY STRICT

23   CONTROL ON WHAT PATENTS MAY OR MAY NOT BE ASSERTED

24   IN THIS PARTICULAR SUIT.

25             MS. ESTRICH:  ABSOLUTELY, YOUR HONOR.
```

1          BUT THERE WERE NO DESIGN PATENTS, NO

2     DESIGN PATENTS THAT WERE PRESENTED IN THAT AUGUST

3     PRESENTATION.

4          THE COURT:  SO LET'S SAY THEY UNVEILED A

5     NUMBER OF DESIGN PATENTS, WOULD THAT HAVE CHANGED

6     THE CALCULUS?

7          MS. ESTRICH:  IT DEPENDS ON WHAT THEY

8     UNVEILED, WHAT WE REASONABLY EXPECTED.

9          THE COURT:  SO ONE DESIGN PATENT MIGHT

10    HAVE BEEN ENOUGH.

11         MS. ESTRICH:  WHATEVER WAS GOOD FOR THE

12    GOES WAS GOOD FOR THE GANDER.

13         THE COURT:  WOULD ONE BE ENOUGH.

14         MS. ESTRICH:  IF ONE WOULD BE ENOUGH TO

15    TRIGGER US THEN ONE WOULD BE ENOUGH TO TRIGGER

16    THEM.

17         WE WERE NOT IN THE POSITION TO HAVE

18    SUPERIOR KNOWLEDGE HERE.  MICRON RECOGNIZES THAT

19    IT'S THE PLAINTIFF WHO, IF ANYONE IS IN A POSITION

20    TO HAVE SUPERIOR KNOWLEDGE.

21         SHOULD THIS COURT, WITH JUDGE KOH

22    OBVIOUSLY MAKING HER OWN DECISIONS, SHOULD THIS

23    COURT IMPOSE AN EARLIER TRIGGER DATE ON THE

24    DEFENDANT IN A CASE, THEN ON THE PLAINTIFF WHO IS

25    PURSUING THEIR CLAIM I'M JUST TALKING ABOUT A

1    TRIGGER DATE, THAT WOULD BE THE FIRST CASE, AT

2    LEAST TO OUR KNOWLEDGE, THAT HAS EVER DONE SO.

3            THE COURT:  WELL, WHY WOULD I EVER HAVE

4    TO DO THAT IF I AM PRESENTED WITH A SITUATION WHERE

5    ONE SIDE BRINGS A MOTION MONTHS AND MONTHS AGO WELL

6    BEFORE THE TRIAL AND THE OTHER SIDE WAITS UNTIL

7    THEY ARE HIT WITH AN ORDER TO THEN PRESENT A

8    SIMILAR MOTION IN THE MIDDLE OF THE TRIAL.

9            MS. ESTRICH:  YOUR HONOR, THE ARGUMENT

10   WITH MY COLLEAGUE, MS. SULLIVAN, YOU SAID I THINK

11   TWO OR THREE TIMES, YOU MAY HAVE A TERRIFIC MOTION.

12           THE COURT:  I SAID YOU MAY, I DIDN'T SAY

13   YOU DID.  AND I READ HOW YOU CHARACTERIZE MY

14   PAPERS.

15           MS. ESTRICH:  I APOLOGIZE IF WE

16   MISCHARACTERIZED IT, BUT YOU SAID YOU MAY, I AGREE.

17           AND SHE RESPONDED BY SAYING WE WILL

18   CERTAINLY CONSIDER THAT AT A LATER TIME.

19           THE COURT:  RIGHT.

20           SO SHE MADE HER RECORD AND PRESERVED HER

21   POINT BUT SHE DOESN'T GET TO SET THE SCHEDULE, THE

22   COURT SET THE SCHEDULE.  NOT THIS COURT, IT WAS

23   JUDGE KOH.

24           I'M STRUGGLING WHY SAMSUNG THOUGHT IT WAS

25   IN THEIR INTEREST TO SIT AND LIE IN WAIT WITH THIS

1    MOTION FOR MONTHS AND ONLY POP UP WITH IT AFTER

2    THEY GET AN ORDER ON A TOTALLY DIFFERENT MOTION

3    THAT THEY DIDN'T LIKE.

4           MS. ESTRICH:  I WOULD SUBMIT THAT IT

5    WASN'T A TOTALLY DIFFERENT MOTION, YOUR HONOR.

6           I WOULD SUBMIT WE TOOK THE POSITION, THE

7    CONSISTENT POSITION, AND I DON'T MEAN TO EMPHASIZE

8    THE ITC AS BEING RIGHT AND YOU ARE WRONG, I SIMPLY

9    MEAN TO UNDERSTAND OR HOPE TO EXPLAIN.

10          THE COURT:  THE ITC DID NOT APPLY THE

11   SAME STANDARD, DID IT?

12          MS. ESTRICH:  THE ITC DECIDED THAT OUR

13   OBLIGATION TO PRESERVE DOCUMENTS WAS NOT TRIGGERED

14   BY THE AUGUST PRESENTATION.

15          THE COURT:  THE ITC APPLIED A DIFFERENT

16   STANDARD.

17          MS. ESTRICH:  IN TERMS OF THE TRIGGER NO,

18   I THINK THE ITC --

19          THE COURT:  THE ITC LOOKED AT BAD FAITH,

20   DIDN'T THEY?

21          MS. ESTRICH:  THEY LOOKED AT BAD FAITH.

22          THE COURT:  AND THAT WAS NOT THE STANDARD

23   I APPLIED BECAUSE I'M NOT REQUIRED TO UNDER NINTH

24   CIRCUIT LAW, RIGHT?

25          MS. ESTRICH:  I UNDERSTAND, YOUR HONOR.

1          BUT IN TERMS OF -- THE FIRST ISSUE IS NOT

2     CULPABILITY.  THE FIRST ISSUE BEGINS, WHEN WAS THE

3     OBLIGATION TRIGGER.

4          MS. ESTRICH:  WOULD YOU AGREE, COUNSEL,

5     THAT IN A PATENT CASE LIKE THIS OR FRANKLY ANY KIND

6     OF CASE OF ANY NATURE, ONE PARTY MIGHT BE ON NOTICE

7     IN A WAY THAT TRIGGERS THE DUTY ON THE DATE BEFORE

8     ANOTHER PARTY, IS THAT CONCEPTUALLY CONCEIVABLE.

9          MS. ESTRICH:  MICRON CERTAINLY SUGGESTS

10    IT IS AND SUGGESTS IT WOULD BE THE PLAINTIFF

11    BECAUSE THE PLAINTIFF --

12         THE COURT:  ALWAYS?  IS THAT A PER SE

13    RULE MICRON IS SUGGESTING?  IS THAT ARE HOW YOU

14    READ MICRON?

15         MS. ESTRICH:  YOUR HONOR, I HAVE NEVER

16    SEEN A CASE IN WHICH A COURT HAS HELD THAT A

17    DEFENDANT IN A SITUATION LIKE OURS --

18         THE COURT:  IT MAY NOT BE OUT THERE.

19    THERE MAY NOT HAVE EVER BEEN A CASE.

20         I'M ASKING YOU CONCEPTUALLY, IS IT PER SE

21    ERROR TO CONCLUDE THAT A DEFENDANT MAY BE ON NOTICE

22    BEFORE A PLAINTIFF?

23         MS. ESTRICH:  YOUR HONOR, I'M A LAW

24    PROFESSOR, I MAKE UP HYPOTHETICALS ALL THE TIME.

25         THE COURT:  THAT'S WHY I'M ASKING.

