HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OBJECTIONS AND RESPONSES TO OBJECTIONS REGARDING PROPOSED EXAMINATION MATERIALS FOR TERRY MUSIKA, JOHN HAUSER, AND EDWARD SITTLER AND DEPOSITION DESIGNATIONS FOR DONG HOON CHANG, JUNWON LEE, AND TIM BENNER**<br><br>Trial:  August 10, 2012<br>Time:  8:30 a.m.<br>Place:  Courtroom 1, 5th Floor<br>Judge:  Hon. Lucy H. Koh |

## I. TERRY MUSIKA – APPLE'S OBJECTIONS TO SAMSUNG'S EXHIBITS

**UniRam *Trial Transcript*:**  Samsung's use of the *UniRam* trial transcript during its cross-examination of Mr. Musika violates Rules 402 and 403 of the Federal Rules of Evidence.  In granting Samsung's motion in limine #4, the Court "exclude[d] reference to findings or rulings in other proceedings not involving the patents at issue in this case."  (Dkt. No. 1267 at 4:15-16.)  The *UniRam* case is a seven-year old trade secrets case in which Mr. Musika testified.  It arose under California state law and involved different parties, different technology, different factual issues, and different legal standards.

*DX757*.  Apple objects to DX757 as violating Federal Rules of Evidence 402 and 403.  The Apple royalty chart marked as DX757 has no relevance to Mr. Musika's analysis of the damages caused by Samsung's infringement of Apple's intellectual property.  Neither Mr. Musika nor Samsung's expert referred to it in their damages analyses.  Further, both experts concluded that there are no comparable licenses covering the asserted Apple intellectual property, which is consistent with the 30(b)(6) testimony of both sides.  The Court has already excluded the Made-for-iPod license (Dkt. No. 1157 at 12:25-27) and the "Fingerworks" acquisition (Dkt. No. 1267 at 3:25-26) as non-comparable arrangements.  The same reasoning applies here.

## II. TERRY MUSIKA – APPLE'S RESPONSE TO SAMSUNG'S OBJECTIONS

*PX25C*.  PX25C is a summary of Apple's damages prepared by Terry Musika.  Pages 3-15 reflect identical methods and identical assumptions and are in essentially the same format (with changes to reflect its use as a trial exhibit) as the exhibits to Mr. Musika's March 22 and May 8, 2012 supplemental report.

The final numbers changed because updated financial results from April to June 2012 were included and because Apple has narrowed its claims.[1]  PX25 also was the subject of two stipulations.  The first resolved all objections "to the updated versions [of PX25] on the ground

---

[1] Page 1 is a cover page. Page 2 is a table summarizing damages on one page, consistent the text of Mr. Musika's report.  The final page contains what was previously provided as an exhibit to Musika's May 8 supplemental report, but with a column containing text removed.  Apple offered to Samsung three times over the last seven days to return this page to an identical format if Samsung preferred.  Apple will have an alternative page available for the Court.

that they include Updated Financial Results or Changes to the Intellectual Property Claims." (Dkt No. 1554 ¶ 2.) That is what occurred with PX25C. The second removed certain pages from PX25 as part of an effort to reduce sealing requests. (Dkt. No. 1597 ¶ 6.)

Samsung's objections fall wide of the mark. PX25C is not hearsay, but a proper summary of Mr. Musika's damages calculations under FRE 1006 and 703. *See United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011) (proponent of summary evidence must show underlying materials are admissible and were made available for inspection). The sources are voluminous spreadsheets and financial materials. All are admissible or available to Mr. Musika as party admissions under FRE 801(b) or FRE 703. *See Pham v. ComUnity Lending, Inc.*, No. C 08-00201 JW, 2011 U.S. Dist. LEXIS 154255, at *9-10 (N.D. Cal. June 6, 2011) ("Rule 703 permits experts to render opinions based on hearsay so long as the hearsay is of the type reasonably relied on by experts in that field."). Further, the underlying information has been available to Samsung since March, except where Samsung produced updated information thereafter.

