**Interim Instruction on Likelihood of Confusion**
**for Trade Dress Infringement Claim**

As I explained to you at the start of this trial, trade dress is the non-functional physical detail and design of a product, which identifies the product's source and distinguishes it from the products of others. One of Apple's claims in this case is for trade dress infringement. Apple's trade dress infringement claim will require you to resolve, among other things, whether Samsung's Tab 10.1 is likely to cause confusion about the source of Samsung's products. A likelihood of confusion is not required for the parties' utility or design patent claims.

There are two things I want to clarify about the "likelihood of confusion" requirement for trade dress infringement claims.

First, to prevail on its trade dress infringement claim, Apple must prove that Samsung's Tab 10.1 is likely to cause confusion. Apple does not need to prove that there have been instances of actual confusion in the marketplace. In fact, actual confusion is not required for any claim in this case.

Second, to prevail on its trade dress infringement claim, Apple must prove that confusion is likely to occur at some point in time. But Apple does not need to prove that consumers are likely to be confused about the source of Samsung's products at the point of purchase. In other words, Apple need not show that a consumer has purchased a Samsung product, or is likely to purchase a Samsung product, while thinking that it was an Apple product.

The likelihood of confusion that a trade dress infringement claim requires can occur after a Samsung product has already been purchased, when someone other than the purchaser views the Samsung product. It can also occur before purchase, if a consumer would likely be attracted to a Samsung product because it looks confusingly similar to Apple's trade dress.

**Authorities**

Actual confusion not required: *Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118-1119 (9th Cir. 1990) ("The district court was well aware that proof of actual confusion is only one factor to be weighed in determining likelihood of confusion and specifically mentioned this in its list of factors to consider. Although no actual confusion was proven by Data General, the district court was not clearly erroneous in determining that likelihood of confusion existed."); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir. 1979) ("[T]he failure to prove instances of actual confusion is not dispositive."); Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.) ("[A]ctual confusion is not required for a finding of likelihood of confusion.").

Post-sale confusion: *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032 (9th Cir. 2010) ("It does seem unlikely that a knowledgeable consumer would believe that Fortune, which markets its shoes in a number of different retail

outlets, would be selling a tank top in a Victoria's Secret store. The record reveals, however, evidence of individuals (including pop star Britney Spears) wearing Victoria's Secret's 'Delicious' pink tank top on the street. *This evidence suggests the possibility of post-purchase confusion, which, we have held, 'can establish the required likelihood of confusion under the Lanham Act….* In such instances, at least, when knowledgeable consumers see the 'Delicious' tank top outside Victoria's Secret stores, it seems at least plausible that they could be confused as to who produced the tank top.") (emphasis added, citations omitted); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc*., 944 F.2d 1446, 1455 (9th Cir. 1991) ("Second, by considering only the initial purchasers of the Star Award as the relevant market, the court overlooked the risk of post-sale confusion. Post-sale confusion occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product. Here, initial Star Award purchasers (such as corporations buying the award for their 'star' employees) would be exposed to Creative House's marketing presentations and literature, and would be less likely to confuse the Creative House product with the Academy's Oscar. But a large secondary audience - including Star Award recipients and individuals who see the award after it is presented - would see the award without any such clarifying marketing aids. As a result, this secondary audience might conceivably assume the Star Award was somehow associated with the Oscar."); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc*., 285 F.3d 848, 854-855 (9th Cir. 2002) ("The law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e*., confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act…. Post-sale 'confusion … may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale…..'") (citations omitted).

Initial interest confusion: *Nissan Motor Co. v. Nissan Computer Corp*., 378 F.3d 1002, 1018 (9th Cir. 2004) ("The core element of trademark infringement is whether the similarity of the marks is likely to confuse customers about the source of the products .... Initial interest confusion occurs when the defendant uses the plaintiff's trademark 'in a manner calculated to capture initial consumer attention, *even though no actual sale is finally completed as a result of the confusion.…*' As we hypothesized initial interest confusion in *Brookfield*, it would occur if Blockbuster Video put up a billboard that advertised West Coast Video at Exit 7, when in actuality West Coast was located at Exit 8, but Blockbuster was at Exit 7. Customers looking for West Coast would leave the freeway at Exit 7, but after not finding it, rent from Blockbuster rather than reentering the freeway in search of West Coast. Customers are not confused that they are renting from Blockbuster instead of West Coast, but Blockbuster misappropriates West Coast's acquired goodwill through the initial consumer confusion.") (emphasis added, citations omitted); *Brookfield Comm's., Inc. v. West Coast Entm't*, 174 F. 3d 1036, 1062, 1066 (9th Cir. 1999) ("Nevertheless, West Coast's use of 'moviebuff.com' in metatags will still result in what is known as initial interest confusion. Web surfers looking for Brookfield's 'MovieBuff' products who are taken by a search engine to 'westcoastvideo.com' will find a database similar enough to 'MovieBuff' such that a sizeable number of consumers who were originally looking for Brookfield's product will

pa-1545811

simply decide to utilize West Coast's offerings instead.  Although there is no source confusion in the sense that consumers know they are patronizing West Coast rather than Brookfield, there is nevertheless initial interest confusion in the sense that, by using 'moviebuff.com' or 'MovieBuff' to divert people looking for 'MovieBuff' to its web site, West Coast improperly benefits from the goodwill that Brookfield developed in its mark.").