UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) | Case No.: 11-CV-01846-LHK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING-IN-PART AND |
| v. | ) | DENYING-IN-PART MOTIONS TO |
| | ) | SEAL |
| SAMSUNG ELECTRONICS CO., LTD., a | ) | |
| Korean corporation; SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC., a New York | ) | |
| corporation; SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Before the Court are numerous administrative motions to seal documents, which have been

filed by both litigants as well as a substantial number of third parties. *See e.g.*, ECF Nos. 1328,

1334, 1340, 1376, 1378, 1390, 1394, 1396, 1400, 1407, 1414, 1481, 1486, 1488, 1489, 1490, 1493,

1495, 1498, 1499, 1506, and 1638. Although both litigants had sealing motions pending before

this Court, each has filed renewed motions to seal. These most recent sealing motions supersede

the prior motions, and the Court will only address the renewed motions to seal. These

administrative motions relate to three types of documents: (1) litigants' documents that will likely

be introduced in the trial that began on July 30, 2012; (2) documents which were used exclusively

for prior motions, such as the parties' cross motions for summary judgment; and (3) third party

documents produced in discovery and to be used by either party at trial.

On August 6, 2012, the parties filed a Joint Stipulation[1] that may obviate the need for rulings on some of the parties' trial exhibits.  *See* ECF No. 1597.  Nevertheless, the Court will rule on the most recent set of administrative motions to seal in order to settle any questions about precisely what information will be sealed at trial.  Moreover, the sealing motions for documents which relate to previously filed motions are not covered by the parties' stipulation and must be ruled on separately.

## I.    Legal Standard

Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point.  *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure.  *See id.* at 1178-79.  Because the public's interest in non-dispositive motions is relatively low, a party seeking to seal a document attached to a non-dispositive motion need only demonstrate "good cause."  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good cause" standard to all non-dispositive motions, because such motions "'are often unrelated, or only tangentially related, to the underlying cause of action'" (citing *Kamakana*, 447 F.3d at 1179)).

Conversely, "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'"  *Kamakana*, 447 F.3d at 1179 (quoting *Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986)).  Thus, a party seeking to seal a judicial record attached to a dispositive motion or presented at trial must articulate "compelling reasons" in favor of sealing.  *See id.* at 1178.  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further

---

[1] The Court adopts the Joint Stipulation, with the exception of paragraph five.

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

**United States District Court**
For the Northern District of California

litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz*, 331 F.3d at 1136). "In general, 'compelling reasons' . . . exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets." *Id.* at 1179 (citing *Nixon*, 435 U.S. at 598). The Ninth Circuit has adopted the Restatements' definition of "trade secret" for purposes of sealing, holding that "[a] 'trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Electronic Arts*, 298 Fed. App'x 568, 569-70 (9th Cir. 2008) (quoting *Restatement of Torts* § 757, cmt. b). Additionally, "compelling reasons" may exist if sealing is required to prevent judicial documents from being used "'as sources of business information that might harm a litigant's competitive standing.'" *Id.* at 569 (9th Cir. 2008) (citing *Nixon*, 435 U.S. at 598).

## II.    Litigants' Administrative Motions to Seal

Pursuant to this Court's instructions, both Apple and Samsung have refiled administrative motions to file certain documents under seal. The parties have been advised that, pursuant to Ninth Circuit law, there will be a strong presumption that documents will be publicly available, s*ee Kamakana*, 447 F.3d at 1178, and that any motions seeking to overcome this presumption must be narrowly tailored. With these requirements in mind, the Court now considers each of the litigant's motions.

### A.    Apple's Administrative Motion to Seal Trial Exhibits

Apple's Administrative Motion to Seal Trial Exhibits asks the Court to seal four categories of information: (1) confidential financial information; (2) confidential source code; (3) proprietary marketing reports; and (4) terms of licensing agreements. Mot. to Seal Trial Exs. at 7-13. The Court considers each of these categories in turn.

#### 1.    Apple's Motion to Seal Confidential Capacity Information

Apple moves to seal trial exhibits containing information about its production and supply capacity, arguing that disclosure of such information would cause Apple competitive harm. Mot. to Seal Trial Exs. at 7. According to Apple, disclosure of this capacity data would allow Apple's competitors to alter their production schedules, so that they could increase production when Apple

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

**United States District Court**
For the Northern District of California

1   is stretched thin or lower their prices when Apple has excess inventory.  Decl. of Jim Bean in Supp.

2   of Mot. to Seal Trial Exs. ("Bean Trial Decl.") ¶ 6.  Additionally, it could allow Apple's suppliers

3   to extract higher prices for component parts when Apple most needs them.  *See id.*  Similarly,

4   Apple argues that product line information (that is, financial details broken out by product) could

5   give competitors insight into the relative success of different Apple products.  *Id.* ¶ 7.  According to

6   Apple, this would allow competitors to alter their investments in their own competing products.  *Id.*

7           The Court agrees that information relating to Apple's production and supply capacity is

8   "trade secret" under Ninth Circuit law and is therefore properly sealed.  Although the Court is

9   mindful of the public's interest in access to judicial documents, disclosure of this information

10  would cause substantial competitive harm to Apple.  Competitors and suppliers armed with

11  knowledge of Apple's capacity would be able to alter their business and pricing models to gain an

12  unfair advantage over Apple in such a way that would "harm its competitive standing."  *See*

13  *Electronic Arts*, 298 Fed. App'x at 569 (citing *Nixon*, 543 U.S. at 598).  Suppliers, for instance,

14  could predict when Apple would most need to increase supply and leverage this knowledge to

15  exact substantial price increases.  *See* Bean Trial Decl. ¶ 6.  Similarly, competitors could lower

16  their prices during periods when Apple has excess capacity and is therefore must vulnerable to a

17  price cut.  *See id.*  Although Apple seeks to seal *past* capacity data, such data is cyclical and would

18  allow competitors and suppliers to discover the patterns in Apple's capacity that would make it

19  easy to predict Apple's current and future capacity constraints.  *See id.*

20          Additionally, while production and supply capacity is one factor in each side's damages

21  calculations, the core of the parties' damages analysis revolves around profits, profit margins,

22  costs, and unit sales.  Apple's production capacity serves only as a *limit* on the potential damages

23  awarded, not as a *driver* of the damage claims.  Indeed, Apple's production capacity is a secondary

24  consideration in each side's damages analysis and, as such, is only indirectly relevant to one

25  particular kind of damages—Apple's lost profits claims.  The potential for "harm to [Apple's]

26  competitive standing" is quite high, however, if this information is released to the public, *see*

27  *Electronic Arts*, 298 Fed. App'x at 569 (citing *Nixon*, 435 U.S. at 598).  Because Apple's interest

28  in keeping its production capacity information under seal substantially outweighs the public's

4

United States District Court
For the Northern District of California

1    interest in accessing it, the Court agrees that "compelling reasons" have been shown for keeping

2    Apple's production capacity under seal, *see Kamakana*, 447 F.3d at 1179.  Likewise, as discussed

3    later in this Order, Samsung's production capacity information will also be sealed.

4                    2.   Apple's Motion to Seal Confidential Financial Data

5            Apple moves to seal trial exhibits containing sensitive financial information, arguing that

6    disclosure of such information would cause Apple competitive harm.  Mot. to Seal Trial Exs. at 7.

