QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OBJECTIONS AND RESPONSES REGARDING (1) EXHIBITS TO BE USED WITH MUSIKA, BOGUE, FORLINES, BEDERSON, WILLIAMS, ZORN, PALATIAN, YANG, AND (2) DESIGNATED DEPOSITION TESTIMONY OF PALTIAN AND ZORN** |

02198.51855/4904869.1

Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS. ZORN. PALTIAN. YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1    Samsung hereby submits objections and responses regarding (1) exhibits to be used in

2    direct and cross examination of Terry Musika, Tim Williams, Ph.D., Benjamin Bederson, Adam

3    Bogue, Clifton Forlines, Ph.D., and Woodward Yang, Ph.D., and (2) deposition counter

4    designations for Markus Paltian and Andre Zorn.

5    **I.    TERRY MUSIKA**

6        **A.    Samsung's Objections to Direct Examination Exhibits**

7        **PX25A** contains improper and untimely damages opinions at pages 2 (right column), 6 and

8    7 that rely on calculating lost profits over two separate notice periods for the same accused

9    product.   The two-period method dramatically increases the amount of Apple's claims for lost

10   profits from $488,777,933 to $717,153,309.   This two-period calculation for lost profits was not

11   in Mr. Musika's report, was not timely disclosed and is barred by *FRCP* 26(a)(2)(B).

12       Apple's unexcused delay in presenting its two-period calculation prejudiced Samsung.

13   Both Mr. Musika's expert report and his supplemental report calculated lost profits on

14   smartphones for only one period, June 2010 to May 2011.   No alternative was mentioned at his

15   deposition.   Apple never disclosed its two-period theory before serving its proposed PX25 on

16   July 5, 2012, which includes an alternative calculation of lost profits on smartphones from June

17   2010 to January 2011 and then again from April 2011 to October 2011.   (*See* PX25 at 15 (listing

18   lost profits for two periods).)   Samsung timely objected.   (Dkt. No. 1236-4 at 9.)

19       Apple's untimely disclosure prevented Samsung from responding in a rebuttal report or

20   questioning these methods and results during Mr. Musika's deposition.   Apple has no excuse for

21   delay, because the new theory does not reflect any of the changes in asserted claims or additional

22   financial data.   It relies on a two-period theory of notice that Mr. Musika could have used in his

23   initial report.   Samsung would suffer great prejudice if Apple were permitted to present its two-

24   period calculation to the jury.

25

26

27

28

02198.51855/4904869.1

-1-                        Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1    Apple switched to PX25C at the eleventh hour in order to avoid Samsung's objections to

2  the two-period calculations in PX25A.[1]   Now, having been caught, Apple seeks to switch back.

3  On August 6, 2012, recognizing that PX25A's untimely two-period calculation would be

4  excluded, Apple created two fall-back alternatives, PX25B and PX25C.   (*See* Hutnyan Decl., Ex.

5  A.)   The next day, Apple added three other fall-back demonstratives.   (*See id.* at Ex. B )

6  Finally, on August 8, Apple stated that it intended to use PX25C rather than PX25A or PX25B.

7  (*See id.* at Ex. C.)   Samsung objected to PX25C, and the Court sustained the objection.   (Dkt.

8  No. 1668 at 2.)

9    Now, Apple seeks to back-track and use PX25A.   (*See* Hutnyan Decl., Ex. D.)   While

10  Samsung does not object that PX25A is a late-disclosed exhibit – as PX25C was – the two-period

11  theory of damages portions of PX25A are untimely expert opinion.   Samsung has never agreed to

12  the admissibility of PX25A.   The parties have met and conferred repeatedly regarding updating

13  damages exhibits, and Samsung always expressly maintained its right to object.[2]   Apple's

14  gamesmanship about the damages it will seek at trial should not be rewarded.   The two-period

15  damages theory on pages 2, 6 and 7 should be excluded.

16    **PDX34.74-76** contain incomplete and misleading statements of the law, selectively

17  quoting portions of statutes favorable to Apple.   In addition, each slide omits the requirement that

18  the patentee mark its products that practice the patents or registered trade dress to recover

19  damages.   PDX34.76 also omits the phrase "subject to the principles of equity" and other

20  limitations on trade dress damages.   *FRE* 402, 403.   Mr. Musika is not an expert on the law.

21  *FRE* 702-03.   The Court will instruct the jury on the law on patent damages.   Mr. Musika's

22

23    [1]   For the Court's convenience , Samsung has lodged each version of PX25 that Apple has
served on Samsung.   Please note that Apple incorrectly labeled PX25B and PX 25C as "PX26B"
24  and "PX26C."

25    [2]   The two stipulations on damages exhibits explicitly preserve Samsung's objections.
(Dkt. No. 1554 at 3 ("All other objections to the content of the experts' opinions and the
26  admission of exhibits are preserved"); Dkt. No. 1597 at 3 ("Without waiving any objections to the
admission of PX25…").)   Moreover, after Apple updated certain exhibits to Mr. Musika's report
27  to include exhibits marked "alt" with the new two-period calculation, Samsung objected again.
(*See* Hutnyan Decl., Ex. E and F.)

28

02198.51855/4904869.1

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1   testimony on the law would usurp the role of the Court, be prejudicial, and be highly misleading to

2   the jury.   *FRE* 403.

3       **B.      Samsung's Responses to Objections to Cross Examination Exhibits**

4       **DX2606** is not designated as an exhibit, but as a demonstrative.   Mr. Musika intends to

5   testify that "Samsung has failed to tie any of the previously disclosed or recently disclosed

6   amounts to Samsung's general ledger." (Hutnyan Decl., Ex. G at 14:7-8.)   Samsung is entitled to

7   use DX2606 to show that (1) it specifically asked Apple which Samsung documents Apple wanted

8   in order to verify that Samsung's previously disclosed documents tied to its general ledger; (2) in

9   response, Apple told Samsung which documents it wanted; and (3) Samsung produced all of those

10  exact documents.   Apple cannot put Mr. Musika on the stand to testify as to the alleged

11  deficiencies in Samsung's production and simultaneously deny Samsung the opportunity to show

12  that it produced exactly what Apple requested.   Samsung does not intend to relitigate Judge

13  Grewal's Order, but instead to show that Samsung complied with it in the precise manner Apple

14  requested..    Indeed, the Court already ruled that the order cannot be mentioned at all except in

15  one leading "yes" or "no" question.

