1   HAROLD J. MCELHINNY (CA SBN 66781)          WILLIAM F. LEE
    hmcelhinny@mofo.com                          william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)            WILMER CUTLER PICKERING
    mjacobs@mofo.com                             HALE AND DORR LLP
3   RACHEL KREVANS (CA SBN 116421)               60 State Street
    rkrevans@mofo.com                            Boston, MA 02109
4   JENNIFER LEE TAYLOR (CA SBN 161368)          Telephone: (617) 526-6000
    jtaylor@mofo.com                             Facsimile: (617) 526-5000
5   ALISON M. TUCHER (CA SBN 171363)
    atucher@mofo.com                             MARK D. SELWYN (SBN 244180)
6   RICHARD S.J. HUNG (CA SBN 197425)            mark.selwyn@wilmerhale.com
    rhung@mofo.com                               WILMER CUTLER PICKERING
7   JASON R. BARTLETT (CA SBN 214530)            HALE AND DORR LLP
    jasonbartlett@mofo.com                       950 Page Mill Road
8   MORRISON & FOERSTER LLP                      Palo Alto, California 94304
    425 Market Street                            Telephone: (650) 858-6000
9   San Francisco, California  94105-2482        Facsimile: (650) 858-6100
    Telephone:  (415) 268-7000
10  Facsimile:  (415) 268-7522

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC
12

13                      UNITED STATES DISTRICT COURT

14                     NORTHERN DISTRICT OF CALIFORNIA

15                            SAN JOSE DIVISION

16

17  APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK

18                  Plaintiff,                   **APPLE'S OBJECTIONS AND
                                                 RESPONSES TO OBJECTIONS
19          v.                                   REGARDING TERRY MUSIKA,
                                                 MARKUS PALTIAN, ANDRE ZORN,
20  SAMSUNG ELECTRONICS CO., LTD., a             TIM WILLIAMS, BENJAMIN
    Korean business entity; SAMSUNG              BEDERSON, ADAM BOGUE,
21  ELECTRONICS AMERICA, INC., a New York        CLIFTON FORLINES, AND
    corporation; SAMSUNG                         WOODWARD YANG**
22  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,          **Trial:      August 13, 2012**
23                                               **Time:       8:30 a.m.**
                    Defendants.                  **Place:      Courtroom 1, 5th Floor**
24                                               **Judge:      Hon. Lucy H. Koh**

25

26

27

28

# I.    TERRY MUSIKA

## A.    Responses to Samsung's Objections to Apple's Exhibits

*PX25A.*  Samsung stated its objections to PX25A as follows: "PX25A contains improper and untimely damages opinions at pages 2 (right column), 6 and 7.  The methods used for these calculations were not timely disclosed, contrary to Fed. R. Civ. P. 26(a)(2)(B) and 26(e)." This objection is limited to what is labeled in PX25A as "Notice Period 2."  Samsung's objection is untimely.  As Apple disclosed PX25A on Wednesday, August 8, 2012, Samsung should have raised any high-priority objection by Thursday under the parties' and the Court's agreed schedule.

Samsung's objection thus is an improper motion for reconsideration of the Court's August 10 order regarding PX25C.  (Dkt. No. 1668.)  The Court should not permit repeated high priority objections for prior disclosures for the same witness.  The Court has ruled.  The only question now is whether the version of PX25A complies with the Court's August 10 ruling.  It does.

PX25A uses the identical format as PX25C.  Every number and every table in PX25A is *identical* to what Apple provided Samsung on July 28, 2012 before the parties' July 30 Stipulation on Updated Damages Opinions and Exhibits.  (Dkt. No. 1554.)  That is what the Court ordered: "Apple may use PDX25C [*sic*] to present only damages calculations disclosed pursuant to the July 28 updated exchange."  (Dkt. No. 1668 at 2-3.)  The only difference between the July 28 disclosure and PX25A is the agreed removal of pages per the parties' August 6 stipulation regarding confidentiality.  (Dkt. No. 1597 ¶ 6.)  With this submission, Apple lodges a copy of PX25A and the July 28 disclosure marked to show how each page in PX25A corresponds exactly to a page in the July 28 disclosure.[1]

Regardless, Samsung's arguments lack merit.  First, any objections regarding untimeliness of the Updated Financial Results and Changes to Intellectual Property Asserted were waived via the parties' July 30 stipulation.  That stipulation referred specifically to the July 28 exchange, and the parties agreed to forego these objections.  (Dkt. No. 1554, recitals & ¶ 2.)  Second, the Notice

---

[1] Consistent with prior submissions, the capacity pages in the exhibit are sealable because they contain capacity information and accordingly are being lodged with the Court.  Samsung's objections are not directed at these pages and the document would otherwise need to be sealed.  Apple also represents that they are identical to the July 28 disclosure.

1   Period 2 calculations are not untimely.  The issue of alternative notice periods was specifically

2   identified and explained in Mr. Musika's March 22, 2010 expert report at paragraphs 88 and 89

3   and also in his May 8 supplemental report at paragraph 10.  (Hung Decl. Ex. 8, Expert Report of

4   T. Musika ¶¶ 88, 89; Hung Decl. Ex. 9, Suppl. Expert Report of T. Musika ¶ 10.)  As Mr. Musika

5   explained there, not all alternate calculations were attached in paper to the report, but all were in

6   effect provided to Samsung.  Specifically, Mr. Musika provided Samsung a working and

7   complete copy of the Access database (a standard program used by financial professionals) that

8   he used in his calculations with all data necessary and will all notice periods available in the

9   database.  His report identifies how Samsung and its expert could use these electronic files to

10  produce numbers for alternate scenarios.  As Mr. Musika can and will testify, the Notice Period 2

11  calculations in PX25A derive from the Access database first disclosed on March 22, 2012 as

12  updated to reflect Updated Financial Results and Changes to Intellectual Property Claims.

