1    [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                                SAN JOSE DIVISION

11   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK

12                 Plaintiff,                      **REVISED (UNDISPUTED) JOINT
                                                   PROPOSED JURY INSTRUCTIONS
13        v.                                       FOR AFTER THE CLOSE OF
                                                   EVIDENCE**
14   SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation; SAMSUNG                   Place:   Courtroom 1, 5th Floor
15   ELECTRONICS AMERICA, INC., a New              Judge:   Hon. Lucy H. Koh
     York corporation; and SAMSUNG
16   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
17
                   Defendants.
18

19

20

21

22

23

24

25

26

27

28

1  Dated: August 13, 2012

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
2  MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
3  RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
4  JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
5  ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
6  RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
7  JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
8  MORRISON & FOERSTER LLP
425 Market Street
9  San Francisco, California  94105-2482
Telephone:  (415) 268-7000
10  Facsimile:  (415) 268-7522

11  WILLIAM F. LEE
william.lee@wilmerhale.com
12  WILMER CUTLER PICKERING
HALE AND DORR LLP
13  60 State Street
Boston, MA 02109
14  Telephone: (617) 526-6000
Facsimile: (617) 526-5000
15
MARK D. SELWYN (SBN 244180)
16  mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
17  HALE AND DORR LLP
950 Page Mill Road
18  Palo Alto, California 94304
Telephone: (650) 858-6000
19  Facsimile: (650) 858-6100

20

21                          By:    _/s/ Michael A. Jacobs_____
                                    Michael A. Jacobs
22
                                    Attorneys for Plaintiff and Counterclaim-
23                                   Defendant
                                    APPLE INC.
24

25

26

27

28

1    Dated: August 13, 2012

                                         QUINN EMANUEL URQUHART &
2    SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
3    charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
4    Telephone: (415) 875-6600
Facsimile: (415) 875-6700

5

6    Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
7    victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
8    Redwood Shores, California 94065
Telephone: (650) 801-5000
9    Facsimile: (650) 801-5100

10   Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
11   865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
12   Telephone: (213) 443-3000
Facsimile: (213) 443-3100

13

14

15   By:    _/s/ Victoria Maroulis_
Victoria Maroulis

16   Attorneys for Defendants and
Counterclaim-Plaintiffs
17   SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS
18   AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS
19   AMERICA, LLC

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURE**

2       I, Michael A. Jacobs , am the ECF User whose ID and password are being used to file this

3   Declaration.  In compliance with General Order 45, X.B., I hereby attest that Victoria Maroulis

4   has concurred in this filing.

5

6   Dated:  August 13, 2012                    */s/ Michael A. Jacobs*
                                               Michael A. Jacobs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE** ................................................................. 1

**GENERAL CIVIL INSTRUCTIONS** ........................................................................... 2

PROPOSED FINAL JURY INSTRUCTION NO. 1 BURDEN OF PROOF—
PREPONDERANCE OF THE EVIDENCE ................................................ 3

PROPOSED FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—CLEAR
AND CONVINCING EVIDENCE ......................................................... 4

PROPOSED FINAL JURY INSTRUCTION NO. 3 CHARTS AND SLIDES NOT
RECEIVED IN EVIDENCE ................................................................. 6

PROPOSED FINAL JURY INSTRUCTION NO. 4 CHARTS AND SUMMARIES IN
EVIDENCE ........................................................................................ 7

PROPOSED FINAL JURY INSTRUCTION NO. 9 RETURN OF VERDICT ............................ 8

**UTILITY PATENT JURY INSTRUCTIONS** ........................................................ **9**

PROPOSED FINAL JURY INSTRUCTION NO. 10 UTILITY PATENTS—
INTERPRETATION OF CLAIMS ...................................................... 10

PROPOSED FINAL JURY INSTRUCTION NO. 11 UTILITY PATENTS—
INFRINGEMENT BURDEN OF PROOF ........................................... 12

