1   [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                         SAN JOSE DIVISION

10   APPLE INC., a California corporation,    | Case No. 11-cv-01846-LHK

11                   Plaintiff,               | **REVISED (DISPUTED) JOINT
                                              | PROPOSED JURY INSTRUCTIONS
12        v.                                  | FOR AFTER THE CLOSE OF
                                              | EVIDENCE**
13   SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation; SAMSUNG             | Place:   Courtroom 1, 5th Floor
14   ELECTRONICS AMERICA, INC., a New        | Judge:   Hon. Lucy H. Koh
     York corporation; and SAMSUNG
15   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
16
                     Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

1 | Dated: August 13, 2012
2
3
4
5
6
7
8
9
10

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

By:   /s/ Michael A. Jacobs
         Michael A. Jacobs

Attorneys for Plaintiff and Counterclaim-
Defendant
APPLE INC.

1    Dated: August 13, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

2    Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com

3    50 California Street, 22nd Floor
San Francisco, California 94111

4    Telephone: (415) 875-6600
Facsimile: (415) 875-6700

5

6    Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)

7    victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor

8    Redwood Shores, California 94065
Telephone: (650) 801-5000

9    Facsimile: (650) 801-5100

10   Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com

11   865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

12   Telephone: (213) 443-3000
Facsimile: (213) 443-3100

13

14

By:    */s/ Victoria Maroulis*

15           Victoria Maroulis

16           Attorneys for Defendants and
             Counterclaim-Plaintiffs

17           SAMSUNG ELECTRONICS CO.,
             LTD., SAMSUNG ELECTRONICS

18           AMERICA, INC. and SAMSUNG
             TELECOMMUNICATIONS

19           AMERICA, LLC

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURE**

2

     I, Michael A. Jacobs , am the ECF User whose ID and password are being used to file this

3

Declaration.  In compliance with General Order 45, X.B., I hereby attest that Victoria Maroulis

4

has concurred in this filing.

5

Dated:  August 13, 2012                                 */s/ Michael A. Jacobs*

6

                                                 Michael A. Jacobs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE** ................................................................. 1

**GENERAL CIVIL INSTRUCTIONS** ..................................................................... 2

PROPOSED FINAL JURY INSTRUCTION NO. 5 SAMSUNG'S FAILURE TO
PRESERVE EVIDENCE ................................................................. 3

PROPOSED FINAL JURY INSTRUCTION NO. 5.1 APPLE'S FAILURE TO
PRESERVE EVIDENCE ................................................................. 7

PROPOSED FINAL JURY INSTRUCTION NO. 6 EVIDENCE ADMITTED FOR
LIMITED PURPOSES ................................................................. 8

PROPOSED FINAL JURY INSTRUCTION NO. 7 SAMSUNG'S FAILURE TO
PRODUCE  DAMAGES-RELATED INFORMATION.................................................. 11

PROPOSED FINAL JURY INSTRUCTION NO. 8 SUMMARY OF CONTENTIONS .......... 13

**UTILITY PATENT JURY INSTRUCTIONS** ....................................................... 17

PROPOSED FINAL JURY INSTRUCTION NO. 10.1 COPYING IS NOT RELEVANT
TO INFRINGEMENT ................................................................. 18

PROPOSED FINAL JURY INSTRUCTION NO. 12.1 UTILITY PATENTS—DIRECT
INFRINGEMENT................................................................. 20

PROPOSED FINAL JURY INSTRUCTION NO. 14 UTILITY PATENTS—
INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ........................... 24

PROPOSED FINAL JURY INSTRUCTION NO. 15 UTILITY PATENTS—
LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS ........................... 28

PROPOSED FINAL JURY INSTRUCTION NO. 15.1 UTILITY PATENT
INFRINGEMENT OF '460 METHOD CLAIM ........................... 29

PROPOSED FINAL JURY INSTRUCTION NO. 19 UTILITY PATENTS—
STATUTORY BARS ................................................................. 31

PROPOSED FINAL JURY INSTRUCTION NO. 19.1 UTILITY PATENTS—
INDEFINITENESS................................................................. 35

PROPOSED FINAL JURY INSTRUCTION NO. 21 PATENT EXHAUSTION ...................... 37

PROPOSED FINAL JURY INSTRUCTION NO. 22 EQUITABLE DEFENSES –
WAIVER................................................................. 41

PROPOSED FINAL JURY INSTRUCTION NO. 24 UTILITY PATENT DAMAGES—
BURDEN OF PROOF ................................................................. 44

1

**TABLE OF CONTENTS**
(continued)

2

Page

3   PROPOSED FINAL JURY INSTRUCTION NO. 25 UTILITY PATENT DAMAGES —
      LOST PROFITS — GENERALLY ................................................................. 47

4

      PROPOSED FINAL JURY INSTRUCTION NO. 26 UTILITY PATENT DAMAGES—
5      LOST PROFITS—FACTORS TO CONSIDER ............................................ 51

6   PROPOSED FINAL JURY INSTRUCTION NO. 28 UTILITY PATENT DAMAGES—
      REASONABLE ROYALTY—ENTITLEMENT ............................................ 56

7

      PROPOSED FINAL JURY INSTRUCTION NO. 29 UTILITY PATENT DAMAGES—
8      REASONABLE ROYALTY—DEFINITION.................................................. 59

9   PROPOSED FINAL JURY INSTRUCTION NO. 29.1 DAMAGES—REASONABLE
      ROYALTY—RELEVANT FACTORS .......................................................... 63

10

      PROPOSED FINAL JURY INSTRUCTION NO. 30 UTILITY PATENT DAMAGES—
11      DAMAGES FOR METHOD CLAIMS MUST BE CORRELATED TO USE .............. 65

12   PROPOSED FINAL JURY INSTRUCTION NO. 31 UTILITY PATENT DAMAGES—
      DATE OF COMMENCEMENT—PRODUCTS.................................................. 66

13

14   **DESIGN PATENT JURY INSTRUCTIONS ........................................................ 70**

15   PROPOSED FINAL JURY INSTRUCTION NO. 32 DESIGN PATENTS—
16      INTERPRETATION OF PATENT CLAIMS .................................................. 71

17

18   PROPOSED FINAL JURY INSTRUCTION NO. 34 DESIGN PATENTS—DIRECT
      INFRINGEMENT.................................................................................. 75

19      PROPOSED FINAL JURY INSTRUCTION NO. 34.1 DESIGN PATENTS—DIRECT
20      INFRINGEMENT.................................................................................. 81

21   PROPOSED FINAL JURY INSTRUCTION NO. 34.2 DESIGN PATENT DIRECT
      INFRINGEMENT – LIABILITY MUST BE PROVED FOR EACH ENTITY
22      SEPARATELY ................................................................................... 85

23   PROPOSED FINAL JURY INSTRUCTION NO. 34.3 DESIGN PATENT DIRECT
      INFRINGEMENT—"ORDINARY OBSERVER TEST"................................. 86

24   PROPOSED FINAL JURY INSTRUCTION NO. 34.4 DESIGN PATENT DIRECT
25      INFRINGEMENT—COMPARISONS ........................................................ 89

26   PROPOSED FINAL JURY INSTRUCTION NO. 34.4B COPYING IS NOT RELEVANT
      TO INFRINGEMENT ........................................................................... 91

27

28   PROPOSED FINAL JURY INSTRUCTION NO. 34.5 DESIGN PATENT DIRECT
      INFRINGEMENT—ORNAMENTAL VERSUS FUNCTIONAL FEATURES............ 92

1

**TABLE OF CONTENTS**
(continued)

2

Page

3    PROPOSED FINAL JURY INSTRUCTION NO. 34.6 DESIGN PATENT
          PROSECUTION HISTORY ESTOPPEL ........................................................ 94

4

5

6    PROPOSED FINAL JURY INSTRUCTION NO. 36 DESIGN PATENTS—
          ANTICIPATION ........................................................................................ 95

7    PROPOSED FINAL JURY INSTRUCTION NO. 36.1 ANTICIPATION – A SINGLE
          REFERENCE OR A SINGLE PRODUCT ................................................. 101

8
     PROPOSED FINAL JURY INSTRUCTION NO. 36.2 DESIGN PATENT
9         ANTICIPATION – PUBLIC USE AND PUBLIC DISPLAY ...................... 102

10   PROPOSED FINAL JURY INSTRUCTION NO. 36.3 ANTICIPATION—DATE OF
          INVENTION............................................................................................ 103

11
     PROPOSED FINAL JURY INSTRUCTION NO. 37 DESIGN PATENTS—
12        STATUTORY BARS ............................................................................... 104

13   PROPOSED FINAL JURY INSTRUCTION NO. 38 DESIGN PATENTS—
          OBVIOUSNESS ...................................................................................... 108

14
     PROPOSED FINAL JURY INSTRUCTION NO. 38.1 DESIGN PATENT
15        OBVIOUSNESS—PRIMARY AND SECONDARY REFERENCES......................... 114

16   PROPOSED FINAL JURY INSTRUCTION NO. 38.2 DESIGNER OF ORDINARY
          SKILL IN THE ART ................................................................................ 116

17
     PROPOSED FINAL JURY INSTRUCTION NO. 38.3 DESIGN PATENT
18        OBVIOUSNESS—SECONDARY FACTORS INDICATING
          NONOBVIOUSNESS ............................................................................... 117

19
     PROPOSED FINAL JURY INSTRUCTION NO. 39 DESIGN PATENTS—
20        INVALIDITY—LACK OF ORNAMENTALITY........................................ 119

21   PROPOSED FINAL JURY INSTRUCTION NO. 39.1 DESIGN PATENT—
          DRAWINGS ........................................................................................... 123

22
     PROPOSED FINAL JURY INSTRUCTION NO. 39.2 DESIGN PATENT
23        INVALIDITY—INDEFINITENESS .......................................................... 124

24   PROPOSED FINAL JURY INSTRUCTION NO. 39.3 DESIGN PATENT
          INVALIDITY—DOUBLE PATENTING...................................................... 125

25
     PROPOSED FINAL JURY INSTRUCTION NO. 40 DESIGN PATENT DAMAGES—
26        BURDEN OF PROOF ............................................................................... 126

27   PROPOSED FINAL JURY INSTRUCTION NO. 41 DESIGN PATENT DAMAGES—
          LOST PROFITS...................................................................................... 130

28

# TABLE OF CONTENTS
## (continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 41.1 DESIGN PATENT DAMAGES—
LOST PROFITS—FACTORS TO CONSIDER ........................................... 134

PROPOSED FINAL JURY INSTRUCTION NO. 42 DESIGN PATENT
INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS .................................... 136

PROPOSED FINAL JURY INSTRUCTION NO. 42.1 DESIGN PATENT DAMAGES—
PROFITS........................................................................... 140

PROPOSED FINAL JURY INSTRUCTION NO. 43 DESIGN PATENT DAMAGES—
REASONABLE ROYALTY— ENTITLEMENT—DEFINITION ............................. 142

PROPOSED FINAL JURY INSTRUCTION NO. 43.1 DESIGN PATENT DAMAGES—
REASONABLE ROYALTY—DEFINITION................................................ 145

PROPOSED FINAL JURY INSTRUCTION NO. 43.2 DESIGN PATENT DAMAGES—
REASONABLE ROYALTY— RELEVANT FACTORS ............................................ 146

PROPOSED FINAL JURY INSTRUCTION NO. 44 DESIGN PATENT DAMAGES—
DATE OF COMMENCEMENT—PRODUCTS........................................... 148

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS ..................................... 152**

PROPOSED JURY INSTRUCTION NO. 45 UTILITY AND DESIGN PATENTS—
INDUCING PATENT INFRINGEMENT.................................................... 153

PROPOSED JURY INSTRUCTION NO. 45.1 INDUCING PATENT INFRINGEMENT...... 155

PROPOSED FINAL JURY INSTRUCTION NO. 45.2 INDUCING DESIGN PATENT
INFRINGEMENT........................................................................ 156

PROPOSED FINAL JURY INSTRUCTION NO. 45.3 CALCULATING DAMAGES IN
CASES OF INDUCEMENT.............................................................. 158

PROPOSED FINAL JURY INSTRUCTION NO. 46 DESIGN AND UTILITY
PATENTS—WILLFUL PATENT INFRINGEMENT .................................. 159

**TRADE DRESS JURY INSTRUCTIONS.............................................................. 163**

PROPOSED FINAL JURY INSTRUCTION NO. 47 TRADE DRESS DILUTION AND
INFRINGEMENT—INTRODUCTION ....................................................... 164

PROPOSED FINAL JURY INSTRUCTION NO. 48 TRADE DRESS DILUTION AND
INFRINGEMENT—DEFINITION OF TRADE DRESS (15 U.S.C. § 1125(A)) ......... 166

1

## TABLE OF CONTENTS
### (continued)

2

Page

3   PROPOSED FINAL JURY INSTRUCTION NO. 48.1 TRADE DRESS LIABILITY—
THEORIES AND POLICIES ....................................................... 170

4

PROPOSED FINAL JURY INSTRUCTION NO. 48.2 TRADE DRESS—NO
5   LIABILITY FOR COPYING ........................................................ 171

6

7   PROPOSED FINAL JURY INSTRUCTION NO. 49 TRADE DRESS DILUTION AND
INFRINGEMENT—VALIDITY........................................................ 172

8

PROPOSED FINAL JURY INSTRUCTION NO. 50 TRADE DRESS DILUTION AND
9   INFRINGEMENT—VALIDITY—DISTINCTIVENESS—SECONDARY
MEANING ............................................................................... 174

10

PROPOSED FINAL JURY INSTRUCTION NO. 50.1 SECONDARY MEANING—
11   ADVERTISING............................................................................. 182

12   PROPOSED FINAL JURY INSTRUCTION NO. 50.2 SECONDARY MEANING—
SALES SUCCESS ......................................................................... 184

13

PROPOSED FINAL JURY INSTRUCTION NO. 50.3 SECONDARY MEANING—
14   EXCLUSIVITY OF USE.................................................................. 185

15   PROPOSED FINAL JURY INSTRUCTION NO. 50.4 SECONDARY MEANING—
COPYING ................................................................................... 187

16

PROPOSED FINAL JURY INSTRUCTION NO. 50.5 SECONDARY MEANING—
17   ACTUAL CONFUSION.................................................................... 189

18   PROPOSED FINAL JURY INSTRUCTION NO. 51 TRADE DRESS DILUTION AND
INFRINGEMENT—VALIDITY— NON-FUNCTIONALITY REQUIREMENT....... 190

19

20

PROPOSED FINAL JURY INSTRUCTION NO. 52 TRADE DRESS DILUTION—
21   ELEMENTS AND BURDEN OF PROOF.................................................. 195

22   PROPOSED FINAL JURY INSTRUCTION NO. 52.1 TRADE DRESS DILUTION—
ELEMENTS.................................................................................. 198

23

PROPOSED FINAL JURY INSTRUCTION NO. 52.2 TRADE DRESS
24   FUNCTIONALITY—DILUTION—BURDEN OF PROOF.......................... 199

25   PROPOSED FINAL JURY INSTRUCTION NO. 53 TRADE DRESS DILUTION—
ELEMENTS—FAME....................................................................... 200

26

PROPOSED FINAL JURY INSTRUCTION NO. 53.1 TRADE DRESS DILUTION—
27   FAME—SURVEY EVIDENCE............................................................. 204

28

# TABLE OF CONTENTS
### (continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 54 TRADE DRESS DILUTION—
    ELEMENTS—USE OF ACCUSED TRADE DRESS IN COMMERCE AFTER
    APPLE TRADE DRESS BECAME FAMOUS ........................................................ 205

PROPOSED FINAL JURY INSTRUCTION NO. 55 TRADE DRESS DILUTION—
    ELEMENTS—DILUTION................................................................................ 207

PROPOSED FINAL JURY INSTRUCTION NO. 56 INFRINGEMENT—ELEMENTS
    AND BURDEN OF PROOF—TRADE DRESS (15 U.S.C. § 1125(A)(1)) ................. 213

PROPOSED FINAL JURY INSTRUCTION NO. 56.1 INFRINGEMENT—
    LIKELIHOOD OF CONFUSION ..................................................................... 216

PROPOSED FINAL JURY INSTRUCTION NO. 57 INFRINGEMENT—LIKELIHOOD
    OF CONFUSION— FACTORS—SLEEKCRAFT TEST............................................ 216

PROPOSED FINAL JURY INSTRUCTION NO. 57.1 LIKELIHOOD OF CONFUSION
    FACTORS— STRENGTH OF TRADE DRESS ........................................................ 227

PROPOSED FINAL JURY INSTRUCTION NO. 57.2 LIKELIHOOD OF CONFUSION
    FACTORS—SIMILARITY OF TRADE DRESS......................................................... 228

PROPOSED FINAL JURY INSTRUCTION NO. 57.3 LIKELIHOOD OF CONFUSION
    FACTORS—INTENT ..................................................................................... 229

PROPOSED FINAL JURY INSTRUCTION NO. 57.4 LIKELIHOOD OF CONFUSION
    FACTORS—ADVERTISING ............................................................................ 230

PROPOSED FINAL JURY INSTRUCTION NO. 57.5 DILUTION—TARNISHMENT ........ 231

PROPOSED FINAL JURY INSTRUCTION NO. 58 TRADE DRESS DAMAGES IN
    GENERAL ................................................................................................. 232

PROPOSED FINAL JURY INSTRUCTION NO. 59 TRADE DRESS DAMAGES—
    PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(A)) ..................................... 236

PROPOSED FINAL JURY INSTRUCTION NO. 60 TRADE DRESS DAMAGES—
    DEFENDANT'S PROFITS (15 U.S.C. § 1117(A)) ....................................... 238

PROPOSED FINAL JURY INSTRUCTION NO. 60.1 DAMAGES—TRADE DRESS
    INFRINGEMENT—APPORTIONMENT OF DEFENDANT'S PROFITS ................ 241

PROPOSED FINAL JURY INSTRUCTION NO. 61 TRADE DRESS DAMAGES –
    REASONABLE ROYALTY .............................................................................. 242

PROPOSED FINAL JURY INSTRUCTION NO. 61.1 TRADE DRESS DILUTION
    DAMAGES— WILLFULNESS REQUIRED FOR DILUTION DAMAGES............. 246

# TABLE OF CONTENTS
### (continued)

**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 61.2 MONETARY REMEDIES—
    TRADE DRESS DILUTION— ACTUAL NOTICE REQUIREMENT ...................... 248

PROPOSED FINAL JURY INSTRUCTION NO. 61.3 MONETARY REMEDIES—
    ONLY ONE RECOVERY PER ACCUSED SALE...................................................... 250

**ANTITRUST JURY INSTRUCTIONS** .............................................................................. **253**

PROPOSED FINAL JURY INSTRUCTION NO. 65 MONOPOLIZATION—
    RELEVANT MARKET.......................................................................................... 254

PROPOSED FINAL JURY INSTRUCTION NO. 66.1 MONOPOLIZATION—
    MONOPOLY POWER GENERALLY ................................................................... 257

PROPOSED FINAL JURY INSTRUCTION NO. 68 MONOPOLIZATION—
    ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING................................ 258

PROPOSED FINAL JURY INSTRUCTION NO. 69 MONOPOLIZATION—
    SAMSUNG'S INTENT ......................................................................................... 262

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

1

# GENERAL CIVIL INSTRUCTIONS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 5
SAMSUNG'S FAILURE TO PRESERVE EVIDENCE**

2

**Apple's Proposed Instruction**

3

As I have instructed you previously, Samsung has failed to prevent the destruction of relevant
4   evidence for Apple's use in this litigation.  This is known as the "spoliation of evidence."

5   I instruct you, as a matter of law, that Samsung failed to preserve evidence after its duty to
preserve arose.  This failure resulted from its failure to perform its discovery obligations.

6

You also may presume that Apple has met its burden of proving the following two elements by a
7   preponderance of the evidence:  *first*, that *relevant* evidence was destroyed after the duty to
preserve arose.  Evidence is relevant if it would have clarified a fact at issue in the trial and
8   otherwise would naturally have been introduced into evidence; and *second*, the lost evidence was
favorable to Apple.

9

Whether this finding is important to you in reaching a verdict in this case is for you to decide.
10  You may choose to find it determinative, somewhat determinative, or not at all determinative in
reaching your verdict.

11

**Source**

12

*Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Granting-in-Part
13  Apple's Motion for an Adverse Inference Jury Instruction, Dkt. No. 1321, at 24 (N.D. Cal.,
July 25, 2012).

14

15  **Samsung's Objection to Apple's Proposed Instruction**

16  Apple's proposed jury instruction is improper because there has as yet been no determination by
this Court that an adverse inference sanction is warranted.  A  Magistrate Judge does not have the
17  authority to impose such a sanction.  *U.S. v. Rivera-Guerrero*, 377 F.3d 1064, 1067-69 (9th Cir.
2004) (Magistrate Judge cannot decide dispositive matters under 28 U.S.C. § 636; therefore a
18  ruling by a Magistrate Judge on dispositive issues is subject to de novo review); *Reddick v. White*,
456 Fed. Appx. 191, 193, 2011 WL 6000552 (4th Cir. 2011) (Magistrate Judge lacks inherent
19  power to sanction so any such exercise must be on delegation from district court and subject to de
novo review) (citing *N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994) and *In
20  re Rainbow Magazine, Inc.*, 77 F.3d 278, 283-84 (9th Cir. 1996)). (Dkt. 1392, at 1-2; Dkt. 1579,
at 2-4).  The Magistrate Judge's ruling imposing an inherent power sanction of an adverse
21  inference instruction is a dispositive ruling subject to de novo review because the effect of the
ruling is to impose a mandatory presumption against Samsung.  *See Shared Memory Graphics,
22  LLC v. Apple, Inc.*, 2011 WL 5320749, at *2-3 (N.D. Cal. Nov. 2, 2011) (effect of order
determines whether it is subject to de novo review) (citing *Rivera-Guerrero*).  Moreover, under
23  any standard of review, the Magistrate Judge's ruling that a spoliation adverse inference is
warranted is clearly erroneous and contrary to law in that:  (1) the imposition of a preservation
24  duty on Samsung in August 2010 was clearly erroneous and contrary to law, particularly in view
of Apple's own determination that no such obligation arose at that time. (Dkt. 1392, at 2-3; Dkt.
25  1579, at 4-9); and the imposition of such a duty on Samsung, without imposing a commensurate
obligation on Apple as the plaintiff would be unprecedented; therefore, if any spoliation adverse
26  inference instruction is given against Samsung a mirror instruction must be given against Apple.
(Dkt. 1388; Dkt. 1600); (2) the Court lacks authority on the facts of this case to impose an
27  adverse inference instruction under its inherent power absent an express finding of bad faith,
which the Court expressly declined to make. Dkt. 1321, at 18, 23; Dkt. 1579 at 11-12 n.12; (3) it
28  was clearly erroneous to conclude that Apple was prejudiced.  (Dkt. 1392, at 3-4; Dkt. 1579, at 9-

1    11.)  Even if an adverse inference instruction could be given under the facts of this case, this
proposed instruction is fundamentally flawed.  First, the proposed instruction improperly imposes

2    a mandatory presumption through the presence of the word "relevant" qualifying "evidence" in
the first sentence.  A mandatory presumption can only be imposed based on a finding of bad faith,

3    (Dkt. 1392, at 4-5; Dkt. 1579, at 11-15 & n.12), which the Magistrate Judge expressly did not
find, (Dkt. 1321, at 18, 23-24.)  Second, the instruction fails to limit the adverse inference to

4    Samsung Electronics Co., Ltd. ("Samsung Electronics") and the '381 patent.  The Magistrate
Judge's ruling that proposes an adverse inference instruction only determined that Samsung

5    Electronics had engaged in spoliation of evidence, not Samsung Electronics America, Inc. or
Samsung Telecommunications America, LLC, (Dkt. 1321, at 1 n.3), therefore any instruction

6    must be limited to Samsung Electronics.  Also, the Magistrate Judge's determination of a
preservation obligation in 2010 was based on a presentation made by Apple; of the utility patents

7    in that presentation, only the '381 patent is in issue in this trial and any remedy must be narrowed
to the utility patents listed in the August 2010 presentation that remain in issue.  (Dkt. 1392, at 3;

8    Dkt. 1579, at 8-9.)  Third, the instruction is internally inconsistent and confusing, as the word
"also" in the third paragraph ("You also may presume that Apple has met its burden of proving

9    the ") indicates that the instruction has previously included a rebuttable presumption, when, as
noted above, the preceding language imposes a mandatory finding of the Court that Samsung

10   destroyed relevant evidence.  The jury is thus instructed to accept a mandatory finding and then
presume that same fact.  The law does not permit this form of adverse inference instruction.  *Dae*

11   *Kon Kwon v. Costco Wholesale Corp.*, 2012 WL 605808, at *1 (9th Cir. 2012);  *Pension*
*Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*, 685

12   F. Supp. 2d 456, 496 (S.D.N.Y. 2010), abrogated on other grounds by *Chin v. Port Authority of*
*New York and New Jersey*, __ F.3d __, 2012 WL 2760776, at *21 (2d Cir. July 10, 2012);

13   *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 109 n.4 (2d Cir. 2002);
Dkt. 1392, at 4-5; Dkt. 1579, at 11-14.  Finally, Samsung objects to Apple's deliberate placement

14   of this instruction at the beginning of the final jury instructions.  In so doing, Apple seeks to
prejudice Samsung.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Samsung's Proposed Instruction**

2

3    **[CONDITIONAL INSTRUCTION ONLY – SAMSUNG OBJECTS TO
     MAGISTRATE JUDGE GREWAL'S ORDER IMPOSING AN AUGUST 2010
     PRESERVATION REQUIREMENT,  BUT IF THAT ORDER STANDS, THE
     INSTRUCTION AGAINST SAMSUNG MUST BE NARROWED TO EVIDENCE
4    PERTAINING TO THE '381 PATENT, SAMSUNG ELECTRONICS CO., LTD,
     AND USE PERMISSIVE LANGUAGE]**

5

6    This instruction pertains only to Apple's claim of infringement of the '381 patent and only as to
     defendant Samsung Electronics Co., Ltd. ("Samsung Electronics").  It may not be considered in
7    connection with any other claim by Apple against Samsung Electronics, any claim by Apple
     against any other defendant, or on Samsung's claims against Apple.

8
     Samsung Electronics has failed to prevent the destruction of evidence as to the claim of
9    infringement of the '381 patent for Apple's use in this litigation.  This is known as the "spoliation
     of evidence."

10
     I instruct you, as a matter of law, that Samsung Electronics failed to preserve evidence after its
11   duty to preserve arose.  This failure resulted from its failure to perform its discovery obligations.

12   You also may, but need not, presume that Apple has met its burden of proving the following two
     elements by a preponderance of the evidence:  *first*, that *relevant* evidence was destroyed after the
13   duty to preserve arose.  Evidence is relevant if it would have clarified a fact at issue in the trial
     and otherwise would naturally have been introduced into evidence; and *second*, the lost evidence
14   was favorable to Apple.

15   Whether to make this presumption, and whether it is important to you in reaching a verdict in this
     case, is for you to decide. You may choose to find it determinative, somewhat determinative, or
16   not at all determinative in reaching your verdict.

17

18                                              **--OR--**

19

20   **[CONDITIONAL INSTRUCTION ONLY – SAMSUNG OBJECTS TO
     MAGISTRATE JUDGE GREWAL'S ORDER IMPOSING AN AUGUST 2010
21   PRESERVATION REQUIREMENT,  BUT IF THAT ORDER STANDS, THE
     INSTRUCTION AGAINST SAMSUNG MUST BE NARROWED TO EVIDENCE
22   PERTAINING TO THE '381 PATENT AND SAMSUNG ELECTRONICS CO.,
     LTD, AND USE PERMISSIVE LANGUAGE]**

23

24   This instruction pertains only to Apple's claim of infringement of the '381 patent and only as to
     defendant Samsung Electronics Co., Ltd. ("Samsung Electronics").  It may not be considered in
25   connection with any other claim by Apple against Samsung Electronics, any claim by Apple
     against any other defendant, or on Samsung's claims against Apple.

26   Apple has argued that Defendant Samsung Electronics destroyed evidence relevant to Apple's
     claim of infringement of the '381 patent, or failed to prevent the destruction of evidence relevant
27   to that claim. This is known as the "spoliation of evidence."

28

Spoliation is the destruction of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. To demonstrate that spoliation occurred, Apple bears the burden of proving the following two elements by a preponderance of the evidence:

*First,* that relevant evidence was destroyed after the duty to preserve arose. Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence; and

*Second,* that if relevant evidence was destroyed after the duty to preserve arose, the evidence lost would have been favorable to Apple.

I instruct you, as a matter of law, that Samsung Electronics failed to preserve evidence after its duty to preserve arose.  As a result, you may presume, if you so choose, that such lost evidence was relevant to Apple's claim of infringement of the '381 patent, and that it would have been favorable to Apple. In deciding whether to adopt this presumption, you may take into account the egregiousness of Samsung Electronics' conduct in failing to preserve the evidence.

However, Samsung Electronics has offered evidence that (1) no evidence was lost; (2) if evidence was lost, it was not relevant to Apple's claim of infringement of the '381 patent; and (3) if evidence was lost and it was relevant, it would not have been favorable to Apple.

If you decline to presume that the lost evidence was relevant or would have been favorable to Apple, then your consideration of the lost evidence is at an end, and you will *not* draw any inference arising from the lost evidence.

However, if you decide to presume that the lost evidence was relevant and would have been favorable to Apple, you must next decide whether Samsung Electronics has rebutted that presumption. If you determine that Samsung Electronics has *rebutted* the presumption that the lost evidence was either relevant or favorable to the Apple, you will *not* draw any inference arising from the lost evidence. If, on the other hand, you determine that Samsung Electronics has *not rebutted* the presumption that the lost evidence was both relevant and favorable to Apple, you may draw an inference against Samsung Electronics and in favor of Apple—namely that the lost evidence would have been favorable to Apple.  If you determine to draw an inference based on all of the evidence, it can apply only to Apple's claims relating to the '381 patent, and should not be considered by you in connection with any of the other claims you are considering by Apple or by Samsung.

**Apple's Objection to Samsung's Instruction**

Samsung's "conditional instructions" inappropriately limit the instruction that was ordered by the Court to remedy the harm Samsung caused by destroying evidence.  Judge Grewal *specified the language of the instruction in his order*.  (Dkt. No. 1321 at 24.)  Samsung did not argue before Judge Grewal that any adverse inference instruction should be limited to the '381 patent, nor would the evidence have supported any such limitation.  (See Dkt. No. 128 (Lutton Decl) ¶¶ 2-4; Dkt. No. 1047-2 (Reply) at 4; PX52 (August 2010 presentation) at 17-21; Jun Won Lee Depo. at 31.)  Samsung's second "conditional instruction" suffers from the additional flaw that it requires Apple to re-prove spoliation to the jury.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 5.1**
**APPLE'S FAILURE TO PRESERVE EVIDENCE**

2

**Samsung's Proposed Instruction**

3

**[CONDITIONAL INSTRUCTION ONLY – SAMSUNG OBJECTS TO**
4     **MAGISTRATE JUDGE GREWAL'S ORDER IMPOSING AN AUGUST 2010**
**PRESERVATION REQUIREMENT, BUT IF THAT ORDER STANDS, A**
5     **MIRROR INSTRUCTION AGAINST APPLE IS REQUIRED]**

6     Apple has failed to prevent the destruction of relevant evidence for Samsung's use in this
litigation. This is known as the "spoliation of evidence."

7

8     I instruct you, as a matter of law, that Apple failed to preserve evidence after its duty to preserve
arose.  This failure resulted from its failure to perform its discovery obligations.  Apple's duty to
preserve evidence began before that of Samsung as Apple is the plaintiff in this case.  Therefore,
9     it made the decision to sue Samsung and was aware of the possibility of this litigation before
Samsung.

10

11     You may presume that Samsung has met its burden of proving the following two elements by a
preponderance of the evidence: first, that relevant evidence was destroyed after the duty to
preserve arose. Evidence is relevant if it would have clarified a fact at issue in the trial and
12     otherwise would naturally have been introduced into evidence; and second, the lost evidence was
favorable to Samsung.

13

14     Whether this finding is important to you in reaching a verdict in this case is for you to decide.
You may choose to find it determinative, somewhat determinative, or not at all determinative in
reaching your verdict.

15

16     **Apple's Objection to Samsung's Instruction**

17     Samsung's proposed instruction No. 5.1 spins from whole cloth an adverse inference instruction
against Apple that is not called for by any Court order.  The Court granted Apple's request for an
18     adverse inference instruction, and crafted an appropriate sanction given the gravity of the facts
behind Samsung's destruction of evidence—including that Samsung "simply [left] in place an
19     adjudicated spoliation tool . . . for seven months and [took] almost no steps to avoid spoliation
beyond telling employees not to allow what will otherwise certainly happen."  (Dkt. No. 1321.)
20     The Court has not granted Samsung's late-filed motion for a corollary adverse inference
instruction against Apple.  It is improper for Samsung to craft its own adverse inference
21     instruction without any Court order holding that Apple destroyed evidence or that such an
instruction is warranted.

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 6**
**EVIDENCE ADMITTED FOR LIMITED PURPOSES**

**Apple's Proposed Instruction**

Throughout this trial, certain evidence has been admitted for limited purposes.  You are to consider this evidence for the limited purposes I have authorized, but not for other purposes.

1.  I have allowed into evidence numerous press reports and other materials that showed how people reacted to the iPhone and the iPad when the products were first released.  I have admitted these reports and other materials into evidence for the limited purpose of allowing you to consider what those in industry or the marketplace thought of the iPhone and iPad when they were first released.  Whether an invention is met with praise or skepticism may be relevant to whether the invention was non-obvious.  Whether the consuming public sees a product in news reports may be relevant to whether any trade dress that is embodied in the product is famous.

Likewise, I have allowed into evidence press reports and other materials that showed how people reacted to certain Samsung phones and tablets when those products were released.  I have admitted these reports and other materials into evidence for the limited purpose of allowing you to consider what those in industry or the marketplace thought of the Samsung products described in the articles.

You may consider the press reports and news items I allowed into evidence for these purposes.  However, you should not consider these materials as evidence of the truth of the matters asserted in these documents.  In other words, you may for example consider them as evidence that some people said that the iPhone or iPad is beautiful, but you may not consider them as evidence of whether the iPhone or iPad is or is not beautiful.

2.  The 035 model (JX 741) and the photographs of the 035 model (JX 740) were admitted for the limited purpose of showing that Apple had created a device in accordance with one embodiment of the design claimed by Apple's D'889 design patent.  The 035 model is not prior art that you can consider for purposes of assessing the validity of any Apple patent.  This device is also not relevant to your determination of whether Samsung has infringed any Apple patents.

3.  JX 1038, a Samsung Galaxy Tab 10.1 LTE, was admitted for a limited purpose relating to design patents and trade dress.  You are not to consider JX 1038 in connection with Apple's utility patent claims against the Galaxy Tablet 10.1 (Wi-Fi or LTE versions).

4,  DX 526, a Samsung F700 phone, may only be considered for alternative design and functionality purposes; it cannot be considered for invalidity purposes or to show obviousness of any Apple patent.

**[Apple Reserves Its Right To Add Additional Items To This Instruction As The Trial Progresses And Additional Items Of Evidence Are Admitted For Limited Purposes.]**

**Samsung's Objection to Apple's Proposed Instruction**

Apple's proposed instruction deviates substantially from Ninth Circuit Model Instruction 1.8 and in so doing, creates a host of unnecessary problems.  First, the instruction is vague and overbroad in that it refers broadly to categories of evidence (for example, "numerous press reports and other materials") rather than specific pieces of evidence as to which the Court issued a limiting instruction.  Second, it has injected argumentative language designed to influence the jury (i.e.,

1   "whether the iPhone is or is not beautiful").  Third, it places undue emphasis on select points of
2   law by removing them from within the context of their original and/or model instruction, which is
    misleading.  Fourth, it impermissibly suggests applying certain points of law to certain facts,
3   which is improper.  Finally, the Court's limiting instructions have already varied considerably
    over time and may continue to change as the Court sees the context for this evidence, so it is
4   premature to attempt to summarize the final scope of any limiting instruction right now.
    Samsung proposes that the parties meet and confer and prepare a list of all limiting instructions
5   given throughout trial and supplement this instruction at the end of trial.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2

When I instructed you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

3

**Source:**

4

Ninth Circuit Model Civil Jury Instruction 1.8 (modified as to tense).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 7
SAMSUNG'S FAILURE TO PRODUCE
DAMAGES-RELATED INFORMATION**

**Apple's Proposed Instruction**

During the discovery process for this case, Samsung failed to disclose accurate financial data, and Samsung produced financial data after the deadline ordered by the Court.

In assessing monetary damages to award Apple, if any, you may consider these facts to the extent that they call into doubt the veracity of the calculations and data relied upon by Samsung.

**Authorities**

*Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Minute Order and Case Management Order, Dkt. No. 1329, at 2 (N.D. Cal., July 24, 2012); *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Minute Order and Case Management Order, Dkt. No. 1267, at 5 (N.D. Cal., July 19, 2012).

**Samsung's Objection to Apple's Proposed Instruction**

The Court should reject Apple's proposed instruction because the instruction misstates the record and would be unfairly prejudicial. Indeed, the Court has already held that evidence of discovery sanctions and violations of discovery orders is unduly prejudicial and therefore limited Apple to *one* question on the subject with Apple's damages expert. Dkt. No. 1668, at 1:25:2:9. Now Apple seeks more of what the Court has already rejected and asks the Court to put its full *imprimatur* on Apple's misleading and prejudicial representations about the April 23 Order. With billions of dollars at stake, this inaccurate and inflammatory instruction would result in extreme, unfair prejudice to Samsung. *See W.V. Realty Inc. v. Northern Ins. Co. of New York*, 334 F.3d 306, 312-14 (3rd Cir. 2003) (reversing judgment because trial court admitted prejudicial discovery sanctions order); *Zubulake v. UBS Warburg LLC*, 382 F. Supp.2d 536, 546 (S.D.N.Y. 2005) (excluding evidence of imposition of discovery sanctions). Moreover, this instruction misstates the relevant events and would suggest to the jury that Samsung produced inaccurate data "[d]uring the discovery process," when in fact Samsung made a full production pursuant to Judge Grewal's April 23, 2012 Order. Apple has not challenged the accuracy of that production and neither Judge Grewal nor the Court reviewed it or made any determination that it was inaccurate or incomplete. Moreover, the April 23, 2012 Order did not make a blanket finding that *all* of Samsung's financial data produced to that point was inaccurate. *See* Dkt. No. 880. In other words, the use of Apple's proposed instruction would unfairly taint *all* of Samsung's financial production, including information produced before but not encompassed by the April 23 Order, as well as the substantial production of financial documents that Samsung made *after* the April 23, 2012 Order. Finally, the April 23 Order resolved a dispute between the parties about the scope of Judge Grewal's Jan. 27 Order, Dkt. No. 673. Apple did not seek a ruling that Samsung's financial production was inaccurate nor did it ask for the instruction it now proposes. Although Samsung was required to produce certain categories of financial documents, Judge Grewal rejected the sanctions requested by Apple and denied their request for a finding of willfulness and bad faith. Dkt. No. 880, at 15:6-7. Samsung complied with the April 23 Order and satisfied the limited sanctions Judge Grewal imposed. Accordingly, there is no basis for imposing the instruction Apple proposes here. Indeed, to do so would be a far harsher sanction than Judge Grewal deemed it appropriate to impose. Finally, Samsung objects to Apple's deliberate placement of this instruction at the beginning of the final jury instructions. In do doing, Apple seeks to prejudice Samsung.

**Samsung's Conditional Proposed Instruction[1]**

On January 27, 2012, the Court ordered Samsung to produce certain categories of financial documents. On April 23, 2012, the Court sanctioned Samsung for not timely producing them. Samsung then complied with the April 23 order and produced the required financial documents.

On December 22, 2011, the Court ordered Apple to produce several categories of transcripts and documents from other cases with a technological nexus to this case. On July 11, 2012, the Court sanctioned Apple for not timely producing them. Apple then complied with the July 11 order and produced the required transcripts and documents.

You may consider these facts in determining whether, if Samsung or Apple infringed any of each other's patents, it knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. You may not consider these facts for any other purpose, including for purposes of deciding whether Samsung or Apple violated any patent or trade dress or whether any patent or trade dress is valid.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 7 ignores the Court's order on Samsung's fifth motion in limine. The Court held there that evidence of sanctions against Samsung for withholding documents relating to copying and consumer surveys was not admissible, as the risk of confusion was high, and the danger of unfair prejudice outweighed the probative value. But the Court also held that Samsung's failure to disclose accurate financial data *was* more probative than prejudicial, because it calls into doubt the veracity of the calculations and data relied upon by Samsung in its damages calculations. Samsung's Instruction No. 7 is a blatant attempt to defuse the Court's decision to allow the jury to learn about the discovery misconduct by Samsung relating to damages that the Court has held relevant in this trial. There is no basis for coupling Samsung's failure to produce timely and accurate damages discovery—which is very probative now—with a wholly irrelevant order against Apple that is substantially more prejudicial than probative. Apple's untimely production of certain deposition transcripts has no bearing here. Notably, even as it granted sanctions against Apple, the Court added, "Try as it might, the court cannot find in Samsung's papers or argument anything specific in the late-produced prior depositions, beyond the delay, that especially prejudiced Samsung." (Dkt. No. 1213 at 10.) Unlike Samsung's failure to produce financial data, Apple's untimely production of certain deposition transcripts does not call any of Apple's arguments, calculations, or data into question. Apple would be deeply prejudiced by an instruction referring to a discovery sanction relating to production of deposition transcripts. Consistent with the Court's order on Samsung's fifth motion in limine, Samsung's proposed jury instruction No. 7 should not issue under FRE 403.

---

[1]   Samsung does not believe that sanctions should be mentioned in jury instructions at all. The Court already allowed Apple to ask a specific question regarding that in the examination of Apple's damages expert. However, should the Court decide to reference sanctions in the instructions, Samsung requests that this instruction be given.

1

## PROPOSED FINAL JURY INSTRUCTION NO. 8
## SUMMARY OF CONTENTIONS

2

**Apple's Proposed Instruction**

3

4

I will now again summarize for you each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

5

6

7

8

As I previously explained, Apple seeks money damages from Samsung for allegedly infringing the '381, '915, '163, D'889, D'087, D'677, and D'305 patents by making, importing, using, selling, and/or offering for sale the tablet and smart phone products that Apple argues are covered by claim 19 of the '381 patent, claim 8 of the '915 patent, claim 50 of the '163 patent, and the D'889, D'087, D'677, and D'305 patents  Apple also argues that Samsung's Korean parent, Samsung Electronics Company ("SEC"), actively induced the U.S. Samsung entities, Samsung Electronics America, Inc. ("SEA") and Samsung Telecommunications America, LLC ("STA"), to infringe the patents.  Apple also contends that Samsung's infringement has been willful.

9

10

Samsung denies that it has infringed the asserted claims of Apple's patents and argues that, in addition, those claims are invalid.  Invalidity is a defense to infringement.

11

12

13

Samsung has also brought claims against Apple for patent infringement.  Samsung also seeks money damages from Apple for allegedly infringing the '941, '516, '711, '460, and '893 patents by making, importing, using, selling and/or offering for sale Apple's iPhone, iPad and iPod products that Samsung argues are covered by claims 10 and 15 of the '941 patent, claims 15 and 16 of the '516 patent, claim 9 of the '711 patent, claim 1 of the '460 patent, and claim 10 of the '893 patent.  Samsung also contends that Apple's infringement has been willful.

14

15

16

17

Apple denies that it has infringed the claims asserted by Samsung and argues that the claims asserted by Samsung are invalid, and for the '516 and '941 patents, also unenforceable.  Invalidity and unenforceability are defenses to infringement.  Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms.

18

19

20

21

For each party's patent infringement claims against the other, the first issue you will have to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and whether those patents are valid.  If you decide that any claim of either party's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

22

23

24

To resolve Apple's claims regarding Samsung's "declared essential" patents, you will need to make a finding as to whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations.  If you decide that Samsung violated the antitrust laws or breached its contractual obligations, you will then need to decide what money damages to award to Apple.

25

26

Apple accuses Samsung of diluting Apple's Registered Trade Dress No. 3,470,983.  This trade dress relates to the iPhone.  Apple also accuses Samsung of diluting two unregistered trade dresses relating to the iPhone.  Finally, Apple claims that Samsung has diluted and infringed its unregistered trade dress relating to the iPad.

27

28

For each of Apple's trade dress dilution and infringement claims, the first issue you will have to decide is whether the Apple trade dress is valid (or protectable).  An asserted trade dress is only valid if the trade dress design as a whole, as opposed to its individual features standing alone, is

both distinctive and non-functional.  For Apple's registered iPhone-related trade dress, you are to presume that the trade dress is valid.

For Apple's trade dress dilution claims, the next issues you will decide are whether Apple's trade dress was famous before Samsung started selling its accused products, and whether Samsung's accused products are likely to cause dilution of the asserted Apple trade dresses by impairing their distinctiveness.

Apple's trade dress infringement claim will require you to resolve different issues.  You will need to determine whether Apple's trade dress had acquired distinctiveness before Samsung started selling its accused products, and whether Samsung's accused products are likely to cause confusion about the source of Samsung's goods.

If you decide that any valid Apple trade dress has been infringed or willfully diluted by Samsung, you will then need to decide the money damages to be awarded to Apple.

Samsung denies that it has infringed or diluted any Apple trade dress and argues that each asserted trade dress is not valid.  If a trade dress is not valid, that is a defense to infringement and dilution.

**Sources**

Adapted from Ninth Circuit Model Civil Jury Instr. – 15.8, 15.10, 15.11 (2007 Ed.).

<u>**Samsung's Objection to Apple's Proposed Instruction**</u>

Samsung objects to Apple's proposed final instruction No. 8 on the basis that this proposed instruction appears similar to, but deviates from preliminary jury instruction no. 20, and may be confusing to the jury.

**Samsung's Proposed Instruction**

I will now again summarize for you each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple seeks money damages from Samsung for allegedly infringing the '381, '915, '163, D'889, D'087, D'677, and D'305 patents by making, importing, using, selling, and/or offering for sale the tablet and smart phone products that Apple argues are covered by claim 19 of the '381 patent, claim 8 of the '915 patent, claim 50 of the '163 patent, and the D'889, D'087, D'677, and D'305 patents   Apple also argues that Samsung's Korean Parent, Samsung Electronics Company ("SEC"), actively induced the U.S. Samsung entities, Samsung Electronics America, Inc. ("SEA") and Samsung Telecommunications America, LLC ("STA"), to infringe the patents.  Apple contends also that Samsung's infringement has been willful.

Samsung denies that it has infringed the asserted claims of Apple's patents and argues that, in addition, those claims are invalid.  Invalidity is a defense to infringement.

Samsung has also brought claims against Apple for patent infringement.  Samsung seeks money damages from Apple for allegedly infringing the '941, '516, '711, '460, and '893 patents by making, importing, using, selling and/or offering for sale Apple's iPhone, iPad and iPod products that Samsung argues are covered by claims 10 and 15 of the '941 patent, claims 15 and 16 of the '516 patent, claim 9 of the '711 patent, claim 1 of the '460 patent, and claim 10 of the '893 patent.  Samsung also contends that Apple's infringement has been willful.

Apple denies that it has infringed the claims asserted by Samsung and argues that the claims asserted by Samsung are invalid, and for the '516 and '941 patents, also unenforceable.  Invalidity and unenforceability are defenses to infringement.  Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms.

For each party's patent infringement claims against the other, the first issue you will have to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and whether those patents are valid.  If you decide that any claim of either party's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

To resolve Apple's claims regarding Samsung's "declared essential" patents, you will need to make a finding as to whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations.  If you decide that Samsung violated the antitrust laws or breached its contractual obligations, you will then need to decide what money damages to award to Apple.

Apple accuses Samsung of diluting Apple's Registered Trade Dress No. 3,470,983.  This trade dress relates to the iPhone.  Apple also accuses Samsung of diluting two unregistered trade dresses relating to the iPhone.  Finally, Apple claims that Samsung has diluted and infringed its unregistered trade dress relating to the iPad.

For each of Apple's trade dress dilution and infringement claims, the first issue you will have to decide is whether the Apple trade dress is protectable (or valid).  An asserted trade dress is only protectable if the trade dress design as a whole is both distinctive and non-functional.

For Apple's dilution claims, the next issues you will decide are whether Apple's trade dress was famous before Samsung started selling its accused products, and whether Samsung's accused products are likely to cause dilution of the asserted Apple trade dresses.

Apple's trade dress infringement claim will require you to resolve different issues. You will need to determine whether Apple's trade dress had acquired distinctiveness before Samsung started selling its accused products, and whether Samsung's accused products are likely to cause confusion about the source of Samsung's goods.

If you decide that any protectable Apple trade dress has been infringed or willfully diluted by Samsung, you will then need to decide the money damages to be awarded to Apple.

Samsung denies that it has infringed or diluted any Apple trade dress and argues that each asserted trade dress is not protectable. If a trade dress is not protectable, that is a defense to infringement and dilution.

**Apple's Objection to Samsung's Instruction**

Apple objects to Samsung's instruction on the grounds that it references the non-functionality requirement without stating that this inquiry is not directed to individual features (as opposed to the design as a whole), and that it does not inform the jury that Apple's registered iPhone trade dress is presumed valid (or protectable). That these concepts were not conveyed to the jury in the Preliminary Instructions does not mean they cannot be conveyed to the jury now.

1

**UTILITY PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 10.1
COPYING IS NOT RELEVANT TO INFRINGEMENT**

**Samsung's Proposed Instruction**

You have heard allegations by Apple that certain of its designs and patents have been copied. Regardless of whether you as the jury accept this testimony, you may not consider it in deciding whether any patents in this case have been infringed.  Copying is not an element of patent infringement.  I will give you further instructions on the standards to apply in determining utility patent infringement and design patent infringement.  In neither case will evidence of copying or lack of copying be relevant to your deliberations.  Evidence of copying, if established, is only relevant as one of several considerations you will need to account for in deciding whether a patent is invalid because it was an obvious design.

**Source**

*Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350-51 (Fed. Cir. 2002) ("While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126-27 (Fed. Cir. 1993) ("Melville presented no evidence to counteract the evidence of copying of the patented design.  Indeed, Melville admitted copying . . . an issue not relevant to patent infringement.") (emphasis added); *see also Goodyear Tire v. Hercules Tire*, 162 F.3d 1113, 1121 (Fed. Cir. 1998) ("Although Hercules does not deny that it intended to appropriate the general appearance of the Goodyear tire, Hercules argues that it made changes sufficient to avoid infringement.  The district court agreed."); *Hupp v. Siroflex of America*, 122 F.3d 1456 (Fed. Cir. 1997) (upholding non-infringement finding where "Siroflex's president conceded at the trial that he acquired a sample of the Hupp product at a trade show and, using the same concept, made the accused Siroflex mold for an outdoor walkway of concrete stones.").

**Samsung's Statement of Support for Proposed Instruction No. 10.1 and 34.4b**

Samsung's proposed instruction on the relevance of allegations of copying is particularly important in this trial because Apple chose to make it a central theme in its case, despite its not being an element in its main legal claims of infringement.  The jury should be made aware of this to prevent a serious error of law.  A general instruction on alleged evidence of copying would not be prejudicial to Apple because in those instances where copying might actually be relevant to an issue, such as secondary considerations of obviousness, the particular instruction at issue will alert the jury to that fact.  As to the law on copying, the Federal Circuit is clear: "While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed."  *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350-51 (Fed. Cir. 2002) (emphasis added).  Apple has tried to argue that the *LA Gear v. Thom McAn Shoe Co.* case says that copying is relevant to infringement, but that is not only a misreading of the case, which clearly says that copying is "an issue not relevant to patent infringement," but it's a misreading of design patent law generally.  988 F.2d 1117, 1126-27 (Fed. Cir. 1993) (emphasis added).  If necessary to alleviate Apple's objection, the last sentence of the instruction could be changed to this: "In the event that evidence of copying is established and would be relevant to a particular issue other than infringement, I will provide you with an explicit instruction to that effect."

**Apple's Objection to Samsung's Proposed Instruction**

Samsung's proposed instruction on copying is misleading and incomplete. It should not be part of the instructions read to the jury. First, Samsung's proposed instruction ignores the relevance of Samsung's copying to the many issues in this case, as it incorrectly states that copying "is only relevant as one of several considerations you will need to account for in deciding whether a patent is invalid because it was an obvious design." This fact is undisputable: copying is relevant to many issues in this case in addition to non-obviousness, including indirect infringement, willful infringement, and trade dress secondary meaning. For instance, copying is relevant to Samsung's inducement of infringement, which considers intent and whether SEC intended to induce its subsidiaries to infringe. *See Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011). Copying is also relevant to willful infringement. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 117, 1126-27 (Fed. Cir. 1993)  ("Melville's deliberate copying was strong evidence of willful infringement."). And copying is relevant to secondary meaning of trade dress as well as to likelihood of confusion. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 844-45 (9th Cir. 1987) ("deliberate copying may suffice to support an inference of secondary meaning"). Moreover, contrary to Samsung's suggestion, the Federal Circuit has considered copying as relevant to infringement. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 117, 1125 (Fed. Cir. 1993) (reasoning that "substantial similarity is not disputed; indeed, *copying is admitted*"). Samsung selectively misquotes *L.A. Gear* for the proposition that copying "is an issue not relevant to patent infringement," but the full quote reads, "Melville presented no evidence to counteract the evidence of copying of the patented design. Indeed, Melville admitted copying, *offering as its only justification the proposition that copying is prevalent in the fashion industry*, an issue not relevant to patent infringement." *Id.* at 1126-27 (emphasis added). Hence, *L.A. Gear* teaches that whether copying is industry-wide is irrelevant to infringement; it does not stand for the proposition that a defendant's copying is irrelevant. Finally, Samsung's proposed instruction finds no basis in the Northern District model instruction. This is for good reason -- the Court need not instruct jurors on the relevance or irrelevance of each kind of evidence to each issue in the case. Including an instruction such as this one will only confuse and mislead the jury into downplaying the relevance of this evidence. Indeed, Samsung's own case, which it misleadingly quotes with carefully placed ellipses, *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 117, 1126-27 (Fed. Cir. 1993), supports the use of copying to find infringement. In affirming infringement, the Federal Circuit recognized that "substantial similarity is not disputed; indeed, *copying is admitted*." *Id.* at 1125. It also noted that "the district court found that the designs of four models of Melville's accused shoes were 'almost a direct copy' of the '081 design." *Id.* To avoid this language confirming the relevance of copying to infringement, Samsung selectively misquotes *L.A. Gear* by replacing a key phrase in its parenthetical quote with ellipses. The full quote that Samsung cites in its parenthetical reads that "Melville presented no evidence to counteract the evidence of copying of the patented design. Indeed, Melville admitted copying, *offering as its only justification the proposition that copying is prevalent in the fashion industry*, an issue not relevant to patent infringement." *Id.* at 1126-27 (emphasis added). Hence, *L.A. Gear* actually merely held that the defense of industry wide copying is irrelevant to its infringement finding; it did not find that defendant's copying is irrelevant to infringement. Moreover, Samsung's proposed instruction finds no basis in the Northern District model instruction. This is for good reason -- there is no reason to call out every particular nuance of infringement law. There is much evidence that the jury will have heard throughout trial – and some evidence will be relevant to patent infringement and others will be less relevant to patent infringement. But the Court need not instruct jurors on the relevance or irrelevance of everything to each issue in the case. Including an instruction such as this one will only confuse and mislead to jury into downplaying the relevance of this evidence.

## PROPOSED FINAL JURY INSTRUCTION NO. 12.1
## UTILITY PATENTS—DIRECT INFRINGEMENT

**Apple's Proposed Instruction**

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

1. Whether a sale occurs within the United States is not determined solely by where the accused products are when legal title over them is transferred.

2. One example of a sale within the United States is where an accused product is sold to a U.S. entity and shipped into the United States.

**Authorities**

35 U.S.C. § 271; *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008) ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States.  Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States."); *id.* at 1371 ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.  Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271."); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States.  Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American electrical fittings.  Moreover, the invoices between Pentalpha and the three U.S. companies all identify delivery to U.S. destinations.  In sum, this court does not perceive any fundamental error with the jury instructions in light of the record evidence."); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("As with the offer to sell, we hold that a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law.  Maersk USA's first argument, that the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*. There, we held that a sale does not only occur at a 'single point where some legally operative act took place.'  *Litecubes*, 523 F.3d at 1369-70.  We may also consider other factors such as the place of performance.  *Id.* at 1371.  Maersk USA's argument that Statoil could use the rig outside the U.S. ignores the plain language of the contract, which includes an 'Operating Area' of the U.S. Gulf of Mexico.  J.A. 7167.  It also ignores the fact that Maersk did in fact deliver the rig to U.S. waters.").

**Samsung's Objection to Apple's Proposed Instruction**

This instruction is unnecessary because Proposed Final Jury Instruction No. 12 already discusses what is required for direct infringement and what connection to the United States must exist for a finding of infringement.  Subsection 1 of Apple's proposed instruction introduces concepts such as "legal title" that are not explained to the jury and therefore will lead to confusion.  Moreover, this subsection fails to provide information about what other factors are considered in determining whether a sale occurred within the United States.  Subsection 2 of Apple's proposed instruction is

misleading because it ignores the law holding that mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability for patent infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375, 1377 (Fed. Cir. 2005) ("Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability under section 271(a)."); *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1206 (D. Nev. 2011) (same); *Pfizer Inc. v. Aceto Corp.*, 853 F.Supp. 104, 105 (S.D. N.Y. 1994) (holding that nothing in the identical "within the United States" language of Section 271(g) "suggests that a foreign manufacturer, who does not import the product into the United States, may be liable simply because it can foresee that a buyer of its product may ultimately import it into the United States."); *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142-147 (D.D.C. 2006) (holding that products shipped abroad f.o.b. were not sold in the United States under a United States patent); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, at *51 (N.D.N.Y. Jan. 31, 2007), *aff'd, Cornell University v. Hewlett-Packard Co.*, 2007 WL 2791120 (N.D.N.Y. Sep 24, 2007)(denying motion for summary judgment of exhaustion where "delivery by Intel of all or some of the PA–8500 and PA–8600 processors in issue to HP could well have occurred outside of the United States" and characterizing *Minebea* as follows: "[r]elying upon the fact that delivery of the allegedly infringing product was made FOB a location outside of the United States and, of critical significance, the product was in fact physically delivered abroad, the court concluded that a foreign sale had occurred, despite the conflicting indicia of a sale within the United States, and patent exhaustion therefore did not apply."). If the Court should entertain a Proposed Final Jury Instruction Nos. 12.1 and 34.1, Samsung has submitted an alternate proposal that is accurate and supported by legal authority.

**Samsung's Proposed Instruction**

Under United States law, no infringement occurs when the patented product is made and sold in another country. The United States patent law applies to infringing activities that occur "within the United States." Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability for patent infringement.

**Source**

*Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375 (Fed. Cir. 2005); *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1206 (D. Nev. 2011); *Pfizer Inc. v. Aceto Corp.*, 853 F.Supp. 104, 105 (S.D. N.Y. 1994); *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142-147 (D.D.C. 2006) (holding that products shipped abroad f.o.b. were not sold in the United States under a United States patent); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, at *51 (N.D.N.Y. Jan. 31, 2007), *aff'd, Cornell University v. Hewlett-Packard Co.*, 2007 WL 2791120 (N.D.N.Y. Sep 24, 2007)(denying motion for summary judgment of exhaustion where "delivery by Intel of all or some of the PA–8500 and PA–8600 processors in issue to HP could well have occurred outside of the United States" and characterizing *Minebea* as follows: "[r]elying upon the fact that delivery of the allegedly infringing product was made FOB a location outside of the United States and, of critical significance, the product was in fact physically delivered abroad, the court concluded that a foreign sale had occurred, despite the conflicting indicia of a sale within the United States, and patent exhaustion therefore did not apply.").

**Apple's Objection to Samsung's Proposed Instruction**

Samsung's proposed instruction is misleading and misstates the law. Via this instruction, Samsung purportedly seeks to shield SEC's infringing activities from liability because the transfer of legal title of the infringing goods may have occurred overseas and not "within the United States." But the Federal Circuit has rejected this argument numerous times. Contrary to the implications in Samsung's instruction, the Federal Circuit has made clear that whether a sale occurs "within the United States" is not determined solely by where the accused products are when legal title over them is transferred. For instance, in *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008), defendant argued that the infringing sales "were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada." The Federal Circuit rejected this argument: "Our case law, however, is inconsistent with [defendant's] theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271." *Id. See also id.* at 1369 ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States. Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States."). To that end, the Federal Circuit has held that a sale "does not only occur at a 'single point where some legally operative act took place.'" *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("As with the offer to sell, we hold that a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law. Maersk USA's first argument, that the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*."). *See also, e.g.*, *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title passes, but also where contracting and performance occur); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of

a sale by considering where the customers were located when they contracted for the accused products and where the products were delivered); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States. Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American electrical fittings. Moreover, the invoices between Pentalpha and the three U.S. companies all identify delivery to U.S. destinations. In sum, this court does not perceive any fundamental error with the jury instructions in light of the record evidence."). Samsung relies on *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007) as support, but *Microsoft* concerned the issue of supplying components from the United States under § 271(f), and not whether a sale occurred "within the United States" under of § 271(a). Indeed, the *Transocean* court cited above considered the *Microsoft* case in reversing summary judgment of non-infringement based on the fact that the lower court incorrectly found that the sale occurred in Norway. 617 F.3d at 1309-10. *MEMC* likewise does not support Samsung's instruction as the *MEMC* court determined the location of a sale by considering where its "essential activities" took place. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375-77 (Fed. Cir. 2005). Indeed, the Federal Circuit repeated its familiar holding that a "'sale' under section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance' may take precedence over the passage of legal title. *Id.* *MEMC* is also not like the situation here for, in *MEMC*, the foreign defendant sold its products to a Japanese affiliate, not to an entity in the United States like the Samsung Korean parent SEC does here. *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1206 (D. Nev. 2011) is distinguishable as the plaintiff failed to provide evidence that the sale was within the United States under § 271. Here, Apple has provided sufficient evidence for a jury to find infringing sales within the United States. Finally, *Pfizer Inc. v. Aceto Corp.*, 853 F. Supp. 104, 105 (S.D. N.Y. 1994) is distinguishable as it concerned liability under § 271(g), which is not the subject of this instruction. Apple's counterpart instruction accurately captures the law. Samsung's proposed instruction does not and should be rejected. This is not a case, furthermore, in which we have "[m]ere knowledge that a product sold overseas will ultimately be imported into the United States…." That "mere" principle is not in play here. Finally, the other two district court decisions cited by Samsung—*Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142-147 (D.D.C. 2006); and *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, at *51 (N.D.N.Y. Jan. 31, 2007), *aff'd, Cornell University v. Hewlett-Packard Co.*, 2007 WL 2791120 (N.D.N.Y. Sep 24, 2007)—do not help its cause either. Both of these cases pre-date the trio of Federal Circuit decisions on which Apple relies. *See Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010). On top of that, *Minebea* involved a situation where the foreign defendant did not ship its accused products into the United States. 444 F. Supp. 2d at 142 ("In Minebea's case, however, it appeared at the summary judgment stage - and continues to be the case after trial - that the vast majority of Minebea's motors not only were F.O.B. abroad, but also were in fact delivered abroad."). Samsung does. *Cornell* is inapposite for the same reason. The district court there emphasized that "[t]his case is in some ways similar to the circumstances presented in *Minebea*…, [in which] delivery of the allegedly infringing product was made FOB a location outside of the United States *and, of critical significance, the product was in fact physically delivered abroad.*" 2007 WL 4349135, at *51 (emphasis added). That is not the case here.

**PROPOSED FINAL JURY INSTRUCTION NO. 14**
**UTILITY PATENTS—INFRINGEMENT UNDER THE DOCTRINE OF**
**EQUIVALENTS**[2]

**Apple's Proposed Instruction**

If you decide that an accused Samsung product does not literally infringe an asserted Apple patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents." If you decide that an accused Apple product or method does not literally infringe an asserted Samsung patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes parts or software instructions that are identical or equivalent to the requirements of the claim. If the product or method lacks a part or software instructions that is identical or equivalent to even one requirement of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either a part or set of instructions that is identical or equivalent to that individual claim requirement.

A part of or a set of software instructions in a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or instructions and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or set of instructions in the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or instructions performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product or method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or set of instructions with the claimed requirement. The known interchangeability between the claim requirement and the part or instructions within the product or method is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part or instructions and the claim requirement is not substantial. The fact that a part or software instructions in the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

---

[2] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves the right to modify the instruction if the Court rules in its favor on this issue.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.4.

**Authorities**

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.,* 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms. USA, Inc.,* 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assocs. v. R.E. Serv. Co.,* 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 397 (Fed. Cir. 1994).

**<u>Samsung's Objection to Apple's Proposed Instruction</u>**

Samsung objects to Apple's Instruction because it suggests that the doctrine of equivalents is available to any limitation of any claim asserted by Apple.  In fact, the only viable doctrine of equivalents argument in this case relates to Samsung's '460 patent.  Because Apple failed to assert a doctrine of equivalents theory for the asserted claims of the '381, '915, and '163 patents in its infringement contentions, it is precluded from doing so now.  *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.,* 2004 WL 5363616, at *4 (N.D. Cal. 2004) (precluding reliance of doctrine of equivalents theory not disclosed in infringement contentions); *Rambus, Inc. v. Hynix Semiconductor Inc.,* 2008 WL 5411564, at *3 (N.D. Cal. 2008) (same); *Genentech, Inc. v. Amgen,* 289 F.3d 761, 773–74 (Fed. Cir. 2002).  Samsung's proposed instruction immediately below is preferable because it more closely follows the Northern District of California's Model Patent Jury Instructions and does not contain attorney argument, as does Apple's Instruction.

**Samsung's Proposed Instruction**

If you decide that the products accused of infringing Samsung's '460 patent do not literally infringe, you must then decide whether those products infringe the asserted claim under what is called the "doctrine of equivalents."[3]

Under the doctrine of equivalents, the product can infringe an asserted utility patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted utility patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted utility patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.4; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

---

[3] Because Apple failed to assert a doctrine of equivalents theory for the asserted claims of the '381, '915, and '163 patents in its infringement contentions, it is precluded from doing so now. *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *4 (N.D. Cal. 2004) (precluding reliance of doctrine of equivalents theory not disclosed in infringement contentions); *Rambus, Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at *3 (N.D. Cal. 2008) (same); *Genentech, Inc. v. Amgen*, 289 F.3d 761, 773–74 (Fed. Cir. 2002).

1

**Apple's Objection to Samsung's Proposed Instruction**

2

Apple first objects to Samsung's proposed instruction regarding the doctrine of equivalents on the ground that Samsung did not disclose this theory in discovery.  Samsung should not therefore be

3

allowed to put this theory to the jury now.  Apple further objects to Samsung's proposed instruction because it does not expressly recognize that some claim limitations from a patent may

4

be met by *software instructions* as opposed to physical "parts."  Apple has no quarrel with the Northern District of California model instruction regarding the doctrine of equivalents as a

5

general matter, and Apple's corresponding instruction tracks the model instruction almost completely.  But instructions are not necessarily "one size fits all," and the jury will be more

6

equipped to apply the doctrine of equivalents to the accused products in this case if it is told that claim elements can be met by equivalents that exist in forms of media like software instructions,

7

not just brick-and-mortar parts.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 15**
**UTILITY PATENTS— LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS[4]**

**Apple's Proposed Instruction**

Because Samsung made certain claim changes or statements during the patent application process for the '711, '460, and '893 patents, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

- The limitation requiring "wherein the music background play object includes an application module including at least one applet" in claim 9 of the '711 patent.

- The limitations requiring a "first E-mail transmission sub-mode," a "second E-mail transmission sub-mode," "displaying an image most recently captured in a camera mode," "sequentially displaying other images stored in a memory through the use of scroll keys" in claim 1 of the '460 patent.

- The limitation requiring "irrespective of a duration" in claim 10 of the '893 patent.

Unless each of these requirements is literally present within the Apple's products, there can be no infringement of these claims.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.7.

**Authorities**

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (*en banc*); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d 1359 (Fed. Cir. 2003) (*en banc*).

**Samsung's Objection to Apple's Proposed Instruction**

Samsung objects to Apple's Instruction because Apple does not make it clear that the doctrine of equivalents has **only** been asserted for Samsung's '460 patent. Apple has no doctrine of equivalents arguments. Because Apple failed to assert a doctrine of equivalents theory for the asserted claims of the '381, '915, and '163 patents in its infringement contentions, it is precluded from doing so now. *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *4 (N.D. Cal. 2004) (precluding reliance of doctrine of equivalents theory not disclosed in infringement contentions); *Rambus, Inc. v. Hynix Semiconductor Inc.*, 2008 WL 5411564, at *3 (N.D. Cal. 2008) (same); *Genentech, Inc. v. Amgen*, 289 F.3d 761, 773–74 (Fed. Cir. 2002). In addition, Samsung has not asserted a doctrine of equivalents argument for either the '711 or '893 patent; therefore, Apple's instruction regarding those patents is improper and confusing. Moreover, Samsung disagrees that there is no range of equivalents available for the '460 patent's "sequentially displaying other images stored in a memory through the use of scroll keys" In sum, Samsung asserts that Apple's instruction is unnecessary and prejudicial to Samsung and should not be included.

---

[4] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves its right to withdraw or modify this instruction if the Court rules in its favor on this issue.

## PROPOSED FINAL JURY INSTRUCTION NO. 15.1
## UTILITY PATENT INFRINGEMENT OF '460 METHOD CLAIM

**Samsung's Proposed Instruction**

In this case, Samsung asserts that Apple infringes Claim 1 of the '460 patent which is known as a method claim. Method claims are commonly drafted by describing the method as comprising certain steps followed by a list of actions that comprise the method that is claimed.

[As I've already instructed you,] if the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open method claim is infringed as long as every step in the claim is performed by the user. The fact that the user may perform additional steps will not avoid infringement, as long as the user performs every step set forth in the method claim.

Absent language specifying a specific order in which the steps are to be informed, the steps need not be performed in sequential order to find infringement.

Here, I have already determined that the steps of the '460 Patent do not need to be performed in order. You must accept that interpretation as correct. My interpretation should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*)*; Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one."); *Altiris, Inc.v. Symantec Corp.*, 318 F.3d 1363, 1369-71 (Fed. Cir. 2003) (reversing district court's finding that steps of method claim must be performed in a certain order); June 29, 2012 Order Granting In Part and Denying In Part Apple's Partial Motion for Summary Judgment.

**Apple's Objection to Samsung's Proposed Instruction**

Samsung's proposed instruction misleadingly suggests that the steps of a method claim never need to be performed in a particular order, and does not address the case where certain steps must be performed in a certain order. Apple's proposed instruction presents a more balanced statement regarding when the steps of a method claim must be performed in order and when they need not be performed in order. *See, e.g., Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1364 (Fed. Cir. 2010) (construing steps to occur out of order would recite an "illogical sequence" based on claim language); *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1321-22 (Fed. Cir. 1999) ("[a]lthough not every process claim is limited to the performance of its steps in the order written, the language of the claim, the specification and the prosecution history support a limiting construction in this case."); *Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc*., 152 F.3d 1368, 1375-76 (Fed. Cir. 1998) (order to claimed steps "is apparent from the plain meaning of the claim" and claimed steps could not be performed "in any order").

**Apple's Proposed Instruction**

In this case, Samsung asserts that Apple infringes Claim 1 of the '460 patent which is known as a method claim.  Method claims are commonly drafted by describing the method as comprising certain steps followed by a list of actions that comprise the method that is claimed.

[As I've already instructed you,] if the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open method claim is infringed as long as every step in the claim is performed by the user.  The fact that the user may perform additional steps will not avoid infringement, as long as the user performs every step set forth in the method claim.

Absent language specifying a specific order in which the steps are to be performed, the steps need not be performed in sequential order to find infringement.  However, the claim may require the steps to be performed in a particular order without expressly saying so.  For example, if a step refers to an earlier step having already occurred, the claim would imply that the steps must be performed in a particular order.

**Sources**

*Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1364 (Fed. Cir. 2010) (construing steps to occur out of order would recite an "illogical sequence" based on claim language); *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1321-22 (Fed. Cir. 1999) ("[a]lthough not every process claim is limited to the performance of its steps in the order written, the language of the claim, the specification and the prosecution history support a limiting construction in this case."); *Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1375-76 (Fed. Cir. 1998) (order to claimed steps "is apparent from the plain meaning of the claim" and claimed steps could not be performed "in any order").

**Samsung's Objection to Apple's Proposed Instruction**

Apple's proposed instruction should be rejected for two separate reasons. First, Apple's instruction ignores that this Court has already rejected Apple's argument that the steps of the '460 Patent must be performed in sequence. See June 29, 2012 Order Granting in Part and Denying in Part Apple's Motion for Partial Summary Judgment (Dkt. # 1156 ) ("Moreover, claim 1, read in light of the specification and prosecution history, only meets the construction offered by Samsung. Samsung argues that claim 1 establishes three functionalities: sending an e-mail transmission from a first e-mail sub-mode; sending an e-mail transmission with an image from a second e-mail sub-mode; and sequentially displaying other images with a scroll key. Opp'n at 13-15.") Because performing the three functionalities necessarily requires non-sequential performance of the steps, this Court has already determined that the steps of the '460 do not need to be performed sequentially.  Apple's instruction incorrectly suggests that it remains an open question whether the steps of the '460 Patent must be performed in sequence, and that the jury may so construe the claim. That is improper. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996).  Second, Apple ignores the complete lack of intrinsic evidence in the claim, the specification, or the prosecution history that could support its argument that the steps must be performed in sequence. Thus the authority it relies on is inapposite.

**PROPOSED FINAL JURY INSTRUCTION NO. 19**
**UTILITY PATENTS—STATUTORY BARS**

**Apple's Proposed Instruction**

A utility patent claim is invalid if the patent application was not filed within the time required by law.  This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Here is a list of ways either side can show that the patent application was not timely filed:

– If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date (or "priority date") of the patent application.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

– If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

– If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

The Apple utility patents at issue have the following effective filing dates:

- '381 patent:  January 7, 2007.

- '915 patent:  January 7, 2007.

- '163 patent:  September 6, 2006.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a2.

**Authorities**

35 U.S.C. § 102; *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313,

1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

### Samsung's Objection to Apple's Proposed Instruction

Samsung also objects to the Instruction in that it includes alleged "effective filing dates" for the '381, '915, and '163 patents.  Samsung does not, as Apple asserts "agree" on these effective filing dates; therefore, at the least, this portion of Apple's Instruction should be stricken.  Further, Samsung objects to the Instruction in that it omits the final paragraph from Model Patent Jury Instruction 4.3a2, which lays out the requirements for a claim to be invalid because of a statutory bar.  Such an omission would be unduly confusing to a jury.  Finally, Samsung objects to Apple's omission of a paragraph regarding enablement of a prior art reference.  There are both prior art patents and prior publications at issue here, and Samsung believes an instruction on the presumptions afforded those pieces of prior art would be instructive to the jury.  Samsung's proposal below closely follow the Northern District of California's Model Patent Jury Instruction and are preferable to Apple's biased Instruction.

**Samsung's Proposed Instruction**

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways an alleged infringer can show that the patent application was not timely filed:

> – if the claimed invention was already patented or described in a printed publication anywhere in the world one year before effective filing date of patent application. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.;

> – if the claimed invention was already being openly used in the United States one year before the application filing date and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

> – if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, one year before the application filing date.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of [identify field] looking at the reference to make and use the claimed invention.

Authorities

35 U.S.C. § 102(b) and (d); *Pfaff v. Wells Elec. Inc.*, 525 U.S. 55 (1998); *Schering Corp. v. Geneva Pharms.*, 339 F.2d 1273 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983).


**Apple's Objection to Samsung's Instruction**

The differences between Apple's and Samsung's competing statutory bar instructions are, with one exception, minimal. The most significant difference between the parties is that Samsung contends that the Court should not instruct the jury about the effective dates for the Apple utility patents. For the '915 patent, this is not an issue. Because Apple relies on the actual filing date of the application that led to the '915 patent, not an earlier application in its chain, there is no question that the Court should instruct the jury to use that date. For the '381 and '163 patents, it is too late for Samsung to dispute Apple's entitlement to the effective dates set out on the face pages of these patents. Samsung did not contest Apple's right to these effective dates in its expert reports or in its Patent Local Rule 3-3 Invalidity Contentions. In fact, for the '381 patent, Samsung's expert has admitted that Apple is entitled to the effective date (January 7, 2007) that it

seeks.  In his expert report, Dr. Van Dam affirmed that the "critical date" for purposes of assessing statutory bar questions is precisely the date Apple seeks.  He stated:  "The '381 patent was filed in the United States on December 14, 2007, and *claims a priority date of January 7, 2007, based upon provisional applications Nos. 60/883,801 and 60/879,253.  It is my understanding that the 'critical date' for the '381 patent is January 7, 2006, one year before the filing date of these provisional applications*."  (Van Dam Mar. 22, 2012 Report, ¶ 70 (emphasis added).)  Moreover, for both the '381 and '163 patents, Samsung has not come forward with any intervening prior art (*i.e.*, prior art that is between the dates of the applications for the patents-in-suit and the effective dates advanced by Apple) that would require instructing the jury on how to resolve a dispute concerning a patentee's right to a priority date.  If the Court ultimately finds that the question of effective filing dates should be put to the jury, the Court should deliver the following additional jury instruction:

> As I have instructed you, deciding whether Samsung has proven it is highly probable that any Apple utility patent is invalid based on a "statutory bar" requires a determination of the "effective filing date" (or "priority date") for that Apple patent.

> The effective filing date for the '915 patent is January 7, 2007, and the effective filing date for the '381 patent is January 7, 2007.  You, however, need to decide the effective filing date for the '163 patent.

> In deciding this issue, keep in mind that a claim in a utility patent is entitled to an effective priority date from an earlier application if a person of ordinary skill in the field reading the patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim.  A requirement in a claim need not be specifically disclosed in the earlier patent application if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as filed.

**Sources and Authorities:**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.2a.  *See also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008); *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869-71 (Fed. Cir. 2010); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008).

## PROPOSED FINAL JURY INSTRUCTION NO. 19.1
## UTILITY PATENTS—INDEFINITENESS

**Samsung's Proposed Instruction**

The claims of a utility patent must particularly point out and distinctly claim the subject matter which the patentee regards as the invention.  If a patent sets forth the invention in terms that are insolubly ambiguous, you must find the patent claim indefinite and therefore invalid.  A claim term is insolubly ambiguous if a person skilled in the art would not understand the bounds of the claim when read in light of the specification.

A patent claim that uses a word of degree (*e.g.*, "substantially") is not necessarily indefinite, but when such words of degree are used, the patent specification must provide some standard for measuring that degree.

**Source**

35 U.S.C. § 112, ¶ 2; *Seattle Box Co., Inc. v. Industrial Crating and Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984); *Dow Chem. Co. v. Nova Chems. Corp.*, 629 F. Supp. 2d 397, 403 (D. Del. 2009) (appropriate circumstances warrant submission of an indefiniteness dispute to the jury).

**Apple's Objection to Samsung's Proposed Instruction**

Samsung's proposed instruction is unnecessary and inappropriate, as indefiniteness is a legal issue for the Court.  *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (determining whether patent complies with 35 U.S.C. § 112(2) presents question of law drawn from court's performance of claim construction duties); *Telcordia Techs., Inc. v. Cisco Sys.*, 612 F.3d 1365, 1376 (Fed. Cir. 2010) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as a construer of patent claims.") (internal citation omitted); *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (citing *Exxon* and holding that whether claim reasonably apprises those skilled in the art of its scope is question of law); *Accentra Inc. v. Staples, Inc.*, Case No. CV 07-5862 ABC (RZx), 2011 U.S. Dist. LEXIS 154692, at *9-10 (C.D. Cal. Dec. 19, 2011) ("Indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims, *not a question for the jury*.") (internal quotations omitted, emphasis added); 3 Donald S. Chisum, *Chisum on Patents*, § 8.03[7] (2012) ("Federal Circuit decisions after *Exxon Research* recited that definiteness as a ground for invalidating a patent claim is a legal conclusion.").  Consistent with the authority above and the weight of Federal Circuit case law, the Northern District of California Model Patent Jury Instructions include no instruction for indefiniteness.  Samsung cites *Dow Chem. Co. v. Nova Chems. Corp.*, 629 F. Supp. 2d 397, 403 (D. Del. 2009), to support its assertion that such an instruction is warranted, but *Dow* is inconsistent with the majority of Federal Circuit authority, as noted above.  Moreover, on appeal, the Federal Circuit explicitly declined to address whether it was error to submit the question of indefiniteness to the jury.  *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 458 Fed. Appx. 910, 917 n.8 (Fed. Cir. 2012).  A separate problem for Samsung is that its assertion that a patent specification "must provide some standard" if a patent claim uses a word of degree—in particular the term "substantially"—is also flawed.  Terms of degree like "substantially equal" are "ubiquitous in patent claims," and they are typically sufficiently definite for one of ordinary skill to understand.  *See Andrew Corp. v. Gabriel Electronics, Inc.*, 847 F.2d 819, 821-22 (Fed. Cir. 1988); MPEP § 2173.05(b) (when term of degree present, "determine whether a standard is disclosed *or whether one of ordinary skill in the art would be apprised of the scope of the claim*") (emphasis added); *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119-21 (Fed. Cir. 2002) (guidance as to measurement of term of degree can come from intrinsic

1   record or from knowledge of person of ordinary skill); *Synthes USA, LLC v. Spinal Kinetics, Inc.*,
2   Case No. C-09-01201 RMW, 2011 U.S. Dist. LEXIS 93093, at *47-48 (N.D. Cal. Aug. 19, 2011)
    (granting motion to dismiss indefiniteness defense because terms of degree need not be perfectly
3   defined and "the term 'substantial' is a meaningful modifier implying 'approximate,' rather than
    'perfect.'") (internal quotations omitted).  There is thus no basis for Samsung's proposed
4   instruction.  This is a legal issue for the Court and there is no support for Samsung's defense.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 21
## PATENT EXHAUSTION

2

3

**Apple's Proposed Instruction**

4

I will now instruct you on how to decide Apple's defense of patent exhaustion. Apple contends that Samsung is barred from enforcing the '516 and '941 patents against Apple's accused iPhone and iPad products because they incorporate baseband chips that Intel sold to Apple with authorization from Samsung.

5

6

To prevail on the defense of patent exhaustion, Apple must prove that the following is more likely true than not:

7

8

**First**, that Intel was authorized to sell the baseband chips under the terms of the license agreement between Samsung and Intel;

9

10

**Second**, that the sales were made in the United States. The location of the sale depends on many factors, and you may find that the sale occurred in several places. A sale occurs wherever the "essential activities" of the sale take place. The essential activities include, for example, negotiating the contract and performing obligations under the contract; and

11

12

**Third**, that, if the accused products infringe, it is because the baseband chips substantially embody the '516 and/or '941 patents. The baseband chips embody the relevant patent if they: (i) include all the inventive aspects of the patented device; and (ii) have no reasonable non-infringing use.

13

14

If you find that Intel acted within the scope of authorization received from Samsung in selling its baseband chips to Apple in the United States, and the baseband chips substantially embody the '516 and/or '941 patents, then you must find that Samsung is barred from enforcing those patents against Apple's products that incorporate the Intel baseband chips.

15

16

**Authorities**

17

18

*Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008) (holding that a chip substantially embodied a patent where there was "no reasonable use" for the chip other than to practice the patent, and the chips "embod[ied] the essential features" of the patented invention); *Transcore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009); *U.S. v. Univis Lens*, 316 U.S. 241 (1942); *Adams v. Burke*, 84 U.S. 453 (1873); *Bloomer v. Millinger*, 68 U.S. 340, 350-51 (1863); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of a sale by considering where the customers were located when they contracted for the accused products and where the products were delivered); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title passes, but also where contracting and performance occur); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005); *id..* at 1376-77 (determining the location of a sale by considering where its "essential activities," such as ordering, packaging, shipping and payment, took place); *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522, 539 (E.D. Tex. 1994) ("Cyrix 1994"); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 60209 (N.D.N.Y. Aug. 1, 2008).

19

20

21

22

23

24

25

26

**Samsung's Objection to Apple's Proposed Instruction**

27

28

Samsung objects to Apple's description of the second element of exhaustion. The fundamental initial US sale requirement was recently reaffirmed by the Federal Circuit. *See Ninestar Tech.*

*Co. v. Int'l Trade Comm'n*, 667 F.3d 1373 (Fed. Cir. 2012) ("[P]atents are subject to exhaustion upon sale of product or components in the United States."); *see also Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1371 (Fed. Cir. 2010).  Apple's instruction does not set forth the most important requirement in assessing the location of the sale, which is where the items were delivered. *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142 (D.D.C. 2006) (holding that alleged infringer "must establish that its motors were sold in the United States—that is, delivered into the United States 'under' a United States patent"); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, *51 (N.D.N.Y. Jan. 31, 2007) (denying motion for summary judgment of exhaustion where "delivery by Intel of all or some of the PA–8500 and PA–8600 processors in issue to HP could well have occurred outside of the United States").

**Samsung's Proposed Instruction**

Apple has also asserted a defense of "patent exhaustion" to Samsung's claim that Apple infringes Samsung's '604 patent, '516 patent, and '941 patent.  I will now explain the "patent exhaustion" defense to you.

Apple claims that Samsung has licensed the use of the '604, '516, and '941 patents to Intel. Apple further claims that since it purchased baseband processor chips from Intel that are covered by the license and that Apple therefore it is not liable for infringing Samsung's patents. This is called the "patent exhaustion" defense. In other words, Apple claims that Samsung's licenses to Intel baseband processor exhausts Samsung's patent rights as to the use of Samsung's technologies in the Intel chips.

Apple has the burden of proving the "exhaustion" defense by a preponderance of the evidence.  In order to meet this burden, Apple must show that:

     **First**, that Intel was authorized to sell the baseband processor chip under the terms of a license agreement between Samsung and Intel.  In making your determination, you must evaluate whether the terms of Samsung's license with Intel authorized the sales of the baseband chips.

     **Second**, that Intel made an initial sale in the United States of the Intel baseband chips incorporated in the accused products.  In evaluating whether the sales took place in the United States, you must consider whether the baseband processor chips were actually delivered to Apple or its contractors in the United States.

     **Third**, that the Intel baseband processor chips substantially embody the inventions of the '604 patent, '516 patent, and '941 patent.

Apple must prove each of these elements to prevail on this defense.  If Apple does not prove any one of these elements, you must reject Apple's affirmative defense and find for Samsung on this issue.

**Source**

*Quanta Computer, Inc. v. LG Elecs, Inc.*, 553 U.S. 617 (2008); *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373 (Fed. Cir. 2012); *Fujifilm Corp. v. Benun*, 605 F.3d 1366 (Fed. Cir. 2010); *LaserDynamics, Inc. v. Quanta Storage America, Inc.*, No. 2:06-CV-348-TJW-CE, 2009 U.S. Dist. LEXIS 115848 at *3 (E.D. Tex. 2009); *MedImmune, LLC v. BioPharma, Inc.*, No. C 08-9550 JF HRL, 2011 WL 61191 at *17 (N.D. Cal. 2011); *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 403 (S.D.N.Y. 2007); *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 801 (S.D. Tex. 2009); 2009); *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 222 (D. Del 2001); *Gilson v. Republic of Ireland*, 787 F.2d 655, 658 (D.C. Cir. 1986); *PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1093 (6th Cir. 1979); *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985); *Minebea Co. v. Papst*, 444 F. Supp. 2d 68 (D.D.C. 2006); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974, 2007 WL 4349135 at *51 (N.D.N.Y. Jan. 31, 2007).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law. The instruction states that, in determining whether a sale occurred in the United States, the jury must consider only "whether the Intel chips were delivered to Apple in the United States." But that is an incomplete and inaccurate statement of the law, since it describes only one way in which a sale may occur in the United States. The

1   Federal Circuit has made clear that a sale is made at all the locations where the sale's "essential
2   activities," including negotiation and performance of the contract for sale or order and payment
    for the goods, take place. *See, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon
3   Corp.*, 420 F.3d 1369, 1376-77 (2005) (determining the location of a sale by considering where
    its "essential activities," such as ordering, packaging, shipping and payment, took place); *North
4   American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994)
    (stating that a sale occurs not only where legal title passes, but also where contracting and
5   performance occur); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed.
    Cir. 2008) (determining the location of a sale by considering where the customers were located
6   when they contracted for the accused products and where the products were delivered). Apple's
    corresponding instruction is an accurate statement of the law of patent exhaustion.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 22**
**EQUITABLE DEFENSES – WAIVER[5]**

2

3

**Apple's Proposed Instruction**

4

A patent is not enforceable when the patent holder's course of conduct indicates to others in the industry that it does not intend to enforce its patents.  Apple asserts that Samsung's failure to timely disclose to ETSI the existence of Korean patent applications to which the '941 and '516 patents claim priority constitutes a waiver of Samsung's right to enforce the '941 and '516 patents, and renders those patents unenforceable.

5

6

7

You must consider whether Apple has proven by clear and convincing evidence that Samsung's conduct was inconsistent with an intent to enforce its rights and induced a reasonable belief that such right had been relinquished.  To find that Samsung has waived its right to enforce the '941 or '516 patent, Apple must prove that Samsung had a duty to timely disclose the existence of those patents or related patent applications and failed to do so.

8

9

**Source**

10

Adapted from instructions in *Qualcomm Inc. v. Broadcom Corp.*, No. 05-cv-01958 (S.D. Cal.), as quoted in *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

11

12

**Authorities**

13

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020-22 (Fed. Cir. 2008); *Wang Labs, Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (citing *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("In patent law, an implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention.").

14

15

16

17

**Samsung's Objection to Apple's Proposed Instruction**

18

Apple ignores a critical element of waiver as set forth in *Qualcomm v. Broadcom*, the very authority on which it relies: that appropriate circumstances must exist to justify the Court's decision, sitting in equity, to hold the patents unenforceable.  *See Qualcomm*, 548 F.3d at 1012.

19

20

21

22

23

24

25

26

27

28

---

[5] Apple requests that the Court seek an advisory verdict from the jury on the question of waiver.  *See*, *e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1009 (Fed. Cir. 2008) (addressing advisory jury verdict on waiver in patent infringement case involving the patent owner's conduct before a standards-setting organization).

1    **Samsung's Proposed Instruction**

2           **[CONDITIONAL INSTRUCTION ONLY.  SAMSUNG DOES NOT BELIEVE
           APPLE'S EQUITABLE CLAIMS SHOULD BE DECIDED BY THE JURY.]**

3

4    Apple has also asserted a defense of waiver to Samsung's claim that Apple infringes Samsung's
     '604 patent, '516 patent, and '941 patent.  In order to prove waiver, Apple must show by clear
     and convincing evidence that Samsung, with full knowledge of the material facts, intended to
5    relinquish its rights to enforce the '604, '941 and '516 patents.

6    Apple asserts that Samsung's failure to disclose the existence of the Korean patent applications
     on which the '604, '941 and '516 patents claim priority constitutes a waiver of its right to enforce
     these patents and renders the patents unenforceable.  To find that Samsung has waived its right to
7    enforce the patents, you must find that each of the following factors is met:

8
             1.      Samsung had a duty to disclose the existence of the Korean patent applications to
9    ETSI as a member of that organization.

10           2.      The Korean patent applications were in fact essential to an ETSI standard.

11           3.      Samsung breached its disclosure duty by failing to disclose the Korean patent
     applications.
12
             4.      Appropriate circumstances exist to justify a finding that the '604, '941, and '516
13   patents are unenforceable against products practicing the ETSI standard, including the accused
     products.
14
     **Source**
15
     *Qualcomm Inc. v. Broadcom Corp*, 548 F.3d 1004 (Fed. Cir. 2008). ("In order to prove waiver,
16   Broadcom must show by clear and convincing evidence either that Qualcomm, with full
     knowledge of the material facts, intentionally relinquished its rights to enforce the 104 and 767
17   patents or that its conduct was so inconsistent with an intent to enforce its rights as to induce a
     reasonable belief that such right has been relinquished.").
18

19   **Apple's Objection to Samsung's Instruction**

20   Samsung's proposed instruction misstates the law and Apple's contentions in three ways. First,
     the instruction states that Apple must prove that Samsung "with full knowledge of the material
21   facts, intended to relinquish its rights to enforce" its patents. But the Federal Circuit has made
     clear that, under the doctrine of implied waiver, Apple may instead prove that Samsung's conduct
22   "was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such
     right has been relinquished." *See, e.g., Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020-
23   21 (Fed. Cir. 2008). Second, Samsung's instruction states that Apple must prove that the
     undisclosed patent applications "were in fact essential to an ETSI standard." But that is not a
24   requirement of waiver, which Apple may prove by showing that Samsung had a duty to timely
     disclose patents or applications under the ETSI IPR Policy but failed to do so, regardless of
25   whether the patents or applications were actually essential to the standard. *See, e.g., Qualcomm*,
     548 F.3d at 1022 (finding waiver where the undisclosed patents "reasonably might be necessary"
26   to practice the standard). Indeed, the ETSI IPR Policy—which is similar to the IPR policy at issue
     in the Qualcomm case—required Samsung to disclose patent applications that "might be
27   essential." Third, Samsung's instruction is misleading because it narrowly focuses on Samsung's
     failure to disclose certain Korean patent applications, but Apple's contentions include Samsung's
28   failure to disclose any patents or applications that "might be essential" to those portions of the

1   UMTS standard that Samsung claims are practice by its patents. Apple's corresponding
2   instruction is an accurate statement of the law of waiver and Apple's contentions. *See, e.g.,*
    *Qualcomm*, 548 F.3d at 1020-22 (describing waiver in the context of conduct before a standards-
3   setting organization).

**PROPOSED FINAL JURY INSTRUCTION NO. 24**
**UTILITY PATENT DAMAGES—BURDEN OF PROOF**

**Apple's Proposed Instruction**

I will instruct you about the measure of damages for claims of utility patent infringement.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that either party infringed any valid and enforceable claim of the other side's patents, you must then determine the amount of money damages to be awarded to the patent holder to compensate it for the infringement.

The amount of those damages must be adequate to compensate the patent holder for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Each patent holder has the burden to persuade you of the amount of its damages.  You should award only those damages that the patent holder more likely than not suffered.  While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Neither patent holder is entitled to damages that are remote or speculative.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1.

**Authorities**

35 U.S.C. § 284 (no reference to causation); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

**Samsung's Objection to Apple's Proposed Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages.  The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury.  The instructions are already over 200 pages and splitting utility and design patent damages instructions will only lengthen them.  Further, Apple's objection to Samsung's Proposed Instruction 24 incorrectly states that "neither side's verdict form asks the jury to assess damages separately for each of the Samsung defendants on an individualized basis."  Samsung's form asks the jury to apportion any damages between the Samsung defendants. (*See e.g.,* Dkt. No. 1283 at 10.)

**Samsung's Proposed Instruction**

I will instruct you about the measure of damages for patent infringement. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that the alleged infringer infringed any valid claim of a patent, you must then determine the amount of money damages to be awarded to the patent holder (to compensate it for the infringement. You should evaluate damages separately for each party you find to have infringed.

The amount of those damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Each patent holder has the burden to persuade you of the amount of its damages. You should award only those damages that the patent holder proves by a preponderance of the evidence. While the patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. The patent holder is not entitled to damages that are remote or speculative.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.1 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in three ways. First, Samsung states that"[y]ou should evaluate damages separately for each party you find to have infringed." This statement is not in the model for the Northern District of California patent jury instructions, and it is not something the jury in this case should be told in this instruction. In agreed instruction 2.1, the Court will already tell the jury that it "should decide the case as to each party separately." And, in agreed instruction 12, the Court will instruct the jury that it "must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products or methods infringe that claim." There is no reason to repeat the concept again, especially, when neither side's verdict form asks the jury to assess damages separately for each of the Samsung defendants on an individualized basis. Saying so here would lead to confusion. Second, Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. This instruction here is the first in Samsung's damages sequence, and Samsung intends its sequence to apply to both utility and design patents. Apple divides them for two reasons. In light of the difference in remedies—in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents—it makes more sense to treat utility and design patent damages separately. Further, it will be easier for the jury to delve into and address all of the utility liability and damages issues together before it has to address design patents. Under Apple's approach, the jury can decide the utility case and then move forward to the design patent issues, rather than fracturing its analysis between the two. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Third, on top of the greater efficiency to Apple's approach, Samsung's proposed instruction erroneously includes a sentence that points away from Apple's right to recover Samsung's profits under 35 U.S.C. § 289. Specifically, Samsung's instruction states: "A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty." This statement, while applicable to a recovery of lost profits or reasonable royalty under 35 U.S.C. § 284 and taken from the Northern District model, is inaccurate as it

1  applies to this case, because Apple is also seeking infringer's profits under 35 U.S.C. § 289.
2  Infringer's profits do not put the patent holder in the same financial position that would have
   occurred without the infringement.  The sentence is unnecessary and is likely to confuse the jury
3  in the unique context of this case.  Apple's instruction removes this sentence as it applies to
   infringement of the design patents.  *See* Apple's Proposed Instruction No.40.  Because Samsung
   intends this instruction to apply to both design and utility patent infringement, it is incorrect.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 25
## UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY

**Apple's Proposed Instruction**

For infringement of its utility patents, Apple seeks to recover lost profits for some of Samsung's sales of its infringing products, and a reasonable royalty on the rest of Samsung's infringing sales. Samsung does not seek lost profits for infringement of its utility patents.

To recover lost profits for infringing sales, Apple must show that but for the infringement there is a reasonable probability that it would have made sales that Samsung made of the infringing products.  Apple must show the share of Samsung's sales that it would have made if the infringing products had not been on the market.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

**Authorities**

No Allocation Required Based on Customer Demand:  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("Medtronic's  reliance on *Ferguson* fares no better. *Ferguson* dealt with lost profits under the 'entire market value' rule . . . In the present case, Medtronic challenges the lost-profits award for [the infringing products] under the *Panduit* factors, not under the 'entire market value' rule."); Apple Inc. v. Samsung Elecs. Co., Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1157, at 10 (N.D. Cal., June 30, 2012) ("DuPuy made it very clear that, while evidence of demand for the patented feature "goes to the availability of acceptable noninfringing substitutes under the second Panduit factor," under the first *Panduit* factor, the patentee need not show demand for a particular feature to establish demand for a patented product.").

Other:  *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating and remanding lost profits award for entire value of a device containing a first component embodying a first patent, found infringed, as well as a second component embodying a second patent, found not infringed, where profits could fairly be allocated to customer demand for second component); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("courts have given patentees significant latitude to prove and recover lost profits for a wide variety of foreseeable economic effects of the infringement"); *State Industries Inc v. Mor-Flo Indus.*, 883 F.3d 1573, 1578-79 (Fed. Cir. 1983).

**Samsung's Objection to Apple's Proposed Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages.  The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury.  *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury).  The instructions are already over 200 pages and splitting utility and design patent damages instructions will only lengthen them.  Moreover, Apple substantially diverged from the N.D. Cal. Model Patent Jury Instruction.

1    Specifically, it deleted the final paragraph of that Model, which states that "You must allocate the lost profits based upon the customer demand for the patented feature of the infringing [product]

2    [method]. That is, you must determine which profits derive from the patented invention that [alleged infringer] sells, and not from other features of the infringing [product] [method]."  Apple

3    has no authority for such a change.  This unjustified departure from the model without precedential authority is improper.  *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e

4    repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.")

5    (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations

6    upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the model jury instructions when

7    applicable.").  Contrary to Apple's interpretation, DePuy Spine confirmed the requirement that a patentee show demand for the patented feature.  DePuy states that demand for the patented

8    feature "goes to the availability of acceptable noninfringing substitutes under the second Panduit factor." 567 F.3d at 1131.  Accordingly, in accordance with the model instruction, Apple must

9    show that it has properly allocated "lost profits based upon the customer demand for the patented feature or design of the allegedly infringing products."  In addition, Apple employs prejudicial

10   language that assumes Samsung has infringed its patents, such as "Samsung's infringing products" and "Samsung's sales of infringing products."  This language presumes the validity of

11   Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to Samsung.  Finally, Apple's instruction fails to take into account that there are several separate and

12   independent individual defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Samsung's Proposed Instruction**

2    In this case, Apple seeks to recover lost profits for some of Samsung's sales of certain products.
     Samsung does not seek to recover lost profits for Apple's sales of allegedly infringing products.

3

4    To recover lost profits for infringing sales, Apple must show that, but for the infringement, there
     is a reasonable probability that it would have made sales that Samsung Electronics Company,
     Samsung Electronics America and Samsung Telecommunications America made of each

5    allegedly infringing product.  Apple must show the share of Samsung's sales of each product that
     it would have made if the allegedly infringing product had not been on the market.

6

7    You must allocate the lost profits based upon the customer demand for the patented feature or
     design of each of the allegedly infringing products.  That is, you must determine which profits
     derive from the patented invention or design that Samsung Electronics Company, Samsung

8    Electronics America and Samsung Telecommunications America allegedly sells, and not from
     other features of these allegedly infringing products.

9

     **Source**
10

11   N.D. Cal. Model Patent Jury Instr. B.5.2 (modified).

12   **Apple's Objection to Samsung's Instruction**

13   The last paragraph of Samsung's instruction is not a proper statement of the law, particularly
     where, as here, the parties and the parties' experts are applying the *Panduit* factors to determine

14   Apple's lost profits.  The last sentence of the instruction more properly addresses concerns arising
     where *Panduit* is not being applied or when the "entire market value" rule is being separately

15   invoked.  The language derives from *Ferguson Beauregard/Logic Controls, Div. of Dover Res.,
     Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating and remanding lost

16   profits award for entire value of a device containing a first component embodying a first patent,
     found infringed, as well as a second component embodying a second patent, found not infringed,

17   where profits could fairly be allocated to customer demand for second component).  The Federal
     Circuit has since held that this rule does not apply where, as here, lost profits are evaluated under

18   the *Panduit* factors.  *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314,
     1331 (Fed. Cir. 2009) ("Medtronic's  reliance on *Ferguson* fares no better.  *Ferguson* dealt with

19   lost profits under the 'entire market value' rule . . . In the present case, Medtronic challenges the
     lost-profits award for [the infringing products] under the *Panduit* factors, not under the 'entire

20   market value' rule.").  The distinction is important.  *Panduit* separately addresses the need to
     tailor a lost profit award to the specifics of the claimed technology through a robust evaluation of

21   what non-infringing alternatives were available, when they were available and how they would
     affect the market.  This approach inherently reallocates sales in light of the availability of non-

22   infringing technology and thus accounts for consumer demand for patented as compared to the
     non-patented features.  This is consistent with and required by the Federal Circuit's decision in

23   *DePuy Spine*, which as the Court already recognized, focuses initially on the patented product and
     not on the specific patented features.  (Dkt. No. 1157) ("DuPuy made it very clear that, while

24   evidence of demand for the patented feature "goes to the availability of acceptable noninfringing
     substitutes under the second Panduit factor," under the first *Panduit* factor, the patentee need not

25   show demand for a particular feature to establish demand for a patented product.").  If used as a
     whole, Samsung's proposed instructions would suggest that the jury reevaluate and reallocate

26   based on the demand for the technology at least three times, in connection with this instruction, in
     the first factor of *Panduit* and finally when evaluating non-infringing alternatives.  In comparison,

27   Apple's corresponding instructions are an accurate statement of the law of lost profits based on
     *Panduit, DePuy Spine, Grain Processing* and the cases that follow them.  Finally, if this

28   instruction is used, Samsung's repeated use of the phrase "of each infringing product" should be

1   stricken as confusing and in error.  The language "each allegedly infringing product" is not in the
    Northern District's model instruction, nor in any other model instruction, and would purportedly
2   require Apple to show a specific allocation for each product.  As such, Samsung seeks to exclude
    all other efforts to allocate, such as the use of the market share that Samsung and competitors
3   enjoy at each carrier or in the market more generally, when accounting for demand and
    competing products.  The Federal Circuit acknowledged the appropriate use of market share for
4   this purpose in *Mor-Flo* and has separately emphasized the flexibility required due to the inherent
    imprecision that results from reconstructing past events.  *See Grain Processing Corp. v. American
5   Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("courts have given patentees
    significant latitude to prove and recover lost profits for a wide variety of foreseeable economic
6   effects of the infringement"); *State Industries Inc v. Mor-Flo Indus.*, 883 F.3d 1573, 1578-79
    (Fed. Cir. 1983).  No case has stated the additional requirement that Samsung seeks to impose and
7   the language "for each allegedly infringing product" should be stricken.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 26**
**UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

**Apple's Proposed Instruction**

Apple is entitled to lost profits if it proves all of the following:

(1)   that there was a demand for Apple's patented products;

(2)   that there were no commercially acceptable, non-infringing substitutes, or, if there were, the number of the sales made by Samsung that Apple would have made despite the availability of other non-infringing substitutes. An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute. To be commercially acceptable, an alternative must have had the advantages of the patented invention that were important to people who purchased an accused Samsung product. If you find that Samsung's proposed alternative would not be available or would not be commercially acceptable for some or all of the period in which Samsung infringed, you should determine whether Apple lost sales and profits during this period.;

(3)   that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung and for which Apple seeks an award of lost profits; and

(4)   the amount of profit that Apple would have made if Samsung had not infringed.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3; Federal Circuit Bar Association Model Patent Jury Instr. B.6.2.

**Authorities**

General: *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); *Gargoyles, Inc. v. U.S.*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery and Pro Line*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir 1978); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.* , 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he Panduit test is an acceptable, though not an exclusive, test for determining 'but for' causation"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) ("All that the first [ *Panduit* ] factor states, and thus requires, is demand for the patented product…. [T]he first Panduit factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'"); *Aro Mfg. Co. v. Convertible Top Replacement Co. Inc..*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Cent. Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578 (Fed. Cir. 1992) (affirming defendant failed to establish a "commercially acceptable" noninfringing alternative); *Conceptus, Inc. v. Hologic,*

*Inc.*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010) (finding defendant's "capacity to 'implement' noninfringing alternatives during the period of alleged infringement" relevant to whether non-infringing alternatives were available).

<u>Non-Infringing Substitutes Must Be Commercially Acceptable:</u>  *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device.");. *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) ("A product on the market which lacks the advantages of the patented product can hardly be termed a substitute acceptable to the customer who wants those advantages. *Id. See also Panduit*, 575 F.2d at 1162, 197 USPQ at 734. Accordingly, if purchasers are motivated to purchase because of particular features available only from the patented product, products without such features -- even if otherwise competing in the marketplace -- would not be acceptable noninfringing substitutes."); *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp*., 926 F.2d 1161, 1166 (Fed. Cir. 1991) ("If purchasers are motivated to purchase because of particular features of a product available only from the patent owner and infringers, products without such features would obviously not be acceptable noninfringing substitutes. *TWM Corp*., 789 F.2d at 901-02, 229 U.S.P.Q. at 529. On the other hand, if the realities of the market are that others would likely have captured sales made by the infringer, despite a difference in the products, it follows that the 'but for' test is not met.."); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he *Panduit* test is an acceptable, though not an exclusive, test for determining 'but for' causation."); *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999) (a non-infringing replacement product is not considered a substitute unless it is "acceptable to all purchasers of the infringing product").

<u>Proposed Alternative Not Available for Some Portion of Infringing Period:</u>  *Grain Processing*, 185 F.3d at 1349 ("When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. *Cf. Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. *Cf. id*. Mere speculation or conclusory assertions will not suffice to overcome the inference.").

**Samsung's Objection to Apple's Proposed Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). The instructions are already over 200 pages and splitting utility and design patent damages instructions will only lengthen them. Moreover, Apple has substantially diverged from the N.D. Cal. Model Patent Jury Instruction. Specifically, Apple changed most of the text of the second factor to consider. *See* N.D. Cal. Model Patent Jury Instr. 5.3(2) ("An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available. Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether [alleged infringer] had to design or invent around the patented technology to develop an alleged substitute"). This unjustified departure from the model without precedential authority is improper. *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly

1  well advised to use [the model instructions] rather than impose variations upon it.")) (internal

2  quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012)
   ("It is axiomatic that "trial judges should use the model jury instructions when applicable.").  In

3  addition, Apple's proposed instruction contains the following sentence:  "To be commercially
   acceptable, an alternative must have had the advantages of the patented invention that were

4  important to people who purchased an accused product."  This is unsupported by law and would
   constitute reversible error.  Finally, Apple's instruction fails to take into account that there are

5  several separate and independent individual defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple is entitled to lost profits if it proves all of the following:

(1)   that there was a demand for the patented inventions and designs [alternate: that there was demand for the patented products];

(2)   that there were no non-infringing substitutes for each of the allegedly infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

(3)   that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

(4)   the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America had not allegedly infringed.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3 (modified).

**Apple's Objection to Samsung's Instruction**

The parties' separate proposed instructions on factors to consider for lost profit damages differ in four ways: (1) Samsung's first indented bullet refers to the "patented inventions and designs" rather than the "patented product," which is a violation of *DePuy Spine*; (2) Samsung's instruction implies that *Panduit* is an exclusive test for lost profit recovery when the Federal Circuit says it is not; (3) Apple's instruction addresses the availability and acceptability of a non-infringing alternative in a manner more consistent with Federal Circuit law; (4) Samsung inserts the word "allegedly" into the language of the model instruction in its proposed instruction, which improperly emphasizes Samsung's position.  As to the first issue, the Federal Circuit has made clear that the first factor of *Panduit* focuses on demand for the patented product, not the specific inventions and designs claimed.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).  *DePuy Spine* holds that *Panduit* "does not require any allocation of consumer demand"; it is sufficient to show demand "for a product that is covered by the patent in suit."  *Id.* ("All that the first [ *Panduit* ] factor states, and thus requires, is demand for the patented product.")  The Court already resolved this as part of a *Daubert* ruling in the case.  Second, the Federal Circuit has made clear that "[T]he *Panduit* test is an acceptable, though not an exclusive, test for determining 'but for' causation." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).  Apple's corresponding instruction is an accurate statement of the law of lost profits and captures both of these elements.  Third, Apple's instructions includes the requirement that non-infringing alternatives be commercially acceptable.  That is required.  *See Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999) (a

non-infringing replacement product is not considered a substitute unless it is "acceptable to all purchasers of the infringing product"); *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device."). Samsung's proposed instruction lacks a discussion of whether the substitute is acceptable and who bears the burden of proving this when the alternative is not immediately available when infringement began. *See Grain Processing Corp.*, 185 F.3d at 1349. Fourth, Samsung's proposed instruction adds the word "allegedly" to the fourth factor. This is an improper and unnecessary modification to the Northern District's model instruction. The jury will only have reached this issue because it has found that Samsung has infringed and the Court's earlier instruction, introducing damages, makes clear that the Court is taking no position on damages by providing an instruction.

1

## PROPOSED FINAL JURY INSTRUCTION NO. 28
## UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT

2

### Apple's Proposed Instruction

3

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective utility patents.

4

5

If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits damages.

6

7

Samsung does not make a claim for lost profits.  Samsung should be awarded a reasonable royalty for any infringing Apple sales.

8

### Source

9

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6.

10

### Authorities

11

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Lucent Tech's, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

12

13

14

15

16

### Samsung's Objection to Apple's Proposed Instruction

17

18

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages.  That is both inefficient and likely only to confuse the jury.  A confusing or misleading jury instruction is improper.  *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury).  The instructions are already over 200 pages and splitting utility and design patent damages instructions will only lengthen them.  In addition, Apple has "adapted" this instruction from the cited Model Patent Jury Instructions, but this "adaptation" seems to consist of adding biased language by referring to "*all* infringing Samsung sales" but only to "*any* infringing Apple sales."  (emphasis added.)  Moreover, Apple's instruction is obviously skewed in favor of finding damages for Apple, with Samsung as an afterthought.  "In drafting [civil jury] instructions, a common vice to be avoided is the phrasing of instructions in an argumentative fashion favorable to the side submitting them.  Instructions must be objective, not subjective.  It is the court, not counsel, who announces them.  The judge is the only non-partisan lawyer in the courtroom, from whom the jury may properly expect a dispassionate and unslanted statement of the pertinent law."  1 *Fed. Jury Prac. & Instr.* § 7:2 (6th ed.); *see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias*, 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).  Samsung's instruction is also a correct statement of the law.  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").  Finally, Apple's

19

20

21

22

23

24

25

26

27

28

1  instruction fails to take into account that there are several separate and independent individual
2  defendants.

1

**Samsung's Proposed Instruction**

2

Both Samsung and Apple seek an award of a reasonable royalty for the alleged infringement of their respective patents.

3

4

If the holder of a patent does not seek lost profits, or has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the sales alleged to infringe the patent, then the patent holder should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

5

6

A reasonable royalty must be limited to compensation for the economic harm caused by infringement of the claimed invention.

7

**Source**

8

9

N.D. Cal. Model Patent Jury Instr. B.5.6 (modified); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) (citing 35 U.S.C. 284); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").

10

11

12

13

**Apple's Objection to Samsung's Instruction**

14

Apple objects to the following sentence in Samsung's proposed instruction: "A reasonable royalty must be limited to compensation for the economic harm caused by infringement of the claimed invention." This language is not in the Northern District of California's Model Patent Jury Instructions, and Samsung offers no reason to include it. Samsung also adds the word "alleged" before "infringement" in the first sentence of this proposed instruction. That too is not in the model and it makes no sense to add. The jury will only turn to damages if it finds infringement. The word "alleged" is out of place. Samsung also adds the word to the second paragraph and it is objectionable there too for the same reasons.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 29**
**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

**Apple's Proposed Instruction**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.7.

**Authorities**

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Lucent Tech's, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

**Samsung's Objection to Apple's Proposed Instruction**

Apple has, without any justification in its cited authorities or precedent in the model instructions, split the instructions for utility and design damages.  That is both inefficient and likely only to confuse the jury.  A confusing or misleading jury instruction is improper.  *Gracie v. Gracie*,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury).  The instructions are already over 200 pages and splitting utility and design patent damages instructions will only lengthen them.

**Samsung's Proposed Instruction**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place prior to the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $10,000 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for Samsung and/or Apple.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.7 (modified).

**Apple's Objection to Samsung's Instruction**

The first paragraph of the Northern District Model Instruction 5.7 refers to a negotiation "taking place at the time when the infringing activity first began." Samsung has altered that language to refer to "the time when the infringing activity first began." There is no reason to deviate from the model instructions in this fashion. There are other problems too with Samsung's proposed instruction. For one thing, there is no reason to include the paragraph from the Northern District

1   model on a lump sum royalty.  In this case, neither side seeks a royalty based on a lump sum.
    Instructing the jury on this issue would only lead to a lengthier than necessary and confusing
2   instruction.  Further, Samsung's proposed instruction misstates the law of the entire market value
    rule with the inclusion of the following passage:  "Even if the patented invention is not the reason
3   for demand, the value of the whole product could be used if the value of the invention cannot be
    separated out from the value of the product. In such a case, however, the rate from the
4   hypothetical negotiation would be lower because it is being applied to the value of the whole
    product and the patented invention is not the reason customers purchase the whole product."
5   While this passage comes from the Northern District model, under current Federal Circuit
    precedent, juries cannot apply the entire market value to accused products for minor patent
6   improvements simply by asserting a low enough royalty rate.  *Uniloc USA, Inc. v. Microsoft
    Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011).  Instead, for the entire market value rule to apply,
7   the patentee must prove that the patent-related feature is the basis for customer demand.  *Lucent
    Tech's, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).  Apple's corresponding
8   instruction—which strips out this passage—contains an accurate statement of the law regarding
    the entire market value rule.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 29.1
DAMAGES—REASONABLE ROYALTY—RELEVANT FACTORS**

**Samsung's Proposed Instruction**

In determining the reasonable royalty for Samsung and/or Apple, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)  The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)  The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)  The duration of the patent and the term of the license.

(8)  The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)  The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)  The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)  The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)  The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)  The opinion and testimony of qualified experts.

(15)  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**Source**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.7 (modified).

**<u>Apple's Objection to Samsung's Instruction</u>**

There is no reason to include this lengthy recitation of the *Georgia-Pacific* factors in the jury instructions.  The Northern District model does not contain this instruction, and its length and jargon run the risk of jury confusion.

**PROPOSED FINAL JURY INSTRUCTION NO. 30
UTILITY PATENT DAMAGES— DAMAGES FOR METHOD CLAIMS MUST BE
CORRELATED TO USE**

### Apple's Proposed Instruction

In determining damages for infringement of a patent that claims only a method, the amount of any reasonable royalty must be correlated to the extent the infringing method is actually used by consumers who possess the devices that are capable of being operated in an infringing manner.

### Authorities

*Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334-35 (Fed. Cir. 2009) (holding "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers" and vacating damages award for method patent where patent holder failed to prove that "the extent to which the infringing method has been used supports the lump-sum damages award"); *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (one fact to be considered in determining a reasonable royalty is "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.").

### Samsung's Objection to Apple's Proposed Instruction

Apple's proposed instruction is not supported by any model.  Instead, Apple has proposed an atypical instruction designed to advance Apple's case.  Samsung's corresponding proposed instruction, on the other hand, is based on N.D. Cal. Model Patent Jury Instr. B.5.6.   This is a more general instruction, and more appropriate and generally accepted.  It says in essence that reasonable royalties must be correlated with the economic harm caused by the infringement, as explained in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").  Apple's self-serving and unfounded instruction is improper and should be rejected.

**PROPOSED FINAL JURY INSTRUCTION NO. 31**
**UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

**Apple's Proposed Instruction**

Damages that Apple may be awarded by you commence on the date that Samsung has both infringed and been notified of the patent or patents it infringed.

If you find that Apple sells products that include its claimed inventions but has not marked those products with the patent numbers, you must determine the date that Samsung received actual written notice of the patents and the specific products alleged to infringe.  While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung with such notice for the '381 and '915 patents no later than April 15, 2011, and for the '163 patent no later than June 16, 2011.

On the other hand, if you find that Apple does not sell products covered by the patents, then damages begin without the requirement for actual notice under the following circumstances:[6]

> For each infringed patent that was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> For each infringed patent that was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

With respect to Samsung's '460 patent, the damages you may award Samsung for any infringement should be calculated as of August 18, 2009 because Samsung is asserting only method claims from that patent.

For the other asserted Samsung patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

If you find that Samsung sells products that include its claimed inventions from these patents but has not marked those products with the patent numbers, you must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe.  While you may identify an earlier date by which Apple had notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011.

On the other hand, if you find that Samsung does not sell products covered by these patents, then damages begin without the requirement for actual notice under the following circumstances:

> For each infringed patent that was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> For each infringed patent that was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

---

[6] Apple reserves its right to argue after the close of evidence that there is no dispute on the question of whether Apple's sells products that embody its claimed inventions.  In the event there is no dispute on this issue, the portion of this instruction relating to the date of commencement for situations where Apple does *not* practice its patents would not be necessary.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8.

**Authorities**

35 U.S.C. § 287; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to give rise to actual notice); *id.* at 1364 ("[T]he court's instruction to the jury should have more clearly articulated that, in the context of this ongoing relationship between the parties, knowledge of a specific infringing device is not a legal prerequisite to such a finding."); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").


**<u>Samsung's Objection to Apple's Proposed Instruction</u>**

Apple's proposed instruction is inappropriate because it varies from the models upon which Apple purports to rely by inserting additional argumentative and prejudicial language. "In drafting [civil jury] instructions, a common vice to be avoided is the phrasing of instructions in an argumentative fashion favorable to the side submitting them. Instructions must be objective, not subjective. It is the court, not counsel, who announces them. The judge is the only non-partisan lawyer in the courtroom, from whom the jury may properly expect a dispassionate and unslanted statement of the pertinent law."  1 Fed. Jury Prac. & Instr. § 7:2 (6th ed*.); see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias,* 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).  Moreover, the proposed instruction does not identify each defendant, but groups them together.  Notice must be evaluated separately for each defendant.  Finally, Samsung is not mentioned in the introduction, but only as an afterthought.

**Samsung's Proposed Instruction**

Damages commence on the date that the alleged infringer has both infringed and been notified of the alleged infringement of the patent.

If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe.  Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device.  The filing of the complaint and counterclaims in this case qualified as actual notice, so the damages period begins no later than the dates the complaint and counterclaims were filed. The patent holder has the burden of establishing that it is more probable than not the alleged infringer received notice of infringement before the complaint and counterclaims were filed.

If you find that the patent holder does not sell a product covered by the patent, damages begin without the requirement for actual notice. If you find that the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the patent was granted after the infringing activity began, damages should be calculated as of the date the patent issued.

While you may identify an earlier date by which Apple had actual notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011.  With respect to Samsung's U.S. Patent No. 7,577,460, damages should be calculated as of August 18, 2009, because Samsung is asserting only method claims from that patent.

While you may identify an earlier date by which Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America had actual notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381, '915 and D'677 patents by no later than April 15, 2011, and for the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Source**

N.D. Cal. Model Patent Instr. B.5.8 (modified); Federal Circuit Bar Association Model Patent Jury Instr. B.6.8 (modified); *Mformation Techs., Inc. v. Research In Motion Ltd.*, 2011 WL 6357804 (N.D.Cal. Dec. 19, 2011) (Ware C.J.) ("The marking requirements of § 287(a) do not apply to patents containing only method claims. *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir.1983).").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction contains numerous misstatements of law.  First, the instruction states that "If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe.  Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device."  This is not in the Northern District's model instruction upon which both parties purport to rely.  Further, Federal Circuit law makes clear that actual notice does not require actual notice of all the products.  *See Funai Elec. Co. Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").  This is particularly true where, as here, there is an ongoing relationship between the parties. *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364 (Fed. Cir. 2008) (" . . . the [T]he court's instruction

1    to the jury should have more clearly articulated that, in the context of this ongoing relationship
     between the parties, knowledge of a specific infringing device is not a legal prerequisite to such a
2    finding.")  Additionally, it is established that notice of the specific patent number is not required
     to constitute actual notice.  *See Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979
3    (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where
     plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the
4    defendant was infringing that patent).  Apple's corresponding instruction is an accurate statement
     of the law of actual notice and reflects the accepted Northern District model instruction on this
5    issue.  Samsung commits a different error when it inserts the word "alleged" before the word
     "infringement" in the first paragraph of this objection.  That is not in the model and it is
6    groundless.  The jury will only consider damages if it finds infringement – not "alleged"
     infringement.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DESIGN PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 32
## DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS

**Apple's Proposed Instruction**

3

4

5

6

I will now instruct you about how to decide Apple's design patent infringement claims.  Before you decide whether Samsung has infringed each patent or whether it is invalid, you must understand the patent.  Each Apple design patent has one claim that covers the design "as shown and described."  Each design patent then uses multiple drawings to illustrate the claimed design.  The drawings collectively define the design claimed by each patent.  The scope of the claim encompasses the design's visual appearance as a whole.  It does not cover a general design concept, and is not limited to isolated features of the drawings.

7

8

9

When viewing the drawings, keep in mind that all matter depicted in solid lines contributes to the overall appearance of the design.  In addition, you should view certain features in the drawings of the Apple design patents in this way:

10

- **D'677 Patent**

11

12

13

The D'677 Patent claims the ornamental design of an electronic device as shown in Figures 1-8.  The broken lines in the D'677 Patent constitute unclaimed subject matter.  The use of "solid black surface shading" on the D'677 Patent represents the color black.  The use of oblique line shading on the D'677 Patent is used to show a transparent, translucent, or highly polished or reflective surface.

14

15

- **D'087 Patent**

16

17

18

The D'087 Patent claims the ornamental design of an electronic device as shown in Figures 1-48.  The broken lines in the D'087 Patent constitute unclaimed subject matter.  Thus, the D'087 Patent claims the front face, a "bezel encircling the front face of the patented design [that] extends from the front of the phone to its sides," and a flat contour of the front face, but does not claim the rest of the article of manufacture.

19

20

- **D'889 Patent**

21

22

23

24

The D'889 Patent claims the ornamental design of an electronic device as shown in Figures 1-9.  The broken lines depicting the human figure in Figure 9 do not form a part of the claimed design.  The other broken lines in the other figures are part of the claimed design.  The D'889 also includes oblique line shading on several of the figures.  The oblique line shading in Figures 1-3 and Figure 9 depicts a transparent, translucent, or highly polished or reflective surface from the top perspective view of the claimed design, the top view of the claimed design, and the bottom perspective view of the claimed design.

25

26

- **D'305 Patent**

27

The D'305 Patent claims the ornamental design for a graphical user interface for a display screen or portion thereof, as shown in Figures 1-2.  The broken line showing of a display screen in both views forms no part of the claimed design.

28

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 5, 7.2.

**Authorities**

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.,* 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448 (Fed. Cir. 1998) *(en banc); Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995) *(en banc); see also* MPEP § 1503.02; *Unique Indus. v. 965207 Alta. Ltd.,* 722 F. Supp. 2d 1, 10 n.2 (D.D.C. 2009) (broken lines may be considered part of the claimed design, "if it is not clear that the inventor intended to exclude those portions from the claim"); *Crocs, Inc. v. ITC,* 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("Design patents are typically claimed as shown in drawings . . ."); MPEP § 1503.01 ("[A]s a rule, the illustration in the drawing views is its own best description."); *Egyptian Goddess v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008) ("[A] design is better represented by an illustration 'than it could be by any description.'") (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)).

## Samsung's Objection to Apple's Proposed Instruction

Samsung objects to Apple's proposed final instruction No. 32 as including inaccurate and incomplete claim constructions. Apple's proposed constructions do not indicate which elements of the patented designs are unprotected as functional, not ornamental, aspects of the designs. Samsung also objects to the proposed instruction as including a statement that the Court will instruct the jury "how to decide" Apple's design patent infringement claims, which could result in juror confusion and/or prejudice to Samsung. Samsung further objects to the proposed instruction as misleading in that it fails to separately identify the three legal entities accused of infringing Apple's design patents.

**Samsung's Proposed Instruction**

Before you decide whether Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America have infringed one or more of the asserted design patents, or whether the design patents are invalid, you will have to understand the design patent claims.

Unlike utility patents, a design patent can only have one claim.  That claim covers all the figures in the patent.  It is permissible to illustrate more than one embodiment of a design in a single design patent application.  Multiple embodiments may be presented only if they are directed to substantially the same design and are not patentably distinct from one another.

**Source**

AIPLA Model Jury Instruction 2; 37 C.F.R. § 1.153; *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-12 (Fed. Cir. 2005) (en banc); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1285-86 (Fed. Cir. 2002); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 374, 116 S.Ct. 1384, 1388 (1996).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction that "[m]ultiple embodiments may be presented only if they are directed to substantially the same design and are not patentably distinct from one another" is unnecessary and misleading.  There is no claim in this case that the asserted designs are invalid based on "multiple embodiments."  Given the absence of such a defense, there is no reason to introduce complexity and possible confusion by the undefined concept of patentably indistinct designs.  Apple's corresponding instruction accurately and concisely summarizes the issues relating to interpretation of the design patents and accurately reflects the law.

1

**Samsung's Proposed Instruction**[7]

2

It is my job as a judge to interpret for you what is claimed by the patents.  You must accept my
interpretations as correct.  My interpretations should not be taken as an indication that I have an
opinion one way or another regarding the issues of infringement and invalidity.  The decisions
regarding infringement and invalidity are yours to make.

3

4

[READ COURT'S CLAIM CONSTRUCTIONS]

5

**Source**

6

AIPLA Model Jury Instruction 2.1; 37 C.F.R. § 1.152; *Phillips v. AWH Corp.*, 415 F.3d 1303
(Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995)
(en banc) *aff'd*, 517 U.S. 370 (1996); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-
80 (Fed. Cir. 2008) (en banc); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir.
1995).

7

8

9

10

**Apple's Objection to Samsung's Instruction**

11

Samsung's proposed instruction is unnecessary in light of the Federal Circuit's holding in
*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008), that "a design is better
represented by an illustration 'than it could be by any description'" (quoting *Dobson v. Dornan*,
118 U.S. 10, 14 (1886)).  Apple has set forth its reasons why a separate verbal claim construction
of the design patents-in-suit is neither needed nor appropriate.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

[7] Samsung reserves the right to modify this instruction once the Court issues an order
regarding claim construction.

**PROPOSED FINAL JURY INSTRUCTION NO. 34**
**DESIGN PATENTS—DIRECT INFRINGEMENT**

**Apple's Proposed Instruction**

To determine direct infringement of a design patent, you must compare the overall appearances of the accused design and the claimed design.

If you find it more likely than not that the overall appearance of an accused Samsung design is substantially the same as the overall appearance of the claimed Apple design, and that the accused design was made, used, sold, offered for sale, or imported within the United States, you must find that Samsung infringed the patent.

You should consider any perceived similarities or differences between the patented and accused designs. Minor differences should not prevent a finding of infringement. You must also familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement.

You may find the following guidelines helpful to your analysis:

1. The use of a mark or a label on an otherwise infringing design will not avoid infringement.

2. When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

3. If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same.

4. If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

5. You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same. For the D'087 patent, although the patent comprises six embodiments; you must find infringement if the overall appearance of an accused design and any of the claimed embodiments is substantially the same.

Whether Samsung knew its products infringed or even knew of Apple design patents does not matter in determining infringement.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3.

1  **Authorities**

2  *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Denying Motion for
Preliminary Injunction, Dkt. No. 452, at 10-11 (N.D. Cal., Dec. 2, 2011) ("Under the ordinary

3  observer test, an accused device infringes upon a design patent if in the eye of an ordinary
observer, giving such attention as a purchaser usually gives, the design of the accused device and

4  the patented design are substantially the same.  The designs are substantially the same, if the
resemblance [between the accused device's design and the patented design] is such as to deceive

5  [an ordinary observer], inducing him to purchase one supposing it to be the other.") (internal
quotations omitted) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir.

6  2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)); *id.* at 11 ("This 'ordinary
observer' test applies to the infringement, anticipation, and obviousness inquiries in the design

7  patent context.") (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40
(Fed. Cir. 2009)); *id.* ("In the infringement analysis, the focus should be on "the overall design"

8  of the patent. For the anticipation and obviousness analysis, the focus should likewise be on "the
overall design" of the patent as compared to the prior art.") (citing *Int'l Seaway Trading Corp. v.*

9  *Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed. Cir. 2009)); *id.* at 11 n.6 ("Defendants argued at
oral argument that actual confusion by consumers is required to establish infringement. However,

10  neither *Egyptian Goddess*, nor its progeny appear to create such a requirement."); *id.*. at 13 (a
design is functional only if it is "dictated by the functionality of the item"); *id.* at 25 ("Typically,

11  the use of a mark will not avoid infringement of an otherwise infringing product.") (citing *L.A.
Gear*, 988 F .2d at 1126 ("Design patent infringement . . . does not . . , allow avoidance of

12  infringement by labeling"); 35 U.S.C. § 289 (no requirement of deception); *Apple Inc. v. Samsung
Electronics Co.*, No. 11-CV-01846-LHK, Order Denying Samsung's Motion to Stay, Dkt.

13  No. 1171, at 6 (N.D. Cal., July 2, 2012) ("the 035 Prototype is not a relevant comparison to
establish infringement of the D'889 patent"); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1304 (Fed. Cir.

14  2010) ("The proper comparison requires a side-by-side view of the drawings of the [asserted]
design and the accused products."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126

15  (Fed. Cir. 1993) ("Design patent infringement *relates solely to the patented design, and does not
require proof of unfair competition in the marketplace . . .*") (emphasis added); *id.* at 1123 ("If the

16  particular design is essential to the use of the article, it cannot be the subject of a design patent.");
*Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815, 821 (Fed. Cir. 1992) ("[n]othing in *Gorham*

17  suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely
*exclusively or primarily on a visual comparison* of the patented design, as well as the device that

18  embodies the design, and the accused device's design.") (emphases added); *Sun Hill Indus., Inc.
v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) (holding that the trial court

19  recognized that "the patent never mentions color or size or material," "the court erroneously
relied on these unclaimed features of Sun Hill's GIANT STUFF-A-PUMPKIN in finding

20  infringement") (citation omitted); *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369 (Fed.
Cir. 2008) ("In contrast, here it is undisputed that GlowProducts sold the products directly to

21  customers in the United States. Since the American customers were in the United States when
they contracted for the accused cubes, and the products were delivered directly to the United

22  States, under *North American Philips* and *MEMC* there is substantial evidence to support the
jury's conclusion that GlowProducts sold the accused cubes within the United States."); *id.* at

23  1371 ("GlowProducts bases its argument that these were not sales in the United States on the
grounds that the products were shipped f.o.b., and thus title over the goods were transferred while

24  the goods were still in Canada. Our case law, however, is inconsistent with such a theory, and we
conclude that there is substantial evidence of a sale within the United States for the purposes of

25  § 271."); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he
record shows that Pentalpha intended to sell its deep fryers directly into the United States.

26  Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut
to the deep fryers, and it manufactured the deep fryers with North American electrical fittings.

27  Moreover, the invoices between Pentalpha and the three U.S. companies all identify delivery to
U.S. destinations. In sum, this court does not perceive any fundamental error with the jury

28  instructions in light of the record evidence."); *Transocean Offshore Deepwater Drilling, Inc. v.*

*Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("As with the offer to sell, we hold that a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law. Maersk USA's first argument, that the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*. There, we held that a sale does not only occur at a 'single point where some legally operative act took place.' *Litecubes*, 523 F.3d at 1369-70. We may also consider other factors such as the place of performance. *Id.* at 1371. Maersk USA's argument that Statoil could use the rig outside the U.S. ignores the plain language of the contract, which includes an 'Operating Area' of the U.S. Gulf of Mexico. J.A. 7167. It also ignores the fact that Maersk did in fact deliver the rig to U.S. waters."); *TiVo, Inc.* v. *EchoStar Communications Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008) (permissible to have "expert testifying in detail about a particular device and then stating that the same analysis applies to other allegedly infringing devices that operate similarly, without discussing each type of device in detail"); *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1350 (Fed. Cir. 2010) (court accepted 52 models as representative of all semiconductor packages at issue because expert had offered "specific and substantial evidence" about why all other packages would behave similarly); *Intellectual Sci. & Tech., Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1181 (Fed. Cir. 2009) (analyzing all patents using categories created by the district court and representative products that plaintiffs provided pursuant to district court order); *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("the deception that arises is a result of similarities in the overall design"); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) ("Proper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment."); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677 (Fed. Cir. 2008) (rejecting point of novelty test as it inappropriately "focused on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed design as a whole"); *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both."); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

### Samsung's Objection to Apple's Proposed Instruction

Samsung objects to Apple's proposed final instruction No. 34 as setting forth an inaccurate and improper test for design patent infringement. The proper test is as set forth by the U.S. Supreme Court in *Gorham Co. v. White*, 81 U.S. 511 (1871), in which the Court found the test to be as follows: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Apple, however, selectively extracts just 3 words out of the test — "substantially the same" —and then ignores how binding Supreme Court precedent has defined those words and how the Federal Circuit has interpreted them over the past 140 years. Apple's instruction leaves it up to the jury to decide infringement using a phrase that is undefined and completely untethered from binding law. Indeed, jurors could have a whole range of ideas about what "substantially the same" means that does not rise to the level of deceptive similarity. Apple's proposed instruction is also wrong in its statement that "[m]inor differences should not prevent a finding of infringement." The instruction nowhere states what a "minor difference" is. Under the law, when dealing with Apple's design patents, some of which cover only one surface of a hand-held electronic device in a field crowded with prior art, minor differences very well might be significant to the hypothetical ordinary observer. *See Egyptian Goddess v. Swisa, Inc.*,

1    543 F.3d 665, 678 (Fed. Cir. 2008)("Where there are many examples of similar prior art designs,
     as in a case such as *Whitman Saddle* [*Co*., 148 U.S. 674 (1893)], differences between the claimed
2    and accused designs that might not be noticeable in the abstract can become significant to the
     hypothetical ordinary observer who is conversant with the prior art.").

3
     Apple's instruction also misleadingly states that "[t]he use of a mark or a label on an otherwise
4    infringing design will not avoid infringement," implying that logos should be ignored for any
     purpose. This Court has noted that "a logo's placement can be considered when logo placement
5    and appearance are part of the style claimed in the patented designs." Dkt No. 452 at 25 (citing
     *Revision Military, Inc. v. Balboa Mfg. Co.*, 2011 WL 3875624, at *16 n.16 (D. Vt. Aug. 31,
6    2011). The Court went on to say that "additional writing on the front face of the Samsung phone
     alters the minimalist style conveyed in the overall design disclosed by the D'677 and D'087
7    patents." *Id.* at 26. An appropriate instruction in this case needs to take into account that the
     presence of logos on the Samsung phones can do more in the eye of the ordinary observer than
8    just communicate source. Regardless of what the words say, they are an integral part of the
     surface ornamentation on a surface with very limited real estate.  Additionally, Samsung objects
9    to Apple's proposed instruction because it improperly fails to distinguish between the three
     Samsung entities accused of infringing Apple's design patents, and because it directs that the jury
10   "must find" infringement if it finds substantial similarity between the claimed design and the
     accused product without providing any guidance as to the meaning of these terms.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Questions _____ through _____ of the Verdict Form read as follows:  [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether Apple has proven that one or more of the Samsung entities has infringed the D'677, D'087, D'305 and/or D'889 design patents.

Patent law gives the owner of a valid design patent the right to exclude others from applying the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or selling or offering to sell any article of manufacture to which such design or colorable imitation has been applied within the United States during the term of the patent.  Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent.  Here, Apple alleges that the following devices infringe the D'677, D'087, D'305 and D'889 design patents:

| Design Patent(s) | Device(s) Accused of Infringing |
|---|---|
| D'677 | Samsung Galaxy Ace (SHW-M240S); Samsung Infuse 4G (SGH-1997); Samsung Galaxy S i9000 (SHW-M1105); Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize); Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959). |
| D'087 | Samsung Galaxy Ace (SHW-M240S); Samsung Infuse 4G (SGH-1997); Samsung Galaxy S i9000 (SHW-M1105); Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize); Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959). |
| D'305 | Captivate; Continuum; Droid Charge; Epic 4G; Fascinate; Gem; Galaxy S i9000; Galaxy S 4G; Indulge; Infuse 4G; Mesmerize; Showcase; Galaxy S Showcase i500; and Vibrant. |
| D'889 | Galaxy Tab 10.1 |

Each of the Samsung entities deny that any of these devices infringe any Apple design patent. Apple bears the burden of proving by a preponderance of the evidence its allegations that each device infringes each separate patent.  Therefore, you the jury must determine infringement for each patent separately, considering each individual device separately.  You must not consider the patents or devices in groups to determine infringement on that basis.

**Source**

AIPLA Model Patent Jury Instructions 3.0; 35 U.S.C. § 289; *Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1304-06 (Fed. Cir. 2010); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116-17 (Fed. Cir. 1998); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).

1   **Apple's Objection to Samsung's Instruction**

2   Samsung's proposed instruction is unnecessary because an overview of Apple's infringement
    contentions has been more succinctly provided in earlier instructions.  Samsung's proposed
3   instruction is also objectionable because it omits from its list of acts of infringement making,
    using, or importing into the U.S.  Further, its use of the term "any colorable imitation," without
4   any definition or explanation, is likely to be confusing.  In addition, the instruction misstates
    Apple's infringement contentions by omitting the five Galaxy S II phones from the accused
5   product list for the D'677 and D'087 patents, and incorrectly listing the Fascinate, Mesmerize,
    Showcase, and Galaxy Ace as accused products under the D'087 patent.  Samsung has also
6   omitted the Tab 10.1 LTE from the list of products accused under the D'889 patent.  Samsung's
    proposed instruction also adds the factual assertion that "[e]ach of the Samsung entities deny that
7   any of these devices infringe any Apple design patent," and asserts that patents or devices cannot
    be considered in groups for purposes of assessing infringement.  This is wrong.  *See TiVo, Inc.* v.
8   *EchoStar Communications Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008) (permissible to have
    "expert testifying in detail about a particular device and then stating that the same analysis applies
9   to other allegedly infringing devices that operate similarly, without discussing each type of device
    in detail"); *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1350 (Fed. Cir. 2010) (court accepted 52 models
10  as representative of all semiconductor packages at issue because expert had offered "specific and
    substantial evidence" about why all other packages would behave similarly); *Intellectual Sci.* &
11  *Tech., Inc. v. Sony Electronics, Inc.*, 589 F.3d 1179, 1181 (Fed. Cir. 2009) (analyzing all patents
    using categories created by the district court and representative products that plaintiffs provided
12  pursuant to district court order).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 34.1
DESIGN PATENTS—DIRECT INFRINGEMENT**

### Apple's Proposed Instruction

As with utility patents, in deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

1.  Whether a sale occurs within the United States is not determined solely by where the accused products are when legal title over them is transferred.

2.  One example of a sale within the United States is where an accused product is sold to a U.S. entity and shipped into the United States.

### Authorities

35 U.S.C. § 271; *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008) ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States.  Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States."); *id.* at 1371 ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada.  Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271."); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States.  Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American electrical fittings.  Moreover, the invoices between Pentalpha and the three U.S. companies all identify delivery to U.S. destinations.  In sum, this court does not perceive any fundamental error with the jury instructions in light of the record evidence."); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("As with the offer to sell, we hold that a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law.  Maersk USA's first argument, that the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*.  There, we held that a sale does not only occur at a 'single point where some legally operative act took place.'  *Litecubes*, 523 F.3d at 1369-70.  We may also consider other factors such as the place of performance.  *Id.* at 1371.  Maersk USA's argument that Statoil could use the rig outside the U.S. ignores the plain language of the contract, which includes an 'Operating Area' of the U.S. Gulf of Mexico.  J.A. 7167.  It also ignores the fact that Maersk did in fact deliver the rig to U.S. waters.").

### Samsung's Objection to Apple's Proposed Instruction

This instruction is unnecessary because Proposed Final Jury Instruction No. 12 already discusses what is required for direct infringement and what connection to the United States must exist for a finding of infringement.  Subsection 1 of Apple's proposed instruction introduces concepts such as "legal title" that are not explained to the jury and therefore will lead to confusion.  Moreover, this subsection fails to provide information about what other factors are considered in

1  determining whether a sale occurred within the United States.  Subsection 2 of Apple's proposed
instruction is misleading because it ignores the law holding that mere knowledge that a product
2  sold overseas will ultimately be imported into the United States is insufficient to establish
liability for patent infringement.  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*,
3  420 F.3d 1369, 1375, 1377 (Fed. Cir. 2005) ("Mere knowledge that a product sold overseas will
ultimately be imported into the United States is insufficient to establish liability under section
4  271(a)."); *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1206 (D. Nev.
2011) (same); *Pfizer Inc. v. Aceto Corp.*, 853 F.Supp. 104, 105 (S.D. N.Y. 1994) (holding that
5  nothing in the identical "within the United States" language of Section 271(g) "suggests that a
foreign manufacturer, who does not import the product into the United States, may be liable
6  simply because it can foresee that a buyer of its product may ultimately import it into the United
States."); *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142-147 (D.D.C. 2006) (holding that
7  products shipped abroad f.o.b. were not sold in the United States under a United States patent);
*Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, at *51 (N.D.N.Y.
8  Jan. 31, 2007), *aff'd, Cornell University v. Hewlett-Packard Co.*, 2007 WL 2791120 (N.D.N.Y.
Sep 24, 2007)(denying motion for summary judgment of exhaustion where "delivery by Intel of
9  all or some of the PA–8500 and PA–8600 processors in issue to HP could well have occurred
outside of the United States" and characterizing *Minebea* as follows:  "[r]elying upon the fact
10  that delivery of the allegedly infringing product was made FOB a location outside of the United
States and, of critical significance, the product was in fact physically delivered abroad, the court
11  concluded that a foreign sale had occurred, despite the conflicting indicia of a sale within the
United States, and patent exhaustion therefore did not apply.").  If the Court should entertain a
12  Proposed Final Jury Instruction Nos. 12.1 and 34.1, Samsung has submitted an alternate proposal
that is accurate and supported by legal authority.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Under United States law, no infringement occurs when the patented product is made and sold in another country.  The United States patent law applies to infringing activities that occur "within the United States."  Mere knowledge that a product sold overseas will ultimately be imported into the United States is insufficient to establish liability for patent infringement.

**Source**

*Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375 (Fed. Cir. 2005); *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1206 (D. Nev. 2011); *Pfizer Inc. v. Aceto Corp.*, 853 F.Supp. 104, 105 (S.D. N.Y. 1994); *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142-147 (D.D.C. 2006) (holding that products shipped abroad f.o.b. were not sold in the United States under a United States patent); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, at *51 (N.D.N.Y. Jan. 31, 2007), *aff'd, Cornell University v. Hewlett-Packard Co.*, 2007 WL 2791120 (N.D.N.Y. Sep 24, 2007)(denying motion for summary judgment of exhaustion where "delivery by Intel of all or some of the PA–8500 and PA–8600 processors in issue to HP could well have occurred outside of the United States" and characterizing *Minebea* as follows:  "[r]elying upon the fact that delivery of the allegedly infringing product was made FOB a location outside of the United States and, of critical significance, the product was in fact physically delivered abroad, the court concluded that a foreign sale had occurred, despite the conflicting indicia of a sale within the United States, and patent exhaustion therefore did not apply.").

**Apple's Objection to Samsung's Proposed Instruction**

Samsung's proposed instruction is misleading and misstates the law.  Via this instruction, Samsung purportedly seeks to shield SEC's infringing activities from liability because the transfer of legal title of the infringing goods may have occurred overseas and not "within the United States."  But the Federal Circuit has rejected this argument numerous times.  Contrary to the implications in Samsung's instruction, the Federal Circuit has made clear that whether a sale occurs "within the United States" is not determined solely by where the accused products are when legal title over them is transferred.  For instance, in *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008), defendant argued that the infringing sales "were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada."  The Federal Circuit rejected this argument:  "Our case law, however, is inconsistent with [defendant's] theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271."  *Id. See also id.* at 1369 ("In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States.  Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States.").  To that end, the Federal Circuit has held that a sale "does not only occur at a 'single point where some legally operative act took place.'"  *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("As with the offer to sell, we hold that a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law.  Maersk USA's first argument, that the location of negotiation and contracting should control is contrary to our precedent in *Litecubes*.").  *See also, e.g.*, *North American Philips Corp. v. American Vending Sales, Inc*., 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale occurs not only where legal title passes, but also where contracting and performance occur); *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (determining the location of

a sale by considering where the customers were located when they contracted for the accused products and where the products were delivered); *SEB S.A. v. Montgomery Ward & Co*., 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("[T]he record shows that Pentalpha intended to sell its deep fryers directly into the United States. Pentalpha itself affixed the American trademarks of Sunbeam, Montgomery Ward, and Fingerhut to the deep fryers, and it manufactured the deep fryers with North American electrical fittings.  Moreover, the invoices between Pentalpha and the three U.S. companies all identify delivery to U.S. destinations.  In sum, this court does not perceive any fundamental error with the jury instructions in light of the record evidence.").  Samsung relies on *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007) as support, but *Microsoft* concerned the issue of supplying components from the United States under § 271(f), and not whether a sale occurred "within the United States" under of § 271(a).  Indeed, the *Transocean* court cited above considered the *Microsoft* case in reversing summary judgment of non-infringement based on the fact that the lower court incorrectly found that the sale occurred in Norway.  617 F.3d at 1309-10.  *MEMC* likewise does not support Samsung's instruction as the *MEMC* court determined the location of a sale by considering where its "essential activities" took place.  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375-77 (Fed. Cir. 2005).  Indeed, the Federal Circuit repeated its familiar holding that a "'sale' under section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance' may take precedence over the passage of legal title.  *Id*.  *MEMC* is also not like the situation here for, in *MEMC*, the foreign defendant sold its products to a Japanese affiliate, not to an entity in the United States like the Samsung Korean parent SEC does here.  *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1206 (D. Nev. 2011) is distinguishable as the plaintiff failed to provide evidence that the sale was within the United States under § 271.  Here, Apple has provided sufficient evidence for a jury to find infringing sales within the United States.  Finally, *Pfizer Inc. v. Aceto Corp.*, 853 F. Supp. 104, 105 (S.D. N.Y. 1994) is distinguishable as it concerned liability under § 271(g), which is not the subject of this instruction.  Apple's counterpart instruction accurately captures the law.  Samsung's proposed instruction does not and should be rejected.  This is not a case, furthermore, in which we have "[m]ere knowledge that a product sold overseas will ultimately be imported into the United States...."  That "mere" principle is not in play here.  Finally, the other two district court decisions cited by Samsung— *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 142-147 (D.D.C. 2006); and *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 WL 4349135, at *51 (N.D.N.Y. Jan. 31, 2007), *aff'd, Cornell University v. Hewlett-Packard Co.*, 2007 WL 2791120 (N.D.N.Y. Sep 24, 2007)—do not help its cause either.  Both of these cases pre-date the trio of Federal Circuit decisions on which Apple relies.  *See Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369 (Fed. Cir. 2008); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc*., 617 F.3d 1296, 1310 (Fed. Cir. 2010).  On top of that, *Minebea* involved a situation where the foreign defendant did not ship its accused products into the United States.  444 F. Supp. 2d at 142 ("In Minebea's case, however, it appeared at the summary judgment stage - and continues to be the case after trial - that the vast majority of Minebea's motors not only were F.O.B. abroad, but also were in fact delivered abroad.").  Samsung does.  *Cornell* is inapposite for the same reason.  The district court there emphasized that "[t]his case is in some ways similar to the circumstances presented in *Minebea*…, [in which] delivery of the allegedly infringing product was made FOB a location outside of the United States *and, of critical significance, the product was in fact physically delivered abroad*."  2007 WL 4349135, at *51 (emphasis added).  That is not the case here.

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 34.2**
**DESIGN PATENT DIRECT INFRINGEMENT – LIABILITY MUST BE PROVED FOR**
**EACH ENTITY SEPARATELY**

3
4

**Samsung's Proposed Instruction**

5

6

7

8

In this case, Apple asserts that Samsung Electronics America, Samsung Telecommunications America, and Samsung Electronics Company have each directly infringed the D'677, D'087, D'305 and D'889 design patents.  Even if you determine that a particular device infringes one of the patents, you may not find any of the Samsung entities liable for direct infringement unless Apple proves by a preponderance of the evidence that the particular Samsung entity has, in the United States, made, used, offered to sell, or sold the device.  You must determine this liability separately for each Samsung entity and each device.

**Source**

9

10

11

12

13

AIPLA Model Patent Jury Instructions, 3.1; 35 U.S.C. § 289; *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-32 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1304-06 (Fed. Cir. 2010).

14

**Apple's Objection to Samsung's Instruction**

15

16

17

18

Samsung's proposed instruction incorrectly omits that Samsung may be liable for infringement if it imports into the U.S. an infringing device.  *See* 35 U.S.C. § 271 (a).  Apple's instruction No. 34 accurately summarizes the infringement issues and accurately reflects the law.  There is also no dispute here, except in limited circumstances, as to whether the liability of the Samsung entities stands or falls together.  When it is necessary to make a distinction, as in the case of inducement, the instructions should reflect that.  But there is no reason to confuse the jury at this point with this concept.

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 34.3**
**DESIGN PATENT DIRECT INFRINGEMENT—"ORDINARY OBSERVER TEST"**

**Samsung's Proposed Instruction**

Design patent infringement cannot be found unless the accused product creates an appearance deceptively similar to the claimed design.

To determine whether an accused product is deceptively similar to a patented design, you must use the "ordinary observer test." The ordinary observer test provides that:

> If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Said another way, two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other.

There are some characteristics of this ordinary observer that you must take into account in determining whether two designs are deceptively similar. First, the ordinary observer is someone who purchases smartphones and/or tablet computers and who gives the same level of attention to those products as a normal purchaser would give in that purchasing context. You must assume that the ordinary observer is capable of making a reasonably discerning decision when observing the Samsung designs to determine whether they have an appearance that is deceptively similar to the patented designs.

Second, you must assume that the ordinary observer views the design patents and the accused products in light of earlier designs, known as "prior art." When the differences between the design in the patent and the accused products are viewed in light of the prior art, the ordinary observer's attention will be drawn to those aspects of the patented design that are different from the prior art. And when the patent design is close to the prior art designs, small differences between the patent design and the Samsung products are likely to be important to the ordinary observer.

**Source**

*Gorham Co. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc) ("The question before this court under the standard we have set forth above is whether an ordinary observer, familiar with the prior art Falley and Nailco designs, would be deceived into believing the Swisa buffer is the same as the patented buffer."); *id.* at 683 ("In the language used by the Supreme Court in *Gorham*, 81 U.S. at 528, we hold that the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, 'inducing him to purchase one supposing it to be the other.'"); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1296 (Fed. Cir. 2010) ("[I]nfringement cannot be found unless the accused product creates an appearance deceptively similar to the claimed design") (citing *Egyptian Goddess*); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) ("Two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) ("Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. The

1   criterion is deception of the ordinary observer, such that one design would be confused with the
    other."); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir.

2   2007) ("[T]he purchaser of the patented and accused designs in this case is the purchaser of one
    of a retail product's component parts that is thereafter assembled with other parts to make the

3   retail product.  To hold that such a purchaser is the appropriate hypothetical ordinary observer
    fits squarely with our precedent that the ordinary observer is a person who is either a purchaser

4   of, or sufficiently interested in, the item that displays the patented designs and who has the
    capability of making a reasonably discerning decision when observing the accused item's design

5   whether the accused item is substantially the same as the item claimed in the design patent."); *id.*
    at 1324 ("Specifically, *the question to be addressed* in applying the ordinary observer test *is*

6   *whether the ordinary observer would be deceived* by the accused design because it is
    substantially similar to the patented design.") (emphasis added); *Goodyear Tire & Rubber Co. v.*

7   *Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998) ("The measure of
    infringement of a design patent is deception of the ordinary observer, when such person gives the

8   design the attention usually given by a purchaser of the item bearing the design."); *id.* ("[T]he
    focus is on the actual product that is presented for purchase, and the ordinary purchaser of that

9   product.   The accused tire, the Hercules Power Trac, is a truck tire. The district court correctly
    invoked the ordinary trucker or fleet operator who purchases truck tires, as the person from

10  whose viewpoint deceptive similarity to the '080 design is determined."); *Crocs, Inc. v.*
    *International Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("To show infringement under

11  the proper test, an ordinary observer, familiar with the prior art designs, would be deceived into
    believing that the accused product is the same as the patented design."); *id.* at 1306 ("These side-

12  by-side comparisons of the '789 patent design and the accused products suggest that an ordinary
    observer, familiar with the prior art designs, would be deceived into believing the accused

13  products are the same as the patented design.  In one comparison after another, the shoes appear
    nearly identical.  If the claimed design and the accused designs were arrayed in matching colors

14  and mixed up randomly, this court is not confident that an ordinary observer could properly
    restore them to their original order without very careful and prolonged effort."); *OddzOn v. Just*

15  *Toys*, 122 F.2d 1396, 1405 ("The patentee 'must establish that an ordinary person would be
    deceived by reason of the common features in the claimed and accused designs which are

16  ornamental.'") (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992));
    *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008) (en banc) ("When the

17  differences between the claimed and accused design are viewed in light of the prior art, the
    attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed

18  design that differ from the prior art.  And when the claimed design is close to the prior art
    designs, small differences between the accused design and the claimed design are likely to be

19  important to the eye of the hypothetical ordinary observer."); *id.* at 678 ("[D]ifferences between
    the claimed and accused designs that might not be noticeable in the abstract can become

20  significant to the hypothetical ordinary observer who is conversant with the prior art.").

21

22  **Apple's Objection to Samsung's Instruction**

23  Samsung's proposed instruction misstates the law and is misleading in several ways.  First,
    beginning with its first sentence, Samsung repeatedly redefines the infringement test from

24  "substantially the same" or "substantially similar" to "deceptively similar."  Samsung relies
    virtually exclusively on one phrase in the "ordinary observer test" in *Gorham Co. v. White*,

25  81 U.S. 511, 528 (1871), to attempt to create a separate requirement for deception.  Samsung
    then paraphrases and re-arranges the words from the quote repeatedly to suggest that there needs

26  to be evidence of deception of a consumer purchasing a Samsung product for an Apple product
    in order to prove infringement.  This is incorrect.  The "such as to deceive" passage of *Gorham* is

27  simply an elaboration on how similar two designs must be to be "substantially the same."  *See*
    *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("the

28  deception that arises is a result of similarities in the overall design").  No Federal Circuit case has
    required evidence of deception, and to suggest such a requirement to the jury would be error.  In

fact, in *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126-34 (Fed. Cir. 1993), the Federal Circuit found patent infringement despite holding that "the district court clearly erred in holding that purchasers of [the accused] shoes would be likely to be confused or deceived or mistakenly think that they were buying the L.A. Gear athletic shoes, despite the substantial similarity of overall design."  Moreover, undue emphasis on the "deceive" term in *Gorham* carries the further risk of misleading the jury into thinking some kind of trickery or dishonesty is required, which it is not.  Finally, Samsung's emphasis on the "purchase" phrase in *Gorham* may mislead the jury away from focusing on and comparing the claimed *designs*.  Indeed, Samsung's statement in instruction No. 36.1 that "[t]he same standard of deceptive similarity that applied to infringement also applies to anticipation" underscores why Samsung's instruction is nonsensical.  An ordinary observer cannot "purchase" a prior art patent with respect to anticipation.  Likewise, a determination of whether a patentee practices its own design patents would be nonsensical under Samsung's formulation; a purchaser would not be deceived into purchasing an Apple product supposing it to be an Apple design.  *See also Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) ("Proper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment.").  Second, Samsung's extraneous "characteristics" of the ordinary observer are wrong.  Samsung's instruction that ordinary observer "gives the same level of attention to those products as a normal purchaser would give in that purchasing context" is not even supported by Samsung's own case citations, which refer to a purchaser or one "sufficiently interested in[] the item," and of giving "the design the attention *usually* given …."  *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007); *see also Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998).  Moreover, Samsung's instruction that the ordinary observer "is capable of making a reasonably discerning decision when observing the Samsung designs to determine whether they have an appearance that is deceptively similar to the patented designs" inappropriately replaces the test of "substantially the same" with the phrase "deceptively similar" in order once again to mislead the jury into thinking that actual deception is a required element for infringement.  Third, Samsung's last paragraph is incorrect and incomplete.  It incorrectly emphasizes focusing on individual aspects of the designs, and not the overall impressions of the design.  *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677 (Fed. Cir. 2008) (rejecting point of novelty test as it inappropriately "focused on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed design as a whole").  Moreover, Samsung's instruction is incomplete as it only accounts for potential differences between the asserted and accused design and not similarities.  For instance, Samsung's instruction fails to instruct that if the accused design includes "a feature of the claimed design that departs conspicuously from the prior art," the design would more likely be infringing.  *Id.*  Apple's corresponding instruction, No. 34, is an accurate statement of the ordinary observer test.  It properly instructs the jury that they themselves, as ordinary observers, familiar with the prior art presented at trial, determine whether there is substantial similarity between the overall impressions of the asserted design and the accused design.  *Gorham*, 81 U.S. at 528; *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992 ) ("Nothing in Gorham suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design.").  It also properly instructs the jury regarding the role of prior art in the infringement analysis.  *See, e.g.*, *Egyptian Goddess*, 543 F.3d at 677-683.  It also properly instructs that minor differences and labels are not enough to escape infringement.  *See Crocs v. ITC*, 598 F.3d 1294, 1304 (Fed. Cir. 2010); *L.A. Gear*, 988 F.2d 1117 at 1126.  It also properly instructs that size of the accused product is irrelevant if the asserted design does not specify a size.  *See Sun Hill Indus. v. Easter Unlimited Inc.*, 48 F.3d 1193, 1196-97 (Fed. Cir. 1995).

**PROPOSED FINAL JURY INSTRUCTION NO. 34.4**
**DESIGN PATENT DIRECT INFRINGEMENT—COMPARISONS**

### Samsung's Proposed Instruction

You have heard evidence about certain Apple products and models, such as the various generations of iPhones and iPads, as well as the 035 model. If you determine that any of Apple's products or models embody an Apple patent design because they are substantially the same as that design and have no material distinctions, you may compare the product or model directly to the accused Samsung products. This may facilitate your determination of whether an ordinary observer would be deceived. However, if you determine that a particular Apple product or model does not embody a patented design, you may not compare it to the accused devices.

### Source

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, indeed, such comparison may facilitate application of Gorham criterion of whether an ordinary purchaser would be deceived into thinking that one were the other."); *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 & n.8 (Fed. Cir. 1992).

### Samsung's Statement in Support

This instruction is based on Federal Circuit law allowing the trier of fact to look to an embodiment of a patent in analyzing that patent and comparing it to accused products. Because the parties have a dispute as to which tangible items are legitimate embodiments of the patents-in-suit, an instruction is necessary to alert the jury that this is a factual dispute for it to decide. *See, e.g., Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices."). Apple's argument that the 035 model is not an embodiment of D'889 because pictures of it were not included in the final, issued patent is a non-starter — there are no pictures of the iPad 2 in the D'889 patent, yet Apple has numerous times argued that it is an embodiment. Also, Apple designer Christopher Stringer has already testified that the D'889 patent represents the design of the 035 model. July 31, 2012 Trial Tr. at 528:12-15 ("Q. All right. Would you agree with me, Sir, that Apple model 035 incorporates the '889 design? A. I believe that the '889 patent represents this design.") Whether Apple has proved its products embody its patents can also affect the damages calculation and whether lost profit damages should be awarded. *See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F.Supp. 751, 819-820 (E.D.N.Y. 1995) (sales of commercial embodiment established demand for patented product as required for award of lost profit damages).

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is improper because the Court explicitly found that the 035 Model has been excluded from the case for purposes of non-infringement. (Tr. at 1189:18-1193:12; 1213:14-1223:2.) Samsung cannot seek a jury instruction on a theory that the Court found untimely disclosed and excluded. Samsung's proposed instruction is also improper

1    because it would undermine the Court's claim construction decision on whether the 035 model
2    has any effect on the scope of Apple's D'889 patent.  As the Court previously found, "the 035
     Prototype is not a relevant comparison to establish infringement of the D'889 patent" because its
3    photos were canceled from the D'889 application.  (Dkt. 1171 at 6.)  Instead, "the drawings in
     the D'889 Patent establish the claimed design."  *Id.*  This instruction is objectionable because it
4    fails to emphasize that even if a product comparison may "facilitate" a decision, the proper
     comparison ultimately is to the patent drawings, not to the product embodiment.  Moreover, this
5    instruction is further objectionable for once again misstating the infringement test as <u>deception</u>
     rather than "substantially the same."

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 34.4b**
**COPYING IS NOT RELEVANT TO INFRINGEMENT**

**Samsung's Proposed Instruction**

You have heard allegations by Apple that certain of its designs and patents have been copied. Regardless of whether you as the jury accept this testimony, you may not consider it in deciding whether any patents in this case have been infringed. Copying is not an element of patent infringement. I will give you further instructions on the standards to apply in determining utility patent infringement and design patent infringement. In neither case will evidence of copying or lack of copying be relevant to your deliberations. Evidence of copying, if established, is only relevant as one of several considerations you will need to account for in deciding whether a patent is invalid because it was an obvious design.

**Source**

*Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350-51 (Fed. Cir. 2002) ("While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126-27 (Fed. Cir. 1993) ("Melville presented no evidence to counteract the evidence of copying of the patented design. Indeed, Melville admitted copying . . . an issue not relevant to patent infringement.") (emphasis added); *see also Goodyear Tire v. Hercules Tire*, 162 F.3d 1113, 1121 (Fed. Cir. 1998) ("Although Hercules does not deny that it intended to appropriate the general appearance of the Goodyear tire, Hercules argues that it made changes sufficient to avoid infringement. The district court agreed."); *Hupp v. Siroflex of America*, 122 F.3d 1456 (Fed. Cir. 1997) (upholding non-infringement finding where "Siroflex's president conceded at the trial that he acquired a sample of the Hupp product at a trade show and, using the same concept, made the accused Siroflex mold for an outdoor walkway of concrete stones.").

**Samsung's Statement of Support for Proposed Instruction No. 10.1 and 34.4b**

Samsung's proposed instruction on the relevance of allegations of copying is particularly important in this trial because Apple chose to make it a central theme in its case, despite its not being an element in its main legal claims of infringement. The jury should be made aware of this to prevent a serious error of law. A general instruction on alleged evidence of copying would not be prejudicial to Apple because in those instances where copying might actually be relevant to an issue, such as secondary considerations of obviousness, the particular instruction at issue will alert the jury to that fact. As to the law on copying, the Federal Circuit is clear: "While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed." *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350-51 (Fed. Cir. 2002) (emphasis added). Apple has tried to argue that the *LA Gear v. Thom McAn Shoe Co.* case says that copying is relevant to infringement, but that is not only a misreading of the case, which clearly says that copying is "an issue not relevant to patent infringement," but it's a misreading of design patent law generally. 988 F.2d 1117, 1126-27 (Fed. Cir. 1993) (emphasis added). If necessary to alleviate Apple's objection, the last sentence of the instruction could be changed to this: "In the event that evidence of copying is established and would be relevant to a particular issue other than infringement, I will provide you with an explicit instruction to that effect."

**Apple's Objection to Samsung's Proposed Instruction**

Samsung's proposed instruction on copying is misleading and incomplete for the reasons stated in opposition to Samsung's proposed instruction No. 10.1.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 34.5
DESIGN PATENT DIRECT INFRINGEMENT—ORNAMENTAL VERSUS
FUNCTIONAL FEATURES**

2

3

**Samsung's Proposed Instruction**

4

5       Design patents do not protect the functional aspects of a design, only the ornamental aspects.
Thus, to determine infringement under the ordinary observer test as I have instructed you on
6       previously, you must consider only the ornamental design features of the design patents.  You
must not consider functional elements for purposes of comparing a design patent to an accused
7       device in deciding infringement.  Apple must prove by a preponderance of the evidence that the
ordinary observer would be deceived by reason of the common features in the claimed and
accused designs that are ornamental.  The similarity cannot be a result of any functional features.

8

9       **[THE FOLLOWING ALTERNATIVE PARAGRAPH TO BE READ IN THE EVENT
THE COURT ALLOWS THE JURY TO DETERMINE WHICH FEATURES ARE
FUNCTIONAL FOR INFRINGEMENT PURPOSES.]**

10

11      Design patents do not protect the functional aspects of a design, only the ornamental aspects.
Thus, to determine infringement under the ordinary observer test as I have instructed you on
12      previously, you must consider only the ornamental design features of the design patents.  You
must not consider functional elements for purposes of comparing a design patent to an accused
13      device in deciding infringement.  A feature is functional if the feature is essential to the use or
purpose of the article.  A design feature also is functional if it affects the cost or quality of the
14      article.  If you determine that any of the design patents includes functional features, you cannot
find infringement unless Apple proves by a preponderance of the evidence that the ordinary
15      observer would be deceived by reason of the common features in the claimed and accused designs
that are ornamental.  The similarity cannot be a result of any functional features.

16      **Source**

17      *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825-26 (Fed. Cir. 1992) ("[Where] a design is
composed of functional as well as ornamental features, to prove infringement a patent owner
18      must establish that an ordinary person would be deceived by reason of the common features in
the claimed and accused designs which are ornamental."); *OddzOn Prods., Inc. v. Just Toys, Inc.*,
19      122 F.3d 1396, 1405 (Fed. Cir. 1997); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-
94 (Fed. Cir. 2010); *id.* at 1296 ("We also agree that, ignoring the functional elements of the
20      tools, the two designs are indeed different."); *Amini Innovation Corp. v. Anthony Cal. Inc.*,
439 F.3d 1365, 1371-72 (Fed. Cir. 2006) ("An aspect is functional 'if it is essential to the use or
21      purpose of the article or if it affects the cost or quality of the article.'"); *PHG Tech., Inc. v.
St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed Cir. 2006); *Berry Sterling Corp. v. Pescor Plastics,
22      Inc.*, 122 F.3d 1452, 1456 (Fed Cir. 1997).

23

**Samsung's Statement in Support**

24

25      This instruction is based on clear Federal Circuit law that functional features cannot be protected
by a design patent.  *See Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010)
26      ("[W]e have made clear that a design patent, unlike a utility patent, limits protection to the
ornamental design of the article.").  It properly informs the jury that they may not consider the
27      similarity of functional features in the infringement analysis and that Apple bears the burden to
prove that the ordinary observer would be deceived by similarities in their ornamental features
28      alone, excluding the functional features.  *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d
1396, 1405 (Fed. Cir. 1997) ("The patentee 'must establish that an ordinary person would be

deceived by reason of the common features in the claimed and accused designs which are ornamental.'") (quoting *Read Corp. v. Portec, Inc*., 970 F.2d 816, 825 (Fed. Cir. 1992).)  The instruction is presented as a pair of alternatives depending on whether the Court determines which elements are functional or asks the jury to do so.  In either case, it should instruct the jury on the significance of a feature or features being deemed functional because that determination affects the entire infringement analysis.  In the event the Court asks the jury to determine which features are functional for the infringement analysis, the second alternate instruction includes Federal Circuit language giving the guidelines for determining functionality.  *See, e.g., Amini Innovation Corp. v. Anthony Cal. Inc.*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006) ("An aspect is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.") (quotation marks omitted).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary because a finding of functional elements for purposes of an infringement analysis is a claim construction issue for the Court.  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).  The Court will decide the manner and language of its instruction to the jury.  Moreover, Samsung's instruction requires that the ordinary observer be "deceived" for a finding of infringement, which is not the law.  (*See* Apple's objection to Samsung's proposed instruction No. 34.3.)  Samsung's alternative statement relies on the unfounded proposition that the jury should decide what features are functional.  *Richardson*, 597 F.3d at 1293.  The alternative statement also misstates the law of functionality.  As the Court noted previously, the standard is clear:  a design is functional only if it is "dictated by the functionality of the item."  (Dkt. No. 452 at 13.)  *See L.A. Gear, Inc., v. Shoe Co*., 88 F.2d 1117 at 1123 (Fed. Cir. 1993) ("If the particular design is essential to the use of the article, it cannot be the subject of a design patent.").  While Samsung cites to *Amini Innovation Corp. v. Anthony California, Inc*., 439 F.3d 1365, 1371 (Fed. Cir. 2006), for an "affects the cost or quality of the article" standard of functionality, the *Amini* court was quoting the standard for trade dress functionality, *see Inwood Labs., Inc. v. Ives Labs., Inc*., 456 U.S. 844, 851 (1982), and did not actually apply that standard in its analysis.  Samsung has not identified cases that actually apply this "cost or quality" standard in the design patent context, or shown how that standard would be less stringent than the "dictated by function" standard consistently used for design patents.  Finally, to the extent the jury is to decide issues of functionality, the instruction must clearly delineate between what Samsung calls a "feature" – *e.g*., a display screen – and the particular design of such a feature – *e.g*., the size, shape and location of a display screen.  For an element to be deemed "functional," it must be shown that the *particular design* of that element is dictated by function; Samsung's proposed instruction fails to convey this requirement.

**PROPOSED FINAL JURY INSTRUCTION NO. 34.6
DESIGN PATENT PROSECUTION HISTORY ESTOPPEL**

**Samsung's Proposed Instruction**

You are instructed that the scope of a design patent can be limited by what is called "prosecution history estoppel."  As you have already heard, during prosecution of a patent, the patent applicant often makes arguments and amendments in an attempt to convince the Patent Office examiner to grant the patent.  The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once it has done so, it is not entitled to patent coverage that would be broad enough to cover the same feature that was used to distinguish the invention during the prosecution of the patent.

You are instructed that prosecution history estoppel applies in the following way:

Apple overcame a non-final obviousness rejection by the Patent Office during prosecution of the D'677 patent by claiming that the design disclosed the overall impression of a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device.  The D'677 patent is not entitled to broader coverage than this description.

**Source**

AIPLA Model Jury Instruction 3.13; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 30-34 (1997); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (en banc) ("[A] trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim.  Those include such matters as . . . assessing and describing the effect of any representations that may have been made in the course of the prosecution history,"); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124-25 (Fed. Cir. 1993) ("As for other patented inventions, reference is made to the prior art and the prosecution history in order to give appropriate weight to the factors that contributed to patentability.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary because prosecution history estoppel may apply only to claim construction arguments or to limit the doctrine of equivalents for infringement. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733-34 (2002).  But claim construction is an issue for the Court, and Apple is not alleging infringement by equivalents for its design patents-in-suit.  Samsung's proposed instruction attempts to introduce a new argument that Samsung failed to advance during the design patent claim construction briefing, or anywhere else in this case.  Even if an estoppel instruction were needed, Samsung's proposal is misguided.  The prosecution statement cited by Samsung merely points out that two pieces of cited prior art fail to disclose a readily-apparent feature shown in the D'677 patent figures (its edge-to-edge transparent front surface).  There was neither a narrowing amendment to avoid the art or any other evidence of a surrender of subject matter.  *Festo*, 535 U.S. at 734 ("Prosecution history estoppel . . . precludes a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent.") (quoting *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577-1578 (Fed. Cir. 1997)).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 36
DESIGN PATENTS—ANTICIPATION**

2

**Apple's Proposed Instruction**

3

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any
Evidence at Trial That Any Prior Art Reference Is Identical in All Material Respects to the
Overall Visual Impression of Any Claimed Design—Instruction Provided In The Event
That Court Decides Instruction Must Be Provided]**

4

5

6   A design patent is invalid if it is not new.  Certain articles of manufacture, publications, patents,
and public uses that predate the patented design are called "prior art references."  For a design
7   patent to be invalid because it is not new, there must be a single prior art reference that, to an
ordinary observer, is identical in all material respects to the overall visual impression of the
8   claimed design.  Minor differences between a design patent and a prior art reference do not
necessarily preclude a finding of anticipation.  If a design patent is not new we say it is
9   "anticipated" by a prior art reference.

10  The Court has already found that Japanese Design Registration No. 1241638 cannot be used as a
prior art reference to invalidate any Apple design patent on this basis.

11

Here is a list of ways that Samsung can show that an Apple design patent was not new:

12

13
- If the claimed design was already publicly known or publicly used by others in the
  United States before the date of conception of the claimed design;

14
- If the claimed design was already patented or described in a printed publication anywhere
  in the world before the date of conception of the claimed design.  A reference is a
15    "printed publication" if it is accessible to those interested in the field, even if it is difficult
  to find;

16

17
- If the claimed design was already described in another issued U.S. patent or published
  U.S. patent application that was based on an application filed before the date of
  conception of the claimed design.

18

19  You should consider the dates of conception for Apple's design patents to be the following:

20
- D'677 patent:          April 20, 2006

21
- D'087 patent:          April 20, 2006

22  For patents where I have not instructed you with respect to a conception date, you should use the
patent's effective filing date, which I will describe shortly.

23

24

25

26

27

28

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.3, 9.4.[8]

**Authorities**

35 U.S.C.§ 102; 35 U.S.C. § 171; *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Denying Motion for Preliminary Injunction, Dkt. No. 452, at 11 (N.D. Cal., Dec. 2, 2011) (the "ordinary observer" test applies to anticipation) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233,1239-40 (Fed. Cir. 2009)); *id.* at 18 ("The test for anticipation is the same as the test for infringement, the only difference being that the court compares the patented design with the alleged anticipatory reference rather than with the accused infringing product."); *id.* at 10-11 ("Under the ordinary observer test, an accused device infringes upon a design patent if "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives," 'the design of the accused device and the patented design are "'substantially the same."' The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other.""') (citing *Egyptian Goddess, Inc. v. Swisa, Únc.*,543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 5ll, 528 (1871)); *id.* at 11 ("For the anticipation and obviousness analysis, the focus should likewise be on 'the overall design' of the patent as compared to the prior art.") (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*,589 F.3d 1233,1239-40 (Fed. Cir. 2009)); *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1355-56 (Fed. Cir. 2003) ("One's own work may not be considered prior art in the absence of a statutory basis."); *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982) ("[d]isclosure to the public of one's own work constitutes a bar to the grant of a patent . . . only when the disclosure occurred more than one year prior to the date of the application"); *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997) ("The publication must show the same subject matter as that of the patent, and must be identical in all material respects."); *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) ("Our analysis of the patentability of Ecolochem's invention begins with the phrase 'at the time the invention was made.' Here, the date of the invention is presumed to be the filing date of the parent application, December 16, 1983."); *Int'l Seaway Trading*, 589 F.3d at 1340 ("we now conclude that the ordinary observer test must logically be the sole test for anticipation as well"); *In re Paulsen*, 30 F.3d 1475, 1478 (Fed. Cir. 1994) ("the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention"); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008);

---

[8] Samsung has complained that the Intellectual Property Owners ("IPO") Ass'n Model Design Patent Jury Instructions are a biased set of model instructions to which the Court should give no weight. Samsung's objection makes no sense. *Samsung itself* also cites to the IPO model in its proposed instructions, and even criticizes Apple for not following the IPO model more closely. *See* Dkt No. 1232 at 199 ("[Apple] also does not address the requirement that Apple make an election for either actual damages or Samsung's profits, as set out in the IPO Model Design Patent Jury Instruction."), 219 ("Although both parties have crafted proposed instructions that track draft IPO Model Design Patent Jury Instr. 10.8, Samsung's Alternative to Apple's Proposed Final Instruction No. 54 is much closer to the text of the IPO instruction, deviating only slightly to contour to this case."). In any event, no lawyer who worked at or for Apple was on the sub-committee that drafted the model instructions, and Samsung never says how the IPO model instructions are biased, what caused them to biased, or in what direction they are biased. There is nothing in the record to suggest that any bias exists in the IPO instructions These IPO model instructions were written in 2009—years before Apple filed this case—and the impetus for them was the *Egyptian Goddess* case, not Apple. (*See* The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions (Rev. 11/17/2009), at pp. 1-2 (Background and Proposal).)

1   *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233,1239-43 (Fed. Cir. 2009);
    *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004);
2   *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004) ("Public
    use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the
3   inventor who is under no limitation, restriction or obligation of secrecy to the inventor.")
    (citations omitted); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971-72 (Fed.
4   Cir. 1984) ("The plain fact is that the claimed invention was not kept secret. It was open to public
    observation *without restriction* which is sufficient to constitute 'public use.'") (citations omitted);
5   *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1058-59 (Fed. Cir. 1996) (others, "who were
    under no duty to maintain it as confidential," observed disputed centrifuge); *Apple Inc. v.*
6   *Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary
    Judgment, Dkt. No. 1159, at 38 (N.D. Cal., June 30, 2012) ("Thus, the relevant date for priority
7   under 102(a) is the date of invention, while the relevant date for priority under 102(b) is one year
    before the application date."); *id.* ("On its face, section 102(a) might include printed publications
8   as prior art, even if a prior publication is the inventor's own work. However, including an
    inventor's own publications as 1 02(a) prior art would negate the one-year grace period explicitly
9   provided to inventors under 102(b). Therefore, the requirement that prior art be created "by
    others" applies to "all types of references eligible as prior art under 35 U.S.C. 102(a) including
10  publications as well as public knowledge and use."") (citing *In re Katz*, 687 F.2d 450, 454
    (C.C.P.A. 1982), MPEP § 2132); *id.* at 39 ("In this case, the relevant priority date for the D'305
11  inventors' own work is one year prior to the date of application of the D'305 Patent: June 23,
    2006. The January 2007 image publication was not before the priority date, and therefore is not a
12  prior art reference for the D'305.").

13

14  **Samsung's Objection to Apple's Proposed Instruction**

15  Apple's proposed final instruction No. 36 misstates the law of anticipation. The Federal Circuit,
    following Supreme Court precedent, made clear that the same standard used for infringement
16  applies to invalidity. *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir.
    2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must
17  be applied to infringement and anticipation, and our holding in *Egyptian Goddess* that the
    ordinary observer test is the sole test for infringement, we now conclude that the ordinary
18  observer test must logically be the sole test for anticipation as well."). Apple instead proposes that
    the instruction be based on an old holding that to anticipate, a prior art reference must be
19  "identical in all material respects to the overall visual impression of the claimed design" to an
    ordinary observer. This is a more stringent standard than Apple advocates on the infringement
20  side and it is erroneous. In addition, Apple's proposed instruction misstates the law and facts
    regarding the JP'638 reference. First, the Federal Circuit did not say JP'638 "cannot be used" as
21  an anticipating reference. It said that because JP'638 is arched from the side view, the Federal
    Circuit found it distinguishable from D'087 and therefore rejected this Court's "ruling that the
22  D'087 patent is *likely anticipated* by the '638 reference." *Apple v. Samsung*, 678 F.3d 1314, 1327
    (Fed. Cir. 2012) (emphasis added). The Federal Circuit made no ruling as a matter of fact or law
23  that JP'638 *could not be used* to anticipate D'087, just that it considered it unlikely on that record.
    Nor did it consider JP'638 in comparison to D'677. Yet Apple would have the jury instructed that
24  JP'638 cannot be used to anticipate "any Apple design patent." That is wrong. Second, even if the
    Federal Circuit had issued a ruling on whether JP'638 was a proper anticipating reference, such
25  "decisions on preliminary injunctions are just that—preliminary." *S. Or. Barter Fair v. Jackson
    County*, 372 F.3d 1128, 1136 (9th Cir. 2004). The Federal Circuit itself said that it is "mindful
26  that all findings of fact and conclusions of law at the preliminary injunction stage are subject to
    change upon the ultimate trial on the merits." *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
27  302 F.3d 1352, 1361 (Fed. Cir. 2002); *see also Balboa Instr., Inc. v. Gecko Electronique, Inc.*, 31
    F. App'x 658, 661 (Fed. Cir. 2002); *N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 707 F.
28  Supp. 2d 520, 541 (D.N.J. 2010) ("[T]he findings of fact and conclusions of law in a ruling on a

1    preliminary injunction are naturally preliminary in nature and thus do not foreclose any findings
2    or conclusions to the contrary in subsequent stages of the litigation").  In any event, an instruction
     on JP'638 is contrary to law. The jury should not be confused or cabined by the preliminary
3    findings of either court.  Finally, Apple's proposed instruction omits factors identified by the
     Northern District of California Model Patent Jury Instructions B.4.3a and Samsung's own
4    proposed jury instructions, and is also objectionable in that it includes references to alleged
     "conception" dates of the claimed designs, which have not been conclusively proven and are a
5    matter for the jury to decide in any event.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Before I describe the different ways a design patent can be invalidated, I will instruct you about documents and things called "prior art."  The term "prior art" will be used in several of the following instructions on invalidity.  Prior art is also a term used in the infringement test for design patents because the ordinary observer is deemed to know about all the prior art and to view the accused products and Apple patents in light of the prior art.  In general, prior art refers to early patents, designs, and devices that were made before Apple's designs were invented or filed with the Patent Office.  That is, these are designs that were already known in the world before Apple's designs were ever made or submitted to become patents.

There are some rules that determine whether you may consider a particular early design as prior art.  In some instances, you will need to look to the date the Apple design was made to determine if an early design is prior art; in other instances you will look to the filing date of the Apple design regardless of what the invention date is.  Prior art includes any of the following items received into evidence during trial:

1       Any design or product that was publicly known or used by others in the United States before the patented Apple design was made;

2       Any design or product that was patented or described in a printed publication in the United States or a foreign country before the Apple design was made;

3       Any issued United States patent or published United States patent application that was filed before the Apple design was made;

4       Any publications, including patents and design registrations, that were published or issued more than one year before the filing date of the Apple patent;

5       Any design or product that was in public use or on sale in the United States more than one year before the Apple patent was filed;

6       Any design or product that was made by anyone before the named inventors created the patented design or product where the design or product was not abandoned, suppressed, or concealed.

An inventor's own earlier designs can be used as prior art to invalidate his or her later patents.

**Source**

35 U.S.C. § 102.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex.  Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction No. 36 explains in one instruction all of the Section 102 grounds for anticipation.  That is more efficient and juror-friendly.  Samsung's instruction also misstates the law.  First, its loose description of prior art as "early patents, designs, and devices that were *made* before Apple's designs were invented or filed with the Patent Office" gives the erroneous impression that no publication or public use is required.  "[D]esigns that were already known in the world" gives a similarly erroneous impression about the requirement for publication or use in the U.S.  Second, contrary to Samsung's proposed instruction, "[a]n inventor's own earlier designs" *cannot* be "used as prior art to invalidate his or her later patents" unless their earlier

1    disclosure is a statutory bar.  *See Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346,
2    1355-56 (Fed. Cir. 2003) ("One's own work may not be considered prior art in the absence of a
     statutory basis."); *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982) ("[d]isclosure to the public of
3    one's own work constitutes a bar to the grant of a patent . . . only when the disclosure occurred
     more than one year prior to the date of the application").  Similarly, Samsung's proposed sub-
4    instructions (1)-(3) ignore the fact that only prior art "by another" can qualify as prior art under
     35 U.S.C. 102(a) and (e), and erroneously sweep in "[a]ny design or product" and "[a]ny issued
5    United States patent or published United States patent application."  Third, Samsung's sub-
     instruction (6) misstates 35 U.S.C. 102(g)(2), which requires that a prior design be "made *in this*
6    *country by another inventor* who had not abandoned, suppressed, or concealed it."  (Emphasis
     added.)  Sub-instruction (6) also entirely ignores section 102(g)'s guidance on the role of
7    conception, reduction to practice, and reasonable diligence in determining priority of invention.
     In fact, this Samsung instruction is not relevant to the case and should not be given, where no
8    allegation has been made that Apple's designs were in fact invented earlier by another.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED FINAL JURY INSTRUCTION NO. 36.1
ANTICIPATION – A SINGLE REFERENCE OR A SINGLE PRODUCT**

### Samsung's Proposed Instruction

Now that you have been instructed about prior art, I'll explain how it can be used to determine whether a design patent is invalid.  In basic terms, the design must be new and novel in light of the prior art.  A design that is not new or novel in light of prior art is said to be "anticipated by the prior art."  A design that is "anticipated" is not entitled to patent protection.

The same standard of deceptive similarity that applied to infringement also applies to anticipation.  Therefore, to find that an Apple design patent is anticipated, Samsung must prove by clear and convincing evidence that a single prior art reference is so similar in appearance to the Apple patent that an ordinary observer would be deceived into believing they were the same design.

### Source

Adapted from AIPLA Model Patent Jury Instructions, 6.0; 35 U.S.C. §§ 102,171; *Gorham Co. v. White*, 81 U.S. 511, 526-27 (1871); *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in *Egyptian Goddess* that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.  In doing so, we will prevent an inconsistency from developing between the infringement and anticipation analyses, and we will continue our well-established practice of maintaining identical tests for infringement and anticipation.").

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction misstates the law and is misleading in several ways.  First, it states that a design "must be new and novel," which inappropriately suggests that "newness" and "novelty" are distinct requirements, when in fact the statute requires "new."  Moreover, it misleadingly states that "a design that is not new or novel in light of prior art is said to be 'anticipated by the prior art'" without explaining that anticipation can only be by a *single* item of prior art.  *See* 35 U.S.C. § 102; 35 U.S.C. § 171.  Finally, Samsung once again injects into its instruction a purported requirement of deception.  Apple's corresponding instruction, No. 36, is an accurate and concise statement of the test for anticipation including the statutory bars, tracking the N.D. Cal. Model Patent Jury Instructions.  It also correctly states the test for anticipation without inappropriately suggesting a requirement of deception.  *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997) ("The publication must show the same subject matter as that of the patent, and must be identical in all material respects.").  Also, Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex.  Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction explains in one instruction all of the Section 102 grounds for anticipation.  That is more efficient and juror-friendly.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 36.2**
**DESIGN PATENT ANTICIPATION – PUBLIC USE AND PUBLIC DISPLAY**

3

## Samsung's Proposed Instruction

4

5

6

7

A design patent is invalid if, under the deceptive similarity test I have described, the same or substantially the same design was in public use or on public display in this country prior to the time the patented design was invented.  In determining whether a design was in public use or on public display, you must consider the activities that occurred in public and how much access and knowledge the public had of the display or use.  A public display of a design at a trade show, for example, is generally considered a public use.

**Source**

8

9

10

11

35 U.S.C. §102(a) & (b); *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004); *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1079 (Fed. Cir. 1998); *Fitzgerald v. Arbib*, 268 F.2d 763 (C.C.P.A. 1959); *In re Mann*, 861 F.2d 1581, 1581 (Fed. Cir. 1988); *see also*, *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1058-59 (Fed. Cir. 1996); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971-72 (Fed. Cir. 1984).

12

13

## Apple's Objection to Samsung's Instruction

14

15

16

17

18

19

20

Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex.  Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction explains in one instruction all of the Section 102 grounds for anticipation.  That is more efficient and juror-friendly.  Samsung's instruction also is contrary to law because it refers to the "deceptive similarity" test, which, as discussed in detail in Apple's objection to Samsung's proposed instruction Nos. 34.3 and 36.1, is not the test for design patent infringement or anticipation.  *See also Int'l Seaway Trading*, 589 F.3d at 1340 ("we now conclude that the ordinary observer test must logically be the sole test for anticipation as well").  Samsung's instruction also fails to mention the requirement for adequate, enabling disclosure of the design in the publication.  *In re Paulsen*, 30 F.3d 1475, 1478 (Fed. Cir. 1994) ("the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention").  Samsung's instruction also erroneously concludes, without consideration of individual circumstances (such as whether the complete design was displayed) and as a matter of law, that "public display of a design at a trade show" is generally considered a public use.

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 36.3
ANTICIPATION—DATE OF INVENTION**

3

**Samsung's Proposed Instruction**

4

5

Since the date of invention of the Apple design patents is in dispute in this case, you must determine whether Apple has proved the dates its designs were invented.  If you determine that Apple has not proved when its designs were invented, you must assume that it was not until the filing date of the patents.

6

7

**Source**

8

9

N.D. Cal. Model Patent Instructions, B.4.3.a1; *Continental Plastic Containers v. Owens Brockway Plastic Prods., Inc.*, 141 F.3d 1073, 1077-79 (Fed. Cir. 1998) ("[D]esign inventions are reduced to practice as soon as an embodiment is constructed"); *Mas v. Root*, 54 F.2d 435, 435 (C.C.P.A. 1932).

10

11

**Apple's Objection to Samsung's Instruction**

12

13

14

15

16

17

Samsung's proposed instruction misstates the law of priority.  Samsung's instruction that "[i]f you determine that Apple has not proved when its designs were invented, you must assume that it was not until the filing date of the patents" ignores that "the date of invention is presumed to be the *filing date of the parent application*" if an earlier invention date is not proven.  *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) (emphasis added).  This is important as two of the asserted designs (US D618,677 and USD593,087) claim priority to earlier applications filed on January 5, 2007.  Also, Samsung's proposed instruction is part of a four instruction set that is unnecessarily long and complex. Rather than spread Section 102 defenses out amongst four instructions, Apple's proposed instruction No. 36 explains in one instruction all of the Section 102 grounds for anticipation. That is more efficient and juror-friendly.

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 37**
**DESIGN PATENTS—STATUTORY BARS**

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Prior Art Reference Is Identical in All Material Respects to the Overall Visual Impression of Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

A design patent is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a design patent to be invalid by a statutory bar, there must be a single prior art reference dated more than one year before the patent application was filed that, to an ordinary observer, is identical in all material respects to the overall visual impression of the claimed design. Minor differences between the prior art reference and the claimed design do not necessarily preclude a finding of invalidity.

The Court has already found that Japanese Design Registration No. 1241638 cannot be used as a prior art reference to invalidate any Apple design patent on this basis.

Here is a list of ways that Samsung can show that an Apple design patent application was not timely filed:

- If the claimed design was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date (or "priority date") of the patent application. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- If the claimed design was already being openly used in the United States more than one year before the effective filing date of the patent application; or

- If an article using the claimed design was already sold or offered for sale in the United States more than one year before the effective filing date of the patent application.

The Apple design patents have the following effective filing dates:

- D'677 patent: January 5, 2007

- D'087 patent: January 5, 2007

- D'889 patent: March 17, 2004

- D'305 patent: June 23, 2007

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a2; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.4, 9.5.

**Statement in Support of Apple's Proposed Instruction:**

Samsung contends that the Court should not instruct the jury about the effective dates of the D'677 and D'087 design patents because Samsung does not agree to the dates proposed by Apple. But it is too late for Samsung to dispute the effective dates now. Samsung did not contest

Apple's right to the effective dates on the face pages of these patents in its expert reports, its opposition to Apple's Motion in Limine No. 3, or its response to Apple's Interrogatory No. 12, which sought Samsung's invalidity contentions.  Even if Samsung had raised this defense before, the D'677 and D'087 patents are presumptively entitled to the priority dates on their face pages because they are continuations.  *See Judkins v. HT Window Fashion Corp.*, 624 F. Supp. 2d 427, 432-33 (W.D. Pa. 2009).  Moreover, Samsung has not come forward with any intervening prior art (*i.e.*, prior art that is between the dates of the applications for the patents-in-suit and the dates for Apple's parent applications) that would require instructing the jury on this issue.  If the Court ultimately finds that the question of effective filing dates should be put to the jury, the Court should deliver the following additional jury instruction:

> As I have instructed you, deciding whether Samsung has proven it is highly probable that any Apple design patent is invalid based on a "statutory bar" requires a determination of the "effective filing date" (or "priority date") for that Apple patent.

> The effective filing date for the D'889 patent is March 17, 2004, and the effective filing date for the D'305 patent is June 23, 2007.  You, however, need to decide the effective filing dates for the D'677 and D'087 design patents.

> Each of the D'677 and D'087 patents on its face page claims entitlement to the date on which an earlier patent application was filed.  You should presume that the D'677 and D'087 patents are entitled to the benefit of the dates they claim.  Samsung must persuade you that it is highly probable that each design patent is not entitled to that benefit.

> In deciding whether Samsung has met its burden, keep in mind that a design patent is entitled to the benefit of the filing date of an earlier application if an ordinary observer viewing the earlier filed application at the time it was filed would have recognized that the application disclosed the claimed design, even though the figures and their description in the application may not be exactly the same as those found in the claimed design.  An aspect of the claimed design need not be specifically disclosed in the earlier application if an ordinary observer would understand that that aspect is necessarily implied in the earlier application.

**Sources and Authorities:**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.2a.  *See also In re Daniels*, 144 F.3d 1452, 1456-57 (Fed. Cir. 1998); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008); *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869-71 (Fed. Cir. 2010); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008); *Judkins v. HT Window Fashion Corp.*, 624 F. Supp. 2d 427, 432-33 (W.D. Pa. 2009).

**Authorities**

35 U.S.C.§ 102; 35 U.S.C. § 171; *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Denying Motion for Preliminary Injunction, Dkt. No. 452, at 11 (N.D. Cal., Dec. 2, 2011) (the "ordinary observer" test applies to anticipation) (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233,1239-40 (Fed. Cir. 2009)); *id.* at 18 ("The test for anticipation is the same as the test for infringement, the only difference being that the court compares the patented design with the alleged anticipatory reference rather than with the accused infringing product."); *id.* at 10-11 ("Under the ordinary observer test, an accused device infringes upon a design patent if "'in the eye of an ordinary observer, giving such attention as a purchaser

usually gives," 'the design of the accused device and the patented design are "'substantially the same."' The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary observer], inducing him to purchase one supposing it to be the other.""") (citing *Egyptian Goddess, Inc. v. Swisa, Ínc.*,543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 5ll, 528 (1871)); *id.* at 11 ("For the anticipation and obviousness analysis, the focus should likewise be on 'the overall design' of the patent as compared to the prior art.") (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*,589 F.3d 1233,1239-40 (Fed. Cir. 2009)); *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1355-56 (Fed. Cir. 2003) ("One's own work may not be considered prior art in the absence of a statutory basis."); *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982) ("[d]isclosure to the public of one's own work constitutes a bar to the grant of a patent . . . only when the disclosure occurred more than one year prior to the date of the application"); *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997) ("The publication must show the same subject matter as that of the patent, and must be identical in all material respects."); *Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) ("Our analysis of the patentability of Ecolochem's invention begins with the phrase 'at the time the invention was made.' Here, the date of the invention is presumed to be the filing date of the parent application, December 16, 1983."); *Int'l Seaway Trading*, 589 F.3d at 1340 ("we now conclude that the ordinary observer test must logically be the sole test for anticipation as well"); *In re Paulsen*, 30 F.3d 1475, 1478 (Fed. Cir. 1994) ("the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention"); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233,1239-43 (Fed. Cir. 2009); *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004); *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004) ("Public use under 35 U.S.C. § 102(b) includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.") (citations omitted); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971-72 (Fed. Cir. 1984) ("The plain fact is that the claimed invention was not kept secret. It was open to public observation *without restriction* which is sufficient to constitute 'public use.'") (citations omitted); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1058-59 (Fed. Cir. 1996) (others, "who were under no duty to maintain it as confidential," observed disputed centrifuge); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 38 (N.D. Cal., June 30, 2012) ("Thus, the relevant date for priority under 102(a) is the date of invention, while the relevant date for priority under 102(b) is one year before the application date."); *id.* ("On its face, section 102(a) might include printed publications as prior art, even if a prior publication is the inventor's own work. However, including an inventor's own publications as 1 02(a) prior art would negate the one-year grace period explicitly provided to inventors under 102(b). Therefore, the requirement that prior art be created "by others" applies to "all types of references eligible as prior art under 35 U.S.C. 102(a) including publications as well as public knowledge and use."") (citing *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982), MPEP § 2132); *id.* at 39 ("In this case, the relevant priority date for the D'305 inventors' own work is one year prior to the date of application of the D'305 Patent: June 23, 2006. The January 2007 image publication was not before the priority date, and therefore is not a prior art reference for the D'305.").

## **Samsung's Objection to Apple's Proposed Instruction**

Samsung does not agree to the effective filing dates of the patents where they differ from the actual filing dates, and objects to Apple's proposed final instruction No. 37 on that basis. D'087 and D'677 both claim a priority date based on an earlier application, and Samsung has the right to challenge that priority date at trial. The jury should be told only that the parties agree on the actual filing dates of the patents.  Samsung further objects to Apple's proposed instruction as including misstatements of the law and facts regarding the JP'638 reference, for the reasons set

1   forth in Samsung's objections to Apple's Proposed Final Jury Instruction No. 36, namely that
    neither the Federal Circuit nor this Court has ever said what Apple claims they have regarding the
2   JP'638 reference.  Apple's proposed instruction is also based on the erroneous premise that
    preliminary injunction findings from more than half a year ago are binding at the trial stage. To
3   the contrary, all findings at the preliminary injunction stage, including findings of both fact and
    law, are non-binding at the merits stage.  *See S. Or. Barter Fair v. Jackson County*, 372 F.3d
4   1128, 1136 (9th Cir. 2004); *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352,
    1361 (Fed. Cir. 2002) (noting that the Court was "mindful that all findings of fact and conclusions
5   of law at the preliminary injunction stage are subject to change upon the ultimate trial on the
    merits."); *see also Balboa Instr., Inc. v. Gecko Electronique, Inc.*, 31 F. App'x 658, 661 (Fed. Cir.
6   2002); *N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 707 F. Supp. 2d 520, 541 (D.N.J.
    2010) ("[T]he findings of fact and conclusions of law in a ruling on a preliminary injunction are
7   naturally preliminary in nature and thus do not foreclose any findings or conclusions to the
    contrary in subsequent stages of the litigation").  Apple's proposed instruction also rests on an
8   outdated Federal Circuit case that required an anticipating prior art reference to be "identical in all
    material respects to the overall visual impression of the claimed design."  As Apple's own cited
9   authority shows, however, "the ordinary observer test must logically be the sole test for
    anticipation as well".  *Int'l Seaway Trading v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir.
10  2009).  Apple has also unnecessarily complicated these invalidity instructions by including the
    highly repetitive Instructions No. 36 and No. 37, which will confuse the jury about what prior art
11  references are appropriate and what timing rules apply to them.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 38
DESIGN PATENTS—OBVIOUSNESS**

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Primary/Secondary References Yield A Design That Has Same Overall Visual Impression As Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

A design patent claim is invalid if the claimed design would have been obvious to a designer of ordinary skill in the field at the time the design was made, even if an ordinary observer would not find the design to be substantially the same as a single prior art reference.

The ultimate conclusion of whether a claimed design is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field of the patent at the time the claimed design was made.  In deciding this, you should consider all the evidence from trial, including:

     (1)    the levels of education and experience of persons designing articles in the field;

     (2)    the types of problems encountered in designing articles in the field; and

     (3)    the sophistication of the field.

Second, you must decide the scope and content of the prior art.

Third, you must consider whether Samsung has identified a "primary" prior art reference.  A "primary" reference must depict an actual design which, to a designer of ordinary skill in the field of the patent, is basically the same as the claimed design.

If you identify a primary reference, you must then consider whether Samsung has identified a "secondary" prior art reference that a designer of ordinary skill would use to modify the primary reference.  A "secondary" reference must be so visually related to the primary reference that the appearance of certain ornamental features in the reference would suggest to the designer of ordinary skill the application of those features to the primary reference.

If you identify a primary reference and a secondary reference that could modify it, you then need to determine if the primary reference alone or in combination with one or more secondary references results in a design that, in the eyes of an ordinary observer, has substantially the same overall visual appearance as the claimed design in the patent.

You must perform this analysis for each Apple design patent that Samsung claims was obvious.

The Court has already decided, and I am therefore instructing you, that you may not use the Fidler tablet as a primary reference against the D'889 patent.  The Court has decided, and I am therefore instructing you, that you also may not use the TC1000 tablet as a secondary reference against the D'889 patent.

For each Apple patent, if you find no primary or secondary references, or if you conclude that a primary reference alone or combined with any secondary references does not result in a design with substantially the same overall visual appearance in the eyes of an ordinary observer as the

claimed design, your analysis can stop.  You must conclude that any such Apple design patent is not invalid on obviousness grounds.

Finally, if you conclude that a primary reference alone or in combination with secondary references may result in a design with substantially the same overall visual appearance as the claimed design in the eyes of an ordinary observer, you should then consider any of the following factors that you find have been shown by the evidence.  These factors may indicate that the claimed design would not have been obvious at the time it was made:

> (1) commercial success of products covered by the claimed design due to the appearance of the claimed design;
>
> (2) copying of the claimed design by others;
>
> (3) acceptance by others of the claimed design as shown by praise from others in the field; and
>
> (4) whether others expressed surprise or disbelief regarding the claimed design.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on obviousness or non-obviousness is up to you.

In deciding whether the claimed design was obvious, keep in mind that a design with several features is not obvious merely because each individual feature was present in prior art designs.  You must always be careful not to determine obviousness using the benefit of hindsight.  Many truly novel and non-obvious designs might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed design was made and should not consider what is known today or what is learned from the teaching of the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.7- 9.10; Federal Circuit Bar Association Model Patent Jury Instr. 4.3c.

**Authorities**

35 U.S.C.§ 103; *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329, 1332 (Fed. Cir. 2012) (obviousness analysis requires "a two step process" and must focus on visual appearance, not the "general concept" of a design); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("[T]he ultimate inquiry . . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."); *id.* at 103, quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) ("[O]ne must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'"); *id.*, quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) ("[S]econdary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"); *see also Apple Inc.*, 678 F.3d at 1329-1332 (applying quoted language from *Durling*, *In re Rosen*, and *In re Borden*); *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, Order Denying Motion for Preliminary Injunction, Dkt. No. 452, at 18-24 (N.D. Cal., Dec. 2, 2011); *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 1993); *Int'l Seaway Trading Corp. v. Walgreens Co.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009) ("For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference. Once that piece of prior art has been constructed, obviousness,

like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art."); *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996) (primary and secondary references must be "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other"); *Graham v. John Deere*, 383 U.S. 1, 17 (1966) ("the level of ordinary skill in the pertinent art" is one of "several basic factual inquiries" relating to obviousness); *Continental Can Company USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991) ("It is not necessary, however, that the patented invention be solely responsible for the commercial success, in order for this factor to be given weight appropriate to the evidence."); *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099 (Fed. Cir. 1985) ("That Dennison, a large corporation with many engineers on its staff, did not copy any prior art device, but found it necessary to copy the [patented invention], is equally strong evidence of nonobviousness."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 28-39 (N.D. Cal., June 30, 2012) ("In its recent opinion, the Federal Circuit reiterated the proper analysis for obviousness of design patents. "To determine whether 'one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design, the finder of fact must employ a two step process." *Apple, Inc. v. Samsung Electronics Co. Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012). First, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design." *Durling v. Spectrum Furniture Co.*, Inc., 101 F.3d 100, 103 (Fed. Cir. 1996) (internal quotations and citations omitted). Second, after a primary reference is found, other secondary references "may be used to modify it," but only if "they are so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* (internal quotation marks, citations, and alterations omitted)."); *id.* at 29 (""Once that piece of prior art has been constructed" by one skilled in the art, whether by "combin[ing] earlier references ... or [by] modify[ing] a single prior art reference," only then does "obviousness, like anticipation, require[] application of the ordinary observer test," asking whether an ordinary observer would find the patented design substantially the same as the hypothetical prior art reference. *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009). Additionally, in order to avoid the trap of hindsight bias, one must also take into account "secondary considerations" such as "commercial success, long felt but unsolved needs, [and] failure of others" in order to determine whether the subject matter sought to be patented would have been obvious to one of ordinary skill in the art at the time of invention." *KSR*, 550 U.S. at 406 (citing *Graham*, 383 U.S. at 17-18); *see also Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288 (Fed. Cir. 2002) (secondary considerations apply to design patents)."); *id.* at 30 ("However, the '638 is only a primary reference if it embodies the same 'overall appearance and aesthetic appeal' as the D'087 Patent.") (citing *In re Rosen*, 673 F .2d 3 88, 391 (Fed. Cir. 1982)); *id.* at 32 (similar for D'677 Patent); *id.* at 36 (similar for D'889 Patent); *id.* at 37 ("The jury must apply the ordinary observer test to determine if one would find the patented design substantially the same as the hypothetical prior art reference.") (citing *International Seaway Trading Corp.*, 5 89 F .3d at 1240-41).

## **Samsung's Objection to Apple's Proposed Instruction**

Apple's proposed instruction on obviousness misstates the law. There is no requirement that the designs must look basically the same "to a designer of ordinary skill in the field of the patent," as Apple's instruction reads. *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). The role of the designer skilled in the art comes into play when deciding to combine references, not in observing whether two designs have design characteristics that are basically the same. Also, as explained more fully in Apple's prior proposed instruction regarding anticipation, the Federal Circuit's decisions at the preliminary injunction phase are not binding on the trier of fact at a trial on the merits. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128 (9th Cir. 2004); *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). The jury should therefore not be instructed in any way regarding specific prior art references that were commented on in the preliminary injunction phase, including the 1994 Fidler tablet. This is

1   particularly important here where Apple has simply called it the "Fidler tablet," which could refer
2   to a number of devices or images that were not a part of the Federal Circuit's opinion. Likewise,
    the Federal Circuit opinion does not compel or support Apple's instruction that "you may not use
3   the TC1000 tablet as a secondary reference against the D'889 patent." The Federal Circuit was
    only of the opinion that the TC1000 was not a proper secondary reference *for the 1994 Fidler
4   tablet*. It never stated that the TC1000 could not serve as a secondary reference for any other
    references, and it also never considered whether it could be a primary reference in its own
5   right.  These are just several examples to show that the Federal Circuit did not have all the
    relevant evidence before it that will be available to the jury. Apple's instructions therefore
6   improperly try to interfere with the jury's ability to evaluate *all* the evidence on its own as the
    ultimate trier of fact, free from the influence of non-binding rulings made at the preliminary
7   injunction stage. Apple's secondary considerations also fail to include important disclaimers about
    their relevance and significance, and fail to include ***any*** considerations that are probative of
8   obviousness.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Even if a design is not anticipated by a single reference, it may still be invalid because it was an obvious design at the time it was made. Design patents are not valid when the design is an obvious one. This means that it would have been obvious for a designer of skill in the field to combine or modify earlier designs to arrive at the design in the patent.

In deciding whether any design is invalid because it was obvious at the time it was made, you should analyze whether there are any relevant differences between the prior art and the design from the view of a person of ordinary skill in the art at the time of the invention.

You do not need to look for precise teachings in the prior art directed to the subject matter of the claimed invention. You may take into account the creative steps and inferences that a person of ordinary skill in the art would have employed when viewing the prior art at the time of the invention. For example, if the claimed invention combines elements already known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed design, this evidence would make it more likely that the claimed invention was obvious.

**Source**

AIPLA Model Jury Instruction 7.2; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567-68 (Fed. Cir. 1983); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009) ("Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. §103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of *KSR*."); *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 681-82, 13 S.Ct. 768, 770-71, 37 L.Ed. 606 (1893) ("The presence or the absence of the central open slot was not material, and we do not think that the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common, in itself involved genius or invention, or produced a patentable design… The shape of the front end being old, the sharp drop of the pommel at the rear seems to constitute what was new and to be material. . . . If, therefore, this drop were material to the design, and rendered it patentable as a complete and integral whole, there was no infringement.").

1

**Apple's Objection to Samsung's Instruction**

2

Samsung's proposed instruction is unnecessary because the full, correct legal standard for obviousness is set forth in Apple's instruction No. 38.  Much of Samsung's proposed instruction

3

is inapplicable verbiage directed to utility patents, as Samsung admits in its footnote to No. 38.2. For example, the instruction refers to combinations of known elements that "yielded results that

4

were predictable to a person of ordinary skill in the art."  This language relates to functional motivations and is erroneous in the design patent context, where the focus in the obviousness

5

analysis must be on ornamental appearances, not uses, and the designer of ordinary skill in the art must find a suggestion to combine primary and secondary references in the visual similarity

6

of the prior art designs.  *See In re Harvey*, 12 F.3d 1061, 1063 (Fed Cir. 1993); *Apple Inc. v. Samsung Elecs. Co.*, No. 2012-1105, 2012 U.S. App. LEXIS 9720, at *36-37 (Fed. Cir. May 14,

7

2012).  Moreover, Apple's proposed instruction No. 38 is more appropriate as it provides sequenced guidance for the design patent obviousness analysis in a single instruction, rather than

8

multiple, out of sequence instructions proposed by Samsung.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 38.1**
**DESIGN PATENT OBVIOUSNESS—PRIMARY AND SECONDARY REFERENCES**

**Samsung's Proposed Instruction**[9]

Even if a design is not anticipated by a single reference, it may still be invalid because it was an obvious design at the time it was made.  Design patents are not valid when the design is an obvious one.  This means that it would have been obvious for a designer of skill in the field to combine or modify earlier designs to arrive at the design in the patent.

There are several steps you have to take in determining that a design patent is invalid because it is obvious.

First, you have to find that there is a prior art reference that has basically the same design as the one in the patent.  This is called a primary reference.  The primary reference does not have to be deceptively similar to the design in the patent, since that is a higher standard.

If you find that there is a primary reference for the patent, the next step is to find one or more secondary references that are similar in appearance to the primary reference such that the appearance of ornamental features in one would suggest application of those features to the other.  If you find that there are one or more such secondary references, the features of those references can be used to modify the primary reference to look more like the patented design.

Finally, you must decide whether this combined obviousness reference is substantially the same as the design in the patent using the standard of deceptive similarity you used for infringement and anticipation.

Samsung must prove obviousness by clear and convincing evidence.

**Source**

*In re Rosen*, 673 F.2d 388, 390 (C.C.P.A. 1982); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("More specifically, the inquiry is whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design."); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384-85 (Fed. Cir. 2009) ("Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. §103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR."); *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) ("For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference.  Once that piece of prior art has been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art.").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction contains a number of misstatements regarding the law and should be rejected in favor of Apple's instruction No. 38, which covers the same ground.  First, Samsung omits the requirement that a primary reference must appear "basically the same" *in the*

---

[9] Samsung offers this instruction on obviousness as an alternative in the event the prior obviousness instruction based on *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007), is not accepted by the Court.

1   *eyes of the designer of ordinary skill in the art.*  *Int'l Seaway Trading Corp. v. Walgreens Corp.*,

2   589 F.3d 1233, 1240 (Fed. Cir. 2009).  Second, Samsung repeatedly refers to "deceptive"
    similarity, which is not the correct test for infringement or anticipation.  (*See* Apple objection to

3   Samsung's proposed instruction No. 36.1.)  Third, Samsung's instruction mischaracterizes the
    requisite visual similarity between primary and secondary references by dropping the word "so"

4   from the test, such that it misleadingly reads "secondary references that are similar in appearance
    to the primary reference such that the appearance of ornamental features in one would suggest

5   application of those features to the other."  *Cf. In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)
    (primary and secondary references must be "so related that the appearance of certain ornamental

6   features in one would suggest the application of those features to the other").  Moreover, Apple's
    proposed instruction No. 38 is more appropriate as it provides sequenced guidance for the design

7   patent obviousness analysis in a single instruction, rather than multiple, out of sequence
    instructions proposed by Samsung.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 38.2**
**DESIGNER OF ORDINARY SKILL IN THE ART**

2

3

**Samsung's Proposed Instruction**

4

The determination of whether a claimed design is obvious is based on the perspective of the ordinary designer skilled in the art.  The ordinary designer skilled in the art is presumed to be familiar with all of the prior art designs that you have determined to be reasonably relevant.

5

6

A designer of ordinary skill in the art is a designer of ordinary capabilities in the field of electronic products.  Such a person would have an undergraduate degree in a discipline such as engineering or industrial design, and about 1-2 years of experience in designing electronic devices.  Alternatively, a designer in academia who taught industrial design students the design of electronic devices would also be identified as a designer skilled in the art.

7

8

**Source**

9

*KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007): *Titan Tire Corp v. Case New Holland, Inc.*, 566 F.3d 1372, 1380-81 (Fed. Cir. 2009); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

10

11

12

**Apple's Objection to Samsung's Instruction**

13

Samsung's proposed instruction attempts to usurp the jury's fact finding regarding the level of ordinary skill.  *Graham v. John Deere*, 383 U.S. 1, 17 (1966) ("the level of ordinary skill in the pertinent art" is one of "several basic factual inquiries" relating to obviousness).  Moreover, Samsung's instruction misstates the law when it says that "[t]he determination of whether a claimed design is obvious is based on the perspective of the ordinary designer skilled in the art." As correctly set forth in Apple's instruction No. 38, the obviousness inquiry involves both the ordinary designer (in identifying primary and secondary references) and the ordinary observer (in the final step of comparing the combined reference with the patented design).  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed Cir. 2009).  Apple also contests the standard set forth by Samsung:  a degree in engineering would not qualify one as a designer of ordinary skill, nor would merely serving in academia.  Moreover, Apple's proposed instruction No. 38 is more appropriate as it provides sequenced guidance for the design patent obviousness analysis in a single instruction, rather than multiple, out of sequence instructions proposed by Samsung.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 38.3
DESIGN PATENT OBVIOUSNESS—SECONDARY FACTORS INDICATING
NONOBVIOUSNESS**

### Samsung's Proposed Instruction

Before deciding the issue of obviousness, you must consider other factors that might show that the designs were not obvious despite the prior art.  You may only consider those factors that Apple has established through evidence admitted at trial.  No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the claimed design as a whole.  Here are the questions you should ask:

1       If there were products embodying the claimed designs that were commercially successful, was that success due to the claimed design, or was the success instead due to other factors such as the technology and usefulness of the Apple devices, advertising, promotion, salesmanship, the Apple ecosystem, or any other features of the devices besides the design claimed in the design patents?

2       Was there a long felt need for the specific look or claimed design of the Apple patents?

3       Did others try, but fail to create the claimed design?

4       Did others copy the claimed design?  Where parties have a practice of marketing very similar products, however, evidence of copying is not a strong indicator of nonobviousness, but rather a measure of the extent to which parties in the market typically follow developments by their competitors, whether patented or not.

5       Did the claimed design achieve an unexpectedly superior appearance over the closest prior art?  Remember again that this refers only to the ornamental appearance of the design, not its functional features.

6       Did others in the field praise the claimed design or express admiration for the claimed design?  For patents that do not claim the entire design of the device, any praise must be directed to the specific designs that are claimed in the patent.

7       Did others accept licenses under the D'667, D'087, D'035 or D'889 design patents?

### Source

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966); *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988); *see also Jore Corp. v. Kouvato, Inc.*, 117 Fed. Appx. 761, 765, 2005 WL 27553 (Fed. Cir. 2005); *Kwik-Site Corp. v. Clear View Mfg. Co., Inc.*, 758 F.2d 167, 173 (Fed. Cir. 1985); *Wrigley v. Cadbury*, 2011-1140, 2012 U.S. App. LEXIS 12834, *19 (Fed. Cir. June 22, 2012).

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction includes a number of argumentative statements that are not supported by law.  First, Samsung's sub-instruction (1) is misleading as it suggests that the patented invention must be the sole cause of commercial success.  *Continental Can Company USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991) ("It is not necessary, however, that the patented invention be solely responsible for the commercial success, in order for this factor to be given weight appropriate to the evidence.").  It also wrongly suggests that advertising and promotion related to patented features would be irrelevant.  Second, Samsung's

1   sub-instruction (4) goes far beyond the law to excuse Samsung's copying and eliminate the
2   relevance of this factor. *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099 (Fed. Cir.
    1985) ("That Dennison, a large corporation with many engineers on its staff, did not copy any
3   prior art device, but found it necessary to copy the [patented invention], is equally strong
    evidence of nonobviousness."). Samsung's sub-instructions (2), (3), (5), and (7) also refer to
4   factors that are not at issue in this case and that will likely confuse the jury. Moreover, Apple's
    proposed instruction No. 38 is more appropriate as it provides sequenced guidance for the design
5   patent obviousness analysis in a single instruction, rather than multiple, out of sequence
    instructions proposed by Samsung.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 39
## DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—The Court Will Instruct The Jury On Whether There Are Functional Elements In The Design Patents—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture.  If Samsung proves it is highly probable that the overall appearance of an Apple patented design is dictated solely by how the article claimed in the patent works, the patent is invalid because the design is not "ornamental."

When deciding this, you should keep in mind that design patents must be for articles of manufacture, which by definition have inherent functional characteristics.  It is normal that claimed designs perform some function – that does not disqualify them from patent protection.  Likewise, that features of a design may enhance the user's experience does not necessarily mean that the patented design was dictated solely by function.

The question is whether any general functional characteristics in a patented design can only be embodied by that design, or whether they can be embodied by other designs.  The existence of alternate designs that perform substantially the same function may be strong evidence that the design is not dictated solely by function.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.11.

**Authorities**

35 U.S.C. § 171 (A design patent may be granted for any "new, original and ornamental design for an article of manufacture."); *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("A design patent is directed to the appearance of an article of manufacture.  An article of manufacture *necessarily serves a utilitarian purpose*, and the design of a useful article is deemed to be functional when *the appearance of the claimed design is 'dictated by'* the use or purpose of the article.") (emphasis added); *id.* ("[T]he ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article."); *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Denying Motion for Preliminary Injunction, Dkt. No. 452, at 13 (N.D. Cal., Dec. 2, 2011)  ("The standard . . . requires that the design itself be *dictated by* the functionality of the item.  Just because various elements of Apple's D'677 and D'087 patents *enhance* the user experience does not necessarily mean that the patented design is *dictated by* functionality."); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("A design is not dictated solely by its function when alternative designs for the article of manufacture are available.") (citation omitted); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999) ("The "ornamental" requirement of the design statute means that the design must not be governed solely by function, *i.e.,* that this is not the only possible form of the article that could perform its function.  A design patent is for a useful article, but patentability is based on the design of the article, not the use. The design may contribute distinctiveness or consumer recognition to the design, but an absence of artistic merit does not mean that the design is purely functional.") (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed.Cir.1993)); *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460-61 (Fed. Cir. 1997); *id.* at 12-15; *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) (the lower court "erred in its analysis by

1  failing to return to the overall appearance after purportedly analyzing each of the elements of the
   design"); *PHG Technologies, LLC v. St. John Co., Inc.*, 469 F.3d 1361, 1366-1367 (Fed. Cir.
2  2006).

3

4  **Samsung's Objection to Apple's Proposed Instruction**

5  Apple's proposed instruction misleadingly omits the factors spelled out by the Federal Circuit for
   determining whether a design patent is invalid as functional. *See, e.g.*, *PGH Technologies, LLC v.
6  St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) ("Our cases reveal a 'list of
   ...considerations for assessing whether the patented design as a whole—its overall appearance—
7  was dictated by functional considerations,' including: whether the protected design represents the
   best design; whether alternative designs would adversely affect the utility of the specified article;
8  whether there are any concomitant utility patents; whether the advertising touts particular features
   of the design as having specific utility; and whether there are any elements in the design or an
9  overall appearance clearly not dictated by function." (quoting *Berry Sterling Corp. v. Pescor
   Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)). Apple's equivocal statement that a patented
10 design is not necessarily dictated solely by function where features of the "design may enhance
   the user's experience" conflicts with the Federal Circuit's criterion that asks "whether alternative
11 designs would adversely affect the utility of the specified article." *Id.* If the supposedly
   "ornamental" design features of Apple's patents are affecting the utility of the article, for example
12 by enhancing the user's experience, that is an indication that the design is functional. Instructing
   jurors to the contrary is improper. Finally, Apple says that "[t]he existence of alternate designs
13 that perform substantially the same function may be strong evidence that the design is not dictated
   solely by function." The instruction gives no guidance as to what it means to "perform
14 substantially the same function." Indeed, the Federal Circuit has strict guidelines for what
   constitutes a true alternative under the law: "Our case law makes clear that a full inquiry with
15 respect to alleged alternative designs includes a determination as to whether the alleged
   alternative designs would adversely affect the utility of the specified article, such that they are not
16 truly 'alternatives' within the meaning of our case law." In other words, simply because a different
   design can perform the same type of function does not make it an "alternative" if the utility of the
17 article is adversely affected by the different design. It needs to be able to perform the same
   function *at the same level of utility*. Samsung's Alternative to Apple's Proposed Final Instruction
18 No. 39 is preferable because it offers the full list of criteria from Federal Circuit case law. It also
   notes that invalidity can be due to overall functionality, or the functionality of all the individual
19 features of the design. *Id.* at 1366 (inquiring "whether there are any elements in the design *or an
   overall appearance clearly not dictated by function*"); *see also Power Controls Corp. v.
20 Hybrinetics, Inc.*, 806 F.2d 234, 239, 231 USPQ 774, 777-78 (Fed. Cir. 1986) (finding that
   testimony from an inventor as to the functionality of each feature of a patented design is evidence
21 of the functionality of the patented design); *Five Star Manufacturing, Inc. v. Ramp Lite
   Manufacturing, Inc.*, 4 F. App'x. 922, 2001 WL 120070 (Fed. Cir. Feb, 12, 2001) (upholding
22 invalidity verdict based on "evidence that each element of the patented design serve[d] a
   functional, rather than ornamental, purpose."). Also, contrary to Apple's statement that the jury
23 should not be instructed on this issue, whether a design is functional or ornamental is a question
   of fact. *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460, 43 USPQ2d 1887, 1890 (Fed. Cir.
24 1997); *accord Five Star*, 4 F. App'x. at 924.

25

26

27

28

1

**Samsung's Proposed Instruction**

As I mentioned in Instruction No. 34.5, design patents protect the ornamental appearance of an article of manufacture, not the functionality of the article.  You'll remember that when you determine infringement, you have to ignore any features that are functional and compare only the ornamental features.  When determining invalidity, you have to decide if the design as a whole is functional rather than ornamental.  In determining whether the overall design is functional, the functionality of each of the various elements that comprise the patented design may be relevant.

You should consider the following criteria in deciding whether any of the designs in Apple's patents are functional, and are therefore ineligible for design patent protection:

1.  Whether the design in the patent represents the best design

2.  Whether alternative designs would adversely affect the usefulness of the article

3.  Whether there are any utility patents related to the same article

4.  Whether there is any advertising touting particular features of the design as having specific usefulness

5.  Whether there are any elements in the design that are purely ornamental

Samsung must prove that the D'667, D'087, D'035 or D'889 design patent claims are functional by clear and convincing evidence.

**Source**

35 U.S.C. §171 (a design patent may be granted for any "new, original and ornamental design for an article of manufacture."); *PGH Technologies, LLC v. St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) ("Our cases reveal a 'list of ... considerations for assessing whether the patented design as a whole—its overall appearance—was dictated by functional considerations,' including: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997)); *id.* at 1367 ("Our case law makes clear that a full inquiry with respect to alleged alternative designs includes a determination as to whether the alleged 'alternative designs would adversely affect the utility of the specified article,' such that they are not truly 'alternatives' within the meaning of our case law."); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010); *Five Star Manufacturing, Inc. v. Ramp Lite Manufacturing, Inc.*, 4 Fed.Appx. 922, 2001 WL 120070 (Fed. Cir. Feb, 12, 2001) ("The design of a utilitarian article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article.  *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed.Cir.1993). While the functionality of each of the various elements that comprise the patented design may be relevant, the ultimate question is whether the claimed design, viewed in its entirety, is dictated by the utilitarian purpose of the article.  *Id.; see also Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 239, 231 USPQ 774, 777-78 (Fed.Cir.1986) (finding that testimony from an inventor as to the functionality of each feature of a patented design is evidence of the functionality of the patented design).").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and misleading in several ways.  First, as the Court previously recognized, the test for whether a patent is invalid for lack of ornamentality is

1   whether the overall appearance is "dictated by" function.  Dkt. No. 452 at 13; *L.A. Gear, Inc. v.*
2   *Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).  Samsung's instruction, which
    merely describes the test as one of "functionality," is misleading as the article of manufacture
3   claimed by a design patent can serve a function so long as the design is not "dictated by"
    function.  *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).  Samsung's
4   instruction also is incomplete.  It instructs the jury that "the functionality of each of the various
    elements that comprise the patented design may be relevant," but fails to instruct the jury to
5   "return to the overall appearance after . . . analyzing each of the elements of the design."  *See*
    *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) (the lower
6   court "erred in its analysis by failing to return to the overall appearance after purportedly
    analyzing each of the elements of the design").  It is black letter law that a design can be invalid
7   for lack of ornamentality only if the "overall design" is "dictated by" function.  *L.A. Gear*, 988
    F.2d at 1123 ("[T]he ultimate question is not the functional or decorative aspect of each separate
8   feature, but the overall appearance of the article, in determining whether the claimed design is
    dictated by the utilitarian purpose of the article.").  Samsung's list of criteria for determining
9   whether Apple's patents are functional is also wrong and extraneous.  For instance, Samsung lists
    "[w]hether the design in the patent represents the best design," but this factor is vague and
10  meaningless without providing any definition of what constitutes a "best design."  Samsung also
    inappropriately includes the consideration of "[w]hether alternative designs would adversely
11  affect the usefulness of the article," but the correct consideration is if "alternative designs for the
    article of manufacture are available."  *See Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563,
12  1566 (Fed. Cir. 1996) ("A design is not dictated solely by its function when alternative designs
    for the article of manufacture are available.") (citation omitted).  To the extent that Samsung
13  purports to rely on *PHG Tech., Inc. v. St. John Co.*, 469 F.3d 1361, 1366 (Fed Cir. 2006), and its
    quote from the *Berry Sterling Corp.* case for this list of criteria, Samsung's instruction is
14  misleading and incorrect.  First of all, the *Berry Sterling Corp.* opinion states that it is a list of
    factors that *might* be considered, clearly indicating that all of these factors may not be applicable
15  in every case; Samsung, however, converts this permissive list into a mandatory "should
    consider" list.  Samsung has also rewritten these possible considerations.  For instance,
16  Samsung's instructions states "[w]hether there are any elements in the design that are purely
    ornamental" but the actual test from *PHG* is whether there are any elements in the design "*clearly*
17  not dictated by function."  *Id.* (emphasis added).  Also, Samsung incorrectly recites the criteria of
    "[w]hether there are any utility patents related to the same article."  This is wrong and, again,
18  potentially misleading.  For instance, with respect to this case, the asserted utility patents are
    practiced by Apple's products and thus are "related to the same article," but have no bearing on
19  the whether the asserted designs are dictated by function.  Apple's corresponding instruction,
    No. 39, is a concise and accurate statement of the test for invalidity due to lack of ornamentality,
20  tracking The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions.  It
    correctly states that the test is whether the design is dictated by function.  *L.A. Gear*, 988 F.2d at
21  1123.  It also accurately reflects the role of alternative designs in this analysis: they are strong
    evidence that the design is not dictated by function.  *See Best Lock*, 94 F.3d at 1566.

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 39.1
DESIGN PATENT—DRAWINGS**

**Samsung's Proposed Instruction**

The necessity for good drawings in a design patent application cannot be overemphasized. As the drawing constitutes the whole disclosure of the design, it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture. The reason for this is that patents are property rights and the public deserves to know what is covered by the patent and what is not.

**Source**

35 U.S.C. §112; MPEP 1503.02.

**Samsung's Statement in Support**

This short instruction introduces the instruction on indefiniteness and tracks the language of the Manual of Patent Examining Procedure. It also identifies the enablement requirement that design patents share with utility patents. MPEP § 1503.02 ("The necessity for good drawings in a design patent application cannot be overemphasized. As the drawing constitutes the whole disclosure of the design, it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture.")

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is plainly tied to its indefiniteness defense. As indefiniteness is a legal issue for the Court, this instruction is unnecessary. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (determining whether a patent complies with 35 U.S.C. § 112(2) presents a question of law "that is drawn from the court's performance of its duty as the construer of patent claims"); *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (same); *Personalized Media Communs., L.L.C. v. ITC*, 161 F.3d 696, 702-03 (Fed. Cir. 1998) (same); *Accentra Inc. v. Staples, Inc.*, Case No. CV 07-5862 ABC (RZx), 2011 U.S. Dist. LEXIS 154692, at *9-10 (C.D. Cal. Dec. 19, 2011) ("Indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims, *not a question for the jury*.") (internal quotations omitted, emphasis added). Furthermore, that Samsung's proposed instruction tracks the language of the MPEP is immaterial. The MPEP is written for patent examiners, not for lay jurors in civil suits.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 39.2
DESIGN PATENT INVALIDITY—INDEFINITENESS**

2

3

**Samsung's Proposed Instruction**

4

Where a design patent includes ambiguities, inconsistencies, or features that are not readily
understandable or could cause confusion, the design is likely indefinite.  For example, lack of
appropriate surface shading in the drawing as filed may render the design indefinite.  You must
determine whether the Apple patents are indefinite such that they would not enable a designer
skilled in the art to make the designs without having to guess at what is claimed in the patent
drawings.

5

6

7

**Source**

8

35 U.S.C. §112; MPEP 1503.02.

9

10

**Apple's Objection to Samsung's Instruction**

11

Samsung's proposed instruction is unnecessary as indefiniteness is a legal issue for the Court;
this instruction should not be given.  *Exxon Research & Eng'g Co. v. United States*, 265 F.3d
1371, 1376 (Fed. Cir. 2001) (determining whether a patent complies with 35 U.S.C. § 112(2)
presents a question of law "that is drawn from the court's performance of its duty as the
construer of patent claims") *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374,
1378 (Fed. Cir. 1999) (same); *Personalized Media Communs., L.L.C. v. ITC*, 161 F.3d 696, 702-
03 (Fed. Cir. 1998) (same); *Accentra Inc. v. Staples, Inc.*, Case No. CV 07-5862 ABC (RZx),
2011 U.S. Dist. LEXIS 154692, at *9-10 (C.D. Cal. Dec. 19, 2011) ("Indefiniteness is a legal
conclusion that is drawn from the court's performance of its duty as the construer of patent
claims, *not a question for the jury*.") (internal quotations omitted, emphasis added).  Samsung
also misstates the law so as to lower the threshold for indefiniteness to "not readily
understandable or could cause confusion."  *See Novo Indus., L.P. v. Micro Molds Corp.*, 350
F.3d 1348, 1353 (Fed. Cir. 2003) (a claim is not indefinite unless "reasonable efforts at claim
construction prove futile" and "it is 'insolubly ambiguous' and not 'amenable to construction'").
Finally, Samsung fails to cite any authority for its contention that "lack of appropriate surface
shading … may render the design indefinite."

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 39.3
## DESIGN PATENT INVALIDITY—DOUBLE PATENTING

2

### Samsung's Proposed Instruction

3

4

If an inventor obtains a second patent for a design that is already covered by a former patent, the second patent is invalid. This is especially true where the patents are issued to the same inventor or inventors. To be valid, the invention in the second patent has to be distinctly different and independent from the design in the first patent. The difference cannot be a mere distinction in the breadth or scope of the claim. In other words, the second patent cannot simply be a broader, more generic version of the earlier patent. Also, it is the date the patents issue and not the date they were filed that determines priority for patents issued to the same inventor for the same invention.

5

6

7

### Source

8

9

10

11

35 U.S.C. 171 ("Whoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor"); *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 198 (1894) ("[N]o patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character, than the specific claims, contained in the prior patent, is also void.").

12

13

### Apple's Objection to Samsung's Instruction

14

15

16

17

18

19

20

Samsung's proposed instruction is extraneous because Samsung has not properly disclosed any theory of double patenting in this case—not in its answer, nor in its expert reports. The only timely disclosure by Samsung is a vague mention in an interrogatory response that Apple's patents are "invalid for double patenting," without identifying which earlier patents allegedly created a double patenting issue. With no adequate, timely disclosure of this defense, and without any expert testimony supporting it, this instruction should not be given. Furthermore, Samsung's proposed instruction entirely misstates the law of double patenting with its vague and incorrect references to a requirement for "distinctly different and independent" inventions that are not merely "broader, more generic" versions of the earlier patent. *See In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985) (describing "same invention" type double patenting as relating to "an invention drawn to identical subject matter" and "obviousness type" double patenting as relating to "an obvious modification of the same invention"); MPEP 804. There is also no legal support for the proposition that the double patenting defense is "especially true where patents are issued to the same inventor or inventors."

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 40**
**DESIGN PATENT DAMAGES—BURDEN OF PROOF**

**Apple's Proposed Instruction**

I will instruct you about the measure of damages for infringement of Apple's design patents.  By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that Samsung infringed any valid Apple design patent, you must then determine the money damages to award Apple.  The amount of those damages must be adequate to compensate Apple for the infringement.  Apple seeks a mix of three different forms of damages:  its own lost profits, Samsung's profits, and a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Subject to certain exceptions I will mention, Apple has the burden to persuade you of the amount of its damages.  You should award Apple only those damages that it proves are more likely than not appropriate under the instructions I will soon give you.  While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Apple is not entitled to damages that are remote or speculative.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

**Authorities**

35 U.S.C. § 284; 35 U.S.C. § 289; *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) *(en banc).* IPO Model Design Patent Jury Instructions 10.5 and 10.8 (making clear that election of remedies is as to "each infringing sale" – each "sale of the article to which the patented design is applied."); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-92 (Fed. Cir. 2002).

**Samsung's Objection to Apple's Proposed Instruction**

Apple improperly splits the instructions for utility patent and design patent damages.  Apple does not and cannot cite any authority supporting this.  The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury.  A confusing or misleading jury instruction is improper.  *Gracie v. Gracie,* 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury).  In addition, Apple's proposed instruction uses prejudicial language that assumes Samsung has infringed its patents.  This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and against Samsung.  Such biased language is inappropriate in a jury instruction.  1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.); *see also United States v. Hach,* 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and combative instructions); *United States v. Matias,* 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).  Apple's proposed instruction also fails to mention its burden of proof by a preponderance of the evidence.  It also does not address the requirement that Apple make an election for either actual damages or Samsung's profits, as recognized even in the IPO Model Design Patent Jury Instruction, which Apple-affiliated attorneys helped create prior to this case.  *See id.* ("A plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in a design patent case can elect to prove either actual damages, known as compensatory damages, or they may elect to prove the defendant's profits as its measure of potential recovery.") On the contrary, it misleadingly implies that Apple may obtain both remedies.  No court has ever allowed what Apple proposes here—to split its recovery between actual damages as lost profits under Section 284 and infringer's profits under Section 289.  Also,  the phrase "subject to certain exceptions" is misleading because the ultimate burden of proving its damages rests with Apple. Thus, Apple's proposed instruction should be rejected as incomplete, legally inaccurate, and skewed in favor of Apple, and is not supported by persuasive authority.

**Samsung's Proposed Instruction**

I will instruct you about the measure of damages for patent infringement. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that the alleged infringer infringed any valid claim of a patent, you must then determine the amount of money damages to be awarded to the patent holder (to compensate it for the infringement. You should evaluate damages separately for each party you find to have infringed.

The amount of those damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Each patent holder has the burden to persuade you of the amount of its damages. You should award only those damages that the patent holder proves it suffered by a preponderance of the evidence. While the patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. The patent holder is not entitled to damages that are remote or speculative.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.1 (modified).

**Apple's Objection to Samsung's Instruction**

Apple's and Samsung's instructions differ in three ways. First, Samsung's proposed instruction does not accurately state the law. Samsung's inclusion of the last sentence in the first paragraph—"You should evaluate damages separately for each party you find to have infringed, and may not award more than the patent holder seeks"—deviates from the model instruction and is incorrect. The jury is not limited by Apple's request for relief, but may award damages consistent with the law and the facts of the case. Second, Apple's and Samsung's instructions differ in that Samsung seeks to instruct on both design and utility patents in a single set of instructions. This instruction here is the first in Samsung's damages sequence, and Samsung intends its sequence to apply to both utility and design patents. Apple divides them for two reasons. In light of the difference in remedies—in particular, the availability of remedies under 35 U.S.C. § 289, in the case of design patents—it makes more sense to treat utility and design patent damages separately. Further, it will be easier for the jury to delve into and address all of the utility liability and damages issues together before it has to address design patents. Under Apple's approach, the jury can decide the utility case and then move forward to the design patent issues, rather than fracturing its analysis between the two. Apple's approach results in very little expansion in the number of instructions because Apple's instructions refer back to the prior utility instructions. Apple believes this to be more logical and easier to understand for the jury. Third, on top of the greater efficiency to Apple's approach, Samsung's proposed instruction erroneously includes a sentence that points away from Apple's right to recover Samsung's profits under 35 U.S.C. § 289. Specifically, Samsung's instruction states: "A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty." This statement, while applicable to a recovery of lost profits or reasonable royalty under 35 U.S.C. § 284 and taken from the Northern District model, is inaccurate as it applies to this case, because Apple is also seeking infringer's profits under 35 U.S.C. § 289. Infringer's profits do not put the patent holder in the same financial position that would have occurred without the infringement. The sentence is unnecessary and is likely to confuse the jury in the unique context of this case. Apple's instruction removes this sentence as it applies to

1   infringement of the design patents.  *See* Apple's Proposed Instruction No.40.  Because Samsung
2   intends this instruction to apply to both design and utility patent infringement, it is incorrect.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 41
## DESIGN PATENT DAMAGES—LOST PROFITS

2

3

**Apple's Proposed Instruction**

4   In this case, Apple seeks to recover its own lost profits for some of Samsung's sales of its
infringing products.  To recover lost profits for infringing sales, Apple must show that but for
Samsung's infringement there is a reasonable probability that Apple would have made sales that
Samsung made of the infringing products.  Apple must show the share of Samsung's sales that it
would have made if the infringing Samsung products had not been on the market.

5

6

7   In assessing Apple's right to recover lost profits for Samsung's infringement of its design patents,
you should apply the same rules I already explained in the context of lost profits for infringement
of Apple's utility patents.  Those Instructions are set out in Jury Instructions Nos. _____.

8   Wherever in those Instructions I referred to Apple's utility patents, you should now focus on
Apple's design patents.  Wherever in those Instructions I referred to the patented invention, you
should now focus on the patented design.  Wherever in those Instructions I referred to patented

9   products or products covered by a patent claim, you should now focus on products or articles that
use or embody the patented design.

10

11   **Source**

12   Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

13   **Authorities**

14   *Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 502-07 (1964);
*Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Cent. Soya Co. v. Geo.*

15   *A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*,
718 F.2d 1056, 1065 (Fed. Cir. 1983); *EEricsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79

16   (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003);
*Gargoyles, Inc. v. U.S.*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery*

17   *and Pro Line*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*,
735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575

18   F.2d 1152, 1156 (6th Cir 1978); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.* , 1 F.3d 1214,
1218 (Fed. Cir. 1993) ("[T]he Panduit test is an acceptable, though not an exclusive, test for

19   determining 'but for' causation"); *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d
1314, 1330 (Fed. Cir. 2009) ("All that the first [ *Panduit* ] factor states, and thus requires, is

20   demand for the patented product….  [T]he first Panduit factor simply asks whether demand
existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that

21   'directly competes with the infringing device.'"); *Aro Mfg. Co. v. Convertible Top Replacement
Co. Inc.*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46

22   (Fed. Cir. 2003); *Cent. Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir.
1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Am. Seating Co.*

23   *v. USSC Group*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[B]uyers must view the substitute as
equivalent to the patented device.");. *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d

24   1360, 1373 (Fed. Cir. 1991) ("A product on the market which lacks the advantages of the
patented product can hardly be termed a substitute acceptable to the customer who wants those

25   advantages. *Id. See also Panduit*, 575 F.2d at 1162, 197 USPQ at 734. Accordingly, if purchasers
are motivated to purchase because of particular features available only from the patented product,

26   products without such features -- even if otherwise competing in the marketplace -- would not be
acceptable noninfringing substitutes."); *Smithkline Diagnostics, Inc. v. Helena Laboratories*

27   *Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991) ("If purchasers are motivated to purchase because of
particular features of a product available only from the patent owner and infringers, products

28   without such features would obviously not be acceptable noninfringing substitutes. *TWM Corp.*,

789 F.2d at 901-02, 229 U.S.P.Q. at 529. On the other hand, if the realities of the market are that others would likely have captured sales made by the infringer, despite a difference in the products, it follows that the 'but for' test is not met."); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("[T]he *Panduit* test is an acceptable, though not an exclusive, test for determining 'but for' causation."); *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999) (a non-infringing replacement product is not considered a substitute unless it is "acceptable to all purchasers of the infringing product"); *id.* at 1349 ("When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. *Cf. Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. *Cf. id.* Mere speculation or conclusory assertions will not suffice to overcome the inference."); *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578 (Fed. Cir. 1992) (affirming defendant failed to establish a "commercially acceptable" noninfringing alternative); *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010) (finding defendant's "capacity to 'implement' noninfringing alternatives during the period of alleged infringement" relevant to whether non-infringing alternatives were available).

**Samsung's Objection to Apple's Proposed Instruction**

Apple improperly splits the instructions for utility patent and design patent damages. Apple does not and cannot cite any authority supporting this. The model instructions make no such distinction, and splitting the two is both inefficient and likely only to confuse the jury. A confusing or misleading jury instruction is improper. *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (explaining that the Court of Appeals examines jury instructions for, among other things, whether they confuse the jury). The instructions are already over 200 pages and splitting utility and design patent damages instructions will only lengthen them. Although Apple claims the proposed instruction was "adapted" from Model Patent Jury Instruction B.5.2, it deleted language that might be disadvantageous to Apple. Specifically, Apple chose not to include the following passage from Model Instr. B.5.2: "You must allocate the lost profits based upon the customer demand for the patented feature of the infringing [product] [method]. That is, you must determine which profits derive from the patented invention that [alleged infringer] sells, and not from other features of the infringing [product] [method]." Obviously, this "modification" of the Model Instruction is not to fit any unusual and unique fact pattern, but instead just to make the instruction more favorable to Apple. Samsung's Alternative Instruction more closely adheres to the pattern instruction. *Brown v. Greene*, 577 F.3d 107, 113 (2d Cir. 2009) ("[W]e repeat our suggestion that trial judges should use the model jury instructions when applicable . . . . We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.") (citing *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913-14 (2d Cir. 1984) ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations upon it.")) (internal quotation omitted); *United States v. Wilson-Garcia*, 2012 WL 226032 (W.D. Pa. Jan. 25, 2012) ("It is axiomatic that "trial judges should use the model jury instructions when applicable."). In addition, Apple employs prejudicial language that assumes Samsung has infringed its patents, such as "Samsung's sale of its infringing products," "Samsung's infringement of its design patents," and "Samsung's infringement." This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to Samsung. Finally, Apple's instruction fails to take into account that there are several separate and independent individual defendants.

**Samsung's Proposed Instruction**

In this case, Apple seeks to recover lost profits for some of Samsung's sales of certain products. Samsung does not seek to recover lost profits for Apple's sales of allegedly infringing products.

To recover lost profits for infringing sales, Apple must show that, but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America made of each allegedly infringing product. Apple must show the share of Samsung's sales of each product that it would have made if the allegedly infringing product had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature or design of each of the allegedly infringing products. That is, you must determine which profits derive from the patented invention or design that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America allegedly sells, and not from other features of these allegedly infringing products.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.2 (modified).

**Apple's Objection to Samsung's Instruction**

The last paragraph of Samsung's instruction is not a proper statement of the law, particularly where, as here, the parties and the parties' experts are applying the *Panduit* factors to determine Apple's lost profits. The last sentence of the instruction more properly addresses concerns arising where *Panduit* is not being applied or when the "entire market value" rule is being separately invoked. The language derives from *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating and remanding lost profits award for entire value of a device containing a first component embodying a first patent, found infringed, as well as a second component embodying a second patent, found not infringed, where profits could fairly be allocated to customer demand for second component). The Federal Circuit has since held that this rule does not apply where, as here, lost profits are evaluated under the Panduit factors. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 567 F.3d 1314, 1331 (Fed. Cir. 2009) ("Medtronic's reliance on Ferguson fares no better. *Ferguson* dealt with lost profits under the 'entire market value' rule . . . In the present case, Medtronic challenges the lost-profits award for [the infringing products] under the *Panduit* factors, not under the 'entire market value' rule."). The distinction is important. *Panduit* separately addresses the need to tailor a lost profit award to the specifics of the claimed technology through a robust evaluation of what non-infringing alternatives were available, when they were available and how they would affect the market. This approach inherently reallocates sales in light of the availability of non-infringing technology and thus accounts for consumer demand for patented as compared to the non-patented features. This is consistent with and required by the Federal Circuit's decision in *DePuy Spine*, which as the Court already recognized, focuses initially on the patented product and not on the specific patented features. (Dkt. No. 1157) ("*DuPuy* made it very clear that, while evidence of demand for the patented feature "goes to the availability of acceptable noninfringing substitutes under the second *Panduit* factor," under the first *Panduit* factor, the patentee need not show demand for a particular feature to establish demand for a patented product."). If used as a whole, Samsung's proposed instructions would suggest that the jury reevaluate and reallocate based on the demand for the technology at least three times, in connection with this instruction, in the first factor of Panduit and finally when evaluating non-infringing alternatives. In comparison, Apple's corresponding instructions are an accurate statement of the law of lost profits based on *Panduit*, *DePuy Spine*, *Grain Processing* and the cases that follow them. Finally, if this instruction is used, Samsung's repeated use of the phrase "of each infringing product" should be

1    stricken as confusing and in error.  The language "each allegedly infringing product" is not in the
     Northern District's model instruction, nor in any other model instruction, and would purportedly
2    require Apple to show a specific allocation for each product.  As such, Samsung seeks to exclude
     all other efforts to allocate, such as the use of the market share that Samsung and competitors
3    enjoy at each carrier or in the market more generally, when accounting for demand and
     competing products.  The Federal Circuit acknowledged the appropriate use of market share for
4    this purpose in *Mor-Flo* and has separately emphasized the flexibility required due to the inherent
     imprecision that results from reconstructing past events.  *See Grain Processing Corp. v. American*
5    *Maize-Products Co*., 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("courts have given patentees
     significant latitude to prove and recover lost profits for a wide variety of foreseeable economic
6    effects of the infringement"); *State Industries Inc v. Mor-Flo Indus*., 883 F.3d 1573, 1578-79
     (Fed. Cir. 1983).  No case has stated the additional requirement that Samsung seeks to impose and
7    the language "for each allegedly infringing product" should be stricken.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 41.1
## DESIGN PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER

**Samsung's Proposed Instruction**

Apple is entitled to lost profits if it proves all of the following:

> (1)   that there was a demand for the patented inventions and designs [alternate: that there was demand for the patented products];

> (2)   that there were no non-infringing substitutes for each of the allegedly infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period. Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

> (3)   that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

> (4)   the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America had not allegedly infringed.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3 (modified).

**Apple's Objection to Samsung's Instruction**

The parties' separate proposed instructions on factors to consider for lost profit damages differ in four ways: (1) Samsung's first indented bullet refers to the "patented inventions and designs" rather than the "patented product," which is a violation of *DePuy Spine*; (2) Samsung's instruction implies that *Panduit* is an exclusive test for lost profit recovery when the Federal Circuit says it is not; (3) Apple's instruction addresses the availability and acceptability of a non-infringing alternative in a manner more consistent with Federal Circuit law; (4) Samsung inserts the word "allegedly" into the language of the model instruction in its proposed instruction, which improperly emphasizes Samsung's position.  As to the first issue, the Federal Circuit has made clear that the first factor of *Panduit* focuses on demand for the patented product, not the specific inventions and designs claimed.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).  *DePuy Spine* holds that *Panduit* "does not require any allocation of consumer demand"; it is sufficient to show demand "for a product that is covered by the patent in suit."  Id. ("All that the first [ Panduit ] factor states, and thus requires, is demand for the patented product.")  The Court already resolved this as part of a Daubert ruling in the case.  Second, the Federal Circuit has made clear that "[T]he *Panduit* test is an acceptable, though not an exclusive, test for determining 'but for' causation." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).  Apple's corresponding instruction is an accurate statement of

1  the law of lost profits and captures both of these elements.  Third, Apple's instructions includes
the requirement that non-infringing alternatives be commercially acceptable.  That is required.

2  *See Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999) (a
non-infringing replacement product is not considered a substitute unless it is "acceptable to all

3  purchasers of the infringing product"); *Am. Seating Co. v. USSC Group*, 514 F.3d 1262, 1270
(Fed. Cir. 2008) ("[B]uyers must view the substitute as equivalent to the patented device.").

4  Samsung's proposed instruction lacks a discussion of whether the substitute is acceptable and
who bears the burden of proving this when the alternative is not immediately available when

5  infringement began.  *See Grain Processing Corp.*, 185 F.3d at1349.  Fourth, Samsung's proposed
instruction adds the word "allegedly" to the fourth factor.  This is an improper and unnecessary

6  modification to the Northern District's model instruction.  The jury will only have reached this
issue because it has found that Samsung has infringed and the Court's earlier instruction,

7  introducing damages, makes clear that the Court is taking no position on damages by providing
an instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 42
DESIGN PATENT INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS**

2

3

**Apple's Proposed Instruction**

4

If you decide not to award Apple its lost profits for certain sales by Samsung that infringed Apple
design patents, you should award Apple the total profits that Samsung earned from those
infringing sales.  "Total profits" include the entire profit on the sale of products with patented
designs, and not just the portion of profit attributable to the design.  "Total profits" do not include
profit attributable to other products that may have been sold in association with an infringing
article.

5

6

7

Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of
Samsung's receipts from the sale of infringing products.  Apple has the burden of proving the
gross revenue that Samsung more likely than not received.

8

9

Samsung has the burden of proving the deductible expenses.  Expenses can include costs incurred
in producing the gross revenue, such as the cost of the goods.  Other costs may be included as
deductible expenses if they are directly attributable to the sale or manufacture of the infringing
products.

10

11

**Source**

12

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.8.

13

**Authorities**

14

15

35 U.S.C. § 289; *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292, (Fed.
Cir. 2002); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447-48 (Fed. Cir. 1998); *id.* at
1442-43 (noting that Congress removed "the need to apportion the infringer's profits between the
patented design and the article bearing the design" when it passed the Act of 1887, which was
subsequently codified under 35 U.S.C. § 289); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d
815, 824 (Fed. Cir. 1992); *Trans-World Mfg. Corp. v. A1 Nyman & Sons, Inc.*, 750 F.2d 1552,
1566-68 (Fed. Cir. 1984); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn.
1980)*; id.* at 497 ("The burden of establishing the nature and amount of these costs, as well as
their relationship to the infringing product, is on the defendants."); *Junker v. HDC Corp.*, No. C-
07-05094 JCS, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) ("patent holder is not required
to demonstrate that the profits are attributable to the ornamental qualities of the item in the design
patent" but is "entitled to the entire profit obtained by the infringer as a result of sales of the item
with the infringing design"); *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-
LHK, Order Granting-in-Part and Denying-in-Part Motions to Exclude Expert Testimony, Dkt.
No. 1157, at 9 (N.D. Cal., June 30, 2012) ("Apple's motion to exclude Mr. Wagner's testimony
apportioning damages with respect to Apple's design patent claims is therefore GRANTED.");
*Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1171 (6th Cir. 1980) (stating that the
"parties are agreed that the expenses which vary directly with productive activity should be
deducted in determining total profits").  The requirement that deductible expenses be "directly
attributable" to the manufacture or sale of infringing items is in the IPO instruction and clearly
spelled out in Ninth Circuit copyright cases.  *See, e.g.*, *Kamar International, Inc. v. Russ Berrie &
Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) ("allowing a deduction for overhead only when the
infringer can demonstrate it was of actual assistance in the production, distribution or sale of the
infringing product"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th
Cir. 1985), rev'd after remand on other grounds, 886 F.2d 1545 (9th Cir. 1989) ("defendant bears
the burden of explaining, at least in general terms, how claimed overhead actually contributed to
the production of the infringing work"); 7-20 Chisum on Patents § 20.03 (In design patent
infringement actions . . . , the courts look to pre-1946 utility patent case law, as well as copyright

16

17

18

19

20

21

22

23

24

25

26

27

28

1   and other cases, for guidance in determining the amount of accountable profits."). *See also* Apple
    Objection to Samsung's Proposed Instruction No. 40 (regarding election of remedies).

2

3   **Samsung's Objection to Apple's Proposed Instruction**

4   Apple's proposed instruction fails to mention its burden of proof by a preponderance of the
    evidence.  It also does not address the requirement that Apple make an election for either actual

5   damages or Samsung's profits, as set out even in the draft IPO Model Design Patent Jury
    Instruction that Apple-affiliated attorneys helped create prior to this case.  *See id.* ("A plaintiff in

6   a design patent case can elect to prove either actual damages, known as compensatory damages,
    or they may elect to prove the defendant's profits as its measure of potential recovery.")  On the

7   contrary, it misleadingly implies that Apple may obtain both remedies.   No court has ever
    allowed what Apple proposes here—to split its recovery between actual damages as lost profits

8   under Section 284 and infringer's profits under Section 289.  Thus, Apple's proposed instruction
    should be rejected as incomplete, legally inaccurate, and skewed in favor of Apple, and is not

9   supported by persuasive authority.  It also refers to "Samsung" generally rather than identifying
    the Samsung defendants.  It also adds a requirement – "directly" attributable – that is not required

10  by law and fails to note that expenses may be attributable to the sales *or manufacture* of the
    infringing products.  *Nike, Inc. v. Wal-Mart Stores*, Inc., 138 F.3d 1437, 1447-48 (Fed. Cir. 1998)

11  (affirming deduction of "direct and indirect costs").  None of the authority cited by Apple states
    that expenses must be "directly attributable" to the sale or manufacture of the infringing products.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**[10]

In this case, Apple alternatively seeks Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's profits from sales of products alleged to infringe Apple's design patents. Accordingly, if you find infringement by Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America, do not find Apple's design patents are invalid, and do not award Apple lost profits and/or a reasonable royalty, you may award Apple Samsung Electronics Company's, Samsung Electronics America's and/or Samsung Telecommunications America's total profit on sales of articles alleged to infringe Apple's design patents.

The "total profit" of Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America means the entire profit on the sale of the article to which the patented design is applied, or with which it is used and not just the portion of profit attributable to the design or ornamental aspects of the patent. "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

If you find infringement by any Samsung defendant, and do not award Apple lost profits and/or a reasonable royalty, you may award Apple all profit earned by that defendant on sales of articles alleged to infringe Apple's design patents, and that is attributable to whatever infringement you have found by that particular defendant. Profit is determined by deducting certain expenses from gross revenue. Gross revenue is all of the infringer's receipts from the sale of articles using any design found infringed. Apple has the burden of proving the infringing defendant's gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense. Samsung has the burden of proving the deductible expenses and the portion of the profit attributable to factors other than use of the infringed design by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the infringing product is attributable to factors other than use of the infringed design, you shall find that the total profit is attributable to the infringement.

**Source**

Intellectual Property Owners Association, Proposed Design Patent Model Jury Instr., No. 10.8 (modified).

**Apple's Objection to Samsung's Instruction**

The parties' proposed instructions on defendant's profits under section 289 differ in four ways: (1) Samsung's proposed instruction fails to reflect the Court's prior ruling in this case that profits awarded under section 289 cannot be apportioned; (2) Samsung's proposed instruction omits the word "directly" from a sentence addressing deductible expenses, which is an important element

---

[10]  Samsung objects to Apple's attempt to obtain both lost profits and infringer's profits as unsupported by any legal authority. Samsung offers this instruction solely in the event that the Court disagrees. Samsung also offers this instruction subject to its objection that any disgorgement of profits should be subject to apportionment.

of Samsung's burden; (3) Samsung's proposed instruction repeats unnecessarily the requirements of validity and infringement; and (4) continuing its pattern as noted above, Samsung keeps referring in its damages instructions to "alleged" infringement rather than "infringement." Apple's instruction reflects a direct recitation of the statute's grant of total profits. *First*, the instruction includes three statements on the apportionment of the defendant's profits, the amount that is "attributable" to the design or the infringement, and the amount "attributable" to factors other than the design. But the Court has made clear based on controlling Federal Circuit law that if Samsung is found to infringe Apple's design patents, Apple is entitled to recover all of Samsung's profits relating to the accused products without apportionment. This issue was resolved in Dkt. No. 1157 (Daubert order) at 9, which excluded Samsung's expert testimony as "contrary to law." Samsung's footnote acknowledges this issue. *Second*, Samsung's proposed instruction incorrectly omits the word "directly" from the statement: "Other costs may be included as deductible expenses if they are <u>directly</u> attributable to the sales of the infringing products . . ." The Intellectual Property Owners Ass'n Model Design Patent Jury Instructions include the word "directly" and are an accurate statement of the law. This is an important element of Samsung's burden of proof in proving those costs that will be deducted, and the jury will hear competing evidence from each side's damages experts on which costs are and are not "directly attributable" to the product sales. *See Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1171 (6th Cir. 1980) (stating that the "parties are agreed that the expenses which vary directly with productive activity should be deducted in determining total profits,"); *see also Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) ("The burden of establishing the nature and amount of these costs, as well as their relationship to the infringing product, is on the defendants."). Third, Samsung, consistent with the improper pattern it set in other instructions, repeats the requirement of validity and infringement where it is not necessary. This requirement is set out in prior instructions and need not be repeated for the benefit of the defendant whenever a new damages subject matter is introduced. Finally, Samsung at least three times in its proposed instruction refers to "alleged" infringement. The jury will only determine damages if it finds that Samsung infringes. The word "alleged" does not belong here.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 42.1
DESIGN PATENT DAMAGES—PROFITS**

2

3

**Samsung's Proposed Instruction**

4

If you find that Samsung Electronics Company, Ltd., Samsung Electronics America, Inc. or Samsung Telecommunications America, LLC infringed any of Apple's design patents, and if you decide to award Apple profits from Samsung Electronics Company, Ltd.'s, Samsung Electronics America, Inc.'s or Samsung Telecommunications America, LLC's sales, you should award only those profits which were derived from the article of manufacture to which Apple's patented design was applied.  The article to which Apple's design was applied may be the same as or different from Samsung's devices as sold because devices offered for sale may incorporate a single article of manufacture or several articles of manufacture.  The article of manufacture to which a design has been applied is the part or portion of the product as sold that incorporates or embodies the subject matter of the patent. Where the article of manufacture is a case or external housing of the device, then only the profits from the sale of the case or external housing of the device should be awarded.  Under these instructions, an award of profits for design patent infringement should not include profits earned from the technology by which the devices operate or from any other functions of the devices.

5

6

7

8

9

10

11

**Authority:**

12

*Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 904 (2d Cir. 1915) ("When the patent owner is awarded the profits due to his design he receives all he is entitled to.  If the rule be established that a design for a cases enables the owner to collect damages for the case not only, but for the contents of the case as well, it will lead to results which shock the conscience.") (profits properly "confined to the subject of the patent – a piano case"); *id.* at 904 (reversing award of "the entire profits of the sales of the piano and case" and holding that only "the profits upon the sale of the case" could be disgorged).

13

14

15

16

**Apple's Objection to Samsung's Instruction**

17

18

Samsung's proposed instruction is inconsistent with Federal Circuit law and relies entirely on a single, non-controlling, 97-year-old case involving a different set of facts.  First, Samsung's reading of *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902 (2d Cir. 1915) is inconsistent with controlling Federal Circuit law as set forth in *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998).  Pursuant to 35 U.S.C. § 289, a patent holder may recover total profits on "the article of manufacture."  35 U.S.C. § 289.  The Federal Circuit in *Nike* explains that this refers to the product that is sold, as § 289 does not allow for apportionment.  *Nike, Inc.*, 138 F.3d at 1442 (Congress removed "the need to apportion the infringer's profits between the patented design and the article bearing the design" when it passed the Act of 1887, which was subsequently codified under 35 U.S.C. § 289").  *See also Junker v. HDC Corp.*, No. C-07-05094 JCS, 2008 WL 3385819, at *3 (N.D. Cal. July 28, 2008) ("patent holder is not required to demonstrate that the profits are attributable to the ornamental qualities of the item in the design patent" but is "entitled to the entire profit obtained by the infringer as a result of sales of the item with the infringing design"), *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980) (rejecting defendants' argument that recoverable profits should be reduced to only profits resulting from design of the article).  Moreover, *Bush & Lane Piano Co.* is factually distinguishable because it refers to the piano case being sold separately from the piano.  The Court reasons that "[a] purchaser desiring a piano of a particular manufacturer may have the piano placed in any one of several cases dealt in by the maker," which are facts plainly not present here.  222 F. at 903-04.  Indeed, here the patents claim an electronic device, not simply a case.  As such, *Bush & Lane Piano Co.* is an irrelevant, contradictory, non-controlling case that serves as the sole basis of

19

20

21

22

23

24

25

26

27

28

1   Samsung's proposed instruction.  Apple's proposed instruction No. 42, on the other hand,
2   contains a clear and accurate statement of the law.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43
DESIGN PATENT DAMAGES—REASONABLE ROYALTY—
ENTITLEMENT—DEFINITION**

**Apple's Proposed Instruction**

If Apple has not proved its claim for its own lost profits, has not proved its claim to Samsung's profits, or has proved its claim to either of those remedies for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits or Samsung's profits. In no event should the damages you award Apple for Samsung's design patent infringement be less than a reasonable royalty.

The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 29 for utility patent infringement. However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.7.

**Authorities**

35 U.S.C. § 284; 35 U.S.C. § 289; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) *cert. denied*, 130 S. Ct. 3324 (2010) (vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ("25% rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, No. 9.8 (1999); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984).

**Samsung's Objection to Apple's Proposed Instruction**

Apple's proposed instruction fails to mention its burden of proof by a preponderance of the evidence. It also does not address the requirement that Apple make an election for either actual damages or Samsung's profits, as set out in the draft IPO Model Design Patent Jury Instruction. See id. ("A plaintiff in a design patent case can elect to prove either actual damages, known as compensatory damages, or they may elect to prove the defendant's profits as its measure of potential recovery.") On the contrary, it misleadingly implies that Apple may obtain both remedies. No court has ever allowed what Apple proposes here—to split its recovery between actual damages as lost profits under Section 284 and infringer's profits under Section 289. In addition, Apple employs prejudicial language that assumes Samsung has infringed its patents, such as "Samsung's design patent infringement." This language presumes the validity of Apple's arguments, and unfairly suggests to jurors an outcome favorable to Apple and adverse to

1   Samsung (e.g., "infringing sales").    Finally, Apple's instruction fails to take into account that
2   there are several separate and independent individual defendants.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Samsung's Proposed Instruction**

2    Both Samsung and Apple seek an award of a reasonable royalty for the alleged infringement of
     their respective patents.

3
     If the holder of a patent does not seek lost profits, or has not proved its claim for lost profits, or
4    has proved its claim for lost profits for only a portion of the sales alleged to infringe the patent,
     then the patent holder should be awarded a reasonable royalty for all infringing sales for which it
5    has not been awarded lost profits damages.

6    A reasonable royalty must be limited to compensation for the economic harm caused by
     infringement of the claimed invention.

7
     **Source**
8

9    N.D. Cal. Model Patent Jury Instr. B.5.6 (modified); *Oracle Am., Inc. v. Google Inc.*, 798 F.
     Supp. 2d 1111, 1117 (N.D. Cal. 2011) (citing 35 U.S.C. 284); *ResQNet.com, Inc. v. Lansa, Inc.*,
10   594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on
     compensation for the economic harm caused by infringement of the claimed invention.").
11

12   **Apple's Objection to Samsung's Instruction**

13   Apple objects to the following sentence in Samsung's proposed instruction: "A reasonable royalty
     must be limited to compensation for the economic harm caused by infringement of the claimed
14   invention."  This language is not in the Northern District of California's Model Patent Jury
     Instructions, and Samsung offers no reason to include it.  Samsung also adds the word "alleged"
15   before "infringement" in the first sentence of this proposed instruction.  That too is not in the
     model and it makes no sense to add.  The jury will only turn to damages if it finds infringement.
16   The word "alleged" is out of place.  Samsung also adds the word to the second paragraph and it is
     objectionable there too for the same reasons.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### PROPOSED FINAL JURY INSTRUCTION NO. 43.1
### DESIGN PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION

3

**Samsung's Proposed Instruction**

4

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place prior to the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

5

6

7

8

9

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

10

11

12

13

14

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $10,000 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

15

16

17

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

18

19

20

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for Samsung and/or Apple.

21

**Source**

22

N.D. Cal. Model Patent Jury Instr. B.5.7 (modified).

23

24

**Apple's Objection to Samsung's Instruction**

25

The first paragraph of the Northern District Model Instruction 5.7 refers to a negotiation "taking place at the time when the infringing activity first began." Samsung has altered that language to refer to "the time when the infringing activity first began." There is no reason to deviate from the model instructions. The other problem with Samsung's proposed instruction is that there is no reason to include the paragraph from the Northern District model on a lump sum royalty. In this case, neither side seeks a royalty based on a lump sum. Instructing the jury on this issue would only lead to a lengthier than necessary and confusing instruction.

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43.2**
**DESIGN PATENT DAMAGES—REASONABLE ROYALTY— RELEVANT FACTORS**

<u>**Samsung's Proposed Instruction**</u>

In determining the reasonable royalty for Samsung and/or Apple, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)  The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)  The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)  The duration of the patent and the term of the license.

(8)  The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)  The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)  The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)  The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)  The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)  The opinion and testimony of qualified experts.

(15)  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**Source**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.7 (modified).

**Apple's Objection to Samsung's Instruction**

There is no reason to include this lengthy recitation of the *Georgia-Pacific* factors in the jury instructions.  The Northern District model does not contain this instruction, and its length and jargon run the risk of jury confusion.

**PROPOSED FINAL JURY INSTRUCTION NO. 44**
**DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

**Apple's Proposed Instruction**

Damages that Apple may be awarded by you commence on the date that Samsung has both infringed and been notified of the patent or patents it infringed.

If you find that Apple sells products that include the claimed designs but has not marked those products with the patent numbers, you must determine the date that Samsung received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the D'677 patent by no later than April 15, 2011, and for the D'305, D'889 and D'087 patents by no later than June 16, 2011.

On the other hand, if you find that Apple does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

- For each infringed patent that was granted before Samsung's infringement began, damages should be calculated as of the date you determine that the infringement began; or

- For each infringed patent that was granted after Samsung's infringement began as determined by you, damages should be calculated as of the date the patent issued.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

**Authorities**

35 U.S.C. § 287; 35 U.S.C. § 289; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to give rise to actual notice); *id.* at 1364 ("[T]he court's instruction to the jury should have more clearly articulated that, in the context of this ongoing relationship between the parties, knowledge of a specific infringing device is not a legal prerequisite to such a finding."); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010)

1    ("To serve as actual notice, a letter must be sufficiently specific to support an objective
     understanding that the recipient may be an infringer....  The letter must communicate a charge of
2    infringement of specific patents by a specific product or group of products....  However, when the
     threshold specificity is met, the ensuing discovery of other models and related products may bring
3    those products within the scope of the notice.").

4

**Samsung's Objection to Apple's Proposed Instruction**

5

6    Apple's proposed instruction is inappropriate because it varies from the models upon which
     Apple purports to rely by inserting additional argumentative and prejudicial language. For
     example, it presumes that Samsung infringed its patents ("Samsung has both infringed . . ." and
7    "Samsung's infringement").  "In drafting [civil jury] instructions, a common vice to be avoided is
     the phrasing of instructions in an argumentative fashion favorable to the side submitting them.
8    Instructions must be objective, not subjective. It is the court, not counsel, who announces them.
     The judge is the only non-partisan lawyer in the courtroom, from whom the jury may properly
9    expect a dispassionate and unslanted statement of the pertinent law."  1 Fed. Jury Prac. & Instr. §
     7:2 (6th ed.*); see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court
10   was not required to give [defendant's] inaccurate, redundant and combative instructions); *United
     States v. Matias,* 836 F.2d 744 (2d Cir. 1988) (court has duty to give balanced instructions).
11   Finally, the instruction fails to distinguish between the Samsung defendants, each of which Apple
     was required to notify.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Damages commence on the date that the alleged infringer has both infringed and been notified of the alleged infringement of the patent.

If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe.  Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device.  The filing of the complaint and counterclaims in this case qualified as actual notice, so the damages period begins no later than the dates the complaint and counterclaims were filed.  The patent holder has the burden of establishing that it is more probable than not the alleged infringer received notice of infringement before the complaint and counterclaims were filed.

If you find that the patent holder does not sell a product covered by the patent, damages begin without the requirement for actual notice. If you find that the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the patent was granted after the infringing activity began, damages should be calculated as of the date the patent issued.

While you may identify an earlier date by which Apple had actual notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011.  With respect to Samsung's U.S. Patent No. 7,577,460, damages should be calculated as of August 18, 2009, because Samsung is asserting only method claims from that patent.

While you may identify an earlier date by which Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America had actual notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381, '915 and D'677 patents by no later than April 15, 2011, and for the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Source**

N.D. Cal. Model Patent Instr. B.5.8 (modified); Federal Circuit Bar Association Model Patent Jury Instr. B.6.8 (modified); *Mformation Techs., Inc. v. Research In Motion Ltd.*, 2011 WL 6357804 (N.D.Cal. Dec. 19, 2011) (Ware C.J.) ("The marking requirements of § 287(a) do not apply to patents containing only method claims. *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir.1983).").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction contains numerous misstatements of law.  First, the instruction states that "If you find that the patent holder sells a product that includes the claimed invention, you must determine the date that the alleged infringer received actual notice of the patent and the specific product alleged to infringe.  Actual notice means that the patent holder communicated to the alleged infringer a specific charge of infringement of the patent by a specific accused product or device."  This is not in the Northern District's model instruction upon which both parties purport to rely.  Further, Federal Circuit law makes clear that actual notice does not require actual notice of all the products. *See Funai Elec. Co. Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").  This is particularly true where, as here, there is an ongoing relationship between the parties. *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364 (Fed. Cir. 2008) (" . . . the [T]he court's instruction

1   to the jury should have more clearly articulated that, in the context of this ongoing relationship
2   between the parties, knowledge of a specific infringing device is not a legal prerequisite to such a
    finding.")  Additionally, it is established that notice of the specific patent number is not required
3   to constitute actual notice.  *See Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979 (D.
    Mass. 1992) (actual notice does not require identifying a particular patent by number where
4   plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the
    defendant was infringing that patent).  Apple's corresponding instruction is an accurate statement
5   of the law of actual notice and reflects the accepted Northern District model instruction on this
    issue.  Samsung commits a different error when it inserts the word "alleged" before the word
6   "infringement" in the first paragraph of this objection.  That is not in the model and it is
    groundless.  The jury will only consider damages if it finds infringement – not "alleged"
7   infringement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED JURY INSTRUCTION NO. 45**
**UTILITY AND DESIGN PATENTS—INDUCING PATENT INFRINGEMENT**

**Apple's Proposed Instruction**

Apple and Samsung each argue that the other side has actively induced another to infringe its patents.  In particular, Apple claims that Samsung's Korean parent SEC actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility and design patents. Samsung claims that Apple actively induced third parties to infringe Samsung's utility patents.

In order for there to be inducement of infringement by either SEC or Apple, someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, a party must:

    1.  have intentionally taken action that actually induced direct infringement by another;

    2.  have been aware of the asserted patent; and

    3.  have known that the acts it was causing would be infringing.

The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that a party was willfully blind.  If SEC or Apple did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that SEC or Apple was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that SEC or Apple took a risk that was substantial and unjustified.

If you find that SEC or Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, SEC or Apple cannot be liable for inducement.

**Sources**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.9.

**Authorities**

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *id.* at 2067; *ePlus, Inc. v. Lawson Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1306 (Fed. Cir. 2006) (*en banc*); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008); *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668-69 (Fed. Cir. 1988) (control over manufacture and development of infringing product is evidence of inducement); *A. Stucki Co. v. Stuart A. Schwam*, 634 F. Supp. 259, 265 (E.D. Pa. 1986) (liability for inducement based upon "the direct participation in and control of the infringing design, manufacture, and sale" of infringing products); *Ziggity Sys., Inc. v. Val Watering Sys.*, 769 F. Supp. 752, 794 (E.D. Pa. 1990) (entity with management and control over infringing related-entity found liable for inducement).

**Samsung's Objection to Apple's Proposed Instruction**

Apple's proposed instruction is improper because it introduces again Apple's untimely allegation that there has been indirect infringement of any Apple patents.  As to the design patents, Apple has elsewhere claimed that it alleged indirect infringement in the prayer for relief in the amended complaint, its Patent Local Rule infringement contentions, and in response to Samsung's interrogatory on willfulness.  (Dkt 1206-01 at 17 (submitted under seal on July 10, 2012).)  These are all false.  First, the prayer for relief in the amended complaint only mentions indirect infringement of trade dress and trademarks, never of patents (Dkt 75 at 61); second, Apple's Patent Local Rule Contentions do not mention a single design patent though they specifically list eight utility patents, and if Apple didn't even claim *direct* design patent infringement in those contentions, it certainly didn't claim *indirect* design patent infringement in them (Dkt 801-5 at 1-4); and third, the facts alleged in Apple's interrogatory response on willfulness, even if assumed to be true, would only establish passive knowledge by SEC, not active inducement of infringement (*see* Dkt 817-2 at 25-26; *see also DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc) ("To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement.").  The Federal Circuit has made clear that "mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *DSU Medical Corp.*, 471 F.3d at 1305.  This is true for parent and sub relationships as well:  "evidence of mere inaction by a parent company in the face of infringement by a subsidiary-i.e., a failure to stop infringement" is not sufficient.  *Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) (*citing A. Stucki Co. v. Worthington Industries, Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988).)  "[E]vidence of mere inaction [does] not constitute inducement." *Id.*  "Absent evidence of active inducement," it is "mere speculation, not a justifiable inference" to assume that the parent "did assent to, endorse, [or] condone continued infringement." *A. Stucki*, 849 F.2d at 597.  Apple's cited authorities provide no basis for an argument by Apple that proving active inducement does not require showing evidence of active and knowing inducement.

In addition, Samsung objects to Apple's Instruction on the grounds that Apple did not make an inducement allegation for the utility patents that met the requirements of Patent Local Rule 3-1, which states in part:

> Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information … For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

Apple's infringement contentions state in conclusory fashion, "Samsung induces the infringement of others under 35 U.S.C. § 271(b) to the extent it contracts, instructs, or otherwise induces others to make, use, offer to sell, sell, or import the Accused Instrumentalities within or into the United States."  (See Apple's 3-1 Patent Local Rule Disclosures, attached as Exhibit D to the Declaration of Thomas Watson in Support of Samsung's Jury Instructions (Dkt. 1233-6).)  This statement did not "identif[y] any direct infringement" nor did it provide a "description of the acts of the alleged indirect infringement that . . . induc[e] that direct infringement."  Consequently, Apple should be precluded from asserting an inducement theory now.  *See Integrated Circuit Sys. v. Realtek Semiconductor Co.*, 308 F. Supp. 2d 1106, 1106-07 (N.D. Cal. 2004).

**PROPOSED JURY INSTRUCTION NO. 45.1**
**INDUCING PATENT INFRINGEMENT**

**Samsung's Proposed Instruction**

Apple argues that Samsung's Korean parent, SEC, has actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility patents.  Samsung argues that Apple has actively induced third parties to infringe Samsung's utility patents.

In order for there to be inducement of infringement by an alleged infringer, someone else must directly infringe a claim of the patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the alleged infringer must:

   1.    have intentionally taken action that actually induced direct infringement by another;

   2.    have been aware of the patent; and

   3.    have known that the acts it was causing would be infringing.

If the alleged infringer did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that the accused infringer was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that the accused infringer took a risk that was substantial and unjustified.

If you find that the alleged infringer was aware of the patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, the alleged infringer cannot be liable for inducement.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.9; 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-06 (Fed. Cir. 2006) (*en banc*) (quoting Metro-*Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011); *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683 (Fed. Cir. 2008).

**Apple's Objection to Samsung's Instruction**

Apple objects to Samsung's instruction because it does not account for the "willful blindness" standard articulated in *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011).  The instruction should take the Supreme Court's holding in that case into account. Apple's Instruction No. 45 does so.

**PROPOSED FINAL JURY INSTRUCTION NO. 45.2**
**INDUCING DESIGN PATENT INFRINGEMENT[11]**

**Samsung's Proposed Instruction**

To show induced infringement, Apple must prove by a preponderance of the evidence that someone has directly infringed the D'677, D'087, D'305 and D'889 design patents and that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications have actively and knowingly aided and abetted that direct infringement. Apple must show that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America actually intended to cause the acts that constitute direct infringement, knew of the patent, and knew or should have known that their actions would lead to actual infringement. Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement. If there is no direct infringement by anyone, there can be no induced infringement.

**Source**

AIPLA Model Patent Jury Instructions, 3.3; 35 U.S.C. § 271(b); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc) ("Under section 271(b), '[w]hoever actively induces infringement of a patent shall be liable as an infringer.' 35 U.S.C. § 271(b). To establish liability under section 271(b), a patent holder must prove that once the defendants knew of the patent, they 'actively and knowingly aid[ed] and abett[ed] another's direct infringement.' *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir.1988) (emphasis in original). However, 'knowledge of the acts alleged to constitute infringement' is not enough. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed.Cir.2003) (citation omitted). The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.' *Id.* at 1364 (citing *Manville*, 917 F.2d at 554)").*See also Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("In *A. Stucki Co. v. Worthington Industries, Inc.*, 849 F.2d 593, 7 USPQ2d 1066 (Fed.Cir.1988), we considered whether evidence of mere inaction by a parent company in the face of infringement by a subsidiary-i.e., a failure to stop infringement-could constitute either direct infringement or active inducement. . . . We also concluded that evidence of mere inaction did not constitute inducement, and we therefore affirmed the directed verdict in favor of the defendant."); *A. Stucki Co. v. Worthington Industries, Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988) ("Stucki's difficulty is two-fold: (1) the facts do not add up to inducement of infringement; and (2) the inferences Stucki posits are not justifiable. Stucki says "although no document exists which states that the Worthington officials advised RDI to continue its infringement," the evidence shows "it is an inescapable conclusion that the Worthington officials did assent to, endorse and condone continued infringement." Absent evidence of active inducement, however, Stucki's "inescapable conclusion" is mere speculation, not a justifiable inference. The district court was not obliged to make the jury engage in such speculation. *See Anderson*, 477 U.S. at 251, 106 S.Ct. at 2512. Stucki's evidence is not "evidence on which the jury could reasonably find" that Worthington had "actively" induced infringement under 35 U.S.C. § 271(b)."); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

---

[11] Samsung does not believe Apple should be permitted to offer evidence or argument on any indirect infringement theory. Out of an abundance of caution, however, and without waiving any right to object, Samsung proposes this instruction should be Apple be allowed to offer such evidence or argument.

1

**Apple's Objection to Samsung's Instruction**

2

3

Samsung's proposed instruction on inducing design patent infringement is flawed in many ways. First, this instruction is differently formulated than—and inconsistent with—its proposed instruction No. 45.1 on inducing utility patent infringement.  This inducement instruction uses "aided and abetted" language that does not appear in Samsung's utility inducement instruction No. 45.1 or in the N.D. Cal. model instructions.  Apple's approach of combining design patent and utility patent inducement instructions into a single instruction that substantially tracks this Court's model is both more consistent and less confusing for the jury.  Second, Apple's proposed instruction No. 45 is also more tailored to the case, and will therefore better prepare the jury to decide the issues here on the merits.  In particular, Apple's inducement theory concerns whether Samsung's Korean parent SEC induced its U.S. subsidiaries STA and SEA to infringe.  It makes sense to instruct the jury that this is the theory that is at issue.  Samsung's reference to "knowingly" aiding direct infringement is inconsistent with its own later instruction that the inducer "knew or should have known that their actions would lead to actual infringement." Apple also submits that its proposed instruction better captures the "willful blindness" standard articulated in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 45.3**
**CALCULATING DAMAGES IN CASES OF INDUCEMENT[12]**

2

3

**Samsung's Proposed Instruction**

4

Apple asserts that Samsung Electronics Company has actively induced Samsung Electronics America and Samsung Telecommunications America to infringe Apple's patents.

5

Samsung asserts that Apple has actively induced another to infringe Samsung's patents.

6

In order to recover damages for induced infringement, the patent holder must either prove that the accused product necessarily infringes the patent in suit or prove acts of direct infringement by others that were induced by the accused infringer.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, the patent holder must further prove the number of direct acts of infringement of the patent in suit, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.

7

8

9

10

**Source**

11

N.D. Cal. Model Patent Instr. B.5.9 (modified).

12

13

**Apple's Objection to Samsung's Instruction**

14

Samsung's proposed instruction is unnecessary and confusing to the jury regarding a damages (as opposed to a liability) issue that is not in dispute.  Both parties have proposed separate instructions regarding the requirements for direct infringement and for inducement.  Under the facts and circumstances of this case, if both are proved, there is no further reduction to damages or to the sales that are affected for the jury to evaluate.  Apple's claims are all apparatus or design claims and thus, if the Korean parent company induces infringement, the scope of the induced infringement will overlap entirely with the underlying conduct of the U.S sales subsidiaries.  There is no evidence that Samsung's U.S. sales subsidiaries either modify products before sale or provide separate instructions to users that would affect the determination whether infringement is occurring (such as when method claims are being asserted).  Samsung's devices either infringe or they do not.  Further, the parent company either directs the sale of the products or it does not.  A separate inquiry into whether some unit sales of the same product do not infringe is both confusing and unwarranted.  References to whether a product "necessarily infringes" or to infringement by "a particular class of products" will misdirect the jury regarding the issues that they must decide.  Thus, the instruction should not be given.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[12]  Samsung does not believe that Apple has properly asserted inducement of patent infringement in this case.  *See* Samsung's Motion *In Limine*, No. 3.  It includes this instruction solely in the event the Court disagrees.

**PROPOSED FINAL JURY INSTRUCTION NO. 46**
**DESIGN AND UTILITY PATENTS—WILLFUL PATENT INFRINGEMENT**

**Apple's Proposed Instruction**

In this case, Apple and Samsung both argue that the other side willfully infringed its patents.

To prove willful infringement, each party must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, the patent holder must persuade you that it is highly probable that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," the patent holder must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.10.

**Authorities**

35 U.S.C. § 284; *In re Seagate Tech., LLC* ("Seagate"), 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (standard for willful infringement); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-827 (Fed. Cir. 1992); *C.R. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *6-7 (Fed. Cir. June 14, 2012) (the *Seagate* subjective prong is an issue for the jury, while the objective prong is for the court); *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent.").

1

**<u>Samsung's Objection to Apple's Instruction</u>**

2

Samsung objects to Apple's instruction because it fails to fully inform the jury of the factors
relevant to a determination of willful infringement and instead focuses on two factors.  This

3

incomplete listing of factors may lead the jury to ignore facts that should be considered, which
would result in prejudice to Samsung.  Samsung's proposed instruction is based on the Federal

4

Circuit Model Patent Jury Instructions and provides a more complete listing of the factors that
should be considered by the jury Therefore, Apple's proposed instruction should be rejected in

5

favor of Samsung's proposed instruction.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction[13]**

In this case, Apple argues both that Samsung infringed and, further, that Samsung infringed willfully. Likewise, Samsung argues that Apple infringed and, further, that Apple infringed willfully. If you have decided that the alleged infringer has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires a determination that the alleged infringer acted recklessly.

To prove that the alleged infringer acted recklessly, the patent holder must prove the state of mind of the alleged infringer by clear and convincing evidence. The patent holder must persuade you by clear and convincing evidence that the alleged infringer actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether the alleged infringer had this state of mind, consider all facts which may include, but are not limited, to:

(1)     Whether or not the alleged infringer acted in accordance with the standards of commerce for its industry;

(2)     Whether or not the alleged infringer intentionally copied a product of the patent holder that is covered by the patent;

(3)     Whether or not there is a reasonable basis to believe that the alleged infringer did not infringe or had a reasonable defense to infringement;

(4)     Whether or not the alleged infringer made a good-faith effort to avoid infringing the patent, for example, whether the alleged infringer attempted to design around the patent; and

(5)     Whether or not the alleged infringer tried to cover up its infringement.

**Source**

Federal Circuit Model Patent Jury Instr. B.3.8; 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 81 6 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Federal Circuit decisions on willfulness); *Bard Peripheral Vascular, Inc. v. W.L Gore & Assoc., Inc.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *13 (Fed. Cir. June 14, 2012) ("the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge").

---

[13]     Samsung does not believe that any references to discovery related sanctions imposed on either party should be included in the Court's jury instructions. To the extent the Court disagrees, Samsung proposes the following text as and additional factor the jury may consider: "(6)  An additional factor you may consider in determining whether the alleged infringer acted recklessly is that Apple was sanctioned in this case for failing to produce transcripts of testimony pertaining to Apple's patents. You may not consider this information for the purposes of liability or damages; but only for the question of willfulness."

1

2

**Apple's Objection to Samsung's Instruction**

3      Samsung's proposed instruction regarding willfulness is flawed for the following reasons.  First,
       Samsung's instruction tells the jury it can consider Samsung's efforts to design around Apple's
4      patents.  But the Court has already (twice) ordered that "Samsung may not offer any evidence of
       its design-arounds. This means no source code evidence, no non-source code evidence, no
5      evidence of any kind, whether for liability purposes or any other purpose. Period."  *Apple Inc. v.
       Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Granting Samsung's Motion for
6      Clarification of the Court's May 4, 2012 Order, Dkt. No. 1106, at 3-4 (N.D. Cal., June 19, 2012);
       *see also Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Granting
7      Apple's Motion for 37(B)(2) Sanctions re December 22 Discovery Order, Dkt. No. 898, at 9
       (N.D. Cal., May 4, 2012).  Samsung cannot get this evidence in now through the back door of
8      willfulness.  Accordingly, even if the Court gave Samsung's instruction, the Court's order would
       still bar any introduction of Samsung's design-around evidence.  Second, Samsung's footnoted
9      instruction tells the jury it can consider discovery sanctions against Apple.  But the Court has
       ordered that "[t]he parties may not make any reference to sanctions beyond Samsung's change in
10     financial data."  *Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Minute
       Order and Case Management Order, Dkt. No. 1329, at 2 (N.D. Cal., July 24, 2012).  Samsung's
11     footnote is therefore in direct violation of the Court's order and should not be permitted.  Third,
       Samsung's instruction tells the jury it can consider whether or not there is a reasonable basis to
12     believe that the alleged infringer did not infringe or had a reasonable defense to
       infringement.  But the Federal Circuit recently ruled – as Samsung is demonstrably aware through
13     its cited authorities – that "the ultimate legal question of whether a reasonable person would have
       considered there to be a high likelihood of infringement of a valid patent should always be
14     decided as a matter of law by the judge."  *Bard Peripheral Vascular, Inc. v. W.L Gore & Assoc.,
       Inc.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *13 (Fed. Cir. June 14, 2012).  Therefore,
15     Samsung's instruction puts an issue before the jury that is for the judge to decide and should be
       disregarded for this reason.  Apple's proposed instruction has none of these flaws.  Apple's
16     proposed instruction tracks the Northern District's model instruction, is consistent with court
       orders, and is consistent with recent Federal Circuit case law.

17

18

19

20

21

22

23

24

25

26

27

28

1

**TRADE DRESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 47
TRADE DRESS DILUTION AND INFRINGEMENT—INTRODUCTION**

2

3

**Apple's Proposed Instruction**

Apple seeks damages against Samsung for diluting its iPhone and iPad-related trade dresses. Samsung denies that it diluted the Apple iPhone and iPad-related trade dresses, and also contends that the trade dresses are invalid (or "unprotectable").

4

5

6

Apple also seeks damages against Samsung for infringing its iPad-related trade dress.  Samsung denies infringing the iPad-related trade dress and, as already stated, contends that the iPad-related trade dress is invalid.

7

**Source**

8

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.0 (2007 Ed.).

9

**Authorities**

10

15 U.S.C. § 1051 *et seq*.

11

12

**Samsung's Objection to Apple's Proposed Instruction**

13

Apple's proposed instruction will lead to jury confusion and unfair prejudice to Samsung because it improperly suggests that it has already been established that Apple has valid protectable trade dress rights.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Samsung's Proposed Instruction**

2

Apple seeks damages from Samsung for trade dress infringement and dilution arising from
Samsung's sale of certain phones and tablets.  Samsung denies infringing or diluting Apple's
3   alleged trade dresses and contends they are invalid.  Here are the instructions you must follow in
deciding these claims.

4

**Source**

5

Ninth Circuit Model Civil Jury Instr. ("Model Instructions") No. 15 (modified).

6

7

**Apple's Objection to Samsung's Instruction**

8

Apple objects to Samsung's instruction on the ground that is unduly vague and unspecific.  The
proposed instruction does not even generally identify the trade dresses at issue.  Apple also
9   objects to mentioning its trade dress infringement claim before its trade dress dilution claim.
Apple is the master of its claims and is asserting dilution of both its iPhone and iPad trade
10   dresses.  The trade dress infringement claim is only asserted for the iPad trade dress.  Dilution
should be mentioned first.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 48**
**TRADE DRESS DILUTION AND INFRINGEMENT—DEFINITION OF TRADE DRESS**
**(15 U.S.C. § 1125(A))**

**Apple's Proposed Instruction**

Trade dress is the non-functional physical detail and design of a product, which identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.

A person who uses the trade dress of another may be liable for damages.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.2 (2007 Ed.).

**Authorities**

15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); 15 U.S.C. § 1115(a) (a registration "shall be prima facie evidence of the validity of the registered mark"); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 209-10 (2000) ("The breadth of the definition of marks registrable under § 2 . . . has been held to embrace not just word marks . . . but also 'trade dress' . . . [which] encompass[es] the design of a product.");*id.* at 216 ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."); *id.* at 213-15; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992) ("The District Court instructed the jury: 'Trade dress' is the total image of the business. Taco Cabana's trade dress may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniforms and other features reflecting on the total image of the restaurant.' … The Court of Appeals accepted this definition and quoted from [authority]: 'The 'trade dress' of a product is essentially its total image and overall appearance.' … It 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'"); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1261 (9th Cir. 2001) (functionality of individual features may not preclude trade dress protection if particular integration of elements leaves multitude of alternatives); *id.* ("To be sure, many of these elements, considered in isolation, may be functional. The issue, however, is whether, taken as a whole, the overall look and feel of the establishment is functional."); *id.* at 1259 ("functional elements that are separately unprotectable can be protected together as part of a trade dress") (internal citation omitted); *TrafFix Devices v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 33-34 (2001).

**Samsung's Objection to Apple's Proposed Instruction**

Apple's proposed instruction is incomplete and misleading in four ways.  First, it unfairly omits important points set forth by the Court's Preliminary Jury Instruction No. 21 and used in the Ninth Circuit model.  Apple fails to include: (1) "In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display" and (2) "A trade dress is non-functional if, taken as a whole, the collection of trade dress elements is not essential to the

1   product's use or purpose or does not affect the total cost or quality of the product even though
2   certain particular elements of the trade dress may be functional." Second, Apple's reference to
    "Apple's iPhone and iPad trade dresses" and to the "total image and overall appearance" in the
3   second paragraph misleadingly implies that its asserted trade dresses encompass the iPhone and
    iPad products in entirety, which is not accurate except as to the registered one iPhone trade dress.
4   Third, Apple's proposed instruction fails to address a crucial distinction between product
    design/configuration trade dress and product packaging trade dress, which is highly relevant to
5   this case. Samsung's proposed instruction No 7.1 properly reflects the applicable Supreme Court
    precedent. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) ("In the
6   case of product design, as in the case of color, we think consumer predisposition to equate the
    feature with the source does not exist. Consumers are aware of the reality that, almost invariably,
7   even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is
    intended not to identify the source, but to render the product itself more useful or more
8   appealing."); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2003) ("And in
    *Wal-Mart*, *supra*, we were careful to caution against misuse or overextension of trade dress. We
9   noted that "product design almost invariably serves purposes other than source identification.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Trade dress is the non-functional physical detail and design of a product which identifies the product's source and distinguishes it from the products of others. Trade dress may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a company presents a product or service to the market, its manner of display.

The trade dresses at issue in this case involve certain products sold by Apple. Trade dress rights in product designs are more limited than rights in trade dress packaging cases because most product designs are intended to make the product more useful or more appealing to consumers and are not intended to identify the source of the product.

**Source**

Ninth Circuit Model Instructions No. 15.2 (modified); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) ("In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing."); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2003) ("And in *Wal-Mart*, supra, we were careful to caution against misuse or overextension of trade dress. We noted that "product design almost invariably serves purposes other than source identification."").

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in at least four ways. First, Samsung omits that trade dress is the "total image and overall appearance," instead only identifying "types" of features that may make up a trade dress. This is improper, as it gives the incorrect impression that trade dress is evaluated on a feature-by-feature basis. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992) (trade dress of product "is essentially its total image and overall appearance") (internal quotation omitted). Second, in light of this omission, defining "trade dress" as the "non-functional" physical detail and design of a product implies that individual features with a function cannot form part of the claimed trade dress, which is not the law. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1261 (9th Cir. 2001) (functionality of individual features may not preclude trade dress protection if particular integration of elements leaves multitude of alternatives). In fact, the Ninth Circuit explicitly states: "functional elements that are separately unprotectable can be protected together as part of a trade dress." *Id.* at 1259 (internal citation omitted). Third, Samsung claims that trade dress rights in product designs are "more limited than rights in other types of trade dress." There is no support for this statement in the law. Samsung cites both *Wal-Mart* and *TrafFix Devices*, but these cases address *validity*—distinctiveness or functionality—not the extent or rights *once validity is shown*. *TrafFix Devices v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 33-34 (2001); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213-15 (2000). And, in fact, the test for validity of trade dress is the same for all types of trade dress; the trade dress must be both distinctive and nonfunctional. The cases that Samsung cites do not suggest otherwise. They only state that product design trade dress is not inherently distinctive; instead, the product design must be shown to have acquired distinctiveness, or secondary meaning. Those rulings do not translate to "limited rights" once acquired distinctiveness is shown. Finally, Apple also objects to the sentence in the instruction defining trade dress as "the form in which a company presents a product or service to the market, its manner of display." There is considerable potential for jury confusion in this sentence. Apple's trade dress claim goes to product configuration, not to the manner in which Samsung's products

1    are "display[ed]" or "present[ed]."  Apple has found no case authority for this sentence of the
2    proposed instruction, whether in the decisions cited in the Model Instruction or elsewhere.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 48.1**
**TRADE DRESS LIABILITY—THEORIES AND POLICIES**

**Samsung's Proposed Instruction**

The trade dress laws balance three often-conflicting goals:  (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

**Source**

Ninth Circuit Model Instructions No. 15.4 (modified).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction will confuse and mislead the jury because it is adapted from a set of Ninth Circuit model instructions that do not address dilution.  First, the instruction suggests that consumer confusion is always part of the balance, but consumer confusion is not an element of a trade dress dilution claim.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002) ("Dilution, by contrast, does not require a showing of consumer confusion[.]")  Second, the "often-conflicting goals" are tied to the specific remedy sought, not trade dress rights— infringement is a balance between prongs 1 and 3, balancing likelihood of confusion against interest in fair competition, whereas dilution is a balance of 2 and 3, balancing a business's reputation and right to identify itself against interest in fair competition.  (*Compare* Dkt. No. 1158 at 3 (trade dress infringement requires showing of likelihood of confusion) *with* Dkt. No. 1158 at 8 (trademark or trade dress dilution claim addresses use that "impairs the distinctiveness" or "harms the reputation" of famous mark).  Conflating these two theories will be highly misleading to the jury.

**PROPOSED FINAL JURY INSTRUCTION NO. 48.2**
**TRADE DRESS—NO LIABILITY FOR COPYING**

## Samsung's Proposed Instruction

Trade dress law prohibits the copying of protectable (or valid) trade dress only in order to prevent the likelihood of consumer confusion or mistake.  It does not otherwise prohibit competitors from copying each other's products.  Nor does it protect a company's innovation and creativity.

## Source

*Dastar Corp v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 36 (2003) ("reading §43(a) of the Lanham Act as creating a cause of action for, in effect plagiarism – the use of otherwise unprotected works and inventions without attribution – would be hard ."); *Wal-Mart Stores v. Samara Brothers, Inc.*, 529 U.S. 205 (2000) (no cause of action for trade dress violation because asserted trade dress was not source identifying even though Wal-Mart produced 'knockoffs' of children's clothes designed and manufactured by Samara Broths, containing only 'minor modifications' of the original designs.); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (The Supreme Court has been 'careful to caution against misuse or overextension" of trademark related protections into areas traditionally occupied by patent and copyright."); *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n. 11 (1982) (designs cannot be protected under the Lanham Act unless they "identify the source of the product rather than the product itself"); *Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994) ("must show that, in selecting [accused] name, Appellees intended to profit by confusing consumer") (internal quotation marks omitted); *Bretford Manufacturing, Inc. v. Smith System Manufacturing Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("Businesses often think competition unfair, but federal law encourages wholesale copying, the better to drive down prices.").

## Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is wrong for several reasons.  First, it claims there is "no liability for copying," but there *is* liability for copying if one copies a valid trade dress.  *See China Int'l Travel Servs. (USA) v. China & Asia Travel Serv., Inc.*, No. 08-cv-01293, 2008 U.S. Dist. LEXIS 106622, at *22 (N.D. Cal. Dec. 18, 2008) (facts of case, including "blatant copying" of trademark, showed intent to profit from reputation and goodwill).  Second, trade dress law does not prohibit copying "only in order to prevent consumer deception," as claimed in the proposed instruction.  The Lanham Act specifically addresses copies that are "likely to cause confusion, or to cause mistake, *or* to deceive."  15 U.S.C. § 1114 (emphasis added); *see also* 15 U.S.C. § 1125(a) (civil action for use in commerce "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person").  Apple's trade dress dilution claim has nothing to do with preventing consumer deception, or even confusion, but is aimed at stopping Samsung from "impair[ing] the distinctiveness" of Apple's trade dress.  (Dkt. No. 1158 at 8; 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark").)  The jury is elsewhere instructed on the elements of a trade dress claim and what must be proven; here, Samsung is attempting to insert an argumentative and oversimplified response to Apple's claims as a separate jury instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 49**
**TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY**

**Apple's Proposed Instruction**

The first step in considering Apple's claims that Samsung diluted and infringed certain of Apple's iPhone and iPad trade dresses is to determine whether or not each asserted trade dress is valid (or "protectable").  You need to make this determination for each of Apple's asserted trade dresses.

You must find that an asserted Apple trade dress is valid if the trade dress:

> 1.     has acquired distinctiveness through secondary meaning; and

> 2.     is non-functional.

You must presume Apple's registered iPhone trade dress is both distinctive and non-functional.  Unless Samsung persuades you that this registered trade dress is more likely than not either functional or not distinctive, you must find that the trade dress is valid.

For each unregistered iPhone trade dress and for the iPad trade dress, Apple must persuade you that the trade dress is more likely than not valid.  Accordingly, for each unregistered trade dress where Apple persuades you that the trade dress is distinctive and non-functional, you must find that the trade dress is valid.

For each Apple trade dress that you find valid, resolving whether Samsung has diluted or infringed the trade dress will require you to assess additional questions that I will explain after addressing validity.

**Source**

Adapted from ABA 3.2.1-3.2.2, Ninth Circuit Model Civil Jury Instr. - 15.6 ,15.7 (2007 Ed.).

**Authorities**

15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); 15 U.S.C. § 1115(a) (a registration "shall be prima facie evidence of the validity of the registered mark"); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 209-10 (2000) ("The breadth of the definition of marks registrable under § 2 . . . has been held to embrace not just word marks . . . but also 'trade dress' . . . [which] encompass[es] the design of a product."); *Wal-Mart*, 529 U.S. at 216 ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.").

**Samsung's Objection to Apple's Proposed Instruction**

Apple's Proposed Instruction will lead to jury confusion and unfair prejudice to Samsung.  First, it uses the words "must persuade you" instead of referring to the actual legal standard of proving by a preponderance of the evidence.  Second, by combining infringement with dilution, it inaccurately suggests that a trade dress is capable of being diluted as long as it is distinctive and not functional.  Third, four of the five asserted trade dresses are not registered.  Yet Apple incorrectly suggests that all trade dress must be presumed valid because the word "registered" is

buried in the first sentence regarding burdens of proof rather than noted at the beginning of the sentence in a parallel construction to the following sentence—i.e., "For the registered iPhone trade dress, ….".  Fourth, by combining distinctiveness and non-functionality into a single element, Apple later makes it appear that Apple has fewer elements to prove—an approach that deviates from the approach of the Ninth Circuit Model Jury Instructions.  Fifth, the instruction's use of the phrases "iPad trade dress" and "iPhone trade dress" improperly suggests that the iPhone and iPad products *in their entirety* embody each of the claimed trade dresses; however, Apple has not claimed the entire iPhone or iPad product as trade dress except as to the one registered iPhone trade dress.

**PROPOSED FINAL JURY INSTRUCTION NO. 50
TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY—
DISTINCTIVENESS—SECONDARY MEANING**

**Apple's Proposed Instruction**

A trade dress can become distinctive through the development of what is called "secondary meaning."  A trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.

For each asserted Apple trade dress, you must find that it is more likely than not that a significant number of the consuming public associates the trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether each trade dress has acquired a secondary meaning, consider the following factors:

1.  <u>Consumer Perception</u>.  Whether the people who purchase the Apple products embodying the claimed trade dress associate the trade dress with Apple;

2.  <u>Advertisement</u>.  To what degree and in what manner Apple may have advertised under the claimed trade dress;

3.  <u>Demonstrated Success</u>.  Whether Apple successfully used this trade dress to increase the sales of its products;

4.  <u>Extent of Use</u>.  The length of time and manner in which Apple used the claimed trade dress;

5.  <u>Exclusivity</u>.  Whether Apple's use of the claimed trade dress was exclusive as of the time of the first alleged infringement or dilution versus whether Apple authorized anyone else to use the trade dress; and

6.  <u>Copying</u>.  Whether Samsung intentionally copied the trade dress.

The presence or absence of any particular factor should not necessarily resolve whether the asserted trade dress has acquired secondary meaning.

Apple has the burden of proving that it is more likely than not that its unregistered trade dresses have acquired a secondary meaning.  Samsung has the burden of proving it is more likely than not that Apple's registered iPhone trade dress has not acquired secondary meaning.

The mere fact that Apple is using the asserted trade dresses does not mean that they have acquired secondary meaning.  There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.8, 15.10 (2007 Ed.).

**Authorities**

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 216 (2000) ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987) ("'The trade dress of a product or service attains secondary meaning when the purchasing public associates the dress with a particular source.'"); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) ("A product configuration has secondary meaning if the purchasing public associates that configuration with a particular source.  The factors to be assessed in determining secondary meaning include: whether actual purchasers of [the product] associate the configuration with [the plaintiff]; the degree and manner of [plaintiff's] advertising; the length and manner of [plaintiff's] use of the configuration; and whether [plaintiff's] use of the configuration has been exclusive."); *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (referring to "secondary meaning in the minds of consumers"); 15 U.S.C. § 1115 (registration constitutes prima facie evidence of validity); *Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10-cv-02451-LHK, 2010 U.S. Dist. LEXIS 109573, at *15 (N.D. Cal. Oct. 5, 2010) (registration of trade dress entitles owner to presumption of protectable rights under 15 U.S.C. § 1115(a); plaintiff had to show inherent distinctiveness or secondary meaning "[b]ecause [its] trade dress [was] not registered"); *id.* at *3 ("The prominence of the trade names on the packaging strongly supports a finding that consumer confusion is unlikely"); *Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990 ("Evidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law."); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) (*plaintiff* requested actual confusion instruction); *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, 1981 U.S. Dist. LEXIS 17254, *11-13 (N.D. Ga. June 19, 1981) ("The plaintiff's vigilance in protecting its marks, however, is not in issue. The court found in Miss Teen U.S.A. that the *plaintiff's litigiousness underscored* its claim to exclusive use of its mark MISS U.S.A. Miss[.]  Notwithstanding the senior user's vigilance in policing its mark, however, simultaneous use of similar names by a third party can erode a mark's strength. In discussing the strength of the plaintiff's trademark in Amstar Corp., the Fifth Circuit emphasized the importance of the evidence of *uncontested third-party uses* to its holding that the plaintiff's mark was entitled to only limited protection outside the market for its sugar and related food products…. Unquestionably, the pageant industry is crowded. The court acknowledges that in a market of this nature, amidst all these competing pageants, it takes a herculean effort by a promoter to establish a reputation for its pageant such that the title it bestows becomes associated solely with its pageant. By investing enormous amounts of time and money into promoting its pageant and *challenging others using similar names*, the plaintiff, however, has accomplished this goal.") (emphasis added); *Amstar Corp. v. Domino's Pizza, Inc*., 615 F.2d 252, 259-60 (5th Cir. 1980) ("We do not believe that such extensive third-party use and registration of 'Domino' can be so readily dismissed. The impact of such evidence is not dispelled merely because 'Domino' cigarettes and matches are not leading brands, or because some uses of the mark 'Domino' by third parties have not been related to food products. As was stated by one commentator, 'If the owner of KODAK should *permit its use by others* on washing powders, shoes, candy bars, or cosmetics, or if The Coca-Cola Company should permit COCA-COLA or COKE to be used for rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not take long for even these giants in the trademark world to be reduced to pigmy size.'") (emphasis added); *General Motors Co. v. Urban Gorilla, LLC*, 2010 U.S. Dist. LEXIS 136711, *38-39 (D. Utah Dec. 27, 2010) ("Active and aggressive policing of unauthorized uses of a mark supports a finding that the owner is engaging in substantially exclusive use of the mark. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 559 F. Supp. 2d 472, 477 (S.D.N.Y. 2008); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp.2d 734, 746 (W.D. Ky. 2008). Extensive advertising efforts to promote the mark are also relevant in determining substantially exclusive use. *Starbucks Corp.*, 559 F. Supp. at 477.  GM has pursued litigation related to unauthorized trademark use against Tatonka Products, Humbug, Hum J-7, 'Hummer' golf cart manufacturers, toy

manufacturers using the marks, and Avanti.n76 The company also sends cease and desist letters to alleged infringers.n77 These active policing efforts by GM support a finding of substantially exclusive use, as does GM's extensive marketing of the Hummer brand."); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 559 F. Supp. 2d 472, 477 (S.D.N.Y. 2008) ("Starbucks devotes substantial effort to policing its registered Starbucks Marks. Starbucks has a policy of following up on uses that it deems to be infringing and demanding that the use be terminated. Starbucks routinely sends cease and desist letters and, if necessary, commences litigation in support of these efforts."); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp. 2d 734, 746 (W.D. Ky. 2008) ("As noted in Nikepal, supra,'The law does not require that use of a famous mark be absolutely exclusive, but merely "substantially exclusive."' *Nikepal*, 2007 U.S. Dist. LEXIS 66686, 2007 WL 2782030 at *7, citing, *L.D. Kichler Co. v. Davoil Inc.*, 192 F.3d 1349, 1352 (Fed.Cir. 1999). *V Secret* asserts that it is engaged in substantially exclusive use of the VICTORIA'S SECRET mark. In support of this contention, Vice President Kriss avers that V Secret actively and aggressively polices its mark against unauthorized and dilutive uses by others. It pursues unauthorized uses through cease and desist letters, trademark oppositions, and litigation. Kriss Decl., P 27. The Moseleys have not disputed this assertion. We therefore find the requisite substantially exclusive use of the mark."); *Interactive Health LLC v. King Kong United States, Inc*., 2008 U.S. Dist. LEXIS 123559, *6 (C.D. Cal. July 24, 2008) ("The Defendants appear to argue the advertisement must overtly point to the trade dress…  However, there is <u>no such restriction in the case law</u>."); *Adidas-Salomon Ag v. Target Corp.,* 228 F. Supp. 2d 1192, 1208 (D. Or. 2002) ("Defendants argue that advertising merely showing the product is clearly insufficient; instead the advertising must feature in some way the trade dress itself. However, trade dress can be recognizable <u>without advertising specifically telling a consumer to look for it</u>. For example, the Coca-Cola Company does not say in its advertising to 'look for the hourglass-shaped bottle, and yet it is one of the most recognizable trade dresses in the world.") (emphasis added); *First Brands Corp. v. Fred Meyer, Inc*., 809 F.2d 1378, 1383 (9th Cir. 1987) ("the advertising and promotional activities must involve 'image advertising,' that is, the ads must <u>feature in some way</u> the trade dress itself") (emphasis added); *Art Attacks Ink, LLC v. MGA Enter. Inc*., 581 F.3d 1138, 1145 (9th Cir. Cal. 2009) ("Secondary meaning can be established in many ways, including (but not limited to) … amount of sales and number of customers"); *Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc*., 198 F.3d 1143, 1151 (9th Cir. 1999); *Continental Lab. Prods. v. Medax Int'l*, 114 F. Supp. 2d 992, 1002-03 (S.D. Cal. 2000) (sales success "does not <u>necessarily</u> show that [a] design has secondary meaning") (emphasis added); *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1074 (C.D. Cal. 1999) ("A person asserting trademark infringement against another must prove as a factual matter that it had established secondary meaning in the mark … *prior to the date that the alleged infringer began using the mark*.") (emphasis added); *Armstrong Cork Co. v. World Carpets, Inc*., 597 F.2d 496, 505 (5th Cir. 1979) ("Once the Court's finding of similarity of marks is rejected, the other factors supporting the Court's determination appear insignificant. The only other factors cited by the Court in its findings were the similarities in the companies' business operations and products. These findings, standing without the critical finding of trademark similarity, are hardly sufficient to support a determination of likelihood of confusion.  Indeed, much other evidence at trial seems to support a contrary finding. For example, *the existence of eighty-five different carpet companies using <u>without objection</u> from World the word World in their business not to mention World's <u>toleration</u> of Armstrong's own use of the terms INDOOR WORLD and Pacific World militates against the finding of likelihood of confusion*. n13 Restatement of Torts § 729, Comment (g), at 596 (1938) ("The greater the number of identical or more or less similar trade-marks already in use . . . the less is the likelihood of confusion."); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 844-45 (9th Cir. 1987) ("<u>deliberate copying</u> may suffice to support an inference of secondary meaning") (emphasis added); *Bristol–Myers Squibb Co. v. McNeil–P.P. C., Inc.*, 973 F.2d 1033, 1045–46 (2d Cir. 1992) ("[W]e conclude that, although [the trade dresses of Tylenol PM and Excedrin PM] share many similar elements, the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging."); *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("this factor becomes less important when the marketing channel is

less obscure.  Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion…. Therefore, the district court's determination that because both parties advertise on the Internet this factor weighed in favor of Systems was incorrect."); *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011) ("the district court found that Lahoti and Vericheck both used the Internet as a marketing channel. Lahoti argues that this is an oversimplification, because he markets to consumers while Vericheck markets to businesses. He does not cite to the record in support of this point, however, so the district court's finding must be affirmed. But presuming Lahoti is correct, this factor would not weigh strongly in Vericheck's favor…. Therefore, although the internet trinity suggests a likelihood of confusion, we will address the remaining *Sleekcraft* factors.").

### Samsung's Objection to Apple's Proposed Instruction

Apple's proposed instruction omits an important factor and inaccurately redefines another important factor established by case law and used by the Ninth Circuit Model Jury Instruction. First, the instruction omits the "actual confusion" factor from the Ninth Circuit Model Jury Instruction 15.10.  *See also Filipino Yellow Pgs. v. Asian Journal Publications*, 198 F. 3d 1143, 1151 (9th Cir. 1999) ("Secondary meaning can be established in many ways, including . . . direct consumer testimony; *survey evidence*; exclusivity, … .") (emphasis added).  Second, Apple distorts the "exclusivity" factor by adding "versus whether Apple authorized anyone else to use the trade dress." This language does not appear in the Model Jury Instruction 15.10 for good reason: it is the extent of *un*authorized uses by third-parties that bears on secondary meaning. *See, e.g., CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. … Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted); *Big Star Entertainment, Inc. v. Next Big Star*, 105 F.Supp.2d 185, 204-05 (S.D.N.Y. 2000) ("Extensive third party use of the term 'Big Star' as a mark, especially by businesses which may directly compete with plaintiff, weighs against a finding that plaintiffs unregistered marks are strong"); *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir.1997) ("evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak"); *Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1463 (S.D.Fla.1998) (extensive third party use of word "bongo" undermines inherent distinctiveness of mark), *aff'd without opinion*, 166 F.3d 353 (11th Cir.1998).  Apple's "redefinition" would eliminate the very purpose for considering the factor, which is to assess the strength of the mark in the context of the other uses in the field, specifically, the unauthorized uses.  Under Apple's reformulation, nothing could ever become generic because all of the other uses are unauthorized.  Samsung's Alternative to Apple's Proposed Final Instruction No. 50 is a more accurate representation of the law on secondary meaning and comports with Ninth Circuit Model Jury Instructions.  Additionally, the instruction regarding the "advertisement" factor is based on the Ninth Circuit Model Instruction concerning trademark.  As applied to trade dress, this language does not correctly reflect the Ninth Circuit precedent, which holds that advertising efforts for product configuration trade dress are only relevant if they specifically direct the consumer to those features claimed as trade dress, as opposed to other features, because that may tend to show that consumers will recognize the claimed trade dress as being associated with a particular source.  *First Brands Corporation v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade dress in order to support a finding of secondary meaning; plaintiff failed to use "look for" advertising); *Autodesk, Inc., v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009); *Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1180 (ND Cal. 2007) (quoting same; plaintiff failed to use "look for" advertising; *see also Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, LLC, 259 F.3d 25, 44 (2d Cir. 2001) ("[I]t is advertising that specifically directs a consumer's attention to a particular aspect of the product. To

1

be probative of secondary meaning, the advertising must direct the consumer to the features claimed as trade dress. … Merely 'featuring' the relevant aspect of the product in advertising is

2

no more probative of secondary meaning than are strong sales; again to provide protection based on extensive advertising would extend trade dress protection to the [elements for which protection

3

is sought] without any showing that the consumers associate the dress with the product's source.").  In contrast, Samsung's proposed instruction No. 50.1 properly focuses the jury on

4

relevant evidence and assure that they do not rely upon evidence that cannot support a finding of secondary meaning.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

To prove infringement of its claimed iPad and iPad 2-related trade dresses, Apple has the burden of proving by a preponderance of the evidence that the claimed trade dresses are distinctive.

To prove distinctiveness, Apple must show that its claimed trade dresses have "secondary meaning."  Trade dress has secondary meaning when its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.

To find that the claimed trade dress have acquired secondary meaning, you must find by a preponderance of the evidence that a significant proportion of prospective purchasers of tablet computers associates the claimed trade dress with a single source.

When you are determining whether the claimed trade dress has acquired a secondary meaning, you may consider the following factors:

1.     Consumer Perception.  Whether the people who purchase tablet computers associate the claimed trade dress with Apple;

2.     Advertisement.  To what degree and in what manner Apple may have advertised featuring the claimed trade dress;

3.     Demonstrated Utility.  Whether Apple has successfully used the claimed trade dress to increase the sales of iPad or iPad 2;

4.     Extent of Use. The length of time and manner in which Apple has used the claimed trade dress;

5.     Exclusivity.  Whether Apple's use of the claimed trade dress was exclusive;

6.     Copying.  Whether Samsung intentionally copied Apple's alleged trade dress.

7.     Actual Confusion. Whether Samsung's use of Apple's alleged trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the claimed trade dresses have acquired secondary meaning.

Apple's claimed trade dresses are protectable (or valid) only to the extent you find it has acquired distinctiveness through secondary meaning.  If either the claimed iPad or iPad 2 trade dress has not required a sufficient level of secondary meaning, then that trade dress is invalid and not entitled to protection and your verdict on that trade dress must be for Samsung.

**Source**

Ninth Circuit Model Instruction 15.10 (modified);  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 211 (2000)("a mark has acquired distinctiveness. . . if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.") (internal quotations omitted); *Filipino Yellow Pgs. v. Asian Journal Publications,* 198 F. 3d 1143, 1151 (9th Cir. 1999) ("Secondary meaning can be established in many ways, including . . . direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant."); *First Brands Corporation v. Fred*

*Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade dress in order to support a finding of secondary meaning; plaintiff failed to use "look for" advertising); *Autodesk, Inc., v. Dassault Systems Solidworks Corp.,* 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009);*Walker & Zanger, Inc. v. Paragon Industries, Inc.,* 549 F. Supp. 2d 1168, 1180 (ND Cal. 2007) (quoting same; plaintiff failed to use "look for" advertising; *see also Yankee Candle Co., Inc. v. Bridgewater Candle Co.,* LLC, 259 F.3d 25, 44 (2d Cir. 2001) ("[I]t is advertising that specifically directs a consumer's attention to a particular aspect of the product. To be probative of secondary meaning, the advertising must direct the consumer to the features claimed as trade dress. … Merely 'featuring' the relevant aspect of the product in advertising is no more probative of secondary meaning than are strong sales; again to provide protection based on extensive advertising would extend trade dress protection to the [elements for which protection is sought] without any showing that the consumers associate the dress with the product's source.").

## **Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction No. 50 misstates the law in four ways.  First, Samsung's instruction incorrectly states that Apple's claimed trade dresses are protectable only to the extent the jury finds secondary meaning.  This is only applicable to Apple's *unregistered* trade dress. *See* 15 U.S.C. § 1115 (registration constitutes prima facie evidence of validity); *Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10-cv-02451-LHK, 2010 U.S. Dist. LEXIS 109573, at *15 (N.D. Cal. Oct. 5, 2010) (registration of trade dress entitles owner to presumption of protectable rights under 15 U.S.C. § 1115(a); plaintiff had to show inherent distinctiveness or secondary meaning "[b]ecause [its] trade dress [was] not registered").  Second, Samsung's instruction lists "actual confusion," but this is not a factor to be weighed and counted against a finding of secondary meaning under the facts here.  This would lead the jury to double count "actual confusion," or, as Samsung will argue, the lack of actual confusion.  Secondary meaning and likelihood of confusion are separate concepts with separate tests.[14]  Third, although it is present in the Ninth Circuit model instruction, there is no support for the language "demonstrated utility" in Ninth Circuit opinions.  This phrase appears in only two district court cases within the Ninth Circuit: *Art Attacks Ink, LLC v. MGA Entm't, Inc.*, No. 04-CV-1035-B(BLM), 2007 U.S. Dist. LEXIS 48254, at *13 (S.D. Cal. July 2, 2007) and *Decorations for Generations, Inc. v. Home Depot USA, Inc.*, No. CIV-S-01-0284, 2003 U.S. Dist. LEXIS 26608, at *11 (E.D. Cal. Sept. 22, 2003)—each citing the instructions provided to the jury in that case, not Ninth Circuit authority.  The meaning of the phrase is unclear, and here particularly so given the central role of the functionality doctrine in Samsung's arguments.  The jury would be told simultaneously that "utilitarian function" will render Apple's trade dress design rights unprotectable, and that "demonstrated utility" supports a finding of trade dress distinctiveness, which is highly confusing.  Fourth, although the "exclusivity" term is also present in the Ninth Circuit model instruction, in this case, stating that factor without any explanation will be misleading to the jury, as it will suggest copycat infringers and other unauthorized users arising after the date of Samsung's first

---

[14] The only case where the Ninth Circuit addressed inclusion of actual confusion as a factor in the secondary meaning analysis was a case where the *plaintiff* requested such an instruction because there had been substantial actual confusion, which the plaintiff believed would help to demonstrate that the plaintiff's trademark had secondary meaning – there would not be actual confusion if there was not secondary meaning.  The Ninth Circuit held it was error not to include the plaintiffs' requested instructions.  *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) ("actual confusion is an indicium of secondary meaning," and it was error to exclude from jury instruction *where trademark owner requested inclusion of the factor*). However, lack of evidence of actual confusion does not lead to the opposite conclusion – that there is no secondary meaning.

infringement are relevant, which is not the law.  If this instruction is adopted, qualifying language should be added noting that this factor is "as of the time of the first alleged infringement," and that only authorized uses in the relevant industry are relevant.  *See Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1074 (9th Cir. 1999) (secondary meaning evaluated as of date infringer began using mark); *see, e.g., Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990 ("Evidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law.") *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, 1981 U.S. Dist. LEXIS 17254, *11-13 (N.D. Ga. June 19, 1981) ("The plaintiff's vigilance in protecting its marks, however, is not in issue. The court found in Miss Teen U.S.A. that the *plaintiff's litigiousness underscored* its claim to exclusive use of its mark MISS U.S.A. Miss[.]  Notwithstanding the senior user's vigilance in policing its mark, however, simultaneous use of similar names by a third party can erode a mark's strength. In discussing the strength of the plaintiff's trademark in Amstar Corp., the Fifth Circuit emphasized the importance of the evidence of *uncontested third-party uses* to its holding that the plaintiff's mark was entitled to only limited protection outside the market for its sugar and related food products…. Unquestionably, the pageant industry is crowded. The court acknowledges that in a market of this nature, amidst all these competing pageants, it takes a herculean effort by a promoter to establish a reputation for its pageant such that the title it bestows becomes associated solely with its pageant. By investing enormous amounts of time and money into promoting its pageant and *challenging others using similar names*, the plaintiff, however, has accomplished this goal.") (emphasis added); *Amstar Corp. v. Domino's Pizza, Inc*., 615 F.2d 252, 259-60 (5th Cir. 1980) ("We do not believe that such extensive third-party use and registration of 'Domino' can be so readily dismissed. The impact of such evidence is not dispelled merely because 'Domino' cigarettes and matches are not leading brands, or because some uses of the mark 'Domino' by third parties have not been related to food products. As was stated by one commentator, 'If the owner of KODAK should *permit its use by others* on washing powders, shoes, candy bars, or cosmetics, or if The Coca-Cola Company should permit COCA-COLA or COKE to be used for rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not take long for even these giants in the trademark world to be reduced to pigmy size.'") (emphasis added); *General Motors Co. v. Urban Gorilla, LLC*, 2010 U.S. Dist. LEXIS 136711, *38-39 (D. Utah Dec. 27, 2010) ("Active and aggressive policing of unauthorized uses of a mark supports a finding that the owner is engaging in substantially exclusive use of the mark."); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 559 F. Supp. 2d 472, 477 (S.D.N.Y. 2008) ("Starbucks devotes substantial effort to policing its registered Starbucks Marks. Starbucks has a policy of following up on uses that it deems to be infringing and demanding that the use be terminated. Starbucks routinely sends cease and desist letters and, if necessary, commences litigation in support of these efforts."); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp. 2d 734, 746 (W.D. Ky. 2008) ("As noted in Nikepal, supra,'The law does not require that use of a famous mark be absolutely exclusive, but merely "substantially exclusive."' Nikepal, 2007 U.S. Dist. LEXIS 66686, 2007 WL 2782030 at *7, citing, L.D. Kichler Co. v. Davoil Inc., 192 F.3d 1349, 1352 (Fed.Cir. 1999).  V Secret asserts that it is engaged in substantially exclusive use of the VICTORIA'S SECRET mark. In support of this contention, Vice President Kriss avers that V Secret actively and aggressively polices its mark against unauthorized and dilutive uses by others. It pursues unauthorized uses through cease and desist letters, trademark oppositions, and litigation. Kriss Decl., P 27. The Moseleys have not disputed this assertion. We therefore find the requisite substantially exclusive use of the mark.").

## PROPOSED FINAL JURY INSTRUCTION NO. 50.1
## SECONDARY MEANING—ADVERTISING

**Samsung's Proposed Instruction**

To be probative of secondary meaning, Apple's advertising must direct the consumer to those features claimed as trade dress or identify or stress them, such as by directing the consumer to "look for" the claimed features. Merely featuring the relevant aspects of the product does not support a finding of secondary meaning.

**Source**

*First Brands Corporation v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade dress in order to support a finding of secondary meaning; plaintiff failed to use "look for" advertising); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, LLC, 259 F.3d 25, 44 (2d Cir. 2001) ("[I]t is advertising that specifically directs a consumer's attention to a particular aspect of the product. To be probative of secondary meaning, the advertising must direct the consumer to the features claimed as trade dress. [Citation.] Merely 'featuring' the relevant aspect of the product in advertising is no more probative of secondary meaning than are strong sales; again to provide protection based on extensive advertising would extend trade dress protection to the [elements for which protection is sought] without any showing that the consumers associate the dress with the product's source."); *Autodesk, Inc., v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009);*Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1180 (ND Cal 2007) (quoting same; plaintiff failed to use "look for" advertising).

**Samsung's Statement in Support**

As Samsung's Proposed Final Instruction 50 explains, several factors may be considered in determining whether the claimed trade dress has acquired a secondary meaning. Instruction 50.1 addresses one of those factors:  advertisement.  Apple has presented evidence about its marketing and advertising efforts in support of its position that the trade dress associated with its products is well known to consumers.  Apple has not presented a competing instruction, however.  Under the precedent in support of Instruction 50.1, it is clear that advertising efforts for product configuration trade dress are only relevant if they specifically direct the consumer to those features claimed as trade dress, as opposed to other features, because that may tend to show that consumers will recognize the claimed trade dress as being associated with a particular source. This instruction will focus the jury on relevant evidence and assure that they do not rely upon evidence that cannot support a finding of secondary meaning.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is not in the Ninth Circuit model instructions.  It is also contrary to law.  Ninth Circuit precedent requires only that advertising "feature in some way the trade dress itself"; it does not require literally "directing the consumer to 'look for' the claimed features."  *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (discussing requirement of "image advertising"); *see, e.g.*, *HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 695 (9th Cir. 1993); *Interactive Health LLC v. Kong Kong USA, Inc.*, 2008 U.S. Dist. LEXIS 123559, at *6 (C.D. Cal. July 24, 2008) (rejecting assertion that "advertisement must overtly point to the trade dress" as "there is no such restriction in the case law"); *Adidas-Salomon Ag v. Target Corp.*, 228 F. Supp. 2d 1192, 1208 ("trade dress can be recognizable without advertising specifically telling a consumer to look for it").  Samsung's "instruction" is also one-sided, calling out a specific factor from the secondary meaning analysis and

emphasizing only what would lead to a finding of no secondary meaning.  Providing the list of factors to consider should be sufficient without providing a separate instruction on each factor.

**PROPOSED FINAL JURY INSTRUCTION NO. 50.2
SECONDARY MEANING—SALES SUCCESS**

### Samsung's Proposed Instruction

Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success could be attributable to the desirability of the product design rather than the source-designating capacity of the trade dress. And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source.

### Source

*Continental Laboratory Products, Inc. v. Medax Intern., Inc*., 114 F. Supp. 2d 992, 1002-03 (S.D.Cal. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd*., 40 F.3d 1431, 1452-53 (3d Cir. 1994) ("Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success may well be attributable to the desirability of the product configuration rather than the source-designating capacity of the supposedly distinguishing feature or combination of features. And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source."); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.,* 99 F. Supp. 2d 140, 155 (D. Mass. 2000); 4 *McCarthy* § 15:47 at 15-67 ("Popularity of a product is not synonymous with secondary meaning. Large sales of the product may be due to dozens of factors, only one of which may be the drawing power of the trademark.").

### Samsung's Statement in Support

As Samsung's Proposed Final Instruction 50 explains, several factors may be considered in determining whether the claimed trade dress has acquired a secondary meaning. Instruction 50.2 addresses another one of those factors: sales success. Apple did not submit any competing instruction. Although Apple has indicated its intent to present evidence about its product sales, Apple has not presented an instruction that would help the jury fairly assess that evidence in the context of a product configuration trade dress case. As the authorities cited in support of Instruction 50.2 explain, the product's market success needs to be attributable to the claimed trade dress in order to be relevant, so sales success evidence without any connection to the claimed trade dress features should be disregarded.

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is not in the Ninth Circuit model instructions. It is also argumentative and not supported in the law of the Ninth Circuit. As with the previous instruction, it calls out a specific factor of the secondary meaning analysis and emphasizes only what would lead to a finding of no secondary meaning. Moreover, the quote that Samsung uses for this instruction from *Cont'l Lab. Prods., Inc. v. Medax Intern., Inc.*, 114 F. Supp. 2d 992, 1002-03 (S.D. Cal. 2000), is not Ninth Circuit authority, but a Third Circuit case, *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994). Ninth Circuit authority is clear that sales success *does* support a finding of secondary meaning, including in product design cases. *See, e.g., Art Attacks, LLC v. MGA Enter., Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) ("amount of sales and number of customers" relevant to secondary meaning); *Filipino Yellow Pages, Inc. v. Asian Journal Publn's., Inc.*, 198 F.3d 1143, 1151 (same).

**PROPOSED FINAL JURY INSTRUCTION NO. 50.3**
**SECONDARY MEANING—EXCLUSIVITY OF USE**

**Samsung's Proposed Instruction**

If there are numerous other products in the market with the same or similar trade dresses, this tends to support a finding that the trade dress does not have secondary meaning.

**Source**

*Miss World (UK), Inc. v. Mrs. American Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) ("Simply put, a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive'. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."); *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F. 3d 971 (8th Cir. 2006) (considering use of mark by third-parties and newspapers); *CG Roxane LLC v. Fiji Water Co. LLC,* 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted); *Big Star Entertainment, Inc. v. Next Big Star*, 105 F.Supp.2d 185, 204-05 (S.D.N.Y. 2000) ("Extensive third party use of the term 'Big Star' as a mark, especially by businesses which may directly compete with plaintiff, weighs against a finding that plaintiffs unregistered marks are strong"); *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir.1997) ("evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak"); *Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1463 (S.D.Fla.1998) (extensive third party use of word "bongo" undermines inherent distinctiveness of mark), *aff'd without opinion*, 166 F.3d 353 (11th Cir.1998).

**Samsung's Statement in Support**

Instruction 50.3, addressing exclusivity of trade dress, has no competing Apple instruction. This instruction is important for a case in which the marketplace is filled with products that have similar features and where, despite those similarities, customers are not confused and can easily distinguish among them. The law does not protect non-distinctive trade dress any more than it protects trade dress that does not identify the product's source.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is not in the Ninth Circuit model instructions. It is also flawed in the same manner as the instructions above, as it improperly presents an argumentative counterpoint to one specific factor. In addition, it improperly phrases the exclusivity test as looking to the present—"if there *are* numerous other products in the market . . . ." Secondary meaning is evaluated at the time infringement began, and therefore current use is irrelevant. *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1074 (9th Cir. 1999) (secondary meaning evaluated as of date infringer began using mark). Furthermore, evidence of other, unrelated infringing products in the market is irrelevant. *See, e.g., Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990). It also fails to inform the jury that unauthorized users do not cut against a finding of secondary meaning. *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, 1981 U.S. Dist. LEXIS 17254, *11-13 (N.D. Ga. June 19, 1981) ("The plaintiff's vigilance in protecting its marks, however, is not in issue. The court found in Miss Teen U.S.A. that the *plaintiff's litigiousness underscored* its claim to exclusive use of its mark MISS U.S.A. Miss[.] Notwithstanding the senior user's vigilance in policing its mark, however, simultaneous

1   use of similar names by a third party can erode a mark's strength. In discussing the strength of the
    plaintiff's trademark in *Amstar Corp.*, the Fifth Circuit emphasized the importance of the
2   evidence of *uncontested third-party uses* to its holding that the plaintiff's mark was entitled to
    only limited protection outside the market for its sugar and related food products….
3   Unquestionably, the pageant industry is crowded. The court acknowledges that in a market of this
    nature, amidst all these competing pageants, it takes a herculean effort by a promoter to establish
4   a reputation for its pageant such that the title it bestows becomes associated solely with its
    pageant. By investing enormous amounts of time and money into promoting its pageant and
5   *challenging others using similar names*, the plaintiff, however, has accomplished this goal.")
    (emphasis added); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980)
6   ("We do not believe that such extensive third-party use and registration of 'Domino' can be so
    readily dismissed. The impact of such evidence is not dispelled merely because 'Domino'
7   cigarettes and matches are not leading brands, or because some uses of the mark 'Domino' by
    third parties have not been related to food products. As was stated by one commentator, 'If the
8   owner of KODAK should *permit its use by others* on washing powders, shoes, candy bars, or
    cosmetics, or if The Coca-Cola Company should permit COCA-COLA or COKE to be used for
9   rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not take long
    for even these giants in the trademark world to be reduced to pigmy size.'") (emphasis added);
10  *General Motors Co. v. Urban Gorilla, LLC*, 2010 U.S. Dist. LEXIS 136711, *38-39 (D. Utah
    Dec. 27, 2010) ("Active and aggressive policing of unauthorized uses of a mark supports a
11  finding that the owner is engaging in substantially exclusive use of the mark."); *Starbucks
    Corp. v. Wolfe's Borough Coffee, Inc.*, 559 F. Supp. 2d 472, 477 (S.D.N.Y. 2008) ("Starbucks
12  devotes substantial effort to policing its registered Starbucks Marks. Starbucks has a policy of
    following up on uses that it deems to be infringing and demanding that the use be terminated.
13  Starbucks routinely sends cease and desist letters and, if necessary, commences litigation in
    support of these efforts."); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp. 2d 734, 746 (W.D.
14  Ky. 2008) ("As noted in Nikepal, supra,'The law does not require that use of a famous mark
    absolutely exclusive, but merely "substantially exclusive."' Nikepal, 2007 U.S. Dist. LEXIS
15  66686, 2007 WL 2782030 at *7, citing, L.D. Kichler Co. v. Davoil Inc., 192 F.3d 1349, 1352
    (Fed.Cir. 1999). V Secret asserts that it is engaged in substantially exclusive use of the
16  VICTORIA'S SECRET mark. In support of this contention, Vice President Kriss avers that V
    Secret actively and aggressively polices its mark against unauthorized and dilutive uses by others.
17  It pursues unauthorized uses through cease and desist letters, trademark oppositions, and
    litigation. Kriss Decl., P 27. The Moseleys have not disputed this assertion. We therefore find the
18  requisite substantially exclusive use of the mark.").

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 50.4**
**SECONDARY MEANING—COPYING**

### Samsung's Proposed Instruction

To support a finding of secondary meaning, deliberate copying must be an intentional attempt to capitalize on a company's reputation or good will.  Mere attempts to copy a product are not necessarily probative since the copier may very well be exploiting a particularly desirable feature, rather than seeking to confuse consumers as to the source of the product.  Thus the relevant intent is not just the intent to copy but, rather, the intent to "pass off" ones goods as those of another.

### Source

*Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 845-46 (9th Cir. 1987) ("Competitors may intentionally copy product features for a variety of reasons. They may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits."); *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) (found no intent because the defendant did not have "any intention of capitalizing on [plaintiff's] trademark.").

### Samsung's Statement in Support

Instruction 50.4 addresses the importance of establishing an intent to capitalize on the plaintiff's mark and assists the jury in placing supposed "copying" activities into the proper context.  Apple has attempted to present facts it will argue constitute willful copying, yet *Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989), establishes that such willful copying is irrelevant without the intent to confuse consumers.  Apple has not submitted a competing instruction that reflects this important legal point.

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is not in the Ninth Circuit model instructions.  It also misstates the law by improperly limiting the "copying" prong of the test for secondary meaning such that copying would be relevant only if there was "an intentional attempt to capitalize on a company's reputation or good will" or "to 'pass off' one's goods as those of another."  This is not the law. If Samsung intentionally copied Apple's designs, that supports a finding of secondary meaning. *Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999). Samsung's assertion that Apple must prove an intent to "pass off" is even more incorrect for dilution claims, which have nothing to do with "passing off" or confusion.  15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark").  The cases Samsung cites to the contrary are inapposite.  *Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989), involves analysis of a Florida statute, and the internal quote is to a 1917 case that predates the Lanham Act.  Neither has anything to do with the "intent to copy" prong of the secondary meaning test.  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845-46 (9th Cir. 1987), actually *contradicts* Samsung's point, as it states, "evidence of deliberate copying is relevant to a determination of secondary meaning" and even that "in appropriate circumstances, deliberate copying may suffice to support an inference of secondary meaning."  The quote Samsung pulls out was to explain why the Ninth Circuit declined to "hold that evidence of deliberate copying *shifts the burden of proof*."  826 F.2d at 844 (emphasis

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

added).  And *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005), is inapposite because it is considering the likelihood of confusion factors, *not* secondary meaning. The remainder of Samsung's proposed instruction about exploiting a "particularly desirable feature" is misleading and unsupported by any authority because no feature protected under patent or trade dress laws can be exploited without permission for any reason – regardless of how desirable it is.  Consideration of the desirability of a feature cannot be divorced from intellectual property laws.  Finally, this is another unnecessary, one-sided instruction.

**PROPOSED FINAL JURY INSTRUCTION NO. 50.5**
**SECONDARY MEANING—ACTUAL CONFUSION**

**Samsung's Proposed Instruction**

Evidence of just a few instances of actual confusion is inadequate to establish secondary meaning.

**Source**

*Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) (failure to list actual confusion as one of the factors the jury should have considered in determining whether the plaintiff had established secondary meaning was not harmless error); *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 873-74 (9th Cir. 2002) (holding that a few instances of actual confusion is not probative of secondary meaning).

**Samsung's Statement in Support**

Instruction 50.5 reflects established Ninth Circuit precedent to the effect that incidental instances of confusion are not adequate to support a finding of secondary meaning.  Without such an instruction, jurors may give too much significance to evidence of such incidental instances of confusion.  Apple did not submit any competing instruction.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is not in the Ninth Circuit model instructions.  It also misstates the law and is misleading.  First, *absence* of actual confusion is not part of the secondary meaning analysis—even though *presence* of actual confusion is an indicium of secondary meaning.  *See* Apple's Argument against proposed instruction No. 50 and accompanying footnote.  *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 873-74 (9th Cir. 2002), *did not* hold that a few instances of actual confusion was not *probative* of secondary meaning.  It held that the particular alleged evidence of actual confusion in that case did not establish secondary meaning, because one affidavit "lack[ed] foundation," two incorrectly addressed letters "could have been the result of clerical errors," and six declarations all contained nearly identical language from business owners who "personally" knew the plaintiff.  287 F.3d at 873-74.  Second, as with previous proposed instructions, Samsung is proposing an unnecessary, one-sided instruction that improperly biases the jury against a finding of secondary meaning.

**PROPOSED FINAL JURY INSTRUCTION NO. 51**
**TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY—**
**NON-FUNCTIONALITY REQUIREMENT**

**Apple's Proposed Instruction**

An individual product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality.

To determine whether a product's particular shape or form is functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form is essential to the product's use or purpose. This is because the fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress. A design patent may be evidence that the trade dress is non-functional.

You should assess the following factors in deciding if a product feature or a design as a whole is functional or non-functional:

1. *The Design's Utilitarian Advantage.* In considering this factor, you may examine whether the particular design or product feature yields a utilitarian advantage over how the product might be without that particular design or product feature. If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary it is more likely to be non-functional;

2. *Availability of Alternate Designs.* In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration. For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative. They must be commercially feasible. The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional;

3. *Advertising Utilitarian Advantage in the Design.* In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly. If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional; and

4. *The Design's Method of Manufacture.* In considering this factor, you may examine whether the particular design or feature results from a relatively simple or inexpensive method of manufacture. If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the design or feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

Apple has the burden of proving that its unregistered trade dresses are more likely than not non-functional. Samsung bears the burden of proving that the registered iPhone trade is more likely than not functional.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.11 (2007 Ed.).

**Authorities**

*Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 4 (N.D. Cal., June 30, 2012) ("[U]nder the traditional, utilitarian functionality test, a trade dress is functional 'when it is essential to the use or purpose of the device or when it affects the cost or quality of the device.' In applying this test, the Ninth Circuit assesses four factors: '(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available.'") (citing *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001); *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)); *id.* at 5 ("The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress.") (citing *Adidas-Solomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1195 (D. Or. 2002) (citing *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001))); *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006-09 (9th Cir. 1998) ("To determine whether a product feature is functional, we consider several factors: (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture. No one factor is dispositive."); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842-43 (9th Cir. 1987) ("We examine trade dress as a whole to determine its functionality; functional elements that are separately unprotectable can be protected together as part of a trade dress. In other words, our inquiry is not addressed to whether individual elements of the trade dress fall within the definition of functional, but to whether the whole collection of elements taken together are functional."); *see also Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32-33 (2001); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("in evaluating functionality . . . it is crucial that we focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create. Trade dress is the composite tapestry of visual effects. Courts have repeatedly cautioned that, in trademark-- and especially trade dress -- cases, the mark must be examined as a whole, not by its individual constituent parts.") (emphasis in original); *Dogloo, Inc. v. Doskocil Mfg. Co.*, 893 F. Supp. 911, 918 (C.D. Cal. 1995) ("It is well established that a product shape/configuration which is *primarily functional or utilitarian* cannot be capable of trademark protection.") (emphasis added)); *Au-Tomotive Gold*, 457 F.3d at 1072 ("Auto Gold argues that Volkswagen and Audi trademarks are functional features of its products because 'the trademark is the feature of the product which constitutes the actual benefit the consumer wishes to purchase.' While that may be so, the fact that a trademark is desirable *does not, and should not*, render it unprotectable."); *id.* at 1072-73; *Leatherman Tool Group, Inc. v. Cooper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999) ("Leatherman is correct that trade dress must be viewed as a whole, but where the whole is nothing other than the assemblage of functional parts, <u>and where even the arrangement and combination of the parts is designed to result in superior performance</u>, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional.") (emphasis added); *McCarthy on Trademarks and Unfair Competition*, § 7.93 (4th ed. 2010) ("A design patent, rather than detracting from a claim of nonfunctional trade dress or trademark, may support such a claim. Since a design patent is granted only for nonfunctional designs, it may be presumptive evidence of nonfunctionality and thus support the trademark claimant."); *Global Mfr. Group, LLC v. Gadget Universe.com*, 417 F. Supp. 2d 1161, 1169 (S.D. Cal. 2006)

1  ("Finally, the design patent, which protects the 'new, original and ornamental' appearance of the scooter, 35 U.S.C. § 171, is evidence supporting Plaintiff's contention that the trade dress is not
2  functional . . . .").

3

4  **Samsung's Objection to Apple's Proposed Instruction**

5  This instruction is confusing to the jury and prejudicial to Samsung. First, Apple's proposed instruction omits an important factor established by case law and used by the Ninth Circuit Model Instruction: "It is non functional if its shape or form makes no contribution to the product's
6  function or operation. If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional. However, if the feature serves no purpose
7  other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional." Second, Apple improperly adds language that is not dictated by the Ninth
8  Circuit Model Instruction: "the fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather functional elements
9  that are separately unprotectable can be protected together as part of a trade dress." Indeed, Apple misstates the law. *See Leatherman Tool Group, Inc. v. Cooper Indus., Inc*., 199 F. 3d
10  1009, 1013 (9th Cir. 1999) ("[W]here the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to
11  result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional."). Third, Apple's use of the *Disc Golf* factors is
12  also inappropriate. In view of the Supreme Court's admonition that "Where the design is functional under the *Inwood* formulation [i.e., if the feature is essential to the use or purpose of
13  the article or if it affects the cost or quality of the article] there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices, Inc. v. Marketing*
14  *Displays, Inc.,* 532 U.S. 23, 33 (2001). In so holding, the Supreme Court rejected as erroneous the appellate court's "comprehensive" definition that inquired "whether the particular product
15  configuration is a competitive necessity." *Id.* Yet that is what the *Disc Golf* factors do. Accordingly, instructing the jury to consider these factors for utilitarian functionality would be
16  erroneous under the Supreme Court's controlling precedent. At a minimum, if the *Disc Golf* factors are referenced, it should be explain that they are merely guides to use in assessing
17  utilitarian functionality. *See Secalt S.A. v. Wuxi Shenxi Construction Mach. Co. Ltd.*, 688 F.3d 677, 683 (9th Cir. 2012) ("A determination of functionality under *Inwood* [or *TrafFix*] may be
18  seen as short circuiting some of the *Disc Golf* factors."). Finally, it would be legal error not to give an instruction on aesthetic functionality in this product configuration case. As this Court
19  recognized in its June 29, 2012 Summary Judgment Order (Dkt No. 1158), the Supreme Court has recognized aesthetic functionality as a viable defense and the Ninth Circuit has affirmed its
20  continued viability. *Id.* at 4 (citing *TrafFix*, 532 U.S. at 32-33), 7 (citing *Au-Tomotive Gold*, 457 F.3d at 1070); *see also Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1007-8
21  (C.D. Cal. 2011); *Aurora World Inc. v, Ty, Inc.*, 719 F. Supp.2d 1115, 1149 (C.D. Ca. 2009); *The Jumpitz Corp. v. Viacom Intern., Inc.*, No. 09-CV1063, 2010 WL 3238953, * 7 (Aug. 13, 2010,
22  S.D. Cal. 2010). Apple did not submit any competing instruction on aesthetic functionality. In addition, Apple's new addition to its proposed instruction —"A design patent may be evidence
23  that the trade dress is non-functional"— is inapposite in that the claimed scope of the asserted design patents are different from the claimed scope of the asserted trade dresses and Samsung
24  challenge the non-functionality argument regarding the design patents Apple asserts.

25

26

27

28

1   **Samsung's Proposed Instruction**

2   Trade dress that is functional is invalid and not protectable.  You must decide whether the alleged trade dresses asserted by Apple in this action are functional.

3

4   There are two types of functionality you should consider in deciding whether Apple's claimed trade dresses are functional:  utilitarian functionality and aesthetic functionality.  If any of Apple's claimed trade dresses are functional in either of these ways, that trade dress is invalid and

5   you must find for Samsung on it.

6   • Utilitarian functionality means that a claimed feature of the trade dress is:

7   (a) essential to the product's use or purpose *or*

8   (b) affects the cost or quality of the product.

9   It is non-functional if its shape or form makes no contribution to the product's function or operation.  If the feature is part of the actual benefit that consumers wish to purchase when they

10   buy the product, the feature is functional.  However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.

11

12   • Aesthetic functionality means that a claimed design feature of the trade dress improves the attractiveness and eye-appeal of the design.  Trade dress is aesthetically functional if limiting its use would impose a significant non-

13   reputational-related competitive disadvantage upon a company.  If the entire significance of a feature is merely to associate goods with a particular source, the

14   feature is non-functional.

15   Functionality is determined by considering the trade dress as a whole and not the individual elements alone.  However, if the whole is nothing other than the assemblage of functional parts,

16   and where even the arrangement and combination of the parts is designed to result in superior performance, then the trade dress as a whole is functional.

17   **Source**

18

19   Ninth Circuit Model Instructions No. 15.11(modified) ; *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (trade dress protection may not be claimed for product features that are functional); *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995)

20   ("[I]f exclusive use of a feature would put competitors at a significant non-reputation-related disadvantage ["the feature in general terms is functional]."); *Au-Tomotive Gold, Inc. v.*

21   *Volkswagen of America, Inc.*, 457 F.3d 1062, 1067-74 (9th Cir. 2006) (discussing and defining aesthetic and utilitarian functionality); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782 (9th

22   Cir. 2002) ("The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional...."); *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,

23   199 F. 3d 1009, 1013 (9th Cir. 1999) ("[W]here the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to

24   result in superior performance, it is semantic trickery to say that there is still some sort of separate 'overall appearance' which is non-functional."); *Mattel, Inc. v. MGA Entertainment,*

25   *Inc.*, 782 F. Supp. 2d 911, 1007-8 (C.D. Cal. 2011); *Aurora World Inc. v, Ty, Inc.*, 719 F. Supp. 2d 1115, 1149 (C.D. Ca. 2009) ("Other design features, such as the fanciful coloring of the toys,

26   are aesthetically functional as that term is used in Au-Tomotive Gold."); *The Jumpitz Corp. v. Viacom Intern., Inc.*, No. 09-CV1063, 2010 WL 3238953, * 7 (Aug. 13, 2010, S.D. Cal. 2010).

27

28

1    **Apple's Objection to Samsung's Instruction**

2    Samsung's proposed instruction misstates the law in five ways.  First, it improperly suggests a
feature-by-feature test for functionality.  Trade dress functionality is determined *as a whole*, not
3    on a feature-by-feature basis.  *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th
Cir. 2001) ("in evaluating functionality . . . it is crucial that we focus *not* on the individual
4    elements, but rather on the overall visual impression") (emphasis in original).  Samsung quotes
*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999), for the
5    proposition that if the whole is nothing other than the assemblage of functional parts "where even
the arrangement and combination of the parts is designed to result in superior performance," the
6    whole is still functional.  This quote is highly misleading.  *Leatherman* agrees that "trade dress
must be viewed as a whole."  Second, the instruction mentions the "cost or quality" standard but
7    does not explain it with reference to the four-factor test applied in the Ninth Circuit.  *See, e.g.*,
*Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) ("To determine
8    whether a product feature is functional, we consider several factors . . .").  Third, Samsung's
instruction states that trade dress is only non-functional if it "makes no contribution to the
9    product's function or operation."  That is not the legal standard (*see, e.g., Dogloo, Inc. v.
Doskocil Mfg. Co.*, 893 F. Supp. 911, 918 (C.D. Cal. 1995) ("It is well established that a product
10   shape/configuration which is *primarily functional or utilitarian* cannot be capable of trademark
protection.") (emphasis added)), and the cases cited by Samsung do not support such an
11   expansive view.  Fourth, Samsung states that a "feature is functional" if it "is part of the actual
benefit that consumers wish to purchase."  This will mislead the jury given the facts of this case,
12   as Apple's design is a strong driver of demand for Apple's products, but desirability does not
render trade dress unprotectable.  In a case cited by Samsung, the Ninth Circuit explained this
13   distinction clearly: "Auto Gold argues that Volkswagen and Audi trademarks are functional
features of its products because 'the trademark is the feature of the product which constitutes the
14   actual benefit the consumer wishes to purchase.'  While that may be so, the fact that a trademark
is desirable *does not, and should not*, render it unprotectable." *Au-Tomotive Gold, Inc. v.
15   Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006).  Samsung's use of various phrases
other than the legal standard will mislead the jury into believing exactly what the Ninth Circuit
16   rejects: that desirability of Apple's designs renders them unprotectable.  Fifth, Samsung's claim
that aesthetic functionality is anything that "improves the attractiveness and eye-appeal of the
17   design" is an exceedingly overbroad standard that would swallow all trade dress.  That quote is
from *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1068 (9th Cir. 2006),
18   where the court recounts the history of the aesthetic functionality doctrine.  On the very next page
of the same opinion—and repeated again several pages later—the Ninth Circuit "emphatically
19   rejected the notion that any feature of a product which contributes to the consumer appeal and
saleability of the product is, as a matter of law, a functional element of the product." *Au-
20   Tomotive Gold*, 457 F.3d at 1069, 1073.  Accepting such a broad view of aesthetic functionality
would lead to the problematic view that "[t]he more appealing the design, the less protection it
21   would receive." *Id.* (internal quotation omitted).

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 52**
**TRADE DRESS DILUTION—ELEMENTS AND BURDEN OF PROOF**

**Apple's Proposed Instruction**

Apple contends that Samsung has diluted Apple's iPhone and iPad-related trade dresses. "Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish goods or services, regardless of the presence or absence of competition, actual or likely confusion, mistake, deception, or economic injury.

To prove this claim as to any of its asserted trade dresses that you have found is valid, Apple has the burden of proving that each of the following additional elements is more likely than not true:

    1.    that the asserted Apple trade dress is famous;

    2.    that Samsung began selling its accused products in commerce after Apple's asserted trade dress became famous; and

    3.    that Samsung's accused products are likely to cause dilution of Apple's asserted trade dress.

For any Apple trade dress that you have found is valid (or "protectable"), if you also find that each of these three elements has been proved, your verdict on dilution with respect to that trade dress should be for Apple. If Apple has failed to prove any of these elements, your verdict on dilution with respect to that trade dress should be for Samsung.

**Source**

Adapted from ABA 3.4.1.

**Authorities**

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002) ("Dilution, by contrast, does not require a showing of consumer confusion[.]"). *Compare Apple Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Denying Samsung's Motion for Summary Judgment, Dkt. No. 1158, at 3 (N.D. Cal., June 30, 2012) (trade dress infringement requires showing of likelihood of confusion) *with id.* at 8 (trademark or trade dress dilution claim addresses use that "impairs the distinctiveness" or "harms the reputation" of famous mark); 15 U.S.C. § 1115 (registration constitutes prima facie evidence of validity); *Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10-cv-02451-LHK, 2010 U.S. Dist. LEXIS 109573, at *15 (N.D. Cal. Oct. 5, 2010) (registration of trade dress entitles owner to presumption of protectable rights under 15 U.S.C. § 1115(a); plaintiff had to show inherent distinctiveness or secondary meaning "[b]ecause [its] trade dress [was] not registered."); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992).

1   **Samsung's Objection to Apple's Proposed Instruction**

2   Apple's proposed instruction is confusing to the jury and prejudicial to Samsung.  This
    Instruction fails to properly identify Apple's burden of proof throughout, using  the passive voice
3   construction "if you also find that each of these three elements has been proved," which
    eliminates both who must prove and the standard of the proof. In addition, by collapsing
4   distinctiveness and non-functionality into a single element "valid," Apple suggests that the jury
    need not separately consider those elements, which is particularly confusing in the case of
5   Apple's iPhone dilution claims, for which the jury may not return to the trade dress infringement
    instructions.  Further, the placement of this instruction after the preliminary trade dress
6   infringement instructions is also confusing.  It will be easier for the jurors to understand their task
    if the trade dress infringement instructions directly follow the instructions regarding whether
7   trade dress is capable of being infringed (i.e., distinctiveness and non-functionality), and the
    dilution factors follow the instructions regarding whether trade dress is capable of being diluted.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

In this case, Apple contends that Samsung has diluted Apple's trade dresses.

"Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish goods or services as coming from a single source. The purpose of the anti-dilution laws is to protect against erosion of a famous trade dress's value as a source identifier. The mere fact that consumers mentally associate the junior user's mark with the senior user's mark is not enough to establish dilution.

Dilution is reserved for a limited set of trade dresses that are famous, meaning that they are so widely known that they are like a household name among members of the general public. It will be for you to decide whether Apple's asserted trade dresses are famous enough to be protected under dilution law and, if so, whether those trade dresses have been diluted.

**Source**

15 U.S.C. § 1125(c)(1); *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1179-1180 (9th Cir. 2007) ("Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge their value."); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way . . . the mark must be a household name.").

**Apple's Objection to Samsung's Instruction**

Samsung's instruction is misleading and misstates the law in four ways. First, it refers to tarnishment, which is not at issue in this case. Second, it incorrectly states that association of the junior user's mark with the senior user's mark is not enough to establish dilution, when that is, in fact, the very test for dilution by blurring: 15 U.S.C. § 1125(c)(2)(B) ("'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark"). Third, Samsung's comment that the jury must decide if Apple's trade dresses are "famous enough" is misleading as it suggests multiple levels of fame. This instruction may improperly lead the jury to believe that it could find in favor of Apple on application of the test for fame but nevertheless determine that Apple's trade dress is not "famous enough" for dilution. Fourth, the statement that a famous trade dress is like a "household name" is likely to confuse the jury, as that language logically can only apply to word marks, not trade dress.

## PROPOSED FINAL JURY INSTRUCTION NO. 52.1
## TRADE DRESS DILUTION—ELEMENTS

**Samsung's Proposed Instruction**

In order to prove dilution, Apple must prove **each** of the following elements by a preponderance of evidence:

1.      That each of the alleged trade dresses is famous;

2.      That each of the alleged trade dresses is not functional;

3.      That each of the alleged trade dresses is distinctive by having acquired secondary meaning;

4.      That each of the alleged trade dresses was famous before any of the accused Samsung products were sold to the public; and

5.      That Samsung's alleged use of each of the claimed trade dresses is likely to cause dilution of the distinctive quality of each alleged trade dress.

**Source**

*Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) ("A plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark.").

**Apple's Objection to Samsung's Instruction**

Samsung's instruction is misleading, unnecessarily repetitive, and a misstatement of the law. First, this instruction on the elements of dilution is reached without *any* prior instruction from Samsung that Apple has a trade registration and that the trade registration entitles that trade dress to a presumption of validity.  Because Apple's dilution claim is based in part on a registered trade dress, this is highly misleading to the jury and prejudicial to Apple.  Second, the instruction improperly suggests that Apple must prove secondary meaning, which, as discussed above, does not apply to Apple's registered trade dress.  *See* 15 U.S.C. § 1115 (registration constitutes prima facie evidence of validity); *Rodan & Fields, LLC v. Estee Lauder Cos.*, No. 10-cv-02451-LHK, 2010 U.S. Dist. LEXIS 109573, at *15 (N.D. Cal. Oct. 5, 2010) (registration of trade dress entitles owner to presumption of protectable rights under 15 U.S.C. § 1115(a); plaintiff had to show inherent distinctiveness or secondary meaning "[b]ecause [its] trade dress [was] not registered.").  Third, this instruction improperly suggests that Apple must prove distinctiveness *again*, when distinctiveness has already been addressed in earlier instructions to establish that Apple has valid (or protectable) trade dress.  It will confuse the jury to suggest that Apple must prove distinctiveness and non-functionality separately for its dilution claim and its infringement claim.

# PROPOSED FINAL JURY INSTRUCTION NO. 52.2
## TRADE DRESS FUNCTIONALITY—DILUTION—BURDEN OF PROOF

**Samsung's Proposed Instruction**

As I have instructed you in connection with Apple's infringement claim, trade dress that is functional is invalid and not protectable.  You must decide whether the product trade dress asserted by Apple in this action is functional.

To prove trade dress dilution, Apple has the burden of proving by a preponderance of the evidence that the claimed, unregistered trade dresses are not functional.

Samsung has the initial burden of proving by a preponderance of the evidence that the iPhone trade dress depicted in U.S. Registration No. 3,470,983 is functional.  If Samsung makes this showing, the burden shifts to Apple to prove by a preponderance of the evidence that the trade dress is not functional.

**Source**

15 U.S.C. §1125(a)(3) ("In a civil action for trade dress infringement…for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); *Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F. 2d 769, 775 (9th Cir. 1981) ("registration ... shifts the burden of proof from the plaintiff . . . to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such protected use.").

**Samsung's Statement in Support**

Instruction 52.2, which has no counterpart in Apple's jury instructions, addresses the burden of proof.  This additional explanation is necessary to help the jury to understand which party should prove the trade dresses at issue are functional or not functional.

**Apple's Objection to Samsung's Instruction**

Samsung's instruction is unnecessarily duplicative and misleading as it revisits the issue of functionality as if Apple must *again* prove non-functionality, when that point is part of validity (or protectability), not the dilution analysis.  Apple's dilution instruction, by contrast, mirrors the statutory language in one simple and streamlined instruction.  Moreover, the instruction should clarify for the jury that trade dress is the "total image and overall appearance" of a product.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992).

**PROPOSED FINAL JURY INSTRUCTION NO. 53**
**TRADE DRESS DILUTION—ELEMENTS—FAME**

**Apple's Proposed Instruction**

A trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods of the trade dress owner. In determining whether each of Apple's trade dresses is famous, you may consider the following factors. These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether an asserted trade dress is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether the trade dress is famous. You should consider all the relevant evidence in making your determination about whether each iPhone and iPad-related trade dress is famous.

The factors you may consider are:

1. the duration, extent and geographic reach of advertising and publicity of the trade dress, whether advertised or publicized by Apple or third parties;

2. the amount, volume and geographic extent of sales of goods offered under the trade dress;

3. the extent of actual recognition of the trade dress; and

4. whether the trade dress was federally registered.

To be "famous," each of Apple's asserted trade dresses must have been truly prominent and renowned at the time of Samsung's first commercial sale of its accused products. Apple's trade dress must have become very widely recognized by the consuming public as the designator of Apple's goods and must have such significant consumer associations that even uses of trade dress on non-competing goods can affect the value of the trade dress.

**Source**

Adapted from ABA 3.4.2—3.4.3.

**Authorities**

15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."); *Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846-LHK, Order Denying Motion for Summary Judgment, Dkt. No. 1159, at 8 (N.D. Cal., June 30, 2012) ("To establish a claim fo trade dress dilution, a plaintiff must show that (1) the trade dress is 'famous and distinctive,' (2) the defendant is 'making use of the [trade dress] in commerce,' (3) the defendant's 'use began after the [trade dress] became famous,' and (4) the defendant's use of the trade dress is 'likely to cause dilution by blurring' or by 'tarnishment.'") (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008)); *Nissan Motor Co. v. Nissan Computer Corp.*, No. CV-99-12980, 2007 U.S. Dist. LEXIS 90487 at *31, at *36 (C.D. Cal. Sept. 21, 2007);

1    *Coach Services, Inc. v. Triumph Learning LLC*, 96 U.S.P.Q.2d 1600, 1611 (T.T.A.B. 2010);
2    BURBERRY (*Burberry Ltd. v. Euro Moda, Inc.*, No. 08-Civ-5781 (CM), 2009 U.S. Dist. LEXIS
     53250, at *33 (S.D.N.Y. June 10, 2009)), or Louis Vuitton's "Monogram Multicolore" mark
3    (*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 391 (S.D.N.Y. 2008));
     *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (discussing
4    requirement of "image advertising"); *see, e.g., HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 695
     (9th Cir. 1993); *Interactive Health LLC v. Kong Kong USA, Inc.*, 2008 U.S. Dist. LEXIS 123559,
5    at *6 (C.D. Cal. July 24, 2008) (rejecting assertion that "advertisement must overtly point to the
     trade dress" as "there is no such restriction in the case law"); *Adidas-Salomon Ag v. Target Corp.*,
6    228 F. Supp. 2d 1192, 1208 ("trade dress can be recognizable without advertising specifically
     telling a consumer to look for it"); *Art Attacks, LLC v. MGA Enter., Inc.*, 581 F.3d 1138, 1145
7    (9th Cir. 2009) ("amount of sales and number of customers" relevant to secondary meaning);
     *Filipino Yellow Pages, Inc. v. Asian Journal Publn's., Inc.*, 198 F.3d 1143, 1151 (same); *Apple
8    Inc. v. Samsung Electronics Co.*, Ltd., No. 11-CV-01846-LHK, Order Denying Samsung's
     Motion for Summary Judgment, Dkt. No. 1158, at 10-11 (N.D. Cal., June 30, 2012) (citing
9    *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1014 (9th Cir. 2004) (material
     disputed issue of fact regarding whether "fame" existed where Nissan Motor introduced evidence
10   of 898 million dollars in sales over a five year period and 65% consumer recognition at the point
     when another company introduced a Nissan mark)).

11

12   **Samsung's Objection to Apple's Proposed Instruction**

13   Apple's instruction does not fairly address three highly relevant factors that the jury should
     consider in determining whether a trade dress is famous:  First, to be considered famous, a trade
14   dress must be must be so well known among the "***general*** consuming public"—not just the
     smartphone or tablet consuming public—as to be akin to a "household name."  *Thane Intern., Inc.
15   v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark
     usually will achieve broad-based fame only if a large portion of the general consuming public
16   recognizes that mark. Put another way. . . the mark must be a household name."). Yet the last
     paragraph in the proposed instruction refers simply to the "consuming public" instead of the
17   "general consuming public."  Second, to be probative of fame, Apple's advertising must direct
     the consumer to those features claimed as trade dress or identify them, such as by directing the
18   consumer to "look for" the claimed features.  *E.g., First Brands Corporation v. Fred Meyer, Inc.*,
     809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade
19   dress in order to support a finding of secondary meaning).  "[U]nlike with a trademark, where
     repeated purchases of a product support an inference that consumers have associated the mark
20   with the producer or source, one can much less confidently presume that a consumer's repeated
     purchase of a product has created an association between a particular product configuration and
21   the source."); While in trademark cases, advertising may be presumed to strongly correlate with
     fame, that is not necessarily the case regarding product configuration.  *Continental Laboratory
22   Products, Inc. v. Medax Intern., Inc*., 114 F. Supp. 2d 992, 1002-03 (S.D.Cal. 2000) (quoting
     *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994).  Third, for
23   the same reasons, sales are not necessarily evidence of fame if sales are more likely driven by the
     desirability of the product itself.  *See id., Autodesk, Inc., v. Dassault Systems Solidworks Corp.*,
24   685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009);*Walker & Zanger, Inc. v. Paragon Industries, Inc.*,
     549 F. Supp. 2d 1168, 1180-81 (ND Cal 2007).  Further, Apple fails to state that it bears the
25   burden of proving that each of its alleged trade dresses are famous.

26

27

28

**Samsung's Proposed Instruction**

Apple bears the burden of proving that each of its alleged trade dresses is famous.

Trade dress is considered to be famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the products of the trade dress' owner.  To be considered famous, a trade dress (or trademark) must be must be so well know as to be akin to a "household name."  The level of distinctiveness required to establish fame is greater than to establish secondary meaning.

You may consider the following factors when considering whether each of Apple's alleged trade dresses are famous.  These factors are only suggestions and may not constitute all of the possible types of evidence whether a trade dress is famous.  The presence or absence of any one particular factor on this list should not necessarily determine whether a trademark is famous.  You should consider all the relevant evidence in making your determination.  These factors should be not be counted up to see which party has more, but should be carefully weighed given the specific facts and circumstances of this case.  The factors you should consider are:

1.      The duration, extent, and geographic reach of advertising and publicity of the trade dress, whether advertised or publicized by the owner or third parties.  To be probative of fame, Apple's advertising must direct the consumer to those features claimed as trade dress or identify them, such as by directing the consumer to "look for" the claimed features.  Merely featuring the relevant aspect of the product does not suffice.

2.      The amount, volume, and geographic extent of sales of goods or services offered using the trade dress.  Although in some instances a large number of sales may be considered evidence of fame, in the case of trade dress for product design, sales are not necessarily evidence of fame if sales are more likely driven by the desirability of the product itself.

3.      The extent of actual recognition of the trade dress; and

4.      Whether the trade dress is registered.

**Source**

15 U.S.C. § 1125(c)(2)(A) (defining a famous mark as "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."); *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002) ("[F]or purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. Put another way. . . the mark must be a household name."); 15 U.S.C. § 1125(c)(1) (listing factors to assess fame); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F. 3d 1002 (9th Cir. 2004); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 879 (9th Cir. 1999) ("[F]amousness requires more than mere distinctiveness." ); *Jada Toys v. Mattel*, 496 F.3d 974, 981-82 (9th Cir. 2007); *Coach Services, Inc. v. Triumph Learning LLC*, 96 U.S.P.Q.2d 1600, 1611 (T.T.A.B. 2010) (COACH trademark was not famous enough to qualify for dilution protection), *aff'd on point* 101 U.S.P.Q.2d 1713, 2012 WL 540069 (Fed. Cir. 2012); *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88 (2d Cir. 2001) (holding THE CHILDREN'S PLACE mark was not famous); *First Brands Corporation v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (advertisements must identify and feature the claimed trade dress in order to support a finding of secondary meaning); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, L.L.C., 259 F.3d 25, 44 (2d Cir. 2001) ("[I]t is advertising that specifically directs a consumer's attention to a particular aspect of the product. To be probative of secondary meaning, the advertising must direct the consumer to the features claimed as trade dress. [citation] Merely 'featuring' the relevant aspect of the product in advertising is no more probative of secondary meaning than are strong sales; again to

provide protection based on extensive advertising would extend trade dress protection to the [elements for which protection is sought] without any showing that the consumers associate the dress with the product's source."); *Continental Laboratory Products, Inc. v. Medax Intern., Inc*., 114 F. Supp. 2d 992, 1002-03 (S.D.Cal. 2000) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd*., 40 F.3d 1431, 1452-53 (3d Cir. 1994) ("Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success may well be attributable to the desirability of the product configuration rather than the source-designating capacity of the supposedly distinguishing feature or combination of features. And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source."); *Autodesk, Inc., v. Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009); *Walker & Zanger, Inc. v. Paragon Industries, Inc.,* 549 F. Supp. 2d 1168, 1180-81 (ND Cal 2007); 4 *McCarthy* § 15:47 at 15-67 ("Popularity of a product is not synonymous with secondary meaning. Large sales of the product may be due to dozens of factors, only one of which may be the drawing power of the trademark.").

**Apple's Objection to Samsung's Instruction**

As with its secondary meaning instructions, Samsung inserts improper caveats to the first two prongs of the test that have no basis in Ninth Circuit law, implying that advertising must specifically identify claimed trade dresses and that sales for product designs are less probative than sales for other types of products.  These are meritless assertions.  *See* Apple's Objections to proposed instruction Nos. 50.1 and 50.2. Also, the statement that a famous trade dress is like a "household name" is likely to confuse the jury, as that language logically can only apply to word marks, not trade dress.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 53.1
TRADE DRESS DILUTION—FAME—SURVEY EVIDENCE**

3

**Samsung's Proposed Instruction**

4

5

Survey evidence is not necessary to support a finding of fame. But famousness requires a high level of consumer recognition of a claimed dress such that to support fame of an alleged trade dress, generally, some 75% or more of the general U.S. consuming public should recognize the trade dress as a designation of source of the goods or services of the alleged trade dress's owner.

6

**Source**

7

8

9

10

11

12

15 U.S.C. § 1125(c)(2)(A) (defining a famous mark as "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."); 4 *McCarthy on Trademarks and Unfair Competition* § 24:106, 24-310 (2008 ed.) ("[M]inimum threshold survey response should be in the range of 75% of the general consuming public of the United States."); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F. 3d 1002, 1014 (9th Cir. 2004) (survey showing 65% consumer recognition insufficient to prove fame); *Carnival Corp. v. SeaEscape Casino Cruises*, Inc., 74 F. Supp. 2d 1261, 1270-1271 (S.D. Fla. 1999) (68% consumer recognition did not support a finding of fame); *Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500, 515 (M.D. Pa. 1998) (abbreviated Reese's trade dress not found famous not withstanding a survey which found 94% of respondents recognized the abbreviated trade dress).

13

14

**Samsung's Statement in Support**

15

16

17

18

Instruction 53.1 also addresses the fame of trade dress and specifically, the level of consumer recognition to establish fame. Even if there were no survey evidence, this authority helps the jury quantify the concept of fame. Informing the jury of the cited authority that surveys showing less than 75% of the U.S. consuming public recognizing the trade dress as a designation of the source of the trade dress is insufficient to establish fame will help the jury evaluate the surveys in this action in accordance with applicable precedent. Apple did not submit any competing instruction.

19

**Apple's Objection to Samsung's Instruction**

20

21

22

Samsung's proposed instruction is not in the Ninth Circuit model instructions. It also, in particular its 75% "minimum," does not have any basis in the law. In fact, this Court's recent denial of Samsung's motion for summary judgment rebuts Samsung's proposed instruction, as it noted surveys are not required and cited a case in which a court found a factual issue as to fame with a survey showing 65% recognition. (Dkt. No. 1158 at 10-11.)

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 54**
**TRADE DRESS DILUTION—ELEMENTS—USE OF ACCUSED TRADE DRESS IN**
2
**COMMERCE AFTER APPLE TRADE DRESS BECAME FAMOUS**

3 **Apple's Proposed Instruction**

4 A claim for dilution requires that the defendant's accused products were first offered in commerce after the plaintiff's trade dress became famous.

5

6 For each asserted Apple iPhone-related trade dress, you must therefore determine whether Samsung's first sale of an accused smart phone product on July 15, 2010 occurred after the trade dress became famous.

7

8 For the asserted Apple iPad-related trade dress, you must determine whether Samsung's first sale of an accused tablet computer product on June 8, 2011 occurred after the trade dress became famous.

9
**Source**
10
Adapted from ABA 3.4.1.
11
**Authorities**
12

13 15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences

14 use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely

15 confusion, of competition, or of actual economic injury.").

16

17 **Samsung's Objection to Apple's Proposed Instruction**

18 Apple's instruction regarding timing is unnecessarily separated from its proposed instruction regarding the "fame" element, and unfairly prejudicial because the instruction improperly suggests that it is established that the asserted Apple's trade dresses did in fact become famous,

19 and that the only question is when that happened.  Further, Apple incorrectly states that it should prove iPhone-related trade dress became famous by July 15, 2010.  The instruction should be

20 corrected to reflect that Apple must prove its iPhone trade dresses were famous by November 2007, the date the Samsung first offered for sale a product that Apple alleges used the iPhone

21 trade dress.  15 U.S.C. 1125(c);  Amended Complaint Paragraph 80 ("Samsung released the Samsung F700 in November 2007 — copying the clean flat clear surface of the Apple iPhone

22 Trade Dress and the Apple iPhone/iPhone 3G/iPhone 4 Trade Dress.");  Transcript of June 21, 2012 proceedings at 4 (Court: "what evidence is there in the record that establishes fame at those

23 moments for, you know, the first Samsung smartphone, November of '07…?"); *see also Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004) (holding that a

24 defendant's first use of an allegedly famous mark, not the first use that a trademark holder finds objectionable, "fixes the time by which famousness is to be measured").  Apple also fails to state

25 that it bears the burden of proof.

26

27

28

1    **Samsung's Proposed Instruction**

2    Apple must prove that each of its claimed trade dresses was famous prior to the time that
     Samsung began the accused use.

3

4    Apple must prove by a preponderance of the evidence that its claimed iPhone trade dresses were
     famous by November 2007, the date Samsung first sold a product accused of using the iPhone
     trade dress.

5

6    Apple must prove by a preponderance of the evidence that its claimed iPad trade dress was
     famous by June 8, 2011, the date Samsung first sold a product accused of diluting the iPad trade
     dress.

7

8    Apple must prove by a preponderance of the evidence that its claimed iPad 2 trade dress was
     famous by June 8, 2011, the date Samsung first sold a product accused of diluting the iPad 2
     dress.

9

10   If Apple has proven by a preponderance of the evidence that a particular trade dress was famous
     as of the date indicated, then Apple has proven the element of fame.  If Apple has not proven that
     a particular trade dresses was famous as of the date indicated, then Apple has not proven the

11   element of fame, and you must find for Samsung on Apple's dilution claim as to that trade dress.

12   **Source**

13   *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010) ("A plaintiff
     seeking relief under federal anti-dilution law must show that its mark is famous and distinctive,

14   that defendant began using its mark in commerce after plaintiff's mark became famous and
     distinctive, and that defendant's mark is likely to dilute plaintiff's mark."); Amended Complaint

15   Paragraph 80 ("Samsung released the Samsung F700 in November 2007 — copying the clean
     flat clear surface of the Apple iPhone Trade Dress and the Apple iPhone/iPhone 3G/iPhone

16   4Trade Dress.").

17

18   **Apple's Objection to Samsung's Instruction**

19   Samsung's instruction No. 54 sets out the wrong release dates for accused products.  The first
     product accused of diluting the iPhone-related trade dresses (the Galaxy S Vibrant) went on sale
     on July 15, 2010.  (Dkt. No. 1189-0 at 11.)  The relevant date by which Apple must prove fame

20   for these trade dresses is thus July 15, 2010, not November 2007.

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 55**
**TRADE DRESS DILUTION—ELEMENTS—DILUTION**

**Apple's Proposed Instruction**

Dilution is an association arising from the similarity between the appearance of the defendant's accused products and plaintiff's famous trade dress that impairs the distinctiveness of the famous trade dress. In determining whether the appearance of Samsung's accused products is likely to cause dilution of each asserted Apple trade dress, you may consider all relevant factors, including the following:

    1.    the degree of similarity between Samsung's accused products and Apple's famous trade dress;

    2.    the degree of acquired distinctiveness of Apple's famous trade dress;

    3.    the extent to which Apple was engaged in substantially exclusive use of the trade dress at the time of the first alleged dilution versus whether Apple authorized anyone else to use its trade dress;

    4.    the degree of recognition of Apple's famous trade dress;

    5.    whether Samsung intended to create an association with Apple's famous trade dress; and

    6.    any actual association between Samsung's accused products and the Apple famous trade dress.

A dilution claim does not require a finding of actual dilution of the plaintiff's trade dress. It is sufficient for you to find here that Samsung's sale of its accused products is likely to cause dilution of an asserted Apple trade dress.

**Source**

Adapted from ABA 3.4.4.

**Authorities**

15 U.S.C. § 1125(c)(2)(1) ("Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."); 15 U.S.C. § 1125(c)(2)(B) ("In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) [t]he degree of similarity between the mark or trade name and the famous mark; (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark; (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) [t]he degree of recognition of the famous mark; (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark; (vi) [a]ny actual association between the mark or trade name and the famous mark."); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 n.2 (9th Cir. 2008) ("[T]he FTDA has been amended

so as to require only a likelihood of dilution to succeed.  Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. No. 109-312 § 2(1), 120 Stat. 1730."). *See also Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004) (fame measured for dilution claim as of first arguably diluting use); *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-00133, 2010 U.S. Dist. LEXIS 136711, at *38-39 (D. Utah Dec. 27, 2010); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) (requiring written approval before use of mark relevant to determining substantial exclusivity); *Pendleton Woolen Mills, Inc. v. Round Up Ass'n*, No. 3:11-CV-592-AC, 2012 U.S. Dist. LEXIS 94502, at *11 (D. Or. July 9, 2012) (statute identifies factors courts may consider, along with other relevant factors); *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, 1981 U.S. Dist. LEXIS 17254, *11-13 (N.D. Ga. June 19, 1981) ("The plaintiff's vigilance in protecting its marks, however, is not in issue.  The court found in Miss Teen U.S.A. that the *plaintiff's litigiousness underscored* its claim to exclusive use of its mark MISS U.S.A. Miss[.]  Notwithstanding the senior user's vigilance in policing its mark, however, simultaneous use of similar names by a third party can erode a mark's strength.  In discussing the strength of the plaintiff's trademark in Amstar Corp., the Fifth Circuit emphasized the importance of the evidence of *uncontested third-party uses* to its holding that the plaintiff's mark was entitled to only limited protection outside the market for its sugar and related food products.…  Unquestionably, the pageant industry is crowded.  The court acknowledges that in a market of this nature, amidst all these competing pageants, it takes a herculean effort by a promoter to establish a reputation for its pageant such that the title it bestows becomes associated solely with its pageant. By investing enormous amounts of time and money into promoting its pageant and *challenging others using similar names*, the plaintiff, however, has accomplished this goal.") (emphasis added); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980) ("We do not believe that such extensive third-party use and registration of 'Domino' can be so readily dismissed. The impact of such evidence is not dispelled merely because 'Domino' cigarettes and matches are not leading brands, or because some uses of the mark 'Domino' by third parties have not been related to food products. As was stated by one commentator, 'If the owner of KODAK should *permit its use by others* on washing powders, shoes, candy bars, or cosmetics, or if The Coca-Cola Company should permit COCA-COLA or COKE to be used for rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not take long for even these giants in the trademark world to be reduced to pigmy size.'") (emphasis added); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 559 F. Supp. 2d 472, 477 (S.D.N.Y. 2008) ("Starbucks devotes substantial effort to policing its registered Starbucks Marks. Starbucks has a policy of following up on uses that it deems to be infringing and demanding that the use be terminated. Starbucks routinely sends cease and desist letters and, if necessary, commences litigation in support of these efforts."); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp. 2d 734, 746 (W.D. Ky. 2008) ("As noted in *Nikepal*, supra,'The law does not require that use of a famous mark be absolutely exclusive, but merely "substantially exclusive."' *Nikepal*, 2007 U.S. Dist. LEXIS 66686, 2007 WL 2782030 at *7, citing, *L.D. Kichler Co. v. Davoil Inc*., 192 F.3d 1349, 1352 (Fed.Cir. 1999).  V Secret asserts that it is engaged in substantially exclusive use of the VICTORIA'S SECRET mark. In support of this contention, Vice President Kriss avers that V Secret actively and aggressively polices its mark against unauthorized and dilutive uses by others. It pursues unauthorized uses through cease and desist letters, trademark oppositions, and litigation. Kriss Decl., P 27. The Moseleys have not disputed this assertion. We therefore find the requisite substantially exclusive use of the mark.").

## Samsung's Objection to Apple's Proposed Instruction

Apple's instruction on the degree of acquired distinctiveness is inaccurate, incomplete, unfairly prejudicial and does not provide the jury with enough detail on the association factor to assess its product configuration dilution claims.  First, Apple distorts the "exclusivity" factor by adding "versus whether Apple authorized anyone else to use the trade dress."  This language does not appear in the Model Jury Instruction 15.10 for good reason: it is contrary to law.  It is the extent

1 | of *un*authorized uses by third-parties that bears on the capacity for dilution. *See, e.g., CG Roxane*
2 | *LLC v. Fiji Water Co. LLC,* 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use
by competitors as strong evidence of how the public perceives the term. …Naturally, when more
members of the public see a mark used by several producers in the industry, the less likely they
3 | will identify a particular producer with that mark.") (internal quotation marks, citations omitted);
*Big Star Entertainment, Inc. v. Next Big Star*, 105 F.Supp.2d 185, 204-05 (S.D.N.Y. 2000)
4 | ("Extensive third party use of the term 'Big Star' as a mark, especially by businesses which may
directly compete with plaintiff, weighs against a finding that plaintiffs unregistered marks are
5 | strong"); *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 627 (8th Cir.1997) ("evidence of third
party usage of similar marks on similar goods is admissible and relevant to show that the mark is
6 | relatively weak"); *Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454,
1463 (S.D.Fla.1998) (extensive third party use of word "bongo" undermines inherent
7 | distinctiveness of mark), *aff'd without opinion*, 166 F.3d 353 (11th Cir.1998).  Apple's
"redefinition" would eliminate the very purpose for considering the factor, which is to assess the
8 | likelihood of future dilution against any existing dilution—i.e., the extent of unauthorized third
party uses.  Second, by not clarifying that the relevant association must arise solely from
9 | protectable trade dress, Apple encourages the jury to speculate that any association between the
products or companies favors a finding of dilution, even if, for example, the association arises
10 | from knowledge that Samsung supplies Apple with components for its products or the fact that
some consumers may use "iPad" or "iPhone" generically to describe tablet computers and
11 | smartphones.  Third, the proposed instruction repeatedly refers to the phrase "Apple's famous
trade dress" and thus improperly suggests to the jury that the asserted Apple's trade dresses in
12 | fact became famous and the fame of the asserted trade dresses is not in dispute.  In addition, the
reference to "actual dilution" is also unnecessary, confusing, and prejudicial.  The jury does not
13 | need to understand the history of the Federal Trademark Dilution Act of 1995, and this additional
information will lead to jury confusion and prejudice to Samsung because the jury must find
14 | actual dilution to award damages for dilution.  Telling them at this stage, without qualification,
that actual dilution is not necessary will conflict with the later instruction.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Samsung's Proposed Instruction**

To prove dilution of an alleged trade dress by blurring, Apple must prove by a preponderance of the evidence that the accused Samsung products have created an association with Apple which impairs the distinctiveness of those alleged trade dresses.

Factors you can consider in determining whether dilution by blurring has occurred include:

1.      The degree or similarity between the alleged trade dress and the accused product. The more similar they are, the more likely an association will arise between the products.

2.      The degree of acquired distinctiveness through secondary meaning of Apple's alleged trade dresses.  The more distinctive a trade dress is in the marketplace, the greater protection it is entitled to.  On the other hand, if trade dress is common in the marketplace, it is entitled to less protection from dilution.

3.      The extent to which Apple is engaged in substantially exclusive use of the alleged trade dresses.  If you find that companies other than Apple use the same or similar trade dress in connection with smart phones or tablets, then dilution by blurring is less likely.

4.      The degree of recognition of the alleged trade dresses with Apple;

5.      Whether Samsung intended to create an association with Apple's alleged trade dresses; and

6.      Any actual association between the alleged trade dress and the accused products.  The association must be created solely by the similarity of the trade dresses and not from some other source.  In other words, this means that the required "association" cannot be created just because the two products possess some similar characteristics.

These factors should be weighed by you given the facts and circumstances of the case.

**Source**

15 U.S.C. § 1125(c)(2)(B) (listing non-exhaustive factors for dilution by blurring); 4 *McCarthy* § 24:119 (discussing the meaning and significance of each of the TDRA dilution by blurring factors); *id.* ("Consideration of third party uses is relevant both here, in determining if blurring is likely, as well as in the first instance in determining if a mark is "famous."  A mark that is merely one of several identical or very similar marks is already "diluted" in fact.  In such a case, the junior user's actions can hardly be said to be likely to cause any significant further "dilution" of such a mark. . . . The statute does not require that the mark be "unique" in the strict sense: one of a kind. There can be some existing third party uses that do not significantly impact on the public mind, but if there are third party uses, the scope of protection against blurring may be constricted according to the quantity and type of the third party uses."); *id.,* at § 24:116 ("The required 'association' must be created solely by the similarity of the conflicting marks, not from some other source. This means that the required 'association' cannot be created just because the two products possess some similar characteristics."); *Schwan's IP, LLC v. Kraft Pizza Co.,* 460 F. 3d 971 (8th Cir. 2006) (considering use of mark by third-parties and newspapers); *CG Roxane LLC v. Fiji Water Co. LLC,* 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted); *Big Star Entertainment, Inc. v. Next Big Star,* 105 F.Supp.2d 185, 204-05 (S.D.N.Y. 2000) ("Extensive third party use of the term 'Big Star' as a mark, especially by businesses which may directly compete with plaintiff, weighs against a finding that plaintiffs unregistered marks are

strong"); *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 627 (8th Cir.1997) ("evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak"); *Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1463 (S.D.Fla.1998) (extensive third party use of word "bongo" undermines inherent distinctiveness of mark), *aff'd without opinion*, 166 F.3d 353 (11th Cir.1998).

### Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is wrong for three reasons. First, there is no reason for the commentary Samsung adds to most of the factors. This is particularly problematic as Samsung's commentary blurs the second and third prong by stating that trade dress is less distinctive if common in the marketplace, while the commentary on the sixth factor suggests that association cannot be based upon similarities in the products, when this type of association is what the trade dress laws are intended to address. Second, Samsung omits timing from both the second and third prong, implying that other companies *currently* using similar trade dresses would weaken Apple's rights, which is incorrect as distinctiveness and exclusivity are judged as of the time of the dilution starts. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004) (fame measured for dilution claim as of first arguably diluting use). In addition, Samsung's instruction also fails to inform the jury that unauthorized users do not cut against a finding of secondary meaning. *Miss Universe, Inc. v. Little Miss U.S.A., Inc.*, 1981 U.S. Dist. LEXIS 17254, *11-13 (N.D. Ga. June 19, 1981) ("The plaintiff's vigilance in protecting its marks, however, is not in issue. The court found in Miss Teen U.S.A. that the *plaintiff's litigiousness underscored* its claim to exclusive use of its mark MISS U.S.A. Miss[.] Notwithstanding the senior user's vigilance in policing its mark, however, simultaneous use of similar names by a third party can erode a mark's strength. In discussing the strength of the plaintiff's trademark in Amstar Corp., the Fifth Circuit emphasized the importance of the evidence of *uncontested third-party uses* to its holding that the plaintiff's mark was entitled to only limited protection outside the market for its sugar and related food products…. Unquestionably, the pageant industry is crowded. The court acknowledges that in a market of this nature, amidst all these competing pageants, it takes a herculean effort by a promoter to establish a reputation for its pageant such that the title it bestows becomes associated solely with its pageant. By investing enormous amounts of time and money into promoting its pageant and *challenging others using similar names*, the plaintiff, however, has accomplished this goal.") (emphasis added); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980) ("We do not believe that such extensive third-party use and registration of 'Domino' can be so readily dismissed. The impact of such evidence is not dispelled merely because 'Domino' cigarettes and matches are not leading brands, or because some uses of the mark 'Domino' by third parties have not been related to food products. As was stated by one commentator, 'If the owner of KODAK should *permit its use by others* on washing powders, shoes, candy bars, or cosmetics, or if The Coca-Cola Company should permit COCA-COLA or COKE to be used for rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not be long for even these giants in the trademark world to be reduced to pigmy size.'") (emphasis added); *General Motors Co. v. Urban Gorilla, LLC*, 2010 U.S. Dist. LEXIS 136711, *38-39 (D. Utah Dec. 27, 2010) ("Active and aggressive policing of unauthorized uses of a mark supports a finding that the owner is engaging in substantially exclusive use of the mark."); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 559 F. Supp. 2d 472, 477 (S.D.N.Y. 2008) ("Starbucks devotes substantial effort to policing its registered Starbucks Marks. Starbucks has a policy of following up on uses that it deems to be infringing and demanding that the use be terminated. Starbucks routinely sends cease and desist letters and, if necessary, commences litigation in support of these efforts."); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp. 2d 734, 746 (W.D. Ky. 2008) ("As noted in Nikepal, supra,'The law does not require that use of a famous mark be absolutely exclusive, but merely "substantially exclusive."' Nikepal, 2007 U.S. Dist. LEXIS 66686, 2007 WL 2782030 at *7, citing, L.D. Kichler Co. v. Davoil Inc., 192 F.3d 1349, 1352 (Fed.Cir. 1999). V Secret asserts that it is engaged in substantially exclusive use of the VICTORIA'S SECRET mark. In support of this

1   contention, Vice President Kriss avers that V Secret actively and aggressively polices its mark
    against unauthorized and dilutive uses by others. It pursues unauthorized uses through cease and
2   desist letters, trademark oppositions, and litigation. Kriss Decl., P 27. The Moseleys have not
    disputed this assertion. We therefore find the requisite substantially exclusive use of the mark.").
3   Finally, if additional commentary is to be added addressing "substantially exclusive use," whether
    to the third prong or both the second and third prong, it should be countered with the following
4   point: "Extensive advertising and enforcement policies are also relevant in determining
    substantially exclusive use."  *See, e.g.*, *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-
5   00133, 2010 U.S. Dist. LEXIS 136711, at *38-39 (D. Utah Dec. 27, 2010); *New York City
    Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) (requiring
6   written approval before use of mark relevant to determining substantial exclusivity).  By contrast,
    Apple's proposed instruction presents the statutory test without unnecessary commentary on the
7   factors, and clarifies that confusion is not required.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 56**
**INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS**
**(15 U.S.C. § 1125(A)(1))**

2

3

**Apple's Proposed Instruction**

4

Apple also claims that Samsung has infringed its iPad trade dress.  If you found that the iPad trade dress is valid, Apple has the burden of proving that Samsung more likely than not used the trade dress in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Samsung's goods.

5

6

7

If you find that this element has been proved, your verdict should be for Apple.  If, on the other hand, Apple has failed to prove this element, your verdict should be for Samsung.

8

**Source**

9

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.6 (2007 Ed.).

10

**Authorities**

11

12

*Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (stating that plaintiff "must meet three elements: (1) nonfunctionality, (2) distinctiveness and (3) likelihood of confusion" to establish trade dress infringement); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991); 15 U.S.C. § 1125; *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-53 (9th Cir. 1979); *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996) ("A <u>likelihood of confusion</u> exists when a consumer viewing a service mark is <u>likely</u> to purchase the services under a mistaken belief that the services are, or associated with, the services of another provider…. The confusion must 'be probable, not simply a possibility.' Id. If goods or services are totally unrelated, there is no infringement because confusion is <u>unlikely</u>….  Taking the facts alleged by Murray to be true, we agree with the district court that the parties' services are unrelated and there is <u>no likelihood of confusion</u>.") (emphasis added).

13

14

15

16

17

18

19

**Samsung's Objection to Apple's Proposed Instruction**

20

21

This instruction, which collapses distinctiveness and non-functionality into a single element "valid," will be confusing to the jury and prejudicial to Samsung.  As modeled by the Ninth Circuit Model Jury Instructions, the jury first should be instructed on all the elements needed to establish trade dress infringement and then on each element —1) distinctiveness and 2) non-functionality.  This Instruction again fails to explain Apple's burden of proof —i.e., Apple must prove by a preponderance of the evidence that prospective consumers of tablet computers are likely to believe a Samsung product is an Apple product. A likelihood of confusion requires that confusion among reasonably prudent consumers is probable, and not merely a possibility. *E.g., Murray v. Cable Nat'l Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (confusion must be "probable, not simply a possibility") (quoting *Rodeo Collection, Ltd. v. Western Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)).  This Instruction also fails to properly identify Apple's burden of proof with its passive voice in the sentence: "If you find that this element has been proved, your verdict should be for Apple."  Apple also repeatedly uses the phrases "iPad trade dress" and "iPhone trade dress" instead of "asserted iPhone-related trade dress" and "asserted iPad-related trade dress."  Apple's instruction improperly suggests that its trade dress is valid by

22

23

24

25

26

27

28

1   reference to "its iPad trade dress."  Also, Apple has not claimed the entire iPhone or iPad product
2   as trade dress except as to the one iPhone registered trade dress.

**Samsung's Proposed Instruction**

In this action, Apple contends that Samsung's Galaxy Tab 10.1 tablet computers infringe Apple's unregistered trade dresses for the iPad and iPad 2 tablet computers.

To prove trade dress infringement, Apple bears the burden of proof by a preponderance of the evidence on each of the following elements for each of its claimed trade dresses:

1.      Apple must prove that the unregistered claimed trade dresses are not functional.

2.      Apple must prove that the unregistered claimed trade dresses have acquired distinctiveness through secondary meaning.

3.      Apple must prove that Samsung used trade dress similar to Apple's claimed trade dresses without Apple's consent in a manner that is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of Samsung's goods.

If you find that **each** of the elements on which Apple has the burden of proof has been proved, your verdict should be for Apple.  If, on the other hand, Apple has failed to prove any one of these elements, your verdict must be for Samsung.

**Source**

Ninth Circuit Model Instructions No. 15.6 (modified); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808 (9th Cir. 2003) ("Generally, to recover for trade dress infringement under [15 U.S.C.] § 1125, a plaintiff must show that 'its trade dress is protectable and that defendant's use of the same or similar trade dress is likely to confuse consumers.'  A trade dress is protectable if it is 'nonfunctional and has acquired secondary meaning and if its imitation creates a likelihood of consumer confusion.'") (citations omitted); *Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing as elements of proof necessary to show infringement of a bottle design as: "(1) nonfunctionality, (2) distinctiveness and (3) likelihood of confusion.").


**Apple's Objection to Samsung's Instruction**

Apple's approach is more streamlined and instructs the jury on validity in a manner that can be applied to trade dress infringement, trade dress dilution, registered marks, and unregistered marks, without any ambiguity.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 56.1
INFRINGEMENT—LIKELIHOOD OF CONFUSION**

2

3

**Samsung's Proposed Instruction**

4

To prevail on its trade dress infringement claim, Apple must prove by a preponderance of the evidence that there is a likelihood of consumer confusion between Samsung's Galaxy Tab 10.1 and the trade dresses of Apple's iPad and iPad 2 tablet computers that Apple is claiming.  In other words, Apple must prove that prospective consumers of tablet computers are likely to mistakenly purchase a Samsung Galaxy Tab 10.1 tablet computer believing that it is an Apple iPad or iPad 2 tablet computer.

5

6

7

A likelihood of confusion requires that you find that confusion among reasonably prudent consumers is probable, and not merely a possibility.

8

**Source**

9

10

Ninth Circuit Model Instructions No. 15.16 (modified); *Murray v. Cable Nat'l. Broadcasting Co.,* 86 F.3d 858, 861 (9th Cir. 1996) (confusion must be "probable, not simply a possibility") (*quoting Rodeo Collection, Ltd. v. Western Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)).

11

12

**Apple's Objection to Samsung's Instruction**

13

Samsung's instruction misstates the law and is inappropriate to this case.  First, the instruction improperly limits likelihood of confusion to the point of purchase.  The Lanham Act reaches post-sale confusion.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.* 944 F.2d 1446, 1455 (9th Cir. 1991).  Second, the instruction improperly requires proof that prospective consumers are likely to mistakenly purchase a Samsung Galaxy Tab 10.1 believing it to be an iPad.  In fact, the Lanham Act reaches likelihood of confusion as to source, sponsorship, or affiliation; it does not discuss likelihood of mistaken purchases. 15 U.S.C. § 1125.  Third, Samsung imposes additional qualifiers beyond the *Sleekcraft* test, by suggesting the requirement is "probable" confusion among "reasonably prudent" consumers. The operative test, set out in *Sleekcraft*, does not use this language.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-53 (9th Cir. 1979).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 57**
**INFRINGEMENT—LIKELIHOOD OF CONFUSION—**
**FACTORS—*SLEEKCRAFT* TEST**
**(15 U.S.C. §§ 1114(1) and 1125(a))**

**Apple's Proposed Instruction**

You must consider whether Samsung's use of the iPad trade dress is likely to cause confusion about the source of Samsung's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1.  Strength or Weakness of the Apple Trade Dress. The more the consuming public recognizes Apple's iPad trade dress as an indication of origin of Apple's goods, the more likely it is that consumers would be confused about the source of Samsung's goods if Samsung uses a similar design or configuration.

2.  Samsung's Use of the Trade Dress. If Samsung and Apple use their designs on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.  Similarity of Apple's and Samsung's Designs. If the overall impression created by Apple's trade dress in the marketplace is similar to that created by Samsung's design in appearance there is a greater chance of likelihood of confusion. Similarities in appearance weigh more heavily than differences in finding the trade dress and accused design are similar.

4.  Actual Confusion. If use by Samsung of the Apple trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Samsung's use of the trade dress may still be likely to cause confusion. As you consider whether the design used by Samsung creates for consumers a likelihood of confusion with Apple's products, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.  Samsung's Intent. Knowing use by Samsung of the Apple trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of Apple's trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Samsung acted knowingly, the use of Apple's trade dress to identify similar goods may indicate a likelihood of confusion.

6.  Marketing/Advertising Channels. If Apple's and Samsung's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.  Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the

reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the Apple and Samsung products.

   8.   <u>Other Factors</u>.  Any other factors that bear on likelihood of confusion.

Confusion in the marketplace can occur before the purchase of the good in question (also called "initial interest" confusion), at the moment of the purchase (also called "point of sale" confusion), or after the purchase (also called "post-sale" confusion).

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.).

**Authorities**

Post-sale confusion:  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032 (9th Cir. 2010) ("Victoria's Secret's second argument is also not without force.  It does seem unlikely that a knowledgeable consumer would believe that Fortune, which markets its shoes in a number of different retail outlets, would be selling a tank top in a Victoria's Secret store.  The record reveals, however, evidence of individuals (including pop star Britney Spears) wearing Victoria's Secret's 'Delicious' pink tank top on the street. *This evidence suggests the possibility of post-purchase confusion, which, we have held, 'can establish the required likelihood of confusion under the Lanham Act. Karl Storz Endoscopy Am., Inc. v. Surgical Tech., Inc*., 285 F.3d 848, 854 (9th Cir. 2002); *see Levi Strauss & Co. v. Blue Bell, Inc*., 632 F.2d 817, 822 (9th Cir. 1980).  In such instances, at least, when knowledgeable consumers see the 'Delicious' tank top outside Victoria's Secret stores, it seems at least plausible that they could be confused as to who produced the tank top."); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc*., 944 F.2d 1446, 1455 (9th Cir. 1991) ("Second, by considering only the initial purchasers of the Star Award as the relevant market, the court overlooked the risk of post-sale confusion.  Post-sale confusion occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product. Here, initial Star Award purchasers (such as corporations buying the award for their 'star' employees) would be exposed to Creative House's marketing presentations and literature, and would be less likely to confuse the Creative House product with the Academy's Oscar.  But a large secondary audience - including Star Award recipients and individuals who see the award after it is presented - would see the award without any such clarifying marketing aids.  As a result, this secondary audience might conceivably assume the Star Award was somehow associated with the Oscar."); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc*., 285 F.3d 848, 854-855 (9th Cir. 2002) ("The law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e*., confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act.  Similarly, in *Payless Shoesource, Inc. v. Reebok Int'l Ltd*., 998 F.2d 985 (Fed. Cir. 1993), the Federal Circuit noted that the 1962 amendments to section 32 of the Lanham Act specifically struck language limiting the scope of the Act to confusion by 'purchasers.' 998 F.2d at 989. The court held … that an action for trademark infringement can in fact be based upon the confusion of nonpurchasers, such as those who simply observe the purchaser wearing the accused article of clothing. Id.' Post-sale 'confusion, the court noted, may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale….'").

Initial interest confusion:  *Nissan Motor Co. v. Nissan Computer Corp*., 378 F.3d 1002, 1018 (9th Cir. 2004) ("The core element of trademark infringement is whether the similarity of the marks is likely to confuse customers about the source of the products …. Initial interest confusion occurs when the defendant uses the plaintiff's trademark 'in a manner calculated to capture initial consumer attention, *even though no actual sale is finally completed as a result of the confusion*.'"… As we hypothesized initial interest confusion in Brookfield, it would occur if

1    Blockbuster Video put up a billboard that advertised West Coast Video at Exit 7, when in
2    actuality West Coast was located at Exit 8, but Blockbuster was at Exit 7. Customers looking for
     West Coast would leave the freeway at Exit 7, but after not finding it, rent from Blockbuster
     rather than reentering the freeway in search of West Coast. Customers are not confused that they
3    are renting from Blockbuster instead of West Coast, but Blockbuster misappropriates West
     Coast's acquired goodwill through the initial consumer confusion."); *Brookfield Comm's., Inc. v.*
4    *West Coast Entm't*, 174 F. 3d 1036, 1062, 1066 (9th Cir. 1999) (Nevertheless, West Coast's use
     of 'moviebuff.com' in metatags will still result in what is known as initial interest confusion. Web
5    surfers looking for Brookfield's 'MovieBuff' products who are taken by a search engine to
     'westcoastvideo.com' will find a database similar enough to 'MovieBuff' such that a sizeable
6    number of consumers who were originally looking for Brookfield's product will simply decide to
     utilize West Coast's offerings instead.  Although there is no source confusion in the sense that
7    consumers know they are patronizing West Coast rather than Brookfield, there is nevertheless
     initial interest confusion in the sense that, by using 'moviebuff.com' or 'MovieBuff' to divert
8    people looking for 'MovieBuff' to its web site, West Coast improperly benefits from the goodwill
     that Brookfield developed in its mark.").
9
     Initial interest and post-purchase confusion:  *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F.
10   Supp. 2d 1029, 1057-58 (D. Or. 2008) ("As an initial matter, adidas acknowledges that there is no
     likelihood of consumer confusion at the point-of-sale.  Rather, adidas' infringement claims are
11   based on the likelihood of initial-interest and post-sale confusion. Payless argues that both of
     those theories fail in this context.  I disagree.  Contrary to the court needing to 'buy into' adidas'
12   initial interest and post-sale confusion theories, … '[t]he Ninth Circuit has explicitly recognized
     that the use of another's trademark in a manner calculated 'to capture initial consumer attention,
13   *even though no actual sale is finally completed* as a result of the confusion, may still be an
     infringement.'' … Similarly, 'the law in the Ninth Circuit is clear that 'post-purchase confusion,'
14   *i.e.*, confusion on the part of someone other than the purchaser who, for example, simply sees the
     item after its has been purchased can establish the required likelihood of confusion under the
15   Lanham Act.' *Karl Storz*, 285 F.3d at 854.").

16   Other:  15 U.S.C. § 1125; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49, 353-54 (9th Cir.
     1979) (setting out likelihood of confusion factors); *Metro Pub. v San Jose Mercury News*, 987
17   F.2d 637, 640 (9th Cir. 1993) ("Because each factor is not necessarily relevant to every case, this
     list [of likelihood of confusion factors] functions as a guide and is 'neither exhaustive nor
18   exclusive.'"); *Rearden LLC v. Rearden Commerce, Inc.*, 2012 U.S. App. LEXIS 13152, at *66
     (9th Cir. 2012) (post-purchase confusion to support the proposition that even non-consumer
19   confusion can bear on the likelihood of confusion); *id.* at *57-68; *Citibank, N.A. v. City Bank of
     San Francisco*, No. C-79-1922, 1980 WL 30239, at *1009 (N.D. Cal. Mar. 23, 1980) ("Very little
20   proof of actual confusion would be necessary to prove likelihood of confusion."); *Metro Publ'g,
     Inc. v. Surfmet, Inc.*, No. C-02-01833, 2002 U.S. Dist. LEXIS 26232, at *25 (N.D. Cal. July 3,
21   2002) (evidence of actual confusion "strongly support[ed]" finding of likelihood of confusion);
     *Clamp Mfg. Co. v. Enco Mfg. Co.*, No. CV-82-4352, 1987 U.S. Dist. LEXIS 13427, at *12-13
22   (C.D. Cal. Aug. 10, 1987) (actual confusion "strongly" suggests, but is not required, for a finding
     of likelihood of confusion); *Entrepreneur Media  v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002)
23   (that "[s]imilarities weigh more heavily than differences" is one of three axioms of similarity
     analysis); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139 (9th Cir.
24   2010) (discussing post-purchase confusion and rejecting argument "that there is no trademark
     infringement because [defendant's products] are of high quality"); *Death Tobacco v. Black Death
25   USA*, 1993 U.S. Dist. LEXIS 20646, *12-13 (C.D. Cal. June 30, 1993) ("Plaintiff argues that
     defendants must establish the strength of the mark as of the time of the first alleged infringement,
26   which occurred in either late 1990 or early 1991. In plaintiff's view, defendant's evidence relating
     to advertising dollars spent or press coverage received after February of 1991 is irrelevant to the
27   determination of the strength of the Black Death mark.  Plaintiff's point is well taken, but it [loses
     for other reasons].  The proper time to assess the strength of a trademark is as of the time of the
28

1    first alleged infringement…. Defendant's trademark was not greatly strengthened by any of the
     means enumerated in Sandlin at the time that the infringement first occurred.").

2

3

4    **Samsung's Objection to Apple's Proposed Instruction**

5    Apple's repeated reference to "Samsung's use of the iPad trade dress" is misleading and unfairly
     prejudicial without qualifying that the use is "alleged" and it is an "asserted" trade dress that is
6    "iPad-related." It has not been established that Samsung has used any valid trade dress of Apple's
     and Apple's asserted trade dress does not encompass the entirety of the iPad's look and feel.
7    "Samsung's goods" in the first sentence also improperly suggests that there can be more accused
     products other than Galaxy Tab 10.1. Further, in the factor 3, the proposed instruction improperly
8    limits to "appearance" what should be compared against the accused product, which also includes
     feel. Under the Ninth Circuit Model Instruction 15.2, features such as "size, shape, color, color
9    combinations, texture, or graphics" should be considered given that this case concerns product
     configuration trade dress, not trade mark. Additionally, Apple's proposed instruction gives a
10   misleading impression of what the jury should consider in evaluating the likelihood of confusion
     factors. First, in paragraph 3, Apple adds language not dictated by the Ninth Circuit Model
11   Rules: "Similarities in appearance weigh more heavily than differences in finding the trade dress
     is similar." The optional Ninth Circuit language Apple modified is about trademarks, not trade
12   dress: "Similarities in appearance, sound or meaning weigh more heavily than differences in
     finding the marks are similar." Modifying that language as Apple has done for use in a product
13   configuration case, where functionality concerns, at a minimum, significantly influence the
     appearance of the products is not appropriate and would unfairly prejudice Samsung. *E.g.,*
14   *Motorola Inc. v. Qualcomm Inc.,* 45 U.S.P.Q.2d 1558 (S.D. Cal. 1997), aff'd without op., 135
     F.3d 776 (Fed. Cir. 1998) ("While [defendant's] phone has many of the same features as
15   [plaintiff's phone], many of these features are functional and the two phones are sufficiently
     distinct."); *OddzOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d 1396 (Fed. Cir. 1997) (the
16   mistaken association in the survey of plaintiff's and defendant's products in a line-up including
     three additional products that lacked the functional attributes of the two conflicting products "is
17   not probative of trade dress infringement"). Second, Apple's instruction regarding intent
     similarly ignores justifiable reasons that a plaintiff's product configuration could be known and
18   used by defendants without intent to deceive such as to use "wholly functional features that they
     perceive as lacking any secondary meaning because of those features' intrinsic economic
19   benefits." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 844-845 (9th Cir. 1987);
     *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F. Supp. 2d 1168, 1181 (N. D. Cal.
20   2007) (found no secondary meaning because competitors may intentionally copy product features
     for a variety of reasons); *Libman Co. v. Vining Industries, Inc.,* 69 F. 3d 1360, 1363 (7th Cir.
21   1995) ("Vining noticed that Libman's brooms were selling briskly, inferred that consumers like
     brooms with contrasting color bands, and decided to climb on the bandwagon. We call that
22   competition, not bad faith, provided there is no intention to confuse, and, so far as appears, there
     was none."). 4 McCarthy §§ 8:19, 23:122 at 23-377 (2012 ed.) ("If all that happens is that a junior
23   user copies a competitor's trade dress design because it sells better and consumers seem to like it,
     then this is not evidence of an intent to confuse."). Third, Apple's instruction fails to identify that
24   Apple bears the burden of proving likelihood of confusion. Fourth, Apple introduces a theory of
     trade dress infringement based on initial interest confusion for the first time. This new theory was
25   never pled in Apple's complaint, never provided in iterations of Apple's infringement contentions,
     and not pursued during discovery, and thus should be excluded from trial. Fed.R.Civ.P. 26(a),
26   37(c)(1); *See Accentra Inc. v. Staples, Inc.,* No. CV 07-5862 ABC (RZx), 2010 WL 8450890, *23
     (C.D. Cal. Sept. 22, 2010) (granting the defendant's motion in limine excluding a new induced
27   infringement theory introduced for the first time in the plaintiff's proposed jury instructions).
     Further, Apple's instruction is misleading and unfairly prejudicial because it improperly injects
28   the concepts of "initial interest confusion," "point-of-sale confusion" and "post-sale confusion"

into the pivotal instruction on consumer confusion.  Apple has deviated from the Ninth Circuit Model Instruction No. 15.16 by abruptly introducing these concepts (which do not appear in the model instruction) without any explanation or context.  The jury will be confused by the way Apple's instruction identifies these distinct theories of consumer confusion, but fails to explain how, if at all, they apply to this case.  Nor does this instruction describe Apple's considerable burden with respect to proving each of these forms of confusion, particularly given their inapplicability to the facts of this case:

- First, Apple's instruction is improper because it misleadingly implies that the jury may find liability for trade dress infringement based solely of a finding of "confusion" at any point before, during or after the sale of a Samsung tablet without also finding that the confusion affected a purchase decision.  This is not the law.  Ninth Circuit holds that consumer confusion in general is not actionable; only consumer confusion that affects a purchasing decision is sufficient to prove trade dress infringement. *See Rearden LLC v. Rearden Commerce, Inc.*__ F.3d ___, 2012 WL 2402012, *19  (9th Cir. June 27, 2012) ("[t]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (quoting *Bosley Med. Ins., Inc. v. Kremer*, 403 F.3d 673, 677 (9th Cir. 2005).

- Second, Apple's instruction is improper because it identifies "initial interest" confusion as an available form of consumer confusion, ignoring that the doctrine has been rejected in the context of product configuration.  *See, e.g., Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir. 2005) ("Given severe anti-competitive effects such a decision could have, we do not believe it is appropriate to extend the initial-interest-confusion doctrine in this manner."); *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) (rejecting non-point-of-sale confusion involving grille shape of expensive jeep); *Dorr-Oliver*, 94 F.3d 376, 383 (7th Cir. 1996) (rejecting plaintiff's theory of initial interest confusion and stating that "where product configurations are at issue, consumers are generally more likely to think that a competitor has entered the market with a similar product assume that the two manufacturers are associated…"); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193 (1st Cir. 1980) (rejecting pre-sale confusion claim involving the silhouette of a high-price wood burning stove because no likelihood of confusion when the manufacturer's name is clearly displayed).  Given that consumers "almost invariably" do not perceive product configurations as indicators of source, *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 213 (2000), the initial interest confusion should not be applied here.

- Third, Apple's proposed instruction is improper because initial interest confusion requires a finding that a significant number of consumers are likely to go to a store or a website with the intention of purchasing an iPad and mistakenly assume that a Samsung tablet computer is an iPad and then, even once their initial assumption is corrected, decide to purchase the Samsung tablet computer because it would be too much effort to locate an iPad instead.  *Brookfield Communications, Inc. v. West Coast Entm't*, 174 F.3d 1036, 1066 (9th Cir. 1999) ("Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading—"West Coast Video: 2 miles ahead at Exit 7" — where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7.  Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast.").  Apple has never identified any such evidence.

1

- ▪ Fourth, Apple's instruction on initial interest confusion is also improper because initial interest confusion in the 9th Circuit has been limited almost exclusively to the misleading use of trademarks in the Internet context.  *See Brookfield Commc'ns v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) (applied to domain name and website metatags); *Playboy Enter., Inc. v. Netscape Commc'ns Corp*., 354 F.3d 1020 (9th Cir. 2004) (applied to keywords in banner advertising); *Internet Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107 (9th Cir. 1999) (applied to domain name); *Playboy Enterprises, Inc. v. Netscape Communications Corp*., 55 F.Supp.2d 1070, 1074 (C.D. Cal. 1999) (initial interest confusion is "brand of confusion particularly applicable to the Internet." ); *Golden West Financial v. WMA Mortg. Services, Inc.*, 2003 WL 1343019 at *7 (N.D. Cal. 2003) (noting that "Brookfield has marginal application to this case which does not focus primarily on the Internet user"); *Shell Trademark Management BV*, 2002 WL 32104586 at *1 (N.D. Cal. May 21, 2002) ("[T]he evolving doctrine of infringement by initial interest confusion, applied primarily in the Internet context").

Fifth, Apple's inclusion of an instruction on post-sale confusion is also improper because Apple does not maintain that it has sustained reputational injury, which is precisely the harm post-sale confusion seeks to address.  *See Karl Storz Endoscopy v. Surgical Tech, Inc.*, 285 F.3d 848, 854 (9th Cir. 2002 (post-sale confusion results in reputational injury); *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1058 (D. Or. 2008) (adidas proffered evidence that post-sale confusion "negatively impact consumer perceptions of the adidas brand as a source of quality footwear" given the "inferior quality" of Payless' shoes).  Apple is not pursuing dilution by tarnishment (i.e.—injury to its reputation), *see* Apple's Response to Interrogatory No. 70 (omitting dilution by tarnishment as a basis for claimed dilution) nor has its damages expert opined on or attempted to quantify a diminution in value to the trade dresses asserted, *see* Expert Report of Terry L Musika.  In addition, Apple has not identified any authority for the application of post-sale confusion arising in the product configuration context, and the cases that Apple does cites in support of its instruction are highly distinguishable—one involving confusion arising from the sale of a statuette designed to mimic the famous Oscar statue and the other involving the use of plaintiffs trademark printed on a tee-shirt.  Neither of these cases is even remotely similar to the facts here where the trade dress at issue is embodied in the product design and where there is no evidence that the sale harms Apple's reputation.

**Samsung's Proposed Instruction**[15]

You must decide whether Samsung's use of its accused products is likely to cause confusion about the source of Samsung's tablet computers. Apple alleges consumer confusion has occurred or is likely to occur at three times: before the purchase (called "initial interest" confusion), at the moment of the purchase (called "point of sale" confusion), and after the purchase (called "post-sale" confusion).

To establish any of these types of confusion, Apple must prove by a preponderance of the evidence that any such consumer confusion affected consumers' decisions to purchase tablet computers.

In addition, to establish initial interest confusion, Apple must prove by a preponderance of the evidence that consumers are likely to go to a store or a website with the intention of purchasing an iPad and mistakenly assume that a Samsung tablet computer is an iPad and then, even after their initial assumption is corrected, decide to purchase the Samsung tablet computer because it would be too much effort to locate an iPad instead.

In addition, to establish point of sale confusion, Apple must prove by a preponderance of the evidence that consumers are likely to purchase a Samsung tablet falsely believing it to be an iPad.

In addition, to establish post-sale confusion, Apple must prove by a preponderance of the evidence that consumers are likely to incorrectly believe that a Samsung tablet is an iPad after it has been purchased and that this consumer confusion has caused consumers not to purchase an iPad and caused injury to Apple's reputation.

I will suggest some factors you should consider in deciding whether there is a likelihood of consumer confusion based on Apple's alleged iPad trade dress or alleged iPad 2 trade dress. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.

1.      Strength or Weakness of the Plaintiff's Trade Dress. The more the consuming public recognizes the plaintiff's trade dress as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar trade dress.

2.      Defendant's Use of the Trade Dress. If the defendant and plaintiff use their trade dress on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.      Similarity of Plaintiff's and Defendant's Trade Dress. If the overall impression created by the plaintiff's trade dress in the marketplace is similar to that created by the defendant's trademark in appearance there is a greater chance of likelihood of confusion.

4.      Actual Confusion. If use by the defendant of the plaintiff's trade dress has led to a significant number of instances of actual confusion, this suggests a likelihood of confusion. As you consider whether the trade dress used by the defendant creates for consumers a likelihood of

---

[15]   Samsung objects to informing the jury about the various theories of consumer confusion for the reasons set forth in Samsung's Objection To Apple's Jury Instruction No. 69 ("TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT TEST"). However, in the event the Court chooses to educate the jury on the different forms of confusion, Samsung proposes this instruction.

confusion with the plaintiff's trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.      Defendant's Intent.  If the defendant adopted trade dress similar to the plaintiff's with the intent to deceive consumers, this increases the likelihood of consumer confusion.

6.      Marketing/Advertising Channels. If the plaintiff's and defendant's products are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.      Consumer's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trade dresses.

**Source**

Ninth Circuit Model Instructions No. 15.16 (modified); *Art Attacks, LLC. v. MGA Entertainment Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) ("To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products"); *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F. 3d 1137, 1144 (9th Cir. 2011) ("[W]e must apply the *Sleekcraft* test in a flexible manner, keeping in mind that the eight factors it recited are not exhaustive, and that only some of them are relevant to determining whether confusion is likely in the case at hand."); *Brookfield Communications, Inc. v. West Coast Entm't*, 174 F.3d 1036, 1066 (9th Cir. 1999) ("Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading—"West Coast Video: 2 miles ahead at Exit 7" —where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast."); *Rearden LLC v. Rearden Commerce, Inc.*, ___ F.3d ___, 2012 WL 2402012, *19  (9th Cir. June 27, 2012) ("Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (quoting *Bosley Med. Ins., Inc. v. Kremer*, 403 F.3d 673, 677 (9th Cir. 2005); *Bosley Med. Inst., Inc. v. Kremer*, 403 F. 3d 672, 677 (9th Cir. 2005) (post sale confusion results when product is viewed by a third party subsequent to purchase); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) (consumers "almost invariably" do not perceive product configurations as indicators of source); *Karl Storz Endoscopy-America v. Surgical Tech.*, 285 F. 3d 848, 854 (9th Cir. 2002) (injury from post sale confusion is reputational).

**Apple's Objection to Samsung's Instruction**

Samsung's Proposed Instruction mischaracterizes Apple's position and the law in the Ninth Circuit.  **First**, Samsung states that "Apple alleges consumer confusion has occurred or is likely to occur at three times[.]"  The types of confusion to which Apple cites are not separate or new theories.  Apple alleges a *likelihood of confusion*, and its proposed instruction simply informs the jury—accurately and without argument or bias—that it may consider three different timeframes

when assessing whether Samsung's products are likely to cause confusion:  (i) before the purchase, (ii) at the moment of purchase, and (iii) after the purchase.  *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032 (9th Cir. 2010) (considering "post-purchase confusion" when analyzing "similarity of marks" prong of *Sleekcraft* test); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004) (likelihood of confusion, including initial interest confusion, analyzed under *Sleekcraft* test); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002) (post-purchase confusion can establish required likelihood of confusion under Lanham Act); *see also* Apple's Proposed Instruction No. 57 and cited authorities therein.  **Second**, Samsung creates out of whole cloth additional burdens that do not exist in the law by misleadingly citing facts from particular cases, and incorrectly suggesting that *only* those facts could support such a claim.

- With regard to <u>initial interest confusion</u>, courts in the Ninth Circuit apply the doctrine to product configuration cases.  *See, e.g., Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1058 (D. Or. 2008) (holding in product design case that "[i]nitial-interest and post-sale confusion are well established forms of confusion").  Courts do *not* require that consumers "mistakenly assume that a Samsung tablet computer is an iPad and then . . . decide to purchase the Samsung tablet computer . . . ."  Samsung's only cited support is *Brookfield Comm's., Inc. v. West Coast Entm't*, 174 F. 3d 1036, 1066 (9th Cir. 1999), but Samsung quotes an *example* of initial interest confusion from that case, *not a standard that Apple must meet*.  *Brookfield* agrees with other Ninth Circuit case law (and with Apple), that initial interest confusion is actionable even if "no actual sale is finally completed as a result of the confusion."  *Nissan Motor Co.*, 378 F.3d at 1018; *see also*, *Brookfield*, 174 F.3d at 1062.

- With regard to <u>point of sale confusion</u>, Samsung's instruction wrongly maintains that the jury must decide whether Samsung's sale of accused products is likely to cause confusion "about the source" of Samsung's tablet computers.  But the Lanham Act addresses likelihood of confusion as to "origin, sponsorship, or approval."  *See, e.g.*, 15 U.S.C. § 1125(a).

- With regard to <u>post-sale confusion</u>, Samsung incorrectly states that Apple must prove "consumers are likely to incorrectly believe that a Samsung tablet is an iPad after it has been purchased and that this consumer confusion has caused consumers not to purchase an iPad and caused injury to Apple's reputation."  This has no basis in the law.  Samsung's only cited support is *Karl Storz Endoscopy*, 285 F.3d at 854, but this is again a misleading citation to the court's comment on the facts of that case—*not* a standard that Apple must meet.  The *Karl Storz* decision simply recognized that "[p]ost-sale confusion . . . may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale."  *Id.* at 854.  Neither it nor any other Ninth Circuit case held that a plaintiff must prove reputational harm in order to render post-sale likelihood of confusion actionable.  *See Fortune Dynamic*, 618 F.3d at 1032 (noting that "possibility of post-purchase confusion . . . can establish the required likelihood of confusion under the Lanham Act" with no discussion of reputational harm); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139 (9th Cir. 2010) (discussing post-purchase confusion and rejecting argument "that there is no trademark infringement because [defendant's products] are of high quality").

- Samsung's further claim that <u>initial interest and post-sale confusion</u> are only actionable if they lead to a mistaken purchasing decision—either mistakenly purchasing a Samsung tablet (initial interest) or mistakenly *not* purchasing an iPad (post-sale confusion)—is also incorrect.  Samsung cites *Rearden LLC v.*

1       *Rearden Commerce, Inc.*, 2012 U.S. App. LEXIS 13152, at \*60 (9th Cir. 2012),
but *Rearden* did not involve initial-interest or post-sale confusion, and did not
2   limit the court's prior jurisprudence in those areas.  In fact, *Rearden* only
mentions post-purchase confusion to support the proposition that even *non-*
3   *consumer* confusion can bear on the likelihood of confusion.  2012 U.S. App.
LEXIS 13152, at \*66.  Ninth Circuit cases discussing initial interest and post-sale
4   confusion make clear that *no* showing of a mistaken purchase is necessary.  *See*
*Nissan Motor Co.* 378 F.3d at 1018 ("Initial interest confusion occurs when the
5   defendant uses the plaintiff's trademark in a manner calculated to capture initial
consumer attention, *even though no actual sale is finally completed* as a result of
6   the confusion.") (emphasis added) (internal citations omitted); *Karl Storz*
*Endoscopy-Am., Inc.*, 285 F.3d at 854 ("The law in the Ninth Circuit is clear that
7   'post-purchase confusion,' *i.e.*, confusion on the part of someone other than the
purchaser who, for example, *simply sees the item after it has been purchased*, can
8   establish the required likelihood of confusion under the Lanham Act.") (emphasis
added).

9

10   **Third**, with no support, Samsung adds the vague term "significant" to the "actual confusion"
prong of the *Sleekcraft* test.  The term "significant" does not appear in the Ninth Circuit model
11   on which Samsung's instruction is based, or in *Sleekcraft*.  *AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341, 353 (9th Cir. 1979).  In fact, as to the actual confusion factor, while "significant"
12   amounts of actual confusion may suggest likelihood of confusion, courts have noted that actual
confusion can be difficult to find, and that "very little proof" of actual confusion still suggests
13   likelihood of confusion.  *See Citibank, N.A. v. City Bank of San Francisco*, No. C-79-1922, 1980
WL 30239, at \*1009 (N.D. Cal. Mar. 23, 1980) ("Very little proof of actual confusion would be
14   necessary to prove likelihood of confusion."); *Metro Publ'g, Inc. v. Surfmet, Inc.*, No. C-02-
01833, 2002 U.S. Dist. LEXIS 26232, at \*25 (N.D. Cal. July 3, 2002) (evidence of actual
15   confusion "strongly support[ed]" finding of likelihood of confusion).  Samsung also omits that
actual confusion "strongly" suggests, but is not required, for a finding of likelihood of confusion.
16   *Clamp Mfg. Co. v. Enco Mfg. Co.*, No. CV-82-4352, 1987 U.S. Dist. LEXIS 13427, at \*12-13
(C.D. Cal. Aug. 10, 1987).  **Fourth**, Samsung also omits the important language that similarities
17   in appearance weigh more heavily than differences.  *Entrepreneur Media v. Smith*, 279 F.3d
1135, 1144 (9th Cir. 2002) (that "[s]imilarities weigh more heavily than differences" is one of
18   three axioms of similarity analysis).  **Finally**, Samsung alters the meaning of the "intent" prong
by asserting that only "intent to deceive" is relevant.  The Ninth Circuit does not require that
19   Apple prove "intent to deceive." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir.
1979) (knowing adoption of mark similar to another's relevant to "intent").

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 57.1**
**LIKELIHOOD OF CONFUSION FACTORS— STRENGTH OF TRADE DRESS**

2

**Samsung's Proposed Instruction**

3

4

When products with similar trade dress permeate the marketplace, the strength of the trade dress decreases, and the likelihood that consumers will be confused is lessened.

5

**Source**

6

*Miss World (UK), Inc. v. Mrs. American Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) ("Simply put, a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive'. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."), *abrogated on other grounds*; *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F. 3d 971 (8th Cir. 2006) (considering use of mark by third-parties and newspapers); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008) ("Courts view a mark's use by competitors as strong evidence of how the public perceives the term. …Naturally, when more members of the public see a mark used by several producers in the industry, the less likely they will identify a particular producer with that mark.") (internal quotation marks, citations omitted); *Big Star Entertainment, Inc. v. Next Big Star*, 105 F.Supp.2d 185, 204-05 (S.D.N.Y. 2000) ("Extensive third party use of the term 'Big Star' as a mark, especially by businesses which may directly compete with plaintiff, weighs against a finding that plaintiffs unregistered marks are strong"); *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir.1997) ("evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak"); *Michael Caruso & Co., Inc. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1463 (S.D.Fla.1998) (extensive third party use of word "bongo" undermines inherent distinctiveness of mark), *aff'd without opinion*, 166 F.3d 353 (11th Cir.1998).

7

8

9

10

11

12

13

14

15

16

**Samsung's Statement in Support**

17

Instruction 57.1 addresses strength of trade dress. Ninth Circuit Model Jury Instruction 15.17 contains detailed information about strength of trademarks and trade dress, and even cites one of the cases Samsung relies on, *Miss World (UK) Ltd. v. Mrs. America Pageants*, 856 F.2d 1445, 1449 (9th Cir.1988). Although the Model Instruction does not propose an explanatory instruction for strength of trade dress, Samsung's short instruction captures the relevant point of its guidance for a case like this one, in which the marketplace is filled with products that have similar features and where, despite those similarities, customers are not confused and can easily distinguish among them.

18

19

20

21

22

**Apple's Objection to Samsung's Instruction**

23

Samsung's proposed instruction is not in the Ninth Circuit model instructions. It is also misleading and confusing. First, Samsung is repeating the pattern it began with its secondary meaning instructions, inserting unnecessary and one-sided argumentative commentary on each individual factor of the test. Second, Samsung again ignores timing issues. *See, e.g., Death Tobacco v. Black Death USA*, No. CV-92-6437-WMB, 1993 U.S. Dist. LEXIS 20646, at *12-13 (C.D. Cal. June 30, 1993) ("The proper time to assess the strength of a trademark is as of the time of the first alleged infringement.").

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 57.2**
**LIKELIHOOD OF CONFUSION FACTORS—SIMILARITY OF TRADE DRESS**

**Samsung's Proposed Instruction**

In assessing similarity of the trade dresses, you may consider the use of the of the "Samsung" trademark on Galaxy Tab 10.1 product and Apple's use of Apple's trademarks and logos on the iPad and iPad 2 product. If you find that the parties' trade names or other source identifying features are featured prominently on the products, then consumer confusion is unlikely.

**Source**

*AMF Inc. v. Sleekcraft Boats,* 599 F. 2d 341, 351 (9th Cir. 1979) (use of a prominent "house-mark" reduces likelihood of confusion); *Rodan & Fields, LLC v. Estee Lauder Companies, Inc.,* No. 10–CV–02451–LHK, 2010 WL 3910178, *3 (Oct. 5, 2010, N.D. Cal) ("The prominence of the trade names on the packaging strongly supports a finding that consumer confusion is unlikely") (*citing Bristol–Myers Squibb Co. v. McNeil–P.P. C., Inc.,* 973 F.2d 1033, 1045–46 (2d Cir. 1992) ("[W]e conclude that, although [the trade dresses of Tylenol PM and Excedrin PM] share many similar elements, the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging.")).

**Samsung's Statement in Support**

Instruction 57.2 addresses the impact of trademarks and logos in determining trade dress infringement. Apple has not submitted a competing instruction. Because trade dress law is designed in part to protect the public from being misled or confused in the market, as this Ninth Circuit precedent recognizes, a party's prominent use of a mark or logo on its products is highly relevant. *E.g., Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1150 (9th Cir. 2011) ("[T]he proximity of the goods would become less important if advertisements are clearly labeled or consumers exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products.") This instruction will assist the jury with a clear and pertinent statement of the law.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is not in the Ninth Circuit model instructions. It also consists of an improper factual argument, not a legal instruction. First, there is no basis in the law for Samsung's instruction that consumer confusion is unlikely if trade names or logos are featured prominently on products. For the cases it cites, Samsung's own parentheticals reveal that the cases do not hold as a matter of law that presence of trade names makes consumer confusion is unlikely. Second, Samsung's assertion that prominent logos render confusion "unlikely" elevates this single fact above the test, as if it were to be weighed separately. Third, Samsung's instruction assumes facts not in evidence—for example, the evidence at trial may show that when Samsung's products first entered the U.S. market, they did not have a SAMSUNG trademark featured prominently.

**PROPOSED FINAL JURY INSTRUCTION NO. 57.3**
**LIKELIHOOD OF CONFUSION FACTORS—INTENT**

## Samsung's Proposed Instruction

Mere attempts to copy a product are not necessarily probative of an intent to deceive consumers since it may well be emulating a desirable or functional feature of the product and not attempting to confuse consumers. The law permits a defendant to copy the plaintiff's product down to the minutest detail, as long as the defendant does not represent itself as the plaintiff in the sale of those products.

## Source

*Bonito Boats v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant . . . may copy plaintiff's goods slavishly down to the minutest detail; but may not represent himself as the plaintiff in their sale.") (internal quotation marks omitted); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 844-845 (9th Cir. 1987) ("Competitors may intentionally copy product features for a variety of reasons. They may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits."); *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) (found no intent because the defendant did not have "any intention of capitalizing on [plaintiff's] trademark.").

## Samsung's Statement in Support

Instruction 69.3 addresses the importance of establishing an intent to capitalize on the plaintiff's mark and assists the jury in placing supposed "copying" activities into the proper context. Apple will present facts it will argue constitute willful copying, yet Bonito Boats v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989) establishes that such willful copying is irrelevant without the intent to confuse consumers. Apple has not submitted a competing instruction that reflects this important legal point.

## Apple's Objection to Samsung's Instruction

Samsung's proposed instruction is not in the Ninth Circuit model instructions. It also misstates the law in the same manner as its proposed instruction No. 50.4, and miscites the same cases. *See* Apple's Objection to proposed instruction No. 50.4.

1

## PROPOSED FINAL JURY INSTRUCTION NO. 57.4
## LIKELIHOOD OF CONFUSION FACTORS—ADVERTISING

2

3

**Samsung's Proposed Instruction**

4

The fact that both Apple and Samsung advertise in mainstream media and sell their products on the Internet and other major retail chains does not weigh in favor of likely confusion because these channels are used by most commercial retailers today.

5

**Source**

6

7

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F. 3d 1137, 1151 (9th Cir. 2011) ("[T]shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion.").

8

9

**Samsung's Statement in Support**

10

11

12

13

14

15

Instruction 57.4 has no competing Apple instruction.  Apple has attempted to present evidence about the fact that Samsung and Apple sell products through the same retail channels in order to suggest that consumers will therefore be confused into thinking that Samsung's products are Apple's products.  But as the Ninth Circuit recently held, the use of ubiquitous marketing channels is not probative because in many such circumstances, consumers are not confused and in fact are easily able to distinguish among many similar-looking competing products.  This is not a situation in which Apple and Samsung are using the same niche marketing channels to promote their products.  *E.g., Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) (distinguishing Sleekcraft, where "the two products were sold in niche marketplaces, including boat shows, specialty retail outlets, and trade magazines" and holding "this factor becomes less important when the marketing channel is less obscure.").

16

17

**Apple's Objection to Samsung's Instruction**

18

19

20

21

22

Samsung's proposed instruction is not in the Ninth Circuit model instructions.  It is also wrong for two reasons.  First, Samsung suggests that the jury should ignore the "channels of trade" prong, which is not the law.  *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011), simply held that where both parties were marketing online and in a ubiquitous marketing channel, this factor did "not shed much light" on likelihood of confusion.  *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011) (affirming district court finding that use of Internet as marketing channel favored trademark owner, though noting proof of different consumer bases may favor defendant).  Second, Samsung's instruction is again an unnecessary attempt to insert an argumentative response leading the jury to a particular conclusion as a separate "instruction."

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 57.5
DILUTION—TARNISHMENT**

2

**Samsung's Proposed Instruction**

3

**[Apple has represented that it is not seeking to establish dilution by tarnishment.  If Apple
agrees not to make any arguments that sound in tarnishment or submit its own jury
instruction on tarnishment, Samsung will withdraw its request for this instruction.]**

4

5

To prove dilution by tarnishment, Apple must prove by a preponderance of the evidence that the
design of Samsung's products harms the reputation of the Apple's trade dress by improperly
associating it with an inferior or offensive product or service.

6

7

**Source** 15 U.S.C. § 1125(c)(2)(C).

8

9

**Apple's Objection to Samsung's Instruction**

10

Apple confirms it is not seeking to establish dilution by tarnishment and will not submit its own
jury instruction on tarnishment.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 58
TRADE DRESS DAMAGES IN GENERAL**

2

**Apple's Proposed Instruction**

3

I will now explain to you how to assess the monetary relief to which Apple is entitled based on its
claims for trade dress dilution and infringement.  As I will explain, there are three forms of
monetary relief to which Apple may be entitled:  Apple's actual damages, Samsung's profits,
and/or a reasonable royalty.

4

5

Subject to any exceptions I mention, Apple has the burden to persuade you of the amount of
monetary relief to which it is entitled.

6

7

In determining the amount of money to award Apple for its trade dress claims, you must
determine the date on which damages began to accrue.  Damages for trade dress dilution and
trade dress infringement begin to accrue on the date that Samsung began diluting or infringing an
Apple trade dress.  You should award Apple money damages for all violations that occurred on
that date and any date after that.

8

9

10

You should not award Apple monetary relief for any of its dilution claims unless Apple proves it
more likely than not that Samsung's acts of dilution were willful.  This does not apply to Apple's
trade dress infringement claim.

11

12

If you determine that Samsung's dilution was not willful, you do not need to assess monetary
damages for that claim.

13

14

**Authorities**

15

15 U.S.C. § 1111 ("Notwithstanding the provisions of section 1072 hereof [15 USC 1072], a
registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark
is registered by displaying with the mark the words "Registered in U. S. Patent and Trademark
Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus (R); and in
any suit for infringement under this Chapter by such a registrant failing to give such notice of
registration, no profits and no damages shall be recovered under the provisions of this Chapter
unless the defendant had actual notice of the registration."); 15 U.S.C. § 1117(a) ("When a
violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a
violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of
this title, shall have been established in any civil action arising under this chapter, the plaintiff
shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to
the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the
plaintiff, and (3) the costs of the action."); *Coach, Inc. v. Asia Pac. Trading Co., Inc.,* 676 F.
Supp. 2d 914, 924-9259 (C.D. Cal. 2009) ("Since 1989, [§ 1117] statutory damages for a
violation of [§ 1125(a) ] for infringement of an unregistered mark are "subject to" the provisions
of the [§ 1111] requirements of notice. But because the [§ 1111] requirement of notice only
applies to registered marks, it is, of course, not a limitation on recovery of damages under a
[§ 1125(a) ] count for infringement *of an unregistered mark . . . McCarthy on Trademarks, supra,
§ 19:144* (emphasis added); *see also GTFM, Inc. v. Solid Clothing, Inc.,* 215 F. Supp. 2d 273, 306
(S.D.N.Y. 2002) (stating that for any infringement occurring before date of mark's registration
plaintiff could recover profits and damages under 15 U.S.C. § 1125(a), but for all infringement
occurring after date of registration plaintiff had to satisfy notice requirements of § 1111 to recover
profits and damages).").

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Objection to Apple's Proposed Instruction**

Apple's instruction prejudicially assumes that Samsung is liable and Apple is entitled to damages ("the monetary relief to which Apple is entitled").  Apple also fails to explain its burden to prove damages, including by (a) a preponderance of the evidence, (b) the amount of damages to a reasonably certainty, and (c) that the jury cannot award speculative damages.  *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F. 2d 1400, 1407 (9th Cir. 1993) (damages must be proved to a "reasonably certainty" and may not be "speculative"); Ninth Circuit Model 15.25; ABA Model 3.6.1.  The legal authorities cited by Apple do not support such material omissions.  Samsung's proposal, on the other hand, is modeled on ABA Model 3.6.1 and correctly states the burden of proof and law concerning trade dress damages.  Apple's instruction also incorrectly states that all trade dress damages accrue on the date that a violation first occurred.  The jury should be instructed, as stated by Ninth Circuit Model Instruction 15.24 and Samsung Proposed Final Instruction No. 61.2, that Apple may only recover damages for its registered trade-dress claim when each Samsung defendant received "statutory or actual notice that Apple's iPhone trade dress was registered." Additionally, Apple incorrectly states that there are "three forms of monetary relief" available for Apple's trade dress claims.  In fact, Apple may recover only two forms of monetary relief, actual damages and/or defendant's profits.  As explained in Samsung's Objection to Apple's Proposed Final Instruction No. 78, Apple may not recover a reasonable royalty for its trade dress claims. Finally, Apple erroneously instructs that the willfulness requirement to collect monetary damages "does not apply to Apple's trade dress infringement claim."  The Comment to ABA Model 3.6.6 states that some courts require "that infringement be 'willful' for an award of profits" and identifies the Ninth Circuit as such a jurisdiction.  *See ABA Model Jury Instructions, Copyright, Trademark and Trademark*, at 260 (2008).  This is consistent with Ninth Circuit authority.  *See Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996) (plaintiff could recover infringer's profits "only if the infringement was willful."); *M2 Software Inc. v. Viacom Inc.*, 223 Fed. Appx. 653, 655, 2007 WL 649733 (9th Cir. 2007) ("M2 Software is not entitled to an accounting of Viacom's profits, because it did not introduce evidence from which a reasonable fact finder could conclude that Viacom willfully infringed M2 Software's trademark."); *Gracie v. G*racie, 217 F.3d 1060, 1068 (9th Cir. 2000) (finding that a recovery of profits requires a finding of willful infringement); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F. 2d 1400, 1407 (9th Cir. 1993) (denying accounting of profits because "the present case simply does not involve willful infringement"); *Golden Door, Inc. v. Odisho*, 437 F. Supp. 956, 968 (N. D. Cal. 1977), aff'd, 646 F.2d 347, 352 (9th Cir. 1980) ("Plaintiff is not entitled to damages or accounting for profits since there has been no showing of fraud and defendant's claim that he innocently adopted and used the name stands unrefuted.").  Moreover, Apple's own damages expert admits that his calculations of defendants' profits are designed to avoid Samsung's "unjust enrichment," not as a proxy for Apple's actual damages.  *See* Dkt. No. 991-19b, Ex. 14.  Although the Ninth Circuit in dicta has suggested that willfulness may not be a required element "when plaintiff seeks the defendant's profits as a measure of its own damage," *Adray*, 76 F.3d at 988, such an exception – if it exists – is not relevant here.   Finally, Apple fails to instruct that before Apple may recover monetary damages for its dilution claim it must prove by a preponderance of the evidence that the infringement in fact injured or harmed Apple's trade dress.  *See* 4 *McCarthy* § 24:132, at 24-410 ("monetary recovery for dilution requires some proof that the famous mark was in fact injured or harmed by the defendant's conduct").

**Samsung's Proposed Instruction**

I am going to provide you with details on the calculation of damages for Apple's trade dress infringement claim.  All of these instructions apply only if you find that Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America has in fact infringed upon Apple's trade dress.  The fact that I am giving you these instructions should not be taken as an indication that an infringement has taken place.  They are to be used only in the event you make a specific finding that Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America has in fact infringed on Apple's trade dress.

If Apple prevails on its claim for trade dress infringement, you may award Apple damages only if it has proven actual consumer confusion resulting from Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's infringement or that their actions were intentionally deceptive.

If Apple has established actual consumer confusion or intentional deception by Samsung Electronics Company, Samsung Electronics America or Samsung Telecommunications America, it is your duty to determine Apple's damages.  The burden is on Apple to prove damages by a preponderance of the evidence.  Damages are the amount of money that will reasonably and fairly compensate Apple for any injury that you find was caused by a defendant's alleged infringement of Apple's trade dress.  The factors that you may consider, which I will explain to you in greater detail, are any Apple lost sales and lost profits from the alleged infringement.  If you find that Apple has proven a likelihood of "initial interest" or "post sale confusion" by a preponderance of the evidence, you may award Apple damages only for those sales that Apple proves by a preponderance of the evidence that it lost as a result of such confusion.[16]

Proof of damages to a certainty is not required.  However, the burden is on Apple to show any damages to a reasonable certainty, and awarded damages may not be speculative.

**Source**

ABA 3.6.1 (modified).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is both inefficient and prejudicially repetitive for three reasons.  First, the instruction introduces jurors to trade dress remedies, but confusingly, only addresses infringement and not dilution.  Because the same remedies are available for both causes of action, they should be discussed in one set of instructions.  Separating the infringement damages instructions from the dilution damages instructions creates unnecessarily duplicative instructions and confusion.  15 U.S.C. 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USC 1125(a) or (d)], or a willful violation under section 43(c) [15 USC 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USC § §1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.").  Second, Samsung's proposed instruction repeats – three times – that jurors must

---

[16]   For the reasons explained in Samsung's objection to Apple's proposed Instruction No. 57, Samsung objects to Apple's inclusion of an "initial interest" and "post sale confusion" theories.  Nonetheless, should the Court overrule Samsung's objection, Apple is legally required to tie any such alleged confusion with its purported damages."

1   only award damages if the jury finds that Samsung has infringed Apple's trade dress.  This
reflects an effort to bias the jury.  Third, Samsung's instruction modifies the ABA model
2   instruction so that it sounds as though it applies to all measures of trade dress infringement
damages.  It should not apply to infringer's profits, which are a significant component of the
3   damages Apple seeks.  See 4 *McCarthy* § 30:63 ("majority of courts have held that plaintiff need
not demonstrate actual confusion or actual damages to obtain infringer's profits," citing *Gracie*
4   *v. Gracie*, 217 F.3d 1060 (9th Cir. 2000).)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 59**
**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**
**(15 U.S.C. § 1117(a))**

**Apple's Proposed Instruction**

Apple has the burden of proving the actual damages that it more likely than not suffered. Damages means the amount of money which will reasonably and fairly compensate Apple for any injury you find was caused by Samsung's infringement or dilution of Apple's registered or unregistered trade dresses.

You should consider the following:

   1.    The injury to Apple's reputation;

   2.    The loss of Apple's goodwill, including injury to Apple's general business reputation; and

   3.    The lost profits that Apple would have earned but for Samsung's infringement and/or dilution.  Profit is determined by deducting all expenses from gross revenue.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.25 (2007 Ed.).

**Authorities**

15 U.S.C. § 1117(a); 15 U.S.C. § 1125; *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 620-21 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Id.* "[T]he purpose of section 1117 is to 'take all the economic incentive out of trademark infringement.'") (internal citations omitted); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (15 U.S.C. § 1117(a) further provides for an award, subject to equitable principles, of "any damages sustained by the plaintiff...." A plaintiff must prove both the fact and the amount of damage. 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984)").

**Samsung's Objection to Apple's Proposed Instruction**

Apple removes the first sentence of the Ninth Circuit Model 15.25.  Apple also generally refers to "Samsung" without distinguishing between the three, separate Samsung defendants.    Apple also eschews the Ninth Circuit standard "preponderance of the evidence" for "more likely than not." Apple also ignores the Comment to Ninth Circuit Model 15.25, which states that if the defendant argues that plaintiff's lost sales were caused by other market factors, "an appropriate instruction should be drafted."  Samsung has made such an argument and drafted an appropriate instruction but Apple's proposed instruction ignores the issue.  Finally, Apple fails to instruct – as correctly stated in Samsung's proposal  – that before Apple may recover monetary damages for its dilution claim, it must prove by a preponderance of the evidence that its trade dress was in fact injured or harmed.  *See* 4 *McCarthy* § 24:132, at 24-410 ("monetary recovery for dilution requires some proof that the famous mark was in fact injured or harmed by the defendant's conduct").  Finally, Apple has disclosed no damages theory or value – apart from irreparable harm which will not be presented to the jury – for its "reputation" or "good will" and "general business reputation."

1

**Samsung's Proposed Instruction**

2

Apple has the burden of proving actual damages by a preponderance of the evidence.  Damages
means the amount of money which will reasonably and fairly compensate Apple for any injury to

3

Apple you find was caused by Samsung Electronics Company's, Samsung Electronics America's
or Samsung Telecommunications America's alleged infringement of Apple's trade dress.

4

You should consider any lost profits that Apple would have earned but for Samsung Electronics

5

Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged
infringement.  Profit is determined by deducting all expenses from gross revenue.

6

If you find that any loss in sales shown by Apple was caused by other market factors and not as a

7

result of Samsung Electronics Company's, Samsung Electronics America's or Samsung
Telecommunications America's alleged infringement, then you should not award any amount for

8

lost profits or should reduce any such amount to account for the other market factors.

9

**Source**

10

Ninth Circuit Model Instruction No. 15.25 (modified) and the accompany Comment.

11

12

**Apple's Objection to Samsung's Instruction**

13

Apple's proposed instruction provides an explanation of actual damages for violation of trade
dress rights — both infringement and dilution.  Apple's instruction is clear, succinct, and

14

accurately summarizes controlling law.  Samsung's proposed instruction Nos. 59 and 61.1
unnecessarily present two separate and therefore confusing instructions on actual damages based

15

on trade dress infringement and dilution, even though Samsung acknowledges that the "same
standards apply" when calculating damages based on those violations.  In addition, this

16

instruction inaccurately instructs the jury about the standard of causation that applies.  The
instruction states:  "If you find that any loss in sales shown by Apple was caused by other market

17

factors and not as a result of [Samsung's] alleged infringement, then you should not award any
amount for lost profits or should reduce any such amount to account for the other market factors."

18

But as Apple correctly notes in Apple's proposed instruction here, the standard in the Ninth
Circuit is simply "but for" causation.  *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th

19

Cir.1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as
well as any lost profits which the plaintiff would have earned but for the infringement.").

20

Samsung's proposed instruction invites the jury to decline to award Apple lost profits, even if it
were to find "but for" causation, provided the jury believes "other market factors" contributed to

21

those lost sales.  That is not the appropriate standard.

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 60**
**TRADE DRESS DAMAGES—DEFENDANT'S PROFITS**
**(15 U.S.C. § 1117(a))**

### Apple's Proposed Instruction

Apple also is entitled to any profits earned by Samsung that are attributable to willful infringement or willful dilution.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of Samsung's receipts from sales of products that infringed or diluted Apple's trade dresses.  Apple has the burden of proving the gross revenues that Samsung more likely than not received.

Expenses are all operating, overhead, and production costs incurred in producing the gross revenue.  Samsung has the burden of proving the expenses that it more likely than not incurred.

Unless you find that Samsung has proven that a portion of the profit from the sale of its products that infringed or diluted any Apple trade dress is attributable to factors other than use of the trade dress, you shall find that the total profit is attributable to the infringement or dilution.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.26 (2007 Ed.).

**Authorities**

15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USCS § 1125(a) or (d)], or a willful violation under section 43(c) [15 USCS § 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USCS §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.); *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004–05 (9th Cir. 2004) ("We also note that disgorgement of profits is a traditional trademark remedy . . ."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (affirming defendant's profits as damages under 15 U.S.C. § 1117); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("'[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist."); *id.* at 1408 ("Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity") (citing *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942)); *id.*, ("[I]f it can be shown that the infringement had *no relation* to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher.") (emphasis added); *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) ("The statute thus allocates the initial burden of proving gross sales to the trademark plaintiff, and the subsequent burden of proving costs to the infringing defendant.[citations omitted]. Ordinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that amount unless the defendant adequately proved the amount of costs to be deducted from it. This sequence of proof thus places the burden of proving

costs on the party with the superior access to such information, namely the infringing defendant."); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995) ("[T]he burden of any uncertainty in the amount of damages should be borne by the wrongdoer . . . ."); *Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968); *Landes Mfg. Co. v. Chromodern Chair Co.*, No. CV 76-3540, 1978 U.S. Dist. LEXIS 15095, at *11 (C.D. Cal. Oct. 5, 1978). Ninth Circuit Model Civil Jury Instructions, Comment to 15.26 Trademark Damages—Defendant's Profits (15 U.S.C. § 1117(a)) ("The Ninth Circuit has not addressed, and other circuits are divided on, whether willfulness remained a prerequisite to disgorgement of a defendant's profits as a result of the Trademark Amendments Act of 1999, Pub. L. 106-43, § 3(b), 113 Stat. 218, 219 (codified in relevant part at 15 U.S.C. § 1117). However, even prior to the 1999 Amendments, the Ninth Circuit suggested that willfulness was not always a requirement for the award of profits. *See Adray v. Adry-Mart*, 76 F.3d at 988 ("An instruction that willful infringement is a prerequisite to an award of defendant's profits may be an error in some circumstances ([such] as when plaintiff seeks defendant's profits as a measure of [plaintiff's] own damage [citation omitted])")."). *See also Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558-59 (9th Cir. 1992) ("Reebok's 'rights' under the Lanham Act may include… the right under 15 U.S.C. § 1117 to recover defendant's profits and damages for that dilution."); *Gracie v. Gracie*, 217 F.3d 1060, 1067-1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did not include a "clear and convincing" standard).

## Samsung's Objection to Apple's Proposed Instruction

Apple's proposed instructions fails to instruct that it has the burden of proving by clear and convincing evidence that Samsung acted willfully in order to recover defendant's profits for trade dress infringement. The Comment to ABA Model 3.6.6 states that some courts require "that infringement be 'willful' for an award of profits" and identifies the Ninth Circuit as such a jurisdiction. *See ABA Model Jury Instructions, Copyright, Trademark and Trademark*, at 260 (2008). This is consistent with Ninth Circuit authority. *See Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996) (plaintiff could recover infringer's profits "only if the infringement was willful."); *M2 Software Inc. v. Viacom Inc.*, 223 Fed. Appx. 653, 655, 2007 WL 649733 (9th Cir. 2007) ("M2 Software is not entitled to an accounting of Viacom's profits, because it did not introduce evidence from which a reasonable fact finder could conclude that Viacom willfully infringed M2 Software's trademark."); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (finding that a recovery of profits requires a finding of willful infringement); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F. 2d 1400, 1407 (9th Cir. 1993) (denying accounting of profits because "the present case simply does not involve willful infringement"). Moreover, Apple's own damages expert admits that his calculations of defendants' profits are designed to avoid Samsung's "unjust enrichment," not as a proxy for Apple's actual damages. *See* Dkt. No. 991-19b, Ex. 14. Additionally, Apple generally refers to "Samsung" without distinguishing between the three, separate Samsung defendants. Apple also deletes from the Ninth Circuit Model's first sentence the standard of proof that Apple must prove infringer's profits "by a preponderance of the evidence." The Court should utilize the clarity of the Ninth Circuit Model Instructions . Further, Apple has deleted from the Ninth Circuit Model No. 15.26, the phrase, "and the portions of the profit attributable to factors other than use of the infringed trademark." Finally, Apple fails to instruct – as correctly stated in Samsung's proposal – that before Apple may recover monetary damages for its dilution claim it must prove by a preponderance of the evidence that the infringement in fact injured or harmed Apple's trade dress. *See* 4 *McCarthy* § 24:132, at 24-410 ("monetary recovery for dilution requires some proof that the famous mark was in fact injured or harmed by the defendant's conduct").

**Samsung's Proposed Instruction**

Apple also seeks Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's profits from sales alleged to infringe Apple's trade dress on which you do not award Apple its alleged lost profits.  To recover Samsung Electronics Company's, Samsung Electronics America's and/or Samsung Telecommunications America's profits attributable to infringement, Apple has the burden of proving by clear and convincing evidence that the Samsung defendant found to infringe the trade dress acted willfully or in bad faith when it infringed Apple's trade dress.

Willful infringement means a deliberate intent to deceive consumers.

If you find that the infringing Samsung defendant did not intend to deceive consumers, you may not award that defendant's profits to Apple.

**Source**

*Adray v. Adry–Mart, Inc*., 76 F.3d 984, 988 (9th Cir. 1995); *Lindy Pen Co., Inc. v. Bic Pen Co.,* 982 F. 2d at 1407 (9th Cir. 1993) ("Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *CollegeNET, Inc. v. XAP Corp*., 483 F.2d 1058, 1066 (D. Oregon 2007) ("A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence.  *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229 (1st Cir.2002). *See also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir.1995); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F.Supp.2d 332, 341 & n. 8 (D.N.J.2001)").

**Apple's Objection to Samsung's Instruction**

Samsung's instruction only references infringement and not dilution.  This is inappropriate and confusing because the remedy of an accounting of defendant's profits is available equally for both trade dress infringement and dilution claims.  15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USC 1125(a) or (d)], or a willful violation under section 43(c) [15 USC 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USC §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."); *see also Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558-59 (9th Cir. 1992) ("Reebok's 'rights' under the Lanham Act may include… the right under 15 U.S.C. § 1117 to recover defendant's profits and damages for that dilution."). While infringement and dilution may have different threshold issues, those issues are adequately addressed in other jury instructions.  Second, this instruction does not actually address the element of an accounting, but instead discusses and repeats several alleged prerequisites to recovering profits, which are already stated in the other instructions.  Further, the instruction seeks improperly to emphasize the "willful infringement" element by repeating it twice.  Finally, as described in detail in Apple's objection to Samsung's proposed instruction No. 61.1, the burden of proof for willfulness is preponderance of the evidence, not clear and convincing evidence.  This is reflected in both the ABA Model Instructions and in Ninth Circuit law. *See Gracie v. Gracie*, 217 F.3d 1060, 1068 -1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did not include a "clear and convincing" standard).

## PROPOSED FINAL JURY INSTRUCTION NO. 60.1
### DAMAGES—TRADE DRESS INFRINGEMENT—APPORTIONMENT OF DEFENDANT'S PROFITS

### Samsung's Proposed Instruction

Apple is only entitled to profits earned by an infringing defendant that are attributable to the infringement, if any, which Apple must prove by a preponderance of the evidence.  You may not include in any award of profits any amount that you took into account in determining damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of the infringing defendant's receipts from using the trade dress in the sale of an infringing product.  Apple has the burden of proving the infringing defendant's gross revenue by a preponderance of the evidence and with a reasonable certainty.

Expenses are all costs that the infringing defendant incurred in the production, distribution, or sale of the infringing products.  The infringing defendant has the burden of proving the expenses.

You must also deduct from the profit award, if any, the portion of the profit attributable to factors other than the infringing defendant's use of the trade dress.  The infringing defendant has the burden of proving profit attributable to factors other than the trade dress by a preponderance of the evidence.

### Source

Ninth Circuit Model Instructions No. 15.26 (modified); *Rolex Watch, U.S.A., Inc., v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999) (plaintiff carries burden to show with "reasonable certainty" the defendant's gross sales from the infringing activity); *Lindy Pen Co.,* 982 F.2d at 1405-1408 (plaintiff has the burden of proof as to damages).

### Apple's Objection to Samsung's Instruction

The parties' instructions on defendant's profits differ in a couple of ways.  First, Samsung states that Apple has the burden of proving gross revenue by the preponderance of the evidence "and with reasonable certainty."  The clause "and with reasonable certainty" is not in the model instruction, is inaccurate when devoted to this specific element, and need not be added to the model language.  Second, as with Samsung's other instructions, Samsung's proposed instruction only refers to infringement and not dilution.  This is unnecessarily duplicative because remedies are the same for both trade dress infringement and dilution claims.  *See* 15 U.S.C. § 1117(a).  Further, Apple correctly states that it bears the burden of proving gross revenues, which are properly defined, and is entitled to a presumption that these revenues are attributable to the trade dress.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) ("Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity") *citing Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942).  Samsung bears the burden of rebutting this presumption and must prove its expenses.  *Id.* ("[I]f it can be shown that the infringement had *no relation* to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher.") (emphasis added).

**PROPOSED FINAL JURY INSTRUCTION NO. 61**
**TRADE DRESS DAMAGES – REASONABLE ROYALTY**

**Apple's Proposed Instruction**

To the extent you find that Apple is not entitled to Samsung's profit or Apple's actual damage from a Samsung sale that either willfully diluted an Apple trade dress or that infringed an Apple trade dress, you should award Apple a reasonable royalty for that sale.

A royalty is a payment made to the trade dress owner by a non-owner in exchange for rights to use the trade dress. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the trade dress owner and a company seeking the right to use the trade dress that took place just before infringement or dilution began.

In determining a reasonable royalty in this case, assume that both parties to the negotiation understood the Apple trade dresses to be valid. In addition, although the relevant date for the hypothetical negotiation is just before infringement or dilution began, you may consider profits made by Samsung from sales of infringing or diluting products after that time, and any commercial success attributable to an Apple trade dress after that time.

**Source**

Adapted from final jury instructions in *Adidas America v. Payless Shoesource, Inc.*, Civil Case No. 01-1655-KT (D. Or. May 1, 2008).

**Authorities**

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (acknowledging reasonable royalty as a remedy for trademark infringement); McCarthy on Trademarks and Unfair Competition, § 30:85 ("It has been argued that an award of a reasonable royalty as compensation for past acts of infringement is a more workable measure of damages than an accounting of profits . . . All of these ambiguities require that, in fashioning relief based on royalty payments, a court take special care to ensure that the royalty payment has not undercompensated the victim."); *Shakey's USA, Inc. v. Tutto's Pizza Corp.*, 2009 U.S. Dist. LEXIS 90472, at *12-13 (E.D. Cal. Sept. 30, 2009) (finding reasonable royalty based on a franchising agreement between the parties is an "appropriate" form of damages where they were otherwise difficult to calculate); *see also Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (acknowledging reasonable royalty as a remedy for trademark infringement); *McCarthy on Trademarks and Unfair Competition*, § 30:85 ("It has been argued that an award of a reasonable royalty as compensation for past acts of infringement is a more workable measure of damages than an accounting of profits . . . All of these ambiguities require that, in fashioning relief based on royalty payments, a court take special care to ensure that the royalty payment has not undercompensated the victim."); *Sands, Taylor & Wood Co. v Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) *(Sands I), remanded and affirmed,* 34 F.3d 1340 (7th Cir. 1994) *(Sands II)* (awarding RR where no evidence of prior licensing relationship between parties; "A reasonable royalty, perhaps related in some way to the fee STW was paid by Pet, would more accurately reflect both the extent of Quaker's unjust enrichment and the interest of STW that has been infringed.").

**Samsung's Objection to Apple's Proposed Instruction**

Apple is not entitled to a reasonable royalty instruction because it failed to disclose this theory in response to written discovery, even though specifically asked to do so, and there is almost no legal support for such a theory in the context of a pure trade dress claim. (Declaration of

1   Thomas R. Watson in Support of Samsung's Jury Instructions, Dkt. No. 1233, Exs. A – C; Dkt.
    No. 1342 (contains unredacted Ex. 3).)  The authority cited by Apple, *Playboy Enterprises, Inc. v.*
2   *Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982), discusses trademark
    infringement claims; it does not involve trade dress claims.  Moreover, *Baccarat Clothing* does
3   not stand for the proposition that a reasonable royalty is an appropriate remedy for even a
    trademark infringement claim.   The court reversed a trial court's award of a royalty as an
4   "ineffective" remedy and remanded the case for an accounting of profits.  Even if a reasonable
    royalty were an appropriate remedy, however, Apple's instruction is incorrect.  A reasonable
5   royalty award in a trademark infringement action is inappropriate unless the plaintiff and
    infringing defendant had or contemplated a license for the specific trade dress at issue.  *See A&H*
6   *Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3rd Cir. 1999) ("Even
    when the courts have awarded a royalty for past trademark infringement, it was most often for
7   continued use of a product beyond authorization, and damages were measured by the license the
    parties had or contemplated."); *Buffalo Wild Sings, Inc. v. Buffalo Wings & Rings*, 2011 WL
8   4537970, *3-5 (D. Minn. Sept. 29, 2011) ("Courts consistently conclude that, where no prior
    licensing agreement existed between the parties in a trademark infringement suit, a royalty theory
9   of recovery is inappropriately speculative."); *Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL
    2366439, *14-15 (C.D. Cal. July 28, 2009) (denying request for reasonably royalty award
10  because "there was no prior licensing relationship" between "the plaintiff and defendant").
    Apple's reliance on *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1350 (7th Cir.
11  1994), is misplaced.  It has widely been viewed as an "outlier," *Buffalo Wild Wings, Inc. v.*
    *Buffalo Wings & Rin*gs. 2011 WL 4537970, *4 (D. Minn. Sept. 29, 2011).   In any event,
12  although in *Sands* the parties did not have a prior licensing relationship, the plaintiff had
    previously licensed the same trade mark at issue, something Apple asserts it has not done.  *Sands*,
13  34 F.3d at 1345.  *See also Buffalo Wild Wings, Inc.*, 2011 WL 4537970, *4 (noting that in *Sands*
    "the rate was based on the licensing of the specific trademark or trade dress at issue").
14  Additionally, Apple fails to provide any guidance, such as the *Georgia-Pacific* factors, on how to
    determine a reasonable royalty.  Although Samsung does not believe a reasonable royalty
15  instruction is appropriate, if the Court decides to give one, it should use Samsung's proposal,
    which includes the correct standard and provides appropriate guidance on how the jury should
16  determine a reasonable royalty award.  Finally, Apple generally refers to "Samsung" without
    distinguishing between the three, separate Samsung defendants.

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**[17]

Apple is alternatively seeking actual damages in the form of a reasonable royalty.  To the extent you decide that Apple is not entitled to lost profits or to Samsung Electronics Company's, Samsung Electronics America's, and/or Samsung Telecommunications America's profits from an allegedly infringing sale, you may award Apple a reasonable royalty for that sale.

A royalty is a payment made to the owner of a trade dress by a non-owner in exchange for rights to use the trade dress.  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the owner of the trade dress and the infringer taking place prior to the time when the infringing activity first began.  You may only impose a reasonable royalty for trade dress infringement, however, if you first find to a reasonable certainty that before the filing of this lawsuit Apple and the infringing defendant had or contemplated a license for the specific trade dress for which Apple claims damages.

If you find that Apple has demonstrated that a pre-lawsuit licensing arrangement existed, you should assume for purposes of the hypothetical negotiation that both parties understood the trade dress to be valid and infringed.  You should take into account what Apple's and the infringing defendant's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations.  Your role is to determine what Apple and the infringing defendant would have agreed upon if they had negotiated in this manner, not just what either Apple or the infringing defendant would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence:

> Royalties that others paid to Apple for the same trade dress;

> Royalties that the infringing defendant paid to others for comparable trade dress;

> Whether Apple had a policy of licensing or not licensing the trade dress;

> Whether Apple and the infringing defendant are competitors;

> Whether use of the trade dress helps to make sales of other products or services;

> Whether the product made using the trade dress is commercially successful, as well as its profitability;

> The advantages of using the trade dress over products not covered by the trade dress;

> The extent of the infringing defendant's use of the trade dress and the value of that use to the defendant;

> Any royalty amounts that are customary for similar or comparable trade dress;

---

[17]  As noted in the Joint Pre-Trial Order, Samsung does not believe that Apple is entitled to present a reasonable royalty theory for its trade dress infringement and dilution claims because: (a) it failed to disclose such theory in response to written discovery, even though specifically asked to do so; and (b) there is almost no legal support for such a theory in the context of a pure trade dress claim.

1    The portion of the profit on sales that is due to the trade dress, as opposed to other factors, such as features not covered by the trade dress or features, or improvements developed by
2    defendant;

3    Expert opinions regarding what would be a reasonable royalty.

4    **Source**

5    *A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3rd Cir. 1999); *Buffalo Wild Wings Sings, Inc. v. Buffalo Wings & Rings*, No. 09-1426 (JRI/SER), 2011 WL
6    4537970, at *3-5 (D. Minn. Sept. 29, 2011); *Tokidoki, LLC v. Fortune Dynamic, Inc.*, No. CV07-1923 DSF, 2009 WL 2366439, at *14-15 (C.D. Cal., July 28, 2009).

7

8    **<u>Apple's Objection to Samsung's Instruction</u>**

9    The parties' proposed instructions on reasonable royalty damages in trade dress cases differ in three ways: (1) Samsung's proposed instruction incorrectly states that the parties must have
10   contemplated a license for the specific trade dress to recover reasonable royalty damages, (2) Samsung's instruction improperly includes the *Georgia-Pacific* factors, which have not been
11   adopted in any trade dress case; and (3) it fails to mention that reasonable royalty damages may be awarded for trade dress dilution, and not just trade dress infringement.  *First*, there is no
12   clearly delineated rule that the parties in a lawsuit must have had or contemplated a license for the specific trade dress at issue for the plaintiff to recover a reasonable royalty.  While courts may
13   often use prior licenses as evidence in favor of awarding or calculating a reasonable royalty, they do not state that such a license is required for reasonable royalty damages.  *See, e.g., Shakey's*
14   *USA, Inc. v. Tutto's Pizza Corp.*, 2009 U.S. Dist. LEXIS 90472, at *12-13 (E.D. Cal. Sept. 30, 2009) (finding reasonable royalty based on a franchising agreement between the parties is an
15   "appropriate" form of damages where they were otherwise difficult to calculate); *see also Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982)
16   (acknowledging reasonable royalty as a remedy for trademark infringement); *McCarthy on Trademarks and Unfair Competition*, § 30:85 ("It has been argued that an award of a reasonable
17   royalty as compensation for past acts of infringement is a more workable measure of damages than an accounting of profits . . . All of these ambiguities require that, in fashioning relief based
18   on royalty payments, a court take special care to ensure that the royalty payment has not undercompensated the victim.").  To the contrary, courts may award a reasonable royalty where
19   the parties have never had or contemplated a license between the two of them.  *See Sands, Taylor & Wood Co. v Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) *(Sands I), remanded*
20   *and affirmed*, 34 F.3d 1340 (7th Cir. 1994) *(Sands II)* (awarding a reasonable royalty without any evidence of a prior licensing relationship between the plaintiff and the defendant).  Second, there
21   is no authority stating that the *Georgia-Pacific* factors or the *Georgia Pacific* framework, which are used to calculate a reasonable royalty in the patent context, are applicable in the trade dress
22   context.  Apple's instruction correctly reflects the law.  Samsung's instruction wrongly adds numerous elements or consideration not authorized by prior cases.  *Third*, Samsung's instruction
23   focuses only on trade dress infringement, and fails to instruct the jury that it may award reasonable royalty damages for trade dress dilution.  Apple's proposed instruction does not suffer
24   from this defect.

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 61.1**
**TRADE DRESS DILUTION DAMAGES—**
**WILLFULNESS REQUIRED FOR DILUTION DAMAGES**

3
4

<u>**Samsung's Proposed Instruction**</u>

5

I have already instructed you about the meaning of, and when and how to calculate actual damages and infringer's profits with respect to Apple's trade dress infringement claim.  Those same standards apply to Apple's trade dress dilution claim with the following differences.

6
7

In order to recover monetary damages, either actual damages or infringer's profits, for its dilution claim, Apple must prove by a preponderance of the evidence that the trade dress was in fact injured or harmed by the alleged dilution.  Additionally, Apple must prove by clear and convincing evidence that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America willfully intended to cause dilution of the trade dresses. In other words, Apple must show that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America intended to trade on the recognition of Apple's trade dress or intended to harm Apple's reputation.  If you do not find that Apple's trade dress was in fact injured or harmed and that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America intended to trade on the recognition of Apple's trade dress or intended to harm Apple's reputation, you may not award Apple any damages for trade dress dilution.

8
9
10
11
12

13

**Source**

14

15 U.S.C. § 1117(a) (governs the award of monetary remedies in Lanham Act cases and provides for an award of defendant's profits, any damages sustained by the plaintiff, and the costs of the action); 4 *McCarthy* § 24:132 at 24-410 ("More than a mere likelihood of impairment or harm is needed to recover any damages or profits. Some proof of actual impairment or harm to the famous mark is required. In traditional likelihood of confusion law, courts require that more than a mere likelihood of confusion is required for damages: proof is usually needed that some consumers were actually confused or deceived. Similarly, in the author's view, monetary recovery for dilution requires some proof that the famous mark was in fact injured or harmed by the defendant's conduct."); *CollegeNET, Inc. v. XAP Corp.*, 483 F.2d 1058, 1066 (D. Oregon 2007) ("A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence.  *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229 (1st Cir.2002).  See *also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir.1995); *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F.Supp.2d 332, 341 & n. 8 (D.N.J.2001)").

15
16
17
18
19
20
21

22

<u>**Apple's Objection to Samsung's Instruction**</u>

23

Samsung's proposed instruction is inaccurate and confusing in numerous ways.  First, it includes the inaccurate burden of proof for willfulness.  The Ninth Circuit has explicitly affirmed a jury instruction on willfulness where there was no "clear and convincing" standard.  *Gracie v. Gracie*, 217 F.3d 1060, 1068 -1069 (9th Cir. 2000) (analyzing and approving a jury instruction that did not include a "clear and convincing" standard).  The proper standard for willfulness is preponderance of the evidence.  *See B & H Mfg. Co., Inc. v. Bright*, No. CV01-6619AWISMS, 2005 WL 1342815, at *9 (E.D. Cal., May 10, 2005) ("To prevail on its dilution claim, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence: . . . Defendant willfully intended to trade on the owner's reputation or to cause dilution of the famous mark . . .").  In fact, at least one court has rejected the case cited by Samsung in support of the "clear and convincing standard," *CollegeNET, Inc. v. XAP Corp.*, 483 F.2d 1058,

24
25
26
27
28

1066 (D. Oregon 2007), as unpersuasive, while instead adhering to the Ninth Circuit's holding in *Gracie v. Gracie*. *See Adidas America, Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *12 -13 (D. Or. Sept. 12, 2008) (holding that, with respect to willful trademark infringement jury instruction, "we do not believe that [cases cited by party challenging instruction] provide convincing support for a requirement of a clear and convincing standard"). Apple's proposed instruction provides the accurate standard for willfulness, which is preponderance of the evidence.  Next, Apple's proposed instruction No. 58 provides an introduction to trade dress damages for violation of trade dress rights, including the different legal standards giving rise to actual damages based on infringement versus dilution.  Apple's instruction is clear, succinct, and accurately summarizes controlling law.  Samsung's proposed instructions unnecessarily presents two separate and therefore confusing instructions on damages based on trade dress infringement and dilution, even though Samsung acknowledges that the "same standards apply" when calculating damages based on those violations.  In addition, Samsung's proposed instruction repeated language found elsewhere in instructions directed specifically to the meaning of willful dilution (*see* Apple's proposed instruction number 58), and then repeats those statements three times in the second paragraph.  Such repetition is unnecessary and prejudicial to Apple.

1

2

## PROPOSED FINAL JURY INSTRUCTION NO. 61.2
## MONETARY REMEDIES—TRADE DRESS DILUTION—
## ACTUAL NOTICE REQUIREMENT

3

4

### Samsung's Proposed Instruction

5

6

In order for Apple to recover damages for dilution of the registered iPhone trade dress, Apple has the burden of proving by a preponderance of the evidence that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had either statutory or actual notice that Apple's iPhone trade dress was registered.

7

8

Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had statutory notice if:

9

Apple displayed the particular alleged trade dress with the words "Registered in U.S. Patent and Trademark Office"; or

10

11

Apple displayed the particular alleged trade dress the words "Reg. U.S. Pat. & Tm. Off."; or

12

Apple displayed the particular alleged trade dress with the letter R enclosed within a circle, thus ®.

13

14

In order for Apple to recover damages for dilution or infringement of its unregistered trade dress, Apple has the burden of proving by a preponderance of the evidence that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had actual notice of Apple's unregistered trade dress.

15

16

### Source

17

18

Model Instructions No. 15.24 (modified); *Coach Inc. v. Asia Pac. Trading Co.*, 676 F. Supp. 2d 914, 924 (C.D. Cal. 2009) (where plaintiff sues under both 15 U.S.C. §§ 1114 and 1125(a), "the plain language of § 1117(a) and § 1111 indicates that a plaintiff must meet § 1111's 'actual notice requirement to recover profits or damages").

19

20

### Apple's Objection to Samsung's Instruction

21

22

23

24

25

26

27

28

Samsung's proposed instruction misstates the law in two ways: (1) it incorrectly imposes a notice requirement for unregistered trade dress, and (2) it incorrectly imposes a notice requirement for Apple's dilution claim, which is not required by the plain language of the statute. In contrast, Apple's proposed instruction No. 58 includes an accurate statement of the date on which damages begin to accrue.  First, contrary to Samsung's proposed instruction, the statutory requirement for actual notice applies only to infringement of registered trade dress rights. 15 U.S.C. 1111 (2006) ("in any suit for infringement under this chapter by such a registrant. . . no profits and no damages shall be recovered . . . unless the defendant had actual notice of the registration").  By its own terms, the notice statute does not apply to Apple's unregistered trade dress claims.  3 McCarthy on Trademarks & Unfair Competition § 19:144 (4th ed.) ("because the [§ 1111] requirement of notice only applies to registered marks, it is, of course, not a limitation on recovery of damages under a [§ 1125(a)] count for infringement of an unregistered mark); *Dwyer Instruments, Inc. v. Sensocon, Inc.*, No. 3:09-CV-10-TLS, 2012 U.S. Dist. LEXIS 78491, at *29 (N.D. Ind. June 5, 2012) ("This Court agrees that the notice language of § 1111 only applies to registered marks and to claims for infringement of such registered marks.").  Thus, Samsung's instruction requiring actual notice of unregistered trade dress is an inaccurate

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

statement of the law.  Samsung's reliance on *Coach Inc. v. Asia Pac. Trading Co.*, 676 F. Supp. 2d 914, 924 (C.D. Cal. 2009) is misplaced.  In that case, the plaintiff brought claims under both § 1114(1) (registered mark) and § 1125(a) (unregistered mark) for the <u>same</u> "CC Design" mark, which the plaintiff began using in 2001 but did not register until 2002.  *Id.* at 917.  The court applied the notice requirement to both claims to prevent the plaintiff from making an end-run around the notice statute on its § 1114(1) claim.  *Id.* at 925.  Here, Apple is only bringing claims under § 1125(a) on Apple's unregistered trade dress.  It brings no infringement claims for Apple's registered trade dress.  Second, Apple asserts its registered trade dress in a claim for <u>dilution</u>, not for infringement. The notice statute is clear that it exclusively applies to claims of infringement.  15 U.S.C. § 1111 states that, " . . . in any suit for <u>infringement</u> under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration." (Emphasis added.)  As such, the notice requirement does not apply to dilution claims.  Damages on this claim simply start from the date the violation first occurred.  No registered trade dress is being asserted for claims of infringement.  Thus, this notice provision has no purpose in the present case.

R̲evised D̲isputed J̲oint P̲roposed J̲ury I̲nstructions
C̲ase N̲o. 11-cv-01846-LHK (PSG)
pa-1546385                                                                                                              249

**PROPOSED FINAL JURY INSTRUCTION NO. 61.3
MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE**

**Apple's Proposed Instruction**

You should award any remedy that a party has proven it is entitled to with respect to each sale of an accused product, except that you should not award a party twice for the same sale of any smartphone or tablet.  This means that if you award lost profits for the sale of a certain number of accused phones or tablets, you may not also award infringer's profits or reasonable royalties for those same sales.  If you award infringer's profits for certain sales, you may not also award reasonable royalties for those same sales.

You do not have to use the same theory to calculate damages for every sale, however.  If you award one form of remedy with respect to some but not all of a party's infringing or diluting sales, you should award a different remedy with respect to the remaining sales that infringe or dilute.

For any sale where you measure damages by a reasonable royalty, you should include all relevant royalty amounts.

**Authorities:**

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291-1292 (Fed. Cir. 2002) ("[W]hen both a design patent and a utility patent have been infringed [the plaintiff] … is entitled to damages for each infringement, but once it receives profits under § 289 for each sale, [the plaintiff] is not entitled to a further recovery from the same sale") (awarding infringer's profits instead of a reasonable royalty because the infringer's profits amount was greater than the reasonable royalty amount); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006) ("Generally, the double recovery of damages is impermissible," holding that a plaintiff cannot recover damages from a defendant for patent infringement and trademark infringement if the damages were calculated from the sale of the same product by the same defendant); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("[R]ecovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022, 110 S. Ct. 725, 107 L. Ed. 2d 744 (1990) ("the award may be split between lost profits as actual damages to the extent that they are proven and a reasonable royalty for the remainder."); *Minco Inc. v. Combustion Eng'g*, 95 F.3d 1109, 1119 (Fed. Cir. 1996) ("The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit calculation.").

**Samsung's Objection to Apple's Instruction**

Apple's proposed instruction is materially incorrect and otherwise inappropriate.  Apple is not entitled to the "highest remedy" with respect to each sale.  None of Apple's cited authority supports including language that unduly suggests that Apple is "entitled" to the "highest remedy;" as such, this instruction is misleading and would be reversible error if adopted.  *See Yan Fang Du v. Allstate Ins. Co.*, 681 F.3d 1118, 1122 (9th Cir. 2012) ("Where there is legal error in instructing the jury in a civil case, reversal is required unless the error is more probably than not harmless.").  In addition to being incorrect, this language is prejudicial, and improper for that reason also.  1 Fed. Jury Prac. & Instr. § 7:2 (6th ed.); *see also United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (the district court was not required to give [defendant's] inaccurate, redundant and

1   combative instructions); United States v. Matias, 836 F.2d 744 (2d Cir. 1988) (court has duty to
give balanced instructions).  Apple's proposed instruction is further misleading because—in an

2   instruction purportedly intended to avoid double counting—Apple's proposal instructs the jury to
"award any remedy that a party is entitled to with respect to each sale of an accused product."

3   Also, the statement "If you award infringer's profits for certain sales, you may not also award
reasonable royalties for those same sales" is misleading by its omission of "lost profits."  Finally,

4   the last sentence is confusing and misleading, leaving the jury to guess as to the meaning of "all
relevant royalty amounts."  Samsung's proposed instruction is clear and consistent with the law.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

In calculating damages in this case, you may only award damages once with respect to each sale of an accused product, even if you find that the product infringed more than one type of intellectual property.  For example, if you find that an accused product infringes a utility patent and you decide to award the patent holder lost profits resulting from the sale of that infringing product, you may not award lost profits on that sale again because you find that the product also infringes another patent or diluted trade dress.  You may only award damages once with respect to each sale of an accused product, even if you find that the product infringes or dilutes multiple items of intellectual property.

**Source**

*Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is flawed for two reasons.  First, it is not true under either Apple's or Samsung's damages theory that the jury "may only award damages once with respect to each sale of an accused product."  Both parties are pursuing reasonable royalty remedies for at least some of the accused products.  Some of these royalties are calculated on a patent-specific basis (*e.g.*, for infringement of Apple's '381, '915, or '163 patent).  Some are calculated for a class of patents (*e.g.*, all Apple design patents or all Samsung FRAND patents).  Where infringement of more than one such patent or class of patents is shown, the jury *should* make more than one award of reasonable royalties for any infringing unit sold.  Second, Samsung's use of "may only award" suggests that entitlement to compensation is discretionary at the jury's option.  This is inconsistent with both 35 U.S.C. § 284 and the N.D. Cal. Model instruction that requires a least one remedy for each infringing unit.

1

**ANTITRUST JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED FINAL JURY INSTRUCTION NO. 65
## MONOPOLIZATION—RELEVANT MARKET

**Apple's Proposed Instruction**

To prove a monopolization claim, one of the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust market. An antitrust market is defined both by the relevant technologies that compete with each other, and by the geographic area in which they compete.

A relevant technology market includes all those technologies that are reasonable substitutes for each other from the user's point of view; that is, the technologies that compete with each other. These technologies are not physical products themselves, but rather are intellectual property rights and close substitutes – including ideas or techniques not covered by such property rights – that are used to produce products. A relevant technology market includes the technologies that users believe are reasonably interchangeable to achieve certain functionality, and need not be identical or precisely interchangeable as long as they are reasonable substitutes. This is a practical test, and you may consider the actual behavior of users or potential users and the marketing efforts of licensors in making this determination.

The relevant geographic market is the area in which the Samsung technologies face competition from other technologies to which customers can reasonably turn. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

In this case, Apple claims that the relevant geographic market is worldwide. Samsung does not propose any geographic market, but asserts that Apple has not shown a worldwide market.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

**Samsung's Objection to Apple's Proposed Instruction**

Apple's definition suggests to the jury that the relevant market is a technology market. This presumes Apple's contention that the relevant market is a technology market. Samsung's definitions are consistent with Ninth Circuit precedent, which requires that Apple prove the existence of a product market. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1945 (9th Cir. 2008).

**Samsung's Proposed Instruction**

Apple must prove that it is more likely true than not true that Samsung had monopoly power in one or more relevant markets.  Defining the relevant market is essential to determining whether Samsung had monopoly power because whether a company has monopoly power depends on the contours of the market.

There are two aspects you must consider in determining whether Apple has met its burden of proving the relevant market or markets.  The first is the existence of a relevant product market. The second is the existence of a relevant geographic market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors.  If you find that such switching would occur, then you may conclude that the products are in the same product market.

The relevant geographic market is the area in which Samsung faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

If, after considering all the evidence, you find that Apple has proven both a relevant product market and a relevant geographic market, then you must find that Apple has met the relevant market requirement and you must consider the remaining elements of its unlawful monopolization claims.

If you find that Apple has failed to prove either a relevant product market or a relevant geographic market, then you must find for Samsung and against Apple on Apple's unlawful monopolization claim.

**Source**

ABA Model Jury Instructions in Civ. Antitrust Cases, C-6, C-7, & C-13; United States v. Grinnell Corp., 384 U.S. 563 (1966); United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956); Telecor Communs., Inc. v. Southwestern Bell Tel. Co., 305 F.3d 1124, 1131 (10th Cir. 2002); Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1026-27 (10th Cir. 2002); ReMax Int'l, Inc. v. Realty One, Inc., 173 F.2d 995 (6th Cir. 1999); Morgenstern v. Wilson, 29 F.3d 1291 (8th Cir. 1994); ); Battle v. Liberty Nat'l Life Ins. Co., 493 F.2d 39, 45 (5th Cir. 1974).

1

**Apple's Objection to Samsung's Instruction**

2

Samsung's proposed instruction confusingly refers to "product" markets rather than "technology"
markets.  As previously determined by the Court, Apple has properly alleged technology markets

3

as the relevant antitrust "product" markets.  *Apple Inc. v. Samsung Electronics Co.*, No. 11-cv-
1846-LHK, Order at 7 (N.D. Cal. May 14, 2012) ("technology markets may serve as "relevant

4

markets" for Sherman Act claims in the context of essential patents.").  Because the term
"product" is sometimes used, outside of the antitrust context, to refer to physical goods, such

5

phrasing has a significant potential to confuse the jury and implies that Apple is attempting to
prove a market for handsets, rather than a market for technologies.  Apple's corresponding

6

instruction is clearer and is an accurate statement of the law and Apple's claim.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 66.1
## MONOPOLIZATION—MONOPOLY POWER GENERALLY

2

3

**Samsung's Proposed Instruction**

4

Monopoly power is the power to control prices and exclude competition in a relevant antitrust
market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above
the competitive level for a significant period of time.  To prove a monopolization claim, one of
the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust
market.  However, monopoly power, in and of itself, is not unlawful.  A patent owner who does
no more than take advantage of the right to exclude created by its patent does not violate the
antitrust laws.

5

6

7

I will now provide further instructions about how you may determining whether the Apple has
met its burden of proving Samsung's alleged monopoly power in a relevant market.

8

9

**Source**

10

ABA Model Antitrust Jury Instructions, at C-4; *United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377, 389 (1956); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585
(1987).

11

12

13

**Apple's Objection to Samsung's Instruction**

14

Samsung's proposed instruction is unnecessary, and Apple believes it should be deleted. To the
extent it is included, Apple objects to including the statement that "[a] patent owner who does no
more than take advantage of the right to exclude created by its patent does not violate the
antitrust laws," which is not in the corresponding ABA model instruction.  *See* ABA Model
Antitrust Jury Instructions, at C-4.  This statement relates to whether Samsung is ultimately
liable, and not whether Apple has proven monopoly power. Including it could confuse the jury
and imply that enforcing a patent can never be part of the proof of monopoly power, which is
incorrect. *See*, *e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007)
(holding that standard-setting misconduct followed by improper assertion of patent rights can
violate the Sherman Act).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 68
MONOPOLIZATION—ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING**

2

3

**Apple's Proposed Instruction**

Apple alleges that Samsung willfully acquired monopoly power based on anticompetitive
behavior in connection with the UMTS standard-setting process at 3GPP.  Apple and Samsung
agree that Samsung was obligated to abide by the ETSI IPR Policy when participating in
standard-setting activities related to the UMTS standard.

4

5

6

Based on the available information, a standard-setting organization can select the best technology
(considering its cost and its performance) and can include that technology in the standard.  To the
extent the industry has invested in a standard and cannot easily transfer that investment to an
alternative standard, the process of standardization may eliminate alternative technologies.  When
a patented technology is incorporated into such a standard, adoption of the standard may
eliminate alternatives to the patented technology.

7

8

9

As to Apple's claims that Samsung failed to timely disclose IPR (including patents and patent
applications) that may cover technology being considered for inclusion in the UMTS standard,
you may find that Samsung willfully acquired or maintained monopoly power through
anticompetitive acts if:  (1) the ETSI IPR Policy created an expectation that participants would
timely disclose IPR that reasonably might cover technology being considered for adoption in the
UMTS standard; (2) Samsung knowingly failed to disclose such IPR in a timely fashion; (3)
3GPP relied on the requirement that Samsung would timely disclose such IPR when 3GPP
created the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a
standard-compliant product.

10

11

12

13

14

As to Apple's claims that during the standard-setting process Samsung concealed its true
intentions not to meet the commitment it had made to license its declared-essential IPR on fair,
reasonable, and non-discriminatory ("FRAND") terms, you may find that Samsung willfully
acquired or maintained monopoly power through anticompetitive acts if:  (1) the ETSI IPR Policy
created an expectation that participants would truthfully disclose their intentions whether or not to
license their declared-essential IPR on FRAND terms; (2) Samsung knowingly concealed its true
intentions; (3) 3GPP relied on the requirement that Samsung would truthfully disclose its
intentions whether or not to license its declared-essential IPR on FRAND terms when 3GPP
adopted the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a
standard-compliant product in a manner inconsistent with its FRAND commitments.

15

16

17

18

19

In determining whether Apple has proved that Samsung willfully acquired monopoly power, you
may consider Samsung's course of conduct as a whole and its overall effect, rather than focusing
on a particular aspect of Samsung's disclosure or licensing conduct in isolation.

20

21

22

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-
RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

23

24

**Authorities**

25

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *id.* at 313
("Misrepresentations concerning the cost of implementing a given technology may confer an
unfair advantage and bias the competitive process in favor of that technology's inclusion in the
standard."); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex.
2008); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("In
[Sherman Act cases], plaintiffs should be given the full benefit of their proof without tightly

26

27

28

1    compartmentalizing the various factual components and wiping the slate clean after scrutiny of
2    each.").

3    **Samsung's Objection to Apple's Proposed Instruction**

4
5    Apple's instruction fails to instruct the jury that they should consider ETSI members'
     understanding of the ETSI IPR Policy in order to assess what Samsung's duties to ETSI were.
     *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1012 (Fed. Cir. 2008) (holding that a "factual
6    underpinning [of a duty to disclose] is the JVT participants' understanding of the meaning of the
     JVT IPR policies"). Instead, Apple's instruction erroneous requires the jury to consider only the
7    ETSI IPR Policy in isolation. Apple's instruction also presumes that the breach of the policy is
     Samsung's assertion of its IPR against a standard-compliant product. This "breach" does not
8    correspond to the obligations set forth in Apple's instructions. There is no legal support for the
     contention that an obligation to use reasonable endeavors to timely disclose IPRs to ETSI is
9    breached by asserting that IPR against a standard-compliant product. Further, Apple's instruction
     fails to set forth its own contentions as to what obligations Samsung owed to ETSI. Apple
10   contends that "[u]nder the ETSI IPR Policy, any member that learns that it owns IPR that may be
     essential to technology under consideration for adoption into an ETSI standard must disclose that
11   IPR as soon as practicable and, in all cases, before the freeze date for that standard." (Apple
     Inc.'s Objections and Responses to Samsung's Fourth Set of Interrogatories, dated March 10,
12   2012, at 14.)  However, its instruction fails to make clear that the jury must determine that
     Samsung owed this obligation to ETSI. Instead the instruction includes an incomplete
13   paraphrasing of the ETSI IPR Policy. Apple's instructions also fail to make clear that it is
     Apple's ***contention*** that the ETSI IPR policy requires ETSI members to license declared essential
14   IPR. This issue is in dispute. Samsung contends that the ETSI IPR Policy only requires that the
     owner shall be "***prepared to grant*** irrevocable licenses on fair, reasonable and non-discriminatory
15   terms and conditions under such IPR . . . ." (D.N. 381 at 42; November 1997 ETSI IPR Policy §
     6.1 (emphasis added).)  Even though the phrase "prepared to grant" is included in the ETSI IPR
16   Policy, Apple omits it.

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple alleges that Samsung willfully acquired or maintained monopoly power in the relevant technology markets based on anticompetitive behavior at ETSI.

First, Apple contends that Samsung engaged in anticompetitive behavior by not disclosing IPR declared essential to a standard before the freeze date for that standard.  In order to prove that this conduct was anticompetitive, Apple must show that (1) ETSI members shared a clearly defined expectation that members were required to disclose IPR declared essential to a standard before the freeze date for that standard; (2) Samsung made an intentionally false promise to comply with this requirement; (3) ETSI members relied on the requirement when they adopted the standards to which that proposal applied; and (4) Samsung did not comply with the requirement.

Second, Apple contends that Samsung engaged in anticompetitive behavior by not licensing its declared-essential IPR to Apple on fair, reasonable, and non-discriminatory ("FRAND") terms.  In order to prove that this conduct was anticompetitive, Apple must show that (1) ETSI members shared a clearly defined expectation that participants were bound to license their IPR to ETSI, its members, and any entity that implements the UMTS standard; (2) Samsung made an intentionally false promise to comply with this requirement; (3) ETSI members relied on the requirement when they adopted the standards to which the declared-essential IPR applied; and (4) Samsung did not comply with the requirement.

In determining whether ETSI members shared such clearly defined expectations, you may consider, among other factors:  (1) the expectations of individual ETSI members; (2) any behavior by ETSI members with respect to disclosing or not disclosing such information; (3) oral information communicated or discussed at ETSI meetings or in ETSI minutes; (4) any written rules of ETSI made available to members; (5) customs of the industry; and (6) the purpose of ETSI.

**Source**

Adapted from ABA Model Antitrust Jury Instructions, at C-26, D-64, and the authorities cited therein; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007); *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008); November 1997 ETSI IPR Policy.


**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and Samsung's obligations at ETSI. First, the instruction presents the two bases for Apple's claim in a misleading manner because it fails to clarify that either one, standing alone, is sufficient to prove anticompetitive conduct. Apple can prevail by proving either its non-disclosure theory or its theory that Samsung concealed its licensing intentions during standardization, and Apple is entitled to an instruction that the jury may consider Samsung's course of conduct as a whole. *See, e.g., Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("In [Sherman Act cases], plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."). Second, Samsung's description of its disclosure obligations under the ETSI IPR Policy is incorrect.  Samsung ignores the obligation to disclose IPR that "might be" essential if a Samsung proposal were adopted. *See* ETSI IPR Policy Clause 4.1. Moreover, there is no requirement that Apple show that Samsung's commitment to comply with the disclosure obligation was intentionally false, only that Samsung knowingly failed to disclose IPR that was subject to the disclosure obligation.  Third, Samsung mischaracterizes the ETSI rules regarding FRAND licensing.  Apple must show that ETSI members expected FRAND commitments to be made truthfully.  The ETSI IPR Policy does not

1    require members to make FRAND commitments, only that such commitments be adhered to

2    when made.  Apple's corresponding instruction accurately reflects the law and Apple's claim.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 69**
**MONOPOLIZATION—SAMSUNG'S INTENT**

**Apple's Proposed Instruction**

In determining whether or not Samsung willfully acquired monopoly power in a relevant technology market, you may consider any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct. Specific intent to monopolize, however, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 US 585, 602 (1985); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (listing elements of a standard-setting misconduct case); *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1349-51) (9th Cir. 1987) (recognizing a limited defense of business justification in tying cases and setting out elements of such a defense).

**Samsung's Objection to Apple's Proposed Instruction**

Samsung objects to this instruction because Apple's cited authority does not support the proposition that "any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct." Further, the meaning of the instruction is unclear and may confuse the jury. Accordingly, Apple's proposed construction should be rejected, as it does nothing to clarify the intent requirement that is already set forth in Undisputed Proposed Final Instruction No. 64.