# Exhibit 15

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

# EXPERT REPORT OF ITAY SHERMAN

I.      INTRODUCTION

I was retained by Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC (hereinafter "Samsung") to provide opinions and testimony pursuant to Federal Rule of Civil Procedure 26(a)(2) about certain design patents and alleged trade dress asserted by Apple Inc. ("Apple") in this action.

II.     BACKGROUND/QUALIFICATIONS

I earned a bachelor degree with honors (B.S.) in Electrical engineering from TelAviv University in 1991, and a master degree with honors (M.S.) in Biomedical engineering from Tel Aviv University in 1995.  I have worked in the telecommunication industry for the last 20 years, and for the last 10 years I have worked on mobile handset technology and products.

Between 2004 and 2007, I was the Chief Technology Officer for Texas Instruments Mobile Connectivity group that developed key components for mobile handsets. While there, I worked closely with the Nokia, Motorola, and Sony Ericsson to define technology solutions based on their handset design constraints.

Between 2007-2010, I served as the Chief Technology Officer for modu LTD, a handset and accessories manufacture that pioneered the concept of modular handsets. The modu concept revolved around the idea of a modular phone that has a base unit that can operate as a very small form factor handset, but could also be plugged to consumer electronic devices we termed "jackets" that enhance the capabilities and external design of the handset and enable it highlight other functions, such as a wrist watch or music player.

The development of the modu concept required investigation and experimentation with the possible boundaries of handset design electrical circuitry, mechanical design, and industrial design. I led the effort for design of multiple handsets as well as additional consumer devices that

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

Japanese design patent JP D1241383 ("JP383") was issued on June 6, 2005 and discloses a design for mobile electronic device. The front view of the design patent includes an overall rectangular shape with evenly rounded corners, a flat front face, and a large rectangular display centered both horizontally and vertically on the front face of the device.



*Front View of JP D1241383*

The application for European Union design rights registration 000569157-0005 was submitted in September 2006. This reference discloses a flat front face with overall rectangular shape and evenly rounded corners, an oval earpiece hole centered at the top of the device; and an inset rectangular display.

It is also worthwhile to note that the European Union design rights registration 000569157-0005 design was embodied in the LG KE850 Prada, a mobile phone that was released in late 2006 before the iPhone was announced or the D'677 patent application was filed. The KE850 Prada has a rectangular shape with evenly rounded corners a flat and transparent front face with black background for the front face exactly as the D'677. The KE850 Prada won both an iF Design Award and a Red Dot Design Award in Fall 2006.

same functional requirement as devices that rely exclusively on the display as the sole method of UI interaction.

Many of the other devices offer alternative designs that have clear functional deficiencies compared to the functional solutions represented in the accused designs. As an example, the D624,046 design patent, identified by Apple as being a viable alternative design, shows a design that has much higher implementation complexity then the designs of the accused products. It is composed of multiple pieces were each needs to be shaped with complex patterns of diamonds. The front face diamond patterning requires leaving larger borders on the sides of the device then necessary, thus limiting the effective width of the display.

Several other devices identified by Apple do appear to have comparable functionality to the accused devices, for example, the Nokia N8 or HTC Trophy devices, which both show a flat transparent front face having black color rectangular shape with rounded corners. These devices, however, are just as similar if not more similar to the asserted design patents than the accused devices. It is difficult to understand from a design perspective how Apple could regard these devices as viable alternatives, yet at the same time take the position that the accused devices infringe Apple's design patents.

In conclusion, the proposed alternative designs disclosed by Apple do not alter my opinion as to the functionality of the asserted design patents and Apple's claimed trade dress.

**The Asserted Trade Dress Is Functional**

As discussed above, Apple articulates a list of product features that it contends make up the elements of trade dress for the iPhone, iPhone3G, iPhone 3GS, iPod touch, iPhone4, and iPad devices.

Each of these asserted elements is functional, taken together and individually, because each serves a specific purpose which is not ornamental in the device. Moreover, each of these individually functional elements are configured on the respective device in order to maximize functionality and performance.