# Exhibit 16

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK |

**CORRECTED REBUTTAL EXPERT REPORT OF SAM LUCENTE**

– 1

As a world leader in consumer electronics, Samsung's design principles, as defined, result in world-class designs that are recognized by the design profession as good design.

By 2005, Samsung surpassed Apple, Nike and HP by garnering more International Design Excellence Awards (IDEA) than any other corporation.[28] IDEA is the leading product design competition in America and one of the largest internationally. Many of these awards were in the concept design category, showing an increased focus on creativity and innovation. This is a clear indication of Samsung's effort to innovate and differentiate the company through a unique, world-class look and feel.

Samsung is clearly committed to creating a differentiated visual identity in the marketplace. In my opinion, it follows that these same design principles were reflected in the accused product designs, showing that the designs originated from a unique Samsung look and feel based on their own design approach. Based on my experience in design management, the claim that Samsung "slavishly copied" Apple's designs is inconsistent with Samsung's effort to develop its own unique design ethos and identity over the last 15 years.

Furthermore, given the evolution of Samsung's visual identity, it is clear that the alternative designs suggested by Kare (*see* Kare Report ¶¶ 45-52, Exhs. 6-13) do not align to the visual identity of Samsung. It is important to analyze the Samsung designs in the context of Samsung's design language and visual identity. Kare clearly states that one of the fundamentals of icon design is to align to "marketing or design considerations" (*Id.* ¶ 29.) The design solutions of Samsung's accused products align to the Samsung design principles outlined above; obviously a critical "design consideration" of the Samsung designers.

Other factors related to design problem solving also drove Samsung's overall design solution, especially the icon layout, icon container and icon metaphors. For example in referring to other fundamentals of icon design, Kare states that understanding the "target audience" and "competitive landscape" is important. (*Id.* ¶ *29.*) Yet, later she references various Samsung documents dated 2008 or later on competitive analysis and icon explorations suggesting that Samsung used these as a guide to create Samsung's solutions. (*Id.* ¶¶ 87-90.)  Using competitive information and understanding customers is a typical part of a good design process and a key step in understanding your target customer and the overall competitive landscape. But to simply use these as a guide for Samsung designs would completely negate all of the work Samsung did to create its own unique look and feel.

In fact, Samsung already had a design with an icon grid layout and icons contained in rectangles with rounded corners well before Apple released the first iPhone or Samsung assessed Apple's competitive design direction. Kare may have been unaware that Samsung designers had created the grid-based icon layout and rounded rectangle icon design in 2006, shown below, prior to the iPhone's release.

---

September 19, 2006
[28] http://www.businessweek.com/magazine/content/05_27/b3941406.htm

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION



3,889,685
Icon for Settings

2,935,038
(iTunes Eighth Note and CD Design Trademark)

### C. Discussion of Relevant *Sleekcraft* Factors

To shed light on the question of consumer confusion, which I understand is the relevant standard for trademark and trade dress infringement, my analysis will focus on certain of the *Sleekcraft* factors most relevant to my expertise, namely, (1) the strength of the asserted trade dress/icons; (2) the similarity in appearance of the parties' trade dress/ icons; and (3) Samsung's intention in designing the accused trade dress/ icons. I will evaluate these factors as they relate to the GUI elements of the products at issue from the perspective of an expert in graphical user interface design. Unless otherwise specified, the analysis below applies to the GUI elements of all the Samsung devices accused of trade dress and trademark infringement.[57]

#### 1. Strength of the Asserted Trademarks and Trade Dress

I understand that the strength of Apple's trademarks and trade dress is evaluated in the context of the marketplace for smart phones and tablets. When many products employ the same or similar trademarks, those marks are considered "weak," in that they do not direct consumers to a particular source.

It is my opinion as an experienced designer of user interfaces for consumer electronics products that all of Apple's asserted icons are "weak" trademarks because third-parties regularly employ similar icons in the GUI of similar products on the market today. Given this crowded field, it is my opinion that consumers would not likely mistake Samsung's icons for Apple icons.

In the expert report of Mazis (Expert Report of Michael Mazis, PhD, March 22, 2012, pages 4-5), findings support my opinion that Apple's asserted icons are "weak" and not distinctive concluding that "the median rate of all respondents identifying Apple as the source of the icons was again about 13%." This "survey was designed to determine whether the phone, messaging, photos, settings, notes, contacts, iTunes, and iTunes on-line music service icons used

---

[57] The Samsung products accused of trade dress infringement are: Galaxy S 4G; Captivate; Continuum; Droid Charge; Epic 4G; Vibrant; Fascinate; Showcase Galaxy S; Mesmerize; Galaxy Prevail; Infuse 4G; Galaxy Tab 10.1; Galaxy Tab 7.0; Galaxy Ace; Galaxy S i9000; Galaxy SII; Galaxy SII Skyrocket; Galaxy SII i9100; and Galaxy SII Epic 4G Touch. The Samsung products accused of trademark infringement include all of the above and the following: Gem; Gravity Smart; Indulge; Acclaim; Intercept; Nexus S; Nexus S 4G; Replenish; Transform; and Sidekick.

in Apple's iPhone and iPad products have acquired distinctiveness. Thus, the survey sought to determine whether smart phone and tablet computer owners associate these eight icons with one company and whether that company is Apple."

