HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OBJECTIONS AND RESPONSES REGARDING VINCENT O'BRIEN, DAVID TEECE, STEPHEN GRAY, ANDRIES VAN DAM, BRYAN AGNETTA, RICHARD HOWARTH, AND SHIN NISHIBORI**<br><br>**Trial:** **August 15, 2012**<br>**Time:** **8:30 a.m.**<br>**Place:** **Courtroom 1, 5th Floor**<br>**Judge:** **Hon. Lucy H. Koh** |

1    **I.    VINCENT O'BRIEN**

2        **A.    Objections to Samsung's Direct Examination Exhibits**

3        ***SDX3956.022.***  Apple objects to the reasonable royalty damages opinion of Dr. O'Brien

4    because his royalty rate formula (set forth in SDX3956.022) incorporates usage figures calculated

5    by Samsung's survey and marketing expert, Dr. Sukumar, who is not listed by Samsung as a trial

6    witness and will not testify because he has been stricken.  (Dkt. No. 1293.)  On August 6, 2012,

7    the Court ruled that an expert cannot "testify about a survey conducted by [a non-testifying

8    expert]."  (Dkt. No. 1596 at 2.)  Application here requires that the Court exclude the reasonable

9    royalty damages opinion of O'Brien because his royalty rate formula incorporates usage figures

10   from Dr. Sukumar.  Dr. O'Brien calculates a per unit royalty rate for each of Samsung's '460,

11   '893, and '711 patents using the same three-factor formula.  The factors are: (1) **$0.99** (the price

12   of some downloadable apps, which O'Brien calls "consumer value"); (2) **30%** (the standard

13   revenue split between app developers and Apple); and (3) "**Usage**" percentage.  (Walden Decl.

14   Ex. 1, O'Brien Dep. Tr. at 66:11-14; Walden Decl. Ex.2, O'Brien Expert Report at ¶¶ 57, 70 and

15   Ex. 5 Reasonable Royalty (Trial); *see e.g.* SDX3956.022.)  Dr. O'Brien relied entirely on Dr.

16   Sukumar for the third factor.  (Walden Decl. Ex. 1, O'Brien Dep. Tr. at 66:22-24.)  Dr. Sukumar

17   calculated usage percentages based on consumer surveys of iPhone, iPad, and iPod users that he

18   designed, conducted, and analyzed.  (Walden Decl. Ex. 3, Sukumar Expert Report at 7-8.)

19   Dr. Sukumar's usage percentage is the only variable factor in Dr. O'Brien's equation and

20   accounts for the different royalty rates for the three patents.

21        Because Dr. O'Brien's damages opinion rests on the survey usage calculations of an

22   expert who will not testify at trial, it is inadmissible.  First, under Rule 703, out-of-court litigation

23   opinions of other experts are not the types of "facts or data" that an expert in the field would

24   reasonably rely on and are inadmissible.  *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d

25   398, 409 (6th Cir. 2006); *U.S. v. Grey Bear*, 883 F.2d 1382, 1392-1393 (8th Cir. 1989); *See In re*

26   *Imperial Credit Indus., Inc*., 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003).  Samsung may not

27   shield Dr. Sukumar's survey and conclusions from cross-examination concerning their validity

28   and reliability.  *Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co*., 1999 WL

12931, at *4 (4th Cir. Jan. 14, 1999); *Imperial Credit*, 252 F. Supp. 2d at 1012 n. 5.

Second, Dr. O'Brien is not competent to sponsor Dr. Sukumar's survey opinions. Dr. O'Brien did not even read Dr. Sukumar's report before using Dr. Sukumar's survey results in his formula.  (Walden Decl. Ex 1, O'Brien Dep. Tr. at 118:13-18; 192:1-25 (O'Brien used the numbers Sukumar "told [him] to use.").)  Dr. O'Brien did not design or conduct the surveys, analyze the results, or verify the validity and accuracy of the results. (*Id.* at 116:9-117:12).  He acknowledged that he and his firm lacked the ability to conduct such a survey to the exacting standards required for admission as evidence.  (*Id.* at 117:18-20.)

Dr. O'Brien conceded during his deposition, that without Dr. Sukumar's calculations, he could not calculate a reasonable royalty rate for the feature patents:

> Q. . . . If the Court would determine that – to exclude Dr. Sukumar's usage figures for the four features, would you be able to calculate a reasonable royalty damages? . . .
>
> THE WITNESS: Well, with no other source?
>
> MR. HEYISON: For usage, correct.
>
> THE WITNESS: So, basically, I mean, that's really kind of a tautology.  You take away one of the numbers in the equation and, yeah, I can't calculate it.

(*Id.* at 84:12-20.)  Dr. O'Brien also relied upon another survey opinion and calculation from Dr. Sukumar – his market valuation of an attribute improvement ("MVAI") – to validate his use of a second factor in his formula, $0.99 "consumer value," (Walden Decl. Ex. 2, O'Brien Expert Report at ¶ 58; Walden Decl. Ex 1, O'Brien Dep. Tr. 73:25-74:5), and without Dr. Sukumar's MVAI, he "would have to qualify some of [his] opinions" and he "wouldn't be able to talk about consumer surplus."  (*Id.* at 119:11-22.)  For this additional reason, Dr. O'Brien has no damages opinion and should be precluded from testifying.

