# Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | CASE NO. 11-cv-01846-LHK |

**EXPERT REPORT OF STEPHEN GRAY
REGARDING INVALIDITY OF U.S. PATENT NOS. 7,844,915 AND 7,864,163**

knowledge) be sufficient to create and use event objects, or distinguish between one finger and more than one finger on a touch sensor, for implementing scrolling, scaling or rubberbanding operations.

### 4. Indefiniteness

261. In my opinion, all of the asserted Claims of the '915 Patent are indefinite. Each of the independent claims recites:

> distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation.

262. The Specification defines gesturing as "a type of user input with two or more input points." Col. 1:44-45. However, the definition of scrolling is not limited to one input point: "Scrolling is the act of sliding a directional (e.g., horizontal or vertical) presentation of content, such as text, drawings, or images, across a screen or display window." ['915 Col. 1, ll. 39-41]

263. The Specification also describes that a gesture operation can result in a scroll operation:

> If the list of emails fills more than the allotted screen area, the user may <u>scroll</u> through the emails using vertically upward and/or vertically downward swipe <u>gestures</u> on the touch screen. In the example of FIG. 6A, a portion of a list of emails is displayed in the screen area, including a top displayed email 3530 from Bruce Walker and a bottom displayed email 3532 from Kim Brook. A user performs a vertically downward swipe gesture 3514 to scroll toward the top of the list. The vertically downward gesture 3514 need not be exactly vertical; a substantially vertical gesture is sufficient. In some embodiments, a gesture within a predetermined angle of being perfectly vertical results in vertical scrolling."

['915 Col. 9, ll. 10-21]

264. None of the claims describe that a gesture operation results a scroll operation. Rather, as described above, all of the independent claims include a limitation directed towards distinguishing scroll operations from gesture operations.

265. Since the Specification makes it clear that in at least one embodiment a gesture

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

operation results in a scroll operation, and nowhere limits the scroll operation to a single input point, the claims are indefinite. In other words, the meaning of the claims language is unclear in light of the Specification. Specifically, a person of ordinary skill in the art would understand that according to the Specification a gesture operation could, in at least one embodiment, initiate a scroll operation. The same person of ordinary skill could not reconcile this understanding with the language of the claims, which call for distinguishing between gesture operations and scroll operations. The Specification describes that a scroll operation is a type of gesture operation.

266.   All of the asserted Claims of the '915 Patent are also indefinite for another reason. Each of the independent claims recites "the event object invokes a . . . operation." In my 35 years of systems experience, I have never observed a system where an event object invoked a method. Therefore, in my opinion, a person of ordinary skill would not understand that an event object invokes a method in Claims 1, 8 and 15, rendering these claims (and all dependent claims) invalid as indefinite. Additionally, one of the inventors of the '915 Patent, Mr. Platzer, agreed with me at his deposition:

> Q. Okay. Turning back to the claim, the claim states, Determining whether the event object invokes a scroll or gesture operation. And my question is what does it mean to invoke a scroll or gesture operation?
>
> A. I'm not a lawyer, so I'm not comfortable in defining "invoke" as far as the patent is concerned. I don't recall. But in UIKit, as well as what we would say  "invoke" would mean, call a particular function or a set of code that, you know, is executed when the user scrolls or does a gesture.
>
> Q. And at the time you filed this patent application in 2007, did you have an understanding of what "invoke" meant as you used it here in the claims?
>
> A. I'm not a -- a lawyer, so I'm not comfortable defining "invoke" in the patent.  But as an example, in Objective-C or in many other languages, "invoke" is often used as a synonym for calling a function.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

(October 18, 2011 Platzer Tr. Pgs. 80-81.)

267.   In my opinion, dependent Claims 3, 10, and 17 are also indefinite. These claims recite "attaching scroll indicators to a content edge of the window." While the Specification describes attaching "a scroll indicator to a . . . *window edge*" or "attaching scroll indicators a *content edge* of a **display**" (Col. 11, ll. 16-20 and 63-64) (emphasis added), the Specification distinguishes a "content edge" from a "window edge" on two separate occasions (Col. 6, ll. 64-67; Col. 6 l. 67 – Col. 7 l. 3). In other words, while the Specification describes attaching scroll indicators to a "window edge" or a "content edge", the meaning of "content edge of the window" is unclear in light of the Specification. I also note that Claims 4, 11, and 18 are directed to "attaching scroll indicators to the window edge." It is unclear to me what the terms mean. Thus, in my opinion, a person of ordinary skill in the art would not understand the difference between a "content edge of the window" and "a window edge"—and the Specification does not anywhere define "content edge of the window." Therefore, the same person of ordinary skill could not reconcile the differentiation of the terms "content edge" and "window edge" with the phrase "content edge of the window" in Claims 3, 10, and 17, rendering these claims invalid as indefinite.

268.   Additionally, claims 15-18 and 20 are indefinite for failing to disclose the corresponding structure for several means-plus-function limitations.

269.   It is my opinion that one of ordinary skill in the art would not understand this proposed construction to disclose a structure. Apple has not identified the particular structure or algorithm used to perform the claimed functions, and I believe one of ordinary skill in the art would not understand the necessary structure or algorithm from reading the Patent specification. It is my opinion that claims 15-18 and 20 are therefore invalid for indefiniteness.

421. Just as the term "substantially centered" fails to reasonably apprise a person of ordinary skill as to the scope of claim 2, so too does the term "substantially the same" fail to reasonably apprise a person of ordinary skill as to the scope of claim 18.

(c)  **Means-plus-function Claim (Claim 50 and 52)**

422. It is my opinion that the specification of the '163 Patent lacks corresponding structure to adequately identify the scope of claims 50 and 52 with the requisite specificity.

423. I have reviewed Apple's P.L.R 4-2 disclosures in this case, and I am aware that Apple's position on the means-plus-function elements is that they are limited to "one or more special or general purpose processors programmed with special-purpose software to execute an algorithm."

424. It is my opinion that one of ordinary skill in the art would not understand this proposed construction to disclose a structure. Apple has not identified the particular algorithm used to perform the claimed functions, one of ordinary skill in the art could identify the corresponding algorithms from reading the Patent specification. It is my opinion that claims 50 and 52 are therefore invalid for indefiniteness.

V.  **CONCLUSION**

For the foregoing reasons, it is my opinion that every asserted claim in both the '915 Patent and the '163 Patent are invalid.

Dated: March 22, 2012

By _____Stephen Gray_____
Stephen Gray