Exhibit 4

Highly Confidential - Attorneys' Eyes Only

1               UNITED STATES DISTRICT COURT
2      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
3
4   APPLE INC., a California     )
    corporation,                 )
5                Plaintiff,      )
                                 )
6   vs.                          ) Case No. 11-cv-01846-LHK
                                 )
7   SAMSUNG ELECTRONICS CO.,     )
    LTD., a Korean business      )
8   entity; SAMSUNG ELECTRONICS  )
    AMERICA, INC., a New York    )
9   corporation; SAMSUNG         )
    TELECOMMUNICATIONS AMERICA,  )
10  LLC, a Delaware limited      )
    liability company,           )
11               Defendants.     )
    _____)
12
13
14         H I G H L Y   C O N F I D E N T I A L
15           A T T O R N E Y S'   E Y E S   O N L Y
16
17         VIDEOTAPED DEPOSITION OF STEPHEN GRAY
18                  Palo Alto, California
19                  Friday, May, 4, 2012
20
21
22  BY:  HEIDI BELTON, CSR, RPR, CRR, CCRR
23  CSR LICENSE NO. 12885
24  JOB NO. 49273
25

Page 186

1  incapable of -- while the first box is enlarged --        16:01:40
2  detecting a touch on the second box, and in response,
3  translating the structured electronic document so the
4  second box is substantially centered?
5       MS. MAROULIS: Objection; vague.        16:01:56
6       THE WITNESS: So my -- you'll recall a little
7  earlier in the day we were talking about some testing
8  that I had performed on a variety of different machines.
9  It is -- sitting here today -- and I characterize that
10 as informal testing. Sitting here today, I don't know   16:02:15
11 that I tested on all of those machines the ability to
12 detect the second gesture and do the -- the basic -- the
13 tap-to-scroll gesture. I don't know that I did test it
14 on there. So I can't -- with the same level of
15 authority -- say that there were those eight devices    16:02:32
16 that didn't do something; I didn't quite go that far
17 here. But I don't recollect observing any of the
18 Samsung products, the accused products that were
19 incapable of responding to a second gesture with a tap
20 to scroll.        16:02:49
21 BY MR. MONACH:
22    Q. "Tap to scroll" and "substantially centering"
23 on the second box of the electronic document?
24    A. Well --
25       MS. MAROULIS: Objection; compound. Vague.  16:02:59

Page 187

1       THE WITNESS: And I almost interrupted you in   16:03:00
2  your question. So let me think about that.
3       We're -- the issue is substantially centering.
4  And I -- I'd -- you know, the -- the observation that I
5  made was that they -- that in some cases, they certainly  16:03:14
6  were substantially centered; and in other cases they
7  weren't. But it also -- it also leads me to the
8  following; that is, that "substantially centered" seems
9  to me to be an issue. What does "substantially
10 centered" mean? So I hate to admit or I hate to say    16:03:30
11 they were substantially centered, because "substantially
12 centered" is a term that I think is confusing in the
13 claim. And so I don't want to try to sound as though I
14 understand exactly what it means in all cases, because I
15 don't.        16:03:44
16      So other than that, yes, it did appear to do
17 the tap-to-scroll operation, which in some cases looked
18 as though it substantially centered the second box.
19 BY MR. MONACH:
20    Q. Do you remember any instances in which you     16:03:58
21 tested a Samsung-accused product with this second tap or
22 a second gesture on a second box and the -- you
23 concluded that the device was incapable of substantially
24 centering the second box when it translated the
25 electronic document?        16:04:23

