# Exhibit 14

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
14 INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                UNITED STATES DISTRICT COURT

17         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18

| | |
|---|---|
| 19  APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| 20               Plaintiff, | **SAMSUNG'S SUPPLEMENTAL AND AMENDED OBJECTIONS AND RESPONSES TO APPLE'S ELEVENTH SET OF INTERROGATORIES** |
| 21         vs. | |
| 22  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | |
| 23  ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | |
| 24  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 25               Defendant. | |

1  affirmative defense before Apple has completed providing discovery regarding the validity of its
2  trademarks and trade dress.
3       Subject to the foregoing general and specific objections, Samsung responds as follows:
4  Samsung believes that Apple's alleged marks and alleged trade dress are not valid because of, *inter*
5  *alia*, the functional elements of the asserted marks and trade dress.  Samsung hereby incorporates
6  by reference its response to Interrogatory No. 40, set forth below, regarding the functionality of
7  elements of Apple's alleged marks and trade dress.  Samsung also believes that Apple's alleged
8  marks and alleged trade dress lack distinctiveness.  Samsung hereby incorporates by reference its
9  response to Interrogatory No. 41, set forth below, regarding the lack of distinctiveness of Apple's
10 alleged marks and alleged trade dress.
11      Additionally, Samsung filed an Answer, Affirmative Defenses, and Counterclaims on June
12 30, 2011 which describes in detail, based upon information then known to Samsung, the factual
13 bases for every affirmative defense that Samsung has asserted in this lawsuit.
14      Finally, Samsung's investigation is ongoing and Samsung will supplement this
15 interrogatory after a reasonable investigation and further discovery from Apple.  Samsung will
16 also detail the bases for this affirmative defense in its forthcoming expert reports.
17 **INTERROGATORY NO. 40:**
18      Describe in detail all bases for Samsung's Fifth Affirmative Defense that Apple's "claims
19 made in the Complaint and the relief sought therein are barred, in whole or in part, on the basis
20 that the alleged marks at issue, the alleged trade dress at issue, the Apple Design Patents, and the
21 use of said marks, said trade dress and said Apple Design Patents are functional." Please also
22 identify all documents and things relating to your response, and any persons with knowledge
23 regarding your response.
24 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 40:**
25      In addition to its General Objections above, which it hereby incorporated by reference,
26 Samsung objects to this interrogatory on the grounds that it is vague, ambiguous, overbroad, and
27 unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence.
28 Samsung further objects to this interrogatory to the extent that it seeks to elicit information subject

1 to and protected by the attorney-client privilege, the attorney work-product doctrine, the joint
2 defense privilege, the common interest doctrine, and/or any other applicable privilege or
3 immunity.  Samsung further objects to this interrogatory to the extent it prematurely calls for
4 expert testimony or opinions at this stage of the litigation.  Samsung will provide such contentions
5 in accordance with the Court's Minute Order and Case Management order, dated August 25, 2011.
6 Samsung further objects on the basis that and to the extent that this interrogatory calls for
7 information that is available in Samsung's Opposition to Apple's Motion for a Preliminary
8 Injunction.

9     Subject to the foregoing general and specific objections, Samsung responds as follows:
10 At least the following elements of Apple's Asserted Design Patents, alleged marks, and alleged
11 trade dress for electronic devices are functional for the following reasons:

- Overall industrial design – As Apple's lead designer publicly stated with regard to the iPhone, everything in the design defers to the display, which is the primary means of interacting with the devices.  A design that defers to the display is functional because it maximizes the purpose of the device.

- Lack of Ornamentation – The lack of ornamentation is functional because it reduces clutter that might distract from the display, which is the primary means of use of the device.  A lack of ornamentation is also fundamentally unprotectable as it reflects the absence of "ornamental" design, which is what design patent law protects.

- Surface Flatness – The flat surface is functional because having a single surface minimizes the chances of dust or water encroachment and makes it easier to keep the surface clean.  Further, the lack of raised keys or buttons reduces the chance of inadvertent transmissions from such keys.  The flat surface is functional because the device employs touch input as the primary input method, and in order for human fingers to glide over the glass surface, it makes sense to make the surface flat to reduce the stress on the fingers.  The touch sensors that are underneath the glass covering also requires the glass to be flat, as the sensors need the uniform

1    thickness of the glass to function correctly.  Also, the transparent glass covering on
2    top of the display needs to be flat so that the display will be shown without any
3    distortion created by an uneven surface.

4   • Surface Transparency – Any permanent covering over a display screen must be
5    transparent to allow for viewing of the underlying screen.

6   • Blackness of Surface – Black is a particularly useful color for the surface of a
7    mobile device because it efficiently hides the wiring and electronic components
8    underlying the surface; it makes it easier to determine if the display of the device is
9    turned on or off; it minimizes the appearance of the phone, making it seem smaller
10   and less prominent than a bright color would; and it provides a sharply-defined
11   contrast to edge of the screen that helps the content of the display screen stand apart
12   from whatever context the device is in.  The strong contrast also helps increase the
13   saturation of the colors of the display screen, creating a finer impression of the
14   quality of the display screen.

