# EXHIBIT O

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE Inc.,<br><br>                Plaintiff,<br>   v.<br><br>SAMSUNG ELECTRONICS CO., Ltd,<br>SAMSUNG ELECTRONICS AMERICA, Inc.,<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA, LLC.<br><br>                Defendants. | **SUBJECT TO PROTECTIVE ORDER HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**<br><br>No. 11-cv-01846-LHK<br><br><br>**EXPERT REPORT OF VINCENT E. O'BRIEN**<br>*March 22, 2012* |

Subject to Protective Order
Contains Highly Confidential – Attorneys' Eyes Only Information

33. This factor does not affect my consideration of a reasonable royalty rate.

## 4.2 GEORGIA-PACIFIC FACTOR 2

*The rates paid by the licensee for the use of other patents comparable to the patent in suit.*

34. I am aware that, in its licensing discussions with Samsung, Apple offered Samsung a $6/unit discount on the sales of Samsung phones for Apple's use of a cross license.[23] This license presumably represents an amount that Apple was willing to credit Samsung for the ability to use all of the Samsung patents – including the Feature Patents and the other patents-in-suit.

35. Apple has produced documents that purport to show its in-licensing activity for the iPhone, iPad and iPod. However, because of the fragmented and unreliable nature of the licensing documents produced, I have not drawn any general conclusions from these documents. To date, Apple has produced two types of documents relating to in-licensing activity: royalty reports and license agreements. However, for the vast majority these don't match. Apple has produced either licenses or royalty reports for 116 licensors. Of these 116, there are only 16 for which Apple has produced both the royalty report information as well as the underlying license. This leaves 100 licensors for which Apple produced either royalty report data or a copy of the license but not both. The bulk of the 100 (73) are licensors listed on the royalty report for which Apple has not produced the corresponding license. There are another 27 licenses for which Apple has not produced any royalty report data. Furthermore, I have seen no evidence of patent license agreements in which Apple is the licensor.

36. Furthermore, the reliability and accuracy of Apple's documents relating to the royalty reports are subject to doubt because I have seen five different iterations of them. The first two reports, Bates numbered APLNDC0001772330-2340 and

---

[23] APLNDC00010900.

Subject to Protective Order
Contains Highly Confidential – Attorneys' Eyes Only Information

APLNDC-Y0000051350-1356, are similar but contained no information about the iPod.  Weeks later, on March 8, 2012, I saw a drastically different series of Apple's royalty reports, Bates numbered APLNDC-Y0000232396-2430, which more than doubled the number of licensors, added hundreds of millions in royalty payments for 2011Q2 through 2012Q1, added hundreds of millions of dollars in iPhone and iPad royalty payments for the same time periods covered by the earlier versions, and added licensing and royalty information for the iPod.

37.  During the week of March 12, 2012, after studying and analyzing the most recent royalty reports, I learned that Apple had "clawed back" all of its previously produced royalty reports and that all copies of them had to be destroyed.  About a week later, I reviewed yet another series of Apple's "replacement" royalty reports, Bates numbered APLNDC-Y0000232447-2454.  I was unable to do a side-by-side comparison, but it appears there are significant differences between these reports and Apple's prior reports.  Moreover, these reports contained obvious errors.  Finally, about a week later and the night before my report was due, Apple produced yet another series of royalty reports, Bates numbered APLNDC-Y0000232396-2430.

38.  Thus, while this production informs us that Apple has taken considerable in-licenses and paid significant royalties my ability to determine comparable licenses is limited.  Through the end of 2011, Apple has paid at least $1.4 billion in lump-sum and running royalties to at least 116 different licensors.[24]  The range in royalties paid to an individual licensor is between $3,200 and $427 million.  Because the materials produced by Apple are obviously incomplete, one cannot rule out that the sample is biased.  See **Exhibit 4** for more detail.  If a more complete production of licensing or other financial documents is forthcoming, I will review them and may revise my analysis accordingly including the royalty rate.

---

[24]  Exhibit 4.

Subject to Protective Order
Contains Highly Confidential – Attorneys' Eyes Only Information

the average amount consumers who use the Feature Patent technology would be willing to pay. This amounts to $0.30 per Feature Patent per user ($0.99 multiplied by 30%).

70. As shown in Table 4 above, between 27% and 65% of the survey respondents indicated that they used the Feature Patent technologies – depending on the device and the technology. These are the ones who give the patents value and create the surplus for Samsung and Apple to divide. However, the license agreement would impose a running royalty rate on all of Apple's devices capable of infringing. Therefore, the royalty rate would be reduced by the percentage of people using the Feature Patent technology. For example the royalty rate for the use of the '460 Email Photo patent on the iPhone is $0.99 x 30% x 63.9% or $0.19 per unit. The resulting royalty rates are described in the table below. See **Exhibit 5** for more detail.

Table 6: Royalty Rates

| Patent | Description | iPhone | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | $0.19 | $0.16 | $0.13 |
| '893 | Photo Gallery Bookmark | $0.12 | $0.15 | $0.11 |
| '711 | Music in Background | $0.19 | | |
| '871 | Window Dividing | $0.13 | $0.11 | $0.08 |

## 5. CALCULATIONS

71. I understand that the time period over which Samsung can collect damages for Apple's use of the Feature Patents is limited to the time during which Samsung gave notice to Apple of the patents. I understand that Samsung had no obligation to mark on the '460 patent, therefore, notice was not required. I further understand that Apple was notified of the '871 and '055 patents on September 9, 2010[50] and Apple was notified of the '893 and '711 patents on the date Samsung filed its countersuit, June 30, 2011.[51]

---

[50] Deposition of Richard J. Lutton, July 26, 2011, p. 159 and Exhibit 3.
[51] Samsung Entities' Answer, Affirmative Defenses, and Counterclaims to Apple Inc.'s Amended Complaint. June 30, 2011

Subject to Protective Order
Contains Highly Confidential – Attorneys' Eyes Only Information

## 6. SIGNATURE

76. I certify that, to the best of my knowledge and belief:
- The statements of fact in this report are true and correct.
- The reported analyses, opinions and conclusions are limited only by the reported assumptions and are my personal, unbiased and professional analyses, opinions and conclusions.
- I have no personal interest or bias with respect to the parties involved.
- My compensation is not contingent on an action or event resulting from the analyses, conclusions or opinions of this report.

_____
Vincent E. O'Brien                                           March 22, 2012