HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OBJECTIONS AND RESPONSES TO OBJECTIONS RE: TRIAL EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 14, 2012** |

1    I.      **GREGORY JOSWIAK**

2            A.      **Objections to Samsung's Deposition Designations**

3            ***G. Joswiak Deposition Transcript at 238:1-238:10.***  Samsung's designation addresses an

4    alleged absence of consumer confusion as to source of Apple and Samsung's smartphones.

5    Twice now, the Court has held that this issue is irrelevant.  (Dkt. No. 1157 at 6; Dkt. No. 1456

6    at 2.)  In fact, the Court previously excluded nearly identical testimony appearing on slide 38 of

7    Samsung's proposed opening slides.  (Dkt. No. 1456 at 2; *see also* Hung Decl. Ex. 1.)  There is

8    no basis for Samsung to seek reconsideration of the Court's prior orders.

9            As the Court previously found, evidence of the alleged absence of consumer confusion is

10   not pertinent to Apple's trade dress dilution claims.  Regarding the iPhone-related trade dresses,

11   Apple asserts only a claim for trade dress dilution—not for trade dress infringement.  Samsung

12   thus can only offer the designated testimony to rebut Apple's claim for dilution.  As this Court

13   has already held, the "absence of confusion is not probative of lack of dilution."  (Dkt. No. 1157

14   at 6; *see also* Dkt. No. 1456 at 2 ("Because phone confusion survey evidence is not legally

15   relevant to Apple's dilution claim, the evidence is inadmissible pursuant to FRE 403.").)

16           The relevant legal standard for dilution is whether consumers are likely to "associate"

17   Samsung's smartphones with Apple, not whether consumers are likely to "confuse" Samsung

18   smartphones with Apple's iPhone devices.  *See* 15 U.S.C. § 1125(c)(2)(B) (defining dilution as an

19   "association arising from the similarity between a mark or trade name and a famous mark that

20   impairs the distinctiveness of the famous mark").  Evidence of a lack of confusion is not

21   probative of the likelihood of dilution because a consumer may associate the trade dress with two

22   different sources regardless of whether she is confused.  Indeed, "[i]njury from dilution usually

23   occurs when consumers aren't confused about the source of a product."  *Mattel, Inc. v. MCA*

24   *Records, Inc*., 296 F.3d 894, 903 (9th Cir. 2002).  While proof that confusion is likely may

25   evidence an association between products, the converse is not true.  *See Jada Toys, Inc. v. Mattel,*

26   *Inc.*, 518 F.3d 628, 634 (9th Cir. 2007).

27

28

Given its lack of probative value, this testimony will likely confuse the jury and unfairly prejudice Apple.  Samsung's designation of this testimony thus should be excluded under Rules 402 and 403 of the Federal Rules of Evidence.

**B.**     **Responses to Samsung's Objections to Apple's Counter-Designations**

If the testimony referenced above is not excluded, then Apple's counter-designation is well within its scope.  Samsung has (improperly) designated testimony purporting to show an absence of confusion in an attempt to rebut Apple's trade dress dilution claim.  Apple's counter-designated testimony establishes that Samsung has caused dilution of Apple's iPhone trade dress and that Apple has suffered harm as a result.  Apple's counter-designation is therefore directly responsive to Samsung's designated testimony.

## II.  TIM SHEPPARD

### A.  Objections to Samsung's Direct Examination Exhibits

*DX616.*  DX616 is irrelevant and should be excluded under Rule 402.  Apple is at a loss to understand what alleged relevance DX616 could have to this case.  It purports to be a collection of shipping records dating back to December 2006 – far earlier than any of the events at issue in this lawsuit.  The records identify the shipped product as SGH-T319, an old flip-style cellular phone.  (*See* DX616.001; Hung Decl. Ex. 2.)  Neither party contends that the SGH-T319 practices or dilutes any intellectual property at issue in this case.  (*See* Hung Decl. Ex. 3 at 1-4; Hung Decl. Ex. 4 at 5-8)

Moreover, shipping records for this old and irrelevant phone do not evidence the transportation, importation, or sale of any accused device.  As it would confuse the jury and waste time, the DX616 should be excluded under Rule 403.

***SDX3960.003:  FRE602, Lack of Foundation.***  Mr. Sheppard is an STA finance professional and can speak to STA's expenses.  SDX3960.003 is not related to STA's expenses. It is a document entitled "SEC Operating Expenses" and is specific to expense categories at ***SEC***, as listed on Samsung's financial spreadsheets.  It refers ***solely*** to "SEC," in contrast with the prior slide referring to STA's and SEA's expenses.

Mr. Sheppard has testified multiple times that he lacks personal knowledge of how SEC tracks and records its expenses.[1]  When Samsung first designated Mr. Sheppard as a Rule 30(b)(6) deponent on financial topics, Apple questioned Samsung whether Mr. Sheppard could speak on behalf of SEC, given his testimony.  (*See* Hung Decl. Ex. 5 at 2.)  Samsung promptly withdrew his 30(b)(6) designations specific to SEC, stating that Mr. Sheppard is "not a 30(b)(6) witness for Samsung Electronics Co., Ltd."  (*See* Hung Decl. Ex. 8 at 1.)  Mr. Sheppard then

---

[1] Hung Decl. Ex. 6 at 51:11-24 ("STA only has visibility . . . to our own financial statements.  I don't have visibility to – to the factories or supplies involved in – to those factories or movement of goods to the US."); *id.* at 128:25-129:23 (explaining his lack of visibility into SEC's costs or profit)); (Hung Decl. Ex. 7 at 15:6-24) ("Q: Are you able to speak on behalf of SEC in any way?  A: No."); *id.* at 39:23-40:10 ("Q: Was any document in the format of Exhibit 1920 [Samsung's financial spreadsheet] prepared in the ordinary course of business at SEC?  A: I have no personal knowledge of what's prepared at SEC.").

1  testified at his 30(b)(6) deposition that he could not answer questions about the operating expense

2  data within the SEC portion of Samsung's financial spreadsheets.[2]  SDX3960.003 lists as SEC

3  operating expense items the same line items about which Mr. Sheppard could not testify.  Having

4  repeatedly testified that he cannot speak about SEC's expenses, Mr. Sheppard cannot provide that

5  testimony now.

6  **B.    Responses to Samsung's Objections to Apple's Cross Examination Exhibits**

7  ***PDX62.2***.  PDX62.2 presents an annotated timeline of Samsung's production of financial

8  data.  The reliability of this data is highly relevant to Apple's damages claim. Apple has a right to

9  impeach Mr. Sheppard, to the extent he testifies about the reliability of Samsung's data, by

10  showing that, at every turn, Samsung produced financial data that contained errors, omitted

11  relevant data, and repeatedly had to be completely scrapped.

12  Apple's descriptions of Samsung's financial disclosures are drawn from undisputed facts.

13  Samsung has admitted to the Court that its February 3 spreadsheet contained errors and omitted

14  accused product data.  (Dkt. No. 801-3at 8  ("On February 28, 2012, Samsung produced a revised

15  spreadsheet . . . to add the 3G version of the Galaxy Tab 7.0 . . . and to correct a discrepancy in

16  the "Total" tab . . . .")  Samsung supplemented its production on February 10, but admitted that its

17  productions as of that date did not include all accused products.  (Hung Decl. Ex. 9 at 25:1-9 ("At

18  the time I wrote this declaration I believed that the GS – that this T-Mobile and AT&T devices

19  were included in the GS II data. . . . I subsequently found out the T989 had not been included and

20  was added later.").)  Samsung's February 28 production cured some of its prior errors, but a

21  Samsung executive removed crucial data relating to Samsung's manufacturing costs because he

22  thought "such a great level of detail should not be provided."  (Hung Decl. Ex. 10 at 62:3-4.)  On

23  March 8, Samsung produced yet another spreadsheet that introduced additional errors in its

24  expense data.  (Hung Decl. Ex. 11 at 282 ("[W]hat is your understanding as to why the data in

25
26  [2] Hung Decl. Ex. 7 at 134:7-18 ("Q: If you look at Exhibit 1922 and 1923, at line 20, there's an item that says others and a number of more going down to line 34.  Do you see that? A: Yeah, one of them stops at 33, and one of them goes to 34, yeah.  Q: Is it correct you are not here to speak on behalf of any Samsung entity with respect to the information that is found in those lines as to these spreadsheets?  A:  That is correct."); *see also* Hung Decl. Ex. 9 at 11:7-19.

those lines was excluded from the prior version of the spreadsheet produced on March 8?  . . . . A: While this information was transferred to the database, this information was excluded.".) Samsung's March 21 production fixed some of those errors, but introduced others.  (Hung Decl. Ex. 11 at 225-225 ("[I]s it correct that those columns were collapsed as a result of human error . . . . A:  Yes, I see that.").  Its March 29 production continued to omit data for certain accused products, including the Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy Tab 10.1 LTE.  (Dkt. No. 801-3 at 15 (admitting that Samsung withheld data relating to accused products Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy Tab 10.1 LTE)).  Finally, Samsung produced a completely new spreadsheet based on a new method on April 16 – more than a month after the close of fact discovery.  (Hung Decl. Ex. 12 at 278:21-279:9.)

Samsung cannot hide its own discovery misconduct.  The numerous errors in and omissions from Samsung's financial disclosures are important evidence about the reliability of the data that Samsung provided, which is a central disputed issue to damages.  This misconduct formed the backbone of the Court's April 23 Order sanctioning Samsung for discovery misconduct (although Apple omits the Order from the timeline).  (Dkt. No. 880 at 11-13.)  Apple should be able to question Mr. Sheppard about these errors if he testifies at trial about the reliability of Samsung's financial data.

The title of PDX62.2— "Samsung's Financial Disclosures"—is not misleading.  Samsung produced the disclosures identified in PDX62.2 to comply with the Court's discovery orders. They were key financial documents used by both parties' damages experts.  Samsung's financial spreadsheets are the most important element of "Samsung's Financial Disclosures."

1   **III.   MICHAEL WAGNER**

2       **A.      Objections to Samsung's Direct Examination Exhibits**

3       ***DX702.***  DX702 is a series of tables purporting to calculate the hypothetical time and cost

4   needed to design around Apple's '381, '915, and '163 patents.  Samsung is precluded from

5   providing evidence at trial to support them by the Court's June 19 Order, which provides, "As a

6   sanction for Samsung's extended non-compliance with the December 22 Order, for each of the

7   '381, '891 and '163 patents, Samsung may not offer any evidence of its design-arounds.  This

8   means no source code evidence, no non-source code evidence, no evidence of any kind, whether

9   for liability purposes or any other purpose."  (Dkt. No. 1106 at 3-4.)  No exceptions exist.

10          Further, DX702's calculations of the time and cost of designing around Apple's patents

11  lacks the necessary foundation for admission.  Michael Wagner, Samsung's damages expert, did

12  nothing to verify the information, and Mr. Wagner has acknowledged that he cannot provide the

13  opinions stated in DX702 until Samsung's witnesses lay an appropriate foundation.  In particular,

14  he *conceded that he could not offer these opinions* if he were to assume "that for each of the '381

15  and the '163 patent, that Samsung may not offer any evidence of its design-arounds, no evidence

16  of any kind, whether for liability or any other purpose."  (Hung Decl. Ex. 13 at 616:23-617:7.)

17  He stated:

18          As I testified in my deposition and I think I made clear in my reports, that I *can't*
            *independently verify these numbers*.  I believe that – that these numbers are
19          hypothetical numbers that would have to be introduced by my client.  If my client
            *does not or cannot present that information at trial*, I don't have any other basis
20          for the numbers.

21  (*Id.* at 617:12-617:18 (emphasis added).)  This statement echoes Mr. Wagner's prior testimony:

22          Q: Did you ask [Samsung] for any of those types of documents.

23          A. No, because again, on all of these design-arounds, it was my understanding
            that Samsung's counsel *was not looking to me to be the sponsor of these numbers*
24          *at trial*, and it's just an input to me.  It's an assumption, but *someone else needs to*
            *lay the foundation*.  And so whether they give me documents or other things is
25          really a waste of their time and money because I'm not going to be independently
            saying these numbers are accurate.
26

27          Q. And did you do anything to audit whether they're accurate?

28          A. Oh, clearly not.

1   (Hung Decl. 12 at 346:1-348:1 (emphasis added).)  Samsung's expert stated plainly, "Someone

2   else would have to lay the foundation for these numbers besides Mike Wagner" for his opinion to

3   be valid.  (*Id*. at 349:7-23.)

4       Any effort to lay a foundation for the time and cost of designing around Apple's utility

5   patents would now be untimely.  Samsung disclosed no witness on its will-call list or current

6   disclosures who can provide this information.

7       **B.**    **Responses to Samsung's Objections to Apple's Cross Examination Exhibits**

8       ***PX2317.42-43***.  PX2317 is a treatise co-authored by Mr. Wagner in which he takes

9   positions about how damages should be calculated with respect to subjects relevant to his

10  expected testimony, including the calculation of damages in a design patent case and calculations

11  of profits.  (PX2317.9-20, 24-43.)  Apple does not seek its admission.  Rather, to the extent

12  Mr. Wagner offers positions on these subjects that diverge from his treatise, Apple will use

13  DX2317 to impeach him.  Apple does not intend to use PX2317 to argue legal issues related to

14  patent damages.  It will be used to address issues of methodology and approach.

15      ***PDX 61.13***.  Demonstrative slide PDX61.13 is the same as PDX62.2, discussed above in

16  connection with Apple's cross-demonstratives for Mr. Sheppard.  It is not misleading,

17  argumentative, or prejudicial for all the reasons articulated above.

18      PDX61.13 adds timeline entries for Messrs. Musika's and Wagner's damages expert

19  reports.  This information is highly relevant.  First, it shows that Apple's expert only had access

20  to Samsung's erroneous and incomplete financial disclosures before submitting his initial expert

21  report (*see* PX180), and that Mr. Wagner is relying on data produced by a new method, untested

22  during discovery, that was provided 24 hours before he prepared his report (*see* DX 676).  The

23  jury should consider the reliability of Samsung's information and the rushed nature of Mr.

24  Wagner's report when weighing his testimony.

25      ***PDX 61.14***.  PDX61.14 quotes from the testimony of Jaehwang Sim, Samsung's 30(b)(6)

26  designee, with emphasis placed on the human errors made by a Samsung employee when

27  preparing Samsung's financial disclosures.  (*See* PDX61.14.)  Mr. Sim's testimony is highly

28  probative of the unreliability of Samsung's financial disclosures, which received minimal review

1    before they were produced.  (*See* Hung Decl. Ex. 10 at 53:18-54:7 ("Q:  What did you do to

2    review the first spreadsheet?  A:  I looked at it to – only to the level of whether the data was

3    comprised in the format that was desired. . . . Q:  For how long? . . . At most, perhaps an hour.").

4    Even after Apple pointed out errors in the data, Samsung still did not perform a review of the

5    spreadsheets.  (*See id*. at 62:10-14 ("Q: What did you do to review or check the second

6    spreadsheet?  A: My recollection is that that did not take place.").

7          Mr. Wagner considered Mr. Sim's March 10 and March 31 depositions when forming his

8    opinions and quoted both extensively in his report.  (*See*, *e.g.*, Hung Decl. 14 [Expert Report of

9    Michael Wagner] at ¶¶ 316 n. 656, 319 n.660, 321, 325 n.671, 329 n.674, 333 n.681.)  Using

10   Mr. Sim's testimony to cross-examine Mr. Wagner about his uncritical reliance on Samsung's

11   financial data is neither misleading nor argumentative.

12         The title of the demonstrative is all not misleading or argumentative.  It merely recites the

13   facts as described by Mr. Sim's deposition testimony.  Apple nevertheless has changed the title to

14   read, "BJ Kim Made Errors When Preparing Samsung's Financial Disclosures."

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.     **TONY BLEVINS**

    A.     **Objections to Samsung's Cross-Examination Exhibits**

Apple does not object to any of the materials that Samsung has disclosed for the cross-examination of Mr. Blevins.

    B.     **Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

*PDX59.*  PDX59 is a physical demonstrative exhibit—an iPhone 4 that has been disassembled so that Mr. Blevins, Apple's Vice President of Procurement, can open the phone to show the jury the baseband processor about which he will testify.

Samsung's only objection to PDX59 is that its disclosure was untimely and Apple should have disclosed it as a joint exhibit.  Apple, however, is offering PDX59 as a demonstrative exhibit.  In accordance with the schedule for the disclosure of direct and demonstrative exhibits adopted by the Court, Apple timely disclosed PDX59 on August 14.  (*See* Tr., Aug. 6, 2012, at 925:5-9 (adopting Apple proposal in Dkt. No. 1548 ("direct examination exhibits and demonstratives" disclosed two days before witness testifies)).)  Samsung inspected PDX59 (along with PDX60) that same night.  Notably, Samsung makes no objection that Apple's use of PDX59 will cause it any prejudice.  Nor could it.  PDX59 is no different than JX1003, another iPhone 4, except that it has been disassembled so that it can be opened.

*PDX60*.  PDX60 is a component of an iPhone 4—the main logic board—that contains the baseband processor about which Mr. Blevins will testify.  As with PDX59, Apple is offering PDX60 as a physical demonstrative exhibit and timely disclosed two days before Mr. Blevins is scheduled to testify.  And again, as with PDX59, Samsung makes no claim of any potential prejudice from Apple's use of PDX60.

1    **V.    GREG CHAPMAN**

2         **A.    Objections to Samsung's Cross-Examination Exhibits**

3         ***DX2642.***  Samsung seeks to introduce an irrelevant document through a witness who is

4    slated to testify about completely unrelated subject matter.  DX2642 is an article entitled "Apple

5    copies a bunch of features from Android, calls it iOS5 (Updated)" and is only one of several of

6    documents that Samsung appears to have printed from the Internet.[3]  The document bears no

7    Bates numbers and apparently has not been produced by Samsung in this action.  Any probative

8    value of this document is substantially outweighed by the risk of unfair prejudice, confusion of

9    the issues, misleading the jury, undue delay, and waste of time.  Fed. R. Evid. 403.  In fact, the

10   document has no apparent connection to Mr. Chapman's direct examination, which is expected to

11   cover the music playing software of the Apple products that have been accused of infringing

12   Samsung's '711 patent, and therefore can only be intended for questioning well beyond the scope

13   of Mr. Chapman's direct examination.

14        ***DX2524.***  DX2524 is a similarly irrelevant email from Steve Jobs to Jony Ive and Bas

15   Ording about using a "clickwheel-like control" on a cell phone, which no apparent connection to

16   Mr. Chapman (or the disclosed subject of his direct testimony) and that therefore should be

17   excluded under Fed. R. Evid. 403.  Mr. Chapman is not the author of the document, nor a

18   recipient, and the document does not relate to Mr. Chapman's direct examination testimony about

19   the operation of the Apple products that have been accused of infringing Samsung's patents.

20   DX2524 should be excluded, as beyond the scope of direct.  *See* Fed. R. Evid. 602.

21        **B.    Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

22        ***PDX56.***  Samsung objects to PDX56 under Fed. R. Evid. 701(c) as calling for expert

23   testimony.  PDX56 is a demonstrative prepared by Mr. Chapman (an Apple employee and fact

24   witness) to explain certain software programming in the accused Apple devices that he himself

25   was involved in writing.  The demonstrative reflects his own personal knowledge of Apple

26   software relevant to the claimed functionality in Samsung's '711 patent and is thus rationally

27        ---
          [3] Another of these documents, PX2401.002, references injunctions in other jurisdictions.

28

1   based on Mr. Chapman's experiences and perceptions as an employee at Apple.  PDX56 will be

2   offered in accordance with  Fed. R. Evid. 701(b) in that it is "helpful to clearly understanding the

3   witness' testimony or to determining a fact in issue."  Mr. Chapman's testimony will be based on

4   his own perceptions, recollections, impressions, and experience as an employee of Apple with

5   experience as an engineer in an accused functionality, and is thus entirely appropriate.

1

## VI.   PAUL DOURISH

2

### A.   Objections to Samsung's Cross-Examination Exhibits

3      ***DX2635.***  In response to Apple's objection, Samsung has agreed to use PX112 in place of

4      DX2635.

5

### B.   Responses to Samsung's Objections to Apple's Direct Examination Exhibits

6      ***PX 112 and PDX42.7 - PDX42.25***.  Without citing any rule of evidence, Samsung seeks

7      to preclude Dr. Dourish from offering an opinion that the KR '792 patent renders claim 10 of the

8      '893 patent invalid as anticipated or obvious.  Samsung's claim that Dr. Dourish failed to offer

9      "particularized" support for his opinion is without merit.

10         Unlike Samsung's expert Dr. Yang's cursory, footnote analysis of "applet", Dr.  Dourish

11     devoted 23 paragraphs of his expert report to a discussion of the KR '792 patent and a detailed

12     explanation of how it anticipates claim 10 and the other asserted claims of Samsung's '893

13     patent.  (*See* Kolovos Decl. Ex. 3, Dr. J. Paul Dourish Initial Expert Report at ¶¶ 108-131.)

14     Dr. Dourish also attached a claim chart further detailing his KR '792 patent anticipation analysis.

15     (Kolovos Decl. Ex. 4, Dr. J. Paul Dourish Initial Expert Report, Ex. 3C, pp. 15-20 (for claim 10).)

16     PDX42.7–PDX42.25 provide verbatim excerpts from Dr. Dourish's report and claim chart to

17     allow him to provide clear testimony to the jury.  Dr. Dourish also provided an 18-paragraph

18     discussion of how the prior art, including the KR '792 patent, renders the claims of the '893

19     patent obvious.  (*See* Kolovos Decl. Ex. 3, Dr. J. Paul Dourish Initial Expert Report at ¶¶ 157-

20     175.)  He detailed his opinion that the KR '792 patent renders the asserted claims obvious in

21     combination with the knowledge of one of ordinary skill in the art (*see id.* at ¶ 157), quoting

22     directly from the KR '792 patent when explaining the design choices one skilled in the art would

23     identify.  (*See id.* at ¶ 167).[4]

24         Apple likewise provided a detailed element-by-element analysis of the KR '792 patent in

25     charts attached as exhibits to its Invalidity Contentions (Kolovos Decl. Ex. 5 and Ex. 6, Plaintiff

26     and Counterclaim-Defendant Apple Inc.'s Invalidity Contentions, Ex. I-5 and I-9.)  These

27     _____

28             [4] Exhibits 1 and 2 to the Kolovos Declaration have been withdrawn.

1   contentions also included a detailed explanation of how a number of prior art references,

2   including the KR '792 patent, rendered the asserted claims obvious.  (*See* Kolovos Decl. Ex. 7,

3   Plaintiff and Counterclaim-Defendant Apple Inc.'s Invalidity Contentions, pp. 127-132.)

4         Finally, Dr. Dourish appeared for a full-day deposition in May 2012, at which time

5   Samsung had a full and fair opportunity to depose him about the KR '792 patent.  Samsung opted

6   to spend very little time questioning him on this reference, but it cannot rely on its own failings to

7   now assert that he did not provide adequate detail.  (Kolovos Decl. Ex. 8, J. Paul Dourish Dep.

8   Tr., at 131-137.)

9         ***No testimony on iBook System.***  Samsung's objection to Dr. Dourish offering an opinion

10   that the iBook System renders claim 10 of the '893 patent invalid as anticipated or obvious is

11   likewise without merit.  Dr. Dourish directly and fully addressed the iBook in his expert report.

12   (Kolovos Decl. Ex. 3, Dr. J. Paul Dourish Initial Expert Report at ¶¶ 72-86.)   Across 14

13   paragraphs, Dr. Dourish provided a description of the iBook and an explanation of how it

14   anticipates the claims (including claim 10) of the '893 patent.  (*Id.*)  In addition, Dr. Dourish

15   included a claim chart with further detail (including screen shots) demonstrating how the KR '792

16   patent disclosed every claim limitation.  (Kolovos Decl. Ex. 9, Dr. J. Paul Dourish Initial Expert

17   Report, Ex. 3A.)  Dr. Dourish also addressed the obviousness of the asserted claims over the

18   iBook and other prior art references in his report.  (*See* Kolovos Decl. Ex. 3, Dr. J. Paul Dourish

19   Initial Expert Report at ¶¶ 157-175.)

20         Likewise, Apple provided a detailed element-by-element analysis of how the iBook

21   anticipates the claims of the '893 patent in a claim chart attached to its Invalidity Contentions

22   (Kolovos Decl. Ex. 10, Plaintiff and Counterclaim-Defendant Apple Inc.'s Invalidity Contentions,

23   Ex. I-1 (pp. 42-49 and pp. 7-21 for claim 10).)   These contentions also explained how a number

24   of prior art references, including the iBook, rendered the asserted claims obvious.  (Kolovos Decl.

25   Ex. 7, Plaintiff and Counterclaim-Defendant Apple Inc.'s Invalidity Contentions, pp. 127-132.)

26   Finally, Dr. Dourish fully answered the questions posed to him regarding the iBook at his

27   deposition.  (Kolovos Decl. Ex. 8, J. Paul Dourish Dep. Tr., at 111-122.)

28

1     Neither FRE 403 nor 702 is applicable here.  Dr. Dourish is a qualified expert under FRE

2  702 who reviewed Apple documents regarding the iBook system and directly inspected and

3  observed the operation of the iBook before preparing his invalidity analysis.  The iBook is prior

4  art to the '893 patent and relevant to the issue of whether claim 10 is valid.  Samsung has had

5  ample opportunity to inspect the iBook, and full and timely notice of Apple and Dr. Dourish's

6  detailed invalidity contentions with respect to this prior art.  Samsung cannot now legitimately

7  claim prejudice or unfair surprise.  And, in any event, Samsung will have more than ample

8  opportunity to cross examine Dr. Dourish on the iBook and related issues.

1    **VII.   TONY GIVARGIS**

2         **A.      Objections to Samsung's Cross-Examination Exhibits**

3         *SDX3922.003-004, DX 2634.*   Apple objects to these exhibits under FRE 403 as unfairly

4    prejudicial: each document highlights claim construction positions taken by Dr. Givargis *prior* to

5    the Court's Markman Order.  For example, SDX3922.004 contrasts an excerpt from Dr. Givargis'

6    expert report dated March 22, 2012 with an excerpt from the Court's *subsequent* Markman Order

7    on the term "applet," which issued on April 4, 2012 (Dkt. No. 849 at 11) and adopted *neither* of

8    the parties' proposed constructions.  Samsung is attempting to suggest to the jury that

9    Dr. Givargis deviated from the Court's construction when, in fact, no such construction existed at

10   the time of his report.  Dr. Givargis' expert report on the validity of the '711 patent in fact

11   considered *both* parties' proposed constructions for the term "applet" in his analysis.

12   Dr. Givargis expressly noted that "[t]he interpretation of the term 'applet' in the asserted claims

13   of the '711 patent is disputed between the parties" (Kolovos Decl. Ex. 11, Opening Expert Report

14   of Tony Givargis at ¶93) and, "I understand that as of the date of this report, no Claim

15   Construction order has yet been issued by the Court.  My opinions set forth in this report are

16   applicable under either party's proposed construction."  (*Id.* at ¶94).  As such, SDX3922.003 in

17   combination with SDX3922.004 described above, creates the unfairly prejudicial impression that

18   Dr. Givargis applied an incorrect standard of review in his analysis.

19         Moreover, subsequent to the Court's Markman Order, Dr. Givargis submitted a Rebuttal

20   Report dated April 16, 2012.  At paragraph 38 of that report he stated, "In the analysis herein

21   regarding 'applet,' I apply the Court's construction," and provided footnote 5 stating that "I

22   provided my previous report on the invalidity of the '711 patent prior to the issuance of the

23   Markman order, but my positions in that report are unchanged *and apply equally in view of the*

24   *Court's construction of 'applet.'*"   (Kolovos Decl. Ex. 12 at ¶38) (emphasis added).  Samsung's

25   exhibits improperly seek to re-litigate the settled claim construction issue and cause prejudicial

26   confusion in the minds of the jurors.  FRE 403 applies for at least these reasons, and

27   SDX3922.003, SDX3922.004, and DX2634 should be excluded on that basis.

28         *SDX3922.015.*   After the parties' exchange of objections, Samsung informed Apple that

1    Samsung had agreed not to use SDX3922.015 with Dr. Givargis.

2         **B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

3         ***PX113 and PDX43.27.***  The Affidavit of Lee Hill (PX113) serves to authenticate the sales

4    records attached thereto under Fed. R. Evid. 902(11).  Rule 902(11) provides that "[t]he original

5    or a duplicate of a domestic record of regularly conducted activity that would be admissible under

6    Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person . . .

7    certifying that the record (A) was made at or near the time of the occurrence of the matters set

8    forth by, or from information transmitted by, a person with knowledge of those matters; (B) was

9    kept in the course of the regularly conducted activity; and (C) was made by the regularly

10   conducted activity as a regular practice" is self-authenticating.  *See OKI America, Inc. v.*

11   *Advanced Micro Devices, Inc.*, No. C 04–03171 CRB, 2006 WL 2711555, at *3-4 (N.D. Cal.

12   Sept. 21, 2006).  "The 'custodian or other qualified person' needed for authentication under

13   Rule 902(11) 'is broadly interpreted to require only that the witness understand the recordkeeping

14   system.' *Id.* at *4.  PX113, the Declaration of Lee Hill (General Counsel for Sony Mobile

15   Communications (USA)), is a proper affidavit under Fed. R. Evid. 902(11) and serves to

16   authenticate the Sony sales records attached thereto (PX113.4-.5), and is thus admissible under

17   the business records hearsay exception, Fed. R. Evid. 803(6).  Prof. Givargis may rely on an

18   authenticated business record to provide  his testimony and Samsung's objection should be

19   overruled.[5]

20        ***PX114.***  Samsung objects under FRE 403 to Dr. Givargis offering any testimony

21   regarding the "J2ME Tutorial" article because there is no publication date on the document itself.

22   Dr. Givargis has relied upon PX114/PX43.27 as probative to the common understanding of the

23   term "midlet" in the art.  The precise date of the document is of no moment as (1) it is not being

24   asserted as prior art, and (2) it is being reasonably relied upon by an expert to corroborate his

25   testimony that a person of skill in the art would recognize the meaning of "midlet," as reflected in

26   _____

27        [5] Samsung's Rule 602 objection ignores the plain language of the rule, which states "This
     rule does not apply to a witness's expert testimony under Rule 703."

28

Dr. Givargis' March 22, 2012 Opening Expert Report on Invalidity. (Kolovos Decl. Ex. 11,

¶127).  Judge Grewal has already denied Samsung's Motion to Strike numerous paragraphs of

Dr. Givargis' Opening Expert Report based on his citation to the J2ME Tutorial as background

material (Dkt. No. 1144 at 7), and is now seeking to re-litigate that issue.  Dr. Givargis will testify

clearly and correctly that his opinion as to the invalidity of the '711 patent is based on prior art

that does not include the J2ME Tutorial reference, and Samsung's assertion that it is "likely to

confuse the jury" under FRE 403 is without basis.

## VIII.   KEEPER OF RECORDS, SONY MOBILE COMMUNICATIONS

### A.   Responses to Samsung's Objections to Apple's Direct Examination Exhibits

*PX113.*  Apple incorporates its discussion of PX113 above in connection with Apple's responses to Samsung's objections to the materials for use during the examination of Dr. Givargis.  With respect to Samsung's objection that that a Sony corporate representative is an improper sponsoring witness to authenticate the Sony business records that are included in PX113, there is no merit to the objection.  *See, e.g., Smith v. Normandy Properties, LLC*, Case No. 07-351, 2008 WL 4443827, *2 (Sept. 26, 2008, W.D. Penn.) (finding under Rule 37(c) that defendant's failure to disclose two witnesses used solely for authenticating documents was harmless).  Mr. Dzuban (Sony's representative) will provide a proper foundation for the admissibility of the sales records attached to PX113 as business records falling within the hearsay exception provided by Fed. R. Evid. 803(6).

*PX116.*  The Sony Ericsson K700i User Guide (PX 116), is self-authenticating under Fed. R. Evid. 902(7) because it is inscribed with Sony Ericsson's trade name at least on pages PX116.1, PX 116.2 and PX 116.8.  *See Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 592 F. Supp. 2d 1208, 1218-19 (N.D. Cal. 2008) ("Defendant is correct that the computers are self-authenticating under Federal Rule of Evidence 902(7) because they are inscribed with the Macintosh Portable trade name."); *see also* Fed. R. Evid. 902(7) advisory committee notes (citing cases in which trade inscriptions on wrappers were sufficient to authenticate a candy bar and a loaf of bread).  In any event, if necessary, a Sony corporate representative (Mr. Dzuban) will provide a proper foundation for the admissibility of PX116 as a business record falling within the hearsay exception provided by Fed. R. Evid. 803(6).  Alternatively, PX116 falls within the residual hearsay exception provided by Fed. R. Evid. 807 because the document has equivalent circumstantial guarantees of trustworthiness (*e.g.*, inscribed with a trade name), is offered as evidence of material facts, is more probative than any other evidence that Apple can obtain through reasonable efforts, and because admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice by allowing the jury to hear testimony on relevant evidence.

## IX.    EMILIE KIM

### A.    Objections to Samsung's Examination Exhibits

*DX2635.*  This objection is resolved.  Samsung has agreed to use PX112 in place of DX2635.

### B.    Responses to Samsung's Objections

*PX111 and PX124.*  These objections have been resolved.  Apple has notified Samsung that it is withdrawing PX111 and PX124 as materials to be used by Apple during its examination of Ms. Kim.

1  **X.     RICHARD LUTTON**

2       **A.     Objections to Samsung's Direct Examination Exhibits**

3       ***DX531.***  This exhibit is a Samsung settlement presentation from September 2010, entitled

4  "Samsung Patents Relevant to Apple" (which is marked "For Settlement Purposes Only").  The

5  exhibit is both an inadmissible settlement negotiation document and self-serving hearsay and

6  should be excluded pursuant to Federal Rules of Evidence 408 and 802.

7       The only non-hearsay purpose for which this exhibit could be offered is to establish notice

8  to Apple of Samsung's claims under the '941 and '516 patents.  (*See*, *e.g.*, Order Regarding

9  Objections, Dkt. No. 1650 at 3 (notice was "the only non-hearsay purpose" of Apple's settlement

10 presentation to Samsung, PX52).)  But Apple has already stated in response to Samsung's

11 Interrogatory No. 13 that "[d]uring a meeting between Apple and Samsung representatives on

12 September 9, 2010, Samsung listed the following Samsung Patents-in-Suit in a PowerPoint

13 presentation: U.S. Patent Nos. . . . 7,447,516; and 7,675,941."  (Kolovos Decl. Ex. 28, Apple

14 Inc.'s Supp. Obj. and Resps. to Samsung's 1st Set of Interrogatories (Mar. 7, 2012).)

15      Given this, DX531 is not relevant to any issue that is still in dispute.  Even if it were, any

16 probative value is substantially outweighed by the danger of unfair prejudice and jury confusion.

17 In particular, Samsung may not use DX531 in an attempt to demonstrate liability by Apple, which

18 is what Rule 408 prohibits.  *See*, *e.g.*, *Cornell University v. Hewlett-Packard Co.*, 2008 WL

19 2223122, *1 (N.D.N.Y. 2008) (excluding evidence of patentee's license offers to Hewlett-

20 Packard and Intel under Rules 408 and 402) (Federal Circuit Judge Rader, sitting by designation);

21 *see also Affiliated Manufacturers, Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527 (3d Cir. 1995)

22 ("litigation need not have commenced for Rule 408 to apply"); *Millenkamp v. Davisco Foods*

23 *Int'l, Inc.*, 562 F.3d 971, 979-980 (9th Cir. 2009) (settlement letter that was sent "prior to suit"

24 excluded under Rule 408, as well as Rules 401 and 403, in a lawsuit asserting negligence and

25 breach of express and implied warranties).

26      ***Deposition Testimony Regarding DX531 (R. Lutton Dep. Tr. at 161:13–162:16).***  Apple

27 objects to Samsung's designations of the deposition of Richard Lutton relating to DX531 for the

28 same reasons that it objects to DX531.  The testimony is a summary of settlement negotiations,

including numerous hearsay statements by Samsung regarding its patent portfolio, and therefore inadmissible under Rules 408 and 802 for any purpose other than to establish that Apple received notice of Samsung's '516 and '941 patents, which is not in dispute. *See, e.g., Cornell University*, 2008 WL 2223122 at *1 ("Deposition testimony relating to the amounts of Cornell's offers to Intel is properly excluded under Federal Rules of Evidence 408 and 402 for precisely the same reasons that correspondence containing such amounts was excluded . . . . Changing the form of the evidence from a written document to a witness's testimony does not change its content or character and somehow render it admissible.").

XI.    **MANI SRIVASTAVA**

A.    **Objections to Samsung's Cross-Examination Exhibits**

**DX2635.**  This objection is resolved.  Samsung has agreed to use PX112 in place of DX2635.

B.    **Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

*PX 119 and PDX 52.5-.7, 52.10, 52.11 // PX 120 and PDX 52.5, 52.7, 52.9, 52.11-.18*

Samsung objects to Dr. Srivastava offering an opinion that the Suso patent (PX119) or the Yoshida patent (PX120) renders claim 1 of the '460 patent invalid as anticipated or obvious. According to Samsung, neither Dr. Srivastava's expert report, nor Apple's invalidity contentions, nor Dr. Srivastava's deposition testimony provides the "particularized" support that Samsung deems necessary to support these invalidity contentions.

In stark contrast to Dr. Yang's minimal notice and disclosure regarding his "applet" infringement contentions, Apple provided hundreds of pages describing the Suso (PX119) and Yoshida (PX120) patents over the course of this matter, including in its Invalidity Contentions (Kolovos Decl. Ex. 13, Plaintiff and Counterclaim-Defendant Apple Inc.'s Invalidity Contentions, at 32-33, 46, 83-85, 132-136) and accompanying claim charts (Kolovos Decl. Ex. 14 at J-1, 15 at J-5, 16 at J-6), and in Dr. Srivastava's expert report (Kolovos Decl. Ex. 17, Expert Report of Mani Srivastava, Ph.D Regarding Invalidity of the Asserted Claim of U.S. Patent No. 7,577,460, at 22-25, 31-53, 59-61, 86-91) and accompanying claim charts (Kolovos Decl. Ex. 18 at 3A, Ex. 19-24 at 4A-4F, Ex. 25 at 5D, Ex. 26 at 9).  Apple's Invalidity Contentions and Dr. Srivastava's expert report contained included claim charts relating to Suso (4 charts, 142 pages), and Yoshida (1 chart, 92 pages), and Dr. Srivastava further addressed both of these references in his deposition and fully responded to questioning thereon by Samsung's counsel (Kolovos Decl. Ex. 27, Srivastava Dep. Tr. at 74-75, 79-86, 114-118).

To the extent that Samsung objects to Dr. Srivastava testifying regarding the particular combination of Yoshida (PX120) with Suso (PX119) and Harris (PX118), that combination is presented in detail in Apple's Invalidity Contentions.  (Kolovos Decl. Ex. 13, Plaintiff and Counterclaim-Defendant Apple Inc.'s Invalidity Contentions at 85; Kolovos Decl. Ex. 15 at J-5).

1   That combination is also presented in detail in Dr. Srivastava's expert report (Kolovos Decl.

2   Ex. 17, Expert Report of Mani Srivastava, Ph.D Regarding Invalidity of the Asserted Claim of

3   U.S. Patent No. 7,577,460, at 86-91; Kolovos Decl. Ex. 26 at Ex. 9).  As noted above, Samsung

4   also had a full opportunity to depose Dr. Srivastava, and he provided responses relevant to this

5   prior art combination (Kolovos Decl. Ex. 27 at 116:16-117:10).

6          Samsung thus has had ample and complete notice of the Suso (PX119) and Yoshida

7   (PX120) patents and Apple's contentions regarding to these patents as invalidity references,

8   including in combination with one another and the Harris reference (PX118), from the time of

9   Apple's Invalidity Contentions through Dr. Srivastava's Expert Report and deposition.  Further,

10  Samsung cites to no applicable Rule of Evidence to support its objection and cannot identify any

11  possible prejudice in view of Apple and Dr. Srivastava's comprehensive disclosures.  Moreover,

12  Samsung seeks the extreme remedy of precluding important opinion testimony from an expert,

13  which remedy would be unfairly prejudicial to Apple.  Samsung will have an adequate

14  opportunity to cross examine this expert.  Therefore, this objection should be overruled.

15

16   Dated: August 15, 2012                    MORRISON & FOERSTER LLP

17

18                                            By:   /s/  Michael A. Jacobs
                                                   Michael A. Jacobs
19
                                             Attorneys for Plaintiff
20                                           APPLE INC.

21

22

23

24

25

26

27

28