# EXHIBIT 3

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

APPLE INC., a California corporation,

    Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Defendants.

Civil Action No. 11-CV-01846-LHK

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

    Counterclaim-Plaintiffs,

v.

APPLE INC., a California corporation,

    Counterclaim-Defendant.

**Expert Report of J. Paul Dourish, Ph.D.
Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,456,893**

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

portion of these references in which these teachings may be found. A person of ordinary skill in the art would understand that the citations are merely exemplary, and that similar teachings may be found at other pages or places in the references discussed, as well as in other prior art references.

### A. Claims 1-4, 6-8 and 10-16 of the '893 Patent Are Anticipated by the Apple iBook

#### 1. Description of the Apple iBook

72. The Apple iBook G3 800MHz laptop (2003) configured with an iSight video webcam (2003) was a laptop/video webcam combination that could capture and display still images. The Apple iBook G3 800MHz laptop ran the Mac OS X 10.3 Panther (2003), and included a number of applications including iChat AV 2, iPhoto 2 and Preview 2.1.0 (hereafter "iBook"). (*See* MAC OS X 10.3 Panther User's Guide (APLNDC-WH-A 0000005396-5421) at APLNDC-WH-A 0000005399, 5412, 5419-20.) The iChat application allowed a user to capture and store images. The iPhoto and Preview applications allowed a user to display the stored images.

73. The iBook is a digital image processing apparatus that in operation performs a method that under Samsung's apparent interpretation of the claims (based on Samsung's reading of the claims broadly enough to encompass Apple's accused products in Samsung's Infringement Contentions), with which I disagree, has a photographing mode that processes and stores an input image in a recording medium and, in a reproduction mode, displays at least one image file of a plurality of image files that are stored in the recording medium. In particular, the iChat application is capable of capturing and storing images while the iPhoto and Preview applications are capable of displaying stored images. The iBook allows a user to switch between reproduction mode and photographing mode and allows the user to view the most recently viewed image when returning to reproduction mode. In addition, the iBook also has the features and functions claimed in the dependent asserted claims.

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

### 2. Opinions Regarding the iBook

74. I have been informed and understand that the iBook qualifies as prior art because it was publicly available as of 2003, which is prior to the alleged conception date of the '893 patent and the filing date of the Korean priority patent application. I have reviewed Apple documents that show that the iBook was publicly available as of 2003. (*See, e.g.*, iBook Invoice (APLNDC-WH-0000024824-24827), iBook (APLNDC-WH-0000024828-24829), iSight Invoice (APLNDC-WH-0000024830), OS X Release Dates (APLNDC-WH-0000024831), iBook iSight U.S. Sales (APLNDC-WH-0000024832-24845).) I also understand that the iBook was not cited by Samsung or the PTO during the prosecution of the '893 patent.

75. It is my opinion that the iBook anticipates claims 1-4, 6-8 and 10-16 of the '893 patent. For my analysis of the iBook, I apply Samsung's apparent claim construction for the terms "mode" and "irrespective of the duration" based on Samsung's Infringement Contentions, and apply plain meaning to the rest of the claim terms. The claim chart attached as Exhibit 3A sets forth in detail how the iBook using the iChat and iPhoto applications and the iChat and Preview applications, anticipate the asserted claims. The iChat application allows for iBook users to capture and store images for later viewing. Both the iPhoto and Preview applications allow an iBook user to view stored images.

76. The claim charts show that the iBook with either the iChat and iPhoto or iChat and Preview applications running is a digital image processing apparatus that is structured and functions as described by the asserted claims. The claim chart demonstrates that the iBook provides a mechanism for displaying an image in reproduction mode that is re-displayed when switching from a photographing mode back to reproduction mode. In addition, the claim charts further demonstrate that the iBook has the features and functions claimed in the dependent asserted claims.

77. The claim chart attached as Exhibit 3A includes citations and screen shots for both iPhoto 2 and Preview 2.1.0. Note that these are alternatives for showing that the iBook has the "reproduction" capabilities claimed in the asserted claims. Either the iPhoto or Preview

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

1  applications would be sufficient to demonstrate that the iBook has the claimed reproduction
2  capabilities.

3    78.    The iBook is a digital image processing apparatus comprising: an optical system
4  for receiving light reflected from a subject; a photoelectric conversion module in optical
5  communication with the optical system for converting the light to image data; a recording
6  medium for storing the image data in an image file; a display screen for displaying the image
7  data; and a controller connected with the photoelectric conversion module, the recording medium
8  and the display screen, the controller being operative in a photographing mode to process the
9  image data for storage in the recording medium and, in a stored-image display mode, being
10 operative to control the display screen for displaying a single image relative to the image data.
11 (*See, e.g.*, iSight User's Guide, pp. 5-6 (2003) (APLNDC-WH-A0000005396-5421), Apple
12 iSight Schematics at pp. 2-4 and 8 (APLNDC-WH-A0000000255-266), iBook Schematics at pp.
13 2-3 and 6-7 (APLNDC-WH-A0000000001-50).)

14    79.    I have used the iBook, reviewed schematics for the iBook including schematics
15 for the iSight web cam, observed the iBook in operation and verified that it operates as set forth
16 in the claim chart attached as Exhibit 3A.  Specifically, I observed that the iBook performed a
17 method of controlling a digital image processing apparatus that, in a photographing mode,
18 processes and stores an input image in a recording medium and, in a reproduction mode, displays
19 at least one image file of a plurality of image files that are stored in the recording medium where
20 the method consists of series of sequential steps as claimed in the '893 patent.

21    80.    By using the iChat, iPhoto and Preview applications, I was able to operate the
22 iBook to be set in reproduction mode, display a single image file from memory, where the single
23 image file was different from a most-recently stored image file, while the single image file was
24 being displayed, switch from the reproduction mode to the photographing mode, using the iBook
25 for a duration in the photographing mode for storing a newly photographed image to a new
26 image file in memory, after the duration, switch from the photographing mode back to the
27 reproduction mode, and then irrespective of the duration, first display again only the single
28

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

image file that was displayed when I switched from the reproduction mode to the photographing mode. Screen shots that show the state of the iBook when I performed these steps in sequential order are set forth in Exhibit 3A.

81. I also observed the iBook performing other operations and understand that these operations included (1) identifying the image file that is being displayed, (2) setting in a memory of the digital image processing apparatus an index value of the single image file that is being displayed, (3) after the duration, switching from the photographing mode to the reproduction mode includes reading the memory to retrieve the index value, (4) setting a flag or bookmark on the single image file that is being displayed when I switched from switching from the reproduction mode to the photographing mode, (5) sequentially displaying single image files of the plurality of image files and updating the index value stored in the memory of the digital image processing apparatus each time a currently-displayed image file is changed, and (6) determining if the index value is in a reset state. Screen shots that show the state of the iBook when these steps were performed are set forth in Exhibit 3A.

82. The iBook is a digital image processing apparatus where the controller comprises at least one of a digital camera processor and a microcontroller. (*See, e.g.*, Apple iBook Schematics at pp. 2-3 (APLNDC-WH-A0000000001-50); Apple iSight Schematics at pp. 2-4 and 8 (APLNDC-WH-A0000000255-266).)

83. Using the iBook cursor, I was able to select and activate the iChat, iPhoto and Preview applications which I understand would operate to switch the controller between the stored-image display mode and the photographing mode. (*See, e.g.*, Exhibit 3A at pp. 13-14 and 17-19.)

84. Using the "Prev/Next" buttons displayed as part of iPhoto and the "Page Up/Page Down" buttons displayed as part of Preview, I was able to display a previous and a next image file in the stored-image display mode, I understand that the controller updated the file index memory with a different unique file index value each time I pressed either one of the "Prev/Next" buttons displayed as part of iPhoto and the "Page Up/Page Down" buttons displayed

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

as part of Preview based on the display of different file names. (*See, e.g.*, Exhibit 3A, at pp. 33-37.)

85. When I operated the iBook to switch between iChat and iPhoto or Preview by selecting the appropriate icon with the iBook cursor, I understand that the controller read the memory to retrieve the file index value based on the display of different file names. (*See, e.g.*, Exhibit 3A at pp. 24-30.)

86. Thus, the iBook performed all the steps and included all the apparatus recited in the asserted claims of the '893 patent.

**B.     Claims 1-4, 6-7 and 10-16 of the '893 Patent Are Anticipated by Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film**

**1.     Description of Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film**

87. Japanese Unexamined Patent Application Publication Number 2005-64927 to Fuji Film Corp. was filed on August 14, 2003, and published on March 10, 2005 ("JP '927 publication"). JP '927 publication is titled "Image Recording Device."

88. JP '927 publication discloses an image recording device that displays images on a display sequentially beginning with the image that was displayed a previous time. (JP '927 publication, ¶ [0010] and Fig. 1 reproduced below.) The device includes memory for storing display history that indicates the history of the images displayed on the display. (JP '927 publication, ¶ [0008] and Fig. 2 reproduced below.) The image recording device includes a "Switch Mode button 34 [which] is operated by the user when switching between an image recording mode, for obtaining image data of an image to be recorded through image recording, and a viewing mode, for displaying on the LCD 26, recorded images obtained through image recording." (JP '927 publication, ¶ [0008].) JP '927 publication states: "Because the controlling means are able to display, on the displaying means, an icon image that indicates the continue-display mode, wherein the display is sequential starting with the image that was displayed the previous time, when the continue-display mode is set, it is possible to provide, visibly, an

file index value each time the at least one directional actuator is pressed. (*See, e.g.*, JP '927 publication, ¶¶ [0040], [0041] and Fig. 3.)

107. The JP '927 publication discloses a digital image processing apparatus where the controller is operative to read the memory for retrieving the file index value in response to the mode-switching actuator being pressed when switching the controller from the photographing mode to the stored-image display mode. (*See, e.g.*, JP '927 publication, ¶¶ [0036], [0037], [0038], [0039] and Fig. 3.)

### C. Claims 1-4, 6-8 and 10-16 of the '893 Patent Are Anticipated by Korean Published Patent No. 10-2004-0013792 to LG Electronics

#### 1. Description of Korean Published Patent No. 10-2004-0013792

108. Korean Published Patent No. 10-2004-0013792 to LG Electronics was filed on August 8, 2002, and published on February 14, 2004 ("KR '792 patent"). KR '792 patent is titled "A Mobile Phone Photograph Display Method."

109. KR '792 patent discloses a mobile phone that includes a camera with a display that allows for viewing of the photographs taken by the mobile phone. In particular, KR '792 patent states: "This invention is concerning a mobile phone having the camera functionality. In particular, it is concerning a photograph display method in a mobile phone appropriately designed for convenient and speedy viewing of the photographs taken by the mobile phone having the camera functionality." (KR '792 patent, Abstract.) It facilitates viewing of the photographs by simple manipulations of keys. (KR '792 patent, Abstract.)

110. KR '792 patent further describes its mobile phone invention as follows: "Because this is a mobile phone having the camera functionality as described above, a camera key (40) exists specifically to work as a camera shutter: it works as the camera shutter manipulation button while in camera mode, and as the recording button when in video recording mode. In other words, as soon as said camera key (40) is pressed, photographs are taken like in a common camera. . . . The photographs taken by use of said camera key (40) are stored in the mobile phone's memory in the sequential order. In order to review them, the various menus in the

sequence as illustrated in Drawing 2 have to be selected." (KR '972 patent, p. 5-2.) "As described above, the functions of a photograph album, which is a conventional camera function added to a mobile phone requires going through many menus to in order to view photographs; and in order to continuously view the photographs, the selection has to be made by going through the screen that displays the photograph list. And therefore, the manipulation is inconvenient when attempting to search for multiple photographs.  This invention, having considered such issues, sets its objective in providing the photograph display method in a mobile phone wherein camera shortcut keys are used for viewing the photographs in an attempt to facilitate speedy display of menus for photograph viewing." (KR '972 patent, p. 5-3.)

111. Specifically, KR '972 patent states: "according to the user's un-delayed input, the screen can change. The fist [sic, first] photograph displayed can simply be the one that has been stored the longest or the one having the earliest stored address number. Or it could be that the viewing can start from the photograph that was last viewed by the viewer. Or, depending on the designer's intent, the photographs can be viewed in the reverse order starting from the photographs that were taken the latest." (KR '972 patent, p. 5-4.)

### 2. Opinions Regarding KR '792 patent

112. I have been informed and understand that KR '792 patent qualifies as prior art because it was published on February 14, 2004, which is prior to the alleged conception date of the '893 patent (October 2004) and the filing date of the Korean priority patent application (March 15, 2005). ('KR '792 patent, cover page.)  I also understand that the KR '792 patent was not cited by Samsung or the PTO during the prosecution of the '893 patent.

113. It is my opinion that KR '792 patent anticipates claims 1-4, 6-8 and 10-16 of the '893 patent.  For my analysis of the KR '792 patent, I apply Samsung's apparent claim construction for the term "irrespective of the duration" based on Samsung's Infringement Contentions (see Section X above), and apply plain meaning to the rest of the claim terms.  The claim chart attached as Exhibit 3C sets forth in detail how KR '792 patent anticipates these

claims. The claim chart shows that the KR '792 patent discloses a digital image processing apparatus that functions as described by the asserted claims and as explained below.

114.  The KR '792 patent discloses a method of controlling a digital image processing apparatus that, in a photographing mode, processes and stores an input image in a recording medium and, in a reproduction mode, displays at least one image file of a plurality of image files that are stored in the recording medium where the method consists of a sequential steps. (*See, e.g.*, KR '792 patent, Abstract, pp. 5-2 to 5-5 and Drawings 1-3.)

115.  The KR '792 patent discloses setting the digital image processing apparatus in the reproduction mode. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawings 1-3.)

116.  The KR '792 patent discloses using the digital image processing apparatus in the reproduction mode for displaying a single image file from the recording medium, the single image file being different from a most-recently stored image file. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawings 1-3.)

117.  The KR '792 patent discloses while the single image file is being displayed, switching from the reproduction mode to the photographing mode. (*See, e.g.*, KR '792 patent, pp. 5-2, 5-4 and Drawings 2-3.)

118.  The KR '792 patent discloses using the digital image processing apparatus for a duration in the photographing mode for storing a newly photographed image to a new image file in the recording medium. (*See, e.g.*, KR '792 patent, p. 5-2 and Drawing 2.)

119.  The KR '792 patent discloses after the duration, switching from the photographing mode to the reproduction mode. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawings 1-3.)

120.  The KR '792 patent discloses irrespective of the duration, first displaying again only the single image file that was displayed when switching from the reproduction mode to the photographing mode. (*See, e.g.*, KR '792 patent, p. 5-4 and Drawing 3.)

121.  The KR '792 patent discloses identifying the image file that is being displayed. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawing 2.)

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

122. The KR '792 patent discloses where identifying the image file that is being displayed comprises setting in a memory of the digital image processing apparatus an index value of the single image file that is being displayed. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawing 2.)

123. The KR '792 patent discloses after the duration, switching from the photographing mode to the reproduction mode comprises reading the memory to retrieve the index value. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawing 2.)

124. The KR '792 patent discloses where identifying the image file that is being displayed comprises one of setting a flag and setting a bookmark on the single image file that is being displayed when switching from the reproduction mode to the photographing mode. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawings 2 and 3.)

125. The KR '792 patent discloses where using the digital image processing apparatus in the reproduction mode for displaying a single image file from the recording medium, the single image file being different from a most-recently stored image file comprises the steps of: sequentially displaying single image files of the plurality; and updating the index value stored in the memory of the digital image processing apparatus each time a currently-displayed image file is changed. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawing 2.)

126. The KR '792 patent discloses where reading the memory to retrieve the index value comprises the step of determining if the index value is in a reset state. (*See, e.g.*, KR '792 patent, p. 5-4 and Drawing 3.)

127. The KR '792 patent discloses a digital image processing apparatus comprising: an optical system for receiving a light reflected from a subject; a photoelectric conversion module in optical communication with the optical system for converting the light to image data; a recording medium for storing the image data in an image file; a display screen for displaying the image data; and a controller connected with the photoelectric conversion module, the recording medium and the display screen, the controller being operative in a photographing mode to process the image data for storage in the recording medium and, in a stored-image display mode, being

operative to control the display screen for displaying a single image relative to the image data. (*See, e.g.*, KR '792 patent, Abstract, pp. 5-2 to 5-4 and Drawings 1 and 3.)

128.   The KR '792 patent discloses a digital image processing apparatus where the controller comprises at least one of a digital camera processor and a microcontroller. (*See, e.g.*, KR '792 patent, Abstract and p. 5-2.)

129.   The KR '792 patent discloses a digital image processing apparatus that includes a user input including a mode-switching actuator for switching the controller between the stored-image display mode and the photographing mode. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawings 1-3.)

130.   The KR '792 patent discloses a digital image processing apparatus that includes at least one directional actuator for displaying a previous and a next image file in the stored-image display mode, the controller updating the file index memory with a different unique file index value each time the at least one directional actuator is pressed. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawing 2.)

131.   The KR '792 patent discloses a digital image processing apparatus where the controller is operative to read the memory for retrieving the file index value in response to the mode-switching actuator being pressed when switching the controller from the photographing mode to the stored-image display mode. (*See, e.g.*, KR '792 patent, pp. 5-2 to 5-4 and Drawing 2.)

  D.   **Claims 1-4, 6-8 and 10-16 of the '893 Patent Are Anticipated by U.S. Patent No. 6,618,082 to Hayashi et al.**

  1.   **Description of U.S. Patent No. 6,618,082**

132.   U.S. Patent No. 6,618,082 to Hayashi et al. was filed on June 25, 1998, and issued on September 9, 2003 ("the '082 patent"). The '082 patent is titled "Digital Camera Adapted to Reproduce an Original Image and a Thumbnail Image." It is assigned to Sanyo Electric Co., Ltd.

133.   The '082 patent discloses a digital camera (see Fig. 1, reproduced below) that allows a user to control how images are viewed. In particular, it discloses the use of different

mode-switching actuator being pressed when switching the controller from the photographing mode to the stored-image display mode. (*See, e.g.*, '082 patent, Col. 5:25-65; Figs. 4-6 and 7(A) - 7(B).)

### XI.     The Prior Art Renders Obvious the Asserted Claims of the '893 Patent

157.    As I explained above, it is my opinion that multiple prior art references anticipate the asserted claims of the '893 patent.  To the extent that any of the prior art references discussed above in Section X is found not to disclose one or more limitations of asserted claims, it is my opinion that the asserted claims would have been obvious over the teachings of each of the iBook, JP '927 publication, KR '792 patent, and '082 patent, in combination with the knowledge of one of ordinary skill in the art as explained below.

158.    Any reference or combination of references that anticipates or makes obvious an asserted independent claim of the '893 patent also makes obvious any asserted claim dependent on that independent claim because every element of each dependent claim was known by a person of ordinary skill at the time of the alleged invention, and it would have been obvious to combine those known elements with the independent claims at least as a matter of common sense, routine design practice and the application of known solutions to obtain predictable results.

159.    Indeed, as explained below in section XI, B, several prior art references in combination with other prior art references, render obvious the asserted claims of the '893 patent.

160.    In section VI above, I provided a general background description of the state of the art in the 2004-2005 timeframe.  This description shows what one of ordinary skill in the art would have known at the time of the alleged conception date of the '893 patent and the filing date of the Korean priority patent application.

161.    According to the named inventors, conventional digital cameras were capable of performing photographing and reproduction operations in photographing mode and reproduction mode, respectively.  The named inventors assert that these conventional digital cameras would

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

always reproduce the latest stored image file first when a user is in reproduction mode, i.e., the most recently captured and stored image. ('893 patent, Col. 1:41-45.) Thus, the user would have to sequentially display the stored image files to find the image files she was most recently viewing. ('893 patent, Col. 1:46-50.) As I have previously stated, the alleged invention of the '893 patent is nothing more than a recitation of existing of digital camera technology, which was already recognized and understood by those skilled in the art by the alleged conception date of October 2004 and the filing date of the Korean priority application (March 2005).

162. The alleged invention of the '893 patent is quite simple: it merely provides a mechanism whereby a digital image processing apparatus will display the last-viewed image that was viewed in reproduction mode, when the apparatus is switched from reproduction mode, to photographing mode and then back to reproduction mode, irrespective of the duration that apparatus was in photographing mode. As I already explained above, the named inventors were not the first to make this design choice for a digital image processing apparatus. (*See* Section X). Indeed such operation would have been obvious: digital image processing apparatuses that captured and displayed images were known. Given that conventional digital cameras had at least two modes—photographing and reproduction—a design decision had to be made as to which image to display when switching from reproduction mode, to photographing mode, and then back to reproduction mode. Choosing whether to display a previously viewed image or the last captured image was a design choice well within the abilities of one of ordinary skill in the art to achieve expected results.

163. I have analyzed obviousness by rigorously examining every limitation in the claims. My conclusion is that the asserted claims not only are anticipated as discussed above, but would have been obvious.

164. Below I lay out illustrative discussions of particular references—with accompanying claim charts incorporated by reference herein, which analyze every claim limitation. The analysis below—and the corresponding claim charts, which I incorporate by reference into my report—sets out certain exemplary combinations of prior art references. But

other combinations including combinations of the anticipatory references discussed above would be readily made by, and were obvious to, persons of ordinary skill—particularly in light of the obviousness of the concepts, as discussed in the next section.

### A. The Concepts of the Claimed Invention Were Well Known and Obvious

165. Prior to alleged conception date of the '893 patent and the filing date of the Korean priority patent application, digital image processing apparatuses such as digital cameras were known.  (*See, e.g.*, '893 patent, Col. 1:29-45 (describing a "conventional image processing apparatus" disclosed in U.S. Patent Publication No. 20040119876); U.S. Patent No. 6,118,480 to Anderson et al., Col. 1:12-60; U.S. Patent No. 6,512,548 to Anderson, Col. 1:14-45; JP '927 publication, [0001],[0002], [0019]-[0034], Figs. 1-2; '082 patent, Abstract, Col. 1:8-38, Col. 2:30-Col. 3:35, Fig. 1; '807 patent, Abstract, Col. 6:32-Col. 8:34.)  At the time the alleged '893 patent invention was purportedly conceived, it was also known that digital cameras could be incorporated into mobile telephones.  (*See, e.g.*, KR '972 patent, Abstract.)

166. According to the named inventors, conventional digital cameras were capable of performing photographing and reproduction operations in photographing mode and reproduction mode, respectively.  The named inventors assert that these conventional digital cameras would always reproduce the latest stored image file first when a user is in reproduction mode, i.e., the most recently captured and stored image.  ('893 patent, Col. 1:41-45.)  Thus, the user would have to sequentially display the stored image files to find the image files she was most recently viewing.  ('893 patent, Col. 1:46-50.)

167. Given that conventional digital cameras had at least two modes—photographing and reproduction—a design decision had to be made as to which image to display when switching from reproduction mode, to photographing mode, and then back to reproduction mode. The named inventors assert that conventional digital cameras implemented only one design choice—reproducing the latest stored image file when returning to reproduction mode. However, this was merely one design choice among several design choices.  Indeed, others recognized these choices and suggested several approaches, including the one chosen by the

named inventors: "The fist [sic, first] photograph displayed can simply be the one that has been stored the longest or the one having the earliest stored address number. Or it could be that the viewing can start from the photograph that was last viewed by the viewer. Or, depending on the designer's intent, the photographs can be viewed in the reverse order starting from the photographs that were taken the latest." (KR '972 patent, p. 5-4.)

168. Other concepts that are part of the alleged invention include specifying how to identify and return to a specific image. For example, the alleged "invention" identifies the specific image to be displayed by using (1) an index or (2) a flag and a bookmark. The alleged "invention" also includes maintaining the index value to the most recently displayed image file and displaying the most recently stored image file if it is determined that the index value has been reset.

169. These additional features, however, were not new or novel. As acknowledged by the named inventors, conventional digital cameras were capable of storing images and sequentially displaying stored images. ('893 patent, Col. 1:29-50.) Thus, the named inventors recognized that these digital cameras had a way to identify and track an image among potentially many images stored in memory. The prior art specifically addressed these issues. For example, the JP '927 publication discloses: "Display history information indicating the display history of the images displayed in the past on the displaying means is stored in the storing means. This display history information is updated each time an image is displayed on the displaying means." (JP '927 publication, ¶ [0009].)

170. Additionally, digital imaging apparatuses including digital cameras provided users with the flexibility to operate in any number of sequences including switching to a mode viewing images, to switching to a mode to capture and store images and then switching back to viewing mode. (*See, e.g.*, JP '927 publication, ¶¶ [0035], [0036], [0053], [0054], [0055] and Figs. 3-4; KR '792 patent, pp. 5-2 to 5-4 and Drawings 1-3; '082 patent, Col. 3:62-63, Col. 2:30-33 and Fig. 1.)

### 1. Reasons to Combine These Concepts To Achieve Expected Results

171. There were clear reasons to combine the concepts discussed above to achieve the alleged '893 patent invention as set forth in the asserted claims. Given that these concepts were—contrary to the statements made in the '893 patent—well-known, combining them was simply a matter of using off-the-shelf technologies in the manner they were intended to be used to achieve expected results.

172. For example, in the 2004-2005 timeframe, digital cameras and camera phones were publicly available. At around the same time, the storage capacity of digital camera recording mediums, such as memory cards, increased from tens to hundreds of megabytes. Accordingly, hundreds of images could be stored in digital cameras. (*See, e.g.*, U.S. Patent Publication No. 2005/0134708 to Lee et al. at ¶ [0005].)

173. Digital cameras provided a viewing function for displaying a recorded image on a display screen that was provided in the digital camera. When viewed on the display screen of the digital camera, one approach was to display the image that was recorded last on the display screen. Typically images were viewed in sequential order. Because the recorded images were displayed in reverse sequential order, even when viewing again after the viewing has been interrupted to perform image recording, there was the possibility that images that had been viewed the previous time will be displayed redundantly on the display screen. (*See, e.g.*, JP '927 publication at [0002] - [0005].) Thus, there was a recognition that maintaining the order and ability to view the same image again upon interruption of viewing was desired. The prior art taught this precise feature as explained above in Section X and in the claim charts for the iBook, '082 patent, KR '972 patent and JP '927 publication.

174. Combining references to achieve the claimed subject matter would have been merely a design choice, the application of common sense, and the application of familiar elements according to known methods that would yield predictable results.

175. Moreover, the claimed subject matter would have resulted from combining prior art elements according to known methods to yield predictable results, the simple substitution of

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

one known element for another to obtain predictable results, the use of known techniques to improve similar devices in the same way, and applying a known technique to a known device to yield a predictable result.  One of ordinary skill in the art would have been motivated to adopt the claim limitations identified above since the motivation to combine the teachings of these prior art references can be found in each of (1) the references themselves, (2) the nature of the problem being solved, (3) the express, implied and inherent teachings of the prior art, (4) the knowledge of persons of ordinary skill in the art, (5) the fact that the prior art is generally directed towards managing the display of images on a digital camera, and (6) the predictable results obtained in combining the elements of the prior art.

**B.     Discussion of Illustrative References, Including Exemplary Combinations of Such References With Each Other And/Or Other References**

176.    In the following section, and in the claim charts found in Exhibits 3E-3G, I provide illustrative examples of prior art references and combinations that render the asserted claims of the '893 patent obvious.

**1.     U.S. Patent No. 6,867,807 to Malloy Desormeaux in Combination with any one of JP '927 Publication, KR 792 Patent, or '082 Patent Renders Obvious Claims 1-4, 6-8 and 10-16 of the '893 Patent**

177.    U.S. Patent No. 6,867,807 to Malloy Desormeaux was filed on September 4, 2001, and issued on March 15, 2005 ("the '807 patent").  The '807 patent is titled "Camera Having Single-Button Timed Display Of Most-Recently Viewed Image and Default Display of Last Verification Image and Method."  It is assigned to Eastman Kodak Company.

178.    The '807 patent discloses a camera and a method, that displays a last displayed image when the camera display is reactivated after a period of inactivity.  The camera includes an "image display 32 [that] can be used to verify the quality of a just captured image and can also be used to review earlier captured images. User controls 144 are provided for these functions. . . . The verify button 152 provides a signal to the controller, which activates the image display 32 and disables image capture while the image display 32 is actuated. The user can

CONTAINS INFORMATION DESIGNATED AS APPLE
AND SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

212.  Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

### XV. Compensation

213.  I am compensated for my time at the rate of $400 for each hour of service that I provide in connection with this case.  That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

### XVI. Previous Testimony

214.  I have not provided testimony as an expert witness during the last four years.

### XVII. Supplementation of Opinions

215.  I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Samsung.

Dated: March 22, 2012

_____
J. Paul Dourish, Ph.D.