# EXHIBIT 7

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (CA SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Civil Action No. 11-CV-01846-LHK <br><br> **PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S INVALIDITY CONTENTIONS** |

41.     Claims 9 and 23 would have been obvious over the Admitted prior art in view of any one of Hatta, Tiedemann, Dillon, Honkasalo, Zhang, Hamabe, or Siemens Proposal and further in view of LGE Proposal or Siemens Proposal (Exhibit H-7).

42.     Claims 10 and 24 would have been obvious over the Admitted prior art in view of any one of Hatta, Tiedemann, Dillon, Honkasalo, Zhang, Hamabe, or Siemens Proposal and further in view of LGE Proposal (Exhibit H-7).

43.     Claims 1 and 15, if not anticipated, would have been obvious over Hamabe in view of the Other 3GPP Specification (Exhibit H-8).

44.     Claims 2 and 17 would have been obvious over Hamabe in view of 3GPP Specification 2 (Exhibit H-8).

45.     Claims 3 and 17 if not anticipated by Hamabe, in the alternative, would have been obvious over Hamabe in view of 3GPP Specification 2 (Exhibit H-8).

46.     Claims 4-6 and 18-20 would have been obvious over Hamabe in view of 3GPP Specification 2 or Hatta (Exhibit H-8).

47.     Claims 9 and 23, in the alternative, would have been obvious over Hamabe (Exhibit H-8).

48.     Claims 10 and 24 would have been obvious over Hamabe in view of LGE Proposal or 3GPP Specification 2 (Exhibit H-8).

49.     Claims 14 and 28 would have been obvious over Hamabe in view of 3GPP Specifications 1 or 3GPP Specification 2 (Exhibit H-8).

I.     The '893 Patent

In accordance with Patent L.R. 3-3(b), prior art references rendering the asserted claims of the '893 patent obvious, alone or in combination with other references, are discussed below

and included in Exhibit I.  Exhibit I includes exemplary claim charts for the '893 patent showing specific combinations of references, including citations to where in the references the teachings, suggestions, and motivations to combine the references are disclosed.  Further reasons to combine the references identified in Exhibit I include the nature of the problem being solved, the express, implied and inherent teachings of the prior art, the knowledge of persons of ordinary skill in the art, that such combinations would have yielded predictable results, and that such combinations would have represented known alternatives to a person of ordinary skill in the art.

In particular, Apple contends that the asserted claims of the '893 patent would have been obvious in view of the prior art references identified above.  For example, Exhibit I includes exemplary claim charts that describe how the asserted claims of the '893 patent would have been obvious in view of the following references alone or in combination:  the iBook, U.S. Patent No. 6,867,807 to Malloy Desormeaux, U.S. Patent No. 6,512,548 to Anderson, U.S. Patent No. 6,118,480 to Anderson et al., U.S. Patent No. 6,618,082 to Hayashi et al., Korean Unexamined Patent Publication No. 10-2004-0013792 to LG Electronics Inc. and Japanese Patent Publication No. 2005-064927.

Taken alone or together in the combinations set forth below, the primary prior art references include all limitations of the '893 patent asserted claims:

1.     Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,867,807 to Malloy Desormeaux and U.S. Patent No. 6,512,548 to Anderson, each taken alone or in combination (Exhibit I-2).

2.     Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,867,807 to Malloy Desormeaux and U.S. Patent No. 6,118,480 to Anderson et al., each taken alone or in combination (Exhibit I-3).

3.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,867,807 to Malloy Desormeaux and U.S. Patent No. 6,618,082 to Hayashi et al., each taken alone or in combination (Exhibit I-4).

4.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,867,807 to Malloy Desormeaux and Korean Unexamined Patent Publication No. 10-2004-0013792 to LG Electronics Inc., each taken alone or in combination (Exhibit I-5).

5.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,867,807 to Malloy Desormeaux and Japanese Patent Publication No. 2005-064927 to FujiFilm, each taken alone or in combination (Exhibit I-6).

6.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,618,082 to Hayashi et al and U.S. Patent No. 6,512,548 to Anderson, each taken alone or in combination (Exhibit I-7).

7.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,618,082 to Hayashi et al and U.S. Patent No. 6,118,480 to Anderson et al., each taken alone or in combination (Exhibit I-8).

8.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,618,082 to Hayashi et al and Korean Unexamined Patent Publication No. 10-2004-0013792 to LG Electronics Inc., each taken alone or in combination (Exhibit I-9).

9.      Claims 1-4, 6-8 and 10-16 would have been obvious over U.S. Patent No. 6,618,082 to Hayashi et al and Japanese Patent Publication No. 2005-064927 to FujiFilm Corp., each taken alone or in combination (Exhibit I-10).

use HARQ in data channels for which latency can be tolerated but reliability is desired; to reduce

power on one of two types of channels if the power is too high to prioritize which channels get

more power and/or because there are limited options; to prioritize channels for power reduction

to try to obtain better performance; and if channels are to be prioritized, to reduce power on

HARQ channels because the prior art taught that there were benefits to reducing power on

HARQ channels.

I.   The '893 Patent

Any reference or combination of references that anticipates or makes obvious an asserted

independent claim also makes obvious any asserted claim dependent on that independent claim

because every element of each dependent claim was known by a person of ordinary skill at the

time of the alleged invention, and it would have been obvious to combine those known elements

with the independent claims at least as a matter of common sense and routine innovation.

Numerous prior art references, including those identified above pursuant to Patent L.R. 3-

3(a) and in the Exhibits, reflect common knowledge and the state of the prior art before the

priority date of the '893 patent.  Because it would be unduly burdensome to create detailed claim

charts for the thousands of invalidating combinations, Apple has provided illustrative examples

of such invalidating combinations below and in Exhibit I.  For at least the reasons described

above and below in the examples provided, as well as in the attached claim charts, it would have

been obvious to one of ordinary skill in the art to combine any of a number of prior art

references, including any combination of those identified in Exhibit I, to meet the limitations of

the asserted claims.  As such, Apple's identification of exemplary combinations is without

limitation to Apple's identifying other invalidating combinations as appropriate.

1    Many of the prior art references include all of the limitations of the '893 patent asserted

2  claims.  The method and apparatus claims recite "using the digital image processing apparatus in

3  the reproduction mode for displaying a single image file from the recording medium, the single

4  image file being different from a most-recently stored image file . . . while the single image file

5  is being displayed, switching from the reproduction mode to the photographing mode . . .

6  irrespective of the duration [in photographing mode], first displaying again only the single image

7  file . . ."  The prior art listed above explicitly taught this alleged new feature.   (*See, e.g.*, '807

8  patent, '082 patent, 'KR '792 patent and JP '927 patent). Apple contends that to the extent any of

9  the references is found not to explicitly teach performing the claimed method steps in sequential

10  order and displaying a most-recently displayed image file (which is being displayed in a

11  reproduction mode) that is different from a most-recently captured stored image file when

12  switching between the reproduction mode and the photographing mode irrespective of a time or

13  duration that the apparatus is used in the photographing mode, these limitations would have been

14  obvious to one of ordinary skill in the art as taught by the prior art listed above and as explained

15  below.

16    The prior art references, namely, iBook, '807 patent, '548 patent, '480 patent, '082

17  patent, KR '972 patent and JP '927 patent all disclose digital imaging apparatuses such as digital

18  cameras or mobile phones, and describe their operations in terms of using the disclosed

19  apparatuses to capture and store digital images and to display those images on the display screen

20  of the apparatuses.  In particular, the references disclose how the apparatuses can operate in

21  different modes, e.g., photography mode to capture and store images, and display mode to

22  display the stored images.  Moreover, the references teach allowing a user of the apparatuses

23  when in display mode and viewing a first image, to switch from display mode to photography

mode, capture and store a second image, and then switch back to display mode and view the first image again.  (*See, e.g.*, '807 patent, 18:45-49, 18:6-11, 12:51-59, 4:29-33, 2:22-23, 10:46-53, 16:16-23, 18:4-18, 18:46-59, 2:66 - 3:6, 16:16-58, and Figs. 1(a), 1(b), 6 and 7; '082 patent, 3:62-63, 5:25-65, 2:30-33, 2:66 – 3:37 and Fig. 1; KR 972 Abstract, pp. 5-2 to 5-5, and Drawings 1-4, and JP '927 ¶¶ [0008], [0009], [0010], [0018], [0035], [0036], [0038], [0039], [0053], [0054], [0055], [0060] and Figs. 3-4.)

To the extent that the iBook, '807 patent, '548 patent, '480 patent, '082 patent, KR '972 patent and JP '927 patent prior art references are found to lack an explicit teaching of the "irrespective of the duration" limitation of the asserted claims, a person of ordinary skill in the art would recognize that feature to be inherent in the references.  Also, it would have been obvious to a person of ordinary skill in the art to allow the apparatus disclosed in the prior art references to operate so that the same image viewed when in display mode is displayed again when returning to display mode from photography mode "irrespective of the duration," since doing so is a mere design choice, the application of common sense, and the application of familiar elements according to known methods that would yield predictable results.

Moreover, it would have resulted from combining prior art elements according to known methods to yield predictable results, the simple substitution of one known element for another to obtain predictable results, the use of known techniques to improve similar devices in the same way, and applying a known technique to a known device to yield a predictable result.  One of ordinary skill in the art would have been motivated to perform adopt the claim limitations identified above since the motivation to combine the teachings of these prior art references can be found in each of (1) the references themselves, (2) the nature of the problem being solved, (3) the express, implied and inherent teachings of the prior art, (4) the knowledge of persons of

ordinary skill in the art, (5) the fact that the prior art is generally directed towards managing the display of images on a digital camera, and (6) the predictable results obtained in combining the elements of the prior art.

For example, in the 2004-2005 timeframe, digital cameras and camera phones were publicly available.  At around the same time, the storage capacity of digital camera recording mediums, such as memory cards, increased from tens to hundreds of megabytes.  Accordingly, hundreds of images could be stored in digital cameras.  (*See, e.g.*, U.S. Patent Publication No. 2005/0134708 to Lee et al. at ¶ [0005].)

Digital cameras provided a viewing function for displaying a recorded image on a display screen that was provided in the digital camera. When viewed on the display screen of the digital camera, one approach was to display the image that was recorded last on the display screen. Typically images were viewed in sequential order. Because the recorded images were always displayed in reverse sequential order, even when viewing again after the viewing has been interrupted to perform image recording, there was the possibility that images that had been viewed the previous time will be displayed redundantly on the display screen.  (*See, e.g.*, Japanese Unexamined Patent Application Publication No. 2005-064927 to FujiFilm Corp. at [0002] - [0005].)  Thus, there was recognition that there were limitation with viewing images sequential and maintaining the order and ability to view the same image again upon interruption of viewing was desired.  The prior art taught this precise feature as explained in the claim charts for the '807 patent, '082 patent, KR '972 patent and JP '927 patent.  As discussed above, to the extent any of these references is found not to contain an explicit teaching of the "irrespective of the duration" limitation, using common sense and the teaching of the prior art, a person of ordinary skill in the art would recognize that it would be useful to display the same image a user

was viewing before interruption, e.g., to capture an image, when returning to view images no matter how long the user was using a digital camera to capture images.

In addition, the additional features recited in the asserted claims—*i.e.*, identifying the image file that is being displayed; setting in a memory of the digital image processing apparatus an index value of the single image file that is being displayed; reading the memory to retrieve the index value; setting a flag and setting a bookmark on the single image file that is being displayed; sequentially displaying single image files of the plurality; and updating the index value stored in the memory of the digital image processing apparatus each time a currently-displayed image file is changed; determining if the index value is in a reset state; the controller is operative to identify the single image file that was most recently displayed in the stored-image display mode; each image file stored in the recording medium includes a unique file index value and the controller causes the unique file index value of the single image file that was most recently displayed in a file index memory to be stored; the controller comprises at least one of a digital camera processor and a microcontroller; a user input including a mode-switching actuator for switching the controller between the stored-image display mode and the photographing mode; the user input further comprises at least one directional actuator for displaying a previous and a next image file in the stored-image display mode, the controller updating the file index memory with a different unique file index value each time the at least one directional actuator is pressed and the controller is operative to read the memory for retrieving the file index value in response to the mode-switching actuator being pressed when switching the controller from the photographing mode to the stored-image display mode—were also taught in the prior art listed above, and in any event, represent mere design choices that would have been obvious to a person of ordinary skill in the art.  As the Supreme Court made clear in *KSR*, "if a technique has been

used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." 550 U.S. at 417; *see also id.* at 419 ("[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation") and *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1260 (Fed. Cir. 2007) (noting that "'[a] person of ordinary skill is also a person of ordinary creativity'" (quoting *KSR*, 550 U.S. at 421)).  These additional features would be well within the skill set of a person of ordinary skill in the art, and, would therefore have been merely the result of ordinary design efforts.

Under the standard set forth in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), and the Federal Circuit's recent decisions, the asserted claims of the '893 patent (which issued *before KSR* was decided) would have been obvious.

These combinations reflect Apple's present understanding of the potential scope of the claims that Samsung appears to be advocating, and should not be seen as Apple's acquiescence to Samsung's interpretation of the asserted claims.  Moreover, these examples are illustrative of the multitude of potential combinations of the prior art, and are not exhaustive.  Apple reserves the right to rely on other combinations of the prior art, including other combinations of the prior art references identified above with each other and/or with the prior art references disclosed in the prosecution history of the '893 patent.

J.   The '460 Patent

Any reference or combination of references that anticipates or makes obvious an asserted independent claim also makes obvious any asserted claim dependent on that independent claim because every element of each dependent claim was known by a person of ordinary skill at the