# EXHIBIT 8

Highly Confidential - Attorneys' Eyes Only

1             UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

3      --------------------------------

4      APPLE, INC., a California        )

5      corporation,                     )

6              Plaintiff,               ) Case No.

7          vs.                          ) 11-CV-01846-LHK

8      SAMSUNG ELECTRONICS CO., LTD.,   )

9      a Korean business entity;        )

10     SAMSUNG ELECTRONICS AMERICA,     )

11     INC., a New York corporation;    )

12     SAMSUNG TELECOMMUNICATIONS        )

13     AMERICA, LLC, a Delaware limited )

14     liability company,               )

15             Defendants.              )

16     --------------------------------)

17     AND RELATED COUNTER-CLAIM        )

18     _____)

19          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

20        VIDEOTAPED DEPOSTION OF PAUL DOURISH, Ph.D.

21             Los Angeles, California

22                 May 2, 2012

23     Reported by:

24     GAIL E. KENNAMER, CSR 4583, CCRR

25     Job No. 48817

Highly Confidential - Attorneys' Eyes Only

1  interpretation, but I do not commit myself to agreeing

2  with Samsung's interpretation.

3       Q   Right.  Okay.  I think I understand what

4  you're saying.

5       Do you agree that under Dr. Yang's reading of the

6  asserted claims of the '893 patent, that the -- that

7  those asserted claims cover Apple's accused products?

8            MR. SOUTO:  Objection to form.

9            THE WITNESS:  I have not formed or offered an

10  opinion on whether under Dr. Yang's construction there

11  is infringement.

12   BY MR. STRETCH:

13       Q   Let's talk about the iBook system, which you

14  describe beginning at page 24 of your report,

15  Paragraph 72.

16       This morning we talked about how -- Well, strike

17  that.

18       This morning you -- you told me that in your view

19  if the Court adopted the -- the closed-ended

20  interpretation of the claim language consisting of,

21  that the references that you had identified as

22  anticipating, the '893 would no longer anticipate but

23  would render the claims obvious.

24       Is that an accurate characterization?

25       A   That's not quite an accurate characterization.

Highly Confidential - Attorneys' Eyes Only

Page 112

1      Q    Okay.  Can you please tell me how it's

2  inaccurate or correct me.

3      A    The discussion that I offered this morning

4  referred only to the method claims of the '893 patent.

5      Q    Okay.

6      A    So my -- so my position -- the position that I

7  laid out this morning is that if the Court were to

8  determine that the terms "consisting of" should be read

9  as a closed term, which to my understanding is set out

10  in my rebuttal report means including no other steps or

11  parts, then the prior art that I identified here as

12  being anticipatory would not anticipate on that

13  basis --

14      Q    Okay.

15      A    -- alone, but I feel would still render

16  obvious to one of ordinary skill of the -- the -- the

17  claims -- the method claims of '893 patent.

18      Q    And particularly with respect to the Apple

19  iBook that is connected to the iSight peripheral -- and

20  that's discussed here beginning at page 24 -- why is it

21  that this would not anticipate the method claims if the

22  Court adopted the -- the closed language construction

23  of the method claims that we've discussed?

24      A    To the best of my understanding of the --

25  the -- of the legal position around -- around a closed

Highly Confidential - Attorneys' Eyes Only

1  claim, the fact that the Apple iBook does many more

2  things, has many more parts, is a -- is a general

3  purpose system that includes many more pieces of

4  hardware, many more functions, it does not meet the

5  closed limiting reading of that -- of the -- of the

6  patent description, the '893 description.

7      Q   So it cannot perform the -- So taking Claim 1

8  for example, the iBook would not be capable of

9  performing the method consisting of the sequential

10 steps that are set forth?

11     A   No.  That's not my understanding here.  My --

12 my position on what the iBook does and how it meets the

13 claim language of the '893 patent is set out in the

14 report here and in exhibit -- in the claim charts in

15 Exhibit 3.

16     My understanding of the language of the closed

17 claim is not only that it requires no other step --

18 intervening steps, but that it also speaks to the

19 absence of other parts and other functions in the

20 device.

21     And so it is under that -- it's on that basis,

22 that, again, to the best of my legal understanding, the

23 iBook would not anticipate on that base -- on that

24 basis alone.

25     The con- -- the concern that drives my -- the

Highly Confidential - Attorneys' Eyes Only

1  position that I -- that I described this morning with

2  respect to anticipation in closed claims is concerning

3  the "consisting of" and not the sequentiality of the

4  steps.

5      Q   So "consisting of" would -- would be limited

6  to -- I mean, the closed-ended interpretation that --

7  in your understanding "consisting of" would be limited

8  to the steps that are set forth rather than the

9  sequential performance; is that right?

10             MR. SOUTO:  Objection to form.

11             THE WITNESS:  To the extent that I can

12  provide an interpretation of -- of a legal term, which

13  I believe that -- and a ruling that the Court gets to

14  make, that is, yes, I agree that my -- my understanding

15  is that it is the "consisting of" that -- that

16  constitute the way in which a closed term -- a closed

17  claim would render this -- render the prior art that I

18  identified as anticipatory as not anticipating the

19  method claims.

20   BY MR. STRETCH:

21      Q   Do you understand the -- the -- in Claim 1,

22  for example, is the method consisting of the sequential

23  steps.  But if I understand you correctly, you're not

24  saying that it's -- that -- the actual steps of the

25  method that render the -- your claim that the iBook

Highly Confidential - Attorneys' Eyes Only

1   system is -- is no longer anticipatory; you're saying

2   that because the iBook is capable of performing other

3   functions, it's -- it's a general purpose computer?

4   That that's why it would not anticipate Claim 1?

5        A    The my -- my understanding of the -- of the

6   law and the reading of that -- of the term "consisting

7   of", speaks to the absence of other parts or steps.

8        I -- when -- when conducting my invalidity

9   assessment, I did incorporate the fact that these had

10  to be sequential steps.

11       Q    Okay.  In your opinion, is the iBook system

12  connected to the iChat peripheral, a digital image

13  processing apparatus?

14       A    I have no reason not to classify it that way.

15       Q    And are you relying on the particular iBook

16  connected to the iSight peripheral loaded, I believe,

17  with OS 10.3 as the basis for your arguments,

18  irrespective whether it's anticipation or obviousness,

19  or are there user manuals or other written material

20  that you're relying on in connection with your -- your

21  iBook system?

22            MR. SOUTO:  Objection to form.

23            THE WITNESS:  Yeah.  Could you run that past

24  me again, please.

25

Highly Confidential - Attorneys' Eyes Only

Page 116

1    BY MR. STRETCH:

2        Q   Yeah.  I just want to understand if -- I want

3    to leave aside the purposes for which you're using the

4    iBook system.

5        So whether it's anticipation or obviousness,

6    leaving that aside, are you relying on just the

7    physical system, the iBook with the iSight peripheral

8    and the particular operating system that was loaded on

9    the iBook at the time, or is there additional written

10   materials such as user manuals or other written

11   materials that inform your understanding of how the

12   iBook works?

13           MR. SOUTO:  Objection to form.

14           THE WITNESS:  So your concern is with the

15   basis on which I form an opinion about how the iBook

16   operates in that -- in the configuration that I

17   describe in my invalidity --

18   BY MR. STRETCH:

19       Q   Yes.

20       A   -- report?

21       The position with respect precisely to how the

22   device operates and the analysis that is presented in

23   the -- in my report and in its exhibits is based on my

24   experience with the device itself and the software and

25   the configuration described in Paragraph 72.

Highly Confidential - Attorneys' Eyes Only

Page 117

1    Q   Okay.  Do you consider the iBook system to be

2    an embedded system?

3    A   No, I do not.

4    Q   And you personally inspected the iBook system

5    that's described in your report?

6    A   Yes, I did.

7    Q   Okay.  Do you know who set up the system?

8    A   In what meaning of the term "set up"?

9    Q   In other words, who got the iBook, who loaded

10   it with the OS 10.3 software, who connected the iChat

11   peripheral?

12   A   No.

13   Q   Okay.  Do you know when it was set up?

14   A   Not off the top of my head, no.

15   Q   Okay.  Did you identify the iBook system to

16   use as prior art against the '893 patent?

17   A   No.

18   Q   To your knowledge, were any default settings

19   on the system modified in order to generate the screen

20   shots depicted in your charts?

21   A   I have no knowledge of that.

22       MR. STRETCH:  Okay.

23   We need to change the tape.

24       VIDEO OPERATOR:  This concludes DVD Number 2.

25   We're now going off the video record.  The time is

Highly Confidential - Attorneys' Eyes Only

Page 118

1   2:33.

2       (A recess is taken.)

3           VIDEO OPERATOR:  We're back on the video

4   record.

5       This is DVD Number 3.  The time is 2:49.

6   BY MR. STRETCH:

7       Q   Doctor, just before we broke, we were

8   discussing the iBook system, and I'd asked -- I'll

9   start all over again.

10      And I had asked you whether you knew if any

11  default settings on the system were modified in order

12  to generate the screen shots depicted in your

13  invalidity contentions, and you said you don't know; is

14  that right?

15          MR. SOUTO:  Objection to form.

16          THE WITNESS:  I said that I do not know.

17  BY MR. STRETCH:

18      Q   Okay.  Did you ask anybody?

19      A   I don't believe that I did, no.

20      Q   I have marked as Exhibit 4, Exhibit 3A, to

21  your invalidity report.  It does not have a Bates

22  number on it, but I believe it's your chart addressing

23  the iBook.

24      If you want to take a minute to look through that,

25  just to confirm that to be the case, that will be fine.

Highly Confidential - Attorneys' Eyes Only

Page 119

1    I just have a couple questions about it.

2           (Deposition Exhibit 4 was marked for

3    identification by the court reporter.)

4           THE WITNESS:  (Indicating.)

5    BY MR. STRETCH:

6        Q   Is this the chart that was attached to your

7    invalidity report?

8        A   Yes, it is.  And on the basis of reviewing it,

9    I would like to correct a misstatement that I made

10   earlier, if that's okay.

11       Q   Sure.

12       A   Which is that -- that in this exhibit, I do

13   rely upon some Apple documentation, particularly with

14   respect to the anticipation of the -- of the apparatus

15   claims toward -- towards that; so I apologize for

16   misleading you earlier.

17       Q   No problem.  It's not a memory test.

18       Did you generate the screen shots that are

19   included in Exhibit 4?

20       A   No, I did not.

21       Q   Do you know who did?

22       A   No, I do not.

23       Q   Okay.  Did you use -- When you inspected the

24   system, approximately how long did you spend with it?

25       A   Approximately half an hour.

Highly Confidential - Attorneys' Eyes Only

Page 120

1    Q   Okay.  Did you use the iSight camera to

2    capture a photo?

3    A   Yes.

4    Q   Did you review photos on the system?

5    A   Yes.

6    Q   Did you use both the iPhoto's application and

7    the Preview application?

8    A   Yes.

9    Q   Prior to inspecting the iBook system, did you

10   review Apple's invalidity contentions regarding the

11   '893 patent?

12   A   I -- Yes.

13   Q   Okay.  And did you attempt to perform the

14   steps that are depicted in Apple's invalidity

15   contentions?

16   A   I performed the steps that are set out in my

17   report.  I do not immediately recall whether I used --

18   specifically used Apple's invalidity contentions in --

19   in proceeding through those -- through those steps.  At

20   the point where I used the device, I used a draft of my

21   own report.

22   Q   Do you recall that the iBook system that you

23   inspected does not display a most recently stored image

24   file in the iPhoto or Preview application unless the

25   user manually imports the most recently stored image

Highly Confidential - Attorneys' Eyes Only

Page 121

1   into the gallery?

2      A   I do not recall because I did not execute that

3   function because it is not part of the -- not one of

4   the steps in the method disclosed in the '893 patent.

5      Q   Okay.  And --

6      A   Sorry.  I should add and not a required step

7   in order to fulfill -- in order to go through the

8   process laid out in the '893 patent.

9      Q   Did you attempt to investigate whether anyone

10  ever used the -- the iBook system in -- Strike that.

11     Are you aware of any evidence that anyone ever

12  performed the steps set forth in Claim 1 of the '893 on

13  the iBook system before March 15th, 2005?

14     A   Let me just be sure what you're asking.

15  Actually, could you repeat the question.

16     Q   Sure.

17     Are you aware of any evidence that anyone ever

18  performed the steps set forth in Claim 1 of the '893

19  patent on the iBook system prior to March 15, 2005?

20     A   I have no evidence that anybody performed

21  those precise steps using that particular configuration

22  of software.

23     Q   Let me ask you to -- to assume that as

24  Dr. Yang set forth in his report wh- -- that after

25  inspecting the system, a user had to manually import

Highly Confidential - Attorneys' Eyes Only

Page 122

1    the -- the most recently stored image into the iBook's

2    photo gallery in order to display it.  Let me just ask

3    you to assume it.  You said you didn't perform that

4    step, but let me ask you to assume that's the case.

5         If that is the case, then I take it you'd agree

6    that it's not just a design decision as to which photo

7    to display if, in fact, you don't have the option of

8    displaying the most recently stored image without

9    manually importing it into the image gallery?

10                MR. SOUTO:  Objection to form.

11                THE WITNESS:  No, I would not agree with

12   that.  There is still an important design decision to

13   be made as to which image will be shown.  A programmer

14   could choose to show the last -- the first image or the

15   first image taken today or the image most like the

16   image last shown.

17   BY MR. STRETCH:

18        Q   As you sit here today, are you aware of any

19   devices that employed any of those particular design

20   decisions before March 15, 2005?

21        A   I can't point to or identify off the top of my

22   head a specific device.

23                MR. STRETCH:  Tab 6 please.

24        I'm going to mark as Exhibit 5 a Japanese '927

25   Application.  Bates Numbers APLNDC-WH0000021200 through

Highly Confidential - Attorneys' Eyes Only

1    Q   So there is a need to enter a command for

2   continuous viewing on the device in order to see the

3   last-displayed image when switching back to the

4   reproduction mode from the photographing mode?

5         MR. SOUTO:  Objection to form.

6         THE WITNESS:  It is the -- The patent

7   description, as I read it, is open as to whether the

8   continuous-viewing operation performs itself a mode

9   switch rendering it unnecessary to provide two separate

10  functions.

11   BY MR. STRETCH:

12    Q   Okay.

13    A   It further, as specified -- as specified in

14  Paragraph 55, is not to my reading, committed as to

15  order.

16    So like the '893 patent, it displays two

17  different -- two continuous display mode and a normal

18  display mode.

19    But my reading of that paragraph in particular,

20  does not necessarily commit as to the order in which

21  different modes are selected.

22    However, as I stated earlier, the -- my position

23  with respect to specific disclosures of the '893 patent

24  is as laid out in the exhibits here.

25    Q   Okay.  Let me hand you Exhibit 8, which is a

Highly Confidential - Attorneys' Eyes Only

1    Korean '792 patent.  The Bates number for that is

2    APLNDC-WH0000009255 through -9261.

3              (Deposition Exhibit 8 was marked for

4    identification by the court reporter.)

5              MR. STRETCH:  Let me hand you Exhibit 9,

6    which is the English translation of same.  The Bates

7    number for that is APLNDC-WH0000009262.

8              (Deposition Exhibit 9 was marked for

9    identification by the court reporter.)

10             MR. STRETCH:  And I will hand you Exhibit 3C

11   to your invalidity report.

12             MR. SOUTO:  Thank you.

13        What are we doing with this one?

14             MR. STRETCH:  I'm going to pose a question.

15             MR. SOUTO:  I'm sorry.  Are we going to mark

16   Exhibit 3C as an exhibit?

17             MR. STRETCH:  Oh, I'm sorry.

18             MR. SOUTO:  You didn't -- you didn't identify

19   it as an exhibit.

20             MR. STRETCH:  I apologize.

21             MR. SOUTO:  You might have marked it as an

22   exhibit, but you didn't say.

23             MR. STRETCH:  I did.  Which exhibit there?

24             THE WITNESS:  It's Exhibit 10.

25             MR. STRETCH:  Okay.  Exhibit 3C is

Highly Confidential - Attorneys' Eyes Only

Page 133

Exhibit 10.

MR. SOUTO:  Thank you for offering to give me your preview of your question anyway.

(Deposition Exhibit 10 was marked for identification by the court reporter.)

THE WITNESS:  (Indicating.)

BY MR. STRETCH:

Q   So I'd like to ask you in particular about Paragraph 120 in your invalidity report, regarding this reference.

Before I do that, as with the iBook system and the Japanese '927 reference we just looked at, I take it your correction to your report this morning regarding the closed-ended term language of "consisting of" applies with equal force to this reference, in that it would not anticipate the method claims should the Court adopt that plain meaning but it would still render obvious the claims of the -- the method claims of the '893 patent in combination or in view of other references?

A   I'm going to have to ask you to repeat that question, please, just to be sure that I give you the correct and accurate answer.

Q   Well, we've talked several times today about the correction to the report that you gave me; right?

1    Which is that you now have an understanding that

2    "consisting of" can be interpreted to be closed-ended

3    and -- and meaning only the language that is

4    specifically set forth, as opposed to the open-ended

5    comprising language; right?

6         A    That is my current understanding, yes.

7         Q    Okay.  All right.

8         And we talked about how given that updated

9    understanding, the references you identified as

10   anticipating the method claims of the '893 patent no

11   longer anticipated the '893 method claims if the Court

12   adopted that closed-ended meaning of "consisting of";

13   right?

14        A    Yes.

15        Q    Okay.  And this -- and by "this," I mean the

16   Korean application we're currently looking at, the

17   '792.  Actually, it's the Korean patent.  The '792 is

18   one of those references?

19        A    Yes, it is.

20        Q    Okay.  Now, drawing your attention to

21   Paragraph 120 of your report, it says, The KK -- "The

22   KR '792 patent discloses irrespective of the duration,

23   first displaying again only the single image file that

24   was displayed when switching from the reproduction mode

25   to the photographing mode."

Highly Confidential - Attorneys' Eyes Only

1      And then you say, "(See e.g. ...'792 patent,

2  page 5-4" -- Or maybe it's Paragraph 5-4.

3      You say, "Page 5-4 and Drawing 3."

4      So while you're reviewing those materials, could

5  you just do so with my question in mind, which is:  How

6  is it that page -- the information contained on

7  page 5-4 and Figure 3 or Drawing 3 disclose that

8  particular limitation?

9      A   The text that sets out the disclosure is

10  included in Exhibit 3C of my invalidity report,

11  appearing on pages 7 to 8.

12      Q   Okay.  And is that the paragraph that begins

13  "Now, if the Number 2 slide show menu is selected"?

14      A   Sorry.  I -- that -- that -- that text that

15  I'm referring to is on page 7 of Exhibit C here.

16  There's a section there that reads, "The KR '792 patent

17  discloses..."

18      Q   Uh-huh.  Okay.  I'm sorry.  Yes.

19      So it's on page 5-4, two paragraphs up from where

20  I started reading where now if -- the Number 2.

21      So it's "First, If the #1 menu 'view photograph'

22  is selected from the current screen (D100), then screen

23  (D200) appears, and then the list of the photographs,

24  the list of the photographs stored in the memory

25  appears.  Once the desired photographs are thus

Highly Confidential - Attorneys' Eyes Only

1   selected, then the corresponding photographs appear as

2   in the screen (D300).  Here, the photographs can be

3   continuously displayed using the direction keys and

4   without having to return to said screen...and by

5   pressing the confirm key, one can return to the list

6   screen...once again."

7       And then you continue with the paragraph that I

8   started reading.

9       "Now, if the #2 'slide show' menu is selected in

10   the screen" -- I don't want to read this all into the

11   record, but please review it.

12       And my question simply is:  Can you explain to me

13   how this language that appears in your chart at pages 7

14   and 8, along with Drawing Number 3, discloses the

15   limitation that irrespective of the duration first

16   displaying again only the single image file that was

17   displayed when switching from the reproduction mode to

18   the photographing mode.

19       A    The text as a whole expresses and discloses

20   the limitation.

21       Q    How does Figure 3 disclose that or Drawing 3?

22   I'm sorry.

23       A    I -- I don't point to a -- don't offer

24   opinions about specific pieces of text in specific

25   figures.  I provide the totality of that text and the

Highly Confidential - Attorneys' Eyes Only

1   figure as an expression that discloses the limitation

2   of the claim.

3        Q    Okay.  So you have no opinion as to what

4   Figure 3 discloses other than it's part of the totality

5   of the evidence which leads you to believe that that

6   particular limitation is disclosed?

7        A    Yes.  As part of my report, I offer no

8   specific opinion about one selected element or another.

9   I offer the totality of the text as an expression of

10  the disclosure of the limitation.

11       Q    Okay.  So you can't point to any particular

12  sentence -- Strike that.

13       You can't point to any specific sentence or the

14  figure to indicate that this particular limitation is

15  disclosed in this Korean patent '792 --

16           MR. SOUTO:  Objection to form.

17   BY MR. STRETCH:

18       Q    -- is that correct?

19           MR. SOUTO:  I apologize.  Objection to form.

20           THE WITNESS:  It's my opinion that the

21  totality of text as expressed here discloses that

22  limitation.

23           MR. STRETCH:  Okay.  Let me mark as

24  Exhibit 11, U.S. Patent '082, Hayashi.  Bates Number

25  APLNDC-WH0000004184 through -4195.