# EXHIBIT 11

CONTAINS INFORMATION DESIGNATED AS SAMSUNG HIGHLY
CONFIDENTIAL ATTORNEY'S EYES ONLY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Counterclaim-Defendants. | Civil Action No. 11-CV-01846-LHK |

**Expert Report of Tony D. Givargis, Ph.D.**
**Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,698,711**

## VIII. Claim Constructions Used in this Expert Report

93.     The interpretation of the term "applet" in the asserted claims of the '711 patent is disputed between the parties. I understand that the parties have proposed claim constructions as set forth below.

| Claim No. | Disputed Term | Apple's Proposed Construction | Samsung's Proposed Construction |
|---|---|---|---|
| 1, 9, 17 | "applet" | "An operating system-independent computer program that runs within an application module." | "A small application designed to run within another program." |

94.     I understand that as of the date of this report, no Claim Construction Order has yet been issued by the Court. My opinions set forth in this report are applicable under either party's proposed construction.

95.     I understand that the parties have not proposed specific constructions, nor has the Court provided a construction, for any other term in the asserted claims of the '711 patent. As a result, I understand that I should give the claim terms the ordinary and plain meaning that a person of ordinary skill in the art would understand such terms to mean in the context of the '711 patent and its prosecution history. I have applied such plain meaning in my analysis.

## IX. The Prior Art Renders the '711 Claim Obvious

### A.     Summary of Prior Art References



**CONTAINS INFORMATION DESIGNATED AS SAMSUNG HIGHLY
CONFIDENTIAL ATTORNEY'S EYES ONLY**

- Displaying an indication that the music device is being played

- Selecting and performing at least one function of the pocket-sized mobile communication device while the playing of the music continues

- Continuing to display the indication that the music file is being played while performing the selected function

- Selecting a message function as required by claims 7 and 15

- A controller for selecting and playing a music file in the pocket-sized mobile communication device and selecting and performing at least one function of the pocket-sized mobile communication device while the playing of the music file continues as required by asserted independent claim 9

- A multi-tasking apparatus in a pocket-sized mobile communication device and a display unit for displaying an indication that the music file is being played as relates to independent claim 17

*U.S. Pub. App. 2004/0077340 to Forsyth*

124.  U.S. Pub. App. 2004/0077340, referred to as the Forsyth reference, published on April 23, 2004 and is therefore prior art under 35 U.S.C. §102 because it published more than one year prior to the earliest filing date of the '711 patent.

125.  Forsyth outlines a mobile device having a screen that displays realtime information of particular intrest to the user while the phone is not in use and essentially in idle mode.  Forsyth specifically provides the example of a mobile device playing an MP3 music file and displaying information about the current track being played or the artist information on the standby screeen.

*Q.H. Mahmoud, "The J2ME Mobile Media API"*

126.  The article by Q. H. Mahmoud titled "The J2ME Mobile Media API" has a publication date of June 2003, more than a year before the earliest filing date of the '711 patent, making it prior art under 35 U.S.C. §102.

127.  The Mahmoud article describes the design of an MP3 player, with background playback capabilities intended for mobile phones.  The specific example provided by Mahmoud

**CONTAINS INFORMATION DESIGNATED AS SAMSUNG HIGHLY
CONFIDENTIAL ATTORNEY'S EYES ONLY**

builds a "MIDlet" application. See, e.g., "J2ME Tutorial" provided at p.3 ("MIDlets are applets for mobile phones.")(APLNDC-WH-A0000025002). A MIDlet is an applet but with slightly restricted access to resources (such as display or memory). As with applets, MIDlets are usually written in Java, are object-oriented, are interpreted by a host application. On very resource-constrained systems, such a low-end mobile phones, a developer might chose to target a MIDlet rather than an applet, but the person of ordinary skill would recognize that the code segment disclosed in Mahmoud is consistent with what one would have to write in order to design an less-constrained applet for a mobile device.

128.    Mobile phones leading up to 2005 commonly provided support for the Java Micro Edition (JME) and the Mobile Media API (MMAPI). The JME is a Java Virtual Machine (JVM) specification specifically designed for resource constrained mobile devices. Benefits of supporting the JME include an object oriented programming model and a device-independent API that facilitates rapid application design and deployment. The Mobile Media API (MMAPI) disclosed in Mahmoud is noted as being "designed to run with any protocol and format." Mahmoud at abstract. The Mahmoud article outlines an implementation of an MP3 player application with background play capabilities in as little as 29 lines of Java code. The MP3 play object, named "player" is constructed as follows:

```
Player player =
Manager.createPlayer(Manager.TONE_DEVICE_LOCATOR);
```

129.    The Mahmoud article further demonstrates how an MP3 play object can be instructed to begin the music playback, for instance when a User Interface (UI) command is issued by the user, as follows.

```
// non-blocking start
p.start();
```

130.    Of particular note is the "non-blocking" nature of the start method described in the paragraph above. A person of ordinary skill would recognize that a non-blocking method, in