# EXHIBIT 17

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

APPLE INC., a California corporation,

    Plaintiff,

      vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

    Defendants.

Civil Action No. 11-CV-01846-LHK

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

    Counterclaim-Plaintiffs,

      v.

APPLE INC., a California corporation,

    Counterclaim-Defendant.

**Expert Report of Mani Srivastava, Ph.D.
Regarding Invalidity of the Asserted Claim of U.S. Patent No. 7,577,460**

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

Infringement Contentions deviate from plain meaning.  Specifically, I believe Samsung's

apparent construction of "mode" and "sub-mode" deviates from the plain meaning to include

applications (also known as "apps") within the meaning of "mode" and "sub-mode."  Samsung's

apparent construction of "mode" and "sub-mode" does not distinguish those claim terms.  My

understanding of the plain meaning of the term "mode" is a distinct state of operation or setting

of a device or of an application.  My understanding of the plain meaning of the term "sub-mode"

is a mode that is subordinate to a higher level mode, and has a restricted or specialized set of

functionality.  Except as expressly specified in this report, all invalidity arguments are applicable

under both my understanding and Samsung's understanding of the terms "mode" and "sub-

mode."  The indefiniteness analysis presented below applies regardless of whether my

understanding or Samsung's understanding of the terms "mode" and "sub-mode" is assumed.

These statements apply equally to the analysis contained in the body of my report and the

attached claim charts even if not expressly stated in the charts (Exhibits 3A-3B, 4A-4F, 5A-5G,

6A-6C, 7A-7C, 8A-8C, and 9).  I have provided claim charts as Exhibits 3A-3B, 4A-4F, 5A-5G,

6A-6C, 7A-7C, 8A-8C, and 9 that identify where the elements of the asserted claims are found in

various prior art references.  I have attached the claims charts as exhibits to this report for ease of

reference, but it should be understood that they are part of this Report, and are expressly

incorporated into the Report.

64.    Although I have cited particular portions of the references discussed, these

citations are intended to assist the reader in understanding the various bases and prior art

teachings used in my conclusions.  They are not intended to be an exhaustive recitation of every

portion of these references in which these teachings may be found.  A person of ordinary skill in

the art would understand that the citations are merely exemplary, and that similar teachings may

be found at other pages or places in the references discussed, as well as in other prior art

references.

   A.    **Claim 1 of the '460 Patent is Anticipated by U.S. Patent No. 6,069,648 to Suso**
   ***et al.***

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

1.     **Description of U.S. Patent No. 6,069,648 to Suso *et al.***

65.     U.S. Patent No. 6,069,648 to Suso et al. was filed on August 14, 1998, and issued on May 30, 2000 ("the '648 patent").  The '648 patent is entitled "Information communication terminal device."  It was assigned to Hitachi, Ltd.

66.     The '648 patent describes a communication device integrating a portable telephone with a camera.  Of relevance to the '460 patent, the device described in the '648 patent allowed the user to make voice phone calls; capture, store and transmit images to another device; and select one of the various previously filmed and stored images by sequentially scrolling through them via cursor keys ('648 patent, Figure 7).

67.     The '648 patent relates "to an information communication terminal device having a video camera and, more particularly, an information communication terminal device which is convenient to carry and has a plurality of functions."  ('648 patent, col. 1, 5-9.)

68.     The '648 patent further discloses "there is also provided a mode selection button which can select a recording mode, a transmission/reception mode, and an information acquisition mode. When the recording mode is selected, a video image obtained by the video camera is displayed in the first display/operation part and an image stored in an image storing means is displayed in the second display/operation part. When the transmission/reception mode is selected, if the other side of transmission is a telephone of only voices, character information such as name, telephone number, and the like of the other side is displayed in the first display/operation part and operating means such as dials having the function of the touch panel is displayed in the second display/operation part. When the other side of transmission is a television telephone, an image obtained by the video camera and an image of the other side are displayed in the first display/operation part and the second display/operation part is used as an input section of character and figure data. When the information acquisition mode is selected, the menu of the information service is displayed in the second display/operation part and the information contents of the service selected from the menu are displayed in the first display/operation unit." ('648 patent, col. 1 l. 47 – col. 2 l. 12.)

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

69.     In particular the '648 states: "[i]n FIG. 8b, by touching the handwriting memo button 26b, a part of the display/operation part 5 becomes a picture plane of a memo and notes can be taken in the part. In this case as well, by touching the transmission button 24a, the memo can be transmitted to the other side." ('648 patent, col. 7, 51-55.)

70.     The '648 patent further provides that: "[b]y touching the attachment button 26a, the data is read out and a child picture plane is displayed (sum nail [*sic*—thumbnail] display) in a proper place in the display/operation part 5.  By touching cursor/scroll buttons 26c, the data displayed in the child picture plane can be scrolled. By adjusting the cursor on desired data and touching the transmission button 24b, the data can be transmitted to the other side." ('648 patent, col. 7, 42-49.)

## 2.     Opinions Regarding the '648 patent

71.     I was informed and understand that the '648 patent qualifies as prior art because it was filed on August 14, 1998 ('648 patent, cover page), which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

72.     It is my opinion that the '648 patent anticipates claim 1 of the '460 patent.  The claim chart attached as Exhibit 3A sets forth in detail how the '648 patent anticipates claim 1. The claim chart shows that the '648 patent discloses a device that functions as described by the asserted claim in Samsung's '460 patent.

73.     The '648 patent discloses a device operable to perform a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera.  (*See, e.g.*, '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b.)

74.     The '648 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function.  (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

75. The '648 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

76. The '648 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys. (*See, e.g.*, '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b.)

77. The '648 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

78. The '648 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode. (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

**B.     Claim 1 of the '460 Patent is Anticipated by the Nokia 9110 Communicator[1]**

**1.     Description of the Nokia 9110 Communicator**

79. The Nokia 9110 Communicator is a device that integrated voice, fax, E-mail, texting, calendar, notebook, address book, calculator functionalities, and internet service access. It also provided viewing and sharing with others via E-mail images captured through digital cameras connected via an infrared wireless link.  A digital camera connectivity application enables the transfer of images between the communicator and a digital camera module. (*See, e.g.*, Nokia 9110 Communicator User's Manual (1998), APLNDC-WH0000005243; Digital Camera Connectivity with Nokia 9110 Communicator (January 26, 1999), APLNDC-WH0000005318 to 5321.)

---

[1] Nokia 9110 Communicator mobile phone, together with the Nokia 9110 Communicator User's Manual (1998), APLNDC-WH0000005113 to 5302 ("Nokia 9110 Communicator User's Manual") and the Digital Camera Connectivity with Nokia 9110 Communicator (January 26, 1999), APLNDC-WH0000005318 to 5321 ("Nokia 9110 Communicator Digital Camera Connectivity"), collectively ("Nokia 9110 Communicator").

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

The convergence was desirable for reasons of user comfort, so that a mobile user could carry a single multi-functional device as opposed to multiple single function devices.  Moreover, there were cost reasons that were driving the convergence as well, since large parts of the hardware circuits and software of the different single function devices would have been identical, thereby incurring unnecessary duplicative costs.  For example, all the single function devices would have needed a microprocessor, memory, display screen, user interface elements, battery, and connectivity.

98.     I have analyzed obviousness by rigorously examining every limitation in the claim.  My conclusion is that the asserted claims were obvious.

99.     Below I offer illustrative discussions of particular references—with accompanying claim charts incorporated by reference herein, which analyze every claim limitation.  The analysis below—and the corresponding claim charts, which I incorporate by reference into my report—sets out certain exemplary combinations of prior art references.  But other combinations would be readily made by, and were obvious to, persons of ordinary skill— particularly in light of the obviousness of the core concepts, as discussed in the next section.

**B.      Claim 1 of the '460 patent is obvious over U.S. Patent No. 6,069,648 to Suso *et al.* in view of IBM Simon[2] or U.S. Patent No. 5,619,684 to Goodwin *et al.* or U.S. Patent No. 6,009,336 to Harris *et al.* or U.S. Patent No. 6,167,469 to Safai *et al* or U.S. Patent No. 6,573,927 to Parulski *et al.* or U.S. Patent No. 6,642,959 to Arai**

100.     As I discussed above in Section X.A, it is my opinion that the '648 patent anticipates claim 1 of the '460 patent.  It is also my opinion that claim 1 of the '460 patent is rendered obvious by the '648 patent in combination with either the IBM Simon or U.S. Patent No. 5,619,684 to Goodwin *et al.* or U.S. Patent No. 6,009,336 to Harris *et al.* or U.S. Patent No. 6,167,469 to Safai *et al*. or U.S. Patent No. 6,573,927 to Parulski *et al*. or U.S. Patent No. 6,642,959 to Arai.

**1.      Combination of the '648 Patent with IBM Simon**

---

[2] IBM Simon mobile phone together with the IBM Simon Users Manual (1994), APLNDC-WH0000005348 to 5397 ("IBM Simon Users Manual"), (collectively IBM Simon).

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

101.    IBM created a personal communications device called "Simon," which integrated many advanced communications and computing functions.  Specifically, IBM Simon provided a cellular telephone, a facsimile transmission and receiving capability, an electronic mail sending and receiving capability, and an electronic pager, a computer notepad, a computer address book, a computer calendar, and a computer calculator, all within a single compact portable package.

102.    The IBM Simon Users Manual disclosed the following: "[y]ou can use the Mail feature to send and receive electronic mail (E-mail) messages.  Simon can connect to a Lotus cc:Mail Post Office to send and receive electronic mail.  You can always tell how many messages you have by looking at the message list buttons on the main Mail screen.  The Received Messages button shows you how many messages you have in your Received Messages list (sometimes called an in-basket).  The Ready to Send button shows you how many messages you have waiting to send (sometimes called an out-basket). The Saved Messages button shows you how many messages you have saved."  (IBM Simon Users Manual (1994), p. 51.)

103.    IBM Simon further enabled users to create, view, and send faxes and to create a sketch using a sketch pad and fax it.

**Fax**

With the Fax feature, you can receive, create, view and send faxes.  For example, you can write on (annotate) a received fax, then send it somewhere else.  If you need a paper copy, just send it to a nearby fax machine.

(IBM Simon Users Manual, p. 43.)

**Sketch Pad**

The Sketch Pad lets you write on the screen with your stylus or finger.  You can save up to 32 sketches, and you can easily fax a sketch. However, keep in mind that the more sketches you save, the more Simon system memory you use, and the less you have available for other features such as Address Book and Calendar.

(IBM Simon Users Manual, p. 60.)

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

104.     I understand that the IBM Simon mobile phone together with the IBM Simon

Users Manual (1994), APLNDC-WH0000005348 to 5397 ("IBM Simon"), qualify as prior art

because IBM Simon was offered for sale no later than 1994 (APLNDC-WH0000005348-5397,

APLNDC-WH-A0000005299-304, APL7940017222001-026, APL794-NO000005000-008,

APL794-NO000005077-079, APL794-A0000055891-893), which is prior to the alleged

conception date of the '460 patent ("between early 1998 and February 11, 1999") and the filing

date of the Korean priority patent application (March 31, 1999).  I understand that the IBM

Simon mobile phone is a 35 U.S.C. §102(b) prior art reference to the '460 patent, because it was

offered for sale more than a year prior to the filing date of the earliest U.S. Patent Application,

that the '460 patent claims priority to.

105.     Both the device described in the '648 patents and the IBM Simon exemplify the

trend towards integration of mobile cellular phone, digital camera, and mobile computing

(including access to network-based information services such as electronic messaging) that was

in process well before the conception of the '460 patent.  Therefore, there were clear reasons to

combine  their functions, for example, to enhance the photographic and communication

capabilities of the device described in the '648 patent with the mobile computing capabilities of

IBM Simon, doing which would provide capabilities claimed in the '460 patent.  Furthermore,

how to achieve this integration would have been obvious to persons of ordinary skills in the art.

"Moore's Law", which is discussed above, enables exponentially larger number of electronic

devices to be manufactured in the same silicon area.  After all, as described in Section VI above,

there was already both a recognition of the need and desirability of integrating phone, digital

camera, and mobile computing (including E-Mail) functions in a single mobile device, and an

understanding of what such an integrated device would be like from functionality and user

interaction perspective.  "Moore's Law" had historically enabled other similar integrations of

functions into devices over several decades before the alleged conception of the '460 patent, and

continues to do so even today.

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

106.    For my analysis of the '648 patent and IBM Simon combination, I apply Samsung's apparent claim construction for the terms "mode" and "sub-mode" based on Samsung's Infringement Contentions (see Section X above), and apply plain meaning to the rest of the claim terms.  As further set forth in Exhibit 4A, it is my opinion that the combination of the '648 patent and IBM Simon teaches every element of claim 1 of the '460 patent and therefore renders claim 1 obvious.

107.    The combination of the '648 patent with the IBM Simon discloses a device capable of performing a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera.  (*See, e.g.,* '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b; IBM Simon Users Manual p. 51.)

108.    The combination of the '648 patent with the IBM Simon discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; IBM Simon Users Manual pp. 12, 34, and 51.)

109.    The combination of the '648 patent with the IBM Simon discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; IBM Simon Users Manual pp. 12, 34, 43, 45-46 and 51.)

110.    The combination of the '648 patent with the IBM Simon discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b.)

111.    The combination of the '648 patent with the IBM Simon discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; IBM Simon Users Manual pp. 12, 34, and 51-53.)

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

112.    The combination of the '648 patent with the IBM Simon discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; IBM Simon Users Manual pp. 12, 34, and 51-53.)

### 2.    Combination of the '648 Patent with U.S. Patent No. 5,619,684 to Goodwin *et al.*

113.    U.S. Patent No. 5,619,684 to Goodwin *et al.* was filed on  July 25, 1994, and issued on April 8, 1997 ("the '684 patent").  The '684 patent is entitled "Method and apparatus for consistent user interface in a multiple application personal communications device."  It is currently assigned to Mediatek Inc.

114.    The '684 patent recites an improved user interface for a personal communication device with an integrated cellular radio that provides multiple application programs for the user. The applications include telephone, E-Mail, fax, pager, notepad, address book, calendar, and calculator.  In particular, through this device a user could make voice phone calls and send E-Mails.

115.    The '684 patent discloses that "the LCD screen presents menu images to the user to enable the selection of communications applications such as telephone, facsimile (FAX), or electronic mail (E-mail). For each of these applications, a corresponding keypad and presentation area is displayed. The user has the option of employing either a public switched telephone network link or a cellular telephone network link for any of these communications applications. However, the functions required to be performed in order to send or receive a cellular telephone network call are different from the functions required for a call over a public switched telephone network."  ('684 patent, col. 2 ll. 42–52.)

116.    The '684 patent states: "FIG. 3 is an illustration of the appearance of the menu image 50M displayed on the display/touch overlay 112. The menu image 50M presents the user with communication application options such as voice communications, FAX communications,

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

or E-MAIL communications. The user selects one of the communications applications by touching the touch overlay membrane overlying the displayed application option. The selected application identity is then stored in the work space 138 of the RAM 102, to be used by the interface program 180, as described in the flow diagram of FIGS. 4A to 4D." ('684 patent, col. 9 ll. 35–45.)

117.    I understand that the '684 patent qualifies as prior art because it was filed as a patent application on July 25, 1994, which is prior to the alleged conception date of the '460 patent ("between early 1998 and February 11, 1999") and the filing date of the Korean priority patent application (March 31, 1999), and the '684 issued as a U.S. patent on April 8, 1997.  ('684 patent, cover page.)  I understand '684 patent is a 35 U.S.C. §102(b) prior art reference to the '460 patent, because it was patented more than a year prior to the filing date of the earliest U.S. Patent Application that the '460 patent claims priority to.

118.    Both the '648 and the '684 patents describe devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to enhance the photographic and communication capabilities of the device described in the '648 patent with the mobile computing capabilities of the device described in the '684 patent, doing which would provide the capabilities claimed in the '460 patent.  Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number of electronic devices to be manufactured in the same silicon area.  After all, as described in Section VI above, there was already both a recognition of the need and desirability of integrating phone, digital camera, and mobile computing (including E-Mail) functions in a single mobile device, and an understanding of what such an integrated device would be like from functionality and user interaction perspective.  "Moore's Law" had historically enabled other

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

1   similar integrations of functions into devices over several decades before the alleged conception

2   of the '460 patent, and continues to do so even today.

3   119.    For my analysis of the combination of the '648 and '684 patents, I apply

4   Samsung's apparent claim construction for the terms "mode" and "sub-mode" based on

5   Samsung's Infringement Contentions (see Section X above), and apply plain meaning to the rest

6   of the claim terms.  As further set forth in Exhibit 4B, it is my opinion that the combination of

7   the '648 patent and the '684 patent teaches every element of claim 1 of the '460 patent and

8   therefore renders claim 1 obvious.

9   120.    The combination of the '648 patent with the '684 patent discloses a device

10  operable to perform a data transmitting method for a portable composite communication terminal

11  which functions as both a portable phone and a camera.  (*See, e.g.,* '648 patent, col. 1 ll. 5 – 9,

12  col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b; '684 patent, col. 9 ll. 46–49, FIGS. 4A–4D.)

13  121.    The combination of the '648 patent with the '684 patent discloses entering a first

14  E-mail transmission sub-mode upon user request for E-mail transmission while operating in a

15  portable phone mode, the first e-mail transmission sub-mode performing a portable phone

16  function.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '684 patent,

17  col. 2 ll. 42–52, col. 9 ll. 35–45, col. 10 l. 51–col. 11 l.12, FIGS. 2–5F.)

18  122.    The combination of the '648 patent with the '684 patent discloses entering a

19  second E-mail transmission sub-mode upon user request for E-mail transmission while operating

20  in a display sub-mode, the second e-mail transmission sub-mode displaying an image most

21  recently captured in a camera mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and

22  FIGS. 8a–b.)

23  123.    The combination of the '648 patent with the '684 patent discloses sequentially

24  displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* '648

25  patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b; '469 patent col. 10 ll. 40–53, col.

26  2 l. 64– col. 3 l. 3, col. 10 ll. 44– 60, and FIG. 4C.)

27

28

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

124.    The combination of the '648 patent with the '684 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

125.    The combination of the '648 patent with the '684 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '684 patent, col. 2 ll. 42–52, col. 9 ll. 35–45, col. 10 l. 51–col. 11 l. 12.)

### 3.    Combination of the '648 Patent with U.S. Patent No. 6,009,336 to Harris *et al.*

126.    U.S. Patent No. 6,009,336 to Harris *et al.* was filed on  July 10, 1996, and issued on December 28, 1999 ("the '336 patent").  The '336 patent is entitled "Hand-held radiotelephone having a detachable display."  It is assigned to Motorola Mobility, Inc.

127.    The '336 patent discloses a handheld device that has a detachable display and being operable in different modes.  In one mode the device can operate as a communication device, such as a cellular radiotelephone.  In another mode the device can operate as camera.  In another mode, the device allows a user to write and send notes via electronic mail.

128.    The '336 patent discloses: "[t]he communication system 100 of FIG. 1 includes communication devices 102 and 104 that communicate over a communication link 106. The communication device 104 can be a wireless device, such as a cellular radiotelephone, a cordless telephone, a two-way radio, a modem, or the like, or the device can be a landline communication device, such as a telephone, a modem, a data terminal, or the like. The communication device 102 is any device compatible with the communication device 104, such as a dispatch center, a cellular base station, a cordless base, another telephone, a computer, or the like." ('336 patent, col. 2, ll. 55-65.)

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

129.    The '336 patent further discloses: "[t]he communication link 106 can be a wireless connection or a wireline connection, such as a twisted wire pair, a coaxial cable, or the like. The communication link 106 supports data communications between the communication devices 102 and 104. Such data communications include cellular radiotelephone service, paging service, two-way radio service, electronic mail service, wireless fax service, short message service, or the like." ('336 patent, col. 2, l. 66 – col 3, l. 6.)

130.    Additionally, "[i]n the camera mode 706, the photo switch 133 and the video switch 135, which are disposed in the recess 400 of the housing 108, are revealed. Upon detection of actuation of the photo switch 133 via bus 127 (FIG. 1), the controller 118 controls the wireless data transceivers 117 and 122 to couple transmit image data captured at an instant in time by the CCD camera 188 to the image DSP 152 for storage in the image memory 153 as a photo snapshot. Upon detection of actuation of the video switch 135 via bus 127 (FIG. 1), the controller 118 controls the wireless data transceivers 117 and 122 to initiate coupling of transmit image data captured by the CCD camera 188 to the image DSP 152 for storage in the image memory 153 as a video clip. Upon detection of an additional actuation of the video switch 135, the controller 118 controls the wireless data transceivers 117 and 122 to terminate coupling of the transmit image data. Upon detection of right and left actuation of the toggle switch 129 via signals on bus 127, the controller 118 configures the display 184 to display the images 1200 and 1300 zoomed-in and zoomed-out, respectively. Upon detection of touching the touchscreen 186 at the camera softkey 205, the controller 118 configures the display 184 to display a list of camera functions (similar to the list of functions 1102, FIG. 11, of the notes mode 704) that permit, for example, assigning a name to or retrieving photo snapshots and video clips stored in the image memory 153." ('336 patent, col. 12, ll. 5 – 30.)

131.    I understand that the '336 patent qualifies as prior art because it was filed as a patent application on July 10, 1996, which is prior to the alleged conception date of the '460 patent ("between early 1998 and February 11, 1999") and the filing date of the Korean priority

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

1    patent application (March 31, 1999), and the '336 issued as a U.S. patent on Dec. 28, 1999.

2    ('336 patent, cover page.)

3        132.    Both the '648 and the '336 patents describe devices that exemplify the trend

4    towards integration of mobile cellular phone, digital camera, and mobile computing (including

5    access to network-based information services such as electronic messaging) that was in process

6    well before the conception of the '460 patent.  Therefore, there were clear reasons to combine

7    their functions, for example, to enhance the photographic and communication capabilities of the

8    device described in the '648 with the mobile computing capabilities of the device described in

9    the '336 patent, doing which would provide capabilities claimed in the '460 patent.

10   Furthermore, how to achieve this integration would have been obvious to persons of ordinary

11   skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number

12   of electronic devices to be manufactured in the same silicon area.  After all, as described in

13   Section VI above, there was already both a recognition of the need and desirability of integrating

14   phone, digital camera, and mobile computing (including E-Mail) functions in a single mobile

15   device, and an understanding of what such an integrated device would be like from functionality

16   and user interaction perspective.  "Moore's Law" had historically enabled other similar

17   integrations of functions into devices over several decades before the alleged conception of the

18   '460 patent, and continues to do so even today.

19       133.    As further set forth in Exhibit 4C, it is my opinion that the combination of the

20   '648 patent and the '336 patent teaches every element of claim 1 of the '460 patent and therefore

21   renders claim 1 obvious.

22       134.    The combination of the '648 patent with the '336 patent discloses a device

23   operable to perform a data transmitting method for a portable composite communication terminal

24   which functions as both a portable phone and a camera.  (*See, e.g.,* '648 patent, col. 1 ll. 5 – 9,

25   col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b; '336 patent, col. 2 l. 55–col. 3 l. 8, col. 12 ll.

26   38–57, FIG. 1.)

27

28

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

135.    The combination of the '648 patent with the '336 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '336 patent, col. 1 ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.5, col. 10 ll. 33–46, FIGS. 2, 7–9, 11.)

136.    The combination of the '648 patent with the '336 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '336 patent, col. 12 ll. 5–37, FIGS. 7, 8, 13.)

137.    The combination of the '648 patent with the '336 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b.)

138.    The combination of the '648 patent with the '336 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '336 patent, col. 1 ll. 43–58, col. 2 l. 66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11.)

139.    The combination of the '648 patent with the '336 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '336 patent, col. 1 ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11.)

     **4.**     **Combination of the '648 Patent with the '469 Patent to Safai** *et al.*

140.    U.S. Patent No. 6,167,469 to Safai *et al.* was filed on  May 18, 1998, and issued on December 26, 2000 ("the '469 patent").  The '469 patent is entitled "Digital camera having

**CONTAINS INFORMATION DESIGNATED AS**
**SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

1    display device for displaying graphical representation of user input and method for transporting

2    the selected digital images thereof." It is currently assigned to Nokia Corporation.

3        141.    The '469 patent describes a device that integrated a digital camera with wireless

4    communication and mobile computing capabilities, thus allowing the user to not only capture

5    and store images but to also to scroll through stored images, and perform operations such as edit,

6    print, and electronic mail.  A user could E-mail one or more images by scrolling through the

7    stored images, selecting the desired images, entering the recipient's address, and optionally

8    recording and attaching a voice message. ('469 patent, Figures 3 and 4A-F.)

9        142.    The '469 patent discloses "a personal electronic handheld digital camera [that]

10   executes an application program that enables a user of the camera to send one or more digital

11   images, formed by and stored in the camera, from the camera to a destination.  One or more

12   addresses describing one or more destinations are selected or identified.  One or more stored

13   digital images are selected and associated with the one or more addresses." ('469 patent,

14   Abstract.)

15       143.    Specifically, in the '469 patent a "[c]omputer system 700 also includes a

16   communication interface 718 coupled to bus 702. Communication interface 718 provides a two-

17   way data communication coupling to a network link 720 that is connected to a local network

18   722…. Wireless links may also be implemented. In any such implementation, communication

19   interface 718 sends and receives electrical, electromagnetic or optical signals that carry digital

20   data streams representing various types of information." ('469 patent, col. 18 ll. 3–17.)

21       144.    The '469 patent further discloses: "[t]he display 300 comprises a welcome

22   message 301 and application selection icons. Preferably, the icons comprise a Mail icon 302,

23   Print icon 304, Edit icon 306, and Settings icon 308." ('469 patent, col. 7 l. 66–col. 8 l. 2.)

24   Additionally, "[m]enu 400 comprises an Address button 402, a Choose Photo button 404, a

25   Voice Message button 406, a Send Photo button 408, and a Done button 410. Each of the buttons

26   402-410 is used to select or activate a function of the transport application 230 associated with

27   the name or label of the button." ('469 patent, col. 8 ll. 28–33.)  In the '469 patent, "FIG. 5 is a

28

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

flow diagram of an embodiment of the image transport application 230. Operation of the image transport application 230 initiates with displaying the top-level menu 400, as shown by block 502. In block 504, a message is addressed.  In one embodiment, block 504 involves responding to a user's selection of the Address button 402.  In response, message addressing involves the steps shown in blocks 506-520.  Such steps will be described with reference to FIG. 4B, which is a block diagram of a display 412 generated during addressing steps of the image transport application, in one embodiment." ('469 patent, col. 8 ll. 37–47.)

145.    The '469 patent also discloses: "[o]ptionally, a user may record a voice message and associate the recorded voice message with the selected photos and addresses. To record and associate a voice message, the user selects the Voice Message button 406 from menu 400." ('469 patent, col. 11 ll. 27–31.)  The '469 patent further discloses: "[g]enerally, after entering one or more addresses, a user will next select one or more stored images, such as digital photos, to be sent to the one or more addresses." ('469 patent, col. 10 ll. 24–26.)

146.    Additionally, "[n]ormally, a digital camera stores a large number of digital images. For example, a digital camera can have a miniature storage device, such as a hard disk drive, mounted in it for image storage. Such disk drives are capable of storing on the order of several hundred images. Since only a few "thumbnail" views of the images can be displayed at a given time, the photo select screen 430 has backward/forward scroll buttons 437a, 437b. When a user selects buttons 437a, 437b, the images 432a-432d conceptually scroll left or right, respectively. This causes one of the images 432a-432d that is at the end of the display to disappear from the screen, and another image from among the stored digital images is displayed in its place." ('469 patent, col. 10 ll. 40–53.)

147.    I understand that the '469 patent qualifies as prior art because it was filed as a patent application on May 18, 1998 (the '469 patent, cover page), which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

148.    Both the '648 and the '469 patents describe devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to further enhance the photographic and communication capabilities of the device described in the '648 with the mobile computing and communication capabilities of the device described in the '469 patent, doing which would provide capabilities claimed in the '460 patent.  Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number of electronic devices to be manufactured in the same silicon area.  After all, as described in Section VI above, there was already both a recognition of the need and desirability of integrating phone, digital camera, and mobile computing (including E-Mail) functions in a single mobile device, and an understanding of what such an integrated device would be like from functionality and user interaction perspective.  "Moore's Law" had historically enabled other similar integrations of functions into devices over several decades before the alleged conception of the '460 patent, and continues to do so even today.

149.    As further set forth in Exhibit 4D, it is my opinion that the combination of the '648 patent and the '469 patent teaches every element of claim 1 of the '460 patent and therefore renders claim 1 obvious.

150.    The combination of the '648 patent with the '469 patent discloses a device operable to perform a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera.  (*See, e.g.,* '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b; '469 patent, Abstract, col. 18 ll. 3–17, and FIGS. 2 and 3–5B.)

151.    The combination of the '648 patent with the '469 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

function.  (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '469 patent, col. 7 l.66–col. 8 l.7, col. 8 ll. 28–36, col. 11 ll. 27–39, col. 12 ll. 1–14, and FIGS. 3–5B.)

152.    The combination of the '648 patent with the '469 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '469 patent, col. 7 l. 66–col. 8 l. 7, col. 8 ll. 28–36, col. 10 ll. 24–40, col. 11 ll. 27–39, col. 12 ll. 1–14, and FIGS. 3–5B.)

153.    The combination of the '648 patent with the '469 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.*, '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and FIGS. 7 and 8a–8b; '469 patent col. 10 ll. 40–53, col. 2 l. 64– col. 3 l. 3, col. 10 ll. 44– 60, and FIG. 4C.)

154.    The combination of the '648 patent with the '469 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '469 patent col. 7 l.66–col. 8 l.7, col. 8 l.28–col. 9 l.13, col. 9 ll. 25–30, col. 11 ll. 27–55, col. 12 ll. 1–14, col. 13 ll. 10–24, col. 14 ll. 9–24, and FIGS. 3–6.)

155.    The combination of the '648 patent with the '469 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.*, '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '469 patent col. 7 l. 66–col. 8 l. 7, col. 8 l. 28–col. 9 l. 13, col. 9 ll. 25–30, col. 10 ll. 24–39, col. 11 ll. 27–55, col. 12 ll. 1–14, col. 13 ll. 10–24, col. 14 ll. 9–24, and FIGS. 3–6.)

**5.    Combination of the '648 Patent with the '927 patent to Parulski *et al*.**

156.    U.S. Patent No. 6,573,927 to Parulski *et al.* was filed on  November 24, 1997, and issued on June 3, 2003 ("the '927 patent").  The '927 patent is entitled "Electronic still camera

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

for capturing digital image and creating a print order." It is assigned to Eastman Kodak Company.

157.   The '927 patent describes a device that integrated a digital camera with cellular transmitter for communications, and functions relating selecting images and then ordering prints, sensing them via E-Mail, and categorize into albums. The user selects the images by scrolling through them via buttons on the device. When being sent by E-mail, an image could optionally be associated with a background (borders), and a text message. One or more backgrounds and text messages are stored locally on the device after being downloaded from a server.

158.   The '927 patent discloses: "[a] digital camera includes a liquid crystal display (LCD) for viewing images captured from an image sensor and stored on a removable memory card. The LCD also presents a user interface (UI) that allows the user to create a print order 'utilization file'. As individual images are viewed, the user can decide how many (if any) prints to make of the image, the print size, and the, print quality (low cost ink jet versus high quality thermal prints, for example). The memory card can then be inserted in a home printer, walk-up kiosk, or dropped off/mailed to a photofinisher, or the camera itself can be connected to the printer or kiosk via a wired or wireless (e.g., IrDA) link. The print order can then be automatically produced without any additional user intervention." ('927 patent, Abstract.)

159.   "Alternately, a modem in the camera or card reader can transmit the utilization file and the image data to a print service provider, which can produce the prints and return them via mail to the user, or to a party designated by the user. The utilization file can alternately include e-mail addresses to allow images to be automatically sent to others, postal address information for sending print images, or albuming information to allow images to be placed in an on-line image database." ('927 patent, col. 2 ll. 19–27.)

160.   The '927 patent further discloses: "If the camera includes a transmitter, e.g., a cellular connection in the communications interface 28, the camera could include and initiate a "send" command that the user would enable after completing the e-mail order. This command would automatically send the appropriate images to the appropriate user's e-mail accounts

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

through the network 31 using the appropriate communications protocol (FTP, mailto, etc.)."

('927 patent, col. 4 ll. 29–36.)

161.   The '927 patent also discloses: After placing the memory card 36 in the camera (or disconnecting the camera from the host PC 10), the user can operate the camera 12 to take numerous pictures, which are stored either in the internal memory 32 or in the memory card 36 (or in both). After taking pictures, the user reviews the images on the LCD screen 24, using the buttons 26 to scroll through the images. The user can then select the desired 'downstream services' (printing, e-mailing, and/or albuming) and compose the order using the options listed in FIG. 2.  These services and options are accessed from the memory card 36 and, for example, the keyword descriptors are assembled in a menu and displayed on the LCD screen 24. Selections among these services and options are made, for example, by reference to the keyword descriptors and actuation of the user buttons 26. The details of the order information is written into a 'utilization' file generated by the camera that identifies the order and includes pointers to the image files that store the images required to 'fulfill' the order.  The 'utilization' file is stored in the internal memory 32 or the memory card 36." ('927, col. 3 ll. 25–44.)

162.   I understand that the '927 patent qualifies as prior art because it was filed as a patent application on November 24, 1997.  The '927 patent also claims priority to U.S. Provisional Application No. 60/037,963, filed on February 20, 1997. ('927 patent, cover page), which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

163.   Both the '648 and the '927 patents describe devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to further enhance the photographic and communication capabilities of the device described in the '648 with the mobile computing capabilities of the device described in the '927 patent, doing which would provide capabilities claimed in the '460 patent.

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number of electronic devices to be manufactured in the same silicon area.  After all, as described in Section VI above, there was already both a recognition of the need and desirability of integrating phone, digital camera, and mobile computing (including E-Mail) functions in a single mobile device, and an understanding of what such an integrated device would be like from functionality and user interaction perspective.  "Moore's Law" had historically enabled other similar integrations of functions into devices over several decades before the alleged conception of the '460 patent, and continues to do so even today.

164.     As further set forth in Exhibit 4E, it is my opinion that the combination of the '648 patent and the '927 patent teaches every element of claim 1 of the '460 patent and therefore renders claim 1 obvious.

165.     The combination of the '648 patent with the '927 patent discloses a device operable to perform a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera.  (*See, e.g.,* '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b; '927 patent, Abstract, col. 2 ll. 19–27, col. 4 ll. 9–11, col. 4 ll. 29–36.)

166.     The combination of the '648 patent with the '927 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '927 patent, col. 1 l. 67–col. 2 l. 28, col. 4 ll. 17–27, col. 4 l. 59–col. 5 l. 4, FIGS. 2–3.)

167.     The combination of the '648 patent with the '927 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

FIGS. 8a–b; '927 patent, col. 1 l. 67–col. 2 l. 28, col. 3 ll. 25–44, col. 4 ll. 17–42, col. 4 l. 59–col. 5 l. 4, FIGS. 1–3.)

168.    The combination of the '648 patent with the '927 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b; '927 patent, col. 3 ll. 25–44, FIG. 1A.)

169.    The combination of the '648 patent with the '927 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '927 patent, col. 1 l. 67–col. 2 l. 28, col. 4 ll. 17–27, col. 4 l. 59–col. 5 l. 14, col. 5 ll. 27–50, FIGS. 2–4, Appendix I.)

170.    The combination of the '648 patent with the '927 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '927 patent, col. 1 l. 67–col. 2 l. 28, col. 3 ll. 25–44, col. 4 ll. 17–42, col. 4 l. 59–col. 5 l. 14, col. 5 ll .27–50, FIGS. 1–4, Appendix I.)

### 6.    Combination of the '648 Patent with the '959 Patent to Arai

171.    U.S. Patent No. 6,642,959 to Arai was filed on  June 16, 1998, and issued on November 4, 2003 ("the '959 patent").  The '959 patent is entitled "Electronic camera having picture data output function."  It is assigned to Casio Computer Co., Ltd.

172.    The '959 patent describes a device that integrates a digital camera with a communication unit such as a cellular phone.  It provides functions that allow the user to capture and store images, and also select an image by scrolling through the stored images, and then send the image by E-Mail by entering a recipient address and a text memo through a virtual keyboard presented on the screen or an external keyboard.

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

173.    The '959 patent states: "[a] digital camera stores captured picture data and E-mail address data inputted from a key entry unit in a flash memory so that they are associated with each other and then transfers the picture data and the E-mail address data to a personal computer via an I/O port or an infrared communication unit. The personal computer receives the picture data and the E-mail address data transferred from the digital camera via an I/O port or an infrared communication unit. The received picture data is then transmitted to a destination terminal on a computer network on the basis of the received E-mail address data." ('959 patent, Abstract).

174.    The '959 patent further discloses: "The present invention relates to an electronic camera, an electronic device, a transmission system, and a control method therefor. In particular, the present invention is suitably applied to an electronic mail system, but other applications are also possible," ('959 patent, col. 1 ll. 10–14) and "the personal computer 2 is arranged to transmit picture data transferred from the digital camera 1 to a destination terminal. Alternatively, the digital camera itself may be arranged to transmit picture data to a destination terminal without using the personal computer 2." ('959 patent, col. 20 ll. 10–14.)

175.    The '959 patent also discloses: "[t]he personal computer 2 is connectable to a computer network or the Internet through the communication unit 50 and a communication line. The computer can transmit E-mail to or receive E-mail from a terminal over the computer network or perform data retrieval, such as browsing through home pages stored on the Internet, by making use of WWW information retrieval services." ('959 patent, col. 7 ll. 61–67.)

176.    The '959 patent further discloses: "[w]hen the playback mode is set by the mode switch 13, the CPU 36 reads from the flash memory 31 each item of picture data in the order of page number (in ascending order of page numbers when the plus key 17a is pressed or in descending order of page numbers when the minus key 17b is pressed) and then sends it to the compression/decompression circuit 30 where the picture data is decompressed. The resulting picture data is stored in the DRAM 29. After that, the CPU sends the picture data stored in the DRAM 29 to the signal generator 25 where sync signals are added to the incoming picture data to produce a video signal (display data). The video signal is then applied through the VRAM 26,

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

the D/A converter 27 and the amplifier 28 to the display unit 12 where a picture is reproduced on its display screen." ('959 patent, col. 7 ll. 7–20.)

177.    I understand that the '959 patent qualifies as prior art because it was filed as a patent application on June 16, 1998, which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

178.    Both the '648 and the '959 patents describe devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to enhance the photographic and communication capabilities of the device described in the '648 with the mobile computing capabilities of the device described in the '959 patent, doing which would provide capabilities claimed in the '460 patent. Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number of electronic devices to be manufactured in the same silicon area.  After all, as described in Section VI above, there was already both a recognition of the need and desirability of integrating phone, digital camera, and mobile computing (including E-Mail) functions in a single mobile device, and an understanding of what such an integrated device would be like from functionality and user interaction perspective.  "Moore's Law" had historically enabled other similar integrations of functions into devices over several decades before the alleged conception of the '460 patent, and continues to do so even today.

179.    As further set forth in Exhibit 4F, it is my opinion that the combination of the '648 patent and the '959 patent teaches every element of claim 1 of the '460 patent and therefore renders claim 1 obvious.

180.    The combination of the '648 patent with the '959 patent discloses a device operable to perform a data transmitting method for a portable composite communication terminal

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

which functions as both a portable phone and a camera.  (*See, e.g.,* '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b; '959 patent, Abstract, col. 1 ll. 10–14, col. 20 ll. 9–34, FIGS. 3, 7–11, 13–21D.)

181.    The combination of the '648 patent with the '959 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '959 patent, col. 7 ll. 61–67, col. 9 ll. 28–45, col. 9 ll. 61–65, col. 15 ll. 37–53, col. 16 ll. 42–49, col. 20 ll. 9–37, col. 22 ll. 23–29, FIGS. 2, 7, 13, 17, 19, 20.)

182.    The combination of the '648 patent with the '959 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '959 patent, col. 7 ll. 7–25, col. 7 ll. 61–67, col. 9 ll. 28–45, col. 9 ll. 61–65, col. 10 ll. 2–22, col. 15 ll. 37–53, col. 16 ll. 42–49, col. 20 ll. 9–37, col. 22 ll. 23–29, FIGS. 2, 7–9, 13, 17, 19, 20.)

183.    The combination of the '648 patent with the '959 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b; '959 patent, col. 3 ll. 54–64, col. 7 ll. 7–25, col. 10 ll. 23–53, col. 12 l. 64–col. 13 l. 4, col. 20 ll. 46–56, FIGS. 1, 8–9, 18.)

184.    The combination of the '648 patent with the '959 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '959 patent, col. 9 ll. 17–45, col. 9 ll. 61–65, col. 10 l.1–col. 11 l. 47, col. 13 ll. 8–15, col. 15 l. 34–col. 16 l. 19, col. 16 ll. 42–49, col. 17 ll. 33–37, col. 20 ll. 9–28, col. 20 l. 40–col. 21 l. 14, col. 22 ll. 23–29, FIGS. 5, 8–9, 11–15, 17–20.)

**CONTAINS INFORMATION DESIGNATED AS**
**SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

185.    The combination of the '648 patent with the '959 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '959 patent, col. 9 ll. 17–45, col. 10 l.1–col. 11 l. 47, col. 13 ll. 8–15, col. 15 l. 34–col. 16 l. 19, col. 16 ll. 42–49, col. 17 ll. 33–37, col. 20 ll. 9–28, col. 20 l. 40–col. 21 l. 14, col. 22 ll. 23–29, FIGS. 3, 5, 8–9, 10–15, 17–20.)

**C.    Claim 1 of the '460 patent is obvious over the Nokia 9110 Communicator in view of IBM Simon or U.S. Patent No. 5,619,684 to Goodwin *et al.* or U.S. Patent No. 6,009,336 to Harris *et al.* or U.S. Patent No. 6,069,648 to Suso *et al.* or U.S. Patent No. 6,167,469 to Safai *et al.* or U.S. Patent No. 6,573,927 to Parulski *et al.* or U.S. Patent No. 6,642,959 to Arai**

186.    As I discussed above in Section X.B, it is my opinion that the Nokia Communicator anticipates claim 1 of the '460 patent.  It is also my opinion that claim 1 of the '460 patent is rendered obvious by the Nokia Communicator in combination with either the IBM Simon or U.S. Patent No. 5,619,684 to Goodwin *et al.* or U.S. Patent No. 6,009,336 to Harris *et al.* or U.S. Patent No. 6,069,648 to Suso *et al.* or U.S. Patent No. 6,167,469 to Safai *et al.* or U.S. Patent No. 6,573,927 to Parulski *et al.* or U.S. Patent No. 6,642,959 to Arai.

**1.    Combination of the Nokia 9110 Communicator with IBM Simon**

187.    A description of the Nokia 9110 Communicator and IBM Simon is provided above.  Both the Nokia 9110 Communicator and the IBM Simon exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to enhance the photographic and communication capabilities of the Nokia 9110 Communicator with the mobile computing capabilities of IBM Simon, doing which would provide capabilities claimed in the '460 patent.  Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number of electronic devices to be manufactured in the same silicon area.  After all, as described in Section VI above, there was

- 53 -

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

most recently captured in a camera mode.  (*See, e.g.,* Nokia 9110 Communicator Digital Camera Connectivity pp. 1-3; '336 patent, col. 12 ll. 5–37, FIGS. 7, 8, 13.)

208.    The combination of the Nokia 9110 Communicator with the '336 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* Nokia 9110 Communicator User's Manual p. 24-25; Nokia 9110 Communicator Digital Camera Connectivity pp. 2–3.)

209.    The combination of the Nokia 9110 Communicator with the '336 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 89 and 92-93; '336 patent, col. 1 ll .43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11.)

210.    The combination of the Nokia 9110 Communicator with the '336 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 89 and 92-93; Nokia 9110 Communicator Digital Camera Connectivity p. 2; '336 patent, col. 1 ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11.)

**4.    Combination of the Nokia 9110 Communicator with U.S. Patent No. 6,069,648 to Suso et al.**

211.    A description of the '648 patent is provided above.  Both the Nokia 9110 Communicator and the device described in '648 patent were devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the alleged conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to enhance the mobile computing and communication capabilities of the Nokia 9110 Communicator with the photographic capabilities of the device described in the '648 patent, doing which would provide the capabilities claimed in the '460

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

patent.  Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.  "Moore's Law", which is discussed above, enables exponentially larger number of electronic devices to be manufactured in the same silicon area.  After all, as described in Section VI above, there was already both a recognition of the need and desirability of integrating phone, digital camera, and mobile computing (including E-Mail) functions in a single mobile device, and an understanding of what such an integrated device would be like from functionality and user interaction perspective.  "Moore's Law" had historically enabled other similar integrations of functions into devices over several decades before the alleged conception of the '460 patent, and continues to do so even today.

212.    For my analysis of the Nokia 9110 Communicator and the '648 patent combination, I apply Samsung's apparent claim construction for the terms "mode" and "sub-mode" based on Samsung's Infringement Contentions (see Section X above), and apply plain meaning to the rest of the claim terms.  As further set forth in Exhibit 5D, it is my opinion that the combination of the Nokia 9110 Communicator and Suso teaches every element of claim 1 of the '460 patent and therefore renders claim 1 obvious.

213.    The combination of the Nokia 9110 Communicator mobile phone with the '648 patent discloses a device operable to perform a data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 11–12; Nokia 9110 Digital Camera Connectivity, p. 1; '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col. 2 l. 12, and FIGS. 1a and 6–8b.)

214.    The combination of the Nokia 9110 Communicator mobile phone with the '648 patent discloses entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 85 and 89; '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

215.    The combination of the Nokia 9110 Communicator mobile phone with the '648 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail

**CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION**

transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.,* Nokia 9110 Communicator Digital Camera Connectivity pp. 1-3; '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

216.    The combination of the Nokia 9110 Communicator mobile phone with the '648 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 24-25; Nokia 9110 Communicator Digital Camera Connectivity pp. 2–3; '648 patent, col. 6 ll. 8–10, col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b.)

217.    The combination of the Nokia 9110 Communicator mobile phone with the '648 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 89 and 92-93; '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

218.    The combination of the Nokia 9110 Communicator mobile phone with the '648 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* Nokia 9110 Communicator User's Manual pp. 89 and 92-93; Nokia 9110 Communicator Digital Camera Connectivity p. 2; '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b.)

**5.    Combination of the Nokia 9110 Communicator with U.S. Patent No.
6,167,469 to Safai et al.**

219.    A description of the '469 patent is provided above.  Both the Nokia 9110 Communicator and the device described in the '469 patent were devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to enhance the mobile computing and communication capabilities of

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

311.    The combination of the '336 patent with the '959 patent discloses entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode.  (*See, e.g.,* '336 patent, col. 12 ll. 5–37, FIGS. 7, 8, 13; '959 patent, col. 7 ll. 7–25, col. 7 ll. 61–67, col. 9 ll. 28–45, col. 9 ll. 61–65, col. 10 ll. 2–22, col. 15 ll. 37–53, col. 16 ll. 42–49, col. 20 ll. 9–37, col. 22 ll. 23–29, FIGS. 2, 7–9, 13, 17, 19, 20.)

312.    The combination of the '336 patent with the '959 patent discloses sequentially displaying other images stored in a memory through the use of scroll keys.  (*See, e.g.,* '959 patent, col. 3 ll. 54–64, col. 7 ll. 7–25, col. 10 ll. 23–53, col. 12 l. 64–col. 13 l. 4, col. 20 ll. 46–56, FIGS. 1, 8–9, 18.)

313.    The combination of the '336 patent with the '959 patent discloses transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode.  (*See, e.g.,* '336 patent, col. 1 ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11; '959 patent, col. 9 ll. 17–45, col. 9 ll. 61–65, col. 10 l.1–col. 11 l. 47, col. 13 ll. 8–15, col. 15 l. 34–col. 16 l. 19, col. 16 ll. 42–49, col. 17 ll. 33–37, col. 20 ll. 9–28, col. 20 l. 40–col. 21 l. 14, col. 22 ll. 23–29, FIGS. 5, 8–9, 11–15, 17–20.)

314.    The combination of the '336 patent with the '959 patent discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See, e.g.,* '336 patent, col. 1 ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11; '959 patent, col. 9 ll. 17–45, col. 10 l.1–col. 11 l. 47, col. 13 ll. 8–15, col. 15 l. 34–col. 16 l. 19, col. 16 ll. 42–49, col. 17 ll. 33–37, col. 20 ll. 9–28, col. 20 l. 40–col. 21 l. 14, col. 22 ll. 23–29, FIGS. 3, 5, 8–9, 10–15, 17–20.)

**G.      Claim 1 of the '460 patent is obvious over U.S. Patent No. 6,690,417 to Yoshida *et al.* in view of U.S. Patent No. 6,069,648 to Suso *et al.* or U.S. Patent No. 6,167,469 to Safai *et al.* or U.S. Patent No. 6,573,927 to Parulski *et al.* or U.S. Patent No. 6,642,959 to Arai and further in view of any one of the**

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

**following IBM Simon or U.S. Patent No. 5,619,684 to Goodwin *et al.* or U.S.
Patent No. 6,009,336 to Harris *et al.* (collectively "secondary references")**

315.     U.S. Patent No. 6,690,417 to Yoshida *et al.* was filed on September 30, 1998, and issued on February 10, 2004, ("the '417 patent").  The '417 patent is entitled "Image processing method, an image processing apparatus, an image input device, a photographing device, a photographing system, a communication device, a communication system, and a storage medium."  It is currently assigned to Canon Kabushiki Kaisha.

316.     The '417 patent discloses a digital camera that has communication functions, such as telephone and electronic mail.  The digital camera of the '417 patent can capture a picture, display the captured picture, annotate it with audio data, and send it to a recipient as an electronic email, using the electronic mail function.

317.     The '417 patent states: "the digital camera 100 is provided with the communicating function, such as telephone, electronic mail, etc., and as shown in FIG. 1 (which shows the outer appearance of the apparatus), there are provided on the front of the digital camera 100 a shutter button 102, a mode dial 101, a lens 108, and a stroboscope 109 which is arranged above the lens 108." ('417 patent, col. 5, ll. 24–30.)

318.     Additionally, the '417 patent states "[t]hen, with the rotation of this mode dial 101, it is possible to switch the modes in which the power-supply is turned off (OFF mode); the telephone is made ready for transmission and reception (TEL mode); the image, audio, text and other information, which are stored in the main body of the digital camera 100, are indicated on the display (VIEW mode); and some more." ('417 patent, col. 5 ll. 54–60.)

319.     The '417 further states: "[i]n the VIEW mode, the arrangement is made to select either the image obtained by photographing in the CAMERA mode (which will be described later), the recorded audio, the received image and audio, or the text, and then, to reproduce any one of them or to display it (that is, the image display/output function, audio output function, text display function, and electronic mailing function)." ('417 patent, col. 6 ll. 18–24.)

320.     The '417 further states: "in the CAMERA mode, it is possible to confirm the image obtained by photographing, by use of the playback function which will be described later,

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

and then, to erase it if unwanted or to record audio data as an annotation (that is, using the audio input/storage function), or to send it to a desired party as the electronic mail (using the electronic mail function)." ('417 patent, col. 6 ll. 38–44.)

321.   The '417 also states: [i]f, for example, an electronic mail should be transmitted by the SMTP (simple mail transfer protocol), the SMTP client (hereinafter, simply referred to as a client) issues, at first, the request of connection to the SMTP server (hereinafter, simply referred to as a server). for the transmission and reception of an electronic mail (step S591).  ('417 patent, col. 19 ll. 45–50.)

322.   I understand that the '417 patent qualifies as prior art because it was filed as a patent application on September 30, 1998, ('417 patent, cover page), which is prior to the date of the In-House Invention Notification Form (February 11, 1999) and the filing date of the Korean priority patent application (March 31, 1999).

### 1.   Combinations of the '417 patent with the secondary references

323.   A description of all the secondary references is provided above.  The '417 patent and the secondary references describe devices that exemplify the trend towards integration of mobile cellular phone, digital camera, and mobile computing (including access to network-based information services such as electronic messaging) that was in process well before the conception of the '460 patent.  Therefore, there were clear reasons to combine their functions, for example, to enhance the photographic and communication capabilities of the device described in the '417 patent with the mobile computing capabilities of the devices described in the secondary references, doing which would provide capabilities claimed in the '460 patent.  Furthermore, how to achieve this integration would have been obvious to persons of ordinary skills in the art.

324.   For my analysis of the combinations of the '417 patent with the secondary references that include at least one of the Nokia 9110 Communicator, IBM Simon, and the '684 patent, I apply Samsung's apparent claim construction for the terms "mode" and "sub-mode" based on Samsung's Infringement Contentions (see Section X above), and apply plain meaning to the rest of the claim terms.  As further set forth in Exhibit 9, it is my opinion each combination

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

of the '417 patent and the secondary references teaches every element of claim 1 of the '460

patent and therefore renders claim 1 obvious.

325.    Each combination of the '417 patent with the secondary references discloses a

device operable to perform a data transmitting method for a portable composite communication

terminal which functions as both a portable phone and a camera.  (*See, e.g.,* '417 patent, col. 5 ll.

18–30, col. 5 ll. 54–60, col. 6 ll. 38–44, FIGS. 1, 3; '648 patent, col. 1 ll. 5 – 9, col. 1 l. 47 – col.

2 l. 12, and FIGS. 1a and 6–8b;  *'469 patent, Abstract, col. 18 ll. 3–17, and FIGS. 2 and 3–5B);*

'927 patent, Abstract, col. 2 ll. 19–27, col. 4 ll. 9–11, col. 4 ll. 29–36; '959 patent, Abstract, col.

1 ll. 10–14, col. 20 ll. 9–34, FIGS. 3, 7–11, 13–21D; Nokia 9110 Communicator User's Manual

pp. 11–12; Nokia 9110 Digital Camera Connectivity p. 1; IBM Simon Users Manual p. 51; '684

patent, col. 9 ll. 46–49, FIGS. 4A–4D;  '336 patent, col. 2 l. 55–col. 3 l. 8, col. 12 ll. 38–57, FIG.

1.)

326.    Each combination of the '417 patent with the secondary references discloses

entering a first E-mail transmission sub-mode upon user request for E-mail transmission while

operating in a portable phone mode, the first e-mail transmission sub-mode performing a

portable phone function.  (*See, e.g.,* '417 patent, col. 5 ll. 54–60, Yoshida FIGS. 1, 3, 4; '648

patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '469 patent, col. 7 l.66–col. 8 l.7, col. 8

ll. 28–36, col. 11 ll. 27–39, col. 12 ll. 1–14, and FIGS. 3–5B); '927 patent, col. 1 l. 67–col. 2 l.

28, col. 4 ll. 17–27, col. 4 l. 59–col. 5 l. 4, FIGS. 2–3; '959 patent,  col. 7 ll. 61–67, col. 9 ll. 28–

45, col. 9 ll. 61–65, col. 15 ll. 37–53, col. 16 ll. 42–49, col. 20 ll. 9–37, col. 22 ll. 23–29, FIGS.

2, 7, 13, 17, 19, 20; Nokia 9110 Communicator User's Manual pp. 85 and 89; IBM Simon Users

Manual pp. 12, 34, and 51;  '684 patent, col. 2 ll. 42–52, col. 9 ll. 35–45, col. 10 l. 51–col. 11

l.12, FIGS. 2–5F; '336 patent, col. 1 ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–

col. 10 l.5, col. 10 ll. 33–46, FIGS. 2, 7–9, 11.)

327.    Each combination of the '417 patent with the secondary references discloses

entering a second E-mail transmission sub-mode upon user request for E-mail transmission while

operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

most recently captured in a camera mode.  (*See, e.g.,* '417 patent, col.5 ll.54–60, col.6 ll.18-24,

col.6 ll.38–44, col.17 ll.60–67, col.18 ll.31–33, col.18 ll.38–43, FIGS. 1, 3, 4, 9, 10; *'648 patent,*

*col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b;* '469 patent, col. 7 l. 66–col. 8 l. 7, col. 8 ll.

28–36, col. 10 ll. 24–40, col. 11 ll. 27–39, col. 12 ll. 1–14, and FIGS. 3–5B); '927 patent, col. 1 l.

67–col. 2 l. 28, col. 3 ll. 25–44, col. 4 ll. 17–42, col. 4 l. 59–col. 5 l. 4, FIGS. 1–3; '959 patent,

col. 7 ll. 7–25, col. 7 ll. 61–67, col. 9 ll. 28–45, col. 9 ll. 61–65, col. 10 ll. 2–22, col. 15 ll. 37–53,

col. 16 ll. 42–49, col. 20 ll. 9–37, col. 22 ll. 23–29, FIGS. 2, 7–9, 13, 17, 19, 20; Nokia 9110

Communicator Digital Camera Connectivity pp. 1-3; IBM Simon Users Manual pp. 12, 34, 43,

45-46 and 51; '336 patent, col. 12 ll. 5–37, FIGS. 7, 8, 13.)

328.    Each combination of the '417 patent with the secondary references discloses

sequentially displaying other images stored in a memory through the use of scroll keys.  (*See,*

*e.g.,* '927 patent, col. 3 ll. 25–44, FIG. 1A; '959 patent, col. 3 ll. 54–64, col. 7 ll. 7–25, col. 10 ll.

23–53, col. 12 l. 64–col. 13 l. 4, col. 20 ll. 46–56, FIGS. 1, 8–9, 18; *'648 patent, col. 6 ll. 8–10,*

*col. 7 ll. 37–49, and  FIGS. 7 and 8a–8b; '469 patent col. 10 ll. 40–53, col. 2 l. 64– col. 3 l. 3,*

*col. 10 ll. 44– 60, and FIG. 4C);* Nokia 9110 Communicator User's Manual pp. 24-25; Nokia

9110 Communicator Digital Camera Connectivity pp. 2–3.)

329.    Each combination of the '417 patent with the secondary references discloses

transmitting the address of the other party and a message received through a user interface in the

first E-mail transmission sub-mode.  (*See, e.g.,* '417 patent, col.19 l.44–col.20 l.53, FIGS. 12–14;

'648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b; '469 patent col. 7 l.66–col. 8 l.7,

col. 8 l.28–col. 9 l.13, col. 9 ll. 25–30, col. 11 ll. 27–55, col. 12 ll. 1–14, col. 13 ll. 10–24, col. 14

ll. 9–24, and FIGS. 3–6); '927 patent, col. 1 l. 67–col. 2 l. 28, col. 4 ll. 17–27, col. 4 l. 59–col. 5

l. 14, col. 5 ll. 27–50, FIGS. 2–4, Appendix I;  '959 patent, col. 9 ll. 17–45, col. 9 ll. 61–65, col.

10 l.1–col. 11 l. 47, col. 13 ll. 8–15, col. 15 l. 34–col. 16 l. 19, col. 16 ll. 42–49, col. 17 ll. 33–37,

col. 20 ll. 9–28, col. 20 l. 40–col. 21 l. 14, col. 22 ll. 23–29, FIGS. 5, 8–9, 11–15, 17–20; Nokia

9110 Communicator User's Manual pp. 89 and 92-93; IBM Simon Users Manual pp. 12, 34, and

51-53;  '684 patent, col. 2 ll. 42–52, col. 9 ll. 35–45, col. 10 l. 51–col. 11 l.12; '336 patent, col. 1

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

ll. 43–58, col. 2 l.66–col. 3 l.8, col. 9 ll. 17–35, col. 9 l.66–col. 10 l.46, col. 11 ll. 8–38, FIGS. 2, 7–9, 11.)

330.     Each combination of the '417 patent with the secondary references discloses transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.  (*See e.g.*,'417 patent, col.19 l.44–col.20 l.53, FIGS. 12–14; '648 patent, col. 6 ll. 43–47, col. 7 ll. 19–59, and FIGS. 8a–b;'469 patent col. 7 l. 66–col. 8 l. 7, col. 8 l. 28–col. 9 l. 13, col. 9 ll. 25–30, col. 10 ll. 24–39, col. 11 ll. 27–55, col. 12 ll. 1–14, col. 13 ll. 10–24, col. 14 ll. 9–24, and  FIGS. 3–6; '927 patent, col. 1 l. 67–col. 2 l. 28, col. 3 ll. 25–44, col. 4 ll. 17–42, col. 4 l. 59–col. 5 l. 14, col. 5 ll .27–50, FIGS. 1–4, Appendix I; '959 patent, col. 9 ll. 17–45, col. 10 l.1–col. 11 l. 47, col. 13 ll. 8–15, col. 15 l. 34–col. 16 l. 19, col. 16 ll. 42–49, col. 17 ll. 33–37, col. 20 ll. 9–28, col. 20 l. 40–col. 21 l. 14, col. 22 ll. 23–29, FIGS. 3, 5, 8–9, 10–15, 17–20;  Nokia 9110 Communicator User's Manual pp. 89 and 92-93; Nokia 9110 Communicator Digital Camera Connectivity p. 2; IBM Simon Users Manual pp. 12, 34, and 51-53;  '684 patent, col. 2 ll. 42–52, col. 9 ll. 35–45, col. 10 l.51–col. 11 l.12, FIGS. 2–5F; '336 patent, col. 1 ll.43–58, col.2 l.66–col.3 l.8, col.9 ll.17–35, col.9 l.66–col.10 l.46, col.11 ll.8–38, FIGS. 2, 7–9, 11.)

**H.     Secondary Considerations**

331.     I understand that Samsung may seek to rely on so-called "secondary considerations" of non-obviousness to argue that the asserted claim of the '460 patent would not have been obvious to a person of ordinary skill in the art in 1999.  I understand that just two days ago Samsung served supplemental interrogatory responses purporting to set forth secondary considerations supporting their nonobviousness position.  Due to the tardy service of these responses, I have not had sufficient opportunity to review them in detail, and therefore I reserve my right to supplement my opinion after being afforded an appropriate period of time for analysis.  Having said that, I note that Samsung alleges without any support that the '460 patent claimed technologies, among others, "share a common thread, as all are solutions invented by Samsung engineers in the process of achieving the convergence of multiple digital technologies

CONTAINS INFORMATION DESIGNATED AS
SAMSUNG HIGHLY CONFIDENTIAL INFORMATION

one email message, not two email messages, to the E-mail server 510, depending on the presence or absence of a still image.

### B.    Conclusion

341.    Thus, it is my opinion that the claim 1 of the '460 patent is invalid for lack of written description.

## XIV.    Trial Exhibits

342.    If called as a witness at trial, I may rely on visual aids and demonstrative exhibits that demonstrate the bases of my opinions.  Examples of these visual aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, file histories, interrogatory responses, deposition testimony and deposition exhibits, as well as charts, diagrams, videos and animated or computer-generated video.

343.    Other than as referred to in this report, I have not yet prepared any exhibits for use at trial as a summary or support for the opinions expressed in this report, but I expect to do so in accordance with the Court's scheduling orders.

## XV.    Compensation

344.    I am compensated for my time at the rate of $425 for each hour of service that I provide in connection with this case.  That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

## XVI.    Previous Testimony

345.    I have not provided testimony as an expert witness before.

## XVII.    Supplementation of Opinions

346.    I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Samsung.

Dated: March 22, 2012

*Mani B. Srivastava*

Mani Srivastava, Ph.D.