# EXHIBIT 27

Highly Confidential

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
        ---------------------------------x
 5   APPLE INC., a California         )
     corporation,                     )
 6                                    )
                   Plaintiff,         )
 7                                    )
              vs.                     )No. 11-CV-01846-LHK
 8                                    )
     SAMSUNG ELECTRONICS CO., LTD,    )
 9   a Korean business entity;        )
     SAMSUNG ELECTRONICS AMERICA,     )
10   INC., a New York corporation;    )
     SAMSUNG TELECOMMUNICATIONS       )
11   AMERICA, LLC, a Delaware         )
     limited liability company,       )
12                                    )
                   Defendants.        )
13   _____)
14
15
            VIDEOTAPED DEPOSITION OF MANI SRIVASTAVA
16
                   Los Angeles, California
17
                  Wednesday, April 25, 2012
18
19                    HIGHLY CONFIDENTIAL
20
21
22
23   Reported By:
24   SUSAN A. SULLIVAN, CSR #3522, RPR, CRR
25   JOB NO. 48799
```

Page 74

1  POP or IMAP standard and E-mail.
2           Specific to your question, the fax when
3  done as an electronic document exchange would indeed
4  fall under this definition of E-mail.
5       Q    BY MR. STRETCH:  So I take it then that
6  sending an image of a handwritten note would also
7  qualify as E-mail to one of ordinary skill in the
8  art in 1999.
9           MS. WHELAN:  Objection.
10          THE WITNESS:  Yes.
11      Q    BY MR. STRETCH:  Do you use "app" and
12 "application" interchangeably in your report?  Is
13 there a difference between an app and an
14 application?
15      A    I use them interchangeably.
16      Q    Okay.
17          Now as I understand your report, you claim
18 that there are two pieces of prior art that
19 anticipate the '460 patent; is that correct?
20      A    That is correct.
21      Q    The Suso reference and then the Nokia 9110
22 Communicator phone?
23      A    That is correct.
24      Q    Okay.
25          And, again, you didn't identify these as

Page 75

1 originally being anticipatory; is that correct?
2     A   I analyzed them and found them to be
3 anticipatory.  I did have access to Apple's
4 invalidity contentions.
5     Q   But, in other words, you didn't come up
6 with the Suso reference yourself, you were limited
7 to what Apple had disclosed under the local rules;
8 is that correct?
9     A   Right.  I was told that I was limited to
10 it, yes.
11     THE VIDEOGRAPHER:  We're getting pretty close to
12 the end of the tape.
13     MR. STRETCH:  Why don't we change the tape.
14     THE VIDEOGRAPHER:  This marks the end of Disc
15 No. 1 in the continuing deposition.  The time is
16 11:18 a.m. and we are now off the record.
17     (Recess)
18     THE VIDEOGRAPHER:  This marks the beginning of
19 Disc No. 2 in the continuing deposition.  The time
20 is 11:30 a.m. and we're back on the record.
21 BY MR. STRETCH:
22     Q   Doctor, let me ask you to first before we
23 look at the actual references, ask you to look at
24 Exhibit, I think it is 2A.  It is the claim of the
25 '460 that's asserted.

Highly Confidential

Page 79

1   patent?
2          MS. WHELAN:  Objection.
3          THE WITNESS:  I cannot comment on that, but I
4   didn't find them to be anticipatory in my analysis.
5       Q   BY MR. STRETCH:  Let's look at the two that
6   you did find to be anticipating.
7          Exhibit 6, I have here -- actually it is
8   going to be Exhibit 7, excuse me.  This is the Suso
9   patent assigned to Hitachi, Patent No. 6,069,648.
10  That's probably enough to identify it.
11         (M. Srivastava Exhibit 7, a document,
12          Bates Nos. APLNDC-WH0000005303 to
13          APLNDC-WH0000005317, marked for
14          identification, as of this date.)
15      Q   BY MR. STRETCH:  You have got your reports
16  in front of you so if you need to refer to those
17  please feel free to do so, but would you be kind
18  enough to identify for me where in the Suso
19  reference the Suso reference discloses two sub-modes
20  for transmitting E-mail, one through E-mail and then
21  one through a display function?
22      A   I had them in my report as well as in my
23  claim chart.  It would be a lot more convenient for
24  me if I had the claim chart instead of reading the
25  text on here.

1      MR. STRETCH:  Do we have the claim chart?
2      MR. STAKE:  Yes.
3      MR. STRETCH:  Let's mark this as No. 8.
4          (M. Srivastava Exhibit 8, a document,
5          marked for identification, as of this
6          date.)
7      Q    BY MR. STRETCH:  And I understand, this is
8  your -- well, can you look at it and identify it for
9  the record, please.
10     A    Yes.
11          Do I make any particular statement?
12     Q    Can you identify what this is for the
13 record?
14     A    This is the claim chart corresponding to
15 anticipation analysis for the Suso patent.
16     Q    Okay.
17     MS. WHELAN:  Do you have any extra copies?
18     MR. STAKE:  Sorry, I didn't make a copy of that
19 one.
20     MR. STRETCH:  So we just have these two?
21     MR. STAKE:  I think so.
22     MR. STRETCH:  Can you look on with him?
23     MS. WHELAN:  Yes.  We can go ahead.
24     MR. STAKE:  Sorry about that.
25          Look at this.  I made three.

Highly Confidential

Page 81

1    MS. WHELAN:  Thanks.
2    Q   BY MR. STRETCH:  So the question I posed to
3 you is to identify for me where Suso teaches what
4 have you denoted in your chart as Limitation A,
5 "entering a first E-mail transmission sub-mode upon
6 user request for E-mail transmission while operating
7 the portable phone mode, the first E-mail
8 transmission sub-mode performing a portable phone
9 function."  And then Element B, "entering a second
10 E-mail transmission sub-mode upon user request for
11 E-mail transmission while operating in a display
12 sub-mode, the second E-mail transmission sub-mode
13 displaying an image most recently captured in a
14 camera mode."
15    MS. WHELAN:  Objection.
16    THE WITNESS:  As the claim chart shows for
17 limitation A, it is the convention of Column 6,
18 Lines 43 to 47.  Do you want me to read the text
19 or --
20    Q   BY MR. STRETCH:  Yeah. Can you identify
21 for me the text that supports the notion that you
22 enter a first E-mail transmission sub-mode upon user
23 request for E-mail transmission.
24    A   That would be Column 7, Lines 19 through
25 59, and Figures 8a and b, and specifically the

Highly Confidential

Page 82

1  paragraphs that I marked in the claim chart, which
2  are quoted in the claim chart.
3      Q   So looking at the last bullet on Page 2 of
4  your chart it says, "By touching the attachment
5  button ... the data is read out and a child picture
6  plane is displayed" -- is that supposed to be
7  "thumbnail" -- "in a proper place in the display/
8  operation part 5.  By touching curser/scroll buttons
9  26c, the data displayed in the child picture plane
10 can be scrolled.  By adjusting the curser on desired
11 data and touching the transmission button ... the
12 data can be transmitted to the other side."
13         So in your view that is --  that satisfies
14 what you denoted here as Limitation A?
15     A   Yes.
16     Q   All right.  And then with respect to
17 Limitation B, a second E-mail transmission sub-mode
18 upon user request for E-mail transmission while
19 operating in a display sub-mode, displaying an image
20 most recently captured in a camera mode, can you
21 describe where that is set forth in the text that
22 you've excerpted from the Suso reference?
23     A   So it is the convention of Column 6, Line
24 43-47, and Column 7, 19 through 59, and Figures
25 8a-b.

Page 83

1   Q   So for both of these transmission sub-modes
2   you have relied on the exact same portions of the
3   specification, haven't you?
4   A   That is correct.
5   Q   So in your view, these same sections of the
6   specification teach two sub-modes for sending
7   E-mail?
8   A   They teach both sending an E-mail without
9   an image and with an image.
10   Q   Okay.  And do they teach sending an E-mail
11   with an image and text?
12   A   Yes.
13   Q   And where is that?
14   A   If we walk through the text you will see it
15   talks about the image being displayed from the
16   camera which is coming from the part of the screen,
17   and then they have the provision for entering a
18   handwritten memo or a memo entered through keys.
19   Q   So, I'm sorry, you just stated they have a
20   provision for entering a handwritten memo or a memo
21   entered through keys?
22   A   That is correct.
23   Q   And where is that?
24   A   By touching.  So the last bullet on Page 4
25   under -- by touching the handwritten memo a part of

Highly Confidential

Page 84

1  the display becomes a picture plane of a memo and
2  notes can be taken in that part, so that's in the
3  handwritten.  And the previous bullet, and data can
4  be properly inputted by touching the F button and
5  the ten-key in the state shown in the Figure 8a.
6      Q    What do you understand by the term "picture
7  plane"?
8      A    Where exactly are you?  A picture plane of
9  the memo?
10     Q    Yes.
11          So, for instance, the last bullet point on
12 Page 4 in the upper box, it says in Figure 8b, by
13 touching the handwritten memo button a part of the
14 display/operation part 5 becomes a picture plane of
15 a memo.
16     A    So it is a portion of the screen where
17 notes can be hand drawn.
18     Q    Okay.  So this would be where a text -- you
19 would consider this to be sending a text E-mail?
20     A    That would be one of the ways of sending
21 text in the Suso invention.  They also have a
22 provision for entering text using keys as well.
23     Q    Okay.
24          Is it your understanding that the use of
25 the data entry keys is for typing up a message as

Page 85

1  well as an E-mail address or just an E-mail address?
2       A    My interpretation is both.
3       Q    And what's your interpretation based on?
4       A    General reading of the patent
5  specification.
6       Q    Let me ask you to turn to Column 6 of the
7  patent.
8       A    Column 6 of the patent?
9       Q    The '648 patent, sorry.
10      A    Okay.
11      Q    The Suso reference.
12           And the last paragraph on the page in
13 Column 6 begins about Line 58.  It says, "In the
14 display/operation."  Do you see that paragraph?
15      A    Yes.
16      Q    Can you read that paragraph and then
17 explain to me the basis for your interpretation that
18 the Suso reference is capable of sending a photo
19 with text included other than just the E-mail
20 address.
21      A    The basis for -- could you repeat the last
22 part of the question?
23      Q    Yes.  You said your interpretation of
24 reading the patent --
25      A    Uh-huh.

Page 86

1  Q  -- is that the Suso reference -- excuse me.
2  The Suso reference is capable of sending a photo and
3  text in the same message, and I want to know if
4  there's anything in this paragraph I've directed you
5  to that supports that interpretation.
6  A  Just this paragraph?  Because as I
7  explained in my claim chart there's a contention of
8  several paragraphs.
9  Q  No, I understand.
10  A  Correct.
11     So this paragraph is describing that how by
12  touching a particular button one can change to a
13  ten-key character keyboard, in effect, and then
14  enter text using that, so this is describing how one
15  can enter textual/numeric information to the key.
16  Q  All right.  So this particular paragraph
17  does not support your interpretation?
18     MS. WHELAN:  Objection.
19     THE WITNESS:  It is part of my support, I think.
20  Again, if you look at the claim chart it is one of
21  the elements of it.
22  Q  BY MR. STRETCH:  All right.  Let's put this
23  aside for the time being.
24     Let's turn to the Nokia device.  Now is it
25  your understanding that from a legal perspective of

1    six zeros, 5398 through 5433.
2            (M. Srivastava Exhibit 20, a document,
3            Bates Nos. APLNDC-WH0000005398 to
4            APLNDC-WH0000005433, marked for
5            identification, as of this date.)
6       MR. STRETCH:  And I will mark as Exhibit 21 your
7    Exhibit 4F to your invalidity contentions.
8       THE WITNESS:  Thank you.
9            (M. Srivastava Exhibit 21, a document,
10           marked for identification, as of this
11           date.)
12      Q    BY MR. STRETCH:  And is this patent to Arai
13   a reference you relied on in your obvious
14   contentions regarding the '460 testimony?
15      A    That's correct.
16      Q    Now as with the last two references, Arai
17   does not disclose a device that operates as a
18   telephone for the purposes of making telephone calls
19   as we previously described; is that right?
20      MS. WHELAN:  Objection.
21      THE WITNESS:  It cannot make voice calls from
22   the PSTN.
23      Q    BY MR. STRETCH:  All right.  Other than
24   that, are there any limitations of which you are
25   aware that it does not disclose in combination with

1   Suso?

2      A   In combination with Suso, no, there are no
3   limitations.

4      Q   Now when you are talking about a PSTN
5   network, earlier you gave the example of voice over
6   IP as a different type of phone call.  These last
7   few references that we have discussed were, I think
8   we agreed they were incapable of making voice
9   telephone calls over a PSTN network.  Were any of
10  them capable of making voice over IP voice calls?

11         MS. WHELAN:  Objection.

12         THE WITNESS:  Other than one of them which can
13  send voice messages, no.

14         MR. STRETCH:  And finally mark as Exhibit 22 the
15  Yoshida reference which is U.S. Patent 6,690,417 B1,
16  Bates No. APLNDC-WH0000005026 through -- the number
17  is lost.  It is 50 -- I have no idea.  It begins at
18  5026.

19         (M. Srivastava Exhibit 22, a document,
20         beginning with Bates No.
21         APLNDC-WH0000005398, marked for
22         identification, as of this date.)

23         MR. STRETCH:  Mark as Exhibit 23 Exhibit 9 to
24  your invalidity report which discusses Yoshida in
25  combination with a number of other references.

1                (M. Srivastava Exhibit 23, a document,
2            marked for identification, as of this
3            date.)
4       Q    BY MR. STRETCH:  So it appears to me that
5   it is your contention that the only limitation that
6   Yoshida does not disclose is the ability to
7   sequentially scroll through the images on the device
8   disclosed.
9       A    Yoshida doesn't disclose that limitation
10  about scrolling.
11      Q    Okay.  Now your claim here in this Exhibit
12  9 that we have marked as Exhibit twenty --
13      A    Three.
14      Q    23?
15      A    Uh-huh.
16      Q    Is that Claim 1 of the '460 is obvious in
17  light of Yoshida, Suso, Safai, Parulski, Arai, the
18  Nokia 9110 Communicator mobile phone, the Nokia 9110
19  user's manual, the Nokia 9110 Communicator, the
20  digital camera connectivity, the IBM Simon mobile
21  phone, the IBM Simon User's Manual, Goodwin and
22  Harris.  Is that correct?
23           MS. WHELAN:  Objection.
24           THE WITNESS:  As stated out here it is Yoshida
25  in connection with any one of the first five listed

1    and plus any one of the last three listed.
2        Q    BY MR. STRETCH:  So you are excluding the
3    Nokia Communicator?
4        A    No.
5             So Yoshida with any one of the following
6    five which includes '648 through Nokia.
7        Q    Okay.
8        A    And further with any one of the three which
9    follows.
10       Q    Okay.
11            Now are you aware of any teaching,
12   suggestion or motivation that would prompt one of
13   ordinary skill in the art to combine these
14   references in the manner that you have combined?
15       A    Yes.  In some ways Suso alone does that.
16   It does indicate that they're designed, the need
17   existed and Suso, which one was of the anticipatory
18   prior art that I cited, combined those.  So in terms
19   of among the prior art that I cited, that provides
20   the motivation, as does Nokia, in connection with
21   the particular connectivity module, digital camera
22   connectivity module.
23       Q    All right.  So let me make sure I
24   understand what you are saying.
25            So Suso does that because it anticipates or

Highly Confidential

Page 118

1  there's specific language in Suso that says there's
2  a need to combine the various functions that are
3  described in the '460 Claim 1?
4      A   Suso --
5      MS. WHELAN: Objection.
6      THE WITNESS: The Suso patent describes the need
7  for these three functions to be present.
8      Q   BY MR. STRETCH: Okay. But in your view
9  Suso provides all three functions.
10     A   Yes.
11     Q   Now you also mention something about the
12 Nokia connectivity.
13     A   Nokia digital --
14     Q   Is that that two-page document?
15     A   That's a shorter document. Digital camera
16 connectivity.
17     Q   Yes.
18         And what is it about this document that
19 provides a teaching or a suggestion or motivation to
20 combine the various references that you have relied
21 on in your invalidity report such that they would
22 encompass the Claim 1 of the '460?
23     MS. WHELAN: Objection.
24     THE WITNESS: Communicator with connectivity,
25 digital camera connectivity, is a prior art example