1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                   UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 APPLE INC., a California corporation,        CASE NO. 11-cv-01846-LHK

19             Plaintiff,

                                                **SAMSUNG'S OBJECTIONS AND
20      vs.                                     RESPONSES REGARDING EXHIBITS
                                                AND DEPOSITION DESIGNATIONS
21 SAMSUNG ELECTRONICS CO., LTD., a             DISCLOSED ON AUGUST 14, 2012**
   Korean business entity; SAMSUNG
22 ELECTRONICS AMERICA, INC., a New
   York corporation; SAMSUNG
23 TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,
24
             Defendants.
25

26
27
28

02198.51855/4910970.1
                                                           Case No. 11-cv-01846-LHK
        OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON
                                         AUGUST 14, 2012

Samsung hereby submits objections and responses regarding (1) exhibits to be used in direct and cross examination of Emilie Kim, Tim Sheppard, Michael Wagner, Greg Chapman, Paul Dourish, Tony Givargis, Dan Dzuban, Mani Srivastava and Tony Blevins; and (2) deposition designations and counter designations for Greg Joswiak and Richard Lutton.

## I.   EMILIE KIM

### A.   Samsung's Objections to Apple's Exhibits

#### 1.   PX 111

Apple has indicated it is withdrawing Ms. Kim as a sponsoring witness for this exhibit.

#### 2.   PX 124

Apple has indicated it is withdrawing Ms. Kim as a sponsoring witness for this exhibit.

### B.   Samsung's Responses to Apple's Objections

To address Apple's objection to DX2635, Samsung has agreed to use PX112 in its place.

## II.   TIM SHEPPARD

### A.   Samsung's Objections to Cross Examination Exhibits

The use of red labels with accusatory and inflammatory content in PDX 62.2 is argumentative and misleading, and incorrectly characterizes Samsung's voluminous production. FRE 402, 403.   Apple's attorney argument in this slide wrongly characterizes Samsung's production as "incomplete" at times when the parties disputed the number of accused products. PDX 62.2 also has an improper title, which implies that the full extent of Samsung's "Financial Disclosures" were the spreadsheets.   Apple well knows this is untrue.

### B.   Samsung's Responses to Objections to Direct Examination Exhibits

**SDX3960.003.**   Apple's objection is premature and incorrect.   Contrary to Apple's assertion, as the Vice President of Finance and Operations at STA, Mr. Sheppard has personal knowledge concerning how SEC keeps its accounts because they are kept in accordance with a policies that apply across the Samsung Group, including STA.   Samsung will lay this foundation

for Mr. Sheppard's testimony.   If Apple does not believe that Samsung's foundation is sufficient, it may raise a foundation objection at trial.[1]   Moreover, Apple's objection is disingenuous.   On Monday, August 13, 2012, Apple played for the Court and jury, and lodged with the Court, an excerpt from Mr. Sheppard's deposition in which he was testifying on behalf of SEC.   R.T., 08/13/2012 Trial Tr. at 2029:22-2030:3).   During that testimony, Apple's counsel questioned Mr. Sheppard as a representative of *SEC*.   (Hutnyan Decl., Ex. 11 (Timothy Sheppard 03/30/12 Depo. at 19:23-20:4)).

In addition, during Mr. Denison's testimony on August 3, 2012, Apple took the position, and the Court agreed, that – even though Mr. Denison was designated on certain limited subjects during his deposition – those limitations did not apply at trial because he was not being called as a Rule 30(b)(6) witness.   R.T., 08/03/12, at 823:2-22 ("The Court: okay. We're not limited to his deposition topics. He is a witness at trial. . . So he's not limited to his deposition topics.").   Now that its strategic interests have changed, Apple seeks to convince the Court to adopt the opposite position.

In any event, during Mr. Sheppard's final deposition on March 30, 2012, Apple's counsel questioned Mr. Sheppard extensively about Samsung's financial disclosures and accounting system without making any distinction between the different Samsung defendants, and Mr. Sheppard answered these questions.   *See, e.g.,* (Hutnyan Decl., Ex.11 (Timothy Sheppard 03/30/12 Depo. at 33:18-34:4)) ("Q. The 4.1 billion dollar operating profit figure that we see on the first page of the February 28th spreadsheet comes directly from *Samsung's* accounting system and has been produced without modification or manipulation; true?   . . . The Witness: I think I explained where the data comes from, and I'll go through the same explanation if you'd like me to. The individual pages in here represent specific data points for a specific product, so each page

---

[1] Samsung does not intend to call Mr. Sheppard to testify as to SEC's financial data. Rather, Mr. Sheppard will testify as to group wide accounting methodologies of which he has personal knowledge.   None of the deposition testimony cited by Apple disclaims Mr. Sheppard's personal knowledge on this subject.

represents an extract from SAP. . . ."); *id.* 55:17-25 ("Mr. Overson: Let me – let me ask you this. In the February 28th version of the spreadsheet that Samsung produced, what was the cost of goods sold for – manufacturing [*i.e.,* SEC] for 2011? The Witness: So Exhibit 1922. Let's make sure we're talking about the same document. The manufacturing – The cost of goods sold, which is in cell, I think, AI 28 is 18.7."); *see also id.* at 56:5-9, 89:5-19, 93:8-19 ("Q. The allocation methodology that you set forth in paragraph 23 of your Declaration, A. Yes. Q. – I take it you're talking about how STA does allocation in this paragraph; right? . . . THE WITNESS: The method – *The allocation methodology I'm describing here, this is – is used across all Samsung subsidiaries.* This is a standard basic methodology that is required to be followed.") (emphasis added).

For these reasons, Apple's objection is meritless and should be overruled.

**DX616.** Samsung offers this exhibit to show STA's pattern and practice of taking title to the smartphone products it sells overseas and importing them into the United States. This is relevant to refute Apple's allegation of direct infringement by SEC by selling smartphones in the United States.

### III. MICHAEL WAGNER

#### A. Samsung's Objections to Cross Examination Exhibits

**PX2317.42-43** contain a brief overview of issues of law from a Handbook for financial experts. Mr. Wagner is not an expert on the law. FRE 702-03. The Court will instruct the jury on the law on patent damages. Allowing Apple to raise academic issues of legal interpretation will usurp the role of the Court, be prejudicial, and be confusing and highly misleading to the jury. FRE 403.

Moreover, the Handbook is irrelevant under FRE 402 because it discusses methods for calculating *apportioned* profits for design patents. PX2317.43 discusses apportionment in a case where only 400 out of 1000 "incremental" sales are due to design infringement, and the damages are apportioned accordingly. This Court ruled that apportionment for design patents is not at

02198.51855/4910970.1
-3-
Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 14, 2012

issue here.  *See* Dkt. No. 1157 at 9 (holding apportionment not available for design patent infringement; citing *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1442-43 (Fed. Cir. 1998)). Apple thus seeks to examine Mr. Wagner on an excluded issue.  Further, the summary discusses methods and fact-patterns not present in this case.  For example, the hypothetical on PX2317.43 discusses apportionment for "incremental" sales and whether "the additional widget's production caused these efficiencies."  There are no such facts or issues present here.

The Court earlier sustained an objection to examining Mr. Musika on his testimony in another case on similar grounds.  *See* Dkt. No. 1668 at 3 (finding testimony from a different case "of limited relevance and is likely to waste time and lead to jury confusion. Accordingly, this evidence is inadmissible under FRE 403.")  For the same reason, the fact-patterns in the Handbook discussion are likely to waste time and lead to jury confusion.  FRE 403.

**PDX 61.13-14.**  The use of red labels with accusatory and inflammatory content in PDX61.13 is argumentative and misleading, and incorrectly characterizes Samsung's voluminous production.  FRE 402, 403.  Apple's attorney argument in this slide wrongly characterizes Samsung's production as "incomplete" at times when the parties disputed the number of accused products.  PDX61.14 also has an improper title, using "scare" quotes.  The color, italic and bold typeface in the quotation of deposition testimony is improper alteration of evidence and highly prejudicial.  It is also argumentative.  Samsung does not object to the presentation of the testimony itself, but it must be presented without these embellishments.

### B.     Samsung's Responses to Objections to Direct Examination Exhibits

**DX702** is a summary of Mr. Wagner's calculations.  The summary calculations represent *hypothetical* design-around scenarios regarding a *hypothetical* negotiation of a reasonable royalty under *Georgia-Pacific*.  *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 381 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Apple's criticism misses the mark.  Nothing in DX702 refers to or relies on the fact that Samsung actually designed around the patents-in-suit, and Samsung will not use DX702 to suggest that design around has actually occurred.  Mr. Wagner does not rely on that evidence and will not testify as to that evidence.  *See* (Hutnyan Decl., Ex. 17 (Wagner Dep.

346:4-15 (contrasting hypothetical scenario from actual design around by asking "what would be the time it would take if you were under the gun to do it, if you were under pressure to get the design done") *and* 19-21 ("You know, I think, based on my *hypothetical*, you know, what would be the time that you believe would have -- it would have taken to do this design")) (emphasis added).[2]

In contrast, the Court's earlier order applies only to the later, actual "evidence of [Samsung's] design-around efforts for each of the '381, '891 and '163 patents."  Dkt No. 1106 at 1.  The figures in DX702 – and indeed in all of Mr. Wagner's opinions – refer to a hypothetical design around at an earlier time, and make no reference to nor rely on evidence of Samsung's actual, real world design-arounds.

Nor is Apple correct to suggest that Mr. Wagner's expert testimony requires separate foundation.  It addresses a hypothetical scenario – not a factual one.  In any event, as this Court recently ruled, such exhibits are admissible because they "aid the testimony of the expert in presenting his opinions."  Dkt. No. 1668 at 2.  Finally, Apple's motion is a unreasonable attempt to have it both ways.  Mr. Musika testified about his **hypothetical** design around estimates in his lost profits analysis: "it was as little as only one month or as high as eight months, but not the entire time period."  R.T., 8/13/2012 at 2084:11-18.  *See also id.* at 2123:20-23 ("Q. …it would take them a month to design around that and do something else? A. As one of those limiting conditions that I talked about, yes.")  Mr. Wagner should be allowed to respond with his opinion on these hypothetical design around times.  He should be allowed to explain to the jury that he used a figure of, for example, 288 hours for a hypothetical design around time.  *See* DX 702.003.  Again, this figure does not rely on any actual design around effort or result.

---

[2] *See also id.* at 551:20-24; 552:2-6. ("If you are told that you cannot testify to the jury that Samsung has designed around the patents, would that in any way change the -- your testimony as to the amount of damages appropriate under your positive analysis? … No, as long as I'm permitted to testify to the work I did in my report. The fact that I couldn't bolster it with the fact that these design-arounds actually have been done and implemented in commercial phones, it doesn't change the number.") (objection omitted.)

**DX783.**     Samsung has withdrawn DX783 from its disclosure for Mr. Wagner.

## IV. GREG CHAPMAN

### A. Samsung's Objections to Direct Examination Exhibits

Samsung has moved to exclude any testimony from Mr. Chapman as he was first identified as an Apple employee with relevant knowledge in Apple's Supplemental Initial Disclosures on March 4, 2012 – four days before the close of discovery. *See* Dkt. No. 1747.   In the event the Court permits Mr. Chapman to testify, Samsung raises the following objection to the demonstrative disclosed for Mr. Chapman.

**1. PDX56**.

The demonstrative calls for technical testimony by a lay witness not testifying as an expert.   Because Mr. Chapman did not submit an expert report, his testimony regarding the demonstrative is inadmissible pursuant to FRE 701(c).   Moreover, because it is impossible to know what Mr. Chapman might say, given his (1) untimely disclosure; and (2) lack of deposition, his testimony may fall outside of Apple's responses to Samsung's interrogatory seeking Apple's non-infringement positions and to Apple's infringement contentions.   Apple is not permitted to attempt new non-infringement theories through the guise of an undisclosed fact witness.   His testimony may therefore be properly excluded as not having been timely disclosed.   FRE 403.

### B. Samsung's Response to Apple's Objections to Cross Examination Exhibits

**1. DX 2642**

Apple has objected to DX 2642, an exhibit that Samsung intends to use during the cross examination of Mr. Chapman, a 19-year software engineer at Apple who presumably worked on the first iPhone.   Samsung has accused iOS 5 of infringement of its feature patents (including Samsung's '711 patent).   DX 2642 is an article concerning features of Apple's iOS 5 operating system, which were copied from the Android operating system.   Mr. Chapman is apparently offering testimony on iOS functionality.   Contrary to Apple's contention, the article is not

substantially more prejudicial than probative because it concludes that Apple copied the Android operating system in creating iOS 5, the system about which Mr. Chapman will presumably testify. After choosing to make allegations of copying its trial theme, Apple should not be permitted to claim prejudice when its developers are asked about whether they copied competitors when designing accused products. Apple's objection as to prejudice is without merit.

### 2. DX 2524

DX 2524 is an email between Apple executives showing that, during the development of the iPhone, Apple looked at Samsung's phones and features for inspiration. DX 2524 has already been admitted into evidence. At the end of discovery, Apple made a cryptic disclosure of Mr. Chapman's "potential area(s) of knowledge" as "[d]esign and operation of accused functionality in accused Apple products." Dkt. No. 1747. Admittedly, Samsung is a little unclear about what Mr. Chapman may or may not testify about insofar as he was not made available for deposition. Based on his 19 years of work at Apple, however, it seems reasonable to conclude that he was involved in the development of the iPhone and engaged in competitive analysis of Samsung's products. (8/3/2012 Trial Tr. at 769:21-24 (Forstall), "Are you aware that Apple has done very detailed tear-down analyses of competitors' products, including Samsung's? Yes.") Samsung is entitled to ask Apple developers about the basis for their development just as Samsung's developers have been asked. Apple's objections as to prejudice and personal knowledge are without merit.

## V.  PAUL DOURISH

### A.  Dr. Dourish Should be Limited to the Scope of his Conclusory Invalidity Contentions With Respect to KR '792 Patent (PX 112)

Samsung objects to Dr. Dourish offering testimony regarding Korean Patent 10-2004-0013792 ("KR '792 Patent") beyond the scope of Apple's and Dr. Dourish's prior contentions. Neither Apple (in its invalidity contentions) nor Dr. Dourish (in his invalidity report and

deposition) have disclosed a particularized contention regarding invalidity of the '893 patent in light of the KR '792 Patent.   To date, neither Apple nor Dr. Dourish have made any attempt to tie any specific language of KR '792 to any claim element of the '893 patent, or to specify which part of the prior art discloses an element.   If Dr. Dourish testifies that a claim element is disclosed by the patent by discussing a specific sentence or paragraph, this will be the first time that Samsung will be hearing the argument.   The demonstrative exhibits suggest that Dr. Dourish now wishes to change his position and offer testimony he has refused to disclose.   (PDX 42.7-25.)

Apple's Invalidity Contentions do not identify which part of KR '792 Apple is relying upon.   Apple's invalidity contentions consist of boilerplate claim language, followed by impenetrably lengthy block quotes copied from KR '792 patent.   (Hutnyan Decl., Ex. 4 at I-5 (Apple's Invalidity Contentions, Ex I-5))   These block quotes do not link the patent to any specific disclosure or basis for invalidity.   To take one example, Apple's obviousness contention for claim 10 of the '893 patent over KR '792 and the Malloy Patent (PX 108) consists of *over 10 pages of block quotes*, including over four pages of quotes from KR '792 alone.   (*Id.* at 26-37.)

Dr. Dourish's invalidity report went no further.   Dr. Dourish's claim charts repeat virtually the same boilerplate claim language and the block quotes copied from Apple's invalidity contentions.   (*See, e.g.,* Hutnyan Decl., Ex. 2 at 3C (Dourish Rpt and Ex. C).)   The remainder of the report similarly cites page after page of boilerplate claim language (*Id.* at 34-37) and block quotes (*Id.* at 33-34), without ever articulating what part of the patent, which lines or figures, it contends practices the element.

Dr. Dourish refused to be any more specific at his deposition.   (Hutnyan Decl., Ex. 1 at 134:20-137:22).   When asked to explain his invalidity contentions for the limitation of claim 10, he testified:

> I—I don't point to a—***don't offer opinions about specific pieces of text*** in specific figures. I provide the ***totality of that text and the figure*** as an expression that discloses the limitation of the claim.
>
> . . .

02198.51855/4910970.1

-8-   Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 14, 2012

> Yes. As part of my report, I offer **no specific opinion** about one selected element or another. I offer the totality of the text as an expression of the disclosure of the limitation.
>
> . . .
>
> It's my opinion that the totality of text as expressed here discloses that limitation.

(Id. at 136:23-137:2, 136:7-10, 136:20-22.)   Dourish expressed this reluctance to provide "specific" opinions throughout his deposition.   (*See, e.g., Id.* at 127:1-22 ("My position on the—on the disclosure is that the Japanese patent is—is as set out in the—in the claim charts.   I don't offer in there specifically an opinion about the—about the operation of a particular device in the said patent."); Id. at 144:22-145:9).

Apple should be held to the same standards applied by the Court to Dr. Woodward Yang's disclosure of support for "applet" in his expert report.   Dkt. 1690 at 7 (sustaining objection to DX 645); Dkt. 1730, 1730.   Like the Court's ruling with respect to Dr. Yang's prior contentions and testimony, this is also a patent disclosure requiring specificity under the Court's rules.   In light of Apple's refusal to ever identify how the prior art reads on the patent, Dr. Dourish should not be permitted to offer any testimony (or demonstratives) regarding KR'792 other than pointing to it "as a whole."

### B. PX 124 ("iBook System") is unduly prejudicial (FRE 403) and improperly relied upon (FRE 702)

Samsung objects to Dr. Dourish relying upon PX 124 to contend that claim 10 of the '893 patent is invalid as anticipated.   In his expert report, Dr. Dourish asserts that an Apple iBook laptop configured with an iSight video webcam and loaded with iChat, iPhoto and Preview 2.1.0 software (the "iBook System") anticipates claim 10.   (Hutnyan Decl., Ex.2 at ¶ 72).)   For the iBook system to anticipate claim 10, however, it must have been "known or used by others" before the original filing date of the '893 patent.   35 U.S.C. § 102(a); *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) (holding that a jury finding of anticipation could not be supported where there was insufficient evidence of actual use).

1       Neither Dr. Dourish nor Apple can satisfy this requirement.  Nor have they tried to.  In
2   fact, neither has identified <u>any</u> evidence that the iBook system was configured and used in the
3   manner Dr. Dourish asserts anticipates claim 10.  Dr. Dourish's expert report is devoid of any
4   evidence of actual use.  Indeed, at deposition, Dr. Dourish admitted that he had not set up the
5   iBook system in this configuration and did not know whether any default settings were modified
6   to generate the iBook screenshots relied upon in his report.  (*See* Hutnyan Decl., Ex. 1 (Dourish
7   Deposition at 117:7-21).)  Similarly, Apple's invalidity contentions do not contain any evidence
8   that a person ever used the "iBook system," as configured in PX 124, before the original filing
9   date of the '893 patent.  (*See* Hutnyan Decl., Ex. 3 (Apple's Invalidity Contentions, Exh. I-1).)
10      In fact, in light of Samsung's proposed objections, Apple has now even dropped its only
11  sponsoring witness for invoices showing that the device was sold prior to the inventive date.  As
12  even these invoices only showed two devices sold (and not even sold or used together, or with the
13  programs set up in the way Dr. Dourish tested them), Dr. Dourish is now without any basis for
14  contending that the different components and software constitutes prior art, or himself
15  authenticating the iBook system as prior art.  *See Minnesota Min. & Mfg. Co.* 303 F.3d at 1307.
16      Furthermore, if Apple's expert were permitted to testify on the iBook having shown no
17  evidence of actual use by anyone, it would risk unduly confusing the jury and result in undue
18  prejudice to Samsung.  FRE 403.  There must be some evidence that the system, as he is relying
19  upon it, existed prior to the invention date.  Because he is simply assuming the foundation for the
20  testimony, and can neither testify that it actually is prior art or that evidence suggests it is prior art,
21  Dr. Dourish's testimony on the iBook would necessarily fall afoul of FRE 702.  *See MEMC Elec.*
22  *Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 248 Fed. Appx. 199, 203 (Fed. Cir. 2007)
23  ("expert opinion testimony must be both reliable and relevant to the issues before the trial court.").

### VI.    TONY GIVARGIS

####    A.    Samsung's Objections to Direct-Examination Exhibits

#####       1.    Dr. Givargis is not a proper sponsoring witness for PX 113 and, in any case, the document constitutes inadmissible hearsay

PX 113 is the Affidavit of Lee Hill purporting to authenticate documents and data regarding certain Sony products that Apple contends constitute prior art.   (Hutnyan Decl, Ex. 9 (PX 113)).   Apple apparently intends to elicit testimony from its expert, Dr. Tony Givargis, regarding PX 113.   PX 113 not admissible through Dr. Givargis's testimony.

Dr. Givargis has no personal knowledge of the dates and data that PX 113 purports to authenticate, nor does Apple claim he does.   FRE 602 dictates that a witness must have personal knowledge of a matter to testify about it.   Accordingly, he cannot be a proper sponsoring witness.

The exception to this rule, FRE 703, does not apply because the probative value does not substantially outweigh the prejudicial effect.   The risk for prejudice is impermissibly high because a jury – despite having no evidence of the underlying facts regarding the sales dates and data – would believe the underlying documents constitute prior art.   But prior art must be shown that it is actually *prior*, not simply assumed to be prior based on expert testimony about a declaration that has no foundation and (as explained directly below) is pure hearsay.

All statements in PX 113 are out-of-court statements made by Mr. Hill offered to prove the sales dates and quantities for certain Sony products.   Because there is no applicable hearsay exception, the underlying statements in PX 113 are inadmissible.   PX 113 itself is otherwise inadmissible, as discussed in Samsung's objections to Dan Dzuban, section VII below. Accordingly, Dr. Givargis should not be allowed to testify about the declaration and accompanying documents.

### 2. PX 114 was not disclosed in Apple's invalidity contentions and is inadmissible under FRE 403

PX 114, and corresponding slide number PDX43.27, is a tutorial regarding Java technology for mobile devices.   (Hutnyan Decl, Ex. 10 (PX114))   Although Apple attempts to use it as prior art, or to explain prior art, it is simply a printout from the internet.   It is undated, other than it appears to have been printed this year, seven years after the filing date of the '711 patent.

1    PX 114 was not disclosed in Apple's invalidity contentions and should be excluded on that
2 basis.  *See A*pple's Invalidity Contentions Exhibit L.   Apple was obligated to disclose any such
3 prior art in its contentions.

4    Testimony about or admission of PX 114 would also be unfairly prejudicial, confusing and
5 misleading to the jury.   FRE 403.   PX 114 has no identifying date other than the date that it was
6 printed to be produced in this litigation, March 19, 2012.   (Hutnyan Decl., Ex. 10 (PX 114))   This
7 is long after the effective date for the patent of Aug. 30, 2005, and is even after the close of fact
8 discovery.

9    There is no question that the jury will be confused and mislead into believing that PX 114
10 is prior art, when in fact it cannot be.   The probative value of PX 114 is substantially outweighed
11 by this danger because the internet printout from 2012 cannot shed any light on the state of the art
12 or the meaning of a term at the time of the invention.   In addition, this document is not otherwise
13 admissible under FRE 703, which requires that an expert in the field would reasonably rely on the
14 kinds of facts therein.    Dr. Givargis cannot rely on it since it is irrelevant to what a person of
15 ordinary skill in the art would have known at the time of the invention.    The source of this
16 document -- uberthings.com -- is not a reputable source, nor is an author identified on the
17 document.   (Hutnyan Decl., Exs. 13 & 10 (DX731 & PX114)).

18    **B.    Samsung's Responses to Objections to Cross Examination Exhibits**
19         **1.    SDX3922.003/SDX3922.004/DX2634 do not improperly suggest that Dr.**
20              **Givargis is applying the wrong claim construction.**

21    Demonstrative exhibits SDX3922.003/SDX3922.004/DX2634 do not improperly suggest
22 that Dr. Givargis is applying the wrong claim construction.

23    Initially, Samsung notes that Apple has lodged a high priority objection to four documents
24 for a single witness in contravention of the Court's order.   The objection should be overruled on
25 this basis alone.

26    Substantively, there is nothing misleading about slides SDX3922.003 and
27 SDX3922.004.   Slide SDX3922.003 is merely an excerpt from Dr. Givargis' expert report in

1  which he recites his definition of the term "applet."  (Hutnyan Decl., Ex.15 at .003 (SDX3922
2  slides)).  Slide SDX3922.04 cannot be misleading because it unmistakably indicates the date
3  when Dr. Givargis submitted his expert report and that of the claim construction order.  *Id.* at
4  .004.

5        Samsung is entitled to question Dr. Givargis about the basis for his interpretation and
6  understanding of the claims.  Exploring the basis for an expert's opinion is at the heart of cross
7  examination.  Samsung should be permitted to inquire as to whether Dr. Givargis' testimony
8  should be given less weight because he did not offer any analysis under alternative interpretations,
9  and instead bases his entire analysis on a singular, incorrect interpretation.  Just as Samsung is
10 permitted to elicit testimony showing that Dr. Givargis has no basis for contending that the patents
11 are invalid under his reading of the patent, Apple, in turn, can attempt to elicit testimony on
12 redirect that his opinion is not based on the wrong understanding of the claims.

13       DX2634 is Dr. Givargis's declaration in support of Apple's proposed claim construction
14 and is not cited in either SDX3922.003 or .004.  (Hutnyan Decl., Ex. 15 (SDX3922.003 &
15 .004DX2634)).  There is nothing misleading about the use of Dr. Givargis's prior sworn
16 statements for purposes of impeachment.  Therefore, this objection should be overruled.

17       **2.**    **Samsung withdraws demonstrative SDX3922.015**

18

19 **VII.**   **DAN DZUBAN**

20       **A.**    <u>**Samsung's Objections to Direct Examination Exhibits**</u>

21       Samsung has moved to exclude any testimony from Mr. Dzuban as he was never
22 disclosed as a possible witness until some four months following the close of discovery, when
23 Apple first submitted its list of trial witnesses.  See Dkt. No. 1747.  In the event the Court
24 permits Mr. Dzuban to testify, Samsung raises the following objections to the exhibits disclosed
25 for Mr. Dzuban.

26       **PX 113 – Declaration of Lee Hill**.  The Hill Declaration purports to authenticate certain
27 documents produced to Apple by Sony regarding two Sony phones that Apple contends are prior
28

art to Samsung's '711 Patent.  One of those phones (the "W800i") appears to no longer be at issue.  The Declaration itself is a prior out-of-court statement offered for the truth of the matter asserted and is hearsay.  FRE 801.

This Court previously excluded the Declaration of Roger Fidler – in which Mr. Fidler set forth the relevant dates that certain prior art tablets had been created – finding Mr. Fidler's Declaration to be "hearsay, as it is a prior statement being offered for the truth of the matter asserted."  (Dkt. 1720 at 6.)  Mr. Hill's affidavit – which attempts to establish on-sale dates for prior art mobile handsets – should be excluded for the same reasons.

Further, Apple has indicated it will not call Mr. Hill, who authored the Declaration, but Mr. Dzuban to testify about the Declaration.  He is therefore an improper sponsoring witness as he presumably has no personal knowledge regarding the facts underlying the submission of Mr. Hill's Declaration. FRE 602.

**PX 116 – Sony K700i User Manual**.  This document is offered for the truth of the matter asserted and, because it does not fall within any recognized exception to the rule against hearsay, must be excluded.  FRE 801.  Moreover, the copy of the manual – having been printed from the internet – is not an original user manual and is therefore inadmissible to prove the truth of the matters contained therein.  FRE 1002.

### VIII. MANI SRIVASTAVA

#### A. Samsung's Objections to Direct Examination Exhibits

##### 1. Dr. Srivastava's Opinions Regarding the Suso Patent (PX 118) in his Expert Report Are Wholly Conclusory

Dr. Srivastava's invalidity contentions regarding U.S. Patent No. 6,069,649 (PX 118) ("Suso Patent") suffer the same deficiencies as Dr. Dourish's invalidity opinions on the KR '792 patent.  Namely, his conclusions are untied to the language of the Suso patent or to any claim element of the '460 patent, and fail to specify which specific part of the prior art discloses any

1  element.   If Dr. Srivastava is permitted to cure these deficiencies for the first time at trial,
2  Samsung will be unfairly prejudiced.
3        Like its contentions for the KR '792 patent, Apple's invalidity contentions for the Suso
4  Patent are conclusory.   (Hutnyan Decl., Ex. 7 at J-1.)    Again, they consist of boilerplate claim
5  language and dense block quotes of the Suso Patent.   Id.
6        Dr. Srivastava's invalidity report reflects these same deficiencies.   Like Dr. Dourish, Dr.
7  Srivastava uses boilerplate claim language and dense block quotes copied directly from Apple's
8  invalidity contentions, without ever attempting to tie the prior art to any element.    (Hutnyan
9  Decl., Ex. 6 at 23-25, (Srivastava Rpt. Ex. 3A)).    Dr. Srivastava consistently fails to articulate
10 what part of the patent, or which lines or figures, he contends practices elements of claim 1.    (*Id.*)
11 Accordingly, Dr. Srivastava should not be permitted to testify at trial with any particularity
12 regarding the Suso Patent beyond the level expressed in his expert report.

13       **2.   Dr. Srivastava's Invalidity Report Is Wholly Conclusory Regarding**
14       **Alleged Invalidity Over the Yoshida Patent (PX 119)**

15       For the same reasons, Dr. Srivastava should also be precluded from offering testimony
16 about U.S. Patent No. 6,690,417 ("Yoshida patent").    Apple's invalidity contentions for the
17 Yoshida Patent offer the same boilerplate claim language and impenetrable block quotes of claim
18 language as its invalidity contentions for the KR '792 and Suso patents.    (Hutnyan Decl., Ex. 8
19 (Apple's Invalidity Contentions, Ex. J-5)).    These contentions provided insufficient notice to
20 Samsung of Apple's theory of invalidity regarding the Yoshida patent.    Five months later, in his
21 invalidity expert report, Dr. Srivastava mirrored exactly these conclusory contentions, copying
22 numerous dense quotes from Apple's invalidity contentions from the Yoshida patent.    (Hutnyan
23 Decl., Ex. 5 at 86-91, Rpt. Ex. 9).    Again, in the report and in his invalidity chart, Dr. Srivastava
24 failed to provide any particularized explanation of how specific lines and figures of the Yoshida
25 Patent allegedly meet the elements of claim 1, or to explain what element of the prior art he was
26 relying upon.    (*Id.*)

## IX. TONY BLEVINS

### A. Samsung's Objections to Cross Examination Exhibits

**PDX59 and PDX60** – untimely.

**PDX59 and PDX60**.   PDX59 is a disassembled iPhone 4, and PDX60 is the main logic board from an iPhone 4.   Samsung objects to these physical exhibits on the ground that Apple failed to timely disclose them on its exhibit list.   PDX59 and PDX60 appear nowhere on Apple's exhibit list.   Apple had ample opportunity to disclose PDX59 and PDX60, but did not do so.

## X. GREG JOSWIAK DEPOSITION DESIGNATIONS

### A. Samsung's Objections to Counter Designations

Samsung objects to Apple's counter designation of testimony relating to trade dress dilution, located 35 pages away at Joswiak Tr. 273:20-274:21, as outside the scope of Samsung's designations.   Trade dress dilution is not related to the design patent infringement analysis.   Furthermore, following Apple's own logic, dilution and lack of consumer confusion are unrelated, making Apple's counter-designation that much more inappropriate.   Accordingly, Apple's counter-designation of Joswiak Tr. 273:20-274:21 should be struck.

### B. Samsung's Responses Regarding Apple's Objections

Samsung designated only eighteen lines from the deposition of Gregory Joswiak.   Samsung's designated passages provide background information regarding Mr. Joswiak's position at Apple and relate to the absence of consumer confusion as to Apple and Samsung's smartphones.   (Hutnyan Decl., Ex. 16 (Joswiak Tr. 238:1-238:10)).   Apple counter-designated testimony from Mr. Joswiak's deposition relating to dilution of Apple's trade dress (Hutnyan Decl., Ex. 16 (Joswiak Tr. 273:20-274:21)).

Apple objected to Samsung's designation of testimony relating to the absence of consumer confusion.   (Hutnyan Decl., Ex. 16 (Joswiak Tr. 238:1-238:10)).   According to Apple's argument, because Apple is only asserting a claim for trade dress dilution—not for trade dress

02198.51855/4910970.1

-16-    Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 14, 2012

infringement—for its iPhone-related trade dresses, evidence of lack of confusion must be precluded.

Apple fails to appreciate that Mr. Joswiak's testimony is relevant to issues wholly apart from trade dress dilution. Apple has asserted in this trial that its iPhone products are embodiments of, and therefore substantially the same as, several of its asserted design patents (D'677 and D'087). (R.T., 8/6/12 at 1021:22-1022:8; 1023:14-22). Based on Apple's own assertions, where a patentee has embodied its design in a product, design patent infringement analysis properly considers a direct comparison between the accused product and the patentee's product:

> When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, [citation omitted]; indeed, such comparison may facilitate application of the Gorham criterion of whether an ordinary purchaser would be deceived into thinking that one were the other.

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993). The *L.A. Gear* Court found, under such circumstances, that evidence of any likelihood of confusion in the actual purchasing context was relevant and properly considered as part of the design patent infringement analysis. *L.A. Gear*, 988 F.2d at 1126 ("It was in this context [i.e. design patent infringement] that the district court analyzed likelihood of confusion. No methodological error has been shown in this analysis."). Similarly, in *Arminak & Assocs. Inc. v. Saint-Gobain Calmar, Inc.*, the Federal Circuit's non-infringement decision relied on testimony that there would be no real world confusion between the plaintiff and defendant's products. 501 F.3d 1314, 1324 (Fed. Cir. 2007) ("The record establishes that the ordinary observer would not be deceived by the similarities between Arminak's AA Trigger shroud and Calmar's patented sprayer shroud designs. Indeed, Calmar's own expert conceded that '[i]t would be a significant exception for a corporate buyer purchasing the Arminak trigger sprayer to confuse the Calmar ERGO Shroud and the Arminak AA shroud' and that '[t]here is essentially no question that a corporate buyer purchasing

02198.51855/4910970.1

-17-   Case No. 11-cv-01846-LHK
OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 14, 2012

these trigger sprayers with these specific shrouds would be able to tell the difference easily.'"); *see also OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405-07 (Fed. Cir. 1997) (plaintiff's proffered expert testimony, survey data, and real world confusion evidence were relevant to design patent infringement, but ultimately insufficient to prove that any alleged deceptive similarity was due to the ornamental features of the claimed design).

Evidence of real world deception — or lack thereof — is therefore applicable to the design patent infringement analysis, quite apart from whether it is relevant to Apple's trade dress dilution claims. Based on Apple's own claims of embodiment, evidence regarding actual confusion is highly probative of whether Apple's phone designs and Samsung's phone designs are so similar that "a purchaser . . . would be deceived by the similarity between the claimed and accused designs, 'inducing him to purchase one supposing it to be the other.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008) (en banc). Apple is therefore quite right that Mr. Joswiak's testimony is prejudicial to it — it rebuts Apple's allegations. Rule 403, however, is only concerned with evidence that is *unfairly* prejudicial. *See, e.g., Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). Apple provided no basis for how this probative evidence would be unfair, especially in light of testimony given by Apple's design patent infringement expert that he believed he had "seen some articles that suggest that people do get confused." (R.T.,8/6/12 at 1102:13-14). Samsung has a right to present relevant, probative evidence to the contrary to defend itself.

## XI.  RICHARD LUTTON DEPOSITION DESIGNATIONS

### A.  Samsung's Responses to Apple's Objections

**DX531 Is Not Hearsay, Is Not Offered For an Impermissible Purpose, and Is Relevant to Notice:** DX531 is Samsung's September 9, 2010 presentation to Apple giving notice of the iPhone's infringement of Samsung's patents. DX531 is not hearsay. Samsung does not intend to offer it for the truth of the matter asserted therein; rather, Samsung will offer DX531 as evidence that Apple had notice of Samsung's patents. FRE 802. Samsung also does not

1   intend to offer DX531 to prove Apple's liability or the amount of any claim. These are the only
2   impermissible purposes for evidence of compromise or settlement negotiations under FRE 408;
3   accordingly, FRE 408 does not bar DX531's admission. (See also Dkt. 1657, at 3 (denying
4   Apple's objection to the introduction of PX51, another licensing presentation).) The Court
5   admitted Apple's similar presentation as evidence of notice to Samsung. (8/10 Trial Tr. at
6   1959:3-18.) Accordingly, DX531 is admissible under both FRE 408 and 802.

   Apple's objection that the presentation is undated is both meritless and now moot. First,
Samsung designated additional testimony from Richard Lutton identifying the date the
presentation was given. Apple's objection is therefore moot. Second, even if the presentation
and Mr. Lutton's testimony were insufficient to establish the notice date, there would be no reason
to exclude DX531. DX531 is indisputably relevant evidence that Samsung gave Apple notice of
its patents. If additional testimony is required to establish the date of the presentation, Samsung
may call additional witnesses to provide it. Apple's objection should be overruled.

   **Richard Lutton's Testimony Is Not Hearsay**: Apple's objection to Samsung's
designations ignores the reason why this testimony is submitted – to prove Apple's knowledge of
Samsung's infringement allegations. Because the documents are not being offered for the proof
of the assertions therein, they are not hearsay. Apple's objection should be overruled.

DATED: August 15, 2012           QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP

                                 By */s/ Victoria F. Maroulis*
                                    Victoria F. Maroulis
                                    Attorneys for SAMSUNG ELECTRONICS
                                    CO., LTD., SAMSUNG ELECTRONICS
                                    AMERICA, INC., and SAMSUNG
                                    TELECOMMUNICATIONS AMERICA, LLC