# EXHIBIT 1

Highly Confidential - Attorneys' Eyes Only

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2       NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

 3    ----------------------------------

 4    APPLE, INC., a California          )

 5    corporation,                       )

 6             Plaintiff,                ) Case No.

 7          vs.                          ) 11-CV-01846-LHK

 8    SAMSUNG ELECTRONICS CO., LTD.,     )

 9    a Korean business entity;          )

10    SAMSUNG ELECTRONICS AMERICA,       )

11    INC., a New York corporation;      )

12    SAMSUNG TELECOMMUNICATIONS         )

13    AMERICA, LLC, a Delaware limited   )

14    liability company,                 )

15             Defendants.               )

16    ----------------------------------)

17    AND RELATED COUNTER-CLAIM          )

18    _____)

19         HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

20         VIDEOTAPED DEPOSTION OF PAUL DOURISH, Ph.D.

21              Los Angeles, California

22                   May 2, 2012

23    Reported by:

24    GAIL E. KENNAMER, CSR 4583, CCRR

25    Job No. 48817
```

Highly Confidential - Attorneys' Eyes Only

Page 114

1  position that I -- that I described this morning with
2  respect to anticipation in closed claims is concerning
3  the "consisting of" and not the sequentiality of the
4  steps.
5      Q   So "consisting of" would -- would be limited
6  to -- I mean, the closed-ended interpretation that --
7  in your understanding "consisting of" would be limited
8  to the steps that are set forth rather than the
9  sequential performance; is that right?
10         MR. SOUTO:  Objection to form.
11         THE WITNESS:  To the extent that I can
12  provide an interpretation of -- of a legal term, which
13  I believe that -- and a ruling that the Court gets to
14  make, that is, yes, I agree that my -- my understanding
15  is that it is the "consisting of" that -- that
16  constitute the way in which a closed term -- a closed
17  claim would render this -- render the prior art that I
18  identified as anticipatory as not anticipating the
19  method claims.
20   BY MR. STRETCH:
21      Q   Do you understand the -- the -- in Claim 1,
22  for example, is the method consisting of the sequential
23  steps.  But if I understand you correctly, you're not
24  saying that it's -- that -- the actual steps of the
25  method that render the -- your claim that the iBook

Page 115

1  system is -- is no longer anticipatory; you're saying
2  that because the iBook is capable of performing other
3  functions, it's -- it's a general purpose computer?
4  That that's why it would not anticipate Claim 1?
5      A   The my -- my understanding of the -- of the
6  law and the reading of that -- of the term "consisting
7  of", speaks to the absence of other parts or steps.
8      I -- when -- when conducting my invalidity
9  assessment, I did incorporate the fact that these had
10  to be sequential steps.
11      Q   Okay.  In your opinion, is the iBook system
12  connected to the iChat peripheral, a digital image
13  processing apparatus?
14      A   I have no reason not to classify it that way.
15      Q   And are you relying on the particular iBook
16  connected to the iSight peripheral loaded, I believe,
17  with OS 10.3 as the basis for your arguments,
18  irrespective whether it's anticipation or obviousness,
19  or are there user manuals or other written material
20  that you're relying on in connection with your -- your
21  iBook system?
22         MR. SOUTO:  Objection to form.
23         THE WITNESS:  Yeah.  Could you run that past
24  me again, please.
25

Page 116

1   BY MR. STRETCH:
2      Q   Yeah.  I just want to understand if -- I want
3  to leave aside the purposes for which you're using the
4  iBook system.
5      So whether it's anticipation or obviousness,
6  leaving that aside, are you relying on just the
7  physical system, the iBook with the iSight peripheral
8  and the particular operating system that was loaded on
9  the iBook at the time, or is there additional written
10  materials such as user manuals or other written
11  materials that inform your understanding of how the
12  iBook works?
13         MR. SOUTO:  Objection to form.
14         THE WITNESS:  So your concern is with the
15  basis on which I form an opinion about how the iBook
16  operates in that -- in the configuration that I
17  describe in my invalidity --
18   BY MR. STRETCH:
19      Q   Yes.
20      A   -- report?
21      The position with respect precisely to how the
22  device operates and the analysis that is presented in
23  the -- in my report and in its exhibits is based on my
24  experience with the device itself and the software and
25  the configuration described in Paragraph 72.

Page 117

1      Q   Okay.  Do you consider the iBook system to be
2  an embedded system?
3      A   No, I do not.
4      Q   And you personally inspected the iBook system
5  that's described in your report?
6      A   Yes, I did.
7      Q   Okay.  Do you know who set up the system?
8      A   In what meaning of the term "set up"?
9      Q   In other words, who got the iBook, who loaded
10  it with the OS 10.3 software, who connected the iChat
11  peripheral?
12      A   No.
13      Q   Okay.  Do you know when it was set up?
14      A   Not off the top of my head, no.
15      Q   Okay.  Did you identify the iBook system to
16  use as prior art against the '893 patent?
17      A   No.
18      Q   To your knowledge, were any default settings
19  on the system modified in order to generate the screen
20  shots depicted in your charts?
21      A   I have no knowledge of that.
22         MR. STRETCH:  Okay.
23      We need to change the tape.
24         VIDEO OPERATOR:  This concludes DVD Number 2.
25  We're now going off the video record.  The time is

Highly Confidential - Attorneys' Eyes Only

## Page 126

1  "JP '927 publication discloses an image recording
2  device that displays images on a display sequentially
3  beginning with the image that was displayed a previous
4  time." And you cite to the JP '927 publication,
5  Paragraph 0010 and Figure 1 reproduced below.
6      You state that "The device includes memory for
7  storing display history that indicates the history of
8  the images displayed on the display. (JP '927
9  publication Paragraph 0008 and Figure 2 reproduced
10 below.)
11     You say, "The image recording device includes a
12 'Switch Mode button 34 [which] is operated by the user
13 when switching between an image recording mode, for
14 obtaining image data of an image to be recorded through
15 image recording, and a viewing mode, for displaying on
16 the LCD 26, recorded images obtained through image
17 recording.'"
18     You also cite to Paragraph 0008.
19     Now, is it your belief or your contention that the
20 Japanese '927 application discloses first displaying a
21 last-viewed image upon switching back to a reproduction
22 mode?
23         MR. SOUTO: Objection to form.
24         THE WITNESS: My opinion on the -- what the
25 JP -- the Japanese patent discloses with respect to the

## Page 127

1  specific claim limitations in '893 are as I set out in
2  Exhibit 3B of my invalidity report.
3     BY MR. STRETCH:
4      Q   So is that a "Yes" or a "No"?
5      A   Yes.
6         MR. SOUTO: Objection.
7         MR. STRETCH: Okay.
8         MR. SOUTO: You need to give me a chance to
9  object.
10    BY MR. STRETCH:
11     Q   Is it also your opinion that the Japanese
12 Application discloses that the user can view the
13 last-viewed image after switching back to the
14 reproduction mode only by entering a command for
15 continuous viewing on the device?
16        MR. SOUTO: Objection to form.
17        THE WITNESS: My position on the -- on the
18 disclosure is that the Japanese patent is -- is as set
19 out in the -- in the claim charts.
20    I don't offer in there specifically an opinion
21 about the -- about the operation of a particular device
22 on the said patent.
23    BY MR. STRETCH:
24     Q   But you have read the '927 patent; correct,
25 the JP '927 application?

## Page 128

1      A   Yes.
2      Q   Okay. And do you recall whether it discloses
3  that the user can view the last-viewed image after
4  switching back to the reproduction mode only by
5  entering a command for continuous viewing on the
6  device?
7      A   Offhand I don't recall the details. So if I
8  can take a moment to review.
9      Q   Okay.
10     A   (Indicating.)
11     Q   If it helps, I'd ask you to look at
12 Paragraph 55 on page 8.
13     A   (Indicating.)
14        MR. SOUTO: Feel free to review whatever you
15 need to review.
16        THE WITNESS: (Indicating.)
17    BY MR. STRETCH:
18     Q   Have you had a chance to review all your
19 materials over the last several minutes?
20     A   Yes. Yes, I have.
21     Q   Okay. Now, can you answer my question?
22     A   I'm afraid I'll have to ask you to repeat the
23 question.
24     Q   So why were you reviewing the materials if you
25 don't remember the question?

## Page 129

1         MR. SOUTO: Objection to form.
2         THE WITNESS: I would like to hear back the
3  exact wording of the question to be sure that I'm
4  giving you as accurate an answer as I can.
5     BY MR. STRETCH:
6      Q   Okay. Do you recall that the Japanese '927
7  Application discloses that the user can view the
8  last-viewed image after switching back to the
9  reproduction mode only by entering a command for
10 continuous viewing on the device?
11     A   That is not my reading.
12     Q   Okay. Let me ask you to look at Paragraph 38
13 of the English translation.
14    It says, "Next, in Step 108, an evaluation is made
15 as to whether or not there has been a continue viewing
16 command. A continue viewing command is that which
17 specifies that the image data for the last recorded
18 image that was displayed on the LCD 26 through the
19 viewing process the previous time is to be displayed
20 again on the LCD 26. The evaluation in Step 108 may be
21 performed through identifying the inputting of a
22 command through a pressing operation of the Continue
23 Viewing button 36 by the user."
24    If you'd turn now to Paragraph 55, page 8.
25    "For example, let us assume that a new recorded

Highly Confidential - Attorneys' Eyes Only

Page 130

1  image H is obtained through performing the image
2  recording process after the recorded image E has been
3  displayed on the LCD 26 in the previous viewing
4  process.  When a viewing process is performed again,
5  the recorded image H, which is the most recent recorded
6  image, will be displayed on the LCD... If the Continue
7  Viewing button 36 is operated through being pressed by
8  the user, then recorded image E, which was displayed
9  last on the LCD 26 at the time of the previous viewing,
10 will be displayed on the LCD 26."
11     Does that refresh your recollection as to whether
12 this application discloses that a user can view the
13 last-viewed image after switching back to the
14 reproduction mode only by entering a command for
15 continuous viewing on the device?
16         MR. SOUTO:  Objection.  Form.
17         THE WITNESS:  No.  I stand by my previous
18 statement.
19    BY MR. STRETCH:
20     Q  Okay.  So in your view, there's no need to
21 enter a command for continuous viewing on the device in
22 order to see the last-displayed image when switching
23 back to the reproduction mode from the photographing
24 mode?
25     A  No.  I did not say that.

Page 131

1     Q  So there is a need to enter a command for
2  continuous viewing on the device in order to see the
3  last-displayed image when switching back to the
4  reproduction mode from the photographing mode?
5         MR. SOUTO:  Objection to form.
6         THE WITNESS:  It is the -- The patent
7  description, as I read it, is open as to whether the
8  continuous-viewing operation performs itself a mode
9  switch rendering it unnecessary to provide two separate
10 functions.
11   BY MR. STRETCH:
12     Q  Okay.
13     A  It further, as specified -- as specified in
14 Paragraph 55, is not to my reading, committed as to
15 order.
16     So like the '893 patent, it displays two
17 different -- two continuous display mode and a normal
18 display mode.
19     But my reading of that paragraph in particular,
20 does not necessarily commit as to the order in which
21 different modes are selected.
22     However, as I stated earlier, the -- my position
23 with respect to specific disclosures of the '893 patent
24 is as laid out in the exhibits here.
25     Q  Okay.  Let me hand you Exhibit 8, which is a

Page 132

1  Korean '792 patent.  The Bates number for that is
2  APLNDC-WH0000009255 through -9261.
3         (Deposition Exhibit 8 was marked for
4  identification by the court reporter.)
5         MR. STRETCH:  Let me hand you Exhibit 9,
6  which is the English translation of same.  The Bates
7  number for that is APLNDC-WH0000009262.
8         (Deposition Exhibit 9 was marked for
9  identification by the court reporter.)
10        MR. STRETCH:  And I will hand you Exhibit 3C
11 to your invalidity report.
12        MR. SOUTO:  Thank you.
13    What are we doing with this one?
14        MR. STRETCH:  I'm going to pose a question.
15        MR. SOUTO:  I'm sorry.  Are we going to mark
16 Exhibit 3C as an exhibit?
17        MR. STRETCH:  Oh, I'm sorry.
18        MR. SOUTO:  You didn't -- you didn't identify
19 it as an exhibit.
20        MR. STRETCH:  I apologize.
21        MR. SOUTO:  You might have marked it as an
22 exhibit, but you didn't say.
23        MR. STRETCH:  I did.  Which exhibit there?
24        THE WITNESS:  It's Exhibit 10.
25        MR. STRETCH:  Okay.  Exhibit 3C is

Page 133

1  Exhibit 10.
2         MR. SOUTO:  Thank you for offering to give me
3  your preview of your question anyway.
4         (Deposition Exhibit 10 was marked for
5  identification by the court reporter.)
6         THE WITNESS:  (Indicating.)
7    BY MR. STRETCH:
8     Q  So I'd like to ask you in particular about
9  Paragraph 120 in your invalidity report, regarding this
10 reference.
11    Before I do that, as with the iBook system and the
12 Japanese '927 reference we just looked at, I take it
13 your correction to your report this morning regarding
14 the closed-ended term language of "consisting of"
15 applies with equal force to this reference, in that it
16 would not anticipate the method claims should the Court
17 adopt that plain meaning but it would still render
18 obvious the claims of the -- the method claims of the
19 '893 patent in combination or in view of other
20 references?
21     A  I'm going to have to ask you to repeat that
22 question, please, just to be sure that I give you the
23 correct and accurate answer.
24     Q  Well, we've talked several times today about
25 the correction to the report that you gave me; right?

Highly Confidential - Attorneys' Eyes Only

Page 134

1  Which is that you now have an understanding that
2  "consisting of" can be interpreted to be closed-ended
3  and -- and meaning only the language that is
4  specifically set forth, as opposed to the open-ended
5  comprising language; right?
6     A   That is my current understanding, yes.
7     Q   Okay.  All right.
8        And we talked about how given that updated
9  understanding, the references you identified as
10 anticipating the method claims of the '893 patent no
11 longer anticipated the '893 method claims if the Court
12 adopted that closed-ended meaning of "consisting of";
13 right?
14    A   Yes.
15    Q   Okay.  And this -- and by "this," I mean the
16 Korean application we're currently looking at, the
17 '792.  Actually, it's the Korean patent.  The '792 is
18 one of those references?
19    A   Yes, it is.
20    Q   Okay.  Now, drawing your attention to
21 Paragraph 120 of your report, it says, The KK -- "The
22 KR '792 patent discloses irrespective of the duration,
23 first displaying again only the single image file that
24 was displayed when switching from the reproduction mode
25 to the photographing mode."

Page 135

1        And then you say, "(See e.g. ...'792 patent,
2  page 5-4" -- Or maybe it's Paragraph 5-4.
3        You say, "Page 5-4 and Drawing 3."
4        So while you're reviewing those materials, could
5  you just do so with my question in mind, which is:  How
6  is it that page -- the information contained on
7  page 5-4 and Figure 3 or Drawing 3 disclose that
8  particular limitation?
9     A   The text that sets out the disclosure is
10 included in Exhibit 3C of my invalidity report,
11 appearing on pages 7 to 8.
12    Q   Okay.  And is that the paragraph that begins
13 "Now, if the Number 2 slide show menu is selected"?
14    A   Sorry.  I -- that -- that -- that text that
15 I'm referring to is on page 7 of Exhibit C here.
16 There's a section there that reads, "The KR '792 patent
17 discloses..."
18    Q   Uh-huh.  Okay.  I'm sorry.  Yes.
19       So it's on page 5-4, two paragraphs up from where
20 I started reading where now if -- the Number 2.
21       So it's "First, If the #1 menu 'view photograph'
22 is selected from the current screen (D100), then screen
23 (D200) appears, and then the list of the photographs,
24 the list of the photographs stored in the memory
25 appears.  Once the desired photographs are thus

Page 136

1  selected, then the corresponding photographs appear as
2  in the screen (D300).  Here, the photographs can be
3  continuously displayed using the direction keys and
4  without having to return to said screen...and by
5  pressing the confirm key, one can return to the list
6  screen...once again."
7        And then you continue with the paragraph that I
8  started reading.
9        "Now, if the #2 'slide show' menu is selected in
10 the screen" -- I don't want to read this all into the
11 record, but please review it.
12       And my question simply is:  Can you explain to me
13 how this language that appears in your chart at pages 7
14 and 8, along with Drawing Number 3, discloses the
15 limitation that irrespective of the duration first
16 displaying again only the single image file that was
17 displayed when switching from the reproduction mode to
18 the photographing mode.
19    A   The text as a whole expresses and discloses
20 the limitation.
21    Q   How does Figure 3 disclose that or Drawing 3?
22 I'm sorry.
23    A   I -- I don't point to a -- don't offer
24 opinions about specific pieces of text in specific
25 figures.  I provide the totality of that text and the

Page 137

1  figure as an expression that discloses the limitation
2  of the claim.
3     Q   Okay.  So you have no opinion as to what
4  Figure 3 discloses other than it's part of the totality
5  of the evidence which leads you to believe that that
6  particular limitation is disclosed?
7     A   Yes.  As part of my report, I offer no
8  specific opinion about one selected element or another.
9  I offer the totality of the text as an expression of
10 the disclosure of the limitation.
11    Q   Okay.  So you can't point to any particular
12 sentence -- Strike that.
13       You can't point to any specific sentence or the
14 figure to indicate that this particular limitation is
15 disclosed in this Korean patent '792 --
16       MR. SOUTO:  Objection to form.
17 BY MR. STRETCH:
18    Q   -- is that correct?
19       MR. SOUTO:  I apologize.  Objection to form.
20       THE WITNESS:  It's my opinion that the
21 totality of text as expressed here discloses that
22 limitation.
23       MR. STRETCH:  Okay.  Let me mark as
24 Exhibit 11, U.S. Patent '082, Hayashi.  Bates Number
25 APLNDC-WH0000004184 through -4195.

Page 142

1  understanding is that a claim that covers both an
2  apparatus and a method for using that apparatus, is
3  indefinite under the -- the legal statute referred to
4  here.
5  BY MR. STRETCH:
6      Q   Okay. And if a claim is found to be
7  indefinite, do you have an understanding as to whether
8  that means it's invalid or not?
9      A   I would need to check my understanding of the
10 law as set out in the documents here.
11         MR. STRETCH: All right. Well, why don't we
12 take a break and --
13         MR. SOUTO: Are you okay if we do that now?
14         MR. STRETCH: Sure.
15         MR. SOUTO: Okay.
16         VIDEO OPERATOR: Off the video 3:53.
17     (A recess is taken.)
18         VIDEO OPERATOR: We're back on the video
19 record. The time is 4:11.
20 BY MR. STRETCH:
21     Q   Doctor, just before we broke, I was asking you
22 about your indefiniteness argument at page 57 of your
23 report, and I'd asked you whether you'd reviewed the
24 patents that had been asserted by Apple against Samsung
25 in this case.

Page 143

1  Do you recall that question?
2      A   Yes, I do.
3      Q   Okay. And I think you said the answer was
4  "No"?
5      A   That's right.
6      Q   Okay. So -- So as you sit here today, you
7  don't know whether any of the apparatus claims asserted
8  by Apple in this case suffer from the same purported
9  problem you set out in Paragraphs 2- -- 203 and 204?
10         MR. SOUTO: Objection to form.
11         THE WITNESS: I have no understanding of
12 those patents or their claims.
13 BY MR. STRETCH:
14     Q   Okay. Now, the next section of your report
15 says the patent lacks support in the written
16 description because it fails in the specification to
17 disclose the "irrespective of the duration" limitation
18 that was added during prosecution; right?
19     A   Yeah, that's right.
20     Q   And you understand, do you not, that claims
21 are to be construed with the intrinsic evidence of the
22 prosecution of the patent specification, plain meaning
23 of the claims themselves?
24 Do you have that understanding?
25         MR. SOUTO: Objection to form.

Page 144

1         THE WITNESS: Yes, I do.
2  BY MR. STRETCH:
3      Q   And did you read the prosecution history for
4  the '893 patent?
5      A   Yes, I did.
6      Q   And do you recall the reference pursuant to
7  which the "irrespective of the duration" limitation was
8  added?
9      A   I would want to, actually, examine the
10 prosecution history to accurately discuss -- discuss
11 that.
12     Q   Okay. As you sit here today you don't recall
13 what reference was cited against the claim of the '893
14 such "irrespective of the duration" limitation was
15 added?
16     A   I believe, and I think I -- I think actually
17 it appears in my -- in my rebuttal report, but it was
18 cited with respect to the Malloy patent.
19     Q   Do you have an understanding of -- have you
20 read the Malloy patent?
21     A   I have, yes.
22     Q   Okay. And do you have an understanding as to
23 what was claimed or what the Malloy patent teaches?
24     A   I would need to be looking at a copy of the
25 Malloy patent in order to speak to its claims and

Page 145

1  teachings.
2      Q   Okay. So you don't -- you're unable to give
3  me even a general high-level understanding as you sit
4  here today?
5          MR. SOUTO: Objection to form.
6          THE WITNESS: I -- in order to accurately
7  answer your questions, I would feel -- I feel I would
8  need to have a look at a copy of the patent and review
9  it.
10 BY MR. STRETCH:
11     Q   Okay. I marked your non-infringement report
12 earlier as Exhibit 2.
13     A   I believe that's right.
14     Q   Do you still have that --
15     A   I have it.
16     Q   -- somewhere?
17 I'm going to mark as Exhibit 13 the Expert Report
18 of Woodward Yang Regarding the Infringement of Several
19 Patents, including the '893.
20         (Deposition Exhibit 13 was marked for
21 identification by the court reporter.)
22 BY MR. STRETCH:
23     Q   You've read this before, have you not?
24     A   I have reviewed this report particularly with
25 regard to the '893 patent.