QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>            Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OBJECTIONS AND RESPONSES REGARDING EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 15, 2012** |

Samsung hereby submits objections and responses regarding (1) exhibits to be used in direct and cross examination of David Teece, Terry Musika, Januscz Ordover, Peter Rossi, Boris Teksler, Michael Walker, Ravin Balakrishnan, Peter Bressler, Susan Kare, Karan Singh, and Christopher Stringer; and (2) deposition designations and counter designations for Seung-Ho Ahn, Jun Won Lee, Karl Rosenbrock, Jungmin Yeo, and Won Pyo Hong.

**Samsung's Witnesses**

I.   **DAVID TEECE**

   A.   **Samsung's Objections to Cross Examination Exhibits**

      1.   **Apple's Proposed Use of the Deposition of Karl Heinz Rosenbrock Is Contrary to FRCP 32:**

Apple must comply with FRCP 32(a) if it wishes to introduce deposition testimony. Rule 32(a)(2) only allows a party to "use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence."   Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure contemplate impeachment by another deponent's prior inconsistent statement.   The Court similarly precluded Apple from using the deposition of Jung Min Yeo to impeach Jinsoo Kim. (Dkt. 1720 at 2.)   For the same reasons, Apple has not established that the testimony of Dr. Rosenbrock is admissible as impeachment evidence as to Dr. Teece under FRCP 32.

   B.   **Samsung's Responses to Objections to Direct Examination Exhibits**

      1.   **SDX3975.005 Is Highly Relevant Rebuttal to Apple's Antitrust Theories**

Apple contends that Samsung has breached its obligations to ETSI by not disclosing applications that issued as the '941 and '516 patents prior to the freeze date for the standards to which they were essential.   Hutnyan Decl. Ex. 1 (Apple Response to Interrogatory No. 36). These allegations form the basis for Apple's antitrust counterclaims.   (Dkt. 381, ¶ 91.)

SDX3975.005 is a summary of Dr. Teece's analysis concluding that it is the practice of other ETSI members, including Apple, to disclose their intellectual property rights after the freeze date.   Dr. Teece relies on this analysis to opine that the disclosure of Samsung's intellectual property rights after the freeze date did not violate ETSI rules and, therefore, does not constitute

1   anticompetitive conduct.   *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 2951341, at *1

2   (N.D. Cal. 2008) (noting that jury concluded there was no anticompetitive conduct because

3   standard-setting organization members "did not share a clearly defined expectation that members

4   would disclose relevant information they had about patent applications or the intent to file patent

5   applications on technology being considered for adoption as a JEDEC standard").   The Federal

6   Circuit has recognized that evidence regarding the conduct of the members is relevant to

7   determining what obligations were imposed by the standard-setting organization.   *Qualcomm Inc.*

8   *v. Broadcom Corp.*, 548 F.3d 1004, 1016 (Fed. Cir. 2008).

9          The Court's prior ruling regarding the use of requests for admission that identified a non-

10   asserted Apple patent is not applicable here.   (Dkt. 1456 at 4.)   SDX3975.005 does not identify

11   any patent with particularity.   Instead, it sets forth the average amount of time it took for parties

12   to disclose their standards patents.   Because Samsung does not identify any patents with

13   particularity, there is no basis for the assertion that the jury will be confused as to whether other

14   Apple patents are at issue here.

15               **2.      SDX3975.001 Is Also Relevant Rebuttal to Apple's Antitrust Theories**

16          Apple contends that Samsung has monopoly power in certain technology markets because,

17   once its essential technologies were adopted into the UMTS standard, competing technologies

18   were excluded.   (Dkt. 381 at 62, ¶ 94.)   Dr. Teece rebuts this theory by opining that competing

19   technologies could still have been adopted into another standard—CDMA2000.   Hutnyan Decl.,

20   Ex. 2 (Teece Rebuttal Expert Report at 53.)   Accordingly, Dr. Teece prepared SDX3975.001 to

21   illustrate that, not only is CDMA2000 a viable alternative to UMTS in the United States, it is the

22   dominant standard in the United States.

23          The existence of a competing standard contradicts Apple's assertion that technologies that

24   competed with Samsung's were excluded from the market.   *United States v. Cont'l Can Co.*, 378

25   U.S. 441, 449 (1964) ("[W]e must recognize meaningful competition where it is found to exist.").

26   Accordingly, the information set forth on SDX3975.001 is relevant.   FRE 402.   Further, Dr.

27   Teece is prepared to explain the relevance of this slide, making it unlikely that its contents will

28

1   result in confusion to the jury.   Hutnyan Decl. Ex. 2 (Teece Reb. Rep. at ¶¶ 185-186 (explaining

2   that competition for inclusion in standard occurs across multiple standards)).

3   <u>**Apple's Witnesses**</u>

4   **II.    TERRY MUSIKA**

5       **A.    Samsung's Objections to Direct Examination Exhibits**

6       **PDX39.3.**   The use of oversized red "X" marks is inflammatory, argumentative and

7   misleading.   FRE 402, 403.   Not only is it an improper demonstrative for a direct examination

8   of an expert, but it obscures the underlying text that purportedly characterizes the methodology of

9   Dr. O'Brien.   The Court recently sustained a similar objection with respect to PDX62.2 and

10   should do so again here.   *See* Dkt. No. 1774 ("[T]he Court finds that the large red stamps are

11   unnecessarily prejudicial.").

12       **B.    Samsung's Response to Apple's Objections to Cross Examination Exhibits**

13       **DX759.**   DX759 is highly relevant to Mr. Musika's criticisms of Dr. Vincent E. O'Brien

14   and to the reliability of Apple's production of licensing information.   DX759 is an Apple

15   privilege log that establishes by admission that Apple has produced ***eight*** different versions of its

16   royalty charts.   In stark contrast, Mr. Musika's report contends that Apple has made a full and

17   complete production of patent licensing information.   Dkt. No. 1735-018 (Musika Reb. Rep., ¶

18   43.)   Samsung has the right to prove him wrong.   As the Court recently recognized when it

19   overruled Apple's objection to a demonstrative showing the unreliability of Apple's production of

20   licensing information, this information is highly relevant:

21           Apple and its damages expert Mr. Musika have made an issue out of

22           out of the alleged incompleteness of Dr. O'Brien's damages report,

23           and Samsung may therefore attempt to bolster Dr. O'Brien's

24           damages opinion by pointing to the unavailability of certain Apple

25           licensing information at the time of Dr. O'Brien's report.   Under

26           the circumstances, the probative value of the demonstrative

27           outweighs any prejudicial effects, and it will not be a waste of

28           time...

1    Dkt. No. 1749, at 4:2-10.    The Court should overrule Apple's latest objection for the same

2   reason.

3    **DX2576.**   Samsung appreciates the Court's prior ruling on DX2576 but requests that it be

4   allowed to reserve revisiting the ability to use this document in Mr. Musika's cross examination

5   should circumstances change.

6   **III.   JANUSCZ ORDOVER**

7    **A.    Samsung's Objections to Direct Examination Exhibits**

8     **1.   PDX44.6 Contains Theories Not Disclosed In Ordover's Reports, and Is
          Beyond Ordover's Expertise**

9

10    PDX44.6 is a slide purporting to show alternative technologies to Samsung's '941 patent.

11   The theory that the Agarwal prior art cited therein is part of the relevant antitrust market including

12   the '941 patent was not disclosed in the expert reports of Janusz Ordover, nor was it disclosed in

13   the expert report of Dr. Edward Knightly upon which Dr. Ordover relies. This untimely theory

14   must be excluded. Additionally, the information on the slide is unsupported by Drs. Ordover or

15   Knightly, and is beyond Dr. Ordover's expertise.

16    Expert witnesses are required to disclose all opinions they will express in their reports.

17   *FRCP* 26(A)(2)(b)(i).    Failure to do so invokes the automatic sanction of *FRCP* 37(c)(1).    Dr.

18   Ordover's expert report purports to identify relevant antitrust markets, by describing alternative

19   technologies to Samsung's patents available at the time of standardization.    In doing so, Dr.

20   Ordover relies wholly on the reports of Apple's technical experts.    Hutnyan Decl. Ex. 3 (Ordover

21   Op. Rep. at ¶ 83).    Regarding the '941 patent, Dr. Ordover relied on Dr. Knightly.    *Id.* at ¶ 103.

22   Dr. Knightly described *one* "alternative"—not incorporating the '941 patent into UMTS.

23   Hutnyan Decl. Ex. 4, (Knightly Op. Rep. at ¶ 123-24).    Although Dr. Knightly described the

24   Agarwal prior art *for invalidity*, he *never* indicated it was an alternate technology *for antitrust

25   purposes*. *Id.*    Dr. Ordover incorporated Dr. Knightly's analysis and only identified *one*

26   alternative.    Hutnyan Decl. Ex. 3 (Ordover Op. Rep. at ¶ 104).    Accordingly, the Court should

27   sustain Samsung's objection, and Dr. Ordover should be precluded from testifying that the

28   Agarwal prior art was in the same relevant antitrust market as the '941 patent.

1   Further, Dr. Ordover is unqualified to make the determination that the Agarwal prior art is

2   an alternate technology to the '941 patent.   FRE 702.   Dr. Ordover affirmed in his report that he

3   had "no technical or other expertise that would enable [him] to independently assess the

4   [technical] experts' findings."   *Id.* at ¶ 83.   Because Dr. Knightly did *not* opine that the Agarwal

5   reference was an alternate technology to the '941 patent, Dr. Ordover cannot either.   *FRE* 702(a).

6   Dr. Ordover should be precluded from testifying regarding alternatives to the '941 patent where he

7   has no expertise to do so.   *Id.*

8   ### 2.   PDX44.7 Contains Theories Not Disclosed In Ordover's Reports, and Is Beyond Ordover's Expertise

9   PDX44.7 is an analogous slide to PDX44.6.   It contains Dr. Ordover's assertion of

10   alternative technologies to the '516 patent.   This demonstrative argues that not including the '516

11   patent in the UMTS standard was a viable technological alternative and part of the relevant

12   antitrust market.

13   Dr. Ordover relies entirely on the opinions of Dr. Hyong Kim.   Hutnyan Decl. Ex. 5

14   (Ordover Op. Rep. at ¶ 99-101).   Tellingly, Dr. Ordover states that Dr. Kim identified *two*

15   alternative technologies.   *Id.* at ¶ 100.   Dr. Kim does not opine that not including the '516 patent

16   in the UMTS standard was a viable alternative.   Hutnyan Decl. Ex. 5 (Kim Rep. at ¶ 201-204).

17   Dr. Ordover admits he is not qualified to make this determination himself.   Hutnyan Decl. Ex. 3

18   (Ordover Op. Rep. at ¶ 83).   Accordingly, because this theory was undisclosed and is outside

19   Dr. Ordover's expertise, it should be excluded.

20   ### B.   Responses to Apple's Objections

21   ### 1.   DX593 Is Not Offered For the Truth of the Matter Asserted Therein

22   DX593 is a letter from the European Commission to ETSI discouraging ETSI participants

23   from adopting an *ex ante* royalty cap.   Samsung is not offering this document as proof of its

24   contents—that an *ex ante* royalty cap would violate European antitrust laws.   Rather, Samsung

25   offers DX593 to rebut the contention that ETSI members have adopted or utilize an *ex ante* royalty

26   cap during license negotiations.   ETSI's notice of the European Commission's concerns rebut

27   Apple's undocumented assertion that an *ex ante* royalty cap is an appropriate foundation for

28

OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON
AUGUST 15, 2012

1   FRAND licensing.    Because Samsung is not offering DX593 for the truth of the matter asserted,

2   Apple's objection should be overruled.    FRE 802.

3   ### C.    Samsung Withdraws DX618

4   Samsung withdraws DX618; therefore, Apple's objection is moot.

5   ## IV.   PETER ROSSI

6   ### A.    Samsung's Objections to Direct Examination Exhibits

7   Samsung objects to PDX37.6 because it is deceptive, misleading, and unduly prejudicial.

8   Apple manipulated an image from Dr. Sukumar's survey to create PDX37.6.    Peter Rossi,

9   Apple's rebuttal expert to Dr. Sukumar, attacks Dr. Sukumar's survey on the grounds that it uses

10  inaccurate shorthand throughout, "requiring respondents to return to a previous screen to see the

11  full definition" of the patented features.    Hutnyan Decl., Ex. 6 (Rossi Report, at 4).    This is

12  false.    Survey participants did not have to "return to a previous screen" to see a full definition.

13  On every page of the conjoint survey participants could "see the full definition" by hovering their

14  mouse over the shorthand reference.    Every page of the conjoint survey notified the participant

15  that "[y]ou can hover your mouse over any of the features above to review their definitions."

16  Hutnyan Decl., Ex. 7 (Sukumar Report, at 34-45, 55-66, 76-87).    Below is a screen capture from

17  page 34 of Dr. Sukumar's Report:

18

| Price: | $150 | $175 | $150 |
|---|---|---|---|
| E-mail Photo: | Ability to send the photo as an attachment to an email | Ability to send the photo as an attachment to an email | Ability to send the photo in the body of an email |
| Photo Gallery Bookmark: | Ability to return to the photo gallery at the same place that you left off only within a certain period of time | Ability to return to the photo gallery at the same place that you left off only within a certain period of time | Ability to return to the photo gallery at the same place that you left off any time |
| Music in Background: | The Ability to listen to music in the background, the phone indicating that music is playing. However the phone is slightly larger or thicker or consumes battery power faster. | Ability to listen to music in the background, the phone indicating that music is playing | Ability to listen to music in the background, the phone indicating that music is playing |
| Window Dividing: | While texting you must exit the texting application to use a different function | While texting, ability to divide the screen to show text message and another function | While texting, ability to divide the screen to show text message and another function |
|  | ○ | ○ | ○ |

(You can hover your mouse over any of the features above to review their definitions.)

26  In an attempt to cover up Dr. Rossi's mistake, Apple manipulates the evidence and *deletes*

27  the statement that proves Dr. Rossi wrong.    As can be seen in the following screen capture of

28

OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON
AUGUST 15, 2012

PX37.6, Apple removed the statement, "You can hover your mouse over any of the features above to review their definitions."

| | $150 | $175 | $150 |
|---|---|---|---|
| Price: | | | |
| E-mail Photo: | Ability to send the photo as an attachment to an email | Ability to send the photo as an attachment to an email | Ability to send the photo in the body of an email |
| Photo Gallery Bookmark: | Ability to return to the photo gallery at the same place that you left off only within a certain period of time | Ability to return to the photo gallery at the same place that you left off only within a certain period of time | Ability to return to the photo gallery at the same place that you left any time |
| Music in Background: | The Ability to listen to music in the background, the phone indicating that music is playing. However the phone is slightly larger or thicker or consumes battery power faster. | Ability to listen to music in the background, the phone indicating that music is playing | Ability to listen to music in the background, the phone indicating that music is playing |
| Window Dividing: | While texting you must exit the texting application to use a different function | While texting, ability to divide the screen to show text message and another function | While texting, ability to divide the screen to show text message and another function |
| | ○ | ○ | ○ |

The Court should reject Apple's attempt to manipulate evience and mislead the jury by excluding PX37.6, or requiring Apple to restore the deleted sentence in the image.

**B.    Samsung's Response to Apple's Objections to Cross Examination Exhibits**

DX2683 is relevant to Dr. Rossi's credibility and to demonstrate bias.    Although a basis for his opinion in this matter, Dr. Rossi did not produce this document until after his deposition and even then only after Samsung demanded it.    *See* Hutnyan Decl., Ex. 8 (May 1, 2012 letter from Diane C. Hutnyan to Mia Mazza).    When Dr. Rossi finally produced the letter it was heavily redacted.    Because the redactions were baseless, Samsung's counsel demanded an unredacted copy and Dr. Rossi finally produced one that removed most of the redactions.    *See* Hutnyan Decl., Ex. 9 (May 9, 2012 letter from Diane C. Hutnyan to Peter Kolovos).    Tellingly, the replacement version revealed a substantial amount of information highly relevant to Dr. Rossi's analysis of Dr. Sukumar's survey.    This exhibit is evidence of Dr. Rossi's bias and calls his credibility into question.    Any prejudice is of his and Apple's own making.

Samsung withdraws DX 2659 only with respect to Dr. Rossi, so Apple's objection is moot.

**V.    BORIS TEKSLER**

**A.    Samsung's Objections to Direct Examination Exhibits**

PX79—a letter sent by Boris Teksler to his counterpart at Samsung (and presumably drafted by Apple's trial counsel)—is a transparent attempt to introduce inadmissible hearsay and information specifically excluded by this Court, including the rulings of foreign courts in cases

1    involving the parties.   (Dkt. 1267 at 4.)   Among other things, the letter: a) misleadingly

2    describes a German court decision involving certain Samsung European patents not at issue here;

3    b) takes translated quotes out of context from a Netherlands decision applying Dutch law to

4    patents not at issue here; c) refers to conclusions allegedly taken from a 2009 report—itself

5    inadmissible hearsay and not on any exhibit list—commissioned by Ericsson as to the percentage

6    of declared essential patents allegedly then owned by Samsung as well as Samsung's alleged over-

7    declaration of patents; d) misleadingly states positions allegedly taken by Samsung in foreign

8    litigation against Ericsson and Interdigital involving foreign law and patents not at issue here; and

9    e) presents misleading statements concerning Samsung's alleged failure to provide support for its

10   2.4% offer when such evidence has been provided through discovery to Apple's outside counsel

11   and the author simply does not have access to it. Not only is this exhibit replete with inadmissible

12   hearsay, the potential for unfair prejudice to Samsung is enormous, whereas any probative value of

13   the letter is substantially outweighed by the danger of undue prejudice and misleading the jury

14   under FRE 403.

15          **B.     Samsung's Response to Apple's Objections to Cross Examination Exhibits**

16          After introducing PX-52, an Apple presentation bearing a legend stating that it is protected

17   under FRE 408, Apple seeks to exclude DX-588, a similar presentation.    There is no basis for

18   allowing Apple's presentation, PX-52, to support Apple's affirmative case, while excluding DX-

19   588, which Apple apparently would like to keep from the jury.

20          FRE 408 does not prohibit the admission of evidence for purposes other than proving the

21   validity or amount of a disputed claim.   Samsung will introduce DX-588 to show that it proposed

22   a cross license to Apple before initiating this lawsuit whereby Samsung would license its patents,

23   including its declared essential patents to the UMTS standard.   The fact of this offer is itself

24   highly relevant to Apple's assertion (underlying several claims/defenses) that Samsung failed to

25   honor its FRAND obligations and places this document within a well-recognized exception to

26   FRE 408.   FRE 408, Advisory Notes ("The amendment does not affect the case law providing

27   that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice.")

28   Apple argues that Samsung failed to offer it a license to its declared essential patents.   DX-588 is

1  evidence that Samsung did in fact offer to license its declared essential patents.    This rebuts

2  Apple's contention that Samsung withheld its licensing terms until Samsung's July 25, 2011 letter.

3  Accordingly, DX-588 is admissible for this purpose.

4  **VI.    MICHAEL WALKER**

5      **A.    Samsung's Objections to Direct Examination Exhibits**

6          **1.    Samsung's Objection to PX 45.6**

7      Apple seeks to introduce an incorrect, inaccurate timeline purportedly showing disclosure

8  dates to ETSI surrounding the '941 patent.    Dr. Walker relies on the incorrect version of the

9  3GPP TS 25.322 standard on his timeline.    By way of background, on August 7, 2007, Samsung

10  declared its Korean patent application no. 2005-0037774 essential to <u>version 6.9.0</u> of ETSI's

11  3GPP TS 25.322 standard.    (DX568.004, Korean patent application no. 2005-0037774.)    U.S.

12  Patent 7,675,941 claims priority to the Korean patent application no. 2005-0037774.    (JX1070.1)

13  Version 6.9.0 of the 3GPP TS 25.322 standard was frozen at a plenary meeting on October 17,

14  2006.    (PX84.5, RP-33 meeting for version 6.9.0 of ETSI 3GPP TS 25.322.)    Dr. Walker's

15  contention, through PDX 45.6, that the freeze date for the standard related to the '941 patent was

16  in June 2005 is therefore factually wrong.    Because PDX45.6 is misleading, incorrect, and

17  incomplete, Samsung's objection should be sustained and the demonstrative excluded.    FRE 403.

18

19          **2.    Samsung's Objection to Dr. Walker's Testimony Concerning the**
              **Deposition Testimony of Karl Heinz Rosenbrock**

20      Apple improperly seeks to introduce deposition testimony of Karl Heinz Rosenbrock

21  through the direct examination of Michael Walker, even though Walker did not rely on, or even

22  consider, that testimony in formulating his opinions.    Indeed, Dr. Walker's expert report does not

23  mention any Rosenbrock testimony and, at his deposition, Dr. Walker made clear that he did not

24  form any new opinions based on what he read in Mr. Rosenbrock's report and had not been asked

25  to supplement his report.    (Hutnyan Decl., Ex.10, (Walker Dep. 14:21-24; 15:13-18.))    To

26  date, he has not done so.    Samsung separately asserts two high priority objections to Apple's

27  designations from the Rosenbrock deposition below as lacking foundation, containing hearsay,

28  reflecting inadmissible legal conclusions, containing improper expert opinion under FRE 702/703,

1   and being highly misleading under FRE 403 such that its potential for unfair prejudice outweighs

2   any probative value.

**B.   Samsung's Response to Apple's Objections to Cross Examination Exhibits**

**1.   Apple's Objection to DX599**

5       DX599 is directly relevant to Apple's FRAND defenses and will not cause confusion of

6   the jury.    Apple contends that the ETSI IPR Policy should be interpreted to require members that

7   submit a technical proposal to disclose any IPR that might become essential before that proposal

8   has been adopted.    The Policy, however, does not state this expressly; in fact, the word "before"

9   does not even appear in the relevant language.    *See* Hutynan Decl., Ex. 11 (DX503).    In

10  *Qualcomm Inc. v. Broadcom Corp.*, and *Rambus v. Infineon*, the Federal Circuit held that in order

11  to establish whether a duty to disclose exists and, if so, the scope of that duty, requires evidence of

12  how members of the standards body actually treat the IPR Policy.    *Qualcomm Inc. v. Broadcom

13  Corp.*, 548 F.3d 1004, 1016 (Fed. Cir. 2008) (holding that "the JVT participants' understanding of

14  the policies further establishes that the policies imposed disclosure duties on participants (apart

15  from the submission of technical proposals)."); *Rambus v. Infineon* 318 F.3d 1081 (Fed. Cir.

16  2003), *Rambus v. Infineon* 318 F.3d 1081 (Fed. Cir. 2003) (holding that "because JEDEC

17  members treated the language of Appendix E as imposing a disclosure duty, this court likewise

18  treats this language as imposing a disclosure duty").    In other words, do ETSI members, in fact,

19  treat the policy as requiring IPR disclosures before a standard has been finalized?

20      DX599 directly addresses and is highly relevant to this question.    It is an empirical study

21  conducted by an economist, Anne Layne-Farrar, at the behest of Apple's primary baseband

22  processor supplier, Qualcomm.    She accessed ETSI's publicly-available records and concluded

23  that the vast majority of IPR Disclosures (83% in the case of 3G standards) have been made "ex

24  post"—after the standard has been finalized.    Dr. Walker, who Apple offers as an expert, was

25  questioned about this article at length during his deposition and the very fact that he failed to

26  consider evidence of the timeliness of ETSI disclosures is highly relevant to his credibility as well

27  as his overall conclusions.    See (Hutnyan Decl., Ex.10, (Walker Dep. 313:13-321:19.))    At the

28  very least, this article shows that Dr. Walker, as Chair of the ETSI Board, could have accessed

1    ETSI's database just like the author did, but chose not to do so.   Because the exhibit is being used

2    to impeach Apple's expert, it is not offered for the truth, and is not hearsay.

3                          **2.      Apple's Objection to SDX3916.03**

4         SDX3916.03 are responses Apple gave to requests for admission.   They are directly

5    relevant to Apple's FRAND defenses as well, and will not cause confusion of the jury.   As with

6    DX599, evidence that Apple, as a member of ETSI, has submitted IPR disclosures after a standard

7    has finalized and yet still contends that such disclosures are not untimely in the circumstances is

8    directly relevant to the question of whether ETSI members actually treat the ETSI IPR Policy as

9    imposing a duty to disclose an IPR before a related standard has been adopted.   Moreover, if

10   Apple thought these requests for admission were improper it could have objected to them at the

11   time rather than providing straightforward unqualified answers to them and waiting until trial to

12   try to keep them from the jury.   Apple's answers bear directly on the issues that will be before

13   either the jury (if the court permits it to provide an advisory opinion on FRAND issues) or the

14   Court and they should not be excluded.

15                          **Apple's Rebuttal Witnesses**

16   **VII.   RAVIN BALAKRISHNAN**

17         **A.     Samsung's Objections to Direct Examination Exhibits**

18   ***PX63***: PX63 includes a screenshot of a folder on a computer system containing the file "tos +

19   scroll10k6 select.dir," along with the purported source code contents of that file.   Apple has

20   indicated that this source code corroborates a February 2005 conception date for its '381 patent.

21   Dr. Balakrishnan should not be able to opine on this source code because he did not analyze this

22   source code in his expert report, nor did he even list it as materials considered in preparing his

23   report.   Walker Decl. Exs. 11, 12 (Excerpt from Balakrishnan Reb. Rep. re: '381 Patent; Ex. 2 of

24   Balakrishnan Opening Rep. re: '381 Patent).   In his report, Dr. Balakrishnan simply stated "I

25   have reviewed portions of the deposition transcript of Bas Ording, the named inventor of the '381

26   patent, and understand that Mr. Ording conceived of his invention in early February 2005, and

28

reduced it to practice in a prototype by February 11, 2005." *Id*. at ¶ 42.   In addition, when asked at his deposition if he reviewed Apple prototypes or source code relating to the conception of the '381 patent, Dr. Balakrishnan admitted that he had not.   Walker Decl. Ex. 13 (Balakrishnan Depo. at 145:25-147:10).   Having failed to address this source code in his expert report or prior to his deposition, Apple cannot now seek to have Dr. Balakrishnan offer new testimony regarding this code at trial.   This Court has previously sustained objections to exhibits not disclosed in an expert's report, and where a party was not afforded the opportunity to depose the expert regarding that exhibit.   *See, e.g.*, Dkt. 1690 at 1-2 (Musika exh. PX25A), 7 (Yang exh. DX645); Dkt. 1668 at 2-3 (Musika Exh. PX25C); Dkt. 1657 at 2 (Singh exh. PX49).   Thus, Samsung's objection to PX63 should be sustained.

   **_PX210_**: PX210 is a series of 27 low resolution printouts of photographs showing the DiamondTouch prior art assembled in the courtroom.   The majority of these photographs show the DiamondTouch set up in a manner in which it would not be set up in practice – its parts are carelessly, yet intentionally, strewn about, wires are hanging and exposed, and certain parts are shown in extreme close up.   This apparent attempt by Apple to depict the DiamondTouch as a loose amalgam of parts is clearly intended to mislead to jury that DiamondTouch is old, unsophisticated, and not like Apple's products – all of which have no relevance to whether it invalidates the asserted claims of the asserted patents.   In addition, the DiamondTouch device has been admitted as a physical exhibit and will be available for the jury to inspect, so photographs are cumulative and unnecessary.   R.T., 8/15/12. at 2882:19-2883:6, 2885:18-2886:7.[1]   The probative value of these photographs is substantially outweighed by the danger of unfair prejudice,

---

[1]   Other exhibits featuring videos of the DiamondTouch system in operation are not similarly cumulative, as they demonstrate the functionalities of the system that the parties wish to highlight.

confusing the issues, misleading the jury, and needlessly present cumulative evidence.    FRE 403.

Thus, Samsung's objection to PX210 should be sustained.

**B.**    **Samsung's Responses to Objections to Cross-Examination Exhibits**

***DX 2652***: This is an order granting ex parte reexamination for the '381 patent which Apple

claims is "irrelevant to any issue in this case, especially because it relates to art not before the

jury."    However, this document is clearly relevant as it pertains to the patent in suit, the '381

patent, that Dr. Balakrishnan is opining on.    In addition, because Dr. Balakrishnan will be

offering testimony on the ***validity*** of the '381 patent, the fact that the U.S. Patent and Trademark

Office determined as recently as the end of July that there is a substantial new question regarding

patentability is highly relevant.    While Apple claims that the art described in this document is not

before the jury, at least one of the cited references, Lira, is part of Dr. Balakrishnan's rebuttal

expert report.    Walker Decl., Ex. 11 (Balakrishnan Reb. Rep.).    Moreover, this document is at

least as relevant as the file history of the '381, none of which discusses the prior art, LaunchTile

and Tablecloth, that is before the jury.

Apple also claims this document is "unduly prejudicial and misleading as a preliminary

decision of the PTO."    DX 2652 is no more prejudicial and misleading than any other office

action in the file history of the '381 patent.    File histories typically contain non-final rejections by

the PTO.    If anything, Apple should not be allowed to selectively exclude communications with

the PTO that it perceives as harmful to its case.

***DX 2653***: This is an article co-authored by Dr. Balakrishnan in which he describes and

characterizes DiamondTouch.    It is relevant as it shows how Dr. Balakrishnan characterizes the

DiamondTouch system in ways that are inconsistent with the ways he characterizes the same

system in the litigation context.      Apple claims that DX 2653 is a "prior art reference not

identified in Invalidity Contentions, produced in discovery, or mentioned in any expert report."

1  But Apple misses the point because the DiamondTouch system described in the article is an item

2  of prior art: (1) disclosed in Samsung's invalidity contentions.    Walker Decl., Exh. 14 (Samsung

3  Invalidity Contentions Exh. G-7); (2) disclosed in the invalidity expert report of Andries van Dam

4  Walker Decl., Ex. 15 (Van Dam Rep.); (3) one of the bases for Samsung's Motion for Summary

5  Judgment (Dkt. No. 930-1); (4) one of the subjects of the testimony of Samsung expert Professor

6  van Dam at trial (R.T., 8/15/2012 at 2845-2884); and (5) inspected multiple times by Apple.

7  Walker Decl., Ex. 16 (10/20/11 letter from A. Kaufman to R. Hung); Dkt. No. 447 (Order

8

9  resolving discovery dispute on videos of inspection); Walker Decl., Ex. 17 (11/22/11 email from

10  T. Briggs to M. Ahn regarding inspection of invalidity contention references); Walker Decl., Exs.

11  18, 19, 20, and 21    (5/24/12, 7/29/12, 8/12/12, 8/15/12 emails to and from M. Ahn regarding

12  inspection of DiamondTouch system).    Samsung should be permitted to use this document for

13  impeachment purposes.

14

15

16  **VIII.  <u>PETER BRESSLER</u>**

17    **A.    <u>Samsung's Objections to Direct Examination Exhibits</u>**

18      **1.    <u>PDX26.89 & PDX26.93</u>**

19          Samsung objects to Apple's demonstrative slides that cite excerpts taken directly from Mr.

20  Bressler's expert report as unfairly prejudicial and directed to inadmissible hearsay.    The excerpts

21  on these two demonstratives include the same quotation from Mr. Bressler's expert report, which

22  characterizes the prior art patent in a manner that is confusing, disputed, and not disclosed in the

23  asserted reference.    The characterization of the prior art in Mr. Bressler's expert report is hearsay

24  that is not admissible in lieu of his live testimony regarding his opinions on invalidity.

25  Furthermore, reproducing the opinions in his expert report on a demonstrative is unfairly

26  prejudicial, as the jury will likely think that the text is undisputed or derived from the prior art

27  patent itself.    The small label at the bottom of the slide citing Mr. Bressler's report is insufficient

28  to alleviate the inevitable confusion between what is actually recited in the prior art patent at issue

1  and what is merely an opinion discussed in Mr. Bressler's expert report.   Apple's repeated

2  quotations from Mr. Bressler's expert report throughout its demonstrative exhibits are

3  objectionable for the same reasons. (PDX26.88, .90, .91, and .92).   Apple should be precluded

4  from relying on hearsay from Mr. Bressler's expert reports in connection with his rebuttal

5  testimony on invalidity.

6              **2.     PDX26.99**

7          This demonstrative shows a single figure from a patent that was not timely disclosed to

8  Samsung as an alternative design to Apple's design patents or alleged trade dress.   In its

9  Interrogatory Nos. 68 and 72, Samsung requested Apple's contentions regarding alleged

10 alternatives. (*see* Dkt No. 935-08).   Because Apple failed to disclose this alleged alternative, it is

11 not admissible pursuant to Judge Grewal's order as untimely disclosed (Dkt 1144 at 7).   It is also

12 not on Apple's exhibit list and there is no indication of when this alleged alternative was

13 produced, if ever.    Thus, Apple should be precluded from relying on this demonstrative.

14          **B.     Samsung's Responses to Objections to Cross-Examination Exhibits**

15              **1.     5/31/12 & 6/1/12 ITC Hearing Transcripts for Peter Bressler**

16          Apple objects to Mr. Bressler's ITC hearing testimony on Samsung's cross-exam exhibit

17 list.   Contrary to Apple's objection, Mr. Bressler's prior sworn statements may be used for

18 impeachment.   The Court has already allowed the use of this testimony for this purpose during

19 Mr. Bressler's earlier cross examination.   *See, e.g.*, R.T., 8/6/12 at 1105.   The ruling regarding

20 Dr. Van Dam cited by Apple is distinguishable because Apple was not using the testimony for

21 impeachment purposes, but instead was attempting to put the expert's testimony on a

22 demonstrative, presumably to show that it was a proven fact or admission, something that

23 Samsung is not doing here.   (Dkt No. 1749.)   Also, Mr. Bressler's prior testimony is not a

24 "finding" of a parallel proceeding, so it is not subject to the motion in limine that Apple cites.

25 Apple also argues that Mr. Bressler's ITC testimony is irrelevant because it relates to different

26 patents, but those patents are closely related to the ones at issue in this case.   In fact, one of the

27 patents-in-suit, D'677, and one of the ITC patents, D618,678, were originally subject to an

28 obviousness-type double patenting rejection by the PTO because they are identical to one another

1  except for color.   *See* Walker Decl., Ex. 1 (JX-1064.222).   Apple chose to pursue highly related

2  design patents in two actions using the same expert.   Samsung is entitled to use Mr. Bressler's

3  prior sworn testimony about that common subject matter to impeach him on cross examination.

4  **IX.**   **SUSAN KARE**

5     **A.**   **Samsung's Objections to Direct Examination Exhibits**

6        **1.**   **PDX14A.47-52**

7        Samsung objects to Apple's demonstratives PDX14A.47-52 as not relevant to any claim

8  remaining in the case.   At best, these images relate only to Apple's trademark claims, all of

9  which Apple dropped from this case before trial.   Specifically, these images are all side-by-side

10  comparisons showing a trademarked Apple icon on the left and standard or common icons or

11  symbols on the right.   These images appear in Dr. Kare's April 16, 2012 Rebuttal Report at

12  ¶¶ 55-63 under the heading "The Asserted Trademarks Do Not Prevent Others From Creating

13  Effective Icons Communicating The Same Concepts."   Walker Decl., Ex. 2.   The sole purpose

14  of this section of the report is to rebut Mr. Lucente's conclusion that Apple's ownership of the

15  registered marks "prevents others from using an efficient method of visually communicating

16  certain concepts to users."   Walker Decl., Ex. 2 (Kare Reb. Rep., at ¶ 55).   Accordingly, these

17  demonstratives have no bearing on any issue relating to a currently asserted claim.

18        Samsung further objects that these demonstratives are misleading because they depict

19  aspects of the D'305 patent and trade dress in isolation, apart from the entire claimed design or

20  trade dress.   Such use is misleading to the jury and should not be permitted under FRE 403.

21  This Court has already instructed that all comparisons regarding the D'305 patent and user

22  interface trade dress would necessarily have to be "screen-to-screen shots."   R.T., 8/7/12 at

23  1328:18-1330:17.   For this additional reason, Apple should not be permitted to show these

24  demonstratives to the jury.

25        **2.**   **PDX2267**

26        Apple has withdrawn PDX2267.

27  **X.**   **KARAN SINGH**

28     **A.**   **Samsung's Objections to Direct Examination Exhibits**

**DX546**:   DX546 is an article written by Benjamin Bederson and James Hollan titled "Pad++: A Zooming Graphical Interface for Exploring Alternate Interface Physics."   Dr. Singh failed to cite or refer to this document in either his expert reports or the infringement claim charts.[2] Additionally, Dr. Singh gave no testimony about this document at his deposition.   Because of this failure, Samsung lacked notice that Dr. Singh would be relying on DX546 at trial and therefore did not have the opportunity to depose him regarding his opinions.   Furthermore, Samsung does not intend to cross-examine Dr. Singh on DX546.   The only reason that Dr. Singh would have to discuss DX546 would be to introduce a previously undisclosed theory of validity.

Additionally and tellingly, Apple had the opportunity to cross-examine Dr. Bederson at trial about his own article, yet did not.   (R.T., 8/13/2012 at 2254:1-2269:20).   Because Dr. Bederson, unlike Dr. Singh, is the author of the document, he could have provided first hand knowledge on the document.   Dr. Singh, on the other hand, can do nothing more than provide hearsay speculation tailored to Apple's arguments rather than facts.   Because Samsung has not had the opportunity to depose Dr. Singh regarding DX546, and because Apple could have cross-examined the sponsoring witness of DX546 but chose not to, it would be unfair to allow Dr. Singh to testify on DX546 at trial.   FRE 102 and 403.

**PDX29.7-11, 15, 17, 19**:   Dr. Singh should not be permitted to opine on whether the DiamondTouch or Jefferson Han multi-touch systems are "integrated with the data processing system" as required by claim 8 of the '915 patent.   Claim 1 of the '915 patent claims a "touch-sensitive display that is integrated with ***the device***."   By contrast, claim 8 specifies "a touch-

---

[2]   Dr. Singh cites the Declaration of Benjamin B. Bederson (Dkt. 165) in his Rebuttal Expert Report, and this declaration cites to DX546 in its last paragraph.   However, Dr. Singh cited the declaration for purposes entirely separate from DX546 (*see* Walker Decl., Ex. 3 (Singh Reb. Rep. at ¶29 (discussing what LaunchTile is generally) and ¶34 (discussing XNav source code)).   Dr. Singh never mentions or discusses DX546.

OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON AUGUST 15, 2012

sensitive display that is integrated with ***the data processing system***."   A device and a system are fundamentally different, and claim 8 is much broader than claim 1.

Dr. Singh provided an opinion that the DiamondTouch and Jefferson Han systems are not "integrated with the device" as required by claim 1 of the '915 patent.   Walker Decl., Ex. 3 (Singh Reb. Rep. at ¶¶163-165 (DiamondTouch); ¶221 (Han).)   For example, regarding the DiamondTouch system, Dr. Singh opined that "[t]he digital projector and the touch-sensitive table are not 'integrated with the device,' and thus fail to disclose the 'touch-sensitive display that is integrated with the device' as recited by claim 1."   (*Id.* at ¶165.)   However, Dr. Singh ignored the much broader "data processing system" limitation in claim 8 and said only that, in his "opinion each of these claims is valid for the reasons explained in claims 1-7 above."[3]   (*Id.* at ¶174.)   Dr. Singh therefore failed to proffer any opinion that the touch-sensitive display is integrated with the "data processing system."   Likewise, at his deposition, Dr. Singh only opined on the meaning of term "integrated with the device"   Walker Decl., Ex. 4 (Singh Depo. at 307:12-308:7; 346:4-351:10), going so far as to confirm:   "Q. So, in other words, the projector is not integrated with the touch table; is that correct? A. That is correct." (*Id.* at 348:6-8.)

The specification confirms that a "device" and a "data processing system" are separate and distinct.   First, the specification refers to actions and processes of a "data processing system, ***or*** similar electronic device." ('915 patent at 4:49-50.)   The fact that a "device" is referred to

---

[3]   Dr. Gray opined that both claim 1 and 8 are anticipated by the DiamondTouch and Han systems for the same reasons. Walker Decl., Ex. 5 (Gray Rep. at Appx. 3, p. 21)   However, Dr. Gray's position was that the entirety of the DiamondTouch and Han Systems were integrated, thereby covering all components of both claims 1 and claim 8. (*Id.* at Appx. 3, pp. 4-5).   Dr. Singh, however, identified specific components of the claim 1 "device" that he asserted were not integrated. Walker Decl., Ex. 3 (Singh Reb. Rep. at ¶ 165)   Dr. Singh failed to render an opinion as to whether these particular components constitute the "data processing system."   On the contrary, Dr. Singh admitted during his deposition, that the computer component of DiamondTouch, which must perform the steps of the claim, was connected to the DiamondTouch touch table.   Walker Decl., Ex. 4 (Singh 4/27/2012 Dep. Tr. at 348:19-22.)

separately, and similar to the "data processing system" means they are not the same.   Moreover,

the doctrine of claim differentiation dictates that they are different.   Claims 1 and 8 are identical

but for two reasons:   (1) claim 1 is a method claim and claim 8 is a machine readable medium

claim; and (2) claim 1 refers to a device, where claim 8 refers to the data processing system.   Had

the Applicant intended these terms to mean the same thing, it would have used the same term.

*Versa Corp. v. Ag-Bag Int'l, Ltd.*, 392 F.3d 1325, 1330 (Fed. Cit. 2004) (finding the doctrine of

claim differentiation applied between two independent claims because an alternate construction

would render the claims superfluous.)

Because Dr. Singh has not previously expressed any opinion on whether the

DiamondTouch or Jefferson Han multi-touch systems are "integrated" as required by claim 8, he

should not now be permitted to give such testimony before the jury.   FRE 702.

**B.**     **Samsung's Responses to Objections to CrossExamination Exhibits**

**DX6249**:   DX6249 is a patent application that covers the DiamondTouch system that is

prior art in this trial.   In his expert report and deposition, Dr. Singh has taken the position that the

"touch-sensitive display" is not "integrated" with the "data processing system.   DX6249, granted

in 2002, refers to DiamondTouch as a "multi-user touch system," therefore indicating

DiamondTouch is a touch-sensitive display integrated into a system.   (*See, e.g.*, DX6249 at

Abstract.)   Consequently, this is a proper impeachment document.[4]


**XI.**   **CHRISTOPHER STRINGER**

**A.**     **Samsung's Objections to Direct Examination Exhibits**

---

[4]     Samsung is not relying on this document as independent prior art, but rather for the reason cited above.   Moreover, it relates to the same invalidity theory this Court has already determined was disclosed in Samsung's invalidity contentions three times. (*See* Dkt. Nos. 1144 at 3, 1456 at slide 86, 1690 at 6.)

1            1.    **PX2319**

2            Apple did not include PX2319 on its list of 200 trial exhibits.    For this reason alone, the

3    disclosure of this exhibit at the end of trial is untimely, and Apple should not be permitted to

4    introduce it during the rebuttal examination of Mr. Stringer.    Moreover, PX2319 was not

5    disclosed in response to Samsung's Interrogatory No. 68, which asked for all facts in support of

6    Apple's contentions regarding the non-functionality of any claimed feature, element or

7    combination of features or elements of Apple's design patents or trade dress.    (Dkt. 935-08 at 61-

8    64).    FRCP 37(c)(1) precludes Apple from introducing evidence of functionality that it failed to

9    identify during discovery and disclose in response to Samsung's contention interrogatories.    The

10    Court has repeatedly recognized this.    *See, e.g.*, Dkt. No. 1545 at 6-9 (denying relief from order

11    and excluding evidence and theories not disclosed in response to interrogatory responses); Dkt.

12    No. 1596 at 2 (sustaining objection to proposed exhibit not timely disclosed in interrogatory

13    response).    Thus, this exhibit should be excluded.

14            Additionally, PX2319 is not relevant to any claim or defense in the case.    PX2319 relates

15    to certain design, production, and costing issues with various Apple products, including iMac

16    models, mouse devices and tablets.    The only possibly relevant portion of the email is a section

17    with comments discussing adjustment of certain margin features on tablets in order to

18    accommodate audio jacks.    None of the other products identified in the email are at issue in this

19    case.    As such, this email cannot be used to rebut the testimony of Samsung's expert Itay

20    Sherman regarding the functionality of the D'677, D'087 or D'889 designs.    Indeed, the date of

21    the email is 2008 – long after the conception date asserted by Apple for the patents at issue in this

22    case.    Likewise, this email has no possible relevance to any functionality testimony of any

23    Samsung witness regarding the development of Samsung products.    Thus, this irrelevant and

24    untimely document should be excluded.

25        **B.    Samsung's Responses to Objections to Cross-Examination Exhibits**

26            1.    **Testimony of Douglas Satzger**

27            Apple objects to the deposition testimony of Douglas Satzger because it was filed after the

28    HPO exchange deadline and because Apple claims that the testimony of other witnesses may not

1   be used to impeach a witness.   But Apple was not prejudiced by this disclosure, which occurred

2   just a few hours after the exchange time, and in sufficient time for Apple to raise objections to the

3   testimony in its HPO brief.

4       Moreover, this Court has overruled objections to deposition testimony of witnesses –

5   including ITC deposition testimony – that may properly be used for impeachment of another

6   witness.   *See, e.g.,* Dkt. 1519 at 3 (overruling in part objection to ITC deposition testimony of

7   Shin Nishibori for purpose of potential impeachment of Christopher Stringer if limited to

8   admissible subject matter).   Thus, this testimony may be properly used for impeachment.

9   **XII.   JUNGMIN YEO**

10          **A.   Samsung's Objections to Deposition Designations**

11      Apple improperly seeks to designate improper opinion testimony elicited from the

12  deposition of one of Samsung's industrial designers, Jung Min Yeo, regarding what types of tablet

13  computers are "acceptable to consumers."   Walker Decl., Ex. 6 (Yeo Depo., dated 2/2/12 at

14  67:25-68:2).   The deposition questioning of Ms. Yeo lacked any foundation to establish her

15  knowledge or expertise regarding the perception, desires or preferences of consumers.   And,

16  while it is proper for Ms. Yeo to provide testimony regarding the design of her tablets and

17  influences or considerations in creating that design – based on her *own* perceptions and personal

18  knowledge – no basis was provided for her to opine on consumer design preferences.   Nor was it

19  established, or even suggested, that Ms. Yeo conducted or reviewed any consumer surveys or

20  would otherwise be familiar with what consumers might find acceptable or desirable in a tablet

21  computer.   Thus, this question, and the answer elicited by it, is improper as lacking in foundation

22  and calling for improper lay witness opinion testimony.   This testimony should therefore be

23  excluded.

24  **XIII.   WON PYO HONG**

25          **A.   Samsung's Objections to Deposition Designations**

26      Samsung objects to Apple's untimely disclosure of Mr. Hong's deposition testimony.

27  Apple did not include Mr. Hong among the 21 witnesses it disclosed at the 10:00 am deadline on

28  Wednesday for witnesses Apple expected to call on Friday.   Nor did Apple disclose Mr. Hong

1  when it revised its witness list at 7:43 pm on Wednesday.   Instead, Apple waited until 8:45 pm

2  to disclose Mr. Hong as a witness it intends to call by deposition on Friday.   Apple's disclosure is

3  untimely and Apple should be precluded from calling Mr. Hong by deposition.   As the Court

4  recently noted, there is a schedule that governs disclosures and objections in this case, *see* Tr. at

5  2799:21-24, which must be adhered to.   The Court has also noted previously that Apple's failure

6  to comply with that schedule "is unfair to Samsung."   Dkt. 1717, at 1.   Apple should be

7  precluded from playing Mr. Hong's testimony on this basis alone.

8         Although Apple will argue that its designations are narrow, that Apple disclosed these

9  designations previously last week, and that Samsung has not counter-designated any testimony,

10 Apple ignores that its untimely disclosures themselves cause prejudice to Samsung.   For

11 example, Samsung was forced to spend time reviewing Apple's designations of the testimony of

12 Minhyouk Lee and preparing its high priority objections to those designations, only to have Apple

13 attempt to substitute Mr. Hong nearly 12 hours later.   The prejudice to Samsung is exacerbated

14 by the fact that Messrs. Hong and Lee are only two of the more than 20 witnesses Apple has

15 designated to testify on Friday.   Whether Apple's designations are broad or narrow, they still

16 require significant time to review and address.   It also makes no difference that Apple disclosed

17 designations for this witness last week and then withdrew them.   The Court should not permit

18 Apple to force Samsung to waste valuable time and resources preparing for witnesses Apple could

19 have, and should have been timely disclosed.   The Court should preclude Mr. Hong's testimony.

20 **XIV.  <u>MINHYOUK LEE</u>**

21        Apple confirmed in writing that it was withdrawing its designation of Mr. Lee's deposition

22 testimony, only to reverse course early this morning.   Walker Decl., Exh. 23 (email from Taryn

23 Rawson to Diane Hutnyan).   Mr. Lee's testimony should be excluded on this basis alone.

24        Samsung also objects to Apple's designation of a portion of Minhyouk Lee's deposition in

25 which Apple elicited testimony that is irrelevant, ambiguous and unduly prejudicial.   At his

26 deposition, Mr. Lee was asked by counsel for Apple whether "corner shape of the Vibrant" phone

27 "is the only corner shape that was capable of accommodating the components within that phone."

28 *See* Walker Decl., Ex. 22 (Lee Depo. at 21:24-22:2).   In response, Mr. Lee stated:

1
2
3
4
5

> You can shape the corners in thousands and
> tens of thousands different ways, which can differ or·
> vary from a hardware perspective or from a mechanical
> ·perspective as well, or even from design perspective.
> · · ·So in other words, mechanical side, hardware
> side and design side would put together their inputs
> and ideas and come to an agreeable solution which would
> reflect their cooperative inputs to come up with the
> most reasonable idea for production.

6    *See* Walker Decl., Ex. 22 (Lee Tr. at 22:5-13).

7    Apple no doubt seeks to use this testimony to argue to the jury that there were alternative

8    shapes Samsung could have chosen for the corners of its smartphones, and that such alternatives

9    demonstrate that Apple's claimed iPhone trade dresses (which Apple describes as including "a

10   rectangular product with four evenly rounded corners") are not functional.    Similarly, Apple will

11   likely attempt to use this testimony to argue that the rounded corners claimed by Apple's iPhone

12   design patents are ornamental, not functional.

13   The testimony is not relevant to show lack of functionality; it will only serve to confuse the

14   jury and unduly prejudice Samsung.    When Apple's counsel asked whether the "corner shape of

15   the Vibrant" phone "is the only corner shape that was capable of accommodating the components

16   within that phone," he failed to clarify whether his question assumed equivalent functionality.

17   Alternative corner shapes that are capable of accommodating the internal components of the phone

18   but that provide inferior functionality are not true alternatives under governing law.    *See PGH*

19   *Technologies, LLC v. St. John Co., Inc.,* 469 F.3d 1361, 1367 (Fed. Cir. 2006) ("Our case law

20   makes clear that a full inquiry with respect to alleged alternative designs includes a determination

21   as to whether the alleged alternative designs would adversely affect the utility of the specified

22   article, such that they are not truly 'alternatives' within the meaning of our case law.")    Without

23   knowing what counsel – or the witness – were referring to in their references to other "corner

24   shapes," it is impossible for the testimony to have any relevance to any issue in dispute in this

25   case.    It should therefore be excluded as irrelevant under FRE 402.

26   Furthermore, given the vague and ambiguous wording of the question posed by Apple's

27   counsel, it is unclear whether Apple would claim that any of the other corner shapes alluded to by

28   Mr. Lee would be covered by its design patents and claimed trade dresses.    Rounded corner

OBJECTIONS AND RESPONSES RE: EXHIBITS AND DEPOSITION DESIGNATIONS DISCLOSED ON
AUGUST 15, 2012

1   shapes that Apple claims are substantially similar to the rounded corners claimed by the iPhone

2   design patents or Apple's claimed iPhone trade dresses are not "alternatives" that would rebut

3   Samsung's functionality defense.   The testimony is therefore not probative of any disputed issue,

4   and should be excluded for this reason as well.   Even if the testimony could be found to have

5   some probative value, any such value would be minimal and would be substantially outweighed

6   by the danger of unfair prejudice to Samsung and jury confusion.   The testimony should

7   therefore be excluded under FRE 403 for this additional reason as well.

8   **XV.**   **SEUNG-HO AHN**

9        **A.**   **Samsung's Objections to Deposition Designations**

10            **1.**   **Samsung's Objection to PX81**

11        PX 81—an Intel/Samsung agreement—lacks foundation.   Apple's related designated

12   testimony plainly shows that Dr. Ahn was unfamiliar with PX 81.   When asked if he had seen PX

13   81 before, Dr. Ahn responded "I don't think I've looked through all of them."   Walker Decl.,

14   Ex.7, (Ahn Dep. 31:24-32:14.)   When asked the same question again, Dr. Ahn responded that he

15   was "not sure."   Walker Decl., Ex.7, (Ahn Dep. 32:15-18.)   Since Dr. Ahn never acknowledged

16   that he was familiar with PX 81, it is improper to allow Apple to introduce this exhibit because it

17   has not laid the proper foundation.

18            **2.**   **Samsung's Objection to 98:10; 100:24-25; 101:7-8.**

19        Apple's designated testimony is misleading.   This testimony concerns Dr. Ahn's efforts

20   to familiarize himself with the requirements of FRAND, Walker Decl., Ex.7, (Ahn Depo. at

21   98:10), steps Dr. Ahn took to ensure that Samsung complies with FRAND (*Id*. at 100:24-25) and

22   Dr. Ahn's verification of whether anyone at the IP center takes steps to comply with FRAND (*Id*.

23   at 101:7-8).   Dr. Ahn testified that he did not become the head of the IP center until "July or

24   August of 2010."   Walker Decl., Ex.7, (Ahn Depo. 22:5-8.)   Since the declared essential patents

25   in suit were disclosed to ETSI in May 2006 (DX563) and August 2007 (DX568), long before Dr.

26   Ahn became head of the IP center, his lack of knowledge regarding Samsung's FRAND

27   obligations is irrelevant.   Furthermore, Dr. Ahn clarified that he was not the head of licensing—

28   and does not "get involved directly in the details for licensing."   Walker Decl., Ex.7, (Ahn Depo.

1   117:6-19.)    Therefore, any probative value of the designated testimony is substantially

2   outweighed by the danger of undue prejudice and misleading the jury under FRE 403.

3   **XVI.    JUN WON LEE**

4        **A.    Samsung's Objections to Deposition Designations**

5            **1.    Samsung's Objection to 114:13-20, 22-24**

6        Apple's designated testimony is speculative and lacks foundation.    In response to being

7   asked whether there has "ever been an instance in which Samsung has disclosed a pending patent

8   application or an issued patent to ETSI before the standard has been determined or before the

9   standard has been frozen," Mr. Lee testified that he was "not sure if that has ever happened."

10  Walker Decl., Ex.8, (JW Lee Depo. 114:17-20; 21-24.)    Therefore, Apple is unable to lay a

11  foundation and the remainder of the designated testimony concerns Mr. Lee's speculation as to "if

12  that happened."

13       The designated testimony is also at odds with the remainder of Mr. Lee's testimony and

14  therefore highly misleading.    *See* Walker Decl., Ex.8, (JW Lee Depo. 115:1, 3-5 (describing that

15  there is no reason to disclose until a standard is determined, to determine essentiality); 127:5-11

16  (describing that Section 4 of the ETSI IPR Policy doesn't say exclusively that disclosure must be

17  done before or after proposals are adopted) ).    Therefore, any probative value is substantially

18  outweighed by the danger of undue prejudice and misleading the jury under FRE 403.

19           **2.    Samsung's Objection to 112:11-20, 22**

20       Apple's designated testimony is misleading.    In response to being asked whether it is the

21  goal of the members of Samsung's patent prosecution team attending ETSI meetings "to draft

22  applications or have applications drafted that will cover the standards that are being discussed at

23  the ETSI meetings," Mr. Lee acknowledges that "You can say that."    Walker Decl., Ex.8, (JW

24  Lee Depo. 112:11-20, 22.)    This testimony improperly suggests that the goal of Samsung's patent

25  prosecution team is to observe all activity at meetings and draft applications to cover the

26  standards.    This is not the case.    On redirect, Mr. Lee clarified that the patent prosecution team

27  attends the meetings to better "understand the contents of the technology that is discussed" and to

28  "understand the technical contribution that is presented by [Samsung]."    Walker Decl., Ex.8, (JW

1    Lee Dep. 143:15-23.)    Thus, the role of the patent prosecution team is to observe and understand

2    Samsung's *own* technical contributions in order to draft patent applications on those technologies.

3    Therefore, any probative value of the designated testimony is substantially outweighed by the

4    danger of undue prejudice and misleading the jury under FRE 403.

5    **XVII.   KARL ROSENBROCK**

6            **A.      Samsung's Objections to Deposition Designations**

7                    **1.      Samsung's Objection to 79:19-21; 79:24-80:7**

8            As a threshold matter, Apple improperly seeks to admit hearsay deposition testimony of

9    Karl Heinz Rosenbrock, an expert initially retained by Samsung to provide opinions on the history

10   of ETSI's IPR Policy without showing that use of his testimony is consistent with Rule 32(a)(2).

11   Samsung will not call Rosenbrock in this case.    Deposition testimony of an expert not brought to

12   testify at trial is not an admission by a party opponent and is hearsay.    Expert witnesses are

13   impartial and therefore cannot be said to speak for a party under Rule 801(d)(2).    *Kirk v.*

14   *Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) ("Since an expert witness is not subject to

15   the control of the party opponent with respect to consultation and testimony he or she is hired to

16   give, the expert witness cannot be deemed an agent.").    And merely retaining an expert does not

17   make the expert's statements admissions of the party retaining him. *Glendale Fed. Bank, FSB v.*

18   *United States*, 39 Fed. Cl. 422, 424 (Fed. Cl. 1997).    Moreover, Apple has not issued a trial

19   subpoena to Rosenbrock or shown that he would otherwise have been unavailable.

20           The testimony in question concerns a summary chart that appears in Walker's report and

21   purports to show certain dates that Apple contends are relevant to whether Samsung complied

22   with the ETSI IPR Policy with respect to certain patents.    Rosenbrock did not form an opinion or

23   even examine Walker's summary or any of the underlying documents on which Walker relied.

24   As set forth later in his deposition at 274:5-277:6, Rosenbrock saw "no reason to look at [the

25   summary]."    Walker Decl., Ex.9, (Rosenbrock Depo. 275:7-8.)    Mr. Rosenbrock testified that

26   "did not look at any of the proposals that are listed" in Dr. Walker's summary.    (Walker Decl.,

27   Ex.9, (Rosenbrock Depo. 275:21-24.)).    In the absence of any foundation for Rosenbrock to have

28   reviewed let alone vetted the factual information in Walker's summary chart, it is highly

1  misleading and unfairly prejudicial to allow the jury to hear Rosenbrock say that he has no reason

2  to dispute the information in that chart and Walker's assertion "that Samsung made its disclosures

3  after the standards were frozen."   This testimony has virtually no independent probative value

4  because Walker is on Apple's current witness list.   Apple should elicit this information through

5  Walker instead of attempting to back-door it through an excerpt taken out of context from

6  Rosenbrock's deposition.   Because any probative value of the disputed testimony is substantially

7  outweighed by the danger of undue prejudice and misleading the jury under FRE 403, it should be

8  excluded.

9  **2.      Samsung's Objection to 84:12-84:14; 84:22-84:24.**

10     Based on the information set forth in the Walker summary chart discussed above, as well

11  as certain other assumptions that Mr. Rosenbrock was asked to keep in mind, Apple asked

12  Rosenbrock a legal question, namely whether Samsung had complied "with the letter of Rule 4.1."

13  Because Rosenbrock's speculative answer is at bottom an inadmissible legal conclusion, from a

14  non-lawyer without any legal background, *see* Walker Decl., Ex.9, (Rosenbrock Depo. 103:2-9;

15  173:8-11) (clarifying that Rosenbrock was an expert on "ETSI history" especially related to the

16  policy of IPR)), any probative value of such a question and answer is substantially outweighed by

17  the potential for unfair prejudice and warrants exclusion of this testimony under FRE 403.

18  **XVIII. BRYAN AGNETTA**

19     **A.      Samsung's Objections to Deposition Designations**

20     In its July 19, 2012 case management order, the Court ruled that "[e]ach side shall . . . limit

21  the number of deposition designations to 45 witnesses and no more than 25 hours of deposition."

22  Dkt. 1267.   Apple did not identify Bryan Agnetta in its list of 45 witnesses it would call by

23  deposition.   Apple's Revised Witness List, Dkt. 1287.   Now, for the first time at the end of trial,

24  Apple seeks to introduce the testimony of Dr. Agnetta.[5]   Apple's belated request should be

25  denied.

26

27  [5]    This is the second time in the past two days that the deposition designations of prior art
28  witness Bryan Agnetta have been briefed.   After responding to many of Apple's *objections* to the
(footnote continued)

1    If Apple is permitted to play this testimony to the jury, Samsung intends to play the

2   testimony at 55:16-22 and 55:25-56:1.   Walker Decl., Ex. 10 (Agnetta Dep. 55:16-22, 55:25-

3   56:1).   In these lines, Dr. Agnetta directly contradicts the very testimony that Apple intends to

4   offer.   These contradictory deposition designations underscore that Dr. Agnetta was not qualified

5   to offer an opinion on the topic on which he was being questioned, and make clear that this entire

6   designation will only risk confusion and waste time.   FRE 403.

7

8   DATED: August 16, 2012                 QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
9

10                                          By  /s/ Victoria F. Maroulis
                                               Victoria F. Maroulis
11                                             Attorneys for SAMSUNG ELECTRONICS
                                               CO., LTD., SAMSUNG ELECTRONICS
12                                             AMERICA, INC., and SAMSUNG
                                               TELECOMMUNICATIONS AMERICA, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27  deposition designations of Dr. Agnetta, Samsung dropped Dr. Agnetta from its witness list due to
    time constraints.
28