# EXHIBIT 2

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a<br>Korean business entity, SAMSUNG<br>ELECTRONICS AMERICA, INC., a New<br>York corporation, and SAMSUNG<br>TELECOMMUNICATIONS AMERICA,<br>LLC, a Delaware limited liability company,<br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD., a<br>Korean business entity, SAMSUNG<br>ELECTRONICS AMERICA, INC., a New<br>York corporation, and SAMSUNG<br>TELECOMMUNICATIONS AMERICA,<br>LLC, a Delaware limited liability company,<br>Counterclaim-Plaintiffs,<br><br>vs.<br><br>APPLE INC., a California corporation,<br>Counterclaim-Defendant. | Civil Action No. 11-CV-01846-LHK |

# Rebuttal Report of Dr. David J. Teece, Ph.D.

# April 16, 2012

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

Antitrust markets are comprised of products (in this case, technologies) that are close substitutes for each other. In essence, Dr. Ordover assumes that the potential alternatives are close substitutes, and in doing so, assumes the results of his market definition exercises. Neither he nor Apple's technology experts have demonstrated that any of the potential alternatives are close economic substitutes, however. Thus, Dr. Ordover assumes his results, and none of his conclusions regarding market definition are valid as a matter of economics. It is simply not an accepted methodology to assume your results.

**C. Dr. Ordover Improperly Assumes Standard-specific Technology Markets**

180. Moreover, Dr. Ordover limits the technology markets he considers to the UMTS standard without analyzing the extent to which alternative standards should factor into his analysis. His use of UMTS-specific markets is an assumption, not a conclusion, of his analysis. This is a fundamental analytical error of economic analysis. I first provide a summary of Dr. Ordover's analysis framework and then highlight the critical errors and incorrect conclusions his framework suggests.

181. Dr. Ordover begins his market definition discussion with the following introduction:

> Samsung has asserted seven patents as being standard essential, so I define seven different technology markets, each of which includes a Samsung patented technology as well as other alternatives that were reasonable substitutes before the technologies that Samsung claims are covered by its patents were selected for the UMTS standard.[144]

182. Dr. Ordover's comments on the competitive effects make clear the role of market definition. He writes:

> [T]he act of standard setting itself ends or severely restricts competition in technology markets, at least for the time being. Economic efficiency and consumer welfare suffer, however, if competition is ended too soon or SSO decisions are made on the basis of distorted information. In addition to direct effects in the technology markets, restriction of competition in technology markets has effects on innovation incentives that impact the technology markets. Once a particular technology has been chosen for inclusion in a standard, innovative firms may decide to no longer invest in potential alternative technologies.[145]

183. In a case alleging foreclosure, it is important to know what products (technologies) and providers have been allegedly foreclosed. This means that the definition of the relevant market(s) plays a role. First, I note that the act of standard setting itself does not end competition. It usually kicks off product market competition. Dr. Ordover's focus on how SSOs can harm competition by moving too soon is misplaced. The opposite is also true and is generally the more significant worry. Dr. Ordover seems oblivious to

---

[144] Ordover Report, ¶ 79.

[145] Ordover Report, ¶ 156.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

competitive effects in the products markets and delays which deny consumers access to the new products.

184.   Economic analysis rightly places an important focus on investment in new technologies because innovation is an important source of economic growth and advancement. As the passage above makes clear, Dr. Ordover seems concerned that Samsung's challenged conduct may terminate investment in alternative technologies in each of the alleged markets.

185.   However, it does not follow that the adoption of a standard terminates exploration of alternatives. There are usually multiple rounds of standard setting. Moreover, it is important to get products to market. Exploring alternatives too long can be a great waste of time and resources. Even if alternative technologies are not used in a specific UMTS release, they may be used in future releases, subsequent standards (e.g., LTE), or other standards (e.g., CDMA2000). The importance of the alternative 3G standard, CDMA2000, is also particularly relevant in this matter because CDMA2000 and UMTS share many common technologies. (UMTS is also known as "wideband CDMA".)

186.   There is another alternative that Dr. Ordover ignores, however, and his failure to consider this alternative makes his analysis of market definition – and his analyses of monopoly power and competitive effects that follow – flawed at a basic level. A technology can be used in one standard, but this does not eliminate the potential for using the same technology in an alternative standard, nor does it eliminate the potential for a technology considered but rejected for use in one standard to be considered and used in another. Consider scrambling codes as an example. If scrambling codes are used in UMTS and in CDMA2000, the alternative family of 3G standards, then entities may develop scrambling code technology for use in one or both of these standards. The selection of a particular method for solving a problem in the UMTS family of standards does not mean that the method cannot also be used in the CDMA2000 family. In the same manner, the selection of a technology for use in the UMTS family does not mean that an alternative passed over for use in UMTS could not be adopted into the CDMA2000 family.[146] An entity may continue to invest in scrambling code technology development even if, as Dr. Ordover assumes, it is shut out of UMTS due to the selection of a Samsung technology.

187.   In a similar manner, being selected for the current standard does not rule out being selected in the next version of the standard or the next generation of standards. Simply put, you cannot draw a conclusion regarding foreclosure of access to the market unless you analyze the boundaries of the market. Dr. Ordover has failed to present any empirical evidence that the technology markets he defines should be defined to be UMTS-specific only. By failing to do so, Dr. Ordover draws unsupported conclusions regarding competitive effects, such as the conclusion quoted above. The act of standard setting does not necessarily "end" or "severely restrict" competition in a technology market. Technology, like many other types of inputs, can be used in different ways, and it makes no economic sense to assume that the market definition for the input is specific

---

[146] Of course, the ability to be used across multiple standards would depend on the particulars and details of the solution. As with other issues of market definition, this is a fact-based inquiry.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

to end use to which it is put. As with his determination of the alternative technologies in the markets he defines, Dr. Ordover simply assumes his conclusions with regard to the standard-specificity of markets, and thus assumes his conclusions regarding monopoly power and competitive effects. This is not an accepted economic methodology.

188.    In this matter, the implication is that alternative uses of the technology are important, and ignoring them may lead to incorrect conclusions regarding the availability and development of alternatives. Dr. Ordover does not conclude that technology markets are limited to UMTS based on an analysis of the technologies and their potential for use in other ways (*e.g.*, CDMA2000, LTE). Instead, he <u>assumes</u> the technology markets are limited to UMTS. In an environment where there are competing standards and where new standards are being developed, this is a basic error of economic analysis and results in unsupported and uninformative conclusions.

**D.   Conclusions Regarding Technology Product Market Definition**

189.    Without conducting a proper economic market definition exercise, Dr. Ordover cannot assess whether the challenged conduct <u>created</u> monopoly power. Nor can he assess the competitive effects of the conduct.

190.    With regard to the seven technology markets Apple alleges, Dr. Ordover has not considered relevant facts like the royalty burden or implementation costs for using potential alternative technologies. Nor has he considered the commercial viability of potential alternative technologies. He also fails to consider the potential for technology markets to be broader than the UMTS standard.

191.    To understand the importance of accurate market definition analysis, suppose there was only one viable alternative before standardization. In this case, the technology would have been included in the standard even in the absence of the challenged conduct because there were no alternatives, and as such Samsung's "but-for" market position would be no different than in the actual world. In a similar manner, if the market is broader and includes similar technologies used in other cellular communications standards, such as CDMA2000, the inclusion of the Samsung technologies into the UMTS standard would not foreclose alternative technologies from the marketplace. Instead, there would be multiple technologies in use before and after the standardization of the Samsung technology into the UMTS standards. It is not an accepted economic methodology to assume that the market is standard-specific or includes multiple standards. Rather, it is accepted economic practice to analyze the issue and reach an appropriate conclusion based on market facts and data. Dr. Ordover does not even consider whether any of the technology markets he discusses are broader than the UMTS standard itself.

**E.   Dr. Ordover Does Not Analyze Geographic Market Definition**

192.    Dr. Ordover's analysis of the relevant geographic component of each of the alleged technology markets is contained in one sentence of his report. He writes, "Finally, because technologies that were or could have been alternatives for the technologies that

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

raised actually impacted conduct in a manner significant enough to harm competition in any market. Neither Apple nor any other firm is alleged to have made or is considering making any changes in conduct (e.g., R&D spending) as a result of the challenged conduct. I conclude that Dr. Ordover has not demonstrated harm to either market competition or Apple.


April 16, 2012


David J. Teece, Ph.D.