# EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   11-cv-01846-LHK<br><br>**REBUTTAL EXPERT REPORT OF DR. KARAN SINGH, PH.D. REGARDING VALIDITY OF U.S. PATENTS NOS. 7,864,163, 7,844,915 AND 7,853,891** |

<u>**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***</u>

EXPERT REPORT OF DR. KARAN SINGH  REGARDING VALIDITY OF THE '163, '915 AND '891 PATENTS
Case No. 11-cv-01846-LHK

XNav System, U.S. Patent No. 7,327,349 to Robbins et al. ("Robbins"), U.S. Patent No. 7,933,632 to Flynt et al. ("Flynt"), and U.S. Patent No. 6,211,856 to Choi et al. ("Choi"). Mr. Gray also cites these references in combination with six other named references to support his opinions that the asserted claims of the '163 patent are invalid as obvious. For the reasons discussed below, it is my opinion that none of these prior art references anticipates any of the claims of the '163 patent that I asserted were infringed in my Expert Report Regarding Infringement. Moreover it is my opinion that none of these references, alone or in combination with one another, renders the asserted claims obvious. Finally, it is my opinion that the asserted claims of the '163 patent are not invalid for lack of written description or enablement, or for indefiniteness.

**A.     The Asserted Claims of the '163 Patent Are Not Anticipated or Rendered Obvious by the LaunchTile or XNav Systems or the LaunchTile Publication**

29.     Three of the references that Mr. Gray asserts anticipate the '163 patent—the LaunchTile System, the XNav System, and a publication entitled AppLens and LaunchTile: Two Designs for One-Handed Thumb Use on Small Devices (the "LaunchTile Publication")—are closely related. I understand that the LaunchTile System is a prototype graphical user interface created by Benjamin Bederson and his colleagues for use on mobile devices such as Personal Digital Assistants and cell phones. (Bederson Decl. in Supp. of Samsung's Opp. to Apple's Mot. for Prelim. Inj. at 1.) The LaunchTile Publication describes how aspects of the LaunchTile System function. (*Id.*) The XNav System is a variant of the LaunchTile System that is adapted for use with different devices and operating systems. XNav is based on the same source code as LaunchTile, and it has many of the same features. (*Id.* at 7.)

30.     Mr. Gray's own description of LaunchTile, which applies equally to XNav, shows that LaunchTile's functionality is fundamentally different from the functionality claimed in the '163 patent. Mr. Gray describes LaunchTile as follows:

> LaunchTile consisted of an "interactive zoomspace" consisting of 36 application tiles, divided into nine zones of four tiles each. The LaunchTile Publication referred to this "zoomspace" as the

Apple v. Samsung
Confidential – Attorneys' Eyes Only



Note, for example, that the single phone icon in the World View becomes a list of calls in the Zone View; the email and calendar cells similarly become detailed lists in the Zone View where they were merely iconic representations in the World View. The difference is more than mere enlargement and translation; it is substitution of entirely different content.

34. A review of the XNav source code confirms that the Zone View displays different content, not merely an enlarged and translated version of content displayed in the World View. Specifically, the XNav code calls <u>entirely different</u> graphical assets when a transition is made from World View to Zone View, rather than enlarging the World View graphical assets. (*See* Landscape.cs in Bederson Decl. in Supp. of Samsung's Opp. to Apple's Mot. for Prelim. Inj., Ex. G (hereinafter XNav Source Code Exhibit).)

    **2.**    **Claim 2: "while the first box is enlarged, a second gesture is detected on a second box other than the first box; and in response to detecting the second gesture, the structured electronic document is translated so that the second box is substantially centered on the touch screen display"**

35. I disagree with Mr. Gray's determination that LaunchTile and XNav disclose claim 2's recitation of "while the first box is enlarged, a second gesture is detected on a

EXPERT REPORT OF DR. KARAN SINGH  REGARDING VALIDITY OF THE '163, '915 AND '891 PATENTS
Case No. 11-cv-01846-LHK

11

1  these references are not prior art because they post-date the invention, which was conceived in

2  the summer and fall of 2005, as I explained in my Report Regarding Infringement.

3  Nevertheless, I will analyze these references below as if they were prior art.

4        161.    I understand that numerous alleged DiamondTouch references cited by Mr.

5  Gray were not disclosed in Samsung's invalidity contentions and should not be considered

6  prior art. For example, Mr. Gray improperly relies on Forlines et al. ("DT Lens Paper") (Gray

7  Report Ex. O); Hanckock et al. ("MERL-TR2005-118"; Gray Report Ex. R), Oscar de Brujin

8  et al. ("MERL-CoffeeTable paper") (Gray Report Ex. T); DiamondTouch running DT Lens,

9  DT Mouse, and DTFlash and source code; "UbitTable: Impromptu Face-to-Face

10  Collaboration on Horizontal Interactive Surfaces;" Sanders article "Touch-screen gamers ex-

11  static at NextFest;" Wigdor et al. paper; MERL-

12  Drive/diamondtouch/people/alan/dev/Flash/classes-2005-06-09/tablecloth_027.htm; Esenther

13  et al. ("TR2002-48"; Gray Report Ex. L); demonstration videos of DTLens and DTMouse;

14  and the Adobe Tablecloth DTFlash webpage. Nevertheless, because the Court has not

15  addressed these references, I will analyze these references below as if they were prior art.

16        162.    Moreover, the DiamondTouch prototypes did not include at least the claimed

17  elements of the '915 patent discussed below.

18      **1.    Claim 1: "receiving a user input, the user input is one or more input points applied to the touch-sensitive display that is integrated with the device;"**

19

20        163.    DiamondTouch did not have a "touch-sensitive display that is integrated with

21  the device" as recited by claim 1.

22        164.    As explained in the '915 patent specification, "In one embodiment, display

23  device 3106 and input device 3105 may be *integrated together in the same device . . . .*" (*See*

24  '915 patent at 20:56-58, emphasis added.) The specification then lists an example of an

25  "integrated" device, "(e.g., a touch screen LCD such as a multi-touch input panel which is

26  integrated with a display device, such as an LCD display device.) The display device 3106

27  may include a backlight 3106A to illuminate the display device 3106 under certain

28  circumstances." (*Id.* at 20:58-62.)

165. In contrast, the DiamondTouch prototypes had a touch-sensitive table on which an image was projected by a digital projector. (*See, e.g.,* Gray Report Ex. M at 2 and Figure 2.) The digital projector and the touch-sensitive table are not "integrated with the device," and thus fail to disclose the "touch-sensitive display that is integrated with the device" as recited by claim 1.

### 2. Claim 1: "scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input"

166. Mr. Gray alleges that the *DtlibInputTframe* object described in the source code for MERL's Mandelbrot or FractalZoom application is an "event object" of claim 1. (Gray Report Appendix 3 at 7-8.) He further contends that the FractalZoom application disclosed "scrolling a window having a view associated with the event object." (*Id.* at 10.) Mr. Gray, however, fails to show what a "view" is in the FractalZoom application and how it is associated with the *DtlibInputTframe* object.

### 3. Claim 2: "rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll."

167. Since claim 2 depends on claim 1, all of the limitations of claims 1 and 2 must be found in a single system or reference to prove anticipation. But Mr. Gray relies on at least two different systems—a system with Fractal Zoom for claim 1 and another system with DTFlash for the limitations of claim 2—and therefore fails to show anticipation of claim 2. As an exemplary flaw in Mr. Gray's analysis, I note that he provides no description of the hardware of the system that allegedly was "running DTFlash." Hence, it is impossible to know if the system running Fractal Zoom had the same hardware as the system running DTFlash. As discussed above, MERL had developed numerous prototypes of DiamondTouch over the years, and it cannot be presumed that all DiamondTouch systems had the same hardware. In fact, the DTFlash document cited by Mr. Gray expressly discussed multiple DiamondTouch prototypes that existed at the time of publication. (*See* Gray Report Ex. M ("The DiamondTouch SDK [], released with DiamondTouch *prototypes* by MERL …") (emphasis added.).)

168.  Additionally, DiamondTouch did not include "rubberbanding a scrolling region displayed within the window <u>by a predetermined maximum displacement</u>," as required by claim 2.  In particular, Mr. Gray alleges that "[w]hen the user scrolled up or down past the content edge of the window boundary and then releases the scroll, the image bounces back to its original position." (Gray Report Appendix 3 at 15.)  Mr. Gray fails, however, to provide support showing that DiamondTouch rubberbands "a scrolling region displayed within the window <u>by a predetermined maximum displacement</u>," as required by claim 2.  Mr. Gray's citations to Forlines' deposition testimony do not indicate "a predetermined maximum displacement," nor do the images cited by Mr. Gray.  In addition, Mr. Gray fails to refer to any source code in support of this limitation.

### 4. Claim 3: "attaching scroll indicators to a content edge of a window"

169.  Claim 3 depends on claim 1.  Similar to claim 2, Mr. Gray relies on at least two systems—a system with Fractal Zoom and another system with DTMouse—and therefore fails to show anticipation of claim 3.

### 5. Claim 4: "attaching scroll indicators to the window edge"

170.  Claim 4 depends on claim 1.  Similar to claim 2, Mr. Gray relies on at least two systems—a system with Fractal Zoom and another system with DTMouse—and therefore fails to show anticipation of claim 3.

### 6. Claim 5: "determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period."

171.  Mr. Gray alleges that the DiamondTouch meets this limitation, but none of his code citations support this point.  For example, the citation to a DiamondTouch running Mandelbroat is incorrect because mForgivingTime is not used to "determine whether the event object invokes a scroll or gesture operation." (*See* FractalZoomApp.java, lines 31, 144; Gray Report Appendix 3.5.)  Instead, mForgivingTime only indicates a period of time during which it is possible to reinterpret input as a different operation.  The device does not wait for mForgivingTime to elapse before it begins processing, e.g., a scroll or a zoom operation, but

rather starts processing such operations immediately (and can, for this period, even switch between them.).

172. Similarly, Mr. Gray's citation to a DiamondTouch device driver setting update_period is incorrect because update_period is not used to "determine whether the event object invokes a scroll or gesture operation," but instead indicates a period of time that the device waits for any user input. (*See* dt_io_win32.c, lines 477-481 and 563-582; Gray Report Appendix 3.6.) This time period is not used to determine any operation.

#### 7. Claims 6-7.

173. Claims 6-7 depend on claim 1 and are valid for at least the same reasons.

#### 8. Claims 8-14.

174. Claims 8-14 are apparatus claims that are similar to the methods in claims 1-7. Mr. Gray fails to raise any new invalidity arguments for claims 8-14. In my opinion, each of these claims is valid for the reasons explained in claims 1-7 above.

#### 9. Claims 15-21.

175. Claims 15-21 are apparatus claims that are similar to the methods in claims 1-7. Mr. Gray fails to raise any new invalidity arguments for claims 15-21. In my opinion, each of these claims is valid for the reasons explained in claims 1-7 above.

### B. The Asserted Claims of the '915 Patent Are Not Anticipated by Japanese Patent Publication No. 2000-163031A ("Yosuhiro")

176. In my opinion, Yosuhiro does not anticipate or render obvious the '915 patent.

#### 1. Claim 1: "creating an event object in response to the user input;"

177. Yosuhiro fails to disclose "creating an event object in response to the user input." Mr. Gray fails to cite any portion of Yosuhiro as disclosing this feature, and my careful review of Yosuhiro indicates that no event object is present. Mr. Gray instead alleges that "inherently, Yosuhiro had to store the user input data in an event object or other similar structure." I understand that to establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is *necessarily present* in the thing described in the reference, and that it would be so recognized by persons of ordinary skill. By acknowledging

**12.    Claims 8-14.**

217.    Claims 8-14 are apparatus claims that are similar to the methods in claims 1-7. Mr. Gray fails to raise any new invalidity arguments for claims 8-14. In my opinion, each of these claims is valid for the reasons explained in claims 1-7 above.

**13.    Claims 15-21.**

218.    Claims 15-21 are apparatus claims that are similar to the methods in claims 1-7. Mr. Gray fails to raise any new invalidity arguments for claims 15-21. In my opinion, each of these claims is valid for the reasons explained in claims 1-7 above.

**D.    The Asserted Claims of the '915 Patent Are Not Anticipated by Jefferson Han's System.**

219.    In my opinion, the '915 patent is not anticipated or rendered obvious by Jefferson Han's system.

220.    I further note that Jefferson Han's system appears to post-date the '915 invention. For example, Mr. Gray's report only alleges that Han's system was introduced in 2005 but fails to be more specific   Additionally, Mr. Gray relies on at least one reference, Jefferson Y. Han "*Multi-touch interaction wall*" that is from 2006. In my opinion, these references are not prior art because they post-date the invention, which was conceived in the summer and fall of 2005, as I explained in my Report Regarding Infringement. Nevertheless, I will analyze these references below as if they were prior art.

**1.    Claim 1: "receiving a user input, the user input is one or more input points applied to the touch-sensitive display that is integrated with the device"**

221.    The Han system does not have a "touch-sensitive display that is integrated with the device." As Jefferson Han testified at his deposition, each of the components of the Han system were essentially peripherals and were not "integrated with the device":

16 BY MR. KREEGER:

17 Q Mr. Han, earlier today you were discussing

18 the system you put together and demonstrated on the

19 demo reel and at the TED Conference, and you

Apple v. Samsung
Confidential – Attorneys' Eyes Only

|   |   |
|---|---|
| 1 | 20 described the system as having several components – 03:19:56 |
| 2 | 21 A That's right. |
| 3 | 22 Q – a display, a camera, the LEDs, the |
| 4 | 23 computer. Were all those components integrated in a |
| 5 | 24 single device? |
| 6 | . . . |
| 7 | 1 THE WITNESS: What is a single device? 03:20:10 |
| 8 | 2 BY MR. KREEGER: |
| 9 | 3 Q Well, were all the components integrated |
| 10 | 4 into one housing? |
| 11 | . . . |
| 12 | 6 THE WITNESS: I would not characterize it |
| 13 | 7 that way. |
| 14 | 8 BY MR. KREEGER: |
| 15 | 9 Q Why not? |
| 16 | 10 A Because the system was set up very much 03:20:31 |
| 17 | 11 like a – a display is a peripheral, a sensor is a |
| 18 | 12 peripheral, all wired by cables to a CPU box. It |
| 19 | 13 was quite – it was – it's about as integrated as |
| 20 | 14 you would say a mouse is integrated with a desktop |
| 21 | 15 monitor is integrated with a display – I mean, with 03:20:59 |
| 22 | 16 a computer. |

(Gray Report Ex. Y (Han Depo.) at 218:16-219:16.) Thus, the Han system does not meet this limitation.

### 2. Claim 1: "creating an event object in response to the user input;"

222. Han fails to disclose "creating an event object in response to the user input." In particular, Mr. Gray cites to deposition testimony showing that, according to Mr. Han,

commercially successful and have garnered widespread praise for their elegant and user-friendly interfaces.

### E. The Asserted Claims of the '891 Patent are Not Invalid as Indefinite Under 35 U.S.C. § 112 ¶ 6

310. I disagree with Dr. Darrell's opinion that claims 51-52, 55-56, 64-71, and 73-74 are indefinite because the specification of the '891 patent lacks corresponding structure to adequately identify the scope of these claims.

311. It is my opinion that there is sufficient disclosure of structure in the '891 patent specification for performing the functionality claimed in these means-plus-function claims. I have identified the physical components (such as hardware) and the algorithmic components (such as flow diagrams) of structure in the '891 patent specification associated with each element of claims 51-52, 55-56, 64-71, and 73-74 in my Expert Report Regarding Infringement. (See Expert Report of Karan Singh, Ph.D. Regarding Infringement of U.S. Patents Nos. 7,864,163, 7,844,915 and 7,853,891 at 154-165.) The relevant disclosed structure includes at least the text at 2:42-3:14, 3:45-50, 4:28-5:31, 5:54-6:8, 6:21-40, 7:7-50, and 8:4-9:63 and Figures 1, and 7-21. This structure is, in my opinion, sufficient to render claims 51-52, 55-56, 64-71, and 73-74 definite, and therefore not invalid under 35 U.S.C. § 112 ¶ 6.

Dated: April 16, 2012

/s/ Karan Singh