# EXHIBIT 13

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3
 4    APPLE, INC., a California Corporation
 5    vs.                              CN:11-CV-01846-LHK
 6    SAMSUNG ELECTRONICS COMPANY,
 7    LTD, a Korean business entity; SAMSUNG
 8    ELECTRONICS AMERICA, INC., a New
 9    York Corporation; SAMSUNG
10    TELECOMMUNICATIONS AMERICA, LLC,
11    a Delaware Limited Liability Company.
12    _____/
13
14
15        The videorecorded deposition of RAVIN
16    BALAKRISHNAN, PH.D., was held on Friday, April 20,
17    2012, commencing at 9:07 A.M., at the Law Offices of
18    Quinn Emanuel, 1299 Pennsylvania Avenue, N.W., Suite
19    825, Washington, D.C., before Ronda J. Thomas, a
20    Notary Public.
21
22
23    REPORTED BY:
24    Ronda J. Thomas, RPR, CLR
25    JOB NO. 48807
```

Page 142

```
1    Q    Right.                              02:16
2    A    I have no way of telling.           02:16
3    Q    What evidence do you have that users of,   02:16
4    quote, many users of Samsung's products appear to have   02:16
5    been dissatisfied with the blue glow design-around?   02:16
6         (Witness reading.)                  02:17
7    A    So one example would be detail in   02:17
8    paragraph 270, 270 of my report, where I use comments   02:17
9    of public discussion forums indicate that users of   02:17
10   Samsung's products used the '381 patent's bounce   02:17
11   feature, noticed its removal in a software update and   02:17
12   expressed frustration with the blue glow design around   02:17
13   that, replaced it, and I cite to a particular video   02:17
14   from a forum.                            02:17
15   Q    So beyond the reference there to a forum   02:17
16   off the internet, do you have any other evidence that   02:17
17   you're relying on?                       02:17
18   A    I have not stated any other basis, no.   02:18
19   Q    Okay. Have you done anything to prepare   02:18
20   any demonstratives for either, any of your opinions in   02:18
21   this case?                               02:18
22   A    You mean like trial demonstratives?   02:18
23   Q    Yeah.                               02:18
24   A    Or for the report?                  02:18
25   Q    Trial.                              02:18
```

Page 143

```
1    A    I haven't done anything specifically   02:18
2    talking at trial. Although some of the videos we   02:18
3    prepared for the report may or may not get used later.   02:18
4    I don't think that decision has been made.   02:18
5    Q    Okay. Do you intend to offer any   02:18
6    additional opinions beyond, related to infringement,   02:18
7    beyond the opinions that are described in your expert   02:18
8    report?                                  02:18
9         MR. BUSEY: Objection. Ambiguous.   02:18
10   Confusing.                               02:18
11   A    Should there be any new information brought   02:18
12   to light that I'm asked to respond to, I, I believe I   02:18
13   have the right to do that.               02:18
14   Q    But at this point, you don't have any   02:18
15   intention of supplementing any of your opinions in your   02:18
16   report, unless new information comes to light?   02:19
17        MR. BUSEY: Objection. Mischaracterizes   02:19
18   the witness' testimony.                  02:19
19   A    Additional opinions? For example, if I   02:19
20   understand, if I see Dr. Van Dam's transcript later and   02:19
21   there's something interesting that he said that may be   02:19
22   new, I would, I would have to respond to that. I would   02:19
23   probably be asked to respond to it.      02:19
24   Q    But at this point, you don't have any   02:19
25   opinions that aren't described in your report, right?   02:19
```

Page 144

```
1    A    On infringement?                    02:19
2    Q    Right.                              02:19
3    A    With regards to these devices, that is   02:19
4    correct.                                 02:19
5    Q    Okay.                               02:19
6         MR. JOHNSON: Take a break.         02:19
7         THE VIDEOGRAPHER: This is the end of tape   02:19
8    3. We're off the record at 14:19.        02:19
9         (Off the record.)                   02:19
10        THE VIDEOGRAPHER: This is the beginning of   02:36
11   tape 4. We're back on the record at 14:34.   02:36
12   BY MR. JOHNSON:                          02:36
13   Q    So in your infringement report on   02:36
14   paragraph 123 you talk about a claim 8?   02:36
15   A    Okay.                               02:36
16   Q    And discussing ThinkFree Office, it   02:36
17   referred to the fact that it includes presentation   02:36
18   documents.                               02:36
19   A    Yes.                                02:36
20   Q    What is a presentation document?    02:36
21   A    Something that one might use to do a slide   02:36
22   presentation, like a PowerPoint or PDF.   02:36
23   Q    Why is a PDF a presentation document?   02:36
24   A    Because it can be used to present   02:36
25   information in a presentation, like, slides. A page   02:36
```

Page 145

```
1    would be a slide potentially.            02:36
2    Q    Is a Word document a presentation document?   02:36
3    A    It could be used as a presentation   02:36
4    document, but the claim differentiates between   02:36
5    processing -- when you say Word, I'm assuming you meant   02:36
6    Microsoft Word processing document.      02:36
7         Based on that assumption, the claim   02:36
8    differentiates between word processing, e-mail   02:36
9    presentation. Out of this association, the word   02:36
10   processing document wouldn't necessarily be different   02:36
11   under the claim.                         02:36
12   Q    Exhibit 8 is a copy of your validity   02:36
13   report.                                  02:36
14        (Balakrishnan Exhibit 8 was marked for   02:36
15   purposes of identification.)             02:36
16   A    Do you want to combine these?       02:36
17   Q    We're going to clip these actually.   02:36
18        MR. BUSEY: You marked exhibit -- as   02:36
19   Exhibit 1 to the report and Exhibit 3 to the report; is   02:36
20   that right?                              02:36
21        MR. JOHNSON: 1, 2 and 3.           02:36
22        MR. BUSEY: I have 2 somewhere.     02:36
23        MR. PATEL: 2 is attached to 3.     02:36
24        MR. BUSEY: I see.                  02:36
25   Q    Did you do anything to confirm the   02:37
```

Page 146

```
 1   conception dates associated with the '381 patent?    02:37
 2        MR. BUSEY:  Objection.                          02:37
 3   Q    You testified that you reviewed                 02:37
 4   Mr. Ording's transcript.                             02:37
 5   A    Parts of it, yes.                               02:37
 6   Q    Okay.  Do you do anything, other than           02:37
 7   reviewing Mr. Ording's transcript, to confirm the    02:37
 8   conception dates for the '381 patent?                02:37
 9        MR. BUSEY:  Objection to form.                  02:37
10        (Witness reading.)                              02:38
11   A    Just the date was your question?                02:38
12   Q    No, I'm asking you did you do anything to       02:38
13   confirm the conception date?                         02:38
14   A    Conception date?                                02:38
15   Q    Yeah.                                           02:39
16   A    I just want to make sure it's the right --      02:39
17        (Witness reading.)                              02:39
18   A    Based on Mr. Ording's testimony, I              02:39
19   understand that his, the conception date was early   02:39
20   February 2005.                                       02:39
21   Q    And I'm asking separate and apart from          02:39
22   Mr. Ording's deposition testimony, did you do anything 02:39
23   to confirm that that date is accurate?               02:39
24   A    Not beyond that.                                02:39
25   Q    Okay.  Did you -- he refers to a prototype      02:39
```

Page 147

```
 1   as well in his deposition, right?                    02:39
 2   A    That's right.                                   02:39
 3   Q    Did you review the prototype to confirm         02:39
 4   that it embodies the '381 patent?                    02:39
 5   A    I did not look at that prototype.               02:39
 6   Q    So you're relying on Mr. Ording's               02:39
 7   transcript for the conception and reduction to practice 02:39
 8   dates?                                               02:39
 9   A    For the conception date and reduction to        02:39
10   practice dates, yes.                                 02:40
11   Q    Are those conceptions -- is the conception      02:40
12   date and the reduction to practice date relevant to  02:40
13   your validity opinions in any way?                   02:40
14        (Witness reading.)                              02:40
15   A    It's -- so there's issues with regards to       02:41
16   the date of some of the prior art relative to the date 02:41
17   of the '381 patent, if that's the kind, the issue    02:41
18   you're getting at.                                   02:41
19   Q    Well, I'm just asking you generally whether     02:41
20   the conception dates and reduction to practice dates 02:41
21   are relevant to your validity opinions in anyway?    02:41
22   A    They wouldn't change the validity opinions      02:41
23   in that I still believe these, the relevant references 02:41
24   we discuss here in response to Dr. Van Dam's assertions 02:42
25   are not invalidating the patent whether, you know, on 02:42
```

Page 148

```
 1   top of that.                                         02:42
 2        The, for example, the Diamond, DTFlash          02:42
 3   Tablecloth application and the DiamondTouch, there's an 02:42
 4   issue about the date of that.  But the, the fact that 02:42
 5   it still doesn't do, regardless of the date, it doesn't 02:42
 6   invalidate the patent, that opinion would not change 02:42
 7   regardless of the date.                              02:42
 8   Q    The -- your report discusses the LaunchTile     02:42
 9   and XNav prior art, the Lira prior art and the       02:42
10   DTFlash/Tablecloth prior art, correct?               02:42
11   A    That's correct.  Yes.                           02:42
12   Q    Were any of those three -- strike that.         02:42
13        None of those three references was              02:42
14   discussed during the request for re-examination, right? 02:42
15   A    Of the '381 patent, the one that Nokia did?     02:43
16   Q    Right.                                          02:43
17   A    Just let me doublecheck that.                   02:43
18        (Witness reading.)                              02:44
19   A    I do not believe I've made that, any claim      02:44
20   that Lira was disclosed.                             02:44
21   Q    Or LaunchTile?                                  02:45
22   A    Or LaunchTile or Tablecloth.                    02:45
23   Q    Of those three references, how do you rank      02:45
24   them?                                                02:45
25        What's the best piece of prior art?  What's    02:45
```

Page 149

```
 1   the worst out of those three?                        02:45
 2        MR. BUSEY:  Objection.  What's this, a          02:45
 3   gambling house?  Ambiguous and confusing.            02:45
 4   A    I don't consider any of them to be prior        02:45
 5   art -- sorry, invalidating prior art.                02:45
 6   Q    How do you rank them?                           02:45
 7        MR. BUSEY:  Same objection.                     02:45
 8   A    By what criteria?                               02:45
 9   Q    By closest prior art of the three?              02:45
10   A    I haven't done the ranking.                     02:45
11   Q    I'm asking you.                                 02:45
12   A    Or thought about ranking.                       02:45
13        MR. BUSEY:  Objection.                          02:45
14   A    I would still ask you for a criteria?           02:45
15   What's your criteria, match to each element of the   02:45
16   claims?                                              02:45
17   Q    Yeah, closest to matching the elements of       02:45
18   the claims.                                          02:45
19        MR. BUSEY:  Objection.  Beyond the scope.       02:45
20   Confusing.  And ambiguous.                           02:45
21   A    I don't think any of them -- sorry.             02:45
22        MR. BUSEY:  Go ahead.                           02:45
23   A    I don't think any of them match the             02:45
24   elements of the claims.  It would be difficult to rank 02:46
25   them.                                                02:46
```