1   HAROLD J. MCELHINNY (CA SBN 66781)
    hmcelhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
3   RACHEL KREVANS (CA SBN 116421)
    rkrevans@mofo.com
4   JENNIFER LEE TAYLOR (CA SBN 161368)
    jtaylor@mofo.com
5   ALISON M. TUCHER (CA SBN 171363)
    atucher@mofo.com
6   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
7   JASON R. BARTLETT (CA SBN 214530)
    jasonbartlett@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
10  Facsimile:  (415) 268-7522

    WILLIAM F. LEE
    william.lee@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    60 State Street
    Boston, MA 02109
    Telephone: (617) 526-6000
    Facsimile: (617) 526-5000

    MARK D. SELWYN (SBN 244180)
    mark.selwyn@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    950 Page Mill Road
    Palo Alto, California 94304
    Telephone: (650) 858-6000
    Facsimile: (650) 858-6100

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16

17  APPLE INC., a California corporation,          Case No. 11-cv-01846-LHK (PSG)

18                 Plaintiff,                      **APPLE'S OBJECTIONS AND
                                                   RESPONSES TO OBJECTIONS RE:**
19          v.                                     **TEECE, AHN, DONALDSON, KIM,
                                                   KNIGHTLY, LEE, MUSIKA,**
20  SAMSUNG ELECTRONICS CO., LTD., a               **ORDOVER, ROSENBROCK, ROSSI,**
    Korean business entity; SAMSUNG                **TEKSLER, WALKER, AGNETTA,**
21  ELECTRONICS AMERICA, INC., a New York          **BALAKRISHNAN, BRESSLER, HONG,**
    corporation; SAMSUNG                           **KARE, SINGH, STRINGER, AND YEO**
22  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,
23
                   Defendants.
24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2   I.   DAVID TEECE ....................................................................................... 1

3        A.   Objections to Samsung's Direct Examination Exhibits ................... 1

4        B.   Responses to Samsung's Objections to Apple's Cross Examination
              Exhibits ......................................................................................... 1

5   II.  TIM WILLIAMS ................................................................................... 3

    III. WOODWARD YANG .......................................................................... 4

6   IV.  SEUNG-HO AHN ................................................................................ 5

7        A.   Objections to Samsung's Counter-Designations............................. 5

8        B.   Responses to Samsung's Objections to Apple's Deposition Designations............. 5

    V.   RICHARD DONALDSON..................................................................... 7

9        A.   Objections to Samsung's Cross-Examination Exhibits ................... 7

10       B.   Responses to Samsung's Objections to Apple's Direct Examination
              Exhibits ......................................................................................... 7

11  VI.  HYONG KIM ....................................................................................... 8

12       A.   Objections to Samsung's Cross-Examination Exhibits ................... 8

13       B.   Responses to Samsung's Objections to Apple's Direct Examination
              Exhibits ......................................................................................... 8

14  VII. EDWARD KNIGHTLY ........................................................................ 9

15       A.   Objections to Samsung's Cross-Examination Exhibits ................... 9

16       B.   Responses to Samsung's Objections to Apple's Direct Examination
              Exhibits ......................................................................................... 9

17  VIII. JUN WON LEE.................................................................................... 10

         A.   Responses to Samsung's Objections to Apple's Deposition Designations........... 10

18  IX.  TERRY MUSIKA ................................................................................ 12

19       A.   Objections to Samsung's Cross-Examination Exhibits ................. 12

20       B.   Responses to Samsung's Objections to Apple's Direct Examination
              Exhibits ....................................................................................... 12

21  X.   JANUSZ ORDOVER ........................................................................... 14

22       A.   Objections to Samsung's Cross-Examination Exhibits ................. 14

23       B.   Responses to Samsung's Objections to Apple's Direct Examination
              Exhibits ....................................................................................... 14

24  XI.  KARL ROSENBROCK ....................................................................... 17

         A.   Responses to Samsung's Objections to Apple's Deposition Designations........... 17

25  XII. PETER ROSSI ..................................................................................... 20

26       A.   Objections to Samsung's Cross-Examination Exhibits ................. 20

27       B.   Responses to Samsung's Objections to Apple's Direct Examination
              Exhibits ....................................................................................... 20

28  XIII. BORIS TEKSLER ............................................................................... 22

      A.      Objections to Samsung's Cross-Examination Exhibits ......................... 22

      B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 22

XIV.   MICHAEL WALKER ........................................................................................ 24

      A.      Objections to Samsung's Cross-Examination Exhibits ......................... 24

      B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 25

XV.    BRYAN AGNETTA ......................................................................................... 27

      A.      Responses to Samsung's Objections to Apple's Deposition Designations ........... 27

XVI.   RAVIN BALAKRISHNAN .............................................................................. 29

      A.      Objections to Samsung's Cross-Examination Exhibits ......................... 29

      B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 30

XVII.  PETER BRESSLER ........................................................................................... 32

      A.      Objections to Samsung's Cross-Examination Exhibits ......................... 32

      B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 32

XVIII. WON PYO HONG ............................................................................................ 34

      A.      Responses to Samsung's Objections to Apple's Deposition Designations ........... 34

XIX.   SUSAN KARE ................................................................................................. 36

      A.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 36

XX.    KARAN SINGH ............................................................................................... 37

      A.      Objections to Samsung's Cross-Examination Exhibits ......................... 37

      B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 37

XXI.   CHRISTOPHER STRINGER ........................................................................... 39

      A.      Objections to Samsung's Cross-Examination Exhibits ......................... 39

      B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits .............................................................................................. 39

XXII.  JUNGMIN YEO ............................................................................................... 41

      A.      Responses to Samsung's Objections to Apple's Deposition Designations ........... 41

1    Apple hereby provides its high-priority objections and responses to Samsung's below.

2    Apple notes that, to avoid burdening the Court, it proposed that the parties raise and brief only a

3    single high-priority objection per witness.  Samsung declined.

4    **I.    DAVID TEECE**

5        **A.    Objections to Samsung's Direct Examination Exhibits**

6        ***SDX3975.005.***  Apple has not asserted any patents declared as essential to any standard in

7    this litigation against Samsung, and accordingly Apple's disclosure practices are not at issue.

8    Thus, as this Court has already determined, evidence related to alleged untimely disclosure of

9    Apple's patents would cause undue confusion and would be a waste of time.  (*See* Dkt. No. 1456

10   at 4 (Entry 140)) ("Samsung admits that the Apple patents are not asserted in this litigation. This

11   evidence is likely to cause undue confusion for the jury and to waste time. Accordingly, this

12   evidence is inadmissible under FRE 403.").  Samsung's attempt to solicit testimony from its

13   economic expert about Apple's disclosure practices to ETSI is an attempt to put evidence before

14   the jury that this Court has already determined is inadmissible.  This evidence should be excluded

15   pursuant to Fed. R. Evid. 402 and 403.

16       ***SDX3975.001.***  As the Court explained just yesterday, exhibits that "involve[] different

17   parties, different patents, and the setting of different industry-wide standards than the current

18   case" are "of limited relevance and are likely to waste time and confuse the jury." (Dkt. No. 1749

19   at 4).  Samsung's proposed slide SDX3975.001 presents information regarding the relative

20   market share of the UMTS and CDMA standards.  No patents at issue in this case have been

21   declared as essential to the CDMA standard, nor is that standard at any way at issue in this case.

22   Discussion of this irrelevant issue would be likely to waste time and confuse the jury.  This slide

23   should be excluded pursuant to Fed. R. Evid. 402 and 403.

24       **B.    Responses to Samsung's Objections to Apple's Cross Examination Exhibits**

25       ***PX2065.***  Samsung objects to Apple's use of the deposition testimony of Karl Heinz

26   Rosenbrock, Samsung's ETSI expert in this litigation, whom Samsung apparently has chosen not

27   to call to testify at trial.  As discussed in Section XI herein (Apple's response to Samsung's

28   objections to the deposition designations for Mr. Rosenbrock), Mr. Rosenbrock's testimony is

1    directly relevant to, among other issues, the question of whether Samsung breached its disclosure

2    obligations to ETSI.  Samsung argues that Apple should not be able to use that transcript to cross

3    examine Professor Teece because it supposedly would be "used for improper impeachment

4    purposes."  In short, Samsung is seeking to prevent Apple from impeaching Professor Teece with

5    sworn deposition testimony given by another Samsung expert in this matter.

6          At his deposition, Mr. Rosenbrock (Samsung's *own ETSI expert*) admitted that Samsung

7    breached the ETSI IPR Policy.  Apple believes that the jury should be permitted to weigh that

8    concession against the anticipated testimony of Mr. Teece (an *economics and antitrust expert*) on

9    the same subject matter.  Mr. Rosenbrock's deposition testimony is plainly admissible.  Fed. R.

10   Civ. P 32(a)(2) provides that "[a]ny party may use a deposition to contradict or impeach the

11   testimony given by the deponent as a witness, *or for any other purpose allowed by the Federal*

12   *Rules of Evidence*."  Samsung claims that Mr. Rosenbrock's testimony is "being used for

13   improper impeachment purposes."  However, where deposition testimony is admissible under the

14   Federal Rules of Evidence, it is necessarily admissible under Fed. R. Civ. P. 32.  *Coleman v.*

15   *Wilson*, 912 F. Supp. 1282, 1295 (E.D. Cal. 1995) (if deposition excerpts are party admissions

16   under Fed. R. Evid. 801(d)(2)(C) or (D), "they are not hearsay and Fed. R. Civ. P. 32 has no

17   application to their admissibility.").  As discussed in greater detail in Section XI, courts regularly

18   admit into evidence admissions in expert testimony under the Federal Rules of Evidence and the

19   Court should do so here.

20

21

22

23

24

25

26

27

28

1    **II.**    **TIM WILLIAMS**

2          The parties did not identify any high priority objections to be briefed for this witness.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### III.   WOODWARD YANG

2

The parties did not identify any high priority objections to be briefed for this witness.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    IV.    **SEUNG-HO AHN**

2          A.    **Objections to Samsung's Counter-Designations**

3          Apple does not object to the counter-designations submitted by Samsung from the

4    deposition of Dr. Seung-ho Ahn.

5          B.    **Responses to Samsung's Objections to Apple's Deposition Designations**

6          **PX81**.  Samsung objects to PX81, the amended license agreement between Samsung and

7    Intel, on the grounds that Apple's designation of Dr. Ahn's deposition testimony does not lay a

8    sufficient foundation for the admission of the Samsung/Intel license.  As the designated testimony

9    shows, Dr. Ahn is a senior manager with vast experience with Samsung's licensing program.

10

11

12

13          Moreover, Samsung has repeatedly represented to the Court that is has entered into a

14    license agreement with Intel.  For example, in its Opposition to Apple's Motion for Partial

15    Summary Judgment (April 2, 2012), under the heading

16

17

18                                                                      Given these prior

19    admissions, there is no merit to Samsung's objection.

20          ***S.H. Ahn Dep. Tr. 98:10; 100:24-25; 101:7-8.***  Samsung has objected to portions of Dr.

21    Ahn's designated testimony on the grounds that it is misleading and prejudicial, but offered Apple

22    no explanation for why this is so.  Much of the designated testimony has already been presented

23    to the jury as part of Apple's opening statement, over Samsung's objection.  (Dkt. No. 1455 at 5).

24    Further, a review of the designated testimony demonstrates that far from being misleading, Dr.

25    Ahn's answers are terse and direct.

26

27

28                                  )  The testimony is straight-forward and clear, there is nothing "misleading"

about it.

Further, Samsung's unsupported claim of prejudice – regarding testimony offered by a senior executive and directly related to Apple's assertions – appears to be nothing more than an attempt to avoid introduction of unfavorable testimony that might harm its case.  As the Ninth Circuit has explained, addressing an objection to statements unfavorable to the party objective: "There is no question that this evidence was particularly damning. But Fed. R. Evid. 403 only concerns itself with unfair prejudice. . . . Whatever prejudice derives from admission of the quotations, it is not the kind against which Rule 403 protects. . . . assuming the statements were made as reported . . . the prejudice was fair, and did not lead to a decision on an improper basis." *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991).

1  **V.      RICHARD DONALDSON**

2            **A.      Objections to Samsung's Cross-Examination Exhibits**

3            *DX593.*  Samsung has withdrawn DX593.

4            ***Musika Opening Report.***  Samsung has withdrawn its disclosure of the Musika Opening

5  Report for use with Mr. Donaldson.

6            **B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

7            *PX78.*  Apple has withdrawn its disclosure of PX78 use for use with Mr. Donaldson.

8            *PX82.*  Apple has withdrawn PX78.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.   HYONG KIM

### A.    Objections to Samsung's Cross-Examination Exhibits

*DX613.*  Samsung has withdrawn its disclosure of DX613 for use with Dr. Kim.

### B.    Responses to Samsung's Objections to Apple's Direct Examination Exhibits

Samsung did not identify any high priority objections to be briefed for this witness.

1    **VII.    EDWARD KNIGHTLY**

2        **A.    Objections to Samsung's Cross-Examination Exhibits**

3        ***DX613.***  Samsung has withdrawn its disclosure of DX613 for use with Dr. Knightly.

4        **B.    Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

5        ***PX189.***  Apple has withdrawn its disclosure of PX189 for use with Dr. Knightly.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VIII.   JUN WON LEE

### A.   Responses to Samsung's Objections to Apple's Deposition Designations

Samsung objects on Fed. R. Civ. P. 403 grounds to Apple designations of testimony from Jun Won Lee.  There is nothing speculative about this testimony.  Mr. Lee is Samsung's Director of Licensing, has been employed by Samsung for more than 25 years, and has held a number of roles related to licensing, patent analysis, and patent prosecution during that time.  (Kolovos Decl. Ex. 3, J. W. Lee Dep. Tr. at 7:10-8:15)  He was also Samsung's designated corporate witness on the topic of licensing:

> 15) Samsung's policies, procedures, and activities related to the disclosure of intellectual property to 3GPP and/or ETSI including:
> a) licensing of the asserted patents on FRAND terms;
> b) prior statements by Samsung concerning FRAND licensing;
> c) the definition of a FRAND royalty and how such a royalty is calculated.

(Kolovos Decl. Ex. 4, Apple's Third Notice of Deposition to Samsung); (Kolovos Decl. Ex. 3, J. W. Lee Dep. Tr. at 10:17-11:5).  As a corporate designee, Mr. Lee was prepared to "give knowledgeable and binding answers for the corporation."  *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).  *See also New Jersey v. Sprint Corp.*, 2010 WL 610671, at *2 (D. Kans. Feb. 19, 2010) ("The testimony provided by a corporate representative at a 30(b)(6) deposition binds the corporation.").  During his deposition Mr. Lee testified:

> Q And is it [the] goal [of Samsung's attendees] to try to draft applications or have applications drafted that will cover the standards that are being discussed at the ETSI meetings?
> …
> THE WITNESS: You can say that.

(Kolovos Decl. Ex. 3, J. W. Lee Dep. Tr. at 112:17-22.)  Mr. Lee also testified:

> Q Has there ever been an instance in which Samsung has disclosed a pending patent application or an issued patent to ETSI before the standard has been determined or before the standard has been frozen?
> . . .
> THE WITNESS: I'm not sure if that has ever happened, but if that happened, I believe that was a stupid thing.

1   (Kolovos Decl. Ex. 3, J. W. Lee Dep. Tr. at 114:17-24.)

2         Samsung asserts that this testimony is speculative, lacks foundation and is misleading.  It

3   is none of these.  Rather, Mr. Lee gave testimony that is highly probative regarding Apple's

4   allegations that Samsung had a practice of attending ETSI meetings, drafting patent applications

5   to cover standards discussed during those meetings, and failing to disclose those patent

6   applications before the standards are frozen.  Likewise, there is nothing speculative, lacking

7   foundation, or misleading about Samsung's corporate designee and its head of licensing admitting

8   that he knew of no instances where Samsung had disclosed its intellectual property rights before

9   an ETSI standard had been frozen, and asserting that it would be "stupid" for Samsung to do so.

10  There is nothing misleading about these admissions by Samsung.  They are answers to

11  straightforward questions from the witness that *Samsung, itself, designated to testify on the*

12  *subject.*

13        Evidence should be excluded under Fed. R. Evid. 403 only if it is "unfairly prejudicial,

14  that is, if it has an undue tendency to suggest a decision on an improper basis."  *U.S. v. Joetzki*,

15  952 F.2d 1090, 194 (9th Cir. 1991).  As the Ninth Circuit has explained, in addressing evidence

16  that was particularly unfavorable to the side opposing admission: "There is no question that this

17  evidence was particularly damning. But Fed. R. Evid. 403 only concerns itself with unfair

18  prejudice.... Whatever prejudice derives from admission of the quotations, it is not the kind

19  against which Rule 403 protects.... assuming the statements were made as reported ... the

20  prejudice was fair, and did not lead to a decision on an improper basis."  *Larez v. City of Los*

21  *Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991).  Mr. Lee's testimony as a Samsung corporate

22  designee is undoubtedly damaging to Samsung's case, but that, of course, does not provide a

23  basis to exclude this highly probative evidence.

24

25

26

27

28

## IX.    TERRY MUSIKA

### A.    Objections to Samsung's Cross-Examination Exhibits

*DX759.*  DX759 is Apple's privilege log concerning its clawback of its royalty report due to inadvertent disclosure of privileged information.  Apple objects to the use of its privilege log as a trial exhibit or demonstrative.  Apple's claims of attorney-client privilege are not relevant to any issue of liability or damages to be decided by the jury.  Mr. Musika is Apple's damages expert. He is not an attorney.  He did not prepare the log, rely upon it in preparation of his damages reports, or list it among the materials he reviewed in preparation of his report.  Mr. Musika has no personal knowledge concerning the contents of Apple's privilege log, or the reasons for Apple's privilege claims.  There is no probative value, and introduction of privilege issues will likely confuse the jury, waste time, and result in undue prejudice to Apple.

*DX2576 (Uniram Transcript).*  The Court already excluded this document when Samsung previously tried to introduce it during cross examination of Mr. Musika's during Apple's offensive case:  "Sustained.  Mr. Musika's prior testimony on damages in *Uniram Tech., Inc. v. Taiwan Semiconductor Mfg. Co., Ltd.,* Case No. C-04-1268-VRW, an unrelated litigation, is of limited relevance and is likely to waste time and lead to jury confusion.  Accordingly the evidence is inadmissible under FRE 403."  (Dkt. No. 1668 at 3.)  There is no basis for reconsideration of the Court's prior ruling.  As Apple noted in its August 9, 2012 brief on this issue, "Samsung's use of the *UniRam* trial transcript during its cross examination of Mr. Musika violates Rules 402 and 403 of the Federal Rules of Evidence. In granting Samsung's motion in limine #4, the Court "exclude[d] reference to findings or rulings in other proceedings not involving the patents at issue in this case." (Dkt. No. 1267 at 4:15-16.) The *UniRam* case is a seven-year old trade secrets case in which Mr. Musika testified. It arose under California state law and involved different parties, different technology, different factual issues, and different legal standards."  (Dkt. No. 1639 at 1.)

### B.    Responses to Samsung's Objections to Apple's Direct Examination Exhibits

*PDX39.3.*  The slide at PDX39.3 is an accurate representation of Mr. Musika's opinions in this case as disclosed in his rebuttal expert report.  Specifically, Mr. Musika opines that each of

1    the three elements of Dr. O'Brien's formula for determining a reasonable royalty rate is

2    unsupported and violates basic economic and business principles, and that the resulting royalty

3    rates calculated by Dr. O'Brien are speculative and unreasonable.  Mr. Musika's opinions as to

4    each element are explained in his report.  (*See e.g.*, Kolovos Decl. Ex. 5, Musika Rebuttal Report

5    at ¶¶ 24, 28, 35-37.)  Placing an "X" over each element of the formula and rate is a fair visual

6    representation of that opinion, and should assist the jury in understanding and remembering Mr.

7    Musika's opinions.  The subject matter depicted on the slide is highly relevant.   Apple intends to

8    use the slide only as a demonstrative, and will not offer it into evidence.  Utilization of this simple

9    visual representation will not lead to confusion, and there is no potential for undue prejudice.

# X.     JANUSZ ORDOVER

## A.     Objections to Samsung's Cross-Examination Exhibits

**DX565.**  This exhibit is a letter that appears to be from a representative of the  European Commission to ETSI concerning the possible application of European competition law to a proposal under consideration in an ETSI committee.  This document is an out of court statement for which there is no possible use other than for the truth of the matters asserted therein.  Accordingly, it is hearsay and inadmissible under Federal Rule of Evidence 802.  Moreover, the letter relates to a proposal that was never adopted, concerns solely foreign law and the actions of a foreign competition authority, does not specifically relate to the UMTS standard, and is irrelevant to the issues in this case.  It is also likely to waste time and confuse the jury and is thus inadmissible under Rule 403.  *See, e.g.*, *Coursen v. A.H. Robins Co., Inc.*, 764 F. 2d 1329, 1334 (9th Cir. 1985) (evidence on a collateral issue may unduly distract or mislead the jury) (citing *Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 274 (9th Cir. 1978)).  This Court has already excluded other proposed exhibits under Rule 403 based on its determination that they related to foreign proceedings involving different parties than those in this case and did not specifically relate to the UMTS standard.  (Dkt. No. 1749 at 4.)

## B.     Responses to Samsung's Objections to Apple's Direct Examination Exhibits

**PDX44.6.**  Samsung seeks to exclude this demonstrative as purportedly relying on an untimely disclosed theory based on its mention of the Agarwal prior art reference, and under Rule 702 because Dr. Ordover does not have the technical expertise to opine on the technologies described.  Both objections are meritless.  First, Dr. Ordover's use of the Agarwal reference to identify alternative technologies was previously disclosed in his expert report via his reliance on Dr. Knightly.  The Agarwal reference was discussed extensively in the report of Apple expert Edward Knightly, and Dr. Ordover expressly relied on that report in forming his opinion that there were alternative technologies to the one that Samsung now claims is covered by the '941 patent.  Dr. Knightly's report explains that the Agarwal reference "uses 1 bit for the first case and two for the remaining cases," which is virtually identical to the language used in PDX44.6.  (Kolovos Ex. 6, Opening Report of Dr. Edward W. Knightly Regarding U.S. Patent No.

1    7,675,941 at ¶ 57.)  Dr. Knightly further noted that regardless of whether Samsung's claims cover

2    the Alternative E-bit feature in TS 25.331, "I believe there would have been alternatives to using

3    the Alternative E-Bit."  (Kolovos Ex. 6, Opening Report of Dr. Edward W. Knightly Regarding

4    U.S. Patent No. 7,675,941 at ¶ 123.)  Dr. Ordover expressly relied on Dr. Knightly's conclusion

5    in his own report, stating that "Dr. Knightly concludes that there would have been alternatives to

6    using the Samsung technology."  (Kolovos Ex. 7, Expert Report of Dr. Janusz A. Ordover at

7    ¶ 103.)  Thus, there is simply no basis for Samsung's objection: Dr. Knightly clearly described

8    the Agarwal technology, clearly concluded that there were alternatives, and Dr. Ordover

9    expressly relied on that conclusion.  Dr. Knightly and Dr. Ordover will offer these same

10   descriptions and opinions at trial.

11          Second, Samsung's objection under Rule 702 is similarly groundless.  Dr. Ordover will

12   not testify as to any independent opinion regarding technologies that are viable alternatives to the

13   ones that Samsung claims are covered by the '941 patent.  Instead, he will rely on Dr. Knightly's

14   analysis, as he did in his report.  (Kolovos Ex. 7, Expert Report of Dr. Janusz A. Ordover at

15   ¶ 103.)  An expert may rely upon the opinion of another expert in forming an opinion.  *See, e.g.,*

16   *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) ("The fact that

17   Engelke's opinions are based on data collected by others is immaterial; Federal Rule of Evidence

18   703 expressly allows such opinion testimony."); *see also Arkwright Mut. Ins. Co. v. Gwinner Oil,*

19   *Inc.*, 125 F. 3d 1176, 1182 (8th Cir. 1997) (testimony by one expert based in part on another

20   expert's report was admissible).  Rule 703 permits an expert to rely on facts or data that would

21   not itself be admissible, so long as experts in the field would reasonably rely on such types of

22   facts or data.  Economic experts that are asked to identify technologies that perform similar,

23   highly technical functions would obviously need to rely on the analysis of an expert in the field.

24   Dr. Ordover expressly – and properly – based his analysis of alternative technologies on Dr.

25   Knightly.  (Kolovos Ex. 7, Expert Report of Dr. Janusz A. Ordover at ¶¶ 83, 102-104.)

26          ***PDX44.7.***  Samsung's objections to PDX44.7 parallel its objections to PDX44.6, and fail

27   for similar reasons.  First, Samsung objects that Dr. Ordover's report does not identify the

28   possibility of leaving the functionality that Samsung claims is performed by technology covered

1   by the '516 patent out of the UMTS standard as an alternative, and that this theory is therefore

2   untimely.  Samsung is wrong.  Dr. Ordover explained in his opening report that standard-setting

3   participants face a decision "**whether to include that function in the standard at all**."

4   (Kolovos Ex. 7, Expert Report of Dr. Janusz A. Ordover at ¶ 59.)  Thus, Dr. Ordover clearly

5   disclosed his opinion that a function, including that allegedly related to the '516 patent, could

6   have been left out of the UMTS standard altogether.

7        Second, Samsung repeats its objection under Rule 702, which fails for the reasons

8   discussed in connection with PDX44.6.  Dr. Ordover will not testify as to any independent

9   opinion regarding which technologies are viable alternatives.  Instead, he will rely on Dr. Kim's

10  analysis, as he did in his report.  (Kolovos Ex. 7, Expert Report of Dr. Janusz A. Ordover at

11  ¶ 100.)  Dr. Ordover is entitled to rely on the opinions of other experts.  (*See supra*.)  Economic

12  experts that are asked to identify technologies that perform similar, highly technical functions

13  would obviously need to rely on the analysis of an expert in the field.  Dr. Ordover expressly

14  based his analysis of alternative technologies on Dr. Kim.  (Kolovos Ex. 7, Expert Report of Dr.

15  Janusz A. Ordover at ¶¶ 83, 99-101.)

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **XI.    KARL ROSENBROCK**

2          **A.     Responses to Samsung's Objections to Apple's Deposition Designations**

3          *Rosenbrock Dep. Tr. 79:19-21, 79:24-80:7, 84:22-24*:  Mr. Rosenbrock is Samsung's

4    ETSI expert in this litigation, and Samsung identified him on its Second Amended Witness List

5    for Trial on July 23, 2012.  (Dkt. No. 1278 at 7.)   Samsung has now apparently decided not to

6    call him at trial, and objects to Apple's designation of the deposition testimony in which Mr.

7    Rosenbrock admitted that Samsung failed to disclose its declared-essential patents before the

8    ETSI UMTS standard was frozen.[1]  In particular, Samsung objects to two sections of Mr.

9    Rosenbrock's testimony.  First, Mr. Rosenbrock admitted that  Samsung made its disclosures to

10   ETSI after the relevant standards were set:

11          [Q.]  You are not disputing Mr. Walker's summary which shows that Samsung
            made its disclosures after the standards were frozen, correct?
12

13          . . .

14          THE WITNESS:  I have – I have no instances or no hints that these are wrong.  I
            have not heard anything from Samsung, but – but I – I simply assume that this is
15          correct.

16          BY MR. MUELLER:

17          Q.      And we can agree that based on this table and the information reflected in
            it, Samsung made its disclosures after the standards were set, correct?
18
            A.      Yeah.
19

20    (Rosenbrock Dep. Tr. 79:19-21; 79:24-80:7).  Mr. Rosenbrock also testified that these late

21   disclosures violated ETSI's policies:

22          Q.  With respect to the letter of the rule, Samsung did not comply with the letter
            of Rule 4.1, correct?
23

24          . . .

25          A.  Yeah, if we ignore the – the general declaration, then one could perhaps come
            to that conclusion.
26

―――――――――――――――

27          [1] In its July 23, 2012 trial witness list, Apple listed Mr. Rosenbrock as a witness that
     Apple might call by deposition.  (Dkt. No. 1287 at 24.)
28

1    (Rosenbrock Dep. Tr. at 84:12-14, 84:22-24).  *See also* Kolovos Decl. Ex. 8, ETSI Intellectual

2    Property Rights Policy, at PX74.2 ("a MEMBER submitting a technical proposal for a

3    STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's

4    IPR which might be ESSENTIAL if that proposal is adopted."); Kolovos Decl. Ex. 9, ETSI Guide

5    on Intellectual Property Rights, at PX75.6 ("Use of the General IPR licensing declaration does

6    not take away the obligation for members to declare essential patents to ETSI as stated in 2.1.1.").

7           Samsung has opted not to call Mr. Rosenbrock as an expert at trial, but instead has chosen

8    to present evidence on the question of whether Samsung breached its disclosure obligations

9    through David Teece, an *economic and antitrust* expert, who has no particular expertise regarding

10   ETSI and its policies.

11          Apple should be permitted to present Mr. Rosenbrock's testimony to the jury.  *First*, the

12   testimony is admissible under Rule 403.  It is highly probative of whether Samsung breached

13   obligations timely to disclose its IPR, particularly given that it is offered by a former Director-

14   General of ETSI with intimate knowledge of ETSI's procedures and practices. *See* Rosenbrock

15   Dep Tr. 13:11-14.  Moreover, the jury needs to have the opportunity to weigh the testimony of

16   Mr. Rosenbrock – Samsung's expert on witness on ETSI – against the testimony that it will hear

17   from Mr. Teece, who Samsung has opted to have testify on disclosure issues in lieu of Mr.

18   Rosenbrock.  There is no potential for undue prejudice or confusing the jury:  the testimony

19   comes from *Samsung's own ETSI expert witness in this litigation*.  As such, this evidence is not

20   unfairly prejudicial or misleading.  *See U.S. v. Joetzki*, 952 F.2d 1090, 194 (9th Cir. 1991)

21   (Evidence should be excluded under Fed. R. Evid. 403 only if it is "unfairly prejudicial, that is, if

22   it has an undue tendency to suggest a decision on an improper basis.").

23          *Second*, Fed. R. Civ. P. 32(a) does not preclude the admission of Mr. Rosenbrock's

24   deposition testimony.  Tellingly, Samsung fails to give any reason why admitting the testimony

25   would be inconsistent with Rule 32(a), which permits broad use of deposition testimony.  *See*

26   Fed. R. Civ. P. 32(a)(2) ("[a]ny party may use a deposition to contradict or impeach the testimony

27   given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of

28   Evidence.").

1   Courts regularly admit into evidence admissions from expert testimony.  *See, e.g., Collins*

2   *v. Wayne Corp.*, 621 F.2d 777, 781-82 (5th Cir. 1980) ("The district court erred in not allowing

3   plaintiffs to offer [defendant's expert's] deposition into evidence as an admission of [the

4   defendant]"), *superceded on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459

5   n.16 (5th Cir. 2002); *Bianco v. Hultsteg AB*, No. 05-0538, 2009 WL 347002, at *12 (N.D. Ill.

6   Feb. 5, 2009) ("We agree that [the expert's] sworn [deposition] testimony constitutes admissions

7   by a party opponent within the meaning of Federal Rule of Evidence 801(d)(2)."); *see also In re*

8   *Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (expert testimony in

9   prior related trial is admission under FRE 801(d)(2)); *Lizotte v. Praxair, Inc.*, 640 F. Supp. 2d

10   1335, 1338-39 (W.D. Wash. 2009) (observing that *Hanford* permits introduction of "expert

11   testimony, sworn at trial or a deposition."); *Long v. Fairbank Farms, Inc.*, Nos. 1:09-592, 2:10-

12   60, 2011 WL 2516378, at *9-11 (D. Me. May 31, 2011) (expert deposition testimony admissible

13   under FRE 801(d)(2) and observing that, by putting an expert forward to testify at a deposition

14   "impartially within the sphere of his expertise" the party opposing admission had  "authorized

15   [the expert] to make a statement concerning the subject matter about which he testified ....").

16   Finally, Samsung contends that Mr. Rosenbrock's testimony is an inadmissible legal

17   conclusion.  But Mr. Rosenbrock's testimony reflects his expert view of whether Samsung's

18   conduct regarding disclosure was consistent with the ETSI IPR Policy, based on his expertise as

19   the former Director-General of ETSI.  Indeed, Samsung retained Mr. Rosenbrock to, among other

20   things, opine on this very issue.  Mr. Rosenbrock's testimony does not involve any impermissible

21   legal conclusion.

22

23

24

25

26

27

28

## XII.   PETER ROSSI

### A.   Objections to Samsung's Cross-Examination Exhibits

**DX2683.**  DX2683 is a redacted version of email correspondence between Dr. Rossi and Financial Scholars Group, which assisted him in analyzing Dr. Sukumar's data.  Apple originally produced a redacted version of the email.  Pursuant to exchange of correspondence between counsel for the parties, Apple later produced an unredacted version of this document, which Samsung has marked as DX2682 and has also disclosed for cross examination of Dr. Rossi. Apple objects to Samsung's proposed use of the redacted version of the e-mail.  There is no valid reason for introduction of the redacted version, given that the full document was produced pursuant to Samsung's request.  The redacted document is not relevant given that Samsung has a copy of the fully unredacted e-mail to use in connection with Dr. Rossi's cross-examination. Introduction of the document at trial would be prejudicial to Apple and is likely to confuse the jury and waste time as the circumstances surrounding redaction and production would need to be explained.

**DX2659.**  DX2659 is the Declaration of Terry L. Musika, CPA in Support of Apple's Opposition to Samsung's Motion to Strike Expert Testimony Based on Undisclosed Facts and Theories.  In contains no discussion of Dr. Rossi, his expert report, or Dr. Sukumar's survey, which is the subject matter of Dr. Rossi's expert rebuttal report.  Dr. Rossi has no personal knowledge or basis to testify about a declaration made by Mr. Musika.  Moreover, the document, which discusses licenses and royalty reports, is unrelated and irrelevant to the subject matter of Dr. Rossi's opinion, which concerns marketing research and consumer surveys, and does not address licenses.

### B.   Responses to Samsung's Objections to Apple's Direct Examination Exhibits

**PDX37.6.**  Samsung objects to PDX37.6 based on Fed. R. Evid. 402 and 403.  As PDX37.6 is a slide from Dr. Sukumar's survey and was shown to the survey respondents, Apple assumes that the only basis for Samsung's objection to the demonstrative is that it includes information about "Window Dividing," which relates to one of the patents Samsung is no longer pursuing against Apple.  While the Window Dividing patent was dropped from trial, it was part of

1   Dr. Sukumar's survey, which preceded dismissal of the claim..

2          The slide as a whole is relevant because Dr. Sukumar used the responses to the survey to

3   calculate the "market value of an attribute improvement" (MVAI) figures.  Samsung's damages

4   expert, Dr. O'Brien, relies on the MVAI in his report.  (Kolovos Decl. Ex. 10, O'Brien Report at

5   ¶ 58.)  The presence of the Window Dividing feature is relevant because survey respondents were

6   asked about it as part of the survey, and that feature was included among the accused features that

7   were still in the case when survey respondents were asked to make product choices.  As part of

8   his opinion regarding the reliability of Dr. Sukumar's survey, Dr. Rossi discusses the information

9   respondents had to process on each slide and the time respondents spent on each slide.  (Kolovos

10  Decl. Ex. 11, Rossi Expert Report at 6-8).  Dr. Rossi does not intend to testify about the accuracy

11  of the description of the Window Dividing feature or the results of the survey regarding that

12  feature, and thus there will be no undue prejudice or confusion from the presence of the

13  information on the slide.

14          Nonetheless, to resolve what Apple assumes to be Samsung's objection to PDX37.6,

15  Apple is willing to redact the substantive information regarding the Window Dividing feature,

16  while preserving the placement and amount of text that survey respondents saw when taking the

17  survey, as depicted in the attached revised demonstrative, R/PDX37.6.  (Kolovos Decl. Ex. 12,

18  Redacted Slide R/PDX37.6.)

19

20

21

22

23

24

25

26

27

28

XIII.   **BORIS TEKSLER**

A.   **Objections to Samsung's Cross-Examination Exhibits**

*DX588.*  DX588 is inadmissible under Federal Rules of Evidence 408 and 802.  DX588 is a Samsung presentation from November 2010, three months after Judge Grewal found that Apple provided "Samsung with a comprehensive summary of its specific patent infringement claims against specific Samsung products," and over two months after Samsung concluded "there is a reasonable likelihood of future patent litigation between Samsung and Apple unless a business resolution can be reached."  (Dkt. No. 1321 at 16 (emphasis in original)).  Further, the Court has already determined that a similar document that Samsung presented to Apple three months *earlier* than DX588 comprised confidential settlement negotiations, and was therefore inadmissible pursuant to Rule 408.  (Dkt. No. 1774 at 7-8).  That ruling applies with equal force here.

Moreover, DX588 expressly states that it is "For Settlement Purpose Only," and refers to specific proposed payment amounts and license terms.  (DX588 at 5).  Rule 408 bars use of DX588 to show the amount of damages or liability on Samsung's claims.  Moreover, DX588 is not relevant to any other issue, and even if it were, any probative value would be substantially outweighed by the danger of unfair prejudice and jury confusion.  In particular, the jury may improperly use DX588 as evidence of the amount of damages or the existence of liability, which is expressly barred under the Rule.  *See Cornell University v. Hewlett-Packard Co.*, 2008 WL 2223122, *1 (N.D.N.Y. 2008) (excluding evidence of patentee's license offers to Hewlett-Packard and Intel under Rules 408 and 402) (Federal Circuit Judge Rader, sitting by designation).

B.   **Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

*PX79.*  Samsung has objected to PX79, a letter dated April 30, 2012, from Mr. Teksler of Apple to Mr Seongwoo Kim of Samsung.  In PX79, Mr. Teksler responds to several points raised in the parties' post-litigation correspondence, and specifically sets forth Apple's offer for a license to its FRAND patent portfolio – which offer was expressly contingent on receiving reciprocal terms from Samsung.  Samsung has objected to PX79 on the grounds that it includes potentially prejudicial content related to the parties' litigation in other jurisdictions, among other subjects.  In a good faith attempt to resolve Samsung's objection, last night (after the exchange of

1  objections) Apple proposed to submit a replacement version of PX79, redacting the subject matter

2  of concern to Samsung.  Samsung counsel has not responded.  Given Apple's offer, Samsung

3  cannot now be heard to object to PX79 on the grounds that it has articulated.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **XIV.   MICHAEL WALKER**

2        **A.       Objections to Samsung's Cross-Examination Exhibits**

3        ***SDX3916.03.***  Aside from its title, Samsung's proposed slide SDX3916.03 is ***identical*** to

4    slide 140, which the Court excluded from Samsung's opening slides because it addressed "Apple

5    patents ... not asserted in this litigation" and thus was "inadmissible under Rule 403" as "likely to

6    cause undue confusion for the jury and to waste time."  (Dkt. 1456 at 4 (slide 140).)  Samsung's

7    attempt to recycle this excluded slide and present it to the jury is shown below:

8        Slide 140:



17    SDX3916.03:



27        Altering the title changes nothing.  SDX3916.03 remains inadmissible on these same

28    grounds.

**DX599.**  DX599 is an article that purports to "take an empirical look at the timing of IPR disclosures within standard setting organizations."  (DX599 at 1.)  Like SDX3916.3, DX599 is inadmissible under Rule 403 because it addresses the disclosure of "patents ... not asserted in this litigation" and is "likely to cause undue confusion for the jury and to waste time."  (Dkt. 1456 at 4.)  In addition, the article concerns disclosure practices that are entirely irrelevant to the UMTS standard (3G) and the issues in the case.  The article compares the disclosure practices "between the older generation mobile telecom standard (2G standard) with newer generations of that standard (3G and 4G)."  (DX599 at 6.)  As the Court has held, exhibits that "involve[] different parties, different patents, and the setting of different industry-wide standards than the current case" are "of limited relevance and are likely to waste time and confuse the jury."  (Dkt. No. 1749 at 4.)  The proposed exhibit has particularly potential to confuse the jury and waste time here because generalized, aggregated data about disclosure practices has no relevance to the specific disclosure issues in this case, where Apple is contending that Samsung knowingly failed to timely disclose patents that it believed might cover technologies that Samsung had proposed for standardization.

In addition, DX599 is inadmissible hearsay under Rule 802, and does not fall within an exception to that Rule.  Samsung is offering the author's out-of-court statements for their truth without giving Apple an opportunity to cross examine her to test those conclusions.

**B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

***Deposition Designation of Karl Heinz Rosenbrock.***  For the reasons set forth above (Section XI), the designated testimony of Samsung's ETSI expert Karl Heinz Rosenbrock is admissible and not unduly prejudicial or likely to mislead the jury.  Dr. Walker may properly testify about Mr. Rosenbrock's designated deposition testimony, which falls squarely within the scope of Dr. Walker's report.  Indeed, that testimony consists of Mr. Rosenbrock's agreement with Dr. Walker's conclusion that Samsung did not disclose its patent applications before the standard was frozen.  (*See supra* Section XI.)

There is no merit to Samsung's contention that Dr. Walker should – or even could – have disclosed in his opening report dated *March 22, 2012*, that he would later testify regarding

1   testimony and opinions from Samsung's rebuttal ETSI expert.  The relevant testimony of Mr.

2   Rosenbrock did not occur until a deposition on *April 20, 2012*, almost a month *after* Dr. Walker

3   submitted his report.

4         ***PDX45.6.***  Samsung has objected to this demonstrative – a timeline showing Samsung's

5   untimely disclosure of the '941 patent family to ETSI – on a variety of bases, such as that it lacks

6   foundation and is misleading, incorrect, and incomplete.  Despite requests, Samsung has failed to

7   provide a more specific basis for its objections.

8         In any event, Samsung's half-hearted challenge to this demonstrative is without merit.

9   The demonstrative identifies dates from a chronology that is fully set forth in Dr. Walker's expert

10   report.  Further, in the designated deposition testimony that Samsung seeks to exclude, Mr.

11   Rosenbrock conceded that he had no dispute with Dr. Walker's timelines:

12       Q.  You are not disputing Mr. Walker's summary which shows that Samsung
    made its disclosures after the standards were frozen, correct?

13

14       A.  I have -- I have no instances or no hints that these are wrong.  I have not heard
    anything from Samsung, but -- but I -- I simply assume that this is correct.

15   (Rosenbrock Dep. Tr. at 79:19-21; 79:24-80:02.)

16

17

18

19

20

21

22

23

24

25

26

27

28

## XV.   BRYAN AGNETTA

### A.   Responses to Samsung's Objections to Apple's Deposition Designations

Samsung's objections should be overruled because Bryan Agnetta's testimony is proper rebuttal testimony against Mr. Gray's trial testimony and demonstratives.

Apple offers Dr. Agnetta, a named inventor of the Flynt '632 patent, on rebuttal to counter Mr. Gray's breezy and conclusory assertion that the Flynt '632 patent anticipates the '163 patent. (Hung Decl. Ex. 1 at 2919:14-16.)  Mr. Gray never specifically addressed limitation (h), which requires "enlarging and translating the structured electronic document."   The closest testimony comes in passing, when Mr. Gray says "[o]nce the tile has been enlarged and centered, the adjacent tiles around it are available, the user then has the opportunity to select those adjacent tiles, which that tile will now be centered and enlarged as well." (*Id.* at 2919:3-8.)  Dr. Agnetta's testimony demonstrates that the Flynt patent cannot meet limitation (h) because "only the active tile . . . is enlarged," not the whole field of tiles that allegedly comprise a "structured electronic document." (*See* Agnetta Depo. Tr. at 54:01-54:03; *see also id.* at 56:02-56:07 (disagreeing with contention that "the enlargement of a component within the whole results in the enlargement of the whole").)  Thus, Dr. Agnetta's testimony shows the Flynt '632 patent cannot anticipate the '163 patent and properly rebuts Mr. Gray's testimony.

Samsung's untimeliness objection ignores that Samsung itself previously designated Dr. Agnetta's testimony for trial.  But Samsung abruptly withdrew that designation yesterday when its objections to Apple's counter-designations were overruled.  (Hung Decl. Ex. 2.)  Samsung took the deposition of Dr. Agnetta for purposes of showing an alleged conception date.  During Dr. Agnetta's deposition, he provided testimony that directly contradicted Mr. Gray's interpretation of the patent.  After Samsung designated portions of Dr. Agnetta's testimony for trial, Apple provided limited counter-designations of approximately two minutes.  Samsung objected that Apple's counter-designation should be excluded as "expert testimony."  The Court overruled those objections.  (Dkt. No. 1749 at 5-6.)

Apparently recognizing now that the Agnetta testimony that Samsung had failed to exclude would directly contradict Mr. Gray's opinion, Samsung dropped Dr. Agnetta as a

1   witness.  Apple's "new" designations include previously disclosed designations by Apple and

2   Samsung during their prior exchange and briefing.  (*See* Hung Decl. Ex. 2; Hung Decl. Ex. 3;

3   Dkt. No. 1731 at 15-16; Dkt. No. 1749 at 5-6.)

4        Finally, Apple 's designations are necessary for clarity.  Mr. Gray consistently referred to

5   the Flynt '632 patent as the "Agnetta Patent" throughout his trial testimony, even though Dr.

6   Agnetta was not the first inventor named on the patent.  (Hung Decl. Ex. 1 at 2917:3-2919:16.)

7   Mr. Gray's demonstratives further included a picture of Dr. Agnetta.  (Hung Decl. Ex. 4.)  Absent

8   Apple's two-minute rebuttal, Samsung's multiple references to Dr. Agnetta would mislead the

9   jury that Dr. Agnetta agreed with Samsung's positions, even though his deposition testimony

10  clearly indicates otherwise.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**XVI.   RAVIN BALAKRISHNAN**

2

     **A.**     **Objections to Samsung's Cross-Examination Exhibits**

3

     ***DX2652.***  This is a decision by the PTO granting an ex parte request for reexamination of

4

the '381 patent.  It is both irrelevant and unduly prejudicial.  The references used as the basis for

5

this decision – WO 03/081458, US 7,786,975, and WO 01/029702 (*see* DX2652.004) – are not

6

before the jury for any purpose.

7

     "Courts routinely refuse to permit evidence of reexamination proceedings to be introduced

8

before a jury, fearing that it will confuse, distract, mislead, and unfairly prejudice the jury."

9

*Minemyer v. B-Roc Representatives, Inc.*, No. 07-cv-1763, 2012 WL 346621, at *4 (N.D. Ill. Feb.

10

2, 2012) (collecting cases).  In *Oracle Am., Inc. v. Google, Inc.*, Judge Alsup noted, "To be sure,

11

the initiation of reexamination and the customary first office action prove little," and went on to

12

exclude such evidence because "the probative value is outweighed by the time and confusion that

13

would be involved."  No. 10-cv-3561, 2012 WL 1189898, at *3 (N.D. Cal. Jan. 4, 2012) (finding

14

only completed reexamination determinations relevant); *see also Hoechst Celanese Corp. v. BP*

15

*Chem. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("We take notice that the grant by the examiner

16

of a request for reexamination is not probative of unpatentability.  The grant of a request for

17

reexamination . . . does not establish a likelihood of patent invalidity").

18

     Nor is the prohibition on such evidence limited to the question of validity.  "Given the fact

19

that office actions are the norm and do not remotely presage the outcome of the patent process,

20

evidence of the kind involved here will not be helpful to the jury in evaluating the question of

21

willfulness.  Quite the contrary."  *Minemyer*, 2012 WL 346621, at *5; *Presidio Components Inc.*

22

*v. Am. Tech. Ceramics Corp.*, No. 08-cv-335, 2009 WL 3822694, at *2 (S.D. Cal. Nov. 13, 2009)

23

("Moreover, even if the reexamination proceedings are somehow relevant on the issues of

24

obviousness or willfulness, they are nevertheless unfairly prejudicial").  This is especially true

25

where, as here, there has been no testimony that these references were relied on as a defense to

26

willfulness.  Accordingly, this exhibit should be excluded under Rules 402 and 403 of the Federal

27

Rules of Evidence.

28

     ***DX2653.***  DX2653, a 2003 paper that discusses the DiamondTouch hardware, was not

1    disclosed in Samsung's Invalidity Contentions or expert reports and was not produced during

2    discovery.  It does not describe any software at issue in this case.  Judge Grewal previously struck

3    several articles about the DiamondTouch system that were not listed in Samsung's Invalidity

4    Contentions from the expert report of Mr. Stephen Gray, Samsung's expert.  (*See* Dkt. No. 1144

5    at 3 (striking seven of 10 references); Dkt. No. 939-4, Ex. 2 (highlighting challenged references

6    and passages in Gray Report).)  DX2653 was not identified until the penultimate day *of trial*.

7    Moreover, DX2653 would effect an end-run around the 200 exhibit limit.  For these reasons, this

8    exhibit should be excluded.

9        **B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

10       ***PX63.***  PX63 is the source code written by Bas Ording, the inventor of the'381 patent.  It

11   bears a "Date Modified" of February 11, 2005.  (PX63.1.)  Despite the fact that Samsung has

12   relied on similar software application files as evidence of when that software existed, it now seeks

13   to exclude PX 63 on the false premise that it was not discussed in Dr. Balakrishnan's expert

14   report or depositions.  But Dr. Balakrishnan testified about this source code during the

15   preliminary injunction phase of this case:

16       Q. Okay. Did you look at any of the prototypes or code that Mr. Ording generated
         for any of the prototypes that he says relate to the technology in the '381 patent?
17

18       . . .

19       THE WITNESS:  I did not look at that code.  I assume you mean the director code
         that Mr. Ording produced at his deposition or discussed at his deposition, I did not
20       look at that code prior to writing the declaration.

21       MR. JOHNSON: Q. Have you looked at it since then?

22       A. Yes, I have, or portions of that code.

23   (Hung Decl. Ex. 5 at 175:20-176:7.)

24       Subsequently, in his list of materials considered when preparing his reports, Dr.

25   Balakrishnan identified "The Deposition Transcript and Exhibits of Bas Ording" and "Apple

26   source code."  (Hung Decl. Ex. 6 ¶ 5 and Ex. 2.)  He also noted in his report that he "ha[d]

27   reviewed portions of the transcript of Bas Ording, the named inventor of the '381 patent, and

28   underst[oo]d that Mr. Ording conceived of his invention in early February 2005, and reduced it to

1    practice in a prototype by February 11, 2005." (Hung Decl. Ex. 6 at ¶ 32.)

2          When deposed again after submission of his expert report, Dr. Balakrishnan was only

3    asked whether he had reviewed the hardware prototype. (Hung Decl. Ex. 7 at 147:3-5.) He was

4    not questioned about the source code. Having been put on notice that Dr. Balakrishnan had

5    reviewed and considered this code, Samsung cannot now complain about its failure to ask about it

6    at Dr. Balakrishnan's deposition.

7          **PX210.** This is a compilation of photos of the DiamondTouch device. It was admitted

8    into evidence without objection from Samsung. (Hung Decl. Ex. 1 at 2344:3-9.) Samsung claims

9    that the photos are inaccurate and prejudicial, yet instead of having the device set up for use in

10   court, Samsung has instead opted to (1) keep the cornucopia of cables, components, and

11   attachments hidden from sight in a box every time it has been asked to wheel the system into the

12   courtroom; (2) submit competing photos as evidence that conceals parts of the system, including

13   the separate computer and seat pads required to operate the table and projector (*see* Hung Decl.

14   Ex. 8); and (3) proffer misleading videos of the DiamondTouch in operation that focus

15   exclusively on the projected image without displaying the system hardware. To ensure that the

16   jury is provided with a balanced presentation of this system, Dr. Balakrishnan should be

17   permitted to use these photographs to discuss and explain the various hardware components to the

18   DiamondTouch system, including the touch table. Because the jury will not have assembly

19   instructions, these photographs and Dr. Balakrishnan's testimony will not be cumulative of the

20   unassembled physical exhibit. Moreover, any prejudice attributable to this device is of its own

21   making, and is certainly not attributable to photographs of it. *See*, *e.g.*, *United States v. Hankey*,

22   203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only

23   unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant

24   matter under Rule 403").

25

26

27

28

## XVII.  PETER BRESSLER

### A.    Objections to Samsung's Cross-Examination Exhibits

*5/31/12 & 6/1/12 ITC Hearing Transcripts for Peter Bressler.*  Mr. Bressler's ITC hearing testimony is directed to patents not asserted in this litigation.  Pursuant to the Court's August 14, 2012 Order (Dkt. No. 1749 at 1) excluding Dr. Van Dam's ITC hearing testimony and the Court's Order granting Samsung's motion *in limine* to exclude findings of parallel proceedings (Dkt. No. 1267 at 4), Mr. Bressler's ITC testimony should be excluded.

*Douglas Satzger Deposition Transcripts.*  Apple objects to Samsung's disclosure of Mr. Satzger's deposition transcripts as untimely.  These disclosures were served at 2:45 a.m., almost three hours past the deadline for the parties to exchange their HPOs to exhibit disclosures.  (Hung Decl. Ex. 22.)  Moreover, it appears that Samsung is improperly attempting to introduce Mr. Satzger's testimony during the cross-examination of Mr. Bressler, thereby avoiding calling Mr. Satzger as a witness, despite the fact that Mr. Satzger appears on Samsung's list of 20 will call witnesses (Dkt. 1332) and is under subpoena from Samsung and has cancelled an overseas business trip because Samsung insisted that he remain on call.  Mr. Satzger's deposition testimony is inadmissible hearsay, as he is not unavailable.

Finally, to the extent that Samsung argues that it intends to impeach Mr. Bressler with Mr. Satzger's deposition testimony, this Court has already held that a party may not impeach a witness with another deponent's testimony.  (*See* Dkt. No. 1720 at 2.)  Mr. Bressler did not rely on Mr. Satzger's testimony in forming his opinions.  (Hung Decl. Ex. 23.)  Pursuant to the Court's August 13, 2012 Order (Dkt. No. 1720) excluding 1) the deposition transcript of J.M. Yeo from the cross examination of Jin Soo Kim and 2) the deposition transcript of R. Anders from the cross examination of Itay Sherman, Mr. Satzger's deposition testimony should be excluded from the cross-examination of Mr. Bressler.

### B.    Responses to Samsung's Objections to Apple's Direct Examination Exhibits

*PDX26.89 & PDX26.93.*  As Samsung acknowledges, PDX26.89 and PDX26.93 are unaltered images excerpted from Mr. Bressler's rebuttal report.  Apple offers these demonstratives in support of Mr. Bressler's expected testimony in rebuttal to Mr. Sherman's

1    opinion testimony regarding the JP'638 patent (DX511).  Apple excerpted from and cited to the

2    rebuttal expert report to demonstrate that this expert opinion testimony was fully and timely

3    disclosed.  There is nothing misleading about these images because nothing obscures the images

4    of the patent, and the slides clearly indicate that the image is excerpted from Mr. Bressler's

5    rebuttal report.  The slides are not hearsay since the slides themselves are not offered for the truth

6    of the matter stated therein, but rather simply in aid of Mr. Bressler's live testimony in court.

7    Moreover, Samsung itself cross-examined Mr. Bressler using Mr. Bressler's expert report and

8    displayed images from his report during its earlier cross-examination.  (Hung Decl. Ex. 1 at

9    1106:20-1110:7.)

10       ***PDX26.99.***  As indicated on the slide, PDX26.99 is a demonstrative that contains an

11   unaltered image excerpted from Mr. Bressler's rebuttal expert report.  Samsung itself cross-

12   examined Mr. Bressler using Mr. Bressler's expert report and displayed images from his report

13   during the cross-examination.  (*Id.*)  Apple offers this demonstrative in rebuttal to Mr. Sherman's

14   testimony regarding functionality.  The design patent referenced in Mr. Bressler's rebuttal report

15   is from Mr. Sherman's former company Modu Ltd.—which Mr. Sherman testified about and

16   featured on his own demonstrative.  (Hung Decl. Ex. 1 at 2574:20-2575:14.)  The demonstrative

17   is directly related to rebuttal of Mr. Sherman's testimony that rounded corners, a full, flat front

18   face, and large, centered displays are design elements that are dictated by the function of a

19   smartphone.  This is merely a demonstrative exhibit, and Apple is not seeking to admit this

20   demonstrative.  Accordingly, it need not be on Apple's exhibit list.  Moreover, Samsung did not

21   move to strike Mr. Bressler's rebuttal report (Dkt. No. 934) and thus it could not have been

22   stricken by Judge Grewal's order. (Dkt. No. 1144.)

23

24

25

26

27

28

1   **XVIII. WON PYO HONG**

2       **A.      Responses to Samsung's Objections to Apple's Deposition Designations**

3           Apple has designated a very short excerpt from the April 19, 2012 testimony of Wong Pyo

4   Hong, a Samsung executive vice president.  The excerpt, which is just one minute and forty-eight

5   seconds long, consists entirely of his self-identification and the following question and answer

6   segment:

7           Q.      Now I'm -- based on your expertise and
        experience, isn't it true that, in order to be successful in the marketplace, a phone
8       has to have rounded corners?

9       THE WITNESS: Again, we need to be more specific.

10      Q. BY MR. McELHINNY: Okay.

11      A. What -- how much curvature will be called rounded shape or not rounded
        shape? And that's very ambiguous argument. So I cannot agree with you –
12

13      25 Q. BY MR. McELHINNY: All right.

14      A. -- by saying only that part.

15      Q. Let me try the opposite.  Isn't it true that a phone with sharp corners, pointed
        corners –

16      A. Go ahead.

17      Q. -- cannot be successfully used by consumers?

18      THE WITNESS: That's very -- very general statement. I cannot agree. Because
        one of Samsung phones which we launched had very sharp corner. And to my
19      judgment, it was relatively successful. So, again, depending on which market
        you're talking to, which market segment or age segment you are referring to, we
20      have totally different opinion or feedback. So that's very general statement.

21  (Hung Decl. Ex. 9.)

22          Samsung does not dispute that this excerpt is highly relevant.  Samsung complains only

23  that Apple allegedly identified the disclosures for this witness after the parties' deadline for doing

24  so (*i.e.,* at 10 a.m. two days before the witness is called).

25          Samsung's objection ignores the facts.  Apple first provided its disclosure for Mr. Hong

26  *eleven days ago* – on August 5, 2012.  (Hung Decl. Ex. 10.)  In response to Apple's disclosures

27  for Mr. Hong, Samsung reviewed Mr. Hong's deposition and *identified objections* on August 6,

28  2012, nineteen hours later.  (Hung Decl. Ex. 11.)  Samsung provided no counterdesignations for

1   the testimony above at that time.  (*Id.*)  Although Apple elected not to play this clip at that time to

2   save it for potential rebuttal, Apple did not withdraw this deposition designation for all purposes.

3          For this reason, Apple's identification is not untimely.  But even if it were, Samsung can

4   identify no prejudice from Apple's re-identification of this short deposition clip.  Samsung has

5   had ample time to consider this testimony, as it previously identified its related objections and

6   elected not to counterdesignate any portions.[2]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   ───────────────────
      [2]        Should the Court determine that Apple play this short 1:48 clip, Apple requests
24   that it be allowed to play similar testimony from Minhyouk Lee, Samsung's Vice President of
      Design.  Apple proposed to play the testimony of Mr. Hong in substitution for that of Mr. Lee,
25   which also was disclosed on August 5, 2012 (and objected to, but not counterdesignated on
      August 6, 2012).  Apple did identify Mr. Lee's testimony in accordance with the 10:00 a.m.
26   deadline.  Like Mr. Hong, Mr. Lee testified that "[y]ou can shape the corners [of a phone] in
      *thousands and tens of thousands* [of] different ways, which can differ or vary from a hardware
27   perspective or from a mechanical perspective as well, or even from design perspective."  (Hung
      Decl. Ex. 21 (emphasis added).)
28

1    **XIX.    SUSAN KARE**

2      **A.    Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

3      ***PDX14A.47-52.***  These slides depict icons found in the iPhone graphical user interface

4    and the D'305 patent against potential alternative icon designs, which were included in Dr. Kare's

5    rebuttal expert report.  The slides rebut Samsung's allegation that individual icon designs are

6    functional because they communicate to the user.  (Hung Decl. Ex. 1 at 1452:1-22.)  As such,

7    these slides are relevant to Apple's asserted design patent and trade dress rights and proper

8    subject matter for rebuttal.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XX.   KARAN SINGH

### A.   Objections to Samsung's Cross-Examination Exhibits

*DX2649.*  This document, a 2002 MERL patent titled Multi-User Touch Surface, was not listed in Samsung's Invalidity Contentions, or in any expert reports, and was not produced in discovery.  It does not describe any software that could run on a DiamondTouch system and the claims relate only to the hardware for a "touch-sensitive surface."  Judge Grewal previously struck from Mr. Gray's expert report several articles about the MERL system that were not listed in Samsung's Invalidity Contentions.  (*See* Dkt. No. 1144 at 3 (striking 7 of 10 references); Dkt. No. 939-4 at Exh. 2 (highlighting challenged references and passages in Gray Report).)  DX2649 differs from these stricken references only in that it (a) was not identified until the last day of trial; (b) does not even mention DiamondTouch software; and (c) would effect an end-run around the 200 exhibit limit.  Because this patent was not invented by Dr. Singh and he has not testified about it, it cannot be used for impeachment.  Any other statements in the patent, which plainly could not be offered at this late date as prior art against Apple's patents-in-suit, are hearsay.

### B.   Responses to Samsung's Objections to Apple's Direct Examination Exhibits

*PDX29.7-11, -15, -17, -19.*  Samsung objects that "Dr. Singh has not previously opined whether the Han of MultiTouch [sic] systems are 'integrated with the data processing system' and should not now be permitted to opine on this claim limitation. FRE 702, 703." (Hung Decl. Ex. 12.)  This objection is perplexing for several reasons.  PDX29 is Dr. Singh's demonstrative presentation from his direct testimony, in which he testified about the infringement of Apple's '915 and '163 patents by various Samsung products. The slides that Samsung objects to are explicitly concerned with *infringement* by Samsung devices, not *validity* in light of any alleged prior art.  Moreover, it is unclear why Samsung seems to believe that Dr. Singh opined on validity – an issue on which Samsung bears the burden of proof – in his direct testimony. This objection appears to be a misguided attempt by Samsung to anticipate potential rebuttal testimony from Dr. Singh and exclude it preemptively.

Even worse, Samsung's assertion about Dr. Singh's expressed opinions is false.  In his Validity Report, Dr. Singh wrote that "[t]he Han system does not have a 'touch-sensitive display

1   that is integrated with the device,'" and he cited support for that proposition. (Hung Decl. Ex. 13

2   at ¶ 221.)  Although claim 8 refers to a "data processing system" instead of a "device" as in claim

3   1, the Court has already ruled that "[o]ther than their preambles, claim 8 and claim 1 are

4   substantially the same." (Dkt. No. 1650 at 2.) Mr. Gray's Invalidity Report drew no distinction

5   between the method and machine-readable-storage-medium versions of this limitation because

6   there is not a distinction to draw.  (*See* Hung Decl. Ex. 14 at ¶ 130 (providing same analysis for

7   elements 1[a] and 8[a] of '915 patent.)  This objection should be overruled.

8       ***DX546.***  DX546 is an article by Dr. Bederson that mentions "semantic zooming."

9   Because the article was not listed in any Samsung expert report and apparently was being offered

10  to attempt to invalidate Apple's '163 patent, Apple filed a High Priority Objection.  The Court

11  overruled that objection because Dr. Bederson was nominally a fact witness.  (Dkt. No. 1690 at 4)

12  Bederson, an expert witness in another patent case on behalf of an Apple competitor, was paid

13  $450 per hour for his services as a "fact witness" in this case. (Hung Decl. Ex. 1 at 2229:11.)  Dr.

14  Bederson did his best to act as an expert witness against Apple, relying in part on DX 546.  Mr.

15  Gray, Samsung's expert, then relied on Mr. Bederson's testimony and referred to "semantic

16  zooming" – a term which does not appear in Gray's Invalidity Expert Report.  Samsung now

17  seeks to block Dr. Singh, in Apple's rebuttal case, from discussing the article, on the theory that it

18  was not addressed in his Invalidity Rebuttal Report.  Dr. Singh, in his Rebuttal Report, could not

19  have countered a reference and a theory that Dr. Gray hadn't mentioned in his opening report.

20  Dr. Singh's expert reports expressly reserved the right to respond to new arguments.  As a matter

21  of fundamental fairness, Dr. Singh should be permitted to respond to Samsung's new argument

22  and to rebut the fanciful notion that "semantic zooming" is the same as "enlarging and

23  translating" a document.  The Court should either permit Dr. Singh's rebuttal or strike Samsung's

24  testimony on the subject of "semantic zooming" and exclude DX 546.

25

26

27

28

1   **XXI.   CHRISTOPHER STRINGER**

2         **A.      Objections to Samsung's Cross-Examination Exhibits**

3         **2/9/2012 Deposition (ITC) of Douglas Satzger.**  Apple objects to Samsung's disclosure

4   of Mr. Satzger's deposition transcripts as untimely.  These disclosures were served at 1:11AM,

5   over an hour past the deadline for the parties to exchange their HPOs to exhibit disclosures.

6   (Hung Decl. Ex. 15.)  Moreover, it appears that Samsung is improperly attempting to introduce

7   Mr. Satzger's testimony during the cross-examination of Mr. Stringer, thereby avoiding calling

8   Mr. Satzger as a witness.  This is despite the fact that Mr. Satzger appears on Samsung's list of 20

9   will call witnesses (Dkt. No. 1332) and that he is under subpoena from Samsung as a local

10  resident and has cancelled an overseas business trip because Samsung insisted that he remain on

11  call.  Mr. Satzger's deposition testimony is inadmissible hearsay, as he is not unavailable.

12  Furthermore, to the extent that Samsung argues that it intends to impeach Mr. Stringer with Mr.

13  Satzger's deposition testimony, this Court has already held that a party may not impeach a

14  witness with another deponent's testimony.  Pursuant to the Court's August 13, 2012 Order (Dkt.

15  No. 1720) excluding (1) the deposition transcript of J.M. Yeo from the cross-examination of Jin

16  Soo Kim and (2) the deposition transcript of R. Anders from the cross-examination of Itay

17  Sherman, Mr. Satzger's deposition testimony should be excluded from the cross-examination of

18  Mr. Stringer.

19        **B.      Responses to Samsung's Objections to Apple's Direct Examination Exhibits**

20        ***PX2319.***  This document is a proper rebuttal exhibit because it addresses functionality

21  issues relating to costs of materials and manufacturing that were raised by Samsung in its

22  defensive case.  As the Court previously instructed, exhibits for a party's rebuttal case do not

23  count against the 200 limit.  (Hung Decl. Ex. 16 at 72:8-16.)  Should the Court find it necessary,

24  Apple will withdraw one of its 200 exhibits to accommodate this rebuttal exhibit.  Moreover,

25  Apple specifically disclosed the factual assertion that its designs are more costly to manufacture,

26  not less, in response to Samsung's interrogatory No. 68, which did not call for individual

27  documents.  (Hung Decl. Ex. 17 at 61-65.)  Unlike contention interrogatories seeking disclosure

28  of specific prior references, Apple is not limited by Samsung's interrogatory no.68 to a list of

APPLE'S OBJECTIONS AND RESPONSES TO OBJECTIONS
CASE NO. 11-CV-01846-LHK (PSG)                                                                    39
sf-3183710

1    specific documents, and PX2319 is directly related to the specific factual contention that was

2    contained in the interrogatory response.

## XXII.   JUNGMIN YEO

### A.      Responses to Samsung's Objections to Apple's Deposition Designations

The entirety of Apple's two-minute deposition designation for Ms. Yeo appears below:

Q: Good morning, Ms. Yeo.

Q: Did you join Samsung directly from SADI?

A: I graduated in 2008, and I joined Samsung in 2008.

Q: So let me ask it this way: As an industrial designer at Samsung, is it your testimony that there is only one possible tablet design for a thin tablet computer?

A: No.

Q: And is it your testimony as an industrial designer at amsung that there's only one possible design for a tablet computer that is easy to use by the consumer?

A: No, I haven't said that.

Q: And is it your testimony as an industrial designer at Samsung that there's only one possible design for a tablet computer that is easy to manufacture?

A: No, I haven't said so.

Q: And is it your testimony as an industrial designer at Samsung that there's only one possible design for a tablet computer that is acceptable to consumers?

A: No.

(Hung Decl. Ex. 18.)  Samsung objects only to the very last question and answer above  – *i.e.,*

Ms. Yeo's confirmation that there is not "only one possible design for a tablet computer that is

acceptable to consumers" – on the basis that Ms. Yeo allegedly lacks foundation and is offering

improper opinion testimony.

This is incorrect – Ms. Yeo is certainly qualified to offer lay testimony on this issue.  As

she testified at her deposition, Ms. Yeo is a Samsung industrial designer with four years

experience.  She also has worked on no fewer than seven Samsung devices (*e.g.,* the Galaxy Ace,

Galaxy Tab 7.0, Galaxy Tab 8.9, Galaxy Tab 8.9, Galaxy Tab 7.0 Plus, Galaxy Tab 10.1, and

Galaxy Nexus S (13:5-7, 16:9-11, 23:21-25:2) (Hung Decl. Ex. 19.)

1

2

3     Dated: August 16, 2012                    MORRISON & FOERSTER LLP

4

5                                               By:   /s/  Michael A. Jacobs
                                                      Michael A. Jacobs
6
                                                      Attorneys for Plaintiff
7                                                     APPLE INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28