# Exhibit 1

```
                   UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF CALIFORNIA

                        SAN JOSE DIVISION



   APPLE INC., A CALIFORNIA    ) C-11-01846 LHK
   CORPORATION,                )
                               ) SAN JOSE, CALIFORNIA
              PLAINTIFF,       )
                               ) JULY 30, 2012
         VS.                   )
                               ) VOLUME 1
   SAMSUNG ELECTRONICS CO.,    )
   LTD., A KOREAN BUSINESS     ) PAGES 1-282
   ENTITY; SAMSUNG             )
   ELECTRONICS AMERICA,        )
   INC., A NEW YORK            )
   CORPORATION; SAMSUNG        )
   TELECOMMUNICATIONS          )
   AMERICA, LLC, A DELAWARE    )
   LIMITED LIABILITY           )
   COMPANY,                    )
                               )
              DEFENDANTS.      )
   _____

             TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE LUCY H. KOH
            UNITED STATES DISTRICT JUDGE



                APPEARANCES ON NEXT PAGE



   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                       CERTIFICATE NUMBER 9595
```

1    DECEPTIVE; ISN'T THAT TRUE, SIR?
2    A    NO.  IT WAS MY UNDERSTANDING THAT THE
3    MEASUREMENT WAS DIFFERENT THAT YOU'RE DESCRIBING.
4            MS. KREVANS:  YOUR HONOR, MAY I ASK, FOR
5    COMPLETENESS, THAT I BE PERMITTED TO READ AN
6    ADDITIONAL PORTION OF THE TESTIMONY?  THIS IS FROM
7    THE ITC TRIAL.
8            THE COURT:  NO.  YOU'LL HAVE AN
9    OPPORTUNITY IN REDIRECT.
10   BY MR. VERHOEVEN:
11   Q    NOW, I WANT TO SWITCH TO TALKING ABOUT THE
12   DESIGN PATENTS, '087 AND '677 MORE SPECIFICALLY,
13   OKAY?
14   A    YES.
15   Q    WHEN YOU PREPARED YOUR OPINIONS WITH RESPECT
16   TO THOSE DESIGN PATENTS, YOU WERE ASKED TO APPLY
17   CERTAIN PRINCIPALS OR RULES OF THE ROAD FOR YOUR
18   ANALYSIS BY THE ATTORNEYS; CORRECT?
19   A    YES.
20   Q    AND IF WE COULD JUST GO TO, MR. BRESSLER, YOUR
21   OPENING EXPERT REPORT DATED MARCH 22, 2012 AT
22   PARAGRAPH 21.  I THINK THAT'S IN YOUR BINDER IF
23   YOU'D LIKE TO LOOK AT IT.  WE'RE GOING TO PUT IT ON
24   THE SCREEN AS WELL.
25   A    COULD YOU TELL ME WHERE IT WAS IN MY BINDER,

1    PLEASE.
2
3              MR. VERHOEVEN:  IF I COULD APPROACH, YOUR
4    HONOR?
5              THE COURT:  GO AHEAD, PLEASE.
6              MR. VERHOEVEN:  THANK YOU.
7              YOU HAVE MY BINDER, SO -- THERE SHOULD BE
8    AN EXHIBIT IN THERE.
9              THE WITNESS:  THANK YOU.
10             MR. VERHOEVEN:  SURE.
11             THE WITNESS:  AND WHAT PAGE WAS THIS
12   AGAIN, PLEASE?
13   BY MR. VERHOEVEN:
14   Q    IT'S PARAGRAPH 21, SIR.  ARE YOU THERE?
15   A    YES.
16   Q    OKAY.  SO OBVIOUSLY YOU'RE NOT A LAWYER;
17   RIGHT?
18   A    THAT'S CORRECT.
19   Q    BUT YOU WERE GIVEN, BY THE LAWYERS, CERTAIN
20   PRINCIPLES THEY ASKED YOU TO APPLY IN CONDUCTING
21   YOUR ANALYSIS; CORRECT?
22   A    YES.
23   Q    AND THIS WAS IN THE PART OF YOUR REPORT WHERE
24   YOU DELINEATE WHAT THOSE PRINCIPLES WERE; CORRECT?
25   "I, THEREFORE, HAVE BEEN ASKED TO APPLY THE

1   FOLLOWING PRINCIPLES TO MY ANALYSIS OF
2   INFRINGEMENT."
3   A    YES.
4   Q    AND THEN THIS SECTION 4 GOES ON FOR A FEW
5   PARAGRAPHS; CORRECT?
6   A    YES.
7   Q    I'D LIKE TO DIRECT YOUR ATTENTION TO PARAGRAPH
8   25.  ARE YOU THERE?
9   A    I AM.
10  Q    YOU SEE -- THIS IS YOUR REPORT; RIGHT?
11  A    IT IS.
12  Q    THESE ARE YOUR WORDS?
13  A    I BELIEVE IT IS.
14  Q    "MOREOVER, I UNDERSTAND THAT THE HYPOTHETICAL
15  ORDINARY OBSERVER IS DEEMED TO BE 'CONVERSANT WITH
16  PRIOR ART' THAT MAY BE RELEVANT TO INFRINGEMENT."
17       DO YOU SEE THAT?
18  A    YES.
19  Q    AND YOU TESTIFIED ABOUT THAT ON DIRECT
20  EXAMINATION AS WELL; CORRECT?
21  A    YES.
22  Q    AND THEN IT CONTINUES IN THIS PARAGRAPH, DOWN
23  AT THE BOTTOM, "THUS, WHEN THE CLAIMED DESIGN AND
24  THE ACCUSED PRODUCT APPEAR SIMILAR, A PROPER
25  INFRINGEMENT ANALYSIS CONSIDERS THE PRIOR ART IN

```
 1    COMPARING THE CLAIMED DESIGN AND THE DESIGN OF THE
 2    ACCUSED PRODUCT."
 3            SO THAT WAS A PRINCIPLE YOU APPLIED;
 4    RIGHT?
 5    A    YES.
 6    Q    AND THEN IF WE GO TO THE SECOND SENTENCE HERE,
 7    AND I'LL JUST READ IT INTO THE RECORD, "FOR
 8    EXAMPLE, WHEN THE DIFFERENCES BETWEEN THE CLAIMED
 9    AND ACCUSED DESIGN ARE VIEWED IN LIGHT OF THE PRIOR
10    ART, THE ATTENTION OF THE HYPOTHETICAL ORDINARY
11    OBSERVER WILL BE DRAWN TO THOSE ASPECTS OF THE
12    CLAIMED DESIGN THAT DIFFER FROM THE PRIOR ART."
13            DO YOU SEE THAT?
14    A    YES, I DO.
15    Q    AND THAT'S -- THAT'S -- YOU APPLIED THOSE
16    PRINCIPLES IN CONDUCTING YOUR ANALYSIS; CORRECT?
17    A    I DID.
18    Q    SO THE IDEA IS WHEN YOU'RE APPLYING THIS
19    ANALYSIS, YOU LOOK AT WHAT'S IN THE PRIOR ART AND
20    YOU LOOK AT WHAT'S DIFFERENT IN THE DESIGN PATENT
21    OVER THE PRIOR ART AND THEN YOU LOOK AT THOSE
22    DIFFERENCES WHEN YOU'RE LOOKING AT THE ACCUSED
23    PRODUCT.  FAIR?
24    A    I BELIEVE SO.
25    Q    OKAY.  AND THAT'S THE ANALYSIS THAT SHOULD BE
```

1   APPLIED; CORRECT?
2   A    I BELIEVE YOU THEN COMPARE THE ACCUSED PRODUCT
3   TO THE DESIGN, NOTING WHAT THE DIFFERENCES WERE
4   THAT YOU FOUND.
5   Q    EXACTLY.  AND THAT'S THE APPROPRIATE WAY TO DO
6   THE ANALYSIS?
7   A    YES.
8   Q    OKAY.  NOW, LET'S GO TO JX 1041 AND LET'S
9   DISPLAY FIGURE 43.  LET'S JUST HIGHLIGHT, PULL THIS
10  OUT.
11           THIS IS THE '087 DESIGN PATENT, FRONT
12  VIEW; CORRECT?
13  A    THAT IS A VIEW OF IT, YES.
14  Q    THAT'S THE FRONT VIEW; RIGHT?
15  A    YES, OF ONE OF THE VERSIONS.
16  Q    OKAY.  SO I'M GOING TO ASK -- I'M GOING TO ASK
17  YOU SOME QUESTIONS ABOUT THIS '087 DESIGN PATENT.
18           ARE YOU WITH ME?
19  A    I AM.
20  Q    SO TAKING YOUR PRINCIPLE WHERE YOU LOOK AT THE
21  PRIOR ART IN CONNECTION WITH YOUR INFRINGEMENT
22  ANALYSIS, LET'S LOOK AT THE PRIOR ART.
23           LET'S GO TO DX 511.  AND THIS IS A PIECE
24  OF PRIOR ART THAT YOU REVIEWED; CORRECT?
25  A    IT IS.

1    Q    THE PURPOSE OF ICONS IS TO COMMUNICATE
2    INFORMATION TO THE USER; RIGHT?
3    A    YES.
4    Q    ICONS ARE SORT OF LIKE TRAFFIC SIGNS?
5    A    YES.
6    Q    THEY HELP USERS MAKE CHOICES AMONG OPTIONS?
7    A    YES.
8    Q    ICONS CAN ALSO BE USED ON TOUCHSCREENS WHERE
9    YOU DON'T HAVE A LOT OF SPACE TO SAVE SPACE; RIGHT?
10   A    THAT IS AN OPTION.  THERE ARE -- AGAIN,
11   THERE'S -- THERE ARE NO HARD AND FAST RULES.
12   Q    ICONS ARE ALSO USEFUL BECAUSE IT CAN BE
13   UNDERSTOOD BY DIFFERENT PEOPLE WHO SPEAK DIFFERENT
14   LANGUAGES; RIGHT?
15   A    AS OPPOSED TO TEXT, SOMETIMES A PICTURE IS
16   UNIVERSAL.
17   Q    I CAN LOOK AT THIS CLOCK AND IT DOESN'T MATTER
18   WHAT COUNTRY I'M FROM, I DON'T HAVE TO SPEAK
19   ENGLISH, I CAN SEE THE CLOCK AND THAT WOULD
20   COMMUNICATE TO ME AS A USER THAT IF I HIT THAT
21   ICON, I'LL LAUNCH THE CLOCK APPLICATION; RIGHT?
22   A    YES.
23   Q    SAME THING WITH THIS ICONIC PHONE SYMBOL FROM,
24   WHAT DID YOU SAY, THE '50S, '40S?
25   A    '38.

1   A     YES.  I CO-FOUNDED A COMPANY CALLED ZUMOBI IN
2   SEATTLE THAT I'M CURRENTLY CHIEF SCIENTIST AT.  WE
3   MAKE MOBILE APPS AND ADS, ADVERTISEMENTS.
4   Q     YOU'RE HERE TO TESTIFY AS A FACT WITNESS.  DO
5   YOU UNDERSTAND THAT?
6   A     YES.
7   Q     AND HAVE YOU IN ANY WAY BEEN COMPENSATED FOR
8   YOUR TIME IN THE CASE?
9   A     YES.  NOT FOR MY TIME HERE TODAY, BUT FOR MY
10  TIME PREPARING, REVIEWING CODE, ATTENDING MY
11  DEPOSITION.  I GET PAID $450 AN HOUR, MY STANDARD
12  CONSULTING RATE, AND I'VE WORKED ABOUT 100 HOURS SO
13  FAR.
14  Q     OKAY.  LET'S SHIFT GEARS.  LET'S TALK ABOUT
15  YOUR SOFTWARE PROGRAM.  IT'S CALLED -- WHAT'S THE
16  NAME OF IT?
17  A     LAUNCHTILE.
18  Q     IN A SENTENCE OR TWO, PLEASE, DOCTOR, TELL US
19  WHAT LAUNCHTILE IS.
20  A     IT'S A MOBILE GRAPHICAL USER INTERFACE
21  APPLICATION TO LET PEOPLE ACCESS A LOT OF
22  INFORMATION ON A MOBILE DEVICE.
23  Q     OKAY. WE'RE GOING TO LOOK AT SOME VIDEO OF
24  THE DEVICE ITSELF.  LET'S GIVE A LITTLE BIT OF
25  BACKGROUND FIRST.  OKAY?  ARE YOU WITH ME?

```
1    DEFENDANTS, HAVING BEEN PREVIOUSLY SWORN, WAS
2    FURTHER EXAMINED AND TESTIFIED AS FOLLOWS:
3              MR. JACOBS:  YOUR HONOR, WE MOVE
4    PLAINTIFF'S EXHIBIT NUMBER 210 INTO EVIDENCE.  YOU
5    DON'T HAVE A COPY OF THIS YESTERDAY.  I WILL HAND
6    UP MINE.  IT IS THE PHOTOGRAPHS OF THE DIAMONDTOUCH
7    SYSTEM THAT WE TOOK LAST NIGHT.
8              THE COURT:  ALL RIGHT.  ANY OBJECTION?
9              MR. JOHNSON:  NO, YOUR HONOR.
10             MR. JACOBS:  WE WOULD ALSO MOVE 46.1 INTO
11   EVIDENCE THAT WAS SHOWN DURING MR. BOGUE'S
12   TESTIMONY, AND 2288 INTO EVIDENCE, ALSO SHOWN
13   DURING MR. BOGUE'S TESTIMONY.
14             THE COURT:  OKAY.  YOU SAID 2288, ANY
15   OBJECTION?  THAT'S ADMITTED.
16             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBERS
17             210, 26.1, AND 2288, HAVING BEEN
18             PREVIOUSLY MARKED FOR IDENTIFICATION,
19             WERE ADMITTED INTO EVIDENCE.)
20             THE COURT:  WHAT ABOUT, YOU SAID 46.1?
21             MR. JACOBS:  THAT'S CORRECT.  46.1 IS THE
22   IMAGE OF THE PROTOTYPICAL DIAMONDTOUCH SETUP.
23             THE COURT:  ALL RIGHT.  THOSE THREE ARE
24   ADMITTED.
25             THE COURT:  NOW, IS THIS ONE EXHIBIT THE
```

1   Q   DO YOU HAVE ANY EXPERIENCE WITH THE DESIGN AND
2   DEVELOPMENT OF MOBILE PHONE HANDSET PRODUCTS?
3   A   YES, I DO.  I'VE WORKED IN TEXAS INSTRUMENTS,
4   AND IN MY LAST ROLE, I HAVE BEEN THE CEO FOR CHIEF
5   TECHNOLOGY OFFICER FOR THE MOBILE CONNECTIVITY
6   SOLUTION GROUP IN TEXAS INSTRUMENTS.
7           AND I'VE BEEN THE CHIEF TECHNOLOGY
8   OFFICER FOR THE GROUP, AND SINCE THAT TIME, I'M
9   ALSO A CONSULTANT THAT IS WORKING ON MOBILE
10  TECHNOLOGY, MOBILE HANDSET TECHNOLOGY AS WELL.
11  Q   CAN YOU DESCRIBE THE WORK YOU DID AT TEXAS
12  INSTRUMENTS.
13  A   YES.  AT TEXAS INSTRUMENTS, THE GROUP THAT I
14  WAS PART OF WAS DEVELOPING THE COMPONENTS FOR
15  MOBILE PHONES.  WE WERE DOING SO BASED ON FEEDBACKS
16  THAT WE WERE GETTING FROM THE LEADING MOBILE
17  HANDSET MANUFACTURERS.
18          AND THAT'S THE THINGS THAT WE WERE
19  DEVELOPING AT TEXAS INSTRUMENTS.
20  Q   AND WHAT WAS MODU LIMITED?
21  A   MODU LIMITED WAS A COMPANY WHO DEVELOPED
22  MODULAR HANDSETS, MODULAR PHONES.  THE IDEA WAS
23  THAT THERE WAS A SMALL PHONE THAT COULD PLUG INTO
24  OTHER LARGER DEVICES, WHICH WERE CONSUMER
25  ELECTRONIC DEVICES, AND WE DEVELOPED MULTIPLE

```
 1    HANDSETS AND ADDITIONAL CONSUMER ELECTRONIC
 2    DEVICES.
 3    Q    AND YOU WERE CHIEF TECHNOLOGY OFFICER THERE?
 4    A    YES.
 5    Q    AS CHIEF TECHNOLOGY OFFICER AT MODU, WHAT WERE
 6    YOUR RESPONSIBILITIES?
 7    A    I HAD RESPONSIBILITY OF UNDERSTANDING ALL THE
 8    LIMITATIONS OF THE DESIGN AND EXPLAINING THEM TO
 9    THE DESIGN TEAMS, AND I HAD THE RESPONSIBILITY OF
10    SUPERVISING THE WHOLE PROCESS OF DESIGN, STARTING
11    FROM THE CONCEPT GOING THROUGH ELECTRICAL DESIGN,
12    MECHANICAL DESIGN, INDUSTRIAL DESIGN, AND FOLLOWING
13    THAT PROCESS UNTIL COMPLETION OF THE PHONE
14    PRODUCTS.
15    Q    ARE YOU THE NAMED INVENTOR ON ANY PATENTS?
16    A    YES, I'M A NAMED INVENTOR ON 20 PATENTS AND
17    ADDITIONAL 60 PENDING SUBMISSIONS.
18              MR. VERHOEVEN:  YOUR HONOR, WE TENDER
19    MR. SHERMAN AS AN EXPERT ON THE DESIGN OF MOBILE
20    ELECTRONIC CONSUMER DEVICES.
21              MS. KREVANS:  YOUR HONOR, WE RESERVE OUR
22    QUESTIONS RE QUALIFICATION FOR CROSS-EXAMINATION.
23              THE COURT:  THAT'S FINE.
24    BY MR. VERHOEVEN:
25    Q    WHAT HAVE YOU BEEN ASKED TO TESTIFY ABOUT
```

```
 1    FUNCTIONS TO THE LAUNCHTILE SYSTEM.
 2              SO IT TOO INVALIDATES.
 3    Q    ALL RIGHT.  I'D LIKE TO MOVE ON TO ANOTHER
 4    REFERENCE NOW, AND WE HAVE A -- I'VE ASKED THAT A
 5    SUMMARY SLIDE BE PREPARED.  THIS IS THE AGNETTA
 6    PATENT.  IT'S THE '632 PATENT.  DO YOU SEE THAT
 7    PATENT IN YOUR BINDER THERE, SIR?  YOU SHOULD HAVE
 8    AS EXHIBIT 561 SOME DOCUMENTATION RELATING TO
 9    AGNETTA.  DO YOU SEE THAT?
10    A    I DO.
11    Q    AND THERE'S A -- IS THERE A PROVISIONAL
12    APPLICATION IN THE FRONT OF EXHIBIT 561 AND IT'S
13    THE '632 PATENT ITSELF IN THE BACK?
14    A    THERE IS A PROVISIONAL APPLICATION, YES.
15              MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE
16    FOR EXHIBIT DX 561 INTO THE RECORD.
17              MR. JACOBS:  NO OBJECTION, YOUR HONOR.
18              THE COURT:  ALL RIGHT.  IT'S ADMITTED.
19              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
20              561, HAVING BEEN PREVIOUSLY MARKED FOR
21              IDENTIFICATION, WAS ADMITTED INTO
22              EVIDENCE.)
23              MR. DEFRANCO:  OKAY.  WHAT YOU WANT TO DO
24    SIR, RATHER THAN WALKING THROUGH -- BY THE WAY, IS
25    THIS SOMEWHAT -- IN THE CONSTRUCT OF WHAT'S SHOWN
```

```
 1    IN THIS PATENT, IS IT SIMILAR SOMEWHAT TO
 2    LAUNCHTILE?
 3    A    IT IS SIMILAR TO LAUNCHTILE.  THE -- THIS
 4    CONFIGURATION --
 5    Q    AND LET ME JUST JUMP IN --
 6    A    SURE.
 7    Q    -- IN THE INTEREST OF TIME.  WHAT I'VE DONE
 8    HERE IS WE PUT THE CLAIMS SIDE BY SIDE WITH ONE
 9    FIGURE FROM THAT PATENT, AND RATHER THAN TAKE YOU
10    THROUGH EACH ELEMENT ONE SLIDE AT A TIME, COULD YOU
11    JUST DESCRIBE FOR US GENERALLY WHERE IN YOUR
12    OPINION THE LIMITATIONS IN CLAIM 50 OF THE '163
13    PATENT ARE FOUND IN THE AGNETTA REFERENCE, SIR?
14    A    SURE.  SO THE AGNETTA REFERENCE AGAIN IS
15    DIRECTED TO A PORTABLE ELECTRONIC DOCUMENT WITH
16    MEMORY AND PROCESSORS AND COMPUTER INSTRUCTIONS.
17    SO 50A AND 50B ARE MET.
18         50C IS MET BECAUSE WHAT IT DOES --
19    BECAUSE THE STRUCTURED ELECTRONIC DOCUMENT WAS
20    SIMILAR TO LAUNCHTILE IS WHAT IS REFERRED TO HERE
21    AS A TILE SPACE WHICH, AGAIN, PROVIDES INSIGHT INTO
22    THE INFORMATION AND CONTENT THAT IS ON THE
23    PARTICULAR ELECTRONIC DEVICE.
24         THE USER CAN SELECT ANY OF THOSE TILES.
25    ONCE THOSE TILES -- ANY TILE THAT IS SELECTED IS
```

1    ENLARGED AND CENTERED, SO THAT MEANS THAT CLAIM 50D
2    AND E ARE MET, AND F FOR THAT MATTER.
3             AND IN ADDITION, ONCE THAT -- ONCE THE
4    TILE HAS BEEN ENLARGED AND CENTERED, THE ADJACENT
5    TILES AROUND IT ARE AVAILABLE, THE USER THEN HAS
6    THE OPPORTUNITY TO SELECT THOSE ADJACENT TILES,
7    WHICH THAT TILE WILL NOW BE CENTERED AND ENLARGED
8    AS WELL.  SO MUCH LIKE LAUNCHTILE, THE AGNETTA
9    PATENT PERFORMS THE SAME OPERATIONS AND SAME
10   FUNCTIONS.
11   Q    AND WHAT IS YOUR YOUR OPINION OF THE VALIDITY
12   OF CLAIM 50 OF THE '163 PATENT IN VIEW OF THE
13   AGNETTA REFERENCE, SIR?
14   A    I BELIEVE THE AGNETTA REFERENCE INVALIDATES
15   CLAIM 50 BECAUSE IT MEETS ALL THE CLAIM
16   LIMITATIONS.
17   Q    WE HAVE ONE MORE TO DO, THE ROBBINS PATENT.
18   IT SHOULD BE IN YOUR BINDER AGAIN.  IT'S '349
19   PATENT.  DO YOU SEE THAT THERE, SIR?  IT'S EXHIBIT
20   DX 1081.
21            AND, RYAN, WHILE WE'RE DOING THAT, CAN
22   YOU PLEASE PUT UP THE SUMMARY SLIDE FOR THAT
23   REFERENCE.
24   A    I DO.  I SEE EXHIBIT 1081 AND IT IS THE '349
25   OR ROBBINS PATENT.