# Exhibit 16

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,                  )
                                 )  SAN JOSE, CALIFORNIA
7                 PLAINTIFF,     )
                                 )  JUNE 29, 2012
8            VS.                 )
                                 )  PAGES 1-94
9  SAMSUNG ELECTRONICS CO.,      )
   LTD., A KOREAN BUSINESS       )
10 ENTITY; SAMSUNG               )
   ELECTRONICS AMERICA,          )
11 INC., A NEW YORK              )
   CORPORATION; SAMSUNG          )
12 TELECOMMUNICATIONS            )
   AMERICA, LLC, A DELAWARE      )
13 LIMITED LIABILITY             )
   COMPANY,                      )
14                               )
                 DEFENDANTS.     )
15 _____

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17            UNITED STATES DISTRICT JUDGE

18

19

20            APPEARANCES ON NEXT PAGE

21

22

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
25

                                                        1

```
 1

 2    A P P E A R A N C E S:

 3    FOR THE PLAINTIFF:  MORRISON & FOERSTER
                          BY:  HAROLD J. MCELHINNY,
 4                               MICHAEL A. JACOBS
                          425 MARKET STREET
 5                        SAN FRANCISCO, CALIFORNIA  94105

 6                        WILMER, CUTLER, PICKERING,
                          HALE AND DORR
 7                        BY:  WILLIAM F. LEE
                          60 STATE STREET
 8                        BOSTON, MASSACHUSETTS  02109

 9                        BY:  MARK D. SELWYN
                          950 PAGE MILL ROAD
10                        PALO ALTO, CALIFORNIA  94304

11

12    FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
13                        BY:  VICTORIA F. MAROULIS
                               KEVIN P.B. JOHNSON
14                        555 TWIN DOLPHIN DRIVE
                          SUITE 560
15                        REDWOOD SHORES, CALIFORNIA  94065

16                        BY:  JOHN B. QUINN
                               MICHAEL T. ZELLER
17                        865 SOUTH FIGUEROA STREET
                          10TH FLOOR
18                        LOS ANGELES, CALIFORNIA  90017

19                        BY:  CARL G. ANDERSON
                          50 CALIFORNIA STREET
20                        22ND FLOOR
                          SAN FRANCISCO, CALIFORNIA  94111
21

22

23

24

25
```

                                                          2

```
 1    SAN JOSE, CALIFORNIA              JUNE 29, 2012
 2                   P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE COURT:  THE ECF HAS BEEN DOWN FOR THE
 6    LAST TWO DAYS, SO WE HAVEN'T BEEN ABLE TO FILE
 7    ANYTHING, BUT WE WERE ABLE TO SNEAK IN AT LEAST ONE
 8    OF THE SUMMARY JUDGMENT ORDERS.  WE'VE GIVEN TWO
 9    COPIES EACH TO THE PARTIES.
10              AND WE HAVE HOW MANY COPIES --
11              MS. DEAN:  TWO.
12              THE COURT:  -- TWO COPIES FOR MEDIA SO
13    YOU'LL BE ABLE TO ACCESS THOSE ORDERS, IF YOU
14    WOULDN'T MIND JUST SHARING.
15              THE CLERK:  CALL THE CASE?
16              THE COURT:  YEAH.
17              THE CLERK:  CALLING CASE C-11-01846 LHK,
18    APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS
19    COMPANY LIMITED, ET AL.
20              MR. MCELHINNY:  GOOD AFTERNOON, YOUR
21    HONOR.  HAROLD MCELHINNY AND MICHAEL JACOBS FOR
22    APPLE AS PLAINTIFF.
23              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.
24    BILL LEE AND MARK SELWYN FROM WILMER HALE FOR APPLE
25    AS WELL.
```

3

```
1              MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.

2    KEVIN JOHNSON, AND WITH ME ARE JOHN QUINN,

3    MIKE ZELLER, AND VICKI MAROULIS, ALL FOR SAMSUNG.

4              THE COURT:  OKAY.  GOOD AFTERNOON.

5              OKAY.  SO LET'S HANDLE THE DAUBERT

6    MOTIONS FIRST, AND THEN THE CMC.

7              SO FIRST WITH REGARD TO THE DAUBERT

8    MOTIONS, LET ME ASK WHAT SUPPORT THERE IS FOR

9    MR. WAGNER'S APPORTIONMENT OF PROFITS WITH REGARD

10   TO TRADE DRESS?  IS THERE ANY?

11             (PAUSE IN PROCEEDINGS.)

12             MR. QUINN:  MAY I HAVE ONE MOMENT, YOUR

13   HONOR?

14             THE COURT:  SURE.

15             MR. QUINN:  I'M SORRY.

16             THE COURT:  PLEASE.

17             (PAUSE IN PROCEEDINGS.)

18             MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.

19   JOHN QUINN FOR APPLE.

20             I THINK THERE IS NO DISPUTE --

21             THE COURT:  FOR SAMSUNG?

22             MR. QUINN:  I'M SORRY.

23             MR. MCELHINNY:  WE OBJECT, YOUR HONOR.

24             (LAUGHTER.)

25             MR. QUINN:  I'M HAPPY TO SPEAK FOR APPLE
```

4

```
 1    AS WELL, YOUR HONOR.

 2              THE COURT:  I'M SURE YOU ARE.

 3              (LAUGHTER.)

 4              THE COURT:  GO AHEAD, PLEASE.

 5              MR. QUINN:  THERE ISN'T ANY DISPUTE, AS I

 6    UNDERSTAND IT, BETWEEN THE PARTIES THAT

 7    APPORTIONMENT WITH RESPECT TO TRADE DRESS IS

 8    APPROPRIATE UNDER THE LAW.

 9              THERE IS AN APPLE SURVEY THAT WE CITE TO

10    THAT REFERS TO A 1 PERCENT APPORTIONMENT WITH

11    RESPECT TO TRADE DRESS, AND THAT'S REALLY WHAT

12    MR. WAGNER REFERS TO.

13              THE COURT:  WELL, YEAH, I DO WANT TO GO

14    TO HIS 1 PERCENT AS WELL.

15              WELL, I WAS THINKING OF IN HIS DEPOSITION

16    TESTIMONY WHERE HE THINKS THIS METHODOLOGY WAS USED

17    IN THE APPLE V. MOTOROLA CASE, BUT HE WASN'T SURE

18    BY WHOM OR WHETHER IT SURVIVED A DAUBERT MOTION.

19              I WAS JUST WONDERING IF THERE WAS ANY

20    FURTHER INFORMATION ABOUT WHETHER THIS HAS EVER

21    BEEN, YOU KNOW, APPROVED ANYWHERE.

22              MR. QUINN:  NO.  I'M NOT RECALLING THAT

23    DEPOSITION TESTIMONY.

24              PERHAPS --

25              THE COURT:  OKAY.
```

5

```
 1              MR. QUINN:  PERHAPS IF I -- I'M SORRY.

 2              (PAUSE IN PROCEEDINGS.)

 3              MR. QUINN:  YOUR HONOR, I'M INFORMED THAT

 4    THAT CASE DID NOT ADDRESS APPORTIONMENT WITH

 5    RESPECT TO TRADE DRESS, THAT TRADE DRESS WAS NOT AT

 6    ISSUE IN THAT CASE.

 7              THE COURT:  OKAY.  I'M SORRY.  I THINK I

 8    MEAN DESIGN, DESIGN PATENT.  MY MISTAKE THEN.

 9              MR. QUINN:  IN TERMS OF THE -- OH, THE

10    APPORTIONMENT WITH RESPECT TO DESIGN PATENTS, YOUR

11    HONOR, THERE -- THERE ISN'T AUTHORITY WITH RESPECT

12    TO THAT.

13              I THINK OUR ARGUMENT WITH RESPECT TO

14    APPORTIONMENT ON DESIGN PATENTS, FRANKLY AND

15    CANDIDLY, THIS IS AN ARGUMENT FOR AN EXTENSION OF

16    THE LAW, YOUR HONOR.  THERE ISN'T ANY AUTHORITY FOR

17    THAT.

18              IT'S -- I MEAN, I DON'T THINK THERE IS

19    ANY DISPUTE THAT THE DEMAND FOR THESE PRODUCTS IS

20    NOT DRIVEN SOLELY BY DESIGN.

21              I MEAN, THESE ARE OBVIOUSLY VERY

22    SOPHISTICATED PRODUCTS FROM A TECHNOLOGICAL

23    STANDPOINT.  APPLE'S OWN STUDIES SHOW THAT DEMAND

24    IS DRIVEN BY TECHNICAL FEATURES.

25              I DON'T THINK ANY PARTY CAN CLAIM WITH A
```

6

1    STRAIGHT FACE THAT SAMSUNG'S PROFITS ARE WHOLLY

2    ATTRIBUTABLE TO THE ALLEGEDLY INFRINGING DESIGN

3    PATENTS.

4            SO AS A MATTER -- WE WOULD SUBMIT, YOUR

5    HONOR, AS A COMMON SENSE AND JUSTICE AND GOOD FAITH

6    EXTENSION OF THE LAW, IT WOULD BE APPROPRIATE TO

7    RECOGNIZE THAT FACT, WHICH I DON'T THINK ANYBODY

8    CAN DISPUTE, AND THAT THERE SHOULD BE APPORTIONMENT

9    WITH RESPECT TO THE DESIGN -- THE ALLEGED

10   INFRINGEMENT WITH RESPECT TO THE DESIGN PATENTS.

11           THE COURT:  OKAY.  WITH REGARD TO THE

12   5 PERCENT VALUE OF THE SMARTPHONE THAT MR. WAGNER

13   APPORTIONS TO DESIGN BASED ON THE TWO SURVEYS,

14   WHAT -- WHY WOULD IT BE RELIABLE TO EXTRAPOLATE

15   THAT PERCENTAGE FROM THOSE SURVEYS?

16           MR. QUINN:  YOUR HONOR, I THINK ACTUALLY

17   THERE ARE, AS I RECALL, FOUR --

18           THE COURT:  FOUR SURVEYS, OKAY.

19           MR. QUINN:  YEAH, FOUR DATA POINTS,

20   SURVEYS, THAT MR. WAGNER RELIES ON.

21           I MEAN, WHAT'S -- THE EXERCISE THAT

22   WE'RE -- THAT HE'S INVOLVED IN HERE IS HE'S SEEKING

23   TO APPORTION A VALUE OF A SMALL PROPRIETARY FEATURE

24   IN A VERY COMPLEX PRODUCT.

25           AND SO THE QUESTION -- THIS RAISES TWO

7

```
 1    QUESTIONS:  HOW MUCH DO BUYERS CARE ABOUT THAT

 2    PRODUCT?  AND THEN SECOND, HOW MUCH BETTER DO THEY

 3    FIND THE VERSION OF THE PROPRIETARY -- THE

 4    PROPRIETARY VERSION OF THE FEATURE WHICH IS AT

 5    ISSUE?

 6              AND, YOU KNOW, OF COURSE THE BACKGROUND

 7    UNDER WHICH WE ASSESS THIS HERE IS THE STANDARD

 8    SHELDON VERSUS MGM, YOUR HONOR, WHERE THE COURT

 9    SAID THAT WHAT IS REQUIRED FOR APPORTIONMENT OF

10    PROFITS IS NOT MATHEMATICAL EXACTNESS, BUT ONLY A

11    REASONABLE APPROXIMATION.

12              SO WHAT MR. WAGNER HAS DONE IS TO LOOK AT

13    AVAILABLE INFORMATION, INCLUDING APPLE INFORMATION,

14    AS TO WHAT VALUE -- HOW MUCH DO CONSUMERS CARE

15    ABOUT DESIGN IN MAKING THESE DECISIONS, IN MAKING

16    PURCHASE DECISIONS?

17              THE COURT:  SO EARLIER YOU SAID IT'S

18    DIFFICULT BECAUSE THESE ARE MULTI-FEATURED, COMPLEX

19    PRODUCTS, BUT NONE OF THOSE SURVEYS REALLY HAD THE

20    SURVEYORS REALLY SORT OF COMPARE FEATURES AND

21    REALLY TAKE INTO ACCOUNT THE POINT THAT YOU'RE

22    MAKING.

23              MR. QUINN:  WELL, I MEAN, I THINK EACH OF

24    THEM RAISE THE QUESTION, DO RAISE THE QUESTION

25    ABOUT DESIGN AS TO WHAT IS THE IMPORTANCE OF
```

8

1    DESIGN.

2                    AND, AGAIN, IT'S NOT AN EXACT

3    METHODOLOGY.  IT'S HARD TO KIND OF FIGURE OUT HOW

4    YOU COULD COME UP WITH AN EXACT SCIENTIFIC WAY OF

5    ATTACHING A NUMBER TO THAT.

6                    BUT IT'S THE AVAILABLE DATA THAT WE HAVE,

7    AND REALLY APPLE DIDN'T TAKE SERIOUS ISSUE WITH TWO

8    OF THE, WITH TWO OF THE SURVEYS, THE USE OF THE

9    CONTACT DATA AS THE REASON FOR THE HANDSET CHOICE;

10   AND THE J.P.D.A., THE J.P. DATA POWERS SURVEY IN

11   TERMS OF WEIGHING OF FEATURES.

12                   AND THEY -- APPLE DOESN'T OFFER ANY

13   OPINION OR STUDY CRITICIZING THOSE CALCULATIONS.

14                   SO WE'VE GOT AT LEAST TWO OF THE FOUR

15   BENCHMARKS THAT ARE NOT REALLY CRITICIZED.

16                   SO HE COMES UP WITH A -- IN ASSIGNING A

17   VALUE TO HOW MUCH CONSUMERS CARE ABOUT DESIGN AMONG

18   ALL THE VARIOUS FEATURES, HE COMES UP WITH A NUMBER

19   OF 5 PERCENT.

20                   AND APPLE'S CHALLENGE TO THAT I THINK

21   REALLY DOESN'T -- APPLE'S CHALLENGE TO HIS OPINION

22   REALLY DOESN'T SO MUCH TAKE ISSUE WITH THAT, WITH

23   THAT CALCULATION.

24                   I MEAN, WHAT APPLE SAYS IS THAT -- YOU

25   KNOW, HE CRITICIZES THE USE OF APPLE'S OWN IPHONE

9

1    BUYER SURVEY IN A MARCH 2011 J.P.D.A. SURVEY

2    BECAUSE THE RESPONDENTS SUPPOSEDLY WERE NOT ASKED

3    TO RANK OR COMPARE OR WEIGH THE FEATURES.

4              AND ACTUALLY, THAT'S NOT -- THAT'S NOT

5    TRUE, YOUR HONOR.  AS MR. WINER ADMITS, THE IPHONE

6    BUYER SURVEY DID ASK RESPONDENTS TO RANK FEATURES 1

7    THROUGH 5, INCLUDING DESIGN.

8              THEY CRITICIZED MR. WAGNER'S OPINION

9    BECAUSE THE CALCULATION DEPENDS ON THE NUMBER OF

10   QUESTIONS ASKED AND THE NUMBER OF ATTRIBUTES THAT

11   ARE -- THAT CONSUMERS ARE ASKED ABOUT.

12             BUT IF ANYTHING, IF YOU ADD MORE

13   ATTRIBUTES, THAT ENDS UP IN ASSIGNING LESS VALUE,

14   LESS APPORTIONMENT TO DESIGN.  THE MORE ATTRIBUTES

15   THAT WERE SURVEYED, THE LOWER RELATIVE VALUE OF

16   EACH.

17             THEY ALSO CRITICIZE MR. WAGNER'S ANALYSIS

18   IN THE SECOND STAGE.  I DON'T KNOW IF THE COURT

19   WANTS ME TO GET INTO THAT.

20             THE COURT:  NO.  I'D RATHER ASK YOU ONE

21   MORE QUESTION --

22             MR. QUINN:  OKAY.

23             THE COURT:  -- ABOUT MR. WAGNER, AND

24   THAT'S HOW HE GETS TO CONCLUDING THAT APPLE'S

25   DESIGN IS 1 PERCENT OF THE VALUE OF THE SMARTPHONE,

1    YOU KNOW, TAKING IN THE 10 PERCENT, MULTIPLYING

2    THAT BY 5 PERCENT, ROUNDING IT UP.  IT JUST SEEMS

3    LIKE A LOT OF --

4              MR. QUINN:  WELL, THERE'S TWO STEPS HERE.

5              THE COURT:  YEAH.

6              MR. QUINN:  FIRST, HOW MUCH DO CONSUMERS

7    CARE ABOUT DESIGN?

8              AND THEN HOW MUCH EXTRA VALUE, OR MORE

9    APPEALING DO CONSUMERS FIND THE SPECIFIC APPLE

10   DESIGN?

11             THE FIRST NUMBER, BASED ON THOSE FOUR

12   BENCHMARK SURVEYS, IS 10 PERCENT.

13             AND THEN HE MULTIPLIES -- TO ARRIVE AT

14   THE PARTICULAR VALUE ATTRIBUTABLE TO THE APPLE

15   DESIGN, HE MULTIPLIES THAT BY THE 5 PERCENT BECAUSE

16   THE SURVEYS SHOWED THAT APPLE'S DESIGN IS 5 PERCENT

17   MORE APPEALING THAN THE INDUSTRY AVERAGE.

18             SO IT'S APPROPRIATE TO MULTIPLY THOSE

19   TWO, WHICH GETS TO .5 PERCENT, AND HE ROUNDS IT UP

20   TO 1 PERCENT.

21             I MEAN, IT'S REALLY, I THINK, KIND OF A

22   SIMPLE EXERCISE IN A WAY, YOUR HONOR.

23             IF YOU'RE ASKING -- IF WE'RE TALKING

24   ABOUT AUTOMOBILES AND THE ISSUE WAS, WHAT DO

25   CONSUMERS ATTACH TO A SPECIAL KIND OF TIRE FOR AN

```
 1        AUTOMOBILE, THERE ARE TWO STEPS TO THAT.
 2              FIRST --
 3              THE COURT:  CAN I ASK YOU, THOUGH, IF
 4        THE -- IF THE SURVEYS SHOW THAT CONSUMERS GENERALLY
 5        VALUE APPLE DESIGN MORE THAN THE INDUSTRY AVERAGE,
 6        THEN WHY SHOULD WE REDUCE IT?
 7              MR. QUINN:  BECAUSE YOU HAVE TO TAKE INTO
 8        ACCOUNT FIRST THAT THE DESIGN IS ONE ELEMENT OF THE
 9        TOTAL PACKAGE, SO YOU FIRST HAVE TO ASSIGN A
10        VALUE -- HOW IMPORTANT IS DESIGN AS A WHOLE FOR
11        SMARTPHONES ACROSS THE BOARD?
12              IT'S LIKE SAYING, IN TRYING TO ARRIVE AT
13        WHAT'S THE VALUE OF A SPECIAL TYPE OF WHEEL OR TIRE
14        ON A CAR, YOU FIRST HAVE TO ASSIGN A VALUE TO,
15        WELL, HOW MUCH DO CONSUMERS AS A WHOLE CARE ABOUT
16        TIRES?
17              AND THEN IF THE ISSUE IS WHAT'S THE VALUE
18        OF A SPECIAL TIRE, YOU THEN HAVE TO FIND OUT, WELL,
19        HOW MUCH DO PEOPLE CARE ABOUT THAT MORE THAN TIRES
20        AS A WHOLE?
21              TO ASSIGN A VALUE THEN TO THE SPECIAL
22        TIRE, YOU HAVE TO MULTIPLY THE FIRST NUMBER, HOW
23        MUCH DO THEY CARE ABOUT TIRES AS A WHOLE, BY THE
24        SECOND NUMBER, WHAT IS THE -- IN WHAT RESPECT IS
25        THAT PARTICULAR TIRE MORE -- WHAT'S THE VALUE
```

```
 1    ASSOCIATED WITH THE PREFERENCE FOR THAT PARTICULAR

 2    FORM OF TIRE?

 3              I MEAN, IT WOULDN'T BE APPROPRIATE JUST

 4    TO USE THE FULL 5 PERCENT BECAUSE WE'RE TALKING

 5    ABOUT A PRODUCT WHICH HAS MANY DIFFERENT FEATURES,

 6    AND NORMALLY YOU'VE GOT 10 PERCENT, 10 PERCENT OF

 7    THE VALUE ATTRIBUTABLE TO DESIGN.

 8              THE COURT:  LET ME ASK YOU, WITH

 9    MR. GODICI, IN THE OPPOSITION BY SAMSUNG, IT SEEMS

10    LIKE HIS TESTIMONY IS ONLY GOING TO BE ABOUT RULES

11    AND PROCEDURES OF THE PATENT AND TRADEMARK OFFICE.

12              BUT HIS ACTUAL REPORT IS NOT REALLY

13    FOCUSSED ON THAT.  IT SEEMS TO BE MORE FOCUSSED ON

14    THE SCOPE OF THE PATENT.

15              WHY WOULD THAT -- THAT SEEMS MORE LIKE A

16    CLAIM CONSTRUCTION ISSUE.  WHY WOULD THAT EVEN BE

17    APPROPRIATE FOR AN EXPERT REPORT?

18              MR. QUINN:  YOUR HONOR, WE GOT AN ORDER

19    FROM MAGISTRATE JUDGE GREWAL THE DAY BEFORE

20    YESTERDAY WHICH WE -- WE'RE STILL REVIEWING IT AND

21    IF -- IF THERE ARE NO CHANGES TO THAT,

22    MR. GODICI -- THERE WOULD BE NOTHING FOR MR. GODICI

23    TO TESTIFY ABOUT THAT'S RELATED TO A DISCOVERY

24    ISSUE.

25              THE COURT:  OKAY.
```

1           MR. QUINN:  SO I'M NOT EVEN SURE

2     WHETHER -- WHERE WE'RE GOING TO BE GOING WITH

3     MR. GODICI.

4           THE COURT:  OKAY.

5           MR. QUINN:  IT MIGHT MAKE SENSE TO TABLE

6     THAT PARTICULAR ISSUE WHILE WE CONSIDER THE IMPACT

7     OF --

8           THE COURT:  NO.  I'M GOING TO GRANT --

9     I'M GOING TO GRANT THE DAUBERT ON MR. GODICI, SO IT

10    MIGHT END UP BEING ALL MOOT ANYWAY.

11          OKAY.  LET ME ASK ABOUT ONE LAST EXPERT

12    AND THEN I'M GOING TO ASK ABOUT APPLE'S EXPERTS.

13          WELL, ACTUALLY, I GUESS THE FIRST

14    QUESTION ON THIS ONE IS IN THE BRIEFING, THERE'S A

15    LITTLE BIT OF CONFUSION ABOUT WHETHER, IN FACT,

16    APPLE HAS DISMISSED THEIR IPHONE TRADE DRESS CLAIM.

17          APPLE SEEMS TO THINK THAT IT ALREADY HAS,

18    BUT THEN THE BRIEFING FROM SAMSUNG THOUGHT THAT IT

19    HADN'T.

20          SO HAS THAT ISSUE BEEN COMPLETELY

21    RESOLVED NOW, OR IS THAT STILL PENDING?

22          IS THERE A -- IS THERE A RESOLUTION ON

23    THAT SCORE?  HAS THAT BEEN DISMISSED ALREADY, OR --

24          MR. QUINN:  YOUR HONOR, MY UNDERSTANDING

25    IS THAT -- AND THIS MAY RELATE TO THE OPINION OF

```
 1    MR. MAZIS RELATING TO THE IPHONE, OR MR. KAMINS'

 2    OPINIONS CONCERNING TRADE DRESS.

 3              MY UNDERSTANDING IS THAT --

 4              THE COURT:  WELL, LET ME -- I'M SORRY.

 5    LET ME JUST ASK SOMEONE FROM APPLE.

 6              HAVE YOU DISMISSED YOUR IPHONE TRADE

 7    DRESS CLAIM, OR NOT?

 8              MR. MCELHINNY:  WE HAVE NOT, YOUR HONOR.

 9              THE COURT:  YOU HAVEN'T?  ARE YOU GOING

10    TO?

11              MR. MCELHINNY:  WE HOPE NOT.  WE --

12              THE COURT:  OH, OKAY.  I THOUGHT THERE

13    WAS A REPRESENTATION THAT YOU, THAT YOU HAD, SO

14    THAT'S WHY I WAS CONFUSED.

15              MR. MCELHINNY:  LET ME -- WE ORIGINALLY

16    HAD THREE DIFFERENT TRADE DRESS CLAIMS.

17              THE COURT:  OKAY.

18              MR. MCELHINNY:  WE DISMISSED -- WE

19    DISMISSED TWO OF THEM.

20              THE COURT:  OKAY.

21              MR. MCELHINNY:  AND WE KEPT ONLY THE

22    IPHONE TRADE DRESS.

23              JUST PRIOR TO THE LAST HEARING ON THE

24    SUMMARY JUDGMENT MOTIONS, WE DISMISSED ONE OF OUR

25    DESIGN PATENTS ON THE ICON, SO -- BUT I DON'T KNOW
```

15

```
1    THAT YOUR HONOR -- THAT'S DIFFERENT THAN WHAT YOUR

2    HONOR IS TALKING ABOUT NOW.

3              THE COURT:  YEAH.  I'M CONFUSED BECAUSE I

4    THOUGHT YOUR REPLY BRIEF SAID YOU ALREADY DISMISSED

5    IT.  THAT'S WHY I'M GETTING CONFUSED.

6              MR. ZELLER:  IF I MAY, YOUR HONOR?

7              THE COURT:  YES.

8              MR. ZELLER:  FROM MY UNDERSTANDING, IT'S

9    THAT APPLE DISMISSED ITS TRADE DRESS INFRINGEMENT

10   CLAIM AS IT PERTAINED TO THE PHONES.

11             THE COURT:  OKAY.

12             MR. ZELLER:  HOWEVER, IT WAS STILL

13   MAINTAINING ITS TRADE DRESS DILUTION CLAIMS AS TO

14   THE PHONES.

15             MR. MCELHINNY:  THAT'S CORRECT, YOUR

16   HONOR.

17             THANK YOU.

18             THE COURT:  OKAY.  SO THE TRADE DRESS --

19   THANK YOU.  SO THE TRADE DRESS INFRINGEMENT CLAIM

20   HAS ALREADY BEEN DISMISSED?

21             MR. ZELLER:  THAT'S MY UNDERSTANDING,

22   YES.

23             THE COURT:  OKAY.  BUT THE TRADE DRESS

24   DILUTION CLAIM IS STILL IN THE CASE?

25             MR. ZELLER:  THAT'S RIGHT.
```

16

```
 1              THE COURT:  OKAY.  ALL RIGHT.

 2              WELL, THEN, LET ME ASK WITH REGARD TO

 3    MR. GEORGE MANTIS, IT SEEMS LIKE HIS TESTIMONY

 4    WOULD BE MORE RELEVANT TO, YOU KNOW, TRADE DRESS

 5    AND IS NOT RELATED TO DILUTION, SO --

 6              MR. QUINN:  YOUR HONOR, CAN I --

 7              THE COURT:  -- IS HE -- IS THIS TESTIMONY

 8    EVEN STILL IMPORTANT IF THE TRADE DRESS

 9    INFRINGEMENT CLAIM IS GONE?

10              MR. QUINN:  WELL, THERE IS STILL AN

11    ASSOCIATION PRONG OF THE DILUTION, FOR THE DILUTION

12    CLAIM.

13              THERE'S STILL AN ISSUE ABOUT DO CONSUMERS

14    ASSOCIATE THE TRADE DRESS FOR DILUTION PURPOSES

15    WITH APPLE?

16              THAT ISSUE OF ASSOCIATION, IN THE

17    CONSUMER'S MIND, IS STILL AT ISSUE WITH RESPECT TO

18    THE DILUTION CLAIM.  THAT'S WHAT THE COURT

19    RECOGNIZED IN THE JADA TOYS CASE.

20              THE COURT:  BUT WHY IS THE CONFUSION

21    PROBATIVE OF THE ASSOCIATION FOR DILUTION?

22              MR. QUINN:  THAT'S WHAT THE COURT FOUND

23    IN THE JADA TOYS CASE, THAT CONSUMER CONFUSION, A

24    CONSUMER CONFUSION STUDY IS PROBATIVE OF WHETHER OR

25    NOT CONSUMERS DO, IN FACT, ASSOCIATE THE TRADE
```

17

1    DRESS WITH THE PLAINTIFF'S PRODUCTS, AND THAT'S

2    IRRELEVANT AS WELL TO A DILUTION CLAIM.

3            THE COURT:  LET ME HEAR FROM APPLE IF YOU

4    AGREE WITH THAT.

5            I ASSUME YOUR POSITION IS IT DOESN'T,

6    THAT CONFUSION IS NOT PROBATIVE OF ASSOCIATION FOR

7    A DILUTION CLAIM.

8            IS THAT CORRECT, OR NOT?

9            MR. MCELHINNY:  YOUR HONOR, I THINK WE

10   HAVE TO PROVE THAT CONSUMERS DO IDENTIFY OUR TRADE

11   DRESS WITH OUR NAME AND BRAND, AND I THINK

12   CONFUSION WOULD BE RELEVANT TO THAT ISSUE.

13           THE COURT:  FOR DILUTION?

14           MR. MCELHINNY:  YES, YOUR HONOR.

15           THE COURT:  OKAY.  SO THEN DO YOU NOT

16   HAVE ANY OBJECTION TO MR. MANTIS ANYMORE?

17           MR. JACOBS:  I THINK THIS IS PRETTY

18   CLEARLY SET FORTH IN THE BRIEF, YOUR HONOR.

19           IT'S NOT A TWO-WAY RELATIONSHIP.  IF YOU

20   CAN PROVE -- IF YOU CAN PROVE CONFUSION, THEN YOU

21   CAN PROVE ASSOCIATION.

22           SO THERE IS A -- THERE IS A USE, IF YOU

23   WILL, TO THE PLAINTIFF'S ADVANTAGE IN A CONFUSION

24   SURVEY.

25           THE OPPOSITE IS NOT TRUE.  SHOWING THE

                                                    18

1    ABSENCE OF CONFUSION IS NOT PROBATIVE OF DILUTION,

2    AND THAT'S WHY IT WAS OUR VIEW THAT THAT SURVEY IS

3    NO LONGER -- IS NO LONGER RELEVANT GIVEN THE

4    CHANGE -- GIVEN THE CHANGE IN THE CLAIMS THAT ARE

5    BEING MADE.

6            THE COURT:  DO YOU WANT TO RESPOND TO

7    THAT, ABSENCE OF CONFUSION?

8            MR. QUINN:  YES.  I'D REFER THE COURT TO

9    THE JADA TOYS VERSUS MATTEL CASE, WHICH IS A

10   DILUTION CLAIM, AND THE COURT HELD SQUARELY THAT A

11   CONSUMER CONFUSION STUDY WAS RELEVANT TO A DILUTION

12   CLAIM.

13           THE COURT:  UM-HUM.

14           MR. QUINN:  SO, I MEAN, IF CONSUMERS HAVE

15   NO ASSOCIATION OF THE TRADE DRESS WITH THE

16   PLAINTIFF'S PRODUCTS, THAT'S RELEVANT TO WHETHER

17   THERE'S ANYTHING TO DILUTE AT ALL.

18           AND I'D ALSO SAY, YOUR HONOR, THAT --

19           THE COURT:  AND IT MAKES SENSE THAT THE

20   INVERSE WOULD BE TRUE; RIGHT?  I MEAN, IF -- IF

21   CONFUSION IS PROBATIVE OF ASSOCIATION FOR A

22   DILUTION CLAIM, THEN WHY WOULDN'T THE ABSENCE OF

23   CONFUSION BE RELEVANT TO WHETHER THERE'S AN

24   ASSOCIATION FOR A DILUTION CLAIM?

25           MR. QUINN:  OF COURSE THAT IS OUR VIEW,

19

1    YOUR HONOR.

2         BUT THAT -- I'D POINT OUT, THEY STILL --

3    WITH RESPECT TO THE TABLETS, THEY HAVE NOT

4    DISMISSED THE TRADE DRESS CLAIM, AND MR. MANTIS

5    ALSO DID A SURVEY WITH RESPECT TO -- A CONFUSION

6    STUDY WITH RESPECT TO THE TABLETS.

7         SO NONE OF THIS ARGUMENT GOES TO THAT

8    PART OF HIS OPINION.

9         MR. JACOBS:  THAT'S TRUE, YOUR HONOR.

10   THE CLAIM AGAINST MANTIS ON THE TABLET IS A

11   DIFFERENT ONE, WHICH IS THE READING TEST ARGUMENT.

12        BUT TO COME BACK TO YOUR INVERSE POINT,

13   THE WHOLE POINT OF A DILUTION CLAIM IS TO GIVE A

14   CAUSE OF ACTION TO A PLAINTIFF WHO CANNOT PROVE

15   LIKELIHOOD OF CONFUSION IN THE CONVENTIONAL SENSE.

16        SO TO DO A LIKELIHOOD OF CONFUSION SURVEY

17   AND TO SAY THAT'S PROBATIVE OF DILUTION IS TO MISS

18   THE WHOLE POINT OF DILUTION.

19        THAT'S OUR FUNDAMENTAL ARGUMENT.  WE

20   BELIEVE THE CASES STAND FOR THAT PROPOSITION.

21        THE COURT:  ALL RIGHT.  LET ME GO TO THE

22   APPLE EXPERTS.

23        IT SEEMS LIKE MANY, MANY, MANY OF YOUR

24   EXPERTS WILL BE SAYING CUMULATIVE THINGS ABOUT

25   BRAND, SO LET ME HEAR --

20

1          MR. MCELHINNY:  I MISSED YOUR LAST WORD,

2     YOUR HONOR, I'M SORRY.  CUMULATIVE THINGS ABOUT?

3          THE COURT:  BRAND.

4          MR. MCELHINNY:  YES.

5          THE COURT:  SO ARE YOU GOING TO PICK AND

6     CHOOSE?  I MEAN, YOU HAVE AT LEAST THREE DIFFERENT

7     EXPERTS TESTIFYING ABOUT BRAND.

8          ARE YOU GOING TO, GOING FORWARD, YOU

9     KNOW, CHOOSE ONE OF THE THREE AND NOT GO WITH WHAT

10    APPEARS TO BE SOMEWHAT CUMULATIVE TESTIMONY?

11         MR. MCELHINNY:  WE'RE NOT GOING TO --

12    WE'RE NOT GOING TO PRESENT CUMULATIVE TESTIMONY.

13         THE COURT:  UM-HUM.

14         MR. MCELHINNY:  WE THINK THAT EACH OF

15    THESE EXPERTS DEALS WITH -- I MEAN, IT'S A LITTLE

16    BIT IRONIC.

17         PART OF THE CHALLENGE IS THAT, AT LEAST

18    AS I READ SAMSUNG'S PAPERS, IS THAT NONE OF -- NO

19    ONE OF THESE TAKES ON ALL OF THE EIGHT SLEEKCRAFT

20    FACTORS, AND ONE OF THE CHALLENGES IS EACH ONE OF

21    THEM SORT OF TAKES ON A PARTICULAR PART.

22         BUT EACH OF THESE PEOPLE HAS SPECIFIC

23    AREAS IN WHICH THEY -- THAT THEY FOCUS ON.

24         YOU KNOW, SO TO TAKE DR. SOOD, FOR

25    EXAMPLE, DR. SOOD'S AREA OF FOCUS IS AN EXPLANATION

1    OF WHY, ALTHOUGH DESIGN AND ASSOCIATION WITH BRAND

2    IS IMPORTANT, IT IS FREQUENTLY UNDERREPORTED IN

3    SURVEYS, AND THAT'S THE STUDY -- THAT'S THE FOCUS

4    OF HIS ACADEMIC STUDY.

5            SO I GUESS IN A LARGER SENSE, I WOULD SAY

6    THAT I DON'T KNOW THAT CUMULATIVE -- THAT A DAUBERT

7    MOTION IS THE APPROPRIATE PLACE TO RAISE THAT,

8    BUT --

9            THE COURT:  I JUST, FOR OUR CASE

10   MANAGEMENT --

11           MR. MCELHINNY:  I ASSURE YOU -- FOR CASE

12   MANAGEMENT PURPOSES, I ASSURE YOU THAT -- WE HAVE

13   TO PUT PEOPLE ON THE WITNESS LIST BASED ON

14   REBUTTAL, SO WE HAVE TO HAVE THE OPPORTUNITY TO

15   REPLY TO CHALLENGES THAT ARE MADE, DEPENDING ON

16   WHAT THEY ARE.

17           BUT WE'RE NOT GOING TO PUT ON THREE --

18   WE'RE NOT GOING TO PUT ON TWO WITNESSES WHO SAY THE

19   SAME THING, MUCH LESS THREE WITNESSES.  WE DON'T

20   HAVE THE TIME FOR THAT.  SO WE'RE NOT GOING TO BE

21   CUMULATIVE.

22           THE COURT:  UM-HUM.  WHAT ABOUT TO THE

23   EXTENT THAT THESE EXPERTS SAY THAT THE BRAND IS

24   MORE VALUABLE THAN THE ACTUAL TRADE DRESS?  HOW IS

25   THE JURY GOING TO BE ABLE TO KEEP SEPARATE THE

```
1    VALUE THAT'S ATTRIBUTABLE TO THE BRAND VERSUS THE
2    TRADE DRESS?
3              MR. MCELHINNY:  WELL, THIS IS -- THIS IS
4    ACTUALLY -- THIS WAS AN EARLY QUESTION OF YOUR
5    HONOR'S ABOUT THE RELATIONSHIP BETWEEN, YOU KNOW,
6    WHAT THE BRAND AND THE VALUE OF THE DESIGNS ARE,
7    AND THAT IS THE DIRECTION -- THAT'S THE FOCUS OF
8    DR. WINER'S TESTIMONY AND HIS EXPERTISE IN TERMS OF
9    MARKETING, WHICH IS HOW THE DESIGN AND THAT VALUE
10   CONTRIBUTES TO A BRAND.
11             AND OBVIOUSLY IT'S NOT THE ENTIRE
12   RESPONSIBILITY FOR THE BRAND.
13             BUT I DON'T THINK IT'S GOING TO BE
14   CONFUSING TO A JURY.
15             I MEAN, I THINK IT'S A -- IT'S A QUESTION
16   THAT PEOPLE COME UP WITH.  IT'S A QUESTION THAT
17   YOUR HONOR ASKED ME THE VERY FIRST TIME I APPEARED
18   BEFORE YOU, WHICH LED US TO THINK THAT IT WOULD BE
19   A GOOD IDEA TO HAVE SOMEBODY WHO ACTUALLY
20   UNDERSTANDS THIS AS AN EXPERT TO ADDRESS THIS ISSUE
21   IN A WAY THAT IS NOT GOING TO BE CONFUSING.
22             THE COURT:  SO SOME OF MR. MUSIKA'S
23   OPINIONS ADDRESS IRREPARABLE HARM, AND I WASN'T
24   CLEAR WHETHER YOU WERE INTENDING TO INTRODUCE THAT
25   BEFORE A JURY AND, IF SO, WHY?  OR WHETHER THAT WAS
```

23

1    MORE FOR, IF YOU PREVAIL AND YOU SEEK AN

2    INJUNCTION, THAT'S WHEN THAT TESTIMONY WOULD BE

3    USED.

4            MR. MCELHINNY:  IT'S VERY -- WE'VE

5    DIVIDED THIS DIFFERENTLY, BUT I CAN ANSWER THAT

6    QUESTION --

7            THE COURT:  OKAY.

8            MR. MCELHINNY:  -- WHICH IS THERE ARE A

9    COUPLE OF INTERESTING ISSUES THAT ARE GOING TO COME

10   UP BEFORE YOUR HONOR, AND ONE OF THEM IS THIS

11   QUESTION OF, IN THE TRIAL ITSELF, HOW MANY OF THE

12   ISSUES THAT MAY PERTAIN TO WHETHER OR NOT

13   INJUNCTIVE RELIEF NEEDS TO BE PART OF OUR

14   CASE-IN-CHIEF?

15           SO, FOR EXAMPLE, NEXUS ISSUES, WHETHER

16   THOSE NEEDS TO BE ADDRESSED; IRREPARABLE INJURY

17   NEEDS TO BE ADDRESSED.

18           SIMPLY THAT WE HAVE THE FACTUAL BASIS IN

19   THE RECORD THAT WOULD PERMIT YOUR HONOR TO FIND AN

20   INJUNCTION IF YOU THOUGHT THAT WAS CORRECT.

21           THE COURT:  BUT I GUESS I'M NOT CLEAR.

22   WHY WOULD THAT GO BEFORE A JURY?

23           MR. MCELHINNY:  IT WOULD GO BEFORE A JURY

24   IF IT WAS PART OF THE ELEMENT THAT WE HAD TO PROVE

25   IN ORDER TO GIVE YOUR HONOR CONTINUING JURISDICTION

1    TO ENTER AN INJUNCTION.

2              SO, FOR EXAMPLE, JUST -- I'M SURE YOUR

3    HONOR IS AWARE OF THIS.  JUDGE POSNER HAS BEEN

4    ISSUING DECISIONS IN ILLINOIS IN WHICH, YOU KNOW,

5    HE'S MADE DETERMINATIONS EVEN BEFORE THE CASE

6    STARTED ABOUT WHETHER INJUNCTIVE RELIEF WOULD BE

7    PERMISSIBLE.

8              BUT, AGAIN, IT GOES TO WHAT, WHAT EXPERTS

9    HAD TESTIFIED ABOUT IN THEIR REPORTS AND WHETHER OR

10   NOT THE PLAINTIFF HAS THE DUTY OF AT LEAST

11   ESTABLISHING THE FACT OF IRREPARABLE INJURY AS PART

12   OF ITS CASE-IN-CHIEF.

13             THE COURT:  BUT WE CAN ALSO DO THAT

14   AFTERWARDS JUST IN THE EVENT THAT YOU PREVAIL.

15             MR. MCELHINNY:  WE CAN DO THAT.

16             THE COURT:  I DON'T THINK THAT NEEDS TO

17   GO BEFORE A JURY.

18             MR. MCELHINNY:  LET ME BE CLEAR.  WE CAN

19   DO THAT.

20             BUT I THINK IT IS ALSO APPROPRIATE FOR

21   OUR DAMAGES EXPERT TO POINT OUT TO THE JURY THAT

22   HIS, HIS CALCULATIONS ARE THE WORLD THAT WAS

23   CALCULATED, THAT THERE IS A WORLD BEYOND THERE

24   WHICH HE COULDN'T CALCULATE.  THAT GIVES CONTEXT TO

25   THE NATURE OF DAMAGES.

25

```
1              THE COURT:  SO WITH REGARD TO

2    MR. MUSIKA'S POINTING TO WHAT HE USED AS FLAWS IN

3    SAMSUNG'S EVIDENCE OF COSTS, I WOULD BE OKAY WITH

4    JUST THE OBJECTIONS TO WHAT HE MAY SEE AS

5    IRREGULARITIES IN THE COSTS CALCULATION, BUT NOT

6    HIS BASICALLY ATTORNEY ARGUMENT THAT THIS IS

7    UNRELIABLE AND SHOULD NOT BE CONSIDERED BY THE

8    JURY.

9              DO YOU WANT TO ADDRESS THAT?

10             MR. MCELHINNY:  I'M GOING TO TURN THIS

11   OVER TO MR. JACOBS AT THAT POINT.

12             MR. JACOBS:  I THINK THE PRECISE VERBAL

13   FORMULATION IS NOT WHAT WE'RE VIGOROUSLY CONTESTING

14   IN SAMSUNG'S MOTION.

15             SO IF YOUR HONOR WOULD LIKE IT FORMULATED

16   IN TERMS "AS AN ACCOUNTANT," OR "AS AN ACCOUNTING

17   EXPERT," OR WHATEVER FORMULATION WE END UP ADOPTING

18   THERE, "I SEE THE FOLLOWING FLAWS IN SAMSUNG'S

19   EVIDENCE OF DEDUCTIBLE COSTS AND FIND IT, AS AN

20   ACCOUNTING EXPERT, UNRELIABLE," THAT WOULD SEEM TO

21   ME TO BE SUFFICIENT FOR OUR PURPOSES.

22             I THINK WHAT -- WHERE I SAW THE ATTORNEY

23   ARGUMENT ISSUE GOING WAS, "THERE WERE ALL THESE

24   MOTIONS, THERE WERE ALL THESE RULINGS FROM THE

25   COURT, AND IT STILL ISN'T SUFFICIENT."
```

1    AND I DON'T THINK WE NEED TO TALK

2 ABOUT -- WE CAN HAVE HIM TALK ABOUT WHAT WAS

3 PRESENTED TO HIM AND WHAT HE EVALUATED.

4    THE COURT:  WELL, WHY DOES HE EVEN HAVE

5 TO SAY IT'S UNRELIABLE?  CAN'T HE JUST SAY WHAT HIS

6 OPINION IS ABOUT THE ACTUAL COST DATA?

7    MR. JACOBS:  WELL, I THINK THAT HIS

8 OPINION IS THAT THEY HAVEN'T SATISFACTORILY

9 PRODUCED EVIDENCE OF THEIR COSTS, THAT THE NUMBERS

10 DON'T FOOT, THAT THEY DON'T TIE BACK, THEY DON'T

11 TIE BACK TO THE S.A.P. DATABASE, THEY DON'T TIE

12 BACK TO PREVIOUS DOCUMENTS.

13    SO I THINK IT'S IN THAT SENSE THAT HE

14 WOULD BE SAYING "THESE NUMBERS ARE NOT -- DO NOT

15 APPEAR RELIABLE TO ME."

16    I'M NOT HUNG UP ON THE WORD "RELIABLE."

17 I HAVEN'T COME UP WITH A SUBSTITUTE, THOUGH, JUST

18 STANDING HERE THAT WILL GET HIS OPINION ACROSS.

19    IT REALLY IS THAT, "I'M LOOKING AT THIS

20 DATA SET.  I'M TRYING TO FIGURE OUT IF THEY'VE

21 SHOWN, THE WAY I WOULD EXPECT DATA TO SHOW

22 DEDUCTIBLE COSTS, AND THIS DATE IS NOT RELIABLE."

23    THE COURT:  WHY DON'T YOU ADDRESS THE

24 POINT THAT SAMSUNG MADE IN THAT MR. MUSIKA SORT OF

25 TAKES INTO ACCOUNT THE FACT THAT APPLE WOULD BE

27

1    UNWILLING TO LICENSE WHEN THE LAW REQUIRES US TO

2    ASSUME THAT PEOPLE, THAT THE PARTIES WILL BE

3    WILLING TO LICENSE.

4          MR. JACOBS:  IT'S JUST STRAIGHT OUT OF

5    GEORGIA PACIFIC.  THE LICENSING POLICY -- THE

6    LICENSING STRATEGY OF THE LICENSOR -- YES, ONE HAS

7    TO ASSUME A WILLING LICENSOR, BUT ONE DOESN'T HAVE

8    TO ASSUME A VERY WILLING LICENSOR AS OPPOSED TO A

9    PRETTY RELUCTANT LICENSOR, A COERCED LICENSOR IN

10   THE GEORGIA PACIFIC CONTEXT.

11         ONE COULD IMAGINE THE ROYALTY RATES BEING

12   QUITE DIFFERENT IF A COMPANY WAS IN THE POSITION

13   OF, "YOU KNOW WHAT?  I WANT TO LICENSE MY

14   TECHNOLOGY.  I WANT TO LICENSE MY DESIGNS.  I WANT

15   TO BE A DESIGN HOUSE FOR THE INDUSTRY."

16         THAT'S PRECISELY THE OPPOSITE OF WHERE

17   APPLE IS.

18         THE COURT:  SO YOU'RE SAYING IT FALLS

19   UNDER THE SECOND GEORGIA PACIFIC FACTOR?

20         MR. JACOBS:  THE --

21         THE COURT:  THE RATES PAID BY THE

22   LICENSEE FOR THE USE OF OTHER PATENTS COMPARABLE?

23   OR WHICH ONE?

24         MR. JACOBS:  I THINK IT GOES -- I THINK

25   IT GOES TO -- I'M SORRY.  GIVE ME A SECOND.

28

```
 1                THE COURT:  OKAY.

 2                (PAUSE IN PROCEEDINGS.)

 3                MR. JACOBS:  I THINK IT WENT TO SEVERAL

 4    GEORGIA PACIFIC FACTORS THAT WE IDENTIFIED.

 5                THE COURT:  I MEAN, I GUESS THE -- YOU

 6    CAN KEEP LOOKING, BUT THE HYPOTHETICAL NEGOTIATION

 7    REQUIRES US TO ASSUME THE FICTION THAT THESE

 8    PARTIES WOULD WANT TO ENTER INTO A LICENSE.

 9                SO IT JUST SEEMS TO BE IN TENSION WITH

10    WHAT THE LAW, THE EXERCISE THE LAW REQUIRES US TO

11    DO.

12                MR. JACOBS:  AND I -- IF IT WERE -- IF

13    THERE WAS A CASE THAT CLEARLY SAID YOU CAN'T TAKE

14    INTO ACCOUNT THE LICENSOR'S POLICY ON LICENSING, I

15    THINK THAT MIGHT HAVE SOME LEGS.

16                BUT, IN FACT, THE FACTORS, VARIOUS OF THE

17    FACTORS, FOR EXAMPLE, IS THERE AN ESTABLISHED RATE,

18    IF YOU WERE A WILLING LICENSOR, YOU WOULD PERHAPS

19    HAVE PUBLISHED A RATE OF YOUR LICENSE FEES.

20                THE FACT THAT YOU'RE NOT A WILLING

21    LICENSOR GOES INTO ONE OF THE -- IS ONE OF THE

22    REASONS THERE'S AN ABSENCE OF AN ESTABLISHED RATE.

23                AND VARIOUS OF THE -- THE FEDERAL CIRCUIT

24    HAS ENDORSED TAKING INTO ACCOUNT THE SIGNIFICANCE

25    IN THE LICENSOR'S BUSINESS MODEL OF THAT WHICH
```

29

1    WOULD BE HYPOTHETICALLY LICENSED.

2           SO I -- OUR VIEW IS THERE'S AMPLE

3    AUTHORITY FOR THE PROPOSITION THAT APPLE'S

4    UNWILLINGNESS TO LICENSE WOULD BE A FACTOR.

5           NOW, IT'S NOT -- YOU KNOW, IT'S JUST A

6    FACTOR, AND I DON'T THINK SAMSUNG HAS POINTED TO A

7    MAJOR TILT IN THE REASONABLE ROYALTY ANALYSIS THAT

8    MR. MUSIKA DID BECAUSE OF THIS FACTOR.

9           HE WRAPS THEM UP INTO, INTO AN ANALYSIS

10   THAT'S A QUALITATIVE ANALYSIS, STARTS WITH THE

11   QUANTITATIVE AMOUNTS, AND THEN COMES UP WITH

12   NUMBERS THAT ARE REASONABLE.

13          THE COURT:  CAN YOU TELL ME WHICH OF THE

14   GEORGIA PACIFIC FACTORS THE UNWILLINGNESS TO

15   LICENSE WOULD FALL INTO?

16          MR. JACOBS:  I THINK I'VE GIVEN YOU A

17   COUPLE, INCLUDING WHETHER THERE'S AN ESTABLISHED

18   RATE; AND THEN THE SIGNIFICANCE OF THE TECHNOLOGY

19   TO THE PLAINTIFF AND THE DEFENDANT.

20          THE COURT:  SO BY "ESTABLISHED RATE," ARE

21   YOU REFERRING TO NUMBER 2?  OR --

22          MR. JACOBS:  WELL, I'M -- THIS SECTION OF

23   OUR -- I DON'T WANT TO JUST REPEAT WHAT'S IN OUR

24   BRIEF TO YOU, YOUR HONOR.  WE'RE AT -- WE'RE AT

25   PAGE 8.

1    THE FEDERAL CIRCUIT HAS AFFIRMED THE

2    RELEVANCE OF A LICENSOR'S UNWILLINGNESS, CITING THE

3    MONSANTO CASE AND THE UPWARD EFFECT.

4         THE COURT:  I READ YOUR BRIEF, AND I'M

5    SAYING I'M NOT --

6         MR. JACOBS:  YOU'RE NOT PERSUADED BY

7    THAT?

8         THE COURT:  RIGHT.

9         MR. JACOBS:  THE FACT THAT WE ARE IN

10   COMPETITION, IN AGGRESSIVE COMPETITION, THAT IS A

11   FACTOR IN THE GEORGIA PACIFIC ANALYSIS, THE

12   BUSINESS RELATIONSHIP BETWEEN THEM.

13        THE COURT:  NUMBER 5.

14        MR. JACOBS:  NUMBER?

15        THE COURT:  NUMBER 5, THE COMMERCIAL

16   RELATIONSHIP BETWEEN LICENSOR AND LICENSEE.

17        MR. JACOBS:  YES, EXACTLY.

18        AND WRAPPED UP IN THAT IS APPLE'S DECIDED

19   UNWILLINGNESS TO LICENSE ITS MOST VIGOROUS RIVAL

20   ITS MOST ESSENTIAL DESIGNS AND TECHNOLOGY.

21        THE COURT:  OKAY.  LET ME GO TO MY LAST

22   QUESTION WITH REGARD TO SAMSUNG'S MOTION, AND THAT

23   IS WITH REGARD TO THE LICENSES THAT MR. MUSIKA

24   ANALYZES WHICH REALLY DON'T SEEM TO BE COMPARABLE

25   LICENSES.

1           DO YOU WANT TO ADDRESS THAT?  I MEAN, HE

2     CONCEDES THAT THEY'RE NOT COMPARABLE, SO WHY ARE

3     THEY ADMISSIBLE OR RELEVANT IF THEY'RE NOT

4     COMPARABLE?

5           MR. JACOBS:  I THINK IT'S THE USE HE

6     MAKES OF THEM.  SO THE LICENSING QUESTION -- THE

7     ONLY LICENSE THAT HE REALLY FACTORS INTO HIS

8     ANALYSIS IS A LICENSE FOR THE MAKING OF

9     COMPLIMENTARY PRODUCTS.

10          THOSE ARE PRODUCTS THAT -- IN CONTRAST TO

11    WHAT WE'RE TALKING ABOUT UNDER THE DISCUSSION WE

12    JUST HAD, WE'RE NOT TALKING ABOUT VIGOROUS RIVALS

13    IN WHICH THEY'RE COMPETING NECK AND NECK FOR MARKET

14    SHARE AND FOR CUSTOMER AFFECTION.

15          THIS IS A LICENSE FOR PRODUCTS THAT

16    ENHANCE THE VALUE OF, SAY, THE IPOD.

17          AND IF THERE IS AN AMOUNT, IF THERE'S AN

18    AMOUNT ASSOCIATED WITH THAT LICENSE IN THAT

19    CONTEXT, THAT TELLS YOU SOMETHING ABOUT A FLOOR FOR

20    WHAT THE LICENSE AMOUNT WOULD BE FOR TECHNOLOGY

21    BETWEEN RIVAL -- INVOLVING RIVALROUS PRODUCTS,

22    INVOLVING HARD, HEAD-TO-HEAD COMPETITIVE PRODUCTS.

23          THAT'S ALL HE USES IT FOR.  HE DOESN'T

24    ACTUALLY INCREMENT ANYTHING UPWARDS.  HE NOTES ITS

25    EXISTENCE AND HE SAYS "THIS AMOUNT IS A FLOOR."

1           THE COURT:  SO I -- WITH REGARD TO

2    MR. MANTIS, I'M GOING TO HAVE TO REVIEW THAT AGAIN

3    BECAUSE I'M STILL NOT FULLY CLEAR ON THE PHONE

4    CONSUMER CONFUSION SURVEYS FOR DILUTION.

5           BUT FOR THE REST OF THEM I'M LIKELY TO

6    DENY THE MOTIONS TO EXCLUDE, WITH THE EXCEPTION OF

7    MR. GODICI, WHICH I ALREADY SAID.

8           MR. MANTIS, IT MAY BE A GRANT IN PART,

9    DENY IN PART, BUT I'D LIKE TO LOOK AT THAT AGAIN.

10          WITH REGARD TO MR. URBACH, THAT'S GOING

11   TO BE A GRANT.  HE'S GOING TO BE EXCLUDED.

12          WITH REGARD TO MR. MUSIKA, IT'S GOING TO

13   BE A GRANT IN PART, DENY IN PART.

14          AND WITH REGARD TO MR. WAGNER, I'M GOING

15   TO GRANT IT AS TO THE THREE DIFFERENT ISSUES WHICH

16   HAVE BEEN RAISED WITH REGARD TO MR. WAGNER IN HIS

17   EXPERT REPORT.

18          SO I'M NOT SURE WHAT TO DO IN THE ABSENCE

19   OF ECF, BECAUSE I WOULD LIKE TO -- I COULD READ AN

20   ORDER SORT OF INTO THE RECORD, WITH THE EXCEPTION

21   OF MR. MANTIS, IF THAT WOULD BE HELPFUL, BECAUSE I

22   DID WANT THE PARTIES TO FURTHER NARROW THEIR CASES

23   NEXT WEEK.

24          WHAT WOULD YOU LIKE?

25          OTHERWISE IF -- I DON'T KNOW HOW LONG ECF

1    IS DOWN.

2              THE CLERK:  THE LATEST WORD IS UNTIL

3    MONDAY.

4              THE COURT:  OH, IT'S DOWN UNTIL MONDAY?

5              THE CLERK:  YES.

6              THE COURT:  OKAY.  ARE WE ABLE TO POST

7    ANYTHING ON THE WEBSITE?

8              THE CLERK:  I'M NOT TOTALLY CLEAR ON

9    THAT.  I DON'T THINK SO.  THERE IS SOMETHING,

10   APPARENTLY, ON THE WEBSITE THAT SAYS IT'S DOWN.

11             THE COURT:  NO, NO.  I'M SORRY.  IF WE

12   ISSUE ANY ORDERS, CAN WE POST THAT ON THE COURT'S

13   WEBSITE SINCE WE CAN'T FILE THEM THROUGH ECF?

14             THE CLERK:  I CAN TRY TO FIND OUT AN

15   ANSWER TO THAT.

16             THE COURT:  OKAY.

17             MR. JACOBS:  WE COULD SEND SOMEBODY TO

18   PICK UP AN ORDER.  IT LOOKS LIKE YOU --

19             THE COURT:  THE OTHER THING IS WE COULD

20   ALSO JUST DO IT BY E-MAIL, BECAUSE I'M CONCERNED

21   THAT APPLE'S OPPOSITION FOR THE MOTION TO STAY IS

22   DUE ON SATURDAY MORNING AT 9:00, AND YOU WILL NOT

23   BE ABLE TO ECF IT, BUT WE DO NEED IT BECAUSE I'M

24   HOPING TO ISSUE AN ORDER ON SUNDAY ON THAT STAY

25   MOTION.

34

```
1              SO HOW ARE WE -- SHOULD WE JUST DO
2     EVERYTHING BY E-MAIL THEN?  I DON'T KNOW HOW BIG --
3              MR. JOHNSON:  I THINK E-MAIL WOULD BE
4     ACCEPTABLE FROM OUR STANDPOINT.
5              MR. JACOBS:  YES, YOUR HONOR.
6              THE COURT:  OKAY.  ALL RIGHT.  BECAUSE
7     I'M HOPING TO -- WELL, I'D LIKE TO HANDLE THE CMC
8     PORTION.  I'M NOT CERTAIN HOW LONG THAT'S GOING TO
9     TAKE.
10             SO IF I HAVE TIME, I GUESS I CAN READ THE
11    DAUBERT ORDER INTO THE RECORD.  IT WOULD BE
12    SLIGHTLY AWKWARD FOR ME, BUT I COULD DO THAT.
13             OTHERWISE WE COULD JUST TRY TO E-MAIL IT
14    TO YOU, AND THEN AS SOON AS ECF IS UP WE CAN POST
15    IT.
16             BUT I WOULD ASSUME -- AND YOU SHOULD
17    ASSUME -- IT'S GOING TO BE CONSISTENT, JUST
18    GRANTING AS TO GODICI, WAGNER, AND URBACH; GRANTING
19    IN PART AND DENYING IN PART AS TO MUSIKA; AND
20    PROBABLY CONTINUING TO GRANT IN PART AND DENY IN
21    PART AS TO MANTIS.
22             AND THEN IF WE -- I DON'T KNOW -- WE
23    WON'T BE ABLE TO GET THIS UP.  I THINK WE'RE NOT
24    ABLE TO EVEN POST IT ON OUR COURT WEBSITE.
25             THE CLERK:  I'M DOUBLE-CHECKING ON THAT
```

```
 1     WITH JUAN.  HE'S BEEN IN COMMUNICATION WITH
 2     MS. MANCUSO.
 3               THE COURT:  OKAY.  ALL RIGHT.
 4               SO PERHAPS AT THE END OF THE HEARING
 5     TODAY, IF YOU COULD JUST LET MS. PARKER BROWN KNOW
 6     WHICH E-MAIL ADDRESSES SHOULD BE INCLUDED AND WE'LL
 7     ALL JUST HAVE TO ISSUE ORDERS AND SERVE PAPERS THAT
 8     WAY.
 9               MR. JACOBS:  FINE.
10               MR. MCELHINNY:  DO WE HAVE -- CAN WE GET
11     YOUR E-MAIL, THE ONE THAT YOU WANT US TO USE?
12               THE COURT:  YES, WE'LL DO THAT, TOO.  I'M
13     NOT GOING TO PUT THAT ON THE RECORD, BUT WE'LL
14     EXCHANGE THAT AS WELL BECAUSE I DO NEED THE STAY
15     OPPOSITION.
16               SO WHAT WE'LL PROBABLY ALSO DO IS TRY TO
17     E-MAIL YOU THE OTHER SUMMARY JUDGMENT ORDER
18     DEPENDING ON WHEN WE FINISH TODAY.  IF NOT TODAY,
19     THEN TOMORROW.  AND IT'S, IT'S A DENIAL AT THIS
20     POINT.  THAT'S THE TENTATIVE.
21               LET'S HANDLE THE CMC PORTION, BECAUSE I
22     THINK THAT MAY TAKE SOME TIME.
23               I ALSO -- I HAVE THE P.I. ORDER READY IN
24     THE OTHER CASE.  WE HAVEN'T BEEN ABLE TO FILE IT
25     SINCE YESTERDAY BECAUSE ECF HAS BEEN DOWN.
```

1            LET'S HANDLE THE CMC PORTION FIRST AND

2     THEN WE CAN -- BECAUSE OF OUR TECHNICAL

3     DIFFICULTIES, I THINK WE MAY JUST HAVE TO HAND IT

4     OUT TODAY.  OKAY?

5            LET ME -- I GUESS LET'S FIRST DO SOME

6     JUST GENERAL PLANNING.  FOR -- WELL, ACTUALLY, I

7     WANTED TO ASK ONE MORE QUESTION, AND THAT WAS TO

8     APPLE.

9            THE JURY MEMBERS WOULD BE ORDINARY

10    OBSERVERS, SO WHY DO WE NEED ANY EXPERT TESTIMONY

11    ABOUT WHAT ORDINARY OBSERVERS THINK AND PERCEIVE?

12            MR. MCELHINNY:  I THINK THE ANSWER TO

13    THAT, YOUR HONOR, IS THAT WHILE IT IS TRUE THAT THE

14    JURY MEMBERS, TRIERS OF FACT ARE ORDINARY

15    OBSERVERS, THEY ARE NOT PEOPLE WHO HAVE EVER

16    THOUGHT OF THEMSELVES IN THAT REGARD BEFORE, AND SO

17    WHAT DESIGN EXPERTS TEND TO DO IS TO TALK ABOUT HOW

18    DESIGNS ARE PERCEIVED, HOW THEY ARE GENERALLY

19    PERCEIVED, WHAT'S THE RIGHT WAY TO DO THE

20    COMPARISON, AND THEY BRING AN EXPERT DIMENSION TO

21    THE ISSUE OF HOW OBSERVERS GENERALLY LOOK AT THESE

22    ISSUES.

23            AND THEY'RE TRADITIONALLY -- I MEAN, THEY

24    ARE TRADITIONALLY ALLOWED IN DESIGN PATENT CASES

25    FOR THAT REASON.

37

1              I -- I WANT TO SAY I HOPE THEY WERE

2       HELPFUL TO YOU WHEN YOU WERE, YOU KNOW, WHEN YOU

3       WERE DOING THIS, NOT BECAUSE THEY ASSUME YOUR ROLE,

4       AND ULTIMATELY YOU MADE THE DETERMINATION, BUT THEY

5       ARE HELPFUL IN TERMS OF IDENTIFYING AREAS OF

6       DESIGN, IDENTIFYING WHAT PROMOTES.

7              AND THEY ALSO -- THEY ARE CRITICAL TO THE

8       ISSUE OF COMBINATION FOR OBVIOUSNESS, BECAUSE AS

9       YOUR HONOR WILL RECALL, WHILE THE ULTIMATE

10      QUESTION -- AND ONCE YOU HAVE THESE DESIGNS, THE

11      OBVIOUS QUESTION IS HOW AN ORDINARY OBSERVER LOOKS

12      AT THEM.

13             BUT THE QUESTION OF WHETHER OR NOT A

14      SECONDARY TEACHING LENDS ITSELF TO COMBINATION,

15      THAT IS DONE THROUGH THE EYES OF AN INDIVIDUAL OF

16      ORDINARY SKILL IN THE ART, SO THAT DOES REQUIRE

17      THIS QUESTION OF WHETHER OR NOT SECONDARY EXAMPLES

18      SUGGEST THE COMBINATION.

19             THE COURT:  ALL RIGHT.  CAN WE JUST DO

20      SOME HIGH LEVEL PLANNING JUST FOR THE REST OF THIS

21      MONTH?

22             SO WITH REGARD TO THE -- LET'S DO THE --

23      THE MOTION FOR A STAY OF THE TABLET P.I. SHOULD BE

24      FULLY BRIEFED BY SATURDAY.

25             I'M, HOPEFULLY, GOING TO GET AN ORDER OUT

1    BY SUNDAY, HOPEFULLY.

2             WHAT HAPPENS NEXT?  IF I STAY IT OR I

3    DON'T STAY IT, I ASSUME IT'LL GET APPEALED.

4             I'M JUST TRYING TO FIGURE OUT WHAT ARE

5    ALL THE DIFFERENT BALLS THAT WILL BE IN THE AIR

6    OVER THE NEXT FOUR WEEKS BEFORE WE GET TO TRIAL.

7             SO WHAT HAPPENS NEXT WITH THE STAY

8    MOTION, REGARDLESS OF HOW IT COMES OUT?

9             MR. JOHNSON:  WELL, A NOTICE OF APPEAL

10   HAS ALREADY BEEN FILED, YOUR HONOR.

11            THE COURT:  I UNDERSTAND THAT.  BUT I

12   ASSUME YOU'LL ALSO WANT A SEPARATE -- WHOEVER LOSES

13   ON THE STAY MOTION WILL WANT TO APPEAL THAT, TOO;

14   RIGHT?

15            MR. JOHNSON:  THAT'S CORRECT.

16            THE COURT:  SO ONCE I ISSUE THE ORDER ON

17   THE STAY, THEN IT'S OUT OF MY HANDS AND THEN IT

18   WILL JUST GO UP; RIGHT?

19            MR. MCELHINNY:  I THINK THAT'S -- AS I

20   READ THEIR PAPERS, SAMSUNG IS ASKING FOR TWO

21   ALTERNATIVES.  ONE, THEY'RE ASKING YOU TO STAY THE

22   INJUNCTION FOR THE ENTIRE LENGTH OF THE APPEAL

23   PROCESS, WHICH YOU HAVE THE AUTHORITY TO DO.

24            BUT AS I UNDERSTAND IT, THEY MADE AN

25   ALTERNATIVE REQUEST, THAT IF YOUR HONOR DOESN'T

39

1    GRANT THAT, THAT YOU STAY IT FOR SOME SHORTER

2    PERIOD OF TIME TO PERMIT THE FEDERAL CIRCUIT TO

3    DETERMINE WHETHER OR NOT TO GRANT A STAY ON ITS

4    OWN.

5              SO I THINK THE ANSWER -- WELL, IF YOUR

6    HONOR GRANTS A STAY, EITHER OF THOSE STAYS, I DON'T

7    THINK APPLE APPEALS EITHER OF THOSE ORDERS.

8              OBVIOUSLY WE'RE GOING TO OPPOSE THE STAY.

9    WE THINK THAT THAT WOULD BE REALLY UNFORTUNATE

10   GIVEN THE FACTS OF THIS CASE AND THE CIRCUMSTANCES.

11             BUT THE LAW IS THAT IT'S WITHIN YOUR

12   HONOR'S DISCRETION WHETHER OR NOT TO GRANT A STAY.

13             THE COURT:  OKAY.  LET'S HYPOTHETICALLY

14   SPEAK FOR THE NEXT P.I.

15             I ASSUME THAT ONE ALSO, IF A P.I. IS

16   ISSUED, THERE WILL BE A MOTION FOR A STAY.  OR WHAT

17   WOULD THE PROCESS BE?

18             MR. MCELHINNY:  AGAIN, IT WOULD BE --

19   WELL, I CAN'T SPEAK FOR SAMSUNG.

20             IF YOU ISSUE -- IF YOU ISSUE A

21   PRELIMINARY INJUNCTION, THEY WILL SEEK -- THEY WILL

22   FILE AN IDENTICAL MOTION ASKING YOU TO STAY IT FOR

23   THE FULL PERIOD OF THE APPEAL OR TO STAY IT IN

24   ORDER TO GIVE THE FEDERAL CIRCUIT -- THE STAY ISN'T

25   DOUBLE GATED.  YOUR HONOR HAS THE AUTHORITY TO

                                                    40

1    GRANT A STAY.

2           IF YOU DENY A STAY, THE FEDERAL CIRCUIT

3    HAS THE AUTHORITY TO GRANT A STAY, AND THEY WILL

4    ASK FOR AN ALTERNATIVE STAY IN THE SAME WAY.

5           APPLE, GIVEN THE IRREPARABLE INJURY

6    ISSUES, WILL OPPOSE THAT.

7           THE COURT:  ALL RIGHT.  WELL, WHAT I WAS

8    HOPING, AND THE REASON WHY I BROUGHT IN THE WHITE

9    BOARD, IS THERE'S GOING TO BE SO MANY BALLS IN THE

10   AIR OVER THE NEXT FOUR WEEKS, I'D LIKE US TO SORT

11   OF PLOT OUT BRIEFING SCHEDULES; IF NECESSARY,

12   HEARING SCHEDULES; AN ADDITIONAL PRETRIAL

13   CONFERENCE; I'D LIKE TO SPLIT UP THE ONE ON THE

14   18TH TO JUST BE ON MOTIONS IN LIMINE; AND THE ONE

15   ON THE -- YOU KNOW, HOPEFULLY THE FOLLOWING WEEK TO

16   BE JUST ON JURY INSTRUCTIONS.

17          SO I'D LIKE TO JUST SORT OF PLOT OUT

18   EVERYTHING.  OTHERWISE I THINK THERE WILL BE A LOT

19   OF TIDAL WAVES AND I'M GOING TO GET WIPED OUT

20   REPEATEDLY.

21          MR. MCELHINNY:  I KNOW, YOUR HONOR.

22          I JUST HAVE TO CORRECT SOMETHING.  I WAS

23   IMMEDIATELY TOLD THAT, DEPENDING ON WHAT YOUR

24   ORDER -- IF YOUR ORDER DID GRANT A STAY, BECAUSE IT

25   WOULD, IN OUR EFFECT, EVISCERATE THE ORDER THAT YOU

1    GAVE US, WE MAY, IN FACT, APPEAL THAT.

2              SO -- BUT THE PROCESS IS THE SAME.

3              THE COURT:  YEAH.  THEN IT JUST GOES UP

4    AND I HAVE NOTHING FURTHER TO DO.

5              MR. MCELHINNY:  THAT'S CORRECT.

6              THE COURT:  OKAY.  ALL RIGHT.

7              WELL, WHY DON'T WE HANDLE THESE OTHER

8    SORT OF SCHEDULING ISSUES AND THEN I WOULD LIKE TO

9    HANDLE THE P.I. AND TALK ABOUT THAT.

10             WHEN CAN BOTH SIDES FURTHER NARROW YOUR

11   CASE, UNDERSTANDING I'VE NOW GIVEN YOU -- YOU'LL

12   HAVE THE ORDER ON THE SECOND SUMMARY JUDGMENT BY

13   E-MAIL HOPEFULLY, HOPEFULLY TODAY.

14             I'VE GIVEN YOU WHAT THE DAUBERT RULINGS

15   ARE GOING TO BE.

16             CAN YOU DO THAT BY NEXT TUESDAY?  WHAT'S

17   YOUR --

18             MR. JOHNSON:  YOUR HONOR, FROM SAMSUNG'S

19   PERSPECTIVE, WE'D ASK THAT WE BE GIVEN UNTIL THE

20   5TH, JUST GIVEN THE TIME DIFFERENCES WITH A CLIENT

21   WHO'S ABROAD.  SO IF WE COULD HAVE UNTIL THE 5TH, I

22   THINK WE COULD GET BACK TO YOUR HONOR ON NARROWING

23   THE CASE.

24             THE COURT:  SURE.  NOW, WOULD THAT GIVE

25   YOU ENOUGH TIME TO DO ALL OF THE MEETING AND

1   CONFERRING AND PRETRIAL PREPARATION?  BECAUSE MY

2   DEADLINES ARE -- YOU KNOW, 14 DAYS BEFORE

3   JANUARY 18TH WOULD BE -- OR JUNE -- FROM JULY 18TH

4   WOULD BE JULY 4TH.  SO --

5           MR. LEE:  YOUR HONOR, I DON'T WANT TO

6   QUIBBLE ABOUT TWO DAYS.

7           IT MIGHT HELP IF WE COULD DESCRIBE TO

8   YOUR HONOR, WE HAVE MET AND CONFERRED ON THE ORDER

9   OF PROOF AT TRIAL, AND I THINK WE HAVE AGREEMENT --

10          THE COURT:  OKAY.

11          MR. LEE:  -- SUBJECT TO YOUR HONOR'S

12  APPROVAL.

13          THE COURT:  OKAY.

14          MR. LEE:  AND I THINK THE WAY WE SEE IT

15  GOING IS APPLE WOULD PUT IN ITS AFFIRMATIVE PROOF

16  ON ITS OFFENSIVE PATENT TRADE DRESS, TRADEMARK

17  CASE.

18          SAMSUNG WOULD THEN REBUT THAT CASE AND

19  PRESENT THEIR AFFIRMATIVE PATENT CASE ON WHATEVER

20  PATENTS THEY ARE PURSUING.

21          APPLE WOULD THEN TAKE THE FLOOR AGAIN AND

22  IT WOULD PRESENT ITS REBUTTAL TO WHATEVER

23  INVALIDITY ATTACKS ON THE APPLE PATENTS SAMSUNG HAD

24  MADE, AND WOULD PRESENT ITS NON-INFRINGEMENT AND

25  INVALIDITY ATTACKS ON THE SAMSUNG PATENTS AND THE

43

1    ANTITRUST AND FRAND RELATED DEFENSES.

2          AND THEN LASTLY, SAMSUNG WOULD REBUT THE

3    INVALIDITY ATTACKS THAT APPLE HAS MADE ON SAMSUNG'S

4    PATENTS AND REBUT THE FRAND AND ANTITRUST DEFENSES.

5          I THINK WE AGREE THAT THAT'S THE ORDER,

6    WITHIN YOUR HONOR'S TIME LIMITS.

7          I DO THINK THAT WE NEED TO FIGURE OUT,

8    PARTICULARLY FOR THOSE OF US WHO ARE GOING TO BE

9    TRYING THE LATTER PORTIONS OF THE CASE, WHICH IS

10    FOCUSSED ON BOTH SIDES OF THE AISLE HERE, JUST IN

11    TERMS OF WHAT WE'RE GOING TO TRY, WHO THE WITNESSES

12    ARE, WHEN WE CAN HAVE THEM IN.  THE SOONER WE KNOW

13    EXACTLY WHAT IT'S GOING TO BE, THE BETTER.

14          AS WE PREPARE RIGHT NOW FOR THAT THIRD

15    PHASE, I'M STILL LOOKING AT FOUR ESSENTIAL -- WELL,

16    NOW THREE ESSENTIAL PATENTS, THREE NON-ESSENTIAL

17    PATENTS, AND THE RELATED CLAIMS.

18          SO THE SOONER WE CAN GET THAT PARED DOWN,

19    THE BETTER, I THINK, FOR EVERYBODY.

20          MR. JOHNSON:  AND FROM OUR STANDPOINT, I

21    THINK THE 5TH -- IF WE CAN GET BACK TO YOUR HONOR

22    ON THE 5TH AND EXPLAIN WHERE WE'RE COMING FROM --

23    PART OF IT ALSO IS GOING TO BE LOOKING AT WHAT

24    APPLE IS GOING TO DO AND HOW THEY'RE GOING TO

25    NARROW THEIR PART OF THE CASE.

1          SO THE 5TH I THINK SHOULD GIVE US PLENTY

2     OF TIME TO MEET -- WE'VE BEEN TALKING TO THEM ABOUT

3     THE ORDER AND I THINK WE REACHED AGREEMENT IN THAT

4     RESPECT, AND SO WE SHOULD BE ABLE TO WORK THROUGH

5     AND CONTINUE TO MEET AND CONFER ON IT.

6          THE COURT:  WELL, RIGHT NOW THE LAST DAY

7     TO FILE THE JOINT PRETRIAL STATEMENT, ALL YOUR

8     EXHIBITS, MOTIONS IN LIMINE IS THE 3RD, WHICH IS

9     TUESDAY.  SO HOW MUCH IS ALL THAT GOING TO BE

10    POSTPONED?

11         MR. JOHNSON:  YOUR HONOR, WE WEREN'T

12    ANTICIPATING POSTPONING THAT, BUT WE COULD, IF WE

13    HAD UNTIL THE 5TH, FILE ALL OF THAT ON THE 6TH.

14         MR. MCELHINNY:  IF I MAY, YOUR HONOR?

15         THE COURT:  UM-HUM.

16         MR. MCELHINNY:  JUST -- WE'VE DONE THIS

17    TWICE NOW AND OUR POSITION IS THAT WE HAVE, IN EACH

18    CASE, MADE -- TAKEN SUBSTANTIAL STEPS TO NARROW OUR

19    CASE, AND OUR VIEW IS WE'VE -- WE HAVE SAID BEFORE

20    TO THE COURT THAT SAMSUNG HAS TREATED THIS VERY

21    STRATEGICALLY.

22         THEY'VE TOLD US, THEY'VE TOLD YOU, THAT

23    THEY HAVE ADDITIONAL CLAIMS THAT THEY COULD STRIKE.

24    THEY HAVEN'T.

25         WE'RE DOWN AT THE MOMENT -- WE'RE GOING

                                                        45

1    TO NARROW OUR CASE FURTHER.  THAT'S NOT WHERE WE'RE

2    GOING.  BUT WE'RE DOWN AT THE POINT NOW WHERE WE

3    ONLY HAVE FOUR PATENT CLAIMS LEFT.

4              THEY STILL HAVE SEVEN.

5              WHAT MR. LEE IS TELLING YOU IS THAT THE

6    ANTITRUST CLAIMS, THE CONTRACT CLAIMS, THE DEFENSES

7    ALL RISE AND FALL ON STRATEGIC DECISIONS THAT

8    SAMSUNG HAS TO MAKE.

9              YOUR HONOR TOLD US THE LAST TIME WE WERE

10   HERE THAT WE WERE GOING TO HAVE TO DO THAT TODAY.

11   I ASKED YOU FOR TUESDAY.

12             YOU SOLD SAMSUNG YOU WERE UNHAPPY WITH

13   THEM, AND NOW THEY'RE HERE SAYING, BECAUSE OF TIME

14   DIFFERENCES, THEY NEED UNTIL THE DAY BEFORE ALL OUR

15   FILINGS ARE DUE, AND THAT'S GOING TO BE STRATEGIC

16   AGAIN.

17             SO I -- THINKING THAT THERE'S ONLY GOING

18   TO BE ONE MORE STEP IN THIS I JUST THINK IS WRONG.

19             THE COURT:  ALL RIGHT.

20             MR. JOHNSON:  AND JUST TO REMIND YOUR

21   HONOR OF WHERE WE CAME FROM, WE HAVE -- WE'VE

22   REDUCED OUR CASE FROM, WHAT WAS IT, TWELVE PATENTS

23   AT THE BEGINNING.  WE'RE NOW DOWN TO SIX AT THIS

24   POINT.

25             WE STILL HAVE THE LARGE TRADE DRESS, SOFT

46

1    INTELLECTUAL PROPERTY CLAIMS THAT APPLE HAS SAID

2    THEY'RE GOING TO NARROW.

3             AND IF YOUR HONOR WOULD PREFER THAT YOU

4    HAVE AN ANSWER FROM US ON NARROWING BY JULY 3RD, WE

5    WILL -- WE'LL DO IT BY JULY 3RD.

6             BUT WE HAVE TO TAKE INTO ACCOUNT WHAT THE

7    ORDER IS GOING TO SAY, WE HAVE NOW THE ORDER THAT

8    YOU HANDED OUT WITH RESPECT TO SUMMARY JUDGMENT

9    MOTIONS, AND WE UNDERSTAND THE DAUBERT ISSUES.

10            BUT THERE'S OBVIOUSLY -- I MEAN, WE'LL

11   CONTINUE TO MEET AND CONFER WITH THEM ON TRYING TO

12   REDUCE IT FURTHER.

13            THE COURT:  LET'S -- WELL, LET'S DO THE

14   NARROWING ON TUESDAY, JULY 3RD, BECAUSE YOU HAVE

15   THE SUMMARY JUDGMENT ORDER; YOU'LL GET THE DAUBERT

16   ORDER IF I DON'T JUST READ IT INTO THE RECORD;

17   YOU'LL GET THE SUMMARY JUDGMENT ORDER; THE OTHER

18   ONE IS, YOU KNOW, VIRTUALLY READY.

19            SO YOU'LL HAVE ALL OF THAT INFORMATION

20   HOPEFULLY, YOU KNOW, TODAY OR AT LEAST THIS

21   WEEKEND.  SO I THINK THAT SHOULD BE ENOUGH TIME,

22   HOPEFULLY.

23            SO THEN HOW -- WHAT I'D LIKE TO DO, AND

24   MAYBE WE DON'T -- MAYBE I SHOULD JUST ASK THE

25   PARTIES TO SEE IF YOU CAN WORK OUT A SCHEDULE

```
 1    WHERE, IF YOU NEED TO SLIGHTLY ADJUST ALL OF
 2    THESE -- WELL, WHY DON'T WE JUST MOVE THE JULY 3RD
 3    FILING DATES?  YOU WANT TO MOVE THAT TO -- DO YOU
 4    WANT TO MOVE THOSE TO THE 5TH AND HAVE THE
 5    OPPOSITIONS TO MOTIONS IN LIMINE DUE -- CURRENTLY
 6    THEY'RE SCHEDULED ON THE 8TH, BUT THAT'S EVEN A
 7    SUNDAY, WHICH MAKES NO SENSE, SO WE COULD MOVE IT
 8    TO THE 10TH.  WOULD THAT GIVE YOU ENOUGH TIME?
 9              MR. JOHNSON:  THAT'S FINE FROM OUR
10    STANDPOINT, YOUR HONOR.
11              THE COURT:  OKAY.
12              MR. MCELHINNY:  THAT'S FINE FROM OUR
13    STANDPOINT.
14              THE COURT:  ALL RIGHT.  THANK YOU.
15              SO NARROWING OF THE CASE WILL HAPPEN ON
16    JULY 3RD; FILE YOUR JOINT PRETRIAL STATEMENTS,
17    MOTIONS IN LIMINE ON JULY 5TH; OPPOSITIONS TO
18    MOTIONS IN LIMINE ON JULY 10TH.
19              LET'S KEEP JULY 11TH FOR VOIR DIRE
20    QUESTIONS.
21              NOW, ON THE JURY INSTRUCTIONS, AND
22    ACTUALLY EVEN THE VERDICT -- WELL, THE VERDICT
23    FORMS ARE PRETTY SHORT.
24              BUT ON THE JURY INSTRUCTIONS, I WOULD
25    LIKE YOU ALL TO MEET AND CONFER AND PRODUCE TWO
```

48

1    JOINT SETS.  ONE WILL BE A JOINT SET OF EVERYTHING

2    THAT YOU STIPULATE TO; AND THEN ANOTHER SET WILL BE

3    WHAT YOU HAVE DIFFERENCES ABOUT; AND THEN IF YOU

4    WOULD INCLUDE YOUR COMPETING INSTRUCTIONS WITH JUST

5    ONE PARAGRAPH SAYING WHY YOURS IS SUPERIOR TO THE

6    OTHER ONE.  OKAY?

7            SO WHEN CAN YOU FILE THAT, THAT SORT OF

8    JOINT DISPUTED AND JOINT UNDISPUTED JURY

9    INSTRUCTIONS?

10           MR. JOHNSON:  YOUR HONOR, WE WERE

11   PLANNING ON FILING THAT ON THE 11TH.

12           THE COURT:  OKAY.  BUT WITH THIS

13   ADDITIONAL REQUIREMENT, IS THAT STILL DOABLE?

14           MR. JOHNSON:  I THINK THAT'S FINE FROM

15   OUR STANDPOINT.

16           THE COURT:  OKAY.  AND SINCE WE'RE GOING

17   TO GIVE OUT ALL THE E-MAIL ADDRESSES, IF YOU WOULD

18   PLEASE E-MAIL IT AS WELL SO THAT WE CAN JUST USE

19   THAT IN PRODUCING OUR INSTRUCTIONS.

20           OKAY.  NOW, THE DEPOSITION EXCERPTS, HOW

21   FAR IN ADVANCE DO YOU NEED TO KNOW WHAT THE RULING

22   ON OBJECTIONS IS GOING TO BE?  HOW FAR IN ADVANCE

23   DO YOU NEED TO KNOW THAT TO MAKE -- YOU KNOW, TO

24   ACTUALLY DO YOUR SLICING AND CREATION OF YOUR

25   VIDEOS?

49

1           MR. MCELHINNY:  WE CAN DO THAT IN 24

2     HOURS, YOUR HONOR.

3                THE COURT:  OH.  IS THAT ALL RIGHT?

4                MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

5                MR. JOHNSON:  THAT'S FINE.

6                THE COURT:  OKAY.  BECAUSE WOULD IT MAKE

7     MORE SENSE THEN -- BECAUSE WHAT I WAS GOING TO DO

8     IS ALSO REQUIRE THAT FOR EXHIBITS, I WOULD LIKE YOU

9     TO EXCHANGE YOUR ACTUAL EXHIBITS WITH EACH OTHER

10    AND MEET AND CONFER AND SEE IF YOU CAN RESOLVE AS

11    MANY OBJECTIONS AS POSSIBLE, AND THEN I DON'T WANT

12    TO ACTUALLY RULE ON ANY OBJECTION UNTIL I KNOW THAT

13    YOU'RE ACTUALLY GOING TO USE THAT DOCUMENT.

14                SO THEN YOU PRESENT IT TO ME, LIKE, 24

15    HOURS BEFORE YOU'RE ACTUALLY GOING TO USE IT.  DOES

16    THAT SOUND OKAY?

17                BUT IN THE MEANTIME, I WOULD LIKE A COPY

18    OF WHAT YOUR FINAL EXHIBITS ARE WITH WHAT YOUR

19    OBJECTIONS ARE IN ADVANCE.

20                SO WHEN CAN YOU PROVIDE THAT?

21                MR. JACOBS:  WE SEE IT AS CURRENTLY ON

22    YOUR SCHEDULE, YOUR HONOR, ON THE 13TH, AND THAT

23    WAS OUR PLAN.

24                THE COURT:  THAT'S WHEN YOU CAN DO IT?

25    OKAY.

50

1          MR. JOHNSON:  AND YOUR HONOR, JUST UNDER

2     THE CURRENT SCHEDULE, WE WERE DUE TO EXCHANGE

3     EXHIBIT LISTS TODAY.

4          THE COURT:  UM-HUM.

5          MR. JOHNSON:  AND THAT'S WHAT THE PARTIES

6     PLANNED TO DO.

7          THE COURT:  OKAY.

8          MR. JOHNSON:  AND THEN EXCHANGE EXHIBITS

9     ON THE 3RD.

10          BUT GIVEN YOUR HONOR'S DATE OF JULY 3RD

11     BASICALLY TO PROVIDE THE CASE NARROWING STATEMENTS,

12     THERE'S NO SENSE -- AT LEAST, WE'D ASK TO BE GIVEN

13     UNTIL JULY 3RD TO DO THE EXCHANGE OF EXHIBIT LISTS

14     SINCE IF THEY'RE GOING TO NARROW PART OF THEIR

15     CASE, WE'RE GOING TO NARROW PART OF OUR CASE, I

16     THINK THE PARTIES WILL BE ABLE TO RETOOL WHAT THE

17     CASE WILL LOOK LIKE IF CERTAIN PATENTS ARE GOING TO

18     DROP OFF ON OUR SIDE AND THEIR SIDE.

19          THE COURT:  WELL, WHY DON'T --

20          MR. MCELHINNY:  I ACTUALLY THINK THE

21     5TH --

22          THE COURT:  THAT'S WHAT I WAS GOING TO

23     SAY.  WHY DON'T, ON THE 5TH OF JULY, YOU EXCHANGE

24     BOTH, NOT ONLY THE LIST, BUT THE ACTUAL EXHIBITS?

25     IS THAT DOABLE?

1          MR. JOHNSON:  THAT'S FINE.

2          THE COURT:  OKAY.  SO THE LIST AND THE

3     ACTUAL EXHIBITS GO OUT ON THE 5TH OF JULY, AND THEN

4     WHEN YOU FILE -- YOU WERE PLANNING ON THE 13TH TO

5     FILE THE ACTUAL EXHIBITS WITH OBJECTIONS?  IS THAT

6     RIGHT?

7          MR. JACOBS:  YES.

8          MR. JOHNSON:  YES.

9          THE COURT:  OKAY.  ALL RIGHT.  SO THEN --

10    AND I'M HOPING THAT MANY OF YOUR OBJECTIONS WILL BE

11    DEALT WITH IN YOUR MEET AND CONFER.

12         ALL RIGHT.  AND THEN I'M GOING TO HANDLE

13    THE OBJECTIONS TO DEPO DESIGNATIONS AND EXHIBITS

14    THE SAME WAY, JUST 24 HOURS IN ADVANCE OF WHEN YOU

15    TELL ME YOU'RE ACTUALLY GOING TO USE IT.  THAT

16    MAKES THINGS A LOT SIMPLER.

17         MR. JACOBS:  IF WE COULD JUST PROPOSE A

18    SLIGHT MODIFICATION TO THAT?

19         THE COURT:  YEAH.

20         MR. JACOBS:  I THINK IF WE GOT A RULING

21    FROM YOUR HONOR 24 HOURS IN ADVANCE, THAT WOULD BE

22    TERRIFIC.  WE COULD GIVE YOU NOTICE 48 HOURS IN

23    ADVANCE.

24         THE COURT:  WELL, LET ME ASK YOU, HOW

25    MUCH DO YOU THINK YOUR DECISION AS TO WHETHER

1    YOU'RE GOING TO CALL SOMEONE LIVE OR BY VIDEO OR

2    NOT CALL THEM AT ALL, HOW MUCH DOES THAT DEPEND ON

3    HOW THE TRIAL GOES?  OR HAVE YOU REALLY -- DO YOU

4    FEEL PRETTY FIRM ABOUT THOSE KINDS OF JUDGMENT

5    CALLS NOW?

6          MR. JOHNSON:  YOUR HONOR, IT'S GOING TO

7    DEPEND FROM SAMSUNG'S STANDPOINT.

8          THE COURT:  OKAY.  ON HOW THE TRIAL GOES?

9          MR. JOHNSON:  THAT'S EXACTLY RIGHT.

10          THE COURT:  OKAY.  SO MAYBE IT DOESN'T

11    MAKE ANY SENSE TO -- OKAY.  SO IF YOU THEN COULD

12    GIVE ME -- 48 HOURS IS OKAY.  A LITTLE BIT LONGER

13    MIGHT BE BETTER.

14          I GUESS IT DEPENDS ON THE VOLUME.  IF

15    IT'S A BIG VOLUME, IN ORDER FOR ME TO GET YOU AN

16    ANSWER IN 24 HOURS, A LITTLE BIT MORE LEAD TIME

17    WOULD HELP.

18          BUT IF IT'S A RELATIVELY NARROW SET,

19    THAT'S OKAY.

20          CAN YOU DO IT A LITTLE BIT MORE THAN 48

21    HOURS IN ADVANCE, OR NOT?

22          MR. JACOBS:  SURE.

23          MR. MCELHINNY:  YES, YOUR HONOR.

24          THE COURT:  WHAT IS DOABLE?  AND I

25    UNDERSTAND -- I DON'T WANT TO DO IT WITH TOO MUCH

1      OF A LEAD TIME BECAUSE YOU MAY CHANGE YOUR MIND.

2              MR. JOHNSON:  AND ACTUALLY, WE MAY BE

3      REDUCING THE DESIGNATIONS AS WE GET CLOSER TO WHEN

4      THEY GET CALLED.

5              IT'S A LITTLE BIT OF A FINE LINE.  IF WE

6      GIVE IT TO YOU TOO EARLY, WE'RE GOING TO BE GIVING

7      YOU THINGS THAT WE MAY NOT END UP ACTUALLY USING.

8              THE COURT:  OKAY.  48 HOURS, IF THAT'S

9      THE BEST, THAT'S OKAY.

10             MR. MCELHINNY:  I HAVE A SLIGHTLY

11     DIFFERENT ISSUE ABOUT THE EXHIBITS, YOUR HONOR.

12             THE COURT:  WHAT'S THAT?

13             MR. MCELHINNY:  AS YOU KNOW, YOU'VE GIVEN

14     US 125.  IF WE DON'T FIND OUT UNTIL THE DAY

15     BEFORE -- I MEAN, THEORETICALLY, YOUR HONOR, IF

16     THERE'S GOING TO BE AN OBJECTION THAT WE CAN'T WORK

17     OUT AND YOUR HONOR SUSTAINS THE OBJECTION, I'M SURE

18     EACH PARTY WOULD LIKE TO REPLACE THE ONE THAT GOT

19     DINGED WITH A DIFFERENT ONE.

20             THE COURT:  OKAY.

21             MR. MCELHINNY:  I'M WONDERING IF THERE'S

22     SOME WAY WE CAN GET RULINGS ON OBJECTIONS MORE THAN

23     THE DAY BEFORE A WITNESS TESTIFIES.

24             THE COURT:  HOW MUCH EARLIER?

25             MR. MCELHINNY:  TO SATISFY MY CONCERNS,

```
 1    IT WOULD ACTUALLY HAVE TO BE BEFORE THE TRIAL
 2    STARTED.
 3              THE COURT:  HM.
 4              MR. JOHNSON:  I THINK WE'RE GOING TO HAVE
 5    THE SAME ISSUE EVEN MORE SO WITH EXHIBITS, THAT
 6    IT'S GOING TO DEPEND ON WHAT THE TESTIMONY IS THAT
 7    COMES IN AND WHAT THE EVIDENCE IS.
 8              MR. MCELHINNY:  NO, NO.  LET'S MAKE SURE
 9    I'M TALKING ABOUT THE SAME THING.
10              WE'RE EXCHANGING THE LISTS OF 125
11    EXHIBITS.  THE QUESTION IS, IF AN OBJECTION IS
12    SUSTAINED TO ONE SO THAT IT FALLS OFF THE LIST,
13    WOULDN'T YOU WANT TO REPLACE THAT?
14              MR. JOHNSON:  BUT I THINK MR. JACOBS AND
15    I TALKED ABOUT A POSSIBLE PROCEDURE FOR THAT,
16    RIGHT, WITH RESPECT TO --
17              MR. JACOBS:  WE DIDN'T GET VERY FAR.
18              MR. JOHNSON:  WE TALKED ABOUT,
19    ESSENTIALLY, A MAY CALL LIST.
20              I THINK IT WOULD BENEFIT THE PARTIES TO
21    TALK FURTHER.
22              MR. MCELHINNY:  WE'LL TALK FURTHER, YOUR
23    HONOR.
24              MR. JOHNSON:  AND WE'LL COME UP WITH A
25    PROCEDURE.
```

1          THE COURT:  OKAY, YEAH.  I SHARE
2     MR. JOHNSON'S CONCERN.  IF IT'S TOO FAR IN ADVANCE,
3     I'M GOING TO BE DOING A LOT OF EXTRA WORK BECAUSE
4     YOU MAY NOT ULTIMATELY USE IT.
5          BUT IF YOU COULD WORK OUT SOMETHING,
6     THAT'S FINE.
7          ALL RIGHT.  DID I GIVE YOU A LIMIT ON
8     MOTIONS IN LIMINE?
9          MR. MCELHINNY:  YOU DID, YOUR HONOR.  YOU
10    GAVE TEN TO EACH SIDE.
11         THE COURT:  OKAY.
12         MR. MCELHINNY:  AND A PAGE LIMIT AS WELL,
13    AND I JUST DON'T REMEMBER THE PAGE LIMIT.
14         THE COURT:  OKAY.  I HOPE IT WAS VERY
15    LIMITED.
16         MR. MCELHINNY:  IT WAS -- IT WAS NOT
17    EXTRAVAGANT.
18         THE COURT:  I HOPE IT WAS STINGY.
19         (LAUGHTER.)
20         THE COURT:  OKAY.  THE JOINT PRETRIAL
21    STATEMENT, YOU'RE JUST GOING TO GO AHEAD AND THAT'S
22    GOING TO BE MOVED TO THE 5TH WHEN YOU NARROW YOUR
23    CASE.
24         NOW, THE -- WHAT I WOULD LIKE, SINCE YOU
25    ALL HAVE RESOURCES AND THE COURT DOESN'T, IS FOR

1       YOUR MOTIONS IN LIMINE AND FOR YOUR, EVEN THE JURY

2       INSTRUCTIONS, IT WOULD BE HELPFUL IF YOU ALL COULD

3       PROVIDE CHAMBERS WITH FOUR SETS AND, FOR EXAMPLE,

4       FOR THE MOTIONS IN LIMINE, IF YOU COULD HAVE -- FOR

5       EXAMPLE, FOR SAMSUNG, IF YOU COULD JUST PUT A

6       BINDER TOGETHER THAT HAS YOUR MOTION AND THE

7       OPPOSITION FOR EACH OF YOURS, OR IF YOU'RE GOING TO

8       DO ONE BIG DOCUMENT, THAT'S FINE, TOO, BUT JUST TO

9       HAVE IT COLLATED IN FOUR SEPARATE BINDERS.

10              WOULD THAT BE ALL RIGHT?

11              MR. JOHNSON:  THAT'S FINE, YOUR HONOR.

12              THE COURT:  OKAY.  SO FOR BOTH SIDES,

13      JUST COLLATE YOUR MOVING PAPERS AND THE OPPOSITION.

14              AND FOR THE JURY INSTRUCTIONS AS WELL, IF

15      YOU CAN GIVE ME FOUR SETS IN FOUR SEPARATE BINDERS

16      THAT HAVE BOTH WHAT YOU'RE DISPUTING AND WHAT

17      YOU'RE NOT DISPUTING.

18              MR. MCELHINNY:  I'M SORRY.  I'M THE SLOW

19      CHILD HERE, YOUR HONOR.

20              THE COURT:  YEAH.

21              MR. MCELHINNY:  IN A SINGLE BINDER, YOU

22      WANT -- YOU WANT FOUR BINDERS, AND IN EACH BINDER

23      YOU WANT A SET OF WHAT IS DISPUTED AND WHAT IS NOT

24      DISPUTED?

25              THE COURT:  YES.

57

```
1              MR. MCELHINNY:  THANK YOU.

2              THE COURT:  OKAY.  I'M ASSUMING THERE'S

3    NOT GOING TO BE ANY FURTHER DEPOSITIONS OR ANY

4    ADDITIONAL REPORTS, RIGHT, EVEN BASED ON HOW I'M

5    RULING TODAY ON DAUBERTS.

6              MR. MCELHINNY:  JUDGE GREWAL HAS ORDERED

7    ADDITIONAL DEPOSITIONS --

8              THE COURT:  OKAY.

9              MR. MCELHINNY:  -- THAT HAVE TO BE

10   COMPLETED BY JULY, I THINK, 11TH OR 13TH.  I JUST

11   CAN'T REMEMBER.

12             BUT HE DID NOT ORDER ADDITIONAL REPORTS.

13             THE COURT:  OKAY.

14             MR. MCELHINNY:  SO IT'S DEPOSITIONS OF

15   EXPERTS BASED ON THEIR REPORTS.

16             THE COURT:  OKAY.  WELL, I GUESS DO YOU

17   FORESEE ANOTHER ROUND OF DAUBERT MOTIONS IS WHAT

18   I'M TRYING TO FIGURE OUT?

19             MR. MCELHINNY:  WE DO --

20             THE COURT:  I HOPE NOT.

21             MR. MCELHINNY:  WE DO NOT.

22             MR. JOHNSON:  I DON'T EXPECT MORE DAUBERT

23   MOTIONS.

24             BUT THERE ARE A COUPLE MOTIONS PENDING

25   WITH JUDGE GREWAL, AS MR. MCELHINNY POINTED OUT.
```

58

1          THERE'S ALSO ANOTHER ONE WITH RESPECT TO

2     FIVE ADDITIONAL DEPOSITIONS OF FACT WITNESSES

3     THAT'S STILL PENDING WITH JUDGE GREWAL.

4          THE COURT:  OKAY.  AND THOSE ARE ALL

5     SCHEDULED TO BE CONCLUDED BY THE END OF THE WEEK OF

6     THE 9TH?  BY THE 13TH?

7          MR. JOHNSON:  THERE'S ONLY BEEN ONE ORDER

8     FROM JUDGE GREWAL WITH RESPECT TO ADDITIONAL EXPERT

9     DEPOSITION TESTIMONY.

10          THE COURT:  OKAY.

11          MR. JOHNSON:  THERE'S A SEPARATE MOTION.

12     HE ORDERED THE DEPOSITIONS OF FIVE FACT WITNESSES

13     TO OCCUR, APPLE FACT WITNESSES, AND APPLE HAS

14     SOUGHT CLARIFICATION OF THAT ORDER AND THAT MOTION

15     IS STILL PENDING WITH JUDGE GREWAL.

16          THE COURT:  OKAY.  WELL, I'D LIKE, THEN,

17     TO FIGURE OUT A SCHEDULE IF THERE ARE GOING TO BE

18     ANY ADDITIONAL DAUBERT MOTIONS.

19          WAIT, I'M SORRY.  YOU SAID THERE WILL BE,

20     OR THEY'RE ONLY FACT WITNESSES?

21          MR. JOHNSON:  THEY'RE ONLY FACT

22     WITNESSES, SO I DON'T EXPECT ANY MORE DAUBERT

23     MOTIONS.

24          THE COURT:  OKAY.  SO I WON'T WORRY ABOUT

25     THAT.  GREAT.

59

```
1            MR. MCELHINNY:  JUST BECAUSE YOU'RE

2    MAKING A COMPLETE LIST, YOUR HONOR, WE DID GET A

3    MOTION, AS HAS BEEN REFERRED TO, FROM JUDGE GREWAL

4    YESTERDAY -- OR WEDNESDAY WE GOT AN ORDER GRANTING

5    AND DENYING IN PART THE MOTION TO STRIKE.

6            THERE WERE MOTIONS TO STRIKE -- THERE

7    WERE MOTIONS BEFORE JUDGE GREWAL TO STRIKE PARTS OF

8    EXPERT REPORTS.

9            THE COURT:  YES.

10           MR. MCELHINNY:  BASED ON -- SO WE GOT HIS

11   RULING ON WEDNESDAY AND WE ARE REVIEWING THAT.

12           BUT IN TERMS OF POTENTIAL THINGS THAT

13   COULD SHOW UP ON YOUR CALENDAR WILL BE A REQUEST TO

14   REVIEW THAT ORDER.

15           THE COURT:  OH.  I HOPE YOU DON'T OBJECT

16   TO HIS RULINGS.  IS THAT WHAT YOU'RE REFERRING TO?

17   ARE YOU REFERRING TO OBJECTIONS TO HIS RULINGS?

18           MR. MCELHINNY:  I AM, YOUR HONOR.

19           THE COURT:  OH, OKAY.  WELL, I HOPE THAT

20   DOESN'T HAPPEN.

21           CAN YOU WORK OUT SOME MEET AND CONFER

22   MECHANISM TO SEE IF AT LEAST YOU MIGHT BE ABLE TO

23   RESOLVE SOME OF THOSE INFORMALLY THROUGH SOME HORSE

24   TRADING OF SOMETHING THAT ONE SIDE GOT EXCLUDED AND

25   THE OTHER SIDE GOT EXCLUDED AND YOU'LL JUST BOTH
```

1    ALLOW IT IN?

2              MR. JOHNSON:  WE'LL TRY, YOUR HONOR.

3              THE COURT:  AT LEAST TRY.  I UNDERSTAND

4    MAYBE IT'S TOO CONTENTIOUS AT THIS POINT.

5              WHAT IS GOING TO BE THE SCHEDULE FOR

6    THAT?  I GUESS YOU HAVE 14 DAYS TO OBJECT.  IS THAT

7    RIGHT?

8              MR. JACOBS:  AND WE WOULD NOT WAIT THAT

9    LONG, OF COURSE, BECAUSE WE NEED TO KNOW WHERE

10   WE'RE GOING TO END UP ON IT.

11             THE COURT:  UM-HUM.

12             MR. JACOBS:  AND THEN THE SCHEDULE I

13   THINK IS YOUR HONOR'S SCHEDULE.

14             MR. JOHNSON:  I THINK IT WOULD BE HELPFUL

15   IF THE PARTIES MET AND CONFERRED ON THIS PERHAPS ON

16   MONDAY OR OVER THE WEEKEND AND START TO TALK ABOUT

17   THIS AND SEE IF WE CAN REACH SOME SORT OF

18   AGREEMENTS.

19             AND THEN IF WE CAN'T, THEN WE'LL COME UP

20   WITH SOME SCHEDULE UNDER WHICH BOTH SIDES CAN

21   OPERATE, IF THAT'S OBVIOUSLY OKAY WITH YOUR HONOR.

22             THE COURT:  OKAY.  I REALLY HOPE IT'S NOT

23   VERY MANY.

24             WELL, IF THERE IS A REQUIREMENT TO HAVE A

25   HEARING ON THOSE, IT'S GOING TO HAVE TO FIT IN ONE

1    OF OUR TWO DAYS.

2            MR. MCELHINNY:  UNDER THE LOCAL RULE,

3    THERE'S NO REQUIREMENT FOR A HEARING ON THAT.

4            THE COURT:  RIGHT.  BUT I -- MY GUESS IS

5    THAT THE RECORD IS PRETTY VAST ON A LOT OF THOSE

6    DISCOVERY DISPUTES.

7            WELL, WE'LL SEE.  OBVIOUSLY IF I CAN DO

8    IT ON THE PAPERS, I WILL.

9            BUT, I MEAN, THE STANDARD IS SO HIGH,

10   ISN'T IT?  IT'S CLEAR ERROR.

11           THOSE ARE ALL DISCRETIONARY CALLS THAT

12   JUDGE GREWAL HAS MADE, SO I'M NOT LIKELY TO

13   OVERTURN THEM.

14           I MEAN, CLEAR ERROR IS HARD TO FIND, AND

15   SO I REALLY THINK THAT THAT WILL BE PERHAPS A

16   NEEDLESS EXERCISE.

17           ALL RIGHT.  WITH REGARD TO JURY

18   QUESTIONNAIRES, IF WE ARE GOING TO DO THEM, IT HAS

19   TO BE DONE, YOU KNOW, BASICALLY BY THE END OF NEXT

20   WEEK IF AT ALL POSSIBLE.  DO YOU WANT TO DO A JOINT

21   JURY QUESTIONNAIRE?

22           OTHERWISE I'M FINE WITH JUST DOING IT

23   ORALLY.  AND WHAT I WAS PLANNING TO DO IS WHEN IT

24   GETS TO THE QUESTION OF "HAVE YOU HEARD ABOUT THIS

25   CASE," TO AVOID A JUROR INFECTING THE OTHER JURORS,

1      WE CAN JUST DO THAT IN PRIVATE AND HAVE EVERYONE --

2      YOU KNOW, GET THE NAMES OF EVERYONE WHO'S HEARD

3      ABOUT THE CASE AND JUST HAVE THEM BROUGHT INTO THE

4      COURTROOM ONE BY ONE TO TELL US WHAT THEY'VE HEARD

5      SO THAT NO ONE ELSE HEARS WHAT THEY'VE HEARD.

6           I DON'T THINK THERE ARE THAT MANY OTHER

7      QUESTIONS THAT WILL REQUIRE THAT LEVEL OF PRIVACY

8      IF THE JURORS DON'T ASK FOR PRIVACY.

9           WHAT DO YOU THINK?

10          MR. MCELHINNY:  WE HAVE MET AND CONFERRED

11     ON THIS AND WE'VE GOTTEN TO THE POINT WHERE, IF WE

12     CAN COME TO AN AGREEABLE ONE, WE BOTH, I THINK,

13     WOULD LIKE TO HAVE A QUESTIONNAIRE.

14          AND WE UNDERSTAND THE ONLY WAY WE CAN

15     EVER GET ONE IS IF WE CAN PRESENT AN AGREED ONE TO

16     YOUR HONOR, SO WE'RE IN THE MIDST OF THE PROCESS OF

17     COMING UP WITH A SHORT ONE.

18          THE COURT:  WELL, I'M NOT GOING TO GIVE

19     YOU THE JURY QUESTIONNAIRES THAT HAVE BEEN FILLED

20     OUT LONG ENOUGH IN ADVANCE FOR YOU ALL TO RESEARCH

21     ALL THESE FOLKS.

22          IF WE DO IT, I MEAN, I'M BASICALLY GOING

23     TO HAND IT TO YOU THE SAME MORNING AND WE'RE JUST

24     GOING TO START SELECTION THE SAME MORNING.

25          MR. JOHNSON:  THAT'S FINE.

```
 1           MR. MCELHINNY:  WE UNDERSTAND, YOUR

 2    HONOR.

 3           THESE ARE BIAS ISSUES, YOUR HONOR.

 4    THEY'RE NOT RESEARCH ISSUES.

 5           THE COURT:  YEAH, I KNOW.  I'M JUST

 6    SAYING I'M NOT GOING TO GIVE YOU IN ADVANCE THESE

 7    JURY QUESTIONS SO YOU CAN GO OUT AND START

 8    INTERVIEWING THEIR NEIGHBORS.

 9           YOU'RE GOING TO GET IT, LIKE, AT 9:00

10    O'CLOCK AND WE'RE STARTING JURY SELECTION AT 9:00

11    O'CLOCK.

12           I'M NOT GOING TO GIVE THEM TO YOU ON

13    FRIDAY SO YOU CAN RESEARCH THEM ALL WEEKEND.

14           MR. MCELHINNY:  YEAH.

15           MR. JOHNSON:  WE UNDERSTAND.

16           AND TO GO BACK TO YOUR POINT WITH RESPECT

17    TO THE TIMING, I THINK THE IDEA WOULD BE WE WOULD

18    SUBMIT SOMETHING TO YOUR HONOR.  WE COULD SUBMIT

19    HOPEFULLY A JOINT QUESTIONNAIRE BY THE END OF NEXT

20    WEEK.

21           THE COURT:  WELL, THAT IS ALMOST GETTING

22    TOO LATE.  OUR JURY COORDINATOR PREFERS TO SEND

23    THEM OUT, LIKE, FOUR WEEKS IN ADVANCE, WHICH WILL

24    BASICALLY BE NEXT MONDAY, THE 2ND.  I THINK THEY

25    HAVE SOME FLEXIBILITY TO THE END OF NEXT WEEK.
```

```
1            IS THERE ANY WAY YOU COULD ADVANCE YOUR

2     SUBMISSION A LITTLE BIT?

3            I MEAN, IF IT'S NOT STIPULATED TO, WE'RE

4     NOT DOING IT, SO THERE'S NO NEED TO EVEN PUT IN

5     ALTERNATIVE QUESTIONS.  I MEAN, IF IT'S NOT ONE

6     UNIFIED DOCUMENT, WE'RE JUST NOT GOING TO DO IT.

7            SO WHAT --

8            MR. MCELHINNY:  THE ANSWER IS WE HAVE TO

9     TALK TO THE PEOPLE WHO ARE DRAFTING IT.  WE WILL

10    EXPEDITE IT, YOUR HONOR.

11           THE COURT:  OKAY.  SO TELL ME A DATE BY

12    WHICH YOU WILL FILE IT SO I CAN LOOK AT IT AND HAVE

13    THE JURY COORDINATOR SEND THEM OUT.

14           MR. MCELHINNY:  THURSDAY, YOUR HONOR.

15           MR. LEE:  THE 5TH.

16           THE COURT:  THAT'S THE EARLIEST?  IT JUST

17    DOESN'T GIVE US A LOT OF TIME TO GET THAT OUT.

18           MR. LEE:  WE COULD DO IT BY THE 3RD, YOUR

19    HONOR.

20           THE COURT:  COULD YOU?  THAT WOULD BE

21    APPRECIATED.  I MEAN, YOU'VE SEEN THE TECHNICAL

22    DIFFICULTIES WE HAVE.  OKAY.

23           MR. LEE:  YOUR HONOR, MAY I ASK ONE

24    CLARIFICATION WHILE I'M UP?

25           THE COURT:  YES.
```

1          MR. LEE:  I THINK TODAY IS THE LIST OF

2    WITNESSES AND EXHIBITS, SO IF WE'RE POSTPONING THE

3    EXHIBITS TO THE 5TH, I THINK WE SHOULD POSTPONE

4    WITNESSES TO THE 5TH.  I THINK WE AGREE, BUT WE

5    WANTED TO --

6          THE COURT:  I'M SORRY.  I WAS READING

7    THIS NOTE WHICH SAYS THAT THE M.S.J. ORDER WHICH

8    YOU RECEIVED IS NOW UP ON THE COURT WEBSITE, AND

9    WE'RE TRYING TO GET THE P.I. ORDER ON THE WEBSITE

10   AS WELL.

11         WE DO NOT THINK THAT WE WILL BE ABLE TO

12   PROBABLY GET OTHER ORDERS UP ON THE COURT'S WEBSITE

13   OVER THE WEEKEND.  IF WE CAN WE WILL, BUT WE -- YOU

14   KNOW, THE FOLKS WHO DO THAT JUST MAY NOT BE

15   AVAILABLE.  SO ANYWAY.

16         I'M SORRY.  WHAT DID YOU WANT BY THE 5TH?

17         MR. LEE:  I THINK THIS IS JUST A POINT OF

18   CLARIFICATION.

19         WHAT WAS DUE TODAY WAS BOTH A LIST OF

20   WITNESSES AND A LIST OF EXHIBITS.  WE TALKED ABOUT

21   POSTPONING THE LIST OF EXHIBITS UNTIL JULY 5TH

22   AFTER THE NARROWING.

23         I THINK WE BOTH AGREE THAT THAT SHOULD

24   INCLUDE WITNESSES, IF THAT'S ALL RIGHT WITH YOUR

25   HONOR, AS WELL.  WE'LL FILE THE WITNESSES AND

66

     1    EXHIBITS THAT WERE DUE TODAY ON THE 5TH AFTER THE

     2    PARING DOWN OF THE CASE.

     3            THE COURT:  OKAY.  WITNESSES ON THE 5TH,

     4    THAT'S FINE.

     5            BUT YOU CAN -- YOU CAN SUBMIT THE JURY

     6    QUESTIONNAIRE BY TUESDAY, THE 3RD; RIGHT?

     7            MR. JOHNSON:  YES.  YES, YOUR HONOR.

     8            MR. LEE:  YES.

     9            THE COURT:  ALL RIGHT.  I'D ALSO LIKE YOU

    10    ALL TO PREPARE JURY BOOKS.

    11            DID WE DECIDE ON THE NUMBER OF JURORS?

    12    WE HAVEN'T DONE THAT YET?  WHAT DO YOU THINK MAKES

    13    SENSE?  10?  DO YOU WANT TO GO FOR THE FULL 12?

    14            MR. MCELHINNY:  WHAT IS YOUR PRACTICE,

    15    YOUR HONOR, ABOUT --

    16            THE COURT:  THE NUMBER?

    17            MR. MCELHINNY:  -- ABOUT HOW MANY PEOPLE

    18    DELIBERATE?

    19            THE COURT:  OH.  I HAVE THE -- NO ONE IS

    20    AN ALTERNATE.  IT'S THE FULL PANEL.

    21            SO IT'S -- BASICALLY MY FORMULA IS

    22    GENERALLY A BASE OF SIX, AND THEN TWO FOR EVERY

    23    ADDITIONAL WEEK, AND WE HAVE THIS ROUGHLY FOUR

    24    WEEKS, SO I WOULD NORMALLY SAY, YOU KNOW, IT WOULD

    25    BE SIX PLUS BASICALLY SIX, BUT WE DON'T HAVE TO GO

                                                        67

1   FOR THE FULL 12.

2              MR. JOHNSON:  YOUR HONOR, WE WOULD ASK

3   FOR 12.

4              MR. MCELHINNY:  AND WE WOULD LIKE 10,

5   YOUR HONOR.

6              THE COURT:  OKAY.  DO I HEAR 11?  IS THAT

7   THE COMPROMISE?

8              MR. MCELHINNY:  AGAIN, I'VE BEEN

9   CORRECTED.  WE'D LIKE EIGHT, YOUR HONOR.

10             (LAUGHTER.)

11             THE COURT:  YOU WANT TO JUST DO 11?

12   THAT'S SORT OF IN THE MIDDLE.  WE'LL SPLIT THE

13   BABY.

14             MR. MCELHINNY:  FINE, YOUR HONOR.

15             THE COURT:  ALL RIGHT.  WE'LL DO 11.

16             AND OBVIOUSLY THAT -- THAT GIVES US THE

17   ROOM TO LOSE FIVE, RIGHT, BECAUSE WE JUST NEED THE

18   BASE OF SIX.

19             NOW, I'D ALSO LIKE YOU TO PREPARE JURY

20   BOOKS, THEN, FOR OUR JURORS THAT WILL HAVE WHATEVER

21   YOU STIPULATE TO, THE PATENTS, WE'LL FINALIZE THE

22   PRELIMINARY JURY INSTRUCTIONS SO WE CAN PUT THE

23   PRELIMINARY JURY INSTRUCTIONS IN THERE.

24             BUT WE'LL WANT YOU TO PREPARE THE BOOKS.

25             THAT ALSO -- DID YOU ALL AGREE TO SHOW

1    THE FJC VIDEO, OR NOT?  I CAN'T RECALL.

2              MR. JACOBS:  WE DISAGREE ON THAT POINT,

3    YOUR HONOR.

4              THE COURT:  OKAY.

5              MR. MCELHINNY:  WE ACTUALLY FEEL STRONGLY

6    ABOUT THAT.

7              THE PROBLEM WITH THE VIDEO IS THAT IT IS

8    DIRECTED STRICTLY TO UTILITY PATENTS AND IT DOESN'T

9    TALK ABOUT DESIGN PATENTS AT ALL AND, THEREFORE,

10   GIVES THE -- THE JURORS WILL BE WONDERING WHY A

11   DESIGN PATENT IS DIFFERENT.

12             IT ACTUALLY, WE THINK, WOULD BE

13   PREJUDICIAL TO SHOW IT IN THIS CONTEXT.

14             THE COURT:  I SEE.

15             MR. JOHNSON:  WE THINK IT WOULD BE

16   HELPFUL TO SHOW IT BECAUSE IT GIVES THE JURY SOME

17   IDEA OF WHAT THE PROCESS IS TO OBTAIN A PATENT.

18             WE'RE NOT GOING TO HAVE ANY PTO EXPERT

19   COME AND TALK AT THIS POINT, OBVIOUSLY, SO WE DO

20   THINK IT GIVES THE JURY SOME IMPORTANT BACKGROUND.

21             THE COURT:  WELL, WITH REGARD TO THE JURY

22   BOOKS, THEN, WE'LL JUST PUT IN THE PATENTS THAT ARE

23   AT ISSUE; THE PRELIMINARY JURY INSTRUCTIONS; WE'LL

24   HAVE A TAB FOR THE FINAL JURY INSTRUCTIONS, WHICH

25   WE WON'T FILL IN UNTIL AT THE END OF THE EVIDENCE;

```
 1    I'D ALSO LIKE YOU ALL TO TAKE A PHOTO OF EACH

 2    WITNESS BEFORE THEY TESTIFY WITH THE SAME HAIR,

 3    CLOTHING, EYEWEAR, AND PROVIDE IT TO THE JURORS;

 4    JUST SOME LOOSE PAPER AT THE END FOR THEM TO TAKE

 5    NOTES; AND WHATEVER ELSE YOU CAN STIPULATE TO

 6    PROVIDING.  OKAY?

 7           NOW, HOW MANY -- THESE ARE REAL SORT OF

 8    HOUSEKEEPING QUESTIONS, BUT HOW MANY ROWS DO YOU

 9    THINK THAT YOUR TEAMS WILL NEED OF THE AUDIENCE

10    SECTION?

11           MR. MCELHINNY:  WE THINK WE WOULD NEED

12    TWO, YOUR HONOR.

13           THE COURT:  OKAY.  AND I'M SURE YOU WOULD

14    PREFER IT RIGHT NEXT TO -- YOU KNOW, CLOSEST TO THE

15    FRONT.

16           MR. MCELHINNY:  WE WOULD, YOUR HONOR.

17           THE COURT:  OKAY.

18           MR. JOHNSON:  YOUR HONOR, I THINK WE'RE

19    GOING TO NEED THREE.  I THINK WE HAVE A LOT OF

20    PEOPLE COMING FROM KOREA, AND SO --

21           THE COURT:  BUT WHAT ABOUT, YOU KNOW,

22    FILLING IN THESE TABLES?  WOULD THAT --

23           MR. JOHNSON:  IF YOUR HONOR IS OKAY WITH

24    THAT, THEN -- THERE ARE GOING TO BE EXHIBITS, AND I

25    SUSPECT MOST OF THE EXHIBITS ARE GOING TO GO ON
```

1    THIS SIDE OF THE COURTROOM.

2              THE COURT:  ALL RIGHT.  WELL, IF YOU NEED

3    THREE, THAT'S FINE.

4              MR. MCELHINNY:  I TAKE IT WE'RE GOING TO

5    TRY IT IN THIS COURTROOM, YOUR HONOR.

6              THE COURT:  YES.  I THINK MINE IS TOO

7    SMALL.  MINE IS TOO SMALL.

8              OKAY.  HAVE WE WORKED OUT -- TELL ME WHAT

9    I'VE MISSED IN TERMS OF WORKING OUT -- I'M NOT

10   GOING TO SET MEET AND CONFER DEADLINES.  YOU ALL

11   JUST DO THAT BEFORE YOU FILE YOUR EXHIBITS, YOUR

12   DEPO DESIGNATIONS, AND THE JURY INSTRUCTIONS WITH

13   YOUR DISPUTES.

14             ANYTHING ELSE THAT WE NEED TO SCHEDULE?

15             MR. JACOBS:  I'M NOT SURE THIS FALLS INTO

16   SCHEDULING, YOUR HONOR, BUT IT DOES FALL INTO THE

17   HOUSEKEEPING CATEGORY.

18             WE WORKED OUT A -- PARTIALLY WORKED OUT A

19   STIPULATION THAT WE FILED ON THE 28TH ON SOME

20   INTERPRETIVE QUESTIONS, OR ADMINISTRATIVE QUESTIONS

21   ARISING OUT OF YOUR ORDER.

22             THE COURT:  OKAY.

23             MR. JACOBS:  DO YOU HAVE -- CAN I HAND IT

24   UP?

25             THE COURT:  THAT'S FINE.  IS THAT -- BY

                                                      71

1    ORDER, ARE YOU REFERRING TO THE STANDING ORDER?

2              MR. JACOBS:  YES, AND THE SPECIFIC ORDER

3    FOR THIS CASE.

4              SO THERE ARE SOME DISAGREEMENTS OBSERVED

5    AND GUIDANCE REQUESTED THERE, AND THERE ARE SOME

6    POINTS OF AGREEMENT THAT RELATE TO SCHEDULE WHICH

7    WE MAY HAVE ALREADY WORKED OUT IN SOME CASES.

8              THE COURT:  OKAY.  WELL, I DON'T SEE ANY

9    DISPUTE UNTIL I GET TO PARAGRAPH NUMBER 4, AND --

10   YEAH, I'M SORRY THAT WASN'T CLEAR, THE IMPEACHMENT

11   OR REBUTTAL FOR THE 125 EXHIBITS.

12             I WOULD AGREE THAT IF YOU INTEND TO RELY

13   ON IT IN OPPOSING CLAIMS OF INFRINGEMENT OR CLAIMS

14   OF INVALIDITY, IT SHOULD BE ON YOUR LIST OF 125.

15             SO BY REBUTTAL, I REALLY MEANT MORE IF

16   YOU HAVE A REBUTTAL CASE.

17             DOES THAT CLARIFY THAT ONE?

18             MR. JACOBS:  YES, YOUR HONOR.

19             MR. JOHNSON:  YES, YOUR HONOR.

20             THE COURT:  OKAY.  THE OTHER --

21             (PAUSE IN PROCEEDINGS.)

22             THE COURT:  THAT'S FINE.

23             YOUR JOINT EXHIBITS, DO YOU HAVE ANY

24   SENSE OF HOW MANY THERE WILL BE?

25             MR. JACOBS:  15, 20, SOMETHING LIKE THAT,

1    YOUR HONOR.

2              THE COURT:  THAT'S FINE.  THE JOINT

3    EXHIBITS DON'T COUNT TOWARDS YOUR 125.

4              MR. MCELHINNY:  WHILE WE'RE THERE, MAY I

5    RAISE A SEPARATE ISSUE, YOUR HONOR, PLEASE?

6              THE COURT:  BUT I'M WONDERING IF WE

7    SHOULD CAP THAT NUMBER.  WHAT CAN WE CAP IT TO, THE

8    JOINT EXHIBITS?

9              MR. JACOBS:  25, YOUR HONOR?

10             THE COURT:  THAT'S FINE.

11             IS THAT OKAY, MR. JOHNSON?

12             MR. JOHNSON:  THAT'S FINE.

13             THE COURT:  OKAY.  SO 25 EACH.

14             OKAY.  GO AHEAD.

15             MR. MCELHINNY:  YOUR HONOR, OF A -- THIS

16   IS A CASE OF SPECIAL PLEADING.  AS YOU KNOW, WE

17   HAVE PHYSICAL EXHIBITS.  SO IN THIS CASE THERE ARE

18   26 ACCUSED TELEPHONES AND THERE ARE SEVEN APPLE

19   PRODUCTS THAT ARE PHYSICAL EXHIBITS.

20             IF WE HAD TO MARK EACH -- IF WE HAD TO

21   COUNT THOSE AGAINST THE 125 EXHIBITS, THEY'D TAKE

22   UP A QUARTER OF OUR EXHIBIT LIST.

23             THEY'RE -- THE JURY NEEDS TO SEE IT

24   BECAUSE THEY NEED TO SEE THE COMPARISON, BUT

25   THEY'RE NOT LIKE A DOCUMENT OR GOING TO BE THE

1    SUBJECT OF TESTIMONY.

2              THE COURT:  WELL, WOULD THAT BE A JOINT

3    EXHIBIT?  CAN WE GET AGREEMENT ON THAT ONE?

4              MR. JOHNSON:  I THINK THEY ARE GOING TO

5    BE, ACTUALLY, THE SUBJECT OF TESTIMONY.

6              WITH RESPECT TO WHETHER THEY'RE JOINT

7    EXHIBITS OR NOT, I THINK THAT'S SOMETHING WE CAN

8    TALK ABOUT.

9              THE COURT:  I MEAN, I -- IF IT'S THE

10   ACTUAL ACCUSED DEVICES IN THE CASE, I THINK THAT

11   SHOULD BE A JOINT EXHIBIT AND I'D BE WILLING TO

12   INCREASE THAT NUMBER.

13             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

14   THAT WOULD -- WE DID --

15             THE COURT:  DOES THAT TAKE CARE OF IT?

16             MR. JOHNSON:  BUT THEN WE RUN INTO THE

17   ISSUE OF WE'RE THE PARTY WHO HAS A LOT OF THE PRIOR

18   ART, AND SO IT'S -- IT'S NOT APPLES TO APPLES IN

19   THE SENSE THAT WE ONLY HAVE SEVEN ACCUSED PRODUCTS.

20   THEY HAVE 25.

21             THEY WANT TO PUT 25 IN ON THEIR EXHIBIT

22   LIST BECAUSE, AS MR. MCELHINNY POINTS OUT, IT'S 20

23   PERCENT OF THEIR CASE, OF THEIR EXHIBITS.

24             SO WE NEED -- WE HAVE SOME -- WE HAVE

25   SOME UNDISPUTED PRIOR ART THAT WE'D LIKE, THEN, TO

```
1    PUT ON THE JOINT EXHIBIT LIST.
2              SO, I MEAN, THAT'S WHY WE'RE TRYING TO --
3    THAT'S WHY I SAID WE STARTED TALKING ABOUT THIS.
4              THE COURT:  UM-HUM.
5              MR. JOHNSON:  AND THE 125 IS, IS TIGHT ON
6    BOTH SIDES.
7              BUT PUTTING IN -- BY HAVING AN AGREEMENT
8    THAT THEY GET TO PUT 25 AS A JOINT EXHIBIT, IT
9    DEFINITELY ADVANTAGES THEM.
10             SO THAT'S WHY WE WERE --
11             THE COURT:  OKAY.  SO GIVE ME ANOTHER
12   PROPOSAL THEN.  DO YOU WANT TO -- GIVE ME A
13   PROPOSAL ON THAT.
14             MR. JOHNSON:  WELL, SO IF THEY HAVE 25
15   AND WE CAN THEN HAVE 25 JOINT EXHIBITS THAT WE CAN
16   PUT ON THE JOINT EXHIBIT LIST, THAT WOULD BE FAIR.
17   THAT WOULD PUT 25 ON BOTH SIDES.
18             MR. MCELHINNY:  THIS WAS -- I'M SENSITIVE
19   TO WHAT YOUR HONOR IS TALKING ABOUT ABOUT HAVING
20   DOCUMENTS AND ALL THE REST OF THIS.
21             IF MR. JOHNSON IS TALKING ABOUT PHYSICAL
22   EXHIBITS, IF HE'S TALKING ABOUT PHONES, THEN I HAVE
23   NO PROBLEM WITH THAT.
24             MR. JOHNSON:  I'M TALKING ABOUT --
25             MR. MCELHINNY:  BUT IF WE'RE TALKING
```

1    ABOUT PUTTING IN ACCOUNTING CHARTS OR NEW DOCUMENTS

2    TO MATCH UP, THAT'S NOT --

3              MR. JOHNSON:  I'M TALKING -- SORRY.

4              I'M TALKING ABOUT PHYSICAL EXHIBITS OF

5    PRIOR ART.  THERE ARE PHYSICAL PHONES THAT ARE

6    PRIOR ART.  THERE ARE PHYSICAL DEVICES THAT ARE

7    PRIOR ART.

8              MR. MCELHINNY:  THEN THAT WOULD BE

9    ACCEPTABLE TO ME, YOUR HONOR.

10             THE COURT:  OKAY.

11             MR. JOHNSON:  GREAT.

12             THE COURT:  ALL RIGHT.  SO HOW DO YOU

13   WANT TO WORD THAT?

14             MR. JOHNSON:  SO WE WILL HAVE JOINT

15   EXHIBITS THAT CONSIST OF THE PROSECUTION HISTORIES;

16   THE PATENTS AND THE PRIORITY APPLICATIONS; AND THEN

17   IN ADDITION TO THAT, BOTH SIDES WILL BE ABLE TO

18   MARK PHYSICAL EXHIBITS UP TO 25 --

19             MR. MCELHINNY:  WE HAVE 26 ACCUSED

20   PRODUCTS, SO I NEED -- WE HAVE 33 PHYSICAL

21   EXHIBITS, YOUR HONOR.

22             THE COURT:  YOU HAVE 33?

23             MR. MCELHINNY:  26 ACCUSED PRODUCTS AND

24   THE SEVEN COMPARABLE APPLE PHONES WHICH THEY NEED

25   BECAUSE THEY'RE ACCUSING THEM.  SO --

```
 1              THE COURT:  ALL RIGHT.  WHAT IF WE JUST
 2     SAID A TOTAL OF -- A TOTAL FOR BOTH SIDES OF 60
 3     JOINT EXHIBITS?  WOULD THAT TAKE CARE OF IT?
 4              MR. JOHNSON:  THANK YOU, YOUR HONOR.
 5              MR. MCELHINNY:  YES, YOUR HONOR.
 6              THE COURT:  ALL RIGHT.  SO LET'S SAY
 7     THAT.
 8              MR. MCELHINNY:  I HAVE -- IF YOUR HONOR
 9     IS DONE, I HAVE ONE OTHER ISSUE.
10              THE COURT:  OKAY.  I'M JUST READING
11     NUMBER 6.  IT SAYS, "THE PARTIES AGREE THAT CERTAIN
12     DEMONSTRATIVE EXHIBITS MUST BE EXCHANGED BEFORE
13     THEY ARE USED IN COURT."
14              WELL, WHY DON'T YOU JUST EXCHANGE YOUR
15     DEMONSTRATIVES, WHAT, 24 HOURS IN ADVANCE?  WHAT DO
16     YOU WANT?
17              MR. JACOBS:  I THINK WE REALLY WERE JUST
18     ASKING FOR PERMISSION TO VARY FROM WHAT WE
19     UNDERSTOOD YOUR ORDER TO BE, AND WE WILL NOW
20     DISCUSS AND MAKE UP -- AND REPORT BACK TO YOU WHAT
21     WE AGREE TO.
22              THE COURT:  OKAY.  ALL RIGHT.  THAT'S
23     FINE.
24              NOW, I HAVE GOTTEN INQUIRIES ABOUT HOW
25     YOU'RE GOING TO LET OTHER SIDES KNOW ABOUT WHICH
```

1    WITNESSES YOU'RE GOING TO CALL, AS WELL AS THE

2    MEDIA, HOW YOU'RE GOING TO LET THEM KNOW WHAT

3    EXHIBITS WERE ADMITTED.

4            DO YOU HAVE A POLICY FOR THAT?

5            MR. JOHNSON:  WE STARTED TO TALK ABOUT

6    THIS.

7            THE COURT:  OKAY.

8            MR. JOHNSON:  AND I THINK WE NEED A

9    LITTLE BIT MORE TIME TO TALK IT THROUGH.

10           THE COURT:  OKAY.  WELL, I'D LIKE TO HAVE

11   A PROCESS WHEREBY, YOU KNOW, THE PUBLIC WOULD KNOW

12   MAYBE 24 HOURS IN ADVANCE WHO YOU'RE INTENDING TO

13   CALL, AND EITHER WE'LL PUT THAT UP ON THE WEBSITE

14   OR WE WORK OUT A MECHANISM SO THAT THEY KNOW.

15           AND THEN CAN YOU PROVIDE YOUR, THE

16   EXHIBITS THAT WERE ADMITTED EACH DAY, A FEW COPIES

17   FOR THE MEDIA ON CD?

18           AND WE'LL JUST LEAVE THAT -- I THINK --

19   UNFORTUNATELY, WE REALLY DON'T HAVE A WORKING PRESS

20   ROOM HERE, SO I THINK THE ATTORNEY'S LOUNGE WILL

21   HAVE TO SERVE THAT FUNCTION.

22           COULD YOU JUST LEAVE THAT IN THE

23   ATTORNEY'S LOUNGE?

24           MR. MCELHINNY:  THIS IS THE ISSUE THAT I

25   WANTED TO RAISE WITH YOUR HONOR.

                                                        78

1          THE COURT:  OH, WHAT'S THAT?

2          MR. MCELHINNY:  I THINK NOW WOULD BE THE

3     APPROPRIATE TIME.

4          ALTHOUGH THERE'S NOT AGREEMENT BETWEEN

5     THE PARTIES, WE'RE BOTH GOING TO HAVE

6     CONFIDENTIALITY ISSUES.  WE THINK WE HAVE DIFFERENT

7     SCOPE OF CONFIDENTIALITY VIEWS, BUT THERE IS GOING

8     TO BE -- THERE ARE GOING TO BE EXHIBITS THAT BOTH

9     PARTIES WOULD CLEARLY CONSIDER TO BE CONFIDENTIAL,

10    CURRENT FINANCIAL INFORMATION, SOURCE CODE.

11         WE HAVE AGREEMENT -- SAMSUNG AND APPLE

12    BOTH AGREE THAT THOSE WOULD BE CONFIDENTIAL.

13         SAMSUNG HAS BROADER CONFIDENTIALITY

14    ISSUES THAT WE MAY NOT SHARE.

15         BUT I WAS GOING TO INQUIRE TO YOUR HONOR

16    ABOUT HOW -- SO, FOR EXAMPLE, IF YOUR HONOR --

17    WELL, IF YOUR HONOR IS WILLING TO CLOSE THE

18    COURTROOM WHILE THAT HAPPENS, THAT'S FINE.

19         BUT IF YOU'RE NOT, THEN IF WE WOULD HAVE

20    A PROCESS -- IF WE'RE GOING TO BE ABLE TO HAVE A

21    PROCESS TO USE CONFIDENTIAL EXHIBITS THAT WOULD BE

22    ADMITTED INTO THE RECORD UNDER SEAL, AND THEN HAVE

23    A PROCESS FOR DISPLAYING THEM?

24         WE CAN DO THIS WHICHEVER WAY YOUR HONOR

25    WANTS TO DEAL WITH IT, BUT I'M --

                                                        79

 1          THE COURT:  WELL, THE WHOLE TRIAL IS

 2    GOING TO BE OPEN.  THE WHOLE TRIAL IS GOING TO BE

 3    OPEN.

 4          HOW WAS IT DONE IN ORACLE V. GOOGLE?  I'M

 5    SURE THE WHOLE THING WAS OPEN.

 6          MR. JACOBS:  IT WAS, YOUR HONOR, AND THE

 7    CLEAR PRESUMPTION WAS IN FAVOR OF OPENNESS FOR

 8    EXHIBITS.

 9          BUT THERE WERE SOME CONFIDENTIAL -- I'LL

10    ACTUALLY HAVE TO CHECK ON HOW IT WAS HANDLED.  I

11    DON'T WANT TO MISREPRESENT.

12          I BELIEVE THERE WERE SOME CONFIDENTIAL

13    EXHIBITS THAT BOTH SIDES WORKED THROUGH REDACTIONS

14    OF BEFORE FILING IN THE PUBLIC RECORD TO AVOID

15    CONFIDENTIALITY CONCERNS.

16          WE ASKED -- I WOULD NOTE ON THE -- IN

17    THIS CASE, I THINK BOTH SIDES HAVE SOME THIRD PARTY

18    CONFIDENTIALITY CONCERNS AS WELL.

19          THE COURT:  WELL, I'LL HAVE TO LOOK INTO

20    THIS ISSUE, BUT THE WHOLE TRIAL IS GOING TO BE

21    OPEN.  I'M NOT GOING TO CLOSE IT AT ANY POINT, SO

22    YOU SHOULD JUST PLAN ON THAT.

23          I'LL LOOK FURTHER INTO THIS ISSUE, AND I

24    DO WANT THE PARTIES TO CONTINUE TO DISCUSS IT, BUT

25    UNDERSTANDING EVERYTHING IS GOING TO BE OPEN.

```
 1            MR. MCELHINNY:  JUST -- IF IT'S HELPFUL,

 2   JUST TO GIVE YOUR HONOR TWO EXAMPLES OF SOME OF THE

 3   EXTREMES, ONE IS CURRENT FINANCIAL INFORMATION --

 4   OR THE BEST EXAMPLE OF CONFIDENTIALITY WOULD BE

 5   SOURCE CODE, WHICH IS NOT PUBLIC INFORMATION AND IS

 6   EXTREMELY VALUABLE TO BOTH SIDES BUT IS GOING --

 7   THE JURY -- IT'S GOING TO HAVE TO BE ADMITTED AND

 8   DISCUSSED BEFORE THE JURY.

 9            AND AT THE OTHER EXTREME, THERE ARE

10   INTERNAL COMMUNICATIONS IN THE E-MAILS THAT THE

11   ONE -- AND I THINK YOUR HONOR IS GOING TO GET

12   REQUESTS ALONG THAT SPECTRUM.

13            THE COURT:  WELL, I THINK IT'S GOING TO

14   BE OPEN, SO -- I THINK THAT, BALANCING THE

15   INTERESTS HERE, I THINK THE PUBLIC INTERESTS IN

16   UNDERSTANDING WHAT'S GOING ON IN THIS CASE

17   OUTWEIGHS THE CONFIDENTIALITY INTERESTS.

18            BUT WHY DON'T -- I'LL TAKE A LOOK AT THIS

19   ISSUE MORE CLOSELY, AND I'D LIKE YOU ALL TO

20   CONTINUE TO DISCUSS THIS AMONGST YOURSELVES.

21            BUT I THINK THE PUBLIC INTEREST HERE IN

22   THE BALANCING TEST IS EXTREMELY STRONG.  OKAY?

23            MR. MCELHINNY:  THANK YOU, YOUR HONOR.

24            THE COURT:  ALL RIGHT.  WHAT ELSE?  IS

25   THERE ANYTHING ELSE THAT WE NEED TO DO IN TERMS OF
```

1    HOUSEKEEPING?

2              I THINK WE'VE SET ALL THE DEADLINES,

3    CORRECT?

4              CAN WE SET ANOTHER FINAL FINAL PRETRIAL

5    CONFERENCE FOR -- WHAT ABOUT JULY THE 24TH IN THE

6    AFTERNOON?

7              SO I'D LIKE TO DO MOTIONS IN LIMINE ON

8    THE 18TH AND JURY INSTRUCTIONS ON THE 24TH.

9              CAN YOU DO THAT?

10             MR. MCELHINNY:  1:30 OR 2:00, YOUR HONOR?

11             THE COURT:  I DON'T HAVE A STRONG

12   PREFERENCE.  DO YOU HAVE A STRONG PREFERENCE?

13             MR. JOHNSON:  NO, YOUR HONOR.

14             THE COURT:  WE'LL SAY 2:00 O'CLOCK.  OR

15   ACTUALLY 1:30 IS FINE.  1:30 ON JULY 24TH OF 2012.

16             SO ARE THERE ANY OTHER DATES THAT WE NEED

17   TO SET?  AND ANYTHING ELSE OTHER THAN REITERATING

18   THAT TO THE EXTENT YOU CAN MEET AND CONFER AND

19   NARROW DISPUTES AND THEN PROVIDE THINGS, THE

20   CHAMBERS COPY IN A VERY EASY TO USE FORM WOULD BE

21   MUCH APPRECIATED.

22             MR. JOHNSON:  WE UNDERSTAND, YOUR HONOR.

23             AND WITH RESPECT TO ONE LAST DEADLINE,

24   YOUR HONOR, LAST WEEK AT THE SUMMARY JUDGMENT

25   HEARING WE TALKED ABOUT CLAIM CONSTRUCTION ISSUES

                                                      82

1    WITH RESPECT TO "ELECTRONIC DOCUMENT" AND THE

2    "STRUCTURED ELECTRONIC DOCUMENT" FROM THE '381

3    PATENT AND THE '163 PATENT, AND WE MET AND

4    CONFERRED WITH APPLE IN THAT REGARD AND WE BELIEVE

5    THAT THERE ARE THREE OF THE -- AND I'M NOT SURE

6    WHICH PATENTS ARE GOING TO STILL REMAIN IN THE

7    CASE, BUT I THINK WE NEED AT LEAST SOME SCHEDULE TO

8    ADDRESS THREE TERMS, IF THESE PATENTS ARE STILL

9    INVOLVED IN THE CASE, ON CLAIM CONSTRUCTION.

10              ONE IS "STRUCTURED ELECTRONIC DOCUMENT"

11   FROM THE '163 PATENT; THE OTHER IS "ELECTRONIC

12   DOCUMENT" FROM THE '381 PATENT; AND THE TERM

13   "INVOKE" FROM THE '915 PATENT.

14              AND WE TALKED ABOUT BASICALLY SUBMITTING

15   VERY SHORT CLAIM CONSTRUCTION BRIEFS ON JULY 5TH ON

16   THOSE THREE TERMS, WITH OPPOSITIONS ON JULY 10TH.

17              THE COURT:  YOU SAID "INVOKE" IN THE

18   '915?

19              MR. JOHNSON:  "STRUCTURED ELECTRONIC

20   DOCUMENT" IN THE '163; AND "ELECTRONIC DOCUMENT" IN

21   THE '381 PATENT.

22              THE COURT:  AND YOU'RE SAYING OPENINGS

23   JULY 5TH AND RESPONSES ON THE 10TH?

24              MR. JOHNSON:  CORRECT.  AND IF YOUR HONOR

25   WANTED TO HAVE A BRIEF HEARING ON THAT, WE COULD DO

1    THAT ON THE 18TH OR ON THE 25TH.

2              THE COURT:  PROBABLY THE 18TH WOULD BE

3    BETTER, RIGHT --

4              MR. JOHNSON:  YES.

5              THE COURT:  -- FOR YOU TO PREPARE?

6              OKAY.  LET'S PUT PAGE LIMITS ON THESE.

7              MR. JOHNSON:  WE WOULD -- IF YOU WERE

8    LOOKING FOR AN IDEA, WE WOULD SUGGEST 15 PAGES FOR

9    OPENING AND 10 PAGES FOR THE OPPOSITION.

10             THE COURT:  WHAT ABOUT JUST 10 FOR EACH?

11   WILL THAT GIVE YOU ENOUGH -- NOW, I SAY THAT, BUT

12   THEN I DON'T WANT, YOU KNOW, 600 PAGES OF

13   DECLARATION EXHIBITS.  I DON'T WANT, YOU KNOW,

14   CIRCUMVENTING THE PAGE LIMITS AND THEN SAYING "SEE

15   EXPERT DEPO NUMBER 4" THAT'S GOT 500 PAGES.

16             MR. JOHNSON:  10 PAGES IS FINE.

17             THE COURT:  IS THAT OKAY?  ALL RIGHT.  SO

18   10 PAGES FOR EACH.

19             OH, OKAY.  SO I UNDERSTAND THAT IF WE --

20   WE COULD -- HOPEFULLY WE'LL BE ABLE TO UPLOAD ANY

21   ORDERS ON THE COURT WEBSITE THIS WEEKEND, BUT IT

22   SAYS "IF NECESSARY," SO I CAN'T GUARANTEE THAT

23   SOMEBODY WILL DEFINITELY BE --

24             THE CLERK:  IT MIGHT BE GOOD TO GET

25   E-MAIL ADDRESSES.

1           THE COURT:  YEAH, SO WE CAN DO IT FROM

2     HOME.

3           ALL RIGHT.  WHAT ELSE DO WE NEED TO

4     DISCUSS?

5           SO AT THE END WE'RE GOING TO DO AN E-MAIL

6     EXCHANGE, BUT WHAT ELSE DO WE NEED TO DISCUSS?

7     ANYTHING ELSE THAT WE NEED TO DISCUSS?  I THINK WE

8     GOT IT ALL.

9           THE CLERK:  OH, AND THE P.I. IS UP NOW AS

10    WELL.

11          THE COURT:  OH, OKAY.  THEN LET'S HAND

12    THAT OUT.

13          WHAT I'D LIKE TO DO IS I'D LIKE TO GIVE

14    YOU SOME TIME TO LOOK AT THE P.I. ORDER.  IT

15    APPARENTLY IS BEING UPLOADED ON THE COURT WEBSITE.

16          AND THEN I'D LIKE US TO TALK ABOUT WHERE

17    DO WE GO FROM HERE.

18          BUT I THINK YOU'RE GOING TO NEED SOME

19    TIME TO LOOK AT IT.  IT'S VERY LONG.  IT'S 101

20    PAGES.

21          SO SHALL WE TAKE -- YEAH.  LET'S GIVE --

22    DO WE HAVE JUST THREE COPIES?

23          MS. DEAN:  YEAH.

24          THE COURT:  OKAY.  LET'S GIVE ONE TO EACH

25    SIDE AND THEN ONE TO THE MEDIA.

85

1           SHOULD WE TAKE, LIKE, A 20 MINUTE BREAK?

2     A 15 MINUTE BREAK?

3           MR. MCELHINNY:  THANK YOU, YOUR HONOR.

4           THE COURT:  COME BACK AT 3:30.  OKAY.

5     THANK YOU.  LET'S TAKE A BREAK UNTIL 3:30.

6           (WHEREUPON, A RECESS WAS TAKEN.)

7           THE COURT:  OKAY.  SO I WANT TO TALK

8     ABOUT WHERE WE GO FROM HERE.  I'M ASSUMING THAT A

9     MOTION FOR STAY WILL BE FILED, AND I WANTED TO KNOW

10    HOW QUICKLY YOU WOULD FILE THAT AND SET SOME SORT

11    OF BRIEFING SCHEDULE.

12          MR. JOHNSON:  YES, YOUR HONOR.

13          AND LET ME JUST POINT OUT ALSO, WITH

14    RESPECT TO THIS, THIS SECOND CASE, THE NEW CASE,

15    OBVIOUSLY WE HAVE DIFFERENT LAWYERS INVOLVED IN

16    THAT CASE AND NONE OF THOSE LAWYERS IS HERE AT THIS

17    POINT.

18          SO -- BUT YOU'RE RIGHT, WE DO -- WE WOULD

19    LIKE TO FILE -- WE DO INTEND TO FILE A MOTION TO

20    STAY, AND WE'D ASK, YOUR HONOR, THAT WE HAVE THE

21    OPPORTUNITY TO BE HEARD WITH RESPECT TO THAT MOTION

22    TO STAY ON MONDAY.

23          AND WE COULD FILE IT FIRST THING MONDAY

24    MORNING, OR EVEN ON SUNDAY IF NECESSARY.  BUT WE'D

25    LIKE THE OPPORTUNITY TO BE HEARD WITH RESPECT TO

                                                          86

1    THAT, OBVIOUSLY.

2            MR. MCELHINNY:  THIS IS OBVIOUSLY AN

3    ORDER THAT APPLE HAS SOUGHT VERY HARD BECAUSE OF

4    THE INJURIES THAT WE WERE SUFFERING.

5            THE STAY ISSUE IS GOING TO BE, I THINK,

6    AN IMPORTANT ISSUE.  WE WOULD LIKE A CHANCE,

7    OBVIOUSLY, TO BE HEARD ON IT AND A CHANCE TO BRIEF

8    IT.

9            IT'S -- THIS IS NOT A -- IT IS NOT A

10   REPEAT OF -- I THINK THE ISSUES ARE SLIGHTLY

11   DIFFERENT IN THIS FROM THE FIRST CASE BECAUSE OF

12   THE TIME PERIOD OF THE ORDERS AND THE EFFECT, AND

13   SO I DON'T THINK THE BRIEFING IS JUST GOING TO BE

14   THE SAME ON BOTH MOTIONS.

15           THE COURT:  WELL, THEN, WHAT I -- ANOTHER

16   PROPOSAL I WAS GOING TO MAKE IS TO SET OUT THE DATE

17   BY WHICH APPLE COULD POST THE BOND, WHICH WOULD

18   EFFECTIVELY GIVE A STAY, SO THAT THIS ISSUE COULD

19   BE BRIEFED AND HEARD.

20           MR. MCELHINNY:  GIVEN THOSE OPTIONS, WE

21   WOULD PREFER TO BE HEARD ON MONDAY.

22           THE COURT:  BUT YOU WANT TO FILE A

23   RESPONSE IN WRITING?

24           MR. MCELHINNY:  YOUR HONOR, AGAIN, WE'RE

25   GOING TO DO WHATEVER MEETS YOUR SCHEDULE.  WE WOULD

1  LIKE TO HAVE THE OPPORTUNITY TO DO SOMETHING IN

2  WRITING.

3          BUT THIS IS IRREPARABLE INJURY AND YOUR

4  HONOR HAS RECOGNIZED IT AND WE JUST -- WE'VE JUST

5  HAD A CHANCE TO LOOK AT THE ORDER, BUT TO BRING

6  THIS TO A HALT IMMEDIATELY IS OUR HIGHEST PRIORITY.

7          WE ARE DEALING WITH A -- WE ARE DEALING

8  WITH A PATTERN HERE.  WE ARE DEALING WITH A SERIAL

9  INFRINGER.

10          THE COURT:  WHAT -- IF YOU FILED YOUR

11  MOTION FOR STAY ON SUNDAY, WHAT TIME COULD YOU DO

12  THAT?

13          MR. JOHNSON:  YOUR HONOR, LIKE I SAID,

14  THE LAWYERS WHO ARE WORKING ON THAT PART OF THE

15  CASE AREN'T HERE.

16          THE COURT:  YEAH, SURE.

17          MR. JOHNSON:  SO SUNDAY AFTERNOON AT SOME

18  POINT.

19          (PAUSE IN PROCEEDINGS.)

20          THE COURT:  CAN YOU FILE A RESPONSE BY

21  SUNDAY NIGHT?

22          MR. MCELHINNY:  IF WE ARE SERVED BY -- IF

23  WE GET SERVED BY --

24          THE COURT:  I, UNFORTUNATELY, THINK ECF

25  IS DOWN.

1          MR. MCELHINNY:  NO.  IF THEY SERVE US BY

2     HAND OR E-MAIL BY NOON ON SUNDAY, WE WILL BE ABLE

3     TO FILE A RESPONSE BY 8:00 O'CLOCK ON SUNDAY NIGHT.

4          MR. JOHNSON:  AS YOUR HONOR POINTED OUT,

5     THIS IS A 100-PAGE ORDER IN THIS RESPECT, SO IF THE

6     STAY ISSUES, WE MAY COME BACK AND ASK FOR CERTAIN

7     MODIFICATION.  I'M NOT SURE WHAT, WHAT THAT WOULD

8     ENTAIL AT THIS POINT.

9          BUT, YOU KNOW, WE HAVE TO OBVIOUSLY LOOK

10     AT THE ORDER AND DIGEST IT, AND THE STAY ISSUE, I

11     THINK, WOULD BE TIED TO THAT.

12          AND SO DOING IT BY NOON ON SUNDAY I THINK

13     IS GOING TO BE VERY DIFFICULT FOR US.

14          AND WE UNDERSTAND THE TIMING ASSOCIATED

15     WITH THIS AND WE'LL MOVE AS QUICKLY AS WE CAN.

16          BUT SUNDAY AT NOON I THINK IS, BY ALL

17     COUNTS, VERY, VERY FAST.

18          MR. MCELHINNY:  AND IN MY WORLD, YOUR

19     HONOR, PEOPLE --

20          THE COURT:  WELL, THE OTHER OPTION IS TO

21     SAY SAMSUNG FILE ON TUESDAY, APPLE FILE ON

22     THURSDAY, AND WE HAVE A HEARING ON THE 9TH.  THAT'S

23     ANOTHER POSSIBILITY.

24          MR. JOHNSON:  AND THAT WOULD BE

25     ACCEPTABLE TO US.

```
1              MR. MCELHINNY:  THAT'S FINE, AS LONG AS
2    THERE'S NO STAY IN EFFECT PENDING THAT.
3              IT WOULD BE THE SAME AS THE OTHER
4    INJUNCTION, WHICH IS THEY'RE SEEKING A STAY AFTER
5    IT GOES INTO EFFECT.
6              MR. JOHNSON:  AND WE'D ASK THAT YOUR
7    HONOR NOT RESERVE -- NOT ISSUE -- THAT THE
8    INJUNCTION --
9              THE COURT:  WELL, OBVIOUSLY NOTHING CAN
10   BE POSTED TODAY AND THEN WE'RE INTO THE WEEKEND.
11             MR. JOHNSON:  RIGHT.
12             MR. MCELHINNY:  AND WHAT I --
13             MR. JOHNSON:  BUT WHAT I FEAR IS THEY'LL
14   POST ON MONDAY.
15             MR. MCELHINNY:  AND ALL I'M SAYING IS
16   THEY SHOULDN'T BE ABLE TO GET A STAY BECAUSE THEY
17   CAN'T DO A BRIEF BY NOON AT SUNDAY.
18             MR. JOHNSON:  YOUR HONOR, AT THIS POINT
19   WE'RE TALKING ABOUT POTENTIALLY A WEEK, AND THAT'S
20   IT.
21             AND SO WE WOULD ASK, YOUR HONOR, FOR YOUR
22   INDULGENCE TO PROPERLY CONSIDER THE IMPACT OF THE
23   ORDER, PROPERLY CONSIDER THE STAY ISSUES ASSOCIATED
24   WITH IT, AND THAT WE HAVE A HEARING ON THE 9TH
25   ASSOCIATED WITH IT.
```

1          YOUR HONOR, I THINK WHERE YOU STARTED TO

2     GO WAS NOT ISSUE -- THE INJUNCTION NOT TAKE EFFECT

3     UNTIL THIS ISSUE WITH THE STAY GETS RESOLVED ON THE

4     9TH.

5          MR. MCELHINNY:  YOUR HONOR, THEY'VE

6     ALREADY HAD THEIR STAYS.  THEY'VE HAD THEIR STAYS

7     JUST BECAUSE, AS I TOLD YOU THE FIRST TIME WE EVER

8     MET, THEY RELY ON THE FACT THAT THE COURTS CAN'T

9     MOVE AS QUICKLY AS THEY CAN.

10          WE HAD THE FIRST INJUNCTION HEARING.  WE

11     JUST GOT THE INJUNCTION ON THAT.

12          WE HAD THE SECOND INJUNCTION HEARING.

13     YOUR HONOR HAS TAKEN THE TIME TO DO THIS THOROUGH

14     ORDER.

15          THEY SHOULDN'T GET A STAY ANYWAY, BUT IF

16     THEY CARED, THEY COULD DO IT BY NOON ON SUNDAY

17     BECAUSE THAT'S, THAT'S HOW LAW FIRMS RESPOND IN

18     EMERGENCIES.

19          MR. QUINN:  YOUR HONOR --

20          THE COURT:  ALL RIGHT.  THIS IS --

21          MR. QUINN:  YOUR HONOR, MAY I MAKE A

22     COMMENT?

23          THE COURT:  PLEASE, GO AHEAD.

24          MR. QUINN:  THIS IS, AS EVERYBODY KNOWS,

25     A DIFFERENT CASE AND THE COURT KNOWS WE HAVE

1    DIFFERENT LAWYERS WHO HAVE WORKED ON THAT CASE.

2             NONE OF THE LAWYERS HERE PRESENT ARE

3    REALLY CONVERSANT WITH THAT CASE.

4             THE COURT:  I UNDERSTAND.

5             MR. QUINN:  SO WE'RE TALKING ABOUT

6    REACTING TO -- A VERY LIKELY OPINION RAISING

7    SIGNIFICANT ISSUES HAVING VERY SIGNIFICANT BUSINESS

8    CONSEQUENCES.

9             I'M SURE APPLE HAS SET IN MOTION RIGHT

10   NOW GETTING THE BOND -- MONEY FOR THE BOND POSTED

11   MONDAY MORNING.  SO --

12            THE COURT:  WELL, I'M GOING TO -- ALL

13   RIGHT.  WHY DON'T WE DO THIS, THEN.

14            MR. MCELHINNY:  YOUR HONOR, IF YOUR HONOR

15   HAD POSTED THIS ON ECF AS OPPOSED TO DOING THEM A

16   FAVOR OF HANDING IT OUT IN COURT WHEN THEY WERE

17   HERE, THEN THE PROCESS WOULD JUST GO FORWARD.  THEY

18   WOULD FILE A MOTION AS QUICKLY AS THEY WERE READY

19   TO FILE IT.  THAT'S THE WAY THE PROCESS WOULD HAVE

20   HAPPENED BUT FOR THE FACT THAT ECF IS DOWN.

21            THE COURT:  ALL RIGHT.  THIS IS WHAT

22   WE'RE GOING TO DO:  WE'LL HAVE A HEARING,

23   UNFORTUNATELY, ON MONDAY, JULY 2ND.  WE'LL HAVE IT

24   AT 11:00 A.M.

25            A MOTION FOR STAY WILL HAVE TO BE

1   E-MAILED, BECAUSE OF OUR ECF SITUATION, ON SUNDAY,

2   JULY 1.

3           WHAT TIME?

4           MR. QUINN:  I WOULD PROPOSE 6:00 O'CLOCK,

5   YOUR HONOR.

6           MR. MCELHINNY:  THAT GIVES US NO TIME TO

7   FILE AN OPPOSITION.

8           THE COURT:  WELL, WHAT IF YOU FILE --

9   THIS IS UNFORTUNATE THAT THIS IS ALL GOING TO BE

10  DONE ON A SUNDAY, BUT WHY DON'T WE SAY 3:00 O'CLOCK

11  FOR THE MOTION AND 10:00 O'CLOCK FOR THE

12  OPPOSITION?

13          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

14          THE COURT:  OR 2:00 AND 9:00?

15          MR. MCELHINNY:  2:00 AND 9:00 --

16          THE COURT:  THAT JUST DOESN'T GIVE US

17  VERY MUCH TIME TO PROCESS IT IS THE PROBLEM.

18  THAT'S THE ONLY -- BECAUSE THEN IF WE HAVE TO

19  HAVE -- I THINK THAT DOESN'T GIVE US ENOUGH TIME ON

20  THE BACK END.

21          WHY DON'T WE KEEP IT AT NOON AND -- CAN

22  WE SAY NOON AND 5:00?

23          MR. MCELHINNY:  I'M SITTING HERE THINKING

24  ABOUT HOW PIGS GET FAT AND HOGS GET SLAUGHTERED.

25          I THINK WE'LL ACCEPT 5:00, YOUR HONOR.

1          THE COURT:  OKAY.  JUST BECAUSE WE'LL

2     NEED SOME TIME TO PREPARE.  OKAY.

3          APPLE CANNOT -- I DON'T WANT THE BOND

4     POSTED ON MONDAY, OKAY?  SO IT CANNOT BE POSTED

5     UNTIL AT LEAST TUESDAY, ASSUMING I DON'T GRANT THE

6     MOTION FOR A STAY.  OKAY?  BECAUSE THAT WOULD

7     BASICALLY NULLIFY ANY STAY ORDER.

8          MR. MCELHINNY:  WE UNDERSTAND THAT, YOUR

9     HONOR.

10          THE COURT:  OKAY.  WHAT ELSE?  WHAT ELSE

11     IN TERMS OF BRIEFING SCHEDULES DO WE NEED TO THINK

12     ABOUT?

13          MR. MCELHINNY:  NOTHING FURTHER FROM US,

14     YOUR HONOR.

15          MR. JOHNSON:  NOTHING ELSE FROM OUR SIDE,

16     YOUR HONOR.

17          THE COURT:  OKAY.  OKAY.  WELL, THEN,

18     THANK YOU ALL VERY MUCH.

19          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

20          MR. QUINN:  THANK YOU, YOUR HONOR.

21          MR. JOHNSON:  THANK YOU, YOUR HONOR.

22          MR. LEE:  THANK YOU, YOUR HONOR.

23          (WHEREUPON, THE PROCEEDINGS IN THIS

24     MATTER WERE CONCLUDED.)

25

1

2

3

4                    <u>CERTIFICATE OF REPORTER</u>

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23           /S/
             _____
24           LEE-ANNE SHORTRIDGE, CSR, CRR
             CERTIFICATE NUMBER 9595
25