# Exhibit 17

**SUBJECT TO PROTECTIVE ORDER**
<u>**CONTAINS CONFIDENTIAL INFORMATION**</u>

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | |
| Plaintiff, | |
| vs. | Civil Action No. 11-CV-01846-LHK |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **APPLE INC.'S OBJECTIONS AND RESPONSES TO SAMSUNG'S FOURTH SET OF INTERROGATORIES** <u>**CONFIDENTIAL UNDER THE PROTECTIVE ORDER**</u> |
| Defendants. | |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity, SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation, and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company, a
California corporation,

          Counterclaim-Plaintiff,

    v.

APPLE INC., a California corporation,

          Counterclaim-Defendant.

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT APPLE INC.'S**
**OBJECTIONS AND RESPONSES TO SAMSUNG'S**
**FOURTH SET OF INTERROGATORIES (NOS. 34-80)**

Under Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rule 33, Apple

Inc. ("Apple") hereby objects and responds to the Fourth Set of Interrogatories to Apple Inc.

(Nos. 34-80) served by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and

Samsung Telecommunications America LLC (collectively, "Samsung") on February 8, 2012.

These responses are based on information reasonably available to Apple at the present time.

Apple reserves the right to amend and supplement these responses when and if additional

information becomes available.

**GENERAL OBJECTIONS**

Apple makes the following general responses and objections ("General Objections") to

each definition, instruction, and interrogatory propounded in Samsung's Fourth Set of

Interrogatories to Apple Inc. These General Objections are hereby incorporated into each

specific response. The assertion of the same, similar, or additional objections or partial responses

to individual interrogatories does not waive any of Apple's General Objections.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1.      Apple objects to Samsung's definitions of "APPLE," "PLAINTIFF," "YOU," and "YOUR" to the extent they purport to include persons or entities that are separate and distinct from Apple and are not under Apple's control. "Apple" refers only to Apple Inc.

2.      Apple objects to Samsung's definitions of each term incorporating the word "PATENT," "PATENTS," and "PATENTS-IN-SUIT," including definitions 4 through 16, because they are inaccurate, overly broad, vague, ambiguous, and unduly burdensome.

3.      Apple objects to Samsung's definition of "APPLE ACCUSED PRODUCTS" to the extent it is overly broad and unduly burdensome and to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Apple further objects to Samsung's definition of "Apple Accused Products" to the extent that it requires a legal conclusion.  For purposes of responding to these Requests, Apple interprets the term "Apple Accused Products" to mean those products that are specifically identified and accused in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.

4.      Apple objects to the definition of "APPLE MANUFACTURERS" to the extent it includes entities who have no role in the manufacture of the Apple Accused Products.  Apple further objects that this definition as overbroad to the extent it includes "all their predecessors, successors, parents, divisions, subsidiaries, and affiliates thereof, and all officers, agents, employees, counsel and other persons acting on their behalf, or any other person or entity subject to their control or which controls them."

5.      Apple objects to the definition of the term "3GPP" as vague, ambiguous, overbroad, and unduly burdensome to the extent it departs from Apple's own definition of this term, as defined in Apple's Third Set of Requests for Production of Documents.

6.      Apple objects to the definition of "Software" and "Related Documentation" as overbroad, vague, ambiguous, and unduly burdensome, especially with regards to the terms "acted upon by a processor," "listings," and "descriptive or explanatory documentary documents."  Apple further objects because much of the "source code, hardware code, machine

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

code, object code, assembly code" or other "code" for hardware provided by third parties is not within Apple's possession, custody, or control.

7.      Apple objects to the definition of "Baseband Processor" because it is inaccurate, overbroad, vague, ambiguous, and unduly burdensome, especially with regards to the phrase "mainly used to process communication functions."

8.      Apple objects to the definition of the term "FRAND" as vague and ambiguous to the extent it departs from Apple's own definition of this term, as defined in Apple's Ninth Set of Requests for Admission.

9.      Apple objects to Samsung's definitions of "APPLE TRADE DRESS" because it is inaccurate, overly broad, vague, ambiguous, and unduly burdensome.  For the purposes of these responses and objections, Apple uses the following defined terms:

- "Original iPhone Trade Dress" means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed;

- "iPhone 3G Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; when the device is on, a row of small dots on the display screen; when the device

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed;

• "iPhone 4 Trade Dress" means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower black borders on either side of the screen; a thin metallic band around the outside edge of the phone; when the device is on, a row of small dots on the display screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed;

• "iPhone Trade Dress" means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower neutral borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed;

• "iPad Trade Dress" means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the flat clear surface; a

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen;

- "iPad 2 Trade Dress" means the following elements of Apple's product designs: a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the clear flat surface; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen;

- "Trade Dress Registrations" means U.S. Registration Nos. 3,470,983; 3,457,218; and 3,475,327; and

- "Trade Dress Applications" means U.S. Application Serial Nos. 77/921,838; 77/921,829; 77/921,869; and 85/299,118.

10.    Apple objects to Samsung's definitions of "APPLE TRADEMARKS" because it is inaccurate, overly broad, vague, ambiguous, and unduly burdensome.  For the purposes of these responses and objections, Apple uses the following defined terms:

- "Registered Icon Trademarks" means the marks shown in U.S. Registration Nos. 3,886,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; and 3,886,197;

- "Purple iTunes Store Trademark" means the mark shown in U.S. Application Serial No. 85/041,463; and

- "iTunes Eighth Note and CD Design Trademark" means the mark shown in U.S. Registration No. 2,935,038.

11.    Apple objects to Samsung's definition of "Document" and "Documents" as overly broad, vague, ambiguous, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. "Document" shall have the meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

12.     Apple objects to the definition of the terms "referring to," "relating to," "concerning," or "regarding" as vague, ambiguous, overbroad, and unduly burdensome to the extent that they depart from Apple's own definitions of these terms, as defined in Apple's Third Set of Interrogatories, dated August 3, 2011.

13.     Apple objects to Samsung's definition of "IDENTIFY" because it is overly broad and unduly burdensome and because it purports to impose requirements and obligations on Apple other than as set forth in the Federal Rules of Civil Procedure. Samsung's definition is overbroad and unduly burdensome because it would require Apple to include in its responses, for example, the addresses, employer names, and job titles of every individual identified, regardless of their employment at Apple; documents and testimony supporting every fact in Apple's responses; model names/numbers, manufacturers, announcement/release/sales dates, sellers, and descriptions for any product identified in Apple's responses, regardless of whether the product is an Apple product; production numbers, document type, a description of the general nature and subject matter, date of creation, and all authors, addressees, and recipients for every document; and country, patent or application number, filing/publication/grant dates, patentees, and applicants for every patent document.

14.     Apple objects to Samsung's Instruction Nos. 1 and 2 because they are vague, ambiguous, overly broad, and unduly burdensome, especially in their purported requirement that Apple furnish information from entities that are not Apple, and from persons with "the best knowledge." Apple further objects to these instructions because they call for the disclosure of information that is privileged and protected by the work product doctrine.

15.     Apple objects to Samsung's Instruction Nos. 3 and 5-10 because they purport to impose requirements and obligations on Apple other than as set forth in the Federal Rules of Civil Procedure.

16.     Apple provides these objections and responses to the best of its current knowledge.  Discovery or further investigation may reveal additional or different information

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

warranting amendment of these objections and responses. Apple reserves the right to produce at trial and make reference to any evidence, facts, documents, or information not discovered at this time, omitted through good-faith error, mistake, or oversight, or the relevance of which Apple has not presently identified.

17.     By responding to these interrogatories, Apple does not concede the relevance or materiality of any of the interrogatories or of the subjects to which it refers. Apple's responses are made subject to, and without waiving any objections as to the competency, relevancy, materiality, privilege, or admissibility of any of the responses, or of the subject matter to which they concern, in any proceeding in this action or in any other proceeding.

18.     Apple objects to any interrogatory to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense or common interest privilege, or any other applicable privilege, doctrine, or discovery immunity. The inadvertent production by Apple of information protected from disclosure by any such privilege, doctrine, or immunity shall not be deemed a waiver by Apple of such privileges or protections. Pursuant to the parties' agreement, to the extent any interrogatory calls for the identification of information dated after April 15, 2011 that is protected by such privilege, doctrine, or immunity, such information will not be included on Apple's privilege log.

19.     Apple objects generally to the Interrogatories to the extent they seek confidential, proprietary, or trade secret information of third parties. Apple will endeavor to work with third parties in order to obtain their consent, if necessary, before providing such information. To the extent an interrogatory seeks information of a confidential or proprietary nature to Apple, or to others to whom Apple is under an obligation of confidentiality, Apple will respond pursuant to the terms of the protective order to be entered in this case and subject to notice to third parties, as necessary.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

20.     Apple objects to any interrogatory to the extent it is premature and/or to the extent that it: (a) conflicts with the schedule entered by the Court; (b) conflicts with obligations that are imposed by the Federal Rules of Civil Procedure, the Civil Local Rules and/or the Patent Local Rules of this Court, and/or any other applicable rule; (c) seeks information that is the subject of expert testimony; (d) seeks information and/or responses that are dependent on the Court's construction of the asserted claims of the patents-in-suit; and/or (e) seeks information and/or responses that are dependent on depositions and documents that have not been taken or produced.

21.     Apple objects to each interrogatory as overbroad and unduly burdensome to the extent that it calls for information that is neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.

22.     Apple objects to each interrogatory and to Samsung's "Definitions" and "Instructions" to the extent they are vague, ambiguous, overbroad, or unduly burdensome, or purport to impose upon Apple any duty or obligation that is inconsistent with or in excess of those obligations that are imposed by the Federal Rules of Civil Procedure, the Civil Local Rules and/or the Patent Local Rules of this Court, or any other applicable rule.

23.     Apple objects to any Interrogatory to the extent it seeks irrelevant information about Apple's products or business operations. Such requests are overbroad and unduly burdensome.  Apple will only produce information that is relevant to the patents-in-suit, or that is otherwise related to the claims or defenses of the parties asserted by the parties in this litigation.

24.     Apple objects to each Interrogatory to the extent that it would impose a duty on Apple to undertake a search for or an evaluation of information, documents, or things for which Samsung is equally able to search for and evaluate.  In particular, Apple objects to each Interrogatory to the extent that it seeks information or documents that are publicly available.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

25. Apple objects to each Interrogatory to the extent that it seeks information that can be derived or ascertained from documents that will be produced in discovery or that are uniquely in Samsung's possession, custody, and control.

26. Apple objects to the Interrogatories to the extent they would require Apple to make a legal conclusion or contention to make a proper response.

27. Apple objects to any Definition, Instruction, or Interrogatory to the extent that it purports to require identification of oral communications. Such Definition, Instruction, or Interrogatory is overbroad, vague, ambiguous, and unduly burdensome.

28. Apple objects to the Interrogatories to the extent that they purport to define words or phrases to have a meaning different from their commonly understood meaning, or to include more than their commonly understood definitions.

29. In Apple's objections, the terms "and" and "or" are intended to be construed conjunctively or disjunctively as necessary to make the objections inclusive rather than exclusive.

30. Apple objects to the Interrogatories to the extent they purport to require Apple to identify or describe or identify "every," "each," "any," or other similarly expansive, infinite, or all-inclusive terms to the extent that such Interrogatories are overbroad and unduly burdensome.

31. Apple objects to the Interrogatories to the extent they seek information that is not in the possession, custody, or control of Apple, purport to require Apple to speculate about the identity of persons who might have responsive documents, and/or purport to call for any description of documents that Apple no longer possesses and/or was under no obligation to maintain.

32. Apple objects to the Interrogatories to the extent they are not limited in time and seek information for periods of time that are not relevant to any claim or defense.

33. Apple's objections as set forth herein are made without prejudice to Apple's right to assert any additional or supplemental objections pursuant to Rule 26(e).

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

34.      Apple will make, and has made, reasonable efforts to respond to Samsung's Fourth Set of Interrogatories, to the extent that no objection is made, as Apple reasonably understands and interprets each Interrogatory. If Samsung subsequently asserts any interpretation of any Interrogatory that differs from the interpretation of Apple, then Apple reserves the right to supplement and amend its objections and responses.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

Subject to the foregoing qualifications and General Objections and the specific objections made below, Apple objects and responds to Samsung Electronics Co. Ltd.'s Fourth Set of Interrogatories to Apple Inc. as follows:

**INTERROGATORY NO. 34:**

IDENTIFY all facts (including any DOCUMENTS reflecting such facts and persons having knowledge of them) concerning any advance notice, communications or other information that APPLE had, including without limitation any discussions between Steve Jobs and Paul Otellini, concerning INTEL'S acquisition of INFINEON'S Wireless Business and the creation of Intel Mobile Communications, Inc., including any expected effects or benefits of the transaction with respect to APPLE, INTEL, or BASEBAND PROCESSORS supplied for incorporation in the ACCUSED APPLE PRODUCTS, including without limitation, license coverage, patent exhaustion, and benefits to third parties including APPLE.

**RESPONSE TO INTERROGATORY NO. 34**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all facts" and to the extent it seeks information relating to technologies or functionality not at issue.  Apple objects to the terms "advance notice" and "expected effects or benefits of the transaction" as vague and ambiguous and failing to identify with sufficient

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

particularity the information sought.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.  Apple objects to this Interrogatory to the extent it seeks information that is not in Apple's possession, custody, or control.

Subject to and without waiving the foregoing objections, Apple responds as follows:

Intel publicly announced its intent to acquire Infineon's wireless business unit on August 29, 2010, see http://newsroom.intel.com/community/intel_newsroom/blog/2010/08/29/intel-to-acquire-infineons-wireless-solutions-business, which was approximately five months before Intel completed the acquisition, *see* http://newsroom.intel.com/community/intel_newsroom/blog/2011/01/31/intel-completes-acquisition-of-infineon-s-wireless-solutions-business.  To the extent this interrogatory seeks information regarding any advanced notice Intel provided to Apple before August 29, 2010 of Intel's intent to acquire Infineon's wireless business unit, based upon Apple's investigation to date, Apple is not aware of any such communications.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 35:**

IDENTIFY all ESSENTIAL IPRs, including patent applications and U.S. Patent Nos. 5,410,543 and 5,835,721, that APPLE disclosed to ETSI or 3GPP with respect to UMTS standards or technical specifications, and for each such ESSENTIAL IPR, IDENTIFY the priority date of the earliest related application for that IPR, the standard or technical specification to which the proposal related, the date APPLE (or another company) submitted a proposal related to the technology that is the subject matter of the IPR, the date that the proposal (whether or not modified) was frozen into the standard or technical specification, and the date on which APPLE first disclosed its IPR.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

**RESPONSE TO INTERROGATORY NO. 35**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all ESSENTIAL IPRs" and to the extent it seeks information relating to technologies or functionality not at issue. Apple objects to the terms "disclosed to ETSI or 3GPP" as vague and ambiguous and failing to identify with sufficient particularity the information sought. Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple declared certain patents to be essential to various specifications of the UMTS standard in July 2007 (S-ITC-003126935 – S-ITC-003126941), and November 2011 (S-ITC-003126942 – S-ITC-003126968). In addition, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and states that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 36:**

State APPLE'S contention (and the bases therefor) of what it means to "timely inform ETSI of ESSENTIAL IPRs" under any ETSI IPR POLICY effective from March 1998 to the present, including any maximum temporal delay period (*e.g.,* one year) after which APPLE contends the disclosure of an ESSENTIAL IPR is presumptively untimely, and IDENTIFY whether APPLE'S disclosures of ESSENTIAL IPR RELATING to ETSI UMTS standards and technical specifications were in all cases timely, and IDENTIFY any related facts or DOCUMENTS.

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

**RESPONSE TO INTERROGATORY NO. 36**

Apple objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome, including without limitation because it calls for the identification of "any related facts or documents." Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure. Apple further objects to this Interrogatory as premature in advance of expert discovery. Apple further objects because this interrogatory contains multiple, discrete interrogatories. Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar as it purports to require that Apple "IDENTIFY whether APPLE'S disclosures of ESSENTIAL IPR RELATING to ETSI UMTS standards and technical specifications were in all cases timely, and IDENTIFY any related facts or DOCUMENTS."

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

The meaning of ETSI members' obligation to "timely inform ETSI of ESSENTIAL IPRs," under every ETSI IPR Policy that has been in force since 1998, varies depending on the particular facts and circumstances.

Under the ETSI IPR Policy, any member that learns that it owns IPR that may be essential to technology under consideration for adoption into an ETSI standard must disclose that IPR as soon as practicable and, in all cases, before the freeze date for that standard. While there is no duty to search one's IPR portfolio for potentially essential IPR, the failure to disclose before the freeze date IPR about which the member has actual knowledge would be inconsistent with the obligation to use "reasonable endeavours" to disclose "timely," *see* 1997 ETSI IPR Policy Clause 4.1; 2011 ETSI IPR Policy Clause 4.1, as well as the custom and practice of ETSI members. This obligation applies with even more force when a member knows that its IPR may

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

be essential to a technical solution that it proposes for an ETSI standard because the IPR Policy provides that "a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted."  1997 and 2011 ETSI IPR Policy Clause 4.1.

Once the freeze date has passed, the obligation to use "reasonable endeavours" to disclose "timely," s*ee* 1997 ETSI IPR Policy Clause 4.1; 2011 ETSI IPR Policy Clause 4.1, can, in accordance with the custom and practice of ETSI members, be satisfied with prompt disclosure after a member learns that it owns essential IPR.  Apple does not contend that there is any defined temporal delay after which disclosure of an ESSENTIAL IPR is presumptively untimely for that reason alone.

Apple's disclosures of IPR essential to the UMTS standard were in all cases timely. Apple disclosed patents in July 2007 (S-ITC-003126935 – S-ITC-003126941), and disclosed patents in November 2011 (S-ITC-003126942 – S-ITC-003126968).  In each case, Apple made the disclosure promptly after learning that the IPR was essential to the UMTS standard after it conducted a review of its IPR portfolio to evaluate whether it owned essential patents.  Before conducting that review, Apple was not aware that this IPR was essential to the UMTS standard.

David Singer participates in the 3GPP TSG-SA4 working group on behalf of Apple.  Mr. Singer participated in a discussion with that working group concerning Apple's ownership of IPR relevant to 3GPP TS 26.244 V.6.3.0 in advance of the freeze date for that specification.  Mr. Singer informed the group that the identified IPR was already subject to a licensing commitment with respect to the MPEG standard.  In Apple's July 2007 declaration of essential IPR to ETSI, Apple formally disclosed the relevant IPR, U.S. Patent Nos. 6,744,763 and 6,829,648.

In addition, Apple incorporates by reference its response to Interrogatory 45 as if fully set forth herein.

Apple reserves the right to supplement and/or amend its response as appropriate.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**INTERROGATORY NO. 37:**

State YOUR contention (including identification of all supporting facts and any related DOCUMENTS) concerning the proper methodology, and the bases therefor, for determining whether the terms and conditions for a proposed license to IPRs declared to be ESSENTIAL to an ETSI standard or technical specification are fair, reasonable and non-discriminatory, including the range of royalty rates, if any, that APPLE concedes are FRAND.

**RESPONSE TO INTERROGATORY NO. 37**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all supporting facts and any related documents" and to the extent it seeks information relating to technologies or functionality not at issue.  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

The proper methodology for determining a FRAND licensing fee is based on a mathematical formula: ***Common Base x Appropriate Rate = Per Unit FRAND Licensing Fee***. Base and rate cannot be divorced in this analysis, because it is the combination of these two elements that yields a fair, reasonable and non-discriminatory result.

In addition, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and states that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

following document from which information responsive to this Interrogatory may be ascertained: APL794-N0000006310 -- APL794-N0000006338.

I.    Common Base

The proper base for calculating FRAND licensing terms for cellular standard essential patents ("SEPs") should (i) be common between parties and across industry, and (ii) consist of the smallest salable unit capable of complying with the UMTS standard, here the baseband chipset.

To comply with FRAND licensing principles, if two parties with cellular SEPs are negotiating with one another, the parties should apply their respective FRAND royalty rates against a common base.  Indeed, the base should be 'common' not just between negotiating parties, but across the industry.

In addition to being common, the royalty base should bear the closest possible relationship to the actual functionality covered by the cellular standard.  This is achieved by using the concept of the "smallest salable unit" as the royalty base, as the U.S. Federal Trade Commission has endorsed.  *See The Evolving IP Marketplace*, US Federal Trade Commission, March 2011 at 212.  The accused products perform all communications with UTMS networks by use of the baseband chipset, which is consequently the appropriate royalty base.

II.    Appropriate Royalty Rate

A FRAND royalty rate is an appropriate rate when it reflects the value of the licensor's own portfolio of cellular SEPs and applications for SEPs for the relevant ETSI standard in relation to the value of the total, industry-wide pool of such patents and applications.  Such an approach is objective, proportional among holders of cellular SEPs and applications for SEPs, and comparable among licensees.

Apple reserves the right to supplement and/or amend its response as appropriate.

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

**INTERROGATORY NO. 38:**

To the extent that YOU contend that the sale of an INTEL or QUALCOMM BASEBAND PROCESSOR(S) exhausts Samsung's rights in one or more of the SAMSUNG PATENTS-IN-SUIT, state in detail the basis for that contention including an identification of all facts concerning any alleged first sale of the BASEBAND PROCESSOR(s) in the United States and the circumstances surrounding such sale, including any delivery of the BASEBAND PROCESSOR(s) to any entity in the United States.   If, for example, the BASEBAND PROCESSOR(s) is not delivered to any entity in the United States before being imported into the United States as part of an ACCUSED PRODUCT, YOU should so state.

**RESPONSE TO INTERROGATORY NO. 38**

Apple objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome, including without limitation because it calls for the identification of "all facts concerning" and seeks information relating to technologies or functionality not at issue.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

To the extent any of Samsung's patents (including at least the Declared Essential Patents in Suit[1]) is practiced by any Apple accused device—and Apple disputes that any is—such patents would be substantially embodied in baseband chipsets acquired from Intel, and accordingly would be exhausted as applied to those chipsets, barring Samsung's infringement claims

---

[1]     As used herein, Declared Essential Patents in Suit has the definition recited in Apple's Ninth Set of Requests for Admission to Defendants Samsung and Counterclaim-Plaintiffs Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

targeting those chipsets.  Samsung has licensed Intel to sell chipsets.  These license rights result in patent exhaustion.

Samsung has entered into a cross-license agreement with Intel that allows Intel to, among other things, sell, directly and indirectly, baseband chipsets that substantially embody the Samsung patents.  Intel is the supplier of the UMTS baseband chipsets incorporated in the accused Apple products.  These Intel chipsets contain the functionality that Samsung accuses of infringing the Declared Essential Patents in Suit.

Effective January 1, 1993, Intel and Samsung entered into a "Patent Cross License Agreement" (herein, "Intel Agreement").  The Intel Agreement was subsequently amended twice.  It is governed by New York law.  The Intel Agreement has formally expired, but remains in force as to all patents that fall within the scope of the agreement, for the life of those patents.  Samsung's Declared Essential Patents in Suit fall within the scope of the "Samsung Patents" that it licensed in the Intel Agreement.

As amended, Section 3.1(a)(1) of the Intel Agreement gives Intel rights under the "Samsung Patents" to "make, use, sell (directly or indirectly), offer to sell, import and otherwise dispose of all INTEL Licensed Products." "INTEL Licensed Products" are "any products constituting (a) Semiconductor Material, (b) Semiconductor Device, or (c) Integrated Circuit excluding any SAMSUNG Proprietary Products."

In January 2011, Intel acquired Infineon's Wireless Solutions Business.  Since its acquisition of Infineon's Wireless Solutions Business, Intel's wholly-owned subsidiary, Intel Mobile Communications GmbH ("IMC"), has supplied the PMB 8878 and PMB 9801 to Intel, and Intel has sold the PMB 8878 and PMB 9801 chipsets to Apple, through Intel's wholly-owned sales subsidiary Intel Americas Inc.  These chipsets have been used in the iPhone 3G, iPhone 3GS, iPhone 4 (UMTS version), iPad 3G, and iPad 2 3G (UMTS version).

Apple further contends that the sales by Intel of the PMB 8878 and PMB 9801 baseband processor chips used in the iPhone 3G, iPhone 3GS, iPhone 4 (UMTS version), iPad 3G, and

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

iPad 2 3G (UMTS version) to Apple took place in the United States.  Since its acquisition of Infineon's Wireless Business Division, Intel has sold the PMB 8878 and PMB 9801 chipsets to Apple, through Intel's wholly-owned sales subsidiary Intel Americas Inc.  Intel Americas invoices Apple at Apple's office Cupertino, California, and Apple remits payments to Intel Americas at its Santa Clara, California, office.  Based on Apple's direction, delivery of the goods is to Apple assemblers in Asia.

Thus, Intel's sales to Apple constitute authorized sales of the Intel chipsets under Samsung's patents, exhausting any Samsung patents substantially embodied in those chipsets.

Although the iPhone 4S is not presently part of this case (and Apple objects to adding it at this late stage), it too contains a Samsung-licensed baseband processor chipset:  Qualcomm's MDM6610, which falls within the coverage of multiple covenants not to sue made by Samsung to Qualcomm and Qualcomm customers (like Apple).

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 39:**

To the extent YOU contend that SAMSUNG'S named inventors or other personnel promoted technologies for inclusion in UMTS that are covered by one or more of the asserted SAMSUNG PATENTS-IN-SUIT, state in detail the complete basis for that contention including a description of all DOCUMENTS and other evidence reflecting SAMSUNG'S alleged efforts to promote the technologies of the patents-in-suit for inclusion in UMTS, the identification of any proposals or other DOCUMENTS reflecting these alleged efforts to promote, and the detailed legal and technical basis for YOUR assertion that these proposals or other DOCUMENTS reflect the subject matter of the asserted SAMSUNG PATENTS-IN-SUIT.

**RESPONSE TO INTERROGATORY NO. 39**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

relating to "all documents and other evidence."  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

The deposition testimony of the inventors of the Samsung Declared Essential Patents in Suit is hereby incorporated by reference.

The following are examples of efforts by the named inventors to promote technology for inclusion in the standard.

**'001 Patent**

Inventor Beongjo Kim attended TSG RAN WG1 Meeting 6.  Mr. Kim also submitted a formal Samsung proposal, TSGR1#6(99)892, to WG1 via email.  (Email from Beongjo Kim to 3GPP_TSG_RAN_WG1@list.etsi.org, dated July 9, 1999, APLNDC-WH-A 0000009980.)

Inventor Min Goo Kim attended TSG RAN WG1 Meeting 6.

Samsung's proposal was approved by TSG RAN WG1 at Meeting #6.

Samsung's delegates at various times communicated with 3GPP delegates either in person, via e-mail, or via phone in order to promote the speedy adoption of their technology by working group 1.  At no time prior to the adoption of their proposals did any Samsung employee notify 3GPP or ETSI that it had filed a Korean patent application on the subject matter of its proposals.

**'867 Patent**

Inventor Jaeyoel Kim attended TSG RAN WG1 Meetings 6 and 7.  Mr. Kim also submitted various proposals to WG1, (Email from Jaeyoel Kim to 3GPP_TSG_RAN_WG1@list.etsi.org, dated July 8, 1999, APLNDC-WH-A 0000012263), TSGR1#6(99)915; TSGR1#6(99)916; Email from Jaeyoel Kim to

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

3GPP_TSG_RAN_WG1@list.etsi.org, dated August 26, 1999, APLNDC-WH-A 0000012262;

APLNDC-WH-A 0000012258 -- 12261).

Inventor Heewon Kang attended TSG RAN WG1 Meetings 6 and 7.

Samsung Proposal "Text Proposal regarding Multiple Scrambling Codes (rev. of R1-99d51) – TSGR1#7(dd)D83, APLNDC-WH-A 0000012351, was adopted at TSG RAN WG1 Meeting #7.

Samsung's delegates at various times communicated with 3GPP delegates either in person, via e-mail, or via phone in order to promote the speedy adoption of their technology by working group 1.  At no time prior to the adoption of their proposals did any Samsung employee notify 3GPP or ETSI that it had filed a Korean patent application on the subject matter of its proposals.

**'410 Patent**

Inventor Min Goo Kim attended TSG RAN WG1 Meetings 6 and 7.  Mr. Kim also submitted proposals to WG1.  (Email from Min Goo Kim to 3GPP_TSG_RAN_WG1@list.etsi.org, dated July 8, 1999, APLNDC-WH-A 0000010281; TSGR1#6(99)919, email and attachment from Min Goo Kim to 3GPP_TSG_RAN_WG1@list.etsi.org, dated July 10, 1999, APLNDC-WH-A 0000010279; APLNDC-WH-A 0000010708.)

Inventor Beongjo Kim attended TSG RAN WG1 Meeting 6 and 7.

Together with LGIC, Samsung submitted a proposal that related to the same general subject matter as the pending Samsung patent application.  (Samsung and LGIC Proposal, "Text proposal for Turbo codes and rate matching in TS25.212, TS 25.222 -- TSGR1#7(99)d84, APLNDC-WH-A 0000010518) that was approved at TSG RAN WG1 Meeting #7.

Samsung's delegates at various times communicated with 3GPP delegates either in person, via e-mail, or via phone in order to promote the speedy adoption of their technology by working group 1.  At no time prior to the adoption of their proposals did any Samsung employee

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

notify 3GPP or ETSI that it had filed a Korean patent application on the subject matter of its

proposals.

**'604 Patent**

Inventor Chang-Soo Park attended TSG RAN WG1 Meeting #7.

Inventor Hyeon-Woo Lee attended TSG RAN WG1 Meeting #7.

Ericsson submitted two proposals to the working group at TSG RAN WG1 Meeting #7.

(Ericsson proposals, "Text Proposal for 25.212 – TSGR1#7(99)d76, APLNDC-WH-A

0000011302 --011307; "Transport Block Concatenation and Code Block Segmentation" –

TSGR1#7(99)b32, APLNDC-WH-A 0000010046 - 0063).  Inventor Hyeon-Woo Lee testified

that be believes that those proposals embody the invention in the '604 Patent.  (Deposition

testimony in this matter from Hyeon-Woo Lee, pp. 11-18.)  Working Group 1 adopted those

proposals at the same meeting for inclusion in TS 25.212.  (Revised Minutes for 3GPP RAN-

TSG 7th WG1 Meeting, TSGR1#8(99)g43, APLNDC-WH-A 0000010064 – 0085).

Samsung's delegates at various times corresponded communicated with 3GPP delegates

either in person, via e-mail, or via phone in order to promote the speedy adoption of their

technology by working group 1.  At no time prior to the adoption of their proposals did any

Samsung employee notify 3GPP or ETSI that it had filed a Korean patent application on the

subject matter of Ericsson's proposals.

**'941 Patent**

Inventors Himke van der Velde and Gert-Jan van Lieshout attended TSG RAN WG2

Meetings #43, 44, 45, 45bis, 46bis and 47.

Inventor Soenghun Kim attended TSG RAN WG2 Meeting #43, 44, 45, 45bis and 46bis.

Samsung presented two proposals at TSG RAN WG2 Meeting #47.  (Samsung proposals

"Segmentation and Concatenation for VoIMS" – R2-051311, APLNDC-WH-A 0000009186 --

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

9190; "RLC LI Optimization for VoIP – 25.322 CR 0280" – R2-051680, APLNDC-WH-A 0000009301 -- 9309). Samsung also circulated the proposal for email agreement following Meeting #47. (Approved Minutes of the 47 TSG-RAN WG2 Meeting, R2-052063, APLNDC-WH-A 0000008857 – 8935).

Samsung's delegates at various times communicated with 3GPP delegates either in person, via e-mail, or via phone in order to promote the speedy adoption of their technology by working group 1. At no time prior to the adoption of their proposals did any Samsung employee notify 3GPP or ETSI that it had filed a Korean patent application on the subject matter of its proposals.

**'792 Patent**

Inventor Hunkee Kim attended the TSG RAN WG1/WG2 meeting on HSDPA, and TSG RAN WG1 Meeting #21, 22, 23 and 24. Mr. Kim presented a proposal at the joint WG1/WG2 meeting. (Samsung proposal "Enhanced Symbol Mapping Method for the modulation of Turbo-coded bits based on bit priority" – 12A010044, APLNDC-WH-A 0000011411 -- 11416). Mr. Kim also contributed to a reflector email chain regarding a competing Nokia proposal, in which he advocated for the Samsung solution presented at that WG1/WG2 joint meeting. (Email from Hunkee Kim to 3GPP_TSG_RAN_WG1@list.etsi.org, dated February 16, 2002, APLNDCA000011476).

Inventor Ginkyu Choi attended the TSG RAN WG1/WG2 meeting on HSDPA, and TSG RAN WG1 Meeting #21, 22 and 24.

Inventor Yong Suk Moon attended the TSG RAN WG1/WG2 meeting on HSDPA and TSG RAN WG1 Meeting #21, 22 and 23.

During the Twenty-Fourth Meeting of Working Group 1, several proposals were consolidated into a final joint proposal by Samsung, Siemens, and Motorola. (Revised minutes of TSG RAN WG1 #24 Meeting – TSGR1-02-0628, APLNDC-WH-A 0000011943 – 11987; Siemens, Motorola and Samsung joint proposal, "Text Proposal for Bit Distribution unit for HS-

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

DSCH" – R1-02-0444,  APLNDCA-WH-A 0000011834 – 1838).  Working Group 1 approved that proposal for inclusion in TS 25.212.

Samsung's delegates at various times communicated with 3GPP delegates either in person, via e-mail, or via phone in order to promote the speedy adoption of their technology by working group 1.  At no time prior to the adoption of their proposals did any Samsung employee notify 3GPP or ETSI that it had filed a Korean patent application on the subject matter of its proposals.

**'516 Patent**

Inventor Juho Lee attended TSG RAN WG1 Meeting #38, 39, 40, 40bis, and 41.  During those meetings and via email to the WG1 reflector during the same time period, Dr. Lee submitted and presented numerous Samsung proposals.  (Email and attachment from Juho Lee to 3GPP_TSG_RAN_WG1@list.etsi.org, dated August 12, 2004; APLNDC-WH-A 0000010791 – 10793; APLNDC-WH-A 0000010862 – 10863; Email and attachment from Juho Lee to 3GPP_TSG_RAN_WG1@list.etsi.org, dated August 12, 2004, APLNDC-WH-A 0000010793; APLNDC-WH-A 0000010864—010866; Email from Juho Lee to 3GPP_TSG_RAN_WG1@list.etsi.org, dated May 2, 2005, APLNDC-WH-A 0000010855 – 10856).  In particular, at Meeting #40bis, Dr. Lee presented Samsung proposal R1-050310, (Approved Report of 3GPP TSG RAN WG1 #40bis in Beijing – R1-050574, APLNDC-WH-A 0000011085 – 11138) and at Meeting #41 Dr. Lee presented two joint proposal on behalf of Samsung and other companies, R1-050519 and R1-050565.  (Approved Report of 3GPP TSG RAN WG1 #41 in Athens – R1-050995, APLNDC-WH-A 0000011139 – 11202).

Inventor Youn-Hyoung Heo attended TSG RAN WG1 Meeting #38, 39, 40, and 41.  During meeting 40, Ms. Heo presented Samsung proposal R1-050061 to WG1.

Inventor Joon-Young Cho attended TSG RAN WG1 Meeting #39, 40bis and 41.

Inventor Youngbum Kim attended TSG RAN WG1 Meeting #39, 40, 40bis, and 41.

Inventor Yong-Jun Kwak attended TSG RAN WG1 Meeting #38, 40, 40bis, and 41.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Through email correspondence following 3GPP TSG RAN WG1 Meeting #41, the working group adopted Samsung's joint proposal that had been presented by Juho Lee.

Samsung's delegates at various times communicated with 3GPP delegates either in person, via e-mail, or via phone in order to promote the speedy adoption of their technology by working group 1.  At no time prior to the adoption of their proposals did any Samsung employee notify 3GPP or ETSI that it had filed a Korean patent application on the subject matter of its proposals.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 40:**

For each APPLE ACCUSED PRODUCT, IDENTIFY whether APPLE contends that product complies with any ETSI or 3GPP Standard or Technical Specification, and if so, IDENTIFY the standard or technical specification and when the product first complied with that standard or technical specification, including all supporting facts and documentation.  If YOU contend that an APPLE ACCUSED PRODUCT does not comply with any ETSI or 3GPP Standard or Technical Specification, YOU should so state.

**RESPONSE TO INTERROGATORY NO. 40**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "any ETSI or 3GPP Standard or Technical Specification," and "all supporting facts and documentation" and to the extent it relates to technologies or functionality not at issue in this matter.  Apple further objects to this Interrogatory to the extent it is not limited in temporal scope.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential,

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

proprietary, or trade secret information of third parties.  Apple also objects to this Interrogatory because it contains multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds that in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the following documents from which information responsive to this Interrogatory may be ascertained:

APL7940001420081–APL7940001421202

APL7940011143149–APL7940011143627

Further responding, Apple incorporates by references its Responses to Requests for Admission Nos. 12–15, 17–20, 22–25, 27–30, and 32–35 served on October 26, 2011.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 41:**

Separately for each of the APPLE ACCUSED PRODUCTS, describe all actions, if any, taken by APPLE before offering those products for sale to obtain a license for any IPRs declared to be ESSENTIAL to ETSI UMTS standards or technical proposals, including, without limitation, patents and patent applications owned by SAMSUNG, Ericsson, Nokia, Motorola, and others. To the extent APPLE did not attempt to a obtain a license to IPR declared to be ESSENTIAL to an ETSI UMTS standard or technical specification before offering an APPLE ACCUSED PRODUCT for sale, YOU should so state and provide an explanation, if one exists, for APPLE'S failure to do so.

**RESPONSE TO INTERROGATORY NO. 41**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all actions," it is overly broad and unduly burdensome.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Prior to offering the APPLE ACCUSED PRODUCTS for sale, Apple contends that it did not need to take any action to "obtain a license" for IPRs declared to be essential to ETSI UMTS standards because, by implementing the UMTS standard, Apple was already licensed to such IPRs under governing French law.  Specifically, Apple contends that each company that declared its IPR to be essential to the ETSI UMTS standard committed to irrevocably license implementers of the standard on FRAND terms, and Apple accepted licenses on such terms from each holder of essential patents by implementing the standard, with negotiations over the outstanding terms of those licenses to follow.

Apple did engage in discussions with certain companies to finalize the terms of those FRAND licenses prior to its launch of its first UMTS-compliant device.  These companies included InterDigital, Ericsson, Qualcomm, Siemens, Motorola, and Nokia.  It would, of course, have been impossible to negotiate with all of the numerous entities that claim to hold patents essential to UMTS while still bringing a product to market in a reasonable time, and such an approach is not required given the commitments those patent-holders made to license those patents on FRAND terms in accordance with Clause 6.1 of the ETSI IPR Policy and the fact that, on implementation of the UMTS standard, a license agreement is formed with a patent-holder that has made such a commitment.

Subsequent to its introduction of certain UMTS-compliant products, but before the introduction of others, Apple has formalized the terms of its license agreements with various holders of declared essential IPR in written agreements.  In addition, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and states that the burden of ascertaining the answer to this Interrogatory from

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

the produced business records is substantially the same for Apple as for Samsung.  Apple further

designates, at this time, the following documents from which information responsive to this

Interrogatory may be ascertained:

| Counterparty | Date | Beginning Bates |
|---|---|---|
| Ericsson | January 14, 2008 | APLNDC0001247678 |
| ETRI (Electronics & Telecommunications Research Institute) | December 31, 2009 | APLNDC-WH0000455003 |
| InterDigital Group | June 29, 2007 | APL-ITC796-0000334590 |
| Siemens | October 2, 2008 | APLNDC-WH0000454913 |
| SPH America, LLC | December 31, 2009 | APLNDC-WH0000454935 |
| SPH America, LLC | December 31, 2009 | APLNDC-WH0000454951 |
| SPH America, LLC | December 31, 2009 | APLNDC-WH0000454988 |
| SPH America, LLC and its President, Dr. Choongsoo Park | December 31, 2009 | APLNDC-WH0000454843 |
| Nokia | June 12, 2011 | APLNDC0000038188 |
| MSTG | October, 2009 | APLNDC-WH0000454970 |
| Philips | October 1, 2010 | APL7940018564430 |
| Philips/Sharp | October 1, 2010 | APL7940018564474 |

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 42:**

To the extent APPLE contends it is presently licensed under one or more of the IPR

declared to be ESSENTIAL to any ETSI UMTS standard or technical specification, including any

of the asserted SAMSUNG PATENTS-IN-SUIT, state all terms and conditions of each such

license, and the bases therefor.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

## RESPONSE TO INTERROGATORY NO. 42

Apple objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Under applicable French law, Apple contends that it is presently licensed to each declared-essential IPR that is subject to a FRAND licensing commitment as a result of the commitments holders of those IPR made to ETSI to license their IPR on FRAND terms in accordance with Clause 6.1 of the ETSI IPR Policy, which licenses Apple has accepted by implementing the standard.  Under the terms of those licenses, Apple contends that it is entitled, for the life of each of the covered patents and for the geography to which it pertains, including for all patents (in any jurisdiction) having at least one priority in common with the IPR explicitly referenced in the relevant licensing commitment, to:

- MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
- sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;
- repair, use, or operate EQUIPMENT; and
- use METHODS.

*See* 2011 ETSI IPR Policy Clauses 6.1, 6.2, 15(13).  Apple is obligated to pay the IPR holders FRAND royalties to the extent that the declared-essential patents are in fact essential, valid, and enforceable and to the extent Apple is not otherwise authorized to practice the patents (e.g., as a result of license agreements between declared-essential patent holders and suppliers of baseband chipsets that Apple incorporates in its products).  If Apple and the declared-essential IPR holder are unable to agree on FRAND license terms, such dispute is subject to judicial resolution.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Apple incorporates its response to Interrogatory 41 as though fully set forth herein.  In addition, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and states that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the following documents from which information responsive to this Interrogatory may be ascertained:

| Counterparty | Date | Beginning Bates |
|---|---|---|
| Ericsson | June 3, 2003 | APLNDC-WH0000655159 |
| Ericsson | January 14, 2008 | APLNDC-WH0000655184 |
| ETRI (Electronics & Telecommunications Research Institute) | December 31, 2009 | APLNDC-WH0000455003 |
| InterDigital Group | June 29, 2007 | APL-ITC796-0000334590 |
| MSTG | October, 2009 | APLNDC-WH0000454970 |
| Nokia | June 12, 2011 | APLNDC0000038188 |
| Phillips | October 1, 2010 | APL7940018564430 |
| Phillips/Sharp | October 1, 2010 | APL7940018564474 |
| Siemens | October 2, 2008 | APLNDC-WH0000454913 |
| SPH America, LLC | December 31, 2009 | APLNDC-WH0000454935 |
| SPH America, LLC | December 31, 2009 | APLNDC-WH0000454951 |
| SPH America, LLC | December 31, 2009 | APLNDC-WH0000454988 |
| SPH America, LLC and its President, Dr. Choongsoo Park | December 31, 2009 | APLNDC-WH0000454843 |
| VoiceAge | June 3, 2003 | Apple has not yet obtained consent to disclose this document, but will produce it upon receipt of consent. |

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 43:**

Describe APPLE'S involvement in ETSI, particularly with respect to UMTS standardization, including an identification of when APPLE joined ETSI, any lapses in APPLE'S

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

membership in ETSI, the identities of any APPLE personnel or others who have been involved in ETSI standardization on behalf of APPLE, and any proposals or other technical contributions made by APPLE to ETSI standardization.

**RESPONSE TO INTERROGATORY NO. 43**

Apple objects to this Interrogatory on the grounds that it is overly broad, vague, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to the Interrogatory to the extent it seeks information about activities unrelated to UMTS and to the extent it seeks information for time periods not relevant to this litigation. Apple objects to this interrogatory as duplicative of Interrogatory No. 63. Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple Inc.'s, subsidiary, Apple U.K., joined ETSI on November 20, 2001 and has been a member at all times since. Apple Inc. is a MEMBER of ETSI, as that term is defined under Clause 15(9) in the ETSI IPR POLICY, because Apple Inc. is an AFFILIATE of Apple UK, which is a member of ETSI, as defined by Article 1 of the ETSI Rules of Procedure. In April 2011, Apple U.K. upgraded its membership in ETSI to a "Full Member."

Apple hereby incorporates by reference its response to Interrogatory 63 as if fully set forth herein.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 44:**

For each INTEL BASEBAND PROCESSOR, IDENTIFY all steps taken by APPLE or on its behalf to determine whether the BASEBAND PROCESSOR comprises one or more integrated circuits that can interface with a SAMSUNG processor (e.g., the SAMSUNG processor in the iPhone 3GS) through a SAMSUNG processor bus, as those terms are defined in

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

the SAMSUNG/INTEL AGREEMENT, including identification of any related facts or DOCUMENTS related to APPLE'S opinion and/or analysis.

## RESPONSE TO INTERROGATORY NO. 44

Apple objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.  Apple further objects to this Interrogatory to the extent it is not limited in temporal scope.  Apple further objects to the terms "steps," "comprises," "interface" as vague and ambiguous and failing to identify with sufficient particularity the information sought.  Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade secret information of third parties.  Apple further objects to this interrogatory as premature in advance of expert discovery, and to the extent it calls for legal conclusions.  Apple further objects to this Interrogatory as seeking information protected from discovery by the attorney client privilege and attorney work product doctrine.

Subject to and without waiving its objections, and based on investigation to date, Apple states that it has not conducted tests to investigate whether the baseband processors incorporated in the accused Apple products comprise one or more integrated circuits that can interface with a "Samsung processor" through a "Samsung processor bus."

Apple reserves the right to supplement and/or amend its response as appropriate, including as expert discovery proceeds.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**INTERROGATORY NO. 45:**

State YOUR contention (including identification of all supporting facts and any related DOCUMENTS) concerning the proper methodology for determining which patents or patent applications are, or are likely to become, ESSENTIAL IPRs in relation to an ETSI STANDARD.

**RESPONSE TO INTERROGATORY NO. 45**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all supporting facts and any related documents," it is overly broad and unduly burdensome. Apple further objects to this Interrogatory as premature in advance of expert discovery. Apple further objects to this Interrogatory as vague and ambiguous, especially in its use of the term "the proper methodology." Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

The proper methodology for determining which patents or patent applications are, or are likely to become, ESSENTIAL IPRs in relation to an ETSI STANDARD depends on the facts and circumstances relevant to a given patent. In all cases, the ETSI IPR Policy requires that the patent-holder use its "reasonable endeavours" to make such determination, although there is no duty to search one's IPR portfolio for potentially essential IPR. *See* ETSI IPR Policy Clause 4.1. When an ETSI member proposes a technical solution to a working group, that company is further obligated "on a bona fide basis" to disclose to ETSI any IPR that "might be essential if that proposal is adopted." 2011 ETSI IPR Policy Clause 4.1. Thus, the methodology appropriate for assessing essentiality when an ETSI member proposes a technical solution must take into account the particular disclosure obligations that apply in that circumstance.

In all events, when an ETSI member, through participation by an employee or other representative in a standard-setting process or otherwise, has actual knowledge that IPR held by

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

that member may be essential to a technical proposal under consideration, that member is obligated under IPR Policy Clause 4.1 to disclose that IPR before the standard is established. That is all the more true when the ETSI member, through any employee or representative participating in ETSI proceedings, or otherwise, is aware that the IPR may be essential to a technical solution that the ETSI member has proposed.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 46:**

IDENTIFY all patents for which APPLE has both (i) sought an injunction to prevent alleged infringement (including identification of each such lawsuit in which APPLE has sought such an injunction, the date such lawsuit was filed, the opposing party, and the patent or patents at issue), and (ii) agreed to a license to any party (including identification of each such licensed party, the date of such license, the terms of such license, and the patent or patents subject to such license).

**RESPONSE TO INTERROGATORY NO. 46**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all patents," and "each such lawsuit" and to the extent it relates to technologies or functionality not at issue and not essential to the UMTS standard. Apple further objects to this Interrogatory to the extent it is not limited in temporal scope. Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, or otherwise seeks confidential, proprietary, or trade secret information of third parties. Apple objects to this Interrogatory insofar as it requests information that is a matter of public record and the burden of ascertaining that public information is the same on either party. Apple further objects because this interrogatory contains multiple, discrete interrogatories.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple has never sought an injunction based on infringement of a patent declared essential to UMTS.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 47:**

IDENTIFY all patents for which APPLE has both (i) sought an injunction to prevent alleged infringement (including identification of each such lawsuit in which APPLE has sought such an injunction, the date such lawsuit was filed, the opposing party, and the patent or patents at issue), and (ii) disclosed as ESSENTIAL or likely to become ESSENTIAL to ETSI or any other standard-setting organization (including identification of each such disclosure, the date of such disclosure, the standard-setting organization in question, and the patent or patents disclosed) and whether APPLE committed to license those patents on fair, reasonable, and non-discriminatory ("FRAND") terms.

**RESPONSE TO INTERROGATORY NO. 47**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all patents," and "each such lawsuit" and to the extent it relates to technologies or functionality not at issue. Apple further objects to this Interrogatory to the extent it is not limited in temporal scope. Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, or otherwise seeks confidential, proprietary, or trade secret information of third parties. Apple objects to this Interrogatory insofar as it requests information that is a matter of public record and the burden of ascertaining that public information is the

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

same on either party.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple has never sought an injunction based on infringement of a patent declared essential to UMTS.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 48:**

IDENTIFY all patents that APPLE is aware of that both (i) have been disclosed by any party as ESSENTIAL or likely to become ESSENTIAL to an ETSI STANDARD (including identification of the patent number(s), the owner(s) of such patents, the date of such disclosure, and the ETSI STANDARD for which such patents were disclosed); and (ii) have been the basis for any request for an injunction by the owner or licensee of such patent(s) (including identification of each such lawsuit in which such an injunction was sought, the date such lawsuit was filed, the party seeking the injunction, and the patent or patents at issue).

**RESPONSE TO INTERROGATORY NO. 48**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because to the extent it relates to technologies or functionality not at issue.  Apple further objects to this Interrogatory to the extent it is not limited in temporal scope.  Apple objects to this Interrogatory insofar as it requests information that is a matter of public record and the burden of ascertaining that public information is the same on either party.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

The following matters involved parties seeking injunctive relief against Apple based on Apple's alleged infringement of declared essential patents.  The additional information requested is a matter of public record and the burden of ascertaining that public information is the same on either party.

*Nokia Corp. v. Apple Inc.*, No. 09-cv-00791 (D. Del. 2009)

*Apple Inc. v. Motorola Inc.*,  No. 11-cv-08540 (N.D. Ill.) (formerly No. 10-cv-00661-slc (W.D. Wisc.)

*In the Matter of Certain Wireless Communication Devises, Portable Music and Data Processing Devices, Computers and Components Thereof*, Inv. No. 337-TA-745 (ITC)

*Motorola v. Apple Sales International*, Mannheim Regional Court (case numbers 7 O 122/11; 7 O 230/11); Karlsruhe Higher Regional Court (case no. 6 U 136/11, an appeal from 7 O 122/11)

*Motorola v. Apple Inc.*, Mannheim Regional Court (case numbers 7 O 169/11; 7 O 443/11)

*Motorola v. Apple Retail Germany GmbH*, Düsseldorf Regional Court (case numbers 4a O 69/11; 4a O 117/11)

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 49:**

IDENTIFY all royalties that APPLE pays to any party for patents that have been disclosed as ESSENTIAL or likely to become ESSENTIAL to the ETSI UMTS standard (including identification of the party to whom APPLE pays such royalties, the products on which APPLE pays such royalties, the amount of such royalties, and the royalty rate).

**RESPONSE TO INTERROGATORY NO. 49**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

relating to "all royalties," and "any party" and to the extent it relates to technologies or functionality not at issue.  Apple further objects to this Interrogatory to the extent it is not limited in temporal scope.  Apple further objects to this Interrogatory to the extent it seeks confidential, proprietary, or trade secret information of third parties and to the extent that it seeks documents that Apple is contractually obligated not to disclose.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple incorporates by reference its response to Interrogatory Nos. 41 and 42, as if set forth fully therein.  In addition, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and states that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the following documents from which information responsive to this Interrogatory may be ascertained:

| Counterparty | Date | Beginning Bates |
|--------------|------|-----------------|
| VoiceAge | June 3, 2003 | Apple has not yet obtained consent to disclose this document, but will produce it upon receipt of consent. |
| Nokia | June 12, 2011 | APLNDC0000038188 |
| Ericsson | January 14, 2008 | APLNDC0001247678 |

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 50:**

To the extent that YOU contend that failure to timely inform ETSI of an ESSENTIAL IPR as provided in Section 4.1 of the ETSI IPR Policy makes such ESSENTIAL IPR unenforceable against implementers of the ETSI STANDARD, state in detail the basis for that contention including identification of all provisions of the ETSI IPR Policy that YOU contend support that contention.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**RESPONSE TO INTERROGATORY NO. 50**

Apple objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple contends that failure to timely inform ETSI of an ESSENTIAL IPR as provided in Section 4.1 of the ETSI IPR Policy makes such ESSENTIAL IPR unenforceable against implementers of the ETSI STANDARD under the doctrines of implied waiver and estoppel.  The ETSI IPR Policy requires members to use "reasonable endeavours" to "timely" disclose IPRs to ETSI.  ETSI IPR Policy Clause 4.1.  An IPR holder that has actual knowledge that its IPR is or may become essential to the UMTS standard but fails to disclose that IPR to ETSI until after the standard has been frozen has impliedly waived its rights to enforce that IPR against implementers of the standard.  That is all the more the case when that member has proposed a technical solution and intentionally fails to disclose, until after the freeze date, IPR that it claims covers that technical solution.  Legal support for Apple's position includes *Qualcomm Inc. v. Broadcom Corp.*, 548 F. 3d 1004, 1026 (Fed. Cir. 2008) (holding that "a district court may in appropriate circumstances order patents unenforceable as a result of silence in the face of an SSO disclosure duty" with respect to implementers of the relevant standard).

In addition, Apple incorporates by reference its response to Interrogatory 39 as if set forth fully herein.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 51:**

To the extent that YOU contend that giving a FRAND undertaking with respect to a patent, as provided in Section 6.1 of the ETSI IPR Policy, forecloses the patent owner from seeking an injunction with respect to that patent, state in detail the basis for that contention

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

including identification of all provisions of the ETSI IPR Policy or other ETSI DOCUMENTS

that YOU contend support that contention.

**RESPONSE TO INTERROGATORY NO. 51**

Apple objects to this Interrogatory to the extent it seeks information protected from

disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or

immunity against disclosure.  Apple further objects to this Interrogatory as premature in advance

of expert discovery.

Subject to and without waiving the foregoing specific objections and General Statement

and Objections, Apple responds as follows:

Apple contends that an ETSI member that gives a FRAND undertaking with respect to a

patent, as provided in Section 6.1 of the ETSI IPR Policy, forfeits any right it might otherwise

have had to seek an injunction against a party implementing the standard for which the ETSI

member making the FRAND undertaking claims its patent is essential.  The ETSI IPR Policy

provides that an ETSI member's FRAND commitment is an "irrevocable undertaking in writing

that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms

and conditions under such IPR."  2011 ETSI IPR Policy Clause 6.1.  Apple contends that, under

governing French law, a FRAND commitment constitutes a binding offer of a FRAND license to

the IPR encompassed by that FRAND commitment.  Apple further contends that this offer is

accepted and a binding license is formed when another company begins to implement the

relevant standard.  Accordingly, because the standard implementer is presently licensed, the

FRAND declarant *ipso facto* cannot obtain an injunction.

Moreover, even if one were to assume (erroneously) that the standard implementer were

not presently licensed, the making of an irrevocable FRAND commitment under Clause 6.1

constitutes, at the very least, a commitment to negotiate a FRAND license in good faith.  Apple

contends that, under governing French law, seeking an injunction to prevent the implementer

from practicing the standard is a breach of that commitment.  In other litigations, Samsung has

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

acknowledged that membership in ETSI creates an "actual or implied contract to comply with ETSI's governing documents, including, but not limited to, ETSI's Intellectual Property Rights Policy." (First Amended Complaint at 8, *Samsung Elec. Co. v. InterDigital Commc'ns Corp.*, No. 07-0167 (D. Del. Sept. 14, 2007).)  The contractual commitments are made to ETSI and its members (like Apple), and are part of the qui pro quo for the standard-setting organization agreeing to consider standardizing technologies that may be covered by the FRAND declarant's technology.  Under French law, those obligations, once made, prevent a party from later seeking to prevent a beneficiary of its commitment from selling products that practice its IPR.  Any attempt to obtain an injunction is contrary to Samsung's FRAND commitments as defined by the ETSI IPR Policy and antithetical to the purposes behind that policy.  The ETSI IPR Policy is focused on ensuring that patentees do not make essential IPR "unavailable" to implementers of the standard.  (ETSI IPR Policy Clause 3.1.)  Samsung has acknowledged this in prior litigation, contending that a party's "enforcement of its intellectual property rights . . . (in seeking injunctive relief. . .) and/or its refusal to grant a license to the Defendants on fair, reasonable and non-discriminatory terms is in breach of the contract which exists between" parties with "common membership of ETSI." ([Samsung's Re- Amended Defence and Counterclaim of March 15, 2007, *Telefonaktiebolaget LM Ericsson v. Samsung Electronics UK Limited*, U.K. High Court of Justice, Chancery Division, HC06 C00618 at ¶1A.)

Finally, under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), a patentee must satisfy the four-part equitable standard for an injunction.  An ETSI member that has irrevocably offered to license all implementers of an ETSI standard on FRAND terms cannot show at least two of the injunction factors—irreparable injury and that monetary damages are insufficient to remedy any injury from an infringement.  Having promised that any company implementing the ETSI standard can practice its declared-essential patents, the FRAND declarant cannot show that it would be irreparably harmed by any standard implementer doing so.  Moreover, by agreeing to accept FRAND royalties—i.e., money—in return for the right to

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

practice its patents, a FRAND declarant necessarily acknowledges that money would be an adequate remedy for any use of its IPR.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 52:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, IDENTIFY whether it operates in accordance with the WCDMA, CDMA2000, CDMA EV-DO Rev. A, GSM, EDGE, UMTS, HSUPA, HSDPA, 3GPP Release 5, 3GPP Release 6, 3GPP Release 7, USB 2.0, or SPI standards and all documentation including certifications of compliance, reflecting its operation and/or compliance with any of these standards.

**RESPONSE TO INTERROGATORY NO. 52**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all documentation" and to the extent it relates to technologies or functionality not at issue in this matter.  Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade secret information of third parties.  Apple also objects to this Interrogatory because it contains multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds that in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the following documents from which information responsive to this Interrogatory may be ascertained:

APL7940001420081–APL7940001421202

APL7940011143149–APL7940011143627

Further responding, Apple incorporates by references its Responses to Requests for Admission Nos. 12–15, 17–20, 22–25, 27–30, and 32–35 served on October 26, 2011.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 53:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, IDENTIFY the designs, schematics, technical drawings, register programming manuals, specifications and/or working drawings used for its manufacture, and for each design, schematic, technical drawing, register programming manual, specification and/or working drawing, and IDENTIFY its origin and ownership.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**RESPONSE TO INTERROGATORY NO. 53**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation to the extent it relates to technologies or functionality not at issue in this matter.  Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade secret information of third parties.  Apple also objects to this Interrogatory because it contains multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:

Third parties design, manufacture, and sell the baseband processors used in the Accused Products, and therefore the documents that Apple possesses regarding the manufacture of the baseband processors are limited. Upon receipt of any necessary third party consents, Apple has produced or will produce responsive, non-privileged documents that are relevant to the accused functionality to the extent that they are in Apple's possession and can be located after a reasonable search.  In accordance with Federal Rule of Civil Procedure 33(d), the burden of ascertaining the answer to this Interrogatory from these produced business records is substantially the same for Apple as for Samsung.

Apple reserves the right to supplement and/or amend its response as appropriate.

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

**INTERROGATORY NO. 54:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, IDENTIFY any involvement in the development and specification design of the BASEBAND PROCESSOR by APPLE or APPLE MANUFACTURERS, including any joint development or contribution.

**RESPONSE TO INTERROGATORY NO. 54**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation to the extent it relates to technologies or functionality not at issue in this matter.  Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade secret information of third parties.  Apple also objects to this Interrogatory because it contains multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Intel (through its wholly-owned subsidiary, Intel Americas, Inc.) supplies the baseband processors that are incorporated in the Accused Products. Prior to Intel's acquisition of Infineon's Wireless Business Division, Infineon supplied baseband processors to Apple for incorporation into certain of the Accused Products.

Apple further responds that in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung. Apple further designates, at this time, the following documents from which information responsive to this Interrogatory may be ascertained:

APL7940001420032–APL7940001420080

APL7940001422999–APL7940001425767

APL7940011889416–APL7940011890041

APL794-F0000000637–APL794-F0000008197

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 55:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, describe the chain of possession, custody, or commerce of the BASEBAND PROCESSOR from manufacture to integration into an APPLE ACCUSED PRODUCT by identifying each entity involved in the chain of possession, custody, or commerce (including, but not limited to, IAI, IMC, INTEL, INFINEON and/or QUALCOMM); the entity's

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

role; the entity's relationship with the other identified entities; all related sales information, contracts, licenses, agreements or informal understandings between the entity and the other identified entities concerning the design, manufacture, testing, assembly, sale and chain of distribution of BASEBAND PROCESSORS to APPLE or APPLE MANUFACTURERS; and any changes in the design, manufacture, sale or distribution of BASEBAND PROCESSORS that occurred after September 1, 2010.

**RESPONSE TO INTERROGATORY NO. 55**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "all documentation" and to the extent it relates to technologies or functionality not at issue in this matter. Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011. Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade secret information of third parties. Apple also objects to this Interrogatory because it contains multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:

Intel Corporation ("Intel") indirectly sells Apple the PMB 8878 and PMB 9801 modem chipsets, which Apple incorporates in certain of its products. Intel sells these chipsets to Apple through Intel Americas, Inc. ("Intel Americas"), a wholly-owned subsidiary of Intel. Intel Americas invoices Apple at Apple's office in Cupertino, California, and Apple remits payments

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

to Intel Americas at its Santa Clara, California, office.  Based on Apple's direction, delivery of the goods is to Apple's assembler in Asia.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 56:**

For each BASEBAND PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879; Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G; Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS, IDENTIFY whether any transfer of possession, transfer of custody, delivery, integration into an ACCUSED PRODUCT, or sale of the BASEBAND PROCESSORS takes place in the United States, including the entities involved and the terms of such transfer, delivery, integration or sale in the United States.

**RESPONSE TO INTERROGATORY NO. 56**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including to the extent it relates to technologies or functionality not at issue in this matter.  Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

secret information of third parties.  Apple also objects to this Interrogatory because it contains

multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing General and Specific Objections, Apple

responds as follows:

Apple contends that the sales by Intel of the PMB 8878 and PMB 9801 baseband

processor chips used in the accused products to Apple took place in the United States.  Since its

acquisition of Infineon's Wireless Business Division, Intel has sold the PMB 8878 and PMB

9801 chipsets to Apple, through Intel's wholly-owned sales subsidiary Intel Americas Inc.  Intel

Americas invoices Apple at Apple's office Cupertino, California, and Apple remits payments to

Intel Americas at its Santa Clara, California, office.  Based on Apple's direction, delivery of the

goods is to Apple assemblers in Asia.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 57:**

Describe every test procedure performed by or on behalf of APPLE for each BASEBAND

PROCESSOR provided for use in or otherwise known by YOU to be used in an APPLE

ACCUSED PRODUCT including, without limitation, the Qualcomm MDM6610, Qualcomm

MDM6600, Infineon BGA736; Infineon PMB 8876; Infineon PMB 8878; Infineon PMB 8879;

Infineon PMB 9801; Infineon PMB 5703 SMARTi UE; Infineon PMB 5701 SMARTi 3G;

Infineon X-GOLD 608; Infineon X-GOLD 616; Infineon X-GOLD 618 and any other baseband

or RF transceiver component sold to or purchased by APPLE or APPLE MANUFACTURERS,

including an identification of the type of test(s), processors and/or chipsets paired with the

BASEBAND PROCESSOR, SOFTWARE used in the testing, the procedure followed for the

testing, and the geographic location of the testing.

**RESPONSE TO INTERROGATORY NO. 57**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

the discovery of admissible evidence, including without limitation because it seeks information relating to "every test procedure" and to the extent it relates to technologies or functionality not at issue in this matter.  Apple further objects to this interrogatory as overly broad and unduly burdensome to the extent it purports to include any baseband chip or other component that is not incorporated in one of the Apple products identified in Samsung's Patent Local Rule 3-1 Infringement Contentions, served on September 7, 2011.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, is not within Apple's possession, custody, or control, or otherwise seeks confidential, proprietary, or trade secret information of third parties.

**INTERROGATORY NO. 58:**

From January 1, 2007, to the present, for each model and version of each of the APPLE ACCUSED PRODUCTS, including those identified in response to Interrogatory 19, IDENTIFY on a carrier-by-carrier basis, APPLE'S quarterly (calendar and fiscal) revenue derived from its share of mobile carrier revenue in the U.S. resulting from sales or distribution of the APPLE ACCUSED PRODUCTS, including the percentage of each carrier's total revenue that is paid to APPLE.

**RESPONSE TO INTERROGATORY NO. 58**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Apple also objects to this Interrogatory on the ground that the terms "model and version," "carrier," "share of mobile carrier revenue in the U.S.," and "sales are distribution" are vague and ambiguous.  Apple objects to this Interrogatory to the extent it seeks information outside Apple's possession, custody, or control, such as "the percentage of each carrier's total revenue that is paid to Apple."  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

disclosure agreement or governed by a protective order preventing its production, or otherwise

seeks confidential, proprietary, or trade secret information of third parties.

Subject to and without waiving the foregoing General and Specific Objections, Apple

responds that it does not track carrier revenue on a model-by model basis.  Apple further

responds that, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced

information regarding unit sales on a carrier-by-carrier basis by model and that the burden of

ascertaining the answer to this Interrogatory from the information produced is substantially the

same for Apple as for Samsung.  Such information is contained in the following documents:

APLNDC-Y0000055415

APLNDC-WH-A0000024846–APLNDC-WH-A0000024851.

**INTERROGATORY NO. 59:**

IDENTIFY and describe all communications that APPLE has had with or from

QUALCOMM, INFINEON, and/or INTEL and/or any of their subsidiaries (including IAI and/or

IMC) regarding THIS LAWSUIT, SAMSUNG'S patents, and/or contracts and licensing

agreements to which SAMSUNG is a party, including any similar communication to the April 19,

2011 letter from QUALCOMM to APPLE regarding the "most recent version" of its "Summary

of Third Party IP Rights Benefiting Customers of Qualcomm's MSMs and Software" (Exhibit B

to Professor Fried's November 13, 2011 Expert Report) and any communication which prompted

the letter.

**RESPONSE TO INTERROGATORY NO. 59**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to

the discovery of admissible evidence, including without limitation because it seeks information

relating to "all communication" and to the extent it relates to technologies or functionality not at

issue.  Apple further objects to this Interrogatory to the extent it seeks information that is subject

to a confidentiality or non-disclosure agreement or governed by a protective order preventing its

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

production, or otherwise seeks confidential, proprietary, or trade secret information of third parties.  Apple also objects to this Interrogatory to the extent it is duplicative of Interrogatory No. 26.  Apple further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest doctrine, or other applicable privilege or immunity against disclosure.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple has produced or will produce non-privileged responsive documents in its possession, custody, or control, if any, that can be located after a reasonably diligent search regarding Samsung's patents and/or contracts and licensing agreements to which Samsung is a party, including any communication similar to the letter dated April 19, 2011 from Qualcomm to Apple regarding the "most recent version" of its "Summary of Third Party IP Rights Benefiting Customers of Qualcomm's MSMs and Software" (Exhibit B to Professor Fried's November 13, 2011 Expert Report) and any communication which prompted the letter.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 60:**

IDENTIFY the licensing rates for any patent owned, whether directly or indirectly, by APPLE that APPLE believes, has declared, or has otherwise been deemed or declared, to be essential to the WCDMA standard.

**RESPONSE TO INTERROGATORY NO. 60**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "any patent owned, whether directly or indirectly" and to the extent it relates to technologies or functionality not at issue.  Apple further objects to this Interrogatory to the extent

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, or otherwise seeks confidential, proprietary, or trade secret information of third parties.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Until recently, Apple has not owned a large portfolio of patents essential to the UMTS standard.  Apple has recently acquired a number of essential patents as disclosed to ETSI in Apple's declaration and licensing statement dated November 11, 2011.  Apple has produced relevant licenses identified to date as described in its responses to Interrogatories No. 41, 42 and 49, and Apple incorporates its responses to those interrogatories as if set forth fully herein.

In addition, in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and states that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the following document from which information responsive to this Interrogatory may be ascertained: APL794-N0000006310 -- APL794-N0000006338.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 61:**

IDENTIFY by licensor, licensee, effective date, consideration, royalty rate, royalty base, milestone payments (or other one-time or periodic payments) each agreement (e.g., license, settlement, covenant not to sue) that YOU contend is comparable to any hypothetical license that would be evaluated (for patents, under the *Georgia Pacific* factors) in determining a reasonable royalty.

**RESPONSE TO INTERROGATORY NO. 61**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

the discovery of admissible evidence, including but not limited to the extent to which it relates to technologies or functionality not at issue in the Lawsuit.  Apple objects to this Interrogatory to the extent it seeks information that: (i) is subject to a confidentiality or nondisclosure agreement or governed by a protective order preventing its production; or (ii) is outside of Apple's possession, custody, or control.

Apple further objects to this interrogatory to the extent it prematurely calls for Apple's position regarding comparable licenses before sufficient discovery has been conducted and to the extent it prematurely calls for expert testimony or opinions at this stage of litigation.  Apple will provide such contentions in accordance with the Court's Minute Order and Case Management Order, dated August 25, 2011.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows: Apple's positions regarding comparable licenses will be detailed in its expert report that will be served in accordance with the Court's August 25, 2011 Order.  As discovery is ongoing, including expert discovery, Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 62:**

On a patent-by-patent basis, IDENTIFY the date (or dates) that YOU contend would form the date for the hypothetical negotiation contemplated by *Georgia Pacific* in determining a reasonable royalty for each patent asserted by the parties.

**RESPONSE TO INTERROGATORY NO. 62**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Apple further objects to this Interrogatory to the extent that it seeks to elicit information subject to and protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity.  Apple also objects to this Interrogatory to the extent it prematurely calls for Apple's position regarding the

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

hypothetical negotiation.  Apple further objects to this Interrogatory to the extent it prematurely calls for expert testimony or opinions at this stage of the litigation.  Apple will provide such positions in accordance with the Court's Minute Order and Case Management Order, dated August 25, 2011.

Subject to and without waiving the foregoing General and Specific Objections,  Apple responds as follows: Apple's contentions regarding the hypothetical negotiation will be detailed in its expert report that will be served in accordance with the Court's August 25, 2011 Order.  As discovery is ongoing, including expert discovery, Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 63:**

IDENTIFY all ETSI or 3GPP working groups related to UMTS or an INPUT TECHNOLOGY in which APPLE has participated, the APPLE representatives that participated in any ETSI meeting RELATING to UMTS or an INPUT TECHNOLOGY, the meetings in which each APPLE representative participated, and any comments, DOCUMENTS, or proposals made or submitted by the APPLE representative at that meeting.

**RESPONSE TO INTERROGATORY NO. 63**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Apple further objects to this interrogatory on the ground that the term "comments" is vague and ambiguous and fails to indentify with sufficient particularity the information sought.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

Apple employees have attended meetings of Working Groups 3GPP TSG-SA 4, 3GPP RAN 4 and 3GPP RAN 2 in person.  Since 2001, David Singer attended various 3GPP TSG-

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

SA 4 meetings on behalf of Apple.  After becoming an Apple employee in late 2011, Dawei

Zhang attended various 3GPP RAN 4 on behalf of Apple.  Within the last year, after becoming

an Apple employee, Sassan Ahmadi has attended various 3GPP RAN 2 meetings on behalf of

Apple.  Xiangying Yang also attended a meeting of 3GPP RAN 2 in November 2011 on behalf

of Apple.  The particular meetings Singer, Zhang, Ahmadi, and Yang attended are recorded in

the minutes of 3GPP as are any documents or proposals Apple submitted.  Apple employees also

may have participated in portions of 3GPP meetings by telephone.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 64:**

For each SAMSUNG PATENT-IN-SUIT, IDENTIFY when APPLE became aware that

the SAMSUNG PATENT-IN-SUIT was ESSENTIAL IPR, declared ESSENTIAL IPR, or that

SAMSUNG owed an alleged licensing commitment to ETSI regarding a SAMSUNG PATENT-

IN-SUIT.

**RESPONSE TO INTERROGATORY NO. 64**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly

burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to

the discovery of admissible evidence.  Apple further objects because this interrogatory contains

multiple, discrete interrogatories.

Subject to and without waiving the foregoing specific objections and General Statement

and Objections, Apple responds as follows:

During a meeting between Apple and Samsung representatives in Cupertino, California

on September 9, 2010, Samsung listed the Declared Essential Patents in Suit in a PowerPoint

presentation.  During this presentation, Samsung indicated that it "Participates in Many Standard

Organizations" and has "Leadership in Key/Major Standard Groups."  The patents were listed

under the headings "Sample Samsung Patents List infringed by Apple iPhone using WCDMA,"

"Sample Samsung Patents List infringed by Apple iPhone using HSDPA," and "Sample

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Samsung Patents List infringed by Apple iPhone using HSUPA."  However, the Declared Essential Patents in Suit were not identified as standard essential.  Apple incorporates by reference its Supplemental Response to Interrogatory No. 13.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 65:**

For each INPUT TECHNOLOGY MARKET, IDENTIFY each technology in that market, SAMSUNG'S share of that market, and any barriers to entry to the market.

**RESPONSE TO INTERROGATORY NO. 65**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "each technology."  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple further objects because this interrogatory contains multiple, discrete interrogatories.

Subject to and without waiving the foregoing objections, Apple responds as follows:

Samsung is currently the only supplier of input technology in each of the INPUT TECHNOLOGY MARKETS to the extent that its Declared Essential Patents in Suit are actually valid and essential.  As defined in Apple's counterclaims, an INPUT TECHNOLOGY MARKET consists of the "technologies that – before the standard was implemented – were competing to perform each of the various functions covered by each of Samsung's purported essential patents for UMTS."  (ACR ¶ 99.)  Now that the functions that Samsung asserts are performed by technologies Samsung claims are covered by its Declared Essential Patents in Suit have been incorporated into the UMTS standard, if, as Samsung alleges, those patents are valid and the UMTS standard cannot be practiced without infringing those patents, the technologies that Samsung claims are covered by its patents are the only technologies in each of the relevant markets.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Post-standardization, the INPUT TECHNOLOGY MARKETS face insurmountable barriers to entry because existing infrastructure has already been built to comply with the standards that incorporate technology that Samsung claims is covered by its patents.  Because the industry is "locked in" to the existing standards, they cannot be revised include alternative technologies.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 66:**

IDENTIFY any cost APPLE would incur by switching from: a) an INPUT TECHNOLOGY to an alternative technology; and b) WCDMA to an alternative standard, including CDMA2000.

**RESPONSE TO INTERROGATORY NO. 66**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including without limitation because it seeks information relating to "any cost."  Apple further objects to this Interrogatory on the ground that the term "cost" is vague and ambiguous and fails to identify with sufficient particularity the information sought.  Apple further objects to this Interrogatory as premature in advance of expert discovery.

Subject to and without waiving the foregoing objections, Apple responds as follows:

To the extent that each INPUT TECHNOLOGY is essential to the UMTS standard, as Samsung contends, it is not possible for Apple to switch from an INPUT TECHNOLOGY to an alternative technology and continue to implement products compliant with the UMTS standard. While Apple could and does sell devices compliant with other standards, such as CDMA2000, it would incur enormous costs if it were to stop selling products that comply with the UMTS standard.

In particular, Apple would incur a total loss of revenue from sales in every of the many countries in which UMTS is the only mobile telecommunications standard that provides voice

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

and data coverage and quality comparable to UMTS.  In any country, such as the United States, where some carriers use the UMTS standard and others use other standards, such as CDMA2000, a significant proportion of Apple's potential customer base would become unable to purchase Apple products if those products were not offered in versions that comply with the UMTS standard.  In addition, Apple would face significant costs associated with shutting down business operations associated with its UMTS products and would forfeit very large investments in developing products that comply with the UMTS standards.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 67:**

From January 1, 2007 to the present, for each model and version of each of the APPLE ACCUSED PRODUCTS, including those identified in response to Interrogatory 19, IDENTIFY by quarter (calendar and fiscal) the amount in gross margin or gross profit that APPLE has obtained from the sale of accessories or other services that are designed to work with any APPLE ACCUSED PRODUCT, including but not limited to sales from iTunes, sales from APPLE'S App Store, and sales of products sold by a third-party for which APPLE receives revenue from the third-party.

**RESPONSE TO INTERROGATORY NO. 67**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to the extent to which it relates to technologies or functionality not at issue in the Lawsuit.  Apple also objects to this Interrogatory on the ground that the undefined terms "accessories," "designed to work with," and "other services" are vague and ambiguous.  Apple further objects to this Interrogatory to the extent it seeks information that is subject to a confidentiality or non-disclosure agreement or governed by a protective order preventing its production, or otherwise seeks confidential, proprietary, or trade secret information of third parties.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Subject to and without waiving the foregoing General and Specific Objections, Apple responds that in accordance with Federal Rule of Civil Procedure 33(d), Apple has produced and/or will produce documents responsive to this Interrogatory, and that the burden of ascertaining the answer to this Interrogatory from the produced business records is substantially the same for Apple as for Samsung.  Apple further designates, at this time, the following documents from which information responsive to this Interrogatory may be ascertained: APLNDC-Y0000051606 - APLNDCY0000051615.

**INTERROGATORY NO. 68:**

Separately for each APPLE DESIGN PATENT and APPLE TRADE DRESS, state fully and in detail all facts that support YOUR contention as to the non-functionality of any claimed feature, element or combination of features or elements.

**RESPONSE TO INTERROGATORY NO. 68**

Apple objects to the phrase "fully and in detail" as vague and ambiguous.  Apple objects to this Interrogatory as unduly burdensome, overbroad, and impracticable to the extent that it requests Apple to state "all facts" supporting Apple's contention "fully and in detail," especially given the  late date in the discovery period at which this Interrogatory was propounded.  Apple additionally objects to this Interrogatory as onerous and unduly burdensome because it is effectively two interrogatories – one for design patents and one for trade dress – as each requires analysis under a separate legal standard.  Apple further objects to this Interrogatory to the extent it seeks information that: (i) would require Apple to draw a legal conclusion to respond; or (ii) is subject to a confidentiality or nondisclosure agreement or governed by a protective order preventing its production.

Subject to and incorporating its General Objections and its specific objections, Apple responds as follows:

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Apple is not aware that any aspect of Apple's design patents or trade dress at issue in this case is functional.  First, there are a plethora of alternative designs available for smartphones and tablet computers, some of which are set forth below.  Second, Apple believes that its designs are more difficult to manufacture than designs for other smartphones and tablet computers that currently are or have been available in the marketplace.  Third, Apple is not aware of any cost benefits to any aspect of the Apple trade dress or design patents at issue in this case.  In fact, implementing Apple's designs makes their manufacturing more challenging and expensive than alternative smartphone and tablet computer designs in the marketplace.  Fourth, Apple is not aware of any utilitarian advantage to its smartphone and tablet computer designs and therefore does not tout any such "advantages" in advertising its products.  Apple's exclusive use of its designs will not put competitors at a significant non-reputation related disadvantage.

The following is a representative sampling of alternative designs that are available for each of the design patents and trade dresses as issue in this case.

Alternative designs with respect to the D'889 patent include without limitation the following patents and products:

- Samsung Q1
- Compaq TC1000
- Sony Tablet S & P
- Barnes & Noble Nook Tablet
- Vinci Tablet
- Acer Iconia Tab A500
- Fusion Garage Grid 10
- GriDPAD 2050
- Motion Computing LS800
- Droid XYBoard 8.2

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Alternative designs with respect to the D'087, D'677, and D'270 Patents include without limitation the following products:

- Pantech Crossover
- Sony Ericsson Xperia X10
- Nokia N8
- NEC N908
- Nokia Lumia 800
- Casio GZ One Commando
- Sony Ericsson Xperia S
- Modu phones and related jackets
- Nokia X5-01
- Samsung M7600 Beat DJ

Alternative designs with respect to the D'790, D'334, and D'305 include without limitation the following products:

- Sony Ericsson Xperia X10
- Nokia N8
- Palm Centro
- Palm Pixi Plus
- Nokia Lumia 800
- Palm Treo 700p
- Pantech Hotshot CDM8992VW
- Blackberry Torch 9850
- Blackberry Storm 2
- Samsung F700

Alternative designs with respect to Apple's Original iPhone Trade Dress, iPhone 3G Trade Dress, iPhone 4 Trade Dress, iPhone Trade Dress, and the trade dress registered in U.S.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Trademark Reg. Nos. 3,470,983, 3,457,218, and 3,475,327 include without limitation the following products:

- Pantech Crossover
- Sony Ericsson Xperia X10
- Nokia N8
- NEC N908
- Nokia Lumia 800
- Casio GZ One Commando
- Sony Ericsson Xperia S
- Modu phones and related jackets
- Nokia X5-01
- Samsung M7600 Beat DJ

Alternative designs with respect to the iPad Trade Dress and the iPad 2 Trade Dress include without limitation the following patents and products:

- Samsung Q1
- Compaq TC1000
- Sony Tablet S & P
- Barnes & Noble Nook Tablet
- Vinci Tablet
- Acer Iconia Tab A500
- Fusion Garage Grid 10
- GriDPAD 2050
- Motion Computing LS800
- Droid XYBoard 8.2

Moreover, alternative cellular phone and tablet computer designs were explored during the development process of Apple products and some were commercially manufactured by

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Apple.  These alternatives designs are contained in the native design files that have been

produced for inspection, in the printouts of these native files that have been produced to

Samsung, and in the numerous Apple mockups that have been produced for inspection.  A

number of these alternative designs were identified in Christopher Stringer's reply declaration in

support of Apple's motion for preliminary injunction.

**INTERROGATORY NO. 69:**

Separately for each APPLE TRADE DRESS and APPLE TRADEMARK, state the date

on which YOU contend such trade dress and trademark became famous and acquired secondary

meaning and state fully and in detail all facts that support YOUR contention that such trade dress

and trademark became famous and acquired secondary meaning as of that date.

**RESPONSE TO INTERROGATORY NO. 69**

Apple objects to the phrase "fully and in detail" as vague and ambiguous.  Apple objects

to this Interrogatory as unduly burdensome, overbroad, and impracticable to the extent that it

requests Apple to state "all facts" supporting Apple's contention "fully and in detail," especially

given the late date in the discovery period at which this Interrogatory was propounded.  Apple

also objects to this Interrogatory as seeking information that is irrelevant and not likely to lead to

the discovery of admissible testimony to the extent that it seeks information regarding fame and

secondary meaning for the trademarks asserted in this proceeding.  Apple additionally objects to

this Interrogatory as onerous and unduly burdensome because it is effectively two interrogatories

– one for trademarks and one for trade dress – as each requires analysis under a separate legal

standard.  Apple further objects to this Interrogatory to the extent it seeks information that: (i)

would require Apple to draw a legal conclusion to respond; (ii) is outside of Apple's possession,

custody, or control; (iii) can be obtained as easily by Samsung, is already in Samsung's

possession, or is publicly available; or (iv) is subject to a confidentiality or nondisclosure

agreement or governed by a protective order preventing its production.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Subject to and incorporating its General Objections and its specific objections, Apple responds as follows:

The public has come to recognize the appearance of the iPhone as a trademark by virtue of the enormous publicity surrounding Apple's announcement in January 2007 and the launch of the product on June 9, 2007, and the iPhone's unprecedented success in the marketplace.  Sales of the iPhone reached the 1 million mark after only 74 days, but the image of the product became well-known to consumers not only because the product had enormous sales, but also because images of the iPhone were and continue to be featured in news media, on the web, and in a much admired marketing campaign.  With front-page coverage in national newspapers, lead stories on network TV newscasts, and comic parodies on late-night television and YouTube, the iPhone received an estimated $400 million in free advertising within months of its release.  As a result, consumers who saw the image of the iPhone immediately recognized it as *Apple's* iPhone, so that the configuration of the product came to serve as an indicator of source.

Like the iPhone, the public quickly came to recognize the distinctive and unique appearance of the iPad as a trademark of Apple due to the overwhelming publicity surrounding the launch of the product and its impressive early sales.  Following the announcement of the product in January 2010, there were images of the iPad appearing on the front pages or lead sections of *The New York Times*, *The Wall Street Journal*, and *USA Today*.  The publicity continued through the April 2010 launch date, when the iPad appeared on the front pages of *The New York Times* and *USA Today*.  The iPad product was also the subject of cover stories in *Time* and *Newsweek*.  As a result, consumers immediately recognized the distinctive look of the iPad as an Apple product.  In fact, in its first 80 days on the market, Apple sold 3 million iPads, and, by March 2011, Apple had sold over 19 million iPads.  Given the distinctive design of the iPad, every iPad that is sold increases its recognition as a source identifier of Apple.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Apple believes that the each of the trade dresses identified in the Amended Complaint was famous and had secondary meaning at least as early as the release of the corresponding Apple product, as set forth in the chart below, and certainly earlier than the launch of Samsung's infringing products at issue in this lawsuit:

| Trade Dress | Release Date for First Product Embodying Trade Dress |
|---|---|
| Original iPhone Trade Dress | June 29, 2007 |
| iPhone 3G Trade Dress | June 29, 2007 |
| iPhone Trade Dress | June 29, 2007 |
| iPhone 4 Trade Dress | June 24, 2010 |
| iPad Trade Dress | April 3, 2010 |
| iPad 2 Trade Dress | April 3, 2010 |
| The trade dress registered in U.S. Trademark Reg. No. 3,470,983 | June 29, 2007 |
| The trade dress registered in U.S. Trademark Reg. No. 3,457,218 | June 29, 2007 |
| The trade dress registered in U.S. Trademark Reg. No. 3,475,327 | June 29, 2007 |

Facts that support Apple's contention that its various trade dresses have secondary meaning and are famous include, but are not limited to, facts relating to (i) the unique appearance of the iPhone, iPod touch, and iPad products, (ii) pre-launch publicity for the iPhone, iPod touch, and iPad products, (iii) Apple's extensive advertising of the iPhone, iPod touch, and iPad products, (iv) unsolicited third-party press for the iPhone, iPod touch, and iPad products, including positive reviews and press accolades, (v) the iPhone, iPod touch, and iPad products' appearance in popular media, (vi) the widespread use of the iPhone, iPod touch, and iPad

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

products by well known political, sports, and entertainment figures, (vii) design awards received by Apple for the design of the iPhone, iPod touch, and iPad products, and (viii) sales of the iPhone, iPod touch, and iPad products.  Apple notes that the icon trademarks asserted in this case are inherently distinctive and are not the subject of a dilution claim; therefore, any facts supporting acquired distinctiveness or fame are not relevant for the icon trademarks.

**INTERROGATORY NO. 70:**

Separately for each APPLE TRADE DRESS, state fully and in detail all facts that support YOUR contention that SAMSUNG is diluting or has diluted such trade dress.

**RESPONSE TO INTERROGATORY NO. 70**

Apple objects to the phrase "fully and in detail" as vague and ambiguous.  Apple objects to this Interrogatory as unduly burdensome, overbroad, and impracticable to the extent that it requests Apple to state "all facts" supporting Apple's contention "fully and in detail," especially given the late date in the discovery period at which this Interrogatory was propounded.  Apple further objects to this Interrogatory to the extent it seeks information that: (i) would require Apple to draw a legal conclusion to respond; (ii) is outside of Apple's possession, custody, or control; (iii) can be obtained as easily by Samsung, is already in Samsung's possession, or is publicly available; or (iv) is subject to a confidentiality or nondisclosure agreement or governed by a protective order preventing its production.

Subject to and incorporating its General Objections and its specific objections, Apple responds as follows with respect to the Samsung products accused in Apple's Amended Complaint:

Samsung is diluting Apple's Original iPhone Trade Dress, iPhone 3G Trade Dress, iPhone 4 Trade Dress, iPhone Trade Dress, iPad Trade Dress, iPad 2 Trade Dress and the trade dress registered in U.S. Trademark Reg. Nos. 3,470,983, 3,457,218, and 3,475,327 by advertising and selling a wide variety of lookalike products, including without limitation Galaxy,

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Galaxy S, and Galaxy SII products such as Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, Vibrant, Galaxy Tab 7.0, Galaxy Tab 7.0 Plus, Galaxy Tab 10.1, and Galaxy Tab 10.1 LTE.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of Apple's distinctive trade dress in its products.

Many of Samsung's Galaxy phones embody a combination of several elements of the Original iPhone Trade Dress, including at least the following:  Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the Original iPhone Trade Dress.

Many of Samsung's Galaxy phones embody a combination of several elements of the iPhone 3G Trade Dress, including at least the following:  Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the iPhone 3G Trade Dress.

Many of Samsung's Galaxy phones embody a combination of several elements of the iPhone Trade Dress, including at least the following:  Captivate, Continuum, Droid Charge, Epic

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

4G, Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the iPhone Trade Dress.

Many of Samsung's Galaxy phones embody a combination of several elements of the trade dress registered in U.S. Trademark Reg. No. 3,470,983, including at least the following: Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the registered trade dress.

Many of Samsung's Galaxy phones embody a combination of several elements of the trade dress registered in U.S. Trademark Reg. No. 3,457,218, including at least the following: Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the registered trade dress.

Many of Samsung's Galaxy phones embody a combination of several elements of the trade dress registered in U.S. Trademark Reg. No. 3,475,327, including at least the following:

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the registered trade dress.

Many of Samsung's Galaxy phones embody a combination of several elements of the iPhone 4 Trade Dress, including at least the following:  Galaxy Ace.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the iPhone 4 Trade Dress.

Many of Samsung's Galaxy tablet computers embody a combination of several elements of the iPad Trade Dress, including at least the following:  Galaxy Tab 7.0, Galaxy Tab 7.0 Plus, Galaxy Tab 10.1, and Galaxy Tab 10.1 LTE.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the iPad Trade Dress.

Many of Samsung's Galaxy tablet computers embody a combination of several elements of the iPad 2 Trade Dress, including at least the following:  Galaxy Tab 7.0, Galaxy Tab 7.0 Plus, Galaxy Tab 10.1, and Galaxy Tab 10.1 LTE.  These products were intentionally designed to look like Apple products in their hardware and user interface design.  By offering them for sale and selling them in the U.S., Samsung has diluted and will continue to dilute the strength of the iPad 2 Trade Dress.

Samsung threatens to dilute the distinctiveness of Apple's highly distinctive designs by producing and promoting lookalike products.  Further, Apple's reputation as an innovator in

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

design may be diminished if other companies are selling products with similar designs.  Apple has a well-established reputation of coming out with remarkable new products and designs that look very different from what has come before.  If consumers can buy products with similar designs from other companies, Apple's design will no longer stand out from the crowd of competing products.  Eventually design will no longer be a compelling strength for Apple.

Facts that support Apple's contention that Samsung's Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products have diluted and will continue to dilute the Apple trade dress at issue in this lawsuit include, but are not limited to, facts relating to (i) the unique appearance of the iPhone, iPod touch, and iPad products, (ii) pre-launch publicity for the iPhone, iPod touch, and iPad products, (iii) Apple's extensive advertising of the iPhone, iPod touch, and iPad products, (iv) unsolicited third-party press for the iPhone, iPod touch, and iPad products, including positive reviews and press accolades, (v) the iPhone, iPod touch, and iPad products' appearance in popular media, (vi) the widespread use of the iPhone, iPod touch, and iPad products by well known political, sports, and entertainment figures, (vii) design awards received by Apple for the design of the iPhone, iPod touch, and iPad products, (viii) sales of the iPhone, iPod touch, and iPad products, (ix) Samsung's extensive advertisements of the Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products, (x) third-party reviews of Samsung's Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products, including reviews comparing Samsung's smartphone and tablet computer products to Apple's products, and (xi) Samsung's sales of the Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**INTERROGATORY NO. 71:**

Separately for each SAMSUNG product or product packaging that YOU contend infringes any APPLE TRADE DRESS or APPLE TRADEMARK, state fully and in detail on a trade dress-by-trade dress and trademark-by-trademark basis all facts that support YOUR contention that the SAMSUNG product or product packaging is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of SAMSUNG with APPLE, or as to origin, sponsorship, or approval by APPLE of SAMSUNG'S goods, services or commercial activities.

**RESPONSE TO INTERROGATORY NO. 71:**

Apple objects to the phrase "fully and in detail" as vague and ambiguous.  Apple objects to this Interrogatory as unduly burdensome, overbroad, and impracticable to the extent that it requests Apple to state "all facts" supporting Apple's contention "fully and in detail," especially given the late date in the discovery period at which this Interrogatory was propounded.  Apple further objects to this Interrogatory to the extent it seeks information that: (i) would require Apple to draw a legal conclusion to respond; (ii) is outside of Apple's possession, custody, or control; (iii) can be obtained as easily by Samsung, is already in Samsung's possession, or is publicly available; or (iv) is subject to a confidentiality or nondisclosure agreement or governed by a protective order preventing its production.

Subject to and incorporating its General Objections and its specific objections, Apple responds as follows with respect to the Samsung products accused in Apple's Amended Complaint:

Samsung is infringing Apple's Original iPhone Trade Dress, iPhone 3G Trade Dress, iPhone 4 Trade Dress, iPhone Trade Dress, iPad Trade Dress, iPad 2 Trade Dress and the trade dress registered in U.S. Trademark Reg. Nos. 3,470,983, 3,457,218, and 3,475,327 by

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

advertising and selling a wide variety of lookalike products, including without limitation Galaxy, Galaxy S, and Galaxy SII products such as Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (i9100), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), Galaxy S Showcase (i500), Infuse 4G, Mesmerize, Vibrant, Galaxy Tab 7.0, Galaxy Tab 7.0 Plus, Galaxy Tab 10.1, and Galaxy Tab 10.1 LTE.  These products were intentionally designed to look like Apple products in their hardware and user interface design and infringe Apple's trade dress rights, as shown in the charts below.

**Trade Dress**

A.   **Original iPhone Trade Dress; iPhone 3G Trade Dress; iPhone 4 Trade Dress; iPhone Trade Dress; U.S. Trademark Registration Nos. 3,470,983; 3,457,218; 3,475,327**

| Trade Dress | | |
|---|---|---|
| Original iPhone Trade Dress; iPhone Trade Dress | iPhone 3G Trade Dress | iPhone 4 Trade Dress |
|  |  |  |
| U.S. Reg. No. 3,470,983 | U.S. Reg. No. 3,457,218 | U.S. Reg. No. 3,475,327 |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**





**Accused Samsung Designs**

| Captivate | Continuum | Droid Charge |
|---|---|---|
|  | |  |
| Epic 4G | Fascinate | Galaxy Prevail |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**



Galaxy S (i9000)



Galaxy S 4G



Galaxy S II (AT&T Edition, 4G)



Galaxy S II (i9100)



Galaxy S II (T-Mobile edition)

Galaxy S II Epic 4G Touch

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

  

| Galaxy S II Skyrocket (4G LTE) | Galaxy S Showcase (i500) | Infuse 4G |
|---|---|---|

 

| Mesmerize | Vibrant |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**



**B.     iPhone 4 Trade Dress**



| Trade Dress |
|---|
| |
| Accused Samsung Design |
| Galaxy Ace |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**



C.     **iPad Trade Dress and iPad2 Trade Dress**

| Trade Dress |
|---|

| Accused Samsung Designs |
|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| Galaxy Tab 7.0 | Galaxy Tab 7.0 Plus |
|---|---|
|  |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| Galaxy Tab 10.1 | Galaxy Tab 10.1 LTE |
|---|---|
|  | |

Samsung is also infringing Apple's icon trademarks by advertising and selling a wide variety of products using confusingly similar icons, including without limitation phones and products such as Captivate; Continuum; Droid Charge; Epic 4G; Exhibit 4G; Fascinate; Galaxy Ace; Galaxy S (i9000); Galaxy S 4G; Galaxy S II (AT&T Edition, 4G); Galaxy S II (T-Mobile Edition); Galaxy S II Epic 4G Touch; Galaxy S II Skyrocket (4G LTE); Galaxy S Showcase; Gem; Gravity Smart; Indulge; Infuse 4G; Mesmerize; and Vibrant. The icons on these products were intentionally designed to look like Apple's icons and infringe Apple's trademark rights, as shown in the charts below.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

## Icon Trademarks

**I.      3,886,196 – Trademark Icon for Telephone Calls**





**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| Galaxy S II Epic 4G Touch | Galaxy S II Skyrocket (4G LTE) | Galaxy S Showcase | Gem |
|---|---|---|---|
| Gravity Smart | Indulge | Infuse 4G | Mesmerize |
| Vibrant | | | |

**J.      3,889,642 – Trademark Icon for Messaging**



| Acclaim | Continuum | Droid Charge | Fascinate |
|---|---|---|---|



APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| Galaxy Prevail | Galaxy S Showcase | Galaxy Tab 7.0 | Gem |
|---|---|---|---|
| Intercept | Mesmerize | Nexus S | Nexus S 4G |
| Replenish | Transform | | |

### K.    3,886,200 – Trademark Icon for Photos





| Captivate | Continuum | Droid Charge | Epic 4G |
|---|---|---|---|

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| Exhibit 4G | Fascinate | Galaxy Ace | Galaxy S (i9000) |
|---|---|---|---|
| Galaxy S 4G | Galaxy S Showcase | Galaxy Tab 7.0 | Gem |
| Gravity Smart | Indulge | Infuse 4G | Mesmerize |
| Sidekick | Vibrant | | |

L.      3,889,685 – Trademark Icon for Settings



**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| Captivate | Continuum | Droid Charge | Epic 4G |
|---|---|---|---|
|  |  |  |  |

| Exhibit 4G | Fascinate | Galaxy Ace | Galaxy S (i9000) |
|---|---|---|---|
|  |  |  |  |

| Galaxy S 4G | Galaxy S II (AT&T Edition, 4G) | Galaxy S II (i9100) | Galaxy S II (T-Mobile Edition) |
|---|---|---|---|
|  |  |  |  |

| Galaxy S II Epic 4G Touch | Galaxy S II Skyrocket (4G LTE) | Galaxy S Showcase | Galaxy Tab 7.0 |
|---|---|---|---|
|  |  |  |  |

| Galaxy Tab 7.0 Plus | Galaxy Tab 10.1 | Gem | Gravity Smart |
|---|---|---|---|
|  |  |  |  |

| Indulge | Infuse 4G | Mesmerize | Vibrant |
|---|---|---|---|
|  |  |  |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**M.     3,886,169 – Trademark Icon for Notes**





APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1



| Mesmerize | Sidekick | Vibrant | |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**N.     3,886,197 – Trademark Icon for Contacts**





**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| Galaxy Tab 7.0 Plus | Galaxy Tab 10.1 | Gem | Gravity Smart |
|---|---|---|---|
| Indulge | Infuse 4G | Mesmerize | Vibrant |

**O.    Application No. 85/041,463 (Purple iTunes Store Trademark) and Registration No. 2,935,038 ("iTunes Eighth Note and CD Design Trademark")**





**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**



| Captivate | Continuum | Droid Charge | Epic 4G |
| Exhibit 4G | Fascinate | Galaxy Ace | Galaxy S (i9000) |
| Galaxy S 4G | Galaxy S II (AT&T Edition, 4G) | Galaxy S II (i9100) | Galaxy S II (T-Mobile Edition) |
| Galaxy S II Epic 4G Touch | Galaxy S II Skyrocket (4G LTE) | Galaxy S Showcase | Galaxy Tab 7.0 |
| Galaxy Tab 7.0 Plus | Galaxy Tab 10.1 | Gem | Gravity Smart |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**



Consumers who see Samsung's products are likely to be confused as to the source of Samsung's products, or misled into believing that there is an association between the Samsung products and Apple.  Samsung had many options in developing its smartphones and tablet computers.  Indeed, earlier versions of Samsung smartphones did not embody the same combination of elements of Apple's trade dress.  Even the icons in earlier versions of the Samsung smartphones looked different because, for example, they did not appear as a matrix of colorful square icons above a bottom "dock" of icons.

Facts that support Apple's contention that Samsung's Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products have infringed and will continue to infringe the Apple trade dress and icon trademarks at issue in this lawsuit include, but are not limited to, facts relating to (i) the unique appearance of the iPhone, iPod touch, and iPad products, (ii) pre-launch publicity for the iPhone, iPod touch, and iPad products, (iii) Apple's extensive advertising of the iPhone, iPod touch, and iPad products, (iv) unsolicited third-party press for the iPhone, iPod touch, and iPad products, including positive reviews and press accolades, (v) the iPhone, iPod touch, and iPad products' appearance in popular media, (vi) the widespread use of the iPhone, iPod touch, and iPad products by well known political, sports, and entertainment figures, (vii) design awards received by Apple for the design of the iPhone, iPod touch, and iPad products, (viii) sales of the iPhone, iPod touch, and iPad products, (ix) Samsung's extensive advertisements of the Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products, (x) third-party reviews of Samsung's Galaxy, Galaxy S, and Galaxy SII smartphone

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

and tablet computer products, including reviews comparing Samsung's smartphone and tablet computer products to Apple's products, and (xi) Samsung's sales of the Galaxy, Galaxy S, and Galaxy SII smartphone and tablet computer products.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1

**INTERROGATORY NO. 72:**

2

3        Separately for each SAMSUNG product that YOU contend infringes any APPLE

4   DESIGN PATENT, state fully and in detail on a patent-by-patent basis all facts supporting

5   YOUR contention of infringement, describe fully and in detail on a patent-by-patent basis where

6   each claimed element or feature of the patent is found on the accused SAMSUNG product and

7   provide a chart identifying fully and in detail on a patent-by-patent basis specifically where each

    claimed element or feature is found on the accused SAMSUNG product.

8

**RESPONSE TO INTERROGATORY NO. 72**

9

10       Samsung directly infringes each asserted design patent (D'889, D'087, D'677, D'270,

11  D'790, D'334, and D'305) by making, using, selling, and offering for sale within the United

12  States and importing into the United States devices that practice these patents, including the

13  Accused Products. Each design patent claims the overall designs depicted, and the claims in

    these patents are presumptively valid.

14

15       No aspect of the designs in the asserted design patents is dictated by function.  Thus, no

16  aspect of the designs should be factored out for purposes of determining whether Samsung's

17  devices infringe the D'889, D'087, D'677, D'270,  D'790, D'334, and D'305 Patents.  A design

18  is not dictated solely by function when alternative designs are available.  With respect to the

19  designs claimed in the asserted design patents, numerous alternative designs exist—some of

20  which were patented or commercially manufactured by Samsung itself and some of which were

21  patented or made by third parties.

22       The following is a representative sampling of alternative designs that are available for

23  each of the design patents at issue in this case.

24       Alternative designs with respect to the D'889 Patent include without limitation the

25  following patents and products:

26          •        Samsung Q1

27          •        Compaq TC1000

28

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

- Sony Tablet S & P
- Barnes & Noble Nook Tablet
- Vinci Tablet
- Acer Iconia Tab A500
- Fusion Garage Grid 10
- GriDPAD 2050
- Motion Computing LS800
- Droid XYBoard 8.2

Alternative designs with respect to the D'087, D'677, and D'270 Patents include without limitation the following products:

- Pantech Crossover
- Sony Ericsson Xperia X10
- Nokia N8
- NEC N908
- Nokia Lumia 800
- Casio GZ One Commando
- Sony Ericsson Xperia S
- Modu phones and related jackets
- Nokia X5-01
- Samsung M7600 Beat DJ

Alternative designs with respect to the D'790, D'334, and D'305 Patents include without limitation the following products:

- Sony Ericsson Xperia X10
- Nokia N8
- Palm Centro
- Palm Pixi Plus

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

- Nokia Lumia 800

- Palm Treo 700p

- Pantech Hotshot CDM8992VW

- Blackberry Torch 9850

- Blackberry Storm 2

- Samsung F700

Moreover, alternative cellular phone and tablet computer designs were explored during the development process of Apple products and some were commercially manufactured by Apple.  These alternatives designs are contained in the native design files that have been produced for inspection, in the printouts of these native files that have been produced to Samsung, and in the numerous Apple mockups that have been produced for inspection.  A number of these alternative designs were identified in Christopher Stringer's reply declaration in support of Apple's motion for preliminary injunction.

In determining whether an accused product infringes a design patent, courts must compare the patented design as a whole to the accused products.  Verbal descriptions of the claimed designs are not required.  As demonstrated in the following claim charts, the asserted Apple designs are substantially the same in overall visual appearance as the corresponding portion of each accused Samsung product.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

1.      The D'889 Patent

Each accused Samsung product incorporates a body and front face that is substantially the same in overall visual appearance as the design claimed in the D'889 Patent.

a.      Samsung Galaxy Tab 10.1

| D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|
|   FIG. 1 |  |
|   FIG. 2 |  |
|   FIG. 3 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'889 Patent Claim | Samsung Galaxy Tab 10.1 |
|---|---|
|  FIG. 4 |  |
|  FIG. 5 |  |
|  FIG. 6 |  |
|  FIG. 7 |  |
|  FIG. 8 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

### 2.    The D'087 Patent[2]

Each accused Samsung product incorporates a front face and bezel that is substantially the same in overall visual appearance as the design claimed in the D'087 Patent.

#### a.    Samsung Galaxy S i9000

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S i9000 |
|---|---|
| <br>FIG. 9<br><br><br>FIG. 17 |  |
|  FIG. 11   FIG. 19 |  |
|  |  |

---

[2] In the charts that follow with respect to the D'087 patent, drawings that consist entirely of dotted lines are omitted. Figures 5 through 8, respectively, are equivalent to figures 13 through 16; 21 through 24; 29 through 32; 37 through 40; and 45 through 48.  Because the D'087 incorporates numerous alternative embodiments, only the relevant ones are included.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**



| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S i9000 |
|---|---|

**b.      Samsung Galaxy S 4G**

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S 4G |
|---|---|
|  FIG. 11    FIG. 19 |  |
|  FIG. 7    FIG. 8 |  |
|  FIG. 5<br><br> FIG. 6 | <br><br> |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

c.      Samsung Infuse 4G

| D'087 Patent Claim (Selected Embodiments) | Samsung Infuse 4G |
|---|---|
|  FIG. 9 <br> FIG. 17 |  |
|  FIG. 11   FIG. 19 |  |
|  FIG. 7   FIG. 8 |  |

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| D'087 Patent Claim (Selected Embodiments) | Samsung Infuse 4G |
|---|---|



d.      Samsung Vibrant

| D'087 Patent Claim (Selected Embodiments) | Samsung Vibrant |
|---|---|

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| D'087 Patent Claim (Selected Embodiments) | Samsung Vibrant |
|---|---|
| FIG. 7   FIG. 8 | |
| FIG. 5 | |
| FIG. 6 | |

e.     Samsung Galaxy S II Epic 4G Touch



| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II Epic 4G Touch |
|---|---|
| FIG. 9 | |
| FIG. 17 | |

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II Epic 4G Touch |
|---|---|
|  FIG. 11   FIG. 19 |  |
|  FIG. 7   FIG. 8 |  |
|  FIG. 5  FIG. 6 |   |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

f.      Samsung Galaxy S II (AT&T)

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II (AT&T) |
|---|---|
|  FIG. 9 <br>  FIG. 17 |  |
|  FIG. 11   FIG. 19 |  |
|  FIG. 7   FIG. 8 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II (AT&T) |
|---|---|
|  FIG. 5  FIG. 6 |  |

g.      Samsung Galaxy S II Skyrocket

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II Skyrocket |
|---|---|
|  FIG. 9  FIG. 17 |  |
|  FIG. 11      FIG. 19 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION



| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II Skyrocket |
|---|---|

h.     Samsung Galaxy S II i9100

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II i9100 |
|---|---|

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II i9100 |
|---|---|
|   FIG. 17 | |
|   FIG. 11     FIG. 19 |  |
|   FIG. 7     FIG. 8 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'087 Patent Claim (Selected Embodiments) | Samsung Galaxy S II i9100 |
|---|---|
|  FIG. 5 |  |
|  FIG. 6 |  |

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

3.      The D'677 Patent[3]

Each accused Samsung product incorporates a front face that is substantially the same in overall visual appearance as the design claimed in the D'677 Patent.

a.      **Samsung Mesmerize (SCH-I500); Samsung Showcase i500 (SCH-I500); Samsung Showcase Galaxy S (SCH-I500) Samsung Fascinate (SCH-I500)**

| D'677 Patent Claim | Samsung SCH-I500 (Mesmerize / Showcase i500 / Showcase Galaxy S / Fascinate) |
|---|---|
| <br>*FIG. 1* |  |
| <br>*FIG. 3* |  |

---

[3] In the charts below with respect to the D'677 patent, drawings that consist entirely of dotted lines are omitted.

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

| D'677 Patent Claim | Samsung SCH-I500 (Mesmerize / Showcase i500 / Showcase Galaxy S / Fascinate) |
|---|---|
|  | |

b.    Samsung Galaxy S i9000

| D'677 Patent Claim | Samsung Galaxy S i9000 |
|---|---|
| | |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'677 Patent Claim | Samsung Galaxy S i9000 |
|---|---|
| FIG. 3 | |
| FIG. 7     FIG. 8 | |
| FIG. 5 | |
| FIG. 6 | |

c.     Samsung Galaxy Ace



| D'677 Patent Claim | Samsung Galaxy Ace |
|---|---|
| FIG. 1 | |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'677 Patent Claim | Samsung Galaxy Ace |
|---|---|
|  FIG. 3 |  |
|  FIG. 7   FIG. 8 |  |
|  FIG. 5  FIG. 6 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

d.      Samsung Galaxy S 4G

| D'677 Patent Claim | Samsung Galaxy S 4G |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

e.      Samsung Infuse 4G

| D'677 Patent Claim | Samsung Infuse 4G |
|---|---|
| <br>FIG. 1 |  |
| <br>FIG. 3 |  |
| <br>FIG. 7        FIG. 8 |  |
| <br>FIG. 5<br><br><br>FIG. 6 | <br><br> |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

f.      **Samsung Vibrant**

| D'677 Patent Claim | Samsung Vibrant |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |
|  FIG. 7   FIG. 8 |  |
|  FIG. 5  FIG. 6 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

g.    **Samsung Galaxy S II Epic 4G Touch**

| D'677 Patent Claim | Samsung Galaxy S II Epic 4G Touch |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |
|  FIG. 7    FIG. 8 |  |
|  FIG. 5 <br>  FIG. 6 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

h.     **Samsung Galaxy S II (T-Mobile)**

| D'677 Patent Claim | Samsung Galaxy S II (T-Mobile) |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |
|  FIG. 7     FIG. 8 |  |
|  FIG. 5 <br><br> FIG. 6 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

i.      Samsung Galaxy S II (AT&T)

| D'677 Patent Claim | Samsung Galaxy S II (AT&T) |
|---|---|
|   FIG. 1 |  |
|   FIG. 3 |  |
|   FIG. 7    FIG. 8 |  |
|   FIG. 5    FIG. 6 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

### j.   Samsung Galaxy S II Skyrocket

| D'677 Patent Claim | Samsung Galaxy S II Skyrocket |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |
|  FIG. 7   FIG. 8 |  |
|  FIG. 5  FIG. 6 |   |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

k.      Samsung Galaxy S II i9100

| D'677 Patent Claim | Samsung Galaxy S II i9100 |
|---|---|
|  FIG. 1 |  |
|  FIG. 3 |  |
|  FIG. 7    FIG. 8 |  |
|  FIG. 5 <br>  FIG. 6 |  <br>  |

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

4.        **The D'270 Patent**

Each accused Samsung product incorporates a body and front face that are substantially the same in overall visual appearance as the design claimed in the D'270 Patent.

a.        **Samsung Galaxy S i9000**

| D'270 Patent Claim | Samsung Galaxy S i9000 |
|---|---|
| <br>FIG. 1 |  |
| <br>FIG. 2 |  |
| <br>FIG. 3 |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'270 Patent Claim | Samsung Galaxy S i9000 |
|---|---|
|  FIG. 4 |  |
|  FIG. 5      FIG. 6 |  |
|  FIG. 7  FIG. 8 |  |
|  FIG. 9 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

**b.      Samsung Galaxy S 4G**

| D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|
| <br>FIG. 1 |  |
| <br>FIG. 2 |  |
| <br>FIG. 3 |  |
| <br>FIG. 4 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION



| D'270 Patent Claim | Samsung Galaxy S 4G |
|---|---|

c.      Samsung Vibrant



| D'270 Patent Claim | Samsung Vibrant |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'270 Patent Claim | Samsung Vibrant |
|---|---|
|  FIG. 2 |  |
|  FIG. 3 |  |
|  FIG. 4 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| D'270 Patent Claim | Samsung Vibrant |
|---|---|
| <br>FIG. 5    FIG. 6 |  |
| <br>**FIG. 7**<br><br><br>**FIG. 8** | <br><br> |
| <br>FIG. 9 |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

5.      **The D'790 Patent**

Each accused Samsung product incorporates an array of icons that is substantially the same in overall visual appearance as the design claimed in the D'790 Patent.

a.      **Samsung Captivate**



| D'790 Patent Claim | Samsung Captivate |
|---|---|

b.      **Samsung Continuum**

| D'790 Patent Claim | Samsung Continuum |
|---|---|

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

c.    Samsung Droid Charge

| D'790 Patent Claim | Samsung Droid Charge |
|---|---|
|  | |

d.    Samsung Epic 4G

| D'790 Patent Claim | Samsung Epic 4G |
|---|---|
|  | |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

e.    **Samsung Fascinate**

| D'790 Patent Claim | Samsung Fascinate |
|---|---|



f.    **Samsung Gem**

| D'790 Patent Claim | Samsung Gem |
|---|---|



**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

g.     Samsung Galaxy S i9000



| D'790 Patent Claim | Samsung Galaxy S i9000 |
|---|---|

h.     Samsung Galaxy S 4G



| D'790 Patent Claim | Samsung Galaxy S 4G |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1    **i.    Samsung Indulge**

2



| D'790 Patent Claim | Samsung Indulge |
|---|---|

3
4
5
6
7
8
9
10
11
12

**j.    Samsung Infuse 4G**

13



| D'790 Patent Claim | Samsung Infuse 4G |
|---|---|

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

### k.      Samsung Mesmerize



| D'790 Patent Claim | Samsung Mesmerize |
|---|---|

### l.      Samsung Showcase Galaxy S



| D'790 Patent Claim | Samsung Showcase Galaxy S |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1

m.     Samsung Showcase i500

2



| D'790 Patent Claim | Samsung Showcase i500 |
|---|---|

n.     Samsung Vibrant



| D'790 Patent Claim | Samsung Vibrant |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

6.      **The D'334 Patent[4]**

Each accused Samsung product incorporates an array of icons that is substantially the same in overall visual appearance as the design claimed in the D'334 Patent.

a.      **Samsung Captivate**

| D'334 Patent Claim | Samsung Captivate |
|:---:|:---:|
|  |  |

---

[4] In the charts below with respect to the D'334 patent, only one figure is presented out of the eight figures in the design patent. Each figure in the design patent is substantially the same, and the comparison herein applies equally to each figure...

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

b.    **Samsung Continuum**



| D'334 Patent Claim | Samsung Continuum |
|---|---|

c.    **Samsung Droid Charge**

| D'334 Patent Claim | Samsung Droid Charge |
|---|---|

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

d.    **Samsung Epic 4G**

| D'334 Patent Claim | Samsung Epic 4G |
|---|---|
|  |  |

e.    **Samsung Fascinate**

| D'334 Patent Claim | Samsung Fascinate |
|---|---|
|  |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

f.    **Samsung Gem**

| D'334 Patent Claim | Samsung Gem |
|:---:|:---:|
|  |  |

SUBJECT TO PROTECTIVE ORDER
CONTAINS CONFIDENTIAL INFORMATION

g.      **Samsung Galaxy S i9000**

| D'334 Patent Claim | |
|---|---|
|  |  |

h.      **Samsung Galaxy S 4G**

| D'334 Patent Claim | Samsung Galaxy S 4G |
|---|---|
|  |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

i.      **Samsung Indulge**

j.      **Samsung Infuse 4G**



| D'334 Patent Claim | Samsung Indulge |
|---|---|

| D'334 Patent Claim | Samsung Infuse 4G |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

k.      Samsung Mesmerize

l.      Samsung Showcase Galaxy S



| D'334 Patent Claim | Samsung Mesmerize |
|---|---|

| D'334 Patent Claim | Samsung Showcase Galaxy S |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

m.    **Samsung Showcase i500**

| D'334 Patent Claim | Samsung Showcase i500 |
|---|---|
|  |  |

n.    **Samsung Vibrant**

| D'334 Patent Claim | Samsung Vibrant |
|---|---|
|  |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

### 7.   The D'305 Patent[5]

Each accused Samsung product incorporates an array of icons that is substantially the same in overall visual appearance as the design claimed in the D'305 Patent.

### a.   Samsung Captivate

| D'305 Patent Claim | Samsung Captivate |
|---|---|
|  |  |

---

[5] In the charts below with respect to the D'305 patent, only one figure is presented out of the two figures in the design patent.  Each figure in the design patent is substantially the same, and the comparison herein applies equally to each figure.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

b.      **Samsung Continuum**

| D'305 Patent Claim | Samsung Continuum |
|---|---|
|  |  |

c.      **Samsung Droid Charge**

| D'305 Patent Claim | Samsung Droid Charge |
|---|---|
|  |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

d.    **Samsung Epic 4G**

| D'305 Patent Claim | Samsung Epic 4G |
|---|---|
|  |  |

e.    **Samsung Fascinate**

| D'305 Patent Claim | Samsung Fascinate |
|---|---|
|  |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

f.      **Samsung Gem**

| D'305 Patent Claim | Samsung Gem |
|---|---|



g.      **Samsung Galaxy S i9000**

| D'305 Patent Claim | Samsung Galaxy S i9000 |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

h.    **Samsung Galaxy S 4G**

| D'305 Patent Claim | Samsung Galaxy S 4G |
|---|---|
|  |  |

i.    **Samsung Indulge**

| D'305 Patent Claim | Samsung Indulge |
|---|---|
|  |  |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**j.    Samsung Infuse 4G**

| D'305 Patent Claim | Samsung Infuse 4G |
|---|---|



**k.    Samsung Mesmerize**

| D'305 Patent Claim | Samsung Mesmerize |
|---|---|

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1

l.     **Samsung Showcase Galaxy S**

| D'305 Patent Claim | Samsung Showcase Galaxy S |
|---|---|
|  |  |

m.     **Samsung Showcase i500**

| D'305 Patent Claim | Samsung Showcase i500 |
|---|---|
|  |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

n.      **Samsung Vibrant**

| D'305 Patent Claim | Samsung Vibrant |
|---|---|
|  |  |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**INTERROGATORY NO. 73:**

Separately, fully, and in detail for each of the SAMSUNG PATENTS-IN-SUIT, IDENTIFY and explain any design-around and/or alleged alternative technology or method that can be used as an alternative to the patented technology, including but not limited to: (a) a description of the alleged design-around; (b) a description of when and how the alleged design-around was developed; (c) the identity of individuals involved in developing the alleged design-around, including their titles and departments if they are or were APPLE employees; and (d) dates when the alleged design-around was incorporated into the APPLE ACCUSED PRODUCTS.

**RESPONSE TO INTERROGATORY NO. 73**

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it seeks information regarding functionality that are not at issue in this lawsuit. Apple also objects to this Interrogatory on the grounds that the phrases "design-around" and "alleged alternative technology or method that can be used as an alternative to the patented technology" are vague and ambiguous. Apple bases its response on its current understanding of the Samsung's infringement contentions as set forth in Samsung's Patent Local Rule 3-1 disclosures. Apple further objects to this Interrogatory as premature in advance of expert discovery. Apple further objects because this interrogatory contains multiple, discrete interrogatories. Apple objects to this Interrogatory on the grounds that it is unlimited in time. Apple further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, or other applicable privilege, doctrine, or immunity.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds that it is not in the possession of non-privileged information regarding the consideration or implementation of any potential "design-around" for any Apple accused product. Further responding, Apple incorporates by reference paragraphs 27, 48, 58, 67,

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

94, 105, and 199 of its Amended Answer, Defenses, and Counterclaims in Reply to Samsung's

Counterclaims, and its Response to Interrogatory No. 12.  Apple also states that, in accordance

with Federal Rule of Civil Procedure 33(d), further information responsive to this interrogatory

may be derived from documents that Apple has produced and/or will produce in this action, and

that the burden of ascertaining the answer to this Interrogatory from the produced business

records is substantially the same for Apple as for Samsung.  Apple further designates, at this

time, the following documents from which information responsive to this Interrogatory may be

ascertained:

> APLNDC-WH0000017799–APLNDC-WH0000017802
>
> APLNDC-WH0000019888–APLNDC-WH0000019892
>
> APLNDC-WH0000021106–APLNDC-WH0000021130
>
> APLNDC-WH-A 0000010341–APLNDC-WH-A 0000010345
>
> APLNDC-WH-A 0000010373–APLNDC-WH-A 000010382
>
> APLNDC-WH-A 0000011742–APLNDC-WH-A 0000011744
>
> APLNDC-WH-A 0000011768–APLNDC-WH-A 0000011774
>
> APLNDC-WH-A 0000012310–APLNDC-WH-A 0000012316
>
> APLNDC-WH-A 0000012319–APLNDC-WH-A 0000012324
>
> APLNDC-WH-A 0000018791–APLNDC-WH-A 0000018793

As discovery is ongoing, including expert discovery, Apple reserves the right to

supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 74:**

Separately for all SOFTWARE produced by APPLE including, but not limited to iOS

SOURCE CODE, IDENTIFY: (a) each version of SOFTWARE that corresponds to commercially

distributed versions of SOFTWARE; (b) which APPLE ACCUSED PRODUCT was

commercially distributed with which version of the SOFTWARE produced by APPLE; and (c) all

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

material differences between the commercially distributed versions of SOFTWARE that are relevant to any aspect, element or function of any APPLE ACCUSED PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS-IN-SUIT.

## RESPONSE TO INTERROGATORY NO. 74

Apple objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Apple also objects to this Interrogatory on the grounds that it that the phrases "material differences" and "relevant to any aspect, element or function of any APPLE ACCUSED PRODUCT that is alleged to infringe any of the SAMSUNG PATENTS-IN-SUIT" are vague and ambiguous.  Apple bases its response on its current understanding of the Samsung's infringement contentions as set forth in Samsung's Patent Local Rule 3-1 disclosures.  Apple also objects to this Interrogatory to the extent responsive information is found within the iOS software produced by Apple on the source code computer, and is therefore equally available to Samsung.  Apple also objects to this Interrogatory because it contains multiple subparts that each should count as a separate interrogatory.

Subject to and without waiving the foregoing specific objections and General Statement and Objections, Apple responds as follows:

The iOS software produced by Apple on the source code computer is representative of commercially distributed versions of software as indicated below with respect to the features of the Apple Accused Products currently accused in Samsung's Patent Local Rule 3-1 disclosures:

| SOFTWARE produced by APPLE | Commercially distributed versions of SOFTWARE |
|---|---|
| Samsung_Additional_20111003/Source/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20120216/147_iOS5.0.1_Time_10828198/ | iOS 5.0 and 5.0.1 |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| | |
|---|---|
| Photo_Booth/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Photos | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20120216/Samsung_iOS 5_Photos_10828616/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20111007/Source1/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20111117/Source1/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20111117/Source2/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20111117/Source3/Dura ngo/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20111117/Source3/Tellu ride/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20111117/Source4/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20111117/Source5/ | Mac OS X 10.3 |
| Samsung_Additional_20120216/Samsung_iOS 5_Photos_Supplemental_10890047 | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20111117/Source6/iOS4 .3/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20111117/Source7/iOS5 .0/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20120216/164_PhotoAl | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| | |
|---|---|
| bum_10863755/4.0/ | 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20120216/164_PhotoAl bum_10863755/5.0/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20110920/SMS/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20120216/149_iOS5.0.1 _ChatKit_10829308/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20120216/150_ChatKit_ 10869146/4.0/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20120216/150_ChatKit_ 10869146/5.0/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20111026/Source1/iOS5 .0/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20120216/156_Notificat ionUI/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20110920/CoreMedia/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |
| Samsung_Additional_20120216/148_iOS5.0.1 _MP3_10830613/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20111026/Source2/iOS5 .0/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20120307/10465379/5.0/ AirTraffic-203/ | iOS 5.0 and 5.0.1 |
| Samsung_Additional_20120307/iTunes 2011- 11-18/ | iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5 |

Apple further responds that the iOS software produced by Apple on the source code

computer corresponds to the Apple Accused Products as indicated below:

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| SOFTWARE produced by APPLE | APPLE ACCUSED PRODUCT commercially distributed therewith |
|---|---|
| Samsung_Additional_20111003/Source/ | iPhone, iPhone 3G, iPhone 3GS, iPhone 4 |
| Samsung_Additional_20120216/147_iOS5.0.1 _Time_10828198/ | iPhone, iPhone 3G, iPhone 3GS, iPhone 4 |
| Photo_Booth/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Photos | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20120216/Samsung_iOS 5_Photos_10828616/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111007/Source1/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111007/Source2/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source1/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source2/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source3/Dura ngo/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source3/Tellu ride/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source4/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source5/ | iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20120216/Samsung_iOS 5_Photos_Supplemental_10890047 | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20111117/Source6/iOS4 .3/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

| | |
|---|---|
| Samsung_Additional_20111117/Source7/iOS5.0/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20120216/164_PhotoAlbum_10863755/4.0/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20120216/164_PhotoAlbum_10863755/5.0/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20110920/SMS/ | iPhone 3GS, iPhone 4, iPad, iPad 2, iPod Touch |
| Samsung_Additional_20120216/149_iOS5.0.1_ChatKit_10829308/ | iPhone 3GS, iPhone 4, iPad, iPad 2, iPod Touch |
| Samsung_Additional_20120216/150_ChatKit_10869146/4.0/ | iPhone 3GS, iPhone 4, iPad, iPad 2, iPod Touch |
| Samsung_Additional_20120216/150_ChatKit_10869146/5.0/ | iPhone 3GS, iPhone 4, iPad, iPad 2, iPod Touch |
| Samsung_Additional_20111026/Source1/iOS5.0/ | iPhone 3GS, iPhone 4, iPad, iPad 2, iPod Touch |
| Samsung_Additional_20120216/156_NotificationUI/ | iPhone 3GS, iPhone 4, iPad, iPad 2, iPod Touch |
| Samsung_Additional_20110920/CoreMedia/ | iPhone, iPhone 3G, iPhone 3GS, iPhone 4 |
| Samsung_Additional_20120216/148_iOS5.0.1_MP3_10830613/ | iPhone, iPhone 3G, iPhone 3GS, iPhone 4 |
| Samsung_Additional_20111026/Source2/iOS5.0/ | iPhone, iPhone 3G, iPhone 3GS, iPhone 4 |
| Samsung_Additional_20120307/10465379/5.0/AirTraffic-203/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |
| Samsung_Additional_20120307/iTunes 2011-11-18/ | iPhone 3G, iPhone 3GS, iPhone 4, iPod touch (4th Gen.), iPad 2 |

Apple further responds that the versions of iOS 4 software produced by Apple on the source code computer are representative of all commercially released versions of iOS 4 software (iOS 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2,

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

4.3.3, 4.3.4, and 4.3.5) with respect to the features of the Apple Accused Products currently accused in Samsung's Patent Local Rule 3-1 disclosures, and the versions of iOS 5 software produced by Apple on the source code computer are representative of all commercially released versions of iOS 5 software (iOS 5.0 and 5.0.1) with respect to the features of the Apple Accused Products currently accused in Samsung's Patent Local Rule 3-1 disclosures.

As discovery is ongoing, Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 75:**

IDENTIFY all facts supporting APPLE'S Twenty-Fifth Counterclaim (Breach of Contract - FRAND and Other Standard-Related Misconduct).

**RESPONSE TO INTERROGATORY NO. 75**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all facts," it is overly broad and unduly burdensome. Apple further objects to this Interrogatory as premature in advance of expert discovery. Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Objections, Apple responds as follows:

The wireless standards that are relevant to this case relate to a 3rd Generation ("3G") cellular technology called UMTS (Universal Mobile Telecommunications System). The specifications for UMTS are set forth in numerous technical statements published by the 3rd Generation Partnership Project ("3GPP"), which is an alliance of standard-setting organizations ("SSOs"). One of those SSOs, the European Telecommunications Standards Institute ("ETSI"), did much of the work on developing the UMTS standards.

During all times relevant to these allegations, Samsung has been a member of ETSI and participated in a number of ETSI meetings regarding which technical standards to adopt as part

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

of UMTS.  By virtue of its participation in that standard-setting process, Samsung was required to disclose its intellectual property rights relating to UMTS and to commit to license any rights essential to practice any UMTS standards on FRAND terms to anyone wishing to practice that standard.

Clause 8 of ETSI's IPR policy states that if a patent owner refuses to undertake a FRAND commitment, then ETSI may suspend work on relevant parts of the standard or redesign the standard to render that owner's patents non-essential.  Samsung, however, chose to declare its patents and commit to license them on FRAND terms.  Samsung submitted at least seven declarations to ETSI committing to grant irrevocable licenses to its purported essential patents on FRAND terms pursuant to Clause 6.1 of ETSI's IPR policy.  Samsung's (specific) FRAND declaration for each of the asserted patents reads as follows:  "[Samsung] hereby declares that it is prepared to grant irrevocable licenses under the IPRs on terms and conditions which are in accordance with clause 6.1 of the ETSI IPR Policy in respect of the STANDARD, to the extent that the IPRs remain ESSENTIAL."

By committing to license the Declared Essential Patents in Suit to adopters of the UMTS standard on FRAND terms, Samsung entered into contractual commitments with ETSI, ETSI's members, and designers and sellers of products that implement the UMTS standard as described in Apple's response to Interrogatory No. 42, which Apple incorporates by reference as if fully set forth herein.  Samsung breached these contracts by claiming infringement and seeking to enjoin Apple from practicing the UMTS standard, notwithstanding that Apple is licensed to any valid patents covering those claimed inventions or, in the alternative, has the right to a FRAND license to the Declared Essential Patents in Suit by virtue of Samsung's FRAND commitments and Apple's acceptance thereof; and by acting unreasonably and unfairly towards and discriminating against Apple because Apple holds designs, trade dress, trademarks, and non standards-essential patents that Samsung wishes to infringe with impunity.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Additionally, as an independent breach of its contractual obligations to ETSI, and to Apple, Samsung failed to timely disclose its allegedly essential patents in accordance with the requirements of the ETSI IPR Policy.  Clause 4 of the Policy requires, among other things, that members timely disclose any IPR they own that may be essential to standards that have been developed or are being developed as described in response to Interrogatory No. 36, which Apple incorporates by reference as if fully set forth herein.  Clause 4 requires in particular that a participant submitting a technical specification to ETSI, as Samsung did on numerous occasions, make ETSI aware of any IPR that might be essential if that proposal is adopted.

Samsung deliberately and deceptively failed to disclose the existence of its claimed IPR during the standard-setting process while time and again advocating aggressively for adoption into the standard technologies that it believed were covered by its Declared Essential Patents in Suit, all the time intentionally concealing that fact from 3GPP and its members.  Samsung personnel (including named inventors on applications for the concealed patents) frequently participated in the relevant Working Groups and steered the groups to adopt relevant technology into the standard as described in response to Interrogatory No. 39, which Apple incorporates by reference as if fully set forth herein.  The reason for Samsung's intentional failures to disclose its IPR are clear:  it knew that by doing so and by simultaneously and intentionally failing to disclose that it would not offer FRAND license terms for each respective Declared Essential Patent in Suit to all implementers of the standard, it would induce 3GPP to adopt the technologies that it claims are covered by its Declared Essential Patents in Suit.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 76:**

IDENTIFY all facts supporting APPLE'S Twenty-Sixth Counterclaim (Promissory Estoppel).

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**RESPONSE TO INTERROGATORY NO. 76**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all facts," it is overly broad and unduly burdensome.  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Objections, Apple responds as follows:

Apple incorporates by reference its response to Interrogatory 75 as if set forth fully herein.  As set forth above, in Apple's Response to Interrogatory No. 75, Samsung has submitted declarations to ETSI committing to irrevocably license the Declared Essential Patents in Suit on FRAND terms pursuant to Clause 6.1 of ETSI's IPR policy.  Apple, other members of ETSI, and other companies implementing the UMTS standard have reasonably relied on Samsung's FRAND commitments to: (a) grant licenses to those patents and patent applications that Samsung claims are essential on fair, reasonable, and non-discriminatory terms; and (b) not to seek to impose unfair, unreasonable, or discriminatory conditions on licensing, such as demanding cross-licenses of patents covering proprietary technology that is not essential to any standard.

In reliance on Samsung's promises, Apple developed and marketed its products and services, including making its products and services compliant with the UMTS standard.  Samsung reasonably should have expected that Apple would do so.  Indeed, Samsung, as a supplier of components for Apple's UMTS-compliant products, was well aware of the fact that Apple was designing and selling standard-compliant products as early as 2007.  Samsung sold billions of dollars of components for those products to Apple, but never informed Apple that it believed Apple's products to be infringing.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Samsung made clear and definite promises to potential licensees through its commitments to ETSI that it would license the Declared Essential Patents in Suit on FRAND terms.

The intended purpose of Samsung's promises was to induce reliance.  Samsung knew or should have reasonably expected that these promises would induce sellers of mobile wireless devices, like Apple, to develop products compliant with the UMTS standard.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 77:**

IDENTIFY all facts supporting APPLE'S Twenty-Seventh Counterclaim (Declaratory Judgment that APPLE is Licensed to SAMSUNG'S Declared-Essential Patents).

**RESPONSE TO INTERROGATORY NO. 77**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all facts," it is overly broad and unduly burdensome.  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Objections, Apple responds as follows:

Apple incorporates by reference its responses to Interrogatories 41, 42, and 49 as if set forth fully herein.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 78:**

IDENTIFY all facts supporting APPLE'S Twenty-Eighth Counterclaim (Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2).

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

**RESPONSE TO INTERROGATORY NO. 78**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all facts," it is overly broad and unduly burdensome.  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Objections, Apple responds as follows:

Apple incorporates by reference its response to Interrogatory 65 as if set forth fully herein.  Samsung has unlawfully monopolized each of the relevant Input Technologies Markets by deliberately and deceptively failing to timely disclose – before standardization – IPR that Samsung claims covers essential elements of the standard and making false commitments to license IPR on FRAND terms, and by reneging on its FRAND commitments as described in response to Interrogatory No. 75, which Apple incorporates by reference as if fully set forth herein.  Samsung has undertaken this cumulative course of misconduct with the intent to monopolize the relevant Input Technologies Markets.

Had Samsung properly disclosed its IPR in a timely manner and had Samsung disclosed its true intent to assert that parties implementing the standard were not licensed and should be enjoined from selling UMTS compliant products or required to pay exorbitant license fees and accept other non-FRAND terms, 3GPP would have decided to standardize an alternative technology to perform the relevant function.  Alternatively, 3GPP would have continued to leave the relevant function out of the standard, in which case implementers would have been free to choose various alternative technologies to perform that function and 3GPP would have been free to continue to evaluate competing alternative technologies for potential standardization in future iterations of the standard.  Samsung thus would not have obtained a monopoly in the relevant Input Technologies Markets.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Samsung's non-disclosure and false FRAND commitments proximately resulted in incorporation into the standard of technology over which Samsung claims patent rights. Samsung has therefore unlawfully excluded competing technologies from each of the relevant Input Technologies Markets and unlawfully acquired monopoly power in those markets.

As a direct and proximate result of Samsung's monopolization, Apple has suffered injury to its business and property and is threatened by the imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.  Apple suffers anticompetitive injury as a purchaser in the Input Technologies Markets because reasonable substitutes have been excluded.

**INTERROGATORY NO. 79:**

IDENTIFY all facts supporting APPLE'S Twenty-Eighth Counterclaim (Unfair Competition Under Cal. Bus. & Prof. Code § 17200).

**RESPONSE TO INTERROGATORY NO. 79**

Apple objects to this Interrogatory on the grounds that, because it calls for the identification of "all facts," it is overly broad and unduly burdensome.  Apple further objects to this Interrogatory as premature in advance of expert discovery.  Apple also objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity against disclosure.

Subject to and without waiving the foregoing specific objections and General Objections, Apple responds as follows:

Apple incorporates by reference its responses to Interrogatories 75-77 as if set forth fully herein.  Samsung committed unfair business acts or practices by (i) failing to timely disclose its claimed essential IPR; (ii) failing to disclose that it did not intend to meet its FRAND commitments; (iii) suing and then asserting counterclaims against Apple for patent infringement and an injunction, notwithstanding that – as both Samsung knew and a reasonable person would know that – (a) Samsung is precluded from asserting Samsung Asserted Patents against Apple to

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

the extent such patents are substantially embodied in chipsets that Apple buys from licensed suppliers authorized by Samsung to sell such chipsets for incorporation into Apple's products; (b) Apple is impliedly licensed to sell products, as to which Samsung was involved and acquiesced for many years in their production without claiming infringement; and (c) Apple is licensed or, in the alternative, has the right to a FRAND license to Samsung's Declared Essential Patents in Suit by virtue of Samsung's FRAND commitments; (iv) acting unfairly and unreasonably towards and discriminating against Apple in its licensing practices because Apple owns designs, trade dress, trademarks, and non standards-essential patents that Samsung wishes to infringe with impunity.

Apple reserves the right to supplement and/or amend its response as appropriate.

**INTERROGATORY NO. 80:**

IDENTIFY with particularity all alleged trade dresses that YOU claim are infringed by SAMSUNG, including each and every element alleged to be a component thereof.

**RESPONSE TO INTERROGATORY NO. 80**

Apple objects to this Interrogatory as unduly burdensome, overbroad, and impracticable to the extent that it requests Apple to state "all facts" supporting Apple's contention "fully and in detail," especially given the late date in the discovery period at which this Interrogatory was propounded.  Apple further objects to this Interrogatory to the extent it seeks information that: (i) would require Apple to draw a legal conclusion to respond; (ii) is outside of Apple's possession, custody, or control; (iii) can be obtained as easily by Samsung, is already in Samsung's possession, or is publicly available; or (iv) is subject to a confidentiality or nondisclosure agreement or governed by a protective order preventing its production.

Subject to and incorporating its General Objections and its specific objections, Apple responds as follows:

The trade dress Apple alleges are infringed by Samsung are as follows:

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

The "Original iPhone Trade Dress," which means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

The "iPhone 3G Trade Dress," which means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; when the device is on, a row of small dots on the display screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

The "iPhone 4 Trade Dress," which means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower black borders on either side of the screen; a thin metallic band around the outside edge of the phone; when the device is on, a row of small dots on the display screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

The "iPhone Trade Dress," which means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower neutral borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

The "iPad Trade Dress," which means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.

The "iPad 2 Trade Dress" means the following elements of Apple's product designs:  a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the clear flat surface; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.

The trade dress registered in U.S. Trademark Reg. No. 3,470,983, which consists of the image shown in the registration, is described as follows in the trademark registration:  The color(s) black, blue, brown, brown-gray, gray-green, green, orange, red, silver, tan, white and yellow is/are claimed as a feature of the mark.  The mark consists of the configuration of a

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

rectangular handheld mobile digital electronic device with rounded silver edges, a black face, and an array of 16 square icons with rounded edges.  The top 12 icons appear on a black background, and the bottom 4 appear on a silver background. The first icon depicts the letters "SMS" in green inside a white speech bubble on a green background; the second icon is white with a thin red stripe at the top; the third icon depicts a sunflower with yellow petals, a brown center, and a green stem in front of a blue sky; the fourth icon depicts a camera lens with a black barrel and blue glass on a silver background; the fifth icon depicts a tan television console with brown knobs and a gray-green screen; the sixth icon depicts a white graph line on a blue background; the seventh icon depicts a map with yellow and orange roads, a pin with a red head, and a red-and- blue road sign with the numeral "280" in white; the eighth icon depicts an orange sun on a blue background, with the temperature in white; the ninth icon depicts a white clock with black and red hands and numerals on a black background; the tenth icon depicts three brown-gray circles and one orange circle on a black background with a white border, with the mathematical symbols for addition, subtraction, multiplication, and the equal sign displayed in white on the circles; the eleventh icon depicts a portion of a yellow notepad with blue and red ruling, with brown binding at the top; the twelfth icon depicts three silver gears over a thatched black-and-silver background; the thirteenth icon depicts a white telephone receiver against a green background; the fourteenth icon depicts a white envelope over a blue sky with white clouds; the fifteenth icon depicts a white compass with a white- and-red needle over a blue map; the sixteenth icon depicts the distinctive configuration of applicant's media player device in white over an orange background.

The trade dress registered in U.S. Trademark Reg. No. 3,457,218, which consists of the image shown in the registration, is described as follows in the trademark registration:  Color is not claimed as a feature of the mark.  The mark consists of the configuration of a rectangular handheld mobile digital electronic device with rounded corners.  The matter shown in broken lines is not part of the mark.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

The trade dress registered in U.S. Trademark Reg. No. 3,475,327, which consists of the image shown in the registration, is described as follows in the trademark registration:  The color(s) gray, silver and black is/are claimed as a feature of the mark.  The mark consists of the configuration of a handheld mobile digital electronic device.  The material shown in dotted lines, namely, the buttons and openings on the device show the position of the mark in relation to the device and are not considered a part of the mark.  The color gray appears as a rectangle at the front, center of the device.  The color black appears on the front of the device above and below the gray rectangle and on the curved corners of the device.  The color silver appears as the outer border and sides of the device.  The color white is shown solely to identify placement of the mark and is not claimed as a part of the mark.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

Dated:  March 10, 2012

/s/ Mark D. Selwyn
Mark D. Selwyn (SBN 244180)
(mark.selwyn@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:   (650) 858-6100

William F. Lee (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Harold J. McElhinny (SBN 66781)
(HMcElhinny@mofo.com)
Michael A. Jacobs (SBN 111664)
(MJacobs@mofo.com)
Richard S.J. Hung (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: ( 415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant Apple Inc.

APPLE INC.'S RESPONSES TO SAMSUNG'S
FOURTH SET OF INTERROGATORIES
Case No. 11-cv-01846 (LHK)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS CONFIDENTIAL INFORMATION**

1

2

**CERTIFICATE OF SERVICE**

3

        The undersigned hereby certifies that a true and correct copy of the above and foregoing

4

document has been served on March 10, 2012 by electronic mail upon the following:

5

Charles Kramer Verhoeven (Cal. Bar No. 170151)
(charlesverhoeven@quinnemanuel.com)

6

Quinn Emanuel Urquhart & Sullivan LLP
50 California Street, 22nd Floor

7

San Francisco, California 94111
Telephone: (415) 875-6600

8

Facsimile:  (415) 875-7600

9

Kevin P.B. Johnson (Cal. Bar No. 177129)
(kevinjohnson@quinnemanuel.com)

10

Victoria F. Maroulis (Cal. Bar No. 202603)
(victoriamaroulis@quinnemanuel.com)

11

Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Drive 5th Floor

12

Redwood Shores, California 94065
Telephone: (650) 801-5000

13

Facsimile: (650) 801-5100

14

Edward J. DeFranco (Cal. Bar No. 165596)
(eddefranco@quinnemanuel.com)

15

Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor

16

New York, New York 10010
Telephone: (212) 849-7000

17

Facsimile: (212) 849-7100

18

Michael T. Zeller (Cal. Bar No. 196417)
(michaelzeller@quinnemanuel.com)

19

Quinn Emanuel Urquhart & Sullivan LLP

20

865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

21

Telephone: (213) 443-3000
Facsimile: (213) 443-3100

22

23

                                                /s/ Mark. D Selwyn
                                               Mark D. Selwyn

24

25

26

27

28