**PROPOSED FINAL JURY INSTRUCTION NO. 6**
**EVIDENCE ADMITTED FOR LIMITED PURPOSES**

~~Some evidence may be admitted for a limited purpose only.~~

When I ~~instruct~~instructed you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

~~[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and for no other purpose.]~~

**Model Instruction~~:~~**

Ninth Circuit Model Civil Jury Instruction 1.8 (modified as to tense).

# UTILITY PATENT JURY INSTRUCTIONS

**PROPOSED FINAL JURY INSTRUCTION NO. 14**
**UTILITY PATENTS—INFRINGEMENT UNDER THE DOCTRINE OF**
**EQUIVALENTS**

If you decide that [alleged infringer]'s [product] [method] doesthe products accused of infringing Samsung's '460 patent do not literally infringe an asserted patent claim, you must then decide whether that [product] [method] infringesthose products infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the [product] [method] can infringe an asserted utility patent claim if it includes [parts] [steps] that are identical or equivalent to the requirements of the claim. If the [product] [method] is missing an identical or equivalent [part] [step] to even one requirement of the asserted utility patent claim, the [product] [method] cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted utility patent claim and decide whether the [product] [method] has either an identical or equivalent [part] [step] to that individual claim requirement.

A [part] [step] of a [product] [method] is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the [part] [step] and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

[One way to decide whether any difference between a requirement of an asserted claim and a [part] [step] of the [product] [method] is not substantial is to consider whether, as of the time of the alleged infringement, the [part] [step] of the [product] [method] performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.]

[In deciding whether any difference between a claim requirement and the [product] [method] is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the [part] [step] with the claimed requirement. The known interchangeability between the claim requirement and the [part] [step] of the [product] [method] is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the [part] [step] in the [product] [method] and the claim requirement is not substantial. The fact that a [part] [step] of the [product] [method] performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.]

[You may not use the doctrine of equivalents to find infringement if you find that [alleged infringer]'s [product] [method] is the same as what was in the prior art before the application for

the [     ] patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.][1]

[You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the [     ] patent but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.]

**Model Instruction**

N.D. Cal. Model Patent Jury Instr. B.3.4.

---

[1]  If this instruction is applicable in a given case, then the court should instruct the jury that if [alleged infringer] has offered evidence sufficient to show that the accused [product] [method] is in the prior art, the burden shifts to the [patent holder] to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.  *See Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *Ultra Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000); *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999).[1]

## PROPOSED FINAL JURY INSTRUCTION NO. 15.1
## UTILITY PATENT INFRINGEMENT OF '460 METHOD CLAIM

Before you decide whether [alleged infringer] has infringed the claim[s] of the patent or whether the claim[s] [is][are] invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claim[s] that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

[Court gives its claim interpretation. This instruction must be coordinated with instruction 3.5 "Means Plus Function Claims Literal Infringement" if the claims at issue include means-plus-function limitations.]

In this case, Samsung asserts that Apple infringes Claim 1 of the '460 patent which is known as a method claim. Method claims are commonly drafted by describing the method as comprising certain steps followed by a list of actions that comprise the method that is claimed.

[As I've already instructed you,] if the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open method claim is infringed as long as every step in the claim is performed by the user. The fact that the user may perform additional steps will not avoid infringement, as long as the user performs every step set forth in the method claim.

Absent language specifying a specific order in which the steps are to be informed, the steps need not be performed in sequential order to find infringement.

Here, I have already determined that the steps of the '460 Patent do not need to be performed in order. You must accept that interpretation as correct. My interpretation should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

**Model Instruction**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.

## PROPOSED FINAL JURY INSTRUCTION NO. 19
## UTILITY PATENTS—STATUTORY BARS

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Here is a list of ways [an alleged infringer] can show that the patent application was not timely filed:  [choose those that apply]

[– if the claimed invention was already patented or described in a printed publication anywhere in the world before [insert date that is one year before effective filing date of patent application].  [A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.];]

[– if the claimed invention was already being openly used in the United States before [insert date that is one year before the application filing date] and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;]

[– if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before [insert date that is one year before the application filing date].  [The claimed invention is not being [sold] [or] [offered for sale] if the [patent holder] shows that the [sale] [or] [offer for sale] was primarily experimental.]  [The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use the invention based on them.];].

[– if the [patent holder] had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.]

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of [identify field] looking at the reference to make and use the claimed invention.

**Model Instruction**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a2.

**PROPOSED FINAL JURY INSTRUCTION NO. 19.1**
**UTILITY PATENTS—INDEFINITENESS**

[*See* ~~Dkt. No. 1809]~~

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the ~~particularinvention~~particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

Defendant contends that claim~~s~~ 50 of the '163 patent is ~~are~~ invalid because the ~~language of the claims~~ term "substantially centered" is indefinite.  ~~[[Defendant]] contends that claims _____ of the _____ patent are indefinite because they use the word "about" to modify the claim term _____.~~  The use of the word ~~"about"~~ "substantially" or similar language, does not by itself cause the claim to be indefinite.  In order to decide whether or not the word~~s "about"~~ "substantially centered" in claim~~s~~ 50 renders ~~those~~ the claim~~s~~ indefinite, you must consider whether or not the '163 patent provides some guidance about what is included within the claim term ~~"about _____"~~ "substantially centered."  You must also consider whether or not a person of ordinary skill in the field reading the patent would understand what is included within the claim term.~~]~~

If you find that [defendant] has proved that it is highly probable that claim~~s~~ 50 of the '163 patent ~~are~~ is indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claim~~s~~, you must then find that ~~those~~ the claim~~s~~ ~~are~~ is invalid.


**Model Instruction**

Federal Circuit Bar Association Model Patent Jury Instruction, Section 10.5 (2002).

## PROPOSED FINAL JURY INSTRUCTION NO. 24
## UTILITY PATENT DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages for patent infringement.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that [the alleged infringer] infringed any valid claim of the [        ]a patent, you must then determine the amount of money damages to be awarded to [the patent holder] (to compensate it for the infringement. You should evaluate damages separately for each party you find to have infringed.

The amount of those damages must be adequate to compensate [the patent holder] for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

[PatentEach patent holder] has the burden to persuade you of the amount of its damages.  You should award only those damages that [the patent holder] more likely than not proves it suffered by a preponderance of the evidence.  While [the patent holder] is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  [PatentThe patent holder] is not entitled to damages that are remote or speculative.

**Model Instruction**

N.D. Cal. Model Patent Jury Instr. B.5.1 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 25**
**UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY**

In this case, ~~[patent holder]~~Apple seeks to recover lost profits for some of ~~[alleged infringer]'s sales of [infringing product], and a reasonable royalty on the rest of [alleged infringer]'s sales~~Samsung's sales of certain products.  Samsung does not seek to recover lost profits for Apple's sales of allegedly infringing products.

To recover lost profits for infringing sales, ~~[patent holder]~~Apple must show that, but for the infringement, there is a reasonable probability that it would have made sales that ~~[alleged infringer] made of the~~Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America made of each allegedly infringing product.  ~~[Patent holder]~~Apple must show the share of ~~[alleged infringer]~~Samsung's sales of each product that it would have made if the allegedly infringing product had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature or design of each of the allegedly infringing ~~[product] [method]~~products.  That is, you must determine which profits derive from the patented invention ~~that [alleged infringer]~~or design that Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America allegedly sells, and not from other features of ~~the~~these allegedly infringing ~~[product] [method]~~products.

**Model Instruction**

N.D. Cal. Model Patent Jury Instr. B.5.2 (modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 26
## UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER

~~[Patent holder]~~Apple is entitled to lost profits if it proves all of the following:

(1)    that there was a demand for the patented ~~[product] [method] [product produced by the method]~~inventions and designs [alternate: that there was demand for the patented products];

~~(2)~~ (2) that there were no non-infringing substitutes for each of the allegedly infringing products, or, if there were, the number of the sales ~~made by [alleged infringer] that [patent holder]~~of each product made by Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether ~~[alleged infringer]~~Samsung had to design or invent around the patented technology to develop an alleged substitute;

~~(3)~~ (3) that ~~[patent holder]~~Apple had the manufacturing and marketing capacity to make any infringing sales actually made by ~~the infringer~~Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America and for which ~~[patent holder]~~Apple seeks an award of lost profits; and

~~(4)~~ (4) the amount of profit that ~~[patent holder]~~Apple would have made if ~~[alleged infringer] had not~~Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America had not allegedly infringed.

**Model Instruction**

N.D. Cal. Model Patent Jury Instr. B.5.3 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 28**
**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

Both Samsung and Apple seek an award of a reasonable royalty for the alleged infringement of their respective patents.

If [the holder of a patent holder]does not seek lost profits, or has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales alleged to infringe the patent, then [the patent holder] should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A reasonable royalty must be limited to compensation for the economic harm caused by infringement of the claimed invention.

**Model Instruction**

N.D. Cal. Model Patent Jury Instr. B.5.6 (modified).

## PROPOSED Final JURY INSTRUCTION NO. 29
## UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at prior to the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.   You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 10,000 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.  Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product.  In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for Samsung and/or Apple.

## Model Instruction

N.D. Cal. Model Patent Jury Instr. B.5.7 (modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 29.1
## DAMAGES—REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty for Samsung and/or Apple, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)   (1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)   (2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)   (3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)   (4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)   (5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)   (6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)   (7) The duration of the patent and the term of the license.

(8)   (8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)   (9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)   (10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)   (11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)   (12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)   (13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)   ~~(14)~~ The opinion and testimony of qualified experts.

(15)   ~~(15)~~ The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**Model Instruction**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.7 (modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 31
## UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS

Damages ~~that [patent holder] may be awarded by you~~ commence on the date that [the alleged infringer] has both infringed and been notified of the [    ] ~~patent: [use those that apply to this case]~~alleged infringement of the patent.

If you find that [the patent holder] sells a product that includes the claimed invention, you must determine ~~whether [patent holder] has "marked" that product with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent number on substantially all of the products that include the patented invention. [Patent holder] has the burden of establishing that it substantially complied with the marking requirement. This means [patent holder] must show that it marked substantially all of the products it made, offered for sale, or sold under the [ ] patent, [and that [patent holder] made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the [ ] patent marked the products].[If [patent holder] has not marked that product with the patent number, you must determine~~ the date that [the alleged infringer] received actual notice of the ~~[ ]~~ patent and the specific product alleged to infringe.~~]~~ Actual notice means that [the patent holder] communicated to [the alleged infringer] a specific charge of infringement of the ~~[ ]~~patent by a specific accused product or device.  The filing of the complaint and counterclaims in this case qualified as actual notice, so the damages period begins no later than the ~~date~~dates the complaint ~~was~~and counterclaims were filed. ~~[However, [patent holder] claims to have provided actual notice prior to filing of the complaint, on [date], when it [sent a letter to [alleged infringer]].~~ ~~[Patent holder]~~ The patent holder has the burden of establishing that it is more probable than not ~~[the~~ alleged infringer~~]~~ received notice of infringement ~~on [date].]~~before the complaint and counterclaims were filed.

~~[~~If you find that [the patent holder] ~~[choose A]~~ does not sell a product covered by the ~~[ ] patent [or choose B] sells such a product but marks the product with the patent number~~patent, damages begin without the requirement for actual notice. If you find that the ~~[ ]~~ patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If you find that the ~~[ ]~~ patent was granted after the infringing activity began, damages should be calculated as of [the date the patent issued~~].]~~

While you may identify an earlier date by which Apple had actual notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011.  With respect to Samsung's U.S. Patent No. 7,577,460, damages should be calculated as of August 18, 2009, because Samsung is asserting only method claims from that patent.

While you may identify an earlier date by which Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America had actual notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381, '915 and D'677 patents by no later than April 15, 2011, and for the '163, D'305, D'889 and D'087 patents by no later than June 16, 2011.

**Model Instruction**

N.D. Cal. Model Patent Instr. B.5.8 (modified).

**DESIGN PATENT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 32**
**DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS**

(First Instruction)

Before you decide whether ~~[the Defendant] has infringed the claims of [the Plaintiff's] patent~~Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America have infringed one or more of the asserted design patents, or whether ~~[the Plaintiff's] patent is~~the design patents are invalid, you will have to understand the design patent claims. ~~The patent claims are numbered sentences at the end of the patent. The patent claims involved here are [claims in dispute], beginning at column ____, line ____ of the patent, which is exhibit ____ in evidence. The claims are intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.~~

Unlike utility patents, a design patent can only have one claim. That claim covers all the figures in the patent. It is permissible to illustrate more than one embodiment of a design in a single design patent application. Multiple embodiments may be presented only if they are directed to substantially the same design and are not patentably distinct from one another.

**Model Instruction**

AIPLA Model Jury Instruction 2.

(Second Instruction)

It is my job as ~~judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.~~ a judge to interpret for you what is claimed by the patents. You must accept my interpretations as correct. My interpretations should not be taken as an indication that I have an opinion one way or another regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

[READ ~~STIPULATIONS AND~~ COURT''S CLAIM CONSTRUCTIONS]

~~You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.~~

**Model Instruction**

AIPLA Model Jury Instruction 2.

**PROPOSED FINAL JURY INSTRUCTION NO. 34**
**DESIGN PATENTS—DIRECT INFRINGEMENT**

Questions _____ through _____ of the Verdict Form read as follows:  [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether [the Plaintiff] has proven that [the Defendant] infringed any of the claims of the [abbreviated patent number] patent Apple has proven that one or more of the Samsung entities has infringed the D'677, D'087, D'305 and/or D'889 design patents.

Patent law gives the owner of a valid design patent the right to exclude others from importing, making, using, offering to sell, or selling [[the patented invention] [a product made by a patented method]] applying the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or selling or offering to sell any article of manufacture to which such design or colorable imitation has been applied within the United States during the term of the patent.  Any person or business entity company that has engaged in any of those acts without the design patent owner's permission infringes the patent.  Here, [the Plaintiff] alleges that [the Defendant]'s [allegedly infringing product] infringes claim[s] [claims in dispute] of [the Plaintiff]'s [abbreviated patent number] patent.  Apple alleges that the following devices infringe the D'677, D'087, D'305 and D'889 design patents:

You have heard evidence about both [the Plaintiff]'s commercial [[product] [method]] and [the Defendant]'s accused [[product] [method]].  However, in deciding the issue of infringement you may not compare [the Defendant]'s accused [[product] [method]] to [the Plaintiff]'s commercial [[product] [method]].  Rather, you must compare the [Defendant]'s accused [[product] [method]] to the claims of the [abbreviated patent number] patent when making your decision regarding infringement.

A patent may be infringed directly or indirectly.  Direct infringement results if the accused [[product][method]] is covered by at least one claim of the patent.  Indirect infringement results if the defendant induces another to infringe a patent or contributes to the infringement of a patent by another.

| Design Patent(s) | Device(s) Accused of Infringing |
|---|---|
| D'677 | Samsung Galaxy Ace (SHW-M240S); Samsung Infuse 4G (SGH-I997); Samsung Galaxy S i9000 (SHW-M1105); Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize); Samsung Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959). |
| D'087 | Samsung Galaxy Ace (SHW-M240S); Samsung Infuse 4G (SGH-I997); Samsung Galaxy S i9000 (SHW-M1105); Samsung Galaxy Fascinate (SCH-I500) (a/k/a Galaxy Showcase and Galaxy Mesmerize); Samsung |

| | Galaxy S 4G (SGH-T959V) / Vibrant (SGH-T959). |
|---|---|
| D'305 | Captivate; Continuum; Droid Charge; Epic 4G; Fascinate; Gem; Galaxy S i9000; Galaxy S 4G; Indulge; Infuse 4G; Mesmerize; Showcase; Galaxy S Showcase i500; and Vibrant. |
| D'889 | Galaxy Tab 10.1 |
| | |

Each of the Samsung entities deny that any of these devices infringe any Apple design patent. Apple bears the burden of proving by a preponderance of the evidence its allegations that each device infringes each separate patent. Therefore, you the jury must determine infringement for each patent separately, considering each individual device separately. You must not consider the patents or devices in groups to determine infringement on that basis.

**Model Instruction**

AIPLA Model Patent Jury Instructions 3.0.

**PROPOSED FINAL JURY INSTRUCTION NO. 34.2
DESIGN PATENT DIRECT INFRINGEMENT – LIABILITY MUST BE PROVED FOR
EACH ENTITY SEPARATELY**

In this case, [the Plaintiff] asserts that [the Defendant] has directly infringed the patent. [The Defendant] would be liable for directly infringing [the Plaintiff]'s patent if you find that [the Plaintiff] has proven that it is more likely than not that [the Defendant] has Apple asserts that Samsung Electronics America, Samsung Telecommunications America, and Samsung Electronics Company have each directly infringed the D'677, D'087, D'305 and D'889 design patents. Even if you determine that a particular device infringes one of the patents, you may not find any of the Samsung entities liable for direct infringement unless Apple proves by a preponderance of the evidence that the particular Samsung entity has, in the United States, made, used, offered to sell, or sold the invention defined in at least one claim of [the Plaintiff]'s patent. device. You must determine this liability separately for each Samsung entity and each device.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

**Model Instruction**

AIPLA Model Patent Jury Instructions, 3.1.

**PROPOSED FINAL JURY INSTRUCTION NO. 34.6**
**DESIGN PATENT PROSECUTION HISTORY ESTOPPEL**

You are instructed that the ~~doctrine of equivalents is~~scope of a design patent can be limited by what is called "prosecution history estoppel."  As you have already heard, during prosecution of ~~the~~a patent, the patent applicant often makes arguments and amendments in an attempt to convince the ~~PTO~~Patent Office examiner to grant the patent.  The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once it has done so, it is not entitled to patent coverage ~~under the doctrine of equivalents~~ that would be ~~so~~ broad ~~that it would~~enough to cover the same feature that was used to distinguish the invention during the prosecution of the patent.

~~In this case, you are instructed that prosecution history estoppel applies and the doctrine of equivalents analysis cannot be applied to the following elements of the asserted claims:~~You are instructed that prosecution history estoppel applies in the following way:

~~[LIST ELEMENTS ON A CLAIM BY CLAIM BASIS]~~

~~Unless each of these elements is literally present within [the Defendant's] [[product] [method]], there can be no infringement of the claim.~~

Apple overcame a non-final obviousness rejection by the Patent Office during prosecution of the D'677 patent by claiming that the design disclosed the overall impression of a substantially continuous transparent surface on an electronic device and the substantially smooth or flush transition between the display screen and the rest of the front face of the device.  The D'677 patent is not entitled to broader coverage than this description.

**Model Instruction**

AIPLA Model Jury Instruction 3.13.

## PROPOSED FINAL JURY INSTRUCTION NO. 36.1
## ANTICIPATION – A SINGLE REFERENCE OR A SINGLE PRODUCT

A person cannot obtain a patent if someone else already has made an identical invention.  Simply put, the invention must be new.  An invention that is not new or novel

Now that you have been instructed about prior art, I'll explain how it can be used to determine whether a design patent is invalid.  In basic terms, the design must be new and novel in light of the prior art.  A design that is not new or novel in light of prior art is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention A design that is "anticipated" is not entitled to patent protection.  To prove anticipation, [the Defendant] must prove with clear and convincing evidence that the claimed invention is not new.

In this case, [the Defendant] contends that the claims of the [abbreviated patent number] patent are anticipated.  [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANT'S INVALIDITY DEFENSE, FOR EXAMPLE: "First, [the Defendant] contends that the invention of claims 1, 2, and 3 of the ____ patent was described in the July, 1983 article published by Jones in THE JOURNAL OF ENDOCRINOLOGY."]

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior [[publication] [patent] [etc.]], you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular [[publication] [patent] [etc.]].

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior [[publication] [invention] [etc.]], but also what inherently resulted from its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the prior art either necessarily resulted in the missing descriptive matter and that it would be so recognized by a person of ordinary skill in the art at the time the patent application was filed  It is not required, however, that the person of ordinary skill would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case.  There are additional requirements that apply to the particular categories of anticipation that [the Defendant] contends apply in this case. I will now instruct you about those.

The same standard of deceptive similarity that applied to infringement also applies to anticipation.  Therefore, to find that an Apple design patent is anticipated, Samsung must prove by clear and convincing evidence that a single prior art reference is so similar in appearance to the Apple patent that an ordinary observer would be deceived into believing they were the same design.

**Model Instruction**

Adapted from AIPLA Model Patent Jury Instructions, 6.0.

**PROPOSED FINAL JURY INSTRUCTION NO. 36.3**
**ANTICIPATION—DATE OF INVENTION**

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of [identify field] looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that [alleged infringer] can show that a patent claim was not new [use those that apply to this case]:

[  if the claimed invention was already publicly known or publicly used by others in the United States before [insert date of conception unless at issue];]

[  if the claimed invention was already patented or described in a printed publication anywhere in the world before [insert date of conception unless at issue].  [A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.];]

[  if the claimed invention was already made by someone else in the United States before [insert date of conception unless in issue], if that other person had not abandoned the invention or kept it secret;]

[  if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before [insert date of the patent holder's application filing date] [or] [insert date of conception unless at issue];]

[  if [named inventor] did not invent the claimed invention but instead learned of the claimed invention from someone else;]

[  if the [patent holder] and [alleged infringer] dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced it to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and (b) continued to work diligently to reduce it to practice.  [A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO].]

[Since it is in dispute, you must determine a date of conception for the [claimed invention] [and/or] [prior invention].  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.]

Since the date of invention of the Apple design patents is in dispute in this case, you must determine whether Apple has proved the dates its designs were invented.  If you determine that Apple has not proved when its designs were invented, you must assume that it was not until the filing date of the patents.

**Model Instruction**

N.D. Cal. Model Patent Instructions, B.4.3.a1.

**PROPOSED FINAL JURY INSTRUCTION NO. 38**
**DESIGN PATENT OBVIOUSNESS**

[From Dkt. No. 1818 at Appendix B]

Even if a design is not anticipated by a single reference, it may still be invalid because it was an obvious design at the time it was made.  Design patents are not valid when the design is an obvious one.  This means that it would have been obvious for a designer of skill in the field to combine earlier designs or to modify a single earlier design to arrive at the design in the patent.

YouIn deciding whether any design is invalid because it was obvious at the time it was made, you should analyze whether there are any relevant differences between the prior art and the claimed inventiondesign from the view of a person of ordinary skill in the art at the time of the invention.  Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, youYou do not need to look for precise teachingteachings in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps and inferences that a person of ordinary skill in the art would have employed in reviewingwhen viewing the prior art at the time of the invention.  For example, if the claimed invention combinedcombines elements already known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, aA claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed inventiondesign, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that [the Defendant] contends is obvious.

**Model Instruction**

AIPLA Model Jury Instruction 7.2

**PROPOSED FINAL JURY INSTRUCTION NO. 40**
**DESIGN PATENT DAMAGES—BURDEN OF PROOF**

[*See* Samsung Proposed Instruction No. 24, *supra*.]

**PROPOSED FINAL JURY INSTRUCTION NO. 41**
**DESIGN PATENT DAMAGES—LOST PROFITS**

[*See* Samsung Proposed Instruction No. 25, *supra*.]

**PROPOSED FINAL JURY INSTRUCTION NO. 41.1**
**DESIGN PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

[*See* Samsung Proposed Instruction No. 26, *supra*.]

**PROPOSED FINAL JURY INSTRUCTION NO. 43**
**DESIGN PATENT DAMAGES—REASONABLE ROYALTY—**
**ENTITLEMENT—DEFINITION**

[*See* Samsung Proposed Instruction No. 27, *supra*.]

**PROPOSED FINAL JURY INSTRUCTION NO. 43.1**
**DESIGN PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

[*See* Samsung Proposed Instruction No. 28, *supra*.]

**PROPOSED FINAL JURY INSTRUCTION NO. 43.2**
**DESIGN PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

[*See* Samsung Proposed Instruction No. 29, *supra*.]

**PROPOSED FINAL JURY INSTRUCTION NO. 44**
**DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

[*See* Samsung Proposed Instruction No. 37, *supra*.]

# INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS

**PROPOSED JURY INSTRUCTION NO. 45.1**
**INDUCING PATENT INFRINGEMENT**

[Patent holder]Apple argues that [alleged infringer]Samsung's Korean parent, SEC, has actively induced another to infringe the [    ] patent. its subsidiaries in the United States, STA and SEA, to infringe Apple's utility patents.  Samsung argues that Apple has actively induced third parties to infringe Samsung's utility patents.

In order for there to be inducement of infringement by [an alleged infringer], someone else must directly infringe a claim of the [    ] patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, [the alleged infringer] must:

> 1. 1. have intentionally taken action that actually induced direct infringement by another;

> 2. 2. have been aware of the [        ]patent; and

> 3. 3. have known that the acts it was causing would be infringing.

If [the alleged infringer] did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that [the accused infringer] was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that [the accused infringer] took a risk that was substantial and unjustified.

If you find that [the alleged infringer] was aware of the patent, but believed that the acts it encouraged did not infringe that patent[, or that the patent was invalid,]² [ the alleged infringer] cannot be liable for inducement.  [[Alleged infringer]'s reliance on advice given by their lawyers is one factor you may consider in deciding whether [alleged infringer] believed that it was not encouraging infringement of the patent[, or that the patent was invalid.]]

**Model Instruction**

N.D. Cal. Model Patent Jury Instr. B.3.9.

---

² Case law does not resolve the question whether one who knows that they are encouraging infringement of a patent but believes that patent to be invalid has the requisite intent to induce infringement.  The logic by which belief in noninfringement exculpates would seem to extend to a belief in invalidity as well.

**PROPOSED FINAL JURY INSTRUCTION NO. 45.3
CALCULATING DAMAGES IN CASES OF INDUCEMENT**

Apple asserts that Samsung Electronics Company has actively induced Samsung Electronics America and Samsung Telecommunications America to infringe Apple's patents.

Samsung asserts that Apple has actively induced another to infringe Samsung's patents.

In order to recover damages for induced infringement, [the patent holder] must either prove that the [accused product] necessarily infringes the [patent in suit] or prove acts of direct infringement by others that were induced by [the accused infringer].  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, [the patent holder] must further prove the number of direct acts of infringement of the [patent in suit], for example, by showing individual acts of direct infringement or by showing that a particular class of [products] [uses] directly infringes.  In order to recover damages for contributory infringement, [patent holder] must either prove that the [accused product] necessarily infringes the [patent in suit] or prove acts of direct infringement by others to which [accused infringer] made a substantial contribution.  Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, [patent holder] must further prove the number of direct acts of infringement of the [patent in suit], for example, either patent in suit, for example, by showing individual acts of direct infringement or by showing that a particular class of [products] [uses] directly infringes.

**Model Instruction**

N.D. Cal. Model Patent Instr. B.5.9 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 46**
**DESIGN AND UTILITY PATENTS—WILLFUL PATENT INFRINGEMENT**

In this case, [patent holder]Apple argues both that [alleged infringer]Samsung infringed and, further, that [alleged infringer]Samsung infringed willfully. Likewise, Samsung argues that Apple infringed and, further, that Apple infringed willfully. If you have decided that [the alleged infringer] has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that [alleged infringer]a determination that the alleged infringer acted recklessly.

To prove that [alleged infringer] acted willfully, [patent holder] must prove two things by clear and convincing evidence: First, that there was a high likelihood that [alleged infringer]'s actions infringed a valid patent. In making this determination, you may not consider [alleged infringer]'s state of mind, but you may take into account the normal standards of commerce. Second, if you find this threshold is satisfied, you must also findthe alleged infringer acted recklessly, the patent holder must prove the state of mind of the alleged infringer by clear and convincing evidence. The patent holder must persuade you by clear and convincing evidence that this objectively defined risk was either known or so obvious that itthe alleged infringer actually knew or should have been known to [known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether the alleged infringer]. To do had this state of mind, you must consider all of the facts, which may include, but are not limited, to:

        (1)     Whether or not [the alleged infringer] acted in accordance with the standards of commerce for its industry;

        (2)     Whether or not the alleged infringer intentionally copied a product of [the patent holder] that is covered by the [ ] patent;

        (23)     Whether or not there is a reasonable basis to believe that [the alleged infringer] did not infringe or had a reasonable defense to infringement;

        (34)     Whether or not [the alleged infringer] made a good-faith effort to avoid infringing the [ ] patent, for example, whether [the alleged infringer] attempted to design around the [ ]patent; [and]

        (45)     Whether or not [the alleged infringer] tried to cover up its infringement[.]; and]

    (5) [Give this instruction only if [alleged infringer] relies upon an opinion of counsel as a defense to an allegation of willful infringement:

[Alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the [ ] patent or (2) that the [ ] patent was invalid [or unenforceable]. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

**Model Instruction**

Federal Circuit Model Patent Jury Instr. B.3.8.

# TRADE DRESS JURY INSTRUCTIONS

**PROPOSED FINAL JURY INSTRUCTION NO. 47**
**TRADE DRESS DILUTION AND INFRINGEMENT—INTRODUCTION**

~~The plaintiff, [name of plaintiff],~~Apple seeks damages ~~against the defendant, [name of defendant], for [trademark infringement] [unfair competition]. The defendant~~from Samsung for trade dress infringement and dilution arising from Samsung's sale of certain phones and tablets. Samsung denies ~~[~~infringing ~~the trademark] [unfairly competing] [and] [~~or diluting Apple's alleged trade dresses and contends ~~the trademark is~~they are invalid~~]. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.~~. Here are the instructions you must follow in deciding these claims.

**Model Instruction**

Ninth Circuit Model Civil Jury Instr. ("Model Instructions") No. 15 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 48**
**TRADE DRESS DILUTION AND INFRINGEMENT—DEFINITION OF TRADE DRESS**
**(15 U.S.C. § 1125(A))**

Trade dress is the non-functional physical detail and design of a product or its packaging, which [indicates] [or] [identifies] the product's source and distinguishes it from the products of others. Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a personcompany presents a product or service to the market, its manner of display.

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements [is not essential to the product's use or purpose] [or] [does not affect the cost or quality of the product] even though certain particular elements of the trade dress may be functional.

A person who uses the trade dress of another may be liable for damages

The trade dresses at issue in this case involve certain products sold by Apple.  Trade dress rights in product designs are more limited than rights in trade dress packaging cases because most product designs are intended to make the product more useful or more appealing to consumers and are not intended to identify the source of the product.

**Model Instruction**

Ninth Circuit Model Instructions No. 15.2 (modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 48.1
## TRADE DRESS LIABILITY—THEORIES AND POLICIES

The ~~trademark~~trade dress laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

~~In my instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for:~~

~~[1. infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers][;]~~

~~[2. unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]~~

~~[3. unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]~~

~~[4. infringing plaintiff's trade name, by using similar corporate, business or professional names in a manner likely to cause confusion about the source of products in the minds of consumers] [;] [and]~~

~~[5. false advertising, by making a false statement that was material and that tended to deceive consumers, injuring the plaintiff in the market].~~

~~**Source**~~

**Model Instruction**

Ninth Circuit Model Instructions No. 15.4 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 50**
**TRADE DRESS DILUTION AND**
**INFRINGEMENT—VALIDITY—DISTINCTIVENESS—SECONDARY MEANING**

To prove infringement of its claimed iPad and iPad 2-related trade dresses, Apple has the burden of proving by a preponderance of the evidence that the claimed trade dresses are distinctive.

If you determined in Instruction [insert number of instruction e.g. 15.9] that [identify plaintiff's claimed trademark] is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the trademark's "secondary meaning." A [word] [symbol] [term] acquires aTo prove distinctiveness, Apple must show that its claimed trade dresses have "secondary meaning."  Trade dress has secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You

To find that the claimed trade dress have acquired secondary meaning, you must find that the by a preponderance of the evidence shows that a significant number of the consuming publicproportion of prospective purchasers of tablet computers associates the [identify the alleged trademark]claimed trade dress with a single source, in order to find that it has acquired secondary meaning..

When you are determining whether [describe symbol or term]the claimed trade dress has acquired a secondary meaning, you may consider the following factors:

　　　　1.　　Consumer Perception.  Whether the people who purchase the [product] [service] that bears the claimed trademark associate the trademark with the [owner] [assignee] [licensee];tablet computers associate the claimed trade dress with Apple;

　　　　2.　　Advertisement.  To what degree and in what manner the [owner] [assignee] [licensee]Apple may have advertised underfeaturing the claimed trademarktrade dress;

　　　　3.　　Demonstrated Utility.  Whether the [owner] [assignee] [licensee]Apple has successfully used this trademarkthe claimed trade dress to increase the sales of its [product] [service]iPad or iPad 2;

　　　　4.　　Extent of Use. The length of time and manner in which the [owner] [assignee] [licensee]Apple has used the claimed trademark;trade dress;

　　　　5.　　Exclusivity.  Whether the [owner's] [assignee' s] [licensee' s]Apple's use of the claimed trademarktrade dress was exclusive;

　　　　6.　　Copying.  Whether the defendantSamsung intentionally copied the [[owner' s] [assignee's] [licensee' s]] trademark;Apple's alleged trade dress.

7.     <u>Actual Confusion</u>. Whether ~~the defendant~~Samsung's use of ~~the plaintiff's trademark~~Apple's alleged trade dress has led to actual confusion among a significant number of consumers~~; and~~     ~~8. [Insert any other factors that bear on secondary meaning]~~.

The presence or absence of any particular factor should not necessarily resolve whether ~~[identify the alleged trademark] has~~the claimed trade dresses have acquired secondary meaning.

~~Descriptive marks~~Apple's claimed trade dresses are protectable (or valid) only to the extent you find ~~they~~it has acquired distinctiveness ~~[~~through secondary meaning ~~[[by the public coming to associate the mark with the [owner of the mark] [a particular source]]]. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are~~. If either the claimed iPad or iPad 2 trade dress has not required a sufficient level of secondary meaning, then that trade dress is invalid and not entitled to ~~no~~ protection and ~~cannot be considered a valid mark.~~ your verdict on that trade dress must be for Samsung.

~~[The plaintiff has the burden of proving that the [identify plaintiff's trademark] has acquired a secondary meaning.] [The defendant has the burden of proving that the [identify plaintiff's trademark] lacks a secondary meaning.]~~

~~The mere fact that the plaintiff is using [describe symbol or term], or that the plaintiff began using it before the defendant, does not mean that the trademark has acquired secondary meaning. There is no particular length of time that a trademark must be used before it acquires a secondary meaning.~~

**Model Instruction**

Ninth Circuit Model Instruction 15.10 (modified)~~.~~

~~.~~

**PROPOSED FINAL JURY INSTRUCTION NO. 51**
**TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY—**
**NON-FUNCTIONALITY REQUIREMENT**

Trade dress that is functional is invalid and not protectable.  You must decide whether the alleged trade dresses asserted by Apple in this action are functional.

There are two types of functionality you should consider in deciding whether Apple's claimed trade dresses are functional:  utilitarian functionality and aesthetic functionality.  If any of Apple's claimed trade dresses are functional in either of these ways, that trade dress is invalid and you must find for Samsung on it.

- Utilitarian functionality means that a claimed feature of the trade dress is:

A product feature is functional if it is(a) essential to the product's use or purpose, *or* if it

(b) affects the product's cost or quality of the product.

It is non-functional if its shape or form makes no contribution to the product's function or operation.  If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional.  However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.

To determine whether a product's particular shape or form is functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form are essential to the product's use or purpose.

You should assess the following factors in deciding if the product feature is functional or non-functional:

1. The Design's Utilitarian Advantage. In considering this factor, you may examine whether the particular design or product feature yield a utilitarian advantage over how the product might be without that particular design or product feature. If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary it is more likely to be nonfunctional;

2. Availability of Alternate Designs. In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration. For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative. They must be commercially feasible. The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional;

3. Advertising Utilitarian Advantage in the Design. In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly. If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional; and

4. The Design's Method of Manufacture. In considering this factor, you may examine whether the particular design or feature result from a relatively simple or inexpensive method of manufacture. If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

[The plaintiff has the burden of proving non-functionality by a preponderance of the evidence [in order to show that the trade dress is valid and protected from infringement].]

- Aesthetic functionality means that a claimed design feature of the trade dress improves the attractiveness and eye-appeal of the design.  Trade dress is aesthetically functional if limiting its use would impose a significant non-reputational-related competitive disadvantage upon a company.  If the entire significance of a feature is merely to associate goods with a particular source, the feature is non-functional.

Functionality is determined by considering the trade dress as a whole and not the individual elements alone.  However, if the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, then the trade dress as a whole is functional.

**Model Instruction**

Ninth Circuit Model Instructions No. 15.11(modified) .

**PROPOSED FINAL JURY INSTRUCTION NO. 56**
**INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS**
**(15 U.S.C. § 1125(A)(1))**

In this action, Apple contends that Samsung's Galaxy Tab 10.1 tablet computers infringe Apple's unregistered trade dresses for the iPad and iPad 2 tablet computers.

~~On the plaintiff's claim for~~To prove trade dress infringement, ~~the plaintiff has~~Apple bears the burden of ~~proving~~proof by a preponderance of the evidence on each of the following elements~~:~~ for each of its claimed trade dresses:

    1.~~[describe the plaintiff's trade dress] is distinctive;~~ Apple must prove that the unregistered claimed trade dresses are not functional.

    2.~~the plaintiff owns [describe the plaintiff's trade dress] as trade dress;~~ Apple must prove that the unregistered claimed trade dresses have acquired distinctiveness through secondary meaning.

    3.~~the [describe the plaintiff's trade dress] is nonfunctional; and4. the defendant used [describe trade dress used by the defendant] [~~ Apple must prove that Samsung used trade dress similar to ~~[describe the plaintiff's~~Apple's claimed trade ~~dress]]~~dresses without ~~the~~Apple's consent ~~of the plaintiff~~ in a manner that is likely to cause confusion among ~~ordinary~~ consumers as to the source, sponsorship, affiliation, or approval of ~~the [plaintiff's] [defendant's]~~Samsung's goods.

If you find that **each** of the elements on which ~~the plaintiff~~Apple has the burden of proof has been proved, your verdict should be for ~~the plaintiff~~Apple.  If, on the other hand, ~~the plaintiff~~Apple has failed to prove any one of these elements, your verdict ~~should~~must be for ~~the defendant.~~ Samsung.

**Model Instruction**

Ninth Circuit Model Instructions No. 15.6 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 57**
**INFRINGEMENT—LIKELIHOOD OF CONFUSION—**
**FACTORS—SLEEKCRAFT TEST**
**(15 U.S.C. §§ 1114(1) and 1125(a))[1]**

You must ~~consider~~decide whether ~~the defendant~~Samsung's use of ~~the trademark~~its accused products is likely to cause confusion about the source of ~~the plaintiff's or the defendant's goods.~~ Samsung's tablet computers.  Apple alleges consumer confusion has occurred or is likely to occur at three times:  before the purchase (called "initial interest" confusion), at the moment of the purchase (called "point of sale" confusion), and after the purchase (called "post-sale" confusion).

To establish any of these types of confusion, Apple must prove by a preponderance of the evidence that any such consumer confusion affected consumers' decisions to purchase tablet computers.

In addition, to establish initial interest confusion, Apple must prove by a preponderance of the evidence that consumers are likely to go to a store or a website with the intention of purchasing an iPad and mistakenly assume that a Samsung tablet computer is an iPad and then, even after their initial assumption is corrected, decide to purchase the Samsung tablet computer because it would be too much effort to locate an iPad instead.

In addition, to establish point of sale confusion, Apple must prove by a preponderance of the evidence that consumers are likely to purchase a Samsung tablet falsely believing it to be an iPad.

In addition, to establish post-sale confusion, Apple must prove by a preponderance of the evidence that consumers are likely to incorrectly believe that a Samsung tablet is an iPad after it has been purchased and that this consumer confusion has caused consumers not to purchase an iPad and caused injury to Apple's reputation.

I will suggest some factors you should consider in deciding ~~this.~~whether there is a likelihood of consumer confusion based on Apple's alleged iPad trade dress or alleged iPad 2 trade dress. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. ~~As you consider the likelihood of confusion you should examine the following:~~

1.       Strength or Weakness of the Plaintiff's ~~Mark~~Trade Dress. The more the consuming public recognizes the plaintiff's ~~trademark~~trade dress as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar ~~mark~~trade dress.

---

[1]  Samsung objects to informing the jury about the various theories of consumer confusion for the reasons set forth in Samsung's Objection To Apple's Jury Instruction No. 69 ("TRADE DRESS INFRINGEMENT—LIKELIHOOD OF CONFUSION—SLEEKCRAFT TEST").  However, in the event the Court chooses to educate the jury on the different forms of confusion, Samsung proposes this instruction.

2.      Defendant's Use of the ~~Mark~~Trade Dress. If the defendant and plaintiff use their ~~trademarks~~trade dress on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.      Similarity of Plaintiff's and Defendant's ~~Marks.~~Trade Dress.  If the overall impression created by the plaintiff's ~~trademark~~trade dress in the marketplace is similar to that created by the defendant's trademark in [appearance] [sound] [or] [meaning], there is a greater chance ~~[that consumers are likely to be confused by defendant's use of a mark]~~ [of likelihood of confusion]. ~~[Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar].~~

4.      Actual Confusion.  If use by the defendant of the plaintiff's ~~trademark~~trade dress has led to a significant number of instances of actual confusion, this ~~strongly~~ suggests a likelihood of confusion. ~~However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion.~~ As you consider whether the ~~trademark~~trade dress used by the defendant creates for consumers a likelihood of confusion with the plaintiff's ~~trademark~~trade dress, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.      Defendant's Intent. ~~Knowing use by~~ If the defendant ~~of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.~~adopted trade dress similar to the plaintiff's with the intent to deceive consumers, this increases the likelihood of consumer confusion.

6.      Marketing/Advertising Channels. If the plaintiff's and defendant's ~~[goods] [services]~~products are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.      Consumer's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's ~~trademarks~~trade dresses.

~~8. Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.~~

~~[9. Other Factors. Any other factors that bear on likelihood of confusion.]~~

**Model Instruction**

Ninth Circuit Model Instructions No. 15.16 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 59**
**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**
**(15 U.S.C. § 1117(a))**

If you find for the plaintiff on the plaintiff's [infringement] [unfair competition] claim [and find that the defendant had statutory notice or actual notice of the plaintiff's registered trademark], you must determine the plaintiff's actual damages.

The plaintiff Apple has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff Apple for any [injury] [and] [or] [property damage] to Apple you find was caused by the defendant's infringement of the plaintiff's registered trademark. Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged infringement of Apple's trade dress.

You should consider the following:

    1. [The [injury to] [loss of] the plaintiff's reputation][;]

    2. [The [injury to] [loss of] plaintiff's goodwill, including injury to the plaintiff's general business reputation][;] 3. [The any lost profits that the plaintiff Apple would have earned but for the defendant's Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged infringement.  Profit is determined by deducting all expenses from gross revenue[;] .

    4. [The expense of preventing customers from being deceived][;]

    5. [The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement][;] [and]

    6. [Insert any other factors that bear on plaintiff's actual damages].

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.
If you find that any loss in sales shown by Apple was caused by other market factors and not as a result of Samsung Electronics Company's, Samsung Electronics America's or Samsung Telecommunications America's alleged infringement, then you should not award any amount for lost profits or should reduce any such amount to account for the other market factors.

**Model Instruction**

Ninth Circuit Model Instruction No. 15.25 (modified) and the accompany Comment.

## PROPOSED FINAL JURY INSTRUCTION NO. 60.1
## TRADE DRESS DAMAGES—APPORTIONMENT OF
## DEFENDANT'S PROFITS

~~In addition to actual damages, the plaintiff~~Apple is ~~only~~ entitled to ~~any~~ profits earned by ~~the~~an infringing defendant that are attributable to the infringement, if any, which ~~the plaintiff proves~~Apple must prove by a preponderance of the evidence.  You may not~~, however,~~ include in any award of profits any amount that you took into account in determining ~~actual~~ damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of the infringing defendant's receipts from using the ~~trademark~~trade dress in the sale of ~~a [~~an infringing product~~]~~.  ~~The plaintiff~~ Apple has the burden of proving ~~a~~the infringing defendant's gross revenue by a preponderance of the evidence and with a reasonable certainty.

Expenses are all ~~[operating] [overhead] and production costs incurred in producing the gross revenue.~~costs that the infringing defendant incurred in the production, distribution, or sale of the infringing products.  The infringing defendant has the burden of proving the expenses ~~[and~~.

You must also deduct from the profit award, if any, the portion of the profit attributable to factors other than ~~use of the infringed trademark]~~the infringing defendant's use of the trade dress.  The infringing defendant has the burden of proving profit attributable to factors other than the trade dress by a preponderance of the evidence.

~~Unless you find that a portion of the profit from the sale of the [specify goods] using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.~~

**Model Instruction**

Ninth Circuit Model Instructions No. 15.26 (modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 61.2**
~~MONETARY REMEDIES—~~TRADE DRESS ~~DILUTION~~DAMAGES—
ACTUAL OR STATUTORY NOTICE ~~REQUIREMENT~~(15 U.S.C. § 1111)

[From Dkt. No. 1818 at Appendix A]

In order for ~~plaintiff~~Apple to recover damages, ~~the plaintiff~~Apple has the burden of proving by a preponderance of the evidence that ~~defendant~~Samsung Electronics Company, Samsung Electronics America and Samsung Telecommunications America had either statutory or actual notice that ~~the plaintiff's the trademark~~Apple's trade dress was registered. ~~Defendant~~

Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had statutory notice if:
> ~~[1. plaintiff~~1.   Apple displayed with the ~~trademark~~trade dress the words "Registered in U.S. Patent and Trademark Office."~~] [or~~
> ~~[2. plaintiff~~2.   Apple displayed with the ~~trademark~~trade dress the words "Reg. U.S. Pat. & Tm. Off."~~] [~~ or~~]~~

> ~~[3. plaintiff~~3.   Apple displayed the ~~trademark~~trade dress with the letter R enclosed within a circle, thus ®~~]~~.

**Model Instruction**

Model Instructions No. 15.24 (modified).