1   HAROLD J. MCELHINNY (CA SBN 66781)
    hmcelhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
3   RACHEL KREVANS (CA SBN 116421)
    rkrevans@mofo.com
4   JENNIFER LEE TAYLOR (CA SBN 161368)
    jtaylor@mofo.com
5   ALISON M. TUCHER (CA SBN 171363)
    atucher@mofo.com
6   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
7   JASON R. BARTLETT (CA SBN 214530)
    jasonbartlett@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
10  Facsimile:  (415) 268-7522

    WILLIAM F. LEE
    william.lee@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    60 State Street
    Boston, MA 02109
    Telephone: (617) 526-6000
    Facsimile: (617) 526-5000

    MARK D. SELWYN (SBN 244180)
    mark.selwyn@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    950 Page Mill Road
    Palo Alto, California 94304
    Telephone: (650) 858-6000
    Facsimile: (650) 858-6100

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.
12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16

17  APPLE INC., a California corporation,        | Case No. 11-cv-01846-LHK

18              Plaintiff,                          **APPLE'S REDLINED VERSION OF
                                                    PROPOSED FINAL JURY
19       v.                                         INSTRUCTIONS**

20  SAMSUNG ELECTRONICS CO., LTD., a
    Korean business entity; SAMSUNG
21  ELECTRONICS AMERICA, INC., a New York
    corporation; SAMSUNG
22  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,
23
                Defendants.
24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4

**UTILITY PATENT JURY INSTRUCTIONS** ............................................................................... 1

PROPOSED FINAL JURY INSTRUCTION NO. 14 UTILITY PATENTS—
    INFRINGEMENT UNDER THE  DOCTRINE OF EQUIVALENTS
    Compared to N.D. Cal. Model Patent Jury Instr. B.3.4 ...................................... 2

PROPOSED FINAL JURY INSTRUCTION NO. 15 UTILITY PATENTS—
    LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS
    Compared to N.D. Cal. Model Patent Jury Instr. B.3.7 ...................................... 4

PROPOSED FINAL JURY INSTRUCTION NO. 19 UTILITY PATENTS—
    STATUTORY BARS
    Compared to N.D. Cal. Model Patent Jury Instr. B.4.3a2 ................................. 5

PROPOSED FINAL JURY INSTRUCTION NO. 24 UTILITY PATENT DAMAGES—
    BURDEN OF PROOF
    Compared to N.D. Cal. Model Patent Jury Instr. B.5.1 ...................................... 6

PROPOSED FINAL JURY INSTRUCTION NO. 25 UTILITY PATENT DAMAGES —
    LOST PROFITS — GENERALLY
    Compared to N.D. Cal. Model Patent Jury Instr. B.5.2 ...................................... 7

PROPOSED FINAL JURY INSTRUCTION NO. 26 UTILITY PATENT DAMAGES—
    LOST PROFITS—FACTORS TO CONSIDER
    Compared to N.D. Cal. Model Patent Jury Instr. B.5.3 ...................................... 8

PROPOSED FINAL JURY INSTRUCTION NO. 28 UTILITY PATENT DAMAGES—
    REASONABLE ROYALTY—ENTITLEMENT
    Compared to N.D. Cal. Model Patent Jury Instr. B.5.6 ...................................... 9

PROPOSED FINAL JURY INSTRUCTION NO. 29 UTILITY PATENT DAMAGES—
    REASONABLE ROYALTY—DEFINITION
    Compared to N.D. Cal. Model Patent Jury Instr. B.5.7 .................................... 10

PROPOSED FINAL JURY INSTRUCTION NO. 31 UTILITY PATENT DAMAGES—
    DATE OF COMMENCEMENT—PRODUCTS
    Compared to N.D. Cal. Model Patent Jury Instr. B.5.8 .................................... 11

**DESIGN PATENT JURY INSTRUCTIONS** ............................................................................ 13

PROPOSED FINAL JURY INSTRUCTION NO. 32 DESIGN PATENTS—
    INTERPRETATION OF PATENT CLAIMS
    COMPARED TO THE INTELLECTUAL PROPERTY OWNERS ASS'N Model
    Design Patent Jury Instr. 7.2 .......................................................................... 14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS
### (continued)

**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 34 DESIGN PATENTS—DIRECT
INFRINGEMENT
COMPARED TO THE INTELLECTUAL PROPERTY OWNERS ASS'N Model
Design Patent Jury Instr. 8.3 ........................................................................................... 16

PROPOSED FINAL JURY INSTRUCTION NO. 36 DESIGN PATENTS—
ANTICIPATION
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3a1 ................................................ 18

PROPOSED FINAL JURY INSTRUCTION NO. 37 DESIGN PATENTS—
STATUTORY BARS
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3A2 .............................................. 20

PROPOSED FINAL JURY INSTRUCTION NO. 38 DESIGN PATENTS—
OBVIOUSNESS
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3B................................................. 22

PROPOSED FINAL JURY INSTRUCTION NO. 39 DESIGN PATENTS—
INVALIDITY—LACK OF ORNAMENTALITY
Compared to The Intellectual Property Owners Ass'n Model Design Patent Jury
Instr. 9.11 ....................................................................................................................... 25

PROPOSED FINAL JURY INSTRUCTION NO. 40 DESIGN PATENT DAMAGES—
BURDEN OF PROOF
Compared to N.D. Cal. Model Patent Jury Instr. B.5.1 ................................................... 26

PROPOSED FINAL JURY INSTRUCTION NO. 41 DESIGN PATENT DAMAGES—
LOST PROFITS
Compared to N.D. Cal. Model Patent Jury Instr. B.5.2 ................................................... 27

PROPOSED FINAL JURY INSTRUCTION NO. 42 DESIGN PATENT
INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS
Compared to The Intellectual Property Owners Ass'n Model Design Patent Jury
Instr. 10.8 ....................................................................................................................... 28

PROPOSED FINAL JURY INSTRUCTION NO. 43 DESIGN PATENT DAMAGES—
REASONABLE ROYALTY— ENTITLEMENT—DEFINITION
Compared to N.D. Cal. Model Patent Jury Instr. B.5.6 ................................................... 29

PROPOSED FINAL JURY INSTRUCTION NO. 44 DESIGN PATENT DAMAGES—
DATE OF COMMENCEMENT—PRODUCTS
Compared to N.D. Cal. Model Patent Jury Instr. B.5.8 ................................................... 30

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS ....................................... 31**

PROPOSED JURY INSTRUCTION NO. 45 UTILITY AND DESIGN PATENTS—
INDUCING PATENT INFRINGEMENT
Compared to N.D. Cal. Model Patent Jury Instr. B.3.9 ................................................... 32

# TABLE OF CONTENTS
### (continued)

**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 46 DESIGN AND UTILITY
PATENTS—WILLFUL PATENT INFRINGEMENT
    Compared to N.D. Cal. Model Patent Jury Instr. B.3.10 .................................................. 33

**TRADE DRESS JURY INSTRUCTIONS**............................................................................ **35**

PROPOSED FINAL JURY INSTRUCTION NO. 47 TRADE DRESS DILUTION AND
INFRINGEMENT—INTRODUCTION
    Compared to Ninth Circuit Model Civil Jury Instr. - 15.0 (2007 Ed.)............................. 36

PROPOSED FINAL JURY INSTRUCTION NO. 48 TRADE DRESS DILUTION AND
INFRINGEMENT—DEFINITION OF TRADE DRESS (15 U.S.C. § 1125(A))
    Compared to Ninth Circuit Model Civil Jury Instr. - 15.2 (2007 Ed.)............................. 37

PROPOSED FINAL JURY INSTRUCTION NO. 49 TRADE DRESS DILUTION AND
INFRINGEMENT—VALIDITY
    Compared to ABA 3.2.1 ................................................................................................. 38

PROPOSED FINAL JURY INSTRUCTION NO. 50 TRADE DRESS DILUTION AND
INFRINGEMENT—VALIDITY—DISTINCTIVENESS—SECONDARY
MEANING
    Compared to Ninth Circuit Model Civil Jury Instr. - 15.10 (2007 Ed.)........................... 39

PROPOSED FINAL JURY INSTRUCTION NO. 51 TRADE DRESS DILUTION AND
INFRINGEMENT—VALIDITY— NON-FUNCTIONALITY REQUIREMENT
    Compared to Ninth Circuit Model Civil Jury Instr. - 15.11 (2007 Ed.)........................... 41

PROPOSED FINAL JURY INSTRUCTION NO. 52 TRADE DRESS DILUTION—
ELEMENTS AND BURDEN OF PROOF
    Compared to ABA 3.4.1 ................................................................................................. 43

PROPOSED FINAL JURY INSTRUCTION NO. 53 TRADE DRESS DILUTION—
ELEMENTS—FAME
    Compared to ABA 3.4.2—3.4.3 ..................................................................................... 44

PROPOSED FINAL JURY INSTRUCTION NO. 55 TRADE DRESS DILUTION—
ELEMENTS—DILUTION
    Compared to ABA 3.4.4 ................................................................................................. 45

PROPOSED FINAL JURY INSTRUCTION NO. 56 INFRINGEMENT—ELEMENTS
AND BURDEN OF PROOF—TRADE DRESS (15 U.S.C. § 1125(A)(1))
    Compared to Ninth Circuit Model Civil Jury Instr. - 15.6 (2007 Ed.)............................. 46

PROPOSED FINAL JURY INSTRUCTION NO. 57 INFRINGEMENT—LIKELIHOOD
OF CONFUSION— FACTORS—*SLEEKCRAFT* TEST (15 U.S.C. §§ 1114(1)
AND 1125(A))
    Compared to Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.)........................... 47

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

PROPOSED FINAL JURY INSTRUCTION NO. 59 TRADE DRESS DAMAGES—
    PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(A))

4

    Compared to Ninth Circuit Model Civil Jury Instr. - 15.25 (2007 Ed.)............................ 49

5

PROPOSED FINAL JURY INSTRUCTION NO. 60 TRADE DRESS DAMAGES—
    DEFENDANT'S PROFITS (15 U.S.C. § 1117(A))

6

    Compared to Ninth Circuit Model Civil Jury Instr. - 15.26 (2007 Ed.)............................ 50

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UTILITY PATENT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 14**
**UTILITY PATENTS—INFRINGEMENT UNDER THE**
**DOCTRINE OF EQUIVALENTS**[1]
Compared to N.D. Cal. Model Patent Jury Instr. B.3.4

**Apple's Proposed Instruction**

If you decide that [alleged infringer]'s [an accused Samsung product] [method] does not literally infringe an asserted Apple patent claim, you must then decide whether that [product] [method] infringes the asserted claim under what is called the "doctrine of equivalents." If you decide that an accused Apple product or method does not literally infringe an asserted Samsung patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the [product] [ or method] can infringe an asserted patent claim if it includes [parts] [steps] or software instructions that are identical or equivalent to the requirements of the claim. If the [product] [ or method] lacks a part or software instructions that is missing an identical or equivalent [part] [step] to even one requirement of the asserted patent claim, the [product] [ or method] cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the [product] [ or method] has either ana part or set of instructions that is identical or equivalent [part] [step] to that individual claim requirement.

A [part] [step] of or a [set of software instructions in a product] [ or method] is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the [part] [step] or instructions and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

[One way to decide whether any difference between a requirement of an asserted claim and a [part] [step] or set of instructions in the [product] [ or method] is not substantial is to consider whether, as of the time of the alleged infringement, the [part] [step] of the [product] [method] or instructions performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.].

[In deciding whether any difference between a claim requirement and the [product] [ or method] is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the [part] [step] or set of instructions with the claimed requirement. The known interchangeability between the claim requirement and the [part] [step] of or instructions within the [product] [ or method] is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the [part] [step] in the [product] [method] or instructions and the claim requirement is not substantial. The fact that a [part] [step] of or software instructions in the [product] [method] performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.].

[You may not use the doctrine of equivalents to find infringement if you find that [alleged

[1] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions. Apple reserves the right to modify the instruction if the Court rules in its favor on this issue.

1    infringer]'s [product] [method] is the same as what was in the prior art before the application for
     the [     ] patent or what would have been obvious to persons of ordinary skill in the field in light
2    of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents,
     protection that it could not have lawfully obtained from the Patent and Trademark Office.][2]

3
     [You may not use the doctrine of equivalents to find infringement if you find that the subject
4    matter alleged to be equivalent to a requirement of the patent claim was described in the [     ]
     patent but not covered by any of its claims.  The subject matter described but not claimed must be
5    specific enough that one of ordinary skill in the art would understand that it was present in the
     patent.]
6

7    **Source**

8    Adapted from N.D. Cal. Model Patent Jury Instr. B.3.4.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25        [2]  If this instruction is applicable in a given case, then the court should instruct the jury
     that if [alleged infringer] has offered evidence sufficient to show that the accused [product]
26   [method] is in the prior art, the burden shifts to the [patent holder] to prove that what it attempts
     to cover under the doctrine of equivalents is not in the prior art or would not have been obvious
27   from the prior art.  *See Fiskares, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000);
     *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364-66 (Fed. Cir. 2000);
28   *Streamfeeder, LLC v. Sure-Feed Systems, Inc.*, 175 F.3d 974, 981-84 (Fed. Cir. 1999).

**PROPOSED FINAL JURY INSTRUCTION NO. 15**
**UTILITY PATENTS— LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS**[3]
Compared to N.D. Cal. Model Patent Jury Instr. B.3.7

**Apple's Proposed Instruction**

Because ~~[patent holder]~~Samsung made certain claim changes or statements during the patent application process for the ~~[        ] patent~~'711, '460, and '893 patents, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

~~[List requirements on a claim-by-claim basis]~~

- The limitation requiring "wherein the music background play object includes an application module including at least one applet" in claim 9 of the '711 patent.

- The limitations requiring a "first E-mail transmission sub-mode," a "second E-mail transmission sub-mode," "displaying an image most recently captured in a camera mode," "sequentially displaying other images stored in a memory through the use of scroll keys" in claim 1 of the '460 patent.

- The limitation requiring "irrespective of a duration" in claim 10 of the '893 patent.

Unless each of these requirements is literally present within the ~~[alleged infringer]'s [product] [method],~~Apple's products, there can be no infringement of ~~the claim.~~these claims.

**Source**

N.D. Cal. Model Patent Jury Instr. B.3.7.

---

[3] Apple does not believe that Samsung should be permitted to rely on the doctrine of equivalents with respect to any of its infringement contentions.  Apple reserves its right to withdraw or modify this instruction if the Court rules in its favor on this issue.

**PROPOSED FINAL JURY INSTRUCTION NO. 19**
**UTILITY PATENTS—STATUTORY BARS**
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3a2[4]

**Apple's Proposed Instruction**

A utility patent claim is invalid if the patent application was not filed within the time required by law.  This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Here is a list of ways [alleged infringer]either side can show that the patent application was not timely filed:  [choose those that apply]

[- if- If the claimed invention was already patented or described in a printed publication anywhere in the world before [insert date that is]more than one year before the effective filing date of the patent application], [.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.]; ];

[- if- If the claimed invention was already being openly used in the United States before [insert date that is]more than one year before application]the effective filing date] of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose; ];

[- if- If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before [insert date that is one year before application filing date].  [The claimed invention is not being [sold] [or] [offered for sale] if the [patent holder] shows that the [sale] [or] [offer for sale] was primarily experimental.]  [The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use the invention based on them.]; ]more than one year before the effective filing date of the patent application;

[- if- If the [patent holder] had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application].

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of [identify field] looking at the reference to make and use the claimed invention.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a2.

---

[4] Apple used the formulation of instruction No. 19 submitted in Exhibit A to Dkt. No. 1815 for the redline here.

**PROPOSED FINAL JURY INSTRUCTION NO. 24**
**UTILITY PATENT DAMAGES—BURDEN OF PROOF**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.1

**Apple's Proposed Instruction**

I will instruct you about the measure of damages for claims of utility patent infringement.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that [alleged infringer]either party infringed any valid and enforceable claim of the [___] patentother side's patents, you must then determine the amount of money damages to be awarded to [the patent holder] to compensate it for the infringement.

The amount of those damages must be adequate to compensate [the patent holder] for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

[PatentEach patent holder] has the burden to persuade you of the amount of its damages.  You should award only those damages that [the patent holder] more likely than not suffered.  While [a patent holder] is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  [PatentNeither patent holder] is not entitled to damages that are remote or speculative.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1.

**PROPOSED FINAL JURY INSTRUCTION NO. 25**
**UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.2

**Apple's Proposed Instruction**

~~In this case, [patent holder]~~ For infringement of its utility patents, Apple seeks to recover lost profits for some of ~~[alleged infringer]'s~~Samsung's sales of ~~[its~~ infringing ~~product],~~products, and a reasonable royalty on the rest of ~~[alleged infringer]'s~~Samsung's infringing sales.  Samsung does not seek lost profits for infringement of its utility patents.

To recover lost profits for infringing sales, ~~[patent holder]~~Apple must show that but for the infringement there is a reasonable probability that it would have made sales that ~~[alleged infringer]~~Samsung made of the infringing ~~product.  [Patent holder]~~products.  Apple must show the share of ~~[alleged infringer]'s~~Samsung's sales that it would have made if the infringing ~~product~~products had not been on the market.

~~You must allocate the lost profits based upon the customer demand for the patented feature of the infringing [product] [method].  That is, you must determine which profits derive from the patented invention that [alleged infringer] sells, and not from other features of the infringing [product] [method].~~

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 26**
**UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

2

Compared to N.D. Cal. Model Patent Jury Instr. B.5.3

3

**Apple's Proposed Instruction**

4

[Patent holder] Apple is entitled to lost profits if it proves all of the following:

5

 (1) that there was a demand for theApple's patented [product] [method] [product

6

   produced by the method]:products;

7

 (2) that there were no commercially acceptable, non-infringing substitutes, or, if there
were, the number of the sales made by [alleged infringer]Samsung that [patent

8

   holder]Apple would have made despite the availability of other non-infringing
substitutes.  An alternative may be considered available as a potential substitute even

9

   if it was not actually on sale during the infringement period.  Factors suggesting that
the alternative was available include whether the material, experience, and know-

10

   how for the alleged substitute were readily available.  Factors suggesting that the
alternative was not available include whether the material was of such high cost as to

11

   render the alternative unavailable and whether [alleged infringer]Samsung had to
design or invent around the patented technology to develop an alleged substitute:.

12

   To be commercially acceptable, an alternative must have had the advantages of the
patented invention that were important to people who purchased an accused

13

   Samsung product.  If you find that Samsung's proposed alternative would not be
available or would not be commercially acceptable for some or all of the period in

14

   which Samsung infringed, you should determine whether Apple lost sales and profits
during this period.;

15

 (3) that [patent holder]Apple had the manufacturing and marketing capacity to make
any infringing sales actually made by the infringerSamsung and for which [patent

16

   holder]Apple seeks an award of lost profits; and

17

 (4) the amount of profit that [patent holder]Apple would have made if [alleged
infringer]Samsung had not infringed.

18

19

**Source**

20

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.3; Federal Circuit Bar Association Model
Patent Jury Instr. B.6.2.

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 28**
**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.6

**Apple's Proposed Instruction**

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective utility patents.

If [patent holder]Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then [patent holder]Apple should be awarded a reasonable royalty for all infringing Samsung sales for which itApple has not been awarded lost profits damages.

Samsung does not make a claim for lost profits. Samsung should be awarded a reasonable royalty for any infringing Apple sales.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6.

**PROPOSED FINAL JURY INSTRUCTION NO. 29**
**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.7

**Apple's Proposed Instruction**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. ~~~~You must also assume that both parties believed the patent was valid and infringed.~~ Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. ~~Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.~~

~~A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.~~

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.7.

**PROPOSED FINAL JURY INSTRUCTION NO. 31**
**UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS[5]**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.8

**Apple's Proposed Instruction**

Damages that [patent holder]Apple may be awarded by you commence on the date that [alleged infringer]Samsung has both infringed and been notified of the [   ] patent: [use those or patents it infringed.

If you find that apply to this case] [[Patent holder] and [alleged infringer] agree that date was [insert date];] [Since [patent holder]Apple sells a productproducts that includes theinclude its claimed inventioninventions but has not marked that productthose products with the patent numbernumbers, you must determine the date that [alleged infringer]Samsung received actual written notice of the [   ] patent patents and the specific productproducts alleged to infringe:]. While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung with such notice for the '381 and '915 patents no later than April 15, 2011, and for the '163 patent no later than June 16, 2011.

[Since [patent holder] [marks the product] or [On the other hand, if you find that Apple does not sell a productproducts covered by the patent].patents, then damages begin without the requirement for actual notice under the following circumstances:[6]

If the [   ]For each infringed patent that was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

If the [   ]For each infringed patent that was granted after the infringing activity began as determined by you, damages should be calculated as of [the date the patent issued].].

With respect to Samsung's '460 patent, the damages you may award Samsung for any infringement should be calculated as of August 18, 2009 because Samsung is asserting only method claims from that patent.

For the other asserted Samsung patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

If you find that Samsung sells products that include its claimed inventions from these patents but has not marked those products with the patent numbers, you must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe. While you may identify an earlier date by which Apple had notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's counterclaims provided Apple such notice by no later than June 16, 2011.

---

[5]  This instruction may be used when the claim is an apparatus or product claim and [alleged infringer] is a direct infringer.  Different rules may apply if the claim is a method claim or [alleged infringer] is an inducer or contributory infringer.

[6] Apple reserves its right to argue after the close of evidence that there is no dispute on the question of whether Apple's sells products that embody its claimed inventions.  In the event there is no dispute on this issue, the portion of this instruction relating to the date of commencement for situations where Apple does *not* practice its patents would not be necessary.

On the other hand, if you find that Samsung does not sell products covered by these patents, then damages begin without the requirement for actual notice under the following circumstances:

    For each infringed patent that was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

    For each infringed patent that was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8.

1

**DESIGN PATENT JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 32**
**DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS**

2     Compared to The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 7.2

3     **Apple's Proposed Instruction**

4     I will now instruct you about how to decide Apple's design patent infringement claims.  Before
      you decide whether ~~the design patent~~ Samsung has ~~been~~ infringed ~~and~~ each patent or whether ~~the~~

5     ~~design patent~~ it is invalid~~.~~, you must understand the patent.  Each Apple design patent has one
      claim that covers the design "as shown and described."  Each design patent then uses multiple

6     drawings to illustrate the claimed design.  The drawings collectively define the design claimed by
      each patent.  The scope of the claim encompasses the design's visual appearance as a whole ~~and~~

7     ~~in particular the visual impression it creates.~~.  It does not cover ~~any broad~~a general design
      concept~~.~~ ~~Taking into account all figures in the patent, you must consider all of the visual~~, and is

8     not limited to isolated features of the drawings.  ~~[abbreviated patent number] design patent as a~~
      ~~whole and not merely isolated portions or individual features of the claimed design. All~~

9

10    When viewing the drawings, keep in mind that all matter depicted in solid lines contributes to the
      overall appearance of the design. ~~Any~~ In addition, you should view certain features ~~shown in~~

11    ~~broken lines~~ in the drawings of the Apple design patents in this way:  ~~[abbreviated patent~~
      ~~number] design patent and described in the specification as disclaimed are~~ excluded from the

12    ~~claimed design. Failure to show features~~

13        • **D'677 Patent**

14    The D'677 Patent claims the ornamental design of an electronic device as shown in Figures 1-8.
      The broken lines in the D'677 Patent constitute unclaimed subject matter.  The use of "solid

15    black surface shading" on the D'677 Patent represents the color black.  The use of oblique line
      shading on the D'677 Patent is used to show a transparent, translucent, or highly polished or

16    reflective surface.

17        • **D'087 Patent**

18

19    The D'087 Patent claims the ornamental design of an electronic device as shown in Figures 1-48.
      The broken lines ~~signals inclusion of such features~~ in the ~~claimed design. The various~~

20    ~~features~~D'087 Patent constitute unclaimed subject matter.  Thus, the D'087 Patent claims the
      front face, a "bezel encircling the front face of the patented design [that] extends from the front of

21    the ~~overall appearance~~phone to its sides," and a flat contour of the ~~design may perform a function~~
      ~~that is~~front face, but does not claim the ~~nature~~rest of ~~an~~the article of manufacture ~~for which this~~

22    ~~design patent has been granted. If~~.  ~~such functional features are illustrated in solid lines, they are~~
      ~~part of the claimed design based on how they contribute to the overall visual appearance.~~ ~~[AS~~

23    ~~NECESSARY, INSERT BRIEF DESCRIPTIONS OF ANY LIMITATIONS ON THE~~
      ~~CLAIMED DESIGN AS A RESULT OF THE DESCRIPTION AND/OR THE PROSECUTION~~

24    ~~HISTORY].~~

25        • **D'889 Patent**

26

27    The D'889 Patent claims the ornamental design of an electronic device as shown in Figures 1-9.
      The broken lines depicting the human figure in Figure 9 do not form a part of the claimed design.

28    The other broken lines in the other figures are part of the claimed design.  The D'889 also
      includes oblique line shading on several of the figures.  The oblique line shading in Figures 1-3

1    and Figure 9 depicts a transparent, translucent, or highly polished or reflective surface from the
2    top perspective view of the claimed design, the top view of the claimed design, and the bottom
     perspective view of the claimed design.

3
        • **D'305 Patent**
4

5    The D'305 Patent claims the ornamental design for a graphical user interface for a display screen
6    or portion thereof, as shown in Figures 1-2.  The broken line showing of a display screen in both
     views forms no part of the claimed design.

7
     **Source**
8
9    Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n
     Model Design Patent Jury Instr. 5, 7.2.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 34**
**DESIGN PATENTS—DIRECT INFRINGEMENT**

2

Compared to The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3

3

**Apple's Proposed Instruction**

4

To determine direct infringement of a design patent, you must compare the overall appearances of

5

the accused design and the claimed design (using my instructions as to the meaning of the claimed design). Before conducting your infringement analysis, you must familiarize yourself with all of the prior art designs that have been brought to your attention in this litigation. In view

6

of this prior art, if

7

8

If you find it more likely than not that, by a preponderance of evidence, the overall appearance of thean accused Samsung design is substantially the same as the overall appearance of the claimed

9

Apple design, then you must and that the accused design was made, used, sold, offered for sale, or imported within the United States, you must find that Samsung infringed the patent. the

10

accused design infringes the design patent. In conducting this analysis, keep in mind that minor

11

You should consider any perceived similarities or differences between the patented and accused

12

designs. Minor differences should not prevent a finding of infringement. You must also familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement. In weighing your decision, you should consider any perceived

13

similarities or differences. When evaluating designs, be it the claimed design, accused design, and prior art designs, you should always focus on the overall appearance of a design, and not

14

individual features. You should consider and weigh any perceived similarities and differences. In conducting your analysis, you

15

16

You may find the following guidelines helpful to your analysis:

17

1. The use of a mark or a label on an otherwise infringing design will not avoid infringement.

18

19

2. When the claimed design is visually close to the prior art designs, small differences between the accused design and the claimed design may be important to your analysis as

20

to in analyzing whether the overall appearanceappearances of the accused design is and claimed designs are substantially the same as the overall appearance of claimed design.

21

3. If the accused design includes a particular feature of the claimed design that departs

22

conspicuously from the prior art, you may find the inclusion of that feature important to your analysis as toin analyzing whether the overall appearance of the accused design isand

23

claimed designs are substantially the same as the overall appearance of claimed design.

24

4. If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important to your analysis as to in analyzing

25

whether the overall appearanceappearances of the accused design isand claimed designs are substantially the same as the overall appearance of claimed design.

26

5. You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

27

28

1   While these guidelines may be ~~help to your analysis, please keep in mind that the sole~~ helpful, the
2   test for infringement is whether ~~you believe that~~ the overall ~~appearance~~appearances of the
    accused design ~~is~~ and the claimed design are substantially the same ~~as~~.  For the D'087 patent,
3   although the patent comprises six embodiments; you must find infringement if the overall
    appearance of ~~the claimed design. If you find that the~~ an accused design and any of the claimed
4   embodiments is substantially the same~~, then you must find that the accused design infringes the~~
    ~~design patent.~~

5   Whether Samsung knew its products infringed or even knew of Apple design patents does not
    matter in determining infringement.

6

7   **Source**

8   Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 36**
**DESIGN PATENTS—ANTICIPATION**
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3a1

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Prior Art Reference Is Identical in All Material Respects to the Overall Visual Impression of Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

A design patent claim is invalid if it is not new. Certain articles of manufacture, publications, patents, and public uses that predate the claimed invention is not new. patented design are called "prior art references." For the claim a design patent to be invalid because it is not new, all of its requirementsthere must have existed in a single device or method that predates the claimed invention, or must have been described in be a single previous publication or patent prior art reference that predates the claimed invention. In, to an ordinary observer, is identical in all material respects to the overall visual impression of the claimed design. Minor differences between a design patent law, these previous devices, methods, publications or patents are called "prior art references." and a prior art reference do not necessarily preclude a finding of anticipation. If a design patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of [identify field] looking at that one reference would be able to make and use the claimed invention.

The Court has already found that Japanese Design Registration No. 1241638 cannot be used as a prior art reference to invalidate any Apple design patent on this basis.

Here is a list of the ways that [alleged infringer]Samsung can show that aan Apple design patent claim was not new [use those that apply to this case]::

- [ ifIf the claimed inventiondesign was already publicly known or publicly used by others in the United States before [insertthe date of conception unless at issue];]of the claimed design;

- [ ifIf the claimed inventiondesign was already patented or described in a printed publication anywhere in the world before [insertthe date of conception unless at issue]. [the claimed design. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.];];

- [ if the claimed invention was already made by someone else in the United States before [insert date of conception unless in issue], if that other person had not abandoned the invention or kept it secret;]

- [ if the claimed inventionIf the claimed design was already described in another issued U.S. patent or published U.S. patent application that was based on a patentan application filed before [insert date of the patent holder's application filing date] [or] [insert date of conception unless at issue];]of the claimed design.

[  if [named inventor] did not invent You should consider the claimed invention but instead learned of the claimed invention from someone else;]

[  if the [patent holder] and [alleged infringer] dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and (b) continued to work diligently to reduce it to practice.  [A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO].]

[Since it is in dispute, you must determine a date dates of conception for the [claimed invention] [and/or] [prior invention].  Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.] Apple's design patents to be the following:

- D'677 patent:          April 20, 2006

- D'087 patent:          April 20, 2006

For patents where I have not instructed you with respect to a conception date, you should use the patent's effective filing date, which I will describe shortly.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.3, 9.4.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 37**
**DESIGN PATENTS—STATUTORY BARS**
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3a2

3

**Apple's Proposed Instruction**

4

5

6

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Prior Art Reference Is Identical in All Material Respects to the Overall Visual Impression of Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

7

8

9

10

A design patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a design patent claim to be invalid by a statutory bar, all of its requirementsthere must have been present in onebe a single prior art reference dated more than one year before the patent application was filed. Here is a list of ways [alleged infringer] can show that, to an ordinary observer, is identical in all material respects to the patent application wasoverall visual impression of the claimed design. Minor differences between the prior art reference and the claimed design do not timely filed: [choose those that apply]necessarily preclude a finding of invalidity.

11

12

[ ifThe Court has already found that Japanese Design Registration No. 1241638 cannot be used as a prior art reference to invalidate any Apple design patent on this basis.

13

14

Here is a list of ways that Samsung can show that an Apple design patent application was not timely filed:

15

16

17

- If the claimed inventiondesign was already patented or described in a printed publication anywhere in the world before [insert date that ismore than one year before the effective filing date (or "priority date") of the patent application]. . A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.];

18

19

- [ ifIf the claimed inventiondesign was already being openly used in the United States before [insert date that ismore than one year before the effective filing date of the patent application filing date] and that use was not primarily; or

20

21

22

- If an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;]article using the claimed design was already sold or offered for sale in the United States more than one year before the effective filing date of the patent application.

23

24

25

26

[ if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before [insert date that is one year before application filing date]. [The claimed invention is not being [sold] [or] [offered for sale] if the [patent holder] shows that the [sale] [or] [offer for sale] was primarily experimental.] [The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use the invention based on them.];]

27

28

[  if the [patent holder] had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.]

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of [identify field] looking at the reference to make and use the claimed invention. The Apple design patents have the following effective filing dates:

- D'677 patent:  January 5, 2007

- D'087 patent:  January 5, 2007

- D'889 patent:  March 17, 2004

- D'305 patent:  June 23, 2007

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a2; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.4, 9.5.

**PROPOSED FINAL JURY INSTRUCTION NO. 38**
**DESIGN PATENTS—OBVIOUSNESS**[7]
Compared to N.D. Cal. Model Patent Jury Instr. B.4.3b

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—Samsung Will Not Present Any Evidence at Trial That Any Primary/Secondary References Yield A Design That Has Same Overall Visual Impression As Any Claimed Design—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

A design patent claim is invalid if the claimed ~~invention~~design would have been obvious to a ~~person~~designer of ordinary skill in the field ~~[at the time the~~ ~~application was filed] [as of [insert~~ ~~date]].  This means that~~ design was made, even if ~~all of~~ an ordinary observer would not find the ~~requirements of the claim cannot~~ design to be ~~found in~~ substantially the same as a single prior art reference ~~that would anticipate the claim or constitute a statutory bar to that claim, a person of~~ ~~ordinary skill in the field of [identify field] who knew about all this prior art would have come up~~ ~~with the claimed invention.~~.

The ultimate conclusion of whether a ~~claim~~claimed design is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field ~~that someone would have had~~of the patent at the time the claimed ~~invention~~design was made.  In deciding ~~the level of ordinary~~ ~~skill~~this, you should consider all the evidence ~~introduced at~~ from trial, including:

    (1)   ~~ ~~the levels of education and experience of persons ~~working~~designing articles in the field;

    (2)   ~~ ~~the types of problems encountered in designing articles in the field; and

    (3)   ~~ ~~the sophistication of the ~~technology~~field.

~~[Patent holder] contends that the level of ordinary skill in the field was [      ].  [Alleged infringer]~~ ~~contends that the level of ordinary skill in the field was [      ].~~

Second, you must decide the scope and content of the prior art.  ~~[Patent holder] and [alleged~~ ~~infringer] disagree as to~~

Third, you must consider whether ~~[identify~~Samsung has identified a "primary" prior art reference~~(s)] should be included in the prior art you use to decide the validity of claims [      ] of~~ ~~the [      ] patent.  In order to be considered as prior art to the [      ] patent, these references must~~ ~~be reasonably related to the claimed invention of that patent.~~.  A "primary" reference ~~is~~ ~~reasonably related if it is in~~must depict an actual design which, to a designer of ordinary skill in the field of the patent, is basically the same ~~field~~as the claimed ~~invention or is from another~~

---

[7]  ~~This instruction provides the jury with an instruction on how to analyze the obviousness~~ ~~question and reach a conclusion on it in the event that the Court decides to allow the jury to~~ ~~render an advisory verdict on the ultimate question of obviousness. However, the court, not the~~ ~~jury, should make the legal conclusion on the obviousness question based on underlying factual~~ ~~determinations made by the jury.  KSR Intern., Co. v. Teleflex, Inc., 127 S.Ct. 1727, 1745~~ ~~(2007)("The ultimate judgment of obviousness is a legal determination."); see Dippin' Dots, Inc.~~ ~~v. Mosey, 476 F.3d 1337, 1343 (Fed. Cir. 2007).  The introductory comment to the sample verdict~~ ~~form discusses further the functions of the judge and jury in determining obviousness.~~

1    ~~field~~design.

2    If you identify a primary reference, you must then consider whether Samsung has identified a "secondary" prior art reference that a designer of ordinary skill would use to ~~which a~~

3    ~~person~~modify the primary reference.  A "secondary" reference must be so visually related to the primary reference that the appearance of certain ornamental features in the reference would

4    suggest to the designer of ordinary skill the application of those features to the primary reference.

5    If you identify a primary reference and a secondary reference that could modify it, you then need to determine if the primary reference alone or in combination with one or more secondary

6    references results in a design that, in the ~~field would look to solve a known problem.~~eyes of an ordinary observer, has substantially the same overall visual appearance as the claimed design in

7    the patent.

8    ~~Third, you~~You must ~~decide what difference~~perform this analysis for each Apple design patent that Samsung claims was obvious.

9

10   The Court has already decided, and I am therefore instructing you, that you may not use the Fidler tablet as a primary reference against the D'889 patent.  The Court has decided, and I am therefore instructing you, that you also may not use the TC1000 tablet as a secondary reference against the

11   D'889 patent.

12   For each Apple patent, if you find no primary or secondary references, or if you conclude that a primary reference alone or combined with ~~any, existed between~~ any secondary references does not

13   result in a design with substantially the same overall visual appearance in the eyes of an ordinary observer as the claimed ~~invention and the prior art.~~design, your analysis can stop.  You must

14   conclude that any such Apple design patent is not invalid on obviousness grounds.

15   Finally, ~~you should~~if you conclude that a primary reference alone or in combination with secondary references may result in a design with substantially the same overall visual appearance

16   as the claimed design in the eyes of an ordinary observer, you should then consider any of the following factors that you find have been shown by the evidence.  These factors may indicate that

17   the claimed design would not have been obvious at the time it was made:

18       ~~[(~~____(1)   commercial success of ~~a product due to the merits of the claimed~~

19   ~~invention];]~~

20       ~~[(2)   a long felt need for the solution provided by the claimed invention];]~~

21       ~~[(3)   unsuccessful attempts by others to find the solution provided~~products covered by the claimed ~~invention];]~~design due to the appearance of the claimed design;

22       ~~[(4~~____(2)  copying of the claimed ~~invention~~design by others~~];];~~

23       ~~[(5)   unexpected and superior results from the claimed invention];]~~

24       ~~[(6~~____(3)  acceptance by others of the claimed ~~invention~~design as shown by praise from others in the field ~~or from the licensing of~~; and

25

26       ___(4)   whether others expressed surprise or disbelief regarding the claimed ~~invention];]~~design.

27

28       ~~[(7)   other evidence tending to show nonobviousness];]~~

[(8)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it] [; and]

[(9)    other evidence tending to show obviousness].]

[The presence of any of the [list factors 1-7 as appropriate] may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of the [list factors 8-9 as appropriate] may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obviousobviousness or non-obviousness is up to you.].

A patent claim composed of In deciding whether the claimed design was obvious, keep in mind that a design with several elementsfeatures is not proved obvious merely by demonstrating that because each of its elementsindividual feature was independently knownpresent in the present in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether [the alleged infringer] has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. designs.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you mustmust always be careful not to determine obviousness using the benefit of hindsight; many true inventions.  Many truly novel and non-obvious designs might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed inventiondesign was made and you should not consider what is known today or what is learned from the teaching of the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.7- 9.10; Federal Circuit Bar Association Model Patent Jury Instr. 4.3c.

**PROPOSED FINAL JURY INSTRUCTION NO. 39**
**DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY**
Compared to The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.11

**Apple's Proposed Instruction**

**[The Jury Should Not Be Instructed On This Issue—The Court Will Instruct The Jury On Whether There Are Functional Elements In The Design Patents—Instruction Provided In The Event That Court Decides Instruction Must Be Provided]**

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture.  If Samsung proves it is highly probable that the overall appearance of the an Apple patented design is dictated solely by how it the article claimed in the patent works, the patent is invalid because the design is not "ornamental." In other words, the inventor did not "design" anything because in order to achieve the function of the design it had to be designed that way. It

When deciding this, you should be kept keep in mind that all design patents must be for articles of manufacture, which by definition are things that have inherent functional characteristics.  It is normal and expected therefore that claimed designs perform some sort of function – that does not disqualify the design for design them from patent protection.  Likewise, that features of a design may enhance the user's experience does not necessarily mean that the patented design was dictated solely by function.

The question is whether those any general functional characteristics in a patented design can only be embodied by the claimed that design, or whether they can be embodied by other designs such that the claimed design is not the only way to perform those general functions. Thus, the The existence of alternate designs that perform substantially the same function may be strong evidence that the design is not dictated solely by function. design at issue is not dictated solely by function. Additionally, it should also be kept in mind that the claimed design need not be aesthetically pleasing to be valid. In other words, an absence of artistic merit does not mean that the design is not patentable.

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.11.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 40**
**DESIGN PATENT DAMAGES—BURDEN OF PROOF**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.1

3

**Apple's Proposed Instruction**

4

5

I will instruct you about the measure of damages~~.~~ for infringement of Apple's design patents.  By instructing you on damages, I am not suggesting which party should win on any issue.

6

7

8

9

10

If you find that ~~[alleged infringer]~~Samsung infringed any valid ~~claim of the [    ]~~Apple design patent, you must then determine the ~~amount of~~ money damages to ~~be awarded to [patent holder] to compensate it for the infringement.~~ award Apple.  The amount of those damages must be adequate to compensate ~~[patent holder]~~Apple for the infringement. ~~A~~ Apple seeks a mix of three different forms of damages ~~award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than~~: its own lost profits, Samsung's profits, and a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

11

12

13

~~[Patent holder]~~Subject to certain exceptions I will mention, Apple has the burden to persuade you of the amount of its damages.  You should award Apple only those damages that ~~[patent holder]~~it proves are more likely than not ~~suffered.~~appropriate under the instructions I will soon give you. While ~~[patent holder]~~Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  ~~[Patent holder]~~Apple is not entitled to damages that are remote or speculative.

14

**Source**

15

16

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 41**
**DESIGN PATENT DAMAGES—LOST PROFITS**

2

Compared to N.D. Cal. Model Patent Jury Instr. B.5.2

3

**Apple's Proposed Instruction**

4

In this case, ~~[patent holder]~~Apple seeks to recover its own lost profits for some of ~~[alleged~~

5

~~infringer]'s~~Samsung's sales of ~~[its~~ infringing ~~product], and a reasonable royalty on the rest of~~
~~[alleged infringer]'s sales.~~ products.  To recover lost profits for infringing sales, ~~[patent~~

6

~~holder]~~Apple must show that but for ~~the~~Samsung's ~~[alleged infringer]~~ infringement there is a reasonable probability
that ~~it~~Apple would have made sales that ~~[alleged infringer]~~Samsung made of the infringing

7

~~product.  [Patent holder]~~products.  Apple must show the share of ~~[alleged infringer]'s~~Samsung's
sales that it would have made if the infringing ~~product~~Samsung products had not been on the

8

market.

9

~~You must allocate the lost profits based upon the customer demand for the patented feature of the~~

10

~~infringing [product] [method].  That is, you must determine which profits derive from the~~
~~patented invention that [alleged infringer] sells, and not from other features of the infringing~~

11

~~[product] [method].~~In assessing Apple's right to recover lost profits for Samsung's infringement
of its design patents, you should apply the same rules I already explained in the context of lost

12

profits for infringement of Apple's utility patents.  Those Instructions are set out in Jury
Instructions Nos.          .  Wherever in those Instructions I referred to Apple's utility patents, you

13

should now focus on Apple's design patents.  Wherever in those Instructions I referred to the
patented invention, you should now focus on the patented design.  Wherever in those Instructions

14

I referred to patented products or products covered by a patent claim, you should now focus on
products or articles that use or embody the patented design.

15

16

**Source**

17

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 42**
**DESIGN PATENT INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS**
Compared to The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.8[8]

**Apple's Proposed Instruction**

If ~~[the Plaintiff] elects~~you decide not to ~~recover [the Defendant]'s~~award Apple its lost profits ~~under 35 USC §289, then read the following paragraph. In this case, [the Plaintiff] has elected to seek [the Defendant]'s profit. If you find infringement, and do not find the [abbreviated patent number]~~for certain sales by Samsung that infringed Apple~~is invalid~~patents, you ~~are to~~ should award ~~[Apple~~ the ~~Plaintiff] [the Defendant]'s~~total ~~profit attributable to the infringement. [The Defendant]'s "total profit" means~~profits that Samsung earned from those infringing sales.  "Total profits" include the entire profit on the sale of ~~the article to which the ~~products with patented ~~design is applied, or with which it is used and ~~designs, and not just the portion of profit ~~attributable to the design~~or ornamental aspects of the patent.~~.  "Total ~~profit" does~~profits" do not include ~~profit attributable to other products that may ~~be~~have been sold in association with an infringing article~~. embodying the patented design. A design patent owner can recover the profit not only of the manufacturer or producer of an infringing article, but also of other sellers in the chain of distribution. [The Plaintiff] is entitled to all profit earned by [the Defendant] that is attributable to the infringement.~~

Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of ~~[the Defendant]'s~~Samsung's receipts from ~~using the design in ~~the sale of ~~the ~~infringing products. ~~[The Plaintiff] has the burden of proving [the Defendant]'s gross revenue by a preponderance of the evidence.~~  You are instructed to accept the revenue figures for each Samsung accused product as provided in Exhibit 1500.

Samsung has the burden of proving the deductible expenses.  Expenses can include costs incurred in producing the gross revenue, such as the cost of ~~the ~~goods.  Other costs may be included as deductible expenses if they are directly attributable to ~~the ~~sale~~s~~sale or manufacture of the infringing products~~resulting in a nexus between the infringing products and the~~.  ~~expense. [The Defendant] has the burden of proving the deductible expenses and the portion of the profit attributable to factors other than use of the infringed design by a preponderance of the evidence. Unless you find that a portion of the profit from the sale of the infringing product is attributable to factors other than use of the infringed design, you shall find that the total profit is attributable to the infringement.~~

**Source**

Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.8.

---

[8] Apple used the formulation of instruction No. 42 submitted in Exhibit A to Dkt. No. 1815 for the redline here.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 43**
**DESIGN PATENT DAMAGES—REASONABLE ROYALTY—**
**ENTITLEMENT—DEFINITION**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.6

**Apple's Proposed Instruction**

If [patent holder]Apple has not proved its claim for its own lost profits, has not proved its claim to Samsung's profits, or has proved its claim for lost profitsto either of those remedies for only a portion of the infringing sales, then [patent holder]Apple should be awarded a reasonable royalty for all infringing Samsung sales for which itApple has not been awarded lost profits damagesor Samsung's profits.  In no event should the damages you award Apple for Samsung's design patent infringement be less than a reasonable royalty.

The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 29 for utility patent infringement.  However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.7.

**PROPOSED FINAL JURY INSTRUCTION NO. 44**
**DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS[9]**
Compared to N.D. Cal. Model Patent Jury Instr. B.5.8

**Apple's Proposed Instruction**

Damages that ~~[patent holder]~~Apple may be awarded by you commence on the date that ~~[alleged infringer]~~Samsung has both infringed and been notified of the ~~[____]~~ patent~~: [use those that apply to this case]~~ or patents it infringed.  ~~[[Patent holder] and [alleged infringer] agree that date was [insert date];]~~

~~[Since [patent holder]~~If you find that Apple sells ~~a product~~products that ~~includes~~include the claimed ~~invention~~designs but has not marked ~~that product~~those products with the patent ~~number~~numbers, you must determine the date that ~~[alleged infringer]~~Samsung received actual written notice of the ~~[____] patent~~patents and the specific ~~product~~products alleged to infringe~~;~~.

~~[Since [patent holder] [marks~~While you may identify an earlier date by which Samsung had notice of Apple's claims of infringement based on your evaluation of the ~~product] or [~~evidence, Apple's lawsuit provided Samsung such notice for the D'677 patent by no later than April 15, 2011, and for the D'305, D'889 and D'087 patents by no later than June 16, 2011.

On the other hand, if you find that Apple does not sell ~~a product~~products covered by ~~the~~a patent~~]~~, then damages begin without the requirement for actual notice under the following circumstances:

- ~~If the [____]~~For each infringed patent that was granted before ~~the infringing activity~~Samsung's infringement began, damages should be calculated as of the date you determine that the infringement began; or

- ~~If the [____]~~For each infringed patent that was granted after ~~the infringing activity~~Samsung's infringement began as determined by you, damages should be calculated as of ~~[the~~the date the patent issued~~].~~.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

---

~~[9]  This instruction may be used when the claim is an apparatus or product claim and [alleged infringer] is a direct infringer.  Different rules may apply if the claim is a method claim or [alleged infringer] is an inducer or contributory infringer.~~

1

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED JURY INSTRUCTION NO. 45**
**UTILITY AND DESIGN PATENTS—INDUCING PATENT INFRINGEMENT**
Compared to N.D. Cal. Model Patent Jury Instr. B.3.9

3

**Apple's Proposed Instruction**

4

5

6

Apple and Samsung each argue that [alleged infringer]the other side has actively induced another to infringe the [    ] patent. its patents.  In particular, Apple claims that Samsung's Korean parent SEC actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility and design patents.  Samsung claims that Apple actively induced third parties to infringe Samsung's utility patents.

7

8

9

In order for there to be inducement of infringement by [alleged infringer],either SEC or Apple, someone else must directly infringe a claim of the [    ]asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, [alleged infringer]a party must:

10

1.  have intentionally taken action that actually induced direct infringement by another;

11

2.  have been aware of the [    ]asserted patent; and

12

3.  have known that the acts it was causing would be infringing.

13

14

15

16

The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that a party was willfully blind.  If [alleged infringer]SEC or Apple did not know of the existence of the patent in question or that the acts it was inducing were infringing, it cannotcan be liable for inducement unlessonly if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that [accused infringer]SEC or Apple was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that [accused infringer]SEC or Apple took a risk that was substantial and unjustified.

17

18

19

20

If you find that [alleged infringer]SEC or Apple was aware of thean asserted patent, but believed that the acts it encouraged did not infringe that patent[,, or that the patent was invalid,]¹⁰ [alleged infringer], SEC or Apple cannot be liable for inducement.  [[Alleged infringer]'s reliance on advice given by their lawyers is one factor you may consider in deciding whether [alleged infringer] believed that it was not encouraging infringement of the patent[, or that the patent was invalid.]]

21

**Sources**

22

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.9.

23

24

25

26

27

28

---

¹⁰  Case law does not resolve the question whether one who knows that they are encouraging infringement of a patent but believes that patent to be invalid has the requisite intent to induce infringement.  The logic by which belief in noninfringement exculpates would seem to extend to a belief in invalidity as well.

1
**PROPOSED FINAL JURY INSTRUCTION NO. 46**
**DESIGN AND UTILITY PATENTS—WILLFUL PATENT INFRINGEMENT**
2
Compared to N.D. Cal. Model Patent Jury Instr. B.3.10

3
**Apple's Proposed Instruction**

4
In this case, ~~[patent holder] argues~~Apple and Samsung both argue that ~~[alleged infringer]~~the other
5
side willfully infringed ~~the [patent holder]'s patent~~its patents.
~~—~~

6
To prove willful infringement, ~~[patent holder]~~each party must first persuade you that the ~~[alleged
infringer]~~other side infringed a valid ~~[and enforceable]~~ claim of ~~the [patent holder]'s patent~~one or
more of its patents.  The requirements for proving such infringement were discussed in my prior
7
instructions.

8
In addition, to prove willful infringement, the ~~[patent holder]~~ must persuade you that it is highly
probable that ~~[prior to the filing date of the complaint], [alleged infringer]~~the other side acted
9
with reckless disregard of the ~~claims of the [~~patent ~~holder]'s [patent]~~.it infringed.

10
To demonstrate such "reckless disregard," ~~[the~~ patent holder~~] must satisfy a two-part test.  The
first part of the test is objective.  The [patent holder]~~ must persuade you that the ~~[alleged
11
infringer] acted despite an objectively high likelihood that its actions constituted infringement of
a valid [and enforceable] patent.  The state of mind of the [alleged infringer] is not relevant to this
12
inquiry.  Rather, the appropriate inquiry is whether the defenses put forth by [alleged infringer],
fail to raise any substantial question with regard to infringement or validity [or enforceability].
13
Only if you conclude that the defenses fail to raise any substantial question with regard to
infringement or validity [or enforceability], do you need to consider the second part of the test.
14
The second part of the test does depend on the state of mind of the [alleged infringer].  The
[patent holder] must persuade you that [alleged infringer]~~other side actually knew, or it was so
15
obvious that ~~[alleged infringer]~~the other side should have known, that its actions constituted
infringement of a valid ~~[~~and enforceable~~]~~ patent.
16

In deciding whether ~~[alleged infringer]~~Samsung or Apple acted with reckless disregard for ~~[any
17
patent~~ ~~holder]'s patent~~that you find is infringed, you should consider all of the facts surrounding
the alleged infringement including, but not limited to, the following factors.
18

19
~~Factors~~A factor that may be considered as evidence that ~~[alleged infringer]~~Samsung or
Apple was not willful ~~include:(1)     Whether [alleged infringer]~~is whether it acted in a
20
manner consistent with the standards of commerce for its industry~~; [and]~~.

21
~~(2)     Although there is no obligation to obtain an opinion of counsel whether [alleged
infringer] relied on a legal opinion that was well-supported and believable and that
advised [alleged infringer] (1) that the [product] [method] did not infringe [patent
22
holder]'s patent or (2) that the patent was invalid [or unenforceable].~~[11]

23
~~Factors~~A factor that may be considered as evidence that ~~[alleged infringer]~~Samsung or
24
Apple was willful ~~include:     (1)     Whether [alleged infringer]~~is whether it intentionally
copied a product of ~~[patent holder]~~the other side that is covered by ~~the~~a patent.

25

26
―――――――――――――――――

27
~~[11]  This bracketed language should only be included if the alleged infringer relies on advice of
counsel.  There is no affirmative obligation to obtain opinion of counsel.  *In re Seagate
28
Technology, LLC*, 2007 U.S. App. LEXIS 19768 (Fed. Cir.  Aug. 20, 2007).~~

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.10.

1

**TRADE DRESS JURY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 47**
**TRADE DRESS DILUTION AND INFRINGEMENT—INTRODUCTION**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.0 (2007 Ed.)

**Apple's Proposed Instruction**

Apple seeks damages against ~~the defendant, [*name of defendant*].~~Samsung for ~~[trademark infringement] [unfair competition]. The defendant~~diluting its iPhone and iPad-related trade dresses.  Samsung denies ~~[~~that it diluted the Apple iPhone and iPad-related trade dresses, and also contends that the trade dresses are invalid (or "unprotectable").

Apple also seeks damages against Samsung for infringing ~~the trademark] [unfairly competing] [and] [contends~~its iPad-related trade dress.  Samsung denies infringing the ~~trademark~~iPad-related trade dress and, as already stated, contends that the iPad-related trade dress is invalid~~].  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.~~.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.0 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 48**
**TRADE DRESS DILUTION AND INFRINGEMENT—DEFINITION OF TRADE DRESS**
**(15 U.S.C. § 1125(A))**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.2 (2007 Ed.)

**Apple's Proposed Instruction**

Trade dress is the non-functional physical detail and design of a product or its packaging, which [indicates] [or] [identifies] the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements [is not essential to the product's use or purpose] [or] [does not affect the cost or quality of the product] even though certain particular elements of the trade dress may be functional. A person who uses the trade dress of another may be liable for damages.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.2 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 49**
**TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY**
Compared to ABA 3.2.1

**Apple's Proposed Instruction**

The first step in considering ~~plaintiff's claim~~Apple's claims that ~~defendant~~Samsung diluted and infringed ~~plaintiff's~~certain of Apple's iPhone and iPad trade ~~dress~~dresses is to determine whether or not ~~plaintiff's trade dress is protectible.~~each asserted trade dress is valid (or "protectable"). You need to make this determination for each of Apple's asserted trade dresses.

You must find that ~~the plaintiffs'~~an asserted Apple trade dress is ~~protectible~~valid if ~~plaintiff proves, by a preponderance of the evidence, that~~ the trade dress:

~~1.   has been used in commerce;~~

1.      has acquired distinctiveness through secondary meaning; and

2.   is ~~distinctive; and        3.      is~~ non-functional.

You must presume Apple's registered iPhone trade dress is both distinctive and non-functional. Unless Samsung persuades you that this registered trade dress is more likely than not either functional or not distinctive, you must find that the trade dress is valid.

For each unregistered iPhone trade dress and for the iPad trade dress, Apple must persuade you that the trade dress is more likely than not valid.  Accordingly, for each unregistered trade dress where Apple persuades you that the trade dress is distinctive and non-functional, you must find that the trade dress is valid.

For each Apple trade dress that you find valid, resolving whether Samsung has diluted or infringed the trade dress will require you to assess additional questions that I will explain after addressing validity.

**Source**

Adapted from ABA 3.2.1-3.2.2, Ninth Circuit Model Civil Jury Instr. - 15.6 ,15.7 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 50**
**TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY—**
**DISTINCTIVENESS—SECONDARY MEANING**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.10 (2007 Ed.)

**Apple's Proposed Instruction**

If you determined in Instruction [*insert number of instruction e.g. 15.9*] that [*identify plaintiff's claimed trademark*] is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive.  This market recognition is called the trademark's "secondary meaning."

A [word] [symbol] [term]A trade dress can become distinctive through the development of what is called "secondary meaning."  A trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.  You

For each asserted Apple trade dress, you must find that the preponderance of the evidence showsit is more likely than not that a significant number of the consuming public associates the [*identify the alleged trademark*]trade dress with a single source, in order to find that it has acquired a secondary meaning.

When you are determining whether [*describe symbol or term*]each trade dress has acquired a secondary meaning, consider the following factors:

1.  Consumer Perception.  Whether the people who purchase the [product] [service] that bearsApple products embodying the claimed trademarktrade dress associate the trademarktrade dress with the [owner] [assignee] [licensee]:Apple;

2.  Advertisement.  To what degree and in what manner the [owner] [assignee] [licensee]Apple may have advertised under the claimed trademarktrade dress;

3.  Demonstrated UtilitySuccess.  Whether the [owner] [assignee] [licensee]Apple successfully used this trademarktrade dress to increase the sales of its [product] [service]:products;

4.  Extent of Use.  The length of time and manner in which the [owner] [assignee] [licensee]Apple used the claimed trademarktrade dress;

5.  Exclusivity.  Whether the [owner's] [assignee's] [licensee's]Apple's use of the claimed trademarktrade dress was exclusive: as of the time of the first alleged infringement or dilution versus whether Apple authorized anyone else to use the trade dress; and

6.  Copying.  Whether the defendantSamsung intentionally copied the [[owner's] [assignee's] [licensee's]] trademark:trade dress.

7.  Actual Confusion.  Whether the defendant's use of the plaintiff's trademark has led to actual confusion among a significant number of consumers; and

8.  [*Insert any other factors that bear on secondary meaning*].

The presence or absence of any particular factor should not necessarily resolve whether [*identify* the *alleged trademark*]asserted trade dress has acquired secondary meaning.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness [through secondary meaning] [[by the public coming to associate the mark with the [owner of the mark] [a particular source]]]. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

[The plaintiffApple has the burden of proving that the [*identify plaintiff's trademark*] hasit is more likely than not that its unregistered trade dresses have acquired a secondary meaning.] [The defendant. Samsung has the burden of proving it is more likely than not that the [*identify plaintiff's trademark*] lacks aApple's registered iPhone trade dress has not acquired secondary meaning.].

The mere fact that the plaintiffApple is using [*describe symbol or term*], or that the plaintiff began using it before the defendant.the asserted trade dresses does not mean that the trademark hasthey have acquired secondary meaning. There is no particular length of time that a trademarktrade dress must be used before it acquires a secondary meaning.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.8, 15.10 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 51**
**TRADE DRESS DILUTION AND INFRINGEMENT—VALIDITY—**
**NON-FUNCTIONALITY REQUIREMENT**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.11 (2007 Ed.)

**Apple's Proposed Instruction**

An individual product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality.  ~~It is non-functional if its shape or form makes no contribution to the product's function or operation. If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional.  However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional.~~

To determine whether a product's particular shape or form is functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form ~~are essential to the product's use or purpose.~~ is essential to the product's use or purpose.  This is because the fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress.  A design patent may be evidence that the trade dress is non-functional.

You should assess the following factors in deciding if ~~the~~ a product feature or a design as a whole is functional or non-functional:

1. <u>The Design's Utilitarian Advantage</u>.  In considering this factor, you may examine whether the particular design or product feature ~~yield~~yields a utilitarian advantage over how the product might be without that particular design or product feature.  If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary it is more likely to be ~~nonfunctional~~non-functional;

2. <u>Availability of Alternate Designs</u>.  In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration. For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative.  They must be commercially feasible.  The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional;

3. <u>Advertising Utilitarian Advantage in the Design</u>.  In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly.  If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional; and

4. <u>The Design's Method of Manufacture</u>.  In considering this factor, you may examine whether the particular design or feature ~~result~~results from a relatively simple or inexpensive method of manufacture.  If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the design or feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

~~[The plaintiff~~Apple has the burden of proving that its unregistered trade dresses are more likely than not non-~~functionality by a preponderance of~~functional.  Samsung bears the ~~evidence [in order to show~~burden of proving that the registered iPhone trade ~~dress~~ is ~~valid and protected~~more likely than not functional.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.11 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 52**
**TRADE DRESS DILUTION—ELEMENTS AND BURDEN OF PROOF**
Compared to ABA 3.4.1

**Apple's Proposed Instruction**

Apple contends that ~~defendant~~Samsung has diluted ~~plaintiff's~~Apple's iPhone and iPad-related trade ~~dress.~~dresses.  "Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish goods or services, regardless of the presence or absence of competition, actual or likely confusion, mistake, deception, or economic injury.

To prove this claim~~, plaintiff~~ as to any of its asserted trade dresses that you have found is valid, Apple has the burden of proving ~~by a preponderance~~that each of ~~evidence~~the following additional elements ~~is more likely than not true~~:

    1.    ~~that plaintiff is the owner of trade dress that is famous; 2.~~ that the ~~famous~~asserted Apple trade dress is ~~distinctive, either inherently or through acquired distinctiveness~~famous; ~~3~~

    2.    that ~~defendant is making or has made use~~Samsung began selling its accused products in commerce ~~of an identical or nearly identical trade dress;        4.        that defendant's use began~~ after ~~plaintiff's~~Apple's asserted trade dress became famous; and ~~5~~

    3.    that ~~use of defendant's trade dress is~~Samsung's accused products are likely to cause dilution ~~by blurring or tarnishment~~of Apple's asserted trade dress.

For any Apple trade dress that you have found is valid (or "protectable"), if you also find that each of these three elements has been proved, your verdict on dilution with respect to that trade dress should be for Apple.  If Apple has failed to prove any of ~~plaintiff's mark.~~these elements, your verdict on dilution with respect to that trade dress should be for Samsung.

**Source**

Adapted from ABA 3.4.1.

**PROPOSED FINAL JURY INSTRUCTION NO. 53**
**TRADE DRESS DILUTION—ELEMENTS—FAME**
Compared to ABA 3.4.2—3.4.3

**Apple's Proposed Instruction**

A trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods ~~or services~~ of the trade dress owner. In determining whether ~~plaintiff's~~each of Apple's trade ~~dress~~dresses is famous, you may consider the following factors. These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether an asserted trade dress is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether the trade dress is famous. You should consider all the relevant evidence in making your determination about whether each iPhone and iPad-related trade dress is famous. ~~The factors you may consider are:~~

The factors you may consider are:

1. the duration, extent and geographic reach of advertising and publicity of the trade dress, whether advertised or publicized by ~~plaintiff~~Apple or third parties;

2. the amount, volume and geographic extent of sales of goods ~~and services~~ offered under the trade dress;

3. the extent of actual recognition of the trade dress; and

4. whether the trade dress was federally registered.

To be "famous," ~~the plaintiff's~~each of Apple's asserted trade ~~dress~~dresses must have been truly prominent and renowned at the time of ~~the defendant's~~Samsung's first commercial ~~use of her trade dress. Plaintiff's~~sale of its accused products. Apple's trade dress must have become very widely recognized by the consuming public as the designator of ~~plaintiff's~~Apple's goods ~~or services~~ and must have such significant consumer associations that even uses of trade dress on non-competing goods ~~or services~~ can affect the value of the trade dress.

**Source**

Adapted from ABA 3.4.2—3.4.3.

**PROPOSED FINAL JURY INSTRUCTION NO. 55**
**TRADE DRESS DILUTION—ELEMENTS—DILUTION**
Compared to ABA 3.4.4

**Apple's Proposed Instruction**

Dilution ~~Dilution by blurring~~ is an association arising from the similarity between the appearance of the defendant's ~~trade dress~~accused products and plaintiff's famous trade dress that impairs the distinctiveness of the famous trade dress. ~~Dilution by tarnishment is an association arising from the similarity between defendant's trade dress and plaintiff's famous trade dress that harms the reputation of the famous trade dress.~~ In determining whether ~~a trade dress~~the appearance of Samsung's accused products is likely to cause dilution ~~by blurring or by tarnishment~~of each asserted Apple trade dress, you may consider all relevant factors, including the following:

1.   the degree of similarity between ~~defendant's trade dress~~Samsung's accused products and ~~the~~Apple's famous trade dress;

2.   the degree of ~~inherent or~~acquired distinctiveness of ~~the~~Apple's famous trade dress;

3.   the extent to which ~~the owner of the famous trade dress is engaging~~Apple was engaged in substantially exclusive use of the trade dress~~.~~ at the time of the first alleged dilution versus whether Apple authorized anyone else to use its trade dress;

4.   the degree of recognition of ~~the~~Apple's famous trade dress;

5.   whether ~~defendant~~Samsung intended to create an association with ~~the~~Apple's famous trade dress; and

6.   any actual association between ~~defendant's trade dress~~Samsung's accused products and the Apple famous trade dress.

A dilution claim does not require a finding of actual dilution of the plaintiff's trade dress.  It is sufficient for you to find here that Samsung's sale of its accused products is likely to cause dilution of an asserted Apple trade dress.

**Source**

Adapted from ABA 3.4.4.

**PROPOSED FINAL JURY INSTRUCTION NO. 56**
**INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS**
**(15 U.S.C. § 1125(A)(1))**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.6 (2007 Ed.)

**Apple's Proposed Instruction**

~~On the plaintiff's claim for~~ Apple also claims that Samsung has infringed its iPad trade dress ~~infringement, the plaintiff.~~  If you found that the iPad trade dress is valid, Apple has the burden of proving ~~by a preponderance of the evidence each of the following elements: 1.    [*describe the plaintiff's trade dress*] is distinctive; 2.      the plaintiff owns [*describe the plaintiff's*~~ that Samsung more likely than not used the trade dress~~] as trade dress; 3.        the [*describe the plaintiff's trade dress*] is nonfunctional; and 4.      the defendant used [*describe trade dress used by the defendant*] [trade dress similar to [*describe the plaintiff's trade dress*]] without the consent of the plaintiff~~ in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of ~~the [plaintiff's] [defendant's]~~Samsung's goods.

If you find that ~~each of the elements on which the plaintiff has the burden of proof~~this element has been proved, your verdict should be for ~~the plaintiff.~~Apple.  If, on the other hand, ~~the plaintiff~~Apple has failed to prove ~~any of these elements~~this element, your verdict should be for ~~the defendant.~~Samsung.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.6 (2007 Ed.).

PROPOSED FINAL JURY INSTRUCTION NO. 57
INFRINGEMENT—LIKELIHOOD OF CONFUSION—
FACTORS—*SLEEKCRAFT* TEST
(15 U.S.C. §§ 1114(1) AND 1125(A))
Compared to Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.)

**Apple's Proposed Instruction**

You must consider whether ~~the defendant's~~Samsung's use of the ~~trademark~~iPad trade dress is likely to cause confusion about the source of ~~the plaintiff's or the defendant's~~Samsung's goods.

I will suggest some factors you should consider in deciding this.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.  As you consider the likelihood of confusion you should examine the following:

1. Strength or Weakness of the ~~Plaintiff's Mark.~~Apple Trade Dress.  The more the consuming public recognizes ~~the plaintiff's trademark~~Apple's iPad trade dress as an indication of origin of ~~the plaintiff's~~Apple's goods, the more likely it is that consumers would be confused about the source of ~~the defendant's~~Samsung's goods if ~~the defendant~~Samsung uses a similar ~~mark~~design or configuration.

2. ~~Defendant's~~Samsung's Use of the ~~Mark~~Trade Dress.  If ~~the defendant~~Samsung and ~~plaintiff~~Apple use their ~~trademarks~~designs on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3. ~~-~~Similarity of ~~Plaintiff's~~Apple's and ~~Defendant's Marks.~~Samsung's Designs.  If the overall impression created by ~~the plaintiff's trademark~~Apple's trade dress in the marketplace is similar to that created by ~~the defendant's trademark~~Samsung's design in [appearance] [sound] [or] [meaning], there is a greater chance [that consumers are likely to be confused by defendant's use of a mark] [of likelihood of confusion]  [.  Similarities in appearance, ~~sound or meaning~~ weigh more heavily than differences in finding the ~~marks~~trade dress and accused design are similar].

4. Actual Confusion.  If use by ~~the defendant~~Samsung of the ~~plaintiff's trademark~~Apple trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion.  However actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, ~~the defendant's~~Samsung's use of the ~~trademark~~trade dress may still be likely to cause confusion.  As you consider whether the ~~trademark~~design used by ~~the defendant~~Samsung creates for consumers a likelihood of confusion with ~~the plaintiff's trademark~~Apple's products, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5. ~~Defendant's~~Samsung's Intent.  Knowing use by ~~defendant~~Samsung of the ~~plaintiff's trademark~~Apple trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of ~~the plaintiff's mark~~Apple's trade dress, suggesting an intent to cause a likelihood of confusion.  On the other hand,

even in the absence of proof that ~~the defendant~~Samsung acted knowingly, the use of ~~plaintiff's trademark~~Apple's trade dress to identify similar goods may indicate a likelihood of confusion.

6. <u>Marketing/Advertising Channels</u>.  If ~~the plaintiff's~~Apple's and ~~defendant's [Samsung's~~ goods~~] [services]~~ are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7. <u>Consumer's Degree of Care</u>.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the ~~plaintiff's~~Apple and ~~defendant's trademarks~~Samsung products.

8. ~~Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.~~

~~[9.~~    <u>Other Factors</u>.  Any other factors that bear on likelihood of confusion.~~]~~.

Confusion in the marketplace can occur before the purchase of the good in question (also called "initial interest" confusion), at the moment of the purchase (also called "point of sale" confusion), or after the purchase (also called "post-sale" confusion).

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.16 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 59**
**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**
**(15 U.S.C. § 1117(a))**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.25 (2007 Ed.)

**Apple's Proposed Instruction**

If you find for the plaintiff on the plaintiff's [infringement] [unfair competition] claim [and find that the defendant had statutory notice or actual notice of the plaintiff's registered trademark], you must determine the plaintiff's actual damages.

The plaintiffApple has the burden of proving the actual damages by a preponderance of the evidence.that it more likely than not suffered.  Damages means the amount of money which will reasonably and fairly compensate the plaintiffApple for any [injury] [and] [or] [property damage] you find was caused by the defendant'sSamsung's infringement or dilution of the plaintiff'sApple's registered trademarkor unregistered trade dresses.

You should consider the following:

     1.     [The [injury to] [loss of] the plaintiff's Apple's reputation][;];

     2.     [The [injury to] [loss of] plaintiff's Apple's goodwill, including injury to the plaintiff'sApple's general business reputation][;]; and

     3.     [The lost profits that the plaintiffApple would have earned but for the defendant'sSamsung's infringement. and/or dilution.  Profit is determined by deducting all expenses from gross revenue][;].

     4.     [The expense of preventing customers from being deceived][;]

     5.     [The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement][;] [and]

     6.     [Insert any other factors that bear on plaintiff's actual damages].

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate.  Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.25 (2007 Ed.).

**PROPOSED FINAL JURY INSTRUCTION NO. 60**
**TRADE DRESS DAMAGES—DEFENDANT'S PROFITS**
**(15 U.S.C. § 1117(a))**
Compared to Ninth Circuit Model Civil Jury Instr. - 15.26 (2007 Ed.)[12]

**Apple's Proposed Instruction**

~~In addition to actual damages, the plaintiff~~ Apple also is entitled to any profits earned by ~~the defendant~~Samsung that are attributable to ~~the~~willful infringement~~, which the plaintiff proves by a preponderance of the evidence~~ or willful dilution.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of ~~defendant's~~Samsung's receipts from ~~using the trademark in the sale~~sales of ~~a [product].  The plaintiff~~products that infringed or diluted Apple's trade dresses.  ~~has the burden of proving a defendant's gross revenue by a preponderance of the evidence.~~  You are instructed to accept the revenue figures for each Samsung accused product as provided in Exhibit 1500.

Expenses are all ~~[operating]~~[, overhead]~~,~~ and production costs incurred in producing the gross revenue.  ~~The defendant~~Samsung has the burden of proving the expenses ~~[and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence~~that it more likely than not incurred.

~~Unless you find that a portion of the profit from the sale of the [*specify goods*] using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.~~

**Source**

Adapted from Ninth Circuit Model Civil Jury Instr. - 15.26 (2007 Ed.).

---

[12] Apple used the formulation of instruction No. 60 submitted in Exhibit A to Dkt. No. 1815 for the redline here.

1

2   Dated: August 18, 2012                    MORRISON & FOERSTER LLP

3

4                                             By:  /s/  *Michael A. Jacobs*
                                                     Michael A. Jacobs
5
                                              Attorneys for Plaintiff
6                                             APPLE INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28