UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) | Case No.: 11-CV-01846-LHK |
| | ) | |
| Plaintiff and Counterdefendant, | ) | |
| v. | ) | TENTATIVE FINAL JURY |
| | ) | INSTRUCTIONS – PART II |
| SAMSUNG ELECTRONICS CO., LTD., A | ) | |
| Korean corporation; SAMSUNG | ) | (DESIGN PATENT, INDUCEMENT, |
| ELECTRONICS AMERICA, INC., a New York | ) | WILLFULNESS, BREACH OF |
| corporation; SAMSUNG | ) | CONTRACT, AND ANTITRUST |
| TELECOMMUNICATIONS AMERICA, LLC, | ) | INSTRUCTIONS) |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants and Counterclaimants. | ) | |

Attached as Exhibit B are the tentative design patent, inducement, willfulness, breach of contract, and antitrust final jury instructions that are currently ready.  In both the final jury instructions and the verdict form, the Court will use the "preponderance of the evidence" and "clear and convincing evidence" standards.  Conforming changes will be made to Undisputed Final Jury Instruction Nos. 11 and 16, which were previously filed with Tentative Final Jury Instructions Part I.

**IT IS SO ORDERED.**

Dated: August 18, 2012

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

2

**DESIGN PATENT JURY INSTRUCTIONS**

United States District Court
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 32**
**DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS**

Before you decide whether Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America have infringed one or more of Apple's asserted design patents, or whether the design patents are invalid, you will have to understand the design patent claims.

Unlike utility patents, a design patent can only have one claim. That claim covers all the figures in the patent. It is permissible to illustrate more than one embodiment of a design in a single design patent application. Each design patent contains multiple drawings to illustrate the claimed design. The scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept, and is not limited to isolated features of the drawings. All matter depicted in solid lines contributes to the overall appearance of the design.

It is my job as a judge to interpret for you what is claimed by the patents. You must accept my interpretations as correct. My interpretations should not be taken as an indication that I have an opinion one way or another regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make. When considering the design patents, you should view certain features in the drawings in this way:

- **D'677 Patent**

The D'677 Patent claims the ornamental design of an electronic device as shown in Figures 1-8. The broken lines in the D'677 Patent constitute unclaimed subject matter. The use of "solid black surface shading" on the D'677 Patent represents the color black. The use of oblique line shading on the D'677 Patent is used to show a transparent, translucent, or highly polished or reflective surface.

- **D'087 Patent**

The D'087 Patent claims the ornamental design of an electronic device as shown in Figures 1-48. The broken lines in the D'087 Patent constitute unclaimed subject matter. Thus, the D'087 Patent claims the front face, a "bezel encircling the front face of the patented design [that] extends from the front of the phone to its sides," and a flat contour of the front face, but does not claim the rest of the article of manufacture.

- **D'889 Patent**

The D'889 Patent claims the ornamental design of an electronic device as shown in Figures 1-9. The broken lines depicting the human figure in Figure 9 do not form a part of the claimed design. The other broken lines in the other figures are part of the claimed design. The D'889 also includes oblique line shading on several of the figures. The oblique line shading in Figures 1-3 and Figure 9 depicts a transparent, translucent, or highly polished or reflective surface from the top perspective view of the claimed design, the top view of the claimed design, and the bottom perspective view of the claimed design.

- **D'305 Patent**

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

The D'305 Patent claims the ornamental design for a graphical user interface for a display screen or portion thereof, as shown in Figures 1-2.  The broken line showing of a display screen in both views forms no part of the claimed design.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.2.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 5, 7.2; Samsung's Proposed Instruction 32; Apple's Proposed Instruction 32.

**United States District Court**
For the Northern District of California

5

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 33**
**DESIGN PATENT INFRINGEMENT—BURDEN OF PROOF**

To prove infringement of any of its design patents, Apple must prove by a preponderance of the evidence that Samsung has infringed the patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.1.

**United States District Court**
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 34**
**DESIGN PATENTS—INFRINGEMENT GENERALLY**

I will now instruct you as to the rules you must follow when deciding whether Apple has proven that one or more of the Samsung entities (Samsung Electronics America, Samsung Telecommunications America, and Samsung Electronics Company) has directly infringed the D'677, D'087, D'305 and/or D'889 design patents.

As with utility patents, patent law gives the owner of a valid design patent the right to exclude others from importing, making, using, offering to sell, or selling the patented designs within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent.

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis: The location of the sale depends on many factors, and you may find that the sale occurred in several places. A sale occurs wherever the "essential activities" of the sale take place. The essential activities include, for example, negotiating the contract and performing obligations under the contract.

Apple bears the burden of proving by a preponderance of the evidence that each device infringes each separate patent. Therefore, you, the jury, must determine infringement for each patent separately, considering each individual device separately.

**Source:** AIPLA Model Patent Jury Instructions 3.0; Samsung's Proposed Instruction number 34 (modified); Samsung's Proposed Instruction number 34.2 (modified); Apple's Proposed Instruction number 34.1 (modified).

**Authorities**: 35 U.S.C. § 271; *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369-71 (Fed. Cir. 2008); *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375 (Fed. Cir. 2005);

United States District Court
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 34.1**
**DESIGN PATENTS—DIRECT INFRINGEMENT**

To determine direct infringement of a design patent, you must compare the overall appearances of the accused design and the claimed design.

If you find by a preponderance of the evidence that the overall appearance of an accused Samsung design is substantially the same as the overall appearance of the claimed Apple design patent, and that the accused design was made, used, sold, offered for sale, or imported within the United States, you must find that the accused design infringed the claimed design.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  You should consider any perceived similarities or differences between the patented and accused designs.  Minor differences should not prevent a finding of infringement.

This determination of whether two designs are substantially the same will benefit from comparing the two designs with prior art.  You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement.

You may find the following guidelines helpful to your analysis:

1.  The placement and ornamentation of a logo may alter the overall design.  However, the use of a mark or logo to identify the source of an otherwise infringing design will not avoid infringement.

2.  When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

3.  If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same.

4.  If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

5.  You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same.

Whether Samsung knew its products infringed or even knew of Apple design patents does not matter in determining infringement.

**Source:** Apple's Proposed Instruction number 34 (modified); Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3; *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (en banc); *Gorham Co. v. White*, 81 U.S. 511, 528 (1871).

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULLNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

United States District Court
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 34.2**
**DESIGN PATENT DIRECT INFRINGEMENT—COMPARISONS**

In deciding the issue of infringement you must compare Samsung's accused products to the design patents.  In addition, you have heard evidence about certain Apple products and models.  If you determine that any of Apple's products or models are substantially the same as an Apple patent design, and that the product or model has no significant distinctions with the design, you may compare the product or model directly to the accused Samsung products.  This may facilitate your determination of whether the accused products infringe the Apple patent design.  If you determine that a particular Apple product or model does not embody a patented design, you may not compare it to the accused devices.

**Source**: Samsung's Proposed Instruction number 34.4 (modified); Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 8.3; *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly, indeed, such comparison may facilitate application of *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other.").

9

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

# [UNDISPUTED] FINAL JURY INSTRUCTION NO. 35
## DESIGN PATENTS—INVALIDITY BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether Samsung has proven that the Apple design patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any design patent, Samsung must persuade you by clear and convincing evidence that the design patent is invalid.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.4.1.

**Authorities**

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242, 2251 (2011); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1228, 2012 U.S. App. LEXIS 13513, at *12-14 (Fed. Cir. July 2, 2012) ("Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

**[DISPUTED] FINAL JURY INSTRUCTION NO. 36**
**DESIGN PATENTS—PRIOR ART**

Before I describe how to assess whether Apple's design patents are invalid, I will instruct you about documents and things called "prior art."

In general, prior art includes things that existed before the claimed design, that were publicly known in this country, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.

Specifically, prior art includes any of the following items received into evidence during trial:

- If the claimed design was already publicly known or publicly used by others in the United States before the date of invention of the claimed design;

- If the claimed design was already patented or described in a printed publication anywhere in the world before the date of invention of the claimed design. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- If the claimed design was already described in another issued U.S. patent or published U.S. patent application that was based on an application filed before the date of invention of the claimed design;

- If the claimed design was already made by someone else in the United States before the date of invention, if that other person had not abandoned, suppressed, or concealed his/her invention.

Since the date of invention of the D'677 and D'087 patents is in dispute in this case, you must determine whether Apple has proved the dates these designs were invented. The date of invention occurs when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial. If you determine that Apple has not proved when the patents were invented, you must assume that the date of invention of the patented designs was not until the filing date of the patent.

The Apple design patents have the following filing dates:

- D'677 patent: January 5, 2007

- D'087 patent: January 5, 2007

- D'889 patent: March 17, 2004

- D'305 patent: June 23, 2007

**Source**: Apple's Proposed Instruction Number 36 (modified); N.D. Cal. Model Patent Jury Instruction B.4.3A1 (modified).

**[DISPUTED] FINAL JURY INSTRUCTION NO. 37**
**DESIGN PATENTS—ANTICIPATION**

A design patent is invalid if it is not new.  If a design patent is not new we say it is "anticipated" by a prior art reference.  For a claimed design patent to be invalid because it is anticipated, Samsung must prove by clear and convincing evidence that there is a single prior art reference that is substantially the same as the claimed design patent.

The same standard of substantial similarity that applied to infringement also applies to anticipation.  That is, the single prior art reference and the claimed design patent are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  You should consider any perceived similarities or differences between the claimed design and prior art reference.  Minor differences should not prevent a finding of anticipation.

**Source**: Apple's Proposed Instruction number 36 (modified); Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3a1; *Egyptian Goddess, Inc. v. Swisa, Únc.*,543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 8l U.S. 5ll, 528 (1871)); *id*. at 11 ("For the anticipation and obviousness analysis, the focus should likewise be on 'the overall design' of the patent as compared to the prior art.")

United States District Court
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 38**
**DESIGN PATENTS—OBVIOUSNESS**

Even if a design is not anticipated by a single reference, it may still be invalid if the claimed design would have been obvious to a designer of ordinary skill in the field at the time the design was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.  The ultimate conclusion of whether a claimed design is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field of the patent at the time the claimed design was made.  In deciding this, you should consider all the evidence from trial, including:

> (1)   the levels of education and experience of persons designing articles in the field;
>
> (2)   the types of problems encountered in designing articles in the field; and
>
> (3)   the sophistication of the field.

Second, you must determine if a designer of ordinary skill in these designs would have combined the prior art references to create the same overall visual appearance as the claimed design.  To do this, you must consider whether Samsung has identified a "primary" prior art reference.  A "primary" reference must be an actual design which creates basically the same visual impression as the patented design.

If you identify a primary reference, you must then consider whether Samsung has identified one or more "secondary" prior art references.  "Secondary" references are other references that are so visually related to the primary reference that the appearance of certain ornamental features in the other references would suggest the application of those features to the primary reference.  If you find that there are one or more such secondary references, you must determine if a designer of ordinary skill in these designs would have combined these references to create the same overall visual appearance as the claimed design.

Finally, before deciding the issue of obviousness, you must consider other factors that might show that the designs were not obvious despite the prior art.  You may only consider those factors that Apple has established through evidence admitted at trial.  No one factor alone is dispositive:

> (1)   Were products covered by the claimed design commercially successful due to the appearance of the claimed design?
>
> (2)   Did others copy the claimed design?
>
> (3)   Did the claimed design achieve an unexpectedly superior appearance over the closest prior art?
>
> (4)   Did others in the field praise the claimed design or express admiration for the claimed design?

The presence of any of the factors may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

In deciding whether the claimed design was obvious, keep in mind that a design with several features is not obvious merely because each individual feature was present in prior art designs.  You must always be careful not to determine obviousness using the benefit of hindsight.  You

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

should put yourself in the position of a person of ordinary skill in the field at the time the claimed design was made and should not consider what is known today.

**Source**

Apple's Proposed Instruction number 38 (modified); Samsung's Proposed Instruction number 38.3 (modified); Adapted from N.D. Cal. Model Patent Jury Instr. B.4.3b; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.7- 9.10; *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329, 1332 (Fed. Cir. 2012); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("[T]he ultimate inquiry . . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved."); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed Cir. 2009).

United States District Court
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 39
DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY**

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture.  If Samsung proves by clear and convincing evidence that the overall appearance of an Apple patented design is dictated by how the article claimed in the patent works, the patent is invalid because the design is not "ornamental."  In other words, the inventor did not "design" anything because in order to achieve the function of the design, it had to be designed that way.

When deciding this, you should keep in mind that design patents must be for articles of manufacture, which by definition have inherent functional characteristics.  It is normal that claimed designs perform some function – that does not disqualify them from patent protection.

When there are several other designs that achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.  However, this may not be true if the other designs adversely affect the utility of the article.

**Source**

Apple's Proposed Instruction number 39 (modified); Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 9.11; *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("A design is not dictated solely by its function when alternative designs for the article of manufacture are available.").

## INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

**[DISPUTED] JURY INSTRUCTION NO. 45**
**UTILITY AND DESIGN PATENTS—INDUCING PATENT INFRINGEMENT**

Apple claims that Samsung's Korean parent SEC actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility and design patents.  Samsung claims that Apple actively induced third parties to infringe Samsung's '460 patent.

In order for there to be inducement of infringement by either SEC or Apple, someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the alleged infringer must:

    1.  have intentionally taken action that actually induced direct infringement by another;

    2.  have been aware of the asserted patent; and

    3.  have known that the acts it was causing would be infringing.

The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that a party was willfully blind.  If SEC or Apple did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that SEC or Apple was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that SEC or Apple took a risk that was substantial and unjustified.

If you find that SEC or Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, SEC or Apple cannot be liable for inducement.

Apple argues that Samsung's Korean parent, SEC, has actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility patents.  Samsung argues that Apple has actively induced third parties to infringe Samsung's utility patents.

**Sources**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.9.

**Authorities**

35 U.S.C. § 271(b); *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *id.* at 2067; *ePlus, Inc. v. Lawson Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent."); *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304-1306 (Fed. Cir. 2006) (*en banc*); *Broadcom Corp. v. Qualcomm, Inc.,* 543 F.3d 683 (Fed. Cir. 2008); *Water Tech. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668-69 (Fed. Cir. 1988) (control over manufacture and development of infringing product is evidence of inducement); *A. Stucki Co. v. Stuart A. Schwam,* 634 F. Supp. 259, 265 (E.D. Pa. 1986) (liability for inducement based upon "the direct participation in and control of the infringing design, manufacture, and sale" of infringing products); *Ziggity Sys., Inc. v. Val Watering*

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

*Sys.*, 769 F. Supp. 752, 794 (E.D. Pa. 1990) (entity with management and control over infringing related-entity found liable for inducement).

**[DISPUTED] FINAL JURY INSTRUCTION NO. 46**
**UTILITY AND DESIGN PATENTS—WILLFUL PATENT INFRINGEMENT**

In this case, Apple and Samsung both argue that the other side willfully infringed its patents.

To prove willful infringement, each party must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, the patent holder must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," the patent holder must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.3.10.

**Authorities**

35 U.S.C. § 284; *In re Seagate Tech., LLC* ("Seagate"), 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (standard for willful infringement); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-827 (Fed. Cir. 1992); *C.R. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, No. 2010-1510, 2012 U.S. App. LEXIS 13561, at *6-7 (Fed. Cir. June 14, 2012) (the *Seagate* subjective prong is an issue for the jury, while the objective prong is for the court); *Global-Tech Appliances, Inc., v. SEB S.A.,* 131 S. Ct. 2060, 2069 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C.§ 271(b)."); *ePlus, Inc. v. Lawson Software, Inc.,* No. 3:09cv620, 2011 WL 3584313, at *5 (E.D. Va. Aug. 12, 2011) ("Knowledge of the patent may be established by a finding that [the alleged infringer] had actual knowledge of the patent or that [the alleged infringer] deliberately disregarded a known risk that ePlus had a protective patent.").

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

# BREACH OF CONTRACT JURY INSTRUCTIONS

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULLNESS,
BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

**[UNDISPUTED] FINAL JURY INSTRUCTION NO. 62**
**BREACH OF CONTRACT—OBLIGATION TO LICENSE PATENTS ON FRAND**
**TERMS**

I will now instruct you on how to determine whether Apple has proved its breach of contract claim. A breach is an unjustified failure to perform a contract.

Samsung has submitted declarations to ETSI in which Samsung identified the '516 and '941 patents, or related patents or applications, as IPRs that it believed may be considered essential to the UMTS standard. In those declarations, Samsung declared that it would be prepared to grant irrevocable licenses under those IPRs on fair, reasonable and nondiscriminatory ("FRAND") terms and conditions to the extent the IPRs remain essential to the UMTS standard. In order to demonstrate breach of this provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULLNESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

United States District Court
For the Northern District of California

## [UNDISPUTED] FINAL JURY INSTRUCTION NO. 63
## BREACH OF CONTRACT—OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL PROPERTY RIGHTS ("IPR")

The November 1997 ETSI IPR Policy provides:

> Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of.  In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

In order to demonstrate breach of this contract provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

United States District Court
For the Northern District of California

# ANTITRUST JURY INSTRUCTIONS

# [UNDISPUTED] FINAL JURY INSTRUCTION NO. 64
## MONOPOLIZATION—ELEMENTS

I will now instruct you on how to decide whether Apple has proven that Samsung has violated the federal antitrust laws.  Apple alleges that it was injured by Samsung's unlawful monopolization of markets consisting of technologies that competed to perform functions included in the UMTS standard by 3GPP.  To prevail on this claim, Apple must prove each of the following elements by a preponderance of the evidence:

> **First**, that the alleged market is a relevant antitrust market;

> **Second**, that Samsung possessed monopoly power in that market;

> **Third**, that Samsung "willfully" acquired its monopoly power in that market by engaging in anticompetitive conduct;

> **Fourth**, that Samsung's conduct occurred in or affected interstate commerce; and

> **Fifth**, that Apple was injured in its business or property because of Samsung's anticompetitive conduct.

If you find that Apple has failed to prove any of these elements, then you must find for Samsung and against Apple on this claim.  If you find that Apple has proved each of these elements by a preponderance of the evidence, then you must find for Apple and against Samsung on this claim.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Brunswich Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

**United States District Court**
For the Northern District of California

**[DISPUTED] FINAL JURY INSTRUCTION NO. 65**
**MONOPOLIZATION—RELEVANT MARKET**

Apple must prove by a preponderance of the evidence that Samsung had monopoly power in one or more relevant markets.  Defining the relevant market is essential to determining whether Samsung had monopoly power because whether a company has monopoly power depends on the contours of the market.

There are two aspects you must consider in determining whether Apple has met its burden of proving the relevant market or markets.  The first is the existence of a relevant technology market.  The second is the existence of a relevant geographic market.

A "technology" refers to an invention or process for accomplishing something, and is sometimes covered by a patent.  The basic idea of a relevant technology market is that the technologies within it are reasonable substitutes for each other from the user's point of view; that is, the technologies compete with each other.  In other words, the relevant technology market includes the technologies that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers.  Technologies need not be identical or precisely interchangeable as long as they are reasonable substitutes.

The relevant geographic market is the area in which the Samsung technologies face competition from other technologies to which customers can reasonably turn.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

If, after considering all the evidence, you find that Apple has proven both a relevant technology market and a relevant geographic market, then you must find that Apple has met the relevant market requirement and you must consider the remaining elements of its unlawful monopolization claims.

If you find that Apple has failed to prove either a relevant technology market or a relevant geographic market, then you must find for Samsung and against Apple on Apple's unlawful monopolization claim.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

## [UNDISPUTED] FINAL JURY INSTRUCTION NO. 66
## MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market.  Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  In determining whether Samsung has monopoly power in a relevant market, you may consider whether there is direct evidence that Samsung has monopoly power.

**DIRECT PROOF**

In order to provide direct proof of monopoly power, Apple has the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. Apple must prove that Samsung has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Apple must also prove that Samsung has the power to maintain prices above a competitive level for a significant period of time.  If Samsung attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Samsung does not have monopoly power.

Similarly, Apple must prove that Samsung has the ability to exclude competition.  For example, if Samsung attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Samsung does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that Samsung has monopoly power.  Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services.  However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power.  By contrast, evidence that Samsung would lose a substantial amount of sales if it raised prices substantially, or that Samsung's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that Samsung does not have monopoly power.

**INDIRECT PROOF**

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

**Market Share**

The first factor that you should consider is Samsung's market share.  A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors.  Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power.  However, if you find that the other evidence demonstrates that Samsung does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that Samsung has monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include, among other things, intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).  Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time.  By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

**Number and Size of Competitors**

You may consider whether Samsung's competitors are capable of effectively competing.  In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the defendant's ability to price its products.  If Samsung's competitors are vigorous or have large or increasing market shares, this may be evidence that Samsung lacks monopoly power.  On the other hand, if you determine that Samsung's competitors are weak or have small or declining market shares, this may support an inference that Samsung has monopoly power.

**Conclusion**

If you find that Samsung has monopoly power in the relevant market, then you must consider the remaining elements of Apple's monopolization claim.  If you find that Samsung does not have monopoly power, then you must find for Samsung and against Apple on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-16 to C-19, C-23 and the authorities cited therein.

**United States District Court**
For the Northern District of California

### [UNDISPUTED] FINAL JURY INSTRUCTION NO. 67
### MONOPOLIZATION—WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH
### ANTICOMPETITIVE ACTS

The next element Apple must prove is that Samsung willfully acquired monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Samsung's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Rebel Oil Co., Inc. v. Atlantic Richfield, Co.* 51 F.3d 1421 (9th Cir. 1995) (monopoly power may be proven directly); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

1

## [DISPUTED] FINAL JURY INSTRUCTION NO. 68
## MONOPOLIZATION—ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING

2

3

4

5

6

7

8

Apple alleges that Samsung willfully acquired monopoly power based on anticompetitive behavior in connection with the UMTS standard-setting process at 3GPP.  A standard can enhance consumer welfare by ensuring interoperability of products and devices and making multiple sources of supply available to consumers.  The ideal standard-setting process can allow members of a standard setting-organization to make an objective comparison among competing technologies before a standard is adopted.  Based on the available information, a rational standard-setting organization can select the best technology (considering its cost and its performance) and can include that technology in the standard.  To the extent the industry has invested in a standard and cannot easily transfer that investment to an alternative standard, the process of standardization may eliminate alternative technologies.  When a patented technology is incorporated into such a standard, adoption of the standard may eliminate alternatives to the patented technology.  Nonetheless, "winning" the competition between technologies to be included in the standard may enhance consumer welfare and not be anticompetitive, even if the technology is covered by a patent.

9

10

11

12

13

Disruption of a standards-setting process, however, may be anticompetitive.  As to Apple's claims that Samsung failed to timely disclose IPR (including patents and patent applications) that may cover technology being considered for inclusion in the UMTS standard, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if:  (1) ETSI members shared a clearly defined expectation that members were required to timely disclose IPR that reasonably might cover technology being considered for adoption in the UMTS standard; (2) Samsung knowingly failed to disclose such IPR in a timely fashion; (3) 3GPP relied on the requirement that Samsung would timely disclose such information when 3GPP adopted the UMTS standard; and (4) Samsung did not comply with the requirement.

14

15

16

17

18

As to Apple's claims that during the standard-setting process Samsung concealed its true intentions not to meet the commitment it had made to license its declared-essential IPR on fair, reasonable, and non-discriminatory ("FRAND") terms, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if: (1) ETSI members shared a clearly defined expectation that participants were bound to license their IPR on FRAND terms to ETSI, its members, and any entity that implements the UMTS standard; (2) Samsung made an intentionally false promise to comply with this requirement; (3) ETSI members relied on the requirement when they adopted the standards to which the declared-essential IPR applied; and (4) Samsung did not comply with the requirement.

19

20

21

In determining whether ETSI members shared such clearly defined expectations, you may consider, among other factors:  (1) the expectations of individual ETSI members; (2) any behavior by ETSI members with respect to disclosing or not disclosing such information; (3) oral information communicated or discussed at ETSI meetings or in ETSI minutes; (4) any written rules of ETSI made available to members; (5) customs of the industry; and (6) the purpose of ETSI.

22

23

In determining whether Apple has proved that Samsung willfully acquired monopoly power, you may consider Samsung's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of Samsung's disclosure or licensing conduct in isolation.

24

**Source**

25

26

27

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.); ABA Model Antitrust Jury Instructions, at C-26, D-64, and the authorities cited therein; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007); *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008); November 1997 ETSI IPR Policy.

28

## [DISPUTED] FINAL JURY INSTRUCTION NO. 69
## MONOPOLIZATION—SAMSUNG'S INTENT

In determining whether or not Samsung willfully acquired monopoly power in a relevant technology market, you may consider any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct.  Specific intent to monopolize, however, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 US 585, 602 (1985); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (listing elements of a standard-setting misconduct case); *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1349-51 (9th Cir. 1987) (recognizing a limited defense of business justification in tying cases and setting out elements of such a defense).

30

### [UNDISPUTED] FINAL JURY INSTRUCTION NO. 70
### MONOPOLIZATION—INTERSTATE CONDUCT

The federal antitrust laws apply only to conduct that affects interstate commerce. In this case, there is no dispute that Samsung's conduct affected interstate commerce.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

## [UNDISPUTED] FINAL JURY INSTRUCTION NO. 71
## MONOPOLIZATION—INJURY AND DAMAGES

If you find that Samsung has violated the federal antitrust laws as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

**First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

**Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

**Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of declared-essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries, and Apple may not recover damages for those injuries under the antitrust laws.

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010).

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART II (DESIGN PATENT, INDUCEMENT, WILLFULNLESS, BREACH OF CONTRACT, AND ANTITRUST INSTRUCTIONS)

*United States District Court*
For the Northern District of California