UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,  )<br>                                                                        )<br>           Plaintiff and Counterdefendant,  )<br>     v.                                                                   )<br>                                                                        )<br>SAMSUNG ELECTRONICS CO., LTD., A  )<br>Korean corporation; SAMSUNG                       )<br>ELECTRONICS AMERICA, INC., a New York )<br>corporation; SAMSUNG                                     )<br>TELECOMMUNICATIONS AMERICA, LLC, )<br>a Delaware limited liability company,             )<br>                                                                        )<br>           Defendants and Counterclaimants.  )<br>                                                                        ) | Case No.: 11-CV-01846-LHK<br><br>TENTATIVE FINAL JURY<br>INSTRUCTIONS – PART IV<br><br>(UTILITY AND DESIGN PATENT<br>DAMAGES AND TRADE DRESS<br>CONFUSION INSTRUCTIONS) |

Attached as Exhibit D are the tentative trade dress final jury instructions that are currently ready.

The Court extends the deadline for the parties' one page statement of the topics and instruction numbers that will likely be the subject of their high priority objections to 10:00 p.m. this evening. Again, the parties are not bound by this statement, but the Court appreciates the advance notice.

**IT IS SO ORDERED.**

Dated: August 19, 2012

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

1

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

**EXHIBIT D**

# [DISPUTED] FINAL JURY INSTRUCTION NO. 24
# UTILITY PATENT DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages for claims of utility patent infringement. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that either party infringed any valid and enforceable claim of the other side's patents, you must then determine the amount of money damages to be awarded to the patent holder to compensate it for the infringement.

The amount of those damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Each patent holder has the burden to persuade you of the amount of its damages. You should award only those damages that the patent holder proves it suffered by a preponderance of the evidence. While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Neither patent holder is entitled to damages that are remote or speculative.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1.

**Authorities**

35 U.S.C. § 284 (no reference to causation); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

3

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

### [DISPUTED] FINAL JURY INSTRUCTION NO. 25
### UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its utility patents.

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must show the share of Samsung's sales that it would have made if the infringing products had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature of the infringing products. That is, you must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

**Authorities**

*Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Beauregard v. Mega Sys., LLC*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Central Soya Co. v. George A. Hormel & Co.*, 723 F.2d 1573, 1579 (Fed. Cir. 1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545, 1548-49 (Fed. Cir. 1995) (en banc); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287-91 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330-32 (Fed. Cir. 2009); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating and remanding lost profits award for entire value of a device containing a first component embodying a first patent, found infringed, as well as a second component embodying a second patent, found not infringed, where profits could fairly be allocated to customer demand for second component); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("courts have given patentees significant latitude to prove and recover lost profits for a wide variety of foreseeable economic effects of the infringement"); *State Industries Inc v. Mor-Flo Indus.*, 883 F.3d 1573, 1578-79 (Fed. Cir. 1983)

4

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

# [DISPUTED] FINAL JURY INSTRUCTION NO. 26
# UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER

Apple is entitled to lost profits if it proves all of the following:

(1) that there was demand for the patented products;

(2) that there were no non-infringing substitutes for each of the infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

(3) that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

(4) the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had not infringed.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3.

**Authorities**

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330-32 (Fed. Cir. 2009); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552-53 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

5

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

## [UNDISPUTED] FINAL JURY INSTRUCTION NO. 26.1
## UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

**Source**

Federal Circuit Bar Association Model Patent Jury Instr. B.6.2 (modified).

6

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

# [UNDISPUTED] FINAL JURY INSTRUCTION NO. 27
# UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products. You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**Source**

N.D. Cal. Model Patent Jury Instr. B.5.3a.

**Authorities**

*Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc*., 883 F.2d 1573, 1580 (Fed. Cir. 1989); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc*. , 1 F.3d 1214, 1218 (Fed. Cir. 1993).

**[DISPUTED] FINAL JURY INSTRUCTION NO. 28
UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective utility patents.

If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits damages.

Samsung does not make a claim for lost profits. Samsung should be awarded a reasonable royalty for all infringing Apple sales.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6.

**Authorities**

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Lucent Tech's, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

8

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

### [DISPUTED] FINAL JURY INSTRUCTION NO. 29
### UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.7.

**Authorities**

35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-

10 (Fed. Cir. 1996); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Lucent Tech's, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

10

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

# [DISPUTED] FINAL JURY INSTRUCTION NO. 31
# UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents it infringed.

If you find that Apple sells products that include the claimed designs but has not marked those products with the patent numbers, you must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which each Samsung entity had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381 and '915 patents no later than April 15, 2011, and for the '163 patent no later than June 16, 2011.

On the other hand, if you find that Apple does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

> If the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> If the patent was granted after each Samsung entity's infringement began as determined by you, damages should be calculated as of the date the patent issued.

With respect to Samsung's '460 patent, the damages you may award Samsung for any infringement should be calculated as of August 18, 2009, because Samsung is asserting only method claims from that patent.

With respect to Samsung's '516, '711, '893, and '941 patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

If you find that Samsung sells products that include its claimed inventions from these patents but has not marked those products with the patent numbers, you must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which Apple had notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's claims provided Apple such notice by no later than June 16, 2011.

On the other hand, if you find that Samsung does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

> If the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> If the patent was granted after each Samsung entity's infringement began as determined by you, damages should be calculated as of the date the patent issued.

**Source**

Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8.

**Authorities**

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

35 U.S.C. § 287; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc*., 127 F.3d 1462, 1470 (Fed. Cir. 1997) ("the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987); *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.,* 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying a particular patent by number where plaintiff acted affirmatively to notify his adversary that he had a patent on a given item and the defendant was infringing that patent); *Coupe v. Royer*, 155 U.S. 565, 584-85 (1895) (holding that where plaintiffs presented evidence of actual notice and defendants offered evidence that they did not receive notice, the "court ought to have submitted that question to the jury"); *Minks v. Polaris Indus., Inc*., 546 F.3d 1364, 1376-77 (Fed. Cir. 2008) (trier of fact must take into account the history of the relationship between the parties when determining whether a communication was "sufficiently specific" to give rise to actual notice); *id*. at 1364 ("[T]he court's instruction to the jury should have more clearly articulated that, in the context of this ongoing relationship between the parties, knowledge of a specific infringing device is not a legal prerequisite to such a finding."); *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (communication giving rise to actual notice does not need to identify all related products since "ensuing discovery . . . may bring those products within the scope of the notice").

12

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

**[DISPUTED] FINAL JURY INSTRUCTION NO. 40
DESIGN PATENT DAMAGES—BURDEN OF PROOF**

I will instruct you about the measure of damages for infringement of Apple's design patents. By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that Samsung Electronics America, Samsung Telecommunications America, and/or Samsung Electronics Company infringed any valid Apple design patent, you must then determine the money damages to award Apple. The amount of those damages must be adequate to compensate Apple for the infringement. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

In relation to design patents, Apple can elect to prove either actual damages, known as compensatory damages, or it may elect to prove the defendant's profits as its measure of potential recovery. As compensatory damages, Apple may prove either its own lost profits, or a reasonable royalty for the design patent. Apple is not entitled to recover both compensatory damages and defendant's profits.

Apple has the burden to prove that Apple's calculation of damages is correct by a preponderance of the evidence. While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Apple is not entitled to damages that are remote or speculative.

**Source**

Apple's Proposed Instruction number 40 (modified); Samsung's Proposed Instruction number 40 (modified); Adapted from N.D. Cal. Model Patent Jury Instr. B.5.1; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.1.

13

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

**[DISPUTED] FINAL JURY INSTRUCTION NO. 41**
**DESIGN PATENT DAMAGES—LOST PROFITS**

In this case, Apple seeks to recover lost profits for some of Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's sales of infringing products. In assessing Apple's right to recover lost profits for Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's infringement of its design patents, you should apply the same rules I already explained in the context of lost profits for infringement of Apple's utility patents. Those Instructions are set out in Jury Instruction Nos. ==25, 26, 26.1, and 27==.

Wherever in those Instructions I referred to Apple's utility patents, you should now focus on Apple's design patents. Wherever in those Instructions I referred to the patented invention, you should now focus on the patented design. Wherever in those Instructions I referred to patented products or products covered by a patent claim, you should now focus on products or articles that use or embody the patented design.

**Source**

Apple's Proposed Instruction number 41 (modified); Adapted from N.D. Cal. Model Patent Jury Instr. B.5.2.

14

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

# [DISPUTED] FINAL JURY INSTRUCTION NO. 42
# DESIGN PATENT INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS

In this case, Apple has elected to seek Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's profits from sales of products alleged to infringe Apple's design patents. If you find infringement by any Samsung defendant and do not find Apple's design patents are invalid, you may award Apple that Samsung defendant's total profit attributable to the infringing products.

The "total profit" of Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America means the entire profit on the sale of the article to which the patented design is applied or with which it is used, and not just the portion of profit attributable to the design or ornamental aspects covered by the patent. "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design. A design patent owner can recover the profit not only of the manufacturer or producer of an infringing article, but also of other sellers in the chain of distribution.

If you find infringement by any Samsung defendant, Apple is entitled to all profit earned by that defendant on sales of articles alleged to infringe Apple's design patents. Profit is determined by deducting certain expenses from gross revenue. Gross revenue is all of the infringer's receipts from the sale of articles using any design found infringed. Apple has the burden of proving the infringing defendant's gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are directly attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense. Samsung has the burden of proving the deductible expenses.

**Source**

Samsung's Proposed Instruction number 42 (modified); Adapted from The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.8.

.

15

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

# [DISPUTED] FINAL JURY INSTRUCTION NO. 43
## DESIGN PATENT DAMAGES—REASONABLE ROYALTY

If Apple has not proved its claim for lost profits or has not proved its claim to Samsung's profits, then Apple should be awarded a reasonable royalty for all infringing sales by Samsung Electronics America, Samsung Telecommunications America, and/or Samsung Electronics Company.  In no event should the damages you award Apple for design patent infringement be less than a reasonable royalty.

The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 29 for utility patent infringement.  However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

**Source**

Apple's Proposed Instruction number 43 (modified); Adapted from N.D. Cal. Model Patent Jury Instr. B.5.6, B.5.7; The Intellectual Property Owners Ass'n Model Design Patent Jury Instr. 10.7.

16

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)

**[DISPUTED] FINAL JURY INSTRUCTION NO. 44**
**DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents it infringed.

If you find that Apple sells products that include the claimed designs but has not marked those products with the patent numbers, you must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which each Samsung entity had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the D'677 patent by no later than April 15, 2011, and for the D'305, D'889 and D'087 patents by no later than June 16, 2011.

On the other hand, if you find that Apple does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

> For each infringed patent that was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> For each infringed patent that was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

**Source**

Apple's Proposed Instruction number 44 (modified); Adapted from N.D. Cal. Model Patent Jury Instr. B.5.8; Federal Circuit Bar Association Model Patent Jury Instr. B.6.8.

**[DISPUTED] FINAL JURY INSTRUCTION NO. 57
INFRINGEMENT—LIKELIHOOD OF CONFUSION—
FACTORS—*SLEEKCRAFT* TEST
(15 U.S.C. §§ 1114(1) and 1125(a))**

You must decide whether Samsung's alleged use of Apple's iPad/iPad2 trade dress in the Samsung Galaxy Tab 10.1 is likely to cause confusion about the source, sponsorship, affiliation, or approval of Samsung's Galaxy Tab 10.1. Apple must prove by a preponderance of the evidence that a reasonably prudent consumer in the marketplace is likely to be confused about the source of Samsung's Galaxy Tab 10.1. Apple must show more than simply a possibility of such confusion.

I will suggest some factors you should consider in deciding whether there is a likelihood of confusion. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1. <u>Strength or Weakness of Apple's Asserted Trade Dress</u>. The more the consuming public recognizes Apple's asserted iPad/iPad2 trade dress as an indication of origin of Apple's goods, the more likely it is that consumers would be confused about the source of Samsung's goods if Samsung uses a similar design or configuration.

2. <u>Samsung's Use of the Trade Dress</u>. If Samsung and Apple use their designs on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods than otherwise.

3. <u>Similarity of Apple's and Samsung's Designs</u>. If the overall impression created by Apple's asserted iPad/iPad2 trade dress in the marketplace is similar to that created by Samsung's designs in appearance, there is a greater chance of likelihood of confusion.

4. <u>Actual Confusion</u>. If use by Samsung of Apple's asserted iPad/iPad2 trade dress has led to instances of actual confusion, this suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Samsung's use of the trade dresses may still be likely to cause confusion. As you consider whether the design used by Samsung creates for consumers a likelihood of confusion with Apple's products, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion, you may find that there has not been substantial actual confusion.

5. <u>Samsung's Intent</u>. Knowing use by Samsung of Apple's asserted iPad/iPad2 trade dress to identify similar goods may show an intent to derive benefit from the reputation of Apple's trade dress, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Samsung acted knowingly, the use of Apple's trade dress to identify similar goods may indicate a likelihood of confusion.

6. <u>Marketing/Advertising Channels</u>. If Apple's and Samsung's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

      7.      <u>Purchaser's Degree of Care</u>.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the Apple and Samsung products.

**Source**

Ninth Circuit Model Civil Jury Instructions - 15.16 (2007 Ed.).

**Authorities**

15 U.S.C. § 1125; *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49, 353-54 (9th Cir. 1979); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209, 1213-17 (9th Cir. 2012); *Automotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077-78 & n.11 (9th Cir. 2006); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032, 1037 (9th Cir. 2010); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018-19 (9th Cir. 2004)

19

5:11-CV-01846-LHK
TENTATIVE FINAL JURY INSTRUCTIONS – PART IV (UTILITY/DESIGN DAMAGES AND TRADE DRESS CONFUSION INSTRUCTIONS)