1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

    APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6   CORPORATION,                )
                                )  SAN JOSE, CALIFORNIA
7                PLAINTIFF,     )
                                )  AUGUST 14, 2012
8           VS.                 )
                                )  VOLUME 8
9   SAMSUNG ELECTRONICS CO.,    )
    LTD., A KOREAN BUSINESS     )  PAGES 2321-2650
10  ENTITY; SAMSUNG             )
    ELECTRONICS AMERICA,        )
11  INC., A NEW YORK            )
    CORPORATION; SAMSUNG        )
12  TELECOMMUNICATIONS          )
    AMERICA, LLC, A DELAWARE    )
13  LIMITED LIABILITY           )
    COMPANY,                    )
14                              )
                 DEFENDANTS.    )
15  _____

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
24                           IRENE RODRIGUEZ, CSR, CRR
                             CERTIFICATE NUMBER 8074
25

2322

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF        MORRISON & FOERSTER
     APPLE:               BY:  HAROLD J. MCELHINNY
3                              MICHAEL A. JACOBS
                               RACHEL KREVANS
4                         425 MARKET STREET
                          SAN FRANCISCO, CALIFORNIA  94105
5
     FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
6    APPLE:               HALE AND DORR
                          BY:  WILLIAM F. LEE
7                         60 STATE STREET
                          BOSTON, MASSACHUSETTS  02109
8
                          BY:  MARK D. SELWYN
9                         950 PAGE MILL ROAD
                          PALO ALTO, CALIFORNIA  94304
10
     FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
11                        OLIVER & HEDGES
                          BY:  CHARLES K. VERHOEVEN
12                        50 CALIFORNIA STREET, 22ND FLOOR
                          SAN FRANCISCO, CALIFORNIA  94111
13
                          BY:  VICTORIA F. MAROULIS
14                             KEVIN P.B. JOHNSON
                          555 TWIN DOLPHIN DRIVE
15                        SUITE 560
                          REDWOOD SHORES, CALIFORNIA  94065
16
                          BY:  MICHAEL T. ZELLER
17                             WILLIAM C. PRICE
                          865 SOUTH FIGUEROA STREET
18                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
19
     FOR INTEL:           PERKINS COIE
20                        BY:  DANIEL T. SHVODIAN
                          3150 PORTER DRIVE
21                        PALO ALTO, CALIFORNIA 94304

22
     INTERPRETERS:        JAMES YIM VICTORY
23                        ALBERT S. KIM
                          ANN PARK
24

25
```

1

<u>INDEX OF WITNESSES</u>

2

3     <u>DEFENDANT'S</u>

4

5     **CLIFTON FORLINES**
          DIRECT EXAM BY MR. JOHNSON        P. 2349
          CROSS-EXAM BY MR. JACOBS          P. 2367

6

7     **WOODWARD YANG**
          DIRECT EXAM BY MR. JOHNSON        P. 2373

8         CROSS-EXAM BY MR. LEE             P. 2436
          REDIRECT EXAM BY MR. JOHNSON      P. 2485

9         RECROSS-EXAM BY MR. LEE           P. 2490

10

11    **JINYEUN WANG**
          DIRECT EXAM BY MR. QUINN          P. 2522
          CROSS-EXAM BY MR. JACOBS          P. 2541

12        REDIRECT EXAM BY MR. QUINN        P. 2549

13    **ROGER FIDLER**
          BY VIDEOTAPED DEPOSITION          P. 2558

14                                          P. 2565

15    **ITAY SHERMAN**
          DIRECT EXAM BY MR. VERHOEVEN      P. 2573

16        CROSS-EXAM BY MS. KREVANS         P. 2611

17

18

19

20

21

22

23

24

25

1                        INDEX OF EXHIBITS

2                                   MARKED        ADMITTED

3       PLAINTIFF'S

4       210, 26.1. & 2288                          2344
        46.2                                       2347
5       2031                                       2458
        2257                                       2542
6       2267                                       2543
        55                                         2546
7       2281                                       2547
        562                                        2606
8       155                                        2622
        150                                        2633
9       148                                        2635

10

        DEFENDANT'S
11
        4103                                       2345
12      3951.004                                   2346
        548                                        2354
13      693                                        2356
        655.004                                    2359
14      665.001                                    2360
        697                                        2364
15      655.002                                    2365
        698                                        2366
16      1069                                       2381
        1055                                       2385
17      3697.006                                   2389
        3967.012                                   2394
18      1050, 1053, 1054, 1057, 1051,
        1056, 1076 & 1077                          2395
19      533 & 539                                  2399
        1068                                       2401
20      3967.015 & 3967.025                        2412
        1071                                       2413
21      3967.028                                   2415
        3967.043                                   2424
22      645                                        2433
        3967.012                                   2434
23      3967.003 & 3967.005                        2435
        529                                        2564
24      621                                        2565
        1074                                       2599
25      562                                        2606

2325

```
 1    SAN JOSE, CALIFORNIA                    AUGUST 14, 2012
 2                      P R O C E E D I N G S
 3              (WHEREUPON, THE FOLLOWING PROCEEDINGS
 4    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
 5              THE COURT:  WELCOME.  PLEASE TAKE A SEAT.
 6    I'VE GOT A COUPLE OF ISSUES.  LET ME SAY WITH
 7    REGARD TO WOODWARD YANG, HIS EXPERT REPORT AND THE
 8    FOOTNOTE IN HIS EXPERT REPORT, THAT'S ALL
 9    ADMISSIBLE AND WHATEVER HE SAID IN HIS DEPOSITION
10    IS ADMISSIBLE.
11              BUT HE CANNOT BRING IN A NEW THEORY OF
12    WHAT THE APPLET IS, BECAUSE THAT WAS NOT PREVIOUSLY
13    DISCLOSED IN INFRINGEMENT CONTENTIONS OR HIS EXPERT
14    REPORT OR DURING HIS DEPOSITION.  OKAY?
15              AND THEN --
16              MR. LEE:  WELL, YOUR HONOR, WHAT HE SAID
17    IN HIS EXPERT REPORT IS "HERE'S A BUNCH OF STUFF,
18    MAYBE IT'S IN THERE."
19              WE'RE GOING TO BE CROSS-EXAMINING HIM
20    BLIND, HAVING ASKED 12 PAGES IN THE DEPOSITION
21    ABOUT WHERE IS IT, AND IF WE HAVE TO DO IT FOR THE
22    FIRST TIME NOW, IT'S VERY PREJUDICIAL.  IT OUGHT TO
23    BE OUT.  EVERYBODY ELSE, YOU GO LIMITATION BY
24    LIMITATION.  YOU SAY WHAT SATISFIES THE LIMITATION.
25    HE DIDN'T DO IT.  AND TO ALLOW HIM TO DO IT FOR THE
```

1    FIRST TIME TODAY --

2              THE COURT:  NO, NO, NO.  IF HE TRIES TO

3    GET IN A NEW THEORY, HE'S GOING TO BE SHUT DOWN,

4    AND I WILL TELL THE JURY THAT THAT WAS NOT IN HIS

5    EXPERT REPORT, IT WAS NOT IN SAMSUNG'S INFRINGEMENT

6    CONTENTIONS, HE DID NOT TESTIFY TO IT IN HIS

7    DEPOSITION SO IT'S UNTIMELY AND IT'S PREJUDICE FOR

8    SAMSUNG TO TRY TO BRING IN A NEW THEORY.

9              SO I'M HOPING THAT THE SAMSUNG LAWYERS

10   WILL WORK WITH HIM, BECAUSE I WILL MAKE THAT -- I

11   WILL SAY EXACTLY THAT IN FRONT OF THE JURY BECAUSE

12   I DON'T THINK THAT HE SHOULD BE ABLE TO BRING IN

13   SOMETHING NOW BECAUSE I DO THINK IT'S PREJUDICIAL.

14             MR. JOHNSON:  JUST FOR CLARIFICATION,

15   YOUR HONOR, SO HE CAN REFER TO THE SOURCE CODE

16   THAT'S REFERRED TO IN THE FOOTNOTE.

17             THE COURT:  YES.

18             MR. LEE:  BUT, YOUR HONOR, HOW -- I'M

19   SORRY, GO AHEAD.

20             MR. JOHNSON:  GO AHEAD.

21             MR. LEE:  YOUR HONOR, HE REFERRED TO THE

22   SOURCE CODE, AND AT HIS DEPOSITION, HE SAID SOME OF

23   THIS IS AN APPLET, SOME OF IT'S NOT, I CAN'T TELL

24   YOU WHICH ONE.

25             MR. JOHNSON:  THAT'S CROSS.

```
 1              THE COURT:  SO YOU'RE GOING TO DO A GREAT
 2    CROSS ON HIM.
 3              MR. LEE:  HE'S GOING TO GET UP THERE AND
 4    SAY THERE'S AN APPLET SOMEWHERE IN HERE.
 5              THE COURT:  THAT'S THE BEST THEY'VE GOT.
 6              MR. LEE:  I THINK HE SHOULD BE PRECLUDED
 7    FROM OFFERING AN OPINION ON APPLET, PERIOD, BECAUSE
 8    THEY DIDN'T IDENTIFY WHAT THE APPLET IS.  THAT'S
 9    WHAT THE OBJECTION IS, YOUR HONOR.
10              IT'S A LITTLE BIT LIKE ANY OTHER CLAIM
11    LIMITATION.  IF THERE'S A REQUIREMENT AND YOU DON'T
12    SAY WHAT IT IS, YOU SHOULDN'T BE ABLE TO SAY,
13    HERE'S 32 DIFFERENT MODULES.  IT MIGHT BE IN THERE.
14    IF IT IS IN THERE, I CAN'T TELL YOU WHICH ONE.
15    THAT'S NOT --
16              THE COURT:  IF THAT'S THE BEST THEY'VE
17    GOT, THAT'S THE BEST THEY'VE GOT.
18              MR. LEE:  WELL --
19              THE COURT:  LET ME ACTUALLY -- I WAS
20    LOOKING THROUGH HIS -- I'D LIKE THE EXACT -- DO YOU
21    HAVE AN EXTRA COPY OF THE EXACT DEPO TRANSCRIPT?
22    OH, THIS IS IT.  THANK YOU.
23              MR. LEE:  YEAH, THAT'S -- IF YOU LOOK AT
24    PAGES 1, I THINK THEY'RE ABOUT 176 TO 186, MAYBE
25    179 TO 189, YOUR HONOR, YOU WILL SEE MORE THAN 30
```

```
 1    QUESTIONS, ALL DESIGNED TO SAY "JUST TELL US WHAT

 2    IT IS."

 3              THE COURT:  I KNOW.  THAT'S WHY I

 4    SUSTAINED YOUR OBJECTION.  HE IS NOT ALLOWED TO

 5    BRING IN A NEW UNTIMELY DISCLOSED PREJUDICIAL

 6    OPINION AT TRIAL.

 7              MR. JOHNSON:  AND, YOUR HONOR, WITH

 8    RESPECT TO THOSE PAGES, A LOT OF THOSE QUESTIONS

 9    WERE FOCUSSED ON SAMSUNG DEVICES.  THE QUESTIONS

10    WERE RELATED TO WHETHER SAMSUNG DEVICES PRACTICED

11    THE PATENT AND THEY WERE ASKING ABOUT THE SOURCE

12    CODE --

13              THE COURT:  ALL RIGHT.  THIS IS WHAT I

14    WANT.  I WANT THE SPECIFIC PROFFER OF WHAT YANG IS

15    GOING TO TESTIFY TO.  I WANT IT IN WRITING.

16              SO WHEN CAN YOU FILE THAT?  I SEE YOU PUT

17    IN HE'S COMING ON 5TH; IS THAT RIGHT?

18              MR. JOHNSON:  HE'S COMING ON AFTER

19    DR. WILLIAMS.

20              THE COURT:  OKAY.

21              MR. JOHNSON:  SO WE'RE GOING TO PLAY --

22    WE HAVE MR. FORLINES, THEN WE HAVE A COUPLE OF

23    DEPOSITION CLIPS WHICH ARE ABOUT, I THINK, 10 OR 13

24    MINUTES.

25              THE COURT:  ALL RIGHT.  EITHER YOU DO THE
```

```
 1    PROFFER OR I'M GOING TO STICK WITH THE RULING FROM

 2    YESTERDAY.  IT'S EITHER ALL OUT OR YOU MAKE THE

 3    PROFFER.  YOU MAKE THE DECISION.

 4          MR. JOHNSON:  WE'LL MAKE THE PROFFER.

 5    CAN WE DO IT IN THE NEXT 45 MINUTES?

 6          THE COURT:  I'LL HAVE TO LOOK AT IT

 7    DURING THE BREAK.  I WANT THE EXACT PROFFER, AND IF

 8    HE CROSSES THE LINE, I WILL GET INTO IT WITH HIM IN

 9    FRONT OF THE JURY.

10          MR. JOHNSON:  UNDERSTOOD.

11          THE COURT:  SO HE NEEDS TO BE FULLY

12    PREPPED NOT TO CROSS THE LINE.

13          OKAY.  THE REDACTIONS THAT WERE FILED TO

14    SOME OF THE APPLE EXHIBITS, THAT'S DOCUMENT 1726,

15    THOSE LOOK FINE.  THOSE ARE APPROVED.

16          NOW, I FILED AN ORDER LAST NIGHT ABOUT

17    RIM.  HAVE YOU ALL RESOLVED THEIR CONCERN?  I'M

18    ASSUMING THE UNDERLYING LICENSES, ARE THEY COMING

19    IN, OR NOT COMING IN?  OR WHAT'S THE ISSUE?

20          MS. MAROULIS:  YOUR HONOR, THE LICENSE

21    INFORMATION WON'T BE ON UNTIL TOMORROW'S WITNESSES,

22    BUT IT WAS NOT GOING TO BE THE ACTUAL LICENSES.

23    IT'LL BE THE CHART.

24          THE COURT:  IT'LL BE THE CHART.  OKAY.  I

25    ASSUME THAT TAKES CARE OF THEIR CONCERN.  YOU'LL
```

```
 1    HAVE TO TALK TO HIM.

 2              MS. MAROULIS:  WE'LL FOLLOW UP THIS

 3    MORNING, BUT WE'RE OKAY FOR NOW.

 4              THE COURT:  OKAY.  AND, NOW, BOTH PARTIES

 5    HAVE FILED STAYS OF THE COURT'S UNDER SEAL RULINGS

 6    PENDING APPEAL TO THE CIRCUIT COURT.

 7              I WILL TRY TODAY TO ISSUE A JOINT ORDER

 8    THAT WILL ONLY GRANT YOU A STAY THROUGH THE

 9    APPELLATE COURT DECIDING WHETHER TO GRANT YOU A

10    STAY THROUGH THEIR DECISION MAKING, BUT I WILL NOT

11    GRANT ONE THAT'S ALL THE WAY.  IT'S REALLY UP TO

12    THE APPELLATE COURT TO DECIDE.  OKAY?

13              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

14              THE COURT:  SO I'LL TRY TO DO THAT TODAY.

15              NOW, I UNDERSTAND THAT AN ATTORNEY FOR

16    INTEL IS HERE ABOUT AN ALLEGED VIOLATION OF THE

17    PROTECTIVE ORDER.  WHAT IS THIS ABOUT?  AND IF YOU

18    WOULD PLEASE IDENTIFY YOURSELF.

19              MR. SHVODIAN:  GOOD MORNING, YOUR HONOR.

20    DAN SHVODIAN FOR INTEL.

21              AND BACK IN THE JANUARY TIMEFRAME OF THIS

22    YEAR, ITC ACTION WAS GOING ON BETWEEN SAMSUNG AND

23    APPLE, AND ALSO THIS ACTION.  WE RECEIVED A

24    DISCLOSURE FROM SAMSUNG FOR AN EXPERT WITNESS,

25    DR. WILLIAMS, IN THE ITC ACTION, AND LATER GOT A
```

1    DISCLOSURE FOR DR. WILLIAMS IN THIS ACTION.

2            AND WHEN WE REVIEWED HIS DISCLOSURE, WE

3    REALIZED THEY WERE INCONSISTENT, AND WE ALSO KNEW

4    THAT EVEN THE ONE WITH THE ADDITIONAL INFORMATION

5    WAS INCOMPLETE.

6            SO WE NOTIFIED SAMSUNG OF THAT.  WE TOLD

7    THEM THAT DR. WILLIAMS' DISCLOSURE WAS NOT COMPLETE

8    AND WE NEEDED A FULL DISCLOSURE FROM HIM SO THAT WE

9    COULD ASSESS WHETHER HE PRESENTED ANY TYPE OF

10   COMPETITIVE THREAT, AND, THEREFORE, YOU KNOW,

11   WHETHER WE WOULD OBJECT TO HIM SEEING OUR SOURCE

12   CODE.

13           I HAD SEVERAL TELEPHONE CONVERSATIONS

14   WITH SAMSUNG ATTORNEYS WHERE I TOLD THEM THAT WE

15   KNEW HIS DISCLOSURE WAS INCOMPLETE.  HE LATER

16   ADMITTED, IN CONJUNCTION WITH A MOTOROLA ACTION,

17   THAT HIS DISCLOSURES WERE INCOMPLETE, THAT HE CHOSE

18   NOT TO INCLUDE CERTAIN THINGS ON HIS C.V. HE

19   PROVIDED TO US.

20           THE COURT:  AND WHAT WERE THEY?  LIKE

21   CONSULTING JOBS?  OR --

22           MR. SHVODIAN:  THEY WERE RELATED TO OTHER

23   LITIGATIONS THAT WE KNEW ABOUT.  WELL, WE KNEW OF A

24   COUPLE, AND THEN THERE WERE OTHER LITIGATION

25   MATTERS WHERE HE WAS REPRESENTING VARIOUS, VARIOUS

2332

```
 1    HANDSET COMPANIES.

 2              AND SO WE HAD RAISED THIS ISSUE WITH

 3    SAMSUNG.  THEY HAD TOLD US THEY WOULD GET BACK TO

 4    US ON THIS ISSUE.

 5              WE THEN HAD THESE BACK AND FORTH WITH

 6    SAMSUNG WHERE WE TOLD THEM THAT WE STILL KNEW HIS

 7    DISCLOSURES WERE INCOMPLETE.

 8              THE ISSUE WAS THEN DROPPED.  WE NEVER

 9    HEARD ANYTHING FURTHER ABOUT DR. WILLIAMS.  HE DID

10    NOT TESTIFY AT THE ITC.  WE DID NOT KNOW THAT HE

11    WAS PARTICIPATING IN THIS MATTER AND SEEING OUR

12    SOURCE CODE UNTIL JUST RECENTLY WE GOT A DISCLOSURE

13    SAYING WE INTEND TO USE CERTAIN EXHIBITS, SAMSUNG

14    SAID THEY INTEND TO USE CERTAIN EXHIBITS WITH

15    DR. WILLIAMS, WHICH INCLUDED INTEL SOURCE CODE.

16              SO I ASKED SAMSUNG YESTERDAY WHETHER THEY

17    HAD, IN FACT, DISCLOSED OUR SOURCE CODE TO

18    DR. WILLIAMS.  THEY SAID THEY HAD.

19              AND YOUR HONOR MAY RECALL, THERE WAS AN

20    AMENDMENT TO THE PROTECTIVE ORDER IN REGARD TO

21    INTEL SOURCE CODE, AND THAT AMENDMENT REQUIRED ANY

22    PERSON RECEIVING INTEL SOURCE CODE TO EXECUTE AN

23    ATTACHMENT, EXHIBIT B, IT WAS AN AGREEMENT TO BE

24    BOUND BY THE PROTECTIVE ORDERS.

25              AND THE AMENDMENT TO THE PROTECTIVE ORDER
```

2333

```
1    SAYS THAT A COPY MUST BE SERVED ON ALL PARTIES AND
2    INTEL BEFORE THE EXPERT RECEIVES ANY OF THE
3    INFORMATION.
4            WE JUST RECEIVED THE EXECUTED COPY
5    REGARDING -- FROM DR. WILLIAMS LAST NIGHT.
6            THE COURT:  WHEN IS IT DATED?
7            MR. SHVODIAN:  IT WAS DATED APRIL 23RD.
8    IT WAS SENT TO US YESTERDAY.  IT WAS NEVER SENT TO
9    INTEL BEFORE THEN.
10           THE COURT:  OKAY.
11           MR. SHVODIAN:  AND SO --
12           THE COURT:  SO WHAT IS YOUR REQUEST?  YOU
13   WANT ME TO HOLD THEM IN CONTEMPT, OR WHAT?  WHAT'S
14   YOUR -- WHAT ARE YOU HERE REQUESTING?
15           MR. SHVODIAN:  WE BELIEVE THAT
16   DR. WILLIAMS SHOULD BE PRECLUDED FROM TESTIFYING
17   ABOUT INTEL SOURCE CODE, THAT -- WE ENTERED -- THE
18   COURT ENTERED A PROTECTIVE ORDER TO GOVERN AND
19   PROTECT PARTIES THAT PRODUCED SOURCE CODE,
20   INCLUDING THIRD PARTIES, AND EVEN ENTERED THIS
21   AMENDMENT SPECIFICALLY DIRECTED TOWARDS INTEL
22   SOURCE CODE, AND WE RELIED UPON THAT.  AND NOW WE
23   FIND OUT THAT SAMSUNG DIDN'T EVEN COMPLY WITH ITS
24   DISCLOSURE OBLIGATIONS.
25           THE COURT:  WELL, IT WOULD BE VERY
```

2334

```
 1    PREJUDICIAL TO SAMSUNG IN THE MIDDLE OF TRIAL TO
 2    EXCLUDE THEIR EXPERT.
 3              SO, I MEAN, UNLESS YOU'RE SAYING THEY
 4    WERE SOMEHOW COLLUSIVE AND ACTING IN BAD FAITH AND
 5    NOT DISCLOSING HIS FULL POTENTIAL CONFLICTS OF
 6    INTEREST.
 7              MR. SHVODIAN:  WELL, ONE THING I CAN
 8    POINT OUT, YOUR HONOR, IS THAT WHEN THIS EXHIBIT B
 9    TO THE AMENDED PROTECTIVE ORDER WAS EXECUTED BY
10    OTHER SAMSUNG EXPERTS THAT INTEL HAD APPROVED, THAT
11    WAS SENT TO US BACK IN, I BELIEVE, MARCH, WE
12    RECEIVED THREE OF THOSE.
13              BUT THE ONE FOR DR. WILLIAMS THAT SAMSUNG
14    SAID WAS EXECUTED MONTHS AGO, THEY NEVER SENT TO
15    US.  THEY KEPT THAT ONE TO THEMSELVES.
16              SO I DO AGREE THERE WAS SOME BAD FAITH
17    HERE OR AT LEAST EVIDENCE OF POSSIBLE BAD FAITH.
18              THE COURT:  SO WHAT DOCUMENTATION DO YOU
19    HAVE THAT HE WITHHELD SOME OF HIS POTENTIAL
20    CONFLICTS OF INTEREST?
21              MR. SHVODIAN:  I DON'T KNOW --
22              THE COURT:  THAT'S WHAT IT BOILS DOWN TO,
23    RIGHT?
24              MR. SHVODIAN:  YEAH.
25              THE COURT:  BECAUSE IF HE WAS FULL IN HIS
```

```
1    DISCLOSURES --

2              MR. SHVODIAN:  WE HAVE A CONFIDENTIAL --

3    THERE WAS A CONVERSATION BETWEEN AN INTEL ATTORNEY

4    AND DR. WILLIAMS, AND DURING THAT CONVERSATION, HE

5    INFORMED THE ATTORNEY THAT HE DID NOT DISCLOSE ALL

6    HIS -- ALL HIS ENGAGEMENTS AND THAT HE FELT THAT

7    SOME OF THEM WERE CONFIDENTIAL AND HE SHOULDN'T

8    DISCLOSE THOSE, EVEN THOUGH THERE'S NO PROVISION TO

9    KEEP THINGS SUCH AS THAT, YOU KNOW, FROM HIS

10   DISCLOSURES TO INTEL.

11             THE COURT:  I DON'T RECALL.  WHAT, WHAT

12   ARE THE PROVISIONS IN THE PROTECTIVE ORDER FOR

13   SOMEONE NOT COMPLYING?  IS THERE A SPECIFIC PENALTY

14   PROVIDED IN THAT PROTECTIVE ORDER?

15             MR. SHVODIAN:  I DON'T KNOW OFFHAND, YOUR

16   HONOR, ON THAT.  I DON'T THINK THERE -- I DON'T

17   KNOW IF THERE'S A SPECIFIC PROVISION.

18             THE COURT:  LET ME HEAR.  IS SCOTT

19   WILLIAMS HERE?  COME ON UP, SIR.

20             DID YOU, IN FACT, TELL AN INTEL LAWYER

21   THAT YOU WERE NOT FULL IN YOUR DISCLOSURES OF YOUR

22   POTENTIAL CONFLICTS OF INTERESTS BECAUSE YOU

23   THOUGHT THAT THEY WERE CONFIDENTIAL?

24             DR. WILLIAMS:  YES, MA'AM.  I WAS UNDER

25   NONDISCLOSURE NOT TO PRODUCE THAT INFORMATION.
```

```
 1              MR. VERHOEVEN:  YOUR HONOR, MAY I BRIEFLY
 2    BE HEARD ON THIS.
 3              THE COURT:  YES, BUT LET ME HEAR FROM
 4    DR. WILLIAMS FIRST.
 5              SO YOU DIDN'T THINK THAT INTEL WOULD WANT
 6    TO KNOW WHO WAS -- THAT YOU'RE VIEWING YOUR SOURCE
 7    CODE WHEN YOU'RE WORKING FOR A POTENTIAL
 8    COMPETITOR?  YOU DIDN'T THINK THAT WAS PART OF YOUR
 9    OBLIGATION TO DISCLOSE THAT?
10              DR. WILLIAMS:  THAT CASE HAD ENDED MORE
11    THAN A YEAR EARLIER PRIOR TO THIS CASE.  THAT CASE
12    WAS NOT RELATED TO WHAT WE'RE TALKING ABOUT IN THIS
13    CASE.  I WAS UNDER NONDISCLOSURE NOT TO EVEN ADMIT
14    THAT THAT CASE EXISTED.  THAT WAS NOT AN I.P.
15    LITIGATION.  THAT WAS A PRIVATE ARBITRATION BETWEEN
16    TWO PARTIES.
17              THE COURT:  I FIND IT ACTUALLY IN SOME
18    WAYS WOULD HAVE BEEN BETTER HAD THAT CASE BEEN
19    ONGOING.  I THINK THE PARTIES' NDA AND REASON FOR
20    SECRECY IS MUCH LESS IF THEIR DISPUTE IS OVER A
21    YEAR AGO.  I THINK THEIR NEED FOR SECRECY IS FAR
22    LESS AND IS MUCH MINIMIZED IF THAT DISPUTE IS A
23    YEAR OLD, AND YOU NEVER BOTHERED TO ASK THEM THAT
24    YOU'RE NOW AN EXPERT THAT'S GOING TO REVIEW INTEL
25    CODE, YOU NEVER BOTHERED TO ASK THEM IF YOU COULD
```

```
 1    DISCLOSE THAT TO INTEL SO YOU COULD BE FORTHRIGHT

 2    ABOUT YOUR CONFLICTS OF INTEREST?

 3              DR. WILLIAMS:  I DID.

 4              THE COURT:  DID YOU ASK THEM?  WHAT DID

 5    THEY SAY?

 6              DR. WILLIAMS:  I DID.  I WAS TOLD THAT I

 7    COULD NOT REVEAL THAT INFORMATION.

 8              THE COURT:  DID YOU DISCLOSE THIS

 9    CONFLICT TO SAMSUNG?

10              DR. WILLIAMS:  YES.

11              THE COURT:  OKAY.  SO YOU DIDN'T FEEL

12    LIKE YOUR NONDISCLOSURE OBLIGATIONS PROHIBITED YOU

13    FROM TELLING SOMEONE WHO WAS GOING TO PAY YOU?  IS

14    THAT RIGHT?

15              DR. WILLIAMS:  I DIDN'T TELL THEM THAT

16    THAT CASE EXISTED.  I TOLD THEM THAT THERE WAS A

17    CONFIDENTIAL CASE.  SO THE DETAILS OF THE PARTIES,

18    THE DETAILS OF THE PRIOR --

19              THE COURT:  DR. WILLIAMS IS NOT GOING TO

20    TESTIFY TODAY.  I NEED THIS TO BE HASHED OUT.

21              MR. VERHOEVEN:  OKAY, YOUR HONOR.

22              THE COURT:  WHY DON'T YOU FILE SOMETHING

23    IN WRITING.  I NEED DOCUMENTATION, ALTHOUGH I'VE

24    GOTTEN -- I NEED SOME LAW ON THIS TYPE OF SITUATION

25    WHERE YOU HAVE AN EXPERT WHO'S ADMITTED THAT THEY
```

2338

```
 1    DID NOT DISCLOSE ALL THEIR POTENTIAL CONFLICTS OF

 2    INTEREST, THAT THEY HAVE A COMPETING NDA, I'M SURE,

 3    WHERE YOU CAN -- I NEED SOMETHING WRITTEN UP ON

 4    THIS.  BUT HE'S NOT GOING TODAY.

 5              MR. VERHOEVEN:  YOUR HONOR, WE HAVEN'T

 6    EVEN HAD AN OPPORTUNITY TO PRESENT THE FACTS HERE.

 7              THE COURT:  GO AHEAD.

 8              MR. VERHOEVEN:  THE FACTS WILL BE

 9    PRESENTED.  MY PARTNER WILL PRESENT THAT.

10              I JUST WANT TO SAY ONE THING, YOUR HONOR,

11    IT'S VERY COMMON PRACTICE IN DISCLOSURES WHERE

12    EXPERTS HAVE NDA OBLIGATIONS WHERE THEY DON'T LIST

13    THOSE ON THEIR C.V.  THAT IS NOT UNUSUAL, YOUR

14    HONOR.  IT'S COMPETING CONFIDENTIAL OBLIGATIONS AND

15    WE SENT OVER HIS C.V. --

16              THE COURT:  IF YOU WERE -- IF THE SHOE

17    WAS ON THE OTHER FOOT AND THERE WAS AN EXPERT THAT

18    WAS LOOKING AT SAMSUNG CODE, YOU WOULD BE IN HERE

19    COMPLAINING JUST AS MUCH.  OKAY?  YOU WOULD.  TRUST

20    ME.  YOU WOULD.

21              SO I HEAR WHAT YOU'RE SAYING.  I KNOW

22    THIS IS A PROBLEM THAT COMES UP FREQUENTLY.  BUT I

23    GUARANTEE YOU, IF THE SHOE WERE ON THE OTHER FOOT,

24    YOU WOULD BE IN HERE COMPLAINING AS WELL.

25              MR. VERHOEVEN:  YOUR HONOR, THE OTHER
```

2339

1    THING YOU SHOULD KNOW IS THAT INTEL IS VERY CLOSELY

2    ALIGNED WITH APPLE IN THIS CASE AND THE NOTION THAT

3    THEY DIDN'T KNOW WHAT DR. WILLIAMS' ROLE WAS IN

4    THIS CASE AND THEY'RE SURPRISED AT THE LAST MINUTE

5    SUCH THAT THEY CAN DISRUPT OUR TRIAL ORDER BY

6    COMING UP WITH AN ORAL MOTION THE DAY BEFORE

7    DR. WILLIAMS TESTIFIES BECAUSE THEY'RE SURPRISED --

8            THE COURT:  BUT WHY DID YOU NOT, WHY DID

9    YOU GOT GIVE HIM HIS SIGNATURE ON THE PROTECTIVE

10   ORDER UNTIL LAST NIGHT?

11           MR. WHITEHURST:  ALAN WHITEHURST SPEAKING

12   ON BEHALF OF SAMSUNG.

13           THE COURT:  SO DID DR. WILLIAMS SIGN IT

14   IN APRIL?

15           MR. WHITEHURST:  YES, HE DID.

16           THE COURT:  WHY DIDN'T YOU DISCLOSE IT

17   BEFORE LAST NIGHT?

18           MR. WHITEHURST:  YOU KNOW, YOUR HONOR,

19   I -- I DON'T KNOW WHY IT WAS NOT.  BUT THE -- THE

20   IMPORTANT PART IS --

21           THE COURT:  ISN'T THE POINT OF GIVING

22   THAT DISCLOSURE SO THE PARTIES WHOSE CONFIDENTIAL

23   INFORMATION IT IS HAS AN OPPORTUNITY TO OBJECT?

24           MR. WHITEHURST:  YES, YOUR HONOR.

25           THE COURT:  ISN'T THAT THE WHOLE POINT OF

```
1    GIVING THAT FORM?

2              MR. WHITEHURST:  YOUR HONOR, WE DID.  WE

3    SENT NOTICE OF DR. WILLIAMS ON JANUARY 20TH.  THIS

4    STARTED LONG BEFORE THAT.  AND UNDER 12(B) --

5              THE COURT:  OKAY.  I WANT TO SEE PAPERS.

6    GIVE ME PAPERS.  I DON'T TRUST WHAT ANY LAWYERS

7    TELLS ME IN THIS COURTROOM.  I WANT TO SEE THE

8    ACTUAL PAPERS.  I WANT TO SEE WHAT INTEL GOT LAST

9    NIGHT.

10             THE COURT:  PASS IT UP.  PASS IT UP.  I

11   WANT TO SEE THE ACTUAL PAPERS.

12             MR. WHITEHURST:  SO THIS IS WHAT, YOUR

13   HONOR, STARTED THIS WHOLE PROCESS.  THIS IS JANUARY

14   OF 2012, ALMOST OVER A HALF A YEAR AGO, WE

15   DISCLOSED DR. WILLIAMS.

16             UNDER THE PROTECTIVE ORDER, SECTION

17   12(B), INTEL HAD SEVEN DAYS TO OBJECT.  INTEL NEVER

18   GOT BACK TO SAMSUNG WITHIN THE SEVEN-DAY PERIOD ON

19   THE PROTECTIVE ORDER, AND THEY WERE SUPPOSED TO

20   SEEK RELIEF FROM THIS COURT.

21             NOW, DR. WILLIAMS SIGNED THE INTERIM

22   PROTECTIVE ORDER.  HE WAS COVERED BY THE PROTECTIVE

23   ORDER.

24             HE SUBMITTED AN EXPERT REPORT IN THIS

25   CASE ADDRESSING THE INTEL SOURCE CODE.  HE WAS
```

1    DEPOSED ON THE INTEL SOURCE CODE.

2              SO FOR INTEL TO SAY THAT THEY NEVER KNEW

3    THAT DR. WILLIAMS WAS REVIEWING INTEL SOURCE CODE

4    WHEN THEY'VE BEEN IN CLOSE CONTACT WITH APPLE

5    THROUGHOUT THIS LITIGATION IS VERY SURPRISING.

6              AT NO TIME DID THEY TAKE UP THIS ISSUE

7    WITH YOU, DID THEY ADDRESS IT WITH US, WHEN UNDER

8    THE PROTECTIVE ORDER IT SAYS INTEL HAD TO SEEK

9    RELIEF FROM THE COURT WITHIN SEVEN DAYS.

10             NOW, THIS WHOLE ISSUE WITH THE C.V. TO

11   TRY TO SAY THAT SOMEHOW THE CLOCK NEVER STARTED IS

12   BECAUSE DR. WILLIAM HAS THIS ENGAGEMENT WHICH, AS

13   HE'S ALREADY ADDRESSED, HAS NO BEARING ON THIS

14   CASE.  BUT IT WAS COVERED BY NDA AND HE COULD NOT

15   ADD THAT TO HIS C.V. WITHOUT COURT ORDER.

16             THE COURT:  OKAY.  THIS IS WHAT I'M GOING

17   TO DO.  I HAVE A JURY WAITING.  IT'S 9:00 O'CLOCK,

18   AND WE ARE STARTING TRIAL.  SO I WANT THIS BRIEFED.

19   I WANT THIS BRIEFED.  I WANT THIS BRIEFED BY 10:30.

20   OKAY?  AND I WANT YOU TO FILE ALL OF THE RELEVANT

21   DOCUMENTATION.  I DON'T WANT ANY REPRESENTATIONS

22   ABOUT WHAT Y, X, Z LETTER SAYS OR DOESN'T SAY.  I

23   WANT THE ACTUAL LETTERS.  OKAY?

24             MR. WHITEHURST:  THANK YOU, YOUR HONOR.

25             MR. LEE:  YOUR HONOR, JUST ONE THING.  WE

2342

1    FOUND OUT ABOUT THIS LAST NIGHT.  THE SUGGESTION

2    THAT WE KNEW ABOUT THIS, WE FOUND OUT LAST NIGHT AS

3    WELL.

4            THE COURT:  WELL, PUT IT IN WRITING, AND

5    I WANT THE ACTUAL EXHIBITS, PLEASE.  I DON'T WANT

6    ANY ATTORNEY REPRESENTATION ABOUT WHAT X, Y OR Z

7    SAYS.  I WANT TO SEE THE ACTUAL DOCUMENTS.  OKAY?

8            MR. JOHNSON:  YOUR HONOR, JUST WHILE

9    WE'RE WAITING FOR THE JURY, THERE WAS AN EXHIBIT

10   THAT WAS USED WITH PROFESSOR BEDERSON YESTERDAY, IT

11   WAS SHOWN, IT WAS VIDEO 3951.004, AND MY PARTNER,

12   ED DEFRANCO --

13           THE COURT:  YOU'RE GOING TO DO IT ON YOUR

14   TRIAL TIME.

15           MR. JOHNSON:  I WILL.

16           THE COURT:  OKAY.  MOVE IT WHILE IT'S

17   YOUR TIME TO DO ANY REDIRECT OF MR. BOGUE.  OKAY?

18           MR. JOHNSON:  OKAY.

19           THE COURT:  ALL RIGHT.  NOW, THANK YOU

20   FOR FILING -- CAN YOU BRING IN THE JURY,

21   MR. RIVERA.

22           THE CLERK:  SURE.

23           THE COURT:  THANK YOU.

24           WOULD YOU SEND ME THE SOFT COPY OF THE

25   EXHIBIT LIST, OF THE EXHIBIT LIST SO I CAN MAKE

2343

```
1    CHANGES TO IT?
2            MR. JACOBS:  WE WILL, YOUR HONOR, YES.
3            THE COURT:  OKAY.  THANK YOU.  BECAUSE
4    I'M GOING TO SHORTEN -- I APPRECIATE YOU ALL
5    PUTTING LIMITING INSTRUCTIONS.  I'M GOING TO
6    SHORTEN THEM.  I THINK THIS OVER HIGHLIGHTS THEM.
7    I NORMALLY WOULDN'T GIVE ANY LIMITING INSTRUCTION
8    ANYWAY IN WRITING, BUT FOR PURPOSES OF THIS CASE,
9    BECAUSE THE VOLUME IS SO GREAT, WE'RE GOING TO DO
10   IT.
11           (WHEREUPON, THE FOLLOWING PROCEEDINGS
12   WERE HELD IN THE PRESENCE OF THE JURY:)
13           THE COURT:  ALL RIGHT.  PLEASE TAKE A
14   SEAT.
15           IT'S 9:05, AND WE WERE IN THE MIDDLE OF
16   MR. BOGUE'S CROSS.
17           SO WHERE IS MR. BOGUE?
18           MR. JOHNSON:  YOUR HONOR, I THINK HE'S
19   COMING IN.
20           THE COURT:  ALL RIGHT.  PLEASE TAKE A
21   SEAT, SIR.  YOU'RE STILL UNDER OATH.
22           THE WITNESS:  YES.
23           THE COURT:  IT'S 9:06.  GO AHEAD.
24                   ADAM BOGUE,
25   BEING RECALLED AS A WITNESS ON BEHALF OF THE
```

1    DEFENDANTS, HAVING BEEN PREVIOUSLY SWORN, WAS

2    FURTHER EXAMINED AND TESTIFIED AS FOLLOWS:

3              MR. JACOBS:  YOUR HONOR, WE MOVE

4    PLAINTIFF'S EXHIBIT NUMBER 210 INTO EVIDENCE.  YOU

5    DON'T HAVE A COPY OF THIS YESTERDAY.  I WILL HAND

6    UP MINE.  IT IS THE PHOTOGRAPHS OF THE DIAMONDTOUCH

7    SYSTEM THAT WE TOOK LAST NIGHT.

8              THE COURT:  ALL RIGHT.  ANY OBJECTION?

9              MR. JOHNSON:  NO, YOUR HONOR.

10             MR. JACOBS:  WE WOULD ALSO MOVE 46.1 INTO

11   EVIDENCE THAT WAS SHOWN DURING MR. BOGUE'S

12   TESTIMONY, AND 2288 INTO EVIDENCE, ALSO SHOWN

13   DURING MR. BOGUE'S TESTIMONY.

14             THE COURT:  OKAY.  YOU SAID 2288, ANY

15   OBJECTION?  THAT'S ADMITTED.

16             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBERS

17             210, 26.1, AND 2288, HAVING BEEN

18             PREVIOUSLY MARKED FOR IDENTIFICATION,

19             WERE ADMITTED INTO EVIDENCE.)

20             THE COURT:  WHAT ABOUT, YOU SAID 46.1?

21             MR. JACOBS:  THAT'S CORRECT.  46.1 IS THE

22   IMAGE OF THE PROTOTYPICAL DIAMONDTOUCH SETUP.

23             THE COURT:  ALL RIGHT.  THOSE THREE ARE

24   ADMITTED.

25             THE COURT:  NOW, IS THIS ONE EXHIBIT THE

2345

```
 1    WHOLE THING?

 2              MR. JACOBS:  YES.

 3              THE COURT:  OKAY.  ALL RIGHT.  DO YOU

 4    WANT ME TO HAVE THAT GO TO MR. BOGUE?  THANK YOU.

 5              ALL RIGHT.  GO AHEAD, PLEASE.

 6              MR. JACOBS:  AND I PASS THE WITNESS, YOUR

 7    HONOR.

 8              THE COURT:  OKAY.  IT'S 9:07.

 9              MR. JOHNSON:  YOUR HONOR, WE WOULD MOVE

10    SDX 4102 AND SDX 4103, AND YOU DO NOT HAVE THESE,

11    EITHER, YOUR HONOR.  THESE ARE ADDITIONAL

12    PHOTOGRAPHS THAT WERE TAKEN LAST NIGHT?

13              THE COURT:  OKAY.  4102 AND WHAT WERE THE

14    OTHER ONE, PLEASE?

15              MR. JOHNSON:  4103.

16              THE COURT:  SDX 4103.  ANY OBJECTION?

17              MR. JACOBS:  NO, YOUR HONOR.

18              THE COURT:  OKAY.  THOSE ARE ADMITTED.

19              (WHEREUPON, DEFENDANT'S EXHIBIT 4102 AND

20              4103, HAVING BEEN PREVIOUSLY MARKED FOR

21              IDENTIFICATION, WERE ADMITTED INTO

22              EVIDENCE.)

23              MR. JOHNSON:  AND, YOUR HONOR, WE'D ALSO

24    ASK THAT THE EXHIBIT 3951.004 THAT WAS USED WITH

25    PROFESSOR BEDERSON YESTERDAY BE ADMITTED.
```

2346

```
 1              THE COURT:  OKAY.  GIVE ME A SECOND, 4102

 2    AND 4103, I NEED TO DESCRIBE THEM.  THEY'RE PHOTOS

 3    OF THE DIAMONDTOUCH?

 4              MR. JOHNSON:  YES, YOUR HONOR.

 5              THE COURT:  OKAY.  ALL RIGHT.  AND THEN

 6    GIVE ME THAT NUMBER ONE MORE TIME.

 7              MR. JOHNSON:  3951.004.

 8              THE COURT:  ALL RIGHT.  ANY OBJECTION?

 9              MR. JACOBS:  CAN WE JUST SEE IT QUICKLY,

10    YOUR HONOR?  WE DON'T HAVE IT ON OUR SYSTEM.

11              MR. JOHNSON:  SURE.  RYAN, CAN YOU BRING

12    IT UP, PLEASE.  AGAIN, THIS WAS USED WITH PROFESSOR

13    BEDERSON.

14              MR. JACOBS:  NO OBJECTION, YOUR HONOR.

15              THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

16              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

17              3951.004, HAVING BEEN PREVIOUSLY MARKED

18              FOR IDENTIFICATION, WAS ADMITTED INTO

19              EVIDENCE.)

20              THE COURT:  OKAY.

21              MR. JOHNSON:  NO FURTHER QUESTIONS, YOUR

22    HONOR.

23              THE COURT:  ALL RIGHT.  IT'S 9:09.  ANY

24    RECROSS?

25              MR. JACOBS:  YOUR HONOR, I MISSED ONE,
```

```
 1    PDX 46.2 IS THE SLOW MOTION VIDEO WE SHOWED

 2    YESTERDAY WITH DR. BEDERSON.  WE'D MOVE THAT INTO

 3    EVIDENCE.

 4                 THE COURT:  WAIT.  46.2?

 5                 MR. JACOBS:  YES.

 6                 THE COURT:  ANY OBJECTION?

 7                 MR. JOHNSON:  NO, YOUR HONOR.

 8                 THE COURT:  THAT WAS WITH DR. BEDERSON?

 9                 MR. JACOBS:  SORRY, WITH MR. BOGUE, YOUR

10    HONOR.  I'M SORRY.

11                 THE COURT:  OKAY.  ALL RIGHT.  AND WHAT

12    WAS THAT?

13                 MR. JACOBS:  THAT'S A SLOW MOTION VIDEO

14    OF TABLECLOTH EXHIBITING THE PULL DOWN BEHAVIOR.

15                 THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

16                 (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

17                 46.2, HAVING BEEN PREVIOUSLY MARKED FOR

18                 IDENTIFICATION, WAS ADMITTED INTO

19                 EVIDENCE.)

20                 THE COURT:  OKAY.  9:09.  THAT'S IT?

21                 MR. JACOBS:  YES, YOUR HONOR.  THANK YOU.

22                 THE COURT:  ALL RIGHT.  MAY THIS WITNESS

23    BE EXCUSED AND IS IT SUBJECT TO RECALL?

24                 MR. JOHNSON:  YES, HE MAY BE EXCUSED AND,

25    NO, YOUR HONOR, HE'S NOT SUBJECT TO RECALL.
```

                                                                            2348

 1                  MR. JACOBS:  AGREED, YOUR HONOR.

 2                  THE COURT:  OKAY.  THEN YOU ARE EXCUSED

 3        AND YOU DON'T HAVE TO COME BACK.

 4                  THE WITNESS:  OKAY.

 5                  THE COURT:  ALL RIGHT.  THANK YOU, SIR.

 6                  OKAY.  GO AHEAD AND PLEASE CALL YOUR NEXT

 7        WITNESS.

 8                  MR. JOHNSON:  YOUR HONOR, SAMSUNG CALLS

 9        DR. CLIFF FORLINES.

10                  THE COURT:  DO YOU HAVE A PHOTO?

11                  THE CLERK:  YES, YOUR HONOR.

12                  THE COURT:  THANKS.  WE CAN PUT THAT OUT

13        LATER.

14                  MR. JOHNSON:  PLEASE TAKE THE STAND.

15                  THE COURT:  MR. FORLINES, PLEASE RAISE

16        YOUR RIGHT HAND.

17                          **CLIFTON FORLINES,**

18        BEING CALLED AS A WITNESS ON BEHALF OF THE

19        DEFENDANT, HAVING BEEN FIRST DULY SWORN, WAS

20        EXAMINED AND TESTIFIED AS FOLLOWS:

21                  THE WITNESS:  I DO.

22                  THE CLERK:  THANK YOU.  PLEASE BE SEATED.

23        /   /   /

24        /   /   /

25        /   /   /

**DIRECT EXAMINATION**

1

2     BY MR. JOHNSON:

3     Q     GOOD MORNING, DR. FORLINES.

4     A     GOOD MORNING.

5     Q     DO YOU HAVE AN UNDERSTANDING OF WHY YOU'RE

6     HERE TO TESTIFY.

7     A     YES.  I USED TO BE AN EMPLOYEE OF MITSUBISHI.

8     I WORKED ON THE DIAMONDTOUCH.  SORRY ABOUT THAT.

9     I'M SORRY.  IT'S MY FIRST TIME IN COURT.

10    Q     FIRST TIME IN ANY COURT?

11    A     YES.

12    Q     ALL RIGHT.  SO CAN WE -- LET'S STEP BACK.  CAN

13    YOU DESCRIBE FOR US YOUR EDUCATIONAL BACKGROUND,

14    PLEASE.

15    A     SURE.  MY UNDERGRADUATE DEGREE IS IN

16    INDUSTRIAL DESIGN.  THAT'S FROM CARNEGIE MELLON

17    UNIVERSITY.

18          I HAVE A MASTER'S IN ENTERTAINMENT

19    TECHNOLOGY AND A BACHELOR'S IN HUMAN COMPUTER

20    INTERACTION, ALSO FROM CARNEGIE MELLON.

21          MY DOCTORATE IS IN COMPUTER SCIENCE.

22    THAT'S FROM THE UNIVERSITY OF TORONTO.

23    Q     WHAT DO YOU DO FOR A LIVING?

24    A     I WORK AT DRAPER LABORATORY.  D-R-A-P-E-R.

25    DRAPER IS A NOT FOR PROFIT LAB IN CAMBRIDGE,

1    MASSACHUSETTS.  I WORK IN THE HUMAN CENTERED

2    ENGINEERING GROUP.  SOME PEOPLE IN DRAPER CALL THAT

3    THE USER INTERFACE GROUP.

4    Q    OKAY.  AND WHAT DID YOU DO BEFORE YOU WORKED

5    AT DRAPER?

6    A    BEFORE DRAPER I WORKED AT THE MITSUBISHI

7    ELECTRIC RESEARCH LABS.  WE ALL CALLED IT MERL.

8    THAT'S A LITTLE BIT EASIER.

9    Q    LET'S CALL IT MERL.  WHEN DID YOU START AT

10   MERL?

11   A    I STARTED AS A CONTRACTOR AT MERL IN LATE

12   2001.

13   Q    OKAY.  NOW, YOU MENTIONED THE DIAMONDTOUCH

14   SYSTEM.

15          CAN YOU BRIEFLY DESCRIBE THE DIAMONDTOUCH

16   SYSTEM FOR US?

17   A    SURE.  IT'S A MULTIUSER, MULTITOUCH DISPLAY

18   THAT ALLOWS PEOPLE TO INTERACT WITH GRAPHICAL

19   APPLICATIONS USING THEIR FINGERS AND THEIR HANDS.

20   Q    OKAY.  WAS THERE A TIME WHEN DIAMONDTOUCH WAS

21   ENCASED WITHIN A SINGLE HOUSING?

22   A    SURE.  PART OF THE RESEARCH WE DID IN THE

23   DIAMONDTOUCH WAS DIFFERENT FORM FACTORS.  SO SOME

24   OF THESE FORM FACTORS INCLUDED THE ACTUAL TOUCH

25   SENSITIVE SURFACE AND ALL OF THE COMPUTING AND

```
 1    PROTECTOR ELEMENTS ENCASED IN ALL ONE DESIGN.
 2    Q    AND WHAT WAS YOUR ROLE WITH RESPECT TO
 3    DIAMONDTOUCH?
 4    A    WELL, LIKE WITH OTHER MERL PROJECTS, I WOULD
 5    DESIGN AND BUILD NEW USER INTERFACES, TEST THOSE
 6    OUT, YOU KNOW, CHECK ON USABILITY, WRITE PAPERS
 7    ABOUT THAT WORK, FILE PATENTS, GIVE PRESENTATIONS,
 8    THAT KIND OF THING.
 9    Q    ALL RIGHT.  WHAT'S FRACTAL ZOOM?
10    A    FRACTAL ZOOM IS AN APPLICATION I WROTE FOR THE
11    DIAMONDTOUCH.  IT'S A VERY SIMPLE APPLICATION.  IT
12    SHOWS OFF FRACTAL GRAPHICS ON THE DIAMONDTOUCH,
13    WHICH IS LIKE MATHEMATICAL IMAGES.
14         A USER WORKING WITH THIS APPLICATION CAN
15    TOUCH THE FRACTAL WITH THE FINGER AND DRAG IT
16    AROUND THE DISPLAY, OR THEY CAN TOUCH THE
17    APPLICATION WITH TWO FINGERS AND USE THOSE TWO
18    FINGERS TO RESIZE THE GRAPHICS.
19    Q    WHEN DID YOU WRITE THE PROGRAM?
20    A    IN LATE 2004.
21    Q    AND WHY DID YOU WRITE IT?
22    A    I WROTE FRACTAL ZOOM TO SHOW OFF SOME OF THE
23    MULTITOUCH MEANS OF INPUT THAT PEOPLE HAD USED
24    PREVIOUSLY.  WE WOULD SHOW FRACTAL ZOOM IMMEDIATELY
25    BEFORE SHOWING SOME OF THE MORE ADVANCED
```

2352

1    DIAMONDTOUCH GESTURE WORK.

2    Q    I'D LIKE TO SHOW YOU A VIDEO THAT'S ALREADY

3    BEEN ADMITTED INTO EVIDENCE.  IT'S SDX 3952.101,

4    AND I'M GOING TO ASK YOU, BEFORE WE LOOK AT THE

5    VIDEO, BRIEFLY, CAN YOU DESCRIBE HOW FRACTAL ZOOM

6    DISTINGUISHES BETWEEN ONE FINGER AND TWO FINGER

7    INPUTS?

8    A    SURE THING.

9    Q    RYAN, CAN WE SHOW THAT.

10           (WHEREUPON, A VIDEO WAS PLAYED IN OPEN

11   COURT OFF THE RECORD.)

12           THE WITNESS:  SO CAN YOU PAUSE IT HERE,

13   PLEASE.

14           SO WHEN THEY START THE APPLICATION, THEY

15   SEE THIS IMAGE AND THE USER CAN SEE THAT IT WAS

16   WRITTEN BY MITSUBISHI ELECTRIC RESEARCH LABS.  IT

17   TELLS THEM THAT IT WAS WRITTEN IN 2004.

18           AND IT SAYS SOME OTHER THINGS ABOUT THE

19   SOFTWARE, SUCH AS IT'S NOT FOR SALE, IT'S FOR

20   DEMONSTRATIONS, AND THAT THERE ARE PATENTS PENDING

21   ON THE DIAMONDTOUCH TECHNOLOGY AND THE GESTURAL

22   WORK WE WERE WORKING ON.

23           CAN WE GO AHEAD AND PLAY.

24           (WHEREUPON, A VIDEO WAS PLAYED IN OPEN

25   COURT OFF THE RECORD.)

2353

```
 1              THE WITNESS:  SO AFTER READING ABOUT THE
 2     APPLICATIONS -- CAN YOU PAUSE AGAIN, PLEASE.
 3     THEY'D SEE A SET OF INSTRUCTIONS ABOUT WHAT THEY
 4     COULD DO WITH THE APPLICATION, AND THE INSTRUCTIONS
 5     TELL THEM THAT -- I FORGOT ABOUT THIS -- IT TELLS
 6     THEM THAT THEY CAN TOUCH THE TABLE WITH ONE FINGER
 7     AND THAT'LL LET THEM PAN, AND PAN IS ANOTHER WORD
 8     WE USE FOR MOVING OR SCROLLING.
 9              IT SAYS THEY CAN TOUCH THE TABLE WITH TWO
10     FINGERS AND SPREAD THEM APART TO ZOOM IN OR TOUCH
11     THE TABLE WITH TWO FINGERS AND PULL THEM TOGETHER
12     IN ORDER TO ZOOM OUT.
13              AND THAT'S PRETTY MUCH WHAT YOU DO WITH
14     THIS APPLICATION.
15              CAN WE PLAY IT, PLEASE.
16              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
17     OPEN COURT OFF THE RECORD.)
18              THE WITNESS:  SO AFTER SEEING THOSE
19     INSTRUCTIONS, THEY GET A CHANCE TO USE THE
20     APPLICATION.  SO ONE FINGER, TOUCH, DRAG, WE'RE
21     GOING TO PAN UP.  ONE FINGER, TOUCH, DRAG, WE'RE
22     GOING TO MOVE BACK DOWN.  AND TWO FINGERS, WE CAN
23     ZOOM OUT.  OR TWO FINGERS WE CAN ZOOM IN.  AGAIN,
24     THAT'S PRETTY MUCH WHAT THE APPLICATION DOES.
25     BY MR. JOHNSON:
```

1    Q    OKAY.  YOU SHOULD HAVE A BINDER IN FRONT OF

2    YOU THAT'S BLACK THAT HAS SOME EXHIBITS IN THERE?

3    A    UM-HUM.

4    Q    AND I WANT TO DIRECT YOUR ATTENTION TO EXHIBIT

5    548, PLEASE.

6    A    548, OKAY.

7    Q    YEAH.  WHAT'S THIS?

8    A    THIS IS A PICTURE OF A, A DIRECTORY.  THIS IS

9    THE SOURCE CODE TO THE APPLICATION WE JUST WATCHED

10   THE VIDEO OF.  THIS IS THE CODE I WROTE.

11          MR. JOHNSON:  OKAY.  YOUR HONOR, WE'D ASK

12   THAT EXHIBIT 548 BE MOVED INTO EVIDENCE.

13          MR. JACOBS:  NO OBJECTION, YOUR HONOR.

14          THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

15          (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

16          548, HAVING BEEN PREVIOUSLY MARKED FOR

17          IDENTIFICATION, WAS ADMITTED INTO

18          EVIDENCE.)

19          MR. JOHNSON:  CAN WE PUBLISH THAT,

20   PLEASE.

21          THE COURT:  GO AHEAD, PLEASE.

22   BY MR. JOHNSON:

23   Q    WHAT'S THE FILE AT THE TOP, FRACTALZOOM@.JAVA?

24   A    THAT'S THE NAME OF THE SOURCE CODE FOR THIS

25   APPLICATION.  THAT'S MY TYPO.  I MISSPELLED IT.

1    Q    YOU LEFT OUT THE R?

2    A    I LEFT OUT THE R.  IT SAYS FRACTAL ZOOM.

3    Q    AND LET'S, WHAT'S THE DATE OF THIS FILE?

4    A    THIS FILE WAS LAST EDITED ON NOVEMBER 30TH,

5    2004.

6    Q    WHAT DOES THAT MEAN?

7    A    IT MEANS THE LAST TIME ANYBODY MADE ANY

8    CHANGES TO THIS SOURCE CODE WAS NOVEMBER 30TH,

9    2004.

10   Q    ALL RIGHT.  LET'S PULL UP THE EXHIBIT AND LOOK

11   AT EXHIBIT 693?

12   A    693, OKAY.

13   Q    WHAT'S THIS?

14   A    THIS IS THE -- THIS IS THE SOURCE CODE TO THE

15   FRACTAL ZOOM APPLICATION WE JUST WATCHED THE VIDEO

16   OF.

17   Q    IS THIS THE SOURCE CODE YOU WROTE?

18   A    YES, IT IS.  MY NAME IS AT THE VERY TOP OF

19   THIS FILE.

20          MR. JOHNSON:  ALL RIGHT.  CAN WE MOVE

21   EXHIBIT 693 INTO EVIDENCE, PLEASE.

22          THE COURT:  ANY OBJECTION.

23          MR. JACOBS:  NO, YOUR HONOR.

24          THE COURT:  IT'S ADMITTED.

25          (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

```
 1              693, HAVING BEEN PREVIOUSLY MARKED FOR

 2              IDENTIFICATION, WAS ADMITTED INTO

 3              EVIDENCE.)

 4     BY MR. JOHNSON:

 5     Q     SO WE SEE YOUR NAME AT THE TOP?

 6     A     YEAH, THAT'S MY NAME RIGHT THERE, FORLINES.

 7     Q     IS THERE A DATE ON THIS SOURCE CODE?

 8     A     SURE.  IT SAYS 2004.  THE TOOL I WAS USING TO

 9     WRITE CODE AT THE TIME WOULD AUTOMATICALLY INSERT

10     THE YEAR AT THE TOP OF A NEW FILE.

11     Q     CAN YOU BRIEFLY EXPLAIN, I DON'T WANT TO GO

12     INTO A LOT OF DETAILS ON THE SOURCE CODE, BUT CAN

13     YOU BRIEFLY EXPLAIN HOW THIS SOURCE CODE WORKED?

14     A     SURE.  FRACTAL ZOOM WORKS WITH A LOWER LEVEL

15     OF SOFTWARE THAT IS RECEIVING SORT OF RAW DATA FROM

16     THE DIAMONDTOUCH.

17              IT RECEIVES AN INPUT EVENT.  AT THE

18     BOTTOM OF PAGE 2, IT RECEIVES AN INPUT EVENT HERE

19     IN A METHOD CALLED TOUCH DETECTED.  THERE'S A DT

20     LID, DT FRAME, DT LID, INPUT DT FRAME.  I DIDN'T

21     NAME IT.

22              THAT INPUT EVENT HAS INFORMATION ABOUT

23     THE TOUCH, SO LATER IN THE TOUCH DETECTIVE METHOD,

24     THERE'S A CHUNK OF CODE HERE WHERE WE CHECK TO SEE

25     IF THAT TOUCH IS A TWO-FINGER TOUCH.  IF IT'S A
```

1  TWO-FINGER TOUCH, WE'RE GOING TO SET THE

2  APPLICATION MODE TO ZOOMING MODE, RIGHT THERE.  AND

3  IF IT'S NOT A TWO-FINGER TOUCH, WE SET THE

4  APPLICATION MODE TO PANNING MODE HERE.  AGAIN, PAN

5  IS A WORD FOR MOVE.

6            WE THEN REPAINT THE APPLICATION, AND OVER

7  ON, IT LOOKS LIKE PAGE 4 AT THE VERY BOTTOM HERE,

8  IF THE APPLICATION IS IN ZOOM MODE -- CAN YOU

9  SCROLL THAT UP A LITTLE BIT?  I'M SORRY, SHOW A

10 LITTLE BIT MORE.  PERFECT.

11           IF THE APPLICATION IS IN ZOOMING MODE

12 WHEN WE PAINT, WE'RE GOING TO PAINT THE FRACTAL

13 IMAGES AT A NEW SIZE, AND IF THE APPLICATION IS IN

14 CANDY MODE, WE'RE GOING TO PAINT THE IMAGES AT A

15 NEW LOCATION.

16 Q    WAS THIS THE SOURCE CODE THAT WAS USED IN THE

17 FRACTAL ZOOM VIDEO THAT WE SAW?

18 A    YES, IT IS.

19 Q    ARE YOU FAMILIAR WITH AN APPLICATION THAT ALSO

20 RAN ON DIAMONDTOUCH CALLED TABLECLOTH?

21 A    YES.  TABLECLOTH IS ANOTHER SORT OF SIMPLE

22 DEMONSTRATION APPLICATION.  TABLECLOTH LETS YOU

23 REACH OUT WITH YOUR FINGER AND TOUCH AN IMAGE ON

24 THE DIAMONDTOUCH AND PULL IT UP OR DOWN.  WHEN YOU

25 DO THAT, IT EXPOSES A SECOND IMAGE IMMEDIATELY

1    ABOVE OR BELOW THAT FIRST ONE YOU GRABBED.

2             WHAT'S NEAT ABOUT TABLECLOTH IS YOU LET

3    GO AND TABLECLOTH IS GOING TO AUTOMATICALLY ANIMATE

4    THE IMAGE BACK AND SNAP IT BACK INTO ITS ORIGINAL

5    POSITION WHERE IT FIRST STARTED.

6    Q    WHO WROTE TABLECLOTH AND WHEN WAS IT WRITTEN?

7    A    TABLECLOTH WAS WRITTEN BY ONE OF MY COLLEAGUES

8    AT MERL, ALAN ESENTHER.  HE WROTE IT AT THE VERY,

9    VERY END OF 2004 AND EARLY 2005.  I REMEMBER ALAN

10   COMING BACK FROM HIS CHRISTMAS AND NEW YEAR'S

11   VACATION BEING REALLY EXCITED ABOUT TABLECLOTH AND

12   THE OTHER DT FLASH APPLICATIONS HE HAD BEEN WORKING

13   ON.

14   Q    ARE YOU FAMILIAR WITH THE SOURCE CODE FOR

15   TABLECLOTH?

16   A    YES, I AM.

17   Q    LET'S LOOK AT DX 655.ZERO 04 IN YOUR BINDER.

18   CAN YOU TELL US WHAT THIS IS?

19   A    SURE.  THIS IS A DIRECTORY THAT HAS WEB PAGES

20   FOR ALL OF THE DT FLASH DEMONSTRATION APPLICATIONS

21   THAT I JUST MENTIONED.

22             MR. JOHNSON:  YOUR HONOR, WE --

23             THE WITNESS:  SORRY.

24   BY MR. JOHNSON:

25   Q    I DIDN'T MEAN TO INTERRUPT.

```
1    A    THAT'S ALL RIGHT.  THE SECOND ONE FROM THE

2    BOMB HERE IS CALLED TABLECLOTH UNDERSCORE 2 SEARCH.

3    THAT'S THE WEB PAGE WITH THE TABLECLOTH SOFTWARE.

4              MR. JOHNSON:  YOUR HONOR, WE ASK DX

5    655.004 BE ADMITTED.

6              MR. JACOBS:  NO OBJECTION.

7              THE COURT:  THAT'S ADMITTED.

8              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

9              655.004, HAVING BEEN PREVIOUSLY MARKED

10             FOR IDENTIFICATION, WAS ADMITTED INTO

11             EVIDENCE.)

12   BY MR. JOHNSON:

13   Q    I THINK YOU WERE TALKING ABOUT A FUNCTION

14   TOWARDS THE BOTTOM, RIGHT?  WHAT DOES THIS SCREEN

15   SHOT SHOW?

16   A    THE SECOND FILE FROM THE BOTTOM IS TABLECLOTH

17   UNDERSCORE 27.  THAT'S THE WEB PAGE THAT YOU WOULD

18   NEED IN ORDER TO RUN THIS SOFTWARE.

19             YOU CAN SEE HERE THAT IT WAS LAST

20   MODIFIED ON JANUARY 12TH, 2005.

21   Q    WHAT DOES THAT MEAN, LAST MODIFIED

22   JANUARY 12TH, 2005?

23   A    THAT MEANS THE LAST TIME ANYBODY MADE ANY

24   CHANGES TO THIS WEB PAGE WAS JANUARY 12TH, 2005.

25   Q    NOW, IS THAT CONSISTENT WITH YOUR RECOLLECTION
```

1    AS TO WHEN TABLECLOTH WAS WRITTEN?

2    A    YES, IT IS.

3    Q    YOU TESTIFIED EARLIER THAT, OR YOU JUST

4    TESTIFIED THERE'S JANUARY 12TH, 2005.  BUT LOOK AT

5    THE PATH DIRECTORY UP AT THE TOP OF THIS DOCUMENT,

6    IT HAS A DATE OF JUNE 7TH, 2005, TOWARDS THE END.

7                 WHAT'S YOUR UNDERSTANDING OF WHAT THAT

8    MEANS?

9    A    WELL, ALAN, ALAN WAS WORKING ON THE DT FLASH

10   DRIVES FOR A WHILE.  HIS WORKING PROCESS, IF YOU

11   WILL, WOULD BE TO TAKE A WHOLE COLLECTION OF

12   SOFTWARE AND JUST MAKE A COPY OF IT, PUT A NEW DATE

13   ON IT, AND THEN CONTINUE TO WORK ON PIECES.  SO

14   WE'RE LOOKING AT A JUNE 7TH, 2005 COPY OF THE DT

15   FLASH APPLICATIONS.

16   Q    LET'S LOOK AT DX 655.001.  WHAT'S THIS?

17   A    THIS IS THE SOURCE CODE TO THE TABLECLOTH

18   APPLICATION.

19                 MR. JOHNSON:  OKAY.  YOUR HONOR, WE ASK

20   THAT DX 665.001 BE ADMITTED.

21                 THE COURT:  ANY OBJECTION.

22                 MR. JACOBS:  NO, YOUR HONOR.

23                 THE COURT:  IT'S ADMITTED.

24                 (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

25                 665.001, HAVING BEEN PREVIOUSLY MARKED

```
1              FOR IDENTIFICATION, WAS ADMITTED INTO

2              EVIDENCE.)

3    BY MR. JOHNSON:

4    Q    BRIEFLY, CAN YOU EXPLAIN WHAT THAT THE

5    TABLECLOTH SOURCE CODE SHOWS?

6    A    SURE.  RIGHT IN THE MIDDLE OF PAGE 1, THERE'S

7    A FUNCTION DEFINED HERE, AND IT'S, IT'S SET UP TO

8    RUN -- IT'S SET UP TO RUN ON TOUCH OR RELEASE.

9    THAT MEANS WHEN THE FINGER IS LIFTED FROM THE

10   DIAMONDTOUCH.

11             SO WHEN THE FINGER IS RELEASED, WE RUN

12   THIS CODE, AND THE VERY LAST THING THIS CODE DOES

13   HERE IS MAKE THIS FUNCTION CALLED SNAP BACK RUN

14   REPEATEDLY, AND IT'S SNAP BACK THAT ACTUALLY MOVES

15   THE IMAGE AND SNAPS IT BACK TO ITS INITIAL

16   POSITION.

17   Q    CAN YOU SHOW THE JURY THE SNAP BACK FUNCTION

18   IN THE CODE?

19   A    SURE.  IT'S AT THE VERY END OF THIS FILE ON

20   THE NEXT PAGE.  IT'S SHOWN HERE.  YEAH, PERFECT.

21             SO THIS IS SNAP BACK.  THIS IS THE

22   FUNCTION THAT'S CALLED REPEATEDLY TO MOVE THE

23   IMAGE, AND IT'S, IT'S SET UP -- IT DOES SOME MATH

24   TO ANIMATE THAT IMAGE BACK USING SORT OF AN

25   ELASTIC-LIKE ANIMATION BASED ON PHYSICS.
```

2362

```
 1              AND IT CONTINUES TO RUN UNTIL THAT IMAGE,

 2    THE TOP OF THAT IMAGE IS ALIGNED WITH THE TOP OF

 3    THE SCREEN.

 4    Q    AND HOW DOES THIS CODE THAT YOU'RE LOOKING AT

 5    COMPARE TO THE CODE THAT EXISTED IN JANUARY OF

 6    2005?

 7    A    IT'S THE SAME.

 8    Q    NOW, WAS THERE A PLACE, DR. FORLINES, AT MERL

 9    WHERE FRACTAL ZOOM AND TABLECLOTH WERE AVAILABLE

10    FOR MERL CUSTOMERS, VISITORS, FRIENDS?

11    A    YES.  WE HAD A DIAMONDTOUCH SETUP IN THE FRONT

12    LOBBY AT MERL.  THIS IS WHERE PEOPLE COMING TO THE

13    LAB COULD TRY OUT THE SOFTWARE MAYBE WHILE THEY

14    WERE WAITING FOR SOMEONE TO SHOW UP.  I'VE SEEN,

15    LIKE, RESEARCHER'S KIDS AND THEIR FRIENDS, PEOPLE

16    COMING TO SEE TALKS AT MERL, THAT SORT OF THING.

17              WE SET IT UP IN THE LOBBY SO THAT IT

18    WOULD BE VISIBLE AND ATTRACTIVE AND ACTUALLY ASKED

19    OUR RECEPTIONIST TO SORT OF SHEPPARD PEOPLE OVER TO

20    TRY OUT THESE DEMOS ON DIAMONDTOUCH.

21    Q    WHEN WAS FRACTAL ZOOM FIRST PUT ON ITSELF

22    DIAMONDTOUCH SYSTEM IN THE LOBBY?

23    A    FRACTAL ZOOM WAS PUT ON ALMOST IMMEDIATELY

24    AFTER I WROTE IT.  AGAIN, WE WROTE THESE

25    APPLICATIONS TO SHOW OFF FEATURES OF THE
```

1    DIAMONDTOUCH.  SO WE WANTED TO GET THEM OUT IN

2    FRONT OF PEOPLE AND THE LOBBY WAS A GOOD PLACE TO

3    DO THAT.

4    Q    HOW DO YOU KNOW IT WAS PUT ON IT RIGHT AFTER

5    YOU WROTE IT?

6    A    I PUT IT ON THERE.

7    Q    OKAY.  WHEN WAS TABLECLOTH FIRST PUT ON THE

8    DIAMONDTOUCH SYSTEM IN THE LOBBY?

9    A    IN JANUARY 2005, ALMOST IMMEDIATELY AFTER IT

10   WAS WRITTEN.  THE FIRST TIME I SAW TABLECLOTH

11   RUNNING WAS IN THE LOBBY AT MERL.

12   Q    WHEN WAS THAT?

13   A    JANUARY 2005.

14   Q    WAS THERE A TIME WHEN THE AVAILABILITY TO THE

15   SYSTEM IN THE MERL LOBBY BECAME MORE RESTRICTED?

16   A    SURE.  THE DOORS TO THE LOBBY AT MERL WERE

17   TYPICALLY CHOCKED OPEN DURING BUSINESS HOURS.  WE

18   HAD A RECEPTIONIST THERE.  BUT THERE WAS A LAPTOP

19   STOLEN IN EARLY 2006, I THINK FEBRUARY, AND AFTER

20   THAT TIME WE KEPT THE DOORS CLOSED AND LOCKED BY

21   DEFAULT.  ANYONE WHO WORKED THERE COULD OPEN THE

22   DOOR, AND THERE WAS ALSO A RECEPTIONIST WHO COULD

23   BUZZ PEOPLE IN WHO WERE COMING TO VISIT.

24   Q    WHOSE LAPTOP WAS STOLEN?

25   A    RAVIN BALAKRISHNAN'S.  HE WAS A VISITING

2364

1    SCIENTIST AT MERL DURING THIS TIME PERIOD.

2    Q    BEFORE THE LAPTOP WAS STOLEN IN 2006, WERE

3    THERE ANY RESTRICTIONS ON THE LOBBY OR THE SYSTEM

4    IN THE LOBBY?

5    A    NO, THERE WEREN'T.

6    Q    NOW, LET'S LOOK AT EXHIBIT 697 IN YOUR BINDER,

7    PLEASE.

8    A    697, CORRECT?

9    Q    YES.  WHAT'S THIS?

10   A    697 IS AN E-MAIL FROM CHIA SHEN TO MYSELF.

11   CHAUDHRI IS SOMEONE I WORKED WITH AT MERL.  SHE'S

12   ACKNOWLEDGING THAT I PUT TOGETHER A CD WITH A BUNCH

13   OF DIAMONDTOUCH SOFTWARE ON IT FOR A DEMONSTRATION

14   IN JANUARY OF 20002.

15            MR. JOHNSON:  YOUR HONOR, WE ASKED THAT

16   EXHIBIT DX 697 BE ADMITTED.

17            MR. JACOBS:  NO OBJECTION.

18            THE COURT:  IT'S ADMITTED.

19            (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

20            697, HAVING BEEN PREVIOUSLY MARKED FOR

21            IDENTIFICATION, WAS ADMITTED INTO

22            EVIDENCE.)

23            MR. JOHNSON:  AND WE ALSO ASK THAT

24   EXHIBIT 655.002, THE SOURCE CODE, BE ADMITTED.

25            MR. JACOBS:  NO OBJECTION, YOUR HONOR.

```
 1              THE COURT:  THAT'S ADMITTED.

 2              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

 3              699.002, HAVING BEEN PREVIOUSLY MARKED

 4              FOR IDENTIFICATION, WAS ADMITTED INTO

 5              EVIDENCE.)

 6              THE WITNESS:  IT MIGHT BE HELPFUL TO

 7     POINT OUT THAT MANDELBROT, WHO IS MENTIONED HERE BY

 8     NAME.

 9     BY MR. JOHNSON:

10     Q    WHAT'S MANDELBROT?

11     A    MANDELBROT IS THE NAME OF THE MATHEMATICIAN

12     WHO CAME UP WITH THE SPECIFIC FRACTAL THAT IS USED

13     IN THE APPLICATION WE JUST TALKED ABOUT.

14              SO WHEN WE TALK ABOUT MANDELBROT, WE'RE

15     TALKING ABOUT THE FRACTAL ZOOM APPLICATION AND

16     THAT'S THE SAME THING.

17     Q    IS THIS REFERRING TO A DEMONSTRATION THAT WAS

18     GOING TO BE DONE FOR ANYBODY IN PARTICULAR?

19     A    THIS CD I PUT TOGETHER WAS FOR A DEMONSTRATION

20     THE FOLLOWING WEEK TO SENATOR BOB KERREY.  HE WAS

21     AT THE TIME THE PRESIDENT OF THE NEW SCHOOL IN

22     NEW YORK CITY.

23     Q    NOW, LET'S LOOK AT EXHIBIT 698.  WHAT'S THIS

24     DOCUMENT?

25     A    698?  THIS IS AN E-MAIL FROM CHIA SHEN TO
```

```
 1    CATHY RILEY, ALAN ESENTHER, AND MYSELF.  SHE'S

 2    DISCUSSING THE PRACTICE, THE TYPICAL PRACTICE WE

 3    HAD OF KEEPING AWAY THESE GIVING AWAY THESE

 4    DIAMONDTOUCH APPLICATIONS TO THESE CUSTOMERS AND

 5    ANYONE WHO WAS INTERESTED IN DIAMONDTOUCH.  SHE

 6    MENTIONED MANDELBROT BY NAME.  AGAIN, MANDELBROT IS

 7    THE FRACTAL ZOOM APPLICATION.

 8               MR. JOHNSON:  YOUR HONOR, WE ASK THAT

 9    EXHIBIT DX 698 BE MOVED INTO EVIDENCE, YOUR HONOR.

10               MR. JACOBS:  NO OBJECTION, YOUR HONOR.

11               THE COURT:  IT'S ADMITTED.

12               (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

13               698, HAVING BEEN PREVIOUSLY MARKED FOR

14               IDENTIFICATION, WAS ADMITTED INTO

15               EVIDENCE.)

16    BY MR. JOHNSON:

17    Q    AND AGAIN THE REFERENCE HERE TO MANDELBROT IS

18    ALSO REFERRING TO FRACTAL ZOOM?

19    A    YES, THEY'RE THE SAME THING.

20    Q    NOW, DR. FORLINES, ARE YOU BEING COMPENSATED

21    FOR YOUR TIME HERE TODAY?

22    A    I'M NOT BEING PAID TO BE HERE TODAY, NO.

23    Q    AND HAVE YOU BEEN COMPENSATED FOR THE TIME

24    YOU'VE SPENT LEADING UP TO YOUR TESTIMONY?

25    A    YES, I HAVE.
```

1    Q    WHAT'S YOUR HOURLY RATE?

2    A    IT'S $400 AN HOUR.

3    Q    ABOUT HOW MANY HOURS DID YOU SPEND WORKING ON

4    THIS MATTER?

5    A    I HAVEN'T ADDED IT UP, BUT SOMEWHERE SOUTH OF

6    100 HOURS.  THERE'S A LOT OF SOURCE CODE HERE.

7         MR. JOHNSON:  OKAY.  PASS THE WITNESS,

8    YOUR HONOR.

9         THE COURT:  OKAY.  THE TIME IS NOW 9:29.

10   GO AHEAD, PLEASE.

11                    **CROSS-EXAMINATION**

12   BY MR. JACOBS:

13   Q    YOU MENTIONED DR. BALAKRISHNAN.  HE WAS YOUR

14   THESIS ADVISOR?

15   A    YES, I MET DR. BALAKRISHNAN BEFORE HE WAS A

16   DOCTOR, HE WAS A STUDENT.  WE WORKED TOGETHER AT

17   MERL AND THEN WHEN I DID MY DOCTORAL WORK, HE WAS

18   MY ADVISOR.

19        MR. JACOBS:  THANK YOU, SIR.

20        NO FURTHER QUESTIONS.

21        THE COURT:  ALL RIGHT.  ANY REDIRECT?

22        MR. JOHNSON:  NO, YOUR HONOR.

23        THE COURT:  ALL RIGHT.  MAY THIS WITNESS

24   BE EXCUSED?  AND IS IT SUBJECT TO RECALL OR NOT?

25        MR. JOHNSON:  YES, YOUR HONOR, HE MAY BE

```
 1   EXCUSED AND, NO, HE'S NOT SUBJECT TO RECALL.

 2            THE COURT:  DO YOU AGREE WITH THAT,

 3   MR. JACOBS?

 4            MR. JACOBS:  YES, YOUR HONOR.

 5            THE COURT:  ALL RIGHT.  THEN YOU ARE

 6   EXCUSED AND YOU'RE FREE TO LEAVE.

 7            OKAY.  THE NEXT WITNESS IS DEPOSITIONS;

 8   IS THAT RIGHT?

 9            MR. VERHOEVEN:  NO, YOUR HONOR.  WE'RE

10   GOING TO ADJUST THE ORDER AND CALL DR. --

11            MR. JOHNSON:  DR. WOODWARD YANG, YOUR

12   HONOR.

13            MR. VERHOEVEN:  THE DEPOS THAT WE HAD GO

14   TOGETHER WITH DR. WILLIAMS.

15            THE COURT:  OKAY.  BUT I NEED THE

16   PROFFER.

17            MR. LEE:  YES.

18            THE COURT:  SO, YOU KNOW WHAT, LET'S

19   TAKE -- THIS IS GOING TO BE ANOTHER WEIRD DAY.  WHY

20   DON'T WE TAKE OUR --

21            MR. VERHOEVEN:  WE HAVE IT RIGHT HERE.

22            MR. JOHNSON:  IF WE COULD TAKE A QUICK

23   BREAK, WE CAN SHOW IT TO YOUR HONOR.

24            THE COURT:  WELL -- WEIRDLY, WE'RE GOING

25   TO TAKE OUR MORNING BREAK NOW, I'M SORRY, AND THEN
```

```
 1    WE'LL TAKE ANOTHER BREAK -- SO IF WE TAKE OUR BREAK

 2    FROM 9:30 TO 9:45, AND THEN -- WELL, HOW MUCH TIME

 3    DO YOU NEED TO REVIEW THE PROFFER?

 4              MR. LEE:  PARDON?

 5              THE COURT:  HOW MUCH TIME DO YOU NEED

 6    TO -- HAVE YOU SEEN IT?

 7              MR. LEE:  NO.

 8              THE COURT:  OKAY.

 9              MR. LEE:  I THINK I CAN RESPOND, YOUR

10    HONOR, HAVING SEEN IT ORALLY, UNLESS YOUR HONOR

11    WANTS SOMETHING IN WRITING.  I HAVEN'T SEEN IT YET.

12              THE COURT:  OH, OKAY.  ALL RIGHT.  LET'S

13    JUST TAKE A TEN-MINUTE BREAK RIGHT NOW.  OKAY?

14    THANK YOU.

15              PLEASE KEEP AN OPEN MIND AND PLEASE DON'T

16    DISCUSS THE CASE WITH ANYONE AND PLEASE DON'T DO

17    ANY RESEARCH.  AND I APOLOGIZE FOR INCONVENIENCING

18    YOU.

19              (WHEREUPON, THE FOLLOWING PROCEEDINGS

20    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

21              THE COURT:  ALL RIGHT.  HAVE YOU HAD A

22    CHANCE TO LOOK AT IT NOW?

23              MR. LEE:  YES.

24              MR. JOHNSON:  YOUR HONOR, IF I MIGHT?

25              THE COURT:  ALL RIGHT.
```

2370

```
 1            MR. JOHNSON:  MAY I HAND IT UP?

 2            THE COURT:  YES, PLEASE.  THANK YOU.

 3            (PAUSE IN PROCEEDINGS.)

 4            THE COURT:  ALL RIGHT.  GO AHEAD.

 5            MR. LEE:  YOUR HONOR, THREE POINTS.  IF I

 6   TAKE YOUR HONOR BACK, YOU KNOW BETTER THAN I, TO

 7   THE LOCAL RULES ON PATENT DISCLOSURES, RULE 3.1(C),

 8   IT SAYS THE DISCLOSURE HAS TO SPECIFICALLY IDENTIFY

 9   WHERE EACH LIMITATION OF EACH ASSERTED CLAIM IS

10   FOUND.  THAT'S NUMBER ONE.

11            NUMBER TWO, THE EXPERT REPORT DOESN'T DO

12   THAT, AS DR. YANG CONCEDED.

13            NUMBER THREE, AT PAGE 178, YOUR HONOR,

14   HERE IS THE EXCHANGE ON FOOTNOTE 6.

15            AND I THINK THIS IS CRITICAL BECAUSE,

16   YOUR HONOR, THAT PROFFER JUST ALLOWED HIM TO GIVE A

17   CONCLUSION WITHOUT EVER HAVING IDENTIFIED IN

18   ACCORDANCE WITH THE LOCAL RULES OR IN HIS EXPERT

19   REPORT, SPECIFICALLY WHAT IT IS THAT SATISFIES THE

20   LIMITATION.

21            AND AS I SAID YESTERDAY, THIS ONE IS NOT

22   A MYSTERY.  THIS IS ONE THAT MR. JOHNSON AND I

23   ARGUED BEFORE YOUR HONOR DURING THE MARKMAN

24   HEARING.

25            IF YOUR HONOR LOOKS AT PAGE 178, LINE 21,
```

1    "SO EVERY ITEM LISTED IN FOOTNOTE 6 ON THIS PAGE IS

2    AN APPLET?

3              "ANSWER:  NO.  THEY GO ALONG TO SUPPORT

4    THE IDEA OF WHAT A MUSIC BACKGROUND PLAY OBJECT.

5    THEY GO ALONG TO SUPPORT WHAT'S AN APPLICATION

6    MODULE.  THEY GO ALONG TO FINALLY SUPPORT, IF YOU

7    FINALLY DIG DOWN LOW ENOUGH, YOU'LL FIND THERE'S AN

8    APPLET THERE, AND SO WHICH APPLETS, SO THAT'S WHY

9    WE'RE REFERRING TO PROGRAMMING GUIDES HERE.

10             "QUESTION:  AND FOOTNOTE 6 HAS MANY, MANY

11   DIFFERENT PIECES OF SOURCE CODE.  ARE ANY OF THEM

12   APPLETS IN YOUR OPINION, OR DO YOU HAVE -- DO ANY

13   OF THEM REPRESENT CODE FOR AN APPLET IN YOUR

14   OPINION?

15             "ANSWER:  YES.  WITHIN HERE, I'M CERTAIN

16   THERE ARE APPLETS.  I JUST CAN'T RECALL EXACTLY

17   WHICH ONE THEY ARE.  BUT THERE'S ONE IN HERE."

18             I MEAN, THIS IS ALLOWING A WITNESS, IN

19   CONTRAVENTION OF THE PATENT DISCLOSURE RULES AND

20   THE PURPOSE OF THE EXPERT REPORTS, TO GIVE A

21   CONCLUSION, WITHOUT ANY SPECIFICITY, HAVING BEEN

22   ASKED FOR THE SPECIFICITY, HAVING NOT GIVEN IT IN

23   HIS REPORT, HAVING SPECIFICALLY BEEN ASKED AT THE

24   DEPOSITION WHERE IS IT AMONG THESE 32 MODULES, AND

25   TO HAVE HIM SAY, "IT'S IN THERE, I CAN'T TELL YOU."

2372

```
 1            AND, YOUR HONOR, THIS IS --

 2            THE COURT:  I -- YOU KNOW, I HEAR YOU.

 3   THEY SHOULD HAVE DONE A MORE SPECIFIC AND COMPLETE

 4   DISCLOSURE AND THEY DIDN'T.

 5            BUT THIS IS ALL CROSS.  OKAY?  SO LET'S

 6   GO AHEAD.

 7            NOW, DO YOU NEED TIME, SINCE I REVERSED

 8   MY RULING?  OR NOT?

 9            MR. LEE:  NO.  WE'RE READY TO GO.

10            THE COURT:  I'M SORRY?

11            MR. LEE:  WE'RE READY TO GO.

12            THE COURT:  ALL RIGHT.  YOU'RE READY TO

13   GO?  THEN LET'S DO IT.

14            BRING THE JURY BACK IN.

15            (WHEREUPON, THE FOLLOWING PROCEEDINGS

16   WERE HELD IN THE PRESENCE OF THE JURY:)

17            MR. JOHNSON:  YOUR HONOR, SHOULD HE GO

18   AHEAD AND TAKE THE STAND?

19            THE COURT:  YEAH, IF YOU WOULD, PLEASE.

20            (WHEREUPON, THE FOLLOWING PROCEEDINGS

21   WERE HELD IN THE PRESENCE OF THE JURY:)

22            THE COURT:  I WAS JUST KIDDING ABOUT THE

23   TEN-MINUTE BREAK.  SO -- ALL RIGHT.

24            LET'S GO AHEAD, PLEASE, AND CALL YOUR

25   NEXT WITNESS.  GO AHEAD.
```

1     MR. JOHNSON:  YOUR HONOR, SAMSUNG CALLS

2  DR. WOODWARD YANG.

3     THE CLERK:  MR. WOODWARD, PLEASE RAISE

4  YOUR RIGHT HAND.

5                      **WOODWARD YANG,**

6  BEING CALLED AS A WITNESS ON BEHALF OF THE

7  DEFENDANT, HAVING BEEN FIRST DULY SWORN, WAS

8  EXAMINED AND TESTIFIED AS FOLLOWS:

9     THE WITNESS:  YES, I DO.

10     THE CLERK:  THANK YOU.  PLEASE BE SEATED.

11     THE COURT:  ALL RIGHT.  THE TIME IS NOW

12  9:37.  GO AHEAD, PLEASE.

13     MR. JOHNSON:  THANK YOU.

14                   **DIRECT EXAMINATION**

15  BY MR. JOHNSON:

16  Q    DR. YANG, COULD YOU PLEASE STATE YOUR FULL

17  NAME FOR THE RECORD?

18  A    MY FULL NAME IS WOODWARD YANG.

19  Q    WHAT ARE YOU HERE TO TESTIFY ABOUT?

20  A    I'M HERE TO TESTIFY SPECIFICALLY ABOUT THREE

21  SAMSUNG PATENTS AND MY UNDERSTANDING OF THOSE

22  PATENTS AND MY ANALYSIS OF THOSE PATENTS AND

23  WHETHER CERTAIN APPLE DEVICES PARTICULARLY PRACTICE

24  THE CLAIMS SPECIFIED IN THOSE PATENTS.

25  Q    SO THESE ARE SAMSUNG PATENTS IN?

1    A    YES, THEY ARE.

2    Q    AND WHAT DID YOU DO TO PREPARE FOR REACHING

3    YOUR CONCLUSIONS IN THIS CASE?

4    A    WELL, FIRST I HAD TO READ THE PATENTS VERY

5    CAREFULLY, REACH SOME SORT OF UNDERSTANDING OF

6    THOSE PATENTS.  I ALSO EXAMINED THE PROSECUTION

7    HISTORY OF THOSE PATENTS.  I ALSO EXAMINED THE

8    APPLE DEVICES AND ASSOCIATED INFORMATION WITH THE

9    APPLE DEVICES, SUCH AS USER MANUALS AND SOURCE

10   CODE.

11          AND THEN I HAD TO DO ANALYSES TO MAKE

12   SURE THAT, IN FACT, THOSE APPLE DEVICES ACTUALLY

13   PRACTICE ALL OF THE CLAIMS DESCRIBED IN THOSE

14   PATENTS.

15   Q    OKAY.  HAVE YOU PREPARED SOME SLIDES FOR THE

16   PURPOSES OF YOUR TESTIMONY TODAY?

17   A    YES, I HAVE.

18   Q    OKAY.  LET'S -- RYAN, IF YOU COULD BRING UP

19   3967.002, AND I'D LIKE TO ASK YOU, JUST GENERALLY,

20   BEFORE WE TURN TO THE PATENTS, CAN YOU GIVE US

21   SOME -- DESCRIBE YOUR BACKGROUND FOR US, YOUR

22   EDUCATION?

23   A    WELL, I ACTUALLY GREW UP HERE IN CALIFORNIA

24   AND ATTENDED THE UNIVERSITY OF CALIFORNIA BERKELEY

25   WHERE I RECEIVED MY BACHELOR'S IN ELECTRICAL

1    ENGINEERING, COMPUTER SCIENCE IN 1984.

2              AND RIGHT AFTER UNDERGRADUATE, I WENT TO

3    GRADUATE SCHOOL AT M.I.T. WHERE I RECEIVED MY

4    MASTER'S AND PH.D., AGAIN IN ELECTRICAL ENGINEERING

5    AND COMPUTER SCIENCE.

6    Q    WHAT DID YOU DO AFTER RECEIVING YOUR PH.D.?

7    A    WELL, RIGHT AFTER GRADUATING, ABOUT A WEEK

8    AFTER I GRADUATED AND RECEIVED MY PH.D. I ACTUALLY

9    STARTED AT THE FACULTY AT HARVARD UNIVERSITY WHERE

10   I'M A PROFESSOR OF ELECTRICAL ENGINEERING AND

11   COMPUTER SCIENCE AND I HAVE BEEN FOR OVER THE LAST

12   20 YEARS.

13   Q    DO YOU HAVE ANY OTHER POSITIONS AT HARVARD?

14   A    YES.  IN 2008, I WAS ALSO APPOINTED THE

15   HARVARD BUSINESS SCHOOL, H B.S., A FELLOW AND AT

16   THE BUSINESS SCHOOL, I ALSO TEACH COURSES ON

17   COMMERCIALIZING TECHNOLOGY AND ENTREPRENEURSHIP AS

18   WELL.

19   Q    HAS ANY OF YOUR WORK FOUND ITS WAY INTO EVERY

20   DAY COMMERCIAL PRODUCTS?

21   A    YES.  SOME OF MY TECHNICAL WORK SOME PEOPLE

22   HERE MIGHT BE FAMILIAR WITH.  THE FIRST IS

23   SOMETHING CALLED THE CMOS IMAGE SENSOR, AND THIS IS

24   REALLY THE CAMERA CHIP THAT'S INSIDE THE MOBILE

25   PHONE.  THAT'S THE THING THAT ACTUALLY ALLOWS YOU

1    TO TAKE PICTURES.

2             SO I DID A LOT OF THAT FIRST FUNDAMENTAL

3    RESEARCH WORK AND ACTUALLY IMPLEMENTED THE FIRST

4    COMMERCIALLY VIABLE CMOS IMAGE SENSOR AT A COMPANY

5    CALLED HYUNDAI ELECTRONICS.

6             THE SECOND THING THAT I DID IS I ALSO DID

7    A LOT OF FUNDAMENTAL RESEARCH WORK ON BOTH HARDWARE

8    AND SOFTWARE NECESSARY FOR A COMPUTER TO DO FACE

9    RECOGNITION.  SO IN ORDER FOR A COMPUTER TO LOOK AT

10   THE USER AND BE ABLE TO RECOGNIZE WHO THE USER IS.

11            NOW, THIS TECHNOLOGY IS ACTUALLY FOUND

12   ITS WAY INTO SOME OF THE MOST ADVANCED MOBILE

13   PHONES TODAY, WHICH I DON'T KNOW IF YOU'RE FAMILIAR

14   WITH, BUT YOU CAN ACTUALLY LOOK INTO THE PHONE, THE

15   PHONE CAN TAKE A PICTURE OF YOUR FACE, AND IF

16   YOU'RE THE OWNER IT'LL UNLOCK IT SO YOU DON'T NEED

17   TO USE A CODE TO UNLOCK THE PHONE ANYMORE.  SO

18   THAT'S FOUND ITS WAY INTO THINGS THAT PEOPLE USE.

19            AND THE THIRD THING IS A LITTLE BIT

20   ESOTERIC.  IT'S A SPECIALIZED PIECE OF MEMORY THAT

21   GOES INTO A LOT OF MOBILE PHONES, AND IT'S USED FOR

22   A LOT OF LOWER COST FEATURE PHONES, NOT SO MUCH IN

23   THE SMARTPHONES.

24   Q    DO YOU HAVE ANY PATENTS THAT RELATE TO CAMERA

25   PHONES OR SMARTPHONES?

```
 1     A    YES, I'M THE NAMED INVENTOR OR COINVENTOR ON

 2     NINE PATENTS, AND I BELIEVE WELL OVER HALF OF THEM

 3     ARE THINGS THAT YOU'LL FIND IN YOUR MOBILE PHONE

 4     TODAY.

 5     Q    ARE YOU BEING PAID FOR YOUR WORK IN THIS CASE?

 6     A    YES, I AM.

 7     Q    ROUGHLY HOW MANY HOURS HAVE YOU SPENT?

 8     A    ABOUT 300 TO 400 HOURS.

 9          MR. JOHNSON:  AT THIS POINT, YOUR HONOR,

10     WE MOVE TO QUALIFY DR. YANG AS AN EXPERT IN THE

11     FIELD OF ELECTRICAL ENGINEERING AND COMPUTER

12     LICENSE?

13          THE COURT:  ANY OBJECTION?

14          MR. LEE:  NO OBJECTION.

15          THE COURT:  ALL RIGHT.  SO CERTIFIED.

16     BY MR. JOHNSON:

17     Q    NOW, DR. YANG, YOU MENTIONED YOU ANALYZED

18     THREE PATENTS.  JUST GENERALLY, WHAT ARE THE

19     CONCLUSIONS THAT YOU REACHED?

20     A    GENERALLY, THE CONCLUSIONS THAT I REACHED ARE

21     THE PATENTS ARE VALID AND THE ACCUSED APPLE

22     DEVICES, OR CERTAIN OF THE ACCUSED APPLE DEVICES

23     ACTUALLY INFRINGE ON THOSE PATENTS.

24     Q    OKAY.  NOW, CAN YOU TELL US A LITTLE BIT ABOUT

25     EACH OF THE PATENTS THAT YOU'RE GOING TO DISCUSS
```

1    TODAY, AND FOR THAT WE CAN BRING UP EXHIBIT

2    3967.003?

3    A    SO TODAY I'LL TALK SPECIFICALLY ABOUT THREE

4    PATENTS.  THE FIRST IS 7,577,460, OR WE'LL CALL IT

5    THE '460 FOR SHORT, AND THIS HAS TO DO WITH A

6    CAMERA PHONE.

7         SO AT THE TIME OF THIS INVENTION, CAMERA

8    PHONES WERE JUST COMING OUT, SO YOU COULD HAVE A

9    PHONE BUT NOW THEY'RE STARTING TO STICK CAMERAS IN

10   THEM, AND THIS INVENTION, OR THE INVENTORS OF THIS

11   PATENT ACTUALLY RECOGNIZED THAT IT'S VERY IMPORTANT

12   TO HAVE CERTAIN CORE FUNCTIONS IN THAT CAMERA PHONE

13   IN ORDER TO MAKE THE BEST USE OF IT.

14        THE FIRST WAS TO BE ABLE TO SEND AN

15   E-MAIL WITH TEXT; THE SECOND WAS TO BE ABLE TO SEND

16   AN E-MAIL WITH A PHOTO; AND THE THIRD IS TO BE ABLE

17   TO SCROLL BETWEEN THE DIFFERENT IMAGES, TO BE ABLE

18   TO DISPLAY THE DIFFERENT IMAGES STORED IN YOUR

19   PHONE.  AND WE'LL DISCUSS THIS IN MORE DETAIL

20   EXACTLY HOW THIS CORE FUNCTIONALITY ACTUALLY

21   ENABLED THE CAMERA PHONE TO BE QUITE USEFUL.

22        THE SECOND PATENT HERE IS THE 7,456,893

23   PATENT, OR WE'LL CALL IT THE '893 PATENT , AND THIS

24   HAS TO DO WITH DIGITAL CAMERA OR MAYBE EVERYONE HAS

25   A CAMERA PHONE.

```
 1              AND THE IDEA WAS THAT NOW WE HAVE THIS
 2     ABILITY TO TAKE A HUGE NUMBER OF PICTURES, BUT THEN
 3     THIS HUGE NUMBER OF PICTURES, WHENEVER YOU WERE
 4     LOOKING AT THE PICTURES YOU WERE LOOKING AT AND
 5     THERE COULD BE THOUSANDS OF PICTURES IN LOTS OF
 6     DIFFERENT ALBUMS, WHEN YOU SWITCHED TO ANOTHER MODE
 7     OR PHOTOGRAPH MODE TO TAKE ANOTHER PICTURE AND YOU
 8     SWITCHED BACK, YOU LOST YOUR PLACE.
 9              SO THEY REALIZED IT'S VERY USEFUL TO HAVE
10     A BOOKMARK OR INDEX SO THAT WHEN YOU SWITCH THE
11     GRAPH MODE TO THE PICTURE AND WENT BACK, YOU COULD
12     ACTUALLY GO BACK TO THAT ORIGINAL PICTURE YOU WERE
13     LOOKING AT WITHOUT HAVING TO THUMB THROUGH
14     THOUSANDS OF PICTURES TO FIND WHERE YOU WERE.
15              THE THIRD PATENT IS THE 7,698,711 PATENT,
16     WE'LL CALL IT THE '711 PATENT, AND IT HAD TO DO
17     WITH A NEW WAY OF IMPLEMENTING AN MP3 PLAYER IN A
18     MOBILE PHONE WITHOUT USING THE SPECIAL PURPOSE
19     PROCESSOR.
20     Q    WHAT'S THE EARLIEST FILING DATE OF THESE THREE
21     PATENTS?
22     A    THE EARLIEST FILING DATE FOR THE THREE PATENTS
23     IS ACTUALLY FOR THE '460 AND THAT WAS IN 1999.
24     Q    SO ARE YOU FAMILIAR WITH WHAT THE MOBILE
25     DEVICE MARKET WAS LIKE BACK IN 1999 OR 2000?
```

```
 1    A    YES.  THE MOBILE DEVICE MARKET, YOU MIGHT

 2    RECALL BACK THEN, IF YOU HAD A MOBILE PHONE AND THE

 3    MOBILE PHONE COULD MAKE PHONE CALLS AND MAYBE WE

 4    COULD DO A TEXT WITH THAT MOBILE PHONE.

 5              AND WE ALSO HAD A SEPARATE DEVICE, A

 6    DIGITAL CAMERA THAT COULD TAKE PICTURES AND WE ALSO

 7    HAD A SEPARATE DEVICE LIKE A WALK MAN OR MAYBE IT

 8    WAS AN MP3 PLAYER.

 9              SO WE HAD THE THREE SEPARATE DEVICES, AND

10    AT THE TIME THE COMPANIES WHO WERE MAKING THESE

11    DEVICES, COMPANIES SUCH AS NOKIA, SUCH AS SONY

12    ERICSSON, SAMSUNG, WERE THINKING THAT, WOW, IT

13    WOULD BE VERY USEFUL FOR ALL THESE DEVICES TO

14    ACTUALLY NOT HAVE TO CARRY THREE DEVICES IN THREE

15    POCKETS, BUT TO HAVE ONE DEVICE TOGETHER THAT COULD

16    DO ALL OF THESE FUNCTIONS.

17              SO AT THE TIME, THESE COMPANIES WERE

18    THINKING ABOUT HOW DO WE INTEGRATE THESE THINGS?

19    HOW DO WE PUT THESE THINGS INTO ONE DEVICE?  AND

20    THEN WHAT SORT OF INNOVATIONS WE NEED TO, WHAT SORT

21    OF INVENTIONS DO WE NEED TO DO IN ORDER TO MAKE

22    THIS USEFUL AND PRACTICAL FOR PEOPLE TO USE?

23    Q    ALL RIGHT.  LET'S START WITH THE '460 PATENT.

24    YOU SHOULD HAVE SOME BINDERS IN FRONT OF YOU, AND

25    THERE'S AN EXHIBIT 1069 IN YOUR BINDER.  LET ME
```

```
 1    KNOW WHEN YOU'RE THERE.

 2    A    YES.

 3    Q    WHAT'S THIS?

 4    A    THIS IS THE '460 PATENT.

 5              MR. JOHNSON:  YOUR HONOR, WE OFFER JX

 6    1069 INTO EVIDENCE.

 7              MR. LEE:  NO OBJECTION.

 8              THE COURT:  IT'S ADMITTED.

 9              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

10              1069, HAVING BEEN PREVIOUSLY MARKED FOR

11              IDENTIFICATION, WAS ADMITTED INTO

12              EVIDENCE.)

13    BY MR. JOHNSON:

14    Q    OKAY.  AND LET'S LOOK AT SDX 3967.004.

15              AND, DR. YANG, CAN YOU GIVE US JUST A

16    GENERAL OVERVIEW OF THE '460 PATENT?

17    A    YES.  A GENERAL OVERVIEW IS THIS HAS TO DO

18    WITH A CAMERA PHONE, AND OS NOW YOU HAVE A MOBILE

19    PHONE AND A CAMERA CONNECTED TOGETHER.  MORE

20    SPECIFICALLY, WHEN YOU LOOK INTO THE DETAILS OF THE

21    CLAIMS, IT SPEAKS SPECIFICALLY OF HAVING THREE CORE

22    FUNCTIONS.

23              THE FIRST CORE FUNCTION IS AN E-MAIL JUST

24    WITH TEXT.

25              THE SECOND CORE FUNCTION IS BEING ABLE TO
```

```
 1    SEND AN E-MAIL WITH A PICTURE.  SO WHEN YOU SEND

 2    THE E-MAIL, YOU NEED TO BE ABLE TO COMPOSE AN

 3    E-MAIL AND THE PICTURE OF WHAT YOU WANT TO SEND IN

 4    THE E-MAIL SHOULD BE VISIBLE THERE.

 5           AND THE THIRD CORE FUNCTION IS YOU ALSO

 6    HAVE THE ABILITY TO KIND OF PASS THROUGH AND LOOK

 7    AT THE IMAGES THAT YOU HAVE STORED IN YOUR DEVICE.

 8    SO THOSE ARE THE THREE CORE FUNCTIONS.

 9    Q    WHAT PROBLEM WAS THE '460 PATENT TRYING TO

10    SOLVE?

11    A    WELL, YOU HAVE THIS, YOU HAVE THIS WONDERFUL

12    COMMUNICATION DEVICE, A MOBILE PHONE, AND NOW YOU

13    HAVE A DIGITAL CAMERA WHICH COULD TAKE PICTURED.

14           IT SEEMS KIND OF SILLY TO HAVE TO TAKE A

15    DIGITAL CAMERA AND PLUG IT INTO A P.C. TO TAKE

16    PICTURES, WASN'T THERE A WAY THAT WE COULD MERGE

17    THESE TWO DEVICES TOGETHER AND USE THAT MOBILE

18    PHONE IN ORDER TO SEND THE PICTURE BY E-MAIL.  AND

19    THAT'S WHAT THIS WAS TRYING TO SOLVE.

20    Q    WHAT APPLE PRODUCTS DID YOU EVALUATE WITH

21    RESPECT TO THE '460 PATENT?

22    A    YES, I EVALUATED IN PARTICULAR FOUR PIECES OF

23    HARDWARE, AND YOU CAN SEE THEM HERE.  I EVALUATED

24    THE IPHONE 4, THE IPHONE 3GS, THE IPHONE 3G, THE

25    IPOD TOUCH VOICE GENERATION, AND THE IPAD 2.
```

```
 1    Q    AND WE'RE LOOKING AT SDX 3967.005.

 2              NOW, DID YOU FIND THAT ANY OF THE

 3    PRODUCTS CAN PERFORM THE THREE CORE FUNCTIONS THAT

 4    YOU JUST DESCRIBED?

 5    A    YES.  I FOUND THAT ALL OF THESE FUNCTIONS CAN

 6    PERFORM THESE THREE CORE FUNCTIONS.

 7    Q    HAVE YOU PREPARED ANYTHING TO SHOW THE JURY

 8    HOW THE APPLE PRODUCTS PERFORM THESE FUNCTIONS?

 9    A    YES.  IN ORDER TO, SO THAT YOU CAN VISIBLY SEE

10    HOW THESE DEVICES PERFORM, I'VE PREPARED A VIDEO OF

11    THE IPHONE 4 OPERATING UNDER A VERSION OF SOFTWARE

12    THAT'S CALLED IOS 4, DIFFERENT VERSIONS OF

13    SOFTWARE, IOS 4 AND IOS 5, THIS IS VERSION 4, AND

14    THIS IS THE IPHONE 4.  SO I PREPARED A VIDEO.  IF

15    WE CAN START THE VIDEO, PLEASE.

16    Q    THIS IS 3967.006.

17              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

18    OPEN COURT OFF THE RECORD.)

19              THE WITNESS:  SO THIS IS JUST TO SHOW

20    THAT'S THE RIGHT EXHIBIT.  SO YOU CAN SEE THAT THE

21    PHONE IS ON, AND IN THIS MODE, THE PHONE IS IN A

22    PORTABLE PHONE MODE BECAUSE IT CAN RECEIVE A PHONE

23    CALL, AND I'LL DESCRIBE WHAT THAT IS.

24              SO YOU CAN SWITCH TO MAIL APPLICATION,

25    AND YOU CAN SEE YOUR MAIL, REVIEW MAIL, AND THEN
```

1    YOU CAN CHOOSE TO SEND AN E-MAIL, COMPRISE AN

2    E-MAIL.  SO IT BRINGS UP THIS SCREEN WHERE YOU CAN

3    ENTER AN ADDRESS, ENTER A MESSAGE, AND THEN YOU'RE

4    ABLE TO SEND THIS.

5            AND SO THIS WAS -- THIS WAS JUST KIND OF

6    A SIMPLE FUNCTIONALITY.  THIS IS REALLY TO SEND

7    E-MAIL IN A TEXT.

8            NOW, THESE ARE ALSO CAMERA PHONES.  SO

9    THEY ALSO WANT TO BE ABLE TO LOOK AT THE PICTURE.

10   SO YOU MIGHT NOTICE THAT ORANGE THING AT THE TOP,

11   THAT'S AN ORANGE.  SO THAT'S OUR MODEL.

12           SO HERE WE GO FROM THIS HOME SCREEN,

13   WE'RE GOING TO TURN ON THE CAMERA, SO WE'LL TURN ON

14   THE CAMERA AND WE'LL TRY TO TAKE A PICTURE OF THAT

15   ORANGE.

16           SO WE ALSO HAVE THE ABILITY TO BE IN

17   PHOTOGRAPHING MODE AND TAKE A PICTURE AND THE

18   PICTURE IS ACQUIRED AND IT'S STORED.

19           AND WE CAN ALSO VIEW THIS PICTURE THAT WE

20   JUST STORED.  SO IT'S A DIGITAL CAMERA, CERTAINLY.

21   SO IN A MOMENT THE PICTURE WILL BE SELECTED AND WE

22   CAN LOOK AT THE PICTURE AND WE CAN DECIDE NOW THAT

23   WE WANT TO SEND THIS PICTURE BY E-MAIL.

24           SO HERE WE HAVE THE OPTION OF SENDING IT

25   BY E-MAIL.  AND NOW WE HAVE THE OPTION OF NOW

```
 1     ENTERING AN ADDRESS AND A MESSAGE AND BEING ABLE TO
 2     SEND THIS E-MAIL.
 3               BUT THE IMPORTANT THING TO NOTE HERE IS
 4     ALSO THAT THE PICTURE IS ALSO VISIBLE IN THIS
 5     E-MAIL AS YOU'RE SENDING IT.  SO THE MESSAGE WILL
 6     BE PUT IN, AND, BRIEFLY, WE'LL PRESS SEND, AND THEN
 7     THE E-MAIL WILL BE SENT.
 8               SO THAT'S THE SECOND CORE FUNCTION, BEING
 9     ABLE TO SEND AN E-MAIL WITH A PHOTO INSIDE OF IT.
10               AND THE THIRD CORE FUNCTION HERE IS NOW
11     YOU'RE LOOKING AT THE PICTURE OF THE ORANGE, BUT
12     THE PICTURE PREVIOUSLY WERE SOME VACATION PHOTOS
13     AND YOU CAN SEE YOU CAN USE SCROLL KEYS TO GO BACK
14     AND FORTH BETWEEN DIFFERENT IMAGES.
15               SO THIS IS BASICALLY AN ILLUSTRATION OF
16     THOSE THREE CORE FUNCTIONS IN THE '460.
17               MR. JOHNSON:  YOUR HONOR, WE ASK TO MOVE
18     INTO EVIDENCE JX 1055, WHICH WAS THE IPHONE IOS 4.
19               THE COURT:  ANY OBJECTION?
20               MR. LEE:  NO OBJECTION.
21               THE COURT:  THAT'S ADMITTED.
22               (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
23               1055, HAVING BEEN PREVIOUSLY MARKED FOR
24               IDENTIFICATION, WAS ADMITTED INTO
25               EVIDENCE.)
```

```
 1    BY MR. JOHNSON:

 2    Q    DR. YANG, LET'S TURN TO THE ACTUAL CLAIM OF

 3    THE '460 PATENT THAT YOU ANALYZED.  AND CAN YOU

 4    WALK US THROUGH THAT, PLEASE?

 5    A    CERTAINLY.  SO COULD I HAVE THE NEXT SLIDE,

 6    PLEASE?

 7    Q    IF WE LOOK AT 3967.007.

 8    A    YES.

 9         SO IN PARTICULAR, IF YOU LOOK AT THIS,

10    THIS IS CLAIM 1 OF THE '460 PATENT, THIS IS THE ONE

11    THAT'S BEING ASSERTED.  AND WHAT I'VE DONE HERE IS

12    THAT FIRST CORE FUNCTION THAT I MENTIONED, SENDING

13    E-MAIL WITH A TEXT, I'VE HIGHLIGHTED THAT IN BLUE.

14         THE SECOND CORE FUNCTION OF SENDING AN

15    E-MAIL WITH A PHOTO IN IT, I'VE HIGHLIGHTED IN

16    ORANGE.

17         AND THE THIRD CORE FUNCTION OF

18    ESSENTIALLY GOING THROUGH THE IMAGES, I'VE

19    HIGHLIGHTED IN GREEN.  SO JUST TO SORT OF ALERT YOU

20    AS FAR AS WHAT'S GOING ON.

21    Q    ALL RIGHT.  LET'S TURN TO THE FIRST PART OF

22    THE CLAIM, WHICH IS .008 SLIDE.

23    A    ALL RIGHT.  SO WE HAVE TO START AT THE VERY

24    BEGINNING OF THE CLAIM, AND THE CLAIM SAYS, "A DATA

25    TRANSMITTING METHOD FOR A PORTABLE COMPOSITE
```

```
 1    COMMUNICATION TERMINAL WHICH FUNCTIONS AS BOTH A
 2    PORTABLE PHONE AND A CAMERA, COMPRISING THE STEPS
 3    OF."
 4              SO THIS IS SAYING WE'RE GOING TO BE
 5    TALKING ABOUT A CAMERA PHONE, OKAY?  SO THIS IS A
 6    CAMERA PHONE, AND THE CAMERA PHONE HAS TO DO
 7    CERTAIN THINGS.  IN FACT, IT HAS TO PERFORM THOSE
 8    THREE CORE FUNCTIONS.
 9    Q    SO AS PART OF YOUR ANALYSIS, ARE YOU ANALYZING
10    THE CLAIM LANGUAGE COMPARED TO THE ACCUSED
11    PRODUCTS?
12    A    YES.  SO IF YOU LOOK AT THIS, YOU CAN SEE
13    CLEARLY FROM THE IPHONE 4 VIDEO THAT I SHOWED YOU
14    THAT THAT WAS A CAMERA PHONE, IT CAN BE A CAMERA
15    AND A PHONE.
16              AND IF YOU LOOK AT ALL OF THE ACCUSED
17    PRODUCTS, THEY CAN ALL ACT AS A COMMUNICATION
18    TERMINAL AND A CAMERA OR A PHONE AND A CAMERA.
19    Q    SO WHAT'S YOUR CONCLUSION ABOUT WHETHER ANY OF
20    THE APPLE ACCUSED PRODUCTS MEET THIS FIRST CLAIM OF
21    THE '460 PATENT?
22    A    ALL OF THE PRODUCTS MEET THIS CLAIM
23    LIMITATION, SO THE IPHONE 3GS, IPHONE 3G, IPOD
24    TOUCH 4TH GENERATION, THE IPAD 2.
25    Q    YOU SAID ONE FUNCTION WAS ACCEPTING AN E-MAIL
```

```
 1    WITH A MESSAGE.  CAN YOU WALK US THROUGH THAT

 2    FUNCTION AS IT'S DESCRIBED IN CLAIM 1?

 3    A    YES.  SO IF WE GO TO THE NEXT SLIDE, THIS

 4    FIRST CORE FUNCTION NOW WAS THE ONE THAT'S BEEN

 5    HIGHLIGHTED IN BLUE, IT'S BEEN PULLED OUT AND BLOWN

 6    UP HERE.

 7              AND WE CAN SEE THAT IT SAYS, "ENTERING A

 8    FIRST E-MAIL TRANSMISSION SUB-MODE UPON A USER

 9    REQUEST FOR E-MAIL TRANSMISSION WHILE OPERATING IN

10    A PORTABLE PHONE MODE, THE FIRST E-MAIL

11    TRANSMISSION SUB-MODE PERFORMING A PORTABLE PHONE

12    FUNCTION."

13              AND THEN WE WANT TO BE ABLE TO TRANSMIT

14    THE ADDRESS AND OF THE OTHER PARTY AND A MESSAGE

15    RECEIVED THROUGH THE USER INTERFACE IN THE FIRST

16    E-MAIL TRANSMISSION SUB-MODE.

17              SO YOU CAN SEE THERE'S A FIRST E-MAIL

18    SUB-MODE, IT HAS TO BE REACHED FROM SOME USER

19    REQUEST FROM THAT HOME SCREEN.  SO WE HAVE TO PRESS

20    A BUTTON FOR THE MAIL APP, AND PRESS A BUTTON TO

21    COMPOSE, THE USER ENTERS THE FIRST SUB-MODE, AND

22    THEN HE ENTERED IN, HE CAN TYPE IN AN ADDRESS AND A

23    MESSAGE THAT WAS ENTERED THROUGH THE ONSCREEN

24    KEYBOARD, THAT'S THE USER INTERFACE, AND THIS IS

25    THE FIRST E-MAIL TRANSMISSION SUB-MODE AND THEN WE
```

```
1    SEND IT.

2              SO, IN FACT, THE IPHONE 4 VIDEO THAT I

3    SHOWED YOU SHOWS THIS PERFORMS EXACTLY THIS

4    FUNCTION, AND, IN FACT, ALL THE OTHER ACCUSED

5    DEVICES WILL PERFORM EXACTLY THIS FUNCTION IN

6    EXACTLY THIS SAME WAY AS WELL.

7              MR. JOHNSON:  YOUR HONOR, WE ASK THAT WE

8    MOVE INTO EVIDENCE SDX 3967.006, WHICH IS THE

9    IPHONE 4 VIDEO.

10             THE COURT:  ALL RIGHT.  ANY OBJECTION?

11             MR. LEE:  NO OBJECTION.

12             THE COURT:  IT'S ADMITTED.

13             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

14             3697.006, HAVING BEEN PREVIOUSLY MARKED

15             FOR IDENTIFICATION, WAS ADMITTED INTO

16             EVIDENCE.)

17   BY MR. JOHNSON:

18   Q    NOW, LET'S LOOK AT THE NEXT PART OF THE CLAIM

19   LANGUAGE, DR. YANG.  CAN YOU -- YOU SAID THAT

20   ANOTHER FUNCTION WAS SENDING E-MAILS DISPLAYING

21   MESSAGES WITH PHOTOS.  CAN YOU DESCRIBE WHAT YOUR

22   OPINION IS WITH RESPECT TO THIS CLAIM LIMITATION?

23   A    RIGHT.  AS I MENTIONED, THIS IS THE SECOND

24   CORE FUNCTION, TO BE ABLE TO SEND AN E-MAIL WITH A

25   PHOTO THAT'S INSIDE OF IT.
```

 1          SO WE NEED TO READ THIS VERY CAREFULLY

 2     AND MAKE SURE IT'S BEING SATISFIED.  SO IT SAYS,

 3     "ENTERING A SECOND E-MAIL TRANSMISSION SUB-MODE

 4     UPON USER REQUEST FOR E-MAIL TRANSMISSION WHILE

 5     OPERATING IN A DISPLAY SUB-MODE, THE SECOND E-MAIL

 6     TRANSMISSION SUB-MODE DISPLAYING AN IMAGE MOST

 7     RECENTLY CAPTURED IN A CAMERA MODE."

 8          SO YOU MIGHT RECALL FROM THE VIDEO, YOU

 9     SAW THERE WAS A CAMERA MODE, WE TOOK A PICTURE OF

10     THE ORANGE, AND THEN WE WERE ABLE TO DISPLAY THIS

11     IN A DISPLAY SUB-MODE.  WE WERE LOOKING AT THE

12     PICTURE.

13          AND THEN WE COULD REQUEST TO GO INTO THE

14     SECOND E-MAIL TRANSMISSION SUB-MODE, AND WE WENT

15     THERE AND THAT SECOND E-MAIL TRANSMISSION SUB-MODE,

16     WE THEN NEED TO, JUST AS WE DID BEFORE WITH THE

17     FIRST E-MAIL TRANSMISSION SUB-MODE, BE ABLE TO

18     TRANSMIT.

19          SO WE'RE TRANSMITTING THE ADDRESS OF THE

20     OTHER PARTY AND THE MESSAGE RECEIVED THROUGH THE

21     USER INTERFACE AND THE IMAGE IS DISPLAYED ON THE

22     DISPLAY AS AN E-MAIL IN A SECOND E-MAIL

23     TRANSMISSION SUB-MODE.

24          SO AN IMPORTANT POINT TO NOTE THERE IS

25     YOU CAN NOW ENTER IN THE MESSAGE, THE ADDRESS AND

1    IN THE ACTUAL E-MAIL, YOU CAN ACTUALLY SEE THE

2    IMAGE THAT YOU'RE SENDING, THAT'S REALLY CONVENIENT

3    BECAUSE YOU CAN MAKE SURE THAT'S THE IMAGE THAT YOU

4    WANT TO SEND, THE, I BELIEVE, IMAGE OF THE ORANGE,

5    MAYBE NOT SOME OTHER PICTURE THAT YOU DON'T WANT TO

6    SEND.

7    Q    I SEE YOU POINTING AT THE SCREEN A LOT.  WOULD

8    A LASER POINTER?

9    A    A POINTER WOULD BE USEFUL.

10         MR. JOHNSON:  I DON'T KNOW.  MAY I

11   APPROACH, YOUR HONOR?

12         THE COURT:  PLEASE, GO AHEAD.

13         THE WITNESS:  THANK YOU.  SO WE CAN SEE

14   THAT THE IPHONE 4 SATISFIED THIS BECAUSE WE SAW THE

15   VIDEO.  BUT, IN FACT, ALL FOUR OTHER DEVICES

16   PERFORM EXACTLY IN THIS SAME WAY.

17   BY MR. JOHNSON:

18   Q    OKAY.  CAN YOU WALK THE JURY THROUGH THE THIRD

19   FUNCTION OF THE CLAIM.

20   A    YES.  SO THE THIRD FUNCTION OF THE CLAIM WAS

21   THE PART THAT WAS HIGHLIGHTED IN GREEN AND SO I'VE

22   BLOWN IT UP OVER HERE, AND YOU CAN SEE IT JUST SAYS

23   "SEQUENTIALLY DISPLAYING OTHER IMAGES STORED IN A

24   MEMORY THROUGH THE USE OF SCROLL KEYS."

25         AND CERTAINLY YOU SAW THAT HERE WHERE YOU

2392

```
1     SAW THE ORANGE, IT WAS SCROLLING BACK AND FORTH,

2     AND SO CERTAINLY THE IPHONE 4 SATISFIES THIS AND

3     THE OTHER DEVICES ALSO PERFORM IN EXACTLY THE SAME

4     WAY.

5     Q    AND HAVE YOU PREPARED ANYTHING TO SHOW THE

6     JURY HOW THE OTHER APPLE PRODUCTS INFRINGE THE '460

7     PATENT?

8     A    YES.  SO I'VE PREPARED A VIDEO, JUST LIKE THE

9     IPHONE 4 FOR ALL THE DEVICES TO SHOW YOU THAT THEY

10    PERFORM THESE THREE CORE FUNCTIONS IN EXACTLY THE

11    SAME WAY.

12    Q    SO LET'S PULL UP 3967.012.  CAN YOU DESCRIBE

13    WHAT WE SEE HERE, PLEASE?

14    A    YES.  SO THERE'S THE IPHONE 3GS, THE IPHONE

15    3G, THE IPOD TOUCH 4TH GENERATION, AS WELL AS THE

16    IPAD 2.  AND SO THIS IS JUST TO SHOW THAT IT'S THE

17    CORRECT EXHIBIT, AND SO IF YOU COULD START THE

18    VIDEO, PLEASE.

19              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

20    OPEN COURT OFF THE RECORD.)

21              THE WITNESS:  SO THE DEVICES WILL BE

22    TURNED OVER AND YOU CAN SEE THAT THEY'RE IN A

23    PORTABLE PHONE MODE, THEY'RE ABLE TO RECEIVE A

24    PHONE CALL FOR A MESSAGE.

25              AND SO WHAT WILL HAPPEN IS THEY WILL ALL
```

```
 1    CHOOSE THE MAIL APPLICATION, AND WITHIN THE MAIL

 2    APPLICATION, YOU CAN THEN CHOOSE TO COMPOSE AN

 3    E-MAIL, SO THIS IS NOW -- THEY'RE ALL ENTERING A

 4    FIRST E-MAIL TRANSMISSION SUB-MODE.

 5              AND SO NOW YOU CAN ENTER IN THE ADDRESS,

 6    TYPE IN THE ADDRESS, TYPE IN THE MESSAGE, AND NOW

 7    YOU'RE ABLE TO SEND IT.

 8              NOW, THEY ALL HAVE CAMERAS IN THEM AS

 9    WELL, AND SO THEY CAN ALL TAKE A PICTURE OF THE

10    SAME ORANGE THAT'S AT THE TOP.  SO AFTER THE E-MAIL

11    IS SENT, THE CAMERA APPLICATION WILL GO BACK TO THE

12    PORTABLE PHONE MODE, THE CAMERA APPLICATION WILL BE

13    SELECTED, AND SO IN THE PHOTOGRAPHING MODE, NOW

14    THEY'RE IN PHOTOGRAPHING MODE, THE CAMERA IS ON,

15    AND ALL FOUR DEVICES WILL NOW TAKE A PICTURE OF THE

16    ORANGE.

17              AND SO THEY'VE ALL NOW CAPTURED THIS

18    PICTURE OF THE ORANGE AND STORED IT, AND NOW THIS

19    STORED PICTURE WILL BE DISPLAYED.

20              AND SO NOW THEY'VE ENTERED INTO A DISPLAY

21    SUB-MODE.  SO FROM THIS DISPLAY SUB-MODE, THIS

22    PICTURE CAN BE SELECTED TO BE SENT IN AN E-MAIL,

23    AND WHEN THEY DO THAT, THESE PHONES, OR THESE

24    DEVICES HAVE NOW ALL ENTERED A SECOND E-MAIL

25    TRANSMISSION SUB-MODE.  THE ADDRESS CAN BE ENTERED,
```

1    A MESSAGE CAN BE ENTERED, AND THEY CAN BE

2    TRANSMITTED.

3              SO NOW ALL THESE DEVICES HAVE NOW

4    COMPLETED THE SECOND CORE FUNCTION.

5              NOW, AFTER THE E-MAILS HAVE BEEN SENT

6    HERE, WE NEED TO SHOW THAT THEY PERFORM THE THIRD

7    CORE FUNCTION.  AND SO IN THE THIRD CORE FUNCTION

8    HERE, YOU CAN SEE THAT ON -- SO NOW THEY'RE ALL

9    LOOKING AT PICTURES AND YOU CAN SEE THAT THERE ARE

10   SCROLL KEYS FOR THE IPHONE 3G, 3GS AND IPOD TOUCH

11   WHICH ALLOW THEM TO GO BACK AND FORTH BETWEEN

12   DIFFERENT IMAGES.  HOWEVER, THE IPAD 2 IS DOING IT

13   SLIGHTLY DIFFERENTLY.  INSTEAD OF WITH A SCROLL

14   KEY, IT'S DOING THIS BY SWIPING.

15             HOWEVER, ALL FOUR OF THESE DEVICES STILL

16   SATISFY THE THIRD CLAIM LIMITATION OF BEING ABLE TO

17   SEQUENTIALLY GO THROUGH IMAGES STORED ON THE

18   DEVICE.

19             MR. JOHNSON:  YOUR HONOR, WE ASKED THAT

20   DX 3967.012 BE ENTERED INTO OBJECTION.

21             THE COURT:  ANY OBJECTION?

22             MR. LEE:  NO OBJECTION.

23             THE COURT:  IT'S ADMITTED.

24             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

25             3967.012, HAVING BEEN PREVIOUSLY MARKED

```
 1                FOR IDENTIFICATION, WAS ADMITTED INTO

 2                EVIDENCE.)

 3                MR. JOHNSON:  AND I ALSO NEED TO MOVE

 4     INTO EVIDENCE THE ACCUSED DEVICES, THEY ARE JX

 5     1050, 1053, 1054, 1057, 1051, 1056, 1076, AND 1077.

 6                THE COURT:  ALL RIGHT.  THOSE ARE ALL

 7     ADMITTED.

 8                (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

 9                1050, 1053, 1054, 1057, 1051, 1056, 1076,

10                AND 1077, HAVING BEEN PREVIOUSLY MARKED

11                FOR IDENTIFICATION, WERE ADMITTED INTO

12                EVIDENCE.)

13     BY MR. JOHNSON:

14     Q    NOW --

15                THE COURT:  CAN YOU -- I'LL GET IT OFF

16     THE LIST.  WHICH ONES THOSE ARE?  WHAT IS THE 1050?

17                MR. JOHNSON:  THE 1050 IS THE IPAD 2 WITH

18     IOS 4.

19                THE COURT:  OKAY.

20                MR. JOHNSON:  I CAN GIVE IT TO YOU.

21                THE COURT:  OKAY.

22                MR. JOHNSON:  1053 IS THE IPHONE 3G.

23                THE COURT:  OKAY.

24                MR. JOHNSON:  1054 IS THE IPHONE 3GS.

25     1057 IS THE APPLE IPOD TOUCH; THEN THE NEXT
```

```
1       EXHIBITS ARE 1051 IS IPAD 2 3G RUNNING IOS 5.

2                  THE COURT:  OKAY.

3                  MR. JOHNSON:  1056 IS THE APPLE IPHONE 4

4       RUNNING IOS 5.

5                  THE COURT:  OKAY.

6                  MR. JOHNSON:  1076 IS THE IPHONE 3GS

7       RUNNING IOS 5; AND 1077 IS THE IPOD TOUCH, FOURTH

8       GENERATION RUNNING IOS 5.

9                  THE COURT:  THANK YOU.

10      BY MR. JOHNSON:

11      Q    DR. YANG, DOES THE IPAD 2 PERFORM OF FIRST TWO

12      CORE FUNCTIONS YOU TALKED ABOUT?

13      A    YES, WE SAW THAT IT PERFORMED THE FIRST TWO

14      CORE FUNCTIONS IN EXACTLY THE SAME WAY THE IPHONE 4

15      AND EXACTLY AS DESCRIBED IN THE PATENT.

16      Q    DOES THE SWIPING ON THE IPAD 2 PERFORM THE

17      THIRD FUNCTION OF CLAIM 1?

18      A    YES.  THE SWIPING IS CONSIDERED THE SAME AS

19      THE USE OF SCROLL KEYS UNDER SOMETHING CALLED THE

20      DOCTRINE OF EQUIVALENTS.

21      Q    AND WHAT'S YOUR UNDERSTANDING OF THE DOCTRINE

22      OF EQUIVALENTS?

23      A    MY UNDERSTANDING OF THE DOCTRINE OF

24      EQUIVALENTS IS THAT SWIPING AND SCROLLING, SO

25      SWIPING TO GO TO THE NEXT PICTURE, OR USING SCROLL
```

```
 1   KEYS TO GO TO THE NEXT PICTURE, CAN BE CONSIDERED
 2   THE SAME THING IF IT DOES THIS IN ESSENTIALLY -- IF
 3   IT'S DOING ESSENTIALLY THE SAME FUNCTION OR THERE
 4   AREN'T SUBSTANTIAL DIFFERENCES IN THE FUNCTION
 5   BETWEEN SWIPING AND SCROLLING.  IF THERE ARE
 6   INSUBSTANTIAL DIFFERENCES IN THE WAY THAT IT'S DONE
 7   AND INSUBSTANTIAL DIFFERENCES IN THE RESULT THAT IT
 8   ACHIEVES.
 9            SO IN THIS PARTICULAR CASE, SWIPING AND
10   SCROLL, THERE ARE INSUBSTANTIAL DIFFERENCES BETWEEN
11   THE FUNCTION.  THE FUNCTION IS TO BASICALLY GO TO
12   THE NEXT IMAGE OR THE PREVIOUS IMAGE.  YOU CAN SEE
13   THAT THE WAY THAT SWIPING SOMETHING DONE IS
14   INSUBSTANTIALLY DIFFERENT FROM SCROLLING.
15            IN ONE CASE YOU'RE TOUCHING THE KEYBOARD
16   OR THE SCREEN WHERE THE SCROLL KEYS ARE.  IN
17   ANOTHER CASE YOU'RE FLICKING TO THE LEFT OR
18   FLICKING TO THE RIGHT TO GO TO THE NEXT IMAGE.
19            AND YOU CAN ALSO SEE THE RESULT THAT THEY
20   ACHIEVE IS THE SAME.  IT'S INSUBSTANTIALLY
21   DIFFERENT.  YOU SWIPE TO GO TO THE NEXT PICTURE.
22   YOU SCROLL TO GO TO THE PREVIOUS PICTURE.  AND IF
23   YOU ACTUALLY LOOK AT THE SOURCE CODE, YOU CAN SEE
24   THAT THEY END UP IN THE SAME PLACE.
25   Q    WHAT'S YOUR OPINION ABOUT WHETHER THE IPAD 2
```

1    MEETS THE THIRD CORE FUNCTION UNDER THE DOCTRINE OF

2    EQUIVALENTS?

3    A    IT CERTAINLY DOES MEET THE THIRD CORE FUNCTION

4    UNDER THE DOCTRINE OF EQUIVALENTS.

5    Q    OKAY.  NOW, I'D LIKE TO TURN FOR A MOMENT TO

6    THOSE APPLE PRODUCTS THAT ARE RUNNING IOS 5 INSTEAD

7    OF IOS 4?

8    A    YES.

9    Q    AND LET ME ASK YOU, WHAT'S YOUR CONCLUSION

10   ABOUT WHETHER THE APPLE DEVICES RUNNING IOS 5

11   INFRINGE THE '460 PATENT?

12   A    THE APPLE DEVICES OPERATING UNDER IOS 5

13   PERFORM EXACTLY THESE FIRST TWO CORE FUNCTIONS

14   EXACTLY AS WE'VE SEEN HERE.

15        HOWEVER, THE THIRD CORE FUNCTION IS

16   PERFORMED BY SWIPING RATHER THAN THE SCROLL KEYS,

17   BUT THEY STILL PERFORM THE THIRD CORE FUNCTION IN

18   THE SAME WAY UNDER THE DOCTRINE OF EQUIVALENTS.

19   Q    NOW, DR. YANG, HAVE YOU SEEN THE EVIDENCE THAT

20   SUGGESTS THAT APPLE IS AWARE THAT CONSUMERS USE ITS

21   DEVICES TO PERFORM CLAIM 1 OF THE '460 PATENT?

22   A    YES, I HAVE.

23   Q    AND CAN YOU IDENTIFY THAT EVIDENCE FOR US?

24   A    USER MANUALS, THE USER MANUALS FOR ALL OF

25   THESE DEVICES DESCRIBE THESE THREE FUNCTIONS IN

```
1    VERY CLEAR DETAIL.

2    Q    LET'S TURN TO DX 533 AND 539 IN YOUR BINDER.

3    A    YES.  THIS IS THE IPHONE USER'S DECIDE UNDER

4    IOS 4 AND IOS 5.

5           MR. JOHNSON:  OKAY.  YOUR HONOR, WE ASK

6    THAT THESE BE ADMITTED.

7           THE COURT:  THEY'RE ADMITTED.

8           MR. LEE:  NO OBJECTION.

9           (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

10          533 AND 539, HAVING BEEN PREVIOUSLY

11          MARKED IDENTIFICATION, WAS ADMITTED INTO

12          EVIDENCE.)

13   BY MR. JOHNSON:

14   Q    HOW ARE THESE DOCUMENTS RELATIVE TO YOUR

15   ANALYSIS?

16   A    THIS SHOWS THAT APPLE WAS AWARE OF THESE

17   FUNCTIONS AND ACTUALLY TEACHES THEIR USERS HOW TO

18   DO THESE THREE CORE FUNCTIONS.

19   Q    LET'S PULL UP PAGE 31 -- SORRY, 371516.

20   A    YES.

21   Q    WHAT'S DESCRIBED HERE?

22   A    RIGHT.  SO IF YOU LOOK AT EVERYTHING UP HERE,

23   THE FIRST FIVE STEPS THERE ACTUALLY DESCRIBE HOW TO

24   SEND AN E-MAIL IN THE FIRST E-MAIL TRANSMISSION

25   SUB-MODE, JUST THAT TEXT E-MAIL.  SO THEY DESCRIBE
```

2400

```
 1    EXACTLY WHAT YOU WANT TO DO.

 2              AND THE SECOND PORTION DOWN HERE BELOW,

 3    IT ACTUALLY DESCRIBES HOW YOU WOULD WANT TO SEND AN

 4    E-MAIL WITH A PHOTO IN IT, SO THEY DESCRIBE EXACTLY

 5    HOW YOU DO THIS.

 6    Q    OKAY.  LET'S LOOK AT EXHIBIT 533 AT PAGE

 7    371554.

 8    A    RIGHT.  AND AT THE VERY BOTTOM --

 9    Q    WHAT DOES THIS SHOW?

10    A    THIS SHOWS THAT ACTUALLY THEY SHOW YOU HOW TO

11    GO BETWEEN DIFFERENT IMAGES.  THEY SAY YOU CAN USE

12    YOUR SCROLL KEY OR FLICK TO THE LEFT OR TO THE

13    RIGHT.

14              ACTUALLY THEY SHOW THEM RIGHT NEXT TO

15    EACH OTHER, SO I BELIEVE PEOPLE WOULD UNDERSTAND

16    THESE ARE PERFORMING THE SAME FUNCTIONS.

17    Q    HAVE YOU SEEN ANY EVIDENCE DURING TRIAL THAT

18    APPLE IS AWARE OF THESE THREE FUNCTIONS WE'VE BEEN

19    TALKING ABOUT?

20    A    YES.

21    Q    WHAT'S THAT?

22    A    I BELIEVE THAT I WAS ACTUALLY HERE IN COURT

23    VERY EARLY, I GUESS IT WAS TWO WEEKS AGO ON FRIDAY,

24    AND MR. SCHILLER, THE VICE-PRESIDENT OF MARKETING,

25    ACTUALLY MENTIONED THAT HE'S WELL AWARE THAT THEY
```

2401

```
 1    USE THESE -- THAT APPLE'S USERS USE THESE FUNCTIONS

 2    HEAVILY.

 3    Q    HE SHOWED A VIDEO -- HE WAS PART OF THE VIDEO?

 4    A    YES, I BELIEVE HE WAS PART OF THE VIDEO.

 5    Q    WHEN THE IPHONE WAS INTRODUCED IN 2007?

 6    A    YES.

 7    Q    ALL RIGHT.  LET'S TALK ABOUT THE '893 PATENT?

 8    A    YES.

 9    Q    IF WE COULD, LET'S TURN TO JX 1068.

10    A    YES.

11    Q    WHAT'S THAT?

12    A    THIS IS THE '893 PATENT.

13             MR. JOHNSON:  YOUR HONOR, WE OFFER JX

14    1068 INTO EVIDENCE.

15             MR. LEE:  NO OBJECTION.

16             THE COURT:  IT'S ADMITTED.

17             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

18             1068, HAVING BEEN PREVIOUSLY MARKED FOR

19             IDENTIFICATION, WAS ADMITTED INTO

20             EVIDENCE.)

21    BY MR. JOHNSON:

22    Q    NOW, LET'S ALSO PULL UP 3967.013, PLEASE.

23             WAS THIS PATENT FILED BEFORE THE IPHONE

24    WAS INTRODUCED?

25    A    YES, IT WAS FILED BEFORE THE IPHONE WAS
```

1    INTRODUCED.

2    Q    CAN YOU GIVE US A GENERAL OVERVIEW OF THE '893

3    PATENT, PLEASE?

4    A    YES.  THE '893 PATENT HAS TO DO WITH A DIGITAL

5    CAMERA OR PERHAPS A CAMERA PHONE WITH THE IDEA THAT

6    NOW YOU CAN TAKE LOTS AND LOTS OF PICTURES BUT NOW

7    YOU CAN STORE LOTS AND LOTS OF PICTURES.

8         SO IF YOU STORE LOTS OF THESE PICTURES

9    AND YOU HAVE THOUSANDS AND MAYBE IN DIFFERENT

10   ALBUMS AND YOU'RE LOOKING AT THEM, BECAUSE THAT'S

11   PART OF THE BEAUTY OF HAVING DIGITAL CAMERA, YOU

12   HAVE IT IN PLACE AND YOU'RE LOOKING AT A PICTURE

13   AND IF YOU GO TO DO ANOTHER FUNCTION OR YOU LOOK AT

14   ANOTHER PICTURE, AND YOU GO BACK, YOU'VE COMPLETELY

15   LOST YOUR PLACE.  AND YOU HAVE TO SCROLL THROUGH OR

16   SOMEHOW FIND YOUR WAY THROUGH ALL OF THAT, AMONG

17   THE PICTURES AMONG THE THOUSANDS THAT YOU MIGHT

18   HAVE STORED ON YOUR DIGITAL CAMERA.

19        THE IDEA HERE WAS LET'S HAVE A BOOKMARK

20   OR INDEX AND KEEP TRACK OF WHERE THAT IS.  THAT'S

21   THE INVENTION OF THE '893.

22   Q    AND WHAT APPLE PRODUCTS DID YOU EVALUATE WITH

23   RESPECT TO THE '893 PATENT?

24   A    I PARTICULARLY INSPECTED -- IF I COULD HAVE

25   THE NEXT SLIDE, PLEASE, IT'S THE IPHONE 4, THE IPOD

1    TOUCH FOURTH GENERATION, THE IPHONE 3GS AND THE

2    IPAD 2.

3    Q    IS THE IPHONE 3G ACCUSED OF INFRINGING THE

4    '893 PATENT?

5    A    NO, IT'S NOT ACCUSED -- THE IPHONE 3G IS NOT

6    ACCUSED OF INFRINGING ON THE '893 PATENT.

7    Q    WHY NOT?

8    A    IT DOESN'T HAVE THIS FUNCTIONALITY.

9    Q    OKAY.  WHAT CONCLUSION DID YOU REACH ABOUT THE

10   ACTUALLY ACCUSED PRODUCTS FOR THE '893 PATENT?

11   A    THE ACTUALLY ACCUSED DEVICES ACTUALLY HAVE

12   THIS EXACT FUNCTIONALITY IN THEM.  I'VE ACTUALLY

13   PREPARED A VIDEO TO SORT OF ILLUSTRATE THIS.

14   Q    OKAY.  CAN YOU WALK US THROUGH 3967.005,

15   PLEASE.

16          (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

17   OPEN COURT OFF THE RECORD.)

18          THE WITNESS:  AGAIN, THIS IS THE IPHONE

19   4, RUNNING THE VERSION IOS 5 SOFTWARE, AND YOU CAN

20   SEE THAT THE DEVICE IS ON, SO THE FIRST THING WE'LL

21   DO IS WE'LL TAKE A LOOK AT SOME OF THE PHOTOS THAT

22   ARE STORED ON THIS DEVICE.

23          SO YOU CAN SEE THERE ARE MANY ALBUMS,

24   THERE MAY BE THOUSANDS OF PHOTOS STORE HERE.  SO IT

25   SEEMS THESE ARE VACATION PHOTOS.  SO WE'VE CHOSEN A

2404

```
1    PICK VACATION PHOTO OF TWO CHILDREN.  SO THAT'S
2    WHAT I'M LOOKING AT.
3             BUT NOW I WANT TO TAKE A PICTURE, AND I
4    DECIDE I'D LIKE TO TAKE A PICTURE OF THAT ORANGE.
5    SO I'LL TAKE A PICTURE OF THAT ORANGE, THE PICTURE
6    WILL BE STORED, AND SO NOW I'M SATISFIED I'VE TAKEN
7    A PICTURE, IT'S IN PHOTOGRAPHING MODE.  AND THEN I
8    WANT TO GO BACK TO TAKE A LOOK AT MY PICTURES.
9             SO I DOUBLE TAP AND THEN CHOOSE THE
10   PHOTOS APPLICATION AND I GO BACK AND I'M RETURNED
11   TO WHERE THE PHOTO I WAS LOOKING AT.  YOU CAN SEE
12   THAT THE PHOTO THAT I TOOK HAS ALSO BEEN STORED,
13   AND PREVIOUSLY, BEFORE THIS INVENTION, YOU WOULD
14   ACTUALLY BE LOOKING AT THE PICTURE OF THE ORANGE.
15   VERY INCONVENIENT TO HAVE TO GO ALL THE WAY BACK.
16   Q    LET'S LOOK MORE CLOSELY AT THE CLAIMS FOR THE
17   '893 PATENT, IN PARTICULAR CLAIM 10.  CAN WE PULL
18   UP 3967.0017.  CAN YOU PLEASE WALK US THROUGH THE
19   CLAIM LANGUAGE?
20   A    YES.  I'VE BROKEN UP THE CLAIM HERE, IF YOU
21   LOOK AT CLAIM 10, THAT'S THE ONE THAT'S BEING
22   ASSERTED.  YOU CAN SEE THAT THE FIRST PART HERE HAS
23   TO DO WITH CAMERA HARDWARE.
24             SO THIS IS JUST SPEAKING ABOUT DIFFERENT
25   PIECES THAT NEED TO BE IN A DIGITAL CAMERA OR A
```

1    CAMERA PHONE.  AND THEN DOWN HERE, IT'S TALKING

2    VERY SPECIFICALLY ABOUT HOW THAT BOOKMARKING

3    FUNCTION NEEDS TO BE IMPLEMENTED ON THAT DIGITAL

4    CAMERA OR CAMERA PHONE.

5    Q    OKAY.  LET'S START WITH THE BEGINNING OF THE

6    CLAIM.  CAN WE PULL UP THE NEXT SLIDE.  WHAT DO WE

7    SEE HERE?

8    A    SO YOU CAN SEE THAT THIS IS A DIGITAL IMAGE,

9    SO IT'S CLAIM 10 STARTS A DIGITAL IMAGE PROCESSING

10   APPARATUS COMPRISING, AND IT'S COMPRISING ALL THOSE

11   PARTS AND THAT FUNCTIONALITY.  SO WE CAN SEE HERE

12   THAT THE IPHONE 4 CERTAINLY IS A DIGITAL CAMERA.

13   YOU CAN SEE THAT IT HAS A CAMERA, IT TOOK A PICTURE

14   FROM THE VIDEO, AND ALL OF THE OTHER ACCUSED

15   DEVICES ALSO DIGITAL IMAGE PROCESSES APPARATUS.

16   Q    LET'S GO TO SLIDE 19.  WHAT DOES THAT SHOW?

17   A    SO NOW WE'RE GETTING SPECIFICALLY INTO THE

18   DIFFERENT PARTS THAT MAKE UP THE DIGITAL CAMERA, OR

19   THE DIGITAL CAMERA HARDWARE, AND THE FIRST PART

20   HERE SAYS AN OPTICAL SYSTEM FOR RECEIVING A LIGHT

21   REFLECTED FROM THE SUBJECT.  THAT JUST MEANS THE

22   CAMERA HAS TO HAVE A LENS.

23           A PHOTO ELECTRIC -- THE NEXT PART SAYS

24   THAT YOU HAVE TO HAVE A PHOTO ELECTRIC CONVERSION

25   MODULE IN OPTICAL COMMUNICATION WITH THE OPTICAL

1    SYSTEM FOR CONVERTING THE LIGHT TO IMAGE DATA.

2    THAT SAYS THERE HAS TO BE ELECTRONIC FILM TO

3    CONVERT THE LIGHT THAT'S COMING FROM THE LENS INTO

4    AN ELECTRONIC SIGNAL.  SO THAT SAYS YOU HAVE TO

5    HAVE A SENSOR.

6              AND THE THIRD PART HERE SAYS A RECORDING

7    MEDIUM FOR STORING IMAGE DATA AND AN IMAGE FILE.

8    THAT MEANS AFTER YOU'VE ACQUIRED THIS DATA, YOU

9    NEED TO BE ABLE TO STORE IT SOMEWHERE.  IT HAS TO

10   HAVE A MEMORY.

11             SO YOU CAN SEE IN THE IPHONE 4, WE SAW

12   THAT CERTAINLY IF YOU LOOK AT THE BACK OF THE

13   DEVICE, YOU CAN SEE IT HAS A LENS.

14             AND WE ALSO SAW IT CAPTURE AN IMAGE.  SO

15   IT HAS AN IMAGE SENSOR.  IN FACT, THAT'S A CMOS

16   IMAGE SENSOR.

17             AND THEN WE KNOW IT ALSO HAS A MEMORY

18   BECAUSE WE SAW THAT DATA WAS BEING STORED.  SO IT

19   CERTAINLY HAS A MEMORY AS WELL.  SO THAT'S TRUE FOR

20   THE IPHONE 4 AS WELL AS ALL OF THE OTHER ACCUSED

21   DEVICES.

22   Q    LET'S LOOK AT THE NEXT SLIDE, SLIDE 20.

23   WHAT'S THE NEXT PART OF THE CLAIM?

24   A    RIGHT.  THESE ARE THE NEXT TWO PARTS OF THE

25   CAMERA HARDWARE.  SO THE DIGITAL CAMERA HAS TO HAVE

1    THIS.  IT HAS TO HAVE A DISPLAY SCREEN.  SO IT

2    NEEDS TO BE A DISPLAY SCREEN FOR DISPLAYING IMAGE

3    DATA.

4           SO WE SAW CLEARLY THAT THE IPHONE 4 HAS

5    THE ABILITY TO DISPLAY THE DATE THAT THE PICTURE

6    THAT YOU TOOK.  AND IT ALSO HAS TO HAVE A

7    CONTROLLER, AND THE CONTROLLER NEEDS TO BE

8    CONNECTED TO A PHOTO ELECTRIC CONVERSION MODULE FOR

9    RECORDING MEDIUM IN A DISPLAY SCREEN.

10          WHAT IS A CONTROLLER?  A CONTROLLER IS

11   ACTUALLY A PROCESSOR, A MICROPROCESSOR.  IT'S

12   SOMETHING THAT IS KIND OF THE MAIN BRAINS OF THIS.

13   WE KNOW THERE'S A CONTROLLER THERE.  THERE'S

14   SOMETHING CALLED A MAIN APPLICATIONS PROCESSOR

15   WHICH APPLE ACTUALLY ADVERTISES AS THEIR A4

16   PROCESSOR, A4 APPLICATIONS PROCESSOR.

17          AND THAT'S SHOWN HERE.  THAT'S THE ACTUAL

18   INSIDE GUTS OF THE IPHONE IF YOU WERE TO TAKE IT

19   APART.  AND YOU WOULD SEE THAT, AND THAT'S ACTUALLY

20   THE CONTROLLER.  AND THAT IS INDEED CONNECTED TO

21   THE IMAGE SENSOR.  IT'S ALSO CONNECTED TO THE

22   MEMORY.  IT'S ALSO CONNECTED TO THE DISPLAY.

23          AND THIS PROCESSOR, THIS CONTROLLER, MUST

24   BE OPERATIVE IN A PHOTOGRAPHING MODE TO PROCESS THE

25   IMAGE FOR STORAGE AND RECORDING MEDIUM.  THAT MEANS

2408

```
1    YOU HAVE TO BE ABLE TO TAKE A PICTURE, STORE IT AND

2    PROCESS IT AND STORE IT IN THE MEMORY.  WE

3    CERTAINLY DID THAT.

4              AND IN ADDITION IT NEEDS TO BE ABLE TO --

5    AND IN A SQUARED IMAGE DISPLAY MODE BEING OPERATIVE

6    TO CONTROL THE DISPLAY SCREEN FOR DISPLAYING A

7    SINGLE IMAGE RELATIVE TO THE IMAGE.

8              SO THIS SIMPLY SAYS THAT THAT PROCESS

9    NEEDS TO BE ABLE TO GO TO THE MEMORY, TAKE DATA

10   OUT, PROCESS IT AND PUT IT ON THE DISPLAY SCREEN.

11             SO A LITTLE BIT MORE SIMPLY PUT, IT NEEDS

12   TO BE A CONTROLLER TO PROCESS, SAVE, AND DISPLAY

13   IMAGES.

14   Q   IS THIS CLAIM LANGUAGE CONTAINED IN THE

15   ACCUSED PRODUCTS?

16   A   YES.  CERTAINLY THIS IS CONTAINED IN THE

17   IPHONE 4 AND IT'S ALSO THE SAME FOR THE OTHER

18   ACCUSED DEVICES AS WELL.

19   Q   LET'S MOVE TO THE LAST PARAGRAPH OF CLAIM 10.

20   CAN YOU EXPLAIN WHAT WE SEE HERE?  THIS IS SLIDE

21   21?

22   A   YES.  SO THIS LAST PART HERE, THIS BOOKMARKING

23   FUNCTION, IS TYPICALLY -- IS VERY SPECIFICALLY

24   DESCRIBING HOW THIS BOOKMARKING FUNCTION NEEDS TO

25   OPERATE.
```

2409

```
 1              SO IF I CAN HAVE THE NEXT SLIDE, PLEASE.

 2     SO LET'S WALK THROUGH THIS VERY, VERY CAREFULLY.

 3     SO IT'S OVER HERE.  IT SAYS, WHEREUPON A USER

 4     PERFORMING A MODE SWITCHING OPERATION DEFINED BY

 5     SWITCHING FROM THE STORED IMAGE DISPLAY MODE TO THE

 6     PHOTOGRAPHING MODE AND BACK TO THE STORED IMAGE

 7     DISPLAY MODE.

 8              THAT'S A LONG WAY OF SAYING IT NEEDS TO

 9     BE ABLE TO SWITCH FROM LOOKING AT AN IMAGE, GOING

10     TO SOME OTHER FUNCTION, SUCH AS THE PHOTOGRAPHING

11     MODE, TAKE A PICTURE, AND THEN BE ABLE TO GO BACK

12     TO LOOKING AT THE IMAGE.

13              SO IT NEEDS TO BE ABLE TO SWITCH BETWEEN

14     PHOTOGRAPHING AND THE DISPLAY MODES.

15     Q    LET'S LOOK AT THE NEXT SLIDE.  WHAT DO WE SEE

16     HERE?

17     A    SO THE CONTROLLER ALSO NEEDS -- SO THE NEXT

18     PART SAYS, THE CONTROLLER CAUSES THE DISPLAY

19     SCREEN, THE FIRST DISPLAY, A SINGLE IMAGE FILE THAT

20     WAS MOST RECENTLY DISPLAYED BEFORE THE MODE

21     SWITCHING OPERATION, THE SINGLE IMAGE FILE BEING

22     DIFFERENT FROM A MOST RECENTLY STORED IMAGE FILE.

23              THIS IS JUST SAYING THAT WHEN YOU GO

24     BACK, WHEN YOU'RE LOOKING IN THE DISPLAY MODE AND

25     YOU HAVE MOST RECENTLY VIEWED IMAGE, THE PICTURE OF
```

1    THE TWO CHILDREN ON VACATION, AND YOU GO TO THE

2    PHOTOGRAPHING MODE AND YOU GO AND DO WHATEVER IN

3    THE PHOTOGRAPHING MODE, TAKE A PICTURE OVER

4    WHATEVER AND YOU COME BACK, YOU SHOULD BE ABLE TO

5    SEE THE PICTURE OF THE CHILDREN, NOT THE PICTURE OF

6    THE ORANGE, THAT'S WHAT THAT SAYS, DISPLAY THE LAST

7    VIEWED PICTURE, NOT THE LAST TAKEN PICTURE.

8    Q    ALL RIGHT.  LET'S LOOK AT THE LAST PART OF

9    THIS PHOTOGRAPH, AND THE LAST PART OF CLAIM 10.

10   WHAT DO WE SEE HERE?

11   A    AND IT SAYS HERE AND THE SINGLE IMAGE FILE

12   BEING FIRST DISPLAYED IRRESPECTIVE OF THE DURATION

13   THAT THE CAMERA WAS USED IN THE PHOTOGRAPHING MODE

14   DURING THE MODE SWITCHING OPERATION.

15          SO THIS SAYS THAT THAT BOOKMARK THAT I

16   HAVE, THE BOOKMARK OF THE TWO CHILDREN THAT WERE,

17   OF THE PHOTOGRAPH ON VACATION, THAT BOOKMARK IS

18   THERE REGARDLESS OF HOW LONG I'M IN THE

19   PHOTOGRAPHING MODE.  IT'S NOT DEPENDENT ON TIME.  I

20   DON'T WANT IT TO GO AWAY.

21   Q    NOW, YOU'VE SHOWN US BOOKMARKING ON THE IPHONE

22   4 RUNNING IOS 5.  DO THE OTHER APPLE ACCUSED

23   PRODUCTS INFRINGE CLAIM 10 OF THE 493?

24   A    ACTUALLY, I SHOWED IT IN IPHONE 4 RUNNING IOS

25   4.  BUT THIS IS PERFORMED EXACTLY THE SAME WAY

2411

```
1    UNDER IOS 5 AS WELL AS ALL THE OTHER DEVICES.

2    Q    SO CAN YOU DEMONSTRATE THAT FOR US, PLEASE?

3    A    THERE'S A VIDEO THAT WILL SHOW THIS.

4    Q    LET'S LOOK AT 3967.025?

5    A    RIGHT.  SO THIS IS THE IPHONE 3GS, THE IPOD

6    TOUCH, AND THE IPOD.

7            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

8    OPEN COURT OFF THE RECORD.)

9            THE WITNESS:  SO THIS IS JUST TO

10   DEMONSTRATE THEY'RE THE CORRECT DEVICE, THE DEVICES

11   ARE ON, THE DEVICES WILL NOW CHOOSE THEIR PHOTOS

12   APPLICATION, AND SO THERE WILL BE A LOT OF PHOTOS

13   STORED IN THERE, THOUSANDS OF PHOTOS, I BELIEVE,

14   AND OUT OF ALL OF THOSE PHOTOS, ONE PARTICULAR

15   PHOTO WILL BE CHOSEN.  IT'LL BE THE VACATION PHOTO

16   OF THE TWO CHILDREN.

17           AND THEN NOW THEY'LL GO INTO A

18   PHOTOGRAPHING MODE BY SELECTING THE CAMERA APP, AND

19   SO THEY'LL GO INTO PHOTOGRAPHING MODE AND A PICTURE

20   OF AN ORANGE WILL BE TAKEN, AND THIS PICTURE OF THE

21   ORANGE THAT THEY'RE TAKING IS THE LAST CAPTURED

22   IMAGE, THE LAST STORED IMAGE.

23           AND NOW WHEN THEY GO BACK TO THE PHOTOS

24   APPLICATION, THEY WON'T BE LOOKING AT THE PICTURE

25   OF THE ORANGE.  THEY'LL BE LOOKING AT THE PICTURE
```

```
1    OF THE TWO CHILDREN.

2            THE BOOKMARK HAS BEEN KEPT, AND THAT'S

3    VERY CONVENIENT BECAUSE OTHERWISE WITHOUT THIS

4    INVENTION, YOU'D BE NOW LOOKING AT THE PICTURE OF

5    THE ORANGE.

6            MR. JOHNSON:  YOUR HONOR, WE'D ASK TO

7    MOVE INTO EVIDENCE EXHIBITS 3967.015 AND .025, THE

8    TWO VIDEOS.

9            THE COURT:  ANY OBJECTION?

10           MR. LEE:  NO OBJECTION.

11           THE COURT:  THOSE ARE ADMITTED.

12           (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

13           3967.015 AND 3967.025, HAVING BEEN

14           PREVIOUSLY MARKED FOR IDENTIFICATION,

15           WERE ADMITTED INTO EVIDENCE.)

16   BY MR. JOHNSON:

17   Q    DR. YANG, DID YOU PERFORM ANY OPINION ABOUT

18   THE APPLE DEVICES RUNNING IOS 5?

19   A    YES.  THE DEVICES RUNNING IOS 5 PERFORM

20   EXACTLY THESE FUNCTIONS IN EXACTLY THE SAME WAY.

21   Q    OKAY.  LET'S TURN TO THE THIRD SAMSUNG PATENT,

22   THE '711 PATENT?

23   A    OKAY.

24   Q    ALL RIGHT.  AND CAN YOU LOOK AT EXHIBIT 1071

25   IN YOUR BINDER, PLEASE.  WHAT'S THIS?
```

```
 1    A     THIS IS THE '711 PATENT.

 2              MR. JOHNSON:  YOUR HONOR, WE OFFER IT

 3    INTO EVIDENCE, JX 1071.

 4              MR. LEE:  NO OBJECTION.

 5              THE COURT:  IT'S ADMITTED.

 6              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

 7              1071, HAVING BEEN PREVIOUSLY MARKED FOR

 8              IDENTIFICATION, WAS ADMITTED INTO

 9              EVIDENCE.)

10    BY MR. JOHNSON:

11    Q     LET'S LOOK AT 3967.026.  WHEN WAS THAT

12    ORIGINALLY FILED?

13    A     THE PATENT WAS ORIGINALLY FILED AUGUST 30TH,

14    2005.

15    Q     CAN YOU GIVE US A GENERAL OVERVIEW OF THE '711

16    PATENT, PLEASE?

17    A     YES, THE '711 PATENT, OR OTHERWISE THE GENERAL

18    BACKGROUND MUSIC PATH, IS SPECIFICALLY ABOUT A WAY

19    OF IMPLEMENTING MP3 MUSIC DISPLAY ON A MOBILE PHONE

20    USING ONLY A SINGLE PROCESSOR.  SO NOT REQUIRING

21    ANY SORT OF SPECIAL PURPOSE HARDWARE.

22    Q     WHAT PROBLEM WAS THE '711 PATENT TRYING TO

23    SOLVE?

24    A     IT WAS TRYING TO SOLVE THE IDEA THAT WHEN YOU

25    MERGED THESE DEVICES, HOW CAN I DO THIS EFFICIENTLY
```

2414

```
 1    WITHOUT ADDING EXTRA HARDWARE.  SO MY DEVICE

 2    DOESN'T CONSUME MORE POWER.  HOW DO I DO THIS

 3    WITHOUT EXTRA HARDWARE?  SO IT'S CHEAPER, AND,

 4    POTENTIALLY, IF IT DOESN'T HAVE EXTRA HARDWARE, IT

 5    ACTUALLY CAN BE SMALLER.

 6    Q    LET'S LOOK AT SLIDE 27.  WHAT APPLE PRODUCTS

 7    DID YOU EVALUATE WITH RESPECT TO THE SEARCH 11

 8    PATENT?

 9    A    I EVALUATED THESE FOUR PRODUCTS, THE IPHONE 4,

10    THE IPHONE 3GS, THE IPHONE 3G, AND THE IPOD TOUCH

11    FOURTH GENERATION.

12    Q    AND WHAT CONCLUSIONS, IF ANY, DID YOU REACH

13    WITH RESPECT TO WHETHER THESE FOUR PRODUCTS

14    INFRINGE THE '711 PATENT?

15    A    ALL FOUR OF THESE PRODUCTS CERTAINLY INFRINGE

16    ON THE '711 PATENT.

17    Q    HAVE YOU PREPARED ANYTHING TO SHOW THE JURY

18    THE BASIS FOR YOUR CONCLUSIONS?

19    A    YES.  I PREPARED A VIDEO HERE JUST TO SHOW YOU

20    SOME OF THE BASIC FUNCTIONALITY I'LL BE DISCUSSING

21    IN THE '711 PATENT.

22              SO, AGAIN, THIS IS THE IPHONE 4 OPERATING

23    UNDER IOS 4, AND YOU CAN SEE THAT THE DEVICE IS ON.

24              (WHEREUPON, A VIDEO WAS PLAYED IN OPEN

25    COURT OFF THE RECORD.)
```

```
 1              THE WITNESS:  AND SO THIS IS WHAT WE KNOW
 2    AS THE STANDBY MODE FOR THE PATENT, AND YOU CAN HIT
 3    THE IPOD, OR IN ANOTHER VERSION IT'S CALLED THE
 4    MUSIC APP, AND YOU CAN SEE THERE'S A CHOICE.  YOU
 5    HAVE A CHOICE OF CHOOSING THE MP3 FILE, YOU CAN
 6    CONTROL THE MP3 FILE WITH THE PLAY/PAUSE BUTTON.
 7    BY MR. JOHNSON:
 8    Q   I THOUGHT I HEARD THE BOSS PLAYING IN THE
 9    BACKGROUND.
10    A   YES.  I DON'T KNOW IF YOU CAN HEAR IT PLAYING
11    IN THE BACKGROUND.  AND THERE'S ALSO AN INDICATION
12    THAT I'VE CIRCLED IN RED THAT THERE'S AN INDICATION
13    THAT IT'S CONTINUING TO PLAY.
14              SO WHEN I GO BACK TO THE HOME SCREEN, THE
15    MUSIC CONTINUES TO PLAY IN THE BACKGROUND, AND I
16    CAN PERFORM ANOTHER FUNCTION OF THIS PHONE, SUCH AS
17    LOOKING AT MY E-MAIL.  SO THIS IS QUITE CONVENIENT
18    BECAUSE PEOPLE WOULD LIKE TO BE ABLE TO LISTEN TO
19    MUSIC AND DO SOMETHING ELSE.
20              MR. JOHNSON:  YOUR HONOR, WE OFFER
21    3967.028 INTO EVIDENCE.
22              MR. LEE:  NO OBJECTION.
23              THE COURT:  IT'S ADMITTED.
24              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
25              3967.028, HAVING BEEN PREVIOUSLY MARKED
```

2416

```
 1                  FOR IDENTIFICATION, WAS ADMITTED INTO
 2                  EVIDENCE.)
 3       BY MR. JOHNSON:
 4       Q    LET'S TURN TO SLIDE 30.  CAN YOU PLEASE WALK
 5       US THROUGH THE CLAIM 9, DR. YANG.
 6       A    YES.
 7       Q    THIS IS CLAIM 9?
 8       A    YES, CLAIM 9 IS SPECIFICALLY THE ONE THAT'S
 9       BEING ASSERTED HERE.  SO CLAIM 9 SPECIFICALLY HAS
10       THIS PREAMBLE PART, BUT MORE SPECIFICALLY
11       UNDERNEATH THE TWO SUBPARAGRAPHS, THAT FIRST
12       SUBPARAGRAPH HAS TO DO WITH THE CONTROLLER, AND
13       THAT CONTROLLER IS, IN FACT, THE APPLICATIONS
14       PROCESSOR.
15              SO IT HAS TO SATISFY SOME VERY SPECIFIC
16       LIMITATIONS, ALL LISTED OUT IN THAT PARAGRAPH.
17       AND, FINALLY, THERE HAS TO BE A MUSIC INDICATOR ON
18       THE END.
19       Q    OKAY.  LET'S TURN TO SLIDE 31, AND THIS IS THE
20       FIRST PART OF THE CLAIM.  WHAT DOES THIS MEAN?
21       A    RIGHT.  SO THIS IS THE PREAMBLE TO THE CLAIM,
22       SO LET'S JUST READ IT OUT.  IT SAYS, A MULTITASKING
23       APPARATUS IN A POCKET SIZED MOBILE COMMUNICATION
24       DEVICE, INCLUDING AN MP3 PLAYING CAPABILITY, THE
25       MULTITASKING APPARATUS COMPRISING."
```

```
 1              AND SO WHAT THIS SAYS IS THIS HAS TO BE

 2    SOME TYPE OF MOBILE COMMUNICATION DEVICE, SOMETHING

 3    LIKE A MOBILE PHONE THAT'S ABLE TO COMMUNICATE.

 4    AND IT ALSO HAS TO HAVE MP3 CAPABILITY.  BUT MORE

 5    IMPORTANTLY, IT SAYS IT HAS TO BE POCKET SIZED.

 6              SO THE FOUR ACCUSED DEVICES THAT I

 7    PRESENTED THERE, I THINK THEY ALL PUT IN MY POCKET.

 8    BUT THE IPAD 2 I DON'T THINK SATISFIES THIS.  SO

 9    THE IPAD 2 DOESN'T SATISFY THE POCKET SIZED PART.

10              BUT THIS IS, BUT ALL THOSE DEVICES

11    CERTAINLY ARE MULTITASKING MP3 CAPABLE DEVICES.

12    Q    SO IN YOUR OPINION, THE IPAD DOESN'T MEET THIS

13    CLAIM BECAUSE IT'S NOT POCKET SIZED?

14    A    NO, IT DOESN'T FIT IN MY POCKET.

15    Q    WHERE DID YOU INCLUDE THE IPOD TOUCH?

16    A    THE IPOD TOUCH IS A MOBILE COMMUNICATION

17    DEVICE.  IN FACT, IF YOU LOOK AT IT, THERE'S

18    SOMETHING CALLED FACE TIME, AND FACE TIME ACTUALLY

19    IS PROVIDED BY APPLE, AND IT ALLOWS YOU TO MAKE A

20    VIDEO PHONE CALL.

21    Q    SO YOU CAN MAKE PHONE CALLS WITH IT?

22    A    YES, YOU CAN CERTAINLY MAKE VIDEO PHONE CALLS

23    WITH THE IPOD TOUCH.

24    Q    OKAY.  CAN YOU WALK US THROUGH THE NEXT

25    PORTION OF THE CLAIM, SLIDE 32?
```

2418

```
 1    A    YES.  SO THE NEXT PORTION OF THE CLAIM NOW

 2    SPEAKS SPECIFICALLY ABOUT THE CONTROLLER.  SO CAN I

 3    HAVE THE NEXT SLIDE, PLEASE.

 4    Q    SLIDE 33?

 5    A    YES.

 6    Q    WHAT DO WE SEE HERE?

 7    A    WE SEE HERE THAT THERE'S A REQUIREMENT FOR A

 8    CONTROLLER.  SO THERE NEEDS TO BE A CONTROLLER.

 9         SO AS I MENTIONED BEFORE IN THE IPHONE 4,

10    THIS IS THIS APPLICATIONS PROCESSOR 84, AND THAT

11    CERTAINLY IS A CONTROLLER.  BUT THAT CONTROLLER HAS

12    TO DO CERTAIN THINGS, AND IN PARTICULAR, THAT

13    CONTROLLER -- CAN I HAVE THE NEXT SLIDE -- THAT

14    CONTROLLER NEEDS TO SPECIFICALLY GENERATE A MUSIC

15    BACKGROUND PLAY OBJECT WHERE THAT MUSIC BACKGROUND

16    PLAY OBJECT, WITHIN THE MUSIC BACKGROUND PLAY

17    OBJECT INCLUDES AN APPLICATION MODULE AND INCLUDING

18    AT LEAST ONE APPLET.  SO INSIDE --

19    Q    A LITTLE MORE SLOWLY, TOO, PLEASE.

20    A    THE CONTROLLER NEEDS TO GENERATE A MUSIC

21    BACKGROUND PLAY OBJECT, AND INSIDE OF THAT MUSIC

22    BACKGROUND PLAY OBJECT NEEDS TO BE AN APPLICATION

23    MODULE.  AND INSIDE OF THAT APPLICATION MODULE

24    NEEDS TO BE AT LEAST ONE APPLET, THERE NEEDS TO BE

25    SOME APPLETS INSIDE OF IT.
```

1    Q    DO THE ACCUSED PRODUCTS MEET THIS CLAIM

2    LIMITATION THAT'S DESCRIBED IN CLAIM 34?

3    A    YES, THEY DO.

4    Q    HOW?

5    A    WELL, IF I COULD GO BACK TO THE VIDEO THAT I

6    WAS SHOWING, I THINK I CAN SHOW THAT QUITE CLEARLY

7    THERE.

8    Q    SO THIS IS 3967.028?

9    A    RIGHT.  SO, IN FACT, AS YOU GO FORWARD, YOU

10   CAN SEE HERE ON THE HOME SCREEN, YOU CAN SEE THAT

11   THERE'S AN IPOD ICON, AND UNDER IOS 5 WHAT WE CALL

12   THE MUSIC ICON.  WHEN YOU TOUCH THAT, IN FACT, THE

13   CONTROLLER IS LAUNCHING A MUSIC BACKGROUND PLAY

14   OBJECT.  IT'S LAUNCHING THE MUSIC APPLICATION.  AND

15   COULD YOU STOP IT HERE, STOP, PAUSE.  NO.  JUST

16   PAUSE IT THERE.  CAN YOU GO BACK?  GO FORWARD.

17        AND SO, AGAIN, WHEN YOU TOUCH THAT ICON,

18   WHAT HAPPENS IS THAT LAUNCHES THE MUSIC

19   APPLICATION.  THAT MEANS THAT THE MUSIC BACKGROUND

20   PLAY OBJECT WILL BE GENERATED.

21        OKAY.  AND HERE, AND NOW MUSIC IS

22   PLAYING.  SO YOU CAN JUST PAUSE IT.  YEAH.  PAUSE

23   IT RIGHT HERE.  AND HERE WHAT YOU CAN SEE IS THAT

24   THIS IS AN APPLICATION MODULE, AND IN THIS

25   APPLICATION MODULE, THERE ARE APPLETS.

2420

```
 1              MR. LEE:  YOUR HONOR, I OBJECT.  THAT'S

 2    NOT IN THE PROFFER.  HE'S NOW IDENTIFYING

 3    APPLICATION MODULE.

 4              THE COURT:  THAT'S SUSTAINED.  THAT WAS

 5    NOT IN THE PROFFER.  SO THAT'S STRICKEN.

 6              MR. LEE:  AND, YOUR HONOR, YOU SAID IF HE

 7    VENTURED BEYOND --

 8              MR. JOHNSON:  YOUR HONOR, THIS IS -- I'M

 9    GOING RIGHT OFF THE EXPERT REPORT.

10              MR. LEE:  IT'S NOT --

11              THE COURT:  ALL RIGHT.

12              MR. LEE:  I'D ASK FOR THE INSTRUCTION,

13    YOUR HONOR.

14              THE COURT:  ALL RIGHT.  THE APPLET WAS

15    NOT IDENTIFIED IN DR. YANG'S EXPERT REPORT OR IN

16    HIS DEPOSITION.  SO WHY DON'T YOU MOVE ON TO A

17    DIFFERENT TOPIC.

18    BY MR. JOHNSON:

19    Q    LET'S GO TO THE REST --

20              THE COURT:  THAT ANSWER IS STRICKEN FROM

21    THE RECORD.  YOU'RE NOT TO CONSIDER IT.  GO AHEAD.

22    BY MR. JOHNSON:

23    Q    LET'S GO TO THE REST OF THE CLAIM.  WHAT DO WE

24    SEE IN THE NEXT LIMITATION?

25    A    WELL, THE CONTROLLER ALSO NEEDS TO BE ABLE TO
```

```
 1    PROVIDE AN INTERFACE TO PLAY MUSIC.  SO CLEARLY THE

 2    DEVICE, THE CONTROLLER IS PROVIDING AN INTERFACE

 3    HERE WHERE IT'S ABLE TO, WE'RE ABLE TO PLAY, PAUSE,

 4    OR FAST FORWARD OR NEXT OR REWIND.

 5    Q    OKAY.  AND IF WE TURN TO SLIDE 37, WHAT'S

 6    DESCRIBED IN SLIDE 37?

 7    A    SO THE DEVICE IS ALSO -- THE CONTROLLER ALSO

 8    HAS AN MP3 MODE, SO IT HAS TO -- WE'RE SELECTING

 9    MP3 MODE IN THE POCKET SIZED COMMUNICATION DEVICE

10    USING THE INTERFACE.  SO WHEN YOU TOUCH THAT MUSIC

11    APP OR THE IPOD ICON, IT LAUNCHES A MUSIC APP.  SO

12    YOU CAN PLAY MP3 FILES, SO THAT CAN BE CONSIDERED

13    MP3 MODE.

14    Q    AND IF WE LOOK AT THE NEXT SLIDE, SLIDE 38,

15    WHAT'S DISCLOSED THERE?

16    A    SLIDE 38 SAYS WE ALSO NEED TO HAVE THE ABILITY

17    TO CHOOSE BETWEEN THE DIFFERENT FILES, THE MP3

18    FILES YOU HAVE STORED.  SO CLEARLY THE IPHONE 4

19    DESCRIBED SHOWN HAS THE ABILITY TO CHOOSE DIFFERENT

20    DIFFERENT MP3 FILES TO SELECT AND PLAY.

21    Q    AND WHAT ABOUT THE OTHER ACCUSED DEVICES AS

22    WELL?

23    A    ALL THE OTHER ACCUSED DEVICES HAVE ALL OF

24    THESE AS WELL.

25    Q    OKAY.  LET'S LOOK AT SLIDE 39.  THIS IS THE
```

2422

```
 1    NEXT PART OF THE CLAIM.  WHAT'S REQUIRED BY THIS
 2    PART OF THE CLAIM?
 3    A    YES.  THIS SAYS THAT WHILE YOU'RE PLAYING AN
 4    MP3, RIGHT, FROM -- BEFORE SWITCHING FROM MP3 MODE
 5    TO A STANDBY MODE WHILE THE PLAY MUSIC FILE
 6    CONTINUES.
 7             SO THAT MEANS THAT YOU'RE LISTENING TO
 8    BRUCE SPRINGSTEEN PLAY, AND THEN YOU CAN GO BACK TO
 9    THE HOME SCREEN AND THE STANDBY MODE AND THE MUSIC
10    WILL CONTINUE TO PLAY.  SO THAT'S CERTAINLY WHAT
11    WAS HAPPENING THERE.  AND THE INDICATION THAT MUSIC
12    WAS CONTINUING TO PLAY, I CIRCLED WITH THE RED
13    CIRCLE.
14    Q    AND CAN WE LOOK AT THE FINAL PART OF THE
15    CONTROLLER.
16    A    AND SO THE CONTROLLER NEEDS TO SAY,
17    BEFORE SELECTING AND PERFORMING AT LEAST ONE
18    FUNCTION OF THE POCKET SIZED MOBILE COMMUNICATION
19    DEVICE FROM THE STANDBY MODE WHILE THE PLAYING OF
20    THE MUSIC FILE CONTINUES.
21             SO AS YOU SAW, FROM THAT HOME SCREEN, I
22    CAN SELECT, FOR EXAMPLE, THE MAIL APP AND I CAN BE
23    LOOKING AND REVIEWING MY E-MAIL WHILE LISTENING TO
24    BRUCE SPRINGSTEEN.
25    Q    LET'S TURN TO THE FINAL PART OF CLAIM 9, AND
```

2423

```
 1    THIS IS SLIDE 42.  CAN YOU EXPLAIN YOUR OPINION
 2    WITH RESPECT TO THIS LIMITATION?
 3    A    RIGHT.  THIS LIMITATION SAYS A DISPLAY UNIT
 4    FOR DISPLAYING AN INDICATION THAT THE MUSIC FILE IS
 5    BEING PLAYED IN THE STANDBY MODE AND FOR CONTINUING
 6    TO DISPLAY THE INDICATION THAT THE MUSIC FILE IS
 7    BEING PLAYED WHILE PERFORMING THE SELECTED
 8    FUNCTION.
 9         WE ALREADY SAW THAT.  THAT WAS THE THING
10    THAT I CIRCLED IN RED, THAT LITTLE ARROW.  THAT'S
11    JUST AN INDICATION THAT THE MUSIC IS PLAYING IN THE
12    BACKGROUND.  AND THE REASON THAT YOU'D LIKE TO HAVE
13    THAT IS BECAUSE MAYBE YOU'RE EARPHONES ARE
14    UNPLUGGED, YOU DON'T WANT TO UNNECESSARILY DRAIN
15    YOUR BATTERY.
16    Q    OKAY.  HAVE YOU PREPARED ANYTHING TO SHOW THE
17    JURY HOW THE ACCUSED PRODUCTS PERFORM THESE
18    LIMITATIONS?
19    A    YES, I'VE ALSO PREPARED A VIDEO OF THE OTHER
20    ACCUSED DEVICES, THREE OTHER ACCUSED DEVICES.
21    Q    AND THERE IS 3967.043.  CAN YOU?
22    A    YES.  YOU CAN SEE THE DEVICES ARE ON, THEY'RE
23    IN STANDBY MODE.  THEY'VE ALL SELECTED THE MUSIC
24    APP, OR IPOD APP, THEY'VE SELECTED A FILE AND MUSIC
25    IS PLAYING ON THE DEVICES.  I DON'T KNOW IF YOU CAN
```

```
 1    HEAR IT.  THE MUSIC IS PLAYING.  YOU CAN CONTROL

 2    THE MUSIC YOU'RE PLAYING.

 3              AND WHILE THE MUSIC IS CONTINUING TO

 4    PLAY, YOU CAN THEN GO BACK IN THE STANDBY MODE, AND

 5    I DON'T KNOW IF YOU CAN SEE IT, BUT THERE'S THREE

 6    TINY RED CIRCLES THERE THAT SHOW THAT THE

 7    INDICATION IS THAT THEY'RE STILL DOING IT, THEY'RE

 8    BEING PLAYED, AND THEY CAN ALL GO INTO THE MAIL APP

 9    AND PERFORM SOME OTHER FUNCTION.  SO THEY SATISFY

10    ALL OF THESE FUNCTIONAL REQUIREMENTS OF THE '711

11    PATENT.

12              MR. LEE:  I'M GOING TO OBJECT TO THAT.

13    THAT'S -- HE'S NOW SAYING HE'S SATISFYING ALL

14    THE --

15              THE COURT:  OVERRULED.

16              MR. JOHNSON:  YOUR HONOR, WE OFFER

17    3967.043 INTO EVIDENCE.

18              THE COURT:  SAME OBJECTION, MR. LEE.

19              MR. LEE:  YES, YOUR HONOR.

20              THE COURT:  ALL RIGHT.  IT'S ADMITTED.

21              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

22              3967.043, HAVING BEEN PREVIOUSLY MARKED

23              FOR IDENTIFICATION, WAS ADMITTED INTO

24              EVIDENCE.)

25              MR. JOHNSON:  YOUR HONOR, WE'RE JUST
```

2425

```
 1    ABOUT TO SWITCH TO ANOTHER LINE OF QUESTIONING.

      WOULD IT BE CONVENIENT IF WE TOOK A QUICK BIO

 3    BREAK?

 4              THE COURT:  DO YOU NEED ONE NOW?

 5              MR. JOHNSON:  YES, IF WE COULD, PLEASE.

 6              THE COURT:  ALL RIGHT.  IT IS 10:29.  SO,

 7    AGAIN, PLEASE KEEP AN OPEN MIND.  DON'T DO ANY OF

 8    YOUR OWN RESEARCH OR READ ABOUT THE CASE AND PLEASE

 9    DON'T DISCUSS THE CASE WITH ANYONE.

10              WE'LL TAKE A 15-MINUTE BREAK.  THANK YOU.

11              (WHEREUPON, THE FOLLOWING PROCEEDINGS

12    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

13              THE COURT:  ALL RIGHT.  THANK YOU ALL.

14              MR. JOHNSON:  YOUR HONOR, JUST BEFORE, I

15    HAD A QUICK QUESTION.

16              THE COURT:  YES.

17              MR. JOHNSON:  IN THE PROFFER, I WOULD

18    LIKE TO ASK THE WITNESS WHETHER HE'S LOOKED AT THE

19    SOURCE CODE IN EXHIBIT 645 AND CONFIRMED THAT THESE

20    DEVICES HAVE THAT ELEMENT.  AND THAT'S PART OF OUR

21    PROFFER.  IT'S RIGHT OUT OF OUR PROFFER AND IT'S

22    RIGHT OUT OF HIS EXPERT REPORT.  THAT'S ALL I WANT

23    TO ASK HIM.

24              MR. LEE:  YOUR HONOR, I'M NOT SURE I CAN

25    SAY MUCH MORE THAN I SAID BEFORE.  THIS IS JUST --
```

```
 1    WHEN HE SAYS IT, IT'S JUST A CONCLUSION.  NONE OF
 2    THE DISCLOSURES WERE MADE TO US.
 3              MR. JOHNSON:  HE CAN -- SORRY.
 4              THE COURT:  WELL, I'M GOING TO ALLOW IT.
 5    YOU'LL JUST HAVE TO CROSS HIM ON THAT.
 6              MR. LEE:  YOUR HONOR, JUST -- LET ME JUST
 7    SAY THAT WE'VE BEEN HELD TO THIS STANDARD ON OUR
 8    PATENTS.  THINGS HAVE GONE OUT BECAUSE THEY HAVEN'T
 9    BEEN IN THE DISCLOSURE OR THE CONTENTIONS.
10              AND IN SOME CIRCUMSTANCES, YOUR HONOR,
11    RESPECTFULLY, WE DON'T THINK IT WAS DONE LITERALLY
12    IN THE EXPERT REPORT THAT WAY, AND WE'VE LIVED BY
13    THOSE RULES.  TO HAVE THE RULES CHANGED ON A CLAIM
14    LIMITATION WHERE WE ALL AGREE, I THINK, THAT HE
15    DIDN'T SATISFY THE LOCAL RULES AND HE DIDN'T
16    IDENTIFY IT TAKES THIS ONE LIMITATION, THIS ONE
17    PATENT, AND PUTS IT IN A WHOLLY DIFFERENT CONTEXT
18    THAN EVERYTHING ELSE THAT'S HAPPENED.
19              THE COURT:  WHY DOESN'T EVERYONE PLEASE
20    TAKE A SEAT.
21              AND, DR. YANG, IF YOU WOULD LEAVE THE
22    ROOM, PLEASE.
23              THE WITNESS:  LEAVE THE ROOM?
24              THE COURT:  YES.
25              MR. LEE:  YOUR HONOR, I'LL MAKE MY POINT
```

1 AS CONCISELY AS I CAN.

2   WE HAVE -- YOU HAVE VERY CONSISTENTLY

3 PROVIDED US WITH A SET OF GUIDELINES AND RULES.  AS

4 YOUR HONOR HAS RULED ON THE OBJECTIONS AND THOSE

5 YOU'VE SUSTAINED, THOSE YOU'VE OVERRULED, IT'S BEEN

6 DISCLOSED IN THE CONTENTIONS, IS HAS BEEN DISCLOSED

7 IN THE EXPERT REPORTS.

8   AND IF IT WASN'T DISCLOSED -- AND IN THE

9 CONTENTION INTERROGATORIES.  IN SOME CIRCUMSTANCES

10 FOR US, WHEN IT WASN'T DISCLOSED IN ALL THREE, EVEN

11 THOUGH IT WAS IN AN EXPERT REPORT, YOUR HONOR SAID

12 IT'S OUT.

13   NOW WE HAVE A SITUATION WHERE IT'S NOT

14 DISCLOSED IN THE CONTENTION INTERROGATORIES, IT'S

15 NOT DISCLOSED IN THE EXPERT REPORT, HE SAID HE

16 DIDN'T KNOW AT HIS DEPOSITION, BUT IT'S GOING TO

17 COME IN AS A CONCLUSION THAT WE HAVE TO BURN OUR

18 TIME TO CROSS-EXAMINE HIM TO GET HIM TO SAY, WELL,

19 YEAH, I SAID AT MY DEPOSITION I DIDN'T KNOW WHICH

20 ONE IT WAS.

21   THAT IS JUST, RESPECTFULLY, A DIFFERENT

22 SET OF RULES, AND WE PLAYED BY THE SET OF RULES

23 THAT YOUR HONOR IDENTIFIED DURING OUR WHOLE

24 OFFENSIVE CASE.

25   THIS PATENT ACTUALLY, AND I SAID THIS TO

```
 1    MR. JOHNSON YESTERDAY, OUGHT TO BE OUT OF THE CASE.

 2    THEY HAVE AN EXPERT WHO DID NOT SATISFY THE LOCAL

 3    RULES OR THE OBLIGATIONS --

 4            THE COURT:  WELL, THE ISSUE IN THIS CASE

 5    IS THAT HIS CONCLUSION, EVEN IF THERE'S NO SUPPORT

 6    FOR IT, IS IN HIS EXPERT REPORT.  HE DOES HAVE THE

 7    FOOTNOTE SAYING I RELIED ON THESE 38 BATES RANGES

 8    OF SOURCE CODE.

 9            MR. LEE:  AND, YOUR HONOR, ON OUR

10    OFFENSIVE CASE, THERE WERE THINGS WHEN PEOPLE

11    STATED A CONCLUSION BUT THEN DIDN'T REFER TO THE

12    SPECIFIC DOCUMENTS, DIDN'T EXPLAIN IT, AND YOUR

13    HONOR KEPT THAT OUT.

14            MR. JOHNSON:  YOUR HONOR, MR. HAUSER,

15    MR. HAUSER WAS HERE --

16            THE COURT:  ANYWAY, I'M GOING TO ALLOW IT

17    IN AND YOU'LL JUST HAVE TO CROSS HIM ON IT.

18            MR. JOHNSON:  AND, YOUR HONOR, THE PART

19    WHERE YOU -- THE ANSWER WHERE YOU STRUCK, I ASKED

20    SPECIFICALLY A QUESTION THAT WAS RIGHT OUT OF HIS

21    EXPERT REPORT.  I WAS VERY CAREFUL.  I ASKED, AND

22    IT'S QUOTED AND IT'S PART OF THE PROFFER, IT'S

23    EXACTLY WHAT I HANDED UP, I SAID, DR. YANG WILL

24    TESTIFY THAT, QUOTE, AND THIS IS RIGHT OUT OF HIS

25    EXPERT REPORT, THE '711 ACCUSED DEVICES HAVE A
```

```
 1    CONTROLLER WHICH RUNS SOFTWARE THAT GENERATES A

 2    MUSIC BACKGROUND PLAY OBJECT WHEN THE MUSIC APP IS

 3    SELECTED AND LAUNCHED.  THIS MUSIC APP CONTAINS AN

 4    APPLICATION MODULE INCLUDING AN APPLET, AND THAT'S

 5    FROM THE YANG EXPERT REPORT, 3(A)(1) AT PAGES 5 AND

 6    6.

 7              AND IT'S RIGHT OUT OF THERE.  AND YOUR

 8    HONOR, YOU STRUCK THIS IN FRONT OF THE JURY, AND IT

 9    WAS -- I WAS VERY CAREFUL AND MINDFUL OF WHAT HE

10    SAID IN HIS EXPERT REPORT AND ASKED THE QUESTION

11    DIRECTLY TO THAT.

12              MR. LEE:  YOUR HONOR, HIS ANSWER WAS --

13              MR. JOHNSON:  IF I COULD FINISH, MR. LEE.

14    I THEN SAID "THIS WILL BE SHOWN," IN THIS PROFFER,

15    "THIS WILL BE SHOWN IN THE VIDEO DEMONSTRATIVE

16    SHOWING THE LAUNCHING OF THE APP FROM THE HOME

17    SCREEN AND THE MUSIC APPS SCREEN ON THE ACCUSED

18    PRODUCTS."  THAT'S EXACTLY WHAT HE DID.

19              MR. LEE:  YOUR HONOR, THIS IS EXACTLY THE

20    QUAGMIRE WE'RE GETTING OURSELVES INTO.  HE SAID

21    THIS IS THE APPLICATIONS MODE.  THAT WAS -- THAT'S

22    WHAT GOT ME.  I WAS LOOKING AT THE PROFFER, I TRIED

23    TO BE CAREFUL.  I DIDN'T WANT TO RAISE IT.  BUT HE

24    SAID THIS IS THE APPLICATIONS MODULE .  THAT'S NOT

25    IN THE PROFFER.  THAT'S NOT IN HIS CONTENTION
```

```
 1    INTERROGATORIES.  IT'S NOT IN THE EXPERT REPORT.

 2              THE COURT:  HE CAN'T GIVE ANY NEW -- I

 3    AGREE WITH MR. LEE THAT WHAT'S IN HIS EXPERT REPORT

 4    AND WHAT HE SAID DURING HIS DEPOSITION WAS VERY

 5    CONCLUSORY AND DIDN'T SPECIFICALLY IDENTIFY EITHER

 6    THE APPLET OR THE APPLICATION MODULE.

 7              SO HE CAN'T NOW UNDO WHAT HE DID IN HIS

 8    EXPERT REPORT OR IN HIS DEPOSITION TESTIMONY.  SO

 9    THAT'S WHY IT WAS STRICKEN.

10              BUT THE ONE QUESTION THAT YOU'VE RAISED

11    NOW WILL BE ALLOWED.  OKAY?

12              MR. JOHNSON:  YOUR HONOR, I WOULD JUST

13    ASK, HIS EXPERT REPORT --

14              THE COURT:  ALL RIGHT.  NOW I'M DOCKING

15    TIME.  GO AHEAD.  I'M DOCKING TIME.  IT'S 10:30.

16    GO AHEAD.  I RULED ON THIS SUNDAY NIGHT FOR

17    RECONSIDERATION YESTERDAY.  GO FOR IT.  10:35.  THE

18    TIME IS TICKING.  GO AHEAD.

19              MR. JOHNSON:  I DON'T HAVE ANYTHING

20    FURTHER.

21              THE COURT:  GO AHEAD.  I'M ALL EARS.

22              MR. JOHNSON:  GO AHEAD.

23              THE COURT:  10:35.

24              SO WHAT ELSE, DO YOU WANT TO KEEP

25    FIGHTING ON THIS OR DO YOU WANT TO GO TO TRIAL?
```

2431

```
1    I'M TALKING TO BOTH SIDES HERE.
2              MR. LEE:  WE'RE READY TO GO.
3              MR. JOHNSON:  WE'RE READY TO GO.
4              THE COURT:  ALL RIGHT.
5              (WHEREUPON, A RECESS WAS TAKEN.)
6              (WHEREUPON, THE FOLLOWING PROCEEDINGS
7    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
8              THE COURT:  SO NEITHER INTEL NOR SAMSUNG
9    FILED ANYTHING.  I GOT THE SELWYN DECLARATION
10   WITH -- PLEASE SIT DOWN -- THAT ATTACHES THE
11   E-MAILS AND OTHER EXPERTS BEING DISCLOSED IN MARCH
12   OF THIS YEAR.
13             WHAT'S HAPPENING WITH THAT?  I SAID TO
14   FILE IT BY 10:30.
15             MR. SHVODIAN:  YOUR HONOR, WE'RE HAVING
16   IT PRINTED RIGHT NOW.  BUT I CAN LET YOU KNOW,
17   INTEL HAS DECIDED THAT THEY WILL REQUEST SANCTIONS
18   AND AN ORDER OF CONTEMPT, BUT ARE NOT GOING TO
19   REQUEST THAT DR. WILLIAMS BE PRECLUDED FROM
20   TESTIFYING.
21             THE COURT:  I WAS NEVER GOING TO GRANT
22   THAT.
23             MR. SHVODIAN:  OKAY.
24             THE COURT:  THAT'S AN EXTREME AND
25   UNWARRANTED SANCTION, AND IT WOULD BE OVERLY
```

1     PREJUDICIAL.

2              MR. SHVODIAN:  OKAY.  THE PAPERS ARE

3     BEING COPIED NOW AND WILL BE ELECTRONICALLY FILE.

4              THE COURT:  WHAT I WAS GOING TO SUGGEST

5     IS WHATEVER IT IS, WE'LL JUST DEAL WITH IT LATER.

6     WE'RE NOT GOING TO DEAL WITH IT RIGHT NOW.

7              MR. SHVODIAN:  THANK YOU, YOUR HONOR.

8              THE COURT:  ALL RIGHT.  WHATEVER YOU'RE

9     GOING TO FILE, IT SHOULD STILL BE FILED, AND WE'LL

10    TAKE CARE OF IT LATER.

11             OKAY.

12             MR. JOHNSON:  SO, YOUR HONOR, THE

13    QUESTION THAT I'M GOING TO ASK --

14             THE COURT:  IT'S 10:52, GO AHEAD.

15             MR. JOHNSON:  -- IS DID YOU LOOK AT THE

16    SOURCE CODE TO CONFIRM THAT THE DEVICES HAD THIS

17    ELEMENT?  THAT'S RIGHT OUT OF THE PROFFER.  THAT'S

18    THE ONE AND ONLY QUESTION I'LL ASK.

19             THE COURT:  THAT'S FINE.  YOU'LL JUST

20    HAVE TO CROSS HIM ON IT.

21             MR. JOHNSON:  AND THEN CAN I MOVE 645

22    INTO EVIDENCE?

23             THE COURT:  WHAT IS 645?

24             MR. JOHNSON:  THAT'S THE SOURCE CODE.

25             THE COURT:  THAT'S FINE.

2433

```
1              ALL RIGHT.  LET'S BRING IN THE JURY.
2              (WHEREUPON, THE FOLLOWING PROCEEDINGS
3    WERE HELD IN THE PRESENCE OF THE JURY:)
4              THE COURT:  ALL RIGHT.  PLEASE TAKE A
5    SEAT.  IT'S 10:53.  GO AHEAD, PLEASE.
6              MR. JOHNSON:  RYAN, CAN WE BRING UP SDX
7    3967.034.
8    Q   DR. YANG, DID YOU LOOK AT THE SOURCE CODE IN
9    EXHIBIT DX 645 TO CONFIRM THE ACCUSED DEVICES HAD
10   THIS ELEMENT?
11   A   YES, I DID.
12             MR. JOHNSON:  YOUR HONOR, WE ASK THAT DX
13   645 BE MOVED INTO EVIDENCE.
14             MR. LEE:  NOTHING MORE THAN THE OBJECTION
15   PREVIOUSLY SUBMITTED.
16             THE COURT:  UNDERSTOOD.  THAT'S ADMITTED.
17             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
18             645, HAVING BEEN PREVIOUSLY MARKED FOR
19             IDENTIFICATION, WAS ADMITTED INTO
20             EVIDENCE.)
21             MR. JOHNSON:  YOUR HONOR, WE ALSO ASK
22   THAT EXHIBIT 3967.012, WHICH WAS THE VIDEO THAT WAS
23   USED ON THE '460 PATENT, ALSO BE MOVED INTO
24   EVIDENCE.
25             THE COURT:  012, I THOUGHT THAT WAS
```

2434

```
 1    ALREADY ADMITTED.  THAT'S CLAIM 1 OF THE PRODUCTS
 2    REGARDING THE '460.
 3                MR. JOHNSON:  YEAH.  THERE WAS SOME
 4    DEBATE AS TO WHETHER IT WAS ADMITTED OR NOT.
 5                THE COURT:  OKAY.
 6                MR. JOHNSON:  IT'S 3967.012.
 7                THE COURT:  THAT'S ADMITTED.  IS THAT THE
 8    ONE YOU'RE ASKING ABOUT?
 9                MR. JOHNSON:  YES.
10                THE COURT:  THAT'S ADMITTED.
11                (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
12                3967.012, HAVING BEEN PREVIOUSLY MARKED
13                FOR IDENTIFICATION, WAS ADMITTED INTO
14                EVIDENCE.)
15                MR. JOHNSON:  AND THEN ALSO THE
16    DEMONSTRATIVES THAT WERE REFERRED TO IN DR. YANG'S
17    DIRECT, 3967.002 THROUGH 43, JUST THE INDIVIDUAL
18    SLIDES, NOT THE VIDEOS.  EVERYTHING EXCEPT SLIDE 16
19    AND 29 IN THAT RANGE.  THEY WERE ALL REFERRED TO.
20                THE COURT:  HANG ON ONE SECOND.  002 IS
21    HIS C.V.  I HAVE NOT BEEN ADMITTING THAT FOR
22    ANYBODY.
23                MR. JOHNSON:  THAT SHOULDN'T BE ON THERE,
24    THEN.  003 -- IT SHOULD START AT 003.
25                THE COURT:  003 IS JUST THE PATENTS WITH
```

```
 1    THE DESCRIPTION OF THE PATENTS, I MEAN THE PATENTS
 2    THEMSELVES ARE IN.
 3                ANYWAY, IS THERE ANY OBJECTION TO THE --
 4                MR. LEE:  NO.
 5                THE COURT:  NO?  ALL RIGHT.  IF YOU WANT
 6    THE C.V. IN --
 7                MR. LEE:  TO THE C.V., YES.
 8                MR. JOHNSON:  WE DON'T NEED THE C.V.
 9                MR. LEE:  NOT TO THE DEMONSTRATIVES OF
10    THE PATENTS.
11                THE COURT:  SO 3967.003 IS IN, WHICH IS
12    THE COVER OF THE PATENTS.  005 AS WELL, IS THAT
13    WHAT YOU'RE REQUESTING?
14                MR. JOHNSON:  YES, FOR 005 --
15                THE COURT:  I DON'T HAVE 004.  WHICH ONE
16    WAS THAT?
17                MR. JOHNSON:  YOUR HONOR, JUST IN THE
18    INTEREST OF TIME, SINCE WE ALREADY HAVE THE VIDEOS
19    IN, I'M JUST GOING TO STICK WITH THE VIDEOS AT THIS
20    POINT.
21                THE COURT:  ALL RIGHT.  003 IS ADMITTED
22    AND 005 IS ADMITTED.
23                (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS
24                3967.003 AND 3967.005, HAVING BEEN
25                PREVIOUSLY MARKED FOR IDENTIFICATION,
```

```
 1              WERE ADMITTED INTO EVIDENCE.)

 2              MR. JOHNSON:  OKAY.  YOUR HONOR, I PASS

 3    THE WITNESS.  NO FURTHER QUESTIONS.

 4              THE COURT:  OKAY.  THE TIME IS 10:56.  GO

 5    AHEAD.

 6              MR. LEE:  YOUR HONOR, THE BINDERS ARE ON

 7    THEIR WAY.  MAY I PROCEED, YOUR HONOR?

 8              THE COURT:  GO AHEAD.

 9                    CROSS-EXAMINATION

10    BY MR. LEE:

11    Q    GOOD MORNING, DR. YANG.

12              GOOD MORNING, LADIES AND GENTLEMEN.

13              DR. YANG, YOU TESTIFIED ABOUT THREE

14    PATENTS, THE '460; CORRECT?

15    A    YES.

16    Q    THE '893; CORRECT?

17    A    YES.

18    Q    THE '711; CORRECT?

19    A    YES.

20    Q    I'M GOING TO ASK YOU ABOUT EACH OF THEM

21    INDIVIDUALLY, BUT LET'S SEE IF WE CAN AGREE UPON A

22    FEW THINGS THAT ARE TRUE FOR ALL THREE OF THESE

23    PATENTS.  OKAY?

24    A    OKAY.

25    Q    FIRST, THERE ARE SIX NAMED INVENTORS ON ALL
```

1   THREE OF THESE PATENTS IN TOTAL; CORRECT?

2   A    I GUESS.   THAT'S NOT SOMETHING I REALLY

3   CHECKED, BUT I'LL TAKE YOUR REPRESENTATION THAT

4   THAT'S CORRECT.

5   Q    DO YOU KNOW HOW MANY INVENTORS THERE ARE ON

6   THE THREE PATENTS YOU JUST TOLD THE JURY ABOUT?

7   A    I DIDN'T REMEMBER EXACTLY HOW MANY.

8   Q    I'LL REPRESENT TO YOU THAT IT'S SIX, AND THEY

9   HAVE THEM IN THEIR BINDERS.

10          AS OF THE TIME THAT YOU GAVE YOUR EXPERT

11  REPORT, YOU HAD NOT TALKED TO ONE OF THEM, HAD YOU?

12  A    I'M -- SORRY?

13  Q    AT THE TIME YOU GAVE YOUR EXPERT REPORT, YOU

14  HAD NOT TALKED TO A SINGLE VENDOR, HAD YOU?

15  A    NO.   I DIDN'T FIND IT NECESSARY.

16  Q    DR. YANG, I DIDN'T ASK YOU WHETHER IT WAS

17  NECESSARY, I JUST ASKED YOU WHETHER YOU'D TALKED TO

18  THEM AND YOU DIDN'T TALK TO THEM; CORRECT?

19  A    NO, I DID NOT.

20  Q    NOW, THE SIX INVENTORS STILL WORK FOR SAMSUNG;

21  CORRECT?

22  A    NO, I THINK THAT SOME OF THEM DON'T, ACTUALLY.

23  Q    WELL, AT LEAST TWO OF THEM WERE HERE JUST TWO

24  WEEKS AGO, WEREN'T THEY?   THREE OF THEM?

25  A    I DON'T KNOW.   THERE WERE MANY PEOPLE, YES.

2438

1    Q    THREE OF THEM WERE HERE TWO WEEKS AGO, THEY

2    CAME TO THIS COURTROOM FOR A VISIT; CORRECT?

3    A    THAT'S MY --

4              MR. JOHNSON:  YOUR HONOR, OBJECTION.

5    THIS WAS SUSTAINED.

6              MR. LEE:  NO, IT WAS --

7              THE COURT:  NO, THAT WASN'T.  OVERRULED.

8    BY MR. LEE:

9    Q    AND THEY WERE RIGHT IN TOWN.  THEY WERE IN

10   SAN JOSE DOWN AT THE MARRIOTT HOTEL; RIGHT?

11   A    YES.

12   Q    NONE OF THEM IS GOING TO TESTIFY, ARE THEY?

13   A    I HAVE NO IDEA ABOUT THAT.

14   Q    RIGHT.  WILL THIS JURY HEAR ANY TESTIMONY FROM

15   THE SIX PEOPLE WHO MADE THE INVENTIONS THAT YOU'VE

16   BEEN DESCRIBING TO THEM?

17   A    I HAVE NO IDEA ABOUT THAT.

18   Q    ALL RIGHT.

19   A    THAT'S --

20   Q    NOW, YOU UNDERSTAND THAT THERE ARE RULES THAT

21   GOVERN THE PROCEEDING THAT YOU'RE IN RIGHT NOW;

22   CORRECT?

23   A    YES.

24   Q    FOR INSTANCE, THERE WAS A REQUIREMENT THAT

25   SAMSUNG DISCLOSE WHAT'S CALLED ITS CONTENTIONS;

1    CORRECT?

2    A    YES.

3    Q    AND YOU UNDERSTAND THAT YOU WERE REQUIRED TO

4    DISCLOSE AND FILE EXPERT REPORTS; CORRECT?

5    A    YES, I WAS REQUIRED TO FILE AN EXPERT REPORT.

6    Q    AND IN THE CONTENTIONS, SAMSUNG WAS OBLIGATED

7    TO TELL US AND THE COURT WHAT ITS ARGUMENT WERE;

8    CORRECT?

9    A    I BELIEVE THAT'S THE RULES, YES.

10   Q    AND IN YOUR EXPERT REPORT, YOU WERE OBLIGATED

11   TO TELL US WHAT YOUR POSITIONS WERE; CORRECT?

12   A    YES, YES.

13   Q    NOW, HAVING DONE ALL THE WORK YOU'VE DONE, YOU

14   SAID 300 TO 400 HOURS?

15   A    UP UNTIL NOW, YES.

16   Q    AND I DON'T THINK YOU TOLD US WHAT YOUR HOURLY

17   RATE IS?

18   A    IT'S $550 AN HOUR.

19   Q    SO THAT'S $200,000 PLUS; CORRECT?

20   A    AROUND THERE, YES.

21   Q    AND YOU TESTIFIED AGAINST APPLE IN ANOTHER

22   CASE FOR A COMPANY CALLED NOKIA; CORRECT?

23   A    YES.  IF I WAS -- YES.

24   Q    AND YOU WERE PAID ABOUT $250,000 FOR THAT

25   CASE; CORRECT?

2440

```
1    A    I DON'T THINK IT WAS QUITE THAT MUCH, BUT

2    AROUND THERE, YES.

3    Q    YEAH, OVER 200,000 FOR SURE; CORRECT?

4    A    I THINK SO.

5    Q    ALL RIGHT.  SO ON THESE PATENTS, AS FAR AS YOU

6    KNOW, THE ONLY PEOPLE THE JURY IS GOING TO HEAR

7    FROM, THE ONLY PERSON THE JURY IS GOING TO HEAR

8    FROM ON THESE PATENTS IS YOU?  CORRECT?

9    A    I PRESUME APPLE IS GOING TO PRESENT SOME

10   WITNESSES ON THE OTHER SIDE, SO I GUESS YOU'LL HEAR

11   ANOTHER STORY.

12            BUT I DON'T THINK IT'LL BE ONLY ME.

13   Q    HOW ABOUT FROM THE SAMSUNG SIDE?

14   A    OH, OKAY, YES.

15   Q    OKAY.

16   A    I DON'T KNOW.  THAT I DON'T KNOW.

17   Q    ONLY YOU AS FAR AS YOU KNOW?

18   A    NO.  I HAVE NO -- WELL, HONESTLY, I REALLY

19   HAVE NO IDEA.

20   Q    ALL RIGHT.  NOW, LET ME ASK YOU A FEW

21   QUESTIONS ABOUT ALL THREE OF THE PATENTS.

22            IN THIS 300 TO 400 HOURS OF WORK, YOU

23   HAVE NOT SEEN ANY EVIDENCE THAT APPLE WAS AWARE OF

24   THE '460 PATENT; CORRECT?

25   A    I MEAN, AWARE OF THE '460 PATENT?  NO.
```

1    Q    THAT'S CORRECT; RIGHT?

2    A    THAT'S CORRECT, YES.

3    Q    ALL RIGHT.  WHEN THE APPLE ENGINEERS WERE

4    DESIGNING THE PRODUCTS THAT YOU TALKED TO THE

5    LADIES AND GENTLEMEN OF THE JURY ABOUT TODAY, THEY

6    DIDN'T KNOW ABOUT THE '460 PATENT; CORRECT?

7    A    NO, I --

8    Q    AS FAR AS YOU KNOW?

9    A    I HAVEN'T SEEN ANY EVIDENCE TO THAT, BUT I

10   DON'T KNOW WHAT THEY KNEW.

11   Q    RIGHT.  NOW, LET'S GO TO THE '893 PATENT.

12   WHEN THE APPLE ENGINEERS WERE DESIGNING THE

13   FEATURES THAT YOU TALKED ABOUT TODAY, THEY WEREN'T

14   AWARE OF THE '893 PATENT, WERE THEY, AS FAR AS YOU

15   KNOW?

16   A    I HAVEN'T SEEN ANY EVIDENCE.

17   Q    AND WHEN THE APPLE ENGINEERS WERE DESIGNING

18   THE FEATURES OF THE '711 PATENT THAT YOU TALKED

19   ABOUT TODAY, AS FAR AS YOU KNOW, THEY DIDN'T KNOW

20   ABOUT THE '711 PATENT; CORRECT?

21   A    RIGHT, I HAVEN'T SEEN ANY EVIDENCE.

22   Q    NOW, YOU DO KNOW THAT SAMSUNG WAS OBLIGATED,

23   UNDER THE COURT'S RULES, TO FILE A PIECE OF PAPER

24   THAT SAID, "HERE ARE OUR PRODUCTS THAT PRACTICE OUR

25   INVENTIONS," CORRECT?

2442

```
 1    A    I THINK THAT'S THE RULE.  I'M NOT A LEGAL

 2    EXPERT.

 3    Q    WELL, I WANT YOU TO HAVE IN MIND THE

 4    IMPORTANCE THAT YOU TOLD THE JURY ABOUT THESE

 5    VARIOUS INVENTIONS TODAY.  DO YOU RECALL THAT?

 6    A    YES.

 7    Q    OKAY.  SO LET'S FIGURE OUT IF SAMSUNG ITSELF

 8    MAKES PRODUCTS WITH THESE VERY IMPORTANT

 9    INVENTIONS.  OKAY?

10    A    SURE.

11    Q    TURN, IF YOU WOULD, IN YOUR NOTEBOOK TO VOLUME

12    1, TAB 10.

13    A    YES.

14    Q    DO YOU SEE THIS?

15    A    YES.

16    Q    THIS IS SAMSUNG'S DISCLOSURE OF ASSERTED

17    CLAIMS AND INFRINGEMENT CONTENTIONS.  DO YOU SEE

18    THAT?

19    A    YES.

20    Q    IT'S PLAINTIFF'S EXHIBIT 2011; CORRECT?

21    A    YES.

22    Q    YOU'VE REVIEWED IT BEFORE; CORRECT?

23    A    NO, ACTUALLY I DON'T RECALL REVIEWING THIS

24    PARTICULAR DOCUMENT.

25    Q    I THOUGHT YOU SAID IN YOUR EXPERT REPORT THAT
```

```
 1    YOU HAD REVIEWED THE INFRINGEMENT CONTENTIONS THAT

 2    SAMSUNG HAD FILED BEFORE YOU GAVE YOUR EXPERT

 3    REPORT?

 4    A    THAT'S CORRECT.  AND I BELIEVE THAT'S A

 5    DIFFERENT DOCUMENT.

 6    Q    LET'S SEE WHAT SAMSUNG SAID IN THIS DOCUMENT?

 7    A    OKAY.

 8    Q    TURN, IF YOU WOULD, TO PAGE 2 AND WE'LL PUT

 9    PAGE -- SAMSUNG PROVIDES THE INFORMATION REQUIRED

10    BY PATENT LOCAL RULE 3.1 -- AND THAT'S ONE OF THE

11    RULES THAT GOVERNS THIS PROCEEDING; CORRECT?  AND

12    THEN IT PROVIDES SOME EXHIBITS; CORRECT?

13    A    YES.

14    Q    SO LET'S GO TO EXHIBIT M, PAGE 2.

15              HAVE YOU SEEN THIS BEFORE?

16    A    NO, I HAVE NOT.

17    Q    WELL, I'LL REPRESENT TO YOU THAT THIS IS

18    SAMSUNG'S DISCLOSURE OF WHETHER IT MAKES PRODUCTS

19    THAT INCORPORATE THE INVENTIONS OF THE VARIOUS

20    PATENTS.

21              AND CAN I HAVE THE THIRD AND FOURTH

22    COLUMN FROM THE RIGHT-HAND SIDE.  THAT'S IT.

23    YOU'VE GOT IT.  THANKS -- SHOWN UP.

24              AND YOU'LL SEE THE '893 PATENT.  DO YOU

25    SEE THAT?
```

```
1    A    YES.

2    Q    DO YOU SEE THE '460 PATENT?

3    A    YES.

4    Q    AND IT'S COMPLETELY BLANK; CORRECT?

5    A    YES, THERE'S NOTHING THERE.

6    Q    SAMSUNG DID NOT EVEN CLAIM TO USE THESE VERY

7    IMPORTANT INVENTIONS THAT YOU SPENT THE MORNING

8    DESCRIBING TO THE JURY IN ITS OWN PRODUCTS;

9    CORRECT?

10   A    I DON'T THINK THEY CLAIMED TO HAVE USED THEM

11   IN THESE PARTICULAR PRODUCTS.

12   Q    WELL, DR. YANG, IN THIS DISCLOSURE, SAMSUNG

13   DESCRIBED -- SAID WE DON'T USE THEM IN ANY OF THESE

14   PRODUCTS.

15            CAN I HAVE THE NEXT PAGE?  WE DON'T USE

16   THEM IN ANY OF THESE PRODUCTS.

17            DO YOU SEE THAT?

18   A    YES.

19   Q    AND CAN I HAVE THE NEXT PAGE?

20            AND WE DON'T USE THEM IN ANY OF THESE

21   PRODUCTS, EITHER.

22            IN FACT, DR. YANG, YOU KNOW THAT SAMSUNG

23   HAS DESCRIBED 65 DIFFERENT PRODUCTS, SMARTPHONE

24   PRODUCTS, THAT IT'S SOLD IN THE LAST THREE YEARS;

25   CORRECT?
```

```
 1    A    I TAKE YOUR REPRESENTATION OF THAT BECAUSE I

 2    HAVEN'T SEEN THIS DOCUMENT.

 3    Q    RIGHT.  AND FOR ALL OF THOSE 65 DIFFERENT

 4    PRODUCTS, IT COULD NOT IDENTIFY A SINGLE ONE, NOT

 5    ONE, THAT PRACTICED THESE VERY IMPORTANT INVENTIONS

 6    YOU TOLD THE JURY ABOUT TODAY; CORRECT?

 7    A    YES.  THE DOCUMENT SPEAKS FOR ITSELF.

 8    Q    RIGHT.  YOU HAVE NO REASON TO DISAGREE WITH

 9    IT; CORRECT?

10    A    NO.

11    Q    ALL RIGHT.  NOW, LET ME PUT ON THE SCREEN A

12    SLIDE FROM SAMSUNG'S OPENING, SLIDE 152.

13              NOW, YOU WEREN'T HERE FOR THE OPENING;

14    CORRECT?

15    A    NO, I WAS NOT.

16    Q    BUT YOU SEE THIS SLIDE DESCRIBES THE '893

17    PATENT, WHICH IS ONE OF THE PATENTS YOU HAVE

18    TESTIFIED ABOUT; CORRECT?

19    A    YES.

20    Q    NOW, DO YOU SEE THE BOTTOM, THE SECOND BULLET,

21    "APPLE CHANGED ITS PRODUCTS AND BEGAN USING

22    SAMSUNG'S INVENTION SEVEN MONTHS AFTER THE '893

23    PATENT ISSUED."

24              DO YOU SEE THAT?

25    A    YES.
```

```
 1    Q    THAT'S SUGGESTING THAT APPLE SOMEHOW COPIED

 2    THE '893 PATENT, ISN'T IT?

 3    A    I THINK IT SPEAKS FOR ITSELF.

 4    Q    RIGHT.

 5    A    I DON'T KNOW.

 6    Q    BUT YOU HAVE FOUND, IN YOUR 400 HOURS OF WORK,

 7    YOU HAVE FOUND ABSOLUTELY NOT ONE IOTA OF EVIDENCE

 8    THAT APPLE KNEW ABOUT THE '893 PATENT OR COPIED THE

 9    '893 PATENT; CORRECT?

10    A    I HAVEN'T LOOKED AT ANY EVIDENCE.

11    Q    SO THE ANSWER IS THAT'S CORRECT?

12    A    THAT'S CORRECT.

13    Q    NOW, YOU ALSO KNOW THAT APPLE COULDN'T HAVE

14    COPIED A SAMSUNG PRODUCT WITH THE INVENTION BECAUSE

15    SAMSUNG SAYS IT DOESN'T HAVE ANY PRODUCTS WITH THE

16    INVENTIONS; RIGHT?

17    A    I BELIEVE THAT THE EXHIBIT M STATES THIS.

18         HOWEVER, I DO KNOW SOME SAMSUNG PRODUCTS

19    THAT DO PRACTICE THE '460 AND '893 PATENTS.

20    Q    WELL, WE CAN ONLY TAKE SAMSUNG AT ITS WORD --

21    A    OKAY.

22    Q    -- IN ITS CONTENTIONS THAT ARE FILED ACCORDING

23    TO THE RULES OF THE COURT.

24         YOU UNDERSTAND THAT; CORRECT?

25    A    OKAY.
```

1    Q    NOW, AS PART OF YOUR 300 OR 400 HOURS, DID YOU

2    MAKE ANY EFFORT TO DETERMINE AND REVIEW, FOR

3    INSTANCE, THE ENGINEERING NOTEBOOKS OF THE

4    INVENTORS?

5    A    THERE WERE INVENTION DISCLOSURE FORMS.  I

6    DON'T KNOW IF THEY WERE PART OF THE INVENTOR

7    NOTEBOOKS.  I DON'T KNOW.

8    Q    MY QUESTION IS DIFFERENT.  DID YOU MAKE ANY

9    EFFORT TO REVIEW THE INVENTORS' ENGINEERING

10   NOTEBOOKS?

11   A    NOT SPECIFICALLY.

12        HOWEVER, I DID REVIEW PROSECUTION HISTORY

13   AND I -- FROM ALSO READING THE PATENTS THEMSELVES,

14   I CAN ALSO VERY CLEARLY UNDERSTAND WHAT THE

15   INVENTIONS ARE.

16   Q    SIR, I DIDN'T ASK YOU THAT.  MY QUESTION JUST

17   WAS DID YOU REVIEW THEIR ORIGINAL CONTEMPORANEOUS

18   INVENTOR NOTEBOOKS?

19   A    NO, I DID NOT REVIEW ANY NOTEBOOKS.

20   Q    AND DID YOU MAKE ANY EFFORT TO DETERMINE

21   WHETHER ANY OF THE INVENTORS HAD DESTROYED THEIR

22   DOCUMENTS BEFORE APPLE HAD A CHANCE TO SEE THEM?

23   A    NO.

24   Q    WELL, YOU READ MR. OH'S DEPOSITION, DIDN'T

25   YOU?

2448

```
1     A     YES, I DID.

2     Q     YOU SAID SO IN YOUR EXPERT REPORT?

3     A     YES.

4     Q     YOU KNOW MR. OH IS ONE OF THE INVENTORS, YOU

5     KNOW THAT?

6     A     YES.

7     Q     YOU HAVE READ HIS DEPOSITION; CORRECT?

8     A     YES.

9     Q     LET'S BRING UP HIS DEPOSITION AT PAGE 40, LINE

10    19.  IF YOU WANT IT IN HARD COPY, IT'S AT VOLUME 3

11    OF YOUR NOTEBOOK.

12              MR. JOHNSON:  YOUR HONOR, OUTSIDE THE

13    SCOPE.  OBJECTION.

14              THE COURT:  WHAT'S THE PURPOSE OF THIS?

15              MR. LEE:  YOUR HONOR, IN HIS

16    INVESTIGATION, HE SPECIFICALLY SAID -- HE TESTIFIED

17    AS TO THE IMPORTANCE OF THE INVENTION, HIS BASIS.

18    HE TESTIFIED AS TO HIS INVESTIGATION.  THIS IS TO

19    DEMONSTRATE WHAT HE REVIEWED, WHAT HE DIDN'T, AND

20    IT'S TO DEMONSTRATE WHAT MATERIALS WERE NOT

21    AVAILABLE TO HIM.

22              MR. JOHNSON:  THIS ISN'T IMPEACHMENT.

23              MR. LEE:  NO, YOUR HONOR, IT'S GOING

24    DIRECTLY TO THE SUBSTANCE OF THE ISSUES THAT HAVE

25    BEEN PUT BEFORE THE JURY.
```

```
 1              THE COURT:  ALL RIGHT.  OVERRULED.

 2              GO AHEAD.

 3              THE WITNESS:  COULD YOU TELL ME WHERE I

 4   CAN FIND THIS?

 5   BY MR. LEE:

 6   Q    SURE.  VOLUME 3 OF YOUR NOTEBOOK, AND WE'LL

 7   PLAY IT ON THE SCREEN FOR YOU AS WELL.

 8   A    VOLUME 3, COULD YOU TELL ME --

 9   Q    PAGE 40?

10   A    WHICH TAB?

11   Q    TAB 32.

12   A    TAB 32.

13   Q    I'M SORRY.  PAGE 40, LINE 19.

14   A    TAB 32, PAGE 40.

15   Q    LINE 19.

16              YOU KNOW WHO MR. OH IS; CORRECT?

17   A    YES.

18   Q    NOW, MR. OH IS ON THE SCREEN.

19   A    THAT I CAN'T STATE FOR SURE BECAUSE I ONLY

20   READ HIS DEPOSITION.

21   Q    SO YOU WOULDN'T RECOGNIZE HIM?

22   A    NO, I DON'T THINK I RECOGNIZE HIM FROM THE

23   PICTURE.

24   Q    I'LL REPRESENT TO YOU THAT THIS IS MR. OH.

25   AND LET'S SEE WHAT HE SAID ABOUT THE QUESTION OF
```

```
 1    WHETHER HIS DOCUMENTS WERE MAINTAINED.
 2              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
 3    OPEN COURT OFF THE RECORD.)
 4    BY MR. LEE:
 5    Q    NOW, DR. YANG, JUST SO THE JURY IS CLEAR,
 6    SUNG-HO EUN, E-U-N, IS ONE OF THE NAMED INVENTORS;
 7    CORRECT?
 8    A    I'LL TAKE YOUR REPRESENTATION FOR IT.  I
 9    WOULD -- I DON'T HAVE --
10    Q    I WILL REPRESENT THAT.
11    A    OKAY.
12    Q    AND I'M SURE MR. JOHNSON WILL CORRECT ME IF
13    I'M WRONG.  MOON-SANG JEONG, J-E-O-N-G, IS ALSO A
14    NAMED INVENTOR; CORRECT?
15    A    I'LL TAKE YOUR REPRESENTATION, YES.
16    Q    AND, MR. OH, WHO WE JUST SAW, IS ALSO A NAMED
17    INVENTOR; CORRECT?
18    A    YES.
19    Q    THOSE ARE THE THREE PEOPLE WHO WERE HERE TWO
20    WEEKS AGO AND CAME ON A DAY WHEN THE JURY WAS OUT
21    TO VISIT THE COURTROOM; CORRECT?
22    A    I'M NOT AWARE OF WHO CAME --
23              MR. JOHNSON:  YOUR HONOR, OBJECTION.
24              THE COURT:  THAT'S ASKED AND ANSWERED.
25    SUSTAINED.  MOVE ON, PLEASE.
```

```
 1    BY MR. LEE:

 2    Q    NOW, LET'S GO TO THE '460 PATENT, IF WE COULD.

 3    DO YOU HAVE THAT IN MIND?  AND IT'S AT VOLUME 1,

 4    TAB 18.

 5    A    YES.

 6    Q    ARE YOU WITH ME?

 7    A    YES.

 8    Q    THIS IS SDX 1069; CORRECT?

 9    A    YES.

10    Q    SO YOU WENT THROUGH THE PATENT QUICKLY.  LET'S

11    TAKE IT A LITTLE BIT SLOWER.

12    A    SURE.

13    Q    SO WE CAN HELP THE JURY UNDERSTAND WHAT'S

14    ACTUALLY IN THE PATENT.

15            COULD WE HAVE FIGURE 3 FROM THE '460

16    PATENT ON THE SCREEN.  DO YOU HAVE THAT BEFORE YOU?

17    A    YES.

18    Q    YOU RECOGNIZE THIS FIGURE; CORRECT?

19    A    YES.

20    Q    THIS IS AN EXAMPLE OF A DEVICE -- AN EXAMPLE

21    OF WHAT THE PATENT SAYS IS PART OF ITS INVENTION;

22    CORRECT?

23    A    YES, IT'S AN EARLY CAMERA PHONE.

24    Q    THE DRAWING INCLUDES A PORTABLE PHONE;

25    CORRECT?
```

```
1     A    YES.

2     Q    IT ALSO INCLUDES A CAMERA; CORRECT?

3     A    YES.

4     Q    THERE'S AN ON/OFF SWITCH; CORRECT?  IT'S

5    LABELED 318?

6     A    I -- YES, I THINK THAT'S PROBABLY IT.

7     Q    THE DEVICE ALSO HAS SOMETHING CALLED A MODE

8    KEY; CORRECT?

9     A    I'M NOT SURE WHICH ONE THE NUMBERS ARE, BUT

10   YES.

11    Q    IF YOU LOOK AT ITEM 302.

12    A    UM-HUM.

13    Q    DO YOU SEE THAT?

14    A    YES.

15    Q    THAT'S WHAT THE PATENT DESCRIBES AS A MODE

16   KEY; CORRECT?

17    A    I'LL TAKE YOUR REPRESENTATION.  I -- I PRESUME

18   YOU DON'T WANT ME TO REALLY GO THROUGH AND CHECK

19   AND VERIFY THAT.

20    Q    WELL, I THINK IT'S -- I'M TRYING TO HELP THE

21   JURY UNDERSTAND WHAT THE PATENT SAYS?

22    A    RIGHT.  AND I DON'T THINK YOU'RE SAYING

23   SOMETHING INCORRECT.

24    Q    WELL --

25    A    I JUST DON'T KNOW IF IT'S EXACTLY 302, BUT I
```

1    BELIEVE, YES.

2    Q    LET'S LOOK AT COLUMN 4, LINE 59, THEN.  JUST

3    SO WE CAN BE SURE.  THE MODE KEY 302 SELECTS A

4    PARTIAL OR WHOLE DELETE FUNCTION MODE, A DATE

5    FUNCTION MODE, A FINE OR NORMAL DISPLAY FUNCTION

6    MODE, AND A SENSITIVITY FUNCTION MODE.

7              DO YOU SEE THAT?

8    A    YES.

9    Q    ALL RIGHT.  NOW, LET'S GO BACK TO THE DIAGRAM.

10             THERE'S AN ON/OFF SWITCH, WHICH IS 318;

11   CORRECT?

12   A    I'M SURE WE CAN FIND IT IN THE TEXT OF THE

13   PATENT, YES.

14   Q    ARE YOU NOT SURE?

15   A    I CAN'T RECALL EXACTLY THE WORDING OF THIS.

16   THIS IS ACTUALLY NOT MY NOTED VERSION OF THE

17   PATENT, SO --

18   Q    OKAY, WELL --

19   A    BUT I DO BELIEVE THERE'S AN ON/OFF SWITCH

20   HERE.

21   Q    I'LL REPRESENT TO YOU THAT'S WHAT THE PATENT

22   SAYS AT COLUMN 49?

23   A    YES.

24   Q    WHEN YOU USE THE ON/OFF SWITCH, THE USER OF

25   THIS CLAIMED INVENTION CAN SWITCH BACK AND FORTH

2454

1    BETWEEN THE PORTABLE PHONE MODE AND THE CAMERA

2    MODE; CORRECT?

3    A    YES.  IT PROBABLY HAS SOME SORT OF DESCRIPTION

4    LIKE THAT, YES.

5    Q    YES.  THE PATENT SAYS YOU CAN BE IN THE

6    PORTABLE PHONE MODE; CORRECT?

7    A    IT'S IN THE BODY OF THE PATENT, YES, THEY

8    MENTION A PORTABLE PHONE MODE.

9    Q    AND SAYS YOU CAN BE IN A CAMERA MODE; CORRECT?

10   A    YES.

11   Q    BUT YOU CAN'T BE IN BOTH MODES AT THE SAME

12   TIME ACCORDING TO THE BODY OF THE PATENT; CORRECT?

13   A    IT WOULDN'T MAKE ANY SENSE TO BE IN TWO MODES

14   AT THE SAME TIME.

15   Q    DR. YANG, MY QUESTION IS DIFFERENT.  MY

16   QUESTION IS THIS:  AS THE INVENTION IS DESCRIBED IN

17   THE PATENT, YOU CANNOT BE IN TWO MODES AT THE SAME

18   TIME; CORRECT?

19   A    THAT'S A VERY SPECIFIC QUESTION.  IF I WANT TO

20   REALLY PROPERLY ANALYZE IT, I PROBABLY SHOULD READ

21   THROUGH THE ENTIRE PATENT AGAIN BECAUSE THAT'S NOT

22   SOMETHING I SPECIFICALLY LOOKED FOR.

23        BUT I CAN TELL YOU THAT TO ME, IT WOULD

24   MAKE NO SENSE TO BE IN TWO MODES AT THE SAME TIME.

25   Q    WELL, LET'S SEE WHAT YOU SAID AT YOUR

1    DEPOSITION ABOUT THE QUESTION OF WHETHER A DEVICE

2    CAN BE IN MORE THAN ONE MODE AT THE SAME TIME.

3              CAN WE HAVE -- THIS IS AT VOLUME 1, TAB

4    7.  AND I'M GOING TO BRING UP PAGE 270, LINE 5 TO

5    14.  "IN YOUR UNDERSTANDING OF THE TERM MODES, CAN

6    A DEVICE BE IN MORE THAN ONE MODE AT THE SAME TIME?

7              "ANSWER:  NO.  THE DEVICE HAS A GIVEN

8    STATE.  THAT STATE IS THE STATE THAT -- THAT

9    DEFINES -- NOW, THERE MAY BE A CERTAIN STATE, THERE

10   MAY BE CERTAIN THINGS THAT DON'T CHANGE HOW THE

11   DEVICE OPERATES.  AND SO YOU DON'T WORRY ABOUT IT.

12   FOR EXAMPLE, YOU'VE STORED AN EXTRA TWO PICTURES ON

13   YOUR PHONE.  IT MAY NOT CHANGE THE WAY YOUR PHONE

14   BEHAVES."

15             HAVE I READ THAT CORRECTLY?

16   A    YES, I THINK SO.

17   Q    AND YOU STAND BY THAT TESTIMONY; CORRECT?

18   A    YES, I DO.

19   Q    NOW, LET'S LOOK AT CLAIM 1 OF THE PATENT.  AND

20   CLAIM 1 IS ACTUALLY IN THE JURORS' NOTEBOOKS AT TAB

21   15, AND I WANT TO ACTUALLY LOOK AT THE CLAIM.

22             YOU UNDERSTAND THAT EACH OF THE

23   LIMITATIONS OF THE CLAIM MAKES A DIFFERENCE;

24   CORRECT?

25   A    YES.

1    Q    EACH AND EVERY LIMITATION NEEDS TO BE PRESENT

2    IN ORDER FOR A DEVICE TO INFRINGE; CORRECT?

3    A    CORRECT.

4    Q    NOW, YOU TOLD US THAT IN PREPARING YOUR

5    TESTIMONY IN THE '460 PATENT, YOU HAD REVIEWED THE

6    TESTIMONY OF THE NAMED INVENTORS; CORRECT?

7    A    I REVIEWED THE DEPOSITIONS, THE WRITTEN

8    DEPOSITIONS, THE TYPED DEPOSITIONS, YES.

9    Q    AND AS YOU DESCRIBED FOR THE LADIES AND

10   GENTLEMEN OF THE JURY, YOU TOOK INTO ACCOUNT THEIR

11   TESTIMONY ABOUT WHETHER THEY COULD UNDERSTAND THIS

12   CLAIM, DIDN'T YOU?

13   A    IT WAS SOMETHING THAT I READ, YES.

14   Q    SURE.  SO LET'S LOOK AT ONE OF THE THINGS YOU

15   READ.  THIS IS AT VOLUME 3, TAB 32.  IT'S TESTIMONY

16   FROM MR. OH, PAGE 49, LINE 4 TO 5 TO START.

17              CAN WE PLAY THE CLIP, PLEASE.

18              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

19   OPEN COURT OFF THE RECORD.)

20   BY MR. LEE:

21   Q    LET'S SEE WHAT ANOTHER OF THE NAMED INVENTORS

22   SAID.  LET'S MOVE TO THE NEXT CLIP AND SEE WHAT

23   MR. PARK SAID ABOUT WHETHER HE COULD UNDERSTAND

24   WHAT'S IN THIS CLAIM THAT YOU TALKED ABOUT THIS

25   MORNING.

```
 1                VOLUME 3, TAB 37, PAGE 19.

 2                DO YOU RECOGNIZE MR. PARK?

 3     A    NO, I DON'T THINK SO.

 4     Q    ALL RIGHT.  I'LL REPRESENT TO YOU THAT THIS IS

 5     MR. PARK.

 6     A    OKAY.

 7     Q    OKAY?  NOW, LET'S SEE WHAT HE HAD TO SAY ABOUT

 8     WHETHER HE COULD UNDERSTAND WHAT THE '460 PATENT,

 9     CLAIM 1, WAS.

10                (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

11     OPEN COURT OFF THE RECORD.)

12     BY MR. LEE:

13     Q    SO, DR. YANG, TWO PEOPLE, TWO OF THE PEOPLE

14     WHO WERE THE INVENTORS CAN'T EXPLAIN THE CLAIM, BUT

15     YOU CAN?

16     A    YES.

17     Q    OKAY.  NOW, WHEN'S THE FIRST TIME YOU EVER SAW

18     THE PATENT?

19     A    PROBABLY IN, OH, MAYBE DECEMBER OR JANUARY.

20     Q    ALL RIGHT.  THE FIRST TIME YOU SAW A PATENT IS

21     WHEN A LAWYER GAVE IT TO YOU IN THIS CASE; CORRECT?

22     A    THAT'S CORRECT.

23     Q    IT'S NOT SOMETHING THAT YOU WERE FAMILIAR WITH

24     AS PART OF YOUR WORK; CORRECT?

25     A    NO, I DON'T GO AROUND LOOKING AT PATENTS
```

1    USUALLY.

2    Q    RIGHT.  AND THE OTHER TWO PATENTS YOU DIDN'T

3    KNOW ABOUT UNTIL WHEN A LAWYER GAVE THEM TO YOU IN

4    THIS CASE; CORRECT?

5    A    THAT'S CORRECT.

6    Q    NOW, LET'S TALK ABOUT WHAT SAMSUNG AND YOU DID

7    TO COMPLY WITH THE RULES OF THE COURT TO DISCLOSE

8    POSITIONS.  OKAY?

9         TURN, IF YOU WOULD, IN YOUR NOTEBOOK TO

10   VOLUME 1, TAB 12, WHICH IS SAMSUNG'S INITIAL

11   INFRINGEMENT CONTENTIONS.  DO YOU HAVE THOSE BEFORE

12   YOU?

13   A    YES.

14   Q    THIS IS PX 2031; CORRECT?

15   A    YES, THIS IS, IN FACT, A DOCUMENT THAT I

16   EXAMINED.

17        MR. LEE:  RIGHT.  YOUR HONOR, WE OFFER PX

18   2031.

19        THE COURT:  ANY OBJECTION?

20        MR. JOHNSON:  YOUR HONOR, WE'D ASK THAT

21   THE ENTIRE DOCUMENT BE OFFERED.  THIS IS -- WHAT I

22   HAVE IS ONLY A SMALL PORTION.

23        THE COURT:  WELL, WHY DON'T YOU INTRODUCE

24   IT ON REDIRECT THEN, THE WHOLE DOCUMENT.  OKAY?

25   THIS IS ADMITTED.

```
 1                    (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
 2                    2031, HAVING BEEN PREVIOUSLY MARKED FOR
 3                    IDENTIFICATION, WAS ADMITTED INTO
 4                    EVIDENCE.)
 5      BY MR. LEE:
 6      Q    NOW, LET'S GO TO PAGE 2031.8.
 7                NOW, SO THE LADIES AND GENTLEMEN OF THE
 8      JURY CAN UNDERSTAND, THIS IS SOMETHING THAT SAMSUNG
 9      SUBMITTED BACK IN SEPTEMBER OF 2011; CORRECT?
10      A    THE DATE -- I'LL TAKE YOU'RE REPRESENTING IT
11      CORRECTLY, YES.
12      Q    AND IT SAID, "HERE'S OUR POSITION ON HOW APPLE
13      INFRINGES," CORRECT?
14      A    YES.
15      Q    AND YOU'VE REVIEWED THIS SUBMISSION BEFORE;
16      CORRECT?
17      A    YES.
18      Q    AND IT HAS A VERY SPECIFIC SEQUENCE OF STEPS,
19      DOESN'T IT?
20      A    IT DESCRIBES A SEQUENCE.
21      Q    RIGHT.  AND AFTER YOU DID ALL YOUR SEVERAL
22      HUNDRED HOURS OF WORK, YOU COULDN'T FIND ANY
23      EVIDENCE THAT ANYBODY HAD USED THE ACCUSED PRODUCTS
24      TO PERFORM THAT SEQUENCE OF STEPS; CORRECT?
25      A    WHICH SEQUENCE OF STEPS ARE YOU REFERRING TO?
```

```
 1     Q     I'M TALKING ABOUT --

 2     A     ARE YOU REFERRING TO THIS SEQUENCE?

 3     Q     I'M TALKING ABOUT THE SEQUENCE OF STEPS THAT

 4     SAMSUNG DISCLOSED UNDER THE COURT'S RULES IN

 5     SEPTEMBER OF 2011.

 6               DO YOU HAVE THOSE IN MIND?

 7     A     YES.

 8     Q     YOU REVIEWED THEM?

 9     A     RIGHT.

10     Q     YOU UNDERSTOOD THEM?

11     A     YES.

12     Q     AND MY QUESTION IS THIS:  AFTER YOU DID ALL OF

13     YOUR WORK --

14     A     YES.

15     Q     -- GETTING READY TO FILE YOUR EXPERT REPORT,

16     YOU COULD NOT AND DID NOT IDENTIFY A SINGLE PERSON

17     ON THE FACE OF THE EARTH WHO HAD PERFORMED THE

18     SEQUENCE OF STEPS THAT SAMSUNG HAD DISCLOSED TO

19     THIS COURT IN ITS CONTENTIONS; CORRECT?

20     A     I DON'T REALLY -- I'M SORRY, I DON'T

21     UNDERSTAND YOUR QUESTION, BECAUSE WHAT YOU'RE

22     SHOWING HERE IS NOT A SEQUENCE OF STEPS.

23     Q     WELL, LET'S SEE, DR. YANG.

24     A     RIGHT.  SO I'M TALKING ABOUT WHAT YOU HAVE UP

25     HERE ON THE VIDEO.  I'M NOT TRYING TO BE
```

1    ARGUMENTATIVE.  IT'S JUST --

2    Q    FAIR ENOUGH.  LET'S SEE --

3    A    I DON'T SEE A SEQUENCE OF STEPS, SO I'M NOT

4    SURE WHICH SEQUENCE OF STEPS YOU'RE REFERRING TO.

5    Q    LET'S SEE WHAT WE'VE --

6    A    OKAY.

7    Q    I'LL TAKE YOU THROUGH THE DETAILS, BUT WE'LL

8    TRY TO DO IT QUICKLY IN THE INTEREST OF TIME.

9    OKAY?

10              SO YOU WILL SEE THAT ON PAGE PX 2031.8,

11   YOU SEE ROW A?

12   A    PX 203 -- I'M SORRY.

13   Q    IT'S ON THE SCREEN.

14   A    OKAY.

15   Q    ALL RIGHT.  AND WHAT IT SAYS IS A USER OPENS

16   THE MAIL APPLICATION.  DO YOU SEE THAT?

17   A    YES.

18   Q    AND NOW IF WE GO TO THE NEXT STEP, B, IT SAYS

19   THE USER RETURNS TO THE HOME SCREEN, OPENS THE

20   PHOTOS APPLICATION AND VIEWS THE MOST RECENTLY

21   CAPTURED IMAGE.  DO YOU SEE THAT?

22   A    YES.

23   Q    IF WE GO TO C -- YOU RECOGNIZE THESE AS THE

24   STEPS THAT YOU TALKED TO THE JURY ABOUT?

25   A    YES, YES, YES.

1    Q    NOW, C IS THE USER OPENS THE CAMERA

2    APPLICATION TO NAVIGATE BETWEEN IMAGE FILES;

3    CORRECT?

4    A    YES.

5    Q    IF WE GO TO D, THE USER OPENS THE -- THE USER

6    OPENS THE MAIL APPLICATION AGAIN AND SENDS THE

7    E-MAIL STARTED IN STEP A TO A RECIPIENT.  DO YOU

8    SEE THAT?

9    A    YES.

10   Q    AND IF WE GO TO STEP E, IT SAYS THE USER OPENS

11   THE PHOTOS APPLICATION AGAIN AND SENDS THE E-MAIL

12   STARTED IN STEP B TO THE RECIPIENT.

13              DO YOU SEE THAT?

14   A    YES.

15   Q    SO THERE'S A, B, C, D, E; CORRECT?

16   A    YES.

17   Q    THERE'S A VERY SPECIFIC SET OF STEPS THAT

18   SAMSUNG DESCRIBED IN ITS CONTENTIONS; CORRECT?

19   A    THESE ARE SPECIFIC STEPS TO PERFORM EACH ONE

20   OF THOSE FIVE CLAIM LIMITATIONS, YES.

21   Q    RIGHT.  AND IN YOUR EXPERT REPORT, YOU COULD

22   NOT IDENTIFY ANYONE ANYWHERE WHO HAD EVER PERFORMED

23   THE STEPS AS SAMSUNG DESCRIBED THEM IN ITS

24   SEPTEMBER 2011 CONTENTIONS; CORRECT?

25   A    SO I'M NOT REALLY SURE --

```
1    Q    DR. YANG, IS THAT -- CAN YOU ANSWER THAT YES

2    OR NO?

3    A    I'M NOT REALLY SURE WHAT YOU'RE SAYING.  I

4    BELIEVE THAT EACH ONE OF THESE INDIVIDUAL

5    DESCRIPTIONS PEOPLE HAVE DONE AND PEOPLE DO ALL THE

6    TIME, AND I BELIEVE THAT APPLE IS WELL AWARE THAT

7    PEOPLE DO THAT.

8    Q    THAT WASN'T THE QUESTION?

9    A    THAT'S WHY I'M ASKING FOR A CLARIFICATION.

10   Q    I'LL GIVE YOU A CLARIFICATION.

11   A    YES.

12   Q    SAMSUNG DESCRIBED VERY SPECIFIC STEPS THAT

13   FOLLOWED A SEQUENCE.  I JUST READ THEM TO YOU;

14   CORRECT?

15   A    SO YOU MEAN THAT A HAS TO PRECEDE B AND B HAS

16   TO PRECEDE C AND C HAS TO PRECEDE D?  IS THAT WHAT

17   YOU'RE SAYING?

18   Q    THAT'S WHAT SAMSUNG SAID.  IF YOU FOLLOW THAT

19   SEQUENCE OF STEPS --

20   A    I'M --

21   Q    LET ME GIVE YOU -- LET ME MAKE SURE THAT WE'RE

22   ON THE SAME PAGE.

23        GO BACK TO PX 2031.17, STEP E?

24   A    YES.

25   Q    SO THE JURY UNDERSTAND WHAT THIS STEP SAYS IS,
```

```
 1     THE USER OPENS THE PHOTOS APPLICATION AGAIN, OKAY?

 2     A    UM-HUM.

 3     Q    SO AS SAMSUNG DESCRIBED ITS THEORIES, MORE

 4     THAN A YEAR AGO, THERE WAS A SPECIFIC SEQUENCE OF

 5     STEPS IN THIS THEORY THAT'S DESCRIBED; CORRECT?

 6              MR. JOHNSON:  OBJECTION.

 7     MISCHARACTERIZES THE DOCUMENT AND IT'S RESTATING

 8     IT.

 9              THE COURT:  OVERRULED.

10              THE WITNESS:  I DISAGREE.

11              MR. LEE:  ALL RIGHT.

12     Q    LET'S GO THROUGH --

13     A    BECAUSE --

14     Q    LET'S GO THROUGH IT.

15              MR. JOHNSON:  YOUR HONOR, I ASK THAT HE

16     BE PERMITTED TO FINISH THE ANSWER.  HE'S

17     INTERRUPTING HIM.

18              THE COURT:  YOU CAN DO IT ON YOUR

19     REDIRECT.

20              GO AHEAD.

21     BY MR. LEE:

22     Q    SO LET'S SEE IF SAMSUNG AND YOU DISAGREE.

23     A    YES.

24     Q    PX 2031.8.

25              FIRST STEP, A USER OPENS THE MAIL
```

```
 1    APPLICATION AND STARTS TO WRITE AN E-MAIL.  THAT'S
 2    STEP ONE; CORRECT?
 3              MR. JOHNSON:  YOUR HONOR,
 4    MISCHARACTERIZES THE DOCUMENT.  HE'S INSERTING
 5    LANGUAGE INTO THE DOCUMENT.
 6              THE COURT:  OVERRULED.
 7    BY MR. LEE:
 8    Q    STEP B, THE USER RETURNS TO THE HOME SCREEN,
 9    OPENS THE PHOTOS APPLICATION, AND VIEWS THE MOST
10    RECENTLY CAPTURED IMAGE.  HAVE I READ THAT
11    CORRECTLY?
12    A    THERE'S AN IMPORTANT PART ABOUT THAT THAT I
13    DON'T THINK YOU'VE READ, WHICH SAYS SEE E.G., WHICH
14    MEANS SEE AS AN EXAMPLE.
15    Q    GREAT POINT.  HOW MANY EXAMPLES -- TELL THE
16    LADIES AND GENTLEMEN OF THE JURY, HOW MANY EXAMPLES
17    DID SAMSUNG GIVE IN TOTAL IN ITS CONTENTIONS?
18    A    IT ONLY NEEDED TO GIVE ONE.
19    Q    WELL, DOCTOR, THEY GAVE ONE, RIGHT?
20    A    YES.
21    Q    AND THE ONE THAT WE'RE GOING THROUGH IS THE
22    ONLY EXAMPLE THAT SAMSUNG GAVE; CORRECT?
23    A    IN THE INITIAL CONTENTIONS, YES.
24    Q    RIGHT.  SO LET'S SEE WHAT THEY SAID IN STEP C.
25    THE USER OPENS THE CAMERA APPLICATION AND NAVIGATES
```

```
1    BETWEEN IMAGE FILES.  DO YOU SEE THAT?

2    A    YES.

3    Q    LET'S SEE WHAT THEY SAID ABOUT STEP D.  THE

4    USER OPENS THE MAIL APPLICATION AGAIN AND SENDS THE

5    E-MAIL STARTED IN STEP A TO THE RECIPIENT.  DO YOU

6    SEE THAT?

7    A    YES.

8    Q    STEP E, THE USER OPENS THE PHOTO APPLICATIONS

9    AGAIN AND SENDS THE E-MAIL STARTED IN STEP B TO A

10   RECIPIENT.

11              HAVE I READ THAT CORRECTLY?

12   A    YES.

13   Q    SO IT'S YOUR BEST JUDGMENT TO THIS JURY THAT

14   THAT SET OF STEPS DOESN'T HAVE A SEQUENCE?

15   A    I -- FOR THE JURY, EACH ONE OF THESE REPRESENT

16   AN EXAMPLE OF HOW THAT CLAIM LIMITATION, THAT

17   SPECIFIC SUBPARAGRAPH IS MET.

18   Q    DOES IT HAVE A SEQUENCE OR NOT, SIR?

19   A    ALL WRITTEN DOCUMENTS HAVE A SEQUENCE.  YOU

20   START AT THE BEGINNING AND GO TOWARD THE END.

21   Q    WHAT DO THE WORDS "AGAIN" MEAN TO YOU?

22   A    AGAIN MEANS AGAIN.  YOU GO BACK.

23   Q    SO LET ME ASK YOU THIS.  LET ME ASK YOU TO

24   ASSUME THAT SAMSUNG SAID THAT STEPS A, B, C, D, AND

25   E, FOR EXAMPLE, SHOULD BE PERFORMED IN THAT
```

```
1    SEQUENCE.  OKAY?

2    A    YES.

3    Q    AFTER ALL YOUR HOURS OF WORK WHEN YOU FILED

4    YOUR EXPERT REPORT, YOU COULDN'T IDENTIFY ONE

5    PERSON WHO HAD PERFORMED THOSE FUNCTIONS IN THAT

6    WAY; CORRECT?

7    A    IT WASN'T NECESSARY TO SHOW INFRINGEMENT.

8    Q    SO THE ANSWER IS YOU COULD NOT; CORRECT?

9    A    I DID NOT.

10   Q    OKAY.  NOW, LET'S TALK ABOUT THIS THREE CORE

11   FUNCTIONS.  YOU USED THAT PHRASE FREQUENTLY TODAY;

12   CORRECT?

13   A    YES.

14   Q    NOW, THE PATENT OFFICE ACTUALLY SAID THAT

15   SAMSUNG -- WITHDRAWN.

16        THE PATENT OFFICE ACTUALLY TOLD SAMSUNG

17   THAT THESE THREE CORE FUNCTIONS HAD BEEN DONE BY

18   OTHERS BEFORE; CORRECT?

19   A    YES, I'M FAMILIAR WITH THAT PIECE OF

20   PROSECUTION HISTORY.

21   Q    THE PATENT OFFICE REJECTED THE PATENT AND

22   SPECIFICALLY REJECTED THE CONCEPT OF THREE CORE

23   FUNCTIONS BECAUSE THE PATENT OFFICE SAID OTHERS HAD

24   DONE THAT BEFORE; CORRECT?

25   A    NOT IN THE SAME WAY.
```

1    Q    DID THE PATENT OFFICE REJECT THE PATENT AND

2    SPECIFICALLY THE CONCEPT OF THREE CORE FUNCTIONS

3    BECAUSE IT SAID OTHERS HAD DONE IT BEFORE?

4    A    OTHERS HAD DONE EACH OF THOSE INDIVIDUAL CORE

5    FUNCTIONS IN ANOTHER DEVICE.

6    Q    ALL RIGHT.

7    A    SEPARATE DEVICES.

8    Q    NOW, DR. YANG, LET'S LOOK AT THE CLAIM AGAIN,

9    CLAIM 1.

10              AND I WANT THE JURY TO BE SURE -- I WANT

11   TO BE SURE THAT THE JURY UNDERSTANDS.  YOU

12   DESCRIBED THESE THREE CORE FUNCTIONS; CORRECT?

13   A    YES.

14   Q    AND ACCORDING TO YOU, THESE THREE CORE

15   FUNCTIONS CAN BE PERFORMED IN ANY SEQUENCE,

16   CORRECT?

17   A    NO, I DON'T THINK THEY CAN BE PERFORMED IN

18   ABSOLUTELY ANY SEQUENCE.

19   Q    WELL, DR. YANG, ISN'T IT YOUR TESTIMONY THAT

20   IF STEP A IS PERFORMED TODAY, STEP B COULD BE

21   PERFORMED IN A YEAR, AND STEP C COULD BE PERFORMED

22   IN THREE YEARS AND THE PATENT WILL STILL BE

23   INFRINGED?

24   A    YES.

25   Q    OKAY.

```
1    A    BUT THE SEQUENCE IS NOT -- THE SEQUENCE IS NOT

2    AT ISSUE THERE.  HE WAS TALKING ABOUT THE TIME.

3    Q    SO STEP 1 COULD BE PERFORMED TODAY, STEP A

4    WE'LL CALL IT; STEP B COULD BE PERFORMED IN 2013;

5    STEP C WOULD BE PERFORMED IN 2014, AND YOU SAY THE

6    CLAIM IS STILL SATISFIED; CORRECT?

7              MR. JOHNSON:  YOUR HONOR, OBJECTION.

8    YOU'VE ALREADY RULED ON CLAIM CONSTRUCTION ON THIS.

9              MR. LEE:  ACTUALLY, YOUR HONOR, THAT'S

10   NOT CORRECT.  YOU'LL RECALL THAT --

11             THE COURT:  OVERRULED.

12             GO AHEAD.

13             MR. LEE:  OKAY.

14   Q    NOW, LET'S LOOK AT CLAIM 1.  AND, DR. YANG,

15   YOU TALKED ABOUT THESE THREE CORE FUNCTIONS, BUT WE

16   DIDN'T LOOK AT THE LANGUAGE WITH THE JURORS

17   SPECIFICALLY.

18             AND I WANT TO HIGHLIGHT WHAT IS STEP B,

19   ENTERING A SECOND E-MAIL TRANSMISSION SUB-MODE.

20   RIGHT?  DO YOU SEE THAT?

21   A    YES.

22   Q    AND THE LAST THREE LINES REFERS TO THE SECOND

23   E-MAIL TRANSMISSION SUB-MODE DISPLAYING AN IMAGE

24   MOST RECENTLY CAPTURED IN A CAMERA MODE.

25             DO YOU SEE THAT?
```

```
1    A    YES.

2    Q    NOW, THE NEXT STEP, DO YOU SEE THAT WORD "AN

3    IMAGE"?

4    A    YES.

5    Q    THE NEXT STEP SAYS, "SEQUENTIALLY DISPLAYING

6    OTHER IMAGES STORED IN A MEMORY THROUGH THE USE OF

7    SCROLL KEYS," CORRECT?

8    A    YES.

9    Q    NOW, "OTHER" IS THE OTHER IMAGES OTHER THAN

10   THE ONE IDENTIFIED IN THE STEP B; CORRECT?

11   A    YES.

12   Q    SO YOU IDENTIFY THE FIRST IMAGE AND THEN YOU

13   KNOW WHAT THE OTHERS ARE; CORRECT?

14   A    WELL, IT'S SOME OTHER IMAGES, YES.

15   Q    NOW, DR. YANG, IF STEP C FOLLOWS STEP B IN

16   SEQUENCE, I UNDERSTAND YOU DISAGREE, BUT IF STEP C

17   FOLLOWS STEP B, NONE OF THE APPLE PRODUCTS

18   INFRINGE; CORRECT?

19   A    COULD YOU REPEAT THE QUESTION AGAIN?  I'M JUST

20   TRYING TO PARSE IT.

21   Q    SURE.  YOU SEE STEP B?

22   A    YES.

23   Q    YOU SEE STEP C?

24   A    YES.

25   Q    IF STEP C HAS TO FOLLOW STEP B?
```

```
1    A    IF STEP C HAS TO FOLLOW STEP B.

2    Q    YES.

3    A    SO YOU HAVE TO SEQUENTIALLY DISPLAY IMAGES

4    FIRST AND THEN GO TO THE SECOND E-MAIL TRANSMISSION

5    MODE.

6    Q    NO.  YOU HAVE TO DISPLAY AN IMAGE MOST

7    RECENTLY CAPTURED AND THEN SEQUENTIALLY DISPLAY?

8    A    YES.

9    Q    IF THAT'S THE ORDER?

10   A    YES.

11   Q    THE APPLE PRODUCTS DON'T INFRINGE; CORRECT?

12   A    I DISAGREE.

13   Q    WELL, LET'S SEE WHAT YOU SAID IN YOUR

14   DEPOSITION.

15   A    OKAY.

16   Q    VOLUME 1, TAB 7, PAGE 282, LINE 1 TO 9.

17             AND WE'LL START IT, SIR, AT THE TOP.

18             "QUESTION:  AND NOW THAT YOU'VE ENTERED,

19   IN YOUR OPINION, THE SECOND E-MAIL TRANSMISSION

20   SUB-MODE, ARE YOU NOW ABLE TO SEQUENTIALLY DISPLAY

21   OTHER IMAGES, OR NOT?

22             "ANSWER:  FROM THIS SCREEN, BY ITSELF?

23             "QUESTION:  YES.

24             "ANSWER:  IT DOES NOT APPEAR SO.

25   HOWEVER, THE CLAIMS OF THE '460 DO NOT REQUIRE THAT
```

```
 1    THIS NEEDS TO HAPPEN IN SEQUENCE."

 2              HAVE I READ THAT CORRECTLY?

 3    A    YES.

 4    Q    NOW, DO YOU HAVE EXHIBIT 44 BEFORE YOU?  IT'S

 5    IN VOLUME 3 AT TAB 27 VOLUME --

 6    A    VOLUME 3 --

 7    Q    THERE IS ALREADY IN EVIDENCE.  THE JURY HAS

 8    SEEN THIS BEFORE.

 9    A    OKAY.

10    Q    HAVE YOU SEEN IT, DR. YANG?

11    A    NO, I HAVE NOT.  I DON'T THINK I HAVE.

12    Q    IS THIS THE SAMSUNG DOCUMENT, I'M GOING TO ASK

13    YOU JUST A COUPLE QUESTIONS THAT GO TO SPECIFICALLY

14    WHAT YOU'VE TALKED ABOUT.  COULD I HAVE --

15              MR. JOHNSON:  YOUR HONOR, YOU SUSTAINED

16    OBJECTIONS TO VERY SIMILAR DOCUMENTS TO EXHIBIT 44.

17    SO I OBJECT TO THE LINE OF QUESTIONING WITH THIS

18    WITNESS.

19              MR. LEE:  EXHIBIT 44 IS IN EVIDENCE, YOUR

20    HONOR, IN ITS ENTIRETY.

21              MR. JOHNSON:  AND THE WITNESS HASN'T SEEN

22    THIS BEFORE.  NO FOUNDATION.

23              MR. LEE:  THIS IS CROSS-EXAMINATION OF AN

24    EXPERT.

25              THE COURT:  OVERRULED.
```

```
1              MR. JOHNSON:  I'LL REFER TO YOUR HONOR'S
2    RULING WITH RESPECT TO DX 640.
3              THE COURT:  WHAT'S -- WHAT'S THE LINE OF
4    QUESTIONING HERE?
5              MR. LEE:  IT WILL GO TO THE PORTIONS THAT
6    DESCRIBE THE FEATURES HE WAS DESCRIBING TO SEE IF
7    SAMSUNG CONSULTED ITS OWN PATENTS OR THE APPLE
8    PRODUCTS.
9              MR. JOHNSON:  YOUR HONOR, THIS IS THE
10   SAME DOCUMENT AS PX 61 WHICH YOUR HONOR SUSTAINED
11   THE OBJECTION TO.
12             THE COURT:  OVERRULED.  THIS HAS BEEN
13   ADMITTED.
14   BY MR. LEE:
15   Q    TURN TO PAGE 121, DR. YANG.
16   A    OKAY.  121 OF THE DOCUMENT?
17   Q    YES.  AND WE'LL BRING IT UP ON THE SCREEN.
18   A    YES.
19   Q    ALL RIGHT.  NOW, DR. YANG, YOU SEE THIS REFERS
20   TO VISUAL INTERACTION AFFECTING THE PHOTOS?
21   A    YES.
22   Q    THAT'S ONE OF THE THINGS YOU DESCRIBED TO THE
23   JURY TODAY; CORRECT?
24   A    YES.
25   Q    SO, DR. YANG, COULD YOU TELL US, WHEN SAMSUNG
```

```
 1    WANTED TO IMPROVE ITS GALAXY PHONES BEFORE THEY

 2    CAME TO THE MARKET, DID THEY LOOK TO THE INVENTIONS

 3    AND THE INVENTORS OF THE PATENTS YOU DESCRIBED OR

 4    DID THEY LOOK TO THE IPHONE?

 5    A    I CAN'T SAY --

 6              MR. JOHNSON:  OBJECTION, NO FOUNDATION.

 7              THE WITNESS:  I HAVEN'T SEEN THIS

 8    DOCUMENT BEFORE.  HOWEVER, IF I LOOK AT THIS

 9    DOCUMENT, I LOOK AT GT I9000, ACTUALLY, I'M NOT

10    SURE WHAT THIS IS BECAUSE I CAN'T SEE VERY CLEARLY

11    HERE, BUT IT LOOKS TO ME THEY'RE COMPOSING A

12    MESSAGE HERE, AND IF YOU LOOK, THERE'S A DISPLAY OF

13    AN IMAGE IN IT.  IT'S A THUMBNAIL IMAGE, BUT

14    NEEDLESS TO SAY, IT LOOKS LIKE A DISPLAY OF AN

15    IMAGE.  I'M NOT SURE.  I'D HAVE TO INVESTIGATE MORE

16    CAREFULLY.  LIKE I SAID, THIS IS THE FIRST TIME

17    I'VE SEEN THIS DOCUMENT.

18    BY MR. LEE:

19    Q    SO NO ONE EVER GAVE YOU THIS DOCUMENT?

20    A    NO.

21    Q    AND IF I ASKED THIS QUESTION, WHEN SAMSUNG

22    WENT TO DEFINE THE FEATURES OF ITS GALAXY PHONES,

23    DID IT CONSULT WITH THE INVENTORS OF THE PATENTS

24    THAT YOU TOLD THE JURY ABOUT, OR DID IT LOOK AT THE

25    IPHONE?
```

```
 1    A    I REALLY HAVE NO IDEA.

 2    Q    AND NO ONE GAVE YOU THIS DOCUMENT AS PART OF

 3    THE MATERIALS YOU LOOKED AT; CORRECT?

 4    A    THIS IS NOT NECESSARY FOR INFRINGEMENT

 5    ANALYSIS.

 6    Q    NOW LET'S GO TO THE '711 PATENT, AND I WANT TO

 7    TALK ABOUT THE TESTIMONY THAT YOU GAVE AT THE VERY

 8    END OF YOUR DIRECT.  DO YOU REMEMBER YOU WERE ASKED

 9    ABOUT SOURCE CODE?

10    A    YES.

11    Q    NOW, DR. YANG, YOU WERE REQUIRED TO FILE AN

12    EXPERT REPORT; CORRECT?

13    A    YES.

14    Q    AND IN YOUR EXPERT REPORT, YOU WERE OBLIGED TO

15    IDENTIFY THAT WHICH YOU THOUGHT WAS THE APPLET

16    REQUIRED BY THE CLAIM; CORRECT?  CORRECT?

17    A    I DON'T THINK I WAS REQUIRED BY TRANSLATION OF

18    A DOCUMENT TO IDENTIFY THE APPLET.

19    Q    WELL, LET'S LOOK AT WHAT --

20    A    I THINK I WAS REQUIRED TO DEMONSTRATE THAT THE

21    REQUIREMENTS OF CLAIM 9 OF THE '711, WHICH REQUIRED

22    MUSIC BACKGROUND PLAY OBJECT, INCLUDING AN

23    APPLICATION MODULE, INCLUDING AT LEAST ONE APPLET

24    WERE MET.  AND SO THE SOURCE CODE WAS USEFUL IN

25    SHOWING THAT.
```

1    Q    ALL RIGHT.  SO LET'S LOOK AT THE CLAIM.  IT'S

2    CLAIM 9 OF THE '711 PATENT.  AND IT'S AT VOLUME 1,

3    TAB 20 FOR YOU.  IT'S ALSO ON THE SCREEN.

4              DO YOU SEE THE PHRASE THAT REFERS TO A

5    MUSIC BACKGROUND PLAY OBJECT WHEREIN THE MUSIC

6    BACKGROUND PLAY OBJECT INCLUDES AN APPLICATION

7    MODULE INCLUDING AT LEAST ONE APPLET?  CORRECT?

8    A    YES, CORRECT.

9    Q    NOW, IN YOUR EXPERT REPORT, YOU SAID YOU

10   LOOKED AT SOME SOURCE CODE; CORRECT?

11   A    YES.

12   Q    BUT YOU WERE ASKED AT YOUR DEPOSITION TO TELL

13   US WHAT IN YOUR EXPERT REPORT WAS, IN FACT, THE

14   APPLET; CORRECT?

15   A    I WAS ASKED MANY QUESTIONS.  YES, I THINK I

16   WAS ASKED A QUESTION LIKE THAT.

17   Q    SO LET'S BE SURE THE LADIES AND GENTLEMEN OF

18   THE JURY HAVE IN MIND WHAT THEIR TASK IS GOING TO

19   BE.

20             THEY'RE GOING TO HAVE TO LOOK AT CLAIM 9,

21   THAT'S WHAT GOVERNS INFRINGEMENT; CORRECT?

22   A    YES.

23   Q    THEY'RE GOING TO HAVE TO LOOK AT THE ACCUSED

24   PRODUCTS; CORRECT?

25   A    CORRECT.

```
 1     Q    AND THEY'RE GOING TO HAVE TO DETERMINE

 2    WHETHER, IN THOSE ACCUSED PRODUCTS, THERE IS AN

 3    APPLICATION MODULE INCLUDING AT LEAST ONE APPLET AS

 4    DEFINED BY THE COURT; CORRECT?

 5     A    YES.

 6     Q    AND YOU SAID YOU LOOKED AT A BUNCH OF PIECES

 7    OF SOURCE CODE; CORRECT?

 8     A    I LOOKED AT LOTS OF SOURCE CODE, YES.

 9     Q    AND THEN AT YOUR DEPOSITION, MY PARTNER,

10    MR. BASSETT, SITTING AT THE TABLE, SAID "DR. YANG,

11    TELL US WHICH ONE IS THE APPLET," CORRECT?

12     A    HE WAS REFERRING TO A SPECIFIC PAGE AT THAT

13    TIME, I BELIEVE.

14     Q    WELL, LET'S SEE WHAT HE SAID.  VOLUME 1, TAB

15    7, PAGE 179, LINE 5.  ACTUALLY, LET'S START AT PAGE

16    178, LINE 21.

17              NOW, YOU KNOW WHAT FOOTNOTE 6 IS, DON'T

18    YOU?

19     A    YES, I DO.

20     Q    FOOTNOTE 6 WAS IN YOUR EXPERT REPORT, CORRECT?

21     A    YES.

22     Q    FOOTNOTE 6 LISTED A WHOLE BUNCH OF DIFFERENT

23    MODULES OF SOURCE CODE; CORRECT?

24     A    LISTED A WHOLE BUNCH OF SOURCE CODE.

25     Q    RIGHT.  NOW, MR. BASSETT ASKED YOU
```

1    SPECIFICALLY ABOUT FOOTNOTE NUMBER 6; CORRECT?

2    A    YES.

3    Q    AND SO THE QUESTION IS, "SO NOT EVERY ITEM

4    LISTED IN FOOTNOTE 6 ON THIS PAGE IS AN APPLET?

5             "ANSWER:  NO, THEY GO ALONG TO SUPPORT

6    THE IDEA OF WHAT IS A BACKGROUND PLAY OBJECT.  THEY

7    GO ALONG TO SUPPORT WHAT IS AN APPLICATION MODULE.

8    THEY GO ALONG TO FINALLY SUPPORT, IF YOU FINALLY

9    DIG DOWN LOW ENOUGH, TO FIND THAT THERE'S AN APPLET

10   THERE.  AND SO WHICH APPLETS.  SO THAT'S WHY WE'RE

11   REFERRING TO THE PROGRAMMING GUIDES HERE.

12            "QUESTION:  SO FOOTNOTE 6 LISTS MANY,

13   MANY DIFFERENT PIECES OF SOURCE CODE.  ARE ANY OF

14   THEM APPLETS, IN YOUR OPINION?  OR DO ANY OF THEM

15   REPRESENT CODE FOR AN APPLET, IN YOUR OPINION?"

16            NOW, BEFORE YOU ANSWER, DO YOU REMEMBER

17   THAT QUESTION?

18   A    YES.

19   Q    WE'RE NOT REFERRING TO ONE PIECE OF PAPER,

20   WE'RE REFERRING TO A FOOTNOTE WHERE YOU IDENTIFIED

21   A WHOLE BUNCH OF PIECES OF SOURCE CODE; CORRECT?

22   A    YES.  BUT YOU'VE ACTUALLY READ IT INCORRECT.

23   Q    I'LL READ THE QUESTION.  QUESTION --

24   A    OKAY, THAT'S FINE.

25   Q    "AND FOOTNOTE 6 LISTS MANY, MANY DIFFERENT

```
 1    PIECES OF SOURCE CODE.  ARE ANY OF THEM APPLETS, IN
 2    YOUR OPINION?  OR DO ANY OF THEM REPRESENT CODE FOR
 3    AN APPLET, IN YOUR OPINION?
 4            "ANSWER:  YES.  WITHIN HERE I AM CERTAIN
 5    THERE ARE APPLETS.  I JUST CAN'T RECALL EXACTLY
 6    WHICH ONE THEY ARE.  BUT THERE IS IN HERE AN
 7    APPLICATION DESIGNED TO RUN WITHIN AN APPLICATION
 8    MODULE."
 9            DO YOU SEE THAT?
10    A    YES.
11    Q    SO AFTER HUNDREDS OF HOURS OF WORK, TWO EXPERT
12    REPORT, CONTENTIONS FILED BY SAMSUNG, WHEN YOU WERE
13    ASKED TO POINT APPLE TO THE SOFTWARE THAT WAS THE
14    APPLET, THIS WAS YOUR ANSWER; CORRECT?
15    A    YES.
16    Q    ALL RIGHT.  AND YOU STAND BY IT; CORRECT?
17    A    YES.
18    Q    AND YOU HAVEN'T BEEN ANY MORE SPECIFIC WITH
19    THIS JURY TODAY; CORRECT?
20    A    PARDON?  COULD YOU SAY THAT QUESTION AGAIN?
21    Q    YOU HAVE NOT BEEN ANY MORE SPECIFIC WITH THIS
22    JURY TODAY?
23    A    NO, I HAVEN'T.
24            MR. JOHNSON:  OBJECTION, YOUR HONOR.
25    WITHDRAWN.
```

2480

```
 1              THE COURT:  OKAY.

 2              MR. LEE:  ALL RIGHT.  LET'S MOVE TO THE

 3    FINAL PATENT, IF WE COULD.  GIVE ME A SECOND HERE.

 4              I JUST NEED A SECOND, YOUR HONOR.

 5              (PAUSE IN PROCEEDINGS.)

 6    BY MR. LEE:

 7    Q    OKAY.  LET'S GO TO THE LAST OF THE THREE

 8    PATENTS.  THIS IS THE '893 PATENT.

 9              CAN I HAVE FIGURE 1 ON THE SCREEN FROM JX

10    1068.2.

11              DO YOU SEE THAT ON THE SCREEN, DR. YANG?

12    A    YES, I DO.

13    Q    NOW, THIS IS AN EXAMPLE FROM THE PATENT;

14    CORRECT?

15    A    YES, THAT'S A FIGURE FROM THE PATENT.

16    Q    AND FIGURE 1 SHOWS THE CONTROLS OF A DIGITAL

17    CAMERA; CORRECT?

18    A    YES.  COULD YOU TELL ME WHERE I CAN FIND THIS

19    IN MY BOOK?

20    Q    SURE.  IN YOUR BOOKS, IT'S AT VOLUME 1, TAB

21    19.

22    A    TAB?

23    Q    19.

24    A    19, THANK YOU.  YES.

25    Q    DO YOU HAVE IT BEFORE YOU?
```

2481

```
1    A    YES, I DO.

2    Q    WE HAVE FIGURE 1 ON THE SCREEN?

3    A    YES.

4    Q    THEY'RE THE CONTROLS OF A DIGITAL CAMERA;

5    CORRECT IN?

6    A    YES, THEY'RE SHOWING AN EXAMPLE.

7    Q    THERE'S A PHYSICAL MODE DIAL; CORRECT?

8    A    YES.

9    Q    THE USER CAN TURN THE MODE DIAL SO IT CAN BE

10   IN A PHOTOGRAPHY MODE OR A CAMERA MODE; CORRECT?

11   A    YES, AS WELL AS SOME OTHER MODES.

12   Q    AND AS IT'S DESCRIBED IN THE PATENT, YOU CAN

13   ONLY BE IN ONE MODE AT A TIME; CORRECT?

14   A    YES.

15   Q    IF YOU'RE IN THE STORED IMAGE MODE, YOU CAN'T

16   BE IN THE PHOTOGRAPHY MODE AND VICE-VERSA; CORRECT?

17   A    FOR THIS PARTICULAR DEVICE, YES.

18   Q    YES.  FOR THE PARTICULAR DEVICE THAT'S

19   DESCRIBED IN THIS PATENT THAT YOU TESTIFIED ABOUT

20   TODAY; CORRECT?

21   A    FOR THIS PARTICULAR DEVICE, THE DIAL IS

22   SHOWING ONE SPECIFIC MODE FOR -- THAT THIS DEVICE

23   CAN OCCUPY AT ANY GIVEN TIME.

24   Q    NOW, ONCE AGAIN, SAMSUNG TOLD THE COURT WHAT

25   ITS CONTENTIONS WERE ABOUT THIS CLAIM 10; CORRECT?
```

```
1    A    YES.

2    Q    TURN, IF YOU WOULD, TO VOLUME 1, TAB 11, AND

3    WE'LL GO TO PAGE 2030.7.  DO YOU HAVE IT BEFORE

4    YOU?

5    A    ARE YOU TALKING ABOUT THE ORIGINAL -- YES.

6    Q    OKAY.  AND IF I TAKE YOU, DR. YANG, TO PAGE

7    2030, FOR EXAMPLE, .13?

8    A    I'M SORRY.  I'M HAVING A HARD TIME FOLLOWING

9    YOU.  PAGE 8.

10   Q    IT'S ON THE SCREEN?

11   A    OKAY.

12   Q    AND I'M NOT GOING TO GO THROUGH ALL -- IN THE

13   INTERESTS OF TIME, I'M NOT GOING TO GO THROUGH ALL

14   OF WHAT SAMSUNG SAID.

15        BUT WHAT SAMSUNG IDENTIFIED FOR THE

16   DIFFERENT MODES WERE APPS; RIGHT?

17   A    THEY IDENTIFIED APPLICATION PROGRAMS WHICH ARE

18   CALLED APPS BY APPLE.

19   Q    THEY IDENTIFIED APPLICATION PROGRAMS AND, AND

20   THE ONE THING YOU AND I CAN AGREE UPON IS

21   APPLICATIONS AND MODES ARE DIFFERENT; CORRECT?

22   A    WELL, I WANT TO BE VERY PRECISE HERE.

23   APPLICATION PROGRAMS ARE PROGRAMS THAT ARE EXECUTED

24   BY THE DEVICE.  THEY'RE JUST SOFTWARE THAT ARE

25   EXECUTED BY THE DEVICE AND WHEN THEY'RE EXECUTED,
```

```
1    THE DEVICE HAS MODES.  SO, YES, APPLICATION

2    PROGRAMS AND MODES ARE DIFFERENT.

3    Q    RIGHT.  AND THAT WAS TRUE -- THAT'S TRUE FOR

4    THE '893 PATENT; CORRECT?

5    A    YES.

6    Q    ALL RIGHT.  AND IT'S TRUE FOR THE APPLE

7    DEVICES; CORRECT?

8    A    YES.  AND IT'S TRUE IN GENERAL AS WELL.

9    Q    RIGHT.  AND WOULD IT BE ACCURATE TO DESCRIBE

10   AN FM/AM VIDEO AS HAVING TWO MODES, AN FM MODE AND

11   AN AM MODE?

12   A    PERHAPS.  THERE MIGHT BE OTHER MODES, BUT YES,

13   IT HAS TWO MODES, SURE.

14   Q    ALL RIGHT.  TURN BACK TO EXHIBIT 44, WHICH IS

15   AT VOLUME 3, TAB 27.  AND I WANT YOU TO HAVE IN

16   MIND THE TESTIMONY YOU GAVE THE JURY THIS MORNING

17   ABOUT THE DEVELOPMENT OF A CAMERA PHONE BY SAMSUNG.

18   CORRECT?

19   A    YES.

20   Q    AND BY THE WAY, YOU GLEANED THAT UNDERSTANDING

21   FROM READING THE PATENT AND THE FILE HISTORY, BUT

22   WITHOUT TALKING TO THE INVENTORS, LOOKING AT THEIR

23   ENGINEERING NOTEBOOKS OR LOOKING AT ANY OF THEIR

24   CONTEMPORANEOUS DOCUMENTS; CORRECT?

25   A    CORRECT.  THAT'S NOT NECESSARY.
```

1    Q    OKAY.  NOW, TURN, IF YOU WOULD, TO PAGE

2    44.111, PAGE 111.

3    A    THIS IS, AGAIN?  COULD YOU TELL ME WHERE I CAN

4    FIND THIS?

5    Q    SURE.  IT'S AT VOLUME 3, TAB 27.

6    A    TAB 27.  YES.

7    Q    MULTIMEDIA CAMERA, CAMERA FUNCTION, ICONS ARE

8    NOT INTUITIVE.  DO YOU SEE THAT PAGE?

9    A    YES.

10   Q    SO WHEN IT CAME TIME FOR SAMSUNG TO DESIGN ITS

11   CAMERA FUNCTION FOR ITS SMARTPHONES, RATHER THAN

12   CALL THE INVENTORS OF THESE PATENTS, RATHER THAN

13   LOOK AT THE PATENTS, WHAT THEY DID IS THEY LOOKED

14   AT THE IPHONE; RIGHT?  ISN'T THAT RIGHT, DR. YANG?

15   A    I MEAN, I'M LOOKING AT THIS DOCUMENT FOR THE

16   FIRST TIME, SO --

17   Q    CAN YOU TELL ME ONE WAY OR ANOTHER?

18   A    COULD YOU REPEAT THE QUESTION?

19   Q    SURE.

20   A    I WAS READING THE DOCUMENT.

21   Q    WHEN IT CAME TIME FOR SAMSUNG TO DESIGN ITS

22   GALAXY SMARTPHONES AND TO IMPROVE ITS CAMERA

23   FUNCTIONS, IT DIDN'T PICK UP THE PHONE AND CALL THE

24   INVENTORS, IT DIDN'T GO LOOK AT THE PATENT.

25   INSTEAD WHAT IT DID IS IT LOOKED AT THE IPHONE;

1    RIGHT?

2              MR. JOHNSON:  OBJECTION.  FOUNDATION.

3              THE COURT:  SUSTAINED.

4    BY MR. LEE:

5    Q    DO YOU HAVE ANY EVIDENCE THAT WHEN SAMSUNG

6    WENT TO DEVELOP ITS GALAXY SMARTPHONES IT LOOKED AT

7    ANY OF THE INVENTIONS DESCRIBED IN THE THREE

8    PATENTS YOU TALKED TO THE JURY ABOUT TODAY?

9    A    I HAVEN'T SEEN ANY EVIDENCE ONE WAY OR THE

10   OTHER.

11   Q    AND HAVE YOU SEEN ANY EVIDENCE THAT THE

12   INVENTORS OF THESE PATENTS DEVELOPED A PRODUCT, A

13   REAL WORLD PRODUCT, BASED UPON THEIR CLAIMED

14   INVENTIONS?

15   A    I THINK THERE WAS SOME DEPOSITION TESTIMONY TO

16   THAT EXTENT.

17   Q    IDENTIFY FOR ME A PRODUCT THAT ANY OF THE SIX

18   NAMED INVENTORS BROUGHT TO MARKET.

19   A    THAT WASN'T THE FOCUS OF MY INVESTIGATION.

20             MR. LEE:  NOTHING FURTHER, YOUR HONOR.

21             THE COURT:  ALL RIGHT.  IT'S 11:52.

22   PLEASE GO AHEAD.  WE'LL JUST GO UNTIL NOON.

23                 **REDIRECT EXAMINATION**

24   BY MR. JOHNSON:

25   Q    DR. YANG, YOU WERE TALKING ABOUT THE '893

1    PATENT WITH MR. LEE RIGHT AT THE END THERE.

2              IN THE ACCUSED PRODUCTS, APPLE'S ACCUSED

3    PRODUCTS, ARE YOU IN ONE MODE AT A TIME?

4    A    YES.

5    Q    PLEASE EXPLAIN.

6    A    WELL, A MODE DEFINES KIND OF THE FEATURES --

7    THESE ARE MULTIPLE FEATURES PHONES, RIGHT.  THEY

8    HAVE MANY, MANY FEATURES INSIDE OF THEM.  SO THEY

9    HAVE ALL THESE FEATURES IN THEM, AND WHEN YOU TALK

10   ABOUT A MODE, YOU TALK ABOUT WHICH OF THOSE STATES

11   ARE AVAILABLE IN THAT MODE.

12             SO, FOR EXAMPLE, IF YOU WANT THE RINGER

13   OFF BECAUSE YOU DON'T WANT TO DISTURB THE COURT

14   HERE, YOU'RE IN SILENT MODE.

15             AND CERTAINLY WHILE YOU'RE IN SILENT

16   MODE, MANY OTHER THINGS CAN HAPPEN.  SO YOU NEED TO

17   UNDERSTAND HOW ALL THE OTHER SWITCHES ARE SET.

18   THAT'S THE MODE OF THE DEVICE.

19   Q    DO APPLICATION PROGRAMS HAVE MODES?

20   A    APPLICATION PROGRAMS ARE JUST PROGRAMS THAT

21   ARE RUN ON THIS DEVICE.  THE APPLICATION PROGRAM IS

22   RUN, IT DECIDES THAT YOU CAN HAVE PHOTOGRAPHING

23   MODE, YOU CAN HAVE A DISPLAY MODE, AND SO THE

24   APPLICATION PROGRAMS WHEN THEY'RE RUNNING ON THE

25   DEVICE PROVIDE THE DEVICE WITH A MODE.

1    Q    I WANT TO TAKE ABOUT THE '460 PATENT, THE

2    CAMERA.

3    A    YES.

4    Q    AND EMBEDDED PARAGRAPH PATENT.

5         DO YOU AGREE WITH APPLE'S POSITION THAT

6    ITS DEVICES DON'T HAVE MODES?

7    A    NO, I DISAGREE WITH THAT COMPLETELY.

8    Q    CAN YOU EXPLAIN, PLEASE?

9    A    THEIR DEVICES CLEARLY HAVE MODES.  YOU SAW THE

10   MODES, RIGHT.  THERE'S A MODE WHERE THE DEVICE HAS

11   ALL SORTS OF PHOTOGRAPHING CAPABILITIES AVAILABLE.

12   IF YOU TAKE A PICTURE, THAT'S A PHOTOGRAPHING MODE.

13   THERE'S A MODE FOR DISPLAYING PICTURES.  SO THAT'S

14   A DISPLAY MODE.  SO WE CAN ALL EASILY UNDERSTAND

15   WHAT THOSE MODES MEAN.

16   Q    DO YOU HAVE AN UNDERSTANDING AS TO WHETHER THE

17   ACCUSED DEVICE CAN BE IN TWO MODES AT ONCE?

18   A    I MEAN, BEING IN TWO MODES AT ONCE IS, YOU'RE

19   NOT GOING TO BE IN TWO MODES AT ONCE.  YOU'RE IN

20   ONE MODE.

21        SO THE MODE COULD BE THAT YOU'RE IN

22   SILENT MODE, BUT YOU'RE TAKING A PICTURE.  SO

23   REALLY THE PROPER DEFINITION OF A MODE ISN'T JUST

24   SILENT MODE, IT'S SILENT MODE-PHOTOGRAPHING MODE.

25        SO BECAUSE THESE DEVICES ARE COMPLEX AND

1   THEY HAVE MANY FEATURES, YOU NEED TO REALLY HAVE

2   KIND OF A COMPLEX DESCRIPTION OF MODE.  BUT PEOPLE

3   SHORTEN IT AND SAY I'M IN SILENT MODE AND MY RINGER

4   IS OFF, BUT CERTAINLY YOU COULD LOOK AT E-MAIL.

5   Q   I WANT TO DIRECT YOUR ATTENTION TO DEPOSITION

6   TESTIMONY THAT MR. LEE STARTED AND HE READ AND

7   THERE WAS ANOTHER SECTION THAT HE LEFT OFF, AND I

8   WANT TO DIRECT YOUR ATTENTION TO TAB 8, PAGE 270.

9   A   PAGE 270.

10  Q   AND, RYAN, CAN WE PLEASE PUT UP THE MAY 8TH,

11  2012 DEPOSITION.  DO YOU HAVE THAT?

12          MR. LEE, CAN I ASK YOUR GUY TO PUT IT UP.

13          MR. LEE:  WHAT DO YOU WANT?

14          MR. JOHNSON:  THE MAY 8TH, 2012

15  DEPOSITION.  THE TESTIMONY THAT YOU HAD ON THE

16  BOARD.  IT'S TAB 8.

17          THE WITNESS:  IT'S TAB 7.

18          MR. JOHNSON:  TAB 7.  SORRY.

19          THE COURT:  PX 2028.

20  BY MR. JOHNSON:

21  Q   AND LET'S HIGHLIGHT LINES, STARTING AT LINE 5.

22  PAGE 270.

23          MR. LEE READ TO YOU THE QUESTION THAT

24  STARTS UP THERE, IT SAYS, "IN YOUR UNDERSTANDING OF

25  THE TERM 'MODE,' CAN A DEVICE BE BE IN MORE THAN

1    ONE MODE AT THE SAME TIME?"

2         AND HE READ THE FIRST PART OF THAT ANSWER

3    DOWN TO LINE 14 WHERE IT SAYS, "NO, THE DEVICE HAS

4    A GIVEN STATE.  THAT STATE IS THE STATE THAT

5    DEFINES, NOW, THERE MAY BE A CERTAIN STATE, THERE

6    MAY BE CERTAIN THINGS THAT DON'T CHANGE HOW THE

7    DEVICE OPERATES.  AND SO YOU DON'T WORRY ABOUT IT.

8    FOR EXAMPLE, YOU'VE STORED AN EXTRA TWO PICTURES ON

9    YOUR PHONE.  IT MAY NOT CHANGE THE WAY YOUR PHONE

10   BEHAVES."

11        LINES 16 TO 23 WERE NOT READ, AND IT

12   SAYS, "SO YOU MIGHT SAY, WELL, THEY'RE IN

13   EQUIVALENT MODES, THE MODES ARE THE SAME.  BUT THE

14   STATE IS A LITTLE BIT DIFFERENT.  BUT IT MIGHT MAKE

15   A DIFFERENCE IF YOU'RE GOING BACK TO THE LAST

16   VIEWED IMAGE AND THEN THE STATE MIGHT BE A LITTLE

17   DIFFERENT BECAUSE IT WOULD BEHAVE A LITTLE BIT

18   DIFFERENTLY.  SO YOU WOULD SAY IT'S IN A DIFFERENT

19   MODE."

20        DO YOU STAND BY THAT TESTIMONY?

21   A    YES, I DO.

22   Q    NOW, MR. LEE ALSO ASKED YOU ABOUT THE STEPS IN

23   CLAIM, IN THE CLAIM OF THE '460 PATENT AND HE

24   TALKED ABOUT STEPS A, B, C, D, E.  DO YOU REMEMBER

25   THAT?

```
 1    A    YES.

 2    Q    WHAT'S YOUR UNDERSTANDING OF WHETHER THOSE

 3    STEPS NEED TO BE PERFORMED IN A PARTICULAR ORDER?

 4    A    THOSE STEPS DO NOT NEED TO BE PERFORMED IN ANY

 5    PARTICULAR ORDER.

 6         HOWEVER, IF YOU DO LOOK AT IT CAREFULLY,

 7    YOU CAN SEE THAT STEP A, THE FIRST TRANSMISSION

 8    MODE, ENTERING IT NEEDS TO NECESSARILY BE PERFORMED

 9    BEFORE YOU SEND IT.  BUT OTHER THAN THAT, AND THE

10    SAME FOR THE SECOND E-MAIL TRANSMISSION MODE.

11    OTHER THAN THAT, THAT SEQUENCE CAN BE PERFORMED IN

12    ANY ORDER.

13         MR. JOHNSON:  NO FURTHER QUESTIONS, YOUR

14    HONOR.  THANK YOU, DR. YANG.

15         THE COURT:  OKAY.  THE TIME IS 11:57.

16    WHY DON'T YOU GO WITH ANY REDIRECT.

17         MR. LEE:  YES, YOUR HONOR.

18              **RECROSS-EXAMINATION**

19    BY MR. LEE:

20    Q    LET'S TALK ABOUT WHERE YOU JUST LEFT OFF.  CAN

21    I HAVE CLAIM 1 OF THE '460 PATENT ON THE SCREEN.

22         OKAY.  DR. YANG, THE BLOWUP, AND YOU SEE

23    IT SAYS, "A DATA TRANSMISSION METHOD."  DO YOU SEE

24    THAT?

25    A    YES.
```

2491

```
 1    Q    AND THEN THERE'S ONE, TWO, THREE, FOUR, FIVE
 2    PARAGRAPHS; CORRECT?
 3    A    YES.
 4    Q    AND WE'VE CALLED THEM A, B, C, D, AND E;
 5    CORRECT?
 6    A    YES, I RECALL THAT.
 7    Q    NOW, YOU AGREE WITH ME THAT A NEEDS TO BE
 8    PERFORMED BEFORE D; CORRECT?
 9    A    YES, IT LOGICALLY SEEMS LIKE YOU HAVE TO ENTER
10    THAT MODE BEFORE YOU CAN TRANSMIT AN E-MAIL.  SO I
11    THINK THERE IS SOME LOGICAL CONNECTION THERE
12    BETWEEN THOSE TWO.
13    Q    AND B NEEDS TO BE PERFORMED BEFORE E; CORRECT?
14    A    RIGHT.  IT SPECIFICALLY MENTIONED A SECOND
15    E-MAIL TRANSMISSION SUB-MODE, ONE WHERE YOU'RE
16    ENTERING AND ONE WHERE YOU'RE EXITING.
17    Q    BUT WHEN YOU GET TO B AND C WHERE YOU SAY THE
18    WORDS DISPLAYING AN IMAGE FOLLOWED BY A DIFFERENT
19    STEP THAT SAYS SEQUENTIALLY DISPLAYING OTHER
20    IMAGES, YOU FIND NO LOGIC THAT REQUIRES THOSE STEPS
21    TO OCCUR IN AN ORDER; CORRECT?
22    A    CORRECT, BECAUSE THEY'RE NOT MENTIONED IN THE
23    SAME MODE.
24    Q    NOW, DR. YANG, YOU KNOW THAT YOUR -- THAT THE
25    COURT HAS INSTRUCTED THE JURY TO GIVE THESE TERMS
```

1    THEIR PLAIN MEANING; CORRECT?

2    A    OKAY, YES.

3    Q    SO THAT WORDS LIKE OTHER THAN IMAGES ARE GIVEN

4    THE PLAIN, EVERY DAY MEANING TO FOLKS JUST LIKE US;

5    CORRECT?

6    A    YES.

7              MR. LEE:  NOTHING FURTHER, YOUR HONOR.

8              THE COURT:  ALL RIGHT.  ANY REDIRECT?

9              MR. JOHNSON:  NO, YOUR HONOR.

10             THE COURT:  OKAY.  MAY THIS WITNESS BE

11   EXCUSED AND IS IT SUBJECT TO RECALL?

12             MR. JOHNSON:  HE MAY BE EXCUSED, AND HE

13   IS SUBJECT TO RECALL, YOUR HONOR.

14             THE COURT:  OKAY.  YOU'RE EXCUSED, BUT

15   YOU'RE SUBJECT TO RECALL.

16             THE WITNESS:  THANK YOU.

17             THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.

18   IT'S 11:59, SO LET'S JUST GO AHEAD -- YOU ARE FREE

19   TO LEAVE.  IT'S 11:59.  WE SHOULD GO AHEAD AND TAKE

20   OUR BREAK AND RATHER THAN CALLING A WITNESS FOR A

21   MINUTE.

22             PLEASE KEEP AN OPEN MIND.  DON'T DISCUSS

23   THE WITH ANYONE, AND PLEASE DON'T READ ABOUT THE

24   CASE OR DO ANY RESEARCH.

25             IF YOU WOULD PLEASE LEAVE YOUR NOTEBOOKS

2493

```
 1        IN THE JURY ROOM.

 2              THANK YOU.

 3              (WHEREUPON, THE FOLLOWING PROCEEDINGS

 4        WERE HELD OUT OF THE PRESENCE OF THE JURY:)

 5              THE COURT:  OKAY.  WILL THE SCHEDULE OF

 6        WITNESSES THEN BE AS ORIGINALLY PLANNED?

 7              MR. VERHOEVEN:  YOUR HONOR, I'M GOING TO

 8        MEET AND CONFER RIGHT NOW WITH OPPOSING COUNSEL.

 9        WE HAVE ONE WITNESS WHO HAS TO GET OFF THE STAND

10        AND WITH THE WAY, HOW LONG THIS IS TAKING, WE MAY

11        HAVE TO MOVE DR. WILLIAMS A LITTLE BIT LATER SINCE

12        HE GOT MOVED ALREADY.  I'LL MEET AND CONFER.

13              THE COURT:  THAT'S FINE.  JUST LET US

14        KNOW.

15              MR. MCELHINNY:  ON THIS ISSUE, YOUR

16        HONOR.

17              THE COURT:  WHAT?

18              MR. MCELHINNY:  WHILE WE'VE BEEN SITTING

19        HERE TODAY, SAMSUNG HAS MADE DISCLOSURE,

20        DISCLOSURE, SO WITH DOCUMENTS AND TESTIMONY, FOR A

21        TOTAL NOW OF 22 WITNESSES.

22              THE COURT:  I DON'T HAVE 22.

23              MR. MCELHINNY:  THEY'VE BEEN DISCLOSED

24        WHILE WE'VE BEEN SITTING HERE THIS MORNING, YOUR

25        HONOR.  WE ONLY HAVE WITNESS ORDER THAT GETS US
```

2494

```
1    THROUGH THE NEXT TWO.  SO THEY --
2              MR. VERHOEVEN:  WE'RE GOING TO --
3              MR. MCELHINNY:  SO WE'RE GETTING GAMED
4    HERE, YOUR HONOR, AGAIN.  WE DON'T HAVE A
5    REALISTIC --
6              THE COURT:  LET ME STOP YOU.  WHO IS ON
7    NEXT?  CAN WE AT LEAST FIGURE OUT FOR TODAY WHAT
8    OUR ORDER IS GOING TO BE.  THAT WOULD BE HELPFUL.
9              MR. VERHOEVEN:  YES, YOUR HONOR, I JUST
10   WOULD LIKE TO CONFER, IF I MIGHT, WITH COUNSEL
11   ABOUT THEIR ANTICIPATED LENGTH OF CROSS AND MY
12   ANTICIPATED LENGTH OF DIRECT TO SEE IF THERE'S ONE
13   WITNESS, SO WE MAY HAVE TO CHANGE THINGS.
14             CAN I HAVE ONE SECOND TO DO THAT?
15             THE COURT:  YES, PLEASE.
16             (DISCUSSION OFF THE RECORD BETWEEN
17   COUNSEL.)
18             MR. VERHOEVEN:  YOUR HONOR, WE'VE
19   CONFERRED, AND WE'RE ALL OKAY WITH A SLIGHTLY
20   DIFFERENT ORDER.
21             THE COURT:  OKAY.
22             MR. VERHOEVEN:  SO WE'RE GOING TO BE
23   DOING WANG NEXT.
24             THE COURT:  OKAY.
25             MR. VERHOEVEN:  AND THEN FIDLER.
```

2495

```
 1            THE COURT:  OKAY.

 2            MR. VERHOEVEN:  AND THEN SHERMAN.

 3            THE COURT:  FINE.

 4            MR. VERHOEVEN:  AND THEN WE'RE MOVING

 5   WILLIAMS TO AFTER THAT.  SO THAT SHOULD TAKE US

 6   EASILY THROUGH THE END OF THE DAY.

 7            THE COURT:  THAT'S FINE.  I THOUGHT YOU

 8   NEEDED PALTIAN AND ZORN BEFORE WILLIAMS.

 9            MR. VERHOEVEN:  I MISSPOKE, YOUR HONOR.

10   YOU'RE ABSOLUTELY RIGHT.  THAT'S 13 MINUTES OF

11   TIME.

12            THE COURT:  YOU WANT TO SQUEEZE THAT IN?

13   CAN WE SQUEEZE THOSE TWO IN?

14            MR. VERHOEVEN:  YES, YOUR HONOR.

15            THE COURT:  SO WE'LL SAY PALTIAN IS FOUR,

16   ZORN IS FIVE, AND DR. WILLIAMS IS SIX.

17            MR. VERHOEVEN:  RIGHT.  AND THOSE TWO

18   ARE -- THEY'RE JUST DEPO VIDEOS.

19            THE COURT:  OKAY.  WE SHOULD HOPEFULLY BE

20   ABLE TO DO THAT.  OKAY.

21            MR. MCELHINNY:  BUT THAT DOESN'T ADDRESS

22   MY ISSUE, YOUR HONOR.  THAT MEANS WE DON'T -- WE'VE

23   OUTRUN THEIR ROLLING SEVEN.  WE DON'T KNOW WHO

24   THEY'RE CALLING TOMORROW.  LITERALLY THEY HAVE US

25   DOING, AND YOU DOING DOCUMENTS AND HIGH PRIORITY
```

2496

```
 1    OBJECTIONS NOW FOR ADDITIONAL WITNESSES THAT THEY
 2    CAN'T CALL.  I MEAN, THEY DON'T HAVE TIME TO DO
 3    THAT.
 4              THE COURT:  HOW MANY --
 5              MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS
 6    SOME OF THEM --
 7              THE COURT:  I'M SORRY.  HOW MANY
 8    OBJECTIONS -- HOW MANY OBJECTIONS AND RESPONSES
 9    WERE FILED AS TO HOW MANY WITNESSES FOR TOMORROW?
10              MR. MCELHINNY:  WE'VE RUN BEYOND THEM,
11    YOUR HONOR.
12              THE COURT:  NO, I MEAN FOR TOMORROW, WHAT
13    WAS FILED AT 10:30.  I DIDN'T SEE ANYTHING.
14              MS. MAROULIS:  YOUR HONOR, FOR TOMORROW
15    WE FILED OBJECTIONS FOR VAN DAM, AGNETTA, GRAY,
16    HOWARTH, NISHIBORI, O'BRIEN, AND TEECE.
17              AND TODAY THIS MORNING WE MADE DISCLOSURE
18    FOR POTENTIAL THURSDAY WITNESSES AND MANY OF THEM
19    ARE REALLY SHORT DESIGNATION DEPOSITIONS OR THEY'RE
20    QUICK WITNESSES TO GET SOME DOCUMENTS IN.
21              MR. MCELHINNY:  THERE ARE 15 LIVE
22    WITNESSES, YOUR HONOR, AND SEVEN DEPOSITIONS.  ALL
23    I REALLY WANT IS ON ORDER, YOUR HONOR, IF WE CAN
24    JUST GET AN ORDER BETWEEN NOW AND THURSDAY, THEN
25    WE'LL ALL KNOW THE ORDER.
```

```
 1                THE COURT:  WELL, WERE OBJECTIONS FILED
 2      FOR THE WITNESSES FOR TOMORROW?
 3                MS. MAROULIS:  YES, YOUR HONOR.  THOSE
 4      WITNESSES HAVE BEEN BRIEFED.
 5                THE COURT:  I'M SORRY.
 6                MS. MAROULIS:  TOMORROW'S WITNESSES HAVE
 7      BEEN BRIEFED.
 8                THE COURT:  OKAY.  AND HOW MANY?  HOW
 9      MANY WITNESSES?
10                MS. MAROULIS:  IT'S ABOUT SEVEN OR EIGHT.
11                THE COURT:  THAT'S NORMAL.  I'M NOT SURE
12      WHAT YOU'RE COMPLAINING ABOUT.
13                MR. MCELHINNY:  NO, BUT, YOUR HONOR, THEN
14      TODAY WE GOT DISCLOSURES FOR ANOTHER EIGHT FOR THE
15      FOLLOWING DAY.
16                MS. MAROULIS:  BUT THOSE ARE GOING TO BE
17      BRIEFED TOMORROW PER OUR SCHEDULE.  WE HAVE TO
18      DISCLOSE TWO DAYS IN ADVANCE.
19                MR. MCELHINNY:  BUT EVEN FOR TOMORROW,
20      YOUR HONOR, WE DON'T KNOW THE ORDER IN WHICH
21      THEY'RE CALLING WITNESSES.  WE'VE OUTRUN THEIR
22      ORDER LIST.
23                MS. MAROULIS:  WE TYPICALLY FILE AND THEY
24      HAVE FILED THE 7:00 P.M. DISCLOSURE --
25                THE COURT:  I KNOW.  I DON'T SEE WHAT
```

1    YOU'RE COMPLAINING ABOUT.  THEY'RE FOLLOWING THE

2    SAME PROCEDURE YOU FOLLOWED IN THE LAST TWO WEEKS.

3            MR. MCELHINNY:  BECAUSE THE SEVEN

4    WITNESSES HAS BEEN -- TAKES US THROUGH ONE OR TWO

5    DAYS, YOUR HONOR.  WE DON'T THINK THIS IS

6    REALISTIC.  THEY CAN'T CALL 20 WITNESSES IN THE

7    TIME THAT THEY HAVE REMAINING.  THIS IS -- THIS IS

8    AN EFFORT TO DISGUISE WHO ACTUALLY IS GOING TO BE

9    CALLED BECAUSE WE DON'T KNOW.

10           MS. MAROULIS:  YOUR HONOR, YESTERDAY

11   NIGHT WE FILED A LIST OF EIGHT WITNESSES.  WE'RE

12   GOING TO UPDATE IT TODAY.  WE CAN DO MORE THAN

13   SEVEN, MAYBE ONE OR TWO MORE.  BUT WE'VE BEEN

14   FOLLOWING THE SAME PROCEDURES BOTH FOR THE WITNESS

15   DISCLOSURE --

16           THE COURT:  YEAH, I KNOW.

17           MR. MCELHINNY:  THE PURPOSE OF THE

18   ROLLING, YOUR HONOR, WAS TO BE TWO DAYS IN ADVANCE,

19   AND WE ARE NO LONGER TWO DAYS IN ADVANCE ON THE

20   WITNESS LIST.

21           THE COURT:  I THOUGHT THE ROLLING WAS

22   7:00 P.M.

23           MR. MCELHINNY:  BUT IT WAS TO PREDICT.

24           MS. MAROULIS:  YOUR HONOR ASKED US

25   10:00 A.M., AND WE'VE BEEN DISCLOSING EXHIBITS AT

```
 1    10:00 A.M. IN THE MORNING, BUT THE ROLLING LIST IS

 2    7:00 P.M. THE NIGHT BEFORE.

 3              MR. MCELHINNY:  WE HAVE THE NAMES OF THE

 4    WITNESSES.  WE DON'T HAVE THE ORDER, YOUR HONOR.

 5              THE COURT:  I'M NOT GOING TO CHANGE THE

 6    PROCEDURE THAT EXISTS.  IT SOUNDS LIKE IT'S THE

 7    SAME PROCEDURE THAT'S BEEN IN EFFECT THE LAST FEW

 8    WEEKS.

 9              ALL RIGHT.  ANYTHING ELSE?  I'M AFRAID TO

10    ASK.

11              MR. MCELHINNY:  THERE -- WE -- IN THE

12    ORDER IN WHICH THEY'RE NOW DOING IT, YOUR HONOR, WE

13    WILL GET TO THE FIDLER DEPOSITION THIS AFTERNOON.

14              THE COURT:  IT LOOKS LIKE IT'S BASED ON

15    THIS ORDER.

16              SPEAKER1:  AND I JUST, TO PUT IT ON YOUR

17    HONOR'S RADAR, THERE ARE -- GIVEN THE RULINGS THAT

18    YOU MADE LAST NIGHT, THERE ARE A NUMBER OF

19    OBJECTIONS DOCUMENTS.

20              I'M NOT SURE WHICH DOCUMENTS THEY'RE

21    GOING TO OFFER.  AS YOUR HONOR MAY RECALL, YOU

22    STRUCK THE DECLARATION, BUT YOU HAVE LEFT OPEN THE

23    QUESTION OF THE ATTACHMENTS TO THE DECLARATION.

24              SO WE HAVE CONTINUING OBJECTIONS TO

25    THOSE.  I'M PREPARED TO RAISE -- I'M PREPARED TO
```

2500

```
 1    ARGUE THOSE AFTER THEY SHOW THE DEPOSITION ITSELF,

 2    BUT WE ALSO HAVE AN OBJECTION TO ONE PARTICULAR

 3    CLIP IN THE DEPOSITION WHICH WILL NEED TO BE

 4    RESOLVED BEFORE, YOUR HONOR.

 5              THE COURT:  WHAT IS THAT?  YOU'RE ASKING

 6    FOR RECONSIDERATION?

 7              MR. MCELHINNY:  NO, I AM NOT, YOUR HONOR.

 8              THE COURT:  YES, YOU ARE.

 9              MR. MCELHINNY:  NO, NO.  I'VE GOT YOUR

10    RULING.  WE MADE THE TWO HIGH PRIORITY OBJECTIONS.

11              THE COURT:  I KNOW.

12              MR. MCELHINNY:  BUT NOW I'M TALKING ABOUT

13    THINGS THAT WERE NOT COVERED BY THE HIGH PRIORITY

14    OBJECTIONS.  I AM NOT REARGUING ANY OF YOUR

15    OBJECTIONS.

16              THE COURT:  SO WHAT'S THE ISSUE?

17              MR. MCELHINNY:  THE SPECIFIC ISSUE, YOUR

18    HONOR, IS PAGES 26, LINE 16 THROUGH 27 TO 09 IS A

19    VIDEO SHOT TAKEN AT A DEPOSITION OF A TABLET MODEL,

20    AND WE OBJECT TO TRYING TO BRING IN -- MR. FIDLER

21    IS A PAID CONSULTANT OF THEIRS.  THEY HAVE HIM

22    UNDER THEIR CONTROL.  THEY COULD BRING THE ACTUAL

23    MODEL AND WE OBJECT TO SHOWING AN INDISTINCT, QUICK

24    VIDEO CAMERA SHOT OF THE MODEL RATHER THAN HAVING

25    THE ACTUAL DEVICE HERE.
```

```
 1              TO REFRESH YOUR HONOR'S RECOLLECTION,

 2    THEIR EXPERT, MR. SHERMAN, IS GOING TO RELY ON A

 3    1984 MOCKUP OF THE FIDLER DEVICE.

 4              THEY APPARENTLY ARE NOT BRINGING IT TO

 5    TRIAL.  THEY APPARENTLY ARE NOT GOING TO OFFER IT

 6    INTO EVIDENCE.  AND INSTEAD THEY WANT TO SHOW THIS

 7    VIDEO CLIP OF A PICTURE THAT WAS TAKEN OF IT, AND

 8    IN THE DECLARATIONS, IN THE EXHIBITS TO THE

 9    DECLARATION, THEY WERE TRYING TO PUT IN PICTURES OF

10    A DIFFERENT MODEL WHICH IS NOT THE MODEL ON WHICH

11    MR. SHERMAN HAS RELIED OR DISCLOSED OR EXPOSED ANY

12    TESTIMONY, AND I JUST NEED -- I NEED TO BE ABLE TO

13    MAKE THAT -- TO BRING THAT --

14              THE COURT:  WHY ISN'T THAT JUST A

15    CROSS-EXAMINATION POINT FOR YOU?

16              MR. MCELHINNY:  CROSS-EXAMINATION THAT'S

17    NOT THE SAME MODEL?  THE SAME --

18              THE COURT:  IT'S NOT THE SAME MODEL AND

19    IT'S NOT THE ONE THAT HE RELIED ON IN HIS REPORT.

20    THAT SEEMS LIKE CROSS-EXAMINATION.

21              MR. MCELHINNY:  YOUR HONOR, YOUR HONOR --

22    AGAIN, I DON'T WANT TO TAKE YOUR TIME WITH

23    MR. LEE'S ARGUMENT, BUT WE'VE BEEN RUNNING BY A SET

24    OF RULES HERE AND THE RULES HAVE BEEN IF IT HASN'T

25    BEEN DISCLOSED, IF IT HASN'T BEEN RELIED ON, IT
```

```
 1    HASN'T BEEN COMING INTO EVIDENCE CERTAINLY IN OUR
 2    CASE.
 3              THE COURT:  I ASSUME YOU ALL WERE AT THE
 4    DEPOSITION.  YOU HAD ACCESS TO THE DEPOSITION
 5    VIDEO.
 6              MR. MCELHINNY:  YOUR HONOR, IT WAS NOT
 7    DISCLOSED AS PRIOR ART.  IT'S NOT DISCLOSED AS
 8    ANYTHING THEIR EXPERT RELIED UPON.
 9              THE COURT:  SO WHAT -- WHY IS IT BEING
10    BROUGHT IN?  FOR WHAT PURPOSE?
11              MR. MCELHINNY:  THAT'S THE -- IT CAN'T BE
12    BROUGHT IN FOR ANY PURPOSE, BUT I DON'T KNOW THE
13    ANSWER OF WHY THEY'RE DOING THAT.
14              MR. VERHOEVEN:  YOUR HONOR, MR. MCELHINNY
15    JUST REPRESENTED THAT THIS WITNESS WAS UNDER OUR
16    CONTROL AND WE COULD HAVE HIM COME HERE AND BRING
17    THE MODEL, OR BRING HIS PROTOTYPE, HIS MODEL.
18              IN FACT, WE -- HE HAD AGREED TO COME
19    HERE, YOUR HONOR, BUT RIGHT BEFORE TRIAL, SENT US
20    AN E-MAIL SAYING, "I MET TODAY WITH THE EXECUTIVE
21    DIRECTOR OF REYNOLD'S JOURNALISM INSTITUTE TO
22    DISCUSS YOUR REQUEST.  WE CONCURRED IT WOULD NOT BE
23    IN THE BEST INTERESTS OF RJI FOR ME TO TESTIFY IN
24    THIS CASE."
25              THE COURT:  IS THAT HIS EMPLOYER?
```

```
 1              MR. ZELLER:  IT IS, YOUR HONOR.

 2              MR. VERHOEVEN:  "THIS DECISION IS NOT

 3    BASED SOLELY ON THE DEMAND FOR MY TIME.  THE RJI

 4    MISSOURI SCHOOL OF JOURNALISM AND UNIVERSITY OF

 5    MISSOURI ARE IN THE MIDST OF SENSITIVE NEGOTIATIONS

 6    THAT COULD BE JEOPARDIZED IF I'M PERCEIVED AS BEING

 7    HOSTILE TOWARD APPLE."

 8              MR. MCELHINNY:  YOUR HONOR, AT HIS

 9    DEPOSITION --

10              MR. VERHOEVEN:  HE AGREED TO COME.

11              MR. MCELHINNY:  -- AT HIS DEPOSITION.

12              MR. VERHOEVEN:  CAN I FINISH, PLEASE?

13              MR. MCELHINNY:  PLEASE.

14              MR. VERHOEVEN:  HE AGREED TO COME.  HE

15    WANTED TO COME, AND BECAUSE OF THESE SUPPOSED

16    SENSITIVE NEGOTIATIONS WITH APPLE, AT THE LAST

17    MINUTE, HE REFUSED TO COME.  HE IS NOT UNDER OUR

18    CONTROL AND HE HAS EXCLUSIVE POSSESSION OF THAT,

19    WHAT YOU SEE IN THAT VIDEOTAPE.  IT WOULD NOT ALLOW

20    US TO HAVE IT AND HE'S REFUSING TO COME.  WE --

21              THE COURT:  THAT VIDEO IS COMING IN.

22              MR. MCELHINNY:  YOUR HONOR --

23              THE COURT:  WHAT?

24              MR. MCELHINNY:  YOUR HONOR, THE VIDEO IS

25    NOT OF THE ART THAT MR. SHERMAN --
```

2504

```
1            THE COURT:  THAT'S CROSS-EXAMINATION.
2     IT'S CROSS-EXAMINATION.  OKAY?
3            MR. MCELHINNY:  YOUR HONOR, YOU'RE
4     FORCING US TO USE CROSS-EXAMINATION TO DEAL WITH
5     NONDISCLOSURE ISSUES AND THAT IS A CHANGE.  THAT'S
6     A CHANGE IN THE RULES THAT YOUR HONOR HAS BEEN
7     PLAYING BY.
8            THE COURT:  IT'S IN THE -- WASN'T ONE OF
9     YOUR LAWYERS AT THE DEPOSITION?  I MEAN --
10           MR. MCELHINNY:  OF COURSE.
11           THE COURT:  AND YOU RELIED UPON ALL OF
12    THOSE THINGS AS EXHIBITS DURING THE DEPOSITION.
13           MR. VERHOEVEN:  THEY ACTUALLY MADE A
14    MODEL OF THE ACTUAL THING THAT YOU SEE SO THAT THEY
15    COULD HAVE AN EXACT REPLICA OF IT, YOUR HONOR, AND
16    NOW THEY'RE TRYING TO EXCLUDE US FROM SHOWING THE
17    BEST EVIDENCE OF WHAT HE HAD.
18           MR. MCELHINNY:  THE PICTURES ARE NOT OF
19    THAT MODEL.  THEY'RE OF A DIFFERENT MODEL.
20           THE COURT:  CROSS-EXAMINATION.
21           MR. MCELHINNY:  THANK YOU, YOUR HONOR.
22           THE COURT:  OKAY.  THAT'S THE RULING.
23    THE VIDEOS ARE COMING IN.
24           (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)
25
```

1                    **AFTERNOON SESSION**

2

3                    (WHEREUPON, COURT CONVENED AND THE

4      FOLLOWING PROCEEDINGS WERE HELD IN THE PRESENCE OF

5      THE JURY:)

6                    THE COURT:  OKAY.  WELCOME BACK.  PLEASE

7      TAKE A SEAT.

8                    MS. MAROULIS:  YOUR HONOR, IF YOU HAVE A

9      MINUTE, WE HAVE A COUPLE OF MINOR ADMINISTRATIVE

10     THINGS.

11                   THE FIRST ONE IS WE'LL HAVE OUR FIRST

12     TRANSLATING WITNESS, AND WE WANT TO FIND OUT WHERE

13     THE MAIN INTERPRETER AND CHECK INTERPRETER WILL

14     SIT.  I CONFIRMED WITH MR. JACOBS.

15                   THE COURT:  THAT'S FINE.

16                   MS. MAROULIS:  SO WE'LL HAVE THE MAIN

17     INTERPRETER RIGHT NEXT TO THE WITNESS AND THE TWO

18     CHECK INTERPRETERS OVER THERE.

19                   THE COURT:  THAT'S FINE.  IS THERE THAT

20     MUCH ROOM FOR FOLKS.

21                   MS. MAROULIS:  YESTERDAY, SAMSUNG PLAYED

22     SOME COUNTER-DESIGNATIONS OF DEPOSITIONS, AND WE

23     WOULD LIKE TO LODGE THOSE THE SAME WAY APPLE DID,

24     AND I PROVIDED COPIES TO OPPOSING COUNSEL.  THESE

25     LODGING EXHIBITS ARE JUN WON LEE, DEFENDANT'S

2506

```
 1     EXHIBIT 800; MR. DONG HOON CHANG --
 2               THE COURT:  I'M SORRY.  GIVE ME JUST ONE
 3     MINUTE SO I CAN ADD IT TO -- IS THERE AN EXHIBIT
 4     NUMBER ASSOCIATED WITH THAT, OR NO?
 5               MS. MAROULIS:  IT IS, BECAUSE WE'RE
 6     LODGING THEM, THEY HAVE A DIFFERENT NUMBER, SO IT'S
 7     DEFENDANT'S EXHIBIT 800.
 8               THE COURT:  OKAY.  DX 800, OKAY.
 9               MS. MAROULIS:  AND THEN DONG HOON CHANG
10     IS DX 801.
11               THE COURT:  OKAY.
12               MS. MAROULIS:  AND MR. TIMOTHY BENNER IS
13     DX 802.
14               THE COURT:  ALL RIGHT.  THOSE ARE ALL
15     LODGED BUT NOT ADMITTED.
16               MS. MAROULIS:  THANK YOU, YOUR HONOR.
17               THE COURT:  NOW, I CAN FORESEE AN ISSUE
18     COMING UP WITH FIDLER, AND I JUST WANTED TO GIVE
19     APPLE NOTICE THAT IF YOU ARE GOING TO CREATE THE
20     INFERENCE THAT SOMEHOW SAMSUNG CHOSE NOT TO CALL
21     MR. FIDLER, THEN I THINK THAT'S INVITING THAT
22     LETTER TO COME IN BECAUSE I THINK THAT WOULD BE
23     MISLEADING TO THE JURY.
24               SO I JUST WANTED TO GIVE YOU NOTICE OF
25     THAT SO WE DON'T HAVE TO FIGHT IT OUT IN FRONT OF
```

```
1    THE JURY.
2              BUT I THINK IT WOULD BE MISLEADING TO SAY
3    THAT THEY'RE SOMEHOW HIDING HIM.  OKAY?
4              MR. MCELHINNY:  IN FAIR -- THAT'S FINE,
5    YOUR HONOR.  BUT FOR THE RECORD, I'VE NEVER SEEN
6    THAT LETTER.  I DON'T KNOW WHAT COUNSEL IS TALKING
7    ABOUT.  AGAIN, IT SORT OF VIOLATES THE NO
8    REPRESENTATIONS RULE, BUT I UNDERSTAND WHAT YOUR
9    HONOR IS TELLING ME.
10             THE COURT:  OKAY.  SO WHO --
11             MR. MCELHINNY:  SO IT'S CLEAR, YOUR
12   HONOR, THERE IS NO CROSS-EXAMINATION OF MR. FIDLER.
13   HE'S NOT GOING TO BE HERE.
14             THE COURT:  I KNOW.  I KNOW.  BUT I'M
15   JUST SAYING, IN THE EVENT THAT ISSUE COMES UP, I
16   THINK THAT FOR COMPLETENESS, THAT LETTER WOULD THEN
17   HAVE TO COUNTER ANY INFERENCE THAT HE WAS --
18             MS. KREVANS:  YOUR HONOR, IF I MAY,
19   BECAUSE THIS MAY COME UP IN THE EXAMINATION OF
20   MR. SHERMAN AS WELL, AND I WANT TO MAKE SURE I KNOW
21   WHERE TO DRAW THE LINE.
22             MR. SHERMAN, WHO IS AN EXPERT AND DOES
23   HAVE TESTIMONY THAT HE'S GOING TO GIVE ABOUT
24   PHOTOGRAPHS OF ONE OF THE FIDLER DEVICES, NEVER
25   WENT TO WHERE MR. FIDLER LIVES AND KEEPS THE DEVICE
```

2508

```
1    TO LOOK AT THE ACTUAL DEVICE.

2              SO HE'S ONLY SEEN THE PHOTOS.  HE'S NEVER

3    SEEN THE ACTUAL DEVICE.

4              AND I -- THAT'S SOMETHING HE WAS

5    QUESTIONED ABOUT IN HIS DEPOSITION, AND HE AGREED

6    HE DID NOT GO LOOK AT THE ORIGINAL DEVICE, AND I

7    WANT TO BE ABLE TO ASK HIM THAT QUESTION.

8              THE COURT:  THAT'S FAIR.

9              MS. KREVANS:  JUST THE DEVICE.  THANK

10   YOU, YOUR HONOR.

11             THE COURT:  THAT'S FAIR.  IT'S JUST IF

12   THERE'S ANY INFERENCES THAT FOLKS ARE TRYING TO

13   DRAW AS TO WHY FIDLER IS NOT HERE TODAY, THEN THAT

14   LETTER WILL BE COMING IN.

15             OKAY.

16             MR. MCELHINNY:  I'M SORRY.  I JUST WANT

17   TO -- IN THE COUNTER-DESIGNATIONS THAT WERE

18   EXCHANGED --

19             THE COURT:  UM-HUM.

20             MR. MCELHINNY:  -- THERE IS -- MR. FIDLER

21   DOES ACKNOWLEDGE THAT HE WAS COMPENSATED FOR HIS

22   TIME.  EVERY WITNESS HAS TESTIFIED TO THAT.  BUT

23   THAT'S ALREADY IN THE DESIGNATIONS.

24             THE COURT:  THAT'S FINE.

25             MR. MCELHINNY:  THANK YOU.
```

2509

```
 1              MR. JACOBS:  WITH RESPECT TO THE NEXT

 2    WITNESS, YOUR HONOR, MR. WANG, YOU'VE SEEN A

 3    PREVIEW IN SAMSUNG'S -- YOU'VE SEEN A PREVIEW IN

 4    SAMSUNG'S DEMONSTRATIVES OF WHAT SAMSUNG MAY BE

 5    INTENDING TO ELICIT FROM HERE.

 6              THE COURT:  OKAY.  GIVE ME JUST ONE

 7    SECOND, PLEASE.

 8              OKAY.  IS THERE A SPECIFIC ONE THAT YOU

 9    HAVE IN MIND?

10              MR. JACOBS:  AND THE HEADS UP IS THAT AS

11    THE COURT HAS SEEN WITH PRIOR RULINGS, FOR EXAMPLE,

12    ON MR. LUCENTE, THERE WAS A PRETTY DRAMATIC FAILURE

13    OF DISCLOSURE ON SAMSUNG'S PART WITH RESPECT TO

14    NON-INFRINGEMENT ON ANYTHING RELATED TO ICONS, AND

15    I'LL REMIND THE COURT OF THAT IN ADVANCE SO THAT IF

16    MS. WANG STARTS TALKING ABOUT NON-INFRINGEMENT AND

17    I STAND UP, IT WON'T BE A SURPRISE TO ANYBODY.

18              THE COURT:  BUT GIVE ME A HEADS UP.  IS

19    THERE A PARTICULAR EXHIBIT IN THE DIRECT MATERIALS

20    THAT YOU HAVE SPECIFIC ISSUES WITH, OTHER THAN

21    WHAT'S ALREADY BEEN RULED ON?

22              MR. JACOBS:  THE -- WHAT IS STILL IN THE

23    DEMONSTRATIVES, YOUR HONOR, ARE PICTURES OF

24    SLIDES -- SORRY, PICTURES OF SCREENS FROM VARIOUS

25    PHONES.  WE DON'T KNOW WHAT MS. WANG WILL SAY ABOUT
```

2510

```
 1    THOSE.
 2              THE COURT:  I'M SORRY.  I DON'T THINK I
 3    HAVE HER DIRECT, I MEAN HER CROSS EXHIBIT.  I HAVE
 4    THE DIRECT.  SO THIS JUST REPLACES WHAT WAS IN HERE
 5    UNDER 3972, DX?
 6              THE CLERK:  YES, YOUR HONOR.
 7              THE COURT:  WHAT -- DO I HAVE HER -- CAN
 8    I HAVE HERS, PLEASE.
 9              WAS THERE ANYTHING IN PARTICULAR --
10              MR. JACOBS:  NO, YOUR HONOR.  FRANKLY, I
11    CAN'T IMAGINE WHAT SHE'S GOING TO SAY THAT'S
12    HELPFUL TO SAMSUNG'S CASE THAT DOESN'T FALL INTO A
13    PROHIBITED ZONE.  SO NOT KNOWING WHAT THEY'RE GOING
14    TO DO, I THOUGHT I WOULD FLAG IT.
15              IF IT'S INDEPENDENT DEVELOPMENT, THAT'S
16    BEEN ADDRESSED BY PRIOR COURT RULINGS.  IF THIS
17    ISN'T THE SAME, IT'S DIFFERENT, I THINK THAT'S BEEN
18    ADDRESSED BY PRIOR COURT RULINGS.  IF IT'S THEY
19    MADE ME DO IT, MAYBE SHE CAN SAY THAT.
20              THE COURT:  OKAY.  LET ME HEAR WHAT
21    THE -- TELL ME, YOU -- THE TOPICS FOR WHICH YOU
22    THINK SHE CANNOT TESTIFY.
23              MR. JACOBS:  WAS THAT ADDRESSED TO ME,
24    YOUR HONOR?
25              THE COURT:  WHAT ARE THE TOPICS FOR WHICH
```

2511

```
 1    YOU THINK SHE IS PRECLUDED FROM TESTIFYING?

 2              MR. JACOBS:  SHE CANNOT -- SO TO START

 3    WITH THE COURT'S RULINGS, SHE CANNOT OFFER

 4    EXPERT-LIKE TESTIMONY AT ALL.  IT LOOKED LIKE SHE

 5    WAS PRESENTING SOME HYPOTHETICALS IN THE SLIDES

 6    YOUR HONOR STRUCK A COUPLE OF THOSE THAT WE

 7    FLAGGED.

 8              THE COURT:  AND THEY'VE BEEN WHITED OUT.

 9              MR. JACOBS:  PERFECT.  AND THEN I BELIEVE

10    IF SHE SPEAKS TO SPECIFIC DIFFERENCES BETWEEN HER

11    ICON DESIGNS OR SAMSUNG'S ICON DESIGNS AND THE

12    APPLE ICON DESIGNS, THAT THAT IS PRECLUDED BY

13    SAMSUNG'S FAILURE OF DISCLOSURE, AND I BELIEVE THE

14    COURT'S PRIOR RULINGS ON INDEPENDENT DEVELOPMENT

15    PRECLUDE HER FROM SAYING "I DIDN'T COPY."

16              THE COURT:  AND THE ICON, REMIND ME,

17    WHICH ORDER SAYS THAT NO DIFFERENCES CAN BE

18    IDENTIFIED WITH REGARD TO SAMSUNG ICONS AND THE

19    APPLE ICONS?

20              MR. JACOBS:  I THINK THE BEST PRECEDENT,

21    IF YOU WILL, IS THE LUCENTE ORDER BY JUDGE GREWAL,

22    WHICH PRECLUDED MOST OF LUCENTE'S TESTIMONY ON THE

23    GROUNDS THAT SAMSUNG PRE-CUTOFF INTERROGATORY

24    RESPONSE GAVE NO DETAILED RESPONSE ON WHY THE ICONS

25    WERE NON-INFRINGING.
```

2512

```
 1              THE COURT:  ALL RIGHT.  LET ME HEAR FROM
 2    MR. QUINN.  WHAT DO YOU INTEND TO ELICIT WITH
 3    REGARD TO THOSE THREE TOPICS.  WE MIGHT AS WELL
 4    HASH IT OUT NOW.
 5              MR. QUINN:  YES, YOUR HONOR.  MS. WANG IS
 6    THE DESIGNER AT SAMSUNG WHO DESIGNED THE ICONS, WHO
 7    DESIGNED THE LAYOUT OF THE MENU PAGE, WHICH APPLE
 8    WITNESSES HAVE SAID THEY THOUGHT WAS RIPPED OFF,
 9    THAT WAS A COPY OF THEIRS.
10              AND SHE WILL TESTIFY THAT SHE CREATED
11    THESE, HOW SHE CREATED THESE, THAT SHE DID NOT
12    REFER TO APPLE ICONS IN DESIGNING THE ICONS WHICH
13    SHE DESIGNED.
14              SHE WILL TESTIFY THAT SAMSUNG HAD USED
15    THESE ICONS BEFORE ON FEATURE PHONES.  SHE WILL
16    TESTIFY THAT THESE ARE KNOWN IN THE CITY, THE MA
17    BELL PHONE IS KNOWN IN THE INDUSTRY.
18              SHE WILL TESTIFY THE FLOWER ICON, FOR
19    EXAMPLE, THE GALLERY ICON, WHO THE GENESIS OF WAS,
20    THAT SHE DIDN'T LOOK AT THE APPLE FLOWER ICON.
21              THE GRID LAYOUT, WHY IT IS THE WAY IT IS
22    AS TO FUNCTIONALITY ISSUES, ABOUT WHY, PARTICULARLY
23    FOR A TOUCHSCREEN ICON, ICONS HAVE TO BE DESIGNED
24    IN A CERTAIN WAY, WHY THE COLORS SHE CHOSE WERE
25    USED, WHAT THE DECISION WAS FOR THOSE, THE DECISION
```

2513

```
 1    MAKING.
 2              THE COURT:  SO SHE'S NOT GOING TO DO ANY
 3    DIRECT COMPARISON BETWEEN SAMSUNG ICONS AND APPLE
 4    ICONS?
 5              MR. QUINN:  WELL, I -- I WAS, IN A COUPLE
 6    OF INSTANCES, GOING TO ASK HER TO LOOK AT THE
 7    CORRESPONDING APPLE ICON AND -- SHE IS A DESIGNER.
 8    THIS IS A WOMAN WHO HAS A DEGREE IN VISUAL
 9    COMMUNICATIONS AND HAS WORKED IN THAT AREA FOR OVER
10    TEN YEARS, AND SHE'S GOING TO POINT OUT DIFFERENCES
11    IN SOME OF THE ICONS.
12              THE COURT:  MR. JACOBS, IS THAT WHAT YOU
13    WERE CONCERNED ABOUT?
14              MR. JACOBS:  THAT WOULD BE THE, THE
15    SECOND PIECE OF WHAT I KNOW, YOUR HONOR.  THAT
16    WOULD BE THE DIFFERENT TESTIMONY.
17              WHAT WAS ALSO ADDRESSED IN THE LUCENTE
18    MOTION WAS INDEPENDENT DEVELOPMENT EVIDENCE, AND WE
19    HAVE NO DISCLOSURE FROM SAMSUNG OF AN INDEPENDENT
20    DEVELOPMENT STORY ON THEIR ICON LAYOUTS,
21    NOTWITHSTANDING RELEVANT INTERROGATORIES.
22              MR. ZELLER:  YOUR HONOR, IF I MAY JUST
23    ADD SOMETHING IN RESPONSE TO THIS AS WELL?
24              AS THE COURT WILL RECALL THAT WE DID
25    OBJECT TO APPLE'S EXPERT, SUSAN KARE, OFFERING
```

1    CERTAIN TESTIMONY THAT WAS NOT IN HER EXPERT REPORT

2    AND THE COURT WILL ALSO RECALL THAT SHE

3    SPECIFICALLY TALKED ABOUT THAT, THAT COMPARISON

4    DOCUMENT --

5             THE COURT:  LET ME ASK YOU, WERE THE

6    COMPARISONS OF SAMSUNG ICONS TO APPLE ICONS

7    STRICKEN FROM SAM LUCENTE'S REPORT?

8             MR. ZELLER:  NO, YOUR HONOR, THEY WERE

9    NOT.

10             THE COURT:  LET ME HEAR FROM MR. JACOBS.

11    DO YOU HAVE A COPY OF THAT?

12             MR. JACOBS:  YES.  IT'S MARKED UP, YOUR

13    HONOR.  I'VE KIND OF YELLOWED IT OUT WITH THE

14    PORTIONS THAT WERE STRICKEN.

15             THE COURT:  UM-HUM.  LET ME SEE THE

16    PARAGRAPH NUMBER, PLEASE, BECAUSE I --

17             MR. ZELLER:  AND TO BE CLEAR, THESE ARE

18    DIFFERENT COMPARISONS THAT WE'RE TALKING ABOUT.

19    AND WHAT I WOULD SAY TO YOUR HONOR IS THAT --

20             THE COURT:  WAIT.  ARE THEY COMPARISONS

21    OF ICONS?

22             MR. ZELLER:  YES.

23             THE COURT:  WHAT'S DIFFERENT ABOUT THEM?

24    THEY'RE DIFFERENT SPECIFIC ICONS OR --

25             MR. ZELLER:  THEY ARE COMPARISONS THAT

2515

```
 1    APPLE'S -- EXCUSE ME -- THAT SAMSUNG'S EXPERT DID

 2    THAT WERE STRICKEN.  SHE IS TALKING --

 3              THE COURT:  OKAY.  SO I'M NOT GOING TO

 4    LET HER THEN TRY TO GET IN WHAT WAS STRICKEN FROM

 5    AN EXPERT'S REPORT.  SO PLEASE DON'T GO THERE.

 6              MR. ZELLER:  YOUR HONOR, IF I MAY FINISH.

 7    THIS IS A DIFFERENT ISSUE.  THEY'RE FIXING AND

 8    MATCHING ISSUES AS THEY'VE DONE BEFORE.  MS. KARE

 9    GOT UP AND TESTIFED, THIS WAS NOT IN HER EXPERT

10    REPORT, THIS WAS NOT IN HER DEPOSITION --

11              THE COURT:  LET ME SEE THE LUCENTE

12    REPORT.

13              MR. ZELLER:  SHE GOT UP AND TESTIFIED

14    ABOUT THE COMPARISON DOCUMENT THAT APPLE HAS NOW

15    PUT IN FRONT OF THE JURY MANY TIMES.

16              THERE WAS NO NOTICE THAT THEY WERE EVER

17    GOING TO DO THAT.  THAT WAS NOT IN HER REPORT.  WE

18    OBJECTED TO IT.  THE COURT OVERRULED IT.  SHE IS

19    GOING TO BE ADDRESSING THOSE KINDS OF COMPARISONS.

20              THOSE ARE NOT IN THE SAMSUNG EXPERT

21    REPORT THAT THE COURT HAS IN FRONT OF IT.  SO THIS

22    IS DIRECTLY ADDRESSING SOMETHING THAT APPLE RAISED

23    FOR THE FIRST TIME DURING THIS TRIAL OVER OUR

24    OBJECTION.

25              THE COURT:  THAT'S ALL REGARDING PX 44,
```

2516

```
 1    RIGHT?
 2              MR. ZELLER:  YES, IT IS, YOUR HONOR.
 3              THE COURT:  OKAY.  GIVE ME ONE SECOND.  I
 4    BELIEVE THERE WAS ONLY ONE PAGE THAT HAD TO DO WITH
 5    ICONS IN PX 44.
 6              MR. ZELLER:  I BELIEVE THAT THERE WAS
 7    MORE THAN THAT, YOUR HONOR.  I KNOW THAT THEY
 8    CERTAINLY RAISED MORE THAN ONE OF THOSE PAGES.
 9              THE COURT:  I BELIEVE THE ONLY -- WELL,
10    I'LL TAKE A LOOK AT 131.  IT WAS ONLY PAGE 122 AND
11    131.  THOSE WERE THE ONLY ONES THAT CAME UP DURING
12    MS. KARE'S --
13              MR. ZELLER:  BUT THEY HAVE ALSO RAISED
14    THESE OTHER PAGES CONCERNING THE ICONS WITH OTHER
15    WITNESSES, YOUR HONOR.
16              THIS MORNING THEY PUT UP THE CAMERA.
17              THE COURT:  I THINK THIS MORNING IS
18    IRRELEVANT.  THAT HAS TO DO WITH THE SAMSUNG.  THIS
19    HAD NOTHING TO DO WITH ICONS.
20              MR. ZELLER:  AND THE COURT WILL RECALL,
21    TOO, THAT APPLE REQUESTED --
22              THE COURT:  AND YOU ALL PUT THE CAMERA
23    ICONS UP AND YOU WERE PUTTING UP THE ACCUSED
24    PHONES.
25              MR. ZELLER:  YOUR HONOR, THE COURT WILL
```

1    ALSO RECALL THAT OVER OUR OBJECTION, APPLE MOVED IN

2    THE ENTIRE DOCUMENT INTO EVIDENCE.

3         THE COURT:  IT'S AN ADMISSION AND IT

4    SHOULD HAVE BEEN PRODUCED PLAINTIFF THE PRELIMINARY

5    INJUNCTION.  IF I HAD HAD IT, IT WOULD HAVE BEEN

6    HIGHLY RELEVANT TO MY DECEMBER 2ND RULING.  ANYWAY,

7    GO AHEAD.

8         MR. ZELLER:  IF I MAY, YOUR HONOR?  THE

9    WITNESS IS GOING TO TALK ABOUT THESE PAGES THAT WE

10   ARE REBUTTING WHAT APPLE IS NOW RAISING DURING THIS

11   TRIAL.  AND THAT IS THE COMPARISON THAT WE'RE

12   TALKING ABOUT.  YOUR HONOR, JUST TO TALK ABOUT THE

13   PRELIMINARY INJUNCTION --

14        THE COURT:  WELL, I'M LOOKING AT PAGE 30,

15   THAT WAS ALL STRICKEN WITH REGARD TO THE MESSAGE

16   COMPARISON.  SO WHAT IS SHE GOING TO SAY ABOUT

17   THAT?

18        MR. ZELLER:  I'M SORRY, WE'RE TALKING

19   ABOUT THE --

20        THE COURT:  LUCENTE, YOUR EXPERT'S REPORT

21   SAMSUNG'S CORRECTED REBUTTAL EXPERT REPORT OF

22   SAM LUCENTE.  THAT WAS STRICKEN.  SO WHAT IS SHE

23   GOING TO SAY ABOUT THAT?

24        MR. ZELLER:  I'M SORRY, YOUR HONOR.  I

25   DON'T HAVE THE DOCUMENT.  THEY -- APPLE DIDN'T

```
1    PROVIDE WHATEVER IT IS THAT THEY HAVE PROVIDED TO

2    YOUR HONOR.

3             THE COURT:  OKAY.  THIS IS SAMSUNG'S

4    EXPERT REPORT FROM SAM LUCENTE.  I SAID I NEEDED

5    THAT FROM APPLE.

6             MR. ZELLER:  NO, YOUR HONOR, THAT'S

7    OBVIOUSLY -- WE DO NOT HAVE A COPY OF WHAT APPLE

8    HAS PROVIDED TO THE COURT.

9             THE COURT:  I'M SAYING LOOK AT PAGE 30,

10   I'M LOOKING AT YOUR EXPERT'S REPORT, PAGE 30.

11            MR. ZELLER:  YOUR HONOR, WHAT -- ALL I'M

12   TRYING TO SAY IS THAT THEY HAVE HIGHLIGHTED IT TO

13   SHOW WHAT IS ALLEGEDLY STRICKEN.  WE DON'T HAVE

14   THAT.

15            THE COURT:  OH.

16            MR. ZELLER:  THAT'S ALL I'M -- I'M

17   APOLOGIZING, YOUR HONOR.

18            MR. JACOBS:  YOUR HONOR, THAT DOCUMENT

19   HAS BEEN FILED.  WE SET A DATE FOR EXACTLY THIS

20   KIND OF DISCUSSION.  I CAN GET YOU THE ECF NUMBER

21   IN A MINUTE.

22            MR. ZELLER:  AGAIN, YOUR HONOR, WHAT

23   WE'RE TALKING ABOUT IS A DIFFERENT KIND OF

24   COMPARISON.  WE'RE ADDRESSING THE DOCUMENT, THE

25   SAMSUNG DOCUMENT THAT APPLE HAS ASSERTED DURING
```

2519

```
1    THIS TRIAL.
2              THE COURT:  THAT'S FINE.  SHE CAN TALK
3    ABOUT --
4              MR. ZELLER:  AND THE COURT WILL RECALL
5    THAT --
6              THE COURT:  -- PAGE 122 AND 131, 127 HAS
7    TO DO WITH THE ICONS.  THAT'S FINE.
8              MR. ZELLER:  AND IF I MAY ELABORATE
9    SLIGHTLY, YOUR HONOR.  THE COURT WILL RECALL, TOO,
10   EVEN WITH MS. KARE, THEY WENT INTO SPECIFIC, AND
11   THESE WERE ENTIRELY NEW, THEY WERE NOT IN HER
12   EXPERT REPORT OR IN HER TESTIMONY, MAKING CERTAIN
13   KINDS OF COMPARISONS AND THINGS HAD CHANGED.
14             SO THIS IS WHAT WE ARE ADDRESSING, YOUR
15   HONOR.  IT IS -- IT IS NOT, FOR EXAMPLE, THIS, THIS
16   KIND OF ANALYSIS THAT THE EXPERT WAS DOING.  SHE'LL
17   TALK ABOUT THAT DOCUMENT THAT THEY ARE RELYING ON.
18             MR. JACOBS:  I THINK WE'RE SLICING THINGS
19   VERY FINALLY, YOUR HONOR.  I'LL BE SHOCKED IF
20   MS. WANG ADDRESSES SOME INCREMENTAL TESTIMONY THAT
21   MS. KARE GAVE FROM HER EXPERT REPORT, I DON'T
22   RECALL A LOT OF OBJECTIONS THAT THIS WAS BEYOND THE
23   SCOPE OF HER REPORT.
24             MR. ZELLER:  WE ACTUALLY DID.
25             MR. JACOBS:  IN ANY CASE, IF YOUR HONOR
```

2520

```
 1    RULING IS THAT SHE CAN TALK ABOUT THE PARTICULAR
 2    SLIDES --
 3              THE COURT:  SHE CAN RESPOND TO PX 44.
 4              MR. JACOBS:  SORRY.
 5              THE COURT:  SHE CAN RESPOND TO PX 44.
 6              MR. JACOBS:  I UNDERSTAND THAT RULING,
 7    YOUR HONOR.
 8              MR. QUINN:  ACTUALLY, YOUR HONOR, WE DID
 9    ANTICIPATE HAVING HER TALK ABOUT SEVEN OR EIGHT
10    PAGES.
11              THE COURT:  THAT'S FINE.  I'M ASSUMING
12    YOU'RE NOT SAYING THAT THEY CAN'T EVEN RESPOND TO
13    PX 44.
14              MR. JACOBS:  THAT'S FINE, YOUR HONOR.
15    THANK YOU.
16              THE COURT:  ALL RIGHT.  OKAY.  SO WOULD
17    YOU PLEASE BRING OUR JURY IN, AND LET'S HAVE OUR
18    INTERPRETERS COME UP.
19              DO YOU HAVE AN EXTRA COPY OF THE LUCENTE
20    REPORT?  I HAVE THE ONE THAT IS HAVE THE REDACTED
21    OR NOT REDACTED, BUT THE STRICKEN OF WILLIAMS AND
22    SHERMAN.
23              MR. JACOBS:  YES, YOUR HONOR.
24              THE COURT:  OKAY.
25              MR. QUINN:  CAN WE GET A COPY OF WHAT'S
```

```
1    BEING HANDED UP?

2             MR. JACOBS:  IT'S EXHIBIT 29 TO

3    SOMETHING.  IT'S ACTUALLY OUR, IT'S FILED --

4             MR. JACOBS:  THE WAY WE DID THE PROPOSED

5    ORDER, YOUR HONOR, IS WE STRUCK -- WE SHOWED IN THE

6    PROPOSED ORDER WHAT WE WERE PROPOSING TO STRIKE.

7             THE MOTION BEFORE JUDGE GREWAL.

8             THE COURT:  THERE WASN'T ANYTHING IN THE

9    FILE WITH THE LUCENTE OBJECTIONS.

10            MR. JACOBS:  I DON'T KNOW.

11            THE COURT:  LIKE YOU DID WITH THE

12   WILLIAMS AND SHERMAN.

13            MR. JACOBS:  I DON'T -- I'M SORRY, YOUR

14   HONOR.  I DON'T KNOW.  THIS IS WHAT WE FILED WITH

15   JUDGE GREWAL, YOUR HONOR.

16            THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

17   THE INTERPRETER, AND THEN I'LL --

18            **(WHEREUPON, THREE INTERPRETERS, JAMES YIM**

19   **VICTORY, ALBERT KIM, AND ANN PARK, WERE GIVEN THE**

20   **OATH.)**

21            THE COURT:  GOOD AFTERNOON.  SO NOBODY

22   WANTS TO SIT DOWN.

23            THE INTERPRETER:  WE WERE WAITING FOR THE

24   JURY TO COME IN.

25            THE COURT:  OKAY.  WHATEVER IS
```

1    COMFORTABLE FOR YOU.

2           OKAY.  WELCOME BACK.  PLEASE TAKE A SEAT

3    AND PLEASE CALL YOUR NEXT WITNESS.

4           MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.

5    LADIES AND GENTLEMEN.  SAMSUNG DEFENDANTS CALL

6    JINYEUN WANG.

7           THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

8                      **JINYEUN WANG,**

9    BEING CALLED AS A WITNESS ON BEHALF OF THE

10   DEFENDANTS, HAVING BEEN FIRST DULY SWORN, WAS

11   EXAMINED AND TESTIFIED AS FOLLOWS:

12          THE WITNESS:  YES.

13          THE CLERK:  THANK YOU.  PLEASE BE SEATED.

14          MR. QUINN:  MAY I PROCEED, YOUR HONOR?

15          THE COURT:  PLEASE.

16                  **DIRECT EXAMINATION**

17   BY MR. QUINN:

18   Q    WOULD YOU PLEASE STATE YOUR FULL NAME FOR THE

19   RECORD?

20   A    JINYEUN WANG.

21          THE COURT:  IT'S 1:23.  GO AHEAD.

22   BY MR. QUINN:

23   Q    AND BY WHOM ARE YOU EMPLOYED?

24   A    THAT WOULD BE SAMSUNG ELECTRONICS.

25   Q    AND WHAT TYPE OF WORK DO YOU DO AT SAMSUNG

1     ELECTRONICS?

2     A     I DESIGN UX, OTHERWISE KNOWN AS USER

3     EXPERIENCE.

4     Q     AND IS THAT FOR THE GALAXY, INCLUDE THE GALAXY

5     PHONES?

6     A     YES, THAT IS CORRECT.

7     Q     AND DOES THAT INCLUDE DESIGNING THE ICONS AND

8     THE ICON LAYOUT ON THE MENU PAGE ON THE GALAXY

9     PHONES?

10    A     YES, THAT IS CORRECT.

11    Q     ALL RIGHT.  WERE YOU AND THE TEAM THAT YOU

12    LEAD RESPONSIBLE FOR DESIGNING THE ICONS AND THE

13    LAYOUT OF THE ICONS ON THE MENU PAGE FOR THE GALAXY

14    PHONES?

15    A     YES, THAT IS CORRECT.

16    Q     IN DOING THAT, DID YOU COPY ANY APPLE ICONS OR

17    THE LAYOUT ON THE APPLE APPLICATION PAGE?

18    A     NOT AT ALL.

19    Q     LET ME TALK A LITTLE BIT FIRST ABOUT YOUR

20    BACKGROUND.  DO YOU HAVE A DEGREE?

21    A     YES, I DO.  I HAVE GRADUATED A FOUR-YEAR

22    COLLEGE, A BACHELOR'S.

23    Q     AND CAN YOU TELL US WHAT COLLEGE THAT IS AND

24    WHAT AREA YOU GOT YOUR DEGREE IN.

25    A     I GRADUATED HONG IK, H-O-N-G, I-K, AND I

1   STUDIED VISUAL DESIGN.

2   Q    IS THAT UNIVERSITY -- CAN YOU TELL US WHETHER

3   OR NOT IT IS REGARDED AS ONE OF THE TOP

4   UNIVERSITIES IN KOREA FOR VISUAL DESIGN?

5   A    AS FAR AS THE ART SCHOOLS ARE CONCERNED IN

6   KOREA, HONG IK UNIVERSITY WOULD BE THE TOP

7   UNIVERSITY.

8           AND ALSO FOR THE VISUAL DESIGN -- WELL,

9   PEOPLE WITH THE BEST SCORES WOULD BE ABLE TO GET

10  INTO THE VISUAL DESIGN.

11  Q    HOW DID YOU COME TO FIRST START WORKING AT

12  SAMSUNG?

13  A    DURING MY THIRD YEAR IN COLLEGE, I WAS ALLOWED

14  TO WORK AS AN INTERN AT SAMSUNG.

15  Q    AND IS THAT A DIFFICULT INTERNSHIP TO GET?

16  A    YES, IT WAS VERY HARD TO GET IN.  I HAD

17  ACTUALLY TAKEN THREE DIFFERENT TESTS TO BE

18  ADMITTED.

19          AND ALSO, MY RECOLLECTION WOULD BE THAT

20  THERE HAVE BEEN MANY PEOPLE WHO HAD APPLIED FROM

21  MANY GOOD UNIVERSITIES AND AT THE TIME WHEN I

22  BECAME AN INTERN, I BELIEVE THE COMPETITION WAS

23  ABOUT 200 TO 1.

24  Q    THAT IS 200 APPLICANTS FOR EVERY SLOT IN THE

25  SAMSUNG INTERN PROGRAM?

2525

1    A    YES, THAT IS CORRECT.

2    Q    AND IN THE SAMSUNG INTERN PROGRAM, WERE YOU

3    RANKED -- WERE YOU RANKED IN TERMS OF YOUR OWN

4    PERFORMANCE AMONG ALL THE INTERNS THAT SAMSUNG HAD?

5    A    THAT'S CORRECT.  AS INTERNS, WE WOULD BE

6    WORKING ONE YEAR OR MORE AND AT THE END OF THE

7    YEAR, WE WOULD BE GRADED ON OUR PERFORMANCE.

8            AT THE TIME WHEN I WAS DONE WITH MY

9    INTERNSHIP, I WAS GRADED AND RANKED AS NUMBER 1.

10   AND AFTER THAT, I HAVE ENTERED SAMSUNG.

11   Q    ALL RIGHT.  AND WHAT IS YOUR CURRENT TITLE AND

12   JOB POSITION?

13   A    I AM THE LEAD DESIGNER IN THE WIRELESS DESIGN

14   TEAM.  LEAD DESIGNER.

15   Q    AND DOES THAT INCLUDE LEAD DESIGNER FOR USER

16   EXPERIENCE?

17           THE INTERPRETER:  YOUR HONOR, THE

18   INTERPRETER STANDS CORRECTED AFTER HAVING CONSULTED

19   WITH THE CHECK INTERPRETERS.

20           I WORKED AS A SENIOR DESIGNER RATHER THAN

21   LEAD DESIGNER AND THAT WOULD BE THE ANSWER.

22   BY MR. QUINN:

23   Q    ALL RIGHT.  THANK YOU.  ARE YOU RESPONSIBLE IN

24   YOUR PRESENT POSITION FOR USER EXPERIENCE ON MOBILE

25   DEVICES?

```
1    A    THAT'S CORRECT.  I WORK AS A CREATIVE

2    DIRECTOR.

3    Q    AND HAS SAMSUNG RECOGNIZED YOU FOR WORK THAT

4    YOU HAVE DONE ON USER EXPERIENCE FOR SMARTPHONES?

5    A    YES, WHEN I HAD WORKED AS A DESIGNER, I WAS

6    ACTUALLY PROMOTED ONE YEAR AHEAD OF OTHERS.

7              AND ALSO FOR THIS YEAR, I AM ACTUALLY ONE

8    OF THE CANDIDATES FOR THE DESIGNER OF THE YEAR

9    AWARD.

10   Q    AT SAMSUNG?

11   A    YES.

12   Q    HAVE YOU ALSO RECEIVED RECOGNITION FROM

13   PROFESSIONAL ORGANIZATIONS OUTSIDE OF SAMSUNG FOR

14   YOUR DESIGN WORK?

15   A    YES, THAT'S CORRECT.  BACK SOME TIME AGO,

16   WITHIN SAMSUNG I HAD WORKED ON 3-D HUMAN INTERFACE

17   RELATED WORK, AND FOR THAT WORK, I HAVE RECEIVED AN

18   AWARD FROM THE HUMAN ENGINEERING ASSOCIATIONS,

19   WHICH WOULD BE THE SECOND HIGHEST AWARD GIVEN BY

20   THE ASSOCIATION.

21   Q    AND IF YOU GET THIS -- YOU INDICATED THAT

22   YOU'VE BEEN NOMINATED AT SAMSUNG FOR DESIGNER OF

23   THE YEAR.  DO YOU KNOW WHAT THAT -- IF YOU GET THAT

24   AWARD, WHAT THE PRIZE WILL BE?

25   A    YES.  IF I WERE TO BE AWARDED A GRAND, THE
```

1    GRAND PRIZE, I WOULD RECEIVE 100 MILLION WON AS A

2    PRIZE AND ALSO WOULD BE PROMOTED ONE RANK HIGHER.

3              MR. QUINN:  I GUESS, YOUR HONOR, THE

4    INTERPRETERS PROBABLY DON'T DO CURRENCY

5    CONVERSIONS.  I'M HEARING 100 MILLION WON.  MAYBE

6    WE CAN FILL LATER ON FILL IN THE RECORD ABOUT WHAT

7    THAT TRANSLATES TO.

8    Q    IS BEING A DESIGNER AT SAMSUNG AN EASY JOB?

9    A    NO, NOT AT ALL.

10   Q    WE'VE HEARD TESTIMONY FROM APPLE WITNESSES

11   ABOUT HOW HARD THEY WORKED ON THE IPHONE.  DID

12   YOU --

13             THE COURT:  OH, OKAY.  I'M SORRY.  ONE OF

14   OUR JURORS IS HAVING A LITTLE DIFFICULTY HEARING.

15   IS THAT THE TRANSLATIONS?

16             JUROR:  THE INTERPRETER.

17             THE COURT:  OKAY.  COULD WE GIVE HIM A

18   MICROPHONE, OR --

19             THE INTERPRETER:  I CAN STEP UP, YOUR

20   HONOR.

21             THE COURT:  OH.  BUT WE MAY HAVE A

22   MICROPHONE IF YOU WOULDN'T MIND.

23             MR. QUINN:  CAN WE STOP THE CLOCK, YOUR

24   HONOR.

25             THE COURT:  YES, IT'S 1:34.

```
 1                COULD YOU JUST SAY SOMETHING AND MAKE

 2     SURE THAT ALL OF OUR --

 3                THE INTERPRETER:  ACTUALLY, I WOULD HAVE

 4     TO PLACE IT ON THE TABLE.  TESTING.  IS THAT GOOD

 5     ENOUGH, OR NO?

 6                JUROR:  I DIDN'T HEAR HIM.  TESTING,

 7     TESTING 1, TESTING 2.  IS THAT BETTER?

 8                THE COURT:  OKAY.  I'M JUST -- I WANT TO

 9     MAKE SURE THAT HE CAN HEAR YOU.

10                MR. QUINN:  WOULD THIS STOOL BE HELPFUL?

11                THE COURT:  I THINK HE DOESN'T WANT TO

12     SIT DOWN.

13                THE INTERPRETER:  I WOULD SIT NEXT TO THE

14     WITNESS, EXCEPT THAT I DON'T WANT TO BE TOO CLOSE

15     TO THE WITNESS.

16                THE COURT:  WELL, I THINK THAT MIGHT

17     ENSURE THAT YOU CAN BE HEARD, WHICH --

18                THE INTERPRETER:  SURE, OKAY, THAT'S

19     FINE.

20                THE COURT:  IF YOU TWO DON'T MIND.

21                THE INTERPRETER:  TESTING.

22                THE COURT:  OKAY.  THIS IS NOT YOUR TIME.

23                THUS FAR, IS THERE ANY PART THAT YOU HAVE

24     NOT HEARD?

25                JUROR:  NO.  I THINK IT WAS THE -- JUST A
```

```
 1    LITTLE BIT IN BETWEEN, I NOTICED VOLUME WOULD DROP
 2    A LITTLE BIT.  SO I WAS ABLE TO PRETTY MUCH HEAR
 3    JUST ABOUT EVERYTHING, BUT THE VOLUME DROPPED JUST
 4    A LITTLE BIT.  I WANT TO MAKE SURE THAT I'M NOT
 5    MISSING ANYTHING.
 6            THE COURT:  WELL, YOU HEARD THE EDUCATION
 7    AND THE PRIZE AND HER FUNCTION AT HER COMPANY?
 8            JUROR:  YES.
 9            THE COURT:  YOU HEARD ALL OF THAT?
10            JUROR:  YES.
11            THE COURT:  JUST FOR THE RECORD, THIS IS
12    JUROR NUMBER 9.
13            YOU HEARD ALL OF THAT ABOUT HER EDUCATION
14    AND WHERE SHE WORKS AND THAT SHE'S GOING TO GET
15    THIS, IS BEING CONSIDERED FOR A PRIZE?
16            PROSPECTIVE JUROR:  YES.
17            THE COURT:  YOU HEARD ALL OF THAT?
18            PROSPECTIVE JUROR:  YEAH.
19            THE COURT:  OKAY.  ALL RIGHT.  ARE THERE
20    ANY POINTS THAT YOU RECALL?  YOU DIDN'T HEAR
21    ANYTHING?
22            JUROR:  SHE MENTIONED SOMETHING ABOUT
23    THE, BEING THE LEAD, I THINK IT WAS THE LEAD
24    DESIGNER IN THE DESIGN TEAM.
25            THE COURT:  IT WAS CORRECTED TO SENIOR
```

```
 1    DESIGNER.

 2                THE INTERPRETER:  THAT IS CORRECT, YOUR

 3    HONOR.

 4                JUROR:  OKAY.

 5                THE COURT:  ANY OTHER THINGS?

 6                JUROR:  NOT AT THIS TIME.

 7                THE COURT:  OKAY.  ALL RIGHT.

 8         OKAY.  IT'S 1:36.  GO AHEAD, PLEASE.

 9                MR. QUINN:  THANK YOU, YOUR HONOR.

10    Q    MS. WANG, WE'VE HEARD TESTIMONY FROM APPLE

11    WITNESSES ABOUT HOW HARD THEY WORKED TO BRING THE

12    IPHONE TO MARKET.

13                DID YOU -- WOULD YOU TELL US WHAT IT WAS

14    LIKE WORKING ON THE GALAXY PHONE, THE DESIGN

15    ASPECTS FOR THE USER EXPERIENCE THAT YOU WORKED ON?

16    A    YES, I CAN.  SAMSUNG IS A COMPANY THAT'S VERY

17    TOUGH TO WORK AT AND IN KOREA.  IT'S A VERY HARD

18    WORKING TYPE OF COMPANY.  ANYWAY, WHEN WE WERE

19    DESIGNING GALAXY SI, WE HAD PEOPLE FROM SEOUL AND

20    ALSO FROM SUWON, AND ALSO FROM GUMI.  THE PEOPLE

21    FROM SUWON, THERE WERE HUNDREDS OF DEVELOPERS, AND

22    ALSO PEOPLE FROM GUMI, THERE WERE MULTIPLE OF TENS

23    WHO WERE INVOLVED IN VERIFICATIONS.

24                SO WITH ALL THOSE PEOPLE COMING FROM

25    DIFFERENT PLACES.  THERE WAS AT ONE POINT WHERE WE
```

2531

```
1    HAD ALL COME TOGETHER AND WORKED TOGETHER AS A TEAM

2    FOR ABOUT THREE MONTHS AND DURING THAT TIME PERIOD

3    OF THREE MONTHS, MY RECOLLECTION WOULD BE THAT I

4    SLEPT PERHAPS TWO HOURS OR THREE HOURS A NIGHT.

5    THAT WAS ABOUT IT.

6              AND ALSO DURING THAT TIME PERIOD, I

7    ACTUALLY ENCOUNTERED SOMETHING THAT WAS VERY

8    DIFFICULT FOR ME.  BACK THEN I HAD JUST GIVEN BIRTH

9    TO A NEWBORN, AND I WAS FEEDING MOTHER'S MILK TO

10   THE BABY.  BUT SINCE I WASN'T ABLE TO BE WITH THE

11   BABY SO MUCH, I HAD TO SAVE THE BREAST MILK.

12             BUT IT JUST HAPPENED THAT I WASN'T ABLE

13   TO DO THAT ON A CONSISTENT BASIS.  SO MY

14   RECOLLECTION WAS THAT THE BREAST FEEDING HAD TO

15   COME TO A STOP BECAUSE I HAD -- MY BODY WOULD NOT

16   GIVE MILK ANY MORE.

17   Q    SO IT WAS A DEVELOPING, THE USER INTERFACE,

18   THE ICONS, THAT MENU PAGE, WAS THAT A VERY INTENSE

19   PERIOD OF HARD WORK FOR YOU?

20   A    THAT'S CORRECT.  THOSE WERE DIFFICULT TIMES.

21   Q    LET'S TALK ABOUT SOME -- LET'S TALK ABOUT

22   ICONS AND ICON DESIGN.

23             WHAT FACTORS DO YOU CONSIDER MOST

24   IMPORTANT IN DESIGNING AN EFFECTIVE ICON?

25   A    THERE ARE A FEW THINGS THAT'S IMPORTANT WHEN
```

1    IT COMES TO DESIGNING AN ICON.  THE FIRST THING

2    THAT COMES TO MIND IS THAT WHEN A USER IS LOOKING

3    AT AN ICON, THE USER SHOULD BE ABLE TO RECOGNIZE IT

4    AS SUCH RIGHT AWAY.

5                AND, SECONDLY, THE COLOR AND THE SHAPE

6    ARE ALSO IMPORTANT IN THAT THEY SHOULD BE GOOD OR

7    PRETTY TO LOOK AT.

8                AND ALSO, EASILY -- EASY TO GRASP.

9                THIRDLY, IT HAS TO BE SOMETHING THAT HAS

10   TO BE EASILY MEMORIZED OR MEMORABLE.

11   Q    AND WHEN YOU'RE DESIGNING -- I'M SORRY.  IS

12   THERE A CORRECTION?

13               THE INTERPRETER:  NO, YOUR HONOR.  NO,

14   SIR.

15   BY MR. QUINN:

16   Q    ARE THERE ADDITIONAL SPECIAL CONSIDERATIONS

17   THAT HAVE TO BE TAKEN INTO ACCOUNT WHEN YOU DESIGN

18   AN ICON THAT'S GOING TO BE USED ON A TOUCHSCREEN?

19   A    YES, OF COURSE.  WHEN IT COMES TO TOUCHSCREEN,

20   IT HAS TO BE A CERTAIN AMOUNT OR A CERTAIN PART OF

21   THE SCREEN THAT WOULD ALLOW FOR THE TOUCHING TO

22   TAKE PLACE.

23               AND SO THERE HAS TO BE A CERTAIN SIZE,

24   SHALL WE SAY, AND ALSO THERE HAS TO BE A VIVID

25   COLOR THAT IS AVAILABLE FOR THE USER SO THE USER

```
 1    WILL BE ABLE TO RECOGNIZE THE AREA AND USE THEIR

 2    FINGER TO TOUCH.

 3    Q    LET'S TAKE A LOOK AT AN ICON.  WE DON'T HAVE

 4    TIME TO GO THROUGH VERY MANY OF THEM, BUT IF WE

 5    COULD PUT UP, YOUR HONOR, DEMONSTRATIVE 3972.012,

 6    3972.012, THE MENU SCREEN FOR THE GALAXY S, AND

 7    LET'S JUST BEGIN WITH THAT PHONE ICON IN THE LOWER

 8    LEFT.

 9              ARE YOU THE ONE THAT SELECTED THIS ICON

10    FOR USE ON THE GALAXY PHONE?

11    A    YES, THAT IS CORRECT.

12    Q    WHY DID YOU CHOOSE THIS ONE?

13              MR. JACOBS:  YOUR HONOR, OBJECTION.

14    PRIOR DISCUSSION.  YOU WILL SEE AT PAGE 18.

15              THE COURT:  OVERRULED.

16              GO AHEAD.

17              THE WITNESS:  WELL, I DESIGNED IT AS SUCH

18    BECAUSE IT'S A PHONE, SO I DESIGNED IT AS A PHONE.

19    THE SAME GOES WITH THE CLOCK, AND ALSO THE CAMERA.

20    BY MR. QUINN:

21    Q    HAVE YOU, IN THE PAST, HAS SAMSUNG

22    EXPERIMENTED WITH OTHER ICONS FOR PHONE ON

23    TELEPHONES?

24    A    YES, WE HAVE.

25    Q    AND WHAT OTHER ICONS HAVE YOU USED FOR PHONES
```

```
1    AND WHAT WAS YOUR EXPERIENCE WITH THEM?

2    A    YES.  WELL, WE HAVE TRIED QUITE A FEW

3    DIFFERENT ICONS AND THERE WERE EVEN CERTAIN

4    DIRECTIVES COMING FROM UP ABOVE TELLING US TO COME

5    UP WITH SOMETHING OF A DESIGN THAT'S MORE

6    SOPHISTICATED, SOMETHING THAT LOOKS MORE LIKE A

7    SMARTPHONE.

8              SO WE TRIED DIFFERENT ICONS.  FOR

9    EXAMPLE, WE TRIED AN ICON THAT LOOKED LIKE A CELL

10   PHONE WITH AN ANTENNA, AND THEN WE ALSO TRIED AN

11   ICON THAT LOOKED MORE LIKE A SMARTPHONE.

12             BUT WHAT HAPPENED WAS THAT THE PEOPLE

13   WOULD ACTUALLY MISTAKE THESE ICONS.  SOME PEOPLE

14   THOUGHT THIS WAS A GAME OR MAYBE A PDA OR EVEN A

15   CALCULATOR.  SO WE HAD SOME PROBLEMS.

16   Q    HOW LONG HAS SAMSUNG USED THIS PARTICULAR TYPE

17   OF MA BELL, WE'VE HEARD IT CALLED A MA BELL, I

18   DON'T KNOW IF THAT TRANSLATES INTO KOREAN, ICON ON

19   PHONES.

20             MR. JACOBS:  OBJECTION, YOUR HONOR.

21   LEADING.  HE'S GIVING THE WITNESS A NAME FOR THIS.

22             THE COURT:  SUSTAINED.  SUSTAINED.

23   THAT'S STRICKEN.

24   BY MR. QUINN:

25   Q    DO YOU HAVE A NAME THAT YOU USE FOR THIS
```

2535

1    PARTICULAR TYPE OF ICON FOR A PHONE?

2    A    YEAH.  IN OUR DESIGN TEAM, WE CALLED IT A MA

3    BELL.

4              THE INTERPRETER:  YOUR HONOR, CORRECTION.

5              THE WITNESS:  IN OUR DESIGN TEAM, WE

6    CALLED IT A DUMBBELL ICON.

7    BY MR. QUINN:

8    Q    AND HOW LONG HAS SAMSUNG USED THIS DUMBBELL

9    STYLE ICON ON THE PHONES?

10             THE INTERPRETER:  YOUR HONOR, MAY THE

11   WITNESS REPEAT HER ANSWER?

12             THE COURT:  PLEASE.

13             THE WITNESS:  THAT ICON WAS IN USE EVEN

14   BEFORE I HAD JOINED THE COMPANY IN 2002.  AND THIS

15   WAS USED BY SAMSUNG.  I'M SAYING THAT THE DUMBBELL

16   SHAPE HAD BEEN USED IN SAMSUNG EVEN PRIOR TO 2002.

17   BY MR. QUINN:

18   Q    AND IT'S GREEN, OBVIOUSLY.  DOES THE COLOR

19   GREEN HAVE ANY SIGNIFICANCE FROM A DESIGN

20   STANDPOINT IN THIS ICON?

21   A    YES.  WELL, THE GREEN WOULD HAVE A POSITIVE

22   CONNOTATION TO IT, MEANING GO OR DO OR MAKE THE

23   CALL.

24             LIKEWISE, A RED COLOR WOULD BE SOMETHING

25   LIKE "DON'T" OR "STOP" TYPE OF INFORMATION.

1          SO IN ORDER TO TELL THE USER TO MAKE THE

2     CALL OR ENABLE THE USER TO MAKE THE CALL, OF COURSE

3     IT HAS TO BE GREEN.

4     Q    AND ARE YOU FAMILIAR -- ARE YOU FAMILIAR WITH

5     THE CONCEPT OF A VISUAL LANGUAGE?

6     A    YES, I AM VERY WELL AWARE.

7     Q    WHAT DOES A VISUAL LANGUAGE, WHAT DOES THAT

8     MEAN TO YOU AS AN ICON DESIGNER?

9     A    VISUAL LANGUAGE WOULD MEAN TELLING THE PERSON

10    USING A PICTURE BY LOOKING AT A PICTURE OR AN ART,

11    ONE WOULD BE ABLE TO DISTINCTIVELY TELL WHAT IT

12    MEANS.

13          FOR EXAMPLE, A RESTROOM SIGN FOR THAT

14    WOULD BE A VISUAL COMMUNICATION, EVEN AN AIRPORT, A

15    SIGN FOR THAT, THAT WOULD ALSO BE A VISUAL

16    COMMUNICATION.

17    Q    AND IN THE SMARTPHONE INDUSTRY, DO YOU SEE THE

18    DEVELOPMENT OF A VISUAL LANGUAGE FOR ICONS?

19          MR. JACOBS:  OBJECTION.  LEADING AN

20    EXPERT.

21          THE COURT:  SUSTAINED.

22    BY MR. QUINN:

23    Q    ARE THERE OTHER SMARTPHONE COMPANIES THAT USE

24    A SIMILAR IMAGE OF A HANDSET FOR A TELEPHONE?

25          MR. JACOBS:  SAME OBJECTION, YOUR HONOR.

```
 1              THE COURT:  LAY A FOUNDATION, PLEASE.
 2      BY MR. QUINN:
 3      Q    AS PART OF YOUR JOB, DO YOU PAY ATTENTION TO
 4      WHAT ICONS OTHER COMPANIES ARE USING?
 5      A    NOT ONLY THE OTHER COMPANIES, I WOULD ALSO
 6      LOOK AT THE ICONS THAT COME UP ON THE WEBSITES OR
 7      WEBS, AND ALSO AIRPORT SIGN SYSTEMS, THINGS LIKE
 8      THAT.  SO I WOULD PAY ATTENTION TO ALL THESE
 9      THINGS.
10      Q    AND WHY IS -- IS THERE A REASON WHY THE
11      HANDSET IS TILTED AT AN ANGLE?
12      A    WELL, AS I'VE INDICATED TO YOU EARLIER, THIS
13      IS FOR A TOUCHSCREEN, SO THERE HAS TO BE A CERTAIN
14      AMOUNT OF AREA THAT IS ALLOTTED FOR THE USER TO
15      ACTUALLY ACCESS THIS TYPE OF FUNCTION.
16              SO IT COULD NOT BE SOMETHING THAT IS MORE
17      OF A HORIZONTAL TYPE OF BOX OR SOMETHING THAT'S
18      MORE VERTICAL BECAUSE TO DO SO WOULD MEAN THAT
19      THERE WOULD NOT BE EITHER ENOUGH SPACE OR TOO MUCH
20      SPACE FOR THE FINGER TOUCHING.
21              AND ALSO, IT'S LEANING A LITTLE BIT
22      BECAUSE THAT'S HOW PEOPLE MAKE PHONE CALLS.  WHEN
23      YOU MAKE A PHONE CALL AND SAY HELLO, WHEN YOU PICK
24      IT UP, YOU WOULD PICK IT UP AT AN ANGLE AND YOU
25      WOULD END THE PHONE CALL BY PLACING IT IN THIS
```

```
 1   MANNER.

 2              SO NATURALLY IT WOULD HAVE TO BE LEANING.

 3   Q    ALL RIGHT.  LET'S QUICKLY JUST TAKE A LOOK AT

 4   ONE OTHER ICON, I DON'T THINK WE HAVE TIME TO DO

 5   MUCH MORE, BUT THIS GALLERY ICON HERE, THE IMAGE OF

 6   THE FLOWER, DO YOU SEE THAT (INDICATING)?

 7   A    YES.

 8   Q    ALL RIGHT.  AND HOW DID YOU DECIDE TO USE AN

 9   IMAGE OF A FLOWER THERE FOR THE PHOTO GALLERY ICON?

10   A    WELL, THE GALLERY, OR THE PHOTO, WELL, THIS IS

11   WHERE PEOPLE WOULD BE TAKING PICTURES AND THEN

12   LOOKING AT THE PICTURE.

13              AND SO WHEN PEOPLE THINK OF A PICTURE

14   REVIEWING OR VIEWING A PICTURE, THEY WOULD THINK OF

15   A LANDSCAPE THAT'S MORE OR LESS A HORIZONTAL

16   LANDSCAPE, PERHAPS A MOUNTAIN OR A RIVER.

17              AND SO THAT'S THE TYPE OF IMAGES THAT

18   WOULD BE ASSOCIATED OR CONJURED UP.

19              AND ALSO, WHEN WE LOOK AT CLOSE-UP SHOTS,

20   GENERALLY SPEAKING, PEOPLE WOULD BE THINKING IN

21   TERMS OF SOMETHING LIKE A FLOWER.  I HAVE, MYSELF,

22   SEEN IT AS SUCH, THAT A FLOWER WOULD BE A GOOD WAY

23   OF SHOWING A CLOSE-UP SHOT.

24              SO THAT'S HOW IN PARTICULAR THAT I FELT

25   THAT A FLOWER WOULD BE PROPER HERE.
```

2539

```
 1    Q    WELL, DID THIS PARTICULAR -- HOW DID YOU COME

 2    TO CHOOSE THIS PARTICULAR IMAGE OF A FLOWER?

 3    A    WELL, AT THE TIME THERE WAS A WALLPAPER THAT

 4    WAS IN THE IMAGE OF A FLOWER FOR AN AMOLED,

 5    A-M-O-L-E-D, LCD'S AND EVERYONE IN OUR TEAM KIND OF

 6    LIKED THE IMAGE AND WE HAD COME TO A CONCLUSION

 7    THAT WE WOULD ADOPT THIS IMAGE FOR THE ICON.

 8            MR. QUINN:  YOUR HONOR, IF WE COULD PUT

 9    ON THE SCREEN DEMONSTRATIVE SDX 3972.031.

10    3972.031.

11    Q    YOU SAID AT SAMSUNG THERE WAS A WALLPAPER?

12    A    YES, I DID.

13    Q    AND IS THIS AN IMAGE OF WHAT YOU'RE REFERRING

14    TO?

15    A    THAT IS CORRECT.

16    Q    AND CAN YOU JUST QUICKLY, BECAUSE I'M ABOUT TO

17    GET THE HOOK HERE, I KNOW, GO THROUGH THE STEPS

18    THAT YOU WENT THROUGH TO GET FROM THIS IMAGE, FROM

19    THE WALLPAPER THAT YOU HAD, BACK -- IF WE CAN GO

20    BACK TO THE 012, THERE WE GO, HOW DID YOU GET FROM

21    HERE TO THIS IMAGE?  JUST VERY QUICKLY, IF YOU

22    WOULD, PLEASE.

23    A    WELL, RIGHT HERE, WHEN YOU LOOK AT THE FLOWER,

24    THIS AREA HAS VERY GOOD DETAILS.  SO WE HAD

25    DISCUSSED THAT WE SHOULD USE THIS PORTION, SO WE
```

```
 1    DECIDED TO CROP THIS PART.  AND ALSO WE WANTED TO
 2    MAKE SURE THAT THERE'S A VIVID IMAGE AS FAR AS THE
 3    DETAILS ARE CONCERNED.  SO WE DECIDED TO PUT IN
 4    MORE OF AN IMAGE IN THIS PORTION.
 5            AND ALSO THIS AREA HAS BLACK COLOR IN IT,
 6    BUT AS THE -- FOR AN ICON, THE OUTER PERIMETERS
 7    BEING BLACK IS NOT ALL THAT GOOD.  SO WE HAD
 8    DECIDED THAT WE SHOULD USE A GREEN COLOR, AND SINCE
 9    A FLOWER REPRESENTS WITH GREEN COLORED.
10            AND SINCE THE DETAILS ARE QUITE
11    IMPORTANT, WE HAVE DONE SOME RETOUCHING.
12            AND ALSO, SINCE OUR GALLERY ENABLES SLIDE
13    SHOW AND VIDEOS TO BE SHOWN, WE HAVE DECIDED TO
14    INDICATE THAT IT IS PLAYABLE, OR THAT THE PLAYER IS
15    THERE.
16    Q    ALL RIGHT.  WELL, I AM OUT OF TIME FOR ICONS.
17            LET ME JUST ASK THIS:  IN DESIGNING ANY
18    OF THE ICONS, DID YOU MAKE REFERENCE TO APPLE
19    ICONS?
20    A    WE DID NOT.
21    Q    AND IF WE COULD PUT 012 BACK UP AND JUST VERY
22    QUICKLY, WHY ARE THESE ALL IN BOXES WITH ROUNDED
23    CORNERS?
24    A    WELL, WE HAD THESE ICONS EVEN IN OUR FEATURE
25    PHONES, SUCH AS X 850, AND ALSO A 800, AND IN
```

2541

```
 1    PARTICULAR FOR TOUCH PHONES, THE TOUCH AREA MUST BE
 2    DEFINED, AND SO THAT'S WHY IN THE BACKGROUND WE HAD
 3    ROUNDED SQUARES PLACED THERE.
 4              AND ALSO, WE HAVE THE BACKGROUND BOX
 5    THERE RIGHT BEHIND EACH OF THE ICONS BECAUSE
 6    WITHOUT THOSE BACKGROUND ICONS, IT WOULD BE -- IT
 7    WOULD SEEM AS IF THE ICON ITSELF IS VERY SMALL.
 8              AND ALSO, IN ORDER TO GIVE SOME COLOR, OR
 9    BRING OUT THE COLOR OF THE BACKGROUND ICONS WERE
10    NECESSARY, OR THE BACKGROUND BOXES WERE NECESSARY.
11              MR. QUINN:  THANK YOU.  NOTHING FURTHER,
12    YOUR HONOR.
13              THE COURT:  ALL RIGHT.  THE TIME IS NOW
14    2:03.  GO AHEAD, PLEASE, WITH ANY CROSS.
15                      CROSS-EXAMINATION
16    BY MR. JACOBS:
17    Q    IN DESIGNING THE GALAXY S ICONS, YOU DID NOT
18    MAKE REFERENCE TO APPLE ICONS?
19    A    THAT IS CORRECT.
20    Q    COULD YOU LOOK, PLEASE, AT EXHIBIT 20 -- PX
21    2257 IN YOUR BINDER.
22    A    MAY I LOOK ON THE SCREEN THEN?
23    Q    SURE.  IF YOU GO ALL THE WAY TO THE BACK OF
24    THIS DOCUMENT, YOU'LL SEE SOMETHING CALLED
25    PRODUCTION INFORMATION.  AND YOU'LL SEE THAT YOUR
```

2542

```
 1    NAME IS ON THE DOCUMENT.
 2              DO YOU SEE THAT, RIGHT IN THE MIDDLE,
 3    CUSTODIAN NAME, JINYEUN WANG.
 4    A    YES, I SEE IT.
 5    Q    AND IF YOU LOOK AT THE PREVIOUS PAGE, DO YOU
 6    SEE A SET OF APPLE ICONS, THEN GALAXY S, THEN
 7    GALAXY S II ICONS ALL LINED UP?
 8    A    YES.
 9    Q    IF YOU TURN NOW TO EXHIBIT 2261 IN YOUR
10    BINDER, AND, AGAIN, YOU CAN LOOK AT IT ON THE
11    SCREEN.
12              I'M SORRY.  YOUR HONOR, I SHOULD MOVE --
13    I SHOULD MOVE 2257 INTO EVIDENCE.
14              THE COURT:  ANY OBJECTION?
15              MR. QUINN:  NO OBJECTION.
16              THE COURT:  IT'S ADMITTED.
17              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
18              2257, HAVING BEEN PREVIOUSLY MARKED FOR
19              IDENTIFICATION, WAS ADMITTED INTO
20              EVIDENCE.)
21    BY MR. JACOBS:
22    Q    CAN YOU LOOK AT 2261?  AND IF YOU LOOK AT THE
23    BACK PAGE OF THAT DOCUMENT, YOU'LL SEE THE
24    CUSTODIAN INFORMATION AND YOU'LL SEE YOUR NAME.  DO
25    YOU SEE THERE?  THERE'S A MISSPELLING.  DO YOU SEE
```

2543

1    YOUR NAME THERE, MA'AM?

2    A    THAT'S CORRECT.  THE SPELLING SEEMS TO BE IN

3    ERROR, BUT IT APPEARS TO BE MY NAME.

4    Q    AND NOW IF YOU LOOK AT THE FIRST PAGE OF THIS

5    DOCUMENT, SAMSUNG MOBILE ICON DESIGN FOR 2011,

6    EXHIBIT 2267.

7         WE WOULD OFFER THAT INTO EVIDENCE, YOUR

8    HONOR?

9         MR. QUINN:  NO OBJECTION.

10         THE COURT:  IT'S ADMITTED.

11         (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

12         2267, HAVING BEEN PREVIOUSLY MARKED FOR

13         IDENTIFICATION, WAS ADMITTED INTO

14         EVIDENCE.)

15    BY MR. JACOBS:

16    Q    AND IF YOU LOOK AT THE DOCUMENT, AND IF YOU

17    LOOK NOW AT PAGE 5, DO YOU SEE THE EVOLUTION YEAR

18    BY YEAR OF THE SAMSUNG ICONS?

19    A    I SEE THEM.  BUT I DON'T THINK YOU CAN SEE

20    THAT ALL THESE ARE SAMSUNG ICONS.

21    Q    TOUCHWIZ IS SAMSUNG'S USER INTERFACE, ISN'T

22    IT?

23    A    YEAH, I'M LOOKING AT TWO IMAGES IN THE MIDDLE.

24    I SEE THAT THEY SEEM TO HAVE ICONS FOR CINGULAR AND

25    AT&T.  SO MANY SUCH ICONS ARE FOR THEM.  SO THIS

2544

```
1    APPEARS TO BE ACTUALLY THE ICONS THAT BELONG TO OUR
2    U.S. CARRIERS PERHAPS.
3            THE INTERPRETER:  THE INTERPRETER HAS A
4    CORRECTION.
5            THE WITNESS:  THESE APPEAR TO BE MODELS
6    FOR U.S. CARRIERS FOR SAMSUNG.
7    BY MR. JACOBS:
8    Q    AUTHORED BY YOU OR YOUR TEAM; CORRECT?
9    A    THE DATA THAT I HAD IN MY P.C. NOT ONLY
10   CONTAINED DATA COMING FROM MYSELF OR CREATED BY ME,
11   ALSO THE OTHER DATA COMING FROM OTHER PEOPLE, OR
12   MEMBER WOULD ALSO BE FOUND IN MY COMPUTER.
13   Q    ARE YOU DENYING THAT THE ICONS FOR 2008 AND
14   2009 ARE SAMSUNG AUTHORED ICONS?
15   A    THERE ARE INSTANCES WHERE THE CARRIERS WOULD
16   PROVIDE THEIR OWN ICONS AND WE WOULD PLACE THOSE
17   ICONS ON OUR MODELS.
18   Q    DO YOU SEE THE SLIDE IS ENTITLED "HOW DID WE
19   DO"?
20   A    YES, I SEE THAT.
21   Q    NOW, IF YOU'LL TURN TO PAGE 15, THE APPENDIX
22   IN THE DOCUMENT, DO YOU SEE THAT THE REFERENCE
23   SCREEN SHOTS IN THE APPENDIX ARE IPHONE SCREEN
24   SHOTS?
25   A    IT WOULD ACTUALLY BE BETTER IF I WERE ABLE TO
```

2545

```
 1    LOOK AT THIS DOCUMENT EITHER IN KOREAN OR IN COLOR.
 2              BUT HAVING SAID THAT, I'M LOOKING AT THE
 3    THIRD IMAGE HERE, AND THIS THIRD IMAGE APPEARS TO
 4    BE AN ANDROID PHONE OF OURS.
 5              AND ALSO, THE FOURTH IMAGE APPEARS TO BE
 6    A MENU SCREEN FROM OUR BADA PHONE, B-A-D-A.
 7    Q    SO THE THIRD SCREEN IS A NATIVE ANDROID SCREEN
 8    SHOT; CORRECT?
 9    A    I CAN'T BE EXACT ON THIS, BUT IT DOES APPEAR
10    TO BE AN ANDROID.
11    Q    AND LET'S TURN -- LET'S ACTUALLY LOOK AT PX
12    55, WHICH IS A COLOR VERSION OF THIS TO MAKE IT
13    EASIER FOR ALL OF US.
14              AND, YOUR HONOR, WE WOULD OFFER PX 55, A
15    COLOR VERSION OF 22 --
16              MR. QUINN:  OBJECTION, YOUR HONOR.  I'M
17    INFORMED THAT THE COURT HAS EXCLUDED THIS DOCUMENT
18    I BELIEVE THIS MORNING.
19              MR. JACOBS:  THE WITNESS ASKED FOR A
20    COLOR VERSION, YOUR HONOR.  IT'S THE SAME DOCUMENT.
21    IT'S JUST IN COLOR.
22              MR. QUINN:  IF THAT'S THE CASE, YOUR
23    HONOR, I WITHDRAW THE OBJECTION.
24              THE COURT:  ALL RIGHT.  THEN IT'S
25    ADMITTED.
```

2546

```
 1              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
 2              55, HAVING BEEN PREVIOUSLY MARKED FOR
 3              IDENTIFICATION, WAS ADMITTED INTO
 4              EVIDENCE.)
 5     BY MR. JACOBS:
 6     Q    SO LET'S LOOK AT PX 55, PAGE -- THE APPENDIX
 7     PAGE.
 8              AND NOW YOU CAN SEE IT IN COLOR.  DO YOU
 9     SEE THAT?
10     A    YES, I SEE IT.
11     Q    AND DO YOU SEE OVER ON THE RIGHT SIDE THEN IS
12     THE SAMSUNG 2010 ICONS?
13     A    YES.
14     Q    AND IF YOU LOOK DOWN AT THE BOTTOM, YOU'LL SEE
15     THERE'S A REFERENCE TO ICON GUIDELINES.
16     A    YES, I SEE THEM.
17     Q    AND, IN FACT, YOU HAD APPLE ICON GUIDELINES IN
18     YOUR FILES; CORRECT?
19     A    I DON'T KNOW IF I HAD SUCH GUIDELINES.  BUT IF
20     YOU LOOK ON THE TEXT HERE, IT HAS THE URL ADDRESS
21     FOR APPLE, AS WELL AS URL ADDRESS FOR ANDROID.
22     Q    LET'S LOOK AT 2281, PLEASE.  DO YOU SEE 2281
23     IS IPHONE HUMAN INTERFACE GUIDELINES?
24     A    YES, I SEE IT.
25     Q    AND IF YOU LOOK AT THE BACK PAGE, AGAIN,
```

```
 1    YOU'LL SEE THAT PRODUCTION INFORMATION THAT HAS

 2    YOUR NAME ON IT?

 3    A    YES, I SEE IT.

 4              MR. JACOBS:  YOUR HONOR, I WOULD OFFER

 5    2281 INTO EVIDENCE.

 6              MR. QUINN:  NO OBJECTION.

 7              THE COURT:  IT'S ADMITTED.

 8              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

 9              2281, HAVING BEEN PREVIOUSLY MARKED FOR

10              IDENTIFICATION, WAS ADMITTED INTO

11              EVIDENCE.)

12              MR. JACOBS:  COULD WE HAVE PX 44 UP ON

13    THE SCREEN, PLEASE.  AND IN PARTICULAR, SLIDE 131

14    OF 132.

15    Q    I THINK YOU'LL WANT TO LOOK AT THE SCREEN,

16    MS. WANG.  DO YOU SEE THIS IS A SIDE-BY-SIDE

17    COMPARISON OF THE IPHONE USER INTERFACE AND

18    SOMETHING CALLED THE S I, OR GT-I9000.  DO YOU SEE

19    THAT?

20    A    I WONDER IF A KOREAN VERSION WOULD BE

21    AVAILABLE.

22    Q    YES.  LET ME HAND YOU ONE.

23              MAY I APPROACH?

24              THE COURT:  THAT'S OKAY.  GO AHEAD.

25    BY MR. JACOBS:
```

1    Q    NOW, THE GT-I9000, THAT'S THE SAME PHONE AS WE

2    WERE -- AS YOU WERE DISCUSSING WITH MR. QUINN;

3    CORRECT?

4    A    I CAN'T BE CERTAIN AS TO WHETHER THESE ARE THE

5    SAME MODELS BETWEEN THE GALAXY S I AND THE

6    GT-I9000.  THAT'S BECAUSE INTERNALLY WE DON'T USE

7    THE MODEL NAME GT-I9000.

8    Q    DO YOU SEE ON THE RIGHT-HAND SIDE THERE IS A

9    LOWER DOCK AND THERE'S A PHONE ICON?

10   A    YES.

11   Q    AND THAT PHONE ICON IN THE -- ON THE

12   RIGHT-HAND SIDE OF EXHIBIT 44, SLIDE 126 OF THAT

13   EXHIBIT IS A 1, 2, 3, 4 KEYPAD DESIGN; CORRECT?

14            THE INTERPRETER:  YOUR HONOR, MAY THE

15   INTERPRETER READ IT.  IT'S KOREAN ONLY.

16            THE COURT:  TO REINTERPRET IT AGAIN?

17   THAT'S WHAT SHE REQUESTED.  GO AHEAD.

18            THE WITNESS:  YES.  HERE THIS IS A, AN

19   ICON THAT'S ON TOP OF THE WRITING ON THE PHONE.

20            BUT THIS ICON ACTUALLY PRIOR TO MY COMING

21   HERE AS A WITNESS, I HAVE NOT SEEN THIS ICON

22   BEFORE.

23            MR. JACOBS:  THANK YOU VERY MUCH.

24            THE COURT:  OKAY.  THE TIME IS NOW 2:17.

25   GO AHEAD, PLEASE.

```
 1              MR. QUINN:  THANK YOU.
 2                 REDIRECT EXAMINATION
 3   BY MR. QUINN:
 4   Q    IF WE COULD PUT THAT LAST PAGE UP THERE,
 5   44.122, YOU INDICATED THAT YOU HAD NEVER SEEN THIS
 6   ICON BEFORE COMING HERE BEFORE.
 7              HAD YOU EVER EVEN SEEN THIS DOCUMENT,
 8   EXHIBIT -- PLAINTIFF'S EXHIBIT 44 THAT THIS IS
 9   TAKEN FROM?  HAD YOU EVER SEEN THAT?
10   A    THIS DOCUMENT THAT WE ARE LOOKING AT HERE,
11   THIS IS A DOCUMENT THAT I HAVE NOT SEEN BEFORE.
12   PRIOR TO MY COMING HERE AS A WITNESS, I REALLY
13   HAVEN'T SEEN THIS DOCUMENT BEFORE.
14   Q    LET'S BACK UP FOR A SECOND AND TAKE A LOOK AT
15   WHAT THIS DOCUMENT IS.
16              IF WE COULD PUT THE FIRST PAGE OF
17   PLAINTIFF'S EXHIBIT -- AND WE'LL COME BACK TO
18   THIS -- IF WE COULD PUT THE FIRST PAGE HERE.  AND
19   DO YOU HAVE THE KOREAN IN FRONT OF YOU, MS. WANG?
20   A    YES, I DO.
21   Q    ALL RIGHT.  WHAT IS THE SOFTWARE -- I ASSUME
22   SW IS SOFTWARE.
23              WHAT IS THE SOFTWARE VERIFICATION GROUP?
24   A    THE VERIFICATION GROUP AT SAMSUNG WOULD BE THE
25   TEAM THAT IS LOCATED IN GUMI, G-U-M-I, AND
```

2550

```
1    BASICALLY WHAT THEY DO IS ONCE THE DESIGNERS GIVE

2    GUIDELINES REGARDING UX, THE VERIFICATION TEAM

3    WOULD VERIFY IT TO SEE IF THE GUIDELINES HAD BEEN

4    PROPERLY FOLLOWED.

5              ALSO, THIS IS THE TEAM THAT WOULD MEASURE

6    THE ACTUAL SIZE OF A FONT OR AN ICON BECAUSE

7    SAMSUNG WOULD ALWAYS PREFER TO HAVE BIGGER FONT

8    AND/OR ICON.

9              SO THIS TEAM WOULD ACTUALLY MEASURE USING

10   A RULER TO SEE IF IT'S BIG.

11   Q    ALL RIGHT.  IS THIS GROUP, THE SOFTWARE

12   VERIFICATION GROUP, ARE THEY PART OF YOUR DESIGN

13   TEAM THAT DESIGNS THE ICONS AND THE USER INTERFACE?

14   A    NO, NOT AT ALL.

15   Q    DO THEY -- DOES THIS GROUP SOMETIMES MAKE

16   DESIGN SUGGESTIONS TO THE DESIGN -- TO YOUR DESIGN

17   TEAM?

18   A    YES, THEY WOULD OFTEN TELL US OR INDICATE TO

19   US WHETHER THERE IS A USABILITY ISSUE OR NOT.

20   Q    AS BETWEEN YOUR GROUP, THE DESIGN TEAM -- AS

21   BETWEEN YOUR GROUP AND THE SOFTWARE VERIFICATION

22   GROUP, WHO HAS THE FINAL SAY IN THE DESIGN OF THE

23   USER INTERFACE?

24   A    THE DESIGN TEAM, THAT'S US, THAT'S WHAT WE DO,

25   DESIGN.
```

```
 1              AND SO WE WOULD MAKE DECISIONS.  SO THIS

 2    GROUP, THEY CAN'T MAKE SUCH DECISIONS FOR US.

 3    Q    ALL RIGHT.  SO LET'S GO BACK AND LOOK AT THAT

 4    PAGE THAT COUNSEL WAS SHOWING YOU, 44.131.

 5              AND HAVE YOU, IN PREPARING TO TESTIFY,

 6    HAVE YOU HAD A CHANCE TO READ THIS DOCUMENT?

 7    A    YES, I DID.  AS I PREPARED, I HAD A CHANCE TO

 8    READ THE DOCUMENT.

 9    Q    AND IF WE LOOK AT THIS PHONE ICON HERE THAT

10    COUNSEL CALLED YOUR ATTENTION TO, IN YOUR VIEW, AS

11    A DESIGNER, WOULD THAT BE A GOOD IPHONE -- ICON FOR

12    A SMARTPHONE?

13    A    THIS IS A VERY CONFUSING ICON.  WHEN I LOOKED

14    AT IT FOR THE FIRST TIME SINCE GETTING HERE, IT

15    ACTUALLY LOOKED LIKE A CALCULATOR TO ME.  AND SO

16    IT'S HARD FOR ONE TO RECOGNIZE IT AS A PHONE.

17    Q    SO FAR AS YOU'RE AWARE, SO FAR AS YOU'RE

18    AWARE, HAS SAMSUNG EVER RELEASED A PHONE THAT HAD

19    THIS ICON ON IT FOR -- ON A TOUCHSCREEN?

20    A    I DON'T HAVE ANY RECOLLECTION AS TO THIS TYPE

21    OF ICON BEING USED IN A MASS PRODUCED MODEL FROM MY

22    OWN DESIGN.

23    Q    AND LET'S LOOK AT THE LAST RECOMMENDATION HERE

24    AT THE BOTTOM OF THE PAGE WHERE IT SAYS, "REMOVE A

25    FEELING THAT IPHONE'S MENU ICONS ARE COPIED BY
```

```
 1    DIFFERENTIATING DESIGN."

 2              DO YOU SEE THAT?

 3    A    YES, I SEE IT.

 4    Q    DID SAMSUNG TRY, AND YOU AND YOUR TEAM, TRY TO

 5    DEVELOP YOUR OWN UNIQUE, YOUR OWN ICONS?

 6    A    WE TRY TO DEVELOP SAMSUNG'S ICON, SOMETHING

 7    THAT REPRESENTS THE CHARACTERISTIC OF SAMSUNG.

 8    Q    LET'S LOOK AT A COUPLE OTHER RECOMMENDATIONS

 9    OF THE SOFTWARE VERIFICATION GROUP HERE.

10              IF WE COULD GO TO PAGE 44.127.  AND IS

11    THE RECOMMENDATION HERE THAT, TO TRY TO

12    DIFFERENTIATE ICONS, THAT YOU SHOULDN'T HAVE ICONS

13    HERE THAT LOOK SIMILAR?

14              MR. JACOBS:  YOUR HONOR, THAT'S LEADING.

15    THAT'S ALSO BEYOND THE SCOPE OF THE DOCUMENT.  THE

16    WITNESS HAS TESTIFIED SHE'S NEVER SEEN IT BEFORE.

17              MR. QUINN:  YOUR HONOR, THEY ASKED THE

18    WITNESS ABOUT THE DOCUMENT.

19              MR. JACOBS:  ONE PAGE OF IT, YOUR HONOR.

20              MR. QUINN:  WHICH IS IN EVIDENCE.

21              THE COURT:  IT IS A LEADING QUESTION.

22    I'LL SUSTAIN IT.

23              GO AHEAD.

24    BY MR. QUINN:

25    Q    WHAT IS YOUR UNDERSTANDING OF THE
```

1    RECOMMENDATION THAT THE SOFTWARE VERIFICATION GROUP

2    IS MAKING HERE ABOUT ICONS?

3    A    IT SAYS HERE THAT FOR A USER, THERE COULD BE

4    SOME CONFUSION BECAUSE THESE ICONS ARE QUITE

5    SIMILAR TO ONE OTHER.

6         AND IT ALSO RECOMMENDS THAT IT WOULD --

7    IT SHOULD BE CHANGED TO AN ICON THAT WOULD BE MORE

8    INSTINCTIVELY PERCEIVED.

9    Q    AND AS A DESIGNER, DO YOU THINK THAT'S A GOOD

10   PRINCIPLE THAT YOU SHOULD HAVE ICONS THAT ARE NOT

11   CONFUSING?

12   A    OF COURSE.

13   Q    DO YOU THINK ANY ONE COMPANY OWNS THE RIGHT TO

14   HAVE ICONS THAT ARE NOT CONFUSING?

15        MR. JACOBS:  YOUR HONOR, THIS IS LEADING

16   AN EXPERT AND ARGUMENTATIVE QUESTION.

17        MR. QUINN:  I'LL WITHDRAW THE QUESTION,

18   YOUR HONOR.

19        THE COURT:  THANK YOU.

20   BY MR. QUINN:

21   Q    BASED ON YOUR -- YOU DO -- I THINK YOU'VE

22   INDICATED THAT YOU LOOK AT YOUR COMPETITORS' PHONES

23   AND YOUR COMPETITORS' ICONS; IS THAT TRUE?

24   A    THAT IS CORRECT.

25   Q    OKAY.  AND BASED ON WHAT YOU HAVE SEEN, CAN

2554

```
 1    YOU TELL US WHETHER OR NOT YOU BELIEVE OTHER

 2    COMPANIES ALSO TRY TO HAVE ICONS THAT ARE NOT

 3    CONFUSING AND ARE DIFFERENT FROM EACH OTHER?

 4    A    I BELIEVE THEY ALL TRY THEIR BEST TO COME UP

 5    WITH A DESIGN THAT WOULD NOT CONFUSE THE USERS.

 6    Q    SO LET'S LOOK AT EXHIBIT 55, WHICH COUNSEL

 7    SHOWED YOU, AND IN PARTICULAR PAGE 55.5.  AND

 8    COUNSEL CALLED YOUR ATTENTION TO THESE SCREENS

 9    HERE, AND I THINK YOU SAID THESE WERE BADA,

10    B-A-D-A, PHONES.

11    A    YES.

12    Q    I'M SORRY.  WRONG PAGE.  55.15.  SORRY.  THESE

13    ON THE RIGHT-HAND SIDE, I THINK YOU SAID THESE WERE

14    BADA, B-A-D-A.

15    A    THAT IS CORRECT.

16    Q    WOULD YOU TELL THE JURY WHAT BADA PHONES ARE?

17    A    THIS IS OUR SMARTPHONE.  THIS IS SAMSUNG OS.

18    Q    SO THESE -- ARE THESE ANDROID PHONES?

19    A    THE ONES AT THE FAR END, THAT'S NOT ANDROID.

20    THAT'S BADA.

21    Q    THIS ONE?

22    A    YEAH.

23    Q    AND THIS IS THE ANDROID HERE?

24    A    THAT'S HOW IT APPEARS TO ME.

25    Q    ALL RIGHT.  AND IS -- ARE THEY -- ARE THE
```

2555

```
 1    GALAXY PHONES, ARE THEY BADA PHONES OR ARE THEY

 2    ANDROID PHONES?

 3    A    THEY ARE ANDROIDS.

 4    Q    ALL RIGHT.  SO FAR AS YOU'RE AWARE, ARE THESE

 5    EVEN, THESE BADA PHONES, ARE THEY ACCUSED IN THIS

 6    CASE?  DO THEY HAVE ANYTHING TO DO WITH THIS CASE

 7    SO FAR AS YOU'RE AWARE?

 8    A    NO.

 9    Q    AND THEN -- THANK YOU.

10         I HAD ASKED YOU, ON MY DIRECT

11    EXAMINATION, WHETHER, IN DESIGNING THE ICONS FOR

12    THE GALAXY PHONES, IN DOING THAT WORK, YOU HAD

13    REFERRED TO APPLE ICONS.

14         DO YOU RECALL ME ASKING YOU THAT?

15    A    AT WHICH POINT ARE YOU REFERRING TO?

16    Q    WHEN I WAS TALKING TO YOU BEFORE.  DO YOU

17    RECALL I ASKED YOU WHETHER, IN DESIGNING ICONS, YOU

18    HAD REFERRED TO APPLE ICONS?  DO YOU RECALL ME

19    ASKING YOU THAT?

20    A    I RECALL.

21    Q    AND DO YOU REMEMBER THAT WHEN COUNSEL STOOD

22    UP, HE REPEATED THAT QUESTION.  DO YOU RECALL THAT?

23    A    YES, I DO RECALL.

24    Q    AND THEN HE SHOWED YOU EXHIBIT 2257, AND IF WE

25    COULD PUT THAT ON THE SCREEN, PLEASE.  AND IN
```

2556

```
1    PARTICULAR, PAGE 2257.4.  DO YOU RECALL HIM SHOWING

2    YOU THIS AFTER HE ASKED YOU AGAIN, IS IT TRUE THAT

3    YOU DIDN'T LOOK AT APPLE ICONS WHEN YOU WERE

4    DESIGNING THE GALAXY ICONS?  DO YOU RECALL HE THEN

5    SHOWED YOU THIS PAGE?

6    A    YES, I DO.

7    Q    AND THEN HE SHOWED YOU THE METADATA ON PAGE

8    5 -- 2257.5.  DO YOU RECALL THAT?  AND HE SHOWED

9    YOU YOUR NAME?

10   A    YES, I DO.

11   Q    AND DO YOU SEE A DATE HERE ON THIS DOCUMENT?

12   ABOUT WHEN THIS WAS CREATED?

13   A    IS IT CORRECT THAT IT'S WRITTEN AS --

14   Q    67?

15   A    YEAR 2011.

16   Q    APRIL 2011, RIGHT?

17   A    THAT'S CORRECT, THAT'S HOW IT'S WRITTEN.

18   Q    COUNSEL DIDN'T CALL YOUR ATTENTION TO THAT

19   DATE, DID HE?

20   A    THAT'S CORRECT.

21   Q    HOW LONG AFTER -- HOW LONG AFTER YOU HAD

22   DESIGNED THE GALAXY ICONS WAS THIS?  THIS IS -- HOW

23   LONG BEFORE THIS DATE, APRIL 22, 2011 HAD YOU

24   DESIGNED THE GALAXY ICONS?

25   A    WELL, THIS WOULD BE A TIME WHEN OVER A YEAR
```

1   WOULD HAVE PASSED SINCE THE DESIGNING OF GALAXY S I

2   ICONS.

3           AND ALSO, THIS WOULD BE ABOUT THE TIME

4   WHEN THE GALAXY S II ICONS WOULD HAVE BEEN

5   COMPLETED AS FAR AS THE DESIGNS ARE CONCERNED.

6   Q   AND ISN'T IT TRUE THAT THIS, THIS DATE HERE,

7   YOU WERE ASKED TO DO THIS AS PART OF WORK FOR THIS

8   LAWSUIT BECAUSE APPLE HAD ALREADY FILED THE LAWSUIT

9   AS OF THIS DATE?  ISN'T THAT TRUE?

10          MR. JACOBS:  YOUR HONOR, THAT'S QUITE

11  LEADING AND LACKS --

12          MR. QUINN:  I'LL WITHDRAW THE QUESTION,

13  YOUR HONOR.

14          THE COURT:  OKAY.

15  BY MR. QUINN:

16  Q   DO YOU RECALL BEING ASKED BY PEOPLE ON THE

17  I.P. TEAM AT SAMSUNG TO HELP PULL TOGETHER SOME

18  INFORMATION ABOUT ICONS AFTER APPLE HAD MADE A

19  CLAIM?  DO YOU RECALL THAT?

20  A   YES, I DO RECALL.

21          MR. QUINN:  NOTHING FURTHER.

22          THE COURT:  OKAY.  THE TIME IS NOW 2:36.

23  ANY RECROSS?

24          MR. JACOBS:  NOTHING FURTHER, YOUR HONOR.

25  NOTHING FURTHER.

```
 1              THE COURT:  OKAY.  MAY THIS WITNESS BE
 2    EXCUSED?  AND IS IT SUBJECT TO RECALL OR NOT?
 3              MR. QUINN:  NOT SUBJECT TO RECALL.
 4              THE COURT:  NOT SUBJECT.
 5              MR. QUINN:  SHE IS FREE TO GO HOME, YOUR
 6    HONOR.
 7              THE COURT:  OKAY.  YOU'RE EXCUSED.  YOU
 8    CAN STEP DOWN.
 9              ALL RIGHT.  CALL YOUR NEXT WITNESS,
10    PLEASE.
11              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
12    SAMSUNG'S NEXT WITNESS BY VIDEO TESTIMONY, IS
13    ROGER FIDLER.  AND IF WE COULD JUST HAVE ONE SECOND
14    TO GET PEOPLE CLEARED OUT.
15              YOUR HONOR, JUST FOR CLARITY, SINCE
16    MR. FIDLER IS NOT HERE IN PERSON, I JUST WANT TO
17    POINT OUT, HE'S A THIRD PARTY WITNESS AND IS NOT
18    AFFILIATED WITH EITHER APPLE OR SAMSUNG.
19              CAN WE PLAY IT?
20              THE COURT:  GO AHEAD, PLEASE.  IT'S 2:37.
21              **(WHEREUPON, THE VIDEOTAPED DEPOSITION OF**
22    **ROGER FIDLER WAS PLAYED IN OPEN COURT OFF THE**
23    **RECORD.)**
24              THE COURT:  WE HAVE NO AUDIO.
25              (PAUSE IN PROCEEDINGS.)
```

```
 1              (WHEREUPON, THE VIDEOTAPED DEPOSITION OF

 2     ROGER FIDLER WAS PLAYED IN OPEN COURT OFF THE

 3     RECORD.)

 4              THE COURT:  OKAY.  IS THAT THE END OF IT?

 5              MR. VERHOEVEN:  YES.

 6              THE COURT:  ALREADY.  IT'S 2:50.

 7              MR. VERHOEVEN:  YES, YOUR HONOR.  I WAS

 8     JUST GOING TO LODGE IT, LODGE THE TRANSCRIPT.

 9     WE'RE GOING TO MOVE TWO EXHIBITS IN.

10              THE COURT:  ALL RIGHT.  THEN IT'S STILL

11     COUNTING TOWARDS YOUR TIME.

12              MR. VERHOEVEN:  YES, YOUR HONOR.

13              THE COURT:  GO AHEAD.

14              MR. VERHOEVEN:  WE WOULD MOVE DX 529,

15     WHICH WAS THE PRESENTATION THAT MR. FIDLER

16     AUTHENTICATED.

17              THE COURT:  ANY OBJECTION?

18              MR. MCELHINNY:  YES, YOUR HONOR.  UNDER

19     YOUR RULING, A FOUNDATION HAD TO BE LAID.  THERE

20     WAS NO FOUNDATION OTHER THAN HEARSAY.  THERE WAS NO

21     FOUNDATION ABOUT WHAT IT WAS, THE CIRCUMSTANCES

22     THAT IT WAS CREATED.  IT DOESN'T EVEN SAY THE DATE

23     IT WAS CREATED.

24              THERE'S ABSOLUTELY NO FOUNDATION FOR THE

25     ADMISSION OF THIS DOCUMENT.
```

2560

1          MR. VERHOEVEN:  YOUR HONOR, I HAVE THE

2    TRANSCRIPT AND I CAN REFERENCE YOU TO THE LINES AND

3    WHERE HE AUTHENTICATES IT.

4          THE COURT:  ALL RIGHT.  LET ME SEE THAT,

5    PLEASE.

6          MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

7          THE COURT:  AND THAT WAS ONLY WHAT WAS

8    PLAYED, RIGHT?

9          MR. VERHOEVEN:  CORRECT.  THIS IS JUST

10   THE EXCERPT OF WHAT WAS PLAYED, THE THING I HAD

11   ASKED TO LODGE.  JUST FOR RECORD, IT'S DEFENDANT'S

12   EXHIBIT NUMBER 805.

13         MR. MCELHINNY:  WE HAVE NO OBJECTION TO

14   THE LODGING, YOUR HONOR.

15         THE COURT:  OKAY.

16         MR. VERHOEVEN:  SO IF YOU LOOK, YOUR

17   HONOR, AT PAGE 3 OF 7, THE BOTTOM RIGHT-HAND, THE

18   GRAY PART --

19         THE COURT:  OKAY.  LET ME JUST TAKE A

20   QUICK LOOK, PLEASE.

21         MR. VERHOEVEN:  PAGE 3 OF 7, AND THE

22   EXCERPT BEGINS AT PAGE 290, LINE 4.

23         THE COURT:  OKAY.

24         MR. VERHOEVEN:  AND CONTINUES.

25         THE COURT:  AND WHAT'S YOUR OBJECTION,

```
 1     MR. MCELHINNY?
 2               MR. MCELHINNY:  YOUR HONOR, THERE'S
 3     NOTHING THAT TAKES IT OUT OF THE HEARSAY RULE.
 4               THERE'S NO FOUNDATION THAT IT'S A
 5     BUSINESS RECORD.  IT DOESN'T TALK ABOUT THE DATE IT
 6     WAS CREATED.  IT DOESN'T TALK ABOUT WHAT'S IN IT.
 7     IT WAS JUST SIMPLY HELD UP AND SHOWN TO THE CAMERA.
 8               MR. VERHOEVEN:  THE WITNESS AUTHENTICATED
 9     THE DOCUMENT, YOUR HONOR.
10               THE COURT:  ALL RIGHT.  WHAT'S YOUR OTHER
11     REQUEST?
12               MR. VERHOEVEN:  THE OTHER ONE WOULD BE
13     THE VIDEO THAT THE WITNESS AUTHENTICATED IN HIS
14     TRANSCRIPT AT PAGE -- FOR THE RECORD, THAT IS DX
15     621, YOUR HONOR, AND I DIRECT YOUR ATTENTION TO --
16               THE COURT:  WELL, HE NEEDS -- IT NEEDS TO
17     BE PLAYED, SO I'M NOT GOING TO LET YOU CIRCUMVENT
18     THE TRIAL LIMITS BY GETTING A VIDEO THAT WASN'T
19     PLAYED IN OUR TRIAL TIME IN.
20               MR. VERHOEVEN:  WE CAN PLAY IT, YOUR
21     HONOR.
22               THE COURT:  805, THAT'S COMING -- I'M
23     SORRY.  805 IS ALREADY LODGED.
24               529 IS ADMITTED.  THAT'S THE NEWSPAPER.
25               MR. VERHOEVEN:  OKAY.
```

2562

```
 1              THE COURT:  BUT I AM NOT GOING TO ADMIT

 2     THE VIDEO.  I THOUGHT YOU WERE GOING TO SHOW THE

 3     VIDEO.

 4              MR. VERHOEVEN:  WE WERE PLANNING TO, BUT

 5     WE WANTED TO AUTHENTICATE IT FIRST, WHICH IS WHAT

 6     HE DID.

 7              THE COURT:  I'M NOT ADMITTING IT UNTIL

 8     LATER, BUT --

 9              MR. VERHOEVEN:  WELL, BEFORE WE PLAY IT,

10     WE WANTED TO MAKE SURE THAT THE OBJECTION TO ITS

11     AUTHENTICITY WAS DEALT WITH, AND THAT'S WHY WE

12     FIRST JUST PLAYED THE TESTIMONY WHERE HE

13     AUTHENTICATED IT.

14              SO, I MEAN, WE CAN PLAY IT FIRST AND THEN

15     MOVE TO ADMIT IT.

16              I JUST THOUGHT YOUR HONOR WOULD RATHER

17     HAVE US --

18              THE COURT:  ALL RIGHT.  WHAT IS YOUR

19     ISSUE?  I RULED ON THIS YESTERDAY.  SO WHAT'S GOING

20     ON, MR. MCELHINNY.  I ALREADY RULED ON THE VIDEO.

21              MR. MCELHINNY:  IT WAS SUBJECT TO LAYING

22     THE FOUNDATION, YOUR HONOR.

23              WE HAVE THE SAME OBJECTION.  IT'S A

24     HEARSAY VIDEO.  THERE'S NO EXCLUSION.  IT'S NOT A

25     BUSINESS RECORD.  THERE'S NO -- THERE'S NO ACCURACY
```

```
 1    ABOUT IT.  THERE'S NO -- IT HASN'T EVEN BEEN SHOWN,

 2    SO WE DON'T EVEN KNOW WHAT'S IN IT.  IT'S AN

 3    UNSHOWN VIDEO.

 4              MR. VERHOEVEN:  THEY KNOW WHAT'S IN IT

 5    BECAUSE IT WAS PLAYED AT THE DEPOSITION.

 6              THE COURT:  IS THIS 164, LINE 23?

 7              MR. VERHOEVEN:  CORRECT, YOUR HONOR, AND

 8    IT CARRIES ON TO 165:22.

 9              THE COURT:  OKAY.  WHAT I'M READING IN

10    HERE DOESN'T SAY WHEN IT WAS CREATED.  IT JUST SAYS

11    "CAN YOU CONFIRM THAT THE VIDEO WE JUST WATCHED IS

12    THE VIDEO THAT'S DESCRIBED?"

13              MR. VERHOEVEN:  IT'S REFERRING TO -- IT'S

14    REFERRING TO THE DECLARATION, YOUR HONOR.  IT'S AN

15    EXHIBIT TO THE DECLARATION.

16              THE COURT:  ALL RIGHT.

17              MR. VERHOEVEN:  AND HE'S CONFIRMING THAT

18    THAT'S WHAT WAS SUBMITTED IN THIS SWORN

19    DECLARATION, YOUR HONOR.

20              THE COURT:  WHEN WAS -- WHEN WAS THE

21    VIDEO MADE AND WHAT -- IS THERE ANYTHING --

22              MR. MCELHINNY:  THE DECLARATION, OF

23    COURSE, WAS STRICKEN, YOUR HONOR, UNDER YOUR RULE,

24    AS HEARSAY.

25              MR. VERHOEVEN:  IN THE INTERESTS OF TIME,
```

2564

```
1    YOUR HONOR, MAYBE WE SHOULD GET ALL THIS -- GET THE

2    DECLARATION AND ALL THIS TIED UP.  I DIDN'T REALIZE

3    THERE WERE GOING TO BE THESE EXTENSIVE OBJECTIONS

4    AND WE'LL DO IT LATER.

5              THE COURT:  DX 529 IS IN.  THAT'S

6    ADMITTED.

7              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

8              529, HAVING BEEN PREVIOUSLY MARKED FOR

9              IDENTIFICATION, WAS ADMITTED INTO

10             EVIDENCE.)

11             THE COURT:  805 IS LODGED.  ALL THE DEPOS

12   ARE LODGED, AND THEN I GUESS WE'LL HANDLE THE

13   VIDEO.

14             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

15             MR. MCELHINNY:  WE HAVE

16   COUNTER-DESIGNATIONS TO PLAY, YOUR HONOR.

17             THE COURT:  ALL RIGHT.  ALL RIGHT.

18             GO AHEAD.

19             MR. VERHOEVEN:  YOUR HONOR, I DID GET THE

20   DECLARATION, IF YOU WANT TO JUST CONCLUDE THIS.

21             THE COURT:  I THOUGHT YOU WANTED TO TAKE

22   CARE OF IT --

23             MR. VERHOEVEN:  WELL, I GOT IT.

24             THE COURT:  YES, PLEASE.  LET ME JUST

25   TAKE A LOOK.
```

```
1              MR. VERHOEVEN:  SURE.  MAY I APPROACH,
2     YOUR HONOR?
3              THE COURT:  YES, PLEASE.
4              MR. VERHOEVEN:  PARAGRAPH 14.
5              (PAUSE IN PROCEEDINGS.)
6              THE COURT:  ALL RIGHT.  THE VIDEO IS
7     ADMITTED.  THAT'S 814.  I'M GOING TO RETURN THIS.
8              CAN YOU PLEASE RETURN THIS TO
9     MR. VERHOEVEN.
10             ALL RIGHT.  THAT'S DX 621.
11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
12             621, HAVING BEEN PREVIOUSLY MARKED FOR
13             IDENTIFICATION, WAS ADMITTED INTO
14             EVIDENCE.)
15             THE COURT:  AND I'M GOING TO RETURN --
16     THIS IS WHAT'S BEING LODGED AS 805.  THANK YOU,
17     MR. RIVERA.
18             ALL RIGHT.  GO AHEAD, PLEASE.
19             MR. MCELHINNY:  THANK YOU.
20             (WHEREUPON, THE VIDEOTAPED DEPOSITION OF
21     ROGER FIDLER WAS PLAYED IN OPEN COURT OFF THE
22     RECORD.)
23             MR. MCELHINNY:  YOUR HONOR, FOR THE
24     RECORD, WE WOULD LODGE PLAINTIFF'S EXHIBIT 205,
25     WHICH IS THE TRANSCRIPT OF OUR EXCERPTS.
```

2566

```
1              THE COURT:  OKAY.  ANYTHING ELSE?

2              MR. MCELHINNY:  NO, MA'AM.

3              THE COURT:  OKAY.  ALL RIGHT.

4              THE TIME IS NOW 3:03.  LET'S TAKE OUR

5   BREAK FOR THE DAY.  WE'LL TAKE A 15-MINUTE BREAK.

6              AGAIN, PLEASE KEEP AN OPEN MIND AND

7   PLEASE DON'T DISCUSS THE CASE WITH ANYONE AND DON'T

8   DO ANY READING ABOUT THE CASE.

9              ALL RIGHT.  THANK YOU.

10             (WHEREUPON, THE FOLLOWING PROCEEDINGS

11  WERE HELD OUT OF THE PRESENCE OF THE JURY:)

12             THE COURT:  OKAY.  SO WE'RE DONE WITH --

13  PLEASE SIT DOWN.

14             SO WE'RE DONE WITH MR. FIDLER; IS THAT

15  RIGHT?

16             MR. MCELHINNY:  YES, YOUR HONOR.

17             MR. VERHOEVEN:  THE ONLY THING IS AT SOME

18  POINT WE'RE GOING TO PLAY THE VIDEO IN EVIDENCE,

19  BUT WE'RE DONE WITH THE DESIGNATIONS.

20             THE COURT:  OKAY.  WHEN WERE YOU -- I

21  THOUGHT YOU WERE GOING TO DO THAT AFTER I ADMITTED

22  IT.  ARE YOU GOING TO DO IT NOW?

23             MR. VERHOEVEN:  I'M REALLY CONCERNED TO

24  GET MR. SHERMAN OFF.

25             THE COURT:  OKAY.
```

2567

```
 1              MR. VERHOEVEN:  SO I WOULD PROPOSE DOING

 2    IT IMMEDIATELY AFTER THAT IF THAT'S OKAY WITH YOUR

 3    HONOR, BECAUSE IT'S ABOUT A 15-MINUTE VIDEO, AND

 4    I'M JUST WORRIED THAT HE BE ABLE TO MAKE HIS PLANE.

 5              THE COURT:  THAT'S FINE.

 6              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

 7              THE COURT:  ALL RIGHT.  SO WE'LL DO

 8    MR. SHERMAN WHEN WE GET BACK.

 9              ALL RIGHT.  THANK YOU.

10              (WHEREUPON, A RECESS WAS TAKEN.)

11              (WHEREUPON, THE FOLLOWING PROCEEDINGS

12    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

13              MS. KREVANS:  YOUR HONOR, I HAVE ONE

14    ISSUE I'D LIKE TO RAISE.  I DON'T KNOW WHAT

15    QUESTIONS MR. VERHOEVEN IS GOING TO ASK THE

16    WITNESS, BUT I SEE ON THE TABLE THE '305 PROTOTYPE.

17              PER YOUR HONOR'S RULING'S AND

18    JUDGE GREWAL PRIOR RULINGS, THIS WITNESS CANNOT

19    TESTIFY ABOUT THE PROTOTYPE, AND HE CANNOT TESTIFY

20    ABOUT IT.  IT'S SITTING RIGHT HERE.  IT WAS STRUCK.

21    THE ONLY MENTION OF IT WAS STRUCK IN THE EXPERT

22    REPORT.

23              THE COURT:  SHOW ME WHERE --

24              MR. VERHOEVEN:  YOUR HONOR, I HAVE NO

25    INTENTION OF USING THAT EXHIBIT ON DIRECT
```

2568

```
 1   EXAMINATION.
 2             MS. KREVANS:  THEN CAN WE NOT DISPLAY IT.
 3             THE COURT:  THEN PUT IT AWAY, IF YOU
 4   WOULDN'T MIND, PLEASE.
 5             MR. VERHOEVEN:  UNLESS THEY OPEN THE DOOR
 6   ON CROSS-EXAMINATION.
 7             THE COURT:  ALL RIGHT.  HOW ARE THEY
 8   GOING TO OPEN THE DOOR?
 9             MR. VERHOEVEN:  WELL, FOR EXAMPLE, YOUR
10   HONOR, THEY MIGHT CROSS MR. SHERMAN BY POINTING OUT
11   THAT THE FIDLER TABLET WAS A MOCKUP AND DIDN'T
12   FUNCTION.
13             THEN I WOULD THINK IT WOULD BE RELEVANT
14   TO POINT OUT THAT THE MODEL THAT SERVED AS THE
15   BASIS -- THIS IS UNDISPUTED, YOU WERE, FOR THE
16   DRAWINGS IN THE '889 WAS SIMILARLY A MOCKUP THAT
17   DID NOT FUNCTION.
18             IF THEY DO THAT, I WOULD ARGUE TO YOUR
19   HONOR THAT I COULD BE ENTITLED TO REBUT THAT BY
20   POINTING OUT THAT FACT AND THAT FACT ONLY.
21             MS. KREVANS:  YOUR HONOR, EVEN IF I DID
22   ASK THAT QUESTION, THERE'S NO POSSIBLE WAY THAT
23   OPENS THE DOOR TO THEM USING A MODEL THAT HAS
24   ALREADY BEEN STRUCK BECAUSE IT WAS NOT PROPERLY --
25             THE COURT:  I KNOW.  THAT'S NOT GOING TO
```

```
 1    OPEN THE DOOR.

 2              MR. VERHOEVEN:  I WOULD ASK, YOUR HONOR,

 3    THAT ON CROSS THEY NOT BE PERMITTED TO TRY AND

 4    CONFUSE THE JURY BY SUGGESTING, THROUGH

 5    CROSS-EXAMINATION, THAT A MOCKUP IS NON-FUNCTIONAL

 6    AND SOMEHOW NOT APPROPRIATE TO SERVE AS PRIOR ART

 7    FOR A DESIGN PATENT.

 8              A DESIGN PATENT DOES NOT HAVE TO

 9    FUNCTION.  IT'S SIMPLY AN IMAGE.  IT'S A PICTURE.

10    AND TO SUGGEST ON CROSS-EXAMINATION THAT SOMEHOW

11    IT'S NOT INVALIDATING BECAUSE IT'S A MOCKUP WOULD

12    BE IRRELEVANT, PREJUDICIAL, AND CONFUSING TO THE

13    JURY.

14              AND WITHOUT ME BEING ABLE TO REBUT IT IN

15    ANY WAY, I WOULD BE PREJUDICED.

16              MS. KREVANS:  YOUR HONOR, THE 035 HAS

17    NOTHING TO DO WITH REBUTTAL OF WHETHER THIS FIDLER

18    MOCKUP WAS FUNCTIONAL OR NOT.  IT'S COMPLETELY

19    IRRELEVANT.

20              THE COURT:  WHAT WAS THE LIMITED QUESTION

21    YOU WANTED, MR. VERHOEVEN?

22              MR. VERHOEVEN:  IF, ON CROSS-EXAMINATION,

23    COUNSEL FOR APPLE CROSSES MR. SHERMAN BY SAYING,

24    "NOW, THIS FIDLER TABLET DIDN'T WORK, IT WAS JUST A

25    MODEL, YOU COULDN'T ACTUALLY USE IT, YOU COULDN'T
```

```
 1     ACTUALLY, YOU KNOW, TOUCH IT WITH THE TOUCHSCREEN

 2     AND MAKE IT FUNCTION, IT WAS JUST A MODEL THAT YOU

 3     CREATED AND IT NEVER WAS A REALLY WORKING PRODUCT.

 4     IN FACT, YOU TRIED TO GET SOMEONE TO MAKE IT A

 5     WORKING PRODUCT, BUT THEY DIDN'T DO IT AND IT WAS

 6     NEVER MADE," THEN I THINK, IN FAIRNESS, I SHOULD BE

 7     ABLE, AT LEAST ON A LIMITED BASIS, TO SHOW HIM THE

 8     FACT THAT THE --

 9              THE COURT:  WHY CAN'T YOU ASK THAT

10     QUESTION ABOUT SHOWING IT -- I MEAN, I'VE NOTICED

11     THAT YOU HAD IT DISPLAYED ON THAT BLACK BRIEFCASE

12     THE ENTIRE DAY, OPEN.  THAT'S WHY MR. RIVERA ASKED

13     ME WHAT IT WAS.

14              MR. VERHOEVEN:  WELL, YOUR HONOR, WE HAVE

15     ALL KINDS OF PRODUCTS, YOUR HONOR.

16              THE COURT:  WELL, THAT'S THE ONLY ONE I

17     SAW ON DISPLAY THE WHOLE DAY.

18              BUT ANYWAY --

19              MR. VERHOEVEN:  THE 035 IS IN EVIDENCE,

20     YOUR HONOR.

21              THE COURT:  IT'S BEEN STRICKEN FROM THIS

22     PERSON'S TESTIMONY.

23              I THINK YOU CAN ASK THE QUESTION.  I

24     DON'T SEE WHY THE MOCKUP ITSELF, WHICH HAS BEEN ON

25     TOP OF THAT OPEN BLACK BRIEFCASE THE ENTIRE DAY --
```

```
 1                MR. VERHOEVEN:  SO I CAN ASK A QUESTION
 2    ABOUT THE MOCKUP WITHOUT SHOWING IT.
 3                THE COURT:  YOU'RE GOING TO GO INTO
 4    NONFUNCTIONALITY, I THINK THAT'S FINE.
 5                MS. KREVANS:  I'M SORRY.  YOU'RE SAYING
 6    HE CAN ASK THIS WITNESS, ALL OF THE TESTIMONY ABOUT
 7    THE PROTOTYPE THAT'S BEEN STRUCK -- YOU CAN ASK A
 8    QUESTION ABOUT THE PROTOTYPE?  I DON'T SEE HOW THAT
 9    POSSIBLY --
10                THE COURT:  HE CAN ASK IF OTHER
11    PROTOTYPES ARE ALSO NONFUNCTIONING.
12                MS. KREVANS:  SO IF I ASK THE ON CROSS
13    WHETHER THE FIDLER MOCKUP WAS FUNCTIONAL, THEN HE
14    CAN ASK THAT ONE QUESTION ON REDIRECT?
15                THE COURT:  YEAH.
16                MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
17    AND I WOULD JUST SUGGEST THAT THAT IS IRRELEVANT TO
18    THE ISSUES HERE, WHETHER IT'S FUNCTIONING OR NOT IS
19    IRRELEVANT TO A DESIGN PATENT.
20                AND SO IT REALLY SHOULD -- IT'S NOT
21    SOMETHING THAT WE SHOULD EVEN BE GOING INTO.  IT
22    WOULD BE CONFUSING FOR THE JURY AND DISTRACT FROM
23    THEIR ABILITY TO UNDERSTAND THE ISSUES.
24                SO IT WOULD BE BEST IF IT JUST WASN'T
25    EVEN RAISED ON CROSS BECAUSE IT'S NOT A RELEVANT
```

2572

```
1    FACTOR, YOUR HONOR.

2            THE COURT:  WELL, IF YOU'RE GOING TO

3    OBJECT TO IT.  IT WAS IN THEIR COUNTER-DESIGNATION.

4    THEY ASKED WHETHER IT WAS NONFUNCTIONING.  HE SAID

5    IT WAS ALL VIDEO MAGIC.  YOU DIDN'T MAKE ANY

6    HIGH-PRIORITY OBJECTION TO THAT

7    COUNTER-DESIGNATION.  SO IT'S COMING IN.

8            ANYWAY, OKAY, LET'S GO.

9            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

10           (WHEREUPON, THE FOLLOWING PROCEEDINGS

11   WERE HELD IN THE PRESENCE OF THE JURY:)

12           THE COURT:  ALL RIGHT.  WELCOME BACK.

13   IT'S 3:23.  LET'S GO.

14           MR. VERHOEVEN:  YOUR HONOR, SAMSUNG CALLS

15   ITAY SHERMAN.  HE'S ALREADY ON THE STAND.  HE NEEDS

16   TO BE SWORN IN, THOUGH.

17           THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

18                     ITAY SHERMAN,

19   BEING CALLED AS A WITNESS ON BEHALF OF THE

20   DEFENDANTS, HAVING BEEN FIRST DULY SWORN, WAS

21   EXAMINED AND TESTIFIED AS FOLLOWS:

22           THE WITNESS:  I DO.

23           THE CLERK:  THANK YOU.  PLEASE BE SEATED.

24           THE COURT:  OKAY.  3:24.  GO AHEAD.

25   /   /   /
```

2573

1              **DIRECT EXAMINATION**

2      BY MR. VERHOEVEN:

3      Q     GOOD AFTERNOON, MR. SHERMAN.

4      A     GOOD AFTERNOON.

5      Q     CAN YOU PLEASE STATE YOUR NAME FOR THE JURY?

6      A     ITAY SHERMAN.

7      Q     WHERE DO YOU LIVE?

8      A     I LIVE NEAR TEL AVIV IN ISRAEL.

9      Q     WHAT DO YOU DO FOR A LIVING?

10     A     I AM A CONSULTANT, AND I AM THE CEO OF

11     DOUBLETOUCH.

12     Q     WHAT IS DOUBLETOUCH?

13     A     DOUBLETOUCH IS THE TECHNOLOGY COMPANY THAT

14     DEVELOPS TECHNOLOGY FOR LOW-COST MULTITOUCH

15     TECHNOLOGY.

16     Q     WHAT ARE YOU HERE TO TESTIFY ABOUT TODAY?

17     A     I'M HERE TO TESTIFY ABOUT THE VALIDITY OF

18     THREE APPLE DESIGN PATENTS.

19     Q     OKAY.  BEFORE WE GET INTO THAT, LET'S GO OVER

20     YOUR BACKGROUND A LITTLE BIT.

21            CAN WE PUT UP SDX 3970.01 ON THE SCREEN.

22     MR. SHERMAN, CAN YOU SUMMARIZE YOUR EDUCATIONAL

23     BACKGROUND FOR THE JURY?

24     A     I HAVE A MASTER'S DEGREE IN ELECTRICAL

25     ENGINEERING FROM TEL AVIV ENGINEER.

2574

```
1    Q    DO YOU HAVE ANY EXPERIENCE WITH THE DESIGN AND

2    DEVELOPMENT OF MOBILE PHONE HANDSET PRODUCTS?

3    A    YES, I DO.  I'VE WORKED IN TEXAS INSTRUMENTS,

4    AND IN MY LAST ROLE, I HAVE BEEN THE CEO FOR CHIEF

5    TECHNOLOGY OFFICER FOR THE MOBILE CONNECTIVITY

6    SOLUTION GROUP IN TEXAS INSTRUMENTS.

7              AND I'VE BEEN THE CHIEF TECHNOLOGY

8    OFFICER FOR THE GROUP, AND SINCE THAT TIME, I'M

9    ALSO A CONSULTANT THAT IS WORKING ON MOBILE

10   TECHNOLOGY, MOBILE HANDSET TECHNOLOGY AS WELL.

11   Q    CAN YOU DESCRIBE THE WORK YOU DID AT TEXAS

12   INSTRUMENTS.

13   A    YES.  AT TEXAS INSTRUMENTS, THE GROUP THAT I

14   WAS PART OF WAS DEVELOPING THE COMPONENTS FOR

15   MOBILE PHONES.  WE WERE DOING SO BASED ON FEEDBACKS

16   THAT WE WERE GETTING FROM THE LEADING MOBILE

17   HANDSET MANUFACTURERS.

18              AND THAT'S THE THINGS THAT WE WERE

19   DEVELOPING AT TEXAS INSTRUMENTS.

20   Q    AND WHAT WAS MODU LIMITED?

21   A    MODU LIMITED WAS A COMPANY WHO DEVELOPED

22   MODULAR HANDSETS, MODULAR PHONES.  THE IDEA WAS

23   THAT THERE WAS A SMALL PHONE THAT COULD PLUG INTO

24   OTHER LARGER DEVICES, WHICH WERE CONSUMER

25   ELECTRONIC DEVICES, AND WE DEVELOPED MULTIPLE
```

1    HANDSETS AND ADDITIONAL CONSUMER ELECTRONIC

2    DEVICES.

3    Q    AND YOU WERE CHIEF TECHNOLOGY OFFICER THERE?

4    A    YES.

5    Q    AS CHIEF TECHNOLOGY OFFICER AT MODU, WHAT WERE

6    YOUR RESPONSIBILITIES?

7    A    I HAD RESPONSIBILITY OF UNDERSTANDING ALL THE

8    LIMITATIONS OF THE DESIGN AND EXPLAINING THEM TO

9    THE DESIGN TEAMS, AND I HAD THE RESPONSIBILITY OF

10   SUPERVISING THE WHOLE PROCESS OF DESIGN, STARTING

11   FROM THE CONCEPT GOING THROUGH ELECTRICAL DESIGN,

12   MECHANICAL DESIGN, INDUSTRIAL DESIGN, AND FOLLOWING

13   THAT PROCESS UNTIL COMPLETION OF THE PHONE

14   PRODUCTS.

15   Q    ARE YOU THE NAMED INVENTOR ON ANY PATENTS?

16   A    YES, I'M A NAMED INVENTOR ON 20 PATENTS AND

17   ADDITIONAL 60 PENDING SUBMISSIONS.

18           MR. VERHOEVEN:  YOUR HONOR, WE TENDER

19   MR. SHERMAN AS AN EXPERT ON THE DESIGN OF MOBILE

20   ELECTRONIC CONSUMER DEVICES.

21           MS. KREVANS:  YOUR HONOR, WE RESERVE OUR

22   QUESTIONS RE QUALIFICATION FOR CROSS-EXAMINATION.

23           THE COURT:  THAT'S FINE.

24   BY MR. VERHOEVEN:

25   Q    WHAT HAVE YOU BEEN ASKED TO TESTIFY ABOUT

2576

1    TODAY?

2    A    I HAVE BEEN ASKED TO TESTIFY ABOUT THE

3    VALIDITY OF THE PATENTS, THE '087, THE '677, AND

4    THE '889.

5    Q    AND HOW DID YOU GO ABOUT FORMING YOUR

6    OPINIONS?

7    A    I REVIEWED MATERIAL, DOCUMENTS, DEPOSITIONS,

8    PRIOR ART, AND EXPERT REPORTS.

9    Q    HOW MUCH TIME DID YOU SPEND PREPARING YOUR

10   OPINIONS, SIR?

11   A    I WOULD ESTIMATE, OVERALL, ABOUT 3300 HOURS

12   OVERALL.

13   Q    ARE YOU BEING PAID FOR YOUR TIME IN THIS CASE?

14   A    YES.

15   Q    HOW MUCH?

16   A    SO $220 PLUS TAX PER HOUR.

17   Q    MR. SHERMAN, HAVE YOU EVER TESTIFIED IN COURT

18   BEFORE A JURY BEFORE?

19   A    NO, THIS IS MY FIRST TIME.

20   Q    OKAY.  HAVE YOU FORMED ANY OPINIONS IN

21   CONNECTION WITH YOUR WORK ON THIS CASE?

22   A    YES, I DID.

23   Q    WHAT OPINIONS HAVE YOU REACHED?

24   A    I REACHED THE OPINION THAT ALL THREE OF THESE

25   DESIGN PATENTS ARE INVALID AND BEING OBVIOUS IN

```
1    LIGHT OF PRIOR ART, AS WELL AS THE FACT THAT MANY

2    OF THE ELEMENTS IN THESE DESIGN PATENTS ARE

3    FUNCTIONAL.

4    Q    ALREADY.  WELL, LET'S START WITH THE ISSUE OF

5    INVALIDITY DUE TO OBVIOUSNESS.

6              WHEN YOU COMPARED THE DESIGN PATENTS TO

7    THE PRIOR ART, DID YOU APPLY A PARTICULAR STANDARD?

8    A    YES.  I APPLIED THE STANDARD OF THE ORDINARY

9    OBSERVER WHO IS FAMILIAR WITH THE PRIOR ART.

10   Q    AND THEN WHAT DID YOU DO NEXT?

11   A    I NEXT, IN LOOKING AT THE DIFFERENCES THAT

12   WERE SHOWN TO THE EYE, I TRIED TO LOOK AT WHETHER

13   SOMEBODY WHO'S SKILLED IN THE ART WILL BE ABLE TO

14   MODIFY A SINGLE REFERENCE OR COMBINE THESE PRIOR

15   ART REFERENCES TO ACHIEVE THE EXACT DESIGN THAT

16   THESE HAD.

17   Q    AND DID YOU MAKE ANY ASSUMPTIONS AS TO WHAT A

18   DESIGNER OF ORDINARY SKILL WOULD BE FOR THE

19   PURPOSES OF YOUR ANALYSIS?

20   A    FOR THE PURPOSES OF THIS ANALYSIS, SOMEBODY

21   WHO IS SKILLED IN THE ART WOULD BE SOMEBODY WHO HAS

22   EXPERIENCE IN DESIGNING MOBILE HANDSETS OR

23   GENERALLY DEVICES THAT HAVE TOUCHSCREENS.

24   Q    LET'S TURN TO THE '677 AND THE '087 PATENTS,

25   WHICH ARE ALREADY IN EVIDENCE.
```

2578

```
 1              CAN WE PUT UP SDX 3970.02.

 2              CAN YOU IDENTIFY WHAT WE'RE LOOKING AT

 3      HERE, SIR?

 4      A    YES, THIS IS THE DESIGN PATENT '677 FOR AN

 5      ELECTRONIC DEVICE.

 6      Q    FOR THE RECORD, THAT'S A DEPICTION OF JX 1043

 7      IN EVIDENCE.

 8              WHEN WAS THIS PATENT FILED?

 9      A    IT WAS FILED NOVEMBER 18TH, 2008.

10      Q    WHAT DOES THE D'677 PATENT DISCLOSE?

11      A    IT DISCLOSES AN ELECTRONIC DEVICE WHOSE

12      OVERALL RECTANGULAR SHAPE WITH EVENLY ROUNDED

13      CORNERS, A FLAT TRANSPARENT SURFACE WITH BLACK

14      COLOR.

15              AND AN ELONGATED LOZENGE SHAPED EARPIECE

16      SLOT ON TOP OF THE DISPLAY AREA, AND THERE'S A

17      RECTANGULAR DISPLAY CENTERED ON THE FRONT FACE.

18              THE REALLY IMPORTANT VIEW ON THIS DESIGN

19      PATENT IS REALLY ONLY THE FRONT FACE SINCE NOTHING

20      ELSE IS CLAIMED IN THIS DESIGN PATENT ON THE FRONT

21      FACE ITSELF.

22      Q    SO THERE'S THESE DOTTED LINES GOING AROUND IN

23      WHAT APPEARS TO BE A BEZEL-LIKE SHAPE?  DO YOU SEE

24      THAT?

25      A    YES, I SEE IT.
```

```
 1    Q    WHAT'S YOUR UNDERSTANDING AS TO WHETHER THIS

 2    DESIGN PATENT CLAIMED THAT?

 3    A    SINCE THEY ARE DOTTED, IT WOULD MEAN THAT THIS

 4    IS UNCLAIMED IN THIS DESIGN PATENT.

 5    Q    SO DESIGN '677 ONLY CLAIMS THE FRONT FACE; IS

 6    THAT RIGHT?

 7    A    ONLY THE FRONT FACE.

 8    Q    OKAY.  NOW LET'S GO TO THE D'087 PATENT, THE

 9    NEXT SLIDE, THERE WE GO.

10            AND FOR THE RECORD, THIS IS A DEPICTION

11    OF JX 1041 IN EVIDENCE.

12            HAVE YOU LOOKED AT THE D'087 PATENT, SIR?

13    A    YES, I DID.

14    Q    WHEN WAS THIS PATENT FILED?

15    A    IT WAS FILED IN ON JULY 30TH, 2007.

16    Q    WHAT DOES THE D'087 PATENT DISCLOSE?

17    A    THE D'087 ON THIS EMBODIMENT IS ACTUALLY

18    DISCLOSING A VERY SIMILAR DESIGN TO THE '677, ONLY

19    THAT IN THIS CASE THE BEZEL IS CLAIMED BECAUSE IT

20    IS IN FULL LINE, AND THE BLACK COLOR IS UNCLAIMED.

21    Q    OKAY.  SO THE SIDES AND THE BACK THAT WE'RE

22    LOOKING AT, THE SIDE VIEW HERE ON SLIDE 3, DO YOU

23    SEE THOSE?

24    A    YES, I DO.

25    Q    WHAT'S YOUR UNDERSTANDING AS TO WHETHER THOSE
```

1   ARE CLAIMED OR NOT?

2   A    BASED ON THE FACT THAT THEY ARE DOTTED, THEN

3   THEY ARE UNCLAIMED.  SO THE ONLY THING THAT IS

4   CLAIMED IS THE FRONT FACE AND THE BEZEL.

5   Q    OKAY.  NOW LET'S TAKE A LOOK AT SOME OF THE

6   PRIOR ART THAT YOU LOOKED AT.

7              I'LL DIRECT YOUR ATTENTION IN YOUR BINDER

8   TO DX 511, WHICH IS ALREADY IN EVIDENCE.

9              WHAT IS DX 511?

10  A    DX 511 IS A JAPANESE DESIGN PATENT, THE '638,

11  FOR A PORTABLE TELEPHONE DEVICE WITH A CAMERA.

12  Q    IS THIS ONE OF THE PIECES OF PRIOR ART THAT

13  YOU LOOKED AT, SIR?

14  A    YES.

15  Q    I'M GOING TO REFER TO THIS DESIGN PATENT AS

16  JP'638 AS I GO ALONG.  OKAY?

17  A    YES.

18  Q    WHEN DID JP '638 PUBLICLY ISSUE?

19  A    IT WAS ISSUED ON JUNE 6TH, 2005.

20  Q    IS THAT BEFORE OR AFTER THE FILING DATES OF

21  THE '677 AND '087 PATENT?

22  A    IT'S BEFORE.

23  Q    WHAT DOES JP'638 DISCLOSE?

24  A    THE JP'638 DISCLOSES A PORTABLE TELEPHONE

25  DEVICE THAT HAS, AS CAN BE SEEN HERE, A FRONT FACE

1    THAT HAS THE DESIGNS.

2    Q    DID YOU COMPARE THE JP'638 TO THE D'087 AND

3    D'677 PATENTS?

4    A    YES, I DID.

5    Q    CAN WE GO TO THE NEXT SLIDE, PLEASE.  THIS IS

6    A DEPICTION OF THE FRONT FACE OF JP'638, D'677 AND

7    '087.  DO YOU SEE THAT, SIR?

8    A    YES, I DO.

9    Q    CAN YOU WALK THE JURY THROUGH -- YOUR ANALYSIS

10   OF THE JP'638 DESIGN WITH REGARDS TO THE D'677 AND

11   D'087?

12   A    AS YOU CAN SEE HERE, THE OVERALL ROUNDED

13   SHAPE, EVENLY ROUNDED CORNERS, THEY ALL HAVE A

14   RECTANGULAR DISPLAY THAT IS CENTERED ON THE FRONT

15   FACE.  IT ACTUALLY OCCUPIES MOST OF THE SPACE ON

16   IT.

17           THEY ALL HAVE LOZENGE SHAPED CENTERED

18   EARPIECE SLOT ON TOP OF THE DISPLAY AREA.  AND THEY

19   ALL HAVE THIS BEZEL SURROUNDING THE FRONT FACE, ON

20   THE '677, IT'S UNCLAIMED, BUT SIMILAR TO WHAT IS

21   CLAIMED IN THE '087.

22   Q    DID YOU REACH AN OPINION AS TO WHETHER THE

23   JP'638 DESIGN PATENT RENDERS THE '677 AND '087

24   PATENTS OBVIOUS?

25   A    YES, I DID.

1    Q    CAN YOU PLEASE TELL THE JURY YOUR OPINION AND

2    EXPLAIN IT?

3    A    MY OPINION IS THE JP'638 RENDERS BOTH OF THESE

4    DESIGNS OBVIOUS.  JUST LOOKING AT THAT, IT IS

5    EXTREMELY SIMILAR.  THE DIFFERENCES THAT EXIST

6    BETWEEN THESE, THE FRONT FACE OF THE '638 IS NOT

7    ENTIRELY FLAT BUT RELATIVELY MINOR.

8              AND I WOULD SAY THAT SOMEBODY WITH

9    ORDINARY SKILLS IN THE ART WOULD BE ABLE TO PERFORM

10   THE MODIFICATIONS AND DO THESE TWO DESIGNS.

11   Q    DID YOU CONSIDER JP'638 IMAGES FROM THE SIDE

12   VIEW AND OTHER VIEWS?

13   A    YES, I DID.

14   Q    OKAY.  CAN WE GO TO THE NEXT SLIDE, PLEASE.

15   CAN YOU EXPLAIN TO THE JURY WHAT WE'RE LOOKING AT

16   ON THIS SLIDE?  THIS IS, FOR THE RECORD, SDX

17   3970.06?

18   A    SO ON THIS SLIDE WE HAVE THE SIDE VIEWS; ON

19   THE LEFT WE HAVE THE '638 SIDE CUT VIEW; AND JUST

20   NEXT TO IT, WE HAVE THE '677 AND THE '087 SIDE

21   VIEWS.

22             AND AS WE CAN SEE HERE ON THE '638, THE

23   FRONT FACE OF THE '638 IS NOT COMPLETELY FLAT.  IT

24   HAS A SMALL CURVATURE ON TOP AND BOTTOM, BUT YOU

25   CAN CLEARLY SEE THIS IS ONE SINGLE PIECE OF

1    MATERIAL THAT GOES FROM TOP TO BOTTOM AND THERE IS

2    AN INSET DISPLAY THAT RESIDES BEHIND THAT FRONT

3    COVER.  OBVIOUSLY SINCE THERE'S A DISPLAY THERE,

4    THE FRONT COVER HAS TO BE TRANSPARENT OBVIOUSLY IN

5    ORDER TO OBSERVE THE INFORMATION ON THE DISPLAY.

6    Q    NOW, IF WE LOOK AT THE SIDE VIEW HERE, JP'638,

7    THE SIDE OF THE FORM FACTOR, IT LOOKS DIFFERENT

8    THAN THE SIDES AND THE BACK ON THE '087 AND '677;

9    IS THAT RIGHT?

10   A    THAT'S CORRECT.  HOWEVER, SINCE BOTH '677 AND

11   '087 DO NOT CLAIM THE SIDE, THIS IS REALLY

12   IRRELEVANT FOR THE COMPARISON.

13   Q    OKAY.  SO DID THE DIFFERENCES THAT YOU NOTICED

14   BETWEEN THE JP'638 AND '677 AND '087 AFFECT YOUR

15   ANALYSIS -- OR AFFECT YOUR CONCLUSION THAT JP'638

16   RENDERS '677 AND '087 OBVIOUS?

17   A    NO, THEY -- NO.

18   Q    DID YOU CONSIDER OTHER PRIOR ART IN CONDUCTING

19   YOUR NON-OBVIOUSNESS ANALYSIS WITH RESPECT TO '677

20   AND '087?

21   A    YES, I DID.

22   Q    I'LL DIRECT YOUR ATTENTION TO DX 727 IN YOUR

23   BINDER, WHICH IS ALREADY IN EVIDENCE, YOUR HONOR .

24            CAN WE GO TO THE NEXT SLIDE.

25            IS THIS A -- I PUT ON THE SCREEN A COUPLE

2584

```
 1    OF VIEWS FROM DX 727, WHICH IS THE KOREAN

 2    REGISTERED DESIGN PATENT, 30-418547.  DO YOU SEE

 3    THAT, SIR?

 4    A    YES, I DO.

 5    Q    IS THIS ONE OF THE OTHER PIECES OF PRIOR ART

 6    YOU CONSIDERED?

 7    A    YES.

 8    Q    AND I'M GOING TO REFER TO THIS AS KR'547 FOR

 9    REFERENCE, OKAY?

10    A    SURE.

11    Q    WHEN DID THAT ISSUE?

12    A    IT WAS ISSUED ON JULY 6TH, 2006.

13    Q    IS THAT BEFORE OR AFTER THE FILING DATES OF

14    THE '677 AND '087 APPLE DESIGN PATENTS?

15    A    BEFORE.

16    Q    WHAT DOES KR'547 DISCLOSE?

17    A    IT DISCLOSES A PORTABLE PHONE THAT HAS OVERALL

18    RECTANGULAR SHAPE WITH EVENLY ROUNDED CORNERS.  IT

19    HAS A DISPLAY THAT IS CENTERED ON THE FRONT FACE.

20    IT HAS A LOZENGE SHAPED EARPIECE SLOT THAT IS

21    VERTICALLY CENTERED.  AND IT HAS A COMPLETELY FLAT

22    FACE AS CAN BE SEEN FROM THE SIDE VIEW.

23    Q    SO WHEN WE WERE LOOKING AT THE JP'638 PATENT,

24    YOU NOTED THAT THERE WAS A SLIGHT -- WHAT WAS THE

25    WORD YOU USED?
```

```
 1    A    SLIGHT CURVATURE.

 2    Q    SLIGHT CURVATURE AT THE VERY TOP AND BOTTOM OF

 3    THE FRONT FACE.

 4         DOES THAT -- IS THERE ANY CURVATURE ON

 5    THE FRONT FACE KR-547?

 6    A    NO, IT'S ENTIRELY FLAT.

 7    Q    OKAY.  AND, AGAIN, THIS SIDE VIEW HERE THAT WE

 8    WERE SEEING IS IRRELEVANT TO YOUR ANALYSIS?  IS

 9    THAT RIGHT?

10    A    IT IS IRRELEVANT AGAIN SINCE THE '677 AND '087

11    DO NOT CLAIM THE SIDE VIEWS.

12         MR. VERHOEVEN:  YOUR HONOR, MAY I

13    APPROACH THE WITNESS WITH A PHYSICAL EXHIBIT?

14         THE COURT:  PLEASE, GO AHEAD.

15    BY MR. VERHOEVEN:

16    Q    I'M GOING TO HAND YOU PHYSICAL EXHIBIT JX

17    1093, WHICH ARE ALREADY IN EVIDENCE.

18         MS. KREVANS:  MAY I SEE THIS, YOUR HONOR?

19    BY MR. VERHOEVEN:

20    Q    DO YOU RECOGNIZE JX 1093?

21    A    YES, THIS IS THE LG PRADA.

22    Q    LET'S PUT UP 3970.08, WHICH ARE PHOTOGRAPHS OF

23    THE PRADA SO THE JURY CAN SEE.  ARE THOSE

24    PHOTOGRAPHS OF WHAT YOU HAVE IN YOUR HAND, SIR?

25    A    YES.
```

```
 1    Q    DO YOU KNOW WHEN THE LG PRADA WAS DISCLOSED

 2    PUBLICLY?

 3    A    IT WAS DISCLOSED IN LATE 2006.

 4    Q    HOW DO YOU KNOW THAT?

 5    A    I READ ARTICLES ON THE FACT THAT --

 6              MS. KREVANS:  OBJECTION, YOUR HONOR, THIS

 7    IS BEYOND THE SCOPE OF THE REPORT.

 8              THE COURT:  CAN YOU GIVE ME THE PARAGRAPH

 9    NUMBER OR THE PAGE NUMBER?  I HAVE HIS REPORT IN

10    FRONT OF ME.

11              MR. VERHOEVEN:  AT PAGE 60, PARAGRAPH 2.

12              MS. KREVANS:  PAGE 60, PARAGRAPH 2, YOUR

13    HONOR, WAS STRUCK.  AND IN ADDITION, IT IS NOT --

14    IT DOES NOT RELATE TO ANY OF THE EVIDENCE THAT THE

15    WITNESS JUST CITED.

16              THE COURT:  LET ME SEE YOUR PAGE 60,

17    PARAGRAPH 2, PLEASE, BECAUSE I HAVE THE OPENING

18    EXPERT REPORT.  WHAT ARE YOU ALL REFERRING TO?

19    REBUTTAL?

20              MS. KREVANS:  I THINK THAT MR. SHERMAN

21    GAVE ONLY ONE REPORT, YOUR HONOR, ON THE TOPIC OF

22    INVALIDITY.

23              THE COURT:  OH, I HAVE THIS.  I'M SORRY.

24    MINE DOESN'T HAVE NUMBERED PARAGRAPHS.

25              (PAUSE IN PROCEEDINGS.)
```

2587

```
 1              THE COURT:  I DON'T SEE HERE ABOUT THE
 2    DATES OF THE --
 3              MR. VERHOEVEN:  YOUR HONOR, IF I COULD
 4    APPROACH.
 5              THE COURT:  -- DEVICE.  OKAY.  I SEE IT.
 6    GO AHEAD.
 7              MR. VERHOEVEN:  THANK YOU.
 8              MS. KREVANS:  YOUR HONOR, I DIDN'T OBJECT
 9    WHEN HE ASKED HIM IF HE THOUGHT HE KNEW WHEN IT WAS
10    RELEASED.  IT WAS THE SUBSEQUENT QUESTION THAT I
11    OBJECTED TO, AND IF YOU LOOK AT THE ANSWER ON YOUR
12    LIVE NOTE, YOU WILL SEE WHY, BECAUSE WHAT THE
13    WITNESS WAS TRYING TO SAY IS NOT IN THIS DOCUMENT.
14              THE COURT:  THAT IS CORRECT.  ALL RIGHT.
15    WHY DON'T YOU --
16              MR. VERHOEVEN:  YOUR HONOR, HE --
17              THE COURT:  IT'S ALSO HEARSAY, RIGHT?
18              MR. VERHOEVEN:  I'M TOLD THAT HE CITES
19    ARTICLES TO THIS EFFECT IN THE MATERIALS THAT ARE
20    CITED IN THE REPORT.
21              THE COURT:  WELL, IT'S NOT ON PAGE 60.
22              MS. KREVANS:  AND THEY'RE NOT IN
23    EVIDENCE, YOUR HONOR, AND THEY WERE STRUCK BY A
24    PRIOR RULING OF THIS COURT.
25              THE COURT:  ANYWAY, HE CAN CERTAINLY SAY
```

2588

```
 1    WHEN HE THOUGHT IT WAS RELEASED.
 2            MR. VERHOEVEN:  OKAY.  LET'S DO THAT IN
 3    THE INTEREST OF TIME.
 4    Q    WHAT'S YOUR OPINION AS TO WHEN THE LG PRADA
 5    WAS DISCLOSED PUBLICLY?
 6    A    LATE 2006.
 7    Q    AND IS LATE 2006 BEFORE OR AFTER THE FILING
 8    DATES OF THE '087 AND '677 PATENTS?
 9    A    BEFORE.
10    Q    AND CAN YOU DESCRIBE THE PRADA, LG PRADA THAT
11    WE HAVE UP ON THE SCREEN HERE?
12    A    SURE.  SO THIS IS THE MOBILE HANDSET AND IT
13    HAS OVERALL RECTANGULAR SHAPE.  IT HAS EVENLY
14    ROUNDED CORNERS AND COMPLETELY FLAT FRONT SURFACE,
15    TRANSPARENT ONE.
16            THERE IS A LARGE DISPLAY WHICH IS
17    CENTERED ON THE FRONT FACE.
18            IT HAS LOZENGE SHAPED EARPIECE SLOT AND A
19    COMPLETELY FLAT FRONT SURFACE.
20    Q    SO ONE OF THE DIFFERENCES --
21    A    AND IT'S BLACK, SORRY.  OBVIOUSLY.
22    Q    SO ONE OF THE DIFFERENCES BETWEEN THE '677
23    PATENT AND THE '087 PATENT IS THAT THE '677 PATENT
24    IS BLACK; IS THAT RIGHT?
25    A    CORRECT.
```

1    Q    AND THE LG PRADA IS BLACK AS WELL; IS THAT

2    RIGHT?

3    A    CORRECT.

4    Q    I'LL DIRECT YOUR ATTENTION TO DX 728 IN YOUR

5    BINDER.  THIS IS IN EVIDENCE, YOUR HONOR.

6              SO CAN WE GO TO THE NEXT SLIDE?

7              DID YOU CONSIDER JAPANESE DESIGN PATENT

8    '383 AS PART OF YOUR PRIOR ART ANALYSIS?

9    A    YES, I DID.

10   Q    AND I'M GOING TO REFER TO THIS DESIGN PATENT

11   AS JP'383; OKAY?

12   A    YES.

13   Q    AND WHAT DOES JP'383 SHOW ITSELF?

14   A    IT SHOWS A PORTABLE INFORMATION TERMINAL.  THE

15   DEVICE IS, AGAIN -- THIS IS ACTUALLY COMPOSE OF TWO

16   PIECES.  THERE IS AN EXTERNAL COVER AND THERE IS AN

17   INTERNAL DEVICE.  THE DEVICE HAS OVERALL

18   RECTANGULAR SHAPE WITH EVENLY ROUNDED CORNERS.  IT

19   HAS A CENTERED RECTANGULAR DISPLAY.  IT IS

20   COMPLETELY FLAT, THE FRONT FACE IS COMPLETELY FLAT.

21              AND IT HAS A UNIFORM BEZEL SURROUNDING

22   THE FRONT FACE.

23   Q    MR. FISHER, IF WE COULD TAKE THE FRONT VIEWS

24   OF THESE PRIOR ART REFERENCES AND PUT THEM ON THE

25   SCREEN TOGETHER WITH THE D'677 AND '087.

```
 1                 OKAY.  SO UP AT THE TOP HERE IS '677;

 2      RIGHT?

 3      A    CORRECT.

 4      Q    AND THIS IS '087?

 5      A    YES.

 6      Q    AND THEN THESE ARE THE PIECES OF PRIOR ART

 7      THAT YOU JUST WENT THROUGH THAT YOU CONSIDERED?

 8      A    YES.

 9      Q    IN YOUR OBVIOUSNESS ANALYSIS?

10      A    YES.

11      Q    IS THAT RIGHT?

12      A    YES.

13      Q    DID YOU REACH ANY CONCLUSION, IN ADDITION TO

14      YOUR OPINION ON THE JP'638, DID YOU REACH ANY OTHER

15      CONCLUSION ABOUT THE COMBINATION OF THESE

16      REFERENCES WHEN YOU FORMED YOUR OBVIOUSNESS

17      CONCLUSIONS?

18      A    YES, I DID.

19                 MS. KREVANS:  OBJECTION, YOUR HONOR.

20      AGAIN, BEYOND THE SCOPE.  THE PRADA WAS NOT

21      DISCUSSED BY THIS WITNESS IN ANY WAY IN CONNECTION

22      WITH THE '087 PATENT.  HE TESTIFIED ABOUT BOTH.

23                 THE COURT:  IS IT JUST PAGE 60 OR IS IT

24      SOMEWHERE ELSE AS WELL?

25                 MR. VERHOEVEN:  THE PRADA IS UP THERE,
```

```
 1    YOUR HONOR, BECAUSE I'M GOING TO ASK ABOUT THE '677
 2    PATENT, AS WELL AS THE '087.  I'VE JUST ASKED HIM A
 3    GENERAL QUESTION AND THERE'S NOT --
 4              THE COURT:  GO AHEAD.
 5              OVERRULED.
 6              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
 7    Q    DO YOU HAVE THE QUESTION IN MIND, SIR?
 8    A    YES.
 9    Q    CAN YOU EXPLAIN TO THE JURY, USING THESE
10    IMAGES, YOUR ANALYSIS AND YOUR OPINIONS WITH
11    RESPECT TO OBVIOUSNESS?
12    A    YES.  SO I FIND THAT THE '638, IN COMBINATION
13    WITH THE THREE OTHER REFERENCES, IS RENDERING THE
14    '677 AND THE '087 OBVIOUS.
15              AND LOOKING AT THE '638 --
16              MS. KREVANS:  YOUR HONOR, HE JUST
17    ELICITED THE EXACT OPINION HE SAID HE WASN'T GOING
18    TO ASK HIM ABOUT IN CONNECTION WITH USING THE PRADA
19    IN CONNECTION WITH THE '087.
20              MR. VERHOEVEN:  LET ME TRY IT THIS WAY,
21    YOUR HONOR.
22    Q    LOOKING AT THE '677 PATENT, DO YOU SEE THAT?
23    A    YES.
24    Q    AND THESE OTHER PRIOR ART REFERENCES TOGETHER,
25    WHICHEVER ONE YOU WANT TO TALK ABOUT, CAN YOU TELL
```

1    THE JURORS THE OPINION YOU REACHED AS TO WHETHER

2    SOME COMBINATION OF THESE RENDERED THE '677

3    OBVIOUS?

4    A   OKAY.  SO AS I SAID, I FIND THAT THE '677 IS

5    OBVIOUS IN LIGHT OF THE '638 IN COMBINATION WITH

6    THE PRADA, AND IF WE LOOK AT THE '638 --

7    Q   SO THIS IS THE '638?

8    A   YES, '638 ON THE LEFT.

9    Q   SO THAT'S THE FIRST JAPANESE DESIGN PATENT WE

10    LOOKED AT; RIGHT?

11    A   YES, CORRECT.

12    Q   IN COMBINATION WITH THE PRADA, WHICH IS THE

13    DARK FACED PHONE RIGHT HERE; RIGHT?

14    A   CORRECT.

15    Q   GO AHEAD?

16    A   SO THE '638 DISCLOSES MOST OF THE ELEMENTS IN

17    THE DESIGN OF THE '677, AND THE ONLY DIFFERENCE

18    BEING THE BLACK COLOR, WHICH, AGAIN, THE PRADA HAD

19    THAT BLACK COLOR AND THE FACT THAT THE FRONT FACE

20    IS COMPLETELY FLAT WHICH, AGAIN, THE PRADA IS

21    COMPLETELY FLAT.

22         AND THERE'S ANOTHER DIFFERENCE, WHICH IS

23    THE LOCATION OF THE EARPIECE SLOT.  ON THE '638, IT

24    IS SLIGHTLY ABOVE CENTER ON TOP OF THE DISPLAY.

25    IT'S CLOSER TO THE TOP .

```
 1                 BUT AS CAN BE SEEN BOTH IN THE '677, AS

 2      WELL AS IN THE PRADA, IT IS ALMOST CENTERED ABOVE

 3      THE DISPLAY.

 4                 SO TAKING THESE IN COMBINATION, THEY

 5      RENDER THE '677 VERY CLEARLY OBVIOUS.

 6      Q    OKAY.  SAME QUESTION WITH RESPECT TO THE '087.

 7      DO YOU HAVE THE QUESTION IN MIND?

 8      A    YES.

 9      Q    CAN YOU EXPLAIN TO THE JURY?

10      A    SO IN THE CASE OF THE '087, ACTUALLY A FEW OF

11      THESE COMBINATIONS RENDER IT OBVIOUS.  IF WE TAKE

12      THE '638 WITH THE '383, THE LEFT ONE IS '638 AND

13      THE RIGHT ONE IS THE '383.  SO LOOKING AT THE '383,

14      IT HAS A COMPLETELY FLAT FRONT FACE AND IT HAS THIS

15      UNIFORM BEZEL THAT SURROUNDS THE DISPLAY, AND THEN

16      COMBINING IT WITH THE '638 WOULD YIELD ESSENTIALLY

17      THE DESIGN THAT IS THE '087.

18                 OTHER COMBINATIONS ARE ALSO POSSIBLE.

19      SAME THING WOULD BE TAKING THE '638 WITH THE PRADA,

20      AS WELL AS TAKING THE '638 WITH THE KR'547.

21                 MS. KREVANS:  OBJECTION, YOUR HONOR, THAT

22      TESTIMONY WAS CLEARLY BEYOND THE SCOPE OF THE

23      REPORT AND WE ASK THAT IT BE STRUCK.

24                 THE COURT:  I DON'T SEE THE PRADA

25      DISCUSSED IN THE '087, PAGES 63 THROUGH --
```

2594

```
 1              MR. VERHOEVEN:  ALL RIGHT.  SO LET ME ASK

 2     YOU THIS.

 3     Q    EXCLUDING THE PRADA --

 4              MS. KREVANS:  YOUR HONOR, MAY I HAVE A

 5     RULING ON MY MOTION TO STRIKE?

 6              MR. VERHOEVEN:  HE GAVE A VERY LENGTHY

 7     ANSWER, YOUR HONOR, IT WOULD BE INAPPROPRIATE.

 8              THE COURT:  IT'S NOT IN PAGES 63 TO 75

 9     THAT DISCUSSED THE '087.  I DON'T SEE IT.

10              MR. VERHOEVEN:  HOW ABOUT IF I ASK HIM

11     ANOTHER QUESTION THEN.

12     Q    EXCLUDING FOR THE '087, EXCLUDING THE PRADA,

13     CAN YOU EXPLAIN TO THE JURY YOUR OPINION WITH

14     RESPECT TO WHETHER OR NOT, IN ANY OF THESE OTHER

15     REFERENCES BESIDE THE PRADA, RENDER THE '087

16     OBVIOUS.

17              MS. KREVANS:  YOUR HONOR, JUST SO THE

18     RECORD IS CLEAR, MAY I ASK THAT COUNSEL WITHDRAW

19     THE PREVIOUS QUESTION ASKED FOR THE RECORD AND THAT

20     YOUR HONOR STRIKE IT.

21              MR. VERHOEVEN:  I'LL WITHDRAW IT, YOUR

22     HONOR, IN THE INTEREST OF TIME.

23              THE COURT:  ALL RIGHT.  THANK YOU.

24     BY MR. VERHOEVEN:

25     Q    DO YOU WANT ME TO ASK YOU THE QUESTION AGAIN
```

2595

```
 1    OR DO YOU HAVE IT, SIR?

 2    A    I'M TRYING TO UNDERSTAND.  WHICH --

 3    Q    SO THERE'S AN OBJECTION TO TALKING ABOUT THE

 4    PRADA, SO EXCLUDE THAT FROM YOUR ANSWER IN THE

 5    INTERESTS OF TIME?

 6    A    SURE.

 7    Q    I'M ASKING YOU ABOUT THE '087, THAT'S THIS ONE

 8    HERE, AND YOU'VE REACHED AN OPINION THAT THAT'S

 9    OBVIOUS IN LIGHT OF SOME COMBINATION OF THESE OTHER

10    THREE PHONES; RIGHT?

11    A    YES.

12    Q    OTHER THREE DESIGN PATENTS; RIGHT?

13    A    YES.

14    Q    SO ALL I'M ASKING YOU TO DO IS WALK THE JURY

15    THROUGH YOUR ANALYSIS?

16    A    SURE.  SO TAKING THE '638 AND THEN COMBINING

17    IT WITH THE '383, WHICH IS ON THE RIGHT SIDE, THE

18    '383 HAS A COMPLETELY FLAT FRONT FACE AND IT ALSO

19    HAS THE UNIFORM, COMPLETELY UNIFORM BEZEL.

20         SO COMBINING IT WITH THE '638 WOULD YIELD

21    THE DESIGN OF THE '087.  SO THAT MAKES IT AND

22    RENDERS IT OBVIOUS.

23    Q    ALL RIGHT.  LET'S TURN TO THE LAST DESIGN

24    PATENT, THE TABLET DESIGN, THAT'S THE D'889.

25    THAT'S AT JX 1040 IN YOUR BINDER IF YOU'D LIKE TO
```

1    LOOK AT IT, SIR.  IT'S ALREADY IN EVIDENCE.

2              CAN WE PUT UP THE SLIDE -- THE NEXT

3    SLIDE, MR. FISHER.

4              WHAT'S SHOWN ON THIS SLIDE, SIR?

5    A    IT SHOWS THE DESIGN PATENT, THE D 504,889 FOR

6    THE ELECTRONIC DEVICE.

7    Q    AND YOU REVIEWED THIS DESIGN PATENT; CORRECT?

8    A    YES.

9    Q    WHEN WAS THIS PATENT FILED?

10   A    IT WAS FILED ON MARCH 17TH, 2004.

11   Q    WHAT DOES THE D'889 PATENT SHOW?

12   A    IT SHOWS AN ELECTRONIC DEVICE WHICH HAS

13   OVERALL RECTANGULAR SHAPE WITH EVENLY ROUNDED

14   CORNERS.  IT HAS A FLAT FRONT FACE, A TRANSPARENT

15   FRONT FACE, WITH A LARGE, WHAT I ASSUME IS A

16   DISPLAY BELOW THAT SURFACE.

17             IT HAS A RIM SURROUNDING THE FRONT FACE.

18   AND IT HAS A FLAT BACK.

19   Q    NOW, WE SAW, BY VIDEO TESTIMONY, THE TESTIMONY

20   OF MR. ROGER FIDLER.  DID YOU SEE THAT?

21   A    YES, I DID.

22   Q    AND DID YOU CONSIDER MR. FIDLER'S TABLET IN

23   YOUR ANALYSIS UNDER THE D'889 PATENT?

24   A    YES, I DID.

25   Q    CAN WE PUT UP PX 10.79 IN EVIDENCE?  PX 10.79.

```
 1              THIS IS ACTUALLY A PLAINTIFF'S EXHIBIT.

 2     DO YOU THINK I COULD ASK COUNSEL TO PUT IT UP?

 3     IT'S -- OR PLAINTIFF'S AUDIO/VISUAL GUY.  IT'S PX

 4     10.79 IN EVIDENCE.

 5              MS. KREVANS:  I WILL HAVE TO LOOK, YOUR

 6     HONOR, BECAUSE THIS ISN'T ONE OF THE EXHIBITS THAT

 7     WAS DISCLOSED TO US.

 8              THE COURT:  CAN YOU FIND IT, PLEASE.

 9              MR. VERHOEVEN:  LET'S TRY IT THIS WAY,

10     YOUR HONOR.  I'M JUST TRYING TO AVOID AN OBJECTION

11     BY USING THEIR EXHIBITS.  LET'S TRY SDX 3970.012.

12     GO BACK ONE.  THERE WE GO.

13     Q    DO YOU RECOGNIZE THESE AS DEPICTIONS OF THE

14     1994 FIDLER TABLET THAT WE SAW ON THE DEPOSITION

15     TESTIMONY THAT WAS JUST PLAYED?

16     A    YES.

17     Q    AND DID YOU REVIEW THAT DEPOSITION?

18     A    YES, I DID.

19     Q    AND DID YOU CONSIDER MR. ROGER FIDLER'S 1994

20     TABLET AS PART OF YOUR OBVIOUSNESS ANALYSIS?

21     A    YES, I DID.

22     Q    WHEN DID MR. FIDLER DESIGN THIS TABLET?

23     A    IN 1994.

24     Q    LET'S GO TO THE NEXT SLIDE, PLEASE.

25              CAN YOU EXPLAIN TO THE JURY YOUR ANALYSIS
```

```
 1    OF MR. FIDLER'S TABLET AS WITH REGARDS TO THE D'889

 2    DESIGN?

 3    A    YES.  SO ON THE TOP WE SEE THE TWO FRONT

 4    FACES, THE FIDLER TABLET HAS OVERALL RECTANGULAR

 5    SHAPE, EVENLY ROUNDED CORNERS.  IT IS ALMOST FLAT,

 6    THE INTENT WAS THAT IT WOULD BE COMPLETELY FLAT,

 7    BUT ON THIS ONE IT WAS ALMOST FLAT.

 8              IT HAS A VERY LARGE DISPLAY ON THE FRONT

 9    FACE.

10              IT HAS A FLAT BACK.  THAT'S IT.

11    Q    DID YOU CONSIDER ANY OTHER PRIOR ART IN

12    CONNECTION WITH YOUR ANALYSIS OF THE VALIDITY OF

13    THE '889 PATENT?

14    A    YES, I DID.

15              MR. VERHOEVEN:  YOUR HONOR, MAY I

16    APPROACH WITH A PHYSICAL EXHIBIT?

17              THE COURT:  PLEASE, GO AHEAD.

18              MR. VERHOEVEN:  FOR THE RECORD, I'M

19    HANDING THE WITNESS PHYSICAL EXHIBIT, JOINT

20    PHYSICAL EXHIBIT 1074.

21              THE WITNESS:  THANK YOU.

22    BY MR. VERHOEVEN:

23    Q    WHAT IS JOINT EXHIBIT 1074?

24    A    THIS IS THE H-P TC 1000, OR COMPAQ AT THAT

25    TIME.
```

```
 1    Q    CAN YOU HOLD IT UP FOR THE JURY?

 2    A    SURE (INDICATING).

 3    Q    CAN YOU HOLD IT UP ON A SIDE VIEW AS WELL.

 4         YOUR HONOR, IF I MAY LET THE JURORS PASS

 5    THAT AROUND?

 6         THE COURT:  THAT'S FINE.

 7         MR. VERHOEVEN:  YOUR HONOR, I'D MOVE JX

 8    1074 INTO EVIDENCE.

 9         MS. KREVANS:  NO OBJECTION, YOUR HONOR.

10         THE COURT:  IT'S ADMITTED.

11         (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12         1074, HAVING BEEN PREVIOUSLY MARKED FOR

13         IDENTIFICATION, WAS ADMITTED INTO

14         EVIDENCE.)

15    BY MR. VERHOEVEN:

16    Q    WHEN WAS THIS TABLET RELEASED?

17    A    THIS WAS RELEASED IN 2002.

18    Q    DID YOU COMPARE THE -- THIS IS THE -- I'M

19    GOING TO REFER TO THIS AS THE TC1000?

20    A    YES.

21    Q    OKAY.  AND THIS BEING JX 1074.  OKAY?

22    A    OKAY.

23    Q    DID YOU DO A COMPARISON OF THE TC1000 AGAINST

24    THE D'889 PATENT?

25    A    YES, I DID.
```

1    Q    CAN WE GO TO THE NEXT SLIDE, PLEASE.  ONE

2    MORE.

3              WHAT IS SHOWN ON THIS SLIDE HERE, SIR?

4    A    SO WE SEE SIDE BY SIDE BOTH THE VIEW OF THE

5    D'889 AND THE PHOTO OF THE TC1000, AND ON THE

6    BOTTOM WE SEE A SIDE VIEW OF THE D'889 AND SIDE

7    VIEW OF THE H-P TC1000.

8              AND AS CAN BE SEEN, THE DEVICE ITSELF IS

9    OVERALL RECTANGULAR IN SHAPE WITH EVENLY ROUNDED

10   CORNERS.  IT HAS A FLAT FRONT SURFACE THAT GOES

11   ACROSS THE WHOLE FRONT FACE UP TO A RELATIVELY THIN

12   RIM THAT SURROUNDS THE DEVICE.

13             IT HAS A RELATIVELY NARROW PROFILE, AND

14   THE PROPORTIONS OF THIS DEVICE ARE ACTUALLY ALMOST

15   IDENTICAL TO THE PROPORTIONS OF THE D'889, WHICH

16   MEANS THE RATIO BETWEEN LENGTH, WIDTH, AND HEIGHT

17   ALMOST IDENTICAL.

18   Q    MR. FISHER, CAN WE PUT UP THE '889 VIEWS, THE

19   H-P TC1000, AND THE FIDLER TABLET ALTOGETHER ON THE

20   SAME SCREEN?  NO, THAT'S NOT IT.

21             IN THE INTEREST OF TIME, YOUR HONOR, I'M

22   GOING TO MOVE ON WHILE MR. FISHER IS TRYING TO GET

23   THAT PUT TOGETHER.

24             THE COURT:  THAT'S FINE.

25   BY MR. VERHOEVEN:

2601

```
 1    Q    SO IS IT CORRECT THAT YOU EVALUATED WHETHER
 2    THE '889 PATENT WAS OBVIOUS IN LIGHT OF THE FIDLER
 3    TABLET COMBINED WITH THE TC1000?
 4    A    YES.
 5    Q    DID YOU REACH A CONCLUSION?
 6    A    YES.
 7    Q    WHAT WAS YOUR CONCLUSION?
 8    A    I FOUND THAT THE D'889 IS OBVIOUS IN LIGHT OF
 9    THE COMBINATION OF THE FIDLER TABLET WITH THE H-P
10    TC1000.
11          IF YOU TAKE THE FIDLER TABLET, WHICH HAS
12    NO LIMITATION ON THE FRONT FACE, IT'S RECTANGULAR
13    SHAPE, AND YOU TAKE THE TRANSPARENT, FLAT FRONT
14    COVER OFF THE TC1000 AND WITH THE PROPORTIONS THAT
15    IT HAS AND COMBINE THE TWO, YOU ACTUALLY YIELD THE
16    DESIGN OF THE D'889 AND THAT, THEREFORE, IT RENDERS
17    IT OBVIOUS.
18    Q    OKAY.  LET'S TURN TO THE ISSUE OF
19    FUNCTIONALITY.  YOU TESTIFIED EARLIER, YOU WERE
20    ASKED TO CONSIDER FUNCTIONALITY OF THE DESIGNS IN
21    APPLE'S PATENTS?
22    A    YES.
23    Q    WHY DID YOU CONSIDER FUNCTIONALITY?
24    A    AS FAR AS I UNDERSTAND, THE DESIGN PATENT IS
25    INTENDED TO PROTECT ORNAMENTAL DESIGN.  IT IS NOT
```

1    INTENDED TO PROTECT FUNCTIONAL ELEMENTS.

2    Q    WHAT DID YOU LOOK FOR WHEN YOU WERE

3    CONSIDERING THE ISSUE OF FUNCTIONALITY?

4    A    I WAS TRYING TO SEPARATE WHAT ARE THE

5    ORNAMENTAL ELEMENTS, WHAT ARE THE ORNAMENTAL

6    FEATURES OF THE DESIGN PATENTS AND EXCLUDE OUT THE

7    ONES THAT ARE FUNCTIONAL, THE ELEMENTS THAT ARE

8    FUNCTIONAL.

9    Q    DID YOU USE ANY TEST TO DETERMINE WHETHER

10   SOMETHING WAS FUNCTIONAL OR NOT?

11   A    THE TEST WOULD BE IF SOMETHING IS -- IF AN

12   ELEMENT IS ESSENTIAL FOR THE USE OR IMPACTS THE

13   COST OR QUALITY OF THE PRODUCT, THAT WOULD BE

14   CONSIDERED FUNCTIONAL OR IF THE APPEARANCE OF THAT

15   ELEMENT WOULD BE DICTATED BY FUNCTION.

16   Q    DO YOU HAVE ANY EXPERTISE YOURSELF RELEVANT TO

17   DETERMINING FUNCTIONALITY IN THE SMARTPHONES?

18   A    I'M -- AS I MENTIONED, I'VE WORKED IN MOBILE,

19   I DESIGNED PHONES, I HAVE WORKED VERY HARD ON

20   UNDERSTANDING THE FUNCTIONALITIES FOR A PHONE, WHAT

21   IT MEANS, HOW IT IMPACTS THE DESIGN.

22            SO I DEFINITELY THINK I HAVE THE

23   EXPERIENCE FOR THAT.

24   Q    OKAY.  MR. FISHER, CAN WE PUT UP THE FRONT

25   FACE OF '677, '087, AND '889 FOR REFERENCE.  THERE

2603

1       WE GO.

2                 THIS IS JUST AN ILLUSTRATION OF THE FRONT

3       FACE OF THE '677 ON THE LEFT, '087 IN THE MIDDLE,

4       '889 ON THE RIGHT.  DO YOU SEE THAT, SIR?

5       A    YES, I DO.

6       Q    DO ALL OF THESE -- WELL, CAN YOU DESCRIBE THE

7       SHAPE OF THE DISPLAY SCREENS ON THESE DESIGN

8       PATENTS?

9       A    ALL OF THESE DEVICES HAVE RECTANGULAR

10      DISPLAYS.

11      Q    DID YOU FORM AN OPINION AS TO WHETHER A LARGE

12      RECTANGULAR DISPLAY WAS FUNCTIONAL?

13      A    YES, I DID.

14      Q    PLEASE EXPLAIN YOUR OPINION TO THE JURY?

15      A    SO A RECTANGULAR DISPLAY IS FUNCTIONAL AND IT

16      IS FUNCTIONAL BECAUSE, FIRST, THE MEDIA THAT WE'RE

17      CONSUMING ON THESE DEVICES, WHICH MEANS EITHER

18      MOVIES OR NEWSPAPERS OR WEB PAGES, ALL OF THESE

19      COME IN RECTANGULAR SHAPE.

20                SO OBVIOUSLY THE DISPLAYS ARE RECTANGULAR

21      AND THEY HAVE BEEN SO AS FAR AS I CAN REMEMBER.

22                IN ADDITION, IN TERMS OF WHAT'S AVAILABLE

23      AND WHAT'S EASY TO MANUFACTURE IN TERMS OF COST,

24      THESE RECTANGULAR DISPLAYS, THIS IS THE MAJORITY,

25      OVERWHELMING MAJORITY OF THE DISPLAYS ARE

2604

1    RECTANGULAR AND ANY OTHER SHAPE WOULD BE MORE

2    EXPENSIVE, COMPLETELY RARE.

3    Q    WHAT ABOUT THE OUTSIDE SHAPE OF EACH OF THESE

4    FORM FACTORS?  HOW WOULD YOU DESCRIBE THEM?

5    A    SO I WOULD DESCRIBE THAT AS OVERALL

6    RECTANGULAR SHAPE.

7    Q    AND DID YOU FORM ANY OPINION ON WHETHER AN

8    OVERALL RECTANGULAR SHAPE WAS FUNCTIONAL USING THE

9    STANDARD THAT YOU'VE DESCRIBED?

10   A    YES, I DID.

11   Q    PLEASE EXPLAIN TO THE JURY.

12   A    SO ON THESE TYPE OF DEVICES, EITHER A TABLET

13   OR A SMARTPHONE WITH A LARGE DISPLAY, THE DISPLAY

14   IS SORT OF THE MAIN ELEMENT.  YOU ARE TRYING TO

15   MAXIMIZE THE SIZE OF THE DISPLAY.

16        AND ON THE OTHER HAND, SINCE THESE ARE

17   MOBILE DEVICES BY NATURE, YOU ARE TRYING TO

18   MINIMIZE THE OVERALL SIZE OF THE DEVICE.

19        AND, THEREFORE, THE OVERALL SHAPE OF THE

20   DESIGN IS PRACTICALLY DICTATED BY THE FACT THAT

21   THERE IS A RECTANGULAR DISPLAY WHICH BASICALLY

22   YIELDS OVERALL RECTANGULAR SHAPE FOR THE DEVICE.

23   Q    CAN YOU DESCRIBE THE CORNERS ON EACH OF THESE

24   DEVICES?

25   A    ON ALL FOUR -- ON ALL OF THESE DESIGNS, THE

2605

1    CORNERS ARE ROUNDED.

2    Q    AND DID YOU FORM AN OPINION AS TO WHETHER

3    ROUNDED CORNERS WERE FUNCTIONAL USING THE STANDARD

4    YOU DESCRIBED?

5    A    YES.

6    Q    PLEASE EXPLAIN THAT TO THE JURY.

7    A    ROUNDED CORNERS HAVE SIGNIFICANT BENEFITS WHEN

8    IT COMES TO SORT OF THE USABILITY AND ECONOMICS.

9         IT'S EASIER TO HOLD THEM, IT'S MORE

10   COMFORTABLE.

11        THEY ALSO DON'T SNAG WHEN YOU'RE TRYING

12   TO PUT THEM INTO YOUR POCKET OR ACTUALLY YOUR

13   FINGERS OR HURT YOU.

14        AND THERE ARE ALSO BENEFITS IN TERMS OF

15   MANUFACTURING AND THE MECHANICAL STABILITY OF

16   ROUNDED CORNERS.  SHARP CORNERS, MAY BEND AND

17   BREAK, WHILE ROUNDED CORNERS ARE STRONGER AND

18   EASIER TO MANUFACTURE.

19   Q    DID YOU FIND ANY EVIDENCE IN THE RECORD THAT

20   APPLE DESIGNERS CONSIDERED THE FUNCTIONAL ASPECTS

21   OF ROUNDED CORNERS?

22   A    YES.

23   Q    I'LL DIRECT YOUR ATTENTION TO DX 562 IN YOUR

24   BINDER.  AND CAN WE PUT UP SDX 3970.017.

25        YOUR HONOR, I THINK MY RECORDS ARE A

1   LITTLE CONFUSED.  I'M NOT SURE IF DX 562 IS IN

2   EVIDENCE.  I WOULD MOVE IT INTO EVIDENCE FOR THE

3   LIMITED PURPOSE OF FUNCTIONALITY.

4           THE COURT:  IT IS ADMITTED AND I JUST

5   HAVE ONE INSTRUCTION, AND THAT IS THAT THE JURY MAY

6   CONSIDER DX 562 AS TO FUNCTIONALITY, BUT NOT AS TO

7   INVALIDITY OR NON-INFRINGEMENT.

8           (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

9           562, HAVING BEEN PREVIOUSLY MARKED FOR

10          IDENTIFICATION, WAS ADMITTED INTO

11          EVIDENCE.)

12          MR. VERHOEVEN:  JUST ONE SECOND.  A

13  LITTLE TECHNICAL DIFFICULTY.

14          THE COURT:  THAT'S ADMITTED AND,

15  MS. KREVANS, YOU'RE RESERVING YOUR OBJECTION?

16          MS. KREVANS:  YES, YOUR HONOR.

17          THE COURT:  OKAY.

18          GO AHEAD, PLEASE.

19          MR. VERHOEVEN:  MAY I PUBLISH IT ON THE

20  SCREEN, YOUR HONOR?

21          THE COURT:  GO AHEAD.

22          MR. VERHOEVEN:  THANK YOU.

23  Q    IS THIS ONE OF THE DOCUMENTS YOU CONSIDERED,

24  SIR?

25  A    YES.

```
1    Q    THIS IS A DOCUMENT FROM RICHARD HOWARTH.  DO

2    YOU HAVE AN UNDERSTAND WHO HE IS?

3    A    HE'S A DESIGNER AT APPLE.

4    Q    AND IT'S TO JONATHAN IVE.  WHO IS HE?

5    A    THE HEAD OF APPLE.

6    Q    I'LL READ THIS INTO THE RECORD, "I'M WORRIED

7    ABOUT THE EXTRUDO SHAPE WE'RE USING FOR P2, ET

8    CETERA, LOOKING AT WHAT SHIN'S DOING WITH THE

9    SONY-STYLE CHAPPY.  HE'S ABLE TO ACHIEVE A MUCH

10   SMALLER-LOOKING PRODUCT WITH A MUCH NICER SHAPE TO

11   HAVE NEXT TO YOUR EAR AND IN YOUR POCKET.  BUT IT

12   DOES HAVE THE SIZE AND SHAPE/COMFORT BENEFITS I

13   MENTIONED BEFORE AND THESE ARE HARD TO IGNORE WITH

14   A PRODUCT WE HAVE TO CARRY IN OUR POCKET."

15          DO YOU SEE THAT, SIR?

16   A    YES.

17   Q    AND HOW DID THAT INFORM YOUR OPINION AS TO THE

18   ISSUE OF WHETHER THE ROUNDED CORNERS ARE

19   FUNCTIONAL?

20   A    IT SEEMS THE APPLE DESIGNERS ALSO ACKNOWLEDGED

21   THE ADVANTAGES OF ROUNDED CORNERS SINCE WHAT THEY

22   CALL THE "SONY-STYLE CHAPPY," WHICH IS THE

23   LEFT-SIDE IMAGE, HAS ROUNDED CORNERS VERSUS THE

24   OTHER DESIGN, THE EXTRUDO, WHICH DOES NOT HAVE

25   THEM.  AND THEY ALSO MENTIONED THE ERGONOMIC
```

```
 1    BENEFITS OF THAT.  SO I THINK THAT BASICALLY

 2    REENFORCES THAT.

 3    Q    MR. FISHER, CAN WE GO BACK TO THE SCREEN THAT

 4    HAS THE VIEWS OF THE THREE DESIGN PATENTS THAT

 5    WE'RE TALKING ABOUT.

 6         MS. KREVANS:  AND, YOUR HONOR, I WOULD

 7    JUST NOTE THAT THIS WAS NOT A DEMONSTRATIVE THAT

 8    WAS DISCLOSED TO US.  WE WOULDN'T HAVE HAD

 9    OBJECTION IF IT HAD BEEN, BUT I THINK SINCE THERE

10    HAS BEEN EXTENSIVE TESTIMONY ABOUT IT, IT SHOULD BE

11    GIVEN A NUMBER AND PROVIDED TO US.

12         MR. VERHOEVEN:  THAT'S FINE, YOUR HONOR.

13    THIS IS JUST TRIAL DIRECTOR.

14         THE COURT:  I KNOW.  I UNDERSTAND.  GO

15    AHEAD.  PLEASE.

16         MR. VERHOEVEN:  THANK YOU.

17    Q    DO ALL THESE DESIGNS HAVE A FLAT FRONT FACE?

18    A    YES, THEY DO.

19    Q    AND DID YOU CONSIDER WHETHER A FLAT FRONT FACE

20    WAS FUNCTIONAL?

21    A    YES.

22    Q    AND CAN YOU EXPLAIN WHY?

23    A    SO IF WE'RE LOOKING AT THESE DEVICES, THEY ARE

24    ALL TOUCH OPERATED DEVICES WITH VERY LARGE

25    DISPLAYS.  YOU OBVIOUSLY WANT TO BE ABLE TO OPERATE
```

```
 1    THEM AND THEY'RE ALL OPERATED BY FINGERS, SO YOU

 2    WANT TO HAVE A FLAT SURFACE THAT WILL BE EASY TO

 3    MANIPULATE AND SINCE YOUR MOVEMENTS AND YOUR

 4    FINGERS ARE NOT POINT ELEMENTS, THEY'RE NOT PENS,

 5    THEY ALSO EXTEND BEYOND WHAT IS THE ACTIVE AREA.

 6         SO WE WOULD LIKE THIS WHOLE AREA TO BE

 7    FLAT SO IT'S GOING TO BE EASILY MANIPULATED WHEN

 8    YOU'RE MOVING YOUR FINGERS AND OPERATING THE

 9    DEVICE.

10    Q    NOW, THE '677 AND THE '087 HAVE THOSE LOZENGE

11    SHAPED SPEAKER SLOTS IN THE TOP PORTION OF THE

12    PHONE.  DO YOU SEE THAT?

13    A    YES.

14    Q    DID YOU FORM AN OPINION AS TO WHETHER HAVING

15    THESE SPEAKER, LOZENGE SHAPED SPEAKER SLOTS IN THAT

16    POSITION WOULD BE FUNCTIONAL OR NOT?

17    A    YES.

18    Q    CAN YOU EXPLAIN YOUR OPINION TO THE JURY?

19    A    YES.  SO OBVIOUSLY YOU NEED AN EARPIECE IN

20    ORDER TO HAVE CALLS, PRIVATE CALLS.  THE LOCATION

21    OF THE EARPIECE SLOT ON TOP OF THE DISPLAY ON THE

22    UPPER PART OF THE TELEPHONE IS A NATURAL LOCATION.

23    YOU'RE HOLDING IT TO YOUR EAR, SO THAT NEEDS TO BE

24    NEAR YOUR EAR.  THE MICROPHONE ON THE BOTTOM SO

25    IT'S CLOSE TO YOUR MOUTH.
```

```
 1              YOU ALSO WOULD LIKE TO HAVE IT SORT OF IN

 2    AN ELONGATED SHAPE WHERE IT HAS A LOT OF BENEFITS,

 3    AND THE REASONS FOR THAT ARE TWO.  ONE IS THAT AS A

 4    USER, YOU DON'T WANT TO NEED TO KEEP IT AT THE

 5    EXACT POINT.  YOU WANT TO HAVE SOME FLEXIBILITY ON

 6    THE PLACING IT, YOU PUT IT TOWARDS YOUR EAR, SO IT

 7    NEEDED TO HAVE SOME WIDTH.

 8              AND ALSO IN TERMS OF SPACE USAGE, YOU

 9    DON'T WANT TO SORT OF EXTEND THE LENGTH OF THE

10    DEVICE, SO IT'S MUCH MORE CONVENIENT TO HAVE THE

11    EARPIECE BEING ELONGATED SO IT DOESN'T CREATE MORE

12    LENGTH TO THE DEVICE.  SO THAT'S BASICALLY IT.

13    Q    FINALLY, THE '677 CLAIMS THIS BLACK FRONT

14    SURFACE.  DO YOU SEE THAT?

15    A    YES.

16    Q    DID YOU CONSIDER OR FORM AN OPINION AS TO

17    WHETHER HAVING A BLACK FRONT FACE WAS FUNCTIONAL AS

18    YOU APPLIED YOUR TEST?

19    A    YES.

20    Q    CAN YOU EXPLAIN THAT TO THE JURY.

21    A    SO WHEN WE'RE LOOKING AT THIS TYPE OF DEVICE,

22    THERE ARE A LOT OF COMPONENTS THAT RESIDE BELOW THE

23    SURFACE, AND YOU WOULD LIKE TO HIDE THEM.  YOU

24    DON'T WANT THEM TO BE SEEN.

25              BLACK IS VERY EFFICIENT COLOR IN HIDING
```

```
 1    THESE TYPE OF COMPONENTS, SO THAT'S ONE REASON.

 2            THE OTHER REASON IS THAT THE DISPLAYS

 3    THEMSELVES USUALLY COME IN SORT OF GRAY TOWARDS

 4    BLACK COLORS, AND SO HAVING THE WHOLE THING AS

 5    BLACK IS A NATURAL.

 6            IT ALSO PROVIDES GOOD CONTRAST TO THE

 7    DISPLAY ITSELF.

 8            MR. VERHOEVEN:  PASS THE WITNESS, YOUR

 9    HONOR.

10            THE COURT:  ALL RIGHT.  THE TIME IS NOW

11    4:12.  GO AHEAD, PLEASE.

12                  CROSS-EXAMINATION

13    BY MS. KREVANS:

14    Q    GOOD AFTERNOON, MR. SHERMAN.

15    A    GOOD AFTERNOON.

16    Q    I'M ALSO ON THE CLOCK, SO I'M JUST GOING TO

17    FOLLOW UP ON A FEW OF THE THINGS THAT MR. VERHOEVEN

18    ASKED YOU.

19            FIRST, LET'S START WITH YOUR BACKGROUND.

20    YOU'RE AN ELECTRICAL ENGINEER; RIGHT?

21    A    CORRECT.

22    Q    YOU'RE NOT AN INDUSTRIAL DESIGNER?

23    A    NO, I'M NOT.

24    Q    AND YOU'VE NEVER TAKEN ANY COURSES IN

25    INDUSTRIAL DESIGN?
```

```
 1    A    NO.

 2    Q    AND YOU'VE NEVER TAUGHT ANY COURSES IN

 3    INDUSTRIAL DESIGN?

 4    A    NO.

 5    Q    AND THOSE 20 PATENTS AND A LOT OF PATENT

 6    APPLICATIONS YOU MENTIONED, STARTING YOUR

 7    TESTIMONY, THOSE ARE ALL UTILITY PATENTS; RIGHT?

 8    A    YES.

 9    Q    NONE OF THEM ARE DESIGN PATENTS?

10    A    YES.

11    Q    THEY'RE ON VARIOUS ASPECTS OF ENGINEERING

12    INVENTIONS THAT YOU'VE HELPED MAKE?

13    A    YES.

14    Q    OKAY.  WHY DON'T WE START WITH YOUR

15    OBVIOUSNESS OPINIONS ABOUT THE '889 PATENT.  THAT'S

16    THE IPAD DESIGN PATENT.

17              DO YOU HAVE THE TC1000 STILL THERE WITH

18    YOU?

19    A    NO.

20              MS. KREVANS:  MAY I APPROACH, YOUR HONOR.

21              MR. VERHOEVEN:  YOUR HONOR, I OBJECT TO

22    THE CHARACTERIZATION OF THAT DESIGN PATENT BY

23    COUNSEL.

24              MS. KREVANS:  MAY I GO FETCH THE TABLET

25    WHILE YOU'RE LOOKING, YOUR HONOR?
```

```
 1              THE COURT:  OVERRULED.

 2              GO AHEAD.

 3    BY MS. KREVANS:

 4    Q    THIS IS ONE OF THE TWO PIECES OF PRIOR ART

 5    THAT YOU RELY ON TO SAY THAT THE '889 APPLE DESIGN

 6    PATENT IS OBVIOUS.

 7    A    CORRECT.

 8    Q    YOU THINK THE PATENT OFFICE SHOULD NEVER HAVE

 9    GRANTED IT IN THE FIRST PLACE?

10    A    I THINK THEY SHOULD NOT.

11    Q    AND YOU'RE RELYING ON TWO THINGS?

12    A    I RELY ON THE FIDLER TABLETS AND ON THAT.

13    Q    AND THIS IS, FOR THE RECORD, THE TC1000

14    COMPAQ PRODUCT, JX 1074.

15              WOULD YOU AGREE WITH ME, MR. SHERMAN,

16    THAT THE ACTUAL DESIGN OF THE TC1000 HAS MULTIPLE

17    BORDERS AROUND THE DISPLAY SCREEN?  FIRST AN INNER

18    BLOCK BORDER; AND THEN AN OUTER SILLIER BORDER; AND

19    THEN BEYOND THAT, STILL, ANOTHER SILVER PIECE

20    THAT'S MADE OF A DIFFERENT KIND OF MATERIAL?

21    A    YES.

22    Q    RIGHT?

23    A    YES.

24    Q    COULD WE PUT UP THE '889 PATENT, MR. LEE.  AND

25    WHY DON'T WE GO TO THE SECOND PAGE OF THE FIGURES.
```

```
 1                    I'M HOLDING THE TC1000, EXHIBIT JX 1074
 2     IN MY HANDS, MR. SHERMAN.  THESE MULTIPLE BORDERS
 3     THAT IT HAS, THEY ARE NOT SHOWN IN THE DESIGN OF
 4     THE '889, ARE THEY?
 5     A    THE '889 SHOWS A SINGLE FRAME PLUS A BORDER.
 6     THIS ONE HAS TWO BORDERS.
 7     Q    IT SHOWS, IN THAT DESIGN, ONE -- ONE EFFECT OF
 8     A BORDER THAT IS UNDER THE TRANSPARENT FACE THAT
 9     COVERS THE ENTIRE FRONT; RIGHT?
10     A    YES.
11     Q    AND THAT'S SHOWN BY THE DOTTED LINE THAT WE
12     SEE GOING AROUND INSIDE THE FRONT FACE; RIGHT?
13     A    YES.
14     Q    IT DOESN'T SHOW MULTIPLE BORDERS LIKE THE
15     TC1000?
16     A    NO, IT DOES NOT.
17     Q    BUT YOU THINK THIS DEVICE MEANS THE PATENT
18     OFFICE SHOULD NEVER HAVE ISSUED THE '889 PATENT?
19     A    THIS DEVICE IN COMBINATION WITH THE FIDLER
20     TABLET.
21     Q    OKAY.  LET'S TURN TO THE FIDLER.
22                    NOW, YOU NEVER ACTUALLY HAVE SEEN THE
23     MOCKUP THAT MR. FIDLER SHOWED IN THE VIDEO THAT WE
24     SEE IN COURT EARLIER; RIGHT?
25     A    I HAVE SEEN IT IN MY DEPOSITION, AND I HAVE
```

```
1     SEEN IT AGAIN TODAY.

2     Q    YOU SAW THE VIDEO?

3     A    NO, I MEAN THE ACTUAL -- DO YOU MEAN THE

4     MOCKUP THAT FIDLER HIMSELF HAD, NO.

5     Q    MR. FIDLER LIVES IN MISSOURI?

6     A    YES.

7     Q    AND YOU DIDN'T TAKE THE TIME TO GO TO MISSOURI

8     AND LOOK AT THE ACTUAL MOCKUP THAT HE MADE?

9     A    I DID NOT SEE THE ACTUAL MOCKUP.

10    Q    OKAY.  BUT YOU'VE SEEN IT IN THE VIDEO, RIGHT?

11    A    I'VE SEEN IT IN IMAGES AND THE VIDEO.

12    Q    OKAY.  AND THEN YOU MENTIONED SOMETHING ELSE

13    THAT YOU SAW.  WHAT WAS THAT?

14    A    AND MY DEPOSITION, A COPY OR A MOCKUP OF THE

15    MOCKUP.

16    Q    YOU SAW A REPLICA?

17    A    A MOCKUP.

18    Q    LET'S TRY, MR. SHERMAN, NOT TO TALK AT THE

19    SAME TIME BECAUSE IT MAKES IT VERY DIFFICULT FOR

20    MS. MEZZETTI TO TRANSCRIBE, AND WE BOTH ALSO TALK

21    KIND OF FAST.

22         YOU SAW AT YOUR DEPOSITION A REPLICA THAT

23    HAD BEEN MADE OF THE ORIGINAL MOCKUP THAT

24    MR. FIDLER MADE?

25    A    YES.
```

2616

```
1    Q    OKAY.  NOW, BECAUSE YOU HAVEN'T EVER SEEN THE
2    ORIGINAL MOCKUP THAT MR. FIDLER MADE, YOU DON'T
3    KNOW AND YOU CAN'T KNOW WHETHER THE REPLICA YOU SAW
4    AT YOUR DEPOSITION WAS AN ACCURATE REPLICA OF THE
5    ORIGINAL; RIGHT?
6    A    IT -- FROM -- IT LOOKS SIMILAR, BUT I CANNOT
7    GUARANTEE THAT IT'S ENTIRELY ACCURATE.
8    Q    OKAY.  BECAUSE WHAT YOU HAD TO COMPARE IT TO
9    WAS PHOTOS THAT YOU HAD SEEN RATHER THAN THE
10   ORIGINAL MOCKUP THAT MR. FIDLER MADE?
11   A    I COMPARED IT TO THE PHOTOS AND THE VIDEO.
12   Q    AS FAR AS YOU COULD TELL BY COMPARING IT TO
13   THE PHOTOS, THE REPLICA YOU SAW AT THE DEPOSITION
14   WAS ACCURATE; RIGHT?
15   A    I WOULD SAY THAT IT, IT SEEMS TO BE ACCURATE.
16   THE -- IT HAS SORT OF THE PEN WAS MISSING, BUT YES.
17   Q    THE PEN WAS MISSING?  YOU MEAN THE STYLUS?
18   A    THE STYLUS.
19   Q    OKAY.  BUT OTHERWISE IT SEEMED ACCURATE TO
20   YOU?
21   A    IT SEEMED ACCURATE.
22   Q    OKAY.  NOW, YOU WOULD AGREE WITH ME THAT THE
23   PHOTOS DON'T GIVE YOU ALL THE INFORMATION THAT
24   HAVING THE MOCKUP OR THE REPLICA IN FRONT OF YOU
25   WOULD GIVE YOU; RIGHT?
```

```
 1   A    I WOULD NOT CHARACTERIZE IT AS SUCH.  I THINK

 2   IF YOU HAVE FULL SET OF IMAGES AND PLUS VIDEO WHERE

 3   PEOPLE SORT OF HOLD IT IN DIFFERENT POSITIONS, THAT

 4   GIVES YOU, I WOULD SAY, VERY CLOSE TO THE FULL

 5   INFORMATION.

 6   Q    BUT THERE ARE DETAILS THAT YOU CAN'T REALLY

 7   QUITE TELL FROM THE PHOTOS THAT YOU CAN SEE IF YOU

 8   HAVE THE ACTUAL THING IN FRONT OF YOU; RIGHT?

 9   A    SMALL DETAILS YOU CAN PROBABLY SEE MORE IF YOU

10   HAVE SOMETHING IN YOUR HAND.

11   Q    OKAY.  LET'S -- CAN WE PUT BACK UP THE SAME

12   PHOTOS OF THE FIDLER MOCKUP THAT MR. VERHOEVEN

13   SHOWED, MR. LEE?

14        OKAY.  LOOKING AT THESE PHOTOS,

15   MR. SHERMAN, CAN YOU AGREE WITH ME THAT LOOKING AT

16   THE TOP LEFT PHOTO, WHICH IS THE FRONT OF THE

17   FIDLER MOCKUP, ON THE FRONT OF THE DEVICE, RAISED

18   ABOVE THE PLEXIGLAS THAT COVERS WHAT'S SUPPOSED TO

19   BE THE SCREEN, THERE'S A PLASTIC BORDER.  RIGHT?

20   A    YES.

21   Q    IT GOES ALL THE WAY AROUND?

22   A    IT DOES.

23   Q    AND ACTUALLY STICKS UP FROM THE FRONT OF THE

24   DEVICE?

25   A    IT IS SLIGHTLY ELEVATED ON TOP AND, AS
```

2618

```
 1    MR. FIDLER SAID, THAT WAS NOT THE INTENT.  BUT,
 2    YES, IT IS SLIGHTLY ELEVATED.
 3    Q    SO WHAT MR. FIDLER ACTUALLY SAID WAS, IN HIS
 4    HEAD, HE WAS THINKING I'D LIKE IT TO BE FLAT, BUT
 5    THE MODEL THAT YOU WERE RELYING ON THE PHOTOS OF,
 6    THAT'S THE DESIGN WE HAVE TODAY, IT'S NOT ENTIRELY
 7    NOT ON THE FRONT, IS IT?
 8    A    THE MODEL, THE MOCKUP ITSELF DOES NOT HAVE IT
 9    FLAT.
10    Q    IN FACT, IT HAS A RAISED OPAQUE PLASTIC BORDER
11    ALL THE WAY AROUND IT, RIGHT?
12    A    SLIGHTLY RAISED, CORRECT.
13    Q    LIKE A FRAME?
14    A    YOU COULD CALL IT THAT.
15    Q    AND THEN UNDERNEATH THAT, AS WE HEARD FROM
16    MR. FIDLER IN HIS VIDEO, THERE WAS A TRANSPARENT
17    PLEXIGLAS THAT WAS BEHIND THAT WAY JUST THE WAY THE
18    GLASS IN A PICTURE FRAME WOULD BE BEHIND THE FRAME;
19    RIGHT?
20    A    AS MR. FIDLER MENTIONED, THAT WAS DUE TO THE
21    LIMITATION OF PRODUCTION.  BUT, YES.
22    Q    WE'RE RELYING, AND YOU'RE RELYING IN YOUR
23    TESTIMONY, ON THESE PHOTOS OF HIS MOCKUP; RIGHT?
24    A    I'M RELYING ON THE PHOTOS, AND, AGAIN, THE
25    VIDEO.
```

2619

```
 1    Q    THAT'S RIGHT.  AND IN THESE PHOTOS OF THIS
 2    MOCKUP, WHAT WE SEE IS A BLACK PLASTIC FRAME ON TOP
 3    OF THE PLEX GAS, THE SAME WAY, IN YOUR HOUSE, A
 4    PICTURE FRAME WOULD BE ON TOP OF GLASS THAT WAS
 5    PROTECTING THE PICTURE BEHIND IT; RIGHT?
 6    A    YES.
 7    Q    OKAY.  AND BECAUSE YOU HAVEN'T ACTUALLY SEEN
 8    MR. FIDLER'S MOCKUP, YOU CAN'T KNOW WHETHER, IF IT
 9    WERE HERE AND IT WERE SHOWN TO THE JURY, OR THE
10    REPLICA WAS SHOWN TO THE JURY, THAT THEY WOULD
11    THINK THE OVERALL VISUAL IMPRESSION OF THE MOCKUP
12    WAS THE SAME DESIGN AS THE '889; RIGHT?
13    A    I DON'T AGREE TO THAT.  I THINK THAT, AGAIN,
14    LOOKING AT THIS AND THE IMAGES, I THINK THAT THE
15    OVERALL IMPRESSION THAT YOU ARE GETTING FOR THAT IS
16    VERY SIMILAR TO WHAT YOU'RE GETTING FROM THE '889.
17    IS IT IDENTICAL, NO.  AND THAT IS WHY I THINK IT
18    NEEDS SORT OF TO BE -- IT'S OBVIOUS DUE TO
19    COMBINATION, BUT NOT DIRECTLY.
20    Q    SO, JUST SO WE'RE CLEAR, THE TABLET, THE
21    FIDLER MOCKUP BY ITSELF, YOU SAY, WOULD NOT
22    INVALIDATE THE '889?  RIGHT?
23    A    THE FIDLER MOCKUP WITH THE SORT OF -- THAT HAS
24    THIS, THAT IS LOWER THAN THE SURFACE, THAT SPECIFIC
25    MOCKUP I WOULD SAY WOULD NOT INVALIDATE AS SUCH.
```

1    Q    OKAY.  AND THE TC1000 I'M HOLDING IN MY HAND,

2    THIS ITSELF ALSO, BY ITSELF, WOULD NOT INVALIDATE

3    THE '889 PATENT?

4    A    THE TC1000, ON ITS OWN, NO.

5    Q    SO TO INVALIDATE THE '889 PATENT, YOU WOULD

6    HAVE TO PICK SOME THINGS FROM THE TC1000 AND SOME

7    OTHER THINGS FROM THE FIDLER MOCKUP AND MAKE A NEW

8    DESIGN THAT WAS THE COMBINATION OF THE TWO AND THEN

9    YOU THINK THAT WOULD INVALIDATE THE '889?

10   A    THE THING THAT YOU NEED TO REALLY TAKE FROM

11   THE TC1000 IS THIS FLAT TRANSPARENT FRONT FACE

12   WHICH ANYWAY WAS THE REAL INTENT OF MR. FIDLER AS

13   HE TESTIFIED IN HIS DEPOSITION AND IN THE VIDEO

14   WE'VE SEEN.

15   Q    THAT WAS IN HIS HEAD, BUT IT'S NOT IN THE

16   DESIGN THAT YOU'RE RELYING ON FOR PRIOR ART BECAUSE

17   THE DESIGN THAT YOU'RE RELYING ON FOR PRIOR ART IS

18   THESE PHOTOS WE'RE LOOKING AT; RIGHT?

19   A    AND IN ADDITION, THERE'S THE ADDITIONAL

20   MOTIVATION OF DOING IT, BUT YES.

21   Q    OKAY.  LET ME TURN FOR A MOMENT WITH RESPECT

22   TO THE TABLET TO YOUR OPINIONS ABOUT FUNCTIONALITY.

23        YOU SAID YOUR TEST FOR FUNCTIONALITY WAS

24   WHETHER AN ELEMENT OF THE DESIGN WAS ESSENTIAL FOR

25   USE OR ADVERSELY IMPACTED THE COST OF MANUFACTURER

1    OR USABILITY, RIGHT?

2    A    IF IT -- EITHER IT'S ESSENTIAL OR IMPACTS THE

3    COST OR QUALITY OF THE PRODUCT.

4    Q    OKAY.

5    A    THAT WAS ONE OF THE IDEAS.

6    Q    NOW, YOU'RE AWARE THAT IN THIS CASE, APPLE HAS

7    RESPONDED TO YOUR OPINIONS THAT ELEMENTS OF THE

8    VARIOUS '889 AND ALSO THE IPHONE PATENTS, ARE

9    FUNCTIONAL BY SAYING THAT'S NOT RIGHT, THERE ARE

10   ALTERNATIVES AVAILABLE THAT DO THE SAME THING AND

11   THAT HAVE DIFFERENT DESIGNS.  YOU'RE AWARE OF THAT;

12   RIGHT?

13   A    YES, I'M AWARE.

14   Q    AND YOUR VIEW IS THAT APPLE'S WRONG BECAUSE

15   THERE AREN'T ANY ALTERNATIVE DESIGNS THAT YOU THINK

16   HAVE THE SAME, ALL THE SAME THINGS THAT A USER CAN

17   DO WITH THEM?

18   A    YES.

19   Q    AS THE SMARTPHONES AND THE TABLETS THAT APPLE

20   ACTUALLY MAKES, BUT THAT LOOK LIKE DIFFERENT

21   DESIGNS?

22   A    THAT'S NOT WHAT I SAID.  IN NO WAY DID I SAY

23   THAT THERE AREN'T ALTERNATIVE DESIGNS, AND THAT'S

24   NOT SOMETHING THAT I HAVE SAID.

25   Q    OKAY.  IN FACT, THERE ARE ALTERNATIVE DESIGNS,

1    RIGHT?  HAVE YOU LOOKED AT THE SONY TABLET S?

2    A    YES, I DID.

3    Q    OKAY.

4            YOUR HONOR, WE WOULD MOVE SONY TABLET S

5    INTO EVIDENCE.  IT IS PX 155.

6            MR. VERHOEVEN:  NO OBJECTION.

7            THE COURT:  OKAY.  THAT'S ADMITTED.

8            (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

9            155, HAVING BEEN PREVIOUSLY MARKED FOR

10           IDENTIFICATION, WAS ADMITTED INTO

11           EVIDENCE.)

12           MS. KREVANS:  CAN WE PUT UP, THANK YOU,

13   MR. LEE.

14   Q    THAT'S FOR THE RECORD PDX 26.57 FOR THE SCREEN

15   S, THIS IS THE SONY S?

16   A    YES, IT IS.

17   Q    IT HAS A NOT FRONT FACE?

18   A    YES.

19   Q    IT HAS RECTANGULAR CORNERS?

20   A    YES.

21   Q    THEY'RE ROUNDED?

22   A    YES.

23   Q    IT HAS A RIM THAT COMES UP AND HOLDS THE FACE

24   IN PLACE?

25   A    I'D HAVE TO LOOK CLOSER.

```
 1                    MS. KREVANS:  OKAY.  MAY I APPROACH, YOUR
 2       HONOR?
 3                    THE COURT:  GO AHEAD.
 4       A    YES, IT DOES HAVE IT, IT GOES AT LEAST ON --
 5       WELL, YES.
 6       BY MS. KREVANS:
 7       Q    SO THE ANSWER TO THE QUESTION WAS YES?
 8       A    YES.
 9       Q    OKAY.  AND IT HAS A CLEAR SURFACE WITHOUT
10       EXCESS ORNAMENTATION?
11       A    CORRECT.
12       Q    IN FACT, IT DOESN'T HAVE ANY ORNAMENTATION ON
13       THE SURFACE; RIGHT?
14       A    CORRECT.
15       Q    BUT THE ACTUAL DESIGN OF THIS SONY TABLET
16       LOOKS LIKE SOMEONE TOOK A PIECE OF MATERIAL WITH A
17       BLACK SURFACE AND FOLDED THE WHOLE THING OVER
18       TOWARDS THE BACK; RIGHT?
19       A    YES.
20       Q    AND FROM THE SIDE, YOU CAN QUITE CLEARLY SEE
21       IT'S GOT THAT FOLDED OVER SHAPE?
22       A    YES.
23       Q    AND WHEN YOU PUT IT DOWN, IT ACTUALLY, IT'S AT
24       A LITTLE BIT OF A SLANT; RIGHT?
25       A    YES.
```

1   Q    THIS IS A TABLET THAT HAS A FLAT FRONT FACE,

2   RECTANGULAR SHAPE, ROUNDED CORNERS, A RIM AROUND

3   THE FRONT SURFACE, NO EXCESS ORNAMENTATION, AND IT

4   IS A DIFFERENT DESIGN THAN THE '889 PATENT; RIGHT?

5   A    YOU'VE JUST MENTIONED ALL OF THAT, AND IT HAS

6   THE ONLY THING THAT IS DIFFERENT IS THAT IT HAS A

7   DIFFERENT PROFILE.

8   Q    THIS IS A DIFFERENT DESIGN THAN THE '889

9   PATENT; RIGHT, MR. SHERMAN?

10  A    YES, IT IS A DIFFERENT DESIGN.

11  Q    AND AS FAR AS YOU KNOW, THIS TABLET HAS ALL

12  THE SAME FUNCTIONALITY AS THE APPLE TABLETS?

13  A    AS FAR AS I KNOW, IT RUNS ANDROID SIMILAR

14  FUNCTIONALITY.

15  Q    SO ACTUALLY SAME FUNCTIONAL AS THE SAMSUNG

16  ACCUSED TABLETS, TOO; RIGHT?

17  A    IN TERMS OF THE OPERATING SYSTEM, YES.  I

18  DON'T KNOW ABOUT THAT.

19  Q    OKAY.  BUT YOU STILL SAY THE '889 PATENT, ALL

20  THE ELEMENTS THAT WE JUST LISTED, THEY'RE ALL

21  ESSENTIAL TO FUNCTION, EVEN THOUGH HERE'S THIS

22  ALTERNATIVE DESIGN?

23  A    THE ELEMENTS THAT WE'VE DISCUSSED, YOU JUST

24  MENTIONED THEM HERE, AND THEY ARE BEING USED HERE.

25  SO I'M NOT SURE WHAT THE QUESTION IS.

2625

```
1    Q     IN A DIFFERENT DESIGN?

2    A     IN A DIFFERENT DESIGN.

3    Q     THANK YOU.

4          LET ME ASK YOU JUST A COUPLE OF QUESTIONS

5    ON THE PHONE SIDE OF THINGS SINCE I'M GOING TO RUN

6    OUT OF TIME.

7          DO YOU STILL HAVE THE PRADA IN FRONT OF

8    YOU?

9    A     YES.

10   Q     OKAY.  NOW, I WANT YOU TO HOLD THAT PHONE UP.

11   I KNOW IT'S SMALL, BUT LET'S ALL BE ABLE TO LOOK AT

12   IT.

13         YOU SAID THE PRADA PHONE, IF IT'S PRIOR

14   ART TO THE OTHER PATENTS WOULD ANTICIPATE AND

15   RENDER THEM OBVIOUS IN YOUR REPORT.  AND TODAY YOU

16   TOLD US THAT IT WOULD RENDER THE '677 PATENT

17   OBVIOUS IN COMBINATION WITH SOME OTHER ART; RIGHT?

18   A     CORRECT.

19   Q     ONE OF THE THINGS YOU TOLD US TODAY WAS THAT

20   THE FRONT FACE OF THE PRADA WAS COMPLETELY FLAT; IS

21   THAT RIGHT?

22   A     IT IS FLAT.  IT HAS BUTTONS HERE, BUT THE FACE

23   ITSELF IS COMPLETELY FLAT.

24   Q     SO THE FRONT FACE OF THE PRADA IS ACTUALLY NOT

25   COMPLETELY FLAT BECAUSE RIGHT ACROSS THE FRONT OF
```

1    IT, THERE'S A BIG METAL BUTTON THAT STICKS UP,

2    RIGHT?

3    A    THE METAL BUTTON EXTENDS SLIGHTLY FROM THE

4    FRONT FACE, BUT THE FRONT FACE ITSELF IS FLAT.

5    Q    THE METAL BUTTON STICKS UP ABOVE THE FRONT

6    FACE; RIGHT?

7    A    YES, CORRECT.

8    Q    AND YOU THINK THAT THAT IS A FULLY FLAT FRONT

9    FACE?

10   A    IT IS A FULLY FLAT FACE, AND ALSO SPECIFICALLY

11   WHEN YOU COMPARE TO THE '677, WHICH ALSO DECLAIMS

12   THE BUTTON IN THAT, SO I THINK IN THAT SENSE, IT

13   MAKES ALL THE SENSE TO COMPARE IT THE SAME WAY.

14   Q    CAN WE PUT THE '677 PATENT UP, MR. LEE, AND

15   SHOW THE FIGURES.  WHY DON'T YOU GO ONE MORE PAGE

16   INTO THE FIGURES.

17          THERE'S A DISCLAIMED PORTION ON THE FRONT

18   FACE OF THE '677 THAT'S CIRCLED.  IS THAT WHAT

19   YOU'RE REFERRING TO?

20   A    YES.

21   Q    THE AREA WITHIN THAT CIRCLE IS WHAT IS NOT

22   CLAIMED; RIGHT?

23   A    CORRECT.

24   Q    CAN YOU OLD UP THE PRADA SO THE JURY CAN SEE

25   IT AND TELL THEM WHETHER THAT BIG WIDE BUTTON THAT

1    GOES ACROSS THE FRONT THAT STICKS OUT FROM THE

2    PRADA IS LONGER THAN THE CIRCLE THAT'S DISCLAIMED

3    FROM THE FRONT FACE PROCEDURE PORTION NATURALLY?

4    A    IN TERMS OF LENGTH, IT IS LONGER.  IN TERMS OF

5    ITS AREA, WE'LL NEED TO CHECK.

6    Q    IN TERMS OF ITS PROPORTION TO THE OVERALL

7    DESIGN OF THE PHONE, IT IS MUCH LONGER THAN THAT

8    DISCLAIMED CIRCLE, ISN'T IT?

9    A    IT IS LONGER THAN WHAT IS SHOWN.

10   Q    OKAY.  LET'S TALK FOR A MOMENT ABOUT YOUR

11   OPINIONS ABOUT FUNCTIONALITY OF THE '677, '087

12   PATENTS, THE TWO IPHONE PATENTS.

13        YOU THINK EVERY MAJOR ELEMENT OF THE

14   DESIGNS OF THOSE TWO PATENTS ARE ALSO ESSENTIAL, OR

15   FUNCTIONAL AS YOU USED THE TERM?

16   A    I MENTIONED THE SPECIFIC ELEMENTS THAT ARE

17   ESSENTIAL.

18   Q    OKAY.  AND YOU ALSO UNDERSTOOD THAT APPLE SAID

19   THERE ARE ALTERNATIVE SMARTPHONES IN THE MARKET

20   THAT HAVE DIFFERENT DESIGNS FROM '677 AND THE '087;

21   RIGHT?

22   A    YES.

23   Q    AND THAT PERFORM THE SAME FUNCTIONS?

24   A    THAT'S WHAT I UNDERSTOOD APPLE TO BE SAYING.

25   Q    OKAY.  WHY DON'T WE FIRST LOOK AT PDX 26.62.

1    IF WE CAN PUT THAT UP, PLEASE.  26.62.

2              ON THE RIGHT-HAND SIDE OF THIS GRAPHIC,

3    MR. SHERMAN, THERE ARE SOME BUT NOT ALL OF A GROUP

4    OF SMARTPHONES THAT SAMSUNG HAD ON THE MARKET,

5    ACTUALLY MADE AND SOLD, IN THE PERIOD 2008 AND

6    2009.

7              DO YOU SEE THOSE?

8    A    I SEE THAT.

9    Q    THOSE ARE ALL SMARTPHONES; RIGHT?

10   A    I DON'T KNOW FROM THE PICTURE.

11   Q    WELL, YOU STUDIED THIS TOPIC IN CONNECTION

12   WITH YOUR REPORT OR YOU GAVE AN OPINION THAT THERE

13   WERE NOT SMARTPHONES AVAILABLE THAT WERE

14   ALTERNATIVES THAT DISPROVE YOUR OPINION ON

15   FUNCTIONALITY?

16   A    THAT'S NOT AN OPINION I GAVE IN ANY WAY.

17   Q    YOU DIDN'T LOOK AT THE SMARTPHONES THAT WERE

18   AVAILABLE WHEN YOU GAVE YOUR OPINION THAT THE

19   DESIGN ELEMENTS OF THE '677 AND THE '087 PATENTS

20   WERE FUNCTIONAL?  YOU DIDN'T LOOK AT OTHER PHONES?

21   A    I LOOKED AT OTHER PHONES, BUT TO THE

22   CONCLUSION THAT THESE SPECIFIC ELEMENTS AS SHOWN IN

23   '677 AND '087 ARE FUNCTIONAL, THAT RELATED TO THESE

24   SPECIFIC ELEMENTS OF THE FUNCTIONALITY, I DIDN'T

25   LOOK AT ALL THE PHONES, AND, AGAIN, I NEVER SAID

1    THAT THERE *REASONS ANY OTHER OPTIONS.

2    Q    OKAY.  SO YOU DON'T KNOW ONE WAY OR THE OTHER

3    WHETHER THESE SAMSUNG SMARTPHONES HAD ALL,

4    ESSENTIALLY ALL THE SAME FUNCTIONALITY, SAME

5    FEATURES AS THE APPLE SMARTPHONES?

6    A    AGAIN, LOOKING AT THESE IMAGES, I CAN'T TELL

7    YOU.

8    Q    OKAY.  YOU JUST DON'T KNOW ONE WAY THE OTHER?

9    A    NO, I CAN'T.

10   Q    OKAY.  LET'S JUST LOOK AT THEIR DESIGN FOR A

11   MOMENT.

12           I TAKE IT YOU WOULD AGREE WITH ME THAT

13   NOT EVERY SMARTPHONE THAT'S SHOWN IN THIS

14   PARTICULAR SELECTION HAS A RECTANGULAR OVERALL

15   SHAPE; RIGHT?

16   A    CORRECT, YES.

17   Q    AND NOT EVERY ONE HAS ROUNDED CORNERS?

18   A    NOT EVERY ONE.  SORRY.

19   Q    NOT EVERY ONE OF THEM HAS ROUNDED CORNER;

20   RIGHT?

21   A    WELL, LET'S SEE.  ACTUALLY, MOST OF THEM DO

22   HAVE SOME ROUNDING ON THE CORNERS.  THIS ONE HAS,

23   THIS ONE, THAT ONE.

24   Q    SOME DO AND SOME DON'T; RIGHT?

25   A    ACTUALLY, ALL OF THEM DO HAVE ROUNDING ON THE

1   CORNERS.

2   Q    LOOK AT THE ONE ON THE LEFT, THE I8510,

3   INNOV8.

4   A    THEY DO HAVE ROUNDING.

5   Q    THEY HAVE A LITTLE TINY BIT OF ROUNDING,

6   RIGHT?

7   A    THEY HAVE SOME ROUNDING.

8   Q    SO YOU CONSIDER ALL DEGREES OF ROUNDING THE

9   SAME FROM A DESIGN STANDPOINT?

10  A    NO.  I'M SAYING FOR FUNCTIONALITY POINT OF

11  VIEW, THERE IS A RANGE OF WHAT WOULD BE, I WOULD

12  CALL ROUNDING.  BUT, YES, THESE ONES ARE ROUNDED.

13  Q    GOT IT.  SO JUST SO WE'RE CLEAR, WHEN YOU

14  TALKED EARLIER WITH MR. VERHOEVEN ABOUT CORNERS

15  NEED TO BE ROUNDED SO THAT, FOR EXAMPLE, THEY

16  DIDN'T CATCH IN POCKETS AND THINGS LIKE THAT, YOU

17  WEREN'T SAYING THEY HAD TO BE THE EXACT SAME DEGREE

18  OF ROUNDNESS IN THE '887 AND '087 DESIGNS.  YOU

19  WERE JUST SAYING THEY SHOULDN'T BE COMPLETELY

20  SQUARED?

21  A    WHAT I'M SAYING IS THEY DON'T HAVE TO BE

22  EXACTLY THE SAME ROUNDING AS THE '087 AND THE '677,

23  CORRECT.

24  Q    TO ACHIEVE THAT PURPOSE OF NOT BEING HARD TO

25  GET OUT OF YOUR POCKET?

2631

```
1    A    CORRECT.

2    Q    A LITTLE BIT OF ROUNDING WILL DO FOR THAT?

3              THE COURT:  CAN WE -- IT'S 4:33, SO

4    CAN --

5              MS. KREVANS:  I'M TRYING TO FINISH

6    BECAUSE THIS WITNESS NEEDS TO LEAVE TOWN, YOUR

7    HONOR.

8              MR. VERHOEVEN:  THAT'S CORRECT.

9              THE COURT:  I'M ASSUMING THERE'S GOING TO

10   BE REDIRECT TOMORROW?  NO.

11             MR. VERHOEVEN:  NO REDIRECT SO FAR, YOUR

12   HONOR.

13             THE COURT:  OH.  HOW MUCH MORE DO YOU

14   HAVE?

15             MS. KREVANS:  I THINK I HAVE ABOUT FIVE

16   MINUTES, YOUR HONOR.

17             MR. VERHOEVEN:  I WOULD BEG THE COURT'S

18   INDULGENCE TO JUST DO AN EXTRA FIVE MINUTES.  I

19   DON'T HAVE ANY REDIRECT.

20             THE COURT:  CAN WE GO A LITTLE BIT

21   LONGER.  I DON'T KNOW IF ANYONE HAS TO CATCH A RIDE

22   HOME OR NOT.

23             THE WITNESS:  I TOTALLY APPRECIATE THIS.

24             THE COURT:  OKAY.  ALL RIGHT.  ALL RIGHT.

25   THEN -- ALL RIGHT.  KEEP GOING, PLEASE.
```

2632

```
1    BY MS. KREVANS:

2    Q    OKAY.  AND LOOKING BACK AT THIS, FOR EXAMPLE,

3    WE SEE ONE DESIGN THERE, THE BEATDJ IN THE MIDDLE,

4    THAT COMPLETELY *OVERRULE.  THAT'S NOT A RECORD AT

5    ALL, RIGHT?

6    A    THIS IS A /TPHAO*URB MUSIC TYPE OF PHONE.

7    YES, IT HAS COMPLETELY ROUNDED HALF CIRCLE TYPE OF

8    TOP AND BOTTOM.

9    Q    OKAY.  WHY DON'T WE LOOK AT SOME MORE

10   ALTERNATIVES.  THOSE WERE ALL MADE BY SAMSUNG.

11   LET'S LOOK AT SOME MADE BY OTHER COMPANIES.

12             COULD WE SEE PDX 26.52.  AND -- AND YOUR

13   HONOR, I'D LIKE TO APPROACH THE WITNESS AND GIVE

14   HIM PLAINTIFF'S EXHIBIT NUMBER 150.

15             THE COURT:  OKAY.  GO AHEAD.  HAS THAT

16   BEEN ADMITTED OR NOT?

17             MS. KREVANS:  IT HAS NOT.

18             THE COURT:  OKAY.

19             MS. KREVANS:  BUT THESE PHOTOS HAVE BEEN

20   SHOWN.  THE PHYSICAL EXHIBIT HAS NOT YET BEEN

21   ADMITTED.

22             THE COURT:  OKAY.

23   BY MS. KREVANS:

24   Q    NOW, PDX 150 IS THE CASIO G'Z ONE COMMANDO?

25   A    YES, IT'S A RUGGEDIZED SMARTPHONE.
```

```
 1    Q    IT'S A WHAT?

 2    A    RUGGEDIZED.

 3    Q    SO IF SOMEONE WANTS TO MAKE SURE THEY DROP

 4    THEIR PHONE A LOT, IT WON'T BREAK, THIS IS THE ONE?

 5    A    YES.

 6    Q    AND WE'RE LOOKING AT PICTURES OF THE COMMANDO

 7    ON THE SCREEN; IS THAT RIGHT?

 8    A    YES.

 9            MS. KREVANS:  YOUR HONOR, WE WOULD MOVE

10    PX 150 INTO EVIDENCE.

11            THE COURT:  IS IT 150 OR 1050?

12            MS. KREVANS:  150.

13            THE COURT:  OKAY.  THAT'S ADMITTED.

14            (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

15             150, HAVING BEEN PREVIOUSLY MARKED FOR

16             IDENTIFICATION, WAS ADMITTED INTO

17             EVIDENCE.)

18    BY MS. KREVANS:

19    Q    THIS IS A SMARTPHONE WITH A FULL SET OF

20    FEATURES, MR. SHERMAN?

21    A    AS FAR AS I KNOW, YES.

22    Q    VERY DIFFERENT DESIGN FROM THE '677 AND THE

23    '087?

24    A    IT IS A DIFFERENT DESIGN.

25    Q    IT'S A REALLY DIFFERENT DESIGN, ISN'T IT?  IS
```

2634

```
1    THAT A YES?

2    A    IT IS A DIFFERENT DESIGN.

3    Q    OKAY.  AND IT WORKS?

4    A    IT WORKS.

5    Q    AND PEOPLE BUY IT?

6    A    THAT I DON'T KNOW.  BUT I GUESS SO.

7    Q    OKAY.  BECAUSE YOU DIDN'T STUDY THE DETAILS OF

8    HOME PEOPLE BUY WHAT PHONES RIGHT?

9    A    I DON'T KNOW THE NUMBERS FOR THESE PHONES.

10   Q    OKAY.  ONE MORE.

11            COULD WE SEE PDX 26.51.  AND, YOUR HONOR,

12   MAY I APPROACH THE WITNESS AND GIVE HIM PHYSICAL

13   EXHIBIT PLAINTIFF'S NUMBER 148?

14            THE COURT:  OKAY.

15            MS. KREVANS:  MAY I ALSO LET THE JURY

16   LOOK AT THE CASIO COMMANDO?

17            THE COURT:  THAT'S FINE.

18   BY MS. KREVANS:

19   Q    I'LL SWAP YOU, MR. SHERMAN.

20            NOW, THE PHONE'S BEEN MARKED FOR

21   IDENTIFICATION AS PX 148 IS THE NOKIA LUMIA; RIGHT?

22   A    CORRECT.

23            MS. KREVANS:  YOUR HONOR, WE WILL MOVE

24   FOR ADMISSION.

25            THE COURT:  IT'S ADMITTED.
```

```
 1              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

 2              148, HAVING BEEN PREVIOUSLY MARKED FOR

 3              IDENTIFICATION, WAS ADMITTED INTO

 4              EVIDENCE.)

 5    BY MS. KREVANS:

 6    Q    THAT'S A SMARTPHONE, RIGHT?

 7    A    YES.

 8    Q    AND IF YOU CAN HOLD THAT UP SO THE JURY CAN

 9    SEE IT.  THAT IS A SMARTPHONE THAT HAS A

10    TRANSPARENT SURFACE ON PART BUT NOT ALL OF THE

11    FRONT; CORRECT?

12    A    IT HAS A TRANSPARENT FRONT FACE ON ALMOST ALL

13    OF THE FRONT FACE, EXCEPT FOR THE SURROUNDING, WHAT

14    YOU WOULD CALL RIM.

15    Q    OKAY.  AND, IN FACT, THE FRONT FACE OF THE

16    NOKIA LUMIA IS NOT COMPLETELY FLAT, RIGHT?  IT'S

17    GOT A SLIGHT CURVE?

18    A    ON THE EDGES, IT IS CURVING ON THE TOP AND

19    BOTTOM EDGES, CORRECT.

20    Q    OKAY.  AND IF YOU HOLD IT UP SO THE JURY CAN

21    SEE THE FRONT OF IT, IT HAS MUCH -- I WOULD CALL

22    SHARPER CORNERS, I GUESS YOU WOULD CALL LESS

23    ROUNDED CORNERS THAN THE '677 AND '087; RIGHT?

24    A    AND WE HAVE THE ROUNDING IS MINIMAL.

25    Q    SO THIS IS ANOTHER FULLY FEATURED SMARTPHONE
```

2636

```
 1    WITH A DESIGN THAT IS COMPLETELY DIFFERENT DESIGN

 2    THAN THE '677 AND THE '087; RIGHT?

 3    A    IT IS A DIFFERENT DESIGN.

 4              MS. KREVANS:  NOTHING FURTHER, YOUR

 5    HONOR.

 6              THE COURT:  ALL RIGHT.  THE TIME IS NOW

 7    4:38.  DO YOU HAVE ANY REDIRECT?

 8              MR. VERHOEVEN:  NO, YOUR HONOR.

 9              THE COURT:  ALL RIGHT.  MAY THIS WITNESS

10    BE EXCUSED, AND I ASSUME IT'S NOT SUBJECT TO

11    RECALL, OR IS IT?

12              MS. KREVANS:  YES, YOUR HONOR.

13              THE COURT:  WHICH ONE, IT IS OR IS NOT?

14              MS. KREVANS:  NOT SUBJECT TO RECALL BY

15    US.

16              MR. VERHOEVEN:  YOUR HONOR, THERE'S ONLY

17    ONE ISSUE, AND THAT IS THERE WAS A RESERVATION --

18              THE COURT:  OH, ON THE --

19              MR. VERHOEVEN:  YES.  AND YOUR HONOR, I

20    DON'T WANT TO GET INTO THE ARGUMENT ABOUT IT, BUT

21    THERE WAS A MOTION MADE, DAUBERT MOTION MADE AND

22    DENIED ON THIS WITNESS.

23              SO THE COURT'S ALREADY MADE FINDINGS WITH

24    RESPECT TO QUALIFICATIONS TO TESTIFY AS AN EXPERT.

25              THE COURT:  ARE YOU STILL DONE?  YOU'VE
```

```
1    HAD YOUR ADDITIONAL VOIR DIRE.  ARE YOU STILL

2    CONTESTING THE CERTIFICATION OR NOT?

3              MS. KREVANS:  YOUR HONOR HAS MADE THE

4    RULING YOUR HONOR HAS MADE.  I SIMPLY WANTED TO BE

5    ABLE TO ELICIT CROSS THAT I ELICITED.

6              THE COURT:  ALL RIGHT.  BUT STILL THE

7    QUESTION, SUBJECT TO RECALL OR COMPLETELY EXCUSED.

8              MR. VERHOEVEN:  COMPLETELY EXCUSED, YOUR

9    HONOR.

10             THE COURT:  OKAY.  YOU ARE EXCUSED.  GOOD

11   LUCK WITH CATCHING YOUR FLIGHT.

12             THE WITNESS:  THANKS.

13             THE COURT:  OKAY.  ALL RIGHT.  THEN I'M

14   SORRY WE'RE A LITTLE BIT BEHIND, BUT THANK YOU FOR

15   YOUR PATIENCE.  YOU ARE EXCUSED FOR THE DAY.

16             PLEASE KEEP AN OPEN MIND.  PLEASE DON'T

17   DISCUSS THE CASE WITH ANYONE AND DON'T READ ABOUT

18   THE CASE OR DO ANY RESEARCH.

19             AND IF YOU WOULD PLEASE LEAVE YOUR

20   BINDERS ON THE TABLE, AND IF YOU NEED NEW BINDERS,

21   CORRECT, BECAUSE YOU'RE GETTING FULL OF PAPER AND

22   NOTES.  SO I'LL ASK THE PARTIES TO PROVIDE YOU

23   ADDITIONAL BINDERS -- DO YOU NEED MORE PAPER AS

24   WELL FOR NOTE TAKING?  ANYTHING ELSE THAT YOU NEED

25   FOR YOUR BINDERS?  NO.  OKAY.  ALL RIGHT.  THANK
```

2638

```
1     YOU.  WE'LL SEE YOU AT 9:00 O'CLOCK TOMORROW.

2                (WHEREUPON, THE FOLLOWING PROCEEDINGS

3     WERE HELD OUT OF THE PRESENCE OF THE JURY:)

4                THE COURT:  OKAY.  YOU'RE FREE TO GO

5     CATCH YOUR FLIGHT.

6                THE WITNESS:  THANK YOU VERY MUCH.

7                THE COURT:  OKAY.  SO YOU CALL CAN

8     PROVIDE -- PLEASE TAKE A SEAT -- YOU CAN PROVIDE

9     THE BINDERS, PLEASE, ADDITIONAL BINDERS FOR THE

10    NINE JURORS WITH THE BLANK LINED PAPER.

11               MS. KREVANS:  WE WILL DO THAT.

12               THE COURT:  OKAY.  THANK YOU.  WHAT ELSE?

13    ANYTHING ELSE THAT WE HAVE TO DO TODAY?

14               MR. MCELHINNY:  WE DO HAVE ONE POTENTIAL

15    ISSUE, YOUR HONOR.

16               IN TERMS OF THE NOTIFICATIONS WE GOT FOR

17    ADDITIONAL WITNESSES, SAMSUNG HAS TOLD US THAT THEY

18    INTEND TO CALL TWO GENTLEMEN, MR. JOSWIAK AND A

19    MR. LUTTON, BY DEPOSITION.

20               BOTH OF THOSE PEOPLE ARE IN THE AREA.

21    BOTH OF THEM ARE AVAILABLE, AND I JUST, I'M --

22               MS. MAROULIS:  YOUR HONOR, BOTH OF THOSE

23    TESTIFIED AS 30(B)(6) WITNESSES ON VARIOUS TOPICS.

24    WE BELIEVE THAT WE'RE ENTITLED TO PLAY DEPOSITION

25    TESTIMONY OF CORPORATE REPRESENTATIVES.
```

```
 1                 THE COURT:  YES, YOU ARE.

 2                 MS. MAROULIS:  THANK YOU.

 3                 THE COURT:  WHAT'S THE ISSUE?

 4                 MR. MCELHINNY:  IF IT'S THE 30(B)(6)

 5      DEPOSITION, THERE'S NO ISSUE, YOUR HONOR.

 6                 THE COURT:  OKAY.  SO THEN -- ALL RIGHT.

 7      DOES THAT CLEAR THAT UP?

 8                 MR. MCELHINNY:  THAT CLEARS THAT UP, YOUR

 9      HONOR.

10                 THE COURT:  ALL RIGHT.  GREAT.  ANYTHING

11      ELSE?

12                 MS. MAROULIS:  YOUR HONOR, VERY BRIEFLY,

13      THIS MORNING WE FILED OBJECTIONS ON VARIOUS

14      WITNESSES AND WITH RESPECT TO MR. VAN DAM, WHO'S

15      GOING TO BE TESTIFYING LATE TOMORROW.

16                 THE COURT:  YES.

17                 MS. MAROULIS:  THE OBJECTIONS THAT APPLE

18      PROVIDED TO US AT MIDNIGHT DID NOT MATCH THE

19      OBJECTIONS THAT THEY ACTUALLY BRIEFED, SO WE'RE

20      GOING TO SUBMIT SUPPLEMENTAL BRIEFING BECAUSE

21      CURRENTLY THE COURT IS GOING TO HAVE BRIEFS THAT

22      ARE SHIPS PASSING IN THE NIGHT, THEY DON'T JOIN THE

23      ISSUE.  TO GIVE YOU AN EXPLANATION, THEY ARGUED A

24      CERTAIN EXHIBIT WAS NOT RELEVANT, BUT IN THE BRIEF

25      THEY SAID IT WAS NOT DISCLOSED.  SO WE NEED TO
```

2640

```
1    RESPOND TO WHAT THEY ACTUALLY BRIEFED AND WE
2    BELIEVE WE CAN DO IT QUICKLY IN A FEW HOURS.
3            THE COURT:  WHAT DOES THAT MEAN FOR MY --
4    I'M STILL TRYING TO GET YOU AN ORDER ON THE STAY
5    PENDING APPEALS AND --
6            MR. MCELHINNY:  I'M SORRY, YOUR HONOR, I
7    MISSED THE ISSUE ENTIRELY.  I'M NOT SURE WHAT WE'RE
8    TALKING ABOUT.
9            MS. MAROULIS:  YOUR HONOR, WE BELIEVE
10   THAT THIS WITNESS WILL GO LATE AFTERNOON TOMORROW,
11   IF AT ALL.
12           THE COURT:  I GUESS THE THING IS,
13   EVERYONE -- APPLE TODAY, SINCE I GOT ON THEIR CASE
14   ABOUT BEING LATE THREE TIMES BEFORE, FILED IT,
15   LIKE, 20 MINUTES EARLY.  SO WHY HASN'T THAT BEEN
16   RESPONDED TO YET?  IT'S 4:40.  APPLE FILED ABOUT,
17   WHAT, 10:05, 10:10?
18           MS. MAROULIS:  YOUR HONOR, WE CAN GET THE
19   BRIEF FILED WITHIN --
20           THE COURT:  YOU NEED HOURS.
21           MR. VERHOEVEN:  I THINK WE WERE
22   RESPECTING YOUR HONOR'S STATEMENT YOU DIDN'T WANT
23   ADDITIONAL BRIEFS, AND THAT'S THE ONLY REASON SHE'S
24   RAISING IT.
25           THE COURT:  YEAH, SHE'S TELLING ME SHE'S
```

```
 1    GOING TO FILE ADDITIONAL BRIEFING IN THE FEW HOURS.

 2              MS. MAROULIS:  IF YOUR HONOR ALLOWS IT,

 3    AND WE CAN DO IT IN ABOUT 40 MINUTES OR LESS.  IT'S

 4    TWO PAGES.

 5              MR. MCELHINNY:  YOUR HONOR, I'M SORRY.

 6    I'M AT A LOSS.  I DON'T KNOW WHAT WITNESS WE'RE

 7    TALKING ABOUT.  I MISSED THE BEGINNING OF THIS

 8    CONVERSATION.

 9              MS. MAROULIS:  YES, YOUR HONOR.  THIS IS

10    WITNESS MR. VAN DAM, AND THERE WERE TWO OBJECTIONS

11    COMMUNICATED TO US BY APPLE LAST NIGHT AT MIDNIGHT,

12    AND THOSE OBJECTIONS AND THE FORM DID NOT MATCH

13    WHAT THEY ACTUALLY FILED AND BRIEFED.  IT WAS

14    DISCOVERED AND COMMUNICATED TO ME, AND I WANTED TO

15    RAISE THIS ISSUE TO SEEK PERMISSION TO FILE

16    SUPPLEMENTAL BRIEFING BECAUSE WE HAVE OBJECTION

17    BRIEFING AND WE DON'T WANT TO EXCEED OUR ABILITIES

18    HERE.

19              THE COURT:  I MEAN, I ASSUME PEOPLE WHO

20    ARE WORKING HAVE ALREADY LOOKED AT THIS ISSUE.

21              MS. MAROULIS:  YES, YOUR HONOR.  WE JUST

22    NEED TO WRITE IT UP, AND WE CAN SEND IT PROBABLY

23    WITHIN A HALF AN HOUR.

24              THE COURT:  ALL RIGHT.  I WOULD LIKE TO

25    BY 5:15, AND I DON'T WANT MORE THAN A PAGE.
```

2642

```
1              MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

2              THE COURT:  OKAY.  ALL RIGHT.  ANYTHING

3    ELSE?

4              MR. MCELHINNY:  JUST LOOKING WAY TO THE,

5    THE GOLDEN CONCLUSION OF THE CASE, YOUR HONOR,

6    WE'RE WONDERING ABOUT THE ORDER OF CLOSINGS.

7              THE COURT:  I THOUGHT IT SHOULD HAVE

8    FOLLOWED THE ORDER OF THE CASE PRESENTATION, BUT IF

9    YOU HAVE A DIFFERENT VIEW, LET ME KNOW.

10             MR. MCELHINNY:  THAT WOULD BE FOUR OR

11   FIVE CLOSINGS, YOUR HONOR.  OUR VIEW IS THAT IT

12   SHOULD JUST BE THE TRADITIONAL APPLE SHOULD GO,

13   SAMSUNG SHOULD GO AND APPLE SHOULD GO AND WE SHOULD

14   BE DONE.  POLICING --

15             MR. VERHOEVEN:  YOUR HONOR, BECAUSE WE'VE

16   GOT ALL THESE DIFFERENT STAGES, I THINK THAT IN

17   FAIRNESS, WE SHOULD BE ABLE TO GET A SHORT REBUTTAL

18   TO THE, CERTAINLY THEIR NEW CASE, NEW ARGUMENT THEY

19   RAISE IN REBUTTAL TO OUR CASE.

20             SO WHAT I WOULD SUGGEST IS SOME PERIOD,

21   MAYBE 15 MINUTES, 10 MINUTES, 15 MINUTES, TO

22   ADDRESS -- IT WOULD BE LIMITED TO WHATEVER THEY

23   RAISED ON THEIR SECOND ROUND.  BUT --

24             MR. MCELHINNY:  YOUR HONOR --

25             THE COURT:  WELL, IT CAN'T BE ON APPLE'S
```

2643

```
1    AFFIRMATIVE CASE.  IT CAN ONLY BE ON YOUR
2    AFFIRMATIVE CASE.  SO IT WOULD BE THE SAMSUNG
3    PATENTS.
4            MR. MCELHINNY:  YOUR HONOR, EVEN IF YOU
5    GO YOUR WAY IN THE ORDER OF PROOF, MR. LEE WOULD
6    STILL GO LAST BECAUSE MR. LEE WOULD HAVE THE
7    REBUTTAL ON THE ANTITRUST AND CONTRACT.  SO THAT'S
8    WHY I'M SAYING, IT'S FIVE OR SIX, AND IT'S GOING TO
9    BE VERY HARD TO POLICE ISSUES, AND YOU MAY WANT TO
10   THINK ABOUT THIS, BUT I JUST -- IT JUST SEEMED TO
11   ME RATHER THAN GETTING INTO *SIX AND TRYING TO
12   POLICE WHO'S CROSSING THE LINE WITH THE LAST ORDER,
13   THAT SIMPLY GOING THROUGH THE TRADITIONAL WAY WOULD
14   BE THE BEST WAY.
15           THE COURT:  I DON'T THINK MR. LEE GOES
16   LAST.  THE PARTY THAT HAS THE AFFIRMATIVE CASE GOES
17   LAST, AND SO IF SAMSUNG BASICALLY WOULD BE DOING
18   THE REBUTTAL ON ITS CASE.
19           MR. MCELHINNY:  WE EVER THE -- I'M SORRY.
20   I KEEP -- I'M SORRY.  I KEEP INTERRUPTING YOU.  WE
21   HAVE THE AFFIRMATIVE CASE ON THE ANTITRUST AND THE,
22   THE CROSS-COMPLAINT TO THEIR COMPLAINT, THE
23   COUNTERCLAIM TO THEIR COUNTERCLAIM IS AN
24   AFFIRMATIVE CASE OF ANTITRUST CONTRACT AND OUR
25   DECLARATORY JUDGMENT.
```

2644

```
 1              THE COURT:  BUT IT'S A DEFENSIVE CASE TO
 2   SAMSUNG'S AFFIRMATIVE CASE, AND I THOUGHT THAT WHAT
 3   YOU HAD WORKED OUT WAS APPLE GOES ON THE
 4   AFFIRMATIVE CASE, SAMSUNG GOES ON THE DEFENSIVE ON
 5   APPLE'S AFFIRMATIVE CASE, AND THEN GOES AFFIRMATIVE
 6   ON ITS CASE, THEN APPLE DOES THE REBUTTAL ON ITS
 7   AFFIRMATIVE CASE AND DOES THE DEFENSE ON SAMSUNG'S
 8   CASE AND THEN SAMSUNG GETS THE LAST PRESENTATION TO
 9   THE -- WITH THE REBUTTAL ON ITS AFFIRMATIVE CASE.
10   I THOUGHT THAT'S WHAT YOU ALL AGREED TO.
11              MR. VERHOEVEN:  YES, YOUR HONOR, THAT IS.
12              THE COURT:  THAT'S WHAT WE HAVE IN THE
13   JURY INSTRUCTIONS.
14              MR. MCELHINNY:  FIRST, THAT'S NOT WHAT
15   WE'VE DONE BECAUSE WE STARTED WITH THEIR
16   AFFIRMATIVE CASE AGAINST US, SO THE REBUTTAL IS
17   ALREADY -- WE'VE ALREADY CALLED -- WE HAD THEIR
18   WITNESS ON TODAY IN THEIR AFFIRMATIVE CASE AGAINST
19   US THIS MORNING, MR. YANG WHO TESTIFIED TO THE
20   THREE PATENTS THAT THEY'RE ASSERTING AGAINST US
21   BEFORE WE HEARD THE DESIGN PATENTS.
22              MR. VERHOEVEN:  YOUR HONOR, THIS IS --
23              THE COURT:  I MEAN, THIS TIME IS
24   SAMSUNG'S.  IT'S FOR THEIR DEFENSIVE AND
25   AFFIRMATIVE CASE AND I'M NOT GOING TO SAY THEY HAVE
```

```
 1    TO DO -- THEY'RE SEQUENCING THEIR WITNESSES, IT'S
 2    THEIR CALL.  SO I'M NOT SURE WHAT YOU'RE SAYING.
 3    YOU ALL HAVE AGREED TO THIS SCHEDULE.  THIS IS WHAT
 4    WAS IN THE PRELIMINARY JURY INSTRUCTIONS.  THIS IS
 5    HOW WE'VE SHAPED THE CASE.  I THINK IT MAKES SENSE
 6    TO KEEP THAT MODEL FOR CLOSINGS.
 7              NOW, I'M NOT GOING TO ALLOW SAMSUNG TO DO
 8    A REBUTTAL, REBUTTAL, REBUTTAL ON YOUR AFFIRMATIVE
 9    CASE.  BUT THEY GET THE REBUTTAL ON THEIR
10    AFFIRMATIVE CASE.
11              MR. VERHOEVEN:  WORKS FOR US, YOUR HONOR.
12              MR. MCELHINNY:  THAT'S THE GUIDANCE I
13    NEEDED, YOUR HONOR.
14              THE COURT:  ALL RIGHT.  WE'RE GOING TO
15    FOLLOW THAT.
16              NOW, I GUESS YOU ALL, YOU CAN DECIDE
17    HOW -- YOU WANT TO KNOW I HAVE YOUR TIME.
18              MR. VERHOEVEN:  I THINK WE SHOULD MEET
19    AND CONFER RATHER THAN RAISING THINGS LIKE THIS
20    WITHOUT TALKING FIRST.  I AGREE WITH THAT.
21              BUT THERE HAS TO BE SOME LIMITS,
22    OBVIOUSLY.  WE DON'T WANT, FOR EXAMPLE, AND I'M NOT
23    SAYING THEY'RE GOING TO DO THIS, BUT WE DON'T WANT
24    APPLE TALKING FOR 15 MINUTES OR HALF AN HOUR AND
25    RESERVING AN HOUR AND A HALF OF THEIR CASE TO GET
```

```
 1    THE LAST WORD.  IF THEIR AMOUNT OF TIME -- WE

 2    WOULDN'T INTEND TO RESERVE MORE THAN 15 MINUTES OR

 3    SO OF OUR ALLOTTED TIME FOR REBUTTAL, AS LONG AS

 4    THEIR RESERVE IS NOT TOO MUCH, JUST LIKE IN

 5    APPELLATE COURT, YOUR HONOR, YOU'RE NOT ALLOWED TO

 6    RESERVE MORE THAN FIVE MINUTES OF YOUR 15 MINUTES

 7    AT THE FEDERAL CIRCUIT.  THAT'S THE ONLY ISSUE I

 8    HAVE.

 9              THE COURT:  I'M GOING TO HOPE THAT YOU

10    ALL WORK THAT OUT.  I ONLY IMPOSE THE TWO HOUR

11    LIMIT, BUT YOU CAN WORK UP HOW YOU DIVIDE UP THE

12    TWO HOURS.

13              MR. VERHOEVEN:  I WOULD THINK WE WOULD BE

14    ABLE TO.

15              THE COURT:  ALL RIGHT.  ANYTHING ELSE?

16    OR IS THAT -- WHAT ELSE IS PENDING NOW, OTHER THAN

17    THE OBJECTIONS FOR WITNESSES TO TOMORROW AND THE

18    STAYS PENDING APPEAL?  IS THERE ANYTHING ELSE THAT

19    YOU ALL HAVE FILED SINCE WE'VE BEEN IN HERE?

20              MR. VERHOEVEN:  NO, YOUR HONOR.

21              THE COURT:  ALL RIGHT.

22              MR. MCELHINNY:  OBVIOUSLY THE DECISIONS

23    ON JUDGE GREWAL'S ORDER IS PENDING FROM YOU.

24              THE COURT:  I UNDERSTAND THAT.

25              MR. MCELHINNY:  AND WE'RE ALL WAITING FOR
```

```
 1        JUDGE GREWAL'S RULING ON THE SECOND ORDER.
 2              THE COURT:  I UNDERSTAND THAT.
 3              ANYTHING ELSE, OTHER THAN THOSE?  I THINK
 4     THAT'S --
 5              MR. MCELHINNY:  I THINK THAT'S ALL THAT'S
 6     PENDING, YOUR HONOR.
 7              THE COURT:  OKAY.  AND YOU ALL FILED YOUR
 8     DECLARATIONS ON THE TWO SEALING MOTIONS, RIGHT, OR
 9     YOU'RE GOING TO BY 6:00 O'CLOCK TODAY.
10              MR. MCELHINNY:  BY 6:00, YOUR HONOR.
11              THE COURT:  BY 6:00, OKAY.  ALL RIGHT.
12              MR. MCELHINNY:  CAN WE HAVE YOUR TIME
13     ESTIMATE?
14              THE COURT:  OH, OKAY.
15              (PAUSE IN PROCEEDINGS.)
16              THE COURT:  TOTALS OF TODAY ARE, YOU
17     KNOW, UP TO TODAY, 16 HOURS AND 3 MINUTES BY APPLE,
18     18 HOURS AND 33 MINUTES BY SAMSUNG.
19              ALL RIGHT.  SO I THINK WE SHOULD BE ABLE
20     TO FINISH, YOU KNOW -- WE HAVE, LIKE, WHAT, 16
21     HOURS LEFT.  I THINK WE SHOULD REALLY TRY TO FINISH
22     IT THIS WEEK IF WE CAN.  OKAY?
23              MR. MCELHINNY:  WE HAVE A WITNESS WHO
24     WE'RE LIKELY TO CALL IN REBUTTAL WHO CAN'T BE HERE
25     UNTIL MONDAY MORNING.
```

2648

```
 1              THE COURT:  WELL, THAT'S UNFORTUNATE,
 2    BECAUSE I THINK WE'RE VERY CLOSE TO GETTING THIS
 3    CASE, ALL THE EVIDENCE IN THIS WEEK.
 4              YOU'VE GOT, WHAT, WHAT DO YOU HAVE, 8
 5    HOURS AND 57 MINUTES?
 6              MR. MCELHINNY:  YES, YOUR HONOR.
 7              THE COURT:  SAMSUNG'S --
 8              MR. MCELHINNY:  WE CALL THAT NINE HOURS
 9    FOR OUR RECORDS.
10              THE COURT:  FINE.  THAT WAS A BIT OF
11    MATH.
12              OKAY.  SO -- AND THEN SAMSUNG HAS, WHAT,
13    ABOUT --
14              MR. MCELHINNY:  I GIVE THEM SIX AND A
15    HALF HOURS, YOUR HONOR.
16              THE COURT:  OKAY.  SO WE'RE WITHIN
17    STRIKING DISTANCE OF GETTING THIS THING DONE THIS
18    WEEK.
19              MR. MCELHINNY:  YOUR HONOR, I CAN'T
20    CONTROL --
21              THE COURT:  WHAT'S YOUR WITNESS'S REASON?
22    IT BETTER BE LIKE A HEART CONDITION SURGERY OR
23    SOMETHING SERIOUS.
24              MS. KREVANS:  IT'S A FAMILY OBLIGATION
25    HAVING TO DO WITH ONE OF HER CHILDREN, YOUR HONOR,
```

2649

1     AND SHE'S OUT OF TOWN FOR THURSDAY AND FRIDAY.

2             THE COURT:  CAN SHE BE TAKEN OUT OF ORDER

3     AND BE DONE TOMORROW?  I DON'T KNOW IF WE'LL GET

4     THERE, BUT I'D LIKE TO TRY TO BE ABLE TO GET WITHIN

5     STRIKING DISTANCE OF GETTING ALL THIS EVIDENCE IN

6     BY FRIDAY.

7             MR. VERHOEVEN:  YOUR HONOR, CAN WE ASK

8     WHO IT IS?

9             MS. KREVANS:  AND IT'S DR. KARE, AND THE

10    WITNESS SHE WILL BE REBUTTING HAS NOT TESTIFIED

11    YET.

12            MR. VERHOEVEN:  DR. KARE IS A RETAINED

13    EXPERT, NOT A --

14            MR. MCELHINNY:  JUST LIKE THE GENTLEMAN

15    WE JUST HELPED OUT HERE TO GET ON HIS FLIGHT.  SHE

16    WAS ON THE OTHER SIDE.

17            THE COURT:  ALL RIGHT.  WELL, I -- IT'S

18    NOT IN, IT'S OUT OF STATE.  I FORGOT WHERE SHE'S

19    FROM.

20            MS. KREVANS:  NO, SHE IS ACTUALLY FROM

21    HERE, BUT SHE IS TRAVELLING OUT OF STATE WITH ONE

22    OF HER CHILDREN.  WE TALKED TO HER AND SHE CANNOT

23    GET BACK UNTIL THE END OF THE WEEK.

24            THE COURT:  WELL, THAT'S REALLY

25    UNFORTUNATE.  I MEAN, WE'LL SEE, MAYBE WE WON'T GET

2650

1    COMPLETELY DONE BY FRIDAY, BUT I WAS REALLY HOPING

2    THAT WE COULD SO WE CAN TAKE MONDAY TO DO JURY

3    INSTRUCTIONS AND FINALIZE EXHIBITS AND DO CLOSINGS

4    ON TUESDAY AND JURY DELIBERATION.

5            WELL, LET ME SEE WHATEVER, IF ANY,

6    COMBINATION --

7            MS. KREVANS:  WE WILL CONTACT HER AGAIN,

8    YOUR HONOR.  I KNOW WE DID JUST CONTACT HER

9    YESTERDAY TO SEE IF HER PLANS HAD CHANGED AND THEY

10   HADN'T, BUT WE WILL TRY AGAIN.

11           THE COURT:  YES, IF YOU WOULD, PLEASE,

12   BECAUSE WE'RE VERY CLOSE TO GETTING THIS DONE THIS

13   WEEK, AND I WANT TO GET IT DONE.  OKAY.  THANK YOU.

14           MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

15           MR. MCELHINNY:  THANK YOU.

16           (WHEREUPON, THE EVENING RECESS WAS

17   TAKEN.)

18

19

20

21

22

23

24

25

1

2                          <u>CERTIFICATE OF REPORTERS</u>

3

4

5

6              WE, THE UNDERSIGNED OFFICIAL COURT

7    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

8    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11             THAT THE FOREGOING TRANSCRIPT,

12   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

13   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

14   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

15   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

16   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

17

18                      /S/
                     _____.
19                   LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
20

21                      /S/
                     _____
22                   IRENE RODRIGUEZ, CSR, CRR
                     CERTIFICATE NUMBER 8074
23

24                   DATED:  AUGUST 14, 2012

25