HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

Case No. 11-cv-01846-LHK (PSG)

**APPLE'S HIGH PRIORITY OBJECTIONS TO TENTATIVE FINAL JURY INSTRUCTIONS**

Pursuant to the Court's August 18, 2012 order (Dkt. No. 1826), Apple hereby submits its High Priority Objections to the Court's Tentative Final Jury Instructions.

**1. Apple Objects to Tentative Final Jury Instruction No. 5.1 (Adverse Inference)**

Apple objects to Tentative Final Jury Instruction 5.1 in its entirety (Dkt. No. 1848 at 4) on procedural and substantive grounds. Procedurally, the instruction is improper because it results from Samsung's motion for relief from Judge Grewal's non-dispositive pre-trial order, which the Court "may not grant . . . without first giving the opposing party an opportunity to respond." Civ. Local R. 72-2; *see also Oregon RSA No. 6 v. Castle Rock Cellular Ltd. Partnership*, 76 F.3d 1003, 1007-08 (9th Cir. 1996) (reversing district court's order of sanctions under its inherent powers for failure to provide opportunity for hearing).[1] Given an opportunity, Apple would have explained that Judge Grewal's denial on timeliness grounds of Samsung's motion for and adverse inference was proper. Civil Local Rule 7-8(c) requires that a sanctions motion be filed "as soon as practicable" after the movant learns the facts that give rise to its motion. Samsung did not follow this rule, as its motion was based on facts it knew "months and months ago" (Dkt. No. 1792 at 2; *see also* Dkt. No. 1402 at 1 (presenting same facts in May 2012).) Apple would also have defended the motion on the merits because there is no evidence to support an instruction that Apple failed to preserve evidence after its duty to preserve arose.

Apple reasonably believed litigation to be imminent when, in the spring of 2011, Samsung released a new wave of infringing products. Until then, Apple reasonably assumed that as Samsung's biggest customer its strenuous objection to Samsung's copying would produce a change in Samsung's product-line. *See* http://news.cnet.com/8301-31021_3-20031814-260.html; *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1325 (Fed. Cir. 2011) (litigation "less foreseeable" when parties "have a business relationship that is mutually beneficial"). But regardless of whether the trigger date for Apple's obligation to preserve documents is in

[1] Samsung seeks to avoid the deferential standard of review associated with review of a non-dispositive pre-trial order by arguing that Judge Grewal, as a Magistrate Judge, lacks inherent power to control his own docket. (Dkt. No. 1579 at 7.) This argument is flatly inconsistent with Ninth Circuit law. See *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996) ("courts created by Congress have inherent powers, unless Congress intentionally restricts those powers"); (*see also* Dkt. No. 1614-1 at 2-3).

August 2010 or April 2011, there is no evidence that Apple failed to preserve documents when under a duty to do so.

Apple has a culture of document retention. It does not auto-delete emails. *Cf. Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332 (D.N.J. 2004) (affirming order of adverse inference instruction against Samsung for auto-deleting emails). It held no "shredding parties." *Cf. Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1324 (2011). Apple's key custodians receive so many document retention notices that they have adopted a general practice of not destroying work-related records. (*See*, *e.g.*, Scott Forstall (78 retention notices); Jonathan Ive (41 retention notices); Christopher Stringer (14 retention notices); Steven Lemay (32 retention notices); Dkt. No. 1593 at 3.) Indeed, work-related emails from a number of custodians mentioned in Samsung's motion were *archived before* August 2010. (*Id*. at 2-4 (document collection in earlier litigations meant Apple had made "a complete copy of all of the employee's work-related email accounts"; "from time to time Apple made and retained copies of [Steve Jobs'] email account").) This evidence refutes Samsung's charge that these emails were spoliated.

The only evidence Samsung offers that work-related emails were not retained is a set of charts that purport to show that too few documents were produced by certain custodians. But the low numbers are explainable by factors having nothing to do with spoliation. Chris Harris and Mark Lee build models at the direction of Apple designers but have no role in designing the products; Mark Buckley's emails were collected but not produced because they are predominantly work product; Brian Huppi and Douglas Satzger had left Apple by April 2010; Quinn Hoellwarth was outside counsel during the relevant period and his former firm produced its documents; and Evans Hankey did no work on the industrial design of the original iPhone. (*See* Dkt. No. 1591 at 9-10.)

One of Samsung's charts emphasizes the difference between the number of emails produced from nine custodians' files and from the files of other Apple employees corresponding with the nine. There are innocent explanations for these numbers too. Apple used different search terms in producing documents from the files of different custodians, as it disclosed to

Samsung during discovery. This will have created some variation. (*Id*. at 11.) Some of the custodians retained large volumes of email from years before the obligation to preserve arose in this case. This, too, likely accounts for some of the discrepancy. *More than three quarters of the email produced* from these nine employees pre-dates the August date from which Samsung begins to measure "spoliation." (Dkt. No. 1592 at 2.) This statistic alone refutes any suggestion that the nine employees on whom Samsung focuses were destroying emails after August 2010. Apple made a fulsome production of records from the mid-2000s, when it was busy developing the intellectual property at issue in this case. Unlike Samsung, which was busy copying Apple's products in the summer of August 2010, Apple was by then generating relatively fewer responsive documents.

If the Court gives Tentative Final Jury Instructions 5.0 and 5.1, it will equate the conduct of a twice-adjudicated spoliator with the conduct of a litigant who has not been shown to have destroyed a single document. Not one. Samsung to this day continues automatically to destroy email every 14 days, even for custodians whose documents are discoverable in this Court. When Apple moved for an adverse inference as a result of Samsung's conduct, Apple supported its allegation with devastating facts. Dr. Won Pyo Hong, to whom Dong Hoon Chang reports (and who is several layers above Jinsoo Kim in the corporate hierarchy) produced *zero* emails. (Dkt. No. 1321 at 19-20; Tr. at 2821-22.) This in spite of the fact that Dr. Hong sent an email on April 17, 2011 "regarding comparisons of Apple products that the court cited in granting Apple's motion to compel his deposition." (Dkt. No. 1321 at 19-20.) "Dr. Hong also failed to preserve an email he received that described how Samsung needed to respond to the iPad 2 with a slimmer Galaxy Tab." (*Id*.) And he failed to preserve a copy of PX43, the email describing Google's reaction to Samsung's look-alike tablet design. (Tr. at 2826.) Mr. Minhyouk Lee, the original designer of the Galaxy S phones that are accused in this litigation (Tr. at 2833), also produced *zero* emails. (Dkt. No. 1321 at 20.) Samsung introduced different models of the Galaxy S phone between July 2010 and February 2011. (Dkt. No. 1189 at 11-12.) It is inconceivable that Mr. Lee sent or received no responsive emails after August 2010. With specific evidence of this kind, as well as statistical support for a larger number of custodians, Apple proved spoliation. Even if

Samsung's me-too motion bears a superficial resemblance to Apple's, Samsung has introduced no comparable evidence. There is no evidence that anyone at Apple failed to preserve responsive documents, let alone that any such failure was of a degree or kind to warrant sanctions. See *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (spoliation sanctions require evidence that a party had "some notice that the documents were potentially relevant to the litigation before they were destroyed" and that prejudice resulted).

In sum, if this Court decides to hear Samsung's untimely sanctions motion on the merits, it should first hear from Apple to understand just how badly Samsung's motion distorts the truth.

**2. Apple Objects to Tentative Final Jury Instruction 14**

Apple objects to the inclusion of Tentative Final Jury Instruction 14 (Dkt. No. 1826 at 33) in its entirety because it would improperly instruct the jury that they may find infringement of the '460 patent under the doctrine of equivalents. (Tentative Final Jury Instruction No. 14 also includes an equivalents instruction regarding Apple's patents and Samsung's products, but Apple has elected at trial to rely on proof of literal infringement of its asserted design and patent claims.) As a matter of law, the doctrine of equivalents cannot be argued by Samsung due to prosecution history estoppel.

The only limitation at issue to which this instruction could apply is the "scroll keys" limitation in Claim 1 of Samsung's '460 patent. However, Samsung is estopped from asserting the doctrine of equivalents for the "scroll keys" limitation because Samsung added it by amendment during prosecution to overcome a prior art rejection. More particularly, during prosecution of the grandparent application to the '460 patent, the Examiner rejected the proposed claims based on certain prior art. Samsung responded to that rejection by amending then-pending claim 20 (corresponding to issued claim 1 of the '460 patent) to add the step of "sequentially displaying other images stored in a memory through the use of ***scroll keys***" (in the same amendment, Samsung also added the requirement of displaying an image "most recently" captured in a camera mode). (JX1066 at 172-.183 (emphasis added).) Samsung argued that these new limitations distinguished the invention of claim 20 from the prior art relied upon by the Examiner in rejecting that claim:

> Claim 20 has been amended, and as amended is distinguishable over the cited references. Particularly, Claim 20 has been amended to include 'displaying an image most recently captured in a camera mode' and 'sequentially displaying other images stored in memory through the use of scroll keys.' Neither Wagner et al, Suso et al nor Dawson, alone or in combination, teach or disclose these limitations.

(JX1066.180.) Indeed, in opposing Apple's motion for summary judgment, Samsung's expert (Dr. Yang) acknowledged that after adding the "scroll keys" limitation during prosecution, "Samsung contended that its amendment distinguished claim 20 from the asserted patents." (Dkt. No. 1001 ¶ 31.)

As a matter of law, Samsung is estopped from invoking the doctrine of equivalents for those claim limitations added by amendment during prosecution to overcome prior art. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002) ("A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim.").[2] The fact that two different limitations were added to overcome the prior art as part of the same amendment is immaterial; the Federal Circuit has made clear that, in such circumstances, prosecution history estoppel applies to both limitations. *Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1184 (Fed. Cir. 2009) ("It is immaterial that [the patent owner] chose to add the channel and the gasket limitations, rather than just one. The resulting estoppel attaches to each added limitation.").

Although there are limited circumstances under which a patentee may rebut the presumption that equivalents are barred by prosecution history estoppel, Samsung has presented no such evidence. *See Festo*, 535 U.S. at 740-41. While not denying that it made amendments to the claims in response to a rejection of the pending claims by the Patent Office, Samsung has argued that "the addition of the 'scroll keys' element was not a narrowing amendment." (*See* Dkt. No. 1812 at 5 (Samsung's Responses to First Set of Questions Regarding Proposed Jury

---

[2] The Federal Circuit has made clear that if the Court cannot determine the purpose of an amendment, the Court should presume that the patentee surrendered all equivalents. *Festo*, 535 U.S. at 740 ("when the court is unable to determine the purpose underlying a narrowing amendment—and hence a rationale for limiting the estoppel to the surrender of particular equivalents—the court should presume that the patentee surrendered all subject matter between the broader and the narrower language").

Instructions).) But as Samsung must concede, before amendment "the claim had nothing to do with scrolling through photos." (*Id.*) The claim now undoubtedly ***does*** require scrolling through photos using "scroll keys." By narrowing its claims to require scrolling using keys, Samsung has surrendered subject matter and should now be estopped from arguing that scrolling *without* using keys is equivalent. *Festo*, 535 U.S. at 740.

Accordingly, Samsung is estopped from claiming that the accused Apple products infringe the '460 patent limitation of "sequentially displaying other images stored in a memory through the use of scroll keys" under the doctrine of equivalents. The Court should withdraw Tentative Final Jury Instruction No. 14 regarding the doctrine of equivalents.[3]

**3. Apple Objects to Tentative Final Jury Instruction 15.1**

Apple objects to the following statement in Jury Instruction 15.1:

> For claim 1 of the '460 patent, I have already determined that the "entering a first E-mail transmission submode . . ." step must occur before the "transmitting . . . in the first E-mail transmission submode" step, and the "entering a second E-mail transmission submode . . ." step must occur before the "transmitting . . . in the second E-mail transmission submode" step. However, the steps need not be ordered otherwise. You must accept that interpretation as correct.

The Court was confronted with this same dispute on the eve of trial when Apple and Samsung could not agree on the content to be included for the '460 patent in the chart of claim terms in the Jury Notebook. At that time, Apple proposed that the chart state the following: "The Court has not construed any terms from this patent, and therefore the terms from this patent should be given their plain and ordinary meaning." (Dkt. No. 1430-1 at 7.) Citing the same support as it does now (including the Court's June 29 Order Denying In Part Apple's Motion for Summary Judgment), Samsung proposed the following: "The Court has construed the claim to require three functions: sending an e-mail transmission with a message from a first e-mail submode; sending an e-mail transmission with an image and a message from a second e-mail sub-

[3] If the Court grants Apple's request to withdraw Tentative Final Jury Instruction 14, the Court should also modify Jury Instruction 15 to instruct the jury that it is not allowed to find infringement under the doctrine of equivalents for any of the patents-in-suit.

mode; and sequentially displaying other images with a scroll key. The Court has further determined that the steps of the '460 patent do not need to be performed in order." (*Id.*)

In its July 29, 2012 Order Regarding Claim Terms in Jury Notebooks (Dkt. No. 1448), the Court rejected Samsung's proposal and accepted Apple's proposal verbatim (Dkt. No. 1430-1 at 7), ruling that, for the '460 patent, the claim chart in the Jury Notebook should read: "The Court has not construed any terms from this patent, and therefore the terms from this patent should be given their plain and ordinary meaning." Apple has relied on this ruling throughout trial in presenting its non-infringement evidence to the jury. Instructing the jury not to follow the construction in the Jury Notebook and instead to apply a new and different construction, after Apple has argued "plain and ordinary" meaning, would confuse the jury and greatly prejudice Apple.

Further, the timing of the Court's issuance of a new claim construction through Jury Instruction 15.1 will do exactly what the Court seeks to avoid by issuing Jury Instruction 10, namely, that the jury not infer from claim construction decisions that the Court favors one side or the other. The Court's apparent acceptance of Dr. Yang's opinion regarding the order of the steps after the jury has heard this testimony, and then the Court's proposed instruction to the jury in effect to accept Samsung's and reject Apple's interpretations, will convey that the Court favors Samsung's position on this patent.

The Court correctly noted in its July 29 Order that it had not construed any terms from the '460 patent. Indeed, neither party asked the Court to interpret any claim term of the '460 patent during *Markman* proceedings, including the order that any of the steps listed in claim 1 should be performed. In Apple's view, a construction was unnecessary at that time because Samsung's infringement allegations had been based solely on performing the steps of claim 1 in the specific sequence listed in the claim; the current dispute only arose when Dr. Yang introduced a new infringement theory in his expert report. (PX2031, Samsung's Patent L.R. 3-1 Contentions, at 2031.7, .8, .10, .13-.15, .17.)

Throughout this trial, the jury has understood that the claims of the '460 patent should be given their "plain and ordinary meaning." The jury should be permitted to conclude that such

plain meaning does not permit the scrolling of "other images" (from step [C] of the claim) to precede first displaying "an image" (from step [B] of the claim), and that the scrolling step [C] cannot be totally divorced in time from the claimed "data transmission method."

Accordingly, Apple respectfully requests that the Court revise Jury Instruction 15.1 to delete the order-of-steps language identified above, and to instead instruct the jury, consistent with the chart of claim terms in the Jury Notebooks, that the terms from the '460 patent "be given their plain and ordinary meaning."

**4. Apple Objects to Tentative Final Jury Instruction No. 29**

Apple objects to Tentative Final Jury Instruction No. 29 on the ground that it includes language that is not consistent with the evidence presented in this trial, and thus should be removed. In particular, the section of this instruction beginning in the third paragraph with "Even if the patented feature ..." and extending to "a single price for a license covering both past and future infringing sales" in the fourth paragraph should be struck. (*See* Dkt. No. 1838 at 9:14-20.)

A jury instruction should be given only if it can be supported by the evidence at trial. *Nationwide Transport Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1063-64 (9th Cir. 2008). Samsung presented no evidence that any royalty would reflect "a single price for *past and future infringing sales.*" The only relevant testimony in this regard was Mr. Wagner's hypothetical royalty of $27,300. Mr. Wagner provided nothing to indicate that this amount would address both "past and future infringing sales." (*See* Tr. at 3053-3055 (discussing in the $27,300 royalty).) The presumption, if any, is that it should apply only to the 22 million sales that have already occurred. Use of a form instruction that improperly supplies alleged facts not offered by any witnesses or exhibits is error and prejudices Apple. Thus, the fourth paragraph should be removed from the instruction (Dkt. No. 1838 at 9:18-20), or, at a minimum, the words "both past and future" in the first and last sentence of the fourth paragraph should be removed. (*Id*. at 9:18, 20.)

The Court's Tentative Final Jury Instruction No. 29 separately provides that the jury may use the value of the whole product where the value of the accused feature is not separable even if the patented feature is not the reason for customer demand, as long as a lower royalty rate is used.

(*Id*. at 9:14-17.) This instruction is directly contrary to *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011) ("The Supreme Court and this court's precedent do not allow consideration of the entire market value of accused product for minor patent improvements simply by asserting a low enough royalty rate.") Further, the tentative instruction has no basis on this record. Neither Apple nor Samsung proposed utilizing the entire market value for purposes of a reasonable royalty on Apple's patents, and there is no evidence that the alleged patented technology for the '516 and '941 patents "could not be separated out from the value of the whole product," as stated in the proposed instruction. (Dkt. No. 1838 at 9:15.)

In fact, the only evidence is to the contrary because the baseband chip performs all of the steps of the '516 and '941 patents. (Tr. 2743-45.) While Dr. Teece utilized the entire market value (net sales price) of iPhones and iPads as the royalty base for the '516 and '941 patents (Tr. 3126 ), his justification for doing so is that the patented technology is the basis for demand because of the alleged impact of UMTS technology on sales of the accused products, and not because the accused functionality is not separable (Tr. 3127-3128). Mr. Donaldson testified that the appropriate royalty base was the baseband chip because it most closely relates to the scope of the asserted patent, and "is just one small part of the phone." (Tr. 3537-3538.)

Inclusion of the tentative instruction would unfairly prejudice Apple by confusing and improperly suggesting to the jury that the patented technology cannot be separated out from the value of the whole product and would provide a valid reason for utilizing the entire market value for the '516 and '941 patents.

**5. Apple Objects to Tentative Final Jury Instruction 34.1**

Apple objects to the following language in Tentative Final Jury Instruction No. 34.1:

> Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other."

(Dkt. No. 1827 at 8:6-8.)

While the quoted language is taken in large measure from *Gorham*, Apple believes its inclusion in a jury instruction is incorrect. The patent statute does not include deception as a

factor in the infringement analysis. *See* 35 U.S.C. Section 271(a); 35 U.S.C. Section 289. And the Federal Circuit has held a design patent to be infringed even as it found that purchasers of the accused product were not "likely to be confused or deceived or mistakenly think they were buying the" patent-holder's product. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126, 1134 (Fed. Cir. 1993). This Court too has held that "[c]onsumer confusion is not required to establish design patent infringement." (Dkt. No. 1774; *see also* Tr. at 2200 ("I don't agree with [Samsung] that the *Gorham* test requires deception at the time of purchasing. I don't think that's what the law is.").) Even Samsung concedes that Apple does not have to "prove actual confusion … or actual deception." (*Id*. at 2203; *see also id*. ("I think we agree on that. We're not saying that Apple has to adduce evidence of buyers who have been actually deceived.").) But that is what the jury is likely to conclude in light of the language quoted above from this instruction. The Court should therefore strike the language.

If the Court does not strike the language, to reduce the risk of jury confusion on this core issue, without waiving its objection, Apple requests that the Court at least add the following highlighted text to the paragraph at lines 6-8 of Tentative Instruction No. 34.1:

> Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. **You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused Samsung products.** You should consider any perceived similarities or differences between the patented and accused designs. Minor differences should not prevent a finding of infringement.

Absent such a clarification, in view of positions it has taken throughout this litigation, Samsung will likely place undue emphasis on this issue in closing, and try to convince the jury that Apple is required to show actual deception or confusion. The Court should not allow that.

Apple also objects to the language in Tentative Final Jury Instruction 37 on these same grounds. The Court should strike the following language from that tentative instruction: "That is, the single prior art reference and the claimed design patent are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one

supposing it to be the other." (*See* Dkt. No. 1827 at 12:5-7.)

**6. Apple Objects to Tentative Final Jury Instruction No. 40**

Apple objects to and requests clarification of the following language added by the Court to Tentative Final Jury Instruction No. 40 regarding an election of remedies:

> In relation to design patents, Apple can elect to prove either actual damages, known as compensatory damages, or it may elect to prove the defendants' profits as its measure of potential recovery. As compensatory damages, Apple may prove either its own lost profits or a reasonable royalty for the design patent. Apple is not entitled to recover both compensatory damages and defendant's profits.

(Dkt. No. 1838 at 13:7-9.)

Apple is entitled to one and only one remedy for each individual sale of an infringing smartphone or tablet. Apple's damages calculation was carefully constructed to prevent this specific error. (Tr. 2048-2052.) The paragraph above, however, improperly suggests that Apple is limited *overall* or by intellectual property asset either to lost profits or to Samsung's profits, even if it does not double-count based on the individual infringing units. That is a misstatement of Federal Circuit law.

*Catalina Lighting Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002), controls.[4] As the Federal Circuit wrote there, "*each sale* constitutes an infringement of the '141 utility patent" and "the *same sale* constitutes an infringement of the '904 design patent." 295 F.3d at 1291 (emphasis added). "Lamps Plus is entitled to damages *for each infringement*, but once it receives profits under § 289 *for each sale*, Lamps Plus is not entitled to a further recovery *for the same sale* because the award of infringer's profits under § 289 also constitutes 'damages adequate to compensation for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" *Id.* (emphasis added); *see also Aero Prods. Int'l, Inc. v. Intex Rec. Corp.*, 466 F.3d 1000, 1017-1018 (Fed. Cir. 2006) (preventing recovery of reasonable royalty and defendant's profits under Lanham Act with respect to sales of same units of infringing mattress). The Federal Circuit applies the same scrutiny—evaluating

[4] This is the only case cited by IPO for the language from which the Court adapted the paragraph above.

each infringing sale separately—to permit a patentee to recover lost profits for some sales of an infringing product and a reasonable royalty for others. *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1549 & 1554 (Fed Cir. 1995) (awarding lost profits for some units and reasonable royalty for others). The court's consistent emphasis is on monetary relief calculated for "each sale" of the infringing product. Samsung has never cited any cases, instructions, or other sources that are to the contrary.

Accordingly, Apple requests that the third paragraph of the Court's Tentative Final Jury Instruction (Dkt. No. 1838 at 13:7-9) be modified as follows to provide a correct statement of the law:

> In relation to design patents, Apple can elect to prove either actual damages, known as compensatory damages, or it may elect to prove the defendants' profits as its measure of potential recovery **with respect to the sale of each unit of an infringing product**. As compensatory damages, Apple may prove either its own lost profits or a reasonable royalty for the design patent. Apple is not entitled to recover both compensatory damages and defendant's profits **for the same sale**.

**7. Apple Objects to Tentative Final Jury Instruction No. 48**

Apple objects to the fourth paragraph of Tentative Proposed Jury Instruction No. 48, which reads:

> Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product. In considering the impact of these non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

(Dkt. No. 1828 at 5:8-10.)

This instruction is contrary to law because, in defining trade dress, it suggests that the jury should extract out functional aspects of a product and consider only an accused product's non-functional aspects. This is inconsistent with Ninth Circuit precedent, under which a trade dress may include functional *and* non-functional aspects. Even where a trade dress includes elements that are functional, the jury should evaluate Apple's trade dress claims by considering the overall visual impression created by the trade dress *in its entirety*.

Although a trade dress taken as a whole is not protectable if functional, there is no dispute

that a trade dress can include functional features. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("functional elements that are separately unprotectable can be protected together as part of a trade dress"; *Taco Cabana, Int'l Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991), *aff'd*, 505 U.S. 763, 770-73 (1992) ("combination of functional features … which is not itself functional, properly enjoys protection"). Indeed, other language in Proposed Tentative Jury Instruction No. 48 acknowledges that "particular elements of the trade dress may be functional."

Upon finding a trade dress protectable because non-functional, the jury should consider the trade dress as a whole rather than only the non-functional aspects of it. The Ninth Circuit is explicit on this point in *Clicks Billiards*: "Courts have repeatedly cautioned that, in trademark—and especially trade dress—cases, the mark must be examined as a whole, not by its individual constituent parts." 251 F.3d at 1259. The courts' infringement analyses in *Clicks Billiards* and in *Taco Cabana* confirm this principle. In both cases, the court, after concluding the trade dress may have functional elements but is not functional as a whole, goes on to analyze infringement without subtracting out the allegedly functional elements. *Clicks Billiards*, 251 F.3d at 1264-66 (discussing likelihood of confusion); *Taco Cabana*, 932 F.2d at 1122-23 (same).

Apple acknowledges that the fourth paragraph of the instruction comes directly from the Ninth Circuit Model Civil Jury Instructions, but model jury instructions are "not blessed with any special precedential value or binding authority." *McDowell v. Calderon*, 130 F.3d 833, 840 (9th Cir. 1997). The Ninth Circuit has "recognized that a district court's use of a model jury instruction does not preclude a finding of error." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (citation omitted) (use of model jury instruction instead of plaintiff's proposed instruction was error); *see also United States v. Warren*, 984 F.2d 325, 328 (9th Cir. 1993) (jury instruction based on Ninth Circuit model instruction was erroneous); *United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir. 1992) (district court correctly departed from model jury instruction; "Had the district court merely read the model jury instruction, it would have committed plain error."). For this reason, the Introduction to the Northern District's Model Patent Jury Instructions emphasizes that the instructions "are not substitutes for the individual research

and drafting that may be required in a particular case." MODEL PATENT JURY INSTRUCTIONS FOR THE NORTHERN DISTRICT OF CALIFORNIA (Nov. 3, 2011) (emphasis added). Apple's research has turned up *no* Ninth Circuit case that uses or endorses the language in the fourth paragraph of Instruction 48.[5]

Nothing in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000), suggests the law is different in this case because it concerns a product's configuration. Apple does not dispute the need to establish that its unregistered trade dress has acquired secondary meaning, the issue in *Wal-Mart*. *Id*. at 216. And the courts of this circuit have long held, in product configuration cases, that it is "the *total effect* of the defendant's product and package on the eye and mind of an ordinary purchaser" that counts, even where "each feature independently furthers the [product's] function." *STX, Inc. v. Trik Stik, Inc*., 708 F. Supp. 1551, 1559 (N.D. Cal. 1988) (skateboard kneepads) (emphasis added); *see also*, *White Swan, Ltd. v. Clyde Robin Seed Co.*, 729 F. Supp. 1257, 1259-60 (N.D. Cal. 1989) (shaker-top can). "Dissecting marks often leads to error." *Clicks Billiards*, 251 F.3d at 1259 (citing *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)). The fourth paragraph of Tentative Proposed Jury Instruction No. 48 may lead the jury to commit such error.

**8. Apple Objects to Tentative Final Jury Instruction No. 57**

Apple objects to language in Tentative Final Jury Instruction No. 57 suggesting that trade dress infringement must be assessed at the point of purchase, and to the Court's failure to adopt the following language on post-sale and initial-interest confusion from Apple's Proposed Jury Instruction No. 57:

---

[5] The Ninth Circuit model instruction devoted specifically to functionality also has a couple of sentences that have no support in Ninth Circuit law and that Apple will be objecting to including in Final Jury Instruction No. 51. That instruction states that if a product "feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional. A product feature is also non-functional if its shape or form makes no contribution to the product's function or operation." The definition of "non-functional" is of course much broader. It includes features that serve some purpose related to the use of the product, as long as the feature is not "essential to" that purpose and does not affect the cost or quality of the product. *See Qualitex v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995).

> Confusion in the marketplace can occur before the purchase of the good in question (also called "initial interest confusion"), at the moment of the purchase (also called "point of sale" confusion), or after the purchase (also called "post-sale" confusion).

(Dkt. No. 1694 at 229:3-5.)  Apple requests that the Court add to the instruction this clarification.

"Initial-interest and post-sale confusion are well established forms of confusion" in the Ninth Circuit, such that there is no requirement for a plaintiff to prove point-of-sale confusion at all.  *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1030, 1058 (D. Or. 2008); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1032 (9th Cir. 2010) ("post-purchase confusion … can establish the required likelihood of confusion under the Lanham Act").

From the start, Apple has not limited its trade dress infringement claim to point-of-sale confusion.  Apple's complaint alleges that Samsung's copying of Apple's asserted trade dress "is particularly problematic because the Samsung Galaxy products are the type of products that will be used in public—on the bus, in cases, in stores, or at school, *where third parties, who were not present when the products were purchased, will associate them with Apple*."  (Dkt. No. 75 ¶ 106 (emphasis added).)  Apple's trade dress infringement contentions are consistent with these allegations (*see* Dkt. No. 1585-6 at 73-93), and Apple advanced its post-sale confusion theory at trial—without objection by Samsung—by introducing expert testimony and survey data showing that consumers "are likely to be confused when they see a Samsung Galaxy tablet in a post-sale environment," mistakenly believing "that they're actually viewing an iPad or Apple product."  (Tr. 1701:15-21; *see also* Tr. 1696:3-1701:21.)  Accordingly, Apple is entitled to a jury instruction on its post-sale confusion theory.  *See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (a party is "'entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.'") (quoting *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005)).

Samsung has suggested that Apple cannot proceed on a post-sale confusion theory because it "does not maintain that it has sustained reputational injury."  (Dkt. No. 1656 at 2.)  But the Ninth Circuit has rejected the notion that "reputational injury" is required when asserting

post-sale confusion. *Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1139 (9th Cir. 2010). Indeed, "[c]ourts have consistently held for plaintiffs where there is a possibility of confusion, even where defendants are not selling lower quality goods." *Id.* Thus, in *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 821-22 (9th Cir. 1980), the Ninth Circuit affirmed a judgment against the maker of Wrangler jeans based on a straight-forward analysis of the likelihood of confusion. The court focused on post-sale confusion, reasoning that "billboards and other point of sale materials" on which defendants' relied "have no confusion-obviating effect when the pants are worn." *Id*. at 822; *see also Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002) ("'Post-sale' confusion . . . may be no less injurious to the trademark owner's reputation than confusion on the part of the purchaser at the time of sale").

Consistent with Apple's request to clarify that confusion need not be at the point of sale, Apple also requests two additional changes to the existing instruction. Apple requests:

- Deleting from the fourth line of the instruction the phrase "in the marketplace" (*see* Dkt. No. 1838 at 18:5); and
- Changing the title of the seventh factor from "Purchaser's Degree of Care" to "Consumer's Degree of Care." (*Id*. at 19:1.)

The Ninth Circuit and the Federal Circuit have both noted that the 1962 amendments to the Lanham Act "specifically struck language limiting the scope of the Act to confusion by 'purchasers.'" *Id*. (citing *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985 (Fed. Cir. 1993). Apple objects to jury instructions that exclude likely confusion among consumers before or after the moment in which they purchase infringing products.

Dated: August 20, 2012                    MORRISON & FOERSTER LLP

By:  */s/ Michael A. Jacobs*
         Michael A. Jacobs

         Attorneys for Plaintiff
         APPLE INC.