1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

15

16                    UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 18  APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| 19           Plaintiff, | |
| 20       vs. | **SAMSUNG'S OBJECTIONS TO TENTATIVE FINAL JURY INSTRUCTIONS** |
| 21  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | |
| 22  ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | |
| 23  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 24           Defendants. | |

25

26

27

28

Pursuant to the Court's order, Samsung hereby submits its eight high priority objections to the Tentative Final Jury Instructions. (Dkt. No. 1826).

## I. INSTRUCTION NO. 21, 12.1, AND 34

Jury Instruction No. 21, regarding exhaustion states that "a sale occurs wherever the 'essential activities' of the sale take place."[1] The instruction defines the "essential activities" as including, "for example, negotiating the contract and performing obligations under the contract." The instructions do not state that the jury "must consider whether the baseband processor chips were actually delivered to Apple or its contractors in the United States," as Samsung proposed in its exhaustion instruction. (Dkt. 1238.) The tentative instruction on exhaustion does not require the jurors to consider this factor and is, therefore, an incorrect statement of the law.

In order to find that a sale is exhausting, the jury must conclude that the sale occurred in the United States. *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1376 (Fed. Cir. 2005) (holding only an authorized and unrestricted sale occurring in the United States may exhaust a U.S. patent). The Federal Circuit has consistently relied on the location of the delivery of an article and has found only sales that involve delivery of the goods in the United States to be U.S. sales. *See e.g.*, *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) ("the invoices between Pentalpha and the three U.S. companies all identify delivery to U.S. destinations"); *Litecubes, LLC v. N. Light Products, Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("products were delivered directly to the United States"); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA*, Inc., 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("Maersk did in fact deliver the rig to U.S. waters"); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578 (Fed. Cir. 1994) ("All the goods destined for Illinois were delivered 'free on board' (f.o.b.) in Texas and California.").

---

[1] These arguments similarly apply to Instruction Nos.. 12.1 and 34 which incorporate the same definition of sale in the United States for the purposes of utility and design patent infringement. It is well settled law that U.S. patent law does not reach extraterritorial activities. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States.").

Based on this precedent, the district court in *Minbea Minebea Co., Ltd. v. Papst* concluded that the location of the delivery of goods is dispositive of the location of the sale: "to prevail on its patent exhaustion claim [defendant] must show that specific motor sales resulted in delivery of mass-produced quantities [] into the United States." 444 F. Supp. 2d 68, 146 (D.D.C. 2006). Similarly, district courts have concluded that where the delivery of goods is located outside of the United States, there is no U.S. sale, even where orders were placed and payment was made in the United States. *See ION, Inc. v. Sercel, Inc.,* 2010 WL 3768110, at *4 (E.D. Tex. 2010) (finding no U.S. sale even where orders and payment were received in Houston, Texas); *Halo Electronics, Inc. v. Pulse Engineering, Inc.*, 810 F.Supp.2d 1173, 1208 (D. Nev. 2011).

Tentative Jury Instruction No. 21 is erroneous in that it fails to instruct the jury that it must consider the location of the sale. Apple proposed the "essential activities" language, which it took from *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, a case that involved a determination of a sale for infringement purposes, not exhaustion. 420 F.3d 1369, 1376-77 (Fed. Cir. 2005). In *MEMC*, SUMCO Corp. sold silicon wafers to Samsung Japan, which then sold wafers to Samsung Austin, in Austin, Texas. *Id.* at 1373. Critically, *it was not disputed* that SUMCO Corp.'s sale to Samsung Japan occurred in Japan. *Id.* The Federal Circuit then rejected the theory that a sale could be imputed to Samsung Austin because Samsung Japan was a mere "conduit." *Id.* at 1372. No such theory is alleged in this case, and accordingly, *MEMC* is inapplicable here.

The Federal Circuit has consistently considered the location of delivery of goods in determining the location of a sale. *Transocean*, 617 F.3d at 1309; *SEB*, 594 F.3d at 1375. Currently, the jury instructions do not explicitly require the jury to consider whether delivery of goods must take place in the United States. The instruction only requires general consideration of the location of "essential activities" and does not specify that "performing obligations under the contract" includes the delivery of the goods.

Therefore, Samsung requests that Jury Instructions Nos. 21, 12.1, and 34 be revised to recite: "In evaluating whether the sales took place in the United States, you must consider

whether the baseband processor chips were actually delivered to Apple or its contractors in the United States."

## II.     INSTRUCTION NO. 34.4B

Samsung objects that the jury instructions do not include Samsung's proposed Instruction 34.4b with an instruction that copying is not relevant to the determination of design patent infringement.   A central theme in Apple's case has been allegations that its designs and patents have been "copied."   Because of Apple's focus on this issue, which is irrelevant to its infringement claims, Samsung's proposed instruction on the relevance of allegations of copying – which is essentially a limiting instruction on the use of Apple's evidence -- is particularly important here.   To avoid confusion and to prevent a serious error of law, the jury should be instructed that copying is not relevant to design patent infringement.

A general instruction on alleged evidence of copying would not be prejudicial to Apple because in those instances where copying might actually be relevant to an issue, such as secondary considerations of obviousness, the corresponding instruction clarifies that.   As to infringement, however, the Federal Circuit unambiguously rejected the relevance of copying: "While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed."   *Allen Engineering Corp. v. Bartell Industries, Inc*., 299 F.3d 1336, 1350-51 (Fed. Cir. 2002) (emphasis added).   Apple has tried to argue that *LA Gear v. Thom McAn Shoe Co*. says that copying is relevant to infringement, but that is both a misreading of the case – which expressly says that copying is "an issue not relevant to patent infringement" – and a misreading of design patent law generally.   988 F.2d 1117, 1126-27 (Fed. Cir. 1993); *see also Goodyear Tire v. Hercules Tire*, 162 F.3d 1113, 1121 (Fed. Cir. 1998) ("Although Hercules does not deny that it intended to appropriate the general appearance of the Goodyear tire, Hercules argues that it made changes sufficient to avoid infringement.   The district court agreed."); *Hupp v. Siroflex of America*, 122 F.3d 1456 (Fed. Cir. 1997) (upholding non-infringement finding where "Siroflex's president conceded at the trial that he acquired a sample of the Hupp product at a trade

show and, using the same concept, made the accused Siroflex mold for an outdoor walkway of concrete stones.").[2]

If necessary to alleviate Apple's objection, Samsung proposes the last sentence of the instruction read: "In the event that evidence of copying is established and would be relevant to a particular issue, I will provide you with an explicit instruction to that effect."

### III.   INSTRUCTION NO. 39

Samsung objects that [Disputed] Final Jury Instruction No. 39 (Design Patents — Invalidity — Lack of Ornamentality) is not an accurate statement of controlling law.[3]   The Federal Circuit said in *Amini Innovation Corp. v. Anthony Cal. Inc.*, 439 F.3d 1365 (Fed. Cir. 2006), that the test for design patent functionality was the same one stated by the Supreme Court in *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982), for trade dress: an "aspect is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'"   *Amini*, at 1371.   The same standard should apply in both areas of law because protection of functional features should be the sole province of utility patent law.   The rigidity of the test in Instruction No. 39 now makes functionality of design patents the rare exception and turns the purpose of the law on its head by foreclosing invalidity unless the design could be done no other way regardless of any other considerations.

Aside from *Amini*, the Federal Circuit has held that determining whether a design patent is functional includes a number of factors, and just one is availability of alternative designs.   *See, e.g.*, *PGH Technologies, LLC v. St. John Co., Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006).   That

---

[2]   Apple conceded that alleged copying is not an element of infringement, but "an issue about secondary considerations."   *See* Aug. 6, 2012 Tr. at 1282:12-1283:7.   Apple never propounded an interrogatory requiring Samsung to state all facts supporting Samsung's denial of Apple's allegation of willfulness or its rebuttal of Apple's copying allegations, nor were such contentions otherwise required.

[3]   The instruction is based on the Intellectual Property Owners Association Model Design Patent Jury Instructions, to which Samsung has previously objected as being an unreliable source for substantive design patent law.   (Dkt No. 1232 at 153.)

1  factor is not itself dispositive.  *Id.* at 1367.[4]  And even if other design options exist, that factor
2  goes unsatisfied unless the alternative designs perform at the same level of utility.  *Id.*[5]

3  As it stands now, Instruction No. 39 highlights alternative designs as the sole test and
4  equates functionality with the extreme position of the IPO model instruction that functionality is
5  where the "inventor did not 'design' anything because in order to achieve the function of the
6  design, it had to be designed that way."  Samsung proposes its alternative instruction on this
7  issue.  (*See* Hutnyan Decl., Ex. A.)

8  Samsung also objects that there is no instruction that functional features be factored out for
9  infringement.  The Court has previously stated that  it would address "any functional limitations
10 to the scope of the design patents-in-suit" at the close of evidence (Dkt No. 1425 at 2) and has
11 already found that certain features are functional for D'677, D'087, and D'889 (Dkt No. 449 at
12 15).  Because the Court will decide this as a matter of law, it can consider the evidence and
13 arguments already presented at the preliminary injunction stage, claim construction, and trial.
14 (*See, e.g.*, Dkt 1090, under seal, at 5, 11-12, 14-15.)  All the alternative designs proposed by
15 Apple have a rectangular display screen covering a large portion of the front face, with a
16 transparent cover over the display.  (PX10; Trial Tr. 1199:25-1200:4 (clear cover))  The
17 smartphones also all have speakers above the display.  (*Id.*; DX807 Trial Tr. 1201:4 (speaker
18 slot))  Apple has thus failed to show any alternative lacking these features, so Samsung requests
19 that the Court instruct the jury they are functional.  This is the same outcome found in *OddzOn*
20 *Prods, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404-05 (Fed. Cir. 1997), and *Richardson v. Stanley*
21 *Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010), where the Court found certain element

---

[4]  *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563 (Fed. Cir. 1996), is distinguishable because no alternative designs were offered for analysis.  There was no opportunity for the Court to analyze whether different designs had equivalent utility, as in other cases.  Thus, the Federal Circuit's statement that a "design is not dictated solely by its function when alternative designs for the article of manufacture are available," *id.* at 1566, is dicta in that case and should not be applied without qualification to all cases.

[5]  Apple's expert, Peter Bressler, who offered testimony on the supposed alternative designs (PX-10), admitted that his test was only whether an alternative design could be conceived of that how the devices function "really was insignificant to [him]."  Trial Tr. at 1194:10-15; 1207:9-20.

1  configurations were necessary for the articles to work as intended, though the individual features
2  could be designed with some degree of latitude.   Samsung has attached proposed redlines of the
3  Court's Instruction No. 32 and Samsung's previously proposed Instruction No. 44.4 on
4  functionality in the infringement context.   (*See* Hutnyan Decl., Exs. B, C).

## IV.   INSTRUCTION NOS. 40-43

Instruction No. 40 properly instructs that "Apple is not entitled to recover both compensatory damages and defendant's profits."   Dkt. No. 1838, at 13:8-9.   No. 40 also instructs that Apple "can elect to prove either actual damages …, or it may elect to prove the defendant's profits…."   This accurately reflects the law.   *See Catalina Lighting, Inc., v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002) ("[T]he purpose of this latter phrase is to insure that a patentee not recover both the profit of an infringer and some additional damage remedy from the same infringer, such as a reasonable royalty."); *see also Bergstrom v. Sears, Roebuck and Co.*, 496 F. Supp. 476, 494 (D. Minn. 1980) ("A design patentee cannot recover both damages under 35 U.S.C. 284 and the profits of the infringer under 35 U.S.C. 289"); *Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959) ("If the statutory measure of compensatory damages is to be found in 35 U.S.C.A. 289, a royalty in addition to profits should not have been awarded since the profit was in excess of the minimum as fixed by that section.").

Apple has failed to cite any precedent mandating what it proposes here – to split its recovery between actual damages as lost profits under Section 284 and infringer's profits under Section 289.   Indeed, even the IPO Model Design Patent Jury Instructions, which Apple-affiliated attorneys helped create, state that the plaintiff "in a design patent case can elect to prove either actual damages, known as compensatory damages, or they may elect to prove the defendant's profits as its measure of potential recovery."   IPO Model Instruction 10.1.[6]

---

[6]   The IPO Model also requires that the plaintiff state which election it chooses:   "In this case, [the Plaintiff] seeks to prove [its compensatory damages/[the Defendant]'s profits]."   Model 10.1.

1    Although Instruction No. 40 correctly states the law, subsequent Instruction Nos. 41 (Lost
2 Profits), 42 (Defendant's Profits), and 43 (Reasonable Royalty) are worded such that the jury may
3 conclude that it can award both lost profits and infringer's profits.   For example, Instruction No.
4 41 states that "Apple seeks to recover lost profits," whereas Instruction No. 42 states that "Apple
5 has elected to seek [Samsung's] profits…."   Dkt. No. 1849, at 69.   As the Court has recognized,
6 Apple cannot elect both remedies.   It must choose.   Accordingly, the Court should modify
7 Instruction Nos. 40-43 to clarify that if Apple has chosen one monetary remedy, it cannot receive
8 an award pursuant to another monetary remedy.

## V.   INSTRUCTION NO. 42

Even if Apple were entitled to receive both lost profits and infringer's profits, this instruction suggests that Apple can get *both* on the same sale.   That is contrary to law and creates the prospect of double recovery if the jury finds for Apple on liability.   *See Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-19 (Fed. Cir. 2006) ("Generally, the double recovery of damages is impermissible."); *see also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("[R]ecovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act."). Accordingly, *if* the Court allows Apple to elect lost profits (which it should not) and defendant's profits, the Court should modify Instruction No. 42 to clarify that infringer's profits may be awarded

## VI.   INSTRUCTION NO. 51

Samsung objects to three points concerning Instruction No. 51's discussion of functionality. First, Instruction 51 omits the third sentence from the Ninth Circuit Model Civil Jury Instr. 15.11, which states:   "If the feature is part of the actual benefit that consumers wish to purchase when they buy the product, the feature is functional."   Ninth Circuit precedent is clear, however, that "[f]unctional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'"   *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (citing *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir.

1987)); *see also Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 774 (9th Cir. 1981). By including only the second half of this point, the resulting instruction fails to accurately reflect controlling law.[7]

Second, Instruction 51 instructs the jury that consideration of the *Disc Golf* factors is mandatory. Instruction No. 51 ("You should assess the following factors in deciding …"; "… after considering these factors. . ."). This is not consistent with the law. In *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, the Supreme Court held that it was error for the lower court to require consideration of the competitive necessity of a feature if that feature was "essential to the use or purpose of the device or when it affects the cost or quality of the device." 532 U.S. 23, 33 (2001) ("Where the design is functional under the *Inwood* formulation [i.e. it is essential to the use or purpose or affects the cost or quality of the article] there is *no need to proceed further to consider if there is a competitive necessity* for the feature.") (emphasis added). The Ninth Circuit has recognized that under *TrafFix* the *Disc Golf* factors, which concern competitive necessity, need not be considered if the *Inwood* functionality test is satisfied. *See Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 686-87 (9th Cir. 2012) (upholding functionality finding over argument that district court had failed to consider *Disc Golf* factors); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1071 (9th Cir. 2006) ("If a design is determined to be functional under the traditional test of *Inwood Laboratories* there is no need to go further to consider indicia of competitive necessity, such as the availability of alternative designs.").

In the instances where Ninth Circuit decisions have continued to permit the use of those factors, those decisions have used discretionary—not mandatory—language. *See, e.g.*, *Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 603-04 (9th Cir. 2003) ("[T]he existence of alternative designs *cannot negate* a trademark's functionality. But the existence of alternative designs *may* indicate whether the trademark itself embodies functional or merely

---

[7] Samsung includes a proposed modified Jury Instruction No. 51 based on its arguments herein. Hutnyan Decl., Ex. D (Samsung's Proposed Jury Instruction No. 51).

1  ornamental aspects of the product.") (emphasis added); *Au-Tomotive Gold*, 457 F.3d at 1071 ("As
2  to functionality, we read the Court's decision [in *TrafFix*] to mean that consideration of
3  competitive necessity *may be an appropriate but not necessary element* of the functionality
4  analysis.") (emphasis added); *Secalt*, 688 F.3d at 685 (9th Cir. 2012) (noting that the *Disc Golf*
5  factors "illuminate the functionality analysis").   Accordingly, it is incorrect to instruct the jury
6  that they *must* consider the *Disc Golf* factors.   Indeed, Samsung respectfully submits that it is
7  erroneous under *TrafFix* to consider those factors at all.

8        Third, the instruction for aesthetic functionality set forth in the penultimate paragraph of
9  Instruction No. 51 does not accurately reflect the law.   Aesthetic functionality is part of the
10 overall test for functionality in the Ninth Circuit, *Au-Tomotive Gold*, 457 F.3d 1069-1070, and
11 should not be considered solely as an "alternative" to the functionality determination.   For
12 example, if the jury finds that Apple's trade dress consists entirely of features that are functional
13 under either doctrine of functionality—utilitarian or aesthetic—and that the combination is itself
14 functional, the trade dress is functional and not protectable.   The type of functionality need not be
15 exclusively one or the other.

16 **VII.   INSTRUCTION NO. 55**

17       Samsung objects to the second sentence in Instruction No. 55, which states: "Dilution by
18 blurring occurs when a trade dress previously associated with one product also becomes associated
19 with a second."   Unlike other language in Instruction No. 55, this sentence does not track the
20 statutory language of 15 U.S.C. § 1125(c)(2)(B), is inconsistent with case law, and was not
21 included in either party's proposed Instruction No. 55 or in ABA Model Instruction 3.4.4.   This
22 sentence also renders Instruction No. 55 internally inconsistent.   Under the statute, association is
23 one of several factors to be considered, but the second sentence in Instruction No. 55 suggests it is
24 the sole consideration.   Dilution by blurring does not occur merely when one product is
25 associated with another, but, rather, where an association arising from the similarity between two
26 marks "impairs the distinctiveness" of the allegedly famous mark.   *Jada Toys, Inc. v. Mattel,*
27 *Inc.,* 518 F.3d 628, 635 (9th Cir. 2007) (citing 15 U.S.C. § 1125(c)(2)(B)).   In contrast, the
28 language of Instruction No. 55 incorrectly suggests that any association between the products or

02198.51845/4918411.2                                      -9-                                    Case No. 11-cv-01846-LHK
SAMSUNG'S OBJECTIONS TO TENTATIVE FINAL JURY INSTRUCTIONS

1  companies compels a finding of dilution, even if the association is not tied to the similarity in
2  trade dress; for example, if it arises from knowledge of Samsung's role as component supplier to
3  Apple or consumers' use of the terms "iPad" or "iPhone" generically to describe tablet computers
4  and smartphones.   But this is not the law; the two marks not only must share an association, but
5  that association also must "impair the distinctiveness" of the allegedly famous mark or trade dress.
6  *Id.*

7  The contested language in Instruction No. 55 also conflicts with Instruction No. 52, which
8  properly defines dilution not merely as an association, but "a lessening of the capacity" of the
9  asserted trade dress "to identify and distinguish goods or services, regardless of the presence or
10  absence of competition, actual or likely confusion, mistake, deception, or economic injury."

11  Samsung also objects to Instruction No. 55's omission of language after the list of factors
12  that they need receive equal weight, such as:   "These factors should be weighed by you given the
13  facts and circumstances of the case."   This instruction is necessary to instruct the jury regarding
14  the proper weight to give any dilution factor, because jurors may be confused as to whether or not
15  these factors must receive equal weight.   The determination of dilution by blurring is not a
16  mathematical calculation made by counting up or subtracting each factor, but an evaluation of any
17  factors relevant to the specific case and circumstance.   *See Jada Toys,* 518 F.3d at 635-36 ("A
18  court *may* consider all relevant factors, including the six identified by statute. . . .") (emphasis
19  added); *Clinique Laboratories, Inc. v. Dep Corp.,* 945 F.Supp. 547 (S.D.N.Y. 1996) (declining to
20  "speculate" or "mechanically weigh" a certain factor because case involved dilution claim
21  regarding newly launched product at the preliminary injunction stage).

22  **VIII.   INSTRUCTION NO. 58**

23  Samsung objects to Instruction No. 58's omission of the second paragraph of the Ninth
24  Circuit Model Instruction 15.24, on which Instruction No. 58 is based.   *See* Dkt. No. 1849 at 90
25  ("Source/Authorities").   The second paragraph of the Ninth Circuit Model Instr. 15.24 states:

26  Defendant had statutory notice if:

27  [1.   plaintiff displayed with the trademark the words "Registered in U.S. Patent and Trademark Office"] [or]

28  [2.   plaintiff displayed with the trademark the words "Reg. U.S. Pat. & Tm.

[3. Off."] [or]
plaintiff displayed the trademark with the letter R enclosed within a circle, thus ®].

Instruction No. 58 is currently incomplete because it fails to explain to the jury what "statutory notice" is.   Adding the second paragraph of Ninth Circuit Model Instruction 15.24 to Instruction No. 58 will provide necessary guidance regarding statutory notice.   A proposed modified Jury Instruction No. 58 is attached to the Hutnyan Decl. as Ex. E (Samsung's Proposed Jury Instruction No. 58).

DATED: August 20, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Victoria F. Maroulis*
Victoria F. Maroulis
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC