UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) | |
| | ) | |
| Plaintiff and Counterdefendant, | ) | Case No.: 11-CV-01846-LHK |
| v. | ) | |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| a Korean corporation; | ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) | |
| a New York corporation; | ) | |
| SAMSUNG TELECOMMUNICATIONS | ) | |
| AMERICA, LLC, a Delaware limited liability | ) | |
| company, | ) | |
| | ) | |
| Defendants and Counterclaimants. | ) | |
| | ) | |

**FINAL JURY INSTRUCTIONS**

Dated: August 21, 2012

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

**United States District Court**
For the Northern District of California

1

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTIONS AT THE CLOSE OF EVIDENCE** ................................................................ 1

**GENERAL CIVIL INSTRUCTIONS** ........................................................................ 7

FINAL JURY INSTRUCTION NO. 1 DUTY OF JURY ................................................. 8

FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—PREPONDERANCE OF
    THE EVIDENCE .............................................................................. 9

FINAL JURY INSTRUCTION NO. 3 BURDEN OF PROOF—CLEAR AND
    CONVINCING EVIDENCE ................................................................ 10

FINAL JURY INSTRUCTION NO. 4 TWO OR MORE PARTIES—DIFFERENT LEGAL
    RIGHTS ........................................................................................ 11

FINAL JURY INSTRUCTION NO. 5 WHAT IS EVIDENCE ................................... 12

FINAL JURY INSTRUCTION NO. 6 WHAT IS NOT EVIDENCE ........................... 13

FINAL JURY INSTRUCTION NO. 7 EVIDENCE FOR A LIMITED PURPOSE ................ 14

FINAL JURY INSTRUCTION NO. 8 CHARTS AND SLIDES NOT RECEIVED IN
    EVIDENCE .................................................................................... 15

FINAL JURY INSTRUCTION NO. 9 CHARTS AND SUMMARIES IN EVIDENCE ............ 16

FINAL JURY INSTRUCTION NO. 10 DIRECT AND CIRCUMSTANTIAL EVIDENCE ..... 17

FINAL JURY INSTRUCTION NO. 11 CREDIBILITY OF WITNESSES ........................ 18

FINAL JURY INSTRUCTION NO. 12 IMPEACHMENT EVIDENCE—WITNESS .............. 19

FINAL JURY INSTRUCTION NO. 13 TAKING NOTES ........................................ 20

FINAL JURY INSTRUCTION NO. 14 DEPOSITION IN LIEU OF LIVE TESTIMONY ........ 21

FINAL JURY INSTRUCTION NO. 15 USE OF INTERROGATORIES OF A PARTY ........... 22

FINAL JURY INSTRUCTION NO. 16 EXPERT OPINION ...................................... 23

FINAL JURY INSTRUCTION NO. 17 USE OF DEVICES DURING DELIBERATIONS ...... 24

FINAL JURY INSTRUCTION NO. 18 SUMMARY OF CONTENTIONS .......................... 29

FINAL JURY INSTRUCTION NO. 19 DUTY TO DELIBERATE .................................. 31

FINAL JURY INSTRUCTION NO. 20 COMMUNICATION WITH COURT ...................... 32

FINAL JURY INSTRUCTION NO. 21 RETURN OF VERDICT .................................. 33

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**UTILITY PATENT JURY INSTRUCTIONS** .................................................................**34**

FINAL JURY INSTRUCTION NO. 22 UTILITY PATENTS—INTERPRETATION OF
    CLAIMS ................................................................................................................35

FINAL JURY INSTRUCTION NO. 23 UTILITY PATENTS—INFRINGEMENT
    BURDEN OF PROOF.............................................................................................36

FINAL JURY INSTRUCTION NO. 24 UTILITY PATENTS—DIRECT
    INFRINGEMENT ...................................................................................................37

FINAL JURY INSTRUCTION NO. 25 UTILITY PATENTS—DIRECT
    INFRINGEMENT ...................................................................................................38

FINAL JURY INSTRUCTION NO. 26 UTILITY PATENTS—LITERAL
    INFRINGEMENT ...................................................................................................39

FINAL JURY INSTRUCTION NO. 27 UTILITY PATENTS—INFRINGEMENT
    UNDER THE DOCTRINE OF EQUIVALENTS ....................................................40

FINAL JURY INSTRUCTION NO. 28 UTILITY PATENT INFRINGEMENT OF '460
    METHOD CLAIM .................................................................................................41

FINAL JURY INSTRUCTION NO. 29 UTILITY PATENTS—INVALIDITY—BURDEN
    OF PROOF ............................................................................................................42

FINAL JURY INSTRUCTION NO. 30 UTILITY PATENTS—WRITTEN
    DESCRIPTION REQUIREMENT .........................................................................43

FINAL JURY INSTRUCTION NO. 31 UTILITY PATENTS—ANTICIPATION ..................44

FINAL JURY INSTRUCTION NO. 32 UTILITY PATENTS—STATUTORY BARS ...........45

FINAL JURY INSTRUCTION NO. 33 UTILITY PATENTS—OBVIOUSNESS ..................46

FINAL JURY INSTRUCTION NO. 34 PATENT EXHAUSTION .......................................48

FINAL JURY INSTRUCTION NO. 35 UTILITY PATENT DAMAGES — BURDEN OF
    PROOF .................................................................................................................49

FINAL JURY INSTRUCTION NO. 36 UTILITY PATENT DAMAGES—LOST
    PROFITS—GENERALLY .....................................................................................50

FINAL JURY INSTRUCTION NO. 37 UTILITY PATENT DAMAGES—LOST
    PROFITS—FACTORS TO CONSIDER ................................................................51

FINAL JURY INSTRUCTION NO. 38 UTILITY PATENT DAMAGES—LOST
    PROFITS—AMOUNT OF PROFIT .......................................................................52

FINAL JURY INSTRUCTION NO. 39 UTILITY PATENT DAMAGES—LOST
    PROFITS—MARKET SHARE ..............................................................................53

FINAL JURY INSTRUCTION NO. 40 UTILITY PATENT DAMAGES—
    REASONABLE ROYALTY—ENTITLEMENT .......................................................54

United States District Court
For the Northern District of California

FINAL JURY INSTRUCTION NO. 41 UTILITY PATENT DAMAGES— REASONABLE ROYALTY—DEFINITION ................................................... 55

FINAL JURY INSTRUCTION NO. 42 UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ......................................................... 57

**DESIGN PATENT JURY INSTRUCTIONS** ............................................................. **58**

FINAL JURY INSTRUCTION NO. 43 DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS ...................................................................................... 59

FINAL JURY INSTRUCTION NO. 44 DESIGN PATENT INFRINGEMENT—BURDEN OF PROOF ........................................................................................... 61

FINAL JURY INSTRUCTION NO. 45 DESIGN PATENTS—INFRINGEMENT GENERALLY ......................................................................................... 62

FINAL JURY INSTRUCTION NO. 46 DESIGN PATENTS—DIRECT INFRINGEMENT .... 63

FINAL JURY INSTRUCTION NO. 47 DESIGN PATENT DIRECT INFRINGEMENT— COMPARISONS ....................................................................................... 64

FINAL JURY INSTRUCTION NO. 48 DESIGN PATENTS—INVALIDITY BURDEN OF PROOF ........................................................................................... 66

FINAL JURY INSTRUCTION NO. 49 DESIGN PATENTS—PRIOR ART ............................. 66

FINAL JURY INSTRUCTION NO. 50 DESIGN PATENTS—ANTICIPATION .................... 67

FINAL JURY INSTRUCTION NO. 51 DESIGN PATENTS—OBVIOUSNESS .................... 68

FINAL JURY INSTRUCTION NO. 52 DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY ................................................................................ 70

FINAL JURY INSTRUCTION NO. 53 DESIGN PATENT DAMAGES—BURDEN OF PROOF ................................................................................................. 71

FINAL JURY INSTRUCTION NO. 54 DESIGN PATENT DAMAGES—DEFENDANT'S PROFITS ............................................................................................... 72

FINAL JURY INSTRUCTION NO. 55 DESIGN PATENT DAMAGES—LOST PROFITS .... 73

FINAL JURY INSTRUCTION NO. 56  DESIGN PATENT DAMAGES—REASONABLE ROYALTY ............................................................................................. 74

FINAL JURY INSTRUCTION NO. 57 DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ......................................................... 75

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS**..........................................76

FINAL JURY INSTRUCTION NO. 58 UTILITY AND DESIGN PATENTS—
INDUCING PATENT INFRINGEMENT ...............................................77

FINAL JURY INSTRUCTION NO. 59 UTILITY AND DESIGN PATENTS—WILLFUL
PATENT INFRINGEMENT ...................................................................78

**TRADE DRESS JURY INSTRUCTIONS** ...................................................................**79**

FINAL JURY INSTRUCTION NO. 60 TRADE DRESS DILUTION AND
INFRINGEMENT—INTRODUCTION .................................................80

FINAL JURY INSTRUCTION NO. 61 TRADE DRESS DILUTION AND
INFRINGEMENT—DEFINITION OF TRADE DRESS (15 U.S.C. § 1125(A))...........81

FINAL JURY INSTRUCTION NO. 62 TRADE DRESS DILUTION AND
INFRINGEMENT—PROTECTABILITY .............................................82

FINAL JURY INSTRUCTION NO. 63 TRADE DRESS DILUTION AND
INFRINGEMENT—PROTECTABILITY—DISTINCTIVENESS—SECONDARY
MEANING ...................................................................................83

FINAL JURY INSTRUCTION NO. 64 TRADE DRESS DILUTION AND
INFRINGEMENT—PROTECTABILITY— NON-FUNCTIONALITY
REQUIREMENT ............................................................................84

FINAL JURY INSTRUCTION NO. 65 TRADE DRESS DILUTION—ELEMENTS AND
BURDEN OF PROOF.....................................................................86

FINAL JURY INSTRUCTION NO. 66 TRADE DRESS DILUTION—ELEMENTS—
FAME—TIMING.........................................................................87

FINAL JURY INSTRUCTION NO. 67 TRADE DRESS DILUTION—ELEMENTS—
DILUTION ...................................................................................88

FINAL JURY INSTRUCTION NO. 68 INFRINGEMENT—ELEMENTS AND BURDEN
OF PROOF—TRADE DRESS (15 U.S.C. § 1125(A)(1))................................89

FINAL JURY INSTRUCTION NO. 69 TRADE DRESS INFRINGEMENT—
SECONDARY MEANING—TIMING ................................................90

FINAL JURY INSTRUCTION NO. 70 INFRINGEMENT—LIKELIHOOD OF
CONFUSION— FACTORS—*SLEEKCRAFT* TEST................................91

FINAL JURY INSTRUCTION NO. 71 TRADE DRESS DAMAGES IN GENERAL ...........93

FINAL JURY INSTRUCTION NO. 72 TRADE DRESS DAMAGES—PLAINTIFF'S
ACTUAL DAMAGES (15 U.S.C. § 1117(A)) ...........................................94

FINAL JURY INSTRUCTION NO. 73 TRADE DRESS DAMAGES—DEFENDANT'S
PROFITS (15 U.S.C. § 1117(A))..........................................................95

FINAL JURY INSTRUCTION NO. 74 MONETARY REMEDIES—ONLY ONE
    RECOVERY PER ACCUSED SALE.................................................................96


**BREACH OF CONTRACT JURY INSTRUCTIONS** ............................................**97**

FINAL JURY INSTRUCTION NO. 75 BREACH OF CONTRACT—OBLIGATION TO
    LICENSE PATENTS ON FRAND TERMS ...............................................98

FINAL JURY INSTRUCTION NO. 76 BREACH OF CONTRACT—OBILGATION TO
    TIMELY DISCLOSE INTELLECTUAL PROPERTY RIGHTS ("IPR")......................99


**ANTITRUST JURY INSTRUCTIONS**........................................................**100**

FINAL JURY INSTRUCTION NO. 77 MONOPOLIZATION—ELEMENTS .......................101

FINAL JURY INSTRUCTION NO. 78 MONOPOLIZATION—RELEVANT MARKET......102

FINAL JURY INSTRUCTION NO. 79 MONOPOLIZATION—EXISTENCE OF
    MONOPOLY POWER ..................................................................103

FINAL JURY INSTRUCTION NO. 80 MONOPOLIZATION—WILLFUL
    ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE
    ACTS .................................................................................105

FINAL JURY INSTRUCTION NO. 81 MONOPOLIZATION—ANTICOMPETITIVE
    BEHAVIOR IN STANDARD-SETTING ...............................................106

FINAL JURY INSTRUCTION NO. 82 MONOPOLIZATION—SAMSUNG'S INTENT ......107

FINAL JURY INSTRUCTION NO. 83 MONOPOLIZATION—INTERSTATE
    CONDUCT.............................................................................108

FINAL JURY INSTRUCTION NO. 84 MONOPOLIZATION—INJURY AND
    DAMAGES ...........................................................................109

**United States District Court**
For the Northern District of California

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# GENERAL CIVIL INSTRUCTIONS

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 1
# DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

*United States District Court*
*For the Northern District of California*

**FINAL JURY INSTRUCTION NO. 2**
**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 3**
**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 4**
**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

**United States District Court**
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 5**
**WHAT IS EVIDENCE**

The trial is now over.  The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits which are received into evidence; and

      3. any facts to which the lawyers have agreed.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 6
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits that were received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are all intended to help you interpret the evidence. But these arguments and statements are not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 7
## EVIDENCE FOR LIMITED PURPOSE

Some evidence may have been admitted for a limited purpose only.  You must consider it only for that limited purpose and for no other.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 8**
**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

Certain charts and slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 9
## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  You may use those charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them only such weight as you think they deserve.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 10**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 11**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness said, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

In considering the testimony of any witness, you may take into account:

>    (1) the opportunity and ability of the witness to see or hear or know the things testified to;

>    (2) the witness's memory;

>    (3) the witness's manner while testifying;

>    (4) the witness's interest in the outcome of the case and any bias or prejudice;

>    (5) whether other evidence contradicted the witness's testimony;

>    (6) the reasonableness of the witness's testimony in light of all the evidence; and

>    (7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 12
## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 13**
**TAKING NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 14
## DEPOSITION IN LIEU OF LIVE TESTIMONY

You heard some witnesses testify by deposition. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 15
## USE OF INTERROGATORIES OF A PARTY

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 16**
**EXPERT OPINION**

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**FINAL JURY INSTRUCTION NO. 17**
**USE OF DEVICES DURING DELIBERATIONS**


**<u>Device Handling Directions</u>**


The physical devices you received are evidence in this trial.


You may use them in your deliberations, and may connect to the Internet through the Web Browser application, but must not alter or modify the devices in any way.


Some of the devices have SIM cards in their packaging. These SIM cards are not to be inserted into the phones.


Some of the devices have a mobile data connection, and you will not need to take any additional action to use the Web Browser application.


Others must first be connected to the Court's Wi-Fi network to access the Internet.


Once connected, you must decline any software update notifications that may be presented to you.


You also must not download any content, such as apps, music, photographs, or games, to the devices.

*Connecting to the Internet*

To connect a device to the Court's Wi-Fi network, select "USDCSJ01" from the list of available wireless networks, as depicted below.



From the Applications menu, select the Web Browser application.



5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

From the Court's Wi-Fi log in page, scroll to the bottom and click on the blue "Connect!" button.

5:11-CV-01846-LHK
**FINAL JURY INSTRUCTIONS**

*United States District Court*
*For the Northern District of California*

*Declining System Update Notifications*

Some devices may display a "System update" notification like the ones below.

 

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS



If you see such a screen, you must decline the request to update the system.  Select "Install later" or press the "home" or "back" button to exit the notification screen.



5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 18
## SUMMARY OF CONTENTIONS

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously explained, Apple seeks money damages from Samsung Electronics Company ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA"), for allegedly infringing claim 19 of the '381 patent, claim 8 of the '915 patent, claim 50 of the '163 patent, and the D'889, D'087, D'677, and D'305 patents. Apple also argues that SEC actively induced SEA and STA to infringe the patents. Apple also contends that Samsung's infringement has been willful.

Samsung denies that it has infringed the asserted claims of Apple's patents and argues that, in addition, those claims are invalid. Invalidity is a defense to infringement.

Samsung has also brought claims against Apple for patent infringement. Samsung seeks money damages from Apple for allegedly infringing the '941, '516, '711, '460, and '893 patents by making, importing, using, selling and/or offering for sale Apple's iPhone, iPad and iPod products that Samsung argues are covered by claims 10 and 15 of the '941 patent, claims 15 and 16 of the '516 patent, claim 9 of the '711 patent, claim 1 of the '460 patent, and claim 10 of the '893 patent. Samsung also contends that Apple's infringement has been willful.

Apple denies that it has infringed the claims asserted by Samsung and argues that the claims asserted by Samsung are invalid, and for the '516 and '941 patents, exhausted due to Samsung's license to Intel and also unenforceable. Invalidity, exhaustion, and unenforceability are defenses to infringement. Apple also contends that, by asserting its "declared essential" patents against Apple, Samsung has violated the antitrust laws and breached its contractual obligations to timely disclose and then license these patents on fair and reasonable terms.

For each party's patent infringement claims against the other, the first issue you will have to decide is whether the alleged infringer has infringed the claims of the patent holder's patents and whether those patents are valid. If you decide that any claim of either party's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the patent holder to compensate for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

To resolve Apple's claims regarding Samsung's "declared essential" patents, you will need to make a finding as to whether Samsung violated the antitrust laws and whether Samsung breached its contractual obligations. If you decide that Samsung violated the antitrust laws or breached its contractual obligations, you will then need to decide what money damages to award to Apple.

Apple accuses Samsung of diluting Apple's Registered Trade Dress No. 3,470,983. This trade dress relates to the iPhone. Apple also accuses Samsung of diluting two unregistered trade dresses relating to the iPhone. Finally, Apple claims that Samsung has diluted and infringed its unregistered trade dress relating to the iPad.

For each of Apple's trade dress dilution and infringement claims, the first issue you will have to decide is whether the Apple trade dress is protectable (or valid). An asserted trade dress is only protectable if the trade dress design as a whole, as opposed to its individual features standing alone, is both distinctive and non-functional.

For Apple's trade dress dilution claims, the next issues you will decide are whether Apple's trade dress was famous before Samsung started selling its accused products, and whether Samsung's

accused products are likely to cause dilution of the asserted Apple trade dresses by impairing their distinctiveness.

Apple's trade dress infringement claim will require you to resolve different issues. You will need to determine whether Apple's trade dress had acquired distinctiveness before Samsung started selling its accused products, and whether Samsung's accused products are likely to cause confusion about the source of Samsung's goods.

If you decide that any Apple trade dress is both protectable and has been infringed or willfully diluted by Samsung, you will then need to decide the money damages to be awarded to Apple.

Samsung denies that it has infringed or diluted any Apple trade dress and argues that each asserted trade dress is not protectable. If a trade dress is not protectable, that is a defense to infringement and dilution.

**United States District Court**
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 19
## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

31

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 20**
**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 21
## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

United States District Court
For the Northern District of California

**UTILITY PATENT JURY INSTRUCTIONS**

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 22
## UTILITY PATENTS—INTERPRETATION OF CLAIMS

Before you decide whether Apple or Samsung has infringed the claims of the other side's utility patents or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the utility patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

- **U.S. Patent No. 7,469,381**

The term "displaying" means "showing or revealing to the viewer."

The term "electronic document" means "a document stored in a digital format." An "electronic document" includes, but is not limited to, a web page; a digital image; a word processing, spreadsheet or presentation document; or a list of items in a digital format. An electronic document need not be stored in a single file.

The term "first direction" does not require a strictly linear finger movement.

The term "edge of the electronic document" has its plain and ordinary meaning. An edge of an electronic document is not limited to an external edge and may be internal.

- **U.S. Patent No. 7,844,915**

The term "invokes" means "causes" or "causes a procedure to be carried out."

- **U.S. Patent No. 7,698,711**

The term "applet" means "an application designed to run within an application module that need not be operating system-independent."

*       *       *

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 23
## UTILITY PATENTS—INFRINGEMENT BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether either Apple or Samsung (or both) has proven that the other side has infringed one or more of the asserted claims of the asserted utility patents.  To prove infringement of any claim, the patent holder must persuade you by a preponderance of the evidence that the alleged infringer has infringed that claim.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 24
## UTILITY PATENTS—DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Samsung and/or Apple has made, used, sold, offered for sale, or imported within the United States a product or method covered by any of the asserted claims of the other side's utility patents. If Samsung or Apple has done so, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused Samsung and/or Apple products or methods infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both side's commercial products. However, in deciding the issue of utility patent infringement you may not compare the Samsung and Apple commercial products to each other. Rather, you must compare the accused Samsung products to the claims of the Apple utility patents, and the accused Apple products or methods to the claims of the Samsung utility patents.

Whether or not Samsung or Apple knew its products or methods infringed or even knew of the other side's patents does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

**United States District Court**
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 25**
**UTILITY PATENTS—DIRECT INFRINGEMENT**

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis:

The location of the sale depends on many factors, and you may find that the sale occurred in several places. A sale occurs wherever the "essential activities" of the sale take place. The essential activities include, for example, negotiating the contract and performing obligations under the contract.

**FINAL JURY INSTRUCTION NO. 26**
**UTILITY PATENTS—LITERAL INFRINGEMENT**

To decide whether each accused Samsung and Apple product or method literally infringes a claim of an asserted patent, you must compare the product or method with the patent claim and determine whether every requirement of the claim is included in that product or method. If so, the Samsung or Apple product or method in question literally infringes that claim. If, however, a particular Samsung or Apple product or method does not have every requirement in the patent claim, that product or method does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in the accused product or method. The fact that a particular accused Samsung or Apple product or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

United States District Court
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 27**
**UTILITY PATENTS—INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you decide that an accused Samsung product does not literally infringe an asserted Apple utility patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents." If you decide that an accused Apple product or method does not literally infringe claim 1 of Samsung's '460 patent, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the product or method can infringe an asserted utility patent claim if it includes parts or software instructions that are identical or equivalent to the requirements of the claim. If the product or method lacks a part or software instructions that is identical or equivalent to even one requirement of the asserted utility patent claim, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted utility patent claim and decide whether the product or method has either a part or software instructions that are identical or equivalent to that individual claim requirement.

A product part or software instructions are equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or software instructions and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the utility patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a product part or software instructions are not substantial is to consider whether, as of the time of the alleged infringement, the part or software instructions performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product or method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or software instructions with the claimed requirement. The known interchangeability between the claim requirement and the part or software instructions of the product or method is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part or software instructions and the claim requirement is not substantial. The fact that a part or software instructions of the product or method performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

United States District Court
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 28**
**UTILITY PATENT INFRINGEMENT OF '460 METHOD CLAIM**

In this case, Samsung asserts that Apple infringes claim 1 of the '460 patent which is known as a method claim. Method claims are commonly drafted by describing the method as comprising certain steps followed by a list of actions that comprise the method that is claimed.

As I've already instructed you, if the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open method claim is infringed as long as every step in the claim is performed by the user. The fact that the user may perform additional steps will not avoid infringement, as long as the user performs every step set forth in the method claim.
Absent language specifying a specific order in which the steps are to be performed, the steps need not be performed in sequential order to find infringement.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 29
## UTILITY PATENTS—INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether each party has proven that claims of the other side's utility patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, the alleged infringer must persuade you by clear and convincing evidence that the claim is invalid.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 30
## UTILITY PATENTS—WRITTEN DESCRIPTION REQUIREMENT

A utility patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time.  The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim.  A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

# FINAL JURY INSTRUCTION NO. 31
## UTILITY PATENTS—ANTICIPATION

A utility patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that either party can show that a patent claim was not new:

– If the claimed invention was already publicly known or publicly used by others in the United States before the date of conception of the claimed invention;

– If the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception of the claimed invention. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

– If the claimed invention was already made by someone else in the United States before the date of conception of the claimed invention, if that other person had not abandoned the invention or kept it secret;

If the patent holder and the alleged infringer dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor. If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it, and (b) continued to work diligently to reduce it to practice. A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a patent application filed with the PTO.

– If the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the patent holder's application filing date or the date of conception of the claimed invention.

Since certain of them are in dispute, you must determine dates of conception for the claimed inventions and prior inventions. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another, or other forms of evidence presented at trial.

# FINAL JURY INSTRUCTION NO. 32
## UTILITY PATENTS—STATUTORY BARS

A utility patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways either side can show that the patent application was not timely filed:

> – If the claimed invention was already patented or described in a printed publication anywhere in the world more than one year before the effective filing date of the patent application. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

> – If the claimed invention was already being openly used in the United States more than one year before the effective filing date of the patent application and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

> – If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, more than one year before the effective filing date of the patent application;

> – If the patent holder had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field looking at the reference to make and use the claimed invention.

**United States District Court**
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 33
## UTILITY PATENTS—OBVIOUSNESS

Not all innovations are patentable.  A utility patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of invention.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

> (1)    the levels of education and experience of persons working in the field;
>
> (2)    the types of problems encountered in the field; and
>
> (3)    the sophistication of the technology.

Second, you must decide the scope and content of the prior art.  The parties disagree as to whether certain prior art references should be included in the prior art you use to decide the validity of claims at issue.  In order to be considered as prior art to a particular patent at issue here, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

> (1)    commercial success of a product due to the merits of the claimed invention;
>
> (2)    a long felt need for the solution provided by the claimed invention;
>
> (3)    unsuccessful attempts by others to find the solution provided by the claimed invention;
>
> (4)    copying of the claimed invention by others;
>
> (5)    unexpected and superior results from the claimed invention;
>
> (6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and
>
> (7)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it.

The presence of any of factors 1-6 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of factor 7 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the

relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether the alleged infringer has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

**United States District Court**
For the Northern District of California

### FINAL JURY INSTRUCTION NO. 34
### PATENT EXHAUSTION

I will now instruct you on how to decide Apple's defense of patent exhaustion.  Apple contends that Samsung is barred from enforcing the '516 and '941 patents against Apple's accused iPhone and iPad products because they incorporate baseband chips that Intel sold to Apple with authorization from Samsung.

To prevail on the defense of patent exhaustion, Apple must prove that the following is more likely true than not:

> **First**, that Intel was authorized to sell the baseband chips under the terms of the license agreement between Samsung and Intel;

> **Second**, that the sales were made in the United States.  The location of the sale depends on many factors, and you may find that the sale occurred in several places.  A sale occurs wherever the "essential activities" of the sale take place.  The essential activities include, for example, negotiating the contract and performing obligations under the contract; and

> **Third**, that, if the accused products infringe, it is because the baseband chips substantially embody the '516 and/or '941 patents.  The baseband chips embody the relevant patent if they include all the inventive aspects of the patented device.

Apple must prove all three of these elements to prevail on this defense of patent exhaustion.   If Apple does not prove any one of these elements, you must reject Apple's affirmative defense and find for Samsung on this issue.  If you find that Apple has proven all three elements, you must find for Apple on this issue.

# FINAL JURY INSTRUCTION NO. 35
## UTILITY PATENT DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages for claims of utility patent infringement. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that either party infringed any valid and enforceable claim of the other side's patents, you must then determine the amount of money damages to be awarded to the patent holder to compensate it for the infringement.

The amount of those damages must be adequate to compensate the patent holder for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Each patent holder has the burden to persuade you of the amount of its damages. You should award only those damages that the patent holder proves it suffered by a preponderance of the evidence. While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Neither patent holder is entitled to damages that are remote or speculative.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 36
## UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY

In this case, Apple seeks to recover lost profits for some of Samsung's sales of allegedly infringing products, and a reasonable royalty on the rest of Samsung's allegedly infringing sales. Samsung does not seek lost profits for infringement of its utility patents.

To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America made of the infringing products. Apple must show the share of Samsung's sales that it would have made if the infringing products had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented feature of the infringing products. That is, you must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 37
## UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER

Apple is entitled to lost profits if it proves all of the following:

    (1)    that there was demand for the patented products;

    (2)    that there were no non-infringing substitutes for each of the infringing products, or, if there were, the number of the sales of each product made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America that Apple would have made despite the availability of other non-infringing substitutes.  An alternative may be considered available as a potential substitute even if it was not actually on sale during the infringement period.  Factors suggesting that the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available.  Factors suggesting that the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Samsung had to design or invent around the patented technology to develop an alleged substitute;

    (3)    that Apple had the manufacturing and marketing capacity to make any infringing sales actually made by Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America and for which Apple seeks an award of lost profits; and

    (4)    the amount of profit that Apple would have made if Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America had not infringed.

United States District Court
For the Northern District of California

51

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 38**
**UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT**

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 39**
**UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products. You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**FINAL JURY INSTRUCTION NO. 40**
**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

Both Apple and Samsung seek a reasonable royalty for the infringement of their respective utility patents.

If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits damages.

Samsung does not make a claim for lost profits. Samsung should be awarded a reasonable royalty for all infringing Apple sales.

United States District Court
For the Northern District of California

**United States District Court**
**For the Northern District of California**

### FINAL JURY INSTRUCTION NO. 41
### UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty." To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)    The duration of the patent and the term of the license.

(8)    The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 42
## UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America has both infringed and been notified of the patent or patents it infringed.

If you find that Apple sells products that include the claimed inventions but has not marked those products with the patent numbers, you must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which each Samsung entity had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the '381 and '915 patents no later than April 15, 2011, and for the '163 patent no later than June 16, 2011.

On the other hand, if you find that Apple does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

> If the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> If the patent was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

With respect to Samsung's '460 patent, the damages you may award Samsung for any infringement should be calculated as of August 18, 2009, because Samsung is asserting only method claims from that patent.

With respect to Samsung's '516, '711, '893, and '941 patents, damages that Samsung may be awarded commence on the date that Apple has both infringed and been notified of the patent or patents it infringed.

If you find that Samsung sells products that include its claimed inventions from these patents but has not marked those products with the patent numbers, you must determine the date that Apple received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which Apple had notice of Samsung's claims of infringement based on your evaluation of the evidence, Samsung's claims provided Apple such notice by no later than June 16, 2011.

On the other hand, if you find that Samsung does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

> If the patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> If the patent was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

United States District Court
For the Northern District of California

# DESIGN PATENT JURY INSTRUCTIONS

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 43
## DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS

Before you decide whether Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America have infringed one or more of Apple's asserted design patents, or whether the design patents are invalid, you will have to understand the design patent claims.

Unlike utility patents, a design patent can only have one claim. That claim covers all the figures in the patent. It is permissible to illustrate more than one embodiment of a design in a single design patent application. Each design patent contains multiple drawings to illustrate the claimed design. The scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept, and is not limited to isolated features of the drawings. All matter depicted in solid lines contributes to the overall appearance of the design.

It is my job as a judge to interpret for you what is claimed by the patents. You must accept my interpretations as correct. My interpretations should not be taken as an indication that I have an opinion one way or another regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make. When considering the design patents, you should view certain features in the drawings in this way:

- **D'677 Patent**

The D'677 Patent claims the ornamental design of an electronic device as shown in Figures 1-8. The broken lines in the D'677 Patent constitute unclaimed subject matter. The use of solid black surface shading on the D'677 Patent represents the color black. The use of oblique line shading on the D'677 Patent is used to show a transparent, translucent, or highly polished or reflective surface.

- **D'087 Patent**

The D'087 Patent claims the ornamental design of an electronic device as shown in Figures 1-48. The broken lines in the D'087 Patent constitute unclaimed subject matter. Thus, the D'087 Patent claims the front face, a bezel encircling the front face of the patented design that extends from the front of the phone to its sides, and a flat contour of the front face, but does not claim the rest of the article of manufacture.

- **D'889 Patent**

The D'889 Patent claims the ornamental design of an electronic device as shown in Figures 1-9. The broken lines depicting the human figure in Figure 9 do not form a part of the claimed design. The other broken lines in the other figures are part of the claimed design. The D'889 also includes oblique line shading on several of the figures. The oblique line shading in Figures 1-3 and Figure 9 depicts a transparent, translucent, or highly polished or reflective surface from the top perspective view of the claimed design, the top view of the claimed design, and the bottom perspective view of the claimed design.

- **D'305 Patent**

59

1  The D'305 Patent claims the ornamental design for a graphical user interface for a display screen
2  or portion thereof, as shown in Figures 1-2.  The broken line showing of a display screen in both
   views forms no part of the claimed design.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

60

## FINAL JURY INSTRUCTION NO. 44
## DESIGN PATENT INFRINGEMENT—BURDEN OF PROOF

To prove that any Samsung entity infringed any of Apple's design patents, Apple must prove by a preponderance of the evidence that the Samsung entity has infringed the patent.

**FINAL JURY INSTRUCTION NO. 45**
**DESIGN PATENTS—INFRINGEMENT GENERALLY**

I will now instruct you as to the rules you must follow when deciding whether Apple has proven that one or more of the Samsung entities (Samsung Electronics America, Samsung Telecommunications America, and Samsung Electronics Company) has directly infringed the D'677, D'087, D'305 and/or D'889 design patents.

As with utility patents, patent law gives the owner of a valid design patent the right to exclude others from importing, making, using, offering to sell, or selling the patented designs within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent.

In deciding whether a sale has taken place "within the United States," you may find the following guidelines helpful to your analysis: The location of the sale depends on many factors, and you may find that the sale occurred in several places. A sale occurs wherever the "essential activities" of the sale take place. The essential activities include, for example, negotiating the contract and performing obligations under the contract.

Apple bears the burden of proving by a preponderance of the evidence that each device infringes each separate patent. Therefore, you, the jury, must determine infringement for each patent separately, considering each individual device separately.

# FINAL JURY INSTRUCTION NO. 46
## DESIGN PATENTS—DIRECT INFRINGEMENT

To determine direct infringement of a design patent, you must compare the overall appearances of the accused design and the claimed design.

If you find by a preponderance of the evidence that the overall appearance of an accused Samsung design is substantially the same as the overall appearance of the claimed Apple design patent, and that the accused design was made, used, sold, offered for sale, or imported within the United States, you must find that the accused design infringed the claimed design.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused Samsung products. You should consider any perceived similarities or differences between the patented and accused designs. Minor differences should not prevent a finding of infringement.

This determination of whether two designs are substantially the same will benefit from comparing the two designs with prior art. You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement.

You may find the following guidelines helpful to your analysis:

1.  The placement and ornamentation of a logo may alter the overall design. However, the use of a mark or logo to identify the source of an otherwise infringing design will not avoid infringement.

2.  When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

3.  If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same.

4.  If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

5.  You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same.

Whether Samsung knew its products infringed or even knew of Apple design patents does not matter in determining infringement.

**FINAL JURY INSTRUCTION NO. 47**
**DESIGN PATENT DIRECT INFRINGEMENT—COMPARISONS**

In deciding the issue of infringement you must compare Samsung's accused products to the design patents. In addition, you have heard evidence about certain Apple products and models. If you determine that any of Apple's products or models are substantially the same as an Apple patent design, and that the product or model has no significant distinctions with the design, you may compare the product or model directly to the accused Samsung products. This may facilitate your determination of whether the accused products infringe the Apple patent design. If you determine that a particular Apple product or model does not embody a patented design, you may not compare it to the accused devices.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 48**
**DESIGN PATENTS—INVALIDITY BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Samsung has proven that the Apple design patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any design patent, Samsung must persuade you by clear and convincing evidence that the design patent is invalid.

United States District Court
For the Northern District of California

## FINAL JURY INSTRUCTION NO. 49
## DESIGN PATENTS—PRIOR ART

Before I describe how to assess whether Apple's design patents are invalid, I will instruct you about documents and things called "prior art."

In general, prior art includes things that existed before the claimed design, that were publicly known in this country, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.

Specifically, prior art includes any of the following items received into evidence during trial:

- If the claimed design was already publicly known or publicly used by others in the United States before the date of invention of the claimed design;

- If the claimed design was already patented or described in a printed publication anywhere in the world before the date of invention of the claimed design. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- If the claimed design was already described in another issued U.S. patent or published U.S. patent application that was based on an application filed before the date of invention of the claimed design;

- If the claimed design was already made by someone else in the United States before the date of invention, if that other person had not abandoned, suppressed, or concealed his/her invention.

Since the date of invention of the D'677 and D'087 patents is in dispute in this case, you must determine whether Apple has proved the dates these designs were invented. The date of invention occurs when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial. If you determine that Apple has not proved when the patents were invented, you must assume that the date of invention of the patented designs was not until the filing date of the patent.

The Apple design patents have the following filing dates:

- D'677 patent:  January 5, 2007

- D'087 patent:  January 5, 2007

- D'889 patent:  March 17, 2004

- D'305 patent:  June 23, 2007

66

# FINAL JURY INSTRUCTION NO. 50
## DESIGN PATENTS—ANTICIPATION

A design patent is invalid if it is not new.  If a design patent is not new we say it is "anticipated" by a prior art reference.  For a claimed design patent to be invalid because it is anticipated, Samsung must prove by clear and convincing evidence that there is a single prior art reference that is substantially the same as the claimed design patent.

The same standard of substantial similarity that applied to infringement also applies to anticipation.  That is, the single prior art reference and the claimed design patent are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  You should consider any perceived similarities or differences between the claimed design and prior art reference.  Minor differences should not prevent a finding of anticipation.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 51
## DESIGN PATENTS—OBVIOUSNESS

Even if a design is not anticipated by a single reference, it may still be invalid if the claimed design would have been obvious to a designer of ordinary skill in the field at the time the design was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art. The ultimate conclusion of whether a claimed design is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field of the patent at the time the claimed design was made. In deciding this, you should consider all the evidence from trial, including:

(1)    the levels of education and experience of persons designing articles in the field;

(2)    the types of problems encountered in designing articles in the field; and

(3)    the sophistication of the field.

Second, you must determine if a designer of ordinary skill in these designs would have combined the prior art references or modified a single prior art reference to create the same overall visual appearance as the claimed design. To do this, you must consider whether Samsung has identified a "primary" prior art reference. A "primary" reference must be an actual design which creates basically the same visual impression as the patented design.

If you identify a primary reference, you must then consider whether Samsung has identified one or more "secondary" prior art references. "Secondary" references are other references that are so visually related to the primary reference that the appearance of certain ornamental features in the other references would suggest the application of those features to the primary reference. If you find that there are one or more such secondary references, you must determine if a designer of ordinary skill in these designs would have combined these references to create the same overall visual appearance as the claimed design.

Finally, before deciding the issue of obviousness, you must consider other factors that might show that the designs were not obvious despite the prior art. You may only consider those factors that Apple has established through evidence admitted at trial. No one factor alone is dispositive:

(1)    Were products covered by the claimed design commercially successful due to the appearance of the claimed design?

(2)    Did others copy the claimed design?

(3)    Did the claimed design achieve an unexpectedly superior appearance over the closest prior art?

(4)    Did others in the field praise the claimed design or express admiration for the claimed design?

The presence of any of the factors may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

In deciding whether the claimed design was obvious, keep in mind that a design with several features is not obvious merely because each individual feature was present in prior art designs.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

You must always be careful not to determine obviousness using the benefit of hindsight.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed design was made and should not consider what is known today.

69

# FINAL JURY INSTRUCTION NO. 52
## DESIGN PATENTS—INVALIDITY—LACK OF ORNAMENTALITY

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture. If Samsung proves by clear and convincing evidence that the overall appearance of an Apple patented design is dictated by how the article claimed in the patent works, the patent is invalid because the design is not "ornamental." In other words, the inventor did not "design" anything because in order to achieve the function of the design, it had to be designed that way.

When deciding this, you should keep in mind that design patents must be for articles of manufacture, which by definition have inherent functional characteristics. It is normal that claimed designs perform some function – that does not disqualify them from patent protection.

In determining whether a design is dictated by functionality, you may consider whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

When there are several other designs that achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose. However, this may not be true if the other designs adversely affect the utility of the article.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 53
## DESIGN PATENT DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages for infringement of Apple's design patents. By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that Samsung Electronics America, Samsung Telecommunications America, and/or Samsung Electronics Company infringed any valid Apple design patent, you must then determine the money damages to award Apple. The amount of those damages must be adequate to compensate Apple for the infringement. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

In relation to design patents, Apple can elect to prove either actual damages, known as compensatory damages, or it may elect to prove the defendant's profits as its measure of potential recovery with respect to the sale of each unit of an infringing product. As compensatory damages, Apple may prove either its own lost profits, or a reasonable royalty for the design patent. Apple is not entitled to recover both compensatory damages and defendant's profits on the same sale.

Apple has the burden to prove that Apple's calculation of damages is correct by a preponderance of the evidence. While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Apple is not entitled to damages that are remote or speculative.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 54
## DESIGN PATENT INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS

In this case, Apple seeks Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's profits from sales of products alleged to infringe Apple's design patents.  If you find infringement by any Samsung defendant and do not find Apple's design patents are invalid, you may award Apple that Samsung defendant's total profit attributable to the infringing products.

The "total profit" of Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America means the entire profit on the sale of the article to which the patented design is applied, and not just the portion of profit attributable to the design or ornamental aspects covered by the patent.  "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

If you find infringement by any Samsung defendant, Apple is entitled to all profit earned by that defendant on sales of articles that infringe Apple's design patents.  Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of the infringer's receipts from the sale of articles using any design found infringed.  Apple has the burden of proving the infringing defendant's gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods.  Other costs may be included as deductible expenses if they are directly attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense.  Samsung has the burden of proving the deductible expenses.

# [DISPUTED] FINAL JURY INSTRUCTION NO. 55
## DESIGN PATENT DAMAGES—LOST PROFITS

Apple may alternatively recover compensatory damages in the form of lost profits. As previously explained, Apple may not recover both Samsung's profits and compensatory damages on each sale of an infringing product. In assessing Apple's right to recover lost profits for Samsung Electronics Company's, Samsung Electronics America's, and Samsung Telecommunications America's infringement of its design patents, you should apply the same rules I already explained in the context of lost profits for infringement of Apple's utility patents. Those Instructions are set out in Jury Instruction Nos. 36, 37, 38, and 39.

Wherever in those Instructions I referred to Apple's utility patents, you should now focus on Apple's design patents. Wherever in those Instructions I referred to the patented invention, you should now focus on the patented design. Wherever in those Instructions I referred to patented products or products covered by a patent claim, you should now focus on products or articles that use or embody the patented design.

.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 56
## DESIGN PATENT DAMAGES—REASONABLE ROYALTY

If Apple has not proved its claim for lost profits or has not proved its claim to Samsung's profits, then Apple should be awarded a reasonable royalty for all infringing sales by Samsung Electronics America, Samsung Telecommunications America, and/or Samsung Electronics Company.  In no event should the damages you award Apple for design patent infringement be less than a reasonable royalty.

The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 41 for utility patent infringement.  However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

**FINAL JURY INSTRUCTION NO. 57**
**DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

Damages that Apple may be awarded by you commence on the date that Samsung Electronics Company, Samsung Electronics America and/or Samsung Telecommunications America has both infringed and been notified of the design patent or patents it infringed.

If you find that Apple sells products that include the claimed designs but has not marked those products with the patent numbers, you must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

While you may identify an earlier date by which each Samsung entity had notice of Apple's claims of infringement based on your evaluation of the evidence, Apple's lawsuit provided Samsung such notice for the D'677 patent by no later than April 15, 2011, and for the D'305, D'889 and D'087 patents by no later than June 16, 2011.

On the other hand, if you find that Apple does not sell products covered by a patent, then damages begin without the requirement for actual notice under the following circumstances:

> For each infringed patent that was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

> For each infringed patent that was granted after the infringing activity began as determined by you, damages should be calculated as of the date the patent issued.

United States District Court
For the Northern District of California

**INDUCEMENT AND WILLFULNESS JURY INSTRUCTIONS**

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# JURY INSTRUCTION NO. 58
## UTILITY AND DESIGN PATENTS—INDUCING PATENT INFRINGEMENT

Apple claims that Samsung's Korean parent SEC actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility and design patents.  Samsung claims that Apple actively induced third parties to infringe Samsung's '460 patent.

In order for there to be inducement of infringement by either SEC or Apple, someone else must directly infringe the asserted patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the alleged infringer must:

    1.  have intentionally taken action that actually induced direct infringement by another;

    2.  have been aware of the asserted patent; and

    3.  have known that the acts it was causing would be infringing.

The "knowledge" and "awareness" requirements for inducement can be satisfied by showing that a party was willfully blind.  If SEC or Apple did not know of the existence of the patent in question or that the acts it was inducing were infringing, it can be liable for inducement only if it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that SEC or Apple was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that SEC or Apple took a risk that was substantial and unjustified.

If you find that SEC or Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, SEC or Apple cannot be liable for inducement.

Apple argues that Samsung's Korean parent, SEC, has actively induced its subsidiaries in the United States, STA and SEA, to infringe Apple's utility patents.  Samsung argues that Apple has actively induced third parties to infringe Samsung's utility patents.

**FINAL JURY INSTRUCTION NO. 59**
**UTILITY AND DESIGN PATENTS—WILLFUL PATENT INFRINGEMENT**

In this case, Apple and Samsung both argue that the other side willfully infringed its patents.

To prove willful infringement, each party must first persuade you that the other side infringed a valid and enforceable claim of one or more of its patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, the patent holder must persuade you by clear and convincing evidence that the other side acted with reckless disregard of the patent it infringed.

To demonstrate such "reckless disregard," the patent holder must persuade you that the other side actually knew, or it was so obvious that the other side should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.

> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.

> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent.

United States District Court
For the Northern District of California

# TRADE DRESS JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 60
## TRADE DRESS DILUTION AND INFRINGEMENT—INTRODUCTION

Apple seeks damages against Samsung for diluting Apple's Registered Trade Dress No. 3,470,983, unregistered iPhone 3G trade dress, unregistered combination iPhone trade dress, and unregistered iPad/iPad 2 trade dress. Samsung denies that it diluted Apple's asserted trade dresses and contends the trade dresses are unprotectable and thus invalid.

Apple also seeks damages against Samsung for infringement of Apple's unregistered iPad/iPad 2 trade dress. Samsung denies that it infringed Apple's asserted iPad-related trade dress and, as already stated, contends it unprotectable.

Here are the instructions you must follow in deciding Apple's trade dress dilution and infringement claims.

# FINAL JURY INSTRUCTION NO. 61
## TRADE DRESS DILUTION AND INFRINGEMENT—DEFINITION OF TRADE DRESS
### (15 U.S.C. § 1125(A))

Trade dress is the non-functional physical detail and design of a product, which identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a person presents a product or service to the market, its manner of display.

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements is not essential to the product's use or purpose or does not affect the cost or quality of the product even though certain particular elements of the trade dress may be functional.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product.  In considering the impact of these non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

A person who uses the trade dress of another may be liable for damages.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 62
## TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY

The first step in considering Apple's claims that Samsung diluted and infringed certain of Apple's iPhone and iPad trade dresses is to determine whether or not each asserted trade dress is protectable. You need to make this determination for each of Apple's asserted trade dresses.

You must find that an asserted Apple trade dress is protectable if the trade dress:

> 1.    has acquired distinctiveness through secondary meaning; and

> 2.    is non-functional.

For Apple's registered iPhone trade dress, you must presume the trade dress is both distinctive and non-functional, and thus protectable. Samsung bears the burden of proving by a preponderance of the evidence that Apple's registered iPhone trade dress is either functional or not distinctive. If you find that Samsung has met its burden, you must find the trade dress unprotectable. Otherwise, you must find Apple's registered iPhone trade dress protectable.

For each unregistered iPhone trade dress and for the unregistered iPad trade dress, Apple bears the burden of proving by a preponderance of the evidence that the trade dress is both distinctive and non-functional. If you find that Apple has met its burden, you must find that trade dress is protectable. Otherwise, you must find the trade dress unprotectable.

For each Apple trade dress that you find protectable, resolving whether Samsung has diluted or infringed the trade dress will require you to assess additional questions that I will explain after addressing protectability more fully.

**FINAL JURY INSTRUCTION NO. 63**
**TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY—**
**DISTINCTIVENESS—SECONDARY MEANING**

To be protectable, Apple's trade dresses must have acquired distinctiveness through "secondary meaning." A trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.

For each asserted Apple trade dress, you must find that the preponderance of the evidence shows that a significant number of the consuming public associates the trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether each trade dress has acquired a secondary meaning, consider the following factors:

1. <u>Consumer Perception</u>. Whether the people who purchase smartphones and tablet computers associate the claimed trade dress with Apple;

2. <u>Advertisement</u>. To what degree and in what manner Apple may have advertised featuring the claimed trade dress;

3. <u>Demonstrated Success</u>. Whether Apple has successfully used the claimed trade dress to increase the sales of its products;

4. <u>Extent of Use</u>. The length of time and manner in which Apple has used the claimed trade dress;

5. <u>Exclusivity</u>. Whether Apple's use of the claimed trade dress was exclusive;

6. <u>Copying</u>. Whether Samsung intentionally copied Apple's alleged trade dress; and

7. <u>Actual Confusion</u>. Whether Samsung's use of Apple's alleged trade dress has led to actual confusion among a significant number of consumers.

The presence or absence of any particular factor should not necessarily resolve whether the asserted trade dress has acquired secondary meaning.

Apple has the burden of proving by a preponderance of the evidence that its unregistered trade dresses have acquired a secondary meaning. Samsung has the burden of proving by a preponderance of the evidence that Apple's registered iPhone trade dress has not acquired secondary meaning.

The mere fact that Apple is using the asserted trade dresses does not mean that they have acquired secondary meaning. There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

United States District Court
For the Northern District of California

**FINAL JURY INSTRUCTION NO. 64**
**TRADE DRESS DILUTION AND INFRINGEMENT—PROTECTABILITY—**
**NON-FUNCTIONALITY REQUIREMENT**

A product feature is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality. However, if the feature serves no purpose other than as an assurance that a particular entity made, sponsored or endorsed the product, it is non-functional. A product feature is also non-functional if its shape or form makes no contribution to the product's function or operation.

To determine whether a product's particular shape or form is functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form are essential to the product's use or purpose.

To determine whether a product feature is functional, you may consider the following factors:

    1. The Design's Utilitarian Advantage. In considering this factor, you may examine whether the particular design or product feature yield a utilitarian advantage over how the product might be without that particular design or product feature. If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary it is more likely to be nonfunctional;

    2. Availability of Alternate Designs. In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration. For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative. They must be commercially feasible. The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional;

    3. Advertising Utilitarian Advantage in the Design. In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly. If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional; and

    4. The Design's Method of Manufacture. In considering this factor, you may examine whether the particular design or feature result from a relatively simple or inexpensive method of manufacture. If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

If you find that the preponderance of the evidence shows that the trade dress is essential to the product's use or purpose, or that it affects the product's cost or quality, then you must find the trade dress functional and thus unprotectable.

In addition, if you find that the preponderance of the evidence shows that limiting Apple's competitors' use of the feature would impose a significant non-reputation-related competitive disadvantage, then you must find the trade dress functional and thus unprotectable. However, the fact that the feature contributes to consumer appeal and saleability of the product does not mean that the trade dress is necessarily functional.

United States District Court
For the Northern District of California

Apple has the burden of proving by a preponderance of the evidence that its unregistered trade dresses are non-functional.  Samsung has the burden of proving by a preponderance of the evidence that Apple's registered iPhone trade dress is functional.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 65
## TRADE DRESS DILUTION—ELEMENTS AND BURDEN OF PROOF

Apple contends that Samsung has diluted Apple's asserted iPhone- and iPad-related trade dresses. "Dilution" means a lessening of the capacity of a famous trade dress to identify and distinguish goods or services, regardless of the presence or absence of competition, actual or likely confusion, mistake, deception, or economic injury.

To prove this claim as to any of its asserted trade dresses that you have found is protectable, Apple has the burden of proving each of the following additional elements by a preponderance of the evidence:

   1.     that the asserted Apple trade dress is famous;

   2.     that Samsung began selling its accused products in commerce after Apple's asserted trade dress became famous; and

   3.     that Samsung's accused products are likely to cause dilution of Apple's asserted trade dress.

For any Apple trade dress that you have found is protectable, if you also find that Apple has proved each of these three elements by a preponderance of the evidence, your verdict on dilution with respect to that trade dress should be for Apple.  If Apple has failed to prove any of these elements, your verdict on dilution with respect to that trade dress should be for Samsung.

86

# FINAL JURY INSTRUCTION NO. 66
## TRADE DRESS DILUTION—ELEMENTS—FAME-- TIMING

A trade dress is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods of the trade dress owner.

In determining whether each of Apple's trade dresses is famous, you may consider the following factors. These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether an asserted trade dress is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether the trade dress is famous. You should consider all the relevant evidence in making your determination about whether each iPhone and iPad-related trade dress is famous.

The factors you may consider are:

     1.     the duration, extent and geographic reach of advertising and publicity of the trade dress, whether advertised or publicized by Apple or third parties;

     2.     the amount, volume and geographic extent of sales of goods offered under the trade dress;

     3.     the extent of actual recognition of the trade dress; and

     4.     whether the trade dress was federally registered.

Apple bears the burden of proving by a preponderance of the evidence that each of its trade dresses was famous at the time of Samsung's first commercial sale of its accused products.

For each of its asserted iPhone-related trade dresses, Apple must prove by a preponderance of the evidence that the trade dress was famous by July 15, 2010, the date Samsung first sold a product accused of using the iPhone-related trade dresses.

Apple must prove by a preponderance of the evidence that its asserted iPad-related trade dress was famous by June 8, 2011, the date Samsung first sold a product accused of using the iPad-related trade dress.

**United States District Court**
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 67
## TRADE DRESS DILUTION—ELEMENTS—DILUTION

Dilution by blurring is an association arising from the similarity between the appearance of the defendant's accused products and plaintiff's trade dress that impairs the distinctiveness of the trade dress. Dilution by blurring occurs when a trade dress previously associated with one product loses some of its capacity to identify and distinguish that product. In determining whether the appearance of Samsung's accused products is likely to cause dilution of each asserted Apple trade dress, you may consider all relevant factors, including the following:

1.  the degree of similarity between Samsung's accused products and Apple's trade dress;

2.  the degree of acquired distinctiveness of Apple's trade dress;

3.  the extent to which Apple is engaging in substantially exclusive use of the trade dress;

4.  the degree of recognition of Apple's trade dress;

5.  whether Samsung intended to create an association with Apple's trade dress; and

6.  any actual association between Samsung's accused products and Apple's trade dress.

These factors should be weighed by you given the facts and circumstances of the case.

For each of Apple's asserted trade dresses, Apple bears the burden of proving by a preponderance of the evidence that the accused Samsung products are likely to dilute the trade dress.

**FINAL JURY INSTRUCTION NO. 68**
**INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADE DRESS**
**(15 U.S.C. § 1125(A)(1))**

Apple also claims that Samsung's Galaxy Tab 10.1 tablet computers infringe Apple's iPad-related trade dress. To prove trade dress infringement, Apple bears the burden of proving by a preponderance of the evidence each of the following elements:

1.  Apple's iPad-related trade dress is non-functional. *See* Instruction No. 64 above.

2.  Apple's iPad-related trade dress has acquired distinctiveness through secondary meaning. *See* Instruction No. 63 above.

3.  Samsung used Apple's iPad-related trade dress in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Samsung's goods.

If you find that Apple has proved each of these elements, your verdict should be for Apple. If, on the other hand, Apple has failed to prove any one of these elements, your verdict should be for Samsung.

# FINAL JURY INSTRUCTION NO. 69
## TRADE DRESS INFRINGEMENT—SECONDARY MEANING—TIMING

Apple must prove by a preponderance of the evidence that the asserted iPad-related trade dress acquired secondary meaning before Samsung first sold a product that Apple claims is infringing that trade dress.

If you find that Apple has not proved by a preponderance of the evidence that the asserted iPad-related trade dress acquired secondary meaning before June 8, 2011, then you must find for Samsung.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 70**
**INFRINGEMENT—LIKELIHOOD OF CONFUSION—**
**FACTORS—*SLEEKCRAFT* TEST**
**(15 U.S.C. §§ 1114(1) and 1125(a))**

You must decide whether Samsung's alleged use of Apple's iPad/iPad 2 trade dress in the Samsung Galaxy Tab 10.1 is likely to cause confusion about the source, sponsorship, affiliation, or approval of Samsung's Galaxy Tab 10.1.  Apple must prove by a preponderance of the evidence that a reasonably prudent consumer in the marketplace is likely to be confused about the source of Samsung's Galaxy Tab 10.1.  Apple must show more than simply a possibility of such confusion.  Apple may prove a likelihood of confusion by providing direct evidence of consumer confusion.  Evidence of non-consumer confusion may also be relevant where there is confusion on the part of: (1) potential customers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose confusion could influence consumers.

I will suggest some factors you should consider in deciding whether there is a likelihood of confusion.  The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.  As you consider the likelihood of confusion you should examine the following:

1. <u>Strength or Weakness of Apple's Asserted Trade Dress</u>.  The more the consuming public recognizes Apple's asserted iPad/iPad 2 trade dress as an indication of origin of Apple's goods, the more likely it is that consumers would be confused about the source of Samsung's goods if Samsung uses a similar design or configuration.

2. <u>Samsung's Use of the Trade Dress</u>.  If Samsung and Apple use their designs on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods than otherwise.

3. <u>Similarity of Apple's and Samsung's Designs</u>.  If the overall impression created by Apple's asserted iPad/iPad 2 trade dress in the marketplace is similar to that created by Samsung's designs in appearance, there is a greater chance of likelihood of confusion.

4. <u>Actual Confusion</u>.  If use by Samsung of Apple's asserted iPad/iPad 2 trade dress has led to instances of actual confusion, this suggests a likelihood of confusion.  However actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, Samsung's use of the trade dresses may still be likely to cause confusion.  As you consider whether the design used by Samsung creates for consumers a likelihood of confusion with Apple's products, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion, you may find that there has not been substantial actual confusion.

5. <u>Samsung's Intent</u>.  Knowing use by Samsung of Apple's asserted iPad/iPad 2 trade dress to identify similar goods may show an intent to derive benefit from the reputation of Apple's trade dress, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that Samsung acted knowingly, the use of Apple's trade dress to identify similar goods may indicate a likelihood of confusion.

91

United States District Court
For the Northern District of California

6.   Marketing/Advertising Channels.  If Apple's and Samsung's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.   Purchaser's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the Apple and Samsung products.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 71
## TRADE DRESS DAMAGES IN GENERAL

If you find that Apple has proven by a preponderance of the evidence that Samsung Electronics Company, Samsung Electronics America, and/or Samsung Telecommunications America have diluted or infringed upon any of Apple's trade dresses, then there are two forms of monetary relief to which Apple may be entitled: Apple's actual damages or each Samsung entity's profits.

In determining the amount of money to award Apple for its trade dress claims, you must determine the date on which damages began to accrue. Damages for trade dress dilution and trade dress infringement of Apple's unregistered trade dresses started on the date that the diluting or infringing conduct of an unregistered Apple trade dress began. You may award Apple money damages for all violations that occurred on the date the products that diluted or infringed each unregistered Apple trade dress were released and any date after that. For Apple's registered trade dress claim, Apple has the burden of proving by a preponderance of the evidence that the Samsung entities had either statutory or actual notice that the plaintiff's trade dress was registered. You may award Apple money damages for all violations that occurred on the date of actual notice and any date after that.

You should not award Apple monetary relief for any of its dilution claims unless Apple proves by a preponderance of the evidence that Samsung's acts of dilution were willful. If you determine that Samsung's dilution was not willful, you do not need to assess monetary damages for that claim.

Proof of damages to a certainty is not required. However, the burden is on Apple to show any damages to a reasonable certainty, and awarded damages may not be speculative.

In order for Apple to recover damages for registered trade dress claims, Apple has the burden of proving by a preponderance of the evidence that each Samsung entity had either statutory or actual notice that Apple's trade dress was registered.

Each Samsung entity had statutory notice if:

      1.   Apple displayed with the trade dress the words "Registered in U.S. Patent and Trademark Office,"

      2.   Apple displayed with the trade dress the words "Reg. U.S. Pat. & Tm. Off.," or

      3.   Apple displayed the trade dress with the letter R enclosed within a circle, thus ®.

**FINAL JURY INSTRUCTION NO. 72**
**TRADE DRESS DAMAGES—PLAINTIFF'S ACTUAL DAMAGES**
**(15 U.S.C. § 1117(a))**

If you find for Apple on its trade dress infringement and dilution claims, you must determine Apple's actual damages. Apple has the burden of proving by a preponderance of the evidence the actual damages it has suffered. Damages means the amount of money which will reasonably and fairly compensate Apple for any injury you find was caused by any Samsung entity's infringement or dilution of Apple's registered or unregistered trade dresses.

You should consider the profits that Apple would have earned but for Samsung's infringement and/or dilution. Such lost profits are determined by deducting all expenses from gross revenue.

United States District Court
For the Northern District of California

# FINAL JURY INSTRUCTION NO. 73
## TRADE DRESS DAMAGES—DEFENDANT'S PROFITS
### (15 U.S.C. § 1117(a))

In addition to actual damages, Apple is entitled to any profits earned by the Samsung entities that are attributable to willful infringement or willful dilution, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is each of the Samsung entity's sales of products that infringed or diluted Apple's trade dresses. Apple has the burden of proving the gross revenues of each Samsung entity's sales of products that infringed or diluted Apple's trade dresses by a preponderance of the evidence.

Expenses are all operating, overhead, and production costs incurred in producing the gross revenue. Each Samsung entity has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed or diluted trade dress by a preponderance of the evidence.

Unless you find that the Samsung entities have proven that a portion of the profit from the sale of its products that infringed or diluted any Apple trade dress is attributable to factors other than use of the trade dress, you shall find that the total profit is attributable to the infringement or dilution.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 74
## MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE

You should award any remedy to which a party has proven it is entitled with respect to each sale of an accused smart phone or tablet, except that you should not award a party twice for the same sale of any accused smartphone or tablet. This means that if you award infringer's profits under trade dress or design patent infringement for the sale of a certain number of accused smartphones or tablets, you may not also award reasonable royalties or lost profits for those same sales. If you award reasonable royalties or lost profits for the sale of a certain number of accused smartphones or tablets, you may not award infringer's profits as to those accused smartphones or tablets.

You do not have to use the same theory to calculate damages for every sale, however. For example, an award may be split between lost profits for some sales and a reasonable royalty for the remainder of sales of a product that infringes a patent and/or infringes or dilutes a trade dress.

For any sale where you measure damages by a reasonable royalty or lost profits, you may include royalty amounts or lost profits for each patent that you find valid and infringed by the sale.

If a sale is awarded one form of monetary recovery, that same sale cannot be awarded another form of monetary recovery.

**BREACH OF CONTRACT JURY INSTRUCTIONS**

97

**FINAL JURY INSTRUCTION NO. 75**
**BREACH OF CONTRACT—OBLIGATION TO LICENSE PATENTS ON FRAND**
**TERMS**

I will now instruct you on how to determine whether Apple has proved its breach of contract claim. A breach is an unjustified failure to perform a contract.

Samsung has submitted declarations to ETSI in which Samsung identified the '516 and '941 patents, or related patents or applications, as IPRs that it believed may be considered essential to the UMTS standard. In those declarations, Samsung declared that it would be prepared to grant irrevocable licenses under those IPRs on fair, reasonable and nondiscriminatory ("FRAND") terms and conditions to the extent the IPRs remain essential to the UMTS standard. In order to demonstrate breach of this provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

**FINAL JURY INSTRUCTION NO. 76**
**BREACH OF CONTRACT—OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL**
**PROPERTY RIGHTS ("IPR")**

The November 1997 ETSI IPR Policy provides:

> Each MEMBER shall use its reasonable endeavours to timely inform
> ETSI of ESSENTIAL IPRs it becomes aware of.  In particular, a
> MEMBER submitting a technical proposal for a STANDARD shall,
> on a bona fide basis, draw the attention of ETSI to any MEMBER's
> IPR which might be ESSENTIAL if that proposal is adopted.

In order to demonstrate breach of this contract provision, Apple must prove that all of the conditions for performance of this obligation occurred, that Samsung did not fulfill this obligation, that Apple was harmed, and that this harm was caused by Samsung's failure to perform this obligation.

United States District Court
For the Northern District of California

**ANTITRUST JURY INSTRUCTIONS**

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 77**
**MONOPOLIZATION—ELEMENTS**

I will now instruct you on how to decide whether Apple has proven that Samsung has violated the federal antitrust laws. Apple alleges that it was injured by Samsung's unlawful monopolization of markets consisting of technologies that competed to perform functions included in the UMTS standard by 3GPP. To prevail on this claim, Apple must prove each of the following elements by a preponderance of the evidence:

> **First**, that the alleged market is a relevant antitrust market;

> **Second**, that Samsung possessed monopoly power in that market;

> **Third**, that Samsung "willfully" acquired its monopoly power in that market by engaging in anticompetitive conduct;

> **Fourth**, that Samsung's conduct occurred in or affected interstate commerce; and

> **Fifth**, that Apple was injured in its business or property because of Samsung's anticompetitive conduct.

If you find that Apple has failed to prove any of these elements, then you must find for Samsung and against Apple on this claim. If you find that Apple has proved each of these elements by a preponderance of the evidence, then you must find for Apple and against Samsung on this claim.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 78
## MONOPOLIZATION—RELEVANT MARKET

Apple must prove by a preponderance of the evidence that Samsung had monopoly power in one or more relevant markets. Defining the relevant market is essential to determining whether Samsung had monopoly power because whether a company has monopoly power depends on the contours of the market.

There are two aspects you must consider in determining whether Apple has met its burden of proving the relevant market or markets. The first is the existence of a relevant technology market. The second is the existence of a relevant geographic market.

A "technology" refers to an invention or process for accomplishing something, and is sometimes covered by a patent. The basic idea of a relevant technology market is that the technologies within it are reasonable substitutes for each other from the user's point of view; that is, the technologies compete with each other. In other words, the relevant technology market includes the technologies that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of users and marketing efforts of licensors. Technologies need not be identical or precisely interchangeable as long as they are reasonable substitutes.

The relevant geographic market is the area in which the Samsung technologies face competition from other technologies to which customers can reasonably turn. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

If, after considering all the evidence, you find that Apple has proven both a relevant technology market and a relevant geographic market, then you must find that Apple has met the relevant market requirement and you must consider the remaining elements of its unlawful monopolization claims.

If you find that Apple has failed to prove either a relevant technology market or a relevant geographic market, then you must find for Samsung and against Apple on Apple's unlawful monopolization claim.

**FINAL JURY INSTRUCTION NO. 79**
**MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER**

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. Monopoly power is the power to control prices and exclude competition in a relevant antitrust market. In determining whether Samsung has monopoly power in a relevant market, you may consider whether there is direct evidence that Samsung has monopoly power.

## DIRECT PROOF

In order to provide direct proof of monopoly power, Apple has the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. Apple must prove that Samsung has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Apple must also prove that Samsung has the power to maintain prices above a competitive level for a significant period of time. If Samsung attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Samsung does not have monopoly power.

Similarly, Apple must prove that Samsung has the ability to exclude competition. For example, if Samsung attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Samsung does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that Samsung has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that Samsung would lose a substantial amount of sales if it raised prices substantially, or that Samsung's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that Samsung does not have monopoly power.

## INDIRECT PROOF

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

## Market Share

The first factor that you should consider is Samsung's market share. A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that

Samsung does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that Samsung has monopoly power.

## Barriers to Entry

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include, among other things, intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products). Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

## Number and Size of Competitors

You may consider whether Samsung's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the defendant's ability to price its products. If Samsung's competitors are vigorous or have large or increasing market shares, this may be evidence that Samsung lacks monopoly power. On the other hand, if you determine that Samsung's competitors are weak or have small or declining market shares, this may support an inference that Samsung has monopoly power.

## Conclusion

If you find that Samsung has monopoly power in the relevant market, then you must consider the remaining elements of Apple's monopolization claim. If you find that Samsung does not have monopoly power, then you must find for Samsung and against Apple on this claim.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 80**
**MONOPOLIZATION—WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH ANTICOMPETITIVE ACTS**

The next element Apple must prove is that Samsung willfully acquired monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Samsung's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

# FINAL JURY INSTRUCTION NO. 81
## MONOPOLIZATION—ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING

Apple alleges that Samsung willfully acquired monopoly power based on anticompetitive behavior in connection with the UMTS standard-setting process at 3GPP.  A standard can enhance consumer welfare by ensuring interoperability of products and devices and making multiple sources of supply available to consumers.  The ideal standard-setting process can allow members of a standard setting-organization to make an objective comparison among competing technologies before a standard is adopted.  Based on the available information, a rational standard-setting organization can select the best technology (considering its cost and its performance) and can include that technology in the standard.  To the extent the industry has invested in a standard and cannot easily transfer that investment to an alternative standard, the process of standardization may eliminate alternative technologies.  When a patented technology is incorporated into such a standard, adoption of the standard may eliminate alternatives to the patented technology.  Nonetheless, "winning" the competition between technologies to be included in the standard may enhance consumer welfare and not be anticompetitive, even if the technology is covered by a patent.

Disruption of a standards-setting process, however, may be anticompetitive.  As to Apple's claims that Samsung failed to timely disclose IPR (including patents and patent applications) that may cover technology being considered for inclusion in the UMTS standard, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if:  (1) ETSI members shared a clearly defined expectation that members were required to timely disclose IPR that reasonably might cover technology being considered for adoption in the UMTS standard; (2) Samsung knowingly failed to disclose such IPR in a timely fashion; (3) 3GPP relied on the requirement that Samsung would timely disclose such information when 3GPP adopted the UMTS standard; and (4) Samsung did not comply with the requirement.

As to Apple's claims that during the standard-setting process Samsung concealed its true intentions not to meet the commitment it had made to license its declared-essential IPR on fair, reasonable, and non-discriminatory ("FRAND") terms, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if: (1) ETSI members shared a clearly defined expectation that participants were bound to license their declared-essential IPR on FRAND terms to ETSI, its members, and any entity that implements the UMTS standard; (2) Samsung made an intentionally false promise to comply with this requirement; (3) ETSI members relied on the requirement when they adopted the standards which the declared-essential IPR might reasonably cover; and (4) Samsung did not comply with the requirement.

In determining whether ETSI members shared such clearly defined expectations, you may consider, among other factors:  (1) the expectations of individual ETSI members; (2) any behavior by ETSI members with respect to disclosing or not disclosing such information; (3) oral information communicated or discussed at ETSI meetings or in ETSI minutes; (4) any written rules of ETSI made available to members; (5) customs of the industry; and (6) the purpose of ETSI.

In determining whether Apple has proved that Samsung willfully acquired monopoly power, you may consider Samsung's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of Samsung's disclosure or licensing conduct in isolation.

**United States District Court**
For the Northern District of California

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 82
## MONOPOLIZATION—SAMSUNG'S INTENT

In determining whether or not Samsung willfully acquired monopoly power in a relevant technology market, you may consider any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct. Specific intent to monopolize, however, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

**FINAL JURY INSTRUCTION NO. 83**
**MONOPOLIZATION—INTERSTATE CONDUCT**

The federal antitrust laws apply only to conduct that affects interstate commerce.  In this case, there is no dispute that Samsung's conduct affected interstate commerce.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS

# FINAL JURY INSTRUCTION NO. 84
## MONOPOLIZATION—INJURY AND DAMAGES

If you find that Samsung has violated the federal antitrust laws as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

**First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

**Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

**Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of declared-essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries, and Apple may not recover damages for those injuries under the antitrust laws.

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

5:11-CV-01846-LHK
FINAL JURY INSTRUCTIONS