UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, ) | Case No.: 11-CV-01846-LHK |
| Plaintiff and Counterdefendant, ) | |
| v. ) | ORDER RE: SAMSUNG'S MOTIONS FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE, OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE |
| SAMSUNG ELECTRONICS CO., LTD., ) a Korean corporation; ) SAMSUNG ELECTRONICS AMERICA, INC., ) a New York corporation; ) SAMSUNG TELECOMMUNICATIONS ) AMERICA, LLC, a Delaware limited liability ) company, ) | |
| Defendants and Counterclaimants. ) | (re: dkt. #1392, 1799) |

Samsung moves for relief from portions of Magistrate Judge Grewal's July 24, 2012 Order Granting-in-Part Apple's Motion for an Adverse Inference Jury Instruction.  *See* ECF No. 1321 ("Adverse Inference Order"); ECF No. 1392 ("Motion").  Apple filed an opposition, ECF No. 1531 ("Opp'n"); Samsung filed a reply, ECF No. 1579 ("Reply"); and Apple filed a motion for leave to file a sur-reply, ECF No. 1614 ("Sur-reply"), which this Court GRANTS.  Samsung also moves for relief from Magistrate Judge Grewal's August 16, 2012 Order Denying Samsung's Motion for Adverse Inference Jury Instruction.  *See* ECF No. 1792 ("Denial Order"); ECF No. 1799 ("Second Motion").  After the Court provided the parties with its tentative rulings on these two motions, *see* ECF No. 1848, Apple responded to Samsung's Second Motion.  *See* ECF No. 1856 at 1-4.  The

parties were given an opportunity to address both motions at the hearing on Final Jury Instructions on August 20, 2012.  For the reasons discussed herein, Samsung's motion for relief from Judge Grewal's Adverse Inference Order is GRANTED IN PART and DENIED IN PART, and Samsung's motion for relief from Judge Grewal's Dismissal Order is GRANTED.

## I.     BACKGROUND

### A.  Samsung's Preservation Efforts

Although Apple seeks, and Judge Grewal imposed, an adverse inference jury instruction against all three Defendants – Samsung Electronics Co., Ltd ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") – only SEC's document preservation activities are at issue here.  *See* Adverse Inference Order at 1 n.3.  SEC uses a homegrown, proprietary web-based system called "mySingle," which has been SEC's default email system since 2001.  *See id.* at 7.  mySingle stores received and sent employee emails on company-wide servers.  *Id.*  The system automatically and permanently deletes emails from the mySingle server after two weeks, although employees can preserve any emails they choose by saving them onto their hard drives.  *Id.* at 8-9.  Emails can be saved individually or collectively, the latter by clicking a "Save All" button.  *Id.* at 9, 11.  The system also provides a reminder in advance of each bi-weekly deletion.  *Id.* at 11.  In lieu of mySingle, employees may choose instead to use Microsoft Outlook, which allows for automatic archiving of all emails.  *Id.* at 10.  Samsung asserts that its 14-day retention period was adopted in 2001 for four reasons: "(1) 'it avoids the danger that confidential business information will be misappropriated in the event the computer itself is lost or stolen'; (2) it is cheaper than using a 30-day retention period; (3) it 'reduces the amount of information that could inadvertently be disclosed through misdirected email, or stolen through unauthorized access or hacking into an employee's email account on the system;' and (4) the policy best complies with Korean privacy law."  *Id.* at 8-9 (internal citations and footnotes omitted).

Sometime in July 2010, after Samsung launched its Galaxy line of smartphones, Apple's CEO Steve Jobs and Apple's Chief Operating Officer Tim Cook met with Samsung CEO J.Y. Lee., and "'advised Mr. Lee that Samsung needed to cease copying Apple's iPhone designs and

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

infringing Apple's patents immediately.'" *Id.* at 12 n.59 (quoting Decl. of Richard J. Lutton, Jr. in

Supp. of Apple's Mot. for a Prelim. Inj. ("Lutton Decl."), ECF No. 128, ¶¶ 2-4).  On August 4,

2010, Apple met with a Samsung representative and gave a presentation illustrating Samsung's

alleged infringement of certain Apple patents.  Order at 12.  Shortly thereafter, on August 23, 2010,

and again on September 3, 2010,[1] Samsung emailed certain Samsung employees litigation hold

notices, which stated, in relevant part:

> In light of the recent discussions between Samsung Electronics Co., Ltd.
> ("Samsung") and Apple Inc. ("Apple"), there is a reasonable likelihood of future
> patent litigation between Samsung and Apple unless a business resolution can be
> reached. . . . The purpose of this e-mail is to request that you preserve any and all
> such documents that may be relevant to the issues in a potential litigation between
> Samsung and Apple until it is fully resolved.  Please be aware that the above-
> mentioned exemplary list of documents[2] is not exhaustive and the categories of
> documents may well be even broader.  For this reason, **if you have any doubt** as to
> whether you should preserve particular documents, **you are instructed to retain
> them**. . . . [I]t is important that you do not destroy or discard any potentially
> responsive documents **AND PRESERVE ANY SUCH RELEVANT
> DOCUMENTS** until the likelihood of litigation relating to these issues has been
> sufficiently attenuated, or until otherwise notified by Samsung's Legal or IP teams.

Decl. of Esther Kim in Supp. of Apple's Mot. for Adverse Inference Jury Instruction, ECF No. 895

("Kim Decl."), at Ex. 9-A (emphases in original).  The "exemplary list of documents" identified in

the August 23 litigation hold notice specifically includes "correspondence, . . . electronic files and

e-mails."  Kim Decl. Ex. 9-A.  In addition, the notice enumerates ten categories of potentially

relevant documents subject to the preservation duty, including documents that relate to:

> (1) Apple or any of Apple's patents that could potentially impact Samsung's
> relevant business units (e.g., Digital Media & Communications, Device Solutions,
> etc.); (2) the design, development, testing, manufacturing, reverse engineering,
> distribution and sale of any Samsung product that Apple would likely accuse of
> infringing one or more of Apple's patents; . . . (6) any internal analysis, assessments
> (including any efforts by Samsung to design around Apple's patents) and/or reports
> concerning either Apple's patents or Samsung's patents that are currently the
> subject of the discussions between Apple and Samsung; . . . (9) any communications

---

[1] The September 3 notice is a Korean translation of the August 23 notice, which is drafted in
English.  *See* Kim Decl. Ex. 9 at 1; *see* Order at 12 n.60.

[2] The exemplary list of documents described in the litigation hold notice includes "tangible items
of any kind that contain information, including for example paper documents, correspondence,
memoranda, handwritten notes, drawings, presentation slides, business diaries, electronic files and
e-mails."  Kim Decl. Ex. 9-A.

to third parties (e.g., for analysis purposes to third party vendors or law firms) concerning any of the Apple patents; and (10) any communications with anyone relating to any Apple patent and/or Apple patent claim against Samsung.

Kim Decl. Ex. 9-A.  Finally, the notice informs recipients that the preservation duty extends to "documents stored in long term record retention, as well as documents in your office computer or any central files," and instructs recipients to "ensure that any scheduled disposal of such relevant documents (if any) is immediately suspended."  *Id.*  The August 23 litigation hold notice itself was sent to only 27 Samsung custodians, although the notice asks recipients to "distribute this message to anyone else who may have any such relevant documents," and states that "[t]his obligation to retain relevant documents applies generally to all employees and outside consultants or agents of Samsung."  *Id.*; *see id.* Ex. 9-S (list of custodian recipients).  There is no record of any further preservation actions on Samsung's part for the next seven months.  *See* Adverse Inference Order at 13.

On April 15, 2011.  *See* ECF No. 1.  On April 21, 2011, and continuing over the next few weeks, Samsung sent litigation hold notices to a total of approximately 2,841 Samsung employees.  *See* Kim Decl. Ex. 9 at 1; *id.* Exs. 9-C, 9-E, 9-G.  The April 21 and subsequent hold notices were similar in content to the August 23 notice, but identified more categories of relevant documents.  Samsung personnel and outside counsel provided various trainings to relevant employees describing the duty to preserve relevant documents and the litigation hold requirements, and employees were instructed to inform their subordinates about the policy.  Adverse Inference Order at 14-15.  However, Samsung never audited its employees to gauge compliance with this policy.  *Id.* at 16.  mySingle continues to be the SEC's default email system, and SEC has not suspended the fourteen day e-mail deletion feature on mySingle throughout the duration of this litigation.  Order at 21.

**B.  Adverse Inference Order**

On May 1, 2012, Apple filed a Motion for Adverse Inference Jury Instructions Due to Samsung's Spoliation of Evidence, which Samsung opposed.  *See* ECF Nos. 895, 987.  In its motion, Apple sought a finding that Samsung spoliated evidence, and as a sanction for such conduct, an adverse inference jury instruction "to the effect that: (1) Samsung had a duty to

4

United States District Court
For the Northern District of California

1  preserve relevant evidence, including emails; Samsung failed to preserve large volumes of relevant

2  emails and other documents; Samsung acted in bad faith in failing to preserve the relevant

3  documents; and the jury may presume that the documents that Samsung failed to preserve would

4  have been favorable to Apple's case and unfavorable to Samsung; and (2) if the jury finds

5  infringement of any Apple patent, trademark, or trade dress, that jury may infer that the

6  infringement was intentional, willful, and without regard to Apple's rights."  ECF No. 895 at iv.

7  In his July 25, 2012 ruling, Judge Grewal found that Samsung failed to produce email or

8  produced only a small number of emails from at least fourteen key fact witnesses.  Adverse

9  Inference Order at 19.  In particular, Won Pyo Hong, the head of Samsung's Product Strategy

10  Team, which includes the Design Group responsible for the Galaxy smartphones and tablet

11  computers, received the August 23, 2010 litigation hold notice and produced no emails and only 18

12  documents.  *Id.*  Other identified custodians who produced no or few emails include: Minhyouk

13  Lee, responsible for the industrial design of Samsung's accused Galaxy S products; Joon-Il Choi, a

14  senior manager in Samsung's R&D Management Group; Don-Joo Lee, the person in charge of

15  promoting and selling Samsung mobile products globally; and Nara Cho, a senior manager who

16  handled product planning for Samsung's tablet devices.  *Id.* at 20.  Because the accused products

17  were released prior to the filing of Apple's complaint, "the most relevant emails were subject to

18  Samsung's biweekly destruction policy before Samsung undertook the bulk of its preservation

19  efforts."  Order at 21.  Furthermore, "similarly-situated Samsung employees that use Microsoft

20  Outlook, rather than mySingle, produced many times more" emails, which further support the

21  reasonable inference that Samsung destroyed relevant documents.  *Id.* at 21.

22  In sum, Judge Grewal found that: (1) Samsung's duty to preserve evidence arose on August

23  23, 2010; (2) Samsung's continued use of its biweekly email destruction policy, insufficient

24  distribution of the litigation hold notice before April 2011, and failure to confirm compliance with

25  the litigation hold notices constituted willful violation of this duty; and (3) the destroyed

26  documents were relevant and prejudicial to Apple's claims, as demonstrated by the "stark

27  difference in production from mySingle and Microsoft Outlook custodians," and the fact that some

28  of the mySingle custodians whose production of email was remarkably low were "senior Samsung

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

employees whose internal communications would have been especially probative to the claims at issue in this litigation." *Id.* at 23; *see id.* at 15-22.  In light of these findings, Judge Grewal concluded that an adverse inference instruction was warranted.  However, given the absence of any finding of bad faith, Judge Grewal ordered that the jury be instructed as follows:

> Samsung has failed to prevent the destruction of relevant evidence for Apple's use in this litigation.  This is known as the "spoliation of evidence."

> I instruct you, as a matter of law, that Samsung failed to preserve evidence after its duty to preserve arose.  This failure resulted from its failure to perform its discovery obligations.

> You may also presume that Apple has met its burden of proving the following two elements by a preponderance of the evidence: *first*, that *relevant* evidence was destroyed after the duty to preserve arose.  Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence; and *second*, the lost evidence was favorable to Apple.

> Whether this finding is important to you in reaching a verdict in this case is for you to decide.  You may choose to find it determinative, somewhat determinative, or not at all determinative in reaching your verdict.

*Id.* at 24.

### C. Denial Order

The day after Judge Grewal issued the Adverse Inference Order, Samsung filed its own Motion for Spoliation Adverse Inference Instruction Against Apple, requesting that the jury be given the same adverse inference instruction with respect to Apple's spoliation as with respect to Samsung's spoliation, based on Judge Grewal's finding of an August 23, 2010 preservation date and on Apple's failure to issue any litigation hold notices until April 2011.  *See* ECF No. 1388. Apple filed an opposition, *see* ECF No. 1591, to which Samsung replied, *see* ECF No. 1600. Apple also filed a Motion to Strike Samsung's Untimely Motion for Adverse Inference Instruction, *see* ECF No. 1402, which Samsung opposed, *see* ECF No. 1428.

On August 16, 2012, Judge Grewal issued an Order Denying Samsung's Motion for an Adverse Inference Jury Instruction, based solely on "this court's well-recognized discretion to hold parties to a schedule and insist upon requests that are timely."  ECF No. 1792 at 2.  On August 17, 2012, Samsung moved for relief from Judge Grewal's ruling.  ECF No. 1799.

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## II.      STANDARD OF REVIEW[3]

As a threshold matter, the parties dispute what standard of review governs the Court's review of Judge Grewal's Adverse Inference Order.  To determine what standard of review applies, the Court must determine whether the ruling at issue is dispositive or non-dispositive of a party's claim or defense.  *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(a).  With respect to dispositive matters, the Federal Magistrates Act (the "Act")[4] authorizes the magistrate judge to conduct hearings and submit proposed findings of fact and recommendations to the district court, but such findings and recommendations are reviewed *de novo*.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  While § 636(b)(1)(A) identifies eight types of dispositive motions beyond the magistrate judge's jurisdiction to determine,[5] the list is not exhaustive, but rather "can be expanded to include other analogous motions as well."  *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004).

By contrast, the district court may designate any non-dispositive pretrial matter to be determined by a magistrate judge, whose ruling on the matter will be modified or set aside only if "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a); *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).  In reviewing for clear error, the district judge may not simply substitute his or her judgment for that of the magistrate judge.  *See Grimes*, 951 F.2d at 241.  Rather, a magistrate judge's non-dispositive ruling is clearly erroneous only when the district court is left with a "definite and firm conviction that a mistake has been committed."  *Burdick v. Comm'r Internal Rev. Serv.*, 979 F.2d 1369, 1370 (9th Cir. 1992); *see*

---

[3] Although this is a patent infringement case and any appeal will go to the Federal Circuit, the Federal Circuit applies the law of the regional circuit in reviewing sanctions orders.  *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1380 (Fed. Cir. 2004) (citing *Transclean Corp. v. Bridgewood Sers., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002)).  Accordingly, Ninth Circuit law governs here.

[4] The Federal Magistrates Act is codified at 28 U.S.C. §§ 604, 631-39 and 18 U.S.C. §§ 3060, 3401-3402, and is implemented by Federal Rules of Civil Procedure 72 through 75.

[5] Pursuant to 28 U.S.C. § 636(b)(1)(A):

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

7

*United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001) (noting that a magistrate judge's decisions with regard to discovery disputes and other non-dispositive matters are entitled to great deference). "[A]ny motion not listed [under § 636(b)(1)(A)], nor analogous to a motion listed in this category, falls within the non-dispositive group of matters which a magistrate may determine." *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) (citations omitted).

Samsung argues that the *de novo* standard applies here for two reasons: (1) magistrate judges lack inherent power to impose sanctions; and (2) Judge Grewal's finding of spoliation and imposition of an adverse jury instruction in this case constitutes a dispositive sanction under 28 U.S.C. § 636(b)(1)(B).

### A.  Inherent Power to Sanction

In sanctioning Samsung, Magistrate Judge Grewal relied on his "inherent power[] . . . to levy appropriate sanctions against a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation."  Order at 2-3. [6] *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (noting that spoliation sanctions can be imposed pursuant to either the court's "inherent power" or under Rule 37).  In its Reply brief, Samsung argues for the first time that the Court's review must be *de novo* because Judge Grewal lacked authority to enter the Adverse Inference Order.  *See* Reply at 2-4.  Although this Court ordinarily will not entertain an argument raised for the first time in a reply brief, Samsung's challenge to the magistrate judge's jurisdiction is sufficiently important to warrant the Court's consideration.  *See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments.").

It is firmly established in the Ninth Circuit that "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or

---

[6] As Judge Grewal noted, the court's power to impose sanctions under Rule 37 of the Federal Rules of Civil Procedure for "fail[ure] to obey an order to provide or permit discovery" was not applicable here because Samsung did not violate a court order.  *See* Fed. R. Civ. P. 37(b)(2)(A); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 367-68 (9th Cir. 1992) ("Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse.").

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

1   spoliation of relevant evidence," which includes the power "to permit a jury to draw an adverse

2   inference from the destruction or spoliation against the party or witness responsible for that

3   behavior." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citing *Akiona v. United States*,

4   938 F.2d 158 (9th Cir. 1991)); *accord Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d

5   806, 824 (9th Cir. 2002).  This power to impose spoliation sanctions derives from the Supreme

6   Court's recognition in *Chambers v. NASCO, Inc.*, 501 U.S. 32, *reh'g denied*, 501 U.S. 1269 (1991),

7   that "'[c]ertain implied powers must necessarily result to our Courts of justice from the nature of

8   their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to

9   the exercise of all others.'"  501 U.S. at 43 (quoting *United States v. Hudson*, 11 U.S. (7 Cranch)

10   32, 34 (1812)).  Indeed, magistrate judges throughout the Ninth Circuit have commonly relied on

11   their inherent power to issue adverse inference jury instructions as a sanction for spoliation.  *See,*

12   *e.g.*, *Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 535 (E.D. Cal. 2010);

13   *Herson v. City of Richmond*, No. C 09-02516 PJH LB, 2011 WL 3516162, at *2 (N.D. Cal. Aug.

14   11, 2011); *Io Grp. Inc. v. GLVT Ltd.*, No. C-10-1282 MMC (DMR), 2011 WL 4974337 (N.D. Cal.

15   Oct. 19, 2011); *Aiello v. Kroger Co.*, 2:08-CV-01729-HDM-RJJ, 2010 WL 3522259 (D. Nev. Sept.

16   1, 2010); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06-3359 JF(RS), 2009 WL

17   1949124 (N.D. Cal. July 2, 2009); *see also In re Hitachi Television Optical Block Cases*, No.

18   08cv1746 DMS(NLS), 2011 WL 3563781 (S.D. Cal. Aug. 12, 2011) (considering whether, but

19   ultimately declining, to impose sanctions based on inherent authority); *Uribe v. McKesson*, No.

20   1:08-cv-01285 DMS (NLS), 2010 WL 4235863 (E.D. Cal. Oct. 21, 2010) (same); *Keithley v.*

21   *Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 4830752 (N.D. Cal. Nov. 6, 2008)

22   (same).

23        Notwithstanding this settled principle, Samsung reads *Chambers* as applying only to Article

24   III courts, and argues that the inherent power to impose spoliation does not extend to "federal

25   magistrates," which are "creatures of statute, and so is their jurisdiction."  *NLRB v. A-Plus Roofing,*

26   *Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994).  Samsung argues that "because Congress has not

27   expressly granted such power by statute," federal magistrates have no authority to impose

28   spoliation sanctions.  Reply at 2.

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

**United States District Court**
For the Northern District of California

1        Samsung's argument is without merit.  Nothing in *Chambers* indicates that inherent powers

2   are limited to Article III courts.  *Cf. Chambers*, 501 U.S. at 48 n.12 (rejecting petitioner's

3   classification of inherent powers into three categories, only one of which derives directly from

4   Article III).  Rather, the language of *Chambers* extends broadly to all "Courts of justice," which

5   "are universally acknowledged to be vested, by their very creation, with power to impose silence,

6   respect, and decorum, in their presence, and submission to their lawful mandates.'"  *Id.* at 43

7   (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)).  Furthermore, Samsung's argument that

8   *Chambers* applies only to Article III courts has already been rejected by the Ninth Circuit, albeit in

9   a different context.  *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278,

10  283-85 (9th Cir. 1996).  Faced with a similar challenge to a bankruptcy court's inherent power to

11  sanction, the Ninth Circuit observed that, post-*Chambers*, "[t]here can be little doubt that

12  bankruptcy courts have the inherent power to sanction vexatious conduct presented before the

13  court."  *In re Rainbow Magazine*, 77 F.3d at 283-84.  Although the Ninth Circuit had previously

14  held that bankruptcy courts lack the inherent power of contempt, *see Plastiras v. Idell (In re*

15  *Sequoia Auto Brokers, Ltd.)*, 827 F.2d 1281 (9th Cir. 1987), that holding was superseded by the

16  Supreme Court's subsequent *Chambers* opinion.  *In re Rainbow Magazine*, 77 F.2d at 284-85

17  ("Any restriction of the bankruptcy courts' power to sanction that could be inferred from *Sequoia*

18  is no longer pertinent in light of [the *Chambers* opinion and Congress's subsequent adoption of

19  Bankruptcy Rule 9020,which gives bankruptcy courts the power of contempt].").

20       Nor is there support for Samsung's contention that inherent powers must be expressly

21  conferred by statute.  To the contrary, precedent clearly provides that "courts created by Congress

22  have inherent powers, *unless Congress intentionally restricts those powers*."  *In re Rainbow*

23  *Magazine*, 77 F.3d at 284 (emphasis added); *see Chambers*, 501 U.S. at 47 ("[T]he exercise of the

24  inherent power of lower federal courts can be limited by statute and rule, for '[t]hese courts were

25  created by Act of Congress.'") (quoting *Ex parte Robinson*, 86 U.S. (19 Wall) 505, 511 (1873)).  A

26  court's inherent powers include, *inter alia*, the power to discipline attorneys who appear before it;

27  to punish for contempt; to set aside fraudulently obtained judgments; to exclude from the

28  courtroom a criminal defendant who disrupts a trial; to dismiss an action for *forum non conveniens*;

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

to dismiss a suit *sua sponte* for failure to prosecute; and the power to impose sanctions on a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 43-46 (internal quotation marks and citations omitted).  Although Congress may limit these inherent powers by rule or statute, "'we do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power." *Id.* at 47 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)).  Accordingly, these inherent powers are vested in federal courts absent manifest congressional intent to "abrogate or restrict" them.  *See In re Rainbow Magazine*, 77 F.3d at 285.

Here, the Federal Magistrates Act places some restrictions on a magistrate judge's otherwise vested inherent powers, such as the power to dismiss a case for *forum non conveniens* or failure to prosecute.  *See* 28 U.S.C. § 636(b)(1)(A) (excepting motions to dismiss from a magistrate judge's jurisdiction).  However, there is no evidence of congressional intent to "abrogate or restrict the inherent power to sanction."  *See In re Rainbow Magazine*, 77 F.3d at 285; *see generally* 28 U.S.C. § 636.  Samsung makes too much of the fact that, in recognizing the bankruptcy courts' inherent power to sanction, the Ninth Circuit pointed to a provision of the Bankruptcy Code expressly authorizing bankruptcy courts to "'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  *In re Rainbow Magazine*, 77 F.3d at 284 (quoting 11 U.S.C. § 105(a)).  Samsung relies on the absence of an analogous catch-all provision in the Federal Magistrates Act to argue that Congress intended to deny magistrate judges the same inherent power enjoyed by bankruptcy courts.  As discussed above, however, *In re Rainbow Magazine* makes clear that an Article I court's inherent authority to sanction, while subject to restrictions by Congress, is not itself derived from an affirmative statutory grant.  *See* 77 F.3d at 284-85 (observing that the inherent power of bankruptcy courts to sanction "is *recognized*" in the relevant provisions of the Bankruptcy Code, as opposed to conferred by the statute (emphasis added)).  Indeed, by their very nature, inherent powers are "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

**United States District Court**
For the Northern District of California

In light of this discussion of controlling Ninth Circuit authority, this Court declines to follow *Reddick v. White*, 456 F. App'x 191 (4th Cir. 2011) (unpublished per curiam), an unpublished, out-of-circuit decision on which Samsung heavily relies, to the extent it holds that magistrate judges lack inherent power to impose spoliation sanctions.[7]

### B. "Dispositive Motion" Under 28 U.S.C. § 636(b)(1)(B)

Samsung also argues that the finding of spoliation and imposition of an adverse jury instruction constitutes a dispositive sanction and should therefore be subject to *de novo* review as provided for in § 636(b)(1)(B).  This argument, too, must fail.

To determine whether a magistrate judge's ruling is "dispositive," the Court "must look to the effect of the motion."  *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004). For example, while a dismissal sanction is dispositive, a lesser sanction might not be.  *See Shared Memory Graphics LLC v. Apple, Inc.*, No. C 10-2475 MMC, 2011 WL 5320749, at *2-3 (N.D. Cal. Nov. 2, 2011); *see also Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) ("Magistrate Judge Muirhead – whatever he might theoretically have done – in fact imposed only a monetary sanction.  His order, therefore, was nondispositive and the 'clearly erroneous' standard obtains."); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) (holding that "'[t]he penalty to be imposed, rather than the penalty sought by the movant, controls the scope of the magistrate's authority'" (quoting 7 James W. Moore et al., *Moore's Federal Practice*, ¶ 72.04[2.-4], at 72-66 (2d ed. 1994)); *QBE Ins. Corp. v. Jorda Enters., Inc.*, 280 F.R.D. 694, 694 n.2 (S.D. Fla. 2012) (holding that, in deciding whether a sanction is dispositive or not, "the critical factor is what sanction the magistrate judge *actually imposes*" (emphasis in original)).

While the Ninth Circuit has not explicitly addressed a magistrate judge's imposition of sanctions pursuant to its inherent authority, the Ninth Circuit has upheld a magistrate judge's

---

[7] The Fourth Circuit held that "[a] motion for sanctions under the district court's 'inherent' power is not a pretrial matter under § 636(B)(1)(a)," that "[m]agistrate judges have no inherent Article III powers," and that "Congress has not created statutory authorization for magistrate judges to exercise inherent Article III powers."  *Reddick*, 456 F. App'x at *2.  While this Court does not disagree that magistrate judges are "creatures of statute," whose jurisdiction derives not from Article III but from Article I, *see NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994), this Court has found no authority for the proposition that the inherent power of federal courts to sanction is uniquely an "Article III" power.

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California

authority to order sanctions under both Rule 11 and Rule 37 of the Federal Rules of Civil Procedure, provided that the actual sanctions imposed are non-dispositive. *See Maisonville*, 902 F.2d at 747-48 (monetary sanction imposed pursuant to Rule 11 non-dispositive); *Grimes*, 951 F.2d at 240 (monetary sanctions imposed under Rule 37 non-dispositive).  Here, the actual sanction Magistrate Judge Grewal imposed here does not "have an effect similar to those motions considered dispositive" under § 636(b)(1)(A).  *Maisonville*, 902 F.2d at 748.  Pursuant to Judge Grewal's Order, the jury will be instructed that: (1) Samsung failed to perform its discovery obligations; (2) the jury may presume the evidence destroyed was relevant and favorable to Apple; and (3) the jury may, but need not, find this presumption determinative in reaching its verdict. Order at 24.  Although Samsung asserts that the adverse inference jury instruction "bears on *all* of Samsung's claims and defenses," Mot. at 2 (emphasis in original), Samsung fails to identify any claims or defenses that are conclusively determined by the Order.[8]  Indeed, Samsung is unable to do so, because a permissive presumption is not properly characterized as "dispositive."  *See MOSAID Techs. Inc. v. Samsung Elecs. Co.*, No. Civ. A01-CV-4340 (WJM), 2004 WL 2550309, at *2 (D.N.J. Oct. 1, 2004) ("Courts have recognized that even if a magistrate judge's order has the potential to materially affect the outcome of an issue, the order should still be reviewed under the more deferential standard."); *cf. Avila v. Olivera Egg Ranch, LLC*, No. 2:08-CV-02488 JAM-KJN, 2010 WL 7087074, at *1-2 (E.D. Cal. Feb. 18, 2010) (reviewing magistrate judge's adverse inference spoliation sanction for clear error); *Dong Ah Tire & Rubber Co.*, No. C 06-3359JF(RS), 2009 WL 2485556 (N.D. Cal. Aug. 12, 2009) (same).  Accordingly, Judge Grewal's Adverse Inference Order is not a dispositive ruling under § 636(b)(1)(A) and is therefore reviewed only for clear error.

### III.     ADVERSE INFERENCE ORDER

Samsung challenges Judge Grewal's Adverse Inference Order on three grounds: (1) the finding that Samsung's duty to preserve arose in August 2010 was clearly erroneous; (2) the

---

[8] Samsung asserts, somewhat tautologically, that the Adverse Inference Order disposes of Apple's spoliation claim.  Apple, however, has not asserted in this case a claim for the intentional tort of spoliation of evidence.  *Cf. Unigard*, 982 F.2d at 370-71 (recognizing that this tort has been recognized in several states, including California).

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

finding that Apple was prejudiced was clearly erroneous; and (3) the form of the adverse inference instruction is contrary to law.  The Court considers first whether there is any error in Judge Grewal's finding of spoliation, and second whether the adverse inference instruction imposed is proper and justified on this record.

### A.  Spoliation

"'Document retention policies,' which are created in part to keep certain information from getting into the hands of others, . . . are common in business," and are lawful "under ordinary circumstances."  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005); *see Micron Tech. Inc. v. Rambus Inc.*, 645 F.3d 1311, 1322 (Fed. Cir. 2011) (recognizing that "most document retention policies are adopted with benign business purposes, reflecting the fact that 'litigation is an ever-present possibility in American life'") (quoting *Nat'l Union Fire Ins. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)).  Spoliation, however, "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  Evidence of spoliation may be grounds for sanctions, which may include an adverse inference instruction.[9]  *See Akiona*, 938 F.2d at 161.

The Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of evidence but has not set forth a precise standard for determining when such sanctions are appropriate.  Trial courts have widely adopted the Second Circuit's three-part test, which provides

---

[9] As the Ninth Circuit has explained,

> The adverse inference is based on two rationales, one evidentiary and one not.  The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document. . . . The other rationale for the inference has to do with its prophylactic and punitive effects.  Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona*, 938 F.2d at 161 (quoting *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)).

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    that "a party seeking an adverse inference instruction based on the destruction of evidence must

2    establish[:] (1) that the party having control over the evidence had an obligation to preserve it at the

3    time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3)

4    that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact

5    could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge*

6    *Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93,

7    107-12 (2d Cir. 2001)); *see, e.g.*, *Io Group*, 2011 WL 4974337, at *8; *Vieste, LLC v. Hill Redwood*

8    *Dev.*, 2011 WL 2198257, at *2 (N.D. Cal. June 6, 2011); *Cyntegra, Inc. v. Idexx Labs., Inc.*, No.

9    CV 06-4170 PSG, 2007 WL 5193736, at *2 (C.D. Cal. Sept. 21, 2007); *World Courier v. Barone*,

10   No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007); *UMG Recordings, Inc. v.*

11   *Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060,

12   1078 (N.D. Cal. 2006); *AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc.*, No. CIV S-00-113,

13   2006 WL 2308442, at *5 n.6 (E.D. Cal. Aug. 9, 2006); *Hamilton v. Signature Flight Support*

14   *Corp.*, No. C 05-0490 CW(MEJ), 2005 WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005); *Housing*

15   *Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320739, at *7 (C.D. Cal. Mar. 2, 2005).

16           Samsung does not challenge Judge Grewal's application of this three-part test for

17   spoliation, nor does Samsung challenge Judge Grewal's findings with respect to willfulness and

18   relevance.  Samsung argues only that Judge Grewal erred in finding that Samsung's duty to

19   preserve arose in August 2010, more than seven months before Apple filed this action.  Mot. at 2.

20   In finding that Samsung's preservation duty arose in August 2010, Judge Grewal relied on Apple's

21   in-person, August 4, 2010 presentation, in which Apple confronted Samsung with "a

22   comprehensive summary of its specific patent infringement claims against specific Samsung

23   products," and on Samsung's own August 23, 2010 litigation hold notice, in which Samsung

24   acknowledged "a reasonable likelihood of future patent litigation between Samsung and Apple

25   unless a business resolution can be reached."  Order at 16.  Samsung argues that Judge Grewal

26   erred in disregarding, or giving insufficient weight to, several factors: (1) "the longstanding

27   business relationship between the two companies and the history of successful negotiations

28   between them;" (2) the parties did, in fact, conduct negotiations here, and Apple waited more than

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

seven months before filing suit; (3) Apple itself did not issue any litigation hold notice until April 2011, showing that litigation was not probable as of August 2010; and (4) Samsung did not have notice of probable "specific" claims, as the patents described in the August 4 presentation did not map onto the claims ultimately asserted in this suit.  Mot. at 2-3.

Having considered the parties' briefs, the relevant case law, and the record before Judge Grewal, the Court cannot say that Judge Grewal's finding was clearly erroneous.  As a general matter, there is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced.  *See World Courier*, 2007 WL 1119196, at *1 ("'The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'") (quoting *Kronisch*, 150 F.3d at 126); *see Unigard*, 982 F.2d at 365, 369 (upholding the district court's exclusion of plaintiff's expert testimony based on evidence plaintiff destroyed two years before filing suit).  "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation."  *Micron Tech.*, 645 F.3d at 1320; *see Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").  Although the Ninth Circuit has not precisely defined when the duty to preserve is triggered, trial courts in this Circuit generally agree that, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1067; *see Hynix Semiconductor*, 591 F. Supp. 2d at 1061 (determining that future litigation is reasonably foreseeable when it is "more than a possibility"); *Ameripride Servs.*, 2006 WL 2308442, at *4 (anticipated litigation date is when a potential claim is identified); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1346-47 (Fed. Cir. 2011) (litigation need only be reasonably foreseeable, not immediate or certain).

Here, it was not clear error to find that litigation was reasonably foreseeable as of August 23, 2010, shortly after the August 4 presentation wherein Apple alerted Samsung to Apple's

16

United States District Court
For the Northern District of California

1    patents and infringement positions.  Samsung's first two arguments rely on the parties'

2    "longstanding business relationship," but Samsung did not make this argument before Judge

3    Grewal, and thus it is too late to raise it now.  *See Harbridge v. Yates*, No. 1:11-cv-00473 AWI

4    JLT, 2012 WL 639476, at *3 (E.D. Cal. Feb. 24, 2012).  Moreover, although the Federal Circuit

5    has recognized that the parties' preexisting business relationship informs the reasonable

6    foreseeability of litigation, a preexisting business relationship is but one factor to consider among

7    the totality of circumstances and is not on its own dispositive.  *See Micron Tech.*, 645 F.3d at 1325.

8    Even taking into account the parties' longstanding business relationship, it is objectively

9    reasonable to infer that by the time Apple presented Samsung with its infringement positions in

10   August 2010, the relationship had soured, and litigation would plausibly follow.  While Samsung

11   may have held onto the possibility of resolution through business negotiations, Samsung's

12   optimism did not negate the reasonable foreseeability of litigation in the event negotiations were

13   unsuccessful.  *See id.*

14           Nor is the Court persuaded by Samsung's third and fourth arguments.  As Judge Grewal

15   correctly noted, while Apple's failure to issue any litigation hold notice of its own until April 2011

16   may be grounds for Samsung to seek its own adverse inference instruction against Apple for

17   spoliation of evidence, Apple's conduct does not absolve Samsung of its own preservation duty.

18   Finally, contrary to Samsung's assertion that Samsung was not on notice of any "specific" claim

19   until the filing of Apple's complaint, the August 2010 presentation identified specific Apple

20   intellectual property and specific Samsung devices.  *See generally* ECF No. 418.  The presentation

21   clearly identifies specific potential infringement claims that would put a reasonable party on notice

22   of a likelihood of litigation.  Accordingly, it was neither clearly erroneous nor contrary to law to

23   find that Samsung's duty to preserve arose in August 2010.

24           Once Samsung's duty to preserve took effect in August 2010, Samsung was "required to

25   suspend any existing policies related to deleting or destroying files and preserve all relevant

26   documents related to the litigation."  *In re Napster*, 462 F. Supp. 2d at 1070 (holding that, even if

27   the accused party had a "long standing polic[y]" of deleting emails, it was "required to cease

28   deleting emails once the duty to preserve attached"); *see Zubulake*, 220 F.R.D. at 218 ("Once a

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

1   party reasonably anticipates litigation, it must suspend its routine document retention/destruction

2   policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").

3   Although Samsung did make some efforts to preserve documents, such as by sending out litigation

4   hold notices and conducting trainings with key employees, "Samsung to this day has not suspended

5   its email system's biweekly automatic destruction policy, even as to key custodians, nor has it

6   presented any evidence that Samsung employees have at all complied with the instructions they

7   were given."  Adverse Inference Order at 21-22.  In light of the foregoing, the Court finds no error

8   in Judge Grewal's determination that the facts of this record support a finding that Samsung's

9   document preservation efforts fell short of its duty.

10                    **B.   Sanction**

11          The Court therefore next considers the propriety of the precise sanction imposed.  *See Dong*

12   *Ah Tire & Rubber Co.*, 2009 WL 1949124, at \*10 (magistrate judge's specific findings warranted

13   adverse inference jury instructions, but "[t]he precise contours of such instructions must be left to

14   the presiding judge who will determine the universe of jury instructions ultimately to be given in

15   this action"), *modified*, C 06-3359 JF(RS), 2009 WL 2485556, at \*1, \*4-5 (N.D. Cal. Aug. 12,

16   2009) (affirming the magistrate judge's determination that some form of sanction is warranted for

17   spoliation of evidence as neither clearly erroneous nor contrary to law, but modifying the nature

18   and scope of the sanction based on the totality of the circumstances); *see also Hamilton*, 2005 WL

19   3481423, at \*6.  Samsung argues that Judge Grewal clearly erred in finding that Apple suffered

20   prejudice and in imposing an irrebuttable factual finding.  While the Court finds no clear error in

21   Judge Grewal's finding of prejudice, for the reasons discussed below, the Court agrees with

22   Samsung that the strong adverse inference instruction in Judge Grewal's July 24 Order is not

23   warranted by the facts and litigation history of this case, and for that reason modifies the nature and

24   scope of the adverse inference instruction as set forth in the conclusion of this Order.

25          In considering what spoliation sanction to impose, if any, courts generally consider three

26   factors: "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree

27   of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will

28   avoid substantial unfairness to the opposing party.'"  *Nursing Home Pension Fund v. Oracle Corp.*,

United States District Court
For the Northern District of California

18

United States District Court
For the Northern District of California

254 F.R.D. 559, 563 (N.D. Cal. 2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)); *see In re Napster*, 462 F. Supp. 2d at 1066-67.[10]   Thus, while a finding of bad faith is not a prerequisite for an adverse inference sanction, "a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed."  *In re Napster*, 462 F. Supp. 2d at 1066-67 (citing *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994)).   Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."  *Schmid*, 13 F.3d at 79.   Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence.  *See Unigard Security*, 982 F.2d at 368; *In re Napster*, 462 F. Supp. 2d at 1066-67.   Consistent with this principle, some courts have denied requests for an adverse inference instruction even where the three-part test for spoliation was satisfied, upon concluding that the degree of fault and level of prejudice were insufficient to justify imposition of the sanction.  *See Chin*, 685 F.3d at 161-62 (holding that district court did not abuse its discretion in denying an adverse inference instruction notwithstanding a finding of spoliation); *Hamilton*, 2005 WL 3481423, at *6-9.

"The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'"  *Leon*, 464 F.3d at 959 (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)).   Again, the Court finds no clear error in Judge Grewal's finding of prejudice.  "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it."  *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06-3359 JF, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009) (citing *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)); *see Hynix Semiconductor, Inc. v. Rambus*

---

[10] Other factors considered by some courts include whether an adverse inference jury instruction sanction would "'serve [] [the] threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.'"  *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (quoting *Byrnie*, 243 F.3d at 107).

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

*Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006) ("[I]f spoliation is shown, the burden of proof

logically shifts to the guilty party to show that no prejudice resulted from the spoliation" because

that party "is in a much better position to show what was destroyed and should not be able to

benefit from its wrongdoing"), *rev'd on other grounds*, 645 F.3d 1336, 1344-47 (Fed. Cir. 2011);

*Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one

party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must

draw the strongest allowable inferences in favor of the aggrieved party."); *see also Residential*

*Funding*, 306 F.3d at 109 (noting that holding victims of spoliation "'to too strict a standard of

proof regarding the likely contents of the destroyed evidence . . . would . . . allow parties who have

. . . destroyed evidence to profit from that destruction'") (quoting *Kronisch*, 150 F.3d at 128).  In

*Leon*, the Ninth Circuit found that "because any number of the 2,200 files could have been relevant

to IDX's claims or defenses, although it is impossible to identify which files and how they might

have been used.  Because of the obvious relevance of [the despoiled] files to the litigation . . . the

district court did not clearly err in its finding of prejudice."  *Leon*, 464 F.3d at 960.  Likewise here,

though neither Apple nor the Court may ever know the contents of any destroyed Samsung emails,

the fact that the emails of key Samsung witnesses were among those destroyed permits the

reasonable inference that Apple was prejudiced by Samsung's spoliation.

       Nonetheless, while the Court agrees with Judge Grewal's conclusion that Samsung's

conduct justifies imposition of an adverse inference instruction, the Court does not find that such a

strong adverse inference instruction is justified by this record.  As noted above, courts must choose

"the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice

suffered by the victim."  *Schmid*, 13 F.3d at 79.  Moreover, any exercise of a court's inherent

powers must be exercised with great restraint and discretion.  *See Chambers*, 501 U.S. at 50;

*Roadway Exp.*, 447 U.S. at 764.  Certainly, an adverse inference instruction is a "lesser" sanction

than dismissal or default.  That it is a comparatively less severe sanction, however, does not mean

it should be imposed casually.  *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d

598, 619 (S.D. Tex. 2010) (adverse inferences are "among the most severe sanctions a court can

administer"); *Keithley v. Homestore.com, Inc.*, 2008 WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008)

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California

1  ("[A]n adverse inference instruction is a harsh remedy."); *Consol. Aluminum Corp. v. Alcoa, Inc.*,

2  244 F.R.D. 335, 340 (M.D. La. 2006) (adverse inference sanctions are "drastic"); *Thompson v. U.S.*

3  *Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 100-01 (D. Md. 2003) (adverse inference

4  sanctions are "extreme" and "not to be given lightly"); *Zubulake*, 220 F.R.D. at 219-20 ("In

5  practice, an adverse inference instruction often ends litigation – it is too difficult a hurdle for the

6  spoliator to overcome. . . .  Accordingly, the adverse inference instruction is an extreme sanction

7  and should not be given lightly.").

8      As Judge Grewal correctly observed, "'an adverse inference instruction can take many

9  forms, again ranging in degrees of harshness.'"  Adverse Inference Order at 22 (quoting *Pension*

10  *Committee of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 470

11  (S.D.N.Y. 2010)).  Here, the Adverse Inference Order imposes a relatively harsh adverse inference

12  instruction.  First, it instructs the jury that "Samsung has failed to prevent the destruction of

13  relevant evidence for Apple's use in this litigation," rather than allowing the jury to decide whether

14  Samsung has destroyed documents, and if so, whether those documents are relevant.  Second, it

15  permits the jury to draw an adverse inference and to find this adverse inference "determinative,

16  somewhat determinative, or not at all determinative in reaching your verdict."  Adverse Inference

17  Order at 24.  By contrast, evidence of Apple's resulting prejudice is not particularly strong.  Here,

18  Samsung produced over 12 million pages of documents, including over 80,000 emails, gathered

19  from more than 380 witnesses.  Decl. of Alex Binder in Supp. of Samsung's Opp'n to Apple's

20  Mot. Adverse Inference Jury Instruction, ECF No. 987-39 ("Binder Decl."), ¶¶ 5-8.  This includes

21  over 9,880,000 pages of documents in the ITC Investigations (794/796), and an additional over

22  2,150,000 pages of documents in this suit, totaling 14 terabytes of data.  *Id.*  Moreover, Samsung

23  produced over 70,000 pages, comprised of 5,159 documents and emails, from the very custodians

24  whose documents Apple identified as having been likely destroyed.  *See* Binder Decl. ¶ 18.

25  Samsung also produced non-custodial emails that were sent to or received by the key Samsung

26  custodians identified by Apple.  *Id.* ¶ 19.  Finally, Apple deposed a substantial number of the key

27  Samsung witnesses whose emails Apple suspects may not have been preserved.  *Id.* ¶¶ 12-17.

28  Thus, Apple "should have been able to glean" much material evidence "from the documents

21

1    actually produced, the extensive deposition testimony, and the written discovery between the

2    parties." *In re Oracle*, 627 F.3d at 386.  On the one hand, "the loss of an entire source of

3    documents significantly hampers [an opposing party's] ability to prepare and prosecute their case."

4    *In re Napster*, 462 F. Supp. 2d at 1077.  On the other hand, the Court finds it difficult to conclude

5    that Apple's "ability to go to trial" was significantly hampered where discovery in this case has

6    been so voluminous.  *See Leon*, 464 F.3d at 959; *see In re Oracle*, 627 F.3d at 386 (limiting scope

7    of adverse inference instruction where ample discovery was produced); *Pension Committee*, 685 F.

8    Supp. 2d at 479 & n.97 (where the parties seeking spoliation sanctions had already "gathered an

9    enormous amount of discovery – both from documents and witnesses," "[u]nless they can show

10   through extrinsic evidence that the loss of the documents has prejudiced their ability to defend the

11   case, then a lesser sanction than a spoliation charge is sufficient to address any lapse in the

12   discovery efforts of the negligent plaintiffs"), *abrogated on other grounds by Chin v. Port Auth. of*

13   *New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012).  On this record, the Court concludes that

14   Apple was prejudiced, but that Apple has not made a showing of prejudice sufficient to warrant a

15   strong adverse inference instruction that permits the jury to find Samsung's spoliation

16   "determinative" of all issues in the case.

17          Finally, the Court is unable to find justification for imposing an adverse inference

18   instruction against all three Samsung entity defendants, where the record only supports a finding

19   that Samsung Electronics Co., Ltd. ("SEC") engaged in any spoliation of evidence.  *See* Adverse

20   Inference Order at 1 n.3 ("Only SEC's document preservation policies are at issue here because

21   Samsung affiliates SEA and STA use Microsoft Outlook.").  Indeed, to prove its spoliation claim,

22   Apple pointed to the disparity between the significant e-mail document production by SEA and

23   STA custodians and the comparatively paltry production by SEC custodians.  *See* Order at 21 &

24   n.6.

25          Accordingly, the Court modifies the adverse inference instruction as follows:

26          Samsung Electronics Company has failed to preserve evidence for Apple's use in
             this litigation after its duty to preserve arose.  Whether this fact is important to you
27           in reaching a verdict in this case is for you to decide.

28

22

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California

## IV.     DENIAL ORDER

On August 17, 2012, Samsung moved for relief from Judge Grewal's August 16, 2012 Order Denying Samsung's Motion for an Adverse Inference Jury Instruction.  *See* ECF No. 1799. This Court issued a tentative adverse inference instruction against Apple on August 19, 2012.  On August 20, 2012, Apple filed objections, and the Court held a hearing.[11]

Judge Grewal denied Samsung's motion as untimely but did not cite to any particular Federal Rule of Civil Procedure or previously imposed Court deadline governing the timing of Samsung's motion.  To this Court's knowledge, under Federal Rule of Civil Procedure 51(a)(1), a party's request for a jury instruction is timely if made "[a]t the close of the evidence or at any earlier reasonable time that the court orders."  Thus, Samsung's motion appears to be timely under the Federal Rules of Civil Procedure.  Apple argues that Samsung's motion is untimely under Civil Local Rule 7-8(c), which requires that a sanctions motion be filed "as soon as practicable" after the movant learns the facts that give rise to its motion.  *See* ECF No. 1856 at 1.  The Court finds that Samsung's motion is also timely under the Civil Local Rules.  Samsung has consistently maintained the position that its duty to preserve did not arise until April 15, 2011, when Apple filed its complaint in this action.  *See* ECF No. 987 (Samsung's opposition to Apple's adverse inference motion) at 14-15.  Thus, Samsung did not learn of the facts giving rise to its adverse inference motion until Judge Grewal's July 24 Order found that the parties' duty to preserve in fact arose in August 2010, not April 2011.  Samsung filed its motion for an adverse inference instruction against Apple the very next day.  Samsung was therefore not untimely under Civil Local Rule 7-8(c).

In addition, although the Court agrees that Samsung could have moved for an adverse inference instruction at the same time Apple moved for an adverse inference instruction, the Court does not find that Apple was in any way prejudiced by the timing of Samsung's motion.  As already noted, Samsung has consistently maintained the position that its duty to preserve did not arise until April 15, 2011, when Apple filed its complaint in this action.  *See* ECF No. 987

---

[11] Apple was given the opportunity to respond to Samsung's motion for relief both in writing, *see* ECF No. 1856 at 1-4, and orally at the August 20, 2012 hearing.  Accordingly, Apple's objection on procedural grounds pursuant to Civil Local Rule 72-2 is without basis.

23

(Samsung's opposition to Apple's adverse inference motion) at 14-15.  Furthermore, as Apple itself acknowledges in its Motion to Strike Samsung's Untimely Motion for Adverse Inference Instruction, Samsung argued in its May 29, 2012 opposition to Apple's motion for an adverse inference that Apple itself had not issued litigation hold notices in August 2010.  *See* ECF No. 1402 (Apple's motion to strike) at 2; ECF No. 987 (Samsung's opposition) at 14-15 & n.16, 17 n.19.  Thus, Apple was on notice as of May 29, 2012, that Apple could be subject to the same document retention and discovery obligations to which Apple sought to hold Samsung.  Moreover, Apple argued for an August 2010 preservation duty trigger date knowing full well that Apple itself did not issue any litigation hold notices until after filing suit in April 2011, eight months later.  Apple's current situation is therefore of its own making.  Finally, Samsung argued in its May 29, 2012 opposition to Apple's adverse inference motion that "[i]f spoliation were a simple numbers game, then Apple itself would be guilty."  ECF No. 987 at 17-18 (explaining that, if a disparity between a custodian's custodial and non-custodial file productions is a measure of spoliation, "Apple has engaged in spoliation on a far wider scale than anything alleged against Samsung," and providing illustrative examples).  In short, since May 29, 2012, when it filed its opposition to Apple's adverse inference motion, Samsung has consistently maintained the position that it is guilty of spoliation only to the extent Apple is also guilty of spoliation.  Indeed, had Samsung filed its own adverse inference request against Apple before Judge Grewal made a finding that the duty to preserve arose in August 2010, Samsung would have been taking inconsistent positions.

In light of the foregoing, and pursuant to FRCP 51, the Court determines that Samsung's motion is timely.  The Court further determines that the timing of Samsung's motion does not prejudice Apple, who has to a large degree been on notice of the arguments contained in Samsung's motion since May 29, 2012, and who both filed an opposition to Samsung's adverse inference motion on August 6, 2012, *see* ECF No. 1591, and argued the motion before Judge Grewal on August 7, 2012.  Moreover, Apple moved for an adverse inference instruction against Samsung based on the August 2010 preservation duty trigger date and knew better than anyone else its own document retention policies.  Apple cannot now claim that it is prejudiced by having the same standard applied to itself.  Accordingly, the Court must conclude that Judge Grewal's

24

United States District Court
For the Northern District of California

1   Denial Order was contrary to law and that Samsung's underlying Motion for Spoliation Adverse

2   Inference Instruction Against Apple is subject to de novo review.  *See* ECF No. 1388 (Samsung's

3   Motion); ECF No. 1591 (Apple's Opposition); ECF No. 1600 (Samsung's Reply).

### A.  Spoliation

5       As previously stated, "a party seeking an adverse inference instruction based on the

6   destruction of evidence must establish[:] (1) that the party having control over the evidence had an

7   obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a

8   culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense

9   such that a reasonable trier of fact could find that it would support that claim or defense."

10  *Residential Funding Corp.*, 306 F.3d at 107 (quoting *Byrnie*, 243 F.3d at 107-12).  The Court

11  addresses each element in turn.

### 1.  Duty to Preserve

13      As this Court has already determined, this litigation was reasonably foreseeable as of

14  August 2010, and thus Apple's duty to preserve, like Samsung's, arose in August 2010.  *See*

15  *Micron Tech.*, 645 F.3d at 1320; *Zubulake*, 220 F.R.D. at 216.  Apple's argument that its duty to

16  preserve arose later than Samsung's because "[o]nly Samsung knew that its continuing conduct

17  would provoke litigation between the parties" is unpersuasive.  ECF No. 1591 at 9.  As recognized

18  by the Federal Circuit, "[i]t is . . . more reasonable for [a plaintiff-patentee] to foresee litigation that

19  does in fact commence, than it is for a [a defendant-accused]."  *Micron Tech.*, 645 F.3d at 1325;

20  *see id.* at 1325 n.1 (noting that the same reasoning applies to an accused infringer who brings a

21  declaratory judgment action).  Moreover, Apple sought at trial to exclude evidence of the August

22  2010 licensing discussion pursuant to Federal Rule of Evidence 408.  Apple argued strenuously

23  that "there was a dispute as of August of 2010."  Trial Tr. at 1663:23-25; *see id.* at 1734:25-1735:8.

24  Thus, for the reasons discussed above with regard to Samsung's appeal of Judge Grewal's Adverse

25  Inference Order, the Court finds that just as Samsung's duty to preserve relevant evidence arose in

26  August 2010, so too did Apple's.

27      Notwithstanding this duty, Apple did not issue any litigation hold notices until after filing

28  its complaint in April 2011.  *See* Binder Decl. ¶¶ 22-29 & Exs. 2, 3; Decl. of Alex Binder in Supp.

25

United States District Court
For the Northern District of California

1   of Samsung's Mot. for Adverse Inference Jury Instruction, ECF No. 1388-1 ("2d Binder Decl."), ¶

2   7 (Apple's first litigation hold notices issued April 29, 2011).  Moreover, although Apple does not

3   employ an automatic e-mail destruction policy like SEC's mySingle, "employees whose email

4   accounts are too large may receive automatic notices requesting that they reduce the size of their

5   email accounts," and "[e]mployees who are not subject to document retention notices are

6   encouraged to keep the size of their email accounts below certain limits."  Decl. of Beth

7   Kellermann in Supp. of Apple's Opp'n to Samsung's Mot. for Spoliation Adverse Inference

8   Instruction Against Apple, ECF No. 1593 ("Kellermann Decl."), ¶  5.  In short, Apple did not issue

9   litigation hold notices to any of its employees for the first eight months after its preservation duty

10  arose.  Moreover, even after filing its complaint against Samsung, Apple still did not issue

11  litigation hold notices to several key custodians, including designers and inventors on the patents at

12  issue in this litigation, until September 2011, December 2011, January 2012, or later.  *See* Binder

13  Decl. ¶¶ 24-29; 2d Binder Decl. ¶¶ 7-11.  During that time, not only were employees given no

14  affirmative instructions to preserve potentially relevant documents, but some employees may have

15  been encouraged to keep the size of their email accounts below certain limits, and moreover may

16  have received automatic notices requesting that they reduce the size of their email accounts.  On

17  these facts, the Court finds that Apple destroyed documents after its duty to preserve had already

18  arisen.

19                                    **2.  Culpable State of Mind**

20          Next, the Court considers whether Apple acted with the requisite *mens rea* when destroying

21  documents.  In the Ninth Circuit, a party may be entitled to an adverse inference instruction based

22  on spoliation even in the absence of a finding of bad faith.  *See Unigard*, 982 F.2d at 368 n.2

23  (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988)).  The Court need only find

24  that Apple acted with "conscious disregard" of its obligations.  *See Hamilton*, 2005 WL 3481423,

25  at *7; *Io Group*, 2011 WL 4974337, at *7.

26          As already discussed, as the plaintiff-patentee in this suit, "[Apple's] decision whether to

27  litigate or not was the determining factor in whether or not litigation would in fact ensue."  *Micron*

28  *Tech.*, 645 F.3d at 1325.  Thus, Apple was on even greater notice than was Samsung of the

26

reasonable likelihood of this litigation. Apple's primary defense regarding state of mind is its unmeritorious position that "Apple was under no duty to preserve until it learned of Samsung's intent to release new infringing products in Spring 2011." ECF No. 1591 (Apple opposition) at 11. Yet Apple approached Samsung in August 2010 with a presentation of Apple's infringement positions, which Apple has argued triggered Samsung's preservation duty. Apple's argument that it had no reasonable expectation of litigation until Samsung released yet *another* generation of allegedly infringing products is simply not credible. Another Apple argument is that it had no obligation to issue litigation hold notices because many of its employees were already subject to numerous document retention notices related to *other* litigations, and that "Apple has a culture of document retention." ECF No. 1856 at 2. However, the fact that Apple may have been in compliance with its document preservation duties related to other litigations, which may have involved different parties, different claims, different products, and different witnesses, does not in any way absolve Apple of its preservation duties in relation to *this* lawsuit that Apple filed against Samsung. By failing to do as little as issue a litigation hold notice to any employees for eight months after its preservation duty arose, and by further delaying issuance of litigation hold notices to several key custodians, the Court finds that Apple acted with not just simple negligence but rather conscious disregard of its duty to preserve.

### 3. Relevance

Finally, the Court considers whether the documents destroyed by Apple were relevant to this litigation. "[S]poliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Dong Ah Tire & Rubber Co.*, 2009 WL 1949124, at *10 (citing *Phoceene Sous-Marine*, 682 F.2d at 806). "[I]f spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation" because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *Hynix Semiconductor*, 591 F. Supp. at 1060.

Here, Samsung points to the paltry production of emails and documents from at least 13 key Apple witnesses, including Chris Stringer (a named inventor on the D'677 and D'889 Patents);

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Shin Nishibori (a named inventor on the D'889, D'087, and D'677 Patents); Jonathan Ive (a named

2   inventor on the D'087, D'677, and D'899 Patents); Scott Forstall (a named inventor on the '163

3   Patent); and Steve Jobs (former CEO of Apple and a named inventor on the D'087, D'677, and

4   D'889 Patents). *See* Binder Decl. ¶¶ 20-21; *see* ECF No. 1388 (Samsung's motion) at 6-8; ECF

5   No. 1600 (Samsung's reply) at 10-11. For example, Chris Stringer produced only 38 custodial

6   documents and only 15 custodial e-mails, compared to 519 non-custodial e-mails. *See* Binder

7   Decl. ¶¶ 20-21; Decl. of Jason Bartlett in Opp'n to Samsung's Mot. for Adverse Inference Jury

8   Instruction, ECF No. 1592 ("Bartlett Decl."), ¶ 2. Shin Nishibori produced only 94 custodial

9   documents and 18 custodial e-mails, compared to 136 non-custodial e-mails. *See* Binder Decl. ¶¶

10   20-21; Bartlett Decl. ¶ 2. Steve Jobs produced only 54 custodial documents and 51 custodial e-

11   mails, compared to 1,670 non-custodial e-mails. *See* Binder Decl. ¶¶ 20-21; Bartlett Decl. ¶ 2.

12   Finally, Scott Forstall produced only 172 custodial e-mails, compared to 1,027 non-custodial e-

13   mails. *See* Binder Decl. ¶¶ 20-21; Bartlett Decl. ¶ 2. It is reasonable to infer that documents

14   produced by these key Apple witnesses, who are named inventors on various Apple patents

15   asserted in this suit, would have been relevant to this litigation, and likewise that the destruction of

16   any such documents prejudiced Samsung. *See Leon*, 464 F.3d at 960; *Residential Funding*, 306

17   F.3d at 109; *In re Napster*, 462 F. Supp. 2d at 1078. This same type of statistical analysis was used

18   by Judge Grewal to support his finding that Samsung spoliated evidence, notwithstanding

19   Samsung's substandard preservation efforts. *See* Adverse Inference Order at 19-21. Furthermore,

20   although Apple argues that it was more prejudiced by the destruction of Samsung documents

21   between August 2010 and April 2011, when Samsung was still in the process of designing some of

22   the accused products, than vice versa, the Court agrees with Samsung that Apple's destruction of

23   documents during that same time period also prejudiced Samsung. Apple's documents during that

24   time period, which may have included Apple's internal assessments, teardowns, and other analyses

25   of Samsung products, would be highly probative of issues in this case. It is only fair that the same

26   standard of analysis be applied in adjudging the merits of Samsung's motion as was applied to

27   Apple's.

28

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California

In sum, the Court finds that Apple's failure between August 2010 and April 2011 to issue any litigation hold notices or take other precautionary measures to ensure the preservation of evidence relevant to this litigation violated Apple's duty to preserve.

## B. Sanction

As a sanction for Apple's spoliation of relevant evidence, Samsung requests that the Court grant adverse inference instructions against Apple "in the same manner and in the same language that it gives any such instruction with respect to Samsung." ECF No. 1388 (Samsung Motion) at 9. For the same reasons discussed above with respect to Samsung's appeal of Judge Grewal's Adverse Inference Order, the Court determines that only a mild adverse inference instruction is warranted in light of the degree of Apple's fault and the degree of prejudice Samsung suffered. *See Nursing Home Pension Fund*, 254 F.R.D. at 563. Accordingly, in light of the foregoing, the Court GRANTS Samsung's motion for a mirror adverse inference instruction against Apple. In light of all the foregoing discussion, the Court will instruct the jury as follows:

> Apple has failed to preserve evidence for Samsung's use in this litigation after its duty to preserve arose. Whether this fact is important to you in reaching a verdict in this case is for you to decide.

## V. CONCLUSION

For all the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Samsung's motion for relief from Judge Grewal's July 24, 2012 Order, and GRANTS Samsung's motion for relief from Judge Grewal's August 16, 2012 Order. In lieu of the adverse inference instruction in Judge Grewal's July 24, 2012 Order, the Court finds the following jury instructions are warranted:

> Samsung Electronics Company has failed to preserve evidence for Apple's use in this litigation after its duty to preserve arose. Whether this fact is important to you in reaching a verdict in this case is for you to decide.

> Apple has failed to preserve evidence for Samsung's use in this litigation after its duty to preserve arose. Whether this fact is important to you in reaching a verdict in this case is for you to decide.

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

However, the parties indicated at the August 20, 2012 hearing that if the Court decided to issue identical adverse inference instructions against both parties, they prefer that neither adverse inference instruction be given.  Accordingly, the Court will not give either jury instruction. **IT IS SO ORDERED.**

Dated: August 21, 2012

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 11-CV-01846-LHK
ORDER RE: MOTIONS FOR RELIEF FROM NONDISPOSITIVE MAGISTRATE JUDGE ORDERS

United States District Court
For the Northern District of California