HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000


MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OBJECTIONS AND RESPONSE TO SAMSUNG'S PROFFER OF WITNESS TESTIMONY AND EXHIBITS** |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3      TABLE OF AUTHORITIES ..................................................................................... ii

4      A.     Response to Samsung's Proffer Regarding the 035 Model ..................................... 1

       B.     Response to Samsung's Proffer Regarding the Home Screen Button ................... 2

5      C.     Response to Samsung's Proffer Regarding Apple's Additional, Unasserted
6             Design Patents .................................................................................................... 4

       D.     Response to Samsung's Proffer Regarding Non-Infringement Theories
7             Related to Galaxy S II Phones ............................................................................ 5

8      E.     Response to Samsung's Proffer Regarding Bloomberg Patent Application ........... 6

       F.     Response to Samsung's Proffer Regarding Samsung Design Patents ................... 6

9      G.     Response to Samsung's Proffer of Testimony of Dale Sohn ................................ 7

10     H.     Response to Samsung's Proffer of Testimony from H.S. Park ............................. 8

11     I.     Response to Samsung's Proffer Regarding Next Big Thing Ad Campaign ......... 10

       J.     Response to Samsung's Proffer of Testimony of Gregory Joswiak ................... 11

12
       K.     Response to Samsung's Proffer Regarding Offer Rates for LTE Patent
13            Portfolios ......................................................................................................... 12

14     L.     Response to Samsung's Proffer Regarding Apple Utility Patents ...................... 13

15            1.     Blue Glow Design-Around for the '381 Patent....................................... 13

15            2.     Criticism of Apple's Expert Witness ..................................................... 16

16            3.     U.S. Patent No. 6,498,590...................................................................... 17

17            4.     Order Granting Request for Ex Parte Reexamination............................. 18

17            5.     Design-Around for '163 Patent............................................................... 18

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bhatti v. Trs. of Boston Univ.,*
    659 F.3d 64 (1st Cir. 2011) ................................................................. 15, 19

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ....................................................................... 5

*Gorham Mfg. Co. v. White*,
    81 U.S. 511 (1872) ....................................................................................... 6

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*
    988 F.2d 1117 (Fed. Cir. 1993)……………………………………………11

*Leatherman Tool Grp. v. Cooper Indus., Inc.,*
    131 F.3d 1011 (Fed. Cir. 1997) ................................................................ 6-7

*Luster v. Ill. Dept. of Corr.*
    652 F.3d 726 (7th Cir. 2011) ................................................................. 15, 19

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005) ...................................................................... 1

*Oracle Am., Inc. v. Google Inc.*,
    No. 10-cv-3561, 2012 WL 1189898 (N.D. Cal. Jan. 4, 2012) ................................ 18

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009) ................................................................... 1

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) ....................................................................... 2

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...................................................................... 4

*Tone Bros., Inc. v. Sysco Corp.*,
    No. 90-cv-60011, 1992 WL 200128 (S.D. Iowa Mar. 17, 1992),
    *vacated on other grounds*, 28 F.3d 1192 (Fed. Cir. 1994) ....................................... 5

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    77 F. Supp. 2d 1045 (D. Minn. 1999), *aff'd*, 290 F.3d 1364 (Fed. Cir. 2002) ............. 1

*Tyco Thermal Controls, LLC v. Redwood Indus., LLC*,
    No. C 06-7164 SBA, C 10-1606 SBA, 2012 U.S. Dist. LEXIS 91598
    (N.D. Cal. June 29, 2012)……………………………………………………7

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
    259 F.3d 1101 (9th Cir. 2001)…………………………………………….......................7


**OTHER AUTHORITIES**

Fed. R. Civ. P.
    Rule 26(e)............................................................................................................ 1
    Rule 37(c)(1) ...................................................................................................... 7
    Rule 103(a)(2) ................................................................................................. 1, 4

Since the trial ended, Samsung has flooded the Court's record with a random assortment—a potpourri—of evidence.  Samsung ignores that much of the evidence it presents was not excluded on evidentiary grounds, but stricken because Samsung withheld it during fact discovery.  Samsung "proffers" some evidence and arguments that it did not even raise at trial.  Samsung's proffer goes far beyond what Rule 103(a)(2) contemplates.  Apple therefore respectfully submits the responses and counter-proffers herein.

**A.      Response to Samsung's Proffer Regarding the 035 Model**

Samsung's "proffer of evidence regarding the 035 model" is based on a faulty premise:  a proffer suggests the evidence at issue was excluded, but the 035 model was not excluded on an evidentiary basis.  The 035 model was *admitted* as evidence; Samsung was simply prohibited from making certain arguments due to its failure timely to disclose during fact discovery the model as part of its non-infringement theories.  (Trial Tr. at 1212:15-1223:2.)

Samsung did not disclose a non-infringement theory related to the 035 model during fact discovery.  Samsung's timely response to Apple's contention interrogatory No. 11, which requested Samsung to "explain the factual and legal bases" for Samsung's affirmative defense of non-infringement, consisted of repetitive boilerplate stating the accused products "are not substantially similar" to the asserted design patents.  (Declaration of Nathan Sabri ("Sabri Decl.") Ex. 1.)  Even Samsung's untimely "supplemental response," which was served weeks after the close of discovery, said nothing about the 035 model.  (*Id.* Ex. 2.)  A district court has the discretion to prevent a party from asserting theories that were not timely disclosed during fact discovery.  *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1353-58 (Fed. Cir. 2005) (not abuse of discretion to exclude theories due to failure to timely supplement interrogatories); *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 544 (N.D. Cal. 2009) (Rule 37(c)(1) "mandates that a party's failure to comply with . . . the supplemental disclosure obligations under [Rule] 26(e) results in that party being precluded from use" of withheld information); *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1061-62 (D. Minn. 1999), *aff'd*, 290 F.3d 1364 (Fed. Cir. 2002) (party violated Rule 26(e) by failing to "completely disclose its position" on patent invalidity in response to contention interrogatories).  It is on this basis—not an evidentiary

1   basis—that the Court properly prevented Samsung from ambushing Apple with an undisclosed

2   theory at trial.  (Trial Tr. at 1222:16-1223:2.)

3        Had the Court permitted Samsung to use the 035 model in its cross examination of Mr.

4   Bressler, Apple would have elicited testimony from Mr. Bressler explaining why he did not

5   consider the 035 model in forming his opinions.  In particular, Mr. Bressler would have testified

6   that photographs of the 035 model were excluded from the design application for the D'889

7   patent.  (Sabri Decl. Ex. 3 at 229:13-23, 230:15-25.)  Mr. Bressler would have explained that the

8   035 model differs in several respects from the asserted patent.  *See Payless Shoesource, Inc. v.*

9   *Reebok Int'l, Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (improper to compare accused design to

10  alleged embodiment where cited features were not part of claimed designs).  For example, Mr.

11  Bressler would have testified that the 035 model appears to have a gap between the edge of the

12  screen and rim of the case, but the D'889 patent does not depict any such gap.  (Sabri Decl. Ex. 3

13  at 231:25-234:6.)  Further, Mr. Bressler would have testified that the iPad 2 design embodies and

14  is substantially the same as the D'889 design.  (*Id.* Ex. 4 ¶¶ 276-82.)

15            **B.      Response to Samsung's Proffer Regarding the Home Screen Button**

16       Samsung's proffer purports to "support the relevance and admissibility of the file wrapper

17  for the Home Screen Button trademark application," but, like its proffer regarding the 035 model,

18  Samsung ignores that the home screen button trademark application was not excluded on an

19  evidentiary basis.  The Court did not address whether the home screen button trademark

20  application is relevant or admissible.  Rather, the Court sustained Apple's objections to this

21  exhibit because Samsung failed timely to produce or disclose it during discovery.

22       Samsung did not produce DX628, the home screen button application, until May 16, 2012,

23  over *two months* after the close of fact discovery.  It did not cite the home screen button

24  application in a single interrogatory response—not as a basis for any of Samsung's allegations

25  relating to Apple's trade dress, nor as a basis for any of Samsung's allegations relating to Apple's

26  design patents.

27       The Court evenhandedly and consistently sustained objections to the use of documents not

28  timely produced as a part of formal discovery.  For example, the Court did not permit Apple to

1   introduce a document that was publicly available *and filed* in this case over a year ago because it

2   was not formally produced during fact discovery.  (Trial Tr. at 942:20-943:13.)  The Court first

3   sustained an objection to Samsung's proposed use of the home screen button application, marked

4   as exhibit DX628, in Samsung's opening statement.  (Dkt. No. 1456) ("Samsung does not even

5   attempt to rebut Apple's objection that this slide's theory of non-infringement was never

6   disclosed in Samsung's contention interrogatory responses or in Samsung's expert reports.")  The

7   Court next sustained an objection to Samsung's attempt to use the same exhibit in the cross

8   examination of Mr. Stringer, holding, "Samsung has not established that it disclosed DX628 in a

9   timely manner.  The only date provided is the April 27, 2012 Deposition of Russell Winer."  (Dkt.

10  No. 1519 at 2.)  April 27 was nearly two months after the close of discovery.  The Court sustained

11  an objection again when Samsung attempted to use the same document in its cross examination of

12  Apple expert Hal Poret.  (Dkt. No. 1596 at 3.)

13          Samsung's proffer is also misleading to the point of being inaccurate.  Samsung argues

14  that the home screen button application would "rebut[] trial testimony from Apple's secondary

15  meaning survey expert, Hal Poret, that Apple's alleged trade dress has acquired secondary

16  meaning based on survey results where respondents were shown the iPad with home button

17  visible."  (Proffer at 3.)  But Mr. Poret tested association with *and without* the home button

18  visible.  (Trial Tr. at 1588:20-1589:5.)  Mr. Poret concluded that the overall appearance of the

19  iPad is highly known "even without being able to see the icons or the home button."  (*Id.* at

20  1589:23-1590:5.)  Samsung's proffer also ignores that Mr. Poret "covered up the home button" in

21  the iPhone images used in his study so "the home button [would not] influence the results."  (*Id.*

22  at 1580:13-25.)  PX23—an admitted exhibit showing the actual stimuli Mr. Poret used in his

23  studies—confirms Mr. Poret's testimony.  Had the Court permitted Samsung to use the home

24  screen button application as proffered, Apple would have directed the jury to PX23 and elicited

25  testimony from Mr. Poret reiterating the above facts.

26

27

28

C.     **Response to Samsung's Proffer Regarding Apple's Additional, Unasserted Design Patents**

Samsung's proffer of evidence regarding unasserted Apple design patents raises an argument that it never offered the Court during trial and theories that were not disclosed during fact discovery.

First, Samsung argues that Apple "opened the door" to introduction of Apple's unasserted design patents by emphasizing the number of patents that it owns.  (Proffer at 4.)  Notably, Samsung cites no order or trial transcript section rejecting such an argument, because Samsung *never raised this argument at trial*.  A proffer under Federal Rule 103(a)(2) contains the substance of evidence excluded by the Court to preserve a claim of error; it is not a place to raise new arguments that were never even presented to the Court.

Second, Samsung's proffered theory was not timely disclosed during fact discovery.  Samsung argues that Apple's unasserted design patents are relevant to interpret the "scope" of Apple's asserted design patents.  Such a theory was not disclosed by Samsung during fact discovery in responses to contention interrogatories.  As discussed above, Samsung's timely response to Apple's non-infringement interrogatory simply repeated that Samsung's accused products are not substantially similar to Apple's asserted design patents.  (Sabri Decl. Ex. 1)  Samsung's timely response to Apple's invalidity interrogatory did not reference Apple's additional unasserted design patents either.  (*Id.*)  Samsung cites a supporting declaration to its Opening Memorandum Regarding Claim Construction (Proffer at 5 n.1, citing Dkt. No. 1091), but this declaration was filed on June 12, 2012, over *three months* after the close of fact discovery.

Third, the Court was correct to reject Samsung's attempt to narrow the scope of Apple's asserted design patents by relying on Apple's non-prior unasserted design patents and patent applications.  Narrowing the scope of patents by looking to subsequent extrinsic evidence would fly in the face of well-settled patent law and undermine the public notice function of patents.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005).  Nothing in *Egyptian Goddess* suggests the infringement analysis should include any reference that is not prior art, even if the

later reference is a patent issued to the plaintiff. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676-77 (Fed. Cir. 2008) (prior art provides "frame of reference" and is useful in comparison of claimed and accused designs); *see also Tone Bros., Inc. v. Sysco Corp.*, No. 90-cv-60011, 1992 WL 200128, at *5 (S.D. Iowa Mar. 17, 1992) (scope of patent "limited only by its terms and not by subsequent patents obtained by [the patentholder]"), *vacated on other grounds*, 28 F.3d 1192 (Fed. Cir. 1994).

### D.   Response to Samsung's Proffer Regarding Non-Infringement Theories Related to Galaxy S II Phones

As with Samsung's late disclosed theories discussed above, the Court did not exclude Samsung's non-infringement theories related to Galaxy S II phones on an evidentiary basis; the Court struck and sustained objections to such theories because of Samsung's discovery failures. Samsung's timely non-infringement interrogatory response simply repeated the boilerplate language that the accused products "are not substantially similar to an ordinary viewer," save a reference to the preliminary injunction declaration of Samsung expert Sherman.  (Sabri Decl. Ex. 1).  Samsung did not supplement its response until weeks after the close of discovery.  (Dkt. No. 939-4 ¶ 24.) The Court was correct to reject Samsung's attempt to sandbag Apple with late disclosed non-infringement theories.

Samsung's implication that Apple is responsible for Samsung's inadequate interrogatory responses because Apple "failed to identify" various Galaxy S II phones until four days before the close of discovery is a red herring.  Apple notified Samsung as early as the Amended Complaint, filed June 16, 2011—before Samsung's Galaxy S II phones were even released—that these phones would infringe Apple's patent and trade dress rights.  (Dkt. No. 75 ¶ 92.)  As early as August 3, 2011, Apple's written discovery consistently defined "Products at Issue" to include "Galaxy S II (aka Galaxy S 2) phones."  (*See, e.g.*, Dkt. No. 822-10 at 1-2; Dkt. No. 822 (Kim Decl., filed under seal) ¶ 3.)  Apple timely amended its interrogatory responses during fact discovery.  Samsung has no excuse for its failure to address Galaxy S II phones in timely contention interrogatory responses.

### E.   Response to Samsung's Proffer Regarding Bloomberg Patent Application

The "Bloomberg Patent Application" Samsung proffers (U.S. Patent Pub. No. 2004/41504 A1) led to U.S. Patent 6,919,678—a utility patent, *not* a design patent, contrary to Samsung's "D'504" abbreviation.  This patent was stricken along with related Bloomberg design patents because of Samsung's failure timely to disclose the references.  (Dkt. Nos. 939-4 Ex. 27 (filed under seal) at 37-38, 939-12 at 7, 1144 at 4-5.)  Like the many other untimely disclosed references discussed above, Samsung failed to include the Bloomberg patents in its interrogatory responses during fact discovery.

Moreover, if Samsung had introduced testimony relating to the Bloomberg patent application, Apple would have elicited testimony from Mr. Bressler rebutting Samsung's proffered argument.  Mr. Bressler would have testified that the Bloomberg design lacks an edge-to-edge transparent front surface and an underlying rectangular element with even borders around the perimeter of the device.  (Sabri Decl. Ex. 5 at 13-14.)  Mr. Bressler would also have testified that the Bloomberg design has a much thicker profile with straight sides forming an angled edge with the back surface, and a protruding rectangular element attached to the rear of the device.  (*Id.* at 15.)

### F.   Response to Samsung's Proffer Regarding Samsung Design Patents

Samsung's proffer regarding Samsung design patents reiterates the incorrect argument it unsuccessfully raised in opposition to Apple's motions in limine and attempts to recharacterize the same argument as rebuttal of willfulness.  Samsung argued in opposing Apple's motion in limine to exclude non-prior art design patents that Samsung's design patents are relevant because they were issued as "new and original" over Apple's design patents, and "by definition, [a]re not substantially similar to (i.e., [do] not infringe) other design patents."  (Proffer at 9; Dkt. No. 1208-3 at 6.)  Samsung now argues in addition that this purported lack of similarity in the eyes of the USPTO rebuts charges of willfulness.  It is well settled that issuance of a patent for an accused product provides no protection from infringement of an asserted patent.  In fact, in *Gorham Mfg. Co. v. White*, the Supreme Court held that two separately patented spoon and fork handle designs used by White infringed Gorham's patents. 81 U.S. 511, 528-31 (1872); *see also Leatherman*

1   *Tool Grp. v. Cooper Indus., Inc.,* 131 F.3d 1011, 1015 (Fed. Cir. 1997) (patent conveys right to

2   exclude others, not affirmative right to practice claimed invention).  Moreover, Samsung cites

3   nothing suggesting any foundation for the assertion that Samsung executives and designers relied

4   on USPTO decisions in ignoring the evidence of notice and willfulness Apple raised at trial—

5   including repeated warnings from Apple, Samsung employees, the public, and Samsung's own

6   business partners that Samsung's products were too similar to Apple's and appeared to be copied.

7          Samsung's argument that its designers and inventors "would have testified that Samsung's

8   accused products are the result of Samsung's internal design team work product, not the result of

9   copying Apple's designs" has nothing to do with the excluded Samsung design patents.  The

10  court did not prevent Samsung from presenting such testimony.  Samsung could have called the

11  designers and inventors of its accused products to testify regarding their work and the alleged lack

12  of copying.  Samsung simply chose not to.

13         **G.     Response to Samsung's Proffer of Testimony of Dale Sohn**

14         The Court properly excluded Dale Sohn's testimony because Samsung did not timely

15  disclose Mr. Sohn as a witness.  Mr. Sohn was not among the nearly 100 witnesses listed on

16  Samsung's initial disclosures.  (*See* Dkt. Nos. 1647, 1676, 1690.)  Samsung was therefore

17  properly precluded from calling him.  Fed. R. Civ. P. 37(c)(1) (failure to disclose witness under

18  Rule 26 prevents party from presenting witness at trial unless omission was "substantially

19  justified" or "harmless"); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-7

20  (9th Cir. 2001) (burden to prove exception to "automatic" exclusion sanctions under Rule

21  37(c)(1) is on party facing sanctions); *Tyco Thermal Controls, Inc. v. Redwood Indus.*, Case No.

22  C 06-7164 SBA, C 10-1606 SBA, 2012 U.S. Dist. LEXIS 91598, at *5 (N.D. Cal. June 29, 2012)

23  (exclusion of witnesses appropriate because party failed to disclose witnesses under Fed. R. Civ.

24  P. 26(a)(1) and made no showing that such failure was harmless or substantially justified).

25         The omission of Mr. Sohn from Samsung's disclosure list was not harmless.  Samsung

26  fought hard to prevent Apple from taking his deposition, repeatedly representing that he did not

27  have personal knowledge relevant to the case.  Ultimately Apple was limited to taking a 3-hour

28  deposition which did not occur until well after the close of discovery.

1    The Sohn testimony described in Samsung's proffer could have been introduced through

2    Justin Denison, Samsung Telecommunications America's Chief Strategy Officer, who testified as

3    Samsung's 30(b)(6) designee during discovery and at trial.

**H.    Response to Samsung's Proffer of Testimony from H.S. Park**

4

5    Samsung expert Itay Sherman's March 23, 2012 expert report contained the opinion that

6    there is "no basis to believe" the F700 and other Samsung designs were "copied from Apple's

7    designs" and that "the substantial similarity of these designs is further proof that [Apple's design

8    patents] lacked any novelty."  He continued by citing the same "MPCP Project 2006" documents

9    that Samsung shows in its proffer.  He wrote:

> The following images were included in several reports and
> presentations, which I understand Samsung created between July
> and September 2006 in connection with the project that yielded the
> F700 [Bates number].  I understand that these reports were designed
> to create and recommend an interface for a touchscreen mobile
> phone that was currently in development.  The images show a
> design for a touchscreen phone having a rectangular shape, corners
> with equal radii, a large rectangular display covering most of the
> front surface, a single button below the display screen, a black
> border surrounding the display area, and a thin, white, even border
> on the perimeter of the device.  These internal designs were created
> before the announcement or disclosure of the first iPhone or the
> filing of the application for the D'677 patent.

17   (Dkt. No. 939-4 Ex. 27 (sealed) at 39-40.)  Mr. Sherman's report cited Hyoung Shin Park's

18   testimony and included images of the F700 product and KR30-0452985 patent that Samsung

19   depicts at page 15 of its proffer, as well as the four side-by-side images that Samsung includes at

20   page 16 of its proffer.  (*Id.*)  Similarly, Samsung expert Anders relied on the KR 30-0452985 and

21   patent application (which Samsung describes as "the design patent application for the F700") as

22   "prior art" relevant to non-infringement.  (*E.g., id.* Ex. 30 (sealed) at Part B page 8, Part C page

23   5.)  Samsung expert Lucente also cited the F700 and MPCP Project 2006 as prior art to Apple's

24   GUI design patents.  (*Id.* Ex. 26 (sealed) at 36, 37, 58.)  Mr. Lucente's report also included the

25   same four side-by-side images that Samsung includes at page 16 of its proffer. (*Id.* at 37.)

26   Magistrate Judge Grewal properly excluded all of the above evidence and analysis

27   because it was untimely disclosed.  (Dkt. No. 1144 at 3-5.)  Judge Grewal's Order was grounded

28   in the overall need for fairness in litigation as a whole:

Patent cases in this district and many others follow a familiar sequence of steps to get at the theories and evidence that experts will present to the jury at trial. . . . [O]nly when the patent local rules requiring contentions kick in, or contention interrogatory responses are served, can parties begin to understand the particulars of their adversary's case. . . . Perfectly conceived and executed, expert trial testimony in a patent case should be no different than in other cases: the testimony is supported by a report which in turn reliably applies the theories disclosed in the contentions to evidence disclosed during fact discovery.

Unfortunately, in either its conception or execution or both, expert trial testimony in patent cases is often far from perfect. This case is no exception. Most importantly for this order, many of the expert reports offer theories or rely on evidence never previously disclosed as required.  Even if disclosed somewhere, the parties have forced each other to comb through the extraordinarily voluminous record to find them, rather than simply amending their contentions or interrogatory responses as they should.  This is unacceptable. Patent litigation is challenging and expensive enough without putting one party or the other to the task of sifting through mountains of data and transcripts to glean what is at issue. . . . . [W]hen asked to strike some or all of an expert report, the court must revert to a simple question: will striking the report result in not just a trial, but an overall litigation, that is more fair, or less?

It was on these grounds that Judge Grewal struck the testimony of Sherman, Anders, and Lucente, and the Court affirmed the Order.  (Dkt. No. 1545.)

The Court *did* allow Samsung to rely on the F700 for alternative design and functionality purposes.  (*See, e.g.*, Trial Tr. at 1184:1-4; Dkt. No. 1896 at 2 (overruling objections to closing argument slides depicting F700).)  The Court did *not* allow Samsung to use the testimony of Ms. Park to nullify Judge Grewal's order striking the F700 for purposes of invalidity and non-infringement.  As the Court found:

While the F700 may be probative of non-willfulness and to rebut an allegation of copying, it is unlikely that a jury will be able to consider Ms. Park's testimony without using it for a purpose that has been excluded by Judge Grewal.  Ms. Park will testify regarding the creation of the F700 and the KR'985, and it is highly likely that the jury will view this as evidence of an independent derivation of the designs at issue.  Moreover, the Court is unconvinced that a limiting instruction will sufficiently address this issue.  Therefore, under FRE 403, the Court excludes the testimony of Ms. Park.

(Dkt. No. 1690 at 9.)

1    Moreover, Ms. Park's personal knowledge and designs are not relevant to the Samsung

2    products at issue.  Ms. Park admitted she is unaware of any Samsung phone having been based on

3    the F700.  (Dkt. No. 1648-4 at 50:25-51:3.)  Samsung Galaxy S head designer Minhyouk Lee,

4    when asked whether the idea for the design of the Galaxy S came from the F700, responded that

5    the accused Galaxy S phone design was "his own independent one."  (Dkt. No. 1648-5 at 71:20-

6    73:1.)

7    Samsung also proffers testimony from Ms. Park relating to Samsung's user interface

8    design (Proffer at 16), but Ms. Park has testified that she is not a user interface designer and

9    "[doesn't] know about the details" of the F700 UX team because she "was not involved in their

10   task."  (Sabri Decl. Ex. 6 at 10:2-4, Ex. 7 at 66:23-67:4.)  Ms. Park therefore does not have

11   personal knowledge of Samsung's user interface plans and could not have provided the proffered

12   testimony.

13   Samsung's proffer makes plain the correctness of the Court's ruling.  Samsung's proffer

14   lines up exactly with the expert testimony that Judge Grewal excluded.  Its brief cites exhibits and

15   indeed in many cases depicts the exact same pages of exhibits that were depicted in the stricken

16   portions of the Sherman, Anders and Lucente reports.  Samsung's intention was plainly to

17   introduce through percipient witness testimony the same excluded theories of non-infringement

18   and invalidity that its experts were barred from presenting at trial.

19   **I.       Response to Samsung's Proffer Regarding Next Big Thing Ad Campaign**

20   Samsung's proffer regarding its Next Big Thing television campaign misrepresents what

21   Samsung offered at trial and is factually inaccurate.

22   At trial, Samsung sought to use *one* 30-second advertisement in its direct examination of

23   Justin Denison.  It disclosed a single advertisement in advance of Mr. Denison's examination

24   ("DX629 at SAMNDCA00312556 (30 sec.)").  (Sabri Decl. Ex. 8.)  The Court sustained Apple's

25   objection, and when Samsung re-raised the issue during trial, Samsung's counsel reiterated that

26   he only sought to use one advertisement:  "I'd request permission to play a 30 second Samsung

27   television advertisement called Urban Camping.  It's DX 629.  It's 30 seconds."  (Trial Tr. at

28

888:13-19.)  Samsung now proffers the full collection of 21 advertisements comprising DX629, totaling over ten minutes of video, but that is not what was offered and excluded at trial.

The advertisement in question has nothing to do with design, much less "distinctions" between Samsung and Apple and "the superiority of Samsung's designs" as Samsung claims. (Proffer at 18.)  The thirty second spot shows the back of a Samsung Galaxy S-II phone, refers to the speed of a search executed on the 4G phone, and pokes fun at a trio preparing to go "camping" for "the new phone."  (Arnold Decl. Ex. R at SAMNDCA00312556.)  The advertisement draws no comparison between a Samsung product and an Apple product and does not refer to design in any way.  It is wholly irrelevant to likelihood of confusion, dilution, and Samsung's intent in choosing the trade dress of its infringing products.  Samsung's proffer serves only to reinforce that the Court was correct to sustain Apple's objection.[1]

### J.    Response to Samsung's Proffer of Testimony of Gregory Joswiak

Samsung proffers a snippet of deposition testimony from Gregory Joswiak, an Apple executive who Samsung asked about customer confusion relating to Apple and Samsung products.  Apple objected to this testimony as irrelevant to Apple's trade dress dilution claim. (*See* Dkt. No. 1756 at 1-2.)  Samsung apparently concedes that point as it argues only that the proffered testimony should have been admitted as relevant to Apple's *design patent* infringement claims and cites only design patent law.

The patent statute does not include "deception" as a factor in the design patent infringement analysis.  *See* 35 U.S.C. § 271(a); 35 U.S.C. § 289.  The Federal Circuit has held a design patent to be infringed even as it found that purchasers of the accused product were not "likely to be confused or deceived or mistakenly think they were buying the" patent-holder's product.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126, 1134 (Fed. Cir. 1993).

---

[1] Even the other advertisements that Samsung *did not offer* at trial belie Samsung's claim of relevance.  The vast majority, like the advertisement discussed above, simply focus on a particular feature of the phone –e.g., turn-by-turn navigation (SAMNDCA00312559), voice texting (SAMNDCA00312562), or carrier speed (SAMNDCA00311549).  The overall focus of the advertising campaign, like the video Samsung actually offered at trial, appears to be poking fun at consumers waiting in line for a new phone.

1    This Court too has held that "[c]onsumer confusion is not required to establish design patent

2    infringement." (Dkt. No. 1774; *see also* Trial Tr. at 2200 (disagreeing with Samsung that a

3    showing of "deception at the time of purchasing" is required for design patent infringement).)

4    Even Samsung conceded that Apple did not have to "prove actual confusion … or actual

5    deception." (Trial Tr. at 2203; *see also id.* ("I think we agree on that. We're not saying that Apple

6    has to adduce evidence of buyers who have been actually deceived.").)

7          In excluding the Joswiak testimony from evidence, the Court relied on Rule 403 and in

8    particular the risk that the jury would draw an improper inference from it:

9                    Samsung argues that Joswiak's testimony that consumers do not
                    confuse Apple and Samsung phones is relevant to design patent
10                   infringement.  Consumer confusion is not required to establish
                    design patent infringement.  Instead, design patent infringement is
11                   established by considering whether the accused device creates the
                    same overall visual impression as the patent in suit.  Lack of
12                   consumer confusion is not strongly probative of the issue of
                    whether the accused devices do not infringe.  In contrast, this
13                   testimony is outweighed by the risk that the jury would draw an
                    improper inference.
14

15   (Dkt. No. 1774 at 2.)  In this case, the jury was asked to consider tablet-related trade dress

16   infringement claims (where evidence of actual confusion may be highly probative) side-by-side

17   with Apple's phone-related design patent infringement claims (where absence of actual confusion

18   evidence is *not* highly probative).  The risk of juror confusion between the two claims was high,

19   and the Court's decision to exclude the Joswiak testimony under Rule 403 in an attempt to avoid

20   such confusion was entirely proper.

21        **K.      Response to Samsung's Proffer Regarding Offer Rates for LTE Patent
                  Portfolios**
22

23          Had the Court permitted Samsung to present evidence of LTE license offer rates, Apple

24   would have elicited testimony from at least Boris Teksler, Apple's Director of Patent Licensing

25   and Strategy, regarding Apple's licensing practices for patents declared-essential to the LTE (4G)

26   standard, a next generation wireless network distinct from the UMTS (3G) standard.

27   Additionally, Apple would have elicited testimony from its FRAND licensing expert, Mr.

28

1   Donaldson, regarding the licensing of patents declared-essential to the LTE (4G) standard, and

2   any differences between license rates for LTE (4G) and UMTS (3G) technologies.

3         Further, Apple would have cross examined Prof. Teece, Samsung's licensing and non-

4   disclosure expert, based upon his deposition testimony, and as necessary, sought to introduce

5   such sworn deposition testimony into evidence, including at least the following: "Q. LTE is a

6   different standard from UMTS?  A. Yes.  Q. It is a so-called fourth-generation standard versus

7   third generation, which is UMTS?  A. That is correct."(PX2060.143, Teece Dep. 141:7-11); "Q.

8   And do you know whether any or all of the patents declared essential to UMTS are also declared

9   essential to LTE? . . . A: Do I know whether any of them are? Q. Yes.  A. I believe that some of

10  them are. I just don't know which ones and how many." (PX2060.143, Teece Dep. 141:12-20);

11  *see also* PX2060.152 (Teece Dep. 150:6-16) ("Q. Have these [LTE] rates ever shown up in any

12  licenses, to your knowledge? [. . .]  A: I haven't seen any licenses with these rates.").

13        Samsung also makes a proffer regarding the expected testimony of Eric Stasik, its

14  telecommunications industry licensing expert.  In particular, Samsung states that, absent the

15  Court's exclusion of information on LTE offer rates, Mr. Stasik would have testified about these

16  offer rates and "Dr. Teece intended to rely" on such testimony.  (Proffer at 20.)  However,

17  Samsung never identified Mr. Stasik on its rolling lists of trial witnesses, even those filed by

18  Samsung that identified Dr. Teece *before* the Court's order excluding testimony about LTE offer

19  rates.  (Dkt. No. 1749).  Thus, because it is evident that Samsung never intended to call Mr.

20  Stasik to testify at trial, even absent the Court's order excluding information about LTE offer

21  rates, Samsung's proffer as to Mr. Stasik's expected testimony is improper.

22      **L.**    **Response to Samsung's Proffer Regarding Apple Utility Patents**

23        Samsung's proffer of evidence relating to Apple's utility patents is misguided and belied

24  by the record.

25        **1.**    **Blue Glow Design-Around for the '381 Patent**

26        Samsung's suggestion that it was improperly denied an opportunity to present evidence of

27  a design-around for the '381 patent is contrary to the record.  Samsung claims that "[i]f Samsung

28  were permitted to submit evidence of the "blue glow" design around, this evidence would have

1   rebutted and limited the scope of Apple's assertions of infringement." (Proffer at 26.) Samsung

2   ignores the fact that its inability to submit such evidence was of its own making and a direct

3   consequence of its discovery misconduct. Judge Grewal found that Samsung did not produce any

4   evidence pertaining to a design around for the '381 patent until well after the December 31, 2011

5   deadline set by the Court. (*See* Dkt. No. 898 at 5.) As Judge Grewal noted in his order, "if the

6   design-around source code is so important, why did Samsung wait to produce it even though . . .

7   it had it well before the December 31, 2012 cutoff date set by the court's December 22 Order[?]"

8   (*Id*. at 8-9.) This Court agreed with Judge Grewal's findings, noting that Samsung's failure to

9   comply with its discovery obligations "necessarily prejudiced Apple's ability to build its case as

10  to each infringing product and to defend itself against cross-examination of its expert witnesses."

11  (Dkt. No. 1545 at 5.) Samsung's proffer is an inappropriate attempt to augment the record with

12  evidence that it failed to produce in a timely manner, and for which it was properly sanctioned.

13       First, Samsung contends that it would have submitted physical devices and source code

14  relating to the blue glow design around. Both the source code and executable/compiled versions

15  thereof on physical devices were properly excluded for the reasons stated above. Moreover, there

16  is no probative value for at least one of the products identified by Samsung, the Galaxy Tab 10.1

17  (4G LTE), as it is not even listed on the Amended Verdict Form for the '381 patent. (Dkt. No.

18  1931 at 2.)

19       Second, Samsung contends that it would have submitted "physical device samples to

20  demonstrate the differing functionality even within like versions of the Android operating

21  system." (Proffer at 22.) The referenced Declaration of Jeffrey Johnson (Dkt. No. 934-6)

22  addresses only a single issue – the "hold still" behavior discussed in Dr. Johnson's expert report.

23  (*See* Dkt. No. 934-6 ¶¶ 5-6.) Dr. Balakrishnan was cross examined on this subject at trial. (*See*

24  Trial Tr. at 1790:19-1798:19.) Though this theory, which was never characterized as a design-

25  around, was not disclosed during discovery, Judge Grewal denied Apple's motion to strike it.

26  (*See* Dkt. No. 1144 ¶ 7.) Accordingly, Samsung could have raised this evidence at trial.

27  Samsung chose not to, and did not even call Dr. Johnson as a witness despite the fact that he is

28  identified on Samsung's List of 20 Witnesses it Definitely Intends to Call Live or by Deposition.

1   (Dkt. No.1332 ¶ 7.)  Therefore, Samsung's "proffer" is nothing more than an attempt to cure its

2   errors and deficiencies at trial, and should not be permitted.

3          Third, Samsung argues that it "would also have offered fact witnesses Ioi Lam, Wookyun

4   Kho, Sun Young Yi, and Jaewoo Park regarding the implementation of blue glow." (Proffer at

5   23.)  Yet three of the four, Messrs. Lam, Kho, and Park, are not named among the 50 witnesses

6   Samsung identified as those who would testify live at trial.  (Dkt. No. 1278 at 1-8.)[2]  In fact, none

7   of these three individuals is even identified in Samsung's 4th Amended Initial Disclosures as

8   having knowledge about the case, despite the fact that these disclosures were served after the

9   close of discovery.  (Dkt. No. 1648-1.)  As is clear from the record, Samsung never gave any

10  indication that it would call these witnesses for any purpose.  As for Ms. Yi, she was identified in

11  Samsung's list of 50 potential witnesses as possibly testifying about "hypothetical design arounds

12  of the '381 and '163 patents . . . and hypothetical design around cost" (Dkt. No. 1278 at 8-9), but

13  Samsung did not call her even to address hypothetical design arounds.

14         Fourth, Samsung's contention that it would have used its self-serving interrogatory

15  response as evidence at trial ignores the fact that the response constitutes inadmissible hearsay.

16  *See Luster v. Ill. Dept. of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011) (party cannot use own

17  interrogatory answer, which is almost certainly hearsay, to support or oppose summary

18  judgment); *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 71 (1st Cir. 2011) ("because they depend

19  on hearsay, Bhatti's interrogatory answers and other references to her coworkers' out-of-court

20  statements can have no bearing on our conclusion").

21         Finally, Samsung argues that it would have "sought to have admitted into evidence, PX66

22  . . . which contains a video that demonstrates the blue glow functionality," as well as the

23  "complete version of DX2557 . . ."  (Proffer at 24.)  The portions of these videos depicting the

24  blue glow functionality were properly excluded for the reasons stated above.  Nevertheless, these

25  videos have no probative value whatsoever for the '381 patent.  The two products in these videos

26  depicting the blue glow functionality are the Galaxy S II (T-Mobile) and the Galaxy Tab 10.1 (4G

27

28
_____
        [2]The Court struck Samsung's Appendix A to this filing.  (Dkt. No. 1293.)

1   LTE).  Neither of these devices appears on the Amended Verdict Form for the '381 patent.  (*See*

2   Dkt. No. 1931 at 2.)  Moreover, in the event that these portions of these videos were admitted into

3   evidence, Apple's complete infringement demonstrative videos for all three asserted utility

4   patents, PX64, PX65, and PX66, would also have been admitted.  The weight of this video

5   evidence, which walks through the infringement analysis, would clearly have favored Apple.

6                              **2.      Criticism of Apple's Expert Witness**

7         Samsung claims that "[i]f permitted, Samsung would also have put into evidence the

8   criticism of Apple's expert witness, Ravin Balakrishnan Ph.D., in the 337-TA-750 investigation

9   between Motorola and Apple before the International Trade Commission."  (Proffer at 24.)  Yet

10  the very reason this ITC Initial Determination was excluded from trial was because of Samsung's

11  own motion in limine no. 4.  The Court granted that motion to "exclude reference to findings or

12  rulings in other proceedings not involving the patents at issue in this case."  (Dkt. No. 1267 ¶ 14.)

13  Likewise, the Court also granted a similar motion in limine by Apple to "exclude evidence of how

14  other courts or tribunals have construed or ruled on any Apple or Samsung patents."  (Dkt. No.

15  1267 ¶ 6.)  The Court reminded Samsung of these rulings when counsel for Samsung began

16  questioning Dr. Balakrishnan on this subject:

17              Q.  Now, you were also criticized for your opinions by an
                Administrative Law Judge in Another Case –
18
                . . .
19
                The Court: If I've ruled it to be excluded, which there was a motion
20              in limine to exclude previous things from other cases and from this
                case, and they've been sustained.  So please don't . . . violate
21              previous rulings, unless you want to open the door, in which case I
                will get into it.
22
                Mr. Johnson: No, your Honor.  That's fine.
23

24  (Trial Tr. at 1801:1-1802:4.)  Indeed, the Court offered Samsung the option of opening the door

25  to admitting rulings from other proceedings, but as can be seen in the transcript, counsel for

26  Samsung declined to do so.  Accordingly, Samsung's proffer is improper and was expressly

27  disavowed by Samsung's counsel at trial.

28

### 3.    U.S. Patent No. 6,498,590

Samsung claims that "[i]f permitted, Samsung would have used U.S. Patent No. 6,498,590" to rebut "Apple's argument that the DiamondTouch prior art device did not contain a touchscreen as required by the" '381 and '915 patents.  (Proffer at 25, 26.)  This assertion is belied by the record.  Samsung disclosed this patent as DX2649 on its lengthy cross examination exhibit disclosure for Dr. Balakrishnan, Apple's expert on the '381 patent.  (Sabri Decl. Ex. 9.) Apple did not file an objection to this exhibit, and the Court therefore did not preclude Samsung from raising it.  (*See* Dkt. No. 1798 at 2-3 (discussing objections to different exhibits).)  Despite being at liberty to use this exhibit, Samsung declined to ask Dr. Balakrishnan even a single question in cross examination during Apple's rebuttal case.  (Trial Tr. at 3638:2.)  Therefore, the only restraint imposed on Samsung was by its own counsel, who chose not to use this exhibit.  To the extent that Samsung contends that the Court's preclusion of Samsung's use of this exhibit with Dr. Singh also foreclosed its use with Dr. Balakrishnan, Samsung would be mistaken.  The Court made clear on multiple occasions that its evidentiary rulings were specific to each witness. (*See, e.g.*, Dkt. No. 1650 at 2 ("this does not preclude Apple from seeking to introduce this document through another witness").)

In addition, Samsung's contention that it could somehow impeach Apple's experts, neither of whom is an inventor on this patent, by presenting them with this document, has no basis in fact or the Federal Rules of Evidence.  The patent itself notes that it relates to a "multi-user, large-scale <u>touch surface</u>." (Hutnyan Decl. Ex. 12 at 1:60-61 (emphasis added).)  If nothing else, this is fully consistent with various witnesses' testimony that DiamondTouch was a touch table.

Finally, Samsung cannot seriously claim that it accorded this document any significance at any point prior to the penultimate day of trial.  In precluding use of this exhibit with Dr. Singh, the Court found that "Samsung did not produce this patent in discovery, list this patent in its invalidity contentions or identify this document in any expert reports," and that "Samsung's untimely identification of this document at the end of the trial is prejudicial."  (Dkt. No. 1798 at 7.)  There was no error in these findings.

### 4.  Order Granting Request for Ex Parte Reexamination

Samsung claims that "[i]f permitted, Samsung would have used DX2652, the Order Granting Request for Ex Parte Reexamination of the '381 patent to show the existence of a substantial question regarding the validity of at least claim 1 . . . ."  (Proffer at 25.)

First, this evidence was properly excluded.  In sustaining Apple's objection to Samsung's use of DX2652, the Court cited well-established Federal Circuit authority holding that "[t]he initiation of an ex parte reexamination is of minimal probative value which is outweighed by the wasting of time and confusion of the jury that will result."  (Dkt. No. 1798 at 2-3 (citing *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996)).)

Second, if this exhibit had not been excluded, then Apple's PX2321, an Ex Parte Reexamination Certificate confirming the patentability of all twenty claims of the '381 patent, would have been used during Dr. Balakrishnan's examination.  When Apple attempted to raise PX2321 at trial, Samsung objected on the grounds that its exhibit had been excluded.  (*See* Trial Tr. at 3637:13-22 ("Objection, your Honor, this goes right to your Honor's ruling on the re-examination proceedings").)  Though Samsung's objection to Apple's PX2321 should not have been sustained, *see, e.g.*, *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-3561, 2012 WL 1189898, at *3 (N.D. Cal. Jan. 4, 2012) (finding incomplete reexamination determinations lacking in probative value, but completed reexamination determinations relevant), the Court excluded both pieces of evidence.  Any benefit that would have accrued to Samsung from use of DX2652 would have been negated by Apple's use of PX2321, and given that PX2321 was a final determination, it would have been given greater weight by the jury.

### 5.  Design-Around for '163 Patent

Samsung's suggestion that it was improperly denied an opportunity to present evidence of a design-around for the '163 patent is contrary to the record in this case.  Samsung claims that "[i]f Samsung were permitted to submit evidence of the '163 patent's design arounds, this evidence would have rebutted and limited the scope of Apple's assertions of infringement."  (Proffer at 26.)  As discussed above with regard to the '381 patent, Samsung ignores the fact that its inability to submit such evidence was of its own making, and a direct consequence of its

1   discovery misconduct.  Judge Grewal found that Samsung did not produce any evidence

2   pertaining to a design around for the '163 patent until "*after* the close of fact discovery – knowing

3   full well that the court would not grant the parties any exceptions."  (Dkt. No. 898 at 6.)  This

4   Court agreed with Judge Grewal's findings.  (Dkt. No. 1545 at 5.)  And Samsung's contention

5   that it would have introduced into evidence its self-serving interrogatory response once again

6   ignores that the response is inadmissible hearsay.  *See Luster*, 652 F.3d at 731 n.2; *Bhatti,* 659

7   F.3d at 71.  In addition, the probative value of this response is questionable in that three of the

8   five products it references ("Galaxy Attain 4G . . . Galaxy S II Epic 4G Touch, and Galaxy S II

9   Skyrocket") are not even listed on the Amended Verdict Form for the '163 patent.  (Dkt. No.

10  1931 at 4.)  Accordingly, Samsung's "proffer" should be rejected.

11

12  Dated: August 30, 2012                    MORRISON & FOERSTER LLP

13

14                                            By: /s/  Michael A. Jacobs
                                                  Michael A. Jacobs

15                                                Attorneys for Plaintiff
16                                                APPLE INC.

17

18

19

20

21

22

23

24

25

26

27

28