1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15
16                  UNITED STATES DISTRICT COURT

17        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK

19                 Plaintiff,

20        vs.                                     **SAMSUNG'S OBJECTIONS AND
                                                  RESPONSES REGARDING (1) EXHIBITS
21 SAMSUNG ELECTRONICS CO., LTD., a               TO BE USED WITH RICHARD
   Korean business entity; SAMSUNG                HOWARTH, ANDRIES VAN DAM,
22 ELECTRONICS AMERICA, INC., a New               STEPHEN GRAY, VINCENT O'BRIEN,
   York corporation; SAMSUNG                      AND DAVID TEECE AND (2)
23 TELECOMMUNICATIONS AMERICA,                    DESIGNATED DEPOSITION
   LLC, a Delaware limited liability company,     TESTIMONY OF SHIN NISHIBORI AND
24                                                BRIAN AGNETTA**
                   Defendants.
25

26                                                ==FILED UNDER SEAL==

27

28

02198.51855/4907978.1                                     Case No. 11-cv-01846-LHK
―

1    Samsung hereby submits objections and responses regarding (1) exhibits to be used in

2  direct and cross examination of Stephen Gray, Richard Howarth, Vincent O'Brien, David Teece,

3  and Andries van Dam; and (2) deposition designations and counter designations for Brian Agnetta

4  and Shin Nishibori.

5  **I.      RICHARD HOWARTH**

6          **A.      Samsung's Responses to Objections to Direct Examination Exhibits**

7  **1.      DX579** Apple's only objection to DX579 is that it was not timely disclosed in response to

8  Apple's Interrogatories Nos. 38 or 40.   But DX579 was not produced by Apple until the last two

9  weeks of the discovery period in a production consisting of over 100,000 pages of documents.

10  (*See* Hutnyan Decl., Ex. A (February 23, 2012 e-mail from Tom Beyer producing

11  APLNDC0002241842 – APLNDC0002343162)).   Apple should not be permitted to benefit from

12  the fact that it produced this document late in discovery and buried among a large volume of

13  documents, particularly in light of the fact that Samsung had requested all documents relating to

14  functionality in *September 2011*.   (*See* Hutnyan Decl., Ex. C (Samsung RFP No. 139, seeking

15  "All DOCUMENTS relating to the functionality—including the ease of manufacturing,

16  cost savings, enhanced usability, or any other benefit—of any claimed feature, element, or

17  combination of elements in any of the APPLE DESIGN PATENTS, APPLE TRADE DRESS,

18  and APPLE TRADEMARKS.")).   In any event, while this specific document may not have been

19  identified in response to these interrogatories, Samsung did, in fact, disclose the theory of the

20  functional nature of the shape and placement of the receiver hole in response to Interrogatory No.

21  38.   (*See* Hutnyan Decl., Ex. B at 19).   In fact, the functional nature of the shape and location of

22  the receiver slot was disclosed by Samsung's expert Itay Sherman as early as his declaration in

23  connection with Apple's motion for a preliminary injunction in August 2011.   (*See* Dkt. 172 at

24  29-30).   DX579 supports that theory of functionality, and Apple cannot argue that it was not

25  aware of this theory well in advance of the discovery deadline.

**2.**     **DX2627** Apple boldly argues for exclusion of DX2627 on the basis that this document –

an *internal Apple document* subject to a stipulation of authenticity between the parties (Dkt. 1226)

– contains an incorrect date, which purportedly makes it more prejudicial than probative.   Apple

should not be permitted to rely on its own purported error in dating its internal documents to keep

relevant information from being presented to the jury.   If Apple can establish the correct date of

the document, a clarifying instruction by the Court regarding the correct date will be sufficient to

avoid any confusion among the jury.   Moreover, Apple's argument that the jury might be

confused into believing that the competitor phones shown in the document were prior art to the

iPhone makes no sense because the iPhone, itself, is included in the presentation.   *See*

DX2627.026; DX2627.043.

Apple next argues that DX2627 should be excluded merely because it contains images or

information about the F700.   This argument also fails.   Apple argues that the F700 is not

admissible as prior art for invalidity or obviousness purposes.   But Samsung does not seek to use

this document to show that the F700 – or any of the phones included in DX2627 – were prior art

to the asserted patents.   Rather, DX2627 merely shows that Apple was aware of and evaluated

competitor products, including for functionality purposes, just as it accuses Samsung of doing with

Apple's products.   Additionally, DX2627.026 shows that Apple compared screen size, product

thickness, and other design features between the iPhone and the F700 and supports Samsung's

theories regarding the functional benefits of certain design features.   This use is consistent with

the Court's rulings, which have not excluded the F700 in its entirety, but, rather, have specified

that, while the F700 is not admissible for obviousness or invalidity, it is admissible for other

purposes.   (R.T., 8/6/2012 at 1042:21-1043:2).   Additionally, the document shows many other

competitor products other than the F700 and should not be excluded in its entirety simply because

of its inclusion of a few images of the F700.

In light of the foregoing arguments, and because Apple has not raised any other basis for excluding DX2627, it should be admissible for use in Samsung's questioning of Mr. Howarth.

## II.   ANDRIES VAN DAM

### A.   Samsung's Objections to Cross Examination Exhibits

*US ITC Inv. No. 337-TA-796, Vol. 4 Hearing Transcript*: The Court previously granted Samsung's Motion In Limine #4, "to exclude reference to findings or rulings in other proceedings not involving the patents at issue in this case."   Dkt. 1267 at ¶ 11.   On this basis, Apple previously opposed Samsung's similar attempts to cross-examine Apple's expert, Dr. Singh, with his deposition testimony regarding claim construction from ITC Investigation No. 337-TA-796, arguing that Samsung "violate[d] the spirit of the Court's exclusion of 'reference[s] to findings or rulings in other proceedings.'"   Dkt. 1607-1 at 2, *quoting* Dkt. 1267 at ¶ 11.   The Court sustained Apple's objection.   Dkt. 1657 at 2.[1]   Apple now attempts the same tactic in attempting to cross-examine Dr. van Dam with hearing testimony from the ITC 796 Investigation.[2] Under Apple's own reasoning, this would violate the Court's *in limine* rulings regarding IP rights not claimed by Apple in this action and evidence of how other tribunals have construed Apple patents.   Consequently, Samsung's objection should be sustained.

*PDX 27.22*: In this demonstrative, Apple purports to show how the accused Samsung Galaxy S II (AT&T) product practices a limitation of the '381 patent.   Dr. Balakrishnan referenced this demonstrative in his testimony regarding infringement.   Dr. van Dam has only submitted an expert report regarding *invalidity* of the '381 patent, however, and will not offer any testimony regarding infringement.   Dr. van Dam did not analyze or offer any opinions regarding Samsung's accused products.   Thus, cross-examination of Dr. van Dam regarding Dr. Balakrishnan's infringement analysis is outside the scope of Dr. van Dam's direct testimony.

---

[1]   Similar objections to materials from parallel proceedings have been repeatedly sustained. *See, e.g.*, Dkt. 1596 at 6 (Balakrishnan Exh. DX 2552); Dkt. 1690 at 3 (Bederson Exh. PX2226).

[2]   Dr. van Dam testified as an expert for Samsung at the ITC 796 hearing.   None of the patents asserted in that Investigation are at issue in this case.

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE, AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    Furthermore, whether and how the accused Samsung products infringe the '381 patent has no

2    relevance to the validity of the '381 patent, and serves only to confuse the jury as to the proper

3    invalidity inquiry.   Apple invites the jury to determine validity by comparing the accused

4    products with the asserted prior art, diverting attention from the full scope of the claims and

5    whether they are present in the prior art.   For these reasons, Samsung's objection should be

6    sustained.

7          **B.        Samsung's Responses to Objections to Direct Examination Exhibits**

8          *DX 720; SDX3964.003a-.037a; .071b; .02-.03; .013-.038; .071-.072[3]:* Apple has objected

9    to this exhibit on two grounds: (1) alleged failure of Samsung to produce the Tablecloth prior art

10   and (2) alleged absence of opinion on Tablecloth prior art in Dr. van Dam's expert report.   Both

11   of these arguments are flatly contradicted by the facts.

12         Samsung has repeatedly produced the Tablecloth prior art for inspection.   On October 20,

13   2011, Samsung produced the hard drive containing all of the source code and executables for

14   Tablecloth.   (Hutnyan Decl. Ex. D (10/20/11 letter from A. Kaufman to R. Hung)).   On

15   December 2, 2011, Apple inspected the DiamondTouch system including the Tablecloth prior art

16   and took videos of that system.   Dkt. 447 (Order resolving discovery dispute on videos of

17   inspection); Hutnyan Decl. Ex. E (11/22/11 email from T. Briggs to M. Ahn).   Apple

18   subsequently inspected the DiamondTouch system several more times, in May, July, and August

19   2012.   (Hutnyan Decl. Exs. F, G, and H (5/24/12, 7/29/12, 8/12/12 emails from M. Ahn

20   regarding inspection of DiamondTouch system)).   Apple has no basis to claim that Samsung

21   failed to produce the Tablecloth prior art.

22         Samsung disclosed its invalidity theory based on Tablecloth on at least four separate

23   occasions: (1) Samsung's Invalidity Contentions, served on October 7, 2011, identified Tablecloth

24   as invalidating prior art to the '381 patent.   (Hutnyan Decl. Ex. I (Ex. G-7 to Samsung's

25

26         [3]    Apple attempts to lump together multiple exhibits and demonstratives in its high priority
      objection, in violation of the Court's order.   The listed SDX demonstratives are not based on
27   DX720, but are demonstrative videos of the Tablecloth device in DX655.

28
OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1   Invalidity Contentions); (2) Samsung identified the DiamondTouch system as prior art at the

2   October 13, 2011 hearing, referencing its October 7, 2011 invalidity contentions.   Dkt. 507 at 75-

3   77 (10/13/11 Hearing Transcript); (3) Dr. van Dam's expert report included a detailed claim chart

4   and video setting forth his invalidity opinion based on Tablecloth.   (Hutnyan Decl. Ex. J & K

5   (Exs. 8-9 to van Dam 3/22/12 Expert Report); (4) Samsung's Motion for Summary Judgment,

6   filed on May 17, 2012 (Dkt. 930-1 at 21-22), again presented Samsung's invalidity theory based

7   on Tablecloth, and attached the precise videos now offered as DX 720.   Dkt. 933-4, 933-5.

8   Any differences between the videos previously disclosed and the demonstratives at issue here are

9   either not directly applicable to the relevant claim limitations (*i.e.,* the direction of the document

10  translation prior to displaying the first portion) or are trivial variations (such as snapping back

11  upward rather than downward).   Thus, there is no question that Samsung's invalidity theory

12  based on Tablecloth was disclosed on multiple occasions.

13        ***DX694:*** Apple has objected to DX694 under FRE 402 for lack of relevance and FRE 403

14  for being misleading as to Apple's knowledge of LaunchTile.   Neither of these objections is

15  supported by the record.

16        DX694 is an internal email that is clearly relevant to the prior art in this litigation.   The

17  email discusses Apple's awareness and review of the LaunchTile system by April 6, 2005 and

18  establishes priority for one of Samsung's core invalidating references for the '381 and '163

19  patents.   The document discusses zoomable interfaces and is also relevant to rebut Apple's

20  invention narrative for the '163 patent.   Scott Forstall, a named inventor on the '163 patent,

21  testified that he conceived of a zoomable interface through his own challenges in browsing web

22  pages on a mobile device.   (R.T., 8/3/12, 754:21-23; 755:6-9 ("But I found I spent a lot of time

23  carefully pinching a story to be just right, so it would fit just right with the right font size….

24  And so I challenged the team to enable you to just double tap on a story and then have it do the

25  zoom up and center it, substantially in this case, center it for me to read that story.")   DX694

26  casts doubt on Mr. Forstall's conception story and priority date for this patent, and is clearly

27  relevant.   Indeed, the Court previously overruled Apple's objection to DX695 on similar

28

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1   grounds.   Dkt. 1690 at 6.   The document is also not prejudicial – it is being offered into

2   evidence in its entirety, and simply indicates the fact that Apple considered and was aware of the

3   LaunchTile prior art.   Accordingly, Apple's objections for prejudice and lack of relevance are

4   without merit.

5   **III.     STEPHEN GRAY**

6          **A.     Samsung's Objections to Cross Examination Exhibits**

7          **1.     PX49:** Having been precluded from using PX 49 with its own expert witness (Dr.

8   Singh), Apple now seeks to examine Samsung's expert (Stephen Gray) with PX 49. (Dkt. No.

9   1657 at 2.)   PX 49 is a collection of third-party news articles about Apple, ostensibly compiled

10  by Samsung Telecom Research Israel.   Mr. Gray has never reviewed, nor does he have any

11  personal knowledge of the document, and PX 49 has not been admitted into evidence by a fact

12  witness.   Thus, there is a complete lack of foundation and this document is inadmissible under

13  *FRE* 402.   Moreover, because Mr. Gray did not render any opinions on this document, it is

14  outside the scope of his examination.   Moreover, any attempt to use this document with Mr. Gray

15  is a waste of time, prejudicial and will confuse the jury because the jury may be misled into

16  thinking this is a document Mr. Gray has opined on.   *FRE* 403.   Therefore, Samsung's objection

17  should be sustained.

18         **2.   PDX41.1:**     PDX41.1 is a demonstrative video of LaunchTile that shows the

19  bounceback functionality that is relevant only to the asserted claims of the '381 patent.   The

20  bounceback functionality is irrelevant to any asserted claim of the '915 and '163 patents.   Mr.

21  Gray is only offering opinions regarding the '915 and '163 patents.   Therefore, PDX 41.1 is

22  outside the scope of Mr. Gray's opinions and it would be improper to cross examine him with this

23  exhibit.   *FRE* 402 and 702.

24         **B.     Samsung's Responses to Objections to Direct Examination Exhibits**

25         **1.   SDX3953.026-032:**   Apple improperly raises two objections against seven

26  demonstrative slides.   Apple first argues that Mr. Gray failed to fully opine on "certain claim

27  limitations addressed in the slides."   Apple's second objection contends that Mr. Gray failed to

28

1    fully disclose "the specific passages and/or figures from Nomura" that are cited in the slides.

2          Samsung's Invalidity Contentions first disclosed in detail how Nomura invalidates the '915

3    patent with a complete claim-by-claim analysis.    (Hutnyan Decl., Ex.L (Samsung's Invalidity

4    Contentions, Ex. J-6)).    Mr. Gray further provided his analysis of the invalidity of the '915 patent

5    in light of Nomura in Appendix 5 of his expert report, which describes how the Nomura patent

6    application invalidates each limitation of claim 8 by reference to the analogous limitations of

7    claim 1.    (Hutnyan Decl. Ex. M (Gray Expert Report, Appx. 5)).    As this Court ruled, claims 1

8    and 8 are "substantially the same" and Apple "should have been on notice that such discussion

9    would also apply to claim 8."    (Dkt. 1657 at 2).    For the preamble of claim 8, which discloses "a

10   machine readable storage medium," Mr. Gray explicitly calls out the "information storage

11   medium" shown in Figure 1 of the Nomura reference.    (Hutnyan Decl. Ex. N (Gray Report at

12   17))

13         With the exception of Mr. Gray's drawing on SDX3953.028, all of the figures presented in

14   SDX3953.026-032 come directly from the Nomura patent application and are contained and

15   explained in Exhibit J-6 of Samsung's Invalidity Contentions or Appendix 5 of Mr. Gray's report.

16   The figure on SDX3953.028 is Mr. Gray's drawing that explains how the "finger movement

17   history" disclosed in Nomura contains the touch data that, in Mr. Gray's expert opinion,

18   corresponds to the event object of the '915 patent.    In support of his opinion, Mr. Gray's report

19   explains that "histories of finger actions [are] taken on a display on which a map image is

20   displayed, in order to allow a user to input rotation, zooming-in, zooming-out, and scrolling

21   manipulations for the map image."    (Hutnyan Decl. Ex. N (Gray Report at ¶191))    Apple had

22   full and fair notice of Samsung's invalidity theories and arguments with respect to the Nomura

23   patent application.    *See, e.g., High Point SARL v. Sprint Nextel Corp.*, 2011 WL 4526770 at *9

24   (D. Kan. Sept. 28, 2011) (invalidity contentions, by local rule or interrogatory response, are not

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    required to provide the same level of detail that may ultimately be needed to support invalidity

2    defense).    Accordingly, Apple's objections as to Mr. Gray's demonstratives should be overruled.

3
     **2.        DX561; SDX3953.046; SDX3953.062:** Apple objects to the relevance of U.S. Patent No.
4
     7,933,632 (the '632 or Agnetta patent) on the theory that Samsung cannot establish a priority date
5
     for this reference that predates Apple's '163 Patent.    As an initial matter, the filing date for the
6
7    '632 patent (June 16, 2006) predates the filing date of the '163 patent (September 4, 2007) by

8    nearly 3 months.    Therefore, it bears mentioning that Apple's entire relevance objection rests on

9    the dubious theory that it is entitled to the benefit of its provisional application date, while the '632

10   patent is not entitled to the benefit of its own provisional application date.

11
             The '632 patent is, in fact entitled to the benefit of the September 16, 2005 priority date
12
     established by provisional application 60/718,187 as confirmed by the deposition of Bryan
13
     Agnetta (named inventor on the '632 patent).    In response to Apple's arguments that the
14
     provisional application was not disclosed in Samsung's invalidity contentions and that the
15
     provisional application fails to disclose "key elements" of the '632 patent, Samsung incorporates
16
     its responses to Apple's objections to the deposition designations of Bryan Agnetta, set forth
17
     below in section VII B.    As explained below, provisional application 60/718,187 contains the
18
     same pertinent disclosure as the '632 patent, as was confirmed by Mr. Agnetta during his
19
     deposition.
20
     **IV.      VINCENT O'BRIEN**
21
             **A.        Samsung's Objections to PX2010 and Samsung's Opening Slide 145**
22
             Opening statements are not evidence nor are they statements by Dr. O'Brien.    They are
23
     impermissible hearsay.    Indeed, it is black letter law that "opening statements themselves are not
24
     evidence." *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 446 (7th Cir. 1996).    *See also,*
25
     7/31/12 Trial Tr., Vol. 2, at 288:17-18 ("I'm also going to tell the jury at the beginning that
26
     opening statement is not evidence.").    Accordingly, PX2010 and Slide 145 are not proper cross-
27
     examination.    *See US v. Green*, 648 F.2d 587, 595 (9th Cir. 1981) ("An opening statement, []
28

02198.51855/4907978.1

-8-                                        Case No. 11-cv-01846-LHK

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    having no evidentiary value, cannot operate to place an issue in controversy."). Finally, having

2    been told that the opening statements are not evidence, the introduction of PX2010 and Slide 145

3    would unnecessarily confuse the jury.

4         **B.    Samsung's Responses to Objections to Direct Examination Exhibits**

5         As evidence of Apple's licensing practices, SDX3956.019 is relevant to a reasonable

6    royalty analysis, including to the bias and reliability of Apple's production, ==that Apple has taken==

7    ==considerable in-licenses and paid significant royalties,== determining the range of licensing

8    payments, and the basis for establishing a running royalty or lump sum award.   (Hutnyan Decl.,

9    Exs. O & P (O'Brien Rep., ¶¶ 35-38, 70) (Musika Reb. Rep., ¶¶ 43-45, 70)).   Apple does not

10   dispute the accuracy of this demonstrative, which shows that Apple has produced *eight* different

11   versions of its royalty charts purporting to show Apple's licensors, the amounts paid, the

12   technology involved, and timing.   *See* (Hutnyan Decl., Ex. Q (DX759)); Dkt. Nos. 936, ¶ 7, 936-

13   14, -15, -16.   Apple produced most of the charts after the Feb. 2012 Mark Buckley Deposition,

14   Apple's 30(b)(6)'s witness, and three were served after Dr. O'Brien's report was served.   *Id*.

15        The new charts ==more than doubled the number of licensors, added hundreds of millions in==

16   ==licensing payments, and added for the first time iPod licensing information.==   ((Hutnyan Decl., Ex.

17   O, O'Brien Rep., ¶ 36.))[4]   That Apple was not forthcoming is itself relevant and the subject of

18   Dr. O'Brien's opinion and Mr. Musika's rebuttal report.   (Hutnyan Decl., Exs.O & P (O'Brien

19   Rep., ¶¶ 35-38) (Musika Reb. Rep., ¶ 43)).   Indeed, Apple *and* Mr. Musika criticized Dr. O'Brien

20   for concluding that Apple's licensing production was incomplete; they cannot now whitewash the

21   issue.   (Hutnyan Decl., Ex. P (Musika Reb. Rep., ¶ 43)); Dkt. No. 936-15 at 177:8-9, 170:19-22;

22   R.T., 8/13/12 at 2063 -- 2066.   Finally, any prejudice is of Apple's own making.

23        Apple's objection to SDX3956.022 and Dr. O'Brien's reliance on a survey that he

24   commissioned and helped design is not well taken.   Apple is likely to point to Court's Order

25   _____

26      [4]   Apple also produced dozens of patent licensing agreements *after* the close of discovery
     and service of expert reports.   Dkt. No. 1060-02, at 1:16-23; Hutnyan Decl., Ex. R (Musika Dec.,
27   signed May 31, 2012, ¶¶10-11 ).

28
OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1   requiring Mr. Poret and Mr. Van Liere to testify live regarding their surveys.   However, unlike

2   Dr. Winer, whom Apple sought to use as a "summary expert" to backdoor the opinions of multiple

3   other experts with whom Dr. Winer had no involvement, Dr. O'Brien worked closely with his

4   survey expert to design and formulate the survey.

5       Q.   Okay.   You were working with Dr. Sukumar in connection with the survey?
        A.   Correct.
6       …
        A.   Within a user, I asked [Dr. Sukumar] – I wanted to know what fraction of the users –
7       Q.   Yes.
        A.   – of the owners used the feature.
8

9   (Hutnyan Decl., Ex. S (O'Brien Dep. Tr. at 58:4-18; 125:6-22.))      Dr. Sukumar confirmed that

10  Dr. O'Brien helped him design and formulate his survey.   (Hutnyan Decl., Ex. T (Sukumar Dep.

11  Tr. at 17:1-18:16.))   Also, unlike Dr. Winer, Dr. O'Brien is well-versed in consumer survey

12  research, having designed and conducted such surveys himself.   (Hutnyan Decl., Ex. S, (O'Brien

13  Dep. Tr. at 30:19-31:20.))   Dr. O'Brien also testified that he knows and understands the

14  methodology employed by his survey expert – conjoint analysis – whereas Dr. Winer has not

15  participated in the Poret and Van Liere surveys and struggled to remember the methodology they

16  used.   (Hutnyan Decl., Ex. S, O'Brien Dep. Tr. at 118:3-12); (Hutnyan Decl., Ex. U (Winer Dep.

17  Tr. at 26:12-29:9.))   Similarly, Mr. Musika was not involved in Mr. Hauser's survey and merely

18  relied on it after the fact.   Thus, Dr. O'Brien is the only expert in this trial who not merely relied

19  on the finished surveys but directed the survey work.

20      Also, the survey on which Dr. O'Brien relies relates to intermediate steps utilized in his

21  damages calculations and does not go to ultimate issues for the jury to resolve.   In contrast,

22  Apple sought to have Dr. Winer report extensively on the results of the Poret and Van Liere

23  surveys, which go to fame, secondary meaning and consumer confusion – issues that the jury will

24  have to decide.   (*See* Dkt. 1694 at 174, 200-205, 216; (Hutnyan Decl., Ex. V, (Winer Report at ¶¶

25  91, 97, 109, 118, 122, 153, 156, 172, 177, 172, 182, 186.))   Among other things, Dr. Winer

26  would have testified that "the iPhone and iPad trade dresses have undoubtedly achieved fame";

27  that there is an alleged "striking similarity" between certain Samsung phones and the iPhone; and

28

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1   that there exists alleged "confusion between Samsung's Galaxy Tab 10.1 and Apple's iPad

2   products."   (Hutnyan Decl., Ex.V, Winer Report at ¶¶ 97, 118, 156.))

3        This distinction is important because the Court precluded Dr. Winer from testifying about

4   the Poret and Van Liere opinions because Apple failed to show their probative value substantially

5   outweighed their prejudicial effect.   Dkt. 1596 at 2; *FRE* 703.   Here, however, the opposite is

6   true.   Permitting Dr. O'Brien to testify about a survey he helped design and structure and about

7   which he was deposed will cause no prejudice.   Finally, Apple has known since July 23, when

8   Samsung filed its witness list, that Samsung did not intend to call Dr. Sukumar.   Yet, Apple

9   remained silent until mid-trial, allowing it to object on grounds Samsung would be unable to cure

10  by this point.   Apple's belated objection, which seeks to strike the entire testimony of Samsung's

11  damages expert should be rejected.[5]

12  **V.      DAVID TEECE**

13       **A.      Samsung's Objections to Cross Examination Exhibits**

14       **PX85   Would Be Unduly Prejudicial and Confusing to the Jury and is Inadmissible**

15  **Hearsay:**   PX85 is a document which appears to relate to a 2006 United Kingdom litigation

16  between Telefonaktiebolaget LM Ericsson and Samsung. The document was produced by Apple,

17  not Samsung. PX85 is irrelevant, unduly prejudicial, and would be confusing to the jury if

18  admitted. Statements set forth in the document are also hearsay. *FRE* 802.

19       PX85 relates to different proceedings, involving different parties, occurring under foreign

20  law, regarding different patents, a different factual situation, and different legal standards. Its

21  probative value is therefore limited and it would readily confuse the jury. *FRE* 403. Apple made

22  the same objection with regard to the cross examination of Terry Musika. (Dkt. 1639, at 2 ("It

23  _____

24       [5]   If the Court is disinclined to overrule Apple's objection, Samsung requests that it be
     allowed to substitute Dr. Sukumar for another witness on its live witness list and have him testify
25   Thursday.   Mr. Sukumar has submitted an expert report and was extensively deposed by Apple.
     He was on Samsung's original July 6 witness list until the Court ordered a substantial reduction of
26   the list on July 18.   Furthermore, his appearance will in no way disrupt or delay the trial.
     Apple's conjoined survey expert, Dr. Houser, spent less than 2 minutes on giving his testimony on
27   his direct examination.

28
OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    arose under California state law and involved different parties, different technology, different

2    factual issues, and different legal standards.")) The Court sustained Apple's objection. (Dkt. 1668

3    at 3). Accordingly, the Court should exclude PX85.

4            Further, Apple cannot establish that the document is a party admission falling outside the

5    hearsay rule. There is no indication that the document was sworn and submitted to the UK High

6    Court of Justice. In fact, the document points to the contrary. First, the document includes a

7    signature block by which an affiant can affirm that the facts set forth are true, but that signature

8    block is unsigned. Second, there is no official court seal, stamp, or legend indicating that the

9    document was submitted to a court. Finally, the document contains numerous redactions deleting

10   rather than obscuring text, inconsistent with a document submitted to a court. Thus, PX85 is

11   hearsay and not an admission of a party-opponent. *See FRE* 801(c); 802.

12           **PX87 Would Be Unduly Prejudicial and Confusing and Is an Inadmissible Expert**

13   **Report:**    PX87 is an expert report authored by Angsar Bergmann and Friedhelm Hillebrand,

14   prepared in connection with a litigation between Ericsson and Samsung in the Netherlands in

15   April 2007.    For the same reasons set forth with respect to PX85, admission of this document,

16   which occurred under foreign law, involving different facts, different legal standards, and different

17   patents, would confuse the jury and unduly prejudice Samsung.

18           Further, PX87 is inadmissible hearsay. Expert reports are hearsay and do not fall within

19   any exception. *See FRE* 801(c); *FRE* 802; *FRE* 803. Experts are expected to prepare *their own*

20   opinions, not the opinions of the party hiring them. *Wilson v. Hartford Ins. Co. of the Midwest*,

21   2011 WL 2670199, at *2-3 (W.D. Wash. 2011) (granting motion to exclude expert reports as

22   hearsay). Apple has offered no evidence that Samsung adopted these opinions by presenting

23   Messrs. Bergmann or Hillebrand at trial.    *See Durham v. County of Maui*, 804 F. Supp. 2d 1068,

24   1071 (D. Ha. 2011) (finding expert materials for expert not presented at trial inadmissible

25   hearsay).    Accordingly, the Court should exclude PX87.

26           **B.        Samsung's Responses to Objections to Direct Examination Exhibits**

27

28

1    **DX630 Is a Proper Summary of the Parties' Licenses and Is Not Hearsay:** DX630 is a

2    summary of Samsung and Apple's relevant license agreements, prepared at the direction of Dr.

3    David Teece.

4        DX630 is not improper hearsay. *FRE* 1006 explicitly permits the use of a "summary, chart,

5    or calculation to prove the content of voluminous writings." *FRE* 1006 is a "special exception to

6    the hearsay rule." *Weinstein's Federal Evidence* §1006-05. DX630 meets all the requirements of

7    *FRE* 1006. The licenses summarized are voluminous. The materials are freely available for

8    Apple's inspection, as they were all produced in this case and are identified by Bates number in

9    DX630.   Samsung is willing to produce any of them in Court if necessary.   Further, Apple

10   stipulated it would not contest the accuracy of DX 630. (Dkt. 1597, at 3.)   It is inconsistent with

11   this stipulation to seek to exclude DX630 now on the grounds that it is inaccurate. The underlying

12   documents are also not hearsay. They are license agreements which do not fall under the hearsay

13   rule.

14       DX630 is not misleading. The only inaccuracy Apple identified to Samsung is DX630

15   does not include a sentence of one term of one license agreement.   Apple will have ample

16   opportunity to point out this omission on cross-examination. *See Frank Music Corp. v. Metro-*

17   *Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n.5 (9th Cir. 1985) (noting that inaccuracies in a

18   summary may be brought out on cross-examination).

19       DX630 is clearly marked as a summary. DX630.001; DX630.007.   To the extent Apple

20   contends that Samsung must identify its summaries as "FRE 1006" summaries, there is no such

21   requirement in the Rule or in the law. *See FRE* 1006; *Intel Corp. v. Am. Guar. & Liab. Ins. Co.*,

22   2010 WL 5176088, at *2 n.5 (N.D. Cal. Dec. 7, 2010) (finding a declaration satisfied the

23   requirements of *FRE* 1006).   And Apple has compiled, and moved into evidence, numerous

24   summaries without marking them "FRE 1006." *E.g.*, PX3-10.   Finally, Apple waived this

25   objection by failing to make it in its list of objections to Samsung's exhibit list. (Dkt. 1231-1, at

26   27.)   Accordingly, the Court should overrule Apple's objection.

27

28

**SDX3963.010 Is Not Irrelevant or Misleading:** SDX3963.010 is a demonstrative showing known industry royalty rates for two standards—UMTS and LTE.   It clearly differentiates UMTS rates from LTE rates.   Dr. Teece will make this distinction clear as well. Therefore, this slide is not misleading. "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010).   To the extent Apple contests these rates are comparable, its recourse is to cross examine Dr. Teece regarding them.   *Id.*   The mere recitation of public offer rates of third parties, clearly delineated as such, is not prejudicial to Apple.   Accordingly, the Court should overrule Apple's objections.

## VI.    SHIN NISHIBORI

### A.    Samsung's Responses to Objections to Apple's Objections

For months, Samsung has been attempting to get relevant testimony from Apple designer and named design patent inventor Shin Nishibori.   After court orders and long delays, Mr. Nishibori sat for deposition with counsel for Apple defending him, but terminated the deposition after two hours and refused to testify any further.   Samsung then demanded that Apple produce Mr. Nishibori for trial testimony.   When Apple claimed that Mr. Nishibori was represented by separate counsel and eventually informed Samsung that Mr. Nishibori had recently resigned from Apple, Samsung served a trial subpoena on him in Hawaii which he now seeks to quash.

Because Samsung has been unable to obtain Mr. Nishibori's appearance at trial, Samsung has offered deposition testimony based on his unavailability.   Apple now objects to Samsung's designations of the testimony of Mr. Nishibori based on the Court's prior order limiting Mr. Nishibori's testimony to issues relevant to functionality.   *See* Dkt. 1553, at 3.   Apple's claim that the testimony designated by Samsung is unrelated to functionality is mistaken, and Samsung should be permitted to introduce the limited deposition testimony it has for purposes the

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE, AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    Court has previously allowed.   *Id.*    Of course, if Mr. Nishibori was not avoiding appearance at

2    trial, then Samsung would not be so limited in eliciting relevant testimony.

3          The portions of Mr. Nishibori's testimony that Samsung has designated are narrow.    The

4    total run time of the translated testimony is 11 minutes.    The proffered testimony relates

5    exclusively to (1) establishing Mr. Nishibori's background and position at Apple; (2) discussing

6    Mr. Nishibori's efforts to create the "sony-style" design referenced in DX 562; and (3) providing

7    foundational information regarding DX 562 that will help the jury understand Samsung's

8    arguments that the design patents embodied in Apple's iPhone are functional.

9          For example, DX 562 contains a reference to a project "shin's been doing with the sony-

10   style chappy," which the author Mr. Howarth noted "achieve[d] a much smaller-looking product

11   with a much nicer shape to have next to your ear and in your pocket."    The Court has twice held

12   that this exhibit is admissible to demonstrate functionality.    *See* Dkt. 1519, at 2; 1545, at 11

13   ("The Howarth e-mail and . . . Nishibori testimony are admissible only to show functionality.")

14   Mr. Nishibori's brief testimony regarding the timing and nature of his assignment to create the

15   design alternative referenced in DX 562 therefore relates directly to admissible evidence and will

16   assist the jury by providing the context and meaning of the discussion contained in DX 562.

17   That foundational information will help the jury to better understand the functional considerations

18   mentioned by Mr. Howarth in DX 562 by providing information regarding the timing and nature

19   of Mr. Nishibori's design work, and the functional influences on the development of the iPhone.

20   In short, Mr. Nishibori's testimony will assist the jury in resolving Samsung's claim that the

21   D'677 and D'087 patents are invalid as functional.    The Court has expressly ruled that DX 562

22   and Mr. Nishibori's testimony are admissible for that purpose, and should do so again here.

23         Significantly, Apple served counter-designations of Mr. Nishibori's testimony and DX 562

24   as well.    Apple apparently wants to use Mr. Nishibori's testimony to provide context to the

25   statements made in DX 562, but Apple does not want Samsung to be able to do the same.    Thus,

26   Apple's position is confusing and inconsistent.

27

28

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    Apple also objects to Mr. Nishibori's testimony on the basis that it allegedly includes

2    testimony that was incorrectly translated from the original Japanese.   Apple's objection affects

3    only nine lines of the designated testimony, at 25:7-15 and 25:21.   In each instance, Apple seeks

4    to use an alternative translation rendered by a secondary check interpreter, which differs in only

5    minor respects from the official translation.   To the extent that Apple believes these differences

6    are significant and should therefore be resolved by the trier of fact, Apple was free to counter-

7    designate the alternative translation provided by the check interpreter on the record.   Apple failed

8    to make such counter-designations and does not provide any reason to prevent Samsung from

9    playing Mr. Nishibori's testimony as translated by the official lead interpreter.   This, too, is

10   irreconcilable with Apple's objections, which should be overruled.

11   **VII.   BRIAN AGNETTA**

12        **A.    Samsung's Objections to Deposition Designations**

13        Bryan Agnetta is a named inventor of Microsoft Corp.'s U.S. Patent 7,933,632, and is a

14   third-party, prior art witness that will testify by deposition designation in this case.   Samsung

15   objects to the following deposition counter-designations by Apple: 54:08-54:09; 54:18-54:19.

16   During this line of questioning, counsel for Apple asked Mr. Agnetta to not only describe his

17   understanding of functionality depicted by the patent diagrams, counsel asked Mr. Agnetta

18   whether his view of the functionality was "true of all embodiments in this patent."   (Hutnyan

19   Decl., Ex. W (Agnetta Depo. at 54:8-9)).   While Mr. Agnetta may be qualified to offer his

20   general understanding regarding the concepts disclosed in the '632 Patent, he is not qualified to

21   offer expert testimony regarding the full range of possible embodiments.   *FRE* 702.   His

22   testimony on this topic is thus irrelevant, confusing, and a waste of time.   *FRE* 402, 403.

23        If Apple is permitted to play these disputed lines of Mr. Agnetta's testimony, Samsung

24   offers 55:16-22 and 55:25-1 as a rebuttal designation.   To the extent Apple withdraws 54:08-

25   54:09 and 54:18-54:19, or to the extent the Court sustains the objection described above, Samsung

26   withdraws its rebuttal designation.

27

28

02198.51855/4907978.1

-16-                                    Case No. 11-cv-01846-LHK

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1      **B.**     **Samsung's Responses to Apple's Objections**

2     *Conception Date* – Apple objects to the deposition testimony of prior art witness Bryan

3 Agnetta regarding the conception of U.S. Patent 7,933,632 (the '632 patent). *See* (Hutnyan Decl.,

4 Ex. W (Agnetta Depo. at 14:1-14:7)). According to Apple, Mr. Agnetta's testimony is irrelevant

5 because it lacks corroboration. However, U.S. Provisional Patent Application 60/718,187 (the

6 '187 application) filed on September 16, 2005 (approximately four months after Mr. Agnetta's

7 claimed, no-later than conception date) provides documentary evidence to satisfy the

8 corroboration requirement and renders Mr. Agnetta's testimony relevant. *See Sandt Tech., Ltd. v.*

9 *Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001) (the "rule of reason"

10 applies to corroborating evidence requirement, and "all pertinent evidence" must be examined to

11 determine whether the testimony is credible).

12     *Provisional Application and Date* – Apple also objects to the inclusion of the '187

13 application alleging that Samsung did not disclose the application in its invalidity contentions, and

14 that "the provisional application does not disclose important elements of the . . . patent." Neither

15 objection is persuasive. First, the parent of the '187 application, the '632 patent was timely

16 disclosed in Samsung's invalidity contentions. (Hutnyan Decl., Ex. X (Samsung's Invalidity

17 Contentions at Exhibit U)). Samsung's invalidity contentions identify, element by element, the

18 locations within the '632 patent that where the '163 claims are anticipated. As explained below,

19 the disclosure in the '187 application, to which Apple now objects, contains the same written

20 description as the '632 patent. The claimed priority date and provisional application number

21 clearly appear on the front page of the '632 patent, putting Apple on notice of the '187

22 application's priority date. Additionally, the patent incorporates the provisional application by

23 reference into its disclosure. *See* Exh. 561, U.S. Patent No. 7,933,632 at 1:7-20.[6] Apple was

---

25    [6]  P.L.R. 3-3(a) requires only that the infringement defendant disclose "[t]he identity of each
26 item of prior art that allegedly anticipates each asserted claim or renders it obvious." There is no
requirement that all facts relating to the priority date of a prior art reference be disclosed at the
27 time specified in P.L.R 3-3. Samsung relies on the 60/718,187 application to establish priority of
   (footnote continued)

1    adequately put on notice of (1) the existence of this document (2) Samsung's contentions

2    regarding its disclosure, and (3) the prior art date Samsung intended to assert for that disclosure at

3    the appropriate time.

4         Second, there is no merit to Apple's assertion that 60/718,187 "does not disclose important

5    elements of [7,933,632]."    A provisional application can qualify as section 102(e) prior art so

6    long as the provisional application provides written description support for the claimed invention.

7    *In re Giacomini*, 612 F.3d 1380, 1383, 1385 (Fed. Cir. 2010).    Here, that support is confirmed in

8    two ways.    First, a review of the '187 application reveals that it provides adequate written

9    description for the '632 application.    Second, during his deposition, Mr. Agnetta confirmed that

10   the specifically identified relevant portions of 60/718,187 disclosed the relevant specification and

11   claims for the '632 patent.    *See* (Hutnyan Decl., Ex. W (Agnetta Depo. at 16:22-18:8, 23:4-24:17,

12   24:20-28:22, 28:23-35:7, 35:8-38:16, 38:17-45:9, 47:18-48:25, 49:1-50:10, 50:11-51:2, 51:5-

13   51:11, 51:12-51:19, 51:20-52:7).    The '632 inventor, Mr. Agnetta himself repeatedly agreed that

14   the relevant portions of the specification and relevant claims matched the key aspects of the

15   provisional application.    *See id.*    Counsel for Apple who attended the deposition and asked

16   questions made absolutely no effort to highlight any deficiency in the disclosure of 60/718,187.

17   The provisional application provides adequate written description for the '632 patent and

18   establishes priority as of at least September 16, 2005.

19

20

21

22

23

24

25

26

27   the parent application.    Both the '632 patent and '187 application's disclosures are equivalent for
     purposes of the identity and description of prior art that anticipates the '163 patent.

28

OBJS AND RESPS RE: (1) EXS TO BE USED WITH HOWARTH, VAN DAM, GRAY, O'BRIEN, AND TEECE,
AND (2) DESIGNATED DEPOSITION TESTIMONY OF NISHIBORI AND AGNETTA

1    DATED: August 14, 2012            QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
2

3                                       By */s/ Victoria F. Maroulis*
                                           Victoria F. Maroulis
4                                          Attorneys for SAMSUNG ELECTRONICS
                                           CO., LTD., SAMSUNG ELECTRONICS
5                                          AMERICA, INC., and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

02198.51855/4907978.1
                                              -19-                    Case No. 11-cv-01846-LHK