# EXHIBIT P

1
2
3
4
5
6         UNITED STATES DISTRICT COURT
7         NORTHERN DISTRICT OF CALIFORNIA
8         SAN JOSE DIVISION
9

| | |
|---|---|
| APPLE INC., a California corporation, | Case No.11-cv-01846-LHK |
| Plaintiff, | **REBUTTAL EXPERT REPORT OF TERRY L. MUSIKA, CPA** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

**SUBJECT TO PROTECTIVE ORDER**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

39. The following table demonstrates by example Dr. O'Brien's illogical conclusions by showing the Samsung Feature Patents In Suit sorted by Dr. O'Brien's iPhone usage rate along with his corresponding iPhone damage claim:

| Patent | Dr. O'Brien's Usage Percent for iPhones[28] | Dr. O'Brien's Damage Claim for iPhones[29] |
|---|---|---|
| '711 | 65.4% | $4,769,990 |
| '460 | 63.9% | $11,007,551 |
| '055 | 63% | $375,000 |
| '871 | 43.5% | $5,742,382 |
| '893 | 42.0% | $3,063,296 |

**Dr. O'Brien has Incorrectly Compared the Worldwide R&D for all SEC Products and Services to the Five Samsung Feature Patents In Suit**

40. Dr. O'Brien states that "Samsung invests heavily in R&D and has an extensive patent portfolio."[30] He further states that "From 2005 through 2010 alone, Samsung invested more than $35 billion in research and development."[31] However, Dr. O'Brien fails to relate a single dollar of the claimed R&D to any of the Samsung Feature Patents In Suit. In fact two of the five Samsung Feature Patents In Suit were issued in 2006 and therefore bear no relationship to the R&D expenses incurred by Samsung in 2007 through 2010.

41. More significantly, Dr. O'Brien's reference to $35 billion in R&D expenses is from Samsung's Answer, Affirmative Defenses and Counterclaims which is for the entire worldwide operations of SEC that bear little to no direct relationship to the Samsung Feature Patents In Suit. The SEC worldwide numbers include R&D for all of Samsung's product lines including but not limited to televisions, Blu-ray players, 3D home-theater systems, laptops, printers, refrigerators, ovens, vacuum

---

[28] Expert Report of Vincent E. O'Brien, March 22, 2012, Table 4.
[29] Expert Report of Vincent E. O'Brien, March 22, 2012, Table 9 and p. 22.
[30] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 4.
[31] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 4.

1  cleaners, smartphones, telecommunication systems, digital cameras and camcorders, semiconductors and TV panels.[32] For example, in 2009 Samsung's total worldwide sales of Samsung products that embody the Samsung Feature Patents In Suit were $1.8 billion.[33] Total sales in 2009 for SEC were $119 billion.[34] Accordingly, Dr. O'Brien attempts to equate products that represent less than two percent of the sales to 100 percent of the corporate worldwide R&D expense.

42. Dr. O'Brien's failure to establish any causal connection or relationship of the worldwide SEC R&D to the Samsung Feature Patents In Suit in his determination of an appropriate reasonable royalty rate renders his conclusions unsupported, speculative and unreliable.

### Dr. O'Brien's Criticism of Apple's License Production is Incorrect

43. I have been informed by counsel that Apple searched for and produced patent license agreements related to the accused iPhone, iPad, and iPod Touch products. However, Apple did not produce other non-patent types of agreements for which it pays royalties related to the accused products, such as copyright, trademark, software, and data licensing agreements. I understand that Samsung did not produce such non-patent agreements either. These other types of agreements account for the unproduced agreements from the royalty reports referenced by Dr. O'Brien.[35]



---

[32] 2009 Samsung Electronics Annual Report, pp. 30-37.
[33] SAMNDCA00376902 to SAMNDCA00377405 at SAMNDCA00376906. I have not included sales of additional products which embody the Samsung Feature Patents In Suit included in the file SAMNDCA00372946 because those sales take place after 2009.
[34] 2009 Samsung Electronics Annual Report, p. 44.
[35] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 10-11.
[36] The Apple licenses are specifically listed in **Exhibit 3**.
[37] Binding Term Sheet between Apple Computer Inc. and Creative Technology LTD and Creative Labs, Inc., August 22, 2006 (APLNDC-WH0000536155 to APLNDC-WH0000536171).
[38] Patent License Agreement between Nokia and Apple Inc., dated June 12, 2011 (APLNDC-X0000007220 to APLNDC-X0000007335).



47. I am unaware of any financial, economic or other precedential basis wherein the reference of one patent to another patent within the patent text establishes an acceptable basis for the determination of a reasonable royalty rate. Even more significantly, the facts concerning the licensing of the '018

---

[39] Global Patent License Agreement between Apple Inc. and Telefonaktiebolaget L M Ericsson, dated January 14, 2008 (APLNDC-WH0000536194 to APLNDC-WH0000536213).

[40] Patent License Narrowband AMR and Wireband AMR Standards between Apple Computer, Inc. and VoiceAge Corporation and Nokia Corporation, June 3, 2003 (AppDel0158906 to AppDel0158943).

[41] License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer, Inc., July 1, 2005 (APLNDC-WH0000725229 to APLNDC-WH0000725257).

[42] Software License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer Inc., January 1, 2006 (APLNDC-WH0000725258 to APLNDC-WH0000725288).

[43] MPEG-4 Audio Patent License Agreement between Apple Computer, Inc. and Via Licensing Corporation, October 6, 2003 (APLNDC-WH0000725289 to APLNDC-WH0000725319).

[44] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 12.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Features" with the Samsung Feature Patents In Suit, stating "The Feature Patents can be similar to the 'feature sets' contained in this offer. This indicates that Apple would accept an offer from Samsung for the Feature Patents of less than $6 per phone and $8 per tablet."[81] Dr. O'Brien's characterization of the October 2010 proposal and its relevance to a reasonable royalty calculation are unsupported and illogical. First, the document to which Dr. O'Brien refers states that Apple offered Samsung a license to a portfolio of Apple patents for $30 per unit for phones and $40 per unit for tablets, but was willing to offer Samsung a 20% discount, if Samsung refrained from using Apple "Proprietary Features"; the document does not indicate that Apple offered to license its proprietary features for $6 per phone and $8 per tablet.[82] Second, Dr. O'Brien provides no explanation for his conclusion that the offer of a discount for not practicing Apple's patents has any bearing on the appropriate license rate for the five Samsung Feature Patents In Suit nor is there any such basis for comparison. Dr. O'Brien presents no evidence that any patent in the portfolio of Apple "Proprietary Features," let alone all of the patents in the portfolio, provide similar features to the Samsung Feature Patents In Suit. Thus the October 2010 presentation cited by Dr. O'Brien provides no support for his contentions concerning the reasonable royalty rate for the Samsung Feature Patents In Suit.

69. Accordingly, Dr. O'Brien's conclusions based on his mistaken understanding are incorrect and unreliable.

**K. POSSIBLE REVISIONS TO THIS REPORT**

70. In Dr. O'Brien's analysis of *Georgia-Pacific* Factor 2, he references a dispute in the discovery process between Apple and Samsung relating to licensing. For the purposes of my report, I have assumed that the parties have produced all relevant license agreements and royalty reports. If additional information becomes available, I will supplement my analysis and conclusions if asked to do so.

71. I also intend to review and consider any other additional information provided to me after the production of this report and will supplement my analysis and conclusions if asked to do so.

---

[81] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 17-18.
[82] APLNDC00010886 to APLNDC00010917 at APLNDC00010900.

REBUTTAL EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                              23

L. **EXHIBITS**

72. **Exhibits 4 through 10** are attached to this report and support my analyses and opinions in this matter.

M. **PROFESSIONAL ARRANGEMENT**

73. My work for expert services provided in this matter is charged at a standard billing rate of $550 per hour and is in no way contingent on the outcome of this matter. In addition, I will be reimbursed for all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this case.

April 16, 2012    Terry L. Musika, CPA