HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER, EQUITABLE ESTOPPEL, UNCLEAN HANDS, AND UNFAIR COMPETITION** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 6, 2012, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Lucy Koh in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiff Apple will move, and hereby does move, for judgment on its claims of waiver, equitable estoppel, unclean hands, and unfair competition.

Dated: September 21, 2012      WILMER CUTLER PICKERING HALE
                                                  AND DORR LLP

                                                  By:    */s/ Mark D. Selwyn*
                                                                  Mark D. Selwyn

                                                                  Attorneys for Plaintiff
                                                                  APPLE INC.

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 1

      A.    The ETSI IPR Policy............................................................................................. 2

      B.    Samsung's Participation in ETSI ......................................................................... 3

           1.    Samsung's untimely disclosure of the '941 patent family .......................... 3

           2.    Samsung's untimely disclosure of the '516 patent family .......................... 4

      C.    Samsung's FRAND Commitments ..................................................................... 5

ARGUMENT ................................................................................................................................. 5

I.    THE COURT SHOULD FIND THAT SAMSUNG WAIVED ITS RIGHTS TO ENFORCE THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS. ................ 5

      A.    Samsung Was Obligated To Disclose Its Pending Korean Patent Applications to ETSI Before Adoption of the UMTS Standard. ............................ 6

      B.    Samsung Intentionally Chose Not To Disclose Its Korean Patent Applications as Required by the ETSI IPR Policy................................................. 7

      C.    Samsung's Arguments Cannot Excuse Its Misconduct. ........................................ 7

II.   THE COURT SHOULD FIND SAMSUNG EQUITABLY ESTOPPED FROM ENFORCING THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS............ 9

III.  THE COURT SHOULD FIND THAT THE '516 AND '941 PATENTS ARE UNENFORCEABLE BECAUSE SAMSUNG ACTED WITH UNCLEAN HANDS. ...................................................................................................................... 10

IV.  THE COURT SHOULD FIND THAT SAMSUNG VIOLATED THE CALIFORNIA UNFAIR COMPETITION LAW. .......................................................... 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) (en banc) .......................................................................... 9

*Apple Inc. v. Motorola Mobility, Inc.*,
    No. 11-cv-178 (W.D. Wis. Aug. 10, 2012) ..................................................................... 6, 9

*Apple Inc. v. Motorola, Inc.*,
    No. 1:11-cv-08540 (N.D. Ill. June 22, 2012) (Posner, J.) ................................................ 12

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011) .......................................................................................... 5

*Intel Corp. v. Hartford Accident & Indemnity Co.*,
    952 F.2d 1551 (9th Cir. 1991) ............................................................................................ 5

*Keystone Driller Co. v. General Excavator Co.*,
    290 U.S. 240 (1933) ......................................................................................................... 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    No. 2011-1440 (Fed. Cir. Aug. 30, 2012) ........................................................................ 12

*Lozano v. AT&T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007) ............................................................................................ 11

*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery*,
    324 U.S. 806 (1945) ......................................................................................................... 10

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008) ...................................................................................... 5-7

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ............................................................................................ 11

**Statutes**

Cal. Bus. & Prof. Code §§ 17203, 17204 ................................................................................. 11

# INTRODUCTION

Over the past decade, Samsung has developed and carried out a corporate policy of manipulating the standard-setting process in an attempt to obtain patents that cover industry standards. As the evidence at trial showed, Samsung sent members of its patent prosecution team to ETSI meetings with the goal of getting Samsung's patents adopted into the UMTS standard. But Samsung chose not to play by the rules. Despite ETSI's policy requiring the timely disclosure of intellectual property rights ("IPR"), Samsung chose not to timely disclose its patent applications. As Samsung's Director of Licensing put it, that would be a "stupid thing" to do. (PX220.2-3.) Instead, Samsung waited until long *after* its technical proposals had been adopted into the UMTS standard to inform ETSI about its relevant IPR—including its '516 and '941 patents and related applications, which Samsung belatedly declared "essential" to the standard. Samsung then sued Apple for infringement of the '516 and '941 patents based on Apple's sale of products supporting the UMTS standard. Later, Samsung reneged on its promises to license these declared-essential patents on fair, reasonable, and non-discriminatory ("FRAND") terms.

Samsung's conduct is a clear abuse of both the standards process and the patent system. The Court should exercise its equitable powers to right the wrongs committed by Samsung. Apple therefore asks the Court to find—as dictated by Federal Circuit precedent—that Samsung's misconduct renders the '516 and '941 patents unenforceable against implementers of the UMTS standard, including Apple, under the doctrines of waiver, equitable estoppel, and unclean hands. Apple also asks the Court to find that Samsung has violated the California Unfair Competition Law ("UCL").

# STATEMENT OF FACTS

Samsung sued Apple for infringement of the '941 and '516 patents on June 30, 2011, seeking damages and an injunction against Apple's sale of accused UMTS-compliant products. (Dkt. No. 80 ¶¶ 96-99, 108-111.) Samsung has declared these patents "essential" to UMTS, and has committed to license them on FRAND terms. (PX122.41, .44 ('941); PX122.24, .32 ('516); PX122.1 (general).) In July 2011, Samsung offered Apple a license to its portfolio of declared-essential UMTS patents in exchange for a running royalty of 2.4% of the sales price of Apple's

1  UMTS-compliant products.  (PX80.)  Samsung has not offered Apple any other terms for its

2  declared-essential UMTS portfolio or any of the individual patents in that portfolio.  (Tr. 3157:2-

3  4 (Teece).)  On November 8, 2011, Apple raised the affirmative defenses of waiver, equitable

4  estoppel, and unclean hands based on Samsung's standard-setting misconduct and counterclaimed

5  under the UCL.  (Dkt. No. 381 at 25-26, 82-85.)  On August 24, 2012, the jury found that Apple's

6  products do not infringe the '516 and '941 patents.  (Dkt. No. 1931 at 17.)

7    At trial, Apple called Michael Walker, former Chairman of the ETSI Board, to provide

8  expert testimony regarding the meaning of the ETSI IPR Policy and to evaluate Samsung's

9  compliance with it.  (Tr. 3477-3530.)  Apple also called Richard Donaldson, a former licensing

10  executive with experience negotiating FRAND licenses, to analyze the offer Samsung made to

11  Apple.  (Tr. 3531-46.)  Finally, Apple called Janusz Ordover, former chief economist at the

12  Antitrust Division of the Department of Justice, to testify regarding the economic effects of

13  Samsung's conduct.  (Tr. 3569-88.)  Samsung called no witnesses with experience at ETSI or

14  FRAND negotiations.  (Tr. 3141:11-14, 3651:3-15 (Teece).)  Instead, David Teece, Samsung's

15  expert on economic analysis and computation of patent damages (Tr. 3124:19-23), offered

16  testimony regarding his view of ETSI rules and Samsung's licensing offer (Tr. 3643:7-3647:25).

17    **A.   The ETSI IPR Policy**

18    The UMTS standard was created by a collection of standard-setting organizations known

19  as 3GPP, which includes ETSI.  Samsung and Apple are members of ETSI.  (Tr. 3483:4-7

20  (Walker).)  ETSI members are required to adhere to the ETSI Intellectual Property Rights ("IPR")

21  Policy.  (PX74.5 Cl. 14.)[1]  Clause 4.1 deals with disclosure, and provides:

> Each MEMBER shall use its reasonable endeavours to timely
> inform ETSI of ESSENTIAL IPRs it becomes aware of.  In
> particular, a MEMBER submitting a technical proposal for a
> STANDARD shall, on a bona fide basis, draw the attention of ETSI
> to any of that MEMBER's IPR which might be ESSENTIAL if that
> proposal is adopted.  (PX74.2 Cl. 4.1.)

---

[1] "IPR" is defined to include "any intellectual property right conferred by statute law including applications therefor other than trademarks," and "rights relating to get-up, confidential information, trade secrets or the like are excluded from the definition of IPR."  (PX74.5 Cl. 15.7.)

APPLE'S BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)                                    2

Clause 6 addresses FRAND commitments, and provides:

> When an ESSENTIAL IPR relating to a particular STANDARD is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory terms and conditions under such IPR… (PX74.3 Cl. 6.1.)

These two provisions are critical for allowing ETSI members to adopt technical proposals with eyes wide open as to patents that might cover those proposals—and ensuring that the patent holders do not try to "hold up" users of the standards by demanding unfair compensation. (Tr. 3577:8-3578:6 (Ordover); Tr. 3488:2-12, 3489:24-3490:4 (Walker).)

### B.     Samsung's Participation in ETSI

Samsung sends 20-30 members of its patent prosecution team to ETSI meetings (PX220.2-3 (Lee)), drafts patent applications with the goal of covering the standards being discussed at ETSI meetings (PX220.2-3 (Lee)), and even sets targets for the number of patents that end up in a standard (Tr. 2752:14-16 (Williams)).  The members of the Samsung prosecution team who attend ETSI meetings are responsible for determining when to disclose IPR to ETSI. (PX220.3 (Lee).)  Jun Won Lee, Samsung's Director of Licensing, testified that he was not sure if Samsung had ever disclosed a patent application or patent to ETSI before the standard has been frozen and that it would be a "stupid thing" to do so.  (PX220.3.)  Consistent with this policy, Samsung deliberately failed to disclose its IPR relating to the '941 and '516 patents until *after* its proposals corresponding to those technologies were adopted into the UMTS standard.

#### 1.     Samsung's untimely disclosure of the '941 patent family

The '941 patent claims priority to a Korean patent application filed on May 4, 2005. (JX1070.1.)  Just one week after filing that Korean application, Samsung submitted a technical proposal related to the '941 technology at a 3GPP working group meeting held during May 9-13, 2005.  (Tr. 3498:25-3499:9 (Walker); JX1085 (Samsung proposal, 3GPP document R2-051311).) Samsung also submitted a formal change request to implement its proposal into the UMTS standard.  (Tr. 3499:24-3500:18 (Walker); PX101 (change request); PX72.39 (meeting minutes reflecting discussion of 3GPP document R2-051311).)  Himke Van Der Velde, a Samsung

employee and a named inventor on the '941 patent, attended the meeting at which Samsung's proposals were submitted. (Tr. 3503:2-5 (Walker); PX72.15.) The working group approved Samsung's change request by email on May 18, 2005. (Tr. 3503:13-3504:7 (Walker); PX72.39.)

The working group's revisions to the standard, including Samsung's proposal, were approved by the "plenary" body at a meeting during June 1-3, 2005. (Tr. 3505:6-3506:18 (Walker); PX84.8 (meeting dates).) "That was the date at which…what was an initial proposal from Samsung, which was related to the patent that we're looking at, was formally adopted into the specification." (Tr. 3506:10-15 (Walker).) Samsung's proposal was ultimately incorporated into Release 6 of the UMTS standard as described in § 9.2.2.5 of the 3GPP Technical Specification 25.322, version 6.4.0. (DX557.029 (describing "Alternative E-bit").)

Samsung first disclosed the '941 patent family to ETSI on August 7, 2007—***more than two years after*** Samsung's proposal had been adopted and "frozen" into the UMTS standard. (Tr. 3506:24-3507:5, 3508:22-25 (Walker); PX122.41 (date), .44 (disclosing U.S. Patent Application No. 417,219, which became the '941 patent).)

### 2. Samsung's untimely disclosure of the '516 patent family

Samsung followed the same pattern with the '516 patent. The '516 patent claims priority to five Korean patent applications filed between June 9, 2004 and April 7, 2005. (JX1073.1.) On August 12, 2004—just one week after filing the second Korean application—Samsung submitted a proposal relating to the '516 technology to a 3GPP working group. (Tr. 3510:13-21 (Walker); PX193.1, .3 (Samsung proposal).) The proposal was submitted by Samsung employee Juho Lee, a named inventor on the '516 patent. (PX193.1; JX1073.1.) Samsung also submitted a formal change request to implement its proposal in May 2005. (Tr. 3511:5-11 (Walker); JX1084 (3GPP document R1-050565).) The change request was presented by inventor Lee and agreed to at a 3GPP working group meeting during May 9-13, 2005, which all five named inventors attended. (Tr. 3511:25-3512:4 (Walker); PX70.16, .22 (document R1-050565 agreed on May 20, 2005 on email reflector); PX70.40, .42-43 (inventors).)

Samsung's change request was frozen into the standard at the following plenary session, held during June 1-3, 2005. (Tr. 3513:10-24, 3514:11-16 (Walker); PX84.8 (meeting dates).)

Samsung's proposal was ultimately incorporated into Release 6 of the UMTS standard as described in § 5.1.2.6 of the 3GPP Technical Specification 25.214, version 6.6.0.  (JX1083.25.)

Samsung's first disclosure of the '516 patent family to ETSI was made on May 16, 2006—*nearly one year after* Samsung's proposal was adopted.  (Tr. 3513:10-24, 3516:2-8 (Walker); PX122.24, .32 (disclosing U.S. Patent App'n 148,181, which became the '516 patent).)

### C. Samsung's FRAND Commitments

When Samsung finally disclosed the '516 and '941 patent families to ETSI, Samsung declared that it was "prepared to grant irrevocable licenses under the IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD, to the extent that the IPRs remain ESSENTIAL."  (PX122.41; PX122.24.)  Despite those promises, Seung-Ho Ahn, the head of Samsung's IP Center and highest-ranking licensing executive, testified that he has not "taken any steps to ensure that Samsung complies with its FRAND commitments" and has "never verified" whether anyone at Samsung ensures compliance with its FRAND commitments.  (PX218.2.)  Samsung's first—and only—offer to license its declared-essential patents to Apple was made after this litigation began, and sought 2.4% of the entire selling price of each accused Apple product.  (Tr. 3145:1-3146:23 (Teece); PX80.)

## ARGUMENT

### I. THE COURT SHOULD FIND THAT SAMSUNG WAIVED ITS RIGHTS TO ENFORCE THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS.

Waiver is an equitable defense that applies "when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991).  Waiver must be shown by clear and convincing evidence.  *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).

In *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008), the Federal Circuit affirmed a finding that the patentee had impliedly waived its right to enforce its patents by remaining silent in the face of a duty to disclose its patents to the standards body.  *Id.* at 1022.  In that case, the court found waiver where the patentee attended standards meetings and failed to

disclose patents it knew "reasonably *might be* necessary" to practice the standard (even though, as here, the jury found those patents not infringed). *Id.* (emphasis added).

But here, Samsung's conduct was much worse. Samsung not only attended the ETSI meetings, it made technical proposals to the 3GPP working groups and sent members of its patent prosecution team to those meetings with the specific goal of drafting patents to "cover the standards that are being discussed." (PX220.2-3 (Lee).) Then, contrary to the ETSI IPR Policy, Samsung deliberately chose not to disclose its '516 and '941 patent families until *after* its own technical proposals corresponding to those patents had been adopted into the UMTS standard. Even Samsung's own expert admitted that he was not aware of another instance in which a company, "other than Samsung, made a proposal, had a patent and didn't disclose until later." (Tr. 3654:23-3655:1 (Teece).) Based on this misconduct, the Court should find that Samsung has waived its right to enforce the '516 and '941 patents against UMTS products.

### A. Samsung Was Obligated To Disclose Its Pending Korean Patent Applications to ETSI Before Adoption of the UMTS Standard.

Under the ETSI IPR Policy, Samsung had a clear duty to disclose IPR relating to the '941 and '516 patents *before* adoption of the UMTS standard. Clause 4.1 states that "a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which *might* be ESSENTIAL *if* that proposal is adopted." (PX74.2 Cl. 4.1.) As Dr. Walker testified, "[f]or this to have a meaning, that means you should make that disclosure prior to adoption." (Tr. 3496:14-18.) *See Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, Dkt. No. 194 at 43 (W.D. Wis. Aug. 10, 2012) ("*Apple v. Motorola*") ("By using the terms 'might' and 'if', the [ETSI IPR Policy] clearly requires members to make efforts to disclose intellectual property rights *before* a standard is adopted.").

Clause 4.1 also requires disclosure of IPR that "might be essential," even if not actually essential to the standard. (Tr. 3495:1-13 (Walker) ("Q: Did it require actual essentiality? A: No.").) *See Qualcomm*, 548 F.3d at 1019, 1022, 1025 (affirming waiver despite non-infringement verdict because infringement contentions showed the patents "reasonably *might be* necessary" to the standard and were thus encompassed by the disclosure obligation (emphasis added)).

Samsung actively participated in the development of the UMTS standard by submitting proposals and change requests related to the technologies described in the '941 and '516 patents. ('516: Tr. 3510:10-3511:23 (Walker); PX193; JX1084; '941: Tr. 3498:25-3500:3 (Walker); JX1085; PX101.)  Before submitting those proposals to ETSI, however, Samsung filed Korean patent applications to which the '516 and '941 patents claim priority.  ('516: Tr. 3513:6-24 (Walker); '941: Tr. 3498:3-3499:23 (Walker).)  Samsung clearly believed its Korean applications "might be essential" to the UMTS standard if its technical proposals were adopted, as indicated by Samsung's infringement contentions which were based on compliance with the UMTS standard.  (Tr. 2743:10-15 (Williams) (infringement opinion based on products' compliance with 3GPP release 6).)  Thus, under the plain meaning of Clause 4.1, Samsung was obligated to disclose its Korean patent applications to ETSI before adoption of the UMTS standard.

### B. Samsung Intentionally Chose Not To Disclose Its Korean Patent Applications as Required by the ETSI IPR Policy.

Despite the disclosure duties imposed by Clause 4.1, Samsung did not inform ETSI of its IPR relating to the '516 and '941 patents until well after its proposals had been "frozen" into the standard.  Samsung's failure to timely disclose its IPR was part of an orchestrated effort to "try to draft applications or have applications drafted that will cover the standards that are being discussed at the ETSI meetings."  (PX220.3 (Lee).)  In both instances, Samsung submitted its technical proposals to the 3GPP working groups approximately one week after filing the related Korean patent applications and at meetings attended by the named inventors.  Yet Samsung did not disclose its IPR until much later.  Indeed, Samsung's Director of Licensing testified that he did not know if Samsung had *ever* disclosed a patent or patent application before the relevant standard was adopted and he thought it would be a "stupid thing" to do.  (PX220.2-3 (Lee).)

The implication of Samsung's conduct is clear:  Samsung has waived its rights to enforce the '516 and '941 patents against products that implement the UMTS standard.  *See Qualcomm*, 548 F.3d at 1026 (holding patents unenforceable against any standard-compliant products).

### C. Samsung's Arguments Cannot Excuse Its Misconduct.

At trial, Samsung did not dispute the timeline showing its filing of the Korean patent

applications, its subsequent technical proposals to the 3GPP working groups, and its disclosure of relevant IPR only after its proposals were frozen into the standard. (Tr. 3655:11-16 (Teece) ("no reason to disagree" with timeline).) Samsung instead offered three excuses, but none has merit.

*First*, Samsung suggested that its failure to timely disclose IPR relating to the '516 and '941 patents should be excused because "late" disclosure is common at ETSI. (Tr. 3645:8-3646:12 (Teece).) Samsung's evidence consisted of a few minutes of testimony from Dr. Teece in which he presented a purported "study" of disclosure patterns. But Dr. Teece failed to investigate whether *any* of these disclosures were by parties making technical proposals (like Samsung),[2] which are obligated to disclose IPR *before the standard is frozen* (PX74.2 Cl. 4.1). In any event, Samsung's "two wrongs make a right" defense is irrelevant as a matter of law. ETSI's IPR Policy requires disclosure of IPR that might be essential "if that proposal is adopted," and purported breaches of that obligation by others cannot excuse Samsung's breach. *See*, *e.g.*, *Qualcomm*, 548 F.3d at 1012 (standard-setting participants' understanding of disclosure obligations is relevant only "to the extent the written JVT IPR policies are ambiguous").

*Second*, Samsung suggested that its Korean patent applications were not subject to ETSI's disclosure obligations because they were confidential. But ETSI has a specific provision for designating materials as confidential, and Samsung never invoked it. (Tr. 3528:5-3529:14 (Walker).) Samsung also waived any confidentiality by making proposals to ETSI working groups—which operate in public sessions—of the technology described in the '516 and '941 patents. (Tr. 3528:5-3529:14 (Walker) ("All [Samsung's] documents that I have seen, they were submitted without any confidential markings whatsoever."); PX74.4 (ETSI documents are public absent certain confidentiality procedures).) Samsung's argument that parties can withhold confidential patent applications runs counter to the very purpose of ETSI's disclosure rules. *See Apple v. Motorola*, at 43-45 (granting summary judgment that Clause 4.1 required disclosure of "confidential" applications where the contents of those applications were publicly submitted).

---

[2] As Dr. Teece admitted, he did not investigate whether "people, other than Samsung, made a proposal, had a patent and didn't disclose until later." (Tr. 3654:23-3655:1.)

***Third***, Samsung suggested that it timely disclosed IPR because it submitted a general FRAND declaration (PX122.1) before it submitted its technical proposals. But a general FRAND declaration does not satisfy the requirements of Clause 4.1 "because it doesn't address disclosure." (Tr. 3527:18-25 (Walker).)[3] Moreover, the ETSI IPR Guide states that members should provide "detailed disclosures" "as soon as feasible" after providing a general commitment. (DX613.009.) *See Apple v. Motorola*, at 44 ("[T]he ETSI policies make clear that the submission of a general declaration does not relieve a member of its duty to make a timely declaration of specific patents and applications that it believes may be essential to an ETSI standard.").

## II. THE COURT SHOULD FIND SAMSUNG EQUITABLY ESTOPPED FROM ENFORCING THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS.

Equitable estoppel is a defense that may arise when a party fails to inform a standard-setting organization that it owns IPR relevant to the standard despite a duty to disclose that IPR. *See Hynix*, 645 F.3d at 1347-48 ("A member of an open standard setting organization may be equitably estopped or may have impliedly waived its right to assert infringement claims against standard-compliant products."). Apple must prove by a preponderance of the evidence that "[t]he patentee, through misleading conduct, [led] the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*). "'Conduct' may include specific statements, action, inaction, or silence where there was an obligation to speak." *Id.* Apple must also prove that it relied on the misleading conduct and would be prejudiced by that reliance if Samsung's claims were permitted to go forward. *Id.*

Samsung's misleading conduct included its failure to timely disclose its IPR and its false commitment to offer licenses on FRAND terms. Samsung was silent in the face of a clear duty to speak, which misled the UMTS industry into believing that Samsung did not have IPR related to its proposals when it submitted them to the 3GPP working groups. Samsung's licensing commitment also misled implementers of the UMTS standard to believe that Samsung would

---

[3] ETSI's IPR Policy addresses FRAND in Clause 6 and disclosure in Clause 4, and the two provisions do not cross-reference each other; they are independent requirements.

APPLE'S BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)

9

offer FRAND terms for its patents, rather than sue and seek to enjoin sales of UMTS products.

When IPR that should have been disclosed is instead concealed, it distorts the decision-making process. (Tr. 3579:2-6 (Ordover) ("Samsung's conduct distorted the decision making process at ETSI. . . . [T]hat distortion has led to a choice of technology that may not have been chosen but for its conduct.").) ETSI and its members—including Apple—rely on the IPR Policy when conducting standard-setting activities and when building products that implement industry standards. The very existence of ETSI's policy is evidence that ETSI relies on IPR disclosures in determining the technologies it will adopt into a standard. (PX74.) Here, that reliance harmed Apple—and others in the business of selling UMTS products—by subjecting them to Samsung's hold-up power. (Tr. 3579:1-19 (Ordover) (Samsung acquired hold-up power through non-disclosure).) Samsung exercised that hold-up power against Apple by demanding license terms that are clearly not FRAND, as detailed in Section IV below. (Tr. 3579:12-19 (Ordover).)

Based on Samsung's misleading conduct with respect to its belated disclosure of IPR and its false FRAND commitments, the Court should find that Samsung is equitably estopped from enforcing its '516 and '941 patents against UMTS products.

### III. THE COURT SHOULD FIND THAT THE '516 AND '941 PATENTS ARE UNENFORCEABLE BECAUSE SAMSUNG ACTED WITH UNCLEAN HANDS.

A patentee may not pursue claims for infringement unless it has "acted fairly and without fraud or deceit as to the controversy in issue…. This [doctrine] necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*, 324 U.S. 806, 814-15 (1945). The inquiry is particularly significant when the public interest is implicated, as in a patent case. *Id.* at 815-16.

As detailed above, Samsung acted with unclean hands through its manipulation of the standard-setting process and its failure to abide by its FRAND commitments. Not only did Samsung violate its disclosure obligations, but Samsung also sent members of its patent prosecution team to 3GPP meetings with the goal of drafting patents to "cover the standards that are being discussed." (PX220.2-3 (Lee).) Samsung's efforts to maximize the likelihood that its patents would be adopted into the standard by concealing its IPR while drafting patents to read on

draft specifications for the UMTS standard gave it an unfair advantage in acquiring patents that could plausibly be declared essential.  But Samsung's misconduct did not end there; Samsung actually reneged on its belated promise to license its declared-essential patents on FRAND terms.

Accordingly, the Court should hold Samsung's '516 and '941 patents unenforceable under the doctrine of unclean hands because Samsung has "by deceit or any unfair means…gained an advantage."  *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).  "To aid a party in such a case would make this court the abetter of iniquity."  *Id.*

## IV. THE COURT SHOULD FIND THAT SAMSUNG VIOLATED THE CALIFORNIA UNFAIR COMPETITION LAW.[4]

To show a UCL violation, Apple must prove that Samsung engaged in an "unfair" practice that caused Apple to lose money or property.  Cal. Bus. & Prof. Code §§ 17203, 17204.  Conduct is "unfair" when the "impact [of the defendant's conduct] on its alleged victim, [outweighs]…the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to [the plaintiff]."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("endors[ing]" *South Bay* test).

Samsung's unfair conduct consisted of its violation of ETSI's disclosure rules and its failure to honor its FRAND commitments.  Samsung biased the decision-making process to increase its chances of obtaining standard-essential patents and, correspondingly, monopoly power.  (Tr. 3579:2-6 (Ordover) (late disclosure distorts standard); *id.* at 3585:16-22 (Samsung holds monopoly power).)  Although Apple was found not to infringe the '516 and '941 patents, Samsung possessed monopoly power prior to the jury's verdict because declaring a patent essential "create[s] itself a very potent effect on how people act and how they perceive the firm's ability to control price and overcharge for the technology."  (Tr. 3586:14-16 (Ordover).)

Samsung has exercised that monopoly power by demanding license terms—2.4% of the selling price of each accused product (PX80)—that are not FRAND and that vastly overstate the

---

[4] Apple asks the Court to address its unfair competition claim only if the Court grants judgment as a matter of law in favor of Apple on its breach of contract claim.

1  value of Samsung's patents.  *First*, the royalty base includes functionality unrelated to Samsung's
2  alleged contributions to the UMTS standard.  (Tr. 3537:12-3538:6 (Donaldson).)  That is
3  unreasonable and discriminatory (Tr. 3536:19-3537:3, 3539:6-20 (Donaldson)), and inconsistent
4  with the law for calculating a reasonable royalty.  *See LaserDynamics, Inc. v. Quanta Computer,*
5  *Inc.*, No. 2011-1440, slip op. at 25 (Fed. Cir. Aug. 30, 2012) (rejecting use of entire market value
6  rule and recognizing "[i]t is not enough to merely show that [the patented technology] is viewed
7  as valuable, important, *or even essential* to the use of the [accused product]" (emphasis added)).
8  *Second*, applying Samsung's 2.4% rate to that base would force Apple to pay more in royalties
9  for Samsung's patents than the price of the chip that Samsung accused of infringement.  (Tr.
10 3538:10-3539:3 (Donaldson).)  *Third*, if other declared-essential patent holders used the same
11 per-patent rate and base as Samsung, a manufacturer's total royalty cost would be up to 50% of
12 the phone's price, which is "totally unreasonable."  (Tr. 3544:4-3545:6 (Donaldson).)  *Fourth*,
13 Samsung did not offer any evidence it had ever requested a 2.4% royalty before—indeed, no
14 company has ever paid a penny, in money payments, for Samsung's FRAND patents.  (Tr.
15 3153:6-8 (Teece).)  *Fifth*, Samsung violated its FRAND commitment by seeking an injunction on
16 FRAND-committed patents.  *See Apple Inc. v. Motorola, Inc.*, No. 1:11-cv-08540, slip op. at 18-
17 19 (N.D. Ill. June 22, 2012) (Posner, J.) ("By committing to license its patents on FRAND terms,
18 Motorola committed to license…anyone willing to pay a FRAND royalty and thus implicitly
19 acknowledged that a royalty is adequate compensation for a license to use that patent.").
20       Finally, Samsung's unfair and dishonest conduct before ETSI forced Apple to incur
21 litigation expenses defending against Samsung's infringement claims, including fees paid to its
22 technical experts.  (Tr. 3439:14-19 (Knightly) ($140,000); Tr. 3326:11-18 (Kim) (500 hours at
23 $450/hour); Tr. 3587:4–3588:5 (Ordover) (Apple harmed by Samsung's conduct).)

## CONCLUSION

25       Apple respectfully requests that the Court exercise its equitable powers to find that
26 Samsung has engaged in waiver, equitable estoppel, unclean hands, and unfair competition.
27 Moreover, Apple asks the Court to hold Samsung's '516 and '941 patents unenforceable against
28 all UMTS-compliant products, including those sold by Apple.

APPLE'S BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)

12

Dated: September 21, 2012

WILMER CUTLER PICKERING HALE AND DORR LLP

By:   */s/ Mark D. Selwyn*
      Mark D. Selwyn

Attorneys for Plaintiff
APPLE INC.