HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**DECLARATION OF PHILIP W. SCHILLER IN SUPPORT OF APPLE'S MOTION FOR A PERMANENT INJUNCTION** |

I, Philip W. Schiller, hereby declare as follows:

1. I am employed by plaintiff Apple Inc. as its Senior Vice President, Worldwide Marketing. From 1997 to the present I have been a member of Apple's Executive Team. I have personal knowledge of the matters stated herein. I make this declaration in support of Apple's Post Trial Motion for a Preliminary Injunction.

2. In my position as Senior Vice President, Worldwide Marketing, I am responsible for overseeing worldwide marketing for all of Apple's products, including the iPhone and the iPad. Among other things, marketing of the iPhone includes conducting and analyzing market research, and monitoring the marketing and advertising efforts of Apple's competitors and the competing products they offer. As a result of my work and that of my marketing team at Apple, I have a good understanding of the reasons why our customers buy iPhones, as well as of Apple's competition and the products that compete with the iPhone.

3. Apple and Samsung are direct competitors in the smartphone market in the United States and around the world. As one of the largest manufacturers of mobile phones, and smartphones in particular, Samsung is a key competitor of Apple. Apple and Samsung compete head to head in a variety of marketing channels such as wireless carriers and retail stores. For example, both Apple and Samsung sell through several of the major carriers, such as AT&T, Verizon, and Sprint. We also both sell at several national retailers, including Best Buy, Target, Amazon, and Walmart. Apple and Samsung also compete directly in a variety of product segments defined by price and feature sets.

4. Among others, Samsung's Galaxy S and Galaxy S II smartphones have been key iPhone competitors in the market. Samsung adopted the strategy of classifying several phones under the Galaxy name in part to compete with the iPhone, so that rather than having a seemingly random offering of several phones, it had a unified brand for its smartphones even though it continued to offer slightly customized models to each carrier.

5. The Galaxy S II line of phones includes the Galaxy S II (AT&T), the Galaxy S II (T-Mobile), the Galaxy S II Skyrocket (AT&T), and the Galaxy S II Epic 4G Touch (Sprint). The Galaxy S II line was introduced as a flagship product for Samsung, and in its advertising and

SCHILLER DECL. ISO MOTION FOR A PERMANENT INJUNCTION
CASE NO. 11-CV-01846-LHK (PSG)

1

marketing of these Galaxy S II models, Samsung has positioned them as direct competitors to Apple's iPhone 4 and iPhone 4S. As an example, during the Super Bowl and throughout the spring of 2012, Samsung advertised the Galaxy S II in video spots that parody young consumers who were waiting outside of a store, which looks like an Apple store, awaiting the launch of a new product. It was apparent to potential consumers that Samsung was targeting and referring to Apple. Other Samsung advertising has targeted Apple, and reviewers have consistently compared the Galaxy S II products to Apple's iPhone products. These Galaxy S II products will also compete against the iPhone 5, which will soon be available in the United States.

6. In addition to the Galaxy S II line of phones, other current phone offerings of Samsung compete with the iPhone 4 and the iPhone 4S, which will be offered at a lower price point going forward, and until recently have also competed with the iPhone 3GS. Samsung's other competing phones include the Prevail (offered through Boost Mobile), the Droid Charge (offered through Verizon), the Galaxy S 4G (offered through T-Mobile), and the Showcase (offered through C-Spire Wireless).

7. Apple and Samsung compete not only where both iPhones and Samsung phones are offered through the same carrier (including AT&T, Sprint, Verizon, C-Spire Wireless, and others) but also in competing carriers that carry one but not the other brand of phone. For example, T-Mobile does not carry the iPhone, but it nevertheless competes directly against the iPhone with advertising directed to attract Apple customers. Apple and Samsung compete in all parts of the smartphone market because consumers can and often do shop different carriers when in the market for a new phone.

8. The smartphone market is undergoing a critical transition, as the mobile phone market undergoes a tectonic shift away from feature phones to smartphones. This presents a unique, time-critical opportunity for Apple or Samsung to acquire customers as more and more consumers become smartphone users for the first time. One of Apple's goals is to convert these feature phone users into iPhone users. This is important not only because of the value of a customer's initial purchase of an iPhone, but also because that customer is buying into the Apple ecosystem.

1   9. In our experience, once customers own an Apple product, they tend to be loyal to Apple products. Thus, first time iPhone customers are likely to buy another iPhone as well as other Apple products, including apps from Apple's App Store, music and other media from the iTunes store, and accessories for their Apple products. Moreover, it is harder to get people to switch from using a competing smartphone operating system platform (like Android) to Apple's iOS system than it is for Apple to retain customers that have already been introduced to the Apple ecosystem, in part because they become familiar and comfortable with how their phone works. We have also seen that friends and family members of an iPhone user are more likely to buy an iPhone themselves when they are in the market for a phone. While the effect is hard to quantify, the reality in the market is that the loss of sales, particularly the loss of sales to new smartphone purchasers, to Samsung causes significant ongoing injury to Apple well beyond the lost income on the individual sale.

10. As I testified at the trial, Apple has invested heavily in developing and maintaining the distinctive design of the iPhone, and Apple believes that the iPhone's design has been an overwhelmingly important factor contributing to the success of the products. The iPhone's design was revolutionary when it was first introduced in 2007, and each successive version has reinforced the distinctiveness of the iPhone's look. The iPhone's design is strongly associated with Apple as the source of the phone.

11. The attractive appearance and design of the iPhone are important factors in our customers' decisions to purchase an iPhone. This is supported by consumer research. Attached hereto is a copy of PDX 10.1, a chart that summarizes research conducted over three quarters from September 2010 through June 2011. In these studies, we asked customers to rank the importance of a number of different items in their purchasing decision. One of factors was "attractive appearance and design." The results show that over 80% of the respondents in each survey indicated that "attractive appearance and design" was one of the "very important" or "somewhat important" factors in their decision to purchase their iPhones. (The relevant pages of the surveys underlying the charts in PDX 10 are Plaintiff's Trial Exhibits 143, 144, 145 and 146, copies of which are attached hereto.)

12. We also believe that the many innovative aspects of the user interface with the Multi Touch display of the iPhone contribute significantly to the iPhone's success. Once again, research with Apple customers bears this out. On PDX 10.2 (also attached), a chart summarizes additional results of the studies conducted over three quarters from June 2010 through March 2011. Another of the factors we asked customers about was "ease of use." The results show that over 95% of the respondents in each survey indicated that "ease of use" was one of the "very important" or "somewhat important" factors in their purchasing decision. We understand the various features of Apple's Multi Touch technology are a significant part of what make the iPhone "easy to use." These features include those at issue in this case: distinguishing scroll versus gesture, pinch to zoom, bounce, and double-tap to zoom are all important aspects of how users interact with the iPhone.

13. Apple believes that both the distinctive design of the iPhone and its innovative user interface with the Multi Touch display are so important that we have featured both in our advertising. This is consistent with Apple's "product as hero" approach to advertising the iPhone, where the focus is on the product and its features. Examples of advertising highlighting the design of the iPhone include "Amazing OK Go," "Family Travel," and "Meet Her," all of which are listed on Plaintiff's Trial Exhibit 12, a copy of which is attached hereto. Examples featuring the Multi Touch gestures of the iPhone user interface include "How To," "Watered-Down Internet," and "Bet," also listed on Plaintiff's Trial Exhibit 12. Copies of these six TV commercials are reproduced on the attached DVD labeled as Schiller Declaration Exhibit 1.

14. As noted above, Apple and Samsung compete in the smartphone market at multiple price points. For example, Apple's current iPhone offerings include the iPhone 5, the iPhone 4S, and the iPhone 4, which are sold at three different price points. In fact, since the release of the iPhone 4S, Apple has consistently offered versions of the iPhone that compete at most every retail price point offered by Samsung, including with respect to the products that are the subject of Apple's requested injunction. From my perspective as head of Apple's worldwide marketing, there is no doubt that Samsung's infringing and diluting use of Apple's designs and technology in direct competition with Apple's products is harming Apple. Apple's products are distinguished by both

their design and their technology, and when those distinctive attributes are infringed or diluted, Samsung is able to compete unfairly with Apple. Apple devotes an enormous amount of effort to creating iconic and unique designs for its products. It is extremely important for us that when people see a product with one of our designs, they know it is an Apple product. Samsung's copying diminishes our ability to stand out based on the distinctive designs for which Apple is so famous.

15. Although Apple is no longer offering the iPhone 3 and iPhone 3GS, I believe that the design of those phones will continue to be closely associated with Apple for a long time to come, just as people still associate the revolutionary design of the original iPhone with Apple. There are many reasons for this close association. One is that the designs of each of these phones were truly revolutionary when the products were released and garnered tremendous press. Another is the extensive advertising that we engaged in for each of these products – it would have been virtually impossible not to see our billboards and advertisements. An extremely important factor is that there are millions of iPhone 3GS phones currently being used in the marketplace. When we reduced the price of this phone following the launch of the iPhone 4S, it was one of the best sellers in the market, and most of those products are still in use by consumers – particularly those who received them with a two-year carrier plan. Because mobile phones are widely used in public, the continuing public use of each of those phones generates goodwill for Apple. Finally, the fact that the original iPhone and iPhone 3G and 3GS designs bear many visual similarities to the iPhones that are currently being sold – the iPhone 5, the iPhone 4S, and the iPhone 3GS – causes consumers to draw a close connection between each of these products. I also believe that Samsung's infringement and dilution causes consumers to purchase a Samsung product when they otherwise would have purchased an Apple product. Samsung's copying hurts Apple in the short term because of the immediate lost sale. It hurts Apple in the long term because Apple loses the opportunity to build loyalty to the Apple ecosystem. Further, Apple is hurt even more because what is so special about Apple is eroded.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed this 28th day of August 2012, at Cupertino, California.

| | |
|---|---|
| 1 | |
| 2 | /s/ DRAFT |
| | Philip W. Schiller |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHILLER DECL. ISO MOTION FOR A PERMANENT INJUNCTION
CASE NO. 11-CV-01846-LHK (PSG)

6