QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Susan R. Estrich (Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**MOTION ON SAMSUNG'S NON-JURY CLAIMS, INCLUDING INDEFINITENESS**<br><br>Date: December 6, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

    A.   Claim 50 Of U.S. Patent No. 7,864,163 Is Indefinite. ......................................... 1

        1.   Claims Are Indefinite When They Use A Term Of Degree, And The Specification Fails To Provide An Objective Standard For Measuring The Scope Of That Term. ............................................................. 1

        2.   Claim 50 Of The '163 Patent Uses A Term Of Degree, And The Intrinsic Evidence Lacks Any Objective Standard For Measuring Its Scope. ........................................................................................................ 3

        3.   The Testimony of Apple's and Samsung's Trial Witnesses Confirms That Claim 50 Is Indefinite. ............................................................................ 4

    B.   Apple's Design Patents Are Invalid Because They Are Indefinite ........................... 5

    C.   Apple Did Not Prove That Samsung Was Objectively Willful In Infringing Its Patents Or Trade Dress. ....................................................................................... 8

    D.   Apple's Design and Utility Patents Are Invalid As Obvious. ................................. 11

III. CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*3M Innovative Props. Co. v. Tredegar Corp.*,
  No. 09-3335, 2011 WL 6004023 (D. Minn. Nov. 30, 2011) ........................................................3

*Advanced Display Techs. of Tx., LLC v. AU Optronics Corp.*,
  No. 6:11-cv-011, 2012 WL 2872121 (E.D. Tex. July 12, 2012) .................................................3

*Amgen, Inc. v. Chugai Pharm. Co.*,
  927 F.2d 1200 (Fed. Cir. 1991) ...................................................................................................2

*Antonious v. Spalding & Evenflo Companies, Inc.*,
  217 F.3d 849 (Fed. Cir. 1999) .....................................................................................................5

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012) ...................................................................................................9

*In re Blum*,
  374 F.2d 904 (C.C.P.A. 1967) .....................................................................................................7

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989) ..................................................................................................................11

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005) ...............................................................................................1, 2

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009) .................................................................................................10

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) ...................................................................................................10

*Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*,
  689 F. Supp. 2d 929 (S.D. Ohio 2010) .......................................................................................9

*Exxon Research & Eng'g Co. v. United States*,
  265 F.3d 1371 (Fed. Cir. 2001) ...............................................................................................2, 4

*Goodyear Tire v. Hercules Tire*,
  162 F.3d 1113 (Fed. Cir. 1998) .................................................................................................10

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ......................................................................................................................11

*Gustafson, Inc. v. Intersystems Indus. Products, Inc.*,
  897 F.2d 508 (Fed. Cir. 1990) .....................................................................................................9

*Hupp v. Siroflex of Am.*,
  122 F.3d 1456 (Fed. Cir. 1997) .................................................................................................11

*Insul-Wool Insulation Corp. v. Home Insulation, Inc.*,
    176 F.2d 502 (10th Cir. 1949)...........................................................................................9

*Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision*,
    336 F.3d 1308 (Fed. Cir. 2003)........................................................................................1

*KLA-Tencor Corp. v. Xitronix Corp.*,
    No. A-08-CA-723, 2011 WL 318123 (W.D. Tex. Jan. 31, 2011) ............................2, 3, 4

*KSR Intern. Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ........................................................................................................12

*LML Holdings, Inc. v. Pacific Coast Distributing, Inc.*,
    2012 WL 1965878 (N.D. Cal. May 30, 2012) .................................................................9

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*,
    275 F.3d 1347 (Fed. Cir. 2001) ...............................................................................1, 2, 4

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. ___, 131 S. Ct. 2238 (2011) ..............................................................................9

*P&G v. Teva Pharms. USA, Inc.*,
    566 F.3d 989 (Fed. Cir. 2009) ..........................................................................................9

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
    180 F.R.D. 254 (D.N.J. 1997) ........................................................................................11

*Roberts v. Sears, Roebuck & Co.*,
    723 F.2d 1324 (7th Cir. 1983).........................................................................................11

*S.O.I.Tec Silicon On Insulator Tech., S.A. v. MEMC Elec. Materials, Inc.*,
    745 F. Supp. 2d 489 (D. Del. 2010) .................................................................................2

*Sakraida v. Ag Pro, Inc.*,
    425 U.S. 273 (1976) ........................................................................................................11

*Sarkisian v. Winn-Proof Corp.*,
    688 F.2d 647 (9th Cir. 1982)...........................................................................................11

*In re Seagate Techs., Inc. v. Gateway, Inc.*,
    497 F.3d 1360 (Fed. Cir. 2007) ...................................................................................9, 10

*Sealant Sys. Int'l, Inc. v. TEK Global*,
    2012 WL 13662 (N.D. Cal. Jan. 4, 2012) ........................................................................9

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
    731 F.2d 818 (Fed. Cir. 1984)..........................................................................................2

*Seed Lighting Design Co. v. Home Depot*,
    2005 U.S. Dist. LEXIS 44741 (N.D. Cal. 2005)..............................................................6

*Standard Oil Co. v. America Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985)..........................................................................................2

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008) ..................................................................................................1

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001) ....................................................................................................................11

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ..............................................................................................6, 7

*Verlander v. Garner*,
    348 F.3d 1359 (Fed. Cir. 2003) ..................................................................................................9

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
    683 F.3d 1356 (Fed. Cir. 2012) ................................................................................................11

**Statutes**

35 U.S.C. § 112 ............................................................................................................1, 2, 5, 7, 8

**Other Authorities**

Manual of Patent Examining Procedure ("MPEP") § 1503.2 (2012) ................................................5

USPTO, *A Guide To Filing A Design Patent Application* at 14 ........................................................8

## I. INTRODUCTION

For the reasons submitted in Samsung's motion for judgment as a matter of law, new trial and/or remittitur, which Samsung hereby incorporates by reference as relevant, the record evidence does not support the jury's verdict. Likewise, Samsung deserves judgment on certain points that are reserved for the Court and effectively change aspects, if not the whole, of the jury's verdict. This submission specifically addresses such points reserved for the Court and Samsung's entitlement to judgment on them.

## II. ARGUMENT

### A. Claim 50 Of U.S. Patent No. 7,864,163 Is Indefinite.

"A determination that a patent claim is invalid for failure to meet the definiteness requirement . . . is 'a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims [, and] therefore, like claim construction, is a question of law . . . .'" *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision*, 336 F.3d 1308, 1318 (Fed. Cir. 2003) (citation omitted). Accordingly, it now falls to the Court to discard any of Apple's patent claims that fail for indefiniteness and to enter judgment in favor of Samsung as to them.

In particular, Claim 50 of Apple's '163 patent is invalid because the term "substantially centered" is indefinite. In order to be valid, a patent claim must "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. This requirement serves "to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). The test for definiteness is "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359 (Fed. Cir. 2001) (internal quotations omitted). Claims are indefinite when they are "not amenable to construction or [are] insolubly ambiguous." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1371 (Fed. Cir. 2008) (quotations omitted).

### 1. Claims Are Indefinite When They Use A Term Of Degree, And The Specification Fails To Provide An Objective Standard For Measuring The Scope Of That Term.

The Federal Circuit and district courts have noted that the use of terms of degree, such as "about," "approximately," or "substantially" may render a patent claim indefinite. *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984):

> Definiteness problems often arise when words of degree are used in a claim. That some claim language may not be precise, however, does not automatically render a claim invalid. When a word of degree is used ***the district court must determine whether the patent's specification provides some standard for measuring that degree***.

*Id.* (emphasis added); *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1217–18 (Fed. Cir. 1991) (holding the term "about" in "at least about 160,000 IU/AU" rendered the claim indefinite because it did not "permit one to know what specific activity values below 160,000, if any, might constitute infringement"); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 453 (Fed. Cir. 1985) (affirming the district court's holding of indefiniteness because "'partially soluble' was too vague to 'particularly point out and distinctly claim' the subject matter of the invention as required by the second paragraph of § 112."); *S.O.I.Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, 745 F. Supp. 2d 489, 508-09 (D. Del. 2010) (holding that claim reciting "sufficiently low temperature to substantially limit diffusion of a gas" was indefinite).

Additionally, because the definiteness inquiry requires a patent claim to have an "objective anchor," *Datamize*, 417 F.3d at 1350, a district court confronting a patent claim that uses a term of degree must look to the intrinsic evidence and determine whether "there is an ***objective*** standard to determine the scope of the word of degree." *KLA-Tencor Corp. v. Xitronix Corp.*, No. A-08-CA-723, 2011 WL 318123, at *3 (W.D. Tex. Jan. 31, 2011) (emphasis added); *see also Datamize*, 417 F.3d at 1350 ("The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention."). If the intrinsic evidence provides such an objective standard, then a person of ordinary skill can understand the meaning of the word of degree and determine the bounds of the subject-matter claimed. *See, e.g.*, *LNP Eng'g Plastics*, 275 F.3d at 1359-60 (holding that the term "substantially completely wetted" was not indefinite because a claim in the parent patent provided a specific, objective test); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1377 (Fed. Cir. 2001) (holding that the term "to increase substantially" was not indefinite when the specification

1  indicated that an increase of about 30% was the lower boundary).  On the other hand, if the
2  intrinsic evidence fails to set forth any such objective standard, persons of skill are left to guess as
3  to the meaning of the term of degree, and the claim term is invalid for indefiniteness.  *See*
4  *Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*, No. 6:11-cv-011, 2012 WL
5  2872121, at *12-14 (E.D. Tex. July 12, 2012) (ruling that claim term "highly modulated" was
6  indefinite because the intrinsic evidence failed to provide sufficient guidance to know what was
7  "highly" modulated compared to ordinarily modulated); *3M Innovative Props. Co. v. Tredegar*
8  *Corp.*, No. 09-3335, 2011 WL 6004023, at *24 (D. Minn. Nov. 30, 2011) (holding that the term
9  "substantially intermittent" was indefinite after noting that the term was not used or defined
10 anywhere in the intrinsic evidence); *KLA-Tencor Corp.*, 2011 WL 318123, at *3-5 (holding that
11 phrase "substantially maximize the strength of the output signal" rendered claim indefinite
12 because neither the patent nor the prosecution history provided any objective standard for
13 determining the meaning of the claim term).

### 2. Claim 50 Of The '163 Patent Uses A Term Of Degree, And The Intrinsic Evidence Lacks Any Objective Standard For Measuring Its Scope.

Claim 50 uses such a term of degree, requiring that the first and second "boxes of content" be "*substantially* centered" on the touch-screen display.  JX 1046.49 (emphasis added.) According to the patent specification, "[i]n some embodiments," a "box of content" might be "scaled to fill the touch screen display," or "scaled to fill the touch screen display with a predefined amount of padding along the sides of the display."  *Id.* at col. 17 ll. 26-30; *see also id.* figure 5C (providing example in which "Block 5" is precisely horizontally centered on the touch-screen display)).  Rather than providing an objective standard as to the scope of the term "substantially," however, these examples establish merely that "precise" centering is within the scope of claim 50.  Neither the figures, nor the written description of the '163 patent provide a single example of a "box of content" that that is not precisely centered on the touch-screen display.  There are no tests, parameters, or other criteria for determining whether such a box is or is not "substantially centered."

02198.51855/4973353.3                    -3-                    Case No. 11-cv-01846-LHK
MOTION ON SAMSUNG'S NON-JURY CLAIMS. INCLUDING INDEFINITENESS

The prosecution history of the '163 patent provides no further guidance.  The "substantially centered" requirement was present in the independent patent claims as drafted in the initial application to the PTO on September 4, 2007.  JX1049.44.  The meaning or scope of the term "substantially" was not raised at any time during examination.

The situation here differs from those addressed by *LNP Eng'g Plastics* and *Exxon Research*.  In those cases, the Federal Circuit was able to derive an objective standard from somewhere in the prosecution history or patent specification that supplied meaning to the term of degree used in the patent claim.  In this case, however, there is no objective standard anywhere in the intrinsic evidence of the '163 patent.  The situation here therefore corresponds with that in *KLA-Tencor*.  There, the district court recognized that the phrase "substantially maximize the strength of the output signal" meant that the selected wavelength would have to correspond to a local maximum or peak in the strength of the output signal. 2011 WL 318123, at *4.  But the court went on to note that the phrase introduced an ambiguity as to just "how close one would have to be to the peak in order to be 'substantially maximizing'":

> [referring to Figure 4, at *4]  Is the dotted line corresponding to a local peak of the output signal?  Is the device "substantially maximizing?"  What if the output signal was 1/8 inch to the right – would that be "substantially maximizing?"  Most importantly, how can another inventor know what is covered by the term and thus what would constitute infringement.  The result would be ad hoc litigation each time KLA felt threatened by a competitor and thought the line was close enough that they could convince a jury it was "substantially maximizing."  This is not the purpose of the patent system.

*Id.*  The rationale applies equally here.  How far from center must a "box of content" be placed to no longer satisfy the "substantially centered" limitation?  Because there is no objective standard found anywhere in the intrinsic evidence, others in the field, including but not limited to Samsung, are left without means for answering that question.  Claim 50 is therefore indefinite and invalid.

### 3. The Testimony of Apple's and Samsung's Trial Witnesses Confirms That Claim 50 Is Indefinite.

During trial, witnesses for Apple as well as Samsung provided testimony that confirms the indefiniteness of claim 50.  When asked about the meaning of "substantially centered," the only purported explanation offered by named inventor Scott Forstall was that the term meant placing a box "where it makes sense."  RT 758:12-15.  Mr. Forstall went so far as suggesting that placing a

1  narrow column of text "on the very left-hand side of a web page" might somehow satisfy the
2  "substantially centered" limitation.  RT 758:1-11.

3    Apple's own expert witness, Dr. Singh, admitted that, while there might be a "good reason
4  in the . . . interface design" for placing a box in a particular location, "***reasonable minds might . . .***
5  ***deviate***" as to whether the box would be "substantially centered."  RT 1901:20-1902:7 (emphasis
6  added).  When asked to confirm that the '163 patent specification provides no "specific
7  parameters" to determine the scope of the term "substantially," Dr. Singh's only response was
8  "that's why you need to be a person of ordinary skill in the art."  RT 1903:15-22.

9    Finally, Samsung's expert Mr. Gray opined that the term "substantially centered" was
10 ambiguous, and that an engineer would not understand how to avoid positioning a "box of
11 content" so that it was not "substantially centered."  RT 2922:14-2923:1.  Mr. Gray testified that,
12 based on the intrinsic evidence, a person of skill might understand when something was "fully
13 centered, or not centered, but 'substantially centered' is ambiguous."  RT 2922:20-22.

14   Thus, the intrinsic and extrinsic evidence lead to the same conclusion:  the '163 patent
15 provides no objective standard for determining whether a given placement of a "box of content" is
16 "substantially centered" as that term is used in claim 50.  The patent therefore fails to notify the
17 public as to the bounds of the invention, and the Court should hold that it is indefinite and invalid
18 as a matter of law.

19   **B.**  **Apple's Design Patents Are Invalid Because They Are Indefinite**

20   The Court declined to submit the issue of design patent indefiniteness to the jury, along
21 with Samsung's proposed instruction 39.2.  As a result, Samsung respectfully requests that the
22 Court now decide this issue in Samsung's favor and find that Apple's asserted design patents are
23 invalid.  *See Antonious v. Spalding & Evenflo Companies, Inc.*, 217 F.3d 849, at *7 (Fed. Cir.
24 1999) ("Design patents must comply with the requirements of 35 U.S.C. § 112.  Whether a claim
25 is indefinite and therefore invalid for violating section 112, ¶ 1, is a question of law . . . .")
26 (citations omitted).  To avoid a finding of indefiniteness, design patent figures must be drawn
27 clearly and consistently so that a designer skilled in the art can reproduce the design.  *See* Manual
28 of Patent Examining Procedure ("MPEP") § 1503.2 (2012) ("As the drawing or photograph

1  constitutes the entire visual disclosure of the claim, it is of utmost importance that the drawing or
2  photograph be clear and complete, and that nothing regarding the design sought to be patented is
3  left to conjecture."). Where the figures of a design patent are inconsistent or ambiguous, leaving
4  the scope of the design open to conjecture, the design is invalid due to indefiniteness. *Seed*
5  *Lighting Design Co. v. Home Depot*, 2005 U.S. Dist. LEXIS 44741 at *25-28 (N.D. Cal. 2005)
6  (finding design patent invalid for non-enablement because mistakes and ambiguities in patent
7  would prevent a person of ordinary skill in the art from understanding bounds of the claim);
8  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009)
9  ("Claims are considered indefinite when they are not amenable to construction or are insolubly
10 ambiguous."). Here, the evidence presented at trial warrants a finding that Apple's asserted design
11 patents are invalid due to indefiniteness.

12       Indeed, the indefiniteness of the asserted patents is evident from the patents themselves
13 (JX1040, JX1041, JX1042, JX1043)—patents that the Court itself has previously observed are
14 inconsistent and sloppy. 7/24/12 Hearing Tr. at 20:19-21:4 ("[W]ith several of these design
15 patents, there's unfortunate inconsistency or sloppiness in how it's done. . . . What am I supposed
16 to make of this other than, you know, there may have been some unfortunate prosecution here?").
17 The views of the D'889 patent make it impossible to know which way the device should be
18 oriented and where certain environmental features should go. Figures 1-4, which are perspective
19 and elevation views of the top and bottom, show the device in landscape, with the long sides being
20 the upper and lower ones, and with environmental features on the upper and right-hand sides.
21 JX1040.2-.4. Figures 5-8, however, show the left and right sides as the long ones, with the
22 environmental features switched to different sides. JX1040.2-.5. These side views are also all
23 improperly oriented horizontally with their curved corners at the bottom, instead of being shown
24 in their positions relative to the top view, as in other design patents. *See, e.g.*, JX1041.6. Figure 9
25 also shows the device being held in the portrait orientation, but with no environmental features
26 visible on the right side, contrary to what Figure 6 appears to indicate.

27       **D'889**. The D'889 patent also uses broken lines inconsistently, according to Apple's own
28 testimony about it. The patent shows a number of features in broken lines, including the rectangle

1  in Figures 1, 3, and 9; ports in Figures 2, 6, and 8, and part of the human figure in Figure 9.  The
2  patent also states that the broken lines in Figure 9 form no part of the claim, yet Apple asserted
3  that one of those broken line features—specifically, the rectangle— *was* a claimed element (RT
4  1046:21-24 (rectangle depicts a "border" beneath a transparent surface)).  The patent nowhere
5  specifies, however, that identical broken lines are being used for different purposes.  This not only
6  violates the MPEP's drafting rules, but renders the patent indefinite.  MPEP 1503.02(III) ("As it is
7  possible that broken lines with different purposes may be included in a single application, the
8  description must make a visual distinction between the two purposes"); *In re Blum*, 374 F.2d 904,
9  907 (C.C.P.A. 1967) ("Dotted and broken lines may mean different things in different
10 circumstances and all we wish to say here is that in each case it must be made entirely clear what
11 they do mean, else the claim is bad for indefiniteness under 35 U.S.C. § 112.").  The D'889 patent
12 also has inconsistent, confused surface shading.  *See* JX1040 (Figure 2 and Figure 4 both showing
13 the back of the device, but diagonal lines indicating reflective or transparent surface only shown in
14 Figure 2).
15        The fact that Apple witnesses testified that the 035 Mockup (DX741) and the iPad 2
16 (JX1005) both show the design of the D'889 is further proof of indefiniteness, as the ordinary
17 observer would not consider these two items to look substantially the same under the *Gorham* test.
18 *See* RT 472:24-473:1 (Stringer testifying that the iPad 2 incorporates the design of the D'889
19 patent); 528:12-15 (Stringer testifying that D'889 represents design shown in 035 Mockup).
20 Compounding this was Apple's testimony that the first iPad did *not* embody the D'889.  RT
21 3611:19-3612:17 ("Q. And, in fact, when you compared the '889 to the initial iPad, it was your
22 belief it's not an embodiment, right?  A. Because of the shape."); DX810 ("I don't think [the
23 ordinary observer] would see them as being substantially the same.").  Where, as here, patent
24 drawings are such that such vastly different models or products can embody the same design, the
25 scope of the patent is ambiguous, open to conjecture, and therefore indefinite.  MPEP § 1503.2
26 (2012); *Ultimax*, 587 F.3d at 1352.
27        **D'305**.  The D'305 is indefinite because the patent contains both a color and a black and
28 white figure, but gives no indication of whether color is necessary for the claim.  *See* JX1042.2.

1  Color drawings are permitted where the patentee affirms that "color is an integral part of the
2  claimed design." MPEP 1503.02(V). Yet, there is no such affirmation in the patent or guidance as
3  to what colors, if any, are necessary in light of the non-color figure.
4      **D'677/D'087**. The D'677 and D'087 patents are also insolubly ambiguous because it is
5  impossible to determine from the drawings whether the lozenge and rectangle features on the front
6  faces are *below* a surface, material breaks *on* the surface, or features drawn on *top* of a continuous
7  surface. *See* JX1041.15-.16; JX1043.5-.6. Apple asserted at trial that the rectangular feature for
8  D'677 was a "display area" *below* a transparent surface (RT 1014:14-19), while the lozenge shape
9  was a "slot," or opening, *in* the face (RT 1015:24). There is no indication in the patent that these
10 features should be interpreted in different ways, as they are drawn in the same solid lines. Further,
11 the "slot" lacks the shading needed to depict an opening (MPEP 1503.02(II)), and the "display
12 area" is not depicted in thin lines (as the PTO's guide requires) to show a feature behind a
13 transparent surface. USPTO, *A Guide To Filing A Design Patent Application* at 14.
14     The D'087 is further indefinite because it has no surface shading at all, as Apple's expert
15 admitted, so there is no way for a designer to understand that the internal rectangle is actually a
16 display area below a transparent surface and not a break in material on the surface. *Compare* RT
17 1014:2-19, 1018:18-1019:20 (Bressler testifying that, while the D'677 purports to claim a
18 reflective, transparent or translucent front face through use of diagonal lines, the D'087 has no
19 such lines and "could be anything. Nothing is being specified.") *with* RT 1230:6-15 (Bressler
20 testifying that oblique line shading must be used to show transparent, translucent and highly
21 polished surfaces). Apple's interpretation of the patents could only have been taken from extrinsic
22 sources, namely, Apple's claimed embodiments, rather than the patents themselves. This is
23 improper, for, in order to satisfy 35 U.S.C. § 112, the patent alone must enable a designer to *make*
24 the embodiment . *See* MPEP 1504.4(I). Because the record evidence supports a finding of
25 indefiniteness on Apple's asserted design patents, the Court should find them invalid as indefinite.
26     **C.     Apple Did Not Prove That Samsung Was Objectively Willful In Infringing Its Patents Or Trade Dress.**
27 Quite apart from proving Samsung's *subjective* "state of mind," Apple cannot carry a
28

finding of willful patent infringement without "clear and convincing evidence that [Samsung] acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Techs., Inc.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). This *objective* question is reserved for the Court. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012). Here, the question is not close, for Apple made no meaningful attempt to prove what a reasonable observer would have known about the existence of its relevant patents, much less about them being valid and infringed—and Apple certainly did not offer clear and convincing evidence on this point.

Whereas a preponderance-of-the-evidence standard requires only that something be "more probable than not," *Verlander v. Garner*, 348 F.3d 1359, 1376 (Fed. Cir. 2003), the clear-and-convincing evidence standard insists upon " 'an abiding conviction that the truth of [the] factual consequences are highly probable'," *Proctor & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). The clear and convincing standard thus imposes "a heavy burden of persuasion," well beyond "a dubious preponderance." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. ___, 131 S. Ct. 2238, 2245-46 (2011); *see Insul-Wool Insulation Corp. v. Home Insulation, Inc.*, 176 F.2d 502, 505 (10th Cir. 1949).

Accordingly, Apple was obliged to prove with clarity and specificity what was known or should have known about existence, validity, and infringement of each of its five patents that the jury found Samsung willfully infringed. "[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Products, Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *Sealant Sys. Int'l, Inc. v. TEK Global*, 2012 WL 13662 (N.D. Cal. Jan. 4, 2012) (to establish willful infringement, "notice of a patent need be alleged and ultimately proven"); *LML Holdings, Inc. v. Pacific Coast Distributing, Inc.*, 2012 WL 1965878, at *3 (N.D. Cal. May 30, 2012) (willful infringement requires showing that "Defendants knew of the Patents at Issue or it was so obvious that it should have been known"); *Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, 689 F. Supp. 2d 929, 944 (S.D. Ohio 2010) ("[I]n order to prove willful infringement Ethicon must set forth clear and convincing evidence that Hologic knew of the patents-in-suit or should have known about them.").

In "ordinary circumstances" the inquiry focuses on the defendant's pre-suit knowledge because patentees "should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct"; the usual remedy for alleged post-filing willful infringement is a preliminary injunction. *Seagate*, 497 F.3d at 1374. Of course, Apple in this case did not even seek a preliminary injunction—presumably because it knew its case was too dubious—as to the '915, '163, or D'305 patents that the jury nonetheless found willfully infringed by Samsung.

As to any *pre*-litigation knowledge on Samsung's part that Apple's specific patents were extant, valid, and infringed, far from mounting clear and convincing evidence, Apple came up blank: Apple offered no proof as to what the industry knew or should have known about any of its relevant patents other than the '381 patent. Notably, the '915 and '163 utility patents were not even issued until November 30, 2010 and January 4, 2011 respectively, mere months before the litigation commenced. JX 1044, 1046. As to the '381, the record shows only that it was listed amidst 75 other patents in Apple's 23-page August 2010 presentation, without proof that it was ever discussed. PX 52 at 12-16; *see* RT 1958:17-1959:13 (Teksler unable to testify to discussions). There was no evidence or testimony whatsoever—from an outside expert, an industry participant, or even an Apple employee—indicating what was objectively apparent to the reasonable observer about these patents and whether they were valid and infringed when suit was filed. In any event, Samsung's defenses as to both validity and infringement are at least reasonable, as separately demonstrated, thereby foreclosing a finding of willfulness. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011), reh'g denied (Mar. 22, 2011); *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 F. App'x 284, 291 (Fed. Cir. 2008).

Nor is Apple's evidence of alleged "copying" on point, for copying is "of no import on the question of whether the claims of an issued patent are infringed." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1336 (Fed. Cir. 2009); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1121 (Fed. Cir. 1998) (no infringement despite defendant's intent "to appropriate the general appearance of the Goodyear tire"), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008); *Hupp*

*v. Siroflex of Am.*, 122 F.3d 1456, 1464-65 (Fed. Cir. 1997). Copying publicly-known information not protected by a valid patent is fair competition, *see TrafFix Devices Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 159-60 (1989), and it "is erroneous" to suppose "that copying is synonymous with willful infringement." *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258 n.3 (D.N.J. 1997). Especially because participants in a particular market may "typically copy any development by their competitors, whether patented or not," *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,* 683 F.3d 1356, 1364 (Fed. Cir. 2012), there can be no fair equation between copying, on the one hand, and willful infringement of established patent rights, on the other. Thus, Apple has not met its burden of proving, clearly and convincingly, that Samsung's conduct at issue should objectively have been known, by the reasonable industry participant, to be infringing valid patents at issue. Samsung therefore respectfully requests that the Court find that objective willfulness has not been established on this record as to any of the relevant patents, much less as to all of them.

The same defect infects any claim that Samsung willfully infringed Apple's trade dress. Apple failed to introduce any evidence, let alone clear and convincing evidence, that Samsung willfully traded on the protectable, source-identifying attributes of Apple's trade dress. To the contrary, Apple did not even contend that it notified Samsung of any asserted trade dress, much less establish that Samsung knew of trade dress it was allegedly infringing. RT 1968:2-11 (Apple admitting no mention of trade dress in presentations to Samsung); PX 52; DX 800, 801.

### D.   Apple's Design and Utility Patents Are Invalid As Obvious.

Samsung requests that the Court conduct an independent judicial determination of whether Apple's asserted design and utility patents are invalid for obviousness. In the seminal case of *Graham v. John Deere Co.*, 383 U.S. 1 (1966), the Supreme Court established the framework for analyzing obviousness. The court noted that several factual issues were relevant to obviousness: "the scope and content of the prior art," "differences between the prior art and the claims at issue," "the level of ordinary skill in the pertinent art," and certain "secondary considerations." *Id.* at 17. However, the Court held that "the ultimate question of patent validity is one of law." *Id.*

Subsequent cases before the Supreme Court have reiterated that the "ultimate test of patent validity is one of law," *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280 (1976), and that "[t]he ultimate judgment of obviousness is a legal determination." *KSR Int'l. Co. v. Teleflex Inc.*, 550 U.S. 398, 404 (2007). Therefore, the Court can and should make an independent legal determination of obviousness in light of the evidence presented by the parties. Indeed, several appellate courts have recognized that while the Court may submit the question of obviousness to the jury for guidance, the Courts retain the duty to decide the question independently. *See Sarkisian v. Winn-Proof Corp.*, 688 F.2d 647, 651 (9th Cir. 1982) (en banc); *Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1341-44 (7th Cir. 1983) (en banc).

As set forth in Samsung's motion for judgment as a matter of law, the undisputed evidence shows that numerous pieces of prior art were invented, in public use and on sale prior to the critical date of Apple's patents, and that the prior art meets and/or renders obvious each of the elements of the asserted claims. Regardless of the jury's verdict, this Court has a duty to independently determine, based on the factual record before it, whether the asserted claims are invalid for obviousness. *See KSR*, 550 U.S. at 404. Based on the facts presented at trial, Samsung has presented overwhelming evidence that Apple's asserted design and utility patent claims are obvious. Consequently, the Court should enter judgment finding each of these claims obvious as a matter of law.

## III.   CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court enter judgment in favor of Samsung insomuch as:

(i)   Claim 50 of Apple's '163 patent is invalid because it is indefinite;

(ii)   Apple's D'889, D'305, D'677 and D'087 are invalid because they are indefinite;

(iii)   The record does not provide requisite objective proof of willful infringement by Samsung; and

(iv)   The asserted claims of Apple's design and utility patents are invalid as obvious.

DATED: September 21, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Victoria Maroulis*
Victoria F. Maroulis
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC