Proctor Declaration

EXHIBIT 4

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6  CORPORATION,                 )
                                )  SAN JOSE, CALIFORNIA
7            PLAINTIFF,          )
                                )  AUGUST 10, 2012
8         VS.                   )
                                )  VOLUME 6
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  PAGES 1638-1988
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                              )
            DEFENDANTS.         )
15 _____

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
24

25

1639

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                      BY:  HAROLD J. MCELHINNY
 3                                     MICHAEL A. JACOBS
                                       RACHEL KREVANS
 4                            425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                  HALE AND DORR
 7                            BY:  WILLIAM F. LEE
                              60 STATE STREET
 8                            BOSTON, MASSACHUSETTS  02109

 9                            BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
12                            BY:  CHARLES K. VERHOEVEN
                              50 CALIFORNIA STREET, 22ND FLOOR
13                            SAN FRANCISCO, CALIFORNIA  94111

14                            BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
16                            REDWOOD SHORES, CALIFORNIA  94065

17                            BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
19                            LOS ANGELES, CALIFORNIA  90017

20                            BY:  EDWARD J. DEFRANCO
                              51 MADISON AVENUE, 22ND FLOOR
21                            NEW YORK, NEW YORK  10010

22

23

24

25
```

1640

1                    INDEX OF WITNESSES

2        PLAINTIFF'S

3        HAL PORET
                CROSS-EXAM BY MR. PRICE (RES.)     P. 1665
4               REDIRECT EXAM BY MR. JACOBS        P. 1687

5        KENT VAN LIERE
                DIRECT EXAM BY MR. JACOBS          P. 1690
6               CROSS-EXAM BY MR. PRICE            P. 1702

7        RAVIN BALAKRISHNAN
                DIRECT EXAM BY MR. JACOBS          P. 1723
8               CROSS-EXAM BY MR. JOHNSON          P. 1769
                REDIRECT EXAM BY MR. JACOBS        P. 1806
9               RECROSS-EXAM BY MR. JOHNSON        P. 1813

10       KARAN SINGH
                DIRECT EXAM BY MR. JACOBS          P. 1815
11              CROSS-EXAM BY MR. DEFRANCO         P. 1848
                REDIRECT EXAM BY MR. JACOBS        P. 1909
12

13       JOHN HAUSER
                DIRECT EXAM BY MR. JACOBS          P. 1914
14              CROSS-EXAM BY MR. PRICE            P. 1917
                REDIRECT EXAM BY MR. JACOBS        P. 1945
15              RECROSS-EXAM BY MR. PRICE          P. 1948

16       BORIS TEKSLER
                DIRECT EXAM BY MR. MUELLER         P. 1951
17              CROSS-EXAM BY MS. MAROULIS         P. 1964

18

19

20

21

22

23

24

25

1
                           INDEX OF EXHIBITS

2                                     MARKED          ADMITTED

3     PLAINTIFF'S

4     24                                              1692
      24.5                                            1697
5     24.6                                            1699
      24                                              1699
6     1045                                            1729
      64                                              1755
7     46                                              1758
      57                                              1763
8     1023, 1024, 1028, 1036                          1768
      27.9, 27.12, 27.14, 27.16, 27.18               1811
9          27.20, 27.22, 27.24, 27.33
           27.34 - 27.39
10    UNDER SEAL 31                                   1811
      UNDER SEAL 27.31                                1812
11    1044                                            1817
      1014, 1009                                      1831
12    29.4, 29.5, 29.6, 29.10, 29.12                  1844
      UNDER SEAL 29.13, 29.14, 29.36                  1844
13    29.16, 29.18, 29.20 - 29.28,                    1844
           29.32, 29.34 - 29.37,
14         29.39, 29.41 - 29.45
      38                                              1845
15    30                                              1915
      52                                              1959
16

17    DEFENDANT'S

18    2534                                            1669
      2528                                            1671
19    2529                                            1686
      2526                                            1722
20    3918.105                                        1795
      66-A, 66-B, 751-A                               1795
21    3918.104, 3918.105, 3918.106                    1798
      29.29, 27.30                                    1813
22    2557                                            1912
      586                                             1975
23

24

25

1898

1    MR. VERHOEVEN JUST SAID HE CAN GET ON AND OFF

2    TODAY.  SO THEY KNEW HE WAS COMING ON TODAY.

3           THE QUESTION IS WHETHER HE'S NEXT OR

4    SECOND TO NEXT.  THAT'S THE ISSUE.  SO THE SURPRISE

5    THAT MR. VERHOEVEN EXPRESSES IS A LITTLE GENERATED.

6           THE COURT:  WELL, LET'S -- IF MR. LEE AND

7    MR. TEKSLER ARE FAIRLY QUICK, THEN IT SOUNDS LIKE

8    WE SHOULD BE ABLE TO GET TO MR. HAUSER.  CORRECT?

9           MR. JACOBS:  IT'S JUST ONE OF THOSE

10   THINGS, YOUR HONOR.  HE HAS TO TESTIFY TODAY.

11          MR. VERHOEVEN:  YOUR HONOR, I DOUBT VERY

12   MUCH WE COULDN'T GET HIM AN AND OFF TODAY.

13          THE COURT:  YOU MEAN AFTER LEE AND

14   TEKSLER?

15          MR. VERHOEVEN:  I'M NOT SURE HOW LONG THE

16   DEPOSITION DESIGNATIONS ARE, BUT MR. TEKSLER IS --

17   THEY HAVEN'T TOLD US HOW LONG HIS DIRECT IS GOING

18   TO BE, BUT I DON'T THINK IT'LL BE VERY LONG.

19          MR. LEE:  VERY, VERY BRIEF, TEN MINUTES.

20          MR. VERHOEVEN:  AND THEN MR. HAUSER IS

21   NEXT.

22          MR. MCELHINNY:  SO IN TERMS OF YOUR

23   SCHEDULE, YOUR HONOR, IT'S -- I MEAN, THE

24   OBJECTIONS ARE COMING THIS AFTERNOON.

25          THE COURT:  ALL RIGHT.  WELL, LET ME SEE

1899

```
1     IF I CAN GET HAUSER DONE.  I WAS TOLD TO PRIORITIZE

2     BENNER AND SITTLER, WHICH I DID OVER THE LUNCH

3     HOUR.  BUT I'LL TRY TO SEE IF I CAN GET HAUSER.

4              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

5              THE COURT:  ALL RIGHT.  THANK YOU.

6              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

7              THE COURT:  THANK YOU.

8              (WHEREUPON, A RECESS WAS TAKEN.)

9              THE COURT:  OKAY.  WELCOME BACK.  PLEASE

10    TAKE A SEAT.

11             I FILED THE HAUSER OBJECTION RULINGS.

12             ALL RIGHT.  LET'S BRING THE JURY IN,

13    PLEASE.

14             (WHEREUPON, THE FOLLOWING PROCEEDINGS

15    WERE HELD IN THE PRESENCE OF THE JURY:)

16             THE COURT:  ALL RIGHT.  WELCOME BACK.

17             IT'S 3:12.  PLEASE GO AHEAD,

18    MR. DEFRANCO.

19    BY MR. DEFRANCO:

20    Q   WELCOME BACK, DR. SINGH.  A FEW FOLLOW-UP

21    QUESTIONS.

22             YOU STARTED YOUR WORK IN ABOUT DECEMBER

23    OF LAST YEAR?

24    A   MORE OR LESS ABOUT JANUARY OF THIS YEAR, MAYBE

25    LATE DECEMBER.
```

1    Q    AND IF I ASKED YOU, I APOLOGIZE, YOUR RATE,

2    YOUR HOURLY RATE IS $450 AN HOUR?

3    A    THAT'S CORRECT.

4    Q    AND AT YOUR DEPOSITION IN APRIL, MY MEMORY IS

5    YOU COULDN'T RECALL AT THAT TIME ABOUT HOW MANY

6    HOURS YOU HAD SPENT ON THIS CASE.

7            COULD YOU ESTIMATE FOR US NOW ABOUT HOW

8    MANY HOURS YOU'VE SPENT WORKING ON THIS CASE?

9    A    MAYBE SOMEWHERE BETWEEN 150 AND 200.

10   Q    LET'S GO BACK -- THANK YOU, SIR.  LET'S GO

11   BACK TO PDX 29.29, PLEASE.

12           I'D LIKE TO SHIFT GEARS -- WE'RE BACK --

13   WE'RE STILL IN THE '163 PATENT, ONE OF THE TWO

14   PATENTS YOU ANALYZED, CLAIM 50, ONE OF THE TWO

15   CLAIMS YOU ANALYZED, ONE FOR EACH PATENT; RIGHT?

16   A    YES.

17   Q    WE MENTIONED SUBSTANTIALLY CENTERED BRIEFLY.

18   I'D LIKE TO GO BACK TO THAT.

19           THAT TERM, THAT CONTENT, THAT LIMITATION

20   APPEARS TWICE IN CLAIM 50; IS THAT CORRECT?

21   A    YES.

22   Q    AND THERE -- THE CLAIM REQUIRES THERE TO BE

23   INSTRUCTIONS FOR SUBSTANTIALLY CENTERING SOME FIRST

24   BIT OF INFORMATION AND INSTRUCTIONS FOR

25   SUBSTANTIALLY CENTERING A SECOND BIT OF

1    INFORMATION; IS THAT RIGHT?

2    A    THAT IS CORRECT.

3    Q    NOW, YOU ANALYZED WHETHER OR NOT THE ACCUSED

4    PRODUCTS SUBSTANTIALLY CENTERED CONTENT IN YOUR

5    WORK ON INFRINGEMENT; IS THAT CORRECT?

6    A    YES.

7    Q    NOW, THERE'S NO -- OTHER THAN THAT PHRASE,

8    "SUBSTANTIALLY CENTERED," THERE'S NO -- THERE'S NO

9    DEFINITION OR EXPLANATION ABOUT WHAT THOSE TERMS

10   MEAN IN THE CLAIM; RIGHT?

11   A    NOT IN THE CLAIM, NO.

12   Q    AND THE SPECIFICATION TALKS ABOUT THOSE TERMS,

13   BUT THERE'S NO EXPLICIT DEFINITION IN THE

14   SPECIFICATION; ISN'T THAT RIGHT?

15   A    WELL, THERE'S TALK IN THE SPECIFICATION ABOUT

16   PADDING AND SO ON WITH REGARDS TO, TO THE DOCUMENT.

17        BUT BY AND LARGE, IT'S SOMETHING THAT A

18   PERSON OF ORDINARY SKILL IN THE ART WILL HAVE NO

19   PROBLEM UNDERSTANDING.

20   Q    SO IS IT YOUR TESTIMONY, SIR, THAT IF I HAD 50

21   PEOPLE LINED UP WHO WERE SKILLED IN THE ART, THEY

22   WOULD ALL GIVE ME THE EXACT SAME ANSWER IF I SHOWED

23   THEM SOMETHING AND ASKED THEM IF IT WAS

24   SUBSTANTIALLY CENTERED?

25   A    BY AND LARGE, GIVEN THE CONTEXT FOR THE '163

1902

```
 1    PATENT, THERE ARE OTHER DESIGN CRITERIA, DESIGN
 2    GOALS THAT UNDERLIE THE, THE PATENT, AND SO USUALLY
 3    IN THE RARE CIRCUMSTANCE WHERE YOU FIND -- YOU FEEL
 4    THAT REASONABLE MINDS MIGHT, MIGHT DEVIATE.
 5            THERE'S USUALLY A GOOD REASON IN THE, IN
 6    THE INTERFACE DESIGN FOR, FOR THINGS APPEARING THE
 7    WAY THEY DO.
 8    Q    SO TWO PEOPLE MIGHT DISAGREE ABOUT WHETHER
 9    SOMETHING IS SUBSTANTIALLY CENTERED, BUT THAT MAY
10    BE KEY TO THE DESIGN GOAL FOR THE SPECIFIC DEVICE?
11    IS THAT WHAT YOU'RE SAYING?
12    A    NO, THAT'S NOT WHAT I'M SAYING.
13    Q    OKAY.  LET ME ASK YOU THIS.  THERE'S NO -- IN
14    TERMS OF GIVING THOSE 50 HYPOTHETICAL PEOPLE SOME
15    TOOLS, THERE'S NO SPECIFIC PARAMETERS SET FORTH IN
16    THE CLAIM; IS THAT TRUE?
17    A    THERE DOESN'T NEED TO BE SPECIFIC PARAMETERS
18    SET FORTH IN THE CLAIM.
19    Q    THERE ARE NONE SET FORTH IN THE CLAIM, SIR;
20    ISN'T THAT TRUE?
21    A    WELL, THERE'S THE TERM "SUBSTANTIALLY
22    CENTERED."
23    Q    RIGHT.  IT DOESN'T SHOW ANY -- IT DOESN'T GIVE
24    ANY MORE INDICATION.  IT DOESN'T GIVE YOU
25    MEASUREMENTS OR DISTANCE OR ANY OTHER INDICATION
```

1    ABOUT WHAT THAT MEANS, ISN'T THAT TRUE, SIR, IN THE

2    CLAIM?

3    A    IN THE CLAIM TAKEN WITH THE PATENT, A PERSON

4    OF ORDINARY SKILL IN THE ART WILL UNDERSTAND WHAT

5    IT MEANS.

6    Q    THERE ARE NO -- THERE ARE NO SPECIFIC

7    PARAMETERS.  YOU'VE SEEN CLAIMS THAT HAVE

8    PARAMETERS, RIGHT, SPECIFIC MEASUREMENTS DETAILED

9    EXACTLY IN THE CLAIM?  YOU'VE SEEN THAT, RIGHT,

10   BEFORE SIR?  THAT'S NOT THE SITUATION, IS IT, HERE,

11   SIR?

12   A    NOT FOR THIS PARTICULAR --

13   Q    I'M SORRY.  EVERYBODY IS RUSHED.  I APOLOGIZE

14   FOR TALKING OVER YOU.

15          THAT'S ALSO NOT THE SITUATION WITH

16   RESPECT TO THE '163 SPECIFICATION.  THERE ARE NO

17   SPECIFIC PARAMETERS FOR EACH OF THOSE 50

18   INDIVIDUALS TO COME TO THE SAME CONCLUSION, TO SEE

19   WHETHER THOSE PARAMETERS ARE MET.  THAT'S FAIR,

20   ISN'T IT, SIR?

21   A    THAT'S WHY YOU NEED TO BE A PERSON OF ORDINARY

22   SKILL IN THE ART.

23   Q    NOW, YOU ANALYZED, FOR INFRINGEMENT OF THE

24   '163 PATENT, ONE WEB PAGE.  IS THAT TRUE, SIR?

25   A    THAT IS NOT TRUE.

1904

```
1    Q    YOU ANALYZED A PARTICULAR APPLICATION, DIDN'T

2    YOU, THE BROWSER APPLICATION?

3    A    YES, THE BROWSER APPLICATION, YES.

4    Q    AND IN YOUR REPORT, YOU DIDN'T ANALYZE OTHER

5    APPLICATIONS, LIKE E-MAIL, THE MUSIC PLAYER, OR

6    GALLERY, OR ANY OTHER APPLICATION.  YOU FOCUSSED ON

7    THE GALLERY APPLICATION; IS THAT TRUE?

8    A    NO, I DID NOT.

9    Q    I'M SORRY?

10   A    I DID NOT FOCUS ON THE GALLERY APPLICATION AT

11   ALL.

12   Q    I APOLOGIZE.  I MISSPOKE.  I'M RUSHED.  LET ME

13   SLOW DOWN.

14        YOU FOCUSSED ON THE WEB BROWSER

15   APPLICATION IN YOUR ANALYSIS; IS THAT TRUE?

16   A    THAT IS TRUE.

17   Q    THERE ARE MANY OTHER APPLICATIONS OUT THERE,

18   HIGHER ORDER APPLICATIONS LIKE GALLERY AND E-MAIL

19   AND THINGS LIKE THAT, AND HUNDREDS OF OTHER MORE

20   DETAILED APPLICATIONS YOU CAN DOWNLOAD FROM THE

21   WEB, FOR EXAMPLE.  YOU DIDN'T ANALYZE OTHER

22   APPLICATIONS?

23   A    I DIDN'T NEED TO.

24   Q    NOW -- AND THE WEB PAGE, YOU ALSO -- WITHIN

25   ANALYZING THE WEB BROWSER, YOU PICKED OUT A
```

1905

```
 1    PARTICULAR WEB PAGE, THE NEW YORK TIMES WEB PAGE;
 2    IS THAT TRUE?
 3    A    AS PART OF MY TESTING, I TESTED IT ON A NUMBER
 4    OF WEB PAGES.  I JUST CHOSE THE NEW YORK TIMES AS A
 5    GOOD REPRESENTATIVE WEB PAGE FOR MY ILLUSTRATIONS.
 6            BUT THE DESIGN WORKS ON, ON AN
 7    INNUMERABLE NUMBER OF WEB PAGES.
 8    Q    IN THE INTERESTS OF TIME, SIR, DO YOU RECALL
 9    TESTIFYING AT YOUR DEPOSITION THAT YOU COULD NOT
10    RECALL TESTING, PERFORMING ANY TESTS ON ANY OTHER
11    WEB PAGE OTHER THAN THE NEWYORKTIMES.COM WEB PAGE?
12    DO YOU RECALL THAT?
13    A    I RECALL SAYING AT MY DEPOSITION THAT I DID
14    NOT CONCLUSIVELY REMEMBER VERY PRECISE WEBSITES
15    THAT I TESTED ON.
16            AS PART OF MY TESTING, I SPENT A LOT OF
17    TIME JUST BROWSING AROUND GENERALLY ON THE WEB
18    PAGE.  WHEN ONE DOES THAT, YOU DON'T NECESSARILY
19    KEEP A CLEAR TRACK OF EVERY WEB PAGE THAT YOU MIGHT
20    HAPPEN TO VISIT.
21    Q    SO YOU DON'T DISAGREE, AT YOUR DEPOSITION, YOU
22    COULDN'T IDENTIFY ANY OTHER WEB PAGE OTHER THAN THE
23    NEW YORK TIMES?
24    A    NO.  I BELIEVE I DID GIVE AN EXAMPLE OR TWO.
25    Q    YOU DIDN'T REMEMBER EXACTLY WHAT YOU TESTED;
```

1     ISN'T THAT FAIR, SIR?

2     A    ARE YOU ASKING ME TO REMEMBER WHAT I SAID AT

3     THE DEPOSITION THREE MONTHS BACK?  OR I DON'T KNOW

4     HOWEVER LONG BACK?  YOU'D LIKE TO KNOW WHAT WEB

5     PAGES I TESTED ON, I'D BE HAPPY TO GIVE YOU A LIST.

6     Q    LET'S KEEP GOING.

7          THE -- THERE ARE OTHER -- THERE ARE

8     CERTAIN TYPES OF CONTENT WEB PAGES THAT ARE NOT OF

9     USE FOR THE '163 PATENT; IS THAT TRUE, SIR?

10    A    CAN YOU BE MORE PRECISE WITH THAT QUESTION?

11    Q    THERE ARE CERTAIN TYPES OF, LIKE, MOBILE

12    WEBSITES?  ISN'T IT TRUE, SIR, THAT MOBILE WEBSITES

13    ARE NOT USEFUL IN THE CONTEXT OF THE '163 PATENT?

14    A    MOBILE WEBSITES ARE SITES THAT ARE

15    SPECIFICALLY DESIGNED AS AN ALTERNATIVE, AS AN

16    ALTERNATIVE SOLUTION TO BROWSING ON A SMALL SCREEN

17    DEVICE.

18          THE '163 PATENT SORT OF OBVIATES THE NEED

19    FOR PEOPLE TO GO AND REWRITE THEIR ENTIRE WEB PAGE.

20          SO IT'S -- IT DOESN'T MATTER -- IT'S NOT

21    DESIGNED FOR IT, I WILL AGREE.

22          BUT IT DOESN'T MATTER FOR THE CASE -- FOR

23    THE SAKE OF INFRINGEMENT.

24    Q    WELL, WOULDN'T YOU AGREE THAT IT GOES AGAINST

25    THE TEACHING, MOBILE WEBSITES GO AGAINST THE

1955

1    BUILT THE FOUNDATIONAL POSITIONING.

2    Q    WHAT IS APPLE'S POSITION ON LICENSING THIS

3    PORTION OF ITS PATENT PORTFOLIO?

4    A    SO UNLIKE STANDARDS WHERE WE HAVE TO LICENSE,

5    THIS IS AN AREA WHERE WE DON'T HAVE TO LICENSE.

6            MS. MAROULIS:  OBJECTION.  BEYOND THE

7    COURT'S ORDER ON STANDARDS.

8            MR. MUELLER:  YOUR HONOR, HE'S JUST

9    DESCRIBING THE SECOND CATEGORY, NON-STANDARDS

10   PATENTS.

11           THE COURT:  ALL RIGHT.  OVERRULED.

12           THE WITNESS:  SO WITH RESPECT TO THE

13   COMPUTING PORTFOLIO, IT'S NOT ONE THAT WE HAVE TO

14   LICENSE, BUT WE'RE CERTAINLY WILLING TO DISCUSS

15   LICENSING.

16           WE DO THAT WITH TWO PRIMARY GOALS.  THE

17   FIRST ONE IS THAT WE WANT TO GET FAIRLY COMPENSATED

18   FOR THE WORK THAT WE'VE DONE; AND THE SECOND -- AND

19   THE SECOND ONE IS WE WANT TO MAKE SURE THAT WE

20   SAFEGUARD APPLE'S DIFFERENTIATED USER EXPERIENCE.

21   BY MR. MUELLER:

22   Q    MR. TEKSLER, LET'S TURN, IF WE COULD, TO THE

23   THIRD CATEGORY IN THE APPLE PORTFOLIO.  WOULD YOU

24   REMIND US WHAT THAT IS?

25   A    CERTAINLY.  THAT'S APPLE'S UNIQUE USER

1956

```
1    EXPERIENCE I.P.

2    Q    WHAT DOES THAT REFER TO?

3    A    SO I WOULD DESCRIBE THAT IN A COUPLE DIFFERENT

4    WAYS.  FROM A TOP LEVEL, IT'S THAT WHICH MAKES OUR

5    BRAND IDENTITY AND KEEPS US UNIQUE IN THE

6    MARKETPLACE, AND IT'S WHAT WE DON'T WISH TO SHARE

7    AND OTHER PEOPLE TO MAKE.

8         SO WITH THAT, I WOULD SAY FROM A

9    TECHNICAL PERSPECTIVE, IT INCLUDES TRADEMARKS,

10   TRADE DRESS, ALL THE DESIGN PATENTS, AND A SMALL

11   SET OF UTILITY PATENTS THAT REALLY DEAL WITH USER

12   INTERFACE ELEMENTS, AND MAYBE A COUPLE OF

13   ASSOCIATED FEATURES.

14   Q    AND HOW DOES THIS CATEGORY RELATE TO WIRELESS

15   DEVICES?

16   A    WELL, I GUESS YOU DON'T REALLY NEED A LICENSE

17   TO THIS.  FROM OUR PERSPECTIVE, UNLESS YOU'RE

18   TRYING TO BUILD AN IPHONE KNOCK-OFF OR A CLONE OR

19   AN IPAD CLONE, YOU WOULDN'T NEED A LICENSE TO THIS

20   SET OF I.P.

21   Q    AND TO BE CLEAR, WHAT IS APPLE'S POSITION ON

22   LICENSING THIS PORTION OF ITS PORTFOLIO?

23   A    WE STRONGLY DESIRE NOT TO LICENSE IT.  IT'S

24   NOT AN AREA THAT WE LICENSE, AND OUR GOAL IN

25   LICENSING IS TO ENABLE PEOPLE TO DESIGN THEIR OWN
```

1957

```
 1    PRODUCTS, NOT THE ABILITY TO JUST COPY OUR
 2    PRODUCTS.
 3    Q    HAS APPLE EVER LICENSED ANY OF THE PATENTS
 4    WITHIN THIS CATEGORY?
 5    A    CERTAINLY OVER TIME WE HAVE, BUT I CAN COUNT
 6    THOSE INSTANCES ON ONE HAND QUITE EASILY.  AND WE
 7    DO SO WITH RARE EXCEPTION AND WE DO IT CONSCIOUSLY
 8    KNOWING THAT WE'RE NOT ENABLING SOMEBODY TO BUILD A
 9    CLONE PRODUCT.
10    Q    MR. TEKSLER, I WANT TO SHIFT GEARS, IF I
11    COULD, AND TURN BACK THE CLOCK TO THE BEGINNING OF
12    THE APPLE/SAMSUNG DISPUTE.
13          DO YOU KNOW WHEN THAT DISPUTE BEGAN?
14    A    YES.  IT BEGAN IN THE SUMMER OF 2010.
15    Q    AND WHAT HAPPENED IN THE SUMMER OF 2010?
16    A    SO SAMSUNG INTRODUCED THEIR GALAXY S PHONE,
17    AND WITH THIS, WE WERE QUITE SHOCKED FOR A COUPLE
18    OF REASONS.
19          FIRST, THEY WERE A TRUSTED PARTNER OF
20    OURS AND WE DIDN'T UNDERSTAND HOW A TRUSTED PARTNER
21    WOULD BUILD A COPYCAT PRODUCT LIKE THAT.
22          AND THE SECOND ONE WAS THAT THE PRODUCT
23    WAS JUST WAY TOO CLOSE TO OUR PRODUCT.
24          SO WE TOOK IT SO SERIOUS THAT STEVEN JOBS
25    AND TIM COOK CONTACTED SAMSUNG EXECUTIVES AND MET
```

1958

```
1    WITH THEM TO RELAY OUR CONCERN.

2              MS. MAROULIS:  YOUR HONOR, I MOVE TO

3    STRIKE FOR LACK OF FOUNDATION ON THAT RESPONSE.

4              THE COURT:  YOU'RE GOING TO HAVE TO LAY A

5    FOUNDATION HOW HE KNOWS THAT.

6    BY MR. MUELLER:

7    Q    SURE.  MR. TEKSLER, WERE YOU AT APPLE AT THAT

8    TIME?

9    A    I WAS.

10   Q    WHAT WAS YOUR POSITION AT THAT TIME?

11   A    I WAS THE DIRECTOR OF APPLE I.P. AND STRATEGY.

12   Q    YES OR NO, WERE YOU PRIVY TO CONVERSATIONS

13   INVOLVING SAMSUNG?

14   A    YES, I WAS.

15             MR. MUELLER:  YOUR HONOR, I'VE LAID A

16   FOUNDATION.

17   Q    COULD YOU PLEASE TURN TO TAB 1 IN YOUR BINDER,

18   THAT'S PLAINTIFF'S EXHIBIT 52.

19             THE COURT:  I DON'T HAVE THE DIRECT

20   EXHIBITS TO MR. TEKSLER.  I THOUGHT THEY WERE

21   COMING.

22             MR. MUELLER:  I'M SORRY.  I THOUGHT YOU

23   HAD A BINDER.  I APOLOGIZE, YOUR HONOR.  THIS IS

24   TAB 1, PLAINTIFF'S EXHIBIT 52.

25   Q    MR. TEKSLER, DO YOU KNOW WHAT THIS DOCUMENT
```

1959

```
1    IS?

2    A    I DO.

3    Q    WHAT IS IT?

4    A    IT'S A PRESENTATION THAT WAS GIVEN TO SAMSUNG

5    IN AUGUST OF 2010.  IT'S ONE THAT I HELPED AUTHOR

6    AND CREATE.

7              MR. MUELLER:  YOUR HONOR, I OFFER IT.

8              MS. MAROULIS:  YOUR HONOR, NO FURTHER

9    OBJECTION, BUT YOUR HONOR RULED THAT THE WITNESS

10   WOULD NOT BE ALLOWED TO TESTIFY ABOUT THE MEETING

11   ITSELF.

12             THE COURT:  AND I'LL CONTINUE THAT

13   RULING.  IT'S ADMITTED.

14             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

15             52, HAVING BEEN PREVIOUSLY MARKED FOR

16             IDENTIFICATION, WAS ADMITTED INTO

17             EVIDENCE.)

18             THE COURT:  GO AHEAD.

19   BY MR. MUELLER:

20   Q    MR. TEKSLER, WE'RE PUTTING PLAINTIFF'S EXHIBIT

21   52 ON THE SCREEN.  THIS IS TITLED "SAMSUNG'S USE OF

22   APPLE PATENT IN SMARTPHONES."

23             AND COULD YOU REMIND US WHAT THIS

24   DOCUMENT IS?  IT'S A PRESENTATION?

25   A    YES, IT'S A PRESENTATION GIVEN TO SAMSUNG IN
```

1    AUGUST OF -- AUGUST 4TH OF 2010.

2    Q    WHO DELIVERED THE PRESENTATION?

3    A    CHIP LUTTON DID.

4    Q    WHO IS CHIP LUTTON?

5    A    CHIP LUTTON WAS THE CHIEF PATENT COUNSEL AND

6    MY MANAGER AT THAT TIME.

7    Q    MR. LUTTON IS STILL AT APPLE?

8    A    NO, HE'S NOT.

9    Q    NOW, WERE YOU AT THIS PRESENTATION?

10   A    I WAS NOT.

11   Q    BUT YOU NOW WHEN IT WAS GIVEN?

12   A    I DO.

13   Q    WHAT WAS THAT DATE?

14   A    AUGUST 4TH, 2010.

15   Q    LET'S TURN, IF WE COULD, TO PAGE 17 OF THE

16   PRESENTATION AND PUT IT ON THE SCREEN.

17              WHAT DO WE SEE HERE?

18   A    SO THIS WAS REALLY A CHAPTER THAT WAS ENTITLED

19   "SAMSUNG COPYING IPHONE," AND WHAT WE WERE -- WHAT

20   WE WERE RELAYING WITH THIS CONTENT WAS REALLY ABOUT

21   THE REMARKABLE SIMILARITY OF THE TWO PRODUCTS, ALL

22   THE WAY FROM THE OVERALL APPEARANCE OF THE PRODUCT

23   DOWN TO THE ARRANGEMENT, THE FOUR-BY-FOUR

24   ARRANGEMENT OF THE ICONS, THE SIMILARITY OF THE

25   ICONS, THE PERSISTENT DOCK THAT YOU HAVE AT THE

```
 1    BOTTOM THAT DOESN'T CHANGE WITH THE SCREENS.

 2              AND WE DETAILED IT, YOU KNOW, WITH

 3    SUBSEQUENT PAGES THAT REALLY TALKED ABOUT THESE,

 4    THE USER INTERFACE ELEMENTS THAT WERE SIMILAR ALL

 5    THE WAY DOWN TO THE PACKAGING.

 6    Q    LET'S TURN --

 7              MS. MAROULIS:  YOUR HONOR, I MOVE TO

 8    STRIKE.  THIS WAS A LAY OPINION ON INFRINGEMENT

 9    ISSUES AND, AGAIN, THE WITNESS WAS NOT DISCLOSED.

10              MR. MUELLER:  YOUR HONOR, I'M SIMPLY

11    ASKING MR. TEKSLER ABOUT A DOCUMENT THAT HE HELPED

12    AUTHOR.

13              THE COURT:  OVERRULED.

14    BY MR. MUELLER:

15    Q    LET'S PUT PAGE 14 ON THE SCREEN IF WE COULD.

16              WHAT DO WE SEE HERE?

17    A    SO IN THIS PAGE WHAT WE WERE DESCRIBING --

18    THIS WAS PART OF THE CHAPTER WHERE WE TALK ABOUT

19    THE ARCHITECTURE OF SAMSUNG PHONES, AND

20    SPECIFICALLY HERE WE'RE REFERRING TO THE ANDROID

21    APPLICATION FRAMEWORK THAT'S HIGHLIGHTED IN THE

22    LEFT ARCHITECTURE DIAGRAM THERE.

23              AND WE WERE COMMUNICATING TO SAMSUNG BY

24    THIS SLIDE THAT THESE ARE SOME OF THE, SOME OF THE

25    PATENTS -- IT'S JUST REPRESENTATIVE OF A LIST OF
```

1962

```
1     PATENTS THAT SAMSUNG INFRINGES WITH THIS PORTION OF
2     THE ARCHITECTURE.
3     Q    I'D LIKE TO DIRECT YOUR ATTENTION, IF I COULD,
4     MR. TEKSLER, TO U.S. PATENT NUMBER 7,469,381 ON
5     THIS LIST.
6           ARE YOU FAMILIAR WITH THAT PATENT?
7     A    I AM.
8     Q    WHAT IS IT?
9     A    SO THIS PATENT RELATES TO SCROLL BOUNCING AND,
10    I GUESS PUT SIMPLY, IT'S A USER INTERFACE ELEMENT
11    WHEN YOU'RE PANNING THROUGH A LIST, WHEN YOU GET TO
12    THE BOTTOM OF THE LIST, HOW DO YOU KNOW THAT YOU
13    GOT TO THE BOTTOM?
14          WELL, WE HAVE A RUBBER BAND LIKE EFFECT
15    THAT HAPPENS WHEN YOU GET TO THE BOTTOM OF THE
16    LIST.  IF YOU DIDN'T HAVE SOMETHING LIKE THIS, YOU
17    WOULDN'T KNOW, IS THE COMPUTER HUNG UP?  SO YOU
18    NEED TO HAVE SOME KIND OF USER INTERFACE ELEMENT
19    AND THIS IS HOW WE DO IT.
20          MS. MAROULIS:  YOUR HONOR, MOVE TO
21    STRIKE.  LACK OF FOUNDATION AND OPINION TESTIMONY.
22          MR. MUELLER:  YOUR HONOR, AGAIN, THIS IS
23    A PORTION OF A PRESENTATION THAT MR. TEKSLER HELPED
24    TO AUTHOR.  I'M JUST ASKING ABOUT ONE ENTRY ON THIS
25    PAGE.
```

1963

```
 1              THE COURT:  ALL RIGHT.  OVERRULED.

 2      BY MR. MUELLER:

 3      Q    MR. TEKSLER, IF YOU COULD, PLEASE TURN TO TAB

 4      2 IN YOUR BINDER, AND THIS IS PDX 32.  IF WE COULD

 5      ALSO PUT THAT ON THE SCREEN.

 6              MR. TEKSLER, THIS SHOWS SEVEN PATENT

 7      COVERS.  ARE YOU FAMILIAR WITH THESE PATENTS?

 8      A    I AM.

 9      Q    WHAT ARE THEY?

10      A    THESE ARE THE PATENTS --

11              MS. MAROULIS:  OBJECTION, CALLS FOR

12      OPINION TESTIMONY.  LACKS FOUNDATION.

13              THE COURT:  WHAT ARE YOU ASKING?

14              MR. MUELLER:  I MERELY WANTED TO GET

15      ACROSS THAT THESE ARE THE ASSERTED PATENTS IN THIS

16      CASE.

17              THE COURT:  IS THERE ANY QUESTION ABOUT

18      THAT SO FAR?

19              MR. MUELLER:  I CAN REPHRASE IF YOU -- IF

20      I MIGHT, YOUR HONOR.

21      Q    ARE THESE THE SEVEN ASSERTED PATENTS?

22      A    YES, THEY ARE.

23      Q    WHERE DO THESE FALL, THESE SEVEN PATENTS,

24      WITHIN THE CATEGORIES YOU DESCRIBED EARLIER IN THE

25      APPLE PORTFOLIO?
```

```
 1   A    CERTAINLY.  SO THERE'S FOUR DESIGN PATENTS,

 2   AND ALL FOUR DESIGN PATENTS FALL INTO APPLE'S

 3   UNIQUE USER EXPERIENCE.

 4            AND THEN THE THREE UTILITY PATENTS THAT

 5   ARE LISTED HERE GENERALLY RELATE TO USER INTERFACE

 6   AND FEATURES THAT WE WOULD ALSO PUT IN THAT SAME

 7   CATEGORY OF APPLE'S UNIQUE USER INTERFACE, OR USER

 8   EXPERIENCE.

 9            MR. MUELLER:  THANK YOU, SIR.

10            NO FURTHER QUESTIONS.

11            THE COURT:  ALL RIGHT.  THE TIME IS NOW

12   4:22.

13                    CROSS-EXAMINATION

14   BY MS. MAROULIS:

15   Q    GOOD AFTERNOON, MR. TEKSLER.  HOW ARE YOU?

16   A    GOOD AFTERNOON.

17   Q    MY NAME IS VICTORIA MAROULIS.  I'M COUNSEL FOR

18   SAMSUNG.  AND SEEING HOW IT'S LATE FRIDAY

19   AFTERNOON, I'LL BE VERY BRIEF.

20            YOU TESTIFIED THAT YOU PREPARED A

21   POWERPOINT FOR A MEETING BETWEEN APPLE AND SAMSUNG

22   IN AUGUST 2010.  IS THAT CORRECT?

23   A    I BELIEVE THAT WAS KEY NOTE, BUT YES.

24   Q    AND YOU DIDN'T PERSONALLY ATTEND THE MEETING

25   IN QUESTION; RIGHT?
```

1    A    NO, I DID NOT.

2    Q    YOU CANNOT TELL US FROM YOUR PERSONAL

3    KNOWLEDGE ANYTHING ABOUT THAT MEETING AND WHAT WAS

4    PRESENTED; CORRECT?

5    A    I KNOW THAT THAT WAS PRESENTED.  WE LATER SENT

6    SAMSUNG THE PRESENTATION AND, IN SUBSEQUENT

7    MEETINGS WITH SAMSUNG, WE REFERRED BACK TO THAT

8    PRESENTATION AND TO THE DIALOGUE THAT HAPPENED THAT

9    DAY.  SO THAT'S --

10   Q    BUT FROM PERSONAL KNOWLEDGE, YOU DO NOT KNOW

11   WHAT OCCURRED AT THAT MEETING AND WHAT WAS SHOWN

12   AND WHAT WAS NOT SHOWN; CORRECT?

13   A    OKAY, CERTAINLY.

14   Q    AND THE POWERPOINT PRESENTATION THAT YOU

15   PREPARED IS EXHIBIT 52 IN EVIDENCE; CORRECT?  IF

16   YOU CAN LOOK IN YOUR CROSS-EXAMINATION BINDER AT

17   TAB 52, DO YOU SEE THAT?

18   A    I DO.

19   Q    IF YOU LOOK AT PAGES 12 THROUGH 14, DO YOU SEE

20   A VARIETY OF PATENTS LISTED THERE?

21   A    YES, I DO.

22   Q    OKAY.  AND DO YOU REMEMBER, ON DIRECT, JOE

23   ASKED YOU ABOUT THE SEVEN PATENTS ASSERTED IN THIS

24   CASE; CORRECT?

25   A    YES, THAT'S CORRECT.

1966

```
1     Q    FOUR OF THEM WERE DESIGN PATENTS?

2     A    YES, THAT'S CORRECT.

3     Q    ONE OF THOSE DESIGN PATENT PATENTS WAS D'677;

4     RIGHT?

5     A    I BELIEVE THAT'S CORRECT, YES.

6     Q    THAT PATENT IS NOWHERE IN THIS PRESENTATION;

7     IS THAT CORRECT?

8     A    IT'S NOT ENUMERATED.

9     Q    IT'S NOT MENTIONED AT ALL AS A PATENT, THE

10    D'677; RIGHT?

11    A    SO I THINK WHAT I WOULD SAY IS I AGREE THAT

12    IT'S NOT ENUMERATED IN THE PRESENTATION.

13              WHEN WE WERE PREPARING THE, THE POINTS

14    THAT WE WANTED TO GET ACROSS -- AND I BELIEVE THAT

15    WAS BACK IN SLIDE 17 OF THIS PRESENTATION -- WE DID

16    SAY THAT THERE WAS A REMARKABLE SIMILARITY BETWEEN

17    THE PRODUCTS AND, IN DOING SO, WE DID TALK ABOUT

18    DESIGN PATENTS.

19    Q    SIR, THIS PRESENTATION DOES NOT MENTION THE

20    WORD "DESIGN PATENT" AT ALL; CORRECT?

21    A    I AGREE.

22    Q    AND DESIGN PATENT '087 THAT YOU REVIEWED WITH

23    COUNSEL IS ALSO NOT MENTIONED IN THIS PRESENTATION;

24    IS THAT RIGHT?

25    A    I AGREE.
```

1967

```
1    Q    AND DESIGN PATENT '889 IS SIMILARLY NOT

2    MENTIONED IN THIS PRESENTATION; CORRECT?

3    A    I AGREE.

4    Q    AND SO IS D'305, THAT IS ALSO NOT MENTIONED IN

5    THE PRESENTATION; RIGHT?

6    A    I AGREE.

7    Q    YOU ALSO LOOKED AT SEVERAL UTILITY PATENTS

8    WITH COUNSEL; IS THAT RIGHT?

9    A    I DID.

10   Q    ONE OF THEM WAS '163 PATENT; CORRECT?

11   A    I BELIEVE THAT'S CORRECT, YES.

12   Q    THAT PATENT IS NOT ENUMERATED ANYWHERE IN THIS

13   PRESENTATION WE JUST LOOK AT; RIGHT?

14   A    THAT'S CORRECT.

15   Q    AND THE '915 PATENT THAT YOU ALSO LOOKED AT IN

16   YOUR DIRECT TESTIMONY IS ALSO NOWHERE MENTIONED;

17   CORRECT?

18   A    THAT'S CORRECT.

19   Q    THIS PRESENTATION THAT YOU PREPARED FOR

20   SAMSUNG DOES NOT HAVE ANY MENTION OF TRADE DRESS;

21   RIGHT?

22   A    AGAIN, I THINK I WOULD PUT IT INTO THE SAME

23   CATEGORY OF BULLET POINTS THAT WE TALKED ABOUT.

24   Q    SIR, YOU'RE A LICENSING PROFESSIONAL.  YOU

25   KNOW WHAT A REGISTERED TRADE DRESS IS; CORRECT?
```

1968

```
 1    A    I AM, YES.

 2    Q    SO NOWHERE IN THIS PRESENTATION IS THERE

 3    MENTION OF A REGISTERED TRADE DRESS FOR AN IPHONE;

 4    CORRECT?

 5    A    I AGREE THAT THERE IS NOT.

 6    Q    AND THERE'S NO MENTION OF UNREGISTERED TRADE

 7    DRESS FOR IPHONE AS WELL; CORRECT?

 8    A    I AGREE THAT IT'S NOT WRITTEN ON THE SLIDES.

 9    Q    AND THERE'S NO UNREGISTERED TRADE DRESS FOR

10    IPAD; CORRECT?

11    A    I AGREE.

12    Q    EXHIBIT 52 DOESN'T SAY ANYWHERE THAT APPLE

13    WOULD NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; IS

14    THAT RIGHT?

15    A    I AGREE.

16    Q    AND THE PRESENTATION DOES NOT IDENTIFY ANY

17    UTILITY PATENTS THAT APPLE WOULD NOT LICENSE TO

18    SAMSUNG; IS THAT RIGHT?

19    A    I AGREE.

20    Q    PLEASE TAKE A LOOK AT EXHIBIT DX 586 IN YOUR

21    BINDER.  THIS IS A PRESENTATION THAT YOU MADE TO

22    SAMSUNG IN OCTOBER 2010; CORRECT?

23    A    YES, THAT'S CORRECT.

24    Q    YOU PREPARED IT YOURSELF?

25    A    I DID.
```

1969

```
1    Q    AS PART OF DOING BUSINESS AS A LICENSING

2    OFFICER AT APPLE; CORRECT?

3    A    YES, THAT'S CORRECT.

4              MS. MAROULIS:  YOUR HONOR, I MOVE EXHIBIT

5    586 INTO EVIDENCE.

6              MR. MUELLER:  NO FURTHER OBJECTIONS, YOUR

7    HONOR, SUBJECT TO THE LIMITING INSTRUCTION THAT

8    YOUR HONOR MENTIONED.

9              THE COURT:  RIGHT.  AND THERE IS A --

10   THIS IS ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             586, HAVING BEEN PREVIOUSLY MARKED FOR

13             IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15             THE COURT:  YOU MAY CONSIDER THIS -- YOU

16   MAY NOT CONSIDER THIS EVIDENCE TO PROVE OR DISPROVE

17   THE VALIDITY OR INVALIDITY OF THE CLAIM OR THE

18   AMOUNT OF THE DISPUTED CLAIM.

19             HOWEVER, YOU MAY CONSIDER THIS EVIDENCE

20   FOR SOME OTHER PURPOSE, FOR EXAMPLE, WHETHER OR NOT

21   SAMSUNG LACKED NOTICE OF APPLE'S INFRINGEMENT

22   CLAIMS.

23             OKAY.  GO AHEAD, PLEASE.

24   BY MS. MAROULIS:

25   Q    MR. TEKSLER, NOWHERE IN EXHIBIT 586 DOES APPLE
```

1970

1    IDENTIFY ANY PATENTS; CORRECT?

2    A    THAT'S CORRECT.

3    Q    AND NOWHERE IN THIS WRITTEN PRESENTATION DOES

4    IT SAY THAT APPLE WOULD NOT LICENSE ITS DESIGN

5    PATENTS TO SAMSUNG; CORRECT?

6    A    I'M NOT SURE THAT I AGREE WITH THAT.  I KNOW

7    THAT WE TALKED ABOUT THAT AND THAT THERE WAS A

8    SPECIFIC BULLET, I BELIEVE, ON ONE OF THE PAGES

9    THAT ADDRESSED THAT.

10   Q    SIR, I'M NOT ASKING YOU ABOUT THE MEETING

11   ITSELF.  I'M ASKING YOU ABOUT THE PRESENTATION.

12   NOWHERE IN THIS DOCUMENT, 586, IS THERE A STATEMENT

13   THAT APPLE WOULD NOT LICENSE DESIGN PATENTS TO

14   SAMSUNG?

15   A    I THINK THERE IS A BULLET IN HERE THAT SAYS

16   SPECIFIC APPLE PROPRIETARY FEATURES TO BE

17   DISCUSSED.

18            AND IN THAT CONSTRUCT, WE TALKED ABOUT

19   NOT HAVING THE ABILITY TO CLONE OUR PRODUCTS.

20   Q    AGAIN, WITHIN THE CONTEXT OF THIS

21   PRESENTATION, THERE'S NO STATEMENT THAT APPLE WOULD

22   NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; CORRECT?

23   A    I AGREE.

24   Q    AND NOWHERE IN THIS DOCUMENT DOES APPLE SAY

25   THAT IT WOULD NOT LICENSE CERTAIN UTILITY PATENTS

1971

```
1     TO SAMSUNG; CORRECT?

2     A    SUBJECT TO THE SAME, YOU KNOW, POINT THAT I

3     MADE EARLIER, YES.

4     Q    LET'S PUT UP 586, PAGE 13, PLEASE.

5              AT THE TOP OF THE PAGE, IT SAYS "WE WILL

6     PROVIDE SAMSUNG WITH A NUMBER OF OPTIONS FOR

7     OBTAINING A COST-EFFECT LICENSE TO OUR PATENT

8     PORTFOLIO."

9              DID I READ THIS CORRECTLY?

10    A    YES, THAT'S CORRECT.

11    Q    AND THIS REFERS TO LICENSING PATENT PORTFOLIO;

12    RIGHT?

13    A    YES, THAT'S CORRECT.

14    Q    IT DOES NOT SAY "PATENT PORTFOLIO EXCEPT

15    DESIGN PATENTS."  CORRECT?

16    A    NO, I AGREE THE SLIDE DOESN'T SAY THAT.

17    Q    AND IT DOESN'T SAY "EXCEPT FOR CERTAIN UTILITY

18    PATENTS."  CORRECT?

19    A    THAT'S CORRECT.

20    Q    IN EXHIBIT 586, APPLE PROPOSED CERTAIN

21    DISCOUNTS ON THE LICENSE FEES BASED ON CERTAIN

22    ELEMENTS; CORRECT?

23    A    YES, THAT'S CORRECT.

24    Q    AND ONE OF THOSE ELEMENTS WERE PROPRIETARY,

25    SO-CALLED PROPRIETARY FEATURES?
```

1

2

3

4                      CERTIFICATE OF REPORTER

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                    /S/

                      _____
22                    LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
23

24                    DATED:  AUGUST 11, 2012

25