1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                    UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 APPLE INC., a California corporation,        CASE NO. 11-cv-01846-LHK

19         Plaintiff,                           **DECLARATION OF MICHAEL J.
                                                WAGNER IN SUPPORT OF SAMSUNG'S
20    vs.                                       MOTION FOR JUDGMENT AS A
                                                MATTER OF LAW, NEW TRIAL
21 SAMSUNG ELECTRONICS CO., LTD., a             AND/OR REMITTITUR PURSUANT TO
   Korean business entity; SAMSUNG              FEDERAL RULES OF CIVIL
22 ELECTRONICS AMERICA, INC., a New             PROCEDURE 50 AND 59**
   York corporation; SAMSUNG
23 TELECOMMUNICATIONS AMERICA,                  Date:   December 6, 2012
   LLC, a Delaware limited liability company,   Time:   9:30 a.m.
24                                              Place:  Courtroom 8, 4th Floor
           Defendants.                          Judge:  Hon. Lucy H. Koh
25

26

27

28

I, Michael J. Wagner, hereby declare as follows:

## BACKGROUND

1. I am currently a Managing Director at LitiNomics, Inc., a financial and economic consulting firm specializing in the analysis of economic issues that arise in commercial disputes.

2. I am a Certified Public Accountant and attorney licensed in the State of California. I have been a Partner at Price Waterhouse; a Managing Director at Putnam, Hayes & Bartlett; and a Senior Advisor at CRA International, a publicly traded management consulting firm. I have a Bachelor of Science in Engineering, which I received from the University of Santa Clara in 1969. I have a Masters in Business Administration, which I received from U.C.L.A. in 1971. I have a Juris Doctor degree, which I received from Loyola University School of Law at Los Angeles in 1975. Exhibit A is a true and correct copy of my *curriculum vitae*.

3. I have specialized in the computation of commercial damages over the last 35 years of my professional career. I have been qualified and testified at trial as an expert on financial matters, principally commercial damages, 127 times, including Lanham Act cases and patent cases (30 times in patent cases). I have testified on financial issues in 34 arbitrations. I also have been deposed 314 times (101 times in patent cases; more than 10 times in trademark or Lanham Act cases) on financial issues over my career.

4. I have 28 professional publications, the majority of which deals with the computation of commercial damages (8 deal directly with patent damages). The most significant publication is the *Litigation Services Handbook*, which I co-edited through its fourth edition. The book is a collaborative effort of many of the leading experts in the financial area. I am the founding editor and continued as an editor for over 20 years. The Handbook has been recognized as authoritative by the Federal Judicial Center in its *Treatise on Scientific Evidence*. The Treatise's chapter on Economic Damages cites only five additional reference sources for further guidance to federal judges. The *Litigation Services Handbook* is one of the five reference sources.

5. In the above-captioned case, *Apple Inc. vs. Samsung Electronics Co., Ltd., et al.*, I previously submitted a Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction. I have also submitted expert reports, including my

1  April 16, 2012 Expert Report of Michael J. Wagner; my April 20, 2012 Corrected Expert Report
2  of Michael J. Wagner; and my May 11, 2012 Supplemental Expert Report of Michael J. Wagner.
3  I also testified at trial.
4      6.    I submit this declaration in support of Samsung's Motion pursuant to Federal Rules
5  of Civil Procedure 50 and 59.   If asked at a hearing or trial, I am prepared to testify regarding the
6  matters I discuss in this declaration.
7      7.    I am being compensated at my customary rate for my work on this case.   My
8  compensation is in no way contingent upon the opinions I arrive at or the result of the litigation.
9      8.    In performing my analysis, I have reviewed the Court's August 21, 2012 Final Jury
10  Instructions and the August 24, 2012 Amended Verdict Form (the "Verdict Form").   I have also
11  reviewed trial transcripts, trial demonstratives and exhibits, as well as publicly available
12  documents discussed in this declaration.
13      9.    In addition to the review of documents listed above, I have relied on my training as
14  a Certified Public Accountant and my knowledge and expertise regarding intellectual property
15  litigation damages.
16      10.    I may supplement this declaration in the event that additional relevant materials are
17  provided to me, including court filings and declarants' testimony.

## VERDICT ANALYSIS

19      11.    I have compared the dollar amounts in Question 23 of the Verdict Form with
20  Apple's claimed damages in this case as presented in trial testimony and exhibits, including
21  Apple's trial exhibit PX25A1.   I note the following.
22      12.    For each of the 11 Samsung devices for which the jury awarded damages and found
23  infringement of one or more Apple design patents but no trade dress violation, the jury awarded
24  exactly 40% of Mr. Musika's claimed figure for Samsung's profits in PX25A1.5.   This is shown
25  in the following table:

| Product | Samsung's Profits Sought by Apple in PX25A1.5 | 40% of Samsung's Profits Sought by Apple in PX25A1.5 | Jury Award |
|---|---|---|---|
| Captivate | $202,100,404 | $80,840,162 | $80,840,162 |
| Continuum | $40,997,793 | $16,399,117 | $16,399,117 |
| Droid Charge | $126,682,172 | $50,672,869 | $50,672,869 |
| Epic 4G | $325,452,234 | $130,180,894 | $130,180,894 |
| Galaxy S II 2 (AT&T) | $101,235,891 | $40,494,356 | $40,494,356 |
| Galaxy S II (T-Mobile) | $209,479,270 | $83,791,708 | $83,791,708 |
| Galaxy S II (Epic 4G Touch) | $250,817,469 | $100,326,988 | $100,326,988 |
| Galaxy S II (Skyrocket) | $80,683,895 | $32,273,558 | $32,273,558 |
| Gem | $10,188,963 | $4,075,585 | $4,075,585 |
| Indulge | $40,027,960 | $16,011,184 | $16,011,184 |
| Infuse 4G | $111,982,436 | $44,792,974 | $44,792,974 |
| **TOTAL** | **$1,499,648,487** | **$599,859,395** | **$599,859,395** |

13.     For each of the five Samsung phones for which the jury awarded Apple damages and found infringement of one or more design patents and trade dress dilution, the jury awarded exactly the amount of lost profits claimed by Apple plus 40% of Samsung's profits, as calculated by Mr. Musika in PX25A1.4.   This is shown in the following table:

| Product | Lost Profits Sought by Apple in PX25A1.4 | Samsung's Profits Sought by Apple in PX25A1.4 | 40% of Samsung's Profits Sought by Apple in PX25A1.4 | Lost Profits plus 40% of Samsung's Profits Sought by Apple in PX25A1.4 | Jury Award |
|---|---|---|---|---|---|
| Fascinate | 47,703,423 | $239,589,391 | $95,835,756 | $143,539,179 | $143,539,179 |
| Galaxy S 4G | $13,856,419 | $148,720,623 | $59,488,249 | $73,344,668 | $73,344,668 |
| Galaxy S Showcase | $850,630 | $52,878,789 | $21,151,516 | $22,002,146 | $22,002,146 |

| Product | Lost Profits Sought by Apple in PX25A1.4 | Samsung's Profits Sought by Apple in PX25A1.4 | 40% of Samsung's Profits Sought by Apple in PX25A1.4 | Lost Profits plus 40% of Samsung's Profits Sought by Apple in PX25A1.4 | Jury Award |
|---|---|---|---|---|---|
| (i500) | | | | | |
| Mesmerize | $9,667,526 | $108,640,214 | $43,456,086 | $53,123,612 | $53,123,612 |
| Vibrant | $19,054,281 | $176,549,189 | $70,619,676 | $89,673,957 | $89,673,957 |
| **TOTAL** | **$91,132,279** | **$726,378,206** | **$290,551,283** | **$381,683,562** | **$381,683,562** |

14.   Seven Samsung devices were found to infringe only utility patents.   For five of these devices, the jury awarded exactly half the royalty calculated by Mr. Musika in PX25A1.5, as shown in the following table:

| Product | Royalty Sought by Apple in PX25A1.5 | 50% of Royalty Sought by Apple in PX25A1.5 | Jury Award |
|---|---|---|---|
| Exhibit 4G | $2,163,641 | $1,081,820 | $1,081,820 |
| Galaxy Tab | $3,933,382 | $1,966,691 | $1,966,691 |
| Nexus S 4G | $3,656,594 | $1,828,297 | $1,828,297 |
| Replenish | $6,700,512 | $3,350,256 | $3,350,256 |
| Transform | $1,906,120 | $953,060 | $953,060 |
| **TOTAL** | **$18,360,249** | **$9,180,124** | **$9,180,124** |

15.   The Galaxy Prevail was found to infringe only utility patents.   The jury's award of $57,867,383 for the Galaxy Prevail is 40% of what Apple claimed for Samsung's profits in PX25A1.5, as shown in the table below:

| Product | Samsung's Profits Sought by Apple in PX25A1.5 | 40% of Samsung's Profits Sought by Apple in PX25A1.5 | Jury Award |
|---|---|---|---|
| Galaxy Prevail | $144,668,457 | $57,867,383 | $57,867,383 |

16. The Galaxy Tab 10.1 (WiFi) was found to infringe only utility patents. The jury awarded $833,076 in damages for the Galaxy Tab 10.1 (WiFi), which is higher than the $604,391 Apple sought for lost profits in PX25A1.4. Mr. Musika did not provide a calculation for a reasonable royalty for the Galaxy Tab 10.1 (WiFi).

17. The calculations in paragraphs 12, 13, and 15, above, show that the jury awarded Samsung's profits of $599,859,395 for 11 phones the jury found infringed one or more Apple design patents; $290,551,283 for five phones the jury found infringed one or more Apple design patents and diluted Apple's registered iPhone trade dress or unregistered iPhone 3G trade dress; and $57,867,383 for one phone found to infringe only utility patents. The total portion of the verdict representing Samsung's profits is thus $948,278,061.

18. The calculations in paragraph 13, above, show that $91,132,279 of the verdict represents Apple's lost profits for the five Samsung phones found to infringe one or more design patents and dilute trade dress.

19. The calculations in paragraph 14 above show that $9,180,124 of the verdict represents Apple's royalty for five Samsung devices found to infringe only utility patents, namely the Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform.

20. The remaining award of $833,076 in damages was awarded for the Galaxy Tab 10.1 (WiFi).

### NOTICE DATES

21. For all smartphones for which Mr. Musika calculated Samsung's profits, except the Gem and Indulge, Mr. Musika based those calculations on a notice date of June 2010. Mr. Musika based his calculations for the Gem and Indulge on a notice date of August 4, 2010.

22. I've been asked to assume that the earliest notice Samsung received of the '915 and D'677 patents and Apple's registered trade dress was Apple's filing of the April 15, 2011 complaint, and that the earliest notice Samsung received of the '163, D'305, D'889, and D'087 patents was Apple's filing of the June 16, 2011 amended complaint.

23. Mr. Musika testified regarding the adjustment of his calculation of Samsung's profits to a later notice date than he assumed, while still crediting his opinion on Samsung's profitability. (August 13, 2012 Tr. at 2073:21-2074:19.) Specifically, Mr. Musika testified:

> Q. Now, with respect to your calculation of Samsung's profits, if the jury ultimately decides that damages calculation should start at a later date than the one you used, have you given them enough information that they could adjust their calculation?
>
> A. Yes.
>
> Q. And where is that information?
>
> A. The information is in two places. One would be the joint exhibit 1500, which we talked about a little bit earlier, which really is the sum of all the 22 million units and the $8 billion. So we have – you have a chronological, basically – you remember how I talked about that being hard to read because it had individual columns for each quarter? So if the date moves, you would simply go in along that schedule and say – draw a line and say, well, okay, infringement is not going to start in June of 2010. It's going to start at a later date. Draw a line, and all the units that were sold before then would come out of the calculation. You would multiply that revenue times the 35.5 percent and subtract that from the $2.2 billion number.

(*Id.* at 2073:21-2074:19.)

24. I note that JX1500 gives quarterly figures for Samsung's revenue. Both April 15, 2011, and June 16, 2011, fall within the second quarter of 2011.

25. I used Mr. Musika's proposed method to adjust for a later notice date by subtracting from JX1500 sales up to and including the quarter I have been asked to assume Samsung first received notice of Apple's design patents and trade dress, namely the second quarter of 2011. This resulted in a $3.34 billion reduction in the total revenue for the five phones found to infringe one or more design patents and dilute trade dress, and the 11 phones found to infringe one or more design patents but not to dilute trade dress. This is illustrated in the following table:

| Product | Total Revenues in JX1500 | Total Revenues in JX1500 thru Q2'11 |
|---|---:|---:|
| Captivate | $525,000,000 | $457,000,000 |
| Continuum | $112,000,000 | $89,000,000 |
| Droid Charge | $395,000,000 | $241,000,000 |
| Epic 4G | $855,000,000 | $758,000,000 |
| Fascinate | $619,000,000 | $601,000,000 |
| Galaxy S 4G | $473,000,000 | $242,000,000 |
| Galaxy S II 2 (AT&T) | $240,000,000 | $0 |
| Galaxy S II (T-Mobile) | $561,000,000 | $0 |
| Galaxy S II (Epic 4G Touch) | $764,000,000 | $0 |
| Galaxy S II (Skyrocket) | $289,000,000 | $0 |
| Galaxy S Showcase (i500) | $148,000,000 | $64,000,000 |
| Gem | $64,000,000 | $46,000,000 |
| Indulge | $98,000,000 | $55,000,000 |
| Infuse 4G | $417,000,000 | $138,000,000 |
| Mesmerize | $296,000,000 | $205,000,000 |
| Vibrant | $444,000,000 | $444,000,000 |
| **TOTAL** | **$6,300,000,000** | **$3,340,000,000** |

### REMITTITUR

26.  If Apple is not entitled to the $91,132,279 of the verdict representing Apple's lost profits for the five Samsung phones found to infringe one or more design patents and dilute trade dress, and instead is awarded 40% of Mr. Musika's claimed figure for Samsung's profits for these phones, the jury award would be reduced by $70,034,295 to $311,649,267.  In calculating the amount of this reduction for factoring out lost profits, I used PX25A1.5, which is Mr. Musika's

calculation of Samsung's profits in the event the jury did not award lost profits.   A summary of my calculations to arrive at the reduction is shown in the table below:

| (a) Product | (b) Jury Award | (c) Samsung's Profits Sought by Apple in PX25A1.5 | (d) 40% of Samsung's Profits Sought by Apple in PX25A1.5 | Difference Between (b) and (d) |
|---|---|---|---|---|
| Fascinate | $143,539,179 | $267,735,061 | $107,094,024 | $36,445,155 |
| Galaxy S 4G | $73,344,668 | $155,204,780 | $62,081,912 | $11,262,756 |
| Galaxy S Showcase (i500) | $22,002,146 | $53,518,267 | $21,407,307 | $594,839 |
| Mesmerize | $53,123,612 | $114,099,746 | $45,639,898 | $7,483,714 |
| Vibrant | $89,673,957 | $188,565,314 | $75,426,126 | $14,247,831 |
| **TOTAL** | **$381,683,562** | **$779,123,168** | **$311,649,267** | **$70,034,295** |

27. If Apple is not entitled to damages on the 11 phones found to infringe one or more design patents but not to dilute trade dress from the June 2010 and August 4, 2010 dates assumed by Mr. Musika, but instead is awarded 40% of Mr. Musika's calculation of Samsung's profits adjusted for notice based on the filing of the complaint (for the D'677 patent) and the amended complaint (for the D'087 and D'305 patents), the award on these 11 phones would be reduced by $253,328,000 to $346,531,395.   This is shown in the following table:

| Product | Jury Award | 40% of Samsung's Profits Sought by Apple in PX25A1.5 Adjusted for Notice | Difference |
|---|---|---|---|
| Captivate | $80,840,162 | $15,946,162 | $64,894,000 |
| Continuum | $16,399,117 | $3,761,117 | $12,638,000 |
| Droid Charge | $50,672,869 | $16,450,869 | $34,222,000 |
| Epic 4G | $130,180,894 | $22,544,894 | $107,636,000 |
| Galaxy S II 2 (AT&T) | $40,494,356 | $40,494,356 | $0 |
| Galaxy S II (T-Mobile) | $83,791,708 | $83,791,708 | $0 |
| Galaxy S II (Epic 4G | $100,326,988 | $100,326,988 | $0 |

| Product | Jury Award | 40% of Samsung's Profits Sought by Apple in PX25A1.5 Adjusted for Notice | Difference |
|---|---:|---:|---:|
| Touch) | | | |
| Galaxy S II (Skyrocket) | $32,273,558 | $32,273,558 | $0 |
| Gem | $4,075,585 | ($2,456,415) | $6,532,000 |
| Indulge | $16,011,184 | $8,201,184 | $7,810,000 |
| Infuse 4G | $44,792,974 | $25,196,974 | $19,596,000 |
| **TOTAL** | **$599,859,395** | **$346,531,395** | **$253,328,000** |

28.     If Apple is not entitled to lost profits damages on the five phones found to infringe one or more design patents and dilute trade dress, and is not entitled to damages from the June 2010 date assumed by Mr. Musika, but instead is awarded 40% of Mr. Musika's calculation of Samsung's profits adjusted for notice dates based on the filing of the complaint (for the D'677 patent and trade dress) and the amended complaint (for the D'087 and D'305 patents), the award on these five phones would be further reduced by $220,952,000 to $90,697,267, as shown in the following table:

| Product | Jury Award | 40% of Samsung's Profits Sought by Apple in PX25A1.5 Adjusted for Notice | Difference |
|---|---:|---:|---:|
| Fascinate | $143,539,179 | $21,752,024 | $121,787,155 |
| Galaxy S 4G | $73,344,668 | $27,717,912 | $45,626,756 |
| Galaxy S Showcase (i500) | $22,002,146 | $12,319,307 | $9,682,839 |
| Mesmerize | $53,123,612 | $16,529,898 | $36,593,714 |
| Vibrant | $89,673,957 | $12,378,126 | $77,295,831 |
| **Less lost profits per para. 26** | $70,034,295 | | |
| **TOTAL** | **$311,649,267** | **$90,697,267** | **$220,952,000** |

1   29.   If Apple is entitled to 5% of the award on the 11 phones found to infringe one or more design patents but not dilute trade dress, adjusted for Samsung's notice dates as calculated in paragraph 27 above, 5% of $346,531,395 is $17,326,570.

30.   If Apple is entitled to 5% of the award on five phones found to infringe one or more design patents and dilute trade dress, removing lost profits and adjusted for Samsung's notice dates as calculated in paragraph 28 above, 5% of $90,697,267 is $4,534,863.

31.   The below table is a summary of all the reductions discussed in paragraphs 26 to 30 above.

| Product(s) | Amount Before Reduction | Reason for Reduction | Amount of Reduction | Amount Remaining |
|---|---|---|---|---|
| 11 Phones (Design Patent Only) | $599,859,395 | Correct Notice Dates | $253,328,000 | $346,531,395 |
| 11 Phones (After Adjustment for Correct Notice Dates) | $346,531,395 | Profits Attributable to IP (5%) | $329,204,825 | $17,326,570 |
| 5 Phones (Design Patent & Trade Dress) | $381,683,562 | No Lost Profits | $70,034,295 | $311,649,267 |
| 5 Phones (After Adjustment for No Lost Profits) | $311,649,267 | Correct Notice Dates | $220,952,000 | $90,697,267 |
| 5 Phones (After Adjustment for No Lost Profits and Correct Notice Dates) | $90,697,267 | Profits Attributable to IP (5%) | $86,162,404 | $4,534,863 |
| Prevail (Utility Patents Only) | $57,867,383 | No Basis for Award of Samsung's Profits | $57,867,383 | $0 |

32.   Attached as Exhibit B is a true and correct copy of the back-up worksheets showing the calculations undertaken to arrive at each of the reductions discussed above.

1   I declare under penalty of perjury of the laws of the United States of America that the
2   foregoing is true and correct.   Executed in Santa Clara County, California on September 21, 2012.

By: _____
        Michael J. Wagner