# Pierce Declaration

# EXHIBIT 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6  CORPORATION,                )
                               )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,       )
                               )  JULY 30, 2012
8        VS.                    )
                               )  VOLUME 1
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  PAGES 1-282
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                              )
               DEFENDANTS.      )
15 _____

16            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
24

25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                     BY:  HAROLD J. MCELHINNY
 3                                    MICHAEL A. JACOBS
                                      RACHEL KREVANS
 4                             425 MARKET STREET
                               SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                  HALE AND DORR
 7                            BY:  WILLIAM F. LEE
                              60 STATE STREET
 8                            BOSTON, MASSACHUSETTS  02109

 9                            BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
12                        BY:  CHARLES K. VERHOEVEN
                          50 CALIFORNIA STREET, 22ND FLOOR
13                        SAN FRANCISCO, CALIFORNIA  94111

14                            BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
16                            REDWOOD SHORES, CALIFORNIA  94065

17                            BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
19                            LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

1    IT, YES, YOUR HONOR.

2              THE COURT:  OKAY.  WELL, IF YOU COULD

3    SUBMIT IT AS SOON AS POSSIBLE, I APPRECIATE IT.

4              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

5              THE COURT:  OKAY.  THANK YOU ALL.

6              MR. MCELHINNY:  YOU WANT US BACK AT 1:00,

7    YOUR HONOR?

8              THE COURT:  YES.

9              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

10             THE COURT:  THANK YOU.

11             (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**AFTERNOON SESSION**

1

2          (WHEREUPON, THE FOLLOWING PROCEEDINGS

3    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

4    JURORS.)

5          THE COURT:  OKAY.  ONE QUESTION THAT I

6    HAVE -- WELCOME BACK, EVERYBODY -- IS WHAT WE

7    SHOULD DO TODAY AFTER THE JURY IS SELECTED.

8          I COULD SHOW THEM THE VIDEO AND READ THE

9    STATEMENT REGARDING THE FEDERAL JUDICIAL CENTER

10   VIDEO.

11         I'M RELUCTANT TO START WITH THE JURY

12   INSTRUCTIONS IF WE DON'T HAVE THE LIMITING

13   INSTRUCTION AS TO MR. NISHIBORI COMPLETELY

14   RESOLVED, AND I DON'T WANT TO SORT OF READ IT

15   SEPARATELY AS AN ADD-ON TOMORROW.

16         DOES THAT MAKE ANY SENSE?  BECAUSE THEN

17   IT JUST MAKES IT SEEM LIKE THAT'S NOT PART OF THE

18   PACK.

19         MR. VERHOEVEN:  YES, YOUR HONOR.

20         THE COURT:  SO SHOULD WE AT LEAST SHOW

21   THE VIDEO?  I DON'T WANT TO ALSO LOSE A GOOD CHUNK

22   OF TIME THIS AFTERNOON, EITHER.

23         SO WE COULD SHOW THE VIDEO AND JUST READ

24   THE FJC STATEMENT AND JUST SAVE THE READING OF ALL

25   THE JURY INSTRUCTIONS UNTIL TOMORROW, OR I COULD AT

```
 1    LEAST READ THE PRELIMINARY ONES AND GIVE THEM THE
 2    BOOKS TOMORROW FOR ALL OF THEM.
 3              DO HAVE ANY THOUGHTS ON THIS?
 4              MR. VERHOEVEN:  I THINK WE AGREE THAT IT
 5    WOULDN'T MAKE SENSE TO SEPARATE THE NISHIBORI
 6    INSTRUCTION SEPARATE FROM THE OTHERS AND THE
 7    INITIAL INCLINATION WOULD BE CORRECT.
 8              MR. MCELHINNY:  I ACTUALLY DON'T -- I
 9    THINK THE PROPER TIME FOR A LIMITING INSTRUCTION IS
10    WHEN THE EVIDENCE -- I BELIEVE THAT THE TIME FOR
11    THE LIMITING INSTRUCTION IS WHEN THE EVIDENCE COMES
12    INTO EVIDENCE.
13              BUT IF YOUR HONOR IS GOING TO ALLOW IT IN
14    THE OPENING, THEN I THINK THAT'S THE FIRST TIME
15    THEY'LL HEAR IT AND THAT'S IT.
16              I THINK A LIMITING INSTRUCTION THAT
17    POINTS TO SPECIFIC EVIDENCE AND SAYS "THIS IS THE
18    REASON I'M LETTING THIS IN," TO FOLD THAT IN A
19    PACKAGE OF FOUR MINUTES OF PRELIMINARY -- I THINK
20    IT OBVIATES THE PURPOSE OF IT BECAUSE IT'S SUPPOSED
21    TO BE TYING THE JURY'S MIND TO WHEN THEY FIRST HEAR
22    THE EVIDENCE SO THEY KNOW WHAT YOU'RE TALKING
23    ABOUT.
24              THE COURT:  ALL RIGHT.  LET'S BRING OUR
25    JURY UP --
```

```
 1            THE CLERK:  I'M WAITING TO HEAR FROM
 2    MR. YOUNGER IF THEY'RE ALL DOWN THERE.
 3            THE COURT:  I'M SORRY?
 4            THE CLERK:  I'M WAITING TO HEAR FROM J
 5    WHETHER THEY'RE ALL DOWN THERE.  HE WAS GOING TO DO
 6    ANOTHER ROLE CALL.
 7            THE COURT:  OH, ON ALL OF THEM?  OKAY.
 8            (DISCUSSION OFF THE RECORD BETWEEN THE
 9    COURT AND THE CLERK.)
10            (PAUSE IN PROCEEDINGS.)
11            (WHEREUPON, THE FOLLOWING PROCEEDINGS
12    WERE HELD IN OF THE PRESENCE OF THE PROSPECTIVE
13    JURORS.)
14            THE COURT:  OKAY.  WELCOME BACK.  PLEASE
15    TAKE A SEAT.  WE HAD A FEW MORE DEPARTURES IN YOUR
16    ABSENCE.
17            LET'S CONTINUE WITH THE QUESTIONS.
18            THE NEXT QUESTION IS, HAVE YOU OR A
19    FAMILY MEMBER OR SOMEONE VERY CLOSE TO YOU EVER
20    BEEN INVOLVED IN A LAWSUIT, EITHER AS A PLAINTIFF,
21    A DEFENDANT, OR AS A WITNESS?
22            LET'S SEE.  ON THE FIRST ROW, WHO WOULD
23    RAISE THEIR HAND TO THAT QUESTION?
24            ALL RIGHT.  LET'S GO TO MR. HOGAN.
25            PROSPECTIVE JUROR:  IN 2008, AFTER MY
```

1    COMPANY WENT BELLY UP, THE PROGRAMMER THAT WORKED

2    FOR ME FILED A LAWSUIT AGAINST ME AND ULTIMATELY,

3    ACROSS THE NEXT FEW MONTHS, IT WAS DISMISSED AND IN

4    SUCH A FASHION THAT NEITHER ONE OF US COULD SUE THE

5    OTHER ONE FOR THAT MATTER.

6              THE COURT:  WHAT WAS HIS -- WHAT WAS THE

7    EMPLOYEE'S CLAIM?

8              PROSPECTIVE JUROR:  IT WAS A DISPUTE OVER

9    THE SOFTWARE THAT WE HAD DEVELOPED, WHETHER IT

10   BELONGED TO THE COMPANY OR TO HIM, AND I HAD

11   DOCUMENTS THAT SHOWED IT BELONGED TO THE COMPANY.

12             ULTIMATELY, AS I SAID, IT WOULD -- WE

13   SETTLED OUT OF COURT AND IT WAS DISMISSED.

14             THE COURT:  ALL RIGHT.  ANYTHING ABOUT

15   THAT EXPERIENCE THAT WOULD AFFECT YOUR ABILITY TO

16   BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

17             PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

18             THE COURT:  OKAY.  WAS THERE ANY

19   DISPUTE -- WAS THERE ANY DISPUTE AS TO WHO HAD

20   CREATED AND INVENTED THE TECHNOLOGY, OR WAS IT

21   LARGELY WHO HAD OWNERSHIP OF IT?

22             PROSPECTIVE JUROR:  IT WAS STRICTLY WHO

23   HAD OWNERSHIP OF IT, AND ULTIMATELY IT WAS

24   ESTABLISHED THAT THE COMPANY DID HAVE OWNERSHIP OF

25   IT, ALTHOUGH -- AND I STILL DO -- ALTHOUGH THE

```
 1    COMPANY IS NOT IN BUSINESS ANY LONGER.

 2              THE COURT:  I SEE.  BUT WAS THERE A SORT

 3    OF DISPUTE AS TO WHO HAD CREATED OR INVENTED THE

 4    TECHNOLOGY AS PART OF THAT OWNERSHIP QUESTION?

 5              PROSPECTIVE JUROR:  YES, THERE WAS.

 6              THE COURT:  UM-HUM.

 7              PROSPECTIVE JUROR:  BUT LIKE I SAID, WE

 8    SETTLED THAT -- BECAUSE OF DOCUMENTATION I HAD, WE

 9    WERE ABLE TO SETTLE IT OUT OF COURT AND THEN WE

10    WENT BACK TO COURT ONE LAST TIME FOR THE DISMISSAL

11    PAPERWORK.

12              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

13              MS. ROUGIERI, I THINK YOU RAISED YOUR

14    CARD?

15              PROSPECTIVE JUROR:  YES, I DID.

16              THE COURT:  GO AHEAD.

17              PROSPECTIVE JUROR:  I BROUGHT A LAWSUIT

18    AGAINST A DENTIST.  THAT WAS IN 2005, 2006.

19              THE COURT:  OH, CAN WE HAVE THE

20    MICROPHONE?  APPARENTLY IN THE OVERFLOW ROOM, THEY

21    CAN'T HEAR THE JURORS WITHOUT THE MICROPHONE.

22              THANK YOU.

23              PROSPECTIVE JUROR:  I HAD A SMALL CLAIM

24    AGAINST A DENTIST THAT WAS IN 2005.  IT WORKED OUT

25    THAT WHEN WE DID THE SMALL CLAIM, I WON THE FIRST
```

```
 1     TIME, AND HE HAD AN APPEAL AND HE BROUGHT HIS
 2     LAWYER AND I LOST.
 3               THE COURT:  ALL RIGHT.  SO YOU
 4     REPRESENTED YOURSELF?  WAS THAT IN SMALL CLAIMS
 5     COURT?
 6               PROSPECTIVE JUROR:  IT WAS IN SMALL
 7     CLAIMS COURT.
 8               THE COURT:  OKAY.  ANYTHING ABOUT THAT
 9     EXPERIENCE THAT WOULD AFFECT YOUR ABILITY TO BE
10     FAIR AND IMPARTIAL IN THIS CASE?
11               PROSPECTIVE JUROR:  WELL, NO.
12               BUT IT AFFECTED ME BECAUSE THE LAWYER
13     KNOWS THE JUDGE.  THE LAWYER THAT WAS AGAINST ME
14     KNOWS THE JUDGE, SO THEY WERE TALKING FRIENDLY
15     TERMS IN A WAY THAT THE CHILDREN, THEY PLAYED EACH
16     OTHER TOGETHER IN SCHOOL.
17               AND THAT REALLY I THINK -- MY BELIEF IS
18     THAT THAT'S HOW I LOST THE CASE, BECAUSE THE LAWYER
19     KNOWS THE JUDGE.
20               THE COURT:  WAS THAT AFTER IT WAS
21     APPEALED TO THE SUPERIOR COURT JUDGE?
22               PROSPECTIVE JUROR:  YES.
23               THE COURT:  AND YOU'RE SAYING THAT THE
24     LAWYER KNEW THE SUPERIOR COURT JUDGE?
25               PROSPECTIVE JUROR:  CORRECT, YES.
```

```
 1                    THE COURT:  I SEE.  AND YOU THOUGHT THAT
 2       THERE WAS SOME UNFAIRNESS?
 3                    PROSPECTIVE JUROR:  UNFAIRNESS TO THAT,
 4       YES.
 5                    THE COURT:  OKAY.  WOULD YOUR NEGATIVE
 6       IMPRESSION FROM THAT EXPERIENCE SPILL OVER INTO
 7       THIS CASE AT ALL?
 8                    PROSPECTIVE JUROR:  NO, NO, YOUR HONOR.
 9                    THE COURT:  OKAY.
10                    PROSPECTIVE JUROR:  I -- NO, YOUR HONOR.
11                    THE COURT:  ALL RIGHT.  AND THIS IS FOR
12       EVERYONE.
13                    WE'LL TALK FURTHER ABOUT WHO'S BEEN ON
14       JURY DUTY, BUT THERE ARE DEFINITELY DIFFERENT, YOU
15       KNOW, STANDARDS OF PROOF IN DIFFERENT CASES, AND I
16       JUST WANTED TO MAKE SURE -- YOU ALL HAD CIVIL
17       CASES, SO I WOULD ASSUME THAT YOU ALSO HAD, YOU
18       KNOW, PREPONDERANCE OF THE EVIDENCE.  DOES THAT
19       SOUND FAMILIAR?
20                    AND WE'LL TALK ABOUT THIS A LITTLE BIT
21       LATER ON, BUT IN DIFFERENT TYPES OF CASES, THERE
22       MAY BE DIFFERENT STANDARDS OF PROOF, AND ALSO THE
23       LAW MAY HAVE CHANGED SINCE WHENEVER YOU WERE A
24       LITIGANT.
25                    SO I WANT TO MAKE SURE THAT BOTH
```

```
1    MR. HOGAN, AND MS. ROUGIERI, THAT YOU WOULD APPLY

2    THE LAW AS I INSTRUCT YOU AND NOT BASED ON YOUR

3    UNDERSTANDING OF THE LAW BASED ON YOUR OWN CASES.

4              IS THAT CORRECT, MR. HOGAN?

5              PROSPECTIVE JUROR:  YES.

6              THE COURT:  AND MS. ROUGIERI?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  OKAY.  ANYONE ELSE IN THE

9    FIRST ROW?

10             PROSPECTIVE JUROR:  YES, SMALL CLAIMS --

11             THE COURT:  WOULD YOU PLEASE USE THE

12   MICROPHONE?  THANK YOU.

13             PROSPECTIVE JUROR:  SMALL CLAIMS COURT,

14   AND I THINK IT WAS AT THE END OF 2011.

15             THE COURT:  WHAT WAS THE BASIS OF THE

16   CLAIM?  WERE YOU A DEFENDANT OR A CLAIMANT?

17             PROSPECTIVE JUROR:  I BROUGHT SOMEONE TO

18   COURT WHO OWED ME MONEY.

19             THE COURT:  AND WHAT WAS THE -- HOW DID

20   THAT RESOLVE?

21             PROSPECTIVE JUROR:  IT WAS IN MY FAVOR.

22             THE COURT:  DID YOU REPRESENT YOURSELF?

23             PROSPECTIVE JUROR:  YES.

24             THE COURT:  ALL RIGHT.  ANYTHING BASED ON

25   THAT EXPERIENCE THAT LEAVES YOU WITH A LASTING
```

1              PROSPECTIVE JUROR:  DEFENDANT.

2              THE COURT:  AND WHAT WAS THE CLAIM?

3              PROSPECTIVE JUROR:  AT THE TIME I WAS

4    WORKING FOR INTEL, AND SO ONE OF MY STAFF MEMBERS

5    BROUGHT A LAWSUIT AGAINST INTEL.  WE WENT AS FAR AS

6    A DEPOSITION AND THEN HE DROPPED THE CASE.

7              THE COURT:  OKAY. WAS IT SOME TYPE OF

8    EMPLOYMENT CASE?

9              PROSPECTIVE JUROR:  YES, IT WAS.

10             THE COURT:  I SEE.  SO WERE YOU ACTUALLY

11   DEPOSED?

12             PROSPECTIVE JUROR:  I WAS THE MANAGER.

13             THE COURT:  I SEE.  BUT YOU WERE DEPOSED,

14   OR NOT?  DID THEY TAKE YOUR DEPOSITION?

15             PROSPECTIVE JUROR:  OH, ABSOLUTELY, YES.

16             THE COURT:  I SEE.  ALL RIGHT.  AND YOU

17   SAID THAT CASE RESOLVED HOW?  IT WAS --

18             PROSPECTIVE JUROR:  HE DROPPED THE CASE.

19             THE COURT:  HE DROPPED THE CASE.  OKAY.

20             ANYTHING FROM YOUR EXPERIENCE IN THAT

21   CASE THAT WOULD AFFECT YOUR ABILITY TO BE FAIR AND

22   IMPARTIAL HERE?

23             PROSPECTIVE JUROR:  NONE WHATSOEVER.

24             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25             ANYONE ON ROWS -- I KNOW MR. SINA, YOU

1    RAISED YOUR HAND.  GO AHEAD.

2                PROSPECTIVE JUROR:  YES.  BACK IN 1998, I

3    HAD A SURGERY.  I DIDN'T HAVE INSURANCE.  I WAS

4    PURSUED BY THE DOCTOR AND I WENT TO THE JUDGE AND

5    WE AGREED TO -- I AGREED TO PAY THE FEES IN

6    INSTALLMENTS.  THAT'S ALL I HAVE.

7                THE COURT:  WAS THAT IN SMALL CLAIMS

8    COURT?

9                PROSPECTIVE JUROR:  I'M SORRY.  AT THAT

10   TIME, MY ENGLISH WAS NOT VERY GOOD, SO --

11               THE COURT:  ALL RIGHT.  WAS THAT HERE IN

12   SANTA CLARA COUNTY?

13               PROSPECTIVE JUROR:  NO, NO.  IT WAS IN

14   INDIANA.

15               THE COURT:  I SEE.  AND IT WAS -- WERE

16   YOU REPRESENTING YOURSELF?

17               PROSPECTIVE JUROR:  I BELIEVE SO.

18               THE COURT:  OKAY.  ANYTHING FROM THAT

19   EXPERIENCE THAT WOULD IMPACT YOUR ABILITY TO BE

20   FAIR AND IMPARTIAL IN ANY WAY?

21               PROSPECTIVE JUROR:  I HOPE NOT.

22               THE COURT:  NO?

23               PROSPECTIVE JUROR:  NO.

24               THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25               ANYONE ON ROW 5?  OR ROW 6?  I'M SORRY.

```
 1            OKAY.  THE RECORD SHOULD REFLECT NO HANDS
 2    HAVE BEEN RAISED.
 3            OKAY.  NOW, RAISE YOUR HAND, PLEASE, IF
 4    YOU HAVE EVER APPLIED FOR A PATENT, A COPYRIGHT, A
 5    TRADEMARK OR TRADE DRESS REGISTRATION.
 6            ALL RIGHT.  SO WE HAVE THREE HANDS
 7    RAISED.  IF YOU WOULD -- OH, FOUR.  ALL RIGHT.
 8            WELL, SINCE THE MICROPHONE IS DOWN THERE,
 9    WHY DON'T YOU GO AHEAD PLEASE AND GIVE THAT TO
10    MR. CHIU.
11            PROSPECTIVE JUROR:  I WORK FOR -- I WORK
12    FOR THE NATIONAL SEMICONDUCTOR BEFORE AND THEY WERE
13    ACQUIRED BY TEXAS INSTRUMENTS, AND I FILED PATENTS
14    FOR THE COMPANY.
15            THE COURT:  OKAY.  AND WERE YOU AN
16    INVENTOR ON THAT PATENT?
17            PROSPECTIVE JUROR:  YES.
18            THE COURT:  WAS A PATENT ISSUED?
19            PROSPECTIVE JUROR:  YES.
20            THE COURT:  AND WITHOUT SPECIFICS, WHAT
21    WAS THE GENERAL TECHNOLOGY?
22            PROSPECTIVE JUROR:  IT IS THE INTEGRATED
23    CIRCUIT RELATED.
24            THE COURT:  INTEGRATED CIRCUIT DESIGN?
25            PROSPECTIVE JUROR:  YES.
```

```
1              THE COURT:  OKAY.  HOW LONG AGO WAS THAT?

2              PROSPECTIVE JUROR:  I THINK FROM 3 TO 15

3    YEARS.  I HAVE SEVERAL PATENTS.

4              THE COURT:  YOU HAVE SEVERAL.  AND WERE

5    THEY ALL WHILE YOU WERE EMPLOYED AT NATIONAL

6    SEMICONDUCTOR?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  AND ARE THEY ALL RELATED TO

9    INTEGRATED CIRCUIT DESIGN?

10             PROSPECTIVE JUROR:  YES.

11             THE COURT:  ALL RIGHT.  AND -- OKAY.  ALL

12   RIGHT.  AND THEY WERE ROUGHLY 15 YEARS AGO?

13             PROSPECTIVE JUROR:  YES, FROM 3 TO 15

14   YEARS.

15             THE COURT:  3 TO 15 YEARS.  OKAY.  SO

16   VERY RECENTLY.

17             DO YOU HAVE PATENT APPLICATIONS PENDING

18   NOW?

19             PROSPECTIVE JUROR:  YES.

20             THE COURT:  YOU DO.  OKAY.  ALL WITHIN

21   INTEGRATED CIRCUIT DESIGN --

22             PROSPECTIVE JUROR:  YES.

23             THE COURT:  -- FIELD?

24             PROSPECTIVE JUROR:  RIGHT.

25             THE COURT:  OKAY.  ALL RIGHT.  WOULD THAT
```

```
1    IN ANY WAY -- YOU'LL BE INSTRUCTED ON WHAT THE LAW

2    IS AND WOULD YOU BE ABLE TO FOLLOW THE INSTRUCTIONS

3    I GIVE YOU ON THE LAW, EVEN IF IT MAY NOT

4    COMPLETELY CORRESPOND TO WHAT YOU MAY KNOW ABOUT

5    THE PATENT SYSTEM OR THE INTELLECTUAL PROPERTY

6    LAWS?

7              PROSPECTIVE JUROR:  YES, I FOLLOW YOUR

8    INSTRUCTIONS.

9              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10             LET'S GO, I THINK, TO MS. HALIM,

11   MR. OKAMOTO, AND MR. HOGAN.  YOU RAISED YOUR HANDS.

12             OKAY.  LET'S PLEASE START WITH MS. HALIM.

13             PROSPECTIVE JUROR:  OKAY.  I HAVE TWO

14   PATENTS.  ONE IS ISSUED WHEN I WAS AT WEITEK, ALSO

15   I.C. DESIGN.

16             ANOTHER ONE WAS AT SILICON GRAPHICS.

17             THE COURT:  AND IT WAS ALSO ON I.C.

18   DESIGN?

19             PROSPECTIVE JUROR:  YES, RIGHT.

20             THE COURT:  OKAY.  WERE PATENTS ISSUED?

21             PROSPECTIVE JUROR:  YES.

22             THE COURT:  AND YOU WERE THE INVENTOR ON

23   BOTH?

24             PROSPECTIVE JUROR:  YES.

25             THE COURT:  OKAY.  ALL RIGHT.  ANYTHING
```

```
1    FROM THAT EXPERIENCE -- BASICALLY YOU OBVIOUSLY

2    WILL BRING YOUR LIFE EXPERIENCE TO YOUR ROLE AS A

3    JUROR, BUT WOULD YOU BE ABLE TO SET THAT ASIDE,

4    YOUR PREVIOUS EXPERIENCE WITH PATENTS, AND DECIDE

5    THIS CASE BASED SOLELY ON THE LAW AS YOU'RE

6    INSTRUCTED AND THE EVIDENCE THAT'S ADMITTED DURING

7    THE TRIAL?

8              PROSPECTIVE JUROR:  YES.

9              THE COURT:  OKAY.  THANK YOU.

10             LET'S GO TO MR. OKAMOTO, PLEASE.

11             PROSPECTIVE JUROR:  SO A COUPLE OF MY

12   PROJECTS AT GOOGLE INVOLVED, I THINK THE FIRST

13   PATENT WAS SOME TYPE OF VIDEO U/I LAYOUT.

14             THE COURT:  UM-HUM.

15             PROSPECTIVE JUROR:  AND IT WAS ME AND

16   SEVERAL MEMBERS OF OUR TEAM.  SO IT WAS SO-AND-SO

17   THAT WAS ONE.

18             THERE'S ACTUALLY -- I THINK I FILED A

19   FEW.  I'M NOT SURE IF I REMEMBER ALL OF THEM IN

20   DETAIL, BUT MOSTLY RELATED TO VIDEO PRESENTATION

21   AND BEHAVIOR.

22             THE COURT:  SO THEY'RE ALL USER INTERFACE

23   PATENTS?

24             PROSPECTIVE JUROR:  YES.

25             THE COURT:  OKAY.  AND WHAT'S THE TIME
```

```
 1   PERIOD?

 2               PROSPECTIVE JUROR:  SO I STARTED

 3   GOOGLE -- IT'S WITHIN THE LAST SEVEN YEARS, MOSTLY

 4   ABOUT SIX TO SEVEN YEARS AGO.

 5               THE COURT:  OKAY.  AND PATENTS HAVE

 6   ISSUED?  HOW MANY?

 7               PROSPECTIVE JUROR:  ONE HAS ISSUED AND

 8   THE MOST RECENT ONE THAT'S GOING THROUGH RIGHT NOW

 9   IS WITH REGARD TO SOME OF THE NEW FEATURES IN THE

10   LATEST ANDROID DEVELOPMENT.

11               THE COURT:  THE OPERATING SYSTEM?

12               PROSPECTIVE JUROR:  YEAH.

13               THE COURT:  UM-HUM.

14               PROSPECTIVE JUROR:  SO THAT ONE IS FAIRLY

15   RECENTLY, A FEW MONTHS.  THE OTHER ONES ARE FAIRLY

16   OLD.

17               THE COURT:  OKAY.  ALL RIGHT.  LET ME ASK

18   IF YOU WOULD -- OBVIOUSLY YOU KEEP YOUR LIFE

19   EXPERIENCE AND YOUR COMMON SENSE AND ALL THE OTHER

20   THINGS THAT YOU BRING HERE.

21               BUT WOULD YOU BE ABLE TO DECIDE THIS CASE

22   BASED SOLELY ON THE EVIDENCE THAT'S ADMITTED DURING

23   THE TRIAL AND NOT ON PREVIOUS TECHNOLOGICAL PATENT

24   EXPERIENCE THAT YOU HAVE?

25               PROSPECTIVE JUROR:  YES.
```

```
1            THE COURT:  OKAY.  LET ME ASK MS. HALIM,
2     HOW LONG AGO WAS YOUR PATENT FOR SILICON GRAPHICS
3     AND HOW LONG WAS YOUR PATENT FOR -- DID YOU SAY
4     WAYNE TECH?
5            PROSPECTIVE JUROR:  WEITEK, YES.
6            THE COURT:  WEITEK, HOW IS THAT SPELLED?
7            PROSPECTIVE JUROR:  W-E-I-T-E-K.
8            THE COURT:  OKAY.  THANK YOU.  HOW LONG
9     AGO WERE THOSE TWO PATENTS?
10           PROSPECTIVE JUROR:  FOR WEITEK, IT WAS IN
11    THE LATE '90S -- LATE '80S.
12           THE COURT:  OKAY.
13           PROSPECTIVE JUROR:  AND FOR SILICON
14    GRAPHICS, IT'S MID-1990S.
15           THE COURT:  OKAY.  AND DO YOU HAVE ANY
16    PATENT APPLICATIONS PENDING NOW?
17           PROSPECTIVE JUROR:  NO.
18           THE COURT:  NO.  OKAY.  ALL RIGHT.
19           LET'S GO TO MR. HOGAN.  YOU HAD SOME?
20           PROSPECTIVE JUROR:  EXCUSE ME.  IN 2002,
21    I FILED FOR A PATENT IN VIDEO COMPRESSION SOFTWARE,
22    AND IN 2008, THE PATENT WAS ISSUED TO ME.
23           AND IN 2008 I FILED A FOLLOW-ON PATENT IN
24    MORE DETAIL AND THAT IS CURRENTLY PENDING.
25           THE COURT:  I SEE.  OKAY.  ALL RIGHT.
```

1      THANK YOU.

2               ALL RIGHT.  NEXT QUESTION IS, HAVE YOU

3      EVER CREATED OR DEVELOPED SOMETHING AND YOU BELIEVE

4      YOU HAD THE IDEA TAKEN FROM YOU?  IF YOU WOULD

5      ANSWER YES TO THAT QUESTION, WOULD YOU PLEASE RAISE

6      YOUR HAND?

7               THE RECORD SHOULD REFLECT THAT NO HANDS

8      HAVE BEEN RAISED.

9               AH, ALL RIGHT.  LET'S GO TO -- LET'S GO

10     TO MR. TEPMAN.  GO AHEAD, PLEASE.

11               PROSPECTIVE JUROR:  I BELIEVE THIS ONE IS

12     PATENTS.

13               THE COURT:  CAN YOU USE THE MICROPHONE,

14     PLEASE?  THANK YOU.

15               PROSPECTIVE JUROR:  THE PREVIOUS ONE, THE

16     PATENTS, I HAVE 125 PATENTS.

17               THE COURT:  YOU HAVE 125 PATENTS?

18               PROSPECTIVE JUROR:  YES.

19               THE COURT:  IN WHAT FIELD?

20               PROSPECTIVE JUROR:  PHYSICS,

21     SEMICONDUCTOR MANUFACTURING, ROBOTICS.

22               THE COURT:  AND THESE ARE ALL ISSUED

23     PATENTS; CORRECT?

24               PROSPECTIVE JUROR:  IT'S ALL ISSUED.  AND

25     PENDING, PROBABLY THREE.

```
 1              THE COURT:  YOU HAVE THREE PENDING?

 2              PROSPECTIVE JUROR:  ABOUT.

 3              THE COURT:  ROUGHLY WHEN WERE THESE 125

 4    PATENTS ISSUED?

 5              PROSPECTIVE JUROR:  I STARTED EARLY '90S

 6    AND UNTIL RECENTLY.

 7              THE COURT:  AND FOR WHOM DID YOU -- DID

 8    YOU ASSIGN YOUR RIGHTS TO THESE PATENTS?

 9              PROSPECTIVE JUROR:  IT'S ALL ASSIGNED

10    TO -- IT'S ALL APPLIED MATERIALS.

11              THE COURT:  OH, APPLIED MATERIALS, OKAY.

12    ALL RIGHT.

13              NOW, SAME FOR MR. TEPMAN, AS WELL AS TO

14    MR. HOGAN.  YOU ALL HAVE A LOT OF EXPERIENCE, BUT

15    WILL YOU BE ABLE TO DECIDE THIS CASE BASED SOLELY

16    ON THE EVIDENCE THAT'S ADMITTED DURING THE TRIAL?

17              PROSPECTIVE JUROR:  YES.

18              THE COURT:  OKAY.  MR. HOGAN SAYS YES.

19              WHAT ABOUT MR. TEPMAN?

20              PROSPECTIVE JUROR:  I THINK SO, TOO.

21              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

22              NOW, WAS ANYONE ELSE GOING TO ANSWER YES

23    TO THE QUESTION OF HAVE YOU EVER HAD AN IDEA TAKEN

24    FROM YOU?

25              THE RECORD SHOULD REFLECT NO HANDS HAVE
```

```
1    BEEN RAISED.

2              NOW, THE NEXT QUESTION, HAVE YOU EVER

3    BEEN ACCUSED OF TAKING AN IDEA FROM SOMEONE ELSE?

4    WOULD YOU PLEASE RAISE YOUR HAND?

5              ALL RIGHT.  LET'S GO TO MR. HOGAN.

6              WOULD YOU PLEASE PASS THE MICROPHONE,

7    MR. TEPMAN?  THANK YOU.

8              PROSPECTIVE JUROR:  AS I HAD STATED

9    EARLIER, THAT WAS -- IN 2008, THAT WAS THE

10   ACCUSATION AGAINST ME BEFORE THE PATENT WAS ISSUED.

11             BUT AS I SAID, THAT CASE ULTIMATELY WAS

12   DROPPED IN MY FAVOR.

13             THE COURT:  NOW, WHEN THE PROGRAMMER SUED

14   YOU, WAS THAT PROGRAMMER ALSO A CO-INVENTOR ON THE

15   PATENT?

16             PROSPECTIVE JUROR:  NO.

17             THE COURT:  NO.  I SEE.

18             PROSPECTIVE JUROR:  THE PATENT WAS ISSUED

19   TOTALLY -- EXCLUSIVELY IN MY NAME.

20             THE COURT:  I SEE.

21             PROSPECTIVE JUROR:  AND I HAD FILED FOR

22   THAT PATENT PRIOR TO HIS JOINING THE EFFORT TO WORK

23   FOR IT.  THAT WAS PART OF MY DOCUMENTATION SHOWING

24   THAT IT WAS MINE.

25             THE COURT:  OKAY.  ALL RIGHT.
```

```
1              LET ME ASK, IF YOU HAVE STRONG FEELINGS

2    OR STRONG OPINIONS ABOUT EITHER THE UNITED STATES

3    PATENT SYSTEM OR INTELLECTUAL PROPERTY LAWS, WOULD

4    YOU RAISE YOUR HAND, PLEASE?

5              THE RECORD SHOULD REFLECT THAT NO HANDS

6    HAVE BEEN RAISED.

7              LET'S JUST -- I WANT TO GO DOWN THE LINE

8    AND JUST ASK YOU IF YOU USE ANY OF THE FOLLOWING

9    AND HOW OFTEN YOU USE THEM, OKAY?

10             SO -- I'LL JUST GIVE YOU A LIST:  THAT

11   YOU EITHER DO INTERNET SEARCHING; YOU MAINTAIN YOUR

12   OWN BLOG OR YOU LIKE TO BLOG A LOT; YOU MAINTAIN A

13   TWITTER ACCOUNT, A FACEBOOK ACCOUNT.

14             LET ME GO STRAIGHT DOWN THE LINE, PLEASE.

15             PROSPECTIVE JUROR:  I USE THE INTERNET A

16   LOT.

17             I DON'T HAVE A BLOG.

18             THE COURT:  OKAY.  WHAT ABOUT DO YOU

19   TWEET?  DO YOU FACEBOOK?  MYSPACE OR ANYTHING?

20             PROSPECTIVE JUROR:  NO.

21             THE COURT:  OKAY.  WHAT ABOUT

22   MR. OKAMOTO?

23             PROSPECTIVE JUROR:  SO I GOOGLE A LOT.

24             I DON'T HAVE A BLOG.  I HAVE A TWITTER

25   ACCOUNT, BUT I NEVER REALLY POST TO IT OR READ IT.
```

```
 1                    MY GOOGLE PLUS, A LITTLE BIT MORE THAN
 2      TWITTER, BUT NOT TOO OFTEN.
 3                    NO FACEBOOK ACCOUNT.
 4                    AND THAT'S ABOUT IT.
 5                    THE COURT:  I'M SORRY.  I DIDN'T
 6      UNDERSTAND THE LAST PART.
 7                    PROSPECTIVE JUROR:  THAT'S ABOUT IT.
 8                    THE COURT:  OKAY.  THANK YOU.
 9                    MR. HOGAN?
10                    PROSPECTIVE JUROR:  SO I USE THE INTERNET
11      A LOT.  I, OF COURSE, GOOGLE A LOT.
12                    I DON'T HAVE A FACEBOOK ACCOUNT OF MY OWN
13      OR A TWITTER ACCOUNT, JUST STRICTLY E-MAIL.
14                    THE COURT:  DO YOU BLOG?
15                    PROSPECTIVE JUROR:  NO.
16                    THE COURT:  ALL RIGHT.  THANK YOU.
17                    LET'S GO TO MR. BELLA.
18                    PROSPECTIVE JUROR:  GOOGLE A LOT.
19                    NO FACEBOOK, TWITTER, TWEETING, WHATEVER.
20                    THE COURT:  AND NO BLOGGING?
21                    PROSPECTIVE JUROR:  NO BLOGGING.
22                    THE COURT:  LET'S GO TO MS. ROUGIERI.
23                    PROSPECTIVE JUROR:  I DON'T GOOGLE A LOT.
24                    I HAVE A FACEBOOK THAT I JUST OPENED IT.
25                    AND THAT'S ABOUT IT.
```

```
 1              THE COURT:  THAT'S ABOUT IT.  OKAY.

 2              MS. FLAVIN?

 3              PROSPECTIVE JUROR:  I GOOGLE A LOT ALSO.

 4              I DON'T HAVE A FACEBOOK, MYSPACE,

 5      TWITTER.  I DON'T BLOG.

 6              THE COURT:  OKAY.  THANK YOU.

 7              LET'S GO TO MS. LEROSE.

 8              PROSPECTIVE JUROR:  I USE THE INTERNET

 9      AND GOOGLE, AND I DON'T ENJOY FACEBOOK OR BLOGGING

10      OR TWEETING OR ANY OF THAT, WHATEVER IT IS.

11              THE COURT:  WHAT WAS THE LAST THING YOU

12      SAID?

13              PROSPECTIVE JUROR:  WHATEVER THEY ARE, I

14      DON'T INTERACT WITH THOSE THINGS.

15              THE COURT:  ALL RIGHT.

16              MR. REYES?

17              PROSPECTIVE JUROR:  I DO INTERNET

18      SEARCHING.

19              I DO HAVE A FACEBOOK ACCOUNT.  I RARELY,

20      RARELY USE IT.  BUT I DON'T BLOG OR TWEET OR

21      ANYTHING LIKE THAT.

22              THAT'S ABOUT IT.

23              THE COURT:  OKAY.  THANK YOU.

24              LET'S GO TO MS. FRIESEN.

25              PROSPECTIVE JUROR:  I USE THE INTERNET
```

```
 1    AND GOOGLE PRETTY MUCH ON A DAILY BASIS, AND I DO

 2    HAVE A FACEBOOK THAT I MIGHT CHECK ONCE A DAY.

 3              OTHER THAN THAT, THAT'S PRETTY MUCH IT.

 4              THE COURT:  OKAY.  THANK YOU.

 5              MR. CATHERWOOD?

 6              PROSPECTIVE JUROR:  I USE THE INTERNET

 7    SEARCH ENGINES, PRETTY MUCH ALL OF THEM.

 8              AND NO FACEBOOK OR BLOG OR TWEETING.

 9              THE COURT:  ALL RIGHT.  THANK YOU.

10              MR. ROGERS?

11              PROSPECTIVE JUROR:  I THINK I HAVE AN

12    ACCOUNT FOR MOST SOCIAL PLATFORMS, BUT LATELY I

13    TYPICALLY USE THE INTERNET SOLELY FOR YOUTUBE,

14    CHECKING MY E-MAIL, AND CHECKING THE FORUMS FOR A

15    SPECIFIC GAME I PLAY LATELY.  THAT'S ABOUT IT

16    LATELY.

17              THE COURT:  OKAY.  THANK YOU.

18              MR. TEPMAN?

19              PROSPECTIVE JUROR:  I GOOGLE, OF COURSE,

20    FOR LOOKING FOR STUFF.  I HAVE SOME DORMANT

21    FACEBOOK ACCOUNT WHICH I NEVER APPLY TO, NEVER USE.

22              AND I HAVE LINKEDIN ACCOUNT WHICH I NEVER

23    USE AND I DON'T TWEET OR BLOG OR ANYTHING LIKE

24    THAT.

25              THE COURT:  ALL RIGHT.  THANK YOU.
```

```
 1                    MS. MATHUR?

 2                    PROSPECTIVE JUROR:  I USE INTERNET AND

 3        E-MAIL FOR EVERY DAY USE.

 4                    AND I HAVE A FACEBOOK ACCOUNT THAT I JUST

 5        CHECK MAYBE ONCE IN A WHILE, BUT I DON'T DO

 6        ANYTHING MUCH ON THERE.

 7                    THE COURT:  ALL RIGHT.  THANK YOU.

 8                    MR. ILAGAN?

 9                    PROSPECTIVE JUROR:  YES.  I YAHOO A LOT,

10        AND I HAVE A FACEBOOK ACCOUNT AND A LINKEDIN

11        ACCOUNT.

12                    THE COURT:  ALL RIGHT.  THANK YOU.

13                    LET'S GO TO MR. DUNN.

14                    PROSPECTIVE JUROR:  SO I USE -- I DO

15        REGULAR INTERNET SEARCHES.

16                    I HAVE A FACEBOOK ACCOUNT WHICH I USE

17        OCCASIONALLY, BUT NO BLOG, LINKEDIN, OR TWITTER

18        ACCOUNTS.

19                    THE COURT:  ALL RIGHT.  THANK YOU.

20                    MS. HOLLOWAY.

21                    PROSPECTIVE JUROR:  INTERNET, E-MAIL,

22        LINKEDIN, FACEBOOK, TWITTER.

23                    THE COURT:  OKAY.

24                    PROSPECTIVE JUROR:  NO BLOG.

25                    THE COURT:  YOU SAID NO BLOG?
```

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20                    /S/

                       _____
21                    LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
22

23

24                    DATED:  JULY 30, 2012

25