Pierce Declaration

# EXHIBIT 4

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6  CORPORATION,                )
                               )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,       )
                               )  AUGUST 6, 2012
8         VS.                   )
                               )  VOLUME 4
9  SAMSUNG ELECTRONICS CO.,    )
   LTD., A KOREAN BUSINESS     )  PAGES 931-1296
10 ENTITY; SAMSUNG             )
   ELECTRONICS AMERICA,        )
11 INC., A NEW YORK            )
   CORPORATION; SAMSUNG        )
12 TELECOMMUNICATIONS          )
   AMERICA, LLC, A DELAWARE    )
13 LIMITED LIABILITY           )
   COMPANY,                    )
14                             )
              DEFENDANTS.       )
15 _____

16           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20         APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                          CERTIFICATE NUMBER 9595
24                        IRENE RODRIGUEZ, CSR, CRR
                          CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                 BY:  HAROLD J. MCELHINNY
 3                                MICHAEL A. JACOBS
                                  RACHEL KREVANS
 4                           425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                 HALE AND DORR
 7                           BY:  WILLIAM F. LEE
                             60 STATE STREET
 8                           BOSTON, MASSACHUSETTS  02109

 9                           BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
10                           PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
12                           BY:  CHARLES K. VERHOEVEN
                                  ALBERT P. BEDECARRE
13                           50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
14
                             BY:  VICTORIA F. MAROULIS
15                                KEVIN P.B. JOHNSON
                             555 TWIN DOLPHIN DRIVE
16                           SUITE 560
                             REDWOOD SHORES, CALIFORNIA  94065
17
                             BY:  MICHAEL T. ZELLER
18                                WILLIAM C. PRICE
                                  JOHN B. QUINN
19                           865 SOUTH FIGUEROA STREET
                             10TH FLOOR
20                           LOS ANGELES, CALIFORNIA  90017

21    FOR INTERVENOR         RAM, OLSON,
      REUTERS:               CEREGHINO & KOPCZYNSKI
22                           BY:  KARL OLSON
                             555 MONTGOMERY STREET, SUITE 820
23                           SAN FRANCISCO, CALIFORNIA  94111

24

25
```

1

2

3                          INDEX OF WITNESSES

4       PLAINTIFF'S

5

6       **JUSTIN DENISON**
             AS-ON DIRECT EXAM BY MR. QUINN      P. 946
             AS-ON RECROSS-EXAM BY MR. LEE       P. 977
7            AS-ON REDIRECT EXAM BY MR. QUINN    P. 997

8

9       **PETER BRESSLER**
             DIRECT EXAM BY MS. KREVANS          P. 1002
             CROSS-EXAM BY MR. VERHOEVEN         P. 1098
10           REDIRECT EXAM BY MS. KREVANS        P. 1236

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         INDEX OF EXHIBITS

2                                    MARKED        ADMITTED

3      PLAINTIFF'S

4      40                                          995
       8                                           1021
5      7                                           1049
       17                                          1055
6      1032                                        1061
       1034                                        1062
7      3                                           1071
       4                                           1076
8      173                                         1079
       59                                          1086
9      10                                          1097

10

       DEFENDANT'S
11
       1010                                        949
12     1011                                        953
       1012                                        953
13     1013                                        953
       1019                                        953
14     1031                                        954
       1033                                        954
15     1034                                        954
       1035                                        954
16     1020                                        957
       1022                                        959
17     1015                                        959
       1017                                        959
18     1026                                        959
       1005                                        961
19     1007                                        961
       1037                                        961
20     1038                                        972
       511                                         1114
21     728                                         1115
       727                                         1115
22     3750                                        1118

23

24

25

```
 1   APPLE HAS USED 3 HOURS AND 51 MINUTES AND SAMSUNG

 2   HAS USED 3 HOURS AND 11 MINUTES.

 3              WHAT ELSE?  ANYTHING ELSE?  CAN WE BRING

 4   OUR JURY IN?  IF THEY'RE HERE, I THINK WE CAN JUST

 5   GET STARTED EVEN THOUGH IT'S NOT 9:00 O'CLOCK.

 6              THE CLERK:  THEY'RE ALL HERE.  THEY'RE

 7   ASKING IF THEY CAN HAVE MORE NOTEPAPER.

 8              THE COURT:  MORE NOTEPAPERS?  DO YOU ALL

 9   HAVE MORE NOTEPAPER?  COULD YOU, PLEASE?

10              DOES ANYONE AT SAMSUNG WANT TO TAKE A

11   LOOK AT THE NOTE PAPER?

12              MR. QUINN:  YOUR HONOR, SHOULD

13   MR. DENISON TAKE THE STAND?

14              THE COURT:  PLEASE, GO AHEAD.

15              (WHEREUPON, THE FOLLOWING PROCEEDINGS

16   WERE HELD IN THE PRESENCE OF THE JURY:)

17              THE COURT:  GOOD MORNING AND WELCOME

18   BACK.

19              YOU ARE RECEIVING MORE NOTEPAPER, AND WE

20   WILL CERTAINLY PROVIDE MORE AS YOU NEED IT.

21              IT IS NOW EXACTLY 9:00 A.M.  WE ARE

22   CONTINUING WITH MR. QUINN'S EXAMINATION OF

23   MR. DENISON, AND MR. DENISON, YOU'RE STILL UNDER

24   OATH.

25   /   /   /
```

1                      **JUSTIN DENISON,**

2     BEING CALLED AS AN ADVERSE WITNESS ON BEHALF OF THE

3     PLAINTIFF, HAVING BEEN PREVIOUSLY SWORN, WAS

4     FURTHER EXAMINED AND TESTIFIED AS FOLLOWS:

5               GO AHEAD, PLEASE.  IT'S 9:00 A.M.

6               MR. QUINN:  THANK YOU, YOUR HONOR.

7               **AS-ON DIRECT EXAMINATION**

8     BY MR. QUINN:

9     Q    GOOD MORNING, LADIES AND GENTLEMEN.

10              MR. DENISON.

11    A    GOOD MORNING.

12    Q    LAST FRIDAY YOU TOLD US THAT IN ANY GIVEN

13    YEAR, SAMSUNG INTRODUCES ABOUT 50 NEW PHONES IN THE

14    UNITED STATES; IS THAT CORRECT?

15    A    THAT'S ABOUT RIGHT, YES.

16    Q    CAN YOU TELL US, AT ANY GIVEN TIME,

17    APPROXIMATELY HOW MANY PHONES, INCLUDING MODELS

18    THAT AREN'T INTRODUCED THAT YEAR, SAMSUNG HAS FOR

19    SALE IN THE UNITED STATES?

20    A    I WOULD JUST ESTIMATE, AGAIN, IT COULD BE AS

21    MANY AS 100 THAT ARE IN THE MARKET AT ANY GIVEN

22    TIME LET'S SAY.

23    Q    NOW, DOES SAMSUNG ELECTRONICS, THE COMPANY

24    HEADQUARTERED IN SEOUL, KOREA, ACTUALLY ITSELF SELL

25    ANY PHONES IN THE UNITED STATES?

```
 1    A    NO, IT DOES NOT.

 2    Q    DOES ANY SAMSUNG ENTITY, OTHER THAN THE ENTITY

 3    YOU WORK FOR, SAMSUNG TELECOMMUNICATIONS AMERICA,

 4    SELL ANY PHONES IN THE UNITED STATES?

 5    A    NO, THEY DO NOT.

 6    Q    IF WE COULD PUT UP ON THE SCREEN A

 7    DEMONSTRATIVE EXHIBIT, YOUR HONOR, EXHIBIT 3584.

 8              AND DO YOU HAVE THAT BEFORE YOU,

 9    MR. DENISON, 3584?

10    A    I DO.

11    Q    AND CAN YOU SUMMARIZE, IF THERE'S NO

12    OBJECTION, YOUR HONOR, IT'S ON THE SCREEN -- WHAT

13    DOES THIS DEMONSTRATIVE EXHIBIT SHOW US?

14    A    THIS EXHIBIT BASICALLY SHOWS PHONES THAT ARE

15    AT ISSUE IN THIS CASE MAPPED BY CARRIER ON THE

16    HORIZONTAL ROWS, AND THEN IN THE VERTICAL COLUMNS,

17    YOU SEE THEM BROKEN UP BY GALAXY GENERATION OR IN

18    SOME CASES PHONES THAT AREN'T ADVERTISED AS GALAXY

19    PHONES.

20    Q    ALL RIGHT.  THESE ARE THE PHONES THAT ARE AT

21    ISSUE IN THIS CASE?

22    A    YES.

23    Q    AND WHEN YOU SAY MAPPED OUT BY CARRIER, WHAT

24    DO YOU MEAN BY THAT?

25    A    I JUST MEAN THAT, YOU KNOW, FOR INSTANCE, THE
```

1    GALAXY S CAPTIVATE, WHICH IS RIGHT NEXT TO AT&T,

2    THAT PHONE IS SOLD FROM STA TO AT&T AND NOT TO ANY

3    OTHER CARRIERS.  SO THAT'S TRUE OF ALL OF THESE.

4    Q    WE'VE TAKEN A LOOK AT THESE PHONES, BUT FIST

5    I'D LIKE TO TURN TO THE NEXT DEMONSTRATIVE EXHIBIT,

6    3585.  AND WHAT ARE THESE PHONES THAT ARE

7    REFERENCED HERE?

8    A    THESE ARE THE, THE LAST THREE REMAINING PHONES

9    AT ISSUE, BASED ON MY UNDERSTANDING.  THESE ARE

10   GLOBAL, GLOBAL DEVICES.

11   Q    AND ARE ANY OF THESE PHONES SOLD BY ANY

12   SAMSUNG ENTITY IN THE UNITED STATES?

13   A    NO, THEY'RE NOT.

14   Q    SO LET'S TAKE A LOOK AT SOME PHONES NOW,

15   INCLUDING TWO THAT RELATE TO THAT INVESTIGATION

16   THAT YOU DID, THE INFUSE 4G, WHICH IS IN EVIDENCE.

17            YOUR HONOR, IT'S JOINT EXHIBIT 1027.  IF

18   THAT COULD BE PLACED BEFORE MR. DENISON.  UNLESS

19   THE GALAXY VIBRANT, JOINT EXHIBIT 1010.

20            DO YOU HAVE THOSE TWO WITH YOU?

21   A    I DO.

22   Q    AND EXHIBIT 1010, THAT'S THE GALAXY VIBRANT?

23   A    NO.  EXHIBIT 1010 IS THE T-MOBILE GALAXY --

24   YES.  I'M SORRY.  YOU SAID VIBRANT, DIDN'T YOU?

25   Q    YES.

```
 1    A    YOU'RE RIGHT, I'M WRONG.

 2              MR. QUINN:  I'LL OFFER THAT IN EVIDENCE,

 3    YOUR HONOR.  IT'S ONE OF THE PHONES THAT ARE

 4    ACCUSED IN THIS CASE.

 5              MR. LEE:  NO OBJECTION, YOUR HONOR.

 6              THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

 7    AND THAT NUMBER IS 1010?

 8              MR. QUINN:  1010, YOUR HONOR, JOINT

 9    EXHIBIT 1010.

10              THE COURT:  I'M SORRY.  WHICH ONE IS THAT

11    ONE?

12              MR. QUINN:  THAT'S THE GALAXY VIBRANT.

13              THE COURT:  OKAY.  THANK YOU.  IT'S

14    ADMITTED.

15              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

16              1010, HAVING BEEN PREVIOUSLY MARKED FOR

17              IDENTIFICATION, WAS ADMITTED INTO

18              EVIDENCE.)

19    BY MR. QUINN:

20    Q    ARE THESE TWO PHONES, THE INFUSE AND THE

21    VIBRANT, ARE THEY BOTH PART OF THE GALAXY FAMILY OF

22    PHONES?

23    A    YES, THEY WERE PART OF THE GALAXY I

24    GENERATION.

25    Q    HAVE THERE BEEN MORE THAN ONE GENERATION OF
```

1   GALAXY PHONES?

2   A    THERE HAVE BEEN.  THERE'S BEEN THREE AT THIS

3   POINT.

4   Q    AND THE GALAXY VIBRANT, WHO DOES SAMSUNG

5   TELECOMMUNICATIONS AMERICA SELL THAT TO?

6   A    THE VIBRANT WAS SOLD TO T-MOBILE.

7   Q    AND WHICH CARRIER GETS THE INFUSE 4G?

8   A    THAT WAS SOLD TO AT&T.

9   Q    ARE THESE TWO PHONES, BOTH GALAXY PHONES, ARE

10  THEY BOTH THE SAME DESIGN?

11  A    THEY'RE NOT.

12  Q    AND WHY NOT?

13  A    WELL, THERE'S MANY DIFFERENCES THAT I SEE.

14  YOU KNOW, FIRST, WHEN YOU LOOK AT THE INFUSE --

15            MR. LEE:  YOUR HONOR, I OBJECT.  THIS IS

16  NOT -- THIS IS TRYING TO BACKDOOR IN THE --

17            THE COURT:  THAT'S SUSTAINED.

18            MR. LEE:  THANK YOU.

19            MR. QUINN:  WELL, YOUR HONOR, I'D REQUEST

20  PERMISSION, THEN, TO PASS THESE TWO PHONES TO THE

21  JURY SO THE JURY HAS AN OPPORTUNITY TO LOOK AT

22  THESE.

23            THE COURT:  I THINK THAT'S FINE.  DO YOU

24  HAVE ANY OBJECTION, MR. LEE?

25            MR. LEE:  NONE AT ALL, YOUR HONOR.

```
1              THE COURT:  OKAY.  PLEASE DO SO.

2              MR. QUINN:  SO THESE TWO PHONES, EXHIBIT

3    1027, THE INFUSE 4G AND THE GALAXY VIBRANT, EXHIBIT

4    1010, ARE BEING PASSED TO THE JURY.

5    Q    NOW, SAMSUNG SELLS OTHER GALAXY S PHONES TO

6    OTHER CARRIERS?

7    A    THAT'S RIGHT.

8    Q    AND IF WE COULD LOOK AT THE EXHIBIT 1011, THE

9    CAPTIVATE; EXHIBIT 1013, THE FASCINATE; EXHIBIT

10   1012, THE EPIC 4G; AND THE GALAXY S 4G.

11             DO YOU HAVE ALL FOUR OF THOSE?  WE'RE

12   STILL FISHING ONE OUT.

13   A    YES, I HAVE THEM ALL.

14   Q    NOW, WHY DOES SAMSUNG SELL DIFFERENT GALAXY

15   PHONES TO EACH OF THE DIFFERENT CARRIERS?

16   A    WELL, GENERALLY SPEAKING, THE CARRIERS

17   THEMSELVES WANT TO DIFFERENTIATE THE PORTFOLIOS

18   THEY OFFER OF BOTH DEVICES, AS WELL AS SERVICES,

19   FROM EACH OTHER.

20             SO THEY TYPICALLY ASK US FOR SOME ELEMENT

21   OF UNIQUENESS IN EVEN THE PHYSICAL DESIGN OF THE

22   PRODUCTS THAT THEY SELL VERSUS THEIR COMPETITION.

23   HENCE ALL THE GALAXY S I DEVICES LOOKED DISTINCTLY

24   DIFFERENT.

25   Q    AND DOES SAMSUNG WORK WITH THE DIFFERENT
```

1    CARRIERS TO COME UP WITH DIFFERENCES FOR THE

2    DIFFERENT GALAXY PHONES?

3    A    YES, YES, ABSOLUTELY.

4    Q    NOW, IS THIS TRUE FOR THE NEXT GENERATION, THE

5    GALAXY 2 PHONES AS WELL?  ARE THEY DIFFERENT?

6            MR. LEE:  YOUR HONOR, I OBJECT.

7    JUDGE GREWAL STRUCK ALL OF THE NON-INFRINGEMENT

8    ARGUMENTS BASED UPON THESE DIFFERENCES.

9            THE COURT:  SUSTAINED.

10           MR. QUINN:  YOUR HONOR, THERE ARE TRADE

11   DRESS CLAIMS AT ISSUE AS WELL, AND I DON'T -- I

12   DON'T AGREE WITH COUNSEL'S STATEMENT CONCERNING THE

13   HISTORY HERE.

14           THE COURT:  IT'S SUSTAINED.  GO AHEAD,

15   PLEASE, WITH THE NEXT QUESTION.

16   BY MR. QUINN:

17   Q    HOW MANY DIFFERENT GALAXY 2 PHONES DOES

18   SAMSUNG SELL TO THE FIGURE FOUR CARRIERS?

19   A    SAMSUNG HAS SOLD FOUR GALAXY S II DEVICES TO

20   CARRIERS.

21   Q    NOW, THE CAPTIVATE, EXHIBIT 1011, DO YOU HAVE

22   THAT BEFORE YOU?

23   A    I DO.

24   Q    AND WHO IS THAT SOLD -- WHAT CARRIER IS THAT

25   SOLD TO?

953

```
1    A     THIS IS SOLD TO AT&T.

2    Q     AND THE FASCINATE, EXHIBIT 1013?

3    A     THIS WAS SOLD TO VERIZON.

4    Q     AND THE EPIC 4G?

5    A     THIS WAS SOLD TO SPRINT.

6    Q     AND THE GALAXY S 4G?

7    A     AND THIS WAS SOLD TO T-MOBILE.

8          MR. QUINN:  YOUR HONOR, WE WOULD OFFER IN

9    EVIDENCE EXHIBIT 1011, THE CAPTIVATE; EXHIBIT 1013,

10   THE FASCINATE; EXHIBIT 1012, THE EPIC; AND EXHIBIT

11   1019, THE GALAXY S 4G.

12         MR. LEE:  NO OBJECTION, YOUR HONOR.

13         THE COURT:  THEY'RE ADMITTED.  DO YOU

14   ALSO WANT 1012?

15         MR. QUINN:  1012.

16         THE COURT:  THE 4G, YES.

17         MR. QUINN:  YES, THAT'S THE EPIC.  I

18   HOPED I HAD SAID THAT.

19         THE COURT:  1011, 1012, 1013 AND 1019 ARE

20   ALL ADMITTED.

21             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

22             1011, 1012, 1013, AND 1019, HAVING BEEN

23             PREVIOUSLY MARKED FOR IDENTIFICATION,

24             WERE ADMITTED INTO EVIDENCE.)

25         MR. QUINN:  THANK YOU, YOUR HONOR.
```

1   TALKED TO IS NAMED MIN, M-I-N, HYOUK, H-Y-O-U-K,

2   LEE; CORRECT?

3   A    YES, THAT'S RIGHT.

4   Q    YOU DESCRIBE HIM AS A PRINCIPAL DESIGNER OF

5   SAMSUNG'S GALAXY S AND GALAXY S 4G PRODUCTS;

6   CORRECT?

7   A    YES, THAT'S RIGHT.

8   Q    OKAY.  NOW, AS PART OF YOUR INVESTIGATION, DID

9   YOU ASK MR. LEE FOR HIS DESIGN DOCUMENTS, THE

10  DOCUMENTS THAT WOULD ACTUALLY SHOW WHAT HE DID?

11  A    I THINK AS A GENERAL RULE, WE TALKED ABOUT THE

12  INSPIRATION BEHIND THE DESIGN AND I BELIEVE IN ALL

13  CASES WE ASKED HIM FOR, YOU KNOW, CAD FILES, LET'S

14  SAY.

15  Q    ALL RIGHT.  I'M ASKING YOU -- I'M NOT ASKING

16  YOU ABOUT WHAT THEY SAID.  I'M ASKING YOU ABOUT

17  WHAT THEY GAVE YOU, WHICH WOULD BE THE PHYSICAL

18  RECORD OF WHAT THEY DID IN DESIGN.

19          SO FOCUSSING ON MIN-HYOUK LEE, AND I

20  APOLOGIZE IF I'M PRONOUNCING IT INCORRECTLY, DID HE

21  GIVE YOU THE DOCUMENTS OR THE CAD FILES THAT SHOWED

22  THE WORK THAT HE DID?

23  A    I DON'T ACTUALLY REMEMBER IF I RECEIVED CAD

24  FILES FROM MIN-HYOUK LEE.

25  Q    NOW, MR. DENISON, DID YOU ASK MIN-HYOUK LEE

1   WHETHER ANY OF HIS FILES OR DOCUMENTS HAD BEEN

2   DESTROYED?

3   A    NO, IT WOULD NOT OCCUR TO ME TO ASK SUCH A

4   QUESTION.

5   Q    DO YOU KNOW ONE WAY OR ANOTHER WHETHER ANY OF

6   HIS FILES --

7            MR. QUINN:  YOUR HONOR, OBJECTION.

8            THE COURT:  OVERRULED.

9            THE WITNESS:  SHOULD I REPEAT OR FINISH

10  THE QUESTION.

11  BY MR. LEE:

12  Q    SURE.  LET ME STATE IT AGAIN.

13            DO YOU KNOW ONE WAY OR ANOTHER WHETHER

14  ANY OF MIN-HYOUK LEE'S FILES WERE DESTROYED?

15  A    I CAN'T ASK HIM THAT.

16  Q    DO YOU ASK HIM THAT?

17  A    I DON'T RECALL ASKING HIM THAT.

18  Q    NOW, SIR, MR. QUINN ASKED YOU SOME QUESTIONS

19  ABOUT YOUR INVESTIGATION AND A COUPLE QUESTIONS

20  SPECIFICALLY ABOUT RUBBER BANDING.

21            DO YOU REMEMBER THAT?

22  A    YES.

23  Q    IF THERE WERE SAMSUNG'S DOCUMENTS THAT SHOWED

24  COPYING OF THE RUBBER BANDING FEATURE, YOU WOULD

25  HAVE TOLD US ABOUT THOSE; CORRECT?

986

1    A    I'M SORRY.  I GUESS I DON'T UNDERSTAND THE

2    QUESTION.  MAYBE YOU CAN REPHRASE IT.

3    Q    IF YOUR INVESTIGATION HAD RESULTED IN A

4    SAMSUNG DOCUMENT THAT SHOWED AN APPLE PRODUCT AND A

5    SAMSUNG PRODUCT AND COMPARED THE RUBBER BANDING

6    FEATURE, YOU HAVE TOLD US ABOUT THAT; RIGHT?

7    A    I DON'T RECALL A DOCUMENT THAT WOULD HAVE

8    SUGGESTED THAT, SO --

9    Q    ALL RIGHT.  THAT'S MY QUESTION.  YOUR

10   INVESTIGATION, THOROUGH AS IT WAS, DIDN'T

11   UNDERCOVER ANY DOCUMENTS LIKE THAT; CORRECT?

12   A    THAT'S RIGHT.

13   Q    ALL RIGHT.  NOW, YOU ALSO TOLD THE JURY ON

14   FRIDAY THAT YOU WERE NOT AWARE OF ANY EXAMPLES OF A

15   CONSUMER BUYING A SAMSUNG PRODUCT THINKING IT WAS

16   AN APPLE PRODUCT.  CORRECT?

17   A    THAT'S RIGHT.

18   Q    YOU ARE AWARE THAT SAMSUNG HAS INVESTIGATED

19   THE REASONS THAT SAMSUNG PRODUCTS ARE RETURNED TO

20   RETAIL STORES LIKE BEST BUY, AREN'T YOU?

21   A    THAT'S ENTIRELY POSSIBLE.  THAT SEEMS LIKE

22   SOMETHING WE WOULD DO.

23   Q    YOU DON'T KNOW ONE WAY OR ANOTHER?

24   A    WELL, I'M NOT DIRECTLY INVOLVED IN THE RETURNS

25   ANALYSIS PROCESS, SO I WOULDN'T KNOW DIRECTLY.

1    Q     WELL, CAN YOU TELL US ONE WAY OR ANOTHER

2    WHETHER SAMSUNG CONDUCTED AN INVESTIGATION ON ITS

3    OWN THAT SHOWED THAT THE GREATEST NUMBER OF

4    CUSTOMER RETURNS AT BEST BUY WERE BECAUSE THOSE

5    CUSTOMERS HAD PURCHASED A GALAXY TAB THINKING IT

6    WAS AN APPLE IPAD.

7            CAN YOU TELL US WHETHER THAT'S TRUE OR

8    NOT TRUE?

9    A     NO, I CAN'T.

10   Q     ALL RIGHT.  YOU DON'T KNOW ONE WAY OR ANOTHER;

11   CORRECT?

12   A     NO, I DON'T.

13   Q     NOW, SIR, YOU WERE ASKED SOME QUESTIONS BY

14   MR. QUINN ABOUT DOCUMENTS THAT MENTIONED A CRISIS

15   IN DESIGN.

16           DO YOU REMEMBER THAT?

17   A     I REMEMBER THAT PHRASE.

18   Q     A DIFFERENCE BETWEEN HEAVEN AND EARTH.

19           DO YOU REMEMBER THAT?

20   A     YES, I REMEMBER THAT PHRASE, TOO.

21   Q     YOU WERE ASKED ABOUT SYSTEM LSI?

22   A     YES.

23   Q     NOW, ON FRIDAY I ASKED YOU ABOUT SYSTEM LSI ON

24   AN EXHIBIT AND YOU WEREN'T QUITE SURE WHAT IT WAS.

25           DO YOU REMEMBER THAT?

988

```
1              MR. QUINN:  MISSTATES THE TESTIMONY.

2              THE COURT:  OVERRULED.

3              THE WITNESS:  I BELIEVE WHAT I SAID WAS I

4    CAN'T CONFIRM THAT THIS IS NECESSARILY A SAMSUNG

5    PRESENTATION OR SAMSUNG DIVISION THAT'S NAMED.

6    SYSTEM LSI IS KIND OF A GENERIC TECHNOLOGY IN THE

7    INDUSTRY.

8    BY MR. LEE:

9    Q    WELL, DON'T PUT THIS ON THE SCREEN.  TURN, IF

10   YOU WOULD, TO PX 34, WHICH IS TAB 15 ON THE

11   NOTEBOOK.

12             MR. QUINN:  YOUR HONOR, THERE'S NO

13   FOUNDATION.  THE COURT ALREADY SUSTAINED AN

14   OBJECTION TO THIS.

15             MR. LEE:  WELL, YOUR HONOR -- YOUR HONOR

16   SUSTAINED THE OBJECTION WHEN HE SAID HE DIDN'T KNOW

17   WHAT SYSTEM LSI WAS.

18             MR. QUINN:  YOUR HONOR, HE DIDN'T SAY HE

19   DIDN'T KNOW WHAT SYSTEM LSI WAS.

20             THE COURT:  OVERRULED.  GO AHEAD, PLEASE.

21   BY MR. LEE:

22   Q    DO YOU HAVE THAT DOCUMENT BEFORE YOU?

23   A    I DO.

24   Q    DO YOU SEE IT SAYS SYSTEM LSI?

25   A    I DO.
```

989

```
 1    Q    AND IF YOU TURN TO THE NEXT PAGE, YOU SEE THE

 2    IPHONE EFFECT ANALYSIS?

 3    A    LET'S SEE.  I'VE NOT SEEN THIS BEFORE, SO I

 4    NEED TO LOOK FOR IT.

 5              MR. QUINN:  YOUR HONOR, OBJECT TO

 6    QUESTIONING ABOUT THE DOCUMENT.  THE COURT

 7    SUSTAINED THE OBJECTION.  THERE'S NO FOUNDATION.

 8    BY MR. LEE:

 9    Q    MR. DENISON, DO YOU HAVE ANY DOUBT THAT THIS

10    IS A SAMSUNG DOCUMENT?

11    A    YES, I DO.  I HAVE NOT SEEN THIS DOCUMENT

12    BEFORE, AND I BELIEVE IT'S, IT'S BEEN TRANSLATED,

13    HASN'T IT?

14    Q    IT HAS, AND WE'VE AGREED WITH YOUR LAWYERS ON

15    WHAT THE TRANSLATION IS.

16              MR. QUINN:  YOUR HONOR, I OBJECT TO THE

17    COMMENTS BEFORE THE JURY.  THAT'S -- AND I'D

18    REQUEST THAT THAT BE STRICKEN, YOUR HONOR, THAT

19    COUNSEL'S COMMENTS ABOUT AN ALLEGED AGREEMENT BE

20    STRICKEN.

21              MR. LEE:  YOUR HONOR, IT'S JUST A

22    STATEMENT OF WHAT WE'VE COOPERATED ON SO IT'LL BE

23    EASIER FOR THE JURY.

24    Q    MR. DENISON, THE DOCUMENT SAYS ON THE BOTTOM

25    RIGHT-HAND CORNER, "PRODUCED BY SAMSUNG," IT SAYS
```

990

```
 1      "SYSTEM LSI."

 2              DO YOU HAVE ANY DOUBT THIS IS A SAMSUNG

 3      DOCUMENT?

 4      A    AGAIN, PRIOR TO PREPARING FOR THIS TESTIMONY,

 5      I HAVE NEVER SEEN THIS DOCUMENT.

 6      Q    ALL RIGHT.  AND WHEN THE LAWYERS GAVE YOU THE

 7      DOCUMENTS FOR YOUR INVESTIGATION, THIS WASN'T IN

 8      THE PACKAGE; RIGHT?

 9      A    NO.  I JUST SAID THAT I SAW THIS IN

10      PREPARATION BECAUSE IT WAS AN EXHIBIT THAT WAS

11      NAMED IN MY TESTIMONY.

12      Q    NOW, SIR, LET ME ASK YOU ABOUT THESE TWO

13      QUOTES THAT YOU TALKED TO MR. QUINN ABOUT.

14              ONE WAS A CRISIS IN DESIGN.  DO YOU

15      REMEMBER THAT?

16      A    YES, I REMEMBER THAT PHRASE.

17      Q    NOW, DID YOU SEE THAT IN A SAMSUNG DOCUMENT?

18      A    YOU KNOW, THERE WERE SO MANY DOCUMENTS THAT

19      WERE IN THE EXHIBIT LIST AND NOT IN THE EXHIBIT

20      LIST, I'M NOT SURE.

21      Q    WELL, MR. DENISON, YOU GAVE THE LADIES AND

22      GENTLEMEN OF THE JURY AN EXPLANATION FOR WHY THAT

23      STATEMENT WAS MADE BY SAMSUNG.

24              MY QUESTION IS, DID YOU SEE IT IN A

25      SAMSUNG DOCUMENT?
```

```
 1              MR. QUINN:  OBJECTION, YOUR HONOR,
 2      MISSTATES THE TESTIMONY.
 3              THE COURT:  OVERRULED.  GO AHEAD.
 4              THE WITNESS:  AGAIN, I'M NOT SURE IF I
 5      SAW IT IN PREPARATION FOR THIS TESTIMONY OR PRIOR
 6      TESTIMONY IN OTHER CASES.  SO I CAN'T ACTUALLY
 7      PINPOINT IT.
 8      BY MR. LEE:
 9      Q    ALL RIGHT.  BUT YOU KNOW THAT SAMSUNG SAID
10      THAT THERE WAS A CRISIS IN DESIGN BECAUSE OF THE
11      IPHONE; CORRECT?
12      A    NO.  WHAT I KNOW WAS WHAT MR. QUINN ASKED ME,
13      WHICH IS THERE WAS A PHRASE USED AT SOME POINT IN
14      THE TRIAL ABOUT CRISIS IN DESIGN AND WHETHER THAT
15      SEEMED LIKE A FAMILIAR THING THAT SOMEONE AT
16      SAMSUNG MIGHT SAY.  AND I SAID IT SOUNDED LIKE
17      SOMETHING THAT A SAMSUNG MANAGER OR A SENIOR LEADER
18      MIGHT SAY TO ENCOURAGE PEOPLE TO WORK HARDER AND TO
19      MOTIVATE THEM.
20      Q    WELL, LET'S SEE IF WE CAN REFRESH YOUR
21      RECOLLECTION.
22              MAY I APPROACH, YOUR HONOR?
23              THE COURT:  YES.
24      BY MR. LEE:
25      Q    I'M GOING TO GIVE YOU PLAINTIFF'S EXHIBIT 40
```

1    Q    WHAT IS THIS INTEGRATED PRODUCT DESIGN COURSE

2    THAT YOU'RE TEACHING AT THE UNIVERSITY OF

3    PENNSYLVANIA?  WHAT'S INTEGRATED PRODUCT DESIGN?

4    A    WHAT WE CALL IPD IS A PROGRAM ACTUALLY WITHIN

5    THE ENGINEERING DEPARTMENT, BUT IT IS A PROGRAM

6    THAT IS INTEGRATING THE DESIGN SCHOOL AND THE

7    BUSINESS SCHOOL AND THE ENGINEERING SCHOOL SO THAT

8    IT CAN TEACH A TEAM PROCESS OF PRODUCT DESIGN.

9    Q    ARE YOU AN INVENTOR ON ANY PATENTS?

10   A    I AM.  I'M AN INVENTOR ON APPROXIMATELY 70

11   PATENTS, ABOUT HALF OF WHICH ARE DESIGN PATENTS.

12   Q    AND DO YOU HAVE ANY EXPERIENCE PERSONALLY IN

13   DESIGNING ELECTRONIC DEVICES?

14   A    YES, SUBSTANTIAL EXPERIENCE, INCLUDING CELL

15   PHONE CONCEPTS FOR MOTOROLA; A NUMBER OF STEREO

16   COMPONENTS AND SPEAKERS FOR POLK AUDIO.

17            I'VE DONE A TABLET COMPUTER FOR A COMPANY

18   CALLED TELEPAD.

19            I'VE DONE TOUCHSCREEN GAMING DEVICES THAT

20   ARE USED IN BARS FOR A COMPANY NAMED MERIT

21   INDUSTRIES, M-E-R-I-T, AND MISCELLANEOUS LITTLE

22   THINGS LIKE DIGITAL TIRE GAUGES.

23   Q    DO YOU HAVE ANY EXPERIENCE AND/OR TRAINING IN

24   HOW ORDINARY CONSUMERS, PEOPLE WHO ARE NOT

25   DESIGNERS LIKE YOU, PERCEIVE INDUSTRIAL DESIGNS?

1    A    YES.  THROUGHOUT THE MAJORITY OF MY CAREER,

2    I'VE WORKED WITH MY CLIENTS TO WORK WITH THEIR

3    CUSTOMERS TO UNDERSTAND WHAT THEIR CONSUMERS OR

4    THEIR CUSTOMERS WANT AND WHAT THEIR CLIENT'S NEEDS

5    ARE, WHAT THE CONSUMERS' NEEDS ARE.

6              AND WE DO A GREAT DEAL OF RESEARCH WITH

7    THOSE CONSUMERS TO UNDERSTAND HOW THEY SEE THE

8    DESIGNS WE DO SO THAT WE CAN IMPROVE THOSE DESIGNS

9    TO GET THEM TO FIND THEM MORE ATTRACTIVE.

10   Q    IN YOUR EXPERIENCE, IN YOUR 40-YEAR CAREER,

11   WHAT'S THE MAIN DIFFERENCE BETWEEN THE WAY AN

12   ORDINARY CONSUMER WOULD SEE A DESIGN OF A PRODUCT

13   AND THE WAY THAT AN INDUSTRIAL DESIGNER LIKE

14   YOURSELF WOULD SEE THAT DESIGN?

15   A    SURE.  BASICALLY A TRAINED INDUSTRIAL DESIGNER

16   IS TRAINED TO PAY ATTENTION TO A LOT OF THE LITTLE

17   DETAILS THAT WORK TOGETHER TO FORM THE OVERALL

18   IMPRESSION THAT THE USUAL CONSUMER OR THE ORDINARY

19   CONSUMER WOULD VIEW.

20             SO THEY MAY SEE THOSE DETAILS, BUT THEY

21   TEND TO BE SOMEWHAT SUBCONSCIOUS AND THEY FORM AN

22   OVERALL VIEW OF WHAT THEIR IMPRESSION OF THE DEVICE

23   IS.

24   Q    NOW, ARE YOU A MEMBER OF ANY PROFESSIONAL

25   ASSOCIATIONS RELATED TO INDUSTRIAL DESIGN?

6007

```
1    A    YES.  SINCE 1973 I HAVE BEEN ASSOCIATED WITH
2    THE INDUSTRIAL DESIGNER'S SOCIETY OF AMERICA AND
3    HAVE BEEN ACTIVE IN THAT ORGANIZATION.  I WAS
4    PRIVILEGED TO BE ITS PRESIDENT FROM 1989 THROUGH
5    1990.
6    Q    AND COULD YOU TELL US WHAT THE INDUSTRIAL
7    DESIGNER'S SOCIETY OF AMERICA IS?
8    A    SURE.  THE -- WE CALL IT THE IDSA IS THE
9    EQUIVALENT OF THE ARCHITECTS, AIA, OR THE AMERICAN
10   MEDICAL ASSOCIATIONS, AMA.  IT'S A PROFESSIONAL
11   ORGANIZATION.
12   Q    I SEE ON YOUR SLIDE SUMMARIZING YOUR
13   EXPERIENCE, AFTER YOUR NAME IT SAYS FIDSA.  WHAT
14   DOES FIDSA STAND FOR, MR. BRESSLER?
15   A    THEY HAVE A GROUP IN THE SOCIETY CALLED THE
16   ACADEMY OF FELLOWS.  IT'S KIND OF A PRIVILEGE YOU
17   GET TO AFTER YOU'VE PUT A LOT OF WORK IN AND YOU
18   GET OLD ENOUGH, AND TEN YEARS AGO, I WAS ELECTED TO
19   THE ACADEMY OF FELLOWS.
20   Q    IS IT AN HONOR TO BE ELECTED TO BE A FELLOW OF
21   THAT ACADEMY?
22   A    VERY MUCH SO.  I THINK OF THE TOTAL MEMBERSHIP
23   OF 3,000, THERE MAY BE A TOTAL OF 50 FELLOWS.
24   Q    HAVE YOU RECEIVED ANY OTHER RECOGNITION FOR
25   YOUR WORK IN THE INDUSTRIAL DESIGN FIELD?
```

```
1    A    YES.  THAT SAME ORGANIZATION TWO OR THREE

2    YEARS AGO, I BELIEVE IT WAS, GAVE ME WHAT'S CALLED

3    A PERSON OF RECOGNITION AWARD, WHICH IS KIND OF A

4    LIFETIME ACHIEVEMENT THING, AGAIN, SOMETHING YOU

5    HAVE TO BE OLD TO GET.

6              MS. KREVANS:  YOUR HONOR, WE WOULD TENDER

7    MR. BRESSLER AS AN EXPERT IN THE FIELD OF

8    INDUSTRIAL DESIGN.

9              THE COURT:  ANY OBJECTION?

10              MR. VERHOEVEN:  NO OBJECTION.

11              MS. KREVANS:  ALL RIGHT.

12    Q    LET'S TURN TO THE WORK YOU DID IN THIS CASE,

13    MR. BRESSLER.

14              DID YOU CONDUCT ANALYSIS FOR THIS CASE TO

15    DETERMINE WHETHER OR NOT CERTAIN SAMSUNG PRODUCTS

16    INFRINGED ONE OF THE APPLE DESIGN PATENTS IN THE

17    CASE, THE D'677, THE D'087 OR THE D'889?

18    A    I DID.

19    Q    AND HAVE YOU FORMED ANY OPINIONS ABOUT THAT

20    TOPIC?

21    A    YES.  IT IS MY OPINION THAT THERE ARE A NUMBER

22    OF SAMSUNG PHONES AND TWO SAMSUNG TABLETS THAT ARE

23    SUBSTANTIALLY THE SAME AS THE DESIGNS IN THOSE

24    PATENTS.

25    Q    CAN YOU JUST DESCRIBE FOR THE JURY, IN A
```

```
1    GENERAL WAY, THE PROCESS YOU USED IN COMING TO YOUR
2    CONCLUSIONS ABOUT INFRINGEMENT OF THE APPLE DESIGN
3    PATENTS?
4    A    YES.  THE PROCESS FOR DOING THIS ANALYSIS IS
5    TO REVIEW ALL OF THE DRAWINGS THAT ARE IN THE
6    PATENT AND THE DESIGN THAT'S INHERENT IN THE PATENT
7    IS THOSE SPECIFIC DRAWINGS AND DONE A CERTAIN WAY.
8            YOU FIRST FORMULATE AN UNDERSTANDING OF
9    THE DESIGN THAT'S BEING CLAIMED IN THE PATENT, AND
10   THEN YOU DO AN INVESTIGATION OF WHAT'S CALLED THE
11   PRIOR ART, WHICH IS ALL OF THE DESIGNS THAT HAVE
12   BEEN IDENTIFIED THAT ARE CLEARLY DONE BEFORE THE
13   PATENT.
14           THAT GIVES YOU AN IDEA OF WHAT THE FIELD
15   OF DESIGN IS LIKE AT THE TIME THAT PATENT WAS DONE.
16           YOU THEN COMPARE THE PRODUCTS THAT YOU'RE
17   SEEING IF THEY INFRINGE, OR THAT YOU MAY BE
18   ACCUSING, YOU COMPARE THOSE TO THE DRAWINGS IN THE
19   PATENT AND IF THEY ARE, IN MY MIND, SUBSTANTIALLY
20   THE SAME TO THE EYES OF WHAT I UNDERSTAND AN
21   ORDINARY CONSUMER WOULD SEE, TO THE POINT WHERE
22   THEY MIGHT ACTUALLY MISTAKE THE PRODUCT FOR THE
23   DESIGN IN THE PATENT, THEN YOU CONSIDER THEY
24   INFRINGE.
25   Q    AND IS THE TEST YOU JUST DESCRIBED THE TEST
```

6010

```
1    YOU USED IN EACH OF YOUR ANALYSES ABOUT WHETHER ANY

2    PARTICULAR SAMSUNG PRODUCT INFRINGED ONE OF THE

3    APPLE DESIGN PATENTS?

4    A    YES.

5    Q    OKAY.  COULD YOU LOOK AT THE BINDER -- I HOPE

6    YOU HAVE A BINDER IN FRONT OF YOU.

7    A    I DO.

8    Q    OKAY.  COULD YOU LOOK IN THAT BINDER AT THE

9    EXHIBIT LIST THE TAB LABELED JX 1043, AND THIS IS

10   THE '677 PATENT ALREADY ADMITTED, I BELIEVE.

11           LET ME KNOW WHEN YOU'RE THERE,

12   MR. BRESSLER.

13   A    I'M THERE.

14   Q    OKAY.  COULD YOU LOOK AT WHAT IS BEING SHOWN

15   ON THE SCREEN, IT'S THE SECOND PAGE OF THE DOCUMENT

16   IN THE BINDER, THE COVER PAGE OF THE PRINTED

17   PORTION OF THE PATENT.

18           WHAT IS SHOWN HERE WITH RESPECT TO THE

19   '677 PATENT?

20   A    GENERALLY THE, THE ELEMENTS THAT ARE SHOWN ON

21   THE FRONT PAGE, WHICH IS ACTUALLY KIND OF AN

22   ABSTRACT OF THE WHOLE THING, WHICH SHOWS THE

23   THREE-QUARTER FRONT VIEW USUALLY OF THE DESIGN

24   BEING CLAIMED.

25           IT HAS THE PATENT NUMBER UP AT THE UPPER
```

```
 1    RIGHT-HAND CORNER.  DIRECTLY BELOW THAT IS THE DATE

 2    THAT THE PATENT WAS ISSUED.  AND IF YOU FOLLOW DOWN

 3    ON THE LEFT-HAND SIDE, YOU WILL SEE THE DATE THAT

 4    IT WAS FILED.  AND IF YOU READ CAREFULLY FURTHER,

 5    YOU'LL SEE THAT IT MAY OR MAY NOT BE PART OF

 6    SOMETHING THAT WAS FILED EARLIER.

 7              AND THEN IN THE SECOND COLUMN, THERE'S

 8    OTHER INFORMATION ON THERE, BUT THE SECOND COLUMN

 9    CONTAINS, TO ME, THE REALLY IMPORTANT STUFF, WHICH

10    IS WHAT THE CLAIM IS AND THE DESCRIPTION OF THE

11    DRAWINGS IN THE PATENT.

12    Q    BEFORE WE GET TO THE CLAIM, OVER ON THE

13    LEFT-HAND COLUMN, CAN YOU POINT OUT TO THE JURY

14    WHAT WAS THE DATE OF THE FIRST APPLICATION THAT WAS

15    FILED ON WHICH THIS PATENT ENDED UP BEING ISSUED,

16    THE EARLIEST DATE OF THE EARLIEST APPLICATION?

17    A    IF YOU READ AT THE BOTTOM OF, I THINK, THE

18    NUMBER IS 60 WITH THE LITTLE PARENS ON THE LEFT, IF

19    YOU READ AT THE BOTTOM OF THAT, YOU'LL SEE THAT

20    THIS IS A DIVISION OF AN APPLICATION WHICH IS A

21    CONTINUATION, WHICH MEANS THAT THERE'S BEEN A LOT

22    OF THEM IN A ROW, WHICH WERE ORIGINALLY FILED ON

23    JANUARY 5TH OF 2007.

24    Q    OKAY.  LOOKING OVER ON THE RIGHT-HAND SIDE

25    THEN WHERE YOU SAID WE STARTED GETTING TO THE
```

```
 1    IMPORTANT STUFF, DO YOU SEE THE PARAGRAPH -- THE

 2    SENTENCE UNDER THE PARAGRAPH THAT'S HEADED CLAIM?

 3    A    YES.

 4    Q    WHAT DOES THE '677 PATENT SAY THAT IT CLAIMS?

 5    A    IT CLAIMS "THE ORNAMENTAL DESIGN OF AN

 6    ELECTRONIC DEVICE, AS SHOWN AND DESCRIBED."

 7    Q    AND WHAT DO THE WORDS "AS SHOWN AND DESCRIBED"

 8    REFER TO?

 9    A    THEY REFER TO A LIST OF THE DRAWINGS THAT COME

10    UNDER THE HEADING DESCRIPTION RIGHT BELOW, AND IN

11    THIS CASE AND IN MOST CASES, THERE ARE EIGHT

12    DRAWINGS OR FIGURES IS WHAT THEY CALL THEM, AND

13    THEN SOMETIMES THERE ARE ADDITIONAL SPECIFICATIONS

14    THAT ARE IN A PARAGRAPH BELOW THOSE 8.  BUT IN THIS

15    CASE -- YEAH.

16    Q    OKAY.  SO LET'S KEEP THAT BLOWN UP FOR A

17    MOMENT, MR. LEE.

18         SO WE HAVE THE LIST OF EIGHT DRAWINGS,

19    AND THEN COULD WE LOOK AT THE TEXT THAT'S RIGHT

20    UNDER THAT LIST?

21         WHAT DOES THE TEXT THAT'S PART OF THE

22    DESCRIPTION OF THE D'677 UNDER THE LIST OF FIGURES

23    TELL US, MR. BRESSLER?

24    A    IT TELLS US THAT THE "THE CLAIMED SURFACE OF

25    THE ELECTRONIC DEVICE IS ILLUSTRATED WITH A COLOR
```

1    DESIGNATION FOR THE COLOR BLACK," WHICH I THINK YOU

2    CAN EVEN SEE IN THE THREE-QUARTER VIEW.

3    Q    OKAY.  AND THE NEXT SENTENCE SAYS "THE

4    ELECTRONIC DEVICE IS NOT LIMITED TO THE SCALE SHOWN

5    HERE IN."

6             WHAT DOES THAT MEAN?

7    A    AS A GENERAL RULE, RULE OF THUMB IN EXAMINING

8    DESIGN PATENTS, SIZE DOESN'T MATTER.  WHATEVER THE

9    DRAWING IS, IT COULD BE ANY SIZE AS LONG AS, IF

10   IT'S NOT SPECIFIED OTHERWISE.

11   Q    SO THE DRAWINGS DON'T PURPORT TO REPRESENT

12   WHAT THE ACTUAL SIZE OF THE DEVICE MIGHT BE?

13   A    CORRECT, UNLESS THERE IS SOME REFERENCE IN THE

14   PATENT THAT GIVES YOU AN UNDERSTANDING OF THAT

15   SIZE.

16   Q    OKAY.  CAN WE LOOK AT YOUR SLIDE PDX 26.4.

17            WHAT HAVE YOU SET OUT ON PDX 26.4,

18   MR. BRESSLER?

19   A    WHAT I'VE DONE HERE IS PUT TOGETHER A SLIDE

20   THAT SHOWS ALL OF THE VIEWS THAT YOU WOULD SEE ON

21   THE SEVERAL PAGES OF THE DESIGN PATENT INTO ONE

22   SHEET SO THAT THEY'RE EASIER TO SEE ALL AT ONE

23   TIME.

24   Q    OKAY.  SO THESE ARE THE EIGHT FIGURES THAT WE

25   JUST LOOKED AT IN THE LIST?

1    A    CORRECT.

2    Q    OKAY.  USING THESE EIGHT FIGURES OF THE '677

3    PATENT, CAN YOU WALK THE JURY THROUGH THE DESIGN

4    THAT IS CLAIMED BY THESE PICTURES?

5    A    YES.  PERHAPS SINCE IT WAS JUST DISCUSSED, YOU

6    CAN SEE FROM THE SHADING THAT WHAT'S BEING CLAIMED

7    IN THIS DESIGN IS THE FRONT FACE OF AN ELECTRONIC

8    DEVICE THAT IS BLACK IN COLOR.

9            IF YOU NOTICE THE DIAGONAL LINES, OR

10   DIAGONAL HATCHING THAT RUNS FROM ONE CORNER TO THE

11   OTHER, OR ALL THE WAY ACROSS THE FRONT FACE, THOSE

12   ARE A CONVENTION FOR INDICATING THAT IT'S

13   REFLECTIVE OR TRANSPARENT OR TRANSLUCENT.

14           AND IN THIS PARTICULAR CASE, I SEE THAT

15   IT'S TRANSPARENT BECAUSE YOU CAN SEE AT A

16   RECTANGULAR, OR WHAT WE'RE PRESUMING TO BE A

17   DISPLAY AREA THAT IS CENTERED IN THAT RECTANGULAR

18   FIELD THAT'S DEFINED THAT IT GOES END TO END ACROSS

19   THE FACE AS TRANSPARENT.

20   Q    AND WHAT FIGURE ARE WE LOOKING AT HERE,

21   MR. BRESSLER?

22   A    I'M SORRY.  WE ARE -- I TEND TO TALK OFF OF

23   FIGURE 1 BECAUSE TO ME, ALL OF THE ELEMENTS ARE

24   SEEN IN THERE.

25           BUT FOR REFERENCING THE THINGS I'M

1    SAYING, YOU COULD ALSO LOOK AT FIGURE 3 THAT SHOWS

2    IT ON A STRAIGHT ON VIEW.

3           BUT YOU SHOULDN'T NOT LOOK AT THE OTHER

4    VIEWS BECAUSE, FOR INSTANCE, FIGURE 5 AND 8 AND 7

5    AND 6 SHOW THE SIDE AND END VIEWS, AND BECAUSE

6    THERE IS A SINGLE, SOLID LINE THERE, THOSE ARE

7    INDICATING THAT ALL IT'S CLAIMING IS THAT FRONT

8    FACE.  OKAY.

9           AND THE OTHER CONVENTION IS THAT THE

10   BROKEN LINES, OR WHAT YOU MIGHT CALL DOTTED LINES,

11   THAT ARE SHOWING OTHER ILLUSTRATED PORTIONS ARE

12   ILLUSTRATING PORTIONS OF WHAT MIGHT BE A DESIGN BUT

13   ARE NOT BEING CLAIMED IN THIS PATENT.

14          SO THE ONLY THING BEING CLAIMED IS THE

15   AREA IN THE SOLID LINES.

16          A COUPLE OTHER DETAILS THAT I WANTED TO

17   POINT OUT, WHICH YOU CAN SEE BOTH IN FIGURE 3 AND

18   FIGURE 1.

19          AS I MENTIONED, THERE IS THIS

20   RECTANGULAR, I THINK I MENTIONED, THERE'S A

21   RECTANGULAR DISPLAY AREA CENTERED IN THE DEVICE

22   THAT HAS LATERAL BORDERS ON EITHER SIDE THAT ARE

23   THIN ON THE SIDE AND THEN THEY'RE WIDER ON THE TOP

24   AND BOTTOM, AND THERE IS A LOZENGE SHAPED EAR SLOT,

25   BASICALLY, OR RECEIVER SLOT IN THE UPPER BORDER

1    AREA.

2              AND THE DOTTED LINES ARE EVEN A LITTLE

3    BIT ON THE FACE THERE WHERE THEY'RE DEFINING AN

4    AREA THAT'S NOT BEING CLAIMED.

5              SO WHEN YOU LOOK AT THIS FACE, IT DOESN'T

6    MATTER TO YOU WHAT IS IN THAT SPACE BECAUSE NOTHING

7    IS BEING CLAIMED THERE.

8    Q    AND ARE YOU REFERRING THERE TO THE WHITE

9    CIRCLE INSIDE THE DOTTED LINES?

10   A    YES.

11   Q    OKAY.  WHAT DO THESE FIGURES TELL YOU ABOUT

12   THE SHAPE OF THE FRONT FACE OF THE DEVICE THAT'S

13   CLAIMED?

14   A    IT'S INDICATING THAT THE SHAPE OF THE FRONT

15   FACE OF THIS DEVICE IS A VERY SPECIFIC RECTANGULAR

16   PROPORTION AS INDICATED ON THE DRAWINGS, AS YOU CAN

17   SEE PERHAPS IN FIGURE 3, THE LENGTH AND WIDTH

18   PROPORTION IN COMPARISON TO THE CURVES ON THE

19   CORNERS, THAT'S TO PROVIDE A VERY SPECIFIC

20   IMPRESSION OR DESIGN.

21   Q    NOW, I'D LIKE YOU TO TURN TO THE '087 PATENT,

22   THAT IS EXHIBIT JX 1041 IN YOUR BINDER.

23              AND FOR THE RECORD, I THINK THIS IS

24   ALREADY ADMITTED, YOUR HONOR.

25              COULD YOU LOOK AT THE '087 PATENT?  AND

```
1    LOOKING SPECIFICALLY AT THE FIRST PRINTED PAGE,

2    TELL THE JURY WHEN THIS PATENT WAS ISSUED AND WHEN

3    IT WAS FIRST APPLIED FOR.

4    A    THIS PATENT WAS ISSUED ON MAY 26TH, 2009.  AND

5    IT WAS FIRST APPLIED FOR IN THE PARENS 63 ON

6    JANUARY 5TH, 2007.

7    Q    OKAY.  COULD YOU TURN TO THE NEXT PAGE AND TO

8    THE SECTION HEADED CLAIM.  AND TELL THE JURY WHAT

9    IS THE DESIGN THAT IS CLAIMED IN THE '087 PATENT?

10   A    AGAIN, THERE IS A SINGLE CLAIM IN THE PATENT,

11   WHICH IS "THE ORNAMENTAL DESIGN OF AN ELECTRONIC

12   DEVICE SUBSTANTIALLY AS SHOWN AND DESCRIBED," AND

13   THEN THERE'S THE LIST OF FIGURES OR DRAWINGS THAT

14   YOU'RE GOING TO SEE IN THE REST OF THE PATENT.

15   Q    NOW, IN THIS PATENT, THERE'S A MUCH LONGER

16   LIST OF DRAWINGS, RIGHT.

17   A    YES.

18   Q    THERE'S NOT -- INSTEAD OF EIGHT, THERE ARE 48?

19   A    CORRECT.

20   Q    CAN YOU EXPLAIN TO US WHY THERE ARE 48

21   DRAWINGS RATHER THAN 8 DRAWINGS IN THIS PATENT?

22   A    THIS PATENT COVERS SEVEN DIFFERENT VERSIONS,

23   OR COMBINATIONS OF ELEMENTS, OF DIFFERENT DESIGNS

24   WHICH ARE CALLED EMBODIMENTS, AND ALL OF THOSE

25   EMBODIMENTS ARE COVERED BY THE PATENT, BUT THEY'RE
```

5018

```
1    COVERED SEPARATELY.

2    Q    AND EACH OF THEM HAS EIGHT DRAWINGS?

3    A    I'M SORRY.  EACH OF THEM HAS EIGHT DRAWINGS,

4    FIGURES 1 THROUGH 8, THEN FIGURES 9 THROUGH 16, ET

5    CETERA, FOR SIX DIFFERENT VERSIONS.

6    Q    SO 6 TIMES 8 IS 48?

7    A    YES.

8    Q    SO 48 FIGURES IS 6 EMBODIMENTS?

9    A    CORRECT.

10   Q    OKAY.  COULD WE LOOK AT THE SECOND EMBODIMENT?

11         AND, THOMAS, IF YOU COULD PUT UP ON THE

12   SCREEN SIDE BY SIDE THE PAGES THAT SHOW THE EIGHT

13   FIGURES FOR THE SECOND EMBODIMENT, WHICH IS FIGURES

14   9 THROUGH 16.

15         AND YOU'LL FIND THOSE IN YOUR BINDER AS

16   WELL, MR. BRESSLER?

17   A    YES, I HAVE THEM.

18   Q    SO COULD WE SEE THE ACTUAL FIGURES.

19         GREAT.

20         USING THE DRAWINGS THAT ARE INCORPORATED

21   INTO THE CLAIMS OF THE '087 PATENT, COULD YOU WALK

22   THE JURY THROUGH THE DESIGN THAT IS CLAIMED BY

23   THESE FIGURES?

24   A    YES.

25         THIS DESIGN IS CLAIMING THE FRONT FACE,
```

1    THE FLAT FRONT FACE AND THE BEZEL OF AN ELECTRONIC

2    DEVICE.  AS YOU CAN SEE BY THE BROKEN LINES, AGAIN,

3    IT'S NOT CLAIMING THE BODY.  IT'S CLAIMING THE

4    BEZEL AND THE FRONT FACE.

5              THAT FRONT FACE IS A RECTANGULAR DESIGN

6    WITH ROUNDED CORNERS IN THE PROPORTIONS AND THE

7    SCALE, LENGTH TO WIDTH AND PROPORTIONAL RATIOS THAT

8    ARE BEING SHOWN HERE IN THE DRAWING.

9              AND IT INCLUDES A RECTANGULAR DISPLAY, AS

10   DID THE OTHER PATENT, WITH NARROW BORDERS ON EITHER

11   SIDE AND WIDER BORDERS TOP AND BOTTOM.

12             AND IT SHOWS THAT RECTANGULAR FRONT FACE

13   AREA AS NOT HAVING ANY SPECIFICATION.  IT DOESN'T

14   HAVE DIAGONAL CROSS ACTION, IT DOESN'T HAVE

15   SHEETING.  SO THAT FLAT FRONT SURFACE COULD BE ANY

16   COLOR.  IT COULD BE TRANSPARENT.  IT COULD BE

17   ANYTHING.  NOTHING IS BEING SPECIFIED.

18             THE OTHER PART OF IT TO NOTICE IS IN THE

19   SIDE VIEWS THAT, AGAIN, THIS IS SPECIFYING A FRONT

20   FACE AND BEZEL THAT ARE ABSOLUTELY FLAT.

21             MS. KREVANS:  YOUR HONOR, MAY I APPROACH

22   THE WITNESS AND HAND HIM SOME OF THE PHONES --

23             THE COURT:  YES.

24             MS. KREVANS:  -- HE HAS TO TALK ABOUT?

25             THE WITNESS:  THANK YOU.

```
1              THE COURT:  LET'S BREAK AT 10:25.  OKAY?

2    THANK YOU.

3    BY MS. KREVANS:

4    Q    MR. BRESSLER, I'VE HANDED YOU FOUR PHONES, THE

5    ORIGINAL IPHONE; THE 3G; THE 3GS; AND THE IPHONE 4.

6              THOSE ARE EXHIBITS JX 1000, 1001, 1002

7    AND 1003, ALL IN EVIDENCE, YOUR HONOR.

8              DID YOU STUDY THESE IPHONES FOR THIS

9    CASE?

10   A    I DID.

11   Q    OKAY.  COULD YOU LOOK AT PX 8 IN YOUR BINDER.

12   THAT'S GOING TO BE BACK CLOSER TO THE FRONT.  WHAT

13   IS PX 8, MR. BRESSLER?

14   A    PX 8 IS A PHOTOGRAPHIC PRESENTATION OF ALL OF

15   THE VIEWS OF ALL OF THE PHONES THAT YOU PRESENTED

16   TO ME.

17   Q    SO PX 8 SHOWS A COLLECTION OF PHOTOS OF ALL

18   THE DIFFERENT VIEWS OF THE FOUR IPHONES THAT I JUST

19   GAVE YOU, THE ORIGINAL, 3G, 3GS, AND 4?

20   A    CORRECT.  AND THEY'RE IN VIEWS THAT YOU MIGHT

21   SEE THEM -- SEE A DESIGN THAT IS SIMILAR TO THEM IN

22   THE PATENT.

23   Q    OKAY.

24              YOUR HONOR, WE'D MOVE THE ADMISSION OF PX

25   8.
```

```
 1                 THE COURT:  ANY OBJECTION?

 2                 MR. VERHOEVEN:  IT'S A DEMONSTRATIVE,

 3       YOUR HONOR, SO MY UNDERSTANDING IS DEMONSTRATIVES

 4       SHOULDN'T BE INTRODUCED INTO EVIDENCE.

 5                 MS. KREVANS:  YOUR HONOR, IT'S NOT A

 6       DEMONSTRATIVE.  IT WAS OFFERED AS AN EXHIBIT.

 7       THERE WERE OBJECTIONS THAT WERE MADE PREVIOUSLY

 8       THAT YOUR HONOR HAS OVERRULED.

 9                 THE COURT:  IT'S ADMITTED.

10                 (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 8,

11                 HAVING BEEN PREVIOUSLY MARKED FOR

12                 IDENTIFICATION, WAS ADMITTED INTO

13                 EVIDENCE.)

14                 THE COURT:  GO AHEAD.

15       BY MS. KREVANS:

16       Q    DID YOU REACH ANY CONCLUSIONS, MR. BRESSLER,

17       ABOUT WHETHER THE DESIGNS OF THE IPHONE ARE ANY OF

18       THE IPHONES IN FRONT OF YOU WERE THE DESIGN OF THE

19       D'677 PATENT?

20       A    YES.  I BELIEVE ALL OF THESE PHONES ARE

21       SUBSTANTIALLY THE SAME AS THE '677 PATENT.

22       Q    OKAY.  COULD WE SEE YOUR SLIDE 26.5, PLEASE,

23       MR. LEE.

24                 WHAT HAVE YOU DEPICTED ON YOUR SLIDE

25       26.5?
```

5022

```
 1    A    26.5 IS EFFECTIVELY A FOUR-WAY COMPARISON, IF

 2    YOU WILL, THAT SHOWS ALL OF THE FIGURES OF THE '677

 3    DESIGN PATENT, AND IT SHOWS THE CORRESPONDING VIEWS

 4    OF EACH OF THE ORIGINAL IPHONE, THE 3G AND 3GS AND

 5    THE 4.

 6            I THINK IT ILLUSTRATES FAIRLY CLEARLY

 7    THAT ALL OF THEM EMBODY THE DESIGN THAT YOU SEE IN

 8    THE '677 PATENT.

 9    Q    OKAY.  LET ME ASK YOU A QUESTION ON ONE

10    SPECIFIC ASPECT OF THIS DESIGN.

11            DOES THE -- DO THE DRAWINGS IN THE D'677

12    PATENT TELL YOU WHETHER THE MATERIAL THAT'S THE

13    SURFACE OF THE FLAT FRONT FACE YOU DESCRIBED IS THE

14    SAME MATERIAL, EDGE TO EDGE, ACROSS THE WHOLE FACE?

15    A    YES, IT DOES.

16            AS I MENTIONED IN MY DESCRIPTION OF THE

17    '677 PATENT, THE DIAGONAL LINE, IF YOU LOOK AT

18    THEM, I THINK I POINTED IT OUT, GO FROM ONE

19    DIAGONAL CORNER TO THE OTHER ALL THE WAY,

20    UNINTERRUPTED, ACROSS, AND THAT FRONT DIAGONAL

21    CROSS ACTION SHOWS THAT IT GOES ALL THE WAY ACROSS

22    THE FACE.

23    Q    OKAY.  DID YOU DO A SIMILAR ANALYSIS TO

24    DETERMINE WHETHER ANY OF THE FOUR IPHONES I GAVE

25    YOU INCORPORATE THE DESIGN OR EMBODY THE DESIGN OF
```

1    THE '087 PATENT?

2    A    I DID.

3    Q    AND IF WE COULD SEE YOUR SLIDE -- I'M SORRY.

4    WHY DON'T WE DO THIS.  CAN WE SHOW FIGURE 9 FROM

5    THE '087 PATENT, MR. LEE?

6              OKAY.  AND THE IPHONE NEXT TO IT.

7              WHAT ARE WE LOOKING AT IN THIS

8    COMPARISON, MR. BRESSLER?

9    A    THIS IS A COMPARISON BETWEEN FIGURE 9 OF THE

10   '087 PATENT AND -- WHICH IS THE THREE-QUARTER FRONT

11   VIEW, AND A THREE-QUARTER FRONT VIEW OF WHAT

12   APPEARS, IN THIS PHOTOGRAPH, TO BE THE ORIGINAL

13   IPHONE.

14   Q    OKAY.  AND WHAT DID YOU CONCLUDE WITH RESPECT

15   TO THE ORIGINAL IPHONE AND THE '087 PATENT?

16   A    I BELIEVE THE DESIGN OF THE FRONT FACE AND

17   BEZEL IS, IS EXACTLY THE SAME AS EMBODIED IN THIS

18   PHONE.

19   Q    WHAT CONCLUSION DID YOU DRAW ABOUT WHETHER THE

20   IPHONE AND THE IPHONE 3GS EMBODY THE DESIGN OF THE

21   PATENT?

22   A    I BELIEVE THEY DO AS WELL.

23   Q    AND WHAT ABOUT THE IPHONE 4, AND MAYBE YOU

24   COULD HOLD THE IPHONE 4 UP FOR THE JURY, WHAT

25   CONCLUSION DID YOU DRAW ABOUT WHETHER OR NOT THE

5024

```
 1    IPHONE 4 EMBODIED THE DESIGN OF THE '087 PATENT?

 2    A    I BELIEVE THE IPHONE 4 DOES NOT EMBODY THE

 3    DESIGN OF THE '087 PATENT.

 4    Q    AND WHY IS THAT?

 5    A    BECAUSE IT DOES NOT HAVE A BEZEL THAT DIRECTLY

 6    SURROUNDS THE FRONT FACE.  IT HAS A BAND THAT GOES

 7    AROUND THE EDGE.

 8           SO IT WOULD APPEAR THAT GLASS ACTUALLY

 9    STANDS UP IN FRONT OF THE BAND, SO YOU DON'T REALLY

10    SEE A CLEAR BEZEL.

11    Q    OKAY.  ONE OTHER DETAIL ABOUT THE '087 DESIGN,

12    I KNOW WE'RE LOOKING AT ONE FIGURE HERE, BUT THE,

13    THE SHAPE OF THE -- I THINK YOU CALLED IT A LOZENGE

14    SHAPED SPEAKER SLOT AT THE TOP, IS THAT CLAIMED IN

15    THE '087 PATENT IN THE SECOND EMBODIMENT?

16    A    ACTUALLY, IT'S KIND OF IN THE THIRD EMBODIMENT

17    AND IN THE SIXTH.

18    Q    BUT NOT IN THE SECOND?

19    A    BUT NOT IN THE SECOND.

20    Q    SO THAT'S ANOTHER EMBODIMENT THAT DOES THAT?

21    A    YES, IT'S IN THE PATH.

22           MS. KREVANS:  OKAY.  YOUR HONOR, THIS

23    WOULD BE A CONVENIENT TIME AND I THINK IT'S ABOUT

24    10:25.

25           THE COURT:  ALL RIGHT.  IT'S 10:27.
```

6025

```
 1    LET'S TAKE OUR BREAK.

 2              I HAVE SOME ISSUES I'D LIKE TO SPEAK WITH

 3    THE LAWYERS ABOUT.  WE'LL TAKE A SLIGHTLY LONGER

 4    BREAK THIS TIME.  LET'S SAY 10:50, OKAY?

 5              SO, AGAIN, PLEASE KEEP AN OPEN MIND.

 6    PLEASE DON'T SPEAK WITH ANYONE ABOUT THE CASE AND

 7    PLEASE DON'T DO ANY RESEARCH OR READING ABOUT THE

 8    CASE.  ALL RIGHT.  THANK YOU.

 9              WE'LL SEE YOU BACK AT 10:50.

10              (WHEREUPON, THE FOLLOWING PROCEEDINGS

11    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

12              THE COURT:  ALL RIGHT.  YOU CAN STEP

13    DOWN.

14              THE RECORD SHOULD REFLECT THE JURORS HAVE

15    LEFT THE COURTROOM.

16              I JUST WANTED TO MAKE SURE THAT THERE

17    AREN'T ANY ISSUES WITH SOME OF THESE EXHIBITS.

18              NOW, WITH YOUR DEMONSTRATIVE 684, THAT

19    HAS THE F700 IN IT, WHICH HAS BEEN EXCLUDED.  SO

20    WHY ARE YOU STILL TRYING TO GET THAT IN?

21              MR. VERHOEVEN:  YOUR HONOR, I DON'T

22    BELIEVE -- I DON'T BELIEVE THE F700 HAS BEEN

23    EXCLUDED.  THOSE WERE -- I THINK YOU EXCLUDED

24    INTERNAL DEVELOPMENT DOCUMENTS.  THE F700 ITSELF

25    HAS NOT BEEN EXCLUDED AND, IN FACT, IS RELIED UPON
```

5026

```
1    BY THIS WITNESS AS AN ALTERNATIVE DESIGN IN HIS
2    EXPERT REPORTS.
3              AND SO WE THINK THAT THE FACT THAT THIS
4    WITNESS HAS PROFFERED THE F700 --
5              THE COURT:  ALL RIGHT.  LET ME SEE, WHERE
6    IN HIS REPORT DOES HE TALK ABOUT THE F700?  SHOW
7    ME.  I WANT TO SEE THE ACTUAL DOCUMENTS.
8              MR. VERHOEVEN:  YES, YOUR HONOR.
9              THE COURT:  WELL, I HAVE HIS REPORT HERE.
10   YOU JUST GIVE ME A PAGE NUMBER, AND I CAN LOOK AT
11   IT MYSELF.
12             MS. KREVANS:  YOUR HONOR, IF I MAY.
13             THE COURT:  YEAH.
14             MS. KREVANS:  FOR COMPLETENESS, BECAUSE
15   WE WERE NOT SURE HOW ALL THE RULES WERE GOING TO
16   COME OUT IN THE CASE, THIS WITNESS DID GIVE SOME
17   OPINIONS IN HIS REPORT ABOUT THE F700.  WE DON'T
18   INTEND TO OFFER ANY TODAY.
19             THE COURT:  IF IT'S IN THERE, WHY
20   SHOULDN'T IT COME IN?
21             MS. KREVANS:  BECAUSE, YOUR HONOR, THE
22   F700 IS NOT AN ACCUSED PRODUCT IN THE CASE.  IT IS
23   NOT THE BASIS FOR ANY DESIGN OF ANY PRODUCT WHICH
24   IS ACCUSED, AND THE THEORY OF INDEPENDENT
25   DEVELOPMENT THAT SAMSUNG HAS OFFERED SUPPOSEDLY FOR
```

6046

1    YOU READ MEANS THAT APPLE WASN'T TRYING TO DISCLAIM

2    THE MAN SHOWING THIS PICTURE ACTUALLY HOLDING THE

3    DEVICE?

4    A    CORRECT.

5    Q    BUT THE DEVICE AND THE UTILITY IS WHAT'S

6    CLAIMED?

7    A    YES.

8    Q    OKAY.  LET'S LOOK AT YOUR SLIDE PDX 26.6.  IS

9    THIS THE FIRST -- IN FACT, THIS IS ALL OF THE

10   FIGURES OF THE '889 PATENT?

11   A    YES.  THIS IS A SLIDE INCLUDING ALL THE

12   FIGURES.

13   Q    OKAY.  USING THESE FIGURES OF THE '889 PATENT,

14   CAN YOU WALK THE JURY THROUGH THE DESIGN THAT IS

15   CLAIMED AND SHOWN IN THESE FIGURES?

16   A    YES.  THIS DESIGN INCLUDES AN ELECTRONIC

17   DEVICE THAT HAS A FLAT, TRANSPARENT, AS YOU CAN SEE

18   BY THE DIAGONAL LINES, AND SHINY, FLAT SURFACE THAT

19   GOES IN A RECTANGULAR FORM AS SHOWN IN THE DRAWING

20   FROM EDGE TO EDGE ACROSS THE FRONT OF THE DEVICE.

21        IT MEETS A THIN EDGE AT THE BORDER AND

22   YOU CAN SEE THROUGH THAT CLEAR MATERIAL A BORDER

23   THAT GOES AROUND THE DISPLAY THAT IS OF EQUAL WIDTH

24   ALL THE WAY AROUND.

25        AND THEN IF YOU LOOK -- I WAS LOOKING AT

```
1    FIGURES 1 AND 3.

2              IF YOU THEN LOOK AT THE OTHER FIGURES,

3    YOU CAN SEE THAT THE BACK OF THE PRODUCT IS FLAT

4    AND THAT -- OR THE BACK OF THE DESIGN IS FLAT AND

5    THAT THE SLIDES CURVE UP TO MEET THE FRONT FROM THE

6    BACK.

7    Q    AND WHAT DO THE FIGURES OF THE '889 PATENT

8    TELL US ABOUT THE OVERALL SHAPE OF THE FRONT OF THE

9    DEVICE?

10   A    THE OVERALL SHAPE OF THE FRONT OF THE DEVICE

11   IS A RECTANGLE IN THE PROPORTION THAT'S SHOWN IN

12   THE DESIGN.

13   Q    WHAT DO YOU MEAN BY "PROPORTION"?

14   A    THE LENGTH TO WIDTH RELATIONSHIP SHOULD BE --

15   SHOULD BE SEEN AS THIS OVERALL DESIGN.

16             AND IT HAS CORNERS THAT ARE RADIUS.

17   Q    NOW, IF I'VE DONE THIS RIGHT, MR. BRESSLER,

18   ONE OF THE MANY DEVICES ON THE TABLE IN FRONT OF

19   YOU SHOULD BE THE IPAD 2, WHICH IS JX 1005.  THERE

20   ARE MANY THINGS THERE.

21             HAVE YOU FOUND JX 1005?

22   A    I'M JUST CHECKING THE STICKER.  YES.

23   Q    OKAY.  AND CAN WE SEE PDX 26.7?

24             WHAT HAVE YOU DEPICTED IN SLIDE 26.7?

25   A    THIS IS A COMPARISON OF THE '889 PATENT AND
```

```
 1    THE IPAD 2.

 2    Q    AND WHAT DID YOU CONCLUDE FROM COMPARING THE

 3    '889 PATENT TO THE IPAD 2?

 4    A    I CONCLUDED THAT THE DESIGN OF THE IPAD 2 IS

 5    SUBSTANTIALLY THE SAME AS THE DESIGN '889 AND WOULD

 6    BE IN THE EYES OF THE ORDINARY OBSERVER.

 7    Q    SO APPLE'S OWN IPAD 2 PRODUCT IS USING THE

 8    DESIGN OF APPLE'S PATENT?

 9    A    YES.

10    Q    OKAY.  LET'S TURN TO SAMSUNG'S PRODUCTS, AND

11    I'D LIKE YOU TO GO FIRST TO EXHIBIT PX 7 IN YOUR

12    BINDER.

13              YOU CAN PUT THE IPAD 2 ASIDE FOR NOW.

14              WHAT IS EXHIBIT PX 7?

15    A    EXHIBIT PX 7 IS A PHOTOGRAPHIC COMPILATION OF

16    ALL OF THE SAMSUNG -- OF ALL OF THE SAMSUNG PHONES

17    THAT WERE CONSIDERED IN THIS CASE.

18    Q    OKAY.  WHEN YOU SAY "CONSIDERED," DO YOU MEAN

19    CONSIDERED BY YOU?

20    A    THESE WERE THE ONES THAT WERE REVIEWED BY ME

21    RELATIVE TO THE DESIGN PATENTS.

22              MS. KREVANS:  OKAY.  YOUR HONOR, I'D MOVE

23    PX 7 INTO EVIDENCE.

24              MR. VERHOEVEN:  NO FURTHER OBJECTION.

25              THE COURT:  ALL RIGHT.  THAT'S ADMITTED.
```

5049

```
 1              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 7,

 2              HAVING BEEN PREVIOUSLY MARKED FOR

 3              IDENTIFICATION, WAS ADMITTED INTO

 4              EVIDENCE.)

 5     BY MS. KREVANS:

 6     Q    OKAY.  ALSO ON THE TABLE IN FRONT OF YOU

 7     SHOULD BE EXHIBIT JX 1019, WHICH SHOULD BE THE

 8     GALAXY S 4G.

 9     A    YES.

10     Q    DO YOU HAVE THAT, MR. BRESSLER?

11     A    I DO.

12     Q    IS THIS ONE OF THE SAMSUNG PHONES THAT YOU

13     ANALYZED?

14     A    IT IS.

15     Q    AND WHAT CONCLUSION DID YOU COME TO ABOUT

16     WHETHER THE GALAXY S 4G INFRINGED EITHER THE D'677

17     OR D'087 PATENT?

18     A    IT'S MY OPINION THAT THIS PHONE, THE DESIGN OF

19     THIS PHONE WOULD BE CONSIDERED SUBSTANTIALLY THE

20     SAME AS THE DESIGN OF THE '087 AND '677 PATENTS BY

21     AN ORDINARY OBSERVER.

22     Q    SO THIS IS A PHONE THAT YOU FOUND INFRINGING?

23     A    I FOUND IT INFRINGING, YES.

24     Q    OKAY.  LET'S START WITH THE '677.  CAN WE LOOK

25     AT YOUR SLIDE PDX 26.11?
```

5050

```
 1         WHAT HAVE YOU DEPICTED IN YOUR SLIDE
 2    26.11, MR. BRESSLER?
 3    A    THIS IS A VISUAL COMPARISON OF THE CLAIMED
 4    DESIGN AND THE FIGURES THAT SUPPORT THAT CLAIM AND
 5    THE SAMSUNG GALAXY S 4G.
 6    Q    OKAY.  AND DO YOU HAVE THE S 4G THERE?
 7    A    I DO.
 8         MS. KREVANS:  OKAY.  YOUR HONOR, MAY I
 9    ALLOW THE JURY TO PASS THE S 4G AROUND WHILE THEY
10    SEE THIS DEPICTION OF THE PATENT FIGURES?
11         THE COURT:  THAT'S FINE.
12    BY MS. KREVANS:
13    Q    COULD YOU WALK US THROUGH THE BASIS FOR YOUR
14    OPINION THAT THE GALAXY S 4G PHONE INFRINGED THE
15    D'677 PATENT UNDER THE TEST THAT YOU EXPLAINED TO
16    US BEFORE THE BREAK?
17    A    YES.  THE GALAXY S 4G HAS A FLAT,
18    UNINTERRUPTED SURFACE THAT IS RECTANGULAR IN
19    PROPORTIONS DESCRIBED IN THE '677 PATENT; IT RUNS
20    EDGE TO EDGE ACROSS THE FRONT OF THE PHONE AND IS
21    TRANSPARENT AND IS BLACK; AND IT HAS A DISPLAY THAT
22    IS CENTERED ON THE FACE OF THE PHONE AND A LOZENGE
23    SHAPED SPEAKER SLOT, AND I FIND THOSE FEATURES TO
24    BE SUBSTANTIALLY THE SAME.
25    Q    NOW, I SEE THAT THE GALAXY S 4G HAS A LITTLE
```

1    BUMP STICKING OUT OF THE BOTTOM OF THE BACK OF THE

2    PHONE.  DO YOU SEE THAT?

3    A    I DO.

4    Q    DID YOU CONSIDER THAT IN YOUR ANALYSIS AS TO

5    WHETHER IT HAD THE SAME SIGN AS THE '677 DESIGN?

6    A    IT WAS NOT PART OF THE CLAIMED DESIGN.

7    Q    SO YOU DIDN'T CONSIDER IT?

8    A    I LOOKED AT IT BUT DID NOT CONSIDER IT AS PART

9    OF MY ANALYSIS.

10   Q    AND CAN YOU REMIND US WHY IT IS NOT PART OF

11   THE CLAIMED DESIGN, AND, THEREFORE, NOT PART OF

12   YOUR ANALYSIS?

13   A    BECAUSE IT IS THE BACK OF THE PHONE AND THIS

14   PATENT IS SPECIFICALLY FOR THE FACE OF THE PHONE.

15   Q    OKAY.  AND YOU MENTIONED WHEN YOU DESCRIBED

16   THE TEST YOU APPLIED TO US BEFORE THE BREAK THAT

17   YOU TOOK PRIOR ART INTO ACCOUNT IN DOING THAT TEST.

18        DID YOU ACCOUNT FOR -- CAN YOU EXPLAIN TO

19   THE JURY HOW YOU ACCOUNTED FOR PRIOR ART IN DOING

20   YOUR ANALYSIS OF WHETHER THIS GALAXY S 4G PHONE

21   THAT THE JURY IS LOOKING AT RIGHT NOW INFRINGED THE

22   D'677 PATENT?

23   A    YES.  THE POINT OF THIS PROCESS IS TO EXAMINE

24   THE PRIOR ART THAT YOU CAN FIND, AND PREFERABLY

25   THOSE PIECES OF PRIOR ART THAT IS MOST LIKE THE

```
 1    '677 PATENT, AND YOU COMPARE THE PATENTED DESIGN TO

 2    THE DESIGN IN THE CLOSEST PRIOR ART AND YOU TRY TO

 3    DETERMINE THE MOST SIGNIFICANT DIFFERENCES BETWEEN

 4    THE PRIOR ART AND THE PATENTED DESIGN.

 5             AND IF YOU CAN FIND THOSE SIGNIFICANT

 6    DIFFERENCES IN THE ACCUSED PRODUCT, THAT

 7    SUBSTANTIATES YOUR BELIEF THAT THEY INFRINGE.

 8    Q    OKAY.  LET'S LOOK AT YOUR SLIDE PDX 26.12.

 9             CAN YOU, USING THIS SLIDE, EXPLAIN TO THE

10    JURY HOW YOU DID THIS PRIOR ART ANALYSIS THAT YOU

11    JUST DESCRIBED?

12    A    YES.

13    Q    AND WHY DON'T YOU START WITH TELLING THE JURY

14    WHAT THE PIECE OF PRIOR ART IS THAT'S SHOWN AND WHY

15    YOU CHOSE THAT PIECE OF PRIOR ART.

16    A    THE LEFT-HAND COLUMN IS THE SAME EIGHT VIEWS

17    AS THE OTHER COLUMNS, AND IT DEPICTS WHAT'S SHOWN

18    AS THE JP '638 PATENT, WHICH IS THE PRIOR ART THAT

19    SAMSUNG CLAIMED TO BE THE CLOSEST TO THE PATENTS IN

20    QUESTION.

21    Q    SO WHEN YOU DID THIS TEST, YOU USED WHAT

22    SAMSUNG SAID WAS THEIR BEST SHOT AT PRIOR ART FOR

23    THIS PHONE?

24    A    CORRECT.

25    Q    OKAY.  AND THAT'S THE JP '638?
```

1    A    CORRECT.

2    Q    OKAY.  TELL US WHAT DIFFERENCES YOU SAW

3    BETWEEN THE DESIGN OF THE JP '638 AS SHOWN ON THE

4    LEFT AND THE DESIGN OF THE D'677 AS SHOWN IN THE

5    MIDDLE?

6    A    I BELIEVE THERE ARE SIGNIFICANT DIFFERENCES.

7    IF YOU LOOK AT THE TOP, TOP FIGURE, WHICH SHOWS THE

8    THREE-QUARTER VIEW, AND IF YOU LOOK DOWN TWO LAYERS

9    TO THE SIDE VIEWS, I BELIEVE IT IS VERY CLEAR THAT

10   THE FRONT OF THE '638 PATENT IS NOT FLAT.  IT, IN

11   FACT, IS CONVEX AND HAS SLOPING BORDERS ABOVE AND

12   BELOW THE DISPLAY THAT SLOPE BACK TOWARD THE REAR

13   OF THE PHONE FROM THE DISPLAY.

14            SO IT IS NOT FLAT.

15            IN ADDITION TO THAT, THERE IS NO

16   INDICATION IN THE PATENT THAT IT -- THAT ANY PART

17   OF IT IS TRANSPARENT OR REFLECTIVE, AND THERE IS NO

18   INDICATION THAT IT IS BLACK.

19            SO I TOOK THOSE DIFFERENCES AND BASICALLY

20   COMPARED THE GALAXY S 4G, USING JUST THOSE

21   DIFFERENCES, AND I THINK IT SUPPORTS MY PREMISE

22   THAT THE S 4G INFRINGES ON THE '677.

23   Q    OKAY.  DID YOU REACH THE CONCLUSION THAT ANY

24   OF THE OTHER SAMSUNG PHONES THAT YOU ANALYZED ALSO

25   INFRINGED THE D'677 PATENT?

5054

1    A    I DID.

2    Q    DID YOU REACH THAT CONCLUSION FOR EVERY

3    SAMSUNG PHONE THAT YOU LOOKED AT?

4    A    NO, NOT AT ALL.

5    Q    OKAY.  COULD YOU LOOK AT THE PHONES THAT ARE

6    IN FRONT OF YOU WITH THE FOLLOWING EXHIBIT NUMBERS:

7    THEY SHOULD, I HOPE, BE IN FRONT OF YOU:

8              THE GALAXY S I9000, WHICH IS JX 1007; THE

9    S II, AT&T, WHICH IS 1031; THE S II I9100, WHICH IS

10   JX 1032; THE SG EPIC 4G TOUCH, WHICH IS JX 1034;

11   THE S II SKYROCKET, JX 1035; THE INFUSE 4G, JX

12   1027; THE VIBRANT, JX 1010; THE GALAXY S II,

13   T-MOBILE, JX 1033; THE GALAXY S SHOWCASE I 500, JX

14   1017; MESMERIZE, JX 1015?

15             THE COURT:  I'M NOT ABLE TO GET THIS,

16   THESE ARE TOO FAST.

17             MS. KREVANS:  THESE ARE ALREADY IN EXCEPT

18   FOR ONE.

19             THE COURT:  I KNOW, BUT I'M RECORDING

20   WHICH WITNESS LOOKS AT WHICH EXHIBIT.

21             MS. KREVANS:  THE MESMERIZE, 1015, AND

22   GALAXY ACE, JX 1030.

23   Q    DO YOU HAVE THOSE PHONES IN FRONT OF,

24   MR. BRESSLER?

25   A    I DO.

5055

```
1              MS. KREVANS:  YOUR HONOR, I BELIEVE THAT
2    ALL OF THESE EXCEPT FOR THE GALAXY S SHOWCASE I 500
3    HAVE BEEN ADMITTED INTO EVIDENCE, THAT IS 1017.
4    JUST OUT OF AN ABUNDANCE OF CAUTION, I OFFER IT AT
5    THIS TIME IN CASE IT IS NOT ALREADY IN.
6              THE COURT:  IT'S ADMITTED.
7              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
8              17, HAVING BEEN PREVIOUSLY MARKED FOR
9              IDENTIFICATION, WAS ADMITTED INTO
10             EVIDENCE.)
11   BY MS. KREVANS:
12   Q    OKAY.  CAN YOU REACH A CONCLUSION ABOUT
13   WHETHER OR NOT EACH OF THOSE PHONES ALSO INFRINGED
14   THE D'677 PATENT, MR. BRESSLER?
15   A    YES.  I CONDUCTED THE SAME ANALYSIS ON THE
16   REST OF THESE PHONES THAT I DID ON THE S 4G AND
17   CONCLUDED THAT THEY INFRINGE THE '677 PATENT.
18   Q    AND ON WHAT BASIS DID YOU DRAW THAT
19   CONCLUSION?
20   A    IT'S MY OPINION THAT IN THE EYES OF THE
21   ORDINARY OBSERVER WHO IS FAMILIAR WITH THE PRIOR
22   ART, IF THEY WOULD INVESTIGATE, WOULD FIND THE
23   DESIGN ELEMENTS OF THE '677 PATENT IN THE DESIGN OF
24   THE GALAXY S 4G TO THE DEGREE THEY MIGHT MISTAKE
25   ONE FOR THE OTHER.
```

```
1    Q    AND WITH RESPECT TO THE OTHER PHONES THAT YOU

2    EXAMINED THAT ARE NOW IN FRONT OF YOU, THE PHONES

3    IN ADDITION TO THE GALAXY S 4G, DO YOU HAVE A SLIDE

4    THAT DEPICTS THOSE PHONES?

5    A    I BELIEVE SO.

6    Q    OKAY.  LET'S PUT UP PDX 26.13.

7            NOW, ON THIS SLIDE, MR. BRESSLER, YOU'RE

8    SHOWING ONLY THE FRONT VIEW OF EACH OF THE OTHER

9    PHONES THAT YOU SAY YOU FOUND INFRINGED.

10            DID YOU, IN FACT, CONSIDER ALL THE -- ALL

11   EIGHT VIEWS OF THESE PHONES AS WELL?

12   A    CORRECT.  THIS, THIS PRESENTATION WOULD NOT BE

13   APPROPRIATE FOR EVALUATING THE DESIGNS BECAUSE IT

14   DOES NOT SHOW ALL OF THE VIEWS, WHICH YOU NEED TO

15   CONSIDER.

16            HOWEVER, FROM THE STANDPOINT OF SIMPLY

17   SHOWING THE FRONT FACE, WHICH THIS PATENT HAPPENS

18   TO BE CLAIMING, I THINK IT WAS A REASONABLE WAY OF

19   PRESENTING A LIST OF PHONES.

20   Q    OKAY.  AND DID YOU CONCLUDE THAT EACH OF THE

21   PHONES ON THIS SLIDE, THAT IS, THE GALAXY SAMSUNG

22   SMART 4G; THE GALAXY S I9000; THE GALAXY ACE; THE

23   GALAXY S II AT&T; THE GALAXY S II T-MOBILE; THE

24   GALAXY S II EPIC 4G TOUCH; THE GALAXY S II

25   SKYROCKET; THE SHOWCASE; MESMERIZE; AND FASCINATE,
```

```
 1    WHICH ARE THE I 500; THE INFUSE 4G; THE GALAXY S II

 2    I9100; AND THE VIBRANT ALL INFRINGE THE D'677

 3    PATENT?

 4    A    YES.

 5    Q    AND WHAT WAS THE BASIS FOR THAT CONCLUSION?

 6    A    THE BASIS FOR THAT CONCLUSION WAS I BELIEVE

 7    THE ORDINARY OBSERVER WOULD CONSIDER THE DESIGN OR

 8    APPEARANCE OF THESE PHONES TO BE SUBSTANTIALLY THE

 9    SAME AS THAT OF THE '677.

10    Q    NOW, LET'S TURN TO THE D'087 PATENT AND LET'S

11    GO BACK JUST TO THE GALAXY S 4G JUST FOR A MOMENT.

12         MR. LEE, COULD YOU PUT UP FIGURES 9

13    THROUGH 16 OF THE D'087 PATENT, WHICH IS JX 1041

14    SIDE BY SIDE SO WE CAN SEE THEM ALTOGETHER.

15         AND DO YOU HAVE THE GALAXY S -- I'M

16    SORRY.  I HAVE THE GALAXY S 4G BACK.  LET ME BRING

17    THIS BACK TO YOU, MR. BRESSLER.

18         MAY I APPROACH THE WITNESS, YOUR HONOR?

19         THE COURT:  GO AHEAD, PLEASE.

20    BY MS. KREVANS:

21    Q    NOW, YOU SAID EARLIER THAT YOU CONCLUDED THAT

22    THE GALAXY S 4G ALSO INFRINGED THE D'087 PATENT;

23    RIGHT?

24    A    THAT'S CORRECT.

25    Q    COULD YOU -- YOU CAN HOLD THE PHONE UP FOR THE
```

1    JURY IF YOU LIKE.

2              COULD YOU DESCRIBE FOR THE JURY THE BASIS

3    FOR YOUR CONCLUSION THAT THE DESIGN AS CLAIMED BY

4    THESE EIGHT FIGURES OF THE D'087 PATENT IS

5    INFRINGED BY THE GALAXY S 4G TELEPHONE?

6    A    I BELIEVE THAT, LOOKING AT THE CONTINUOUS FLAT

7    FACE THAT IS IN THE LENGTH TO WIDTH PROPORTIONS

8    DESCRIBED IN THIS PATENT AND THE CURVED CORNERS AND

9    THE CENTERED DISPLAY AND THE BEZEL, I BELIEVE ALL

10   OF THOSE ELEMENTS ARE PRESENT IN THE DESIGN OF THE

11   S 4G IN MY HAND, AND, THEREFORE, THAT THIS DEVICE

12   INFRINGES THAT PATENT.

13   Q    OKAY.  CAN YOU EXPLAIN TO THE JURORS WHERE YOU

14   ARE SEEING WHAT YOU'RE CALLING A BEZEL IN THE

15   DESIGN OF THE D'087?

16   A    YES.  AROUND THE PERIMETER OF THE RECTANGULAR

17   FACE.

18   Q    FIGURE WHICH?

19   A    YOU CAN EITHER SEE IT IN FIGURE 9 OR IN FIGURE

20   11.  YOU WILL NOTICE THAT THERE IS A BAND, IT LOOKS

21   A LITTLE LIKE A RUBBER BAND FROM THE FRONT VIEW.

22              IF YOU LOOK AT THAT AND THE SIDE VIEWS,

23   THEY WILL SHOW YOU HOW TO VIEW THE THREE-QUARTER

24   VIEW, AND THAT PAIR OF LINES RUNNING AROUND THAT

25   FACE IS A PIECE OF MATERIAL THAT IS FREQUENTLY

5059

1    CALLED A BEZEL.

2    Q    OKAY.  MR. LEE, COULD YOU SHOW US EXHIBIT PX

3    7, PAGE 22.

4             OKAY.  YOU'RE LOOKING NOW AT YOUR PHOTOS

5    FROM YOUR COMPILATION OF THE GALAXY S 4G.

6             DO YOU SEE ON THE FRONT FACE THE WORDS

7    T-MOBILE AND SAMSUNG?

8    A    I DO.

9    Q    DID YOU CONSIDER THOSE WORDS IN COMING TO YOUR

10   CONCLUSIONS ABOUT WHETHER ON ORDINARY OBSERVER

11   WOULD THINK THAT THE GALAXY SAMSUNG SMART 4G GAVE

12   THE SAME OVERALL IMPRESSION AS THE DESIGN OF THE

13   D'087 OR '677 PATENTS?

14   A    IT'S MY UNDERSTANDING THIS KIND OF LABELING IS

15   NOT TO BE CONSIDERED IN A DESIGN PATENT AND I

16   PRETENDED THEY WEREN'T THERE.

17   Q    SO TO DO A DESIGN PATENT INFRINGEMENT

18   ANALYSIS, YOU IGNORE THE PRODUCT NAMES?

19   A    YOU IGNORE THE PRODUCT NAMES, YES.

20   Q    OKAY.  DID YOU ACCOUNT FOR PRIOR ART IN YOUR

21   DETERMINATION OF WHETHER THE GALAXY S 4G INFRINGED

22   THE D'087 PATENT?

23   A    I DID.

24   Q    AND WHAT PIECE OF PRIOR ART DID YOU USE IN

25   DOING THAT ANALYSIS?

1    A    IT WAS THE SAME PIECE OF PRIOR ART, THE '638

2    PATENT.

3    Q    OKAY.  SO THAT'S THE PATENT WHERE THE FRONT

4    FACE STUCK OUT AND ANGLED BACK AT THE TOP AND

5    BOTTOM?

6    A    YES, THAT'S CORRECT.

7    Q    OKAY.  WHAT CONCLUSION DID YOU DRAW WHEN YOU

8    CONSIDERED NON-INFRINGEMENT ANALYSIS THE IMPACT OF

9    PRIOR ART, INCLUDING THE '638?

10   A    THE CONCLUSION I DREW WAS THAT THE DESIGN OF

11   THE S 4G WAS SUBSTANTIALLY THE SAME AND DID EXHIBIT

12   SOME OF THE DIFFERENCES BETWEEN THE '087 PATENT AND

13   THE '638 PATENT.

14   Q    OKAY.  DID YOU REACH ANY CONCLUSIONS ABOUT

15   WHETHER ANY OTHER SAMSUNG PHONES ALSO INFRINGE THE

16   D'087 PATENT?

17   A    YES, THERE WERE SEVERAL.

18   Q    OKAY.  LET ME DIRECT YOU TO SOME, BUT NOT ALL,

19   OF THE PHONES IN FRONT OF YOU.  WE HAVE TO DO A

20   LITTLE SORTING HERE.  JX 1007, WHICH IS THE

21   GALAXY S I9000; JX 1031, WHICH IS THE GALAXY S II

22   AT&T; JX 1032, WHICH IS THE GALAXY S II I9100.

23           THE COURT:  AND ON THAT ONE, IS THAT THE

24   ONE THAT YOU HAD MOVED EARLIER?  BECAUSE THAT ONE

25   WAS NOT ADMITTED DURING MR. DENISON'S TESTIMONY.

5061

```
1    THE ACTUAL EXHIBIT WASN'T AVAILABLE.

2              MS. KREVANS:  THE ONE I MOVED WAS 1017,

3    BUT IF THIS ONE DID NOT COME IN, I WILL MOVE THAT

4    AT THIS TIME, YOUR HONOR.

5              THE COURT:  OKAY.  AND THAT'S 1032?

6              MS. KREVANS:  1032.

7              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

8              1032, HAVING BEEN PREVIOUSLY MARKED FOR

9              IDENTIFICATION, WAS ADMITTED INTO

10             EVIDENCE.)

11             THE COURT:  OKAY.  THEN I HEARD YOU

12   CORRECT.  I THOUGHT YOU HAD ASKED ABOUT THE 1007.

13   THAT ONE WAS ADMITTED, BUT THIS ONE WAS NOT YET.

14             ANY OBJECTION TO, MR. VERHOEVEN?

15             MR. VERHOEVEN:  I HAVE NO OBJECTION IF IT

16   IS WHAT IT PURPORTS TO BE.  I HAVEN'T SEEN THE

17   PHYSICAL EXHIBIT, BUT IF THAT'S WHAT SHE PURPORTS

18   IT IS.

19             THE COURT:  IS THAT A JOINT EXHIBIT?

20             MS. KREVANS:  IT IS A JOINT EXHIBIT, YOUR

21   HONOR.

22             MR. BRESSLER, CAN I BORROW BACK 1032 FOR

23   A MOMENT.

24             THE COURT:  IT'S A JOINT EXHIBIT.

25   BY MS. KREVANS:
```

6062

1    Q    WHILE HE'S TAKING A CHANCE TO LOOK AT THAT,

2    MR. BRESSLER, COULD YOU ALSO HAVE IN FRONT OF YOU

3    1034 --

4              MR. VERHOEVEN:  NO OBJECTION, YOUR HONOR.

5              THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

6              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

7              1034, HAVING BEEN PREVIOUSLY MARKED FOR

8              IDENTIFICATION, WAS ADMITTED INTO

9              EVIDENCE.)

10             MS. KREVANS:  OKAY.  THANK YOU,

11   MR. VERHOEVEN.

12   Q    1034, WHICH IS THE GALAXY S II EPIC 4G TOUCH;

13   1035, WHICH IS THE GALAXY S II SKYROCKET; 1027, THE

14   INFUSE 4G; AND 1010, THE VIBRANT.

15             MAY I RETURN THIS TO THE WITNESS, YOUR

16   HONOR?

17             THE COURT:  YES.

18             MS. KREVANS:  THAT'S 1032.

19             THE COURT:  NO.  THE VIBRANT IS 1010.

20             MS. KREVANS:  I'M SORRY, YOUR HONOR.  I

21   WAS TELLING THE WITNESS THAT I HAVE RETURNED THE

22   1032 TO HIM.  THE VIBRANT IS 1010.

23   Q    WHAT CONCLUSION DID YOU DRAW, MR. BRESSLER,

24   ABOUT WHETHER THIS ADDITIONAL GROUP OF SAMSUNG

25   PHONES ALSO INFRINGED THE '087 PATENT?

6063

1    A    IT'S MY OPINION THAT THESE INFRINGE THE '087

2    PATENT.

3    Q    AND WHAT WAS THE BASIS FOR YOUR CONCLUSION

4    THAT THESE SEVEN PHONES ALSO INFRINGE THE '087

5    PATENT?

6    A    IT'S MY OPINION THAT THE OVERALL IMPRESSION AN

7    ORDINARY OBSERVER WOULD HAVE OF THESE PHONES WOULD

8    BE THE SAME AS THEIR IMPRESSION OF THE DESIGN

9    REPRESENTING THE '087 PATENT.

10   Q    OKAY.  MR. LEE, COULD YOU PUT UP THE REVISED

11   VERSION OF PDX 26.10?

12        WHAT IS SHOWN ON 26.10, MR. BRESSLER?

13   A    THIS IS A SIMILAR DEPICTION AS ONE OF THE

14   PRIOR SLIDES OF THE GROUP OF PHONES THAT I FOUND

15   INFRINGING ON THE '087 PATENT.

16   Q    AND WHEN YOU DID YOUR INFRINGEMENT ANALYSIS

17   FOR THESE PHONES, THE GALAXY S 4G AND THE OTHER

18   SEVEN, DID YOU CONSIDER EVERY VIEW OF THE PHONES OR

19   JUST THE VIEWS WE SEE ON THIS SLIDE?

20   A    I CONSIDERED EVERY VIEW IN THE PATENT AND OF

21   THE PHONES.

22   Q    OKAY.  AND DID YOU ALSO CONSIDER THE PRIOR

23   ART?

24   A    I DID.

25   Q    OKAY.  WHAT WAS YOUR OVERALL CONCLUSION?

1    A    MY OVERALL CONCLUSION WAS THAT THESE FOUR

2    ADDITIONAL PHONES DO INFRINGE THE '087 PATENT.

3    Q    OKAY.  THERE'S --

4    A    I'M SORRY.  EIGHT ADDITIONAL PHONES.

5    Q    OKAY.  SO NOT TO BE CONFUSING WITH GALAXY S 4G

6    IS ON THE SLIDE AND NOW I'M ASKING ABOUT SEVEN

7    OTHERS.

8    A    OKAY.  JUST TO BE PERFECTLY CLEAR, THERE ARE

9    SEVEN OTHER PHONES THAT ARE BEING SHOWN THAT WOULD

10   BE INCLUDED IN MY OPINION THAT THE TOTAL OF EIGHT

11   INFRINGE ON THE '087 PATENT.

12   Q    OKAY.  LET'S TURN FOR A MOMENT TO TABLETS.

13             MAY I APPROACH THE WITNESS, YOUR HONOR,

14   WITH TWO ADDITIONAL EXHIBITS?

15             THE COURT:  GO AHEAD, PLEASE.

16   BY MS. KREVANS:

17   Q    MR. BRESSLER, I'M GOING TO HAND YOU 1037 AND

18   1028.  THIS IS THE GALAXY 10.1 AND LTE.

19             CAN YOU TELL THE JURY WHAT EXHIBIT 1037

20   AND 1038 ARE?

21   A    LET ME MAKE SURE.  1037 IS THE 10.1 WI-FI.

22   Q    THAT'S THE SAMSUNG TABLET PRODUCT?

23   A    YES.  I'M SORRY, IT'S THE SAMSUNG TABLET 10.1.

24   Q    OKAY.  AND WHAT'S 1038?

25   A    AND 1038 IS THE GALAXY TAB 10.14G LTE.

1    Q    OKAY.  DID YOU ANALYZE THESE TWO PRODUCTS?

2    A    I DID.

3    Q    ARE THERE -- AND WHAT WAS THE ANALYSES THAT

4    YOU PERFORMED?

5    A    I PERFORMED --

6    Q    JUST BRIEFLY?

7    A    PARDON ME?

8    Q    BRIEFLY?

9    A    BRIEFLY, I PERFORMED SIMILAR ANALYSES TO THAT

10   WHICH I DID ON THE PHONES.

11   Q    OKAY.  DID YOU MAKE A DETERMINATION OF WHETHER

12   THESE TWO PRODUCTS INFRINGED THE D'889 APPLE DESIGN

13   PATENT?

14   A    I BELIEVE BOTH OF THESE PRODUCTS DO INFRINGE

15   THE D'889 DESIGN PATENT.

16   Q    OKAY.  CAN YOU JUST HOLD BOTH OF THEM UP FOR A

17   MOMENT SO THE JURY CAN SEE THE TWO OF THEM?

18   A    (INDICATING.)

19   Q    AND I TAKE IT THE PRODUCTS LOOK LIKE THEY DID

20   WHEN YOU EXAMINED THEM, EXCEPT THAT THEY -- THEY

21   DIDN'T HAVE EXHIBIT STICKERS ON THEM?

22   A    CORRECT.

23   Q    OKAY.  ARE THERE ANY DIFFERENCES BETWEEN THESE

24   TWO GALAXY TAB 10.1 MODELS THAT WERE RELEVANT TO

25   THE INFRINGEMENT ANALYSIS THAT YOU PERFORMED?

1    A    NO, THERE WERE NO DIFFERENCES.  THEY'RE

2    APPROPRIATE TO CONSIDER UNDER A DESIGN PATENT.

3    Q    OKAY.  WHAT -- WHAT DIFFERENCES, IF ANY, DID

4    YOU ACTUALLY OBSERVE BETWEEN THE TWO PRODUCTS?

5    A    THE COLOR OF THE BACKS.  THEY'RE SLIGHTLY

6    DIFFERENT.

7    Q    OKAY.

8    A    BUT THAT WAS THE ONLY OTHER DIFFERENCE THAT I

9    COULD SEE IN TERMS OF THE APPEARANCE.

10   Q    ALL RIGHT.  LET'S LOOK AT YOUR SLIDE PDX

11   26.14.  WHAT IS DEPICTED ON SLIDE 26.14?

12   A    THIS IS A COMPARISON OF THE EIGHT VIEWS OF --

13   EIGHT OF THE NINE VIEWS OF THE '889 PATENT AND THE

14   EIGHT VIEWS OF THE GALAXY TAB 10.1.

15   Q    OKAY.  IS THIS -- THIS HAPPENS TO BE THE

16   GALAXY TAB 10.1, THE WI-FI?

17   A    ACTUALLY, I BELIEVE THAT THAT ONE SHOWS IT

18   BEING A VERIZON.

19   Q    OKAY.  DOES THAT -- IS THAT 1037 OR 1038?

20   A    THAT'S 1038.

21   Q    OKAY.  WHAT IS YOUR OPINION WITH RESPECT TO

22   WHETHER THE D'889 PATENT DESIGN IS INFRINGED BY THE

23   GALAXY TAB 10.1 PRODUCTS?

24   A    I BELIEVE THAT THOSE PRODUCTS ARE INFRINGING

25   ON THE '889 PATENT.

1    Q    OKAY.  AND WHAT WAS THE BASIS FOR YOUR

2    CONCLUSION?  AND MAYBE YOU CAN WALK US THROUGH THE

3    FIGURES OF THE PATENT TO EXPLAIN THAT.

4    A    CERTAINLY.  I BELIEVE THAT BOTH THE GALAXY

5    TAB 10.1 PRODUCTS AND THE '889 DESIGN INCLUDE THE

6    OVERALL IMPRESSION THAT AN ORDINARY OBSERVER WOULD

7    HOLD OF A CONTINUOUS, FLAT, CLEAR GLASS FRONT

8    SURFACE WHICH, IN MY ANALYSIS, IS A MAJOR DEPARTURE

9    FROM THE PRIOR ART.

10          AND THEY WOULD ALSO NOTICE THAT IT IS

11   RECTANGULAR IN FORM, CLOSELY RESEMBLING THE '889

12   FIGURES AS DRAWN.

13          THEY WOULD HAVE CURVED CORNERS.  AND THAT

14   THEY ARE FLAT ON THE BACK WITH CURVING SIDES UP

15   TOWARD THE FRONT EDGE.

16   Q    AND --

17   A    OH, I'M SORRY.  AND I LEFT OUT THAT THERE IS

18   AN EQUILATERAL BAND VISIBLE THROUGH THE GLASS, OR

19   THROUGH THE TRANSPARENCY, EQUALLY ALL THE WAY

20   AROUND THE DISPLAY.

21   Q    CAN YOU POINT OUT TO THE JURY WHERE IN THE

22   FIGURES OF THE '889 PATENT YOU SEE THAT EQUILATERAL

23   BAND THAT FORMS THE BORDER ALL THE WAY AROUND THE

24   FRONT FACE?

25   A    IF FIGURES 1 AND FIGURE 3.

6082

```
 1            MR. VERHOEVEN:  SAME OBJECTION, YOUR

 2   HONOR.

 3            THE COURT:  GO AHEAD.

 4            THE WITNESS:  "IN MY HANDS-ON TESTING,

 5   THE TAB 10.1 ACHIEVED PERHAPS ITSELF BEST DESIGN

 6   COMPLIMENT AN ANDROID TABLET COULD HOPE FOR --

 7   OFTEN BEING MISTAKEN BY PASSERS-BY (INCLUDING APPLE

 8   IPAD USERS) FOR AN IPAD 2.  THE CONFUSION IS

 9   UNDERSTANDABLE WHEN YOU SEE AND HOLD THE TAB 10.1

10   FOR THE FIRST TIME."

11            MS. KREVANS:  THANK YOU, MR. BRESSLER.

12            IS THIS THE TIME THAT YOUR HONOR WOULD

13   LIKE TO TAKE A BREAK?

14            THE COURT:  THAT'S FINE.  IT'S 12:05, AND

15   SO WE'LL TAKE AN HOUR LUNCH BREAK.  I'LL SEE YOU AT

16   1:00 O'CLOCK.  AGAIN, PLEASE KEEP AN OPEN MIND AND

17   DON'T TALK TO ANYONE ABOUT THE CASE AND PLEASE

18   DON'T RESEARCH ANYTHING ABOUT THE CASE.  OKAY.

19   THANK YOU.

20            AND IF YOU COULD LEAVE YOUR JURY

21   NOTEBOOKS IN THE JURY ROOM WHEN YOU GO OUT TO

22   LUNCH.  THANK YOU.

23            (WHEREUPON, THE FOLLOWING PROCEEDINGS

24   WERE HELD OUT OF THE PRESENCE OF THE JURY:)

25            THE COURT:  YOU CAN STEP DOWN.
```

1          OKAY.  THE RECORD SHOULD REFLECT THE

2     JURORS HAVE LEFT THE COURTROOM.

3          IT WOULD BE VERY HELPFUL IF THE PARTIES

4     COULD GIVE THE COURT ALL OF THE EXPERT REPORTS,

5     THOSE WERE PRESENTED TO JUDGE GREWAL, BUT NOT

6     BEFORE ME, SO I DON'T HAVE THEM AND IT WOULD BE

7     VERY HELPFUL IN RULING ON YOUR EVIDENTIARY

8     OBJECTIONS.

9          SO CAN I GET SOMETHING OVER THE LUNCH

10    HOUR OF ALL OF THE EXPERT REPORTS IN THE CASE, BOTH

11    OPENING, REBUTTAL, AND REPLIES?  CAN YOU ALL WORK

12    AMONGST YOURSELVES?  WHO'S GOING TO PROVIDE -- EACH

13    OF YOU PROVIDE YOUR OWN EXPERT REPORTS, PLEASE.

14         ALSO, I NEED ALL THE DEMONSTRATIVES, THE

15    DEMONSTRATIVES ARE COMING IN LATER THAN SOME OF THE

16    OTHER EXHIBITS, SO I DON'T HAVE THE DEMONSTRATIVES,

17    I BELIEVE, FOR MS. -- IS IT KARE OR KARE?

18         MR. MCELHINNY:  KARE.

19         MS. KREVANS:  KARE.

20         THE COURT:  SO WHEN CAN I GET -- IT WOULD

21    BE HELPFUL IF I COULD GET THESE, LIKE, NOW.  DO YOU

22    HAVE THEM?  AND I'D ALSO LIKE TO GET THE

23    CROSS-EXHIBITS FOR EVERYONE.

24         I SEE THAT I'VE BEEN GIVEN, WHAT, THE

25    DIRECT EXHIBITS FOR WINER AND BALAKRISHNAN, BUT I'D

5084

1     LIKE THE CROSS-EXHIBITS, AND I'D LIKE ALL THE

2     DEMONSTRATIVES BECAUSE EVERYTHING IS SORT OF

3     TRICKLING IN AND IT'S DIFFICULT TO RULE ON THESE

4     OBJECTIONS WHEN I DON'T HAVE EVERYTHING.

5              SO HOW QUICKLY CAN I GET ALL THESE.

6              MS. KREVANS:  I'M SURE WE HAVE THE

7     DEMONSTRATIVES SOMEWHERE IN THE BUILDING, YOUR

8     HONOR.  I DON'T KNOW IF THEY'RE IN THE COURTROOM.

9              THE COURT:  IF YOU ALL COULD JUST BUZZ MY

10    CHAMBERS, AND IF YOU COULD GIVE IT TO ME BY, IN THE

11    NEXT TEN MINUTES, IF THAT'S POSSIBLE, AND IF NOT,

12    AS SOON THEREAFTER AS POSSIBLE, I'D APPRECIATE IT.

13             MS. KREVANS:  CERTAINLY, YOUR HONOR.

14             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU

15    ALL.

16             (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)

17

18

19

20

21

22

23

24

25

1                           **AFTERNOON SESSION**

2                    (WHEREUPON, THE FOLLOWING PROCEEDINGS

3        WERE HELD OUT OF THE PRESENCE OF THE JURY:)

4                    THE COURT:  ALL RIGHT.  WELCOME BACK.

5        PLEASE TAKE A SEAT.

6                    WITH REGARD TO THE DEMONSTRATIVES SDX

7        3756 THROUGH 57, 60 THROUGH 61, 64, 65 THROUGH 67,

8        69, 71 THROUGH 75 AND 3811, WE HAVE REVIEWED THE

9        EXPERT REPORTS AND THOSE NON-INFRINGEMENT THEORIES

10       WERE NOT DISCLOSED IN THE EXPERT REPORT.  SO THAT

11       OBJECTION IS SUSTAINED.

12                   ALL RIGHT.  LET'S CALL THE JURY BACK IN

13       AND START BACK UP WITH MR. BRESSLER.

14                   (WHEREUPON, THE FOLLOWING PROCEEDINGS

15       WERE HELD IN THE PRESENCE OF THE JURY:)

16                   THE COURT:  ALL RIGHT.  WELCOME BACK.  IT

17       IS NOW 1:07.

18                   PLEASE CONTINUE.

19       BY MS. KREVANS:

20       Q    GOOD AFTERNOON, MR. BRESSLER.

21       A    GOOD AFTERNOON.

22       Q    DO YOU STILL HAVE THAT BINDER IN FRONT OF YOU?

23       A    I DO.

24       Q    OKAY.  LET'S LOOK AT EXHIBIT PX 59 IN YOUR

25       BINDER.

```
 1      A    YES.

 2      Q    IS PX 59 A DOCUMENT THAT YOU CONSIDERED IN

 3      CONNECTION WITH THE OPINIONS THAT YOU FORMED IN

 4      THIS CASE?

 5      A    YES, IT IS.

 6      Q    AND GENERALLY, WHAT IS PX 59?  WHAT TYPE OF

 7      DOCUMENT IS IT?

 8      A    THIS IS A, A TRANSLATION OF A DOCUMENT THAT IS

 9      RIGHT BEHIND IT WHICH IS A REPORT GENERATED BY

10      SAMSUNG, BY A TEAM THEY SENT OUT IN THE FIELD TO DO

11      RESEARCH AT BEST BUY.

12      Q    OKAY.  LET ME STOP YOU RIGHT THERE.

13                YOUR HONOR, WE WOULD OFFER EXHIBIT PX 59

14      INTO EVIDENCE.

15                THE COURT:  ANY OBJECTION?

16                MR. VERHOEVEN:  NO FURTHER OBJECTION.

17                THE COURT:  ALL RIGHT.  IT'S ADMITTED.

18                (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

19                59, HAVING BEEN PREVIOUSLY MARKED FOR

20                IDENTIFICATION, WAS ADMITTED INTO

21                EVIDENCE.)

22                MS. KREVANS:  OKAY.

23                MR. VERHOEVEN:  YOUR HONOR, I WILL OBJECT

24      TO QUESTIONING ON THIS PARTICULAR EXHIBIT AS NOT

25      BEING WITHIN THE SCOPE OF THE EXPERT REPORT.  THE
```

5087

```
 1    EXPERT REPORT FOR THIS WITNESS, THERE'S A CITATION

 2    TO THIS DOCUMENT.  THERE'S ABSOLUTELY NO DISCUSSION

 3    OF IT OR DISCLOSURE OF WHAT TESTIMONY HE WOULD LIKE

 4    TO SEEK.

 5    BY MS. KREVANS:

 6    Q    EXPLAIN TO THE JURY WHAT THE GIST OF THE

 7    CONTENTS OF PX 59 ARE, MR. BRESSLER.

 8              THE COURT:  WAIT ONE SECOND.  ONE SECOND.

 9              WHAT'S YOUR RESPONSE TO MR. VERHOEVEN'S

10    OBJECTION?

11              MS. KREVANS:  YOUR HONOR, IN PARAGRAPH

12    105 OF THE REPORT, AND I HAVE A COPY HERE IF YOUR

13    HONOR DOES NOT HAVE IT HANDY.

14              THE COURT:  I HAVE IT HERE.

15              MS. KREVANS:  PARAGRAPH 105 OF THE

16    REPORT, WHICH IS ON PAGE 35, AT THE BOTTOM OF THE

17    PAGE, IT HAS THE SUBSTANCE OF THE TESTIMONY THAT I

18    INTEND TO ELICIT FROM THE WITNESS ABOUT THIS

19    DOCUMENT, AND THE BATES NUMBER CITATION THERE IS

20    THE CITATION TO THIS DOCUMENT.

21              THE COURT:  OVERRULED.

22              GO AHEAD, PLEASE.

23    BY MS. KREVANS:

24    Q    MR. BRESSLER, WHAT'S THE GIST OF THE CONTENTS

25    OF -- ACTUALLY, LET ME BACK UP.
```

5088

```
 1              IS PX 59 A DOCUMENT CREATED BY SAMSUNG?
 2    A    YES.
 3    Q    AND ORIGINALLY IT WAS IN KOREAN, BUT YOU'RE
 4    LOOKING AT THE TRANSLATION?
 5    A    THAT'S CORRECT.
 6    Q    OKAY.  WHAT'S THE GIST OF THE CONTENTS OF PX
 7    59?
 8    A    THE GIST OF THE CONTENTS IS THIS IS A REPORT
 9    THAT A SAMSUNG TEAM CREATED DOING RESEARCH AT BEST
10    BUY STORES TO DETERMINE WHY A LARGER NUMBER THAN
11    USUAL OF GALAXY TAB 10.1'S WERE BEING RETURNED IN
12    CERTAIN REGIONS.
13    Q    OKAY.  WOULD YOU LOOK AT THE TITLE ON THE
14    FRONT PAGE OF THE DOCUMENT.  IT SAYS, "NORTH
15    AMERICAN P4 (P7510 WIFI) BBY RETAIL STORE VISIT TF
16    REPORT."
17              CAN YOU EXPLAIN TO THE JURY WHAT THAT
18    REFERS TO?
19    A    I'LL DO THE BEST I CAN.
20              CERTAINLY IT'S IN NORTH AMERICA.  I
21    BELIEVE THAT P4 MAY HAVE BEEN WHAT THEY REFERRED TO
22    AS THE 10.1.  THE WI-FI SUGGESTS THAT TO ME.
23              THE BBY, AS I UNDERSTAND IT, STANDS FOR
24    BEST BUY.
25              RETAIL STORE VISIT, I THINK THAT'S FAIRLY
```

1    CLEAR THAT THEY'RE DOING RESEARCH IN RETAIL STORES,

2    AND IT'S A TEAM REPORT AS I UNDERSTAND IT.

3    Q    AND THE DATE OF THE DOCUMENT IS WHAT?

4    A    IT IS AUGUST 11TH -- I'M SORRY.  AUGUST 2011.

5    Q    OKAY.  IF WE LOOK AT THE SECOND PAGE OF PX 59.

6    WHAT DOES IT SAY THE PURPOSE OF THIS TASK FORCE

7    VISIT WAS?

8    A    IT SAYS THE PURPOSE IS TO "INVESTIGATE THE

9    REASONS CONSUMERS RETURN THE PRODUCT, AND IDENTIFY

10   AREAS FOR IMPROVEMENT, BY VISITING THE 30 STORES

11   WITH THE HIGHEST NUMBER OF RETURNS, OF OUR LARGEST

12   VENDOR FOR NORTH AMERICAN P4 WI-FI MODEL, BBY."

13   Q    OKAY.  AND DOWN BELOW, SECTION 2, WHAT

14   GENERALLY IS SET OUT IN SECTION 2 OF THIS DOCUMENT

15   ON PAGE 2?

16   A    THIS BASICALLY DEFINES THE PROCESS THEY INTEND

17   TO GO THROUGH.

18   Q    OKAY.  AND THAT INCLUDED IN-PERSON VISITS TO

19   BEST BUY STORES BY A NUMBER OF SAMSUNG PERSONNEL?

20   A    YES.  THERE WAS A TEAM SENT OUT TO THREE

21   REGIONS IN THE COUNTRY.  I BELIEVE IT WAS FLORIDA,

22   L.A., AND NEW YORK.

23   Q    OKAY.  COULD YOU GO TO PAGE 19 OF THIS REPORT.

24   AND COULD YOU TELL US WHAT IS SET OUT ON PAGE 19 OF

25   THIS REPORT WITH RESPECT TO THE FINDINGS THAT THE

5090

```
 1    SAMSUNG TEAM MADE ABOUT THE REASONS FOR RETURNS OF
 2    THE GALAXY TAB 10.1?
 3    A    THIS IS A PAGE IN THE PORTION OF THE DOCUMENT
 4    THAT RELATES TO MARKETABILITY.  AND IF I CAN CALL
 5    THE ATTENTION TO THE NOTES BOX, THE NUMBER 1 LINE
 6    IN THE NOTES BOX READS "GREATEST NUMBER OF CUSTOMER
 7    RETURN TYPE WERE THOSE WHO PURCHASED THINKING IT
 8    WAS AN APPLE IPAD 2."
 9    Q    THANK YOU, MR. BRESSLER.
10         YOU CAN PUT THAT DOCUMENT ASIDE.  I WANT
11    TO SWITCH TO A DIFFERENT TOPIC.
12         DID YOU PERFORM AN ANALYSIS OF WHETHER
13    THE APPEARANCE OF ANY ELEMENT IN THE DESIGN OF THE
14    THREE APPLE DESIGN PATENTS THAT YOU ANALYZED WAS
15    DICTATED BY FUNCTION?
16    A    I DID.
17    Q    AND DID YOU, AS A RESULT OF THAT ANALYSIS,
18    CONCLUDE THAT ANY OF THE VISUAL ELEMENTS OF THE
19    APPLE DESIGN PATENTS WERE, IN FACT, DICTATED BY
20    FUNCTION?
21    A    I CONCLUDED THEY -- NONE OF THE ELEMENTS WERE
22    DICTATED BY FUNCTION.
23    Q    WHY DID YOU CONCLUDE THAT NONE OF THE ELEMENTS
24    OF THE APPLE DESIGN PATENTS WERE DICTATED BY
25    FUNCTION?
```

1    A    FOR A COUPLE OF REASONS.  ONE, IN MY

2    EXPERIENCE, I KNOW FULL WELL THAT VIRTUALLY EVERY

3    FUNCTION THAT'S INCLUDED CAN BE DESIGNED WITH A

4    DIFFERENT APPEARANCE.

5            SECONDLY, I REVIEWED AND IDENTIFIED A

6    NUMBER OF DIFFERENT ALTERNATIVE DESIGNS THAT

7    PERFORMED THE SAME OR SIMILAR FUNCTIONS TO THOSE

8    THAT WERE IN THE PATENTS.

9    Q    OKAY.  LET'S TURN TO THE OPINIONS YOU GAVE

10   ABOUT TRADE DRESS.

11           DO YOU UNDERSTAND THAT APPLE IS, IN

12   ADDITION TO THE DESIGN PATENTS, ASSERTS IPHONE AND

13   IPAD TRADE DRESS CLAIMS IN THIS CASE?

14   A    I DO.

15   Q    I'D LIKE TO SHOW YOU SLIDE PDX 26.18.

16           ARE THE ELEMENTS OF THE APPLE IPHONE

17   TRADE DRESS THAT YOU ANALYZED FOR THIS CASE SET OUT

18   ON THIS SLIDE?

19   A    YES, THEY ARE.

20   Q    WHICH OF THE BULLET POINT ELEMENTS ON THIS

21   SLIDE DID YOU ANALYZE?

22   A    IT'S THE FIRST FIVE THAT RELATE PRIMARILY TO

23   THE INDUSTRIAL DESIGN OF THE DEVICE ITSELF, NOT THE

24   SCREEN.

25   Q    OKAY.  SO YOU IGNORED THE ICONS IN THE MIDDLE?

1    A    CORRECT.

2    Q    OKAY.  DID YOU PERFORM AN ANALYSIS OF WHETHER

3    ANY ELEMENTS OF THE ASSERTED IPHONE TRADE DRESS

4    WERE FUNCTIONAL AS THAT TERM IS USED IN TRADE DRESS

5    ANALYSIS?

6    A    I DID.

7    Q    AND WHAT IS YOUR UNDERSTANDING OF THE LEGAL

8    STANDARD FOR FUNCTIONALITY OF A TRADE DRESS?

9    A    MY UNDERSTANDING UNDER TRADE DRESS IS THAT THE

10   APPEARANCE IS NOT FUNCTIONAL UNDER TRADE DRESS IF

11   IT DOES NOT CONTRIBUTE UNUSUALLY EITHER TO THE

12   USABILITY OR TO THE REDUCTION IN COST OR EASE OF

13   MANUFACTURING.

14   Q    AND DID YOU FIND ANY ELEMENT OF THE INDUSTRIAL

15   DESIGN, THE PHYSICAL DESIGN OF THE IPHONE WAS

16   FUNCTIONAL UNDER THAT TEST?

17   A    UNDER THOSE TESTS, I DID NOT FIND THAT ANY OF

18   THOSE APPEARANCE ELEMENTS WERE FUNCTIONAL.

19   Q    DID YOU, IN YOUR ANALYSIS, DETERMINE WHETHER

20   THERE WERE ALTERNATIVES TO THE HARDWARE ASPECTS OF

21   THE IPHONE TRADE DRESS?

22   A    YES, THERE ARE A SIGNIFICANT NUMBER OF

23   ALTERNATIVES.

24   Q    OKAY.  COULD YOU LOOK AT EXHIBIT PX 10 IN YOUR

25   BINDER.

```
 1              WHAT IS PX 10, MR. BRESSLER?

 2    A    PX 10 IS ANOTHER COMPILATION OF A PHOTOGRAPH

 3    SLIDE THAT IS CREATED TO ILLUSTRATE A NUMBER OF

 4    ALTERNATIVE DESIGNS.

 5              AND ON THE THIRD PAGE SPECIFICALLY FOR

 6    SMARTPHONES.

 7              MS. KREVANS:  YOUR HONOR, WE MOVE PX 10

 8    INTO EVIDENCE.

 9              MR. VERHOEVEN:  OBJECTION.  IT'S A

10    DEMONSTRATIVE.

11              MS. KREVANS:  YOUR HONOR, THIS OBJECTION

12    HAS BEEN MADE AND PREVIOUSLY OVERRULED BY YOUR

13    HONOR.  THIS IS A COMPILATION OF PHOTOGRAPHS OF

14    ACTUAL OBJECTS.

15              THE COURT:  THAT'S ADMITTED.

16    BY MS. KREVANS:

17    Q    ON THE THIRD PAGE OF PX 10, WHAT HAVE YOU

18    SHOWN?

19    A    THESE ARE FIVE EXAMPLES OF A LARGE NUMBER OF

20    ALTERNATIVE CELL PHONE, SMARTPHONE DESIGNS THAT

21    EXIST.

22              THEY'RE CLEARLY MARKETED BY LARGE

23    COMPANIES.

24    Q    DID YOU FIND, IN DOING YOUR ANALYSIS OF

25    FUNCTIONALITY WITH RESPECT TO TRADE DRESS, THAT THE
```

5098

1   BEEN PASSED OUT?  YES.

2              THE COURT:  ALL RIGHT.  WE'RE ALL SET.

3   IT'S 1:23.  PLEASE GO AHEAD.

4              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

5                    **CROSS-EXAMINATION**

6   BY MR. VERHOEVEN:

7   Q    GOOD AFTERNOON, MR. BRESSLER.

8   A    GOOD AFTERNOON.

9   Q    GOOD TO SEE YOU AGAIN.

10  A    AND YOU.

11  Q    WE'RE ALL ON THE CLOCK HERE, SO I'M GOING TO

12  ASK YOU A PRELIMINARY QUESTION, AND THAT IS, AS I

13  GO THROUGH MY QUESTIONING, IF YOU CAN MAKE AN

14  EFFORT, IF MY QUESTION IS FAIRLY ANSWERABLE WITH A

15  YES OR A NO, I'D ASK YOU TO ANSWER IT IN THAT

16  MANNER.  OKAY?

17  A    YES.

18  Q    NOW, MR. BRESSLER, IN FORMING YOUR OPINIONS,

19  IT'S CORRECT THAT YOU DID NOT RELY ON ANY APPLE

20  CONSUMER SURVEYS THAT IDENTIFIED WHAT APPLE

21  CUSTOMERS CONSIDERED TO BE IMPORTANT WITH RESPECT

22  TO IPHONES; TRUE?

23  A    YES.

24  Q    YOU DON'T HAVE ANY FIRST-HAND KNOWLEDGE OF ANY

25  SURVEYS THAT APPLE HAS CONDUCTED WITH RESPECT TO

```
1    IPHONES; RIGHT?

2    A    I BELIEVE I HAVE SEEN A COUPLE, BUT I DON'T --

3    I HAVEN'T EXAMINED THEM.

4    Q    THE ANSWER IS YOU DON'T HAVE ANY FIRST-HAND

5    KNOWLEDGE OF ANY SURVEYS APPLE CONDUCTED WITH

6    RESPECT TO ITS IPHONES; TRUE?

7    A    NOT TRUE.

8    Q    OKAY.  NOW, YOU TESTIFIED FOR APPLE BEFORE IN

9    ANOTHER HEARING ON MAY 31ST, 2012.

10            DO YOU REMEMBER THAT?

11   A    YES.

12   Q    AND YOU TESTIFIED UNDER OATH; CORRECT?

13   A    YES.

14   Q    AND SO YOU TOOK JUST AS MUCH CARE WITH YOUR

15   ANSWERS TO QUESTIONS DURING THAT HEARING AS YOU ARE

16   TODAY; RIGHT?

17   A    YES.

18   Q    OKAY.  LET'S PUT UP WHAT YOU SAID AT THAT

19   HEARING ON MAY 31ST, 2012, PAGE 705, LINES 6

20   THROUGH 10.

21            MS. KREVANS:  OBJECTION, YOUR HONOR.

22            MR. VERHOEVEN:  MR. FISHER, IF WE COULD

23   DO THAT.

24            MS. KREVANS:  IT'S IMPROPER TO SHOW

25   TESTIMONY UNTIL THE JURY -- UNTIL IT'S BEEN SHOWN
```

6100

```
 1    THAT IT'S IMPEACHING TO SOMETHING THE WITNESS HAS

 2    SAID AND THAT SHOWING HAS NOT BEEN MADE.

 3              MR. VERHOEVEN:  YOUR HONOR, THIS IS

 4    EXACTLY WHAT COUNSEL IN EXAMINING MR. DENISON DID.

 5              THE COURT:  OVERRULED.

 6              GO AHEAD, PLEASE.

 7              MR. VERHOEVEN:  PULL THAT UP, MR. FISHER.

 8    AND PULL OUT LINES 7 THROUGH 10, AND I'LL READ IT

 9    INTO THE RECORD.

10              "QUESTION:  YOU DON'T HAVE ANY FIRSTHAND

11    KNOWLEDGE OF ANY SURVEYS APPLE'S CONDUCTED WITH

12    RESPECT TO ITS IPHONES, CORRECT?

13              "ANSWER:  CORRECT."

14    Q    WAS THAT TRUTHFUL TESTIMONY WHEN YOU GAVE IT

15    IN MAY?

16    A    IT WAS TRUE THEN, YES.

17    Q    OKAY.  THANK YOU, MR. FISHER.

18              IN FORMING YOUR OPINIONS, YOU DID NOT

19    HAVE ANY INFORMATION ABOUT WHAT PERCENTAGE OF

20    PURCHASERS OF IPHONES PURCHASED THOSE PRODUCTS

21    EITHER FROM AN APPLE STORE OR A WEBSITE; RIGHT?

22    A    CORRECT.

23    Q    YOU DID NOT TALK TO CONSUMERS ABOUT THEIR

24    PERCEPTIONS OF PRODUCTS IN AN APPLE STORE; RIGHT?

25    A    I DID SPEAK TO A FEW CONSUMERS IN SOME VERY
```

1    BRIEF DISCUSSIONS I HAD WITH THEM.

2    Q    SIR, YOU DID NOT TALK TO CONSUMERS ABOUT THEIR

3    PERCEPTIONS OF PRODUCTS AT AN APPLE STORE, DID YOU?

4    A    AN APPLE STORE, NO, I DID NOT.

5    Q    OKAY.  YOU DID HAVE A 20-MINUTE PHONE

6    CONVERSATION WITH MR. STRINGER; RIGHT?

7    A    YES.

8    Q    BUT YOU SPOKE WITH NO ONE ELSE AT APPLE IN

9    FORMING YOUR OPINIONS, DID YOU, SIR?

10   A    NO, I DIDN'T.

11   Q    AND YOU HAVE NO DIRECT EVIDENCE TO SUGGEST

12   THAT ANY CONSUMER HAS EVER PURCHASED A SAMSUNG

13   SMARTPHONE OR AN APPLE SMARTPHONE BELIEVING IT WAS

14   ACTUALLY A DEVICE MANUFACTURED BY THE OTHER, DO

15   YOU?

16   A    WOULD YOU REPEAT THAT, PLEASE?

17          MR. VERHOEVEN:  CAN WE HAVE THE QUESTION

18   READ BACK, PLEASE?

19          (WHEREUPON, THE RECORD WAS READ BY THE

20   COURT REPORTER.)

21          THE WITNESS:  I DO NOT.

22   BY MR. VERHOEVEN:

23   Q    YOU DON'T KNOW WHETHER CONSUMERS HAVE BEEN

24   CONFUSED AT ANY TIME WHEN PURCHASING APPLE DEVICES

25   OR SAMSUNG DEVICES INTO THINKING THEY ARE DEVICES

1    FROM THE OTHER MANUFACTURER; CORRECT?

2    A    I BELIEVE THAT'S CORRECT.  I'M SORRY.  COULD

3    YOU REPEAT THE QUESTION?

4         MR. VERHOEVEN:  CAN WE HAVE IT READ BACK

5    FOR MR. BRESSLER?

6         (WHEREUPON, THE RECORD WAS READ BY THE

7    COURT REPORTER.)

8         THE WITNESS:  THAT'S CORRECT.

9    BY MR. VERHOEVEN:

10   Q    YOU DON'T KNOW WHETHER CONSUMERS CONFUSE APPLE

11   AND SAMSUNG DEVICES DURING THE COURSE OF THEIR

12   PURCHASING DECISIONS, DO YOU?

13   A    I BELIEVE I HAVE SEEN SOME ARTICLES THAT

14   SUGGEST THAT PEOPLE DO GET CONFUSED.

15   Q    WELL, IN ADDITION TO THIS HEARING IN WHICH YOU

16   TESTIFED, YOU ALSO HAD YOUR DEPOSITION TAKEN.

17        DO YOU REMEMBER THAT IN THIS CASE?

18   A    YES, I DO.

19   Q    AND THAT HAPPENED ON APRIL 24TH, 2012?  DOES

20   THAT SOUND ABOUT RIGHT?

21   A    SOUNDS ABOUT RIGHT, YES.

22   Q    AND A DEPOSITION, YOU UNDERSTAND, IS A

23   PROCEEDING JUST LIKE IN THE COURT HERE WHERE YOU'RE

24   SWORN UNDER OATH AND YOU GAVE TRUTHFUL TESTIMONY;

25   RIGHT?

5103

```
 1    A    YES.
 2    Q    LET'S LOOK AT WHAT YOU SAID AT YOUR DEPOSITION
 3    AT PAGE 145:24 THROUGH 146, LINE 7, THE DEPOSITION
 4    DATED APRIL 24TH, 2012.
 5              CAN WE PLAY THAT?
 6              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
 7    OPEN COURT OFF THE RECORD.)
 8    BY MR. VERHOEVEN:
 9    Q    THAT WAS TRUTHFUL TESTIMONY WHEN YOU GAVE IT
10    AT THE DEPOSITION IN APRIL OF THIS YEAR; RIGHT,
11    SIR?
12    A    I BELIEVE SO.
13    Q    TO THE BEST OF YOUR KNOWLEDGE, SMARTPHONE
14    CONSUMERS EVALUATE DIFFERENT MODELS, COMPARE THEM
15    TO ONE ANOTHER, EVEN BEFORE GOING INTO THE STORE;
16    RIGHT?
17    A    YES.
18    Q    SMARTPHONE CONSUMERS CONSIDER A NUMBER OF
19    FACTORS, SUCH AS PRICE, PERFORMANCE, AS WELL AS
20    APPEARANCE; RIGHT?
21    A    I GUESS.
22    Q    DO YOU BELIEVE THAT'S TRUE?
23    A    I SUSPECT THEY DO.
24    Q    YOU WOULD EXPECT THAT IF THE PURCHASER WAS
25    ENTERING INTO A MULTI-YEAR CONTRACT, THEY WOULD
```

6104

```
1    KNOW WHAT BRAND OF PHONE THEY WERE BUYING; RIGHT?
2    A    YES.
3    Q    YOU BELIEVE, BY THE END OF THE SMARTPHONE
4    PURCHASING PROCESS, THE ORDINARY CONSUMER WOULD
5    HAVE TO KNOW WHICH PHONE THEY WERE BUYING; RIGHT?
6    A    YES.
7    Q    GIVEN THE ENVIRONMENT IN WHICH THESE PHONES
8    ARE BEING SOLD AND THE DEGREE OF ADVERTISING
9    BRANDING, YOU DON'T KNOW WHETHER ANYBODY WOULD EVER
10   BE DECEIVED INTO THINKING THEY WERE BUYING A
11   SAMSUNG PHONE WHEN THEY WERE BUYING AN APPLE PHONE
12   OR VICE-VERSA; ISN'T THAT TRUE, SIR?
13   A    COULD YOU REPEAT THAT AGAIN, PLEASE.
14            MR. VERHOEVEN:  CAN WE READ IT BACK,
15   PLEASE.
16            (WHEREUPON, THE RECORD WAS READ BY THE
17   COURT REPORTER.)
18            THE WITNESS:  YES.
19   BY MR. VERHOEVEN:
20   Q    AND WHEN YOU PERFORMED YOUR INFRINGEMENT
21   ANALYSIS THAT YOU'VE TESTIFIED TO EARLIER TODAY,
22   YOU DID NOT ENDEAVOR TO DETERMINE WHETHER THE
23   SIMILARITY BETWEEN TWO DESIGNS WAS DECEPTIVE, DID
24   YOU?
25   A    YES, I DID.
```

1    Q    OKAY.  LET'S GO TO YOUR TESTIMONY ON MAY 31ST,

2    2012, PAGE 659, LINES 6 THROUGH 14.

3            CAN WE PUT THAT UP, MR. FISHER?  659,

4    PAGE -- LINES 6 THROUGH 14.  IT'S THE MAY 31ST,

5    2012.  THERE WE GO.

6            "QUESTION:  DID YOU APPLY THIS TEST THAT

7    I HAVE ON THE SCREEN ON RDX-49C, PAGE 20?

8            "ANSWER:  I CERTAINLY APPLIED THE ISSUE

9    OF THE EYE OF THE ORDINARY OBSERVER GIVING AS MUCH

10   ATTENTION AS A PURCHASER USUALLY GIVES TO THE TWO

11   DESIGNS, FINDING THEM SUBSTANTIALLY THE SAME.

12           "IT WAS MY UNDERSTANDING, FROM COUNSEL,

13   THAT IT WAS NOT NECESSARY THAT THE SIMILARITY BE

14   DECEPTIVE."

15   Q    DO YOU SEE THAT?

16   A    I SEE THAT, YES.

17   Q    AND THAT'S THE TESTIMONY YOU GAVE ON MAY 31ST,

18   2012; RIGHT?

19   A    IT IS.

20   Q    AFTER YOU SUBMITTED YOUR OPINIONS IN THIS

21   CASE?

22   A    YES.

23   Q    SO AT THE TIME YOU SUBMITTED YOUR OPINIONS IN

24   THIS CASE, IT WAS YOUR UNDERSTANDING IT WAS NOT

25   NECESSARY TO LOOK INTO WHETHER A SIMILARITY WAS

1    DECEPTIVE; ISN'T THAT TRUE, SIR?

2    A    NO.  IT WAS MY UNDERSTANDING THAT THE

3    MEASUREMENT WAS DIFFERENT THAT YOU'RE DESCRIBING.

4         MS. KREVANS:  YOUR HONOR, MAY I ASK, FOR

5    COMPLETENESS, THAT I BE PERMITTED TO READ AN

6    ADDITIONAL PORTION OF THE TESTIMONY?  THIS IS FROM

7    THE ITC TRIAL.

8         THE COURT:  NO.  YOU'LL HAVE AN

9    OPPORTUNITY IN REDIRECT.

10   BY MR. VERHOEVEN:

11   Q    NOW, I WANT TO SWITCH TO TALKING ABOUT THE

12   DESIGN PATENTS, '087 AND '677 MORE SPECIFICALLY,

13   OKAY?

14   A    YES.

15   Q    WHEN YOU PREPARED YOUR OPINIONS WITH RESPECT

16   TO THOSE DESIGN PATENTS, YOU WERE ASKED TO APPLY

17   CERTAIN PRINCIPALS OR RULES OF THE ROAD FOR YOUR

18   ANALYSIS BY THE ATTORNEYS; CORRECT?

19   A    YES.

20   Q    AND IF WE COULD JUST GO TO, MR. BRESSLER, YOUR

21   OPENING EXPERT REPORT DATED MARCH 22, 2012 AT

22   PARAGRAPH 21.  I THINK THAT'S IN YOUR BINDER IF

23   YOU'D LIKE TO LOOK AT IT.  WE'RE GOING TO PUT IT ON

24   THE SCREEN AS WELL.

25   A    COULD YOU TELL ME WHERE IT WAS IN MY BINDER,

107

1    PLEASE.

2

3              MR. VERHOEVEN:  IF I COULD APPROACH, YOUR

4    HONOR?

5              THE COURT:  GO AHEAD, PLEASE.

6              MR. VERHOEVEN:  THANK YOU.

7              YOU HAVE MY BINDER, SO -- THERE SHOULD BE

8    AN EXHIBIT IN THERE.

9              THE WITNESS:  THANK YOU.

10             MR. VERHOEVEN:  SURE.

11             THE WITNESS:  AND WHAT PAGE WAS THIS

12   AGAIN, PLEASE?

13   BY MR. VERHOEVEN:

14   Q    IT'S PARAGRAPH 21, SIR.  ARE YOU THERE?

15   A    YES.

16   Q    OKAY.  SO OBVIOUSLY YOU'RE NOT A LAWYER;

17   RIGHT?

18   A    THAT'S CORRECT.

19   Q    BUT YOU WERE GIVEN, BY THE LAWYERS, CERTAIN

20   PRINCIPLES THEY ASKED YOU TO APPLY IN CONDUCTING

21   YOUR ANALYSIS; CORRECT?

22   A    YES.

23   Q    AND THIS WAS IN THE PART OF YOUR REPORT WHERE

24   YOU DELINEATE WHAT THOSE PRINCIPLES WERE; CORRECT?

25   "I, THEREFORE, HAVE BEEN ASKED TO APPLY THE

5108

```
1    FOLLOWING PRINCIPLES TO MY ANALYSIS OF

2    INFRINGEMENT."

3    A    YES.

4    Q    AND THEN THIS SECTION 4 GOES ON FOR A FEW

5    PARAGRAPHS; CORRECT?

6    A    YES.

7    Q    I'D LIKE TO DIRECT YOUR ATTENTION TO PARAGRAPH

8    25.  ARE YOU THERE?

9    A    I AM.

10   Q    YOU SEE -- THIS IS YOUR REPORT; RIGHT?

11   A    IT IS.

12   Q    THESE ARE YOUR WORDS?

13   A    I BELIEVE IT IS.

14   Q    "MOREOVER, I UNDERSTAND THAT THE HYPOTHETICAL

15   ORDINARY OBSERVER IS DEEMED TO BE 'CONVERSANT WITH

16   PRIOR ART' THAT MAY BE RELEVANT TO INFRINGEMENT."

17            DO YOU SEE THAT?

18   A    YES.

19   Q    AND YOU TESTIFIED ABOUT THAT ON DIRECT

20   EXAMINATION AS WELL; CORRECT?

21   A    YES.

22   Q    AND THEN IT CONTINUES IN THIS PARAGRAPH, DOWN

23   AT THE BOTTOM, "THUS, WHEN THE CLAIMED DESIGN AND

24   THE ACCUSED PRODUCT APPEAR SIMILAR, A PROPER

25   INFRINGEMENT ANALYSIS CONSIDERS THE PRIOR ART IN
```

5109

```
 1     COMPARING THE CLAIMED DESIGN AND THE DESIGN OF THE

 2     ACCUSED PRODUCT."

 3              SO THAT WAS A PRINCIPLE YOU APPLIED;

 4     RIGHT?

 5     A    YES.

 6     Q    AND THEN IF WE GO TO THE SECOND SENTENCE HERE,

 7     AND I'LL JUST READ IT INTO THE RECORD, "FOR

 8     EXAMPLE, WHEN THE DIFFERENCES BETWEEN THE CLAIMED

 9     AND ACCUSED DESIGN ARE VIEWED IN LIGHT OF THE PRIOR

10     ART, THE ATTENTION OF THE HYPOTHETICAL ORDINARY

11     OBSERVER WILL BE DRAWN TO THOSE ASPECTS OF THE

12     CLAIMED DESIGN THAT DIFFER FROM THE PRIOR ART."

13              DO YOU SEE THAT?

14     A    YES, I DO.

15     Q    AND THAT'S -- THAT'S -- YOU APPLIED THOSE

16     PRINCIPLES IN CONDUCTING YOUR ANALYSIS; CORRECT?

17     A    I DID.

18     Q    SO THE IDEA IS WHEN YOU'RE APPLYING THIS

19     ANALYSIS, YOU LOOK AT WHAT'S IN THE PRIOR ART AND

20     YOU LOOK AT WHAT'S DIFFERENT IN THE DESIGN PATENT

21     OVER THE PRIOR ART AND THEN YOU LOOK AT THOSE

22     DIFFERENCES WHEN YOU'RE LOOKING AT THE ACCUSED

23     PRODUCT.  FAIR?

24     A    I BELIEVE SO.

25     Q    OKAY.  AND THAT'S THE ANALYSIS THAT SHOULD BE
```

5110

```
 1    APPLIED; CORRECT?

 2    A    I BELIEVE YOU THEN COMPARE THE ACCUSED PRODUCT

 3    TO THE DESIGN, NOTING WHAT THE DIFFERENCES WERE

 4    THAT YOU FOUND.

 5    Q    EXACTLY.  AND THAT'S THE APPROPRIATE WAY TO DO

 6    THE ANALYSIS?

 7    A    YES.

 8    Q    OKAY.  NOW, LET'S GO TO JX 1041 AND LET'S

 9    DISPLAY FIGURE 43.  LET'S JUST HIGHLIGHT, PULL THIS

10    OUT.

11              THIS IS THE '087 DESIGN PATENT, FRONT

12    VIEW; CORRECT?

13    A    THAT IS A VIEW OF IT, YES.

14    Q    THAT'S THE FRONT VIEW; RIGHT?

15    A    YES, OF ONE OF THE VERSIONS.

16    Q    OKAY.  SO I'M GOING TO ASK -- I'M GOING TO ASK

17    YOU SOME QUESTIONS ABOUT THIS '087 DESIGN PATENT.

18              ARE YOU WITH ME?

19    A    I AM.

20    Q    SO TAKING YOUR PRINCIPLE WHERE YOU LOOK AT THE

21    PRIOR ART IN CONNECTION WITH YOUR INFRINGEMENT

22    ANALYSIS, LET'S LOOK AT THE PRIOR ART.

23              LET'S GO TO DX 511.  AND THIS IS A PIECE

24    OF PRIOR ART THAT YOU REVIEWED; CORRECT?

25    A    IT IS.
```

5111

```
1    Q    AND IF WE CAN GO TO PAGE 3 AND PULL OUT THE

2    TOP IMAGE?  DO YOU SEE THAT, SIR?

3    A    I DO.

4    Q    AND CAN WE PUT THIS NEXT TO THE '087, FIGURE

5    43.

6              SO YOU WOULD AGREE WITH ME THAT THE PRIOR

7    ART HERE IS RECTANGULAR?

8    A    YES.

9    Q    WITH ROUNDED CORNERS?

10   A    YES.

11   Q    YOU WOULD AGREE WITH ME THAT IT HAS A LOZENGE

12   SHAPED SPOT HERE FOR A SPEAKER?

13   A    YES.

14   Q    YOU WOULD AGREE WITH ME THAT THIS HAS GOT A

15   LARGE DISPLAY SCREEN?

16   A    YES.

17   Q    AND YOU WOULD AGREE WITH ME THAT THAT DISPLAY

18   SCREEN IS BALANCED VERTICALLY AND HORIZONTALLY

19   WITHIN THE DESIGN?

20   A    YES, THOUGH I BELIEVE THIS IS AN INAPPROPRIATE

21   COMPARISON IN ANALYZING A DESIGN PATENT.

22   Q    THIS IS PRIOR ART; RIGHT?

23   A    YES.

24   Q    AND SO IT'S APPROPRIATE TO LOOK AT PRIOR ART

25   WHEN YOU'RE CONDUCTING THE INFRINGEMENT ANALYSIS;
```

1    RIGHT?

2    A    MY UNDERSTANDING OF THE RULE IS YOU'RE TO

3    COMPARE ALL FIGURES OF THE PATENT, ALL THE --

4    Q    OKAY.  THIS IS ONE FIGURE -- IS THIS ONE

5    FIGURE?

6    A    IT IS ONE FIGURE, YES.

7    Q    OKAY.  SO IT'S OKAY TO COMPARE THIS; RIGHT?

8    A    IF YOU WISH.

9    Q    OKAY.  AND IT'S GOT A VERY NARROW LATERAL

10   BORDER TO THE SCREEN?  DO YOU SEE THAT?

11   A    I DO.

12   Q    AND A THICKER TOP AND BOTTOM BORDER OF THE

13   SCREEN?

14   A    YES.

15   Q    AND IT'S GOT SOME SORT OF THING THAT LOOKS

16   LIKE A BEZEL GOING AROUND IT?

17   A    IT LOOKS LIKE ONE IN THAT VIEW, YES.

18   Q    OKAY.  NOW, LET'S GO TO ANOTHER PIECE OF PRIOR

19   ART, THE DX 728 DESIGN PATENT.  SO THAT'S DX 728.

20   I'M SORRY.

21          THAT'S THE EXHIBIT NUMBER, YOUR HONOR.

22   IT'S ACTUALLY JP 383 DESIGN PATENT.

23          YOU REVIEWED THIS PIECE OF PRIOR ART AS

24   WELL; CORRECT?

25   A    383, YES.

5113

```
1    Q    YOU AGREE IT'S PRIOR ART?

2    A    YES.

3    Q    AND IF WE COULD GO TO PAGE 9 AND PULL OUT THE

4    SECOND IMAGE.  PUT THAT UP NEXT TO -- ON THE RIGHT

5    WE HAVE THE '087 AND ON THE LEFT WE HAVE DX 728.

6    DO YOU SEE THAT?

7    A    I DO.

8    Q    THIS IS A PIECE OF PRIOR ART THAT ALSO IS

9    RECTANGULAR?

10   A    YES.

11   Q    ROUNDED CORNERS?

12   A    YES.

13   Q    LARGE DISPLAY SCREEN?

14   A    YES.

15   Q    MINIMALIST FACE?

16   A    I DON'T KNOW THAT I CAN AGREE WITH THAT

17   BECAUSE IN THE OTHER VIEWS, IT'S NOT SO MINIMALIST.

18   IT HAS A PLASTIC COVER OVER THE UNIT ITSELF.

19   Q    THE LATERAL BORDERS ARE VERY NARROW?

20   A    YES.

21   Q    AND THE TOP AND BOTTOM BORDER ABOVE AND BELOW

22   THE SCREEN ARE WIDE?

23   A    YES, THOUGH IF I RECALL THE PATENT, THERE ARE

24   VIRTUALLY NO BORDERS ON THE SIDES OF THE INTERNAL

25   UNIT OF THAT, ALONG THE SIDES.
```

5114

```
1    Q    THESE SPACES ABOVE AND BELOW THE SCREEN ARE

2    WIDER?

3    A    YES, THEY ARE.

4    Q    AND THE SCREEN IS BALANCED BOTH HORIZONTALLY

5    AND VERTICALLY IN THE DESIGN?

6    A    YES.

7    Q    OKAY.  LET'S GO TO ANOTHER PIECE OF PRIOR ART.

8    THIS IS DX 727.

9              YOUR HONOR, I FORGOT -- I NEGLECTED TO

10   MOVE A COUPLE OF THESE EXHIBITS INTO EVIDENCE, SO I

11   MIGHT AS WELL DO THAT NOW.

12             THE COURT:  OKAY.

13             MR. VERHOEVEN:  I MOVE INTO EVIDENCE DX

14   511, WHICH IS THE JAPANESE DESIGN PATENT 638.

15             THE COURT:  ALL RIGHT.  ANY OBJECTION?

16             MS. KREVANS:  NO OBJECTION, YOUR HONOR.

17             THE COURT:  IT'S ADMITTED.

18             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

19             511, HAVING BEEN PREVIOUSLY MARKED FOR

20             IDENTIFICATION, WAS ADMITTED INTO

21             EVIDENCE.)

22             MR. VERHOEVEN:  DX --

23             THE COURT:  728.

24             MR. VERHOEVEN:  728, JAPANESE DESIGN

25   PATENT, 383.
```

115

```
1           THE COURT:  NO OBJECTION, RIGHT?

2           MS. KREVANS:  NO OBJECTION.

3           THE COURT:  THAT'S ADMITTED.

4           (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

5           728, HAVING BEEN PREVIOUSLY MARKED FOR

6           IDENTIFICATION, WAS ADMITTED INTO

7           EVIDENCE.)

8           MR. VERHOEVEN:  AND NOW WE'RE MOVING TO

9   ADMIT DX 727, A KOREAN DESIGN PATENT, 547, WHICH WE

10  JUST PUT ON THE SCREEN.  WE MOVE THAT INTO

11  EVIDENCE.

12          MS. KREVANS:  NO OBJECTION, YOUR HONOR.

13          THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

14          (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

15          727, HAVING BEEN PREVIOUSLY MARKED FOR

16          IDENTIFICATION, WAS ADMITTED INTO

17          EVIDENCE.)

18  BY MR. VERHOEVEN:

19  Q    SO GOING BACK AGAIN, THIS IS ANOTHER PIECE OF

20  PRIOR ART; RIGHT?

21  A    I CAN'T READ THE KOREAN TO CONFIRM IT, BUT

22  I'LL TAKE YOUR WORD FOR IT.

23  Q    OKAY.  WELL, LET'S GO TO PAGE 6 OF THE

24  TRANSLATION.  DO YOU SEE UP HERE IT SAYS

25  PUBLICATION DATE, JULY 6TH, 2006?
```

1    A    YES.

2    Q    OKAY.  THAT PRE-DATES BOTH THE '087 PATENT AND

3    THE '677 PATENT FILINGS; CORRECT, SIR?

4    A    I BELIEVE IT PRE-DATES THE FILING, BUT I'M NOT

5    SURE -- I DON'T THINK IT PRE-DATES THE CONCEPTION

6    DATE THAT'S BEEN IDENTIFIED.

7    Q    WELL, YOU AGREE IT PRE-DATES THE FILING DATE?

8    A    I -- WITHOUT LOOKING AT THE PATENT, I'M NOT

9    100 PERCENT SURE, BUT IT MIGHT.

10    Q    WELL, WOULD YOU AGREE THAT THAT'S

11    APPROXIMATELY SIX MONTHS BEFORE THE IPHONE WAS EVER

12    EVEN ANNOUNCED PUBLICLY?

13    A    YES.

14    Q    NOW, LET'S GO TO PAGE 7, THE SECOND IMAGE ON

15    PAGE 7 AND PULL THAT OUT.  PUT THAT NEXT TO THE

16    '087.

17         SO DX 727, RECTANGULAR IN SHAPE?

18    A    YES.

19    Q    ROUNDED CORNERS?

20    A    YES.

21    Q    IT'S GOT A BIG DISPLAY SCREEN; YES?

22    A    NOT AS BIG, BUT YES.

23    Q    IT'S GOT A LOZENGE SHAPED SPEAKER SLOT?  YES?

24    A    YES.

25    Q    IT'S GOT LATERAL BORDERS THAT ARE NARROWER

```
1    THAN THE TOP AND BOTTOM BORDERS?

2    A    CORRECT.  IT DOES NOT SHOW A BEZEL.

3    Q    THE SCREEN IS BALANCED; RIGHT?

4    A    I'M NOT SURE WHAT YOU MEAN BY "BALANCED."

5    Q    HORIZONTALLY AND VERTICALLY CENTERED?

6    A    YES.  AGAIN, I BELIEVE THIS IS A DISTORTED

7    VIEW OF HOW ONE SHOULD READ A PATENT.

8    Q    NOW, LET'S ALSO LOOK AT JX 1093, I THINK WE

9    HAVE A PHYSICAL -- THAT'S A PHYSICAL EXHIBIT, YOUR

10   HONOR.

11              CAN I JUST SEE THAT AND MAKE SURE IT'S

12   THE RIGHT ONE?

13              YOU'VE SEEN THIS PHYSICAL DEVICE BEFORE;

14   CORRECT?

15   A    YES.

16   Q    IT'S THE LG PRADA PHONE?

17   A    YES.

18   Q    CAN WE PUT UP SDX 3750 ON THE SCREEN, PLEASE.

19              MS. KREVANS:  YOUR HONOR, THERE'S A

20   LIMITING INSTRUCTION WITH RESPECT TO THIS DEVICE,

21   THAT IT IS NOT PRIOR ART FOR PURPOSES OF ANY

22   VALIDITY --

23              MR. VERHOEVEN:  I DISPUTE THAT, YOUR

24   HONOR.

25              THE COURT:  IS THIS THE KE850?
```

5118

```
 1              MR. VERHOEVEN:  NO, IT IS NOT, YOUR

 2    HONOR.  THIS IS NOT -- THIS IS IN EVIDENCE.

 3              MS. KREVANS:  IT WAS SUBJECT TO A

 4    LIMITING INSTRUCTION --

 5              THE COURT:  MOTION IN LIMINE NUMBER 3,

 6    THERE WAS A -- THIS IS COMING IN.  OVERRULED

 7    PLEASE.

 8              GO AHEAD, MR. VERHOEVEN.

 9              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

10              3750, HAVING BEEN PREVIOUSLY MARKED FOR

11              IDENTIFICATION, WAS ADMITTED INTO

12              EVIDENCE.)

13              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

14    Q    NOW, I'VE GOT A PICTURE OF THIS PHONE ON THE

15    SLIDE SDX 3750.  DO YOU SEE IT ON THE SCREEN?

16    A    I DO.

17    Q    THAT'S THE PHONE YOU HAVE IN YOUR HAND; RIGHT?

18    A    IT IS.

19    Q    OKAY.  AND THIS PHONE IS ALSO RECTANGULAR IN

20    SHAPE; CORRECT?

21    A    YES.

22    Q    ROUNDED CORNERS?

23    A    SLIGHTLY ROUNDED, YES.

24    Q    WHAT WAS THAT?

25    A    THEY'RE SLIGHTLY ROUNDED.
```

1    Q    OKAY.  IS THERE SOMETHING DIFFERENT THAN

2    SLIGHTLY ROUNDED IN THE '087?

3    A    I BELIEVE THE '087 LOOKS MORE -- THE OVERALL

4    IMPRESSION OF THE '087 IS MORE ROUNDED THAN THESE.

5    Q    OKAY.  AND THAT'S A DISTINGUISHING DIFFERENCE?

6    A    WITHIN A GIVEN RANGE, YES.

7    Q    SO IF THE CORNERS ARE MORE SHARPLY ROUNDED,

8    THAT'S A DISTINGUISHING FACTOR?

9    A    WITHIN THE OVERALL IMPRESSION, YES.

10   Q    OKAY.  IT HAS A LOZENGE SHAPED SLOT FOR THE

11   SPEAKER?

12   A    YES.

13   Q    IT'S GOT A LARGE TOUCHSCREEN?

14   A    I DON'T KNOW THAT IT'S A TOUCHSCREEN.

15   Q    WELL, IT'S A LARGE SCREEN?

16   A    YES.

17   Q    CENTERED?

18   A    IT SEEMS SO.

19   Q    AND THE LATERAL BORDERS ARE NARROWER AND THE

20   TOP AND BOTTOM BORDERS ARE WIDER?

21   A    YES.  AND IT ALSO HAS A HUGE BUTTON ACROSS THE

22   BOTTOM.

23   Q    SO ALL OF THIS ART WE'VE LOOKED AT IS

24   RECTANGULAR IN SHAPE WITH ROUNDED CORNERS; RIGHT?

25   A    I GUESS YOU COULD LOOK AT IT THAT WAY.

1   Q    IS THERE A WAY FOR US TO PUT EACH OF THOSE

2   IMAGES TOGETHER ON THE SCREEN?  MR. FISHER, I'M

3   SORRY.

4           THERE WE GO.  SO HERE WE'VE JUST PUT ALL

5   OF THESE IMAGES WE'VE LOOKED AT NEXT TO THE '087.

6   DO YOU SEE THAT, SIR?

7   A    I DO.

8   Q    IN ALL OF THESE OTHER DESIGN PATENTS AND THIS

9   PHONE ARE SIMILARLY RECTANGULAR TO THE '087; RIGHT?

10  A    YES.

11  Q    AND THEY ALL HAVE BIG SCREENS; RIGHT?

12  A    YES.

13  Q    SOME OF THEM HAVE LOZENGE SHAPED EARPIECES;

14  RIGHT?

15  A    YES.

16  Q    THEY ALL HAVE MINIMALIST DESIGN?

17  A    I DON'T KNOW WHAT THAT MEANS.

18  Q    YOU DON'T KNOW WHAT MINIMALIST DESIGN MEANS?

19  A    NOT IN YOUR COMPARISON OF THESE ONE VIEWS OF

20  ALL THESE PHONES.

21  Q    OKAY.

22  A    THIS IS NOT HOW YOU REVIEW FIGURES IN PATENTS.

23  Q    OKAY.  THEY ALL HAVE NARROWER LATERAL BORDERS

24  OF DIFFERING WIDTHS, BUT THEY ALL HAVE NARROWER

25  LATERAL BORDERS?

1    A    YES.

2    Q    AND LARGER BORDERS ABOVE AND BELOW THE SCREEN;

3    RIGHT?

4    A    THAT'S CORRECT.

5    Q    SO --

6    A    AT LEAST THREE OF THEM DON'T HAVE BEZELS.

7    Q    AND THAT'S IMPORTANT, RIGHT, THAT'S IMPORTANT,

8    THE ABSENCE OF A BEZEL TAKES YOU OUT OF SUBSTANTIAL

9    SIMILARITY, DOESN'T IT?

10   A    IN THE '087 PATENT, IT DOES.

11   Q    OKAY.  SO CIRCLING BACK, AS YOU UNDERSTAND THE

12   RULES OF THE ROAD, THE ORDINARY OBSERVER IS

13   SUPPOSED TO TAKE INTO ACCOUNT THIS PRIOR ART AND

14   LOOK AT WHAT IS DIFFERENT FROM THE PRIOR ART IN THE

15   '087 AND TAKE THOSE DIFFERENCES WHICH FOCUS ON

16   THOSE DIFFERENCES WHEN CONDUCTING THE INFRINGEMENT

17   ANALYSIS AS TO THE ACCUSED PHONES; RIGHT?

18   A    THIS IS AN INCORRECT ANALYSIS.  THESE ARE --

19   YOU ARE SUPPOSED TO BE COMPARING ALL OF THE VIEWS

20   OF EACH OF THESE PATENTS TO DEVELOP AN OVERALL

21   IMPRESSION OF WHAT THE ORDINARY OBSERVER WOULD

22   UNDERSTAND.

23   Q    OKAY.

24   A    YOU CANNOT GET THAT UNDERSTANDING FROM A

25   SINGLE VIEW.

1    Q    OKAY.  LET'S ACCEPT THAT.  YOU LOOK AT ALL THE

2    VIEWS OF EACH OF THESE FOUR ITEMS HERE TO THE LEFT

3    OF THE '087 PATENT, YOU WOULD AGREE WITH ME THAT

4    WHEN YOU DO THAT, THAT THE ANALYSIS SHOULD BE THAT

5    THE ATTENTION OF THE ORDINARY OBSERVER WOULD BE

6    DRAWN TO THOSE ASPECTS OF THE DESIGN IN THE '087

7    THAT ARE DIFFERENT FROM THE DESIGN ELEMENTS IN THE

8    PRIOR ART; RIGHT?

9    A    IF, IF THIS WERE A PROPER ANALYSIS, YOU COULD

10   SAY THAT, YES.

11   Q    OKAY.  NOW, LET'S GO TO -- LET'S GO TO YOUR

12   OPINIONS WITH RESPECT TO THE ACCUSED DEVICES.

13            NOW, YOU -- THE ONLY PERSON YOU SPOKE TO

14   FROM APPLE IN FORMING YOUR OPINIONS WAS

15   MR. STRINGER; CORRECT?

16   A    THAT'S CORRECT.

17   Q    WERE YOU HERE WHEN HE CAME AND TESTIFIED

18   BEFORE THE JURY?

19   A    I WAS.

20   Q    OKAY.  AND MR. STRINGER IS LISTED AS AN

21   INVENTOR ON THE '087 AND '677 PATENTS; CORRECT?

22   A    YES.

23   Q    AND SO FAR, AT LEAST, HE'S THE ONLY INVENTOR

24   ON THE PATENTS THAT WE'VE HEARD TESTIFY SO FAR;

25   RIGHT?

1    A    I DON'T KNOW THAT FOR SURE.

2    Q    HAVE YOU BEEN IN COURT EVERY DAY?

3    A    NO.

4    Q    OKAY.  WELL, I'LL REPRESENT THAT SO FAR HE'S

5    BEEN THE ONLY ONE THAT'S COME.

6    A    OKAY.

7    Q    SO LET'S LOOK AT WHAT HE SAID ABOUT WHAT HE

8    THINKS IS NEW AND UNIQUE ABOUT THE '087 DESIGN, OR

9    THE IPHONE, THE INITIAL IPHONE DESIGN.

10              CAN WE PUT UP SDX 37?

11              MS. KREVANS:  OBJECTION, YOUR HONOR.

12   IRRELEVANT TO THIS WITNESS'S TESTIMONY.  HE'S

13   TESTIFYING ABOUT THE IMPACT ON THE ORDINARY

14   OBSERVER.  MR. STRINGER IS AN INDUSTRIAL DESIGNER.

15   HE'S AN EXPERT.  HE'S NOT AN ORDINARY OBSERVER.

16              THE COURT:  OVERRULED.

17              MS. KREVANS:  CERTAINLY IT'S NOT

18   IMPEACHING.

19              THE COURT:  OVERRULED.  IF HE'S RELIED ON

20   ANY PART OF MR. STRINGER'S STATEMENTS, THEN IT MAY

21   COME IN.

22              GO AHEAD.

23              MR. VERHOEVEN:  MAY WE PUT UP THE SCREEN

24   OR THE SLIDE, THANK YOU.

25              FOR THE RECORD, THIS IS SDX 3191.  IT'S A

1    DEMONSTRATIVE SLIDE.

2    Q    MR. BRESSLER, ON THE LEFT IS A HIGHLIGHTED

3    VERSION OF A COUPLE OF THE FIGURES FROM THE '087

4    PATENT.

5              DO YOU RECOGNIZE THOSE?

6              MS. KREVANS:  OBJECTION, YOUR HONOR.

7    THERE IS NO TESTIMONY OR FOUNDATION THAT THIS

8    WITNESS RELIED ON ANY STATEMENTS FROM MR. STRINGER,

9    CERTAINLY NOT HIS TRIAL TESTIMONY, IN FORMING HIS

10   OPINIONS.  THERE'S NO FOUNDATION FOR THIS TO BE

11   PART OF THIS WITNESS'S OPINION.

12             AND, AGAIN, MR. STRINGER IS NOT THE

13   ORDINARY OBSERVER.

14             THE COURT:  OVERRULED.  GO AHEAD.

15             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

16   Q    SO LET'S LOOK AT, ON JULY 31ST WHAT

17   MR. STRINGER SAID TO THE JURY ABOUT THIS FEATURE

18   THAT I'VE HIGHLIGHTED HERE, THE BEZEL ON THE '087

19   PATENT.

20             "QUESTION:  ANOTHER IMPORTANT DESIGN

21   FEATURE WITH RESPECT TO THE INITIAL IPHONE WAS THE

22   '087 -- AND THE '087 PATENT WAS THAT IT HAD THIS

23   CONTINUOUS RIM, OR BEZEL I THINK IS THE WORD YOU

24   USED.  IS THAT RIGHT?"

25             MR. STRINGER SAYS, "YES."

96.25

1           "QUESTION:  AND YOU AGREE WITH ME, THAT

2      WAS AN IMPORTANT ASPECT OF THIS DESIGN, RIGHT?

3           "ANSWER:  YES.

4           "QUESTION:  AND THE -- IT WAS IMPORTANT

5      THAT THE BEZEL GO CONTINUOUSLY AROUND THE RIM OF

6      THE PHONE, RIGHT?

7           "ANSWER:  YES.

8           "QUESTION:  AND IT WAS ALSO IMPORTANT

9      THAT THE BEZEL BE OF UNIFORM THICKNESS, CORRECT?

10          "ANSWER:  YES."

11          AND YOU CAN SEE FROM THE IMAGE, THE BEZEL

12     GOES ALL THE WAY AROUND AND IT HAS UNIFORM

13     THICKNESS ALL THE WAY AROUND.

14          DO YOU SEE THAT, SIR?

15     A    YES, I SEE IT.

16     Q    NOW, YOU AGREE WITH MR. STRINGER, DON'T YOU?

17     A    I AGREE THAT THAT WAS HIS GOAL AS A DESIGNER.

18     Q    AND THAT WAS AN IMPORTANT DESIGN FEATURE OF

19     THE '087, IT'S A DISTINCTION FROM THESE OTHER PRIOR

20     ART IMAGES WE LOOKED AT, THE UNIFORM BEZEL AND

21     UNIFORM THICKNESS?

22     A    I DON'T BELIEVE THAT'S THE ONLY DISTINCTION

23     FROM IT.  IT WAS ONE OF THEM.

24     Q    IT WAS ONE OF THEM?

25     A    IT MAY BE ONE OF THEM, YES.

1    Q    SO THIS IS ONE OF THE THINGS THAT THE ORDINARY

2    OBSERVER SHOULD FOCUS ON IN LOOKING AT THE ACCUSED

3    PRODUCTS; RIGHT?

4    A    NO.  I BELIEVE THE ORDINARY OBSERVER IS SEEING

5    AND DEVELOPING AN OVERALL IMPRESSION OF THE DESIGN

6    WHEN ALL OF THOSE ELEMENTS ARE TAKEN INTO

7    CONSIDERATION AT THE SAME TIME.

8            I DON'T BELIEVE AN ORDINARY OBSERVER

9    LOOKS AT ONE PART OF THE PHONE AT A TIME.

10    Q    SIR, DO YOU HAVE THE SAMSUNG INFUSE 4G IN

11    FRONT OF YOU, JX 1027?

12    A    I THINK I HAVE IT HERE SOMEWHERE.

13    Q    IF YOU DON'T --

14    A    CAN I CLOSE THIS BINDER?

15    Q    MS. KHAN HAS IT.  IT'S A PHYSICAL EXHIBIT,

16    SIR.

17            THAT'S THE ACTUAL PHYSICAL PHONE, RIGHT?

18    A    THIS IS WHICH ONE.

19    Q    THE INFUSE 4G, JX 1027.

20    A    YES, I BELIEVE IT IS.

21    Q    OKAY.  LET'S PUT UP SDX 3753.

22            THE INFUSE 4G HAS NO BEZEL, DOES IT, SIR?

23    A    I BELIEVE IT HAS A CREASE LINE THAT INFERS THE

24    SHAPE OF A BEZEL.

25    Q    SIR, THE INFUSE 4G HAS NO BEZEL, DOES IT?

1    A    AS A SEPARATE PART, THAT'S CORRECT.

2              MR. VERHOEVEN:  YOUR HONOR, IF I MAY

3    APPROACH AND LET THE JURORS INSPECT THE 4G, THE

4    INFUSE 4G?

5              THE COURT:  YES, GO AHEAD.  CHANGE YOU.

6    BY MR. VERHOEVEN:

7    Q    DIDN'T YOU JUST TESTIFY A FEW MINUTES AGO THAT

8    IF THE PHONE DOESN'T HAVE A BEZEL, THAT TAKES IT

9    OUT OF BEING SUBSTANTIALLY SIMILAR, SIR?

10   A    NO.  I TESTIFIED THAT THE OVERALL IMPRESSION

11   OF THE ORDINARY OBSERVER SHOULD BE SUBSTANTIALLY

12   THE SAME AS THE FIGURES IN THE PATH.

13             WHETHER YOU CALL IT A BEZEL OR NOT, THERE

14   IS A SHAPE ON THIS PHONE THAT CAUSES A BELT LINE,

15   IF YOU WILL, OR A CREASE LINE THAT YOU SEE WITH THE

16   HIGHLIGHT THAT DOES MAKE IT SIMILAR TO THE

17   IMPRESSION THAT THE ORDINARY OBSERVER WOULD HAVE OF

18   THAT DESIGN.

19   Q    SO EVEN THOUGH YOU ADMIT THAT THE INFUSE 4G

20   HAS NO BEZEL, IT'S YOUR TESTIMONY TO THIS JUROR,

21   JURY, THAT IT'S STILL SUBSTANTIALLY SIMILAR TO THE

22   '087?

23   A    I BELIEVE THE OVERALL IMPRESSION IS SIMILAR,

24   YES.

25   Q    MS. KHAN, COULD YOU SHOW MR. BRESSLER PHYSICAL

1    PHONE JX 1019, THE GALAXY S 4G?

2    A    DOES THIS HAVE A STICKER ON IT?

3    Q    IS THAT THE CORRECT PHONE?  WE'LL REPRESENT

4    THAT'S THE CORRECT PHONE, SIR.  THE GALAXY S 4G?

5    A    OH, I SEE, IT DOES HAVE A STICKER ON THE SIDE,

6    THE JX 1019.

7    Q    DO YOU AGREE THAT'S THE GALAXY S 4G?

8    A    IT APPEARS TO BE.

9              MS. KREVANS:  YOUR HONOR, THERE IS AN

10   EXHIBIT WHICH HAS BEEN AGREED ON BY THE PARTIES

11   WHICH IS A JOINT EXHIBIT THAT IS THE GALAXY S 4G.

12   IT'S IN EVIDENCE.  THIS IS NOT THAT PHONE.  I

13   OBJECT TO THIS.  THEY SHOULD SHOW THE ACTUAL

14   EXHIBIT WHICH THE PARTIES HAVE AGREED IS THE

15   GALAXY S 4G.

16             THE COURT:  WELL, I THOUGHT IT WAS

17   EXHIBIT 1019.

18             MS. KREVANS:  IT IS.  BUT THAT'S NOT THE

19   PHONE THEY'VE SHOWED HIM.  THIS PHONE HAS NO

20   EXHIBIT STICKER ON IT.

21             MR. VERHOEVEN:  IT DOES.

22             THE COURT:  DOES IT HAVE IT ON THE SIDE?

23             MS. KREVANS:  THAT'S NOT THE EXHIBIT

24   STICKER, YOUR HONOR.  THAT'S NOT THE EXHIBIT

25   THAT'S --

```
 1                THE COURT:  IT SAYS JX 1019.

 2                MS. KREVANS:  SOMEONE, I DON'T KNOW WHO,

 3      HAS PUT THAT ON THE PHONE.  I DON'T KNOW IF THAT'S

 4      THE RIGHT ONE.  WE HAVE IT.

 5                THE COURT:  WHERE IS IT?  WHERE IS THE

 6      OTHER ONE.

 7                THE WITNESS:  RIGHT HERE.

 8                MS. KREVANS:  RIGHT THERE.

 9                THE COURT:  OKAY.  DOES IT HAVE A STICKER

10      ON IT?

11                THAT SAYS A-S 469.

12                THE WITNESS:  NO, IT -- OH, NO, THAT'S --

13                THE COURT:  IS THAT -- IS IT SLIGHTLY

14      DIFFERENT?  DOES IT HAVE HAS JX 1019 ON IT

15      ANYWHERE?

16                THE WITNESS:  YES, IT DOES.  I'M HAPPY TO

17      HAND IT TO YOU.

18                THE COURT:  OH, I SEE.  OKAY.  ALL RIGHT.

19      WHY DO WE HAVE TWO UP THERE?

20                MS. KREVANS:  THE A-S NUMBERS, YOUR

21      HONOR, WERE NUMBERS THAT THE PARTIES USED TO KEEP

22      TRACK OF THE DEVICES DURING DEPOSITION AND

23      INSPECTION BEFORE THERE WERE ACTUAL FORMAL EXHIBIT

24      NUMBERS.

25                THE COURT:  WHY DO WE HAVE TWO PHONES UP
```

```
 1    THERE?
 2              MS. KREVANS:  I DON'T KNOW WHY THERE'S
 3    ANOTHER EXHIBIT.  THAT'S WHY I SUGGEST WE USE THE
 4    ACTUAL EXHIBIT NUMBER.
 5              THE COURT:  WHY DON'T YOU TAKE BACK THE
 6    1019 THAT'S NOT THE OFFICIAL ONE, JUST SO WE DON'T
 7    GET CONFUSED WHEN THE JURY GOES INTO THE
 8    DELIBERATION ROOM, THEY SHOULD HAVE JUST ONE SET.
 9              WHERE IS THAT?  THE SECOND ONE.
10              MR. VERHOEVEN:  HE'S GOT IT IN HIS HAND.
11              THE COURT:  ALL RIGHT.  WHAT HAPPENED TO
12    THE OTHER ONE THAT SAYS 1019.
13              MR. VERHOEVEN:  MS. KHAN TOOK IT BACK.
14              THE COURT:  ALL RIGHT.  THANKS.
15              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
16    Q    SO WE'VE GOT IT NOW.
17    A    YES.
18    Q    THAT'S THE GALAXY S 4G, JX 1019 IN FRONT OF
19    YOU?
20    A    YES, I BELIEVE SO.
21    Q    OKAY.  JUST SO THAT WE CAN REFRESH OURSELVES,
22    LET'S GO BACK TO SLIDE SDX 3791.
23              AND, AGAIN, MR. STRINGER SAYS, "IT WAS
24    ALSO IMPORTANT THAT THE BEZEL BE OF UNIFORM
25    THICKNESS," AND IF YOU LOOK AT THE PICTURE FOR THE
```

1    '087, YOU CAN SEE IT'S CLEARLY OF UNIFORM THICKNESS

2    THROUGHOUT THE CIRCUMFERENCE.

3                MR. STRINGER TESTIFIED THAT WAS AN

4    IMPORTANT DESIGN CHARACTERISTIC, DIDN'T HE?

5    A    TO HIM AS THE INDUSTRIAL DESIGNER OF THE PHONE

6    IT WAS, YES.

7    Q    NOW, LET'S GO TO SDX 3755, WHICH IS A

8    DEMONSTRATIVE.

9                NOW, HERE I'VE GOT THE '087 PICTURES ON

10   THE LEFT AND THE IMAGE OF THE GALAXY S 4G, JX 1019,

11   ON THE RIGHT.

12               DO YOU SEE THAT, SIR?

13   A    I DO, BUT I BELIEVE THIS IS NOT WHAT AN

14   ORDINARY OBSERVER WOULD SEE.

15   Q    YOU CAN'T -- I DIDN'T ASK YOU THAT, SIR.  I

16   JUST ASKED YOU IF YOU SAW IT.

17   A    YES, I SEE IT.

18   Q    OKAY.  AND THIS SLIDE HERE, WE'VE HIGHLIGHTED

19   THE BEZEL, THE GALAXY S 4G DOES HAVE A BEZEL;

20   RIGHT?

21   A    IT DOES.

22   Q    BUT THAT BEZEL IS NOT OF UNIFORM THICKNESS, IS

23   IT?

24   A    EITHER IN -- THERE ARE MINOR DIFFERENCES, YES.

25   Q    IT IS NOT OF UNIFORM THICKNESS, IS IT, SIR?

96:32

```
 1    A    NO.

 2              MR. VERHOEVEN:  YOUR HONOR, IF I MAY ASK

 3    TO PASS THAT PHONE TO THE JURY AS WELL?

 4              THE COURT:  PLEASE, GO AHEAD.

 5    BY MR. VERHOEVEN:

 6    Q    A CONSUMER, LOOKING AT THE TOP AND BOTTOM OF

 7    THE GALAXY S 4G, WOULD CLEARLY SEE THAT ONE SIDE OF

 8    THE -- ON ONE SIDE THE BEZEL IS MUCH THINNER AND ON

 9    THE OTHER SIDE IT'S MUCH THICKER; RIGHT?

10    A    RIGHT.  BUT THEY NEVER SEE IT LIKE THIS.

11    Q    OH.  THEY NEVER LOOK AT THE TOP AND THE

12    BOTTOM?

13    A    NOT AT THE SAME TIME.

14    Q    THEY'D HAVE TO TURN IT AROUND.

15    A    YEAH, THEY WOULD HAVE TO TURN IT AROUND OR

16    HAVE TWO.

17    Q    OKAY.  THEY COULD TURN IT AROUND, THOUGH,

18    COULDN'T THEY?

19    A    THEY COULD, CERTAINLY.

20    Q    AND IS IT YOUR TESTIMONY THAT THE JUROR THAT

21    THIS ORDINARY OBSERVER WILL JUST GLANCE AT THE

22    PHONE, THEY WOULDN'T STUDY IT AND LOOK CAREFULLY AT

23    THE PHONE?

24    A    IT'S MY OPINION THAT THE ORDINARY OBSERVER

25    FORMS AN OVERALL IMPRESSION OF WHAT THE DESIGN IS.
```

```
 1              THEY DO NOT FOCUS ON MINUTE DETAILS LIKE
 2      THE CHANGE OF A MILLIMETER ONE DIRECTION OR THE
 3      OTHER IN A THIN PIECE OF MATERIAL AROUND THE EDGE
 4      OF THE PHONE.
 5      Q    YOU WOULD AGREE WITH ME THAT SOMEONE LOOKING
 6      AT THE TOP AND THE BOTTOM OF THE GALAXY S 4G WOULD
 7      SEE IT'S NOT A UNIFORM THICKNESS; RIGHT, SIR?
 8      A    IF THEY CONCENTRATED ON THE DETAIL, YES.
 9      Q    WELL, DETAILS ARE IMPORTANT ON A DESIGN
10      PATENT, AREN'T THEY?  YOU SAID SO ON DIRECT?
11      A    THEY ARE, YES.
12      Q    OKAY.  LET'S GO TO ANOTHER IMPORTANT DESIGN
13      ASPECT THAT MR. STRINGER TALKED ABOUT.
14              CAN WE GO TO SDX 3792.
15              THIS IS FROM THE SAME DAY WHEN
16      MR. STRINGER CAME HERE AND TESTIFIED TO THE JURORS.
17              YOU WERE HERE FOR THIS; RIGHT?
18      A    YES.
19      Q    FOR THE RECORD, THIS IS FROM PAGE 514, LINES 9
20      THROUGH 16 OF THE TRANSCRIPT FROM JULY ARE 31ST,
21      2012.
22              AND I ASKED MR. STRINGER?
23              "QUESTION:  ANOTHER DESIGN ASPECT -- OR
24      AN ASPECT OF THE DESIGN IN THE '087 PATENT THAT WAS
25      IMPORTANT TO YOU AND YOUR TEAM AS DESIGNERS WAS
```

1    THAT THE FRONT SURFACE, FOR EXAMPLE, IF YOU LOOK AT

2    FIGURE 16 OR FIGURE 15, YOU CAN SEE IT, THE FRONT

3    SURFACE WAS COMPLETELY FLAT ALL THE WAY ACROSS THE

4    FRONT.  THAT WAS AN IMPORTANT DESIGN ELEMENT;

5    RIGHT?

6            "ANSWER:  YES."

7            THAT'S REFERRING TO THIS SURFACE HERE

8    WHERE WE'VE DRAWN THE ARROW; CORRECT?

9    A    I SEE THAT.

10   Q    AND IF WE CAN GO TO SLIDE SDX 3793, I

11   CONTINUED AND ASKED HIM, AND THIS IS FROM 514,

12   LINES 17 THROUGH 22.

13           "QUESTION:  IN FACT," YOU BELIEVE -- "I

14   BELIEVE YOU TESTIFIED TO THIS, BUT ISN'T IT TRUE

15   THAT THE DESIGN HERE INTENTIONALLY WAS THAT THE

16   BEZEL, OR THIS RIM, WAS INTENTIONALLY DESIGNED TO

17   BE NOMINALLY FLUSH WITH THE GLASS?  IS THAT RIGHT?

18           "ANSWER:  YES.

19           "QUESTION:  SOMETHING THAT DISTINGUISHED

20   IT FROM OTHER DESIGNS PREVIOUSLY; RIGHT?

21           "ANSWER:  THAT -- THAT WAS OUR -- THAT

22   WAS OUR DESIGN."

23           DO YOU SEE THAT, SIR?

24   A    I DO.  I BELIEVE "NOMINALLY FLUSH" DOESN'T

25   MEAN EXACTLY FLUSH.

```
 1    Q    OKAY.  IT MEANS NOMINALLY FLUSH?

 2    A    YES.

 3    Q    IT'S AS FLUSH AS YOU CAN MAKE IT WITHIN DESIGN

 4    TOLERANCES?

 5    A    OR AS FLUSH AS YOU CAN MAKE IT WITHIN THE

 6    OVERALL IMPRESSION OF THE OBSERVER.

 7    Q    THE INTENT IS TO MAKE IT FLUSH ALL THE WAY

 8    ACROSS FROM EDGE TO EDGE; ISN'T THAT WHAT IT'S

 9    SAYING?

10    A    HIS INTENT AS THE DESIGNER, YES.

11    Q    IN FACT, IF WE CAN GO TO THE NEXT SLIDE, 794,

12    HE CONTINUED AND THIS IS 514:23 THROUGH 515:1 OF

13    THE JULY 31ST TRANSCRIPT.

14              "QUESTION:  AND YOU COULD HAVE DESIGNED A

15    PHONE WHERE THE BEZEL PROTRUDED BEYOND THE GLASS,

16    BUT YOU INTENTIONALLY CHOSE NOT TO DO THAT; RIGHT?

17              "ANSWER:  YES."

18              DO YOU REMEMBER THAT TESTIMONY?

19    A    I DO.

20    Q    AND IF WE GO TO THE NEXT SLIDE, 3795,

21    MR. STRINGER CONTINUED ON JULY 31ST AT PAGE 519:2

22    THROUGH 9, "AND, AGAIN, LOOKING AT FIGURE 16 AND

23    15, THE SIDE VIEWS, POSITIONING -- AN IMPORTANT

24    DESIGN ELEMENT HERE WAS POSITIONING THE GLASS FLUSH

25    WITH THE BEZEL; RIGHT?
```

```
1              "ANSWER:  YES.

2              "QUESTION:  EVEN THOUGH THAT MIGHT

3      PRESENT SOME MANUFACTURING DIFFICULTIES; CORRECT?

4              "ANSWER:  I AGREE."

5              DO YOU REMEMBER THAT TESTIMONY?

6      A    I DO.

7      Q    YOU DON'T DISAGREE WITH THE INVENTOR, DO YOU?

8      A    I AGREE THAT WAS HIS INTENTION.

9      Q    WAS IT AN IMPORTANT DESIGN ELEMENT?

10     A    I AGREE HE BELIEVED IT WAS, YES.

11     Q    ALL RIGHT.  NOW, LET'S GO TO -- I DON'T KNOW

12     IF THE JURORS HAVE PASSED THE PHONE BACK UP.

13              ALL RIGHT.  MS. KHAN?

14              THE WITNESS:  MAY I HAVE THAT ONE BACK?

15     THANK YOU.

16              MR. VERHOEVEN:  MS. KHAN, IF YOU COULD

17     HAND JX 1019 AGAIN, THE GALAXY S 4G.

18              ONE SECOND, YOUR HONOR.

19              THE COURT:  GO AHEAD, PLEASE.

20              MR. VERHOEVEN:  YOUR HONOR, MAY I

21     APPROACH?  I THINK THE WITNESS HAS ANOTHER PHYSICAL

22     EXHIBIT THAT I'D LIKE TO DIRECT HIM TO, BUT I

23     CAN'T -- I NEED TO FIND IT.

24     Q    MR. BRESSLER, I JUST HANDED YOU PHYSICAL

25     EXHIBIT JX 1000.  DO YOU SEE IT?
```

1      A      I DO.

2      Q      AND THAT'S THE INITIAL IPHONE; CORRECT?

3      A      IT IS.

4      Q      CAN WE PUT UP SDX 3758?

5             NOW, YOU CAN RUN YOUR FINGER ACROSS THE

6      TOP OF THE INITIAL IPHONE AND FEEL THAT THE FRONT

7      SURFACE, CONSISTENT WITH THE '087 DESIGN ELEMENT

8      THAT MR. STRINGER THOUGHT WAS IMPORTANT, THAT FRONT

9      SURFACE IS COMPLETELY, THE GLASS IS COMPLETELY

10     FLUSH WITH THE SURROUNDING BEZEL; RIGHT?

11     A      I WOULD SAY IT'S NOMINALLY FLUSH.

12     Q      IT'S NOMINALLY FLUSH?

13     A      YES.

14     Q      IT'S IMPORTANT WITH WHAT MR. STRINGER SAID WAS

15     IMPORTANT ON THE '087, AS WELL AS THE INITIAL

16     IPHONE?

17     A      IT IS, YES.

18     Q      SOMETHING THAT WAS IMPORTANT THAT HADN'T BEEN

19     DONE BEFORE; RIGHT?

20     A      I BELIEVE THE CONTINUOUS GLASS FACE HADN'T

21     BEEN DONE BEFORE, YES.

22     Q      THE FRONT SURFACE BEING FLAT ALL THE WAY

23     ACROSS AND THE GLASS BEING FLUSH WITH THE BEZEL HAD

24     NOT BEEN DONE BEFORE?  ISN'T THAT WHAT MR. STRINGER

25     STATED?

```
 1    A    AS YOU STATED, I'M NOT 100 PERCENT SURE THAT I

 2    KNOW.  I KNOW THAT THE CONTINUOUS GLASS FRONT FACE

 3    ALL THE WAY EDGE TO EDGE HAD NEVER BEEN DONE

 4    BEFORE.

 5    Q    WELL, WHY DON'T YOU TAKE A LOOK AT JX 1019,

 6    THE GALAXY SAMSUNG SMART 4G, PHYSICAL EXHIBIT?

 7    A    YES.

 8    Q    AND YOU SEE WE'VE GOT IT DEPICTED HERE IN THE

 9    RIGHT BOX ON SDX 3758?

10    A    I SEE THAT.

11    Q    YOU'D AGREE THAT THE FRONT SURFACE OF THE

12    GALAXY S 4G IS NOT FLAT ALL THE WAY ACROSS?

13    A    I SEE THAT YOU'VE DEMONSTRATED THAT, YES.

14    Q    YOU DON'T DISAGREE WITH THAT, DO YOU, SIR?

15    A    I BELIEVE THE OVERALL IMPRESSION THAT THE

16    ORDINARY OBSERVER WOULD HAVE OF THAT DESIGN WAS

17    THAT THEY'RE SUBSTANTIALLY THE SAME.

18    Q    SIR, YOU WOULD AGREE THAT SAMSUNG GALAXY S 4G

19    IS NOT FLAT ALL THE WAY ACROSS?  IN FACT, THE BEZEL

20    PROTRUDES ABOVE THE GLASS?

21    A    ABOUT A HALF A MILLIMETER, YES.

22    Q    AND THAT'S IMPORTANT, ISN'T IT?

23    A    I BELIEVE IT WAS IMPORTANT TO MR. STRINGER.

24    Q    AND IT'S IMPORTANT FOR FUNCTIONAL REASONS?  IF

25    YOU TURN YOUR PHONE UPSIDEDOWN AND THE BEZEL
```

96:39

```
 1    PROTRUDES, THEN THE GLASS DOESN'T SCRATCH; RIGHT?
 2    A    THAT IS TRUE.
 3              MR. VERHOEVEN:  YOUR HONOR, MAY I
 4    APPROACH AND HAND THE JURORS THE IPHONE AND THE S G
 5    TO FEEL THE EDGES?
 6              THE COURT:  PLEASE, GO AHEAD.
 7    BY MR. VERHOEVEN:
 8    Q    AND LET'S GO TO --
 9              JUST A SECOND, YOUR HONOR.
10              SDX 3759.  HERE WE'VE GOT THE INFUSE 4G.
11              MS. KHAN, COULD YOU BRING THE PHYSICAL
12    EXHIBIT BACK TO MR. BRESSLER.  JX 1027, UNLESS YOU
13    ALREADY HAVE IT, MR. BRESSLER.
14    A    I THINK I MAY HAVE IT.  WHICH ONE WAS IT
15    AGAIN?  1027?
16    Q    1027, THE INFUSE?
17    A    I HAVE THAT, YES.
18    Q    NOW, YOU CAN RUN YOUR FINGER ACROSS THE FRONT
19    SURFACE OF THE INFUSE AS WELL; RIGHT?
20    A    YES.
21    Q    AND ISN'T IT TRUE, SIR, THAT AS WITH THE
22    GALAXY S 4G, THE INFUSE 4G, THE FRONT SURFACE IS
23    NOT COMPLETELY FLAT ALL THE WAY ACROSS?  THE
24    HOUSING PROTRUDES ABOVE THE GLASS?
25    A    A MINUTE AMOUNT, YES.
```

96:40

```
1    Q    THE HOUSING PROTRUDES ABOVE THE GLASS, RIGHT?

2    A    APPARENTLY A MINUTE AMOUNT, YES.

3    Q    SO WHEN YOU PUT THE PHONE DOWN, THE GLASS

4    DOESN'T TOUCH; RIGHT?

5    A    I GUESS.  I MEAN, IT IS SUCH A SMALL AMOUNT

6    THAT YOU HAD TO DRAW AN ARROW ON A BIG PHOTOGRAPH

7    TO SHOW THE DIFFERENCE.

8    Q    WELL, WE COULD SHOW THE JURORS WHAT THE PHONE

9    ACTUALLY --

10   A    THAT'S FINE.

11   Q    -- FEELS LIKE AND LOOKS LIKE IF YOU'D LIKE,

12   SIR?

13   A    SURE, PLEASE.

14              MR. VERHOEVEN:  OKAY.  IF I MAY APPROACH,

15   YOUR HONOR?

16              THE COURT:  PLEASE, GO AHEAD.

17              MR. VERHOEVEN:  SORRY, YOUR HONOR.  I

18   ACCIDENTALLY TURNED IT ON WHEN I WAS HANDING IT TO

19   THEM.  LET ME TURN IT BACK OFF.

20              NOW IT'S BOOTING UP, YOUR HONOR.  I'M

21   SORRY.

22              THE COURT:  THAT'S OKAY.

23              MR. VERHOEVEN:  THERE WE GO.

24              (PAUSE IN PROCEEDINGS.)

25              MR. VERHOEVEN:  THERE WE GO.
```

9641

```
1    Q    NOW LET'S GO TO SDX 3796.
2              NOW, MR. STRINGER ALSO TESTIFIED ABOUT
3    THE ROUNDED CORNERS ON THE '087 PATENT WHEN HE
4    TESTIFIED ON JULY 31ST.  DO YOU REMEMBER THAT?
5    A    I DO.
6    Q    AND HE WAS ASKED -- AND THIS IS FROM PAGE 513,
7    LINES 9 THROUGH 15.
8              "QUESTION:  NOW I'M GOING TO ASK YOU A
9    FEW QUESTIONS ABOUT THE DESIGN ELEMENTS WITH
10   RESPECT TO THE '087 PATENT.  OKAY?
11             "IN YOUR VIEW, ONE IMPORTANT DESIGN
12   ASPECT OF THE '087 PATENT, AND THE INITIAL IPHONE,
13   WAS THAT IT HAD FOUR EVENLY RADIUS CORNERS;
14   CORRECT?
15             "ANSWER:  YES."
16             DO YOU REMEMBER THAT TESTIMONY?
17   A    I DO.
18   Q    AND YOU ALSO SAW A WITNESS STATEMENT THAT
19   MR. STRINGER SUBMITTED IN CONNECTION WITH AN
20   EARLIER HEARING; RIGHT?
21   A    I BELIEVE SO.
22   Q    AND DO YOU REMEMBER IN THAT SWORN WITNESS
23   STATEMENT, HE REPEATED SEVERAL TIMES THAT AN
24   IMPORTANT DESIGN ELEMENT IN THE IPHONE WAS THAT
25   EACH OF THE CORNERS HAD EQUAL RADII?
```

```
1    A    I DON'T RECALL THAT.

2    Q    WELL, THAT'S WHAT HE'S SAYING HERE; RIGHT?

3    A    YES.

4    Q    LET'S GO TO SDX 3762.

5              SO WHAT HE'S TALKING ABOUT IS THE SLOPE

6    OF THIS CURVE AND THE ROUNDED CORNERS; RIGHT?

7    A    HE WAS TALKING ABOUT THE CURVATURE, YES.

8    Q    YEAH.  RIGHT.  WHICH IS CALLED THE RADIUS;

9    CORRECT?

10   A    YES.  WELL, THE RADIUS -- THE RADIUS WILL

11   DEFINE THE CURVE.  IT'S NOT CALLED THE RADIUS.

12   Q    RIGHT.  AND SO HE'S SAYING AN IMPORTANT DESIGN

13   ELEMENT FOR THE INITIAL IPHONE AND THE '087 WAS

14   THAT FOR EACH OF THESE CORNERS, THE MEASUREMENT OF

15   THE CURVE, THE RADIUS IS EQUAL, IT'S THE SAME, IT'S

16   SYMMETRICAL; RIGHT?

17   A    I BELIEVE IT WAS HIS INTENTION THAT THEY

18   SHOULD LOOK THE SAME.

19   Q    OKAY.  AND HE ACTUALLY SAID EQUAL RADII IS

20   WHAT HE SAID; RIGHT?

21   A    YES, BUT I THINK HE WAS TALKING ABOUT THE

22   VISUAL IMPRESSION HE WAS TRYING TO CREATE.

23   Q    WELL, HE SAID "EQUAL RADII"?

24   A    HE DID, YES.

25   Q    OKAY.  NOW, LET'S GO TO -- DO YOU HAVE THE --
```

1     DO YOU HAVE THE GALAXY 4S AGAIN, EXHIBIT JX 1019.

2              NOW, SDX 3763, ISN'T IT TRUE, SIR, THAT

3     THE RADII ON THE TOP ROUNDED CORNERS IN THE SAMSUNG

4     GALAXY S 4G ARE DIFFERENT THAN THE RADII ON THE

5     BOTTOM ROUNDED CORNERS?

6     A    THAT'S WHAT THAT SLIDE IS INDICATING.

7     Q    WHEN YOU DID YOUR ANALYSIS, YOU MADE NO EFFORT

8     TO ASCERTAIN WHETHER THE ACCUSED PHONES HAD EQUAL

9     RADII, DID YOU, SIR?

10    A    I DID NOT.

11    Q    DO YOU DISPUTE THAT THE RADII ON THE TOP OF

12    THE -- THE TOP TWO ROUNDED CORNERS OF THE SAMSUNG

13    GALAXY S 4G ARE DIFFERENT FROM THE RADII ON THE

14    BOTTOM ROUNDED CORNERS?

15    A    I COULDN'T DISPUTE YOUR MEASUREMENT BECAUSE I

16    HAVEN'T TAKEN THEM.

17    Q    SO YOU DON'T DISPUTE THAT THAT IMPORTANT

18    DESIGN ELEMENT THAT MR. STRINGER IDENTIFIED IN THE

19    '087 PATENT DOES NOT EXIST IN THE GALAXY, SAMSUNG

20    GALAXY S 4G?

21    A    I BELIEVE HE WAS TALKING OF WHAT SOMEONE

22    WOULD BE SPEAKING OF -- WHAT SOMEONE WOULD

23    UNDERSTAND WHEN THEY SEE THE DESIGN, WHICH I DON'T

24    UNDERSTAND TO BE DIMENSIONALLY IDENTICAL.

25    Q    HE SAID EQUAL RADII, SIR?

```
 1    A    HE DID.

 2    Q    THAT'S VERY PRECISE?

 3    A    IN WORDS, YES.  IN PEOPLE'S VISUAL PERCEPTION,

 4    I DON'T THINK IT IS QUITE SO PRECISE.

 5              MR. VERHOEVEN:  CAN I HAVE ONE SECOND TO

 6    CONFER WITH COUNSEL, YOUR HONOR?

 7              THE COURT:  PLEASE, GO AHEAD.

 8              (PAUSE IN PROCEEDINGS.)

 9              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

10    Q    NOW, MR. STRINGER ALSO DISCUSSED THE LOZENGE

11    SHAPED DESIGN ELEMENT IN THE '087 PATENT.

12              DO YOU REMEMBER THAT GENERALLY?

13    A    GENERALLY I REMEMBER THAT, YES.

14    Q    AND CAN WE PUT UP SDX 3797.  HERE WE'VE GOT

15    THE '087 ON THE LEFT AND MR. STRINGER'S TESTIMONY

16    FROM JULY 31ST, PAGE 521, 2 THROUGH 11.

17              "QUESTION:  IT WAS IMPORTANT TO YOU, AS

18    THE DESIGN TEAM, THAT THAT LOZENGE SHAPED DESIGN BE

19    CENTERED VERTICALLY ON THE PHONE; RIGHT?

20              "ANSWER:  YES.

21              "QUESTION:  AND THAT -- THAT'S BETWEEN

22    THE TOP OF THE DISPLAY ELEMENT, WHICH WE SEE HERE,

23    AND THE TOP OF THE PHONE?  IS THAT CORRECT?

24              "ANSWER:  CENTERED THAT WAY ALSO.

25              "QUESTION:  OKAY.  SO IT'S CENTERED IN
```

```
 1    BOTH WAYS?"
 2            DO YOU SEE THAT?
 3    A    I SEE THAT.  I DON'T EXACTLY AGREE WITH THE
 4    WORDS THAT ARE THERE.  BUT, YES, I SEE THAT.
 5    Q    SO MR. STRINGER IS SAYING THIS LOZENGE HERE
 6    SHOULD BE CENTERED BOTH HORIZONTALLY AND
 7    VERTICALLY?
 8    A    I BELIEVE THE WORDS SAY IN THE PHONE, AND I
 9    BELIEVE HE WAS SAYING -- I BELIEVE HE'S REFERENCING
10    THE BORDER.
11    Q    I'M SORRY.
12    A    NOT CENTERED ON THE PHONE, SIR.  I'M SORRY.
13    Q    I'M SORRY.  I DIDN'T HEAR YOU.  YOU BELIEVE
14    IT'S REFERENCING WHAT?
15    A    THE LOZENGE IS NOT IN THE CENTER OF THE PHONE.
16    Q    NO, NO, CENTERED BETWEEN THE TOP OF THE
17    DISPLAY ELEMENT AND THE BEZEL?
18    A    YES, YES.
19    Q    AND HE'S SAYING AN IMPORTANT DESIGN ELEMENT IN
20    THIS DESIGN -- BY THE WAY, DO YOU KNOW IF THIS IS A
21    MINIMALIST DESIGN?
22    A    I CERTAINLY BELIEVE IT DOESN'T HAVE MUCH
23    ORNAMENT.
24    Q    OKAY.  SO YOU KNOW --
25    A    I BELIEVE IT'S A FAIRLY PURE DESIGN, YES.
```

1    Q    OKAY.  SO HE SAID IT WAS IMPORTANT TO HAVE

2    THIS LOZENGE CENTERED HERE VERTICALLY AND

3    HORIZONTALLY; RIGHT?

4    A    YES.

5    Q    AND THAT WAS ANOTHER IMPORTANT DESIGN ELEMENT

6    THAT DISTINGUISHED HIS DESIGN; RIGHT?

7    A    YES.

8    Q    AND HE ALSO TESTIFIED, I DON'T KNOW IF YOU

9    REMEMBER THIS, IN A REPLY DECLARATION THAT THE

10   WIDTH OF THIS SPEAKER SLOT HERE FOR THE INITIAL

11   IPHONE WAS SET UP TO PROXIMATE THE VISUALLY

12   BALANCED WIDTH OF THE ROUND CONTROL BUTTON ON THE

13   BOTTOM OF THE INITIAL IPHONE.

14          DO YOU REMEMBER THAT?

15   A    DO I BELIEVE HE SAID THAT?

16   Q    OKAY.

17   A    ACTUALLY, I DON'T RECALL EXACTLY IF

18   MR. STRINGER SAID THAT.  I THINK SOMEBODY MAY HAVE

19   SAID THAT.

20   Q    SO LET'S SEE IF WE CAN PUT UP A DEMONSTRATIVE

21   WITH THE INFUSE 4G.

22          SO ON THE LEFT HERE WE'VE GOT THE '087

23   PATENT, WE'VE PULLED OUT THE LOZENGE ELEMENT, AND

24   ON THE RIGHT WE'VE GOT THE INFUSE 4G.

25          DO YOU SEE THAT?

```
 1    A     I DO.

 2    Q     AND WE PULLED OUT THE SPEAKER DETAIL ON THE

 3    INFUSE 4G.

 4              MS. KREVANS:  I'M SORRY.  CAN I ASK WHAT

 5    DEMONSTRATIVE NUMBER THIS IS?

 6              MR. VERHOEVEN:  YOUR HONOR, YOU MADE SOME

 7    RULINGS ON CERTAIN PHONES AND INDICATED THAT OTHER

 8    PHONES WERE APPROPRIATE, AND SO WE SUBSTITUTED OUT

 9    THE SLIDES FROM THE PHONES THAT YOU RULED ON TO

10    MAKE SURE WE WERE ON THE RIGHT PHONES, WHICH ARE

11    THE INFUSE --

12              THE COURT:  WHAT'S THE SLIDE NUMBER?

13              MR. VERHOEVEN:  WE JUST CREATED THIS

14    AFTER YOUR RULING, YOUR HONOR.  IT'S JUST A

15    DEPICTION OF THE PHYSICAL EXHIBIT.

16              MS. KREVANS:  I'VE NEVER SEEN THIS BEFORE

17    THIS MOMENT, YOUR HONOR.

18              THE COURT:  SO IT HAS NO NUMBER?

19              MR. VERHOEVEN:  NOT RIGHT THIS SECOND,

20    YOUR HONOR.

21              THE COURT:  ALL RIGHT.  WELL, WHY DON'T

22    YOU MOVE ON TO ANOTHER ONE BECAUSE IT HAS NO NUMBER

23    AND I HAVEN'T RULED ON IT.  WE CAN TALK ABOUT IT.

24    BY MR. VERHOEVEN:

25    Q     WELL, YOU HAVE THE PHYSICAL INFUSE IN FRONT OF
```

1    YOU.

2                CAN WE GET THAT IN FRONT OF HIM?

3    A    THANK YOU.

4                MR. VERHOEVEN:  YOUR HONOR, COULD I SHOW

5    JUST THE WITNESS THE SLIDE AND ASK HIM IF IT'S AN

6    ACCURATE REPRESENTATION OF THE PHYSICAL EXHIBIT?

7                THE COURT:  WHY DON'T YOU SHOW THE SLIDE

8    TO MS. KREVANS, PLEASE.

9                MR. VERHOEVEN:  YES, YOUR HONOR.  IT'S

10   NOT ON THE SCREEN.

11               MS. KREVANS:  YOUR HONOR, I DON'T THINK

12   IT IS A FAIR DEPICTION OF THE PHYSICAL EXHIBIT.

13               THE COURT:  ALL RIGHT.  WELL, LET'S

14   HANDLE THIS AFTER THE BREAK, BECAUSE WE'RE GOING TO

15   TAKE A BREAK PROBABLY AT ABOUT 2:45.  SO IF YOU CAN

16   HANDLE SOMETHING ELSE FIRST AND WE CAN TALK ABOUT

17   THIS LATER, PLEASE.

18               MR. VERHOEVEN:  YES, YOUR HONOR.

19   Q    NOW, LET'S TALK ABOUT THE LATERAL BORDERS ON

20   THE '087 PATENT, THE DESIGN PATENT, SIR.

21               THE DISPLAY SCREEN BETWEEN THOSE BORDERS

22   IS CENTERED ON THE FRONT FACE; RIGHT?

23   A    ON WHICH PHONE ARE WE TALKING ABOUT?

24   Q    THE '087?

25   A    YES.

1     Q    AND -- WELL, YOU KNOW, LET'S JUST PUT UP DX

2     688, WHICH IS THE -- A DECLARATION OF MR. STRINGER

3     DESCRIBING THE INITIAL IPHONE DESIGN, AND GO TO

4     PAGE -- PARAGRAPH 24, PLEASE.

5              NOW, THIS IS ALSO IN YOUR EXHIBIT BINDER

6     IF YOU'D LIKE TO LOOK AT IT.

7              THIS IS MR. STRINGER'S SWORN DECLARATION;

8     CORRECT?

9     A    IT APPEARS TO BE.

10    Q    AND ON PARAGRAPH 24, HE SAYS, QUOTE, "THE

11    DISPLAY SCREEN OF THE IPHONE IS CENTERED ON ITS

12    FRONT SURFACE, SO AS TO CREATE A VERY NARROW

13    LATERAL -- SO AS TO CREATE VERY NARROW LATERAL

14    BORDERS AND WIDE, BALANCED BORDERS ON TOP AND

15    BOTTOM."

16              DO YOU SEE THAT?

17    A    I DO.

18    Q    AND HE GOES ON LATER IN THE PARAGRAPH, "FOR

19    EXAMPLE, BOTH THE SCREEN SIZE AND OVERALL DEVICE

20    WIDTH COULD HAVE BEEN MAINTAINED WHILE MAKING THE

21    LATERAL BORDERS WIDER BY ELIMINATING THE BEZEL

22    ALTOGETHER.

23              "AND THERE WAS NO FUNCTIONALITY

24    LIMITATION FROM PREVENTING US FROM ARRANGING THE

25    DISPLAY SCREEN MORE NEAR THE TOP OR BOTTOM OF THE

1   FRONT SURFACE, AS HAS BEEN DONE IN NUMEROUS OTHER

2   SMARTPHONE DESIGNS."

3           SO HE'S SAYING, LOOK, WE INTENTIONALLY

4   DECIDED TO HAVE VERY NARROW LATERAL BORDERS.  WE

5   COULD HAVE MADE THEM WIDER, BUT FOR DESIGN

6   PURPOSES, WE CHOSE TO MAKE THEM REALLY NARROW.

7   FAIR?

8   A    THAT'S A FAIR STATEMENT.

9   Q    AND YOU AGREE THAT THE ORDINARY OBSERVER

10   SHOULD BE DRAWN TO THOSE ASPECTS OF THE DESIGN THAT

11   MAKE IT DIFFERENT; RIGHT?

12   A    I BELIEVE THAT THE ORDINARY OBSERVER SHOULD BE

13   GETTING AN OVERALL IMPRESSION OF WHAT THE DESIGN OF

14   THE PHONE IS AND WHAT THE DESIGN THAT'S REPRESENTED

15   IN THE PATENT IS.

16   Q    BUT THEY SHOULD LOOK --

17   A    I DON'T BELIEVE THEY SHOULD BE INVESTIGATING

18   TEENY DETAILS ONE AT A TIME THE WAY YOU'RE DOING.

19   Q    WELL, YOU AGREED WITH ME EARLIER THAT THE

20   ORDINARY OBSERVER WOULD LOOK TO THOSE ASPECTS OF

21   THE DESIGN PATENT WHICH DIDN'T EXIST IN THE PRIOR

22   ART DESIGN PATENTS, THE POINTS OF NOVELTY, AND TAKE

23   THOSE POINTS OF NOVELTY AND LOOK AT THOSE WHEN

24   LOOKING AT THE ACCUSED DEVICES; RIGHT?

25   A    I BELIEVE SO.

1    Q    OKAY.  I --

2    A    I'M SORRY.  THAT ISN'T TRUE.  I DIDN'T SAY THE

3    ORDINARY OBSERVER WOULD DO THAT.  I SAID THAT THE

4    TEST FOR INFRINGEMENT WAS FOR A DESIGNER TO DO THAT

5    AND IDENTIFY THE DIFFERENCES AND COMPARE THEM TO

6    THE, TO THE PHONE, TO THE ACCUSED PHONE.

7    Q    AND THAT TEST IS DIFFERENT FROM YOUR TESTIMONY

8    ABOUT WHAT AN ORDINARY OBSERVER WOULD DO?

9    A    ABSOLUTELY.

10   Q    OKAY.  THE ORDINARY OBSERVER WOULD NOT BE

11   ANALYZING THE PHONE WITH THAT LEVEL OF DETAIL.

12   THEY WOULD BE GETTING AN OVERALL IMPRESSION, AND

13   THAT OVERALL IMPRESSION OF THE DIFFERENCES WOULD BE

14   WHAT THEY WOULD GAIN.

15   Q    SO YOUR TESTIMONY IS THE ORDINARY OBSERVER

16   WOULDN'T LOOK AT THE PRIOR ART, WOULDN'T BE AWARE

17   OF THE PRIOR ART?

18   A    UNDER THE LAW, IT'S MY UNDERSTANDING THEY HAVE

19   TO BE AWARE OF THE PRIOR ART, BUT I DON'T BELIEVE

20   THEY'D BE COMPARING THEM ON A DETAIL LEVEL THAT A

21   DESIGNER WOULD IN THIS CIRCUMSTANCE.

22   Q    WHAT DO YOU BASE THAT ON, SIR?

23   A    MY, MY YEARS OF EXPERIENCE IN WORKING WITH

24   CONSUMERS AND UNDERSTANDING WHAT THEY SEE AND WHAT

25   THEY DON'T SEE WHEN YOU PRESENT THEM WITH A DESIGN.

1    Q    ANYTHING ELSE?

2    A    MY UNDERSTANDING OF THE LAW.

3    Q    OKAY.  WHAT IS THAT UNDERSTANDING, JUST SO WE

4    HAVE A FOUNDATION?

5    A    MY UNDERSTANDING IS THAT -- ARE YOU TALKING

6    ABOUT THE LAW FOR INFRINGEMENT?

7    Q    WHATEVER YOU JUST REFERENCED IN YOUR ANSWER,

8    SIR.

9    A    MY UNDERSTANDING IS THAT AS PART OF THE

10   INFRINGEMENT ANALYSIS, THAT I, AS A DESIGNER, DO.

11   IT'S MY DUTY TO IDENTIFY THE DIFFERENCES BETWEEN

12   THE DESIGN IN QUESTION AND THE PRIOR ART TO

13   DETERMINE IF AN ORDINARY OBSERVER WOULD SEE THOSE

14   DIFFERENCES IN THE ACCUSED PRODUCT.

15   Q    OKAY.  SO LET'S LOOK AT JX 1093 COMPARED TO --

16   LET'S USE THE '677 PATENT THIS TIME, JX 1043.

17          CAN WE PUT THOSE BOTH UP?  AND JUST PULL

18   UP THE FIGURE 3.  CAN YOU JUST PULL -- AND TRY TO

19   SIZE IT WITH THIS FRONT FACE PICTURE, PLEASE,

20   MR. FISHER.

21          SO ON '677, THE NARROW BORDERS, THIS TINY

22   LITTLE SPACE RIGHT THERE; RIGHT?

23   A    YES.

24   Q    THIS PART HERE IS THE BEZEL; THIS PART IS THE

25   SCREEN; AND THEN THE LATERAL BORDER IS VERY, VERY

```
 1    TINY, VERY SMALL; RIGHT?

 2    A    YES.

 3    Q    AND IN THIS PRADA PHONE, THE LATERAL BORDERS

 4    ARE WIDER, AREN'T THEY?

 5    A    I DON'T BELIEVE THAT THE PRADA IS PRIOR ART.

 6    Q    THAT'S NOT WHAT I ASKED YOU.  I ASKED YOU

 7    WHETHER THE BORDERS ARE WIDER?

 8    A    BUT I DON'T KNOW WHY I'M COMPARING IT THEN.

 9    Q    YES OR NO ARE THE BORDERS WIDER ON THE PRADA?

10    A    YES.

11    Q    NOW, IF WE CAN GO TO SLIDE SDX 3770.  HERE

12    WE'VE GOT THE '677 PATENT, WHICH HAS THIS VERY

13    NARROW LATERAL BORDERS.  DO YOU SEE THAT?

14    A    YES.

15    Q    AND THE '087 HAS SIMILARLY VERY NARROW LATERAL

16    BORDERS; RIGHT?

17            MS. KREVANS:  YOUR HONOR, THIS SLIDE WAS

18    OBJECTED TO AND YOUR HONOR DID NOT PERMIT THEM TO

19    SHOW IT.

20            THE COURT:  NO.  3770 I DID NOT EXCLUDE.

21    BY MR. VERHOEVEN:

22    Q    NOW, DO YOU RECALL THAT YOU DISTINGUISHED THE

23    PRADA PHONE FROM THE '677 AND '087 PATENT ON THE

24    GROUNDS THAT THE LATERAL BORDERS ARE WIDER?

25    A    YOU MEAN JUST ON THE PREVIOUS SLIDE?
```

1    Q    NO.  IN YOUR EXPERT REPORTS.

2    A    I DON'T RECALL.  I MAY HAVE.

3    Q    DO YOU THINK THAT THAT'S A DISTINCTION BETWEEN

4    THE '677 AND THE '087, THAT THE PRADA LATERAL

5    BORDERS ON THE DISPLAY SCREEN ARE WIDER?

6    A    I DON'T THINK IT'S A DRAMATIC DISTINCTION, NO.

7    Q    OKAY.  DO YOU THINK IT'S A FACTOR THAT TAKES

8    IT OUT OF BEING SUBSTANTIALLY SIMILAR?

9    A    IN THE CONTEXT OF THE -- EXCUSE ME.

10        IN THE CONTEXT OF THE REST OF THE DESIGN,

11   I THINK IT DOES TAKE IT OUT OF BEING SUBSTANTIALLY

12   SIMILAR.

13   Q    BUT FOR THE INFUSE 4G, IT DOESN'T?

14   A    THAT'S CORRECT.  IN THE CONTEXT OF THE REST OF

15   THE DESIGN, IT DOESN'T.

16   Q    SO THE 4G HAS A WIDER LATERAL BORDER, MUCH

17   WIDER THAN THE '677 PATENT; RIGHT?

18   A    WELL, YOUR CIRCLE IS INCLUDING THE BEZEL IN

19   THE 4G, WHAT I WOULD CALL THE BEZEL ON THE 4G AS

20   PART OF THE LATERAL BORDER.

21   Q    SIR, DIDN'T YOU JUST ADMIT EARLIER TODAY THAT

22   THE 4G DOES NOT HAVE A BEZEL?

23   A    IT HAS A CASE THAT APPEARS LIKE A BEZEL.

24   Q    MS. KHAN, COULD I HAVE THE INFUSE 4G PHYSICAL

25   EXHIBIT?  THIS IS JX 1027 FOR THE RECORD.

1          YOUR TESTIMONY IS THAT THE INFUSE 4G

2    LATERAL SPACE WE'RE LOOKING AT ON THE SCREEN IS

3    ACTUALLY THE BEZEL?

4    A    NO.  I'M SAYING THAT CIRCLE THAT YOUR

5    IDENTIFYING IT WITH IS INCLUDING THE WIDTH OF THAT

6    CASE THAT I BELIEVE LOOKS LIKE A BEZEL.

7    Q    AND HOW WIDE --

8    A    IT'S NOT JUST THE FLAT FACE.

9    Q    HOW WIDE IS THAT CASE?

10   A    I WOULD IMAGINE IT MIGHT BE A MILLIMETER.

11   Q    A MILLIMETER?

12   A    YEAH.

13   Q    SO IF YOU TAKE A MILLIMETER OFF THE EDGE, IT'S

14   STILL, WHAT, 10, 15, 20 TIMES WIDER LATERAL BORDER

15   THAN THE '677 PATENT?

16   A    I DON'T THINK IT'S THAT MUCH, BUT IT IS WIDER,

17   YES.

18   Q    BY A FACTOR OF 10?

19   A    AGAIN, THIS IS A LEVEL OF DETAIL THAT THE

20   ORDINARY OBSERVER WOULDN'T EVEN BE INTERESTED IN

21   LOOKING AT.

22   Q    SIR, I DIDN'T ASK YOU ABOUT THAT.  I DIDN'T

23   ASK YOU THAT.  CAN YOU ANSWER MY QUESTION?

24   A    AS A DESIGNER, THE ANSWER TO YOUR QUESTION IS,

25   YES, THEY'RE DIFFERENT WIDTHS.

```
1    Q    SUBSTANTIALLY DIFFERENT?

2    A    SUBSTANTIALLY DIFFERENT, I'M SORRY, I NEED TO

3    RESERVE FOR THE OVERALL DESIGN.

4    Q    SO YOU DISAGREE --

5    A    IT'S A LONG LEVEL OF DETAIL TO LOOK AT IN

6    ANALYZING THE DESIGN.

7    Q    DO YOU DISAGREE THAT THEY'RE SUBSTANTIALLY

8    DIFFERENT IN TERMS OF THE LATERAL BORDER?

9    A    PARDON ME.

10   Q    YOU DISAGREE THAT THE IPHONE 4G IS

11   SUBSTANTIALLY DIFFERENT FROM THE '677 PATENT AND

12   THE '087 PATENT IN TERMS OF THE WIDTH OF THE

13   LATERAL BORDER?

14   A    I BELIEVE THERE IS A MINOR DIFFERENCE BETWEEN

15   THEM.  I DON'T BELIEVE IT'S SUBSTANTIALLY

16   DIFFERENT.

17   Q    SO IF THE WIDTH IS MEASURED AND IT TURNS OUT

18   TO BE A FACTOR OF 15 TIMES WIDER, YOU THINK THAT'S

19   JUST A MINOR DETAIL?

20   A    I BELIEVE THAT DEPENDS ON THE CONTEXT OF THE

21   DESIGN AND THE OVERALL IMPRESSION THAT'S BEING

22   CREATED.

23   Q    SO YOU CAN'T SAY?

24   A    OKAY, IF THAT WORKS FOR YOU.

25        I MEAN, THAT'S -- YOU'RE ASKING ME TO
```

```
1    COMPARE PEANUT BUTTER TO TURKEY.  I'M SORRY.

2    Q    PEANUT BUTTER AND TURKEY?

3    A    YES.

4    Q    WHICH ONE IS PEANUT BUTTER AND WHICH ONE IS

5    TURKEY?

6    A    I HAVE NO IDEA.  I'M JUST GETTING FRUSTRATED

7    THAT YOU'RE ASKING ME TO DESIGN.

8    Q    SIR, DETAILS MATTER IN DESIGN PATENTS, DON'T

9    THEY?

10   A    IN GENERAL, YES.  THEY FORM -- THEY CONTRIBUTE

11   TO HOW AN ORDINARY OBSERVER FORMS AN OVERALL

12   IMPRESSION.

13   Q    LET'S GO TO SDX 3799.

14        NOW, MR. STRINGER ALSO TESTIFIED ON JULY

15   31ST ABOUT THE DARK OILY POND.

16        YOU'VE HEARD ABOUT THE DARK, OILY POND

17   BEFORE; RIGHT?

18   A    YES.

19   Q    THIS IS JULY 31ST, TRANSCRIPT PAGES 521:23

20   THROUGH 522, LINE 12.

21        "QUESTION:  IN FACT, YOU WANTED TO CREATE

22   A PRODUCT THAT EMBODIED THE SIMPLEST OF ICONS, AND

23   ONE KEY IMAGE WAS THAT OF A DARK, OILY POND.  IS

24   THAT RIGHT?

25        "ANSWER:  YES.
```

```
 1              "QUESTION:  THAT WAS YOUR DESIGN GOAL;

 2    RIGHT?

 3              "ANSWER:  THAT WAS ONE --

 4              "QUESTION:  GO AHEAD.

 5              "ANSWER:  THAT WAS ONE DESCRIPTION OF A

 6    DESIGN GOAL, YES.

 7              "QUESTION:  YOU DIDN'T WANT TO PUT

 8    MULTIPLE BUTTONS ON THE FACE OF THE PHONE; CORRECT?

 9              "ANSWER:  CORRECT.

10              "QUESTION:  YOU WANTED IT TO BE AS SIMPLE

11    AS POSSIBLE?

12              "ANSWER:  YES."

13              DO YOU REMEMBER THAT TESTIMONY?

14    A    I DO.

15    Q    IS THAT WHAT "MINIMALIST DESIGN" MEANS, MAKING

16    IT AS SIMPLE AS POSSIBLE?

17    A    DO YOU REALLY WANT ME TO GET INTO A --

18    Q    I'M ASKING YOU, SIR.  CAN YOU ANSWER THE

19    QUESTION?

20    A    I DON'T BELIEVE IT'S THAT SIMPLE, BUT YES.

21    Q    OKAY.  NOW, LET'S LOOK AT A COMPARISON OF THE

22    '677, DARK, OILY POND AGAINST THE GALAXY S II

23    T-MOBILE.  OOPS.

24              JUST ONE SECOND, YOUR HONOR.

25              THE COURT:  OKAY.
```

```
 1              (PAUSE IN PROCEEDINGS.)

 2              MR. VERHOEVEN:  I MISSPOKE, YOUR HONOR.

 3    Q    AGAINST THE INFUSE 4G.  THIS IS SDX 3776.

 4              SO ON THE LEFT HERE, WE'VE GOT THE '677

 5    DESIGN PATENT.  IT'S GOT THE BLACK FACE; RIGHT?

 6    A    YES.

 7    Q    AND IT'S GOT -- IT'S NOT CLAIMING THIS BUTTON

 8    DOWN AT THE BOTTOM; RIGHT?

 9    A    YES.

10    Q    THAT'S WHY THE DOTTED LINES ARE AROUND IT;

11    RIGHT?

12    A    CORRECT.

13    Q    SO THE ONLY DESIGN ELEMENTS IN THIS DARK, OILY

14    POND THAT MR. STRINGER WAS TALKING ABOUT ARE THIS

15    LOZENGE SHAPE AND THIS SCREEN SHAPE; RIGHT?

16    A    YES.

17    Q    NOW, IF YOU LOOK AT THE INFUSE 4G, IT'S GOT A

18    BUNCH OF KEYS, DOESN'T IT, SIR?

19    A    YES.  THEY'RE SO SMALL YOU NEED TO POINT THEM

20    OUT WITH A CIRCLE, BUT, YES, THERE ARE KEYS THERE,

21    YES.

22    Q    THESE ARE KEYS THAT ARE DESIGNED FOR USERS TO

23    TOUCH AND HAVE FUNCTIONS HAPPEN; CORRECT, SIR?

24    A    YES.

25    Q    THE MENU KEY RIGHT THERE, DO YOU HAVE AN
```

1    UNDERSTANDING OF WHAT THAT'S FOR?

2    A    I DO, BUT THAT HAD NOTHING TO DO WITH MY

3    DESIGN PATENT INVESTIGATION.

4    Q    TELL THE JURY WHAT THAT'S FOR?

5    A    I ASSUME IT'S TO PULL UP A MENU.

6    Q    THERE'S THIS LITTLE PICTURE OF A HOUSE.

7    THAT'S A SEPARATE KEY, ISN'T IT?

8    A    I GUESS.

9    Q    YOU DON'T KNOW?

10   A    I'M NOT AN EXPERT IN THE FUNCTION OF PHONE,

11   SIR.  I'M SORRY.

12   Q    WELL, YOU'RE A DESIGN --

13   A    I AM ANALYZING THE OVERALL IMPRESSION OF THE

14   DESIGN AND THOSE ARE VISUAL ELEMENTS THAT, IN THIS

15   DESIGN, I HAVE A FEELING YOU BARELY NOTICE UNTIL

16   THE PHONE LIGHTS UP.

17   Q    I THOUGHT I HEARD YOU TESTIFY ABOUT WHETHER OR

18   NOT CERTAIN ELEMENTS OF THE DESIGN ARE FUNCTIONAL

19   WHEN COUNSEL FOR APPLE WAS ASKING YOU QUESTIONS ON

20   YOUR DIRECT EXAM.

21          ARE YOU TELLING ME YOU'RE NOT AN EXPERT

22   IN THAT AREA?

23   A    NO, I'M NOT TELLING YOU THAT.

24   Q    I THOUGHT I JUST HEARD YOU SAY THAT, SIR?

25   A    WHAT?

1    Q    THAT YOU'RE NOT AN EXPERT IN THE FUNCTIONALITY

2    OF THE PHONE?

3    A    I'M NOT AN EXPERT IN HOW THE PHONE WORKS.

4    Q    IS THAT DIFFERENT FROM --

5    A    YES, IT IS.

6    Q    -- FROM THE FUNCTIONALITY OF THE PHONE?

7    A    IT'S DIFFERENT FROM THE FUNCTIONALITY AS IT'S

8    UNDERSTOOD IN A DESIGN PATENT.

9    Q    HOW SO?

10   A    PARDON ME?

11   Q    HOW SO?

12   A    FUNCTIONALITY IN A DESIGN PATENT HAS TO DO

13   WITH WHETHER ANY OF THE VISUAL ELEMENTS OF THE

14   APPEARANCE ARE DICTATED BY THE FUNCTION THEY

15   PERFORM.

16   Q    OKAY.  SO FUNCTION IN THAT SENTENCE MEANS HOW

17   IT WORKS?

18   A    NO.  FUNCTIONALITY IN THAT SENTENCE IS

19   RELATING TO THE APPEARANCE, AND IF YOU CAN HAVE A

20   DIFFERENT APPEARANCE THAT PERFORMS THE SAME

21   FUNCTION, THEN IT IS NOT CONSIDERED FUNCTIONAL AS

22   IT RELATES TO A DESIGN PATENT.

23   Q    OKAY.  WHEN YOU USE THE PHRASE "PERFORMS THE

24   SAME FUNCTION," YOU'RE TALKING ABOUT HOW THE PHONE

25   WORKS; RIGHT?

```
1    A    NOT NECESSARILY.  I MEAN, IF IT'S -- IF IT'S

2    WHERE THE DISPLAY IS, YOU KNOW, YOU CAN -- A

3    DISPLAY FUNCTIONS, IT IS FUNCTIONAL.

4         BUT WHERE IT IS, WHAT SIZE IT IS, THE

5    LOCATION OF IT AND WHAT THE SHAPE OF THE OUTSIDE OF

6    IT IS, THOSE ARE ALL APPEARANCE DECISIONS THAT ARE

7    NOT DRIVEN BY FUNCTION.

8    Q    WHEN YOU USE THE WORD "FUNCTION" IN THAT LAST

9    ANSWER, YOU MEAN HOW THE PHONE FUNCTIONS?  NO?

10   A    NO, I DO NOT.

11   Q    OKAY.  AND THAT WAS THE UNDERSTANDING YOU USED

12   WHEN YOU APPLIED YOUR ANALYSIS, WHAT YOU JUST SAID?

13   A    AS I EXPLAINED IT, YES.

14   Q    BUT JUST SO THAT WE'RE CLEAR, YOU'RE NOT AN

15   EXPERT ON FUNCTIONALITY OF THE SMARTPHONES?

16   A    IN YOUR USE OF THE WORD "FUNCTIONALITY" AS IT

17   RELATES TO HOW THEY WORK, THAT'S CORRECT.

18   Q    IS THIS -- DO YOU SEE THESE FOUR KEYS ON THE

19   BOTTOM OF THE INFUSE 4G?

20   A    YES.

21   Q    THAT'S -- THAT'S ORNAMENTATION ON THE FRONT

22   FACE OF THE PHONE; RIGHT?

23   A    YEAH, MINOR ORNAMENTS, YES.

24   Q    AND THAT'S DIFFERENT FROM THE CONCEPT OF A

25   DARK, OILY POND?
```

```
 1    A    NO.  I BELIEVE THE DARK, OILY POND IS THERE

 2    AND THOSE HAPPEN TO BE SOME RELATIVELY INDISTINCT

 3    ELEMENTS THAT ARE AT THE BOTTOM OF IT.

 4    Q    WHAT DOES LITTLE HOUSE SYMBOL MEAN?

 5    A    DO YOU WANT ME TO INTERPRET IT SITTING HERE ON

 6    THE STAND?

 7    Q    TELL THE JURY YOUR UNDERSTANDING?

 8    A    I WOULD INTERPRET IT TO BE A HOME BUTTON.

 9    Q    SO A USER --

10    A    HOME KEY.

11    Q    SO THAT'S FOR A USER TO TOUCH TO GO BACK TO

12    THE HOME SCREEN?

13    A    YES.

14    Q    OKAY.  YOU SAY THIS IS MINIMALIST AND NO ONE

15    WOULD NOTICE IT?

16    A    PARDON ME?

17    Q    IS IT YOUR TESTIMONY TO THE JURY THAT THIS IS

18    SO MINIMALIST THAT NOBODY WOULD NOTICE IT?

19    A    NO.  IT'S MY TESTIMONY THAT THEY WOULD NOT

20    HAVE A SIGNIFICANT INFLUENCE ON THE OVERALL

21    IMPRESSION THAT THE ORDINARY OBSERVER HAD OF THE

22    DESIGN OF THIS PHONE.

23    Q    THE ORDINARY OBSERVER IS GOING TO LOOK AT THAT

24    AND UNDERSTAND THAT'S COMMUNICATING A HOUSE AND IF

25    THEY TOUCH IT, THEY CAN GO TO THE HOME SCREEN;
```

```
 1    RIGHT?

 2    A    THAT'S TRUE IN HOW THE PHONE OPERATES, THAT'S

 3    CORRECT.

 4    Q    SO THE USER IS GOING TO KNOW THAT, THEY'RE

 5    GOING TO SEE IT, THEY'RE GOING TO UNDERSTAND IT;

 6    RIGHT?

 7    A    YES.

 8    Q    AND THE SAME THING IS TRUE FOR THIS MENU

 9    BUTTON; RIGHT?

10    A    YES.

11    Q    DO YOU SEE THIS ARROW THAT CURVES AROUND

12    BACKWARDS?

13    A    YES.

14    Q    WHAT'S YOUR UNDERSTANDING OF WHAT THAT BUTTON

15    IS?

16    A    I'M NOT SURE.  I CAN GUESS IT MEANS GO BACK.

17    Q    WHEN YOU CONDUCTED YOUR ANALYSIS OF THE

18    INFUSE 4G, DID YOU ACTUALLY USE ANY OF THESE

19    BUTTONS?

20    A    IN TERMS OF MY ANALYSIS OF THE DESIGN PATENTS,

21    NO.

22    Q    SO IN ANY EVENT, YOU'D AGREE WITH ME THAT THIS

23    IS SOMETHING THAT A USER WOULD SEE AND UNDERSTAND,

24    THIS IS A BUTTON THEY CAN PRESS IN ORDER TO GO

25    BACKWARDS?
```

1    A    THAT WOULD BE PART OF THEIR UNDERSTANDING OF

2    THE USE OF THE PHONE, NOT THEIR OVERALL IMPRESSION

3    OF THE DESIGN AS IT RELATES TO A DESIGN PATENT.

4    Q    YOU WOULD AGREE WITH ME THAT IN THEIR OVERALL

5    IMPRESSION, THEY WOULD SEE THERE'S FOUR SEPARATE

6    BUTTONS ON THE BOTTOM OF THIS PHONE?  YES?

7    A    I BELIEVE THEY WOULD SEE THEM AND THAT THEY

8    ARE NOT AS IMPORTANT IN THE OVERALL IMPRESSION AS

9    THE CONTINUOUS GLASS REFLECTIVE, TRANSPARENT BLACK

10   FACE.

11   Q    AND DO YOU SEE THIS SEARCH KEY DOWN AT THE

12   BOTTOM?

13   A    I SEE YOU POINTING TO IT, YES.

14   Q    I GUESS WE LABELED IT A SEARCH KEY.

15        DID YOU UNDERTAKE ANY ANALYSIS OF THAT

16   BUTTON?

17   A    NO.

18   Q    SO YOU DIDN'T FACTOR ANY OF THESE BUTTONS INTO

19   YOUR ANALYSIS, DID YOU, SIR?

20   A    ONLY AS TO WHETHER I COULD SEE THEM AND WHAT

21   FACTOR THEY HAD IN THE OVERALL IMPRESSION OF THE

22   APPEARANCE OF THE PHONE.

23   Q    AND THEN YOU SEE THERE'S, THERE'S BRANDING ON

24   THE PHONE, AT&T AND SAMSUNG?

25   A    I BELIEVE THAT BRANDING IS NOT CONSIDERED --

96166

1    Q    DO YOU SEE THAT?

2    A    I SEE IT, YES.

3    Q    AND THEN THERE'S HOLES AT THE TOP THAT ARE

4    HARD TO SEE ON THIS SCREEN, FOR THE CAMERA; RIGHT?

5    A    IF YOU SAY SO.

6    Q    AND THE SENSORS?

7    A    I --

8    Q    YOU DIDN'T EXAMINE THIS TO DETERMINE WHETHER

9    IT'S GOT A CAMERA HOLE?

10   A    TO BE HONEST WITH YOU, I NOTICED THAT THERE

11   WAS AN OPENING IN THE FRONT FACE AS A DESIGNER

12   EXAMINING THE DETAILS OF A PHONE.

13          I DO NOT BELIEVE THAT AN ORDINARY

14   OBSERVER WOULD BE LOOKING AROUND FOR WHERE THE

15   SENSOR IS ON THE FRONT OF THE PHONE.

16          MR. VERHOEVEN:  YOUR HONOR, I'M ABOUT TO

17   SWITCH SUBJECTS.  I DON'T KNOW IF YOU WANT ME TO

18   KEEP GOING OR IF YOU WANT TO TAKE A BREAK NOW.

19          THE COURT:  WE CAN GO AHEAD AND TAKE A

20   BREAK NOW.  IT'S 2:43.  SO WE'LL TAKE A 15-MINUTE

21   BREAK.

22          PLEASE CONTINUE TO KEEP AN OPEN MIND.

23   DON'T TALK AMONG YOURSELVES OR WITH ANYONE ABOUT

24   THE CASE AND PLEASE DON'T READ ABOUT THE CASE OR DO

25   ANY RESEARCH.

1          MR. VERHOEVEN:  I WASN'T INTENDING TO.  I

2     WAS -- I GUESS I HADN'T FOCUSSED ON THE FACT THAT

3     THERE'S A BUNCH OF DEMONSTRATIVES THAT COUNSEL FOR

4     APPLE HAS MOVED INTO EVIDENCE SUCCESSFULLY.

5          MS. KREVANS:  THAT IS NOT TRUE, YOUR

6     HONOR.  WE HAVE NOT MOVED ANY DEMONSTRATIVES INTO

7     EVIDENCE.

8          THE COURT:  YES, YOU HAVE.

9          MS. KREVANS:  WE HAVE MOVED PHOTOGRAPHS

10    THAT ARE ACTUAL DEVICES AND COMPILATIONS.  THERE

11    WERE OBJECTIONS WHETHER THEY WERE PROPER

12    COMPILATIONS.  THEY HAVE BEEN OFFERED AND THEY'RE

13    IN.

14          AND ALL THE UNDERLYING PHYSICAL DEVICES

15    WERE AVAILABLE FOR INSPECTION.  THEY WERE NOT

16    ALTERED IN ANY WAY IN THOSE PHOTOGRAPHS.  THIS IS

17    COMPLETELY DIFFERENT.

18          THE COURT:  ALL RIGHT.  WELL, THESE ARE

19    NOT GOING TO COME IN AS EXHIBITS, BUT THEY CAN BE

20    SHOWN TO THE JURY.

21          MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

22          THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.

23    WE'LL TAKE OUR BREAK NOW.

24          OH, AND CAN I GET THE SAMSUNG EXPERT

25    REPORTS?  DID I GET THOSE?  CAN I PLEASE GET THOSE

96-73

```
 1    AS SOON AS POSSIBLE.
 2              MR. VERHOEVEN:  YES, YOUR HONOR.  WE'RE
 3    COMING BACK AT 3:00 DID YOU SAY?
 4              THE COURT:  YES, THAT'S FINE.  THANK YOU.
 5              (WHEREUPON, A RECESS WAS TAKEN.)
 6              THE COURT:  ALL RIGHT.  ARE WE ALL SET?
 7    OKAY, YES, PLEASE, GO AHEAD AND BRING THEM IN.
 8              (WHEREUPON, THE FOLLOWING PROCEEDINGS
 9    WERE HELD IN THE PRESENCE OF THE JURY:)
10              THE COURT:  ALL RIGHT.  THE TIME IS 3:03.
11    PLEASE GO AHEAD.
12              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.
13    Q    GO BACK TO SDX 3797, PLEASE.
14              WE LOOKED AT THIS BEFORE THE BREAK,
15    MR. BRESSLER.  DO YOU REMEMBER THIS TESTIMONY FROM
16    MR. STRINGER?
17    A    I DO.
18    Q    I JUST WANT TO REFRESH US WHERE HE WAS TALKING
19    ABOUT THE LOZENGE SHAPED ELEMENT IN THE '087
20    PATENT?
21    A    YES.
22    Q    AND HE TALKED ABOUT IT WAS AN IMPORTANT DESIGN
23    CONSIDERATION THAT IT WAS CENTERED BOTH VERTICALLY
24    AND HORIZONTALLY.
25              DO YOU REMEMBER THAT?
```

1    A    I BELIEVE HE SAID THAT, YES.

2    Q    NOW, IF WE CAN PULL UP DX 511 AT PAGE 3 AGAIN,

3    THE PRIOR ART JP '638 PATENT AND HIGHLIGHT THAT.

4           CAN WE PUT THAT NEXT TO AN IMAGE OF THE

5    FRONT FACE OF THE '087, MR. FISHER?

6           JUST A SECOND, YOUR HONOR, AND WE'LL GET

7    IT UP ON THE SCREEN.

8           SO YOU AGREE THAT IN THE PRIOR ART THAT

9    THERE WAS -- THE PRIOR ART DID DISCLOSE LOZENGE

10   SHAPED SPEAKER OPENINGS; RIGHT?

11          MS. KREVANS:  OBJECTION, YOUR HONOR.  THE

12   IMAGE THAT HE'S SHOWN IN FIGURE 3 FROM THE '087 IS

13   NOT A FIGURE FROM THE EMBODIMENT ABOUT THE -- WHICH

14   MR. BRESSLER GAVE HIS OPINION ANALYSIS.  THIS IS

15   FROM THE FIRST EMBODIMENT, AND HE TALKED ABOUT THE

16   SECOND EMBODIMENT.

17          MR. VERHOEVEN:  I'M JUST ASKING WHAT THE

18   IMAGE SHOWS, YOUR HONOR.  I ALREADY USED THIS IMAGE

19   THREE OR FOUR TIMES IN THE CROSS-EXAMINATION.

20          THE COURT:  OVERRULED.

21          GO AHEAD, PLEASE.

22   BY MR. VERHOEVEN:

23   Q    DO YOU SEE THE LOZENGE OPENING UP HERE,

24   MR. BRESSLER?

25   A    YES.

96-75

1    Q    SO THE PRIOR ART HAD LOZENGE OPENINGS, LOZENGE

2    SHAPED OPENINGS IN THE TOP PART OF THE RECTANGULAR

3    SHAPED PHONE ABOVE THE DISPLAY SCREEN; RIGHT?

4    A    ON THAT UPPER SLOPED BORDER, YES.

5    Q    YEAH.  AND WHAT MR. STRINGER IS SAYING IS --

6    WAS THE IMPORTANT DESIGN ELEMENT OF THIS LOZENGE IS

7    THAT IT'S CENTERED BOTH VERTICALLY AND

8    HORIZONTALLY; RIGHT?

9         MS. KREVANS:  SAME OBJECTION, YOUR HONOR,

10   BECAUSE NOW IT'S REALLY MORE IMPORTANT BECAUSE

11   FIGURE 43 SHOWS A FIGURE WITH A LOZENGE SHAPED

12   SPEAKER SLOT THAT'S CLAIMED, THAT'S NOT TRUE IN

13   EVERY EMBODIMENT, AND THAT'S A DIFFERENCE, IT'S A

14   BIG DIFFERENCE IN THE QUESTION HE'S ASKING.

15         THE COURT:  OVERRULED.

16         GO AHEAD, PLEASE.

17         MR. VERHOEVEN:  CAN YOU REPEAT THE

18   QUESTION FOR THE WITNESS, PLEASE?

19         (WHEREUPON, THE RECORD WAS READ BY THE

20   COURT REPORTER.)

21         THE WITNESS:  I BELIEVE THAT WAS

22   IMPORTANT TO HIM.

23   BY MR. VERHOEVEN:

24   Q    RIGHT.  AND AS YOU TESTIFIED EARLIER, WHEN --

25   YOUR UNDERSTANDING OF THE RULES OF THE ROAD WHEN

1    CONDUCTING YOUR INFRINGEMENT ANALYSIS IS THAT THE

2    ORDINARY OBSERVER IS AWARE OF THE PRIOR ART; RIGHT?

3    A    YES.

4    Q    YES?

5    A    TECHNICALLY, YES.

6    Q    AND THAT IN CONDUCTING THE ANALYSIS, THE

7    ORDINARY OBSERVER LOOKS FOR WHAT'S DIFFERENT IN THE

8    CLAIMED DESIGN FROM THE ART; RIGHT?

9    A    MY UNDERSTANDING IS THE ORDINARY OBSERVER

10   DOESN'T DO THE ANALYSIS.  IT'S THE DESIGNER'S ROLE

11   TO DO THE ANALYSIS TO DETERMINE WHAT THE ORDINARY

12   OBSERVER WOULD PERCEIVE.

13   Q    SO HERE WE'VE GOT PRIOR ART THAT SHOWS THE

14   LOZENGE SHAPED SPEAKER OPENING; RIGHT?

15   A    YES.

16   Q    BUT IT'S NOT CENTERED?

17   A    THAT'S CORRECT.

18   Q    SO A POINT OF DISTINCTION HERE, AT LEAST WITH

19   RESPECT TO THIS PIECE OF PRIOR ART, IS A CENTERED

20   LOZENGE SHAPED SPEAKER OPENING; RIGHT?

21   A    OKAY.

22   Q    NOW, LET'S GO TO SDX 3811-B, WHICH IS AN

23   ILLUSTRATION, AND LET'S JUST PUT IT UP, AND HERE WE

24   HAVE ON THE LEFT THE '087 PATENT, WE PUT A BOX

25   AROUND THE LOZENGE SHAPED SPEAKER OPENING AND

1    PULLED IT OUT HERE TO MAKE IT BIGGER.

2             DO YOU SEE THAT, SIR?

3    A    I DO.

4    Q    AND ON THE RIGHT WE HAVE THE INFUSE, WHICH YOU

5    HAVE AVAILABLE TO YOU, THE PHYSICAL INFUSE, JX

6    1027.

7             DO YOU SEE THAT, SIR?

8    A    CAN YOU GIVE THAT BACK TO ME?  OH, THANK YOU.

9             YES.

10   Q    AND WE'VE PULLED THAT OUT AS WELL.  DO YOU SEE

11   THAT?

12   A    I DO.

13   Q    NOW, LOOKING AT THE ACTUAL BACKGROUND IMAGE OF

14   THE INFUSE, AND YOU CAN LOOK AT THE PHYSICAL

15   EXHIBIT AS WELL IN FRONT OF YOU, ISN'T IT TRUE,

16   SIR, THAT THE INFUSE SPEAKER OPENING IS NOT

17   CENTERED?

18   A    IT IS NOT EXACTLY CENTERED, THAT'S CORRECT.

19   Q    WELL, IT'S NOT CENTERED, PERIOD; RIGHT?

20   A    WELL, IT'S CENTERED HORIZONTALLY.

21   Q    IT'S NOT CENTERED VERTICALLY, IS IT?

22   A    IN THE THE UPPER BORDER, NO, IT'S NOT.

23   Q    AND IF YOU LOOK AT THE ACTUAL MAGNIFIED

24   VERSION OF THE SPEAKER SLOT, YOU CAN SEE IT HAS

25   MULTIPLE LITTLE HOLES IN IT.  DO YOU SEE THAT?

96-78

```
 1    A    WHEN IT'S THAT BIG I SEE THEM, YES.

 2    Q    AND IT'S MUCH THINNER AND LONGER THAN THE

 3    LOZENGE SHAPED IN THE '087 PATENT.  DO YOU SEE

 4    THAT?

 5    A    IT'S NOT CLEAR TO ME THAT BOTH OF THOSE IMAGES

 6    HAVE BEEN BLOWN UNTO THE SAME SCALE.  BUT, YES, IT

 7    APPEARS LONGER AND -- IT APPEARS LONGER.

 8    Q    JUST LOOK AT IT IN THE BACKGROUND, THEN.  IT'S

 9    LONGER AND THINNER AND IT'S --

10    A    YES.

11    Q    -- MUCH HIGHER IN THAT TOP DISPLAY AREA THAN

12    THE CENTERED LOZENGE IN THE '087 PATENT; ISN'T THAT

13    TRUE, SIR?

14    A    YES, IT IS.

15    Q    OKAY.  IF WE COULD GO TO SDX 3811-A, THE

16    GALAXY S, YOU HAVE THE PHYSICAL GALAXY S IN FRONT

17    OF YOU IF YOU WANT IT.  IT'S JX 1019.

18    A    YES.

19    Q    YOU CAN LOOK AT THE GALAXY S 4G AND SEE THAT

20    THE SPEAKER DETAIL HERE AGAIN IS NOT CENTERED;

21    RIGHT?

22    A    IT IS NOT EXACTLY CENTERED VERTICALLY, THAT IS

23    CORRECT.

24    Q    IT'S VERTICALLY NOT CENTERED, PERIOD; RIGHT?

25    A    IF YOU WISH TO SAY IT THAT WAY, YES.
```

```
 1    Q    WELL, IT'S EITHER CENTERED OR IT'S NOT.

 2    RIGHT?

 3    A    YOU'RE CORRECT.

 4    Q    OKAY.

 5    A    BUT TO ME THAT IS A MINOR VARIATION IN THE

 6    OVERALL IMPRESSION OF THE ORDINARY OBSERVER.

 7    Q    MR. STRINGER THOUGHT IT WAS IMPORTANT TO HIS

 8    DESIGN THAT THE LOZENGE SHAPED SPEAKER SLOT WAS

 9    CENTERED BOTH VERTICALLY AND HORIZONTALLY; DIDN'T

10    HE?

11    A    HE DID.

12    Q    AND IT WAS IMPORTANT TO BALANCE THE LOOK OF

13    THE IPHONE; RIGHT?

14    A    IT MIGHT HAVE BEEN.  I DON'T KNOW FOR SURE.

15    Q    YOU DON'T KNOW?

16    A    I DON'T RECALL WHERE I HEARD THAT FROM.

17    Q    YOU DIDN'T HEAR FROM MR. STRINGER WHEN YOU

18    SPOKE TO HIM THAT ONE OF THE HALLMARKS OF THIS

19    DESIGN OVERALL WAS SYMMETRY, EVERYTHING WAS

20    SYMMETRICAL AND BALANCED?

21    A    WHEN I SPOKE TO HIM?

22    Q    YEAH.

23    A    NO, I DON'T BELIEVE HE SAID THAT.

24    Q    NOW, THIS GALAXY S 4G, IF YOU LOOK AT THE

25    BLOWOUT, IT'S GOT MANY PINHOLES IN THIS DETAIL FOR
```

1     THE SPEAKER SLOT.

2              DO YOU SEA THAT?

3     A     I DO.

4     Q     NONE OF THOSE PIN HOLES ARE FOUND IN THE '087

5     PATENT, ARE THEY?

6     A     IN THE PATENT, NO, THEY ARE NOT.

7     Q     AND IF YOU LOOK AT THE SHAPE AND SIZE OF THE

8     SPEAKER SLOT IN THE GALAXY S 4G, NOT ONLY DOES IT

9     HAVE A BUNCH OF PINHOLES THAT ARE NOT IN THE '087,

10    IT'S ALSO SIGNIFICANTLY LONGER AND THINNER IN

11    SHAPE; CORRECT?

12    A     THAT IS CORRECT.

13    Q     THANK YOU, MR. FISHER.  YOU CAN TAKE THAT

14    DOWN.

15              NOW, IN YOUR EXPERT REPORTS, YOU

16    IDENTIFIED A NUMBER OF ALTERNATIVE DESIGNS THAT YOU

17    SAY SAMSUNG COULD HAVE USED.

18              DO YOU REMEMBER THAT GENERALLY?

19    A     YES.

20    Q     AND IN YOUR OPINION AS A DESIGNER, IN ORDER

21    FOR SOMETHING TO BE AN ALTERNATIVE DESIGN TO THE

22    '087 PATENT AND THE '677 PATENT, IT NEEDS TO BE

23    DEMONSTRABLY DIFFERENT; RIGHT?

24    A     THAT SEEMS REASONABLE, YES.

25    Q     NOW, LET'S LOOK AT WHAT YOU IDENTIFIED --

1    Q    SO LET'S PUT UP SDX 3803?

2             THE COURT:  ACTUALLY, WHY DON'T YOU, IN

3    THE BREAK, GIVE ME EVIDENCE THAT IT WAS SOLD IN THE

4    U.S.   OKAY?

5             MR. VERHOEVEN:  YES, YOUR HONOR.

6    Q    WHAT WE'VE GOT UP HERE ON THE SCREEN,

7    MR. BRESSLER, IS A PICTURE OF WHAT YOU'VE GOT IN

8    YOUR HAND?

9    A    IT IS.

10            THE COURT:  ACTUALLY, I'M SORRY, I DON'T

11   THINK THAT'S CORRECT.  I THINK IT WAS NOT SOLD IN

12   THE U.S.  SO I'M GOING TO GIVE THAT INSTRUCTION

13   THAT THIS IS NOT PRIOR ART.  OKAY.  IT WAS NOT SOLD

14   OR PUBLISHED IN THE UNITED STATES, THE F700, WHICH

15   IS DX 526.

16   BY MR. VERHOEVEN:

17   Q    SO DX 526, THE F700, JUST TO REFRESH, THIS IS

18   A DEPICTION OF WHAT YOU HAVE IN YOUR HAND; RIGHT?

19   A    I BELIEVE SO.

20   Q    AND THIS IS THE PHONE YOU SAID WAS AN

21   ALTERNATIVE DESIGN TO THE '087 AND THE '677 PATENT;

22   RIGHT?

23   A    YES.

24   Q    WHICH MEANS IT'S NOT SUBSTANTIALLY SIMILAR;

25   RIGHT?

```
 1    A    I WOULDN'T READ IT THAT WAY, NO.

 2    Q    I'M SORRY?

 3    A    CORRECT.  I DON'T SEE IT AS BEING

 4    SUBSTANTIALLY SIMILAR.

 5    Q    SO IN YOUR OPINION TO THIS JURY, THIS PHONE

 6    HERE IS NOT SUBSTANTIALLY SIMILAR TO THE '087 OR

 7    '677 PATENTS?  IT WOULDN'T INFRINGE THOSE PATENTS?

 8    A    I BELIEVE THAT'S WHAT I SAID, YES.

 9    Q    OKAY.  NOW, RYAN, CAN WE PUT UP THE IMAGE HERE

10    OF THE FRONT FACE OF THE F700 NEXT TO AN IMAGE OF

11    THE INITIAL IPHONE, JX 1000.

12         AND YOU HAVE THE INITIAL IPHONE IN FRONT

13    OF YOU AS WELL IF YOU'D LIKE TO LOOK AT IT, SIR.

14    A    DID I GET THAT BACK?  YES, I HAVE IT.

15         (PAUSE IN PROCEEDINGS.)

16    BY MR. VERHOEVEN:

17    Q    THERE WE GO.  SO YOUR TESTIMONY TO THE JURY IS

18    THIS F700 ON THE LEFT HERE IS NOT SUBSTANTIALLY

19    SIMILAR TO THE INITIAL IPHONE; RIGHT?

20         MS. KREVANS:  OBJECTION, YOUR HONOR.

21    THIS QUESTION CAN'T POSSIBLY BE ABOUT FUNCTIONALITY

22    BECAUSE FUNCTIONALITY HAS TO DO WITH WHETHER THERE

23    ARE ALTERNATIVE DESIGNS TO THE DESIGN THAT IS SHOWN

24    IN THE PATENT.

25         WHAT HE IS COMPARING HERE IS NOT EITHER
```

1    THE -- OF THE PATENTS AT ISSUE.  THE ONLY POSSIBLE

2    RELEVANT QUESTION WOULD BE THIS DEVICE VERSUS THE

3    '677 OR THE '087 PATENT.  THIS IS CLEARLY MISS --

4    THIS IS GOING BEYOND THE LINE YOUR HONOR DREW, YOUR

5    HONOR.

6              MR. VERHOEVEN:  YOUR HONOR, THIS --

7              THE COURT:  HAVE I SEEN THIS SLIDE

8    BEFORE?

9              MS. KREVANS:  IT'S NOT A SLIDE THAT

10   THEY'VE --

11             MR. VERHOEVEN:  IT'S JUST A CROPPING OF

12   THE SLIDE YOU JUST SAW, YOUR HONOR, AND I'M JUST

13   COMPARING IT TO THE INITIAL IPHONE SO THE JURORS

14   CAN ALL SEE IT RATHER THAN PASSING IT ALL AROUND.

15             MS. KREVANS:  THAT IS NOT RELEVANT.

16             MR. VERHOEVEN:  EXCUSE ME.

17             AND THIS WITNESS HAS TESTIFIED, YOUR

18   HONOR, THAT THE F700 IS NOT SUBSTANTIALLY SIMILAR

19   AND THIS IS CROSS-EXAMINATION, AND I SHOULD BE

20   ENTITLED TO LET THE JURORS SEE THE PHONE THAT'S --

21             THE COURT:  GO AHEAD.  OVERRULED.  GO

22   AHEAD.

23             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

24   Q    NOW, I'M JUST GOING TO CHECK THE RECORD REAL

25   QUICK, YOUR HONOR.

```
 1              (PAUSE IN PROCEEDINGS.)

 2              MR. VERHOEVEN:  I'LL JUST REASK THE

 3     QUESTION, YOUR HONOR, IN THE INTEREST OF TIME.

 4     Q    MR. BRESSLER, IT'S YOUR TESTIMONY TO THIS JURY

 5     THAT THE F700 IS NOT SUBSTANTIALLY SIMILAR TO THE

 6     INITIAL IPHONE DESIGN.  YES?

 7     A    WITHIN THE BOUNDS OF THE DESIGNS -- THAT THE

 8     DESIGNS DEFINE, YES.

 9     Q    OKAY.  NOW, RYAN, CAN WE ALSO PUT UP AN IMAGE

10     OF THE ACCUSED INFUSE 4G, JX 1027.

11              MS. KREVANS:  YOUR HONOR, NOW THEY'RE

12     MAKING A NON-INFRINGEMENT ARGUMENT WHICH YOUR HONOR

13     HAS ALREADY SAID IS BEYOND THE LINE OF WHAT THEY

14     CAN DO WITH THE F700.

15              THE COURT:  SUSTAINED.

16              MR. VERHOEVEN:  YOUR HONOR, I'M TRYING TO

17     SHOW --

18              THE COURT:  SUSTAINED.  PLEASE TAKE IT

19     DOWN.  TAKE IT DOWN.

20              MR. VERHOEVEN:  YOUR HONOR, I'M

21     ATTEMPTING TO SHOW, THROUGH IMPEACHMENT, THAT THE

22     PHONES THAT THIS WITNESS IS ACCUSING OF BEING

23     SUBSTANTIALLY SIMILAR LOOK DIFFERENT FROM A PHONE

24     THAT'S NOT ACCUSED THAT THE WITNESS SAYS IS NOT

25     SUBSTANTIALLY SIMILAR.  IT'S IMPEACHMENT.  IT'S
```

1    CROSS-EXAMINATION, YOUR HONOR.

2              THE COURT:  OVERRULED.

3              GO AHEAD.  GO TO YOUR NEXT LINE OF

4    QUESTIONING, PLEASE.

5              MR. VERHOEVEN:  ALL RIGHT.

6    Q    LET'S SWITCH TO THE '889 DESIGN PATENT, JX

7    1061 IN YOUR BINDER.  IF WE CAN GO TO THAT, RYAN,

8    AND PUT UP FIGURES 1A AND 1B.

9    A    I'M SORRY.  WHAT WAS IT AGAIN?

10   Q    IT'S THE '889 DESIGN PATENT, WHICH IS EXHIBIT

11   JX 1061.  GO AHEAD AND PUT THIS UP.  THERE'S NO

12   OBJECTION TO PUTTING THE DESIGN PATENT UP ON THE

13   SCREEN, I ASSUME.  IT'S IN EVIDENCE.

14             DO YOU SEE IT ON THE SCREEN, SIR?

15   A    I'M SORRY.  WHAT WAS THE NUMBER AGAIN?

16   Q    IT'S JX 1061.  GOT IT?

17   A    I DO.  THANK YOU.

18   Q    OKAY.  MR. BRESSLER, I'M HOLDING IN MY HAND A

19   PHYSICAL MODEL.  IT'S CALLED THE 035 MODEL

20   (INDICATING).

21             IT'S BEEN ADMITTED INTO EVIDENCE AS DX

22   741.

23             DO YOU RECOGNIZE THIS AS THE PHYSICAL

24   MODEL CALLED THE 035 MODEL?

25             MS. KREVANS:  YOUR HONOR, I HAVE TWO

1    OBJECTIONS.  FIRST OF ALL, I THINK COUNSEL

2    REPRESENTED THAT WHAT'S ON THE BOARD IS FIGURES

3    FROM THE PATENT.  I'M LOOKING AT THE PATENT.  I

4    DON'T SEE ANY FIGURES 1A AND 1B.

5              AND THEN SEPARATE AND APART FROM THAT, I

6    HAVE OBJECTIONS DEPENDING ON THE QUESTION THAT HE

7    ASKS ABOUT THIS MODEL BECAUSE THERE'S NEVER BEEN

8    ANY DISCLOSURE OF ANY NON-INFRINGEMENT ARGUMENT

9    RELATED TO THIS MODEL AND IT'S AN IMPROPER ATTEMPT

10   TO GET A NEW THEORY INTO THE CROSS-EXAMINATION.

11             THE COURT:  WHAT PATENT IS THIS?

12             MR. VERHOEVEN:  THIS IS THE '889 PATENT,

13   YOUR HONOR.  THESE ARE JUST FIGURES 1A AND 1B.

14             MS. KREVANS:  I'M SORRY, YOUR HONOR.  I

15   DON'T MEAN TO CAUSE TROUBLE, BUT I'M LOOKING AT THE

16   PATENT, AND THE FIGURE IS NOT LABELED --

17             MR. VERHOEVEN:  CAN YOU PUT UP THE ACTUAL

18   EXHIBIT, MR. FISHER.  AND GO TO THE FIGURES.

19             MS. KREVANS:  THAT'S CORRECT.

20             THE COURT:  ALL RIGHT.  WHAT WAS YOUR

21   OTHER OBJECTION?

22             MS. KREVANS:  THE OTHER OBJECTION, YOUR

23   HONOR, IS THE MODEL THAT HE'S ABOUT TO SHOW THE

24   WITNESS IN ORDER TO SUPPOSEDLY CROSS-EXAMINE HIM ON

25   HIS IMPEACHMENT OPINIONS HAS NEVER BEEN DISCLOSED

```
 1    IN CONNECTION WITH ANY IMPEACHMENT, ANY

 2    NON-INFRINGEMENT THEORIES IN THIS CASE.  THIS IS AN

 3    ISSUE OF DISCLOSURE IN RESPONSE TO CONTENTION

 4    INTERROGATORIES.  WE ASKED INTERROGATORIES.  I HAVE

 5    THE ANSWER HERE.

 6            WHATEVER WE'RE ABOUT TO HEAR IS GOING TO

 7    BE A COMPLETELY NEW LINE.

 8            MR. VERHOEVEN:  YOUR HONOR, YOU RULED ON

 9    THEIR MOTION IN LIMINE --

10            THE COURT:  LET ME SEE IT.  BECAUSE I

11    AGREE WITH THE F700, THERE WAS NEVER A

12    NON-INFRINGEMENT ARGUMENT IN MR. SHERMAN'S REPORT.

13    SO IF THIS IS THE SAME THING THAT'S HAPPENING WITH

14    THIS, I WANT TO KNOW.  SO LET ME SEE IT, PLEASE.

15    LET ME SEE WHERE -- IS IT IN MR. SHERMAN'S REPORT?

16            MS. KREVANS:  MR. ANDERS IS THEIR

17    NON-INFRINGEMENT EXPERT, YOUR HONOR.  AND THERE'S

18    NOTHING ON THIS.

19            THE COURT:  LET ME SEE HIS REPORT WHERE

20    HE DISCUSSES THIS.

21            I HAVE MR. ANDERS'S REPORT HERE, YOUR

22    HONOR.  SINCE IT'S NOT IN, I CAN'T SHOW YOU A PAGE

23    THAT IT'S NOT ON.  I GUESS I WOULD ASK THAT THE

24    QUESTION BE PROPERLY DIRECTED TO SAMSUNG'S COUNSEL

25    THAT IT IS DISCLOSED.
```

```
 1              MR. VERHOEVEN:  AGAIN, WE WERE PROVIDED

 2   NO NOTICE.  WE GAVE THEM A LIST OF THE EXHIBITS.

 3              YOUR HONOR, APPLE MOVED TO ELIMINATE THE

 4   APPLE 035 --

 5              THE COURT:  LET ME JUST ASK YOU, IS IT IN

 6   YOUR EXPERT REPORT?

 7              MR. VERHOEVEN:  AGAIN, WE'LL HAVE TO GO

 8   CHECK.

 9              BUT --

10              THE COURT:  ALL RIGHT.  WHY DON'T WE PASS

11   THIS.

12              MR. VERHOEVEN:  YOUR HONOR, WHETHER IT'S

13   IN THE EXPERT REPORT OR NOT, THERE'S A STIPULATION

14   THAT'S IN THE RECORD THAT THIS IS AN EMBODIMENT OF

15   THE '889 PATENT.  THE NOTION THAT WE COULDN'T

16   USE -- AND THERE'S -- IT'S UNDISPUTED IN THE

17   RECORD --

18              THE COURT:  OKAY.  WHAT I WOULD LIKE TO

19   DO IS LET ME SEE THE REPORT.  WHY DON'T -- IF YOU

20   CAN GO ON, WE CAN TAKE A FEW MINUTE BREAK AND WE

21   CAN ADDRESS THIS.

22              MS. KREVANS:  AND, YOUR HONOR, I THINK TO

23   MAKE IT CONVENIENT, I HAVE LOCATED A COPY OF A

24   PORTION OF MR. ANDERS' REPORT IN WHICH HE DISCUSSES

25   THE '889 PATENT AND IT'S MUCH SHORTER THAN THE
```

1    WHOLE THING AND I CAN GIVE IT TO YOUR HONOR AND YOU

2    CAN SEE THERE'S NOTHING IN THERE ABOUT THIS, ALSO

3    NOTHING IN THEIR CONTENTION INTERROGATORY RESPONSES

4    ABOUT IT.

5              MR. VERHOEVEN:  OUR, OUR ABILITY TO --

6    WHATEVER IS IN AN EXPERT REPORT IS DIFFERENT FROM

7    THE ACTUAL FILE HISTORY OF THIS PATENT AND OUR

8    ABILITY TO USE A STIPULATED EMBODIMENT, IN FACT,

9    THE EVIDENCE --

10             THE COURT:  ALL RIGHT.  I WANT THIS

11   DISCUSSION OUTSIDE THE PRESENCE OF THE JURY.

12             MR. VERHOEVEN:  YES, YOUR HONOR.

13             THE COURT:  CAN YOU PLEASE GO AHEAD WITH

14   SOMETHING ELSE AND I WILL TAKE THIS UP DURING MY

15   NEXT BREAK.  THANK YOU.

16   BY MR. VERHOEVEN:

17   Q    MR. BRESSLER, LET'S TALK A LITTLE BIT ABOUT

18   FUNCTIONALITY, THE FUNCTIONALITY OF THE APPLE'S

19   DESIGN PATENTS AND ITS TRADE DRESS.  OKAY?

20   A    OKAY.

21   Q    NOW, YOU'VE OFFERED AN OPINION ABOUT THE

22   FUNCTIONALITY OF APPLE'S DESIGN PATENTS AND TRADE

23   DRESS; RIGHT?

24   A    SEPARATELY, YES.

25   Q    BUT YOU'RE NOT AN EXPERT ON THE FUNCTIONALITY

```
 1    OF THE PHONES; RIGHT?

 2    A    YOU'RE TALKING ABOUT THE FUNCTIONALITY AS IT

 3    RELATES TO THE DESIGN PATENTS.

 4    Q    YOU'RE NOT AN EXPERT IN HOW THESE PHONES

 5    FUNCTION, WHAT KIND OF FUNCTIONAL CONSIDERATIONS GO

 6    INTO HOW THEY PERFORM?  YOU DON'T HAVE THAT KIND OF

 7    EDUCATION OR BACKGROUND, DO YOU, SIR?

 8    A    NO, I DON'T.  BUT I BELIEVE WE'RE TALKING

 9    ABOUT A DIFFERENT KIND OF FUNCTION.

10    Q    WHEN YOU PROVIDED YOUR OPINIONS ON

11    FUNCTIONALITY, IT WAS YOUR UNDERSTANDING THAT IF

12    THERE WAS ANY CONCEIVABLE DESIGN ALTERNATIVE, YOU

13    DID NOT CONSIDER THE DESIGN FEATURE TO BE

14    FUNCTIONAL; CORRECT?

15    A    THAT MAY BE ACCURATE.

16    Q    AND IN YOUR OPINION, THERE'S NOT A SINGLE

17    ELEMENT OF APPLE'S DESIGN PATENTS THAT ARE

18    FUNCTIONAL?

19    A    IN THE RESPECT THAT THEY ARE, THAT NONE OF

20    THEM ARE DICTATED BY THE FUNCTION, NO.  I BELIEVE

21    THAT, YES.

22    Q    YOU CONCLUDED THAT NO ASPECT OF THE IPHONE OR

23    IPAD TRADE DRESS IS FUNCTIONAL; RIGHT?

24    A    AS THAT MEANING OF THE WORD "FUNCTIONAL" IS

25    DEFINED, THAT'S CORRECT.  THOSE ARE DIFFERENT
```

1   MEANINGS.

2   Q    IN FORMING YOUR OPINIONS, DID YOU NOT CONSIDER

3   WHETHER THE DESIGN ELEMENTS FOR THE DESIGN PATENTS

4   WERE PRIMARILY ORNAMENTAL, DID YOU?

5   A    I'M SORRY?

6   Q    IN FORMING YOUR OPINION, YOU DID NOT CONSIDER

7   WHETHER THE DESIGN ELEMENTS WERE PRIMARY, PRIMARILY

8   ORNAMENTAL, DID YOU?

9   A    I CERTAINLY DID.

10  Q    ISN'T IT TRUE WHEN YOU WERE ASKED ABOUT

11  WHETHER YOU WERE INFORMED THAT WHEN ONE IS LOOKING

12  AT FUNCTIONALITY UNDER THE RULES OF THE ROAD AND

13  ASKED WHETHER OR NOT AN ELEMENT IS PRIMARILY

14  FUNCTIONAL, YOU TESTIFIED YOU DON'T EVEN RECALL

15  BEING FAMILIAR WITH THAT TERM?

16  A    I'M SORRY?

17  Q    CAN WE READ IT BACK, PLEASE.

18        (WHEREUPON, THE RECORD WAS READ BY THE

19  COURT REPORTER.)

20        THE WITNESS:  I DON'T RECALL SAYING THAT.

21  BY MR. VERHOEVEN:

22  Q    WELL, LET'S LOOK AT YOUR DEPOSITION TAKEN

23  APRIL 24TH, 2012, LINES 19 -- EXCUSE ME -- PAGE 19,

24  LINES 3 THROUGH 9.

25        (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

```
 1    OPEN COURT OFF THE RECORD.)

 2              MS. KREVANS:  YOUR HONOR, THAT DOES NOT

 3    IMPEACH ANY TESTIMONY THAT THE WITNESS HAS GIVEN

 4    HERE IN COURT.

 5              THE COURT:  OVERRULED.

 6    BY MR. VERHOEVEN:

 7    Q    THAT WAS YOUR UNDERSTANDING WHEN YOU TESTIFIED

 8    AT YOUR DEPOSITION; RIGHT?

 9    A    I GUESS.  I GUESS I SAID THAT IN ANSWER TO

10    THAT QUESTION, YES.

11    Q    AND LET ME ASK IT ONE MORE TIME?

12    A    I WAS CONFUSED.

13    Q    LET ME ASK ONE MORE TIME.  AND, AGAIN, TO THE

14    EXTENT YOU CAN FAIRLY ANSWER MY QUESTION YES OR NO,

15    I WOULD APPRECIATE IT.

16              ARE YOU AN EXPERT IN THE FUNCTIONALITY OF

17    PHONES?

18    A    IN TERMS OF THEIR OPERATION FUNCTIONALITY, NO.

19    Q    OKAY.  YOU'RE NOT AN EXPERT WITH RESPECT TO

20    TOUCH DISPLAY TECHNOLOGY; CORRECT?

21    A    THAT IS CORRECT.

22    Q    IN FACT, YOU'RE NO MORE EQUIPPED THAN ANY

23    ORDINARY OBSERVER TO OPINE ON THE FUNCTIONALITY OF

24    A SMARTPHONE?

25    A    DEPENDS ON WHETHER YOU MEAN FUNCTIONALITY
```

1    RELATIVE TO A DESIGN PATENT OR THE GENERAL

2    FUNCTIONALITY OF HOW IT OPERATES.

3    Q    IN TERMS OF THE SPECIFIC TECHNICAL KNOWLEDGE

4    AND SCIENTIFIC FUNCTIONALITY, YOU DON'T HAVE ANY

5    KNOWLEDGE; RIGHT?

6    A    THAT'S CORRECT.

7    Q    IN FACT, YOU BELIEVE THAT YOU ONLY NEED A

8    THIN, TOP LEVEL KNOWLEDGE TO BE ABLE TO PASS

9    JUDGMENT ON THE COMPARABLE FUNCTIONALITY OF THE

10   DIFFERENT PHONES?

11   A    AS IT RELATES TO DESIGN FUNCTION, I BELIEVE

12   THAT'S TRUE.

13   Q    IT'S YOUR TESTIMONY, SIR, THAT HAVING A

14   DISPLAY ELEMENT IS NOT NECESSARY OR FUNCTIONAL FOR

15   A SMARTPHONE?  THAT'S YOUR TESTIMONY TO THIS JURY;

16   RIGHT?

17   A    NO.

18   Q    OKAY.  WELL, LET'S -- YOUR DEPOSITION

19   TESTIMONY, AGAIN, WAS TAKEN APRIL 24TH, 2012;

20   RIGHT?

21   A    THAT'S CORRECT.

22   Q    IT WAS UNDER OATH?

23   A    YES.

24   Q    AND YOU ANSWERED QUESTIONS AS CAREFULLY AS YOU

25   COULD; RIGHT?

1    A    YES.

2    Q    LET'S PLAY AN EXCERPT FROM YOUR DEPOSITION,

3    PAGE 210, LINES 14 THROUGH 24.

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. VERHOEVEN:

7    Q    THAT WAS TRUE TESTIMONY WHEN YOU GAVE IT?

8    A    THAT WAS PART OF THE TESTIMONY THAT I GAVE

9    THAT IT TURNS OUT WAS, WAS GOING BOTH DIRECTIONS

10   DEPENDING ON -- BECAUSE I MISUNDERSTOOD THE USE OF

11   THE TERM "FUNCTION" AND THE QUESTION AT THAT TIME.

12   Q    SO THAT TESTIMONY IS NOT TRUE?

13   A    THE TESTIMONY IS TRUE.  I WAS REFERRING TO THE

14   FUNCTION AS IT RELATES TO A DESIGN PATENT, WHICH

15   MEANS THEY CAN BE ANY SHAPE AND LOCATION AND SIZE.

16             AND IN THAT SENSE, IT'S NOT FUNCTIONAL IN

17   THAT SHAPE, LOCATION OR SIZE ARE NOT REQUIRED BY AS

18   FUNCTIONS.

19   Q    CAN WE PUT UP THE HARD COPY TRANSCRIPT OF WHAT

20   WE JUST WATCHED, PAGE 210, LINES 14 THROUGH 24.

21             SO THIS IS 210, LINE 14 THROUGH 24.

22   APRIL 24TH, 2012 DEPOSITION.

23             SIR, DO YOU SEE THE QUESTION, IT DOESN'T

24   TALK ABOUT THE DESIGN PATENTS, IT TALKS ABOUT

25   SMARTPHONES.

```
 1              DO YOU SEE THAT, SIR?

 2     A    I SEE THAT'S WHAT IT SAYS.

 3     Q    THAT'S WHAT YOU WERE ASKED; RIGHT?

 4     A    I BELIEVE IT WAS ASKING ME ABOUT AS IT RELATED

 5     TO DESIGN PATENTS.

 6     Q    BUT IT DOESN'T SAY THAT, DOES IT?

 7     A    I DON'T SEE IT SAYING THAT.

 8     Q    USING YOUR DEFINITION OF FUNCTIONAL, ISN'T IT

 9     TRUE THAT YOUR OPINION TO THIS JURY IS THAT THE USE

10     OF A TRANSPARENT COVER OVER A DISPLAY IS NOT

11     NECESSARY FOR FUNCTIONAL?

12     A    IN DEFINING "FUNCTIONAL" AS NOT BEING DRIVEN

13     BY THE SHAPE AND LOCATION AND IT NOT BEING -- I

14     BELIEVE THAT'S TRUE.  I THINK THE FACT THAT IT IS

15     CLEAR ON A SMARTPHONE NEEDS -- YES, THAT'S

16     FUNCTIONAL.

17     Q    LET'S PLAY PAGE 209 FROM THE SAME DEPOSITION,

18     LINES 9 THROUGH 21.

19              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

20     OPEN COURT OFF THE RECORD.)

21     BY MR. VERHOEVEN:

22     Q    DO YOU STAND BY THAT TESTIMONY?

23     A    I BELIEVE THAT'S WHAT I MAY HAVE JUST SAID A

24     MOMENT AGO.

25     Q    SO IT'S YOUR TESTIMONY TO THIS JURY THAT
```

1    HAVING A CLEAR COVER OVER THE DISPLAY ELEMENT IS

2    NOT SOMETHING THAT'S FUNCTIONAL?

3    A    FROM A PERFORMANCE STANDPOINT AND OPERATIONS

4    STANDPOINT, I BELIEVE IT'S ABSOLUTELY FUNCTIONAL.

5    Q    BUT JUST NOT IN YOUR ANALYSIS?  IS THAT RIGHT?

6    A    IF IT'S CLEAR THAT IT'S A -- IF IT IS CLEAR IN

7    THE DESIGN PATENT THAT IT'S A DISPLAY, THEN ONE

8    WOULD EXPECT IT TO BE TRANSPARENT OVER THAT

9    DISPLAY.

10   Q    BUT YOUR CONCLUSION, WHEN YOU WERE ASKED UNDER

11   OATH ABOUT WHETHER USE OF A COVER THAT IS

12   TRANSPARENT OR A DISPLAY IS FUNCTIONAL, IS THAT

13   IT'S NOT FUNCTIONAL AS YOU'VE DEFINED IT; RIGHT?

14   A    I WAS TALKING ABOUT ITS SHAPE AND LOCATION AND

15   SIZE AND THE DESIGN PATENT DEFINITION OF

16   FUNCTIONALITY.

17   Q    AND YOU ALSO TESTIFIED THAT -- WELL, LET ME

18   ASK YOU, IN YOUR VIEW, IS LOCATING THE SPEAKER IN

19   THE UPPER PORTION OF THE FRONT FACE OF A SMARTPHONE

20   SOMETHING THAT'S NOT FUNCTIONAL AS YOU USE THAT

21   TERM IN YOUR EXPERT REPORTS?

22   A    DEFINING THE PRECISE LOCATION FROM AN

23   AESTHETIC STANDPOINT, IS NOT DRIVEN BY FUNCTION.

24   Q    SO THAT'S NO, IT'S NOT FUNCTIONAL?

25   A    WITH THE CONDITIONS THAT I JUST SAID, YES,

1       IT'S NOT FUNCTIONAL.

2       Q    LET'S PLAY PAGE 212, LINE 25 THROUGH 213, LINE

3       4 OF YOUR APRIL 24TH DEPOSITION.

4             (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5       OPEN COURT OFF THE RECORD.)

6       BY MR. VERHOEVEN:

7       Q    YOU DIDN'T HAVE ANY QUALIFICATIONS WHEN YOU

8       ANSWERED THAT AT YOUR DEPOSITION, DID YOU, SIR?

9       A    BECAUSE I UNDERSTOOD IT TO BE THE WAY I JUST

10      SAID IT.

11      Q    DO YOU STAND BY THAT TESTIMONY?

12      A    YES.

13      Q    NOW, YOU TESTIFIED ON DIRECT EXAMINATION THAT

14      YOUR AN INDUSTRIAL DESIGNER; CORRECT?

15      A    THAT'S CORRECT.

16      Q    BUT, IN FACT, YOU'VE NEVER DESIGNED A

17      SMARTPHONE, HAVE YOU?

18      A    NO, I HAVE NOT DESIGNED A SMARTPHONE.

19      Q    IS IT FAIR TO SAY THAT YOU HAVE NEVER DESIGNED

20      A SMARTPHONE AT ANY STAGE?

21      A    I'M NOT SURE WHAT YOU MEAN BY "ANY STAGE."

22      Q    WELL, LET ME ASK IT THIS WAY:  REGARDLESS OF

23      WHETHER OR NOT THE DESIGN WAS ACTUALLY IMPLEMENTED

24      OR MANUFACTURED OR PRODUCED IN ANY WAY, YOU NEVER

25      HAVE NOT DESIGNED ANY SMARTPHONES AT ANY STAGE IN

202

```
1    THAT PROCESS?

2    A    NO.  I'VE DESIGNED CELL PHONES, NOT

3    SMARTPHONES.

4    Q    YOU HAVE DESIGNED SOME CELL PHONES, BUT THOSE

5    DESIGNS ARE ONLY CONCEPTS; RIGHT?

6    A    THAT'S CORRECT.

7    Q    AND NONE OF THOSE CONCEPTS WERE EVER PRODUCED

8    OR MANUFACTURED; CORRECT?

9    A    I DON'T KNOW FOR SURE.

10   Q    WELL, AS FAR AS YOU KNOW, THOSE CONCEPTS WERE

11   NEVER EVEN MADE INTO MODELS OR PROTOTYPES, WERE

12   THEY?

13   A    YES, THEY WERE MADE INTO MODELS.

14   Q    OKAY.  LET'S LOOK AT YOUR DEPOSITION, THIS

15   TIME LET'S JUST PUT UP THE WRITTEN DEPOSITION,

16   PLEASE, MR. FISHER, DATED APRIL 23, 2012.

17             JUST ONE SECOND, YOUR HONOR.

18             (PAUSE IN PROCEEDINGS.)

19             MR. VERHOEVEN:  I'M SORRY, MR. FISHER.

20   CAN WE GO TO THE ITC TRANSCRIPT, PAGE 219, LINES 13

21   THROUGH 24.

22   Q    DO YOU SEE THIS IS FROM THE HEARING THAT YOU

23   ATTENDED AND GAVE TESTIMONY TO RELATED IN ANOTHER

24   PROCEEDING.  DO YOU REMEMBER THAT, IN WASHINGTON?

25   A    IT LOOKS FAMILIAR, YES.
```

96203

```
 1    Q    AND YOU WERE ASKED, WITH RESPECT TO OTHER CELL

 2    PHONE DESIGNS THAT YOU WORKED ON, DID YOU WORK ON

 3    ANY OF THOSE PRIOR TO 2006?  DO YOU SEE THAT?

 4    A    YES.

 5    Q    AND DOWN AT THE BOTTOM, IT SAYS QUESTION, THIS

 6    IS LINES 21 THROUGH 24?

 7         "QUESTION:  DID ANY OF THEM BECOME MODELS

 8    OR PROTOTYPES OR WERE OTHERWISE EXPRESSED IN

 9    THREE-DIMENSIONAL FORM?"

10         WHAT WAS YOUR ANSWER?

11    A    APPARENTLY I SAID "NOT THAT I KNOW OF," AND

12    I'D APPARENTLY FORGOTTEN THAT MODELS AND MOCK-UPS

13    WERE MADE.

14    Q    SO IN MAY OF THIS YEAR YOU TESTIFIED NONE WERE

15    MADE, AND NOW YOU'RE TESTIFYING THAT SOME WERE

16    MADE?  IS THAT RIGHT?

17    A    YES.  I MEAN, IT WAS A LONG TIME AGO.  I THINK

18    I REMEMBERED THAT THERE WERE MODELS MADE.

19    Q    SO IT THIS TESTIMONY NOT TRUE?

20    A    AT THAT POINT, I DIDN'T REMEMBER THAT.

21    Q    THAT TESTIMONY WAS GIVEN UNDER OATH, SIMILAR

22    TO THIS TESTIMONY; CORRECT?

23    A    TO THE BEST OF MY ABILITY, YES.

24    Q    ISN'T IT TRUE THAT IN ALL YOUR TIME AS AN

25    INDUSTRIAL DESIGNER, YOU ONLY WORKED ON CONCEPTS
```

```
 1    FOR TWO OR THREE CELL PHONE PRODUCTS?

 2    A    I'M NOT SURE HOW MANY THERE WERE.  I THINK

 3    THERE MAY HAVE BEEN AS MANY AS HALF A DOZEN.

 4    Q    ALL RIGHT.  WELL, LET'S GO TO YOUR DEPOSITION,

 5    APRIL 23 -- I'M SORRY.  WITHDRAW THAT.

 6              LET'S GO TO THE HEARING PROCEEDING, PAGE

 7    53, LINE 17 THROUGH 54, LINE 6.

 8              I APOLOGIZE, YOUR HONOR.  ONE MORE TIME.

 9              LET'S GO TO THE DEPOSITION OF

10    MR. BRESSLER DATED APRIL 23, 2012, PAGE 53, LINE 17

11    THROUGH 54, LINE 6.

12              HERE THIS IS YOUR DEPOSITION.

13              "QUESTION:  THESE DESIGNS OR SKETCHES

14    THAT YOU WORKED ON, WERE THEY FOR ONE CELL PHONE

15    PRODUCT OR MORE THAN ONE?

16              "ANSWER:  MORE THAN ONE.

17              "QUESTION:  CAN YOU TELL ME IN TERMS OF

18    JUST GENERALLY HOW MANY YOU BELIEVE YOU WORKED ON

19    IF YOU WERE TO DEFINE IT AS SORT OF -- AT LEAST THE

20    GOAL WAS ULTIMATELY TO COME UP WITH SOMETHING THAT

21    LOOKED LIKE A PRODUCT?

22              "ANSWER:  I BELIEVE THERE WERE TWO OR

23    THREE PROJECTS.  I DON'T REMEMBER WHETHER IT WAS

24    TWO OR THREE."

25              DO YOU SEE THAT, SIR?
```

96205

```
 1    A    YES.  THOSE ARE PROJECTS.  EACH PROJECT HAS A

 2    NUMBER OF DESIGNS FOR CELL PHONES IN IT.

 3    Q    OKAY.  SO YOU AGREE THAT YOU ONLY WORKED ON

 4    CONCEPTS FOR TWO OR THREE CELL PHONE PROJECTS?

 5    A    CORRECT.

 6    Q    AND ASIDE FROM PHONES, YOU HELPED DESIGN ONE

 7    COMPUTER TABLET; CORRECT?

 8    A    THAT'S CORRECT.

 9    Q    AND THAT'S IT?

10    A    THAT'S IT.

11    Q    AND THAT WAS SOME TIME WAY BACK IN THE EIGHT

12    '80S; RIGHT?

13    A    I BELIEVE SO.

14    Q    THE VERSION OF THE TABLET COMPUTER THAT

15    REACHED THE MARKET ON THAT PRODUCT WAS

16    SUBSTANTIALLY DIFFERENT THAN THE DESIGN YOU WORKED

17    ON; CORRECT?

18    A    IT WAS DIFFERENT, YES.

19    Q    AND THE PROJECT YOU WORKED ON ONLY REACHED THE

20    PROTOTYPE STAGE; CORRECT?

21    A    YES.  IT WAS A PREPRODUCTION PROTOTYPE.

22    Q    THE PRODUCT WAS INTENDED FOR INSURANCE AGENTS

23    APPRAISING CAR ACCIDENTS; RIGHT?

24    A    THAT'S CORRECT.

25    Q    IT HAD JUST A VERY SMALL DISPLAY LOCATED AT
```

1      THE TOP OF THE DEVICE?

2      A    THE DISPLAY TOOK UP ABOUT 50 PERCENT OF THE

3      FRONT OF THE DEVICE.

4      Q    SMALLER THAN WHAT WE'RE LOOKING AT IN THESE

5      SMARTPHONES HERE?

6      A    YES.

7      Q    IT WASN'T DESIGNED FOR WATCHING MOVIES?

8      A    NO.

9      Q    BROWSING THE INTERNET?

10     A    NO.

11     Q    READING BOOKS?

12     A    NO.

13     Q    COMPLETELY DIFFERENT TYPE OF PRODUCT?

14     A    DIFFERENT TYPE OF PRODUCT IN THE SENSE THAT IT

15     DIDN'T DO THE SAME THING, YES.  A LOT OF THE DESIGN

16     QUESTIONS OF VISIBILITY, IMPORTABILITY, AND HOW YOU

17     PRESENT INFORMATION WERE SIMILAR.

18     Q    NOW, FOR EACH OF THE DESIGN PATENT AND TRADE

19     DRESS THAT YOU LOOKED AT, YOU CONCLUDED, HEY,

20     THERE'S OTHER DESIGNS OUT THERE THAT ARE EQUALLY

21     FUNCTIONAL; RIGHT?

22     A    I BELIEVE THAT'S A FAIR STATEMENT.

23     Q    THAT WAS PART OF YOUR ANALYSIS OF WHY YOU

24     DIDN'T THINK THERE'S ANY FUNCTIONAL ELEMENT FOR THE

25     DESIGN PATENTS; RIGHT?

```
 1    A    I BELIEVE THERE WAS NO FUNCTIONING THAT WAS

 2    DRIVEN -- THERE WAS NOTHING IN THE APPEARANCE THAT

 3    WAS DRIVEN BY FUNCTION, YES.

 4    Q    SO I WANT TO FOCUS ON THAT STATEMENT THAT YOU

 5    MADE IN YOUR REPORTS AND YOU'RE MAKING TO THE JURY

 6    THAT THESE ALTERNATE DESIGNS OR EQUALLY FUNCTIONAL.

 7              ARE YOU WITH ME?

 8    A    I AM.

 9    Q    OKAY.  ISN'T IT TRUE, SIR, THAT THE EXTENT OF

10    YOUR ANALYSIS OF WHETHER THEY WERE EQUALLY

11    FUNCTIONAL WAS SIMPLY REVIEWING THE PACKAGING OF

12    THESE OTHER PHONES AND TURNING THEM ON TO SEE THAT

13    THEIR OPERATING SYSTEM WAS RUNNING?

14    A    ACTUALLY, MOST OF MY ANALYSIS DID NOT ENTAIL

15    DOING THOSE THINGS.  MOST OF IT ENTAILED REVIEWING

16    THE DESIGN OF THE PHONES, THE APPEARANCE AND DESIGN

17    OF THE PHONES.

18    Q    SO --

19    A    HOW THEY FUNCTION -- HOW THEY FUNCTION REALLY

20    WAS INSIGNIFICANT TO ME.

21    Q    HOW THEY FUNCTION -- OH, HOW THESE ALTERNATIVE

22    DESIGN PHONES FUNCTIONED WAS IRRELEVANT TO YOU?

23    A    IT WAS CERTAINLY A LESSER ELEMENT THAN WHETHER

24    THERE WERE ALTERNATIVE DESIGNS FOR SOMETHING THAT

25    DID THE SAME THING THAT IT WAS CLAIMING ON ITS
```

1    PACKAGING, YES.

2    Q    WHETHER OR NOT THEY FUNCTIONED THE SAME OR NOT

3    WAS INSIGNIFICANT TO YOU?

4    A    AGAIN, THE WAY WE'RE USING THE TERM "FUNCTION"

5    MAKES IT A DIFFICULT QUESTION TO ANSWER, BUT IN

6    BROAD TERMS, YES.

7    Q    BUT IN ANY CASE, TO THE EXTENT YOU DID EVEN

8    LOOK AT THE ISSUE OF THE FUNCTIONALITY OF THESE

9    ALTERNATIVE DESIGNS, THE EXTENT OF YOUR ANALYSIS

10   WAS TO REVIEW THE PACKAGING OF THE PHONE AND SIMPLY

11   TURN IT ON TO SEE THE OPERATING SYSTEM; RIGHT?

12   A    WHAT MATTERED IN THIS ANALYSIS WAS THAT THESE

13   WERE PHONES --

14   Q    SIR, CAN YOU JUST -- CAN YOU ANSWER THE

15   QUESTION?  IS THAT THE EXTENT OF YOUR ANALYSIS?

16   A    NO.

17   Q    OTHER THAN LOOKING AT THE PACKAGING AND

18   TURNING THE PHONES ON TO SEE THEIR OPERATING

19   SYSTEM, YOU DID NOT USE ANY OTHER CRITERIA AS AN

20   EXPERT TO DETERMINE WHETHER OR NOT THE

21   FUNCTIONALITY OF THE ALTERNATIVE PHONES WERE THE

22   SAME OR LARGELY THE SAME; RIGHT?

23   A    IN TERMS OF THE OPERATION, THAT IS CORRECT.

24   Q    SO IN TERMS OF THE OPERATION OF THESE

25   ALTERNATIVE PHONES, FOR MANY OF THEM, YOU DIDN'T

```
1    LOOK AT IT AT ALL; RIGHT?

2    A    PARDON ME?

3    Q    FOR MANY OF THE ALTERNATIVE PHONES, YOU DIDN'T

4    EVEN LOOK AT THE OPERATION OF THE PHONES AT ALL;

5    RIGHT?

6    A    NO.  I SAID I TURNED THEM ON AND I LOOKED AT

7    THE OPERATING SYSTEM.

8    Q    OKAY.  AND THAT'S ALL YOU DID?

9    A    AND REVIEWED THE CLAIMS ON THE PACKAGING AS TO

10   WHETHER THEY HAD THE SAME PERFORMANCE AS THE

11   IPHONE.

12   Q    SO ALL YOU DID WAS YOU REVIEWED THE PACKAGING

13   AND YOU TURNED THEM ON; RIGHT?

14   A    IF YOU WANT TO SAY IT THAT WAY, YES.

15   Q    OKAY.  AND BASED ON THAT, YOU'RE TESTIFYING TO

16   THE JURY THAT ALL THESE ALTERNATIVE PHONES --

17   A    THAT IS --

18   Q    -- HAVE EQUAL FUNCTIONALITY?

19   A    I'M SORRY.  PARDON ME?

20   Q    AND BASED ON THAT ANALYSIS, IT'S YOUR

21   TESTIMONY TO THE JURY THAT ALL OF THESE ALTERNATIVE

22   PHONES HAVE EQUAL FUNCTIONALITY; RIGHT?

23   A    NOT NECESSARILY.

24   Q    SO THEY DON'T ALL HAVE EQUAL FUNCTIONALITY?

25   A    TO THE DEGREE THAT THEY ARE ALL SMARTPHONES
```

```
 1    AND THEY CLAIM THEY ARE SMARTPHONES, THEY HAVE

 2    SIMILAR FUNCTIONALITY.

 3    Q    AND YOUR BASIS FOR THAT OPINION IS READING THE

 4    PACKAGING AND TURNING ON THE OPERATING SYSTEM?

 5    THAT'S IT; RIGHT?

 6    A    AND COMPARING THE DESIGNS TO ONE ANOTHER TO

 7    SEE IF ANY OF THEM WERE THE -- WERE REQUIRED BY

 8    THOSE FUNCTIONS, YES.

 9    Q    THE PHONES THAT YOU IDENTIFIED AS ALTERNATIVE

10    MODELS, MR. BRESSLER, YOU DON'T HAVE ANY

11    INFORMATION AS TO WHETHER THE PRODUCT FEATURES OF

12    THOSE ALTERNATIVE PHONES AFFECT THE COST OF THE

13    PHONES, DO YOU?

14    A    I DID BUY MOST OF THOSE PHONES, AND SO WE HAD

15    A REASONABLY GOOD -- OR I HAD A REASONABLY GOOD

16    SENSE THAT THEY WERE AT LEAST COMPETITIVELY PRICED

17    IN THE MARKETPLACE, WHICH SUGGESTS THAT THEIR

18    MANUFACTURING COST MUST HAVE BEEN COMPETITIVE.

19    Q    LET'S SEE WHAT YOU SAID AT YOUR APRIL 24TH,

20    2012 DEPOSITION, PAGE 171, LINE 24 THROUGH 172,

21    LINE 4.

22              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

23    OPEN COURT OFF THE RECORD.)

24    BY MR. VERHOEVEN:

25    Q    THAT WAS THE QUESTION AND THE ANSWER YOU GAVE
```

1    AT YOUR SWORN DEPOSITION IN APRIL; RIGHT?

2    A    I WAS BEING ASKED ABOUT A PARTICULAR FEATURE,

3    YES.

4    Q    DO YOU STAND BY THAT TESTIMONY?

5    A    YES.

6          MS. KREVANS:  YOUR HONOR, FOR

7    COMPLETENESS, MAY I READ A PORTION OF THE TESTIMONY

8    JUST PRIOR?

9          THE COURT:  NO.  NO.  YOU'LL HAVE

10   REDIRECT OPPORTUNITY.

11   BY MR. VERHOEVEN:

12   Q    AND YOU DON'T HAVE ANY INFORMATION FOR THE

13   COMPETITIVE PHONES THAT YOU IDENTIFIED IN YOUR

14   REPORT AS TO WHETHER ANY PRODUCT FEATURE AFFECTED

15   THE QUALITY OF THE PHONES; RIGHT?

16   A    QUALITY WAS NOT A PART OF MY ANALYSIS.

17   Q    SO IS THE ANSWER NO?

18   A    I GUESS IT WOULD HAVE TO BE NO, YES.

19   Q    LET ME MAKE SURE THE RECORD IS CLEAR.  IT IS

20   CORRECT THAT YOU DO NOT HAVE ANY INFORMATION FOR

21   THE COMPETITIVE PHONES THAT YOU IDENTIFIED AS TO

22   WHETHER ANY PRODUCT FEATURE AFFECTED THE QUALITY OF

23   THOSE PHONES?

24   A    AGAIN, HOW YOU MEASURE QUALITY IS NOT CLEAR TO

25   ME.

```
1              BUT, YES, WHAT YOU SAID IS CORRECT.
2    Q    YOU DID NOTHING TO DETERMINE THE COMPARABLE
3    MANUFACTURING COSTS OF THE DIFFERENT ALTERNATIVES;
4    CORRECT?
5    A    I BELIEVE I STATED THE BASIS ON WHICH I
6    BELIEVED THAT THEIR MANUFACTURING COSTS WERE
7    COMPETITIVE AND SIMILAR.
8    Q    LET'S PLAY FROM YOUR APRIL 24TH DEPOSITION,
9    PAGE 168, LINE 18 THROUGH 169, LINE 2.
10             (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
11   OPEN COURT OFF THE RECORD.)
12   BY MR. VERHOEVEN:
13   Q    DO YOU STAND BY THAT TESTIMONY, SIR?
14   A    YES.
15             MR. VERHOEVEN:  YOUR HONOR, I DON'T KNOW
16   IF -- YOU MENTIONED THAT WE MIGHT WANT TO TAKE A
17   SHORT BREAK TO ADDRESS THE 035 ISSUE.
18             THE COURT:  WELL, I -- I'M GOING TO ALLOW
19   IT SOLELY FOR NON-INFRINGEMENT, BUT IT'S NOT
20   ADMISSIBLE FOR INVALIDITY.
21             THE MOCK-UP I'M ASSUMING IS THE SAME AS
22   THE MODELS; CORRECT?
23             MR. VERHOEVEN:  IT'S ONE AND THE SAME
24   THING.
25             THE COURT:  OKAY.
```

96213

```
 1                MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

 2                MS. KREVANS:  YOUR HONOR, I HAVE THE

 3     REPORT HERE.  THERE'S NOT A WORD OF IT.  I HAVE THE

 4     ROG RESPONSES.  THERE'S NOT A WORD OF IT.

 5                THE COURT:  OKAY.  LET'S TAKE A

 6     TWO-MINUTE BREAK.  JUST A VERY SHORT BREAK, PLEASE.

 7                AGAIN, PLEASE KEEP AN OPEN MIND.  DON'T

 8     SPEAK WITH ANYONE ABOUT THE CASE, AND PLEASE DON'T

 9     GO VERY FAR.  WE'LL GET THIS RESOLVED IN JUST A

10     SECOND.

11                THE WITNESS:  I'M SORRY, YOUR HONOR?  DID

12     YOU SPEAK TO ME?

13                THE COURT:  YOU CAN STEP DOWN.

14                THE WITNESS:  THANK YOU.

15                THE COURT:  LET'S TAKE A QUICK BREAK.

16                (WHEREUPON, A RECESS WAS TAKEN.)

17                THE COURT:  ALL RIGHT.  LET ME SEE

18     MR. SHERMAN'S, OR I'M SORRY, MR. ANDERS', YOU SAID,

19     ANDREWS OR ANDERS' ERROR.

20                MS. KREVANS:  I HAVE HERE, YOUR HONOR, AN

21     EXCERPT FROM MR. ANDERS' REPORT WHICH ADDRESSES THE

22     '889 ON NON-INFRINGEMENT.  HE WAS THEIR

23     NON-INFRINGEMENT EXPERT.  THERE'S NOTHING IN THERE.

24     I ALSO HAVE THEIR INTERROGATORY RESPONSE ON

25     NON-INFRINGEMENT, WHICH HAS NOTHING.
```

```
 1              THE COURT:  LET ME SEE THAT AS WELL.

 2              AND LET ME HEAR FROM MR. VERHOEVEN.  IS

 3    THERE ANY PORTION OF EITHER MR. ANDERS' EXPERT

 4    REPORT YOU WANT ME TO LOOK AT OR TO YOUR

 5    INTERROGATORY RESPONSES?

 6              MR. VERHOEVEN:  WE'RE LOOKING AT THAT

 7    RIGHT THIS SECOND, YOUR HONOR.  I'VE BEEN UP HERE

 8    QUESTIONING THE WITNESS, SO -- BUT I DO KNOW, I'VE

 9    BEEN TOLD THAT THIS WAS IN THE EXCLUSIVE

10    POSSESSION -- I'M HOLDING THE 035, THIS WAS IN THE

11    EXCLUSIVE POSSESSION OF APPLE AND WE COULDN'T

12    GET --

13              THE COURT:  PLEASE TAKE A SEAT.  I'M

14    SORRY.

15              MR. VERHOEVEN:  WE COULDN'T GET IT.  I

16    ACTUALLY MOVED TO COMPEL.

17              MS. MAROULIS:  YOUR HONOR, WE MOVED TO

18    COMPEL THE 035 MOCK-UP LAST YEAR.

19              JUDGE GREWAL GRANTED THIS MOTION.

20    THEREAFTER THERE WAS A STIPULATION BY APPLE THAT HE

21    PUT ON THE EXHIBIT LIST THAT SHOWS THIS IS THE

22    EMBODIMENT OF THE PATENT.

23              THE COURT:  THIS WAS LITIGATED FOR THE

24    PRELIMINARY INJUNCTION.  IT WAS BEFORE THE FEDERAL

25    CIRCUIT.
```

1            MR. VERHOEVEN:  EXACTLY.

2            THE COURT:  IT WENT TO THE FEDERAL

3      CIRCUIT, RIGHT.

4            MR. JACOBS:  FROM THE DISCLOSURE

5      STANDPOINT, FROM THE PRODUCTION STANDPOINT, THAT'S

6      EXACTLY RIGHT.  THE STIPULATION IS IN THE FALL OF

7      2011, YOU HEARD THEM -- YOU HEARD THE BACKGROUND OF

8      THIS WHEN YOU HEARD MR. STRINGER'S TESTIMONY, HOW

9      HE IDENTIFIED THAT THE PHOTOGRAPHS IN HIS

10     DEPOSITION IN OCTOBER, HE IDENTIFIED THE

11     PHOTOGRAPHS AS REPRESENTING THE 035 MODEL.

12            SO THE 035 MODEL HAS BEEN IN THE

13     LITIGATION AND CARRIED FROM DEPOSITION TO

14     DEPOSITION AND COURT PROCEEDING TO COURT PROCEEDING

15     FOR FOUR MONTHS BEFORE THE DISCOVERY CUT-OFF, YOUR

16     HONOR.

17            SO THE INTERROGATORY RESPONSE VERY EASILY

18     COULD HAVE REFLECTED THE 035 MODEL WAS THAT THEIR

19     THEORY.

20            THE COURT:  WELL, MY UNDERSTANDING FROM

21     THE EXPERT REPORTS IS THAT IT WAS ONLY BROUGHT UP

22     IN THE CONTEXT OF INVALIDITY AND THAT WAS STRICKEN

23     FOR NOT BEING TIMELY DISCLOSED AND THAT THERE IS

24     NOT ANY EXPERT REPORT THAT RAISES THE 035 FOR

25     NON-INFRINGEMENT, AND IF THAT'S WRONG, LET ME KNOW

```
1     WHERE IN THESE DOCUMENTS I SHOULD BE LOOKING FOR

2     SOMETHING DIFFERENT.

3               MR. VERHOEVEN:  I'M BEING INFORMED THAT'S

4     CORRECT, YOUR HONOR.

5               THE COURT:  YEAH.

6               MR. VERHOEVEN:  BUT THE POINT I'M TRYING

7     TO MAKE, YOUR HONOR, IS THIS IS -- THIS IS ACTUALLY

8     THE MODEL THAT WAS USED TO DRAW THE PICTURES IN THE

9     '889.  EVERYBODY HAD KNOWLEDGE OF IT.  AND IT'S IN

10    THE PROSECUTION HISTORY, CITED AS AN EMBODIMENT,

11    AND I SHOULD BE ENTITLED --

12              THE COURT:  DIDN'T THE PTO SAY TO STRIKE

13    ALL THOSE --

14              MS. KREVANS:  YES, YOUR HONOR, BECAUSE

15    WHAT HAPPENED IN THE PROSECUTION WAS THE APPLICANT

16    SENT IN THE PHOTOS AND ASKED THAT THEY ACTUALLY BE

17    MADE PART OF THE FIGURES OF THE PATENT, AND THE PTO

18    SAID "WE DON'T DO THAT.  YOU HAVE DRAWINGS AND THE

19    DRAWINGS ARE WHAT GOES IN THE PATENT AND THEREFORE

20    THE DRAWINGS ARE WHAT DEFINE THE CLAIM."

21              BUT JUST TO BE CLEAR, JUDGE GREWAL AND

22    YOUR HONOR HAVE BEEN VERY CONSISTENT IN THIS CASE

23    ABOUT DRAWING A LINE ABOUT WHETHER CONTENTIONS HAVE

24    BEEN DISCLOSED AND ANYTHING IN AN EXPERT REPORT

25    THAT WAS NOT IN CONTENTIONS WAS STRUCK FROM THE
```

1    EXPERT REPORT.

2              ALSO, YOUR HONOR HAS BEEN VERY CONSISTENT

3    WITH ENFORCING WHETHER THINGS WERE IN EXPERT

4    REPORTS.  IF IT WASN'T IN EXPERT REPORT, THE THEORY

5    CAN'T BE PRESENTED.

6              HERE WE HAVE A NON-INFRINGEMENT THEORY

7    WE'D LIKE TO PRESENT THAT WAS NEVER IN THE

8    CONTENTIONS AND IT WAS ALSO NEVER IN THE EXPERT

9    REPORT AND WE'RE GOING TO HEAR IT FOR THE FIRST

10   TIME RIGHT HERE IN FRONT OF THE JURY.

11             THAT IS IMPERMISSIBLE, BECAUSE IF THEY

12   WANTED TO ASSERT A NON-INFRINGEMENT THEORY BASED ON

13   THIS MODEL WHICH THEY'VE KNOWN ABOUT SINCE, AS

14   MR. JACOBS SAID, IN 2011, LONG BEFORE THEY HAD TO

15   ANSWER THE CONTENTION INTERROGS, THEY SHOULD HAVE

16   DISCLOSED IT IN THEIR CONTENTIONS.

17             THEY DIDN'T AND IT CAN'T COME IN.

18             AND OF COURSE IT'S ALSO NOT IN THEIR

19   EXPERT REPORT.

20             WHAT THEY'RE TRYING TO DO IS GET AROUND

21   THE LINE THAT YOU AND JUDGE GREWAL HAVE DRAWN ABOUT

22   PROPER DISCLOSURE BY TRYING TO PUT THIS NEW THEORY,

23   WHICH THEY CAN'T USE IN THEIR OWN CASE, IN THROUGH

24   CROSS-EXAMINATION AND THAT IS IMPROPER.

25             MR. VERHOEVEN:  YOUR HONOR, IT'S NOT A

1    NEW THEORY.  THERE'S NO NEW THEORY BEING BANDIED

2    ABOUT.

3            THIS IS A DOCUMENT -- THIS IS A PHYSICAL

4    MODEL THAT WE HAD TO FIGHT JUST TO GET THAT APPLE

5    SUCCESSFULLY PRECLUDED US FROM USING IN THE

6    PRELIMINARY INJUNCTION STAGE BECAUSE THEY DIDN'T

7    PRODUCE IT TO US, AND THE NOTION THAT THEY DIDN'T

8    KNOW THAT WE WERE GOING TO USE THIS TO SHOW, HELP

9    SHOW WHAT AN EMBODIMENT, WHAT APPLE SAYS IS AN

10   EMBODIMENT OF THE '889 PATENT IS JUST NOT CREDIBLE.

11           OF COURSE THEY KNEW WE WERE GOING TO DO

12   THAT, YOUR HONOR.  IT'S NOT A NEW THEORY.

13           THE COURT:  WELL, IT WASN'T IN THE

14   INFRINGEMENT CONTENTIONS.  IT WASN'T IN THE EXPERT

15   REPORT.  SO I --

16           MR. VERHOEVEN:  BUT WHY WOULD IT NEED TO

17   BE IN THE INFRINGEMENT CONTENTIONS?  THIS IS AN

18   EMBODIMENT OF THE ACTUAL '889.

19           THE COURT:  YOU CITED IT ONLY FOR

20   INVALIDITY AND THAT WAS STRICKEN FOR UNTIMELY

21   DISCLOSURE.

22           SO THAT'S MY RULING.  YOU'VE MADE YOUR

23   RECORD.  LET'S BRING BACK THE JURY UNLESS YOU HAVE

24   ANYTHING ELSE.

25           MR. VERHOEVEN:  I'M SORRY, YOUR HONOR.  I

1    DON'T KNOW WHAT THE RULING WAS.

2              THE COURT:  THE RULING IS THAT --

3              MR. VERHOEVEN:  BECAUSE I THOUGHT YOU

4    SAID THIS WAS IN FOR INFRINGEMENT IN YOUR EARLIER

5    RULING.

6              THE COURT:  WELL, THAT'S BECAUSE IT WAS

7    NEVER -- FOR WHATEVER REASON, THE ONLY OBJECTION

8    THAT HAD BEEN -- SAMSUNG ONLY CITED THE 035 MARKUP,

9    MOCK-UP -- EXCUSE ME -- FOR INVALIDITY.  OKAY?  YOU

10   NEVER CITED IT FOR ANYTHING ELSE.

11             APPLE THEN MOVED TO STRIKE THE EXPERT

12   REPORT USING THE 035 MOCK-UP FOR INVALIDITY FOR

13   UNTIMELINESS.  JUDGE GREWAL GRANTED THAT.  I HAVE

14   AFFIRMED JUDGE GREWAL'S EXCLUSION.

15             AND THEN NOW THERE'S A NEW THEORY OF

16   NON-INFRINGEMENT.

17             NOW, AT THE TIME THAT I ISSUED MY

18   AUGUST 2ND ORDER, THE NON-INFRINGEMENT ISSUE HAD

19   NOT BEEN BRIEFED OR RAISED AT ALL, AND I UNDERSTAND

20   NOW WHY.  IT'S BECAUSE IT HAD NOT BEEN RAISED AS A

21   THEORY IN EITHER SAMSUNG'S EXPERT REPORT OR

22   CONTENTION INTERROGATORIES.

23             BUT I DO THINK THAT IT IS CORRECT THAT IF

24   IT HASN'T BEEN TIMELY DISCLOSED IN AN EXPERT

25   REPORT, OR IN A CONTENTION INTERROGATORY, IT SHOULD

```
 1    NOT -- AND IT'S IMPROPER TO RAISE IT NOW.  IT'S

 2    UNTIMELY.

 3             EVERYONE WAS AWARE OF THIS.  ALL OF YOUR

 4    ARGUMENTS WITH REGARD TO THIS PARTICULAR MODEL

 5    SHOULD HAVE BEEN RAISED TIMELY.

 6             MR. VERHOEVEN:  WELL, JUST ONE LAST THING

 7    SO I CAN GET IT IN THE RECORD.

 8             THE COURT:  I'M GOING TO START CHARGING

 9    YOUR TIME ON THIS, OKAY?  BECAUSE I'VE MADE MY

10    RULING.  YOU'VE MADE YOUR RECORD FOR APPEAL.  I'M

11    GOING TO START CHARGING YOU TIME.  GO AHEAD IF YOU

12    WANT TO HAVE RECONSIDERATION.  GO AHEAD.

13             MR. VERHOEVEN:  JUST ONE SENTENCE, YOUR

14    HONOR.  THIS IS NOT A NEW THEORY OF

15    NON-INFRINGEMENT.

16             THE COURT:  WELL, YOU HAVEN'T BEEN ABLE

17    TO POINT TO ME ANY PLACE THAT IS IN YOUR EXPERT

18    REPORT OR IN YOUR INFRINGEMENT CONTENTIONS AND I'M

19    NOW CHARGING THIS TIME TO YOU.

20             SO GO AHEAD.  KEEP TALKING.

21             MR. PRICE:  YOUR HONOR, IF I MAY?  YOU

22    CAN CHARGE US, OF COURSE.

23             OUR NON-INFRINGEMENT OPINION IS WE DON'T

24    LOOK LIKE THE PATENT.  WE DON'T NEED AN EXPERT FOR

25    THAT.  AS THE DEFENDANTS, WE DON'T NEED AN EXPERT
```

1  AT ALL.

2          THIS IS NOW A FACT QUESTION.  DO OUR

3  DESIGNS LOOK LIKE THE PATENT?  AND THIS TELLS YOU

4  WHAT THE PATENT EMBODIES.

5          WE'RE NOT REQUIRED TO GO INTO GREAT

6  DETAIL, PARTICULARLY IN A DESIGN CASE, AS TO HOW WE

7  DON'T LOOK LIKE THE PATENT.

8          WE DON'T NEED AN EXPERT AT ALL.  WE'RE

9  NOT REQUIRED TO HIRE ONE.

10          I UNDERSTAND THERE -- OUR EXPERT REPORTS

11  HAVE BEEN EXCLUDED IN SOME MEASURE.  OUR EXPERTS

12  CAN'T SAY CERTAIN THINGS.

13          BUT THAT DOESN'T MEAN THAT WE CAN'T GO

14  WITH OUR INFRINGEMENT POSITION, NON-INFRINGEMENT

15  POSITION HERE, WHICH IS WE DON'T LOOK LIKE THE

16  PATENT.

17          THE COURT:  BUT IT SHOULD HAVE BEEN IN A

18  CONTENTION INTERROGATORY RESPONSE, THOUGH.  THE

19  CONTENTION INTERROGATORY RESPONSE DOESN'T REQUIRE

20  EXPERT TESTIMONY OR AN EXPERT REPORT.

21          MR. PRICE:  NO.  IT REQUIRES US TO SAY WE

22  DON'T LOOK LIKE THE PATENT.  IT DOESN'T REQUIRE

23  ANYTHING ELSE.

24          THE COURT:  WELL, IT DOES REQUIRE YOU TO

25  SAY WHY YOU DON'T LOOK LIKE THE PATENT.

1          MR. PRICE:  IN A DESIGN CASE, BECAUSE YOU

2    CAN LOOK AT IT AND I CAN LOOK AT IT AND I CAN LOOK

3    AT THIS AND WE CAN DECIDE.  SO THAT TWO MINUTES

4    GOES ON OUR TIME.

5          THIS I WOULD BEG YOU TO RECONSIDER

6    BECAUSE IT IS JUST A, I BELIEVE A MAJOR

7    MISINTERPRETATION OF WHAT WE'RE REQUIRED TO DO IN

8    DISCOVERY, AND OBVIOUSLY THIS SERIOUSLY IMPACTS OUR

9    NON-INFRINGEMENT CASE BECAUSE WE SHOULD BE ABLE TO

10   SAY WE DON'T LOOK LIKE THIS.

11          MS. KREVANS:  YOUR HONOR --

12          MR. PRICE:  "THIS" BEING THE PHYSICAL

13   EXHIBIT.

14          SO HOPEFULLY YOU WON'T CHARGE US FOR

15   THEIR RESPONSE, BUT THAT'S YOUR DISCRETION.

16          MS. KREVANS:  IF YOUR HONOR LOOKS AT

17   THEIR NON-INFRINGEMENT CONTENTIONS AND RESPONSE TO

18   THE INTERROGATORY, THEY ARE SIMPLY BOILERPLATE

19   AFTER BOILERPLATE AFTER BOILERPLATE PARAGRAPHS.

20          THIS HAS NEVER BEEN DISCLOSED.  IT NEEDED

21   TO BE DISCLOSED.  IT IS A CONTENTION.

22          IT'S AN AMBUSH NOW IF YOU LET THEM DO IT.

23          AND YOU HAVE DRAWN THIS LINE

24   CONSISTENTLY.  WE THINK YOU'RE DRAWING IT AGAIN

25   CORRECTLY NOW.

```
1              THE COURT:  ALL RIGHT.  WELL, I'VE MADE

2     MY RULING.

3              IT'S 4:05.  I'D LIKE TO BRING THE JURY

4     BACK IN.  I NEED TO GO BACK INTO THE RECORD AND SEE

5     WHAT TIME DID WE EXCUSE THE JURY.  I'M SORRY.

6              (DISCUSSION OFF THE RECORD BETWEEN THE

7     COURT AND THE REPORTER.)

8              THE COURT:  OKAY.  LET'S BRING THE JURY

9     BACK IN, PLEASE.

10              (WHEREUPON, THE FOLLOWING PROCEEDINGS

11     WERE HELD IN THE PRESENCE OF THE JURY:)

12              THE COURT:  ALL RIGHT.  LET'S GO AHEAD,

13     PLEASE.

14              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

15              THE COURT:  IT'S 4:07.  4:08.  GO AHEAD.

16     BY MR. VERHOEVEN:

17     Q    MR. BRESSLER, LET'S TALK BRIEFLY ABOUT THE

18     '889 DESIGN PATENT.  AND DO YOU HAVE THAT PATENT IN

19     MIND?

20     A    IN MIND?

21     Q    YEAH.  DO YOU NEED -- DO YOU WANT ME TO SHOW

22     YOU WHERE IT IS?

23     A    I THINK I HAVE IT.

24     Q    IT'S JX 1061.  YOU CAN LOOK AT IT.

25     A    YES, I HAVE THAT.  IT'S NOT EXACTLY THE SAME
```

1

2

3

4                    <u>CERTIFICATE OF REPORTERS</u>

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT

8    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

9    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

10   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

11   CERTIFY:

12          THAT THE FOREGOING TRANSCRIPT,

13   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

14   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

15   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

16   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

17   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

18

19                    /S/
                  _____
20                LEE-ANNE SHORTRIDGE, CSR, CRR
                  CERTIFICATE NUMBER 9595
21

22                    /S/
                  _____
23                IRENE RODRIGUEZ, CSR, CRR
                  CERTIFICATE NUMBER 8074
24

25                DATED:  AUGUST 6, 2012