# Pierce Declaration

# EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC., A CALIFORNIA CORPORATION, | ) ) | C-11-01846 LHK |
| | ) | SAN JOSE, CALIFORNIA |
| PLAINTIFF, | ) | |
| | ) | AUGUST 7, 2012 |
| VS. | ) | |
| | ) | VOLUME 5 |
| SAMSUNG ELECTRONICS CO., LTD., A KOREAN BUSINESS ENTITY; SAMSUNG ELECTRONICS AMERICA, INC., A NEW YORK CORPORATION; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, A DELAWARE LIMITED LIABILITY COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | PAGES 1297-1637 |
| DEFENDANTS. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE

APPEARANCES ON NEXT PAGE

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595
IRENE RODRIGUEZ, CSR, CRR
CERTIFICATE NUMBER 8074

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                 BY:  HAROLD J. MCELHINNY
 3                                MICHAEL A. JACOBS
                                  RACHEL KREVANS
 4                           425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                 HALE AND DORR
 7                           BY:  WILLIAM F. LEE
                             60 STATE STREET
 8                           BOSTON, MASSACHUSETTS  02109

 9                           BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
10                           PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
12                           BY:  CHARLES K. VERHOEVEN
                                  ANNE ABRAMOWITZ
13                           50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
14
                             BY:  VICTORIA F. MAROULIS
15                                KEVIN P.B. JOHNSON
                             555 TWIN DOLPHIN DRIVE
16                           SUITE 560
                             REDWOOD SHORES, CALIFORNIA  94065
17
                             BY:  MICHAEL T. ZELLER
18                                WILLIAM C. PRICE
                             865 SOUTH FIGUEROA STREET
19                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
20

21

22

23

24

25
```

INDEX OF WITNESSES

PLAINTIFF'S

**PETER BRESSLER**
      REDIRECT EXAM BY MS. KREVANS (RES.)P. 1336
      RECROSS-EXAM BY MR. VERHOEVEN      P. 1349
      FURTHER REDIRECT BY MS. KREVANS    P. 1354


**SUSAN KARE**
      DIRECT EXAM BY MS. KREVANS         P. 1356
      CROSS-EXAM BY MR. VERHOEVEN        P. 1414
      REDIRECT EXAM BY MS. KREVANS       P. 1478
      RECROSS-EXAM BY MR. VERHOEVEN      P. 1489
      FURTHER REDIRECT BY MS. KREVANS    P. 1492
      FURTHER RECROSS BY MR. VERHOEVEN   P. 1493


**RUSSELL WINER**
      DIRECT EXAM BY MR. JACOBS          P. 1496
      CROSS-EXAM BY MR. VERHOEVEN        P. 1529
      REDIRECT EXAM BY MR. JACOBS        P. 1565
      RECROSS-EXAM BY MR. VERHOEVEN      P. 1572
      FURTHER REDIRECT BY MR. JACOBS     P. 1576


**HAL PORET**
      DIRECT EXAM BY MR. JACOBS          P. 1577
      CROSS-EXAM BY MR. PRICE            P. 1591

1

### INDEX OF EXHIBITS

2

|  | MARKED | ADMITTED |
|---|---|---|

3

PLAINTIFF'S

4

| 1042 | | 1365 |
|---|---|---|
| 158-A | | 1478 |
| 1039 | | 1499 |
| 56 | | 1515 |
| 5 AND 6 | | 1525 |
| 5636 | | 1526 |
| 158-A | | 1578 |
| 23 | | 1579 |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   TO BE TRANSPARENT; THEREFORE, ONE WOULD EXPECT THEM

 2   TO BE ANYTHING, AND IT COULD BE OPAQUE.

 3   Q    OKAY.  ONE QUESTION ABOUT THE '889 PATENT.

 4   COULD WE SEE PDX 26.6, PLEASE.  IS THIS ALL OF THE

 5   FIGURES SHOWN IN THE DESIGN OF THE '889 PATENT,

 6   MR. BRESSLER?

 7   A    YES.

 8   Q    IN YOUR VIEW, AS A DESIGNER WHAT HAS WORKED

 9   WITH CONSUMERS, WOULD ALL NINE OF THESE VIEWS OF

10   THE DEVICE, BECAUSE WE'RE IGNORING THE MAN, WOULD

11   ALL NINE OF THESE VIEWS BE EQUALLY IMPORTANT IN

12   FORMING AN OVERALL VISUAL IMPRESSION?

13             MR. VERHOEVEN:  OBJECTION.  LEADING.

14             THE COURT:  OVERRULED.

15             THE WITNESS:  ALL OF THESE VIEWS ARE

16   EQUALLY IMPORTANT IN THE DESIGNER'S ANALYSIS OF THE

17   PATENT.

18             THEY ARE, HOWEVER, IN MY OPINION NOT

19   EQUALLY IMPORTANT IN FORMING THE OVERALL IMPRESSION

20   HELD BY THE ORDINARY OBSERVER.

21             IT'S -- WOULD YOU LIKE IT BRIEF OR --

22   BY MS. KREVANS:

23   Q    A BRIEF EXPLANATION OF WHY PLEASE.

24   A    OKAY.  I BELIEVE THAT THE DEPARTURE, THE

25   DESIGN DEPARTURE THAT'S DEPICTED IN THIS PATENT,
```

```
 1    WHICH IS THE CONTINUOUS FLAT, CLEAR, EDGE-TO-EDGE

 2    GLASS FRONT SURFACE, AT THE TIME OF THIS PATENT,

 3    WAS SUCH A VISUAL DEPARTURE, AND I BELIEVE EVEN NOW

 4    IN THE PRODUCTS THAT ARE AVAILABLE IN THE MARKET,

 5    THE FACT THAT THAT'S A CONTINUOUS SHEET OF GLASS

 6    ACROSS THE WHOLE FRONT OF THE SURFACE I BELIEVE IS

 7    SUCH A DESIGN DEPARTURE THAT IT IS THE MAJOR DRIVER

 8    OF THE OVERALL IMPRESSION, SUCH THAT THE OTHER

 9    VIEWS, THOUGH THEY'RE PART OF THE IMPRESSION, I

10    BELIEVE THEY ASSUME LESS IMPORTANCE IN ONE'S MIND

11    WHEN ONE'S VIEWING THAT PRODUCT.

12            MS. KREVANS:  THANK YOU, MR. BRESSLER.

13            PASS THE WITNESS.

14            THE COURT:  ALL RIGHT.  IT'S NOW 9:27.

15            ANY RECROSS?

16            MR. VERHOEVEN:  JUST A FEW MINUTES, YOUR

17    HONOR.

18            THE COURT:  OKAY.  GO AHEAD, PLEASE.

19            MR. VERHOEVEN:  CAN WE PUT UP DX 511,

20    PLEASE.

21                   RECROSS-EXAMINATION

22    BY MR. VERHOEVEN:

23    Q    GOOD MORNING, MR. BRESSLER.

24    A    GOOD MORNING.

25    Q    WE JUST LOOKED AT THIS.  I THINK WE LOOK ADD,
```

1350

```
 1    OR COUNSEL FOR APPLE DIRECTED TO YOU PAGE 2; IS

 2    THAT RIGHT?

 3    A    YES.

 4    Q    AND CAN WE -- MR. FISHER, CAN WE PULL UP THE

 5    BOTTOM IMAGE AND BLOW IT UP AND MAKE IT BIG?

 6              AND IF IT'S POSSIBLE, MR. FISHER, CAN WE

 7    SHOW THE '087 PATENT, JX 1041, AND PULL OUT AN

 8    IMAGE FROM THERE OF THE FRONT SCREEN?  ACTUALLY,

 9    LET'S GO BACK ONE, PLEASE.

10              LET'S TAKE FIGURE 1 BECAUSE THAT'S

11    SLIGHTLY ORIENTED IN THE WAY THAT IT'S SLIGHTLY

12    TILTED AS WELL.

13              I DON'T KNOW IF WE CAN PUT THOSE TWO ON

14    THE SAME SCREEN.  THERE WE GO.

15              NOW, YOU JUST TESTIFIED THAT IT WAS

16    IMPORTANT TO LOOK AT OTHER ANGLES BESIDES THE FRONT

17    ANGLE; CORRECT?

18    A    YES.

19    Q    NOW, WE CAN SEE IN THE '087 PATENT -- AND I

20    BELIEVE YOU TESTIFIED TO THIS -- BUT THERE'S DOTTED

21    LINES AROUND THE BACK OF THE PHONE.

22    A    THAT'S CORRECT.

23    Q    AND SO YOU'RE NOT SAYING WE SHOULD LOOK AT

24    THE, AT ANYTHING BELOW THE BEZEL IN THE '087;

25    RIGHT?
```

1    A    THAT'S CORRECT.

2    Q    ALL THOSE DOTTED LINES WE SHOULD IGNORE;

3    RIGHT?

4    A    YES.

5    Q    THAT'S NOT BEING CLAIMED; RIGHT?

6    A    CORRECT.  THEY WERE THERE ONLY FOR REFERENCE.

7    Q    SO IT'S JUST THE FRONT AND THE BEZEL

8    SURROUNDING IT THAT'S BEING CLAIMED; RIGHT?

9    A    CORRECT.

10   Q    AND THAT'S WHAT WE SHOULD LOOK AT?

11   A    YES.

12   Q    SO IF WE LOOK AT THE DX 511, THE PRIOR ART

13   DESIGN PATENT, THE FACT THAT IT'S THICKER AND HAS A

14   DIFFERENT SHAPE ON THE DOWNWARD SIDES AND BACK IS

15   IRRELEVANT; RIGHT?

16   A    THAT'S CORRECT.

17   Q    OKAY.  SO YOUR POINT IS JUST LOOKING AT THE

18   FRONT, IF YOU LOOK AT DX 511, THE DESIGN PATENT,

19   THE PRIOR ART DESIGN PATENT, IT'S NOT ABSOLUTELY

20   FLAT ALL THE WAY ACROSS THE FRONT; RIGHT?

21   A    THAT'S CORRECT.

22   Q    SO WE'RE TALKING ABOUT RIGHT HERE

23   (INDICATING), RIGHT?

24   A    AND BELOW.

25   Q    THE TOP AND BOTTOM THERE, RIGHT?

```
1    A    CORRECT.

2    Q    SO THAT LITTLE DIFFERENCE, IN YOUR OPINION,

3    MAKES THIS JAPANESE DESIGN PATENT NOT SUBSTANTIALLY

4    SIMILAR TO THE '087; RIGHT?

5    A    I BELIEVE THAT THE OVERALL IMPRESSION THAT

6    THAT CHANGE IN SURFACE WILL CREATE IN THE CONTEXT

7    OF THOSE PATENTS WILL BE SIGNIFICANT.

8    Q    SUCH THAT THE ORDINARY OBSERVER WILL SAY THESE

9    TWO AREN'T SUBSTANTIALLY SIMILAR?

10   A    CORRECT.

11   Q    OKAY.  NOW, CAN WE GO TO DX 728.

12         THIS IS THE SECOND DESIGN PATENT THAT

13   COUNSEL FOR APPLE JUST SHOWED YOU.

14         GO TO PAGE 6, PLEASE.

15         DO YOU REMEMBER LOOKING AT THIS?

16   A    YES.

17   Q    AND CAN WE BLOW UP THE BOTTOM IMAGE AND PUT UP

18   AN IMAGE FROM THE '087, JX 1041 NEXT TO IT.

19         WHY DON'T WE DO THIS ONE, FIGURE 9,

20   BECAUSE IT'S ORIENTED SOMEWHAT SIMILARLY.

21         OKAY.  NOW, YOU SAID -- DO YOU SEE THAT

22   IN PAGE 6, THE FIGURE WE'VE BLOWN UP HERE, HAS TWO

23   LINES THAT GO ALL THE WAY AROUND THE EDGE OF THE

24   FRONT SURFACE?  DO YOU SEE THAT?

25   A    I DO.
```

1353

1    Q    AND IF YOU LOOK AT FIGURE 9, YOU ALSO SEE TWO

2    LINES THAT GO ALL THE WAY AROUND THE EDGE OF THE

3    FRONT SURFACE.  DO YOU SEE THAT, SIR?

4    A    I DO.

5    Q    NOW, YOU'RE SAYING, WELL, I INTERPRET THESE

6    TWO LINES AS NOT BEING A BEZEL, BUT, IN FACT, THEY

7    BOTH DEPICT TWO LINES IN PARALLEL, EQUAL LENGTH

8    GOING ALL THE WAY AROUND THE FRONT SURFACE, DON'T

9    THEY, SIR?

10   A    ONE DOES NOT INTERPRET THE PATENT USING SINGLE

11   VIEWS.

12   Q    SIR, YES OR NO?  DO THEY BOTH DEPICT TWO LINES

13   IN PARALLEL OF EQUAL DISTANCE APART GOING ALL THE

14   WAY AROUND THE EDGE OF THE FRONT SURFACE?  YES OR

15   NO?

16   A    IF YOU'RE ASKING ME IF THE TWO LINES ARE

17   PARALLEL AROUND THE FRONT SURFACE, THE ANSWER IS

18   YES.

19   Q    NOW, YOU TESTIFIED THAT YOU INTERPRET THIS,

20   AND I'M POINTING TO PAGE 6 OF EXHIBIT 729, THE

21   FIGURE WE'VE BLOWN UP, YOU'VE INTERPRETED THIS AS

22   NOT BEING A BEZEL; RIGHT?

23   A    THAT'S CORRECT.

24   Q    AND IN YOUR OPINION, IF THIS ISN'T A BEZEL,

25   THAT TAKES IT OUT FROM BEING SUBSTANTIALLY SIMILAR;

1354

1    RIGHT?

2    A    CORRECT.

3            MR. VERHOEVEN:  OKAY.  NO FURTHER

4    QUESTIONS, YOUR HONOR.

5            THE COURT:  ALL RIGHT.  THE TIME IS NOW

6    9:32.  MAY THIS WITNESS BE EXCUSED?

7            MR. VERHOEVEN:  SUBJECT TO RECALL, YOUR

8    HONOR.

9            THE COURT:  SUBJECT TO RECALL, YOU ARE

10   EXCUSED.

11           MS. KREVANS:  YOUR HONOR, I HAD ONE

12   FURTHER QUESTION FOR THE WITNESS.

13           THE COURT:  OKAY.  GO AHEAD.  IT'S NOW

14   9:32.

15           MS. KREVANS:  CAN WE PUT THAT SLIDE BACK

16   UP, THE ONE THAT WE JUST HAD ON THE SCREEN.

17              **FURTHER REDIRECT EXAMINATION**

18   BY MS. KREVANS:

19   Q    MR. BRESSLER, ARE YOUR VIEWS ABOUT THE BEZEL

20   IN THE PATENT THAT WE'RE LOOKING AT RIGHT NOW THE

21   ONLY REASON THAT YOU THINK IT'S NOT SUBSTANTIALLY

22   SIMILAR TO THE '087 DESIGN?

23           MR. VERHOEVEN:  OBJECTION.  LEADING.

24           THE COURT:  SUSTAINED.

25   BY MS. KREVANS:

1    YOU, THOMAS.

2    Q    OKAY.  DR. KARE, DID YOU CONSIDER, IN LOOKING

3    ON THE LEFT AT THE PICTURE FROM THE REGISTERED

4    IPHONE DRESS, TRADE DRESS, WHAT ASPECTS OF THIS

5    IMAGE DID YOU FORM OPINIONS ABOUT?

6    A    I WAS ONLY ASKED TO COMPARE THE SCREEN

7    GRAPHIC, WHICH I REALIZE IS PART OF THE REGISTERED

8    TRADE DRESS, BUT THAT'S THE PART THAT I WAS ASKED

9    TO COMPARE TO THE KOREANS, APPLICATION SCREENS FROM

10   A SERIES OF SAMSUNG PHONES.

11   Q    OKAY.  WITH RESPECT TO THAT PORTION OF THE

12   REGISTERED IPHONE TRADE DRESS, DID YOU DRAW ANY

13   CONCLUSIONS AS TO WHETHER A CONSUMER, LOOKING AT

14   ANY SAMSUNG PHONE APPLICATION SCREENS, WOULD

15   ASSOCIATE THE SAMSUNG PHONE APPLICATION SCREENS

16   WITH THE USER INTERFACE PORTION OF THE IPHONE

17   REGISTERED TRADE DRESS?

18   A    YES.

19   Q    WHAT CONCLUSION DID YOU DRAW?

20   A    I CONCLUDED THAT THE VISUAL IMPRESSION OVERALL

21   OF THESE 11 SCREENS WAS CONFUSINGLY SIMILAR TO JUST

22   THE SCREEN PORTION, THE DISPLAY SCREEN, HOME

23   SCREEN, IN THE ILLUSTRATION ON THE LEFT.

24   Q    AND FOR WHICH SAMSUNG PHONES DID YOU DRAW THAT

25   CONCLUSION?

1    A    THE FASCINATE, THE DROID CHARGE, THE

2    MESMERIZE, THE EPIC 4G, THE VIBRANT, THE INFUSE 4G,

3    THE GALAXY S SHOWCASE I500, THE CAPTIVATE, THE

4    GALAXY S I9000, THE GALAXY S 4G, AND THE CONTINUUM.

5    Q    OKAY.  NOW, LET'S TURN TO ANOTHER TOPIC YOU

6    SAID THAT YOU DREW SOME CONCLUSIONS ABOUT FOR THIS

7    CASE.

8              I'M SORRY, YOUR HONOR.  IT'S 10:30.  DO

9    YOU WANT TO -- I'M ABOUT TO DO A NEW TOPIC.  DO YOU

10   WANT TO TAKE A BREAK OR SHOULD I KEEP GOING?

11             THE COURT:  THAT'S FINE.  THAT'S FINE.

12   WE CAN TAKE OUR BREAK NOW.  AGAIN, PLEASE KEEP AN

13   OPEN MIND.  DON'T DISCUSS THE CASE WITH ANYONE, AND

14   PLEASE DON'T READ OR RESEARCH THE CASE.

15             ALL RIGHT.  THANK YOU.  YOU CAN LEAVE

16   YOUR JUROR NOTEBOOKS ON YOUR CHAIRS DURING THE

17   BREAK.  WE'LL TAKE A 15-MINUTE BREAK.  THANK YOU.

18             YOU CAN STEP DOWN, BUT PLEASE WAIT UNTIL

19   OUR JURORS LEAVE THE COURTROOM.

20             (WHEREUPON, THE FOLLOWING PROCEEDINGS

21   WERE HELD OUT OF THE PRESENCE OF THE JURY:)

22             THE COURT:  ALL RIGHT.  YOU CAN STEP

23   DOWN.  THANK YOU.  WE'RE ON OUR BREAK NOW .

24             THE COURT:  ACTUALLY, CAN WE GO ON THE

25   RECORD A SECOND?  IN APPLE'S SLIDE, YOU COMPARED

1396

```
 1    HOME SCREENS TO APPLICATION SCREENS, SO I DON'T SEE

 2    WHY YOU'RE OBJECTING TO SAMSUNG ALSO COMPARES HOME

 3    SCREENS TO APPLICATION SCREENS.

 4            YOUR OWN DEMONSTRATIVE HAS THAT

 5    COMPARATIVE.  SO WHY WERE YOU OBJECTING TO THAT?

 6            MS. KREVANS:  I'M SORRY, YOUR HONOR.  MY

 7    HEAD WAS IN THE FOG THERE.

 8            THE COURT:  YOU HAD MADE AN OBJECTION

 9    THAT HOME SCREENS ARE BEING COMPARED TO APPLICATION

10    SCREENS AND THAT WHAT'S CLAIMED IN THE D'305 IS

11    JUST THE APPLICATION SCREEN, ALL RIGHT.

12            BUT THEN YOU MAKE YOUR OWN COMPARISONS OF

13    THE DIFFERENT SCREENS --

14            MS. KREVANS:  MY OBJECTION YESTERDAY,

15    YOUR HONOR, WAS THEY HAD SLIDES WITH THE D'305

16    PATENT ON IT COMPARED TO THE HOME SCREEN.

17            WE'RE NOT ACCUSING THE HOME SCREEN OF

18    INFRINGEMENT OF THE D'305 PATENT.  WE'RE ONLY

19    ACCUSING THE APPLICATION SCREENS.

20            AND THE D'305 PATENT ITSELF DOESN'T SAY

21    ANYTHING ABOUT HOME SCREEN, APPLICATION SCREEN,

22    ANYTHING LIKE THAT IN ITS CLAIM.  IT JUST SAYS A

23    DISPLAY SCREEN, GRAPHICAL INTERFACE DISPLAY SCREEN.

24    -       WE DON'T HAVE ANY ISSUES ABOUT THAT

25    RELATING TO TRADE DRESS.  MY ISSUE WAS JUST WHERE
```

1    THEY HAD THE PATENT COMPARED TO THE HOME SCREEN

2    BECAUSE IT SUGGESTED THAT WE WERE ACCUSING THE HOME

3    SCREEN WHICH DOESN'T, IN FACT, LOOK LIKE THE

4    PATENT.

5              MR. VERHOEVEN:  YOUR HONOR, IT'S NEVER

6    BEEN SUGGESTED THAT THEY'RE ACCUSING THE HOME

7    SCREEN.  I THINK WE WORKED THIS OUT, THOUGH.  I

8    THINK, YOUR HONOR, AS LONG AS I CLARIFY IT, THAT

9    THEY'RE NOT ACCUSING THE HOME SCREEN, IT'S OKAY FOR

10   US TO SHOW IT AND MOVE ON TO SHOW THAT THEY HAVE

11   THE HOME SCREENS AND THE APPLICATION SCREENS.

12             THAT'S FINE FOR US, YOUR HONOR.

13             MS. KREVANS:  I THINK YOUR HONOR'S RULING

14   WAS THEY SHOULD USE THE ACTUAL PHONES.

15             THE COURT:  YEAH.  IS EVERYONE SET ON

16   THAT?

17             MR. VERHOEVEN:  WELL, NO, YOUR HONOR.

18             THE COURT:  OR DO YOU WANT TO JUST DO THE

19   SCREEN-TO-SCREEN SHOTS?

20             MR. VERHOEVEN:  WELL, YES.  YOUR HONOR,

21   YOU MAY RECALL THIS MORNING BEFORE WE STARTED OUT,

22   I POINTED OUT THEY HAVE SCREEN-TO-SCREEN SHOTS, AND

23   I SAID AS LONG AS WE'RE ABLE TO DO SCREEN-TO-SCREEN

24   SHOTS AS WELL, WE HAVE NO OBJECTION.

25             SO WE WOULD INTEND TO JUST DO

```
 1    SCREEN-TO-SCREEN SHOTS, PROBABLY MOSTLY ON THE

 2    SLIDE THEY ALREADY HAVE.

 3              THE COURT:  THAT'S FINE.

 4              MS. KREVANS:  YOUR HONOR, IF HE WANTS TO

 5    SHOW THE D'305 PATENT COMPARED TO A HOME SCREEN, I

 6    THINK HE WOULD HAVE TO SAY THEY'RE NOT ACCUSING

 7    THIS HOME SCREEN.

 8              MR. VERHOEVEN:  I WILL SAY THAT.

 9              THE COURT:  THAT'S FINE.  ALL RIGHT.

10              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

11              THE COURT:  ALL RIGHT.  HAS YOUR,

12    MR. VERHOEVEN, IS YOUR LIVE NOTE WORKING NOW, OR

13    NOT?

14              THE COURT:  MINE IS NOT EITHER.

15              (WHEREUPON, A RECESS WAS TAKEN.)

16              (WHEREUPON, THE FOLLOWING PROCEEDINGS

17    WERE HELD IN THE PRESENCE OF THE JURY:)

18              MS. KREVANS:  YOUR HONOR, WHILE WE'RE

19    WAITING, THIS IS PX 21 TO RESPOND TO THE OBJECTION.

20              THE COURT:  OH, OKAY, PLEASE.

21              THE CLERK:  YOU MAY BE SEATED.

22              THE COURT:  OKAY.  IT'S 10:47.  GO AHEAD,

23    PLEASE.

24              MS. KREVANS:  THANK YOU, YOUR HONOR.  I

25    PROVIDED COUNSEL AN AMENDED 14.21.  I WOULD NOW
```

1399

```
 1    MOVE FOR ITS ADMISSION.

 2              MR. VERHOEVEN:  POINT OF PROCEDURE, YOUR

 3    HONOR.  I DON'T WANT TO HAVE ANY CONFUSION.  IT'S

 4    BEEN ALTERED NOW.  IT HAS THE SAME EXHIBIT NUMBER,

 5    SO PERHAPS WE SHOULD GIVE IT A DIFFERENT NUMBER.

 6              MS. KREVANS:  WE'RE HAPPY TO REPLACE IT,

 7    BUT WE'RE HAPPY TO GIVE IT A DIFFERENT NUMBER.

 8              THE COURT:  DO YOU WANT TO SAY 21-A?

 9              MS. KREVANS:  21-A WOULD BE FINE, YOUR

10    HONOR.

11              MR. VERHOEVEN:  THAT'S FINE, YOUR HONOR.

12              THE COURT:  OKAY.  SO THIS IS IN LIEU

13    OF -- IN LIEU OF ORIGINALLY OFFERED PX 21.

14              THE COURT:  OKAY.

15              MR. VERHOEVEN:  AND FOR THE RECORD, WE

16    OBJECT TO THIS DEMONSTRATIVE, AGAIN, BUT YOUR HONOR

17    OVERRULED THAT.  WE HAVE NO FURTHER OBJECTIONS.

18              MS. KREVANS:  THE DEMONSTRATIVE WAS

19    PREVIOUSLY OVERRULED, YOUR HONOR.

20              THE COURT:  GO AHEAD.

21              MS. KREVANS:  OKAY.

22    Q    TURNING TO A NEW TOPIC WITH YOU, DR. KARE.

23    ALTERNATIVE DESIGNS.

24              DID YOU DO ANY ANALYSIS AS TO WHETHER OR

25    NOT THERE ARE ALTERNATIVE DESIGNS, THAT IS, DESIGNS
```

1    THAT ARE NOT THE SAME DESIGN AS THE D'305 PATENT

2    AND THE IPHONE HOME SCREENS, THAT COULD BE USED FOR

3    APPLICATION SCREENS IN ELECTRONIC DEVICES?

4    A    YES.

5    Q    WHAT WAS YOUR CONCLUSION?

6    A    WELL, IN GENERAL, WHEN ASKED ABOUT THIS, I

7    THINK, OF COURSE, THERE'S ALTERNATIVE DESIGNS.

8            AND I SAY THIS BECAUSE THIS IS WHAT I DO

9    ALL THE TIME IS COME UP WITH A VARIETY OF IDEAS TO

10   SOLVE A PARTICULAR SCREEN DESIGN PROBLEM.  IT'S NOT

11   AN EXACT SCIENCE.  YOU -- IT'S WHAT MAKES IT FUN TO

12   JUST THINK ABOUT A PROBLEM AND TRY TO SOLVE IT IN A

13   NEW AND BETTER WAY.

14           SO I DID LOOK FOR BETTER ALTERNATIVES,

15   BUT I THOUGHT, WELL, THIS WOULDN'T BE ANY DIFFERENT

16   THAN ANY OTHER, THAN ANY OTHER DESIGN, GRAPHIC

17   DESIGN PROBLEM OF, YOU KNOW, YOU WORK WITH THE

18   CLIENT, YOU FIND OUT WHAT THE GOAL IS AND THE

19   TECHNICAL INPUT IS AND THE MARKETING OBJECTIVES AND

20   THEN YOU JUST, YOU'RE ONLY LIMITED BY YOUR

21   IMAGINATION AND YOUR ABILITY TO THINK ABOUT HOW TO

22   DO IT.  AND HOW TO DO IT IN A WAY -- YOU KNOW, I

23   USUALLY THINK HOW TO DO IT BETTER THAN IT'S BEEN

24   DONE BEFORE.

25           SO I -- BUT I -- YES, I FOUND SOME

```
 1    ALTERNATIVES THAT I THOUGHT WOULD BE VALID.

 2    Q    OKAY.  DID YOU BRING US SOME EXAMPLES OF SOME

 3    ALTERNATIVE DESIGNS THAT YOU FOUND?

 4    A    YES.

 5    Q    OKAY.  COULD WE LOOK AT PX 22, WHICH IS IN

 6    YOUR BINDER IN FRONT OF YOU, DR. KARE.

 7              WHAT IS PX 22?

 8    A    IT'S A PHOTO OF TWO SCREENS FROM THE

 9    BLACKBERRY TORCH 9850.

10    Q    IS THIS BLACKBERRY TORCH, IS THAT A DEVICE

11    THAT'S ACTUALLY SOLD?

12    A    WELL, I SAW ONE, SO I ASSUME SO.

13    Q    OKAY.  WHAT -- ARE THERE ANY OTHER DEVICES

14    PICTURED IN PX 22?

15    A    NO.

16    Q    OKAY.  CAN YOU LOOK AT THE SECOND PAGE?

17    A    YES.  SO SORRY.

18              THESE ARE TWO SCREENS FROM THE NOKIA N9.

19              MR. VERHOEVEN:  YOUR HONOR, I BELIEVE

20    WE'RE GOING TO OBJECT TO THIS TESTIMONY.  YOU CAN

21    SEE IT ON YOUR SCREEN, BUT NOT ON THE BIG SCREEN.

22    THIS PARTICULAR ALTERNATIVE DESIGN IS NOT DISCLOSED

23    IN TRADE DRESS RESPONSES TO INTERROG 71 AND 72,

24    CONTENTION INTERROGATORIES CONCERNING TRADE DRESS.

25              THE COURT:  THE WHOLE EXHIBIT, OR JUST
```

1    THE --

2              MR. VERHOEVEN:  WELL, THIS EXHIBIT IS

3    OBJECTIONABLE AND HASN'T BEEN OFFERED YET BECAUSE

4    OF THE OTHER REASONS WE'VE BEEN TALKING ABOUT.

5              BUT THE SUBJECT THAT THE WITNESS IS

6    TESTIFYING ABOUT, THE NOKIA N9, WAS NOT DISCLOSED.

7              MS. KREVANS:  THE FIRST PHONE THAT SHE

8    DISCUSSED WAS IN THE ROG RESPONSE, THE SECOND WAS

9    NOT.  BOTH ARE IN THE ROG REPORT.

10              MR. VERHOEVEN:  WE DIDN'T OBJECT TO THE

11    FIRST ONE, YOUR HONOR.

12              THE COURT:  ALL RIGHT.  WHY DON'T YOU

13    POINT OUT WHAT PAGE AND LINE NUMBER, PLEASE.

14              MS. KREVANS:  IN THE ROG RESPONSE?  IT

15    IS --

16              THE COURT:  IN THE EXPERT REPORT.

17              MS. KREVANS:  OH.  IN THE EXPERT REPORT,

18    IT IS --

19              MR. VERHOEVEN:  YOUR HONOR, WE DON'T NEED

20    TO DO THAT.  I'M NOT DISPUTING IT'S IN THE EXPERT

21    REPORT.

22              THE COURT:  OKAY.  I SEE NOKIA N9.

23              MR. VERHOEVEN:  THE OBJECTION IS IT'S NOT

24    IN RESPONSE TO CONTENTION INTERROGATORIES 71 AND

25    72.

1           MS. KREVANS:  THIS PARTICULAR DESIGN IS

2    NOT IN THE INTERROGATORY RESPONSE, THAT'S CORRECT.

3           YOUR HONOR, WE SAID THERE WERE MANY

4    EXAMPLES.  WE GAVE SOME, BUT WE SAID THERE WERE

5    MANY.  BUT IT WAS CERTAINLY IN THE EXPERT REPORT.

6           THE COURT:  IT'S EXCLUDED.  GO ON TO YOUR

7    NEXT EXHIBIT.

8    BY MS. KREVANS:

9    Q    COULD WE LOOK AT EXHIBIT PX --

10           (PAUSE IN PROCEEDINGS.)

11           MS. KREVANS:  CAN WE LOOK AT PX 158

12    PLEASE.  AND, AGAIN, JUST ON OUR SCREEN, THOMAS.

13           THIS IS THE FIRST -- THIS EXHIBIT IS THE

14    SAME AS THE FIRST PAGE TO WHICH MR. VERHOEVEN SAID

15    HE DID NOT OBJECT.  WE OFFER IT INTO EVIDENCE.

16           MR. VERHOEVEN:  WE OBJECT TO THIS SLIDE,

17    YOUR HONOR.  I DIDN'T OBJECT TO THE SUBJECT MATTER

18    ON THE OTHER SLIDE.  I OBJECT TO THIS SLIDE BECAUSE

19    IT DEPICTS THE -- IT'S NOT THE SCREEN-TO-SCREEN

20    SHOTS WE TALKED ABOUT.

21           MS. KREVANS:  WE WILL MAKE A REPLACEMENT

22    IN WHICH WE TAKE OUT THE PHONE AND SHOW ONLY THE

23    SCREEN AND WE'LL CALL IT 158-A.

24           THE COURT:  THAT'S FINE.

25           MS. KREVANS:  THEN, YOUR HONOR, WE'LL

```
 1    MOVE THE ADMISSION OF 158-A, AND WE'LL PROVIDE IT

 2    TO THE COURT AND COUNSEL.

 3              THE COURT:  NO, I NEED TO SEE IT FIRST.

 4    I'M NOT GOING TO ADMIT IT BEFORE I'VE SEEN IT AND

 5    MR. VERHOEVEN HAS SEEN IT.

 6              MS. KREVANS:  OKAY.  CAN WE LOOK AT.

 7              CAN WE LOOK AT EXHIBIT 160, PLEASE,

 8    THOMAS.

 9    Q    WHAT IS EXHIBIT 160, DR. KARE?

10              MR. VERHOEVEN:  OBJECTION, NOT DISCLOSED

11    IN RESPONSE TO CONFIDENTIAL INTERROGATORIES 71 AND

12    72.

13              MS. KREVANS:  OKAY.  WE'LL WITHDRAW THAT.

14              THE COURT:  OKAY.

15    BY MS. KREVANS:

16    Q    COULD YOU LOOK AT SLIDE 14.30.  WHAT IS SHOWN

17    ON SLIDE 14.30, DR. KARE?

18    A    IT'S THE, A SCREEN SHOT OF THE IPHONE HOME

19    SCREEN AND A BLACKBERRY TORCH SCREEN.

20    Q    AND COULD YOU, FOR THE JURY, COMPARE THESE TWO

21    DESIGNS?

22    A    I JUST WANTED TO SHOW THAT YOU COULD -- I

23    LOOKED FOR SCREENS THAT HAD ABOUT THE SAME NUMBER

24    OF THINGS ON THEM, THAT PERFORMED APPROXIMATELY THE

25    SAME FUNCTIONALITY, AND JUST SHOW THAT BY -- THAT
```

1405

```
 1    YOU COULD DO A DESIGN THAT DOESN'T LOOK CONFUSINGLY

 2    SIMILAR OR THAT PROVIDES AN ALTERNATIVE THAT'S

 3    DIFFERENT.

 4             AND IN THIS SCREEN, YOU CAN SEE THAT JUST

 5    BY HAVING THE BATCH OF ICONS NOT ON A CONSISTENT

 6    SHAPE, IT JUST -- IT LOOKS DIFFERENT.  YOU SEE MORE

 7    BACKGROUND.

 8             THERE'S ALSO A BIG RED AREA, IT LOOKS RED

 9    IN THE SLIDE, BUT IT'S KIND OF A DEEP CRIMSON COLOR

10    WITH A BLUE BAND UNDERNEATH THAT.

11             IT JUST GIVES A DIFFERENT OVERALL

12    IMPRESSION.

13    Q   NOW, YOU MENTIONED THAT THERE WAS A FOURTH

14    TOPIC THAT YOU WERE ASKED TO STUDY, AND THAT WAS

15    WHETHER THERE WERE THINGS THAT SUGGESTED TO YOU

16    THAT SAMSUNG MAY HAVE COPIED THE IPHONE HOME SCREEN

17    GRAPHICS.

18             WHAT DID YOU DO TO LOOK AT THAT TOPIC?

19    A   I -- THERE WERE TWO, TWO PHASES TO THIS.

20             THE FIRST IS I WENT BACK AND I LOOKED AT

21    IMAGES OF EVERY SCREEN I LOOKED AT AND I THOUGHT

22    ABOUT HOW MANY SIMILARITIES RECURRED OVER AND OVER

23    AS A PATTERN THAT SEEMED TO ME THAT ALL THESE

24    SIMILARITIES FROM PHONE TO PHONE WAS BEYOND

25    COINCIDENTAL .
```

```
 1            AND JUST -- YOU WOULDN'T BE LIKELY TO

 2   HAVE SO MANY THINGS BE THE SAME IF ONE THING WERE

 3   DEVELOPED WITHOUT USING THE OTHER AS A GUIDE.

 4            SO IT SEEMED LIKELY TO ME THAT SAMSUNG

 5   USED THE IPHONE SCREEN GRAPHICS AS A GUIDE.

 6   Q    AND YOU MENTIONED THERE WERE TWO PHASES.  WHAT

 7   WAS THE OTHER PHASE?

 8   A    THE OTHER PHASE WAS A DOCUMENT I WAS SHOWN.

 9   Q    OKAY.  COULD YOU LOOK AT EXHIBIT PX 44 IN YOUR

10   BINDER.

11            WHAT IS EXHIBIT PX 44, JUST GENERALLY?

12   A    IT'S A SAMSUNG DOCUMENT I WAS SHOWN BY APPLE

13   COUNSEL.

14   Q    OKAY.  DID YOU CONSIDER THIS DOCUMENT IN

15   FORMING YOUR OPINIONS?

16   A    I, AS I SAID, FROM MY OWN -- BASED ON MY OWN

17   EXPERIENCE, BASED ON MY OWN ANALYSIS, I THOUGHT

18   THERE WAS A LIKELIHOOD THAT THE IPHONE COULD HAVE

19   BEEN USED AS A GUIDE FOR THE GRAPHICS IN THE

20   SAMSUNG PHONES I SAW.

21            BUT THERE WAS INFORMATION IN THIS

22   DOCUMENT THAT SUPPORTED MY OWN OPINION.

23   Q    OKAY.  COULD YOU LOOK SPECIFICALLY AT THE

24   FIRST PAGE, AND THEN PAGE 43, 51, 122, 127, AND 131

25   OF PX 44.
```

```
 1            ARE THOSE ALL PAGES OF THIS DOCUMENT THAT

 2    YOU CONSIDERED IN FORMING YOUR OPINIONS?

 3    A    YES.

 4            MS. KREVANS:  YOUR HONOR, WE WOULD --

 5    THERE ARE SOME PAGES FROM THIS DOCUMENT THAT ARE

 6    ALREADY IN HE HAVE.  ADDITIONALLY, WE WOULD MOVE

 7    THE COVER PAGE, WHICH I THINK HAS NOT BEEN MOVED IN

 8    YET, AND PAGES 43, 51, 122, 127, AND 131.

 9            MR. VERHOEVEN:  I'M GOING TO HAVE TO

10    WRITE THIS DOWN AND LOOK AT EACH OF THE PAGES.

11    SORRY, YOUR HONOR.  WE'RE GOING TO HAVE TO WRITE

12    THIS DOWN AND LOOK AT EACH OF THE PAGES.

13            I CAN TELL YOU RIGHT NOW THAT SEVERAL OF

14    THOSE PAGES ARE NOT ADDRESSED AT ALL IN HER REPORT.

15            MS. KREVANS:  YOUR HONOR, I'M ON THE

16    CLOCK, AND I OBJECT TO SLOWDOWN TACTICS.  THESE

17    PAGES ARE ALL EXPRESSLY DISCLOSED IN OUR REPORT BY

18    BATES NUMBER.  THE ONLY BATES NUMBER THAT'S NOT IS

19    THE COVER AND THE COVER IS OBVIOUS.

20            MR. VERHOEVEN:  THEN WE OBJECT, YOUR

21    HONOR.

22            THE COURT:  ON WHAT BASIS?

23            MR. VERHOEVEN:  THOSE PAGES ARE NOT IN

24    EVIDENCE.  THERE'S NO FOUNDATION LAID FOR THOSE

25    PAGES, YOUR HONOR.  AND IT'S INAPPROPRIATE TO TRY
```

1    TO GET IN PAGES FOR WHICH THERE'S NO FOUNDATION

2    THROUGH AN EXPERT WITNESS.

3              MS. KREVANS:  YOUR HONOR, THE WITNESS HAS

4    JUST LAID A FOUNDATION FOR HOW THESE ARE RELEVANT

5    TO HER REPORT.  THE DOCUMENTS HAVE PREVIOUSLY BEEN

6    ADMITTED IN PART BECAUSE IT IS A SAMSUNG ADMISSION.

7    THERE'S NO QUESTION AS TO AUTHENTICITY.

8              ACTUALLY, NOW THAT I LOOK AT THE REPORT,

9    I SEE SHE DOES REFERENCE THE TITLE PAGE.

10             THE COURT:  122 AND 131 WERE ADMITTED

11   WITH MR. DENISON BACK ON AUGUST 3RD, SO THOSE ARE

12   IN.

13             SO THE ONLY QUESTION IS 43, 51, AND 127.

14             MS. KREVANS:  AND THE COVER AS WELL, YOUR

15   HONOR, AND THESE ARE EXPLICITLY DISCUSSED IN THE

16   REPORT AND THE DOCUMENT WAS IDENTIFIED IN

17   INTERROGATORY RESPONSES.

18             MR. VERHOEVEN:  NO FOUNDATION HAS BEEN

19   LAID FOR ANY OF THESE PAGES, AND SO WE OBJECT ON

20   THAT GROUND.  IT'S NOT APPROPRIATE TO PUT IN --

21             THE COURT:  YOU'VE MADE YOUR OBJECTION.

22             MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

23             THE COURT:  122 AND 131 WERE ALREADY

24   ADMITTED THROUGH MR. DENISON, BUT THE REST YOU NEED

25   TO LAY A FOUNDATION.

```
 1                  MS. KREVANS:  OKAY.

 2      Q    DID YOU LOOK AT THE FRONT COVER AND PAGES 43,

 3      51, AND 127 IN FORMING YOUR OPINIONS, DR. KARE?

 4      A    YES.

 5      Q    HOW DID THOSE PAGES AND THE CONTENT OF THEM

 6      RELATE TO THE OPINIONS THAT YOU FORMED?

 7      A    I'M TALKING ABOUT WHETHER THERE WAS EVIDENCE

 8      THAT SAMSUNG MAY HAVE USED APPLE GRAPHICS FROM THE

 9      IPHONE AS A GUIDE, AND ALL THESE PAGES IN THIS

10      RELATIVE EVALUATION REPORT ON THE S 1 AND THE

11      IPHONE SHOW A PICTURE OF THE IPHONE HOME SCREEN ON

12      THE LEFT AND A PICTURE --

13                  MR. VERHOEVEN:  YOUR HONOR, I'M GOING TO

14      OBJECT AT THIS POINT --

15                  THE WITNESS:  OF SAMSUNG.

16                  MR. VERHOEVEN:  THERE'S NO FOUNDATION

17      LAID FOR THIS DOCUMENT AND NOW THE WITNESS IS

18      DESCRIBING A DOCUMENT THAT'S NOT IN EVIDENCE FOR

19      WHICH NO FOUNDATION WAS LAID.  IT'S INAPPROPRIATE

20      TO PUT IN --

21                  THE COURT:  ALL RIGHT.  THANK YOU.  PAGE

22      122, 58, AND 131 ARE ALREADY IN EVIDENCE.

23                  MR. VERHOEVEN:  I'M JUST REFERRING TO THE

24      THREE THAT SHE ASKED ABOUT, 43, 51, AND 127 IN THE

25      SUBSTANTIVE QUESTION, YOUR HONOR.
```

```
1              MS. KREVANS:  AND, YOUR HONOR, IT'S AN

2     ADMISSION.  IT'S A SAMSUNG DOCUMENT.  THE WITNESS

3     REVIEWED THE DOCUMENT, AND THERE IS NO REASON WHY

4     IT IS IMPROPER FOR HER TO TESTIFY ABOUT WHAT THE

5     DOCUMENT SHOWS.

6              THE COURT:  AS AN EXPERT?

7              MS. KREVANS:  AS AN EXPERT.

8              THE COURT:  GO AHEAD.

9              MS. KREVANS:  THANK YOU.

10    Q    OKAY.  COULD YOU -- SO, YOUR HONOR, I THINK

11    WHAT WE NOW HAVE IN IS, JUST FOR THE RECORD, THE

12    COVER AND PAGES, IN TOTAL, 43, 51, 122, 127, AND

13    131.

14              THE COURT:  NO.  I DIDN'T SAY THAT THEY

15    WERE ADMITTED.  AND I'M NOT GOING TO LET YOU

16    PUBLISH THEM TO THE JURY UNLESS IT'S ADMITTED.  IF

17    YOU WANT TO SHOW THEM, PAGES 58, 122, AND 131, YOU

18    CAN.

19    BY MS. KREVANS:

20    Q    DR. KARE, DID THE CONTENTS OF EXHIBIT 44

21    CONFIRM IN ANY WAY -- STRIKE THAT.

22              CAN YOU TELL US WHETHER -- WHAT

23    CONCLUSIONS YOU DREW FROM THE CONTENTS OF EXHIBIT

24    44, BUT REFERENCE, PLEASE, IN YOUR TESTIMONY IF YOU

25    TALK SPECIFICALLY, ONLY THE CONTENTS OF PAGES 122
```

1    AND 131.

2    A    I'M SORRY.  CAN I EXPLAIN WHAT WAS ON ANOTHER

3    PAGE AND HOW IT AFFECTED ME WITHOUT SHOWING IT?

4              MS. KREVANS:  YOUR HONOR, I THINK THIS

5    WOULD BE --

6              THE COURT:  I'M GOING TO ALLOW THAT.  GO

7    AHEAD.

8              THE WITNESS:  CAN I READ FROM IT AND

9    DESCRIBE THE ILLUSTRATION?

10             MR. VERHOEVEN:  WE WOULD OBJECT TO THAT,

11   YOUR HONOR.

12             THE COURT:  WHY DON'T YOU JUST DESCRIBE

13   THE ILLUSTRATION.

14   BY MS. KREVANS:

15   Q    WHY DON'T YOU JUST DESCRIBE IT, DR. KARE?

16   A    OKAY.  I SAW, ON A SERIES OF PAGES, WHERE

17   THE -- AT THE TOP OF THE PAGE, IT TALKS ABOUT SOME

18   ASPECT OF ICON DESIGN, AND THEN ON THE LEFT,

19   THERE'S A PICTURE OF THE IPHONE HOME SCREEN, ON THE

20   RIGHT THERE'S A PICTURE OF THE GT I9000, SAME SIZE,

21   SIDE BY SIDE, AND THEN THERE'S BULLET POINTS BESIDE

22   EACH ONE.

23             AND, TYPICALLY, IN ONE OF THESE SCREENS,

24   IT TALKS ABOUT THAT THERE'S CONFUSION ABOUT THE

25   SIMILARITY OF ICONS ON THE SAMSUNG SCREEN.

```
 1              AND THEN THE DOCUMENT TALKS ABOUT HOW

 2     APPLE DOES IT BETTER, HOW THEY DIFFERENTIATE, A

 3     LITTLE BIT ABOUT THE ICON STYLE.

 4              AND THEN AT THE BOTTOM OF EVERY ONE OF

 5     THESE PAGES, THERE'S A PINK BOX AND IT SAYS,

 6     "DIRECTIONS FOR IMPROVEMENT," AND THEN IT SUGGESTS

 7     WHAT SAMSUNG DESIGNERS OUGHT TO DO TO MAKE THEIR

 8     PHONE BETTER, CHANGES OR, YOU KNOW, NOTE THIS AND

 9     TRY TO DO THIS.

10              AND THERE ARE RED RINGS AROUND PARTICULAR

11     ICONS ON THE APPLE SCREEN AND ON THE SAMSUNG

12     SCREEN, AND I CAN SEE HOW, BY LOOKING AT WHAT

13     ULTIMATELY HAPPENED, HOW CONCRETE ASPECTS OF THE

14     APPLE ICONS AFFECTED WHAT ULTIMATELY WERE IN THE

15     PHONES THAT I LOOKED AT.

16              SO IT DID HAVE -- IT'S HARD TO -- NOT TO

17     SEE FROM WHAT WAS SHOWN TO ME AS AN INTERNAL

18     SAMSUNG DESIGN DOCUMENT, HOW -- WHAT HAPPENED.

19              MS. KREVANS:  NOTHING FURTHER, YOUR

20     HONOR.

21              MR. VERHOEVEN:  I'M GOING TO OBJECT AND

22     MOVE TO STRIKE THAT LAST ANSWER.

23              THE COURT:  OVERRULED.  OVERRULED.

24              NOW, THE TIME IS 11:06.  GO AHEAD WITH

25     YOUR CROSS, PLEASE.
```

```
 1              THE COURT:  ARE THESE NEW KARE CROSS --
 2    WHY AM I GETTING NEW CROSS-EXHIBITS RIGHT NOW?  ARE
 3    THESE DIFFERENT THAN THE ONES I GOT YESTERDAY?  ARE
 4    THESE DIFFERENT THAN THE ONES I GOT YESTERDAY?
 5              MR. VERHOEVEN:  THE DEMONSTRATIVES WERE
 6    UPDATED TO ADDRESS THE CONCERNS THAT WERE MADE
 7    ABOUT SCREEN-TO-SCREEN SHOTS.
 8              THE COURT:  OKAY.  BUT WHY DIDN'T YOU
 9    JUST GIVE ME THAT NEW EXHIBIT?  ALL RIGHT.
10              MS. KREVANS:  YOUR HONOR, WE HAVE NOT
11    BEEN PROVIDED WITH ANY NEW UPDATED DEMONSTRATIVES.
12              IF THEY'RE NEW DEMONSTRATIVES THAT WERE
13    CREATED LAST NIGHT, YOUR HONOR, WE HAVEN'T SEEN
14    THEM.
15              (PAUSE IN PROCEEDINGS.)
16              THE COURT:  ALL RIGHT.  WELL, THIS IS --
17    THIS IS COUNTING TO THE TRIAL TIME.  IN THE FUTURE,
18    WE NEED THIS DONE IN ADVANCE.
19              IT'S 11:08.
20              (PAUSE IN PROCEEDINGS.)
21              MR. VERHOEVEN:  MAY I PROCEED, YOUR
22    HONOR?
23              THE COURT:  PLEASE.
24                      CROSS-EXAMINATION
25    BY MR. VERHOEVEN:
```

1    THE PHONES AND THE EXHIBIT LABELS WERE -- COVERS

2    THE BACKS OF THE PHONES AND IN SOME CASES COVERING

3    BRANDING ON THE BACKS OF THE PHONES.

4              SO WE SPOKE WITH COUNSEL FOR APPLE AND

5    THEY AGREED THAT WE COULD REMOVE THE STICKERS FROM

6    THE BACKS OF THE PHONES AND THAT AN ALTERNATIVE

7    LABEL WOULD BE PUT IN PLACE.

8              MS. KREVANS:  SO IS THIS THE SAME ONE

9    THAT USED TO HAVE THE EXHIBIT STICKER IS MY

10   QUESTION.

11             MS. ABRAMOWITZ:  YES.  YOU CAN SEE THE

12   GUMMY RESIDUE FROM WHERE THE EXHIBIT LABEL WAS.

13             MS. KREVANS:  OKAY.  I THINK THE MYSTERY

14   HAS BEEN RESOLVED YOUR HONOR.  IT DOESN'T HAVE THE

15   COURT'S OFFICIAL LABEL, BUT PEOPLE HERE FROM

16   COUNSEL SAID IT IS.

17             THE COURT:  SO HOW MANY EXHIBITS HAVE THE

18   COURT'S OFFICIAL LABEL BEEN REMOVED?  HOW MANY?

19             MS. ABRAMOWITZ:  YOUR HONOR, WE TOOK THEM

20   OFF OF ALL OF THE DROID EXHIBITS SO THAT WE CAN

21   PHOTOGRAPH THE BACKS OF THE SAMSUNG PHONES.

22             THE COURT:  SO HOW MANY WOULD THAT BE?

23   ALL OF THE JOINT EXHIBITS?  NOT ALL OF THE JOINT

24   EXHIBITS?

25             MS. ABRAMOWITZ:  ALL OF THE SAMSUNG.

1       THE COURT:  THAT'S 175 EXHIBITS.

2           MS. ABRAMOWITZ:  SORRY.  I BELIEVE IT'S

3   JX 1007 THROUGH, I THINK, 31.  I WOULD HAVE TO

4   CONFIRM.

5           THE COURT:  OKAY.

6           MS. ABRAMOWITZ:  BUT COUNSEL FOR APPLE

7   REPRESENTED THAT THEY WOULD LABEL PERHAPS THE SIDE

8   OF THE PHONE.  WE DIDN'T COME TO AN OFFICIAL

9   AGREEMENT ON WHERE THE LABEL WOULD GO.

10          MS. KREVANS:  I THINK, YOUR HONOR, IT

11  SOUNDS LIKE THEY'RE JUST REPLACEMENT LABELS, BUT

12  IT'S STILL THE SAME PHONE, IT JUST DOESN'T HAVE THE

13  EXHIBIT STICKER ON IT.

14          MS. ABRAMOWITZ:  I RECOGNIZE TRYING TO

15  SCRATCH THE GUMMY STUFF OFF THE BACK.

16          THE COURT:  ALL RIGHT.  NEXT TIME

17  ANYTHING IS GOING TO BE DONE WITH ACTUAL EXHIBITS

18  THAT HAVE ALREADY BEEN ADMITTED, COULD YOU ALL JUST

19  FILE A STATEMENT?  JUST FILE ONE SAYING THAT'S

20  HAPPENED.

21          MR. VERHOEVEN:  ABSOLUTELY, YOUR HONOR.

22          THE COURT:  BECAUSE IF ONE SIDE RAISES

23  SOMETHING, THE OTHER SIDE NEEDS TO KNOW.

24          MS. KREVANS:  YES, YOUR HONOR.

25  BY MR. VERHOEVEN:

1    Q    OKAY.  WHERE WERE WE?

2         WE WERE TALKING ABOUT YOU PROVIDED THE

3    TESTIMONY ABOUT HOW A CONSUMER MIGHT MAKE A MISTAKE

4    OR BE CONFUSED ABOUT THESE APPLICATION SCREENS

5    THINKING THAT, ONE, THAT IT'S A SAMSUNG APPLICATION

6    SCREEN AND MIGHT BE AN APPLE PHONE, RIGHT, OR AN

7    APPLE APPLICATION SCREEN.  DO YOU REMEMBER THAT?

8    A    THAT A SAMSUNG APPLICATION SCREEN WOULD LOOK

9    LIKE THE DESIGN OF THE D'305 PATENT.

10   Q    DIDN'T YOU -- DIDN'T I HEAR YOU SAY THAT YOU

11   THOUGHT THAT A CONSUMER WOULD BE CONFUSED AS TO THE

12   SOURCE?

13   A    WHEN WE TALKED ABOUT TRADE DRESS.

14   Q    RIGHT?

15   A    WHEN WE TALKED ABOUT -- EXCUSE ME.  I THOUGHT

16   YOU WERE ASKING ME ABOUT THE D'305.

17   Q    OKAY.  BUT YOU DID TALK ABOUT CONSUMERS

18   BEING -- WHETHER OR NOT CONSUMERS MIGHT BE CONFUSED

19   BY THE SAMSUNG APPLICATION SCREENS.

20        DO YOU REMEMBER THAT?

21   A    YES.

22   Q    OKAY.  AND YOU THOUGHT THAT THERE'S -- THAT

23   THEY MIGHT BE?

24   A    YES.

25   Q    OKAY.  SO LET'S LOOK AT WHAT A CONSUMER WOULD

1    SEE WHEN THEY TURN ON THE PHONE BETWEEN THE TIME

2    THEY HAVE A PHONE LIKE THIS IN THEIR HANDS THAT'S

3    TURNED OFF AND THE TIME THAT THEY ACTUALLY GET TO

4    THE APPLICATION SCREEN.

5              I'LL TRY TO DO THIS, YOUR HONOR, ON THE

6    ELMO.

7              DO WE HAVE A MICROPHONE?

8              THE CLERK:  A MICROPHONE?

9              MR. VERHOEVEN:  YEAH.  I THOUGHT THERE

10   WAS A LITTLE HAND MIKE.  THERE WE GO.

11             DOES THIS WORK?

12             I'M GOING TO PUT THIS CLOSE TO THE PHONE

13   SO THAT -- OKAY.

14   Q    SO NOW I'M THE CONSUMER, AND I'M TURNING ON

15   THE PHONE.  WHAT DOES THE CONSUMER SEE?

16   A    THE START-UP SCREEN WITH THE --

17   Q    WHAT DOES IT SAY?

18   A    IT SAYS, "SAMSUNG."

19   Q    STILL SAYS SAMSUNG.

20             WHAT'S DROID?  IS THAT SHORT FOR ANDROID?

21   A    I DON'T KNOW I KNOW IT'S THIS, THE DROID PHONE

22   HAS THE CHIN.

23   Q    AND NOW WHAT IS THE CONSUMER LOOKING AT NOW?

24   A    THE UNLOCK SCREEN.

25   Q    SO THE CONSUMER HAS TO DO SOMETHING HERE;

1   RIGHT?

2   A    YES.

3   Q    WHAT DO THEY HAVE TO DO?

4   A    MOVE THE PUZZLE PIECE TO THE RIGHT TO UNLOCK

5   IT.

6   Q    OKAY.  NOW, WHAT IS THE CONSUMER LOOKING AT?

7   A    THE HOME SCREEN OF THE SAMSUNG PHONE.

8   Q    OKAY.  AND SO WHAT DOES A CONSUMER NEED TO

9   DO -- THIS IS -- THIS SCREEN HERE IS NOT ACCUSED;

10  RIGHT?

11  A    NO.

12  Q    YOU WEREN'T EVEN ASKED TO LOOK AT THIS SCREEN;

13  RIGHT?

14  A    I WOULD SAY -- I WAS NOT ASKED TO CONSIDER

15  THIS SCREEN.

16  Q    OKAY.  SO IT'S JUST THE APPLICATION SCREEN;

17  RIGHT?

18  A    YES.

19  Q    OKAY.  AND REMIND US, WHAT DOES THE USER HAVE

20  TO DO -- WHAT DOES THE CONSUMER HAVE TO DO TO GET

21  TO THE APPLICATION SCREEN?

22  A    TOUCH THE BLUE BUTTON ON THE LOWER RIGHT WITH

23  THE GRID OF SQUARES.

24  Q    OKAY.  SO IT'S ONLY AFTER ALL OF THOSE STEPS

25  THAT A CONSUMER GETS TO THE APPLICATION SCREEN.

1    FAIR?

2    A    YES.

3    Q    NOW, DR. KARE, WOULDN'T YOU AGREE THAT BY THE

4    TIME A CONSUMER GOES THROUGH ALL THOSE STEPS TO GET

5    TO THE APPLICATION SCREEN, THAT CONSUMER KNOWS THAT

6    THIS IS A SAMSUNG PHONE?

7    A    I WAS ONLY ASKED TO CONSIDER THIS APPLICATION

8    SCREEN COMPARED TO THE APPLE HOME SCREEN.

9    Q    I UNDERSTAND THAT.

10   A    BECAUSE --

11   Q    BUT I HAVE A DIFFERENT QUESTION FOR YOU.

12        WOULDN'T YOU AGREE THAT BY THE TIME THAT

13   A CONSUMER TURNS ON THE PHONE AND GOES THROUGH

14   THOSE STEPS WE LOOKED AT, WHERE THEY SEE THE

15   SAMSUNG NAME PROMINENTLY FOR SEVERAL SECONDS, WHERE

16   THEY SEE THE GRAPHIC FOR DROID, WHERE THEY HAVE TO

17   GO PAST THE HOME SCREEN TO THE APPLICATION SCREEN,

18   BY THE TIME THEY GET TO THAT APPLICATION SCREEN,

19   WOULDN'T YOU AGREE THAT A CONSUMER KNOWS THAT

20   THEY'RE USING A SAMSUNG PHONE?

21   A    I'M NOT AN EXPERT IN CONSUMER BEHAVIOR AND

22   THAT KIND OF USER EXPERIENCE.

23        I'M REALLY FOCUSSED ON GRAPHIC U/I.  SO I

24   DON'T KNOW THAT I'M QUALIFIED TO ANSWER THAT.

25   Q    WELL, QUALIFIED OR NOT, WOULD YOU AGREE WITH

1    ME?  A CONSUMER, BY THIS POINT, GOING THROUGH THE

2    START-UP AND ALL OF THAT, SEEING ALL THAT

3    ADVERTISING, THEY KNOW THEY HAVE A SAMSUNG PHONE,

4    DON'T THEY?

5    A    I JUST CAN'T SPEAK TO THAT BECAUSE I DON'T --

6    I DON'T KNOW.

7    Q    YOU'RE NOT QUALIFIED?

8    A    I HAVEN'T STUDIED START-UP EXPERIENCE FROM

9    PHONE TO PHONE.  I -- I COMPLETELY -- I KNOW THAT

10   THIS IS THE APPLICATION SCREEN, NOT THE HOME

11   SCREEN.

12   Q    BY THE TIME THAT THE CONSUMER TURNS ON THE

13   PHONE, SEES THE SAMSUNG NAME PROMINENTLY DISPLAYED,

14   SEES THE DROID ADVERTISEMENT AND ANIMATION,

15   WOULDN'T YOU AGREE THAT NO CONSUMER WOULD BE

16   CONFUSED AS TO WHICH PHONE THEY HAVE BY THAT TIME?

17   A    I CAN'T AGREE BECAUSE I HAVEN'T -- I DON'T --

18   I DON'T KNOW ABOUT CONSUMER BEHAVIOR STARTING -- I

19   DON'T KNOW ABOUT THE QUESTION YOU'RE ASKING ME.

20   THAT'S OUTSIDE MY FOCUS.

21   Q    IT'S OUTSIDE YOUR EXPERTISE?

22   A    YES, AS A GRAPHIC U/I DESIGNER.

23   Q    NOW, THERE WAS ONE SLIDE -- I'LL TURN THIS OFF

24   NOW, YOUR HONOR, IF THAT'S OKAY.

25            THE COURT:  GO AHEAD, PLEASE.

```
1    BY MR. VERHOEVEN:

2    Q    THERE'S ONE SLIDE THAT YOU FOCUSSED ON WITH

3    RESPECT TO YOUR TESTIMONY MORE THAN OTHERS WHEN YOU

4    WERE TESTIFYING ABOUT YOUR OPINIONS WITH RESPECT TO

5    THE DESIGN '305 PATENT, AND THAT WAS PDX 14.7.

6              CAN WE PUT THAT ON THE SCREEN.  THIS IS A

7    SLIDE THAT COUNSEL FOR APPLE SHOWED YOU.  DO YOU

8    REMEMBER THAT?

9    A    YES.

10   Q    AND DO YOU REMEMBER YOU SPENT MOST OF YOUR

11   TIME EXPLAINING THIS SLIDE, AND FOR THE OTHER

12   SLIDES SHE SHOWED YOU, YOU SAID SAME REASONS?

13   A    YES.

14   Q    SO LET'S FOCUS ON THIS SLIDE.

15             NOW, IF WE LOOK AT THE DESIGN '305 PATENT

16   COMPARED TO THE FASCINATE, DO YOU SEE IN THE DESIGN

17   '305 PATENT THE FIRST BOX IN THE UPPER LEFT SAYS

18   SMS?

19   A    YES.

20   Q    WHERE IS THAT ICON IN THE FASCINATE?

21   A    I BELIEVE THAT THE ANALOGOUS ICON IS IN THE

22   BOTTOM ROW ON THE RIGHT, THREE FROM THE LEFT.

23   Q    I HAVE A LASER POINTER, YOUR HONOR.

24             DO YOU MIND IF I HAND THIS TO THE WITNESS

25   SO SHE CAN INDICATE ON THE BIG SCREEN?
```

```
1    A    GO AHEAD, PLEASE.

2    Q    DO YOU KNOW HOW TO USE THESE?

3    A    I'M NOT A LASER POINTER EXPERT, EITHER.

4    Q    JUST PUT THIS BUTTON.  DON'T POINT IT IN

5    ANYBODY'S EYES.

6    A    OKAY.

7    Q    SO THE SMS IS ON THE TOP LEFT, RIGHT, IN THE

8    D'305?

9    A    YES.

10   Q    AND WHERE IS IT IN THE FASCINATE?

11   A    (INDICATING).

12   Q    RIGHT DOWN HERE?

13   A    I BELIEVE THAT THOSE ARE ANALOGOUS.

14   Q    OKAY.  SO IT'S IN A DIFFERENT PLACE; RIGHT?

15   A    YES.

16   Q    IN THE '305, THERE'S A DOCK OR -- WHAT WOULD

17   YOU CALL THIS BOTTOM ROW ON THE '305?

18   A    YOU KNOW, IT DOESN'T REALLY SAY IN THE '305

19   BECAUSE IT'S JUST A DESIGN, ORNAMENTAL DESIGN.  SO

20   I JUST HAVE BEEN CALLING IT AN AREA AT THE BOTTOM,

21   A SEPARATED AREA AT THE BOTTOM, BECAUSE IT

22   DOESN'T -- THE '305 DOESN'T TALK ABOUT

23   FUNCTIONALITY.

24   Q    OKAY.  WELL, IN THE D'305, THE SMS ICON IS NOT

25   IN THE BOTTOM ROW THAT'S SET OFF SEPARATELY; RIGHT?
```

```
1    A    RIGHT.

2    Q    BUT IN THE FASCINATE, IT IS IN THE BOTTOM ROW.

3    IS THAT BOTTOM ROW SET OFF SEPARATELY?

4    A    YES.

5    Q    SO YOU WOULD AGREE THAT'S A DIFFERENCE?

6    A    YES.

7    Q    NOW, YOU TALKED ABOUT ROUNDED RECTANGLES FOR

8    THE IPHONES.  DO YOU REMEMBER THAT?

9    A    YES.

10   Q    AND DO YOU REMEMBER YOU TESTIFIED WITH RESPECT

11   TO ALTERNATIVE DESIGNS THAT, GEE, SAMSUNG COULD

12   HAVE USED SOMETHING BESIDES ROUNDED RECTANGLES,

13   RIGHT?  THEY COULD HAVE PICKED A DIFFERENT SHAPE?

14   A    YES.

15   Q    WELL, THIS ICON SHEER NOT JUST A ROUNDED

16   RECTANGLE.  IT'S GOT A LITTLE -- IT'S ALMOST LIKE A

17   SPEECH BOX THAT YOU SEE IN CARTOONS; RIGHT?

18   A    RIGHT.

19   Q    DO YOU AGREE WITH THAT?

20   A    YES.  I WOULD SAY IT IS A SPEECH BALLOON THAT

21   HAS, HAS ROUNDED RECTANGULAR ELEMENTS, BUT IT'S NOT

22   A SQUARE.

23   Q    IT'S A DIFFERENT SHAPE?  RIGHT?

24   A    IT'S NOT A SQUARE.  IT HAS -- IT HAS STRAIGHT

25   EDGES ON TOP AND BOTTOM, BUT IT'S NOT -- AND
```

1    ROUNDED CORNERS, BUT IT'S NOT A SQUARE.

2    Q    AND THE D'305 PATENT SAYS SMS, BUT THE

3    FASCINATE JUST HAS A HAPPY FACE; RIGHT?

4    A    YES.

5    Q    IS IT YOUR TESTIMONY -- IT'S NOT YOUR

6    TESTIMONY THAT THOSE ARE SUBSTANTIALLY SIMILAR

7    ICONS, IS IT?

8    A    MY TESTIMONY DIDN'T COMPARE SPECIFICALLY

9    THOSE.  THEY HAVE FEATURES IN COMMON AND THEY HAVE

10   DIFFERENCES.

11   Q    DR. KARE, IS IT KARE OR KARE?

12   A    KARE.

13   Q    KARE, THANK YOU.

14          DR. KARE, YOU'RE NOT TESTIFYING TO THIS

15   JURY THAT THIS SMS ICON IS SUBSTANTIALLY SIMILAR TO

16   THIS OTHER ICON THAT SAYS, "MESSAGES," ARE YOU?

17   A    NO.

18   Q    IT'S NOT, IS IT?

19   A    IT HAS SOME SIMILARITIES.  IT USES THE SPEECH

20   BALLOON AS A METAPHOR AND IT HAS, AS I MENTIONED,

21   THE HORIZONTAL AND VERTICAL EDGES THAT ARE STRAIGHT

22   AND IT HAS ROUNDED CORNERS.  THOSE WOULD BE WHAT IT

23   HAS IN COMMON.

24          AND IT OBVIOUSLY HAS DIFFERENCES, LIKE

25   THE FACE AND THE POINT.

1    Q    IT'S NOT SUBSTANTIALLY SIMILAR, IS IT?

2    A    NO.

3    Q    THEN IF YOU LOOK AT THE NEXT ICON, IT SAYS

4    "CALENDAR."  AND YOU SEE IT'S GOT A 6, AND IT'S --

5    IT'S GOT WHITE AND A TOP BORDER THAT'S RED?

6    A    YES.

7    Q    AND I BELIEVE IT'S HARD TO SEE ON THE SCREEN.

8    IT SAYS WEDNESDAY IN THE BORDER?

9    A    MY EYES AREN'T THAT GOOD, BUT YES.

10   Q    OKAY.  WHERE IS THE CALENDAR ICON IN THE

11   FASCINATE?

12   A    (INDICATING).

13   Q    RIGHT THERE?

14   A    YES.

15   Q    OKAY.  SO IT'S NOT THE SECOND ICON, SECOND

16   COLUMN IN THE TOP ROW, RIGHT?

17   A    RIGHT.

18   Q    IT'S IN A DIFFERENT PLACE?

19   A    YES.

20   Q    AND IT'S A COMPLETELY DIFFERENT PICTURE, ISN'T

21   IT?

22   A    YES.

23   Q    THAT CALENDAR ICON IS NOT SUBSTANTIALLY

24   SIMILAR TO THE CALENDAR ICON IN THE D'305; RIGHT?

25   A    NO.

1    Q    YOU AGREE WITH ME?

2    A    YES.

3    Q    IF YOU LOOK AT THIS SECOND ROW HERE, THE LEFT

4    ICON, IT SAYS, "YOUTUBE."  DO YOU SEE THAT?

5    A    YES.

6    Q    YOUTUBE IS A REFERENCE TO WHAT?

7    A    THE D'305 DESIGN DOESN'T INCLUDE, YOU KNOW, A

8    DEFINITION OF EVERYTHING.  I ASSUME IT'S THE

9    YOUTUBE.COM APPLICATION.

10         BUT --

11   Q    AND WHAT COMPANY --

12   A    I DON'T KNOW THAT FROM THE D'305.

13   Q    DO YOU KNOW WHAT COMPANY PROVIDES YOUTUBE?

14   A    I THINK GOOGLE BOUGHT THEM.

15   Q    IT'S A GOOGLE ICON, ISN'T IT?

16   A    I DON'T KNOW.  I DON'T KNOW THE ORIGIN OF THAT

17   ICON.

18   Q    CAN YOU TELL THE JURY, WHERE IS THE YOUTUBE

19   ICON IN THE FASCINATE?

20   A    IN THIS APPLICATION SCREEN, I DON'T THINK

21   THERE IS ONE.

22   Q    IT'S NOT THERE, IS RIGHT?

23   A    CORRECT.

24   Q    THEN THIS NEXT ICON, THE NEXT ROW, SECOND

25   COLUMN, IT SAYS, "STOCKS."  AND IT'S GOT A TICKER

1432

```
1    SYMBOL.  DO YOU SEE THAT?

2    A    YES.

3    Q    WHERE IS THAT IN THE FASCINATE?

4    A    ON THIS APPLICATION SCREEN, THERE ISN'T ONE.

5    Q    IT'S NOT THERE; RIGHT?

6    A    YES.

7    Q    AND THEN THIS NEXT ICON, IT SAYS, "MAPS."

8            DO YOU SEE THAT?

9    A    YES.

10   Q    WHO PROVIDES THE MAP FUNCTIONALITY ON APPLE'S

11   PHONES?

12   A    I DON'T KNOW.

13   Q    YOU DON'T KNOW THAT GOOGLE PROVIDE IT IS?

14   A    I DON'T KNOW.

15   Q    DO YOU KNOW WHETHER OR NOT THIS IS A GOOGLE

16   ICON?

17   A    I DON'T KNOW.

18   Q    WHERE IS THE MAPS ICON ON THE FASCINATE?

19   A    IT -- ON THIS SCREEN, I DON'T SEE ONE.

20   Q    IT'S NOT THERE; RIGHT?

21   A    YES.

22   Q    WHAT ABOUT WEATHER?  SECOND ROW, FOURTH

23   COLUMN, A PICTURE OF THE SUN AND 73 DEGREES.

24            WHERE IS THAT IN THE FASCINATE?

25   A    I DON'T SEE IT ON THIS SCREEN.
```

1433

```
1     Q     IF WE GO TO THE FOURTH ROW, SECOND COLUMN, DO

2     YOU SEE THAT ICON FOR CALCULATOR?

3     A     YES.

4     Q     WHERE IS THE CALCULATOR ICON IN THE FASCINATE?

5     A     IN THE SECOND ROW.

6     Q     RIGHT THERE?  SO IT'S IN A DIFFERENT ROW;

7     RIGHT?

8     A     YES.

9     Q     AND IF WE LOOK AT THE CALCULATOR ICON ON THE

10    D'305, IT'S GOT A GRAY BACKGROUND, GRAY-WHITE-ISH

11    BACKGROUND; RIGHT?

12    A     YES.

13    Q     AND IT'S GOT THREE CIRCLES, FOUR CIRCLES,

14    RIGHT?

15    A     YES.

16    Q     PLUS NOTICE EACH OF THE FOUR CIRCLES

17    RESPECTIVELY ARE THE PLUS, THE MINUS, THE TIMES,

18    AND THE DIVISION SYMBOLS; RIGHT?

19    A     YES.

20    Q     NOW, IF YOU LOOK AT THE CALCULATOR IN THE

21    FASCINATE, IT DOESN'T HAVE A WHITE-GRAY BACKGROUND,

22    DOES IT?

23    A     NO.

24    Q     IT HAS A YELLOW ORANGE BACKGROUND; RIGHT?

25    A     YES.
```

1    Q    AND IT DOESN'T JUST HAVE FOUR CIRCLES, DOES

2    IT?

3    A    NO.

4    Q    IT HAS A PICTURE OF AN ENTIRE CALCULATOR;

5    RIGHT?

6    A    YES.

7    Q    DR. KARE, YOU WOULD AGREE WITH ME THAT THE

8    CALCULATOR ICON IN THE FASCINATE IS NOT

9    SUBSTANTIALLY SIMILAR TO THE CALCULATOR ICON IN THE

10   D'305?

11   A    YES.

12   Q    AND THE NEXT ICON ON THE FOURTH ROW, THIRD

13   COLUMN, NOTES, WHERE IS THAT FOUND IN THE

14   FASCINATE?

15   A    IT'S NOT ON THIS SCREEN.

16   Q    IT'S NOT THERE?

17   A    NO.

18   Q    WHAT ABOUT THE LAST ICON THAT SAYS SETTINGS?

19   IT'S THE FOURTH COLUMN, FOURTH ROW, BOTTOM RIGHT.

20   WHERE IS THAT FOUND IN THE FASCINATE?

21   A    IT'S NOT IN THIS SCREEN.

22   Q    WELL, THERE'S A GEAR UP HERE.  DO YOU SEE

23   THAT?

24   A    I SEE THAT.

25   Q    DO YOU KNOW IF THAT'S AN ICON?

1435

1    A    I KNOW THAT THAT'S A STATUS BAR, BUT I DIDN'T

2    KNOW -- I GUESS THAT COULD BE A SETTINGS ICON.

3    Q    IT COULD BE.

4         YOU WOULD AGREE WITH ME THAT THAT GEAR IN

5    THE TOP-LEFT QUADRANT OF THE FASCINATE DEPICTED ON

6    PDX 14.7 IS NOT SUBSTANTIALLY SIMILAR TO THE

7    SETTINGS ICON IN THE D'305 PATENT?

8    A    NO.

9    Q    YOU WOULD AGREE WITH ME?

10   A    YES.

11   Q    OKAY.  FOR THE RECORD, THEN, YOU AGREE --

12   BECAUSE YOU SAID NO AND YES, I JUST WANT TO MAKE

13   SURE --

14   A    WELL, IT'S THE SAME METAPHOR, SO I HADN'T

15   REALLY THOUGHT ABOUT THAT BEFORE.  AND IT'S GOT A

16   BIT OF A SIMILAR FORM FACTOR, DIFFERENT SIZE.  SO

17   IT'S NOT 100 PERCENT DIFFERENT, BUT --

18   Q    IS IT YOUR TESTIMONY THAT THAT TINY LITTLE

19   GEAR IS SUBSTANTIALLY SIMILAR TO THIS LARGER ICON

20   THAT'S GOT A RECTANGLE WITH A BORDER AROUND IT,

21   THREE GEARS, AND SHADING?

22   A    NO.

23   Q    IT'S NOT SUBSTANTIALLY SIMILAR, IS IT?

24   A    NO.

25   Q    YOU DID TESTIFY ABOUT A COUPLE OF THESE ICONS

1    THAT YOU WANTED TO POINT THE JURY TO.

2              ONE WAS THE PHONE ICON ON THE BOTTOM

3    LEFT, OR LET'S CALL IT THE BOTTOM -- WELL, FOR THE

4    RECORD, WHY DON'T YOU USE YOUR WORDS.  HOW WOULD

5    YOU DESCRIBE THIS, THIS GRAY AREA WITH THE FOUR

6    ICONS IN THE VERY BOTTOM OF THE D'305?

7    A    JUST THE SEPARATE AREA AT THE BOTTOM.

8    Q    OKAY.  SO I'LL JUST USE THAT TO DESCRIBE IT.

9    OKAY?

10   A    UM-HUM, THANKS.

11   Q    SO THE SEPARATE AREA AT THE BOTTOM HAS, IN THE

12   D'305, HAS THE FINE ICON; RIGHT?

13   A    YES.

14   Q    AND YOU POINT TO THE FACT THAT THE FASCINATE

15   HAS A PHONE ICON AND IT'S ALSO GREEN AND HAS A

16   PICTURE OF A PHONE; RIGHT?

17   A    YES.

18   Q    NOW, THAT PICTURE OF THAT PHONE, YOU HAVEN'T

19   SEEN A PHONE RECEIVER LIKE THAT IN ABOUT 25 YEARS,

20   HAVE YOU?

21   A    I KNOW THAT IT WAS DESIGNED IN 1938, AND IT

22   WAS BY HENRY DREYFUS AND IT WAS USED, YOU KNOW,

23   THROUGH THE '60S, '70S.

24              BUT I --

25   Q    THOSE WERE MA BELL PHONES?

1    A    I THINK OF IT AS RETRO.

2    Q    SO THAT'S A PICTURE OF A MA BELL PHONE

3    RECEIVER; RIGHT?

4    A    I DON'T KNOW WHETHER IT'S A MA BELL PHONE, BUT

5    I KNOW THAT IT'S RETRO.

6    Q    DO YOU REMEMBER IN THE OLD DAYS WHEN THERE WAS

7    PHONE BOOTHS ON THE STREETS?

8    A    YES.

9    Q    BEFORE CELL PHONES?

10   A    YES.

11   Q    AND DO YOU REMEMBER THEY HAD THAT SAME PICTURE

12   OF THE PHONE ON THE SIDE OF A PHONE BOOTH?

13   A    A LOT OF THEM HAD BLUE ONES WITH A RECEIVER

14   THAT WAS VERTICAL.

15   Q    AND IT'S THE SAME RECEIVER, RIGHT?

16   A    SIMILAR.

17   Q    IT'S THE OLD ICONIC MA BELL RECEIVER; RIGHT?

18   A    IT'S, IT'S A RETRO VERSION OF A RETRO PHONE

19   RECEIVER.

20   Q    THE OLD MA BELL PHONES.  DO YOU REMEMBER WHEN

21   YOU GREW UP, YOU HAD TO DIAL PHONES AND YOU PICKED

22   THE RECEIVER UP, THAT'S A PICTURE OF THAT RECEIVER,

23   RIGHT?

24   A    YEAH.  I JUST DON'T -- I NEVER KNEW ABOUT

25   ASSOCIATING IT WITH THE TERM MA BELL, SO --

1    Q    WELL, CERTAINLY APPLE DOESN'T OWN THE IMAGE

2    AFTER THAT PHONE RECEIVER, DOES IT?

3    A    I DON'T KNOW.

4    Q    DO YOU BELIEVE IT DOES?

5    A    I BELIEVE THAT SEEING THAT WHITE PHONE ON AN

6    ANGLE ON A SCREEN BACKGROUND --

7    Q    THAT'S NOT WHAT I ASKED YOU.

8    A    -- IS DISTINCTIVE.

9    Q    THAT'S NOT WHAT I ASKED YOU.  DO YOU BELIEVE

10   THAT APPLE OWNS THE IMAGE OF THE OLD RETRO PHONE

11   RECEIVER?

12   A    I DON'T KNOW.

13   Q    OKAY.  WHAT ABOUT THE COLOR GREEN?  WHEN

14   PEOPLE SEE THE COLOR GREEN, THAT MEANS GO; RIGHT?

15   A    SOMETIMES.

16   Q    APPLE DOESN'T OWN THE COLOR GREEN FOR GO, DOES

17   IT?

18   A    NO.  I DON'T -- I DON'T KNOW, BUT I WOULD

19   ASSUME NO.

20   Q    YOU'VE WORKED WITH ICONS A LOT.  YOU'VE SEEN

21   DOZENS OF ICONS THAT HAVE GREEN WITH TELEPHONE

22   RECEIVERS ON THEM IN THE PAST, HAVEN'T YOU?

23   A    I -- WHEN I WAS LOOKING AT THIS DESIGN, I

24   LOOKED SPECIFICALLY AT THAT INCARNATION OF A PHONE

25   ICON, GREEN, ROUNDED CORNERS, TILTED, POINTING UP,

```
 1    BIT OF A GRADIENT.

 2               SO I SEE IT -- I SEE THE PARTS THAT MAKE

 3    A WHOLE VERSUS THE INGREDIENTS THAT MAKE A COOKIE.

 4    Q     THAT WASN'T MY QUESTION.

 5               SO MY QUESTION WAS, IN THE WORK YOU'VE

 6    DONE FOR THIS CASE, YOU'VE SEEN DOZENS OF ICONS

 7    THAT HAVE, FOR THE PHONE, FOR THE PHONE

 8    FUNCTIONALITY --

 9    A     YES.

10    Q     -- THAT HAVE A PICTURE OF A RECEIVER ON THEM

11    THAT ARE GREEN.  THAT'S WHAT IT INDICATES TO THE

12    USER IF YOU HIT THIS, YOU'LL LAUNCH THE PHONE

13    APPLICATION; RIGHT?

14    A     I DON'T KNOW THAT I'VE SEEN, IN YOUR WORDS,

15    DOZENS THAT ARE THAT COMBINATION OF ELEMENTS.

16    Q     WELL, YOU'VE SEEN --

17    A     THAT EXACT COMBINATION OF ELEMENTS.

18    Q     OF COURSE, THAT WASN'T MY QUESTION.  SO MY

19    QUESTION IS, PRIOR TO YOUR RETENTION IN THIS CASE,

20    YOU DON'T DISPUTE THAT YOU'VE SEEN GREEN -- ICONS

21    FOR THE PHONE, THE PHONE APPLICATIONS, THAT ARE

22    GREEN AND HAVE A PICTURE OF A RECEIVER ON THEM.

23    A     I'VE SEEN ALL KINDS OF ICONS FOR PHONES, ALL

24    KINDS OF COLORS, ALL KINDS OF IMAGES, PHONE

25    RECEIVERS, CELL PHONES, DIFFERENT ANGLES, DIFFERENT
```

1    SIZES, DIFFERENT PROPORTIONS.

2              SO IT'S HARD TO CHARACTERIZE EXACTLY WHAT

3    I'VE SEEN TO ANSWER YOUR QUESTION YES OR NO.

4    Q    YOU ALSO POINT TO THIS CLOCK ICON.  THIS IS A

5    PICTURE OF THE FRONT FACE OF A CLOCK; RIGHT?

6    A    YES.

7    Q    AND WHEN YOU HIT THE CLOCK ICON, YOU LAUNCH

8    THE CLOCK APPLICATION; RIGHT?

9    A    YES.  YES.

10   Q    APPLE DOESN'T OWN THE PICTURE OF THE CLOCK,

11   DOES IT?

12   A    I DON'T KNOW.

13   Q    YOU ALSO POINTED TO THIS FLOWER ICON, AND TELL

14   ME AGAIN, WHERE IS THE FLOWER ICON ON THE

15   FASCINATE?

16   A    IT'S PART OF -- A VIEW OF IT IS IN THE GALLERY

17   ICON.

18   Q    OKAY.  RIGHT THERE (INDICATING)?

19             SO THIS ONE SAYS PHOTOS, THIS ONE DOESN'T

20   SAY PHOTOS, DOES IT?

21   A    NO.

22   Q    AND JUST FOR THE RECORD, IN THE D'305 PATENT

23   WE'RE LOOKING AT IS THE ICON THAT'S IN THE TOP ROW

24   AND THE THIRD COLUMN; CORRECT?

25   A    YES.

```
 1    Q    AND THE ICON THAT YOU IDENTIFIED FOR THE

 2    FASCINATE IS IN THE FOURTH ROW, THIRD COLUMN;

 3    RIGHT?

 4    A    YES.

 5    Q    SO IN THE D'305 IT SAYS, "PHOTOS."  IN THE

 6    FASCINATE IT SAYS, "GALLERY," RIGHT?  THOSE ARE

 7    DIFFERENT WORDS; RIGHT?

 8    A    YES.

 9    Q    GALLERY, IF YOU LOOK AT THE FASCINATE, YOU SEE

10    THAT THERE'S TWO SQUARES WITHIN THE BIG, THE

11    RECTANGLE?

12    A    YES.

13    Q    AND THEN IN THE TOP OVERLAY SQUARE, THERE'S A

14    CIRCLE?

15    A    YES.

16    Q    AND IN THE MIDDLE OF THE CIRCLE, IT LOOKS LIKE

17    THERE'S AN ARROW.

18    A    YES.

19    Q    AND WHAT DOES THAT ARROW REPRESENT?

20    A    IT'S TYPICALLY THAT ARROW MEANS VIDEO.

21    Q    VIDEO.  SO IN THE D'305, WE'RE TALKING ABOUT

22    PHOTOS, BUT THE FASCINATE, FOR THIS ICON, WE'RE

23    TALKING ABOUT VIDEO, AT LEAST PARTIALLY VIDEO;

24    RIGHT?

25    A    GALLERY IS, AS I UNDERSTAND IT, A COLLECTION
```

```
 1     OF THE USER'S IMAGES, WHETHER THEY'RE STILL OR

 2     VIDEO.

 3               AND SAME WITH PHOTOS.  SAME SIMILAR COMBO

 4     COLLECTION.

 5     Q    THIS ICON IN THE D'305, TOP ROW, THIRD COLUMN,

 6     HAS NO INDICATION IN THE ICON THAT YOU CAN GET YOUR

 7     VIDEOS THERE.  THERE'S NO CIRCLE WITH A TRIANGLE,

 8     IS THERE?

 9     A    NO.

10     Q    AND IT JUST SAYS, "PHOTOS," RIGHT?

11     A    YES.

12     Q    SO THE FASCINATE CONVEYS DIFFERENT INFORMATION

13     IN ITS GALLERY ICON.  IT TELLS THE USER THAT

14     INCLUDED WITHIN THAT, IF YOU LAUNCH THAT, YOU'RE

15     GOING TO GET TO YOUR VIDEOS; RIGHT?

16     A    AND, AGAIN, THE D'305 IS AN ILLUSTRATION AND

17     THE SCREEN FOR THE FASCINATE IS A WORKING PHONE,

18     SO --

19     Q    WELL, THAT'S ANOTHER THING I WANT TO TALK

20     ABOUT, SO LET'S TALK ABOUT THAT FOR A SECOND.

21               THE FASCINATE IS A WORKING PHONE, JUST

22     LIKE YOU SAID; RIGHT?

23     A    YES.

24     Q    AND THIS IS A LIST, WHEN YOU GO TO YOUR

25     APPLICATION MENU, THIS IS A LIST OF WHAT?
```

1    A    DIFFERENT APPLICATIONS.

2    Q    THAT'S RIGHT?

3    A    A COLLECTION OF APPLICATIONS.

4    Q    RIGHT.  AND YOU KNOW THAT WHEN A USER BUYS A

5    PHONE, THEY CAN GO TO AN APPLICATION STORE ON-LINE

6    AND DOWNLOAD GAMES, VIDEOS, PROGRAMS, ALL KINDS OF

7    DIFFERENT APPLICATIONS; RIGHT?

8    A    THAT IS SOMETHING I UNDERSTAND.  BUT THAT

9    ISN'T SOMETHING THAT IS SPECIFIC TO MY EXAMINATION

10   OF THE ICONS.

11   Q    AND YOU KNOW A USER CAN JUST SIMPLY DELETE ANY

12   OF THESE APPLICATIONS OFF THE PHONE; RIGHT?

13   A    NO.  I'M SORRY TO BE REPETITIVE.  IT'S -- MY

14   CONSIDERATION WAS THE SCREEN, WHAT IT SHOWS, AND

15   FUNCTIONALITY IN TERMS OF A CERTAIN NUMBER OF

16   THINGS THAT ALLOW YOU TO DO SOMETHING.

17             BUT I WASN'T FOCUSSED ON EXACTLY HOW

18   EVERYTHING BEHAVES.

19   Q    WHY DON'T WE DO THIS.  LET'S GET TO

20   FUNCTIONALITY IN A SECOND, AND LET ME JUST FINISH

21   OFF WITH THIS SLIDE.

22             GOING BACK TO THIS FLOWER ICON IN THE

23   D'305 PATENT, DID YOU SAY YOU USED TO DO WORK FOR

24   MICROSOFT ON THEIR ICONS?

25   A    ON MICROSOFT WINDOWS 3.0.

```
 1    Q    DO YOU KNOW THAT MICROSOFT, WELL BEFORE THE

 2    D'305, USED THE IMAGE OF A FLOWER TO DENOTE THAT

 3    WHEN YOU HIT THAT ICON, YOU GET TO PHOTOS?

 4    A    NO.

 5    Q    YOU WEREN'T AWARE OF THAT?

 6    A    NO.

 7    Q    IN ANY EVENT, IF YOU LOOK AT THE FASCINATE AND

 8    THE GALLERY ICON, THAT DOESN'T LOOK THE SAME AS THE

 9    FLOWER PHOTO, DOES IT?

10    A    IT HAS SIMILARITIES AND IT'S A DIFFERENT VIEW.

11              BUT IT LOOKS LIKE THE SAME KIND OF FLOWER

12    IN A CLOSE-UP.

13    Q    IT LOOKS LIKE THE SAME KIND OF FLOWER?  YOU

14    CAN TELL THAT IT'S THE SAME KIND OF FLOWER?

15    A    WELL, YOU CAN SEE THAT THERE'S AN OBLONG

16    YELLOW PETAL THAT'S ABOUT THE SAME SHAPE AS A

17    SUNFLOWER PETAL.

18              I DON'T -- I'M NOT A BOTANY EXPERT, BUT

19    IT LOOKS -- IT'S OBVIOUSLY ISN'T A ROSE OR AN IRIS

20    OR -- IT'S A DIFFERENT KIND OF FLOWER.

21    Q    IT'S OBVIOUSLY A DIFFERENT IMAGE THAN THE

22    PICTURE OF THE FLOWER IN THE D'305; RIGHT?

23    A    YES.

24    Q    IF YOU LOOK AT THE D'305 ON THIS BOTTOM AREA,

25    GRAY AREA THAT I THINK YOU SAY IS SEPARATED FROM
```

```
 1    THE OTHERS --

 2    A    YES.

 3    Q    -- ON THE BOTTOM RIGHT, DO YOU SEE THE ICON

 4    FOR THE IPOD?

 5    A    YES.

 6    Q    WHERE IS THAT ON THE FASCINATE?

 7    A    THERE ISN'T ONE.

 8    Q    WHAT DO WE FIND ON THE FASCINATE IN THE SAME

 9    PLACE, THE BOTTOM ROW ON THE -- THE VERY BOTTOM ROW

10    IN THE SEPARATED PART ON THE RIGHT?  WHAT DO WE

11    FIND?

12    A    A HOME ICON.

13    Q    A HOME ICON.  THERE'S NO HOME ICON ON THE

14    D'305; RIGHT?

15    A    NO.

16    Q    AND THAT'S BECAUSE IN THE APPLE PRODUCTS,

17    THERE'S A HOME PHYSICAL BUTTON; RIGHT?

18    A    THERE'S NOT A HOME IMAGE ON THE D'305 DESIGN.

19              MR. VERHOEVEN:  YOUR HONOR, I'M GOING TO

20    TRY TO GET PX 001, THE PHYSICAL EXHIBIT OF THE

21    INITIAL IPHONE.

22              MS. KREVANS:  MR. VERHOEVEN, IT MIGHT BE

23    UP THERE ALREADY.

24              MR. VERHOEVEN:  MAY I APPROACH, YOUR

25    HONOR?  I'M TOLD IT MIGHT BE ON THE STAND ALREADY.
```

```
 1              THE COURT:  OKAY.

 2              THE WITNESS:  I SWEAR I DIDN'T TAKE IT.

 3              THE COURT:  YOU MEAN THE ACTUAL IPHONE,

 4    JX 1000?

 5              MR. VERHOEVEN:  YES.  I'M SORRY, YOUR

 6    HONOR.  I MISSPOKE.  JX 1000.

 7              THE COURT:  ARE WE MISSING IT?

 8              MS. KREVANS:  NO, YOUR HONOR.  IT MAY

 9    HAVE BEEN PUT BACK IN ITS PROPER BOX.

10              MR. VERHOEVEN:  WE DON'T RETAIN CUSTODY

11    OF IT.  COUNSEL FOR APPLE DOES, YOUR HONOR.

12              MS. KREVANS:  WE'VE AGREED WHEN THEY'RE

13    IN COURT THEY'LL ALL HERE IN THESE RACKS.

14              MR. VERHOEVEN:  CAN WE SWITCH OVER TO THE

15    ELMO FOR A SECOND, PLEASE?

16    Q   I'LL DO THE SAME THING HERE WITH THE INITIAL

17    IPHONE.  I'LL TURN IT ON.  WHAT DO WE SEE?  WHAT

18    DOES THE CONSUMER SEE WHEN THEY TURN ON THE PHONE?

19    A   APPLE LOGO.

20    Q   ARE WE STILL LOOKING AT IT?  YES.

21    A   YES.

22    Q   IT'S ON THERE FOR A LONG TIME.

23              OKAY.  SO THIS IS THE APPLE HOME SCREEN;

24    RIGHT?

25    A   YES.
```

```
1    Q    IT LOOKS SIMILAR TO D'305?  THAT'S YOUR

2    TESTIMONY; RIGHT?

3    A    YES.

4    Q    AND AS WE SEE, HERE'S THE IPOD ICON, AND IN

5    THE FASCINATE, THAT PLACE HAS A HOME ICON; RIGHT?

6    A    YES.

7    Q    BUT IT'S HARD TO SEE ON THE ELMO, BUT DO YOU

8    SEE THERE'S THAT PHYSICAL BUTTON RIGHT HERE

9    (INDICATING)?

10   A    YES.

11   Q    THAT'S PART OF APPLE'S TRADE DRESS?

12   A    I KNOW THAT THE GRAPHICS THAT I CONSIDERED ARE

13   ONLY PART OF THE TRADE DRESS.

14        BUT I CAN'T SPEAK TO THE REST OF THE

15   TRADE DRESS.

16   Q    DO YOU HAVE A -- DO YOU HAVE AN OPINION ONE

17   WAY OR ANOTHER AS TO WHETHER THIS PHYSICAL HOME

18   BUTTON IS PART OF APPLE'S TRADE DRESS?

19   A    NO, I DON'T HAVE AN OPINION.

20   Q    BUT IN ANY EVENT, A CONSUMER WOULD KNOW THAT

21   THE APPLE PHONE HAS A PHYSICAL HOME BUTTON; RIGHT?

22   A    AS I SAID, I -- MY TASK IN BEING AN EXPERT IN

23   THIS CASE WAS JUST ABOUT THE DISPLAY SCREEN, NOT

24   ABOUT THE PHYSICAL PHONE.

25   Q    WELL, YOU KNOW A CONSUMER -- YOU'D AGREE WITH
```

```
 1    ME THAT A CONSUMER, IF THEY'RE GOING TO BUY AN
 2    EXPENSIVE ITEM LIKE AN I -- A SMARTPHONE, THEY GO
 3    TO THE STORE AND THEY FIDDLE WITH IT FOR A WHILE
 4    AND THEY FIGURE OUT IF THEY WANT TO BUY IT; RIGHT?
 5    A    I CAN'T SPEAK TO CONSUMER BEHAVIOR, YOU KNOW,
 6    EXCEPT MY OWN ANECDOTALLY.  BUT IT'S NOT MY AREA.
 7    Q    SO YOU DON'T HAVE AN OPINION AS TO WHETHER --
 8    GO BACK TO THE SLIDE AGAIN -- AS TO WHETHER A
 9    CONSUMER WOULD KNOW FROM ALL OF THE APPLE
10    ADVERTISING AND MARKETING THAT, WITH RESPECT TO THE
11    IPHONE, THE HOME BUTTON IS NOT AN ICON, IT'S A
12    PHYSICAL BUTTON?
13    A    NO.
14    Q    OKAY.  NOW, DO YOU SEE UP AT THE TOP HERE
15    THERE'S THESE LITTLE DOTS?
16    A    YES.
17    Q    THERE'S ONE BIG CIRCLE -- OR ONE RELATIVE TO
18    THE OTHER DOTS, IT'S A BIGGER CIRCLE THAT HAS A 1
19    ON IT?
20    A    YES.
21    Q    AND TWO OTHER DOTS?
22    A    YES.
23    Q    WHERE IS THAT ON THE D'305?
24    A    THERE ISN'T CORRESPONDING DOTS ON THE D'305.
25    Q    THOSE DOTS INDICATE TO A CONSUMER THAT THERE'S
```

1    THREE PAGES WORTH OF APPLICATION; RIGHT?

2    A    YES.

3    Q    THERE'S NOTHING INDICATING PAGES OF

4    APPLICATIONS IN THE D'305; CORRECT?

5    A    YES.

6    Q    AND CAN YOU TELL, BY LOOKING AT THIS, WHETHER

7    OR NOT THE ICONS ARRANGED IN THE FASCINATE ARE IN

8    ALPHABETICAL ORDER?  DO YOU SEE THE FIRST ONE IS

9    THREE, THEN A, THEN B, B-I, B-L, B-R, C-A, C-A,

10   C-A.  DO YOU SEE THAT?

11   A    LOOKS ALPHABETIC.

12   Q    IT'S ALPHABETICAL; RIGHT?

13   A    YES.

14   Q    LOOK AT THE D'305.  TEXT, CALENDAR.  WELL, T

15   COMES AFTER C IN THE ALPHABET; RIGHT?

16   A    YES.

17   Q    AND THEN PHOTOS AND BACK TO CAMERA AND THEN TO

18   YOUTUBE, THAT'S WITH A Y, AND THEN STOCKS.

19          SO THE D'305, THE ICONS ARE NOT ARRANGED

20   ALPHABETICAL ORDER; RIGHT?

21   A    RIGHT.

22   Q    SO BEING ARRANGED IN ALPHABETICAL ORDER IS

23   KIND OF USEFUL, ISN'T IT?

24   A    SOMETIMES.

25   Q    YEAH, ESPECIALLY IF YOU HAVE THREE PAGES OF

```
 1    ICONS.  IT'S EASIER TO FIND THE APPLICATION PROGRAM

 2    YOU WANT IF IT'S ARRANGED IN ALPHABETICAL ORDER;

 3    RIGHT?

 4    A    I WOULD PROBABLY, IF I WERE DESIGNING IT, I

 5    WOULD ARRANGE THINGS IN ORDER THAT I THOUGHT WOULD

 6    BE THE MOST FREQUENTLY USED.

 7              BUT I THINK IT'S A -- THAT, WHAT YOU SAY,

 8    SOMETIMES ALPHABETICAL MAKES TOTAL SENSE.

 9              IT OFTEN MAKES SENSE, YOU KNOW, TYPE

10    FACES, YOU'VE GOT A SUPER LONG LIST OF 50 NAMES,

11    SCREEN ELEMENTS TENDS TO DEPEND HOW MANY YOU'RE

12    TALKING ABOUT, AND HOW THEY'RE DISPLAYED.

13              SO I WOULDN'T CATEGORICALLY SAY THAT

14    ALPHABETICAL IS PREFERRED TO NOT ALPHABETICAL.

15    Q    WELL, LET'S TALK ABOUT A HOME SCREEN.

16              THAT'S WHERE YOU COULD PUT -- A USER CAN

17    ACTUALLY TOUCH AND DRAG THEIR FAVORITE APPLICATIONS

18    TO THEIR HOME SCREEN WHERE THEY CAN SEE THEM FAST

19    AS SOON AS THEY PICK UP THEIR PHONE; RIGHT?

20    A    YES.

21    Q    WHEREAS AN APPLICATIONS SCREEN IS SIMPLY A

22    LIST OF ALL OF YOUR APPLICATIONS; RIGHT?

23    A    RIGHT.

24    Q    AND SO FOR AN APPLICATION SCREEN, IT MAKES

25    SENSE THAT YOUR ICONS ARE IN ALPHABETICAL ORDER SO
```

1    YOU CAN FIND THEM; RIGHT?

2    A    I WOULDN'T -- I WOULDN'T SAY THAT BECAUSE YOU

3    MIGHT WANT YOUR GAMES TOGETHER AND YOUR ART

4    PROGRAMS TOGETHER AND YOUR CAMERA STUFF TOGETHER,

5    AND THAT MIGHT BE A BETTER SPACIAL WAY TO FIND

6    THINGS.

7         YOU KNOW, IT DEPENDS ON THE PERSON.

8    Q    AND YOU MIGHT WANT A PLACE YOU CAN GO TO SEE

9    AN ENTIRE LIST OF YOUR APPLICATIONS TO SEE IF YOU

10   DOWNLOADED SOMETHING OR NOT, RIGHT?

11   A    I DON'T DISPUTE ALPHABETICAL CAN BE USEFUL,

12   BUT I WOULDN'T SAY THAT IS IT FOR EASE OF USE.

13   Q    NOW, YOU MENTIONED IN YOUR ANSWER A FEW

14   MINUTES AGO, YOU REFERENCED FUNCTIONALITY.

15        DO YOU REMEMBER THAT GENERALLY?

16   A    YES.

17   Q    WOULD YOU AGREE WITH ME THAT THE ICONS ON THE

18   D'305 DESIGN ARE AT LEAST IN PART FUNCTIONAL?

19   A    ICONS IN GENERAL HAVE A PURPOSE.

20        THE D'305, AS I UNDERSTAND IT, IS AN

21   ORNAMENTAL DESIGN, SO IT'S, IT'S A PICTURE.

22   Q    WHEN YOU SAY ICONS HAVE A PURPOSE, WHAT DO YOU

23   MEAN?

24   A    I MEAN THAT TO GENERALIZE, YOU INTERACT WITH

25   ONE AND SOMETHING HAPPENS.

1    Q    THE PURPOSE OF ICONS IS TO COMMUNICATE

2    INFORMATION TO THE USER; RIGHT?

3    A    YES.

4    Q    ICONS ARE SORT OF LIKE TRAFFIC SIGNS?

5    A    YES.

6    Q    THEY HELP USERS MAKE CHOICES AMONG OPTIONS?

7    A    YES.

8    Q    ICONS CAN ALSO BE USED ON TOUCHSCREENS WHERE

9    YOU DON'T HAVE A LOT OF SPACE TO SAVE SPACE; RIGHT?

10   A    THAT IS AN OPTION.  THERE ARE -- AGAIN,

11   THERE'S -- THERE ARE NO HARD AND FAST RULES.

12   Q    ICONS ARE ALSO USEFUL BECAUSE IT CAN BE

13   UNDERSTOOD BY DIFFERENT PEOPLE WHO SPEAK DIFFERENT

14   LANGUAGES; RIGHT?

15   A    AS OPPOSED TO TEXT, SOMETIMES A PICTURE IS

16   UNIVERSAL.

17   Q    I CAN LOOK AT THIS CLOCK AND IT DOESN'T MATTER

18   WHAT COUNTRY I'M FROM, I DON'T HAVE TO SPEAK

19   ENGLISH, I CAN SEE THE CLOCK AND THAT WOULD

20   COMMUNICATE TO ME AS A USER THAT IF I HIT THAT

21   ICON, I'LL LAUNCH THE CLOCK APPLICATION; RIGHT?

22   A    YES.

23   Q    SAME THING WITH THIS ICONIC PHONE SYMBOL FROM,

24   WHAT DID YOU SAY, THE '50S, '40S?

25   A    '38.

1    Q    '38?

2    A    BUT IT EVOLVED OVER TIME.

3    Q    EVERYBODY SEEING THAT KNOWS, HEY, THAT'S

4    COMMUNICATING TO ME IF I HIT THAT BUTTON, I'LL

5    LAUNCH THE PHONE APPLICATION; RIGHT?

6    A    GENERALLY, YES.

7    Q    PEOPLE FROM DIFFERENT COUNTRIES WHO SPEAK

8    DIFFERENT LANGUAGES WOULD UNDERSTAND THAT?

9    A    YES.

10   Q    YOU AGREE THAT FAMILIAR REAL WORLD OBJECTS

11   MAKE GOOD ICONS; RIGHT?

12   A    YES AND NO.  SOMETIMES USING A REAL WORLD

13   OBJECT WHERE, LET'S SAY, A PRINTER, A PRINTER LOOKS

14   SO MUCH DIFFERENT TEN YEARS LATER THAT SOMETIMES WE

15   FIND VESTIGES OF THINGS THAT LOOK ODD BECAUSE THE

16   INDUSTRIAL DESIGN CHANGES.  SO SOMETIMES USING --

17   SOMETIMES A METAPHOR IS STRONGER BECAUSE YOU'RE NOT

18   TIED TO A PARTICULAR WAY SOMETHING LOOKS IN TIME.

19   Q    OKAY.  YOU DON'T DISPUTE THAT THE ICONS USED

20   IN THE D'305 HERE WERE CHOSEN TO COMMUNICATE THE

21   VARIOUS FUNCTIONS OF THE APPLICATIONS ON THE

22   DEVICE, DO YOU?

23   A    THE D'305 DOESN'T SAY ANYTHING IN THE PATENT

24   ABOUT THOSE PARTICULAR DESIGNS.  I'M -- I CAN --

25   AND I WASN'T INVOLVED IN THE DESIGN OF THOSE, SO I

1    CAN SPECULATE.

2    Q    ISN'T IT TRUE THAT IN YOUR OPINION, THE WAY

3    THE D'305 IS SET UP IS THE MOST EFFECTIVE VISUAL

4    WAY TO COMMUNICATE THE FUNCTIONS ON THE PHONE?

5    A    ON A PHONE?

6    Q    YES.

7    A    WELL, NO.  I MEAN, THE D'305 PATENT DOESN'T

8    SAY IT'S A PHONE.  IT JUST SAYS IT'S A DEVICE.

9    Q    WHEN YOU LOOK AT THE D'305, YOU DON'T DISPUTE

10   THAT THE CLOCK ICON COMMUNICATES TO A CONSUMER THAT

11   IF THEY PUSH THAT BUTTON, IT'LL LAUNCH THE CLOCK

12   APPLICATION FUNCTION?

13   A    YES.

14   Q    AND THE SAME IS TRUE FOR THE CALCULATOR;

15   RIGHT?  IT INDICATES TO THE CONSUMER, IT

16   COMMUNICATES TO THE CONSUMER FUNCTIONAL

17   INFORMATION, I.E., IF YOU HIT THAT ICON, THE

18   CALCULATOR ICON, IT'LL LAUNCH THE CALCULATOR

19   APPLICATION; RIGHT?

20   A    WELL, AGAIN, THERE ISN'T ANYTHING THAT I SAW

21   IN THE D'305 THAT TALKS ABOUT WHAT ANY OF THOSE

22   THINGS DO.  YOU KNOW, YOU READ THE WORD AND I'M

23   ASSUMING THOSE ARE ALL ILLUSTRATIONS OF POSSIBLE

24   ICONS.

25   Q    THAT'S THE WHOLE POINT OF AN ICON IS TO

1    COMMUNICATE TO THE USER -- WITHDRAW THE QUESTION.

2            ISN'T IT TRUE THE WHOLE POINT OF AN ICON

3    ON A SMARTPHONE IS TO COMMUNICATE TO THE CONSUMER

4    USING THAT PRODUCT, THAT IF THEY HIT THAT ICON,

5    CERTAIN FUNCTIONALITY WILL OCCUR ON THE PHONE?

6    A    GENERALLY, YES.

7            BUT THAT'S NOT SPELLED OUT, IN MY

8    UNDERSTANDING, IN THE D'305 DESIGN.

9    Q    OKAY.  GIVEN THAT IT'S NOT SPELLED OUT, YOU

10   AGREE GENERALLY THAT, AS AN EXPERT ON ICONS --

11   A    YEAH.

12   Q    -- THAT THAT'S THE WAY ICONS ARE FOR, RIGHT?

13   ON SMARTPHONES AT LEAST?

14   A    UM --

15   Q    TO COMMUNICATE TO THE CONSUMERS, HEY, IF YOU

16   HIT THIS BUTTON, CERTAIN FUNCTIONS WILL HAPPEN.  IF

17   YOU HIT THIS OTHER BUTTON, OTHER DIFFERENT

18   FUNCTIONS WILL HAPPEN; RIGHT?

19   A    AGREED.  VISUAL SHORTHAND FOR SOMETHING.

20   Q    AND THE BEST ICONS ARE THE ONES THAT CAN

21   COMMUNICATE THAT FUNCTIONALITY THE BEST SO THE USER

22   ISN'T CONFUSED ABOUT WHICH BUTTONS WILL DO WHAT;

23   RIGHT?

24   A    GOOD ICONS COMMUNICATE CLEARLY AND

25   CONSISTENTLY.

```
 1    Q    AND THEY -- ON SMARTPHONES, THEY COMMUNICATE

 2   TO THE CONSUMER WHAT THE FUNCTIONALITY OF THE PHONE

 3   IS?  IN OTHER WORDS, IF YOU HIT THIS BUTTON, YOU'LL

 4   LAUNCH THE PHONE APPLICATION.  IF YOU HIT THIS

 5   OTHER BUTTON, YOU'LL LAUNCH THE CAMERA APPLICATION.

 6   FAIR?

 7   A    IF SOMEONE HAD GENERAL KNOWLEDGE THAT THEY

 8   BRING TO IT, YES.

 9           MR. VERHOEVEN:  YOUR HONOR, I'M ABOUT TO

10   CHANGE SUBJECTS.  DO YOU WANT TO TAKE THE LUNCH

11   NOW?

12           THE COURT:  SURE.  IT'S 1202.  AGAIN,

13   PLEASE KEEP AN OPEN MIND.  DON'T DISCUSS THE CASE

14   WITH ANYONE AND PLEASE DON'T DO ANY OF YOUR OWN

15   RESEARCH.

16           GO AHEAD -- ACTUALLY, IF YOU COULD JUST

17   LEAVE YOUR NOTEBOOKS IN THE JURY ROOM.  THANK YOU.

18   WE'LL SEE YOU BACK AT 1:00 O'CLOCK.

19           (WHEREUPON, THE FOLLOWING PROCEEDINGS

20   WERE HELD OUT OF THE PRESENCE OF THE JURY:)

21           THE COURT:  OKAY.  THANK YOU ALL.

22           (WHEREUPON, THE LUNCH RECESS WAS TAKEN.)

23

24

25
```

1          **AFTERNOON SESSION**

2              (WHEREUPON, THE FOLLOWING PROCEEDINGS

3      WERE HELD OUT OF THE PRESENCE OF THE JURY:)

4              THE COURT:  ALL RIGHT.  LET ME ASK ONE

5      QUICK QUESTION, BECAUSE THIS IS COMING UP WITH

6      MR. DENISON AND WITH MS. KARE.

7              THANK YOU, PLEASE TAKE A SEAT.

8              EXHIBIT 44, LET ME HEAR, BECAUSE I THINK

9      MAYBE I'VE BEEN TOO HARD WITH THE FOUNDATION, I'M

10     ASSUMING THAT SAMSUNG IS NOT GOING TO ARGUE THAT

11     THIS IS NOT A SAMSUNG DOCUMENT.  OR ARE YOU?

12             ARE YOU GOING TO SAY IT WAS FABRICATED?

13     IT'S NOT YOUR DOCUMENT OR ANYTHING ELSE WITH THE

14     COMPARISON?  I THINK IT'S HIGHLY RELEVANT.  I THINK

15     IT WAS UNFORTUNATE IF IT WASN'T PRODUCED BEFORE

16     MR. DENISON WAS DEPOSED FOR THE PRELIMINARY

17     INJUNCTION.

18             LET ME HEAR, WHAT'S YOUR POSITION ON

19     THAT, BECAUSE THIS KEEPS COMING UP, AND I'D LIKE TO

20     GET IT ADDRESSED.

21             MR. VERHOEVEN:  OUR POSITION?

22             THE COURT:  YEAH.

23             MR. VERHOEVEN:  WE'RE NOT CHALLENGING

24     THAT IT'S A SAMSUNG DOCUMENT, YOUR HONOR, BUT

25     THERE'S BEEN NO FOUNDATION LAID FOR ADMISSION, FOR

1    ADMISSIBILITY.

2              THE COURT:  SO WHAT IS YOUR REQUIREMENT,

3    THAT THEY BRING IN A SAMSUNG EMPLOYEE FROM KOREA

4    WHO CAN SAY THAT, YES, HE/SHE WORKED ON THAT

5    DOCUMENT?

6              MR. VERHOEVEN:  IF THEY HAVE DEPOSITION

7    TESTIMONY THAT LAYS THE FOUNDATION OF THE DOCUMENT,

8    WE CAN PUT IF IN THAT WAY, YOUR HONOR.

9              BUT AS WITH ALL OF THESE EXHIBITS, YOU

10   NEED TO LAY A FOUNDATION BEFORE THEY COME IN.  AND

11   THE OBJECTION I HAD THIS MORNING, YOUR HONOR, WAS

12   THAT WE DON'T BELIEVE THAT AN EXPERT WITNESS IS

13   SOMEBODY WHO CAN LAY A FOUNDATION --

14             THE COURT:  I'M NOT GOING TO ALLOW THAT

15   IT COME IN THROUGH HER.  I JUST WANT TO RESOLVE

16   THIS ISSUE.

17             MR. VERHOEVEN:  I'M SORRY.  WHAT WE'RE

18   SAYING IS THEY NEED TO DO IT THE RIGHT WAY, HAVE A

19   WITNESS WHO THEY'VE HAD OVER A ONE DEPOSITION, I

20   THINK IN THIS CASE, SAMPLE WITNESSES, AND THIS WAS

21   THEIR JOB TO SHOW THIS TO A WITNESS AND GET THE

22   FOUNDATION SO THAT THEY CAN MOVE IT INTO EVIDENCE.

23   AND --

24             THE COURT:  RIGHT.  BUT I DON'T THINK IT

25   SHOULD BE -- YOU KNOW, SAMSUNG SHOULD HAVE PRODUCED

1    CONFUSION, LIKELIHOOD OF CONFUSION.

2            THAT WAS OUR INTERROGATORY 71.  THAT'S A

3    DIFFERENT CONTENTION INTERROGATORY.  IT WAS NOT

4    LISTED FOR THAT PURPOSE.

5            THIS INTERROGATORY THAT COUNSEL IS

6    SHOWING YOU HAS TO DO WITH THE ISSUE OF

7    WILLFULNESS, I BELIEVE.  LET ME DOUBLE-CHECK.

8            THE COURT:  WILLFUL INFRINGEMENT,

9    DILUTION, FALSE DESIGNATION.

10           BUT CONFUSION IS RELEVANT TO ASSOCIATION

11   FOR DILUTION, SO IT'S PROBATIVE.  CONFUSION IS

12   STILL PROBATIVE FOR ASSOCIATION, WHICH YOU NEED FOR

13   DILUTION.

14           MR. VERHOEVEN:  THAT'S WHAT I'M SAYING.

15   I'M SORRY.  I WASN'T CLEAR.

16           THE COURT:  OKAY.

17           MR. VERHOEVEN:  WHAT I'M SAYING IS WE

18   PROPOUNDED AN INTERROGATORY, 71, WHERE WE SAID TELL

19   US WHAT YOUR CONTENTIONS ARE WITH RESPECT TO

20   CONFUSION, AFFILIATION.  I CAN READ THE WHOLE THING

21   IN THE RECORD IF YOU'D LIKE.

22           AND IN RESPONSE TO THAT, THIS WAS NEVER

23   IDENTIFIED.

24           WHAT COUNSEL IS POINTING YOU TO IS

25   WILLFULNESS CONTENTION INTERROG, AND SHE'S ALSO

```
 1    POINTING TO A LIST OF I DON'T KNOW HOW MANY, IT

 2    LOOKS LIKE OVER 100 DOCUMENTS THAT ARE JUST ON A

 3    LIST WHICH MAGISTRATE JUDGE GREWAL HAS TOLD US IS

 4    INSUFFICIENT, INSUFFICIENT RESPONSE IN CONTENTION

 5    INTERROGATORIES IN RESPONSE TO OUR POINTING THAT

 6    OUT.

 7            SO I GUESS THERE'S TWO POINTS, YOUR

 8    HONOR.  ONE, THAT WITH RESPECT TO THE TESTIMONY I

 9    OBJECTED TO ON DIRECT FOR THIS WITNESS TODAY, THE

10    TESTIMONY THE WITNESS WAS GIVING WAS POINTING TO

11    THIS DOCUMENT FOR THE TRUTH OF THE MATTER AS TO

12    CONCLUSION, AND THAT'S OBJECTIONABLE TO US BECAUSE

13    THIS DOCUMENT WAS NEVER IDENTIFIED.

14            AND, SECONDLY, EVEN IF YOU CONSIDER THE

15    WILLFULNESS CONTENTION INTERROG, ALL WE'VE GOT IS A

16    LIST OF OVER 100 DOCUMENTS.

17            THE COURT:  NO.  I JUST COUNTED.  THERE

18    ARE 62 DOCUMENTS.  IT'S ON PAGE 9, LINES 11 THROUGH

19    26.  IT'S 62 DOCUMENTS SPECIFYING THE BATES

20    NUMBERS.

21            BUT THE INTERROGATORY NUMBER 7 ASKS FOR

22    ALL FACTS SUPPORTING ANY CONTENTION BY APPLE THAT

23    SAMSUNG HAS WILLFULLY INFRINGED, DILUTED OR FALSELY

24    DESIGNATED THE ORIGIN OF ITS PRODUCTS FOR EACH

25    PATENT, TRADE DRESS, AND TRADEMARK, INCLUDING WHEN
```

 1    AND HOW APPLE AND SAMSUNG HAD ACTUAL NOTICE OF THE

 2    APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, AND APPLE

 3    TRADEMARK.

 4              SO I'M GOING TO OVERRULE THE OBJECTION

 5    ABOUT DISCLOSURE BECAUSE I FIND THAT THIS IS

 6    SUFFICIENT.

 7              SO IF YOU WANT TO KEEP ARGUING IT, IT'S

 8    NOW JUST GOING TO BE BILLED STRAIGHT TO SAMSUNG'S

 9    TIME.

10              MR. VERHOEVEN:  I THINK THAT COMPLETES

11    OUR ARGUMENT, YOUR HONOR.

12              THE COURT:  OKAY.  ALL RIGHT.  I'M GOING

13    TO RETURN THIS -- THAT WAS FROM THE APPLE'S

14    CORRECTED AMENDED OBJECTIONS AND RESPONSES TO

15    SAMSUNG ELECTRONICS' LIMITED INTERROGATORIES NUMBER

16    4, 6, 7, 16, 17, 18 TO APPLE, INC.

17              ALL RIGHT.

18              (WHEREUPON, THE FOLLOWING PROCEEDINGS

19    WERE HELD IN THE PRESENCE OF THE JURY:)

20              THE COURT:  ALL RIGHT.  WELCOME BACK.

21              OH, PLEASE TAKE A SEAT.  SORRY.  I FORGET

22    THAT.

23              ALL RIGHT.  GO AHEAD, PLEASE.

24              IT'S 1:13.

25              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

1    Q    GOOD AFTERNOON, DR. KARE.

2    A    GOOD AFTERNOON.

3    Q    I'D LIKE TO SWITCH SUBJECTS AND TALK A LITTLE

4    BIT ABOUT THE PLACEMENT OF ICONS ON THE USER

5    INTERFACE.

6         WOULD YOU AGREE THAT THERE ARE PRACTICAL

7    ENGINEERING CONSIDERATIONS INVOLVED IN THE SPACING

8    FOR THE ICONS ON A GRAPHICAL USER INTERFACE?

9    A    GENERALLY, YES.

10   Q    THE USER INTERFACE SHOULD BE ORGANIZED OR MUST

11   BE ORGANIZED SO THAT THERE'S ENOUGH SPACE FOR THE

12   ICON SO THE USER CAN ACTUALLY SELECT THE ICON;

13   RIGHT?

14   A    YES.

15   Q    SO A DESIGNER HAS TO TAKE INTO ACCOUNT THE

16   SPACE REQUIRED ON THE TOUCHSCREEN TO EFFECTIVELY

17   SELECT AN ICON IN DECIDING HOW TO POSITION ICONS ON

18   THE SCREEN?

19   A    IT'S FAIR TO SAY THAT IF IT'S A TOUCHSCREEN

20   AND YOU'RE USING YOUR FINGER AND NOT A STYLUS, THEN

21   THERE'S SOME PRACTICAL CONSIDERATION OF HOW CLOSE

22   THINGS -- HOW CLOSE AREAS COULD BE TOGETHER AND HOW

23   BIG THEY ARE.

24   Q    RIGHT.  SO IF YOU HAD, FOR EXAMPLE, A COMPUTER

25   SCREEN AND YOU'RE USING A MOUSE, YOU CAN USE -- YOU

1    CAN HAVE SMALLER ICONS IF YOU WANTED TO AND JUST

2    CLICK ON THE POINT; RIGHT?

3    A    YOU HAVE A ONE PIXEL POINTER.

4    Q    RIGHT.

5    A    EASY TO BE PRECISE.

6    Q    NOW, IF YOU HAD ONE OF THOSE OUGHT PALM PILOTS

7    WHERE YOU HAD A STYLUS -- DO YOU REMEMBER THOSE?

8    A    YES.

9    Q    THAT WOULD BE A TIGHT LITTLE POINT THAT YOU

10   PUSH; RIGHT?

11   A    YES.

12   Q    AND THAT'S ALL THE SPACE YOU'D NEED?

13   A    YOU KNOW, MAYBE THERE'S OTHER -- YOU KNOW,

14   VISUAL DESIGN.

15   Q    OF COURSE.

16   A    BUT, YES.

17   Q    SO -- BUT IF YOU HAVE ONE OF THESE NEWER

18   SMARTPHONES THAT ARE DESIGNED TO HAVE A TOUCHSCREEN

19   WITH JUST YOUR FINGER, YOU DON'T NEED A STYLUS,

20   THEN YOU NEED A LARGER AREA BECAUSE THE FINGER

21   TOUCH IS LARGER; RIGHT?

22   A    YES.

23   Q    SO THAT CAN AFFECT THE NUMBER OF OR HOW BIG

24   THE ICONS NEED TO BE?

25   A    IT WOULD AFFECT HOW BIG THE HIT AREA NEEDS TO

1    BE, THE ICON AND THE HIT AREA THAT ARE SENSITIVE TO

2    THE FINGER DON'T NEED TO BE EXACTLY THE SAME SIZE.

3    Q    WELL, THEY NEED TO BE ABOUT THE SAME SIZE,

4    DON'T THEY?

5    A    YOU CAN HAVE THE ICON IS THE TARGET AND THE

6    HIT AREA COULD BE A HALO AROUND IT SO THAT YOU

7    DON'T NEED TO HAVE EVERY PIXEL THAT'S SENSITIVE TO

8    YOUR FINGER BE PART OF THE ICON.

9    Q    IS ONE REASON WHY THE DOCK OR FAVORITES GROUP

10   THAT WAS AT THE BOTTOM OF THE D'305 DESIGN

11   PATENT -- D'305 DESIGN PATENT IS PUT DOWN THERE

12   BECAUSE, BY DESIGN FUNCTIONALLY, YOU WANT THE

13   USER'S THUMB TO BE ABLE TO TOUCH THE ICON WHILE

14   STILL HOLDING THE PHONE WITH THE REST OF THE HAND?

15   A    I THINK OF THE D'305 PATENT AS JUST A PICTURE.

16   IT DOESN'T REALLY SAY ANYTHING ABOUT HOW ANYTHING

17   WORKS.

18          SO ALL I CAN REALLY SEE IN THAT PATENT --

19   IN THAT ORNAMENTAL DESIGN IS THAT THERE ARE FOUR

20   ICONS AT THE BOTTOM.

21   Q    WELL, YOU ALSO TALKED ABOUT TRADE DRESS.

22          DO YOU REMEMBER THAT?

23   A    YES.

24   Q    AND DID YOU CONSIDER ANY FUNCTIONAL

25   CONSIDERATIONS WHEN YOU WERE TALKING ABOUT TRADE

```
 1    DRESS -- WHEN YOU WERE FORMING YOUR OPINIONS ABOUT

 2    TRADE DRESS?

 3    A     BECAUSE I WAS ASKED ABOUT THE OVERALL VISUAL

 4    IMPRESSION, TO THE EXTENT THAT THE OVERALL VISUAL

 5    IMPRESSION INCLUDES, YOU KNOW, ABOUT 20 THINGS, I

 6    ASSUMED FROM THAT THAT YOU NEED TO HAVE AN

 7    AFFORDANCE TO MAKE THOSE THINGS HAPPEN.

 8             BUT I DIDN'T CONSIDER REALLY THE

 9    MECHANICS OF, YOU KNOW -- IT WAS MUCH MORE FOCUSSED

10    ON HOW THINGS LOOKED VERSUS HOW THINGS WORKS, MY

11    PARTICULAR ANALYSIS FOR WHAT I WAS ASKED TO DO.

12    Q    IS IT FAIR TO SAY THAT YOU DIDN'T INVESTIGATE

13    THE FUNCTIONALITY OF THE ICONS AND HOW THEY WORK

14    AND HOW A USER WOULD INTERACT WITH THEM AS PART OF

15    YOUR ANALYSIS?

16    A    YES.

17    Q    NOW, ISN'T IT -- I THINK YOU TALKED A LITTLE

18    BIT ABOUT THE SHAPE OF THE ICON BEING A RECTANGLE.

19             DO YOU REMEMBER THAT?

20    A    YES.

21    Q    THERE'S A REASON PEOPLE DON'T HAVE TRIANGULAR

22    SHAPED ICONS ON SMARTPHONES, ISN'T THERE?

23    A    THERE'S NO REASON YOU COULDN'T.

24    Q    HAVE YOU EVER SEEN ANY?

25    A    NO.  BUT I WOULDN'T SAY THAT BECAUSE YOU
```

1    HAVEN'T SEEN SOMETHING DOESN'T MEAN IT'S NOT A

2    REASONABLY -- IT COULDN'T WORK.

3    Q    WELL, YOU WOULD AGREE WITH ME THAT TRIANGULAR

4    ICONS WOULD NOT WORK AS WELL AS RECTANGULAR ICONS

5    ON A SMARTPHONE?

6    A    I WOULDN'T AGREE WITH YOU THAT THAT IS A

7    TRUISM.

8    Q    SO YOU THINK TRIANGULAR CONTAINERS WORK JUST

9    AS WELL AS RECTANGULAR CONTAINER S?

10   A    I THINK YOU NEED TO UNDERSTAND THE DESIGN

11   PROBLEM AND, YOU KNOW, SOMETIMES IF YOU HAVE A

12   SQUARE, IT COULD BE DIVIDED INTO TWO TRIANGLES.  SO

13   IF YOU NEEDED TO GET COURT THINGS ON THAT SCREEN, A

14   SCREEN, MAYBE THAT WOULD BE A GOOD WAY TO DO IT.

15           BUT IT ALSO WOULD -- IF YOU USE

16   TRIANGLES, THERE WOULD BE A LOT MORE BACKGROUND

17   SPACE BETWEEN THEM AND MAYBE THAT COULD BE A GOOD

18   DIFFERENTIATING FACTOR.  I WOULDN'T RULE IT OUT.

19   Q    WELL, YOU HAD YOUR DEPOSITION TAKEN IN APRIL

20   OF THIS YEAR; RIGHT?

21   A    YES.

22   Q    DO YOU REMEMBER THAT?

23   A    YES.

24   Q    AND YOUR DEPOSITION WAS TAKEN, YOU WERE UNDER

25   OATH JUST LIKE TODAY; RIGHT?

1    A    YES.

2    Q    I'D LIKE TO SHOW YOU AN EXCERPT FROM YOUR

3    TRANSCRIPT.

4          IF WE CAN JUST PUT UP THE WRITTEN

5    TRANSCRIPT, MR. FISHER, PAGE 117, LINE 18, AND IT

6    GOES THROUGH 118, LINE 14.

7          LOOK UP HERE, DOCTOR.

8          "QUESTION:  DO YOU THINK THAT TRIANGULAR

9    CONTAINERS WOULD WORK JUST AS WELL AS RECTANGULAR

10   CONTAINERS?

11         "ANSWER:  NO.

12         "QUESTION:  AND WHY IS THAT?

13         "ANSWER:  BECAUSE A TRIANGLE, EXCEPT

14   FOR -- IT'S HARD TO FIT A LOT OF IMAGES.  IF YOU'RE

15   TRYING TO USE A TRIANGLE AS A BACKGROUND SHAPE,

16   YOU'D BE A LOT MORE LIMITED AS TO WHAT YOU COULD

17   FIT IN IT TO MODIFY IT BECAUSE YOU'D BE GIVING UP

18   ESSENTIALLY HALF OF YOUR REAL ESTATE."

19         DO YOU MEAN REMEMBER THAT TESTIMONY?

20   A    I DO.

21   Q    YOU AGREE WITH THAT, RIGHT?

22         MS. KREVANS:  YOUR HONOR, COULD I ASK

23   THAT MR. VERHOEVEN READ THE ENTIRE QUESTION?

24         THE COURT:  NO.  YOU'LL HAVE AN

25   OPPORTUNITY IN REDIRECT.

1473

```
 1              THE WITNESS:  THAT'S SOMETHING, BECAUSE I
 2   REVIEWED MY DEPOSITION TESTIMONY FOR THIS EVENT,
 3   THAT I WOULD SAY I THOUGHT MORE ABOUT IT, AND I
 4   COULD ALSO EXPLAIN WHAT I MEANT.
 5              A SQUARE DOES HAVE MORE REAL ESTATE.
 6   BY MR. VERHOEVEN:
 7   Q    MY QUESTION IS WHETHER YOU STAND BY YOUR
 8   TESTIMONY UNDER OATH AT YOUR DEPOSITION.
 9   A    I HAVE RETHOUGHT ABOUT THAT, AND IF I HAD THE
10   OPPORTUNITY TO ANSWER THAT QUESTION, I WOULD GIVE A
11   BIT OF A DIFFERENT ANSWER.
12   Q    YOU DON'T STAND BY IT?
13   A    I HAVE THOUGHT -- I HAVE HAD MORE THOUGHTS
14   ABOUT WHEN I WENT BACK AND RECONSIDERED IT.
15   Q    OKAY.  SO THE ANSWER TO MY QUESTION IS YOU
16   DON'T STAND BY IT?  YOU WOULD RATHER HAVE A
17   DIFFERENT ANSWER?
18   A    YES.  OR THE REST OF MY ANSWER GOES ON TO
19   EXPLAIN WHAT I WAS TRYING TO SAY.
20   Q    OKAY.  LET'S LOOK AT THAT.  "AND AT THE SAME
21   TIME, MAYBE THERE'S A -- HOW BIG ARE THEY?  YOU
22   KNOW, HOW ARE YOU ARRANGING THEM?  TRIANGLES ARE A
23   GOOD WAY TO GET MAYBE FOUR SHAPES IN A COMPACT
24   SPACE.  MAYBE IF IT WAS SOMETHING THAT DIDN'T NEED
25   LABELS, IT COULD BE POSSIBLE.  BUT IN GENERAL, A
```

1    TRIANGLE IS TOUGH.  CIRCLES, EASIER.  YOU DON'T

2    NEED A BACKGROUND SHAPE."

3              DO YOU STAND BY THAT TESTIMONY?

4    A    YES.

5    Q    OKAY.  LET'S GO TO PDX 14.30, WHICH YOU WERE

6    SHOWN ON YOUR DIRECT EXAMINATION.  DO YOU REMEMBER

7    YOU TALKED ABOUT THIS ON YOUR DIRECT EXAM?

8    A    YES.

9    Q    AND THIS IS THE BLACKBERRY TORCH SCREEN

10   CAPTURE; IS THAT RIGHT?

11   A    YES.

12   Q    AND YOU POINTED TO THIS AS AN EXAMPLE OF A

13   SCREEN DEPICTING ICONS THAT IS NOT SUBSTANTIALLY

14   SIMILAR TO THE D'305; RIGHT?

15   A    YES.

16   Q    BUT YOU SEE THERE'S A COLORFUL MATRIX OF ICONS

17   HERE; RIGHT?

18   A    THEY ARE ARRANGED IN A GRID.  THEY'RE NOT

19   QUITE AS COLORFUL, THESE PARTICULAR ICONS.

20   Q    THEY'RE COLORFUL, AREN'T THEY?  DO YOU SEE THE

21   DIFFERENT COLORS?

22   A    THEY AREN'T MONOCHROME, BUT THE OVERALL EFFECT

23   OF THE WHOLE SCREEN ISN'T AS COLOR-INFUSED AS THE

24   IPHONE SCREEN, PARTLY BECAUSE THE ICONS ARE SMALLER

25   AND PARTLY BECAUSE MORE OF THEM TEND TOWARD THE

```
 1    MONOCHROMATIC.

 2    Q    DO YOU SEE THIS RED ONE HERE?

 3    A    YES.

 4    Q    YOUTUBE?

 5    A    YES.

 6    Q    DO YOU SEE THIS BLUE ONE HERE, IT SAYS MEDIA,

 7    THAT'S A GREEN ONE, RIGHT, IT SAYS CALENDAR?  DO

 8    YOU SEE THAT?

 9    A    YES.

10    Q    AND YOU SEE THE YELLOW ONE DOWN AT THE BOTTOM

11    LEFT?

12    A    YES.

13    Q    AND YOU SEE, IS THAT VIOLET, THE ONE THAT SAYS

14    GAMES?

15    A    YES, CLOSE ENOUGH.

16    Q    THOSE ARE ALL DIFFERENT COLORS; RIGHT?

17    A    YES.

18    Q    AND THEY'RE COLORFUL, AREN'T THEY?

19    A    I DIDN'T SAY THAT THERE WEREN'T COLORED.

20         BUT I STILL BELIEVE THE OVERALL IMPACT OF

21    THE SCREEN ON THE LEFT IS THAT MORE PIXELS

22    PROPORTIONALLY ON THAT SCREEN ARE BRIGHTLY COLORED

23    THAN ON THE SCREEN ON THE RIGHT.

24         BUT THERE DEFINITELY ARE COLORS.

25    Q    YOU'RE NOT TELLING THE JURY THAT APPLE OWNS
```

1    THE RIGHT TO HAVE A COLORFUL MATRIX OF ICONS, ARE

2    YOU?

3    A    NO.

4    Q    AND YOU'RE NOT TELLING THE JURY THAT APPLE

5    OWNS THE EXCLUSIVE RIGHT TO HAVE THE ICONS ARRANGED

6    IN ROWS AND COLUMNS IN A GRID MATRIX, ARE YOU?

7    A    NO.

8    Q    TAKE THAT DOWN.

9         I THINK YOU TESTIFIED ON DIRECT THAT YOU

10   DID WORK FOR APPLE BEFORE; IS THAT RIGHT?

11   A    YES.

12   Q    AND THAT WAS BACK IN 1982?

13   A    FROM 1982 THROUGH SOME POINT IN 1986, THE VERY

14   END OF 1982.

15   Q    YOU WERE A GRAPHIC ARTIST IN THE MACINTOSH

16   SOFTWARE GROUP?

17   A    YES.

18   Q    AND THEN YOU WERE A CREATIVE DIRECTOR AT

19   APPLE?

20   A    BRIEFLY, YES.

21   Q    AND THEN YOU LEFT APPLE IN 1986 TO GO TO WORK

22   AT A COMPANY CALLED NEXT?

23   A    YES.

24   Q    IS IT CORRECT THAT A GROUP OF SENIOR

25   EXECUTIVES FROM APPLE LEFT IN 1986 AND JOINED AND

1    FORMED THE COMPANY CALLED NEXT?

2    A    YES.

3    Q    AND YOU WENT ALONG WITH THAT?

4    A    NO.  I WAS NOT IN THE -- I WASN'T A FOUNDER OF

5    NEXT.

6    Q    BUT YOU LEFT APPLE TO GO JOIN NEXT WITH THAT

7    GROUP OF EXECUTIVES, RIGHT?

8    A    I WAS HIRED.  I WAS AN EARLY EMPLOYEE ONCE

9    NEXT WAS STARTED.

10   Q    AND NEXT WAS STARTED BY A GROUP OF FORMER

11   APPLE EXECUTIVES; RIGHT?

12   A    PEOPLE FROM APPLE.  I DON'T KNOW IF THEY WERE

13   ALL EXECUTIVES.

14   Q    AND YOU WORKED WITH THOSE PEOPLE UNTIL 1989?

15   A    YEAH, I THINK I LEFT IN EARLY '89.

16   Q    NOW, I DON'T KNOW IF YOU MENTIONED ON YOUR

17   DIRECT, BUT YOU'RE CHARGING APPLE FOR YOUR TIME ON

18   THIS CASE; IS THAT RIGHT?

19   A    YES.

20   Q    AND HOW MUCH ARE YOU CHARGING APPLE?

21   A    FIVE HUNDRED FIFTY AN HOUR.

22   Q    AND HOW MUCH MONEY HAS APPLE PAID YOU TO DATE?

23   A    SO FAR, PROBABLY ABOUT 80K.

24   Q    EIGHTY THOUSAND DOLLARS?

25   A    YES.

```
 1            MR. VERHOEVEN:  THANK YOU, DR. KARE.  I

 2     PASS THE WITNESS, YOUR HONOR.

 3            THE COURT:  OKAY.  THE TIME IS NOW 1:26.

 4            ANY REDIRECT?

 5            MS. KREVANS:  YES, YOUR HONOR.

 6            THE COURT:  OKAY.  REDIRECT.

 7            MS. KREVANS:  FIRST, YOUR HONOR, JUST A

 8     HOUSEKEEPING MATTER, I HAVE REPLACEMENT FOR 15.  I

 9     HAVE 158-A.  I GAVE A COPY TO COUNSEL, AND I WOULD

10     PROVIDE ONE TO THE COURT.  I WOULD MOVE FOR ITS

11     ADMISSION AT THIS POINT.

12            THE COURT:  ALL RIGHT.  ANY OBJECTION?

13            MR. VERHOEVEN:  SUBJECT TO THE

14     DEMONSTRATIVE OBJECTION, NO FURTHER OBJECTION.

15            THE COURT:  THAT'S ADMITTED.  AND I'M

16     SORRY, CAN YOU REPEAT.

17            MS. KREVANS:  158-A, YOUR HONOR.

18            THE COURT:  ALL RIGHT.  THANK YOU.

19            (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

20            158-A, HAVING BEEN PREVIOUSLY MARKED FOR

21            IDENTIFICATION, WAS ADMITTED INTO

22            EVIDENCE.)

23                   REDIRECT EXAMINATION

24     BY MS. KREVANS:

25     Q    DR. KARE, WERE YOU ASKED TO GIVE OPINIONS IN
```

1    THIS CASE ABOUT WHETHER INDIVIDUAL ICONS, TAKEN OUT

2    OF THE CONTEXT APPLICATION SCREEN OF SAMSUNG

3    PHONES, WERE SUBSTANTIALLY SIMILAR TO INDIVIDUAL

4    ICONS TAKEN OUT OF THE CONTEXT OF THE IPHONE

5    DESIGN?

6    A    NO.

7    Q    OKAY.  LET ME ASK YOU A COUPLE OF FOLLOW-UPS

8    TO THE QUESTIONS THAT MR. VERHOEVEN DID ASK YOU

9    ABOUT INDIVIDUAL ICONS.

10            FIRST, COULD WE SEE EXHIBIT PX 44 AT PAGE

11   127.

12            ACTUALLY, LET ME STOP ON THE FIRST PAGE.

13   PX 44, THE COVER PAGE, WHAT IS THE DATE OF THIS

14   SAMSUNG DOCUMENT, DR. KARE?

15            MR. VERHOEVEN:  BEYOND THE SCOPE OF

16   CROSS.

17            MS. KREVANS:  YOUR HONOR, I'M JUST

18   ESTABLISHING THE DATE OF THE DOCUMENT AND THEN I'M

19   GOING TO ASK QUESTIONS ABOUT THE SPECIFIC ICONS

20   THAT MR. VERHOEVEN ASKED QUESTIONS ABOUT.

21            THE COURT:  SINCE I'VE JUST ADMITTED THIS

22   DOCUMENT, GO AHEAD.  OVERRULED.

23   BY MS. KREVANS:

24   Q    WAS THE DATE OF EXHIBIT PX 44?

25   A    MARCH 2ND, 2010.

1   PRODUCTS, ANYTHING NEW TO SAY ABOUT THAT, OTHER

2   THAN WHAT YOU SAID BEFORE WHEN YOU WERE ANALYZING

3   THE CONFUSION FACTORS?

4   A    NO.  I THINK IT'S THE SAME EVIDENCE.  THE

5   QUOTES FROM THE BUSINESS PRESS --

6   Q    I'M SORRY?

7   A    THE QUOTES OR REVIEWS OF THE PRODUCTS IN THE

8   BUSINESS PRESS, AS WELL AS MY OWN OPINION.

9            MR. JACOBS:  I'M SORRY.  I'M GOING TOO

10   FAST.

11            YOUR HONOR, AT THIS POINT WE WOULD OFFER

12   PX 6, WHICH IS ANALOGOUS TO PX 5, BUT COVERS THE

13   PHONES AND SIMILARITY OF THE PHONES.

14            THE COURT:  ALL RIGHT.  NOW, I HAD RULED

15   ON THESE SUMMARIES.

16            WERE THESE EXHIBITS TO MR. WINER'S EXPERT

17   REPORT?  I RECALL RULING ON A COMPILATION OF NEWS

18   STORIES FOR FAME AND OVERRULING SAMSUNG'S

19   OBJECTION.

20            I DON'T RECALL A SPECIFIC OBJECTION AS TO

21   THESE PRESS REPORTS ON CONFUSION, SO REMIND ME.

22            MR. JACOBS:  SO YOU RULED ON PX 5 AND PX

23   6 IN CONNECTION WITH BRESSLER.  THE SAME UNDERLYING

24   ARTICLES THAT ARE REPORTED HERE IN THE SUMMARY ARE

25   IN EXHIBITS, RESPECTIVELY, FOR PX 5 AND PX 6, IN

1     EXHIBIT 8 TO WINER AND EXHIBIT 7 TO WINER.

2              I'M NOT SURE YOU HAVE IN YOUR FOLDER UP

3     THERE ALL THE EXHIBITS TO DR. WINER'S REPORT.

4              THE COURT:  WELL, ON BRESSLER, PX 5 AND

5     PX 6, I SUSTAINED IT AS TO ANY ARTICLES THAT WERE

6     NOT PART OF HIS REPORT.  IT LOOKS LIKE THREE OF THE

7     NINE ARTICLES WERE NOT IN HIS REPORT.

8              SO ARE YOU SAYING PX 5 AND PX 6, THE

9     WINER EXHIBITS ARE THE SAME AS PX 5 AND PX 6 ON

10    BRESSLER?

11             MR. JACOBS:  NO.  THE EXHIBITS ARE

12    DIFFERENT AND ALL OF THE ARTICLES CITED ARE IN THE

13    EXHIBITS TO WINER.

14             THE COURT:  I'M SORRY.  SAY THAT AGAIN.

15             MR. JACOBS:  ALL OF THE ARTICLES IN PX 5

16    AND PX 6, TO BE PRECISE, ALL OF THE ARTICLES

17    SUMMARIZED IN PX 5 AND PX 6 ARE REFERRED TO IN,

18    RESPECTIVELY, EXHIBITS 8 AND 7 OF WINER'S OPENING

19    REPORT.

20             MR. VERHOEVEN:  YOUR HONOR, THIS IS

21    MR. VERHOEVEN.  IF I MAY SAY ONE THING?

22             THE COURT:  UM-HUM.  YOU KNOW, I GUESS

23    I'M NOT CLEAR WHY SOME OF THIS WASN'T RAISED DURING

24    OUR 8:30 MEETING THIS MORNING.  I UNDERSTAND THAT I

25    HAVE LIMITED YOUR OBJECTIONS TO TWO, BUT WHEN I

1    ASKED IN THE MORNING IF THERE ARE ANY OBJECTIONS,

2    I'D LIKE PEOPLE TO SAY THIS SO WE DON'T HAVE TO

3    WASTE THE JURY'S TIME.

4              MR. VERHOEVEN:  YOUR HONOR, JUST BY WAY

5    OF EXPLANATION.

6              THE COURT:  YEAH.

7              MR. VERHOEVEN:  THERE'S A LIMITING

8    INSTRUCTION, I BELIEVE, ASSOCIATED WITH THESE AND

9    THEY ACTUALLY, WITH MR. BRESSLER --

10             THE COURT:  BECAUSE IT'S NOT --

11             MR. VERHOEVEN:  WE OBJECTED TO THE USE OF

12   THEM FOR THE TRUTH AND YOUR HONOR SUSTAINED THAT

13   DURING THE EXAMINATION.

14             THE COURT:  BUT YOU'RE NOW SAYING YOU'RE

15   OBJECTING EVEN WITH THE LIMITING INSTRUCTION?

16             MR. VERHOEVEN:  NO.  I -- I'M ALERTING

17   THE COURT THAT, IN FACT, WHEN THESE WERE PROVIDED

18   THE FIRST TIME, THEY WERE WHILE THE WITNESS WAS

19   TALKING ABOUT SIMILARLY OF ADDRESS, AND THERE'S NO

20   OTHER USE FOR THEM BUT FOR THE TRUTH, WHICH WOULD

21   VIOLATE YOUR HONOR'S LIMITING INSTRUCTION.

22             THE COURT:  OVERRULED.  AS LONG AS A

23   LIMITING INSTRUCTION IS THAT THEY'RE NOT OFFERED

24   AND THEY SHOULD NOT BE CONSIDERED, THE CONTENTS

25   SHOULD NOT BE CONSIDERED FOR THE TRUTH, THEY'RE

```
 1    ADMITTED.  THE OBJECTION'S OVERRULED.
 2              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBERS 5
 3              AND 6, HAVING BEEN PREVIOUSLY MARKED FOR
 4              IDENTIFICATION, WAS ADMITTED INTO
 5              EVIDENCE.)
 6         MR. JACOBS:  THANK YOU, YOUR HONOR.
 7    Q    DID YOU LOOK AT SAMSUNG'S INTERNAL DOCUMENTS
 8    WITH RESPECT TO THE PHONES TO DETERMINE WHETHER
 9    SAMSUNG HAD INTENDED TO ASSOCIATE ITSELF WITH THE
10    IPHONE TRADE DRESS?
11    A    YES, I DID.
12    Q    AND CAN WE LOOK AT -- CAN YOU TAKE A LOOK,
13    PLEASE, AT PX 36.  WHAT IS PX 36?
14    A    THIS IS A REPORT BY A CONSULTING FIRM CALLED
15    GRAVITY TANK TITLED "TOUCH PORTFOLIO," ROLL OUT
16    STRATEGY, RECOMMENDATION BASED ON CONSUMER INSIGHT
17    DATED DECEMBER 17TH, 2008.
18    Q    AND DID YOU LOOK AT THIS DOCUMENT IN
19    CONNECTION WITH YOUR ANALYSIS?
20    A    YES, I DID.
21              MR. JACOBS:  YOUR HONOR, WE WOULD OFFER
22    PX 36 INTO EVIDENCE.
23              MR. VERHOEVEN:  OBJECTION, YOUR HONOR.
24    FIRST OF ALL, RELEVANCE.
25              THIS DOCUMENT CONCERNS RECOMMENDATIONS
```

1    RELATING TO FUNCTIONALITY OF TOUCHSCREENS, WHICH IS

2    NOT RELEVANT TO APPLE'S TRADE DRESS CLAIMS, SO IT'S

3    NOT RELEVANT TO -- TO THIS WITNESS'S SCOPE OF

4    TESTIMONY.

5              THERE'S ALSO NO FOUNDATION.

6              THE COURT:  IT'S A SAMSUNG DOCUMENT.

7              OVERRULED.

8              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

9              5636, HAVING BEEN PREVIOUSLY MARKED FOR

10             IDENTIFICATION, WAS ADMITTED INTO

11             EVIDENCE.)

12   BY MR. JACOBS:

13   Q    5636 IS ON THE SCREEN NOW AS AN ADMITTED

14   DOCUMENT, DR. WINER.

15             AND WE SHOULD TURN TO PX -- ACTUALLY,

16   LET'S GET TO THE SLIDE PDX 2811.  AND AMONG THE

17   THINGS, AMONG THE ITEMS IN THIS DOCUMENT THAT YOU

18   NOTED, WHAT JUMPED OUT AT YOU ABOUT THIS PARTICULAR

19   PAGE?

20   A    WELL, I THINK THAT THIS IS A COMPARISON OF

21   DIFFERENT PRODUCTS, NOKIA, AS YOU CAN SEE, APPLE,

22   SAMSUNG, AND ON A NUMBER OF DIMENSIONS, INCLUDING

23   USER INTERFACE, ET CETERA.

24             AND THE CALL OUT SAYS APPLE SETS THE

25   STANDARD FOR SCREEN CENTRIC DESIGN.

```
 1              AGAIN, THAT SUPPORTS MY POSITION THAT
 2    SAMSUNG EXECUTIVES VIEWED APPLE, IPHONE IN THIS
 3    CASE, AS A TARGET PRODUCT AGAINST WHICH THEY WERE
 4    TRYING TO COMPARE THEMSELVES AND EMULATE.
 5    Q    AND NOW IF WE TURN -- IF WE GET TO SLIDE PDX
 6    28.12 UP, PLEASE.
 7              MR. VERHOEVEN:  YOUR HONOR, THIS HAS GOT
 8    SOME SORT OF BRACKETED INFORMATION PULLED OUT.  I
 9    NEED TO VERIFY, BEFORE THIS GOES UP, THIS IS THE
10    ACTUAL DOCUMENT.
11              MR. JACOBS:  YOUR HONOR, THEY'VE HAD
12    THESE DEMONSTRATIVES SINCE OUR DISCLOSURE OF THE
13    DEMONSTRATIVES.
14              THE COURT:  I KNOW.  OVERRULED.  LET'S
15    KEEP GOING.
16    BY MR. JACOBS:
17    Q    SO WHAT JUMPED OUT AT YOU ABOUT THIS
18    PARTICULAR PAGE?
19    A    IT SAYS, "PEOPLE DON'T THINK THAT THE
20    INDUSTRIAL DESIGN OF SAMSUNG TOUCH PHONES ARE
21    GROUNDBREAKING.  NOTHING STANDS OUT AS SOMETHING
22    CONSUMERS HAVE NEVER SEEN."
23    Q    AND IF YOU LOOK ON THE PORTION THAT'S NOT
24    HIGHLIGHTED, CAN YOU JUST READ, WHILE LIKED, NO
25    PHONE MAKES A DESIGN STATEMENT, UNDER THAT HEADING,
```

1528

1    PLEASE?

2    A    IT SAYS, "PEOPLE GENERALLY HAVE POSITIVE

3    COMMENTS ABOUT THE INDUSTRIAL DESIGN OF SAMSUNG

4    TOUCH PHONES, BUT DON'T THINK THEY ARE

5    GROUNDBREAKING.  NOTHING STANDS OUT AS SOMETHING

6    CONSUMERS HAVE NEVER SEEN.  CONSUMERS FEEL THEY

7    LOOK TOO PLAIN, TOO EXTREME, OR TOO MUCH LIKE OTHER

8    SAMSUNG PHONES."

9    Q    AND WHAT STRUCK YOU ABOUT THIS DISCUSSION OF

10   THE INDUSTRIAL DESIGN OF SAMSUNG SMARTPHONES?

11   A    SIMILARLY, THEY ARE VIEWING THE IPHONE AS A

12   TARGET AND SOMETHING TO EMULATE AND ACKNOWLEDGING

13   SOME ISSUES THEY HAD WITH THEIR OWN PHONES.

14        AND SO MY CONCLUSION IS THAT THEY ARE

15   GOING TO USE THIS KIND OF ANALYSIS TO IMPROVE THEIR

16   OWN PRODUCTS.

17   Q    THE BOTTOM LINE, DR. WINER, DO YOU BELIEVE

18   THAT THE SALE OF SAMSUNG'S GALAXY S PHONES IS

19   LIKELY TO DILUTE THE DISTINCTIVENESS OF APPLE'S

20   IPHONE TRADE DRESSES?

21   A    YES, I DO.

22        MR. JACOBS:  THANK YOU VERY MUCH,

23   DR. WINER.

24        THE COURT:  ALL RIGHT.  IT'S 2:24.

25   PLEASE GO AHEAD WITH THE CROSS.

```
 1              MR. VERHOEVEN:  YOUR HONOR, IF I CAN HAVE

 2    JUST TEN MINUTES, I CAN REALLY SHORTEN IT.  I

 3    WASN'T SURE HOW MUCH -- HOW LONG THE DIRECT WOULD

 4    BE.  I THINK IT WOULD BE USEFUL.  SO I WOULD

 5    SUGGEST WE TAKE OUR AFTERNOON BREAK NOW IF YOUR

 6    HONOR IS WILLING TO.  OTHERWISE I CAN GO, BUT

 7    OTHERWISE --

 8              THE COURT:  WE'RE GOING TO GO NOW.  WE'RE

 9    GOING TO GO UNTIL 2:45 AND TAKE OUR BREAK.

10              MR. VERHOEVEN:  YES, YOUR HONOR.

11              (PAUSE IN PROCEEDINGS.)

12              THE COURT:  HOW IS THIS DIFFERENT FROM

13    THE WINER CROSS I GOT YESTERDAY?  IS THAT THE SAME

14    OR DIFFERENT?

15                       CROSS-EXAMINATION

16    BY MR. VERHOEVEN:

17    Q    GOOD AFTERNOON, DR. WINER.

18    A    GOOD AFTERNOON, COUNSEL.

19    Q    MY NAME IS CHARLES VERHOEVEN, AND I'LL BE

20    EXAMINING YOU.

21              NOW, YOU'VE BEEN -- YOU WERE ENGAGED,

22    HIRED TO WORK ON THIS CASE FOR APPLE THROUGH A

23    COMPANY CALLED CORNERSTONE RESEARCH?

24    A    THAT'S CORRECT.

25    Q    AND CORNERSTONE RESEARCH IS A LITIGATION
```

1530

```
 1   SUPPORT COMPANY; RIGHT?

 2   A    THAT'S CORRECT.

 3   Q    THEY CONSULT DIRECTLY WITH ATTORNEYS ON

 4   LITIGATION MATTERS?

 5   A    YES, THEY DO.

 6   Q    AND THEY HELP FACILITATE CLIENTS TO FIND

 7   EXPERT WITNESSES FOR LITIGATION; RIGHT?

 8   A    THAT'S CORRECT.

 9   Q    AND THAT'S HOW YOU BECAME INVOLVED IN THIS

10   CASE?

11   A    YES.  I WAS CONTACTED BY SOMEONE AT

12   CORNERSTONE.

13   Q    NOW, AND YOU ACCEPTED THE ASSIGNMENT?

14   A    I SURE DID.

15   Q    OKAY.  AND WHEN YOU WERE HIRED AS AN EXPERT ON

16   THIS CASE, THERE WERE -- CORNERSTONE HAD A STAFF OF

17   FOLKS THAT ASSISTED YOU WITH THE PREPARATION OF

18   YOUR EXPERT REPORT?

19   A    THAT'S CORRECT.

20   Q    AND, IN FACT, CORNERSTONE -- THE FOLKS AT

21   CORNERSTONE SUBSTANTIALLY WROTE THE FIRST DRAFT OF

22   YOUR REPORT; RIGHT?

23   A    I GAVE SUBSTANTIAL INPUT AND APPROVED

24   EVERYTHING IN IT, BUT THEY WROTE THE FIRST DRAFT.

25   Q    OKAY.  SO WHO WAS IT?
```

1    A    THE LEAD PERSON AT CORNERSTONE.  HIS NAME IS

2    SHANKAR, S-H-A-N-K-A-R, IYER, I-Y-E-R.

3    Q    SINCE 2000 -- SINCE THE YEAR 2000, YOU'VE

4    SERVED AS AN EXPERT WITNESS ON AT LEAST 14 OTHER

5    LITIGATION MATTERS; RIGHT?

6    A    THAT MIGHT BE CORRECT.  I HAVEN'T COUNTED.

7    Q    AND YOU'RE BEING PAID FOR YOUR TIME IN THIS

8    CASE; RIGHT?

9    A    CORRECT.

10   Q    TELL THE JURY HOW MUCH YOU'RE BEING PAID?

11   A    SIX HUNDRED AND TWENTY-FIVE DOLLARS AN HOUR.

12   Q    AND HOW MUCH MONEY HAS APPLE PAID YOU SO FAR?

13   A    APPROXIMATELY $50,000.

14   Q    AND HOW MUCH TOTAL HAS IT PAID CORNERSTONE?

15   A    I HAVE NO IDEA.

16   Q    NOW, IN REACHING YOUR OPINIONS IN YOUR EXPERT

17   REPORT, YOU DID NOT DO ANY SYSTEMATIC CONSUMER

18   RESEARCH, DID YOU, SIR?

19   A    I DID NOT CONDUCT ANY NEW STUDIES BEYOND WHAT

20   WAS ALREADY DONE FOR THE CASE.

21   Q    YOU, YOURSELF, DID NOT PERSONALLY CONDUCT ANY

22   SYSTEMATIC CONSUMER RESEARCH; FAIR?

23   A    THAT'S CORRECT.

24   Q    YOU DIDN'T DO ANY FORMAL INTERVIEWS WITH

25   CONSUMERS ABOUT THEIR PURCHASING EXPERIENCES;

1    RIGHT?

2    A    THAT'S CORRECT.

3    Q    AND YOU HAVE NO EVIDENCE THAT CONSUMERS IN THE

4    REAL WORLD HAVE ACTUALLY BOUGHT APPLE DEVICES

5    THINKING THEY ARE SAMSUNG DEVICES; RIGHT?

6             MR. JACOBS:  YOUR HONOR, OPENING THE

7    DOOR.  MR. LEE'S TESTIMONY THAT YOUR HONOR EXCLUDED

8    THIS MORNING, MR. VERHOEVEN HAS JUST ASKED THIS

9    WITNESS WHETHER HE HAS ANY ACTUAL EVIDENCE OF

10   CONSUMER CONFUSION AND THIS WITNESS DOES.

11            MR. VERHOEVEN:  LET ME, LET ME ASK YOU --

12   Q    AT YOUR DEPOSITION -- DO YOU REMEMBER YOUR

13   DEPOSITION WAS TAKEN ON APRIL 27TH?

14   A    I REMEMBER BEING DEPOSED.  I DON'T REMEMBER

15   THAT DATE, BUT I'LL ASSUME YOU'RE CORRECT.

16   Q    AND DO YOU REMEMBER TESTIFYING THAT YOU HAVE

17   NO EVIDENCE THAT CONSUMERS OUT THERE IN THE REAL

18   WORLD HAVE ACTUALLY BOUGHT APPLE DEVICES THINKING

19   THEY WERE SAMSUNG DEVICES?

20   A    I THINK THAT MY REPLY WAS IN THE CONTEXT OF I

21   DID NOT DO ANY RESEARCH MYSELF THAT PROVED THAT.

22   Q    WELL, LET'S LOOK AT WHAT YOU SAID.

23            CAN WE PLAY DR. WINER'S DEPOSITION

24   TESTIMONY FROM APRIL 27TH, 2012, PAGE 35, LINES 7

25   THROUGH 15.

```
 1              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

 2    OPEN COURT OFF THE RECORD.)

 3              MR. VERHOEVEN:  ALL RIGHT.  LET'S PAUSE

 4    IT AND GET THE VOLUME WORKING.  I APOLOGIZE, YOUR

 5    HONOR.

 6              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

 7    OPEN COURT OFF THE RECORD.)

 8    BY MR. VERHOEVEN:

 9    Q    THAT WAS YOUR TESTIMONY YOU GAVE UNDER OATH IN

10    APRIL, SIR?

11              MR. JACOBS:  YOUR HONOR, UNDER THE RULE

12    OF COMPLETENESS, I BELIEVE WE SHOULD READ A COUPLE

13    MORE PASSAGES DOWN, AND MR. VERHOEVEN HAS OPENED

14    THE DOOR.

15              THE COURT:  I THINK HE'S OPENED THE DOOR,

16    BUT YOU'RE NOT GOING TO DO IT DURING HIS CROSS.

17              THE WITNESS:  I BELIEVE I RESPONDED TO

18    THAT IN THE CONTEXT OF WHETHER I HAD DONE ANY

19    RESEARCH MYSELF.

20              I CERTAINLY HAD READ DOCUMENTS, AND I

21    ALLUDED TO THEM IN MY DEPOSITION, AND MY REPORT,

22    THAT THERE WERE INTERNAL SAMSUNG DOCUMENTS

23    INDICATING REAL CASES OF CONFUSION IN THE

24    MARKETPLACE.

25    BY MR. VERHOEVEN:
```

1    Q    DO YOU STAND BY THE TESTIMONY WE JUST SAW,

2    SIR?

3    A    SURE I DO.

4    Q    OKAY.  THANK YOU.

5         YOU HAVE NO IDEA WHETHER CONSUMERS HAVE

6    ACTUALLY BOUGHT APPLE DEVICES THINKING THEY WERE

7    SAMSUNG DEVICES, HAVE YOU?

8         MR. JACOBS:  YOUR HONOR, I'M SORRY.  THE

9    WITNESS HAS BEEN INSTRUCTED NOT TO -- TO FOLLOW AN

10   EARLIER ORDER OF THE COURT AND MR. VERHOEVEN IS

11   OPENING THE DOOR.  THE WITNESS SHOULD BE INFORMED

12   THAT HE CAN ANSWER THAT QUESTION TRUTHFULLY.

13        MR. VERHOEVEN:  I'LL MOVE ON, YOUR HONOR.

14   Q    DR. WINER, YOU HAVE NO EMPIRICAL EVIDENCE TO

15   SHOW THAT SAMSUNG'S ACTIONS HAVE DILUTED APPLE'S

16   BRAND; RIGHT?

17   A    CORRECT.

18   Q    AND YOU HAVE NO HARD DATA TO SHOW THAT

19   SAMSUNG'S ACTIONS HAVE DILUTED APPLE'S BRAND;

20   RIGHT?

21   A    I WAS NOT ASKED TO DO THAT.

22   Q    YOU HAVE NEVER QUANTIFIED THE AMOUNT OF ANY

23   ALLEGED HARM FROM DILUTION OR LOSS OF ANY KIND TO

24   APPLE AS A RESULT OF SAMSUNG'S ACTIONS; RIGHT?

25   A    CORRECT.

1    Q    YOU HAVE NO EMPIRICAL EVIDENCE THAT SHOWS THAT

2    APPLE HAS ACTUALLY LOST ANY MARKET SHARE AS A

3    RESULT OF SAMSUNG'S SALES OF ITS DEVICES; RIGHT?

4    A    NO.

5    Q    THAT ANSWER IS YOU DON'T HAVE ANY EMPIRICAL

6    EVIDENCE; CORRECT?

7    A    CORRECT.

8    Q    AND YOU DON'T HAVE ANY EVIDENCE THAT

9    QUANTIFIES THE AMOUNT OF ANY LOST MARKET SHARE;

10   CORRECT?

11   A    THAT'S CORRECT.

12   Q    YOU HAVE NO EVIDENCE QUANTIFYING THE NUMBER OF

13   PURCHASERS WHO BOUGHT A SAMSUNG DEVICE IN LIEU OF

14   BUYING AN APPLE DEVICE; RIGHT?

15   A    I KNOW OF AT LEAST ONE.

16   Q    YOU CAN'T QUANTIFY THE NUMBER OF PURCHASERS

17   WHO BOUGHT A SAMSUNG DEVICE IN LIEU OF BUYING AN

18   APPLE DEVICE; RIGHT?

19   A    AS FAR AS I KNOW, ONE IS A QUANTIFICATION,

20   COUNSELOR.

21   Q    OKAY.  LET'S SEE WHAT YOU SAID IN RESPONSE TO

22   THAT AT YOUR DEPOSITION, SIR.  PAGE NOTE NOTE LINE

23   CITE.

24            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

25   OPEN COURT OFF THE RECORD.)

255 36

```
 1    BY MR. VERHOEVEN:

 2    Q    YOU WERE ASKED THAT QUESTION AND YOU GAVE THAT

 3    ANSWER AT YOUR DEPOSITION; RIGHT, SIR?

 4    A    APPARENTLY SO.

 5    Q    DO YOU STAND BY THAT TESTIMONY?

 6    A    YES.

 7    Q    WILL HE ME SWITCH SUBJECTS NOW.

 8              IN YOUR MARCH 22ND, 2012 EXPERT REPORT AT

 9    PAGE 160, YOU REFER TO WHAT YOU CALL A SLEEKCRAFT

10    FACTOR, NUMBER 6, DEGREE OF CARE WITH RESPECT TO

11    THE IPAD.

12              CAN WE PUT UP PARAGRAPH 160 FROM

13    DR. WINER'S EXPERT REPORT FROM MARCH 22, PLEASE.

14              CAN YOU PUSH THAT DOWN SO I CAN SEE WHERE

15    IT WAS PULLED OUT FROM, MR. FISHER?  GO BACK.

16              OKAY.  SO CAN WE -- THAT'S WHAT I'M

17    LOOKING FOR, 160.

18              DO YOU SEE IT SAYS SLEEK, SLEEK -- YOU

19    HAVE IT IN YOUR BINDER AS WELL, SIR?

20    A    YES, I DO HAVE IT.

21    Q    SLEEK -- SLEEKCRAFT FACTOR SAYS, "TYPES OF

22    GOODS AND," THIS IS WHAT I'M GOING TO FOCUS ON

23    HERE, THE REST OF THIS, "AND THE DEGREE OF CARE

24    LIKELY TO BE EXERCISED BY THE PURCHASER."

25              DO YOU SEE THAT?
```

```
 1    A    I DO.

 2    Q    AND SO THE DEGREE OF CARE, YOU'D AGREE WITH

 3    ME, THAT THE HIGHER THE DEGREE OF CARE EXERCISED BY

 4    THE CONSUMER, THE LESS CHANCE THERE IS GOING TO BE

 5    THAT THERE'S CONFUSION OR DILUTION; RIGHT?

 6    A    FOR ANY INDIVIDUAL CONSUMER, THAT WOULD BE

 7    TRUE.

 8    Q    SO IF IT'S LIKE A 50 CENTS DOODAD IN THE

 9    GROCERY STORE THAT PEOPLE MIGHT PICK UP, THE DEGREE

10    OF CARE WOULD BE REALLY LOW, RIGHT?

11    A    YOU WOULD BE SURPRISED, BUT I WOULD AGREE THAT

12    IT WOULD BE, OVERALL, LOWER THAN FOR A $600 ITEM OR

13    $300 ITEM.

14    Q    OR TO GET REALLY CONTRASTING, A NEW CAR WOULD

15    BE SOMETHING THAT WOULD BE VERY EXPENSIVE FOR A LOT

16    OF PEOPLE, YOU'LL HAVE TO PAY FOR IT OVER A NUMBER

17    OF YEARS, SO THEY'LL BE REALLY CAREFUL WHEN THEY

18    BUY THAT, RIGHT?

19    A    I JUST DON'T WANT TO USE GENERALITIES.  I

20    WOULD SAY THAT THERE ARE ALWAYS SEGMENTS OF

21    CONSUMERS WHO TAKE MORE OR LESS CARE IN MAKING

22    PURCHASES OF PRODUCTS.

23         SOME MARKETING, WE DON'T WORK WITH THE

24    NOTION OF THERE BEING A MARKET.  WE WORK WITH THE

25    IDEA THAT THERE ARE SEGMENTS AND DIFFERENT KINDS OF
```

2538

1    CUSTOMERS.

2              SO WHILE THE RATIONAL -- YOU KNOW,

3    EXPLANATION OF PURCHASING WOULD BE, YES, PEOPLE

4    TAKE A LOT OF CARE EVEN IN BUYING CARS.  THE FACT

5    IS THAT EVEN THAT WILL VARY OVER CONSUMERS IN TERMS

6    OF HOW MUCH INFORMATION THEY USE, HOW MANY

7    DEALERSHIPS THEY VISIT AND THE WHOLE RANGE OF

8    INFORMATION AND COLLECTION ACTIVITIES.

9    Q    FAIR ENOUGH.  DIFFERENT CONSUMERS EXHIBIT

10   DIFFERENT BEHAVIORS; RIGHT?

11   A    THAT'S WHAT I'M SAYING.

12   Q    BUT SETTING THAT ASIDE, GENERALLY SPEAKING,

13   WHEN WE'RE TALKING ABOUT THIS FACTOR HERE, IF IT'S

14   A MORE EXPENSIVE ITEM, ON AVERAGE, CONSUMER WILL

15   EXERCISE MORE CARE; RIGHT?

16   A    ONE WOULD EXPECT THAT.

17   Q    THAT MEANS THERE'S LESS CHANCE OF CONFUSION,

18   RIGHT?

19   A    LESS, BUT NOT ZERO.

20   Q    SO IF WE SWITCH TO WHAT WE'RE TALKING ABOUT

21   HERE, I'M HOLDING IN MY HAND ACCUSED SAMSUNG

22   TAB 10.1, WHICH IS EXHIBIT, TRIAL JOINT EXHIBIT

23   1037, YOU'VE SEEN THIS DOCUMENT, THIS --

24   A    IT'S NOT TURNED ON, BUT I'LL ASSUME THAT

25   YOU'RE CORRECT.

```
1    Q    HAVE YOU EVER SEEN AN APPLICATION MENU THAT

2    WASN'T A COLORFUL ROW OF ROWS AND COLUMNS OF ICONS,

3    SIR, AND IF SO, CAN YOU TELL ME WHAT IT WAS?

4    A    I, I CAN'T ANSWER THAT.  I HAVEN'T DONE AN

5    EXHAUSTIVE EXPLORATION OF ALL OF THESE TABLETS.

6    YOU MAY BE RIGHT.  YOU MAY BE WRONG.

7              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.  I

8    HAVE NO FURTHER QUESTIONS AT THIS TIME.

9              THE COURT:  ALL RIGHT.  TIME IS 3:38.

10   ANY REDIRECT?

11             MR. JACOBS:  JUST A QUICK MOMENT, YOUR

12   HONOR.

13             THE COURT:  ALL RIGHT.  3:38.  GO AHEAD,

14   PLEASE.

15             (PAUSE IN PROCEEDINGS.)

16             MR. JACOBS:  CAN WE HAVE THAT LAST

17   DEMONSTRATIVE UP AGAIN, PLEASE.

18             MR. LEE, CAN YOU DO A WEB SEARCH FOR THE

19   SONY S1?

20             MR. VERHOEVEN:  YOUR HONOR, IF WE'RE

21   GOING TO BE PULLING UP IMAGES FROM THE WEB THAT

22   HAVEN'T BEEN DISCLOSED, I'LL OBJECT.  WE HAD

23   DISCLOSURE REQUIREMENTS IN THIS CASE FOR BOTH CROSS

24   AND DIRECT.

25             THE COURT:  WHERE IS THIS GOING?
```

2576

1          MR. JACOBS:  I BELIEVE MR. VERHOEVEN PUT

2    UP HIGHLY MISLEADING PICTURES OF THE SONY S1.  IN

3    FACT, IT HAS A SURFACED AND ELABORATED DESIGN TO

4    IT.  IN FACT, HERE IT IS.

5          MR. VERHOEVEN:  YOUR HONOR, I PUT UP A

6    PICTURE FROM AN INTERNAL APPLE DOCUMENT.

7                **FURTHER REDIRECT EXAMINATION**

8    BY MR. JACOBS:

9    Q    DR. WINER, HAVE YOU SEEN THE SONY S1 BEFORE?

10   A    NO, I HAVE NOT.

11         MR. JACOBS:  THANK YOU.  I HAVE NO

12   FURTHER QUESTIONS, YOUR HONOR.

13         THE COURT:  IT'S 3:39.  ANY RECROSS?

14         MR. VERHOEVEN:  NO, YOUR HONOR.

15         THE COURT:  MAY THIS WITNESS BE EXCUSED,

16   AND IS IT SUBJECT TO HIS RECALL OR NOT?

17         MR. VERHOEVEN:  SUBJECT TO RECALL, YOUR

18   HONOR.

19         THE COURT:  ALL RIGHT.  YOU'RE SUBJECT TO

20   RECALL.

21         CALL YOUR NEXT WITNESS, PLEASE.

22         MR. JACOBS:  YOUR HONOR, WE CALL MR. HAL

23   PORET.

24         THE CLERK:  RAISE YOUR RIGHT HAND,

25   PLEASE.

1                          **HAL PORET,**

2       BEING CALLED AS A WITNESS ON BEHALF OF THE

3       PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS

4       EXAMINED AND TESTIFIED AS FOLLOWS:

5                  THE WITNESS:  YES, I DO.

6                  THE COURT:  WOULD YOU HAVE A SEAT,

7       PLEASE.

8                  AND STATE YOUR NAME AND SPELL IT.

9                  THE WITNESS:  HAL, H-A-L, PORET,

10      P-O-R-E-T.

11                 THE COURT:  IT'S 3:40.  GO AHEAD.

12                    **DIRECT EXAMINATION**

13      BY MR. JACOBS:

14      Q    GOOD AFTERNOON, MR. PORET.  WE'RE GOING TO

15      TALK VERY CLEAR BECAUSE WE'RE ON THE CLOCK.

16      A    GOOD AFTERNOON.

17      Q    WHAT DID WE ASK YOU TO DO IN THIS CASE?

18      A    TO DESIGN AND CONDUCT CONSUMER SURVEYS TO

19      DETERMINE WHETHER OR NOT THE IPHONE AND THE IPAD

20      TRADE DRESS HAVE ACQUIRED SECONDARY MEANING.

21      Q    WHAT DO YOU MEAN BY THAT?

22      A    SECONDARY MEANING WOULD MEAN THAT THE OVERALL

23      LOOK OF THESE PRODUCTS HAS BECOME KNOWN TO

24      CONSUMERS SO THAT WHEN THEY SEE THE LOOK OF THE

25      PRODUCT, THEY CAN TELL IT'S AN APPLE PRODUCT.

2578

```
1     Q     WHAT DID YOU CONCLUDE FROM YOUR SURVEYS?

2     A     I CONCLUDED THAT BOTH THE IPHONE AND THE IPAD

3     TRADE DRESS HAVE ACQUIRED SECONDARY MEANING AMONG

4     CONSUMERS.

5     Q     CAN YOU TELL THE JURY A LITTLE BIT ABOUT YOUR

6     BACKGROUND, PLEASE?

7     A     YES.  I HAVE A BACHELOR'S IN MATH FROM UNION

8     COLLEGE; A MASTER'S IN MATH FROM THE STATE

9     UNIVERSITY OF NEW YORK AT ALBANY; AND A J.D. FROM

10    HARVARD.

11               AND I AM CURRENTLY A SENIOR

12    VICE-PRESIDENT AT ORC INTERNATIONAL, WHICH IS A

13    MARKET RESEARCH FIRM.

14    Q     HAVE YOU CONDUCTED SURVEYS, SURVEYS OF THIS

15    GENERAL TYPE, BEFORE?

16    A     YES, I HAVE.

17    Q     HOW MANY DO YOU THINK YOU'VE DONE?

18    A     I'VE DONE BETWEEN 500 AND 500 CONSUMER SURVEYS

19    ACROSS A NUMBER OF AREAS, AND A LOT OF THOSE

20    SURVEYS RELATE TO TRADEMARKS OR TRADE DRESS OR

21    ADVERTISING.

22    Q     LET'S TALK ABOUT YOUR PHONE-RELATED SURVEY

23    FIRST.

24               WHAT WAS YOUR GOAL IN CONDUCTING THE

25    PHONE-RELATED SURVEY?
```

2579

```
1    A    IT WAS TO DETERMINE WHETHER OR NOT THE, THE

2    TRADE DRESS OF THE IPHONE IN GENERAL, AND THE

3    SPECIFIC IPHONE 3G TRADE DRESS HAD A ACQUIRED

4    SECONDARY MEANING AMONG MOBILE PHONE PURCHASERS.

5    Q    AND REMIND THE JURY AGAIN WHAT SECONDARY

6    MEANING MEANS, PLEASE?

7    A    IT WOULD BASICALLY MEANS THAT PEOPLE HAVE COME

8    TO KNOW THE LOOK OF THE IPHONE AND SO THAT WHEN

9    THEY WOULD LOOK AT IT, THEY WOULD BE ABLE TO TELL

10   THAT IT'S AN APPLE PRODUCT OR AN IPHONE JUST FROM

11   THE OVERALL APPEARANCE OF IT.

12   Q    LET'S TURN TO PLAINTIFF'S EXHIBIT PX 23.  IT

13   SHOULD BE IN YOUR BINDER.

14   A    OKAY.

15   Q    AND WHAT IS PX 23?

16   A    THIS CONTAINS THE IMAGES OF BOTH SMARTPHONES

17   AND TABLETS THAT WERE SHOWN TO VARIOUS GROUPS OF

18   CONSUMERS IN THE VARIOUS SURVEYS.

19   Q    SO LET'S FOCUS ON THE PHONE FOR A MOMENT.

20        BUT, YOUR HONOR, WE MOVE PX 23 INTO

21   EVIDENCE.

22        THE COURT:  ANY OBJECTION?

23        MR. PRICE:  NO OBJECTION.

24        THE COURT:  ALL RIGHT.  IT'S ADMITTED.

25        (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
```

2580

```
 1              23, HAVING BEEN PREVIOUSLY MARKED FOR

 2              IDENTIFICATION, WAS ADMITTED INTO

 3              EVIDENCE.)

 4    BY MR. JACOBS:

 5    Q    SO I THINK YOU USED THE WORD STIMULI.  IS THAT

 6    CORRECT, MR. PORET?

 7    A    YES, WE WOULD CALL WHAT WE SHOWED THE SURVEY

 8    RESPONSE STIMULI.

 9    Q    WHAT DO YOU MEAN BY THAT?

10    A    IT MEANS THIS IS WHAT THEY ACTUALLY SAW WHEN

11    THEY WERE TAKING THE SURVEY AND WHAT THEY WERE

12    QUESTIONED ABOUT.

13    Q    CAN YOU EXPLAIN THE STIMULUS HERE.  IT'S NOT

14    ACTUALLY A PICTURE OF AN IPHONE AS ONE WOULD

15    ORDINARILY ENCOUNTER IT.  WHY IS THAT?

16    A    IN THIS INSTANCE, THIS IS AN IPHONE 3G, WHICH

17    SHOWS THE OVERALL APPEARANCE OF IT, BUT WHAT YOU

18    CAN SEE IS THAT WE BLURRED THE SPECIFIC ICONS SO

19    THAT NOBODY WOULD BE ABLE TO TELL THAT THIS IS AN

20    IPHONE JUST BY LOOKING AT A SPECIFIC ICON LIKE, FOR

21    INSTANCE, AN ITUNES ICON, AND WE'VE ALSO COVERED UP

22    THE HOME BUTTON THAT APPEARS IN THE BOTTOM CENTER

23    SO THAT WE'RE TESTING THE OVERALL APPEARANCE OF THE

24    PHONE AND NOT LETTING A SPECIFIC ICON OR THE HOME

25    BUTTON INFLUENCE THE RESULTS.
```

1  Q    COULD WE SEE THE NEXT PAGE, PLEASE, 23.3,

2  MR. LEE.

3          AND WHAT'S THIS, WHAT'S THE DIFFERENCE

4  BETWEEN 2 AND 3, MR. PORET?

5  A    ONE GROUP SAW THE PREVIOUS ONE AND ONE GROUP

6  SAW THIS ONE.  THE ONLY DIFFERENCE IS THAT THE

7  ICONS HAVE BEEN RANDOMLY SCRAMBLED IN TERMS OF

8  THEIR ORDER, AND THAT WAS REALLY JUST TO CONTROL TO

9  MAKE SURE THAT THE ICONS WERE NOT IMPACTING THE

10 RESULTS.

11 Q    NOW, LET'S LOOK AT THE NEXT TWO PAGES OF THIS

12 EXHIBIT, 23.4 AND 23.5.

13          WHAT ARE THESE IMAGES?

14 A    THESE ARE IMAGES THAT WERE SHOWN TO TWO OTHER

15 GROUP NOTICE SURVEY, AND THE SILVER BEZEL THAT'S

16 PART OF THE IPHONE 3G TRADE DRESS HAS BEEN REMOVED.

17          SO THESE GROUPS WERE TESTING THE

18 PERCEPTION OF THE GENERAL IPHONE APPEARANCE WITHOUT

19 THE BEZEL THAT IS SPECIFICALLY PART OF THE 3G TRADE

20 DRESS.

21 Q    NOW, DID YOU GIVE -- DID YOU HAVE ANY OTHER

22 STIMULI?  DID YOU TEST ANY OTHER IMAGES?

23          LET'S TAKE A LOOK AT 6 AND 7?

24 A    YES.  THERE WERE TWO OTHER IMAGES, EACH OF

25 WHICH WAS SHOWN TO A CONTROL GROUP.

2582

1    Q    SO CAN YOU EXPLAIN WHY YOU USE CONTROLS WHEN

2    YOU DO YOUR SURVEY?

3    A    YEAH.  A CONTROL IS LIKE A PLACEBO IN A

4    MEDICAL EXPERIMENT.  YOU'RE GOING TO HAVE ONE GROUP

5    THAT HAS SEEN AN IPHONE AND THEY'VE BEEN ASKED

6    QUESTIONS ABOUT THE IPHONE, AND IF THEY SAY THAT

7    THEY ASSOCIATE THE LOOK OF THAT WITH ONLY APPLE,

8    YOU WANT TO MAKE SURE THAT THEY'RE NOT SIMPLY

9    GUESSING APPLE BECAUSE IT'S A WELL-KNOWN BRAND OR

10   THAT THEY'RE JUST ASSUMING THAT ANY SMARTPHONE WITH

11   A BUNCH OF ICONS IS AN IPHONE.

12            AND THE WAY THAT YOU DO THAT IS THAT YOU

13   SHOW A DIFFERENT GROUP OF PEOPLE A SMARTPHONE WITH

14   A BUNCH OF ICONS LIKE THIS AND YOU ASK THEM THE

15   SAME QUESTIONS AND YOU SEE IF THEY STILL NAME

16   APPLE.

17            AND IF THEY DON'T, OR IF IT'S A MUCH

18   LOWER RATE, THEN YOU KNOW THAT YOUR RESULTS IN THE

19   OTHER GROUPS ARE RELIABLE.

20   Q    AND HOW DID YOU CONDUCT THIS SURVEY?

21   A    THIS WAS AN ON-LINE SURVEY, WHICH IS A VERY

22   COMMON STANDARD FORM OF SURVEY IN MARKET RESEARCH

23   TODAY.

24            SO THE RESPONSIBLE DEPARTMENTS WERE

25   SEEING AN IMAGE OF A PHONE ON A COMPUTER SCREEN AND

```
1     THEY WERE ANSWERING THE QUESTIONS SCREEN BY SCREEN

2     THROUGH A WEBSITE.

3     Q    AND ARE THE VARIOUS WAYS TO CONTROL THE

4     QUALITY, FOR THE QUALITY OF AN ON-LINE SURVEY LIKE

5     THIS?

6     A    YES, THERE ARE A NUMBER OF STANDARD PROCEDURES

7     TO ENSURE THE QUALITY OF IT.

8     Q    AND WERE THOSE USED HERE?

9     A    YES.

10    Q    NOW, ONCE A RESPONDENT, A SURVEY RESPONDENT

11    SAW ONE OF THESE PICTURES, WHAT WERE THEY ASKED?

12    A    THEY WERE FIRST ASKED, HAVE YOU EVER SEEN A

13    MOBILE PHONE WITH AN APPEARANCE LIKE THIS ONE?

14         AND IF THEY SAID YES, THEY WERE THEN

15    ASKED WHETHER OR NOT THEY ASSOCIATE THE OVERALL

16    APPEARANCE OF THE PHONE WITH ANY PARTICULAR BRAND

17    OR COMPANIES.

18         AND IF THEY SAID, YES, I DO, THEN THEY

19    WERE ASKED, DO YOU ASSOCIATE THE OVERALL APPEARANCE

20    OF THE PHONE WITH ONLY ONE BRAND OR COMPANY OR WITH

21    MORE THAN ONE, OR IF THEY HAVE NO OPINION, AND IF

22    THEY SAID I ASSOCIATE THE APPEARANCE OF THE PHONE

23    WITH ONLY ONE COMPANY OR BRAND, THEY WERE THEN

24    ASKED WHAT BRAND OR COMPANY.

25    Q    BY THE WAY, WHEN WAS THIS SURVEY CONDUCTED?
```

1    A     IN JUNE OF 2011.

2    Q     NOW, LET'S TAKE A LOOK AT, MR. LEE, PDX 30.2.

3    AND YOU REFERRED TO THIS QUESTION EARLIER.  CAN YOU

4    JUST AGAIN EXPLAIN TO THE JURY THE RESPONSE OF THIS

5    PARTICULAR QUESTION.

6    A     FOR THE PEOPLE WHO HAVE INDICATED THAT THEY DO

7    RECOGNIZE THE LOOK OF THE PHONE AND ASSOCIATE IT

8    WITH ONLY ONE COMPANY, THIS WAS THE QUESTION WHERE

9    WE ASKED THEM, WHAT IS THAT COMPANY OR BRAND THAT

10   THEY ASSOCIATE THE APPEARANCE OF THE PHONE WITH.

11   Q     NOW LET'S LOOK AT PDX 30.3.

12          AND DOES THIS SLIDE ACCOUNT FOR THE

13   RESULTS OF YOUR SURVEY?

14   A     YES.

15   Q     CAN YOU DESCRIBE THOSE RESULTS FOR THE JURY,

16   PLEASE?

17   A     YES.  AMONG THE GROUPS WHO SAW THE IPHONE 3G

18   TRADE DRESS WITH THE SILVER BEZEL, 68 PERCENT OF

19   THEM ANSWERED THAT THEY ASSOCIATE THE OVERALL

20   APPEARANCE OF THAT PHONE WITH ONLY ONE COMPANY, OR

21   BRAND, AND NAMED APPLE OR IPHONE.

22          AND IN THE CASE OF THOSE WHO SAW THE

23   IPHONE GENERAL TRADE DRESS WITHOUT THE BEZEL, IT

24   WAS 61 PERCENT.

25   Q     AND THEN YOU SUBTRACTED THE, THE PLACEBO

1    RESPONDENTS, RIGHT, THE CONTROL RESPONDENTS?

2    A    YES.  WHAT YOU CAN SEE IS BETWEEN THE TWO

3    CONTROL GROUPS, THE AVERAGE AS ONLY 3.7 PERCENT WHO

4    SAID THEY ASSOCIATED THE LOOK OF ANY OF THOSE WITH

5    APPLE, AND WHAT THAT SHOWS YOU IS THAT SINCE THAT'S

6    THE 68 PERCENT AND THE 61 PERCENT NUMBERS ARE SO

7    MUCH HIGHER, THAT THOSE RELIABLY MEASURED

8    RECOGNITION AND ASSOCIATION WITH APPLE AND CAN'T BE

9    DISMISSED AS, AS GUESSING.

10   Q    AND WHAT IS YOUR BOTTOM LINE ABOUT THE RESULTS

11   OF THIS SURVEY IN TERMS OF THE QUESTION WE ASKED

12   YOU TO LOOK AT?

13   A    THESE ARE HIGH PERCENTAGES THAT INDICATE THAT

14   THE IPHONE TRADE DRESS HAS A VERY HIGH LEVEL OF

15   RECOGNITION AND ASSOCIATION WITH ONLY APPLE,

16   MEANING IT HAS ACQUIRED SECONDARY MEANING.

17   Q    NOW LET'S TALK ABOUT YOUR TABLET SURVEY.

18        WHAT WAS THE GOAL OF YOUR TABLET SURVEY?

19   A    IT WAS TO DETERMINE WHETHER OR NOT THE IPAD

20   TRADE DRESS HAS ACQUIRED SECONDARY MEANING.

21   Q    LET'S GO BACK TO PX 23 IN YOUR BINDER.  AND

22   LET'S LOOK AT 23.8 AND 23.9.

23        WHAT DO THESE REPRESENT?

24   A    SO AS WITH THE PHONE SURVEY, THERE WERE

25   SEVERAL GROUPS IN THIS SURVEY, AND THESE WERE THE

```
 1    IMAGES OF IPADS THAT WERE SHOWN TO TWO OF THE

 2    SURVEY GROUPS.

 3              AND, AGAIN, YOU WILL SEE THAT THE ICONS

 4    HAVE BEEN BLURRED SO THAT YOU CAN'T SEE WHAT THE

 5    SPECIFIC ICONS ARE, AND THAT THE HOME BUTTON THAT

 6    WOULD BE IN THE BOTTOM CENTER HAS BEEN COVERED SO

 7    THAT THE SURVEYS ARE TESTING THE PERCEPTION OF THE

 8    OVERALL TRADE DRESS AND NOT INFLUENCED BY WHAT THE

 9    SPECIFIC ICONS ARE OR THE HOME BUTTON.

10    Q    AND LET'S LOOK AT 23.10 AND.11.

11              WHAT ARE THESE IMAGES?

12    A    THESE ARE IMAGES THAT WERE SHOWN TO TWO OTHER

13    GROUPS.  AGAIN, EACH GROUP ONLY SAW ONE IMAGE, AND

14    THESE TESTED A DIFFERENT VIEW OF THE IPAD TRADE

15    DRESS WHICH YOU CAN SEE IS SHOWN FROM AN ANGLE AND

16    ALSO HAD TO BE -- THE HOME BUTTON VISIBLE, AND IN

17    THE CASE OF THE PREVIOUS SLIDE ALSO HAD THE ICONS

18    VISIBLE.

19    Q    NOW, WHAT DID YOU -- DID YOU -- I'M SORRY.

20    WHY DID YOU USE THIS SECOND SET OF IMAGES?

21    A    BECAUSE WE ALREADY HAD ONE GROUP THAT WAS

22    MEASURING WHETHER THERE WAS SECONDARY MEANING EVEN

23    WHEN THE ICONS AND THE BUTTON WERE COVERED, AND IT

24    WAS OF INTEREST TO SEE WHAT THE LEVELS WOULD BE

25    WHEN YOU SHOWED IT FROM A DIFFERENT VIEW LIKE THIS.
```

25587

```
1    Q    NOW, DID YOU USE CONTROLS IN YOUR IPAD-RELATED

2    SURVEY?

3    A    YES.

4    Q    AND WHAT WAS YOUR CONTROL?

5    A    THE CONTROL WAS THE BODY OF A NOOK TABLET WITH

6    A FIELD OF ICONS IN THE MIDDLE.

7    Q    SO LET'S LOOK AT 23.12, 23.13, AND 23.14.

8            THIS WAS YOUR CONTROL, SIR?

9    A    YES.  THESE WERE THREE DIFFERENT GROUPS, EACH

10   OF WHICH SAW ONE OF THESE CONTROLS TO PARALLEL THE

11   TEST GROUPS THAT WE SAW WITH THE DIFFERENT VIEWS OF

12   THE IPAD.

13   Q    WHY DID YOU THINK THESE WERE GOOD CONTROLS?

14   A    THEY'RE GOOD CONTROLS BECAUSE THEY CLEARLY

15   LOOK LIKE A TABLET AND THEY HAVE A FIELD OF ICONS

16   VISIBLE ON THE SCREEN.  SO IF THERE IS ANY TENDENCY

17   OF RESPONDENTS TO SIMPLY GUESS THAT ANY TABLET WITH

18   A BUNCH OF ICONS IS AN IPAD, THEN THESE CONTROLS

19   WOULD REVEAL THAT KIND OF GUESSING.

20   Q    SINCE IT MAY NOT BE ENTIRELY VISIBLE, CAN YOU

21   DESCRIBE THE NOOK A LITTLE BIT -- MAYBE WE COULD

22   DIM THE LIGHTS FOR JUST A MOMENT.

23            CAN YOU DESCRIBE WHAT THE FRAME OF THE

24   NOOK IS LIKE AS COMPARED WITH AN IPAD?

25   A    IT -- YOU KNOW, IT'S RECTANGULAR.  IT'S
```

1    SOMEWHAT OF A DIFFERENT OVERALL SHAPE IN THAT IT'S,

2    IT'S THICKER ON THE BOTTOM THAN IT IS ON THE TOP,

3    AND THE GENERAL OVERALL LOOK OF IT IS DIFFERENT

4    FROM THE IPAD.

5    Q    NOW, ONCE THE RESPONDENTS SAW ONE OF THESE

6    IMAGES, WHAT WERE THEY ASKED?

7    A    THEY WERE ASKED THE SAME QUESTIONS THAT I

8    DESCRIBED ABOUT, IN THE PHONE SURVEY, ACCEPT THEY

9    WERE ASKED ABOUT TABLETS INSTEAD OF PHONES.

10   Q    SO LET'S LOOK AT PDX 30.4.  THAT'S THE SAME

11   QUESTION ABOUT ASSOCIATION THAT YOU ASKED IN

12   CONNECTION WITH THE PHONE SURVEY; CORRECT?

13   A    YES.  THIS WOULD BE THE FINAL QUESTION, OR ONE

14   OF THE FINAL QUESTIONS FOR THE PEOPLE WHO SAID THEY

15   DID ASSOCIATE THE LOOK OF THE TABLET WITH ONLY ONE

16   COMPANY OR BRAND, AND THEN WE ASKED THEM WHICH

17   COMPANY OR BRAND.

18   Q    AND NOW LET'S LOOK AT THE RESULTS OF THIS

19   SURVEY.

20        AND CAN YOU DESCRIBE THOSE RESULTS FOR

21   THE JURY, PLEASE?

22   A    YES.  IN THE GROUPS THAT SAW THE FIRST VIEW OF

23   THE IPAD HEAD ON WITH THE ICONS BLURRED AND THE

24   HOME BUTTON COVERED, 57.3 PERCENT ANSWERED THAT

25   THEY ASSOCIATED THE LOOK OF THE TABLET ONLY WITH

1

2

3

4

5                    CERTIFICATE OF REPORTERS

6

7

8          WE, THE UNDERSIGNED OFFICIAL COURT

9    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

19

20                    /S/
                    _____
21                    LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
22

23                    /S/
                    _____
24                    IRENE RODRIGUEZ, CSR, CRR
                    CERTIFICATE NUMBER 8074
25

1          DATED:  AUGUST 7, 2012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25