Pierce Declaration

EXHIBIT 6

1638

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3        SAN JOSE DIVISION

4

5

6   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
    CORPORATION,                  )
                                  )  SAN JOSE, CALIFORNIA
7             PLAINTIFF,          )
                                  )  AUGUST 10, 2012
8         VS.                     )
                                  )  VOLUME 6
9   SAMSUNG ELECTRONICS CO.,      )
    LTD., A KOREAN BUSINESS       )  PAGES 1638-1988
10  ENTITY; SAMSUNG               )
    ELECTRONICS AMERICA,          )
11  INC., A NEW YORK              )
    CORPORATION; SAMSUNG          )
12  TELECOMMUNICATIONS            )
    AMERICA, LLC, A DELAWARE      )
13  LIMITED LIABILITY             )
    COMPANY,                      )
14                                )
              DEFENDANTS.         )
15  _____

16        TRANSCRIPT OF PROCEEDINGS
    BEFORE THE HONORABLE LUCY H. KOH
17     UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
24

25

```
 1   A P P E A R A N C E S:

 2   FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                 BY:  HAROLD J. MCELHINNY
 3                               MICHAEL A. JACOBS
                                 RACHEL KREVANS
 4                          425 MARKET STREET
                           SAN FRANCISCO, CALIFORNIA  94105
 5

 6   FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
     APPLE:                 HALE AND DORR
 7                          BY:  WILLIAM F. LEE
                           60 STATE STREET
 8                          BOSTON, MASSACHUSETTS  02109

 9                          BY:  MARK D. SELWYN
                           950 PAGE MILL ROAD
10                          PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                           OLIVER & HEDGES
12                          BY:  CHARLES K. VERHOEVEN
                           50 CALIFORNIA STREET, 22ND FLOOR
13                          SAN FRANCISCO, CALIFORNIA  94111

14                          BY:  VICTORIA F. MAROULIS
                                 KEVIN P.B. JOHNSON
15                          555 TWIN DOLPHIN DRIVE
                           SUITE 560
16                          REDWOOD SHORES, CALIFORNIA  94065

17                          BY:  MICHAEL T. ZELLER
                                 WILLIAM C. PRICE
18                          865 SOUTH FIGUEROA STREET
                           10TH FLOOR
19                          LOS ANGELES, CALIFORNIA  90017

20                          BY:  EDWARD J. DEFRANCO
                           51 MADISON AVENUE, 22ND FLOOR
21                          NEW YORK, NEW YORK  10010

22

23

24

25
```

1                         INDEX OF WITNESSES

2       PLAINTIFF'S

3       **HAL PORET**
                CROSS-EXAM BY MR. PRICE (RES.)    P. 1665
4               REDIRECT EXAM BY MR. JACOBS       P. 1687

5       **KENT VAN LIERE**
                DIRECT EXAM BY MR. JACOBS         P. 1690
6               CROSS-EXAM BY MR. PRICE           P. 1702

7       **RAVIN BALAKRISHNAN**
                DIRECT EXAM BY MR. JACOBS         P. 1723
8               CROSS-EXAM BY MR. JOHNSON         P. 1769
                REDIRECT EXAM BY MR. JACOBS       P. 1806
9               RECROSS-EXAM BY MR. JOHNSON       P. 1813

10      **KARAN SINGH**
                DIRECT EXAM BY MR. JACOBS         P. 1815
11              CROSS-EXAM BY MR. DEFRANCO        P. 1848
                REDIRECT EXAM BY MR. JACOBS       P. 1909
12

13      **JOHN HAUSER**
                DIRECT EXAM BY MR. JACOBS         P. 1914
14              CROSS-EXAM BY MR. PRICE           P. 1917
                REDIRECT EXAM BY MR. JACOBS       P. 1945
15              RECROSS-EXAM BY MR. PRICE         P. 1948

16      **BORIS TEKSLER**
                DIRECT EXAM BY MR. MUELLER        P. 1951
17              CROSS-EXAM BY MS. MAROULIS        P. 1964

18

19

20

21

22

23

24

25

```
1                          INDEX OF EXHIBITS

2                                    MARKED        ADMITTED

3      PLAINTIFF'S

4      24                                          1692
       24.5                                        1697
5      24.6                                        1699
       24                                          1699
6      1045                                        1729
       64                                          1755
7      46                                          1758
       57                                          1763
8      1023, 1024, 1028, 1036                      1768
       27.9, 27.12, 27.14, 27.16, 27.18           1811
9           27.20, 27.22, 27.24, 27.33
            27.34 - 27.39
10     UNDER SEAL 31                               1811
       UNDER SEAL 27.31                            1812
11     1044                                        1817
       1014, 1009                                  1831
12     29.4, 29.5, 29.6, 29.10, 29.12             1844
       UNDER SEAL 29.13, 29.14, 29.36             1844
13     29.16, 29.18, 29.20 - 29.28,               1844
            29.32, 29.34 - 29.37,
14          29.39, 29.41 - 29.45
       38                                          1845
15     30                                          1915
       52                                          1959
16

17     DEFENDANT'S

18     2534                                        1669
       2528                                        1671
19     2529                                        1686
       2526                                        1722
20     3918.105                                    1795
       66-A, 66-B, 751-A                           1795
21     3918.104, 3918.105, 3918.106               1798
       29.29, 27.30                                1813
22     2557                                        1912
       586                                         1975
23

24

25
```

1    DOCUMENT.

2    BY MR. JACOBS:

3    Q    AND THAT WAS PDX 27.24.  WHAT'S THE NEXT

4    PROBLEM THAT THE '381 PATENT WAS DESIGNED TO SOLVE?

5    A    THE SECOND PROBLEM IS KNOWN IN THE FIELD AS A

6    DESERT FOG PROBLEM.

7         SO THIS IS A BIT OF THE CONVERSE OF THE

8    FROZEN SCREEN PROBLEM IN THAT ONE COULD MANIPULATE

9    THE IMAGE SUCH THAT IT GOES OFF, COMPLETELY OFF THE

10   SCREEN AND YOU'RE LEFT WITH A BLANK SCREEN, WHAT WE

11   WOULD CALL THE DESERT FOG, AND YOU HAVE NO IDEA

12   WHERE THE SCREEN IS RELATIVE TO WHERE THE

13   PHOTOGRAPH IS OUTSIDE THE SCREEN.

14        SO I PREPARED A LITTLE ANIMATION FOR THAT

15   AS WELL.

16        AS YOU CAN SEE, THE PHOTOGRAPH IS TAKEN

17   OFF THE SCREEN, AND NOW THE USER IS MANIPULATING

18   THE DESERT FOG AND IT'S UNCLEAR, ESSENTIALLY THEY

19   PAUSE FOR A MOMENT, HOW TO BRING THAT PHOTOGRAPH

20   BACK ON TO THE SCREEN.

21        SO THESE ARE OF THE TWO KEY PROBLEMS THAT

22   ARE FOUND IN THIS KIND OF NAVIGATION INTERFACE THAT

23   THE '381 PATENT IS FOCUSSED ON SOLVING.

24   Q    AND THAT WAS PDX 27.25.  HOW DOES THE '381

25   PATENT SOLVE THESE TWO PROBLEM PROBLEMS, FROZEN

1    SCREEN AND DESERT FOG?

2    A    THE '381 PATENT SOLVES BOTH THESE PROBLEMS IN

3    ONE FELL SWOOP.  ESSENTIALLY, A, IT SOLVES THE

4    DESERT FOG PROBLEM BY NOT ALLOWING THE PHOTOGRAPH

5    TO GO OFF THE SCREEN COMPLETELY.

6         AND THE FROZEN SCREEN PROBLEM IT SOLVES

7    BY WHEN THE DOCUMENT REACHES THE EDGE, IT ALLOWS A

8    CERTAIN AMOUNT OF MOVEMENT BEYOND THE EDGE, SHOWS

9    AN AREA BEYOND THE EDGE, SO THE USER KNOWS, I'VE

10   REACHED THE EDGE OF THE DOCUMENT, AND THEN WHEN

11   THEY RELEASE THEIR FINGER, IT BOUNCES BACK.

12        IT GIVES NICE FEEDBACK SAYING "YOU'VE

13   REACHED THE EDGE.  THE SYSTEM IS STILL ALIVE.  IT'S

14   NOT FROZEN."

15        I PREPARED AN ANIMATION TO ILLUSTRATE

16   THAT AS WELL.

17        (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

18   OPEN COURT OFF THE RECORD.)

19        THE WITNESS:  AS YOU CAN SEE, YOU'VE

20   REACHED THE EDGE OF THE DOCUMENT.  THE BLACK AREA

21   BELOW IS SHOWN.

22        CAN WE SHOW THAT AGAIN IF YOU DON'T MIND?

23        (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

24   OPEN COURT OFF THE RECORD.)

25        THE WITNESS:  AND WHEN THE USER RELEASES

1  THEIR FINGER, IT BOUNCES BACK.  SO IT GIVES THE

2  ILLUSION OF A VERY LIVELY SYSTEM THAT'S NOT FROZEN

3  BECAUSE THE USER KNOWS WHERE THE EDGES ARE AND IT

4  DOESN'T DISAPPEAR IN THE DESERT FOG.

5  BY MR. JACOBS:

6  Q    WERE THESE PROBLEMS RECOGNIZED IN THE FIELD

7  BEFORE THE '381 PATENT?

8  A    THE TWO PROBLEMS WERE WELL RECOGNIZED IN THE

9  FIELD.  IN FACT, PAPERS WERE PUBLISHED ABOUT IT

10  YEARS BACK.

11  Q    DID ANYONE SOLVE IT BEFORE APPLE?

12  A    NO, IT DID NOT.

13  Q    NOW, DOES THE IPHONE IMPLEMENT CLAIM 19 OF THE

14  '381 PATENT?

15  A    YES, IT DOES.

16  Q    AND HOW DO YOU KNOW THAT?

17  A    I INVESTIGATED THE DIFFERENT IPHONE DEVICES

18  AND TRIED THE FUNCTIONALITY ON THE DIFFERENT

19  DEVICES.

20        I ALSO LOOKED AT THE IPHONE SOURCE CODE

21  TO UNDERSTAND HOW IT'S IMPLEMENTED.

22  Q    SO LET'S LOOK AT 27.7, MR. LEE.

23  A    SO THIS IS A VIDEO OF THE FUNCTIONALITY BEING

24  SHOWED IN THE PHOTOS APPLICATION ON THE IPHONE 3GS.

25  THIS IS THE ACTUAL IPHONE, THE ACTUAL PERSON DOING

```
 1    THE FUNCTIONALITY.

 2              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

 3    OPEN COURT OFF THE RECORD.)

 4              THE WITNESS:  AS YOU CAN SEE, YOU MOVE TO

 5    THE RIGHT, YOU GET TO THE EDGE, IT SHOWS BEYOND THE

 6    EDGE, AND THEN IT BOUNCES BACK.

 7    BY MR. JACOBS:

 8    Q    LET'S SHOW THAT ONE MORE TIME, PLEASE.

 9              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

10    OPEN COURT OFF THE RECORD.)

11              THE WITNESS:  THE USER IS DRAGGING, AN

12    AREA BEYOND THE EDGE IS SHOWN, AND THEN IT BOUNCES

13    BACK.

14    BY MR. JACOBS:

15    Q    LET'S TURN NOW TO SAMSUNG PRODUCTS AND YOUR

16    ANALYSIS OF HOW THEY -- WHETHER THEY INFRINGE CLAIM

17    19 OF THE '381 PATENT, AND LET'S START WITH THE

18    SAMSUNG GALAXY S II AT&T.

19              DOES IT INFRINGE CLAIM 19?

20    A    YES.  THE SAMSUNG GALAXY S II, AT&T VERSION,

21    INFRINGES CLAIM 19 OF THE '381 PATENT.

22    Q    NOW, YOU'VE LISTED HERE ON THE SLIDE THE

23    GALLERY APPLICATION.  WHAT'S THE GALLERY

24    APPLICATION?

25    A    THE GALLERY APPLICATION IN SAMSUNG'S PRODUCT
```

```
 1    IS ESSENTIALLY THE PHOTO MIGRATION AND VIEWING

 2    APPLICATION THAT ALLOWS YOU TO LOOK THROUGH A SET

 3    OF PHOTOGRAPHS.

 4    Q    SO LET'S LOOK AT THE GALLERY APPLICATION IN

 5    THE GALAXY S II.

 6              MR. LEE, COULD WE HAVE 27.9, PLEASE.

 7              WHAT ARE WE SEEING HERE,

 8    DR. BALAKRISHNAN?

 9    A    HERE WE'RE SEEING ON THE GALAXY S II, AT&T

10    VERSION, THE GALLERY APPLICATION.  WE CONTINUE TO

11    USE THE SAME PHOTOGRAPH WE USED IN THE EARLIER

12    EXAMPLES.

13              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

14    OPEN COURT OFF THE RECORD.)

15              THE WITNESS:  AND AS YOU CAN SEE, THE

16    SAME BOUNCE BACK FUNCTIONALITY AS WE'VE SEEN.

17              AND IF YOU CAN SHOW THAT ONE MORE TIME,

18    YOU CAN SEE THE USER IS DRAGGING THE DOCUMENT, IT

19    REACHES THE EDGE, THE AREA BEYOND THE EDGE IS

20    SHOWN, AND IT BOUNCES BACK WHEN THEY RELEASE THE

21    FINGER.  ESSENTIALLY IT'S THE SAME AS THE WAY THE

22    IPHONE WORKS.

23    BY MR. JACOBS:

24    Q    LET'S BREAK THE REQUIREMENTS OF CLAIM 19 DOWN

25    INTO ITS VARIOUS PARTS.
```

2743

```
 1              COULD WE HAVE 27.10, MR. LEE.

 2              SO THE FIRST PART OF CLAIM 19 DISCUSSES A

 3     DEVICE WITH A TOUCHSCREEN DISPLAY, A PROCESSOR,

 4     MEMORY, AND A PROGRAM FOR PERFORMING RUBBER BANDING

 5     OF THE BOUNCE FUNCTION.

 6              DO SAMSUNG'S PRODUCTS MEET THESE

 7     ELEMENTS, REQUIREMENTS, OR LIMITATIONS AS THE

 8     PATENT LAWYERS CALL THEM?

 9     A    YES, THEY DO.

10     Q    SO LET'S GO TO 27.12.  AND CAN YOU JUST REVIEW

11     THIS ELEMENT, THIS FIRST ELEMENT OF CLAIM 19

12     BRIEFLY WITH THE JURY AND WHY YOU FIND IT PRESENT

13     IN THE SAMSUNG DEVICE?

14     A    SURE.  THIS FIRST ELEMENT ESSENTIALLY SAYS IT

15     HAS TO BE A COMPETING DEVICE WHICH HAS A

16     TOUCHSCREEN DISPLAY.  AND WHAT A TOUCHSCREEN

17     DISPLAY IS IS A TOUCH SENSOR THAT SENSES THE USER'S

18     TOUCH INPUTS INTEGRATED WITH A DISPLAY.

19              AND ALL THESE PHONES AND TABLETS CLEARLY

20     HAVE A TOUCH SENSOR INTEGRATED WITH THE DISPLAY.

21              IT ALSO HAS ONE OR MORE COMPUTING

22     PROCESSORS, WHICH MAKES ALL THE PROGRAMS RUN;

23     MEMORY TO INSTALL THOSE PROGRAMS AND DATA; AND ONE

24     OR MORE PROGRAMS THAT ACTUALLY GIVE YOU THE

25     FUNCTIONALITY THAT WE USE ON THESE DIFFERENT
```

2744

1    DEVICES.

2    Q    CAN WE HAVE 27.14, MR. LEE.

3            NOW, THIS IS ELEMENT 2 OF THE CLAIM -- OF

4    CLAIM 19 OF THE '381 PATENT.  WHAT IS IT CALLING

5    FOR?

6    A    ELEMENT 2 SIMPLY SAYS IT HAS TO BE

7    INSTRUCTIONS OR COMPUTER CODE FOR DISPLAYING A

8    FIRST PORTION OF AN ELECTRONIC DOCUMENT.

9            SO THE GALLERY APPLICATION, THE

10   ELECTRONIC DOCUMENT WILL BE THE PHOTOGRAPH, AND AS

11   YOU CAN SEE ON THIS PARTICULAR SLIDE, I'VE

12   ILLUSTRATED IT DISPLAYING A FIRST PORTION, JUST A

13   FIRST PART OF THAT DOCUMENT.

14   Q    LET'S GO TO THE NEXT SLIDE, MR. LEE, 27.16.

15           THIS IS THE THIRD ELEMENT OF CLAIM 19,

16   AND WHAT IS IT LOOKING FOR?

17   A    THIS ELEMENT IS LOOKING FOR THE DETECTION OF

18   AND MOVEMENT OF AN OBJECT ON A TOUCHSCREEN DISPLAY.

19           NOW, THE OBJECT COULD BE ANY OBJECT OR IT

20   COULD BE THE FINGER, THE USER'S FINGER AS WELL, AND

21   THE SAMSUNG DEVICES CLEARLY DETECT THE TOUCH.

22           AS YOU CAN SEE IN SUBSEQUENT VIDEOS, AND

23   EVEN THE ORIGINAL VIDEO WE SHOWED, IT CLEARLY

24   DETECTS THE MOVEMENT OF THAT OBJECT, A FINGER ON

25   THE SCREEN.

2745

```
 1    Q    LET'S GO TO 27.18.  THIS IS THE FOURTH ELEMENT
 2    OF CLAIM 19.  AND WHAT IS IT REQUIRING?
 3    A    THIS REQUIRES A TRANSLATION OR MOVEMENT OF THE
 4    ELECTRONIC DOCUMENT, IN THIS EXAMPLE, THE
 5    PHOTOGRAPH, IN A FIRST DIRECTION, AND THEN IT
 6    SUBSEQUENTLY DISPLAYS A SECOND PORTION OF THAT SAME
 7    DOCUMENT WHERE THAT SECOND PORTION HAS TO BE
 8    DIFFERENT FROM THE FIRST PORTION.
 9             AS YOU CAN SEE HERE -- IF YOU CAN SHOW
10    THE VIDEO AGAIN, PLEASE?
11             (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
12    OPEN COURT OFF THE RECORD.)
13    BY MR. JACOBS:
14    Q    THAT'S THE FIRST PORTION.
15    A    NOW, WHEN YOU DRAG IT IN THE FIRST DIRECTION,
16    A SECOND PORTION OF THE SAME ELECTRONIC DOCUMENT OR
17    PHOTOGRAPH IS SHOWN.
18             AS YOU CAN SEE, THE SECOND PORTION COULD
19    OVERLAP THE FIRST PORTION, BUT IT'S STILL DIFFERENT
20    FROM THE FIRST PORTION.
21    Q    AND JUST BECAUSE IT WENT A LITTLE FAST, SIR,
22    WHEN YOU WERE APPLYING THE PHRASE "TRANSLATING THE
23    ELECTRONIC DOCUMENT," YOU WERE LOOKING FOR WHAT?
24    A    I'M LOOKING FOR MOVEMENT.  "TRANSLATION"
25    SIMPLY MEANS MOVEMENT ON A PARTICULAR SET OF AXES,
```

2746

1    IN THIS CASE IT'S MOVING ON THE X AND Y OR

2    TWO-DIMENSIONAL PLANE OF THE SCREEN.

3    Q    SO NOW LET'S LOOK AT THE FIFTH ELEMENT ON THE

4    SCREEN, AND WE'RE LOOKING AT 27.20.  WHAT DOES THIS

5    ELEMENT CALL FOR?

6    A    THIS ELEMENT IS WHAT HAPPENS WHEN THE USER

7    CONTINUES TO DRAG THE DOCUMENT, TRANSLATE THE

8    DOCUMENT, AND IT REACHES THE EDGE OF THE DOCUMENT.

9          WHEN THE SYSTEM RECOGNIZES THAT THE EDGE

10   OF A DOCUMENT HAS BEEN REACHED, IN RESPONSE TO THAT

11   EDGE BEING REACHED, AN AREA BEYOND THE EDGE IS

12   SHOWN, WHAT I'VE ILLUSTRATED IN THE YELLOW BOX TO

13   THE LEFT OF THE ACTUAL DOCUMENT'S EDGE THERE ON THE

14   SCREEN.

15          AND THE LAST PART OF THIS IS THAT A THIRD

16   PORTION OF THE DOCUMENT HAS TO REMAIN ON THE SCREEN

17   WHERE THAT THIRD PORTION HAS TO BE SMALLER THAN THE

18   ORIGINAL FIRST PORTION.

19          AND THAT'S PRETTY APPARENT FROM THIS

20   IMAGE HERE.  THE THIRD PORTION IS NOT -- DOESN'T

21   FILL THE FULL SCREEN, WHEREAS THE FIRST PORTION I

22   ORIGINALLY SHOWED FILLS THE FULL SCREEN.

23   Q    DOES THE SAMSUNG GALAXY S II, AT&T, MEET THIS

24   LIMITATION?

25   A    YES, IT DOES.

```
1    Q    LET'S GO TO THE SIXTH ELEMENT OF CLAIM 19.

2    WHAT DOES THIS ELEMENT REQUIRE?

3    A    THIS ELEMENT DEALS WITH WHAT HAPPENS WHEN THE

4    OBJECT OR FINGER IS RELEASED FROM THE SCREEN, IT'S

5    NO LONGER DETECTED BY THE TOUCHSCREEN, AND THIS

6    REQUIRES THAT WHEN THAT HAPPENS, THE DOCUMENT IS

7    TRANSLATED IN A SECOND DIRECTION, IT'S MOVED IN A

8    SECOND DIRECTION, SUCH THAT THE AREA BEYOND THE

9    EDGE OF THE SCREEN PREVIOUSLY DISPLAYED IS NO

10   LONGER DISPLAYED.

11        AND FINALLY, IT DISPLAYS A FOURTH PORTION

12   OF THE ELECTRONIC DOCUMENT, AND THAT FOURTH PORTION

13   HAS TO BE DIFFERENT FROM THE ORIGINAL FIRST PORTION

14   THAT WE SAW AT THE START OF THIS SEQUENCE OF

15   VIDEOS.

16        AND FOR SAKE OF ILLUSTRATION, JUST TO

17   REMIND US, I'VE ASKED TO PUT UP THE FOURTH -- THE

18   FIRST PORTION AS A CALL OUT.  IF WE CAN HAVE THAT

19   ON THE SLIDE?

20        THAT IS THE ORIGINAL FIRST PORTION.  AS

21   YOU CAN SEE, IT'S DIFFERENT FROM THE FOURTH PORTION

22   THAT'S ENDED UP ON THE SCREEN AND OF THIS

23   INTERACTION.

24   Q    SO WE'VE BEEN LOOKING AT THESE ELEMENTS IN THE

25   CONTEXT OF THE GALLERY APPLICATION ON THE
```

1    GALAXY S II, AT&T.  DOES THIS PHONE MEET THESE SAME

2    REQUIREMENTS IN OTHER APPLICATIONS?

3    A    YES, IT DOES.  THE GALAXY S II, AT&T, MEETS

4    THE ELEMENTS OF CLAIM 19 OF THE '381 PATENT IN TWO

5    OTHER APPLICATIONS, IN THE CONTACTS LIST AND THE

6    INTERNET BROWSER APPLICATIONS.

7    Q    LET'S TAKE A LOOK AT THOSE BRIEFLY.

8                (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

9    OPEN COURT OFF THE RECORD.)

10               THE WITNESS:  SO ON THE LEFT YOU HAVE A

11   VIDEO OF THE CONTACTS LIST APPLICATION.  THIS IS

12   SIMPLY THE LIST OF PEOPLE YOU HAVE PHONE NUMBERS

13   AND SO FORTH FOR ON THE PHONE.

14               AND IF WE CAN PLAY THAT AGAIN, THE USER

15   IS DRAGGING THE LIST UPWARDS, AND WHEN THEY REACH

16   THE EDGE, IT'S HARD TO SEE, BUT YOU REACH THE EDGE,

17   IT'S BLACK ON THE BOTTOM, THE AREA BEYOND THE EDGE,

18   A BLACK AREA IS SHOWN.

19               WHEN THE USER LIFTS THEIR FINGER UP, IT

20   BOUNCES BACK.  IT'S THE EDGE OF THE PHOTOGRAPH,

21   JUST IN A DIFFERENT DIRECTION.

22   BY MR. JACOBS:

23   Q    AND HOW ABOUT IN THE BROWSER APPLICATION?

24   A    THE BROWSER APPLICATION SIMILARLY WORKS THE

25   SAME WAY.  YOU CAN DRAG IT BEYOND THE EDGE, IN THIS

1    CASE YOU'VE REACHED THE EDGE, AN AREA BEYOND THE

2    EDGE IS SHOWN, YOU RELEASE YOUR FINGER, IT BOUNCES

3    BACK, VERY MUCH LIKE THE GALLERY ACTUALLY.

4    Q    CLAIM 19 DISCUSSES INSTRUCTIONS THAT MAKE THIS

5    FEATURE WORK.  WHAT ARE INSTRUCTIONS IN THE CONTEXT

6    OF A SMARTPHONE OR A TABLET COMPUTER?

7    A    INSTRUCTIONS IN THE CONTEXT OF PHONES AND

8    TABLET COMPUTERS THAT WE'RE DISCUSSING HERE ARE

9    REALLY JUST COMPUTER CODE, COMPUTER PROGRAM

10   INSTRUCTIONS, AND THIS IS LINES OF CODE THAT'S IN

11   THE COMPUTER THAT EXECUTE ON THE PROCESSOR TO MAKE

12   THIS FUNCTIONALITY WORK.

13   Q    HOW DO YOU KNOW THAT THESE INSTRUCTIONS ARE

14   PRESENT ON THE GALAXY S II, AT&T?

15   A    AS I TESTIFIED EARLIER, I LOOKED AT THE

16   SAMSUNG PRODUCED CODE AND WHAT I'VE DONE IS I'VE

17   EXCERPTED JUST TWO SMALL PORTIONS TO ILLUSTRATE

18   SOME OF THE PERTINENT CODE FOR THE GALLERY AND FOR

19   THE BROWSER APPLICATIONS ON THE SCREEN.

20            IT'S NOT ON THE SCREEN YET.

21            MR. JACOBS:  SO, YOUR HONOR, WE'D LIKE TO

22   DISPLAY THIS FOR YOU, FOR OPPOSING COUNSEL, AND FOR

23   THE JURY AS IS REPRESENTATIVE OF THE CODE OF

24   SAMSUNG.

25            THE COURT:  OKAY.  GO AHEAD.

```
 1    BY MR. JACOBS:

 2    Q    SO WE'RE LOOKING AT 27.31, SIR, AND IS IT ON

 3    THE JURY'S SCREEN.

 4              NO, NOT ON THE PUBLIC SCREEN.

 5              THE COURT:  TAKE THAT DOWN, PLEASE.

 6              MR. JACOBS:  IS IT ON THE JURORS'

 7    SCREENS?  NO.

 8              THANK YOU MR. LEE.

 9    Q    SO DR. BALAKRISHNAN, CAN YOU SHOW US WHAT WE

10    ARE SEEING ON THIS, IN THIS SOURCE CODE?

11    A    SURE.

12    Q    CAN YOU TELL US WHAT WE'RE SEEING ON THE

13    SOURCE CODE?

14    A    ON THE LEFT-HAND SIDE IS THE SOURCE CODE FOR

15    THE GALLERY APPLICATION THAT WE'VE BEEN TALKING

16    ABOUT.  SO THIS IS A VERY SMALL SNIPPET OF THE

17    OVERALL CODE THAT RUNS.  WHAT I'VE DONE IS

18    ILLUSTRATE JUST A PORTION THAT SETS UP THE

19    PARAMETERS FOR DETERMINING WHAT HAPPENS AT THE EDGE

20    OF THE DOCUMENT.

21              SO IT LOOKS AT THE LEFT EXTENT OR THE

22    RIGHT EXTENT OR THE TOP OR BOTTOM.  THOSE ARE FOUR

23    EDGES OF THE DOCUMENT.  IF IT EXCEEDS THE THRESHOLD

24    OF THAT EDGE, IT MOVES THE DOCUMENT BY THE

25    APPROPRIATE AMOUNT SO YOU CAN SEE IT.
```

```
 1              ON THE RIGHT-HAND SIDE IS THE SAME

 2     FUNCTIONALITY, BUT WRITTEN IN A SLIGHTLY DIFFERENT

 3     WAY FOR THE BROWSER APPLICATION, AND IN THIS CASE

 4     IT'S COMPUTING THE AMOUNT OF BOUNCE THAT NEEDS TO

 5     HAPPEN WHEN THE FINGER IS RELEASED AND IT DOES SOME

 6     CALCULATIONS WITH THAT.

 7              SO I WANT TO EMPHASIZE, THIS IS JUST THE

 8     RELEVANT SNIPPET OF THE OVERALL CODE.  THERE'S MUCH

 9     MORE CODE THAT MAKES THIS ALL REALLY WORK IN

10     TOTALITY.

11     Q    SO BASED ON YOUR REVIEW OF THE CODE AND OF THE

12     DEVICE, WHAT IS YOUR CONCLUSION AS TO WHETHER THE

13     SAMSUNG GALLERY S II, AT&T, INFRINGES CLAIM 19 OF

14     THE '381 PATENT?

15     A    BASED ON MY REVIEW OF THE DEVICES AND THE

16     CODE, IT IS MY OPINION THAT THE SAMSUNG

17     GALAXY S II, AT&T, INFRINGES CLAIM 19 OF THE '381

18     PATENT IN ALL THREE APPLICATIONS.

19     Q    YOU ANALYZED OTHER SAMSUNG PHONES?

20     A    YES, I DID.

21     Q    AND DOES YOUR OPINION EXTEND TO OTHERS OF THE

22     PHONES THAT YOU EXAMINED?

23     A    YES, 20 OTHER PHONES ALSO INFRINGE THE '381

24     PATENT.

25     Q    CAN WE SHOW THAT TO THE JURY ?
```

2752

1    A    SURE.

2    Q    OKAY.  SO LET'S LOOK AT 27.32.  I'M SORRY,

3    .33?

4    A    WHAT I HAVE HERE IS THE FOUR OTHER PHONES,

5    GALAXY S I9000, GALAXY S II I9100, S 4G, AND THE

6    VIBRANT, ALL SHOWING THE SAME FUNCTIONALITY THAT I

7    WENT THROUGH IN DETAIL EARLIER WITH THE

8    GALAXY S II, AND YOU CAN SEE THAT ALL OF THEM DO

9    THE SAME KIND OF BOUNCING.

10   Q    AND NOW LET'S LOOK AT PDX 27.34?

11   A    THESE ARE FOUR MORE PHONES, THE ACE,

12   CAPTIVATE, CONTINUUM, AND THE DROID CHARGE.

13            AGAIN, EACH OF THEM DO THE SAME

14   FUNCTIONALITY AS I ILLUSTRATED BEFORE IN THE

15   GALLERY APPLICATION.

16   Q    LET'S JUST SEE THAT ONE MORE TIME SINCE WE

17   SHOWED ALL FOUR TOGETHER.

18   A    YOU DRAG TO THE RIGHT, REACH THE EDGE, YOU LET

19   GO, IT BOUNCES BACK.

20   Q    AND 27.35.

21   A    THESE ARE FOUR MORE DEVICES, EXHIBIT 4G, THE

22   EPIC 4G, THE FASCINATE, AND THE INDULGE,

23   ESSENTIALLY DOING WHAT YOU'VE ALREADY SEEN.

24   Q    AND LET'S PLAY THAT ONE MORE TIME.

25   A    AGAIN, DRAG TO THE RIGHT, YOU REACH THE EDGE,

2753

```
 1    AN AREA BEYOND THE EDGE IS SEEN, AND IT BOUNCES

 2    BACK WHEN YOU LET GO.

 3    Q    AND 27.36.

 4    A    THIS IS ANOTHER FIVE PHONES, THE INFUSE, THE

 5    MESMERIZE, THE NEXUS S 4G, THE PREVAIL, AND THE

 6    REPLENISH.

 7            AGAIN, SAME FUNCTIONALITY.  YOU DRAG TO

 8    THE RIGHT, WHEN YOU LET GO, IT BOUNCES BACK.

 9    Q    AND THEN 27.37.

10    A    AND THESE ARE THE TWO TABLET DEVICES RUNNING

11    THE GALLERY.  THEY DO THE EXACT SAME FUNCTIONALITY.

12    YOU REACH THE EDGE, YOU LET GO, IT BOUNCES BACK.

13    Q    NOW, DID YOU ALSO SHOW -- LOOK AT SOME OTHER

14    SAMSUNG PRODUCTS IN CONNECTION WITH THE CONTACTS

15    APPLICATION?

16    A    YES, I DID.  AND I THINK I'VE ILLUSTRATED FOUR

17    MORE OF THEM HERE.

18    Q    27.38?

19    A    RIGHT.  THIS IS THE FASCINATE, THE GALAXY S

20    4G, THE GEM, AND THE VIBRANT, AND THEY ALL DO THE

21    SAME BOUNCE BACK FUNCTIONALITY IN THE CONTACTS

22    LIST.

23            AND IN THIS CASE YOU DRAG UP AND DOWN,

24    YOU REACH THE EDGE, IT SHOWS AN AREA BEYOND THE

25    EDGE, AND IT BOUNCES BACK.
```

2754

```
 1    Q    DO OTHER SAMSUNG PRODUCTS ALSO INFRINGE IN THE
 2    CONTACTS LIST APPLICATION?
 3    A    YES, THEY DO.  I BELIEVE THERE'S A TOTAL OF 16
 4    OF THE 21 ACCUSED PRODUCTS THAT INFRINGE IN THE
 5    CONTACTS LIST APPLICATION.
 6    Q    AND DO YOU HAPPEN TO REMEMBER WHAT THE OTHERS
 7    ARE?
 8    A    I DON'T REMEMBER, BUT I HAVE A LIST HERE AND I
 9    CAN READ THEM OUT IF YOU WANT ME TO.
10    Q    THAT WOULD BE GREAT.
11    A    SO THE ONES THAT DO INFRINGE IN THE CONTACTS
12    LIST ARE THE CAPTIVATE, THE CONTINUUM, THE DROID
13    CHARGE, THE EPIC 4G, THE EXHIBIT 4G, THE FASCINATE,
14    THE GALAXY ACE, THE GALAXY S I9000, THE GALAXY S II
15    I9100, THE GALAXY S II, AT&T, WHICH WE'VE ALREADY
16    GONE THROUGH IN DETAIL, THE GALAXY S 4G, THE GEM,
17    THE INDULGE, THE INFUSE 4G, THE MESMERIZE, AND THE
18    VIBRANT.
19    Q    HAVE YOU PREPARED ADDITIONAL VIDEOS DEPICTING
20    INFRINGEMENT IN THE BROWSER APPLICATION?
21    A    YES, I HAVE.
22    Q    LET'S TAKE A LOOK AT THOSE, 27.39.
23    A    THESE ARE FOUR SAMSUNG DEVICES, THE ACE,
24    EXHIBIT 4G, GALAXY S II I9100, AND THE GALAXY
25    TAB 10.1, ALL OF WHICH ARE PERFORMING THE '391,
```

```
 1    CLAIM 19 FUNCTIONALITY IN THE BROWSER APPLICATION.
 2             AND IF WE PLAY THAT AGAIN JUST VERY
 3    QUICKLY, YOU CAN SEE YOU DRAG THE DOCUMENT, WHEN AN
 4    EDGE IS REACHED, AN AREA BEYOND THE EDGE, THE GRAY
 5    AREA IS SHOWN.  WHEN YOU LET GO, IT BOUNCES BACK.
 6    Q    HAVE YOU PREPARED A COMPILATION OF THESE
 7    VIDEOS FOR THE JURY?
 8    A    YES, I PREPARED A WHOLE SET OF VIDEOS OVER THE
 9    COURSE OF THIS THAT ILLUSTRATE THE DIFFERENT
10    INFRINGEMENT.
11    Q    AND ARE THOSE VIDEOS IN PX 64?
12    A    YES, THEY ARE.
13             MR. JACOBS:  YOUR HONOR, WE OFFER PX 64
14    IN EVIDENCE.
15             THE COURT:  ANY OBJECTION?
16             MR. JOHNSON:  NO OBJECTION, YOUR HONOR.
17             THE COURT:  ALL RIGHT.  THEY'RE ADMITTED.
18             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
19             64, HAVING BEEN PREVIOUSLY MARKED FOR
20             IDENTIFICATION, WAS ADMITTED INTO
21             EVIDENCE.)
22    BY MR. JACOBS:
23    Q    GOING BACK TO THE GALLERY APPLICATION FOR A
24    MINUTE --
25             YOU CAN TAKE THAT DOWN, MR. LEE, THANK
```

1    YOU.

2              GOING BACK TO THE GALLERY APPLICATION FOR

3    A MINUTE, HAVE YOU HEARD OF SOMETHING CALLED THE

4    HOLD STILL BEHAVIOR IN SOME SAMSUNG PRODUCTS?

5    A    YES, I HAVE.

6    Q    AND WHAT IS YOUR UNDERSTANDING OF THAT

7    BEHAVIOR AND HOW DOES IT AFFECT YOUR INFRINGEMENT

8    ANALYSIS?

9    A    THIS IS BEHAVIOR THAT SEEMS TO MANIFEST ITSELF

10   IN SOME SAMSUNG PRODUCTS THAT ARE ACCUSED, BUT NOT

11   ALL, IN THE GALLERY APPLICATION.  AND I HAVE NOT

12   BEEN ABLE TO RELIABLY DUPLICATE IT, BUT IT DOES

13   OCCUR IN SOME OF THOSE PRODUCTS.

14             AND WHAT HAPPENS THERE IS WHEN YOU DRAG

15   THE IMAGE VERY, VERY SLOWLY, VERY GINGERLY, VERY

16   SLOWLY FROM THE EDGE INTO -- SO THE EDGE OF THE

17   DOCUMENT IS PASSED, AND YOU LET GO, IT SIMPLY

18   FREEZES.  IT DOESN'T ACTUALLY DO THE BOUNCE.

19             AND IN THOSE SITUATIONS, THOSE GALLERY

20   APPLICATIONS STILL DO THE BOUNCE FUNCTIONALITY MOST

21   OF THE TIME.

22             SO AS A RESULT, MY OPINION IS THAT THE

23   GALLERY APPLICATION, EVEN ON THOSE DEVICES THAT

24   HAVE THE HOLD STILL BEHAVIOR ONCE IN A WHILE, THEY

25   STILL INFRINGE THE '381 PATENT BECAUSE THE

2757

```
1    INSTRUCTION FOR DOING THE BOUNCE FUNCTIONALITY
2    REMAINS ON THOSE DEVICES.
3    Q    AND SO JUST TO CLARIFY WHERE THIS EXISTS, WHAT
4    APPLICATION DID YOU LEARN OF THE HOLD STILL
5    BEHAVIOR IN?
6    A    THIS WAS IN THE GALLERY APPLICATION ON SOME OF
7    THE SAMSUNG PHONES, BUT NOT ALL OF THE ACCUSED
8    PHONES.
9    Q    AND DOES IT EXIST IN CONTACTS OR THE BROWSER
10   APPLICATION?
11   A    NO.
12   Q    DOES THE -- SO JUST TO SUM UP ON THE HOLD
13   STILL BEHAVIOR, DOES IT AFFECT YOUR INFRINGEMENT
14   ANALYSIS?
15   A    NO, IT DOESN'T.
16   Q    AND THE REASON FOR THAT IS?
17   A    BECAUSE THE INSTRUCTIONS FOR DOING THE BOUNCE
18   BACK FUNCTIONALITY I ALREADY DEMONSTRATED CONTINUE
19   TO EXIST ON THOSE PHONES AND, IN FACT, IS THE
20   DEFAULT BEHAVIOR THAT ONE ENCOUNTERS IN THE USE OF
21   THOSE DEVICES.
22   Q    YOU MENTIONED THAT YOU HAD STUDIED CERTAIN
23   SAMSUNG DOCUMENTS IN CONNECTION WITH YOUR WORK ON
24   THE '381 PATENT.
25         WAS EXHIBIT 46 ONE OF THOSE DOCUMENTS,
```

```
 1    THE BEHOLD 3 USABILITY EVALUATION RESULTS?

 2    A    YES, IT WAS.

 3              MR. JACOBS:  YOUR HONOR, WE OFFER PX 46

 4    INTO EVIDENCE.

 5              MR. JOHNSON:  YOUR HONOR, THERE HASN'T

 6    BEEN A FOUNDATION LAID WITH THIS WITNESS.

 7    OBJECTION.

 8              IT'S ALSO -- AT LEAST BY LOOKING AT THE

 9    DEMONSTRATIVES, HE ONLY REFERS TO THREE PAGES OUT

10    OF THE 94-PAGE DOCUMENT.

11              THERE'S NO FOUNDATION.

12              THE COURT:  ALL RIGHT.  OVERRULED.

13              MR. JACOBS:  THANK YOU.

14              THE COURT:  GO AHEAD.  WHAT WERE YOU

15    GOING TO SAY.

16              MR. JACOBS:  I WAS GOING TO SAY YOU

17    OVERRULED IT EARLIER.

18              THE COURT:  I'VE ALREADY RULED ON THIS

19    OBJECTION.  GO AHEAD.

20              MR. JACOBS:  THANK YOU VERY MUCH.

21              THE COURT:  IT'S ADMITTED.

22              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

23              46, HAVING BEEN PREVIOUSLY MARKED FOR

24              IDENTIFICATION, WAS ADMITTED INTO

25              EVIDENCE.)
```

2782

1    THAT WAS SHOWN TO THE JURY.

2    Q    SORRY ABOUT THAT.  THIS IS INCORRECT; RIGHT?

3    A    THE IMAGE IS INCORRECT.

4    Q    AND THE IMAGE ON THE RIGHT-HAND SIDE UNDER THE

5    BROWSER APPLICATION IS ALSO INCORRECT, ISN'T IT?

6    A    IN THAT THAT IS NOT THE FULL PORTION.  THAT

7    STILL SHOWS AN AREA BEYOND THE EDGE.

8    Q    OKAY.  THANK YOU.

9         DO YOU KNOW, HOW MUCH IS APPLE CLAIMING

10   IN DAMAGES FOR INFRINGEMENT OF THIS PARTICULAR

11   PATENT?

12   A    I DON'T KNOW THE EXACT FIGURE.

13   Q    LET'S LOOK AT PDX 27.3, PLEASE.

14        NOW, FIRST, DR. BALAKRISHNAN, YOU WOULD

15   AGREE THAT NOT EVERY BOUNCE EFFECT ON A TOUCHSCREEN

16   IS COVERED BY THE '381 PATENT; RIGHT?

17   A    COULD YOU REPHRASE THE QUESTION?  I DON'T

18   UNDERSTAND.

19   Q    YEAH.  NOT EVERY BOUNCE EFFECT THAT YOU SEE ON

20   A TOUCHSCREEN IS COVERED BY THE '381 PATENT, IS IT?

21   A    IF THE BOUNCE EFFECT MEETS ALL OF THE

22   LIMITATIONS OF CLAIM 19, IT WOULD BE COVERED.

23   Q    BUT THERE ARE BOUNCE EFFECTS THAT DO NOT MEET

24   THE LIMITATIONS OF CLAIM 19; RIGHT?

25   A    CAN YOU GIVE ME AN EXAMPLE?

1    Q    WELL, WHEN AN IMAGE BOUNCES BACK TO THE CENTER

2    BEFORE YOUR FINGER REACHES THE EDGE OF THE DISPLAY,

3    THAT'S NOT COVERED BY THE '381 PATENT; RIGHT?

4    A    IF IT HASN'T REACHED THE EDGE, IT IS NOT IN

5    RESPONSE TO THE EDGE AS THE CLAIMS REQUIRE, THEN

6    CLAIM 19 WOULD NOT BE INFRINGED.

7    Q    SO THERE ARE BOUNCE EFFECTS THAT DON'T

8    INFRINGE CLAIM 19; RIGHT?

9    A    I DON'T SEE AN EXAMPLE.  IF YOU PROVIDED A

10   HYPOTHETICAL -- ARE YOU SAYING IN THE SAMSUNG

11   DEVICES THERE'S A BOUNCE EFFECT THAT YOU WANT ME TO

12   LOOK AT THAT DOESN'T INFRINGE?

13   Q    I'M ASKING YOU MORE GENERALLY.  AREN'T THERE

14   BOUNCE EFFECTS THAT ARE NOT COVERED BY CLAIM 19?

15   A    JUST GENERALLY OUT THERE?

16   Q    YES.

17   A    SURE.  YOU CAN HAVE ALL KINDS OF THINGS THAT

18   BOUNCE THAT DON'T --

19   Q    ALL RIGHT.

20   A    THAT DON'T MEET THE ELEMENTS OF CLAIM 19.

21   Q    WELL, DURING YOUR DIRECT TESTIMONY, YOU SHOWED

22   27.3.  LET'S ACTUALLY GO TO 14, 27.14.  YOU SHOWED

23   27.14 AS A BASIS FOR INFRINGEMENT OF THE SAMSUNG

24   GALAXY S II; RIGHT?

25   A    I SHOWED A SLIDE SIMILAR TO THIS.  I'M NOT

```
 1     SURE OF THE EXACT SLIDE NUMBER, SO I JUST WANT TO

 2     MAKE SURE, BECAUSE YOU SEEM TO HAVE A DIFFERENT

 3     SLIDE FROM WHAT I SHOWED TODAY.

 4     Q    IS THIS ONE CORRECT?

 5     A    IT APPEARS CORRECT, BUT I -- I CAN'T SAY FOR

 6     SURE WHETHER IT'S THE EXACT SAME SLIDE NUMBER.

 7     Q    WELL, THE PORTION THAT'S SHOWN ON THE DISPLAY

 8     IS ONLY PART OF THE STICK FIGURE; RIGHT?

 9     A    IT LOOKS TO BE, YES.

10     Q    AND IN ALL OF THE EXAMPLES THAT YOU SHOWED IN

11     YOUR VIDEOS, EVEN THE ONES THAT HAD THE, THE

12     FOUR-BY-FOUR, THE USER MUST FIRST ZOOM IN ON THE

13     STICK FIGURE IN ORDER TO MEET THE LIMITATIONS OF

14     CLAIM 19 OF THE '381; RIGHT?

15     A    IN ALL OF THOSE, THE IMAGE WOULD HAVE TO BE

16     BIGGER THAN WOULD FIT ON THE SCREEN, YES.

17     Q    AND YOUR VIDEOS, AND EVEN YOUR DEMONSTRATIVE

18     HERE, LEAVES OUT THAT STEP OF WHERE THE USER FIRST

19     ZOOMS IN ON THE IMAGE TO GET THE ENLARGED IMAGE;

20     RIGHT?

21     A    IT DOESN'T -- YOU DON'T NEED TO SHOW THAT

22     BECAUSE CLAIM 19 DOESN'T REQUIRE THAT.

23     Q    CLAIM 19 DOESN'T REQUIRE A SET UP MOVE LIKE

24     THAT?

25     A    NO.
```

2785

```
 1    Q    I'M SORRY?

 2    A    NOT IN -- NOT EXACTLY, NO.  IT DIDN'T REQUIRE

 3    THAT.  YOU COULD HAVE IT, BUT IT'S NOT REQUIRED.

 4    Q    WELL, YOU HAVE ACCUSED THE GALAXY TAB 7.0 OF

 5    INFRINGEMENT; RIGHT?

 6    A    THAT IS CORRECT.

 7    Q    OKAY.  NOW, I'D LIKE TO SHOW YOU A VIDEO OF

 8    THE GALAXY TAB PRODUCT.

 9              LET'S PUT UP SLIDE 3918.101 PLEASE,

10    MR. FISHER.

11              AND YOU'VE SEEN THIS VIDEO BEFORE.  IT'S

12    A -- I'M GOING TO SHOW IT TO YOU, BUT IT'S FROM THE

13    JOHNSON REPORT.

14    A    MAYBE I COULD LOOK AT THE VIDEO FIRST.

15    Q    LET'S TAKE A LOOK AT IT.

16              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

17    OPEN COURT OFF THE RECORD.)

18    BY MR. JOHNSON:

19    Q    NOW, DR. BALAKRISHNAN, WHAT WE JUST SAW IN THE

20    SDX 3918.101, THAT DOESN'T INFRINGE THE '381

21    PATENT, DOES IT?

22    A    THAT FUNCTIONALITY -- IS MY MIKE ON?

23              THAT FUNCTIONALITY DOES NOT APPEAR TO

24    MEET THE CLAIMS, BUT --

25    Q    BECAUSE IT SHOWS --
```

```
 1    A    -- I DON'T KNOW WHETHER THAT TABLET HAS THE
 2    BOUNCE BACK FEATURE IN OTHER APPLICATIONS THAT ARE
 3    NOT SHOWN ON THE SCREEN.
 4    Q    THAT APPLICATION THAT WE JUST LOOKED AT SHOWS
 5    SOMETHING WE CALLED HARD STOP; RIGHT?  THERE'S NO
 6    BOUNCE THERE?
 7    A    THAT PARTICULAR FUNCTIONALITY YOU JUST SHOWED
 8    IS THE HARD STOP, YES.
 9    Q    OKAY.  AND YOU ORIGINALLY ACCUSED THE BROWSER
10    FUNCTION OF THE TAB 7.0, WHAT WE JUST LOOKED AT, OF
11    INFRINGING THE '381 PATENT; RIGHT?
12    A    THAT IS CORRECT.
13    Q    BUT IT'S YOUR UNDERSTANDING THAT THE BROWSER
14    APPLICATION OF THE GALAXY TAB 7.0 DOES NOT INFRINGE
15    THE '381 PATENT BECAUSE IT DOESN'T BOUNCE BACK;
16    RIGHT?
17    A    NO, THAT'S NOT CORRECT.  THE GALAXY TAB 7.0
18    THAT I ACCUSED, IN THE VERSION I LOOKED AT, THE
19    VERSION I ANALYZED DOES DO THE BOUNCE BACK.
20    Q    I JUST -- I JUST ASKED YOU ABOUT THE BROWSER.
21    A    OKAY.
22    Q    SO THE BROWSER APPLICATION OF THE GALAXY TAB
23    7.0 THAT WE JUST LOOKED AT DOESN'T INFRINGE THE
24    '381 PATENT; RIGHT?
25    A    IN THAT PARTICULAR VERSION --
```

1    Q    YES?

2    A    -- OF THE GALAXY TAB, I DON'T SEE AN

3    INFRINGEMENT.

4    Q    OKAY.

5    A    BUT THE VERSION I LOOKED AT DID HAVE THE

6    INFRINGEMENT.

7    Q    LET'S THEN LOOK -- LET'S LOOK AT THAT VERSION.

8    LET'S LOOK AT ANOTHER ONE.  CAN WE SHOW -- LET ME

9    ASK YOU, YOU'VE HEARD OF DR. SINGH?  HE'S ANOTHER

10   EXPERT IN THIS CASE; RIGHT?

11   A    YES.

12   Q    AND HE IS -- YOU'VE KNOWN HIM FOR MANY YEARS?

13   A    YES, I HAVE.

14   Q    HE WORKS DOWN THE HALL FROM YOU AT THE

15   UNIVERSITY OF TORONTO?

16   A    YES, HE'S A COLLEAGUE.

17   Q    OKAY.  SO HE'S IN THE SAME DEPARTMENT AS YOU?

18   A    YES, HE IS.

19   Q    ALL RIGHT.  NOW, I WANT TO SHOW YOU A VIDEO

20   THAT WAS PREPARED BY DR. SINGH.

21            CAN WE LOOK AT PX 66-A, PLEASE.  AND THIS

22   IS A VIDEO OF THE GALAXY TAB 10.1 THAT APPLE'S

23   EXPERT PREPARED.

24            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

25   OPEN COURT OFF THE RECORD.)

```
 1    BY MR. JOHNSON:

 2    Q    NOW, RIGHT THERE, STOP IT, RYAN, THANKS.

 3              WHAT THE USER JUST DID THERE DOESN'T

 4    INFRINGE THE '381 PATENT, DOES IT?

 5    A    WHAT THE USER DID THERE WAS A SCROLL.  I'M NOT

 6    SURE WHAT THIS VIDEO IS SUPPOSED TO BE SHOWING.  I

 7    DID NOT CREATE THIS VIDEO.

 8    Q    LET ME ASK IT AGAIN, DOCTOR.

 9              WHAT WE JUST SAW ON THAT VIDEO, THE

10    MOVEMENT DOWN AND THE LACK OF A BOUNCE, DOES NOT

11    INFRINGE THE '381 PATENT; RIGHT?

12    A    I DID NOT SEE IT REACHING THE EDGE, SO I HAVE

13    NO IDEA WHETHER IT IS MEETING THE '381 PATENT.

14    Q    MR. FISHER, CAN WE PLAY IT AGAIN?

15              AND I WANT TO ASK YOU, DR. BALAKRISHNAN,

16    DOES THIS INFRINGE THE '381 PATENT, BASED ON WHAT

17    YOU'RE SEEING HERE?

18              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

19    OPEN COURT OFF THE RECORD.)

20              THE WITNESS:  NOT WHAT I'M SEEING.  BUT I

21    CAN'T TELL, JUST FROM THE VIDEO, WHETHER IT'S

22    REACHED THE EDGE OR NOT.

23              IF YOU'D SHOW ME THE DEVICE, I'M HAPPY TO

24    CHECK IT OUT AND VERIFY THAT.

25    BY MR. JOHNSON:
```

```
 1    Q    LET'S LOOK AT PX 66-B.  THIS IS ANOTHER VIDEO

 2    PREPARED BY APPLE'S EXPERT, DR. SINGH, WITH RESPECT

 3    TO THE SAMSUNG VIBRANT PHONE.

 4              I'M GOING TO ASK YOU THE SAME QUESTION.

 5              IF WE CAN, PUT IT UP, MR. FISHER.

 6              DOES THIS DEVICE THAT YOU SEE IN THIS

 7    PARTICULAR VIDEO INFRINGE THE '381 PATENT?

 8              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

 9    OPEN COURT OFF THE RECORD.)

10              THE WITNESS:  I HAVE NOT ACCUSED THE

11    VIBRANT OF INFRINGING THE '381 PATENT IN THE

12    BROWSER APPLICATION.

13    BY MR. JOHNSON:

14    Q    SO THE ANSWER TO MY QUESTION IS YES, IT DOES

15    NOT INFRINGE THE '381 PATENT; RIGHT?

16    A    IN THE BROWSER APPLICATION, IT DOES NOT.

17              BUT THE VIBRANT INFRINGES THE '381 IN THE

18    GALLERY AND THE CONTACTS APPLICATION AS I'VE

19    ALREADY SHOWN.

20    Q    WELL, LET'S TALK ABOUT THAT.

21              SO YOU CLAIM, I BELIEVE -- YOU UNDERSTAND

22    THAT IN ORDER TO SHOW INFRINGEMENT OF A CLAIM, YOU

23    NEED TO SHOW THAT EACH AND EVERY CLAIM LIMITATION

24    HAS BEEN MET; RIGHT?

25    A    SURE.
```

1    Q    AND THAT EACH AND EVERY CLAIM LIMITATION IS

2    ACTUALLY CONTAINED IN THE ACCUSED DEVICES?

3    A    YES.

4    Q    AND IT'S NOT ENOUGH JUST TO SAY IT'S, IT'S

5    CONTAINED IN ONE DEVICE.  YOU HAVE TO SHOW THAT

6    EACH AND EVERY CLAIM LIMITATION IS SHOWN IN EACH

7    AND EVERY ONE OF THE 21 DEVICES THAT YOU'RE

8    ACCUSING OF INFRINGEMENT; RIGHT?

9    A    IN EACH OF THE DEVICES BEING ACCUSED, YES.

10   Q    OKAY.  AND YOU ALSO UNDERSTAND, GIVEN THAT

11   YOU'VE GOT SOME OF YOUR OWN PATENTS, THAT THE

12   CLAIMS MUST BE READ CONSISTENTLY FOR INFRINGEMENT

13   PURPOSES AND FOR INVALIDITY PURPOSES; RIGHT?

14   A    THAT'S CORRECT.

15   Q    AND SAID ANOTHER WAY, YOU CAN'T READ A CLAIM

16   BROADER TO ESTABLISH INFRINGEMENT, BUT THEN READ IT

17   NARROWLY IN ORDER TO AVOID THE PRIOR ART; RIGHT?

18   A    THAT'S TRUE.

19   Q    OKAY.  LET'S SHOW DX 751-A, MR. FISHER, AND

20   THIS IS THE VIBRANT.

21        OKAY.  AND ACTUALLY, BEFORE WE PLAY IT,

22   LET ME JUST ASK YOU, YOU'RE AWARE THAT SAMSUNG

23   BELIEVES IT DOESN'T INFRINGE THE '381 PATENT

24   BECAUSE SAMSUNG'S PHONES EXHIBIT SOMETHING CALLED

25   THE HOLD STILL BEHAVIOR; RIGHT?

2791

```
 1    A    I'M AWARE THAT SAMSUNG'S MADE THE CLAIM THAT
 2    SOME OF THE SAMSUNG PHONES EXHIBIT THE HOLD STILL
 3    BEHAVIOR IN THE GALLERY APPLICATION --
 4    Q    OKAY.
 5    A    -- ONLY.  BUT NOT ALL THE SAMSUNG PHONES, AND
 6    EVEN ON THE PHONES THAT DO EXHIBIT THE HOLD STILL
 7    BEHAVIOR IN THE GALLERY APPLICATION, MANY OF THEM
 8    INFRINGE THE '381 IN OTHER APPLICATIONS.
 9    Q    IN YOUR VIEW, TO INFRINGE '381 PATENT, MUST
10    THE IMAGE ALWAYS BOUNCE BACK?
11    A    TO INFRINGE CLAIM 19 OF THE '381 PATENT?
12    Q    YES.
13    A    IT DOESN'T HAVE TO ALWAYS BOUNCE BACK.
14    Q    LET'S LOOK AT DX 751-A, PLEASE.
15              CAN WE GO AHEAD AND PLAY IT.
16              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
17    OPEN COURT OFF THE RECORD.)
18    BY MR. JOHNSON:
19    Q    THE VIDEO THAT WE JUST SHOWED THERE SHOWS THE
20    HOLD STILL BEHAVIOR; RIGHT?
21    A    CAN YOU PLAY THAT AGAIN, PLEASE?
22    Q    SURE.
23    A    I SAW SOMETHING GOING ON AT THE END WHERE THE
24    USER IS TAPPING THEIR FINGER ON SOME PART OF THE
25    SCREEN.
```

2792

```
 1              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
 2    OPEN COURT OFF THE RECORD.)
 3              THE WITNESS:  SO I'M NOT SURE WHAT'S
 4    GOING ON WITH THE TAPPING OF THE FINGER.
 5    BY MR. JOHNSON:
 6    Q    I THINK THE TAPPING IS JUST TO SHOW THAT THE
 7    VIDEO IS STILL ROLLING.
 8    A    THE VIDEO IS STILL ROLLING, NOT THAT IT'S
 9    STILL IN CONTACT WITH THE SCREEN?
10    Q    RIGHT.
11    A    IF YOU REPRESENT THAT.
12    Q    I'LL REPRESENT THAT.
13    A    I'LL HAVE TO CHECK THAT OUT FOR MYSELF, BUT --
14    Q    I'LL REPRESENT THAT TO YOU.  YOU'VE -- LET ME
15    ASK IT TO YOU A DIFFERENT WAY.
16              WHAT WE JUST SAW HERE IN THE HOLD STILL
17    OF THE VIBRANT, JUST THE HOLD STILL, DOES NOT MEET
18    THE LIMITATIONS OF CLAIM 19 OF THE '381 PATENT;
19    RIGHT?
20    A    IF, INDEED, THAT IS THE HOLD STILL BEHAVIOR.
21              AND I STILL HAVE AN OPEN QUESTION AS TO
22    WHAT'S ACTUALLY HAPPENING AT THE END OF THAT VIDEO
23    WITH THE FINGER TAPPING.
24              BUT IF, INDEED, THE FINGER HAS LEFT THE
25    SCREEN AND IT'S HOLDING STILL, THAT HOLD STILL
```

```
 1    BEHAVIOR DOES NOT MEET CLAIM 19.
 2             BUT I'LL NOTE THAT THE VIBRANT, MOST OF
 3    THE TIME, DOES MEET CLAIM 19 IN THE GALLERY
 4    APPLICATION, BECAUSE IF YOU USE IT AS YOU NORMALLY
 5    WOULD, IT WILL BOUNCE, AND I'M HAPPY TO SHOW THAT
 6    TO YOU NOW AND SHOW IT TO THE JURY IF YOU SHOW ME
 7    THE PHONE.
 8    Q    HAVE YOU REVIEWED THE SOURCE CODE FOR THE HOLD
 9    STILL ROUTINE FOR THE VIBRANT PHONE?
10    A    I HAVE NOT LOOKED AT SOURCE CODE FOR THE
11    NON -- FOR ANY FUNCTIONALITY THAT HAS NOTHING TO DO
12    WITH CLAIM 19.
13    Q    HAVE YOU LOOKED AT ANY OF THE HOLD STILL
14    SOURCE CODE FOR ANY OF THE PHONES THAT ARE ACCUSED
15    OF INFRINGEMENT?
16    A    I MAY HAVE ENCOUNTERED IT, BUT I DON'T RECALL
17    ANALYZING IT IN DETAIL.
18    Q    NOW, YOU UNDERSTAND THAT THERE'S HOLD STILL
19    BEHAVIOR FOR MANY SAMSUNG PHONES THAT ARE ACCUSED
20    OF INFRINGEMENT; RIGHT?
21    A    THERE APPEARS TO BE, AT LEAST ACCORDING TO
22    SAMSUNG, SIMILAR HOLD STILL BEHAVIOR ONLY IN THE
23    GALLERY APPLICATION FOR SOME, BUT NOT ALL, OF THE
24    21 ACCUSED DEVICES, AND ONLY IN THE GALLERY
25    APPLICATION.
```

```
 1            SO THERE ARE TWO OTHER APPLICATIONS, AND
 2   EVEN THE PHONES THAT HAVE THE HOLD STILL BEHAVIOR
 3   ONLY ONCE IN A WHILE, THEY'RE STILL INFRINGING THE
 4   OTHER APPLICATIONS.
 5   Q    I KNOW THERE ARE THINGS THAT YOU WANT TO ADD
 6   TO YOUR ANSWER, BUT I'M ON THE CLOCK HERE, AND IF
 7   YOU CAN TRY AND KEEP YOUR ANSWERS TO WHAT I ASK
 8   YOU, YOUR COUNSEL WILL HAVE AN OPPORTUNITY TO ASK
 9   YOU SOME MORE QUESTIONS.
10            SO LET ME JUST SHOW YOU SDX 3918.105.
11   I'M GOING TO SHOW YOU SOME ADDITIONAL VIDEOS THAT
12   EXHIBIT THE HOLD STILL BEHAVIOR.
13            MR. FISHER, CAN YOU PULL THAT UP?
14            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
15   OPEN COURT OFF THE RECORD.)
16   BY MR. JOHNSON:
17   Q    HAVE YOU SEEN THE HOLD STILL BEHAVIOR THAT'S
18   SHOWN FOR EACH OF THESE SAMSUNG PHONES, THE
19   CAPTIVATE, THE CONTINUUM, THE DROID CHARGE, AND THE
20   EPIC 4G LIKE WE JUST SAW IN DX 3918.105?
21   A    I BELIEVE I'VE SEEN SOME OF THEM.  I CAN'T
22   RECALL IF I'VE SEEN ALL OF THEM.
23            MR. JOHNSON:  YOUR HONOR, WE'D ASK
24   THAT -- WE MOVE THIS INTO EVIDENCE.
25            MR. JACOBS:  OBJECTION, YOUR HONOR.  THIS
```

```
 1        IS A DEMONSTRATIVE.

 2                THE COURT:  OVERRULED.  IT'S ADMITTED.

 3                (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

 4                3918.105, HAVING BEEN PREVIOUSLY MARKED

 5                FOR IDENTIFICATION, WAS ADMITTED INTO

 6                EVIDENCE.)

 7                MR. JOHNSON:  AND WHILE WE'RE DOING THAT,

 8        I'D ASKS THAT 66-A AND B, AND 751-A, THE THREE

 9        OTHER VIDEOS THAT I REFERRED TO EARLIER, BE MOVED

10        INTO OBJECTION.

11                MR. JACOBS:  OBJECTION, YOUR HONOR.

12        THERE'S BEEN NO FOUNDATION FOR HOW THEY WERE

13        PREPARED.

14                MR. JOHNSON:  THEY WERE PREPARED -- TWO

15        OF THEM WERE PREPARED BY APPLE'S EXPERT.

16                THE COURT:  66-A IS ADMITTED, AND 66-B IS

17        ADMITTED.

18                AND MR. JOHNSON, I DIDN'T CATCH THE LAST

19        ONE.

20                MR. JOHNSON:  751-A, WHICH IS THE VIDEO

21        WE JUST LOOKED AT FOR THE VIBRANT.

22                THE COURT:  IT'S ADMITTED.

23                (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

24                66-A, 66-B, AND 751-A, HAVING BEEN

25                PREVIOUSLY MARKED FOR IDENTIFICATION,
```

```
 1              WERE ADMITTED INTO EVIDENCE.)

 2     BY MR. JOHNSON:

 3     Q    LET ME SHOW YOU SDX 3918.104.

 4              THESE ARE OTHER EXAMPLES OF THE HOLD

 5     STILL BEHAVIOR IN THE EXHIBIT 4G, THE FASCINATE,

 6     THE GALAXY PREVAIL, AND THE GALAXY S I9000.  HAVE

 7     YOU SEEN THESE BEFORE -- ARE YOU AWARE THAT EACH OF

 8     THESE ACCUSED PHONES DEMONSTRATES HOLD STILL

 9     BEHAVIOR?

10     A    CAN YOU -- IF YOU DON'T MIND, CAN YOU PLAY

11     THAT AGAIN, PLEASE?

12     Q    SURE.

13              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

14     OPEN COURT OFF THE RECORD.)

15              THE WITNESS:  IT'S REALLY HARD TO TELL

16     FROM THESE VIDEOS EXACTLY WHAT IS HAPPENING, SO

17     IT'S VERY HARD TO COMMENT ON WHETHER IT'S DOING THE

18     HOLD STILL OR SOMETHING ELSE.

19              IT WOULD BE MUCH EASIER IF I SAW THE

20     DEVICES.

21     BY MR. JOHNSON:

22     Q    YOU WOULD AGREE WITH ME THAT THE HOLD STILL

23     BEHAVIOR THAT'S SHOWN IN EACH ONE OF THOSE PHONES

24     IN SDX 3918.104 DOES NOT INFRINGE THE '381 PATENT;

25     RIGHT?
```

```
1    A    IF INDEED THOSE VIDEOS ARE DEMONSTRATING THE

2    HOLD STILL BEHAVIOR, WHICH I CANNOT ASCERTAIN

3    INDEPENDENTLY WITHOUT LOOKING AT THE PHONES, BUT IF

4    YOU REPRESENT THAT, I WOULD SAY THAT THAT HOLD

5    STILL BEHAVIOR ITSELF DOESN'T MEET THE CLAIMS.

6              BUT THE GALLERY APPLICATION ON EACH OF

7    THOSE PHONES DOES MEET THE CLAIM OF CLAIM 19.

8    Q    LET'S LOOK AT 3918.105.  THIS IS ANOTHER VIDEO

9    WITH MORE ACCUSED DEVICES THAT DEMONSTRATE THE HOLD

10   STILL BEHAVIOR, THE GALAXY S 4G, THE INDULGE, THE

11   INFUSE 4G, AND THE MESMERIZE.

12             YOU WOULD AGREE WITH ME THAT THE HOLD

13   STILL BEHAVIOR THAT'S DEMONSTRATED IN THIS EXHIBIT

14   DOES NOT INFRINGE THE '381 PATENT; RIGHT?

15   A    AGAIN, JUST GOING BY THE VIDEO HERE, I CAN'T

16   CONFIRM FOR CERTAIN WHETHER IT'S DOING THE HOLD

17   STILL BEHAVIOR.

18             BUT IF YOU REPRESENT THAT IT IS, I WOULD

19   SAY THAT THAT PARTICULAR BEHAVIOR DOESN'T MEET ALL

20   THE CLAIM ELEMENTS OF CLAIM 19.

21             BUT THE GALLERY APPLICATION, WHICH IS THE

22   SAME APPLICATION, DOES MEET CLAIM 19 AS I'VE

23   ALREADY DEMONSTRATED.

24             AND I'M HAPPY TO DEMONSTRATE IT AGAIN IF

25   I'M GIVEN THE OPPORTUNITY TO SHOW THE JURY LIVE.
```

1    Q    LET'S LOOK AT 3918.106.

2              THESE ARE THREE MORE DEVICES THAT EXHIBIT

3    THE HOLD STILL BEHAVIOR?

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. JOHNSON:

7    Q    THE NEXUS S 4G, THE REPLENISH, THE VIBRANT,

8    NONE OF THESE APPLICATIONS SHOWING -- RUNNING HOLD

9    STILL HERE OR DEMONSTRATING HOLD STILL INFRINGE THE

10   '381 PATENT; RIGHT?

11   A    AGAIN, I'M NOT VERIFYING THIS ON THE DEVICES

12   THEMSELVES.

13             BASED ON THE VIDEOS, IF INDEED THEY'RE

14   DOING THE HOLD STILL BEHAVIOR, I WOULD SAY THAT

15   BEHAVIOR, AS I'VE SAID BEFORE, DOESN'T MEET CLAIM

16   19.

17             BUT THE GALLERY APPLICATION RUNNING ON

18   EACH OF THOSE PHONES, AS I'VE ALREADY DEMONSTRATED,

19   DOES MEET CLAIM 19.

20             MR. JOHNSON:  YOUR HONOR, WE'D ASK THAT

21   DX 3918.104, .105 AND .106 BE ADMITTED.

22             THE COURT:  ANY OBJECTION?

23             MR. JACOBS:  SAME OBJECTION AS BEFORE,

24   YOUR HONOR.

25             THE COURT:  THEY'RE ALL THREE ADMITTED.

```
 1                    (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

 2                     3918.104, 3918.105, 3918.106, HAVING BEEN

 3                     PREVIOUSLY MARKED FOR IDENTIFICATION,

 4                     WERE ADMITTED INTO EVIDENCE.)

 5                    THE COURT:  GO AHEAD, PLEASE.

 6     BY MR. JOHNSON:

 7     Q    NOW, DR. BALAKRISHNAN, I THINK YOU SAID

 8     EARLIER, THIS ISN'T THE FIRST TIME THAT YOU'VE

 9     SERVED AS AN EXPERT FOR APPLE; CORRECT?

10     A    THAT'S CORRECT.

11     Q    IT'S NOT THE SECOND TIME, EITHER?

12     A    NO.

13     Q    YOU'VE SERVED AS A TECHNICAL EXPERT FOR APPLE

14     IN AT LEAST NINE DIFFERENT CASES IN THE LAST COUPLE

15     YEARS; RIGHT?

16     A    I THINK I'VE TESTIFIED IN FOUR OTHER CASES

17     PRIOR TO THIS ONE.

18     Q    YOU'VE SERVED AS A TECHNICAL EXPERT FOR APPLE

19     IN AT LEAST NINE CASES IN THE LAST COUPLE OF YEARS;

20     RIGHT?

21     A    I PROBABLY HAVE BEEN RETAINED IN NINE, BUT I

22     HAVEN'T TESTIFIED IN ALL NINE.

23     Q    AND I HEARD YOU TALK ABOUT WHAT YOUR HOURLY

24     RATE WAS AND HOW MUCH YOU'VE BEEN PAID SO FAR FOR

25     YOUR WORK IN THIS CASE.  I THINK YOU SAID $150,000.
```

```
 1    A     APPROXIMATELY, YES.

 2    Q     RIGHT?

 3              NOW, IF APPLE PAYS YOU FOR ALL THE WORK

 4    YOU'VE DONE FOR THEM ACROSS ALL THESE DIFFERENT

 5    CASES, HOW MUCH WILL IT BE?

 6    A     THE LAST TIME I CHECKED, IT WAS -- I THINK I

 7    BILLED ON THE ORDER OF ABOUT $500,000.

 8    Q     I'M SORRY?

 9    A     IN THE ORDER OF ABOUT $500,000.

10    Q     $500,000.  AND THAT WAS AS OF APRIL OF THIS

11    YEAR; RIGHT?

12    A     ROUGHLY, THAT'S RIGHT.

13    Q     AND YOU'VE DONE HOW MUCH WORK SINCE APRIL OF

14    THIS YEAR FOR APPLE ACROSS ALL THESE DIFFERENT

15    CASES?

16    A     I'D HAVE TO LOOK AT MY INVOICES AND SO FORTH,

17    BUT I'D ESTIMATE A COUPLE OF HUNDRED HOURS.

18    Q     A COUPLE OF HUNDRED?

19    A     HOURS.

20    Q     SO, WHAT, THAT'S ANOTHER HUNDRED THOUSAND?

21    A     GIVE OR TAKE.

22    Q     SO IS IT FAIR TO SAY, ACROSS ALL THESE CASES,

23    YOU WILL HAVE MADE AT LEAST, TO TODAY, ABOUT

24    $600,000?

25    A     OVER THREE YEARS, YES.
```

2801

```
 1     Q    NOW, YOU WERE ALSO CRITICIZED FOR YOUR

 2     OPINIONS BY AN ADMINISTRATIVE LAW JUDGE IN ANOTHER

 3     CASE --

 4               MR. JACOBS:  OBJECTION, YOUR HONOR.

 5     BY MR. JOHNSON:

 6     Q    -- IN ANOTHER CASE FOR TAKING INCONSISTENT

 7     POSITIONS, CORRECT?

 8               THE COURT:  OKAY.  THAT IS SUSTAINED.

 9               IF YOU WANT US TO START GETTING INTO

10     THINGS THAT I'VE ALREADY EXCLUDED, I'D BE HAPPY TO

11     DO IT.  DO YOU REALLY WANT ME TO DO THAT?

12               MR. JOHNSON:  YOUR HONOR, I DIDN'T

13     UNDERSTAND THIS TO BE ANYTHING AFAR FROM WHAT WE'VE

14     ALREADY DISCUSSED ACTUALLY.

15               BUT I'LL WITHDRAW THE QUESTION.

16               THE COURT:  BECAUSE I CAN CERTAINLY START

17     GETTING INTO PREVIOUS RULINGS IF YOU WANT ME TO.

18               MR. JOHNSON:  I WAS JUST --

19               THE COURT:  DO YOU WANT ME TO DO THAT?

20     IF I'VE RULED IT TO BE EXCLUDED, WHICH THERE WAS A

21     MOTION IN LIMINE TO EXCLUDE PREVIOUS THINGS FROM

22     OTHER CASES AND FROM THIS CASE, AND THEY'VE BEEN

23     SUSTAINED.  SO PLEASE DON'T --

24               MR. JOHNSON:  UNDERSTOOD.

25               THE COURT:  -- VIOLATE PREVIOUS RULINGS,
```

2802

```
1    UNLESS YOU WANT TO OPEN THE DOOR, IN WHICH CASE I
2    WILL GET INTO IT.
3              MR. JOHNSON:  NO, YOUR HONOR.  THAT'S
4    FINE.
5              THE COURT:  OKAY.
6              MR. JOHNSON:  I'LL PASS THE WITNESS.
7              OKAY.  IT'S 11:59.
8              MR. JOHNSON:  THANK YOU,
9    DR. BALAKRISHNAN.
10             THE WITNESS:  THANK YOU.
11             THE COURT:  OKAY.  LET'S GO AHEAD -- IT'S
12   11:59.  LET'S GO AHEAD AND TAKE OUR LUNCH BREAK.
13             AGAIN, PLEASE KEEP AN OPEN MIND.  PLEASE
14   DON'T DISCUSS THE CASE WITH ANYONE, AND PLEASE
15   DON'T DO ANY OF YOUR OWN RESEARCH.
16             AND IF YOU WOULD PLEASE GO AHEAD AND
17   LEAVE YOUR JURY NOTEBOOKS IN THE JURY ROOM.
18             ALL RIGHT.  THANK YOU.  WE'LL SEE YOU
19   BACK AT 1:00 O'CLOCK.
20             (WHEREUPON, THE FOLLOWING PROCEEDINGS
21   WERE HELD OUT OF THE PRESENCE OF THE JURY:)
22             THE COURT:  ALL RIGHT.  I WOULD LIKE
23   TO -- YOU CAN STEP DOWN.
24             I'D LIKE TO SEE DX 2557, BOTH THE ONE
25   THAT I SUSTAINED THE OBJECTION TO THAT HAD THE BLUE
```

1    FROM THE OHIO STATE UNIVERSITY IN '92 AND '95.

2    Q    WHAT DID YOU DO BEFORE YOU BECAME A PROFESSOR?

3    A    WELL, AFTER MY PH.D. IN '95, I JOINED A

4    TORONTO COMPANY CALLED WAVEFRONT WHERE I HELPED

5    DESIGN AN ANIMATION SYSTEM CALLED MAYA.

6         LATER I WORKED IN CALIFORNIA AND I

7    CONSTRUCTED A SYSTEM CALLED PARAFORM THAT CONVERTED

8    PHYSICAL OBJECTS INTO DIGITAL MONITORS.

9    Q    WERE MAYA AND PARAFORM, WERE THEY A SUCCESS?

10   A    WELL, MAYA HAS BEEN THE INDUSTRY STANDARD FOR

11   COMMERCIAL ANIMATION AND MOVIE SPECIAL EFFECTS FOR

12   THE PAST DECADE.

13        IT WON A TECHNICAL OSCAR FOR THIS IN

14   2003, AND PARAFORM ALSO RECEIVED AN ACADEMY AWARD

15   FOR TECHNOLOGY.

16   Q    YOU SAID A TECHNICAL OSCAR.  IS THIS AN

17   ACADEMY AWARD WITH THE OSCAR AND ALL THAT?

18   A    THAT IS CORRECT.

19   Q    NOW, DR. SINGH, WOULD YOU SAY YOU'RE FAMILIAR

20   WITH COMPUTER PROGRAMMING, AND IN PARTICULAR, WITH

21   HUMAN/COMPUTER INTERFACES AND COMPUTER GRAPHICS?

22   A    SURE.  FOR OVER 20 YEARS IT'S BEEN THE FOCUS

23   OF MY EDUCATION, MY COMMERCIAL WORK, MY RESEARCH

24   AND MY TEACHING.

25        MR. JACOBS:  ALL RIGHT.  YOUR HONOR, WE

1    TENDER DR. SINGH AS AN EXPERT IN COMPUTER

2    PROGRAMMING, HUMAN/COMPUTER INTERFACES, AND

3    COMPUTER GRAPHICS.

4              THE COURT:  ANY OBJECTION?

5              MR. DEFRANCO:  NO OBJECTION, YOUR HONOR.

6              THE COURT:  THANK YOU.

7    BY MR. JACOBS:

8    Q    DR. SINGH, LET'S DIVE INTO SOME PATENTS.

9              I'D LIKE TO TALK FIRST ABOUT THE '915

10   PATENT.  COULD YOU TURN TO JX 1044 IN YOUR BINDER,

11   PLEASE.

12             YOUR HONOR, WE WOULD OFFER 1044 INTO

13   EVIDENCE.

14             THE COURT:  OKAY.  ANY OBJECTION.

15             MR. DEFRANCO:  NO, YOUR HONOR.

16             THE COURT:  OKAY.  THAT'S ADMITTED.

17             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

18             1044, HAVING BEEN PREVIOUSLY MARKED FOR

19             IDENTIFICATION, WAS ADMITTED INTO

20             EVIDENCE.)

21   BY MR. JACOBS:

22   Q    NOW, WHAT IS THE '915 PATENT, DR. SINGH?

23   A    THIS IS APPLE'S '915 PATENT WHICH YOU MIGHT

24   RECALL MR. FORSTALL IN HIS TESTIMONY DESCRIBED THE

25   CHALLENGE OF VIEWING AN IMAGE OF A BICYCLE THROUGH

2818

```
 1     A WINDOW THE SIZE OF A POSTCARD AND HOW YOU MIGHT
 2     DIRECTLY REACH IN TO POSITION AND RESIZE THAT IMAGE
 3     WITH YOUR FINGERS.
 4            NOW, THE '915 PATENT DEALS EXACTLY WITH
 5     THAT PROBLEM AND GIVES YOU ACCESS TO THESE VARIOUS
 6     VIEW OPERATIONS IN A NATURAL AND FLUID MANNER.
 7     Q    LET'S TAKE A LOOK AT A DEMONSTRATION OF THIS
 8     ON THE IPHONE 4.  WE'RE LOOKING AT PDX 29.4, AND
 9     WHAT ARE WE SEEING HERE, DR. SINGH?
10     A    SO THE '915 PATENT SPECIFICALLY DRAWS A
11     DISTINCTION BETWEEN A VERY COMMONLY USED SCROLLING
12     OPERATION ON AN INTEGRATED TOUCHSCREEN DEVICE, LIKE
13     A SMARTPHONE OR A TABLET, AND ONCE IT MAKES THE
14     DISTINCTION BETWEEN THE COMMON SCROLLING OPERATION
15     AND A MORE GENERAL COMPLEX OPERATION, SUCH AS A
16     SCALE OR ROTATE, IT MAPS SINGLE FINGER INPUT TO, AS
17     WE'LL SEE OVER HERE, SINGLE FINGER INPUT TO
18     SCROLLING AND TWO OR MORE FINGERS TO THIS GENERAL
19     GESTURE TRANSFORMATION, SUCH AS SCALING, SO THAT
20     YOU CAN PERFORM BOTH OF THEM KIND OF
21     SATISFACTORILY, INTUITIVELY, AND AT THE SAME TIME
22     THEY ARE DISTINGUISHABLE FROM EACH OTHER.
23     Q    NOW, DID YOU STUDY WHETHER SAMSUNG HAS
24     INFRINGED CLAIM 8 OF APPLE'S '915 PATENT?
25     A    YES, I HAVE.
```

2819

```
1    Q     AND WHAT DID YOU CONCLUDE?

2    A     I CONCLUDED THAT 24 SAMSUNG PRODUCTS INFRINGE

3    CLAIM 8 OF THE '915 PATENT.

4    Q     AND HOW DID YOU REACH THAT CONCLUSION?

5    A     WELL, FOR STARTERS, I STUDIED THE PATENTS, OR

6    THE PATENT, ITS PROSECUTION HISTORY TO FULLY

7    UNDERSTAND THE CLAIMED INVENTION.

8              AND THEN I PERSONALLY TESTED EACH OF

9    THESE 24 PRODUCTS TO OBSERVE THAT THEY, INDEED,

10   PERFORM THE FUNCTIONALITY THAT'S DESCRIBED BY CLAIM

11   8 OF THE '915.

12   Q     DID YOU DO ANYTHING ELSE?

13   A     SURE.  I ALSO REVIEWED ALL THE SOURCE CODE

14   THAT SAMSUNG MADE AVAILABLE IN THIS LITIGATION --

15   Q     SO LET'S LOOK --

16   A     SORRY.  -- THAT WAS RELEVANT TO THE '915

17   PATENT.

18   Q     SO LET'S LOOK AT THE SAMSUNG DEVICE.  AND YOU

19   HAVE UP HERE THE SAMSUNG GALAXY S II, T-MOBILE.

20   AND WHAT DOES THIS DEVICE -- WHAT BEHAVIOR DOES

21   THIS DEVICE DEMONSTRATE THAT IS RELEVANT TO THIS

22   CLAIM IN THE '915 PATENT, CLAIM 8?

23   A     WELL, AS YOU SEE IN THIS VIDEO, VERY MUCH

24   ALONG THE LINES OF WHAT YOU SAW WITH THE APPLE

25   IPHONE, A SINGLE FINGER IS USED IN THE WEB BROWSER
```

2820

```
 1    PROGRAM TO SCROLL THE CONTENT ON THE SCREEN.

 2              AND SUBSEQUENTLY, YOU WILL NOW SEE TWO

 3    FINGERS BEING USED TO SCALE THE, THE CONTENT, THE

 4    VIEW, AND THE SCALE IS AN EXAMPLE OF A GESTURE

 5    TRANSFORM.

 6              AND WHAT YOU'VE JUST SEEN DESCRIBES, IN

 7    EFFECT, THE CLAIM LANGUAGE OF THE CLAIM 8 OF THE

 8    '915.

 9    Q    WELL, LET'S GO TO THAT.  LET'S TURN TO THE

10    CLAIM LANGUAGE OF THE -- OF CLAIM 8 OF THE '915

11    PATENT.  AND CAN YOU WALK US THROUGH YOUR ANALYSIS

12    OF THAT CLAIM LANGUAGE AGAINST THE SAMSUNG DEVICE?

13    A    SURE.  SO THE FIRST PIECE OF LANGUAGE THAT IS

14    THE PREAMBLE OF THE CLAIM OVER HERE ESSENTIALLY IS

15    DESCRIBING A COMPUTING DEVICE, SUCH AS -- AN

16    EXAMPLE OF WHICH IS A SMARTPHONE OR A TABLET.  IT'S

17    A MACHINE READABLE STORAGE MEDIUM, IT HAS PROGRAMS,

18    AND THESE PROGRAMS DO THINGS.

19              SO THAT'S, THAT'S WHAT THE FIRST PART

20    DESCRIBES.

21    Q    LET'S GO TO THE NEXT SLIDE, SIR, AND LOOK AT

22    THE FIRST TWO ELEMENTS OF THE CLAIM.

23              WHAT DO THEY REQUIRE?

24    A    SO THE, THE FIRST ELEMENT, ELEMENT A, THE

25    OPERATIVE WORDS THERE ARE THAT THE DEVICE RECEIVES
```

2821

```
 1    USER INPUT.

 2              YOU'VE JUST SEEN AN EXAMPLE OF A VIDEO OF

 3    THE DEVICE PERFORMING THIS FUNCTIONALITY.  SO IT'S

 4    CLEARLY RECEIVING AND RESPONDING TO THAT INPUT.

 5              THE USER INPUT IS IN THE FORM OF ONE OR

 6    MORE INPUT POINTS, AND IT IS APPLIED TO A TOUCH

 7    SENSITIVE DISPLAY.

 8              AND WE'VE SEEN THAT WITH THE SAMSUNG

 9    DEVICES.  TABLETS AND SMARTPHONES ARE, IN FACT,

10    TOUCH SENSITIVE DISPLAYS THAT ARE INTEGRATED.  THE

11    TOUCH SURFACE IS INTEGRATED TO THE SCREEN AND

12    FURTHER INTEGRATED WITH THE ACTUAL COMPUTING

13    DEVICE.

14              SO THAT, THAT MEETS THE CLAIM ELEMENT A.

15              CLAIM ELEMENT B ACTUALLY REQUIRES A PEEK

16    INTO THE SAMSUNG SOURCE CODE, AND I'LL WALK YOU

17    THROUGH THIS.

18              SO HERE WE SEE THE EXAMPLE RESULTING FROM

19    CLAIM ELEMENT A WHERE, AS I'VE ALREADY DESCRIBED,

20    USER INPUT IS, IS RECEIVED IN RESPONSE TO THIS USER

21    INPUT WITHIN SAMSUNG CODE, AND WHAT YOU SEE --

22    Q    OKAY.  CAN WE HAVE IT ON THE JURORS' SCREEN

23    AND THE COURT'S SCREEN AND OPPOSING COUNSEL?

24              GREAT.

25    A    SO WHAT YOU SEE ON THIS SLIDE IS ESSENTIALLY,
```

2822

```
1    IT'S AN EXCERPT FROM SAMSUNG'S SOURCE CODE THAT
2    GETS CALLED WHEN THE USER PROVIDES INPUT ON THE
3    SCREEN.
4             AND WITHIN THIS FUNCTION, THAT
5    INFORMATION IS ENCAPSULATED, IT, IT CREATES -- IT
6    IS USED TO CREATE WHAT'S KNOWN AS A MOTION EVENT
7    OBJECT, AND THIS MOTION EVENT OBJECT IS WHAT IS
8    BEING REFERRED TO AS AN EVENT OBJECT IN CLAIM B.
9             TO GIVE YOU SOME MORE SENSE OF WHAT THIS
10   MOTION EVENT OBJECT ACTUALLY IS, JUST BELOW THE
11   MOTION EVENT OBJECT, YOU SEE ANDROID DOCUMENTATION
12   DESCRIBING THE MOTION EVENT OBJECT, AND THE
13   DOCUMENTATION GOES ON TO SAY THAT THE MOTION EVENT
14   OBJECT REPORTS ON MOVEMENTS AND MOVEMENT EVENTS AND
15   IT HOLDS MOVEMENT DATA REGARDING FINGERS AND PENS
16   AND OTHER FORMS OF INPUT, THE LOCATIONS, THE TIMES
17   OF THE INPUT AND SO ON.
18   Q    AND SO DO YOU FIND ELEMENTS A AND B MET IN THE
19   SAMSUNG DEVICES AND CODE THAT YOU EXAMINED,
20   DR. SINGH?
21   A    YES, I DO.
22   Q    LET'S GO ON TO THE NEXT ELEMENTS OF THE CLAIM.
23   A    SO --
24   Q    SORRY.  LET ME JUST INTRODUCE -- WE'RE LOOKING
25   AT 29.12, AND BOTH 29.11 AND .12 ARE BEING SEEN
```

1    ONLY BY THE JURY AND THE COURT AND OPPOSING

2    COUNSEL.

3    A    OKAY.  SO THESE ELEMENTS, AGAIN, ARE -- SORT

4    OF DESCRIBE IN SOME SENSE WHAT'S HAPPENING BELOW IN

5    THE, IN THE SAMSUNG CODE.

6         AND THE OPERATIVE WORDS IN THE BIG ONE

7    ARE DETERMINING WHETHER THE EVENT OBJECT INVOKES A

8    SCROLLING OPERATION, WHICH I'VE DESCRIBED BEFORE,

9    WHICH IS MOVING CONTENT, OR THE SMALL COMPLEX

10   GESTURE OPERATION, SUCH AS SCALING, BY

11   DISTINGUISHING BETWEEN WHETHER A SINGLE INPUT POINT

12   IS APPLIED TO THE SCREEN OR TWO OR MORE INPUTS, IN

13   WHICH CASE A GESTURE OPERATION IS MADE.

14        SO TO UNDERSTAND THIS -- TO UNDERSTAND

15   THIS ELEMENT, WHAT YOU SEE BELOW IS A SCHEMATIC.

16   IT'S, IT'S JUST A SCHEMATIC SHOWING THE SAMSUNG

17   SMARTPHONE AND TAB PHONE.

18        AGAIN, WHAT YOU SEE OVER THERE ARE

19   EXCERPTS TAKEN FROM THE SAMSUNG SOURCE CODE AND

20   LAID OUT JUST TO MAKE THINGS VERY CLEAR.

21        AND UPON RECEIVING INPUT, THERE IS A --

22   THERE'S A FUNCTION IN THE WEB VIEW.  THE WEB VIEW

23   IS THE BROWSER PROGRAM, THE INTERNET BROWSER

24   PROGRAM ON THE SAMSUNG DEVICE.

25        WEB VIEW HAS A FUNCTION CALLED ON TOUCH

2824

1    EVENT, SO WHENEVER THERE'S A TOUCH, YOU GO INTO

2    THAT CODE.

3            WHEN YOU GO INTO THAT CODE, THAT CODE IS

4    CALLED AND CAUSED BY THIS MOTION EVENT OBJECT THAT

5    IS BEING PASSED INTO THIS PIECE OF CODE AND IT'S --

6    IT'S SENT INTO THIS CODE AS A PARAMETER.

7            I'VE KIND OF ILLUSTRATED IT ON TOP JUST

8    SO YOU CAN CLEARLY SEE THE FLOW THAT IS TAKING

9    PLACE IN THE CODE.

10            AND THERE'S A VERY IMPORTANT LINE IN THIS

11    CODE WHERE A SIMPLE TEST IS MADE.  THE MOTION EVENT

12    OBJECT HAS A POINTER COUNT.  THE POINTER COUNT

13    TELLS YOU WHETHER ONE INPUT IS ONE INPUT TOUCH, TWO

14    INPUT TOUCHES, OR MORE.

15            SO ALL YOU'RE DOING OVER HERE IS MAKING

16    THIS QUINTESSENTIAL TEST, AND THEN BASED ON THE

17    TEST, WHEN A SINGLE INPUT TOUCH IS ON THE SCREEN,

18    YOU GO DOWN A ONE FINGER PART, THAT RESULTS IN A

19    SCROLL OPERATION.

20            SO THAT TAKES YOU TO THIS CLAIM ELEMENT C

21    WHERE YOU'RE DISTINGUISHING AND YOU'RE GOING DOWN

22    THIS SCROLL BAR, AND I'LL GO ONE STEP FURTHER INTO

23    CLAIM ELEMENT D, WHICH SAYS ISSUES AT LEAST A

24    SCROLL CALL OR A GESTURE CALL, DEPENDING ON WHICH

25    PART YOU GO DOWN, AND A SCROLL CALL, AN EXAMPLE OF

1    A SCROLL CALL IN THIS CASE IS A METHOD THAT SAYS DO

2    DRAG, WHICH SAYS I'M DRAGGING NOW, AND WHAT DO I

3    DO?  THAT'S IF YOU GO DOWN THE SCROLL CALL.

4              VERY SIMILARLY, IF YOU GO DOWN THE

5    GESTURE PART, WHICH IS TWO OR MORE FINGERS, YOU GO

6    DOWN IN THE CODE AND YOU PERFORM A GESTURE

7    OPERATION WHICH RESULTS IN A GESTURE CALL BEING

8    MADE.

9              IN THIS EXAMPLE, THE GESTURE CALL IS A

10   THE TOUCH EVENT OF A SCALE GESTURE, SOMETHING THAT

11   RESULTS IN THE SCALE OPERATION.

12             SO WHAT WE'VE JUST SEEN OVER HERE IS A

13   RUN THROUGH THROUGH THE SAMSUNG SOURCE CODE TO GIVE

14   YOU A SENSE OF TWO IMPORTANT THINGS.

15             ONE, THAT THE MOTION EVENT OBJECT CAUSES

16   A VERY IMPORTANT TEST TO BE MADE, ONE FINGER OR TWO

17   OR MORE FINGERS; AND THEN BASED ON THAT TEST,

18   THERE'S A FORK IN THE CODE AND YOU EITHER GO DOWN A

19   SCROLL BOX WHERE A SCROLL CALL IS MADE AND A SCROLL

20   OPERATION RESULTS, OR DOWN THE GESTURE PART AND A

21   GESTURE CALL IS MADE AND A GESTURE RESULTS.

22             SO THAT'S THESE TWO ELEMENTS.

23   Q    NOW, WHICH DEVICES DOES THIS ANALYSIS THAT YOU

24   JUST PROVIDED APPLY TO?

25   A    IT APPLIES -- THIS SPECIFIC SCHEMATIC APPLIES

```
 1     TO 23 OF THE 24 ACCUSED DEVICES.

 2          THE SAMSUNG GALAXY TAB 10.1 ALSO

 3     INFRINGES THIS CLAIM, BUT FOR THE PURPOSES OF

 4     CLAIM -- FOR ELEMENTS C AND D, IT'S STRUCTURED A

 5     LITTLE BIT DIFFERENTLY.

 6     Q    DO YOU WANT TO JUST SPEND A MINUTE EXPLAINING

 7     THAT WITH 29.14?

 8     A    SURE.  SO AS YOU CAN SEE ON THIS SLIDE, THE

 9     SCHEMATIC OF THE SOURCE CODE, IT'S VIRTUALLY --

10     IT'S VERY SIMILAR.  AND FOR THE PURPOSES OF THESE

11     CLAIMS, IT'S ACTUALLY IDENTICAL.

12          YOU STILL HAVE THE MOTION EVENT OBJECT

13     CAUSING THIS ALL-IMPORTANT TEST OF ONE FINGER INPUT

14     OR TWO OR MORE FINGERS WITH INPUTS, SO YOU STILL

15     HAVE THE LOGICAL TEST.

16          YOU STILL HAVE THE BRANCHING TAKING PLACE

17     IN THE CODE, AND GOING DOWN THE SCROLL PART RESULTS

18     IN A SCROLL CALL.  EVENTUALLY IT RESULTS IN A

19     SCROLL OPERATION.

20          GOING DOWN THE GESTURE BOX ESSENTIALLY

21     RESULTS IN A GESTURE CALL AND THEN THE

22     CORRESPONDING GESTURE OPERATION.

23          THIS LOGIC THAT YOU SEE ACTUALLY ALLOWS

24     THE GALAXY TAB 10.1 TO PERFORM WHAT YOU CAN THINK

25     OF AS A MORE COMPLEX GESTURE TRANSFORM WHERE IT
```

1    SIMULTANEOUSLY SCALES AND TRANSLATES THE VIEW.

2              IF YOU GO BACK TO THAT PICTURE OF A

3    BICYCLE AND IMAGINE YOUR FINGERS ARE DOWN ON THE

4    WHEELS OF THE BICYCLE AND NOW YOU'RE GOING TO START

5    TO MOVE YOUR FINGERS AROUND, MOVING -- SPREADING

6    THEM APART WILL SCALE THE BICYCLE.

7              BUT YOU ALSO WANT TO MOVE IT SO THAT YOUR

8    FINGERS REMAIN ON TO THE BICYCLE.  IF YOU DON'T

9    MOVE WITH IT, SIMULTANEOUSLY, ALL OF A SUDDEN YOUR

10   BICYCLE IS OFF IN SPACE AND IT'S BIGGER, BUT IT

11   DOESN'T HAVE THAT DIRECT FEEL.

12             AND THAT DIRECT FEEL IS WHAT THE APPLE

13   PRODUCTS PROVIDE.

14             OF THE 24 INFRINGING DEVICES, ONLY THE --

15   OVER HERE WITH THIS CODE, ONLY THE SAMSUNG GALAXY

16   TAB 10.1 KIND OF PROVIDES THIS, THIS -- IT MAKES IT

17   MORE LIKE THE APPLE PRODUCTS.

18   Q    OKAY.  LET'S MARCH THROUGH THE REST OF THE

19   CLAIM LIMITATIONS.

20   A    UM --

21   Q    WE'RE LOOKING AT 29.16.

22   A    SO CLAIM ELEMENT E, ONCE -- NOW THAT WE'VE

23   SPENT, WE'VE BEEN THROUGH THE SLIGHTLY MORE

24   DIFFICULT PART IN THE SAMSUNG CODE, THIS IS -- THIS

25   IS A LOT SIMPLER.

```
 1            YOU'VE ALREADY SEEN THIS VIDEO OF THE

 2    SAMSUNG GALAXY S II.  IF YOU CAN PLAY THIS VIDEO

 3    AGAIN, YOU WILL SEE THAT, IN FACT, IN RESPONSE TO

 4    THAT ONE FINGER INPUT, ONCE YOU'VE GONE DOWN THAT

 5    SCROLL PART, CLEARLY A SCROLL CALL HAS BEEN MADE

 6    AND THAT SCROLL CALL, EVENTUALLY IT RESULTS IN

 7    SCROLLING THE WINDOW, HAVING A VIEW ASSOCIATED WITH

 8    THE EVENT OBJECT.

 9            I'D JUST LIKE TO CLARIFY WHAT WE MEAN BY

10    A VIEW ASSOCIATED WITH THE EVENT OBJECT.

11            THE EVENT OBJECT WAS THE MOTION EVENT

12    OBJECT THAT WE SAW IN THE LAST COUPLE OF SLIDES,

13    AND THE VIEW WAS THE WEB VIEW, WEB VIEW FROM WHICH

14    THE PROGRAM THAT RUNS THE -- THAT IS THE BROWSER

15    THAT WE ARE SEEING THIS FUNCTIONALITY BEING

16    PERFORMED IN.

17            SO THAT ESSENTIALLY EXPLAINS ELEMENT E.

18    Q    GREAT.  LET'S GO TO ELEMENT F.

19            WHAT DOES IT REQUIRE?

20    A    ELEMENT F IS, IS ACTUALLY VERY ANALOGOUS TO

21    ELEMENT E.  ELEMENT E DESCRIBES WHAT HAPPENS WHEN

22    YOU GO DOWN THE SCROLL BAR.

23            ELEMENT F SIMPLY TELLS YOU WHAT HAPPENS

24    IF YOU GO DOWN THE GESTURE BAR.  SO IF YOU PLAY

25    THIS VIDEO, YOU NOTICE AGAIN OVER HERE, BASED ON
```

2829

```
 1    TWO FINGER INPUT, A GESTURE CALL IS MADE AND THAT

 2    IS RESULTING IN SCALING THE VIEW ASSOCIATED WITH

 3    THE OBJECT.

 4    Q    DR. SINGH, CAN YOU SHOW THE JURY -- I'M SORRY.

 5    LET'S GO TO THE NEXT SLIDE.

 6              DR. SINGH, ARE EACH ELEMENTS -- ARE EACH

 7    OF THE ELEMENTS OF CLAIM 8 MET BY THE SAMSUNG

 8    DEVICES THAT YOU HAVE DETERMINED INFRINGE?

 9    A    YES, THEY HAVE.  WE'VE JUST BEEN THROUGH ALL

10    THE ELEMENTS IN SEQUENCE, AND INDEED, ALL THE

11    DEVICES ACTUALLY MEET THESE CLAIM ELEMENTS.

12    Q    OKAY.  NOW LET'S SHOW THE JURY THE DEVICES,

13    AND CAN YOU SHOW ALL 24 OF THESE AS THEY

14    DEMONSTRATE THE INFRINGING BEHAVIOR?

15    A    SURE.  WE'LL START WITH THE GALAXY S II, AT&T,

16    THE GALAXY S II, T-MOBILE, THE GALAXY S II I9100,

17    AND THE GALAXY T 4G.

18              YOU JUST NOTICED THE ONE FINGER SCROLL

19    FOLLOWED BY A TWO FINGER SCALE GESTURE OPERATION.

20    Q    AND THAT WAS 29.20?

21    A    HERE WE SEE ANOTHER SET OF SIX DEVICES, THE

22    ACE, THE CAPTIVATE, THE CONTINUUM, THE DROID

23    CHARGE, THE EPIC 4G, AND THE EXHIBIT 4G.

24              ONCE AGAIN, ONE FINGER, SCROLL; TWO

25    FINGERS, STAY OR GESTURE.
```

2830

```
1    Q    THAT WAS 29.21.

2    A    ANOTHER SET OF SIX, THE FASCINATE, THE

3    GALAXY S I9000, THE GEM, THE INDULGE, INFUSE 4G,

4    INTERCEPT.

5    Q    AND THAT'S 29.22.

6    A    ANOTHER SET OF SIX, MESMERIZE, NEXUS S 4G,

7    PREVAIL, REPLENISH, TRANSFORM, VIBRANT.

8              AND FINALLY, THE TABLETS, THE GALAXY TAB

9    7.0 AND THE GALAXY TAB 10.1.

10             AS YOU CAN SEE, ONE FINGER PERFORMS THE

11   PURE SCROLLING OPERATION, TWO OR MORE FINGERS

12   PERFORMS A GENERAL GESTURE OPERATION, SUCH AS THE

13   SCALE.

14   Q    SO BASED ON YOUR ANALYSIS OF THESE DEVICES

15   THAT YOU'VE ENUMERATED, DR. SINGH, AS WELL AS THE

16   SOURCE CODE THAT SAMSUNG PROVIDED YOU, WHAT IS YOUR

17   OPINION AS TO WHETHER THESE PRODUCTS INFRINGE CLAIM

18   8 OF THE '915 PATENT?

19   A    IT'S MY OPINION THAT THESE 24 PRODUCTS THAT

20   I'VE JUST RECITED INFRINGE CLAIM 8 OF THE '915

21   PATENT.

22             MR. JACOBS:  AND YOUR HONOR, I WOULD LIKE

23   TO OFFER INTO EVIDENCE JUST A COUPLE MORE PHONES.

24   1014 IS THE TRANSFORM; AND 1009 IS THE INTERCEPT,

25   BOTH JOINT EXHIBITS.
```

2831

```
 1              THE COURT:  ALL RIGHT.  ANY OBJECTION?

 2              MR. DEFRANCO:  NO, YOUR HONOR.

 3              THE COURT:  THEY'RE ADMITTED.

 4              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBERS

 5              1014 AND 1009, HAVING BEEN PREVIOUSLY

 6              MARKED FOR IDENTIFICATION, WERE ADMITTED

 7              INTO EVIDENCE.)

 8   BY MR. JACOBS:

 9   Q    NOW LET'S TURN TO THE '163 PATENT, WHICH IS

10   1046 IN YOUR BINDER.

11              YOUR HONOR, WE OFFER -- IT'S ALREADY IN

12   EVIDENCE.

13              WHAT IS THE '163 PATENT ABOUT, DR. SINGH?

14   A    ONCE AGAIN, YOU MIGHT REMEMBER MR. FORSTALL

15   DESCRIBING THIS PROBLEM OF VIEWING A DOCUMENT, SUCH

16   AS A NEWSPAPER, ON A SMALL SMARTPHONE SCREEN.

17              NOW, WITH -- AS YOU CAN SEE, WITH THE --

18   WITH THE NEWSPAPER LARGELY OR ENTIRELY VISIBLE ON

19   THE SCREEN, YOU CAN, AT MOST, SORT OF SEE THE

20   LAYOUT OF STORIES AND PERHAPS READ SOME HEADLINES.

21              BUT THE '163 INVENTION, WHAT IT BRINGS TO

22   THE TABLE IS THAT IT ALLOWS A USER TO SIMPLY TAP ON

23   A STORY OR A REGION OR A BOX OF INTEREST AND THE,

24   THE PROGRAM, THE BROWSER ITSELF, USES THE STRUCTURE

25   TO DETERMINE WHAT THAT STORY IS AND THEN ENLARGES
```

2832

```
 1    AND POSITIONS THE DOCUMENT AS BEST IT CAN TO MAKE
 2    THAT INFORMATION READABLE.
 3              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
 4    OPEN COURT OFF THE RECORD.)
 5              THE WITNESS:  AND WE'LL SEE THIS IN AN
 6    EXAMPLE ON THE APPLE IPHONE 4.
 7              AND ONCE YOU'VE DONE THIS, OF COURSE THE
 8    '163 THEN ALLOWS YOU TO TAP ON A SECOND BOX OF
 9    CONTENT WHILE YOU ARE -- WHILE THE DOCUMENT IS
10    ENLARGED, AND IT MOVES THAT OVER SO THAT YOU CAN
11    READ THE SECOND STORY, AND SO ON.
12              AND YOU CAN CONTINUE IN THIS FASHION.
13    BY MR. JACOBS:
14    Q    SO WHY DON'T YOU JUST DEMONSTRATE THAT ONE
15    MORE TIME?
16    A    SO MAYBE WE CAN LOOK AT IT AGAIN.
17              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
18    OPEN COURT OFF THE RECORD.)
19              THE WITNESS:  THE FIRST TAP ENLARGES AND
20    POSITIONS THE DOCUMENT.  AGAIN, THE SECOND TAP
21    REPOSITIONS THE DOCUMENT ON THE SECOND BOX.
22    BY MR. JACOBS:
23    Q    DID YOU CONCLUDE ONE WAY OR THE OTHER WHETHER
24    THE APPLE PATENTS, THE APPLE PRODUCTS, IN FACT,
25    PRACTICE CLAIM 50 OF THE '163 PATENT?
```

1    A    YES, I DID.  ALL APPLE MOBILE TOUCH DEVICES,

2    THE IPHONE AS YOU JUST SAW AND THE IPODS AND IPADS,

3    IPOD TOUCHES PERFORM IT.

4    Q    WHY NOT JUST USE THE SCROLLING AND PINCHING OF

5    THE '915 PATENT TO ADDRESS THIS PROBLEM?

6    A    OF COURSE YOU CAN USE SCROLLING AND PINCHING.

7          BUT FOR THIS SPECIFIC PROBLEM, YOU WOULD

8    SPEND A LOT OF TIME ADJUSTING YOUR VIEW TO MAKE

9    SURE THE FONT WAS A READABLE SIZE AND SO ON.

10         THE '163 INSTEAD JUST MAKES A KEY

11   INSIGHT.  IT REALIZES THAT IN DOCUMENTS, SUCH AS

12   WEB PAGES, THERE'S ALREADY AN INHERENT STRUCTURE

13   THAT THE PROGRAM CAN EXPLOIT, SO THAT WHEN YOU

14   SIMPLY TAP ON A LOCATION OF THE SCREEN, THE PROGRAM

15   USES THAT INFORMATION OF THAT LOCATION AND FIGURES

16   OUT WHAT THAT PIECE OF CONTENT IS THAT YOU'RE

17   INTERESTED IN AND THEN IT RESIZES IT, ENLARGES THE

18   DOCUMENT AND POSITIONS IT AS BEST IT CAN TO MAKE

19   THAT PIECE OF INFORMATION READABLE.

20         SO IT'S MUCH MORE DIRECT IN THAT ASPECT.

21   Q    DO YOU HAVE AN EXAMPLE OF A SAMSUNG PRODUCT

22   PRACTICING CLAIM 50?

23   A    YES, I DO.

24         (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

25   OPEN COURT OFF THE RECORD.)

```
 1              THE WITNESS:  HERE IS AN EXAMPLE OF THE
 2   GALAXY S II, T-MOBILE, AND VERY SIMILAR TO THE
 3   APPLE DEVICE, YOU WILL SEE THE FIRST TOUCH ENLARGES
 4   THE DOCUMENT AND SUBSTANTIALLY CENTERS THE FIRST
 5   BOX, THE FIRST STORY.
 6              AND NOW THE SECOND BOX, ONCE IT'S TABBED
 7   ON, IS SUBSTANTIALLY CENTERED.
 8              LET'S LOOK AT THAT ONCE MORE JUST SO WE
 9   CAN SEE IT WITHOUT MY TALKING OVER IT.
10              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
11   OPEN COURT OFF THE RECORD.)
12   BY MR. JACOBS:
13   Q    AND THAT'S 29.26 FOR THE IPHONE, .27 FOR THE
14   FIRST TAP FOR THE SAMSUNG GALAXY S II, AND 29.28
15   FOR THE SECOND TAP; CORRECT?
16   A    THAT IS CORRECT.
17   Q    OKAY.  DID YOU STUDY THE CLAIM LANGUAGE OF
18   CLAIM 50 OF THE '163 PATENT?
19   A    YES, I DID.
20   Q    SO LET'S GO OVER THOSE ELEMENTS IN ORDER TO
21   ANALYZE HOW THE SAMSUNG PRODUCTS ALIGN WITH THAT
22   CLAIM.
23              AND FIRST WE HAVE, AGAIN, KIND OF A
24   PREAMBLE, RIGHT, DR. SINGH?
25   A    THAT'S RIGHT.  WELL, IN THIS CASE, IT -- IT IS
```

1    PART OF THE ACTUAL CLAIM ELEMENTS.

2         BUT IN FACT, ALL CLAIM ELEMENTS A TO D

3    ESSENTIALLY DISCLOSE OUR TOUCHSCREEN DISPLAY, ONE

4    OR MORE PROCESSORS, MEMORY, ONE OR MORE PROGRAMS,

5    WHICH WE'VE ALREADY SEEN SORT OF IN THE CONTEXT OF

6    THE '915, AS WELL AS HERE.

7         SAMSUNG SMARTPHONES AND TABLETS ARE

8    ESSENTIALLY -- THEY ARE TOUCHSCREEN DISPLAYS

9    INTEGRATED WITH A COMPUTER THAT HAS MEMORY AND

10   PROGRAMMING.

11   Q    SO LET'S GO TO THE FIRST OF THE MORE

12   SUBSTANTIVE LIMITATIONS.  LET'S GO TO ELEMENT E.

13   A    OKAY.

14   Q    WE'RE LOOKING AT 29.32.

15   A    RIGHT.  SO ELEMENT E ACTUALLY DESCRIBES

16   INSTRUCTIONS FOR DISPLAYING AT LEAST A PORTION OF A

17   STRUCTURED ELECTRONIC DOCUMENT ON THE TOUCHSCREEN

18   DISPLAY.

19        SO WHAT WE'RE TALKING ABOUT HERE IS A

20   STRUCTURE OF ELECTRONIC DOCUMENT, SUCH AS A WEB

21   PAGE.  IN THIS PARTICULAR SCENARIO, YOU SEE THE

22   NEW YORK TIMES WEB PAGE.  IT IS A WEB PAGE WRITTEN

23   IN A LANGUAGE CALLED HYPERTEXT MARKUP LANGUAGE,

24   HTML.  IT'S A VERY COMMON LANGUAGE USED FOR

25   ALTERING WEB PAGES.

1           AND YOU CAN SEE A PORTION OF THIS

2     DOCUMENT BEING CLEARLY DISPLAYED ON THE SAMSUNG

3     DEVICE.

4           THE LAST FEW OPERATIVE WORDS DESCRIBE

5     COMPRISING A PLURALITY OF BOXES OF CONTENT.

6           NOW, THESE WEB PAGES, IN FACT, DO HAVE A

7     NUMBER OF VISUALLY SALIENT REGIONS, VISUALLY

8     DISTINCT REGIONS THAT YOU SEE THAT ARE THESE BOXES

9     OF CONTENT, AND I HAVE ILLUSTRATED THESE BY DRAWING

10    SORT OF DOTTED LINES AROUND THEM AND LABELING THEM

11    FIRST BOX AND SECOND BOX, BUT THAT IS SIMPLY TO

12    ILLUSTRATE WHAT THE PROGRAM ACTUALLY SEES.

13    Q    AND HOW DOES THE UNDERLYING DOCUMENT GET

14    STRUCTURED?  WHAT'S THE SOURCE OF THE STRUCTURE IN

15    HTML?

16    A    WELL, HTML ACTUALLY HAS A NUMBER OF WHAT THEY

17    CALL TAGS.  THESE ARE JUST -- THESE ARE SPECIAL

18    CONSTRUCTS THAT HTML USES TO -- THAT YOU CAN USE TO

19    ANNOTATE YOUR CONTENT, ANNOTATE YOUR TEXT, YOUR

20    IMAGES AND SO ON.

21          AND THESE TAGS ARE DESIGNED SUCH THAT THE

22    VIEWER DOESN'T SEE THEM.  THEY'RE NOT DESIGNED FOR

23    VISUAL CONSUMPTION.

24          BUT WHAT THEY ARE DESIGNED FOR IS THAT

25    THE PROGRAM USES THESE TAGS TO FIGURE OUT HOW IT

1    SHOULD STRUCTURE AND DISPLAY THE CONTENT, THE

2    STORIES, THE HEADLINES, THE IMAGES ON THE SCREEN.

3    Q    LET'S LOOK AT THE NEXT ELEMENT, ELEMENT F ON

4    PDX 29.34.

5    A    OKAY.  SO THESE TWO CLAIM ELEMENTS ARE SORT

6    OF -- THEY SORT OF REQUIRE AN UNDERSTANDING OF WHAT

7    WE SEE ON THE SCREEN, AND PERHAPS WHAT THE PROGRAM

8    SEES.

9         SO I'LL TRY AND EXPLAIN THIS IN A WAY

10    THAT HOPEFULLY WILL BE UNDERSTANDABLE.

11         IN CLAIM ELEMENT F, WE SEE INSTRUCTIONS

12    FOR DETECTING A FIRST GESTURE AT A LOCATION OF THE

13    DISPLAYED PORTION OF THE ELECTRONIC DOCUMENT.

14         SO THAT ONE IS EASY.  DETECTING A FIRST

15    GESTURE, CLEARLY WE SAW IN THE VIDEO A GESTURE IS

16    MADE.  BASED ON THAT GESTURE, THE DEVICE RESPONDS,

17    SO THAT GESTURE IS, IS BEING DETECTED.

18         ON THE -- AND THEN BASED ON THAT,

19    INSTRUCTIONS FOR DETERMINING A FIRST BOX AMONG THE

20    PLURALITY OF BOXES.  THAT'S SORT OF ELEMENT G.

21         SO WHAT YOU SEE ON THE LEFT-HAND SIDE ARE

22    A NUMBER OF BOXES.  I'VE SORT OF LABELED THEM

23    SCHEMATICALLY 1 THROUGH 9.

24         BOX 6 IS PARTICULARLY INTERESTING, AND

25    WHAT YOU SEE ON THE RIGHT-HAND SIDE IS SORT OF A

1    TREE STRUCTURE THAT THE SAMSUNG CODE PRODUCES THAT

2    IS REPRESENTATIVE OF WHAT YOU SEE ON THE SCREEN.

3                 SO NOW WHEN --

4                 THE COURT:  I'M SORRY.

5                 DOES ANYONE NEED ANY CAFFEINE?  I'M MORE

6    THAN HAPPY IF YOU WANT TO TAKE A LITTLE MINUTE

7    BREAK OR TWO.  WOULD THAT BE GOOD NOW?  OR IF YOU

8    WOULD LIKE TO BRING A CAFFEINATED DRINK IN, THAT'S

9    FINE, TOO.  WOULD YOU LIKE TO DO THAT?  WE CAN TAKE

10   A COUPLE MINUTE BREAK TO DO THAT.

11                NO?  IS EVERYBODY OKAY?

12                ALL RIGHT.  GO AHEAD.

13                THE WITNESS:  WHEN A GESTURE IS MADE

14   WITHIN THE SAMSUNG CODE, A DOUBLE TAP FUNCTION IS

15   CALLED WHEN YOU TAP ON THERE.

16                AND THEN ONCE YOU DO THAT WITHIN THE

17   CODE, YOU WILL SEE THAT IT USES THE LOCATION OF

18   THAT TAP TO ESSENTIALLY TRAVERSE DOWN THIS TREE

19   STRUCTURE AND FIND WHICH BOX IN THAT TREE STRUCTURE

20   CORRESPONDED TO THE LOCATION.  IN THIS CASE, IT

21   HAPPENS TO BE BOX 6.

22                SO THAT TAKES CARE OF ELEMENTS F AND G.

23   BY MR. JACOBS:

24   Q    BECAUSE WHAT YOU HAVE JUST ILLUSTRATED IS

25   INSTRUCTIONS FOR DOING WHAT?

2839

```
 1    A    IT'S INSTRUCTIONS FOR DETECTING THIS GESTURE
 2    AND, BASED ON THE LOCATION OF THAT GESTURE,
 3    ACTUALLY DETERMINING A BOX, A FIRST BOX THAT IS
 4    PART OF THIS STRUCTURED ELECTRONIC DOCUMENT.
 5    Q    OKAY.  LET'S GO TO THE NEXT ELEMENT OF CLAIM
 6    50.
 7          THE COURT:  OKAY.  WHAT WAS THE NUMBER OF
 8    THAT ONE?
 9          MR. JACOBS:  THAT ONE WAS 29.36.
10          THE COURT:  OKAY.  THANK YOU.
11    BY MR. JACOBS:
12    Q    AND NOW WE'RE ON 29.37.
13    A    SO ELEMENT H SORT OF BRINGS US BACK OUT OF
14    THE, OUT OF THE NITTY GRITTY OF THE SAMSUNG SOURCE
15    CODE AND HERE AGAIN WE'RE LOOKING AT THE DEVICE.
16          IF YOU PLAY THIS VIDEO, YOU'VE ALREADY
17    SEEN THIS VIDEO BEFORE WHERE, UPON RECEIVING THAT,
18    THAT FIRST GESTURE AND DETERMINING THE BOX, YOU CAN
19    SEE THAT THAT INFORMATION IS BEING USED TO ENLARGE
20    THE ENTIRE DOCUMENT AND THEN MOVE IT SUCH THAT THE
21    BOX IS ENLARGED AND SUBSTANTIALLY CENTERED ON THE
22    DISPLAY.
23    Q    AND JUST TO REMIND US, THIS IS A VIDEO OF
24    THE --
25    A    THIS IS A VIDEO OF THE SAMSUNG GALAXY S II,
```

2840

1  T-MOBILE, THAT WE'VE SEEN ONCE BEFORE.

2  Q    NOW LET'S GO TO THE NEXT ELEMENT, THE NEXT TWO

3  ELEMENTS, I AND J.

4  A    SO ELEMENTS I AND J ESSENTIALLY RELATE TO THE

5  SECOND GESTURE.  SO ONCE YOU HAVE PERFORMED WHAT

6  YOU JUST SAW, YOU CAN SEE THAT THE FIRST BOX IS

7  STILL ENLARGED, AND YOU WILL SEE IN THE VIDEO

8  DETECTING A SECOND GESTURE ON A SECOND BOX, AND YOU

9  CAN SEE THAT THE SECOND BOX IS DISTINCT FROM THE

10 FIRST BOX.

11        AND THEN THE INSTRUCTIONS IN RESPONSE TO

12 THAT GESTURE ESSENTIALLY TRANSLATE THE DOCUMENT SO

13 THAT NOW THE SECOND BOX IS SUBSTANTIALLY CENTERED

14 ON THE WEB SCREEN DISPLAY.

15 Q    AND THAT'S PDX 29.39.

16        SO HAVE YOU NOW GONE THROUGH ALL OF THE

17 ELEMENTS, ALL OF THE LIMITATIONS OF CLAIM 50 OF THE

18 '163 PATENT, SIR?

19 A    YES, I HAVE.

20 Q    AND YOU FIND THEM -- DO YOU FIND THEM PRESENT

21 IN THE SAMSUNG DEVICES YOU'RE ABOUT TO ENUMERATE?

22 A    YES, I DO, AND I HAVE.

23 Q    OKAY.  LET'S LOOK AT THE DEVICES.

24 A    OKAY.

25 Q    THIS IS 29.41.

2841

```
 1    A    WE SEE THE GALAXY S II, AT&T.  YOU JUST SAW
 2    THE FIRST GESTURE AND NOW THE SECOND GESTURE.
 3              THE GALAXY S II, T-MOBILE, WHICH IS A
 4    VIDEO THAT WE'VE ALREADY SEEN.
 5              THE GALAXY S II I9100, SECOND GESTURE.
 6              GALAXY S II 4G, FIRST GESTURE, AND NOW
 7    THE SECOND GESTURE.
 8              OKAY.  HERE IS A SET OF SIX OTHER
 9    DEVICES, THE ACE, THE CAPTIVATE, THE CONTINUUM, THE
10    DROID CHARGE, THE EPIC 4G, AND THE EXHIBIT 4G.
11              MAYBE THAT RAN BY A LITTLE QUICKLY.
12    PERHAPS WE CAN PLAY THAT ONE AGAIN.
13              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
14    OPEN COURT OFF THE RECORD.)
15    BY MR. JACOBS:
16    Q    AND WE'RE UP TO 29.42.
17    A    ANOTHER SIX DEVICES, THE FASCINATE, THE
18    GALAXY S I9000, THE GEM, THE INDULGE, THE
19    INFUSE 4G, AND INTERCEPT.
20    Q    THAT'S 29.43.
21    A    THE MESMERIZE, NEXUS S 4G, PREVAIL, REPLENISH,
22    TRANSFORM, AND VIBRANT.
23    Q    THAT'S PDX 29.44.
24    A    AND THEN FINALLY THE TABLETS, THE GALAXY TAB
25    7.0, THERE YOU SEE THE FIRST GESTURE, AND THE
```

```
1     SECOND GESTURE.

2               AND THE GALAXY TAB 10.1.

3               (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

4     OPEN COURT OFF THE RECORD.)

5     BY MR. JACOBS:

6     Q    AND THAT'S 29.45.

7               YOUR HONOR, THE DEMONSTRATIVES -- SORRY.

8               THE VIDEOS THAT WE'VE SHOWN PREPARED

9     UNDER DR. SINGH'S DIRECTION WE WOULD OFFER INTO

10    EVIDENCE.

11              THE COURT:  AND WHICH ONES?  THERE HAVE

12    BEEN QUITE A FEW VIDEOS.

13              MR. JACOBS:  YES.

14              THE COURT:  WHY DON'T YOU GO THROUGH THE

15    NUMBERS, PLEASE?

16              MR. JACOBS:  29.4, 29.5, 29.6, 29.10;

17    THEN THREE THAT WOULD BE UNDER SEAL, 29.12, .13,

18    .14; 29.16, 29.18, 29.20, .21, .22, .23, .24, .25,

19    THEN 29.26, .27, .28, .32, .34, .35; THE NEXT ONE

20    WOULD BE SEALED, THAT WOULD BE 29.36, .37, .39,

21    29.41, .42, .43, .44, AND .45.

22              THE COURT:  I DIDN'T SEE ON THE SCREEN

23    29.23, 29.25, 29.35.  I WAS MOSTLY CATCHING EVEN

24    NUMBERS.

25              MR. JACOBS:  LET'S TAKE A QUICK LOOK.
```

2843

```
1              THE COURT:  ARE THOSE PART --
2              MR. JACOBS:  29.23, MR. LEE.
3              THE COURT:  IS THAT -- ALL RIGHT.
4              MR. JACOBS:  '915 INFRINGING SMARTPHONES.
5              WHAT WAS THE NEXT ONE, YOUR HONOR?
6              THE COURT:  FOR THE SEALED, I HAD 29.11,
7      29.12, AND 29.13.  IT COULD BE THESE ARE
8      INTERMEDIARY ONES THAT I DIDN'T CATCH.
9              MR. JACOBS:  SO .12 IS THE FIRST ONE, .13
10     IS THE NEXT ONE, AND .14, THOSE ARE ALL THE SOURCE
11     CODE.  OH, YES.
12             THE COURT:  OKAY.  29.11, .12, .13, .14.
13             MR. JACOBS:  11 DOESN'T NEED TO BE UNDER
14     SEAL.  ACTUALLY, I DIDN'T LIST -- LET'S GO BACK TO
15     11.  THAT'S JUST THE CLAIM LANGUAGE, YOUR HONOR.
16     WE DON'T NEED THAT IN.
17             THE COURT:  OKAY.  SO THAT'S 29.11 IS NOT
18     COMING IN.
19             MR. JACOBS:  CORRECT.
20             THE COURT:  SO .12, .13, .14, .16, .18,
21     .20, .21, .22, .23, .24, .25, AND THEN 29.26, .27,
22     .28, .30, .32, .34, .35, .36.  IS THAT RIGHT?
23             MR. JACOBS:  .32, .34, .35, .36 IS
24     SEALED.
25             THE COURT:  YES.
```

2844

```
1              MR. JACOBS:  THEN .37 IS THE VIDEO.
2    .39 --
3              THE COURT: .41, .42, .43, .44, .45.
4              MR. JACOBS:  EXACTLY, YOUR HONOR.
5              THE COURT:  ALL RIGHT.  THEY'RE ADMITTED.
6              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBERS
7              29.4 - 29.6, 29.10; UNDER SEAL 29.12,
8              29.13, 29.14, 29.36; 29.16, 29.18, 29.20,
9              29.21 - 29.28, 29.32, 29.34 - 29.37,
10             29.39, 29.41 - 29.45, HAVING BEEN
11             PREVIOUSLY MARKED FOR IDENTIFICATION,
12             WERE ADMITTED INTO EVIDENCE.)
13             MR. JACOBS:  THANK YOU VERY MUCH.
14             THE COURT:  GO AHEAD.
15   BY MR. JACOBS:
16   Q    NOW, DR. SINGH, DID YOU LOOK AT SAMSUNG
17   DOCUMENTS TO DETERMINE WHAT INTEREST SAMSUNG HAD IN
18   THIS FEATURE IN APPLE -- IN THE APPLE IPHONE?
19   A    YES, I DID.
20   Q    WAS PX 38 ONE OF THE DOCUMENTS YOU LOOKED AT?
21   A    YES, IT WAS.
22             MR. JACOBS:  YOUR HONOR, WE'D OFFER PX 38
23   INTO EVIDENCE.
24             MR. DEFRANCO:  OBJECTION, FOUNDATION,
25   YOUR HONOR.
```

1    BY MR. JACOBS:

2    Q    DID YOU STUDY THIS DOCUMENT, SIR?

3    A    YES, I DID.

4         MR. JACOBS:  YOUR HONOR, WE'VE LAID A

5    FOUNDATION.

6         MR. DEFRANCO:  SAME OBJECTION, YOUR

7    HONOR.

8         THE COURT:  OKAY.  IT'S ADMITTED.

9         (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

10        38, HAVING BEEN PREVIOUSLY MARKED FOR

11        IDENTIFICATION, WAS ADMITTED INTO

12        EVIDENCE.)

13        THE COURT:  I DON'T HAVE ANY BINDERS FOR

14   MR. SINGH.

15        (PAUSE IN PROCEEDINGS.)

16        MR. JACOBS:  YOUR HONOR, WE HAVE ONE HERE

17   IF YOU LIKE.

18        THE COURT:  OKAY, I HAVE IT.

19        (PAUSE IN PROCEEDINGS.)

20   BY MR. JACOBS:

21   Q    DR. SINGH, WHAT IS THE TITLE OF THIS DOCUMENT,

22   PX 38?

23   A    WELL, THE TITLE IS "BROWSER ZOOMING METHODS

24   UX," THAT'S USER EXPERIENCE, "EXPLORATION STUDY."

25        IT'S A DOCUMENT FROM SAMSUNG

2846

1    TELECOMMUNICATIONS AMERICA.

2    Q    AND WHAT IS THE -- WHAT WAS THE PURPOSE OF

3    THIS DOCUMENT AS YOU UNDERSTOOD IT BASED ON YOUR

4    REVIEW?

5    A    SO THIS DOCUMENT WAS AN EXPLORATION STUDY

6    COMPARING A NUMBER OF DIFFERENT METHODS FOR ZOOMING

7    ON BROWSERS AND IT LOOKED AT A NUMBER OF DIFFERENT

8    ALTERNATIVE TECHNIQUES, INCLUDING SORT OF THE

9    DOUBLE TAP TO ZOOM FUNCTIONALITY.

10   Q    NOW, LET'S ADVANCE TO I BELIEVE IT'S SLIDE 47

11   IN THE DOCUMENT.

12   A    SO THIS, THIS PAGE OF THE DOCUMENT ESSENTIALLY

13   IS, IT'S SUMMARIZING THE RESULTS OF THE, OF THE

14   DOCUMENT, THAT THE EXPLORATION FOUND THAT, IN FACT,

15   THE DOUBLE TAP ZOOMING FUNCTIONALITY IN GENERAL WAS

16   SUPERIOR TO THEIR OTHER ALTERNATIVES THAT THEY

17   STUDIED, AND THAT THIS FUNCTIONALITY SHOULD BE

18   ADOPTED AS A SUPPLEMENTARY ZOOMING METHOD.

19         AND, FURTHER, THAT THE USER EXPERIENCE OF

20   THE IPHONE COULD BE USED AS A DESIGN BENCHMARK IN

21   WHATEVER FUNCTIONALITY THAT THEY, THAT THEY USED.

22   Q    NOW LET'S TAKE A LOOK AT PLAINTIFF'S EXHIBIT

23   44, WHICH IS ALREADY IN EVIDENCE AND THAT'S IN YOUR

24   BINDER.

25         THE JURY HAS SEEN THIS DOCUMENT.  IT'S

```
 1    THE "RELATIVE EVALUATION REPORT ON S1 IPHONE,

 2    MARCH 2, 2010."

 3              DOES THIS DOCUMENT HAVE ANY RELATIONSHIP

 4    TO THE PATENTS THAT YOU STUDIED?

 5    A    YES, IT DOES.

 6    Q    LET'S GO TO SLIDE 49, PLEASE.

 7              AND WHAT DOES THIS DOCUMENT SHOW?  OR

 8    WHAT DOES THIS PAGE SHOW?

 9    A    SO THIS, THIS DOCUMENT IS, AGAIN, A RELATIVE

10    EVALUATION REPORT, IN PARTICULAR, IT'S COMPARING

11    THE S1 PHONE, WHICH WAS A PHONE IN DEVELOPMENT, I

12    BELIEVE IT WAS -- IT REPRESENTED THE GALAXY S

13    FAMILY OF PHONES -- AND COMPARING THE S PHONE WITH

14    THE IPHONE FUNCTIONALITY.

15              NOW, IN THE IPHONE, AS YOU'VE SEEN, YOU

16    PERFORM A DOUBLE TAP TO, TO SORT OF ZOOM IN ON

17    CONTENT AND THEN YOU PERFORM A DOUBLE TAP AND IT

18    TAKES YOU TO A SECOND PIECE OF CONTENT AND SO ON.

19              IN THE OLDER SAMSUNG PHONES, THE SECOND

20    GESTURE WAS PERFORMED -- ACTUALLY IN ALL OF THE

21    SAMSUNG PHONES, BUT ALSO IN THE OLDER PHONES, THE

22    SECOND GESTURE WAS PERFORMED WITH A SHORT PRESS,

23    AND IF YOU DOUBLE TAPPED, IT WOULD SORT OF ZOOM IN

24    AND OUT.

25              SO THIS DOCUMENT FINDS THAT THAT ZOOMING
```

```
 1    IN AND OUT PERHAPS IS NOT AS GOOD AS WHAT WE SEE
 2    WITH THE IPHONE AND, THEREFORE, SUGGESTS AN
 3    IMPROVEMENT, WHICH IS THAT THE DOUBLE TAP ZOOM
 4    IN/OUT FUNCTION NEEDS TO BE SUPPLEMENTED IN THE
 5    NEWER DEVICES.
 6    Q    AND IN THE NEWER DEVICES DID YOU, IN FACT, SEE
 7    SUPPLEMENTATION THAT CORRESPONDED TO WHAT THIS
 8    DOCUMENT WAS SEEING IN THE IPHONE?
 9    A    YES, INDEED.  THE NEWER SAMSUNG DEVICES DID,
10    IN FACT, SUPPLEMENT THEIR DOUBLE TAP TO ZOOM
11    FUNCTIONALITY, AND THE WAY THEY SUPPLEMENTED IT WAS
12    TO WORK, ESSENTIALLY, THE WAY IT IS DESCRIBED AND
13    IT TAKES PLACE ON THE IPHONE.
14              MR. JACOBS:  THANK YOU VERY MUCH,
15    DR. SINGH.
16              THE COURT:  ALL RIGHT.  THE TIME IS NOW
17    2:00 O'CLOCK.
18                    CROSS-EXAMINATION
19    BY MR. DEFRANCO:
20    Q    GOOD AFTERNOON, DR. SINGH.
21    A    GOOD AFTERNOON.
22    Q    MY NAME IS ED DEFRANCO.  I'M ONE OF THE
23    LAWYERS REPRESENTING SAMSUNG.  WE HAVEN'T MET
24    BEFORE, OBVIOUSLY.
25    A    NO.
```

2854

```
1              YOU STARTED WITH THE '915 PATENT.  DO YOU
2    REMEMBER THAT?
3    A    YES.
4    Q    YOU TALKED ABOUT MR. FORSTALL AND SOME OF HIS
5    TESTIMONY THAT HE GAVE IN THIS CASE.
6              DO YOU REMEMBER THAT?
7    A    YES, I DO.
8    Q    WERE YOU HERE IN COURT FOR HIS TESTIMONY?
9    A    I WAS HERE FOR, I BELIEVE, FOR AT LEAST A PART
10   OF IT.
11   Q    LET'S PUT UP ONE OF YOUR SLIDES.  IT'S CLAIM 8
12   OF THE '915 PATENTS.  IT'S PDX 29.8.  THIS IS ONE
13   OF YOUR SLIDES, DR. SINGH; RIGHT?
14   A    YES.
15   Q    NOW, YOU SAID, IF I HAVE THIS RIGHT, ON DIRECT
16   EXAMINATION, THAT -- YOU MENTIONED MR. FORSTALL A
17   BIT, YOU TALKED GENERALLY ABOUT THE INVENTION IN
18   THE '915 PATENT, AND YOU SAID IT RELATES TO HOW TO
19   POSITION AND RESIZE, WITH YOUR FINGERS, ITEMS ON A
20   SMALL SCREEN, LIKE THE SIZE OF A POSTCARD.
21             DO YOU REMEMBER THAT?
22   A    I GAVE THAT EXAMPLE ACTUALLY BEFORE THIS SLIDE
23   SHOWED UP AS A GENERAL UNDERSTANDING TO PEOPLE AS
24   TO WHAT THE PATENT DEALT WITH.
25             WHEN WE CAME TO THIS SLIDE, WE WERE
```

2855

```
 1    TALKING MUCH MORE SPECIFICALLY ABOUT THE CLAIM
 2    LANGUAGE.
 3    Q    OKAY.  LET'S TALK ABOUT SOME OF THE CLAIM
 4    LANGUAGE.  ONE OF THE THINGS THAT -- YOUR TITLE, BY
 5    THE WAY, IS SCROLL VERSUS GESTURE; RIGHT?
 6    A    SURE.
 7    Q    DO YOU SEE THAT?
 8    A    YES.
 9    Q    AND THOSE ARE ACTUAL WORDS THAT ARE USED IN
10    CLAIM 8; ISN'T THAT RIGHT?
11    A    YES.
12    Q    NOW, A SCROLL GENERALLY, AS WE'VE SEEN IN THE
13    CASE, IS YOU CAN USE TWO FINGERS OR YOU CAN MOVE
14    TWO FINGERS TO MOVE CONTENT UP ON THE DEVICES THAT
15    WE'RE TALKING ABOUT.  IS THAT FAIR?
16    A    YOU'LL HAVE TO BE A LITTLE MORE PRECISE WITH A
17    QUESTION LIKE THAT IF YOU EXPECT AN ANSWER.
18    Q    WHAT'S A SCROLL, DOCTOR?
19    A    A SCROLL -- IN THE CONTEXT OF THE '915 PATENT,
20    A SCROLL IS MOVING OR SLIDING CONTENT ON THE
21    SCREEN.
22    Q    OKAY.  MOVING OR SLIDING CONTENT ON THE
23    SCREEN.  IS THAT RIGHT?
24    A    YEAH.
25    Q    THAT CONCEPT ALONE, SCROLL, THE '915 INVENTORS
```

2856

1    DIDN'T INVENT SCROLLING.  THAT'S FAIR, ISN'T IT?

2    A    THAT'S FAIR.

3    Q    GESTURE, A GESTURE, WE'VE HEARD ALSO, IS A

4    SCALE.  THAT WORD IS USED IN THE CLAIM, RIGHT, A

5    SCALE?

6    A    YES.

7    Q    THEY'RE INTERCHANGEABLE IN YOUR VIEW; RIGHT?

8    A    NO, THEY'RE NOT INTERCHANGEABLE.  SCALE IS AN

9    EXAMPLE OF A MORE GENERAL GESTURE OPERATION.

10   Q    BETTER PUT.  THANK YOU.

11           BUT A SCALE IS A GESTURE; ISN'T THAT

12   TRUE?

13   A    A SCALE IS A GESTURE OPERATION IN THE CONTEXT

14   OF THE '915.

15   Q    AND A SCALE, IS THAT PRETTY MUCH THE SAME

16   THING AS A ZOOM?  YOU'RE TAKING TWO FINGERS AND

17   ZOOMING IN OR OUT?

18   A    YES.

19   Q    IS THAT FAIR?

20   A    THAT'S FAIR.

21   Q    THE INVENTORS OF THE '915 PATENT, THEY DIDN'T

22   INVENT A GESTURE, A SCALE, A ZOOM, OR DETECTING

23   THOSE ON THE DEVICES WE'RE TALKING ABOUT.  ISN'T

24   THAT FAIR, SIR?

25   A    ABSOLUTELY NOT.  THE CONCEPT OF SCALING GOES

2857

```
1    BACK TO THE ANCIENT GREEKS.

2    Q    I THINK AS YOU PUT IT -- LATER ON IN YOUR

3    TESTIMONY WHEN WE GOT TO THE DETERMINATION STEP, I

4    THINK YOU USED THE WORDS THE "ALL-IMPORTANT TEST."

5             DO YOU REMEMBER THAT?  DO YOU REMEMBER

6    USING THAT PHRASE?

7    A    I MAY HAVE SAID THAT, YEAH, SURE.

8    Q    AND BY THAT, DIDN'T YOU MEAN THAT THIS CLAIM

9    IS NOT TALKING ABOUT JUST USING A SCROLL AND THE

10   DEVICE FIGURING OUT IF A SCROLL IS THERE, BECAUSE

11   CERTAINLY THAT'S NOT WHAT THEY INVENTED.  FAIR?

12   A    FAIR.

13   Q    THE CLAIM IS NOT ABOUT SOME -- A USER USING A

14   GESTURE OPERATION LIKE A ZOOM AND THE DEVICE

15   FIGURING OUT IF THERE'S A GESTURE THAT HAS BEEN

16   PERFORMED; RIGHT?  BECAUSE THAT WAS THERE, AS YOU

17   SAID; CORRECT?

18   A    IT IS ABOUT THE DEVICE FIGURING OUT WHETHER

19   IT'S A GESTURE BASED ON TWO OR MORE FINGER INPUTS.

20   Q    BUT AS YOU SAID, IT'S THE ALL-IMPORTANT TEST

21   IN THE CLAIM AS TO WHETHER IT'S A ONE FINGER SCROLL

22   VERSUS A TWO FINGER GESTURE.  THAT'S WHAT THIS

23   INVENTION IS ABOUT.  FAIR?

24   A    SURE.

25   Q    OKAY.  NOW, YOU SAID YOU LOOKED AT THE
```

2858

```
 1    PROSECUTION HISTORY.

 2              DO YOU REMEMBER THAT?

 3    A    YES, I DID.

 4    Q    LET'S PUT UP A SLIDE THAT'S BEEN PREPARED.

 5    IT'S SLIDE SDX 3912.007.

 6              NOW, DR. SINGH, HAVE YOU SEEN THIS SLIDE

 7    BEFORE TODAY?

 8    A    YES, I HAVE.

 9    Q    YOU'VE SEEN -- THIS IS ONE OF OUR SLIDES WE

10    PREPARED FOR CROSS.  YOU SAW IT BEFORE YOU TOOK THE

11    STAND TODAY; RIGHT?

12    A    YES.

13    Q    YOU KNOW WHAT THIS SLIDE IS?  IT'S SHOWING ON

14    THE LEFT-HAND SIDE AN EARLY VERSION OF THE CLAIM

15    AND THE PROSECUTION HISTORY.  IS THAT RIGHT?

16    A    THAT IS CORRECT.

17    Q    AND PROSECUTION HISTORY, AGAIN, IS THE BACK

18    AND FORTH BETWEEN THE PATENT OFFICE.  IT'S THE

19    DIALOGUE THAT ULTIMATELY, IF SUCCESSFUL, RESULTS IN

20    A PATENT BEING ISSUED.  IS THAT FAIR?

21    A    ABSOLUTELY.

22    Q    AND ON THE RIGHT-HAND SIDE IS THE ACTUAL

23    CLAIM.  DO YOU SEE THAT?

24    A    YES.

25    Q    AND THERE'S -- YOU CAN TELL JUST BY LOOKING AT
```

2859

```
 1    THE TWO THERE'S MORE WORDS, INFORMATION, THERE ARE
 2    MORE LIMITATIONS IN THE CLAIM AS ACTUALLY ISSUED
 3    THAN IN THE EARLY FILE CLAIM.  IS THAT FAIR?
 4    A    VERY FAIR.
 5    Q    AND IT'S TRUE, ISN'T IT, SIR, THAT FOR THERE
 6    TO BE INFRINGEMENT -- YOU'RE AN EXPERT ON
 7    INFRINGEMENT, RIGHT? -- FOR THERE TO BE
 8    INFRINGEMENT, EACH AND EVERY CLAIM ELEMENT MUST BE
 9    FOUND IN THE ACCUSED DEVICE; IS THAT RIGHT?
10    A    THAT IS RIGHT.
11    Q    IF ONE IS MISSING, ONE, ONLY ONE IS MISSING,
12    THERE'S NO INFRINGEMENT; RIGHT?
13    A    THAT IS RIGHT.
14    Q    NOW, THIS REFLECTS, DOESN'T IT, THAT AS
15    ORIGINALLY FILED, THAT ALL-IMPORTANT TEST THAT YOU
16    MENTIONED WAS NOT IN THE CLAIM; RIGHT?
17            DO YOU SEE THAT HIGHLIGHTED, "BY
18    DISTINGUISHING BETWEEN A SINGLE INPUT POINT," AND
19    THEN IT GOES ON TO TALK ABOUT TWO OR MORE INPUT
20    POINTS?  THAT NOTION WAS NOT IN THE CLAIM AS IT
21    ORIGINALLY FILED.  IS THAT FAIR?
22    A    ABSOLUTELY NOT.
23    Q    NOW, WHY -- THAT LANGUAGE IS -- DO YOU SEE
24    THAT LANGUAGE IN THE CLAIM AS ORIGINALLY FILED,
25    SIR?
```

1    A    I DO.

2    Q    OKAY.  NOW, IS IT YOUR UNDERSTANDING, SIR,

3    THAT ONE OF THE REASONS THAT PATENT EXAMINERS

4    INSIST ON ADDITIONS BEING MADE TO CLAIMS IS BECAUSE

5    THEY'VE SEEN SOMETHING THAT SAYS TO THEM, UNLESS

6    THAT'S ADDED, THIS CLAIM MAY NOT BE VALID, FOR

7    EXAMPLE?

8    A    PERHAPS.

9    Q    AND BY THE WAY, IF A CLAIM -- WE'RE GOING TO

10   TALK ABOUT INVALIDITY LATER IN THE CASE, BUT IF A

11   CLAIM IS INVALID, THEN YOU CAN'T INFRINGE THAT

12   CLAIM.  IS THAT FAIR?  YOU'RE HERE TO TALK ABOUT

13   INFRINGEMENT TODAY; RIGHT?

14   A    RIGHT.

15   Q    NOW, YOU SHOWED SOME DEMONSTRATIVES ON DIRECT

16   EXAMINATION.  YOU SHOWED SOME ACTUAL PRODUCTS.

17            DO YOU REMEMBER THAT?

18   A    THAT IS CORRECT.

19   Q    YOU SHOWED SOME INSTANCES WHERE THERE'S A, A

20   ONE FINGER SCROLL.  IS THAT FAIR?

21   A    YES.

22   Q    LET'S PUT BACK UP ON THE SCREEN, PLEASE, RYAN,

23   PDX 29.8.

24            NOW, WITH RESPECT TO THE SCROLL VERSUS A

25   GESTURE, THE CLAIM AS IT ULTIMATELY CAME OUT OF THE

1    PATENT OFFICES USES SOME PRETTY SPECIFIC LANGUAGE,

2    DOESN'T IT?

3    A    IT USES THE LANGUAGE OF THE CLAIM THAT YOU

4    SEE.

5    Q    BUT IT'S PRETTY SPECIFIC, ISN'T IT?  IT

6    DOESN'T JUST SAY "A SCROLL."  IT SAYS "A SINGLE

7    INPUT POINT."

8              DO YOU SEE THAT?

9    A    YES.  IT SAYS USING A, A SINGLE INPUT POINT AS

10   A WAY OF DISTINGUISHING BETWEEN A SCROLL AND A

11   GESTURE OPERATION.

12   Q    AND A SINGLE INPUT POINT, ACCORDING TO THE

13   CLAIM, IS INTERPRETED AS A SCROLL OPERATION; ISN'T

14   THAT CORRECT, SIR?

15   A    ABSOLUTELY CORRECT.

16   Q    TWO OR MORE INPUT POINTS ARE INTERPRETED

17   DIFFERENTLY; RIGHT?  THOSE ARE SPECIFICALLY

18   INTERPRETED, ACCORDING TO THIS CLAIM, AS A GESTURE

19   OPERATION; IS THAT RIGHT?

20   A    THAT IS RIGHT.

21   Q    AND THE CLAIM REQUIRES THAT DISTINCTION.  ONE

22   IS A SCROLL, TWO IS A GESTURE OR ZOOM OR SCALE;

23   CORRECT?

24   A    YES.

25   Q    AND IF YOU DON'T HAVE BOTH OF THOSE, IF YOU'RE

2862

```
1    NOT APPLYING THAT TEST, THEN THAT CLAIM IS NOT

2    PRACTICED; IS THAT CORRECT?

3    A    IF YOU'RE NOT APPLYING THAT TEST AND, AND THE

4    REST OF THE, OF THE CLAIM ELEMENTS, YES, IN THE

5    APPROPRIATE CONTEXT, THEN, YES.

6    Q    BUT THE TEST IS ONE, SCROLL; TWO, GESTURE.

7    THAT'S THE TEST THAT THE CLAIM VERY CLEARLY LAYS

8    OUT, ISN'T IT?  IT SAYS ONE, ONE IS A SCROLL; TWO

9    IS A GESTURE; RIGHT?

10   A    ABSOLUTELY.

11   Q    OKAY.  BUT YOU'LL AGREE, THOUGH, THAT THERE

12   ARE AT LEAST SOME PRODUCTS, LIKE THE TAB 10.1 --

13   YOU KNOW THE TAB 10.1.  YOU CAN SCROLL WITH TWO

14   FINGERS; IS THAT CORRECT?

15   A    THAT IS NOT CORRECT.

16   Q    OH, YOU CANNOT SCROLL WITH TWO FINGERS IN THE

17   TAB 10.1?

18   A    ABSOLUTELY NOT.

19   Q    WHY IS THAT?

20   A    I'VE NEVER BEEN ABLE TO DO IT.  MAYBE YOU CAN

21   SHOW ME ON A DEVICE.

22   Q    WELL, LET'S TAKE A LOOK AT VIDEO DX 2557.

23            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

24   OPEN COURT OFF THE RECORD.)

25   BY MR. DEFRANCO:
```

1   Q    IS THAT TWO FINGERS, SIR, BEING USED TO DO A

2   SCROLL OPERATION?

3   A    THAT IS WHAT I DESCRIBED IN MY OWN DIRECT

4   TESTIMONY AS A SIMULTANEOUS SCALE AND TRANSLATE.

5            IF YOU LOOK AT THAT VIDEO CAREFULLY, YOU

6   WILL, YOU WILL NOTICE THAT THE CONTENT IS, IS SORT

7   OF JITTERING SPASMODICALLY BECAUSE IT'S SCALING

8   WHILE IT'S, IT'S TRANSLATING.  AND PERHAPS IF YOU

9   TRY REALLY HARD, YOU MIGHT BE ABLE TO GET IT TO GET

10  CLOSE TO STEADY.

11            BUT THE BOTTOM LINE IS THERE ARE

12  INSTRUCTIONS, AS I SHOWED YOU, AND THE CLAIM IS

13  ABOUT THE INSTRUCTIONS IN THE CLAIM LANGUAGE.

14  TECHNICALLY THE INSTRUCTIONS INFRINGE THE CLAIM.

15  Q    I'M SORRY.  ARE YOU DONE, SIR?

16  A    SORRY.

17  Q    OKAY.  LET ME -- LET ME -- LET'S PLAY IT ONE

18  MORE TIME, PLEASE.

19            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

20  OPEN COURT OFF THE RECORD.)

21  BY MR. DEFRANCO:

22  Q    MAYBE, MAYBE WE JUST SEE THIS DIFFERENTLY.  I

23  SEE IT JITTERING BACK AND FORTH, BUT I DON'T SEE --

24  I SEE THAT AS -- WOULDN'T YOU SAY THAT'S MORE OF A

25  SCROLL THAN A ZOOM, SIR?

```
 1    A    WELL, YOU KNOW, IF YOU WERE TO GIVE ME A
 2    DEVICE, I WILL HAPPILY SHOW IT TO YOU IN A WAY THAT
 3    MAYBE YOU WON'T SEE IT SO DIFFERENTLY, BECAUSE I
 4    CAN SHOW YOU THAT IT IS SCALING AND TRANSLATING
 5    BOTH IN YOUR VIDEO AND IN THE SOURCE CODE THAT I
 6    HAVE ANALYZED.
 7    Q    WELL, LET ME ASK YOU THIS, AND I WANT TO TALK
 8    TO YOU ABOUT YOUR SOURCE CODE ANALYSIS.
 9              BUT IF IT WERE -- IF IT WAS TWO FINGERS,
10    IF TWO FINGERS WERE A SCROLL, THEN THAT WOULDN'T
11    NEATLY FIT THE TEST IN THE CLAIM, RIGHT?  BECAUSE
12    THE CLAIM, AS WE SAID, IS ONE FINGER IS A SCROLL,
13    TWO FINGERS IS A GESTURE; RIGHT?  IF IT WERE TWO
14    FINGERS AS A SCROLL, IT WOULDN'T FIT THAT TEST;
15    ISN'T THAT TRUE, SIR?
16    A    BUT THAT'S NOT WHAT YOU'RE SHOWING ME.
17    Q    THAT'S NOT MY QUESTION AT THIS POINT.  I'M
18    JUST ASKING YOU GENERALLY, SO WE CAN GET AWAY FROM
19    THE DEBATE YOU AND I ARE HAVING ABOUT WHAT'S
20    ACTUALLY SHOWN THERE, YOU'LL AGREE WITH ME, WON'T
21    YOU, THAT IF THERE'S A TWO FINGER SCROLL, ASSUMING
22    SOME PRODUCT DID THAT, THAT WOULDN'T FIT WITHIN THE
23    TEST THAT YOU POINTED OUT IN THE CLAIM 8 OF THE
24    '915 PATENT; IS THAT TRUE?
25    A    YOU WOULD HAVE TO QUALIFY WHAT YOU'RE SAYING,
```

```
 1    BECAUSE IF, FOR INSTANCE, THERE WAS SOME HYPER
 2    TECHNICAL PRODUCT WHERE THERE WAS ABSOLUTELY NO
 3    SCALING PERFORMED, ABSOLUTELY YOU COULD DO A, A TWO
 4    FINGER SCROLL OR WHATEVER YOU WANTED TO DO.
 5              IT'S -- THE KEY IS DISTINGUISHING BETWEEN
 6    A SCROLL AND A GESTURE OPERATION.
 7              AND, YES, IN THAT CONTEXT, A SINGLE INPUT
 8    IS USED FOR SCROLLING AND TWO OR MORE INPUTS IS
 9    USED FOR THE GENERAL GESTURE OPERATION.
10    Q    NOW, YOU SAID YOU ANALYZED SOFTWARE, IS THAT
11    CORRECT, THE SOFTWARE THAT IS USED IN SAMSUNG'S
12    PHONES?
13    A    YES.
14    Q    NOW, YOU DID AN EXPERT REPORT IN THIS CASE.
15              DO YOU REMEMBER THAT?
16    A    YES, I DID.
17    Q    YOU GAVE SOME DETAILED CLAIM CHARTS FOR
18    ANALYSIS OF A COUPLE OF PRODUCTS, TWO PRODUCTS, I
19    BELIEVE, RIGHT, WHERE YOU REFERENCE SOURCE CODE?
20              DO YOU REMEMBER THAT?
21    A    I BELIEVE I REFERENCED SOURCE CODE FOR FOUR
22    PRODUCTS.
23    Q    YOU -- IN DETAIL, YOU DID IT FOR TWO, AND THEN
24    YOU HAD SOME SHORTHAND REFERRING TO TWO OTHER
25    PRODUCTS IN THE CHART?
```

2866

```
1    A    IT WAS EQUALLY IN DETAIL FOR EVERY -- FOR EACH
2    CLAIM ELEMENT THAT HAD SOURCE CODE.  FOR ONE -- FOR
3    ONE OF THE CHARTS, IT HAD THE EQUIVALENT IN TWO
4    OTHER CHARTS.
5    Q    OKAY.  THAT'S FINE.  I'LL TAKE IT.
6            FOR FOUR PRODUCTS, THEN, YOU DID SOURCE
7    CODE ANALYSIS; IS THAT CORRECT?
8    A    THAT IS NOT CORRECT.
9    Q    WELL, AT LEAST IN YOUR EXPERT REPORT WHERE YOU
10   HAD DETAILED CHARTS, YOU DID THAT FOR FOUR
11   PRODUCTS; IS THAT CORRECT?
12           MR. JACOBS:  YOUR HONOR, OBJECTION.  I
13   FEAR WE'RE TREADING ON ONE OF THE COURT'S ORDERS
14   ABOUT CROSS-EXAMINATION RELATING TO THE SOURCE CODE
15   THAT SAMSUNG DID OR DID NOT PROVIDE.
16           MR. DEFRANCO:  YOUR HONOR, THIS IS ALL
17   WITHIN THE SOURCE CODE -- ALL I'M ASKING ABOUT IS
18   THE SOURCE CODE THAT DR. SINGH ACTUALLY ANALYZED.
19           I'M NOT ASKING HIM ABOUT SOURCE CODE THAT
20   WAS NOT PROVIDED.  HE SAID HE ANALYZED 24 PRODUCTS.
21           THE COURT:  ALL RIGHT.  GO AHEAD.  JUST
22   PLEASE BE AWARE OF MY ORDER.
23           MR. DEFRANCO:  YES, YOUR HONOR.
24           THE COURT:  AND JUDGE GREWAL'S ORDER.
25   THANK YOU.
```

```
1              MR. DEFRANCO:  LET'S PUT UP PDX 29.12.

2    Q    NOW, YOU SAID SOMETHING TO ME A MOMENT AGO,

3    SIR --

4              THE COURT:  I THINK THAT WAS SEALED.  CAN

5    YOU TAKE THAT OFF?

6              MR. DEFRANCO:  OKAY.

7              THE COURT:  I MEAN, IF YOU WANT TO HAVE

8    IT OPEN, THAT'S FINE.  THIS IS SAMSUNG SOURCE CODE,

9    SO IT'S UP TO YOU.

10             MR. DEFRANCO:  JUST ON THESE SCREENS,

11   YOUR HONOR.

12             THE COURT:  THAT'S FINE.

13             MR. DEFRANCO:  SO I DON'T GET IN TROUBLE.

14             THE COURT:  THAT'S FINE.  WHATEVER YOU

15   WISH.

16   BY MR. DEFRANCO:

17   Q    NOW, WE'RE LOOKING -- YOU PRESENTED, DOCTOR, A

18   COUPLE OF DEMONSTRATIVES LIKE THIS WHERE YOU

19   DEPICTED WHAT'S HAPPENING IN THE SOURCE CODE; IS

20   THAT CORRECT?

21   A    THAT IS CORRECT.  THEY'RE EXCERPTS.

22   Q    WELL, IT'S NOT REALLY -- AN EXCERPT TO ME IS

23   SOMETHING WHERE YOU'VE TAKEN SOMETHING OUT AND

24   SHOWN IT.

25             THIS IS A DEPICTION OF YOUR ANALYSIS OF
```

2868

```
1     THE SOURCE CODE.  ISN'T THAT TRUE, SIR?

2     A    YES.

3     Q    AND YOU DIDN'T ACTUALLY SHOW US -- WE'RE GOING

4     TO LOOK AT A LITTLE BIT, BUT YOU DIDN'T ACTUALLY

5     PRESENT ACTUAL SOURCE CODE AS IT EXISTS IN THE

6     PRODUCTS AND, LIKE SOMETIMES HAPPENS, SHOW US WHERE

7     CERTAIN THINGS ARE BEING DONE.

8              YOU SHOWED US A DEPICTION OF YOUR VIEW OF

9     WHAT'S HAPPENING IN THE SOURCE CODE; IS THAT FAIR?

10    A    I ANALYZED IT IN DETAIL IN MY, IN MY REPORT.

11    I -- I'VE SHOWN IT IN -- TO A LEVEL OF DETAIL THAT

12    I FELT WAS NECESSARY AND UNDERSTANDABLE TO, TO THE

13    JURY.

14             BUT IF YOU WOULD LIKE, I'LL BE HAPPY TO

15    DIG INTO IT WITH YOU.

16    Q    THAT'S THE LAST THING I WANT TO DO, SIR.

17    A    OKAY.

18    Q    I JUST DON'T HAVE TIME.

19    A    OKAY.

20    Q    MY POINT IS SIMPLE.  YOU ANALYZED FOUR

21    PRODUCTS IN YOUR EXPERT REPORTS, YOU HAD THIS

22    DEPICTION, BUT WHEN YOU TALKED ABOUT THE SOURCE

23    CODE YOU PRESENTED ON YOUR DIRECT EXAMINATION, IT'S

24    THIS DEPICTION THAT YOU WERE TALKING ABOUT.  YOU

25    DIDN'T ACTUALLY SHOW THE ACTUAL SOURCE CODE AND HOW
```

2910

```
 1    STRUCTURED ELECTRONIC DOCUMENT OR MULTIPLE OR WHICH

 2    STRUCTURED ELECTRONIC DOCUMENT IS NOT OF

 3    CONSEQUENCE.

 4          WHAT IS OF CONSEQUENCE IS THAT THERE'S A

 5    PROGRAM TO DEAL WITH SUCH DOCUMENTS.

 6    Q   AND WHEN WE'RE OBSERVING THE DEVICES IN

 7    ACTION, ARE WE OBSERVING THOSE ACTIONS OPERATING ON

 8    A STRUCTURED ELECTRONIC DOCUMENT?

 9    A   YES.

10          MR. DEFRANCO:  YOUR HONOR, WE'RE LEADING

11    THE WITNESS NOW THROUGH HIS TESTIMONY.

12          THE COURT:  YES.  SUSTAINED.

13    BY MR. JACOBS:

14    Q   CAN YOU EXPLAIN WHETHER OR NOT, WHEN WE'RE

15    OBSERVING THE DEVICE IN ACTION, WE ARE OBSERVING

16    THE INSTRUCTIONS OPERATING ON A STRUCTURED

17    ELECTRONIC DOCUMENT?

18    A   YES, EXACTLY.  WHEN WE OBSERVE THE DEVICE IN

19    ACTION, THESE INSTRUCTIONS ARE, IN FACT, OPERATING

20    ON A STRUCTURED ELECTRONIC DOCUMENT.  IN

21    PARTICULAR, WE SAW THEM OPERATING ON THE

22    NEW YORK TIMES WEB PAGE.

23    Q   YOU WERE ASKED ABOUT SOME SOURCE CODE EXTRACTS

24    AND THE WORD GESTURE IN YOUR SLIDE VERSUS THE

25    PRESENCE OF GESTURE IN THE ACTUAL CODE.
```

2911

```
 1              CAN YOU EXPLAIN WHAT WAS GOING ON THERE?
 2     A    WELL, AS I SAID, I PROVIDED SORT OF A
 3     SCHEMATIC, OR AN ILLUSTRATION OF WHAT WAS IN THE
 4     SAMSUNG SOURCE CODE.
 5              SAMSUNG, I BELIEVE, WAS ASKED TO PROVIDE
 6     ALL -- ITS ENTIRE UNIVERSE OF ALL POSSIBLE SOURCE
 7     CODE.  IN THIS LITIGATION WHAT WAS PROVIDED WAS
 8     JUST A SUBSET.  I THINK AT MOST ONE FOR -- ONE
 9     PIECE OF SOURCE CODE FOR EVERY DEVICE.
10              AND I FOUND THAT THESE INSTRUCTIONS WERE
11     LARGELY IDENTICAL ON ALL THESE PIECES OF SOURCE
12     CODE, NOT JUST THE FOUR THAT I'VE BEEN -- THAT I'VE
13     PRESENTED AS REPRESENTATIVE.
14              AND SO SIMILARLY ON THE SLIDE THAT YOU
15     SAW, WHAT YOU SAW WAS JUST A REPRESENTATIVE OF
16     THAT, THAT -- OF THAT FUNCTION.
17              PERHAPS IN THE OTHER PIECE OF CODE THAT I
18     WAS SHOWN, YOU KNOW, THE VARIABLE NAME MIGHT HAVE
19     BEEN CHANGED OR THERE COULD BE A MINOR
20     TYPOGRAPHICAL CHANGE.
21              BUT INSTRUCTIONALLY, LOGICALLY, THE CODE
22     WAS IDENTICAL.
23              MR. JACOBS:  THANK YOU VERY MUCH,
24     DR. SINGH.
25              THE COURT:  ALL RIGHT.  THE TIME IS 3:25.
```

2912

```
 1    MAY THIS WITNESS BE EXCUSED AND IS IT SUBJECT TO
 2    RECALL?
 3              MR. DEFRANCO:  YOUR HONOR, WE JUST HAVE
 4    ONE EXHIBIT.
 5              THE COURT:  OKAY.  GO AHEAD, PLEASE.
 6    IT'S 3:25.  GO AHEAD, PLEASE.
 7              MR. DEFRANCO:  2257, 2557.  EXCUSE ME,
 8    YOUR HONOR.
 9              MR. JACOBS:  THAT'S FINE, YOUR HONOR.
10              THE COURT:  I'M SORRY?
11              MR. JACOBS:  THAT'S FINE.  I THINK YOU
12    WERE -- I DIDN'T OBJECT.
13              THE COURT:  I DIDN'T KNOW -- WHAT JUST
14    HAPPENED?
15              MR. DEFRANCO:  I'M SORRY.  THAT'S MY
16    FAULT.  WE'RE OFFERING EXHIBIT 25 -- DX 2557 INTO
17    EVIDENCE, AND THERE'S NO OBJECTION.
18              THE COURT:  OH, OKAY.  THAT'S ADMITTED.
19              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
20              2557, HAVING BEEN PREVIOUSLY MARKED FOR
21              IDENTIFICATION, WAS ADMITTED INTO
22              EVIDENCE.)
23              THE COURT:  OKAY.  ALL RIGHT.  IT'S 3:26.
24              ALL RIGHT.  NOW, DO YOU HAVE MORE?
25              MR. JACOBS:  NO.
```

```
 1              THE COURT:  OKAY.  MAY THIS WITNESS BE
 2      EXCUSED?
 3              MR. JACOBS:  SUBJECT TO RECALL.
 4              THE COURT:  OKAY.  YOU'RE EXCUSED SUBJECT
 5      TO RECALL.  YOU CAN STEP DOWN.
 6              CALL YOUR NEXT WITNESS, PLEASE.
 7              MR. JACOBS:  WE WOULD LIKE TO CALL
 8      DR. HAUSER, YOUR HONOR.
 9              THE COURT:  OKAY.
10              (PAUSE IN PROCEEDINGS.)
11              THE COURT:  MAY I HAVE THE HAUSER DIRECT
12      EXHIBITS?
13              MR. JACOBS:  YES, YOUR HONOR.
14              THE CLERK:  RAISE YOUR RIGHT HAND,
15      PLEASE.
16                      JOHN HAUSER,
17      BEING CALLED AS A WITNESS ON BEHALF OF THE
18      PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS
19      EXAMINED AND TESTIFIED AS FOLLOWS:
20              THE WITNESS:  I DO.
21              THE CLERK:  WOULD YOU HAVE A SEAT,
22      PLEASE.
23              THE COURT:  IT'S 3:28.  GO AHEAD.
24              THE CLERK:  STATE YOUR NAME, PLEASE, AND
25      SPELL IT.
```

2914

| | |
|---|---|
| 1 | **DIRECT EXAMINATION** |
| 2 | BY MR. JACOBS: |
| 3 | Q    STATE YOUR NAME AND SPELL IT, PLEASE, SIR. |
| 4 | A    MY NAME IS JOHN HAUSER, H-A-U-S-E-R. |
| 5 | Q    DR. HAUSER, ARE YOU A FACULTY MEMBER AT M.I.T. |
| 6 | SLOAN SCHOOL OF MANAGEMENT? |
| 7 | A    YES, I AM.  I'M THE KIRIN PROFESSOR, |
| 8 | K-I-R-I-N, PROFESSOR OF MARKETING AT THE M.I.T. |
| 9 | SLOAN SCHOOL OF MANAGEMENT. |
| 10 | Q    AND WHAT IS YOUR FIELD OF EXPERTISE? |
| 11 | A    MY FIELD OF EXPERTISE IS MARKETING RESEARCH |
| 12 | AND ANALYSIS. |
| 13 | Q    WHAT IS YOUR FORMAL TRAINING IN? |
| 14 | A    I HAVE A DOCTORATE OF SCIENCE FROM M.I.T. IN |
| 15 | OPERATIONS RESEARCH.  OPERATIONS RESEARCH IS |
| 16 | BASICALLY MATHEMATICS APPLIED TO BUSINESS PROBLEMS. |
| 17 | Q    WE'RE GOING TO BE TALKING IN A MINUTE ABOUT A |
| 18 | SURVEY CALLED A CONJOINT SURVEY.  HAVE YOU |
| 19 | PUBLISHED IN THAT FIELD? |
| 20 | A    YES, I HAVE.  I'VE PUBLISHED OVER 70 |
| 21 | PROFESSIONAL ARTICLES IN MARKETING AND MARKETING |
| 22 | RESEARCH. |
| 23 | MR. JACOBS:  YOUR HONOR, WE OFFER |
| 24 | DR. HAUSER AS AN EXPERT IN THE FIELD OF MARKETING |
| 25 | SURVEYS AND ANALYSIS. |

1          MR. PRICE:  NO OBJECTION.

2          THE COURT:  ALL RIGHT.  HE'S CERTIFIED.

3     BY MR. JACOBS:

4     Q    NOW, WE ASKED YOU IN THIS CASE TO CONDUCT A

5     SURVEY; CORRECT, SIR?

6     A    YES, THAT'S CORRECT.

7     Q    WHAT DID WE ASK YOU TO DO?

8     A    I WAS ASKED TO CONDUCT TWO SURVEYS TO

9     DETERMINE HOW MUCH MONEY, IF ANY, SAMSUNG CONSUMERS

10    WOULD PAY FOR THE FEATURES ASSOCIATED WITH THE

11    PATENTS THAT ARE AT ISSUE IN THIS LITIGATION.

12    Q    I'D LIKE YOU TO TURN TO PX 30 IN YOUR BINDER,

13    PLEASE.

14    A    YES, I HAVE IT.

15    Q    WHAT IS PX 30?

16    A    PX 30 IS AN EXHIBIT THAT I PREPARED TO

17    SUMMARIZE MY FINDINGS.

18          MR. JACOBS:  YOUR HONOR, WE'D OFFER PX 30

19    INTO EVIDENCE.

20          MR. PRICE:  NO FURTHER OBJECTIONS.

21          THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

22          (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

23           30, HAVING BEEN PREVIOUSLY MARKED FOR

24           IDENTIFICATION, WAS ADMITTED INTO

25           EVIDENCE.)

```
 1    BY MR. JACOBS:

 2    Q    WHAT CONCLUSIONS DID YOU DRAW FROM THE SURVEY

 3    THAT YOU CONDUCTED?

 4    A    I CONCLUDED THAT SAMSUNG CONSUMERS ARE WILLING

 5    TO PAY A SUBSTANTIAL PRICE PREMIUM FOR THE FEATURES

 6    THAT ARE ASSOCIATED WITH THE PATENTS THAT ARE AT

 7    ISSUE IN THIS CASE.

 8    Q    AND WHAT DO THE RESULTS OF YOUR SURVEY REFLECT

 9    REGARDING CONSUMER DEMAND FOR THOSE PATENTED

10    FEATURES?

11    A    THE RESULTS REFLECT THAT THERE IS SUBSTANTIAL

12    DEMAND FOR THE FEATURES ASSOCIATED WITH THE PATENTS

13    AT ISSUE IN THIS CASE.

14          MR. JACOBS:  THANK YOU, DR. HAUSER.  I

15    HAVE NO FURTHER QUESTIONS.

16          THE COURT:  ALL RIGHT.  THE TIME IS NOW

17    3:30.

18          GO AHEAD, PLEASE.

19          MR. PRICE:  YOUR HONOR, I MOVE TO STRIKE

20    THE ENTIRE TESTIMONY.  THERE'S NO FOUNDATION FOR

21    THE JURY TO CONCLUDE HOW IT WAS DONE OR WHAT WAS

22    DONE.

23          THIS IS, IN THE INTERESTS OF TIME, GAME

24    PLAYING.  I WILL HAVE TO EXPLAIN THE ENTIRE SURVEY,

25    SO I MOVE TO STRIKE IT IN ITS ENTIRETY.
```

1          MR. JACOBS:  YOUR HONOR, DR. HAUSER, IN

2     PX 30, SHOWS HIS CONCLUSIONS AND GIVES A BRIEF

3     EXPLANATION OF THE SURVEY THAT HE CONDUCTED AND

4     COUNSEL HAS HAD AMPLE OPPORTUNITY TO STUDY THE WORK

5     THAT HE DID IN THE FORM OF HIS EXPERT REPORT.

6          MR. PRICE:  THE POINT, YOUR HONOR, IS IF

7     I ASK HIM QUESTIONS, THE JURY HAS NO IDEA

8     WHATSOEVER WHAT HE DID AND I WOULD HAVE TO EXPLAIN

9     IT AND THAT'S NOT MY BURDEN.

10          THIS IS INAPPROPRIATE, SO I MOVE TO

11     STRIKE THE ENTIRE TESTIMONY.

12          THE COURT:  IT'S OVERRULED.

13                    **CROSS-EXAMINATION**

14     BY MR. PRICE:

15     Q    GOOD AFTERNOON, DR. HAUSER.

16     A    GOOD AFTERNOON.

17     Q    I TAKE IT YOU COULD HAVE TOLD US A LOT MORE AS

18     TO WHAT YOU DID TO REACH YOUR CONCLUSIONS?

19     A    I ANSWERED THE QUESTIONS THAT I WAS ASKED.

20     Q    AND I APPRECIATE THAT AND I'M SURE COUNSEL

21     DOES, TOO.

22          MY QUESTION IS DIFFERENT.  YOU HAVE A LOT

23     MORE TO SAY AS TO EXACTLY WHAT IT IS YOU DID TO

24     REACH THIS CONCLUSION; RIGHT?

25     A    YES, I PREPARED AN EXPERT REPORT AND THERE'S

2218

```
 1    MORE DESCRIPTION IN THAT EXPERT REPORT.

 2    Q    AND THAT EXPERT REPORT GOES ON FOR HOW MANY

 3    PAGES, INCLUDING EXHIBIT, WOULD YOU ESTIMATE?

 4    A    OH, I DON'T RECALL.  20, 30.

 5    Q    20 OR 30 PAGES, INCLUDING EXHIBITS?

 6    A    OH, NO.  THERE'S A LOT OF EXHIBITS.  I'VE GOT

 7    A NUMBER -- A LIST IN THERE THAT'S QUITE LONG.  I'M

 8    SURE YOU CAN PROVIDE THE NUMBER.

 9    Q    YOU'VE GOT PROBABLY AT LEAST A COUPLE HUNDRED

10    PAGES IF YOU INCLUDE THE DATA AND THE DESCRIPTION

11    OF EXACTLY WHAT IT IS YOU DID; CORRECT?

12    A    WELL, YES.  IT'S -- I MEAN, IF YOU INCLUDE THE

13    DATA, SURE.

14    Q    AND I TAKE IT -- DO YOU THINK THAT, GIVEN WHAT

15    YOU'VE SAID IN YOUR DIRECT, WHICH IS THAT YOU DID A

16    CONJOINT SURVEY, AND YOU CAME TO A COUPLE OF

17    CONCLUSIONS, DO YOU THINK YOU'VE GIVEN THE JURY

18    ENOUGH INFORMATION TO UNDERSTAND WHAT A CONJOINT

19    SURVEY IS?

20            MR. JACOBS:  YOUR HONOR, THIS CALLS FOR

21    SPECULATION FROM THIS WITNESS.  YOUR HONOR

22    OVERRULED HIS OBJECTION.

23            THE COURT:  OVERRULED.

24    BY MR. PRICE:

25    Q    YOU CAN ANSWER, SIR.
```

```
 1     A    OH, I CAN ANSWER?

 2     Q    YEAH.

 3     A    WELL, I'VE ANSWERED THE QUESTIONS.  I'M

 4     CONFIDENT IN THE NUMBERS.  I HOPE THAT THEY'RE

 5     SUFFICIENT, THAT IT'S A SUFFICIENT EXPLANATION.

 6     Q    MY QUESTION -- ARE YOU A TEACHER, PROFESSOR?

 7     A    OH, YES.  I TEACH A NUMBER OF COURSES AT

 8     M.I.T.

 9     Q    I'M JUST ASKING YOU, DO YOU THINK YOU'VE,

10     YOU'VE MADE ANY ATTEMPT TO TEACH THIS JURY HOW YOU

11     DID YOUR SURVEY SO THAT THEY COULD COME TO A

12     CONCLUSION WHETHER OR NOT IT WAS FAIR OR NOT?

13     A    WELL, INDEED, IT'S A SURVEY AND THERE'S SOME

14     COMPLICATED ANALYSIS IN THERE.  WE ASKED CONSUMERS

15     QUESTIONS AND THESE QUESTIONS RELATED TO THEIR

16     WILLINGNESS TO PAY AND THIS IS A SUMMARY OF THEIR

17     ANSWERS.

18     Q    NO.  MY QUESTION WAS -- I KNOW I CAN ASK YOU

19     QUESTIONS ABOUT THE DETAILS.  I'M WONDERING IF YOU

20     THINK, IN YOUR DIRECT EXAM, YOU GAVE THIS JURY

21     ENOUGH INFORMATION TO BE ABLE TO EVALUATE WHETHER

22     OR NOT WHAT YOU DID WAS REASONABLE?  OR DID YOU

23     JUST TELL THEM, "I'M A PROFESSOR, HERE'S MY

24     CONCLUSIONS, THANK YOU VERY MUCH."

25     A    I'M NOT SURE HOW TO ANSWER THAT.
```

2933

```
 1    EXAMPLE, WHAT THIS PROGRAM SAID A CONSUMER WOULD

 2    PAY FOR STORAGE, EXTRA MEMORY; RIGHT?

 3    A    CERTAINLY THE DATA WOULD ALLOW ONE TO DO THAT,

 4    THAT'S CORRECT.

 5              (PAUSE IN PROCEEDINGS.)

 6    BY MR. PRICE:

 7    Q    SO, FOR EXAMPLE, IF YOU HAD SHOWN US THE

 8    NUMBER FOR STORAGE AND MEMORY AND YOU WERE ASKING

 9    THE CONSUMERS HERE HOW MUCH THEY WOULD PAY FOR,

10    LIKE, AN EXTRA 8 -- WHAT WAS IT, DO YOU RECALL WHAT

11    YOU WERE ASKING THEM FOR?  MAYBE WE CAN PUT BACK UP

12    3.6.

13              WHEN YOU LOOK, YOU'VE GOT 64 GIGABYTES, 8

14    GIGABYTES, 16, 32.  DO YOU SEE THAT?

15    A    DO I SEE THAT?

16    Q    YEAH.

17    A    YES, I DO.

18    Q    SO YOU COULD HAVE SHOWN THE JURY THE NUMBER

19    THAT YOU CAME UP WITH TO SEE WHAT THESE FOLKS, IN

20    DOING THIS STUDY, THIS TEST, WERE -- WHAT YOUR

21    NUMBERS TURNED OUT FOR WHAT THE CONSUMER WOULD BE

22    WILLING TO PAY FOR THE ONE WITH 8 GIGABYTES, THE

23    16, THE 16 TO 32; RIGHT?

24    A    WELL, THESE WERE DISTRACTION FEATURES MEANT

25    TO --
```

2934

```
1    Q    NO, MY QUESTION IS DIFFERENT.  YOU CRUNCHED
2    ALL THESE NUMBERS?
3    A    OH.  OKAY, YEAH.
4    Q    YOU COULD HAVE -- YOU COULD HAVE -- LET'S GO
5    BACK TO WHAT I WAS SHOWING YOU, WHICH IS 3920.015.
6            YOU COULD HAVE PUT DOWN HERE WHAT A
7    CONSUMER ON THIS THING SAID THEY WERE WILLING TO
8    PAY FOR AN EXTRA 8 GIGABYTES OF MEMORY; RIGHT?
9    A    INDEED, ONE CAN DO THOSE COMPUTATIONS WITH THE
10   DATA.
11   Q    AND THAT WOULD BE NICE TO HAVE BECAUSE YOU CAN
12   GO ON APPLE'S WEB PAGE AND YOU CAN SEE THAT, FOR
13   EXAMPLE, TO GO FROM 16 TO 32 GIGABYTES, YOU HAVE TO
14   PAY $100 MORE, AND FROM 32 TO 64, YOU'VE GOT TO PAY
15   ANOTHER HUNDRED DOLLARS MORE?  RIGHT?  YOU CAN
16   ACTUALLY SEE WHAT PEOPLE ARE PAYING IN THE MARKET
17   FOR THAT; RIGHT?
18   A    WELL, LET'S A LITTLE COMPLICATED.  I MEAN,
19   SOME PEOPLE ARE WILLING TO PAY THIS.  BUT THE
20   AVERAGE CONSUMER MAY NOT.  SOME PURCHASE IT.  SOME
21   DON'T PURCHASE IT.
22   Q    SO MY QUESTION IS, YOU CAN DO A REALITY CHECK,
23   THOUGH, AND THAT IS IF YOU PUT THESE NUMBERS IN,
24   YOU CAN ACTUALLY GO AND SEE HOW MUCH THESE THINGS
25   ARE SELLING FOR IN THE REAL WORLD AND COMPARE THEM
```

1    TO WHAT YOU DID.

2    A    THAT'S A LITTLE BIT MORE COMPLICATED THAN

3    YOU'RE MAKING ON, BECAUSE, YOU KNOW, LET'S TAKE

4    MEMORY.  IT'S AN INTERESTING COMMENT.

5            BUT SOME PEOPLE WILL PAY MORE THAN

6    OTHERS, AND SO THE QUESTION IS, WHAT WILL THE

7    AVERAGE PERSON PAY?

8            WELL, YOU'VE GOT TO AVERAGE THE PEOPLE

9    WHO DO BUY THE MEMORY FOR THAT AND THE PEOPLE WHO

10   DON'T.

11           BUT IT'S AN INTERESTING QUESTION.

12   Q    IF IT'S COMPLICATED, I GUESS YOU -- YOU CHOSE

13   NOT, IN YOUR DIRECT, TO EXPLAIN IT TO THE JURY;

14   RIGHT?

15   A    I ANSWERED THE QUESTIONS I WAS ASKED.

16   Q    DO YOU BELIEVE THAT IF YOU'D PUT THESE NUMBERS

17   HERE THAT YOU, THAT YOU CRUNCHED, WOULD THAT HAVE

18   PUT THE JURY IN A BETTER POSITION TO LOOK AT THIS

19   AND USE THEIR COMMON SENSE TO DETERMINE WHETHER THE

20   NUMBERS MADE ANY SENSE IN THE REAL WORLD?

21   A    IF WE PUT THOSE NUMBERS UP, WE'D HAVE TO

22   UNDER -- I MEAN, WE'D HAVE TO EXPLAIN WHAT THEY

23   MEAN.  THEY'RE A DEMAND SLIDE.  IT'S WHAT PEOPLE

24   WOULD BE WILLING TO PAY.  IT'S NOT WHAT THEY

25   ACTUALLY PAY IN THE MARKETPLACE.

```
 1    Q    SO THIS IS NOT -- STOP RIGHT THERE.  THIS DOES
 2    NOT INDICATE WHAT PEOPLE WOULD ACTUALLY PAY IN THE
 3    MARKETPLACE FOR ANY OF THESE ITEMS; CORRECT?
 4    A    THAT --
 5    Q    YES OR NO?
 6    A    WHAT?
 7    Q    IS THAT CORRECT?  YES OR NO?  ISN'T THAT WHAT
 8    YOU JUST SAID?
 9    A    THIS RELATES TO IT, BUT IT'S NOT IT, NO.
10    Q    AND SO LET ME GET BACK TO MY QUESTION.  DO YOU
11    THINK IT WOULD GIVE THE JURY A LITTLE BIT MORE OF
12    AN ABILITY TO JUDGE WHAT YOU'RE TELLING THEM IF
13    THEY, IF THEY WERE ABLE TO SEE THESE OTHER NUMBERS
14    SO THEY COULD JUST SEE, RELATIVELY SPEAKING, HOW
15    THESE THINGS RANK AND HOW MUCH YOU'RE SAYING PEOPLE
16    ARE WILLING TO PAY?  DO YOU THINK THAT WOULD HELP
17    THEM ANY?
18    A    YOU'RE ASKING ME, YOU KNOW, WHAT DO THEY
19    BELIEVE.
20         BUT THESE NUMBERS --
21    Q    YOU'RE A TEACHER.  THAT'S WHY I'M ASKING.
22    A    RIGHT.
23    Q    INSTEAD OF SAYING, "I'M A TEACHER, I'M SMART,
24    THESE ARE MY NUMBERS," DO YOU THINK IT WOULD HAVE
25    HELPED THEM ANY TO GIVE THEM THE DATA SO THAT THEY
```

2237

```
 1     CAN ACTUALLY COMPARE WHAT YOU'RE SAYING ABOUT THESE
 2     NUMBERS HERE, 9, 15, ET CETERA, TO THINGS THAT THEY
 3     MIGHT HAVE EXPERIENCE WITH, LIKE HOW MUCH FOR
 4     CAMERA, OR MEMORY, OR NUMBER OF APPS?  DO YOU THINK
 5     THAT WOULD HAVE HELPED THEM OR NOT?  YES OR NO?
 6              IF THE ANSWER IS NO, I'M GLAD TO HEAR IT
 7     AND I CAN GO ON.
 8     A    I CAN SAY THE QUESTION I CAN'T ANSWER YES OR
 9     NO BECAUSE IT'S GOT TO BE DONE CORRECTLY.  YOU
10     CAN'T JUST PUT THE NUMBERS UP.  THEY HAVE TO BE
11     EXPLAINED.
12     Q    WELL, AND YOU BELIEVE YOU DID A SUFFICIENT
13     EXPLANATION OF THOSE NUMBERS IN YOUR DIRECT
14     EXAMINATION?  BECAUSE YOU CAN'T JUST PUT THEM UP,
15     THEY HAVE TO BE EXPLAINED?  DID YOU DO A SUFFICIENT
16     EXPLANATION IN YOUR DIRECT EXAMINATION OF THE
17     NUMBERS YOU DID SHOW?
18     A    I PUT UP THE NUMBERS, YES, AND, IN FACT, I
19     JUST EXPLAINED THEM AND I'LL BE HAPPY TO EXPLAIN
20     THEM AGAIN.
21     Q    NO, NO.  MY QUESTION IS, IN YOUR DIRECT
22     EXAMINATION, DID YOU PUT UP THE NUMBERS AND GIVE A
23     SUFFICIENT EXPLANATION SO THAT THESE JURORS WOULD
24     KNOW WHAT IT MEANS?  YES OR NO?
25     A    I -- I BELIEVE -- YEAH, I'M CONFIDENT IN THOSE
```

```
 1    NUMBERS AND I BELIEVE --

 2    Q    I'M NOT ASKING WHETHER YOU'RE CONFIDENT IN

 3    THEM.  YOU JUST SAID IT TAKES A LOT OF EXPLANATION.

 4              I'M ASKING WHETHER YOU EXPLAINED IT TO

 5    THESE FOLKS IN YOUR DIRECT EXAMINATION.

 6    A    I'M TRYING TO HELP YOU HERE.

 7    Q    WELL, THEN, ANSWER THE QUESTION.

 8    A    THE QUESTION IS, I BELIEVE, YES, THE DIRECT

 9    EXAMINATION GOT THE NUMBERS ACROSS.

10    Q    OKAY.  IF YOU LOOK AT 2578 IN YOUR BINDER, YOU

11    SEE IT'S A BOOK BY BRYAN ORME CALLED GETTING

12    STARTED WITH CONJOINT ANALYSIS.

13    A    I'M SORRY.  2 --

14    Q    IT'S 2578.

15    A    2578, OKAY.

16    Q    AND YOU KNOW MR. ORME?

17    A    YES, I KNOW -- I'VE KNOWN BRYAN FOR A NUMBER

18    OF YEARS.

19    Q    HE'S THE PRESIDENT OF THE SOFTWARE COMPANY,

20    THE -- WHAT WAS IT CALLED?

21    A    IT'S SAWTOOTH SOFTWARE.  YES, I KNOW BRYAN.

22    Q    AND HE'S THE PRESIDENT OF SAWTOOTH SOFTWARE;

23    CORRECT?

24    A    YES.  WELL, I THINK HE IS.  I -- HE MIGHT BE

25    PRESIDENT NOW.
```

2239

```
1    Q    YOU'VE READ THE BOOK?

2    A    I READ PARTS OF THE BOOK, YES.

3    Q    YOU RECOGNIZE IT AS BEING FAIRLY

4    AUTHORITATIVE?

5    A    IT'S -- IT'S, YOU KNOW, FAIRLY AUTHORITATIVE,

6    SURE.

7    Q    AND IS IT TRUE THAT -- IS THE FOLLOWING TRUE,

8    THAT "THE IDEA OF CONVERTING UTILITIES TO DOLLAR

9    VALUES" --

10   A    EXCUSE ME.  WHERE ARE YOU READING FROM?

11   Q    SURE.  THIS IS PAGE 85 WHERE IT SAYS "MONETARY

12   SCALING TRAP."  AND IT SAYS "THE IDEA OF CONVERTING

13   UTILITIES TO DOLLAR VALUES CAN BE APPEALING TO

14   MANAGERS.  BUT SOME APPROACHES TO CONVERTING

15   UTILITIES TO DOLLAR EQUIVALENTS ARE FLAWED.  EVEN

16   WHEN COMPUTED REASONABLY, THE RESULTS OFTEN SEEM TO

17   DEFY COMMONLY HELD BELIEFS ABOUT PRICES AND HAVE

18   LIMITED STRATEGIC VALUE FOR DECISION MAKING."

19        DO YOU AGREE WITH THAT, YES OR NO?

20   A    OF COURSE, BECAUSE WHAT HE SAYS IS THERE'S

21   SOME WAYS THAT ARE FLAWED, AND I WAS VERY CAREFUL

22   NOT TO USE THE FLAWED METHODS.

23   Q    AH.  AND YOU'VE EXPLAINED THOSE SUFFICIENTLY

24   SO THE JURY CAN TRUST YOU ON IT?

25   A    HAVE I GIVEN THEM A COMPLETE CLASS IN SOME
```

1      BUILT THE FOUNDATIONAL POSITIONING.

2      Q    WHAT IS APPLE'S POSITION ON LICENSING THIS

3      PORTION OF ITS PATENT PORTFOLIO?

4      A    SO UNLIKE STANDARDS WHERE WE HAVE TO LICENSE,

5      THIS IS AN AREA WHERE WE DON'T HAVE TO LICENSE.

6            MS. MAROULIS:  OBJECTION.  BEYOND THE

7      COURT'S ORDER ON STANDARDS.

8            MR. MUELLER:  YOUR HONOR, HE'S JUST

9      DESCRIBING THE SECOND CATEGORY, NON-STANDARDS

10     PATENTS.

11           THE COURT:  ALL RIGHT.  OVERRULED.

12           THE WITNESS:  SO WITH RESPECT TO THE

13     COMPUTING PORTFOLIO, IT'S NOT ONE THAT WE HAVE TO

14     LICENSE, BUT WE'RE CERTAINLY WILLING TO DISCUSS

15     LICENSING.

16           WE DO THAT WITH TWO PRIMARY GOALS.  THE

17     FIRST ONE IS THAT WE WANT TO GET FAIRLY COMPENSATED

18     FOR THE WORK THAT WE'VE DONE; AND THE SECOND -- AND

19     THE SECOND ONE IS WE WANT TO MAKE SURE THAT WE

20     SAFEGUARD APPLE'S DIFFERENTIATED USER EXPERIENCE.

21     BY MR. MUELLER:

22     Q    MR. TEKSLER, LET'S TURN, IF WE COULD, TO THE

23     THIRD CATEGORY IN THE APPLE PORTFOLIO.  WOULD YOU

24     REMIND US WHAT THAT IS?

25     A    CERTAINLY.  THAT'S APPLE'S UNIQUE USER

```
 1    EXPERIENCE I.P.

 2    Q    WHAT DOES THAT REFER TO?

 3    A    SO I WOULD DESCRIBE THAT IN A COUPLE DIFFERENT

 4    WAYS.  FROM A TOP LEVEL, IT'S THAT WHICH MAKES OUR

 5    BRAND IDENTITY AND KEEPS US UNIQUE IN THE

 6    MARKETPLACE, AND IT'S WHAT WE DON'T WISH TO SHARE

 7    AND OTHER PEOPLE TO MAKE.

 8              SO WITH THAT, I WOULD SAY FROM A

 9    TECHNICAL PERSPECTIVE, IT INCLUDES TRADEMARKS,

10    TRADE DRESS, ALL THE DESIGN PATENTS, AND A SMALL

11    SET OF UTILITY PATENTS THAT REALLY DEAL WITH USER

12    INTERFACE ELEMENTS, AND MAYBE A COUPLE OF

13    ASSOCIATED FEATURES.

14    Q    AND HOW DOES THIS CATEGORY RELATE TO WIRELESS

15    DEVICES?

16    A    WELL, I GUESS YOU DON'T REALLY NEED A LICENSE

17    TO THIS.  FROM OUR PERSPECTIVE, UNLESS YOU'RE

18    TRYING TO BUILD AN IPHONE KNOCK-OFF OR A CLONE OR

19    AN IPAD CLONE, YOU WOULDN'T NEED A LICENSE TO THIS

20    SET OF I.P.

21    Q    AND TO BE CLEAR, WHAT IS APPLE'S POSITION ON

22    LICENSING THIS PORTION OF ITS PORTFOLIO?

23    A    WE STRONGLY DESIRE NOT TO LICENSE IT.  IT'S

24    NOT AN AREA THAT WE LICENSE, AND OUR GOAL IN

25    LICENSING IS TO ENABLE PEOPLE TO DESIGN THEIR OWN
```

1    PRODUCTS, NOT THE ABILITY TO JUST COPY OUR

2    PRODUCTS.

3    Q    HAS APPLE EVER LICENSED ANY OF THE PATENTS

4    WITHIN THIS CATEGORY?

5    A    CERTAINLY OVER TIME WE HAVE, BUT I CAN COUNT

6    THOSE INSTANCES ON ONE HAND QUITE EASILY.  AND WE

7    DO SO WITH RARE EXCEPTION AND WE DO IT CONSCIOUSLY

8    KNOWING THAT WE'RE NOT ENABLING SOMEBODY TO BUILD A

9    CLONE PRODUCT.

10   Q    MR. TEKSLER, I WANT TO SHIFT GEARS, IF I

11   COULD, AND TURN BACK THE CLOCK TO THE BEGINNING OF

12   THE APPLE/SAMSUNG DISPUTE.

13        DO YOU KNOW WHEN THAT DISPUTE BEGAN?

14   A    YES.  IT BEGAN IN THE SUMMER OF 2010.

15   Q    AND WHAT HAPPENED IN THE SUMMER OF 2010?

16   A    SO SAMSUNG INTRODUCED THEIR GALAXY S PHONE,

17   AND WITH THIS, WE WERE QUITE SHOCKED FOR A COUPLE

18   OF REASONS.

19        FIRST, THEY WERE A TRUSTED PARTNER OF

20   OURS AND WE DIDN'T UNDERSTAND HOW A TRUSTED PARTNER

21   WOULD BUILD A COPYCAT PRODUCT LIKE THAT.

22        AND THE SECOND ONE WAS THAT THE PRODUCT

23   WAS JUST WAY TOO CLOSE TO OUR PRODUCT.

24        SO WE TOOK IT SO SERIOUS THAT STEVEN JOBS

25   AND TIM COOK CONTACTED SAMSUNG EXECUTIVES AND MET

2258

```
 1    WITH THEM TO RELAY OUR CONCERN.

 2              MS. MAROULIS:  YOUR HONOR, I MOVE TO

 3    STRIKE FOR LACK OF FOUNDATION ON THAT RESPONSE.

 4              THE COURT:  YOU'RE GOING TO HAVE TO LAY A

 5    FOUNDATION HOW HE KNOWS THAT.

 6    BY MR. MUELLER:

 7    Q    SURE.  MR. TEKSLER, WERE YOU AT APPLE AT THAT

 8    TIME?

 9    A    I WAS.

10    Q    WHAT WAS YOUR POSITION AT THAT TIME?

11    A    I WAS THE DIRECTOR OF APPLE I.P. AND STRATEGY.

12    Q    YES OR NO, WERE YOU PRIVY TO CONVERSATIONS

13    INVOLVING SAMSUNG?

14    A    YES, I WAS.

15              MR. MUELLER:  YOUR HONOR, I'VE LAID A

16    FOUNDATION.

17    Q    COULD YOU PLEASE TURN TO TAB 1 IN YOUR BINDER,

18    THAT'S PLAINTIFF'S EXHIBIT 52.

19              THE COURT:  I DON'T HAVE THE DIRECT

20    EXHIBITS TO MR. TEKSLER.  I THOUGHT THEY WERE

21    COMING.

22              MR. MUELLER:  I'M SORRY.  I THOUGHT YOU

23    HAD A BINDER.  I APOLOGIZE, YOUR HONOR.  THIS IS

24    TAB 1, PLAINTIFF'S EXHIBIT 52.

25    Q    MR. TEKSLER, DO YOU KNOW WHAT THIS DOCUMENT
```

```
 1    IS?

 2    A    I DO.

 3    Q    WHAT IS IT?

 4    A    IT'S A PRESENTATION THAT WAS GIVEN TO SAMSUNG

 5    IN AUGUST OF 2010.  IT'S ONE THAT I HELPED AUTHOR

 6    AND CREATE.

 7               MR. MUELLER:  YOUR HONOR, I OFFER IT.

 8               MS. MAROULIS:  YOUR HONOR, NO FURTHER

 9    OBJECTION, BUT YOUR HONOR RULED THAT THE WITNESS

10    WOULD NOT BE ALLOWED TO TESTIFY ABOUT THE MEETING

11    ITSELF.

12               THE COURT:  AND I'LL CONTINUE THAT

13    RULING.  IT'S ADMITTED.

14               (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

15               52, HAVING BEEN PREVIOUSLY MARKED FOR

16               IDENTIFICATION, WAS ADMITTED INTO

17               EVIDENCE.)

18               THE COURT:  GO AHEAD.

19    BY MR. MUELLER:

20    Q    MR. TEKSLER, WE'RE PUTTING PLAINTIFF'S EXHIBIT

21    52 ON THE SCREEN.  THIS IS TITLED "SAMSUNG'S USE OF

22    APPLE PATENT IN SMARTPHONES."

23               AND COULD YOU REMIND US WHAT THIS

24    DOCUMENT IS?  IT'S A PRESENTATION?

25    A    YES, IT'S A PRESENTATION GIVEN TO SAMSUNG IN
```

```
1    AUGUST OF -- AUGUST 4TH OF 2010.

2    Q    WHO DELIVERED THE PRESENTATION?

3    A    CHIP LUTTON DID.

4    Q    WHO IS CHIP LUTTON?

5    A    CHIP LUTTON WAS THE CHIEF PATENT COUNSEL AND

6    MY MANAGER AT THAT TIME.

7    Q    MR. LUTTON IS STILL AT APPLE?

8    A    NO, HE'S NOT.

9    Q    NOW, WERE YOU AT THIS PRESENTATION?

10   A    I WAS NOT.

11   Q    BUT YOU NOW WHEN IT WAS GIVEN?

12   A    I DO.

13   Q    WHAT WAS THAT DATE?

14   A    AUGUST 4TH, 2010.

15   Q    LET'S TURN, IF WE COULD, TO PAGE 17 OF THE

16   PRESENTATION AND PUT IT ON THE SCREEN.

17            WHAT DO WE SEE HERE?

18   A    SO THIS WAS REALLY A CHAPTER THAT WAS ENTITLED

19   "SAMSUNG COPYING IPHONE," AND WHAT WE WERE -- WHAT

20   WE WERE RELAYING WITH THIS CONTENT WAS REALLY ABOUT

21   THE REMARKABLE SIMILARITY OF THE TWO PRODUCTS, ALL

22   THE WAY FROM THE OVERALL APPEARANCE OF THE PRODUCT

23   DOWN TO THE ARRANGEMENT, THE FOUR-BY-FOUR

24   ARRANGEMENT OF THE ICONS, THE SIMILARITY OF THE

25   ICONS, THE PERSISTENT DOCK THAT YOU HAVE AT THE
```

```
 1    BOTTOM THAT DOESN'T CHANGE WITH THE SCREENS.

 2             AND WE DETAILED IT, YOU KNOW, WITH

 3    SUBSEQUENT PAGES THAT REALLY TALKED ABOUT THESE,

 4    THE USER INTERFACE ELEMENTS THAT WERE SIMILAR ALL

 5    THE WAY DOWN TO THE PACKAGING.

 6    Q    LET'S TURN --

 7             MS. MAROULIS:  YOUR HONOR, I MOVE TO

 8    STRIKE.  THIS WAS A LAY OPINION ON INFRINGEMENT

 9    ISSUES AND, AGAIN, THE WITNESS WAS NOT DISCLOSED.

10             MR. MUELLER:  YOUR HONOR, I'M SIMPLY

11    ASKING MR. TEKSLER ABOUT A DOCUMENT THAT HE HELPED

12    AUTHOR.

13             THE COURT:  OVERRULED.

14    BY MR. MUELLER:

15    Q    LET'S PUT PAGE 14 ON THE SCREEN IF WE COULD.

16             WHAT DO WE SEE HERE?

17    A    SO IN THIS PAGE WHAT WE WERE DESCRIBING --

18    THIS WAS PART OF THE CHAPTER WHERE WE TALK ABOUT

19    THE ARCHITECTURE OF SAMSUNG PHONES, AND

20    SPECIFICALLY HERE WE'RE REFERRING TO THE ANDROID

21    APPLICATION FRAMEWORK THAT'S HIGHLIGHTED IN THE

22    LEFT ARCHITECTURE DIAGRAM THERE.

23             AND WE WERE COMMUNICATING TO SAMSUNG BY

24    THIS SLIDE THAT THESE ARE SOME OF THE, SOME OF THE

25    PATENTS -- IT'S JUST REPRESENTATIVE OF A LIST OF
```

1    PATENTS THAT SAMSUNG INFRINGES WITH THIS PORTION OF

2    THE ARCHITECTURE.

3    Q    I'D LIKE TO DIRECT YOUR ATTENTION, IF I COULD,

4    MR. TEKSLER, TO U.S. PATENT NUMBER 7,469,381 ON

5    THIS LIST.

6              ARE YOU FAMILIAR WITH THAT PATENT?

7    A    I AM.

8    Q    WHAT IS IT?

9    A    SO THIS PATENT RELATES TO SCROLL BOUNCING AND,

10   I GUESS PUT SIMPLY, IT'S A USER INTERFACE ELEMENT

11   WHEN YOU'RE PANNING THROUGH A LIST, WHEN YOU GET TO

12   THE BOTTOM OF THE LIST, HOW DO YOU KNOW THAT YOU

13   GOT TO THE BOTTOM?

14             WELL, WE HAVE A RUBBER BAND LIKE EFFECT

15   THAT HAPPENS WHEN YOU GET TO THE BOTTOM OF THE

16   LIST.  IF YOU DIDN'T HAVE SOMETHING LIKE THIS, YOU

17   WOULDN'T KNOW, IS THE COMPUTER HUNG UP?  SO YOU

18   NEED TO HAVE SOME KIND OF USER INTERFACE ELEMENT

19   AND THIS IS HOW WE DO IT.

20             MS. MAROULIS:  YOUR HONOR, MOVE TO

21   STRIKE.  LACK OF FOUNDATION AND OPINION TESTIMONY.

22             MR. MUELLER:  YOUR HONOR, AGAIN, THIS IS

23   A PORTION OF A PRESENTATION THAT MR. TEKSLER HELPED

24   TO AUTHOR.  I'M JUST ASKING ABOUT ONE ENTRY ON THIS

25   PAGE.

2263

```
1              THE COURT:  ALL RIGHT.  OVERRULED.

2     BY MR. MUELLER:

3     Q    MR. TEKSLER, IF YOU COULD, PLEASE TURN TO TAB

4     2 IN YOUR BINDER, AND THIS IS PDX 32.  IF WE COULD

5     ALSO PUT THAT ON THE SCREEN.

6              MR. TEKSLER, THIS SHOWS SEVEN PATENT

7     COVERS.  ARE YOU FAMILIAR WITH THESE PATENTS?

8     A    I AM.

9     Q    WHAT ARE THEY?

10    A    THESE ARE THE PATENTS --

11             MS. MAROULIS:  OBJECTION, CALLS FOR

12    OPINION TESTIMONY.  LACKS FOUNDATION.

13             THE COURT:  WHAT ARE YOU ASKING?

14             MR. MUELLER:  I MERELY WANTED TO GET

15    ACROSS THAT THESE ARE THE ASSERTED PATENTS IN THIS

16    CASE.

17             THE COURT:  IS THERE ANY QUESTION ABOUT

18    THAT SO FAR?

19             MR. MUELLER:  I CAN REPHRASE IF YOU -- IF

20    I MIGHT, YOUR HONOR.

21    Q    ARE THESE THE SEVEN ASSERTED PATENTS?

22    A    YES, THEY ARE.

23    Q    WHERE DO THESE FALL, THESE SEVEN PATENTS,

24    WITHIN THE CATEGORIES YOU DESCRIBED EARLIER IN THE

25    APPLE PORTFOLIO?
```

```
 1     A    CERTAINLY.  SO THERE'S FOUR DESIGN PATENTS,

 2   AND ALL FOUR DESIGN PATENTS FALL INTO APPLE'S

 3   UNIQUE USER EXPERIENCE.

 4             AND THEN THE THREE UTILITY PATENTS THAT

 5   ARE LISTED HERE GENERALLY RELATE TO USER INTERFACE

 6   AND FEATURES THAT WE WOULD ALSO PUT IN THAT SAME

 7   CATEGORY OF APPLE'S UNIQUE USER INTERFACE, OR USER

 8   EXPERIENCE.

 9             MR. MUELLER:  THANK YOU, SIR.

10             NO FURTHER QUESTIONS.

11             THE COURT:  ALL RIGHT.  THE TIME IS NOW

12   4:22.

13                      CROSS-EXAMINATION

14   BY MS. MAROULIS:

15     Q    GOOD AFTERNOON, MR. TEKSLER.  HOW ARE YOU?

16     A    GOOD AFTERNOON.

17     Q    MY NAME IS VICTORIA MAROULIS.  I'M COUNSEL FOR

18   SAMSUNG.  AND SEEING HOW IT'S LATE FRIDAY

19   AFTERNOON, I'LL BE VERY BRIEF.

20             YOU TESTIFIED THAT YOU PREPARED A

21   POWERPOINT FOR A MEETING BETWEEN APPLE AND SAMSUNG

22   IN AUGUST 2010.  IS THAT CORRECT?

23     A    I BELIEVE THAT WAS KEY NOTE, BUT YES.

24     Q    AND YOU DIDN'T PERSONALLY ATTEND THE MEETING

25   IN QUESTION; RIGHT?
```

```
1    A    NO, I DID NOT.

2    Q    YOU CANNOT TELL US FROM YOUR PERSONAL

3    KNOWLEDGE ANYTHING ABOUT THAT MEETING AND WHAT WAS

4    PRESENTED; CORRECT?

5    A    I KNOW THAT THAT WAS PRESENTED.  WE LATER SENT

6    SAMSUNG THE PRESENTATION AND, IN SUBSEQUENT

7    MEETINGS WITH SAMSUNG, WE REFERRED BACK TO THAT

8    PRESENTATION AND TO THE DIALOGUE THAT HAPPENED THAT

9    DAY.  SO THAT'S --

10   Q    BUT FROM PERSONAL KNOWLEDGE, YOU DO NOT KNOW

11   WHAT OCCURRED AT THAT MEETING AND WHAT WAS SHOWN

12   AND WHAT WAS NOT SHOWN; CORRECT?

13   A    OKAY, CERTAINLY.

14   Q    AND THE POWERPOINT PRESENTATION THAT YOU

15   PREPARED IS EXHIBIT 52 IN EVIDENCE; CORRECT?  IF

16   YOU CAN LOOK IN YOUR CROSS-EXAMINATION BINDER AT

17   TAB 52, DO YOU SEE THAT?

18   A    I DO.

19   Q    IF YOU LOOK AT PAGES 12 THROUGH 14, DO YOU SEE

20   A VARIETY OF PATENTS LISTED THERE?

21   A    YES, I DO.

22   Q    OKAY.  AND DO YOU REMEMBER, ON DIRECT, JOE

23   ASKED YOU ABOUT THE SEVEN PATENTS ASSERTED IN THIS

24   CASE; CORRECT?

25   A    YES, THAT'S CORRECT.
```

2266

```
 1    Q    FOUR OF THEM WERE DESIGN PATENTS?

 2    A    YES, THAT'S CORRECT.

 3    Q    ONE OF THOSE DESIGN PATENT PATENTS WAS D'677;

 4    RIGHT?

 5    A    I BELIEVE THAT'S CORRECT, YES.

 6    Q    THAT PATENT IS NOWHERE IN THIS PRESENTATION;

 7    IS THAT CORRECT?

 8    A    IT'S NOT ENUMERATED.

 9    Q    IT'S NOT MENTIONED AT ALL AS A PATENT, THE

10    D'677; RIGHT?

11    A    SO I THINK WHAT I WOULD SAY IS I AGREE THAT

12    IT'S NOT ENUMERATED IN THE PRESENTATION.

13         WHEN WE WERE PREPARING THE, THE POINTS

14    THAT WE WANTED TO GET ACROSS -- AND I BELIEVE THAT

15    WAS BACK IN SLIDE 17 OF THIS PRESENTATION -- WE DID

16    SAY THAT THERE WAS A REMARKABLE SIMILARITY BETWEEN

17    THE PRODUCTS AND, IN DOING SO, WE DID TALK ABOUT

18    DESIGN PATENTS.

19    Q    SIR, THIS PRESENTATION DOES NOT MENTION THE

20    WORD "DESIGN PATENT" AT ALL; CORRECT?

21    A    I AGREE.

22    Q    AND DESIGN PATENT '087 THAT YOU REVIEWED WITH

23    COUNSEL IS ALSO NOT MENTIONED IN THIS PRESENTATION;

24    IS THAT RIGHT?

25    A    I AGREE.
```

1267

1    Q    AND DESIGN PATENT '889 IS SIMILARLY NOT

2    MENTIONED IN THIS PRESENTATION; CORRECT?

3    A    I AGREE.

4    Q    AND SO IS D'305, THAT IS ALSO NOT MENTIONED IN

5    THE PRESENTATION; RIGHT?

6    A    I AGREE.

7    Q    YOU ALSO LOOKED AT SEVERAL UTILITY PATENTS

8    WITH COUNSEL; IS THAT RIGHT?

9    A    I DID.

10   Q    ONE OF THEM WAS '163 PATENT; CORRECT?

11   A    I BELIEVE THAT'S CORRECT, YES.

12   Q    THAT PATENT IS NOT ENUMERATED ANYWHERE IN THIS

13   PRESENTATION WE JUST LOOK AT; RIGHT?

14   A    THAT'S CORRECT.

15   Q    AND THE '915 PATENT THAT YOU ALSO LOOKED AT IN

16   YOUR DIRECT TESTIMONY IS ALSO NOWHERE MENTIONED;

17   CORRECT?

18   A    THAT'S CORRECT.

19   Q    THIS PRESENTATION THAT YOU PREPARED FOR

20   SAMSUNG DOES NOT HAVE ANY MENTION OF TRADE DRESS;

21   RIGHT?

22   A    AGAIN, I THINK I WOULD PUT IT INTO THE SAME

23   CATEGORY OF BULLET POINTS THAT WE TALKED ABOUT.

24   Q    SIR, YOU'RE A LICENSING PROFESSIONAL.  YOU

25   KNOW WHAT A REGISTERED TRADE DRESS IS; CORRECT?

1    A    I AM, YES.

2    Q    SO NOWHERE IN THIS PRESENTATION IS THERE

3    MENTION OF A REGISTERED TRADE DRESS FOR AN IPHONE;

4    CORRECT?

5    A    I AGREE THAT THERE IS NOT.

6    Q    AND THERE'S NO MENTION OF UNREGISTERED TRADE

7    DRESS FOR IPHONE AS WELL; CORRECT?

8    A    I AGREE THAT IT'S NOT WRITTEN ON THE SLIDES.

9    Q    AND THERE'S NO UNREGISTERED TRADE DRESS FOR

10   IPAD; CORRECT?

11   A    I AGREE.

12   Q    EXHIBIT 52 DOESN'T SAY ANYWHERE THAT APPLE

13   WOULD NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; IS

14   THAT RIGHT?

15   A    I AGREE.

16   Q    AND THE PRESENTATION DOES NOT IDENTIFY ANY

17   UTILITY PATENTS THAT APPLE WOULD NOT LICENSE TO

18   SAMSUNG; IS THAT RIGHT?

19   A    I AGREE.

20   Q    PLEASE TAKE A LOOK AT EXHIBIT DX 586 IN YOUR

21   BINDER.  THIS IS A PRESENTATION THAT YOU MADE TO

22   SAMSUNG IN OCTOBER 2010; CORRECT?

23   A    YES, THAT'S CORRECT.

24   Q    YOU PREPARED IT YOURSELF?

25   A    I DID.

2269

```
 1    Q    AS PART OF DOING BUSINESS AS A LICENSING

 2    OFFICER AT APPLE; CORRECT?

 3    A    YES, THAT'S CORRECT.

 4            MS. MAROULIS:  YOUR HONOR, I MOVE EXHIBIT

 5    586 INTO EVIDENCE.

 6            MR. MUELLER:  NO FURTHER OBJECTIONS, YOUR

 7    HONOR, SUBJECT TO THE LIMITING INSTRUCTION THAT

 8    YOUR HONOR MENTIONED.

 9            THE COURT:  RIGHT.  AND THERE IS A --

10    THIS IS ADMITTED.

11            (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12            586, HAVING BEEN PREVIOUSLY MARKED FOR

13            IDENTIFICATION, WAS ADMITTED INTO

14            EVIDENCE.)

15            THE COURT:  YOU MAY CONSIDER THIS -- YOU

16    MAY NOT CONSIDER THIS EVIDENCE TO PROVE OR DISPROVE

17    THE VALIDITY OR INVALIDITY OF THE CLAIM OR THE

18    AMOUNT OF THE DISPUTED CLAIM.

19            HOWEVER, YOU MAY CONSIDER THIS EVIDENCE

20    FOR SOME OTHER PURPOSE, FOR EXAMPLE, WHETHER OR NOT

21    SAMSUNG LACKED NOTICE OF APPLE'S INFRINGEMENT

22    CLAIMS.

23            OKAY.  GO AHEAD, PLEASE.

24    BY MS. MAROULIS:

25    Q    MR. TEKSLER, NOWHERE IN EXHIBIT 586 DOES APPLE
```

2270

1    IDENTIFY ANY PATENTS; CORRECT?

2    A    THAT'S CORRECT.

3    Q    AND NOWHERE IN THIS WRITTEN PRESENTATION DOES

4    IT SAY THAT APPLE WOULD NOT LICENSE ITS DESIGN

5    PATENTS TO SAMSUNG; CORRECT?

6    A    I'M NOT SURE THAT I AGREE WITH THAT.  I KNOW

7    THAT WE TALKED ABOUT THAT AND THAT THERE WAS A

8    SPECIFIC BULLET, I BELIEVE, ON ONE OF THE PAGES

9    THAT ADDRESSED THAT.

10   Q    SIR, I'M NOT ASKING YOU ABOUT THE MEETING

11   ITSELF.  I'M ASKING YOU ABOUT THE PRESENTATION.

12   NOWHERE IN THIS DOCUMENT, 586, IS THERE A STATEMENT

13   THAT APPLE WOULD NOT LICENSE DESIGN PATENTS TO

14   SAMSUNG?

15   A    I THINK THERE IS A BULLET IN HERE THAT SAYS

16   SPECIFIC APPLE PROPRIETARY FEATURES TO BE

17   DISCUSSED.

18             AND IN THAT CONSTRUCT, WE TALKED ABOUT

19   NOT HAVING THE ABILITY TO CLONE OUR PRODUCTS.

20   Q    AGAIN, WITHIN THE CONTEXT OF THIS

21   PRESENTATION, THERE'S NO STATEMENT THAT APPLE WOULD

22   NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; CORRECT?

23   A    I AGREE.

24   Q    AND NOWHERE IN THIS DOCUMENT DOES APPLE SAY

25   THAT IT WOULD NOT LICENSE CERTAIN UTILITY PATENTS

2271

```
1    TO SAMSUNG; CORRECT?

2    A    SUBJECT TO THE SAME, YOU KNOW, POINT THAT I

3    MADE EARLIER, YES.

4    Q    LET'S PUT UP 586, PAGE 13, PLEASE.

5              AT THE TOP OF THE PAGE, IT SAYS "WE WILL

6    PROVIDE SAMSUNG WITH A NUMBER OF OPTIONS FOR

7    OBTAINING A COST-EFFECT LICENSE TO OUR PATENT

8    PORTFOLIO."

9              DID I READ THIS CORRECTLY?

10   A    YES, THAT'S CORRECT.

11   Q    AND THIS REFERS TO LICENSING PATENT PORTFOLIO;

12   RIGHT?

13   A    YES, THAT'S CORRECT.

14   Q    IT DOES NOT SAY "PATENT PORTFOLIO EXCEPT

15   DESIGN PATENTS."  CORRECT?

16   A    NO, I AGREE THE SLIDE DOESN'T SAY THAT.

17   Q    AND IT DOESN'T SAY "EXCEPT FOR CERTAIN UTILITY

18   PATENTS."  CORRECT?

19   A    THAT'S CORRECT.

20   Q    IN EXHIBIT 586, APPLE PROPOSED CERTAIN

21   DISCOUNTS ON THE LICENSE FEES BASED ON CERTAIN

22   ELEMENTS; CORRECT?

23   A    YES, THAT'S CORRECT.

24   Q    AND ONE OF THOSE ELEMENTS WERE PROPRIETARY,

25   SO-CALLED PROPRIETARY FEATURES?
```

1    A    YES.  I'M NOT SURE THAT WE'RE USING THE WORD

2    THE SAME WAY, BUT YES.

3    Q    OKAY.  AND APPLE DEFINED SOME OF ITS

4    PROPRIETARY FEATURES, WHAT IT'S CALLED DISTINCTIVE

5    INDUSTRIAL DESIGN; CORRECT?

6    A    APPLE DEFINED SOME OF IT AS -- OR WHAT I DID

7    SPECIFICALLY, I SHOULD SAY, IS I DEFINED THEM AS

8    DISTINCTIVE INDUSTRIAL DESIGNS, THAT'S CORRECT.

9    Q    AND APPLE NEVER GAVE SAMSUNG ANYTHING IN

10   WRITING THAT IDENTIFIED PATENTS OR FEATURES THAT

11   WERE NOT AVAILABLE FOR LICENSE; IS THAT RIGHT?

12   A    IN THIS PRESENTATION?  OR EVER?

13   Q    IN THIS PRESENTATION, SIR.

14   A    IN THIS PRESENTATION, NO, WE HAD NOT GOTTEN TO

15   THAT POINT OF THE DISCUSSION.  WE HAD JUST SIMPLY

16   MENTIONED THAT THERE WERE SOME THINGS THAT YET HAD

17   TO BE DISCUSSED.

18   Q    OKAY.  SIR, IT'S TRUE, IS IT NOT, THAT APPLE

19   LICENSED ITS DESIGN PATENTS TO ANOTHER PARTY?

20   A    YES.  I THINK I SAID EARLIER THAT THERE WERE

21   LESS THAN A HANDFUL OF SUCH EVENTS.

22   Q    BUT THOSE PATENTS HAVE BEEN LICENSED BEFORE;

23   CORRECT?

24   A    YES.

25   Q    ARE YOU AWARE OF WHETHER ANYONE HAS EVER PAID

2273

```
1     APPLE A PER UNIT ROYALTY OF $2.02 FOR THE '381
2     PATENT?
3     A    NO, I'M NOT AWARE.
4               (PAUSE IN PROCEEDINGS.)
5     BY MS. MAROULIS:
6     Q    I'M SORRY, SIR?
7     A    NO, I'M NOT AWARE OF THAT.
8               MS. MAROULIS:  OKAY.  YOUR HONOR, WE'RE
9     ALMOST AT THE END.  SHOULD WE STOP OR CONTINUE?
10              THE COURT:  IT'S NOW 4:30, SO WE CAN END
11    FOR TODAY.
12              MS. MAROULIS:  OKAY.
13              THE COURT:  SO WE'LL CONTINUE WITH THE
14    CROSS ON MONDAY.
15              ALL RIGHT.  SO PLEASE DON'T DISCUSS THE
16    CASE WITH ANYONE, DON'T DO ANY RESEARCH, PLEASE
17    KEEP AN OPEN MIND, AND YOU'RE EXCUSED FOR TODAY AND
18    WE'LL SEE YOU BACK ON MONDAY AT 9:00 O'CLOCK.
19              AND NEXT WEEK WE ARE GOING FIVE DAYS
20    STRAIGHT, OKAY?
21              THANK YOU FOR YOUR PATIENCE AND YOUR
22    SERVICE.
23              AND IF YOU WOULD, PLEASE, LEAVE YOUR JURY
24    BOOKS IN THE JURY ROOM OVER THE WEEKEND.
25              OKAY.  THANK YOU.
```

1

2

3

4                          CERTIFICATE OF REPORTER

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                    /S/

                 _____
22               LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595
23

24                    DATED:  AUGUST 11, 2012

25