# Pierce Declaration

# EXHIBIT 9

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6   CORPORATION,                 )
                                 )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,       )
                                 )  AUGUST 15, 2012
8           VS.                  )
                                 )  VOLUME 9
9   SAMSUNG ELECTRONICS CO.,     )
    LTD., A KOREAN BUSINESS      )  PAGES 2651-2965
10  ENTITY; SAMSUNG              )
    ELECTRONICS AMERICA,         )
11  INC., A NEW YORK             )
    CORPORATION; SAMSUNG         )
12  TELECOMMUNICATIONS           )
    AMERICA, LLC, A DELAWARE     )
13  LIMITED LIABILITY            )
    COMPANY,                     )
14                               )
                DEFENDANTS.      )
15  _____

16             TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24                          IRENE RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF        MORRISON & FOERSTER
      APPLE:                    BY:  HAROLD J. MCELHINNY
 3                                   MICHAEL A. JACOBS
                                     RACHEL KREVANS
 4                             425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:               HALE AND DORR
 7                             BY:  WILLIAM F. LEE
                              60 STATE STREET
 8                            BOSTON, MASSACHUSETTS  02109

 9                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                           OLIVER & HEDGES
12                             BY:  CHARLES K. VERHOEVEN
                                   ALBERT P. BEDECARRE
13                            50 CALIFORNIA STREET, 22ND FLOOR
                              SAN FRANCISCO, CALIFORNIA  94111
14
                               BY:  VICTORIA F. MAROULIS
15                                  KEVIN P.B. JOHNSON
                              555 TWIN DOLPHIN DRIVE
16                            SUITE 560
                              REDWOOD SHORES, CALIFORNIA  94065
17
                               BY:  MICHAEL T. ZELLER
18                                  WILLIAM C. PRICE
                                    JOHN B. QUINN
19                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
20                            LOS ANGELES, CALIFORNIA  90017

21    FOR INTERVENOR       RAM, OLSON,
      REUTERS:             CEREGHINO & KOPCZYNSKI
22                             BY:  KARL OLSON
                              555 MONTGOMERY STREET, SUITE 820
23                            SAN FRANCISCO, CALIFORNIA  94111

24
      INTERPRETERS:        JAMES YIM VICTORY
25                         ANN PARK
                           ALBERT KIM
```

1

2                    INDEX OF WITNESSES

3    DEFENDANT'S

4    **MARKUS PALTIAN**
          VIDEO DEPOSITION PLAYED              P. 2670
5                                              P. 2671

6

7    **ANDRE ZORN**
          VIDEO DEPOSITION PLAYED              P. 2671
                                               P. 2672
8

9    **TIM ARTHUR WILLIAMS**
          DIRECT EXAM BY MR. VERHOEVEN         P. 2676
          CROSS-EXAM BY MR. LEE                P. 2739
10

11   **JIN SOO KIM**
          DIRECT EXAM BY MR. QUINN             P. 2787
12        CROSS-EXAM BY MR. MCELHINNY          P. 2821
          REDIRECT EXAM BY MR. QUINN           P. 2833
13

14   **RICHARD HOWARTH**
          DIRECT EXAM BY MR. PRICE             P. 2838
15        CROSS-EXAM BY MR. MCELHINNY          P. 2842

16

17   **ANDRIES VAN DAM**
          DIRECT EXAM BY MR. JOHNSON           P. 2845
          CROSS-EXAM BY MS. KREVANS            P. 2873
18        REDIRECT EXAM BY MR. JOHNSON         P. 2883
          RECROSS-EXAM BY MS. KREVANS          P. 2884
19

20   **STEPHEN GRAY**
          DIRECT EXAM BY MR. DEFRANCO          P. 2893
21        CROSS-EXAM BY MR. JACOBS             P. 2924

22

23

24

25

INDEX OF EXHIBITS

|  | MARKED | ADMITTED |
|---|---|---|
| PLAINTIFF'S | | |
| 2011 | | 2669 |
| 43 | | 2828 |
| 42 | | 2829 |
| DEFENDANT'S | | |
| 636 | | 2673 |
| 635 | | 2674 |
| 1083 | | 2674 |
| 557 | | 2675 |
| 1073 | | 2682 |
| 3966.104 | 2697 | |
| 3966.105 | 2703 | |
| 3966.106 | 2705 | 2705 |
| 1070 | | 2711 |
| 107 | | 2721 |
| 3666.108 | | 2730 |
| 635-A & 635-B | | 2733 |
| 685 | | 2764 |
| 3973.009 | | 2804 |
| 684.001 | | 2820 |
| 3973.010 | | 2820 |
| 621-A | | 2837 |
| 2627 | | 2839 |
| 712 | | 2841 |
| 717 | | 2842 |
| 3964.015A | | 2860 |
| 2964.026 - 038 | | 2864 |
| 655 | | 2883 |
| 655 & 548 | | 2886 |
| 550 | | 2903 |
| 561 | | 2917 |
| 1081 | | 2920 |

2829

```
1    THE FIRST DOCUMENT IN MINE, PX 42.  IT'S IN THE
2    WHITE BINDER, SIR.
3    A    YES, I'M LOOKING AT IT.
4    Q    SIR, DO YOU SEE THERE AN E-MAIL THAT'S DATED
5    FEBRUARY 16TH, 2010?
6    A    YES, THAT'S CORRECT.
7    Q    FROM A PERSON NAMED HYUN KIM, DO YOU SEE THAT?
8    A    YES, I SEE IT.
9    Q    HYUN KIM IS DESIGNATED HERE AS A SENIOR
10   DESIGNER AT SAMSUNG?
11   A    I HAVE NOT SEEN THIS PERSON BEFORE.
12   Q    SIR, MY QUESTION IS, DOES HIS TITLE ON THE
13   E-MAIL SAY THAT HE IS A SENIOR DESIGNER AT SAMSUNG?
14   A    YES, THAT'S HOW IT'S WRITTEN.
15            MR. MCELHINNY:  YOUR HONOR, I WOULD MOVE
16   EXHIBIT, PLAINTIFF'S EXHIBIT 42.
17            MR. QUINN:  OBJECTION.  RELEVANCE,
18   RELATES TO P1, P3, NEITHER OF WHICH ARE AT ISSUE IN
19   THIS CASE.
20            THE COURT:  THAT'S OVERRULED.
21            GO AHEAD.  IT'S ADMITTED.
22            (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
23            42, HAVING BEEN PREVIOUSLY MARKED FOR
24            IDENTIFICATION, WAS ADMITTED INTO
25            EVIDENCE.)
```

1    BY MR. MCELHINNY:

2    Q    NOW LET'S LOOK AT THESE DOCUMENTS, SIR.

3              EXHIBIT 42, ON FEBRUARY 16TH, 2010,

4    ACCORDING TO THIS, THERE WAS A MEETING BETWEEN

5    GOOGLE AND A SAMSUNG SENIOR DESIGNER CHO.  DO YOU

6    SEE THAT?

7    A    YES.

8    Q    AND THERE'S AN ENTRY THERE TALKING ABOUT P1

9    AND P3.

10   A    YES.

11   Q    AND THE QUOTE IS, "SINCE IT IS TOO SIMILAR TO

12   APPLE, MAKE IT NOTICEABLY DIFFERENT, STARTING WITH

13   THE FRONT SIDE."

14             DO YOU SEE THAT?

15   A    YES, THAT'S HERE, YES.

16   Q    AND THEN, SIR, IF YOU LOOK AT PX 43., IF YOU

17   LOOK AT THE SECOND PAGE AT BULLET POINT NUMBER 6.

18   THIS IS THE MINUTES OF THE TEAM LEADER'S DIRECTIVES

19   AT THE EXECUTIVE MEETING.

20             DO YOU SEE THAT?

21   A    YES, THAT'S CORRECT.

22   Q    AND THE FIRST ENTRY SAYS, "RESPOND TO THE

23   ISSUE OF DESIGN SIMILARITY FOR THE S SERIES."

24             DO YOU SEE THAT?

25   A    YES, THERE IS A MENTION THAT THE CMF SHOULD BE

1    CHANGED.

2    Q    AND THE S SERIES, SO WE ALL UNDERSTAND IT, IS

3    THE GALAXY S SERIES OF PHONES.  THAT'S WHAT THEY'RE

4    TALKING ABOUT HERE WHERE THEY'RE TALKING ABOUT

5    DESIGN SIMILARITY?

6    A    YES, THAT IS CORRECT.

7    Q    AND THEN FURTHER DOWN, IT SAYS, "GOOGLE IS

8    DEMANDING DISTINGUISHABLE DESIGN VIS-À-VIS THE IPAD

9    FOR THE P3."

10              DO YOU SEE THAT?

11   A    I SEE IT.  BUT THIS IS ABOUT THE FRONTAL

12   DIFFERENTIATION AND THERE IS A FAMOUS ARCHITECT IN

13   THE U.S. WHO HAD SAID THAT FORM FOLLOWS FUNCTION,

14   SO THE FUNCTION IS MORE IMPORTANT WHEN IT COMES TO

15   THE FRONTAL SIZE.

16   Q    AND THE DECISION THAT THE TEAM EXECUTIVES MADE

17   AT THIS MEETING WAS TO MAINTAIN THE CURRENT DESIGN.

18              DO YOU SEE THAT?

19   A    YES, THAT IS CORRECT.

20   Q    IN FACT --

21   A    YES.  HOWEVER, THE TIME PERIOD HERE CONCERNED,

22   THIS WOULD BE AFTER THE CONCLUSION OF MWC, AND THIS

23   IS WHEN WE HAD ALREADY DECIDED THAT WE WOULD

24   PRODUCE THE THINNEST DEVICE IN THE WORLD.

25   Q    AND LET'S MAKE SURE OF YOUR TESTIMONY.

1          DESPITE THIS TEAM LEADER'S MEETING, THE

2     DISCUSSION ABOUT GOOGLE AND THE DECISION, YOU HAVE

3     TESTIFIED HERE UNDER OATH THAT NOT ONE OF YOUR

4     SUPERVISORS EVER MENTIONED THIS ISSUE TO YOU?  IS

5     THAT YOUR TESTIMONY?

6          MR. QUINN:  YOUR HONOR, ASSUMES FACTS NOT

7     IN EVIDENCE.  THERE'S NO FOUNDATION THAT'S BEEN

8     LAID THAT HE WAS AT THE MEETING OR THAT HE HAS ANY

9     KNOWLEDGE OF THIS.  HE'S BEING QUESTIONED ABOUT A

10    DOCUMENT HE HASN'T EVEN LAID A FOUNDATION HE'S EVEN

11    SEEN.

12          THE COURT:  OVERRULED.

13          THE WITNESS:  I DIDN'T QUITE CATCH THAT.

14    COULD YOU ASK ME THE QUESTION AGAIN, PLEASE.

15    BY MR. MCELHINNY:

16    Q    IS IT YOUR TESTIMONY, UNDER OATH, THAT NO

17    SUPERVISOR OF YOURS EVER MENTIONED TO YOU THE

18    DISCUSSION WITH GOOGLE?

19    A    THAT IS CORRECT.

20    Q    SIR, IN FACT, YOU THEN WENT ON TO USE THE

21    DESIGN OF THE GALAXY TAB AS YOUR INSPIRATION WHEN

22    YOU DESIGNED THE GALAXY ACE PHONE; ISN'T THAT TRUE?

23          THE INTERPRETER:  COUNSEL, WAS THAT ACE

24    PHONE?

25          MR. MCELHINNY:  ACE, GALAXY CASE.

```
 1              THE WITNESS:  YES, THAT IS CORRECT.
 2       BY MR. MCELHINNY:
 3       Q    SIR, DO YOU KNOW A GENTLEMAN BY THE NAME OF
 4       MINHYOUK LEE?
 5       A    YES, I DO.
 6       Q    HE WAS THE ORIGINAL DESIGNER OF THE GALAXY
 7       PHONES, WASN'T HE?
 8       A    THAT'S CORRECT.  HE DESIGNED THE GALAXY S I.
 9       Q    HAVE YOU SEEN MR. LEE SINCE YOU'VE BEEN HERE
10       IN SAN JOSE?
11       A    YES, I HAVE.
12       Q    IS HE GOING TO COME AND TESTIFY TO THIS JURY?
13       A    I DON'T KNOW THAT.
14              MR. MCELHINNY:  MR. KIM, THANK YOU VERY
15       MUCH FOR YOUR TIME.
16              THE COURT:  ALL RIGHT.  THE TIME IS NOW
17       2:17.  PLEASE GO AHEAD.
18              MR. QUINN:  IF WE COULD PUT UP ON THE
19       SCREEN PLAINTIFF'S EXHIBIT 43.
20                    REDIRECT EXAMINATION
21       BY MR. QUINN:
22       Q    AND LOOK AT THE PAGE -- THE SECOND PAGE, BATES
23       NUMBER 857 THAT COUNSEL WAS JUST ASKING YOU ABOUT.
24              AND IF WE CAN BLOW UP THAT 6, RESPOND TO
25       THE ISSUE.
```

```
 1              "GOOGLE IS DEMANDING DISTINGUISHABLE
 2    DESIGN VISIT APPARENTLY VISIT THE IPAD FOR THE P3."
 3    DO YOU SEE THAT, THAT COUNSEL ASKED YOU ABOUT?
 4    A    YES.
 5    Q    THAT'S THE TABLET THAT WAS NEVER SOLD IN THE
 6    UNITED STATES; CORRECT?
 7    A    THAT'S CORRECT.  THE P3 WAS NOT SOLD.
 8    Q    THAT TABLET IS NOT AT ISSUE IN THIS CASE, IS
 9    IT?
10    A    THAT IS CORRECT.
11    Q    IF WE COULD LOOK AT EXHIBIT 42, THE OTHER
12    DOCUMENT THAT COUNSEL SHOWED YOU, AND IF WE CAN
13    ENLARGE THAT P1, P3 LANGUAGE THERE.
14              I THINK YOU TOLD US THE P1 IS THE GALAXY
15    7.0.
16    A    YES, THAT'S CORRECT.
17    Q    IS THAT -- IS THAT TABLET AT ISSUE IN THIS
18    CASE?
19              MR. MCELHINNY:  YOUR HONOR, THERE'S NO
20    WAY THIS WITNESS WOULD KNOW THAT CORRECTLY.
21              MR. QUINN:  YOUR HONOR, I THINK WE CAN
22    GET A STIPULATION ON THAT, YOUR HONOR.
23              THE COURT:  OVERRULED.
24              GO AHEAD, PLEASE.
25    BY MR. QUINN:
```

1    Q    SIR --

2    A    THAT'S NOT WHAT I HEARD.

3    Q    THE GALAXY 7.0 IS NOT ANYTHING THIS JURY NEEDS

4    TO MAKE ANY DECISION ABOUT; ISN'T THAT TRUE?

5           MR. MCELHINNY:  YOUR HONOR, THAT'S JUST

6    FACTUALLY WRONG.  IT'S AN ACCUSED DEVICE IN THE

7    CASE.  THAT'S WHY I'M HAVING THIS PROBLEM.

8           MR. QUINN:  MAYBE I CAN GET A

9    CLARIFICATION FROM COUNSEL, YOUR HONOR.  IS HE

10   SAYING IT'S ACCUSED FOR DESIGN?

11          MR. MCELHINNY:  WHAT COUNSEL IS SAYING,

12   YOUR HONOR, IS THIS WITNESS HAS NO IDEA WHAT'S AT

13   ISSUE.

14   BY MR. QUINN:

15   Q    SIR, IS IT YOUR UNDERSTANDING THAT THERE ARE

16   ANY DESIGN CLAIMS REGARDING THE GALAXY 7.0 PRODUCT?

17   A    NO.

18   Q    SO THE ONLY DOCUMENTS THAT COUNSEL SHOWED YOU

19   ARE REGARDING THE DESIGN OF DOCUMENTS THAT HAVE

20   NOTHING TO DO WITH THIS CASE; CORRECT?

21   A    YES, THAT'S CORRECT.

22          MR. QUINN:  NOTHING FURTHER.

23          THE COURT:  ALL RIGHT.  IT'S 2:20.  IS

24   THERE ANY REDIRECT?

25          MR. MCELHINNY:  NONE FOR ME, YOUR HONOR.

1    COMPUTER SCIENCE, COMPUTER GRAPHICS, AND GRAPHICAL

2    USER INTERFACES.

3              MS. KREVANS:  NO OBJECTION, YOUR HONOR.

4              THE COURT:  SO CERTIFIED.  GO AHEAD,

5    PLEASE.

6              MR. JOHNSON:  THANK YOU, YOUR HONOR.

7    Q    PROFESSOR VAN DAM, DO YOU WORK FOR EITHER OF

8    THE PARTIES IN THIS CASE, SAMSUNG OR APPLE?

9    A    I DO NOT.

10   Q    ARE YOU BEING COMPENSATED IN CONNECTION WITH

11   YOUR WORK IN THIS CASE?

12   A    YES, I AM.

13   Q    WHAT'S YOUR HOURLY RATE?

14   A    THE SAME RATE IT'S BEEN FOR SEVERAL DECADES,

15   WHICH IS A THOUSAND DOLLARS ON HOUR.

16   Q    AND HOW MANY HOURS HAVE YOU SPENT ON THIS CASE

17   THUS FAR?

18   A    UNTIL TODAY, APPROXIMATELY 460 HOURS.

19   Q    NOW, HOW DID YOU DECIDE TO TAKE ON THIS

20   MATTER?

21   A    WELL, WHEN SAMSUNG'S COUNSEL FIRST CALLED ME,

22   I DID WHAT I ALWAYS DO, WHICH IS TO SAY SEND ME THE

23   PATENT AND LET ME TAKE A LOOK AT IT.

24              SO I DID AND I DETERMINED RELATIVELY

25   QUICKLY THAT I WAS QUITE FAMILIAR WITH SNAPPING

```
 1    BEHAVIOR.  IN FACT, I HAD TAUGHT IT TO MY SOPHOMORE
 2    INTRODUCTORY GRAPHICS COURSE FOR AT LEAST A DECADE
 3    IN THE '60S AND '70S.
 4              SO I THOUGHT THAT I WOULD BE ON THE RIGHT
 5    SIDE OF THIS DISPUTE, WHICH IS MY PRIMARY CRITERIA.
 6    Q    HOW MANY TIMES HAVE YOU TESTIFIED AS AN EXPERT
 7    WITNESS?
 8    A    I'VE BEEN IN COURT TWICE BEFORE, ONCE RECENTLY
 9    AND ANOTHER, SOME SAMSUNG VERSUS APPLE DISPUTE, AND
10    THEN IN THE LATE '90S IN A TRADE SECRET CASE.
11    Q    HOW MANY TIMES HAVE YOU BEEN ENGAGED AS AN
12    EXPERT CONSULTANT IN LITIGATION?
13    A    A COUPLE MORE TIMES AS A CONSULTANT.
14    Q    HOW MANY TIMES HAVE YOU BEEN ASKED TO WORK AS
15    AN EXPERT WITNESS IN LITIGATION?
16    A    MANY, MANY TIMES.  DOZENS OF TIMES OVER MY 47
17    YEARS.
18    Q    AND WHY HAVE YOU NOT TAKEN ON MORE CASES?
19    A    WELL, I'M A FULL TIME FACULTY MEMBER, AND,
20    FRANKLY, I MUCH PREFER DOING TEACHING AND RESEARCH
21    TO LEGAL WORK.  AND THERE ISN'T ENOUGH TIME TO DO
22    ALL OF THAT AT THE SAME TIME.
23    Q    NOW, IS YOUR COMPENSATION IN ANY WAY
24    CONTINGENT UPON THE OUTCOME OR YOUR TESTIMONY IN
25    THIS CASE?
```

1    A    CERTAINLY NOT.

2    Q    OKAY.  CAN YOU BRIEFLY DESCRIBE, PLEASE, YOUR

3    UNDERSTANDING OF HOW A PATENT CLAIM CAN BE

4    INVALIDATED BY PRIOR ART?

5    A    YES.  THERE ARE TWO PRINCIPAL WAYS.  ONE IS

6    CALLED BY ANTICIPATION, AND YOU HAVE THAT CASE WHEN

7    YOU CAN FIND A PIECE OF PRIOR ART WHICH DISCLOSES

8    EACH AND EVERY LIMITATION OF EACH AND EVERY ELEMENT

9    OF THE DISPUTED CLAIM.

10            AND THE SECOND MECHANISM IS CALLED

11   OBVIOUSLY, AND YOU CAN USE THAT WHEN YOU CAN FIND

12   MULTIPLE PIECES OF PRIOR ART WHICH TOGETHER

13   DISCLOSE EVERY ELEMENT OF THE DISPUTED CLAIM.

14            AND THEN THERE'S EVEN A SPECIAL CASE OF

15   OBVIOUSNESS WHERE YOU CAN FIND EVERYTHING YOU NEED,

16   EVERY ELEMENT, IN A SINGLE REFERENCE, BUT THERE MAY

17   BE A COUPLE OF THINGS MISSING, BUT IF THOSE

18   ELEMENTS WOULD BE OBVIOUS TO A PRACTITIONER, A

19   PERSON OF ORDINARY SKILL IN THE ART, THEN YOU CAN

20   USE OBVIOUSNESS THERE AS WELL.

21   Q    PROFESSOR VAN DAM, YOU HAVE SOME BINDERS IN

22   FRONT OF YOU, AT LEAST ONE THAT HAS EXHIBIT 1045 IN

23   IT.

24   A    YES, I WILL LOOK FOR IT.

25   Q    HOPEFULLY THAT'S THE '381 PATENT.

1     A     YES, IT IS.

2     Q     OKAY.  HAVE YOU -- YOU'VE REVIEWED THIS PATENT

3     BEFORE; RIGHT?

4     A     EXTENSIVELY.

5     Q     AND HAVE YOU PREPARED SLIDES IN PREPARATION

6     FOR YOUR TESTIMONY TODAY?

7     A     I DID.

8     Q     CAN YOU GENERALLY DESCRIBE FOR US, WHAT IS THE

9     '381 PATENT DIRECTED TO?

10    A     IT DESCRIBES WHAT HAPPENS WHEN AN APPLICATION

11    ALLOWS A USER TO OVER SCROLL, THAT IS, TO GO BEYOND

12    THE EDGE OF AN ELECTRONIC DOCUMENT.  IT DESCRIBES

13    THAT YOU THEN HAVE TO SEE SOMETHING THAT'S NOT PART

14    OF THE ELECTRONIC DOCUMENT, THE AREA BEYOND THE

15    EDGE.

16          AND THEN WHEN YOU LIFT YOUR FINGER, THEN

17    THE DOCUMENT CORRECTS ITSELF BY SNAPPING BACK.

18    Q     CAN YOU DESCRIBE FOR US HOW CLAIM 19, WHICH IS

19    THE ASSERTED CLAIM IN THE '381 PATENT, IS MET BY

20    EACH AND EVERY -- EACH AND EVERY LIMITATION OF IT

21    AS DISCLOSED IN THE PRIOR ART?

22    A     YES, I CAN DO THAT.

23          AND THE ANALYSIS HAS TO START BY FIRST

24    DESCRIBING WHAT THE ELECTRONIC DOCUMENT IS THAT I

25    WANT TO USE FOR MY ANALYSIS.

1     Q     AND LET'S START WITH TABLECLOTH.

2     A     FINE.  IN THE CASE OF TABLECLOTH, THERE ARE

3     TWO IDENTICAL PHOTOGRAPHS OR IMAGES STORED IN

4     MEMORY TOGETHER, AND THINK OF THIS AS TWO IDENTICAL

5     PHOTOGRAPHS IN A FAMILY ALBUM.  IT'S A VERY SIMPLE

6     LITTLE PROGRAM, SO DON'T THINK OF IT AS A FULL

7     FEATURE APPLICATION.

8               SO WE HAVE THESE TWO IMAGES TOGETHER, AND

9     THAT IS OUR ELECTRONIC DOCUMENT.

10              AND IT SO, I SHOULD MENTION, BY THE

11    COURT'S CONSTRUCTION, WHICH HOLDS THAT AN

12    ELECTRONIC DOCUMENT IS A DOCUMENT THAT IS STORED IN

13    DIGITAL FORMAT AND IT SPECIFICALLY HAS NO OTHER

14    LIMITATIONS, AND DOES NOT, FOR -- AND IT SAYS

15    SPECIFICALLY ALSO THAT THAT CAN EITHER BE IN A

16    SINGLE FILE OR IN MULTIPLE FILES.  SO IT'S QUITE

17    GENERAL AND ALLOWS THIS PARTICULAR CASE.

18    Q     ARE YOU REFERRING TO THE COURT'S CONSTRUCTION

19    OF ELECTRONIC DOCUMENT?

20    A     YES, I AM.

21    Q     OKAY.  WHAT IS THE ELECTRONIC DOCUMENT IN

22    TABLECLOTH?

23    A     IT'S THESE TWO IMAGES TOGETHER.

24    Q     NOW, DID YOU PREPARE A VIDEO OF HOW TABLECLOTH

25    OPERATES?

1    A    YES, I DID.

2    Q    CAN YOU PLEASE WALK US THROUGH IT?

3    A    YEAH.  THE FIRST THING TO NOTICE IS THAT WE

4    CAN'T HAVE THIS ENTIRE DOCUMENT IN VIEW AT ONCE, SO

5    WE'RE ONLY ALLOWED TO SEE ESSENTIALLY ONE IMAGE

6    WORTH.

7              BUT AS WE SCROLL, INEVITABLY WHAT WE SEE

8    AND VIEW IS GOING TO CHANGE, AND WE'LL GET

9    COMBINATIONS OF BOTH IMAGES UNTIL EVENTUALLY WE'LL

10   SCROLL OFF THE EDGE, SEE THE WHITE AREA BEYOND THE

11   EDGE, AND THEN YOU'LL SEE THE SNAP BACK AS THE USER

12   LIFTS THE FINGER.

13             SO HERE WE START WITH AN OVERVIEW OF THE

14   MITSUBISHI DEVICE THAT IS OUR TOUCHSCREEN DISPLAY.

15   YOU'LL NOTICE THAT IT HAS THE BLACK BEZEL.  THERE'S

16   THE MITSUBISHI LOGO, SOME FAMILIAR ICONS, THE TASK

17   BAR, THE START.

18             AND THIS THING IS AN INTERNET EXPLORER

19   APPLICATION WINDOW IN WHICH THE TABLECLOTH

20   APPLICATION RUNS.

21             SO WHAT I'D LIKE TO DO IS ZOOM IN ON THIS

22   SO WE CAN GET A BETTER VIEW OF THE APPLICATION

23   WINDOW, AND --

24   Q    AND WHAT DO WE SEE HERE?

25   A    WELL, WE'RE NOW ZOOMED IN AND READY TO START

1    OUR DEMONSTRATION, AND YOU'LL SEE A FINGER APPEAR,

2    YOU'LL SEE THE SCROLLING ACTION, THE AREA BEYOND

3    THE EDGE, AND THEN THE SNAP BACK.

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6              THE WITNESS:  SO START SCROLLING, YOU SEE

7    PORTIONS OF TOP AND BOTTOM IMAGE, MORE OF THE

8    BOTTOM IMAGE COMES INTO VIEW, EVENTUALLY WE REACH

9    THE EDGE OF THE BOTTOM IMAGE RIGHT THERE, AND NOW

10   WE GO BEYOND, SEE THE AREA BEYOND THE EDGE, LIFT

11   THE FINGER, AND SNAP BACK.

12   Q    CAN YOU EXPLAIN HOW TABLECLOTH ANTICIPATES

13   EACH AND EVERY LIMITATION IN CLAIM 19?

14   A    I CAN DO THAT.

15   Q    PLEASE DO SO.

16   A    IN ORDER TO PERFORM THAT ANALYSIS, WE HAVE TO

17   READ THE CLAIM LANGUAGE LIMITATION BY LIMITATION,

18   AND WE START AT THE VERY TOP SAYING IT MUST BE A

19   DEVICE WITH MULTIPLE COMPONENTS.  WHAT ARE THEY?  A

20   TOUCHSCREEN DISPLAY.  YOU SAW THE FINGER TOUCHING

21   THE SCREEN AND SCROLLING THE DOCUMENT, TRANSLATING

22   THE DOCUMENT.  SO THAT IS A TOUCHSCREEN DISPLAY.

23              THERE ARE MULTIPLE PROCESSORS IN THE IBM

24   LAPTOP P.C. THAT IS DRIVING THE SYSTEM.

25              THEY, OF COURSE, HAVE MEMORY.  IT'S

```
 1   ABSOLUTELY A VANILLA P.C.

 2           AND WE STORE PROGRAMS IN THAT MEMORY AND

 3   THE PURPOSE, OF COURSE, IS TO EXECUTE THE PROGRAMS

 4   AND EACH PROGRAM IS A SEQUENCE, OR A COLLECTION OF

 5   SEQUENCES OF INSTRUCTION.

 6           AND, IN FACT, THE WHOLE REST OF THE

 7   PATENT IS AN ELABORATION OF WHAT EACH OF THAT GROUP

 8   OF INSTRUCTIONS HAS TO DO IN ORDER TO PERFORM FIRST

 9   THE SCROLLING, THEN GOING BEYOND THE EDGE, AND THEN

10   SNAPPING BACK.

11   Q   SO WE'VE MET ALL OF THE LIMITATIONS IN THIS

12   CHECKLIST.

13           BY THE WAY, WHAT ARE THE COMPONENTS OF

14   THE DIAMONDTOUCH THAT ARE NOT SHOWN ON THE IMAGE ON

15   THE RIGHT?  YOU MENTIONED A P.C., FOR EXAMPLE.

16   A   WELL, IT'S NOT IN THE IMAGE BECAUSE I

17   CONCENTRATED ON THE SCREEN WHERE THE ACTION TAKES

18   PLACE.  THE LAPTOP IS ON THE SIDE.  THE PROJECTOR

19   THAT IS PRODUCING THIS DISPLAY IS ABOVE THE

20   DISPLAY.  I DIDN'T SHOW YOU THE TABLE, THE CHAIRS,

21   OR THE CAPACITIVE CONNECTION THAT WAS MENTIONED BY

22   MR. BOGUE AND DR. FORLINES.

23           THE COURT:  LET ME ASK, MR. JOHNSON -- WE

24   SHOULD PROBABLY TAKE OUR BREAK.

25           MR. JOHNSON:  THAT'S FINE, YOUR HONOR.
```

```
 1              THE COURT:  WE CAN GO A LITTLE BIT
 2    LONGER, BUT I DON'T WANT OUR COURT REPORTERS TO
 3    HAVE TO GO TWO HOURS STRAIGHT.  THEY'VE BEEN GOING
 4    SINCE 1:03.
 5              MR. JOHNSON:  THIS IS A PERFECT PLACE.
 6              THE COURT:  IS THIS A GOOD PLACE.  OKAY.
 7    IT'S NOW 2:52.  WE'LL TAKE A 15-MINUTE BREAK.  SAME
 8    ADMONITION, PLEASE KEEP AN OPEN MIND, DON'T DISCUSS
 9    THE CASE WITH ANYONE.  PLEASE DON'T READ ABOUT THE
10    CASE OR DO ANY RESEARCH.  YOU CAN LEAVE YOUR
11    BINDERS ON YOUR CHAIRS, AND WE'LL SEE YOU BACK IN
12    15 MINUTES.  THANK YOU.
13              (WHEREUPON, THE FOLLOWING PROCEEDINGS
14    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
15              THE COURT:  ALL RIGHT.  THANK YOU.
16              (WHEREUPON, A RECESS WAS TAKEN.)
17              (WHEREUPON, THE FOLLOWING PROCEEDINGS
18    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
19              THE COURT:  ALL RIGHT.  WELCOME BACK,
20    PLEASE TAKE A SEAT.
21              IF YOU WOULD PLEASE BRING OUR JURY BACK.
22              (WHEREUPON, THE FOLLOWING PROCEEDINGS
23    WERE HELD IN THE PRESENCE OF THE JURY:)
24              THE COURT:  OKAY.  PLEASE TAKE A SEAT.
25    WELCOME BACK.
```

```
1              IT IS 3:07.  GO AHEAD, PLEASE.
2              MR. JOHNSON:  THANK YOU, YOUR HONOR.
3              YOUR HONOR, I'D LIKE TO START BY MOVING
4    IN SDX 3964.15, WHICH IS THE VIDEO WE JUST WATCHED.
5              MS. KREVANS:  NO OBJECTION, YOUR HONOR.
6              THE COURT:  ALL RIGHT.  3964.015, NOT A,
7    JUST 015.
8              MR. JOHNSON:  THE VIDEO.
9              THE COURT:  WHAT WAS THE NUMBER FOR THAT?
10             MR. JOHNSON:  IT SHOULD BE .015A.
11             THE COURT:  IT IS A, OKAY.
12             MR. JOHNSON:  YES.
13             THE COURT:  THANK YOU.  THAT'S ADMITTED.
14             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
15             3964.015A, HAVING BEEN PREVIOUSLY MARKED
16             FOR IDENTIFICATION, WAS ADMITTED INTO
17             EVIDENCE.)
18   BY MR. JOHNSON:
19   Q    PROFESSOR VAN DAM, CAN YOU SHOW US HOW
20   TABLECLOTH MEETS THE NEXT LIMITATION OF CLAIM 19?
21   A    SURE.  IT'S A VERY SHORT ELEMENT, AND IT SAYS
22   THAT YOU MUST HAVE INSTRUCTIONS FOR DISPLAYING A
23   FIRST PORTION OF AN ELECTRONIC DOCUMENT.
24             IT DOESN'T TELL YOU HOW YOU ARRIVE AT
25   THAT FIRST PORTION.  SO LET'S ZOOM IN AGAIN AND NOW
```

```
 1    WE'LL SEE A BIT OF SCROLLING, AND THEN SOMEWHERE

 2    WE'LL STOP AND SAY THAT'S OUR FIRST PORTION AND

 3    ANNOTATE IT AS SUCH.

 4    Q    OKAY.  WHAT ABOUT THE NEXT LIMITATION,

 5    INSTRUCTIONS FOR TRANSLATING?

 6    A    SO HERE WE'VE TRANSLATED JUST A LITTLE BIT

 7    MORE, SHOWING THAT THERE ARE INSTRUCTIONS FOR

 8    TRANSLATING.

 9          AND THAT TRANSLATION DIRECTION IS CALLED

10    THE FIRST DIRECTION, THE UPWARD DIRECTION IN THE

11    CASE OF TABLECLOTH AND IN THIS DEMONSTRATION.

12          NOW, WHEN YOU SCROLL, INEVITABLY YOU'RE

13    GOING TO DISPLAY A DIFFERENT PORTION OF THE

14    ELECTRONIC DOCUMENT.  AND THAT IS CALLED THE SECOND

15    PORTION IN THE CLAIM LANGUAGE.

16          NOW, I WANT TO POINT OUT THAT THIS

17    DISCUSSION OF FIRST PORTION, SECOND PORTION, AND

18    YOU'LL SOON SEE A THIRD AND FOURTH IS THE PATENT'S

19    WAY OF TEXTUALLY DESCRIBING WHAT YOU'RE GOING TO

20    SEE VISUALLY.  IT IS NOT, IN FACT, A SEPARATE

21    DESIGN FEATURE.  IT'S A CONSEQUENCE OF THE

22    SCROLLING MOTION.

23          SO WHAT ELSE IS REQUIRED?  WELL, BECAUSE

24    YOU'RE SCROLLING, YOU'RE GOING TO SEE A DIFFERENT

25    PORTION, AND, THEREFORE, THE SECOND PORTION WILL BE
```

1    DIFFERENT FROM THE FIRST PORTION.

2              AND YOU CAN CLEARLY SEE THAT, FOR

3    EXAMPLE, IF YOU LOOK AT THE AMOUNT OF SKY IN THE

4    SECOND PORTION VERSUS THE AMOUNT IN THE FIRST

5    PORTION.

6              SO WE CAN CHECK OFF THAT ENTIRE ELEMENT.

7    Q    OKAY.  CAN YOU SHOW US HOW TABLECLOTH MEETS

8    THE NEXT LIMITATION OF THE CLAIM.

9    A    SURE.  SO IN THE CASE WE'RE GOING TO SCROLL,

10   AS WE'VE SEEN BEFORE, UNTIL WE REACH THE EDGE AND

11   THEN SCROLL A LITTLE BIT MORE TO OVER SCROLL, SO GO

12   BEYOND THE EDGE, AT WHICH POINT WE HAVE TO SEE

13   SOMETHING NOT PART OF THE ELECTRONIC DOCUMENT,

14   WHICH THE PATENT CALLS AREA BEYOND THE EDGE.

15             NEXT, AGAIN, INEVITABLY BECAUSE OF THE

16   SCROLLING ACTION, WE'LL SEE YET A DIFFERENT PORTION

17   OF THE ELECTRONIC DOCUMENT CALLED THE THIRD

18   PORTION, AND THE PATENT DESCRIBES THAT, AGAIN,

19   INEVITABLY, THAT THE PORTION HAS TO BE SMALLER THAN

20   THE FIRST PORTION, NOT JUST DIFFERENT, BUT SMALLER.

21             WHY?  WELL, BECAUSE WE HAVE TO MAKE ROOM

22   FOR THE AREA BEYOND THE EDGE AND THUS THE RED

23   RECTANGLE IS SMALLER THAN THE ORANGE RECTANGLE.

24   THE IMAGE IS JUST SMALLER.

25   Q    AND CAN YOU DESCRIBE FOR US HOW TABLECLOTH

2863

```
1    MEETS THE NEXT LIMITATION AS DESCRIBED IN CLAIM 34?

2    A    SO THE NEXT ELEMENT IS GOING TO BE SHOWN HERE,

3    AND THIS IS SETTING US UP FOR THE SNAP-BACK.  WHAT

4    IS THE SNAP-BACK?  IT MEANS TRANSLATING IN ANOTHER

5    DIRECTION, A SECOND DIRECTION, HERE THE OPPOSITE

6    DIRECTION GOING DOWNWARD.

7         AND WHAT ARE YOU TRYING TO ACCOMPLISH?

8    WELL, YOU'RE TRYING TO GET RID OF THAT AREA BEYOND

9    THE EDGE, AND WHEN YOU DO, YOU SNAP BACK.

10        NOW, ADDITIONALLY, BECAUSE YOU'RE LOOKING

11   AT YET A DIFFERENT PORTION OF THE ELECTRONIC

12   DOCUMENT, YOU'RE GOING TO SEE A FOURTH PORTION AND

13   THE PATENT REQUIRES THAT IT BE DIFFERENT FROM WHERE

14   YOU STARTED THE ANALYSIS.

15        AND JUST TO REMIND YOU, WE HAVE --

16   WHOOPS -- A COMBINATION OF TWO IMAGES IN THE FIRST

17   PORTION OVER HERE AND A SINGLE IMAGE ON THE RIGHT

18   AS OUR FOURTH PORTION.

19        AND THAT COMPLETES THE LAST ELEMENT, AND

20   SO WE'VE SHOWN THAT ALL OF THE ELEMENTS OF CLAIM 19

21   ARE FOUND IN TABLECLOTH.

22        MR. JOHNSON:  YOUR HONOR, WE ASK THAT SDX

23   3964.026 THROUGH 38, THAT THOSE SLIDES THAT

24   PROFESSOR VAN DAM JUST REFERRED TO BE ADMITTED.

25        MS. KREVANS:  NO OBJECTION.
```

```
 1              THE COURT:  I'M SORRY.  GIVE ME THAT
 2    BATES RANGE AGAIN.
 3              MR. JOHNSON:  IT'S 3964.026 THROUGH .038.
 4              THE COURT:  OKAY.  AND NO ONE WILL BE
 5    ABLE TO GET ANY DEMONSTRATIVES ADMITTED IN THEIR
 6    REBUTTAL CASES BECAUSE THIS IS FAR EXCEEDING ALL
 7    THE EXHIBIT LIMITS.  OKAY?
 8              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS
 9              3964.026 - .038, HAVING BEEN PREVIOUSLY
10              MARKED FOR IDENTIFICATION, WERE ADMITTED
11              INTO EVIDENCE.)
12    BY MR. JOHNSON:
13    Q    PROFESSOR VAN DAM, WHEN IS YOUR UNDERSTANDING
14    OF WHEN TABLECLOTH WAS CREATED?
15    A    IT WAS CREATED, AS DR. FORLINES TESTIFIED, BY
16    HIS COLLEAGUE AT MITSUBISHI ELECTRIC RESEARCH LAB
17    DURING THE HOLIDAY WINTER VACATION, AND IT WAS THUS
18    AVAILABLE EARLY IN JANUARY, MID-JANUARY IT WAS
19    SHOWN TO THE PUBLIC AT THE NEW SCHOOL FOR SOCIAL
20    RESEARCH, AND I UNDERSTAND FROM HIS TESTIMONY THAT
21    ONE OF THE ATTENDEES WAS SENATOR KERREY.
22    Q    WHAT YEAR WAS THAT?
23    A    THAT WAS 2005.
24    Q    OKAY.  LET'S TURN OUR ATTENTION TO LAUNCHTILE.
25              NOW, CAN YOU TAKE US THROUGH A DISCUSSION
```

1    OF HOW LAUNCHTILE MEETS EACH AND EVERY LIMITATION

2    OF CLAIM 19?

3    A    I WILL.  HERE WE SEE THE DEVICE THAT

4    DR. BEDERSON DEMONSTRATED ALREADY.  IT'S AN ARRAY

5    OF 36 TILES, EACH OF WHICH IS MEANT, IN THIS

6    PROTOTYPE, EVENTUAL TO LAUNCH AN APPLICATION.

7              AND, AGAIN, THE FIRST THING WE HAVE TO DO

8    IS IDENTIFY WHAT OUR ELECTRONIC DOCUMENT IS GOING

9    TO BE.

10             BY THE COURT'S CONSTRUCTION, IT CAN BE

11   ANYTHING THAT HAS A DIGITAL REPRESENTATION.  I

12   COULD PICK A SINGLE TILE.  I COULD PICK TWO, FOUR,

13   EIGHT OR THE ENTIRE SET OF TILES.

14             FOR THE PURPOSES OF MY INVALIDITY

15   ANALYSIS, I PICKED TWO ADJACENT ZONES.  I'LL ZOOM

16   IN TO MAKE THOSE SHOW UP.

17             AND THE TWO ZONES I'LL PICK ARE THE

18   LEFT-MOST ONES.

19             SO THERE IT IS.  IT'S KIND OF SMALL, SO

20   LET ME GO IN A LITTLE BIT.  AND TO ILLUSTRATE WHAT

21   I MEAN BY THE ELECTRONIC DOCUMENT, I'M GOING TO

22   SHOW YOU A SCHEMATIC OF THOSE TWO ZONES OF FOUR

23   TILES EACH, TOGETHER, AS YOU CAN THINK OF THEM AS

24   TWO PHOTOGRAPHS OR EIGHT PHOTOGRAPHS.  IT'S OUR

25   ELECTRONIC DOCUMENT, AND THAT'S HOW WE'RE GOING TO

```
 1    DO OUR ANALYSIS.  WE'RE GOING TO START IN THE LEFT
 2    ZONE, THE LEFT-MOST PART OVER HERE, AND WE'RE GOING
 3    TO SEE THE DOCUMENTS SCROLL IN THE LEFT DIRECTION.
 4              EVENTUALLY WE'RE GOING TO COME TO THE
 5    EDGE OVER HERE.
 6    Q    WHY DOES THE AREA BEYOND THE EDGE?
 7    A    WELL, HERE IT IS ANYTHING THAT IS NOT PART OF
 8    THE ELECTRONIC DOCUMENT, SO IT'S WHATEVER LIES
 9    OUTSIDE THAT WHITE BOX DESIGNATING THE ELECTRONIC
10    DOCUMENT.
11    Q    HAVE YOU PREPARED A VIDEO THAT DESCRIBES HOW
12    THIS PARTICULAR DEVICE MEETS THE LIMITATIONS?
13    A    I HAVE, YES.
14    Q    AND CAN YOU EXPLAIN WHAT WE SEE?
15    A    SO --
16    Q    AND WE'RE LOOKING AT 3964.043 AT THIS POINT.
17    A    WE START OFF BY HAVING ONLY A PORTION IN VIEW,
18    JUST AS IN THE CASE OF TABLECLOTH.  MOTION IN
19    LIMINE ELECTRONIC DOCUMENTS ARE TOO MUCH TO BE SEEN
20    IN THEIR ENTIRETY IN WHATEVER DISPLAY YOU USE,
21    WHETHER IT'S A SMARTPHONE OR EVEN A VERY LARGE
22    INTERACTIVE WHITE BOARD.
23              SO THIS IS THE AMOUNT THAT WE CAN SEE ON
24    THIS LITTLE HANDHELD DEVICE, AND EVENTUALLY WE'RE
25    GOING TO SCROLL TO THE LEFT UNTIL WE -- SORRY.  MY
```

2867

```
1    HAND IS SHAKY.  LET'S START AGAIN.

2             THERE'S THE EDGE.  AND THERE'S THE AREA

3    BEYOND THE EDGE.

4             AND IN THIS CASE IT'S NOT THE WHITE THAT

5    YOU SAW BEFORE WITH TABLECLOTH.  AS I HAD ANSWERED

6    EARLIER, IT'S WHATEVER IS SHOWN OUTSIDE THE

7    ELECTRONIC DOCUMENT.  THE FACT THAT IT HAPPENS TO

8    BE PART OF SOME OTHER ELECTRONIC DOCUMENT OR SOME

9    OTHER PIECE OF INFORMATION IS ABSOLUTELY

10   IMMATERIAL.  THE PATENT DOESN'T SPECIFY WHAT YOU

11   NEED TO SEE OUTSIDE THE EDGE.

12             SO LET ME START THE ANALYSIS.

13             (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

14   OPEN COURT OFF THE RECORD.)

15             THE WITNESS:  AND WE'LL TAP ON THAT TILE

16   TO BRING THAT LEFT-MOST ZONE INTO VIEW.  I'M GOING

17   TO SCROLL TO THE LEFT AND YOU WILL SEE THE MAP OF

18   SEATTLE, A MAIL FILE, THERE'S THE EDGE COMING INTO

19   VIEW, THERE'S THE AREA BEYOND THE EDGE, AND YOU SAW

20   THE FINGER LIFT OFF AND THE DOCUMENT SNAP BACK.

21   Q    SO CAN YOU WALK US THROUGH THE CLAIM AND

22   EXPLAIN TO THE JURY HOW LAUNCHTILE MEETS EACH AND

23   EVERY LIMITATION OF CLAIM 19?

24   A    I CAN AND WILL.

25             SO, AGAIN, WE HAVE TO DO THIS SOMEWHAT
```

1     TEDIOUS ANALYSIS.  PLEASE BEAR WITH ME.

2             WE START WITH A DEVICE, IT'S OUR COMPAQ

3     IPAQ, AND IT CLEARLY HAS A TOUCHSCREEN DISPLAY.  IT

4     HAS A PROCESSOR INSIDE WHICH HAS MEMORY WHICH

5     STORES THE LAUNCHTILE PROGRAM, AMONG OTHERS.

6             AND THE PURPOSE OF THE PROCESSOR IS TO

7     EXECUTE THOSE PROGRAMS.  THE PROGRAMS CONSIST OF

8     SEQUENCES OF INSTRUCTIONS, AND AGAIN WE WILL

9     ENUMERATE EACH SET OF INSTRUCTIONS THAT

10    ACCOMPLISHES EACH OF THE INDIVIDUAL ELEMENTS OF

11    THIS CLAIM.

12    Q    SO HOW DOES LAUNCHTILE MEET THE NEXT

13    LIMITATION OF CLAIM 19?

14    A    SO LET'S LOOK AT IT.  WE'VE TALKED ABOUT WHAT

15    OUR ELECTRONIC DOCUMENT IS IN OUR ANALYSIS.  IT'S

16    THE LEFT ZONE AND ITS NEIGHBOR.

17            AND NEXT WE'RE GOING TO PICK OUR LEFT

18    ZONE, BRING IT INTO VIEW BY ZOOMING AS DR. BEDERSON

19    EXPLAINED, AND WE'LL CALL THAT OUR FIRST PORTION.

20    Q    HOW DOES LAUNCHTILE MEET THE NEXT LIMITATION?

21    A    SO THERE MUST BE INSTRUCTIONS FOR TRANSLATING,

22    WE'RE TRANSLATING HERE, RECALLING THE DIRECTION IN

23    WHICH WE TRANSLATE THE FIRST DIRECTION.

24            AND INEVITABLY, AGAIN, BECAUSE WE'RE

25    SCROLLING, WE'RE GOING TO SEE SOMETHING DIFFERENT.

1    THIS TIME YOU'LL SEE A MIXTURE OF TWO ZONES.

2    YOU'LL SEE THE LEFT ZONE CONTRIBUTED EBAY, THE

3    RIGHT ZONE CONTRIBUTED A MAP OF SEATTLE.

4            WE'RE GOING TO KEEP SCROLLING, BUT FIRST

5    WE HAVE TO NOTE TEXTUALLY THAT THE SECOND PORTION,

6    OF COURSE, IS DIFFERENT FROM THE FIRST PORTION

7    BECAUSE WE'VE BEEN SCROLLING.

8            AND THAT COMPLETES OUR ANALYSIS OF THAT

9    ELEMENT.

10   Q    SO IF WE -- IF WE LOOK AT THE NEXT LIMITATION,

11   THE INSTRUCTIONS FOR DISPLAYING AN AREA BEYOND THE

12   EDGE, CAN YOU DESCRIBE FOR US HOW LAUNCHTILE MEETS

13   THAT LIMITATION, PLEASE?

14   A    YES.  SO WE KEEP SCROLLING WE'LL ENCOUNTER THE

15   EDGE.  YOU SAW IT IN DARK GREEN AND THE AREA

16   BEYOND, AS I SAID EARLIER, IS SIMPLY A PEEK INTO

17   THE NEIGHBORING ZONES.

18           IT IS CLEARLY NOT PART OF THIS ELECTRONIC

19   DOCUMENT.  IT'S VISUALLY DISTINCT.

20           AND LET'S SEE WHAT ADDITIONAL

21   REQUIREMENTS THERE ARE.

22           OF COURSE WE'RE GOING TO SEE A DIFFERENT

23   PORTION, WHICH IS CALLED THE THIRD PORTION, AND AS

24   BEFORE, BECAUSE WE HAVE TO MAKE ROOM FOR THE AREA

25   BEYOND THE EDGE, IT IS GOING TO BE SMALLER THAN THE

```
 1    FIRST PORTION.  YOU JUST COMPARE THE RECTANGLES.

 2              AND I'M SORRY, I BEAT YOU TO THE

 3    QUESTION.

 4    Q    LET ME ASK YOU ABOUT THE NEXT LIMITATION.

 5    IT'S INSTRUCTIONS FOR TRANSLATING IN A SECOND

 6    DIRECTION.

 7              HOW DOES LAUNCHTILE MEET THAT LIMITATION?

 8    A    OKAY.  SO NOW WE'RE GOING TO ACTUALLY HAVE THE

 9    SNAP BACK BECAUSE THE USER WILL LIFT THEIR FINGER.

10    AND THAT MEANS MOVING IN THE OPPOSITE DIRECTION TO

11    CORRECT THE OVER SCROLL, AND THAT IS NOW MOVING TO

12    THE RIGHT.  AND THE OBJECT IS TO GET RID OF THE

13    AREA BEYOND THE EDGE.  THAT'S THE CORRECTION.

14              AND WE SEE THAT THAT HAS BEEN

15    ACCOMPLISHED HERE.

16              ADDITIONALLY, WE REQUIRE THAT THAT FOURTH

17    PORTION BE DIFFERENT FROM THE FIRST, AND IT CLEARLY

18    IS.  WE STARTED WITH EBAY IN THE LEFT ZONE AND WE

19    HAVE SEATTLE IN THE RIGHT ZONE.

20              AND THAT COMPLETES MY ANALYSIS OF THAT

21    ELEMENT, AND, THEREFORE, ALL THE ELEMENTS OF CLAIM

22    19.

23              MR. JOHNSON:  YOUR HONOR, WE ASK THAT WE

24    MOVE INTO EVIDENCE SDX 39 --

25              THE COURT:  WE'RE GOING TO HAVE A
```

2871

1    CONVERSATION ABOUT DEMONSTRATIVES LATER.  I THINK

2    I'M GOING TO STRIKE ALL OF THEM FROM THE EXHIBIT

3    LIST, ALL OF THEM FOR BOTH SIDES BECAUSE THEY'RE

4    LARGELY ARGUMENT OF THE ATTORNEYS OF CLAIM

5    CONSTRUCTION FOR BOTH SIDES, SO THEY'RE ALL

6    PROBABLY GOING TO BE TAKEN OFF THE EXHIBIT LIST.

7    THEY WILL NOT GO TO THE JURY.  OKAY?

8    BY MR. JOHNSON:

9    Q    PROFESSOR VAN DAM, WHAT'S YOUR UNDERSTANDING

10   AS TO WHEN LAUNCHTILE WAS CREATED?

11   A    LAUNCHTILE WAS CREATED BY DR. BEDERSON'S

12   TESTIMONY IN 2004.  IT WAS SUBMITTED TO A

13   CONFERENCE WHERE IT WAS SHOWN IN 2005.  SO 2004 IS

14   THE DATE.

15   Q    DO YOU KNOW -- DID THE UNITED STATES PATENT

16   OFFICE CONSIDER LAUNCHTILE OR TABLECLOTH WHILE THEY

17   WERE EXAMINING APPLE'S '381 PATENT?

18   A    NO, THEY DID NOT.

19   Q    AND HOW DO YOU KNOW THAT?

20   A    BECAUSE I EXAMINED THE PROSECUTION HISTORY AND

21   THERE IS NO MENTION OF THESE TWO PARTICULAR PIECES

22   OF PRIOR ART.  AND, FURTHERMORE, THERE'S A

23   REQUIREMENT THAT WHEN THE PATENT ISSUES, THAT IN

24   THE LIST OF REFERENCES ON THE FRONT PAGE, YOU

25   INCLUDE EVERY SINGLE REFERENCE THAT THE EXAMINER

```
 1    CONSIDERED.  IT DOESN'T APPEAR THERE.

 2    Q    WHY IS THIS SIGNIFICANT?

 3    A    WELL, IT'S SIGNIFICANT BECAUSE IT MEANS THAT

 4    THE PATENT EXAMINER DIDN'T HAVE THE BENEFIT OF

 5    KNOWING ABOUT THIS PRIOR ART.  HAD HE HAD IT, HE

 6    WOULD HAVE NOT BEEN ABLE TO DECLARE THIS PATENT

 7    VALID, NOT TO GRANT IT.

 8              MS. KREVANS:  OBJECTION, YOUR HONOR.  THE

 9    LAST PORTION OF THE TESTIMONY WAS A CONCLUSION FROM

10    THE WITNESS AND SPECULATION ABOUT THE CONDUCT OF

11    THE PATENT OFFICE.

12              THE COURT:  OVERRULED.

13              GO AHEAD.

14    BY MR. JOHNSON:

15    Q    PROFESSOR VAN DAM, IN YOUR OPINION -- LET ME

16    STRIKE THAT.

17              WHAT'S YOUR OPINION ABOUT WHETHER CLAIM

18    19 OF THE '381 PATENT IS OBVIOUS TO A PERSON OF

19    ORDINARY SKILL IN THE ART IN LIGHT OF THE

20    TABLECLOTH PROGRAM RUNNING ON DIAMONDTOUCH?

21    A    WELL, IT'S NOT ONLY ANTICIPATORY, TABLECLOTH,

22    BUT IT'S ALSO OBVIOUS AFTER YOU'VE WATCHED IT AND

23    YOU'RE A PRACTITIONER, A PERSON OF ORDINARY SKILL

24    IN THE ART.  YOU UNDERSTAND THE ADVANTAGE OF THIS

25    SNAPPING BACK BEHAVIOR.
```

1          SO I BELIEVE IT ALSO MEETS THE CRITERIA

2     OF BEING OBVIOUS.

3     Q    AND WHAT'S YOUR OPINION ABOUT WHETHER CLAIM 19

4     OF THE '381 PATENT IS OBVIOUS IN LIGHT OF

5     LAUNCHTILE?

6     A    IT IS EQUALLY OBVIOUS BECAUSE, AGAIN, YOU CAN

7     SEE EVERY ELEMENT THERE.  YOU CAN SEE IT VISUALLY

8     AND THROUGH MY ANALYSIS, I'VE SHOWN THAT IT'S ALL

9     THERE.

10          MR. JOHNSON:  YOUR HONOR, NO FURTHER

11     QUESTIONS.

12          THE COURT:  OKAY.  TIME IS NOW 3:23.

13     PLEASE GO AHEAD.

14          MS. KREVANS:  YOUR HONOR, COULD WE JUST

15     HAVE A MOMENT TO BRING OUT THE DIAMONDTOUCH?  WE

16     WANTED TO SET IT UP AT THE BREAK, BUT MR. JOHNSON

17     FELT IT WOULD OBSTRUCT HIS EXAMINATION.  WE HAVE IT

18     HERE, AND WE'LL BRING IT OUT.

19          (PAUSE IN PROCEEDINGS.)

20          THE COURT:  3:25.  GO AHEAD.

21          MS. KREVANS:  THANK YOU, YOUR HONOR.

22                    **CROSS-EXAMINATION**

23     BY MS. KREVANS:

24     Q    GOOD AFTERNOON, DR. VAN DAM.

25     A    GOOD AFTERNOON, MA'AM.

1    Q    CAN YOU SEE EVERYTHING THAT WE'VE SET UP HERE

2    OKAY?

3    A    I SURE CAN.

4    Q    OKAY.  NOW, LET ME JUST ASK YOU A COUPLE OF

5    PRELIMINARY QUESTIONS.

6             IN FORMING THE OPINIONS THAT YOU HAVE

7    PRESENTED IN THIS CASE, THAT YOU PUT IN YOUR EXPERT

8    REPORT, YOU DIDN'T REVIEW ANY SOURCE CODE; RIGHT?

9    A    I DID NOT SPECIFICALLY REVIEW SOURCE CODE.  AT

10   SOME TIME DURING THE COURSE OF THIS LONG HISTORY, I

11   DID LOOK AT THE SNAP-BACK FUNCTION, IN PARTICULAR I

12   SAW IT PLAYED ON THE SCREEN DURING DR. FORLINES'S

13   TESTIMONY.

14   Q    BUT YOUR OPINIONS DON'T RELY IN ANY WAY ON

15   SOURCE CODE BECAUSE YOU FORMED THEM BEFORE YOU HAD

16   SEEN ANY; RIGHT?

17   A    MY OPINIONS RELY IN PARTICULAR ON WHAT I WAS

18   TOLD ABOUT THE SOURCE CODE BY THE FACT WITNESSES.

19   Q    DO YOU HAVE YOUR DEPOSITION IN A BINDER IN

20   FRONT OF YOU UP THERE, DR. VAN DAM?

21   A    I'M SURE I DO.  COULD YOU TAKE ME TO IT,

22   MA'AM?

23   Q    LOOK FOR A TAB THAT SAYS 5-2-12 DEPOSITION.

24   IT SHOULD HAVE YOUR NAME ON IT AS WELL.

25             AND COULD YOU TURN TO --

```
 1    A    EXCUSE ME.  I'M NOT THERE YET.

 2    Q    -- 6.

 3              MR. JOHNSON:  WHICH PAGE?

 4              MS. KREVANS:  PAGE 6.

 5    Q    LET ME KNOW WHEN YOU'RE THERE, DR. VAN DAM?

 6    A    YES.

 7    Q    OKAY.  PAGE 6, LINE 17 TO 19.

 8              "QUESTION:  YOU ARE NOT RELYING ON ANY

 9    SOURCE CODE IN CONNECTION WITH THIS CASE; IS THAT

10    RIGHT?

11              "ANSWER:  THAT IS RIGHT."

12              WERE YOU ASKED THAT QUESTION AND DID YOU

13    GIVE THAT ANSWER, DR. VAN DAM?

14    A    I WAS.

15    Q    OKAY.  NOW, JUST A LITTLE WHILE AGO WHEN

16    MR. JOHNSON WAS ASKING YOU ABOUT TABLECLOTH, YOU

17    WALKED THROUGH SORT OF A LITTLE ANIMATION AND YOU

18    SAID WHEN THE PERSON LIFTS THEIR FINGER BACK OFF

19    THE SCREEN, THE IMAGE SNAPS BACK SO THAT THERE'S

20    LONGER -- NO LONGER ANY AREA BEYOND THE EDGE.

21              DO YOU RECALL THAT TESTIMONY?

22    A    I DO.

23    Q    NOW, IN FACT, WHERE THE IMAGE SNAPS BACK TO

24    WHEN THE PERSON LIFTS THEIR FINGER IS ALL THE WAY

25    BACK TO WHERE IT FIRST STARTED; RIGHT?
```

```
 1    A    THAT'S THE HOME POSITION, CORRECT.

 2    Q    IT GOES ALL THE WAY BACK TO THE HOME POSITION?

 3    A    IT DOES.  BUT THERE IS NO REQUIREMENT IN THE

 4    PATENT ABOUT THE ENDING STATE.  IT SIMPLY SAYS THAT

 5    YOU MUST BE NO LONGER SHOWING AN AREA BEYOND THE

 6    EDGE.

 7    Q    MY QUESTION, DR. VAN DAM, WAS WHEN THE PERSON

 8    LIFTS THEIR FINGER UP, THE IMAGE GOES ALL THE WAY

 9    BACK TO HOME POSITION; CORRECT?

10    A    THAT'S CORRECT.

11    Q    NOW, LET'S LOOK AT -- ACTUALLY, FIRST LET'S

12    LOOK AT WHAT WE HAVE SET UP HERE, AND I KNOW IT'S

13    NOT FULLY SET UP IN WORKING ORDER, BUT YOU'RE QUITE

14    FAMILIAR WITH THIS DIAMONDTOUCH SYSTEM; RIGHT?

15    A    I'M FAMILIAR ON HOW TO OPERATE TABLECLOTH ON

16    IT.  I WOULDN'T WANT TO BE RESPONSIBLE FOR SETTING

17    IT UP.

18    Q    OKAY.  LET'S MAKE SURE WE KNOW WHAT THE

19    COMPONENTS ARE.

20         SO THE PIECE I'M PUTTING MY HAND ON RIGHT

21    NOW, THAT'S, IN EFFECT, THE TABLETOP THAT PEOPLE

22    USE WHEN THEY USE THE DIAMONDTOUCH SYSTEM; RIGHT?

23    A    IT IS THE SENSOR, AND ALSO THE SCREEN ON WHICH

24    THE INFORMATION IS DISPLAYED.

25    Q    OKAY.  LET'S COME BACK TO THE SENSOR PART.
```

1    GREAT, THANK YOU.  YOU CAN USE THE OTHER MONITOR

2    NEXT TO YOUR CHAIR.

3                  ALL RIGHT.  IT'S 3:47.  PLEASE GO AHEAD,

4    MR. DEFRANCO.

5                       **DIRECT EXAMINATION**

6    BY MR. DEFRANCO:

7    Q    WOULD YOU PLEASE STATE YOUR FULL NAME AND

8    CURRENT OCCUPATION FOR THE RECORD.

9    A    MY NAME IS STEPHEN GRAY, AND I'M A CONSULTANT.

10   Q    YOUR EDUCATIONAL BACKGROUND, PLEASE, MR. GRAY.

11   A    I GRADUATED IN 1973 FROM CAL POLY SAN LUIS

12   OBISPO WITH A DEGREE IN ECONOMICS.

13   Q    IN A SENTENCE OR TWO, WHAT DO YOU DO

14   CURRENTLY?

15   A    MY CONSULTING PRACTICE PRIMARILY FOCUSES ON

16   HIGH TECHNOLOGY SOFTWARE RELATED MATTERS FOR

17   CORPORATIONS, AND I DO SPEND SOME TIME DOING

18   LITIGATION SUPPORT.

19   Q    NOW, PLEASE TELL THE JURY, IN A FEW SENTENCES,

20   SOME OF YOUR EXPERIENCE WITH GRAPHICAL USER

21   INTERFACES?

22   A    SO MY, MY -- I'VE BEEN DESIGNING AND

23   DEVELOPING SYSTEMS OVER 30 YEARS, SINCE I GOT OUT

24   OF COLLEGE.  MANY OF THEM HAVE USER INTERFACE

25   ISSUES THAT ARISE THAT ARE VERY IMPORTANT, CRITICAL

1    ISSUES.

2              FOR EXAMPLE, WHEN I WAS CHIEF TECHNOLOGY

3    OFFICER FOR NTN COMMUNICATIONS, WE BROADCAST ONLINE

4    GAMES ACROSS THE -- ACROSS NORTH AMERICA, AND USER

5    INTERFACE IS A CRITICAL ISSUE IN REGARD TO THAT SO

6    THE ANSWERS TO THE GAMES CAN BE PROPERLY ACCOUNTED

7    FOR.

8              WHEN I WAS CHIEF TECHNOLOGY OFFICER FOR

9    NET WORLD EXCHANGE, IT WAS AN E-COMMERCE SYSTEM, SO

10   IN OTHER WORDS, TRANSACTIONS WERE BEING PERFORMED

11   ONLINE ON WEB-BASED SYSTEMS.  AND, AGAIN, USER

12   INTERFACE BECOMES VERY CRITICAL.  SOMEONE IS

13   PURCHASING SOMETHING, THEY'RE SPENDING MONEY,

14   THAT'S CRITICAL.

15   Q    AND PLEASE GIVE US --

16   A    ONE MORE.  I ALSO WORKED FOR XEROX CORPORATION

17   WHERE I PARTICIPATED IN THE DESIGN AND DEVELOPMENT

18   OF A USER INTERFACE FOR CONTROLLING COPIERS AND

19   ELECTRONIC PRINTERS, ELECTRONIC REPROGRAPHIC

20   DEVICES.  AND ONE OF THOSE WAS AS A TOUCHSCREEN

21   DISPLAY.

22   Q    SOME EXAMPLES OF COMPUTER PROGRAMMING

23   LANGUAGES YOU'VE WORKED WITH OVER THE YEARS?

24   A    WELL, I'VE PROGRAMMED IN EARLY C, C++, C

25   SHARP, JAVA, RPG AND COBALT, WHICH ARE -- THAT

1    TELLS YOU HOW LONG I'VE BEEN DOING THIS.  VARIOUS

2    ASSEMBLY LEVEL LANGUAGES, A VARIETY OF DIFFERENT

3    COMPUTING LANGUAGES.

4    Q    AND, SIR, YOU'RE HERE AS SAMSUNG'S TECHNICAL

5    EXPERT ON THE '915 AND '163 PATENTS; IS THAT

6    CORRECT?

7    A    THAT'S CORRECT.

8    Q    HAVE YOU WORKED BEFORE AS A TECHNICAL EXPERT

9    IN YOUR CAREER?

10   A    I HAVE.

11          MR. DEFRANCO:  YOUR HONOR, AT THIS POINT

12   WE WOULD OFFER MR. GRAY AS AN EXPERT IN SOFTWARE

13   PROGRAMMING AND USER INTERFACE.

14          THE COURT:  ANY OBJECTION?

15          MR. JACOBS:  NO OBJECTION.

16          THE COURT:  SO CERTIFIED.

17   BY MR. DEFRANCO:

18   Q    BRIEFLY, SIR, WOULD YOU GIVE US SOME EXAMPLES

19   OF SOME OF THE MATERIALS THAT YOU LOOKED AT IN YOUR

20   WORK IN THIS CASE?

21   A    I REVIEWED THE PATENTS; I REVIEWED THE FILE

22   HISTORY, AND WHAT BY "FILE HISTORY" WHAT I MEAN IS

23   THE COMMUNICATION BETWEEN THE PATENT OFFICE AND THE

24   APPLICANT WHEN THEY'RE GETTING THEIR PATENT

25   APPROVED.

```
 1              I'VE STUDIED THE REPORTS OF THE EXPERTS

 2     IN THIS MATTER, I'VE STUDIED DEPOSITIONS AND A

 3     VARIETY OF OTHER DOCUMENTS THAT ARE RELATED TO THE

 4     MATTER.

 5     Q    OKAY.  WE'RE GOING TO TAKE THE PATENTS ONE AT

 6     A TIME STARTING WITH THE '915.  WE'RE GOING TO USE

 7     SOME SLIDES, DEMONSTRATIVES AS HAS BEEN DONE IN THE

 8     CASE.

 9              THIS IS THE '915 PATENT.  CAN YOU REMIND

10     US IN A SENTENCE WHAT THE '915 PATENT IS ABOUT?

11     A    SO THE '915 IS THE SCROLL WITH ONE FINGER,

12     ZOOM WITH TWO FINGERS.  THAT'S THE '915.

13     Q    AND THE FILING DATE OF THAT PATENT, SIR?

14     A    THAT PATENT WAS FILED ON JANUARY 7TH, 2007.

15     Q    AND THIS IS THE PATENT IN WHICH APPLE IS

16     ASSERTING CLAIM 8; IS THAT CORRECT?

17     A    THAT'S CORRECT, CLAIM 8.

18     Q    ALL RIGHT.  LET'S -- YOU DESCRIBED WHAT THE

19     PATENT IS ABOUT GENERALLY.  IS THAT WHAT'S DEPICTED

20     HERE?

21     A    EXACTLY.  THERE'S A LITTLE ANIMATION THAT

22     COMES FROM THE PATENT ITSELF.  ON THE LEFT-HAND

23     SIDE WE SEE A SCROLL OPERATION, ONE FINGER MOVING

24     THE, THE IMAGE ACROSS THE SCREEN THE VIEW OF THE

25     IMAGE ACROSS THE SCREEN.
```

```
 1              IT DOESN'T SEEM TO BE PERFORMING.
 2      THERE'S A LITTLE BUG HERE IT LOOKS LIKE.  THERE WE
 3      GO.
 4              SO THAT'S THE SCROLLING OPERATION, SINGLE
 5      FINGER SCROLLING OPERATION.
 6              ON THE RIGHT-HAND SIDE IS WHAT'S REFERRED
 7      TO AS THE GESTURE OPERATION.  THE GESTURE
 8      OPERATION, FOR EXAMPLE, IS A MULTIPOINT GESTURE
 9      OPERATION AND ALLOWS, FOR EXAMPLE, SCALE IN AND OUT
10      FOR A PARTICULAR OBJECT.  SO THAT'S THE MULTIPOINT
11      GESTURE OPERATION.
12      Q    OKAY.  AND WE ARE, WE'RE GOING TO TALK A BIT
13      ABOUT CLAIM 8.  JUST IN A SENTENCE, TELL US WHAT
14      YOU, WHAT PRIOR ART YOU LOOKED AT?
15      A    SO THE PRIOR ART THAT YOU SEE HERE ON THE
16      LEFT-HAND SIDE OF THE SCREEN, THE BLUE BACKGROUND
17      IS THE PRIOR ART I INTEND TO TALK ABOUT TODAY.  ALL
18      OF THAT ART WAS FILED SOMETIME PRIOR TO THE
19      APPLICATION IN JANUARY 2007 OF THE '915 PATENT.
20      Q    AND YOUR UNDERSTANDING WAS ANY OF THAT ART
21      BEFORE THE PATENT OFFICE DURING PROSECUTION OF WHAT
22      BECAME THE '915 PATENT?
23      A    I DON'T BELIEVE SO, NO.
24      Q    OKAY.  LET'S START WITH DIAMONDTOUCH RUNNING
25      FRACTAL ZOOM, OKAY?  DOES THAT MAKE SENSE?
```

```
1    A    SURE.

2    Q    I'D LIKE TO WALK THROUGH THE CLAIM ELEMENTS.

3              BY THE WAY, WERE YOU IN THE COURTROOM

4    WHEN THESE FACT WITNESSES TESTIFIED, MR. BOGUE AND

5    MR. FORLINES?

6    A    YES, I WAS.

7    Q    OKAY.  IN A SENTENCE -- I THINK WE'VE HEARD A

8    BIT ABOUT THE SYSTEM, ENOUGH SO THAT WE CAN JUST GO

9    TO THE CLAIM AND COMPARE IT TO THE DEVICE ITSELF.

10             ARE YOU WITH ME?

11   A    SURE.

12   Q    WHY DON'T WE WALK THROUGH THAT ONE LIMITATION

13   IN THE CLAIM AT A TIME AND YOU CAN TELL US WHERE IN

14   THE CLAIM IT'S FOUND.

15   A    SO CLAIM 8 REQUIRES MANUFACTURE READABLE

16   STORAGE, AND, AGAIN, THAT'S MEMORY THAT CONTAINS

17   INSTRUCTIONS THAT CAUSE THE COMPUTER, IN THIS CASE

18   THE DIAMONDTOUCH SYSTEM, TO PERFORM ITS OPERATIONS.

19             ONE OF THOSE OPERATIONS IS RECEIVING USER

20   INPUT IN THE FORM -- I SHOULD SAY RECEIVING USER

21   INPUT ON A TOUCH SENSITIVE DISPLAY THAT IS

22   INTEGRATED WITH THE DATA PROCESSING SYSTEM.

23             SO AS THE PREVIOUS WITNESS SPOKE ABOUT,

24   THAT'S THE WAY THAT THE DIAMONDTOUCH SYSTEM WORKS.

25   IT'S A COMPUTER SYSTEM THAT HAS A TOUCH SENSITIVE
```

```
1   DISPLAY THAT ALLOWS FOR CAPTURING OF THE INPUT
2   POINTS.
3   Q    LET'S GO TO THE NEXT LIMITATION, CREATING AN
4   EVENT OBJECT.  CAN YOU DESCRIBE THAT FOR US,
5   PLEASE, WHERE IT'S IN THE REFERENCE, SIR?
6   A    SURE.  SO CREATING AN EVENT OBJECT IN THE DT,
7   THE DIAMONDTOUCH SYSTEM IS SHOWN, IS ILLUSTRATED BY
8   THIS PIECE OF CODE.  THIS PIECE OF CODE IDENTIFIES
9   AN OBJECT KNOWN AS THE DTLIBINPUTTFRAME.  THAT
10  STANDS FOR DIAMONDTOUCH LIBRARY INPUT TOUCH FRAME.
11          AND WHAT IT CONTAINS IS THE TOUCH
12  INFORMATION THAT WHEN THE USERS TOUCH THE SCREEN,
13  THIS IS THE OBJECT THAT CONTAINS THAT INFORMATION.
14          THE DTLIBINPUTTFRAME EVENT OBJECT
15  INCLUDES, FOR EXAMPLE, INFORMATION LIKE THE NUMBER
16  OF TOUCHES THAT THE USER HAD ON THE SCREEN, WHERE
17  THE TOUCHES STARTED AND WHERE THEY ENDED.  THAT'S
18  THE REFERENCE THERE AT THE XY POSITION, AND TIME
19  REFERENCES TO CERTAIN ASPECTS OF THOSE, OF THAT
20  TOUCH.
21          SO THAT'S THE ELEMENT.  THAT'S THE
22  OBJECT.
23  Q    OKAY.  LET'S GO TO THE NEXT ELEMENT, SIR.
24  COULD YOU PLEASE DESCRIBE FOR US WHERE THAT IS?
25  A    SO THE NEXT ELEMENT IS DETERMINING WHETHER OR
```

1    NOT WE HAVE DONE A, USE A -- OR INTENDING TO DO A

2    SCROLL OR A GESTURE OPERATION BY DISTINGUISHING

3    BETWEEN A SINGLE INPUT POINT WHICH IS TOUCHED ON

4    THE INPUT DISPLAY OR MULTIPLE INPUT POINTS.

5            IF IT IS A SINGLE INPUT POINT, IT'S A

6    SCROLL OPERATION.  IF IT'S MULTIPLE INPUT POINTS,

7    WE'RE TALKING ABOUT A GESTURE IN THE WAY IT'S

8    REFERRED TO IN THE '915 PATENT, AND THE GESTURE

9    WOULD BE, FOR EXAMPLE, A SCALING OPERATION.

10           SO, SO THERE'S ONE FINGER FOR SCROLL, TWO

11   FINGERS FOR GESTURES, AND THAT'S THE DISTINGUISHING

12   ASPECT HERE.  SO THAT CLAIM IS MET.

13   Q    OKAY.

14   A    I'M SORRY.  I SHOULD MENTION, THE SPLASH

15   SCREEN THAT'S SHOWN HERE, THE SPLASH SCREEN THAT IS

16   UP THERE INDICATES THE ACTUAL MANNER IN WHICH THE

17   DEVICES OPERATE.

18   Q    OKAY.  LET'S GO TO THE NEXT LIMITATION,

19   PLEASE.

20   A    SO THE NEXT LIMITATION HAS TO DO WITH ISSUING

21   A SCROLL OR GESTURE CALL BASED ON INVOKING THE

22   SCROLL OR GESTURE OPERATION.  AGAIN, THIS IS A

23   FRAGMENT OF CODE.  THIS IS FROM A, A PIECE OF CODE

24   CALLED THE FRACTAL ZOOM APP, WHICH IS AN

25   APPLICATION THAT WAS REFERRED TO THE OTHER DAY WHEN

1    DR. FORLINES TALKED ABOUT THE DEVICE.

2            THE FRACTAL ZOOM, THIS PARTICULAR METHOD

3    IS ONE CALLED TOUCH DETECTED.  THE TOUCH DETECTED

4    METHOD DOES PROCESSING, BUT BY THE TIME IT GETS

5    HERE, IT DETERMINES WHETHER OR NOT THE M CURRENT

6    MODE IS EQUAL TO MODE ZOOM OR M CURRENT MODE IS

7    EQUAL TO MODE PAN.

8            BASED UPON THAT, THE SYSTEM PERFORMS

9    DIFFERENT OPERATIONS, ONE THAT CREATES A SCALING

10   FACTOR, THE OTHER ONE DOES NOT CREATE A SCALING

11   FACTOR.

12           BUT IN ANY EVENT, THE RESPONSE IS TO --

13   THE RESPONSE IS TO REPAINT THE SCREEN BASED UPON

14   THE OPERATIONS WHICH ARE DEFINED IN THE TOUCH

15   DETECTIVE.

16   Q    OKAY.  THE LAST LIMITATION, SIR, PLEASE?

17   A    THE LAST LIMITATION IS ACTUALLY HOW THE SCREEN

18   IS ALTERED BY VIRTUE OF THE FACT THAT THE USER HAS

19   DONE IT.  SO HERE YOU SEE THE SCROLL THAT'S BEING

20   OPERATED ON, SCROLL UP AND SCROLL DOWN, SO THAT

21   CLAIM LIMITATION IS MET.

22   Q    OKAY.  AND THEN WE TAKE YOU TO?

23   A    AND HERE'S THE TWO FINGER GESTURE.  WE'RE

24   ZOOMING IN AND THEN A TWO FINGER GESTURE WHILE

25   WE'RE -- ACTUALLY, IT'S THE OPPOSITE, ZOOMING OUT

1    AND ZOOMING IN.  SO THAT LIMITATION IS ALSO MET.

2    Q    AND THAT LIMITATION FOR THE RECORD IS

3    RESPONDING TO AT LEAST ONE GESTURE CALL.  DO YOU

4    SEE THAT, SIR?

5    A    THAT'S CORRECT.

6    Q    ALL RIGHT.  LET'S TURN TO THE SECOND REFERENCE

7    YOU ANALYZED.  WOULD YOU GIVE US A SENTENCE OR TWO

8    ABOUT THE NOMURA REFERENCE, PLEASE, SIR?

9    A    SO THE NOMURA REFERENCE IS A JAPANESE PATENT.

10   IT WAS FILED NOVEMBER OF 1998.  AND THE PATENT

11   TALKS ABOUT AN ELECTRONIC OR PORTABLE INFORMATION

12   DEVICE, A PORTABLE DEVICE THAT IS USED FOR A MAP

13   APPLICATION.

14            AND ONE OF THE -- SEVERAL OF THE

15   FUNCTIONS THAT ARE PERFORMED IN THE MAP APPLICATION

16   RELATE TO ENLARGEMENT, WHICH IS SCALING, REDUCTION,

17   WHICH IS ALSO SCALING, AND THEN SCROLLING.

18            SO IT'S A, A PATENT APPLICATION THAT

19   IDENTIFIES A MAPPING APPLICATION AND AN E-BOOK, AN

20   ACTUAL DEVICE, THAT PERFORMS THOSE OPERATIONS.

21   Q    SIR, IS THAT IN THE BINDER IN FRONT OF YOU AS

22   EXHIBIT DX 550?

23   A    DX 550, YES, THAT'S THE REFERENCE I'M

24   REFERRING TO.

25            MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE

```
 1    FOR ADMISSION OF EXHIBIT DX 550, THE NOMURA

 2    PREFERENCE.

 3              MR. JACOBS:  OBJECTION, YOUR HONOR.

 4    REFERENCE TO COUNSEL'S CHARACTERIZATION OF IT AS A

 5    PATH.  IT'S AN UNEXAMINED PATENT APPLICATION.

 6              MR. DEFRANCO:  THAT'S CORRECT, YOUR

 7    HONOR, IT'S AN UNEXAMINED PATENT APPLICATION FOR

 8    THE RECORD.

 9              THE COURT:  IT'S ADMITTED.

10              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

11              550, HAVING BEEN PREVIOUSLY MARKED FOR

12              IDENTIFICATION, WAS ADMITTED INTO

13              EVIDENCE.)

14    BY MR. DEFRANCO:

15    Q   LET'S DO THE SAME THING, MR. GRAY.  LET'S WALK

16    THROUGH THE LIMITATIONS IN THE CLAIM AND IF YOU

17    COULD COMPARE THEM TO THE DISCLOSURE IN THE NOMURA

18    REFERENCE.  ARE YOU WITH ME?

19    A   I'M WITH YOU.  SO, AGAIN, THIS IS A LITTLE

20    DEMONSTRATION.  HERE IS THE SCROLL, THE SINGLE

21    FINGER SCROLL, AN ANIMATION THAT SHOWS MOVING THE

22    MAP ACROSS THE ELECTRONIC BOOK.  AND THEN THE OTHER

23    ONE WAS A PINCH.

24    Q   NO NEED TO RUSH YOU.  LET'S START WITH THE

25    CLAIM ELEMENTS.  OKAY.
```

1    A    FAIR ENOUGH.  SO THE FIRST PART OF CLAIM 8 IS

2    AGAIN THE MANUFACTURE READABLE STORAGE MEDIUM.

3    FIGURE 2 FROM THE PATENT SHOWS AN INSTRUCTION

4    STORAGE MEDIUM THERE, THAT'S THE BOX THAT I'VE

5    HIGHLIGHTED IN YELLOW.  THAT FEEDS THE PROCESSING

6    UNIT, AND THE INFORMATION STORAGE MEDIUM CONTAINS

7    DATA AND INSTRUCTIONS WHICH ARE USED BY THE E-BOOK

8    IN PERFORMANCE OF ITS APPLICATION.  SO THAT CLAIM

9    ELEMENT IS MET.

10          THE FINGER MOVEMENT DETECTOR, WHICH IS

11   NUMBER -- WHICH IS ELEMENT 10 OF FIGURE 2, SHOWS --

12   IS THE RECEIVER OF THE INPUTS FROM THE TOUCH

13   SENSITIVE SCREEN THAT THE USER OPERATING ON, ON THE

14   DEVICE.

15          SO THE FINGER MOVEMENT DETECTOR CREATES A

16   FINGER MOVEMENT HISTORY.  THAT HISTORY IS --

17   RECORDS WHAT THE MOVEMENTS WERE ON THE SCREEN.

18   Q    AND THAT --

19   A    SO THAT LIMITATION IS ALSO MET.

20   Q    THAT MEETS THE RECEIVING A USER INPUT

21   LIMITATION?

22   A    CORRECT.

23   Q    OKAY.  LET'S TURN TO THE NEXT LIMITATION,

24   WHICH IS CREATING AN EVENT OBJECT IN RESPONSE TO

25   THE USER INPUT.

```
 1              WHERE IS THAT IN NOMURA, SIR?

 2    A    SO AS I JUST MENTIONED, THE UNIT THAT RECEIVES

 3    THE USER INPUTS STORES THAT INFORMATION IN THE

 4    MOVEMENT HISTORY, AND THE MOVEMENT HISTORY, A

 5    FINGER MOVEMENT HISTORY IN NOMURA IS THE '915'S

 6    VERSION OF THE EVENT OBJECT.

 7    Q    OKAY.  HOW ABOUT THE NEXT LIMITATION,

 8    DETERMINING WHETHER AN EVENT OBJECT INVOKES A

 9    SCROLL OR GESTURE ELEMENT?

10    A    SO ELEMENT 30, THE OPERATING CONTENTS

11    DETERMINATION UNIT, IS WHAT MAKES A DETERMINATION

12    AS -- USING THE FINGER HISTORY TO DETERMINE WHETHER

13    OR NOT -- WHAT KIND OF MOTION IS BEING PROSCRIBED,

14    WHETHER IT IS A SCROLL OR A GESTURE OPERATION.

15              SO YOU CAN SEE HERE THE GESTURE OPERATION

16    MOVES ONE FINGER, THE UNIT DETERMINES THAT A MAP

17    SCROLLING OPERATION IS INPUT, AND THEN USING TWO

18    FINGERS, IT SHOWS THAT IT WAS, IT WAS EITHER DOING

19    A SCALE, A SCALE IN OR A SCALE OUT.

20    Q    OKAY.

21    A    SO USING TWO FINGERS TO PERFORM.

22    Q    ALL RIGHT.  CAN WE GO TO THE NEXT LIMITATION,

23    SIR?

24    A    SO THE, THE MAP OPERATIONS PROCESSING UNIT

25    CONTAINS A SERIES OF ELEMENTS AS WELL.  THE
```

```
 1    REQUIREMENT -- OR THE CLAIM ELEMENT HERE SAYS

 2    ISSUING AT LEAST ONE SCROLL OR GESTURE CALL BASED

 3    ON INVOKING THE SCROLL OR GESTURE OPERATION.

 4           SO WE CAN SEE HERE THAT ELEMENT 48, THE

 5    SCROLL PROCESSING UNIT, IS ACTUALLY THE UNIT THAT

 6    MAKES -- THAT IS FED BY THE OPERATING CONTENTS OF

 7    THE DETERMINATION UNIT, AND THEN CREATES THE --

 8    PERFORMS WHAT NEEDS TO BE DONE IN TERMS OF A

 9    SCROLL.

10    Q    OKAY.  ALL RIGHT.  AND THE NEXT LIMITATION,

11    SIR, WOULD YOU TAKE US THROUGH THAT?

12    A    CAN WE GO BACK A SLIDE.  THERE'S A COUPLE OF

13    OTHER UNITS ON HERE, TOO, THAT AREN'T HIGHLIGHTED,

14    BUT THE COMPRESSION PROCESSING UNIT 42 AND

15    COMPRESSION PROCESSING UNIT 44 ARE THE UNITS THAT

16    PERFORM THE SCROLLING OPERATION, YEAH, THE

17    SCROLLING -- I'M SORRY, THE SCALING OPERATION.  I

18    MISSPOKE.

19           SO, YEAH, SO THAT LIMITATION HAS BEEN

20    MET.

21    Q    OKAY.  GREAT.  LET'S TURN TO THE NEXT ONE,

22    SIR.  CAN YOU TAKE US THROUGH THAT LIMITATION,

23    PLEASE?

24    A    SO BASED UPON WHAT THE MAP OPERATIONS

25    PROCESSING UNIT HAS DONE, THE IMAGE GENERATION UNIT
```

1    RECEIVES THAT, THAT INPUT AND PERFORMS -- SENDS IT

2    TO THE DISPLAY UNIT, WHICH THEN UPDATES THE DISPLAY

3    ON THE E-BOOK ITSELF.

4    Q    OKAY.  I THINK THERE'S A LITTLE MOTION.

5    A    SO THERE'S A SCROLL BAR THAT SHOWS, THAT

6    DEMONSTRATES THE SCROLL OPERATION.  SO THAT

7    LIMITATION IS MET.

8    Q    OKAY.  AND LET'S FINISH THE LAST SLIDE WITH

9    RESPECT TO NOMURA.

10   A    SO, AGAIN, SIMILARLY TO THE WAY THAT THE

11   SCROLL OPERATION WAS, WAS MET, THE SYSTEM ALSO

12   RESPONDS TO A GESTURE CALL BY PASSING THE

13   INFORMATION TO THE IMAGE GENERATION UNIT WHICH GOES

14   TO THE DISPLAY UNIT WHICH UPDATES THE E-BOOK.

15   Q    OKAY.  NOW, IN YOUR OPINION, SIR, WITH

16   RESPECT -- ARE ALL THE LIMITATIONS OF CLAIM 8 OF

17   THE 195 -- '915 PATENT FOUND IN NOMURA?

18   A    YES, THEY ARE.

19   Q    AND WHAT DOES THAT LEAD YOU TO CONCLUDE?

20   A    WHAT THAT MEANS IS BY VIRTUE OF THE FACT THAT

21   ALL OF THE CLAIM LIMITATIONS ARE COVERED BY NOMURA,

22   OR THAT IT ANTICIPATES OR RENDERS OBVIOUS, OR

23   INVALIDATES, RATHER, THE '915 PATENT BY WHAT'S

24   REFERRED TO AS ANTICIPATION, MEANING THAT ONE

25   SOURCE ENCOMPASSES ALL OF THE CLAIM ELEMENTS.

2908

1    Q    AND WHAT CONCLUSION, SIR, JUST TO MAKE SURE I

2    DIDN'T MISS IT, WHAT WAS YOUR CONCLUSION WITH

3    RESPECT TO DIAMONDTOUCH RUNNING FRACTAL ZOOM

4    COMPARED TO CLAIM 8 OF THE '915 PATENT?

5    A    LIKE NOMURA, DIAMONDTOUCH COVERS ALL OF THE

6    CLAIM ELEMENTS OF CLAIM 8, AND, THEREFORE,

7    INVALIDATES CLAIM 8 AS WELL.

8    Q    I JUST WANT TO SPEND A MOMENT ON A THIRD

9    REFERENCE, IF I HAVE SUCCESS BRINGING IT UP HERE

10   HERE.

11         JUST A SENTENCE OR TWO, SIR, ABOUT WHAT

12   THE HAN SYSTEM WAS?

13   A    SURE.  JEFFERSON HAN WAS A RESEARCH SCIENTIST

14   AT NEW YORK UNIVERSITY AND HE CREATED A DEVICE, NOT

15   ENTIRELY DISSIMILAR FROM THE DIAMONDTOUCH SYSTEM,

16   BUT IT'S A USER INTERFACE, LARGE SCALE USER

17   INTERFACE THAT RESPONDS TO TOUCH INPUT.  AND

18   THERE'S A, A FILM HERE THAT SHOWS EXACTLY WHAT THAT

19   SYSTEM DOES.

20   Q    OKAY.  AND I THINK JUST TO BRING IT BACK TO

21   MIND, LET'S SHOW A VERY SHORT PORTION OF THE HAN

22   VIDEO.

23         CAN YOU PUT THAT UP, PLEASE.

24         (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

25   OPEN COURT OFF THE RECORD.)

1        MR. DEFRANCO:  OKAY.

2        THE COURT:  WHAT'S THE NUMBER ON THAT

3   VIDEO, PLEASE?

4        MR. DEFRANCO:  YOUR HONOR, WE WOULD OFFER

5   THAT INTO EVIDENCE.  THAT IS GOING TO BE EXHIBIT DX

6   556.

7        THE COURT:  ALL RIGHT.  THAT'LL BE

8   PENDING THE STIPULATION.  OKAY.  SO IT'S NOT

9   ADMITTED RIGHT NOW UNLESS THERE'S A STIPULATION ON

10  THE VIDEO.  SO I'LL HOLD THAT.

11       MR. DEFRANCO:  YES, YOUR HONOR.

12       THE COURT:  GO AHEAD, PLEASE.

13  BY MR. DEFRANCO:

14  Q   BRIEFLY, CAN YOU WALK THROUGH CLAIM 8 OF THE

15  '915 PATENT WITH RESPECT TO THE HAN VIDEO, SIR?

16  A   SO THE HAN DEMONSTRATION SHOWS A MACHINE

17  READABLE -- A COMPUTER THAT HAS INSTRUCTIONS IN IT

18  THAT PERFORM VARIOUS OPERATIONS.  IT'S SHOWN IT

19  RECEIVES INPUTS, AS YOU CAN SEE WHEN HE WAS

20  DEMONSTRATING THE SYSTEM, IT RECEIVES INPUTS IN THE

21  FORM OF SINGLE INPUT SCROLLS, MULTI INPUT ZOOMING

22  OPERATIONS.  IT CREATES -- IT DETERMINES WHETHER OR

23  NOT THE EVENT OBJECT INVOKES A SCROLL BECAUSE IT

24  RECORDS THOSE EVENTS IN AN EVENT OBJECT.  IT

25  DETERMINES BY DISTINGUISHING WHETHER IT'S A SINGLE

1    POINT OR MULTIPOINT.

2            IT THEN ISSUES A SCROLL OR GESTURE CALL

3    BASED ON THE DETERMINATION IT MADE AND THEN UPDATES

4    THE SCREEN TO REFLECT WHAT THE USER HAD DONE WITH

5    THE SINGLE OR MULTITOUCH INPUTS.

6    Q    OKAY.  LET'S TALK ABOUT NON-INFRINGEMENT,

7    INFRINGEMENT ISSUES FOR JUST A MOMENT.

8            CAN YOU TELL US WHAT CLAIM ELEMENT D IS

9    ABOUT AGAIN IN THIS CLAIM.

10   A    SO CLAIM ELEMENT D HAS TO DO WITH DETERMINING

11   WHETHER THE EVENT OBJECT INVOKES A SCROLL BY

12   DISTINGUISH -- OR A GESTURE BY DISTINGUISHING

13   BETWEEN ONE POINT OR MULTIPOINT.

14           AND IT'S -- THE EVENT OBJECT IS --

15   INVOKES THE SCROLL OR GESTURE OPERATION.  THERE'S

16   AN INVOCATION OF THE SCROLL OR GESTURE OPERATION BY

17   THE EVENT OBJECT.

18   Q    WHAT IS YOUR UNDERSTANDING OF THE DEFINITION

19   OF INVOKE AS IT'S TO BE USED IN THIS CASE?

20   A    SO INVOKE, AS I UNDERSTAND IT, HAS COME TO

21   MEAN TO CAUSE, AND I UNDERSTAND THAT'S THE COURT'S

22   CONSTRUCTION FOR THE TERM "INVOKE."

23   Q    OKAY.  AND --

24           MR. JACOBS:  YOUR HONOR, THAT'S AN

25   INCOMPLETE RECITATION OF THE COURT'S CLAIM

1    CONSTRUCTION.

2              THE COURT:  OVERRULED.  YOU'LL HAVE A

3    CHANCE ON CROSS.

4              GO AHEAD.

5    BY MR. DEFRANCO:

6    Q    OKAY.  IN YOUR OPINION, DO THE ACCUSED

7    PRODUCTS HAVE THAT FEATURE, SIR?

8    A    NO.  THE ACCUSED PRODUCTS, I THINK THERE'S A

9    SLIDE ON THIS, BUT THE ACCUSED PRODUCTS OPERATE

10   MORE ALONG THE LINES LIKE THIS.

11             WE HEARD THE OTHER DAY DR. SINGH TALK

12   ABOUT THE WEB VIEW OBJECT AND THAT THE WEB VIEW

13   OBJECT RELIED -- USES THE DATA THAT IS STORED IN

14   THE MOTION EVENT OBJECT TO MAKE A DETERMINATION AS

15   TO WHETHER ONE TOUCH OR MULTIPLE TOUCHES HAD

16   OCCURRED.

17             AND IF ONE USES -- IT TAKES A DIFFERENT

18   PATH THROUGH THE CODE, IN ORDER TO SEE IF ONE TOUCH

19   OR MULTITOUCH HAD BEEN USED.

20             THE POINT IS THAT THE MOTION EVENT OBJECT

21   IS NOT THE CAUSER OF THIS DETERMINATION AS TO

22   WHETHER OR NOT ONE TOUCH OR MULTIPLE TOUCHES HAVE

23   OCCURRED.

24             THE MOTION OF THAT OBJECT THAT CONTAINS

25   THE DATA, WHICH IS THEN USED BY THE WEB VIEW OBJECT

1    IN ORDER TO MAKE THE DETERMINATION.

2    Q    OKAY.  AND THEN THERE'S BEEN SOME TALK ABOUT

3    TWO FINGER SCROLLING.  WOULD YOU TELL US WHAT

4    YOU'VE CONCLUDED WITH RESPECT TO TWO-FINGER

5    SCROLLING IN SOME OF THE SAMSUNG PRODUCTS THAT YOU

6    ANALYZED?

7    A    SO ON SOME OF THE SAMSUNG PRODUCTS THAT I HAD

8    THE OPPORTUNITY, THAT I'VE ANALYZED, WHICH ARE THE

9    ACCUSED PRODUCTS IN THIS MATTER, THE PRODUCTS DO

10   PERFORM MULTIPOINT SCROLLING, IN OTHER WORDS, BEING

11   ABLE TO SCROLL A DEVICE USING MULTIPLE POINTS.

12           AGAIN, THE PATENT CALLS FOR

13   DISTINGUISHING BETWEEN A MULTIPOINT SCROLL AND A

14   SINGLE -- I MEAN, A MULTIPOINT SCALE AND A SINGLE

15   POINT SCROLL.

16           WHAT I WAS ABLE -- WHAT I'VE OBSERVED IS

17   THAT SOME OF THE DEVICES DO PERFORM MULTIPOINT

18   SCROLLING WHICH, AGAIN, IS CONTRARY TO THE WAY THE

19   PATENT, THE WAY THE PATENT CLAIMS OPERATE.

20   Q    OKAY.  LET'S SHIFT GEARS NOW AND LET'S TALK

21   ABOUT THE '163 PATENT, OKAY?

22   A    SURE.

23   Q    I WANT TO MOVE AHEAD A LITTLE BIT.  I KNOW

24   THIS IS INTRODUCTORY SLIDE.  YOU'VE GOT THE SAME

25   PRIOR ART?

1    A    AGAIN, SAME PRIOR ART, YES, TO THE RIGHT.

2    Q    THERE'S BEEN QUITE A BIT OF DISCUSSION OF

3    LAUNCHTILE IN THIS CASE.  I THINK WE'VE HEARD

4    ENOUGH ABOUT THAT.  SO WHY DON'T WE GO STRAIGHT TO

5    THE ASSERTED CLAIM IN THE '163 PATENT.  THAT'S

6    CLAIM 50, IS THAT RIGHT, SIR?

7    A    CLAIM 50 IS THE ASSERTED CLAIM IN THE '163

8    PATENT.

9    Q    WHY DON'T WE DO THIS.  WHY DON'T WE -- LET'S

10   START WITH THE FIRST ELEMENT AND I WILL MOVE

11   THROUGH THE SLIDES AS YOU DESCRIBE WHERE YOU

12   BELIEVE THE ELEMENT AT ISSUE IS FOUND IN CLAIM 50.

13   ARE YOU WITH ME?

14   A    OKAY.  SO THE FIRST ELEMENT IS OF -- DESCRIBES

15   A PORTABLE ELECTRONIC DEVICE WHICH THE LAUNCHTILE

16   SYSTEM RUNNING ON THIS HEWLETT-PACKARD IPAQ

17   HANDHELD UNIT PERFORMS.  IT'S A CROSS -- IT'S WITH

18   A PROCESSOR, A TOUCH SENSITIVE SCREEN, MEMORY, AND

19   A SERIES OF PROGRAMS AND THOSE PROGRAMS CONTAIN

20   INSTRUCTIONS WHICH ALLOW THE PROGRAM TO DO WHAT

21   IT'S SUPPOSED TO DO.  SO THAT CLAIM ELEMENT IS MET.

22        SO THE SECOND PART OF CLAIM 50 SAYS

23   DISPLAYING AT LEAST A PORTION OF A STRUCTURED

24   ELECTRONIC DOCUMENT.

25        WHAT'S REFERRED TO THERE, IN LAUNCHTILE,

```
 1       THE STRUCTURED ELECTRONIC DOCUMENT IS WHAT

 2       DR. BEDERSON REFERRED TO AS THE INTERACTIVE ZOOM

 3       SPACE.  THAT INTERACTIVE ZOOM SPACE IS THAT

 4       COLLECTION OF 36 TILES THAT DR. BEDERSON TALKED

 5       ABOUT, AND THOSE 36 TILES ARE AN INTERACTIVE ZOOM

 6       SPACE THAT IS THE STRUCTURED ELECTRONIC DOCUMENT OF

 7       THE REQUIREMENT.

 8              IF YOU SEE HERE, WHAT IT ALLOWS IS FOR

 9       THE IDENTIFICATION OF A FIRST BOX IN THAT -- IN A

10       PLURALITY OF BOXES OF CONTENT.

11   Q    OKAY.  AND THE NEXT LIMITATION, SIR?

12   A    SO THE -- THE PATENT REQUIRES THAT THE SYSTEM

13       BE ABLE TO DETECT A FIRST GESTURE AT THE LOCATION

14       DISPLAYED ON THE -- AT A LOCATION DISPLAYED ON THE

15       STRUCTURED ELECTRONIC DOCUMENT FOR DETERMINING A

16       FIRST BOX IN THE PLURALITY OF BOXES LOCATED AT THAT

17       LOCATION.

18              SO, IN OTHER WORDS, AS YOU CAN SEE HERE,

19       THE USER IS ABOUT TO SELECT AN AREA WITHIN THAT BOX

20       OF FOUR, BECAUSE THAT'S THE WAY THAT THE LAUNCHTILE

21       IS ORGANIZED IS A SERIES OF QUAD TILES, OR

22       TWO-BY-TWO ELEMENTS, AND WHEN THAT HAPPENS, THE

23       STRUCTURED ELECTRONIC DOCUMENT, OR THE INTERACTIVE

24       ZOOM SPACE, IS TRANSLATED AND ENLARGED, AND WE'LL

25       SEE THAT IN THE NEXT CLAIM ELEMENT.  THIS MEANS
```

1    THIS ONE HAS BEEN MET.

2         SO HERE WE SEE THE STRUCTURED ELECTRONIC

3    DOCUMENT, THE INTERACTIVE ZOOM SPACE IS NOW

4    TRANSLATED, MEANING SCROLLED, AND ENLARGED OR

5    CENTERED, CENTERED AND ENLARGED SO THAT WE ENLARGE

6    THAT, THAT FIRST BOX OF CONTENT WITHIN THAT

7    STRUCTURED ELECTRONIC DOCUMENT.

8         AND THAT'S WHAT'S SHOWN HERE.  THE

9    FOUR -- THAT QUAD TILE, THOSE FOUR TILES, ARE NOW

10   SELECTED AND ENLARGED.  SO THAT CLAIM ELEMENT IS

11   MET.

12   Q    AND THE NEXT LIMITATION, SIR?

13   A    SO THE NEXT LIMITATION, THIS IS AN IMPORTANT

14   ONE, THE NEXT LIMITATION IS AFTER THE FIRST BOX IS

15   ENLARGED, DETECTING A SECOND BOX WHICH IS NOT THAT

16   FIRST BOX.

17        AND THAT SECOND GESTURE NOW, YOU CAN SEE

18   IT BEING DONE HERE, THE USER IS SELECTING THAT

19   SECOND BOX OTHER THAN THE FIRST BOX.

20        AND SO THE -- ONCE THE FIRST BOX HAS BEEN

21   ENLARGED, NOW I'M SELECTING A SECOND BOX, WHICH IS

22   THIS UPPER LEFT-HAND QUADRANT HERE.  SO THAT

23   ELEMENT IS MET.

24   Q    OKAY.  AND THEN FINALLY THE LAST LIMITATION,

25   SIR?

1    A    AND THEN TRANSLATING AND ENLARGING, SO WHAT

2    HAPPENS IS THE SELECTION OF THAT SECOND BOX ALLOWS

3    FOR IT, FOR THE UNIT TO BE TRANSLATED AND CENTERED

4    ON THE DISPLAY SCREEN, AND THAT'S WHAT THE LAST

5    CLAIM ELEMENT MEANS, SO THAT THE SECOND BOX IS

6    CENTERED AND TRANSLATED.

7              SO, ONCE AGAIN, I'VE GONE FROM THE

8    STRUCTURED ELECTRONIC DOCUMENT, AND I SELECTED A

9    SPACE WITHIN THE STRUCTURED ELECTRONIC DOCUMENT,

10   AND THEN A FINER SPACE WITHIN THE STRUCTURED

11   ELECTRONIC DOCUMENT THAT ORIGINATED WITH THE TILES

12   OF 36.

13   Q    AND, SIR, HAVE YOU ALSO LOOKED AT AND ANALYZED

14   WHAT'S KNOWN AS XNAV RUNNING ON THE IPAQ AND THE

15   SOURCE CODE?

16   A    I HAVE.  I HAVE.

17   Q    AND GENERALLY, CAN YOU TELL US, WHAT'S YOUR

18   CONCLUSION AS TO WHETHER LAUNCHTILE AND XNAV ON THE

19   IPAQ INVALIDATE CLAIM 50 OF THE '163 PATENT?

20   A    SO XNAV IS A PRODUCT THAT IS DERIVED FROM

21   LAUNCHTILE.  WE'VE SEEN THE SOURCE CODE FOR XNAV.

22   IT RUNS ON A DIFFERENT SET OF HARDWARE, A SONY

23   DEVICE THAT'S A DIFFERENT SET OF HARDWARE.  I'VE

24   OPERATED IT.

25              AND IT PERFORMS ESSENTIALLY IDENTICAL

```
 1    FUNCTIONS TO THE LAUNCHTILE SYSTEM.

 2              SO IT TOO INVALIDATES.

 3    Q    ALL RIGHT.  I'D LIKE TO MOVE ON TO ANOTHER

 4    REFERENCE NOW, AND WE HAVE A -- I'VE ASKED THAT A

 5    SUMMARY SLIDE BE PREPARED.  THIS IS THE AGNETTA

 6    PATENT.  IT'S THE '632 PATENT.  DO YOU SEE THAT

 7    PATENT IN YOUR BINDER THERE, SIR?  YOU SHOULD HAVE

 8    AS EXHIBIT 561 SOME DOCUMENTATION RELATING TO

 9    AGNETTA.  DO YOU SEE THAT?

10    A    I DO.

11    Q    AND THERE'S A -- IS THERE A PROVISIONAL

12    APPLICATION IN THE FRONT OF EXHIBIT 561 AND IT'S

13    THE '632 PATENT ITSELF IN THE BACK?

14    A    THERE IS A PROVISIONAL APPLICATION, YES.

15              MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE

16    FOR EXHIBIT DX 561 INTO THE RECORD.

17              MR. JACOBS:  NO OBJECTION, YOUR HONOR.

18              THE COURT:  ALL RIGHT.  IT'S ADMITTED.

19              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

20              561, HAVING BEEN PREVIOUSLY MARKED FOR

21              IDENTIFICATION, WAS ADMITTED INTO

22              EVIDENCE.)

23              MR. DEFRANCO:  OKAY.  WHAT YOU WANT TO DO

24    SIR, RATHER THAN WALKING THROUGH -- BY THE WAY, IS

25    THIS SOMEWHAT -- IN THE CONSTRUCT OF WHAT'S SHOWN
```

```
 1    IN THIS PATENT, IS IT SIMILAR SOMEWHAT TO

 2    LAUNCHTILE?

 3    A    IT IS SIMILAR TO LAUNCHTILE.  THE -- THIS

 4    CONFIGURATION --

 5    Q    AND LET ME JUST JUMP IN --

 6    A    SURE.

 7    Q    -- IN THE INTEREST OF TIME.  WHAT I'VE DONE

 8    HERE IS WE PUT THE CLAIMS SIDE BY SIDE WITH ONE

 9    FIGURE FROM THAT PATENT, AND RATHER THAN TAKE YOU

10    THROUGH EACH ELEMENT ONE SLIDE AT A TIME, COULD YOU

11    JUST DESCRIBE FOR US GENERALLY WHERE IN YOUR

12    OPINION THE LIMITATIONS IN CLAIM 50 OF THE '163

13    PATENT ARE FOUND IN THE AGNETTA REFERENCE, SIR?

14    A    SURE.  SO THE AGNETTA REFERENCE AGAIN IS

15    DIRECTED TO A PORTABLE ELECTRONIC DOCUMENT WITH

16    MEMORY AND PROCESSORS AND COMPUTER INSTRUCTIONS.

17    SO 50A AND 50B ARE MET.

18         50C IS MET BECAUSE WHAT IT DOES --

19    BECAUSE THE STRUCTURED ELECTRONIC DOCUMENT WAS

20    SIMILAR TO LAUNCHTILE IS WHAT IS REFERRED TO HERE

21    AS A TILE SPACE WHICH, AGAIN, PROVIDES INSIGHT INTO

22    THE INFORMATION AND CONTENT THAT IS ON THE

23    PARTICULAR ELECTRONIC DEVICE.

24         THE USER CAN SELECT ANY OF THOSE TILES.

25    ONCE THOSE TILES -- ANY TILE THAT IS SELECTED IS
```

1    ENLARGED AND CENTERED, SO THAT MEANS THAT CLAIM 50D

2    AND E ARE MET, AND F FOR THAT MATTER.

3              AND IN ADDITION, ONCE THAT -- ONCE THE

4    TILE HAS BEEN ENLARGED AND CENTERED, THE ADJACENT

5    TILES AROUND IT ARE AVAILABLE, THE USER THEN HAS

6    THE OPPORTUNITY TO SELECT THOSE ADJACENT TILES,

7    WHICH THAT TILE WILL NOW BE CENTERED AND ENLARGED

8    AS WELL.  SO MUCH LIKE LAUNCHTILE, THE AGNETTA

9    PATENT PERFORMS THE SAME OPERATIONS AND SAME

10   FUNCTIONS.

11   Q    AND WHAT IS YOUR YOUR OPINION OF THE VALIDITY

12   OF CLAIM 50 OF THE '163 PATENT IN VIEW OF THE

13   AGNETTA REFERENCE, SIR?

14   A    I BELIEVE THE AGNETTA REFERENCE INVALIDATES

15   CLAIM 50 BECAUSE IT MEETS ALL THE CLAIM

16   LIMITATIONS.

17   Q    WE HAVE ONE MORE TO DO, THE ROBBINS PATENT.

18   IT SHOULD BE IN YOUR BINDER AGAIN.  IT'S '349

19   PATENT.  DO YOU SEE THAT THERE, SIR?  IT'S EXHIBIT

20   DX 1081.

21             AND, RYAN, WHILE WE'RE DOING THAT, CAN

22   YOU PLEASE PUT UP THE SUMMARY SLIDE FOR THAT

23   REFERENCE.

24   A    I DO.  I SEE EXHIBIT 1081 AND IT IS THE '349

25   OR ROBBINS PATENT.

1    Q    IS THAT THE ROBBINS PATENT THAT YOU ANALYZED

2    IN YOUR WORK IN THIS CASE?

3    A    IT IS.

4              MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE

5    EXHIBIT DX 1081 INTO EVIDENCE, PLEASE.

6              THE COURT:  ANY OBJECTION?

7              MR. JACOBS:  IS THAT THE PATENT?

8              THE COURT:  YES, IT IS.

9              MR. JACOBS:  NO OBJECTION.

10             THE COURT:  IT'S ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             1081, HAVING BEEN PREVIOUSLY MARKED FOR

13             IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15             THE COURT:  GO AHEAD, PLEASE.

16   BY MR. DEFRANCO:

17   Q    MR. GRAY, ONE MORE TIME.  WE'RE ALMOST DONE.

18   WOULD YOU PLEASE DO THE SAME.  TAKE US THROUGH EACH

19   ELEMENT IN CLAIM 50 OF THE '163 PATENT AND TELL US

20   WHERE IN YOUR OPINION THAT IS FOUND IN THE ROBBINS

21   '349 PRIOR ART PATENT.

22   A    SO THE ROBBINS PATENT, AGAIN, IS A ZOOM

23   PATENT.  IT IS DIRECTED TO PORTABLE ELECTRONIC

24   DEVICES.  AGAIN, THERE'S A MAP APPLICATION

25   UNDERNEATH IT.  THE ROBBINS PATENT AGAIN BEING

1    DIRECTED TO A PORTABLE ELECTRONIC DOCUMENT HAS

2    PROCESSOR AND A TOUCHSCREEN AND A VARIETY -- AND

3    MEMORY AND INSTRUCTIONS THAT PERFORM VARIOUS

4    OPERATIONS.

5              IN THIS PARTICULAR CASE, WHAT HAPPENS IS,

6    IN THIS EXAMPLE THAT'S SHOWN HERE, THE SCREEN IS

7    DIVIDED INTO THREE-BY-THREE MATRIX THAT OVERLAPS,

8    AND WE'LL TALK A LITTLE BIT ABOUT WHY THAT

9    OVERLAPS.

10             THE USER THEN CAN SELECT ANY OF THOSE

11   SEGMENTS AND THOSE SEGMENTS THEN BECOME CENTERED

12   AND ENLARGED ON THE DISPLAY SCREEN.

13             IF YOU NOTICE ON THE -- IF YOU TAKE THE

14   UPPER RIGHT-HAND SEGMENT, THERE'S A SMALL RECTANGLE

15   TO THE LEFT-HAND SIDE OF THAT SEGMENT.  THE

16   SELECTION OF THAT SEGMENT NOW ALLOWS THE, THE USER

17   INTERFACE TO MOVE TO THE ADJACENT SEGMENT AND HAVE

18   THAT BE CENTERED AND ENLARGED AS WELL.

19             SO THE PATENT MEETS THE LIMITATIONS OF

20   THE FIRST PART OF 50A AND B BECAUSE IT IS A

21   STRUCTURED -- IT'S A PORTABLE ELECTRONIC DEVICE.

22   IT ALLOWS FOR THE ENLARGEMENT OF THE DOCUMENTS,

23   THAT'S 50C.  IT ALLOWS FOR SELECTION OF THE SECOND,

24   A SECOND SPACE, AND THEN THE ENLARGEMENT AND

25   CENTERING OF THAT.  SO IT MEETS ALL THE LIMITATIONS

```
 1    OF THE CLAIM AS WELL.

 2    Q    AND, IN YOUR VIEW, IS CLAIM 50 INVALID IN VIEW

 3    OF THIS REFERENCE?

 4    A    AGAIN, ROBBINS AS WELL, THIS CLAIM COVERS ALL

 5    OF THE CLAIM LIMITATIONS OF '163, CLAIM 50, AND

 6    CONSEQUENTLY IS -- INVALIDATES IT AS WELL.

 7    Q    SHIFTING GEARS BRIEFLY TO INFRINGEMENT,

 8    NON-INFRINGEMENT ISSUE, YOU'VE HEARD THE TERM

 9    "SUBSTANTIALLY CENTERED."  IS THAT CORRECT?

10    A    RIGHT.  ONE OF THE CLAIM ELEMENTS HERE, 50F,

11    FOR EXAMPLE, REFERS TO SOMETHING BEING

12    SUBSTANTIALLY CENTERED.

13    Q    AND WHAT IS YOUR VIEW ON THAT, SIR?

14    A    IN MY OPINION, THE TERM "SUBSTANTIALLY

15    CENTERED" IS AN AMBIGUOUS TERM.  I -- PART OF WHAT

16    A PATENT DOES IS PROVIDE INFORMATION TO AN ENGINEER

17    TO ALLOW THEM TO UNDERSTAND THE SCOPE OF THE PATENT

18    SO THAT THEY CAN AVOID INFRINGING THE PATENT.

19            I DON'T KNOW WHEN SOMETHING IS

20    SUBSTANTIALLY CENTER.  I KNOW WHEN SOMETHING IS

21    FULLY CENTERED OR NOT CENTERED, BUT "SUBSTANTIALLY

22    CENTERED" IS AMBIGUOUS.

23            HOW WOULD A PATENT -- HOW WOULD AN

24    ENGINEER UNDERSTAND HOW TO MAKE SOMETHING

25    SUBSTANTIALLY CENTERED OR NOT?  SO IN MY OPINION,
```

1    "SUBSTANTIALLY CENTERED" IS AN AMBIGUOUS TERM.

2    Q    AND, FINALLY, SIR, WITH RESPECT TO ELEMENT E,

3    DETERMINING A FIRST BOX IN THE PLURALITY OF BOXES

4    AT THE LOCATION OF THE FIRST GESTURE, CAN YOU GIVE

5    US YOUR OPINION AS IT RELATES TO INFRINGEMENT ON

6    THAT ELEMENT?

7    A    AGAIN, 50E TALKS ABOUT IDENTIFYING A BOX IN

8    PLURALITY OF BOXES AT THE LOCATION OF THE FIRST

9    GESTURE.

10        WHAT THAT SEEMS TO INTEND, AT LEAST THE

11   WAY I READ THIS CLAIM THE FIRST TIME I READ IT, WAS

12   THAT THERE ARE A PLURALITY OF BOXES.

13        IF YOU THINK ABOUT NESTED BOXES WHERE

14   THERE ARE MULTIPLE BOXES THAT ARE NESTED AND THE

15   USER SELECTS A BOX OR A SPACE, SOME LOCATION WITHIN

16   THAT NESTED BOX, WHAT HAPPENS IS THE SYSTEM WOULD

17   THEN NEED TO DETERMINE WHICH ONE OF THOSE NESTED

18   BOXES THE USER WAS ACTUALLY INTENDING TO HAVE

19   CENTERED AND ENLARGED.

20        SIMILARLY TO THE WAY LAUNCHTILE WORKS.

21   IF YOU RECALL LAUNCHTILE, YOU CAN SELECT ANY ONE OF

22   THE FOUR IN THE QUAD TILES AND THAT WHOLE QUAD TILE

23   GETS ENLARGED AND CENTERED.

24        AGAIN, I'M NOT SEEING ANY EVIDENCE AT ALL

25   SUPPLIED, OR ANYTHING IN ANY OF THE REPORTS THAT

2924

```
 1    INDICATE HOW THE ACCUSED PRODUCTS MEET THE

 2    LIMITATION OF SELECTING A -- SOMETHING IN A

 3    PLURALITY OF BOXES.  SO, AGAIN, I'M NOT SEEING IT.

 4              MR. DEFRANCO:  MY TIME IS UP.  THANK YOU,

 5    SIR.

 6              THE COURT:  ALL RIGHT.  THE TIME IS NOW

 7    4:20.  GO AHEAD, PLEASE, WITH ANY CROSS.

 8                    CROSS-EXAMINATION

 9    BY MR. JACOBS:

10    Q    GOOD AFTERNOON, MR. GRAY.

11    A    GOOD AFTERNOON.

12    Q    NOW, YOUR TESTIMONY ON THE SUBJECT OF

13    INVALIDITY WAS PREMISED ON THE IDEA OF

14    ANTICIPATION; CORRECT, SIR?

15    A    THAT'S CORRECT.

16    Q    AND ANTICIPATION IS ALL YOU SPOKE TO; CORRECT?

17    A    THAT'S CORRECT.

18    Q    AND ANTICIPATION REQUIRES THAT EVERY ELEMENT,

19    THE JURY HAS HEARD THIS MANTRA, EVERY ELEMENT OF

20    THE CLAIM BE PRESENT IN THE PROPOSED INVALIDATING

21    REFERENCE; CORRECT, SIR?

22    A    THAT'S CORRECT.

23    Q    AND SO IF THE JURY --

24    A    WELL, WITH A POSSIBLE EXCEPTION THERE.  IT IS

25    EITHER -- IT IS EITHER COVERED OR IS INHERENTLY IN
```

1    THE REFERENCE.

2    Q    AND SO IF THE JURY FINDS THAT IN -- WHEN IT

3    COMES TO INVALIDITY, IF ANY ELEMENT OF THE CLAIM IS

4    NOT PRESENT IN THE PROPOSED INVALIDATING REFERENCE,

5    THEN YOUR OPINION SHOULD BE REJECTED; CORRECT, SIR?

6    A    AGAIN, WITH THE PROVISO THAT IF IT IS AN

7    ELEMENT THAT IS INHERENT OR IMPLIED, THAT'S MY

8    UNDERSTANDING.

9    Q    OTHERWISE YOU AGREE WITH ME, YOUR OPINION

10   RISES AND FALLS ON THE IDEA OF -- THERE'S NO CLOSE

11   HERE, YOU EITHER GOT IT, EVERY ELEMENT IS PRESENT,

12   OR YOU DON'T.  CORRECT, SIR?

13   A    EITHER EVERY ELEMENT IS PRESENT OR IT IS

14   INHERENT AS IS REQUIRED.

15   Q    NOW, I LISTENED CAREFULLY TO THE ANSWER TO THE

16   QUESTION ABOUT YOUR ROLE IN LITIGATION SUPPORT OVER

17   THE LAST COUPLE YEARS, AND YOU SAID YOU SPENT SOME

18   TIME DOING LITIGATION SUPPORT.

19             WHAT DID YOU MEAN BY "SOME TIME," SIR?

20   A    WELL, ACTUALLY SINCE, STARTING IN 1984, I DID

21   SOME LITIGATION SUPPORT, AND THROUGHOUT MY CAREER

22   AS AN ENGINEER, I PERIODICALLY DID LITIGATION

23   SUPPORT ASSIGNMENTS.  SO IT'S BEEN OVER A LONG

24   TIME, SINCE 1984.

25   Q    BUT OVER THE LAST COUPLE OF YEARS, ALMOST ALL

1

2

3                          CERTIFICATE OF REPORTERS

4

5

6              WE, THE UNDERSIGNED OFFICIAL COURT

7     REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

8     THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9     FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11             THAT THE FOREGOING TRANSCRIPT,

12    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

13    CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

14    SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

15    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

16    TRANSCRIPTION TO THE BEST OF OUR ABILITY.

17

18                       /S/
                         _____
19                       LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595
20

21                       /S/
                         _____
22                       IRENE RODRIGUEZ, CSR, CRR
                         CERTIFICATE NUMBER 8074
23

24
                         DATED:  AUGUST 15, 2012
25