Pierce Declaration

# EXHIBIT 11

1                     UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,                  )
                                 )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,        )
                                 )  AUGUST 17, 2012
8          VS.                   )
                                 )  VOLUME 11
9  SAMSUNG ELECTRONICS CO.,      )
   LTD., A KOREAN BUSINESS       )  PAGES 3387-3711
10 ENTITY; SAMSUNG               )
   ELECTRONICS AMERICA,          )
11 INC., A NEW YORK              )
   CORPORATION; SAMSUNG          )
12 TELECOMMUNICATIONS            )
   AMERICA, LLC, A DELAWARE      )
13 LIMITED LIABILITY             )
   COMPANY,                      )
14                               )
                 DEFENDANTS.     )
15 _____

16              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20              APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
24                         IRENE RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                 BY:  HAROLD J. MCELHINNY
 3                                MICHAEL A. JACOBS
                                  RACHEL KREVANS
 4                           425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                 HALE AND DORR
 7                           BY:  WILLIAM F. LEE
                             60 STATE STREET
 8                           BOSTON, MASSACHUSETTS  02109

 9                           BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
10                           PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
12                           BY:  CHARLES K. VERHOEVEN
                             50 CALIFORNIA STREET, 22ND FLOOR
13                           SAN FRANCISCO, CALIFORNIA  94111

14                           BY:  VICTORIA F. MAROULIS
                                  KEVIN P.B. JOHNSON
15                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
16                           REDWOOD SHORES, CALIFORNIA  94065

17                           BY:  MICHAEL T. ZELLER
                                  WILLIAM C. PRICE
18                           865 SOUTH FIGUEROA STREET
                             10TH FLOOR
19                           LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

INDEX OF WITNESSES

PLAINTIFF'S REBUTTAL

**HYONG KIM**
        DIRECT EXAM BY MR. LEE (RES.)     P. 3414
        CROSS-EXAM BY MR. VERHOEVEN       P. 3432
        REDIRECT EXAM BY MR. LEE          P. 3434
**EDWARD KNIGHTLY**
        DIRECT EXAM BY MR. MUELLER        P. 3435
        CROSS-EXAM BY MR. VERHOEVEN       P. 3462
        REDIRECT EXAM BY MR. MUELLER      P. 3464
**SUSAN KARE**
        DIRECT EXAM BY MS. KREVANS        P. 3465
        CROSS-EXAM BY MR. VERHOEVEN       P. 3474
**MICHAEL WALKER**
        DIRECT EXAM BY MR. MUELLER        P. 3477
        CROSS-EXAM BY MR. VERHOEVEN       P. 3516
        REDIRECT EXAM BY MR. MUELLER      P. 3526
**RICHARD DONALDSON**
        DIRECT EXAM BY MR. MUELLER        P. 3531
**SEUNG-HO AHN**
        VIDEOTAPED DEPOSITION PLAYED      P. 3547
**JUN WON LEE**
        VIDEOTAPED DEPOSITION PLAYED      P. 3548
**JANUSZ ORDOVER**
        DIRECT EXAM BY MR. MUELLER        P. 3569
**PETER BRESSLER**
        DIRECT EXAM BY MS. KREVANS        P. 3589
        CROSS-EXAM BY MR. VERHOEVEN       P. 3608
**KARAN SINGH**
        DIRECT EXAM BY MR. JACOBS         P. 3614
**RAVIN BALAKRISHNAN**
        DIRECT EXAM BY MR. JACOBS         P. 3629


DEFENDANT'S SURREBUTTAL

**DAVID TEECE**
        DIRECT EXAM BY MS. MAROULIS       P. 3643
        CROSS-EXAM BY MR. LEE             P. 3651

**TIM WILLIAMS**
        DIRECT EXAM BY MR. VERHOEVEN      P. 3656
        CROSS-EXAM BY MR. LEE             P. 3660

**WOODWARD YANG**
        DIRECT EXAM BY MR. VERHOEVEN      P. 3665
        CROSS-EXAM BY MR. LEE             P. 3670

1                              INDEX OF EXHIBITS

2                                   MARKED        ADMITTED

3          PLAINTIFF'S

4          100                                     3425
           104                                     3431
5          1060                                    3450
           97                                      3454
6          2277                                    3469
           2278                                    3472
7          74                                      3486
           1085                                    3499
8          101                                     3501
           72                                      3502
9          84                                      3504
           122                                     3507
10         193                                     3510
           1084                                    3511
11         70                                      3512
           81                                      3541
12         1078                                    3603
           1048 & 1049                             3628
13         1047                                    3636
           1066                                    3672

14

15

16

17         DEFENDANT'S

18         613                                     3519
           549                                     3522

19

20

21

22

23

24

25

```
 1    ALLOWED POWER."

 2               DO YOU SEE THAT?

 3    A    YES.

 4    Q    DO YOU SEE THE REFERENCE TO THE WORD "THE

 5    CHANNELS"?

 6    A    YES.

 7    Q    AND YOU UNDERSTAND HER HONOR HAS SAID THAT

 8    THESE TERMS, OR THESE CLAIMS GET THEIR PLAIN AND

 9    ORDINARY MEANING?

10    A    YES.

11    Q    WHAT CHANNELS IS THE PHRASE "THE CHANNEL"

12    REFERRING TO?

13    A    THE CHANNEL IN THIS CLAIM IS REFERRING TO THE

14    FIRST CHANNEL AND THE SECOND CHANNEL.

15    Q    AND WHAT IS TOTAL TRANSMIT POWER AS THAT TERM

16    IS USED IN THE CLAIM?

17    A    THE TOTAL TRANSMIT POWER HERE IS REFERRING TO

18    TOTAL TRANSMIT POWER OF THE FIRST CHANNEL AND THE

19    SECOND CHANNEL.

20    Q    CAN I HAVE PDX 35.7 ON THE SCREEN, PLEASE.

21               CAN YOU USE PDX 35.7 AND EXPLAIN TO THE

22    LADIES AND GENTLEMEN OF THE JURY HOW A CLAIM

23    DESCRIBES DETERMINING A TOTAL TRANSMIT POWER AND

24    WHAT TO DO ABOUT IT?

25    A    WELL, ACCORDING TO THE CLAIM, THE WAY YOU
```

```
1    COMPUTE THE TOTAL TRANSMIT POWER IS ADDING THE

2    POWER OF THE FIRST CHANNEL AND THEN THE POWER OF

3    THE SECOND CHANNEL.

4    Q    ALL RIGHT.  NOW, USING THAT INTERPRETATION OF

5    THE CLAIM, YOU HAVE READ DR. WILLIAMS' TESTIMONY;

6    CORRECT?

7    A    YES.

8    Q    AND ON CROSS-EXAMINATION, DID HE IDENTIFY THE

9    FIRST AND SECOND CHANNELS?

10   A    YES.

11   Q    COULD I HAVE PDX 35.10 ON THE SCREEN.

12         AND USING 35.10, WOULD YOU EXPLAIN TO THE

13   MEMBERS OF THE JURY WHAT DR. WILLIAMS SAID WERE HIS

14   FIRST AND SECOND CHANNEL?

15   A    ACCORDING TO DR. WILLIAMS, THE FIRST CHANNEL

16   IS THE DPDCH, THAT'S THE DEDICATED PHYSICAL DATA

17   CHANNEL, AND THE SECOND CHANNEL IS ENHANCED DPDCH.

18   Q    ALL RIGHT.  LET'S TAKE DR. WILLIAMS AT HIS

19   WORD THAT THOSE ARE THE FIRST AND SECOND CHANNELS.

20         IF THOSE ARE THE FIRST AND SECOND

21   CHANNELS, DO YOU AGREE WITH HIS CONCLUSION THAT

22   APPLE'S PRODUCTS INFRINGE?

23   A    NO, I DON'T.

24   Q    WHY NOT?

25   A    BECAUSE APPLE PRODUCT DOES NOT OBTAIN THE
```

1    TOTAL TRANSMIT POWER BY ADDING TWO CHANNELS, BUT IT

2    ACTUALLY ADDS FIVE CHANNELS.

3    Q    DO THE APPLE PRODUCTS FOLLOW THE 3GPP

4    STANDARD?

5    A    YES.

6    Q    AND WHEN YOU READ DR. WILLIAMS' TESTIMONY, DID

7    YOU READ THE PART WHERE I ASKED HIM WHETHER YOU'RE

8    RUNNING ON TWO OR FIVE, DO YOU REMEMBER THAT?

9    A    VAGUELY, BUT YES.

10    Q    OKAY.  LET'S LOOK AT THE STANDARD THEN.

11            COULD I HAVE JX 1083 ON THE SCREEN.  IT'S

12    IN VOLUME 1, TAB 2 OF YOUR NOTEBOOK OR YOU CAN LOOK

13    AT IT ON THE SCREEN.

14            DO YOU SEE IT?

15    A    YES.

16    Q    CAN WE TURN TO PAGE 25.

17            AND THIS IS ALREADY IN EVIDENCE, YOUR

18    HONOR.

19            DO YOU SEE SECTION 5.1.2.6?

20    A    YES.

21    Q    LET'S BRING UP THE SECOND PARAGRAPH WHICH I

22    ASKED DR. WILLIAMS ABOUT.

23            DO YOU SEE THE REFERENCE TO TOTAL UE

24    TRANSMIT POWER?

25    A    YES.

```
1    Q    WHAT IS TOTAL UE TRANSMIT POWER?

2    A    THE UE STANDS FOR USER EQUIPMENT.  THAT WOULD

3    BE THE CELL PHONE OR SMARTPHONE THAT YOU HAVE, AND

4    THE TOTAL TRANSMIT POWER WOULD BE THE TOTAL AMOUNT

5    OF POWER THAT WOULD BE TRANSMITTED.

6    Q    AND IN THE STANDARD, HOW MANY CHANNELS ARE

7    ADDED TO GET TOTAL TRANSMIT POWER?

8    A    FIVE CHANNELS.

9    Q    AND HOW DO YOU KNOW THAT?

10   A    BECAUSE THAT'S WHAT THE STANDARD DICTATES.

11   Q    DID YOU ALSO REVIEW THE TESTIMONY OF INTEL'S

12   ENGINEERS, ENGINEER MARKUS PALTIAN?

13   A    YES.

14   Q    WHAT DID HE SAY ABOUT THE NUMBER OF CHANNELS

15   THAT WERE ADDED IN THE INTEL BASEBAND PROCESSOR?

16   A    YES.  HE STATED THAT THE INTEL BASEBAND

17   PROCESSOR ADDED FIVE CHANNELS.

18   Q    SO IF WE GO PDX 35.11, COULD YOU USE THIS

19   DEMONSTRATIVE AND EXPLAIN TO THE JURY HOW THE 3GPP

20   STANDARD AND THE BASEBAND PROCESSOR THAT APPLE BUYS

21   FROM INTEL DETERMINES TOTAL TRANSMIT POWER?

22   A    SO IN 3GPP STANDARD, THE TOTAL TRANSMIT POWER

23   IS OBTAINED BY ADDING FIVE CHANNELS, THE FIVE

24   CHANNELS THAT I STATED IN THE UPLINK, SUCH AS THE

25   DPDCH, E-DPDCH, DPCCH, E-DPCCH, AND HS-DPCCH, SO
```

7421

```
 1   YOU ADD UP THE FIVE CHANNELS AND OBTAIN THE TOTAL

 2   TRANSMIT POWER.

 3   Q    AND A BASEBAND PROCESSOR OR A PRODUCT THAT

 4   ADDED UP THE FIVE CHANNELS TO DETERMINE TOTAL

 5   TRANSMIT POWER, WOULD THEY INFRINGE THE CLAIM OF

 6   THE PATENT?

 7   A    NO.

 8   Q    TURN, IF YOU WOULD, BRING UP PDX 35.14.  WOULD

 9   YOU EXPLAIN TO US HOW THE STANDARD DIFFERS FROM

10   WHAT IS IN THE CLAIM OF THE PATENT?

11   A    THE CLAIM IN THE '516 PATENT ADDS TWO

12   CHANNELS, DPDCH AND E-DPDCH TO OBTAIN THE TOTAL

13   TRANSMIT POWER AS YOU SEE IT ON THE LEFT SIDE OF

14   THE FIGURE.

15        ACCORDING TO THE STANDARD, 3GPP STANDARD,

16   IT WILL ADD FIVE CHANNELS AS SHOWN ON THE RIGHT

17   SIDE OF THE SLIDE.  SO THEY ARE VERY DIFFERENT.

18   Q    NOW, COULD I HAVE PDX 35.15.

19        USING THIS EXAMPLE, CAN YOU EXPLAIN TO

20   THE JURY WHY THIS DIFFERENCE BETWEEN THE CLAIM AND

21   THE STANDARD CAN HAVE -- CAN MAKE A DIFFERENCE IN

22   OPERATION?

23   A    SO THIS IS AN EXAMPLE WHERE YOU HAVE TO

24   COMPARE THE TOTAL TRANSMIT POWER TO THE MAXIMUM

25   ALLOWED POWER.
```

1          SO ON THE RIGHT SIDE, IF YOU ADD UP THE

2     FIVE CHANNELS, IN THIS EXAMPLE, IT'S SHOWING THAT

3     THE TOTAL TRANSMIT POWER IS EXCEEDED.  IT'S LARGER

4     THAN THE MAXIMUM ALLOWED POWER.

5          THEREFORE, ACCORDING TO THE STANDARD, IT

6     HAS TO REDUCE THE POWER OF THE E-DPDCH.

7          ON THE OTHER HAND, IF YOU LOOK AT THE

8     LEFT SIDE OF THE FIGURE, IF YOU'RE ADDING UP ONLY

9     TWO CHANNELS, YOU WILL NOT EXCEED THE MAXIMUM

10    ALLOWED POWER; THEREFORE, NO ACTION WOULD BE TAKEN.

11         SO TWO WILL FUNCTION VERY DIFFERENTLY.

12    Q    AND THAT'S THE BASIS FOR YOUR OPINION THAT

13    CLAIM 15 DOES NOT INFRINGE?

14    A    THAT'S CORRECT.

15    Q    SAMSUNG ALSO ASSERTS CLAIM 16.  DO YOU HAVE AN

16    OPINION AS TO WHETHER THAT'S INFRINGED?

17    A    NO, THAT'S NOT INFRINGED.

18    Q    AND FOR WHAT REASONS?

19    A    BECAUSE CLAIM 16 IS A DEPENDENT ON CLAIM 15,

20    SO FOR THE SAME REASON.

21    Q    NOW, LET'S TURN TO THE QUESTION OF VALIDITY.

22         HAVE YOU REVIEWED THE ISSUE OF VALIDITY?

23    A    YES.

24    Q    WHAT HAVE YOU CONCLUDED?

25    A    I CONCLUDED THAT THE PATENT'S INVALID.

7423

```
1    Q    AND WHAT PRIOR ART DO YOU BASE YOUR

2    DETERMINATION ON?

3    A    SO I'M BASING MY OPINION ON THE PRIOR ART THAT

4    WAS STATED IN THE PATENT ITSELF, '516, AND THE

5    PATENT APPLICATION BY HATTA, H-A-T-T-A.

6    Q    LET'S LOOK AT THE FIRST PART, THE PRIOR ART

7    THAT'S DESCRIBED IN THE PATENT.

8              COULD WE HAVE SAMSUNG'S DEMONSTRATIVE SDX

9    3966.009 ON THE SCREEN.

10             NOW, THIS IS DR. WILLIAMS' DEMONSTRATIVE.

11   DO YOU SEE THAT?

12   A    YES.

13   Q    ON THE LEFT-HAND SIDE IS FIGURE 5 FROM THE

14   PATENT.  DO YOU SEE THAT?

15   A    YES.

16   Q    HOW DOES THE PATENT LABEL FIGURE 5?

17   A    IT SAYS PRIOR ART.

18   Q    AND WHAT DOES FIGURE 5 SHOW ABOUT THE PRIOR

19   ART?

20   A    FIGURE 5 IS SHOWING WHEN YOU HAVE THOSE

21   MULTIPLE CHANNEL, E-DPDCH, E-DPDCH, AND E-DPDCH

22   THAT EXCEEDS THE MAXIMUM POWER, AS YOU SEE IN THAT,

23   IN FIGURE 402, THAT IT WILL EQUALLY SCALE DOWN THE

24   POWER OF EACH CHANNEL.

25   Q    NOW, DOES FIGURE 5 DISCLOSE AN ENHANCED UPLINK
```

7424

```
 1     SERVICE?

 2     A    YES.

 3     Q    AND HOW DO YOU KNOW?

 4     A    BECAUSE IT HAS AN E-DPDCH CHANNEL ON IT.

 5     Q    DOES IT DISCLOSE THE USE OF CHANNELS

 6     SUPPORTING HARQ?

 7     A    YES.

 8     Q    HOW DO YOU KNOW?

 9     A    BECAUSE IT HAS THE E-DPDCH ON IT.

10     Q    DOES IT DISCLOSE THE USE OF CHANNELS NOT

11     SUPPORTING HARQ?

12     A    YES.

13     Q    AND I THINK YOU TOLD ME ALREADY, BUT ON THE

14     LEFT-HAND SIDE, FIGURE 5, WHAT'S THE SCALING

15     TECHNIQUE?  WHAT'S THE FORMULA FOR REDUCING THINGS?

16     A    SO YOU WOULD EQUALLY REDUCE POWER TO EACH

17     CHANNEL, SO THAT'S WHY WE CALL IT EQUAL SCALING.

18     SO THEY WILL BE REDUCING THE THREE CHANNELS EQUALLY

19     TO MEET THE MAXIMUM POWER.

20     Q    NOW, LET'S LOOK AT THE OTHER SIDE OF

21     DR. WILLIAMS' SLIDE WHERE HE DESCRIBES THE

22     SOLUTION.  DO YOU SEE THAT ON THE RIGHT?

23     A    YES.

24     Q    WHAT IS THE SOLUTION?  WHAT DOES HE SAY IS

25     DIFFERENT?
```

7425

```
1    A    WELL, THE SOLUTION THAT HE SAYS IS INSTEAD OF

2    EQUALLY SCALING ALL THE CHANNELS, YOU WOULD ONLY

3    SCALE E-DPDCH CHANNEL AND MAINTAIN THE REST OF THE

4    CHANNEL POWER.

5    Q    SO INSTEAD OF REDUCING THEM ALL EQUALLY, YOU

6    JUST REDUCE ONE?

7    A    YES.

8    Q    OKAY.  NOW, LET'S TURN TO PX 100 IN YOUR

9    BINDER.  AND BEFORE IT'S PUT ON THE SCREEN, DO YOU

10   SEE IT?

11   A    YES.

12   Q    WHAT IS IT?

13   A    IT'S THE PATENT APPLICATION, JAPANESE PATENT

14   APPLICATION BY HATTA.

15          MR. LEE:  YOUR HONOR, WE OFFER PX 100.

16          THE COURT:  ANY OBJECTION?

17          MR. VERHOEVEN:  NO OBJECTION.

18          THE COURT:  IT'S ADMITTED.

19          (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

20          100, HAVING BEEN PREVIOUSLY MARKED FOR

21          IDENTIFICATION, WAS ADMITTED INTO

22          EVIDENCE.)

23   BY MR. LEE:

24   Q    WHEN WAS THE HATTA REFERENCE PUBLISHED?

25   A    JULY 5, 2002.
```

```
 1    Q    IS IT PRIOR ART TO THE '516 PATENT?

 2    A    YES.

 3    Q    DID THE PATENT OFFICE KNOW ABOUT HATTA?

 4    A    NO.

 5    Q    SO LET'S PUT UP PDX 35.16 AND COMPARE THE

 6    FIGURES OF HATTA TO DR. WILLIAMS' PROBLEM AND

 7    SOLUTION SLIDE.

 8         DO YOU SEE I PUT DR. WILLIAMS' SLIDE AT

 9    THE TOP?

10    A    YES.

11    Q    AND HATTA AT THE BOTTOM?

12    A    YES.

13    Q    SO LET'S FOCUS ON THE BOTTOM.  DO YOU SEE

14    FIGURES 8 AND 5 OF HATTA?

15    A    YES.

16    Q    WHAT DOES IT SHOW?

17    A    FIGURE 5 SHOWS THE UNEQUAL SCALING, JUST LIKE

18    THE PATENT '516 IS TALKING ABOUT.  WHAT HATTA

19    TEACHES HERE IS THAT YOU CLASSIFY CHANNELS INTO

20    DIFFERENT CLASSES, AND YOU WILL SCALE THEM

21    DIFFERENTLY.

22    Q    SO JUST SO THE RECORD IS CLEAR, FIGURE 8 OF

23    HATTA SCALES ON WHAT BASIS?  WHAT'S THE FORMULA?

24    A    YES, FIGURE 8 IS ON EQUAL SCALING, JUST LIKE

25    FIGURE 5 THAT YOU SAW.
```

```
1    Q    AND FIGURE 5 IS ON WHAT BASIS?

2    A    ON EQUAL SCALING.  FIGURE 5 IS UNEQUAL

3    SCALING.  FIGURE 8 WOULD BE EQUAL SCALING.

4    Q    AND DO YOU HAVE AN OPINION AS TO WHETHER THE

5    PRIOR ART DESCRIBED IN HATTA ITSELF DISCLOSES EACH

6    AND EVERY ELEMENT OF CLAIM 15 AND 16?

7    A    YES.

8    Q    DO YOU HAVE AN OPINION AS TO WHETHER IT WOULD

9    HAVE BEEN OBVIOUS TO ONE OF ORDINARY SCALE IN THE

10   ART TO COMBINE THESE TWO COMBINATIONS?

11   A    YES, IF YOU LOOK AT THE PRIOR ART, FIGURE 5,

12   AND THEN THE HATTA PATENT APPLICATION, IT'S QUITE

13   OBVIOUS.

14        IF YOU THINK ABOUT CHANNELS THAT YOU HAVE

15   IN 3GPP STANDARD, MULTIPLE CHANNELS YOU HAVE, YOU

16   COULD EASILY CLASSIFY THE CHANNEL WITH A HARQ AND A

17   CHANNEL WITHOUT THE HARQ.

18        SO HATTA TEACHES US THAT IF YOU CLASSIFY

19   DIFFERENTLY, YOU WOULD SCALE POWER OF THOSE

20   CHANNELS DIFFERENTLY.

21   Q    ALL RIGHT.  NOW, LET'S GO TO PDX 35.17, AND

22   I'M GOING TO VERY QUICKLY MOVE YOU THROUGH EACH OF

23   THE LIMITATIONS BECAUSE THAT'S ONE THING THAT WE'RE

24   OBLIGATED DO AND IF THEY EFFECT YOUR OPINION.

25        DO YOU SEE THE FIRST ELEMENT THAT STARTS
```

7428

1    WITH AN APPARATUS FOR TRANSMITTING DATA?

2    A    YES.

3    Q    IS THAT PRESENT IN THE PRIOR ART YOU JUST

4    DESCRIBED?

5    A    YES.

6    Q    WHERE?

7    A    WE SAW THAT IN FIGURE 5 OF THE PRIOR ART

8    FIGURE.

9    Q    OF THE PATENT?

10   A    THE PATENT '516, YES.

11   Q    THE NEXT ELEMENT REFERS TO A CONTROLLER FOR

12   DETERMINING.  DO YOU SEE THAT?

13   A    YES.

14   Q    WHERE DO YOU FIND THAT IN THE PRIOR ART?

15   A    AGAIN, IN THE FIGURE 5 OF THE PATENT, '516.

16   Q    THE THIRD ELEMENT SAYS SCALING DOWN THE

17   TRANSMIT POWER.  WHERE DO YOU FIND THAT IN THE

18   PRIOR ART?

19   A    YOU FIND THAT IN THE HATTA PATENT APPLICATION.

20   Q    THE NEXT ELEMENT SAYS FIRST AND SECOND CHANNEL

21   GENERATORS.  DO YOU SEE THAT?

22   A    YES.

23   Q    AND WHERE IS THAT ELEMENT TAUGHT IN THE PRIOR

24   ART?

25   A    THAT WOULD BE IN FIGURE 4 AND FIGURE 5 OF THE

1    '516 PATENT, WHICH IS LABELED PRIOR ART.

2    Q    LET'S LOOK AT FIGURE 4 OF THE '516 PATENT JUST

3    FOR A SECOND.

4         THIS IS ALSO LABELED PRIOR ART IN THE

5    PATENT?

6    A    YES.

7    Q    HOW DOES IT TEACH THIS ELEMENT?

8    A    SO IT IS SHOWING THAT THE USE OF CHANNEL

9    CODING, AS YOU SEE IN '305, THE CODING BLOCK, AND

10   THEN THE MODULATOR '306, AND THEN AFTER THAT, YOU

11   WILL BE TRANSMITTING THE SIGNAL.

12   Q    LET'S LOOK AT THE LAST ELEMENT OF CLAIM 15,

13   WHICH IS A GAIN SCALING UNIT.  DO YOU SEE THAT?

14   A    YES.

15   Q    AND WHERE IS THAT IN THE PRIOR ART?

16   A    THAT WOULD BE IN, AGAIN, FIGURE 4 AND FIGURE 5

17   OF THE '516 PATENT.

18   Q    SO DO YOU FIND EACH AND EVERY ELEMENT OF CLAIM

19   15 IN THE PRIOR ART?

20   A    YES.

21   Q    LET'S LOOK BRIEFLY AT CLAIM 16, WHICH ADDS, AS

22   DR. WILLIAMS POINTED OUT, THIS SLOT TO SLOT.  DO

23   YOU SEE THAT?

24   A    YES.

25   Q    WHERE IS THAT ELEMENT TAUGHT IN THE PRIOR ART?

7430

```
1    A    THAT IS TAUGHT IN FIGURE 5 OF THE '516 PATENT.
2    Q    CAN I HAVE FIGURE 5 ON THE SCREEN, BECAUSE I
3    DON'T THINK WE'VE POINTED THIS OUT TO THE JURY
4    BEFORE.
5              WOULD YOU EXPLAIN TO THE JURY WHERE IN
6    THE DIAGRAM THE PATENT LABELS PRIOR ART YOU CAN
7    FIND SLOT TO SLOT?
8    A    SO IF YOU LOOK AT FIGURE 5, THERE'S A T1, T2
9    AND T3, THAT'S WHAT WE CALL SLOT IN WIRELESS
10   COMMUNICATIONS, AND THEN YOU SEE AS THE CHANGE IS
11   HAPPENING TO THE POWER, IT HAPPENS AT THE
12   SLOT-BY-SLOT BASIS AS YOU SEE HERE.
13   Q    NOW, LET ME TURN TO A RELATED CONCEPT.  THE
14   JURY WILL BE INSTRUCTED NEXT WEEK ON SOMETHING
15   CALLED SECONDARY CONSIDERATIONS OF OBVIOUSNESS.
16   THAT'S A LAWYER CONCEPT, BUT YOU'VE HEARD THEM
17   BEFORE?
18   A    YES.
19   Q    AND I JUST WANT TO ASK YOU ABOUT THOSE
20   CONCEPTS.  DID YOU FIND ANY EVIDENCE THAT ANYONE
21   HAD COPIED THE '516 PATENT?
22   A    NO.
23   Q    ANY EVIDENCE THAT PATENT HAD ENJOYED
24   COMMERCIAL SUCCESS?
25   A    NO.
```

1    Q    ANY EVIDENCE THAT OTHERS HAD TRIED AND FAILED

2    TO MAKE THE INVENTION OF THE '516 PATENT?

3    A    NO.

4    Q    AND ANY PRAISE IN THE INDUSTRY WITH TECHNICAL

5    FIELDS FOR THE PATENT?

6    A    NO.

7    Q    NOW, LAST SUBJECT.  TURN, IF YOU WOULD, TO PX

8    104, WHICH IS VOLUME 2, TAB 8 OF YOUR NOTEBOOK.  DO

9    YOU SEE THIS?

10   A    YES.

11   Q    WHAT IS IT?

12   A    IT'S THE SAMSUNG PROPOSAL TO THE 3GPP STANDARD

13   BY ONE OF THE INVENTORS OF THE '516 PATENT.

14   Q    JUHO LEE?

15   A    YES.

16   Q    WHAT IS THE DATE OF THE DOCUMENT?

17   A    JUNE 18TH, 2004.

18          MR. LEE:  YOUR HONOR, WE OFFER PX 104.

19          THE COURT:  ANY OBJECTION?

20          MR. VERHOEVEN:  NO OBJECTION.

21          THE COURT:  IT'S ADMITTED.

22          (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

23           104, HAVING BEEN PREVIOUSLY MARKED FOR

24           IDENTIFICATION, WAS ADMITTED INTO

25           EVIDENCE.)

7432

```
 1    BY MR. LEE:

 2    Q    AND IF YOU TURN TO PAGE 3 OF THE DOCUMENT, DO

 3    YOU SEE ON PAGE 3 DIFFERENT ALTERNATIVE PROPOSAL TO

 4    THE 3 -- FOR DEALING WITH THE POWER CONTROL ISSUE?

 5    A    YES.

 6    Q    AND WHAT ARE THEY?

 7    A    SO THE FIRST ONE IT SAYS MUST SEND DATA OVER

 8    THE ENHANCED CHANNEL, MEANING YOU POWER DOWN THE

 9    ENTIRE CHANNEL.

10         SECOND ONE TALKS ABOUT REDUCING THE POWER

11    OF THE ENHANCED DATA CHANNEL.

12         AND THE THIRD ONE TALKS ABOUT SCALE DOWN

13    EQUALLY, TRANSMIT POWER OVER CHANNELS.

14         MR. LEE:  THANK YOU PROFESSOR KIM.

15         NOTHING FURTHER, YOUR HONOR.

16         THE COURT:  ALL RIGHT.  TIME IS NOW 9:24.

17    GO AHEAD, PLEASE.

18                   CROSS-EXAMINATION

19    BY MR. VERHOEVEN:

20    Q    GOOD MORNING.

21    A    GOOD MORNING.

22    Q    MY NAME IS CHARLES VERHOEVEN.

23         YOU -- DID YOU SEE DR. WILLIAMS TESTIMONY

24    ON DIRECT AND CROSS?

25    A    YES.  I DIDN'T SEE IT.  I READ IT.
```

7433

```
 1    Q    YOU READ IT?

 2    A    YES.

 3    Q    AND YOU SAW HOW HE WENT THROUGH IN GREAT

 4    DETAIL HOW THE CLAIMS READ ON THE INTEL

 5    SPECIFICATION AND SOFTWARE?  DO YOU REMEMBER THAT?

 6    A    YES.

 7    Q    IN YOUR DIRECT EXAMINATION, YOU DIDN'T ADDRESS

 8    ANY OF THE INTEL DOCUMENTS, DID YOU?  YES OR NO?

 9    A    NO.

10    Q    AND YOU DIDN'T ADDRESS THE INTEL SOURCE CODE,

11    DID YOU?

12    A    NO.

13    Q    YOU DON'T DISPUTE THE ACCURACY OF

14    DR. WILLIAMS' DESCRIPTION OF HOW THOSE DOCUMENTS

15    SHOW THE OPERATION OF THE CHIP, DO YOU, SIR?

16    A    I DON'T QUITE UNDERSTAND YOUR QUESTION.

17    Q    COULD YOU READ THE QUESTION BACK, PLEASE.

18              (WHEREUPON, THE RECORD WAS READ BY THE

19    COURT REPORTER.)

20              THE WITNESS:  YEAH, I BELIEVE HE

21    DESCRIBED THAT --

22    BY MR. VERHOEVEN:

23    Q    YES OR NO, SIR?

24    A    WAIT.  I DON'T DISPUTE.

25              MR. VERHOEVEN:  THANK YOU.  NOTHING
```

7434

```
 1    FURTHER.

 2              THE COURT:  ALL RIGHT.  TIME IS NOW 9:25.

 3    ANY REDIRECT?

 4                    REDIRECT EXAMINATION

 5    BY MR. LEE:

 6    Q    PROFESSOR KIM, DID YOU REVIEW THE TESTIMONY OF

 7    THE INTEL ENGINEER WHERE HE SAID ALL CHANNELS ARE

 8    TOTALLED UP IN THE INTEL BASEBAND PROCESSOR?

 9    A    YES.

10              MR. LEE:  NOTHING FURTHER, YOUR HONOR.

11              THE COURT:  ALL RIGHT.  MAY THIS WITNESS

12    BE EXCLUDED AND IT IF SO, IS HE SUBJECT TO RECALL?

13              MR. LEE:  HE IS, AND NOT SUBJECT TO

14    RECALL.

15              THE COURT:  DO YOU AGREE WITH THAT?

16              MR. VERHOEVEN:  YES, YOUR HONOR.

17              THE COURT:  ALL RIGHT.  YOU MAY BE

18    EXCUSED.

19              CALL YOUR NEXT WITNESS, PLEASE.

20              MR. LEE:  YOUR HONOR, APPLE CALLS

21    PROFESSOR KNIGHTLY.  AND MR. MUELLER WILL PRESENT

22    DR. KNIGHTLY.

23              THE COURT:  ALL RIGHT.  COME ON UP,

24    PLEASE.

25              THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.
```

```
 1                    EDWARD KNIGHTLY,

 2     BEING CALLED AS A WITNESS ON BEHALF OF THE

 3     PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS

 4     EXAMINED AND TESTIFIED AS FOLLOWS:

 5               THE WITNESS:  I DO.

 6          THE CLERK:  THANK YOU.  PLEASE BE SEATED.

 7          THE COURT:  ALL RIGHT.  THE TIME IS NOW

 8     9:26.  GO AHEAD.

 9          THE CLERK:  IF YOU CAN PLEASE STATE YOUR

10     NAME AND SPELL IT FOR THE RECORD.

11          THE WITNESS:  EDWARD WILLIAM KNIGHTLY.

12     E-D-W-A-R-D, WILLIAM, W-I-L-L-I-A-M, KNIGHTLY,

13     K-N-I-G-H-T-L-Y.

14                  DIRECT EXAMINATION

15     BY MR. MUELLER:

16     Q    GOOD MORNING, DR. KNIGHTLY.

17     A    GOOD MORNING.

18     Q    COULD YOU PLEASE INTRODUCE YOURSELF TO THE

19     JURY?

20     A    YES.  MY NAME IS EDWARD KNIGHTLY, AND I LIVE

21     IN HOUSTON, TEXAS.

22     Q    AND, SIR, IF YOU WOULD SIT UP JUST A BIT

23     TOWARDS THE MICROPHONE.  THANK YOU.

24               DR. KNIGHTLY, HAVE YOU BEEN RETAINED BY

25     APPLE AS AN EXPERT WITNESS IN THIS CASE?
```

7436

```
1    A    YES, I HAVE.

2    Q    LET'S START BY GOING OVER YOUR EDUCATIONAL

3    BACKGROUND IF WE COULD.

4    A    ALL RIGHT.

5    Q    COULD YOU PLEASE DESCRIBE IT FOR THE JURY?

6    A    SO I RECEIVED MY BACHELOR'S DEGREE IN 1991

7    FROM AUBURN UNIVERSITY AND MY MASTER AND PH.D. FROM

8    THE UNIVERSITY OF CALIFORNIA AT BERKELEY IN '92 AND

9    '96.

10   Q    DR. KNIGHTLY, WHERE DO YOU WORK?

11   A    I'M A PROFESSOR OF ELECTRICAL AND COMPUTER

12   ENGINEERING AT RICE UNIVERSITY IN HOUSTON.

13   Q    FOR HOW LONG HAVE YOU BEEN AT RICE UNIVERSITY?

14   A    SINCE '96.

15   Q    WHAT ARE YOUR DUTIES AT RICE?

16   A    I TEACH COURSES, GRADUATE AND UNDERGRADUATE

17   COURSES, I TEACH SENIOR LEVEL NETWORKING COURSES,

18   AND ADVANCED WIRELESS NETWORKING COURSES AT THE

19   GRADUATE LEVEL.

20        I ALSO TEACH PROJECT COURSES TO SENIORS

21   ON WIRELESS NETWORKING FOR UNDERSERVED REGIONS FOR

22   LOW COST WIRELESS, AND I ALSO RUN A RESEARCH GROUP

23   WITH GRADUATE STUDENTS AND ENGINEERS.

24   Q    COULD YOU PLEASE GIVE US AN OVERVIEW OF YOUR

25   RESEARCH?
```

1    A    YES.

2    Q    CAN YOU REMIND THE JURY WHAT THAT IS?

3    A    SO THE HEADER CONTAINS THE CONTROL INFORMATION

4    TO TELL THE RECEIVER WHAT TO DO.

5    Q    I WANT TO TALK NOW ABOUT THE CONCEPT OF AN

6    ALTERNATIVE E-BIT.  DO YOU HAVE THAT IN MIND?

7    A    YES.

8    Q    WHAT IS IT?

9    A    SO THERE ARE -- IN THE 3GPP STANDARD, THERE'S

10   AN E-BIT, WHICH STANDS FOR AN EXTENSION BIT, AND

11   THERE'S A SECOND WAY TO INTERPRET THAT E-BIT AND

12   THAT'S THE ALTERNATIVE E-BIT INTERPRETATION.  SO

13   DIFFERENT WAYS TO INTERPRET THE ALTERNATIVE BIT IN

14   THE STANDARD.

15   Q    IS THIS PART OF THE HEADER?

16   A    YES.

17   Q    YOU REFERRED TO SOMETHING CALLED 3GPP.  IS

18   THAT SOMETIMES CALLED UMTS?

19   A    YES.

20   Q    THAT'S THE STANDARD THAT WAS DEVELOPED BY A

21   GROUP CALLED ETSI AND OTHERS?

22   A    THAT'S CORRECT.

23   Q    DID YOU HEAR DR. WILLIAMS TESTIFY ON THE STAND

24   ABOUT THE ALTERNATIVE E-BIT?

25   A    YES, I DID.

1    Q    DID YOU HEAR HIM SAY THE ALTERNATIVE E-BIT CAN

2    REDUCE OVERHEAD?

3    A    YES, I HEARD THAT.

4    Q    DO YOU AGREE?

5    A    IN SOME CASES IT REDUCES OVERHEAD, AND THAT'S

6    THE ONE CASE OF THE EXACT MATCH.  BUT IN OTHER

7    CASES, WHEN THERE'S SEGMENTATION, IT ADDS OVERHEAD.

8    IT ADDS LIFE FOR EVERY INTERMEDIATE SEGMENT, SO IF

9    THERE'S A LARGE IMAGE OR VIDEO FRAME, IT CAN ADD

10   MANY, MANY BYTES PER SDU.

11   Q    SIR, LET'S TURN TO THE '941 PATENT AND I WANT

12   TO EXPLORE THE ISSUE OF WHETHER THIS PATENT COVERS

13   THE ALTERNATIVE E-BIT.  LET'S BRING UP 36.9 WHICH

14   SHOWS CLAIM 10 FROM THE PATENT.  LET ME SHOW YOU ON

15   THE THIRD CLAIM ELEMENT, WHICH IS HIGHLIGHTED.

16   WHAT DOES THIS DESCRIBE?

17   A    SO THIS IS A ONE BIT FIELD INDICATING WHETHER

18   OR NOT THERE'S AN ENTIRE SDU IN THE DATA FIELD.  SO

19   WITH A SINGLE BIT, YOU CAN EITHER BE -- THAT IT

20   DOES SOMETHING OR DOES NOT DO SOMETHING, SO THIS

21   IS -- THAT SOMETHING IN THIS CASE IS WHETHER

22   THERE'S AN ENTIRE SDU IN THE DATA FIELD.

23   Q    LET'S GO TO THE NEXT SLIDE, PLEASE.  THIS IS

24   CLAIM 15, AND PLEASE EXPLAIN TO US WHAT WE SEE IN

25   THE HIGHLIGHTED TEXT HERE?

```
 1    A    SO THIS IS THE RECEIVER SIDE CLAIM FOR THE

 2    REFEREE ASSEMBLING, AND SO THIS IS -- WHAT'S SHOWN

 3    FOR THESE REASSEMBLY CONTROLLER CHECKING THAT SAME

 4    ONE BIT FIELD.

 5    Q    AND IF YOU GO BACK TO THE PREVIOUS SLIDE FOR

 6    JUST A MOMENT.

 7              YOUR HONOR, MAY I APPROACH?

 8              THE COURT:  GO AHEAD, PLEASE.

 9    BY MR. MUELLER:

10    Q    AGAIN, JUST SO WE'RE CLEAR, THAT REQUIRES AN

11    ENTIRE SDU RIGHT?

12    A    THAT'S CORRECT.

13    Q    CLAIM 15 ALSO REQUIRED AN ENTIRE SDU?

14    A    YES.

15    Q    BOTH CLAIMS?

16    A    YES.

17    Q    WHAT IS THE PLANE AND ORDINARY MEANING OF THAT

18    CLAIM TERM?

19    A    THAT IT'S A WHOLE SDU, ONE THAT IS NOT

20    SEGMENTED.

21    Q    NOW, DR. WILLIAMS SAID THAT IN THE ALTERNATIVE

22    E-BIT IN THE UMTS STANDARD, THERE'S A ONE BIT

23    FIELD?

24    A    YES.

25    Q    DO YOU AGREE?
```

7447

```
 1     A     NO, I DON'T.

 2     Q     WHY NOT?

 3     A     BECAUSE THE TWO, THE ONE BIT FIELD OF UMTS HAS

 4     A DIFFERENT FUNCTION THAN THE ONE BIT FIELD IN THE

 5     '941.

 6     Q     HAVE YOU PREPARED A DEMONSTRATIVE THAT

 7     COMPARES THE TWO?

 8     A     YES.

 9     Q     LET'S TAKE A LOOK AT PDX 36.12, PLEASE.  AND

10     WHAT DOES THIS SHOW?

11     A     SO HERE YOU CAN SEE THE ONE BIT FIELD FOR THE

12     '941 VERSUS THE 3GPP.  SO BY, BY USING A SINGLE

13     BIT, IT'S CALLING OUT ONE CASE VERSUS NOT THAT

14     CASE.

15           SO YOU CAN SEE FROM THE '941 CLAIM ON

16     TOP, THE BIT IS WHETHER OR NOT THE PDU CONTAINS AN

17     ENTIRE SDU.

18           SO --

19     Q     AND LET'S JUST TAKE THIS IN PLEASE.  IF THE

20     BIT IS 0 IN THE '941 PATENT CLAIMS, WHAT DOES THAT

21     MEAN?

22     A     RIGHT.  SO THAT'S THE INDICATION WHERE AN

23     ENTIRE SDU IS CONTAINED WITHIN THE PDU, AND THAT

24     INCLUDES THOSE, THOSE THREE CASES THAT I DESCRIBED

25     EARLIER.  EACH OF THOSE HAS AN ENTIRE SDU IN THE
```

```
 1    PDU.

 2    Q    SO IF IT'S ZERO IN THE '941, IT CAN BE ANY OF

 3    THOSE THREE?

 4    A    CORRECT.

 5    Q    WHAT IF IT'S ZERO IN THE UMTS OR 3GPP

 6    STANDARD?

 7    A    SO WITH THE ALTERNATIVE E-BIT, NOT THE NORMAL

 8    E-BIT, WITH THE ALTERNATIVE E-BIT, THAT BIT, WHEN

 9    IT'S SET TO ZERO, MEANS IT'S AN EXACT MATCH.

10            AND THE WAY THE STANDARD DEFINES AN EXACT

11    MATCH IS THE WORDS THERE, COMPLETE SDU THAT IS NOT

12    THOSE CASES ABOVE, IT'S NOT SEGMENTED AND IT'S NOT

13    CONCATENATED AND IT'S NOT PADDED.

14    Q    IT'S ALWAYS AN EXACT FIT IN THE STANDARD?

15    A    CORRECT.

16    Q    NOW, WHAT'S THE SIGNIFICANCE OF THIS

17    DIFFERENCE?

18    A    WELL, THE SIGNIFICANCE OF THE DIFFERENCE IS

19    THAT IF A SENDER AND A RECEIVER WERE TRYING TO --

20    ONE WAS USING THE '941 AND ONE WAS USING THE 3GPP,

21    THEY WOULD MISINTERPRET WHAT THAT BIT MEANT AND IT

22    WOULDN'T BE COMPATIBLE.

23    Q    LET'S PUT THAT INTO REAL LIFE TERMS.  IF A

24    USER HAD A WIRELESS DEVICE THAT USED THE '941 --

25    MAY I APPROACH? -- COULD IT COMMUNICATE WITH A
```

```
 1   WIRELESS DEVICE USING THE UMTS?

 2   A    IF IT WAS TRYING TO USE THE ALTERNATIVE E-BIT

 3   IN UMTS, THE RECEIVER WOULD BE CONFUSED WHEN IT GOT

 4   A ZERO AS TO WHICH CASE IT CORRESPONDED TO.

 5   Q    LET'S GO BACK TO PDX 36.9.  THIS IS CLAIM 10

 6   AGAIN.

 7             NOW, DID YOU HEAR DR. WILLIAMS SAY THAT

 8   IN HIS VIEW, THE CLAIM REQUIRES ONLY AN ENTIRE SDU?

 9   A    YES.

10   Q    AND DO YOU RECALL WHEN MR. LEE WROTE ONLY ON

11   THE BOARD HERE?

12   A    YES.

13   Q    AND DR. WILLIAMS SAID HE AGREED WITH THAT?

14   A    YES.

15   Q    DO YOU AGREE?

16   A    NO.

17   Q    WHY NOT?

18   A    WELL, THE "WORD" ONLY IS, IS NOT IN THE CLAIM,

19   SO -- AND ADDING THAT WORD "ONLY" CHANGES THE

20   MEANING OF THE CLAIM TO ACTUALLY INCLUDE THOSE

21   CASES THAT WE TALKED ABOUT WITH CONCATENATION AND

22   PADDING.

23   Q    HOW DO THE WORDS AN ENTIRE SDU BECOME A PART

24   OF THESE CLAIMS?

25   A    IN THE FILE HISTORY, YOU CAN SEE THAT THE
```

7450

```
 1    PATENT OFFICE INITIALLY REJECTED THE SUBMITTED
 2    PATENT CLAIMS AND FORCED SAMSUNG TO ADD THAT WORD.
 3    Q    CAN YOU PLEASE TURN TO TAB 1 IN YOUR BINDER.
 4    THIS IS JX 1060.  SIR, WHAT IS THIS?
 5    A    SO THIS IS THE FILE HISTORY OF THE '941
 6    PATENT.
 7    Q    AND CAN YOU EXPLAIN TO THE JURY WHAT A FILE
 8    HISTORY IS?
 9    A    YES.  SO THE FILE HISTORY IS THE BACK AND
10    FORTH BETWEEN SAMSUNG AND THE PATENT OFFICE WHERE
11    IT CONTAINS THE INITIAL PATENT APPLICATION, IN THIS
12    CASE, THAT WAS REJECTED, SO THE CLAIMS WERE
13    AMENDED.  SO ALL OF THAT BACK AND FORTH GOES IN THE
14    FILE HISTORY.
15              MR. MUELLER:  YOUR HONOR, I OFFER IT.
16              THE COURT:  ANY OBJECTION?
17              MR. VERHOEVEN:  NO OBJECTION.
18              THE COURT:  IT'S ADMITTED.
19              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
20              1060, HAVING BEEN PREVIOUSLY MARKED FOR
21              IDENTIFICATION, WAS ADMITTED INTO
22              EVIDENCE.)
23    BY MR. MUELLER:
24    Q    DR. KNIGHTLY, WHEN SAMSUNG FILED THE ORIGINAL
25    PATENT APPLICATION FOR THE '941 PATENT, DID CLAIMS
```

1    10 AND 15 MENTION AN ENTIRE SDU?

2    A    NO, THAT WAS NOT IN THE SUBMITTED CLAIM.

3    Q    WHAT DID THE PATENT OFFICE DO WITH THE

4    ORIGINAL CLAIMS?

5    A    WELL, THE PATENT OFFICE WROTE THAT THE CLAIMS

6    ARE OBVIOUS IN LIGHT OF A PRIOR ART REFERENCE,

7    JIANG, J-I-A-N-G.

8    Q    SO LET'S TURN TO PAGES 22 AND 23 OF THIS JOINT

9    EXHIBIT 1060.

10            AND I'D LIKE, IF YOU COULD, FOR YOU TO

11   EXPLAIN TO THE JURY WHAT WE SEE HERE?

12   A    SO HERE YOU'RE SEEING THE ORIGINAL CLAIM AND

13   THE WAY IT WAS AMENDED.  SO IF YOU CAN SCROLL DOWN

14   A LITTLE BIT TO CLAIM 10.  I GUESS IT'S ON TWO

15   PAGES.  SO YOU CAN SEE THE ORIGINAL LANGUAGE AND

16   THEN ADDED LANGUAGE IS UNDERLINED AND LANGUAGE

17   REMOVED IS STRUCK.

18            MR. MUELLER:  YOUR HONOR, AGAIN, MAY I

19   APPROACH, PLEASE.

20            THE COURT:  GO AHEAD.

21   BY MR. MUELLER:

22   Q    DR. KNIGHTLY, DO YOU SEE HERE WHERE IT SAYS

23   WHETHER THE PDU CONTAINS AN ENTIRE SDU IN THE DATE

24   TO FIELD?

25   A    YES.

7452

```
 1    Q    WHAT IS THAT?

 2    A    BECAUSE IT'S UNDERLINED, THAT MEANS IT WAS

 3    ADDED AFTER THE REJECTION OF OBVIOUSNESS OVER

 4    JIANG.

 5    Q    LET'S TURN TO PAGES 28 AND 29 OF THE SAME

 6    DOCUMENT.  AND LET ME DIRECT YOUR ATTENTION TO THE

 7    PARAGRAPH STARTS JIANG DISCLOSES.  DO YOU SEE THAT?

 8    A    YES.

 9    Q    WHAT DO WE SEE HERE?

10    A    YES.  SO IF YOU LOOK AT THE LAST SENTENCE

11    THERE, THE "MOREOVER," SO THEY'RE SAYING THAT

12    MOREOVER, YEAH, RIGHT THERE, MOREOVER, JIANG

13    DISCLOSES THAT IF A SINGLE SDU COMPLETELY FILLS AN

14    SDU ARRAY, SO THAT'S SAYING AN EXACT MATCH, THEN

15    THE EXTENSION BIT WOULD BE ZERO, THEREBY INDICATING

16    THAT NO LENGTH INDICATOR OR NO MORE HEADER

17    INFORMATION IS PRESENT.

18         SO THEY'RE BASICALLY SAYING THAT THAT'S

19    WHAT JIANG DOES, BUT SAMSUNG'S AMENDED CLAIM IS

20    DIFFERENT AND IF YOU LOOK IN THE TEXT ABOVE, THE

21    APPLICANTS RECITE, I THINK IT'S THE SAME PAGE,

22    YEAH, THE APPLICANTS, HOWEVER, RECITE THEN THEY'RE

23    SAYING THEY'RE RECITING A BIT FOR AN ENTIRE --

24    WHETHER OR NOT AN ENTIRE SDU IS IN THE DATA FIELD.

25    Q    HOW DOES SAMSUNG'S STATEMENT HERE TO THE
```

1    HEADER, THAT'S THE ONE BIT FIELD THAT'S SET TO

2    WHETHER OR NOT THERE'S AN ENTIRE SDU.

3    Q    AND THE NEXT LIMITATION IS A LENGTH INDICATOR

4    INSERTER.  IS THAT DISCLOSED IN AGARWAL?

5    A    YES.  WE ALSO DISCUSSED THAT, THAT LENGTH

6    INDICATOR, AS WELL AS THE PREDEFINED VALUES.

7    Q    FINAL ELEMENT OF CLAIM 10 IS A TRANSMITTER FOR

8    SENDING PDU'S TO RECEIVER.  IS THAT DISCLOSED IN

9    AGARWAL?

10   A    YES.  SO THE SYSTEM TRANSMITS OVER THE

11   WIRELESS NETWORK AFTER THOSE STEPS.

12   Q    LET'S TURN TO CLAIM 15 IF WE COULD.  THE

13   PREAMBLE SAYS, "AN APPARATUS FOR RECEIVING DATA IN

14   A MOBILE COMMUNICATIONS SYSTEM."  WE'LL PUT THIS ON

15   THE SCREEN.  IT'S PDX 36.22.  IS THAT PRESENT IN

16   AGARWAL, THE PREAMBLE LIMITATION?

17   A    YES.  SO FOR THE SAME REASON, IT'S THE -- IT'S

18   A MOBILE COMMUNICATION SYSTEM, YES.

19   Q    AND ARE THE OTHER LIMITATIONS LISTED HERE IN

20   PDX 36.22 PRESENT IN AGARWAL, AND COULD YOU EXPLAIN

21   BRIEFLY HOW, IF SO?

22   A    YES.  SO CLAIM 15 IS A RECEIVER SIDE ANALOG

23   FOR THE SENDER SIDE IN CLAIM 10.

24        SO AGARWAL ALSO DOES THE RECEIVER SIDE

25   AFTER IT'S SEGMENTED, PUTTING EVERYTHING BACK

1    TOGETHER AS IN THIS CLAIM.

2    Q    DR. KNIGHTLY, IN SUM, WHAT IS YOUR OPINION ON

3    THE VALIDITY OF THIS PATENT?

4    A    THAT THE '941 CLAIMS ARE INVALID IN LIGHT OF

5    AGARWAL.

6    Q    JUST A FEW MORE QUESTIONS.

7              LET'S TURN BACK TO THE ALTERNATIVE E-BIT

8    IN THE UMTS STANDARD, AND I WANT TO PUT THIS INTO

9    CONTEXT.

10             HOW LARGE IS THE UMTS STANDARD?

11   A    THOUSANDS OF PAGES OF DOCUMENTS.

12   Q    AND HOW MUCH OF THE STANDARD IS DEVOTED TO THE

13   ALTERNATIVE E-BIT?

14   A    ABOUT A PAGE.

15   Q    NOW, AT THE TIME THE ALTERNATIVE E-BIT WAS

16   ADOPTED BY THE UMTS WORKING GROUPS, WERE THERE

17   ALTERNATIVES?

18   A    YES, THERE WERE.

19   Q    WHAT WERE THEY?

20   A    WELL, ONE ALTERNATIVE IS OTHER HEADER

21   STRUCTURES, SUCH AS WHAT WE JUST SAW, THAT THERE

22   ARE OTHER WAYS TO, TO DEFINE HEADERS AS AGARWAL

23   DID.

24             AND THEN ANOTHER ALTERNATIVE IS TO USE

25   THE ORIGINAL E-BIT INTERPRETATION.

1    Q   NOW, FOR A PRODUCT LIKE THE IPHONE OR THE

2    IPAD, DO THOSE PRODUCTS CONTROL WHETHER THE E-BIT

3    IS USED?

4    A   NO, THEY DON'T.

5    Q   WHO DOES?

6    A   THE NETWORK SERVICE PROVIDER, SUCH AS AT&T,

7    DECIDES WHETHER OR NOT THE ALTERNATIVE E-BIT IS

8    USED BECAUSE IT'S AN OPTION TO THE PROVIDER WHETHER

9    TO USE THE NORMAL E-BIT OR TO TURN ON THIS OPTION

10    FOR ALTERNATIVE E-BIT.

11    Q   NOW, FOR THE PRODUCTS ACCUSED IN THIS CASE,

12    WHICH CARRIER IS THE RELEVANT CARRIER?

13    A   AT&T.

14    Q   HAVE YOU SEEN ANY EVIDENCE THAT AT&T USES THE

15    ALTERNATIVE E-BIT?

16    A   I'VE SEEN NO EVIDENCE THAT THEY EVER TURN IT

17    ON.

18    Q   FINALLY, JUST SO WE'RE CLEAR, WHAT IS YOUR

19    OPINION AS TO WHETHER OR NOT THE '941 PATENT COVERS

20    THE ALTERNATIVE E-BIT?

21    A   MY OPINION IS THAT IT DOES NOT.

22          MR. MUELLER:  NO FURTHER QUESTIONS.

23    THANK YOU.

24          THE COURT:  ALL RIGHT.  TIME IS NOW 9:54.

25    GO AHEAD, PLEASE.

**CROSS-EXAMINATION**

1

2    BY MR. VERHOEVEN:

3    Q    GOOD MORNING, DR. KNIGHTLY.

4    A    GOOD MORNING.

5    Q    IN YOUR DIRECT EXAMINATION -- LET ME BACK UP.

6    WERE YOU HERE FOR DR. WILLIAMS' TESTIMONY?

7    A    YES.

8    Q    OKAY.  AND YOU HEARD HIM TESTIFY EXTENSIVELY

9    ABOUT THE INTEL SPECIFICATION?

10   A    THE --

11   Q    YES?

12   A    INTEL SOURCE CODE.

13   Q    AND THE SOURCE CODE.  DO YOU REMEMBER HIM

14   TALKING ABOUT THE DOCUMENTS AND SOURCE CODE?  HE

15   WENT THROUGH IT IN GREAT DETAIL?

16   A    YES.

17   Q    IN YOUR EXAMINATION, YOU DIDN'T MENTION IT?

18   A    I REVIEWED SCORED, BUT I DIDN'T TALK ABOUT IT.

19   Q    YOU DIDN'T GO THROUGH IT, DID YOU?

20   A    NOT TODAY.

21   Q    YOU DON'T DISPUTE THE ACCURACY OF DR.

22   WILLIAMS' DESCRIPTIONS OF HOW THE INTEL CHIP WORKS,

23   DO YOU, SIR?

24   A    I AGREE WITH THE STEPS IN THE INTEL CODE, YES.

25   Q    SO CAN WE PUT UP PDX 36.9?  NOW, IN YOUR

```
 1    DIRECT EXAMINATION, YOU FOCUSSED IN PART ON THIS

 2    PHRASE AN ENTIRE SDU IN THE DATA FIELD.  DO YOU

 3    REMEMBER THAT?

 4    A    YES.

 5    Q    NOW, SIR, ISN'T IT TRUE THAT SOMETIMES THE

 6    APPLE ACCUSED PRODUCTS TRANSMIT AN ENTIRE SDU?  YES

 7    OR NO, SIR?  SOMETIMES THEY DO THAT, DON'T THEY?

 8    A    WHEN THEY'RE RUNNING THE, THE -- WELL, DO YOU

 9    MEAN WITH OR WITHOUT THE 3G -- THE ALTERNATE E-BIT.

10    Q    CAN YOU ANSWER MY QUESTION?

11    A    WELL --

12    Q    ISN'T IT TRUE THAT SOMETIMES THE APPLE ACCUSED

13    PRODUCTS TRANSMIT AN ENTIRE SDU?  YES OR NO?

14    A    WITHOUT THE ALTERNATIVE E-BIT, DEFINITELY,

15    YES.

16    Q    AND SOMETIMES, IF YOU'RE INFRINGING, YOU'RE

17    STILL INFRINGING, ISN'T THAT TRUE?

18    A    OH, WELL, THERE ISN'T THAT BIT, SO THEY HAPPEN

19    TO HALF AN ENTIRE SDU, BUT NOT WITH THAT BIT.

20    Q    IF SOMETIMES THEY'RE TRANSMITTING AN ENTIRE

21    SDU, THEY'RE TRANSMITTING AN ENTIRE SDU; CORRECT?

22    A    YES, BUT NOT WITH THAT BIT INDICATED.

23    Q    AND IF YOU'RE INFRINGING SOMETIMES, YOU'RE

24    STILL INFRINGING; RIGHT?

25    A    THEY'RE NOT INFRINGING.
```

1    Q    WOULD YOU AGREE WITH ME, SIR, AS A LEGAL

2    PRINCIPLE, IS IT YOUR UNDERSTANDING OF THE RULES OF

3    THE ROAD, THAT IF SOMETIMES YOU'RE INFRINGING,

4    YOU'RE STILL INFRINGING?

5    A    I BELIEVE THAT'S CORRECT.

6              MR. VERHOEVEN:  NO FURTHER QUESTIONS.

7              THE COURT:  THE TIME IS NOW 9:57.  GO

8    AHEAD.

9                   **REDIRECT EXAMINATION**

10   BY MR. MUELLER:

11   Q    DR. KNIGHTLY, DO THE APPLE PRODUCTS EVER

12   INFRINGE?

13   A    NO.

14   Q    WHY NOT?

15   A    BECAUSE THEY DON'T HAVE THE ONE BIT FIELD

16   THAT'S IN THE CLAIM.

17             MR. MUELLER:  THANK YOU.  NO FURTHER

18   QUESTIONS.

19             THE COURT:  ALL RIGHT.  MAY THIS WITNESS

20   BE EXCUSED AND IS IT SUBJECT TO RECALL?

21             MR. VERHOEVEN:  YES.

22             MR. LEE:  YES, NOT SUBJECT TO RECALL.

23             THE COURT:  NOT SUBJECT TO RECALL, RIGHT?

24             MR. LEE:  NOT SUBJECT TO RECALL.

25             THE COURT:  OKAY.  YOU ARE EXCUSED.

7465

```
 1              CALL YOUR NEXT WITNESS, PLEASE.
 2              MS. KREVANS:  YOUR HONOR, APPLE CALLS
 3   DR. SUSAN KARE.
 4              THE COURT:  OKAY.
 5              THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.
 6                        SUSAN KARE,
 7   BEING RECALLED AS A WITNESS ON BEHALF OF THE
 8   PLAINTIFF, HAVING BEEN PREVIOUSLY SWORN, WAS
 9   EXAMINED AND TESTIFIED AS FOLLOWS:
10              THE WITNESS:  YES.
11              THE CLERK:  THANK YOU.  PLEASE BE SEATED.
12              THE COURT:  ALL RIGHT.  TIME IS 9:58.  GO
13   AHEAD, PLEASE.
14                    DIRECT EXAMINATION
15   BY MS. KREVANS:
16   Q    GOOD MORNING, DR. KARE.
17   A    GOOD MORNING.
18   Q    YOU HAVEN'T BEEN HERE FOR THE LAST FEW DAYS;
19   RIGHT?
20   A    NO.
21   Q    ARE YOU AWARE THAT A COUPLE OF DAYS AGO, A --
22   MS. WANG, WHO IS A DESIGNER FOR SAMSUNG, TESTIFIED
23   WITH RESPECT TO ICONS THAT IN PARTICULAR FOR TOUCH
24   PHONES, THE TOUCH AREA MUST BE DEFINED, AND SO
25   THAT'S WHY IN THE BACKGROUND WE HAVE ROUNDED
```

7472

```
 1    Q    LET ME ASK, DR. KARE, ARE WE LOOKING AT THE

 2    APPLICATIONS SCREENS OF EACH OF THOSE PHONES,

 3    DR. KARE?

 4    A    YES.

 5              MS. KREVANS:  YOUR HONOR, WE WOULD

 6    MOVE THIS EXHIBIT 2278.

 7              WE WOULD MOVE 2278, WHICH IS THE

 8    BLACKBERRY STORM INTO EVIDENCE, AND, AGAIN, WE WILL

 9    TAKE ONE EXHIBIT OFF OF OUR ORIGINAL LIST TO MAKE

10    ROOM FOR THIS.

11              MR. VERHOEVEN:  NO OBJECTION, YOUR HONOR.

12              THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

13              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

14              2278, HAVING BEEN PREVIOUSLY MARKED FOR

15              IDENTIFICATION, WAS ADMITTED INTO

16              EVIDENCE.)

17    BY MS. KREVANS:

18    Q    CAN YOU TELL THE JURY, WITH RESPECT TO THE

19    BLACKBERRY STORM, DR. KARE, WHETHER OR NOT THIS

20    APPLICATION SCREEN DISPLAY HAS THE CONSISTENT ICON

21    STYLE DESCRIBED BY MS. WONG?

22    A    NO, IT DOESN'T.

23    Q    WHAT DOES IT HAVE?

24    A    IT HAS ALMOST MONOCHROMATIC ICONS WITH SOME

25    FLAT COLOR ACCENTS.
```

1          SO I THINK WHAT JUMPS OUT IS THE ICONS

2     ARE IRREGULAR SHAPED, THERE'S NOT MUCH COLOR,

3     THEY'RE ALL STYLIZED, SO THAT'S WHAT UNIFIES THOSE

4     ICONS.

5          THEY ARE ON REALLY SUBTLE BUTTON

6     BACKGROUNDS THAT ARE SHARP CORNERED RECTANGLES THAT

7     ABUTTED EACH OTHER WITH NO SPACE IN BETWEEN.

8     Q    OKAY.  GOING BACK TO THE HOTSHOT FOR A MOMENT,

9     ARE THERE CONTAINERS ON THE HOTSHOT SCREEN?

10    A    NO.

11    Q    OKAY.  LET ME SHOW YOU ONE MORE.

12    A    THEY'RE NOT CONSISTENT -- JUST TO BE REALLY

13    CLEAR, THERE'S NOT A CONSISTENT CONTAINER SHAPE.

14    Q    OKAY.  WHERE DO YOU SEE CONTAINERS?

15    A    THERE ARE A COUPLE ICONS, MY VERIZON AND MEDIA

16    CENTER, THAT ARE RECTANGULAR THAT LOOK MORE LIKE

17    BUTTONS.  BUT THAT'S NOT THE MAJORITY AND IT'S NOT

18    CONSISTENT.

19    Q    OKAY.  LET'S LOOK AT ONE MORE, AND THIS IS PX

20    158-A, WHICH IS IN EVIDENCE.

21          SO IF WE COULD SWITCH BACK, THOMAS, TO

22    YOUR SCREEN.

23          DR. KARE, CAN YOU TELL THE JURY WHETHER

24    OR NOT THE APPLICATION SCREENS OF THE BLACKBERRY

25    TORCH 9850, WHICH IS SHOWN ON 158-A, HAVE THE

```
1    CONSISTENT ICON STYLE TALKED ABOUT BY MS. WANG?

2    A    NO.

3    Q    DO THEY HAVE CONTAINERS?

4    A    NO.

5    Q    JUST LOOKING AT THESE TWO AND THINKING ABOUT

6    THE OTHER TWO THAT WE JUST SAW, THE PANTECH HOTSHOT

7    APPLICATION SCREEN AND THE BLACKBERRY STORM, DO ANY

8    OF THESE SCREEN DISPLAYS HAVE DESIGNS THAT ARE

9    SUBSTANTIALLY SIMILAR TO THE D'305 PATENT DESIGN

10   AND THE IPHONE HOME SCREEN?

11   A    NO.

12            MS. KREVANS:  NOTHING FURTHER, YOUR

13   HONOR.

14            THE COURT:  ALL RIGHT.  THE TIME IS

15   10:09.

16            GO AHEAD, PLEASE.

17                   CROSS-EXAMINATION

18   BY MR. VERHOEVEN:

19   Q    GOOD MORNING, DR. KARE.  GOOD TO SEE YOU

20   AGAIN?

21   A    GOOD MORNING.

22   Q    NOW, ON YOUR DIRECT EXAMINATION THIS MORNING,

23   YOU REFERRED SEVERAL TIMES TO WHAT YOU FELT WAS

24   NECESSARY OR NOT NECESSARY.  DO YOU REMEMBER THAT?

25   A    YES.
```

```
 1    Q    BUT DIDN'T YOU TELL THIS JURY LAST WEEK THAT

 2    YOU DIDN'T INVESTIGATE THE FUNCTIONALITY OF ICONS

 3    AS PART OF YOUR EXPERT WORK?

 4    A    THE SCOPE OF WHAT I WAS ASKED TO DO FOR THIS

 5    PROJECT WAS OVERALL VISUAL IMPRESSION.

 6    Q    LET'S SEE WHAT YOU SAID ON THE 7TH OF AUGUST.

 7    CAN WE BRING UP TRIAL TRANSCRIPT FROM AUGUST 7TH,

 8    PAGE 1470, LINES 2 THROUGH -- 12 THROUGH 16.

 9              CAN YOU HIGHLIGHT THAT.

10              I BELIEVE I ASKED YOU, "IS IT FAIR TO SAY

11    THAT YOU DIDN'T INVESTIGATE THE FUNCTIONALITY OF

12    THE ICONS AND HOW THEY WORK AND HOW A USER WOULD

13    INTERACT WITH THEM AS PART OF YOUR ANALYSIS?"

14              AND I BELIEVE YOUR ANSWER WAS YES.

15              IS THAT RIGHT?

16    A    YES.

17    Q    YOU DIDN'T CONSIDER HOW THEY WORK, DID YOU?

18    A    NOT TO COMPARE WHETHER THERE WAS SUBSTANTIAL

19    VISUAL SIMILARITY.

20    Q    AND YOU DIDN'T COMPARE -- YOU DIDN'T CONSIDER,

21    AS PART OF YOUR ANALYSIS FOR YOUR EXPERT OPINION,

22    HOW A USER WOULD INTERACT WITH THOSE ICONS WAS PART

23    OF YOUR ANALYSIS, DID YOU?

24    A    NO.

25    Q    BUT NOW YOU'RE UP HERE TELLING US WHAT IS AND
```

```
 1    ISN'T NECESSARY FOR A USER?
 2    A    I WAS ASKED WHAT WAS -- WHAT WERE LIMITS OF
 3    THE VISUAL, VISUAL INCARNATION OF DIFFERENT ICONS
 4    AND HOW -- WHETHER THOSE ICONS HAVE TO LOOK A
 5    CERTAIN WAY.
 6    Q    WELL, IT'S FAIR TO SAY, DR. KARE, THAT AS PART
 7    OF WHAT YOU WERE RETAINED TO DO AND THE ANALYSIS
 8    YOU ACTUALLY DID, YOU DID NOT CONSIDER, FROM A
 9    FUNCTIONAL STANDPOINT, WHAT IS OR IS NOT NECESSARY
10    FOR THE USER; RIGHT?
11    A    RIGHT.
12              MR. VERHOEVEN:  THANK YOU.  NO FURTHER
13    QUESTIONS.
14              THE COURT:  ALL RIGHT.  THE TIME IS NOW
15    10:11.
16              IS THERE ANY REDIRECT, OR MAY THIS
17    WITNESS BE EXCUSED?  AND I ASSUME IT'S NOT SUBJECT
18    TO RECALL.
19              MS. KREVANS:  SHE MAY, AND SHE IS NOT,
20    YOUR HONOR.
21              THE COURT:  ALL RIGHT.  YOU ARE EXCUSED.
22              MR. LEE:  YOUR HONOR, APPLE CALLS
23    DR. MICHAEL WALKER.
24              THE COURT:  OKAY.  IF YOU ALL WANT TO
25    STAND UP AND STRETCH WHILE WE'RE MOVING, PLEASE
```

7477

```
 1   FEEL FREE TO DO THAT.

 2           THAT'S TO EVERYONE IF YOU WANT TO STAND

 3   UP AND STRETCH A BIT.

 4           THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

 5                   MICHAEL WALKER,

 6   BEING CALLED AS A WITNESS ON BEHALF OF THE

 7   PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS

 8   EXAMINED AND TESTIFIED AS FOLLOWS:

 9           THE WITNESS:  I DO.

10           THE CLERK:  THANK YOU.  PLEASE BE SEATED.

11           THE COURT:  ALL RIGHT.  IT'S 10:12.  GO

12   AHEAD, PLEASE.

13                 DIRECT EXAMINATION

14   BY MR. MUELLER:

15   Q   GOOD MORNING, DR. WALKER.  COULD YOU PLEASE

16   INTRODUCE YOURSELF TO THE JURY BY TELLING THEM YOUR

17   NAME AND WHERE YOU LIVE?

18   A   GOOD MORNING.  MY NAME IS MICHAEL WALKER, AND

19   I LIVE IN NEWBURY IN THE UNITED KINGDOM.

20   Q   AND, DR. WALKER, IF YOU COULD SIT A LITTLE BIT

21   CLOSER TO THE MICROPHONE, PLEASE.

22           DR. WALKER, HAVE YOU BEEN RETAINED BY

23   APPLE AS AN EXPERT WITNESS IN THIS CASE?

24   A   YES, I HAVE.

25   Q   CAN YOU PLEASE SUMMARIZE YOUR EDUCATIONAL
```

7478

1    BACKGROUND FOR THE JURY?

2    A    YES, I RECEIVED AN HONOR'S DEGREE IN

3    MATHEMATICS FROM THE UNIVERSITY OF LONDON; PH.D.

4    FROM THE SAME UNIVERSITY; AND A FEW YEARS LATER I

5    DID A FURTHER POST-DOCTORATE DEGREE AT THE

6    UNIVERSITY IN GERMANY.

7    Q    DR. WALKER, HAVE YOU EVER WORKED IN THE

8    TELECOMMUNICATIONS INDUSTRY?

9    A    YES, I HAVE, FOR ABOUT 25 YEARS.

10   Q    COULD YOU BRIEFLY REVIEW THE POSITIONS YOU'VE

11   HELD?

12   A    YES.  I STARTED IN THE TELECOMMUNICATIONS

13   INDUSTRY BY WORKING FOR RACAL ELECTRONICS.

14   Q    AND COULD YOU SPELL THAT?

15   A    R-A-C-A-L ELECTRONICS.  RACAL ELECTRONICS WAS

16   A LARGE COMMUNICATIONS COMPANY SPECIALIZING IN

17   MILITARY COMMUNICATIONS IN THE UK.

18         I THEN WENT ON TO WORK FOR VODOFONE AND

19   VODOFONE IS THE WORLD'S LARGEST MOBILE CELLULAR

20   OPERATOR.

21   Q    NOW, AT SOME POINT DID YOU LEAVE VODOFONE?

22   A    YES.  I LEFT VODOFONE IN 2009.  I RETIRED END

23   OF AUGUST 2009.

24   Q    AND WHERE DO YOU WORK TODAY?

25   A    TODAY I WORK AT KING'S COLLEGE, LONDON.

```
 1    OVER $14 FOR EACH PRODUCT.

 2    Q    AS COMPARED TO WHAT PRICE FOR THE BASEBAND?

 3    A    BETWEEN $6 AND $12.

 4    Q    NOW, WHAT DOES THE N-D IN FRAND STANDS FOR?

 5    A    IT STANDS FOR NON-DISCRIMINATORY.

 6    Q    WAS SAMSUNG PROPOSAL NON-DISCRIMINATORY?

 7    A    NO, I BELIEVE IT IS DISCRIMINATORY.

 8    Q    COULD YOU EXPLAIN?

 9    A    SURE.  BECAUSE THE FUNCTIONALITY THAT THESE

10    PATENTS RELATE TO IS CELL PHONE CAPABILITY.  THAT'S

11    PROVIDED BY THE UMTS CHIP THAT SELLS FOR $6 TO $12.

12              SO IF A COMPANY, ONE COMPANY BUILDS JUST

13    A STANDARD CELL PHONE, SELLING FOR MAYBE $100, THEY

14    WOULD PAY 2.4 PERCENT UNDER THAT EXAMPLE, OR $2.04.

15              BUT IF YOU APPLY THE 2.4 PERCENT TO THE

16    ENTIRE PRICE OF AN APPLE SMARTPHONE, THAT'S $600,

17    THAT'S OVER $14 FOR CAPABILITIES AND

18    FUNCTIONALITIES UNRELATED TO THE CELL PHONE.

19    Q    AND YOU VIEW THAT AS DISCRIMINATORY?

20    A    YES, I CERTAINLY DO.

21    Q    NOW, LET'S SWITCH GEARS FOR A MOMENT.  I WANT

22    TO ASK YOU TO TURN TO TAB 3 IN YOUR BINDER.  THIS

23    IS A REDACTED VERSION OF A LICENSE AGREEMENT.  THE

24    JURY WILL HAVE THE FULL VERSION, BUT THE PUBLIC

25    WILL HAVE A REDACTED VERSION OF THIS AGREEMENT.
```

```
 1              DO YOU RECOGNIZE IT?

 2    A    YES, I DO.

 3    Q    WHAT IS IT?

 4    A    THIS IS A LICENSE AGREEMENT BETWEEN SAMSUNG

 5    AND INTEL THAT REALLY RELATES TO A BROAD RANGE OF

 6    INTEGRATED CIRCUITS, BUT IT'S A LICENSE THAT WOULD

 7    INCLUDE A BASEBAND CONTROLLER.

 8    Q    BETWEEN INTEL?

 9              MS. MAROULIS:  YOUR HONOR, OBJECTION WITH

10    REFERENCE TO PRIOR PRETRIAL ORDER AS TO THE SCOPE

11    OF MR. DONALDSON'S TESTIMONY.

12              MR. MUELLER:  YOUR HONOR, I'M GOING TO

13    ASK ONLY ABOUT MR. DONALDSON'S UNDERSTANDING AS TO

14    HOW PARTICULAR TERMS ARE COMMONLY UNDERSTOOD IN THE

15    ENTRY.  THAT'S PRECISELY WHAT YOU ALLOWED IN DOCKET

16    ENTRY 1157 ON JUNE 30TH.

17              THE COURT:  GO AHEAD.

18    Q    MR. DONALDSON, DO YOU HAVE PERSONAL EXPERIENCE

19    LICENSING IN THE SEMICONDUCTOR INDUSTRY?

20    A    YES.  MOST OF MY CAREER AT T.I. WAS DOING JUST

21    THAT.

22    Q    LET'S TAKE A LOOK AT SECTION 31(A)(1), WHICH

23    IS PART OF THE MATERIALS IN THIS LICENSE AGREEMENT.

24              AND, YOUR HONOR, BEFORE I DO, I OFFER

25    THIS.
```

```
1            THE COURT:  ANY OBJECTION, MS. MAROULIS?

2            MS. MAROULIS:  NO OBJECTION OTHER THAN

3    STATED.

4            THE COURT:  IT'S ADMITTED.

5            (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

6            81, HAVING BEEN PREVIOUSLY MARKED FOR

7            IDENTIFICATION, WAS ADMITTED INTO

8            EVIDENCE.)

9    BY MR. MUELLER:

10   Q    THIS IS THE REDACTED VERSION.  I'M GOING TO

11   ASK YOU TO TURN TO THIS SECTION, WHICH IS SOMETHING

12   THE PUBLIC CAN SEE, AND DO YOU SEE WHERE IT SAYS

13   SUBJECT TO THE TERMS AND CONDITIONS OF THIS

14   AGREEMENT, SAMSUNG HERE BY GRANDS TO INTEL A

15   NONEXCLUSIVE, NON TRANSFERRABLE, ROYALTY-FREE

16   WORLDWIDE LICENSE, WITHOUT THE RIGHT TO SUBLICENSE,

17   UNDER SAMSUNG'S PATENTS TO MAKE, USE, SELL,

18   DIRECTLY OR INDIRECTLY, OFFER TO SELL, IMPORT, OR

19   OTHERWISE DISPOSE OF ALL INTEL LICENSED PRODUCTS.

20           DO YOU SEE THAT, SIR?

21   A    I DO.

22   Q    DO YOU SEE IT SAYS ROYALTY-FREE?

23   A    I DO.

24   Q    WHAT DOES THAT MEAN WITH RESPECT TO WHAT INTEL

25   OWED SAMSUNG IN TERMS OF MONEY?
```

```
 1              MS. MAROULIS:  OBJECTION, CALLS FOR LEGAL
 2     CONCLUSION.
 3              MR. MUELLER:  YOUR HONOR, AGAIN, I'M
 4     ASKING ABOUT HOW SOMEONE IN THE INDUSTRY WOULD
 5     UNDERSTAND THESE TERMS.
 6              THE COURT:  OVERRULED.
 7              GO AHEAD.
 8              THE WITNESS:  I WAS INVOLVED IN
 9     NEGOTIATING A NUMBER OF ROYALTY-FREE CROSS LICENSES
10     OF THIS NATURE, AND IT'S JUST WHAT IT SAYS.  WHAT
11     PEOPLE UNDERSTOOD, THAT NO MONEY CHANGES HANDS
12     BETWEEN THE PARTIES.
13     Q    NOW, YOU'VE REVIEWED OTHER SAMSUNG AGREEMENTS;
14     IS THAT RIGHT?
15     A    I HAVE.
16     Q    HAVE YOU SEEN ANY EVIDENCE THAT ANYONE HAS
17     PAID SAMSUNG MONEY FOR ITS UMTS PORTFOLIO?
18     A    NO, I HAVE NOT.
19     Q    LET'S FOCUS ON THIS PROVISION.  DO YOU SEE
20     WHERE IT SAYS MAKE, USE, SELL, DIRECTLY OR
21     INDIRECTLY.  CAN YOU EXPLAIN HOW THOSE TERMS ARE
22     COMMONLY UNDERSTOOD IN THE SEMICONDUCTOR INDUSTRY?
23              MS. MAROULIS:  OBJECTION.
24              THE COURT:  OVERRULED.
25              THE WITNESS:  THIS IS UNDERSTOOD AND USED
```

```
 1    TO DEFINE THE RIGHTS THAT A LICENSEE HAS WITH

 2    RESPECT TO LICENSES THAT HE TAKES.

 3              SO THESE ARE SEPARATE RIGHTS, AND THEY

 4    CAN BE LICENSED SEPARATELY AND OFTEN ARE.  YOU HAVE

 5    THE RIGHT TO MAKE, AS SPECIFIED HERE, YOU HAVE THE

 6    RIGHT TO MAKE A PRODUCT USING THOSE PATENTS, THE

 7    RIGHT TO USE IT, A SEPARATE RIGHT TO SELL, EITHER

 8    DIRECTLY OR INDIRECTLY, AND OFFER TO SELL, IMPORT,

 9    OR OTHERWISE DISPOSE THEM.  THEY'RE ALL SEPARATE

10    RIGHTS THAT CAN BE SEPARATELY LICENSED.

11    BY MR. MUELLER:

12    Q    CAN I FOCUS YOUR ATTENTION ON DIRECTLY OR

13    INDIRECTLY.  HOW IS THAT TERM UNDERSTOOD?

14    A    THIS IS OFTEN USED, IT RELATES TO THE RIGHT TO

15    SELL AND FOR LARGE COMPANIES THAT MIGHT HAVE A

16    NUMBER OF SUBSIDIARIES OR MIGHT MAKE PRODUCTS THAT

17    YOU WANT TO SELL THROUGH DISTRIBUTORS, THEY WANT TO

18    BE SURE THAT THE RIGHT TO SELL IS SUFFICIENTLY

19    BROAD TO ENTITLE THEM TO USE THESE DIFFERENT FORMS

20    OF DISTRIBUTION IN SELLING PRODUCTS.

21    Q    AND JUST SO WE'RE CLEAR, THESE ARE ALL RIGHTS

22    THAT SAMSUNG GAVE TO INTEL WITH RESPECT TO

23    SAMSUNG'S PATENTS?

24    A    THAT IS CORRECT.

25    Q    LET'S PUT THIS ASIDE AND GO BACK TO THE
```

```
 1    SAMSUNG PROPOSAL, PX 80.  WE DISCUSSED THE ROYALTY

 2    BASE EARLIER, THE PRICE OF THE PHONE OR THE IPAD?

 3    A    YES.

 4    Q    NOW, I WANTED TO FOCUS ON THE RATE, 2.4

 5    PERCENT.  DO YOU HAVE AN OPINION AS TO WHETHER THAT

 6    RATE COMPLIED WITH FRAND?

 7    A    YES, I HAVE AN OPINION AND I DO NOT BELIEVE

 8    THAT IT DOES.

 9    Q    WHY NOT?

10    A    WELL, WHEN YOU LOOK AT THE RATE AND COMBINE

11    THAT WITH THE BASE THAT IT'S APPLIED TO, AS I

12    MENTIONED EARLIER, THAT'S OVER $14 PER UNIT.  AND

13    UNDER THIS PROPOSAL, THIS WAS FOR THE ENTIRE

14    PORTFOLIO OF SAMSUNG'S UMTS PATENTS, PATENTS THAT

15    THEY SAY ARE USED IN PHONES THAT COMPLY WITH THE

16    UMTS.

17          WELL, SAMSUNG OWNS ABOUT -- THEIR PATENTS

18    CONSTITUTE ABOUT 5 PERCENT OF THE NEARLY 2,000

19    PATENTS THAT OTHER COMPANIES HAVE SAID COVER THIS

20    SAME SPECIFICATION.

21          SO IF OTHER COMPANIES CHOSE THE SAME

22    APPROACH AS SAMSUNG, IF THEY -- IF THIS WERE

23    DETERMINED THAT, YES, THIS IS A REASONABLE ROYALTY,

24    THEN THE TOTAL AMOUNT OF ROYALTY ON SOMETHING LIKE

25    AN IPHONE WOULD BE ABOUT 50 PERCENT .
```

1            AND FROM A BUSINESS PERSPECTIVE, AND, YOU

2     KNOW, THIS RATE IS SOMETHING THAT REASONABLE

3     BUSINESS PEOPLE SHOULD BE WHAT THEY WOULD

4     NEGOTIATE, THIS WOULD BE TOTALLY UNREASONABLE.

5     IT'S NOT FAIR OR REASONABLE BECAUSE YOU COULD NOT

6     BE SUCCESSFUL IN THE MARKET.

7     Q    JUST A COUPLE FINAL QUESTIONS, SIR.  DID YOU

8     UNDERTAKE ANY ANALYSIS IN THIS CASE AS TO WHETHER

9     SAMSUNG HAS TRULY ESSENTIAL PATENTS FOR UMTS?

10    A    NO, I DID NOT.

11    Q    IS THAT A SUBJECT FOR THE TECHNICAL EXPERT

12    ITSELF?

13    A    IT IS.

14    Q    WERE YOU HERE YESTERDAY FOR PROFESSOR TEECE'S

15    TESTIMONY?

16    A    I WAS.

17    Q    THIS PROPOSAL LAST YEAR BY SAMSUNG COVERED THE

18    PORTFOLIO; IS THAT RIGHT?

19    A    THAT IS CORRECT.

20    Q    HOW MANY PATENTS WAS DR. TEECE HERE ON?

21    A    JUST TWO.

22    Q    AND WHAT WAS HIS VIEW ON WHAT A REASONABLE

23    ROYALTY IS?

24    A    WELL, HE HAD A RANGE THAT WOULD BE EVEN HIGHER

25    THAN WAS ASKED FOR, FOR THE ENTIRE PORTFOLIO FOR

1    JUST TWO PATENTS.  IT WOULD BE, AT HIS UPPER RANGE,

2    HIGHER THAN THE $14 THAT -- FOR THE ENTIRE

3    PORTFOLIO.

4    Q    AND, SIR, IS DR. TEECE'S OPINION CONSISTENT

5    WITH FRAND?

6    A    ABSOLUTELY NOT.

7         MR. MUELLER:  NOTHING FURTHER.

8         THE COURT:  ALL RIGHT.  THE TIME IS

9    11:47.

10        MS. MAROULIS:  YOUR HONOR, IN THE

11   INTEREST OF TIME, NO CROSS.

12        THE COURT:  OKAY.  MAY THIS WITNESS BE

13   EXCUSED AND IS IT SUBJECT TO RECALL?

14        MR. MUELLER:  NOT SUBJECT TO RECALL.

15   THANK YOU, YOUR HONOR.

16        THE COURT:  OKAY.  THEN YOU ARE EXCUSED.

17   CALL YOUR NEXT WITNESS, PLEASE.

18        MR. LEE:  YOUR HONOR, THE NEXT THING

19   WE'RE GOING TO DO IS PLAY A DEPOSITION CLIP OF

20   MR. AHN, AND WE HAVE A BOARD THAT HAS HIS TITLE AND

21   NAME FOR THE JURY.

22        THE COURT:  OKAY.

23        MR. LEE:  AND IF I CAN JUST HAVE A

24   MINUTE, WE'RE TRYING TO -- WE'VE SHORTENED IT A

25   LITTLE, AND I WANT TO MAKE SURE I HAVE THE

```
 1     SHORTENED VERSION.

 2               THE COURT:  OKAY.

 3               (PAUSE IN PROCEEDINGS.)

 4               MR. MUELLER:  YOUR HONOR, MAY I LODGE

 5     THIS.

 6               THE COURT:  YES, THAT IS THE --

 7               MR. MUELLER:  THIS IS THE AHN TESTIMONY.

 8               THE COURT:  OH, OKAY.  SO WHAT'S THE

 9     NUMBER?

10               MR. MUELLER:  THIS IS, I'M NOT SURE.

11     IT'S 218, PLAINTIFF'S EXHIBIT 218, YOUR HONOR.

12               THE COURT:  OKAY.  218.  ALL RIGHT.

13     THAT'S LODGED.

14               MR. MUELLER:  MAY I HAND IT UP, YOUR

15     HONOR.

16               THE COURT:  YES.

17               MR. LEE:  AND YOUR HONOR, WE JUST PUT UP

18     A PLACARD THAT SAYS THAT DR. AHN IS THE HEAD OF THE

19     I.P. CENTER OF SAMSUNG ELECTRONICS.  I THINK WE'RE

20     READY.

21               THE COURT:  11:48.  PLEASE GO.

22               (WHEREUPON, THE VIDEOTAPED DEPOSITION OF

23     SEUNG-HO AHN WAS PLAYED IN OPEN COURT OFF THE

24     RECORD.)

25               MR. LEE:  YOUR HONOR, THAT COMPLETES THE
```

```
 1    CLIP.  AND THE NEXT THING WE'LL DO IS SHOW ANOTHER

 2    DEPOSITION CLIP OF MR. LEE FROM SAMSUNG.

 3              THE COURT:  OKAY.

 4              MR. LEE:  I'M GOING TO LODGE PX 219,

 5    WHICH IS THE TRANSCRIPT OF THE CLIP.  IT'S FOR

 6    MR. JUN, J-U-N, WON, W-O-N, LEE.

 7              THE COURT:  ALL RIGHT.  THE DEPO ENDED AT

 8    11:54.  AND THIS IS PX 219?

 9              MR. LEE:  YES, YOUR HONOR.

10              THE COURT:  MS. MAROULIS, DO YOU ONE OUR

11    COPY?

12              MS. MAROULIS:  THAT'S FINE.  I KNOW WHAT

13    THEY PREVIOUSLY DESIGNATED.

14              THE COURT:  OKAY.  WHAT'S THE PROBLEM?

15    WHAT'S GOING ON HERE?

16              MR. LEE:  I JUST WANT TO MAKE SURE WE

17    HAVE THE RIGHT NAME.

18              THE COURT:  OH.

19              MR. LEE:  WHY DON'T WE PLAY THE CLIP.

20    THE NAME IS ON THE SCREEN ANYWAY.

21              THE COURT:  OKAY.  11:55.

22              **(WHEREUPON, THE VIDEOTAPED DEPOSITION OF**

23    **JUN WON LEE WAS PLAYED IN OPEN COURT OFF THE**

24    **RECORD.)**

25              THE COURT:  ALL RIGHT.  IT'S 12:04.
```

```
 1                 I THINK WE SHOULD PROBABLY TAKE OUR LUNCH

 2     BREAK.

 3                 MR. LEE:  I AGREE.

 4                 THE COURT:  OKAY.  IT IS 12:04, AND WE

 5     ACTUALLY -- I HAVE TO TALK WITH THE ATTORNEYS, BUT

 6     YOU WILL PROBABLY BE LEAVING EARLY TODAY BECAUSE

 7     WE'RE PROBABLY DOWN TO LESS THAN TWO HOURS OF TIME

 8     LEFT.  OKAY?  JUST FOR YOUR OWN PLANNING FOR TODAY,

 9     THERE COULD BE SOMETHING UNEXPECTED, BUT I THINK

10     YOU'LL BE LEAVING EARLY.

11                 SO, AGAIN, PLEASE KEEP AN OPEN MIND.  DO

12     NOT DO ANY RESEARCH.  PLEASE DO NOT DISCUSS THE

13     CASE WITH ANYONE.  PLEASE DON'T READ ANYTHING ABOUT

14     THE CASE.

15                 ALL RIGHT.  THANK YOU.

16                 IF YOU WOULD GO AHEAD AND LEAVE YOUR

17     JUROR BOOKS IN THE JURY ROOM.

18                 (WHEREUPON, THE FOLLOWING PROCEEDINGS

19     WERE HELD OUT OF THE PRESENCE OF THE JURY:)

20                 THE COURT:  OKAY.  PLEASE TAKE A SEAT.

21                 THE RECORD SHOULD REFLECT THE JURORS HAVE

22     LEFT THE COURTROOM.

23                 LET ME JUST GIVE YOU YOUR TIME LIMITS.

24     APPLE HAS USED 23 HOURS AND 31 MINUTES, SO YOU HAVE

25     AN HOUR AND 29 MINUTES LEFT.
```

7550

```
 1              SAMSUNG HAS USED 24 HOURS AND 34 MINUTES.

 2   SO YOU HAVE 26 MINUTES LEFT.  SO I'M NOT GOING TO

 3   GIVE YOU THE 25 MINUTE.  IT JUST MIGHT DISRUPT THE

 4   PROCEEDINGS.

 5              OKAY.  SO THAT'S IT FOR TIME.

 6              LET ME ASK, ARE WE GOING TO HAVE ANOTHER

 7   ROUND OF RULE 50 MOTIONS AFTER APPLE RESTS, OR HOW

 8   DO YOU WANT TO PROCEED TODAY?

 9              MR. VERHOEVEN:  WHATEVER YOUR HONOR

10   WANTS, BUT I THOUGHT THAT WHAT WE'D WORKED OUT WITH

11   THE PROCEDURE, WE COULD DEAL WITH THAT ON MONDAY,

12   AND THAT NO ONE WOULD ARGUE THAT THERE WILL BE A

13   WAIVER.

14              IF YOU WOULD LIKE THAT, TO DO IT ORALLY

15   ON MONDAY AND DO ANOTHER ONE ON MONDAY, WE CAN DO

16   THAT, TOO.

17              THE COURT:  WELL, HOW EXTENSIVE IS THE

18   ONE AFTER APPLE RESTS?  BECAUSE I DON'T WANT TO

19   REHASH, REALLY, ANYTHING THAT WE'VE ALREADY COVERED

20   IN THE FIRST TWO ROUNDS OF RULE 50 MOTION.  I'M

21   ASSUMING IT'S MORE GOING TO BE ON APPLE'S

22   AFFIRMATIVE DEFENSES.

23              MR. VERHOEVEN:  THAT'S RIGHT, YOUR HONOR.

24   WE MIGHT SAY SOMETHING LIKE "WE AGAIN ASSERT WHAT

25   WE ASSERTED PREVIOUSLY."
```

```
 1    WHAT IT IS AND WHY IT'S NOT MISLEADING.

 2              THE COURT:  GO AHEAD.  IT'S OVERRULED.

 3    BY MS. KREVANS:

 4    Q    WHAT'S ON THE LEFT, MR. BRESSLER?

 5    A    WHAT'S ON THE LEFT IS THE SIDE VIEW DEPICTING

 6    CLEARLY THE VISUAL REPRESENTATION OF THE BEZEL THAT

 7    IS ON THE FRONT OF THE '087 PATENT.

 8    Q    WHAT'S ON THE RIGHT?

 9    A    WHAT IS ON THE RIGHT IS THE SAME VIEW THAT I

10    SHOWED YOU JUST A MOMENT AGO.  HOWEVER, I'VE MOVED

11    THE COVER OFF THE FACE OF THE UNIT SO THAT YOU CAN

12    SEE THE LINES THAT DEPICT THE UNIT.

13    Q    SO LET'S JUST GO BACK --

14              MR. VERHOEVEN:  I OBJECT TO THAT QUESTION

15    AND ANSWER AS MISLEADING.  THE WITNESS IS

16    MANIPULATING THE IMAGE, YOUR HONOR.

17              THE COURT:  OVERRULED.

18              YOU WILL HAVE TIME TO CROSS.

19              GO AHEAD.

20    BY MS. KREVANS:

21    Q    LET'S GO BACK TO THE PREVIOUS SLIDE SO THIS IS

22    CLEAR TO THE JURY, MR. BRESSLER.  26.82, PLEASE.

23              COULD YOU EXPLAIN TO US HOW 26.82 RELATES

24    TO 26.85, THE SLIDE YOU JUST SHOWED?

25    A    YES.  AS YOU'LL RECALL FROM THE INITIAL SLIDE,
```

7595

```
 1    THERE ARE TWO PIECES.  ONE IS THE UNIT ITSELF,

 2    WHICH YOU SEE THE ARROW POINTING TO A DEVICE.  THE

 3    OTHER IS A TRANSPARENT COVER, WHICH THAT OUTSIDE

 4    LINE REPRESENTS.

 5    Q    LET'S GO BACK TO 26.85.  WHICH IS THE DEVICE,

 6    WHICH IS THE COVER, MR. BRESSLER?

 7    A    THE COVER IS THE PARALLEL LINES, SIMPLY MOVED

 8    AWAY FROM THE SIDE VIEW OF THE DEVICE, SO THAT -- I

 9    WISH I HAD A POINTER, THE -- THE -- THAT'S THE --

10    OKAY, THAT'S THE COVER.

11           THE RIGHT-HAND LINE ON THE DEVICE IS THE

12    FRONT FACE OF THE DEVICE, AS IT WAS IN THE SLIDE

13    BEFORE.

14           AND IF, IN FACT, IT HAD A BEZEL AS THE

15    '087 DOES, YOU WOULD SEE A SECOND LINE OFFSET TO

16    THE LEFT OF THAT RIGHT-HAND FACE, AND, THEREFORE,

17    AS A SIGNER OF ORDINARY SKILL IN THE ART, I READ

18    THIS AS NOT HAVING A BEZEL, BUT, IN FACT, HAVING A

19    CURVATURE THAT GOES FROM THE FRONT TO THE SIDE.

20           MS. KREVANS:  OKAY.  YOUR HONOR, MAY I

21    GIVE THE WITNESS A POINTER?

22           THE COURT:  THAT'S FINE.  GO AHEAD,

23    PLEASE.

24    BY MS. KREVANS:

25    Q    AND COULD WE PUT BACK UP SLIDE 26 -- PDX
```

7596

```
 1    26.78.

 2    A     THANK YOU.

 3    Q     ON THE RIGHT SIDE OF 26.78, MR. BRESSLER, YOU

 4    TOLD US THAT NOW WE'RE LOOKING AT JUST THE

 5    ELECTRONIC DEVICE?

 6    A     CORRECT.

 7    Q     NO COVER?

 8    A     CORRECT.

 9    Q     COULD YOU EXPLAIN TO US WHAT THOSE TWO

10    PARALLEL LINES ON THE FRONT THAT YOU IDENTIFIED

11    EARLIER REPRESENT?

12    A     YES.  AND I'M GOING TO REST THE POINTER ON

13    HERE SO IT DOESN'T BOUNCE AROUND TOO MUCH.

14          THIS LINE, THE ONE THAT GOES DIRECTLY

15    AROUND THE FACE, AND THIS LINE, THE ONE THAT IS

16    OFFSET BEHIND IT -- I'M SORRY I'M BOUNCING --

17    OFFSET BEHIND IT ARE SHOWING THE EXTENTS OF THE

18    CURVATURE THAT GOES FROM THE SIDE TO THE FACE.

19          I CAN EVEN SHOW ANOTHER EXAMPLE THAT I

20    BROUGHT IF YOU WISH.

21    Q     OKAY.  WHAT ARE YOU HOLDING IN YOUR HAND,

22    MR. BRESSLER?

23    A     THIS IS A PENCIL CUP FROM MY OFFICE.

24          MR. VERHOEVEN:  YOUR HONOR, WE'VE NEVER

25    SEEN THIS BEFORE.
```

```
 1              MS. KREVANS:  WE DISCLOSED IT, YOUR

 2    HONOR, AS A DEMONSTRATIVE.

 3              MR. VERHOEVEN:  IT'S NOT IN HIS EXPERT

 4    REPORT OR IN DISCOVERY.

 5              MS. KREVANS:  IT JUST ILLUSTRATES A

 6    CURVE.  IF YOU WON'T ALLOW IT, I'LL MOVE ON.

 7              THE COURT:  ALL RIGHT.  MOVE ON, PLEASE.

 8    SUSTAINED.

 9    BY MS. KREVANS:

10    Q    COULD YOU TURN TO ANOTHER PIECE OF ART THAT

11    MR. SHERMAN TESTIFIED ABOUT, THE '638 PATENT.

12              AND COULD WE SEE PDX 26.87.

13    A    IF I MAY ABOUT THE LAST QUESTION?

14    Q    WE'RE GOING TO -- WE'RE ON A CLOCK,

15    MR. BRESSLER.

16    A    I'M SORRY.

17    Q    I ONLY HAVE SO MUCH TIME WITH YOU, SO WE HAVE

18    TO MAKE SURE WE COVER EVERYTHING.

19              ON THE JP 683 PATENT, 26.87, COULD YOU

20    PLEASE SUMMARIZE FOR THE JURY THE DIFFERENCES

21    BETWEEN THIS DESIGN AND THE '677 AND '087 PATENTS?

22    A    YES.  I BELIEVE THE '638 PATENT IS

23    SUBSTANTIALLY DIFFERENT FROM EITHER OF THOSE TWO

24    PATENTS MOST DRAMATICALLY BECAUSE THE FRONT FACE IS

25    NOT FLAT, WHICH CREATES AN EXTRAORDINARILY
```

```
 1    DIFFERENT OVERALL IMPRESSION.

 2               IN ADDITION TO THAT, IT IS NOT DRAWN

 3    DEPICTING A TRANSPARENT FACE AROUND THE DISPLAY,

 4    NOR IS IT DEPICTING BLACK.

 5               THERE IS A SMALLER SPEAKER SLOT THAT IS

 6    UP AT THE VERY TOP EDGE, WHICH IS NOT CERTAINLY THE

 7    SAME.

 8               AND THE FRAME AROUND IT IS A TAPE PERKED

 9    ENCLOSURE THAT IS THINNER AT THE TOP AND AT THE

10    BOTTOM THAN IT IS PRESENTING WIDER WHERE THE

11    DISPLAY IS PROTRUDING FROM THE FRONT.

12    Q    CAN WE SEE 26.92.

13    A    THIS --

14    Q    WHAT IS THIS, MR. BRESSLER?

15    A    THIS, I THINK, MAKES A CLEARER UNDERSTANDING

16    OF THE SIDE, WHICH IS THE SIDE VIEW DIRECTLY FROM

17    THE PATENT COMPARED TO A SIDE VIEW FROM THE '087,

18    AND THESE ARE BOTH THE FRONT FACES FACING EACH

19    OTHER, I THINK YOU CAN SEE WHERE THE ARROWS ARE,

20    THAT THE FRONT FACE OF THE '638 VERY CLEARLY BENDS

21    BACK AWAY FROM THE DISPLAY TOWARD THE BACK OF THE

22    PHONE.

23    Q    DO YOU AGREE --

24    A    SO IT'S DEFINITELY NOT FLAT.

25    Q    DO YOU AGREE WITH MR. SHERMAN THAT THE FACT
```

```
1    THAT THE FRONT FACE OF THE '638 DESIGN THAT WE'RE

2    LOOKING AT IS NOT FLAT IS A RELATIVELY MINOR

3    DIFFERENCE?

4    A    NO.  I BELIEVE THE EFFORT THAT IT TAKES TO

5    DESIGN A PHONE TO HAVE THE PARTICULAR APPEARANCE,

6    THAT THAT RAISED DISPLAY WOULD PROVIDE, IS

7    SIGNIFICANTLY DIFFERENT FROM THAT OF A FULLY FLAT

8    FACE SURFACE AND NOT BE CHANGED LIGHTLY.

9    Q    COULD WE LOOK AT THE THIRD PATENT THAT

10   MR. SHERMAN TALKED ABOUT, THE KR'547, WHICH IS PDX

11   46.7.  AND COULD WE SEE SLIDE 26.94.

12        COULD YOU SUMMARIZE FOR THE JURY THE

13   DIFFERENCES THAT AN ORDINARY OBSERVER OR PERSON OF

14   ORDINARY SKILL WOULD SEE BETWEEN THE '547 PATENT

15   AND THE DESIGNS OF THE '087 AND '677 PATENTS?

16   A    YES.  YES, THIS IS A THREE-QUARTER ERICSSON

17   QUARTER VIEW FROM THE PATENT AND WHAT IT DEPICTS IS

18   THE FRONT FACE OF A DEVICE THAT IS NOT BLACK, IT IS

19   NOT SPECIFIED TO BE TRANSPARENT ANYWHERE BUT IN THE

20   DISPLAY.  THERE IS A -- IT HAPPENS TO HAVE A SQUARE

21   FORM FACTOR AND POINTIER CORNERS, BUT MORE TELLING

22   IS IT HAS CONCENTRIC RINGS THAT GO TO A BAND OR A

23   BELT LINE THAT GO AROUND IT, AND IT HAS A SMALLER

24   DISPLAY WHICH, THEREFORE, HAS WIDER BORDERS WHICH

25   PROVIDES A VERY DIFFERENT OVERALL IMPRESSION THAN
```

7600

1    THE BORDERS -- THAN THE NARROWER FIXED BORDERS AND

2    THE ALMOST FULL-FACED DISPLAY OF THE '677 AND THE

3    '087.

4    Q    LET'S TALK ABOUT THE LAST PHONE DESIGN THAT

5    MR. SHERMAN TALKED ABOUT.  HE TALKED ABOUT THIS ONE

6    ONLY WITH RESPECT TO THE '677, AND THAT IS THE LG

7    PRADA PHONE.  IT'S JX 1093, AND I THINK YOU HAVE IT

8    UP THERE.

9         IF WE CAN PUT UP 26.95, PLEASE, MR. LEE.

10   WE HAVE THE PICTURE, BUT YOU HAVE THE ACTUAL PHONE

11   THERE, MR. BRESSLER.  HOLD IT UP SO THE JURY CAN

12   SEE.  AND COULD YOU TELL THE JURY WHAT DIFFERENCES

13   AN ORDINARY PERSON IN THIS FIELD WOULD SEE BETWEEN

14   THE PRADA DESIGN AND THE '677 PATENT DESIGN?

15   A    I THINK THAT AN ORDINARY PERSON AND A DESIGNER

16   OF NORMAL SKILL WOULD NOTICE THAT THE LENGTH AND

17   WIDTH ARE IN DIFFERENT PROPORTION, I.E., IT'S

18   LONGER AND NARROWER.

19        THEY WOULD NOTICE THAT THE DISPLAY IS

20   SMALL WITH WIDER BORDERS AND THERE GIVES A

21   DIFFERENT ALL OVER IMPRESSION.  AND IT'S NOT

22   CENTERED.

23        AND THEN THEY WOULD NOTICE, PROBABLY

24   FIRST, THEY WOULD NOTICE THAT THERE'S A VERY LARGE

25   KEY TRAVERSING THE BOTTOM OF THE FACE, THEREFORE,

1    IT DOESN'T HAVE A CONTINUOUS SURFACE EDGE TO EDGE.

2    Q    IN YOUR OPINION, DO ANY OF THE FOUR ITEMS WE

3    JUST DISCUSSED, THESE FOUR PHONE DESIGNS, PROVIDE

4    AN OVERALL APPEARANCE THAT IS BASICALLY THE SAME AS

5    THE '087 OR '677 DESIGN?

6    A    NO, I BELIEVE THEY DO NOT.

7    Q    IN YOUR OPINION, ARE ANY OF THESE FOUR ITEMS A

8    DESIGN THAT COULD BE CONSIDERED A PRIMARY

9    REFERENCE, AS YOU UNDERSTAND THE TEST, FOR PURPOSES

10   OF ASSESSING OBVIOUSNESS OF THE '087 OR '677

11   PATENT?

12           MR. VERHOEVEN:  OBJECTION.  LEADING.

13           THE COURT:  OVERRULED.

14           GO AHEAD.

15           THE WITNESS:  NO.  I BELIEVE THAT THESE

16   ARE DIFFERENT ENOUGH FROM THE PATENTS THAT THEY

17   COULD NOT BE USED AS A PRIMARY REFERENCE IN AN

18   OBVIOUSNESS EVALUATION.

19   BY MS. KREVANS:

20   Q    IN YOUR OPINION, COULD ANY OF THESE FOUR PHONE

21   DESIGNS BE COMBINED WITH ANOTHER ONE OF THE FOUR,

22   UNDER THE PROPER LEGAL TEST, TO RENDER EITHER THE

23   '087 PATENT OR THE '677 PATENT OBVIOUS?

24   A    THE LEGAL TEST SUGGESTS YOU HAVE TO HAVE A

25   PRIMARY REFERENCE TO USE, AND AS A RESULT, YOU

```
1    CAN'T COMBINE THEM.

2              BUT ON TOP OF THAT, THEY BOTH LOOK SO

3    DIFFERENT FROM ONE AUTO AND FROM THE PATENT THAT

4    I'M NOT SURE WHERE I WOULD START TO COMBINE THEM.

5    Q    COULD WE SEE PDX 26.96.  DO YOU RECALL

6    MR. SHERMAN TESTIFYING THAT HE FOUND THAT SEVEN

7    DESIGN FEATURES OF THE APPLE PATENTS WERE, IN HIS

8    WORD, FUNCTIONAL?

9    A    YES.

10   Q    I'VE SET THE SEVEN OF THEM OUT ON THIS SLIDE.

11   IN YOUR OPINION, ARE ANY OF THESE ELEMENTS OF ANY

12   OF THE APPLE DESIGN PATENTS DICTATED BY FUNCTION?

13   A    I DO NOT BELIEVE ANY OF THESE ARE DICTATED BY

14   FUNCTION AS THEY ARE REPRESENTED IN THE DESIGNS.

15   Q    BRIEFLY, AGAIN, CAN YOU TELL US WHY NOT?

16   A    BECAUSE THERE ARE ALTERNATIVE DESIGNS

17   AVAILABLE FOR EVERY ONE OF THESE ITEMS IN PRODUCTS

18   ON THE MARKET, AND, FRANKLY, IN PRIOR ART.

19   Q    OKAY.  I WANT YOU TO STEP BACK FOR A MOMENT,

20   MR. BRESSLER.  PUT YOURSELF BACK IN 2007.

21             WHAT WAS YOUR REACTION WHEN YOU FIRST SAW

22   THE DESIGN OF THE IPHONE IN 2007?

23             MR. VERHOEVEN:  OBJECTION, YOUR HONOR.

24   THAT'S OUTSIDE OF SCOPE OF HIS REPORT.  THAT'S NOT

25   IN HIS REPORT AT ALL.
```

```
 1              MS. KREVANS:  YOUR HONOR, IT'S HIS

 2    ASSESSMENT OF THE DESIGN AS A DESIGNER.

 3              THE COURT:  OVERRULED.

 4              THE WITNESS:  I, FRANKLY, WAS SURPRISED

 5    AT HOW BEAUTIFUL OF A DESIGN I THOUGHT IT WAS, AND

 6    AS A DESIGNER, FRANKLY, WAS ENVIOUS THAT I HADN'T

 7    DESIGNED IT.

 8    BY MS. KREVANS:

 9    Q    DID YOU, IN CONNECTION WITH YOUR REPORT,

10    INVESTIGATE THE REACTION OF THE GENERAL PUBLIC AND

11    REVIEWERS OF PUBLIC IN THIS CASE DEVICES TO THE

12    DESIGN OF THE IPHONE WHEN IT CAME OUT IN 2007.

13    A    YES.

14              MR. VERHOEVEN:  OBJECTION, RELEVANCE.

15              MS. KREVANS:  SECONDARY CONSIDERATION,

16    YOUR HONOR.

17              THE COURT:  YOU HAD OVERRULED.

18              THE WITNESS:  I FOUND A LARGE NUMBER OF

19    MAGAZINE ARTICLES, PRINT ARTICLES, AWARDS THAT WERE

20    PRESENTED, A HUGE AMOUNT OF CLAIMS, YOU MIGHT EVEN

21    CALL A CLAIMER.

22    BY MS. KREVANS:

23    Q    AND HOW, IF AT ALL, MR. BRESSLER, DOES THAT

24    RELATE TO YOUR VIEW THAT THE DESIGNS OF THE IPHONE

25    PATENTS ARE NOT OBVIOUS?
```

7608

```
1    A    IN MY EXPERIENCE AS A DESIGNER, A DESIGN

2    COMING OUT DOESN'T HAVE THAT KIND OF IMPACT UNLESS

3    IT'S TRULY UNIQUE AND NOT OBVIOUS.

4              MS. KREVANS:  NOTHING FURTHER, YOUR

5    HONOR.

6              THE COURT:  ALL RIGHT.  THE TIME IS NOW

7    2:13.  GO AHEAD, PLEASE.

8              MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

9              CAN WE PUT UP SDX 3927.001.

10                   CROSS-EXAMINATION

11   BY MR. VERHOEVEN:

12   Q    THIS IS A SLIDE WE LOOKED AT EARLIER WHEN I

13   WAS CROSS-EXAMINING YOU?

14             MS. KREVANS:  OBJECTION, YOUR HONOR.

15             MR. VERHOEVEN:  YOUR HONOR, IF WE'RE

16   GOING TO HAVE OBJECTIONS TO A SLIDE THAT'S ALREADY

17   BEEN USED AND TAKING MY TIME.

18             THE COURT:  GO AHEAD, OVERRULED.

19             MS. KREVANS:  YOUR HONOR, IF I MAY --

20             MR. VERHOEVEN:  CAN THIS GO OUT OF THEIR

21   TIME, YOUR HONOR.

22             THE COURT:  OVERRULED.  GO, PLEASE.

23             MR. VERHOEVEN:  THANK YOU.

24   Q    THIS IS A SLIDE I ASKED YOU ABOUT LAST TIME

25   YOU TESTIFIED; RIGHT?
```

1    A    CORRECT.

2    Q    AND ON THE LEFT WE HAVE THESE PRIOR ART

3    REFERENCES AND WE HAVE THE LG PRADA, DO YOU SEE

4    THAT?

5    A    I SEE THAT.

6    Q    ALL THESE PRIOR ART DEVICES HAVE A RECTANGULAR

7    SHAPE WITH ROUNDED CORNERS; RIGHT?

8    A    THAT'S WHAT I SAID LAST TIME, USE.

9    Q    THE USE OF A RECTANGULAR SHAPE WITH ROUNDED

10   CORNERS FOR AN ELECTRONIC DEVICE, THAT'S NOT

11   SOMETHING APPLE OWNS, IS IT, SIR?

12   A    THAT GENERAL DESCRIPTION CERTAINLY IS NOT.

13   THE SPECIFIC DESIGN THAT THEY PRODUCED IS.

14   Q    THAT ELEMENT IS NOT SOMETHING THAT APPLE OWNS,

15   IS IT, SIR?

16   A    I'M NOT SURE I UNDERSTAND THE QUESTION.

17   Q    RECTANGULAR SHAPE WITH ROUNDED CORNERS, DOES

18   APPLE OWN THAT?

19   A    APPLE OWNS A -- THE DESIGN OF THE PHONE WITH A

20   RECTANGULAR SHAPE AS DEPICTED IN THEIR PATENT WITH

21   ROUNDED CORNERS.

22   Q    CAN WE PLAY MR. BRESSLER'S APRIL 24TH, 2000

23   TELEPHONE DEPOSITION, PAGE 176, LINES 18 THROUGH

24   85.

25            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

1    OPEN COURT OFF THE RECORD.)

2    BY MR. VERHOEVEN:

3    Q    AND THE USE OF A LARGE -- GO BACK TO THE

4    SLIDE, PLEASE.  EACH OF THESE HAS A LARGE DISPLAY

5    SCREEN; RIGHT?

6    A    THEY'RE DIFFERENT SIZES.

7    Q    BUT THEY'RE ALL LARGE DISPLAY SCREENS, AREN'T

8    THEY, SIR?

9    A    COMPARED TO WHAT?

10   Q    YOU DON'T CONCEDE THESE ARE LARGE DISPLAY

11   SCREENS?

12   A    I WOULD SAY SOME OF THEM ARE LARGE AND SOME OF

13   THEM ARE NOT, YES.

14   Q    WHICH ONE IS NOT LARGE?

15   A    THE 547 I DO NOT BELIEVE IS AS LARGE AS THE

16   '087.

17   Q    OKAY.  SO THESE THREE AT LEAST YOU'LL AGREE

18   ARE LARGE, THE JP'638, JP'383, AND THE LG PRADA?

19   A    THEY ARE LARGE RELATIVE TO THE DESIGNS THEY'RE

20   IN, YES.

21   Q    THE USE OF A LARGE DISPLAY SCREEN ON AN

22   ELECTRONIC DEVICE IS NOT SOMETHING THAT'S

23   PROPRIETARY TO APPLE, IS IT, SIR?

24   A    I'M SORRY.  THE WAY YOU'RE ASKING THAT

25   QUESTION IS NOT APPROPRIATE TO THE EVALUATION I

1    DID.

2    Q    LET'S PLAY YOUR DEPOSITION, APRIL 24TH, 2012,

3    PAGE 177, LINES 1 THROUGH 5.

4         (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. VERHOEVEN:

7    Q    NOW, THAT WAS TRUE TESTIMONY WHEN YOU GAVE IT

8    AT YOUR DEPOSITION, WASN'T IT, SIR?

9    A    AS I UNDERSTAND THE QUESTIONS AT THE TIME,

10   YES.

11   Q    NOW, WHEN YOU'RE LOOKING AT THE '889 PATENT,

12   THE TABLET DESIGN PATENT -- ARE YOU WITH ME?

13   A    I AM.

14   Q    YOU NOTICED A LOT OF LITTLE DIFFERENCES;

15   RIGHT?

16   A    A LOT OF LITTLE DIFFERENCES OF WHAT?

17   Q    IN THE FIDLER TABLET VERSUS THE '889?

18   A    I THOUGHT THEY WERE SUBSTANTIAL DIFFERENCES.

19   Q    AND, IN FACT, WHEN YOU COMPARED THE '888 TO

20   THE INITIAL IPAD, IT WAS YOUR BELIEF IT'S NOT AN

21   EMBODIMENT, RIGHT?

22   A    BECAUSE OF THE SHAPE.

23   Q    SO YOU DIDN'T THINK IT WAS AN EMBODIMENT OF

24   THE '889 PATENT; RIGHT?

25   A    THAT REALLY HAS NOT BEEN PART OF MY

1    EVALUATION.

2    Q    IS THAT YOUR OPINION?

3    A    NO.

4    Q    OKAY.  LET'S PLAY FROM YOUR DEPOSITION, APRIL

5    24TH, 2012, PAGE 121, LINES 6 THROUGH 13.

6              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

7    OPEN COURT OFF THE RECORD.)

8              MR. VERHOEVEN:  I'LL JUST READ IT, BUT I

9    DON'T THINK THEY WOULD SEE THEM AS BEING

10   SUBSTANTIALLY THE SAME.

11   Q    YOU SAID THAT, RIGHT, IN ANSWER TO THAT

12   QUESTION AT YOUR DEPOSITION?

13   A    I DID.  AND I SAID THE WORD SIGNIFICANT

14   SIMILARITIES.

15   Q    BUT DID YOU NOT THINK THEY WERE SUBSTANTIALLY

16   THE SAME.  WAS THAT A MISTAKE AT YOUR DEPOSITION?

17   A    NO, THAT'S WHAT I SAID.

18   Q    OKAY.  AND YOU STAND BY IT?

19   A    I BELIEVE THAT THE BACK OF THE ORIGINAL IPAD

20   DOES NOT HAVE THE SAME SHAPES THAT THE '889

21   SUGGESTS.

22   Q    YOU AGREE THAT YOU APPLIED THE SAME TEST FOR

23   INVALIDITY AS YOU APPLY FOR INFRINGEMENT, YOU APPLY

24   THE ORDINARY OBSERVER TEST; RIGHT, SIR?

25   A    I APPLIED THE ORDINARY OBSERVER TEST, IF, IN

```
1    FACT, I FOUND IN THE CONSTRUCTIONS THAT AS A

2    DESIGNER OF THE ORDINARY SKILL I FELT WERE CLOSE TO

3    OR PRIMARY REFERENCES FOR THE PATENTS, AND I --

4    Q    SO IF?

5    A    I DON'T BELIEVE ANY OF THEM ARE.

6    Q    IF LITTLE DETAILS LIKE THE BEZEL WIDTH OR THE

7    LOCATION OF THE SPEAKER ARE IMPORTANT FOR

8    INVALIDITY, THEY'RE JUST AS IMPORTANT FOR

9    NON-INFRINGEMENT, AREN'T THEY, SIR?

10   A    YES.  BUT I BELIEVE IT ALL COMES DOWN TO THE

11   OVERALL IMPRESSION.

12              MR. VERHOEVEN:  THANK YOU, SIR.

13              PASS THE WITNESS.

14              THE COURT:  ALL RIGHT.  2:18.

15              MS. KREVANS:  NO REDIRECT YOUR HONOR.

16              THE COURT:  ALL RIGHT.  IS THIS WITNESS

17   EXCUSED AND NOT SUBJECT TO RECALL.

18              MS. KREVANS:  HE IS EXCUSED AND NOT

19   SUBJECT TO RECALL.

20              THE COURT:  ALL RIGHT.  YOU ARE EXCUSED.

21              THE WITNESS:  THANK YOU.

22              THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

23                        KARAN SINGH,

24   BEING CALLED AS A WITNESS ON BEHALF OF THE

25   PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS
```

7614

```
 1    EXAMINED AND TESTIFIED AS FOLLOWS:

 2              THE WITNESS:  I DO.

 3              THE CLERK:  THANK YOU.  PLEASE BE SEATED.

 4              MR. JACOBS:  YOUR HONOR, APPLE CALLS DR.

 5    KARAN SINGH IN REBUTTAL.

 6              THE COURT:  OKAY.  TIME IS 2:18.  GO

 7    AHEAD, PLEASE.

 8                    DIRECT EXAMINATION

 9    BY MR. JACOBS:

10    Q    WELCOME BACK, DR. SINGH.  THE JURY HEARD

11    WEDNESDAY FROM A MR. GRAY ON BEHALF OF SAMSUNG THAT

12    LAUNCHTILE AND AGNETTA, A PATENT WITH AGNETTA AS

13    THE INVENTOR, EACH OF THEM SEPARATELY ANTICIPATE

14    CLAIM 50 OF THE '163 PATENT.

15              ARE YOU AWARE OF THAT TESTIMONY?

16    A    SURE.  I WAS IN COURT.  I READ HIS TRANSCRIPT.

17    I SAW THE SLIDES.

18    Q    DO YOU AGREE WITH MR. GRAY?

19    A    NO, I DO NOT.

20    Q    AND BEFORE WE GET INTO THE DETAILS, LET'S TAKE

21    KIND OF A HIGH LEVEL LOOK AT THIS.  ARE CLAIM 50 OF

22    THE '163 PATENT ON ONE HAND AND LAUNCHTILE AND

23    AGNETTA, THE REFERENCES MR. GRAY TALKED ABOUT, ARE

24    THEY EVEN DIRECTED TO THE SAME PROBLEM?

25    A    NO, NOT AT ALL.  ONE, THE '163 DEALS WITH
```

1    FACILITATING THE NAVIGATION AND READABILITY OF THE

2    STRUCTURED ELECTRONIC DOCUMENTS, LIKE WEB PAGES.

3    IF WE LOOK AT THE VIDEO OF THE '163 ON THE APPLE

4    IPHONE AGAIN, YOU SEE TAPPING ON BOXES.

5              AND THEN THIS ENTIRE DOCUMENT BEING

6    ENLARGED AND CENTERED TO IMPROVE THE READABILITY OF

7    THAT DOCUMENT.

8              LAUNCHTILE AND AGNETTA, ON THE OTHER

9    HAND, DEAL WITH A COMPLETELY DIFFERENT PROBLEM,

10   WHICH IS INTERACTING WITH AND LAUNCHING APPLICATION

11   ICONS, SORT OF LIKE THE APPLICATION ICONS FOR

12   LAUNCHING PROGRAMS THAT YOU SEE ON A COMPUTER DESK

13   TOP.

14   Q    SO DO LAUNCHTILE AND AGNETTA ENLARGE AND

15   TRANSLATE A STRUCTURED ELECTRONIC DOCUMENT?

16   A    NO, NOT AT ALL.  AND CERTAINLY NOT THE WAY THE

17   '163 TALKS ABOUT.  THEY ESSENTIALLY REPLACE THE

18   CONCEPT.  THEY PROVIDE DIFFERENT CONTENT.

19   Q    SO DO -- DOES LAUNCHTILE DISCLOSE INSTRUCTIONS

20   FOR DISPLAYING AT LEAST A PORTION OF A STRUCTURED

21   ELECTRONIC DOCUMENT?

22   A    UM --

23   Q    CAN WE HAVE PDX 29.29, PLEASE?

24   A    NO, THEY DON'T.  JUST LOOKING AT THE CLAIM

25   ELEMENTS OVER HERE, LAUNCHTILE, AND AGNETTA,

1    BASICALLY ARE A COLLECTION OF APPLICATION TILES.

2    ARBITRARILY GROUPING THEY WILL TOGETHER AND CALLING

3    THEM -- YOU CAN'T CONSTRUE THEM AS A SINGLE

4    DOCUMENT AS SUCH.

5    Q    AND DOES -- AND HOW ABOUT THOSE REFERENCES AS

6    AGAINST ELEMENT H?  DO THEY HAVE INSTRUCTIONS FOR

7    ENLARGING AND TRANSLATING?

8    A    WELL, FIRSTLY --

9              MR. DEFRANCO:  OBJECTION, YOUR HONOR.  I

10   KNOW TIME IS SHORT, BUT WE'RE LEADING.

11             MR. JACOBS:  THAT'S NOT LEADING, YOUR

12   HONOR.  I'M ASKING WHETHER THEY HAVE THAT.

13             THE COURT:  OVERRULED.  GO AHEAD.

14             THE WITNESS:  WELL, CLEARLY, THERE IS NO

15   STRUCTURED ELECTRONIC DOCUMENT, SO CLAIM H IS NOT

16   MET.

17             BUT EVEN IF YOU WILL ASSUME THAT THERE IS

18   SOME KIND OF A STRUCTURED ELECTRONIC DOCUMENT, AS

19   YOU WILL SEE IN THIS VIDEO, IF WE PLAY A VIDEO OF

20   THE LAUNCHTILE APPLICATION, THIS APPLICATION, YOU

21   LOOK AT THESE 36 TILES AND YOU CLICK ON THEM, IT

22   REPLACES THE CONTENT THAT YOU SEE OVER HERE WITH

23   THESE FOUR TILES THAT ARE COMPLETELY DIFFERENT.  IF

24   WE PLAY IT ONE MORE TIME, YOU FOCUS ON THE

25   TELEPHONE.  YOU SEE -- OOPS.  YOU FOCUS ON THE

```
 1    ASPECT OF THIS DRAWING IS THE EQUAL SCALING OF THE

 2    CHANNELS.

 3    Q    SO --

 4    A    NOT THE EXTRUSION --

 5    Q    JUST TELL THE LADIES AND GENTLEMEN OF THE

 6    JURY, IS THIS FIGURE PRIOR ART OR NOT?

 7    A    THIS FIGURE IS PRIOR ART WITH RESPECT TO THE

 8    EQUAL SCALING OF THE CHANNELS, NOT THE INCLUSION OF

 9    THE E-DPDCH CHANNEL THAT DR. KIM TALKED ABOUT THIS

10    MORNING.

11    Q    AND FIGURE 4, WHICH IS LABELED PRIOR ART, IS

12    NOT PRIOR ART EITHER?

13    A    LET'S LOOK AT IT.

14    Q    SURE.  FIGURE 4.  THAT SAYS PRIOR ART, TOO,

15    YES OR NO?

16    A    THIS SHOWS THE EQUAL SCALING WOULD BE

17    PERFORMED.

18    Q    DR. WILLIAMS, DOES IT SAY PRIOR ART OR NOT?

19    A    THE WORDS PRIOR ART ARE THERE.

20    Q    OKAY.

21    A    YES.

22    Q    AND THE PATENTEE, YOU KNOW THAT SAMSUNG WROTE

23    THOSE WORDS THERE; CORRECT?

24    A    YES.  BUT THE INVENTORS ALL TESTIFIED THAT

25    THEIR INVENTION WAS WITH REGARDS TO SCALING THE
```

1    HARQ CHANNEL OVER THE NON-HARQ CHANNEL.

2    Q    DR. WILLIAMS, THE '941 PATENT, THE OTHER

3    PATENT YOU TESTIFIED ABOUT JUST A MINUTE AGO?

4    A    YES.

5    Q    THAT'S THE ALTERNATIVE E-BIT PATENT; CORRECT?

6    A    YES.

7    Q    BUT YOU HAD NEVER HEARD OF UNTIL THE LAWYERS

8    CALLED YOU IN THIS CASE; CORRECT?

9    A    YES.  BUT IT'S PART OF THE STANDARD.

10   Q    ALL RIGHT.  NOW, YOU TOLD US THAT YOU BELIEVE

11   IN A STRONG PATENT SYSTEM; CORRECT?  DO YOU

12   REMEMBER THAT?

13   A    THAT'S WHAT I WOULD LIKE TO LEAVE AS A LEGACY

14   TO MY CHILDREN, YES.

15   Q    SURE.  THAT APPLIES TO APPLE'S PATENTS.

16            MR. VERHOEVEN:  OBJECTION.  BEYOND OF

17   SCOPE OF MY DIRECT EXAM.

18            THE COURT:  SUSTAINED.

19   BY MR. LEE:

20   Q    WE JUST TALKED ABOUT THE SAMSUNG PATENTS;

21   CORRECT?

22   A    I'M SORRY.

23   Q    YOU JUST TALKED ABOUT THE VALIDITY OF THE

24   SAMSUNG PATENTS?

25   A    I DID.

1    Q    CORRECT?

2    A    YES.

3    Q    AND BEYOND THE OPINIONS YOU'VE JUST OFFERED,

4    YOU'VE OFFERED NO OTHER OPINIONS ON THE VALIDITY OF

5    THE PATENTS; CORRECT?

6    A    NOT IN COURT TODAY.

7              MR. LEE:  THANK YOU.

8              THE COURT:  ALL RIGHT.  TIME IS 3:28.

9    ANY REDIRECT?

10             MR. VERHOEVEN:  NO.

11             THE COURT:  NO?  ALL RIGHT.  THE WITNESS

12   MAY BE EXCUSED.  ALL RIGHT.  APPLE HAS GOT SIX

13   MINUTES -- ACTUALLY YOU BOTH HAVE SIX MINUTES LEFT.

14             MR. JOHNSON:  I DON'T KNOW WHAT TO DO

15   WITH ALL THAT TIME.

16             THE COURT:  AND I WILL STOP YOU WHEN YOUR

17   TIME IS UP.  NO EXTENSIONS, OKAY?

18             MR. LEE:  YOU GO FIRST.

19             MR. JOHNSON:  I FEEL LIKE I HAVE A BATON.

20             THE COURT:  THE OLYMPIC TORCH IS BEING

21   PASSED.

22             MR. JOHNSON:  YOUR HONOR, SAMSUNG IS

23   GOING TO CALL DR. WOODWARD YANG AS OUR LAST

24   WITNESS, AND JUST WHILE HE'S TAKING THE STAND, I'M

25   GOING TO READ INTO THE RECORD REQUEST FOR ADMISSION

1    NUMBER 1966, WHICH WAS A --

2              THE COURT:  ALL RIGHT.  3:29.  THAT WILL

3    COUNT TOWARDS YOUR TIME.

4              MR. JOHNSON:  SO THE QUESTION WAS ASKED

5    OF APPLE, "ADMIT THAT HUNGFUJIN PRECISION

6    ELECTRONICS," A COMPANY LIMITED IN CHINA, "RECEIVES

7    INTEL BASEBAND PROCESSORS ON BEHALF OF APPLE."

8              APPLE'S RESPONSE:  "APPLE ADMITS REQUEST

9    NUMBER 1966."

10             THANK YOU.  DR. YANG --

11             THE COURT:  OH, LET ME STOP YOUR TIME,

12   3:29.  I'M STOPPING YOUR TIME.  WE'RE JUST

13   RESWEARING PEOPLE IN.  BELTS AND SUSPENDERS.

14             THE COURT:  PLEASE RAISE YOUR RIGHT HAND.

15                       **WOODWARD YANG,**

16   BEING RECALLED AS A WITNESS ON BEHALF OF THE

17   DEFENDANT, HAVING BEEN PREVIOUSLY SWORN, WAS

18   EXAMINED AND TESTIFIED AS FOLLOWS:

19             THE WITNESS:  YES, I DO.

20             THE COURT:  THANK YOU.  PLEASE BE SEATED.

21             ALL RIGHT.  IT'S 3:29, GO AHEAD, PLEASE

22   MUCH.

23             MR. JOHNSON:  BRIAN, CAN WE PUT UP PDX

24   42.4, PLEASE.

25    /   /   /

**DIRECT EXAMINATION**

BY MR. JOHNSON:

Q     THIS WAS A DEMONSTRATIVE, DR. YANG, THAT WAS
USED WITH DR. DOURISH, AND I WANT TO ASK YOU, THEY
PUT UP A PICTURE OF THE AM/FM RADIO.  DO YOU THINK
THIS WAS A PROPER ANALOGY?

A     THIS IS AN IMPROPER ANALOGY.  THIS IS A VERY
SIMPLE DEVICE, IT HAS ONE FUNCTIONALITY, WHEREAS
THE PATENTS --

          MR. LEE:  YOUR HONOR, I OBJECT.  THIS IS
INFRINGEMENT.

          MR. JOHNSON:  NO, IT'S NOT.  IT'S IN THE
CONTEXT OF VALIDITY.

          THE COURT:  OVERRULED.  GO AHEAD, PLEASE.

          THE WITNESS:  THIS SPEAKS SPECIFICALLY
TO -- THIS IS A VERY SIMPLE DEVICE, IT HAS ONE
FUNCTIONALITY, WHEREAS THE PATENTS ARE TALKING
ABOUT COMPLEX DEVICES.  THESE ARE DEVICES THAT ARE
CAMERAS, PHONES, MP3 PLAYERS TOGETHER.

          SO WHEN YOU LOOK AT THEM, YOU NEED TO
CONSIDER THE MODE HAS MANY SWITCHES AND WHEN YOU
CONSIDER WHAT A MODE IS CALLED, YOU NEED TO
CONSIDER HOW ALL THOSE SWITCHES ARE SET.

          SO, IN FACT, THE PATENTS ARE TALKING
ABOUT APPS OR APPLICATION PROGRAMS THAT RUN ON

```
 1    THESE DEVICES AND WHEN THOSE DEVICES RUN, THEY HAVE

 2    MODES.

 3    BY MR. JOHNSON:

 4    Q    DR. DOURISH ALSO TALKED ABOUT THE LG PATENT

 5    APPLICATION.  RYAN, CAN WE PLEASE PUT UP 42.24.

 6              DOES THE LG PATENT APPLICATION SATISFY

 7    THE LAST LIMITATION OF CLAIM 10 OF THE '893 PATENT,

 8    THE BOOKMARKING PATENT?

 9    A    NO, THIS PATENT APPLICATION DOES NOT SATISFY

10    THE LAST LIMITATION OF THE '893 PATENT.  THE LAST

11    LIMITATION OF THE '893 PATENT SPECIFICALLY SAYS YOU

12    HAVE TO GO FROM A DISPLAY MODE TO A CAMERA

13    PHOTOGRAPHING MODE BACK TO THE DISPLAY MODE TO SEE

14    THE BOOKMARK.

15              IN FACT, WHEN YOU READ THIS OVER HERE,

16    IT'S JUST TALKING ABOUT WHAT'S GOING ON BETWEEN

17    DIFFERENT DISPLAY MODES.  THERE IS NO TALK ABOUT

18    GOING FROM THE DISPLAY MODE TO A CAMERA MODE BACK

19    TO THE DISPLAY MODE.  THAT'S MUSIC.

20    Q    LET'S TALK ABOUT THE BACKGROUND MUSIC PATENT,

21    THE '711 PATENT.  APPLE'S EXPERT, DR. GIVARGIS,

22    SAID THE K700 PHONE RENDERS THE '711 PATENT OBVIOUS

23    AND IT WASN'T REVIEWED BY THE PATENT OFFICE.  DO

24    YOU AGREE?

25    A    I AGREE THAT THEY DIDN'T LOOK AT THE 700
```

1    PHONE.  BUT THE PATENT OFFICE ACTUALLY CONSIDERED A

2    MORE ADVANCED PHONE, WHICH IS CALLED THE K750, AND

3    THE PATENT OFFICE SPECIFICALLY HAD THE USER MANUAL

4    FOR THAT.

5            AND THE FUNCTIONALITIES AND CAPABILITIES

6    OF THE PHONE ARE EXACTLY THE SAME.  AND, IN FACT,

7    THE THING THAT'S MISSING FROM THE K750 AND K700 IS

8    THE IMPORTANT PART ABOUT A CONTROLLER GENERATING A

9    MUSIC BACKGROUND PLAY OBJECT.

10   Q    DO YOU AGREE WITH DR. GIVARGIS THAT THE WONG

11   PATENT PROVIDES MOTIVATION TO INCLUDE AN APPLET?

12   A    NO, NOT AT ALL.  THE WONG PATENT IS ACTUALLY

13   FROM SUN MICROSYSTEMS, THE PEOPLE WHO WROTE JAVA,

14   SO IT'S ALL ABOUT JAVA APPLICATIONS AND JAVA

15   APPLETS.

16           AND SPECIFICALLY THE PATENT OFFICE HAD

17   SEVERAL REFERENCES DISCUSSING JAVA APPLICATIONS AND

18   JAVA APPLETS IN THERE AS WELL, AND JAVA

19   APPLICATIONS AND JAVA APPLETS, AS WE KNOW, ARE

20   DIFFERENT FROM THE APPLET THAT WE HAVE IN THE '711

21   PATENT.

22           THE APPLET WE HAVE IN THE '711 PATENT, AS

23   WE KNOW THE COURT HAS DEFINED FOR US, IS AN

24   APPLICATION DESIGNED TO RUN WITHIN AN APPLICATION

25   MODULE.

1

2

3

4                    CERTIFICATE OF REPORTERS

5

6

7

8            WE, THE UNDERSIGNED OFFICIAL COURT

9    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

19

20                       /S/
                         _____
21                       LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595
22

23                       /S/
                         _____
24                       IRENE RODRIGUEZ, CSR, CRR
                         CERTIFICATE NUMBER 8074
25
                         DATED:  AUGUST 17, 2012