| 104TH CONGRESS<br>*1st Session* | HOUSE OF REPRESENTATIVES | REPORT<br>104–374 |
|---|---|---|

# FEDERAL TRADEMARK DILUTION ACT OF 1995

NOVEMBER 30, 1995.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. MOORHEAD, from the Committee on the Judiciary, submitted the following

# R E P O R T

[To accompany H.R. 1295]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1295) to amend the Trademark Act of 1946 to make certain revisions relating to the protection of famous marks, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

## CONTENTS

|  | Page |
|---|---|
| The Amendment | 1 |
| Purpose and Summary | 2 |
| Background and Need for Legislation | 3 |
| Hearings | 5 |
| Committee Consideration | 5 |
| Committee Oversight Findings | 5 |
| Committee on Government Reform and Oversight | 5 |
| New Budget Authority and Tax Expenditures | 5 |
| Congressional Budget Office Estimate | 6 |
| Inflationary Impact Statement | 6 |
| Section-by-Section Analysis and Discussion | 7 |
| Agency Views | 8 |
| Changes in Existing Law Made by the Bill, as Reported | 8 |

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Federal Trademark Dilution Act of 1995".

**SEC. 2. REFERENCE TO THE TRADEMARK ACT OF 1946.**

For purposes of this Act, the act entitled "An Act to provide for the registration and protection of trade-marks used in commerce, to carry out the provisions of cer-

tain international conventions, and for other purposes", approved July 5, 1946 (15 U.S.C. 1051 and following), shall be referred to as the "Trademark Act of 1946".

**SEC. 3. REMEDIES FOR DILUTION OF FAMOUS MARKS.**

(a) REMEDIES.—Section 43 of the Trademark Act of 1946 (15 U.S.C. 1125) is amended by adding at the end the following new subsection:

"(c)(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—

"(A) the degree of inherent or acquired distinctiveness of the mark;

"(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

"(C) the duration and extent of advertising and publicity of the mark;

"(D) the geographical extent of the trading area in which the mark is used;

"(E) the channels of trade for the goods or services with which the mark is used;

"(F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

"(G) the nature and extent of use of the same or similar marks by third parties; and

"(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

"(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity.

"(3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.

"(4) The following shall not be actionable under this section:

"(A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.

"(B) Noncommercial use of a mark.

"(C) All forms of news reporting and news commentary.".

(b) CONFORMING AMENDMENT.—The heading for title VIII of the Trademark Act of 1946 is amended by striking "AND FALSE DESCRIPTIONS" and inserting ", FALSE DESCRIPTIONS, AND DILUTION".

**SEC. 4. DEFINITION.**

Section 45 of the Trademark Act of 1946 (15 U.S.C. 1127) is amended by inserting after the paragraph defining when a mark shall be deemed to be "abandoned" the following:

"The term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—

"(1) competition between the owner of the famous mark and other parties, or

"(2) likelihood of confusion, mistake, or deception.".

**SEC. 5. EFFECTIVE DATE.**

This Act and the amendments made by this Act shall take effect on the date of the enactment of this Act.

## PURPOSE AND SUMMARY

The purpose of H.R. 1295 is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion. H.R. 1295 does this by amending Section 43 of the Trademark

3

Act of 1946 to add a new subsection (c) to provide protection against another's commercial use of a famous mark which results in dilution of such mark. Presently, the nature and extent of the remedies against trademark dilution varies from state to state and, therefore, can provide unpredictable and inadequate results for the trademark owner. The federal remedy provided in H.R. 1295 against trademark dilution will bring uniformity and consistency to the protection of famous marks and is also consistent with our international obligations in the trademark area.

## BACKGROUND AND NEED FOR THE LEGISLATION

H.R. 1295 would add a new section 43(c) to the Lanham Act, 15 U.S.C. et. seq., to create a federal cause of action to protect famous marks from unauthorized users that attempt to trade upon the goodwill and established renown of such marks and, thereby, dilute their distinctive quality. The provision is intended to protect famous marks where the subsequent, unauthorized commercial use of such marks by others dilutes the distinctiveness of the mark. The bill defines the term "dilution" to mean "the lessening of the capacity of a famous mark to identify and distinguish goods or services regardless of the presence or absence of (a) competition between the parties, or (b) likelihood of confusion, mistakes, or deception." Thus, for example, the use of DUPONT shoes, BUICK aspirin, and KODAK pianos would be actionable under this legislation.

The protection of marks from dilution differs from the protection accorded marks from trademark infringement. Dilution does not rely upon the standard test of infringement, that is, likelihood of confusion, deception or mistake. Rather, it applies when the unauthorized use of a famous mark reduces the public's perception that the mark signifies something unique, singular, or particular. As summarized in one decision:

> Dilution is an injury that differs materially from that arising out of the orthodox confusion. Even in the absence of confusion, the potency of a mark may be debilitated by another's use. This is the essence of dilution. Confusion leads to immediate injury, while dilution is an infection, which if allowed to spread, will inevitably destroy the advertising value of the mark.[1]

The concept of dilution recognizes the substantial investment the owner has made in the mark and the commercial value and aura of the mark itself, protecting both from those who would appropriate the mark for their own gain.

A federal dilution statute is necessary because famous marks ordinarily are used on a nationwide basis and dilution protection is currently only available on a patch-quilt system of protection, in that only approximately 25 states have laws that prohibit trademark dilution. Further, court decisions have been inconsistent and some courts are reluctant to grant nationwide injuctions for viola-

---

[1] *Mortellito* v. *Nina of California, Inc.,* 335 F. Supp. 1288, 1296, 173 U.S. P.Q. 346, 351 (S.D.N.Y. 1972).

4

tion of state law where half of the states have no dilution law.[2] Protection for famous marks should not depend on whether the forum where suit is filed has a dilution statute. This simply encourages forum-shopping and increases the amount of litigation.

Moreover, the recently concluded Agreement on Trade-Related Aspects of Intellectual Property Rights, including Trade in Counterfeit Goods ("TRIPS") which was part of the Uruguay Round of the GATT agreement includes a provision designed to provide dilution protection to famous marks. Thus, enactment of this bill will be consistent with the terms of the agreement, as well as the Paris Convention, of which the U.S. also a member. Passage of a federal dilution statute would also assist the executive branch in its bilateral and multilateral negotiations with other countries to secure greater protection for the famous marks owned by U.S. companies. Foreign countries are reluctant to change their laws to protect famous U.S. marks if the U.S. itself does not afford special protection for such marks.

It should be noted that as originally introduced, H.R. 1295 only applied to famous registered marks. However, based on testimony by the Patent and Trademark Office, Congresswoman Patricia Schroeder offered an amendment in the nature of a substitute to H.R. 1295, that was adopted by the Subcommittee, to include all famous marks within the scope of the bill. The Patent and Trademark Office made a compelling case that limiting the federal remedy against trademark dilution to those famous marks that are registered is not within the spirit of the United States' position as a leader setting the standards for strong worldwide protection of intellectual property. Such a limitation would undercut the United States position with our trading partners, which is that famous marks should be protected regardless of whether the marks are registered in the country where protection is sought.

The proposal adequately addresses legitimate First Amendment concerns espoused by the broadcasting industry and the media. The bill will not prohibit or threaten "noncommercial" expression, as that term has been defined by the courts. Nothing in this bill is intended to alter existing case law on the subject of what constitutes "commercial" speech. The bill includes specific language exempting from liability the "fair use" of a mark in the context of comparative commercial advertising or promotion as well as all forms of news reporting and news commentary. The latter provision which was added to H.R. 1295 as a result of an amendment offered by Congressman Moorhead that was adopted by the Committee, recognizes the heightened First Amendment protection afforded the news industry.

It is important to note that H.R. 1295 would not pre-empt existing state dilution statutes. State laws could continue to be applied in cases involving locally famous or distinctive marks.[3] Unlike patent and copyright laws, federal trademark law presently coexists with state trademark law, and it is to be expected that a federal dilution statute should similarly coexist with state dilution law.

---

[2] *Blue Ribbon Feed Co., Inc.* v. *Farmers Union Central Exchange, Inc.,* 731 F. 2d 415, 422 (7th Cir. 1984) and *Deere & Co.* v. *MTD Products Inc.,* 34 U.S.P.Q. 2d 1706 (S.D.N.Y. 1995).
[3] See, e.q., *Wedgewood Homes, Inc.* v. *Lund,* 659 P.2d 377, 222 U.S.P.Q. 446 (Or. 1983).

5

The ownership of valid federal registration would act as a complete bar to a dilution action brought under state law.

With respect to remedies, the bill limits the relief a court could award to an injunction unless the wrongdoer willfully intended to trade on the trademark owner's reputation or to cause dilution of the famous mark, in which case the remedies under sections 35(a) and 36 of the Trademark Act become available.

### HEARINGS

The Committee's Subcommittee on Courts and Intellectual Property held a hearing on H.R. 1295 on July 19, 1995 in Room 2237 Rayburn House Office Building. Testimony was received from the following seven witnesses: Mr. Philip G. Hampton II, Assistant Commissioner for Trademarks, Patent and Trademark Office, United States Department of Commerce; Ms. Mary Ann Alford, Vice President and Assistant General Counsel, Intellectual Property, Reebok International, Ltd. and Executive Vice President, International Trademark Association; Mr. James K. Baughman, Assistant General Counsel, Campbell Soup Company; Mr. Nils Victor Montan, Vice President and Senior Intellectual Property Counsel, Warner Brothers; Mr. Thomas E. Smith, Chair, Section of Intellectual Property Law, American Bar Association; Mr. Jonathan E. Moskin, Attorney at Law, Pennie & Edmonds; and Mr. Gregory W. O'Connor, General Patent Counsel & Assistant Secretary, Samsonite Corporation.

### COMMITTEE CONSIDERATION

On July 27, 1995, the Subcommittee on Courts and Intellectual Property met in open session and ordered reported the bill H.R. 1295, as amended, by a voice vote, a quorum being present. On October 17, 1995, the Committee met in open session and ordered reported the bill H.R. 1295, as amended, by a voice vote, a quorum being present.

### COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 2(l)(3)(A) of rule XI of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

### COMMITTEE ON GOVERNMENT REFORM AND OVERSIGHT FINDINGS

No findings or recommendations of the Committee on Government Reform and Oversight were received as referred to in clause 2(l)(3)(D) of rule XI of the Rules of the House of Representatives.

### NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 2(l)(3)(B) of House rule XI is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

6

## CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

In compliance with clause 2(l)(C)(3) of rule XI of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 1295, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974:

U.S. CONGRESS,<br>CONGRESSIONAL BUDGET OFFICE,<br><i>Washington, DC, November 8, 1995.</i>

Hon. HENRY J. HYDE,
*Chairman, Committee on Judiciary,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has reviewed H.R. 1295, the Federal Trademark Dilution Act of 1995, as ordered reported by the House Committee on the Judiciary on October 17, 1995. CBO estimates that enacting H.R. 1295 would not result in any significant cost to the federal government. Because enactment of H.R. 1295 would not affect direct spending or receipts, pay-as-you-go procedures would not apply to the bill.

H.R. 1295 would protect famous trademarks by prohibiting subsequent commercial uses that blur the distinctiveness of the mark or tarnish or disparage it. The bill would establish criteria that federal courts would use to determine whether the mark has acquired the level of distinctiveness to be considered famous. The bill would not prohibit or threaten noncommercial uses of a famous trademark, including uses by the news media and comparative advertisements. Current federal law permits a company to use a likeness of a famous trademark if the companies are in different industries and are not likely to be confused by consumers. About one-half of the states have laws similar to H.R. 1295 to prohibit dilution. This bill would not preempt existing state dilution statutes.

Based on information from the Administrative Office of the United States Courts, CBO does not expect any significant change in caseload or court costs from enacting H.R. 1295. Any increase in costs to the federal courts would be subject to appropriations of the necessary funds. We also expect that enacting H.R. 1295 would not significantly affect the proceedings of state courts, and thus the bill would not have any significant impact on the budgets of state or local governments.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contacts are, for federal costs, Rachel Forward and Susanne S. Mehlman, and for state and local costs, Karen McVey.

Sincerely,

JAMES L. BLUM<br>(For June E. O'Neill, Director).

## INFLATIONARY IMPACT STATEMENT

Pursuant to clause 2(l)(4) of rule XI of the Rules of the House of Representatives, the Committee estimates that H.R. 1295 will have no significant inflationary impact on prices and costs in the national economy.

7

SECTION-BY-SECTION ANALYSIS

Section 1 of the bill sets forth its short title, the "Federal Trademark Dilution Act of 1995."

Section 2 of the bill provides that the bill refers to the "Trademark Act of 1946," 15 U.S.C. 1051 et. seq.[4]

Section 3 of the bill would create a new Section 43(c) of the Lanham Act to provide a cause of action for dilution of "famous" marks. A new Section 43(c)(1) would provide protection to the owners of famous marks against another person's commercial use in commerce of the mark which dilutes the distinctive quality of the mark. The "use in commerce" requirement reflects the fact that the bill, like the Lanham Act itself, requires some aspect of interstate commerce to be present before the dilution provision can be triggered. The section would provide protection to famous marks, whether or not the mark is the subject of a federal trademark registration.

Section 3 identifies a list of nonexclusive factors that a court may consider in determining whether a mark qualifies for protection. These factors include: (1) the degree of distinctiveness of the mark; (2) the duration and extent of use of the mark; (3) the geographical extent of the trading area in which the mark is used; and (4) whether the mark is federally registered.

The first factor makes it clear that a mark may be deemed "famous" even if not inherently distinctive, that is, even if the mark is not arbitrary, fanciful, or coined. With respect to the duration and extent of use, generally a famous mark will have been in use for some time. The geographic fame of the mark must extend throughout a substantial portion of the U.S. Finally, although a mark need not be federally registered in order to be eligible for dilution protection, the fact that the mark is registered with the U.S. Patent and Trademark Office may be considered by a court in determining whether a mark is distinctive. This factor recognizes that a mark may not be federally registered unless it is found by the PTO to be distinctive.

With respect to relief, a new Section 43(c)(2) of the Lanham Act would provide that, normally, the owner of a famous mark will only be entitled to injunctive relief upon a finding of liability. An award of damages, including the possibility of treble damages, may be assessed against a defendant found to have willfully intended to trade on the trademark owner's reputation or to cause dilution of the famous mark.

Under section 3 of the bill, a new Section 43(c)(3) of the Lanham Act would provide that ownership of a valid federal trademark registration is a complete bar to an action brought against the registrant under state dilution law. This section provides a further incentive for the federal registration of marks and recognizes that to permit a state to regulate the use of federally registered marks is inconsistent with the intent of the Lanham Act "to protect registered marks used in such commerce from interference by state, or territorial legislation."

---

[4] In this report, the Trademark Act of 1946 is referred to by its more commonly used name, the Lanham Act.

8

It is important to note that the proposed federal dilution statute would not preempt state dilution laws. Unlike patent and copyright laws, federal trademark law coexits with state trademark law, and it is to be expected that the federal dilution stature should similarly coexist with state dilution statutes.

A new Section 43(c)(4) sets forth various activities that would not be actionable. This section is designed to preclude the courts from enjoining speech that courts have recognized to be constitutionally protected. Section (4)(A) of the bill provides that the "fair use" of a famous mark for purposes of comparative advertising, for example, is not actionable. Section (4)(B) of the bill expressly incorporates the concept of "commercial" speech from the "commercial speech" doctrine, and proscribes dilution actions that seek to enjoin use of famous marks in "non-commercial" uses (such as consumer product reviews). Section (4)(C) expressly recognizes that the use of "famous" marks in the context of all forms of news reporting and news commentary is not actionable. Nothing in this section of the bill is intended to alter existing case law on the subject of what constitutes "commercial" speech.

Section 4 of the bill defines the term "dilution" to mean the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception. The definition is designed to encompass all forms of dilution recognized by the courts, including dilution by blurring, by tarnishment and disparagement, and by diminishment. In an effort to clarify the law on the subject, the definition also recognizes that a cause of action for dilution may exist whether or not the parties market the same or related goods or whether or not a likelihood of confusion exists. Thus, a mark protected against dilution can have acquired its fame in connection with one type of good or service and, as a result, be so famous as to be entitled to protection against dilution when used on or in connection with an unrelated good or service.

### AGENCY VIEWS

In testimony before the Subcommittee on Courts and Intellectual Property on July 19, 1995 the Department of Commerce (Patent and Trademark Office) testified in favor in H.R. 1295.

### CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

9

## ACT OF JULY 5, 1946 (Ch. 540)

### (Commonly Referred to as the Trademark Act of 1946)

AN ACT To provide for the registration and protection of trade-marks used in commerce, to carry out the provisions of certain international conventions, and for other purposes

\*       \*       \*       \*       \*       \*       \*

TITLE VIII—FALSE DESIGNATIONS OF ORIGIN [AND FALSE DESCRIPTIONS], *FALSE DESCRIPTIONS, AND DILUTION* FORBIDDEN

SEC. 43. (a) \* \* \*

\*       \*       \*       \*       \*       \*       \*

(c)(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—
  (A) the degree of inherent or acquired distinctiveness of the mark;
  (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
  (C) the duration and extent of advertising and publicity of the mark;
  (D) the geographical extent of the trading area in which the mark is used;
  (E) the channels of trade for the goods or services with which the mark is used;
  (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
  (G) the nature and extent of use of the same or similar marks by third parties; and
  (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
 (2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity.
 (3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.

10

*(4) The following shall not be actionable under this section:*
    *(A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.*
    *(B) Noncommercial use of a mark.*
    *(C) All forms of news reporting and news commentary.*

\*     \*     \*     \*     \*     \*     \*

TITLE X—CONSTRUCTION AND DEFINITIONS

SEC. 45. In the construction of this Act, unless the contrary is plainly apparent from the context—

\*     \*     \*     \*     \*     \*     \*

A mark shall be deemed to be "abandoned" if either of the following occurs:
    (1) \* \* \*

\*     \*     \*     \*     \*     \*     \*

*The term "dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—*
    *(1) competition between the owner of the famous mark and other parties, or*
    *(2) likelihood of confusion, mistake, or deception.*

\*     \*     \*     \*     \*     \*     \*

○