1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5

6   APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
    CORPORATION,                )
                                )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,       )
                                )  AUGUST 20, 2012
8         VS.                   )
                                )  VOLUME 12
9   SAMSUNG ELECTRONICS CO.,    )
    LTD., A KOREAN BUSINESS     )  PAGES 3712-3940
10  ENTITY; SAMSUNG             )
    ELECTRONICS AMERICA,        )
11  INC., A NEW YORK            )
    CORPORATION; SAMSUNG        )
12  TELECOMMUNICATIONS          )
    AMERICA, LLC, A DELAWARE    )
13  LIMITED LIABILITY           )
    COMPANY,                    )
14                              )
               DEFENDANTS.      )
15  _____

16        TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24                          IRENE RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                      BY:  HAROLD J. MCELHINNY
 3                                     MICHAEL A. JACOBS
                                       RACHEL KREVANS
 4                            425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                  HALE AND DORR
 7                            BY:  WILLIAM F. LEE
                             60 STATE STREET
 8                           BOSTON, MASSACHUSETTS  02109

 9                            BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
10                           PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:    QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
12                           BY:  CHARLES K. VERHOEVEN
                             50 CALIFORNIA STREET, 22ND FLOOR
13                           SAN FRANCISCO, CALIFORNIA  94111

14                            BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
16                           REDWOOD SHORES, CALIFORNIA  94065

17                            BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                                 SUSAN ESTRICH
                             865 SOUTH FIGUEROA STREET
19                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
20

21

22

23

24

25
```

1

2                        INDEX OF EXHIBITS

3                                  MARKED          ADMITTED

4

5     DEFENDANT'S

6     556                                         3722

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                    AUGUST 20, 2012
 2                    P R O C E E D I N G S
 3                (WHEREUPON, THE FOLLOWING PROCEEDINGS
 4    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
 5                THE COURT:  DID YOU SEE THAT WE FILED THE
 6    TENTATIVE VERDICT FORM?
 7                MS. MAROULIS:  YES, YOUR HONOR.
 8                THE COURT:  ALL RIGHT.  LET'S FIRST
 9    HANDLE THE RULE 50 MOTIONS.  I'VE READ BOTH THE
10    MOTIONS AND THE OPPOSITIONS AND WE'VE ALREADY HAD
11    QUITE EXTENSIVE ARGUMENT ALREADY.
12                IS THERE ANYTHING THAT YOU WOULD LIKE TO
13    SAY IN ADDITION?  AND FEEL FREE NOT TO.
14                MR. JOHNSON:  YOUR HONOR, I'M HAPPY TO
15    SAY WE DON'T HAVE ANYTHING ELSE TO SAY AT THIS
16    POINT.
17                THE COURT:  FANTASTIC.  MOST PERSUASIVE
18    ARGUMENTS I'VE HEARD SO FAR.
19                WELL, BOTH SIDES' MOTIONS ARE DENIED AND
20    ALL OF THE ISSUES WILL BE GOING TO THE JURY
21    TOMORROW.  OKAY?  SO THOSE ARE DENIED.
22                LET'S GO TO THE VERDICT FORM.  DO YOU
23    NEED SOME TIME TO LOOK AT IT?  SHOULD WE BRING THAT
24    UP AT THE END?
25                MS. MAROULIS:  YOUR HONOR, I WAS GOING TO
```

 1    SUGGEST THAT, BECAUSE THERE'S A LOT OF DETAIL,

 2    INCLUDING WHICH PRODUCTS ARE ALLEGED TO INFRINGE

 3    WHAT, AND WE NEED TO ANALYZE THAT.

 4           THE COURT:  NO PROBLEM.  LET'S DO THAT AT

 5    THE END.

 6           LET'S -- I'M TRYING TO THINK OF WHAT ELSE

 7    WILL BE FAST.

 8           OKAY.  LET ME GIVE YOU THE RULINGS ON --

 9    THIS IS SAMSUNG'S MOTION REGARDING EVIDENCE THAT IS

10    STILL IN DISPUTE, SO LET ME GIVE YOU RULINGS ON

11    THAT.

12           I'LL TELL YOU WHAT MY TENTATIVE IS AND IF

13    YOU WISH TO BE HEARD, YOU CAN BE HEARD VERY

14    BRIEFLY.

15           ON PX 66A AND 66B, THOSE ARE THE VIDEOS

16    SHOWING THE '381 PATENT, PERFORMANCE ON ACCUSED

17    DEVICES AND I -- THIS REALLY IS A DEMONSTRATIVE, SO

18    THIS IS EXCLUDED.  THIS IS WHAT I WAS THINKING OF

19    WHEN I WANTED TO EXCLUDE DEMONSTRATIVES.  SO THAT'S

20    EXCLUDED.

21           NOW, PX 24.5 THROUGH 24.7, THOSE ARE THE

22    ACTUAL VIDEOS THAT WERE DEMONSTRATED DURING THE

23    SURVEY, SO IT'S NOT -- IT'S NOT -- IT'S NOT A

24    DEMONSTRATIVE.  IT WASN'T CREATED FOR THE PURPOSES

25    OF EXPLAINING SOMETHING AT THE TRIAL.  IT WAS THE

```
 1    ACTUAL SURVEY VIDEO.  SO THAT'S ADMITTED.  OKAY?
 2    SO I'M DENYING ANY MOTION TO EXCLUDE IT.
 3              WITH REGARD TO SDX 3973.009, A
 4    DEMONSTRATIVE, THAT'S EXCLUDED.
 5              AND THE VIDEO OF HAN, DX 556, I DON'T
 6    EVER SEE THAT IT WAS ADMITTED.
 7              ALL RIGHT.  ANYONE WANT TO BE HEARD VERY
 8    BRIEFLY ON THOSE FOUR ISSUES?
 9              MR. JOHNSON:  YES, JUST BRIEFLY, YOUR
10    HONOR.  I WANT TO TAKE UP 3973.009 AND .010.
11              THE COURT:  OKAY.
12              MR. JOHNSON:  YOUR HONOR, IF YOU RECALL,
13    YOUR HONOR, THOSE WERE -- IF I MAY APPROACH, I CAN
14    HAND UP WHAT THOSE ARE, JUST SO YOU HAVE THEM IN
15    FRONT OF YOU.
16              THE COURT:  SURE.
17              MR. JOHNSON:  THIS WAS -- IF YOU RECALL,
18    IT'S LABELED AN SDX NUMBER, BUT IT'S ACTUALLY AN
19    EXHIBIT THAT WAS USED, AND WHAT CAME IN DURING THE
20    TESTIMONY OF MS. WANG WITHOUT ANY OBJECTION, AND IF
21    I CAN TURN YOUR ATTENTION TO PAGE 2803 AND -04 OF
22    THE TRANSCRIPT, AND WE CAN PUT THAT UP EVEN.
23              THE COURT:  I DIDN'T BRING MY TRANSCRIPT.
24              MR. JOHNSON:  AND I CAN GIVE YOU A BINDER
25    THAT'S GOT THE TRANSCRIPT IF YOU FIND THAT HELPFUL.
```

1          BUT THE ISSUE IS IT'S GOT AN SDX NUMBER,

2     BUT IT WAS REFERRING TO AN ACTUAL EXHIBIT, AND IT'S

3     NOT -- AND IF YOU LOOK AT WHAT'S IN FRONT OF YOU,

4     IT'S NOT A DEMONSTRATIVE.

5          IT'S A PIECE OF EVIDENCE THAT WAS USED

6     WITH A PARTICULAR WITNESS AND IT CAME OUT WITHOUT

7     ANY OBJECTION.  I'M ASKING ONLY TO ADMIT .009 AND

8     .010, AND IF WE PULL UP, FOR EXAMPLE, 2803 AT THE

9     BOTTOM, AND THE TOP 2804 -- AND I PUT IT UP, THE

10    TRIAL TRANSCRIPT.

11          THE COURT:  YOU KNOW WHAT?  I HAVE .009

12    AS HAVING BEEN ADMITTED ON AUGUST THE 15TH.  I

13    DON'T HAVE .010.

14          MR. JOHNSON:  ON PAGE 2820 OF THE

15    TRANSCRIPT, YOU ADMITTED .010.

16          AND THE ISSUE HERE WAS THAT THIS WAS

17    DURING THE TIME WHEN DEMONSTRATIVES WERE --

18          THE COURT:  YOU KNOW WHAT?  YOU ARE

19    CORRECT.  YOU ARE CORRECT.  I APOLOGIZE.  THOSE ARE

20    BOTH ADMITTED.  EXCUSE ME.

21          MR. JOHNSON:  THANK YOU, YOUR HONOR.

22          THE COURT:  EXCUSE ME.  I WAS WRONG.

23          OKAY.  WHAT ELSE?

24          MR. JOHNSON:  JUST BRIEFLY ON PX 64, YOU

25    DIDN'T MENTION THAT ONE WHEN YOU JUST RAN THROUGH

```
1    THE NUMBERS, BUT PX 64 IS THE VIDEO THAT

2    DR. BALAKRISHNAN USED DURING HIS TESTIMONY.

3             IT'S EXACTLY THE KIND OF DEMONSTRATIVE

4    THAT I THINK YOUR HONOR HAD IN MIND THAT SHOULD BE

5    EXCLUDED.  IT'S ANNOTATED WITH THE CLAIM LANGUAGE,

6    FIRST PORTION, SECOND PORTION, THIRD PORTION.

7             THE COURT:  THAT'S EXCLUDED.

8             MR. JOHNSON:  THANK YOU, YOUR HONOR.

9             THE COURT:  OKAY.  ALL RIGHT.  ANYONE

10   ELSE WANT TO GET ANY CLARIFICATION ON ANY OF THESE?

11            MR. JACOBS:  WELL, I THINK THE INTERPLAY

12   WE NOTED IN OUR OPPOSITION, YOUR HONOR, IS TO THE

13   DEVICES GOING IN.

14            THE COURT:  WE'LL ADDRESS THAT.

15            MR. JACOBS:  OKAY.

16            THE COURT:  YEAH.  OKAY.  SO THAT TAKES

17   CARE OF THOSE EXHIBIT ISSUES.

18            MR. JOHNSON:  AND YOUR HONOR, SORRY,

19   BRIEFLY, THE HAN VIDEO WAS USED WITH MR. GRAY,

20   SAMSUNG'S EXPERT, AT 2908, LINES 11 TO 25.  AND HE

21   EXPLAINED THE DEVICE IN THE HAN VIDEO AT PAGE

22   290 --

23            THE COURT:  OH, I KNOW IT WAS SHOWN

24   DURING HIS TESTIMONY.  I JUST WASN'T SURE WHETHER

25   IT HAD ACTUALLY BEEN ADMITTED.
```

```
 1                MR. JACOBS:  IT WAS NOT, YOUR HONOR.

 2                THE COURT:  I HAVE IT NOT BEING ADMITTED,

 3      BUT IT WAS DEFINITELY SHOWN ON AUGUST 15TH WHEN

 4      MR. GRAY WAS TESTIFYING.

 5                MR. JOHNSON:  THEN IT WAS AN OVERSIGHT

 6      WHY IT WASN'T ADMITTED.  IT SHOULD HAVE BEEN

 7      ADMITTED.  IT WAS SPECIFICALLY SHOWN.  HE RELIED ON

 8      IT.  HE TALKED ABOUT THE PIECE OF PRIOR ART.

 9                MR. DEFRANCO, WHO UNFORTUNATELY ISN'T

10      HERE, MAY HAVE FAILED TO SPECIFICALLY MOVE IT INTO

11      EVIDENCE AT THAT POINT.

12                THE COURT:  LET ME HEAR FROM MR. JACOBS.

13      IT IS DIFFERENT FROM THE OTHER, YOU KNOW,

14      DEMONSTRATIVE VIDEOS THAT WERE CREATED JUST SOLELY

15      FOR THIS LITIGATION.  THAT ACTUALLY WAS EVIDENCE.

16      LET ME HEAR, WHAT'S YOUR VIEW ON THIS?

17                MR. JACOBS:  IT SHOULD HAVE BEEN ADMITTED

18      DURING TRIAL, OR SHOULD HAVE BEEN MOVED FOR

19      ADMISSION DURING TRIAL WHEN THE WITNESS WAS ON THE

20      STAND AND IT WASN'T.

21                THE COURT:  HOW ARE YOU PREJUDICED BY

22      LEAVING THIS OUT?

23                MR. JACOBS:  IT'S A DRAMATIC VIDEO THAT

24      IS QUITE INCOMPLETE IN ITS REPRESENTATION AS PRIOR

25      ART.  THERE'S NO CODE ASSOCIATED WITH IT.  IT MAKES
```

1    A GOOD PICTURE.

2           WE PREJUDICED BECAUSE IT'S AN EXHIBIT

3    THEY LOVE AND THEY WOULD LIKE TO SHOW IT AND THEY

4    FAILED TO MOVE IT INTO EVIDENCE DURING TRIAL.

5           MR. JOHNSON:  YOUR HONOR, I'M TOLD

6    MR. DEFRANCO TRIED TO MOVE IT IN AND YOUR HONOR

7    SAID IT WAS PENDING A STIPULATION REGARDING

8    DEMONSTRATIVES, BECAUSE IT WASN'T CLEAR AT THAT

9    TIME WHETHER --

10          THE COURT:  LET ME SEE THE TRANSCRIPT.  I

11   APOLOGIZE I DIDN'T BRING MY COPY.  DO YOU HAVE THE

12   HARD COPY, PLEASE?

13          MR. JOHNSON:  I CAN HAND UP A HARD COPY.

14   IT HAS SOME TABS ON IT THAT ARE UNRELATED.  IT'S

15   JUST MY TABS ON ONE WITNESS.  THAT'S ALL IT IS.

16          THE COURT:  OKAY.  THANK YOU.  DO YOU

17   HAVE THE PAGE NUMBER?

18          MR. JOHNSON:  2909.

19          MR. JACOBS:  YOUR HONOR WILL ALSO RECALL

20   THAT WE HAD A HEARSAY OBJECTION BECAUSE MR. HAN IS

21   TALKING IN THE VIDEO.

22          BUT IT IS THE CASE THAT THE TRANSCRIPT

23   SAYS "ALL RIGHT, THAT'LL BE PENDING THE

24   STIPULATION."  I THINK THE "PENDING THE

25   STIPULATION" THERE WAS ON THE SUBJECT OF

```
 1    DEMONSTRATIVES.

 2             THE COURT:  I'M GOING TO ADMIT THIS.  THE

 3    DEMONSTRATIVE WAS -- THE EXCLUSION OF

 4    DEMONSTRATIVES WAS DIRECTED AT THE DEMONSTRATIVES

 5    THAT WERE CREATED SOLELY FOR THIS TRIAL AND FOR

 6    THIS LAWSUIT.  SO 556 IS ADMITTED.

 7                  (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

 8                  556, HAVING BEEN PREVIOUSLY MARKED FOR

 9                  IDENTIFICATION, WAS ADMITTED INTO

10                  EVIDENCE.)

11             MR. JOHNSON:  THANK YOU, YOUR HONOR.

12             THE COURT:  OKAY.  ANYTHING ELSE?

13             MR. JOHNSON:  THE OTHER ISSUE I THINK WE

14    CAN TAKE UP QUICKLY IS THE USE OF WI-FI IN THE JURY

15    ROOM.

16             THE COURT:  OKAY.  LET ME JUST MAKE A

17    NOTE -- SO WE WILL NEED TO CHANGE -- DID YOU

18    HAVE -- WELL, I GUESS YOU HAVE -- ANY OTHER CHANGES

19    TO THE EXHIBIT LIST THAT THE COURT FILED LAST

20    NIGHT, OTHER THAN WE'VE NOW ADMITTED DX 556, SDX

21    3973.009, SDX 3973.010?

22             MR. JACOBS:  YOUR HONOR, IF I --

23             THE COURT:  AND -- EXCUSE ME -- PX 24.5

24    THROUGH 24.7.

25                  OTHER THAN THOSE ADMISSIONS, ANY OTHER
```

```
1    CHANGES TO THE EXHIBIT LIST?

2           MR. JACOBS:  CAN I JUST POINT OUT THAT

3    WHAT'S HAPPENING NOW WITH 3973.009 AND .010 IS THE

4    DEMONSTRATIVE IS COMING IN.

5           THE COURT:  THAT'S COMING IN TWICE?  IS

6    ONE A BLOW UP OF THE OTHER ONE?  IT'S THE SAME

7    DATE, JANUARY 6TH, 2010.

8           MR. JOHNSON:  ONE IS ENGLISH, ONE IS

9    KOREAN.

10           MR. JACOBS:  IF THE DOCUMENT IS GOING TO

11    GO IN, THE DOCUMENT SHOULD GO IN.

12           THE COURT:  DO YOU HAVE THE DOCUMENT?

13           MR. JOHNSON:  YES, WE CAN PUT THAT IN.

14           MR. JACOBS:  AND THEN THE DEMONSTRATIVES

15    SHOULDN'T GO IN.

16           THE COURT:  CAN YOU ALL WORK THAT OUT?

17           MR. JOHNSON:  YES.

18           THE COURT:  WHAT NUMBER DO YOU WANT TO

19    GIVE THAT?

20           MR. JOHNSON:  HOW ABOUT IF WE GIVE IT ONE

21    MILLION?

22           (LAUGHTER.)

23           MR. JOHNSON:  I'M REACHING.  HOW ABOUT DX

24    900?

25           THE COURT:  THAT'S FINE.  CAN YOU PLEASE
```

3724

```
 1    FILE THE NEW E-MAIL?  I JUST WANT TO MAKE SURE

 2    THERE'S NO DISPUTE, AND THAT YOU ALL -- DID YOU

 3    BRING YOUR -- THE FINAL FINAL SET OF EXHIBITS?

 4            MR. JOHNSON:  WE WERE WAITING UNTIL WE

 5    RESOLVED THESE ISSUES AND THEN WE WERE GOING TO

 6    BRING IT OVER TO THE COURT.

 7            VOICE FROM AUDIENCE:  ACTUALLY, IT'S

 8    SITTING RIGHT THERE.

 9            THE COURT:  DO YOU WANT TO LEAVE IT HERE

10    OVERNIGHT OR DO YOU WANT TO MAKE THE CHANGES AND

11    BRING IT BACK TOMORROW MORNING?

12            MS. MAROULIS:  I THINK BRING IT TOMORROW

13    TO BE SAFE BECAUSE THERE WERE SOME CHANGES MADE

14    JUST NOW.

15            MR. JOHNSON:  THESE CHANGES THAT WE JUST

16    TALKED ABOUT.

17            THE COURT:  THAT'S FINE.  SO DX 900 IS --

18    WILL BE THE ACTUAL JANUARY 6TH, 2010 E-MAIL, AND

19    THAT WILL REPLACE SDX 3973.001 AND .010.

20            MR. JOHNSON:  AND IT'LL BE BOTH THE

21    ENGLISH --

22            THE COURT:  ENGLISH AND KOREAN.

23            MR. JOHNSON:  THANK YOU.

24            THE COURT:  OKAY.

25            MR. JACOBS:  THEN, YOUR HONOR, IN
```

3725

```
 1    SAMSUNG'S MOTION THEY NOTED THAT TWO OTHER EXHIBITS

 2    RISE AND FALL WITH THE PRINCIPLE THAT DEMONSTRATIVE

 3    VIDEOS COME OUT, AND I'M LOOKING AT THE

 4    INTRODUCTION OF THEIR MOTION, DX 751A AND DX 2557.

 5            THE BRIEF GOES ON TO SAY THESE ARE

 6    DEMONSTRATIVE VIDEOS CREATED FOR PURPOSES OF THIS

 7    TRIAL WHICH SHOW THE OPERATION OF CERTAIN ACCUSED

 8    PRODUCTS.  SO WE WOULD ASK THAT THOSE BE STRUCK, OR

 9    STRICKEN AS WELL.

10            THE COURT:  GIVE ME THOSE NUMBERS AGAIN,

11    PLEASE.

12            MR. JACOBS:  SURE.  DX 751A.

13            THE COURT:  DO YOU HAVE A DATE OF WHEN

14    THAT WAS -- OH, I'LL JUST LOOK AT OUR FINAL EXHIBIT

15    LIST.  THAT'LL HAVE IT.

16            OKAY.  EXCUSE ME.  DX 751A, YES, THAT

17    SHOULD BE OFF.

18            MR. JACOBS:  AND DX 2557.

19            MR. JOHNSON:  IT'S FINE TO REMOVE BOTH OF

20    THOSE, YOUR HONOR.

21            THE COURT:  OKAY.  SO DX 751A AND -- WHAT

22    WAS THAT NUMBER AGAIN, PLEASE, 25 --

23            MR. JACOBS:  DX 2557.

24            THE COURT:  ALL RIGHT.  SO WHAT'S BEEN

25    EXCLUDED TODAY, JUST SO OUR RECORD IS CLEAR, IS DX
```

1    751A, DX 2557, PX 64, PX 66A, PX 66B, AND

2    EVERYTHING ELSE WAS ADMITTED.

3            SO ARE WE THEN -- IS OUR EXHIBIT LIST NOW

4    FROZEN?

5            MR. JACOBS:  I THINK JUST BEFORE THIS

6    HEARING STARTED, A STIPULATION WAS FILED CORRECTING

7    SOME ENTRIES ON THE EXHIBIT LIST, LITERALLY MOMENTS

8    BEFORE, I THINK, YOUR HONOR WALKED OUT.

9            THE COURT:  OH, OKAY.  I DIDN'T ACTUALLY

10   SEE THAT.

11           MS. MAROULIS:  I THINK THEY'RE JUST

12   TYPOS.

13           MR. JOHNSON:  I THINK IT WAS JUST TYPOS

14   IN DESCRIPTIONS, AND THERE'S A STIPULATION.  IF WE

15   CAN GET THE BINDERS BACK WITH THE EXHIBIT LISTS AND

16   GIVEN YOUR HONOR'S ORDERS NOW, WE CAN PUT IT TO

17   BED.

18           THE COURT:  ALL RIGHT.  HOW MANY CHANGES

19   ARE ON THAT -- JUST TYPO CHANGES?

20           MR. JACOBS:  ABOUT HALF A DOZEN, YOUR

21   HONOR.

22           THE COURT:  OKAY.  WE'LL MAKE THOSE

23   CHANGES AND TONIGHT WE'LL FILE A FINAL FROZEN

24   EXHIBIT LIST.  OKAY?

25           NOW, I ASSUME WE HAVE ALL OF THESE

3727

```
 1    ADMITTED EXHIBITS TO ADD THE DESCRIPTIONS.  THE
 2    DESCRIPTIONS SHOULD BE ON YOUR EARLIER EXHIBIT
 3    LISTS ANYWAY, RIGHT?
 4              MR. JOHNSON:  RIGHT.
 5              THE COURT:  OKAY.  SO THE EXHIBIT LIST IS
 6    NOW FROZEN.
 7              LET'S ADDRESS THIS -- ANOTHER SURREAL
 8    ISSUE WE HAVE WITH THE PHONES, THE SORT OF PATCHES
 9    AND UPDATES QUESTION.
10              OKAY.  LET ME GIVE THIS BACK TO
11    MR. JOHNSON.  THANK YOU.
12              NOW, HOW LONG HAVE YOU -- I THOUGHT THAT
13    MANY OF THESE EXHIBITS WERE COMING RIGHT OUT OF THE
14    BOX, BUT FROM READING APPLE'S PAPERS, I SEE THAT
15    THEY'VE ACTUALLY BEEN USED IN THE LITIGATION FOR
16    ABOUT A YEAR.  IS THAT RIGHT?
17              MR. JOHNSON:  THESE ARE DEVICES APPLE HAS
18    HAD POSSESSION OF.  IF YOU RECALL, THEY'VE GOT SOME
19    IMAGES ON THEM, LIKE THE RED STICK MEN THAT
20    DR. BALAKRISHNAN USED AND OTHERS THAT APPLE PUT ON
21    THE DEVICES.
22              THE COURT:  OKAY.  WELL, WHAT'S THE
23    LIKELIHOOD THAT THERE ARE UPDATES THAT HAVE ALREADY
24    BEEN DECLINED, BECAUSE I KNOW A BIG QUESTION WAS IF
25    YOU DECLINE IT THREE TIMES, THE FOURTH TIME, IT'LL
```

```
 1    AUTOMATICALLY BE INSTALLED.  WHAT'S THE LIKELIHOOD

 2    THAT ANY OF THE DEVICES ARE IN THAT SITUATION NOW?

 3              MR. JACOBS:  WE HAVE INSPECTED THEM TO BE

 4    SURE THAT THEY DON'T INCLUDE DESIGN AROUND UPDATES.

 5              THE COURT:  OKAY.

 6              MR. JACOBS:  AND WHAT WE'D LIKE TO DO,

 7    YOUR HONOR, IS -- JUST TO JUMP AHEAD A LITTLE BIT,

 8    I THINK WE'RE CLOSE TO AGREEMENT HERE.

 9              WHAT WE'D LIKE TO DO IS INSPECT THE

10    PHONES ONE MORE TIME WITH RESPECT TO THE SIM CARDS

11    THAT WILL BE PULLED OUT, MAKE SURE THAT PULLING OUT

12    THE SIM CARDS DOESN'T IN SOME WAY AFFECT THE

13    OPERATION OF THE PHONES, AND AT WHICH POINT -- WE

14    WANTED TO MENTION THIS TO MR. RIVERA THE OTHER

15    DAY -- PHOTOGRAPH THE PHONES AND PHOTOGRAPH THE

16    SCREEN THAT SAYS WHAT LEVEL OF SOFTWARE THEY'RE

17    RUNNING.

18              THE COURT:  OKAY.

19              MR. JACOBS:  SO THAT WE HAVE A FREEZE ON

20    THAT.  AND THEN I THINK WE'RE IN AGREEMENT THAT THE

21    JURORS COULD GET THE INSTRUCTIONS THAT WE DRAFTED.

22              I WANT TO MAKE SURE YOU SAW SAMSUNG'S

23    LAST FILING ON THIS IN WHICH THEY SAID THAT WOULD

24    WORK.

25              MR. JOHNSON:  GIVEN THE AT&T AND T-MOBILE
```

```
 1    ISSUE, I THINK IF WE REMOVE THE SIM CARDS FOR THOSE
 2    PHONES, THAT SHOULD TAKE CARE OF IT.  SO DURING A
 3    BREAK, WE'LL LOOK AT THE ACTUAL PHONES AND SEE IF
 4    THAT RESOLVES IT.  HOPEFULLY IT DOES.
 5              MR. JACOBS:  AND WE'LL DOUBLE-CHECK AT
 6    THE SAME TIME, YOUR HONOR, THAT THE RELEASE IS
 7    CONSISTENT WITH THE ABSENCE OF A FORCED UPDATE OF A
 8    DESIGN AROUND.
 9              THE COURT:  OKAY.  WELL, I'M DISAPPOINTED
10    I'M NOT GOING TO GET A DEMONSTRATION TODAY, BUT
11    THAT'S GOOD THAT YOU WORKED IT OUT.
12              NOW, WHAT HAPPENS IF THE SIM CARD REMOVAL
13    PREVENTS ACTUALLY BEING ABLE TO SEE THE BROWSER AND
14    GALLERY AND THAT --
15              MR. JOHNSON:  WE'RE PRETTY CONFIDENT
16    THAT'S GOING TO WORK.
17              THE COURT:  OKAY.  ALL RIGHT.  THEN DO WE
18    NEED TO TALK ANYTHING MORE ABOUT THIS?
19              I WAS ALSO WONDERING WHETHER YOU WANTED
20    TO GO AHEAD AND DISABLE AUTO UPDATE APPS.  WOULD
21    THAT -- I GUESS THE SIM CARD WOULD TAKE CARE OF
22    THAT, RIGHT?
23              MR. JACOBS:  THAT'S -- WE DON'T NEED TO
24    DO THAT, YOUR HONOR.
25              THE COURT:  OKAY.  ALL RIGHT.  SO THEN DO
```

```
 1    WE NEED TO DISCUSS PATCHES AND UPDATES ANY MORE, OR

 2    NO?

 3              MR. JACOBS:  I THINK THE ONLY REMAINING

 4    QUESTION IS THE FORM OF THE DELIVERY OF THIS

 5    INFORMATION TO THE JURY.

 6              IT'S THE KIND OF THING THAT YOU WOULD

 7    KIND OF EXPECT TO SEE IN THE JURY ROOM ON A CARD,

 8    YOU KNOW, OR IF YOU GO INTO A CONFERENCE ROOM.

 9              IT COULD BE PART OF THE INSTRUCTIONS.  IT

10    COULD BE PART OF THE INSTRUCTIONS AND THEN THEY

11    WOULD HAVE A COPY OF IT AS WELL WHEN THEY WENT INTO

12    THE JURY ROOM.

13              SO WHATEVER YOUR HONOR THINKS IS MOST

14    APPROPRIATE.

15              THE COURT:  WELL, THEY'RE ACTUALLY EACH

16    INDIVIDUALLY GOING TO RECEIVE A HARD COPY OF THE

17    JURY INSTRUCTIONS AND THEY WILL HAVE THAT FOR THE

18    REST OF THEIR DELIBERATIONS.  SO THEY'LL HAVE THAT.

19              MR. JOHNSON:  WE COULD ADD EITHER AN

20    ADDENDUM AT THE END, OR WE COULD GIVE THEM AN

21    INSERT THAT GOES INTO THE JURY BOOK, SOMETHING THAT

22    HAS THE INSTRUCTIONS ON -- IT'S BASICALLY WHAT NOT

23    TO DO.

24              THE COURT:  OKAY.  IS IT DIFFERENT THAN

25    THE INSTRUCTIONS THAT APPLE DRAFTED?
```

```
 1              MR. JACOBS:  IN SAMSUNG'S LAST FILING,

 2      THEY SAID THOSE INSTRUCTIONS WERE FINE.

 3              MR. JOHNSON:  RIGHT.  AS LONG AS WE TAKE

 4      THE SIM CARD OUT, I THINK WE'RE FINE.

 5              THE COURT:  EVERYONE'S FINE.  OKAY.  I

 6      WAS JUST -- I HAD ALREADY INCLUDED APPLE'S DRAFT

 7      INSTRUCTION IN THE FINAL INSTRUCTIONS THAT WENT OUT

 8      LAST NIGHT, SO --

 9              MR. JACOBS:  TERRIFIC.  THAT WORKS GREAT.

10              THE COURT:  OKAY?

11              MR. JOHNSON:  OKAY.

12              THE COURT:  SO WE'LL JUST GO WITH THAT.

13              IF YOU FEEL LIKE WE -- I MEAN, IT WILL BE

14      IN THE INSTRUCTION, IT'LL BE READ TO THEM, THEY'LL

15      KNOW WHERE IT IS.  I THINK THAT SHOULD COVER IT.

16              MR. JOHNSON:  I THINK THAT'S FINE.

17              THE COURT:  THAT TAKES CARE OF PATCHES

18      AND UPDATES.

19              OKAY.  ALL RIGHT.  LET'S GO TO -- YOU

20      WANT TO HANDLE THE ADVERSE INFERENCE FIRST?  AND

21      BECAUSE THAT'S -- THERE ARE TWO PENDING MOTIONS, SO

22      I WON'T DOCK YOUR TIME ON THAT ONE.

23              ALL RIGHT.  WHY DON'T WE GO AHEAD AND

24      I'LL JUST TELL YOU WHAT I'M TENTATIVELY THINKING OF

25      DOING.  OKAY?
```

 1          SO I'M INTENDING TO ISSUE AN ORDER THAT

 2     SAYS THAT A MAGISTRATE JUDGE DOES HAVE AUTHORITY TO

 3     ISSUE SPOLIATION SANCTIONS, THAT IT'S NOT AN

 4     EXCLUSIVE ARTICLE III POWER, THAT THIS WAS NOT A

 5     DISPOSITIVE MOTION.

 6          I'M GOING TO AGREE WITH JUDGE GREWAL'S

 7     ORDER REGARDING A FINDING OF SPOLIATION AND

 8     PREJUDICE AS TO APPLE.

 9          SO I'M NOT FINDING CLEAR ERROR, AND I'M

10     GOING TO AFFIRM HIS SPOLIATION FINDING.

11          BUT I THINK IN LIGHT OF ALL OF THE

12     EVIDENCE THAT I HAVE SOME AUTHORITY TO TINKER WITH

13     THE ACTUAL INSTRUCTION, AND WHAT I HAVE FILED LAST

14     NIGHT IS WHAT I INTEND TO ISSUE AS TO THE ADVERSE

15     INFERENCE INSTRUCTION AGAINST SAMSUNG.

16          NOW, WITH REGARD TO SAMSUNG'S MOTION FOR

17     A MIRROR IMAGE INSTRUCTION AGAINST APPLE, THIS IS

18     WHAT I AM TENTATIVELY THINKING OF DOING.

19          YOU KNOW, OBVIOUSLY WOULD IT HAVE BEEN

20     BETTER HAD THIS MOTION BEEN FILED EARLIER?  OF

21     COURSE.

22          BUT I AM -- I TAKE SAMSUNG'S POINT THAT

23     THEY THOUGHT IT WOULD BE INCONSISTENT WITH THEIR

24     POSITION THAT THEY BELIEVE THAT THERE WAS NO

25     OBLIGATION TO PRESERVE AND RETAIN ANY DOCUMENTS

1    BASED ON THE AUGUST 2010 SETTLEMENT MEETING, AND SO

2    THEY WERE IN A BIT OF QUANDARY.  IF THEY FILED ONE

3    AGAINST APPLE BACK IN MAY, IT WOULD HAVE LOOKED

4    INCONSISTENT WITH THEIR POSITION.

5              ON THE OTHER HAND, THEY PROBABLY COULD

6    HAVE AND SHOULD HAVE DONE IT AS AN "IN THE

7    ALTERNATIVE" ARGUMENT.

8              ON THE OTHER HAND, IN SAMSUNG'S

9    OPPOSITION, WHICH WAS FILED IN MAY, SAMSUNG PLACED

10   APPLE ON NOTICE THAT IF THE DATE OF PRESERVATION

11   WAS AUGUST OF 2010, THAT THAT APPLIED EQUALLY TO

12   BOTH SIDES AND SO APPLE HAD THE SAME OBLIGATION TO

13   RETAIN AND PRESERVE ITS OWN DOCUMENTS.

14             AND, FRANKLY, I THINK THAT APPLE, WHEN IT

15   FILED ITS OWN ADVERSE INFERENCE MOTION AGAINST

16   SAMSUNG ON MAY 1, MUST HAVE KNOWN THAT THIS IS

17   GOING TO BE A TWO-WAY STREET.

18             SO, I MEAN, YOU KIND OF PAY FOR YOUR OWN

19   SUCCESS HERE.  YOU WERE SUCCESSFUL IN GETTING THAT

20   DATE, THAT AUGUST 2010 DATE.  NOW YOU'VE GOT TO

21   LIVE WITH IT AS WELL.

22             SO TO SAY IT WAS SOMEHOW PREJUDICIAL TO

23   APPLE FOR THIS MOTION TO BE FILED LATE, I -- YOU

24   KNOW, I FEEL LIKE THIS IS A SITUATION OF APPLE'S

25   OWN MAKING.  YOU SUCCEEDED IN GETTING AUGUST 2010

1    TO BE THE DATE WHEN THERE WAS A REASONABLE

2    APPREHENSION OF LITIGATION, THUS TRIGGERING

3    DOCUMENT RETENTION LITIGATION.

4         SO I DON'T FIND ANY PREJUDICE BASED ON

5    THE TIMING BECAUSE APPLE KNEW BETTER THAN ANYONE

6    ELSE WHAT ITS OWN DOCUMENT RETENTION POLICIES WERE

7    AS OF AUGUST OF 2010 THROUGH THE FILING DATE OF THE

8    COMPLAINT IN APRIL OF 2011.

9         SO, YOU KNOW, I'M AFFIRMING JUDGE GREWAL

10   ON A FINDING THAT THERE WAS REASONABLE APPREHENSION

11   OF LITIGATION AS OF THAT AUGUST DATE, AND I THINK

12   IT WAS FELT ON BOTH SIDES AND BOTH SIDES HAD

13   OBLIGATIONS TO PRESERVE THEIR DOCUMENTS.

14        YOU KNOW, WE CAN GET INTO THE NITTY

15   GRITTY OF IS SAMSUNG ELECTRONIC CORPORATION'S MY

16   SINGLE TWO-WEEK DELETION POLICY WORSE THAN APPLE'S

17   POLICY OF TELLING THEIR EMPLOYEES THAT THEIR E-MAIL

18   ACCOUNTS ARE TOO BIG AND THEY NEED TO START

19   REDUCING THE SIZE OF THEIR E-MAIL ACCOUNTS, SURE,

20   IN THAT COMPARISON, I THINK SAMSUNG'S IS WORSE THAN

21   APPLE'S.

22        BUT ON THE OTHER HAND, APPLE DIDN'T SERVE

23   ANY LITIGATION HOLD NOTICES UNTIL THE FILING OF THE

24   COMPLAINT IN APRIL OF 2011.

25        SO I JUST FIND IT VERY INCONSISTENT.

1          MR. MUELLER ARGUED VERY AGGRESSIVELY

2     DURING THE TRIAL THAT THERE WAS A DISPUTE AS OF

3     AUGUST 2010, THEREFORE, UNDER RULE 408, I SHOULD

4     EXCLUDE PRESENTATIONS MADE DURING THOSE MEETINGS.

5          SO HERE AGAIN, APPLE'S THE VICTIM OF ITS

6     OWN SUCCESS.  YOU SUCCEEDED, I ISSUED A LIMITING

7     INSTRUCTION ON THAT DOCUMENT SAYING YOU CAN'T

8     CONSIDER THIS FOR THE AMOUNT OF DISPUTE, AMOUNT IN

9     DISPUTE OR FOR LIABILITY BECAUSE IT IS COVERED BY

10    FEDERAL RULE OF EVIDENCE 408.

11         SO I JUST FIND APPLE'S POSITION ENTIRELY

12    INCONSISTENT.  YOU KNOW, ON THE ONE HAND YOU'RE

13    SAYING, WELL, THE BUSINESS RELATIONSHIP IS A REASON

14    WHY APPLE DIDN'T HAVE TO PRESERVE DOCUMENTS --

15    DIDN'T HAVE AN OBLIGATION TO PRESERVE DOCUMENTS,

16    BUT IT'S NOT A BASIS FOR SAMSUNG TO DO THE SAME.

17         OR YOU'RE SAYING, WELL, AUGUST OF 2010

18    WAS THE DATE BY WHICH SAMSUNG HAD A DUTY TO

19    PRESERVE DOCUMENTS, BUT NOT APPLE.

20         IT'S JUST ENTIRELY INCONSISTENT AND I AM

21    NOT GOING TO -- I MEAN, THIS -- I'M AFFIRMING THAT

22    AUGUST 2010 DATE WAS THE DATE TO START PRESERVING

23    DOCUMENTS BECAUSE THERE WAS A REASONABLE

24    APPREHENSION OF LITIGATION ON BOTH SIDES.

25         AND IT APPLIES TO BOTH SIDES.  YOU'RE

```
 1    BOTH UNDER THE SAME OBLIGATION.  AND I THINK IT'S

 2    WORSE -- I THINK THE LANGUAGE THAT IS IN MICRON

 3    TECH, I MEAN, SURELY THE PLAINTIFF KNOWS BETTER

 4    THAN THE DEFENDANT WHEN LITIGATION IS ACTUALLY

 5    GOING TO COMMENCE.

 6              SO ANYWAY, I THINK THAT APPLE'S TAKING

 7    THE VERY AGGRESSIVE POSITION THAT AUGUST OF 2010 IS

 8    THE DATE THAT DOCUMENT PRESERVATION OBLIGATIONS

 9    BEGAN, AND YET APPLE DID NOTHING UNTIL -- FOR EIGHT

10    MONTHS UNTIL APRIL OF 2011, DIDN'T SERVE A SINGLE

11    LITIGATION HOLD NOTICE, WAS FULLY AWARE THAT IT HAD

12    ITS OWN, YOUR E-MAIL ACCOUNT IS TOO FULL, START

13    DELETING DOCUMENTS TO GET IT BELOW A CERTAIN

14    VOLUME.  YOU'RE EQUALLY CULPABLE.

15              AND THE FACT THAT MR. JOBS NEVER GOT A

16    LITIGATION HOLD NOTICE WHEN HE'S AN INVENTOR ON THE

17    D'087, THE D'677, THE D'889?

18              SO I ALSO AM GOING TO ISSUE AN ADVERSE

19    INFERENCE ORDER AGAINST APPLE.  BUT IT'S GOING TO

20    BE A MIRROR IMAGE.  IT'S GOING TO BE THE SAME

21    LANGUAGE.

22              SO LET ME GO AHEAD AND HEAR FROM APPLE.

23    WHAT DO YOU THINK?

24              MS. TUCHER:  THANK YOU, YOUR HONOR.

25    ALISON TUCHER FROM MORRISON & FOERSTER ON BEHALF OF
```

```
 1    APPLE.

 2              WE APPRECIATE THAT YOU ARE AFFIRMING THE

 3    AUGUST DATE THAT JUDGE GREWAL FOUND APPLIED TO

 4    SAMSUNG.

 5              WE ARE PREPARED FOR YOU TO JUDGE APPLE'S

 6    CONDUCT BY THE SAME STANDARDS THAT YOU APPLY IN

 7    JUDGING SAMSUNG'S CONDUCT, BUT I WOULD POINT OUT

 8    SOME IMPORTANT DIFFERENCES.

 9              THE REASON THAT THE AUGUST DATE APPLIES

10    AGAINST SAMSUNG BUT DOES NOT APPLY AGAINST APPLE IS

11    BECAUSE ONLY SAMSUNG KNEW WHAT SAMSUNG WAS GOING TO

12    DO BETWEEN AUGUST AND APRIL.

13              SAMSUNG KNEW THAT THEY WERE GOING TO

14    CONTINUE TO COPY APPLE, THAT THEY WERE GOING TO

15    CONTINUE TO BRING INFRINGING PRODUCTS TO MARKET,

16    AND IN THEIR INTERNAL DOCUMENTS, WE SEE THAT THAT'S

17    WHAT THEY WERE DOING.

18              THAT'S THE EVIDENCE THAT JUDGE GREWAL HAD

19    BEFORE HIM WHEN HE DECIDED THAT AUGUST WAS THE

20    CRITICAL DATE FOR SAMSUNG.

21              HE ALSO HAD SAMSUNG'S ADMISSION IN THE

22    LITIGATION HOLD NOTICE THAT THEY KNEW THAT

23    LITIGATION WAS REASONABLY LIKELY, PRECISELY BECAUSE

24    THEY KNEW THAT THEY WERE GOING TO CONTINUE TO

25    INFRINGE APPLE'S INTELLECTUAL PROPERTY.
```

3738

```
1              APPLE DIDN'T KNOW ANY OF THOSE THINGS,
2    AND THAT'S WHY APPLE IS IN A DIFFERENT SITUATION
3    WITH REGARD TO WHAT THE TRIGGER DATE SHOULD BE.
4              BOTH SIDES KNEW THAT THEY HAD A BUSINESS
5    RELATIONSHIP.  BUT SAMSUNG KNEW THAT THE BUSINESS
6    RELATIONSHIP WASN'T GOING TO KEEP THEM FROM
7    COPYING.
8              APPLE KNEW THAT THE PARTIES WERE TALKING
9    AND THAT IT COULD VERY WELL MAKE A DIFFERENCE
10   BECAUSE APPLE KNEW AND SAMSUNG KNEW THAT APPLE WAS
11   SAMSUNG'S LARGEST CUSTOMER.
12             APPLE HAD A REASON TO BELIEVE THAT THAT
13   WOULD MAKE A DIFFERENCE TO SAMSUNG.  IT TURNED OUT
14   IT DIDN'T.
15             WHEN APPLE LEARNED THAT IT DIDN'T, APPLE
16   HAD REASONABLE APPREHENSION OF SUIT, BROUGHT SUIT,
17   ISSUED THE LITIGATION HOLD NOTICES AND SO ON.
18             THAT'S THE FIRST IMPORTANT -- ACTUALLY,
19   THAT'S THE SECOND IMPORTANT DIFFERENCE.
20             THE FIRST IMPORTANT DIFFERENCE IS THAT
21   JUDGE GREWAL ISSUED AN ORDER AGAINST SAMSUNG, AND
22   OF COURSE JUDGE GREWAL DID NOT ISSUE AN ORDER
23   AGAINST APPLE, SO THERE'S NOTHING TO AFFIRM WITH
24   REGARD TO APPLE WITH REGARD TO THE AUGUST TRIGGER
25   DATE.
```

```
 1              BUT MOVING ON FROM THAT, THE MOST

 2   IMPORTANT DIFFERENCE IS THAT THERE'S ABSOLUTELY NO

 3   EVIDENCE OF ANY DOCUMENTS DESTROYED AT APPLE, AND

 4   THERE'S COPIOUS EVIDENCE OF SPECIFIC DOCUMENTS THAT

 5   ARE RELEVANT TO THE LITIGATION THAT WERE DESTROYED

 6   AT SAMSUNG.

 7              SO, FOR EXAMPLE, IN OUR BRIEF OF THIS

 8   MORNING, WE POINTED OUT THE EVIDENCE THAT

 9   WONG PYO HONG, THE HEAD OF PRODUCT STRATEGY,

10   PRODUCED ZERO E-MAILS IN THIS LITIGATION.

11              WE KNOW HE HAD RESPONSIVE DOCUMENTS, BOTH

12   BEFORE AND AFTER AUGUST OF 2010.  THEY INCLUDED

13   CRITICAL DOCUMENTS, INCLUDING DIRECTIONS TO HIS,

14   HIS ENTIRE TEAM THAT THEY PREPARE COMPARISONS OF

15   PRODUCT IN DEVELOPMENT AT SAMSUNG AGAINST THE

16   COMPARABLE APPLE PRODUCTS.

17              WE KNOW THAT MIN-HYOUK LEE, WHO THE

18   EVIDENCE SHOWS WAS THE PRIMARY DEVELOPER OF THE

19   GALAXY S PHONES THAT CAUSED THIS DISPUTE IN THE

20   FIRST PLACE, MIN-HYOUK LEE PRODUCED ZERO E-MAILS.

21              WE KNOW HE HAD RESPONSIVE E-MAILS FROM

22   AUGUST OF 2010 BECAUSE SAMSUNG WAS CONTINUING TO

23   ROLL OUT GALAXY S MODELS IN THE UNITED STATES RIGHT

24   THROUGH FEBRUARY OF 2011.

25              WE KNOW THAT HYONG SHIN PARK, WHO YOUR
```

```
 1    HONOR RULED COULD NOT COME TO TESTIFY, BUT WHO WAS
 2    ON SAMSUNG'S LIST OF THE MOST RELEVANT WITNESSES IN
 3    THE CASE, PRODUCED ZERO E-MAILS.
 4              WE KNOW THAT SUNGSIK LEE PRODUCED ZERO
 5    E-MAILS.  SUNGSIK LEE IS ALSO SOMEONE WHO WAS ON
 6    SAMSUNG'S ORIGINAL WITNESS LIST.
 7              SO THESE ARE WITNESSES WHO ARE CRUCIAL TO
 8    SAMSUNG'S CASE WHO PRODUCED ZERO E-MAILS.  THAT'S
 9    WHY YOU HAVE EVIDENCE THAT SAMSUNG SPOLIATED.
10              BUT APPLE IS IN A VERY, VERY DIFFERENT
11    SITUATION.  THE ONE CUSTODIAN YOU MENTIONED IS
12    STEVE JOBS.  APPLE HAS ALL OF STEVE JOBS' E-MAILS.
13    NONE HAVE BEEN SPOLIATED.
14              THE COURT:  WELL, IF WE'RE GOING TO LOOK
15    AT THE STATISTICAL COMPARISONS, THE NUMBER THAT
16    WERE ACTUALLY PRODUCED FROM HIM AS CUSTODIAN IS FAR
17    DWARFED IN COMPARISON TO ALL OF THE E-MAILS THAT
18    WERE PRODUCED BY OTHERS IN WHICH HE WAS EITHER A
19    SENDER OR RECIPIENT.
20              MS. TUCHER:  THE REASON I STARTED WITH
21    THE SPECIFICS OF MIN-HYOUK LEE AND DR. HONG IS
22    BECAUSE I WANTED TO MAKE CLEAR WE ARE NOT RELYING,
23    FIRST AND FOREMOST, ON STATISTICS.
24              WE ARE RELYING, FOR OUR EVIDENCE AGAINST
25    SAMSUNG, ON SPECIFIC E-MAILS FOR SPECIFIC
```

3741

```
 1    CUSTODIANS THAT WE KNOW THEY SHOULD HAVE HAD AND

 2    DIDN'T.  IT'S TRUE THAT WE GENERALIZE THE

 3    STATISTICS TO SHOW THE EXTENT OF THE PROBLEM.

 4          BUT THE EXAMPLE OF STEVE JOBS, THERE'S NO

 5    DISPUTE IN THE RECORD THAT -- APPLE ARCHIVES HIS

 6    E-MAILS.  THEY'VE DONE IT ON A REGULAR BASIS.

 7          SO IF YOUR QUESTION IS, HOW COULD IT BE

 8    THAT THERE'S THEN A DISCREPANCY BETWEEN THE NUMBER

 9    OF E-MAILS PRODUCED FROM MR. JOBS' AND FROM OTHER

10    PEOPLE'S FILES THAT INVOLVE CORRESPONDENCE WITH

11    MR. JOBS, I CAN EXPLAIN SEVERAL DIFFERENT REASONS.

12          ONE IS FOR EACH CUSTODIAN, THERE WAS A

13    DIFFERENT -- WELL, FOR SETS OF CUSTODIANS, THERE

14    WERE DIFFERENT SEARCH TERMS.  SO DEPENDING WHAT

15    SEARCH TERMS WERE USED TO EXAMINE ANY SET OF FILES,

16    YOU'RE GOING TO GET A DIFFERENT NUMBER OF E-MAILS.

17          ANOTHER IS SIMPLY -- I GUESS YOU'D CALLED

18    IT MULTIPLICATION.  IF STEVE JOBS SENDS AN E-MAIL

19    TO 15 PEOPLE AND EACH OF THEM SAVE IT AND EACH OF

20    THEM PRODUCE THAT E-MAIL AND STEVE JOBS DOES,

21    YOU'RE GOING TO NOW HAVE 16 COPIES OF AN E-MAIL AND

22    ONLY ONE OF THEM IS FROM STEVE JOBS.  THAT'S GOING

23    TO MAKE IT LOOK AS THOUGH STEVE JOBS ISN'T

24    PRODUCING AS MANY BECAUSE HE PRODUCED ONE OF THE

25    16.  BUT IN FACT, HE PRODUCED EXACTLY THE SAME
```

3742

```
 1    E-MAIL AS THE OTHER 15.

 2             SO YOU CAN'T JUST LOOK AT THE STATISTICS

 3    AND FROM THE STATISTICS ASSUME THAT E-MAILS HAVE

 4    BEEN SPOLIATED.

 5             THE COURT:  BUT WHY WASN'T MR. JOBS GIVEN

 6    A LITIGATION HOLD NOTICE?

 7             MS. TUCHER:  BECAUSE APPLE HAS MADE

 8    SPECIFIC ARRANGEMENTS WITH MR. JOBS, IN LIGHT OF

 9    HIS SPECIFIC ROLE AT THE COMPANY, AND PERHAPS IN

10    LIGHT OF OTHER REASONS AS WELL, TO COLLECT ALL OF

11    HIS E-MAILS ON A REGULAR BASIS.

12             HE WAS ALSO APPRISED, THROUGH

13    CONVERSATIONS THAT DIDN'T INVOLVE A WRITTEN NOTICE,

14    OF WHAT THE OBLIGATIONS WERE TO PRESERVE EVIDENCE.

15             THE COURT:  WELL, I'M STILL NOT

16    PERSUADED.  DO YOU NOT FEEL THAT THERE'S SOME

17    TENSION BETWEEN SAYING THERE WAS A DISPUTE AS OF

18    AUGUST OF 2010, THEREFORE, DOCUMENTATION FROM THAT

19    MEETING SHOULD BE PROTECTED UNDER FEDERAL RULE OF

20    EVIDENCE 408?  SAMSUNG HAD AN OBLIGATION TO

21    PRESERVE DATA BECAUSE SAMSUNG HAD A REASONABLE

22    APPREHENSION OF LITIGATION WITH ITSELF AND NOT WITH

23    ANOTHER PARTY?  I MEAN, IT JUST DOESN'T MAKE SENSE.

24             MS. TUCHER:  I DO UNDERSTAND WHY YOU SEE

25    A TENSION.  I BELIEVE THE TENSION IS EXPLAINABLE.
```

1            BUT I THINK THE MOST IMPORTANT POINT HERE

2     IS THAT THE TRIGGER POINT IS NOT DISPOSITIVE.

3     BECAUSE SAMSUNG HAS TO PROVE, THEY HAVE TO HAVE

4     EVIDENCE NOT ONLY OF A TRIGGER POINT, BUT OF

5     DESTRUCTION, AND THEY HAVE NO EVIDENCE OF

6     DESTRUCTION.

7            IF THEY DIDN'T THINK THAT THEY'D SEEN

8     ENOUGH OF STEVE JOBS' E-MAILS, THEY COULD HAVE

9     ASKED FOR MORE.  THEY COULD HAVE LOOKED AT THE

10    STATISTICS AND SAID "THE STATISTICS SUGGEST YOU

11    SHOULD HAVE GIVEN US MORE STEVE JOBS E-MAILS."  OR

12    THEY COULD HAVE LOOKED AT SEARCH TERMS AND SAID

13    "YOU SHOULD HAVE SEARCHED FOR A BROADER CATEGORY OF

14    DOCUMENTS FROM MR. JOBS."

15            THE COURT:  BUT WHEN THE SHOE WAS ON THE

16    OTHER FOOT, YOU WERE ARGUING, HOW CAN WE PROVE

17    SOMETHING THAT DOESN'T EXIST ANYMORE?

18            BUT REGARDLESS, THEY HAVE A LOT OF

19    STATISTICAL INFORMATION FAR BEYOND MR. JOBS, AND

20    WHY, YOU KNOW, LITIGATION HOLD NOTICES WERE GIVEN

21    LATE TO SCOTT FORSTALL, WHO TESTIFIED DURING THE

22    TRIAL, WHO WAS AN INVENTOR ON SOME OF THE PATENTS,

23    I JUST DON'T FEEL, BASED ON THE RECORD, THAT APPLE

24    FULFILLED ITS OWN OBLIGATIONS TO TIMELY ISSUE

25    LITIGATION HOLD NOTICES.

```
 1              MS. TUCHER:  YOUR HONOR, THIS IS TOO

 2    IMPORTANT AN ISSUE FOR ME TO JUST SKIP OVER OTHER

 3    CUSTODIANS.  I STARTED WITH MR. JOBS BECAUSE YOU

 4    MENTIONED HIM.

 5              BUT LET'S TAKE THE EXAMPLE OF

 6    SCOTT FORSTALL.  HE HAS LITERALLY DOZENS OF

 7    DOCUMENT RETENTION NOTICES THAT HE'S RECEIVED.  I

 8    THINK THE NUMBER IS SOMETHING LIKE 78.

 9              THE COURT:  RIGHT.  BUT YOU KNOW WHAT?

10    YOU DON'T GET TO SAY "BECAUSE I HAVE LITIGATION

11    WITH EVERY OTHER SMARTPHONE MANUFACTURER IN THE

12    WORLD, OR WHOEVER IT IS, THAT THAT RELIEVES ME OF

13    MY OBLIGATION TO PRESERVE DOCUMENTS IN THIS CASE

14    FOR ISSUES AND PRODUCTS AND INTELLECTUAL PROPERTY

15    THAT IS THE SUBJECT OF THIS CASE."

16              I WAS NOT PERSUADED BY THE LIST OF

17    OTHER -- YOU KNOW, OBVIOUSLY NO ONE WOULD DISPUTE

18    THAT APPLE IS INVOLVED IN A LOT OF LITIGATIONS, SO

19    THAT JUST DOESN'T ABSOLVE APPLE OF ITS OBLIGATION

20    TO DO LITIGATION HOLDS THAT ARE SPECIFIC TO THIS

21    CASE.

22              MS. TUCHER:  APPLE UNDERSTANDS ITS

23    OBLIGATION TO ISSUE LITIGATION HOLDS THAT ARE

24    SPECIFIC TO THIS CASE, AND IT DID.

25              BUT THE REASON THAT IT'S IMPORTANT THAT
```

1    MR. FORSTALL WAS SUBJECT TO 78 DOCUMENT RETENTION

2    NOTICES IN OTHER LITIGATIONS IS THAT HE'S ALSO HAD

3    HIS DOCUMENTS COLLECTED MANY TIMES IN OTHER

4    LITIGATIONS.

5             AND WHEN APPLE GOES TO COLLECT DOCUMENTS

6    FROM A CUSTODIAN LIKE MR. FORSTALL, IT DOESN'T JUST

7    SAY "HERE'S THE SPECIFIC DISPUTE, FIND ME THE

8    RELEVANT E-MAILS."

9             IT SENDS IN AN OUTSIDE VENDOR TO DO A

10   WHOLESALE COLLECTION OF ALL WORK-RELATED E-MAILS.

11   SO BECAUSE MR. FORSTALL WAS A CUSTODIAN IN OTHER

12   LITIGATIONS AND PERIODICALLY THAT'S HAPPENED TO

13   HIM, PERIODICALLY HE GETS AN ENTIRE SNAPSHOT, AN

14   ENTIRE COPY OF HIS WORK-RELATED E-MAILS RETAINED.

15            AND THOSE ARE AVAILABLE TO THIS DAY.  IF

16   THERE HAD BEEN A DISPUTE IN THIS CASE ABOUT WHETHER

17   MR. FORSTALL'S E-MAIL COLLECTION HAD BEEN ADEQUATE,

18   OR WHETHER HIS PRESERVATION HAD BEGUN EARLY ENOUGH,

19   APPLE COULD HAVE SAID, WHEN THE ISSUE FIRST AROSE,

20   "WE'LL SHOW YOU ALL OF THE RELEVANT E-MAILS FROM

21   MR. FORSTALL BECAUSE WE HAVE THEM."

22            THERE IS NO SPOLIATION MOTION UNTIL THERE

23   IS EVIDENCE OF DESTROYED, DESTROYED EVIDENCE.

24            AND SO USING THE EXAMPLE OF MR. JOBS OR

25   USING THE EXAMPLE OF MR. FORSTALL -- OR WE CAN KEEP

1    GOING DOWN THE LIST OF CUSTODIANS, WE CAN TALK

2    ABOUT ANY ONE THAT YOU WANT -- IN OUR PAPERS THIS

3    MORNING, WE TALKED ABOUT THE NINE THAT SAMSUNG HAD

4    CHOSEN WHEN THEY DID THIS, LET'S CALL IT

5    DISCREPANCY ANALYSIS.

6           THEY MADE A TABLE OF NINE CUSTODIANS AND

7    SAID THESE ARE THE NINE PEOPLE WHO DIDN'T PRODUCE

8    ENOUGH E-MAIL IF YOU COMPARE WHAT THEY PRODUCED

9    FROM THEIR OWN FILES TO WHAT OTHER PEOPLE PRODUCED

10   OF CORRESPONDENCE INVOLVING THEM.

11          SO WE LOOKED AT THOSE NINE AND WE SAID,

12   DID THEY NOT SAVE E-MAIL FROM FAR ENOUGH BACK?

13          AND WE FOUND THAT MORE THAN

14   THREE-QUARTERS OF THE E-MAIL THAT THEY PRODUCED,

15   THOSE NINE EMPLOYEES PRODUCED, PRE-DATES AUGUST OF

16   2010.

17          SO IF THERE'S A QUESTION OF WHETHER THOSE

18   NINE EMPLOYEES SPOLIATED E-MAIL BECAUSE THEY DIDN'T

19   GET A DOCUMENT RETENTION NOTICE UNTIL SPRING OF

20   2011, WE CAN ANSWER THAT 100 PERCENT WITH

21   CONFIDENCE THAT THAT DIDN'T HAPPEN, BECAUSE WE KNOW

22   THAT THEY SAVED E-MAILS FROM BEFORE AUGUST OF 2010,

23   MORE THAN THREE QUARTERS OF THE E-MAILS THEY

24   PRODUCED.  FOR SOME OF THEM IT'S 88 PERCENT.

25          THEY WOULDN'T HAVE BEEN SAVING ALL OF

3747

```
1    THOSE E-MAILS AND APPLE WOULDN'T HAVE BEEN ABLE TO

2    PRODUCE ALL OF THOSE E-MAILS IF, AS SAMSUNG

3    CONTENDS, APPLE IS SOMEHOW SPOLIATING EVIDENCE

4    BECAUSE IT DIDN'T ISSUE A DOCUMENT RETENTION NOTICE

5    IN AUGUST.

6           THAT'S THE HEART OF OUR CASE.  THAT'S

7    THE -- THAT'S ONE OF THE MANY PIECES OF EXPLANATION

8    FOR WHY SAMSUNG'S STATISTICAL ANALYSIS DOESN'T

9    PROVE SPOLIATION.

10          THE COURT:  ALL RIGHT.  IS THERE ANYTHING

11   ELSE THAT YOU'D LIKE TO STATE?

12          MS. TUCHER:  I WOULD LIKE TO ADDRESS ANY

13   CUSTODIAN ABOUT WHOM YOUR HONOR HAS QUESTIONS

14   BECAUSE IT'S IMPORTANT TO MY CLIENT THAT YOU

15   UNDERSTAND THAT FOR EVERY SINGLE ONE OF THE

16   CUSTODIANS, WE HAVE AN ADEQUATE PROGRAM IN PLACE.

17          THE COURT:  WHY DIDN'T YOU SERVE A

18   LITIGATION HOLD NOTICE IN AUGUST OF 2010?

19          MS. TUCHER:  BECAUSE IN AUGUST OF 2010 WE

20   DIDN'T REASONABLY APPREHEND LITIGATION.

21          THE COURT:  OKAY.  BUT YOU'RE ARGUING

22   THAT YOU SHOULD GET EVIDENCE EXCLUDED AT TRIAL

23   BASED ON FEDERAL RULE OF EVIDENCE 408 BECAUSE THERE

24   IS A DISPUTE.  THAT'S WHAT MR. MUELLER ARGUED AND

25   HE SUCCEEDED.
```

```
 1              (DISCUSSION OFF THE RECORD BETWEEN

 2      COUNSEL.)

 3              MR. JACOBS:  YOUR HONOR, WE'VE GONE BACK

 4      TO CHECK AND MR. JOBS' RECORDS INDICATE A

 5      LITIGATION HOLD NOTICE WAS PROVIDED IN

 6      APPLE/SAMSUNG ON APRIL 20TH, 2011.  SO MR. JOBS DID

 7      RECEIVE A LITIGATION HOLD NOTICE IN THIS CASE

 8      AROUND THE TIME THE COMPLAINT WAS FILED.

 9              THE COURT:  WHEN DID MR. FORSTALL GET

10      HIS?

11              MR. JACOBS:  I DON'T HAVE THAT ONE IN

12      THIS RECORD.

13              IN THE CASE OF -- TO ANSWER YOUR SPECIFIC

14      QUESTION WHILE MS. TUCHER IS LOOKING, OBVIOUSLY YOU

15      CAN HAVE A DISAGREEMENT THAT GIVES RISE TO A

16      SETTLEMENT NEGOTIATION BEFORE YOU THINK THAT THAT

17      AGREEMENT IS GOING TO GIVE RISE TO THE LITIGATION,

18      AND THE DOCUMENTS OF COURSE THEMSELVES ARE LABELED

19      RULE 408 TO ENCOURAGE A SETTLEMENT DISCUSSION AND

20      AVOID THE NEED FOR LITIGATION AND AVOID THE NEED

21      FOR OUTSIDE COUNSEL AND TO GET ALL OF THAT

22      LAUNCHED.  SO THE TWO ARE NOT CONCEPTUALLY

23      INCONSISTENT.

24              THE COURT:  ALL RIGHT.  I'M GOING TO

25      START COUNTING TOWARDS YOUR OBJECTIONS TIME BECAUSE
```

1    THIS WAS YOUR VERY FIRST OBJECTION AND I'VE HEARD,

2    WHAT, ABOUT 20, 25 MINUTES ON THIS.

3            MS. TUCHER:  THEN LET ME QUICKLY ANSWER

4    YOUR QUESTION ABOUT MR. FORSTALL.

5            THE COURT:  GO AHEAD.

6            MS. TUCHER:  HE RECEIVED HIS FIRST

7    DOCUMENT RETENTION NOTICE ON JUNE 28TH OF 2011.

8    HIS PATENT, THE '163 PATENT, WAS NOT IN THE

9    ORIGINAL COMPLAINT.  THAT WAS IN THE AMENDED

10   COMPLAINT, SO THAT WAS WITHIN DAYS.

11           HE RECEIVED A SECOND DOCUMENT RETENTION

12   NOTICE A MONTH LATER.

13           AND THAT'S JUST IN THIS CASE.  HE -- AS I

14   SAID, HE HAD DOZENS OF EARLIER CASES.

15           STEVEN LEMANY, WHO'S ANOTHER CUSTODIAN

16   THAT SAMSUNG MADE A BIG DEAL, RECEIVED A SERIES OF

17   DOCUMENT RETENTION NOTICES IN THIS CASE AND, WHEN

18   HE WAS DEPOSED, HE WAS ASKED ABOUT THE DOCUMENT

19   COLLECTION OF HIS FILES AND HE SAID "THEY'VE COME

20   IN SO MANY TIMES TO COPY ALL OF MY WORK-RELATED

21   E-MAILS, I CAN'T TELL YOU WHICH HAPPENED FOR WHICH

22   CASE ON WHICH DATE."

23           SO THIS IS PART OF THE CULTURE OF

24   PRESERVATION AT APPLE THAT INFORMS APPLE'S DECISION

25   ABOUT WHEN IT HAS TO ISSUE LITIGATION NOTICES,

```
 1    LITIGATION RETENTION NOTICES, AND THAT I THINK
 2    CONCLUSIVELY PROVES THAT THERE'S NO EVIDENCE OF
 3    DESTRUCTION OF DOCUMENTS HERE.
 4              THANK YOU.
 5              THE COURT:  OKAY.  THANK YOU.
 6              DOES SAMSUNG WANT TO RESPOND?
 7              MR. JOHNSON:  YOUR HONOR, UNLESS YOU HAVE
 8    SPECIFIC QUESTIONS OF SAMSUNG, I KNOW WE HAVE A LOT
 9    TO ACCOMPLISH TODAY AND TO GET READY FOR TOMORROW.
10    SO IF THERE'S SPECIFIC QUESTIONS, MS. ESTRICH, A
11    PARTNER OF MINE, WILL ADDRESS THEM.  OTHERWISE WE
12    CAN MOVE ON.
13              THE COURT:  WELL, YOU WANT TO ADDRESS
14    THIS SMALL POINT ABOUT DR. HONG NOT PRODUCING ANY
15    E-MAIL?
16              MR. JOHNSON:  I'LL LET MS. ESTRICH HANDLE
17    THAT.
18              THE COURT:  AND DR. MIN-HYOUK LEE, OR
19    MR. MIN-HYOUK LEE.
20              MS. ESTRICH:  FIRST OF ALL, THANK YOU,
21    YOUR HONOR.  SUSAN ESTRICH FROM QUINN EMMANUEL FOR
22    SAMSUNG.
23              DR. HONG, THE E-MAIL THAT THEY CALL OUT,
24    IS A MARCH 2010 E-MAIL DEALING WITH THE IPAD 2.
25              THEY ALSO CALL OUT A PX 43 E-MAIL WHICH
```

1    WAS FROM FEBRUARY 2010.

2              IN THE CASE OF MR. MIN-HYOUK LEE, EXCUSE

3    ME --

4              THE COURT:  I'M LOOKING AT ONE APRIL 17TH

5    OF 2011 REGARDING COMPARISONS OF APPLE PRODUCTS.

6              MS. ESTRICH:  YOUR HONOR, WHAT I WOULD

7    SIMPLY SAY IS THAT IN OUR BRIEF, WE CALL OUT JUST

8    AS MANY, IF NOT MORE, E-MAILS FROM VARIOUS

9    CUSTODIANS THAT WERE SIMPLY NOT PRODUCED BY THOSE

10   CUSTODIANS.

11             I'LL GIVE YOU A COUPLE OF EXAMPLES THAT

12   THE BRIEF HAS DETAILED TABLES THAT, IN EACH CASE,

13   ARE AS DETAILED AND AS TROUBLING, IF THEY ARE

14   TROUBLING, AS THEIRS.

15             BUT WE'RE REFERRING TO MR. JOBS.  I THINK

16   THE NUMBER ON MR. JOBS IS THAT -- THERE'S SO MANY

17   NUMBERS HERE -- BUT MR. JOBS PRODUCED ZERO E-MAILS

18   FROM AUGUST TO APRIL.  51 CUSTODIAL E-MAILS TOTAL,

19   AND WE COUNTED, BASED ON THEIR COUNT AS WELL, 1670

20   NON-CUSTODIAN E MAILS.

21             MR. IVE PRODUCED NINE E-MAILS FROM AUGUST

22   TO APRIL, 45 OVERALL, AND 6 --

23             THE COURT:  BUT WHY ARE WE GETTING ZERO

24   FOR DR. HONG AND MR. LEE?

25             MS. ESTRICH:  I THINK THE MAJORITY -- IN

```
1    MR. LEE'S CASE, HE WAS THE DESIGNER WHO FINISHED

2    HIS PRODUCT THAT'S AT ISSUE IN JULY 2010.  SO THERE

3    WOULD BE NO PARTICULAR REASON THAT WE WOULD ASSUME

4    THAT HE WOULD HAVE RESPONSIVE E-MAILS GOING TO THIS

5    CASE AFTER THE PRODUCT WAS RELEASED.

6         I THINK THE PROOF THAT -- I KNOW THAT THE

7    PROOF THAT APPLE OFFERED AS TO OUR SPOLIATION

8    CONSISTED ENTIRELY OF CALLING OUT INDIVIDUALS,

9    WHICH WE DID IN THEIRS, AND PROVIDING CHARTS, BOTH

10   OF CUSTODIAL AND NON-CUSTODIAL PRODUCTION.

11        AND IN BOTH CASES, BOTH SIDES WERE ABLE

12   TO SHOW THAT THERE WAS A REAL DISCREPANCY.

13        IN APPLE'S CASE, AS THEY'VE ACKNOWLEDGED,

14   THEY DID NOT ISSUE A LITIGATION HOLD NOTICE IN

15   AUGUST 2010.  THEY CONTINUED TO HAVE A POLICY WHERE

16   EMPLOYEES WERE REGULARLY REMINDED TO AUTOMATICALLY

17   ELIMINATE THEIR DOCUMENTS.

18        THIS WOULD BE THE FIRST CASE, YOUR HONOR,

19   IN WHICH A DEFENDANT IS HELD TO AN EARLIER DATE

20   THAN A PLAINTIFF.

21        AS YOU MENTIONED, MICRON SUGGESTS JUST

22   THE OPPOSITE.

23        I THINK OUR BRIEFS, WE'VE BRIEFED THIS

24   MANY, MANY TIMES, MAKE CLEAR THAT OUR STATISTICAL

25   SHOWING AND OUR CALL OUTS OF INDIVIDUAL INVENTORS,
```

1    SUCH AS MR. JOBS PRODUCING NOTHING FROM HIS FILES,

2    IS EQUIVALENT TO THEIRS.

3              AND THE SPECIFIC CALL OUTS AS TO

4    DOCUMENTS CAME FROM OTHER CUSTODIANS AND THEY HAVE

5    PREVIOUSLY ARGUED, "WELL, YOU'RE CALLING OUT

6    MR. JOBS, BUT YOU GOT IT FROM SOMEBODY ELSE," OR

7    "YOU'RE CALLING OUT MR. IVE, BUT YOU GOT IT FROM

8    SOMEBODY ELSE."

9              AND IN EVERY CASE, THE SAME IS TRUE ON

10   OUR SIDE.

11             SO WE AGREE WITH THE COURT.  WE'VE TAKEN

12   THE POSITION CONSISTENTLY THAT APRIL WAS THE

13   APPROPRIATE DATE, BUT IF AUGUST WAS THE APPROPRIATE

14   DATE, THEN BOTH SIDES ARE SUBJECT TO GIVING

15   LITIGATION HOLD NOTICES.

16             AND IN SOME CASES, THEY DIDN'T ISSUE

17   LITIGATION HOLD NOTICES TO KEY CUSTODIANS UNTIL SIX

18   MONTHS AFTER THE SUIT WAS FILED.

19             SO, YOUR HONOR, IF, AS YOUR TENTATIVE

20   INSTRUCTION DOES, THE SAME STANDARDS ARE APPLIED TO

21   BOTH SIDES AND IF THE SAME STATISTICAL EVIDENCE

22   THAT IS USED TO PROVE THAT WE SPOLIATED, IF THAT'S

23   WHAT IS CONSIDERED, THE SAME TEST APPLIED TO THEM

24   PRODUCES EXACTLY THE SAME RESULT.

25             SO IT HAS BEEN OUR POSITION THAT NO

3754

```
 1    INSTRUCTION SHOULD BE GIVEN AS TO EITHER SIDE, BUT
 2    IF AN INSTRUCTION IS GIVEN AS TO US, THEN IT WOULD
 3    BE ABSOLUTELY UNFAIR AND UNPRECEDENTED TO HOLD THE
 4    OTHER SIDE, WHICH DIDN'T ISSUE LITIGATION HOLD
 5    NOTICES AND IN WHICH THERE ARE JUST AS MANY
 6    DISCREPANCIES, TO A DIFFERENT STANDARD.
 7              THE COURT:  LET ME ASK APPLE, IF I'M
 8    GOING TO KEEP MY TENTATIVE AS MY FINAL AND ISSUE
 9    THE IDENTICAL ADVERSE INFERENCE INSTRUCTIONS TO
10    BOTH SIDES, DO YOU WANT TO JUST HAVE AN AGREEMENT
11    THAT I'M NOT GOING TO ISSUE ONE TO EITHER SIDE, OR
12    DO YOU WANT ME TO JUST GO AHEAD AND DO IT AS TO
13    BOTH SIDES?
14              MS. ESTRICH:  I THINK OUR VIEW IS THAT WE
15    WOULD AGREE TO HAVE NONE ISSUED AS TO EITHER SIDE.
16              WE HAVE HUNDREDS OF PAGES OF
17    INSTRUCTIONS, AS I UNDERSTAND, AND AN INSTRUCTION
18    THAT IS THE SAME AS TO BOTH SIDES IS, IN SOME
19    SENSE, ONE THAT BALANCES.
20              BUT WE HAVE NOT PREVIOUSLY DISCUSSED
21    THIS, BUT THAT'S OUR POSITION.
22              MS. TUCHER:  YOUR HONOR, MAY I MENTION
23    SEVERAL POINTS BEFORE I ANSWER THAT QUESTION --
24              THE COURT:  OKAY.
25              MS. TUCHER:  -- REALIZING THAT IT COMES
```

```
 1    OFF OUR CLOCK.

 2              THE COURT:  WELL, I'LL GIVE YOU A FEW

 3    MINUTES FOR FREE RIGHT NOW.

 4              MS. TUCHER:  THANK YOU.

 5              COUNSEL MENTIONED THE REMINDERS THAT GO

 6    OUT TO CERTAIN APPLE EMPLOYEES ABOUT THE SIZE OF

 7    THEIR E-MAIL BOXES.

 8              A COUPLE THINGS THAT ARE REALLY IMPORTANT

 9    TO KNOW.  FIRST OF ALL, MOST OF THE CUSTODIANS THAT

10    ARE OF INTEREST IN THIS CASE DIDN'T GET THOSE

11    NOTICES AT ALL BECAUSE THEY WERE SUBJECT TO THE

12    LITIGATION -- TO THE DOCUMENT RETENTION HOLDS AND,

13    BECAUSE OF THEIR STATUS IN OTHER LITIGATIONS, THEY

14    DIDN'T GET THOSE NOTICES.

15              SO WE HAVE NO EVIDENCE IN THE RECORD OF

16    ANY PARTICULAR CUSTODIAN IN THIS CASE GETTING EVEN

17    THAT KIND OF WEAK REMINDER THAT THEY OUGHT TO KEEP

18    TRACK OF THE SIZE OF THEIR E-MAILS.

19              SECONDLY, JUST --

20              THE COURT:  WHAT IS THE SIZE, ANYWAY,

21    THAT'S PERMISSIBLE OR IDEAL?  WHEN DO YOU START

22    GETTING NOTICES THAT YOUR E-MAIL ACCOUNT IS TOO

23    BIG?

24              MS. TUCHER:  I CAN'T TELL YOU EXACTLY

25    WHEN YOU START GETTING THEM.
```

```
1              BUT THE POINT I WANTED TO MAKE THAT'S

2    RELATED TO THAT IS THERE'S ABSOLUTELY NO

3    REQUIREMENT, NO PRESSURE OR ANY OTHER -- ANYTHING

4    THAT TELLS APPLE EMPLOYEES THAT THEY HAVE TO GET

5    RID OF THAT E-MAIL.  THEY CAN SAVE IT TO THEIR --

6              THE COURT:  WELL, IF I'M TOLD, "YOUR

7    E-MAIL ACCOUNT IS TOO FULL," I THINK THE

8    UNDERSTANDING IS I'M SUPPOSED TO START DELETING.

9              MS. TUCHER:  YOUR HONOR, I CAN'T TELL YOU

10   HOW LONG I'VE BEEN GETTING AUTO GENERATED MESSAGES

11   OF THAT SORT.

12             THE COURT:  BUT YOU COULD -- YOU CAN

13   CHOOSE TO IGNORE IT, BUT YOU STILL RECEIVE THE

14   MESSAGE THAT YOU NEED TO REDUCE THE SIZE, RIGHT, BY

15   DELETION?

16             MS. TUCHER:  SO FIRST OF ALL, NO EVIDENCE

17   OF SPECIFIC CUSTODIANS WHO RECEIVED THAT MESSAGE IN

18   THIS CASE, NUMBER ONE.

19             THE COURT:  BUT YOU AGREE THAT THAT IS

20   THE PATTERN AND PRACTICE AT APPLE TO GIVE NOTICE TO

21   EMPLOYEES THAT THEIR E-MAIL ACCOUNTS HAVE BECOME

22   TOO VOLUMINOUS?

23             MS. TUCHER:  NO.  ONLY FOR EMPLOYEES WHO

24   ARE NOT SUBJECT TO A DOCUMENT RETENTION NOTICE IN

25   ANY CASE AT ALL.
```

```
 1              AND I COULD GO THROUGH THE LIST.  ALL THE
 2     CUSTODIANS WE'RE INTERESTED IN ARE SUBJECT TO
 3     DOCUMENT RETENTION NOTICES IN SOME OTHER CASE AND,
 4     BECAUSE OF THAT, THEY DIDN'T GET EVEN THIS REMINDER
 5     THAT THEY SHOULD KEEP TRACK OF THEIR E-MAIL IN-BOX
 6     SIZE.
 7              SO ALTHOUGH SAMSUNG HAS ATTEMPTED TO DRAW
 8     SOME SORT OF COMPARABILITY BETWEEN THESE E-MAIL
 9     NOTICES THAT SOMETIMES GO OUT TO CERTAIN APPLE
10     EMPLOYEES, THERE'S NO EVIDENCE THAT THEY WENT OUT
11     TO THE CUSTODIANS WHO MATTER HERE.  AND EVEN IF
12     THEY HAD GONE OUT, THERE'S NO EVIDENCE THAT IT
13     PRODUCED ANY DELETION OF THE E-MAILS.
14              SECOND POINT I WANTED TO MAKE.
15     MS. ESTRICH SAID -- PERHAPS BECAUSE SHE'S NOT FULLY
16     FAMILIAR WITH THE RECORD IN THE COURT BELOW -- THAT
17     THERE WERE SPECIFIC E-MAILS THAT SAMSUNG'S PAPERS
18     CALLED OUT THAT APPLE HAD LOST OR DESTROYED.
19              THAT IS SIMPLY NOT TRUE.  SAMSUNG DIDN'T,
20     IN ANY OF THE PAPERS THAT THEY HAVE FILED, CITE A
21     SINGLE E-MAIL OR A SINGLE DOCUMENT THAT THEY
22     THOUGHT A CUSTODIAN SHOULD HAVE PRODUCED AND
23     DIDN'T.  NOT A ONE.  AND THAT IS THE REASON THAT
24     THEIR -- THAT THEIR MOTION MUST FAIL.
25              AND FINALLY, YOU ASKED ABOUT HONG AND LEE
```

3758

1    DOCUMENTS, AND I -- IT SOUNDS LIKE YOU HAVE THE

2    APRIL 17TH E-MAIL IN FRONT OF YOU.  I BROUGHT A

3    COPY OF IT JUST IN CASE.

4             WE ALSO HAVE OTHER DOCUMENTS THAT SHOW

5    MR. LEE, EVEN AFTER APRIL OF 2011, RECEIVING OR

6    SENDING DOCUMENTS RELATING TO THE GALAXY S THAT

7    OTHER CUSTODIANS HAD AND OTHER CUSTODIANS THOUGHT

8    WERE RELEVANT.  WE CITE THOSE IN OUR REPLY BRIEF

9    AND I'D BE HAPPY TO HAND YOU COPIES IF THAT WOULD

10   HELP YOU.

11            BUT THE POINT I WANTED TO MAKE IS JUST AS

12   THE AUGUST VERSUS APRIL QUESTION IS NOT DISPOSITIVE

13   AGAINST APPLE, IT'S NOT EVEN DISPOSITIVE AGAINST

14   SAMSUNG BECAUSE, TO THIS DAY, SAMSUNG IS DESTROYING

15   E-MAILS EVERY 14 DAYS.  TO THIS DAY, THEY ARE

16   SPOLIATING EVIDENCE, AND NO MATTER HOW FAR BACK YOU

17   GO, AUGUST OR APRIL, APPLE WAS NOT.

18            AND THAT'S THE CRUCIAL DIFFERENCE BETWEEN

19   THE TWO AND THAT'S WHY APPLYING THE SAME STANDARD

20   TO BOTH COMPANIES COULD, SHOULD, AND WHEN

21   JUDGE GREWAL CONSIDERED THIS, DID LEAD TO A

22   SPOLIATION INSTRUCTION AGAINST SAMSUNG AND NOT A

23   SPOLIATION INSTRUCTION AGAINST APPLE.

24            THAT'S WHAT WE THINK IS THE APPROPRIATE

25   OUTCOME HERE.

3759

```
 1            THE COURT:  ALL RIGHT.
 2            MS. TUCHER:  IT IS ALSO TRUE --
 3            THE COURT:  SO IF I'M GOING TO ISSUE TWO,
 4    THEN APPLE'S POSITION IS JUST GO WITH TWO?
 5            MS. TUCHER:  IT IS TRUE THAT IF YOU ARE
 6    GOING TO ISSUE TWO, IT IS APPLE'S POSITION THAT
 7    THAT SHOULDN'T HAPPEN.
 8            THE COURT:  SO YOU THEN WOULD ALSO AGREE
 9    NEITHER SIDE WOULD GET IT?
10            MS. TUCHER:  WE THINK IT WOULD BE BETTER
11    FOR NEITHER SIDE TO GET ONE THAN FOR BOTH SIDES TO
12    GET ONE.
13            THE COURT:  ALL RIGHT.  THANK YOU ALL.
14            MR. JOHNSON:  AND YOUR HONOR, JUST FOR
15    CLARIFICATION, IF YOUR HONOR DECIDES TO WITHDRAW --
16    IF THERE IS NO INSTRUCTION TO BOTH SIDES, THEN
17    NEITHER SIDE SHOULD REALLY BE PERMITTED TO REFER TO
18    IT IN CLOSING FOR TOMORROW.
19            THE COURT:  YES.
20            MR. JOHNSON:  OKAY.
21            THE COURT:  YES, I WOULD ASSUME THAT YOU
22    WOULDN'T.  OTHERWISE I'D CLARIFIED IT WAS GOING OUT
23    AGAINST BOTH SIDES.
24            MS. ESTRICH:  YOUR HONOR, I CAN RESPOND
25    TO THE SPECIFIC POINTS, BUT IN THE INTEREST OF
```

1    TIME, IF YOU DON'T WANT ME TO, I WILL SIT RIGHT

2    DOWN.

3              THE COURT:  NO.  WE NEED TO GET THE JURY

4    INSTRUCTIONS DONE.

5              MS. ESTRICH:  OKAY.  THANK YOU VERY MUCH.

6              THE COURT:  I APPRECIATE THAT.

7              LET'S THEN GO TO -- DO YOU STILL WANT ME

8    TO HOLD OFF ON THE VERDICT FORM AND DO JURY

9    INSTRUCTIONS NEXT?

10             MR. JACOBS:  YES, YOUR HONOR.

11             THE COURT:  ALL RIGHT.  SO LET'S GO TO

12   THE JURY INSTRUCTIONS.

13             NOW, HOW DO YOU RESPOND TO SPEND -- YOU

14   EACH HAVE AN HOUR.  HOW DO YOU WANT TO SPEND YOUR

15   TIME?  I WAS THINKING I CAN GIVE YOU JUST SOME --

16   IF YOU WANT TO JUST SET SOME TIME ASIDE TO GO

17   THROUGH STRAIGHT WHATEVER YOU WANT TO PRESERVE, AND

18   THEN SOME TIME TO HAVE A MORE INTERACTIVE

19   DISCUSSION, BECAUSE I HAVE SOME OF YOUR HIGH

20   PRIORITIES I MIGHT ACCEPT OR I MIGHT MEET YOU

21   PARTWAY OR IT'S GOING TO INVOLVE A LITTLE BIT MORE

22   OF AN INTERACTIVE CONVERSATION.  SO HOW DO YOU WANT

23   TO PROCEED?

24             MR. JACOBS:  THAT WOULD BE -- SOME KIND

25   OF PROVISION LIKE THAT WOULD MAKE A LOT OF SENSE TO

1    US.

2              THE COURT:  OKAY.  SO HOW MUCH TIME DO

3    YOU NEED FOR YOUR STRAIGHT PUTTING EVERYTHING ON

4    THE RECORD?

5              MR. JACOBS:  PROBABLY 20 MINUTES FOR US,

6    YOUR HONOR.

7              MR. JOHNSON:  ABOUT THE SAME.  MAYBE NOT

8    QUITE AS LONG.

9              THE COURT:  DO YOU WANT TO DO THAT FIRST

10   OR DO THAT SECOND?

11             MR. JACOBS:  I WOULD DO IT SECOND, IF

12   ONLY BECAUSE GOING THROUGH THE HPO'S MAY --

13             THE COURT:  MAY MOOT SOME OF THEM?

14             MR. JACOBS:  YES.

15             THE COURT:  OKAY.  ALL RIGHT.  THAT'S

16   FINE.  ALL RIGHT.

17             SO THIS IS WHAT I'D LIKE TO DO.  WHAT IF

18   I JUST TOLD YOU WHAT THE TENTATIVE IS AS TO EACH

19   ONE AND THEN YOU CAN DECIDE HOW MUCH OF YOUR TIME

20   YOU WANT TO SPEND ON FIGHTING IT OR NOT.  OKAY?

21             ALL RIGHT.  SHOULD WE GO THROUGH

22   SAMSUNG'S FIRST?

23             OKAY.  THE TIME IS NOW 2:42.

24             ALL RIGHT.  WITH REGARD TO SALE IN THE

25   UNITED STATES, THAT'S DENIED.  I DON'T BELIEVE THAT

```
 1      DELIVERY INTO THE UNITED STATES IS REQUIRED.  I

 2      KNOW YOU RELY ON MINEBEA VERSUS PAPST AND THE OTHER

 3      CASES.  THOSE ARE OUT OF DISTRICT COURT CASES.

 4      THEY'RE NOT BINDING ON ME.

 5                  FEDERAL CIRCUIT CASES REALLY SEEM TO

 6      FOCUS ON WHERE THE ACTIVITY TOOK PLACE, SO I THINK

 7      THE INSTRUCTION THAT'S IN THE INSTRUCTIONS NOW IS

 8      MORE CONSISTENT WITH FEDERAL CIRCUIT LAW.

 9                  SO I'M DENYING THE SALE IN THE U.S.

10                  DO YOU WANT TO FIGHT IT OR NO?

11                  MR. JOHNSON:  YOUR HONOR, CAN WE GO

12      THROUGH THE WHOLE LIST AND THEN LET US DECIDE?

13                  THE COURT:  OH, OKAY.  SURE.  ALL RIGHT.

14                  LET'S GO TO DESIGN PATENT COPYING, THAT'S

15      34.4(B).  THIS IS DENIED.

16                  WHILE IT'S TRUE THAT INTENT TO COPY IS

17      NOT RELEVANT TO AN INFRINGEMENT ANALYSIS, ADDING

18      ANOTHER INSTRUCTION WHEN THIS IS ALREADY COVERED

19      ELSEWHERE I THINK WOULD PLACE UNDUE EMPHASIS ON

20      THIS ISSUE AND I THINK IT'S A RELATIVELY MINOR

21      POINT AND SHOULDN'T BE OVEREMPHASIZED.  SO THAT'S

22      DENIED.

23                  NOW, WITH REGARD TO DESIGN PATENT

24      FUNCTIONALITY, I'M NOT PERSUADED BY AMINI

25      INNOVATION CORP.  THAT SEEMS TO BE AN OUTLIER.
```

```
 1    THERE AREN'T ANY OTHER FED CIRCUIT CASES THAT ADOPT

 2    TRADE DRESS AS A TEST FOR FUNCTIONALITY AND DESIGN

 3    PATENTS.

 4              AND OTHERWISE I THINK THAT THE DICTATED

 5    BY FUNCTIONALITY STANDARD IS THE CORRECT STATEMENT

 6    OF THE LAW.

 7              NOW, I ALSO, I KNOW THAT I HAD

 8    PREVIOUSLY, WHEN I DID THE CLAIM CONSTRUCTION ON

 9    THE DESIGN PATENTS, HAD SAID I MIGHT ISSUE AN ORDER

10    ON FUNCTIONALITY AND CALLING OUT SPECIFIC

11    FUNCTIONS, BUT I'M NOT CONVINCED THAT, ON THE

12    RECORD BEFORE US, ANY ADDITIONAL LIMITATIONS HAVE

13    BEEN ESTABLISHED BASED ON FUNCTIONALITY, SO I DENY

14    THAT REQUEST.

15              NOW, THE ONE WHERE I COULD HAVE SOME

16    MOVEMENT ON IS WHETHER WE WANT TO -- EVEN THOUGH

17    THE PGH TECHNOLOGY FACTORS ARE NOT IN THE MODEL

18    INSTRUCTIONS THAT WE'VE BEEN USING, I WOULD NOT BE

19    OPPOSED TO INCLUDING THESE AS SOME FACTORS YOU MAY

20    CONSIDER.  I DON'T FEEL THAT STRONGLY.

21              I MEAN, I PREFER GENERALLY -- AS YOU'VE

22    SEEN WITH THE JURY INSTRUCTIONS I'VE ISSUED, I

23    PREFER TO GO WITH THE MODEL LANGUAGE WITHOUT MUCH

24    ALTERATION, BUT THAT'S THE ONE WHERE THERE COULD BE

25    SOME POTENTIAL MOVEMENT.
```

3764

```
 1              OKAY.  LET'S GO TO 40 TO 43, DESIGN

 2    PATENT DAMAGES.  AS MUCH AS I WOULD LIKE TO MAKE

 3    APPLE ELECT UPFRONT, I DON'T THINK THERE'S ANY LAW

 4    THAT REQUIRES THEM TO DO THAT, SO I'M NOT GOING TO

 5    REQUIRE THAT EVEN THOUGH THAT CERTAINLY WOULD BE

 6    HELPFUL.

 7              NOW, I DO AGREE WITH YOU THAT THE

 8    INSTRUCTIONS SHOULD BE CLEARER, A LITTLE BIT, TO

 9    AVOID DOUBLE RECOVERY, AND THESE ARE VERY

10    COMPLICATED INSTRUCTIONS AND I HAVE SOME CONCERNS,

11    WHICH IS WHY I ASKED THE PARTIES TO FILE THE

12    ADDITIONAL BRIEFING ON DAMAGES AND DOUBLE RECOVERY,

13    BECAUSE I SHARE THE SAME CONCERNS THAT SAMSUNG

14    DOES.

15              SO WHAT I MIGHT CONSIDER DOING IS MAYBE

16    REARRANGING THE INSTRUCTIONS, PUTTING LOST PROFITS

17    FIRST, THEN REASONABLE ROYALTY, THEN INFRINGER'S

18    PROFITS AND HAVING -- IN THE LOST PROFITS AND

19    REASONABLE ROYALTY INSTRUCTIONS, MAKE IT A LITTLE

20    MORE CLEAR THAT APPLE MAY RECOVER COMPENSATORY

21    DAMAGES IN THE FORM OF EITHER LOST PROFITS OR

22    REASONABLE ROYALTY; AND THEN IN THE, YOU KNOW,

23    INSTRUCTIONS SAYING THAT, LOOK, YOU CANNOT RECOVER

24    FOR BOTH COMPENSATORY DAMAGES AND AN INFRINGER'S

25    PROFITS FOR THE SAME SALE OF AN INFRINGING PRODUCT.
```

```
 1              NOW, ALL OF THOSE INSTRUCTIONS ARE

 2     ALREADY IN THE CURRENT SET, BUT I AM AMENABLE TO

 3     TRYING TO MAKE IT A LITTLE CLEARER IF YOU THINK

 4     IT'S STILL POTENTIALLY MISLEADING OR IT MIGHT

 5     CONFUSE THE JURY INTO THINKING THEY CAN GIVE DOUBLE

 6     RECOVERY.  SO THERE'S SOME FLEXIBILITY ON THAT ONE.

 7              IF YOU HAVE SPECIFIC LANGUAGE THAT YOU

 8     THINK WOULD HELP CLARIFY THAT, I'M OPEN TO IT.

 9              LET'S GO TO 42, DESIGN PATENT DAMAGES.  I

10     THINK THAT'S SORT OF ALONG THE SAME LINES AS WHAT

11     I'VE JUST DESCRIBED.  I MIGHT BE WILLING TO DO A

12     LITTLE BIT MORE BY WAY OF INTRODUCTION IN SOME OF

13     THESE INSTRUCTIONS TO MAKE IT A LITTLE CLEARER.

14              TRADE DRESS FUNCTIONALITY, SO FOR TRADE

15     DRESS, I'M THINKING OF PERHAPS TAKING THIS DISC

16     GOLF LANGUAGE OUT.  I THINK IT MIGHT BE CONFUSING

17     TO A JURY.

18              WITH REGARD TO YOUR CHANGE ON NUMBER 51,

19     PARAGRAPH 3, TO SAY "TO DETERMINE WHETHER A PRODUCT

20     FEATURE IS FUNCTIONAL, YOU MAY CONSIDER THE

21     FOLLOWING FACTORS," THAT'S FINE.

22              MODIFYING PARAGRAPH 4 TO DELETE "AFTER

23     CONSIDERING THESE FACTORS," THAT'S OKAY.

24              YOUR REQUEST MODIFYING PARAGRAPH 5 TO

25     DELETE "ALTERNATIVE" AND REPLACING IT WITH "IN
```

1   ADDITION," THAT SEEMS OKAY.

2            WITH REGARD TO TRADE DRESS DILUTION,

3   WHICH WAS NUMBER 55, I'M GOING TO DENY SAMSUNG'S

4   FIRST ARGUMENT.  I DON'T BELIEVE THE LANGUAGE THE

5   CLAIM IS MISSING IS ACTUALLY MISSING.  IT'S IN THE

6   PRECEDING SENTENCE, AND I DON'T THINK THERE'S

7   ANYTHING MISLEADING ABOUT THE JURY INSTRUCTION

8   ITSELF.

9            NOW, YOU DO ASK THAT AT THE END OF THE

10  INSTRUCTION, THE COURT JUST ADD A SENTENCE SAYING

11  "THESE FACTORS SHOULD BE WEIGHED BY YOU GIVEN THE

12  FACTS AND CIRCUMSTANCES OF THE CASE," I THINK

13  THAT'S REASONABLE.  THAT WOULD BE OKAY WITH ME.

14           WITH REGARD TO TRADE DRESS NOTICE AND

15  DAMAGES, I WOULD GRANT THAT.  YOU WANT THE CLEAN --

16  COMPLETE INSTRUCTION WITH PART OF THE NINTH CIRCUIT

17  MODEL INSTRUCTION CLARIFYING WHAT STATUTORY NOTICE

18  IS, I'M WONDERING IF APPLE MIGHT BE WILLING TO

19  STIPULATE TO THAT SINCE IT'S MODEL JURY INSTRUCTION

20  LANGUAGE AND IT DOESN'T SEEM PARTICULARLY

21  CONTROVERSIAL.

22           SO HEARING THAT, HOW MUCH TIME DO YOU

23  WANT TO SPEND ON THE HIGH PRIORITY OBJECTIONS AND

24  HOW MUCH TIME DO YOU WANT TO JUST MAKE YOUR RECORD?

25           MR. ZELLER:  JUST ONE MOMENT, YOUR HONOR?

3767

```
 1                    THE COURT:  OKAY.

 2                    (DISCUSSION OFF THE RECORD BETWEEN

 3         DEFENSE COUNSEL.)

 4                    MR. JOHNSON:  YOUR HONOR, I THINK WE'RE

 5         GOING TO TALK ABOUT THREE OR FOUR POTENTIALLY.

 6                    THE COURT:  OKAY.  ALL RIGHT.  CAN YOU

 7         TELL ME --

 8                    MS. MAROULIS:  YOUR HONOR, WITH RESPECT

 9         TO EXHAUSTION, WITHOUT GIVING UP OUR OBJECTIONS,

10         CAN WE PLEASE INCLUDE, IN THE COURT'S CURRENT

11         INSTRUCTION, THE STATEMENT "WHERE THE SPECIAL

12         ACTIVITIES INCLUDE, FOR EXAMPLE, WHERE A PRODUCT IS

13         DELIVERED."

14                    IN OTHER WORDS, WE'RE OBJECTING TO THE

15         INSTRUCTION, BUT IF THE COURT IS INTENDING TO KEEP

16         WHAT IT HAS, IF WE CAN INCLUDE DELIVERY AS ONE OF

17         THE ESSENTIAL ACTIVITIES.

18                    THE COURT:  OKAY.  LET ME HEAR FROM -- IS

19         THERE ANY OBJECTION FROM APPLE ON THAT ONE?

20                    MR. SELWYN:  YOUR HONOR, THERE IS AN

21         OBJECTION TO THAT.  THERE'S NO REASON TO SINGLE OUT

22         THAT SPECIFIC EXAMPLE OF AN ACTIVITY IN THIS LIST.

23                    IF YOU WERE TO GO DOWN THAT PATH, THERE

24         ARE OTHER THINGS THAT WE WOULD WANT TO IDENTIFY AS

25         EXAMPLES THAT THE JURY CAN CONSIDER.
```

3768

```
1              THE COURT:  WELL, THERE ALREADY -- THIS
2    WAS LARGELY FROM YOUR -- FROM APPLE'S INSTRUCTION
3    OF NEGOTIATING A CONTRACT AND PERFORMING
4    OBLIGATIONS UNDER THE CONTRACT, AND I THINK
5    PERFORMING UNDER THE OBLIGATIONS OF THE CONTRACT
6    WOULD INCLUDE DELIVERY.
7              MR. SELWYN:  WE AGREE.
8              MS. MAROULIS:  THAT'S FINE, YOUR HONOR.
9              THE COURT:  SO PERFORMING OBLIGATIONS
10   UNDER THE CONTRACT?
11             MS. MAROULIS:  INCLUDING WHERE DELIVERY
12   TAKES PLACE.
13             MR. SELWYN:  THAT'S WHERE WE HAVE THE
14   DISAGREEMENT.  THERE'S NO POINT IN SINGLING OUT ONE
15   EXAMPLE AMONG MANY THAT CAN BE INCLUDED UNDER THE
16   RUBRIC OF PERFORMING UNDER THE CONTRACT.
17             THE COURT:  ALL RIGHT.  AND I BELIEVE
18   THAT THERE IS SOME CASE LAW IN SUPPORT OF THIS
19   EXACT LANGUAGE, RIGHT?
20             MR. SELWYN:  THERE IS.
21             MS. MAROULIS:  YES, YOUR HONOR.
22             THE COURT:  ALL RIGHT.  SO THAT'S DENIED.
23             NEXT, GO AHEAD, PLEASE.
24             YOU CAN CERTAINLY ARGUE THAT.  I MEAN, IT
25   DOES FALL WITHIN PERFORMING THE OBLIGATIONS UNDER
```

1    THE CONTRACT.

2              OKAY.  WHAT ELSE?

3              MR. ZELLER:  JUST A FEW POINTS, YOUR

4    HONOR.

5              THE COURT:  OKAY.

6              MR. ZELLER:  FIRST WITH RESPECT TO THE

7    INSTRUCTION ON FUNCTIONALITY FOR A DESIGN PATENT.

8              THE COURT:  39?

9              MR. ZELLER:  YES.

10             THE COURT:  OKAY.

11             MR. ZELLER:  BUT IT'S ACTUALLY A

12   VARIATION ON SOMETHING THAT WE HAD RAISED.

13             THE COURT WILL RECALL THAT UNDER

14   RICHARDSON, AS WELL AS SOME OTHER FEDERAL CIRCUIT

15   AUTHORITY, THE INFRINGEMENT COMPARISON THAT HAS TO

16   BE DONE BY THE JURY NEEDS TO FACTOR OUT ELEMENTS

17   THAT THEY FIND TO BE FUNCTIONAL, AND SO PROCEEDING

18   FROM THE PREMISE THAT THEY'RE NOT GOING TO BE

19   INSTRUCTED AS TO WHAT IS FUNCTIONAL AND WHAT ISN'T,

20   BUT OF COURSE THAT WILL BE LEFT UP TO THEM TO

21   DETERMINE, WE BELIEVE THEY NEED TO BE INSTRUCTED

22   THAT ANYTHING THAT THEY FIND TO BE FUNCTIONAL UNDER

23   THE COURT'S DEFINITION SHOULD NOT BE CONSIDERED FOR

24   PURPOSES OF THE INFRINGEMENT COMPARISON.

25             AND WE DON'T THINK -- AND WE LOOKED FOR

1    EQUIVALENT LANGUAGE ALONG THOSE LINES AND COULD NOT

2    FIND ANY IN THE INSTRUCTIONS, YOUR HONOR.

3            THE COURT:  SO WHAT -- I'M SORRY.  TELL

4    ME EXACTLY WHAT WOULD YOU LIKE ADDED TO INSTRUCTION

5    NUMBER 39?

6            MR. ZELLER:  THAT FOR ANY ELEMENTS OR

7    FEATURES THAT THE JURY DETERMINES ARE FUNCTIONAL,

8    THAT THE JURY SHOULD FACTOR OUT SIMILARITIES

9    BETWEEN THE ACCUSED PRODUCTS AND THE ASSERTED

10   DESIGN PATENTS FOR PURPOSES OF DETERMINING WHETHER

11   OR NOT THE SIMILARITIES ARE DECEPTIVE.

12           THE COURT:  OKAY.

13           MR. ZELLER:  IN OTHER WORDS, THE

14   APPLICATION OF THE INFRINGEMENT STANDARD.

15           THE COURT:  SORRY, BUT CAN YOU GIVE ME

16   THAT AGAIN?  FOR ANY ELEMENTS OR FEATURES THE JURY

17   DETERMINES ARE FUNCTIONAL, THE JURY SHOULD FACTOR

18   OUT ANY SIMILARITIES -- CAN YOU GO AHEAD?

19           MR. ZELLER:  BASED ON -- OR ANY

20   SIMILARITIES BETWEEN THE ACCUSED DEVICE AND THE

21   DESIGN PATENT BASED UPON THOSE ELEMENTS OR

22   FEATURES.

23           THE COURT:  PATENT BASED UPON THOSE

24   ELEMENTS OR FEATURES.

25           OKAY.  LET ME HEAR FROM APPLE.  WHAT'S

```
1     YOUR VIEW ON THAT PARTICULAR LANGUAGE?

2             MR. JACOBS:  WELL, I THINK, FIRST OF ALL,

3     WE'RE IN THE WRONG INSTRUCTION, YOUR HONOR.

4             I BELIEVE THAT 39 IS ON INVALIDITY, LACK

5     OF ORNAMENTALITY.

6             THE COURT:  WELL, THE LACK OF

7     ORNAMENTALITY, IT DOES INCLUDE A LOT OF

8     FUNCTIONAL -- UNFORTUNATELY, THAT IS WHERE WE PUT A

9     LOT OF FUNCTIONAL DISCUSSION.

10            MR. JACOBS:  SO I THINK THAT THE OTHER --

11    THE FUNDAMENTAL PROBLEM WITH IT IS THAT THE

12    PRINCIPLE THAT SAMSUNG WOULD LIKE TO RELY ON COMES

13    OUT OF A LINE OF CASES THAT JUST DOES NOT APPLY TO

14    OUR SITUATION HERE.

15            IT'S VERY CLEAR UNDER EGYPTIAN GODDESS

16    THAT YOU LOOK AT THE DESIGN AS A WHOLE AND YOU HAVE

17    AN ORDINARY OBSERVER TEST LOOKING AT THE DESIGN AS

18    A WHOLE AND YOU DON'T TRY TO ELIMINATE --

19            THE COURT:  OKAY.  I UNDERSTAND WHERE

20    YOU'RE GOING.  ALL RIGHT.  LET ME JUST TAKE THAT

21    UNDER SUBMISSION.  OKAY?

22            MR. JACOBS:  THANK YOU, YOUR HONOR.

23            THE COURT:  ALL RIGHT.  GO AHEAD.  WHAT

24    ELSE?

25            MR. ZELLER:  A SECOND ISSUE, YOUR HONOR,
```

3772

```
 1    IS WE WOULD ASK FOR CLARIFICATION OF THE

 2    OBVIOUSNESS INSTRUCTION.

 3            THE COURT:  ALL RIGHT.  LET ME ASK YOU

 4    ONE MORE QUESTION ON 39.

 5            MR. ZELLER:  SURE.

 6            THE COURT:  DID YOU STILL WANT THE PGH

 7    TECHNOLOGIES FACTORS IN THERE?  OR NOT?

 8            MR. ZELLER:  YES.

 9            THE COURT:  OBVIOUSLY YOU'D RATHER HAVE

10    YOUR SUGGESTED LANGUAGE.

11            MR. ZELLER:  YES, YOUR HONOR.

12            THE COURT:  BUT LET ME HEAR --

13            MR. ZELLER:  THE ANSWER TO THE QUESTIONS

14    ARE YES TO BOTH.

15            THE COURT:  OKAY.

16            MR. ZELLER:  WITH RESPECT TO INSTRUCTION

17    NUMBER 38 ON OBVIOUSNESS --

18            THE COURT:  OKAY.

19            MR. ZELLER:  -- WE WOULD ASK THAT IT BE

20    CLARIFIED THAT OBVIOUSNESS CAN BE DETERMINED OR

21    FOUND BASED NOT JUST SIMPLY ON A COMBINATION OF

22    REFERENCES, BUT ON A SINGLE REFERENCE.

23            AND A COUPLE OF POINTS I WOULD ELABORATE

24    ON, YOUR HONOR.

25            THE COURT:  HOW IS THAT DIFFERENT THAN
```

```
 1     ANTICIPATION THEN?

 2              MR. ZELLER:  I'M SORRY?

 3              THE COURT:  HOW IS -- IF WE'RE SAYING

 4     WE'RE FINDING OBVIOUSNESS BASED ON ONE REFERENCE,

 5     ISN'T THAT ANTICIPATION?

 6              OH, YOU'RE SAYING IF IT DOESN'T HAVE ALL

 7     THE ELEMENTS.  OH, I SEE.

 8              MR. ZELLER:  CORRECT.

 9              THE COURT:  AND IS THERE A SPECIFIC LINE

10     OR LANGUAGE THAT YOU COULD PROPOSE?  THAT WOULD BE

11     MOST HELPFUL.

12              MR. ZELLER:  YES, THERE IS, YOUR HONOR.

13              THE COURT:  OKAY.

14              MR. ZELLER:  AND I CAN GET THAT.  WE

15     ACTUALLY SUBMITTED THAT ALONG WITH THE SATURDAY

16     MORNING SUBMISSION THAT THE COURT INVITED US TO DO

17     ON ANY UPDATES TO PROPOSED INSTRUCTIONS BASED ON

18     THE EVIDENCE AS IT CAME IN DURING THE CASE.

19              THE COURT:  OKAY.  IF YOU'VE ALREADY DONE

20     THAT, THAT'S FINE.

21              MR. ZELLER:  IF I COULD JUST SIMPLY POINT

22     OUT A COUPLE OF THINGS BRIEFLY ABOUT THAT, YOUR

23     HONOR.

24              THE MODEL INSTRUCTION, THE IPO MODEL

25     INSTRUCTION THAT WAS BEING RELIED UPON ACTUALLY
```

```
 1    CAME OUT, OR WAS DONE ONE MONTH BEFORE THE
 2    INTERNATIONAL SEAWAY DECISION, WHICH IS WHAT WE ARE
 3    BASING OUR PITCH ON.  WE BELIEVE THAT THERE -- THAT
 4    THE COURT, THE FEDERAL CIRCUIT MAKES VERY CLEAR
 5    THAT A SINGLE REFERENCE IS ENOUGH.
 6            AND THEN THERE'S ALSO BEEN, IN THE
 7    UTILITY PATENT CONTEXT, RECENT CASES, SUCH AS
 8    BOSTON SCIENTIFIC VERSUS CORDIS, C-O-R-D-I-S, WHICH
 9    IS A 2009 DECISION WHERE THE COURT ALSO FOUND THAT,
10    IN FACT, THAT THERE WAS A SINGLE REFERENCE THAT
11    RENDERED A CLAIM OBVIOUS.
12            THE COURT:  YOU KNOW, I'M LOOKING AT YOUR
13    SATURDAY -- NO, MAYBE THIS IS YOUR FRIDAY FILING.
14    WHICH -- OH, ARE YOU SAYING YOUR TRIAL IMPACT?
15            MR. ZELLER:  YES, YOUR HONOR.
16            THE COURT:  I SEE.  OKAY.
17            MR. ZELLER:  I BELIEVE IT IS -- ALONG
18    WITH THAT SUBMISSION AS EXHIBITS, WE SUBMITTED SOME
19    ADDITIONAL RED LINED PROPOSED INSTRUCTIONS.
20            THE COURT:  I SEE.  I SEE WHAT YOU'RE
21    SAYING.  I SEE WHAT YOU'RE RECOMMENDING NOW.  OKAY.
22            LET ME HEAR JUST BRIEFLY FROM APPLE, AND
23    IF IT'S GOING TO BE YOUR SAME POSITION ABOUT
24    OVERALL IMPRESSION AND NOT INDIVIDUAL FEATURES,
25    THEN I UNDERSTAND WHERE YOU'RE COMING FROM AND WE
```

```
 1   DON'T NEED TO SPEND THE TIME.

 2           WHAT'S YOUR -- ANY OBJECTIONS THAT YOU

 3   HAVE TO CHANGING THE LANGUAGE FROM "THE ULTIMATE

 4   CONCLUSION OF WHETHER A CLAIM DESIGN IS OBVIOUS

 5   SHOULD BE BASED UPON YOUR DETERMINATION OF SEVERAL

 6   FACTORS AND DECISIONS," AND GOING ON "VERSUS

 7   WHETHER IT WOULD HAVE BEEN OBVIOUS FOR A DESIGNER

 8   OF SKILL IN THE FIELD TO COMBINE EARLIER DESIGNS OR

 9   TO MODIFY A SINGLE EARLIER DESIGN TO ARRIVE AT THE

10   DESIGN IN THE PATENT"?

11           ANYONE WANT TO TALK ABOUT THAT?

12           MR. JACOBS:  SO I JUST -- JUST TO BE

13   CLEAR, I WAS HAVING A LITTLE TROUBLE KEEPING UP

14   WITH SAMSUNG'S COUNSEL.

15           IF THE FOCUS -- I'M LOOKING AT 38, AND

16   WHERE WOULD THAT CHANGE GO?

17           THE COURT:  I GUESS IT WOULD HAVE TO GO,

18   MR. ZELLER, WHAT, AROUND LINE 15, 16?  AROUND THE

19   SECTION THAT TALKS ABOUT ONE OR MORE SECONDARY

20   REFERENCES AND WHETHER THERE WOULD HAVE BEEN A

21   MOTIVATION TO COMBINE THEM?  OR WHAT'S YOUR

22   PROPOSAL?

23           IF I DON'T WHOLESALE ADOPT YOUR 38 THAT

24   YOU PROPOSED ON SATURDAY MORNING, IS THERE ANY

25   OTHER PLACE WHERE A SPECIFIC CHANGE COULD BE MADE
```

```
 1    THAT WOULD ACHIEVE YOUR GOALS?

 2             MR. ZELLER:  YES, YOUR HONOR.  WHERE WE

 3    WOULD SUGGEST INSERTING THE LANGUAGE WOULD BE -- SO

 4    THIS IS INSTRUCTION NUMBER 38.

 5             THE COURT:  OKAY.

 6             MR. ZELLER:  AND STARTING ABOUT LINE 10.

 7             THE COURT:  ALL RIGHT.

 8             MR. ZELLER:  SO THE PARAGRAPH THAT BEGINS

 9    SECOND.

10             THE COURT:  OKAY.

11             MR. ZELLER:  AND IT SAYS, "YOU MUST

12    DETERMINE IF A DESIGNER OF ORDINARY SKILL IN THESE

13    DESIGNS WOULD HAVE COMBINED THE PRIOR ART

14    REFERENCES," AND HERE WE WOULD INSERT THE FOLLOWING

15    LANGUAGE, "OR MODIFIED A SINGLE PRIOR ART

16    REFERENCE," AND THEN PICK UP WITH THE REMAINDER OF

17    THE LANGUAGE, "TO CREATE THE SAME OVERALL VISUAL

18    APPEARANCE."

19             THE COURT:  ALL RIGHT.

20             MR. ZELLER:  THEN WE WOULD ALSO SUGGEST

21    ADDING, AT LINE 13, AFTER THE FIRST SENTENCE OF THE

22    NEXT PARAGRAPH THERE, WHICH BEGINS, "IF YOU

23    IDENTIFY A PRIMARY REFERENCE, YOU THEN MUST

24    CONSIDER WHETHER" --

25             THE COURT:  YES.
```

3777

```
 1              MR. ZELLER:  THEN WE WOULD INSERT THE
 2    NEXT SENTENCE TO SAY, "YOU DO NOT NEED TO FIND A
 3    SECONDARY REFERENCE IF SAMSUNG HAS PROVEN THAT A
 4    SINGLE REFERENCE COULD HAVE BEEN MODIFIED TO CREATE
 5    THE PATENTED DESIGN AND THAT SUCH MODIFICATION WAS
 6    OBVIOUS."
 7              AND THEN THE REMAINDER OF THE PARAGRAPH
 8    WOULD CONTINUE AS IS.
 9              THE COURT:  YOU WANT TO ADDRESS THAT,
10    MR. JACOBS?
11              MR. JACOBS:  WELL, I THINK THE SECOND
12    PROPOSAL IS GILDING THE LILY ON THIS, YOUR HONOR,
13    AS EXCESS.
14              ON THE FIRST PROPOSAL TO SUGGEST THAT A
15    SINGLE REFERENCE COULD RENDER THE DESIGN OBVIOUS AS
16    MR. ZELLER PROPOSED, I DON'T -- THERE ARE CASES
17    THAT SUPPORT THAT.  WE DON'T OPPOSE THAT.
18              THE COURT:  YEAH, OKAY.  I WASN'T GOING
19    TO ADOPT THE SECOND CHANGE BECAUSE I THINK THAT'S
20    ALSO VERY CONFUSING IN A WHOLE PARAGRAPH ABOUT
21    PRIMARY AND SECONDARY REFERENCES.
22              MR. ZELLER:  UNDERSTOOD, YOUR HONOR.
23              THE COURT:  OKAY.  SO THEN DO WE HAVE A
24    STIPULATION THAT LINE 10 WILL BE CHANGED TO READ
25    "THE PRIOR ART REFERENCES" -- LET ME JUST READ THE
```

3778

1    SENTENCE.  "YOU MUST DETERMINE IF A DESIGNER OF

2    ORDINARY SKILL IN THESE DESIGNS WOULD HAVE COMBINED

3    THE PRIOR ART REFERENCES OR MODIFIED A SINGLE PRIOR

4    ART REFERENCE TO CREATE THE SAME OVERALL VISUAL

5    APPEARANCE AS THE CLAIMED DESIGNS."

6              IS THERE A STIPULATION TO THAT CHANGE?

7              MR. JACOBS:  IS THAT THE ONLY CHANGE?

8              THE COURT:  THAT'S THE ONLY CHANGE.

9              MR. JACOBS:  WE DON'T OPPOSE THAT, YOUR

10   HONOR.

11             THE COURT:  ALL RIGHT.  SO THAT'S DONE.

12             ALL RIGHT.  WHAT ELSE?

13             MR. ZELLER:  I THINK FINALLY, YOUR HONOR,

14   AT LEAST MY NOTES HAVE IT AS FINALLY, WE WOULD LIKE

15   SOME ELABORATION ON THE TRADE DRESS DILUTION

16   INSTRUCTION, NUMBER 55.

17             THE COURT:  OKAY.  LET'S GO THERE.

18             MR. ZELLER:  AND IN PARTICULAR, YOUR

19   HONOR, WE'RE CONCERNED ABOUT THE LANGUAGE THAT

20   SEEMS TO DEVIATE FROM THE REMAINDER OF THE

21   INSTRUCTIONS.

22             AND IF YOU BEAR WITH ME, I'M GOING TO

23   FIND THE EXACT LANGUAGE.

24             THIS IS INSTRUCTION NUMBER 55, AND IT'S

25   THE SECOND FULL SENTENCE THAT BEGINS AT LINE 3,

1    APPROXIMATELY, AND CONTINUES ON.

2              AND THIS SAYS, "DILUTION BY BLURRING

3    OCCURS WHEN A TRADE DRESS PREVIOUSLY ASSOCIATED

4    WITH ONE PRODUCT ALSO BECOMES ASSOCIATED WITH A

5    SECOND."

6              AND THAT, AT LEAST STATED THAT STARKLY,

7    IS NOT A CORRECT PROPOSITION OF LAW AS TO WHAT MUST

8    BE SHOWN BY APPLE IN ORDER TO PROVE DILUTION.

9              SO WE THINK THAT, FRANKLY, THAT SENTENCE

10   SHOULD COME OUT, OR AT LEAST IT SHOULD BE MODIFIED

11   TO MAKE CLEAR THAT IT HAS TO HAVE, OF COURSE, THE

12   CONSEQUENCE OF ACTUALLY CREATING, OR LIKELY TO

13   CREATE DILUTION.

14             THE COURT:  CAN YOU PROPOSE A SPECIFIC

15   LANGUAGE CHANGE AND THEN WE CAN SEE IF MR. JACOBS

16   WILL AGREE TO THAT?

17             MR. JACOBS:  SHOCKINGLY, YOUR HONOR, I

18   MAY BE IN AGREEMENT WITH MR. ZELLER ON THIS.  I

19   HAVE LANGUAGE.

20             THE COURT:  OH, OKAY.  GO AHEAD.  MAKE

21   YOUR PROPOSAL, PLEASE.

22             MR. JACOBS:  SECOND SENTENCE, INSTRUCTION

23   NUMBER 55, "DILUTION BY BLURRING OCCURS WHEN A

24   TRADE DRESS PREVIOUSLY ASSOCIATED WITH ONE PRODUCT

25   LOSES SOME OF ITS CAPACITY TO IDENTIFY AND

1    DISTINGUISH THAT PRODUCT."

2            AND THAT, BY WAY OF BACKGROUND, IS --

3    CORRESPONDS TO SOME LANGUAGE IN INSTRUCTION 52, I

4    BELIEVE.

5            THE COURT:  OKAY.  MR. ZELLER, WHAT DO

6    YOU THINK ABOUT THAT?

7            MR. ZELLER:  I THINK THAT IS CORRECT,

8    YOUR HONOR, AND THAT WAS, IN SUBSTANCE, THE SAME

9    LANGUAGE THAT I WAS GOING TO SUGGEST.

10           AND MY CONCERN ACTUALLY HAD TO DO WITH

11   THE FACT THAT I THINK 52, WITHOUT WAIVING OBVIOUSLY

12   OUR OBJECTIONS TO IT, WE NEVERTHELESS THOUGHT THAT

13   WAS A MORE COMPLETE AND ACCURATE STATEMENT AND WERE

14   CONCERNED THAT THE JURY MIGHT HAVE PROBLEMS

15   UNDERSTANDING THAT.

16           THE COURT:  ALL RIGHT.  LET ME JUST

17   CONFIRM.  THIS IS PARAGRAPH 55, LINE 3, "DILUTION

18   BY BLURRING OCCURS WHEN A TRADE DRESS PREVIOUSLY

19   ASSOCIATED WITH ONE PRODUCT LOSES SOME OF ITS

20   CAPACITY TO IDENTIFY AND DISTINGUISH THAT PRODUCT."

21           THAT'S FINE, MR. ZELLER?

22           MR. ZELLER:  JUST ONE MOMENT, YOUR HONOR.

23           (PAUSE IN PROCEEDINGS.)

24           MR. ZELLER:  YEAH, WE'RE IN AGREEMENT.

25           THE COURT:  AND MR. JACOBS, THAT'S FINE,

1    CORRECT?

2              MR. JACOBS:  YES, YOUR HONOR.

3              THE COURT:  OKAY, GREAT.  LET'S GO ON TO

4    THE NEXT ONE.  WHAT'S NEXT?

5              MR. ZELLER:  YOUR HONOR, THAT'S ALL WE

6    INTEND TO ARGUE AT THIS POINT.

7              THE COURT:  OH, OKAY.

8              MR. ZELLER:  OBVIOUSLY THERE WILL BE

9    MORE.

10             THE COURT:  SURE.

11             MR. ZELLER:  AND THEN WE INTEND TO ALSO

12   RESERVE OUR TIME SO THAT WE CAN --

13             THE COURT:  MAKE THE RECORD?

14             MR. ZELLER:  -- MAKE THE RECORD.

15             THE COURT:  OKAY, THAT'S FINE.

16             MR. JOHNSON:  THERE ACTUALLY ARE TWO

17   OTHER QUICK ONES, THEY WEREN'T PART OF THE HPO'S,

18   BUT WE DID FILE -- EACH SIDE DID FILE A STATEMENT

19   REGARDING THE INDEFINITENESS INSTRUCTION --

20             THE COURT:  OKAY.

21             MR. JOHNSON:  -- ASKING YOU -- FOLLOWING

22   UP ON THE CONSIDERATION THAT OCCURRED AT THE END OF

23   LAST WEEK THAT THE JURY BE INSTRUCTED TO -- ON THE

24   QUESTION OF INDEFINITENESS WITH RESPECT TO THE '163

25   PATENT.  THIS IS THE SUBSTANTIALLY CENTERED ISSUE.

3782

```
1            THE COURT:  UM-HUM.
2            MR. JOHNSON:  AND WE'D ASK THAT THE
3    INSTRUCTION THAT WAS -- AS IT WAS EXPLAINED IN OUR
4    BRIEF AT DOCUMENT 1809 BE SUBMITTED TO THE JURY.
5            IN LIGHT OF THE B.J. SERVICES CASE, AND
6    WE CITE A WHOLE LITANY OF CASES WHERE IT'S PROPER
7    TO SUBMIT THE QUESTION OF INDEFINITENESS TO THE
8    JURY, THAT OUR INSTRUCTION BE GIVEN.
9            THE COURT:  WELL, INDEFINITENESS IS AN
10   ISSUE FOR THE COURT AND NOT FOR THE JURY, SO I'M
11   NOT INCLINED TO GIVE YOUR INSTRUCTION WHICH
12   BASICALLY HAS THIS ISSUE GO TO THE JURY.
13           MR. JOHNSON:  THERE ARE UNDERLYING
14   QUESTIONS OF FACT HERE.
15           THE COURT:  UM-HUM.
16           MR. JOHNSON:  AND A PERSON OF ORDINARY
17   SKILL IN THE ART AND HOW A PERSON OF ORDINARY SKILL
18   IN THE ART WOULD UNDERSTAND "SUBSTANTIALLY
19   CENTERED," AND THESE CASES TALK ABOUT THE FACT THAT
20   IN THESE SITUATIONS, IT IS APPROPRIATE TO SEND THIS
21   ISSUE TO THE JURY.
22           AND AS MR. GRAY AND DR. SINGH AND EVEN
23   MR. FORSTALL TALKED ABOUT, I THINK THERE IS A REAL
24   ISSUE AS TO WHAT "SUBSTANTIALLY CENTERED" MEANS.
25           AND SO THE PROOF THAT CAME IN ALONG THOSE
```

1    TERMS, THAT IT'S AN AMBIGUOUS TERM AND THE METES

2    AND BOUNDS OF WHICH CAN'T BE DEFINED, I THINK IT IS

3    AN ISSUE THAT THE JURY HEARD EVIDENCE ABOUT AND

4    IT'S SOMETHING THAT WE THINK SHOULD BE SUBMITTED TO

5    THE JURY.

6            THE COURT:  ALL RIGHT.  LET ME HEAR FROM

7    APPLE ON THAT ONE.

8            MR. JACOBS:  YOUR HONOR, WE WENT THE

9    OTHER DIRECTION ON THAT AND ASKED FOR A CURATIVE

10   INSTRUCTION BECAUSE IT IS NOT AN ISSUE FOR THE JURY

11   AND WE THOUGHT THE JURY COULD WELL BE CONFUSED BY

12   TESTIMONY ABOUT INDEFINITENESS.

13           SO WE ALSO ASKED FOR SOMETHING ON THIS,

14   BUT IT'S THE OPPOSITE OF WHAT SAMSUNG IS ARGUING.

15           WE ASKED THAT THE COURT INSTRUCT THE JURY

16   TO DISREGARD THE TESTIMONY --

17           THE COURT:  YEAH.

18           MR. JACOBS:  -- AND TO ASSUME THAT ONE OF

19   ORDINARY SKILL -- AND YOUR HONOR HAS THE ISSUE.  IT

20   IS A QUESTION OF LAW FOR THE COURT.  IT IS -- THAT

21   IS WELL ESTABLISHED.

22           IT IS NOT SOMETHING THAT WAS RAISED IN A

23   PROPER MOTION FOR THE COURT, BEFORE THE COURT, AND

24   GIVING THE INSOLUBLY AMBIGUOUS LANGUAGE OF THE CASE

25   LAW, THAT SUCH A MOTION SHOULD HAVE FAILED IN ANY

3784

```
 1    CASE.
 2              THE COURT:  LET ME ASK, BECAUSE I THINK
 3    WE SHOULD RESOLVE THIS ISSUE FOR TOMORROW, BECAUSE
 4    OTHERWISE THERE'S GOING TO BE AN OBJECTION DURING
 5    CLOSING ARGUMENT, SO LET ME HEAR FROM MR. JOHNSON,
 6    WHAT IS THE SCOPE OF WHAT SAMSUNG IS GOING TO
 7    PRESENT DURING CLOSING ON THIS SUBSTANTIALLY
 8    CENTERED INDEFINITE ISSUE?
 9              I DON'T BELIEVE IT'S ONE FOR THE JURY.  I
10    THINK IT IS A COURT ISSUE.
11              SO I JUST WANT TO AVOID, YOU KNOW, HAVING
12    TO DEAL WITH OBJECTIONS.  I WOULD RATHER EVERYTHING
13    TOMORROW BE VERY SMOOTH AND WE NOT HAVE ANY FIGHTS
14    AND NOT ARGUE.
15              MR. JOHNSON:  ACTUALLY, I DON'T KNOW
16    BECAUSE I HAVEN'T BEEN THERE FOR THE LAST FEW HOURS
17    WHILE THE ARGUMENTS ARE STILL BEING WORKED OUT.
18              THE COURT:  SURE, YEAH.
19              MR. JOHNSON:  SO ACTUALLY, I DON'T KNOW
20    WHAT, IF ANY, EVIDENCE WE'RE GOING TO GO INTO IN
21    THAT RESPECT.
22              I KNOW EVIDENCE WAS PRESENTED.  I KNOW
23    MR. GRAY TALKED ABOUT IT AND MR. SINGH TALKED ABOUT
24    IT.
25              THE COURT:  YEAH.
```

3785

```
 1          MR. JOHNSON:  BUT I'M NOT SURE THE EXTENT
 2   TO WHICH IT'S GOING TO BE PRESENTED IN THE ARGUMENT
 3   TOMORROW.
 4          THE COURT:  ALL RIGHT.  WELL,
 5   UNFORTUNATELY, THEN IT'LL BE LEFT TO ME TO DO SOME
 6   KIND OF ORDER TONIGHT AND THIS MAY HAVE TO BE A
 7   DISCUSSION -- I MEAN, TOMORROW MORNING, IF WE MEET
 8   AT 8:30, I'D LIKE TO SEE IF WE CAN HASH OUT ANY
 9   DISPUTES IN ADVANCE AND THIS MAY HAVE TO BE ADDED
10   TO THAT LIST.
11          WHY DON'T -- CAN YOU ALL MAKE A PROFFER?
12          MR. JOHNSON:  YES.
13          THE COURT:  WHAT TIME MAKES SENSE?  I
14   KNOW THE TIME IS TICKING.
15          MR. JOHNSON:  DEPENDS ON WHEN WE GET OUT
16   OF HERE.
17          THE COURT:  I UNDERSTAND THAT.
18          MR. JOHNSON:  WITHIN ABOUT, LESS THAN AN
19   HOUR FROM WHENEVER THAT IS.  I'LL HAVE PEOPLE START
20   WORKING ON IT NOW.
21          THE COURT:  OKAY, COULD YOU?  WHY DON'T
22   YOU -- CAN YOU MAKE A COMMITMENT TO ME THAT YOU'LL
23   FILE A PROFFER ON WHAT YOU'RE GOING TO REPRESENT AS
24   TO THIS ISSUE, DO YOU WANT TO SAY, LIKE, 7:00?
25          MR. JOHNSON:  SURE.
```

```
1              THE COURT:  IS THAT DOABLE?  OKAY.

2              ANYTHING ELSE?  DO YOU HAVE ANYTHING

3     ELSE, MR. JOHNSON?

4              MR. JOHNSON:  THE OTHER THING WAS ON

5     INSTRUCTION NUMBER 19, AND I DON'T KNOW IF APPLE

6     IS -- ACTUALLY, I DON'T KNOW IF YOU'RE CONTESTING

7     THIS AT THIS POINT, BUT ON 19, WHICH IS STATUTORY

8     BAR --

9              THE COURT:  OKAY.

10             MR. JOHNSON:  -- THERE ARE THREE

11    PARAGRAPHS AT THE END OF THAT INSTRUCTION THAT

12    RELATE TO PROVISIONAL APPLICATIONS.

13             THE COURT:  YES.

14             MR. JOHNSON:  AND THOSE WE THINK SHOULD

15    BE ELIMINATED FROM THE INSTRUCTIONS SINCE THERE'S

16    NO EVIDENCE IN THE RECORD ABOUT PROVISIONAL

17    APPLICATIONS.  THEY DIDN'T EVEN PUT IN THE

18    PROVISIONAL APPLICATIONS AS PART OF THE RECORD.

19             SO THIS IS CONFUSING TO THE JURY AND WE

20    THINK IT SHOULD BE ELIMINATED.  IT'S STARTING AT

21    LINE 19 THROUGH THE END.

22             THE COURT:  OH, I HAVE A DIFFERENT

23    RECOLLECTION OF THAT.  BUT LET ME -- DOES ANYONE

24    FROM APPLE WANT TO TAKE THAT ISSUE?

25             MR. JOHNSON:  SORRY.  WE'RE TALKING ABOUT
```

```
 1    FOR THE '381 AND '163 PATENTS.

 2                THE COURT:  OKAY.  GO AHEAD, PLEASE.

 3                MR. JACOBS:  YOUR HONOR, IT TURNS OUT

 4    THAT NOTHING TURNS ON WHETHER WE GET THE EFFECTIVE

 5    FILING DATES FOR THE PROVISIONAL PATENT

 6    APPLICATIONS.  THERE'S NO INTERVENING ART THAT IS

 7    BEING ASSERTED AGAINST THOSE PATENTS.

 8                SO WE ARE -- WE, TOO, THINK THAT THOSE

 9    SECTIONS, STARTING WITH LINE 19 --

10                THE COURT:  UM-HUM.  GOING THROUGH 28?

11                MR. JACOBS:  -- GOING THROUGH 28 WITH

12    COME OUT.

13                THE COURT:  OKAY, FINE.

14                MR. JACOBS:  WHILE WE'RE ON THE COMING

15    OUT PART, THOUGH --

16                THE COURT:  THAT'S FINE.

17                MR. JACOBS:  -- WE ALSO THINK THAT THE

18    WRITTEN DESCRIPTION INSTRUCTION CAN COME OUT

19    BECAUSE NO ONE HAS ADDUCED EVIDENCE ON WRITTEN

20    DESCRIPTION.

21                AND I'M SORRY, YOUR HONOR, I'M LOOKING --

22                MR. JOHNSON:  IT'S NUMBER 17.

23                THE COURT:  OKAY.  MR. JOHNSON, ARE YOU

24    IN AGREEMENT WITH THAT?

25                MR. JOHNSON:  NO, I'M NOT IN AGREEMENT
```

1    WITH THAT.  THAT IS A QUESTION FOR THE JURY.

2              THIS WAS AN INSTRUCTION THAT WAS

3    UNDISPUTED AND ADOPTED BY THE COURT AND THERE'S

4    EVIDENCE THAT CAME IN, AND IT'S THE SAME ARGUMENTS

5    WITH RESPECT TO SUBSTANTIALLY CENTERED ON THE '163,

6    AND MISTERS GRAY, FORSTALL, AND SINGH ALL TESTIFIED

7    ABOUT IT.

8              THE COURT:  I'M GOING TO LEAVE THAT IN.

9              ALL RIGHT.  WHAT ELSE?

10             MR. JOHNSON:  MS. MAROULIS HAS TWO QUICK

11   ISSUES AND THEN I MAY HAVE ONE FINAL ONE.

12             THE COURT:  OKAY.

13             MS. MAROULIS:  YES, YOUR HONOR, VERY

14   BRIEFLY ON THE UTILITY DAMAGES INSTRUCTIONS.

15             SAMSUNG REQUESTED TO INCLUDE THE GEORGIA

16   PACIFIC INSTRUCTION, AND DURING THE TRIAL SEVERAL

17   EXPERTS REFERRED TO THAT, SO WE THOUGHT THERE WOULD

18   BE NO HARM IN DOING A STANDARD ND CAL INSTRUCTION

19   LISTING THE FACTORS.  THAT'S WHAT WE PROPOSED AS

20   29.1.

21             THE COURT:  29.1, THAT SOUNDS FINE TO ME.

22             ANY OBJECTION FROM APPLE?  ANY OBJECTION

23   FROM APPLE?

24             MR. JACOBS:  JUST A MINUTE, YOUR HONOR.

25   SORRY.

```
1              THE COURT:  OKAY.

2              MR. JACOBS:  NO, YOUR HONOR, NO PROBLEM.

3              THE COURT:  OKAY.  AND THEN LET ME --

4    JUST FOR MY OWN NOTES, IS THERE A SPECIFIC NUMBER

5    THAT YOU WANTED?

6              MS. MAROULIS:  THE REASONABLE ROYALTY

7    DEFINITION IS IN 29 IN YOUR HONOR'S INSTRUCTION, SO

8    IT MAY MAKE SENSE TO BE 29.1, BUT IT DOESN'T REALLY

9    MATTER SO MUCH, AS LONG AS IT'S IN THE RIGHT

10   SECTION.

11             THE COURT:  OKAY.  SO 29.1, YOU JUST WANT

12   ME TO ADD THE GEORGIA PACIFIC FACTORS.  I DON'T SEE

13   IT IN THE ND CAL MODEL JURY INSTRUCTIONS, BUT

14   THAT'S FINE.

15             SO I'LL ADD THE GEORGIA PACIFIC FACTORS

16   TO INSTRUCTION NUMBER 29 ON REASONABLE ROYALTY.

17             MS. MAROULIS:  GREAT.  AND WITH RESPECT

18   TO INSTRUCTION NUMBER 31, ALSO UTILITY PATENT

19   DAMAGES, THE DATE OF COMMENCEMENT, IT IS SAMSUNG'S

20   POSITION THAT WE NEED TO INCLUDE THE WORDS "ACTUAL

21   NOTICE."  WE UNDERSTAND YOUR HONOR TOOK IT OUT, BUT

22   WE'D LIKE TO PUT IT BACK IN FOR BOTH APPLE'S

23   REQUEST FOR DAMAGES AND SAMSUNG'S REQUEST FOR

24   DAMAGES.

25             THE COURT:  OKAY.  LET ME -- GIVE ME A
```

3790

```
 1    SECOND TO GET THERE.  NUMBER 17, YOU WOULD LIKE --
 2              MS. MAROULIS:  IT'S ACTUALLY INSTRUCTION
 3    31, LINES 6 AND 19.
 4              THE COURT:  31, LINE 6 -- 6 AND 13?
 5              MS. MAROULIS:  19.  SO ONE TALKS ABOUT
 6    APPLE'S DAMAGES AND ONE TALKS ABOUT SAMSUNG'S
 7    DAMAGES, AND WE'D LIKE TO INSERT "EACH SAMSUNG
 8    ENTITY HAD ACTUAL NOTICE OF APPLE'S CLAIMS," AND
 9    BELOW WE WOULD INSERT "APPLE HAD ACTUAL NOTICE OF
10    SAMSUNG'S CLAIMS."
11              THE COURT:  YOU KNOW, I JUST TOOK THIS
12    FROM THE MODEL JURY INSTRUCTION AND THEY DIDN'T
13    HAVE "ACTUAL" IN THERE.
14              MS. MAROULIS:  YOUR HONOR, WE --
15              THE COURT:  LET ME HEAR, DOES APPLE AGREE
16    OR NOT?
17              MR. JACOBS:  NO.  WE FAVOR THE MODEL
18    INSTRUCTION ON THIS, YOUR HONOR.
19              MS. MAROULIS:  WE REFER THE COURT TO THE
20    FEDERAL CIRCUIT PRECEDENT, INCLUDING THE CASE CITED
21    IN THE COURT'S INSTRUCTIONS, THE SRI VERSUS
22    ADVANCED TECH THAT TALKS ABOUT IDENTIFYING IDENTITY
23    OF THE PATENT AND ACTUAL NOTICE.
24              THE COURT:  UM-HUM.
25              MS. MAROULIS:  AND THERE WERE SOME
```

```
1    ADDITIONAL ONES IN SAMSUNG'S PROPOSED INSTRUCTIONS
2    AS WELL.
3              MR. JACOBS:  YOUR HONOR, WE CITED
4    AUTHORITY THAT WE -- THAT IS STILL -- THAT IS GOOD
5    AUTHORITY THAT LEAVES THIS MORE OPEN TEXTURED,
6    INCLUDING THE SICO CASE.
7              THE COURT:  WELL, I'M GOING TO GO WITH
8    THE MODEL ON THIS ONE.  OKAY?
9              WHAT ELSE DO YOU HAVE?
10             MS. MAROULIS:  VERY WELL, YOUR HONOR.
11             THE SAME INSTRUCTION, I THINK THERE'S A
12   TYPO ON THE BOTTOM OF THE INSTRUCTION.  IT SAYS
13   "THE PATENT WAS GRANTED AFTER EACH" -- "AFTER APPLE
14   INFRINGEMENT BEGAN."  SO IT'S IN YOUR INSTRUCTION,
15   SO I THINK THE COURT MEANT "APPLE" ON THE VERY LAST
16   LINE.
17             THE COURT:  YOU KNOW WHAT?  I SHOULD HAVE
18   CHANGED THAT TO "AFTER THE INFRINGING ACTIVITY
19   BEGAN."  I THINK IT WAS A CUT AND PASTE FROM LINE
20   12, AND IT SHOULD BE CHANGED ON LINE 12 AS WELL.
21             MS. MAROULIS:  OKAY.
22             THE COURT:  BECAUSE THE MODEL LANGUAGE
23   JUST SAYS "BEFORE AND AFTER THE INFRINGING ACTIVITY
24   BEGAN," SO I APOLOGIZE.  THAT WAS A MISTAKE.  THAT
25   WAS A MISTAKE THAT WAS IDENTIFIED BUT WASN'T
```

3792

```
 1    CORRECTED.

 2            MS. MAROULIS:  OKAY.  AND THEN FINALLY,

 3    WITH RESPECT TO INSTRUCTION NUMBER 65, WHICH IS

 4    RELEVANT MARKET, SAMSUNG MAINTAINS ITS OBJECTION

 5    THAT IT SHOULD BE A PRODUCT MARKET AS OPPOSED TO

 6    TECHNOLOGY MARKET, AND TECHNOLOGY MARKET IS TAKING

 7    IT TOO NARROWLY AND IT'S MORE APPROPRIATE TO LOOK

 8    BROADLY BEYOND THE SPECIFIC STANDARD AT ISSUE.

 9            THE COURT:  ON WHICH INSTRUCTION IS THAT,

10    PLEASE?

11            MS. MAROULIS:  IT'S NUMBER 65 IN THE

12    ANTITRUST SECTION.

13            THE COURT:  OKAY.  YOU KNOW, I -- IN

14    THE -- IN MY ORDER ON THE MOTION TO DISMISS, I HAD

15    SAID THAT TECHNOLOGY MARKET WOULD BE SUFFICIENT,

16    AND ON EQUIVALENT TO A PRODUCT MARKET, AND SO

17    THAT'S WHY I CHANGED IT, SO THAT'S DENIED.

18            MS. MAROULIS:  OKAY.

19            THE COURT:  OKAY.  WHAT ELSE?

20            MS. MAROULIS:  I THINK THE REST WE'RE

21    GOING TO PRESERVE.

22            THE COURT:  FOR THE RECORD?

23            ALL RIGHT.  IT'S 3:18.

24            ALL RIGHT, APPLE, LET'S DO YOURS.

25            MR. JACOBS:  MAY I PROCEED FROM HERE,
```

```
 1        YOUR HONOR?

 2                  THE COURT:  OKAY.  THAT'S FINE.

 3                  GIVE ME ONE SECOND TO -- WE ALREADY

 4        HANDLED THE ADVERSE INFERENCE, SO THAT'S DONE.

 5                  ALL RIGHT.  THE TIME IS 3:19.

 6                  WITH REGARD TO THE DOCTRINE OF

 7        EQUIVALENTS, I'M TENTATIVELY GOING TO GRANT THIS.

 8                  LET ME ASK WHETHER -- I'D LIKE TO GIVE

 9        SAMSUNG AN OPPORTUNITY TO BE HEARD, TO REBUT THE

10        PRESUMPTION THAT THE CLAIM LIMITATIONS TRIGGER THE

11        DOCTRINE OF EQUIVALENTS.  SO DO YOU WANT TO ADDRESS

12        THAT ISSUE?

13                  OTHERWISE I'LL PROBABLY INCLUDE A VERSION

14        OF THE DISPUTED PROPOSED INSTRUCTION NUMBER 15 THAT

15        EXPLAINS THAT "NO EQUIVALENCE CAN EXIST FOR

16        DISPLAYING IMAGE MOST RECENTLY CAPTURED IN A CAMERA

17        MODE AND SEQUENTIALLY DISPLAYING OTHER IMAGES

18        STORED IN MEMORY THROUGH THE USE OF SCROLL KEYS."

19                  MR. JOHNSON:  SO OBVIOUSLY APPLE HAS THE

20        BURDEN OF PROVING PROSECUTION HISTORY ESTOPPEL

21        APPLIES.

22                  YOUR HONOR, WE TALKED ABOUT THIS IN THE

23        CONTEXT OF AN HPO WITH REGARD -- TRYING TO STOP

24        DR. YANG FROM TESTIFYING THAT SWIPING IS EQUIVALENT

25        TO SCROLL KEYS, AND THE COURT NOTED THAT IT'S NOT
```

1    CLEAR THAT SAMSUNG NARROWED THE SCOPE OF THE CLAIM

2    TO OVERCOME THE PRIOR ART REJECTION AND IT'S NOT

3    CLEAR THAT THE PRIOR ART REJECTION RELATED TO THE

4    USE OF SCROLL KEYS OR ONE OF THE OTHER ASPECTS OF

5    THE AMENDMENT, AND THAT WAS IN YOUR DOCKET ORDER

6    NUMBER 1690.

7              AND IF WE GO BACK AND LOOK AT THE

8    PROSECUTION HISTORY OF WHAT HAPPENED HERE, FIRST OF

9    ALL, I THINK, JUST STEPPING BACK, YOUR HONOR, EVERY

10   OTHER TRIAL I'VE DONE WHERE THERE'S PROSECUTION

11   HISTORY ESTOPPEL, THIS ISSUE USUALLY GOES TO THE

12   JURY.

13             AND THEN ON THE FULL RECORD IN THE CASE

14   AND IN THE CONTEXT OF POST-TRIAL BRIEFING, WE'D

15   ASK -- THAT'S ACTUALLY THE RIGHT PLACE TO DECIDE

16   WHETHER PROSECUTION HISTORY ESTOPPEL APPLIES OR

17   NOT.

18             SO WE THINK DOING IT AT THIS POINT AND IN

19   THE CONTEXT OF A HIGH PRIORITY OBJECTION IS, IS NOT

20   THE PROPER WAY TO DO IT AND WE'D ASK THAT WE DO

21   IT -- WE FLIP IT AFTERWARDS.

22             BUT EVEN IF YOU LOOK AT THE MERITS AND

23   WHAT HAPPENED DURING PROSECUTION, THE FIRST THING

24   THAT HAPPENED DURING PROSECUTION, THE CLAIM AS

25   FILED CONTAINED -- AND THIS IS THE '460 PATENT THAT

1      TALKS ABOUT THE THREE CORE FUNCTIONS, YOUR HONOR,

2      AND THE THREE CORE FUNCTIONS ARE SENDING AN E-MAIL,

3      THAT'S THE FIRST CORE FUNCTION, SENDING AN E-MAIL

4      THAT HAS AN EMBEDDED PHOTO IN IT, AND THEN

5      SCROLLING.

6              AND WITH RESPECT TO WHEN THE PATENT

7      APPLICATION WAS FIRST FILED, IT HAD THE FIRST TWO

8      CORE FUNCTIONS IN IT.

9              THERE WAS AN AMENDMENT THAT WAS MADE TO

10     ADD TWO THINGS:  ONE, THE LANGUAGE "MOST RECENTLY"

11     WAS ADDED TO ONE OF THE TWO CORE FUNCTIONS; AND

12     THEN THIS THIRD CORE FUNCTION WAS ADDED.

13              THE COURT:  UM-HUM.

14              MR. JOHNSON:  IT IS NOT CLEAR FROM THE

15     RECORD THAT IT WAS -- THE THIRD CORE FUNCTION WAS

16     SPECIFICALLY THE IDEA OF SCROLLING WAS ADDED TO

17     OVERCOME THE PRIOR ART.  IT'S NOT AS THOUGH THERE

18     WAS SOMETHING ELSE IN THE PRIOR ART THAT DISCLOSED

19     SCROLLING OR OTHERWISE.

20              WHEN WE LOOK AT WHETHER ESTOPPEL SHOULD

21     APPLY, THE REAL QUESTION HERE IS, WHAT IS THE GAP

22     BETWEEN THE TWO CORE FUNCTIONS AND A THIRD CORE

23     FUNCTION?  IT COULD HAVE BEEN ANY THIRD CORE

24     FUNCTION.

25              AND SCROLLING, IN AND OF ITSELF -- IT

1    WASN'T AS THOUGH SCROLLING WAS ADDED TO OVERCOME A

2    PARTICULAR OTHER WAY OF MOVING THROUGH THE

3    PHOTOGRAPHS, WHICH IS WHAT THE PROSECUTION HISTORY

4    ESTOPPEL USUALLY TALKS ABOUT.  IS THERE A SPECIFIC

5    AMENDMENT THAT'S MADE IN RESPONSE TO A REJECTION TO

6    OVERCOME A STATEMENT IN THE PRIOR ART OR SOMETHING

7    THAT APPEARS IN THE PRIOR ART?

8              HERE SCROLLING WASN'T ADDED TO

9    SPECIFICALLY OVERCOME THE PRIOR ART.  IT WAS ADDED

10   AS A THIRD CORE FUNCTION, AND IT COULD HAVE BEEN

11   ANY THIRD CORE FUNCTION, FRANKLY, BECAUSE -- AND

12   IT'S EVEN NOT CLEAR WHETHER THE MOST RECENTLY ADDED

13   LANGUAGE WAS ACTUALLY ADDED TO OVERCOME THE

14   REJECTION, WHETHER THAT WAS IN AND OF ITSELF

15   SUFFICIENT.

16             SO THERE WERE TWO BASES -- WHEN THE

17   CLAIMS WERE ADDED, TWO THINGS WERE AMENDED, LIKE I

18   SAID, "MOST RECENTLY" AND THE THIRD CORE FUNCTION.

19             AND IT'S NOT CLEAR FROM THE PROSECUTION

20   HISTORY, IT'S CERTAINLY NOT, AS THE CLAIMS REQUIRE,

21   OR AS THE LAW REQUIRES, THAT IT BE -- THAT IT WAS

22   NARROWED TO OVERCOME A SPECIFIC PRIOR ART

23   REJECTION.

24             THE THIRD CORE FUNCTION WAS ADDED, ALONG

25   WITH THE "MOST RECENTLY" LANGUAGE, IN ORDER TO

1      BASICALLY GET AROUND THE FACT THAT THERE WAS PRIOR

2      ART THAT HAD TWO FUNCTIONS.

3              SO I WANT TO JUST GO BACK, BECAUSE THE

4      PRIOR ART -- WHEN THE CLAIM WAS FILED, THE PRIOR

5      ART HAD TWO CORE FUNCTIONS, THEN A THIRD FUNCTION

6      WAS ADDED, THIS SCROLLING NOTION.

7              IT DIDN'T NECESSARILY HAVE TO BE

8      SCROLLING.  THE SCROLLING, NOW THAT WE'RE TALKING

9      ABOUT IT IN THE CONTEXT OF THIS CASE, IS, IS THERE

10     A DIFFERENCE BETWEEN SCROLLING AND TAPPING, WHICH

11     THE USER GUIDE SAYS IS INTERCHANGEABLE.

12             SO -- AND EVEN IN THE CONTEXT OF YOUR

13     HONOR'S SUMMARY JUDGMENT MOTION, WE LOOKED AT THIS

14     ISSUE AND THE PROSECUTION HISTORY ESTOPPEL ISSUE

15     WAS NOT CLEAR FROM THE RECORD.

16             AND DOING IT AT THIS POINT AND ACTUALLY

17     ANALYZING WHETHER IT ACTUALLY APPLIES GIVEN THE

18     PARTICULAR RECORD THAT'S IN FRONT OF US WE THINK IS

19     NOT PROPER HERE.  YOU'RE BASICALLY TAKING AWAY

20     DOCTRINE OF EQUIVALENTS WHEN IT'S NOT CLEAR FROM

21     THE RECORD YET WHY THAT THIRD CORE FUNCTION WAS

22     ADDED.

23             THE COURT:  I'M PROBABLY GOING TO LET

24     THIS GO TO THE JURY, BUT LET ME HEAR FROM APPLE.

25             MR. SELWYN:  YOUR HONOR, THIS IS A CLEAR

```
1     ESTOPPEL.  IT'S AN ISSUE OF LAW.  IT SHOULD BE
2     DECIDED NOW.
3               THERE ARE TWO QUESTIONS THAT NEED TO BE
4     ASKED TO RESOLVE THE ISSUE OF WHETHER PROSECUTION
5     HISTORY ESTOPPEL IS APPLICABLE.
6               FIRST, WAS THERE A NARROWING AMENDMENT?
7               AND SECOND, IF SO, WAS THE REASON A
8     SUBSTANTIAL ONE RELATING TO PATENTABILITY?
9               AND HERE THERE'S NO QUESTION THAT THE
10    ANSWER TO BOTH OF THESE IS YES.
11              AS TO THE FIRST, SAMSUNG ITSELF ADMITS IN
12    THE PAPER THAT IT FILED ON FRIDAY THAT IT WAS
13    NARROWING THE AMENDMENT.  IT SAID, BEFORE THE
14    AMENDMENT, THE CLAIM HAD NOTHING TO DO WITH
15    SCROLLING THROUGH PHOTOS.
16              THAT'S CORRECT, AND THEY ADDED THIS
17    LIMITATION THAT NARROWED IT THAT INCLUDES A
18    REQUIREMENT OF SCROLLING THROUGH PHOTOS.
19              SO THE FIRST FESTO REQUIREMENT IS
20    UNMISTAKABLY SATISFIED.
21              THE COURT:  F-E-S-T-O.
22              MR. SELWYN:  THE SECOND QUESTION IS
23    WHETHER THE REASON FOR THE AMENDMENT IS ONE RELATED
24    TO PATENTABILITY.
25              WE NEED LOOK NO FURTHER THAN THE
```

1    PROSECUTION HISTORY ITSELF FOR THE ANSWER TO THAT

2    QUESTION.

3            THERE WERE TWO LIMITATIONS THAT WERE

4    ADDED IN THE FILE HISTORY.  THE PATENTEE STATES,

5    "CLAIM 20 HAS BEEN AMENDED TO INCLUDE," QUOTE,

6    "DISPLAYING AN IMAGE MOST RECENTLY CAPTURED IN A

7    CAMERA MODE AND SEQUENTIALLY DISPLAYING OTHER

8    IMAGES STORED IN MEMORY THROUGH THE USE OF SCROLL

9    KEYS.

10           "NEITHER WAGNER, SUSO, NOR DAWSON, ALONE

11   OR IN COMBINATION, TEACH OR DISCLOSE THESE

12   LIMITATIONS.  BASED ON THE FOREGOING, WITHDRAWAL OF

13   THE REJECTION IS REQUESTED."

14           SO THERE'S NO QUESTION THAT THIS WAS AN

15   AMENDMENT THAT WAS DONE FOR REASONS OF

16   PATENTABILITY.

17           AND EVEN IF THERE WERE SOME QUESTION

18   ABOUT THAT, THE FACT OF THE MATTER IS THAT IF THERE

19   IS NO REASON GIVEN IN THE PROSECUTION HISTORY, AND

20   HERE THERE IS VERY CLEARLY A REASON, THEN THE

21   PRESUMPTION IS THAT THERE IS ESTOPPEL.

22           WARNER JENKINSON SAYS THAT "WHEN THE

23   PROSECUTION HISTORY RECORD REVEALS NO REASON FOR

24   THE AMENDMENT, WARNER JENKINSON PRESUMES THAT THE

25   PATENTEE HAD A SUBSTANTIAL REASON RELATING TO

1      PATENTABILITY."

2                  SO HERE WE HAVE AN EXPLICIT RECORD IN THE

3      FILE HISTORY THAT SAYS THAT THE CHANGE WAS MADE FOR

4      REASONS RELATED TO PATENTABILITY.

5                  AND AS TO MR. JOHNSON'S POINT THAT THERE

6      WERE ACTUALLY TWO AMENDMENTS MADE AT THE SAME TIME,

7      THAT'S ABSOLUTELY CORRECT, THERE WERE TWO

8      AMENDMENTS MADE STATEMENT.

9                  THE FELIX VERSUS AMERICAN HONDA MOTOR

10     COMPANY CASE WHICH WAS CITED IN OUR PAPERS MAKES

11     CLEAR THAT, QUOTE, "IT IS IMMATERIAL THAT THE

12     PATENT OWNER CHOSE TO ADD TWO LIMITATIONS RATHER

13     THAN ONE, THE RESULTING ESTOPPEL ATTACHES TO EACH

14     ADDED LIMITATION."

15                 SO WE WOULD SUBMIT THAT IT IS AN ISSUE

16     THAT SHOULD BE DECIDED NOW.

17                 THERE'S A PRACTICAL REASON AS WELL.  IF

18     IT'S NOT DECIDED NOW, WE HAVE TO CHANGE THE VERDICT

19     FORM TO BREAK OUT D.O.E. AND LITERAL FOR THE '460

20     PATENT.

21                 AS YOU MAY RECALL, THE EVIDENCE IS

22     DIFFERENT WITH PRODUCTS RUNNING IOS 4 VERSUS IOS 5.

23                 GIVEN THE CLARITY IN THE FILE HISTORY

24     HERE, THIS IS SOMETHING THAT WE THINK SHOULD BE

25     DECIDED NOW AND SHOULD NOT GO TO THE JURY.

3801

```
 1                THE COURT:  OKAY.  ALL RIGHT.

 2                MR. JOHNSON:  YOUR HONOR, CAN I RESPOND?

 3                THE COURT:  YEAH, GO AHEAD, BRIEFLY.

 4                MR. JOHNSON:  SO I WANT TO JUST GO BACK

 5      TO THAT THIRD FUNCTION, BECAUSE THE FUNCTION IS

 6      SEQUENTIALLY DISPLAYING IMAGES, AND THERE WASN'T

 7      ANY DISCUSSION IN THE PROSECUTION HISTORY ABOUT

 8      WHETHER SCROLLING IS EQUIVALENT TO TAPPING.  IT'S

 9      NOT AS THOUGH SAMSUNG GAVE THAT UP DURING

10      PROSECUTION.

11                FESTO TALKS ABOUT, YOU KNOW, THERE NEEDS

12      TO BE -- PROSECUTION HISTORY ESTOPPEL AFFECTS A

13      GENERAL DISCLAIMER OF THE TERRITORY BETWEEN THE

14      ORIGINAL CLAIM AND THE AMENDED CLAIM.  THE ORIGINAL

15      CLAIM HAD TWO FUNCTIONS.

16                THE ISSUED CLAIM, OR AMENDED CLAIM HERE,

17      HAS THREE FUNCTIONS.  SO THE ANALYSIS IS WHETHER

18      ULTIMATELY TWO CORE FUNCTIONS SHOULD BE EQUIVALENT

19      TO THREE CORE FUNCTIONS.

20                WHAT'S IN THAT THIRD CORE FUNCTION,

21      WHETHER IT'S SEQUENTIALLY DISPLAYING AN IMAGE,

22      THAT'S THE ISSUE.

23                WHETHER TAPPING IS RELATED TO SCROLLING,

24      THAT WASN'T DISCUSSED IN THE PROSECUTION HISTORY.

25      SCROLLING WAS NOT DISCUSSED IN THIS PROSECUTION
```

3802

```
1    HISTORY, PER SE.

2              IT WAS THIS ADDED -- IT WAS THIS IDEA OF

3    ADDING A THIRD FUNCTION.

4              AND THE CASES THAT MR. SELWYN REFERS TO

5    TALK ABOUT THE FACT THAT YOU'RE SUPPOSED TO LOOK AT

6    THE AMENDED CLAIM AND COMPARE IT TO WHAT WAS

7    ORIGINALLY FILED, AND WHATEVER THE DISTINCTION IS,

8    THAT GAP BETWEEN THE ORIGINAL CLAIM AND THE AMENDED

9    CLAIM, THAT'S WHAT THE PATENTEE GIVES UP.

10             SO IN THAT SITUATION, IT'S WHETHER A

11   SECOND -- A CLAIM THAT HAS TWO FUNCTIONS IS

12   EQUIVALENT TO THE CLAIM THAT HAS THREE FUNCTIONS.

13             IT DOESN'T GET DOWN TO THE LEVEL OF

14   SPECIFICITY AS TO WHETHER SCROLLING IS EQUIVALENT

15   TO TAPPING, WHICH IS THE ISSUE THAT'S HERE.

16             AND IT WAS NOT A NARROWING OF THAT IN ANY

17   SENSE.

18             THE COURT:  OKAY.

19             MR. SELWYN:  CAN I RESPOND VERY BRIEFLY

20   TO THAT?

21             THE COURT:  GO AHEAD, PLEASE.

22             MR. SELWYN:  THE CLAIM BEFORE AMENDMENT

23   DID NOT REQUIRE SCROLLING THROUGH PHOTOS USING THE

24   SCROLL KEYS.  THE AMENDMENT NARROWED THE CLAIM IN

25   ORDER TO ADD THAT.
```

1           THE CONSEQUENCE OF THAT IS THAT SAMSUNG

2      IS ESTOPPED FROM ARGUING THAT SCROLLING WITHOUT

3      USING SCROLL KEYS, SUCH AS BY SWIPING, IS

4      EQUIVALENT TO SCROLLING WITH KEYS.

5           THEY ARE TRYING, THROUGH EQUIVALENCE NOW,

6      TO RECAPTURE WHAT THEY GAVE UP IN THE PROSECUTION

7      OF THIS PATENT IN ORDER TO GET THIS CLAIM.

8           THE CLERK:  ALL RIGHT.  LET'S GO TO '460,

9      CLAIM CONSTRUCTION IN INSTRUCTION 15.1.

10           I'M DENYING APPLE'S OBJECTION.  THE

11      INSTRUCTION IS CONSISTENT WITH THE SUMMARY JUDGMENT

12      ORDER.

13           WITH REGARD TO INSTRUCTION NUMBER 29,

14      UTILITY PATENT DAMAGES, THE NORTHERN DISTRICT MODEL

15      JURY INSTRUCTION STILL ALLOWS APPLICATION OF THE

16      ENTIRE MARKET VALUE RULE IF THE PERCENTAGE IS LOW

17      ENOUGH, AND I'D LIKE TO STICK WITH THE MODEL RULES,

18      MODEL JURY INSTRUCTIONS, EXCUSE ME.

19           WITH REGARD TO THE LUMP SUM, SAMSUNG

20      CITES TO MR. WAGNER'S TESTIMONY AS TO A LUMP SUM

21      ROYALTY, SO I THINK THERE IS SOME BASIS IN THE

22      RECORD IF THE JURY CHOOSES TO DO THAT.  SO BOTH OF

23      THOSE OBJECTIONS WOULD BE DENIED.

24           WITH REGARD TO 34.1, THE DESIGN PATENT

25      INFRINGEMENT, THAT WOULD BE DENIED IN PART AND

3804

```
1    GRANTED IN PART.

2              I AGREE THAT THE GORHAM TEST IS NOT THE

3    MOST ARTFULLY PHRASED, BUT IT IS THE BEST STATEMENT

4    OF THE LAW TO BE APPLIED TO THE JURORS, OR APPLIED

5    BY THE JURORS, EXCUSE ME, AND THAT'S THE STANDARD

6    THAT SHOULD BE GIVEN.  SO I'M NOT GOING TO TAKE

7    THAT OUT.

8              HOWEVER, I MIGHT BE AMENABLE TO ADDING

9    THE SENTENCE THAT APPLE SUGGESTS, WHICH IS "YOU DO

10   NOT NEED, HOWEVER, TO FIND THAT ANY PURCHASERS

11   ACTUALLY WERE DECEIVED OR CONFUSED BY THE

12   APPEARANCE OF THE ACCUSED SAMSUNG PRODUCTS."

13             I BELIEVE THIS IS A CORRECT STATEMENT OF

14   THE LAW AND I MIGHT BE WILLING TO ADD THAT TO

15   CLARIFY THAT PROOF OF ACTUAL DECEPTION IS NOT

16   REQUIRED, AND TO DO THIS IN BOTH INSTRUCTIONS 34.1

17   AND 37.

18             MR. ZELLER, I'M ASSUMING YOU'RE GOING TO

19   OBJECT TO THAT, RIGHT?

20             MR. ZELLER:  THE SHORT ANSWER IS YES.

21             THE COURT:  OKAY.

22             MR. ZELLER:  THE LONGER ANSWER IS THAT IF

23   THE COURT IS INCLINED TO DO THAT, WHAT WE WILL

24   SUGGEST AND PROPOSE, YOUR HONOR, IS THAT IT BE MADE

25   CLEAR THAT THE EXISTENCE OR ABSENCE OF ACTUAL
```

```
 1    DECEPTION IN THE MARKETPLACE MAY BE A RELEVANT
 2    CONSIDERATION, BUT IT IS NOT DISPOSITIVE.  AND I
 3    CAN PROPOSE SOME EXACT LANGUAGE.
 4         BUT THE COURTS HAVE MADE CLEAR, AND THE
 5    FEDERAL CIRCUIT HAS MADE CLEAR, THAT IT IS A
 6    TWO-WAY STREET ON THAT SUBJECT.
 7         SO THE PARTIES, I THINK, ARE ENTITLED TO
 8    ARGUE FROM THAT THAT IT SHOULDN'T BE A ONE-WAY
 9    STATEMENT, YOUR HONOR.
10         THE COURT:  ALL RIGHT.  WELL, LET ME HEAR
11    FROM MR. JACOBS THEN.  DID I --
12         MR. JACOBS:  IT IS QUITE CLEAR, YOUR
13    HONOR, UNDER THE DECISIONAL LAW THAT EVIDENCE OF
14    ACTUAL DECEPTION IS NOT ONLY NOT REQUIRED, BUT IS
15    NOT REALLY A FACTOR IN THE EGYPTIAN GODDESS
16    ANALYSIS, AND TO SUGGEST IT'S EVEN A FACTOR WOULD
17    GIVE IT UNDUE WEIGHT AND WOULD ALLOW AN ARGUMENT TO
18    BE MADE TO THE JURY THAT WOULD BE LEGALLY
19    INCORRECT.
20         I BELIEVE YOU ELICITED THE TRUTH ON THIS
21    FROM SAMSUNG'S COUNSEL IN AN EXCHANGE THAT WE CITED
22    IN OUR BRIEF WHERE SAMSUNG SAID, "THAT'S RIGHT, WE
23    DO NOT MEET -- THERE IS NO REQUIREMENT OR WE DO NOT
24    INTEND TO TRY AND PROVE ACTUAL CONFUSION -- THE
25    ABSENCE OF ACTUAL CONFUSION OR DECEPTION IN ARGUING
```

3806

```
1    AGAINST DESIGN PATENT INFRINGEMENT."

2              SO I THINK WE'RE ACTUALLY IN AGREEMENT ON

3    WHAT THE LAW IS HERE.  BUT INCLUDING THIS FACTOR

4    WOULD ALLOW AN ARGUMENT TO BE MADE ABOUT THE

5    EVIDENTIARY RECORD THAT WOULD GIVE GREAT WEIGHT TO

6    A FACTOR THAT THE FEDERAL CIRCUIT HAS MADE CLEAR IS

7    REALLY NOT RELEVANT.

8              IT IS THE CASE THAT IF YOU HAVE ACTUAL

9    CONFUSION, THAT GETS CITED IN YOUR FAVOR.

10             BUT IT IS NOT THE CASE THAT THE ABSENCE

11   OF ACTUAL CONFUSION EVER GETS CITED AGAINST YOU IN

12   A FEDERAL CIRCUIT CASE ON DESIGN PATENT

13   INFRINGEMENT POST-EGYPTIAN GODDESS.

14             THE COURT:  NOW, THE LANGUAGE THAT YOU

15   SUGGESTED, WHERE DO YOU RECOMMEND THAT ACTUALLY BE

16   INSERTED?  IS THERE A SPECIFIC LINE NUMBER IN JURY

17   INSTRUCTION 34.1?

18             MR. JACOBS:  YES.

19             THE COURT:  WHERE IS THAT?

20             MR. JACOBS:  RIGHT AFTER -- IT'S AT LINE

21   7 AND A HALF, YOUR HONOR.

22             THE COURT:  OKAY.  SO RIGHT AFTER THAT,

23   ADD "YOU DO NOT NEED, HOWEVER, TO FIND THAT ANY

24   PURCHASERS ACTUALLY WERE DECEIVED OR CONFUSED BY

25   THE APPEARANCE OF THE ACCUSED SAMSUNG PRODUCTS"?
```

```
 1           MR. JACOBS:  THAT WOULD GO RIGHT AFTER
 2    THE "INDUCING HIM TO PURCHASE ONE SUPPOSING IT TO
 3    BE THE OTHER" FRAGMENT.
 4           THE COURT:  ALL RIGHT.  MR. ZELLER, I DO
 5    THINK THAT'S AN ACCURATE STATEMENT OF THE LAW.
 6           MR. ZELLER:  WELL, YOUR HONOR, HERE'S
 7    WHAT I WOULD POINT TO, WHICH IS ARMINAK, IT'S
 8    A-R-M-I-N-A-K, WHICH IS 501 F.3D 1314, AND IN THIS
 9    PARTICULAR CASE, THE FEDERAL CIRCUIT RELIED UPON
10    TESTIMONY ABOUT WHAT WAS GOING ON IN THE REAL WORLD
11    FOR PURPOSES OF THE GORHAM STANDARD.
12           AND THE COURT SPECIFICALLY TALKS ABOUT
13    HOW "THE RECORD ESTABLISHES THAT THE ORDINARY
14    OBSERVER WOULD NOT BE DECEIVED BY THE SIMILARITY
15    BETWEEN ARMINAK'S AA TRIGGER SPRAYER AND CALMAR'S
16    PATENTED SPRAY ERGO SHROUD DESIGNS.  INDEED,
17    CALMAR'S OWN EXPERT CONCEDED THAT IT WOULD BE A
18    SIGNIFICANT EXCEPTION FOR A CORPORATE BUYER
19    PURCHASING THE ARMINAK TRIGGER SPRAYER TO CONFUSE
20    THE CALMAR ERGO SHROUD AND THE ARMINAK ERGO SHROUD,
21    AND THAT THERE IS ESSENTIALLY NO QUESTION THAT A
22    CORPORATION BUYER PURCHASING THESE TRIGGER SPRAYERS
23    WITH THESE SPECIFIC SHROUDS WOULD BE ABLE TO TELL
24    THE DIFFERENCES EASILY.  A FORMER CALMAR CUSTOMER
25    SERVICE MANAGER ALSO TESTIFIED THAT MOST OF
```

```
 1    CALMAR'S CUSTOMERS WOULDN'T BE FOOLED FOR A
 2    SECOND."
 3              THE COURT:  CAN I ASK YOU AGAIN,
 4    MR. ZELLER, FOR YOUR EXACT LANGUAGE?  AND I'M JUST
 5    GOING TO TAKE THIS UNDER SUBMISSION AND EITHER DO
 6    SOME FRANKENSTEIN THAT'S A COMBINATION OF BOTH, OR
 7    I'LL JUST PICK ONE LATER.  WHAT'S YOUR LANGUAGE?
 8              MR. ZELLER:  THE PROPOSED LANGUAGE WOULD
 9    BE "HOWEVER, THE PRESENCE OR ABSENCE OF ACTUAL
10    DECEPTION MAY BE RELEVANT TO WHETHER THE
11    HYPOTHETICAL ORDINARY OBSERVER WOULD BE DECEIVED."
12              THE COURT:  "HOWEVER, THE PRESENCE OR
13    ABSENCE OF ACTUAL DECEPTION MAY BE RELEVANT TO HOW
14    THE ORDINARY OBSERVER" WHAT?
15              MR. ZELLER:  ACTUALLY, "RELEVANT TO
16    WHETHER THE HYPOTHETICAL ORDINARY OBSERVER WOULD BE
17    DECEIVED."
18              THE COURT:  "HOWEVER, THE PRESENCE OR
19    ABSENCE OF ACTUAL DECEPTION MAY BE RELEVANT TO
20    WHETHER THE HYPOTHETICAL OR ORDINARY OBSERVER WOULD
21    BE DECEIVED"?
22              MR. ZELLER:  YES.  AND WE COULD -- I
23    DON'T THINK WE'D ACTUALLY REFER TO HYPOTHETICAL
24    ELSEWHERE.
25              THE COURT:  IT MIGHT MAKE IT MORE
```

1    CONFUSING.

2            OKAY.

3            MR. JACOBS:  YOUR HONOR, BRIEFLY.

4            THE COURT:  YES.

5            MR. JACOBS:  JUST TWO SECONDS.  ARMINAK

6    IS PRE-EGYPTIAN GODDESS.

7            THE COURT:  YEAH.  I'M LIKELY TO GO WITH

8    THE APPLE LANGUAGE, BUT I'M GOING TO TAKE IT UNDER

9    SUBMISSION.  OKAY?

10           MR. ZELLER:  I WOULD ALSO, I'M NOT SURE

11   WHY EGYPTIAN GODDESS, WHICH DIDN'T ADDRESS THE

12   QUESTION, WOULD BE DEEMED DISPOSITIVE OF IT.  THAT

13   IS STILL STANDING FEDERAL CIRCUIT LAW.

14           ALSO, L.A. GEAR, WHICH APPLE HAS RELIED

15   UPON SEVERAL TIMES IN THE COURSE OF THIS

16   LITIGATION, ALSO FOUND THAT THERE WAS NO

17   METHODLOGICAL ERROR IN THE DISTRICT COURT RELYING

18   ON EVIDENCE ABOUT LIKELIHOOD OF CONFUSION IN THE

19   CONTEXT OF DESIGN PATENT.

20           THE COURT:  I JUST DISAGREE WITH YOU

21   ABOUT THE ABSENCE OF DECEPTION.  I DISAGREE WITH

22   YOU ON THE ABSENCE OF DECEPTION, SO I'M NOT LIKELY

23   TO ADOPT THAT LANGUAGE.  OKAY?

24           MR. ZELLER:  THANK YOU.

25           THE COURT:  LET'S KEEP GOING.

3810

```
1              SO ON INSTRUCTION NUMBER 40, DESIGN

2    PATENT DAMAGES, OKAY.

3              MR. JACOBS:  LET ME, IF I -- WE FILED

4    THIS ONE BEFORE WE GOT THE VERY LAST INSTRUCTION.

5              THE COURT:  OH.

6              MR. JACOBS:  INSTRUCTIONS, AND I THINK

7    YOUR HONOR'S 61.3 CAPTURES THE ESSENCE OF WHAT WE

8    WERE TRYING TO SAY AND YOU HAD, I THINK YOUR HONOR,

9    ALLUDED TO THIS IN OPENING COMMENTS.

10             61.3 IS A UNIT-BY-UNIT -- PROVIDES FOR A

11   UNIT-BY-UNIT ANALYSIS OF WHAT REMEDY IS CALLED FOR,

12   AND OUR PROBLEM WAS THAT IN SOME OF THE EARLIER

13   INSTRUCTIONS, THE INSTRUCTIONS SUGGESTED THAT WE

14   HAD TO MAKE A RIGHT-BY-RIGHT ELECTION.

15             THE COURT:  UM-HUM.

16             MR. JACOBS:  SO THIS DESIGN PATENT, WE

17   HAVE TO SEEK ONLY LOST PROFITS ON AND THIS DESIGN

18   PATENT WE CAN SEEK INFRINGER'S PROFITS.  BUT 61.3

19   CLARIFIED THAT THAT'S NOT RIGHT.

20             AND I THINK REORDERING PROBABLY MAKES

21   SOME SENSE, BUT ALSO SOME INTERLINEATIONS TO

22   CAPTURE 61.3 AND SOME OF THE OTHER INSTRUCTIONS

23   WOULD BE HELPFUL.

24             IN OTHER WORDS, I DON'T THINK WE'RE IN

25   DISAGREEMENT WITH YOUR HONOR NOW ON THE LAW.  I
```

811

```
1    THINK IT'S JUST THAT SOME OF THESE EARLIER
2    INSTRUCTIONS WITH THE LANGUAGE OF ELECTION ARE
3    GOING TO BE CONFUSING.
4              THE COURT:  SO GIVE ME A SPECIFIC
5    LANGUAGE CHANGE, PLEASE.
6              MR. JACOBS:  SO ON 40, FOR EXAMPLE --
7              THE COURT:  OKAY.
8              MR. JACOBS:  -- AT LINE 7 AND
9    THREE-QUARTERS AFTER THE POTENTIAL RECOVERY --
10             THE COURT:  YES.
11             MR. JACOBS:  -- WE WOULD ADD, "WITH
12   RESPECT TO THE SALE OF EACH UNIT OF AN INFRINGING
13   PRODUCT."
14             AND THEN AT THE END OF THAT --
15             THE COURT:  I'M SORRY.  CAN YOU REPEAT
16   THAT LANGUAGE ONE MORE TIME?
17             MR. JACOBS:  SURE.  "WITH RESPECT TO THE
18   SALE OF EACH UNIT OF AN INFRINGING PRODUCT."
19             AND THEN AT THE END OF THAT PARAGRAPH,
20   I'LL CALL IT LINE 9, TO MAKE IT CLEAR THAT WE'RE
21   NOT ENTITLED TO A DOUBLE RECOVERY, WE WOULD PROPOSE
22   TO ADD -- SO IT'LL READ AS A WHOLE, "APPLE IS NOT
23   ENTITLED TO RECOVER BOTH COMPENSATORY DAMAGES AND
24   THE DEFENDANT'S PROFITS ON THE SAME UNIT SALE,"
25   WITH "ON THE SAME UNIT SALE" BEING THE PROPOSED
```

1    ADDITIONAL LANGUAGE.

2              THE COURT:  ALL RIGHT.  WHO WANTS TO

3    SPEAK FOR SAMSUNG ON THESE TWO CHANGES?

4              MR. ZELLER:  AS THE COURT IS AWARE, AND

5    WE'VE BRIEFED THIS PREVIOUSLY, WE MAINTAIN OUR

6    OBJECTION.  WE DON'T THINK THAT'S A CORRECT

7    STATEMENT OF THE LAW.  WE DON'T THINK IT CAN BE

8    DONE UNIT-BY-UNIT IN THIS MANNER.

9              COUNSEL HAS NOT PROPERLY RECITED OUR

10   POSITION ON THIS, EITHER.  WE'RE NOT SAYING IT HAS

11   TO BE DESIGN PATENT BY DESIGN PATENT, BUT

12   THERE'S -- WE DON'T AGREE WITH THE LAW ON THIS.

13             BUT SETTING THAT ASIDE FOR A MOMENT, WE

14   ACTUALLY THINK THAT THIS MAKES IT ALL MORE

15   CONFUSING.  THEY LITERALLY ARE GOING TO BE ASKING

16   THE JURY TO GO THROUGH AND DETERMINE MILLIONS AND

17   MILLIONS OF UNIT SALES AND TRY AND GROUP THEM IN

18   VARIOUS WAYS TO DETERMINE WHAT AMOUNT OF THAT

19   PARTICULAR UNIT SALE, OR WHAT GROUPING OF UNIT

20   SALES SHOULD BE LOST PROFITS VERSUS SOME OTHER

21   MEASURE OF REMEDY.

22             AND THIS IS -- THIS IS EXTREMELY

23   CONFUSING IN MY OPINION.

24             THE COURT:  CAN YOU ALL GIVE ME -- AND

25   THIS IS WHY THE VERDICT FORM TOOK SO LONG IS JUST

1        TRYING TO FIGURE OUT HOW TO PRESENT THE DAMAGES

2        QUESTIONS WHEN THERE'S SO MANY DIFFERENT

3        ALTERNATIVE REMEDIES HERE.  WE CAN'T HAVE DOUBLE

4        RECOVERY.

5                    AND YET, I MEAN, SO WHAT -- GIVE ME

6        SOME -- I'M ALL EARS ON HOW WE CAN REVISE THE

7        INSTRUCTIONS TO MAKE THIS CLEAR.  DO YOU HAVE

8        SPECIFIC LANGUAGE?

9                    BECAUSE I AGREE, I'M NOT -- I UNDERSTAND

10       WHAT APPLE IS TRYING TO DO HERE, BUT I'M NOT

11       SURE -- AND ON BALANCE, PROBABLY IT'S BETTER TO

12       INCLUDE THIS LANGUAGE, BUT I'M NOT SURE THAT IT

13       WON'T MAKE THINGS MORE CONFUSING FOR OUR JURORS.

14                   MR. ZELLER:  RIGHT.  AND THAT IS, FROM

15       OUR PERSPECTIVE, THE PROBLEM.

16                   AND IT ALL STEMS FROM, YOUR HONOR, THE

17       FACT THAT IN ORDER TO MAXIMIZE THEIR DAMAGES

18       NUMBER, THEY WANT TO HAVE THE JURY LITERALLY

19       APPLYING DIFFERENT THEORIES TO EVEN THE SAME TYPES

20       OF DEVICES AND THE SAME PATENTS.  SO THAT'S THE

21       ROOT OF THE PROBLEM IS THAT THIS IS, THIS IS THE

22       WAY APPLE HAS DONE IT TO MAXIMIZE DAMAGES.

23                   THIS IS THE ROOT OF ALSO WHY WE SUGGESTED

24       THAT APPLE SHOULD ELECT.  I MEAN, WHETHER THE COURT

25       CAN FORCE IT OR NOT, I UNDERSTAND THE COURT'S

1    POSITION ON THAT.

2              THE COURT:  I DON'T THINK I CAN FORCE IT,

3    AS MUCH AS I WOULD LIKE TO.

4              MR. ZELLER:  BUT AT THIS POINT, IT MAY

5    BE -- MAYBE APPLE IS GOING TO HAVE TO REALLY CHOOSE

6    TO DO IT IF IT WANTS SOMETHING CLEAR THAT CAN GO TO

7    THIS JURY THAT'S NOT GOING TO CREATE CONSIDERABLE

8    CONFUSION.

9              AND ONE THING I WOULD ALSO NOTE ABOUT

10   THIS INSTRUCTION THAT IS SOMEWHAT PROBLEMATIC THAT

11   OVERLAYS IT AS WELL, AS THE COURT IS AWARE FROM

12   CASES LIKE CATALINA LIGHTING, ONCE THERE'S A

13   RECOVERY ON A PARTICULAR DEVICE OR UNIT OR HOWEVER

14   THIS GETS PARSED OUT, WHETHER IT'S ON UTILITY OR

15   DESIGN PATENTS, YOU CAN'T RECOVER ON BOTH.

16             AND THAT'S NOT MADE CLEAR IN THIS

17   INSTRUCTION, EITHER.

18             SO IF -- SAY, FOR EXAMPLE, ON, AGAIN,

19   WHETHER IT'S A UNIT OR A PARTICULAR CATEGORY OF

20   UNITS, IF SAMSUNG'S PROFITS ARE THE MEASURE OF

21   DAMAGES, THAT'S IT.  THEY DON'T GET ANYTHING ELSE,

22   NO MATTER HOW MANY OTHER SUPPOSED INFRINGEMENTS

23   HAVE OCCURRED.

24             AND THAT IS NOT MADE CLEAR IN ANY OF

25   APPLE'S INSTRUCTIONS.

```
 1                  I -- I APOLOGIZE, I DON'T HAVE ANY --
 2                  THE COURT:  WELL, WHY DON'T -- I'M GOING
 3       TO GIVE MR. JACOBS AN OPPORTUNITY TO SPEAK, BUT IF
 4       YOU WANT TO THINK ABOUT SOME WAYS THAT WE CAN
 5       CLARIFY THIS?
 6                  I MEAN, I AM SERIOUSLY CONCERNED,
 7       MR. JACOBS, THAT WE MAY GET A VERY CONFUSED JURY
 8       HERE WHO MAY NOT -- I MEAN, I HAVE TROUBLE
 9       UNDERSTANDING THIS AND I'VE SPENT A LITTLE BIT MORE
10       TIME WITH IT THAN THEY HAVE.
11                  SO TELL ME, HOW CAN WE MAKE THIS CLEARER?
12       IT'S VERY CONFUSING.
13                  MR. JACOBS:  WELL, I'M NOT SURE THAT --
14       WELL, I THINK THE ANSWER IS THIS:  OUR DAMAGES
15       EXPERT PRESENTED A DAMAGES MODEL.  IT HAD VARIOUS
16       COMPONENTS AND IT HAD VARIOUS ALTERNATIVES.
17                  THE DAMAGES MODEL -- THE PRESENTATION TO
18       THE JURY WAS VERY CLEAR THAT WE WERE NOT SEEKING A
19       DOUBLE RECOVERY, WHETHER AS AGAINST DIFFERENT TYPES
20       OF RECOVERIES OR DIFFERENT TYPES OF RIGHTS AGAINST
21       PARTICULAR UNITS.
22                  FOR EACH UNIT, YOU'LL RECALL KIND OF THE
23       WATERFALL THAT HE DEMONSTRATED, THE PHONES FELL
24       INTO THE VARIOUS BUCKETS.
25                  THERE WAS NO CRITICISM OF THAT MODEL, ON
```

1    THAT ASPECT OF THE MODEL, FROM SAMSUNG'S DAMAGES

2    EXPERT.

3              SO THERE IS NO CLAIM THAT THE MODEL THAT

4    HE PRESENTED AND THE TOTALS THAT HE PRESENTED, THE

5    CALCULATIONS THAT HE PRESENTED SUFFER FROM A DOUBLE

6    RECOVERY PROBLEM.

7              THAT SHOULD BE SUFFICIENT.  IF THE

8    DAMAGES MODEL HAD A FUNDAMENTAL FLAW BY WAY OF

9    DOUBLE RECOVERY AND SAMSUNG HAD SAID THAT, WE WOULD

10   BE IN A DIFFERENT WORLD, BUT WE DON'T.

11             SO THE JURY WILL TAKE ALL OF THIS IN,

12   THEY WILL TAKE THE EVIDENCE FROM BOTH SIDES,

13   MR. WAGNER DID TAKE A RUN AT THE LOST PROFITS

14   COMPONENT AND MR. MUSIKA SAID TO THE JURY "IF YOU

15   REJECT OUR LOST PROFITS COMPONENT, THIS IS WHAT

16   HAPPENS ON INFRINGER'S PROFITS" AND HE PRESENTED

17   THAT ALTERNATIVE CALCULATION.

18             THE COURT:  UM-HUM.

19             MR. JACOBS:  THE JURY WILL GIVE US A

20   NUMBER BASED ON ALL THE EVIDENCE THAT THEY'VE

21   RECEIVED FROM THE WITNESSES AND THE EXHIBITS THAT

22   GO BACK.

23             AND I'M REASONABLY OPTIMISTIC THAT THE

24   NUMBER THEY PRODUCE WILL BE DEFENSIBLE BASED ON THE

25   LIABILITY FINDINGS THEY GENERATE.

```
 1            I THINK IF WE GET MORE GRANULAR --

 2            THE COURT:  I MEAN, I'M NOT SAYING THAT

 3    AN IMPROPER DAMAGES THEORY WAS PUT FORTH.

 4            I'M JUST CONCERNED THAT IT'S VERY COMPLEX

 5    AND THERE'S SO MANY PIECES HERE AND THEN THERE ARE

 6    ALTERNATIVE RECOVERIES FOR EACH ONE.

 7            I'M JUST CONCERNED ABOUT POTENTIAL JURY

 8    CONFUSION.

 9            SO DO YOU HAVE ANY SUGGESTION, AND MAYBE

10    THE VERDICT FORM WILL HELP US IN TRYING TO SORT

11    THAT THROUGH, BUT -- ANY OTHER SUGGESTIONS ABOUT

12    WHAT WE CAN DO, OTHER THAN THE FEW CHANGES I'VE

13    TALKED ABOUT DURING SAMSUNG'S OBJECTIONS ABOUT

14    MAYBE REORDERING AND SOME OF THE DIFFERENT DAMAGES

15    REMEDIES?

16            MR. JACOBS:  I THINK THAT ACTUALLY

17    REORDERING IN THE WAY THE COURT PROPOSED MAY

18    AGGRAVATE THE CONFUSION BECAUSE THE LEAD COMPONENT

19    OF DAMAGES IS REALLY INFRINGER'S PROFITS AND THAT'S

20    HOW MR. MUSIKA PRESENTED IT.

21            SO I THINK IF WE START OUT WITH LOST

22    PROFITS AND REASONABLE ROYALTY, THE JURY MARCHING

23    THROUGH THE INSTRUCTIONS MAY WELL GET CONFUSED.

24            SO I WOULD SUGGEST KEEPING INFRINGER'S

25    PROFITS FIRST, LOST PROFITS SECOND, REASONABLE
```

1    ROYALTY THIRD, THE REASONABLE ROYALTY ANALYSIS

2    AGAIN, AND THE JURY SHOULD RECALL THE WAY THE

3    WATERFALL WORKED AND THE WAY A FEW PHONES IN THE

4    DIAGRAM FELL INTO THE REASONABLE ROYALTY COLUMN.

5             AND THEY WILL -- THEY SHOULD HAVE IT IN

6    THEIR HEADS THAT INFRINGER'S PROFITS IS THE LARGEST

7    COMPONENT, AND THEN LOST PROFITS IS THE SECOND

8    COMPONENT, AND REASONABLE ROYALTY IS THE THIRD.

9             I DON'T THINK THAT'S GOING TO BE VERY --

10   THAT SHOULDN'T BE THAT CONFUSING TO THEM.

11            IN CLOSING, WE WILL BE PRESENTING

12   ALTERNATIVE CALCULATIONS TO THE JURY THAT EXPLAIN,

13   WELL, IF YOU FIND ON THIS ISSUE IN SAMSUNG'S FAVOR,

14   IF YOU FIND ON THIS ISSUE IN APPLE'S FAVOR, HERE IS

15   THE NUMBER BASED ON THE EVIDENCE THAT WAS ADDUCED

16   AT TRIAL BY BOTH EXPERTS.

17            THE COURT:  UM-HUM.  OKAY.  WELL, WITH

18   REGARD TO THE SUGGESTED CHANGES TO INSTRUCTION

19   NUMBER 40, I UNDERSTAND, MR. ZELLER, YOU'RE

20   OBJECTING TO -- YOU THINK THIS ADDITIONAL LANGUAGE

21   COULD CAUSE CONFUSION ABOUT WHETHER MULTIPLE

22   RECOVERIES COULD BE AWARDED FOR THE SAME UNIT SALE

23   AND YOU THINK THAT'S PROHIBITED.

24            ANY OTHER ALTERNATIVE LANGUAGE THAT YOU

25   WILL LIKE TO PROPOSE?

```
 1              MR. ZELLER:  I APOLOGIZE, I DON'T HAVE A

 2     PRACTICAL SOLUTION FOR THIS, OTHER THAN THE COURT

 3     IS AWARE THAT WE HAVE SUBMITTED WHAT WE THINK IS A

 4     CHART THAT SHOULD GO TO THE JURY AS TO WHAT'S BEING

 5     ACCUSED AND UNDER WHAT THEORY AND THE LIKE.

 6              BUT WE THINK OUR CHART IS MUCH CLEARER

 7     THAN APPLE'S, WHICH -- I MEAN, APPLE'S IS PROBABLY

 8     GOING TO EVEN CAUSE MORE CONFUSION IF THIS IS

 9     WHAT'S GIVEN TO THEM.

10              THE COURT:  WELL, THAT'S WHY I WANT YOU

11     ALL -- WHEN WE LOOK AT THE VERDICT FORM, I TRIED TO

12     DO A SEPARATE CHART.  IT DIVIDES UP AND REQUIRES

13     THE JURY TO MAKE SEPARATE FINDINGS AS TO SEPARATE

14     PARTIES.

15              MR. ZELLER:  RIGHT.  AND CERTAINLY

16     SPECIFYING WHAT THE -- WHAT THE THEORY OF RECOVERY

17     IS I THINK IS ABSOLUTELY ESSENTIAL, BECAUSE OF

18     CERTAINLY THE COMPLEXITY OF WHAT'S BEING PRESENTED.

19              WE CAN OBVIOUSLY TALK ABOUT THAT SOME

20     MORE IN THE CONTEXT OF THE VERDICT FORM.

21              BUT WITH RESPECT TO THE INSTRUCTIONS, MY

22     CONCERN HAS TO DO WITH, YOU KNOW, EVEN APART FROM

23     OUR DISAGREEMENT ABOUT THE LAW, IS THAT ADDING IN

24     THINGS SUCH AS "WITH RESPECT TO EACH INDIVIDUAL

25     UNIT," THERE ARE MILLIONS AND MILLIONS OF UNIT
```

4820

```
 1    SALES INVOLVED HERE, AND THE JURY IS GOING TO LOOK
 2    AT THAT AND IS GOING TO BECOME CONFUSED JUST SIMPLY
 3    BY WHAT IT'S EVEN ASKING THEM TO DO.
 4              AND, AGAIN, I THINK THE PRACTICAL WAY IN
 5    WHICH THIS GETS RESOLVED IS FOR APPLE TO CLARIFY
 6    ITS DAMAGES THEORIES, AND IT'S PUTTING US ALL AT
 7    RISK FOR HAVING A VERY CONFUSED JURY AND ONE THAT
 8    MAY NOT EVEN REACH A VERDICT BECAUSE IT WILL NOT
 9    CLARIFY WHAT THESE DAMAGES THEORIES ARE.
10              AND I SAW MR. MUSIKA, JUST LIKE EVERYONE
11    ELSE, WITH HIS GRAPHICS ABOUT MOVING THINGS AROUND,
12    AND THAT'S -- THAT'S OBVIOUSLY NOT GOING TO ASSIST
13    THE JURY IN ANY WAY IN TRYING TO DETERMINE WHAT IT
14    CAN OR CANNOT AWARD AND AVOIDING THE DOUBLE
15    RECOVERY PROBLEM.
16              AND I ALSO DISAGREE WITH HOW THE ORDERING
17    OF THESE IS SOMEHOW GOING TO HELP THE JURY.
18              THE PROBLEM IS, PARTICULARLY WITH DESIGN
19    PATENTS, IS THAT YOU CAN'T -- IT'S NOT LIKE UTILITY
20    PATENTS.  YOU DON'T HAVE THE SAME REMEDIES THAT ARE
21    AVAILABLE.
22              YOU CAN GET, ON THE ONE HAND, THE ACCUSED
23    INFRINGER'S PROFITS, OR YOU CAN GET EITHER
24    REASONABLE ROYALTY OR YOUR LOST PROFITS.
25              AND THIS LITERALLY, AT VARIOUS POINTS,
```

1    SUGGESTS THAT THE JURY CAN MIX AND MATCH IN WAYS IT

2    CANNOT -- THAT'S NOT PROPER UNDER DESIGN PATENT

3    LAW.

4         MR. JACOBS:  YOUR HONOR, MR. MUSIKA

5    HANDLED -- TOOK HEAD-ON THE DOUBLE RECOVERY ISSUE

6    AND SPENT SEVERAL MINUTES OF HIS VALUABLE TIME

7    DISCUSSING THAT ISSUE.  SO THIS HAS BECOME A BIT OF

8    A PHANTASM FROM SAMSUNG'S PART.  THERE IS NO CLAIM

9    OF DOUBLE RECOVERY IN THE DAMAGES MODEL.

10        I DO THINK, WHILE WE'RE TALKING ABOUT

11   COMPLICATING THE ISSUE, THAT THE SEPARATE ENTITY

12   ASPECT OF THIS HAS TAKEN ON A LIFE -- HAS TAKEN ON

13   A LIFE GREATER THAN IT SHOULD, AND THAT -- IN

14   LOOKING AT THE VERDICT FORM, FOR EXAMPLE, THIS CAN

15   BE SEEN.

16        I THINK THIS IS EVEN MORE GRANULAR BY WAY

17   OF ENTITY THAN SAMSUNG HAS PROPOSED, AND WE ASKED

18   MR. WAGNER, FROM THE ACCOUNTING PERSPECTIVE, "DO

19   YOU HAVE ANY BASIS FOR DIFFERENTIATING THE AMOUNT

20   THAT'S AWARDED AGAINST ENTITIES," ENTITIES, AND HE

21   SAID NO.

22        SO I THINK WE CAN SIMPLE APPLY THAT BY --

23   THE WAY WE PROPOSED DOING IT JUST HAVING A QUESTION

24   AT THE END ABOUT THE ENTITIES AND GO THROUGH THE

25   VERDICT FORM HAVING LIABILITY ASSIGNED TO SAMSUNG

```
 1    AND THEN ASKING THEM A QUESTION ABOUT THE SPECIFIC

 2    ENTITIES THAT TEASED OUT WHETHER THERE WAS ANY

 3    MEANINGFUL DIFFERENCE BETWEEN THE -- BETWEEN THE

 4    ENTITIES.

 5            SO I THINK THAT'S AN AREA WHERE WE COULD

 6    SIMPLIFY AND WE WOULD STRONGLY URGE THAT.

 7            OTHER THAN THAT, I THINK THE JURY HAS

 8    OUR, HAS OUR CHARTS.  MR. MUSIKA EXPLAINED HOW, IF

 9    THEY WANT TO GO THROUGH 25A AND CALCULATE, AS THE

10    FORM NOW PROPOSES, ON A PRODUCT-BY-PRODUCT BASIS,

11    THEY CAN DO THAT, AND I THINK THEY'LL GET IT RIGHT.

12            THE COURT:  ALL RIGHT.  LET'S HANDLE YOUR

13    LAST TWO HIGH PRIORITIES AND THEN I WANT TO GIVE

14    YOU BOTH AN OPPORTUNITY -- OH, AND WE NEED TO TAKE

15    A BREAK.

16            (DISCUSSION OFF THE RECORD BETWEEN THE

17    COURT AND THE REPORTER.)

18            THE COURT:  WITH REGARD TO YOUR OBJECTION

19    TO 48, THE TRADE DRESS FUNCTIONALITY, FOURTH

20    PARAGRAPH, I'M GOING TO OMIT THAT FOURTH PARAGRAPH.

21    NEITHER PARTY RECOMMENDED IT, AND I AGREE THAT

22    UNDER QUICK BILLIARDS, IT MIGHT INVITE ERROR.

23            OKAY.  WITH REGARD TO 57 --

24            MR. ZELLER:  I'M SORRY, YOUR HONOR.  WE

25    ACTUALLY DID WANT THAT PARAGRAPH.  I BELIEVE WE --
```

```
 1    THEIR OBJECTION IS BASED ON INAPPOSITE CASES, YOUR
 2    HONOR.  THEY'RE RELYING ON THOSE RESTAURANT TRADE
 3    DRESS CASES WHICH THE SUPREME COURT, IN WAL-MART,
 4    SAID ARE NOT APPLICABLE TO A PRODUCT TRADE DRESS
 5    CASE.  WE DO WANT THIS LANGUAGE.
 6            AND BY THE WAY, YOUR HONOR, THE COURT'S
 7    ALREADY INSTRUCTED THE JURY TO THIS EFFECT, WHICH
 8    IS -- AND APPLE OBJECTED THE FIRST TIME AROUND
 9    PREVIOUSLY TO THIS, AND WE OPPOSED THAT.  THE COURT
10    HAS GIVEN, AS PART OF THE PRELIMINARY INSTRUCTIONS,
11    LANGUAGE TO THIS EFFECT.
12            MR. JACOBS:  YOUR HONOR, I'M LOOKING AT
13    SAMSUNG'S PROPOSED INSTRUCTION AND IT DOES NOT HAVE
14    THIS LANGUAGE.
15            THE COURT:  YEAH, I DON'T THINK IT DOES.
16            MR. JACOBS:  AND WE EXPLAINED THE
17    WAL-MART ISSUE IN OUR BRIEF.
18            THE COURT:  ALL RIGHT.  WELL, THAT LAST
19    PARAGRAPH IS COMING OUT.
20            OKAY.  SO LET'S GO TO YOUR LAST ONE.
21    NUMBER 57, 57, THE SLEEKCRAFT --
22            MR. JACOBS:  IF I MAY JUST GIVE YOU TWO
23    SENTENCES OF CONTEXT BEFORE YOU GIVE US YOUR
24    PRELIMINARY INDICATION ON THIS?
25            THE COURT:  OKAY.
```

1824

```
 1            MR. JACOBS:  THIS IS ONE OF THOSE THEORY

 2    OF THE CASE INSTRUCTIONS, YOUR HONOR, BECAUSE OUR

 3    THEORY ON THE SURVEY, FOR EXAMPLE, WAS A POST-SALE

 4    CONFUSION THEORY, SO IT'S ESPECIALLY IMPORTANT THAT

 5    THE INSTRUCTION CONFORM TO APPLICABLE LAW AND

 6    INCLUDE THAT, INCLUDE THAT POSSIBILITY AS A WAY ONE

 7    CAN PROVE LIKELIHOOD OF CONFUSION.

 8            THE COURT:  ALL RIGHT.  WHAT ABOUT THIS,

 9    AND THIS IS A PROPOSAL.  I WANT TO HEAR FROM BOTH

10    PARTIES ON IT.  "APPLE MAY PROVE A LIKELIHOOD OF

11    CONFUSION BY PROVIDING DIRECT EVIDENCE OF CONSUMER

12    CONFUSION.  EVIDENCE OF NON-CONSUMER CONFUSION MAY

13    ALSO BE RELEVANT WHERE THERE IS CONFUSION ON THE

14    PART OF:  1, POTENTIAL CUSTOMERS; 2, NON-CUSTOMERS

15    WHOSE CONFUSION COULD CREATE AN INFERENCE THAT

16    CONSUMERS ARE LIKELY TO BE CONFUSED; AND, 3,

17    NON-CONSUMERS WHOSE CONFUSION COULD INFLUENCE

18    CONSUMERS."

19            WHY DON'T YOU BOTH COMMENT IF THIS IS

20    ACCEPTABLE OR NOT.

21            MR. ZELLER:  AND WE OBJECT, YOUR HONOR,

22    ON A VARIETY OF GROUNDS TO THAT, YOUR HONOR.

23            FIRST OF ALL, I THINK THAT LANGUAGE IN

24    ITSELF IS RATHER CONFUSING TO THE JURY.

25            WE ALSO THINK IT'S CONTRARY TO THE LAW.
```

1    THE MODEL INSTRUCTIONS DO NOT PROVIDE ANYTHING

2    ALONG THOSE LINES.

3              AND ALSO APPLE DID NOT EVEN DISCLOSE SOME

4    OF THESE SO-CALLED THEORIES NOW, THE NON-CONSUMER

5    CONFUSION, UNTIL ITS PROPOSED JURY INSTRUCTIONS.

6    THIS WAS NOT ASSERTED BY APPLE UNTIL THAT TIME.

7              THE OTHER POINT IS, YOUR HONOR, AND

8    SPECIFICALLY LOOKING AT THE CASES, AND I'LL START

9    WITH THIS REARDON CASE FROM THE NINTH CIRCUIT, IT

10   SAYS --

11             THE COURT:  THAT'S MORE HELPFUL TO YOU,

12   RIGHT?

13             MR. ZELLER:  I'M SORRY?

14             THE COURT:  REARDON IS MORE HELPFUL TO

15   SAMSUNG, RIGHT?

16             MR. ZELLER:  YES.  IT SAYS "TRADEMARK

17   INFRINGEMENT PROTECTS ONLY AGAINST MISTAKEN

18   PURCHASING DECISIONS AND NOT AGAINST CONFUSION

19   GENERALLY."

20             AND THE LINE THAT APPLE IS TRYING TO

21   CROSS ON THIS IS TO SUGGEST THAT OUT THERE IN THE

22   WORLD, IF THERE'S SOME CONFUSION, AND THE COURT

23   WILL RECALL THIS TESTIMONY FROM MR. SCHILLER ABOUT

24   DRIVING BY A BILLBOARD AT 55 MILES AN HOUR, OR

25   SEEING A SUPER BOWL COMMERCIAL OUT OF THE CORNER OF

```
 1    YOUR EYE ON THE WAY TO THE KITCHEN, THAT SOMEHOW

 2    THAT WAS ACTIONABLE.

 3              THERE IS ZERO AUTHORITY FOR THAT.  THAT

 4    IS NOT THE PURPOSE OF THE LANHAM ACT.  THE IDEA --

 5    BECAUSE THEY'RE TRYING TO CONSTRUCT THIS MARKING

 6    CONFUSION NOTION.

 7              THEY HAVE NEVER TIED IT TO ACTUAL

 8    PURCHASING DECISIONS OF ANY KIND, EVEN IN THOSE

 9    INSTANCES WHERE INITIAL INTEREST CONFUSION OR

10    POST-SALE CONFUSION IS ALLOWED.

11              THERE IS EVIDENCE THAT THERE'S ACTUALLY

12    HAD AN EFFECT ON PURCHASING DECISIONS, WHICH IS --

13              THE COURT:  YOU KNOW WHAT?  I'M GOING TO

14    STOP YOU NOW.  I'M NOT GOING TO MODIFY THE MODEL

15    INSTRUCTION.  I'M NOT GOING TO ADD THAT LANGUAGE.

16    IT'S NOT IN THE MODEL INSTRUCTION.  I'M NOT GOING

17    TO ADD IT.

18              MR. ZELLER:  THANK YOU.

19              MR. JACOBS:  YOUR HONOR, THIS IS -- AS I

20    THINK I SAID A FEW WEEKS AGO, IF YOU REALLY DELVE

21    DEEPLY INTO THESE MODELS AGAINST NINTH CIRCUIT

22    INSTRUCTIONS, THIS IS JUST AN AREA WHERE THEY'RE

23    NOT THAT WELL CONSTRUCTED, AND I DON'T HAVE AN

24    EXPLANATION FOR IT.  IT'S A WHO QUESTION.

25              THE COURT:  ACTUALLY, I HAVE THE REARDON
```

1    CASE NOW.  IT WAS REASSIGNED FROM JUDGE PATEL TO

2    ME.  SO IT'S BACK DOWN FROM APPEAL AND THE PARTIES

3    ARE GOING TO BE SETTING A SCHEDULE.

4            MR. MCELHINNY:  AND THE LANGUAGE THAT I

5    BELIEVE THE COURT READ WAS FROM REARDON, CORRECT?

6            THE COURT:  IT'S FROM REARDON, YEAH.

7    I'VE GOT THE CASE NOW.

8            MR. JACOBS:  SO WE COULD LIVE WITH THAT

9    LANGUAGE AS THE COURT PROPOSED IT.  IT'S OBVIOUSLY

10   THE CORRECT STATEMENT OF THE LAW AND THE COURT NOW

11   VERY WELL KNOWS THAT.

12           MR. ZELLER:  IT'S --

13           THE COURT:  WELL, IT'S NOT -- YOU KNOW, I

14   AGREE WITH YOU THAT THAT -- THE DIFFICULTY THAT

15   WE'RE FACING IS THAT IN MANY AREAS OF THESE LAWS,

16   THEY'RE NOT PARTICULARLY CLEAR, AND SO WE'RE IN A

17   VERY DIFFICULT POSITION OF HAVING TO INSTRUCT

18   JURIES ON UNCLEAR LAW.

19           BUT I'M NOT SURE TO WHAT EXTENT REARDON

20   ACTUALLY CHANGES THE OVERALL BODY OF THE NINTH

21   CIRCUIT LAW, SO I'M --

22           MR. JACOBS:  I DON'T THINK IT CHANGES --

23           THE COURT:  SO I'M RELUCTANT TO --

24           MR. ZELLER:  YOUR HONOR, I --

25           MR. JACOBS:  CAN I FINISH, MR. ZELLER,

1    PLEASE?  I THINK IT'S MY TURN.

2              REARDON DOES NOT CHANGE NINTH CIRCUIT

3    LAW.  POST-SALE CONFUSION IS WELL EMBEDDED IN THE

4    LAW.

5              AND FOR THE MODEL INSTRUCTION NOT TO

6    CONTEMPLATE THE POSSIBILITY OF POST-SALE CONFUSION

7    AS A VIABLE BASIS FOR A TRADEMARK INFRINGEMENT

8    RECOVERY MEANS THAT THE MODEL INSTRUCTION IS

9    INCONSISTENT WITH NINTH CIRCUIT DECISIONAL LAW.

10             AND IT JUST SEEMS -- IT SEEMS TO US TO BE

11   A BIG MISTAKE TO GO INTO THIS KNOWING THAT THERE'S

12   THIS GAP BETWEEN THE MODEL INSTRUCTION AND WELL

13   SETTLED NINTH CIRCUIT LAW WHICH SAYS THAT THERE IS

14   A POST -- THIS IS POST-SALE CONFUSION.  POST-SALE

15   CONFUSION IS OUT THERE.

16             SO WE HAD A VERY SIMPLE SENTENCE THAT WE

17   PROPOSED, WHICH IS SOMEWHAT SHORTER THAN THE

18   REARDON LANGUAGE, WHICH LAID OUT THE VARIOUS FORMS

19   IN WHICH CONFUSION CAN TAKE PLACE.

20             MR. ZELLER:  THAT SIMPLY DOES NOT ADDRESS

21   THE PROBLEM, YOUR HONOR.  THE LAW IS VERY CLEAR,

22   EVEN IN THOSE LIMITED SITUATIONS WHERE POST-SALE

23   CONFUSION HAS BEEN ACCEPTED, THAT THERE'S STILL

24   EVIDENCE THAT IT IMPACTS PURCHASING DECISIONS.

25             WE'RE TALKING ABOUT A PRODUCT

```
 1    CONFIGURATION CASE HERE AS WELL, AND THAT'S AN EVEN

 2    NARROWER SUBSET.  THERE ARE MANY COURTS, INCLUDING

 3    THE SIXTH CIRCUIT AND OTHER CIRCUITS, THAT HAVE

 4    ADDRESSED IT DIRECTLY, SAID YOU CANNOT ASSERT

 5    POST-SALE CONFUSION AGAINST PRODUCT CONFIGURATION,

 6    ON A PRODUCT CONFIGURATION TRADE DRESS THEORY

 7    BECAUSE OF ITS SEVERE ANTICOMPETITIVE EFFECTS.  SO

 8    THAT'S NUMBER ONE.

 9              BUT EVEN IN THOSE INSTANCES WHERE IT'S

10    BEEN RECOGNIZED, THERE HAS BEEN EVIDENCE THAT IT

11    HAD AN ACTUAL EFFECT, OR AT LEAST WOULD LIKELY HAVE

12    AN EFFECT ON PURCHASING DECISIONS.

13              AND THAT IS THE POINT ABOUT REARDON, AND

14    THAT HAS BEEN CONSISTENT IN THE LAW FOR LIKELIHOOD

15    OF CONFUSION.

16              WHAT APPLE IS LITERALLY TRYING TO DO IS

17    THEY ARE ACTUALLY ASKING FOR A CHANGE IN THE LAW.

18    NOT ONLY ARE THEY ASKING FOR A DEVIATION FROM THE

19    MODEL INSTRUCTION, THEY'RE ASKING BASICALLY TO HAVE

20    SOME FREE FLOATING FORM OF CONFUSION NOW ACTIONABLE

21    UNDER THE LANHAM ACT, AND THERE IS NO AUTHORITY FOR

22    THAT.

23              EVEN WHEN YOU LOOK AT CASES LIKE

24    BROOKFIELD, RIGHT, THERE THEY CONTEMPLATE THE FACT

25    THAT IT HAS STILL AN EFFECT ON THE PURCHASING
```

```
1     DECISION.

2              AND THAT IS TRUE EVEN FOR THE STORITZ

3     CASE WHERE IT TALKS ABOUT DOCTORS BEING MISLED AND

4     THEY WOULD HAVE AN IMPACT ON THE HOSPITAL'S

5     PURCHASING DECISIONS.

6              THE COURT:  OKAY.  I'D LIKE TO TAKE THAT

7     ONE UNDER SUBMISSION, BUT I'LL GIVE YOU THE LAST

8     WORD, MR. JACOBS, SINCE THIS IS ON YOUR TIME.

9              MR. JACOBS:  SURE, YOUR HONOR, THANK YOU.

10             I THINK IF YOU LOOK AT THE DECISIONAL

11    LAW, YOU'LL SEE THAT WE ARE STATING IT CORRECTLY.

12    WE'RE TALKING ABOUT A LIKELIHOOD OF CONFUSION.

13             WE'RE NOT TALKING ACTUAL -- ABOUT ANY

14    FORM OF ACTUAL CONFUSION BEING REQUIRED.  THERE IS

15    NO REQUIREMENT OF ACTUAL CONFUSION IN THE LANHAM

16    ACT.  IT IS LIKELIHOOD OF CONFUSION.

17             AND THE FORMS OF CONFUSION AS TO WHICH A

18    LIKELIHOOD CAN BE SHOWN UNDER THE CASES THAT WE

19    CITED INCLUDE POST-SALE CONFUSION.

20             THE PROBLEM WITH THE MODEL INSTRUCTION IS

21    TWO-FOLD.  IT DOESN'T EXPLICITLY CONTEMPLATE

22    POST-SALE CONFUSION, AND IT HAS A LOT OF POINT OF

23    SALE LANGUAGE IN IT THAT SUGGESTS THAT -- THAT

24    POINTS AWAY FROM POST-SALE CONFUSION.

25             SO THE LACK OF NEUTRALITY OF THE MODEL
```

```
 1    INSTRUCTION IS ITSELF A PROBLEM IN LIGHT OF THIS

 2    DECISIONAL LAW.

 3              THANK YOU, YOUR HONOR.

 4              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 5    IT'S NOW 4:02.

 6              UNLESS THERE WERE ANY OTHER OBJECTIONS

 7    YOU WANT TO RAISE, OTHERWISE I'M GOING TO NOW

 8    JUST -- FIRST WE'RE GOING TO TAKE A BREAK, AND THEN

 9    WHEN WE GET BACK, I'M GOING TO GIVE YOU AN

10    OPPORTUNITY TO JUST STATE FOR THE RECORD ALL OF

11    YOUR OTHER OBJECTIONS TO THE INSTRUCTIONS, AND THEN

12    WE NEED TO DO THE VERDICT FORM AND THEN I THINK

13    THAT WAS IT UNLESS YOU HAVE ANYTHING ELSE.

14              MR. SELWYN:  YOUR HONOR, IF WE COULD WHEN

15    WE RETURN FROM THE BREAK, WE WANT TO ADDRESS HIGH

16    PRIORITY OBJECTION 15.1 BEFORE GOING THROUGH THE

17    OTHER OBJECTIONS FOR THE RECORD.

18              THE COURT:  I'M SORRY.  LET ME JUST

19    FIND -- 15.1, WHAT -- OH, OKAY.  WHY DON'T WE TAKE

20    OUR BREAK NOW, AND THEN WHEN WE COME BACK, WE'LL

21    TALK ABOUT 15.1, AND THEN I'LL GIVE EACH SIDE THE

22    OPPORTUNITY TO STATE WHATEVER OTHER OBJECTIONS

23    YOU'D LIKE TO, AND THEN WE'LL TALK ABOUT THE

24    VERDICT FORM.

25              MR. JACOBS:  FINE, YOUR HONOR.  WE'LL
```

1    ALSO HAVE OUR TYPO SUGGESTIONS AT THAT POINT JUST

2    AS WE MARCH THROUGH THE INSTRUCTIONS.

3              THE COURT:  OH, YOU MEAN ON THE VERDICT

4    FORM?

5              MR. JACOBS:  NO, ON THE INSTRUCTIONS.  AS

6    WE MARCH THROUGH THEM, WE'LL POINT OUT ANY TYPOS WE

7    FIND.

8              THE COURT:  OKAY.  15 MINUTE BREAK.

9    THANK YOU.

10             (WHEREUPON, A RECESS WAS TAKEN.)

11             THE COURT:  ALL RIGHT.  LET'S GO AHEAD,

12   PLEASE.

13             WE HAVE A HOUSEKEEPING ISSUE, AND THAT IS

14   WERE YOU ALL PLANNING TO TAKE THE PHONES OFF SITE

15   TO DO THE PHOTOGRAPHING AND THE SIM REMOVAL?

16             MR. JACOBS:  NO.

17             THE COURT:  YOU WANTED TO DO THEM HERE?

18             MR. JACOBS:  YES, PLEASE.

19             THE COURT:  OKAY.  ARE YOU THEN GOING TO

20   JUST DO THEM IN THE COURTROOM WHEN WE'RE DONE?

21             MR. JACOBS:  YES.

22             THE COURT:  OKAY.  MS. PARKER BROWN, IS

23   THAT OKAY?

24             THE CLERK:  I REALLY DON'T WANT TO BE

25   HERE UNTIL 7:00 O'CLOCK AT NIGHT.

```
 1              THE COURT:  I DON'T THINK
 2    MS. PARKER BROWN HAS TO BE HERE, BECAUSE YOU'RE
 3    BOTH GOING TO BE HERE TOGETHER, RIGHT?
 4              MR. JACOBS:  CORRECT.
 5              THE COURT:  IF YOU WANTED TO START NOW,
 6    YOU CAN DO THAT.
 7              THE CLERK:  DO YOU WANT ME TO WHEEL THEM
 8    OUT THEN?
 9              THE COURT:  DO YOU WANT US TO BRING THE
10    PHONES OUT NOW?
11              MR. JACOBS:  PLEASE.
12              THE COURT:  OKAY.  WHY DON'T WE BRING THE
13    PHONES OUT NOW?  WHAT YOU COULD DO IS IF YOU -- DO
14    YOU HAVE THE ABILITY TO CALL MY CHAMBERS?  WE'RE
15    ALWAYS HERE DOWNSTAIRS ON THE FOURTH FLOOR, SO YOU
16    CAN LET US KNOW WHEN YOU'RE DONE.  IT DOESN'T
17    MATTER WHAT TIME IT IS BECAUSE WE'RE HERE, AND THEN
18    WE CAN AT LEAST LOCK THEM UP IN THE CHAMBERS BACK
19    HERE AND THEN YOU DON'T HAVE TO BE HERE AT ALL.
20              THE CLERK:  THAT WOULD BE WONDERFUL.
21              MR. JACOBS:  DO YOU MIND GIVING US THE
22    BEST NUMBER TO USE?
23              THE CLERK:  YEAH, JUST THE 408-535-5357.
24              MR. JACOBS:  THANK YOU, YOUR HONOR.
25              THE COURT:  AND THEN WE'LL COME AND GET
```

1    THEM.

2              THE CLERK:  SHOULD I WHEEL THEM OUT NOW?

3              THE COURT:  YEAH, SURE.

4              THE CLERK:  OKAY.

5              THE COURT:  LET'S GO AHEAD.  THE TIME IS

6    NOW 4:15.  I'M SORRY.  WE DIDN'T DO 15 MINUTES.

7              ALL RIGHT.  GO AHEAD, PLEASE, ON THE

8    SUMMARY JUDGMENT ISSUE WITH REGARD TO THE '460.

9              MR. SELWYN:  THANK YOU, YOUR HONOR.

10             YOUR HONOR, APPLE OBJECTS TO JURY

11   INSTRUCTION 15.1, IN PARTICULAR THE LAST TWO

12   PARAGRAPHS.  IN APPLE'S VIEW, THE INSTRUCTION

13   PROVIDES AN INCORRECT CLAIM CONSTRUCTION AND IS

14   CONTRARY TO THE JULY 29TH ORDER, WHICH IS ALREADY

15   PART OF THE JUROR'S NOTEBOOK.

16             THE COURT CONSIDERED AND RULED ON THE,

17   BEFORE THE TRIAL, ON THE SPECIFIC ISSUE OF WHETHER

18   THE JURY SHOULD BE GIVEN THE INSTRUCTION THAT

19   SAMSUNG NOW SEEKS.

20             AS THE COURT WILL RECALL, THE PARTIES

21   COULDN'T AGREE ON THE CLAIM CONSTRUCTION TO BE

22   INCLUDED IN THE JUROR BINDER WITH RESPECT TO THE

23   '460 PATENT, AND AT THE JULY 27TH PRETRIAL HEARING,

24   THE COURT INSTRUCTED THE PARTIES TO SUBMIT THEIR

25   COMPETING PROPOSALS.

```
 1          THE PARTIES DID THE NEXT DAY.  SAMSUNG

 2   WANTED, BASED ON THE COURT'S JUNE 29TH ORDER, FOR

 3   THE JURY TO BE INSTRUCTED THAT THE STEPS IN THE

 4   '460 PATENT NEED NOT BE PERFORMED IN A PARTICULAR

 5   ORDER.

 6          ON JULY 29TH, THE COURT REJECTED THAT

 7   PROPOSAL AND AGREED VERBATIM WITH APPLE'S PROPOSAL

 8   AND ORDERED THAT THE GLOSSARIES IN THE JURY BINDER

 9   STATE THAT THE COURT HAS NOT CONSTRUED ANY TERMS

10   FROM THIS PATENT AND, THEREFORE, THE TERMS FROM

11   THIS PATENT SHALL BE GIVEN THEIR PLAIN AND ORDINARY

12   MEANING.

13          THAT, WE BELIEVE, IS THE PROPER RULING.

14   THAT IS WHAT IS ALREADY IN THE JURORS' BINDERS, AND

15   APPLE HAS PRESENTED ITS EVIDENCE THROUGHOUT THIS

16   CASE CONSISTENT WITH THE COURT'S JULY 29TH ORDER

17   AND THE CONSTRUCTION FOR THE '460 PATENT THAT IS

18   ALREADY IN THE JURY BINDER.

19          RESPECTFULLY, FOR THE COURT, AFTER THE

20   CLOSE OF EVIDENCE AND WITHOUT A MARKMAN HEARING, TO

21   CHANGE THE CONSTRUCTION THAT IT ISSUED FOR THE '460

22   PATENT JUST A DAY BEFORE THE START OF TRIAL WOULD

23   BE HIGHLY PREJUDICIAL TO APPLE.

24          IN ADDITION, THE TIMING OF THE COURT'S

25   DECISION IS ADDRESSED IN JURY INSTRUCTION 15.1 WE
```

1    BELIEVE WILL DO EXACTLY THE OPPOSITE OF WHAT THE

2    COURT TRIES TO GUARD AGAINST IN JURY INSTRUCTIONS

3    10 AND 15 THAT THE JURY SHOULD NOT INFER FROM THE

4    CLAIM CONSTRUCTION DECISIONS THAT THE COURT FAVORS

5    ONE SIDE OR THE OTHER.

6           IF THE COURT WERE TO DETERMINE NOT TO

7    ALTER 15.1, WE WOULD AT LEAST ASK THE COURT TO

8    ORDER THAT SAMSUNG NOT BE PERMITTED, IN ITS CLOSING

9    ARGUMENT, TO COMMENT ON THE CREDIBILITY OF APPLE'S

10   EXPERT BASED ON THE COURT'S CLAIM CONSTRUCTION OR

11   SUGGEST THAT HE DID NOT FOLLOW THE COURT'S CLAIM

12   CONSTRUCTION OR THAT THE COURT HAS IN ANY WAY

13   REJECTED HIS OPINION BECAUSE THE EVIDENCE --

14           THE COURT:  I SEE WHAT YOU'RE SAYING NOW.

15           BUT YOUR OBJECTION IS MOSTLY TO THE LAST

16   PARAGRAPH.  IS THAT CORRECT?  ARE YOU OKAY WITH THE

17   FIRST THREE?

18           MR. SELWYN:  YES.

19           THE COURT:  OKAY.  I SEE WHAT YOU'RE

20   SAYING NOW.  I WOULD LIKE TO TAKE THIS UNDER

21   SUBMISSION, BUT I'LL PROBABLY TAKE THAT OUT.  BUT I

22   SEE WHAT YOU'RE SAYING.

23           I THOUGHT IT ACTUALLY WOULD BE HELPFUL TO

24   CLARIFY BECAUSE THERE'S BEEN ALL THIS TESTIMONY

25   ABOUT WHETHER THEY ARE, IN FACT, STEPS AND WHAT THE

1    SEQUENCE IS.

2              MR. SELWYN:  SO I THINK BOTH PARTIES --

3              THE COURT:  I THOUGHT IT WOULD BE

4    HELPFUL.

5              MR. SELWYN:  BOTH PARTIES WERE OPERATING

6    UNDER THE JURY INSTRUCTION IN THE BINDER ABOUT WHAT

7    PLAIN MEANING IS.  WE ARGUED ABOUT THAT.

8              NOW FOR THE JURY TO BE GIVEN WHAT IS

9    ESSENTIALLY LAW OR INTERPRETATION OF PLAIN MEANING

10   IS GOING TO UNDERCUT OUR OWN EXPERT AND BE VERY

11   PREJUDICIAL TO OUR CASE.

12             THE COURT:  I HEAR YOU.

13             MR. SELWYN:  THANK YOU.

14             THE COURT:  YOU WANT TO COMMENT ON THAT?

15             MR. JOHNSON:  YES, YOUR HONOR.

16             FIRST OF ALL, THERE ARE A WHOLE LINE OF

17   CASES FROM THE FEDERAL CIRCUIT THAT THE TIMING OF

18   THE CLAIM CONSTRUCTION IS WITHIN THE TRIAL COURT'S

19   DISCRETION, THE SOFAMOR DANEK CASE, 74 F.3D AT

20   1221, THE CYTOLOGICS CASE, 424 F.3D AT 1172, THE

21   VIVID TECHNOLOGIES CASE, 200 F.3D AT 803.

22             THE ISSUE HERE REALLY IS THIS IS -- WE

23   BELIEVE THAT THE JUNE 29TH ORDER, WITH RESPECT TO

24   SUMMARY JUDGMENT, ACTUALLY IS -- AND I STOOD IN

25   FRONT OF YOU AND WE TALKED ABOUT THIS A LITTLE

1    BIT -- IN DENYING THE MOTION FOR SUMMARY JUDGMENT,

2    THE COURT EXPLICITLY ADOPTED SAMSUNG'S CONSTRUCTION

3    WITH RESPECT TO THE '460 PATENT AND SAID, AT PAGE

4    15, THAT IT WAS ADOPTING ITS CONSTRUCTION OF CLAIM

5    1.

6             AND WE RELIED ON THAT AND WE PRESENTED

7    OUR EVIDENCE IN THAT RESPECT.

8             THE JURY BOOK WAS, IN TERMS OF TRYING TO

9    GO THROUGH AND ANALYZE WHAT HAD BEEN CONSTRUED AND

10   WHAT HADN'T BEEN CONSTRUED, I DON'T THINK THAT WAS

11   A FULL ASSESSMENT OF -- YOUR HONOR WAS RULING ON

12   THE CLAIM CONSTRUCTION WITH RESPECT TO WHAT WAS

13   GOING IN THE JURY BOOK AND WHAT WASN'T GOING IN THE

14   JURY BOOK.

15            THE ISSUE IS -- I AGREE WITH YOUR HONOR

16   THAT THE LAST PARAGRAPH OF, OF INSTRUCTION 15.1 IS

17   INFORMATIVE FOR THE JURY.  I THINK IT PROVIDES

18   CONTEXT OF WHAT THIS IS, WHAT THIS IS ABOUT.

19            THE COURT:  UM-HUM.

20            MR. JOHNSON:  I DON'T THINK THERE'S GOING

21   TO BE ANY ATTEMPT TO GET UP HERE AND SAY THAT

22   DR. SRIVASTAVA, YOU KNOW, HIS POSITION WAS

23   REJECTED.

24            WE, INSTEAD WHAT WE WANT TO SAY IS, LIKE

25   WE'VE SAID AND WHICH, YOU KNOW, THE POINTS THAT

```
1    CAME THROUGH IN DR. YANG'S TESTIMONY IS THAT THESE

2    CLAIMS CAN BE PERFORMED IN ANY STEP.

3              AND, YOU KNOW, RATHER THAN A PERSONAL

4    ATTACK ON MR. SRIVASTAVA'S CREDIBILITY OR --

5    INSTEAD, WE WANT TO BE ABLE TO ARGUE THAT THESE

6    STEPS CAN BE PERFORMED IN ANY PARTICULAR ORDER.

7              THIS HAS BEEN RESOLVED AND THERE'S

8    NOTHING, FRANKLY, EVEN DOING IT THE NIGHT BEFORE

9    CLOSING ARGUMENTS.  I MEAN, THAT'S HAPPENED AND

10   THOSE CASES THAT I CITED ACTUALLY DEAL WITH THAT.

11             SO I DON'T THINK THAT EVEN THIS LAST

12   PARAGRAPH IS PREJUDICIAL.  IT'S NOT A PER SE

13   REJECTION OF DR. SRIVASTAVA'S TESTIMONY.

14             INSTEAD, I THINK IT'S -- THIS IS A

15   COMPLICATED CASE.  THEY'RE GOING TO BE LISTENING TO

16   AN INCREDIBLE AMOUNT OF JURY INSTRUCTIONS AND IT'S

17   IMPORTANT TO UNDERSTAND THE METHOD CLAIM THAT'S AT

18   ISSUE HERE, THE STEPS CAN BE PERFORMED OUT OF

19   SEQUENCE.

20             AND I CAN ADDRESS OTHER POINTS WITH

21   RESPECT TO WHY I THINK THE STEPS CAN BE PERFORMED

22   OUT OF SEQUENCE, BUT WE LAID OUT IN OUR BRIEF, AND

23   IN RESPONSE, THAT THE SPECIFICATION SPECIFICALLY

24   TALKS ABOUT -- FIGURE 8 SPECIFICALLY SAID THAT THAT

25   THIRD FUNCTION, THE DISPLAYING, SEQUENTIALLY
```

1    DISPLAYING CAN BE DONE BEFORE THE TRANSMISSION

2    STEP, WHICH SUGGESTS -- WHICH SAYS THAT C CAN BE

3    PERFORMED BEFORE E.

4            AND -- AND SO FROM OUR STANDPOINT, EVEN

5    IF YOU FOLLOW THEIR, APPLE'S CONSTRUCTION THAT SAYS

6    IT HAS TO BE DONE IN A PARTICULAR ORDER, THAT WOULD

7    READ OUT THE VERY SPECIFIC EMBODIMENT THAT'S

8    DESCRIBED PARTICULARLY WITH RESPECT TO FIGURE 8.

9            THE COURT:  UM-HUM.  LET ME ASK A

10   QUESTION FOR MR. SELWYN.

11           YOU KNOW, I'M KIND OF CURIOUS ABOUT THE

12   PREJUDICE ARGUMENT, BECAUSE WHAT WAS INCLUDED AS

13   PARAGRAPH 4 IN INSTRUCTION NUMBER 50.1 IS

14   CONSISTENT WITH WHAT I SAID IN THE SUMMARY JUDGMENT

15   ORDER.

16           SO I DIDN'T BUY APPLE'S POSITION THAT

17   STEPS 1 THROUGH 5 WERE ACTUALLY SEQUENTIALLY

18   REQUIRED SEQUENCED STEPS.

19           ON THE OTHER HAND, I DON'T BUY SAMSUNG'S

20   POSITION THAT YOU CAN DO ANYTHING IN ANY ORDER, AND

21   THAT'S WHY THIS IS SORT OF IN BETWEEN.  IT'S, YOU

22   KNOW, SAYING B HAS TO HAPPEN BEFORE D AND C HAS TO

23   HAPPEN BEFORE E, BUT BEYOND THAT, THERE'S NO

24   REQUIREMENT THAT IT HAS TO HAPPEN IN CERTAIN

25   SEQUENCE.

```
1              MR. JOHNSON:  RIGHT

2              MR. SELWYN:  I DON'T --

3              THE COURT:  SO FOR YOU AT TRIAL TO ARGUE

4    CONTRARY TO WHAT I SAID SOME SEQUENCE WAS REQUIRED

5    IN MY SUMMARY JUDGMENT ORDER, I MEAN, THAT'S THE

6    RISK YOU TOOK, RIGHT, IF I ALREADY SAID THIS WAS

7    THE MINIMUM SEQUENCE THAT WOULD BE REQUIRED?

8              MR. SELWYN:  I DON'T THINK, WITH RESPECT,

9    THAT'S QUITE RIGHT, YOUR HONOR.

10             THE COURT:  OKAY.

11             MR. SELWYN:  IN YOUR SUMMARY JUDGMENT

12   ORDER, IF YOU LOOK BACK AT IT, WHAT YOU FOUND --

13   AND YOU AGREED WITH SAMSUNG THAT THERE ARE AT LEAST

14   THREE CORE FUNCTIONS.  YOU DID NOT RECITE THE

15   SPECIFIC ORDER OF STEPS THAT HAD TO OCCUR OR NOT

16   OCCUR.  THAT WAS NOT AN ISSUE THAT WAS PRESENTED IN

17   SUMMARY JUDGMENT.

18             NOW, THE SAME ARGUMENT THAT WE'RE HAVING

19   NOW WE HAD IN THE CONTEXT OF WHAT SHOULD GO IN THE

20   JURY'S BINDER.  SAMSUNG MADE THE IDENTICAL ARGUMENT

21   IT MAKES HERE THAT THERE SHOULD BE NO REQUIREMENT

22   ABOUT A PARTICULAR ORDER OF STEPS.  WE SAID, LIKE

23   ANY OTHER TERM WHERE THE COURT HAS NOT CONSTRUED

24   IT, THE JURY SHOULD BE TOLD THE PLAIN MEANING.

25             IN THIS CASE THERE HAVE BEEN A LOT OF
```

1    TERMS WHERE THE COURT'S CONSTRUCTION IS PLAIN

2    MEANING, AND EXPERTS HAVE ARGUED ABOUT WHAT THAT

3    PLAIN MEANING IS AND THE JURY IS GOING TO HAVE TO

4    WORK IT ALL OUT.

5            BUT THE INSTRUCTION AS IT'S NOW PHRASED,

6    WITH RESPECT, IS GOING TO BE TOO MUCH OF A THUMB ON

7    SAMSUNG'S EXPERT AND SAMSUNG'S CONSTRUCTION FOR A

8    TERM THAT HAS BEEN CONSTRUED AS PLAIN MEANING.

9            IT WOULD BE THE ONLY TERM IN THIS ENTIRE

10   CASE WHERE THERE IS AN INTERPRETATION GIVEN BY THE

11   COURT OF WHAT PLAIN MEANING SHOULD BE.

12           MR. JOHNSON:  THE DIFFERENCE HERE, AS

13   YOUR HONOR POINTS OUT, WITH RESPECT TO SUMMARY

14   JUDGMENT MOTION, WE WEREN'T STANDING HERE ARGUING

15   THAT IT HAD TO BE PERFORMED IN ANY PARTICULAR ORDER

16   WHATSOEVER.  THERE IS SOME LOGIC TO IT.

17           BUT THEY TOOK THE CHANCE OF ARGUING

18   NON-INFRINGEMENT WITH RESPECT TO PARTICULAR

19   SEQUENTIAL STEPS -- AND THIS IS AN ISSUE OF CLAIM

20   CONSTRUCTION, YOUR HONOR, AND I STOOD BEFORE YOU

21   AND SAID I THOUGHT THIS HAS BEEN RULED ON BACK IN

22   JUNE.

23           THEY TOOK THE CHANCE, THEY ARGUED, THEIR

24   EXPERT GOT UP THERE AND TESTIFIED THAT IT COULD

25   ONLY BE DONE IN THIS PARTICULAR SEQUENCE, AND

```
 1    DR. YANG BASICALLY SAID THE OPPOSITE, THAT IT
 2    DIDN'T NEED TO BE PERFORMED IN THAT ONLY SEQUENCE.
 3            THE COURT:  ALL RIGHT.  LET ME -- I'D
 4    LIKE TO TAKE THIS UNDER SUBMISSION.  SO I'M GOING
 5    TO GIVE YOU A LAST 30 SECONDS, EACH OF YOU, AND
 6    IT'S ALREADY 4:30 ALMOST.  WE NEED TO CONCLUDE
 7    TODAY.
 8            ANYTHING ELSE YOU'D LIKE TO SAY?
 9            MR. JOHNSON:  I'LL LET HIM GO FIRST.
10            MR. SELWYN:  I DON'T HAVE ANYTHING
11    FURTHER TO ADD.
12            THE COURT:  OKAY.  ANYTHING ELSE,
13    MR. JOHNSON?
14            MR. JOHNSON:  NO, YOUR HONOR.
15            THE COURT:  OKAY.  ALL RIGHT.  I THINK
16    THAT'S IT, THEN.
17            WE NEED TO GET THROUGH THE VERDICT FORM,
18    AND THEN I NEED TO GIVE YOU SOME TIME TO LAY YOUR
19    RECORD FOR YOUR OTHER OBJECTIONS.
20            CAN WE DO THE VERDICT FORM?  I'M ASSUMING
21    YOU'VE HAD A CHANCE TO LOOK AT IT NOW.
22            MR. MCELHINNY:  YES, YOUR HONOR, I THINK
23    WE CAN --
24            MS. MAROULIS:  WE CAN START.
25            MR. SELWYN:  BEFORE WE GET TO THAT, THERE
```

1    WERE A FEW, JUST AS SAMSUNG LISTED, WE HAD A FEW

2    HIGH PRIORITY.  YOU WANT TO DO THAT AFTER THE

3    VERDICT FORM?

4              THE COURT:  YEAH.

5              MR. SELWYN:  VERY GOOD.

6              THE COURT:  ALL RIGHT.  TELL ME WHAT YOU

7    HAVE ABOUT THE VERDICT FORM.

8              MR. JACOBS:  I HAVE AN OBJECTION AND A

9    PROPOSAL ON THE MULTI-COLUMN APPROACH.

10             THE COURT:  OKAY.  YES.

11             MR. JACOBS:  THE OBJECTION IS TO BREAKING

12   IT OUT AS I INDICATED EARLIER.  IT OVERCOMPLICATES

13   IT.

14             BUT I THINK -- AND SO THAT WOULD BE OUR

15   OBJECTION.

16             MY PROPOSAL, PARTIALLY TO MITIGATE, IS

17   BASED ON THE FOLLOWING.

18             SEA, SAMSUNG ELECTRONICS AMERICA,

19   DISTRIBUTES ONLY A VERSION OF THE TAB, IT'S THE

20   WI-FI TAB.  STA DISTRIBUTES ALL OF THE CELLULAR

21   PRODUCTS.  IT HAS THE CARRIER RELATIONSHIPS, AND

22   THAT IS IN THE RECORD.  AND SO I THINK WE COULD

23   SIMPLIFY THE COLUMNS --

24             THE COURT:  OKAY.

25             MR. JACOBS:  -- IF WE IDENTIFY SEA AS

1    ASSOCIATED WITH THE WI-FI VERSION OF THE TAB.

2              THE COURT:  THAT'S THE ONLY THING THEY

3    SELL?

4              MR. JACOBS:  I BELIEVE THAT'S THE CASE,

5    YOUR HONOR.

6              THE COURT:  OKAY.  LET ME HEAR FROM

7    MS. MAROULIS.  IS THAT A CHANGE THAT YOU WOULD BE

8    WILLING TO STIPULATE TO?

9              MS. MAROULIS:  YOUR HONOR, IT'S VERY

10   IMPORTANT FOR US TO BREAK OUT BY ENTITY AND WE'RE

11   GLAD THE COURT WENT THROUGH THAT.

12             SO IF MR. JACOBS' PROPOSAL IS MERELY TO

13   BREAK OUT SEA ASSOCIATED WITH THE TAB, THAT'S FINE,

14   BECAUSE TO THE EXTENT HE WANTS TO COLLAPSE ALL THE

15   ENTITIES INTO ONE, WE WOULD DEFINITELY OBJECT TO

16   THAT.

17             IF HE WANTS TO KEEP THE STRUCTURE, BUT

18   PUT IT IN A SEPARATE CHART LIKE WE DO FOR

19   CONCLUSION, THAT WOULD BE ACCEPTABLE.

20             THE COURT:  OKAY.  SO TELL ME, SEA ONLY

21   DOES THE GALAXY --

22             MR. JACOBS:  THE WI-FI.

23             THE COURT:  -- TAB 10.1, JX 1037 WI-FI.

24             WHAT ABOUT THE LTE?

25             MR. JACOBS:  THE LTE --

```
 1              THE COURT:  BECAUSE THAT WAS THE SAME
 2     EXHIBIT NUMBER IS THE PROBLEM.
 3              MS. MAROULIS:  IF IT'S NOT ASSOCIATED
 4     WITH A CARRIER, IT'S BY SEA.  STA DEALS WITH
 5     CARRIERS.
 6              THE COURT:  LTE IS A CARRIER?
 7              MS. MAROULIS:  NO.
 8              MR. JACOBS:  LET ME CHECK ON THE EXHIBIT
 9     NUMBER FOR A MINUTE, YOUR HONOR.
10              THE COURT:  OKAY.
11              MS. MAROULIS:  YES, YOUR HONOR.  THEY'RE
12     WITH SEA.
13              THE COURT:  WAIT.  LTE IS WITH SEA AND
14     NOT STA?
15              MS. MAROULIS:  YES, YOUR HONOR.
16              THE COURT:  OKAY.  SO I COULD BASICALLY
17     MOVE THAT WHOLE ROW OUT, GALAXY TAB 10.1 WI-FI AND
18     LTE, JX 1037?  THAT'S OKAY?
19              MR. JACOBS:  I THINK WHAT I'M --
20              MS. MAROULIS:  I'M SORRY, YOUR HONOR.  I
21     GOT IT WRONG.  SO LTE IS WITH A CARRIER, SO THAT IS
22     STA.
23              MR. JACOBS:  WHAT I'M HEARING, YOUR
24     HONOR, IS 1037 SHOULD JUST BE LISTED AS WI-FI.
25              THE COURT:  OKAY.  THEN WHAT ABOUT LTE?
```

```
 1              MR. JACOBS:  THAT WOULD BE AN STA

 2     PRODUCT.  THAT WOULD BE A 4G CELLULAR PRODUCT.

 3              THE COURT:  WHAT'S THE EXHIBIT NUMBER FOR

 4     THAT ONE?

 5              MR. JACOBS:  THAT'S CORRECT, YOUR HONOR,

 6     1038.

 7              THE COURT:  OKAY.  SO IF WE SAY GALAXY

 8     TAB 10.1 LTE, JX 1038, THAT IS AN STA PRODUCT?

 9              MS. MAROULIS:  CORRECT.

10              THE COURT:  OKAY.  AND THAT IS TRUE,

11     THEN, FOR ALL OF THE GALAXY TAB 10.1 WI-FI'S, JX

12     1037'S IN EVERY SINGLE CHART?

13              MR. JACOBS:  YES, YOUR HONOR.

14              THE COURT:  OKAY.  SO THEN WE CAN TAKE

15     SEA COMPLETELY OUT OF THE CHART.

16              MR. JACOBS:  I THINK YOU CAN DO THAT AND

17     BREAK IT OUT AS A LITTLE SEPARATE BOX.

18              THE COURT:  OKAY.

19              MS. MAROULIS:  AND YOUR HONOR, WHILE

20     WE'RE ON THE SUBJECT OF DIFFERENT ENTITIES, WE OF

21     COURSE OBJECT THAT SEC IS ENGAGED ANY DIRECT

22     ALLEGED INFRINGEMENT, AND FOR THE RECORD, WE ARE

23     PRESERVING THAT OBJECTION AND THAT APPLE DID NOT

24     DISCLOSE THE THEORY OF INDUCEMENT.

25              YOUR HONOR PREVIOUSLY OVERRULED THAT, BUT
```

1848

```
 1   BECAUSE WE'RE AT THE VERDICT STAGE, WE WANTED TO

 2   RAISE THAT AGAIN.

 3           THE COURT:  THAT'S FINE.  THAT'S

 4   PRESERVED FOR APPEAL.

 5           OKAY.  WHAT ELSE?

 6           MS. MAROULIS:  MOVING ON TO OTHER ISSUES,

 7   IF WE'RE STARTING WITH PAGE 2 OF THAT, WITH RESPECT

 8   TO THE '381 PATENT, SAMSUNG REQUESTED THAT IT BE

 9   BROKEN OUT IN SEPARATE APPLICATIONS, CONTACTS,

10   GALLERY, AND BROWSER, AND THAT WAS PART OF OUR

11   ORIGINAL VERDICT FORM WE SUBMITTED, SO WE ASK THE

12   COURT TO CONSIDER PUTTING THAT BACK IN '381.

13           AND THE REASON THAT'S IMPORTANT IS

14   BECAUSE, FOR EXAMPLE, IF ONE VERSION IS FOUND

15   INFRINGED AND ANOTHER ONE IS NOT, IT GOES TOWARD

16   DESIGN AROUND PLANNING, ET CETERA.

17           SO THERE ARE THREE DIFFERENT INFRINGEMENT

18   THEORIES THAT THEY'RE ALLEGING AGAINST DIFFERENT

19   APPLICATIONS AND WE BELIEVE IT'S IMPORTANT TO

20   PRESERVE THE RECORD AS TO THAT.

21           MR. JACOBS:  AND YOU KNOW OUR VIEW ON

22   THIS, YOUR HONOR.  THAT WOULD VASTLY OVERCOMPLICATE

23   THE CLAIM AND THE FORM.  OUR CLAIM IS AGAINST THE

24   PHONES BECAUSE THE PHONES INFRINGE WITH SOFTWARE ON

25   THEM, AND TO HAVE THREE COLUMNS, ONE FOR EACH
```

1    APPLICATION, WOULD REALLY MAKE IT DIFFICULT FOR THE

2    JURY.

3              THE COURT:  RIGHT.  I'M NOT GOING TO DO

4    THAT.

5              OKAY.  WHAT ELSE?

6              MS. MAROULIS:  STILL ON '381, THERE IS A

7    PRODUCT CALLED GEM.  IN THEIR INFRINGEMENT

8    CONTENTIONS, APPLE DID NOT ACCUSE GEM, AND I'M

9    GOING TO HAND TO THE COURT AND COUNSEL APPLE'S

10   INFRINGEMENT CONTENTIONS, EXHIBIT 20, WHERE YOU CAN

11   SEE --

12             MAY I APPROACH, YOUR HONOR?

13             THE COURT:  YES, PLEASE.

14             MS. MAROULIS:  -- GEM WAS LISTED AS N/A

15   WITH RESPECT TO '381.

16             MR. JACOBS:  YOUR HONOR RULED ON PHONES

17   SOME MONTHS AGO NOW AND SAMSUNG DID NOT MOVE ON THE

18   GEM.  SAMSUNG'S EXPERT WROTE A REPORT ON THE GEM

19   EXPLAINING WHY THE GEM DID NOT INFRINGE.

20             SAMSUNG THEN HAD A FURTHER DISCUSSION

21   WITH THE COURT ABOUT THE PHONES ISSUE AND DID NOT

22   RAISE THE GEM.

23             SO NOW WE ARE AT THE END OF TRIAL, THERE

24   WAS NO MOTION ON THE GEM, WE PUT ON OUR PROOF ON

25   THE GEM, IT'S TOO LATE NOW TO SAY IT WASN'T IN THE

1    INFRINGEMENT CONTENTIONS.

2              I WOULD NOTE THAT ONE OF THE PHONES WAS

3    RULED OUT BECAUSE WE FLIPPED THE ORDER OF THE TERMS

4    AND WE DIDN'T COME BACK TO THE COURT ON THAT AND

5    ASK FOR RECONSIDERATION.  IT WAS --

6              THE COURT:  WHICH PHONE WAS THAT?

7              MR. JACOBS:  SHOWCASE.  I THINK WE SAID

8    THE SHOWCASE, THE GALAXY S SHOWCASE, AND IT'S THE

9    SHOWCASE GALAXY S.  THE COURT SAID WE HADN'T PUT IN

10   OUR INFRINGEMENT CONTENTIONS.  WE MOVED ON.

11             NOW FOR SAMSUNG TO COME IN AT THE LAST

12   MINUTE AND SAY, "WE FORGOT TO MOVE ON THIS, BUT

13   IT'S OUT OF THE CASE," THAT'S QUITE UNFAIR.

14             MS. MAROULIS:  WE ACTUALLY MOVED FOR JMOL

15   AND I THINK WE PREVIOUSLY OBJECTED TO THAT, SO THIS

16   IS DEFINITELY NOT THE FIRST TIME THAT COUNSEL IS

17   HEARING ABOUT IT.

18             THE COURT:  WELL, I GUESS WHAT'S

19   CONFUSING TO ME IS IF THESE ARE THE INFRINGEMENT

20   CONTENTIONS, GEM IS ON HERE.

21             MS. MAROULIS:  NOT WITH RESPECT TO '381,

22   YOUR HONOR.  IT SAYS N/A.

23             THE COURT:  OH, I SEE WHAT YOU'RE SAYING.

24   I THINK IT'S UNTIMELY FOR THIS REQUEST.

25             OKAY.  GO AHEAD.  WHAT'S NEXT?

```
1            MS. MAROULIS:  YOUR HONOR, CAN WE SKIP A
2    LITTLE BIT, THERE'S A PRETTY SIMPLE ISSUE, BEFORE
3    WE GET TO DAMAGES, WHICH IS WAIVER, WHICH IS THE
4    VERY LAST PORTION OF THE VERDICT FORM.
5            WAIVER IS AN EQUITABLE ISSUE, AND YOUR
6    HONOR DID NOT ISSUE JURY INSTRUCTIONS ON WAIVER
7    BECAUSE IT IS AN EQUITABLE ISSUE AND SHOULD NOT GO
8    BEFORE THE JURY.  SO WE RESPECTFULLY REQUEST THAT
9    IT BE REMOVED FROM THE VERDICT FORM.
10           THE COURT:  LET ME ASK, AND I APOLOGIZE
11   IF THIS WAS A MISTAKE, BUT THE PRELIMINARY
12   INSTRUCTIONS, WE TALKED ABOUT THE SUMMARY OF
13   CONTENTIONS AND ACTUALLY INCLUDED ANTITRUST, PATENT
14   EXHAUSTION, WAIVER, AND BREACH OF CONTRACT.
15           SO IT WAS IN THAT PRELIMINARY --
16           MS. MAROULIS:  WE'VE ALWAYS MAINTAINED,
17   SAMSUNG HAS ALWAYS MAINTAINED THAT ESTOPPEL AND
18   WAIVER SHOULD NOT BE BEFORE THE JURY, BUT BECAUSE
19   WE WERE NEGOTIATING JURY INSTRUCTIONS.  WE PROPOSED
20   COMPETING LANGUAGE SO THAT IF THE COURT DECIDED IT
21   DOES GO, THERE'S SOMETHING FOR THE JURY TO LOOK AT.
22           BUT THE COURT IS NOT SENDING THIS ISSUE
23   TO THE JURY, SO IT WOULD NOT BE USEFUL TO HAVE THIS
24   IN THE JURY VERDICT FORM.
25           MR. SELWYN:  YOUR HONOR, IT WAS IN THE
```

```
 1      PRELIMINARY JURY INSTRUCTIONS, YOU'RE QUITE RIGHT.

 2              IN THE BROADCOM CASE, WHICH IS BASED ON

 3      SIMILAR STANDARD SETTING AS THIS ONE, THE COURT

 4      ALSO SOUGHT AN ADVISORY VERDICT ON THE WAIVER

 5      ISSUE.

 6              WE BELIEVE, CONSISTENT WITH THE

 7      PRELIMINARY INSTRUCTIONS, IT SHOULD GO TO THE JURY.

 8              THE COURT:  YOU KNOW, I ACTUALLY DON'T

 9      WANT ANY ADVISORY VERDICTS.

10              AND I RECOGNIZE I DID INCLUDE IT IN THE

11      PRELIMINARY.  I DON'T HAVE A WAIVER INSTRUCTION IN

12      THIS FINAL SET.

13              I THINK I'M GOING TO TAKE IT OUT.  OKAY?

14              MS. MAROULIS:  THANK YOU, YOUR HONOR.

15              THE COURT:  ALL RIGHT.  WHAT ELSE?

16              MS. MAROULIS:  RETURNING BACK TO THE

17      BEGINNING OF THE FORM, AGAIN, BECAUSE WE'RE LODGING

18      OUR OBJECTIONS, WE PROPOSE TO INCLUDE VERSION,

19      ANDROID VERSION ON DIFFERENT PHONES THAT ACTUALLY

20      ARE IN THE CASE.  WE SEE THAT IT'S NOT IN THERE AND

21      WE RESPECTFULLY REQUEST THAT IT BE INCLUDED.

22              THE COURT:  OKAY.  THAT'S DENIED.

23              WHAT'S NEXT?

24              MS. MAROULIS:  WE'RE MOVING ON TO THE

25      DAMAGES SECTION, AND WITH RESPECT TO DAMAGES, AS
```

1    YOUR HONOR NOTED, IT'S A COMPLICATED ISSUE, AND ONE

2    THING THAT WE NEED TO ADD TO THE EXISTING DAMAGES

3    CHART -- AND I WAS TRYING TO SCRATCH IT OUT BUT

4    DIDN'T HAVE A CHANCE TO FULLY FIGURE OUT HOW TO DO

5    IT -- BUT THERE ARE THREE DIFFERENT THEORIES ON

6    WHICH APPLE IS SEEKING DAMAGES, AND SAMSUNG

7    INDICATED IN ITS PRETRIAL SUBMISSIONS AND ITS JMOLS

8    THAT THERE ARE INFIRMITIES WITH EACH OF THEM.

9         FOR IT TO BE PROPERLY REVIEWED, TO THE

10   EXTENT THERE'S A REVIEW OF THESE, WE NEED TO

11   IDENTIFY WHICH DAMAGES THEORIES APPLE IS SEEKING

12   DAMAGES ON AND WHAT THE JURORS WOULD AWARD, IF

13   ANYTHING.

14        SO ONE WAY TO DO IT WOULD BE TO ADD

15   COLUMNS TO THE EXISTING CHART, WHICH IS REASONABLE

16   ROYALTY PROFITS AND LOST PROFITS; OR POTENTIAL

17   ALTERNATIVE, WHAT WE SUGGEST IN OUR VERDICT FORM IS

18   TO ASK AN INTERROGATORY, WHICH IS "OF THE NUMBER

19   THAT YOU GAVE, WHAT IS THE BREAKDOWN BETWEEN THE

20   THREE DIFFERENT THEORIES?" TO HAVE THAT IN THE

21   RECORD AND TO UNDERSTAND WHAT THE JURY DID.

22        THE SECOND ISSUE WITH THIS IS THAT IT

23   DOESN'T TIE PRODUCTS TO THE PATENT.  THERE ARE SOME

24   PRODUCTS ON WHICH APPLE IS SEEKING MULTIPLE

25   THEORIES AND MULTIPLE PATENTS AND ACCUSING THEM OF

```
 1    DIFFERENT I.P.

 2              SO IDEALLY WE'D LIKE TO HAVE A CHART OR

 3    SOME FORM THAT ADDRESSES ALL OF THESE ISSUES SO THE

 4    RECORD IS CLEAR.

 5              AND WE IDENTIFIED ISSUES THAT WE HAVE

 6    WITH IT, BUT HAVE NOT YET PROPOSED A SOLUTION.

 7    THIS IS ONE PLACE WHERE POTENTIALLY IF WE CAN HAVE

 8    A FEW HOURS TO BRAINSTORM AND SUGGEST SOMETHING TO

 9    THE COURT, IT MIGHT BE USEFUL.

10              THE COURT:  I DON'T WANT A MATRIX THAT'S

11    SO COMPLICATED.  TO HAVE SEVEN PATENTS AND FOUR

12    TRADE DRESSES BROKEN DOWN BY THIS MANY NUMBER OF

13    PRODUCTS I THINK WOULD BE OVERCOMPLICATED.

14              MS. MAROULIS:  WE DO NEED TO INDICATE

15    BOTH WHICH ENTITY THE DAMAGES ARE BEING SOUGHT FROM

16    AND WHICH THEORY OF DAMAGES IS BEING RELIED ON,

17    BECAUSE THEY ALL HAVE DIFFERENT LEGAL FRAMEWORK,

18    AND TO THE EXTENT THAT THE JURY GETS IT WRONG OR

19    DOES NOT APPLY THE CORRECT THEORY OR WHERE WE

20    BELIEVE THE THEORY HAS NOT BEEN SUFFICIENTLY

21    PROVEN, WE NEED THAT RECORD.

22              THE COURT:  WELL, WOULDN'T THAT BE

23    REFLECTED IN THE EARLIER PAGES?  BECAUSE THE

24    EARLIER PAGES ARE REQUIRING REQUIREMENTS BY

25    PRODUCT, BY PATENT, BY DEFENDANT.
```

1855

```
 1              SO I'M HOPING THAT THE FIRST 17 PAGES,

 2     FROM THE FIRST 17 PAGES AND THE FINAL NUMBER, IF

 3     THE JURY PICKS A NUMBER, THAT YOU CAN SORT OF WORK

 4     BACKWARDS AND FIGURE OUT WHICH I.P. WAS ACTUALLY

 5     FOUND VALID AND INFRINGED, WHICH PRODUCT, WHICH

 6     ENTITY.

 7              MR. JACOBS:  THIS IS A MATTER OF FINDING

 8     A HAPPY MEDIUM, YOUR HONOR, AND OVER DETAIL GIVES

 9     RISE TO CLAIMS OF ERROR, TOO, BECAUSE IF THE JURY

10     DOES THINGS AT A VERY GRANULAR LEVEL THAT PRESENT

11     INCONSISTENCIES, THEN IT JUMPS OUT.

12              AND WE THINK THIS IS TOO SPECIFIC.  WE

13     OBJECT TO THIS LEVEL OF SPECIFICITY IN QUESTION 25,

14     FOR EXAMPLE.

15              BUT TO GO ANY DEEPER WOULD REALLY PRESENT

16     VERY SERIOUS PROBLEMS.

17              MS. MAROULIS:  YOUR HONOR, TO ILLUSTRATE

18     AN ISSUE THAT WE MIGHT HAVE IF WE DON'T IDENTIFY

19     THE THEORIES, FOR EXAMPLE, PROFITS ARE NOT

20     APPROPRIATE FOR UTILITY PATENTS.  IF THE JURY IS TO

21     INCLUDE PROFITS IN THE UTILITY PATENT

22     DETERMINATION, THAT IS NOT PROPER.

23              THE COURT:  UM-HUM.

24              MR. JACOBS:  THE JURY WILL GIVE US

25     AMOUNTS, AND THAT'S ALL THAT WE SHOULD ASK THEM TO
```

1    DO.

2              THE COURT:  AS YOU MIGHT IMAGINE, THIS

3    WAS THE PAGE THAT TOOK THE MOST TIME TO FIGURE OUT.

4              MS. MAROULIS:  YES.

5              THE COURT:  AND IT IS COMPLICATED.

6              BUT OVERALL, I THINK THAT THIS MAY BE THE

7    BEST WAY TO DO IT, ASSUMING THAT THE JURY IS GOING

8    TO FOLLOW THE JURY INSTRUCTIONS AND NOT DO ANYTHING

9    INAPPROPRIATE IN AWARDING IMPROPER DAMAGES FOR ANY

10   PARTICULAR CLAIM AND NOT GIVING DOUBLE RECOVERY.

11             MR. JACOBS:  YOUR HONOR --

12             MS. MAROULIS:  WOULD YOUR HONOR CONSIDER

13   INCLUDING FORMER QUESTION 23 FROM THE SAMSUNG FORM,

14   WHICH IS -- SAY, "IF YOU FIND ANY DAMAGES, CAN YOU

15   SEPARATE IT BY ENTITY?"  IT'S A YES OR NO QUESTION.

16             MR. JACOBS:  AND THE PROBLEM THERE IS

17   THAT MR. WAGNER, FROM THE ACCOUNTING PERSPECTIVE,

18   TESTIFIED THERE REALLY WAS NO BASIS TO DO THAT.

19             MS. MAROULIS:  YOUR HONOR, WE'RE NOT

20   GOING TO ARGUE ABOUT THE TESTIMONY HERE.

21   MR. WAGNER PROVIDED A ROADMAP FOR THE JURY.

22             BUT THE POINT IS THAT IF YOU CAN'T FIND

23   DAMAGES ATTRIBUTABLE JUST TO ONE SINGLE ENTITY, IF

24   YOU ASSUME THREE DIFFERENT DEFENDANTS, THAT

25   DEFENDANTS HAVE AN OPPORTUNITY TO KNOW WHAT DAMAGES

```
 1    ARE AWARDED AGAINST THEM.

 2            MR. JACOBS:  NO PREJUDICE HERE, YOUR

 3    HONOR.  IT'S A CONSOLIDATED ENTITY, CONSOLIDATED

 4    BALANCE SHEETS, CONSOLIDATED FINANCIALS, CONTROLLED

 5    BY SAMSUNG ELECTRONICS FOR BOTH ENTITIES, VERY

 6    CLOSE CONTROL.  THAT WAS TESTIFIED TO.

 7            THE COURT:  WELL, I'M ALSO HOPING THAT

 8    PAGES 1 THROUGH 17 WILL ALSO HELP IN INFORMING AS

 9    WELL, BECAUSE IT COULD BE THAT THE JURY FINDS ONE

10    OR MORE OF THESE ENTITIES NOT LIABLE AT ALL BASED

11    ON THE EVIDENCE, WHICH WAS REALLY GEARED MORE

12    TOWARDS SEC ANYWAY.

13            LET ME ASK YOU, WITH REGARD TO HOW I

14    SHOULD HANDLE THE TRADE DRESS CLAIMS AGAINST THE

15    TABLETS, I GUESS I SHOULD THEN JUST DIVIDE UP --

16            MS. MAROULIS:  YES, YOUR HONOR, THAT WAS

17    ONE OF THE ISSUES THAT WE NOTED IN QUESTION 19.

18            THERE WAS A TAB TRADE DRESS THAT REALLY

19    PROBABLY SHOULDN'T BE THERE BECAUSE YOU'RE ALREADY

20    ASKING QUESTION 18 OF THE TAB TRADE DRESS.

21            MR. JACOBS:  AND THEN WHAT YOUR HONOR

22    COULD --

23            THE COURT:  ALTHOUGH 18 IS DILUTION AND

24    21 AND 22 ARE INFRINGEMENT.  THAT'S WHY IT'S BROKEN

25    OUT DIFFERENTLY.
```

```
 1              MS. MAROULIS:  19 IS FOR DILUTION.
 2              MR. JACOBS:  BUT I DO THINK IF WE DO AN
 3    18 STYLE BREAKOUT --
 4              THE COURT:  NO, 19 IS INDUCEMENT.  SO THE
 5    WAY IT'S WORKED OUT IS ON PAGE 10, 12 AND 13 ARE
 6    GOING TO, IS THIS PROTECTABLE?  AND THEN 14 SAYS IS
 7    THIS FAMOUS?
 8              AND THEN 15 SAYS, "IF YOU FIND IT
 9    PROTECTABLE AND FAMOUS, THEN HAS THERE BEEN
10    DILUTION OF THE REGISTERED PHONE DRESS?"
11              AND THEN THE NEXT QUESTION IS, "HAS THERE
12    BEEN DILUTION OF THE UNREGISTERED IPHONE 3 DRESS?"
13              AND THEN THE NEXT QUESTION IS, "HAS THERE
14    BEEN DILUTION OF THE UNREGISTERED COMBINATION PHONE
15    DRESS?"  AND THEN IT GOES TO THE PATENT.
16              AND THEN AFTER THAT, WE GO TO INDUCEMENT
17    AND WILLFULNESS AND THEN TRADE DRESS AND
18    INFRINGEMENT.  SO THAT'S HOW IT'S ORGANIZED.
19              MR. JACOBS:  UNDERSTOOD.
20              THE COURT:  I'LL FIGURE OUT SOME WAY TO
21    SPLIT UP THESE TABS.
22              MR. JACOBS:  I THINK IF YOU SPLIT OUT THE
23    TABS, YOU CAN MAKE THE REST OF THE CHART TWO
24    COLUMNS AND HAVE TWO COLUMNS FOR THE TABS, OR THREE
25    COLUMNS WITH A SHADED BOX FOR THE TABS.
```

1          A COUPLE OF THINGS ON OUR END, YOUR

2     HONOR.

3          MS. MAROULIS:  I'M NOT DONE.

4          WITH RESPECT TO TRADE DRESS, THERE WERE A

5     COUPLE OF PREDICATE QUESTIONS WE INCLUDED IN THE

6     VERDICT FORM AS TO DAMAGES.  WE BELIEVE THEY'RE

7     APPROPRIATE.

8          FOR EXAMPLE, YOU HAVE TO SHOW ACTUAL HARM

9     FOR THE SPECIFIC TRADE DRESS DAMAGES, AND THAT WAS

10    FORMER QUESTION 17 ON OUR FORM.

11         AND SIMILARITY, YOU NEED TO SHOW ACTUAL

12    CONFUSION WITH INTENT TO DECEIVE.  AGAIN, THIS IS A

13    PREDICATE FOR DILUTION DAMAGES.

14         SO WE RESPECTFULLY REQUEST THAT THEY BE

15    PUT BACK IF POSSIBLE, RECOGNIZING THAT THE FORM

16    IS -- HAS TO HAVE SOME LIMITATIONS, BUT BECAUSE

17    THOSE ARE PREDICATE FOR DAMAGES, WE THINK IT'S

18    NECESSARY FOR TRADE DRESS.

19         THE COURT:  I'M GOING TO ASSUME A JURY IS

20    GOING TO FOLLOW JURY INSTRUCTIONS AND MAKE THE

21    REQUIRED FINDINGS BEFORE THEY MAKE ANY LIABILITY

22    DETERMINATION IN AWARDING DAMAGES.  OKAY?

23         MS. MAROULIS:  AND FINALLY, YOUR HONOR,

24    WITH RESPECT TO TRADE DRESS INDUCEMENT, SAMSUNG

25    BELIEVES THAT THERE'S NO SUCH THEORY UNDER NINTH

```
 1    CIRCUIT LAW, AND IT'S NOT SOMETHING THAT SIMPLY

 2    EXISTS BASICALLY IN EITHER THE NINTH CIRCUIT OR

 3    SECOND CIRCUIT, WHICH IS THE CLOSEST LAW ON THE

 4    POINT, AND WE BELIEVE IT SHOULD NOT BE PART OF THE

 5    VERDICT FORM.

 6              AND I CAN CITE THE CASES FOR THE COURT.

 7    IT'S LOCKHEED MARTIN VERSUS NETWORK SOLUTION, 194

 8    F.3D 980, NINTH CIRCUIT FROM 1999, AND THE TIFFANY

 9    VERSUS EBAY CASE IN THE SOUTHERN DISTRICT OF

10    NEW YORK.

11              THE COURT:  OKAY.  I ASSUME YOU DISAGREE

12    WITH THAT, MR. JACOBS.

13              MR. JACOBS:  JUST A MINUTE, YOUR HONOR.

14              (PAUSE IN PROCEEDINGS.)

15              MR. JACOBS:  WE DON'T HAVE AN INDUCEMENT

16    CLAIM ON TRADE DRESS, YOUR HONOR.

17              THE COURT:  OKAY.  SO THAT WILL ELIMINATE

18    19.  THAT WILL --

19              MR. JACOBS:  I BELIEVE THAT'S RIGHT.

20              THE COURT:  THAT WILL ELIMINATE --

21              MS. TUCHER:  22.

22              THE COURT:  THAT WILL ELIMINATE -- NO, 23

23    IS WILLFULNESS.

24              BUT, YES, 22 IS ALSO INDUCEMENT.  SO THAT

25    GOES OUT.
```

1          WHAT ELSE?  I THINK THERE WERE ONLY TWO

2    INDUCEMENT FOR TRADE DRESS.

3          OKAY.  THAT'S GOOD.  THAT'LL SHORTEN

4    THIS.  WHAT ELSE?

5          MS. MAROULIS:  YES, YOUR HONOR.  AND

6    AGAIN, I THINK THE COURT'S GOING TO DENY THIS

7    BECAUSE IT HAS BEFORE, BUT WE REQUEST THAT THE

8    ACTUAL NOTICE AND INTERROGATORY ABOUT PRACTICING

9    THE PATENTS BY APPLE BE INCLUDED IN THE VERDICT.

10         THE COURT:  OKAY.  THAT'S DENIED.

11         WHAT ELSE?

12         MR. JACOBS:  JUST A COUPLE OF ADDITIONAL

13    POINTS ON OUR END.

14         ON THE THEORY THAT THE JURY WILL APPLY

15    THE INSTRUCTIONS, WE THINK THAT A SEPARATE

16    QUESTION, AS IN QUESTION 14, ABOUT FAME COULD BE

17    DISPENSED WITH.  THE JURY HAS TO GET PAST FAME IN

18    ORDER TO FIND DILUTION, AND THERE'S A GOOD

19    INSTRUCTION ON FAME.  SO WE THINK THE FORM COULD BE

20    SHORTENED BY ELIMINATING THAT.

21         MS. MAROULIS:  YOUR HONOR, WE DISAGREE.

22    THAT'S A PREDICATE FOR A FINDING OF THIS CLAIM, SO

23    THAT NEEDS TO STAY.

24         THE COURT:  OKAY.  THAT'LL STAY IN.

25         OKAY.  WHAT ELSE?  WAIT, DO WE HAVE --

862

```
 1    I'M SORRY TO INTERRUPT YOU.  IS THERE A TRADE DRESS

 2    INDUCEMENT JURY INSTRUCTION IN THE JURY

 3    INSTRUCTIONS?

 4              MR. JACOBS:  NO.

 5              THE COURT:  THAT NEEDS TO BE REMOVED IF

 6    THERE IS ONE.

 7              MR. JACOBS:  THERE IS NOT ONE, YOUR

 8    HONOR.

 9              THE COURT:  ALL RIGHT.  THANK YOU.

10              MR. JACOBS:  AND THEN ON THE STANDARD FOR

11    WILLFULNESS RELATING TO DILUTION IN QUESTION 20 --

12              THE COURT:  OKAY.

13              MR. JACOBS:  -- FOR DILUTION, THE

14    STANDARD FOR WILLFULNESS IS A PREPONDERANCE OF THE

15    EVIDENCE.

16              THE COURT:  OH, I THINK YOU'RE RIGHT, AND

17    THAT'S WHAT WE HAVE IN OUR JURY INSTRUCTIONS.

18              MR. JACOBS:  EXACTLY.

19              THE COURT:  OKAY.

20              MR. JACOBS:  AND THAT IS ALSO TRUE FOR

21    23.

22              THE COURT:  OKAY.

23              MR. JACOBS:  AND THEN I'M CATCHING --

24    THERE ARE A FEW -- I THINK, IF YOU WOULDN'T MIND,

25    YOUR HONOR, WE CAN CATCH SOME TYPOS AND FILE THEM,
```

```
 1    THAT WOULD BE THE MOST EFFICIENT WAY.

 2              THE COURT:  THAT'S FINE.  YOU CAN FILE

 3    THEM LATER.  I JUST WANTED TO GET ANY KIND OF BIG

 4    ERRORS, WHICH YOU'VE ALREADY IDENTIFIED SOME.

 5              MR. JACOBS:  I THINK MR. SELWYN HAS SOME

 6    MORE.

 7              THE COURT:  OKAY.

 8              MR. SELWYN:  JUST ONE, YOUR HONOR, WITH

 9    RESPECT TO NUMBER 26 ON SAMSUNG'S UTILITY PATENT

10    CLAIMS AGAINST APPLE.  IF YOUR HONOR IS INCLINED TO

11    ALLOW D.O.E. FOR THE '460 PATENT TO GO TO THE JURY,

12    THEN I THINK WE NEED TO BREAK OUT LITERAL AND

13    D.O.E. SEPARATELY ON THE COLUMN FOR THE '460

14    PATENT.

15              AS YOUR HONOR MAY RECALL FROM THE

16    EVIDENCE, THE IPOD TOUCH, THE IPHONE 3GS, THE

17    IPHONE 4 RUN IOS 4 AND IOS 5.  THE CLAIM AGAINST

18    IOS 4 IS LITERAL.  THE CLAIM AGAINST IOS 5 IS

19    D.O.E.

20              FOR THE IPAD 2, THE CLAIM IS ONLY --

21              THE COURT:  OKAY.  I'M SORRY.  LET ME

22    WRITE THIS DOWN.  SO I WILL SPLIT UP THE '460 CLAIM

23    1 COLUMN, AND I'LL HAVE ONE BE CLAIM 1 LITERAL, AND

24    THE OTHER ONE BE CLAIM 1 --

25              MR. SELWYN:  D.O.E.
```

```
 1                    THE COURT:  OKAY.

 2                    MR. SELWYN:  AND I THINK IT WOULD HAVE TO

 3       BE FURTHER BROKEN DOWN BY IOS 4 AND IOS 5 BECAUSE

 4       THE CLAIM AGAINST IOS 4 IS LITERAL AND THE CLAIM

 5       AGAINST IOS 5 IS D.O.E.

 6                    AND I'M NOT TRYING TO INTRODUCE MORE

 7       COMPLEXITY INTO AN ALREADY COMPLEX FORM, BUT THE

 8       IPAD 2, THE ACCUSATION IS ONLY D.O.E. BECAUSE IT

 9       DID NOT HAVE -- IT HAS NEVER HAD ARROW BUTTONS,

10       EVEN IN IOS 4.

11                    AND FOR THE IPHONE 3G, THAT IS ONLY RUN

12       ON IOS 4, NOT ON IOS 5, SO THE CLAIM FOR THE IPHONE

13       3G IS ONLY LITERAL.

14                    THE CLAIM FOR THE IPOD TOUCH, THE 3GS,

15       AND THE 4 IS BOTH LITERAL AND D.O.E.

16                    THE COURT:  OKAY.  WAIT A MINUTE.  ARE

17       THE APPLE ACCUSED PRODUCTS CORRECT?  IPHONE 3G,

18       IPHONE 3GS, IPHONE 4, IPAD 2 3G, AND IPOD TOUCH

19       FOURTH GENERATION, ARE THOSE RIGHT?

20                    MR. SELWYN:  YES.

21                    THE COURT:  OKAY.  SO FOR IPHONE 3G IT'S

22       GOING TO BE LITERAL ONLY AND WE WILL BLACK OUT THE

23       CLAIM 1, D.O.E. BOX.

24                    IPHONE 3G, WHAT SHOULD BE THAT BE?

25                    MR. SELWYN:  IT SHOULD BE BOTH, AS I
```

1    UNDERSTAND THE IT.

2              THE COURT:  OKAY.  WHAT ABOUT IPHONE 4?

3    BOTH?

4              MR. SELWYN:  IPHONE 4 SHOULD BE BOTH.

5              THE COURT:  OKAY.

6              MR. SELWYN:  BECAUSE IT RUNS IOS 4 AND

7    IOS 5.

8              THE COURT:  I'M SORRY.

9              MR. SELWYN:  DEPENDING ON WHETHER IT RUNS

10   IOS 4 OR IOS 5.

11             MR. JOHNSON:  AND THIS IS THE ANDROID

12   VERSIONS.  NOW WE'RE GETTING INTO SOFTWARE VERSIONS

13   THAT ARE RUNNING ON THESE DEVICES.

14             THE COURT:  YEAH, I'M NOT GOING TO BREAK

15   IT UP BY IOS.  SO I'LL SAY LITERAL FOR IPHONE 3G,

16   BOTH LITERAL AND D.O.E. FOR IPHONE 3GS AND IPHONE

17   4.  IT WILL BE ONLY D.O.E. FOR IPAD 2, IPAD 23G.

18             MR. SELWYN:  CORRECT.

19             THE COURT:  AND THEN FOR IPOD TOUCH,

20   FOURTH GENERATION, IT'S BOTH?

21             MR. SELWYN:  CORRECT.

22             MR. JOHNSON:  I NEED TO CHECK ON THE

23   IPAD 2.  IF I CAN JUST HAVE A MINUTE?

24             THE COURT:  OKAY.  ALL RIGHT.  WHAT ELSE?

25   WHAT OTHER -- WHAT OTHER KIND OF SUBSTANTIVE

```
1    CHANGES?

2              MS. MAROULIS:  YOUR HONOR, I CHECKED WITH

3    MR. ZELLER AND WE OBJECT TO THE CHANGE IN THE

4    STANDARD FOR DILUTION.  WE BELIEVE IT'S ACTUALLY

5    CLEAR AND CONVINCING AND THERE ARE CASES TO THAT

6    EFFECT THAT WE'LL BE HAPPY TO SUBMIT TO THE COURT.

7              THE COURT:  THAT WAS FULLY BRIEFED IN THE

8    DISPUTED INSTRUCTIONS, AND I DISAGREE.  I THINK IT

9    IS PREPONDERANCE OF THE EVIDENCE.

10             MS. MAROULIS:  AND THEN FINALLY, YOUR

11   HONOR, THIS MORNING THE COURT REQUESTED THE PARTIES

12   TO SUBMIT THEIR DAMAGES CHARTS AND SAMSUNG

13   SUBMITTED A PROPOSED DAMAGES CHART, SO WE'D JUST

14   ASK THAT THAT CHART BE INCLUDED AS PART OF THE JURY

15   INTERROGATORIES, EITHER AS QUESTION 31 OR BEFORE

16   THAT BECAUSE THAT'S BASICALLY A CLEAR STATEMENT OF

17   OUR REQUESTED DAMAGES.

18             THE COURT:  YOU DON'T LIKE IT BROKEN DOWN

19   JUST BY IPHONE 3G, IPHONE 3GS --

20             MS. MAROULIS:  OUR DAMAGES MODEL IS MUCH

21   SIMPLER THAN APPLE'S, SO IT WOULD BE EASIER FOR THE

22   JURY TO GO WITH THE CHART THAT WE PROVIDED.  IT HAS

23   THREE OR FOUR ROWS.

24             THE COURT:  I SEE.  YOU JUST HAD

25   REASONABLE ROYALTY BY PATENT NUMBER.
```

```
 1                MS. MAROULIS:  EXACTLY.

 2                THE COURT:  AND THEN YOU GROUPED TOGETHER

 3      THE '516 AND THE '941.

 4                NO, I'M GOING TO HAVE SYMMETRY HERE.  IF

 5      THE JURY IS HAVING TO FIGURE OUT WHAT THE DAMAGES

 6      TO APPLE ARE BY ALL OF THE ACCUSED PRODUCTS, IT'S

 7      GOING TO BE THE SAME FOR SAMSUNG.  OKAY?

 8                ALL RIGHT.  WHAT ELSE?  ANYTHING ELSE?

 9      OTHERWISE WE'LL -- OKAY.  GOOD.  GOOD.

10                OKAY.  SO CAN I -- HOW MUCH TIME DO YOU

11      NEED TO MAKE YOUR RECORD ON YOUR NON-HIGH PRIORITY

12      OBJECTIONS TO THE JURY INSTRUCTIONS?

13                MR. JACOBS:  I THINK ABOUT 20 MINUTES,

14      YOUR HONOR.

15                THE COURT:  20 MINUTES.  OKAY.  AND I'M

16      NOT GOING TO ASK A PEEP, BECAUSE I WANT THIS TO

17      ROLL.

18                MR. JACOBS:  PLEASE ASK, YOUR HONOR, IF I

19      SAY SOMETHING THAT STRIKES YOU AS HELPFUL.

20                THE COURT:  NOW, YOU'VE ACTUALLY ALMOST

21      EXCEEDED YOUR TIME, BUT I WILL SAY THAT ON THE

22      APPLE ISSUES, THERE WAS ALMOST EQUAL ARGUMENT BY

23      BOTH SIDES.

24                YOU KNOW WHAT?  I'M JUST GOING TO GIVE

25      YOU BOTH 20 MINUTES.  IS THAT ALL RIGHT?  WILL THAT
```

1868

```
 1    BE SUFFICIENT?

 2              MR. ZELLER:  I THINK WE CAN COVER IT IN

 3    20 MINUTES, YOUR HONOR.

 4              THE COURT:  ALL RIGHT.  I'LL GIVE YOU

 5    EACH 20 MINUTES.

 6              GO AHEAD.  IT'S 4:51.  GO FOR IT.

 7              MR. SELWYN:  YOUR HONOR, BEGINNING AT

 8    INSTRUCTION 8, THE SUMMARY OF CONTENTIONS, I

 9    BELIEVE THE EXHAUSTION DEFENSE HAS BEEN OMITTED

10    FROM THAT.

11              WE HAD INADVERTENTLY OMITTED IT FROM WHAT

12    WE SUBMITTED.  WE WOULD SUGGEST THAT AFTER THE

13    WORDS "FOR THE '516 AND '941 PATENTS," YOUR HONOR

14    ADD "EXHAUSTED DUE TO SAMSUNG'S LICENSE TO INTEL

15    COVERING THESE PATENTS, AS WELL AS," AND THEN PICK

16    UP WITH THE WORD "UNENFORCEABLE," AND THEN TO ADD

17    THE WORD "EXHAUSTION" AFTER "INVALIDITY" IN THE

18    FOLLOWING SENTENCE.

19              THE COURT:  OKAY.  WHAT WAS -- YOU SAID

20    ARE INVALID, AND FOR THE '516 AND '941 PATENTS,

21    EXHAUSTED DUE TO --

22              MR. SELWYN:  SAMSUNG'S LICENSE TO INTEL

23    COVERING THESE PATENTS --

24              MS. MAROULIS:  WHAT IS THE JURY

25    INSTRUCTION NUMBER YOU'RE READING FROM?
```

1          MR. SELWYN:  8.

2          THE COURT:  I'M NOT GOING TO GO INTO THAT

3     MUCH DETAIL.

4          COMMA, AND ALSO UNENFORCEABLE?

5          MR. SELWYN:  YES, AND THEN TO ADD THE

6     WORD "EXHAUSTION" AFTER THE WORD "INVALIDITY" IN

7     THE NEXT SENTENCE.

8          THE COURT:  OKAY.

9          MR. SELWYN:  OUR NEXT OBJECTION IS WITH

10    RESPECT TO 14, WHICH, AS WE BRIEFED, IS A HIGH

11    PRIORITY OBJECTION.

12         THE COURT:  OKAY.

13         MR. SELWYN:  15.1, WE HAVE ALREADY

14    ADDRESSED AS A HIGH PRIORITY OBJECTION.

15         THE COURT:  ALL RIGHT.

16         MR. SELWYN:  WITH RESPECT TO 29 --

17         MR. JACOBS:  LET ME -- BEFORE YOU GET TO

18    29, LET ME CHECK.

19         THE COURT:  OKAY.

20         MR. JACOBS:  17, YOUR HONOR, WE BELIEVE

21    THERE'S NO REASON FOR 17.  THERE WAS NO EVIDENCE

22    ADDUCED OF A LACK OF WRITTEN DESCRIPTION.

23         THE COURT:  ALL RIGHT.  THAT'S GOING

24    TO -- OKAY.  THAT'S GOING TO STAY IN.

25         GO AHEAD.

 1                MR. JACOBS:  WE'VE ALREADY TAKEN CARE OF

 2     19 WHERE WE TOOK OUT THE LANGUAGE AT THE BOTTOM ON

 3     THE PROVISIONAL APPLICATION, SO THAT'S DEALT WITH.

 4                ON 25 --

 5                THE COURT:  CAN I ASK YOU A QUICK

 6     QUESTION?

 7                MR. JACOBS:  UM-HUM.

 8                THE COURT:  WHERE DO YOU WANT THE

 9     GEORGIA PACIFIC FACTORS IN INSTRUCTION NUMBER 29?

10     DO YOU WANT ME TO JUST PUT THEM BEFORE OR EVEN AT

11     THE END OF THE CURRENT INSTRUCTION, WHICH JUST SAYS

12     "IT IS UP TO YOU, BASED ON THE EVIDENCE, TO DECIDE

13     WHAT TYPE OF ROYALTY IS APPROPRIATE IN THIS CASE,"

14     OR RIGHT BEFORE THAT?  MAYBE RIGHT BEFORE THEN,

15     JUST PUT IN THE GEORGIA PACIFIC FACTORS.

16                MR. JACOBS:  RIGHT, RIGHT BEFORE "IT IS

17     UP TO YOU."

18                THE COURT:  AND JUST SOME LANGUAGE LIKE

19     "YOU MAY CONSIDER THE FOLLOWING FACTORS IN

20     DETERMINING A REASONABLE ROYALTY"?

21                MR. JACOBS:  YES.

22                THE COURT:  ALL RIGHT.  GO AHEAD, PLEASE.

23                MR. JACOBS:  ON 25, THIS IS LANGUAGE, I

24     BELIEVE, FROM THE MODEL INSTRUCTION.  IT'S JUST

25     WRONG.

1          AT 7 AND 8, "YOU MUST ALLOCATE THE LOST

2     PROFITS BASED UPON THE CUSTOMER DEMAND FOR THE

3     PATENTED FEATURE OF THE INFRINGING PRODUCTS."

4          ALLOCATION IS NOT APPROPRIATE WHERE, AS

5     HERE, APPLE SEEKS RECOVERY UNDER PANDUIT.  A GOOD

6     SITE FOR THIS IS DEPUY SPINE AT 567 F.3D 1314 AT

7     1341.

8          PANDUIT DOES THE ALLOCATION -- AND YOUR

9     HONOR WILL RECALL PANDUIT WAS THE BASIS FOR A

10    SUMMARY JUDGMENT RULING IN -- OR A MOTION TO STRIKE

11    RULING, RATHER, IN OUR FAVOR DURING THAT PHASE OF

12    THE LITIGATION.

13         AND PANDUIT DEALS WITH THIS UNDER THE

14    SECOND FACTOR, AND WE DID THAT UNDER THE SECOND --

15    AND MR. MUSIKA'S ANALYSIS HANDLED IT ON THE SECOND

16    FACTOR.

17         THE COURT:  WE'VE -- WE LOOKED AT THAT

18    AND WENT BACK AND FORTH ON THIS YESTERDAY, BUT I

19    DISAGREE WITH YOU.  OKAY?  THAT'S GOING TO STAY IN.

20         MR. JACOBS:  NUMBER 26, UTILITY PATENT

21    DAMAGES, THERE'S -- THE PHRASE "COMMERCIALLY

22    ACCEPTABLE" SHOULD BE ADDED BEFORE "NON-INFRINGING

23    SUBSTITUTES" AT LINE 4.

24         AGAIN, PANDUIT REQUIRES THE ABSENCE OF

25    ACCEPTABLE NON-INFRINGING ALTERNATIVES.

1872

```
 1                  SIMILARLY, GRAYDON PROCESSING ASKS
 2       WHETHER THERE ARE ACCEPTABLE NON-INFRINGING
 3       ALTERNATIVES.
 4                  THE COURT:  LET ME ASK IF SAMSUNG AGREES
 5       TO THAT.
 6                  MS. MAROULIS:  YOUR HONOR, WE DISAGREE
 7       WITH THAT AND IT DEVIATES FROM THE MODEL PATENT
 8       INSTRUCTIONS, SO WE BELIEVE IT SHOULD BE LEFT AS
 9       IS.
10                  THE COURT:  THAT'S A GOOD POINT.
11                  OKAY.  I'M NOT GOING TO DO THAT.
12                  GO AHEAD.  NEXT?
13                  MR. JACOBS:  I THINK YOU'RE UP NEXT.
14                  MR. SELWYN:  YOUR HONOR, ON NUMBER 29, WE
15       BELIEVE THAT THAT MISSTATES THE ENTIRE MARKET VALUE
16       RULE.  IT DOES FOLLOW THE NORTHERN DISTRICT MODEL,
17       BUT WE BELIEVE THAT MODEL IS INCORRECT IN LIGHT OF
18       THE 2011 FEDERAL CIRCUIT DECISION IN UNILOCK.
19                  IT APPEARS TO US THAT THE MODEL JUST HAS
20       NOT BEEN UPDATED FOLLOWING THE UNILOCK DECISION,
21       AND IN PARTICULAR THE SENTENCE THAT BEGINS, "EVEN
22       IF THE PATENTED INVENTION IS NOT THE REASON FOR
23       DEMAND," THAT IS NOT A CORRECT STATEMENT OF THE
24       LAW.
25                  UNDER UNILOCK, THE PATENTEE MUST PROVE
```

     1    THAT THE PATENTED RELATED FEATURE IS THE BASIS FOR

     2    A CUSTOMER DEMAND, AND IT'S AN INCORRECT STATEMENT

     3    TO SAY THAT THE RATE IN A HYPOTHETICAL NEGOTIATION

     4    WOULD BE LOWER THAN THE PRICE OF THE VALUE OF WHOLE

     5    PRODUCT AND THE PATENTED INVENTION IS NOT THE

     6    REASON THAT CUSTOMERS PURCHASED THE PRODUCT.

     7             THE COURT:  YOU KNOW, THESE MODEL

     8    INSTRUCTIONS WERE ISSUED IN NOVEMBER OF 2011, SO

     9    ALMOST FOUR OR FIVE MONTHS AFTER UNILOCK.  WHY

    10    SHOULD I ASSUME THAT THEY MADE A MISTAKE?

    11             MR. SELWYN:  I WOULD JUST POINT YOUR

    12    HONOR TO THE LANGUAGE IN UNILOCK WHICH I THINK IS

    13    DIAMETRICALLY OPPOSITE OF WHAT THE MODEL

    14    INSTRUCTION SAYS.

    15             THE COURT:  ALL RIGHT.

    16             MS. MAROULIS:  WE OBJECT TO THAT, YOUR

    17    HONOR.  IT'S A MODEL INSTRUCTION.

    18             THE COURT:  ALL RIGHT.  GO AHEAD.

    19             MR. JACOBS:  31, YOUR HONOR, PROBABLY A

    20    TYPO ON LINE 4, "IF YOU FIND THAT APPLE SELLS

    21    PRODUCTS THAT INCLUDE THE CLAIMED INVENTIONS," THE

    22    WORD "DESIGNS" IS IN THERE, BUT I THINK IT'S --

    23             THE COURT:  I'M SORRY.  WHAT IS THE LINE

    24    NUMBER AGAIN?

    25             MR. JACOBS:  LINE 4.

```
 1              THE COURT:  "IF YOU FIND THAT APPLE SELLS

 2      PRODUCTS THAT INCLUDE THE CLAIMED" --

 3              MR. JACOBS:  "INVENTIONS."

 4              THE COURT:  OH, SORRY ABOUT THAT.  OKAY.

 5              MR. JACOBS:  AND THEN THE REQUIREMENT OF

 6      SEPARATE NOTICE FOR EACH SAMSUNG ENTITY, THAT WAS

 7      NOT SOMETHING SAMSUNG REQUESTED.  IT'S PROBABLY

 8      CONTRARY TO LAW.

 9              THE ELONEX CASE IS A GOOD -- E-L-O-N-E-X,

10      2002 U.S. DISTRICT LEXIS 4706 AT STAR 16 TO 19.

11              THE SUBSIDIARIES ARE AGENTS OF SEC FOR

12      PURPOSES OF NOTICE ANALYSIS AND SHOULD NOT BE --

13      AND SHOULD NOT BE SEPARATELY REQUIRED THAT THEY BE

14      GIVEN NOTICE IN ORDER FOR DAMAGES TO RUN.

15              MS. MAROULIS:  YOUR HONOR, THESE

16      DEFENDANTS WERE SUED SEPARATELY.  THERE SHOULD BE

17      NOTICE AS TO EACH, AND THERE'S NO EVIDENCE OF THIS

18      AGENCY RELATIONSHIP THAT MR. JACOBS IS REFERRING

19      TO.

20              MR. JACOBS:  AGAIN, YOUR HONOR, THIS IS

21      NOT SOMETHING SAMSUNG EVEN REQUESTED.

22              THE COURT:  ALL RIGHT.  WE'LL TAKE A LOOK

23      AT THAT ONE.

24              MR. SELWYN:  YOUR HONOR, FOR THE RECORD,

25      YOU HAD NOT ADOPTED APPLE'S PROPOSED INSTRUCTION
```

```
 1    NUMBER 30, WHICH, FOLLOWING THE LUCENT CASE, ASKED

 2    THAT THE JURY BE INSTRUCTED THAT THE DAMAGES AWARD

 3    OUGHT TO BE CORRELATED TO THE EXTENT OF USE OF THE

 4    INFRINGING METHOD.

 5            I JUST WANTED TO NOTE THAT FOR THE

 6    RECORD.  OUR OBJECTION THAT IT NOT BE INCLUDED.

 7            THE COURT:  THAT 30 WAS -- THAT YOUR

 8    PROPOSED 30 WAS NOT INCLUDED?

 9            MR. SELWYN:  WE BELIEVE 30 SHOULD BE

10    INCLUDED.  YOUR HONOR'S INSTRUCTIONS OMITS IT.

11            THE COURT:  OKAY.  ALL RIGHT.

12            MR. JACOBS:  ON 42, YOUR HONOR --

13            THE COURT:  42, OKAY.

14            MR. JACOBS:  -- THIS IS THE ELECTION

15    ISSUE AGAIN, BUT THERE'S A SMALL FIX THAT I THINK

16    MAY MITIGATE THIS THAT SHOULDN'T BE CONTROVERSIAL.

17            IN THIS CASE, APPLE "SEEKS" RATHER THAN

18    "HAS ELECTED TO SEEK."

19            THE COURT:  THAT'S FINE.

20            MR. JACOBS:  AND THEN THERE'S THE -- THE

21    PHRASE "YOU MAY AWARD APPLE THAT SAMSUNG

22    DEFENDANTS," I THINK IT'S JUST A TYPO ON LINE 3 AND

23    THREE-QUARTERS.

24            THE COURT:  NO.  THAT HAD TO DO WITH

25    THREE SEPARATE ENTITIES, SO "IF YOU FIND
```

```
 1   INFRINGEMENT BY ANY SAMSUNG DEFENDANT, THEN YOU MAY

 2   AWARD APPLE THAT SAMSUNG DEFENDANT'S TOTAL PROFIT."

 3               MR. JACOBS:  I SEE.  UNDERSTOOD.  THANK

 4   YOU.

 5               LET'S SEE.  ON 44, WE HAVE THE ISSUE

 6   AGAIN OF NOTICE TO EACH SAMSUNG ENTITY.

 7               AND, AGAIN, THE ELONEX CASE WE WOULD

 8   PROPOSE IN BOTH OF THOSE INSTRUCTIONS REGARDING

 9   EACH SAMSUNG ENTITY THAT THE INSTRUCTION BE

10   ADJUSTED TO NOT REQUIRE NOTICE TO THE SUBSIDIARIES

11   IF NOTICE TO THE PARENT IS FOUND, OR THAT THAT JUST

12   BE DELETED OF SEPARATE NOTICE.

13               THE COURT:  WHAT EVIDENCE IS THERE IN THE

14   RECORD THAT THEY ARE, IN FACT -- THAT THE U.S.

15   ENTITIES ARE AGENTS?

16               MR. JACOBS:  THE EVIDENCE IN THE RECORD

17   WOULD INCLUDE THE TESTIMONY OF MR. DENISON AND THE

18   EXHIBITS THAT WERE INTRODUCED DURING HIS TESTIMONY

19   IN WHICH IT'S VERY CLEAR THAT THEY ARE -- THAT THE

20   CHAIRMAN OF, AND THE SENIOR MANAGEMENT AT SEC IS

21   TELLING STA WHAT TO DO AND THAT IT IS SETTING THE

22   WHOLESALE PRICE AND THAT IT IS MAKING --

23   NEGOTIATING WITH THE CARRIERS AND THAT STA IS A

24   SALES -- SERVES A SALES FUNCTION, THAT THE FINANCES

25   ARE HANDLED ON A CONSOLIDATED BASIS, THEY'RE WHOLLY
```

1    OWNED SUBSIDIARIES.

2              MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS

3    THAT?  MR. DENISON ACTUALLY TESTIFIED TO THE

4    OPPOSITE.  HE TESTIFIED TO THE AUTONOMY DECISION

5    MAKING OF STA, AND APPLE IS NOW SUGGESTING SOME

6    THEORIES THAT WERE NEVER PRESENTED AS PART OF THE

7    CASE.

8              THE COURT:  OH, I WAS ASKED TO ASK YOU

9    ALL TO PLEASE SPEAK INTO THE MICROPHONE BECAUSE,

10   SURPRISINGLY, WE DO HAVE FOLKS IN THE OVERFLOW ROOM

11   TODAY AND THEY JUST CAN'T HEAR IF PEOPLE ARE NOT

12   USING THE MICROPHONE.

13             OKAY.  ALL RIGHT.  GO AHEAD, PLEASE.

14   I'LL TAKE THAT ONE UNDER SUBMISSION.

15             MR. JACOBS:  I THINK ONE OF THE PROBLEMS,

16   YOUR HONOR, IS NOT KNOWING THAT SAMSUNG WOULD EVEN

17   SEEK SUCH -- THAT SAMSUNG WOULD NOW URGE SUCH AN

18   INSTRUCTION, OF COURSE WE DIDN'T DEVELOP A RECORD,

19   AN ADDITIONAL RECORD ABOUT AGENCY.  AND SO IT WOULD

20   BE PREJUDICIAL NOW TO REQUIRE SEPARATE NOTICE.

21             ON 48, WE HAVE PREVIOUSLY OBJECTED ON

22   LINE 5, IN THE PRELIMINARY INSTRUCTIONS, TO THE

23   LANGUAGE, "IN OTHER WORDS, TRADE DRESS IS THE FORM

24   IN WHICH A PERSON PRESENTS A PRODUCT OR SERVICE TO

25   THE MARKET, ITS MANNER OF DISPLAY," AND WE THINK

1    THAT IS LEGALLY INCORRECT AND BELIEVE IT SHOULD BE

2    DELETED.

3              THE NEXT ONE IS 50.

4              THE COURT:  ALL RIGHT.  I BELIEVE THAT'S

5    HOW THE MODEL INSTRUCTION IS WORDED, SO THAT'S

6    PROBABLY GOING TO STAY IN.

7              MR. JACOBS:  YOUR HONOR, I WASN'T SURE

8    WHAT YOUR -- I DIDN'T QUITE FOLLOW WHAT YOU WERE

9    PROPOSING TO DO WHEN YOU WERE IN DIALOGUE WITH

10   MR. ZELLER ABOUT, I THINK IT'S 50, 51, 52, 53.

11             THE COURT:  NO.  I WAS TALKING ABOUT --

12   YOU MEAN THE REORDERING AND PERHAPS MORE

13   INTRODUCTORY LANGUAGE ON THE DAMAGES INSTRUCTIONS?

14             MR. JACOBS:  NO.  I'M SORRY.  IT WAS 51

15   WHERE YOU WERE -- I THINK YOU WERE PROPOSING TO

16   TAKE OUT THE FACTORS FROM DISCO GOLF -- DISC GOLF.

17             THE COURT:  I'M SORRY.  LET ME TAKE A

18   LOOK AT MY NOTES.  THAT ONE IS A STRAIGHT NINTH

19   CIRCUIT MODEL INSTRUCTION, SO I'D BE PRETTY

20   RELUCTANT TO --

21             MR. JACOBS:  SO, YOUR HONOR, I THINK

22   INDICATED -- AND I'M SORRY, IT WAS MOVING QUICKLY,

23   AT LINE 7 AND A HALF, YOU MAY HAVE INDICATED THAT

24   YOU WOULD BE OPEN TO CHANGING THE LANGUAGE TO "YOU

25   MAY CONSIDER THE FOLLOWING FACTORS IN DECIDING IF

1    THE PRODUCT FEATURE IS FUNCTIONAL OR

2    NON-FUNCTIONAL," AND WE WOULD ENDORSE THAT CHANGE.

3              BUT WE LIKE THE -- WE BELIEVE THE FACTORS

4    SHOULD BE RETAINED.

5              THE COURT:  WHAT ABOUT "TO DETERMINE

6    WHETHER A PRODUCT FEATURE IS FUNCTIONAL, YOU MAY

7    CONSIDER THE FOLLOWING FACTORS"?  WOULD THAT BE

8    OKAY?

9              MR. JACOBS:  YES, AS LONG AS WE DON'T

10   LOSE THE DESIGN AS A WHOLE LANGUAGE, WHICH IS VERY

11   IMPORTANT.

12             THE COURT:  I'M TALKING ABOUT THE THIRD

13   PARAGRAPH.

14             MR. JACOBS:  TERRIFIC.  I WAS CONCERNED

15   YOU WERE GOING TO MOVE UP --

16             THE COURT:  THE PARAGRAPH THAT CURRENTLY

17   STARTS "YOU SHOULD ASSESS THE FOLLOWING FACTORS IN

18   DECIDING IF A PRODUCT FEATURE IS FUNCTIONAL OR

19   NON-FUNCTIONAL," CHANGING THAT TO READ "TO

20   DETERMINE WHETHER A PRODUCT FEATURE IS FUNCTIONAL,

21   YOU MAY CONSIDER THE FOLLOWING FACTORS."

22             IS THAT ACCEPTABLE?

23             MR. JACOBS:  THAT'S FINE.

24             THE COURT:  OKAY.  AND THEN IN PARAGRAPH

25   4 -- AND PARAGRAPH 4, AFTER CONSIDERING THESE

1880

```
 1    FACTORS, JUST SAYING "IF YOU FIND BY A
 2    PREPONDERANCE OF THE EVIDENCE" --
 3              MR. JACOBS:  THAT'S FINE, YOUR HONOR.
 4              THE COURT:  -- "THAT IT'S NOT MANDATORY,"
 5    AND THEN CHANGING PARAGRAPH 5, INSTEAD OF
 6    "ALTERNATIVELY," JUST SAYING "IN ADDITION."
 7              IS THAT OKAY?
 8              MR. JACOBS:  YES, YOUR HONOR.
 9              THE COURT:  OKAY.  WHAT ELSE?
10              MR. JACOBS:  I MISSED ONE.  39, THIS WAS
11    ANOTHER ONE THAT THE COURT DISCUSSED WITH SAMSUNG'S
12    COUNSEL.  THIS WAS A DISCUSSION OF WHETHER THE PGH
13    FACTORS WOULD BE INCLUDED.
14              THE COURT:  YES.
15              MR. JACOBS:  AND AS LONG AS THEY'RE
16    LITERALLY TAKEN FROM THE DECISION, YOUR HONOR, THAT
17    WOULD BE ACCEPTABLE.
18              THE COURT:  OKAY.
19              MR. JACOBS:  THERE'S SOME LANGUAGE IN THE
20    DECISION THAT'S IMPORTANT.  FOR EXAMPLE, BELIEVE IT
21    OR NOT, THE LANGUAGE USES THE -- THE DECISION USES
22    THE WORD "CONCOMITANT" IN REFERRING TO UTILITY
23    PATENTS, AND THAT'S IMPORTANT BECAUSE OBVIOUSLY
24    THERE ARE UTILITY PATENTS THAT RELATE TO THE
25    DEVICES HERE, BUT THEY AREN'T CONCOMITANT WITH THE
```

881

```
 1    DESIGN PATENTS.
 2              THE COURT:  WHAT ABOUT SOMETHING LIKE "IN
 3    DETERMINING WHETHER A DESIGN IS DICTATED BY
 4    FUNCTIONALITY, YOU MAY CONSIDER WHETHER THE
 5    PROTECTED DESIGN REPRESENTS THE BEST DESIGN,
 6    WHETHER THESE DESIGNS WOULD ADVERSELY AFFECT THE
 7    UTILITY OF THE SPECIFIED ARTICLE, WHETHER THERE ARE
 8    ANY CONCOMITANT UTILITY PATENTS, WHETHER THE
 9    ADVERTISING TOUTS PARTICULAR FEATURES OF THE DESIGN
10    AS HAVING SPECIFIC UTILITY, AND WHETHER THERE ARE
11    ANY ELEMENTS IN THE DESIGN OR AN OVERALL APPEARANCE
12    CLEARLY NOT DICTATED BY FUNCTION."
13              IS THAT ACCEPTABLE?
14              MR. JACOBS:  YES, YOUR HONOR.
15              THE COURT:  OKAY.  AND WHERE DO YOU WANT
16    ME TO PUT THAT?  IS THERE ANY SPECIFIC LOCATION?
17              MR. JACOBS:  I THINK BETWEEN 2 AND 3,
18    YOUR HONOR, ON INSTRUCTION NUMBER 39.
19              THE COURT:  OKAY, BETWEEN PARAGRAPHS 2
20    AND 3.  "IN DETERMINING WHETHER A DESIGN IS
21    DICTATED BY FUNCTIONALITY, YOU MAY CONSIDER," AND
22    THEN I'LL JUST PUT THAT LANGUAGE IN.
23              MR. ZELLER:  FOR CLARIFICATION, WHAT LINE
24    IS THAT, YOUR HONOR?
25              THE COURT:  INSTRUCTION NUMBER 40, AND IT
```

```
1    WOULD BE IN BETWEEN -- I GUESS IT WOULD BE LINE 6.

2              SO AFTER "YOU SHOULD KEEP IN MIND THAT

3    THE DAMAGES YOU AWARD ARE MEANT TO COMPENSATE THE

4    PATENT HOLDER AND NOT TO PUNISH AN INFRINGER," THE

5    NEXT SENTENCE WILL SAY, "IN DETERMINING WHETHER A

6    DESIGN IS DICTATED BY FUNCTIONALITY, YOU MAY

7    CONSIDER" --

8              NOW, DOES IT MAKE SENSE FOR IT TO BE IN

9    THE BURDEN OF PROOF FOR DAMAGES?

10             MR. JACOBS:  SORRY.  IT'S 39, YOUR HONOR.

11   I MAY HAVE MISSTATED IT.

12             THE COURT:  YEAH.  ALL RIGHT.  SO IT'S

13   LINE 5, AFTER THE SENTENCE, "IN OTHER WORDS, THE

14   INVENTOR DID NOT DESIGN ANYTHING BECAUSE IN ORDER

15   TO ACHIEVE THE FUNCTION OF THE DESIGN, IT HAD TO BE

16   DESIGNED THAT WAY."

17             I THINK IT MIGHT BE BETTER BETWEEN

18   PARAGRAPHS 2 AND 3.  RIGHT?

19             MR. JACOBS:  YES, YOUR HONOR.

20             THE COURT:  AND THEN IT WILL SAY "IN

21   DETERMINING WHETHER A DESIGN IS DICTATED BY

22   FUNCTIONALITY, YOU MAY CONSIDER," AND THEN PUT IN

23   THE PGH TECHNOLOGIES LANGUAGE, AND THEN THE NEXT

24   PARAGRAPH WILL CONTINUE WITH "WHEN THERE ARE

25   SEVERAL OTHER DESIGNS THAT ACHIEVE THE FUNCTION OF
```

```
 1    AN ARTICLE," ET CETERA.

 2              IS THAT OKAY, MR. ZELLER?

 3              MR. ZELLER:  I HAVE CONCERNS ABOUT SOME

 4    OF THAT.  PART OF IT, YOUR HONOR, IS IT'S A LITTLE

 5    HARD TO CONSTRUCT EVERYTHING HERE AND EXACTLY HOW

 6    THAT'S GOING TO LOOK.

 7              I WOULD PREFER, IF THE COURT COULD

 8    INDULGE US AT LEAST TO SEE THE LANGUAGE WRITTEN OUT

 9    AND THEN PERHAPS CHECK?

10              THE COURT:  SURE.  SO WHAT I'M PLANNING

11    TO DO, AT SOME POINT, IS TO MAKE ALL OF THE

12    CHANGES, REFILE THEM.

13              CAN YOU ALL GIVE ME A VERY QUICK TURN

14    AROUND, SO THEN WE CAN FINALIZE THEM?

15              AND FOR THIS LAST SET, PLEASE, NO

16    ARGUMENT.  JUST REALLY OBVIOUS ERRORS JUST SO WE

17    CAN GET IT OUT.

18              MR. ZELLER:  AND THEN ALSO JUST FOR

19    PRESERVATION PURPOSES, YOUR HONOR -- WE WOULD LIKE

20    THE OPPORTUNITY, AT LEAST FOR PRESERVATION

21    PURPOSES, FOR ANY CHANGES TO HAVE SOME OPPORTUNITY,

22    WITHOUT BURDENING THE COURT, OF COURSE, TO AT LEAST

23    STATE ANY ADDITIONAL OBJECTIONS.

24              THE COURT:  OKAY.  BUT CAN WE PUT A PAGE

25    LIMIT ON THAT?  BECAUSE WE HAVE TO FINALIZE THE
```

1     VERDICT FORM --

2                 MR. ZELLER:  SURE.

3                 THE COURT:  -- THE EXHIBIT LIST, THE JURY

4     INSTRUCTIONS, AND IT'S ALREADY TEN AFTER 5:00.

5                 MR. ZELLER:  AND THESE WOULD SIMPLY BE

6     THE CHANGES, THAT'S ALL.

7                 THE COURT:  SO LET'S PUT A CAP AT, WHAT,

8     LIKE TWO PAGES?  PLEASE.

9                 MR. ZELLER:  THAT'S FINE.

10                THE COURT:  AND I'LL SAY TWO PAGES.  AND

11    THEN IF YOU COULD FILE IT TWO HOURS AFTER WE FILE

12    IT, WOULD THAT BE ENOUGH TIME?

13                OKAY.  I'M ASSUMING THAT YOUR TEAMS ALSO

14    WANT FINAL INSTRUCTIONS ANYWAY SO THAT YOU KNOW

15    EXACTLY WHAT'S GOING TO BE GIVEN OUT SO THAT YOU

16    DON'T SAY ANYTHING INCONSISTENT IN YOUR

17    PRESENTATIONS TOMORROW.

18                MR. JACOBS:  AND THEN JUST TO BE CLEAR

19    PROCEDURALLY, YOUR HONOR, SINCE YOU'RE ON THIS

20    POINT, OUR OBJECTIONS THAT WE STATE NOW TO THIS SET

21    OF INSTRUCTIONS WOULD BE CARRIED FORWARD INTO THE

22    NEXT SET OF INSTRUCTIONS AND WE DO NOT NEED TO

23    RESTATE THEM.

24                THE COURT:  YES.  IT'S PRESERVED.  IT'S

25    PRESERVED.

1           OKAY.  WHAT ELSE?

2           MR. JACOBS:  NUMBER 50.  WE PROPOSE A

3    COUPLE OF CHANGES TO 5, 7, AND THE PARAGRAPH AFTER

4    7.

5           SO FOR EXCLUSIVITY, WE PROPOSE, "WHETHER

6    APPLE'S USE OF THE CLAIMED TRADE DRESS WAS

7    EXCLUSIVE," QUOTE, "AS OF THE TIME OF THE FIRST

8    ALLEGED INFRINGEMENT OR DILUTION," PERIOD, CLOSED

9    QUOTE.

10           ARGUMENT IN FAVOR, "IT'S CLEAR THAT

11   DILUTION IS MEASURED AS OF THAT TIME."  THE COURT

12   MAY RECALL ARGUMENT DURING SUMMARY JUDGMENT ABOUT

13   WHEN FAME MUST BE ESTABLISHED.  THE SAME IS TRUE

14   FOR EXCLUSIVITY.

15           THE COURT:  "AS OF THE TIME OF THE FIRST

16   INFRINGEMENT OR DILUTION"?

17           MR. JACOBS:  ALLEGED -- YES, ALLEGED

18   INFRINGEMENT OR DILUTION.

19           THE COURT:  "AS OF THE TIME OF THE FIRST

20   ALLEGED INFRINGEMENT OR DILUTION"?

21           MR. JACOBS:  THEN IN NUMBER 7 --

22           THE COURT:  ANY OBJECTION TO THAT?

23           MR. ZELLER:  YES, MOST DEFINITELY, YOUR

24   HONOR.

25           AND THIS IS A MATTER OF PROTOCOL.  I

```
 1    DON'T KNOW IF I SHOULD BE RESPONDING OR WAIT UNTIL

 2    OUR TIME ON A NUMBER OF THESE CHANGES, BUT THEY'RE

 3    PROPOSING VERY SIGNIFICANT, SUBSTANTIVE CHANGES

 4    THAT, NUMBER ONE, THEY'RE SIMPLY NOT IN THE MODEL

 5    INSTRUCTION, NUMBER TWO, ARE TOO -- IT'S SIMPLY

 6    ERRONEOUS AS A MATTER OF LAW.

 7              TRADE DRESS AND TRADEMARK, IN TERMS OF

 8    THE STRENGTH AND THESE OTHER FACTORS THAT NEED TO

 9    BE ASSESSED, IS JUDGED ON AN ONGOING BASIS, JUST

10    LIKE THEIR TRADEMARK OR TRADE DRESS CAN BECOME

11    GENERIC OVER TIME.

12              SO THE IDEA THAT SOMEHOW IT WAS FROZEN IN

13    TIME IS A --

14              THE COURT:  OKAY.

15              MR. JOHNSON:  YOUR HONOR, I'M SORRY.  I

16    ALSO UNDERSTOOD WHAT WAS GOING TO HAPPEN IS THEY

17    WERE GOING TO LIST THEIR OBJECTIONS, IT WAS GOING

18    TO TAKE 20 MINUTES, AND WE WEREN'T GOING TO REARGUE

19    A BUNCH OF THESE AT THIS POINT.

20              THE COURT:  YEAH, I KNOW.

21              HOW MUCH MORE DO YOU HAVE?

22              MR. JACOBS:  JUST A FEW MORE, YOUR HONOR.

23              THE COURT:  OKAY.  BECAUSE I THINK YOU

24    ARE OVER YOUR TIME.  WE STARTED AT 4:51.

25              MR. JACOBS:  THEN IN NUMBER 7, WE OBJECT
```

10887

```
 1    TO THE "ACTUAL CONFUSION" LANGUAGE.  WE BELIEVE IT

 2    SHOULD READ, "IF SAMSUNG'S USE OF APPLE'S ALLEGED

 3    TRADE DRESS HAS LED TO ACTUAL CONFUSION AMONG A

 4    SIGNIFICANT NUMBER OF CONSUMERS, SUCH CONFUSION MAY

 5    SUPPORT A FINDING OF SECONDARY MEANING."

 6              AND THEN IN THE NEXT PARAGRAPH, WE

 7    BELIEVE THE FOLLOWING SENTENCE SHOULD BE ADDED,

 8    "FOR EXAMPLE, THE ABSENCE OF ACTUAL CONFUSION DOES

 9    NOT MEAN THAT APPLE'S TRADE DRESS LACKS SECONDARY

10    MEANING."

11              WE BELIEVE THIS IS IMPORTANT BECAUSE THE

12    PROPOSED INSTRUCTION OTHERWISE MOVES INTO THE

13    SECONDARY MEANING INQUIRY THE QUESTION OF ACTUAL

14    CONFUSION.

15              THE COURT:  DID YOU PROPOSE THAT IN YOUR

16    FIRST -- IN YOUR ECF 1604?

17              MR. JACOBS:  WE DIDN'T HAVE ACTUAL

18    CONFUSION IN THERE AT ALL, YOUR HONOR.

19              THE COURT:  THAT'S RIGHT.  I SEE YOUR

20    ACTUAL INSTRUCTION.

21              BUT I THINK THAT SAMSUNG DID.  YES, THEY

22    DID.

23              MR. JACOBS:  AND SO I SUPPOSE I SHOULD

24    SAY WE OBJECT TO THE INCLUSION OF 7.

25              WITHOUT WAIVING THAT OBJECTION, WE
```

1888

```
1    PROPOSE THE ADDITIONAL LANGUAGE THAT I SUGGESTED.

2              THE COURT:  ALL RIGHT.  I'VE ALREADY

3    CONSIDERED THAT.

4              OKAY.  GO AHEAD, PLEASE.

5              MR. JACOBS:  51, WE OBJECT -- ON 51, THE

6    SECOND SENTENCE SHOULD BE STRICKEN.  THE SENTENCE

7    READS -- THE SECOND AND THIRD SENTENCE -- "HOWEVER,

8    IF THE FEATURE SERVES NO PURPOSE OTHER THAN AS AN

9    ASSURANCE THAT A PARTICULAR ENTITY MADE, SPONSORED,

10   OR ENDORSED THE PRODUCT THAT IS NON-FUNCTIONAL, A

11   PRODUCT FEATURE IS ALSO NON-FUNCTIONAL IF ITS SHAPE

12   OR FORM MAKES NO CONTRIBUTION TO THE PRODUCT'S

13   FUNCTION OR OPERATION."

14             THAT'S INCONSISTENT WITH THE APPEARANCE

15   AS A WHOLE DOCTRINE APPLICABLE TO TRADE DRESS, AND

16   IT'S POTENTIALLY QUITE CONFUSING AND WE OBJECT TO

17   THOSE TWO SENTENCES.

18             THE COURT:  ALL RIGHT.  THAT WAS FROM THE

19   NINTH CIRCUIT MODEL INSTRUCTIONS, SO --

20             MR. JACOBS:  ON 55, WE ALREADY ADDRESSED

21   THE LANGUAGE THAT SAMSUNG'S COUNSEL AND I AGREED

22   ON.

23             THE COURT:  YES.

24             MR. JACOBS:  ONCE AGAIN, WE HAVE A

25   TIMING -- WE HAVE AN OBJECTION THAT THE INSTRUCTION
```

1    LACKS A TIMING ELEMENT.

2              WE WOULD ADD AT LINE 3 AND THREE-QUARTERS

3    BEFORE, "IN DETERMINING THE FOLLOWING LANGUAGE,"

4    "DILUTION SHOULD BE MEASURED AT THE TIME SAMSUNG

5    COMMENCES SALES OF AN ACCUSED PRODUCT."

6              AND THEN WE PROPOSE TO ADD AT THE END OF

7    THE FACTORS --

8              THE COURT:  WHAT WAS THAT SENTENCE AGAIN?

9    "DILUTION SHOULD BE MEASURED AT THE TIME SAMSUNG"?

10             MR. JACOBS:  "COMMENCES SALES OF AN

11   ACCUSED PRODUCT."  THAT'S OUT OF THE STATUTE, OR

12   IT'S ADAPTED FROM THE STATUTORY LANGUAGE.

13             THE COURT:  "SALES OF AN ACCUSED

14   PRODUCT"?

15             MR. JACOBS:  CORRECT.

16             AND THEN WE PROPOSE TO ADD AT THE END OF

17   THE FACTORS, "APPLE IS NOT REQUIRED TO PROVE ACTUAL

18   DILUTION.  APPLE IS REQUIRED ONLY TO PROVE THAT

19   DILUTION IS LIKELY TO OCCUR."

20             THAT, TOO, IS RIGHT OUT OF THE STATUTE,

21   15 U.S.C. 1125.

22             THE COURT:  AND WHERE DID YOU WANT THAT?

23             MR. JACOBS:  AFTER 6.

24             THE COURT:  YOU DON'T THINK THAT LINES

25   14 -- 13 AND 14 TAKE CARE OF THAT?  IT JUST SAYS

1890

```
 1    "APPLE BEARS THE BURDEN OF PROVING THAT THE ACCUSED

 2    PRODUCTS ARE LIKELY TO DILUTE."  IT DOESN'T SAY

 3    THAT YOU HAVE AN OBLIGATION TO PROVE ACTUAL

 4    DILUTION.

 5              I THINK THAT TAKES CARE OF IT, SO THAT

 6    REQUEST IS DENIED.

 7              GO AHEAD.  WHAT'S YOUR NEXT ONE?

 8              MR. JACOBS:  ON 58 -- JUST A FEW MORE,

 9    YOUR HONOR --

10              THE COURT:  YOU KNOW, I'M NOT GOING TO

11    ALLOW TWO MORE PAGES OF MORE OBJECTIONS AND MORE

12    PRESERVING THE RECORD.  I'VE READ THE SAME RULE 51.

13    YOU ARE NOT ENTITLED TO FOUR OR FIVE TIMES.

14              YOU ALL FILED OVER 300 PAGES THE FIRST

15    TIME.  YOU FILED 273 PAGES THE SECOND TIME.  I LET

16    YOU FILE ONE PAGE OBJECTIONS LAST NIGHT.  YOU FILED

17    16 PAGES OF OBJECTIONS THIS MORNING.  YOU'VE BEEN

18    GIVEN MULTIPLE HOURS OF OBJECTIONS THIS AFTERNOON.

19              ENOUGH IS ENOUGH.  OKAY?

20              SO I'LL LET YOU FILE ONE PARAGRAPH AND

21    THAT'S ONLY IF THERE'S ANY TYPOS OR OBVIOUS ERRORS.

22    NOTHING ELSE TONIGHT.

23              MR. JOHNSON:  WE UNDERSTAND, YOUR HONOR.

24    IT'S JUST TO PRESERVE --

25              THE COURT:  YOU'VE ALREADY PRESERVED,
```

1    OKAY?  I MEAN, YOU'VE GOT A PETRIFIED FOREST HERE.

2    YOU DON'T NEED ANYTHING ELSE.  ENOUGH IS ENOUGH.

3            WHAT'S YOUR NEXT ONE?

4            MR. JACOBS:  58, YOUR HONOR.  I THINK I'M

5    RESPONDING NOW TO SAMSUNG, WHICH PROPOSED AN ACTUAL

6    OR STATUTORY NOTICE INSTRUCTION, AND YOU ASKED US

7    ABOUT IT.

8            I THINK THE PROBLEM IS THAT IT'S ONLY FOR

9    REGISTERED TRADE DRESS WITH THIS NOTICE REQUIREMENT

10   TO APPLY.

11           AS YOUR HONOR HAS PREVIOUSLY RULED IN

12   SOME OF THE MOTION PRACTICE, FOR UNREGISTERED TRADE

13   DRESS, THERE IS NO NOTICE REQUIREMENT.

14           THE COURT:  I THINK IT'S IN THERE.  LOOK

15   AT THE SECOND PARAGRAPH.  DAMAGES FOR TRADE DRESS,

16   DILUTION AND TRADE DRESS INFRINGEMENT OF

17   UNREGISTERED TRADE DRESSES.

18           MR. JACOBS:  I'M LOOKING AT -- I'M SORRY,

19   YOUR HONOR.  I'M LOOKING AT WHAT SAMSUNG PROPOSED

20   AND I BELIEVE THE COURT INDICATED IT MIGHT BE

21   WILLING TO ADOPT.

22           THE COURT:  ON 58?

23           MR. JACOBS:  IT'S AN ADDITIONAL 58 ON

24   ACTUAL OR STATUTORY NOTICE.  IT'S ATTACHED TO

25   MS. HUTNYAN'S DECLARATION.  I THOUGHT THAT'S WHAT

 1    THE COURT MIGHT BE REFERRING TO.

 2              MR. ZELLER:  WHAT WE PROPOSED, YOUR

 3    HONOR, IS RIGHT OUT OF THE MODEL INSTRUCTION,

 4    15.24.

 5              THE COURT:  THIS IS FOR 58?  I'M SORRY.

 6              ALL RIGHT.  TELL ME WHERE YOU WANTED WHAT

 7    LANGUAGE, PLEASE.

 8              MR. JACOBS:  ON -- SO CAN I HAND THIS TO

 9    YOUR HONOR, BECAUSE I'M NOT SURE YOU HAVE WHAT I'M

10    LOOKING AT.  DO YOU HAVE --

11              THE COURT:  GO AHEAD, PLEASE.

12              MR. JACOBS:  SO WE WOULD PROPOSE THAT

13    THAT BE INTRODUCED BY LANGUAGE REFERRING TO

14    REGISTERED TRADE DRESS.

15              THE COURT:  SO THIS IS EXHIBIT E TO

16    DECLARATION OF DIANNE -- IS IT HUTNYAN -- IN

17    SUPPORT OF SAMSUNG'S OBJECTIONS TO TENTATIVE JURY

18    INSTRUCTIONS.

19              YOU WANT SAMSUNG'S PROPOSED NUMBER 58?

20              MR. JACOBS:  NO.  I THINK THE COURT

21    INDICATED IT WAS WILLING TO ENTERTAIN IT, AND IF

22    THE COURT DOES ENTERTAIN IT, WE WOULD ASK FOR IT TO

23    BE CLEAR THAT THAT REQUIREMENT APPLIES ONLY TO

24    REGISTERED TRADE DRESS.

25              MR. ZELLER:  YOUR HONOR, FIRST OF ALL,

1    THAT'S A MISSTATEMENT OF THE LAW.  COURTS HAVE

2    FOUND THAT WHERE BOTH REGISTERED AND UNREGISTERED

3    TRADE DRESS IS ASSERTED, THE STATUTORY REQUIREMENTS

4    OF SECTION 1111 OF THE LANHAM ACT --

5           THE COURT:  WELL, I'M SORRY TO INTERRUPT

6    YOU.  EXHIBIT E SAYS "IN ORDER FOR APPLE TO RECOVER

7    DAMAGES, APPLE HAS THE BURDEN OF PROVING BY A

8    PREPONDERANCE OF THE EVIDENCE THAT ALL THE SAMSUNG

9    ENTITIES HAD EITHER STATUTORY OR ACTUAL NOTICE THAT

10   APPLE'S TRADE DRESS WAS REGISTERED."

11          SO I THINK IT'S PRETTY CLEAR.

12          MR. ZELLER:  AND IT'S VERBATIM FROM THE

13   MODEL, YOUR HONOR.  15.24.

14          MR. JACOBS:  BUT IT'S -- BUT THAT ONLY

15   APPLIES TO REGISTERED TRADE DRESS, YOUR HONOR, NOT

16   TO UNREGISTERED TRADE DRESS.  THERE'S NO NOTICE

17   THAT CAN BE GIVEN.

18          THE COURT:  I KNOW.  I THINK THE

19   COMBINATION OF WHAT I HAVE IN 58, AND IF WE INCLUDE

20   THIS, IT'LL BE PRETTY CLEAR THAT IT ONLY APPLIES TO

21   REGISTERED TRADE DRESSES.  OKAY.

22          MR. ZELLER:  AND FOR THE RECORD, WE

23   OBJECT TO THAT.

24          THE COURT:  OH, YOU DON'T WANT -- I

25   THOUGHT THIS IS WHAT YOU WANTED.

1          MR. ZELLER:  WE DO WANT THAT LANGUAGE IN

2     THERE.  WE WANT 15.24 TO BE USED.

3          WE DON'T THINK THAT THE STATEMENT THAT

4     BEGINS ON LINE, PRACTICALLY LINE 7, "FOR APPLE'S

5     REGISTERED TRADE DRESS CLAIM," AND THEN IT

6     CONTINUES ON, WE DON'T THINK THAT THAT'S A CORRECT

7     STATEMENT OF THE LAW.

8          WHAT WE WOULD SUGGEST IS SIMPLY THAT THAT

9     BE STRUCK AND THE MODEL INSTRUCTION FROM THE NINTH

10    CIRCUIT BE USED ESSENTIALLY.

11         THE COURT:  ALL RIGHT.  I'LL TAKE A LOOK

12    AT THAT.  I'LL TAKE THIS UNDER SUBMISSION.

13         OKAY.  WHAT ELSE?

14         MR. JACOBS:  MR. SELWYN HAS A COUPLE.

15         THE COURT:  TIME IS UP.

16         MR. SELWYN:  NUMBER 65, YOUR HONOR.

17         MR. JACOBS:  SORRY.  LET ME DO 60 THEN.

18    SORRY.

19         ON 60, YOUR HONOR, AT LINE 9, THERE'S A

20    REFERENCE TO APPORTIONMENT.  THAT IS THE PORTION OF

21    THE PROFIT -- OF PROFIT ATTRIBUTABLE TO FACTORS

22    OTHER THAN USE OF THE INFRINGED OR DELETED TRADE

23    DRESS.  THERE IS NO EVIDENCE TO SUPPORT

24    APPORTIONMENT.

25         THE COURT STRUCK, IN ITS DAUBERT ORDER,

```
 1    MR. WAGNER'S APPORTIONMENT ANALYSIS WITH RESPECT TO
 2    APPLE'S TRADE DRESS CLAIMS AT DOCKET 1157, PAGE 10,
 3    LINES 3 AND 4.  SO THAT LANGUAGE SHOULD BE DELETED.
 4              MR. ZELLER:  AND I'LL REMIND YOU, YOUR
 5    HONOR, THIS WAS ALREADY BRIEFED PREVIOUSLY AND
 6    APPLE LOST ON IT.  I CAN ADDRESS IT FURTHER, BUT
 7    THAT IS NOT CORRECT.
 8              THE COURT:  WHAT ELSE DO YOU HAVE?
 9              MR. JACOBS:  ON 61.3, THIS IS THE ONE
10    THAT THE LANGUAGE, "APPORTIONED LOST PROFITS" AT
11    LINE 9.
12              THE COURT:  61.3?  OH, I SEE.
13              MR. JACOBS:  RIGHT.  THAT "APPORTIONED"
14    LANGUAGE IS INCORRECT AND WE OBJECT TO IT.
15              I'M SORRY.  JUST A MINUTE.
16              AND NOW I CAN TURN IT OVER TO MR. SELWYN.
17              THANK YOU VERY MUCH FOR THE TIME.
18              MR. SELWYN:  YOUR HONOR, WITH RESPECT TO
19    INSTRUCTION 65, THE SECOND TO LAST SENTENCE IN
20    PARAGRAPH 3, WHICH CURRENTLY READS "THAT IS A
21    PRACTICAL TEST WITH REFERENCE TO ACTUAL BEHAVIOR OF
22    BUYERS AND MARKETING EFFORTS OF SELLERS," WE OBJECT
23    TO THE WORDS "BUYERS" AND "SELLERS" AND SUGGEST
24    THAT THE SAME LANGUAGE THAT'S USED IN HYNIX BE
25    ADOPTED HERE, WHICH IS "USERS" AND "LICENSORS"
```

1    INSTEAD OF "BUYERS" AND "SELLERS."

2            THAT'S MORE APPROPRIATE IN THE PRESENT

3    CONTEXT OF A STANDARD SETTING ORGANIZATION AND IT

4    WAS USED IN HYNIX.

5            THE COURT:  "USERS" FOR "BUYERS" AND

6    "LICENSORS" FOR "SELLERS"?

7            MR. SELWYN:  CORRECT.  "USERS" REPLACES

8    "BUYERS," "LICENSORS" REPLACES "SELLERS."

9            THE COURT:  OKAY.  I'LL TAKE A LOOK AT

10   THAT.

11           WHAT ELSE?

12           MR. SELWYN:  AND THEN THE LAST ONE --

13           THE COURT:  YEA.

14           MR. SELWYN:  INSTRUCTION 68.

15           THE COURT:  OKAY.

16           MR. SELWYN:  UNDER SUBPART 1 IN THE THIRD

17   PARAGRAPH.

18           THE COURT:  OKAY.

19           MR. SELWYN:  WE WOULD PROPOSE THAT THE

20   TERM "DECLARED ESSENTIAL" BE ADDED BEFORE IPR SINCE

21   I DON'T THINK ANY PARTY CONTENDS THAT ETSI MEMBERS

22   MUST LICENSE THEIR NON-DECLARED ESSENTIAL PATENTS

23   ON FRAND TERMS.

24           THE COURT:  OKAY.

25           MR. SELWYN:  AND THE LAST ONE, ON SUBPART

897

1    3 IN THE SAME PARAGRAPH, WE WOULD SUGGEST REPLACING

2    THE WORD "APPLIED" WITH "MIGHT REASONABLY COVER,"

3    WHICH WOULD CONFORM WITH THE LANGUAGE UNDER SUBPART

4    2 IN THE SECOND PARAGRAPH.

5                MS. MAROULIS:  I'M SORRY, YOUR HONOR.  I

6    COULDN'T FIND THE PLACE TO WHICH MR. SELWYN WAS

7    REFERRING.

8                MR. SELWYN:  I APOLOGIZE.  I DID THAT TOO

9    FAST.

10               MS. MAROULIS:  CAN YOU GO BY LINE NUMBER,

11   PLEASE?

12               MR. SELWYN:  YES, LINE 18, AND I'M

13   LOOKING AT SUBPART 3 OF THE THIRD PARAGRAPH WHICH

14   READ "ETSI MEMBERS RELIED ON THE REQUIREMENT WHEN

15   THEY ADOPTED THE STANDARDS TO WHICH THE DECLARED

16   ESSENTIAL IPR APPLIED."

17               WE'RE PROPOSING THAT THE WORD "APPLIED"

18   BE REPLACED WITH "MIGHT REASONABLY COVER," WHICH IS

19   THE LANGUAGE THAT'S ALSO USED IN THE SECOND

20   PARAGRAPH AT LINE 11.

21               MS. MAROULIS:  YOUR HONOR, WE OBJECT TO

22   THAT.

23               THE COURT:  OKAY.  I THINK ON THIS

24   INSTRUCTION I FOLLOWED MORE SAMSUNG'S INSTRUCTION

25   ON THIS.  BUT THAT'S FINE, I'LL TAKE A LOOK AT

1    THAT.

2              OKAY.  IS THAT IT?

3              MR. SELWYN:  YES, THANK YOU, YOUR HONOR.

4              THE COURT:  OKAY.  ALL RIGHT.

5              LET'S HEAR FROM SAMSUNG.

6              MR. JOHNSON:  YOUR HONOR, JUST BRIEFLY

7    BEFORE WE TALK ABOUT THE JURY INSTRUCTIONS, TO

8    ANSWER THAT QUESTION ON IPAD 2 FOR THE VERDICT

9    FORM.

10              THE COURT:  YES, LET ME GO GET THAT.

11              OKAY.

12              MR. JOHNSON:  THE IPAD 2 WAS OFFERED BOTH

13    WITH IOS 4 AND IOS 5, SO THAT MEANS IT'S BOTH

14    LITERAL AND DOCTRINE OF EQUIVALENTS.

15              THE COURT:  OKAY.

16              MR. JOHNSON:  AND WE OFFERED -- ACTUALLY,

17    WE ADMITTED JX 1050, WHICH IS AN IPAD 2 WITH IOS 4,

18    AND JX 1051, WHICH WAS AN IPAD 2 WITH IOS 5.

19              WHEN THE IPAD 2 WAS FIRST INTRODUCED, IT

20    HAD IOS 4 ON IT.

21              MR. SELWYN:  I AGREE WITH THAT, BUT I

22    THINK THE EVIDENCE WAS EVEN IN IOS 4, THE IPAD 2

23    NEVER HAD ARROW BUTTONS.  SO IT ONLY HAD THE

24    SWIPING AND, THEREFORE, WOULD ONLY BE ACCUSED UNDER

25    DOCTRINE OF EQUIVALENTS.

```
 1              THE COURT:  DO YOU AGREE WITH THAT,
 2     MR. JOHNSON?
 3              MR. JOHNSON:  THAT -- LET ME LOOK AT
 4     THAT.
 5              THE COURT:  OKAY.  ALL RIGHT.  GO AHEAD.
 6              LET'S GO.
 7              MR. ZELLER:  THANK YOU, YOUR HONOR.
 8              WITH RESPECT TO INSTRUCTION NUMBER 8, WE
 9     OBJECT ON THE GROUNDS THAT THIS IS NOT PROPERLY
10     ENUMERATED.  THE -- WE'RE OBJECTING TO INSTRUCTION
11     NUMBER 8 BECAUSE IT DOES NOT PROPERLY ENUMERATE THE
12     ACTS FOR WHICH DESIGN PATENT INFRINGEMENT MAY BE
13     FOUND.
14              IN ADDITION, WE OBJECT TO THE
15     CHARACTERIZATION OF THE REGISTRATION IN LINES 23
16     THROUGH 24.
17              WITH RESPECT TO INSTRUCTION NUMBER
18     12.1 --
19              THE COURT:  I'M SORRY.  CAN YOU GIVE ME
20     THE PAGE NUMBER FOR 8?  BECAUSE THESE ARE OUT OF
21     ORDER.
22              MR. ZELLER:  YES.  WITH RESPECT TO NUMBER
23     8, IN LINES 4 --
24              THE COURT:  NO.  THE PAGE NUMBER, PLEASE,
25     FOR NUMBER 8.
```

1900

```
 1              MR. ZELLER:  OH, I'M SORRY.  21 OF THE --

 2     I HAVE THEM AS THEY WERE PROVIDED BY THE COURT ON A

 3     ROLLING BASIS.  I DON'T KNOW IF THAT'S THE FINAL

 4     PAGE, BUT IT'S FINAL JURY INSTRUCTION NUMBER 8,

 5     SUMMARY OF CONTENTIONS.

 6              THE COURT:  OKAY.  I HAVE IT NOW.

 7              I'M SORRY.  WHAT WERE YOUR OBJECTIONS ON

 8     THIS ONE?

 9              MR. ZELLER:  IN LINE -- STARTING ON LINE

10     4.

11              THE COURT:  YES.

12              MR. ZELLER:  IT ENUMERATES A SERIES OF

13     ACTS BY MAKING, IMPORTING, USING, SELLING.

14              THE COURT:  YES.

15              MR. ZELLER:  AND IN FACT, DESIGN PATENT

16     INFRINGEMENT DOES NOT FOLLOW UTILITY PATENT LAW IN

17     TERMS OF WHAT ACTS MAY BE INFRINGING.

18              THE COURT:  SO WHICH ACTS NEED TO BE

19     REMOVED FOR THAT ONE?

20              MR. ZELLER:  THE STATUTORY LANGUAGE IS

21     APPLIES, SELLS, OR EXPOSES FOR SALE.

22              THE COURT:  APPLIES, YOU SAID?

23              MR. ZELLER:  APPLIES.

24              THE COURT:  APPLIES, SELLS, OR OFFERS FOR

25     SALE?  WHAT DOES THE APPLIES MEAN?
```

1          MR. ZELLER:  APPLYING THE DESIGN TO AN

2     ARTICLE.

3          THE COURT:  OH.  OKAY.  WHAT ELSE?

4          MR. ZELLER:  AND THEN WITH RESPECT TO THE

5     CHARACTERIZATION I'M REFERRING TO, THIS STARTS ON

6     LINE 23, IT STARTS ON LINE 23, AND IT SAYS "THIS

7     TRADE DRESS RELATES TO THE IPHONE."

8          WE JUST DON'T THINK THAT'S AN APPROPRIATE

9     PLACE TO CHARACTERIZE IT.  IF APPLE WANTS TO ARGUE

10    ABOUT THAT, IT SHOULD.  BUT IN OUR PERSPECTIVE,

11    THERE'S AN ISSUE AS TO WHETHER OR NOT ANY OF THIS

12    STUFF IS BEING USED BY APPLE.

13         THE COURT:  ALL RIGHT.  GO AHEAD.  THAT'S

14    DENIED.  I THINK THAT WAS IN THE PRELIMINARY

15    INSTRUCTIONS.

16         GO AHEAD.

17         MR. ZELLER:  WITH RESPECT TO INSTRUCTION

18    12.1, WE OBJECT TO THE DEFINITION OF THE SALE IN

19    THE UNITED STATES.

20         THE COURT:  12.1, OKAY, YEAH, YOU'VE MADE

21    THAT BEFORE.

22         MR. ZELLER:  CORRECT.  WE'VE MADE THESE

23    ARGUMENTS PREVIOUSLY.

24         WE OBJECT TO THE COURT'S OMISSION OF OUR

25    PROPOSED INSTRUCTION 17 RELATING TO WRITTEN

```
 1    DESCRIPTION REQUIREMENT.

 2              NUMBER 19 PERTAINING TO STATUTORY BAR, WE

 3    BELIEVE THAT THOSE ARE RELEVANT TO THE '163 PATENT.

 4              THE COURT:  ALL RIGHT.  WELL, ON 17 I

 5    JUST USED THE NORTHERN DISTRICT'S MODEL

 6    INSTRUCTION, AND I USED THAT AS THE BASE FOR

 7    STATUTORY BAR AS NUMBER 19.

 8              GO AHEAD, PLEASE.  WHAT'S NEXT?

 9              MR. ZELLER:  IN ADDITION, WE OBJECT TO

10    THE OMISSION OF OUR PROPOSED INSTRUCTION ON

11    INDEFINITENESS --

12              THE COURT:  OKAY.

13              MR. ZELLER:  -- WHICH WAS DOCKET NUMBER

14    1809.

15              THE COURT:  YOU KNOW, FOR WHATEVER YOU

16    HAVE ALREADY ARGUED OR HAS ALREADY BEEN IN THE

17    HUNDREDS OF PAGES THAT HAVE ALREADY BEEN FILED, I

18    SAY THAT'S BEEN PRESERVED.

19              SO FOR NOW I'D LIKE YOU TO FOCUS ON

20    THINGS THAT HAVEN'T BEEN RAISED YET.

21              MR. ZELLER:  THANK YOU, YOUR HONOR.

22    THAT'S HELPFUL TO KNOW.

23              I MAY ACTUALLY NEED A MINUTE OR TWO TO GO

24    THROUGH THEM, BECAUSE OUR UNDERSTANDING OF IT WAS

25    THAT EVEN IF IT HAD BEEN RAISED PREVIOUSLY AND
```

1    ARGUED, WE NEEDED TO RAISE IT AS PART OF THIS LIST.

2          THE COURT:  WE JUST RAISED IT DURING THE

3    SAME HEARING.  THE WHOLE THING ABOUT WHETHER IT HAS

4    TO BE DELIVERED IN THE U.S. WAS IN YOUR HIGH

5    PRIORITY OBJECTION THIS IS MORNING AND WE JUST

6    TALKED ABOUT IT.

7          MR. ZELLER:  I UNDERSTAND, YOUR HONOR.

8    BUT THIS IS, AGAIN, FOR THE RECORD.

9          THE COURT:  THAT'S FINE.  GO AHEAD THEN.

10          MR. ZELLER:  SAME POINT WITH RESPECT TO

11    INSTRUCTION NUMBER 21.  IT FAILS TO REQUIRE THE

12    JURY TO CONSIDER THE LOCATION OF DELIVERY.

13          NUMBER 26, WE OBJECT TO THE FIRST PANDUIT

14    FACTOR BECAUSE IT SHOULD READ INSTEAD, "DEMAND FOR

15    PATENTED INVENTION."

16          WE OBJECT TO THE OMISSION OF OUR

17    INSTRUCTION 29.1.

18          NUMBER 31 WE DO NOT BELIEVE ACCURATELY

19    STATES THE LAW OR THE FACTS IN THIS CASE.

20          IN LINE 4, THE WORD "DESIGN" SHOULD BE

21    REPLACED WITH THE WORD "INVENTION."

22          AND WE THINK ALSO IT SHOULD BE MADE CLEAR

23    THAT IT APPLIES TO EACH SAMSUNG ENTITY AND SHOULD

24    BE REPLACED WITH THE WORD "APPLE'S."

25          AND THEN WE ALSO OBJECT BECAUSE IT DOES

10904

1    NOT INCLUDE A STATEMENT OF THE PATENTEE'S BURDEN OF

2    PROOF.

3              WITH RESPECT TO INSTRUCTION NUMBER 32, WE

4    OBJECT BASED ON OUR PRIOR CLAIM CONSTRUCTION

5    POSITIONS.

6              AND WITH RESPECT TO THE DESCRIPTION HERE

7    OF THE '087 DESIGN PATENT, THIS MAY JUST BE AN

8    ERROR OF SOME KIND, IT HAS QUOTATION MARKS AROUND

9    PART OF THE DESCRIPTION THERE AS TO WHAT IT COVERS,

10   AND ALSO WE OBJECT TO THE PHRASE "THE PATENTED

11   DESIGN" SINCE IT SOUNDS LIKE THE COURT IS ENDORSING

12   IT.

13             MR. JACOBS:  WE HAVE NO OBJECTION TO THE

14   DELETION OF THE QUOTATIONS, YOUR HONOR.

15             THE COURT:  WHICH QUOTATIONS IS THAT?

16             MR. JACOBS:  THAT'S AT 18, LINE 18 TO 19

17   ON PAGE 55 OF INSTRUCTION NUMBER 32.

18             THE COURT:  SO JUST LEAVE IT AS "THE

19   D'087 PATENT CLAIMS AN ORNAMENTAL DESIGN OF AN

20   ELECTRONIC DEVICE AS SHOWN IN FIGURES 1 THROUGH

21   48," AND NOTHING ELSE?

22             MR. JACOBS:  NO.  I'M SORRY.  THERE

23   LITERALLY ARE QUOTATION MARKS THAT MR. ZELLER

24   POINTED OUT THAT I HADN'T NOTICED BEFORE AT LINE

25   19, AND THE QUOTATION MARKS THEMSELVES --

```
 1              THE COURT:  YEAH, BUT THAT'S THE

 2     CONVENTION FOR ALL OF THESE OF DESCRIBING -- IF YOU

 3     LOOK AT LINES 13 AND 14 --

 4              MR. JACOBS:  THANK YOU, YOUR HONOR.

 5              MR. ZELLER:  YES, THAT'S TRUE.

 6              BUT IN THIS PARTICULAR INSTANCE, BECAUSE

 7     IT CALLS ATTENTION TO ITSELF, IT'S JUST, IN MY

 8     VIEW, SOMEWHAT CONFUSING BECAUSE IT LOOKS LIKE IT'S

 9     QUOTING SOMETHING FROM THE PATENT OR FROM SOME

10     OTHER SOURCE.

11              BUT ALSO EMBEDDED IN THIS IS "OF THE

12     PATENTED DESIGN."

13              MR. JACOBS:  THAT LANGUAGE HAS BEEN

14     STABLE FOR A LONG TIME, YOUR HONOR.

15              THE COURT:  YEAH, THAT WAS MY

16     CONSTRUCTION.

17              SO GO AHEAD, PLEASE.

18              MR. ZELLER:  WITH RESPECT TO INSTRUCTION

19     NUMBER 33, WE OBJECT THAT IT DOES NOT DISTINGUISH

20     BETWEEN THE SAMSUNG ENTITIES.

21              WITH RESPECT TO NUMBER 34, WE HAVE THE

22     SAME OBJECTIONS AS BEFORE.  THEY DO NOT CORRECTLY

23     STATE THE ACTS THAT CONSTITUTE DESIGN PATENT

24     INFRINGEMENT.

25              THE COURT:  WE'LL FIX NUMBER 33.
```

 1           MR. ZELLER:  AND THEN ALSO WE HAVE THE

 2    SAME OBJECTIONS ABOUT WHAT CONSTITUTES A SALE

 3    WITHIN THE UNITED STATES TO THIS AS WELL.

 4           AND THEN ALSO, WE WOULD ADD THAT WE THINK

 5    WITH RESPECT TO 34.1, THAT -- SINCE IT DOES COMMENT

 6    ON HOW SIZE IS NOT PERTINENT, WE THINK IT SHOULD BE

 7    CLARIFIED TO SAY THAT PROPORTIONS DO MATTER.

 8           THERE WAS TESTIMONY ON THAT DURING THE

 9    COURSE OF THE TRIAL, AND WE DON'T WANT THE JURY TO

10    BE CONFUSED THINKING THAT THEY CAN'T CONSIDER THE

11    PROPORTIONS.

12           THE COURT:  OKAY.  THAT'S OVERRULED.

13           GO AHEAD, PLEASE.

14           MR. ZELLER:  WITH RESPECT TO -- WE OBJECT

15    THAT INSTRUCTION 44.4 AT DOCKET NUMBER 1860,

16    EXHIBIT C, WHICH IS ABOUT FUNCTIONALITY, IS NOT

17    BEING GIVEN.

18           WITH RESPECT TO NUMBER -- TO INSTRUCTION

19    34.1, WE OBJECT BECAUSE WE DO NOT BELIEVE IT

20    ACCURATELY STATES THE LAW.  AS WE MENTIONED

21    EARLIER, WE BELIEVE THAT THE JURY SHOULD BE

22    INSTRUCTED TO FACTOR OUT FUNCTIONALITY ELEMENTS AS

23    PART OF THE INFRINGEMENT ANALYSIS.

24           WE ALSO OBJECT TO THE PHRASE "MINOR

25    DIFFERENCES" SHOULD NOT PREVENT A FINDING OF

1    INFRINGEMENT SINCE IT DOESN'T DEFINE WHAT "MINOR

2    DIFFERENCE" IS.

3            AND ALSO, IT SUGGESTS SOMETHING IN

4    TENSION WITH NUMBER 1, THE STATE OF THE LAW OF THE

5    FEDERAL CIRCUIT, BUT IT DOESN'T MAKE CLEAR THAT

6    MINOR DIFFERENCES SHOULD NOT PREVENT A FINDING OF

7    INFRINGEMENT, THAT DOESN'T SUPERSEDE THE TEST, THE

8    GORHAM TEST.

9            WE ALSO OBJECT THAT, IN THIS VEIN, THAT

10   OUR PROPOSED INSTRUCTION NUMBER 44.4 WAS NOT GIVEN,

11   AS WELL AS OUR PROPOSED INSTRUCTION 34.1, AS WELL

12   AS 34.2, AND 43.3.

13           WE ALSO OBJECT TO THE OMISSION OF OUR

14   PROPOSED INSTRUCTIONS 34.4B, AS WELL AS 34.6.

15           WITH RESPECT TO INSTRUCTION 36, WE OBJECT

16   TO THE FILING DATES THAT ARE PROVIDED THERE.  WE

17   DON'T BELIEVE THAT THOSE ARE THE APPROPRIATE DATES

18   THAT SHOULD BE USED.

19           THERE WAS NO EVIDENCE THAT WAS ADDUCED

20   THAT ALLOWS APPLE TO CLAIM THE EARLIER DATES.

21   THESE WERE CONTINUATIONS, AND IT WAS APPLE'S BURDEN

22   TO PROVE IT AND THEY DID NOT, SO WE THINK THE

23   FILING DATE FOR '677 SHOULD BE NOVEMBER 18TH, 2008

24   AND FOR D'087 SHOULD BE JULY 30TH, 2007.

25           WITH RESPECT TO INSTRUCTION NUMBER 38, I

1    WON'T REITERATE OUR PRIMARY OR OUR PREVIOUS

2    OBJECTIONS; HOWEVER, WE DO THINK THAT THE

3    INSTRUCTION DEVIATES FOR REASONS THAT WE'VE ALREADY

4    TALKED ABOUT FROM THE SUPREME COURT'S HOLDING IN

5    KSR.

6            WE OBJECT ON THE GROUNDS THAT OUR

7    PROPOSED INSTRUCTION 38.2 WAS NOT GIVEN, AS WELL AS

8    38.3.

9            WITH RESPECT TO THE COURT'S 39,

10   INSTRUCTION NUMBER 39, WE OBJECT TO THE LAW THAT

11   THERE -- WE OBJECT THAT IT'S INCONSISTENT WITH THE

12   LAW ON FUNCTIONALITY IN A NUMBER OF RESPECTS.

13           I DON'T KNOW IF THE COURT WANTS

14   ELABORATION ON THAT, BUT THE COURT IS AWARE THAT

15   WE, OF COURSE, HAVE TAKEN CONTRARY POSITIONS AS TO

16   WHAT IT IS THAT WE THINK THAT FUNCTIONALITY COVERS

17   IN THIS CONTEXT.

18           I KNOW THE COURT HAS ALREADY COMMENTED

19   THAT AT LEAST IT DID NOT FIND SOME OF THE CASE LAW

20   THAT WE'RE RELYING ON TO BE PERSUASIVE.

21           AND FOR RECORD PURSES, WE DO OBJECT THAT

22   THE COURT IS NOT GIVING OUR INSTRUCTION NUMBER 39

23   FROM DOCKET 1860.

24           AND ALSO, THE SAME IS TRUE FOR OUR

25   PROPOSED INSTRUCTIONS 39.1, 39.2 AND 39.3.

```
 1              WITH RESPECT TO INSTRUCTION NUMBER 40,

 2    THERE'S LANGUAGE FROM THE NORTHERN DISTRICT OF

 3    CALIFORNIA MODEL INSTRUCTION THAT'S BEEN OMITTED

 4    THAT WE THINK SHOULD BE INCLUDED, AND THAT IS THE

 5    LANGUAGE THAT SAYS "A DAMAGES AWARD SHOULD PUT THE

 6    PATENT HOLDER IN APPROXIMATELY THE FINANCIAL

 7    POSITION IT WOULD HAVE BEEN IN HAD THE INFRINGEMENT

 8    NOT OCCURRED, BUT IN NO EVENT MAY THE DAMAGES AWARD

 9    BE LESS THAN A REASONABLE ROYALTY."

10              AND THAT'S FROM NORTHERN DISTRICT OF

11    CALIFORNIA MODEL B.5.1.

12              WITH RESPECT --

13              THE COURT:  THAT'S FOR UTILITY PATENTS.

14              MR. ZELLER:  WELL, IT'S A -- THAT IS

15    TRUE, YOUR HONOR.

16              IT ALSO, HOWEVER, IS A WELL SETTLED

17    PROPOSITION OF LAW FOR DAMAGES, PERIOD.  AND THAT'S

18    WHY WE THINK IT'S APPROPRIATE IN THIS CONTEXT.

19              THE COURT:  OKAY.

20              MR. ZELLER:  THE -- WITH RESPECT TO THE

21    COURT'S INSTRUCTION NUMBER 41, WHICH DEALS WITH

22    LOST PROFITS, WE HAVE OBVIOUSLY DISCUSSED THAT

23    PREVIOUSLY, INCLUDING IN OUR WRITTEN OBJECTIONS, SO

24    I WILL NOT REPEAT THOSE, BUT WE DO REASSERT THOSE.

25              WITH RESPECT TO INSTRUCTION NUMBER 42,
```

```
 1    IT'S REALLY THE SAME SITUATION.  WE ARE CONCERNED

 2    ABOUT, IN PARTICULAR, THESE INSTRUCTIONS IN

 3    IMPLYING THAT APPLE CAN OBTAIN RECOVERIES THAT WE

 4    DON'T THINK ARE ALLOWED UNDER THE LAW, AS WELL AS

 5    RISKING A DOUBLE RECOVERY.

 6              THERE'S ALSO SOME PARTICULAR LANGUAGE WE

 7    THINK IN THIS INSTRUCTION THAT'S OF CONCERN.

 8              IN THE SECOND PARAGRAPH, THE FIRST

 9    SENTENCE, THE COURT USES THE PHRASE, QUOTE, "OR

10    WITH WHICH IT IS USED," END QUOTE, AND THAT'S IN

11    THE CONTEXT OF APPLYING THE DESIGN, OR TO WHICH THE

12    DESIGN IS APPLIED, AND THEN THIS LANGUAGE "OR WITH

13    WHICH IT IS USED."

14              THOSE WORDS DO NOT APPEAR IN THE STATUTE

15    AND THEY ARE -- IT'S NOT LANGUAGE THAT'S BEEN

16    ENDORSED BY ANY CASE THAT WE'VE BEEN ABLE TO FIND.

17              THE STATUTE'S PLAIN LANGUAGE SAYS THAT

18    WHAT CAN BE AWARDED ARE THE PROFITS FROM THE

19    ARTICLE TO WHICH THE DESIGN IS APPLIED.

20              THE COURT:  I DON'T EVEN KNOW "OR WITH

21    WHICH IT IS USED" MEANS.

22              MR. ZELLER:  THAT WAS GOING TO BE MY NEXT

23    POINT, TOO, THAT IT'S VERY, VERY GENERAL AND IT

24    SUGGESTS THAT, CONTRARY TO THE LAW AS WELL, THAT

25    ANYTHING ASSOCIATED WITH THE ARTICLE THAT HAS THE
```

```
 1    SUPPOSEDLY INFRINGING DESIGNS COULD BE THE SUBJECT

 2    OF A DISGORGEMENT AWARD.

 3              MR. JACOBS:  YOUR HONOR, THAT WAS

 4    SAMSUNG'S PROPOSED LANGUAGE.

 5              MR. ZELLER:  WE'RE OBJECTING TO IT.

 6              BEFORE JURY RETIRES, OR BEFORE THE COURT

 7    CHARGES, WE HAVE A RIGHT TO RAISE OUR OBJECTIONS.

 8    THERE CAN BE NO WAIVER OF THAT.

 9              IT'S INCORRECT.  WHATEVER THE SOURCE OF

10    IT IS --

11              THE COURT:  I ASSUME THAT, MR. JACOBS,

12    YOU HAVE NO PROBLEM WITH TAKING OUT "OR WITH WHICH

13    IT IS USED."

14              MR. JACOBS:  YOUR ASSUMPTION IS CORRECT,

15    YOUR HONOR.

16              THE COURT:  ALL RIGHT.  SO THAT'S GONE.

17              MR. ZELLER:  THERE IS ALSO A SENTENCE

18    THAT IS DISCUSSED, AND I THINK IT'S IN THIS

19    INSTRUCTION, YES, IT'S THE SECOND PARAGRAPH AT THE

20    LAST SENTENCE, AND IT TALKS ABOUT BASICALLY

21    DISGORGEMENT OF NON-PARTIES, SUCH AS, AND

22    PRESUMABLY THOSE WOULD BE THE CARRIERS.

23              THAT DOESN'T SEEM TO BE APPLICABLE HERE,

24    AND ALSO IT COULD POTENTIALLY LEAD TO CONFUSION.

25    WE DON'T THINK THAT'S APPLICABLE.
```

```
1              WE ALSO OBJECT TO THE FAILURE OF -- TO

2    INSTRUCT ON A CAUSATION REQUIREMENT ALONG THE LINES

3    OF WHAT WE HAD PROPOSED IN OUR INSTRUCTION NUMBER

4    42.

5              THE COURT:  LET ME HEAR FROM MR. JACOBS,

6    WHAT'S YOUR VIEW ON SELLERS IN THE CHAIN OF

7    DISTRIBUTION?

8              I DO THINK THIS WAS ORIGINALLY A SAMSUNG

9    INSTRUCTION, BUT YOU'RE NOT EVEN ASKING -- YOU'RE

10   NOT ASKING FOR THE PROFITS OF SAMSUNG'S CARRIERS,

11   ARE YOU?

12             MR. JACOBS:  NO, YOUR HONOR.  WE'RE

13   ASKING -- BUT THE SELLERS THERE WOULD REFER TO THE

14   STA AND SEA.

15             THE COURT:  OH, I SEE.

16             MR. ZELLER:  WELL, THAT'S CERTAINLY NOT

17   CLEAR FROM THAT LANGUAGE.

18             THE COURT:  WELL, IF YOU WANT DIFFERENT

19   LANGUAGE, WHY DON'T YOU PROPOSE IT?

20             MR. ZELLER:  OUR PROPOSAL DIDN'T COME

21   OUT.

22             I DON'T THINK, FRANKLY, THAT IT'S A

23   CORRECT STATEMENT OF THE LAW, EITHER, THAT SOMEHOW

24   ONE OF THE U.S. ENTITIES COULD BE ORDERED TO PAY

25   SEC'S PROFITS.
```

```
1              THE COURT:  I'M SORRY.  LET ME JUST STOP
2       YOU.
3              MR. JACOBS, DO YOU HAVE ANY PROBLEM WITH
4       JUST STRIKING THAT LAST SENTENCE?  BECAUSE IT
5       ALREADY SAYS "TOTAL PROFIT OF SEC, SEA AND/OR STA
6       MEANS THE ENTIRE PROFIT ON THE SALE OF AN ARTICLE
7       TO WHICH THE PATENTED DESIGN IS APPLIED."  THAT'S
8       THE FIRST SENTENCE OF THIS PARAGRAPH.
9              MR. JACOBS:  WHAT I WOULD SUGGEST, YOUR
10      HONOR, INSTEAD IS, "BUT ALSO OF OTHER SELLERS IN
11      THE CHAIN OF DISTRIBUTION" BE MODIFIED TO "BUT ALSO
12      OF SAMSUNG'S SUBSIDIARIES WHO SELL IN THE CHAIN OF
13      DISTRIBUTION" OR "WHO ARE IN THE CHAIN OF
14      DISTRIBUTION."
15             THE COURT:  DO YOU HAVE ANY OBJECTION TO
16      THAT?
17             MR. ZELLER:  YES, YOUR HONOR.  THAT'S A
18      COMPLETE MISSTATEMENT OF THE LAW.
19             AND IN FACT, WHAT THAT DOES IS -- IT'S
20      ESSENTIALLY SAYING THAT, CONTRARY TO ALL THE OTHER
21      INSTRUCTIONS, ESSENTIALLY THEY CAN BE HELD LIABLE
22      FOR ANOTHER PARTY'S PROFITS THAT WERE EARNED, EVEN
23      WITHOUT A FINDING OF LIABILITY AS TO THAT OTHER
24      ENTITY, WHICH IS JUST DEAD WRONG.
25             AND, IN FACT, CONTRIBUTORY AND SECONDARY
```

```
 1    THEORIES OF LIABILITY ARE WELL DEFINED BY THE

 2    SUPREME COURT AND THEY HAVE ADDITIONAL

 3    REQUIREMENTS.

 4            THIS IS JUST A NAKED STATEMENT THAT ONE

 5    PARTY, BECAUSE OF A SUBSIDIARY OR BECAUSE ANY OTHER

 6    RELATIONSHIP, CAN SIMPLY BE FORCED TO PAY FOR THE

 7    PROFITS OF ANOTHER WITHOUT THE REQUIREMENTS OF

 8    SECONDARY LIABILITY IS JUST WRONG AND THERE IS NO

 9    AUTHORITY THAT APPLE CAN CITE FOR THAT PROPOSITION.

10            MR. JACOBS:  THIS IS THE IPO MODEL, YOUR

11    HONOR, BUT I DON'T THINK THAT'S WHAT THE LANGUAGE

12    SAYS.

13            MR. ZELLER:  BUT CLEARLY WHAT THE IPO --

14            MR. JACOBS:  MR. ZELLER IS OVER READING

15    THE -- WAY OVER READING THE LANGUAGE.

16            MR. ZELLER:  WELL, IT'S AT BEST

17    AMBIGUOUS, AND IT'S ALSO INAPPLICABLE HERE, AND NOW

18    APPLE IS ATTEMPTING TO MASSAGE IT INTO SOMETHING

19    THAT IS A COMPLETELY UNDISCLOSED THEORY OF RECOVERY

20    AGAINST --

21            THE COURT:  I DON'T THINK YOU NEED IT.  I

22    DON'T THINK WE NEED IT.  THE FIRST PARAGRAPH OF

23    THAT SENTENCE SAYS "TOTAL PROFIT OF SEC, SEA AND/OR

24    STA MEANS THE ENTIRE PROFIT ON THE SALE OF AN

25    ARTICLE TO WHICH THE PATENTED DESIGN IS APPLIED AND
```

1    NOT JUST A PORTION OF THE PROFIT ATTRIBUTABLE TO

2    THE DESIGN ORNAMENTAL ASPECTS COVERED BY THE

3    PATENT."

4            I DON'T THINK WE NEED THAT LAST SENTENCE.

5    I WILL STRIKE THE WHOLE THING.  OKAY?

6            MR. ZELLER:  WITH RESPECT TO THE THIRD

7    PARAGRAPH AND THE FIRST SENTENCE, THERE'S THE USE

8    OF THE WORDS "ALLEGED TO" AND WE WOULD PROPOSE THAT

9    THAT -- THAT THOSE WORDS "ALLEGED TO" BE DELETED

10   AND SUBSTITUTE THE WORD "THAT" INSTEAD.

11           THE CONCERN IS THAT THE JURY MAY THINK

12   JUST ALLEGING IT IS ENOUGH.

13           THE COURT:  OKAY.  THAT'S FINE.  THAT'S

14   FINE.

15           MR. ZELLER:  AND THEN FOR REASONS WE'VE

16   ALREADY TALKED ABOUT PREVIOUSLY, YOUR HONOR, BOTH

17   INCLUDING ON THE DAUBERT MOTION AND PRIOR MOTIONS,

18   WE DO OBJECT TO THE LACK OF AN APPORTIONMENT

19   INSTRUCTION.

20           AND ALSO WE OBJECT TO NOT INCLUDING THE

21   LANGUAGE THAT WE PROPOSED, BECAUSE WE DON'T THINK

22   IT'S A CORRECT STATEMENT OF THE LAW THAT JUST

23   BECAUSE THE DESIGN, AS APPLE ALLEGES, APPLIED TO

24   THE FRONT FACE OF THESE ARTICLES, THE OUTSIDE OF

25   IT, THAT THEY CAN THEN RECOVER FOR THE UNDERLYING

TECHNOLOGY.

AND, IN FACT, THAT'S THE EXACT KIND OF SITUATION THAT THE PIANO CASES FOUND WERE A WINDFALL, AND WE BRIEFED THIS PREVIOUSLY, YOUR HONOR.

THE COURT:  I KNOW THERE'S NO APPORTIONMENT FOR SAMSUNG PROFITS IN DESIGN PATENT CASES.

I'M ASSUMING THERE IS APPORTIONMENT IF APPLE IS ASKING FOR APPLE'S PROFITS.  IS THAT RIGHT?

MR. ZELLER:  ABSOLUTELY.

THE COURT:  YEAH.

MR. ZELLER:  AND ALSO, YOUR HONOR, WHAT I'M TALKING ABOUT WITH THE PIANO CASES, JUST TO BE CLEAR, THERE'S NOT APPORTIONMENT.  IT'S ACTUALLY THE DEFINITION OF WHAT THE ARTICLE IS.

AND IN THE PIANO CASES, BASICALLY THE ARTICLE WAS THE OUTSIDE OF THE PIANO AND THE RECOVERY THAT WAS GIVEN WAS FOR ALL OF THE PROFITS FROM THE SALE OF THE PIANO, AND THE COURT SAID THAT WAS ESSENTIALLY A WINDFALL BECAUSE THE WORKINGS OF IT, IT'S NOT APPORTIONMENT, IT'S RATHER THAT WAS THE ARTICLE TO WHICH THE DESIGN WAS APPLIED. THAT'S WHAT THE PROFITS HAVE TO BE FROM.

```
 1              THE COURT:  OKAY.

 2              MR. ZELLER:  WITH RESPECT TO NUMBER 41 --

 3   EXCUSE ME, NUMBER 42.1 ON DESIGN PATENT DAMAGES,

 4   PROFITS, WE WOULD OBJECT TO THE OMISSION OF OUR

 5   PROPOSED INSTRUCTION.

 6              WITH RESPECT TO NUMBER 43, WE HAVE

 7   DISCUSSED THIS ABOUT OUR -- OUR CONCERN ABOUT IT

 8   NOT BEING CLEAR AND THE LIKE, WHICH I WON'T

 9   REITERATE, AS WELL AS WE DISAGREE THAT IT'S A

10   CORRECT STATEMENT OF THE LAW.

11              BUT WE ALSO THINK AT A BARE MINIMUM, THIS

12   SHOULD CLARIFY THAT THE ROYALTY, THE REASONABLE

13   ROYALTY CAN ONLY BE CONSIDERED IF LIABILITY IS

14   FOUND.

15              THE LANGUAGE IS SOMEWHAT BLUNT IN A SENSE

16   WHERE IT JUST SEEMS TO SUGGEST THAT THEY -- IN NO

17   EVENT CAN APPLE OBTAIN ANYTHING OTHER THAN A

18   REASONABLE ROYALTY WITHOUT ANY OTHER KIND OF

19   PREDICATE.  SO WE WOULD JUST SIMPLY SUGGEST THAT WE

20   CLARIFY THAT.

21              MR. JACOBS:  YOUR HONOR, IT REFERS TO

22   INFRINGING SALES.

23              THE COURT:  YEAH, GO AHEAD, PLEASE.

24              MR. ZELLER:  WITH RESPECT TO NUMBER 43.2,

25   WE OBJECT TO THE OMISSION OF OUR PROPOSED
```

1    INSTRUCTION.

2           IN NUMBER 44, IN THE FOURTH PARAGRAPH,

3    FIRST SENTENCE, WE THINK THAT THE WORD "DESIGN"

4    SHOULD BE INCLUDED BEFORE "PATENT" TO MAKE IT CLEAR

5    THAT THIS IS DESIGN PATENTS.

6           I UNDERSTAND IT'S IN THE HEADING, BUT

7    JUST TO ELIMINATE ANY QUESTIONS.

8           THE COURT:  THAT'S FINE.

9           MR. ZELLER:  SINCE OBVIOUSLY THEY'RE

10   DEALING WITH MORE THAN ONE.

11          WITH RESPECT TO NUMBER 45, WE HAVE MADE

12   THIS OBJECTION BEFORE AND WE WOULD SIMPLY REITERATE

13   THAT THIS INSTRUCTION SHOULDN'T APPLY TO -- IN THIS

14   PARTICULAR CASE FOR A HOST OF REASONS THAT WE'VE

15   ALREADY RAISED.

16          THE COURT:  WELL, THERE'S NO -- THERE IS

17   INDUCEMENT ON THE DESIGN PATENTS; CORRECT?

18          MR. ZELLER:  I'M SORRY, YOUR HONOR?

19          THE COURT:  THAT'S BEEN ALLEGED.  THERE

20   IS INDUCEMENT OF BOTH THE DESIGN AND THE UTILITY

21   PATENTS, RIGHT?  WHAT'S YOUR POINT, THAT IT'S

22   INAPPLICABLE?

23          MR. ZELLER:  WE'VE OBJECTED PREVIOUSLY,

24   YOUR HONOR, BECAUSE WE DO NOT BELIEVE, AND WE'VE

25   RAISED THIS BEFORE, THAT THIS THEORY OF INDUCEMENT

1    WAS TIMELY RAISED.

2              THE COURT:  I SEE.

3              MR. ZELLER:  THIS WAS BRIEFED PREVIOUSLY,

4    YOUR HONOR, AND THE COURT HAS RULED ON IT, BUT WE

5    JUST WANT TO --

6              THE COURT:  PRESERVE YOUR OBJECTION?

7              MR. ZELLER:  EXACTLY.

8              THE COURT:  OKAY.

9              MR. ZELLER:  ALSO, FOR THE SAME REASONS

10   WE TALKED ABOUT PREVIOUSLY, WE DON'T BELIEVE THIS

11   IS AN ACCURATE STATEMENT OF THE LAW.

12             THE COURT:  OKAY.

13             MR. ZELLER:  WITH RESPECT TO NUMBER 46,

14   WE OBJECT ON THE BASIS THAT THE COURT HAS ALREADY

15   CONSIDERED, WHICH DEALS WITH THE STANDARD FOR

16   WILLFUL INFRINGEMENT.  WE BELIEVE THAT THERE'S

17   AUTHORITY THAT SHOWS THAT IT HAS TO BE PROVEN BY

18   CLEAR AND CONVINCING EVIDENCE.

19             MR. ZELLER:  ALSO, WE OBJECT ON THE BASIS

20   THAT IT DOESN'T INCLUDE THE LANGUAGE FROM THE

21   NORTHERN DISTRICT OF CALIFORNIA MODEL PATENT JURY

22   INSTRUCTIONS, B.3.10.

23             WITH RESPECT TO INSTRUCTION NUMBER 48, WE

24   OBJECT TO THE DELETION OF THE FOURTH PARAGRAPH AS

25   WE DISCUSSED PREVIOUSLY.  AND WHAT I WAS SAYING,

1       YOUR HONOR, IS THAT THIS LANGUAGE HAS ALREADY BEEN

2       PRESENTED TO THE JURY.  IT'S IN PRELIMINARY

3       INSTRUCTION NUMBER 21.

4               AND WE'RE CONCERNED THAT ITS ABSENCE HERE

5       MAY CAUSE SOME CONFUSION.  THAT'S BEEN IN THE -- IN

6       FACT, THE COURT WILL RECALL THAT EVEN BEFORE WE

7       SUBMITTED THE PRELIMINARY INSTRUCTIONS TO THE JURY,

8       APPLE SPECIFICALLY OBJECTED TO TWO DIFFERENT

9       PARAGRAPHS IN THAT INSTRUCTION, AND THE COURT RULED

10      IN OUR FAVOR.

11              WE BELIEVE THAT THEY SHOULD GO IN.  THESE

12      ARE RIGHT OUT OF THE MODEL INSTRUCTION.

13              THE COURT:  YOU'RE RIGHT ON THAT.  THAT'S

14      NOT GOING TO BE DELETED.  IT WAS IN PRELIMINARY

15      INSTRUCTION NUMBER 21.  OKAY.

16              MR. ZELLER:  WE OBJECT ON THE GROUNDS

17      THAT OUR PROPOSED INSTRUCTIONS 48.1 AND 48.2

18      DEALING WITH TRADE DRESS ARE NOT BEING GIVEN.

19              THE COURT:  OKAY.

20              MR. ZELLER:  WITH RESPECT TO INSTRUCTION

21      NUMBER 49, WE DON'T BELIEVE THAT THIS ACCURATELY

22      STATES THE LAW, AND THE SAME IS TRUE OF INSTRUCTION

23      NUMBER 50.

24              AND WE OBJECT TO THE OMISSION OF OUR

25      INSTRUCTIONS 50.1 THROUGH 50.5.

```
 1           WITH RESPECT TO INSTRUCTION NUMBER 51, WE

 2     OBJECT THAT THIS DOES NOT PROPERLY OR CORRECTLY

 3     STATE THE LAW.

 4           IT'S ALSO MISSING A SENTENCE FROM THE

 5     MODEL THAT SHOULD BE INCLUDED IN THE FIRST

 6     PARAGRAPH, AND THAT LANGUAGE IS "IF THE FEATURE IS

 7     PART OF ACTUAL BENEFIT THAT CONSUMERS WISH TO

 8     PURCHASE WHEN THEY BUY THE PRODUCT, THEN THE

 9     FEATURE IS FUNCTIONAL."

10           THAT'S FROM THE MODEL INSTRUCTION.

11           AND WITH RESPECT TO THE CHANGES THAT WERE

12     MADE DURING THE COURSE OF THIS HEARING, WE OBJECT

13     TO THOSE AS WELL.

14           THE LAW, AS WE UNDERSTAND IT, INCLUDING

15     FROM INWOOD AND OTHER DECISIONS, IS THAT IF THE

16     INWOOD TEST IS MET, THE INQUIRY IS OVER.  THE

17     FACTORS ARE NOT CONSIDERED.

18           AND I BELIEVE THAT WE HAVE BRIEFED THIS

19     PREVIOUSLY, SO I WILL RELY ON THAT BRIEFING.

20           BUT WE DO THINK THAT IT'S -- AND THIS WAS

21     IN PARTICULAR ON SUMMARY JUDGMENT WHEN THIS WAS

22     AIRED, SO WE WOULD REITERATE THOSE GROUNDS.

23           WITH RESPECT TO NUMBER 52, WE DO NOT

24     BELIEVE THAT THIS ACCURATELY STATES THE LAW.

25           THERE'S LANGUAGE FROM THIS ABA MODEL
```

922

```
 1    INSTRUCTION NUMBER 3 THAT HAS BEEN OMITTED, AND WE

 2    THINK IT SHOULD BE INCLUDED, AND THAT IS THAT

 3    "DEFENDANT IS MAKING OR HAS MADE USE IN COMMERCE OF

 4    AN IDENTICAL OR NEARLY AN IDENTICAL TRADE DRESS."

 5              WE OBJECT TO THE OMISSION OF OUR PROPOSED

 6    INSTRUCTIONS 52.1 -- ACTUALLY, I APOLOGIZE -- YEAH,

 7    51.1 AND 52.2.

 8              WITH RESPECT TO INSTRUCTION NUMBER 53,

 9    AND WE DON'T BELIEVE THAT THIS ACCURATELY STATES

10    THE LAW AND WE THINK THAT IT SHOULD SAY THAT THE

11    PUBLICITY IS FEATURING THE TRADE DRESS.

12              ALSO, WE OBJECT ON THE GROUNDS THAT THIS

13    OMITS LANGUAGE FROM THE ABA MODEL INSTRUCTION.

14              AS TO INSTRUCTION NUMBER 55, WE OBJECT

15    THAT WE DO NOT BELIEVE THIS IS A CORRECT STATEMENT

16    OF THE LAW.

17              AS TO NUMBER 58, WE OBJECT.  THIS ALSO

18    DOES NOT CORRECTLY STATE THE LAW.

19              AND WE ALSO OBJECT THAT IT -- THAT THE

20    TWO FORMS OF MONETARY RELIEF TO WHICH APPLE MAY BE

21    ENTITLED SHOULD BE STATED AS APPLE'S ACTUAL DAMAGES

22    OR THE PROFITS OF THE SAMSUNG ENTITY YOU FIND

23    LIABLE FOR INFRINGEMENT OR DILUTION" TO MAKE IT

24    CLEAR THAT YOU CAN'T, AGAIN, HAVE THIS KIND OF

25    MIXING AND MATCHING THAT APPLE IS ADVOCATING.
```

1          WE OBJECT TO THE OMISSION OF THE SECOND

2     PARAGRAPH OF THE NINTH CIRCUIT MODEL INSTRUCTION

3     52.4.

4          AND WE BELIEVE IT'S ON CLEAR AND

5     CONVINCING EVIDENCE HERE AS WELL.

6          WE OBJECT TO THE FAILURE TO GIVE OUR

7     PROPOSED INSTRUCTION 58, OR AN INSTRUCTION THAT'S

8     CONSISTENT WITH ABA MODEL INSTRUCTION 3.6.1.

9          WE OBJECT TO THE INSTRUCTION UNDER 59 ON

10    THE GROUNDS THAT IT DOES NOT PROPERLY STATE THE

11    LAW, AND THE SAME IS TRUE FOR NUMBER 60.

12          AND THESE INCLUDE, IN PARTICULAR, YOUR

13    HONOR, THE POINT WE MADE PREVIOUSLY ABOUT THE CLEAR

14    AND CONVINCING EVIDENCE STANDARD.

15          WITH RESPECT TO 61.3, I DID RAISE THIS

16    PREVIOUSLY, BUT I WANTED TO, PERHAPS, DISCUSS IT A

17    LITTLE BIT FURTHER, AND WE DO BELIEVE THAT IT NEEDS

18    TO BE CLARIFIED, IN ADDITION TO THE OTHER PROBLEMS

19    WE'VE RAISED, THAT THERE CANNOT BE A DOUBLE

20    RECOVERY FOR BOTH PATENT AND UTILITY PATENT.  AND

21    THAT'S RIGHT OUT OF FEDERAL CIRCUIT PRECEDENT.

22          ONCE THERE'S AN AWARD OF AN INFRINGER'S

23    PROFITS FOR, AGAIN, WHETHER A UNIT OR A DEVICE OR

24    CATEGORY OF DEVICES, THERE JUST SIMPLY CANNOT BE

25    THEN A FURTHER AWARD.  THEY'RE DONE.

```
 1              AND I DON'T THINK THAT THAT'S MADE CLEAR

 2    TO THE JURY AT ALL.

 3              AND CONSIDERING THAT MR. MUSIKA HAS THIS

 4    ANALYSIS WHERE HE'S ATTEMPTING TO CLAIM THAT

 5    MULTIPLE TYPES OF RECOVERY SHOULD BE ALLOWED, WE

 6    THINK THAT'S -- IT'S VERY DANGEROUS AND THAT THEY

 7    ARE GOING TO POTENTIALLY START ADDING ON ADDITIONAL

 8    SUMS BEYOND THAT ONE RECOVERY THAT'S SIMPLY

 9    ALLOWED.

10              THE COURT:  DO YOU HAVE ANY SPECIFIC

11    LANGUAGE FOR THIS ONE?

12              MR. ZELLER:  I, I --

13              MR. JACOBS:  I DO, YOUR HONOR.

14              THE COURT:  WHAT'S THAT?

15              MR. JACOBS:  IF -- AT THE END OF THE

16    INSTRUCTION 61.3, "IF A SALE IS AWARDED ONE REMEDY,

17    THAT SAME SALE SHOULD NOT BE AWARDED A DIFFERENT

18    REMEDY."

19              THE COURT:  "IF A SALE IS AWARDED ONE

20    REMEDY, THAT SALE" --

21              MR. JACOBS:  -- "THAT SAME SALE SHOULD

22    NOT BE AWARDED A DIFFERENT REMEDY."

23              THE COURT:  HOW ABOUT "CANNOT BE"?

24              MR. JACOBS:  "CANNOT BE" --

25              THE COURT:  -- "AWARDED ANOTHER REMEDY."
```

1     DOES THAT HELP, MR. ZELLER?

2              MR. ZELLER:  I THINK IT ADVANCES THE BALL

3     A LITTLE BIT.  I THINK INSTEAD OF SOMETHING LIKE

4     "REMEDY," WE SAY SOMETHING LIKE "ONE FORM OF

5     MONETARY RECOVERY."

6              MR. JACOBS:  THAT'S FINE, YOUR HONOR, "IF

7     A SALE IS AWARDED ONE FORM OF MONETARY RECOVERY,

8     THAT SAME SALE SHOULD NOT BE AWARDED ANOTHER FORM

9     OF MONETARY RECOVERY."  WE AGREE WITH THAT.

10             THE COURT:  DO YOU WANT THAT JUST TO BE A

11    SEPARATE FINAL PARAGRAPH AT THE END?

12             MR. JACOBS:  THAT WOULD ALSO BE FINE.

13             MR. ZELLER:  THAT WOULD BE FINE.

14             THE COURT:  OKAY.  WHY DON'T I SEPARATE

15    THAT.  I THINK THAT'S IMPORTANT ENOUGH TO

16    EMPHASIZE.

17             MR. ZELLER:  AND THAT'S HELPFUL -- JUST

18    FOR THE RECORD, WE STILL OBJECT TO THE USE OF IT ON

19    A SALE FOR THE REASONS WE'VE ALREADY TALKED ABOUT,

20    BUT AT LEAST I THINK IT DOES HELP ADDRESS THE ISSUE

21    THAT I WAS RAISING ABOUT UTILITY PATENTS.

22             THE COURT:  OKAY.  BREACH OF CONTRACT IS

23    UNDISPUTED.  LAW OF MONOPOLIZATION IS UNDISPUTED.

24             BUT GO AHEAD IF YOU HAVE ANY REMAINING

25    ONES.

1        MR. ZELLER:  WITH RESPECT TO INSTRUCTION

2   NUMBER 65, WE DISPUTE THAT THE INSTRUCTION SHOULD

3   SPECIFY THAT THE RELEVANT MARKET IS A PRODUCT

4   MARKET.

5        THE COURT:  UM-HUM.

6        MR. ZELLER:  WITH RESPECT TO INSTRUCTION

7   NUMBER 68, WE OBJECT BECAUSE WE DO NOT BELIEVE THAT

8   THE STANDARD THAT THE COURT HAS RECITED THERE IS IN

9   ACCORDANCE WITH APPLE'S CONTENTIONS AS WELL AS WHAT

10  SAMSUNG IS REQUIRED TO DISCLOSE.

11       WITH RESPECT TO NUMBER 69, WE HAVE SOME

12  CONCERN ABOUT THIS LANGUAGE WHERE IT SAYS, "YOU MAY

13  CONSIDER ANY EVIDENCE THAT SAMSUNG INTENDED TO

14  DECEIVE ETSI TO THE EXTENT IT HELPS YOU -- IT HELPS

15  TO UNDERSTAND THE LIKELY EFFECT OF SAMSUNG'S

16  CONDUCT."

17       WE'RE UNAWARE OF ANY AUTHORITY THAT

18  SUPPORTS THAT, BUT WE'RE CONCERNED THAT IT'S NOT

19  VERY CLEAR.  IT'S A VAGUE SENTENCE.

20       THE COURT:  DO YOU HAVE A PROPOSAL?

21       MR. ZELLER:  I'M SORRY?

22       THE COURT:  DO YOU HAVE A PROPOSAL TO

23  CLARIFY IT?

24       MR. SELWYN:  WHILE, WHILE HE'S --

25       THE COURT:  MR. SELWYN STEPPED UP.

10927

```
1              MR. SELWYN:  I BELIEVE THAT SENTENCE IS

2       SUPPORTED BY THE ASPEN SKIING CASE, WHICH SAYS THAT

3       "IN A MONOPOLIZATION CASE, SPECIFIC INTENT IS NOT

4       REQUIRED," AS WELL AS THE BROADCOM CASE, 501 F.3D

5       297, WHICH NOTES THAT IN ASPEN SKIING, THE SUPREME

6       COURT INDICATED THAT EVIDENCE THAT BUSINESS CONDUCT

7       IS NOT RELATED TO ANY APPARENT DEFICIENCY MAY

8       CONSTITUTE PROOF OF A SPECIFIC INTENT TO

9       MONOPOLIZE.  SO I BELIEVE THAT IS A CORRECT

10      STATEMENT OF THE LAW.

11              THE COURT:  OKAY.  ALL RIGHT.

12              MR. ZELLER:  WE'RE CHECKING ON SOME

13      PROPOSED LANGUAGE.

14              THE COURT:  OKAY.

15              MR. ZELLER:  I BELIEVE THAT THAT -- AND

16      THEN ALSO FINALLY, YOUR HONOR, WE DO OBJECT FOR THE

17      RECORD ON ANY ADVERSE INFERENCE INSTRUCTION FOR THE

18      REASONS THAT WERE ALREADY DISCUSSED AT LENGTH.

19              AND I THINK THAT CONCLUDES THEM.  I WANT

20      TO CHECK WITH MY COLLEAGUES AS TO WHETHER THERE'S

21      ANYTHING THAT I MISSED.

22              THE COURT:  OKAY.

23              MR. ZELLER:  BUT WE'LL PROPOSE SOME

24      CLARIFYING LANGUAGE ON THAT INSTRUCTION.

25              THE COURT:  YOU DON'T HAVE TO.  I THINK
```

1        I'M GOOD.

2                  OKAY.

3                  MR. JOHNSON:  I THINK, YOUR HONOR, WITH

4        RESPECT TO 69, THE -- APPLE -- THE CONSTRUCTION

5        THAT'S SETS FORTH THERE IN THAT PARTICULAR

6        INSTRUCTION DOESN'T ADD ANYTHING TO CLARIFY THE

7        INTENT REQUIREMENT THAT'S ALREADY SET FORTH IN

8        UNDISPUTED FINAL INSTRUCTION NUMBER 64, SO WE DON'T

9        THINK IT NEEDS TO BE BASICALLY ADDED OR REFERRED

10       TO.

11                 THE COURT:  OKAY.  ALL RIGHT.

12                 MR. ZELLER:  IT DOES APPEAR I OVERLOOKED

13       SOMETHING.  THIS IS INSTRUCTION 50.6, AND THIS

14       INSTRUCTION DOES INCLUDE A DATE BY WHICH THE IPAD,

15       THE CLAIMED IPAD TRADE DRESS MUST HAVE ACQUIRED

16       SECONDARY MEANING, BUT IT DOESN'T GIVE A

17       CORRESPONDING INSTRUCTION AS TO THE DATES BY WHICH

18       THE IPHONE TRADE DRESS MUST HAVE ACQUIRED SECONDARY

19       MEANING.  IT ONLY GIVES A DATE AS TO FAME.

20                 THE COURT:  I DON'T HAVE A 50.6.

21                 MR. ZELLER:  LET ME DOUBLE CHECK, YOUR

22       HONOR.

23                 THE COURT:  DID YOU MEAN 56?  NO.

24                 MR. ZELLER:  I MUST HAVE A TYPO IN THESE.

25                 THE COURT:  MAYBE YOU MEANT 56?

```
 1                  MR. ZELLER:  WE'RE DOUBLE CHECKING, YOUR

 2      HONOR.

 3                  (PAUSE IN PROCEEDINGS.)

 4                  MR. ZELLER:  YES, YOUR HONOR.  IT IS --

 5      IT DOES HAVE A NUMBER OF 50.6.  IT'S --

 6                  THE COURT:  MAYBE THAT WAS ONE OF THE

 7      PARTIES.

 8                  MR. ZELLER:  IT'S DOCKET NUMBER 1849.

 9                  THE COURT:  HM.  OH, YOU'RE RIGHT.  I'M

10      SORRY.  I MISSED IT.  I SEE IT.  I'M SORRY.

11                  MR. ZELLER:  1849 IS THE DOCKET NUMBER,

12      IT'S PAGE 87 OF 106, AND IT'S GOT -- 87 IS THE PAGE

13      NUMBER.

14                  THE COURT:  OKAY.  AND WHAT WAS THE

15      ISSUE?

16                  MR. ZELLER:  THE ISSUE IS THAT THERE IS

17      A -- IT GIVES A --

18                  THE COURT:  YOU DON'T LIKE THE JUNE 8TH,

19      2011 DATE?

20                  MR. ZELLER:  YES, YOUR HONOR, EXACTLY.

21                  IT ALSO, TO BE A LITTLE BIT MORE

22      SPECIFIC, TOO, ON ONE ISSUE I WAS RAISING ABOUT THE

23      DATES THAT ARE GIVEN FOR THE -- FOR FAME AND THE

24      LIKE OR -- APPLE INITIALLY ACCUSED THE F700 OF

25      INFRINGEMENT AND DILUTION.
```

```
1           BUT WE THINK THAT'S THE APPROPRIATE DATE
2    THAT OUGHT TO BE USED.  I MEAN, JUST BECAUSE THEY
3    HAVE SINCE RETRACTED THAT ACCUSATION DOESN'T MEAN
4    THAT THAT'S -- THAT THEY CAN THEN BASICALLY HAVE A
5    LATER DATE FOR FAME OR SECONDARY MEANING.
6           IT NEEDS TO BE AS OF THE TIME WE BEGAN
7    SUPPOSEDLY USING WHAT THEY'RE COMPLAINING ABOUT,
8    THIS TRADE DRESS, AND IT -- IN ITS AMENDED
9    COMPLAINT, IT SPECIFICALLY SAID THAT WE WERE USING
10   THE APPLE TRADE DRESS IN 2007, SO WE THINK THAT'S
11   THE APPROPRIATE DATE.
12          MR. JACOBS:  YOUR HONOR, JUST ON THAT
13   ONE, WE REALLY HAVE BEEN AROUND THAT MANY TIMES,
14   BUT A CLOSE READING OF THE COMPLAINT WILL REVEAL
15   THAT MR. ZELLER'S ARGUMENT IS ERRONEOUS.
16          MR. ZELLER:  IT SAYS THAT WE COPIED THE
17   CLEAN FACE OF APPLE'S SUPPOSED TRADE DRESS.
18          MR. JACOBS:  YOUR HONOR, ON 50 --
19          THE COURT:  50.6 IS THE IPAD.  IT WASN'T
20   IN EXISTENCE IN 2007, SO --
21          MR. ZELLER:  RIGHT, I UNDERSTAND.
22          THE COURT:  SO I'M A LITTLE BIT CONFUSED.
23          MR. ZELLER:  WHAT I'M DOING, YOUR HONOR,
24   IS JUST CLARIFYING THAT THERE ARE DATES THAT ARE
25   USED IN THE INSTRUCTIONS THAT WE DISAGREE WITH
```

```
 1    BECAUSE WE THINK IT SHOULD BE AN EARLIER DATE.

 2    NOT -- OBVIOUSLY NOT FOR THAT, FOR 50.6.

 3              THE COURT:  UM-HUM.  OKAY.

 4              MR. ZELLER:  I'M TALKING ABOUT THERE ARE

 5    OTHER DATES THAT ARE USED, AND --

 6              THE COURT:  OKAY.

 7              MR. ZELLER:  AND THIS IS PARAGRAPH 80 OF

 8    APPLE'S AMENDED COMPLAINT, YOUR HONOR.

 9              THE COURT:  OKAY.  ALL RIGHT.  WELL,

10    THANK YOU.

11              MR. ZELLER:  THANK YOU.

12              THE COURT:  ALL RIGHT.  SO VERDICT FORM,

13    DID YOU FIGURE OUT THE ISSUE ON THE IPAD?

14              MR. JOHNSON:  YES, YOUR HONOR.

15              THE COURT:  OKAY.

16              MR. JOHNSON:  SO ON THE IPAD 2, WE

17    ONLY -- WE'RE ONLY ALLEGING DOCTRINE OF EQUIVALENTS

18    WITH RESPECT TO THE '460 PATENT.

19              THE COURT:  OKAY.

20              MR. JOHNSON:  SO I THINK ACTUALLY YOU CAN

21    LEAVE IT AS ONE BOX.  THE PROOF THAT'S IN IS ONLY

22    D.O.E. FOR THE '460 ANYWAY.  I DON'T THINK YOU NEED

23    TO BREAK IT OUT LITERAL VERSUS DOCTRINE OF

24    EQUIVALENTS.

25              IF THE JURY RETURNS A VERDICT FOR
```

1932

1   INFRINGEMENT OF THAT, IT'LL BE UNDER THE DOCTRINE

2   OF EQUIVALENTS.  THAT'S THE PROOF THAT WAS ADDUCED

3   AND SET FORTH DURING THE TESTIMONY.

4           MR. SELWYN:  I THINK, YOUR HONOR, WE

5   SHOULD SPECIFY WHICH FORM OF INFRINGEMENT IS

6   ALLEGED AND IT'S D.O.E. FOR THAT PARTICULAR

7   PRODUCT.

8           THE COURT:  OKAY.  SO WHAT'S GOING TO GO

9   TO THE JURORS ARE THE VERDICT FORM, THE FINAL

10  EXHIBITS, THE FINAL EXHIBIT LIST, JURY NOTES, AND

11  JURY INSTRUCTIONS.

12          I DON'T INTEND TO SEND ANY OF THE

13  PLEADINGS BACK.

14          IS EVERYONE IN AGREEMENT THAT THAT'S

15  GOING TO BE THE UNIVERSE OF WHAT'S GOING TO BE SENT

16  BACK?

17          MR. JOHNSON:  UNDERSTOOD.

18          MR. JACOBS:  YES, YOUR HONOR.

19          THE COURT:  OKAY.  ALL RIGHT.  ARE WE

20  DONE?

21          MR. JACOBS:  LET'S JUST GO OVER THE

22  SCHEDULE AND WHAT COMES NEXT, YOUR HONOR.  OKAY?

23          THE COURT:  OKAY.  SO I NEED TO FILE THE

24  REVISED VERDICT FORM AND JURY INSTRUCTIONS AND

25  EXHIBIT LIST AND TO FILE THE ADVERSE INFERENCE

```
1    ORDER, WHICH HOPEFULLY WE'LL DO TONIGHT.

2              WHAT ELSE?

3              MR. JACOBS:  YOUR HONOR, FOR PLANNING

4    PURPOSES, IF YOU WOULDN'T MIND TIPPING YOUR HAND IN

5    LIGHT OF THE COMMITMENTS OF BOTH SIDES ON THAT.

6              THE COURT:  UM-HUM.

7              MR. JACOBS:  WHAT IS YOUR -- WHAT SHOULD

8    WE ANTICIPATE?

9              THE COURT:  YOU MEAN ON THE ADVERSE

10   INFERENCE?

11             MR. JACOBS:  YES.

12             THE COURT:  THAT IT'S GOING TO BE AN

13   ADVERSE INFERENCE AGAINST BOTH PARTIES, AND MY

14   UNDERSTANDING IS THAT YOU ALL HAVE ELECTED THAT

15   YOU'D RATHER NOT HAVE ANY, SO I'M GOING TO TAKE

16   THEM OUT.

17             MR. JOHNSON:  UNDERSTOOD.

18             MR. JACOBS:  THANK YOU, YOUR HONOR.

19             THE COURT:  ALL RIGHT.  WHAT ELSE?

20   ANYTHING ELSE?

21             SO I FEEL LIKE YOU HAVE PRESERVED ALL OF

22   YOUR OBJECTIONS EXTREMELY WELL.  SO REALLY, NO

23   FURTHER PRESERVATION IS NECESSARY FOR YOUR

24   OBJECTIONS.

25             SO WHEN I FILE THE NEW VERDICT FORM AND
```

1934

```
 1     EXHIBIT LIST AND JURY INSTRUCTIONS, I'M GOING TO
 2     PUT ON THE FRONT PAGE THAT THE PARTIES HAVE
 3     PRESERVED ALL OF THEIR PREVIOUS OBJECTIONS.  SO
 4     PLEASE DON'T FEEL COMPELLED THAT YOU NEED TO DO
 5     THAT.
 6              SO ANY FEEDBACK I'D LIKE ON THESE FINAL
 7     DOCUMENTS IS JUST REALLY ERRORS, TYPOS, THINGS OF
 8     THAT NATURE, PLEASE.
 9              SO I WOULD LIKE TO TRY TO FINALIZE ALL OF
10     THESE THIS EVENING IF IT'S POSSIBLE.
11              CAN YOU ALL THEN JUST GIVE ME A
12     COMMITMENT THAT, WHAT, AN HOUR OR TWO AFTER THESE
13     ARE FILED, YOU CAN JUST LET ME KNOW OBVIOUS ERRORS.
14     YOU HAVE VERY WELL PRESERVED ERRORS OBJECTIONS ON
15     THE SUBSTANCE.
16              MR. JACOBS:  I THINK IT WILL HELP US IF
17     YOU TELL US VERY CLEARLY THE COURT WILL NOT
18     ENTERTAIN ANOTHER ROUND OF OBJECTIONS.
19              THE COURT:  I WILL NOT.  I WILL NOT.
20              MR. JACOBS:  THANK YOU, YOUR HONOR.
21              MR. JOHNSON:  WE APPRECIATE THAT.
22              MR. JACOBS:  AND THEN THE ONLY OTHER
23     QUESTION -- THE COURT HAS RECEIVED OBJECTIONS TO
24     THE OPENING SLIDES.  I BELIEVE WHAT THE COURT SAID
25     EARLIER WAS YOU'RE PLANNING TO ADDRESS THOSE AT
```

1935

```
1    8:30 TOMORROW MORNING AND --

2              THE COURT:  HOW MANY ARE THERE?  ARE

3    THERE A LOT?

4              MR. JACOBS:  THAT I DON'T KNOW.  I'M

5    SORRY, YOUR HONOR.

6              THE COURT:  AND DID YOU DO HIGH PRIORITY

7    ONES OR --

8              MR. JOHNSON:  IT LOOKS LIKE, JUST SITTING

9    HERE, THAT THERE ARE A FAIR AMOUNT ON BOTH SIDES.

10   I HAVEN'T SEEN HIGH PRIORITIES.

11             THE COURT:  I'M SORRY.  I DIDN'T HEAR THE

12   LAST THING YOU SAID, MR. JOHNSON.

13             MR. JOHNSON:  I THINK BOTH SIDES FILED

14   FOUR OR FIVE OR SIX PAGES EACH, SOMEWHERE IN THERE.

15             THE COURT:  OKAY.

16             MR. JOHNSON:  I HAVEN'T SEEN THEM.

17             MR. JACOBS:  THE SPECIFIC QUESTION I'M

18   BEING ASKED BY THE TEAM BACK WORKING ON THE

19   OPENINGS IS WHETHER THE COURT WOULD LIKE RESPONSES

20   TO THOSE OBJECTIONS OR WOULD YOU PREFER TO JUST

21   DISCUSS THEM AND --

22             THE COURT:  NO.  I THINK OBJECTIONS WOULD

23   BE HELPFUL.

24             MR. JACOBS:  YOU MEAN RESPONSES.

25             THE COURT:  I MEAN RESPONSES WOULD BE
```

10936

```
 1   HELPFUL.
 2             MR. JACOBS:  WHAT TIME WOULD YOU LIKE
 3   THAT?
 4             THE COURT:  IS THAT THE UNIVERSE?  AS YOU
 5   CAN TELL, THERE'S NOT A LOT OF CHANGES THAT'S GOING
 6   TO HAPPEN ON THESE INSTRUCTIONS, SO WHAT I SENT YOU
 7   LAST NIGHT, THAT'S PRETTY MUCH STABLE.  SO I
 8   HOPE -- I KNOW WE HAD PREVIOUSLY THOUGHT THAT THERE
 9   MIGHT BE A LATER ROUND OF OBJECTIONS, BUT I HOPE
10   THIS IS THE UNIVERSE.
11             MR. JACOBS:  I WOULD SUGGEST, YOUR HONOR,
12   IF ANYTHING COMES UP BY WAY OF OBJECTIONS TO THE
13   INSTRUCTIONS, THAT BE DEALT WITH AT 8:30 TOMORROW.
14             THE COURT:  THERE'S REALLY NOT GOING TO
15   BE ANY SIGNIFICANT CHANGE HERE.  I THINK THE ONLY
16   ONE THAT WAS SOMEWHAT UP IN THE AIR WAS THE
17   PROSECUTION HISTORY ESTOPPEL, WHICH I'M GOING TO
18   LET GO TO THE JURY.
19             SO OTHER THAN THAT ONE QUESTION, CAN YOU
20   THINK OF ANYTHING ELSE THAT WAS -- I DON'T REALLY
21   THINK ANY OF THESE ARE REALLY GOING TO SERIOUSLY
22   IMPACT CLOSINGS.
23             MR. JACOBS:  UNDERSTOOD, YOUR HONOR.
24             THE COURT:  SO THAT'S THE ONLY ONE THAT
25   CAN BE FILED.  I'M NOT OPEN TO ANY FURTHER
```

1    OBJECTIONS.

2              SO WHEN CAN YOU FILE RESPONSES?

3              MR. JACOBS:  MAYBE 9 -- WHAT TIME WOULD

4    YOU LIKE THEM, YOUR HONOR?

5              THE COURT:  YOU KNOW, AS EARLY AS

6    POSSIBLE BECAUSE WE NEED TO TRY TO GET ALL OF THIS

7    DONE.  CAN YOU FILE THEM BY 8:00?

8              MS. MAROULIS:  YES, YOUR HONOR.

9              MR. JACOBS:  WE'LL MAKE IT HAPPEN, YOUR

10   HONOR.

11             THE COURT:  I PREFER 7:00.  HOW LONG HAVE

12   YOU ALL HAD THEM?  SINCE 5:00 O'CLOCK.

13             MR. JOHNSON:  A LITTLE BIT AFTER 5:00.

14             THE COURT:  OKAY.

15             MS. MAROULIS:  WE CAN DO BETWEEN 7:30 AND

16   8:00.

17             THE COURT:  WHY DON'T YOU DO 7:30,

18   PLEASE.  SO 7:30 FOR RESPONSES.  AND I THINK THAT'S

19   IT.

20             MR. JACOBS:  THE ONLY OTHER -- WE DID

21   FILE A MOTION ON CLOSING ARGUMENT ISSUES IN THE

22   AFTERNOON TO TRY AND FLAG SOME CONCERNS WE HAD

23   ABOUT CLOSINGS IN LIGHT OF WHAT HAPPENED IN THE

24   OPENING, AND I WOULD JUST NOTE THAT FOR YOUR HONOR.

25             MR. JOHNSON:  YOUR HONOR --

```
 1                 THE COURT:  THAT'S SEPARATE FROM THE

 2      OBJECTIONS?

 3                 MR. JACOBS:  CORRECT, YOUR HONOR.

 4                 MR. JOHNSON:  SO WE'D LIKE THE

 5      OPPORTUNITY, IF YOUR HONOR IS GOING TO ENTERTAIN

 6      THAT MOTION, WHICH IS A TOTALLY NEW MOTION, WE'D

 7      LIKE THE OPPORTUNITY TO RESPOND TO IT.

 8                 THE COURT:  OKAY.

 9                 MR. JOHNSON:  IT'S BASICALLY TRYING TO

10      PRECLUDE US FROM MAKING CERTAIN ARGUMENTS.

11                 THE COURT:  ALL RIGHT.  CAN YOU DO THAT

12      BY 7:30?

13                 MR. JOHNSON:  WE WILL TRY, YES.  YES.

14                 THE COURT:  OKAY.  THANK YOU.  THANK YOU.

15                 OKAY.  WHAT ELSE?  I MEAN, I JUST THINK

16      WE'RE GOING TO HAVE JUST HUMAN BANDWIDTH ISSUES

17      TRYING TO GET ALL THIS DONE FROM OUR END TONIGHT.

18                 ON THE OTHER HAND, THOUGH, I REALLY DON'T

19      WANT TO HAVE A LOT OF FIGHTS DISRUPTING BOTH SIDES'

20      CLOSINGS TOMORROW.  BUT I'M HOPING THAT NO MORE

21      MOTIONS ARE GOING TO BE FILED.  I THINK WE'RE ABOUT

22      TO HIT 2,000 DOCKET ENTRIES IN THIS CASE AND ENOUGH

23      IS ENOUGH.

24                 ANYTHING ELSE?

25                 MR. JACOBS:  NO, YOUR HONOR.
```

1939

```
1              MS. MAROULIS:  IT'S AN UNCONTROVERSIAL

2    REQUEST, BUT LAST NIGHT YOUR HONOR ISSUED AN ORDER

3    SAYING WE SHOULD LODGE BUT NOT FILE OUR EXCLUDED

4    EXHIBITS.

5              THE COURT:  YES.

6              MS. MAROULIS:  AND FEDERAL RULES OF

7    APPELLATE RULES REQUIRE THAT ANYTHING THAT IS PART

8    OF THE RECORD ON APPEAL BE FILED, SO WE

9    RESPECTFULLY REQUEST THAT WE BE ABLE TO FILE THEM

10   AS OPPOSED TO LODGE THEM.

11             THE COURT:  YOU LODGED THE DEPOSITION

12   TRANSCRIPTS THAT WERE SHOWN OF DEPOSITIONS THAT

13   WERE SHOWN, BUT THE TESTIMONY WAS NOT TRANSCRIBED.

14             MS. MAROULIS:  RIGHT, YOUR HONOR.  BUT IN

15   TERMS OF EXHIBITS, IF THEY'RE NOT FILED, THEY

16   CANNOT BE PART OF THE RECORD ON APPEAL.  SO THAT'S

17   THE ONLY REASON WHY.

18             THE COURT:  THAT'S FINE.  GO AHEAD THEN.

19             MS. MAROULIS:  THANK YOU.

20             THE COURT:  IS THAT IT?

21             MR. JOHNSON:  AND JUST TO FOLLOW UP ON

22   YOUR HONOR'S REQUEST FROM FRIDAY, I THINK BOTH

23   SIDES DID SPEAK AND THERE WAS NO RESOLUTION, SO WE

24   WILL SEE YOU TOMORROW.

25             THE COURT:  OKAY.  ALL RIGHT.  WELL,
```

1940

1      THANK YOU.  I APPRECIATE THAT THEY DID THAT.

2              OKAY.  THANK YOU VERY MUCH.  WE'LL SEE

3      YOU THEN AT 8:30 TOMORROW.

4              (WHEREUPON, THE EVENING RECESS WAS

5      TAKEN.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

<u>CERTIFICATE OF REPORTER</u>

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10  THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11  FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12  CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14  CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16  SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17  HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18  TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                    /S/

                _____
22              LEE-ANNE SHORTRIDGE, CSR, CRR
                CERTIFICATE NUMBER 9595
23

24                    DATED:  AUGUST 20, 2012

25