```
 1           MS. ESTRICH:  IF YOU ARE ASKING ME IF I
 2     WERE TEACHING A CLASS COULD I COOK UP A
 3     HYPOTHETICAL IN WHICH I COULD CONVINCE ALL OF MY
 4     STUDENTS THAT IN THAT PARTICULAR HYPOTHETICAL
 5     CIRCUMSTANCE A DEFENDANT MIGHT HAVE BEEN ON NOTICE
 6     AND A PLAINTIFF MIGHT NOT, A DEFENDANT FOR INSTANCE
 7     MIGHT HAVE BEEN NEGOTIATING IN BAD FAITH, AND THE
 8     PLAINTIFF MIGHT HAVE BEEN NEGOTIATING IN GOOD
 9     FAITH, COULD I PLAY PROFESSOR ESTRICH AND COME UP
10     WITH A HYPOTHETICAL?  I'M SURE I COULD, AND I'M
11     SURE YOU COULD.
12           BUT WE ARE NOT IN THE HYPOTHETICAL
13     BUSINESS.
14           THE COURT:  NO, I'M ABOUT AS FAR FROM THE
15     HYPOTHETICAL -- I'M ON A DISCOVERY CALENDAR IN A
16     FEDERAL DISTRICT COURT.
17           MS. ESTRICH:  THAT'S WHY I AM SAYING,
18     YOUR HONOR --
19           THE COURT:  AND THERE'S NO ERROR IN
20     REJECTING THE NOTION OF A PER SE RULE THAT SOMEHOW
21     PLAINTIFFS ALWAYS KNOW BEFORE DEFENDANTS.
22           MS. ESTRICH:  I'M SAYING THAT THE FACT
23     THAT THERE IS NO CASE LAW THAT WE ARE AWARE OF AND
24     CERTAINLY NONE THAT APPLE HAS CITED HOLDING THE
25     DEFENDANT TO A HIGHER DUTY THAN A PLAINTIFF,
```

1    SUGGESTS THAT WHAT WE WOULD BE DISCUSSING HERE IN

2    DOING SO REALLY IS A LAW SCHOOL HYPOTHETICAL AND

3    NOT AN ISSUE THAT COMES UP IN THE REAL WORLD OF

4    PATENT LAW.

5              THE COURT:  ALL RIGHT.

6              LET ME ASK YOU ONE LAST QUESTION BEFORE I

7    HEAR FROM APPLE.

8              MS. ESTRICH:  CERTAINLY.

9              THE COURT:  YOU SUGGESTED PREVIOUSLY IF

10   JUDGE KOH WERE TO REVERSE MY EARLIER ORDER, SAMSUNG

11   WOULD WITHDRAW ITS MOTION; AM I CORRECT ABOUT THAT?

12             MS. ESTRICH:  IF JUDGE KOH WERE TO DENY A

13   SPOLIATION, IT DEPENDS OBVIOUSLY ON WHICH PART SHE

14   WOULD REVERSE, OBVIOUSLY.

15             IF JUDGE KOH WERE TO RULE THAT SAMSUNG,

16   THAT THERE WAS NO ENTITLEMENT TO A SPOLIATION

17   INSTRUCTION AGAINST SAMSUNG, IT WOULD BE OUR

18   POSITION THAT THE PARTIES SHOULD THEN BE TREATED

19   EQUALLY.

20             THE PROOF WE HAVE SUBMITTED IN OUR REPLY

21   BRIEF WHICH I APOLOGIZE THAT 7:00 A.M. WAS THE BEST

22   WE COULD DO STAYING UP ALL NIGHT.  THE PROOF WHICH

23   WE HAVE SUBMITTED EXACTLY MIRRORS THE PROOF THEY

24   SUBMITTED.

25             SO IF THAT ISN'T ENOUGH TO SUPPORT AN

```
1    INSTRUCTION AGAINST US, I THINK IT WOULD LOGICALLY
2    FOLLOW THAT NO INSTRUCTION SHOULD BE GIVEN AGAINST
3    THEM.
4         OUR FUNDAMENTAL REASON FOR BEING HERE,
5    AND I UNDERSTAND YOUR POINT, BUT THE REASON WE DID
6    NOT FILE UNTIL AFTER YOUR DECISION THAT WAS WE
7    BELIEVE THAT FUNDAMENTAL FAIRNESS IN A CIRCUMSTANCE
8    LIKE THIS DEMANDS THAT TWO PARTIES BE TREATED THE
9    SAME, AND IF THERE IS A DIFFERENCE IT SHOULD BE THE
10   PARTY THAT FILED THE CLAIM AND NOT THE PARTY WHO IS
11   DEFENDANT.
12        THE COURT:  LET ME ASK YOU ONE FURTHER
13   QUESTION THEN I WILL REALLY TURN TO APPLE.
14        MS. ESTRICH:  ASK ME AS MANY AS YOU WANT.
15        THE COURT:  I WILL.  THANK YOU.
16        WHETHER WE ARE TALKING ABOUT SAMSUNG OR
17   ANY OTHER KIND OF PARTY, IF THE PARTY ESSENTIALLY
18   MAKES IT SO DIFFICULT AND SO EXPENSIVE TO DISABLE
19   THE SHREDDER, IS THAT SOMETHING THE COURT SHOULD
20   HOLD AGAINST THE OTHER PARTY?
21        I MEAN, IN THIS PARTICULAR INSTANCE YOU
22   HAVE HIGHLIGHTED WITH PROFESSOR DEAN SULLIVAN, YOU
23   HAD HIGHLIGHTED EARLIER THAT SAMSUNG WOULD HAVE TO
24   SPEND SOMETHING LIKE $40 MILLION IN ORDER TO RIP
25   OUT THIS FUNCTIONALITY.
```

```
 1              I WANT TO ACCEPT THAT AS TRUE FOR THE

 2    MOMENT BECAUSE THE ONLY EVIDENCE I HAVE BEFORE ME

 3    WAS THE ONE DECLARATION.  IS THAT SOMETHING THAT

 4    SHOULD WEIGH IN SAMSUNG'S FAVOR OR APPLE'S?

 5              ESPECIALLY EIGHT YEARS AFTER OR SEVEN

 6    YEARS AFTER ANOTHER DISTRICT COURT HAS ALREADY

 7    ADDRESSED THE SAME FUNCTIONALITY.

 8              MS. ESTRICH:  THE OTHER DISTRICT COURT

 9    FOUND THAT SYSTEM IN THE ABSENCE OF A LITIGATION

10    HOLD CREATED PREJUDICE FOR THE OPPOSING PARTY.

11              AND SAMSUNG HAS RESPONDED BY PUTTING INTO

12    PLACE PROCEDURES THAT ENSURE THAT WHERE THERE IS A

13    LITIGATION HOLD WE SEND OVER LAWYERS AND WE HOLD

14    MEETINGS AND THE LIKE.

15              IF YOUR QUESTION IS SHOULD SAMSUNG, IN

16    EFFECT, AUTOMATICALLY LOSE AND BE SANCTIONED IN

17    EVERY CASE BECAUSE PRIOR TO PUTTING ON A LITIGATION

18    HOLD IT CONTINUES TO USE THE SYSTEM WHICH OUR

19    EXPERT, MR. DALY, FROM THE LAST SET OF MOTIONS

20    OPINED WAS REASONABLE.  OUR EXPERT, AND I WON'T

21    EVEN TRY THE NAME, A KOREAN ATTORNEY AND PROFESSOR

22    OPINED IN THE LAST CASE, IS CONSISTENT WITH CERTAIN

23    SPECIALIZED EMPHASIS IN KOREAN LAW AS TO PRIVACY.

24              IF YOU WERE TO HOLD THAT THAT SYSTEM

25    ALONE EVEN IN THE ABSENCE OF A TRIGGER DATE AND
```

1    EVEN IN THE ABSENCE OF LITIGATION HOLDS ISSUED AT

2    THAT TRIGGER DATE THAT THAT SYSTEM ALONE MEANS THAT

3    SAMSUNG IS FOREVER VULNERABLE TO SANCTIONS WHENEVER

4    IT GETS SUED, I WOULD SAY THAT THAT WOULD BE PER SE

5    UNREASONABLE.

6              THE COURT:  SO IN A CASE WHERE THERE'S A

7    DAMAGE DEMAND OF TWO AND A HALF BILLION POTENTIAL

8    TROUBLING UNTOLD FEES ACCRUED ON BOTH SIDES, WHAT'S

9    THE LINE A LITTLE MAGISTRATE JUDGE LIKE ME OUGHT TO

10   APPLY? $5 MILLION, 10, 20?  40 IS OBVIOUSLY TOO

11   MUCH.  HOW MUCH IS ENOUGH?

12             MS. ESTRICH:  YOUR HONOR, FIRST OF ALL I

13   WOULD DISAGREE WITH YOUR CHARACTERIZATION OF

14   YOURSELF AS A LITTLE MAGISTRATE JUDGE.

15             THE COURT:  I FEEL PRETTY LITTLE IN THIS

16   ROOM.

17             SO TELL ME, HOW SHOULD I THINK ABOUT THIS

18   PROBLEM?

19             MS. ESTRICH:  I THINK YOU HAVE TO ASK TWO

20   QUESTIONS.

21             I DON'T THINK YOU'RE YOUR HOLDING, AT

22   LEAST AS I READ IT WAS PREMISED ON THE NOTION THAT

23   APPLE -- THAT SAMSUNG'S SYSTEM WAS PER SE

24   UNREASONABLE.

25             I READ IT TO HOLD THAT SAMSUNG WAS UNDER

1  TRIGGER OBLIGATION IN AUGUST AND THAT WE HAD NOT

2  TAKEN THE ADDITIONAL STEPS WE TOOK IN APRIL

3  LITIGATION HOLDS, MEETINGS, ET CETERA, WHICH WOULD

4  BE NECESSARY AND INDEED CRITICAL.

5           THE COURT:  BUT NOT SUFFICIENT BECAUSE

6  YOU NEVER WENT BACK AND AUDITED.  AS I UNDERSTAND,

7  STILL NOT AUDITED TO SEE WHETHER POST-APRIL

8  MEASURES HAVE IN FACT SUFFICIENTLY PRESERVED

9  DOCUMENTS.

10           MS. ESTRICH:  YOUR HONOR, I WOULD POINT

11  YOU TO THE KELLERMAN DECLARATION IN WHICH SHE DOES

12  NOT SAY --

13           THE COURT:  THEY MAY HAVE THEIR OWN

14  PROBLEM BUT I WILL GET TO THAT, I'M JUST FOCUSSING

15  ON THE ISSUE AT HAND.

16           MS. ESTRICH:  I WOULD SAY WE DID

17  EVERYTHING THAT SHOULD REASONABLY BE EXPECTED TO

18  ENSURE THAT WE PRODUCED ADEQUATE DOCUMENTS AND THAT

19  THE PROOF THAT WE DID AT LEAST AS MUCH AS APPLE

20  DID, IS THAT OUR FIGURES ARE IN EVERY RESPECT

21  COMPARABLE TO THEIRS.

22           AND THEREFORE SHORT OF HOLDING, THAT OUR

23  SYSTEM IS PER SE UNREASONABLE, ABSENT AN AUGUST

24  TRIGGER DATE, THERE WOULD BE NO BASIS FOR FINDING

25  US TO HAVE SPOLIATED.

```
 1            AND IF THE AUGUST TRIGGER DATE APPLIES TO

 2    US, IT ALSO SHOULD APPLY TO THEM.  AND IN THEIR

 3    DECLARATIONS THEY MAKE NO CLAIM THAT THESE

 4    PROCEDURES WHICH THEY GENERALLY RELY ON AND SAY

 5    THEY WOULD HAVE RELIED ON, THAT THEY RELIED ON THEM

 6    AT ALL FROM AUGUST TO APRIL.

 7            AND WITHOUT BELABORING THE POINT, OUR

 8    RELY FILED THIS MORNING GOES THROUGH THE KEY

 9    CUSTODIANS, HOW MANY DOCUMENTS WERE PRODUCED, GOES

10    THROUGH EACH OF THEIR ARGUMENTS.

11            WELL, MANY OF THESE PEOPLE RECEIVED LIT

12    HOLDS BEFORE BUT AS A MATTER OF FACT THEY STILL

13    DIDN'T PRODUCE ANY DOCUMENTS DURING THIS PERIOD OR

14    LOOK AT HOW MANY PRE-AUGUST 2010 DOCUMENTS WE

15    PRODUCED.

16            SO WE TOOK THAT AND WE COMPARED THOSE

17    NUMBERS AND FOUND THAT THEIR PRODUCTION ACTUALLY

18    DECREASED FROM AUGUST TO APRIL, OR WE DIDN'T KNOW

19    THERE WOULD BE ANY INFRINGING PRODUCTS AND WE

20    AGAIN, ACTUALLY SAID THEY WERE INFRINGING PRODUCTS

21    IN AUGUST AND WENT THROUGH THE LIST OF ACCUSED

22    PRODUCTS AND THEY WERE, IN FACT AT LEAST 8 OR 9 OF

23    THEM, RELEASED BEFORE APRIL.

24            SO I THINK ON EACH OF THOSE SPECIFIC

25    POINTS, I WON'T TAKE EVERYONE'S TIME, WE ACTUALLY
```

```
 1    ANSWERED THE ARGUMENT.  AND THE BASIC QUESTION

 2    COMES DOWN TO THE TRIGGER DATE.

 3            THE COURT:  ALL RIGHT.

 4            THANK YOU VERY MUCH.

 5            MS. ESTRICH:  THANK YOU VERY MUCH FOR

 6    YOUR COURTESY AND TIME, YOUR HONOR.

 7            THE COURT:  MS. TUCHER.

 8            MS. TUCHER:  THANK YOU, YOUR HONOR.

 9            ON THE THRESHOLD QUESTION OF THE

10    TIMELINESS OF THEIR MOTION I JUST WANT TO MAKE ONE

11    QUICK POINT.

12            APPLE'S WITNESSES, THE APPLE EMPLOYEES

13    WHO WERE CALLED TO TESTIFY IN THIS TRIAL ARE

14    ALREADY ON AND OFF THE STAND.  AND SAMSUNG HAS YET

15    TO SERVE OR TO DRAFT ADVERSE INFRINGEMENT

16    INSTRUCTION.

17            SO IT DOES SEEM TO ME THAT IT IS TO LATE

18    FOR THEM TO BE RAISING THIS POINT, AND IT SEEMS TO

19    ME UNFAIR TO HOLD THEM TO THE STRATEGIC POINT THEY

20    MADE TO ARGUE FOR A CERTAIN TRIGGER DATE MONTHS AGO

21    WHEN WE FIRST FILED THE MOTION.

22            BUT IF YOUR HONOR INTENDS TO ADDRESS THE

23    MOTION ON ITS MERITS --

24            THE COURT:  I DO WANT TO HEAR YOUR

25    ARGUMENTS ON THAT, BUT LET ME EXPLORE A COUPLE
```

```
1     ISSUES ON TIMELINESS WITH YOU.

2            SHE KIND OF HAS A POINT, SHE'S ASKING FOR

3     AN ADVERSE INSTRUCTION.  AREN'T THE RULES FAIRLY

4     CLEAR THAT JURY INSTRUCTIONS ARE ALL OPEN, FAIR

5     GAME, UNTIL BASICALLY THE JURY IS CHARGED?  HOW DO

6     I AVOID THAT PROBLEM?

7            MS. TUCHER:  THE PARTIES RENDER AN ORDER

8     FROM JUDGE KOH TO SERVE ON EACH OTHER TO NEGOTIATE

9     AND THEN TO FILE WITH THE COURT OUR INSTRUCTIONS.

10           WE DID THAT SEVERAL WEEKS AGO.  WE ARE

11    NOW DOING IT AGAIN BECAUSE, AS YOU CAN IMAGINE,

12    THERE ARE STILL DISPUTES TO BE WORKED OUT, A LOT OF

13    MOVING PARTIES.

14           SO MS. ESTRICH IS CORRECT THAT WE ARE

15    STILL GOING TO BE SERVING AND FILING ADDITIONAL

16    INSTRUCTIONS ON EACH OTHER.  BUT THE FIRST DATE FOR

17    THAT TO HAPPEN HAS ALREADY PASSED.  AND THAT WAS

18    BEFORE SAMSUNG DECIDED THAT THEY WANTED TO SEEK AN

19    ADVERSE INSTRUCTION AGAINST APPLE.

20           THE COURT:  ALL RIGHT.

21           LET'S TURN TO THE MERITS HERE.

22           IT DOES SEEM SOMEWHAT SURPRISING THAT

23    SAMSUNG COULD BE REASONABLY APPRISED OF THE

24    POSSIBILITY OF LITIGATION AND APPLE COULD NOT.

25           IS THERE BASIC RESPONSE TO THAT CONCERN
```

```
 1    THAT YOU OUGHT TO HAVE UNDERSTOOD OR HAD A

 2    REASONABLE BASIS TO BELIEVE THAT THEY WERE GOING TO

 3    MAKE CERTAIN CHANGES TO AVOID THIS LITIGATION

 4    ENTIRELY; IS THAT BASICALLY THE POINT YOU ARE

 5    MAKING?

 6         MS. TUCHER:  THAT IS OUR BASIC POINT.

 7    NOT THAT WE NECESSARILY UNDERSTOOD THAT THEY WOULD

 8    BUT THAT WE WERE IN NEGOTIATIONS WITH THEM.  WE

 9    WERE THEIR LARGEST -- WE ARE THEIR CUSTOMER AT THAT

10    TIME.  WE BOUGHT BILLIONS OF DOLLARS OF MATERIAL

11    FROM THEM, COMPONENTS FOR THE PRODUCTS.

12         AND THE PARTIES MET MONTHLY, JULY,

13    AUGUST, SEPTEMBER, OCTOBER, NOVEMBER -- THROUGH

14    NOVEMBER.  THEY WERE MEETING MONTHLY TO TALK ABOUT

15    OUR ALLEGATIONS OF THEIR INFRINGEMENT.

16         THERE'S A REASON THAT WE BELIEVE IT'S

17    APPROPRIATE FOR APPLE TO RELY ON THAT AND NOT FOR

18    SAMSUNG TO.

19         AND I WANT TO BE CLEAR, WE ARE NOT ASKING

20    FOR A DIFFERENT STANDARD.  APPLE IS PREPARED FOR

21    YOU TO JUDGE APPLE'S CONDUCT BY EXACTLY THE SAME

22    STANDARD THAT YOU JUDGED SAMSUNG'S CONDUCT.  IT'S

23    THAT THE FACTS ARE SO PROFOUNDLY DIFFERENT THAT YOU

24    REACH A DIFFERENT RESULT.

25         SO ON THE SPECIFIC QUESTION OF THE
```

```
1     TRIGGER DATE, I HAVE A DOCUMENT I WANTED TO SHARE

2     WITH YOU.  THIS IS A TRIAL EXHIBIT, IT'S EXHIBIT

3     NUMBER 195.  ALTHOUGH IT IS MARKED AS CONFIDENTIAL,

4     IT IS ONE THAT SAMSUNG HAS TOLD JUDGE KOH IN A

5     FILING THAT IT WILL NOT BE MOVING SO I DON'T

6     BELIEVE IT NEEDS TO BE TREATED AS CONFIDENTIAL.

7              IF WE START ON THE SECOND PAGE, SINCE

8     THIS IS AN E-MAIL STRING, YOU SEE A SAMSUNG

9     CUSTODIAN E-MAILING IN OCTOBER OF 2010 WITH REGARD

10    TO BOUNCING.  THIS IS THE '381 PATENT THAT WAS IN

11    THE AUGUST PRESENTATION.

12             THE SAMSUNG CUSTODIAN SAYS, "COMPARED TO

13    OUR COMPETITOR'S PRODUCT, YOU KNOW WELL WHICH ONE"

14    AND THEN THERE'S AN EMOTICON FOR CRYING.  "IT IS

15    STILL NOT SATISFACTORY."

16             THE TABLET THAT SAMSUNG WAS DEVELOPING IN

17    OCTOBER 2010 WAS STILL NOT SATISFACTORY BECAUSE

18    IT'S BOUNCE FEATURE WASN'T AS GOOD AS APPLE.

19             AND YOU SEE ON THE FRONT PAGE THE

20    RESPONSE TO THIS CONCERN AT SAMSUNG, "WITH REGARDS

21    TO BOUNCE, WE USE THE MASS SPRING DAMPER MODEL

22    WHICH WAS MODELLED AFTER THE ACTUAL PHYSICAL EFFECT

23    AND OBTAINED THE BOUNCE EFFECT THAT IS SIMILAR TO

24    THE IPAD."

25             THIS IS WHAT SAMSUNG WAS DOING IN
```

1    OCTOBER 2010.  SO APPLE WAS NEGOTIATING WITH

2    SAMSUNG, APPLE THOUGHT THAT IT'S STATUS AS THE

3    LARGEST CUSTOMER MIGHT VERY WELL RESULT IN SAMSUNG

4    CHANGING ITS PRODUCTS AND IT DIDN'T.

5             BUT IT'S BECAUSE OF THE DIFFERENT FACTUAL

6    CIRCUMSTANCES THAT WE THINK THE SAME LEGAL STANDARD

7    PRODUCES A DIFFERENT RESULT.

8             I ALSO WANT TO BE CLEAR HOWEVER THAT I

9    DON'T THINK ANYTHING RIDES IN THIS CASE ON THE

10   DIFFERENCE BETWEEN AN AUGUST AND AN APRIL TRIGGER

11   DATE BECAUSE SAMSUNG HAS PROVEN ABSOLUTELY NO

12   DESTRUCTION OF DOCUMENTS.  THAT'S THE BIG

13   DIFFERENCE.

14            THEY'RE A SERIAL SPOLIATOR.  EVERY TWO

15   WEEKS, TO THIS DAY, WE LEARN THIS MORNING THEY

16   CONTINUE TO DESTROY E-MAILS.  APPLE DOES NOT.

17   APPLE HAS A CULTURE OF RETENTION.  THEIR SERVERS

18   AND SYSTEMS ALLOW AND SUPPORT RETAINING E-MAIL

19   INDEFINITELY.

20            THEY ALSO HAVE AN ACTIVE DOCUMENT

21   COLLECTION AND RETENTION PROGRAM RUN BY APPLE'S

22   IN-HOUSE LEGAL DEPARTMENT.  THEY USE THAT IN THIS

23   CASE AND THEY USE IT IN OTHERS.

24            WHY ARE OTHER CASES RELEVANT?  WELL,

25   BECAUSE WHEN APPLE GOES AND DOES A COLLECTION IN

1    OTHER CASES, IT USUALLY COLLECTS ALL WORK RELATED

2    E-MAILS FROM THE KEY CUSTODIANS.

3           SO WHEN WE LISTEN TO WHICH CUSTODIAN

4    SAMSUNG CLAIMS TO BE MOST CONCERNED ABOUT THEY

5    CITED STEVE JOBS.  APPLE HAS STEVE JOB'S E-MAILS

6    AND THEY HAD THEM BEFORE AUGUST 2010.

7           SO THE NUMBER OF E-MAILS PRODUCED IN THIS

8    CASE FROM STEVE JOBS IS NOT BECAUSE OF SPOLIATION,

9    IT'S BECAUSE OF THE SEARCH TERMS THAT THE PARTIES

10   AGREED WERE APPROPRIATE.  THAT'S ALL DISCLOSED IN

11   OUR -- WAY BACK LAST FALL WHAT SEARCH TERMS WE WERE

12   GOING TO USE, WHAT DATE CUTOFFS WE WERE GOING TO

13   USE.  AND IF THIS IS NOT A DISCOVERY MOTION, THIS

14   IS NOT THE TIME TO BE REVISITING THAT.

15          SO THERE'S ABSOLUTELY NO EVIDENCE THAT

16   THERE ARE ANY STEVE JOBS E-MAILS DESTROYED.  SCOTT

17   FOERSTAL, HE WAS A WITNESS IN THE CASE LAST WEEK.

18   HE RUNS THE IOS SIDE AT APPLE.  HE WAS UNDER

19   MULTIPLE DOCUMENT RETENTION NOTICES FROM,

20   LITERALLY, DOZENS OF CASES.  HIS FILES FROM HIS OWN

21   COMPUTER HAD BEEN COLLECTED HAD BEEN PRESERVED AND

22   SAMSUNG HAS ABSOLUTELY NO EVIDENCE OF ANY

23   DESTRUCTION OF MR. FOERSTAL'S E-MAILS.

24          THE COURT:  ARE ANY OF THE APPLE E-MAIL

25   CUSTODIANS SUBJECT TO THE CAPACITY CONSTRAINTS OR

```
1     OTHER CONSTRAINTS THAT WOULD EFFECTIVELY REQUIRE

2     THEM TO DELETE OR DESTROY E-MAIL IN ORDER TO

3     MAINTAIN AN INBOX OR SET OF FILE FOLDERS?

4          MS. TUCHER:  NO, YOUR HONOR.

5          WHAT WE SHOWED WITH THE KELLERMAN

6     DECLARATION IS THAT APPLE CUSTODIAN, APPLE

7     EMPLOYEES RECEIVE A NOTICE SAYING IF THEIR E-MAIL

8     INBOX IS TOO LARGE, THEY NEED TO MOVE E-MAILS OFF

9     THE SERVER.  THEY DON'T HAVE TO DESTROY THEM, THEY

10    CAN PUT THEM ON THE HARD DRIVES.

11         BUT WE ALSO IN THE KELLERMAN DECLARATION

12    EXPLAINED THAT AS SOON AS AN EMPLOYEE IS SUBJECT TO

13    A DOCUMENT RETENTION OBLIGATION FOR ANY CASE, THEY

14    NO LONGER RECEIVE THOSE NOTICES.

15         AND WE ALSO EXPLAINED IN OUR OPPOSITION

16    PAPERS, AND I'M PREPARED TO TALK ABOUT ANY OTHER

17    CUSTODIANS TODAY IF YOU WANT TO, THAT THE

18    CUSTODIANS SAMSUNG HAS RAISED WERE UNDER DOCUMENT

19    RETENTION NOTICE OBLIGATIONS FOR VARIOUS OTHER

20    CASES.

21         SO THEY DIDN'T RECEIVE THAT E-MAIL BEFORE

22    AUGUST 2010.

23         THE COURT:  ALL RIGHT.

24         MS. TUCHER:  THERE WAS AN ATTACK ON MS.

25    KELLERMAN IN THE REPLY PAPERS I WANTED TO ADDRESS.
```

```
 1    SHE WAS OUR 30(B)(6) WITNESS ON DOCUMENT RETENTION.

 2              AND IN THE REPLY PAPERS SAMSUNG TELLS US

 3    WELL, YOU KNOW, SHE SAID IN HER TESTIMONY SHE CAN'T

 4    SPEAK SPECIFICALLY TO WHAT SHE DID IN THIS CASE.

 5              THAT IS UNFORTUNATELY SUCH A

 6    MISCHARACTERIZATION OF THE EVIDENCE THAT I WANT YOU

 7    TO SEE THE DEPOSITION THAT THEY QUOTED BUT DIDN'T

 8    PROVIDE YOU A COPY OF.

 9              SO IMMEDIATELY AFTER MS. KELLERMAN SAID I

10    CAN'T SPEAK SPECIFICALLY TO WHAT WE DID IN THIS

11    CASE SHE SAYS, I CAN TELL YOU IN GENERAL WHAT WE DO

12    WHICH IS A PRACTICE THAT WOULD HAVE BEEN APPLIED TO

13    THIS CASE.

14              AND SAMSUNG FOLLOWED UP WITH THE

15    QUESTION, TO CLARIFY, DO YOU KNOW FOR SURE THAT

16    THESE STEPS TOOK PLACE IN THIS CASE?  HER ANSWER

17    WAS AN UNEQUIVOCAL, YES.

18              SAMSUNG SHOULD HAVE TOLD YOU THAT WHEN

19    THEY FILED THEIR REPLY BRIEF AT 7:00 THIS MORNING.

20              SAMSUNG ALSO IN THEIR REPLY BRIEF, AND

21    AGAIN IN THEIR STATEMENT TODAY, SAID

22    MS. KELLERMAN'S DECLARATION IN SUPPORT OF OUR

23    OPPOSITION SAYS THERE IS NO FOLLOW-UP TO THE

24    DOCUMENT RETENTION.

25              THAT'S SIMPLY WRONG.  IF YOU LOOK AT
```

```
 1    PARAGRAPH 4 OF MS. KELLERMAN'S DECLARATION SHE SAYS

 2    THAT AFTER SERVING DOCUMENT RETENTION NOTICES,

 3    COUNSEL GOES AND INTERVIEWS THE EMPLOYEES IN ORDER

 4    TO DO A COLLECTION, THAT COUNSEL CONFIRMS THE

 5    INDIVIDUAL RECEIVED THE DOCUMENT RETENTION NOTICE

 6    AND CONFIRMS THAT THE INDIVIDUAL UNDERSTANDS HIS OR

 7    HER DOCUMENT RETENTION OBLIGATIONS.

 8            THERE'S ALSO EVIDENCE ALONG WITH THE

 9    PAPERS THAT SAMSUNG FILED ORIGINALLY THAT MANY OF

10    THESE CUSTODIANS RECEIVED NOT ONE BUT MULTIPLE

11    REPETITIVE DOCUMENT RETENTION NOTICES IN THIS CASE.

12            THE COURT:  I WANT TO GO BACK TO THE

13    POINT YOU RAISED IN YOUR PAPERS WHICH YOU CITED

14    PROFESSOR SUNSTEIN'S ARTICLE.

15            I SHOULD NOT ADMIT PUBLICLY TO NOT

16    COMPLETELY UNDERSTANDING EVERYTHING PROFESSOR

17    SUNSTEIN SAID, BUT CAN YOU EXPLAIN TO ME AS BEST

18    YOU CAN THE OMISSION, COMISSION, THE DICHOTOMY THAT

19    PROFESSOR SUNSTEIN SUGGESTS IN THAT ARTICLE THAT

20    YOU POINT TO IN ORDER TO DIFFERENTIATE THE

21    RESPECTIVE POSITIONS OF THE PARTIES.

22            MS. TUCHER:  I'M NOT A LAW PROFESSOR SO

23    I'M GOING TO JUST DO IT IN MY OWN WORDS.

24            WE ARE CREATURES OF HABIT.  IT'S A

25    QUESTION OF WHAT YOU HAVE TO TAKE INITIATIVE TO DO.
```

```
 1            AT SAMSUNG, EMPLOYEES HAVE TO TAKE
 2    INITIATIVE IN ORDER TO PRESERVE E-MAILS.  IF
 3    SAMSUNG EMPLOYEES DON'T SOMETHING AFFIRMATIVE TO
 4    SAVE THOSE E-MAILS, THOSE E-MAILS ARE DESTROYED.
 5            SO THEY PROBABLY DON'T GET AROUND TO IT
 6    FOR WHATEVER, COLLECTIONS REASONS.  THE EVIDENCE WE
 7    DISCUSSED MONTHS AGO SHOW THAT VERY IMPORTANT
 8    CUSTODIANS DIDN'T PRESERVE E-MAILS OR TAKE THOSE
 9    AFFIRMATIVE STEPS.
10            THAT'S THE REQUIREMENT THAT THE SAMSUNG
11    EMPLOYEES OPT-IN TO DOCUMENT PRESERVATION.  IF THEY
12    DON'T DO ANYTHING THERE WILL BE NO DOCUMENT
13    PRESERVATION.
14            AT APPLE IF AN EMPLOYEE DOESN'T DO
15    ANYTHING, DOCUMENTS ARE PRESERVED BECAUSE APPLE
16    DOESN'T ELIMINATE E-MAILS EVERY TWO WEEKS OR
17    TWO MONTHS.
18            SO ONLY WHEN AN EMPLOYEE AFFIRMATIVELY
19    AND PERSONALLY DELETES THE E-MAIL DOES IT JUST
20    DISAPPEAR.
21            THE COURT:  SO I TAKE IT THOUGH THAT YOU
22    WOULD NOT REST ON THE OR RELY UPON THE DICHOTOMY OR
23    THAT DIFFERENCE STRUCTURALLY IN ORDER TO
24    DISTINGUISH YOUR POSITION FROM SAMSUNG.
25            THE FACT OF THE MATTER IS EMPLOYEES,
```

```
1    PEOPLE DO ALL OTHER SORTS OF THINGS WITH THEIR

2    E-MAIL AFFIRMATIVELY, RIGHT?

3            MS. TUCHER:  THAT'S RIGHT, YOUR HONOR.

4            SO RIGHT IN THE SENSE THAT WE ARE NOT

5    RELYING SOLELY ON THAT.  WE DO THINK IT'S AN

6    IMPORTANT DIFFERENCE.  WE THINK THE FACT THAT THEY

7    AUTOMATICALLY DESTROY RELEVANT E-MAIL UNLESS

8    SOMEBODY DOES SOMETHING MATTERS.  AND THE FACT THAT

9    WE DON'T DESTROY ANYTHING UNLESS AN EMPLOYEE DOES

10   SOMETHING.  THE REASON THAT MATTERS IS BECAUSE THEY

11   DON'T SHOW A SINGLE EMPLOYEE DESTROYING.

12           YOU ASKED WHEN I WAS HERE SEVERAL -- A

13   COUPLE MONTHS AGO ON THE MIRROR IMAGE MOTION, WHAT

14   DOES THE DEPOSITION TESTIMONY SHOW?  AND THE

15   DEPOSITION TESTIMONY IN SAMSUNG'S CASE SHOWED THAT

16   EMPLOYEES DIDN'T KNOW ABOUT SOME OF THE PROVISIONS.

17   IN FACT, THEIR 30(B)(6) DEPONENT DIDN'T KNOW ABOUT

18   SOME OF THE PROVISIONS OF HOW TO SAVE THE E-MAIL

19   THAT THEY CAME INTO THIS COURT THEN AND BRAGGED

20   ABOUT.

21           I LOOKED FOR DEPOSITION TESTIMONY, WE

22   LOOKED FOR DEPOSITION TESTIMONY ON THE CUSTODIANS

23   THAT THEY COMPLAIN MOST LOUDLY ABOUT.  THEY WEREN'T

24   ASKED ABOUT THAT FOR THE MOST PART.

25           THE ONE CUSTODIAN WHERE I DID FIND
```

```
 1      DEPOSITION TESTIMONY IS MR. LEMAY, AND THAT'S
 2      BECAUSE I WAS LOOKING FOR SOME EVIDENCE EVEN THOUGH
 3      THEY HADN'T PRODUCED ANY OF E-MAILS ACTUALLY BEING
 4      DESTROYED.
 5              AND MR. LEMAY THEIR ONE PERSON WHERE I
 6      COULD FIND SOME -- AND THIS IS NOT IN THE RECORD,
 7      SO I CAN THE SHARE IT WITH YOU IF YOU WOULD LIKE OR
 8      I CAN JUST TELL YOU, THAT WHEN HE WAS ASKED HE SAID
 9      APPLE'S DOCUMENT COLLECTION AGENCY, HE WAS ASKED,
10      DID SOMEBODY -- SORRY.  SOMEBODY IN THIS CASE IS
11      APPLE'S DOCUMENT COLLECTION AGENCY.  AND HE WAS
12      ASKED DID SOMEBODY COME FOR THIS LITIGATION AND
13      COLLECT EVERYTHING FROM YOUR COMPUTER?  AND HIS
14      ANSWER WAS, I COULDN'T TELL YOU WHAT SPECIFIC
15      LITIGATION, IT'S HAPPENED MANY TIMES.
16              SO WHEN WE LOOK FOR ANY SPECIFIC EVIDENCE
17      FROM ANY SPECIFIC CUSTODIAN, WE COME UP WITH THINGS
18      LIKE ALL OF MR. JOB'S E-MAILS ARE SAVED,
19      MR. LEMAY'S E-MAILS ARE COLLECTED BY THE AGENCY, WE
20      COME UP WITH THE FACT THAT THESE OTHER CUSTODIANS,
21      IVAN STRINGER AND FOERSTAL, THEIR DOCUMENTS HAVE
22      BEEN COLLECTED.  WE HAVE ABSOLUTELY NO EVIDENCE OF
23      ANY DOCUMENT BEING DESTROYED.
24              SO WHEN WE WERE HERE ARGUING FOR
25      SPOLIATION SANCTION AGAINST THEM, WE WERE ABLE TO
```

1    SAY, ZERO E-MAILS FROM W.P. HONG.  HE SHOULD HAVE

2    PRODUCED THE APRIL 17TH E-MAIL SPECIFICALLY ON THIS

3    SUBJECT.  HE SHOULD HAVE PRODUCED RESPONSES TO THE

4    APRIL 17TH E-MAIL BECAUSE IT HAD TO DO WITH

5    COMPARING SAMSUNG PRODUCTS UNDER DEVELOPMENT TO

6    APPLE PRODUCTS.  CLEARLY RELEVANT.

7            WE KNEW FROM OTHER CUSTODIANS THAT THE

8    E-MAIL HAD BEEN ISSUED APRIL 17TH.  WE KNEW HE

9    DIDN'T PRODUCE IT BECAUSE HE PRODUCED NOTHING.  WE

10   KNEW HE PRODUCED NO RESPONSES TO THAT E-MAIL.

11           WE COULD SAY THESE ARE THE SPECIFIC

12   DOCUMENTS HE SHOULD HAVE HAD THAT HE DIDN'T HAVE

13   THAT HE DIDN'T PRODUCE.

14           THAT'S THE KIND OF SHOWING THAT THEY HAVE

15   NOT MADE IN THIS CASE AND THAT WE DON'T THINK THEY

16   COULD MAKE IN THIS CASE.

17           WE'VE DONE EVERYTHING WE CAN TO SHOW THAT

18   THEY WON'T BE ABLE TO MAKE IT BECAUSE OF OUR

19   SYSTEMS.  BUT FRANKLY, IT'S THEIR BURDEN OF PROOF.

20           THEY LIKE TO CITE MICRON.  IN MICRON

21   THERE WERE SHREDDING PARTIES AND THE QUESTION WAS,

22   DOES IT MATTER WHETHER THE SHREDDING -- WHEN THE

23   SHREDDING PARTY HAPPENED?  THERE WERE NO SHREDDING

24   PARTIES AT APPLE.  THERE'S NOTHING LIKE THAT IN

25   THEIR ARGUMENT, THAT'S THE DIFFERENCE.

```
 1              THE COURT:  I HAVE TO CUT YOU OFF THERE.

 2              I THINK I UNDERSTAND YOUR POSITIONS,

 3    UNLESS YOU HAVE A FINAL POINT TO MAKE.

 4              MS. TUCHER:  LOTS OF POINTS, LOT OF

 5    CUSTODIANS, BUT I THINK YOU UNDERSTAND.

 6              THANK YOU, YOUR HONOR.

 7              THE COURT:  MS. ESTRICH, I WILL GIVE YOU

 8    THE FINAL WORD.

 9              MS. ESTRICH:  AND I WILL BE VERY BRIEF,

10    YOUR HONOR.

11              FIRST AS TO MS. KELLERMAN.  THE QUOTE WE

12    GAVE YOU WAS ACCURATE.  I CAN'T SPEAK TO

13    SPECIFICALLY WHAT WE DID IN THIS CASE, BUT IF YOU

14    LOOK AGAIN AT HER DECLARATION, AT NO POINT DOES SHE

15    ADDRESS SPECIFICALLY WHAT WAS DONE IN THIS CASE.

16              THE COMMENT MS. TUCHER REFERRED TO SHE

17    SAID, AFTER A LEGAL HOLD ISSUES COUNSEL MAY CONDUCT

18    INDIVIDUAL DOCUMENT INTERVIEWS.  TYPICALLY SUCH A

19    COLLECTION WOULD INCLUDE.

20              MS. KELLERMAN IS VERY CAREFUL, IT'S NOT

21    SIMPLY HER DEPOSITION, IN HER DECLARATION TO MAKE

22    NO REPRESENTATIONS ABOUT PARTICULAR MEETINGS THAT

23    WERE HELD, PARTICULAR CUSTODIANS THAT WERE

24    INTERVIEWED AND THE LIKE.

25              SO I WOULD SIMPLY SAY THAT WE FAIRLY
```

1      REPRESENTED WHAT SHE SAID.

2                SECOND, THESE WERE LICENSING

3      NEGOTIATIONS, YOUR HONOR.  A GREAT DEAL IS MADE OF

4      THE POINT THAT WHILE THERE WERE MEETINGS GOING ON

5      WE WERE DEVELOPING PRODUCTS.  WE WERE.  THEY WERE A

6      BIG CUSTOMER OF OURS.  I THINK THERE WAS CERTAINLY,

7      I DON'T WANT TO GET INTO THE DETAILS OF

8      DISCUSSIONS, BUT THERE WAS CERTAINLY HOPE ON BOTH

9      SIDES THAT THESE LICENSING NEGOTIATIONS WOULD REACH

10     A SOLUTION IN WHICH BOTH PARTIES WOULD GO ABOUT

11     CONTINUING TO MAKE THEIR PRODUCTS.

12                SO THE FACT THAT IN OCTOBER A SAMSUNG

13     ENGINEER WAS LOOKING AT AN APPLE PATENT DOESN'T

14     MEAN THAT SAMSUNG KNEW IT WAS GOING TO BE

15     INFRINGING.

16                THIS IS IN THE MIDST OF NEGOTIATIONS.

17     HAD THE NEGOTIATIONS SUCCEEDED IN SOME KIND OF

18     LICENSING AGREEMENT THAT COVERED THAT PATENT, YOU

19     AND I AND MS. TUCHER AND JUDGE KOH WOULD NOT BE

20     HERE TODAY.  SO THAT'S HARDLY PROOF.

21                APPLE CLAIMS THEY HAD A CULTURE OF

22     RETENTION WHERE WE HAD A CULTURE OF DELETION.

23                I WOULD SUBMIT, YOUR HONOR, THAT THEY

24     SENT OUT PERIODIC NOTICES THAT CREATED, IF WE WANT

25     TO PLAY THIS GAME, A CULTURE OF ELIMINATION.

```
 1            AND PROFESSOR SUNSTEIN IS A FRIEND OF

 2    MINE, AND I THINK I UNDERSTAND HIS ARGUMENT ABOUT

 3    LIBERTARIAN PATERNALISM.  BUT THERE IS NO CASE

 4    AUTHORITY SAYING THAT AS A MATTER OF LAW THERE IS A

 5    DIFFERENCE BETWEEN TURNING SOMETHING ON AND TURNING

 6    SOMETHING OFF.

 7            FINALLY, AS TO THE PROOF THAT DOCUMENTS

 8    WERE ACTUALLY DESTROYED, MS. TUCHER OFFERS THEIR

 9    PROOF WAS THAT THEY COULD SAY, WELL, WE GOT THIS

10    FROM THIS PRODUCTION SO WE KNOW YOU WERE ON THE

11    E-MAIL, AND YOU DIDN'T PRODUCE IT.

12            AGAIN, AND RESPECTFULLY GIVEN THE HOUR

13    THIS MORNING, WE REPRODUCED OUR CHARTS.  WE

14    ACCEPTED THAT EVERY ERROR THEY SAID WE MADE WITHOUT

15    ARGUING ABOUT IT, WE MADE.

16            SO ON CERTAIN PEOPLE THEY SAID WELL,

17    THERE WAS A GOOD REASON THAT YOU DIDN'T GET

18    DOCUMENTS FROM HIM.  FINE, WE TOOK THEM OUT.  ON

19    CERTAIN PEOPLE THEY SAID, YOU KNOW, YOUR

20    NONCUSTODIAL NUMBERS ARE OFF, YOURS ARE TOO HIGH.

21    FINE, WE REDUCED THEM.

22            AS YOU WILL SEE IN OUR REPLY BRIEF, EVEN

23    TAKING EVERY ONE OF THEIR CORRECTIONS, THE NUMBERS

24    CONTINUE TO PROVE EXACTLY WHAT THEIR NUMBERS PROVE.

25    THAT IS THE CUSTODIAL PRODUCTIONS FROM KEY
```

1    INDIVIDUALS WERE DRAMATICALLY LOWER THAN

2    NONCUSTODIAL PRODUCTIONS.

3            REACHING THE CONCLUSION THAT THEY'VE

4    ARGUED YOU MUST HAVE DESTROYED, ELIMINATED RELEVANT

5    E-MAILS.

6            AGAIN, THEY SAID HERE ARE PEOPLE IN OUR

7    CASE WHO HAVEN'T PRODUCED MANY AND SHOULD.  SO WE

8    MADE A LIST OF 19 PEOPLE WHO HADN'T PRODUCED MANY

9    AND SHOULD HAVE.

10            THEY SAID SIX INNOCENT EXPLANATIONS OR

11    FIVE INNOCENT EXPLANATIONS.  WE TOOK THEM OUT,

12    REDID THE LIST, AND ONCE AGAIN YOU WILL SEE MIRROR

13    PROOF FROM BOTH SIDES AS TO POTENTIAL INADEQUACIES

14    OF PRODUCTION.

15            NOW AT THE END OF THE DAY BOTH SIDES HAVE

16    PRODUCED MILLIONS AND MILLIONS OF DOCUMENTS.  AND I

17    THINK IT WOULD BE ENTIRELY FAIR TO CONCLUDE THAT

18    NEITHER SIDE, WHATEVER ELSE WE MAY BE SUFFERING

19    FROM, IS SUFFERING FROM A LACK OF EVIDENCE TO USE.

20            BUT IF THEY CAN CLAIM, ON THE BASIS OF

21    THOSE COMPARISONS, PROOF THAT WE DELETED EVIDENCE,

22    THEN WE I THINK ARE ENTITLED TO USE THE SAME SORT

23    OF EVIDENCE TO MAKE THE SAME SORT OF CLAIMS.

24            AND I THANK YOU YOUR HONOR FOR YOUR

25    PATIENCE.  AND AGAIN, I APOLOGIZE FOR THE 7:00 A.M.

1    SUBMISSION BUT IT WAS A 12:30 OPPOSITION AND WE ARE

2    GRATEFUL FOR THE ATTENTION YOU'VE GIVEN.

3                 THE COURT:  ALL RIGHT.

4                 WE WILL HAVE TO LEAVE IT THERE.

5                 THANK YOU VERY MUCH.  YOU WILL HAVE AN

6    ORDER FROM ME SHORTLY.

7                 HAVE A GOOD MORNING.

8                 MS. ESTRICH:  THANK YOU, YOUR HONOR,

9        YOU TOO.

10                (WHEREUPON, THE PROCEEDINGS IN THIS

11   MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                      **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    /S/
      _____
25    SUMMER A. FISHER, CSR, CRR
      CERTIFICATE NUMBER 13185          DATED: 8/7/12