Samsung's claim that PX26C is untimely also is misguided, as the Court's August 2 stipulated order resolves the issue. (Dkt. No. 1554.) Samsung mistakenly claims that Apple withheld the calculations supporting Exhibit 25C until Tuesday, but this is incorrect. Apple provided its damages calculation for Q2 2012 with the version of PX25 and updated exhibits served on July 28, 2012 – *i.e., before* Samsung stipulated to the updated exhibits. The identical figures for April, May and June of 2012 carry forward without change into PX25C. (*Compare* 07/28/2012 Email from R. Barajas to Counsel, *with* 08/07/2012 Email from E. Olson to A. Alden, under headings April, May and June 2012.)[2]

Apple's disclosures also were appropriate under Rule 26(e). Apple's answers satisfied the rules regarding damages interrogatories. Apple provided a detailed description of its damages claims. It also objected and noted that it would provide an expert report with damages calculations, consistent with the Federal Rules and the scheduling order. *See Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162 (S.D.N.Y. 2004) ("Particularly in advance of an

---

[2] These materials contain capacity information that is subject to a pending sealing motion (Dkt. No. 1495), and have therefore been lodged with the Court.

1  exchange of expert reports, the purpose of damages interrogatories is not to inquire into every
2  specific factual detail that a party will rely on, but rather to determine the categories of damages
3  sought, the methodologies for calculating them, and the general types of evidence on which the
4  calculations are ultimately grounded."). Samsung's discovery violations explain all remaining
5  omissions. At the time that discovery closed, Samsung was in violation of the Court's January 27
6  order compelling production of financial information. The Court later granted Apple's motion for
7  sanctions on April 23. (Dkt. No. 880.) As a result, Apple received updated information on April
8  30 and supplemented its expert report on May 8, 2012, as provided by the Court's order.

9  *PDX34*. Samsung's objections to PDX34 (Musika's demonstratives) are resolved by the
10 Court's prior orders on the same subjects. Samsung's motion *in limine* #5 unsuccessfully sought
11 to exclude evidence of Samsung's discovery violations in connection with its production of
12 seriously flawed financial data. (Dkt. No. 1185-3 at 16-17.) The Court denied Samsung's
13 motion, stating that the Court's orders "call[] into doubt the veracity of the calculations and data
14 relied upon by Samsung in its damages calculations." (Dkt. No. 1267 at 5:7-10.)

15 The Court also denied Samsung's motion *in limine* #9 in relevant part. That motion
16 sought to exclude Mr. Musika's opinion that STA's stand-alone numbers do not reflect
17 Samsung's actual profit because they arise from Samsung's tax accounting. The Court explained
18 that Apple could show that the STA profit calculation was prepared for tax purposes, but
19 excluded "any argument that the tax arrangement with the United States government is a form of
20 tax evasion." (Dkt. No. 1267 at 5:18-21.) Mr. Musika's demonstratives follow the Court's
21 direction. They do not state that Samsung has improperly evaded taxes, but provide relevant
22 factual information regarding the tax purpose and effect of STA's financial reporting based on the
23 undisputed testimony of Samsung's financial witnesses. (2/29/2012 Sheppard Depo. at 123:5 to
24 124:17.) STA's "profit" figures derive from its tax strategy. Apple is entitled to explain this and
25 why it provides an incomplete basis for calculating damages.

26 **III.    JOHN HAUSER – APPLE'S RESPONSES TO SAMSUNG'S OBJECTIONS**
27 *PX30 (page 2).* Page 2 of PX30 lists the survey questions, animations, results and
28 calculations underlying Dr. Hauser's survey as a Rule 1006 exhibit. Samsung's objection that

1  this exhibit is hearsay ignores Rule 703, which allows an expert to offer opinions based on
2  inadmissible data "[i]f of a type reasonably relied upon by experts in the particular field in
3  forming opinions." Samsung's objection further ignores that an expert may disclose inadmissible
4  facts to the jury if their probative value outweighs any alleged prejudice. *Id.* Here, this is
5  precisely the type of data that survey experts rely upon in forming their opinions. The benefit of
6  having the jury understand the administration and results of the survey also outweighs any alleged
7  prejudice to Samsung of having the jury see the actual underlying data. Thus, balancing the
8  probative value against the alleged prejudice favors finding the underlying data admissible.

9  Alternatively, Apple proposes admitting page 1 of PX30 and excluding page 2.

10  **PDX33.4.** This demonstrative depicts the touchscreen features as they were provided to
11  the survey respondents. Because the feature associated with the '607 patent was included in the
12  survey, the demonstrative also depicts that feature even though no longer part of the case. Its
13  inclusion is not misleading because it is not labeled as associated with the '607 patent or any
14  other patent (in contrast to the other features). Its inclusion also is not inaccurate, as it was a
15  feature that was included in the survey and which was shown to the survey respondents. Indeed,
16  omitting the feature likely would have drawn an objection from Samsung that the demonstrative
17  was incomplete. Apple does not intend to discuss the '607 patent or other patents that have been
18  dismissed without prejudice in discussing this demonstrative.

19  **IV.    JOHN HAUSER – APPLE'S OBJECTIONS TO SAMSUNG'S EXHIBITS**

20  **SDX3920.001.** SDX3920.001 is misleading and misrepresents the exhibits. The
21  demonstrative purports to represent information from a consumer survey report, Smartphone
22  Market Study U.S., produced at APLNDC-Y0000028850-APLNDC-Y0000028945 as well as the
23  Hauser Report and Exhibits. But none of these documents reflects the information presented,
24  such that the exhibit is an improper and misleading "chimera" of attorney arguments. *E.g.*:

- The right of the slide lists touchscreen features that are not discussed in the documents cited on the slide;
- The left of the slide purports to rank attributes in the smartphone purchase decision, but the presentation in list format without the corresponding survey numbers suggests disparities that do not exist; and

- The heading implies that consumers selected these listed attributes as "important" when, in fact, they were given these attributes to consider.

***SDX3920.010.***  SDX3920.010 relies on information that is untimely. Samsung first disclosed the price premiums for the "Other Tested Features" on this demonstrative at 7:30 p.m. on August 8, 2012. These price premiums are the result of complex calculations using SAS software, and they must have been performed by an expert. Yet they were not included in any expert report. At this very late date, neither Apple nor Dr. Hauser can meaningfully verify the accuracy of these numbers. Although Samsung's demonstratives suggests that these numbers are analogous to Dr. Hauser's opinions concerning consumers' willingness to pay, their late identification without support offers no opportunity to assess that they were properly calculated.

## V.     EDWARD SITTLER

Mr. Sittler's testimony is necessary to address the August 6, 2012 trial testimony of Justin Denison that the Galaxy S i9000, Galaxy Ace, and Galaxy SII i9000 allegedly were not sold in the United States. (8/8/2012 Trial Tr. at 947:6-948:13; 961:15-19.) Mr. Sittler purchased or supervised the purchase of those phones in the United States. His testimony thus is probative, and this Court has already denied Samsung's request to exclude evidence related to two of these phones. (Dkt. No. 1267 at 2.)

Although Mr. Sittler was not disclosed in Apple's Supplemental Rule 26(a) Initial Disclosure, dated March 4, 2012, the omission was harmless. Fed. R. Civ. P. 37. Samsung had been on notice that Apple would present evidence to dispute Samsung's contention that several of its phones were not sold in the United States. Specifically, in response to Samsung's request that the Court exclude evidence related to the Galaxy S (i9000) and Galaxy Ace, *see* Dkt. No. 1189 at 25, counsel for Apple told the Court it has purchased the accused products in the United States and would present that evidence at trial. The Court then denied Samsung's request to exclude evidence related to these devices. (7/18/2012 Hearing Tr., 60:17-61:22; Dkt. No. 1267 at 2.) Apple disclosed Mr. Sittler as a possible witness on July 6, 2012. (Dkt. No. 1189-3.)

Samsung further argues that Mr. Sittler's testimony should be excluded because the subject of his intended testimony was not identified in Apple's responses to interrogatories or Rule 26(a) initial disclosures. But Samsung propounded no interrogatory that would have

1  required Apple to disclose Mr. Sittler or the subject of his testimony.  For example, Samsung's

2  interrogatory No. 2 asked Apple to describe all investigations made prior to the filing of the

3  complaint.  Mr. Sittler will testifying about *post-complaint* availability of the accused products in

4  the United States -- not any pre-filing purchases of accused products or other investigation.  Nor

5  did Samsung's interrogatory No. 8, which asked Apple to describe its damages claims, require

6  Apple to disclose the subject of Mr. Sittler's testimony.  This is because Apple is not claiming

7  damages related to the phones about which Mr. Sittler will testify.

8  Finally, APLNDC-Y000408232-236 are receipts showing that Mr. Sittler purchased the

9  accused products in the United States from Amazon.com.  Samsung has long known that counsel

10  for Apple is in possession of all of the products accused in this case, and is not harmed by the

11  disclosure to Samsung of receipts that corroborate their purchase.

### VI.  DONG HOON CHANG – APPLE'S RESPONSES TO SAMSUNG'S OBJECTIONS

***D.H. Chang Deposition Transcript at 157–158.*** Samsung objects to Apple's designations of Dong Hoon Chang's testimony regarding Samsung's consideration of Apple patents as allegedly privileged and clawed back during his deposition.

Samsung's objection lacks merit.  Samsung cannot establish that the information it seeks to protect is privileged.  *See Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995) ("The party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication.").  It is black-letter law that "[t]he protection of the [attorney-client] privilege extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).  Here, the testimony concerns whether Samsung considered certain Apple patents when designing its accused Galaxy phones.  While the attorney-client privilege may protect the legal advice concerning Apple's patents that Samsung received, it does not protect the *fact* of whether Samsung considered Apple's patents.  *See Oracle Am. v. Google, Inc.,* 2011 U.S. Dist. LEXIS 88747, *7 (N.D. Cal. Aug. 10, 2011) ("Defendant may not invoke attorney-client privilege in response to Plaintiff's inquiries about when and how Defendant learned about Plaintiff's intellectual property at issue." *(citing Vasudevan Software, Inc. v. IBM*

1   *Corp.,* No. 09-5897-RS, 2011 U.S. Dist. LEXIS 47764, *2 (N.D. Cal. Apr. 27, 2011)).).

2   Samsung's own actions confirm this – several other Samsung witnesses testified during

3   deposition that Samsung's product planning team monitored Apple's patents to determine the

4   features that would be included in and allowed testimony on its knowledge of Apple's patents

5   from other deponents. (R. Hung Decl. Exh. A J.H. Park Dep. Tr., at 128:2-129:7, 135:6-136:10;

6   R. Hung Decl. Exh. B–D.)

7         Moreover, even if the facts surrounding Samsung's consideration of Apple's patents were

8   privileged, Samsung has waived privilege as to those facts.  First, in response to a question

9   regarding Samsung's consideration of Apple's patents when designing Galaxy phones, Mr. Chang

10  received instructions from counsel that he could "only answer that question outside the context of

11  communications with counsel." (D.H. Chang Dep. Tr. at 157:23-25; *see also id.* at 158:20-22.)

12  Mr. Chang acknowledged counsel's instruction and then answered the question. (*Id.* at 158:1-16.)

13  Second, although Samsung moved to strike that testimony later on in Mr. Chang's deposition, it

14  never perfected its claim of privilege by providing information that would allow Apple to

15  evaluate that claim.  Fed. R. Civ. P. 26(b)(5)(A)(ii) (Party claiming privilege must "describe the

16  nature of the documents, communications, or tangible things not produced or disclosed—and to

17  do so in a manner that, without revealing information itself privileged or protected, will enable

18  other parties to assess the claim.").  Indeed, Samsung's counsel refused to permit Mr. Chang to

19  identify the persons who participated in allegedly privileged attorney-client communications

20  about Apple's patents. (D.H. Chang Dep. Tr. at 160:13-165:22.)  Samsung still has provided no

21  correspondence perfecting its privilege.  Under these circumstances, any privilege that might

22  protect Mr. Chang's testimony regarding Apple's patents has been waived.

23        Samsung cannot use the attorney-client privilege to protect facts about what it did from

24  disclosure.  Nor can Samsung continue to assert it after failing to take actions to preserve any

25  privilege it might have had.  Accordingly, Samsung's privilege objection should be overruled.

26        ***PX47.***  Apple withdraws its designations of Mr. Chang's deposition testimony concerning

27  PX47.  Accordingly, Samsung's objections to those designations are moot.

28

### VII. DONG HOON CHANG – APPLE'S OBJECTIONS TO SAMSUNG'S COUNTERDESIGNATIONS

***D.H. Chang Deposition Transcript at 157.*** In response to Apple's designations of Mr. Chang's testimony concerning Samsung's awareness of its patents, Samsung counter-designated deposition testimony from Mr. Chang concerning Samsung's alleged lack of consideration of Apple's design patents.

These counterdesignations are improper because they are unnecessary for under the rule of completeness reflected in Rules 32(a)(6) of the Federal Rules of Civil Procedure or Rule 106 of the Federal Rules of Evidence. Apple only designated the following question-answer sequence:

> Q: Did you consider any of Apple's patents, not just design patents, any Apple patents, when you were designing the Galaxy phone?
>
> [Objection omitted]
>
> A: Yes. As far as the design aspects, we within design did not take into consideration anything like that.

(D.H. Chang Dep. Tr. at 157:20-158:8.)

In response, Samsung counter-designated Mr. Chang's testimony that, "w]hen we were doing our design work, we never thought that this looked like the iPhone, so we did not . . . consider anything like that." (D.H. Chang. Dep. Tr. at 157:8-10.) The additional statement is not responsive to the question asked (*i.e.,* "Did you consider any of Apple's patents . . . ?"), such that fairness does not require including it. Moreover, because Mr. Chang is a Samsung employee over whom Samsung has control, Samsung can call him as a witness during its rebuttal case if it wishes to adduce this testimony. Should the Court be inclined to allow Samsung's counterdesignations to be played, it should be counted against Samsung's time.

### VIII. JUNWON LEE – APPLE'S RESPONSES TO SAMSUNG'S OBJECTIONS

Apple has withdrawn its designation of the testimony on page 24 of JunWon Lee's deposition transcript. Samsung's objection to that designation therefore is moot.

### IX. JUNWON LEE – APPLE'S OBJECTIONS TO SAMSUNG'S COUNTERDESIGNATIONS

Apple designated portions of JunWon Lee's deposition transcript concerning meetings

between Apple and Samsung and a presentation that Apple made to Samsung at the first of these meeting in which it identified patents that Samsung infringes. (J.W. Lee Dep. Tr. at 27:18-25, 37:21-38:5.) Such testimony is relevant to Apple's claims against Samsung, including its claim for willful infringement. In response, Samsung counter-designated testimony concerning a Samsung's discussion at some of these meetings of its patents that Apple allegedly infringes. (J.W. Lee Dep. Tr. at 40:24-41:2, 44:3-5, 44:7-9, 55:20-21, 55:23-56:2.)

Samsung's counter-designations are neither necessary to include under the rule of completeness nor relevant to Apple's claims against Samsung or Samsung's defenses to those claims. By definition, testimony about *Samsung's* patents are not relevant to Apple's claims of patent infringement against Samsung. Samsung conceded as much when it objected to Apple's introduction of testimony from Boris Teksler about Apple's FRAND patents during its affirmative case. (Hr'g Tr. at 1286:4-1286:14.) The Court agreed that discussions of FRAND issues, which relate to the patents Samsung has asserted against Apple, should occur during Samsung's affirmative case against Apple. (*Id.* at 1291:6-8.)

Nor does the rule of completeness reflected in Federal Rule of Civil Procedure 32(a)(6) and Federal Rule of Evidence 106 dictate that testimony concerning Samsung's patents should be offered during Apple's affirmative case. Indeed, one of Apple's designations of Mr. Lee's testimony concerns the first meeting between Apple and Samsung, during which only Apple's patents were discussed. (J.W. Lee Dep. Tr. at 31:18-23.) Moreover, Samsung has ample opportunity to offer evidence concerning any notice of its provided to Apple during its affirmative case, when such evidence will be relevant. Accordingly, the Court should sustain Apple's objections and strike Samsung's counter-designations listed above.

### X.   TIMOTHY BENNER – APPLE'S RESPONSES TO SAMSUNG'S OBJECTIONS

*PX69*. Apple has designated the portion of Mr. Benner's deposition testimony that discusses PX 69. Although not originally on its extended exhibit list, Apple immediately identified PX69 and added it to its exhibit list upon learning of its omission.

Although Samsung complains about the timing of Apple's addition of this exhibit,

1  Samsung ignores the background circumstances.  Apple has long had four completely open spots
2  on its exhibit list.  This is because Samsung dropped its '604 patent just two hours before the
3  parties' extended exhibit lists were due, forcing Apple to rush to remove related exhibits.
4  Moreover, Apple's designations for Mr. Benner have always included the testimony relating to
5  PX69.  (Dkt. No. 1290-1 at 3.)  In view of this history, Samsung has suffered no prejudice from
6  its addition.

7  PX69 is relevant to the design patent and trade dress issues in this case, as it discusses
8  how smartphone design impacts consumer purchasing decisions.  The fact that almost half of
9  smartphone purchasers make their purchasing decisions also is directly relevant to Apple's
10 damages case – specifically the second *Panduit* factor for lost profits.  The Court's prior rulings,
11 which rejected Samsung's attempts to exclude evidence like this, support its admissibility.  *See*
12 Dkt. No. 1267 at 3-4 (overruling-in-part Samsung's motion-in-limine to exclude evidence not tied
13 to specific IP rights); Dkt. No. 1157 at 10 (rejecting Samsung's argument that evidence of lost
14 profits not tied to specific IP rights should be excluded).

15 *PX89.*  PX89 is not misleading, prejudicial, or excluded by Samsung's motion in limine
16 #2.  PX89 confirms that Samsung knew about potential consumer confusion via its sales of its
17 tablet products.  This is directly relevant to Samsung's knowledge, intent, and willfulness for
18 Apple's trade dress and design infringement claims.  It is also relevant to establish consumer
19 confusion, which is relevant to Apple's trade dress claims.  The Court's ruling on the parties'
20 motions in limine held that this *specific* document can be used to establish intent, willfulness, and
21 knowledge.  (Dkt. No. 1267 at 4.)

22 Although Samsung also complains to the timing of this document's addition to Apple's
23 exhibit list, Samsung again ignores the relevant background facts.  Samsung did not produce
24 PX89 until February 21, 2012 – just two weeks before the fact discovery cutoff, and one day
25 before the deposition of its custodian, Mr. Benner.  This is despite the fact that it should have
26 been produced *months* earlier. (Dkt. No. 880 at 4, 7 (holding that Samsung failed to comply with
27 Court September 28, 2011 order requiring production of "all survey documents from central or
28 custodial files that reference the Apple products at issue").)  It also was produced as part of a

1  *500,000* page production – the great majority of which were in Korean.  Samsung's untimely

2  production of this document also was not only in violation of the Court's September 28, 2011

3  order (Dkt. No. 267), but the Court's order requiring its production three days in advance of a

4  deposition (Dkt. No. 788.)  Because this document was discussed in connection with Samsung's

5  motion in limine #2, Samsung cannot claim to have been unaware of this document.  For all of

6  these reasons, and in light of the background history, Samsung's objections should be overruled.

### XI. TIMOTHY BENNER – APPLE'S OBJECTIONS TO SAMSUNG'S COUNTERDESIGNATIONS

***Tim Benner Deposition Transcript at 36:16-19; 36:21-37:1; 38:8-11; 39:2-3; 40:5-7; 40:10-25; 42:20-23; 43:1-11; 43:13-24***.  The testimony that Samsung has counter-designated is not necessary under the rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).  Apple's designated testimony concerns whether Mr. Benner is able to identify surveys conducted by Samsung that show that that the physical appearance of a smartphone is *unimportant* to consumer purchasing behavior.  Benner Dep. Tr. at 37:24-38:2.  Samsung's counterdesignations (putting aside the incomplete counterdesignations, discussed below) address Mr. Benner's confusion over prior questions (36:16-19; 36:21-37:1) or the existence of Samsung surveys relating to *relative* importance.  (40:5-7, 40:10-25; 42:20-23, 43:1-11, 43:13-24).  Fairness does not dictate that Samsung's counter-designations be played to avoid prejudice.  Should the Court be inclined to allow Samsung's counterdesignations to be played, it should be counted against Samsung's time.

The counterdesignated testimony also is misleading because the designated questions do not correspond to the testimony designated.  FRE 403.  For example, Samsung does not counterdesignate the testimony for the question posed at 38:8-11.  Samsung also fails to designate the question to the testimony counter-designated at 39:2-3.

***Tim Benner Deposition Transcript at 147:14-19; 147:23-148:13***.  The testimony that Samsung has counter-designated is not necessary under the rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).  Apple's designation concerns whether survey respondents misattributed Samsung's Galaxy Tab advertisement for an Apple advertisement.  (Benner Dep.

Tr. at 145:7-146:1.) Samsung's counterdesignations, which attempt to explain *why* the ads were confusing, are unnecessary to complete the discussion as to the fact of confusion itself. Fairness does not dictate that Samsung's counter-designations be played. Moreover, because Mr. Benner is a Samsung employee over whom Samsung has control, Samsung can call him as a witness during its rebuttal case if it wishes to adduce this testimony. Should the Court be inclined to allow Samsung's counterdesignations to be played, it should be counted against Samsung's time.

Dated: August 9, 2012                                   MORRISON & FOERSTER LLP


                                                        By:  /s/ *Michael A. Jacobs*
                                                             Michael A. Jacobs

                                                        Attorneys for Plaintiff
                                                        APPLE INC.