7    In particular, Apple seeks to seal information pertaining to product-specific profits and profit

8    margins, product-specific unit sales and revenue, and costs.  *Id.*  According to Apple, disclosure of

9    this information would cause substantial harm to Apple's competitive standing.  *Id.*

10           Apple argues that disclosure of this financial information would allow competitors to price

11   their products to gain an unfair advantage over Apple.  Bean Trial Decl.  ¶ 8.  In particular, Apple

12   claims that competitors could undercut Apple by pricing their products at a level that would be

13   unprofitable to Apple.  *Id.*  Moreover, Apple argues that its suppliers could rely on profit and cost

14   information to leverage higher prices from Apple during negotiations.  *See id.*

15           The Court is not persuaded that Apple's interest in sealing its financial data outweighs the

16   public's interest in accessing this information.  Despite having multiple opportunities to brief this

17   issue, *see, e.g.*, ECF Nos. 1317, 1495, 1499, Apple has not sufficiently articulated facts that support

18   a "compelling reason" to keep this information from the public.  Indeed, Apple has failed to

19   convince the Court that profit, profit margin, cost, and/or unit sales data would lead to the

20   competitive harms that Apple claims in its briefing.  *See, e.g.*, Bean Trial Decl. ¶ 8.  For instance,

21   Apple claims that its cost and profit information would allow competitors to "determine exactly

22   what price level would make a given product unprofitable to Apple, and target their product

23   offerings at exactly that price."  *Id.*  This argument, however, relies on two critical assumptions, for

24   which Apple provides no support.  First, Apple assumes that its products are perfectly

25   interchangeable with those of its competitors, such that Apple would be forced to exactly match its

26   competitors' prices.  Second, it assumes that Apple's competitors could profitably maintain this

27   critical price point, since it is well known that "predatory pricing schemes are rarely tried, and even

28   more rarely successful."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

                                            5

United States District Court
For the Northern District of California

589 (1986).  Accordingly, Apple's argument is unpersuasive and is therefore not a "compelling reason" for sealing as required by *Kamakana*.

Moreover, although Apple argues that its profit, profit margins, cost and unit sales data would allow competitors to better tailor their product offerings to counter Apple, Apple has not explained how *past* profit and unit sales data can be used to meaningfully predict Apple's *future* business plans.  Although Apple implies that its capacity constraints are relatively periodic, *see* Bean Trial Decl. ¶ 6, it makes no similar allegations with regards to profits, profit margins, costs, or unit sales information.  Indeed, because Apple updates its product lines relatively frequently, it is not obvious that historical profit, profit margin, cost, or unit sales data for past products would provide competitors with an advantage over future products.

Furthermore, the financial information that Apple seeks to seal is essential to each party's damages calculations.  For this trial in particular, which involves claims of up to $2.5 billion in damages, this data is extremely important to the public's understanding of the eventual outcome, which has the potential for wide ranging ripple effects.  Indeed, this trial is especially unusual in the extraordinary public interest it has generated.  Thus, the public has a substantial interest in full disclosure of this information.  The Court finds that Apple has not articulated a "compelling reason" for sealing its financial data that outweighs the public's interest in accessing it; accordingly this information will not be sealed.  *See Kamakana*, 447 F.3d at 1178-79 ("[T]he party [seeking to seal a document] must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process."  (internal quotation marks and citations omitted)).

Having determined the general categories of financial data that may be sealed and having reviewed each of the documents that Apple seeks to seal, the Court now applies these principles to the particular documents that Apple has moved to seal.  For the sake of efficiency, the Court presents its conclusions in the table below.  All rulings are consistent with the rationale articulated above.  Should either party seek to introduce at trial any exhibit for which the motion to seal has been granted-in-part and denied-in-part, the party seeking to keep the document under seal must

6

file its proposed redactions by 8:00 a.m. the day before the redacted document is introduced so the Court can approve the redactions.  The rulings regarding trial exhibits contained herein apply only to those exhibits admitted at trial.

| Trial Exhibit | Ruling |
|---|---|
| PX25 | GRANTED-IN-PART and DENIED-IN-PART.  Apple has over-designated the information in this exhibit to be sealed.  The Court DENIES Apple's motion to seal this exhibit, with the sole exception of Apple's proposed redactions of capacity data, *see, e.g.*, PX25.9-10. |
| PX67 | GRANTED-IN-PART and DENIED-IN-PART.  Apple has over-designated the information in this exhibit to be sealed.  The Court DENIES Apple's motion to seal this exhibit, with the sole exception of Apple's proposed redactions of royalty information, *see, e.g.*, PX67 Column O; *see also Electronic Arts*, 298 Fed. App'x at 569 (finding "pricing terms, royalty rates, and guaranteed minimum payment terms" of a license agreement to "plainly fall[] within the definition of 'trade secrets'"). |
| PX102 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| PX103 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| PX181 | DENIED.  Apple seeks to redact profit, profit margin, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| PX182 | GRANTED.  Apple seeks only to redact information related to its capacity.  The Court finds that "compelling reasons" exist for sealing such data that outweigh the public's interest in access. |
| DX541 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX542 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX543 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX544 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX581, 587, and 589 | GRANTED.  Apple seeks to seal these documents which contain confidential financial data as well as analysis and strategy discussions based on that data.  Although the Court has determined that financial data alone is not sealable, these documents contain substantially more |

7

United States District Court
For the Northern District of California

| | |
|---|---|
| | than data alone.  Apple's financial analysis and strategy for *future* corporate plans have the potential to cause considerable competitive harm to Apple if publically disclosed.  Accordingly, the Court finds that the risk of "harm [to Apple's] competitive standing" substantially outweighs the public's interest in disclosure and therefore grants Apple's motion to seal.  *See Electronic Arts*, 298 Fed. App'x at 569 (citing *Nixon*, 543 U.S. at 598). |
| DX755 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX756 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX777 | DENIED.  Apple seeks to redact unit sales, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX778 | DENIED as moot, per the Joint Stipulation.  *See* ECF No. 1597. |
| DX779 | DENIED.  Apple seeks to redact unit sales, profit margin, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |
| DX780 | DENIED.  Apple seeks to redact unit sales, profit margin, revenue, and cost data.  The Court finds that Apple has failed to provide "compelling reasons" for sealing such data that outweigh the public's interest in access. |

### 3.   Apple's Motion to Seal Confidential Source Code

Apple moves to seal trial exhibits PX63, PX121, and DX645 on the grounds that they contain highly confidential source code.  Additionally, Apple moves to seal trial exhibit PX110, as it contains detailed schematics of the Apple iBook and Apple iSight.  "[S]ource code is undoubtably[sic] a trade secret."  *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011).  Moreover, Reuters does not oppose this request.  Accordingly, the Court GRANTS Apple's motion to seal trial exhibits PX63, PX121, PX110, and DX645.

### 4.   Apple's Motion to Seal Confidential and Proprietary Market Research Reports

Apple moves to seal two classes of market research reports: internal reports gathered and prepared by Apple and third-party reports obtained from nonparty IDC, whose business model revolves around gathering and selling such data.  The internal reports that Apple moves to seal are contained in trial exhibits DX534, DX614, DX617, DX701, and DX766-776.  The third-party reports are contained in DX536 and DX537.

8

1    Apple argues that its internal market research reports contain valuable data that could cause

2    it competitive harm if disclosed to its competitors.  *See* Mot. to Seal Tr. Exs. at 11.  In particular,

3    Apple argues that because its competitors lack access to Apple's customer base, its competitors

4    cannot replicate these survey results.  Accordingly, Apple believes that the data contained in these

5    reports give it "an opportunity to obtain an advantage over competitors who do not know or use it"

6    and thus is sealable as a trade secret.  *See Electronic Arts*, 298 Fed. App'x at 569-70 (adopting the

7    definition of "trade secret" propounded by the Restatement of Torts as something "consisting of

8    any formula, pattern, device or compilation of information which is used in one's business, and

9    which gives him an opportunity to obtain an advantage over competitors who do not know or use

10   it." (citing *Restatement of Torts* § 757, cmt. b)).

11       The Court is not persuaded.  Apple's desire to protect its own market surveys reporting on

12   its consumers' usage habits, buying preferences, and demographics is not sufficient to meet the

13   "compelling reason" standard required for sealing at this stage.  *See Kamakana*, 447 F.3d at 1179.

14   While Apple is presumably correct that its consumer base is different than Samsung's, Apple's

15   claim that Samsung could not replicate the analysis contained in these exhibits is not convincing.

16   Surveys about consumer preferences are commonplace, and Apple has not argued convincingly

17   that similar data is not already available to its competitors.  Moreover, because Apple claims that

18   these surveys inform its future product and marketing plans, it stands to reason that its competitors

19   may infer the most significant results by simply observing Apple's product releases and marketing

20   campaigns.

21       In short, Apple has not established that it is likely to be harmed by the release of these

22   surveys.  In contrast, these surveys play an important role in Apple's damages claims.  Apple is

23   asking for a substantial amount of damages, and these surveys play an important role in explaining

24   to the public how Apple arrived at its demand for damages.  Thus, Apple's justification for sealing

25   does not outweigh the public policies favoring disclosure.  Accordingly, the Court finds that Apple

26   has failed to articulate "compelling reasons" for sealing trial exhibits DX534, DX614, DX617,

27   DX701, and DX766-776 and therefore DENIES Apple's motion with respect to these exhibits.

28

**United States District Court**
For the Northern District of California

9

United States District Court
For the Northern District of California

1    Apple also argues that the Court should seal exhibits DX536 and DX537, which contain a

2    full market research report, prepared by nonparty IDC, as well as the underlying data.  According

3    to Apple, IDC's business model revolves around gathering and selling these data and reports, so

4    public disclosure of these exhibits could result in substantial commercial harm.  *See* Mot. to Seal.

5    Tr. Exs. at 12.  Additionally, Apple explains that IDC has agreed to allow limited use of its data

6    during trial, and only objects to publications of the full report and data spreadsheet.  Accordingly,

7    Apple argues that the public's interest in access to these underlying documents is low, while the

8    potential for harm to IDC is quite high.

9    The Court agrees.  The public's interest in understanding the outcome of this litigation will

10   be sufficiently satisfied by the limited data disclosed at trial.  Thus, the marginal public benefit that

11   would result from disclosure of the full reports contained in DX536 and DX537 is low.

12   Additionally, public disclosure would cause significant harm to IDC's competitive standing.  *In re*

13   *Electronic Arts*, 298 Fed. App'x at 569 (citing *Nixon*, 435 U.S. at 598).  Indeed, if these reports

14   were made publically available, IDC's customers would have no need to purchase them—

15   disclosure would not only harm IDC's competitive standing, it would completely destroy it.

16   Accordingly, these exhibits are sealable under Ninth Circuit law, *id.*, so the Court GRANTS

17   Apple's motion to seal DX536 and DX537.  Nevertheless, the parties have previously represented

18   that they would not need, and would not seek, to introduce the full IDC reports at trial.  The Court

19   strongly encourages the parties to use limited IDC data at trial and thus obviate the need for

20   sealing.

21        5.  Apple's Motion to Seal Apple's License Information

22   Apple moves to seal terms of licensing agreements that it has entered into with various third

23   parties.  It argues that disclosing the terms of these licensing agreements will put it at a

24   disadvantage in negotiations for future licensing deals.  The Court agrees with respect to pricing

25   terms, royalty rates, and minimum payment terms of the licensing agreements, as set forth in

26   *Electronic Arts*, 298 Fed. App'x at 569.  Disclosing this information to the public will create an

27   asymmetry of information for Apple in the negotiation of future licensing deals.  *See id.* (finding

28   "pricing terms, royalty rates, and guaranteed minimum payment terms" of a license agreement to

10

"plainly fall[] within the definition of 'trade secrets'").  Accordingly the Court will follow the Ninth Circuit's guidance and seal all information related to the payment terms of Apple's licensing agreements.

The Court has reviewed each exhibit that Apple seeks to seal.  The following table reflects the Court's rulings with respect to Apple's proposed redactions to each trial exhibit.  All rulings are pursuant to the rationale articulated above.

| Trial Exhibit | Ruling |
|---|---|
| DX630 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with regards to the proposed redactions to information in the column labeled "Payments," but DENIES Apple's motion with regards to the proposed redactions to information in columns labeled "Licensor," "Title," "Effective Date," "Date Last Signed," "Licensed Products/Technology," "Term," and "Geographic Scope." |
| DX757 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with respect to the royalty rates and payments, but DENIES it with respect to the list of Apple's licensors. |
| DX758 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with respect to the proposed redactions of royalty rates and payments, but DENIES it with respect to the proposed redactions of the list of Apple's licensors. |
| PX76 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with regards to the proposed redactions to information in the column labeled "Monetary Consideration," but DENIES Apple's motion with regards to the proposed redactions to information in columns labeled "Apple License Partner," "Effective Date," "Expiration Date," "Term of Agreement," "Includes Rights to UMTS-Related Patents?," "Includes Rights to Other Patents?," and "Cross License?" |
| PX78 | GRANTED.  Apple seeks only to redact quantity, unit price, and amounts due to Intel in this invoice, all of which relate to capacity or financial terms of third-party agreements. |
| DX593 | GRANTED.  Apple seeks only to redact proposed payment terms for a settlement, cross-licensing agreement between Apple and Motorola. |

B.  Apple's Administrative Motion to Seal Prior Motions and Exhibits Thereto

Apple moves to seal exhibits from *Daubert* motions, motions in limine, and other pretrial motions containing sensitive financial information, arguing that disclosure of such information would cause Apple competitive harm.  In particular, Apple seeks to seal information pertaining to Apple's manufacturing capacity, product-specific profits and profit margins, product-specific unit

United States District Court
For the Northern District of California

1   sales and revenue, and costs.  According to Apple, disclosure of this information would cause

2   substantial harm to Apple's competitive standing.

3         As an initial matter, it should be noted that Apple seeks to seal information filed with both

4   dispositive and non-dispositive motions.  As noted earlier, in general, a party seeking to seal

5   documents attached to a non-dispositive motion need only demonstrate "good cause" to keep the

6   documents under seal, while a party seeking to seal documents attached to a dispositive motion or

7   used at trial must meet the higher "compelling reasons" standard.  *See Pintos*, 605 F.3d at 678;

8   *Kamakana*, 447 F.3d at 1179.  This is because non-dispositive motions are almost always

9   unrelated, or only tangentially related, to the merits of the underlying issues in the case.  *See*

10  *Pintos*, 605 F.3d at 678.  In this case, however, Apple seeks to seal documents attached to non-

11  dispositive motions that govern the admissibility of evidence at trial.  Because the admissibility of

12  evidence is such a closely contested issue in this trial, which has become crucial to the public's

13  understanding of the proceedings, the Court will apply the "compelling reasons" standard to

14  documents attached to these non-dispositive motions as well.

15        The Court has reviewed all documents that Apple seeks to seal in its renewed motion to

16  seal, and, consistent with the Court's earlier discussion, Apple will be permitted to seal information

17  related to its production capacity as well as payment terms of licensing agreements.  In general,

18  however, all other information will be made public, unless otherwise specified by the Court.  The

19  following table contains rulings on each exhibit that Apple moves to seal, consistent with these

20  general principles.  For each exhibit to a prior motion where the Court has denied or granted-in-

21  part and denied-in-part Apple's motion to seal, Apple shall refile that exhibit consistent with this

22  Order within seven days.  Samsung shall do the same for any exhibit to a prior motion for which its

23  motion to seal has been denied or granted-in-part and denied-in-part.

| Exhibit | Ruling |
| --- | --- |
| Exhibit A to Musika Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with respect to its proposed redactions in paragraphs 127, 133, 170, and 172.  Paragraphs 127 and 133 contain information on Apple's capacity, and paragraphs 170 and 172 contain payment terms of Nokia and IBM cross-licensing deals. Additionally, the Court GRANTS Apple's motion with respect to |

12

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

| | |
|---|---|
| | its proposed redactions in Exh. 17, 26, and 27, all of which contain information about Apple's capacity.  Finally, the Court GRANTS Apple's motion with respect to the proposed redactions of capacity data in Exh. 20.  The Court DENIES Apple's motion with respect to the rest of its proposed redactions to this exhibit, including the information it seeks to seal regarding costs, profits, and margins. |
| Exhibit 3 to Declaration of Joby Martin in Support of Samsung's Daubert Motion | GRANTED-IN-PART and DENIED-IN-PART.  This exhibit is identical to part of the above exhibit, and therefore the Court's ruling is the same: Apple's motion is GRANTED with respect to the proposed redactions of paragraphs 127 and 133 and DENIED with respect to all other proposed redactions, except the monetary compensation information in paragraphs 170, and 172. |
| Exhibit Q to Mazza Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | GRANTED-IN-PART and DENIED-IN-PART.  This exhibit consists of excerpts from the previous exhibits, and therefore the Court's ruling is the same: Apple's motion is GRANTED with respect to the proposed redactions of paragraphs 127 and 133, and DENIED with respect to all other proposed redactions. |
| Exhibit 6 to Martin Declaration in Support of Samsung's Daubert Motion | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal cost, margin, operating expenses, and operating profit information.  As explained above, this information will not be sealed. |
| Exhibit B to Musika Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | GRANTED-IN-PART and DENIED-IN-PART.  This exhibit consists of updated or supplemented versions of the above exhibits, and therefore the Court's ruling is the same: Apple's motion is GRANTED with respect to Apple's proposed redactions of Exs. 17.2-S, 26, and 27, all of which contain capacity data, as well as Apple's proposed redactions to the capacity data in Exh. 20-S; Apple's motion is DENIED with respect to all other proposed redactions. |
| Exhibit 1 to Martin Declaration in Support of Samsung's Daubert Motion | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal profit margin information.  As explained above, this information will not be sealed. |
| Exhibit C to Musika Declaration in Support of Apple's Opposition to Samsung's Motion for Summary Judgment | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal cost, profit, margin, operating expenses, and operating profit information.  As explained above, this information will not be sealed. |
| Exhibit E to Musika Declaration in Support of Apple's Opposition to Samsung's Motion | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal costs, profits, profit margins, operating expenses, and operating profits information.  As explained above, this information will not be sealed. |

13

**United States District Court**
For the Northern District of California

| | |
|---|---|
| for Summary Judgment | |
| Exhibit K to Musika Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | GRANTED-IN-PART and DENIED-IN-PART.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple's motion is GRANTED with respect to the capacity information that it seeks to redact, but DENIED with respect to all other proposed redactions. |
| Exhibit Y to Musika Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal cost estimates and margin information.  As the Court has explained above, this information will not be sealed. |
| Exhibit 10 to Martin Declaration in Support of Samsung's Daubert Motion | GRANTED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal capacity data, which is a protected trade secret and is therefore sealable, as explained above. |
| Exhibit Z to Musika Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal income and cost information.  As the Court has explained above, this information will not be sealed. |
| Exhibit 7 to Martin Declaration in Support of Samsung's Daubert Motion | DENIED.  The information that Apple seeks to seal in this exhibit is identical to information it has sought to seal above and therefore the Court's ruling is the same: Apple seeks to seal costs, profits, margins, operating expenses, and operating profits information.  As the Court has explained above, this information will not be sealed. |
| Samsung Reply in Support of Motion to Strike and Wagner Declaration in Support Thereof | GRANTED-IN-PART and DENIED-IN-PART.  Although the Court has indicated that it will seal the financial terms of licensing agreements, Apple has over-designated the portions of this exhibit worthy of sealing.  The Court GRANTS Apple's motion only with respect to the proposed redactions of the monetary compensation disclosed on pages 2-3 of the Reply, the proposed redactions on page 5 of the Reply, and the proposed redactions to paragraphs 23 and 26 of the attached Wagner Declaration.  The Court DENIES Apple's motion with respect to all other proposed redactions. |
| Exhibit B to Wagner Declaration in Support of Samsung's Reply in Support of Motion to Strike | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with respect to the proposed redactions of paragraphs 178-80, 188, and 193, all of which contain a discussion of supply constraints.  Although not explicitly addressed earlier, disclosure of supply constraints presents the same risk of competitive harm as disclosure of capacity information and is of similarly minimal relevance to the underlying issues of the litigation. |

14

United States District Court
For the Northern District of California

| | |
|---|---|
| | Additionally, the Court finds that compelling reasons exist for sealing information in paragraphs 397-98, 404, and 524, all of which contain payment details of Apple's acquisition of FingerWorks.  Such information implicates the same considerations as the payment details of licensing agreements—namely that public disclosure of these details would disadvantage Apple in future acquisition negotiations.  Apple has over-designated these paragraphs for sealing, however, so only portions of them will be sealed.  In particular, the Court will not seal the first two sentences of paragraphs 397, but will seal the remainder of paragraphs 397-98.  Additionally, the Court will seal only the monetary considerations contained in paragraphs 404 and 524 (Fig. 68), but DENIES Apple's motion as to the rest of paragraphs 404 and 524.  The Court DENIES Apple's motion with respect to all other proposed redactions. |
| Exhibit AA to Musika Declaration in Support of Apple's Opposition to Samsung's Daubert Motion | DENIED.  Apple seeks to exclude operating margin information.  As explained above, this information will not be sealed. |
| Exhibit P1 to Hecht Declaration in Support of Samsung's Opposition to Apple's Motion for Partial Summary Judgment | GRANTED.  Apple seeks to seal information relating to license royalty terms between Apple and various third parties. |
| Exhibit 32 to Martin Declaration in Support of Samsung's Daubert Motion | GRANTED.  Apple seeks to seal payment and royalty information for specific licensing agreements as well as pricing terms related to particular components in Apple products.  Such information is trade secret under *Electronic Arts*.  298 Fed. App'x at 569 (finding "pricing terms, royalty rates, and guaranteed minimum payment terms" of a license agreement to "plainly fall[] within the definition of 'trade secrets'"). |
| Exhibit 67 to Arnold Declaration in Support of Samsung's Motion for Summary Judgment | DENIED.  Apple seeks to redact information that only acknowledges the existence of various licensing agreements.  As the Court has explained above, the mere existence of a licensing agreement is not a trade secret and therefore will not be sealed under the "compelling reasons" standard for dispositive motions. |
| Exhibit A to Ordover Declaration in Support of apple's Opposition to Samsung's Motion for Summary | DENIED.  Apple seeks to redact information reflecting only the scope of certain licensing agreements with third parties.  As the Court has explained above, payment terms are the only sealable elements of licensing agreements under the "compelling reasons" standard.  Accordingly information related to the scope of agreements, as opposed to compensation, will not be sealed. |

United States District Court
For the Northern District of California

| | |
|---|---|
| Judgment | |
| Exhibit C to Wagner Declaration in Support of Samsung's Reply in Support of Motion to Strike | DENIED.  Apple seeks to redact information that only acknowledges the existence of various licensing agreements.  As the Court has explained above, the mere existence of a licensing agreement is not a trade secret and therefore will not be sealed. |
| Exhibits 20 and 21 to Price Declaration in Support of Samsung's Reply in Support of Motion to Strike | GRANTED.  Apple seeks to seal this document in its entirety as it consists entirely of capacity information, including capacity broken down by product, for 2010 and 2011.  As explained above, capacity data meets the "compelling reasons" standard for sealing. |
| Exhibit 1 to Price Declaration in Support of Samsung's Reply in Support of Motion to Strike | GRANTED-IN-PART and DENIED-IN-PART.  Apple seeks to seal this document in its entirety as it contains a notice of election pursuant to a licensing agreement between Apple and a third party that contains royalty information.  The Court GRANTS Apple's motion to seal insofar as it implicates royalty information, but DENIES Apple's motion to seal the whole document as the Court sees no reason why Apple cannot redact only the sealable information. |
| Exhibits 2-6 & 13 to Price Declaration in Support of Samsung's Reply in Support of Motion to Strike | GRANTED.  Apple seeks to seal licensing agreements between Apple and various third parties.  Although the Court has already ruled that only payment information may be sealed in *summaries* of licensing agreements, the Court has not yet ruled on sealing motions related to the licensing agreements themselves.  Such agreements contain a whole host of terms (e.g. termination conditions, side-agreements, waivers) that are irrelevant to matters in this litigation.  Indeed, because the parties have prepared summary charts of all their license agreements for trial, the marginal value to the public of disclosing these entire agreements is low.  Conversely, disclosure of these full documents could result in significant competitive harm to the licensing parties as it would provide insight into the structure of their licensing deals, forcing them into an uneven bargaining position in future negotiations.  Accordingly, the Court finds that "compelling reasons" exist for sealing that outweigh the public's interest in accessing these documents used only in Samsung's motion to strike. |

C.  Samsung's Administrative Motion to Seal Trial Exhibits

Samsung moves to seal trial exhibits containing sensitive financial information, confidential source code, and future business plans, arguing that disclosure of such information would cause Samsung competitive harm.  Samsung's Mot. to Seal Trial Exs. at 3-6.  In particular, Samsung seeks to seal information pertaining product-specific profit and cost information, including sales

16

1    figures, manufacturing costs, operating expenses, operating profits, and gross margins.  *Id*. at 4.

2    Additionally, Samsung moves to seal an exhibit containing portions of its proprietary source code.

3    Finally, Samsung moves that portions of exhibits containing future business plans—portions that

4    will not be shown to the jury—neither be admitted into evidence nor entered into the public record.

5    According to Samsung, disclosure of this information would cause substantial harm to its

6    competitive standing.  *Id.*

7           Having determined the general categories of financial data that may be sealed and having

8    reviewed each of the documents that Samsung seeks to seal, the Court now applies these principles

9    to the particular documents that Samsung has moved to seal.  For the sake of efficiency, the Court

10   presents its conclusions in the table below.  All rulings are consistent with the rationale articulated

11   above.

| Trial Exhibit | Ruling |
|---|---|
| PX25 | DENIED.  Samsung seeks to seal confidential financial information related to Samsung's per-product profit margins.  As explained above, such information is not sealable under the "compelling reasons" standard. |
| PX27 | DENIED.  Samsung seeks to seal confidential financial information related to the premium built into Samsung's pricing as well as its profit margin on particular phones.  As explained above, such information is not sealable under the "compelling reasons" standard. |
| PX28 | DENIED.  Samsung seeks to seal confidential financial information related to costs incurred by Samsung during its manufacturing process as well as incremental and operating profit on particular phones.  As explained above, such information is not sealable under the "compelling reasons" standard. |
| PX29 | DENIED.  Samsung seeks to seal information related to its costs incurred in manufacturing particular products, materials costs for those products, and Samsung's profits and profit margins for each product.  As explained above, such information is not sealable under the "compelling reasons" standard. |
| PX31 | GRANTED.  Samsung seeks to redact reproductions of its confidential source code.  As explained above, such information readily qualifies as a "trade secret" under Ninth Circuit law, and therefore "compelling reasons" exist for sealing. |
| PX60 | GRANTED-IN-PART and DENIED-IN-PART.  Samsung seeks to seal confidential financial information as well as information about its future revenue projections and product strategy.  Samsung's sealing attempt is overbroad.  The Court GRANTS Samsung's motion with |

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

| | |
|---|---|
| | respect to information about future product strategy and future revenue projections, but DENIES it with respect to its past and current financial information. Because this adjudication is concerned with Samsung's past and current conduct, information related to Samsung's future is of limited value to the public. Moreover, such information has the potential to cause Samsung significant competitive harm. |
| PX180 | DENIED. Samsung seeks to seal confidential financial information including a detailed breakdown of the costs incurred in manufacturing various products. As the Court has explained earlier, such information is not sealable under the "compelling reasons" standard. |
| PX183-185 | DENIED as moot. Samsung requests only that the portions of these exhibits not shown to the jury and not admitted into evidence at trial be sealed. The parties are only required to make publicly available the documents (or parts thereof) that are admitted into evidence at trial and given to the jury. Accordingly, no motion is needed for the portions of documents that are not admitted into evidence at trial and not provided to the jury. |
| DX676 | DENIED. Samsung seeks to seal confidential financial information including a detailed breakdown of the costs incurred in manufacturing various products. As the Court has explained earlier, such information is not sealable under the "compelling reasons" standard. |

D.  <u>Samsung's Administrative Motion to Seal Prior Motions and Exhibits Thereto</u>

Samsung moves to seal a number of exhibits from prior motions containing sensitive financial information, arguing that disclosure of such information would cause it competitive harm. In general, the financial information that Samsung seeks to seal is quite similar to the information that Apple had moved to seal, and accordingly the Court's rulings will be consistent: Samsung will be permitted to seal information related to its production capacity as well as payment terms of licensing agreements. In general, however, all other financial information will be made public, unless otherwise specified by the Court.

Additionally, Samsung moves to seal information disclosing its tax accounting procedures, particularly related to a tax treaty that allows Samsung to pay taxes in Korea on revenue from products sold in the United States. *See, e.g.*, Apple's Opp. to Samsung's Mots. in Limine at 28-29. While Samsung does not address this issue directly in its renewed motion to seal, it did address it briefly in a declaration filed in support of its original motion, arguing that "competitors would use Samsung's internal taxation strategies to structure their own financial and product plans in order to better compete with Samsung." ECF No. 1319 ¶ 14. This argument is both conclusory and unpersuasive. It is not clear how disclosure of information related to its tax treatment would place

18

1   Samsung at a competitive disadvantage.  Moreover, Samsung's tax accounting procedures are

2   relevant to understanding the apportionment of damages among the three defendants as well as the

3   importance of Apple's inducement argument.  Thus, the public has a significant interest in

4   accessing this information.  Accordingly, the Court finds that Samsung has not articulated a

5   "compelling reason" for withholding information about its tax structure from the public and

6   therefore such information is not sealable under Ninth Circuit law.

7         The following table contains rulings on each exhibit that Samsung moves to seal, consistent

8   with the discussion and analysis provided above.

| Exhibit | Ruling |
|---|---|
| Motion to Exclude Opinions of Certain of Apple's Experts | DENIED.  Samsung seeks to exclude the amount of costs that Samsung incurred in making and selling the accused devices.  As the Court has explained above, this information will not be sealed. |
| Exhibit 1 to Declaration of Joby Martin in Support of Samsung's Daubert Motion | DENIED.  Samsung seeks to exclude information regarding Samsung's revenues, pricing, profit, and margins.  As the Court has explained above, this information will not be sealed. |
| Exhibit 3 to Declaration of Joby Martin in Support of Samsung's Daubert Motion | DENIED.  Samsung seeks to seal two classes of information: information related to proposed royalty rates for a licensing agreement between Apple and Samsung and confidential financial information, including revenues, profits, profit margins, costs, and tax rates.  Although the Court has generally allowed royalty terms of licensing agreements to be sealed, Samsung is seeking to seal a *proposed* royalty rate *between the two litigants*.  This information is important to the parties' damages calculations and therefore important for the public's understanding of this case.  Moreover, this litigation will end up publically placing a value on the two companies' patent portfolios, so the argument that prior proposed royalty rates will harm future negotiations is unpersuasive.  Additionally, the Court has already explained that financial information will not be sealed under the "compelling reasons" standard. |
| Exhibit 5 to Declaration of Joby Martin in Support of Samsung's Daubert Motion | DENIED.  Samsung seeks to seal revenue, cost, profit, and profit margin information.  *See* ¶¶ 14, 32, 40 (revenues, costs, profits, and profit margins). The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit 2 to Declaration of Joby Martin in Support of Samsung's Daubert | DENIED.  Samsung seeks to seal cost and profit information.  The Court has found that compelling reasons do not exist for sealing such information. |

19

**United States District Court**
For the Northern District of California

| Motion | |
|---|---|
| Exhibit F to Musika Declaration in Support of Apple's Opposition to Samsung's Motion for Summary Judgment | DENIED.  Samsung seeks to seal profit, revenue, and cost information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit G to Musika Declaration in Support of Apple's Opposition to Samsung's Motion for Summary Judgment | DENIED.  Samsung seeks to seal profit, revenue, and cost information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit O to Maharbiz Declaration in Support of Apple's Opposition to Samsung's Motion for Summary Judgment | DENIED.  Samsung seeks to seal cost information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit 37 to Bressler Declaration in Support of Apple's Opposition to Samsung's Motion for Summary Judgment | DENIED.  Samsung seeks to seal cost information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit B to Wagner Declaration in Support of Samsung's Reply in Support of Samsung's Daubert Motion | DENIED.  Samsung seeks to seal cost, profit, unit sales, revenue, and tax arrangement information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Apple's Oppositions to Samsung's Motions in Limine | DENIED.  Samsung seeks to seal profit, cost, and tax arrangement information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit 42 to Kanada Declaration in Support of Apple's Oppositions to Samsung's Motions in Limine | DENIED.  Samsung seeks to seal profit information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit 43 to Kanada Declaration | DENIED.  Samsung seeks to seal profit margin information.  The Court has found that compelling reasons do not exist for sealing |

| in Support of Apple's Oppositions to Samsung's Motions in Limine | such information. |
|---|---|
| Exhibit 44 to Kanada Declaration in Support of Apple's Oppositions to Samsung's Motions in Limine | DENIED.  Samsung seeks to seal unit sales and profit margin information.  The Court has found that compelling reasons do not exist for sealing such information. |
| Exhibit 10 to Declaration of Joby Martin in Support of Samsung's Daubert Motion | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Samsung's motion to seal capacity information, but DENIES it with respect to the rest of the proposed redactions (including redactions of profit and revenue information). |

### III.     Third Party Sealing Motions

        In addition to the litigants, a number of third parties to this case have also filed administrative motions to seal.  The overwhelming majority of these third party filings seek to seal the financial terms of licensing agreements entered into with one of the litigants.  As the Ninth Circuit held in *In re Electronic Arts*, "pricing terms, royalty rates, and guaranteed minimum payment terms" plainly fall within the definition of "trade secrets" for purposes of sealing motions. 298 Fed. App'x at 569.  Moreover, the *Electronic Arts* court adopted the definition of "trade secret" propounded by the Restatement of Torts as something "consisting of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (citing *Restatement of Torts* § 757, cmt. b).  Accordingly, the Court will seal all information related to licensing agreements' pricing terms, royalty rates, and payments.  The public release of such information would place these third-parties in a weakened bargaining position in future negotiations, thereby giving their customers and competitors a significant advantage.  This is true of all licensing agreements sought to be sealed by the parties, including those agreements that have already expired.  Indeed, parties seeking to seal the financial terms of expired licensing agreements have argued persuasively that the financial terms of such agreements are probative of the terms of current licensing deals—in fact, many current licensing deals cover technologies previously

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

1   licensed in agreements that have since expired.  Accordingly, disclosure of expired licensing

2   agreements' pricing would lead to the same competitive harms as disclosure of current licensing

3   agreements' pricing.  All other licensing information, however, including the technologies being

4   licensed, will not be sealed.  No party has articulated how disclosure of this non-financial

5   information will result in future harm; accordingly, no party has met the burden of providing a

6   "compelling reason" to withhold this information from the public.

7          The bulk of the third party sealing motions are directed towards two trial exhibits: PX77

8   and DX630.  Both of these exhibits contain charts summarizing licensing agreements between the

9   litigants and third parties.  PX77 organizes this licensing agreement information into columns

10   labeled "[Apple or Samsung] License Partner"; "Bates Range"; "Effective Date"; "Expiration

11   Date"; "Term of Agreement"; "Monetary Consideration"; "Includes Rights to UMTS-Related

12   Patents?"; "Includes Rights to Other Patents?"; and "Cross License?".  DX630 organizes this

13   information into columns labeled "Licensee"; "Licensor"; "Title"; "Effective Date"; "Date Last

14   Signed"; "Term"; "Licensed Products/Technology"; "Geographic Scope"; "Payments"; and

15   "Source."  Consistent with *Electronic Arts*, the Court will grant motions to seal information in the

16   "Monetary Consideration" column of the PX77 summary and the "Payments" column of the

17   DX630 summary.  The Court will deny motions to seal information in other columns of either

18   summary.  298 Fed. App'x at 569 ("[P]ricing terms, royalty rates, and guaranteed minimum

19   payment terms . . . plainly fall[] within the definition of 'trade secrets.'").

20          Although both PX77 and DX630 are Rule 1006 summaries, some of the third parties have

21   also moved to redact substantial portions of the underlying license agreements on which these trial

22   exhibits are based.  Because these exhibits are summaries, however, the underlying documents,

23   while admissible, are not being admitted into evidence themselves.  Therefore, requests by third

24   parties to seal the actual licensing agreements summarized in PX77 and DX630 are DENIED as

25   moot.

26          Additionally, this Court has already ruled that "the whole trial is going to be open."  Order

27   Den. Sealing Mot. 3, ECF No. 1256 (citation omitted).  Accordingly, all motions to seal the

28   courtroom during trial or to seal portions of the trial transcript are hereby DENIED.

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

United States District Court
For the Northern District of California

1    The Court briefly notes that the parties have submitted a Joint Stipulation that the parties

2    argue obviates the need for the Court's rulings on third party sealing motions.  *See* ECF No. 1597

3    at 2.  In particular, the parties have agreed to substitute "neutral, non-identifying designations (such

4    as 'Party A') for all third parties identified in [] licensing agreements, summaries or charts to the

5    extent such third parties will not be the subject of testimony."  *Id*.  Research in Motion ("RIM")

6    filed an objection to the parties' stipulation as it relates to third party licensing terms.  ECF No.

7    1613.  As Research in Motion points out, the stipulation would effectively permit disclosure of the

8    identity and the terms of the licensing agreements.   This is because "RIM (as with all other

9    nonparties) has already filed a redacted version of Trial Exhibit 630, identifying RIM, with the

10   Court. Dkt. 1396-1.  It would be simple for one of RIM's competitors to match the non-redacted

11   portions of the exhibit filed by RIM with the information that would be supplied by Trial Exhibit

12   630 pursuant to the Stipulation, and thereby gain access to the very information that RIM (and all

13   other nonparties) sought to protect."  ECF No. 1613 at 1.  Unfortunately, the parties' solution to

14   this issue is tardy, and does not resolve the issue of balancing the competing interests.  Therefore,

15   the parties' stipulation as to the third party licensing agreements is DENIED.  The Court issues the

16   following rulings as to the third party requests to seal.

17        A.  Nokia's Motion to Seal

18        Nokia moves to seal information contained in licensing agreement summaries in two trial

19   exhibits: PX77 and DX630.  In particular, Nokia moves to seal information contained in the

20   Expiration Date, Term of Agreement, and Monetary Considerations columns of the summary

21   contained in PX77 as well as the Term, Licensed Products/Technology, and Payments columns of

22   DX630.  Consistent with the principles articulated above, the Court GRANTS Nokia's motion with

23   regards to the "Monetary Considerations" column of the summary contained in PX77 as well as the

24   "Payments" column of DX630 and DENIES Nokia's motion in all other respects.

25        B.  Interdigital's Motion to Seal

26        Interdigital moves to seal portions of a licensing agreement between Interdigital and

27   Samsung as well as information relating to an Apple/Interdigital licensing agreement contained in

28   the DX630 licensing agreement summary.  Interdigital does not seek to seal any summary

23

1    information of the Interdigital/Samsung agreement contained in either PX77 or DX630. Consistent

2    with the principles articulated above, the Court GRANTS Interdigital's motion with respect to the

3    information in the "Payments" column of DX630 concerning the Apple/Interdigital agreement

4    only. The Court DENIES Interdigital's motion with respect to information in the "Licensed

5    Products/Technology" column of DX630 concerning the Apple/Interdigital agreement and

6    DENIES Interdigital's motion to seal the Samsung/Interdigital licensing agreement as moot, since

7    the licensing agreements underlying PX77 and DX630 are not being admitted into evidence.

8    Accordingly, Interdigital's motion to seal is GRANTED-IN-PART and DENIED-IN-PART.

9              C.   Koninklijke Philips Electronics' Motion to Seal

10         Philips moves to seal information contained in the "Payments" columns of trial exhibit

11   DX630. Consistent with the principles articulated above, the Court GRANTS Philips' motion.

12             D.   IBM's Motion to Seal

13         IBM moves to seal only the payment amounts contained in the "Payments" column of trial

14   exhibit DX630. Although third-party Reuters argues that IBM's motion is moot because IBM

15   served its licensing agreement as an exhibit to IBM's motion to seal on all parties and intervenors,

16   including Reuters, such a limited disclosure does not strip IBM's information of its "trade secret"

17   status. To the Court's knowledge, none of the information that IBM seeks to seek has been

18   disclosed to the *public*, and therefore IBM's motion is not moot.

19          Reuters has threatened to publish IBM's licensing agreement, but to the Court's knowledge

20   such publication has not yet occurred. IBM was unsuccessful in its attempt to secure a TRO from

21   Judge Grewal enjoining Reuters from publishing this information. However, IBM served its

22   licensing agreement on Reuters because Reuters is now a party to the suit, having prevailed on its

23   motion to intervene. As a party to the suit, Reuters is governed by the Protective Order. *See* ECF

24   687 (stating that a "[p]arty" for purposes of the Protective Order "means *any party* to this case,

25   including all of its officers, directors, employees, consultants, retained experts, and outside counsel

26   and their support staffs) (emphasis added). Accordingly, if Reuters does publish this information,

27   it will be in direct violation of this Protective Order. Consistent with the principles articulated

28   above, the Court GRANTS IBM's motion.

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

1

E.  Toshiba's Motion to Seal

2

Toshiba moves to seal information contained in the "Term," "Licensed

3  Products/Technology," and "Payments" columns of trial exhibit DX630.  Consistent with the

4  principles articulated above, the Court GRANTS Toshiba's motions with respect to the information

5  contained in the "Payments" column, but DENIES it with respect to the information contained in

6  the "Licensed Products/Technology" and "Term" columns.  Accordingly, Toshiba's motion to seal

7  is GRANTED-IN-PART and DENIED-IN-PART.

8

F.  Microsoft's Motion to Seal

9

Microsoft moves to seal information contained in the "Effective Date," "Date Last Signed,"

10  "Term," "Licensed Products/Technology," "Geographic Scope," and "Payments" columns of trial

11  exhibit DX630.  Consistent with the principles articulated above, the Court GRANTS Microsoft's

12  motion with respect to the information contained in the "Payments" column, but DENIES it with

13  respect to the information contained in the "Effective Date," "Date Last Signed," "Term"

14  "Licensed Products/Technology," and "Geographic Scope," columns.  Accordingly, Microsoft's

15  motion to seal is GRANED-IN-PART and DENIED-IN-PART.

16

G.  Qualcomm's Motion to Seal

17

Qualcomm moves to seal information contained in the "Term" and "Payments" columns of

18  trial exhibit DX630.  Ordinarily, the Court would grant Qualcomm's motion, based on the rationale

19  articulated above.  In this case, however, Qualcomm has already made this information public by

20  inadvertently posting it in un-redacted form on ECF.  Although the Court understands that this

21  public disclosure was unintentional, it nevertheless finds that the information that Qualcomm seeks

22  to redact is no longer "secret," and therefore no longer qualifies for protection as a "trade secret."

23  *See Restatement of Torts* § 757, cmt. b ("The subject matter of a trade secret must be secret."); *see*

24  *also Electronic Arts*, 298 Fed. App'x at 569-70 (adopting the Restatement's definition of "trade

25  secret").

26

Qualcomm contends that because it locked, as soon as possible, the incorrectly filed

27  document, thereby removing it from public access, the information it seeks to seal is still worthy of

28  sealing protection.  Moreover, Qualcomm argues that "secret" is not a binary determination, but

25

1    rather a sliding scale.  As Qualcomm notes, however, Reuters has already published a story

2    containing the information that Qualcomm now seeks to seal.  Nevertheless, the public's interest in

3    permanent and continuing access to the royalty payment terms of Qualcomm's licensing agreement

4    from the official court records remains low, as the PX77 and DX630 summaries contain the

5    licensing information upon which the parties will rely at trial.

6          Moreover, the very fact that Qualcomm still seeks to maintain this royalty payment

7    information under seal, even after it has been briefly disclosed, indicates that Qualcomm still does

8    gain some competitive advantage from limiting disclosure of this information.  *See Electronic Arts*,

9    298 Fed. App'x at 569-70 (quoting *Restatement of Torts* § 757, cmt. b).  As Qualcomm explains, a

10   future licensing partner is far more likely to discover this information if it is published in the

11   official court records than if it is only published by Reuters.  Thus, limiting further public

12   disclosure would help prevent further competitive harm to Qualcomm.  Accordingly, the Court

13   finds that compelling reasons exist for sealing this information and therefore GRANTS

14   Qualcomm's motion to seal.

15          H.   Research in Motion's Motion to Seal

16          Research in Motion moves to seal information contained in the "Term," "Licensed

17   Products/Technology," and "Payments" columns of trial exhibit DX630.  Consistent with the

18   principles articulated above, the Court GRANTS Research in Motion's motion with respect to the

19   information contained in the "Payments" column, but DENIES it with respect to the information

20   contained in the "Licensed Products/Technology" and "Term" columns.  Thus, Research in

21   Motion's motion to seal is GRANTED-IN-PART and DENIED-IN-PART.

22          I.   Motorola Mobility's Motion to Seal

23          Motorola Mobility moves to seal information contained in the "Monetary Consideration,"

24   "Includes Rights to UMTS-Related Patents?," "Includes Rights to Other Patents?," and "Cross

25   License?" columns of trial exhibit PX77 as well as the "Licensed Products/Technology" and

26   "Payments" columns of trial exhibit DX630.  Additionally, Motorola Mobility also moves to seal

27   portions of trial exhibit DX631, which contains tables summarizing rate, revenue, and royalty

28   information.  Finally, Motorola Mobility also moves to seal portions of PX82, a Samsung licensing

26

United States District Court
For the Northern District of California

1  presentation containing proposed terms and conditions of a Samsung-Motorola license, forecasts of

2  Motorola sales, and proposed royalty rates and payments for the Samsung-Motorola agreement.

3  Consistent with the principles articulated above, the Court GRANTS Motorola's motion with

4  respect to the proposed redactions of information contained in the "Monetary Consideration"

5  column of PX77, information contained in the "Payment" column of DX630, information

6  contained in DX631, and information contained in PX82.  However, the Court DENIES Motorola

7  Mobility's motion with respect to the information contained in the other columns of PX77 and

8  DX630.  Thus, Motorola Mobility's motion is GRANTED-IN-PART and DENIED-IN-PART.

9       J.   Intel's Motion to Seal

10      Intel moves to seal Intel source code, the Intel X-GOLD 61x Product Specification, the

11  Intel UMTS RLC Detailed Design Description, and Exhibits 4 and 7 to the Selwyn Declaration in

12  Support of Apple's Motion for Summary Judgment (ECF No. 925) which describe Intel's

13  scrambling code circuitry.  Additionally, Intel moves that the parties be required to use redacted

14  versions of the Samsung-Intel cross-license agreement (and amendments) and Intel invoices to

15  Apple.

16      Intel argues that the source code, Product Specification, and Detailed Design Description all

17  constitute trade secrets.  That Intel's source code is a trade secret, and therefore sealable, is clear.

18  *See Agency Solutions.Com*, 819 F. Supp. 2d at 1017 ("[S]ource code is undoubtably[sic] a trade

19  secret.").  Similarly, the Product Specification, which provides a complete specification of the X-

20  GOLD 61x system and specifies the algorithms used by each constituent module; and the Detailed

21  Design Description, which identifies the functions, input and output variables, and data structures

22  used by each module, are also trade secrets.  Accordingly all three are sealable under Ninth Circuit

23  law, so the Court GRANTS Intel's motions with respect to these documents.  *See Kamakana*, 447

24  F.3d at 1179.

25      Additionally, Intel argues that Exhibits 4 and 7 of the Selwyn Declaration should be sealed,

26  as they provide a detailed analysis of Intel's source code and circuitry.  Additionally, Intel notes

27  that when this Court granted Apple' summary judgment motion on non-infringement, it did so on

28  the basis of claim construction and the application of those claims to the 3GPP TS 25.213 standard.

27

**United States District Court**
For the Northern District of California

1   The Court did not rely on Intel's source code, circuitry, or any expert analysis thereof.

2   Accordingly, Intel argues, even though summary judgment is dispositive, the public's interest in

3   these particular documents is relatively low.  The Court agrees with Intel.  Source code and

4   circuitry do constitute trade secrets, and the Court has a duty to prevent court documents from

5   being used "'as sources of business information that might harm [Intel's] competitive standing.'"

6   *See In re Electronic Arts*, 298 Fed. App'x at 569 (citing *Nixon*, 435 U.S. at 598).  Thus the Court

7   GRANTS Intel's motion with respect to these documents.

8   Finally, Intel argues that the parties should be required to use redacted versions of an Intel-

9   Samsung cross-licensing agreement and an Intel invoice to Apple if they choose to introduce such

10   evidence at trial.  Intel argues that this agreement and invoice are relevant only to Apple's

11   exhaustion defense, and that the terms it proposes to redact are not necessary to understanding this

12   defense.  In particular, Intel argues that it seeks to redact commercially sensitive provisions of the

13   cross-licensing agreement and pricing information on the invoice.  Intel points out that Samsung

14   used a redacted version of this same licensing agreement in open court in a related Korean

15   litigation.  Accordingly, Intel argues that the public's interest in seeing the redacted portions of

16   these documents is low, while its interest in maintaining confidentiality over commercially

17   sensitive information is high.

18   Consistent with the Court's earlier analysis, Intel's motion is GRANTED with respect to

19   the payment terms of the licensing agreement only, and denied as to the rest of the licensing

20   agreement.  However, the Court hopes that Intel can reach an agreement with the parties to use a

21   redacted version of the licensing agreement in this trial, similar to the agreement reached in the

22   Korean litigation.

23   **K.**   Dolby Laboratories' Motion to Seal

24   Dolby moves to seal information contained in the "Payments" column of trial exhibit

25   DX630.  Consistent with the principles articulated above, the Court GRANTS Dolby's motion.

26   **L.**   Siemens AG's Motion to Seal

27   Siemens moves to seal information contained in the "Expiration Date," "Term of

28   Agreement," and "Monetary Consideration" columns of trial exhibit PX77.  Consistent with the

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

principles articulated above, the Court GRANTS Siemens's motion with regards to the information in the "Monetary Consideration" column only, and DENIES it with regards to the information in the "Expiration Date" and "Term of Agreement Columns."

M. <u>Telefonaktiebolaget LM Ericsson's Motion to Seal</u>

Ericsson moves to seal information contained in the "Expiration Date," "Term of Agreement," and "Monetary Consideration" columns of trial exhibit PX77, and the "Term," "Licensed Products/Technology," "Geographic Scope," and "Payments" columns of trial exhibit DX630. Additionally, Ericsson also moves to seal portions of trial exhibit DX631, which contains tables summarizing royalty rates, revenue, royalty, and rate information. Consistent with the principles articulated above, the Court GRANTS Ericsson's motion with respect to the information in the "Monetary Consideration" column of PX77, the information in the "Payments" column of DX630, and the information it seeks to redact in DX631. The Court DENIES the remainder of Ericsson's motion. Thus, Ericsson's motion is GRANTED-IN-PART and DENIED-IN-PART.

**IT IS SO ORDERED.**

Dated: August 9, 2012

LUCY H. KOH
United States District Judge

Case No.: 11-CV-01846-LHK
ORDER GRANTING-IN-PART and DENYING-IN-PART MOTIONS TO SEAL

United States District Court
For the Northern District of California