16      **DX2607**.    Contrary to Apple's assertion, Samsung does not seek to relitigate Judge

17  Grewal's April 23, 2012 Order.   Rather, Samsung seeks to use DX2607 to show the extent of

18  Samsung's financial production.   Apple intends to call Mr. Musika to testify that, "[t]he perpetual

19  changes in Samsung's various spreadsheets between February 3, 2012 and April 30, 2012,

20  ***coupled with the current incomplete disclosures*** combine to undermine the completeness,

21  accuracy, and reliability of Samsung's reported product profitability."   (*Id.* at 13:4-6 (emphasis

22  added).)   Samsung is entitled to test this assertion by showing the true extent of its financial

23  production.   Samsung does not intend to relitigate Judge Grewal's Order.

24  **II.     MARKUS PALTIAN**

25      **A.      Samsung's Objections to Deposition Counter-Designations**

26          Samsung objects to certain counter-designations (135:05-08; 135:10-12; 136:07-

27  13) of Mr. Paltian's deposition testimony.   Through these improper counter-designations, Apple

28

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1   seeks to circumvent this Court's rules by attempting to introduce new evidence that was never

2   identified in response to Samsung's interrogatories or in Apple's expert's non-infringement report.

3   In addition, the counter-designations improperly extend beyond the scope of Samsung's initial

4   designations.

5       Samsung first propounded Interrogatory No. 12 regarding non-infringement on August 3,

6   2011.   (Hutnyan Decl., Ex. EE).   Although Apple supplemented its response to this

7   interrogatory several times, Apple never once alleged in any of its supplementations that the Intel

8   baseband processors in the Accused Products calculated the total transmit power using *all*

9   physicals channels rather than a subset of the channels.   For this reason alone, this non-

10  infringement evidence regarding the operation of the Intel baseband processors is untimely and

11  should be excluded.

12      Moreover, although Apple's infringement expert, Dr. Hyong Kim, did suggest that *the*

13  *3GPP standard* calculates the total transmit power using all the channels in his expert report, Dr.

14  Kim never opined that *the Intel baseband processor* computes this power using all the channels.

15  The 3GPP standard is a different evidentiary basis for Apple's non-infringement theory than is the

16  operation of the Intel baseband processor.   Samsung's infringement expert, Dr. Williams, made

17  this clear when he alleged that the Accused Products infringed Samsung's '516 patent based on

18  two, independent bases—compliance with the 3GPP standard and the structure and operation of

19  the Intel baseband processors included in the Accused Products.   (*See, e.g.,* Expert Infringement

20  Report of Tim A. Williams, Dkt. No. 939-4, Exh. 24 ¶ 75).

21      Mr. Paltian was deposed on March 20, 2012 with consent of both parties.   Samsung, in its

22  opening infringement reports served only two days after the deposition, extensively cited Mr.

23  Paltian's deposition testimony in support of its infringement allegations.   (*See generally* Dkt. No.

24  939-4).   Apple, in its rebuttal non-infringement report served almost a full month later, also cited

25

26

27

28

-4-                                              Case No. 11-cv-01846-LHK

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

Mr. Paltian's deposition testimony.   (Hutnyan Decl., Ex. FF at ¶¶ 60, 64, 114).   Apple, however, never cited to any of Mr. Paltian's deposition testimony regarding the computation of the total transmit power in the Intel baseband processor, nor did Apple's non-infringement expert ever contend that the Intel baseband processor considered *all* the channels in its transmit power computation.   (Hutnyan Decl., Ex. FF at ¶¶ 94-109).   Apple's attempt to introduce this new non-infringement evidence at the eleventh hour unfairly prejudices Samsung and provides Samsung with no opportunity to rebut this new non-infringement evidence.

In addition, the counter-designations clearly extend beyond Samsung's initial designations. Samsung's questioning of Mr. Paltian regarding the operation of the Intel baseband processor source code was limited to confirming compliance with the 3GPP standard.   None of Samsung's initial designations delve into the intricacies of Intel's computation of the total transmit power in the baseband processor.   In short, there was no way for Samsung to anticipate a line of questioning relating to non-infringement theory that was never previously disclosed.   If Apple had wanted to rely on the operation of the Intel baseband processor in support of its non-infringement theory, then it should have cited this evidence in response to Samsung's interrogatories or included the evidence in its expert's report.   Samsung's objection to Apple's counter-designations of Mr. Paltian's deposition testimony should therefore be sustained.

## III.   ANDRE ZORN

### A.   Samsung's Objections to Deposition Counter-Designations

Samsung objects to the entirety of Apple's counter-designations of Mr. Zorn's testimony (91:22-23; 92:1-4; 92:6).   Apple improperly seeks to counter-designate portions of Mr. Zorn's deposition testimony that are speculative and of which Mr. Zorn clearly lacks personal knowledge.

Testimony is prohibited "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."   (Fed. R. Civ. P. 602).   The two counter-designated questions are clearly beyond Mr. Zorn's personal knowledge.   The first question relates to Mr. Zorn's knowledge of "any network implement[ing] the alternative E-bit."   (Zorn Dep. Tr. 91:22-23).   This question, which presumably implicates every cellular network worldwide, cannot possibly be within Mr. Zorn's (or any entity's) personal knowledge and is therefore improper.

The second question asks Mr. Zorn specifically about AT&T's network in the U.S.   (*Id.* at 92:3-4.)   Apple has introduced absolutely no evidence that Mr. Zorn, who is a German resident and an employee of a semiconductor company and not a cellular network operator, is knowledgeable about the network of any U.S. carrier.   Apple asked no preliminary questions to lay the foundation for this question, nor did it introduce evidence sufficient to support a finding that Mr. Zorn has personal knowledge of AT&T's network.   If Apple was seeking admissible evidence of the operation of AT&T's network, it should have subpoenaed and deposed a representative of AT&T who had personal knowledge.

Moreover, Mr. Zorn's responses to these two questions confirm the speculative nature of his answers as well as his utter lack of personal knowledge.   In response to each of the two questions, Mr. Zorn testifies that he does not know about a foreign network's support for the alternative E-bit interpretation.   The answers to these questions have absolutely no probative value and would unfairly imply to the jury that no network worldwide supports Samsung's patented invention when in fact Mr. Zorn possess absolutely no knowledge on the subject. Moreover, Samsung has dropped the *method* claims of the '941 patent.   Whether any network actually uses the patented feature is irrelevant to the infringement inquiry and misleading; Samsung has provided ample (and virtually undisputed evidence) that the Accused Products

02198.51855/4904869.1

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON, WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1   implement the claimed invention at least in their baseband processors—the only relevant inquiry

2   to show infringement of the asserted *apparatus* claims.    For these reasons, Samsung's objection

3   to Apple's counter-designations of Mr. Zorn's deposition testimony should be sustained.

4   **IV.    TIM WILLIAMS, PH.D**

5        **A.    Samsung's Objections to Cross Examination Exhibits**

6        Apple produced PX-188 on June 29, 2012 and PX-96 on April 17, 2012, both well after the

7   close of fact discovery on March 8, 2012 and expert report due dates.    Both are publicly available

8   patent documents, so Apple cannot justify why it waited until after the close of fact discovery to

9   produce them.    Furthermore, Apple appears to be using these exhibits as independent bases for

10  non-infringement, yet it failed to cite these documents in response to Samsung's Interrogatory #

11  12 related to Apple's bases for non-infringement.    (Hutnyan Decl., Ex. EE).    These exhibits are

12  in direct defiance of this Court's Orders requiring disclosure of relevant documents in response to

13  discovery responses.    (*See* Dkt. No. 1563 at 5 (sustaining objection to PX 62 on the grounds that

14  it was not disclosed in response to Samsung's contention Interrogatory No. 7); *see also* Dkt. No.

15  1456 at 3; Dkt. No. 1519 at 2).    By failing to produce these documents during fact discovery and

16  failing to cite these documents in response to Interrogatory #12, Samsung is unduly prejudiced by

17  Apple's untimely disclosure. (*See* Dkt. No. 1563 at 3 (sustaining objection to PX-133 because it

18  was not timely disclosed two weeks after the close of discovery)).

19       Samsung further objects to PX-188 and PX-96 as irrelevant and unfairly prejudicial.

20  *First*, Apple confirmed that these exhibits are not relevant to non-infringement when it failed to

21  identify these documents in response to Samsung's Interrogatory #12.    *Second*, the two exhibits

22  are patent applications that are not at issue in this case.    PX-96 is related to a completely different

23  invention, and PX-188 is a foreign application subject to the patent laws of Japan, not the United

24  States.    It is generally inappropriate to use foreign counterpart applications to define the scope of

25  patent claims.    *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1116 (Fed. Cir. 1983)

26  (explaining that the "varying legal and procedural requirements for obtaining patent protection in

27  foreign countries might render consideration of certain types of representations inappropriate").

28

1    *Third*, Apple's use of PX-188 and PX-96 only serves to confuse and mislead the jury.   For

2    example, these two Samsung applications, which Apple has alleged cover the same invention

3    claimed in Samsung's '516 patent, may impress upon the jury that the applications are valid prior

4    art references (which they are not) or that Samsung is unfairly extending the length of its patent

5    monopoly through multiple patent applications covering the same invention (an allegation not

6    previously set forth by Apple).   Because these applications serve no legitimate purpose and are of

7    little to no probative value, they should be excluded under FRE 403.

8    **B.    Samsung's Responses to Objections to Direct Examination Exhibits**

9    **1.    Samsung's Response to Apple's Objection to SDX3966.012**

10   Nothing in SDX3966.012 illustrates a "new infringement theory" not disclosed in Dr.

11   Williams' reports.   This slide identifies the first channel as the DPDCH channel, which does not

12   support Hybrid Automatic Repeat request (HARQ), and the second channel as the E-DPDCH

13   channel, which does support HARQ – an argument clearly supported by Dr. Williams' expert

14   reports.    For example, ¶ 84 of Dr. Williams' expert report addresses the same first channel and

15   second channel limitation identified in SDX3966.012, and explains that "[t]he E-DPDCH channels

16   support HARQ … while the DPDCH channels do not."   (*See* Dkt. No. 939-4, Ex. 24 ¶ 84).   Dr.

17   Williams again explains at ¶ 88 that the second channel is the E-DPDCH channel because it

18   supports HARQ.   (*Id*. at ¶ 88).   And then again at ¶ 89, Dr. Williams explains that in the

19   accused products "only the enhanced uplink channels support HARQ, while all other channels do

20   not."   (*Id*. at 89).    Finally, Dr. Williams identified the DPDCH channel as an example of a first

21   channel not supporting HARQ at his deposition.   (*See* Hutnyan Decl., Ex. HH at 112).

22   Dr. Williams' expert report therefore describes exactly what slide SDX3966.012 identifies

23   – the DPDCH channel is the non-HARQ first channel and the E-DPDCH channel is the HARQ

24   second channel.   To the extent Apple argues that Dkt. No. 1144 struck all of Dr. Williams'

25   opinions identifying the channels comprising the first channel, Apple is clearly wrong.   At least

26   ¶¶ 84 and 89, paragraphs not at issue in Dkt. No. 1144, identify Dr. Williams' opinions related to

27   the first channel.   Those paragraphs are consistent with Samsung's original infringement

28   contentions that identified the first channel as the DPDCH channel and the second channel as the

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON, WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1  E-DPDCH channel.[3]  (*See* Dkt. No. 939-4, Ex. 22 at 2-3 ("The E-DPDCH channels support

2  HARQ … while the DPDCH channels do not.")).

### 2.   Samsung's Response to Apple's Objection to SDX3966.013

4        Apple's objection to SDX3966.013 is baseless.   From the beginning, Samsung has

5  consistently set forth its infringement analysis of the "total transmit power limitation" in both its

6  infringement contentions and expert report.   Samsung's infringement contentions and Dr.

7  Williams' expert report cite *identical documents* and *identical language* to support the contention

8  that the accused products infringe the "total transmit power" limitation of claim 15.   Samsung's

9  infringement contentions compare the "total transmit power" limitation to Figure 5C, § 4.2.1.1,

10  and § 4.2.1.3 in TS 25.213 and § 5.1.2.5 of TS 25.214 as supporting evidence that the accused

11  products, which are all compliant with the standard, infringe this limitation.   (*See* Dkt. No. 939-4,

12  Ex. 22 at 3-4.)   At § VI(H)(2) of Dr. Williams' opening report, he identifies and cites the

13  identical support from TS 25.213 and TS 25.214 to support his opinion that the accused products

14  infringe this limitation.[4]  (*See* Dkt. No. 939-4, Ex. 24 at Section VI(H)(2)).

15        Apple prematurely objects to SDX3966.012.   That slide does not disclose Dr. Williams'

16  infringement analysis for claim 15.   At trial, Dr. Williams' testimony that the accused products

17  infringe the "total transmit power" limitation will be consistent with Samsung's infringement

18  contentions, the opinions his expert reports, and his deposition testimony.   (*See* Hutnyan Decl.,

19  Ex. HH at 115-16 (total transmit power is the power of all channels "under consideration").

20        Dr. Williams' opinions related to the "total transmit power" limitation were not part of

21  Apple's Motion to Strike and Dkt. No. 1144.   (*See* Dkt. No. 939; *see also* Dkt. No. 1144).

22  Apple's Motion and Hearing arguments were limited to one of Dr. Williams' opinions related to

23  the "first channel" limitation, not the "total transmit power" limitation.   (*Id.*).   Therefore, this

24  Order is not an issue with respect to Dr. Williams' opinions of this limitation.

---

26  [3]   Apple concedes that Samsung's infringement contentions identified the first and second channels as DPDCH and E-DPDCH, respectively.   (*See, e.g.,* Dkt. No. 939-01 at p. 14).

27  [4]   Dr. Williams' analysis of Claim 15 is found at Section VI(H)(12) and incorporates by references Section VI(H)(2).   (*See* Dkt. No. 939-4, Ex. 24 at Section VI(H)(12) and V(H)(2)).

28

02198.51855/4904869.1

-9-                    Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

# V.   **BENJAMIN BEDERSON**

## A.   **Samsung's Objections to Cross Examination Exhibits**

**PX 2226**: Dr. Bederson is a fact witness who will testify about prior art he developed in 2004 called LaunchTile.   This prior art is relevant to Apple's '381 and '163 patents.   In an unrelated case in the ITC (*Apple v. HTC*, ITC-337-TA-797), Dr. Bederson submitted an expert report relating to claim construction issues on one patent that is not at issue in this case (the '859 patent) and two patents that are ('the '381 and '915 patents).   Apple now seeks to use this expert report (PX 2226) when cross examining Dr. Bederson at trial.   Because Dr. Bederson is testifying as a *fact* witness in this matter regarding LaunchTile, his expert opinions from the ITC case on claim construction issues are irrelevant.   Furthermore, allowing Apple to cross examine Dr. Bederson regarding his expert opinions on the '381 and '915 patents from the ITC case will confuse the jury and waste time.   *FRE* 403.   Additionally, in opposing Samsung's attempt to cross-examine Apple's expert, Dr. Singh, with his deposition testimony regarding claim construction from ITC-337-TA-796, Apple accused Samsung of "violat[ing] the spirit of the Court's exclusion of 'reference[s] to findings or rulings in other proceedings."   (Dkt. No. 1607-1 at 2, *quoting* Dkt. No. 1267 at ¶ 11).   The Court sustained Apple's objection.   (Dkt. No. 1657 at 2).   Now, Apple ignores its prior position and seeks to cross-examine Dr. Bederson with his expert report regarding claim construction in ITC-337-TA-797.   Under Apple's own reasoning, this would violate the Court's *in limine* rulings regarding IP rights not claimed by Apple in this action and evidence of how other tribunals have construed Apple patents.   Consequently, Samsung's objection should be sustained.

**PDX 41.2**: In this demonstrative, Apple advances several previously undisclosed validity theories which it apparently believes distinguish LaunchTile from the '163 Patent.   These new theories were not disclosed in Dr. Singh's April 16, 2012 rebuttal expert report regarding the validity of the '163 patent and therefore should be precluded.

In paragraph 37 of his rebuttal report, Dr. Singh opines that LaunchTile does not anticipate the '163 patent because there are unimplemented application tiles in Dr. Bederson's prototype system.   (Hutnyan Decl., Ex. N (Singh Rebuttal Report at ¶ 37)).   At 00:01 – 00:08 and 00:15 –

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON, WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

00:17 of PX 41.2, the user merely appears to be attempting to access such unimplemented application tiles, and Samsung therefore does not object to a revised demonstrative video containing only these clips.   The remainder of the video, however, goes far beyond Dr. Singh's report.   At 00:08 – 00:13, 00:18 – 00:22, and 00:55 – the conclusion of the video, the user attempts to navigate from an Application-Tile level view to an adjacent Application Tile.   At 00:22 – 00:29, the user attempts to scroll a list from the intermediate, Zone level view.   And, at 00:29 – 00:55, the video shows the user accessing what appear to be email files from the Application-Tile level view.   None of these modes of operation are offered by Dr. Singh in his April 16th rebuttal report.   Because Dr. Singh cannot opine on these matters, they have no relevance to the cross-examination of Dr. Bederson and can only waste time and confuse the jury. *FRE* 403.   Apple should not be permitted to cross-examine Dr. Bederson on new validity theories that its expert never disclosed.   Samsung's objection should be sustained

## B.   Samsung's Responses to Objections to Direct Examination Exhibits

*DX 546/SDX 3951.010*: Samsung timely disclosed LaunchTile in its invalidity contentions and expert report as an anticipating reference to Apple's '163 patent.   On April 16th, 2012, when Apple served Dr. Singh's rebuttal expert report, Samsung learned for the first time that Dr. Singh's primary criticism of LaunchTile was that the change in visual appearance of Application Tiles during zooming steps necessarily meant that the zoomed-in views were "entirely distinct" from the zoomed-out views.   (Hutnyan Decl., Ex. L (Singh Rebuttal Report at ¶ 33).   DX 546, an article authored by Dr. Bederson in 1994 describing a method of "semantic zooming," demonstrates that Dr. Singh's assertion is factually incorrect.   As the author of the DX 546 and the creator of LaunchTile, Dr. Bederson has first-hand, percipient knowledge regarding the topic of "semantic zooming" and whether the concept is embodied in his LaunchTile system.   Finally, because the article cited as DX 546 was cited in paragraph 31 of Dr. Bederson's Declaration in the Preliminary Injunction phase, (Dkt # 165) Apple has been on notice of the existence of this document since August 2011 – nearly one year.   Apple also took Dr. Bederson's deposition on September 17, 2011 and had an opportunity to explore DX 546 with him at that time.   Additionally, any claim of prejudice by Apple is disingenuous as it made no effort to depose Dr. Bederson a second time

and explore his background knowledge regarding zooming after Samsung identified LaunchTile as an anticipating reference to the '163 Patent in its invalidity contentions.   (Hutnyan Decl., Ex. R). Because this document simply provides context for a timely disclosed invalidity theory, Apple's objection should be overruled.

*SDX 3951.007/SDX3951.008*:  SDX 3951.007 and .008 are offered as demonstrative exhibits by Dr. Bederson to explain, factually, how the XNav source code allows for the various zooming operations experienced by the XNav user.   Dr. Bederson will offer absolutely no opinion regarding the invalidity of the '163 Patent.   His testimony will be limited strictly to his personal knowledge of the source code he helped create.

Apple's objection that these demonstrative exhibits somehow relate to an undisclosed invalidity opinion are not well taken.[5]   Mr. Gray, Samsung's expert for the '163 Patent, set forth his invalidity theories regarding XNav and LaunchTile in detail in Appendix 7 of his expert report. (Hutnyan Decl., Ex. P (Gray Expert Report at Appendix 7)).   In paragraph 318, Mr. Gray notes that in forming his opinions, he relied on the source code attached to Dr. Bederson's Declaration in Support of Samsung's Opposition to Apple's Motion for Preliminary Injunction.   (Hutnyan Decl., Ex. N (Gray Expert Report at ¶ 318).   This very same source code was produced to Apple nearly a year ago, and Apple's counsel questioned Dr. Bederson for hours about it during his September 17, 2011 deposition:

> Q.   Okay.   So can you walk us through the source code?
> A.   Do you mean sort of show you roughly function by function what it does?
> Q.   Yes.

(*See, e.g.*, Hutnyan Decl., Ex. Q (Bederson Dep. at 23:21-25).   Apple's objection should be overruled.

---

[5]   PDX 29.35, which was used by Dr. Singh during his direct examination, contained a hierarchical depiction of how the Browser application of the accused Samsung products derive a "box of content" from the underlying code of an HTML document.   In offering this demonstrative exhibit, Apple's position was that the description of HTML code was fairly encompassed by Dr. Singh's brief reference to "HTML-derived structure" in paragraph 68 of his infringement report.   (Hutnyan Decl., Ex. O (Singh Expert Report at ¶ 68).   It is not reasonable for Apple to now demand a greater level of specificity in the code analysis of Mr. Gray's invalidity report.

# VI.    ADAM BOGUE

### A.    Samsung's Objections to Cross Examination Exhibits

**1. PDX 46.4 Should Not Be Admitted:** Apple improperly seeks to cross examine Mr. Bogue, a fact witness, with a demonstrative containing a new invalidity theory. The first three slides of PDX 46 show a demonstration and an annotated graphical representation of the snap back functionality in the DiamondTouch system developed by MERL.    However in    PDX 46.4, Apple for the first time in this litigation indicates that although the DiamondTouch system snaps back as required by the claims, it does not snap back "until the area beyond the edge of the electronic document is no longer displayed."    PDX 46.4 (quoting '381 patent at col 37:17-18). Neither Apple nor its expert have ever raised this argument until now.    In his rebuttal report on the validity of the '381 patent, Dr. Balakrishnan references the limitation in question twice – once when discussing the background of the '381 patent and again when discussing the Lira reference. (Hutnyan Decl., Ex. H at 8, 25).    Never does he argue that the DiamondTouch system does not practice this limitation of claim 19.    In his deposition, Dr. Balakrishnan admitted that "[w]hen [the DiamondTouch system] recenters, the area beyond the edge is no longer displayed . . . [t]hat is true.").    Hutnyan Decl., Ex. I (Balakrishnan April 20, 2012 Dep. Tr.) at 218:6-8.    He did not argue or even attempt to argue Apple's newly formulated invalidity theory.

Additionally, Mr. Bogue is not offering expert testimony in this case.    The demonstrative also includes claim language.    By asking Mr. Bogue about the meaning of the claim limitation "until the area beyond the edge of the document is no longer displayed" and whether the DiamondTouch system teaches this limitation, Apple would improperly seek to elicit from a fact witness matters of claim construction and legal conclusions.

**2. MERL00001:**   MERL00001 is a hard drive[6] containing almost 160 GB of data consisting of over 400,000 files, including e-mails, videos, slides, source code, presentations and other documents related to the development of the DiamondTouch system.    Apple has failed to specifically identify what documents or files on the MERL hard drive it plans to use to cross-examine Mr. Bogue.    The citation of 160 GB of data consisting of over 400,000 files is clearly not sufficient notice to Samsung regarding the materials Apple intends to rely on.    If Apple intended to use documents from the MERL hard drive, its obligation was to disclose the specific documents.    Its current disclosure is the equivalent of citing every document with a Bates number with the prefix "APLNDC."    This is clearly improper, and Apple should be precluded from crossing a fact witness with undisclosed information.

**B.     Samsung's Responses to Objections to Direct Examination Exhibits**

**3. DX655:** DX655 includes source code files, including screenshots of date-time stamps and application identification, that were produced to Apple on October 20, 2011, well before the discovery cutoff.   Hutnyan Decl., Ex. GG (Oct. 20, 2011 letter producing MERL hard drive).   Apple's second objection relating to demonstration is unclear and meritless.    Apple has not identified the demonstration that it is referring to.    Fact witnesses are not required to discuss the substance of their trial testimony beforehand.   Nevertheless, Adam Bogue (former VP of marketing at MERL) has already discussed demonstrations of Tablecloth.    Bogue Decl. 5/17/12 (Dkt. No. 933); Bogue Supp. Decl. 6/7/12 (Dkt. No. 1066).    Apple had the opportunity to ask Mr. Bogue about the Tablecloth demonstrations when it deposed him on March 9, 2012.   (Hutnyan Decl., Exs. K, J (Bogue Dep. Tr. 3/9/12; March 7, 2012 email from T. Briggs to P. Besirof)).

---

[6]    Samsung is not lodging this exhibit because it is a physical hard drive that cannot be easily lodged with the Court and the size of its contents makes it prohibitive to upload all of the files on to an FTP site.

1   Apple's first objection under FRE 403 is likewise meritless.   Apple previously made this

2   argument in the supplemental declaration of R. Balakrishnan (Dkt. No. 1121, 6/22/12), and the

3   Court ruled that this document was probative.   *See* Dkt. No. 1158 (6/29/12) at 16.   DX655 is not

4   misleading as explained in Samsung's Opposition to Apple's Objection to Reply Evidence (Dkt.

5   No. 1127, 6/23/12) – it does not make sense to create the .htm file cited in DX655 to link to a non-

6   existent .swf file that was ostensibly created months later.   Finally, the proper remedy for

7   Apple's complaint of the absence of information is not to strike this exhibit, but rather, for Apple

8   to designate cross exhibits, which Apple chose not to do.   *See, e.g.,* FRE 106.   Apple cannot

9

10   seek relief from the Court for its own failure to do so.

11   **4. DX 695**:   Apple objects to DX 695, an exhibit Samsung intends to use during

12   the direct examination of Mr. Adam Bogue, a former VP at MERL, the company that developed

13   the DiamondTouch prior art system.   DX 695 is a 2003 email from Mr. Bogue to an Apple

14   employee discussing a meeting between Apple and MERL at which the DiamondTouch system

15   was demonstrated to Apple.   The email is directly related to when Mr. Bogue first started

16   demonstrating the DiamondTouch prior art.   In this trial, Apple's Senior VP, Scott Forstall, told

17   the jury (or at least implied) that Apple invented multi-touch, scrolling and pinching to zoom on a

18   touch screen – even though multi-touch was well known and, in fact, demonstrated to Apple by

19   Mr. Bogue in 2003.   (8/3/12 Trial Tr. at 740:12-25, ("Yeah.   The whole illusion *we were trying*

20   *to create* with the touchscreen was that you – that your fingers were literally reaching through the

21   screen to the content behind those two fingers to stay the same, and as you pinched . . . you are

22   zooming into the photo, the entire bicycle is getting bigger.")).   Mr. Forstall also stated (or at

23   least implied) that Apple was the first to use capacitive touch screens.   (*Id.* at 746:18 – 747:13,

24   ("Most touchscreens out there that people had in their devices were called resistive touch . . . . *So*

25   *the hardware team set out to build* something called capacitive touch . . . "))   Again, however,

26   capacitive touch was well known and, in fact, the DiamondTouch system demonstrated to Apple

27

28

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1   in 2003 used capacitive coupling in its touch screen.    Accordingly, Apple's objections as to

2   relevance and prejudice are without merit.

3   **VII.    CLIFTON FORLINES, PH.D**

4       **A.    Samsung's Objections to Cross Examination Exhibits**

5       **1. Dr. Balakrishnan's Expert Report and Deposition Transcripts:** Apple improperly

6   seeks to cross examine Dr. Forlines, a fact witness, with the invalidity report of Dr. Balakrishnan.

7   Dr. Balakrishnan's expert reports are not in evidence.    Further, Dr. Balakrishnan's report is

8   hearsay and does not fall within the hearsay exception for reports or records as it was prepared

9   entirely for the purposes of this litigation.    *See FRE* 801(c); *FRE* 802; *FRE* 803.    Hearsay

10  evidence and expert testimony is inadmissible as evidence for impeachment.    *See Wilson v.*

11  *Hartford Ins. Co. of the Midwest,* No. 10-993, 2011 WL 2670199, at *2-3 (W.D. Wash. 2011)

12  (granting motion to exclude expert reports as hearsay); *Grand Acadian, Inc. v. United States,* No.

13  07-849, 101 Fed. Cl. 398, 2011 WL 4684276 (Fed. Cl. Oct. 6, 2011) (sustaining an objection that

14  expert reports are hearsay."); *Bobb v. Modern Products, Inc.*, 648 F.2d 1051, 1055-56 (finding

15  cross-examination of a witness using an expert report improper and reversible error).    The report

16  is further inadmissible under *FRE* 403 as it would mislead and confuse the jury.    The deposition

17  is also improper because Dr. Forlines has neither reviewed nor seen the transcripts.    They are

18  hearsay as Dr. Balakrishnan is readily available to testify.

19      **B.    Samsung's Responses to Objections to Direct Examination Exhibits**

20      **2. DX693**:[7]    This is the *third* time Apple has attempted to preclude Samsung from relying

21  on the Mandelbrot/Fractal Zoom prior art.    Judge Grewal already found that the

22  Mandelbrot/Fractal Zoom prior art was properly disclosed in Samsung's invalidity contentions.

23  Dkt. No. 1144 at 3.    Undeterred, Apple again tried to preclude Samsung from relying on the

---

[7]    DX693 was produced in October of 2011. (Hutnyan Dec. at GG.)

1    Mandelbrot/Fractal Zoom prior art in Samsung's Opening Statement.    The Court rejected

2    Apple's second attempt, finding that, "the prior art reference was disclosed in discovery and was

3    not subject to Judge Grewal's Order striking expert testimony."[8]  (Dkt. No. 1456 at Slide 86.)

4    Apple now tries for a third time to preclude the Mandelbrot/Fractal Zoom prior art.

5          The third time is not a charm, as Apple's argument remains meritless.    Despite Apple's

6    attempt to argue otherwise, it is crystal clear that the source code in DX693 was allowed in Dkt.

7    No. 1144 at 3.    Earlier in the case, Apple moved to strike expert testimony on Samsung's

8    invalidity theory based on FractalZoom (also called Mandelbrot).    Apple moved to exclude 10

9    references, including explicitly moving to strike the Mandelbrot/FractalZoom source code that is

10   now Exhibit 693. *See* Apple's Proposed Order regarding its Motion to Strike (Dkt. No. 939, #12 at

11   1 (moving to strike "Mandelbrot or FractalZoom source code and executables").")    Apple filed its

12   Motion to strike on May 17, 2012.    Apple dropped its contentions regarding the '915 dependent

13   claims before Samsung's opposition was due on May 31, 2012.    Because seven of the contested

14   references were no longer relevant after Apple dropped its dependent claim contentions, Samsung

15   only opposed Apple's motion with respect to **three** relevant references, including the

16   Mandelbrot/FractalZoom source code embodied in Exhibit 693. (Samsung Opposition, Dkt. No.

17   1000 at 2-4 ("Samsung's Invalidity Contentions expressly state that the DiamondTouch System

18   includes "documents and source code describing the same." (Ward Dec. Ex. A at 12.)    There can

19   be no dispute that the ***Mandelbrot***, DTLens, and DTMouse ***source code*** falls squarely within this

20   definition.") (emphasis added)).    Apple acknowledged Samsung addressed these three of ten

_____

21   8    FractalZoom and Mandelbrot are the same.    Apple's expert, Dr. Singh acknowledges that
     FractalZoom is the same as Mandelbrot in his rebuttal expert report. *See* Singh Rebuttal report
22   (Hutnyan Decl., Ex. N) at, *e.g.*, ¶159; *See also* 3/8/2012 Forlines Dep. Tr. 63:21-64:2 (Hutnyan
     Decl., Ex. M at 63, 64 ("Q. Are you familiar with an application referred to as FractalZoom with
23   regards to DiamondTouch? A. Yes, I am. Q. Is it the same application that's also referred to as
     Mandelbrot or Mandelbro? A. Mandelbrot, yes.").

1   references in its reply. (Apple's Reply, Dkt.. No. 1054 at 1).

2       In his order, Judge Grewal denied Apple's motion as to the Mandelbrot/FractalZoom

3   invalidity theory, including the source code and executables in Exhibit 693 by denying Apple's

4   motion with respect to the ***three*** references for which Samsung opposed Apple's motion. (Dkt. No.

5   1144 at 3.)   Apple next moved to exclude Samsung's Opening slide number 86, but the Court

6   correctly acknowledged that Mandelbrot/FractalZoom was properly disclosed. (Dkt. No. 1456 at

7   3.)   Consequently, Samsung should not be precluded from presenting the source code evidence

8   for the theories that Judge Grewal and this Court already determined were disclosed in discovery

9   twice.[9] *See Genentech, Inc. v. Univ. of Penn.*, 2012 WL 424985 at *2 (N.D. Cal., Feb. 9, 2012.)

10  **<u>DX 696</u>**: Apple objects to DX 696, an exhibit that Samsung intends to use in the direct

11  examination of Dr. Clifton Forlines, the author of the Fractal Zoom program for the MERL

12  DiamondTouch system.   DX 696 is an article co-authored by Dr. Forlines about DiamondTouch.

13  The article, dated December 2005, describes how the system was publicly accessible in the MERL

14  lobby, *e.g.,* "hundreds of lab visitors, everyone from technologists to university students to

15  researchers' children, have passed through MERL's lobby and casually interacted with this table

16  over the past two years." (DX 696.003).   Contrary to Apple's contention, on October 7, 2011,

17  Samsung produced an identical October 2005 copy of the article at SAMNDCA00035999-36008.

18  (Hutnyan Decl., Ex. L).   The DX 696 copy was also used during the deposition of former MERL

19  employee, Mr. Adam Bogue.   In his expert report, Samsung's expert, Dr. Van Dam discloses his

20  opinion and understanding that the DiamondTouch system qualifies as prior art.   Dr. Van Dam

---

9       To the extent Apple re-argues that the source code itself was not cited in the invalidity
contentions, Apple is still wrong.   The purpose of invalidity contentions is to provide a plaintiff
with fair notice of the defendant's invalidity theories.   Evidentiary examples and proof in an
expert report are proper so long as they do not advance new invalidity theories.   *Genentech, Inc.
v. Trustees of Univ. of Penn.*, 2012 WL 424985 at *2 (N.D. Cal. February 09, 2012).

bases his opinion and understanding in part on the depositions of Forlines and Bogue. Accordingly, Apple's objections as to timeliness and for allegedly raising new invalidity theories are without merit.

## VIII.   WOODWARD YANG, PH.D

### A.   Samsung's Objections to Cross Examination Exhibits

#### 1.   PX 2040 is irrelevant (FRE 401) and unduly prejudicial (FRE 403)

Dr. Woodward Yang will testify that Apple's iPhone 3G, 3GS, 4, iPad 2 and iPod Touch (4th Generation) ("Accused Apple Devices") infringe three Samsung "feature" patents.   PX 2040 is the Declaration of Christopher Stretch Regarding Samsung's August 2, 2012 Courtroom Visit ("The Declaration") that was submitted in response to the Court's request that Samsung identify the individuals who visited the Ceremonial Courtroom.   The Declaration lays out the facts surrounding the visit by Mr. Stretch and identifies the Samsung employees and interpreters who were present.   Mr. Stretch's Declaration is irrelevant in that it has no tendency to make any fact in dispute more or less likely.   *FRE* 401.   Dr. Yang was not even among those who visited the Courtroom.   Indeed, the only conceivable use of this document by Apple is to embarrass or prejudice Samsung before the jury.   Thus, to the extent Apple is able to articulate some relevance to Dr. Yang's cross-examination on patent infringement – which is highly doubtful – any such relevance is far outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time.   *FRE* 403.

#### 2.   PX 61 was never disclosed, and is irrelevant and unduly prejudicial

PX 61 consists of two copies of a translated Samsung document entitled "Next Phase UX Direction through iPhone and TouchWiz Competitiveness Analysis."   This document was never disclosed by Apple in response to Samsung's interrogatory no. 12 seeking all non-infringement contentions nor any other Samsung interrogatory.   The court should exclude this document on that basis alone.   (August 6, 2012 Trial Tr. at 1253-1256).   Further, it is irrelevant.   The document contains no reference to any of the specific iPhone features that are accused by Dr.

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON, WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN

1   Yang of infringing Samsung's three feature patents – Apple is simply trying to insert one of the

2   documents it thinks shows Samsung "copying" even though (1) copying is irrelevant to

3   infringement; and (2) this part of the case involves Apple's infringement of Samsung technology.

4   Because the competitive analysis by Samsung does not even reference the features at issue, this

5   document would only confuse the jury as to the issue of infringement by Apple and prejudice

6   Samsung.   It should be excluded under Rules 401 and 403 as irrelevant and unduly prejudicial.

7

8       **B.    Samsung's Responses to Objections to Direct Examination Exhibits**

9           **1.       Dr. Yang properly relies on the source code in DX 645 to**

10                **demonstrate infringement of the '711 Patent.**

11          Apple does not claim that the source code was not in the report -- Dr. Yang's expert report

12   on infringement cited each and every page of Apple source code now in DX 645 and tied them to

13   each element of the asserted claims.   (Hutnyan Decl., Exs. U, W, and X.)   Apple instead objects

14   to DX 645 by claiming that Dr. Yang did not provide supporting details for his conclusion that

15   Apple's devices practice "the applet limitation" of the '711 patent.   What Apple refers to as "the

16   applet limitation" of claim 9 is actually "a controller for generating a music background play

17   object, wherein the music background play object includes an application module which includes

18   at least one applet."   (Hutnyan Decl., Ex. DD at col. 7:46-48).   Dr. Yang's report identified this

19   exact structure, including numerous examples of infringing applets in the source code, and cited to

20   the specific source code within DX 645 in which they were found.   (Hutnyan Decl., Ex. X at

21   claim 9[a] and fn.22).   Apple's argument – that its source code consisted of too many examples

22   of infringing applets – is not a basis for an objection.   Moreover, Apple's expert on the '711, Dr.

23   Tony Givargis, submitted a rebuttal report in which he discussed each file that Dr. Yang

24   indentified, further showing that Apple had sufficient notice.   (Hutnyan Decl., Ex. Y at 14-24, ¶¶

25   40-53 and accompanying chart).   Apple could have asked Dr. Yang at deposition to give further

26   specific examples of applets in Apple's source code, but did not.   Apple is free to argue on

27   rebuttal and cross that Dr. Yang's opinion lacks support.

28

-20-                    Case No. 11-cv-01846-LHK

1      **2.      Apple's Argument Regarding the Doctrine of Equivalents was Rejected**

2              **by Magistrate Judge Grewal**

3          Dr. Yang, as disclosed in his expert report, will testify why tapping the scroll key on the

4      screen to scroll through pictures is equivalent to "swiping" the screen to scroll for the purposes of

5      claim 1 of the '460 patent.    (Hutnyan Decl., Ex. CC).    Apple seeks to exclude Dr. Yang's

6      testimony on the equivalency of these two functions.    (Hutnyan Decl., Ex. V at Ex. A1-2 at 6-7);

7      *compare, e.g.*, JX 1055 and 1056.    However, Judge Grewal has already explicitly denied Apple's

8      requested relief.    On June 27, 2012, after full briefing, Judge Grewal denied Apple's motion to

9      strike this opinion from Dr. Yang's infringement report due to an alleged insufficiency in

10     Samsung's infringement contentions.    *See* Dkt 1144 at 6, ¶ 22 (Order); Dkt 939-01 at 13.    The

11     Court should again deny this request.

12         As Dr. Yang recognizes in his report, equivalency may be shown by demonstrating

13     "insubstantial differences" between an accused product and the claimed invention, which may be

14     demonstrated through the function/way/result test.    (Hutnyan Decl., Ex. T at ¶ 28); *Applied Med.*

15     *Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1335 (Fed. Cir. 2006).    Dr. Yang demonstrated

16     these "insubstantial differences" in claim charts appended to his report, where he cited both screen

17     captures from Apple Devices and citations to 47 pages of source code – from within thousands of

18     pages produced – to demonstrate that"[u]nder the doctrine of equivalents, swiping meets this

19     [scroll keys] element."    (Hutnyan Decl., Ex. U at 1A-1 at 3; Ex. V at 1A-2 at 6-7).    In particular,

20     to demonstrate these "insubstantial differences," Dr. Yang arrayed three screen captures of

21     swiping from Apple's iOS 5 operating system above three screen captures of "use of scroll keys"

22     in iOS 4.    (Hutnyan Decl., Ex. V at 1A-2 at 6-7).    These screen shots are virtually identical,

23     illustrating "insubstantial differences" in both "function" (reviewing stored photos), "way"

24     (physical contact with the screen), and "result" (displaying a next or a previously captured photo).

25     Dr. Yang also discussed this in his deposition.    *See* (Hutnyan Decl., Ex. BB at Ex. 282:18-

26     288:23).

27         Apple further objects that Dr. Yang is "barred by prosecution history estoppel" from

28     relying on the doctrine of equivalents.    It is Apple's burden, however, to establish prosecution

1    history estoppel.    *McHugh v. Hillerich & Bradsby Co.*, No. C 07-03677 JSW, 2010 U.S. Dist.

2    Lexis 16164, at *25-26 (N.D. Cal. Feb. 24, 2010) (White, J.) ("The party asserting prosecution

3    history estoppel has the burden to establish that a patentee made a narrowing amendment.")    In

4    his rebuttal to Dr. Yang's infringement report, Apple's expert provided only a conclusory opinion

5    regarding foreseeability of "swiping," failing to carry Apple's burden.    (Hutnyan Decl., Ex. AA

6    at ¶ 92).    Even had Apple carried its burden, it would be nonsensical to preclude Dr. Yang from

7    responding to an argument first raised by Apple's expert in a ***rebuttal*** to Dr. Yang's initial report.

8

9

10   DATED: August 9, 2012                    QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
11

12                                            By  */s/ Victoria F. Maroulis*
                                                  Victoria F. Maroulis
13                                                Attorneys for SAMSUNG ELECTRONICS
                                                  CO., LTD., SAMSUNG ELECTRONICS
14                                                AMERICA, INC., and SAMSUNG
                                                  TELECOMMUNICATIONS AMERICA, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTIONS AND RESPONSES RE: EXHIBITS FOR MUSIKA, BOGUE, FORLINES, BEDERSON,
WILLIAMS, ZORN, PALTIAN, YANG AND DESIGNATED TESTIMONY OF PALTIAN AND ZORN