13      Moreover, Samsung received a specific copy of the database with all the parameters for

14  Notice Period 2 set with Apple's pretrial disclosures on July 6.  (*See* Hung Decl. Ex. 11 (July 6,

15  2012 email to counsel with file entitled "Damages Calculations – Notice Period 2.accdb").)

16  Finally, Notice Period 2 exists so that the jury can calculate damages based on the alternatives

17  stated by Samsung based on Samsung's arguments during pretrial motions.  Given Samsung's

18  repeatedly stated concerns and Apple's repeated disclosures, Samsung should not now be heard

19  when it complains that Apple sought to address those concerns.   All of PX25 should be admitted.

20      Finally, as noted, Samsung's objections to PX25A are limited to the material labeled

21  "Notice Period 2."  While Apple contests Samsung's objection, Apple will have a version of

22  PX25A with the objected-to material removed for use in Court on Monday if necessary.

23      ***PDX34.74-76.***  Samsung objects to three demonstrative slides that state the basic criteria

24  for damages that Mr. Musika applied in his analysis.  Each slide is a direct quotation from the

25  relevant damages statutes, 35 U.S.C. § 284 & 289 and 15 U.S.C. §1117.  Mr. Musika will not

26  purport to explain the law to the jury but will simply state that the tests that he applied in his

27  analysis.  (Hung Decl. Ex. 8 at ¶¶ 80-82.)  The demonstratives will help the jury understand that

28

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

2

1    Mr. Musika applied three different tests and why.   If the Court prefers that the slides not quote or

2    cite law directly, Apple will use the alternate set of slides submitted herewith.

3        **B.        Apple's Objections to Samsung's Cross-Examination Exhibits**

4        ***DX2607 & DX2606***.  DX2607 is a chart prepared by Quinn Emanuel that a Samsung

5    attorney submitted with Samsung's opposition to Apple's damages-related sanctions motion.

6    (*See* Dkt. No. 801-1 (Martin Decl. Ex. 1); Dkt. No. 801 ¶ 2 (describing the exhibit as "a chart

7    prepared by our litigation staff.").)  That motion resulted in the April 23 sanctions order.  (Dkt.

8    No. 880.)

9        It is classic hearsay.  Moreover, its only potential relevance is to prove that Samsung made

10   a complete production of documents before discovery ended.  This is in direct conflict with the

11   Court's April 23, 2012 order (Dkt. No. 880), an issue that Samsung cannot now relitigate.

12       Apple will abide by the Court's explicit instruction that "Apple may ask: 'Hasn't a

13   Magistrate Judge managing the discovery process in this case questioned the accuracy of

14   Samsung's financial data?'  Unless Samsung opens the door, no other questions in this line of

15   questioning will be permitted and Apple may not reference this issue in its demonstratives."

16   (Dkt. No. 1668 at 2.)  Samsung's proposed exhibit would both open the door and challenge the

17   correctness of the Court's own orders.

18       Moreover, the disclosure is untimely.  As Samsung will argue, the issue of the reliability

19   of Samsung's data has been known since May 8, when Mr. Musika issued a supplemental report.

20   Yet Samsung did not list this document in any pretrial or trial disclosure before Saturday.

21       ***DX2606*** is an April 25 letter written by Apple's counsel to Quinn Emanuel regarding

22   Apple's expectations regarding Samsung's compliance with the Court's April 23, 2012 sanctions

23   order.  Samsung presumably will offer it for the same purpose as DX2706.  Like DX2706, it is

24   hearsay and inadmissible for all the same reasons.

25

26

27

28

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

3

1  ## II.   MARKUS PALTIAN

2  ### A.   Responses to Samsung's Objections to Apple's Counter-Designations

3  Samsung objects to Apple's counter-designated testimony of Markus Paltian, an Intel

4  engineer, as beyond the scope of Samsung's initial designation and as presenting a new non-

5  infringement theory.  Apple has counter-designated under two minutes of deposition testimony

6  from Markus Paltian that is clearly relevant to the testimony designated by Samsung.  The

7  testimony Apple designated relates to two areas:  (1) the calculation of total transmit power by the

8  Intel baseband chip; and (2) whether Intel has conducted a study to determine in actual practice

9  how often the relevant portion of the standard is implemented.  (Hung Decl. Ex. 30 at 135:05-08;

10  135:10-12; 136:07-13; 144:14-22.)  This testimony is relevant, within the scope of Samsung's

11  designations, and does not present a new non-infringement theory.

12  Samsung's designations include testimony related to total transmit power.  For example,

13  Samsung designated testimony that the section of the 3GPP standard called "maximum and

14  minimum power limits" is implemented in the Intel chip and testimony about the Intel source

15  code relating to when "the total transmit power exceeds the maximum allowed" power.  (*See*

16  Hung Decl. Ex. 30 at 89:08-89:12, 111:25-112:11.)  The Intel baseband chips' method of

17  calculating total transmit power is clearly within the scope of discussions of the source code

18  responsible for determining when "the total transmit power exceeds the maximum allowed"

19  power.  Moreover, Apple's theories of non-infringement relating to total transmit power are

20  clearly disclosed in Apple's Interrogatory Responses and Expert Reports.  (*See* Hung Decl. Ex.

21  31, Apple's 3/8/2012 Supplemental Response to Interrogatory No. 12 (comparing Samsung's

22  definition of total transmit power to the definition of total transmit power under the standard);

23  Hung Decl. Ex. 32, Rebuttal Report of Dr. Kim ¶ 96 (same).)

24  Samsung has also designated testimony concerning Intel's assessment of whether, in

25  actual practice, the relevant portion of the standard is implemented.  For example, Samsung has

26  designated testimony relating to whether the Intel firmware matches the expected behavior, is

27  interoperable with, and complies with the 3GPP standard.  (*See* Hung Decl. Ex. 30, 3/20/2012

28  Paltian Dep. 18:05-07; 18:14-15; 19:17-18; 19:20-21; 21:08-21:10; 21:12-21:15; 21:18.)  The

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

4

question of how often the relevant portion of the standard is actually implemented is clearly relevant to whether the firmware complies with the standard and, therefore, is also within the scope of Samsung's designations.  Moreover, this testimony does not present a new theory regarding non-infringement because Apple is not offering the testimony to demonstrate non-infringement.  Instead, Apple is offering it to show the relative insignificance of Samsung's alleged invention.

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   ANDRE ZORN

### A.      Responses to Samsung's Objections to Apple's Counter-Designations

In response to nearly nine minutes of Samsung-designated testimony from Intel engineer Andre Zorn, Apple counter-designated *19 seconds*.  (Hung Decl. Ex. 33, 3/20/2012 Zorn Dep. 91:22-23; 92:1-4; 92:6.)  Nevertheless, Samsung objected, contending that Mr. Zorn's testimony is speculative and that he lacks personal knowledge.  That Mr. Zorn lacks personal knowledge is precisely the point of Apple's counter-designated testimony.

The testimony at issue concerns the '941 patent.  Samsung contends that asserted claims 10 and 15 of the patent cover a feature in the 3GPP specifications called the "Alternative E-bit interpretation."  Mr. Zorn is an Intel engineer who wrote source code for the Intel chips used in the accused Apple products, and Samsung's designated testimony relates to whether Mr. Zorn programmed the Intel chips to be capable of implementing the Alternative E-bit interpretation.

Portions of Samsung's designated testimony appear intended to convey the impression to the jury that mobile devices *must* use the Alternative E-bit interpretation in order to operate. (Hung Decl. Ex. 33, 3/20/2012 Zorn Dep. 29:13-16.)  But, as Mr. Zorn testified, the network decides whether to use the alternative E-bit interpretation.  (*Id.* at 29:8-9.)  There is no evidence in this case that any network operator has actually used the alternative E-bit interpretation and Apple counter-designated testimony to clarify for the jury that Mr. Zorn, the Intel engineer who programmed this capability into the baseband processors used in the accused Apple products, does not know whether the Alternative E-bit interpretation is used on the AT&T network on which the accused products operate.  The testimony designated by Apple is therefore relevant and admissible.

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

6

## IV.    TIM WILLIAMS

### A.    Objections to Samsung's Direct Examination Exhibits

**SDX3966.012.**  Apple objects to SDX3966.012 because it includes an infringement theory not disclosed in Dr. Williams' expert reports.  Claims 15 and 16 of the '516 patent require a "first channel not supporting HARQ."  SDX3966.012 is a demonstrative indicating that Dr. Williams, Samsung's expert, intends to assert that the element in Apple's accused products corresponding to the claimed "first channel not supporting HARQ" is **only** the DPDCH channel.

Dr. Williams did not disclose the opinion that the DPDCH channel in Apple's products, by itself, is a "first channel" in any of his expert reports.  On the contrary, Dr. Williams expressly rejected that infringement theory and offered an alternative theory:  "Apple also argues that Samsung contends that the claimed first channel not supporting HARQ is a single DPDCH channel and the claimed second channel supporting HARQ is a single E-DPDCH channel.  **Samsung does not so contend**.  Rather, the claimed first channel comprises all the channels of the type that do not support HARQ as indicated in the preamble of the claim (e.g., including one or more of DPDCH, DPCCH, HS-DPCCH, and E-DPCCH)."  (Hung Decl. Ex. 34, ¶ 198 (emphasis added).)  Dr. Williams should be precluded from expressing any infringement opinions based on the "first channel" being the DPDCH channel alone.[2]

**SDX3966.013.**  Apple objects to SDX3966.013 because it includes an infringement theory not disclosed in Samsung's infringement contentions or Dr. Williams' expert reports.  Claims 15 and 16 require "a controller for…determining if total transmit power required for transmission of the channels exceeds the maximum allowed power."  SDX3966.013 indicates that Dr. Williams intends to assert that Apple's products determine "total transmit power" by summing the power of the alleged "first channel" (DPDCH), "second channel" (E-DPDCH), **and** control channels.

In its Infringement Contentions, Samsung asserted that the DPDCH channel in Apple's products was the "first channel" and that the E-DPDCH channel was the "second channel."  *See*

---

[2] Dr.  Williams is already precluded from testifying that the first channel is "one or more of DPDCH, DPCCH, HS-DPCCH, and E-DPCCH" channels because Judge Grewal struck that opinion.  (*See* Dkt. 1144 at 6 (Order).)

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

7

Hung Decl. Ex. 35, Infringement Contentions, Ex. H, at 2-3, 11.  Samsung also asserted that the "total transmit power" was the sum of only **two channels**:  DPDCH and E-DPDCH.  *See id.* at 3-4 (describing **only** the "E-DPDCH channels" and the "D-DPDCH channels" in connection with the "total transmit power" limitation), 11.  Samsung did **not** allege that the "total transmit power" included the control channels—as it now apparently intends to argue at trial.

In his expert reports, Dr. Williams attempted to offer a new infringement theory for the "first channel" limitation, but again limited the "total transmit power" to the sum of the "first channel" and the "second channel."  (*See* Hung Decl. Ex. 34, ¶ 198 (identifying "first channel" as "including one or more of DPDCH, DPCCH, HS-DPCCH, and E-DPCCH"); ¶¶ 62-63 (describing "total transmit power" as the sum of the "DPCCH, DPDCH, HS-DPCCH, E-DPDCH [i.e., first channel] and E-DPDCH [i.e., second channel]" channels).)  Judge Grewal struck this new theory identifying the "first channel" as including the DPDCH channel plus three control channels because it was "never previously disclosed in Samsung's Infringement Contentions." (*See* Dkt. 1144 at 6.)  Samsung is now trying to circumvent that order by redefining what the alleged "first channel" is.  Dr. Williams should be precluded from testifying at trial that the "total transmit power" limitation is the sum of the alleged "first channel" (E-DPDCH), "second channel" (D-DPDCH), and "control channel(s)."

**B.    Responses to Samsung's Objections to Apple's Cross-Examination Exhibits**

*PX188.*  PX188 is a Japanese patent that is the counterpart to the '941 patent.  It is a **Samsung** document that **Apple** produced in response to Dr. Williams' expert report on infringement.  In that report, Samsung alleged—**for the first time**—that the "an entire SDU" in the '941 patent means "'*only* an entire SDU' or 'an entire SDU *without segmentation/ concatenation padding*.'"  (*See* Hung Decl. Ex. 36, ¶ 384.)  In his rebuttal report, Apple's technical expert, Dr. Knightly, cited and relied on PX188 to show that Samsung has filed related patent applications using the "without segmentation, concatenation, or padding" language that Dr. Williams attempts to read into the '941 patent, but that Samsung chose not to include that language in the '941 patent.  (*See* Hung Decl. Ex. 37, ¶¶ 70-72.)

Samsung complains that PX188 was produced after fact discovery and not cited in

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

8

Apple's interrogatory responses, but **Samsung** failed to timely produce the document in response to **Apple's** document requests.  In Request for Production No. 54, for example, Apple asked for "[a]ll foreign counterparts to the Samsung Patents-in-Suit."  (*See* Hung Decl. Ex. 38.)  Samsung agreed to produce responsive documents but, as far as Apple is aware, never produced PX188.

Given the relevance of the "entire SDU" claim language to Apple's non-infringement defense, PX188 is highly probative and not likely to confuse the jury.  At the very least, Apple should be permitted to use PX188 for impeachment purposes because it is a Samsung document that directly contradicts opinions offered by Dr. Williams.

**PX96.**  PX96 is a published U.S. patent application that names Soeng-Hun Kim, one of the '941 patent inventors, as an inventor.  It is a **Samsung** document that **Apple** produced in response to Dr. Williams' expert report on infringement.  In that report, Samsung alleged—*for the first time*—that the claim term "an entire SDU" in the '941 patent means "'*only* an entire SDU' or 'an entire SDU *without segmentation/concatenation/ padding*.'"  (*See* Hung Decl. Ex. 36 ¶ 384.)  In his rebuttal report, Apple's technical expert, Dr. Knightly, cited and relied on PX96 to demonstrate that Samsung knew how to—and has—filed patent applications including language similar to what Dr. Williams contends is required by the "entire SDU" limitation in the '941 patent.  (*See* Hung Decl. Ex. 37, Knightly Rebuttal Report ¶¶ 61-69.)

Samsung complains that PX96 was produced after fact discovery and not cited in Apple's interrogatory responses, but it was **Samsung** that failed to timely produce the document.  In Request for Production No. 79, Apple asked for "[a]ll documents … relating to … publications … authored … by … any of the named Inventors relating to the subject matter disclosed or claimed in any of the Samsung Patents-in-Suit."  (*See* Hung Decl. Ex. 38.)  Although Samsung did not produce PX96, it apparently **did** provide PX96 to its own expert who testified that he reviewed the document in the fall of 2011 "[i]n connection with this litigation," but did not list it among the materials considered in his expert report.  (Hung Decl. Ex. 39 at 211:22-212:6.)

PX96 is relevant to Apple's non-infringement defense and not likely to confuse the jury.  At the very least, Apple should be permitted to use PX96 for impeachment purposes because it is a Samsung document that directly contradicts opinions offered by Dr. Williams.

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

9

1    **V.**     **BENJAMIN BEDERSON**

2         **A.**     **Objections to Samsung's Direct Examination Exhibits**

3         *DX546.*  DX546 is an academic paper coauthored by Dr. Bederson entitled *Pad++: A*

4    *Zooming Graphical User Interface for Exploring Alternate Physics*.  This exhibit—and its display

5    on demonstrative slide SDX3951.10—belatedly disclose a new invalidity theory of "semantic

6    zooming" against the '163 patent that Samsung did not disclose during fact or expert discovery.

7         Samsung's trial exhibits list merely describes the "Substance or Purpose" of DX546 as

8    "Prior Art / Invalidity" (Dkt. No. 1285-1 at 4).  But Samsung's invalidity contentions did not

9    disclose *any* invalidity theory regarding the Bederson paper or semantic zooming.  The only

10   appearance of this paper in Samsung's invalidity contentions was its listing in Exhibit T – a

11   compilation of 140+ *uncharted* alleged prior art references.  There it was identified as "Bederso,

12   PAD++ [*sic*]," without further explanation.  (Hung Decl. Ex. 1, Exhibit T.)  But the title of this

13   reference did not disclose Samsung's new "semantic zooming" theory.  This is because, as its title

14   suggests, the Bederson paper is directed to "alternate interface physics" – not "semantic

15   zooming (*i.e.,* rendering an object differently depending on its viewing size).

16        Moreover, Samsung's invalidity expert on the '163 patent, Stephen Gray, never discussed

17   this Bederson paper in his report.[3]  Only *after* Apple's expert Dr. Karan Singh had filed his

18   validity report and the opportunity for deposition had passed did Samsung first reveal the details

19   of its *Pad++* "semantic zooming" invalidity theory.  Samsung did so in a May 17, 2012

20   declaration from the paper's author, Dr. Bederson, accompanying Samsung's summary judgment

21   motion. (Dkt. No. 932 ¶ 18.)  Dr. Bederson should not be allowed to raise this late-disclosed

22   invalidity theory on Samsung's behalf now.

23        Moreover, Samsung seeks to elicit expert testimony from Dr. Bederson on the highly

24   technical subject matter of the *Pad++* paper and its late disclosed "semantic zooming" invalidity

25   theory.  This requires Dr. Bederson, a fact witness, to give expert testimony "based on scientific,

26

27       [3] While Samsung's expert on invalidity of the '381 patent, Dr. Andries van Dam,
     discussed the Bederson article in his expert report, he focused on "alternative interface physics,"
28   the subject of the article, rather than semantic zooming.  (*See* Hung Decl. Ex. 2 ¶ 38.)

technical, or other specialized knowledge within the scope of Rule 702"—in violation of Rule 701(c) of the Federal Rules of Evidence.  Rule 701 seeks "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701 Advisory Committee Notes (2000 Amendment).  But this is what Samsung seeks to do with Dr. Bederson's testimony on DX546.

Moreover, "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."  *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997).  Dr. Bederson's testimony about DX546 also would violate Rule 26(a)(2) of the Federal Rules of Civil Procedure, as he never was disclosed as an expert or submitted a report.

***SDX3951.7 & SDX3951.8 (XNav Source Code).***  Apple objects to Dr. Bederson's offering detailed technical analysis of the XNav source code on slides SDX3951.7 and SDX3951.8 as improper expert testimony under Rule 26 of the Federal Rules of Civil Procedure and Rule 701 of the Federal Rules of Evidence.  Analysis of computer source code is a paradigmatic example of an undertaking requiring "scientific, technical, or other specialized knowledge," to which lay witnesses cannot testify under Rule 701(c).  Indeed, slide SDX3951.8, by design, precisely mirrors PDX29.34 and PDX29.35.  These are slides that Dr. Karan Singh, Apple's properly disclosed expert witness, offered to support his opinions on the source code-related aspects of the '163 patent.  For the reasons stated above, Dr. Bederson cannot offer expert opinion on XNav source code due to Samsung's failure to disclose him under Rule 26.

Moreover, SDX3951.7 and SDX3951.8 contain invalidity contentions that Samsung did not timely disclose.  Dr. Bederson's code analysis in SDX3951.7 and SDX3951.8 is aimed at proving claim 50 of the '163 patent invalid.  Samsung never disclosed these theories before creating and disclosing SDX3951.7 and SDX3951.8.  While Mr. Gray claims to have reviewed XNav code, his invalidity report does not cite *even a single line* of XNav code in support of his opinion that XNav invalidates the '163 patent. (*See* Hung Decl. Ex. 4, ¶ 202; Hung Decl. Ex. 5 (LaunchTile/XNav claim chart)).)  Because invalidity based on XNav source code was not timely disclosed, the Court should sustain Apple's objection.

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

11

**B.** **Responses to Samsung's Objections to Apple's Cross-Examination Exhibits**

*PX2226.*  Samsung objects to the use of Dr. Bederson's Initial Expert Report on Claim Construction in ITC Investigation No. 337-TA-797 as allegedly (1) violating the Court's ruling on Apple's Motion in Limine #6 "to exclude evidence of how other courts or tribunals have construed or ruled on any Apple or Samsung patents" (Dkt. No. 1267 at 3); and (2) risking misleading the jury and wasting time.  PX2226 will be used for the limited purpose of establishing that Dr. Bederson is serving as an expert witness for another competitor in a case against Apple—regarding the same '381 patent against which he is currently offering "lay" testimony, no less—and not to establish anything about the claim construction in this case or in Investigation No. 337-TA-797.  So limited, PX2226 is probative evidence of bias that will take little time to present and that runs negligible risk of confusing the jury.

*PDX41.2.*  Samsung argues that PDX41.2, a video of the *LaunchTile system operating*, is not relevant to the cross examination of a prior art witness appearing to testify about *LaunchTile's operation*.  Such a limited view of relevance cannot possibly be correct.[4]  In addition, although Samsung asserts that Apple's questioning of Dr. Bederson must be limited to validity theories disclosed in Dr. Singh's report rather than any operation of which the LaunchTile device is capable, PDX41.2 does not exceed the scope of Dr. Singh's opinions.  PDX41.2 shows a user interacting with LaunchTile in the World View, tapping to transition to Zone View, interacting with the system in Zone View, and then tapping to launch and use various applications. Dr. Singh's report covers the World View (Singh Report ¶ 30-31), the transition to the Zone View (*id.* ¶ 32-34), the Zone View (*id.* ¶ 30-31), and the launching of applications (*id.* ¶ 35-38).  (Hung Decl. Ex. 6.)  PDX41.2 also demonstrates that, although some applications are implemented, most of them are not and thus display blank white screens when the user attempts to interact with them.

---

[4] Apple cannot fully respond to Samsung's objection because Samsung disclosed only that it objects to PDX41.2 because it "advances several validity theories for the '163 patent that were not disclosed in the supplemental [sic] expert report of Dr. Singh, and which are therefore not relevant to the cross-examination of this prior art witness."  Hung Decl. Ex. 7 (D. Hutnyan Aug. 10, 2012 Email to Counsel.)  Samsung's counsel failed to meaningfully respond to Apple's request for clarification as to which "validity theories" Samsung's objection referred to. (*Id.*)

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

12

Dr. Singh discussed the distinction between usable, implemented applications and unimplemented applications. (*Id.* ¶ 37.)  Samsung's objections should be overruled.

## VI.    ADAM BOGUE

### A.    Objections to Samsung's Direct Examination Exhibits

*DX655.*  DX 655 is a compilation of 3 separate documents.  In its filed exhibit list (Dkt. No. 1285-1 at 13), Samsung inappropriately left the scope of this exhibit wide open by stating that it includes "[f]iles related to DiamondTouch, DTFlash, and Tablecloth" that are "not limited to" the files specifically served as DX655.  Given the overbreadth of this description, it is unclear what other material Samsung may attempt to use during Mr. Bogue's examination.  This exhibit should be limited in scope to only the actual documents served as DX655.

The second of the three served documents, labeled DX 655.003, purports to show a demonstration application screen.  The screen capture provided by Samsung is noticeably compressed for only one reason: the full directory path, which is cropped in DX 655.003 as "DT-Flash-200", should read in full "DTFlash-2005-06-07".

   

Samsung has repeatedly tried to hide the June 2005 date for Tablecloth despite the fact that the only executable program produced during discovery bears a June 13, 2005 date.  (*See* Dkt. No. 1121 Ex. B (Supp. Balakrishnan Decl.).)  Similarly, DX 655.004 again depicts the file named "tablecloth_27.htm" that has a January 2005 date, ***but which is not the Tablecloth application***, as definitively demonstrated in the aforementioned Supplemental Balakrishnan Declaration.  Samsung has never contested the fact that the actual Tablecloth application is the file named "tablecloth_27.swf", or that the ".htm" file named above simply launches the "tablecloth_27.swf" file.  It would be extremely misleading for Samsung to present this evidence to the jury.  Therefore, DX 655 should be excluded under FRE 403.

*DX695.*  DX695 purports to be an email from Adam Bogue of Mitsubishi to Steve Hotelling of Apple regarding a meeting where the alleged DiamondTouch prior art was discussed.

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

14

This email is not relevant to any claim in this case because Samsung has not alleged inequitable conduct or derivation of an invention from the work of others relating to any of Apple's utility patents-in-suit.  *See generally*, Samsung's Trial Brief (Dkt. No. 1322 at 7-9).  No such allegation appears in any Samsung interrogatory response or expert report.  DX 695 should be stricken on that ground alone.  Samsung only seeks to introduce this document to insinuate that Apple copied the DiamondTouch prior art.  Besides the lack of any details regarding what was actually demonstrated, and to whom, this email could only serve a prejudicial function, and should therefore be excluded.  Rebutting the insinuation would take precious trial time, and only serve to confuse the jury.  Accordingly, DX695 should be excluded under both Rules 402 and 403 of the Federal Rules of Evidence for relevance, and for its unduly prejudicial and confusing nature and its unwarranted consumption of scarce trial time, respectively.

**B.      Responses to Samsung's Objections to Apple's Cross-Examination Exhibits**

*MERL00000001.*  Apple only seeks to use the contents of the same folders from which Samsung cited Mandelbrot source code and cherry picked the misleading "tablecloth_27.htm" file for its DX655.  Because of Samsung's overbroad designation in its DX655 of "[f]iles related to DiamondTouch, DTFlash, and Tablecloth" that are "not limited to" the files specifically served as DX 655, Apple was forced to reserve its right to use any information from the MERL00000001 production necessary to rebut testimony that Samsung may elicit from Mr. Bogue.

The directory paths that Apple primarily intends to use during its cross examination of Mr. Bogue are: (1) \diamondtouch\DTFlash\DTFlash-2005-06-07, which contains the "tablecloth_27.swf" file that Samsung has attempted to suppress since the briefing on its summary judgment motion; and (2) \diamondtouch\people\forlines\Mandelbrot\src\com\merl, which is the parent path of the folders identified in Samsung's description of its DX 548 (Dkt. No. 1285-1 at 4).  If Samsung's direct examination is limited to materials in these folders, Apple will limit its cross examination on this exhibit to materials contained in those two directory paths.

*PDX46.4.*  PDX46.4 is an animation that shows the operation of the Tablecloth program. In his declaration in support of Samsung's Motion for Summary Judgment, Clifton Forlines explained, confusingly, what was depicted when the program was executed.  (Dkt. No. 938 at ¶¶

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

15

7-9.)  Because of the high speed of the 'auto-centering/snap-back to original image' functionality, video footage of what exactly is happening is unclear.  Apple therefore seeks to use this animation to clarify to the jury what actually is taking place.  Apple has removed all annotations in the video, rendering moot Samsung's objection on legal conclusions.

In addition, Samsung's contention that these slides introduce a new expert opinion is without merit.  First, Mr. Bogue will be questioned on the *facts* relating to how Tablecloth functions, not on the opinions of Dr. Balakrishnan, Apple's expert.  Second, to the extent that these facts relate to Dr. Balakrishnan's opinions regarding the '381 patent, he timely identified this theory in his Declaration in Support of Apple's Opposition to Samsung's Motion for Summary Judgment.  (Dkt. No. 1024-13 at ¶ 87 ("[T]he translation in the second direction does not stop at 'until the area beyond the edge of the electronic document is no longer displayed.'").)

Dr. Balakrishnan's response was necessitated by a belated theory raised by Samsung's expert, Andries van Dam, for the first time in his Declaration in Support of Samsung's Motion for Summary Judgment.  There, Dr. Van Dam espoused a new theory of invalidity based on a construction of "electronic document" that appears nowhere in his expert report.  (Compare Dkt. No. 937 at ¶ 83 ("[T]he electronic document is the primary image") with Hung Decl. Ex. 3, Van Dam Expert Report Ex. 8 at 3 ("The electronic document extends beyond the image that is visible, to include another instance of the image that can be above or below the one shown").)  To respond to this new theory, Dr. Balakrishnan explained how the application of the final claim element—translation in a second direction until the area beyond the edge is no longer displayed—changed along with Samsung's entirely different identification of what constituted the "electronic document" in Tablecloth.  Dr. Balakrishnan's explanation was a direct response to Dr. van Dam's new argument for Samsung's summary judgment motion, filed long after both experts' reports were served.

Accordingly, Apple should be permitted to use this demonstrative to question Mr. Bogue about how the Tablecloth program works.

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

16

## VII.    CLIFTON FORLINES

### A.    Objections to Samsung's Direct Examination Exhibits

*DX 696.*  Apple objects to this Exhibit, an article titled "Experiences with and Observations of Direct-Touch Tabletops," as untimely disclosed.  It was first marked at Mr. Forlines's deposition on March 9, 2012—two weeks before Samsung's opening expert report on invalidity was served.  (Hung Decl. Ex. 12 at 120:4-124:16.)  But the exhibit appeared nowhere in Samsung's Invalidity Contentions or its expert reports.

*DX 693.*  Apple objects to this Exhibit, which does not bear any Bates numbers, but purports to be 39 pages of FractalZoom or Mandelbrot source code.  Three pages of this code were marked as Exhibit 16 to the Forlines deposition.  But neither a FractalZoom nor a Mandelbrot DiamondTouch application was mentioned in Samsung's Invalidity Contentions.  By contrast, other DT applications such as Tablecloth, Google Earth, and game applications, as well as the DT SDK software development kit, were specifically recited.  Also disclosed in Samsung's Invalidity Contentions were videos showing some of these applications in operation (such as DT Mouse and DT Lens)—but not Mandelbrot/FractalZoom.

Apple previously moved to strike several different portions of the expert report of Samsung invalidity expert, Stephen Gray, including the Mandelbrot code and videos.  Apple's motion was based on Mr. Gray's attempt to rely on Mandelbrot, DT Lens, and DT Mouse code, new videos for each application, and DT Mouse documentation in his report, plus four articles that were not in the Invalidity Contentions.  Apple's Proposed Order listed ten items (a) through (j) to strike. Three of the ten paragraphs were for DTMouse (code, documentation and video), two for DT Lens (code and video), two for Mandelbrot (code and video) and three were for individual articles. (Dkt. No. 939-12 at 1-2.)

In its opposition, Samsung alleged that:  (1) Mandelbrot, DT Lens and DT Mouse had been disclosed by disclosing the DT system; (2) DT Mouse and DT Lens (but not Mandelbrot/ FractalZoom) had been shown in the disclosed videos showing the DT system in operation; and (3) all three programs had been produced in third-party discovery and mentioned in the depositions of Messrs. Forlines and Bogue.  (Dkt. No. 1000 at 2-4.)  On reply, Apple noted

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

17

1   Samsung *concession* that its prior disclosures were inadequate, as Samsung had promised to

2   "clarify [its]invalidity contentions for the DiamondTouch system to identify numerous prior art

3   applications" such as Mandelbrot, DTLens, and DTMouse.  But rather than move to amend its

4   Invalidity Contentions (as it unsuccessfully did with other undisclosed prior art), Samsung hid

5   these invalidity theories.  Finally, Apple observed on reply that the depositions of Adam Bogue

6   and Clifton Forlines had been taken in a different case against a different adversary (HTC) in

7   which Apple is represented by a different law firm. (*See* Dkt. No. 1014-0 Ex. D at 2:3-9.)  In that

8   case, the accused infringer's law firm (Quinn Emanuel) had served Invalidity Contentions with

9   specific claim charts for each of the Mandelbrot, DTLens, and DTMouse applications. (*See*

10  Zolotorev Decl. ¶¶ 3-4. (Dkt. No. 1055).)  But Samsung never did that here.

11      In granting Apple's motion-in-part, Judge Grewal explained:

12      Apple argues that Gray's report includes ten references that were never previously
        disclosed in Samsung's Invalidity Contentions.  The court GRANTS Apple's
13      motion to exclude reference to seven of the ten, but DENIES Apple's motion as to
        the remaining three.
14

15  (Dkt. No. 1144 at 3-5.)  The Order is ambiguous as to which references are excluded or included.

16  DT Mouse (code, documents and video) DT Lens (code and video) and Mandelbrot (code and

17  video) and three published articles were listed in Apple's Proposed Order, however.  In view of

18  this ambiguity, and Samsung's failures to mention the Mandelbrot/FractalZoom application or

19  code, to show it in the DT videos it did disclose, or to chart it against the '915 patent claims in its

20  Invalidity Contentions, the Court should exclude DX 693 as alleged evidence supporting

21  Samsung's invalidity defense.

22      **B.      Responses to Samsung's Objections to Apple's Cross-Examination Exhibits**

23      ***Balakrishnan Expert Report.***  Samsung objects to impeachment of Mr. Forlines using

24  anything in Dr. Balakrishnan's Report as hearsay and under Rule 403.  Although use of the

25  Report as impeachment is unlikely, objections will have to be reviewed and ruled on in their

26  specific context at trial.  Apple does not intend to offer the Report into evidence, and the Report

27  includes materials that are not hearsay.  The witness may be questioned, for example, whether

28  materials relating to the DT Tablecloth application are accurate.

1    The Report also could be used to refresh the witness' recollection, since anything,

2  admissible or not, may be used for that purpose.  *See United States v. Shinderman*, 515 F.3d 5, 18

3  (1st Cir. 2008) ("Rule 612, rather than rule 608(b), governs the use of evidence to refresh a

4  witness's recollection. That rule never has been construed to require that a writing used to refresh

5  a witness's recollection must be independently admissible into evidence. The case law holds to

6  the contrary, [and] [t]he commentators agree.") (citing authorities)).  Samsung's blanket objection

7  therefore is premature.

8    ***Balakrishnan Deposition Transcript.***  Samsung has routinely listed deposition transcripts

9  of other witnesses in its cross-examination materials.  (*See*, *e.g.*, Hung Decl. Ex. 13.)  Although

10  Apple's use of something in Dr. Balakrishnan's deposition is even less likely that the use of

11  something in his expert report during Mr. Forlines's examination, there could be material in the

12  deposition that is not offered for the truth of the matter asserted, and thus avoids a hearsay

13  objection, or is used to refresh recollection and therefore need not be admissible.  Whether use of

14  the transcript is proper depends on the specifics and the context, and Samsung's blanket objection

15  is premature.

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

19

1  **VIII.   WOODWARD YANG**

2      **A.      Objections to Samsung's Direct Examination Exhibits**

3      ***DX645.***  Apple objects to Dr. Yang using DX645 (Apple source code) to support his

4  contention that the Apple code contains an "applet," as claimed in claim 9 of the '711 patent.

5          Dr. Yang's expert report includes a footnote listing ***thirty-eight (38)*** separate pieces of

6  source code as alleged support for his opinion that the accused Apple products include "an

7  application module ***and*** including [sic] an applet."[5]  (Hung Decl. Ex. 40, PX2025.85 at n.22

8  (emphasis added).)  At his deposition, Dr. Yang was asked repeatedly to identify which iOS file

9  or files listed in his voluminous footnote allegedly corresponded to claim 9's "applet" limitation –

10  ***but he was unable to do so.***  (*See* Hung Decl. Ex. 41, PX2028.175-86.)  Dr. Yang admitted,

11  however, that not every piece of source code he had listed in his footnote was an "applet."

12  (PX2028.179:21-180:12.)  Likewise, in its Patent L.R. 3-1 disclosures, Samsung failed to identify

13  which source code it contended met the "applet" limitation.  (Hung Decl. Ex. 42, PX2032.7,

14  PX2032.17.)  After hiding the ball, Samsung would have Apple learn during Dr. Yang's direct

15  trial testimony – for the very first time – which of the 38 pieces of  source code cited by Dr. Yang

16  it contends actually meets the "applet" limitation.  This is unfair and prohibited by this court's

17  Patent Local Rules and Federal Rule of Civil Procedure 26(a)(2).  *See* Fed. R. Civ. P. 26(a)(2); *id.*

18  at 26(e); *id.* at 37(c)(1); Dkt. 1545 at 7-8 (barring contentions not described with particularity).

19      ***SDX3967.012.***  Apple objects to SDX3967.012 as improperly suggesting infringement

20  under the doctrine of equivalents.  Samsung's video demonstrative SDX3967.012 improperly

21  suggests to the jury that a limitation of Claim 1 of the '460 patent – "sequentially displaying other

22  images stored in a memory through the use of scroll keys" – can be infringed equivalently

23  through the use of swiping.  In particular, SDX3967.012 contains a video of a user "swiping" the

24  display of an Apple iPad 2 to navigate the photo gallery, rather than using "scroll keys" as

25  literally required by the claim.

26

27              [5] Samsung was on notice of Apple's contention that its accused products do not contain an
    applet.  (*See* Apple's 3/8/2012 Supplemental Response to Interrogatory No. 12, pp 20-21.)
28

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

20

1      Samsung should not be permitted to thus imply to the jury that swiping is the equivalent

2   of the claimed scroll keys.  First, Samsung's Patent L.R. 3-1 Disclosures fail to disclose any

3   doctrine of equivalents theory, stating only: "The user opens the 'Camera' application and

4   navigates between image files."  (Hung Decl. Ex. 43, PX2031.13-14.)  Second, Dr. Yang's

5   Opening Expert Report fails to present the requisite "particularized testimony and linking

6   argument as to the 'insubstantiality of the differences' between the claimed invention and the

7   accused device or process . . . to support a finding of infringement under the doctrine of

8   equivalents." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.

9   Cir. 1996).  Rather, that Report merely offers without analysis the naked assertion that "[u]se of

10   swiping on iPhone 4S is insubstantially different from use of scroll keys.  Under the doctrine of

11   equivalents, swiping meets this claim element."  (Hung Decl. Ex. 40, PX2025.45 (footnote

12   omitted).)

13      Moreover, Samsung is estopped from asserting infringement of the "scroll keys"

14   limitation under the doctrine of equivalents.  During prosecution of the grandparent application to

15   the '460 patent, Samsung added that limitation to pending Claim 20 (corresponding to issued

16   Claim 1 of the '460 patent) in response to a prior art rejection.  (Hung Decl. Ex. 44, JX-

17   1066.180.)  Because this limitation was added by amendment to overcome prior art, Samsung is

18   estopped from claiming that the accused products infringe that step under the doctrine of

19   equivalents.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734

20   (2002).

21      **B.      PX2040 and PX61 Are Proper Impeachment Material for Cross-Exam**

22      ***PX2040* (Court-ordered declaration of Christopher Stretch regarding Samsung's**

23   **Aug. 2, 2012 Courtroom Visit (Dkt. 1578)).**  Samsung's objection that PX2040 is not relevant

24   under FRE 401 is meritless.  Apple intends to inquire whether Dr. Yang had the opportunity to

25   speak with the named inventors on Samsung's asserted patents, and this document is appropriate

26   impeachment material because it establishes that those inventors were present in the courtroom

27   the week before last.  Samsung itself pursued a similar line of questioning in its cross-

28   examination of Apple's expert, Dr. Singh, on August 10.  (*See, e.g.*, Hung Decl. Ex. 45, 8/10/12

APPLE'S OBJS. AND RESP. RE: MUSIKA, PALTIAN, ZORN, WILLIAMS, BEDERSON, BOGUE, FORLINES, YANG
CASE NO. 11-CV-01846-LHK
sf-3182236

21

1    Trial Tr. 1877:25-1878:16.)

2           Samsung adds boilerplate objections (that the document's relevance is outweighed by the

3    danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting

4    time), but those objections should be given no weight:  after learning of Samsung's objection

5    yesterday, Apple offered to withdraw PX2040 from its exhibit list if Samsung would stipulate that

6    its employees were in the courthouse in San Jose during the first week of trial and that Apple

7    could use that stipulation when questioning Dr. Yang.  Samsung ignored that offer.

8           ***PX61 (Samsung business record evaluating the iPhone).***  PX61 contains party

9    admissions relevant to Dr. Yang's opinions on the difference between modes and apps, (*see* Hung

10   Decl. Ex. 46, PX61.2, 61.9), an issue addressed both in Dr. Yang's expert report and the

11   demonstratives disclosed by Samsung for Dr. Yang's direct examination.  (*See, e.g.*, PX2025.15,

12   2025.20, 2025.84-.87; SDX3967.009, SDX3967.024, SDX3967.039.)  As impeachment material,

13   PX61 need not have been disclosed in Apple's non-infringement interrogatory responses or

14   expert reports on non-infringement.

15

16

17   Dated: August 12, 2012                    MORRISON & FOERSTER LLP

18

19                                            By:  /s/  *Michael A. Jacobs*
                                                   Michael A. Jacobs

20                                            Attorneys for Plaintiff
                                              APPLE INC.
21

22

23

24

25

26

27

28