PROPOSED FINAL JURY INSTRUCTION NO. 12 UTILITY PATENTS—DIRECT
INFRINGEMENT .............................................................................. 13

PROPOSED FINAL JURY INSTRUCTION NO. 13 UTILITY PATENTS—LITERAL
INFRINGEMENT .............................................................................. 14

PROPOSED FINAL JURY INSTRUCTION NO. 16 UTILITY PATENTS—
INVALIDITY—BURDEN OF PROOF ............................................... 15

PROPOSED FINAL JURY INSTRUCTION NO. 17 UTILITY PATENTS—WRITTEN
DESCRIPTION REQUIREMENT ...................................................... 16

PROPOSED FINAL JURY INSTRUCTION NO. 18 UTILITY PATENTS—
ANTICIPATION .............................................................................. 17

PROPOSED FINAL JURY INSTRUCTION NO. 20 UTILITY PATENTS—
OBVIOUSNESS .............................................................................. 19

PROPOSED FINAL JURY INSTRUCTION NO. 23 EQUITABLE DEFENSES—
EQUITABLE ESTOPPEL ................................................................. 21

PROPOSED FINAL JURY INSTRUCTION NO. 26.1 UTILITY PATENT
DAMAGES—LOST PROFITS—AMOUNT OF PROFIT ........................... 22

**TABLE OF CONTENTS**
(continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 27 UTILITY PATENT DAMAGES—
   LOST PROFITS—MARKET SHARE ............................................................................. 23

**DESIGN PATENT JURY INSTRUCTIONS** ........................................................................... **24**

PROPOSED FINAL JURY INSTRUCTION NO. 33 DESIGN PATENT
   INFRINGEMENT—BURDEN OF PROOF .................................................................. 25

PROPOSED FINAL JURY INSTRUCTION NO. 35 DESIGN PATENTS—
   INVALIDITY BURDEN OF PROOF ........................................................................... 26

PROPOSED FINAL JURY INSTRUCTION NO. 50.6 SECONDARY MEANING—
   TIMING ..................................................................................................................... 27

**BREACH OF CONTRACT JURY INSTRUCTIONS** ........................................................... **28**

PROPOSED FINAL JURY INSTRUCTION NO. 62 BREACH OF CONTRACT—
   OBLIGATION TO LICENSE PATENTS ON FRAND TERMS .................................... 29

PROPOSED FINAL JURY INSTRUCTION NO. 63 BREACH OF CONTRACT—
   OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL PROPERTY
   RIGHTS ("IPR") ....................................................................................................... 30

**ANTITRUST JURY INSTRUCTIONS** .................................................................................. **31**

PROPOSED FINAL JURY INSTRUCTION NO. 64 MONOPOLIZATION—
   ELEMENTS ................................................................................................................ 32

PROPOSED FINAL JURY INSTRUCTION NO. 66 MONOPOLIZATION—
   EXISTENCE OF MONOPOLY POWER ...................................................................... 33

PROPOSED FINAL JURY INSTRUCTION NO. 67 MONOPOLIZATION—WILLFUL
   ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE
   ACTS ......................................................................................................................... 35

PROPOSED FINAL JURY INSTRUCTION NO. 70 MONOPOLIZATION—
   INTERSTATE CONDUCT ........................................................................................... 36

PROPOSED FINAL JURY INSTRUCTION NO. 71 MONOPOLIZATION—INJURY
   AND DAMAGES ........................................................................................................ 37

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

# GENERAL CIVIL INSTRUCTIONS

**PROPOSED FINAL JURY INSTRUCTION NO. 1**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source**

Ninth Circuit Model Civil Jury Instr. - 1.3 (2007 Ed.).

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 2**
**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

3

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

4

You should base your decision on all of the evidence, regardless of which party presented it.

5

6

**Source**

7

Ninth Circuit Model Civil Jury Instr. - 1.4 (2007 Ed.).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 2.1
## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

3

4

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

5

**Source**

6

Ninth Circuit Model Civil Jury Instr. - 1.5 (2007 Ed.).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 3
## CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE

3

Certain charts and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.

4

**Source**

5

6

Adapted from Ninth Circuit Model Civil Jury Instr. – 2.12 (2007 Ed.).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 4**
**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  You may use those charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them only such weight as you think they deserve.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. – 2.13 (2007 Ed.).

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 9
## RETURN OF VERDICT

3

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

4

**Source**

5

Ninth Circuit Model Civil Jury Instr. - 3.3 (2007 Ed.).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**UTILITY PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 10**
**UTILITY PATENTS—INTERPRETATION OF CLAIMS**

**Apple's Proposed Instruction**

Before you decide whether Apple or Samsung has infringed the claims of the other side's utility patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the utility patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

- **U.S. Patent No. 7,469,381**

The term "displaying" means "showing or revealing to the viewer."

The term "electronic document" means "a document stored in a digital format." An "electronic document" includes, but is not limited to, a web page; a digital image; a word processing, spreadsheet or presentation document; or a list of items in a digital format. An electronic document need not be stored in a single file.

The term "first direction" does not require a strictly linear finger movement.

The term "edge of the electronic document" has its plain and ordinary meaning. An edge of an electronic document is not limited to an external edge and may be internal.

- **U.S. Patent No. 7,844,915**

The term "invokes" means "causes" or "causes a procedure to be carried out."

- **U.S. Patent No. 7,698,711**

The term "applet" means "an application designed to run within an application module that need not be operating system-independent."

\*       \*       \*

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1.

1

**Authorities**

2
*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*,
415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298,
3
1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*);
*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROPOSED FINAL JURY INSTRUCTION NO. 11
## UTILITY PATENTS—INFRINGEMENT BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether either Apple or Samsung (or both) has proven that the other side has infringed one or more of the asserted claims of the asserted utility patents.  To prove infringement of any claim, the patent holder must persuade you that it is more likely than not that the alleged infringer has infringed that claim.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.1.

**Authorities**

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

## PROPOSED FINAL JURY INSTRUCTION NO. 12
## UTILITY PATENTS—DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product or method covered by any of the asserted claims of the other side's utility patents. If Samsung or Apple has done so, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products or methods infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both side's commercial products. However, in deciding the issue of utility patent infringement you may not compare the Samsung and Apple commercial products to each other. Rather, you must compare the accused Samsung products to the claims of the Apple utility patents, and the accused Apple products or methods to the claims of the Samsung utility patents.

Whether or not Samsung or Apple knew its products or methods infringed or even knew of the other side's patents does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.2.

**Authorities**

35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576 (Fed. Cir. 1993).

## PROPOSED FINAL JURY INSTRUCTION NO. 13
## UTILITY PATENTS—LITERAL INFRINGEMENT

To decide whether each accused Samsung and Apple product or method literally infringes a claim of an asserted patent, you must compare the product or method with the patent claim and determine whether every requirement of the claim is included in that product or method.  If so, the Samsung or Apple product or method in question literally infringes that claim.  If, however, a particular Samsung or Apple product or method does not have every requirement in the patent claim, that product or method does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in the accused product or method. The fact that a particular accused Samsung or Apple product or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.3.

**Authorities**

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335 (Fed. Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). Note that the issue of divided infringement is the subject of two en banc cases pending at this writing: *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010) and *McKesson Techs. v. Epic Sys. Corp.*, 463 F. App'x 906 (Fed. Cir. May 26, 2011).

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 16
## UTILITY PATENTS—INVALIDITY—BURDEN OF PROOF

3

4

I will now instruct you on the rules you must follow in deciding whether each party has proven that claims of the other side's utility patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, the alleged infringer must persuade you that it is highly probable that the claim is invalid.

5

**Source**

6

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1.

7

**Authorities**

8

9

*Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.,* No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 17**
**UTILITY PATENTS—WRITTEN DESCRIPTION REQUIREMENT**

A utility patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time.  The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim.  A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

**Source**

N.D. Cal. Model Patent Jury Instr. B.4.2a.

**Authorities**

35 U.S.C. § 112(1) and (2); *In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009); *Kao Corp. v. Unilever U.S., Inc.,* 441 F.3d 963, 968 (Fed. Cir. 2006); *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.,* 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton,* 76 F.3d 1168, 1172 (Fed. Cir. 1996); *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 926-928 (Fed. Cir. 2004).

**PROPOSED FINAL JURY INSTRUCTION NO. 18**
**UTILITY PATENTS—ANTICIPATION**

A utility patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that either party can show that a patent claim was not new:

    – If the claimed invention was already publicly known or publicly used by others in the United States before the  date of conception of the claimed invention;

    – If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

    – If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

    If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

    – If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

Since certain of them are in dispute, you must determine dates of conception for the claimed inventions and prior inventions.  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1.

**Authorities**

35 U.S.C. § 102; *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re*

1    *Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313,
      1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80
2    (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001);
      *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem,
3    Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d
      1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998);
4    *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997);
      *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*,
5    925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d
      1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32
6    (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*,
      525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott
7    Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*,
      180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d
8    1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v.
      Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### PROPOSED FINAL JURY INSTRUCTION NO. 20
### UTILITY PATENTS—OBVIOUSNESS

Not all innovations are patentable.  A utility patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

> (1)   the levels of education and experience of persons working in the field;

> (2)   the types of problems encountered in the field; and

> (3)   the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  The parties disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of claims at issue.  In order to be considered as prior art to a particular patent at issue here, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.[1]

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

> (1)   commercial success of a product due to the merits of the claimed invention;

> (2)   a long felt need for the solution provided by the claimed invention;

> (3)   unsuccessful attempts by others to find the solution provided by the claimed invention;

> (4)   copying of the claimed invention by others;

> (5)   unexpected and superior results from the claimed invention;

> (6)   acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

---

[1] Apple reserves its right to argue after the close of evidence that the scope and content of the prior art is not in dispute, and that the jury does not therefore need to receive an instruction about how to resolve the second *Graham* factor.

(7)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b.

**Authorities**

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985).  *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs, Inc.. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.,* 501 F.3d. 1254, 1256 (Fed. Cir. 2007)*; Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

**PROPOSED FINAL JURY INSTRUCTION NO. 23**
**EQUITABLE DEFENSES—EQUITABLE ESTOPPEL[2]**

The owner of a patent may forfeit its right to any relief from an alleged infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the alleged infringer relies upon the misleading communication from the patent holder, and (3) the alleged infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication.  This is referred to as an "equitable estoppel," and it is a defense that Apple contends precludes any recovery by Samsung with respect to the "declared essential" patents – the '941 and '516 patents – in this lawsuit.  Apple must prove each of these elements is more likely true than not, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Apple contends that Samsung made communications about its "declared essential" patents before Samsung filed this lawsuit.  A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction.  Whether in fact Samsung communicated with 3GPP and Apple about its "declared essential" patents prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to Apple can be economic in form.  Whether Apple suffered economic prejudice is a question that must be answered by evaluating whether Apple changed its economic position as a result of its reliance on any misleading communication from Samsung about its "declared essential" patents, resulting in losses beyond merely paying for infringement  and whether losses as a result of any change in economic position could have been avoided.

**Source**

Adapted from Federal Circuit Bar Association Model Patent Jury Instr. B.5.3.

**Authorities**

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) (to establish equitable estoppel, one must show reliance on patentee's misleading conduct); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (*en banc*).

---

[2] Apple requests that the Court seek an advisory verdict from the jury on the question of equitable estoppel.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 26.1
UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT[3]**

3

4

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

5

**Source**

6

Federal Circuit Bar Association Model Patent Jury Instr. B.6.2 (modified).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27

28

[3] This instruction applies to both utility and design patents.  Should the Court decide that common patent damages instructions ought to be repeated for utility and design patents, then it is Apple's position that this instruction should be repeated for the design patents.

**PROPOSED FINAL JURY INSTRUCTION NO. 27**
**UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE[4]**

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3a.

**Authorities**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.* , 1 F.3d 1214, 1218 (Fed. Cir. 1993).

---

[4] This instruction applies to both utility and design patents.  Should the Court decide that common patent damages instructions ought to be repeated for utility and design patents, then it is Apple's position that this instruction should be repeated for the design patents.

1

**DESIGN PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 33**
**DESIGN PATENT INFRINGEMENT—BURDEN OF PROOF**

2

3

To prove infringement of any of its design patents, Apple must persuade you that it is more likely than not that Samsung has infringed the patent.

4

**Source**

5

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.1.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 35**
**DESIGN PATENTS—INVALIDITY BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Samsung has proven that the Apple design patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any design patent, Samsung must persuade you that it is highly probable that the design patent is invalid.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

1

**PROPOSED FINAL JURY INSTRUCTION NO. 50.6
SECONDARY MEANING—TIMING**

2

3    Apple must prove by a preponderance of the evidence that the claimed iPad and iPad 2-related
     trade dresses acquired secondary meaning before Samsung first sold a product that Apple claims
     is infringing its claim trade dresses.

4

5    If you find that Apple has not proved by a preponderance of the evidence that the alleged iPad or
     iPad 2-related trade dresses acquired secondary meaning before June 8, 2011, then you must find
     for Samsung.

6

**Source**

7

8    *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970) (plaintiff must
     prove the existence of secondary meaning in its trademark at the time and place that the junior
     user first began use of that mark).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**BREACH OF CONTRACT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 62**
**BREACH OF CONTRACT—OBLIGATION TO LICENSE PATENTS ON FRAND**

2

**TERMS**

3

4    I will now instruct you on how to determine whether Apple has proved its breach of contract
claim.  A breach is an unjustified failure to perform a contract.

5

6    Samsung has submitted declarations to ETSI in which Samsung identified the '516 and '941
patents, or related patents or applications, as IPRs that it believed may be considered essential to

7    the UMTS standard. In those declarations, Samsung declared that it would be prepared to grant
irrevocable licenses under those IPRs on fair, reasonable and nondiscriminatory ("FRAND")

8    terms and conditions to the extent the IPRs remain essential to the UMTS standard. In order to
demonstrate breach of this provision, Apple must prove that all of the conditions for performance

9    of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed,
and that this harm was caused by Samsung's failure to perform this obligation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 63**
**BREACH OF CONTRACT—OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL**
**PROPERTY RIGHTS ("IPR")**

3

The November 1997 ETSI IPR Policy provides:

4

5

6

7

> Each MEMBER shall use its reasonable endeavours to timely
> inform ETSI of ESSENTIAL IPRs it becomes aware of.  In
> particular, a MEMBER submitting a technical proposal for a
> STANDARD shall, on a bona fide basis, draw the attention of ETSI
> to any MEMBER's IPR which might be ESSENTIAL if that
> proposal is adopted.

8

9

In order to demonstrate breach of this contract provision, Apple must prove that all of the
conditions for performance of this obligation occurred, that Samsung did not fulfill this
obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to
perform this obligation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANTITRUST JURY INSTRUCTIONS**

1

## PROPOSED FINAL JURY INSTRUCTION NO. 64
## MONOPOLIZATION—ELEMENTS

2

3   I will now instruct you on how to decide whether Apple has proven that Samsung has violated the federal antitrust laws.  Apple alleges that it was injured by Samsung's unlawful monopolization of markets consisting of technologies that competed to perform functions included in the UMTS

4   standard by 3GPP.  To prevail on this claim, Apple must prove each of the following elements is more likely true than not:

5

      **First**, that the alleged market is a relevant antitrust market;

6

7         **Second**, that Samsung possessed monopoly power in that market;

8         **Third**, that Samsung "willfully" acquired its monopoly power in that market by engaging in anticompetitive conduct;

9         **Fourth**, that Samsung's conduct occurred in or affected interstate commerce; and

10        **Fifth**, that Apple was injured in its business or property because of Samsung's anticompetitive conduct.

11

12  If you find that Apple has failed to prove any of these elements, then you must find for Samsung and against Apple on this claim.  If you find that Apple has proved each of these elements is more likely true than not, then you must find for Apple and against Samsung on this claim.

13  **Source**

14

15  Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

16  **Authorities**

17  Sherman Act Section 2, 15 U.S.C. § 2; *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Brunswich Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477,

18  489 (1977); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 66**
**MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER**

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  In determining whether Samsung has monopoly power in a relevant market, you may consider whether there is direct evidence that Samsung has monopoly power.

**DIRECT PROOF**

In order to provide direct proof of monopoly power, Plaintiff has the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. Plaintiff must prove that defendant has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiff must also prove that defendant has the power to maintain prices above a competitive level for a significant period of time. If defendant attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

Similarly, plaintiff must prove that defendant has the ability to exclude competition. For example, if defendant attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that defendant has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that defendant would lose a substantial amount of sales if it raised prices substantially, or that the defendant's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that the defendant does not have monopoly power.

**INDIRECT PROOF**

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

**Market Share**

The first factor that you should consider is Samsung's market share.  A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that defendant does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that the defendant has monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include, among other things, intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products). Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

**Number and Size of Competitors**

You may consider whether the defendant's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the defendant's ability to price its products. If the defendant's competitors are vigorous or have large or increasing market shares, this may be evidence that the defendant lacks monopoly power. On the other hand, if you determine that the defendant's competitors are weak or have small or declining market shares, this may support an inference that the defendant has monopoly power.

**Conclusion**

If you find that Samsung has monopoly power in the relevant market, then you must consider the remaining elements of Apple's monopolization claim. If you find that Samsung does not have monopoly power, then you must find for Samsung and against Apple on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-16 to C-19, C-23 and the authorities cited therein.

**PROPOSED FINAL JURY INSTRUCTION NO. 67
MONOPOLIZATION—WILLFUL ACQUISITION OF MONOPOLY POWER
THROUGH ANTICOMPETITIVE ACTS**

The next element Apple must prove is that Samsung willfully acquired monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Samsung's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Rebel Oil Co., Inc. v. Atlantic Richfield, Co.* 51 F.3d 1421 (9th Cir. 1995) (monopoly power may be proven directly); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

1

## PROPOSED FINAL JURY INSTRUCTION NO. 70
## MONOPOLIZATION—INTERSTATE CONDUCT

2

3

The federal antitrust laws apply only to conduct that affects interstate commerce.  In this case, there is no dispute that Samsung's conduct affected interstate commerce.

4

**Source**

5

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 71
MONOPOLIZATION—INJURY AND DAMAGES**

2

3   If you find that Samsung has violated the federal antitrust laws as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

4   Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

5

6       **First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

7       **Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury.  This means that Apple must prove that some damages

8       occurred as a result of Samsung's alleged antitrust violation, and not some other cause.  Apple is not required to prove that Samsung's alleged antitrust violation

9       was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

10

11      **Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent.  If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is

12      an "antitrust injury."  The costs and expenses in defending against the assertion of declared-essential patents may be antitrust injury.  On the other hand, if Apple's

13      injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust

14      injuries and Apple may not recover damages for those injuries under the antitrust laws.

15

16   If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury.  The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

17

**Source**

18

19   Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

20   **Authorities**

21   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010).

22

23

24

25

26

27

28