Other elements of the trade dress claimed by Apple are equally prevalent in today's marketplace for mobile phones. For example, a matrix of colorful icons is practically universal in the mobile phone and tablet categories, while a bottom dock for icons is increasingly common. Because these features are highly functional (Lucente Op. Rep. at p. 7-30) they have been widely adopted by smart phone manufacturers. Attached as **Exhibits 17-22** are images of some of the many phones and tablets employing a colorful matrix of icons and/or an icon docking station. (*See also* Lucente Op. Rep., Exhs. C & D (showing additional electronic devices with these features).)

Considering how commonplace the GUI-related aspects of Apple's trade dress are in the marketplace, it is my opinion that Apple's GUI-related trade dress is not distinctive from a design perspective.

## 2. Similarity of the Asserted Trademarks and Trade Dress

I understand the Court considers the similarity between the asserted and the accused trademarks/trade dress when evaluating whether there is a likelihood of consumer confusion. My analysis and conclusions concerning the similarity of the accused devices to Apple's design patents set forth above applies with equal force to the question of the similarity between the trademark and trade dress elements of the accused devices, and for the sake of avoiding repetition, I incorporate it here.

Because the consumer marketplace is flooded with descriptive icons that, due to the functions they perform, share some degree of similarity, it is my view that consumers have come to expect a certain degree of similarity among icons across various products and brands.

The findings of the expert report of Mantis (Expert Report of George Mantis, March 22, 2012, page 13) supports my opinion, finding that respondents shown a Samsung phone were not likely to mistakenly identify the phone as made by Apple. This LIKELIHOOD OF CONFUSION STUDY determined whether, and if so, to what extent, relevant consumers are likely to mistakenly believe that Samsung's GALAXY S 4G, INFUSE 4G, GALAXY S SHOWCASE, and GALAXY PREVAIL phones and Samsung's GALAXY TAB 10.1 and GALAXY TAB 7.0 Plus tablet computers are made by or with the approval or authorization of Apple, Inc., ("Apple") or that the maker of these products is connected to or affiliated with Apple.

In fact, to a great extent, the functionality of an icon largely dictates the visual cues consumers have already adopted from past experience as noted in my opening report. As Kare acknowledges in her report, an icon "creates a shortcut for a user in a device interface" (Kare ¶ 26.)  Thus, in order for an icon to perform its function, it must build upon the expectations of consumers. From an icon designer's point of view, it would be entirely counterproductive to deviate significantly from the norms already established for a particular type of icon.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

To illustrate this point, consider Apple's icon's for the notepad function:



**3,886,169**
**Icon for Notes**

Compare Apple's icon to the notepad icons used by Samsung and other companies:



**Samsung**        **DSM Notepad**        **Microsoft**        **NOKIA**

     As this comparison demonstrates, although icon designers have some leeway to alter the details of icon design, they generally stay within the reasonable bounds of consumer expectation so that the icon will perform its "shortcut" function efficiently. Here, Samsung and the other brands shown have done just that. They have taken the well-known and widely employed yellow notepad concept and modified it slightly. The same is true for each of the other trademarked icons asserted by Apple.

     Similarly, an icon gird layout or matrix and dock are common to smart phones across many different makes and models, and as such, consumers have come to expect and associate these features as part of the functionality of the phone, and not with any particular manufacturer. Like icons, these features are there to serve a function, and the parameters of their "look and feel" are dictated by utilitarian considerations.

     3.    **Samsung's Intent**

     I understand that in trademark law, the likelihood of consumer confusion increases if it is established that a party has intentionally tried to confuse consumers into thinking that its products are those of another company.

     In her report, Kare implies that whatever similarity exists between Apple and Samsung's icons is due to an intention by Samsung to copy Apple's designs. I disagree with Kare's conclusions, for the reasons stated above. As previously noted, to the extent there is similarity between the parties icons, in my opinion it is likely due to the fact that Apple's icons themselves build upon well-established themes and metaphors for icons that are widely employed in

consumer electronics. Likewise, a matrix of icons and an icon dock are largely functional features of the GUI that have been incorporated into most smartphones and tablets on the market today. The fact that the accused products employ these same features in no way suggests that Samsung had an intent to confuse consumers. Rather, Samsung, like many other participants in the marketplace, seeks to offer consumers the functionality they desire and have come to expect.

Signature executed on April 17, 2012

_____

Samuel Lucente