***SDX3956.019.***  Apple objects to Samsung's attempt to relitigate through Dr. O'Brien's trial testimony its discovery dispute over Apple's production of royalty reports.  Samsung previously filed a motion to strike related to Apple's production of royalty reports, and

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

2

1   Judge Grewal rejected Samsung's complaints.  (Dkt. No. 1144 at 8; *see also* Dkt No. 934-3 at 7-

2   8; Dkt. No. 996-4 at 20-23.)   The sequence of Apple's production of royalty reports depicted in

3   SDX3956.019 is not relevant to damages or any other issue, and is confusing, misleading and

4   unduly prejudicial.  Dr. O'Brien's reasonable royalty calculations do not rely on any information

5   in any version of the royalty report, and he has not identified any of the licenses in the royalty

6   report as comparable under the Georgia Pacific factors.  Further, if such testimony concerning

7   pretrial matters is permitted, Apple would be required to explain the circumstances surrounding

8   its production of several versions of the royalty reports, including its clawback of privileged

9   documents (which Samsung did not challenge as improper), wasting time and creating the

10  potential for jury confusion and prejudice to Apple.  *See White v. United States*, 148 F.3d 787,

11  792 (7th Cir. 1998) (excluding evidence that would "develop into a trial within a trial").

12      **B.      Responses to Samsung's Objections to Apple's Cross Examination Exhibits**

13          ***PX2010 (Trial Transcript of Samsung's Opening Statement) and Samsung Opening***

14  ***Slide 145.***  Samsung's objection that Apple's use of material from Samsung's own opening

15  statement to cross-examine Dr. O'Brien on grounds that this material is inadmissible hearsay and

16  unduly prejudicial is without merit.  Samsung's own opening statement and slide are not hearsay,

17  and Samsung can hardly claim that material that it has already published to the jury is prejudicial.

18  Apple does not intend to enter these documents into evidence, but merely to use them for

19  purposes of cross examination.  Specifically, Apple intends to use pages 443-446 of the July 31

20  Transcript (PX2010) and Slide 145 in which Samsung described the inventions of the '460 and

21  '893 patents to the jury.  Samsung's opening statement and opening Slide 145 are not hearsay, as

22  the jury has already heard and seen them and, in any event, are admissions by a representative of

23  a party opponent under FRE 801(d)(2).  *U.S. v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984); *see also*

24  *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir.1991).  Dr. O'Brien's demonstratives

25  indicate he intends to testify as to the value of the patented features, and Apple is entitled to test

26  whether the features that Dr. O'Brien valued match up to Samsung's characterization of the

27  patented features to the jury.

28

1

## II.     DAVID TEECE

2

### A.     Objections to Samsung's Direct Examination Exhibits

3      *SDX3963.010.*  This slide purports to contain information on "Industry Offer Rates" that

4  Dr. Teece will use to justify his opinion on a reasonable royalty for the '516 and '941 Patents.

5  The rates for the *LTE* standard shown on this slide are irrelevant to the value of Samsung's

6  patents declared essential to the *UMTS* standard.  Similarly, the entry for the Qualcomm "UMTS

7  Rate" reflects licensing rates for multiple other standards.  Because this would mislead and

8  confuse the jury, it should be excluded pursuant to Rules 401 and 403 of the Federal Rules of

9  Evidence.

10          Dr. Teece has admitted that LTE and UMTS are different standards. (Walden Decl. Ex. 4,

11  D. Teece Dep. Tr. 141:7-11).  Dr. Teece, however, was unable to offer any explanation of the

12  relationship between LTE and UMTS technology and standards.  (*Id.* at 141:12-22.)  Dr. Teece

13  can provide no foundation to support the proposition that license *offers* for *entire portfolios* of

14  *LTE* patents are comparable to the reasonable royalty rate for only *two* patents (out of Samsung's

15  entire *UMTS* portfolio) that have been declared essential to the *UMTS* standard.  Similarly, the

16  figures presented on SDX3963.010 as Qualcomm's "UMTS Rate" principally involve standards

17  other than UMTS (primarily CDMA).  Indeed, the rates cited arose in the original

18  Samsung/Qualcomm license agreement signed in 1993—years before the UMTS standard was

19  even finalized. (*See* DX630.002 (Row 10)[1]; *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d

20  1292, 1317 (Fed. Cir. 2011) (damages expert cannot rely on prior license to support reasonable

21  royalty rate unless there is "a basis in fact to associate the royalty rates used in prior licenses to

22  the particular hypothetical negotiation at issue in the case.").)  Though an amendment in 2004

23  added UMTS patents to the group of patents and standards previously licensed by Qualcomm,

24  this amendment does not specify a new or separate rate for the UMTS patents.  (*See* DX630.003,

25  line 12.)  Thus SDX3963.010 misleadingly suggests a UMTS royalty rate when the cited

26  authority demonstrates that no such rate exists.

27          [1] As Apple is also objecting to the cited document (DX630), it will be lodged with the
Court, and therefore Apple is not attaching DX630 as a separate exhibit to its brief.

28

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

4

**DX630.**  Samsung did not disclose DX630 on its trial exhibit list as a summary of otherwise admissible evidence pursuant to Fed. R. Evid. 1006.  In any event, DX630 is not a proper Fed. R. Evid. 1006 summary—Samsung designated other documents as 1006 summaries, but not this.  DX630 is an exhibit to the expert report of Samsung's FRAND licensing expert, which he prepared to support the opinions in his report.  Thus, it is inadmissible hearsay.  *See Todd v. Baker*, No. CV 10–127–M–DWM, 2012 WL 1999629 at *7 (D. Mont., June 4, 2012) (expert reports are inadmissible hearsay).  Indeed, it appears to be an attempt to put into evidence, in written form, evidence that should be presented in live testimony.

**B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

**PX85 & PX87.**  Samsung seeks to exclude these two documents on hearsay grounds, or as irrelevant, misleading or confusing: both objections fail for the reasons set forth below.  As a threshold matter, these exhibits are ***not*** decisions or court rulings from other cases, and Apple will not seek admission of any such decisions or rulings.  Rather, these exhibits are prior statements made by or adopted by Samsung, addressing precisely the same FRAND issues at issue in this case.  None of these statements depend on foreign law, unrelated technologies, or any other factual distinction that Samsung has tried to draw.  All these statements represent Samsung's views on the meaning of FRAND commitments under the Intellectual Property Rights Policy of the European Telecommunications Standards Institute, which is squarely at issue in this case.

Samsung's desire to shield these prior statements is unsurprising, because in these prior statements, Samsung took positions directly contrary to those they now urge the jury to adopt.  But Samsung cannot shield these statements merely because they were made in the context of other cases.  The jury should see the conflict between Samsung's positions, to assist the jury in evaluating the credibility of Samsung's current contentions.

For example, in this case, Samsung contends that a reasonable royalty for two FRAND-constrained patents is in the range of 2 to 2.75%.  But previously, Samsung contended that an offer based on a royalty rate of 2 to 2.75% "does not and can not in any way qualify as a FRAND offer."  (PX87.8.)  As another example, Samsung now contends that appropriate base for calculating a royalty payment is the net sales price of a phone.  Previously, Samsung argued the

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

5

1    opposite.  (*See* PX87.6 ("a percentage of the whole turnover is also hostile to innovation since

2    every newly introduced feature leads to a 'tax' to the IPR owner"); *see also* PX85.36-37.)  There

3    is nothing confusing or misleading about these statements; to the contrary, they are Samsung's

4    own contentions concerning the meaning and interpretation of a patent holder's FRAND

5    commitments – the precise questions now at issue.

6         Samsung's argument that it has not adopted these statements, and they are therefore

7    hearsay, is spurious.  Notably, Samsung does not deny that Samsung itself made the statements

8    contained in PX85 – and it cannot, given that Jun Won Lee, Samsung's 30(b)(6) Corporate

9    designee on the topic of Samsung's litigation related to FRAND or standard setting misconduct

10   (Walden Decl. Exs. 5 & 6), testified that Samsung had taken the positions advocated in PX85.

11   (*See* Walden Decl. Ex. 7, J.W. Lee, 3/5/12 Dep. Tr. 117:11-18.)  PX87 likewise states that it was

12   prepared at the direction of Samsung's attorneys for use by Samsung.

13        Finally, PX85 and PX87 are neither prejudicial, nor confusing, nor hearsay.  Rather they

14   are Samsung's own statements manifesting Samsung's own beliefs and contentions and are

15   therefore admissible.  *See United States v. Kattar*, 840 F.2d 118, 131 (1st Cir. 1988) (a party

16   submitting statement to a federal court "has manifested an adoption or belief in its truth.");

17   *Tucker v. Hous. Auth.*, 507 F. Supp. 2d 1240, 1276 (N.D. Ala. 2006) (Statements in court filings

18   "fall outside of the definition of hearsay because they are admissions of a party-opponent").

19

20

21

22

23

24

25

26

27

28

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

6

III.     STEPHEN GRAY

A.      Objections to Samsung's Direct Examination Exhibits

*SDX3593.028, .030.*   These slides offered by Samsung expert's Stephen Gray make invalidity assertions about Apple's '915 patent based on the "Nomura" Japanese patent application (which Mr. Gray's report calls "Yosuhiro") that were not disclosed in Mr. Gray's expert report.  Regarding claim element [8b] "creating an event object in response to user input," Mr. Gray's claim chart refers to his claim chart element [1b].  (Hung Decl. Ex. 1 at 18.)  His claim chart for element [1b] is reproduced in full below:

| **[1b]** creating an event object in response to the user input; | To the extent Yosuhiro does not disclose creating an event object in response to the user input, data regarding the user input event must be preserved in order for subsequent processing to occur. Therefore, inherently, Yosuhiro had to store the user input data in an event object or other similar structure. |
|---|---|

(Hung Decl. Ex. 1 at 3.)  As this passage shows, Mr. Gray's report pointed to nothing in the Nomura reference that supports his invalidity opinion other than "inherency."  Moreover, his assertion did not meet the standard for inherency.  *See* MPEP § 2112, citing *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) ("To establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is ***necessarily present*** in the thing described in the reference.") (internal quotations omitted) (emphasis added).

By contrast, SDX3593.028 cites two passages from Nomura as support for meeting element [8b] (though neither does so) and creates from whole cloth a newly disclosed graphic entitled "Finger Movement History event object."  Because this new invalidity argument is beyond the scope of Mr. Gray's expert report, it should be excluded.

SDX3593.030 suffers from the same defects.  Mr. Gray's claim chart for 8[d] refers to his claim chart for element [1d], which states:

| **[1d]** issuing at least one scroll or gesture call based on invoking the | To the extent Yosuhiro system does not disclose issuing at least one scroll or gesture call based on invoking the scroll or gesture operation, inherently, Yosuhiro had to issue at least one scroll or gesture call based on invoking the scroll or gesture operation in order for the system to work as described in the Yosuhiro application. |
|---|---|

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

7

| scroll or gesture operation; | One of ordinary skill in the art would understand that Yosuhiro discloses issuing at least one scroll or gesture call based on invoking the scroll or gesture operation. In my experience, all graphical user interface systems issue at least one "call" to implement scrolling or scaling operations. As a practical matter, to invoke operations such as scrolling or gesturing, the system needs to issue at least one "call" (*e.g.*, a function or method call). Additionally, issuing a scroll or gesture call is necessarily shown by the response to the scroll or gesture call discussed in claims 1c, 1e, and 1f. I describe this issue more fully in section III.E.4 of my Report. |
|---|---|

(Hung Decl. Ex. 1 at 18.)  Section III.E.4 of Mr. Gray's report concerned "Indefiniteness" and thus sheds no light on his anticipation theory.  That section asserts that Mr. Gray had never heard of an event object invoking a method, a position at odds with his "inherency" opinion.  (Hung Decl. Ex. 2 at 74-76.)  SDX3593.030, by contrast, cites two passages in the Nomura patent application and several different "processing units" to support Gray's opinion on 8[d] that were not addressed in Mr. Gray's report.  Again, these passages were not timely disclosed and should be excluded.

**DX561; SDX3953.046, .062, .066, .067.**  Apple objects to DX561.002-141 – which comprises provisional patent application 60/718,187 ((the "Flynt Provisional Application") – and to related demonstrative exhibits.  Samsung failed to include the Flynt Provisional Application in its P.R. 3-3 invalidity contentions. (*See* Hung Decl. Ex. 3 at 1-2 (listing only issued '632 patent to Flynt et al.).)  Failure to abide by the Patent Local Rules warrants exclusion of the belatedly disclosed theories and evidence.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006).

The Flynt Provisional Application in DX561 and the related demonstratives also are irrelevant, will unfairly prejudice Apple, and will confuse and mislead the jury.  Samsung seeks to use the application to establish an earlier priority date for U.S. Patent No. 7,933,632 to Flynt et al., which Samsung alleges is prior art to claim 50 of the '163 patent.  But the Flynt Provisional Application omits a key element of Samsung's contentions regarding the '632 patent: zooming *from a full field of 25 background tiles* (shown in DX561.153, '632 patent, Fig. 9) *to a subset of*

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

8

1    *those tiles* with one tile shown in an enlarged "active" state (shown in DX561.151, '632 patent,

2    Fig. 7).  Without this, it cannot establish an earlier priority date for the '632 patent.

3           SDX3953.066 and SDX3953.067 animate the alleged transition from Figures 9 to 7 of the

4    '632 patent.  These slides and the animation should also be excluded because the Flynt

5    Provisional Application does not disclose the depicted functionality.  The application describes

6    displaying an "active tile" that, "[i]n the summary view, . . . is displayed in the center of the

7    screen and expanded."  (DX561.060.)  It also describes "[u]sing the navigation key [to] change[]

8    the focus and bring[] a new tile in the summary." (*Id.*)  But the disclosure of a changeable active

9    tile, without more, does not capture the action of *zooming in on a field of background tiles* shown

10   in Mr. Gray's Figure 9 and 7 animations.  As the Flynt Provisional Application does not disclose

11   the part of the '632 patent that Mr. Gray highlights in his slides (*see* DX561.059-062 (discussing

12   "Homespace and Tiles")), Mr. Gray should not be allowed to rely on the provisional's filing date.

13        **B.       Responses to Samsung's Objections to Apple's Cross-Examination Exhibits**

14        ***PX49.***  PX49, a Samsung "Apple Intelligence Report," describes the '163 patent in detail.

15   The Court excluded it from the Singh direct in Dkt. No. 1657, but noted that Apple could seek to

16   introduce it through another witness.  Samsung has disclosed PX38 (using Apple's double-tap

17   zooming as a "design template") and PX44 (recommending supplementation of double-tap) as

18   direct exhibits for Mr. Gray.  If he testifies that Samsung's double-tap development documents

19   are unrelated to Apple or the '163 patent, as Mr. Gray did during deposition (Hung Decl. Ex. 4

20   at 188:16-198:21), Apple should be permitted to impeach him with PX49.

21        ***PDX41.1.***  Samsung objects that PDX41.1, a video depicting LaunchTile in operation, is

22   outside the scope of Mr. Gray's opinions.  Apple agrees not to use this video to cross-examine

23   Mr. Gray if Samsung agrees that he offers no opinion that the '163 patent is invalid in view of

24   LaunchTile.  Otherwise, PDX41.1 is plainly relevant and within the scope of Mr. Gray's opinions

25   because it depicts, almost exclusively, interactions with LaunchTile that he maps to the claim

26   language of the '163 patent.  For example, PDX41.1 shows the World View and depicts a user

27   tapping on a group of tiles to enter the Zone View.  (*See* Hung Decl. Ex. 5 at 4 (LaunchTile claim

28

chart).)  It shows navigation around the Zone View.  (*See id.* at 6.)  And it shows the launch and use of the same email application that Mr. Gray contends represents a "second box" that LaunchTile can substantially center on the screen.  (*See id.* at 5-7.)  Not only is PDX41.1 within the scope of Mr. Gray's opinions; it targets them precisely.

Apple's Objs. and Resps. Re: O'Brien, Teece, Gray, Van Dam, Agnetta, Howarth, and Nishibori
Case No. 11-CV-01846-LHK
sf-3182834

10

## IV.   ANDRIES VAN DAM

### A.   Objections to Samsung's Direct Examination Exhibits

***DX720; SDX3964.003a-37a, SDX3964.071b, SDX3964.02-03, SDX3964.013-038, SDX3964.071-072.***  According to Samsung fact witness Adam Bogue, there are two versions of the Tablecloth program.  (Dkt. No. 933 ¶ 10.)  The 2005 version "displays touch coordinate locations in the title bar" of Internet Explorer.  (*Id*.)  The July 17, 2006 version does not.  (*Id*.)

DX720, a compilation of two exhibits to the aforementioned Bogue declaration (Dkt. Nos. 933-4 & 933-5), and the demonstratives derived from it (listed above) clearly depict the 2005 version of Tablecloth, as evidenced by the presence of coordinate locations in the title bar and tab labels of Internet Explorer:

 

| DX720 | SDX 3964.019a |

But Dr. van Dam opined ***only*** on the July 17, 2006 version of Tablecloth in his expert report.  None of the ten photos of Tablecloth in his report depicts coordinate locations.

 

| Hung Decl. Ex. 6 | Hung Decl. Ex. 8 at 4 |

Apple inspected and filmed Samsung's DiamondTouch device running Tablecloth in May 2012 and provided the footage to Dr. Balakrishnan for use in his declaration.  Again,

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

11

1    Samsung only made available the July 17, 2006 version, as evidenced by the lack of coordinate

2    locations in the images below from Dr. Balakrishnan's declaration and video exhibit:


**Dkt. No. 1024-15 (video)**


**Dkt. No. 1024-13 ¶ 91**

8

9    During that inspection, Apple also documented the existence of "hold still" and "snap

10   forward" behaviors in the Tablecloth program that cut against Samsung's invalidity position.

11   (*See* Dkt. No. 1024-13 ¶¶ 91-92.)

12   Now, Samsung seeks to have Dr. van Dam testify about the 2005 version of Tablecloth on

13   the DiamondTouch, despite the fact that Apple has never been afforded an opportunity to inspect

14   it, and in spite of Dr. van Dam's failure to opine on it in his expert report.

15   Samsung's continuing shell game with its expert witnesses and "fact" witnesses must

16   come to an end.  The Court should exclude DX720 and its attendant demonstratives as an

17   improper attempt to cure the deficiencies in its expert's report and deposition testimony.

18   **DX694.**  DX694 purports to be an internal Apple email that mentions the alleged

19   LaunchTile prior art.  There is no foundation for this document and Dr. van Dam did not discuss

20   it in his expert report.  The Court previously excluded a document not cited in an expert's report

21   because the opposing party "lacked notice that [the expert] would be relying on [the exhibit] in

22   his testimony and therefore did not depose him on it."  (Dkt. No. 1657 at 2 (re: PX49).)  The same

23   reasoning applies here.

24   **B.    Responses to Samsung's Objections to Apple's Cross-Examination Exhibits**

25   **PDX27.22.**  PDX27.22 is a demonstrative used during Dr. Balakrishnan's infringement

26   testimony that applies the language of claim 19 of the '381 patent to an image displayed on a

27   Samsung product.  Samsung objects that this is outside the scope of Dr. van Dam's invalidity

28   opinion and that it is confusing under Rule 403 because it "ties the claim language to a particular

1    device." (Hung Decl. Ex. 8.) As evidenced by Samsung's presentation slides for Dr. van Dam,

2    he appears to be quite capable of tying the language of claim 19 to particular prior art devices.

3    Samsung's counsel also made clear that experts must interpret claim language consistently across

4    both their validity and infringement analysis. (*See* Hung Decl. Ex. 9 at 1790:10-13 ("Q. Okay.

5    And you also understand . . . that the claims must be read consistently for infringement purposes

6    and for invalidity purposes, right?").) As an expert who interpreted and applied the language of

7    claim 19, Dr. van Dam should be subject to cross-examination and impeachment using the

8    application of the same language to other devices to test the reliability and consistency of his

9    analysis. Accordingly, Samsung's objection should be overruled.

10        ***ITC Inv. No. 337-TA-796 Hearing Transcript.*** Samsung objects to the use of Dr. van

11   Dam's hearing testimony in ITC Investigation 337-TA-796 as allegedly (1) violating the Court's

12   ruling on Samsung's Motion in Limine #4 ("to exclude reference to findings or rulings in other

13   proceedings not involving the patents at issue in this case") (Dkt. No. 1267 at 4); and (2) being

14   prejudicial. Since Dr. van Dam's *testimony* does not constitute a "finding" or "ruling,"

15   Samsung's objection is misplaced. More importantly, Dr. van Dam testified before the ITC

16   regarding terms contained in the claim limitations of the '381 Patent. His opinion on these terms

17   is directly relevant to how a person of skill in the art would understand the terms of the '381

18   Patent. Should Dr. van Dam offer testimony at trial consistent with his previous testimony, Apple

19   will not seek to use his ITC testimony. But should Dr. van Dam contradict his previous sworn

20   testimony, that testimony is admissible for impeachment purposes. Because of this limited

21   purpose, Dr. van Dam's ITC testimony poses no risk of prejudice or confusion.

22

23

24

25

26

27

28

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

13

1    **V.     BRYAN AGNETTA**

2            **A.      Objections to Samsung's Deposition Designations**

3            ***Deposition Testimony Regarding Conception Date (B. Agnetta Dep. Tr. at 14:1-7).***

4    Apple objects to Samsung designations of the deposition testimony of Bryan Agnetta relating to

5    an alleged May 2005 conception date for the '632 patent, which Samsung asserts is prior art to

6    the '163 patent, as this date was not corroborated by any documents.  Dr. Agnetta testified in

7    response to a Samsung subpoena to Microsoft.  Although Samsung originally sought documents

8    from Microsoft (*see* Hung Decl. Ex. 10, Attachment B at 2 (identifying tangible items and

9    documents to be produced)), Samsung elected to forgo any document production from Microsoft,

10   *see In re Subpoena Issued to Non-Party Microsoft Corp.*, No. C-12-476RAJ, Dkt. No. 14 at 2, 3

11   (W.D. Wash. Apr. 30, 2012) (denying in part motion to quash Samsung's *subpoena* to nonparty

12   Microsoft relating to conception and reduction to practice of the '632 patent, noting that

13   "Samsung . . . offered to eliminate the production of documents" from the subpoena, and holding

14   that "Microsoft is not required to produce any documents.").

15           Without corroborating evidence, Samsung cannot rely on the May 2005 conception date.

16   *See Slip Track Systems, Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1263 ("Inventor testimony alone

17   is not sufficient to prove conception; some form of corroboration must be shown."); *see also*

18   M.P.E.P. § 2138.04 ("Conception must be proven by corroborating evidence.") (internal citations

19   omitted).  Dr. Agnetta's testimony relating to the date of conception is therefore irrelevant and

20   unfairly prejudicial under Rules 402 and 403 of the Federal Rules of Evidence, respectively.

21           ***Deposition Testimony Regarding Provisional application and date (Agnetta Dep. Tr.***

22   ***at 15:21-16:19).***  Apple objects to Dr. Agnetta's deposition testimony relating to the Flynt

23   Provisional Application and to the underlying application for the same reasons stated above with

24   respect to DX561 and related demonstratives proposed for Mr. Gray's examination.  As stated

25   above, Samsung failed to include the provisional application in its Patent Local Rule 3-3

26   invalidity contentions.  (*See* Hung Decl. Ex. 3 at 1-2 (listing only issued '632 patent to Flynt et

27   al.).)  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir.

28   2006).

1   Apple further objects to both Mr. Agnetta's testimony and the Flynt provisional

2   application in DX561 because they are irrelevant under Rule 402 and pose a high risk of unfair

3   prejudice, confusing the issues, and misleading the jury under Rule 403.  As Apple explained

4   above in the objections for Gray, Samsung seeks to use the Flynt Provisional Application to

5   establish an earlier priority date for the '632 patent asserted as prior art against claim 50 of

6   Apple's '163 patent.  But the Flynt Provisional Application does not support a key element of

7   Samsung's purported '632-based invalidity analysis:  zooming from a full field of 25 background

8   tiles (pictured in '632 Figure 9) to a subset of those tiles with one tile shown in an enlarged

9   "active" state (depicted in '632 Figure 7).  As discussed above, Mr. Gray considers this element

10  significant enough to make multiple demonstratives to animate this behavior.  The Flynt

11  Provisional Application, however, only describes displaying an "active tile" which "[i]n the

12  summary view, . . . is displayed in the center of the screen and expanded."  (DX561.060.)  It also

13  discloses "[u]sing the navigation key [to] change[] the focus and bring[] a new tile in the

14  summary."  (*Id.*)  Without more, these disclosures do not capture the action of zooming in on a

15  field of background tiles.  Thus, the Flynt provisional application does not disclose key portions

16  of the Flynt patent, and both the provisional and Mr. Agnetta's related testimony should be

17  excluded.

18  **B.      Responses to Samsung's Objections to Apple's Counter-Designations**

19  ***Bryan Agnetta Deposition Transcript at 54:8-54:9, 54:18-54:19.***  Samsung asserts that

20  Bryan Agnetta's testimony calls for an expert opinion.  Mr. Agnetta was a named inventor on the

21  '631 patent, as Samsung's own designations demonstrate.  (*See* B. Agnetta Dep. Tr. at 10:21-22,

22  11:5-11:09, 11:12-11:19.)  As an inventor, Dr. Agnetta would understand limitations on the scope

23  of his own patent.  Samsung itself designated Dr. Agnetta's testimony on "enlarging of the tile" in

24  the context of the Flynt patent.  (*Id.* at 29:22-30:02, 31:02-31:17.)  Apple's counter-designations

25  relate directly to the enlarging of tiles.  (*Id.* at 54:1-3, 54:6-9, 54:18-54:19.)  Under Samsung's

26  theory, Samsung's own designations would be expert testimony.

27  In addition, in response to Apple's counter-designations, Samsung has "counter-counter

28  designation[ed]" portions of Dr. Agnetta's deposition testimony.  (Hung Decl. Ex. 8 (counter-

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

15

1  counter-designating Agnetta Dep. Tr. at 55:16-55:22, 55:25-56:1).)  Samsung did not designate

2  these additional counterdesignations with its original Agnetta disclosure.  If Samsung is permitted

3  to add them, Apple asks to counter-designate the immediately following testimony, from 56:2-

4  56:7.

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

16

1    **VI.    RICHARD HOWARTH**

2        **A.    Objections to Samsung's Direct Examination Exhibits**

3        *DX2627.*  Apple objects to DX2627 as yet another attempt by Samsung to introduce its

4    stricken theories relating to the F700.  DX2627 is a report from a 2007 trade show in Barcelona.

5    The report was prepared by Apple's Europe, Middle East and Asia (EMEA) Product Marketing

6    Department.  Samsung's motivation for including the document in its list of "impeachment"

7    documents for Mr. Howarth appears to be that it contains photographs of the Samsung F700.

8    (DX2627 at 2627.007, 25-26.)

9        The F700 has been addressed exhaustively in prior briefing and the Court's previous

10   orders, and for that reason Apple will not rehash the same arguments again here.  (*See*, *e.g.,* Dkt.

11   Nos. 1690, 1676, 1545, 1510, 1456.)  The Court should exclude DX2627 for the same reasons it

12   has previously excluded documents and testimony relating to the F700.  Any probative value that

13   this document could have (and there appears to be none) would be far outweighed by the risk of

14   undue prejudice to Apple.  The Court should therefore exclude DX2627 pursuant to Rule 403.[2]

15       DX2627 is also likely to mislead the jury because it bears an erroneous date that falsely

16   suggests the document evidences pre-iPhone disclosure of the F700 and the LG Prada.  (*See*, *e.g.*,

17   DX2627.024-.026 & 2627.042-.043.)  It is mistakenly dated February 12-15, 2006, but DX2627

18   concerns the Barcelona 3GSM Congress Trade Show that occurred in ***2007***.  A duplicate of

19   DX2627 was attached to an e-mail that clearly indicated that these slides concerned the 2007

20   Trade Show.  (Hung Decl. Ex. 11.)  The erroneous date is also apparent from the face of

21   DX2627.005, which indicates attendance statistics for the 2007 show and discusses the 2006

22   attendance in the past tense.  (DX2627.005) (2007 attendance "9,000 more than 2006.")  As

23   further evidence of the incorrect date, DX2627.043 purports to show images from an iPhone ad,

24   but the iPhone was not announced until 2007.  This prejudice and confusion will be amplified

25   _____

26       [2] The document does not appear to relate to "functionality" in any sense, but to the extent
     that Samsung seeks to introduce this document for functionality purposes, it cannot.  DX2627

27   was never identified in its responses to Apple's Interrogatory Nos. 38 and 40 seeking
     identification of documents supporting Samsung's functionality arguments.  (Hung Decl. Ex. 12;

28   Hung Decl. Ex. 13.)

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

17

1    during Mr. Howarth's examination as he will not be able to verify the accuracy or inaccuracy of

2    the contents of a document of which he has no personal knowledge.

3         **DX579.**  Apple objects to DX579 on the ground that Samsung failed to identify it in

4    response to Apple's Interrogatories Nos. 38 & 40 asking Samsung to identify all documents

5    supporting its "functionality" defense.  Apple's Interrogatory No. 38 asked Samsung to

6    "[d]escribe the functional benefit of every element of Apple's Asserted Design Patents that

7    Samsung alleges is functional and ***identify every document supporting Samsung's claim***." (Hung

8    Decl. Ex. 12 (emphasis added).)  Apple's Interrogatory No. 40, which sought the bases for

9    Samsung's affirmative defense that the asserted trademarks, trade dress, and design patents were

10   functional, asked Samsung to "***identify all documents and things relating to your response***."

11   (Hung Decl. Ex. 13 (emphasis added).)  This Court has ruled on numerous occasions that

12   documents not timely identified in interrogatory responses should be excluded. (*See, e.g.*, Dkt.

13   No. 1456 at 2 (excluding exhibits because they were not identified in response to a contention

14   interrogatory).)  None of Samsung's responses to Apple's interrogatories identified DX579.

15   (Hung Decl. Ex. 12; Hung Decl. Ex. 13; Hung Decl. Ex. 14.)

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **VII.    SHIN NISHIBORI**

2        **A.    Objections to Samsung's Deposition Designations**

3        Samsung forces Apple to use a high priority objection on testimony that the Court has

4    already expressly excluded.  The Court should not allow Samsung to circumvent those rulings.

5        Samsung has designated deposition testimony in which former Apple industrial designer

6    Shin Nishibori describes a design exercise in which he imagined what Sony might have done if it

7    had attempted to make an iPhone.  In the clips Samsung selected (using a translation to which

8    Apple has objected), Mr. Nishibori describes Jonathan Ive's suggestion that he "try working on to

9    create something that represents something that if Sony attempts to create an iPhone."  (Hung

10   Decl. Ex. 15.)  He also describes CAD renderings that he "created based on [his] thoughts or [his]

11   understanding of Sony-like designs – Sony's design, based on the request of Jonathan Ive."  (*Id*.

12   at 30:7-12.)  The testimony also refers to two exhibits, but Samsung has *not* offered them,

13   presumably because it knows they have also been excluded.  (*Id*. at 17:12-16, 29:12-15 (referring

14   to DX623 and DX690).)  Apple therefore addresses only the designated testimony, not the

15   undesignated documents.[3]

16       The Court has repeatedly stricken and excluded this material – including the ***exact***

17   testimony Samsung designated.  Samsung expert Itay Sherman's report stated that Nishibori

18   "created several 'Sony style' designs for mobile phones, claiming that the point was 'what would

19   Sony do if they were us?'"  (Dkt. No. 939-4 Ex. 27 (sealed), at 48.)  Judge Grewal struck this

20   testimony because Samsung failed to disclose its defenses based on this evidence until after the

21   discovery period.  (*Id.*; Dkt. No. 1144 at 4-5.)  Samsung moved for relief from the Order (Dkt.

22   No. 1216) and featured prominently the allegation that Nishibori "was directed to prepare a Sony-

23   like design for an Apple phone" in its trial brief (Dkt. No. 1322 at 6).  Samsung also attempted to

24   use the stricken evidence in its opening statement.  Apple filed a motion to enforce the striking

25   order (Dkt. No. 1420) and objected to the opening statement slides (Dkt. No. 1441).  The Court

26

27       [3] Because Samsung has not offered—and cannot offer—the exhibits to Mr. Nishibori's
     deposition, the testimony is even more prejudicial, as the jury will not see the designs Mr.
28   Nishibori is discussing.

1   sustained Apple's objections to the opening statement slides.  (Dkt. No. 1456 at 2) ("The images

2   of, and testimony regarding, the Sony style designs in the slides are excluded because of their

3   untimely disclosure pursuant to Judge Grewal's Order.").)  Samsung moved for reconsideration

4   again, and the Court allowed Samsung to refer only to a single email (written by Apple designer

5   Richard Howarth) that the Court found might be relevant to the issue of "functionality."  (Dkt.

6   No. 1510.)  Yet Samsung paid little heed in its opening statement, informing the Jury:

7                    [T]he evidence is going to show that that [iPhone] design was –
                    and its functionality inspired Apple to change course with the
8                    design of its initial iPhone.  Apple was inspired by Sony.

9   (Hung Decl. Ex. 9 at 392:10-13.)  The Court later noted that Samsung "crossed the line" in its

10  statement.  (*Id.* at 455:2-11.)  Samsung then leaked the excluded opening statement slides to the

11  press.  (*Id.* at 575:25-576:5.)

12       The Court subsequently affirmed Judge Grewal's striking order and denied Samsung's

13  motion for relief.  (Dkt. No. 1545 at 11 ("Sony Style Designs . . . Not Admissible").)  The Court

14  also granted Apple's motion to enforce.  (Dkt. No. 1553 at 3 (noting that "the portions of the

15  Sherman Report struck by Judge Grewal present the argument that Apple's design was influenced

16  by Sony designs" and holding that to allow such evidence would "render Judge Grewal's Order

17  meaningless.").)  The Court also held that it was unpersuaded of the relevance and admissibility

18  of the Sony-style design story because the designs were "created by Apple's in-house designers

19  and are not Sony products."  (*Id.*)  Finding "the potential for jury confusion with this evidence is

20  high," the Court held the evidence inadmissible under Federal Rule of Evidence 403.  (*Id.*)  Once

21  again, the Court confirmed the only exception would be the single Howarth email to the extent it

22  is offered to "support [Samsung's] allegation that the iPhone design is functional."  (*Id.* at 4.)

23       The Court's Order went on to exclude testimony of Shin Nishibori.  Consistent with its

24  ruling on the Sony evidence generally, the Court held:

25                    Mr. Nishibori's testimony is admissible to establish functionality of
                    the iPhone design. However, also consistent with the discussion
26                    above, Mr. Nishibori's testimony on the theories that were stricken
                    by Judge Grewal is excluded. Specifically, Mr. Nishibori's
27                    testimony is excluded to: (1) rebut Apple's creation theory that the
                    iPhone was "revolutionary"; (2) rebut allegations of copying; (3)
28

establish that the industry at large was moving toward the basic design concepts; and (4) rebut allegations of willfulness.

(*Id.*)

Samsung's proposed deposition designations *defy* that Order.  They contain the very same excerpts that this Court struck from Samsung's opening statement slides and which Samsung subsequently leaked to the press.  (*Compare* Hung Decl. Ex. 16 *with* Samsung Nishibori designation at 22:24-23:15.)  There is *nothing* in the designations that relates to functionality at all, let alone the Howarth email.[4]  Samsung's designations should therefore be excluded entirely.[5]

Dated: August 14, 2012                                MORRISON & FOERSTER LLP


                                                     By:   /s/  *Michael A. Jacobs*
                                                           Michael A. Jacobs

                                                     Attorneys for Plaintiff
                                                     APPLE INC.

---

[4] The Howarth email was marked as Exhibit 3 to the deposition and Mr. Nishibori testified about it for *seven pages*.  (Hung Decl. Ex. 15 at 48:23-55:15.)  Yet Samsung has designated *none* of that testimony and cannot do so now.

[5] Apple also objects that Samsung's designations are incomplete and misleading.  The deposition of Mr. Nishibori was translated, and Mr. Nishibori's timely served errata corrected the many mistranslations therein.  (Hung Decl. Ex 17.)  Accordingly, if the Nishibori testimony is *not* excluded, then Samsung should read *only* the corrected transcript into the record.  It should not be allowed to play the incorrect translations contained in the video.

APPLE'S OBJS. AND RESPS. RE: O'BRIEN, TEECE, GRAY, VAN DAM, AGNETTA, HOWARTH, AND NISHIBORI
CASE NO. 11-CV-01846-LHK
sf-3182834

21