Page 188

1       MS. MAROULIS: Objection; vague. Calls for    16:04:24
2  legal conclusion.
3       THE WITNESS: I believe that there are --
4  there are cases where the Samsung device in the
5  tap-to-zoom feature does not substantially center. I am  16:04:43
6  not sitting here today prepared to say that it never
7  substantially centers or is incapable of substantially
8  centering, but there are cases where it doesn't
9  substantially center.
10 BY MR. MONACH:        16:04:58
11    Q. On the seconded tap?
12    A. On the tap-to-zoom. I'm sorry.
13 Tap-to-scroll.
14      MR. MONACH: All right. Let's have marked as
15 next in order --        16:05:44
16      THE VIDEOGRAPHER: Exhibit 16.
17         (Whereupon Exhibit 16 marked
18          for identification.)
19      MR. MONACH: Mr. Gray, we've marked as
20 Exhibit 16 a translation and an original Korean         16:06:15
21 document, slides produced by Samsung dated -- the
22 original slide as Bates number SAMNDCA 00203880 dated
23 either March 2 or February 3, 2010. It says "2010.3.2"
24 and then a translation.
25      MS. MAROULIS: I'm going to object to the     16:06:50

Page 189

1  translation, which -- in case we need to submit    16:06:51
2  translation of our own later on.
3       MR. MONACH: Okay. We have a certified
4  translation on the front here.
5    Q. Have you seen this document before?        16:07:03
6    A. I believe what you're asking me is have I seen
7  the translated version? So --
8    Q. You've seen the translation of the text and
9  then the figures taken from the Samsung document that
10 are in Deposition Exhibit 16, right?        16:07:27
11   A. Well -- well, what I'm not -- I believe that I
12 have seen -- I don't know that I've seen -- well -- so I
13 don't need to get -- to confuse the issue further. I
14 have seen a translation of the document ending in 203880
15 for these pages. I'm not sure if this is the        16:08:04
16 translation I've already seen. That's the only case.
17 I'm trying to think. But I've seen something that is a
18 translation of 20 -- 2 -- 203880.
19   Q. All right. So 203880 in translation has a
20 cover page, "Relative Evaluation Report on S1, iPhone,   16:08:22
21 March 2, 2010." Do you see that?
22   A. Do I have that? Oh, I'm sorry. I do. This
23 is the page you're referring to?
24   Q. Yes, sir.
25   A. Yes, it's -- yes. Okay, great. I see that.  16:08:46

Highly Confidential - Attorneys' Eyes Only

Page 190

1  Q. All right. And then do you understand that       16:08:52
2  this is a comparison of the iPhone and a Samsung phone
3  under development?
4  A. I don't --
5     MS. MAROULIS: Objection; calls for            16:09:08
6  speculation. Lacks foundation.
7     THE WITNESS: My understanding is that this is
8  a presentation -- presentation material that was -- that
9  was put together by the product engineering group that
10 does contain information that in some cases compares   16:09:26
11 behaviors -- or that reports on behaviors of the
12 iPhone and on -- of the iPhone, which is an Apple
13 product, and the S1, which I believe is a predecessor --
14 is a Samsung phone.
15 BY MR. MONACH:                                    16:09:46
16 Q. Okay. And you understand that the product
17 engineering team is a Samsung product -- Samsung product
18 engineering team, right?
19    MS. MAROULIS: Objection; lacks foundation.
20    THE WITNESS: Well, I think what I read from  16:10:03
21 the page of the translation of 203880 is that within the
22 product engineering team, this is the software
23 inspection group.
24 BY MR. MONACH:
25 Q. Of Samsung?                                    16:10:13

Page 191

1  A. I believe it to be of Samsung, yes, I do.     16:10:14
2  Q. All right. Could you turn to the page with
3  the heading "53. Browsing_Web Browser."
4  A. I'm on page 203937, which is "53. Browsing_Web
5  Browser."                                        16:10:34
6  Q. And the text says, "When double-tapped, only
7  enlargement/shrinkage are supported. A quick transition
8  to an enlarged screen is not possible. iPhone: When
9  a different spot is double-tapped after being enlarged,
10 the screen moves to a different screen. S1: When a  16:10:46
11 different spot is double-tapped, the screen shrinks back
12 to the original screen."
13    Do you see that?
14 A. I do see those lines that are on this
15 document -- on this page, yes.                    16:10:59
16 Q. Do you understand for the iPhone "When a
17 different spot is double-tapped after being enlarged,
18 the screen moves to a different screen" to be referring
19 to the behavior of a structured electronic document as
20 described in the '163 patent? You've enlarged by --  16:11:16
21 you've enlarged a structured electronic document. And
22 then when you make a second tap on a different spot, the
23 screen translates?
24    MS. MAROULIS: Objection; assumes facts.
25 Calls for speculation. Lacks foundation.          16:11:29

Page 192

1     THE WITNESS: So I believe what this is      16:11:37
2  referring to is that when a -- when an iPhone -- when a
3  structured electronic document is -- I think this is --
4  I mean, I'll accept your assertion that it's a
5  structured electronic document; I have no reason to   16:11:50
6  believe that it isn't. That when that's expanded or
7  enlarged, that in the iPhone -- on the iPhone column
8  here it looks as though what the text says is that when
9  a different point is tapped after enlarging, the screen
10 moves to the tapped screen and shows the enlarged  16:12:08
11 screen.
12    So I think what it -- what it is referring to
13 is that when somebody has expanded or enlarged a
14 structured electronic document to double tap on that,
15 then provides you another expansion or a second zoom  16:12:23
16 level on that document. So I think what it's combining
17 is the manual -- for example, the de-pinch and then a
18 double tap. So you get two different zoom levels, is I
19 think what it's talking about.
20 BY MR. MONACH:                                    16:12:41
21 Q. You don't think this is referring to -- when
22 it says the screen moves, you don't think that's
23 referring to translating?
24    MS. MAROULIS: Objection; calls for
25 speculation. Lacks foundation.                    16:12:47

Page 193

1     THE WITNESS: Well, I think it's -- I think  16:12:52
2  it's enlarging. It's not necessarily translating.
3  Translating is the animated scroll, right?
4  BY MR. MONACH:
5  Q. Well, in discussing the S1, they -- this      16:13:02
6  document refers to only enlargement and shrinkage are
7  supported. And in both of the references to the
8  iPhone, they talk about the screen moves. Do you see
9  that?
10    MS. MAROULIS: Objection; document speaks for  16:13:18
11 itself.
12    THE WITNESS: I do see that on the iPhone it
13 says that the screen moves to a different screen. And I
14 see that on the i1 -- S1, rather, they're talking about
15 when a different spot is double-tapped, the screen  16:13:31
16 shrinks back to the original screen. I see both of
17 those. And I understand that there -- that these
18 comments are related in some way to the two side-by-side
19 adjacent boxes are that labeled "iPhone" and "S1."
20 BY MR. MONACH:                                    16:13:50
21 Q. Is it a fair reading of this document that the
22 Samsung group is talking about their S1 in response to
23 tapping only doing enlarging and shrinking, and the
24 Apple product having the ability to translate when a
25 second spot is tapped?                            16:14:15

Page 194

1  MS. MAROULIS: Objection; lacks foundation.  16:14:16
2  Calls for speculation.
3      THE WITNESS: Seems to me that the comments
4  regarding S1 pertains to double tapping that either
5  enlarges or shrinks; and that on the iPhone, they're  16:14:38
6  talking about a post -- some sort of post -- or -- an
7  enlargement of the screen and then double tapping --
8  excuse me -- enlargement of a portion of that structured
9  electronic document. And then when it double taps, it
10 does another enlargement, the screen moves to a  16:15:02
11 different screen which is also, I note, enlarged. So it
12 shows a different screen with an enlargement of the
13 first enlarged screen, a second zoom level.
14 BY MR. MONACH:
15     Q. Could the first enlargement on the iPhone in  16:15:21
16 the slide, which I just showed you, result from a double
17 tap on a box of content?
18     MS. MAROULIS: Objection; vague. Calls for
19 speculation. Lacks foundation.
20     THE WITNESS: Well, I mean -- I mean, could --  16:15:51
21 I mean, is it possible? I mean, I don't -- here's what
22 it looks to me. It looks to me as though this zoomed
23 document, the -- okay. So let's try to use some
24 language that we can -- that might make the record
25 reasonable.  16:16:05

Page 195

1      On the iPhone column, the left-hand side,  16:16:06
2  the back screen looks as though this has already been
3  expanded, but it doesn't look as though it has been a
4  double tap to zoom in the context of the '163 where a
5  box has been -- a box of content has been enlarged and  16:16:21
6  substantially centered, which is -- because if you look
7  at that -- at that first screen, there's text running
8  off the side. So it looks as though something has been
9  enlarged but not enlarged in the sense of the '163 that
10 takes the box of content and isolates it and puts it  16:16:43
11 into a substantially centered position. So to me what
12 it looks like is that somehow that has been enlarged.
13     I'm not familiar enough with the behavior of
14 the iPhone to know whether if you go to -- if there's
15 some application or some mode of operation on the  16:17:00
16 iPhone that allows you to simply double tap any place
17 on a -- on an electronic document even if it didn't have
18 boxes of content and have it zoom. I'm just not
19 familiar enough with the operation of the iPhone to
20 know that. But that could have happened. The double  16:17:15
21 tap could have been what created this. It could just as
22 well have been a de-pinch, from what I can see here.
23 BY MR. MONACH:
24     Q. On this same slide in this Samsung document,
25 it says "Improvement. Need to supplement the  16:17:28

Page 196

1  double-tapping enlargement/shrinkage feature."  16:17:35
2      Do you see that?
3      A. I see that language on the bottom of 203937.
4      Q. Are you aware of whether any supplementation
5  of the double-tapping enlargement/shrinkage feature was  16:17:50
6  performed after the creation of this document?
7      MS. MAROULIS: Objection; assumes facts.
8  Calls for speculation. Lacks foundation.
9      THE WITNESS: Well, this -- what they're
10 talking about here is supplementing the double-tapping  16:18:14
11 enlargement/shrinkage feature. I'm unaware of any
12 supplement -- well, I'm not -- I'm unaware of any
13 activity that Samsung undertook in response to or in
14 regard to this -- to this chart on 203937. I'm unaware
15 of anything that they've done. Moreover, I'm not quite  16:18:39
16 sure what they mean by "supplement." It may mean that
17 they have other features that they want to include. But
18 if it's -- if what this is talking about is tap to zoom,
19 that's -- again, that's not key to the '163. So I
20 don't -- I'm not sure.  16:19:05
21     But -- so I don't know. I don't know of any
22 supplementation that was performed. I don't know what
23 "supplementation" is referring to, what the nature of it
24 might be. Just seems as though they have decided that
25 there is something that needs to be done to their  16:19:18

Page 197

1  double-tapping enlargement shrinkage feature. But it's  16:19:21
2  unclear how -- what it was and if it was related at all
3  to what the iPhone did. I don't know.
4  BY MR. MONACH:
5      Q. Could you turn to page 72 of your infringement  16:19:30
6  rebuttal report at paragraph 421, please.
7      A. Page 72, did you say?
8      Q. Yes, sir.
9      A. Okay.
10     Q. In your paragraph 421, referring to this  16:19:59
11 document we've just been discussing, the 203937, is the
12 Korean language version of this document -- of the
13 document we were just discussing. You say, "My
14 understanding is, however, that the investigation of
15 this document is continuing, and I reserve the right to  16:20:25
16 supplement this report in the event further information
17 comes to light." Do you see that?
18     A. I do.
19     Q. So you submitted this report on -- I think it
20 was April 16 or something? April 16, right? So in the  16:20:41
21 intervening, roughly, three weeks, has more
22 investigation concerning this document been performed?
23     A. I'm unaware of any further investigation of
24 this document that has been performed. It was my
25 understanding that -- that some other work was going to  16:21:05

Page 198

1  be done or -- and I think it might have had to do with   16:21:08
2  translations. But I'm not -- I'm not sure. I just --
3  I'm not aware of any -- whether or not any work has been
4  done.
5      Q.  What did you mean by "the investigation of   16:21:19
6  this document is continuing"?
7          MS. MAROULIS: Objection; asked and answered.
8          THE WITNESS: So my understanding -- in other
9  words, information supplied to me by other attorneys is
10 that investigation of this document is continuing. It   16:21:31
11 is -- I'm unaware of what the investigation or what kind
12 of investigation it is comprised of. But I
13 understand -- I understood at the time and I have no
14 reason to believe that that -- anything different now,
15 that the investigation of this document is continuing.   16:21:47
16 BY MR. MONACH:
17     Q.  But you haven't received any additional
18 information about it; is that correct?
19     A.  I believe that's correct. I -- no, I know
20 that that's correct. I haven't received any other   16:21:57
21 information.
22         MR. MONACH: Thank you. Let's mark as
23 Exhibit 17, Appendix 7 from your invalidity report.
24             (Whereupon Exhibit 17 marked
25              for identification.)   16:22:24

Page 199

1  BY MR. MONACH:   16:22:24
2      Q.  Mr. Gray, is what we've marked as Exhibit 17
3  Appendix 7 to your invalidity report dealing with the
4  '163 patent?
5      A.  Appendix 7 -- Exhibit 17 -- deposition Exhibit   16:23:06
6  17 which is Appendix 7 -- was labeled "Appendix 7" does
7  appear to be Appendix 7 to my invalidity report.
8      Q.  And this deals with a computer program known
9  as LaunchTile or XNav; is that correct?
10     A.  Right. It is. It's a system.   16:23:34
11     Q.  It's a program that runs on a Hewlett-Packard
12 Pocket PC; is that right?
13     A.  I think it ran on -- well, some versions run
14 on Hewlett-Packard Pocket PC; there were some versions
15 that ran on a Sony device of some kind. But it was --   16:24:00
16 they were both portable electronic devices.
17     Q.  Did you personally operate the LaunchTile or
18 XNav program, or did you just see videos of other people
19 using the program, or neither?
20     A.  I think I -- I think I used both programs.   16:24:22
21 I'm kind of forgetting now. Yeah, I think I used
22 both of -- I think -- excuse me. I think I used XNav on
23 a Sony device. And I believe I used LaunchTile on -- on
24 a -- on one of these litmus paper pocket PCs. I think
25 that's true.   16:24:45

Page 200

1      Q.  Had you used either XNav or LaunchTile before   16:24:47
2  you got involved as a consultant in this case?
3      A.  I don't recollect having used them -- using
4  either LaunchTile or XNav prior to becoming a consultant
5  on this case, no.   16:25:07
6      Q.  What is the World view? And I'll just call it
7  LaunchTile. If there's any material difference for
8  XNav, then please explain it in response to the
9  question. Okay?
10     A.  That's fine with me.   16:25:23
11     Q.  All right. In LaunchTile is there a view
12 called the World View?
13         MS. MAROULIS: Objection; vague.
14         THE WITNESS: Yes, in LaunchTile the -- there
15 is a view that is referred to as the world view.   16:25:36
16 BY MR. MONACH:
17     Q.  What is that?
18     A.  The world view is a structured electronic
19 document that is a 6-by-6 matrix of structured
20 electronic documents that are shown -- or that -- boxes   16:25:51
21 of content, really, but they are structured electronic
22 documents -- that is shown on the high-level user
23 interface of the device. So if you look on page 2 of
24 Exhibit 17, there's a -- there are pictures of two
25 different -- there are two different depicts of the   16:26:18

Page 201

1  world view --   16:26:22
2      Q.  All right.
3      A.  -- which is 6-by-6 matrix.
4      Q.  And correct me if I misunderstood you. Did
5  you testify that the 6-by-6 world view is itself a   16:26:29
6  structured electronic document?
7      A.  Yes. That is my testimony, that the -- that
8  the 6-by-6 world view is a structured electronic
9  document comprised of structured electronic documents.
10     Q.  So it's your testimony that these individual   16:26:59
11 tiles in the world view are not merely boxes of content,
12 but they are separate structured electronic documents
13 themselves; is that right?
14     A.  In my view that these are -- that the tiles
15 are both boxes of content -- boxes of content, and as   16:27:26
16 well as structured electronic documents.
17     Q.  Is there any support you're aware of in the
18 '163 patent that plurality -- the plurality of boxes of
19 content in a structured electronic document can
20 themselves be structured electronic -- separate   16:27:54
21 structured electronic documents?
22     A.  Is there any -- would you repeat that, please?
23     Q.  Yeah. Is there any support you're aware of in
24 the '163 patent that the boxes of content in a
25 structured electronic document can themselves be   16:28:15

```
                                                      Page 234
 1              INDEX TO EXAMINATION
 2
 3         WITNESS: STEPHEN GRAY, VOLUME I
 4
 5    EXAMINATION:                          PAGE
 6    BY MR. MONACH                          6
 7
 8              INDEX TO EXHIBITS
 9           STEPHEN GRAY, VOLUME I
10        Apple Inc. vs. Samsung Electronics Co.
11
12
13    PLAINTIFF'S                          PAGE
14
15    Exhibit 1    Document titled "Expert Report of   5
                   Stephen Gray, Regarding
16                 Invalidity of U.S. Patent Nos.
                   7,844,915 and 7,864,163
17
      Exhibit 2    Document titled "Rebuttal Expert   15
18                 Report of Stephen Gray Regarding
                   Non-Infringement of Asserted
19                 Claims of U.S. Patent Nos.
                   7,844,915 and 7,844,16
20
      Exhibit 3    Document titled "Appendix 1" from  17
21                 Mr. Gray's invalidity report
22    Exhibit 4    Document titled "Appendix 2"       18
23    Exhibit 5    Document titled "Expert Report of  34
                   Karan Singh, Ph.D. Regarding
24                 Infringement of U.S. Patents Nos.
                   7,864,163, 7,844,915 and
25                 7,853,891"
```

```
                                                      Page 235
 1    Exhibit 6    Document titled "Exhibit 17,"      36
                   from the Singh infringement
 2                 report
 3    Exhibit 7    Document titled "Samsung's Patent  70
                   Local Rule 3-3 and 3-4
 4                 Disclosures"
 5    Exhibit 8    Document titled "Exhibit J-1,      72
                   Samsung's Invalidity Claim Charts
 6                 for MERL DiamondTouch Table
                   System"
 7
      Exhibit 9    Document titled "Appendix 3," to   74
 8                 Mr. Gray's invalidity report
 9    Exhibit 10   Document titled "DiamondTouch: a   83
                   Multi-User Technology," by Dietz
10                 and Leigh
11    Exhibit 11   Document titled "Exhibit M," to    95
                   Mr. Gray's invalidity report
12
      Exhibit 12   U.S. Patent 7,844,915             103
13
      Exhibit 13   Document titled "Appendix 4," to  140
14                 Mr. Gray's invalidity report
15    Exhibit 14   Document titled "Appendix 5"      145
16    Exhibit 15   U.S. Patent 7,864,163             148
17    Exhibit 16   Collection of certified           188
                   translated Korean documents
18
      Exhibit 17   Document titled "Appendix 7,"     198
19                 from Mr. Gray's invalidity report
20    Exhibit 18   Document titled "Appendix 8,"     217
                   from Mr. Gray's invalidity report
21
      Exhibit 19   Document titled "Exhibit DD,"     226
22                 from the Robbins patent
23
24
25
```

```
                                                      Page 236
 1    NAME OF CASE:  Apple Inc. v Samsung Electronics Co.
 2    DATE OF DEPOSITION:  Friday, May, 4, 2012
 3    NAME OF WITNESS:  STEPHEN GRAY
 4    Reason Codes:
 5       1. To clarify the record.
         2. To conform to the facts.
 6       3. To correct transcription errors.
 7    Page _____ Line _____ Reason _____
      From _____ to _____
 8
      Page _____ Line _____ Reason _____
 9    From _____ to _____
10    Page _____ Line _____ Reason _____
      From _____ to _____
11
      Page _____ Line _____ Reason _____
12    From _____ to _____
13    Page _____ Line _____ Reason _____
      From _____ to _____
14
      Page _____ Line _____ Reason _____
15    From _____ to _____
16    Page _____ Line _____ Reason _____
      From _____ to _____
17
      Page _____ Line _____ Reason _____
18    From _____ to _____
19    Page _____ Line _____ Reason _____
      From _____ to _____
20
      Page _____ Line _____ Reason _____
21    From _____ to _____
22           _____
23                 STEPHEN GRAY
24
25
```