15  • Rectangular Shape of the Device – The rectangular shape follows naturally from
16   the standard shape for reading media and viewing screens, and from the LCD
17   components used in electronic devices.  Thus, to eliminate wasted "space" on the
18   device, the functional solution is a design in which components, such as speaker
19   and antennae, are situated around the display screen, which results in substantially
20   similar shape as the display screen.  Further, the rectangular shape is a convenient
21   shape for being held by a human hand, and the devices are proportioned for their
22   intended uses by a wide variety of users.

23  • Inset Display Screen – An inset display screen is functional because display screens
24   for mobile devices require active components and wiring, including components
25   that activate the display.  These components force the actual size of the glass
26   covering the display to be slightly larger than the active display screen area.  The
27   space of the borders above or below the display screen accommodates the
28   controller components.  In a phone, placing these components to the right and/or

left of the display screen instead of below and above it would result in a phone device with an unnecessarily wide body and an awkward orientation for holding a phone.  The side borders are also necessary to hide some of these components in a minimum amount of space.  It is not feasible to eliminate the side borders altogether, or widen the side borders without adding to the width of the phone or reducing the size of the display screen.  Further, standard display screens for mobile devices are made of a relatively fragile material that needs to be protected.  To be a viable commercial product, a mobile device needs to tolerate, to some extent, drops and casual hits.  Maintaining a border between the display and the exterior surface of the device functions to protect the display by absorbing the energy of such impacts directly.

- Centered Display Screen – A centered display screen is functional because it enables the user to easily use the device with any of its four edges oriented on top, without suggesting to the user any specific preferred orientation.  The rectangular shape of the display screen also permits information displayed to be orgainized easily into a standard matrix format of rows and columns, which can be reconfigured for vertical or horizontal viewing.  This display format is compatible with existing page-oriented metaphors that are easily understood by users.  The rectangular display and active input area being centered in the rounded rectangular device with significant borders on either end allows clear and unimpeded view and access to the display using a variety of different grips and associated data entry methods that are preferred by different users.

- Rounded Corners – Rounded corners eliminate snagging on clothing and bags, and reduce the risk of injury to the user.  Further, rounded corners are more comfortable to hold in the hand or place against the ear.  The designs specifically eliminate ergonomic stresses in the interface between the device and the user.  Rounded corners in conjunction with good proportions for being held in human hands reduces misuse and user errors due to accidental drops of snagging catching.

1      Rounded corners also make the device more durable.  Pointed or sharp corners on
2      designs are mechanical weak points and they may bend, snag, or break with the
3      application of relatively little force.  Rounded corners, on the other hand, are more
4      robust and less likely to break.  In addition, rounded corners are easier and more
5      reliable to manufacture.

6  • Shape and Orientation of Receiver Hole (i.e., Ear Hole) – Horizontal receiver
7      openings are commonly used because they enhance the sound leaving the slot.
8      Slim horizontal receiver hole shapes also help minimize the overall length of
9      phones without requiring a smaller active area  Relatively thin horizontal receiver
10     holes also compromise the structural integrity of the front face less than larger
11     holes.  The rounded edges of the hole are naturally formed by the rotating action of
12     the drill bit used to create the holes.

13 • Placement of Receiver Hole – The placement of the receiver hole on the upper
14     portion of the front face of a phone naturally aligns with the human ear when the
15     phone is held to the face.  The distance from the bottom of the device to the
16     receiver hole is closely aligned with the average distance from mouth to ear.
17     Horizontally symmetrical placement facilitates use of the phone in either the right
18     or left hand, and because it is elongated it allows the user some flexibility in where
19     he or she holds the phone, such that part of the opening will be over the center of
20     the ear even if the user moves the device from side to side during use.  Placement
21     of the receiver hole also must align with the companion receiver and speaker unit
22     within the phone.  Given the size of those components, a receiver hole may not fit
23     properly against the very top edge of the phone, particularly one with a narrow rim.

24 • Borders Around the Screen – The borders around the display screen are also
25     functional elements of the design.  The borders surrounding the screen act as a
26     mask to hide components, including cables, connectors, glue, and the style or
27     manner of attachment used to hold the screen in place.  Unless these components
28     could be eliminated, the borders cannot be eliminated.  Nor is there much leeway

1     for adjusting the respective sizes of the borders without creating an awkward shape
2     for using the device or needlessly increasing its size.  As stated above, these
3     borders allows clear and unimpeded view and access to the display while using a
4     variety of different grips and associated data entry methods that are preferred by
5     different users.  Further, the borders allow a user to rest his or her fingers along the
6     edge of the device without touching and potentially inadvertently activating the
7     active area of the screen.

8   • Touchscreen Size and Placement – The size and placement of the display screen is
9     also a functional aspect of the design.  Touchscreen technology allowed for the
10    removal of buttons from the front surface to eliminate visual clutter.  Vertical and
11    horizontal placement of the touchscreen also helps minimize the overall size given
12    natural and necessary component placement.  Horizontally symmetrical placement
13    also facilitates use of the device in either the right or left hand.

14  • Bezel – A bezel is functional in that it surrounds the front face of the device and
15    forms one of the main structural elements of the devices.  The bezel is used both to
16    connect internal components together, and to join and hold together the front and
17    back pieces of the device.  It also serves to protect the front surface, the display
18    screen of the device, and the cover glass from various kinds of damage.

19  • Rim Around the Front Surface – A rim is functional because it holds in place the
20    front surface.  Because leaving any part of glass edges exposed would expose the
21    front surface to cracking or scratching, the rim surrounding the front surface
22    functions to protect it.

23  • Thinness – The relative thinness of an electronic device's depth is functional
24    because being thin facilitates the mobility and portability of the tablet.

25  At least the following elements of Apple's Asserted Design Patents, alleged marks, and
26  alleged trade dress for graphical user interfaces are functional for the following reasons:

27  • Icon Grid – The grid of icons is functional because it serves as an organizational
28    structure that allows a user to see and understand information quickly.  A

1 rectangular screen naturally allows a matrix of readily-recognized columns and
2 rows from either a vertical or horizontal orientation.  The spacing of the icons
3 within the grid is functional because it allows a human finger better to select only a
4 single icon at a time.  The total number of icons in the grid is kept to a manageable
5 number for ease of use.   Too many icons would tend to interfere with the orderly
6 screen symmetry that users appreciate.

- Size and Shape of the Icons – The size and shape of the icons are functional because they allow maximum number per screen while allowing a human finger better to select only a single icon at a time.  The rounded corners are also functional in permitting closely-spaced icons by preventing accidental activation of adjacent icons.  Round cornered squares are also very commonly used in signage, so it is a familiar format to users.  Furthermore, users are more likely to be comfortable tapping soft cornered square icons.

- Icons – The icons themselves are functional because they are metaphors for the function the user wishes to access, using universal imagery to convey meaning to the broadest possible audience.  The asserted icons use symbols that most users will interpret correctly and that no users will find offensive.  The icons are descriptive of the applications and/or features that they activate, thus they are functional.  The central function of the icons is to communicate information to the user.  Further, the use of multiple colors in the icons is functional because it differentiates the functions of the icons and differentiates one icon from those adjacent to it.

- Words Under the Icons – The words underneath each icon reinforce the functionality of that icon by providing additional description of it.  Redundancy of messaging through both images and words is a classic functional element in signage and labeling.

- Dots on the Lower Portion of the Screen – The dots at the bottom of the screen are functional because they communicate to the user which page he is on using universal symbols in a minimal amount of space.

1    • Dock – The dock of frequently- used icons that is always visible from a set of menu
2       screens is functional because it allows the user to keep the most frequently-used
3       icons in a location that can be quickly accessed from each page.  Further, the
4       placement of the dock on the bottom end of the display screen is the most
5       convenient location to access when operating the device with a single hand

6    Numerous documents produced by Apple and Samsung, as well as deposition testimony by
7 both Apple and Samsung witnesses support the functionality of Apple's designs.

8    In addition, Samsung incorporates by reference the Declaration of Itay Sherman in Support
9 of Samsung's Opposition to Apple's Motion for a Preliminary Injunction (Dkt. No. 172).
10 Samsung also filed an Answer, Affirmative Defenses, and Counterclaims on June 30, 2011 which
11 describes in detail, based upon information then known to Samsung, the factual bases for every
12 affirmative defense that Samsung has asserted in this lawsuit.

13    Finally, Samsung's investigation is ongoing and Samsung will supplement this
14 interrogatory after any further investigation and further discovery from Apple.  Samsung will also
15 detail the bases for this affirmative defense in its forthcoming expert reports.

16 **INTERROGATORY NO. 41:**

17    Describe in detail all bases for Samsung's Seventh Affirmative Defense that the "claims
18 made in the Complaint and the relief sought therein are barred, in whole or in part, on the basis
19 that the marks and alleged trade dress at issue are generic."  Please also identify all documents and
20 things relating to your response, and any persons with knowledge regarding your response.

21 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 41:**

22    In addition to its General Objections above, which it hereby incorporated by reference,
23 Samsung objects to this interrogatory on the grounds that it is vague, ambiguous, overbroad, and
24 unintelligible, and not reasonably calculated to lead to the discovery of admissible evidence.
25 Samsung further objects to this interrogatory to the extent that it seeks to elicit information subject
26 to and protected by the attorney-client privilege, the attorney work-product doctrine, the joint
27 defense privilege, the common interest doctrine, and/or any other applicable privilege or
28 immunity.  Samsung further objects to this interrogatory to the extent it prematurely calls for

| | | |
|---|---|---|
| 1 | DATED: March 7, 2012 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | |
| 5 | | By  */s/ Victoria F. Maroulis* |
| 6 | | Charles K. Verhoeven |
| | | Kevin P.B. Johnson |
| 7 | | Victoria F. Maroulis |
| | | Michael T. Zeller |
| 8 | | Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |