1   HAROLD J. MCELHINNY (CA SBN 66781)
    hmcelhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
3   RACHEL KREVANS (CA SBN 116421)
    rkrevans@mofo.com
4   JENNIFER LEE TAYLOR (CA SBN 161368)
    jtaylor@mofo.com
5   ALISON M. TUCHER (CA SBN 171363)
    atucher@mofo.com
6   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
7   JASON R. BARTLETT (CA SBN 214530)
    jasonbartlett@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California  94105-2482
    Telephone: (415) 268-7000
10  Facsimile: (415) 268-7522

    WILLIAM F. LEE
    william.lee@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    60 State Street
    Boston, MA 02109
    Telephone: (617) 526-6000
    Facsimile: (617) 526-5000

    MARK D. SELWYN (SBN 244180)
    mark.selwyn@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    950 Page Mill Road
    Palo Alto, California 94304
    Telephone: (650) 858-6000
    Facsimile: (650) 858-6100

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.
12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                  SAN JOSE DIVISION

16

17  APPLE INC., a California corporation,

18              Plaintiff,

19       v.

20  SAMSUNG ELECTRONICS CO., LTD., a
    Korean business entity; SAMSUNG
21  ELECTRONICS AMERICA, INC., a New York
    corporation; SAMSUNG
22  TELECOMMUNICATIONS AMERICA, LLC, a
    Delaware limited liability company,
23
                Defendants.
24

Case No. 11-cv-01846-LHK (PSG)

**APPLE INC.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW
(RENEWED), NEW TRIAL, AND
AMENDED JUDGMENT [FRCP 50, 59]
[CORRECTED NOTICE OF MOTION]**

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on December 6, 2012, at 1:30 p.m., or as soon thereafter as

3    counsel may be heard before the Honorable Lucy Koh in Courtroom 8 of the above-entitled

4    Court, located at 280 South 1st Street, San Jose, California, Plaintiff Apple will move, and hereby

5    does move, for judgment as a matter of law (renewed), a new trial, and amended judgment against

6    Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung

7    Telecommunications America, Inc. as follows:

- Judgment as a matter of law that Apple's unregistered iPad/iPad 2 Trade Dress is protectable and famous, or in the alternative, a new trial;

- Judgment as a matter of law that Samsung's Galaxy Tab 10.1 (WiFi and 4G LTE model) infringes and dilutes Apple's unregistered iPad/iPad 2 Trade Dress, or in the alternative, a new trial;

- Judgment as a matter of law that Samsung's Galaxy Tab 10.1 (WiFi and 4G LTE model) infringes U.S. Design Patent No. 504,889 (D'889 patent), or in the alternative, a new trial;

- Judgment as a matter of law that the Samsung Galaxy Ace phone infringes U.S. Design Patent No. 618,677 (D'677 patent), or in the alternative, *if* there is a new trial involving the D'667 it should include the Galaxy Ace phone;

- Judgment as a matter of law that the Samsung Galaxy S II (i9100, AT&T, Epic 4G Touch, and Skyrocket) and Infuse 4G phones infringe U.S. Design Patent No. 593,087 (D'087 patent), or in the alternative, *if* there is a new trial involving the D'087 it should include the Galaxy S II and Infuse 4G phones;

- Judgment as a matter of law that the Samsung Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, Galaxy S II (i9100, AT&T, T-Mobile, Epic 4G Touch, and Skyrocket), and Infuse 4G phones dilute Apple's registered iPhone Trade Dress (U.S. Trademark Registration No. 3,470,983), or in the alternative, *if* there is a new trial involving the registered iPhone Trade Dress it should include the Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, Galaxy S II (i9100, AT&T, T-Mobile, Epic 4G Touch, and Skyrocket), and Infuse 4G phones;

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

i

- Judgment as a matter of law that the Samsung Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, Galaxy S II (i9100, AT&T, T-Mobile, Epic 4G Touch, and Skyrocket), and Infuse 4G phones dilute Apple's unregistered iPhone 3G Trade Dress, or in the alternative, *if* there is a new trial involving the unregistered iPhone 3G Trade Dress it should include the Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, Galaxy S II (i9100, AT&T, T-Mobile, Epic 4G Touch, and Skyrocket), and Infuse 4G phones;

- Judgment as a matter of law that Apple's unregistered combination iPhone Trade Dress is protectable and famous, and that each accused Samsung smartphone product dilutes Apple's unregistered combination iPhone Trade Dress, or in the alternative, a new trial;

- Judgment as a matter of law that the Samsung Intercept, Replenish, and Galaxy Ace phones infringe claim 8 of U.S. Patent No. 7,844,915 ('915 patent), or in the alternative, *if* there is a new trial involving the '915 patent it should include the Intercept, Replenish, and Galaxy Ace phones;

- Judgment as a matter of law that the Samsung Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and Vibrant phones infringe claim 50 of U.S. Patent No. 7,864,163 ('163 patent), or in the alternative, *if* there is a new trial involving the '163 patent it should include the Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and Vibrant phones;

- Judgment as a matter of law that Samsung's infringement of the D'889 and D'087 patents and of Apple's unregistered iPad/iPad 2 Trade Dress was willful, or in the alternative, *if* there is to be a new trial on any of Apple's infringement claims, the new trial should include Apple's willfulness claims where the jury made no finding or found no willfulness;

- Judgment as a matter of law that Samsung's dilution of Apple's unregistered combination iPhone Trade Dress and of unregistered iPad/iPad 2 Trade Dress was willful, or in the alternative, *if* there is to be a new trial on any of Apple's dilution claims, the new trial

should include Apple's dilution claims where the jury made no finding or found no willfulness;

- *If* the Court decides to review the damages award on a product-by-product basis, judgment as a matter of law increasing damages for some products to offset any reduction in other portions of the jury's unitary award;

- Judgment as a matter of law that Samsung Electronics Co. took action with respect to the Samsung Intercept and Replenish phones that it knew or should have known would induce Samsung Electronics America, Inc. or Samsung Telecommunications America, LLC to infringe the '915 patent, or in the alternative, *if* there is to be a new trial on the '915 patent, the new trial should include these inducement claims;

- Judgment as a matter of law that Samsung Electronics Co. took action with respect to the Samsung Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and Vibrant phones that it knew or should have known would induce Samsung Electronics America, Inc. or Samsung Telecommunications America, LLC to infringe the '163 patent, or in the alternative, *if* there is to be a new trial on the '163 patent, the new trial should include these inducement claims;

- Judgment as a matter of law that Samsung Electronics Co. took action with respect to the Samsung Galaxy S II (AT&T, Epic 4G Touch, and Skyrocket), and Infuse 4G phones that it knew or should have known would induce Samsung Electronics America, Inc. or Samsung Telecommunications America, LLC to infringe the D'087 patent, or in the alternative, *if* there is to be a new trial on the D'087 patent, the new trial should include these inducement claims;

- Judgment as a matter of law that Samsung Electronics Co. took action with respect to the Samsung Galaxy Tab 10.1 (WiFi) and Galaxy Tab 10.1 (4G LTE) that it knew or should have known would induce Samsung Electronics America, Inc. or Samsung Telecommunications America, LLC to infringe the D'889 patent, or in the alternative, *if* there is to be a new trial on the D'889 patent, the new trial should include these inducement claims;

- Judgment as a matter of law that claim 10 of Samsung's U.S. Patent No. 7,456,893 ('893 patent), claim 9 of Samsung's U.S. Patent No. 7,698,711 ('711 patent), claim 1 of Samsung's U.S. Patent No. 7,577,460 ('460 patent), claims 15 and 16 of Samsung's U.S. Patent No. 7,447,516 ('516 patent), and claims 10 and 15 of Samsung's U.S. Patent No. 7,675,941 ('941 patent) are invalid, or in the alternative, *if* there is to be a new trial on infringement for any of Samsung's patents, the trial should also include the validity of those patents;

- Judgment as a matter of law that Samsung breached its contractual obligations to timely disclose its patents as required by the ETSI IPR policy and to license its declared-essential patents on FRAND terms, or in the alternative, *if* there is to be a new trial on infringement for Samsung's '516 or '941 patent the trial should include Apple's contract claims;

- Judgment as a matter of law that Samsung violated Section 2 of the Sherman Act, or in the alternative, *if* there is to be a new trial on infringement for Samsung's '516 or '941 patent the trial should include Apple's antitrust counterclaims;

- Judgment as a matter of law that Samsung owes damages of $1,095,000 collectively on Apple's breach of contract and antitrust counterclaims, or in the alternative, *if* there is to be a new trial on infringement for Samsung's '516 or '941 patent; the trial should include a new trial on damages for Apple's contract and antitrust counterclaims;

- Supplemental damages of $121,098,389 through December 31, 2012, with an additional $516,197 in supplemental damages for each additional day prior to entry of judgment; prejudgment interest of $49,868,289 through December 31, 2012, with an additional $108,658 in prejudgment interest for each additional day prior to entry of judgment.

1

2

Dated: September 21, 2012                    MORRISON & FOERSTER LLP

3

4                                                By:  */s/ Michael A. Jacobs*
                                                      Michael A. Jacobs

5                                                     Attorneys for Plaintiff
                                                      APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ viii

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARDS............................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.  APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A
    NEW TRIAL ON ITS CLAIM THAT SAMSUNG INFRINGED AND
    DILUTED THE IPAD TRADE DRESS............................................................ 2

    A.  Apple Is Entitled To Judgment As A Matter Of Law Or A New
        Trial That The iPad Trade Dress Is Protectable ..................................... 2

    B.  Apple Is Entitled To Judgment As A Matter Of Law Or A New
        Trial That Samsung's Galaxy Tab 10.1 Infringes The iPad Trade
        Dress........................................................................................................ 4

    C.  Apple Is Entitled To Judgment As A Matter Of Law Or A New
        Trial That Samsung's Galaxy Tab 10.1 Dilutes The iPad Trade
        Dress........................................................................................................ 6

II. APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A
    NEW TRIAL ON ITS CLAIM THAT SAMSUNG INFRINGED THE
    D'889 PATENT ............................................................................................... 7

    A.  The Evidence Permits No Reasonable Conclusion Other Than
        Infringement............................................................................................ 7

    B.  Judgment As A Matter Of Law Is Also Warranted Under An
        Alternative, And Correct, Claim Construction .................................... 10

    C.  At A Minimum, The Court Should Grant Apple A New Trial On
        Infringement Of The D'889 Patent ....................................................... 11

III. APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
     ALL ITS REMAINING CLAIMS ................................................................. 13

    A.  All Accused Samsung Smartphones Infringe The D'677 And D'087
        Patents ................................................................................................... 13

    B.  All Accused Samsung Smartphones Dilute Apple's Registered
        iPhone And Unregistered iPhone 3G Trade Dresses ............................ 14

    C.  All Accused Samsung Smartphones Dilute Apple's Protectable And
        Famous Unregistered Combination iPhone Trade Dress....................... 15

    D.  All Accused Samsung Smartphones Infringe The '163 And '915
        Patents ................................................................................................... 16

    E.  Samsung Willfully Infringed Apple's Patents And Willfully Diluted
        Apple's Trade Dresses And SEC Induced Its Subsidiaries'
        Infringement And Dilution.................................................................... 17

    F.  If The Court Chooses To Disaggregate The Damages Award And
        Adjust It Based On Product-Specific Amounts, Then Apple Is
        Entitled To Additional Sums As A Matter Of Law .............................. 18

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

vi

IV.   APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
      THAT SAMSUNG'S PATENTS ARE INVALID..........................................................19

V.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
      ITS BREACH OF CONTRACT AND ANTITRUST COUNTERCLAIMS ..................22

      A.   Apple Is Entitled To Judgment As A Matter Of Law Or A New
           Trial That Samsung Breached Its Contractual Obligation To Timely
           Disclose Its Patents As Required By The ETSI IPR Policy ................................22

      B.   Apple Is Entitled To Judgment As A Matter Of Law Or A New
           Trial That Samsung Breached Its Contractual Obligations To
           License Its Declared-Essential Patents On FRAND Terms...............................23

      C.   Apple Is Entitled To Judgment As A Matter Of Law That Samsung
           Violated Section 2 Of The Sherman Act .............................................................24

VI.   APPLE IS ENTITLED TO SUPPLEMENTAL DAMAGES AND
      PREJUDGMENT INTEREST .........................................................................................26

      A.   Apple Is Entitled To A Supplemental Damage Award For
           Samsung's Sales Between July 1 And The Resolution Of District
           Court Proceedings ...............................................................................................27

      B.   Apple Is Entitled To Prejudgment Interest Of $49,868,289 Through
           December 31, 2012 ...............................................................................................29

CONCLUSION.............................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011)................................................................................................ 2

*Am. Honda Motor Co. v. Two Wheel Corp.*,
918 F.2d 1060 (2d Cir. 1990) ............................................................................................... 29

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979)............................................................................................ 4, 5

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012)........................................................................................ 8, 9

*Atmel Corp. v. Silicon Storage Tech., Inc.*,
202 F. Supp. 2d 1096 (N.D. Cal. 2002) .............................................................................. 29

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986)............................................................................................. 29

*Braun, Inc. v. Dynamics Corp.*,
975 F.2d 815 (Fed. Cir. 1992)............................................................................................. 12

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007).............................................................................................. 25

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ........................................................................................................... 24

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
381 F.3d 1371 (Fed. Cir. 2004)........................................................................................... 12

*City Solutions, Inc. v. Clear Channel Commc'ns*,
365 F.3d 835 (9th Cir. 2004)................................................................................................. 1

*Clamp Mfg. Co, Inc.. v. Enco Mfg. Co., Inc.*,
870 F.2d 512 (9th Cir. 1989)........................................................................................... 4, 15

*Dwyer Instruments, Inc. v. Sensocon, Inc.*,
No. 3:09-CV-10-TLS, 2012 U.S. Dist. LEXIS 78491 (N.D. Ind. June 5, 2012).................... 18

*Ecolab, Inc. v. Paraclipse, Inc.*,
285 F.3d 1362 (Fed. Cir. 2002)........................................................................................... 12

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc)........................................................................ 7, 13

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

viii

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ............................................................................ 2, 27

*Ford Motor Co. v. Summit Motor Products, Inc.*,
    930 F.2d 277 (3rd Cir. 1991) ...................................................................................... 2

*Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*,
    No. C 03-1431, 2008 WL 928535 (N.D. Cal. 2008) ................................................. 29

*Gen. Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983) .................................................................................................. 28

*Global-Tech Appliances, Inc., v. SEB S.A.*,
    131 S. Ct. 2060 (2011) .............................................................................................. 17

*Gorenstein Enters., Inc. v. Quality Care—USA, Inc.*, 874 F.2d 431 (7th Cir. 1989) ................. 29

*Gyromat Corp. v. Champion Spark Plug Co.*,
    735 F.2d 549 (Fed. Cir. 1984) .................................................................................. 27

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    609 F. Supp. 2d 951 (N.D. Cal. 2009) ...................................................................... 27

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    No. CV-00-20905, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008) ................................... 25

*In re Hayes Microcomputer Prods. Bus.*,
    766 F. Supp. 818 (N.D. Cal. 1991) ........................................................................... 29

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (en banc) ............................................................... 17

*Informatica v. Bus. Objects Data Integration*,
    489 F. Supp. 2d. 1075 (N.D. Cal. 2007) .................................................................. 29

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ................................................................................ 10

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) ................................................................................. 7, 14

*Junker v. HDC Corp.*,
    No. C-07-05094, 2008 WL 3385819 (N.D. Cal. 2008) ............................................. 29

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ............................................................................ 12, 17

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
    862 F.2d 267 (Fed. Cir. 1988) .................................................................................. 29

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

ix

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc)...............................................................10, 11

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007)...............................................................................1, 12

*Monsanto Co. v. McFarling*,
    488 F.3d 973 (Fed. Cir. 2007)...................................................................................18

*O2 Micro Int'l Ltd. v. Monolithic Power Sys, Inc.*,
    420 F. Supp. 2d 1070 (N.D. Cal. 2006) ....................................................................29

*Ostad v. Oregon Health Scis. Univ.*,
    327 F.3d 876 (9th Cir. 2003)...........................................................................1, 14, 16

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993)...................................................................................10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................11

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
    No. 08-CV-3335-IEG, 2010 U.S. Dist. LEXIS 79039 (S.D. Cal. Aug. 5, 2010) ..................27

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008).................................................................................23

*SEB S.A. v. Montgomery Ward & Co.*,
    594 F.3d 1360 (Fed. Cir. 2010), *aff'd*, *Global-Tech. Appliances, Inc. v. SEB S.A.*, 131
    S. Ct. 2060 (2011) ...................................................................................................17

*Stryker Corp. v. Davol Inc.*,
    234 F.3d 1252 (Fed. Cir. 2000).................................................................................27

*Taylor v. Green*,
    868 F.2d 162 (5th Cir.1989)......................................................................................19

*Torres v. City of Los Angeles*,
    548 F.3d 1197 (9th Cir. 2008).....................................................................................1

*Traffix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001)...................................................................................................15

*Unette Corp. v. Unit Pack Co.*,
    785 F.2d 1026 (Fed. Cir. 1986).................................................................................12

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011).................................................................................23

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

x

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991) ......................................................................... 29

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995) ............................................................................. 18

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................................ 25

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ......................................................................................... 24

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) ..................................................................................... 3, 15

**STATUTES**

15 U.S.C.
    § 15 ................................................................................................................. 26
    § 1125(a)(3) ................................................................................................. 3, 15
    § 1125(c)(2)(A) .......................................................................................... 6, 15
    § 1125(c)(2)(B) ...................................................................................... 6, 14, 15

35 U.S.C.
    § 284 .......................................................................................................... 2, 28

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    Rule 50 ............................................................................................................. 1
    Rule 50(b) ..................................................................................................... 1, 2
    Rule 59(a) ..................................................................................................... 1, 2
    Rule 59(e) ............................................................................................... 1, 2, 26

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

xi

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(b), Apple renews its motion for judgment as a matter of law that Samsung's Galaxy Tab 10.1 infringes and dilutes Apple's protectable iPad Trade Dress; that the Tab 10.1 infringes the D'889 patent; and that Samsung's accused smartphones dilute Apple's combination iPhone Trade Dress.  In the alternative, Apple requests a new trial pursuant to Rule 59(a) on these claims.

Further, Apple renews its motion for judgment as a matter of law that all of Samsung's accused smartphones willfully infringe Apple's D'677, D'087, '163, and '915 patents and dilute Apple's registered iPhone Trade Dress and unregistered iPhone 3G Trade Dress; that Samsung's patents are invalid; and that Samsung has breached its contracts and violated the antitrust laws.

Pursuant to Federal Rule of Civil Procedure 59(e) and Section 284 of the Patent Act, Apple also moves to amend the August 24 Judgment to include (a) supplemental damages for Samsung's infringing and diluting sales between July 1, 2012 and the resolution of district court proceedings and (b) pre-judgment interest.

## LEGAL STANDARDS

Under Rule 50, "Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003) (citation omitted); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (same).

Under Rule 59(a), a trial court may grant a new trial where "the verdict is contrary to the clear weight of the evidence" or "to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks omitted).  "[T]he district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* (internal quotation marks and alterations omitted).  Whether to grant a new trial is a matter of the trial court's discretion. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 843 (9th Cir. 2004).

Amendment of the judgment pursuant to Federal Rule of Civil Procedure 59(e) lies within

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

1

1  the discretion of the Court in light of new information not available at trial.  *Allstate Ins. Co. v.*

2  *Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).  Rule 59(e) provides an appropriate avenue to

3  incorporate supplemental damages based on Samsung's sales after July 1, 2012 (which were not

4  available at trial) and prejudgment interest pursuant to 35 U.S.C. § 284.  *See Finjan, Inc. v.*

5  *Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) (ordering supplemental

6  damages to compensate patentee for uncompensated sales).

7  **ARGUMENT**

8  **I.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW
       TRIAL ON ITS CLAIM THAT SAMSUNG INFRINGED AND DILUTED THE
9       IPAD TRADE DRESS**

10       Pursuant to Rule 50(b), Apple is entitled to judgment as a matter of law that its

11  unregistered iPad Trade Dress is protectable and that Samsung's Galaxy Tab 10.1 infringes and

12  dilutes that Trade Dress.  The evidence permits no other reasonable conclusion.  At trial, the jury

13  stumbled over the first issue, failing to find that Apple's unregistered iPad Trade Dress is

14  protectable.  As a result, the jury never had the opportunity to decide whether the Galaxy Tab

15  10.1 infringes or dilutes the iPad Trade Dress.  (Dkt. No. 1931, at 14, 15.)  In a case where

16  Samsung's own counsel labored to distinguish between the iPad 2 and the Galaxy Tab 10.1, there

17  is obviously a likelihood of confusion between the accused product and the iPad Trade Dress.

18  (10/13/2011 Hr'g Tr. 48:12-18.)  At a minimum, it is against the clear weight of the evidence to

19  conclude that Apple's iPad Trade Dress is not protectable, when that Trade Dress is so well

20  known that even Samsung admitted, several months before introducing the Galaxy Tab 10.1, that

21  "The iPad is by far still the most recognized product on the market."  (PX56.30.)  Thus, the Court

22  should, at least, exercise its discretion pursuant to Rule 59(a) to grant Apple a new trial on its

23  iPad Trade Dress claims.  *See Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277,

24  298, 301 (3rd Cir. 1991) (vacating district court's denial of motion for new trial because plaintiff

25  proved secondary meaning and likelihood of confusion on two trademark claims).

26  **A.    Apple Is Entitled To Judgment As A Matter Of Law Or A New Trial That
        The iPad Trade Dress Is Protectable**

27

28       The only reasonable conclusion to be drawn from the evidence is that the iPad Trade

1    Dress is protectable because it is not functional and has acquired secondary meaning.  15 U.S.C.

2    § 1125(a)(3); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000).

3        A trade dress is functional if it is essential to the use or purpose of the device or when it

4    affects the cost or quality of the device.  The Ninth Circuit looks to four factors in applying this

5    test: "(1) whether advertising touts the utilitarian advantages of the design; (2) whether the

6    particular design results from a comparatively simple or inexpensive method of manufacture;

7    (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are

8    available."  (Dkt. No. 1159 (Order Denying Motion for Summary Judgment) at 4 (citing *Traffix*

9    *Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001)).)  Significantly, "[t]he fact that

10   individual elements of the trade dress may be functional does not necessarily mean that the trade

11   dress as a whole is functional; rather, functional elements that are separately unprotectable can be

12   protected together as part of the trade dress."  (*Id.* at 5 (citing *Adidas-Solomon AG v. Target*

13   *Corp.*, 228 F. Supp. 2d 1192, 1195 (D. Or. 2002)).)

14       Apple established each of these factors.  *First*, Apple's iPad advertising does not tout the

15   utilitarian advantages of the product's design.  (PX11 (examples of iPad print and outdoor ads);

16   PX128 ("iPad Is Iconic" television ad).)  *Second*, the iPad 2 design was "absolutely not," Chris

17   Stringer explained, "driven in any way to make [the devices] cheaper or easier to manufacture."

18   (Tr. 505:18-21.)  *Third*, Mr. Stringer testified that Apple wanted to make "a breathtakingly

19   simple, beautiful device" with the iPad, and it did not select the final design because it "thought it

20   would work better as a tab."  (Tr. 499:5-6, 504:1-3; *see also* Tr. 1094:19-1095:9 (Bressler)

21   (opining that industrial design elements of iPad Trade Dress were "not functional").)  *Fourth*,

22   there are multiple alternative tablet designs on the market that can perform the same functions as

23   the iPad.  (Tr. 1095:10-1096:22 (Bressler) (discussing alternative industrial designs); Tr. 1399:24-

24   1401:1, Tr. 1403:16-1405:12 (Kare) (discussing alternative GUI designs); PX10 (depicting

25   alternative tablet designs).)

26       As for secondary meaning, courts consider various factors including: (1) whether actual

27   purchasers of the product associate the configuration with the plaintiff; (2) the degree and manner

28   of plaintiff's advertising; (3) the length and manner of plaintiff's use of the configuration; and

1    (4) whether plaintiff's use of the configuration has been exclusive.  *Clamp Mfg. Co, Inc.. v. Enco*

2    *Mfg. Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989).

3            The iPad Trade Dress had acquired secondary meaning as of June 2011, when Samsung

4    first sold the Galaxy Tab 10.1 in the U.S.  Apple invests heavily in promoting the iPad through a

5    focused, "product-as-hero" advertising strategy "showcas[ing] th[at] product[] as predominantly

6    as we can." (Tr. 639:13-15, 639:22 (Schiller).)  Apple spends substantial sums advertising the

7    iPad in the U.S., and these ads often prominently feature the elements of the asserted iPad Trade

8    Dress.  (Tr. 649:2-18 (Schiller) (identifying types of ads), 656:4-15 & PX16 ($379.5M spent on

9    U.S. iPad ads as of June 2011); PX11; PX128.)  Apple promotes the iPad through product

10   placement in television programs and movies.  (Tr. 650:16-19 (Schiller).)  The iPad was also the

11   subject of "huge [public media] coverage." (Tr. 618:24-619:1 (Schiller); PX138-141 (coverage

12   of the iPad's release).)  Apple's impressive sales for the iPad products translate into significant

13   recognition for the iPad.  (Tr. 1504:20-1505:10 (Winer); PX15 (Apple sold 7.86M iPads by the

14   end of March 2011).)  Hal Poret's survey results further indicate a high level of association

15   between the iPad Trade Dress and Apple.  Over 57% of respondents associated the iPad Trade

16   Dress with Apple; after subtracting the control results, the net recognition rate was 40.3%. (Tr.

17   1585:22-1589:1; Tr. 1589:8-16.)  More than 75% of respondents associated the angled view of

18   the iPad Trade Dress with Apple; after subtracting the control results, the net recognition rate was

19   64.4%. (Tr. 1589:2-5; Tr. 1589:8-16.)  Because this evidence permits only one reasonable

20   conclusion—that the iPad Trade Dress had acquired secondary meaning by June 2011—the Court

21   should grant judgment as a matter of law that the iPad Trade Dress is protectable, but, at a

22   minimum, it should grant a new trial because the jury's contrary findings are against the clear

23   weight of evidence.

24       **B.    Apple Is Entitled To Judgment As A Matter Of Law Or A New Trial That**
                 **Samsung's Galaxy Tab 10.1 Infringes The iPad Trade Dress**
25
             Trade dress infringement exists where confusion between goods is likely.  *AMF Inc. v.*
26
     *Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).  The *Sleekcraft* factors guide the likelihood
27
     of confusion analysis, though the presence or absence of any particular factor is not dispositive.
28

1   These factors are: (i) the strength or weakness of Apple's trade dress; (ii) the proximity of the

2   goods; (iii) the similarity of Apple's and Samsung's trade dress; (iv) actual confusion; (v)

3   Samsung's intent; (vi) overlap in channels of trade; and (vii) consumers' degree of care in

4   purchasing the accused tablets.  *Id.* at 348-53.

5         Under these factors, Samsung's Galaxy Tab 10.1 is likely to cause confusion with and

6   therefore infringes the iPad Trade Dress.  *Id.* at 348.  *First*, the iPad Trade Dress is strong and

7   distinctive for all the reasons discussed above, and Samsung itself has even recognized the

8   distinctiveness of the iPad.  (PX56.30 ("The iPad is by far still the most recognized product on the

9   market.").)  *Second*, Apple and Samsung's tablet products compete directly (Tr. 1510:6-11

10  (Winer) ("[T]he products compete and compete heavily in the marketplace.").)  *Third*, the press

11  commented that the Galaxy Tab 10.1 and iPad are "very similar," and the products themselves

12  confirm their similar appearance.  (Tr. 1510:13-18 (Winer); JX1004 (iPad), JX1005 (iPad 2),

13  JX1006 (iPad 3G), JX1037 (Galaxy Tab 10.1 WiFi), JX1038 (Galaxy Tab 10.1 4G LTE).)

14  Samsung's internal documents show that consumers purchased Galaxy Tab 10.1 devices thinking

15  they were iPad products.  (Tr. 1567:12-18 (Winer) ("Some individuals bought a Samsung Galaxy

16  Tab mistakenly thinking it was an iPad…."); PX59 ("Greatest number of customer return type

17  were those who purchased thinking it was an Apple iPad 2.").)  Kent Van Liere's post-sale

18  confusion survey similarly showed that approximately 30% of respondents identified a branded

19  Galaxy Tab 10.1 as an iPad or Apple product, 43% identified an unbranded Galaxy Tab 10.1 as

20  an iPad or Apple product, and 24% identified the control product as an iPad or Apple product,

21  generating a net confusion rate between 6% and 19%.  (Tr. 1700:10-16, 1701:5-11.)  *Fourth*,

22  Samsung's internal documents further indicate that Samsung "viewed the iPad as a target."  (Tr.

23  1518:14-19 (Winer).)  *Finally*, "there can be a number of reasons why a consumer doesn't spend

24  as much time as you would expect making what looks to be an expensive decision."  (Tr. 1518:3-

25  10 (Winer).)

26        In response to Apple's evidence, Samsung presented designer Jin Soo Kim, who testified

27  that Samsung began working on the Galaxy Tab 10.1 project in October 2009, "before" Apple

28  announced its first-generation iPad in January 2010.  (Tr. 2802:25-2803:8.)  But Mr. Kim

1   admitted that Samsung decided in February 2011 to change the design of the Galaxy Tab 10.1.

2   (*Id.* 2813:8-9, 25 ("So we decided that we should redesign.").)  Samsung thus did not present any

3   credible evidence that Samsung did not copy either the iPad or iPad 2 designs.  In light of all the

4   evidence, the only reasonable conclusion is that there is a likelihood of confusion between the

5   Galaxy Tab 10.1 and Apple's iPad Trade Dress.  At a minimum, the Court should grant a new

6   trial because the jury never reached the issue of likelihood of confusion.

7       **C.      Apple Is Entitled To Judgment As A Matter Of Law Or A New Trial That
8                 Samsung's Galaxy Tab 10.1 Dilutes The iPad Trade Dress**

9           When assessing whether a trade dress is famous among the general consuming public,

10  courts look to the following non-exhaustive list of factors: (i) the duration, extent, and geographic

11  reach of advertising and publicity; (ii) the amount, volume, and geographic extent of sales of

12  goods offered under the trade dress; (iii) the extent of actual recognition; and (iv) whether the

13  trade dress is registered.  15 U.S.C. § 1125(c)(2)(A).  In light of the evidence discussed above

14  regarding secondary meaning, the only reasonable conclusion is that Apple's iPad Trade Dress

15  was famous as of June 2011.  (*See* discussion *supra* II.C.1.; *see also* Tr. 1507:11-18 (Winer)

16  (noting that the secondary meaning and fame factors are "mostly the same").)

17          In determining whether the appearance of the Galaxy Tab 10.1 products is likely to dilute

18  the iPad Trade Dress, all relevant factors may be considered, including (i) the degree of similarity

19  between the Samsung products and Apple's trade dress; (ii) the degree of acquired distinctiveness

20  of Apple's trade dress; (iii) the extent to which Apple is engaging in substantially exclusive use of

21  its trade dress; (iv) the degree of recognition of Apple's trade dress; (v) whether Samsung

22  intended to create an association with Apple's trade dress; and (vi) any actual association between

23  Samsung's products and Apple's trade dress.  15 U.S.C. § 1125(c)(2)(B).

24          Under these factors, Samsung's Galaxy Tab 10.1 dilutes the iPad Trade Dress.  As

25  discussed above, Apple presented ample evidence of the similarity of the Galaxy Tab 10.1 and the

26  iPad Trade Dress, the distinctiveness of the iPad Trade Dress, Samsung's intent to copy the iPad

27  Trade Dress, and the degree of actual recognition for the iPad Trade Dress.  (*See* discussion *supra*

28  Sections I.A. & I.B.)  Apple's evidence of actual confusion also constitutes evidence of actual

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

6

association between the Galaxy Tab 10.1 and the iPad Trade Dress.  *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008) (identifying surveys showing consumer confusion as to source as evidence of actual association).  (*See* discussion *supra* Section I.B.)  Apple's expert Dr. Winer opined that "the distinctiveness of the Apple trade dress is going to be blurred by competitors that emulate and copy that trade dress," thus supporting the finding that the Galaxy Tab 10.1 is likely to dilute Apple's iPad Trade Dress.  (Tr. 1519:19-24.)  At a minimum, the Court should grant a new trial on iPad Trade Dress dilution because the jury never considered whether there was a likelihood of dilution.

## II.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON ITS CLAIM THAT SAMSUNG INFRINGED THE D'889 PATENT

The evidence permits only one reasonable conclusion: Samsung's Galaxy Tab 10.1 infringes the D'889 patent.  The Court should so rule or, at least, grant a new trial on that issue.

### A.    The Evidence Permits No Reasonable Conclusion Other Than Infringement

The test for design patent infringement is whether, in the eye of an ordinary observer familiar with the prior art and giving such attention as a purchaser usually gives, the designs of the Galaxy Tab 10.1 and the D'889 are substantially the same.  *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008) (en banc).  The prior art serves "to focus on those aspects of a design which render the design different from prior art designs."  *Id.* at 677 (internal quotation marks omitted).  "If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing."  *Id*.  Applying this test, the design of the Galaxy Tab 10.1 (both WiFi and LTE models) is substantially the same as the D'889 design.

The visual similarity between the D'889 design and the Galaxy Tab 10.1 is self-evident when the patent figures are compared with the accused Samsung products.  (*See* PX7 (Galaxy Tab 10.1); JX1029 (Galaxy Tab 10.1 WiFi); JX1037 (Galaxy Tab 10.1 LTE); JX1040 (D'889 patent); PDX26.14 (demonstrative comparing D'889 patent figures and Galaxy Tab 10.1).)  When faced with the same visual evidence in deciding Apple's motion for preliminary injunction, this

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

7

1  Court found "substantial similarities" in design and held that Apple had established likely success

2  on infringement.  (Dkt. No. 452 at 45-48.)  On appeal, Samsung argued that "Apple failed to

3  demonstrate likely success in proving that the Galaxy Tab 10.1 infringes the D'889 patent."  (Kim

4  Decl. Ex. A at 61.)  The Federal Circuit considered this argument so insubstantial that it did not

5  specifically address it in concluding that Apple "was likely to succeed on the merits."  *Apple,*

6  *Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012); *see also id.*at 1323 (opinion

7  focuses on issues that "present close questions" and does not address findings "not subject to

8  serious challenge").

9      The evidence at trial confirms this conclusion as a matter of law.  Apple's design expert

10  Peter Bressler explained that "both the Galaxy Tab 10.1 products and the D'889 design include

11  the overall impression that an ordinary observer would hold of a continuous, flat, clear glass front

12  surface which, in my analysis, is a major departure from the prior art."  (Tr. 1066:21-1067:20.)

13  Mr. Bressler testified further that ordinary observers would also notice that the Galaxy Tab 10.1

14  "is rectangular in form, closely resembling the '889 figures" with "curved corners…flat on the

15  back with curving sides up toward the front edge [and] an equilateral band visible through the…

16  transparency, equally all the way around the display."  (Tr. 1066:21-1067:20.)  Mr. Bressler

17  testified that "the continuous flat, clear, edge-to-edge glass front surface," which also appears in

18  the Galaxy Tab 10.1, "is such a design departure that it is the major driver of the overall

19  impression" of the D'889 patent.  (Tr. 1349:1-11.)  Accordingly, the other views, including the

20  back view, "assume less importance in one's mind when one's viewing that product."

21  (Tr. 1349:8-11.)

22      The distance between the patented design and the prior art also supports a finding of

23  infringement.  Mr. Bressler testified that "the Galaxy 10.1 was substantially more similar to the

24  '889 patent than to any of the prior art."  (Tr. 1068:13-23.)  Mr. Bressler (and the visual record)

25  confirmed that the visual impressions of the Fidler tablet and TC1000 designs were far afield

26  from the D'889.  (Tr. 3602:9-3604:14 ("the [Fidler Tablet's] transparent front surface does not go

27  edge to edge all the way across the front to meet a narrow rim…this has a raised frame around the

28  display that is not of equal border, because it's wider at the bottom"); Tr. 3604:19-3605:13 ("the

1   TC1000 does not have…a transparent surface that runs totally edge to edge all the way across the

2   face to a narrow rim"; "has multiple bands around the display that are not equal"; "there is a

3   radius or curved frame around the edge that is different than the '889 patent"); JX1078 (Fidler

4   tablet replica); JX1074 (TC1000).)  *See also Apple*, 678 F.3d at 1331 (finding significant

5   differences in visual impression between Fidler tablet, TC1000, and D'889 patent).  A timeline of

6   tablet designs before and after the iPad also illustrates how Samsung departed from the prior art

7   (including its own) to copy the iPad.  (PX4.)

8        Apple also presented evidence that others thought the designs were substantially similar.

9   When Samsung released the Galaxy Tab 10.1, the press remarked that "the Tab 10.1 achieved

10  perhaps the best design compliment an Android tablet could hope for—often being mistaken by

11  passers-by (including Apple iPad users) for an iPad 2.  The confusion is understandable when you

12  see and hold the Galaxy Tab 10.1 for the first time."  (PX173.2.)  Samsung's partner Google

13  similarly found Samsung's proposed tablet design "too similar to Apple."  (PX42.1; *see also*

14  PX43.2 ("Google is demanding distinguishable design vis-à-vis the iPad for the P3.").)

15  Samsung's design was so similar that actual consumers mistakenly purchased Galaxy Tab 10.1s

16  thinking they were iPad 2s, and returned them for that reason.  (Tr. 1086:2-11, 1089:23-1090:8

17  (Bressler) ("[The] greatest number of customer return type were those who purchased thinking it

18  was an Apple iPad 2."); PX59.19.)

19       In response, Samsung elicited testimony regarding the "inspiration" of Apple's inventors

20  and minor differences between the D'889 design and the Galaxy Tab 10.1, but neither supports a

21  reasonable conclusion of no infringement.  Samsung primarily focused on the Galaxy Tab 10.1's

22  two-part back, which is not present in the D'889 or in Chris Stringer's "inspiration" for it.  (*See,*

23  *e.g.*, Tr. 1127:24-1228:19 (Bressler) (confirming that "there's at least two pieces" on back of

24  Galaxy Tab 10.1 and "no seam" in "back housing of" of D'889 design);  (Tr. 522:24-523:15

25  (Stringer) ("inspiration" for D'889 was "a single, seamless vessel" for "rear housing") ).  But the

26  inventor's personal views about "design inspiration" cannot limit a patent's scope, and minor

27  differences in appearance are not relevant to the infringement analysis because the test concerns

28  the overall appearance—whether "the effect of the whole design [is] substantially the same."

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

9

1   Under this test, "minor differences between a patent design and an accused article's design

2   cannot, and shall not, prevent a finding of infringement." *Payless Shoesource, Inc. v. Reebok*

3   *Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) (internal quotation marks omitted); *see also Int'l*

4   *Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("[T]he

5   mandated overall comparison is a comparison taking into account significant differences between

6   the two designs, not minor or trivial differences."). In any event, as Mr. Bressler noted, the seam

7   along the back of the Galaxy Tab 10.1 is "an absolutely flush seam…that makes it appear to be a

8   continuous surface," like the back of D'889. (Tr. 1228:20-22.)

9         On this record, the only reasonable conclusion is that the accused Samsung tablets

10   infringe the D'889 patent. Accordingly, Apple is entitled to judgment as a matter of law.

11         **B.      Judgment As A Matter Of Law Is Also Warranted Under An Alternative,
               And Correct, Claim Construction**

12         An infringement analysis properly rests on "the meaning and scope of the patent claims

13   asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.

14   1995) (en banc). Here, the Court correctly construed the D'889 patent, with one exception: the

15   Court's determination that "oblique line shading in [Figure 2] depicts a transparent, translucent,

16   or highly polished or reflective surface from…the bottom perspective view of the claimed

17   design." (Dkt. No. 1447 at 2-3.) As Apple argued in its claim construction briefing, the lines on

18   the back of the device in Figure 2 are better interpreted as shading lines indicating a flat surface.

19   (Dkt. No. 1177 (Apple reply claim construction brief) at 4-5.) Under this construction, the only

20   reasonable conclusion is, again, that the accused Samsung tablets infringe the D'889 patent.

21         While the oblique lines in the front perspective view of Figure 1 and front elevation view

22   of Figure 3 are clearly used to indicate a transparent, glass-like front surface (through which the

23   dotted-line rectangular element can be seen), the three sets of lines shown on the back of the

24   device in Figure 2 are used for a different purpose. Consistent with MPEP Section 1503.02, the

25   lines in the back perspective are shading that shows the flat contour of the back surface. *See*

26   MPEP § 1503.02 ("While surface shading is not required…it may be necessary in particular cases

27   to shade the figures to show clearly the character and contour of all surfaces of any 3-dimensional

28

1    aspects of the design.").  Were the lines in Figure 2 meant to denote a transparent, translucent, or

2    reflective back surface, they would be required to appear in every drawing depicting the back

3    surface, including Figure 4, the elevation view of the back, and Figures 5-8, side views where a

4    portion of the back is visible.  *See id.* ("Oblique line shading *must* be used to show transparent,

5    translucent and highly polished or reflective surfaces, such as a mirror." (emphasis added)).  But

6    Figures 4-8 do not show any lines on the back surface.  Accordingly, Apple's interpretation most

7    naturally aligns with the disclosure of the patent figures.  *See Phillips v. AWH Corp.*, 415 F.3d

8    1303, 1316 (Fed. Cir. 2005) (en banc) ("The construction that…most naturally aligns with the

9    patent's description of the invention will be, in the end, the correct construction.").

10        The extrinsic evidence also supports Apple's interpretation.  Jonathan Ive—inventor and

11   Apple's lead industrial designer—testified:  "[M]y thought as a designer interpreting this drawing

12   would be that in Figure 2, those three sets of lines make it clear that the back surface is flat."

13   (Dkt. No. 1177-2, Bartlett Decl., Ive deposition (12-1-11) at 185:7-186:4.)  Mr. Bressler also held

14   this view.  (Dkt. No. 1177-3, Bartlett Decl., Bressler deposition (4-24-12) at 50:23-51:12 ("I

15   believe that the diagonal lines included in figure 2 are used to help identify the topography of

16   figure 4 to illustrate that it is flat.").)  Their testimony further confirms that Apple's interpretation

17   of the figures is correct.

18        Applying this construction of the claims, the only reasonable conclusion supported by the

19   evidence is that Samsung's tablets infringe the D'889 patent.  The analysis is the same as in

20   Section II.A. above, but even more compelling because under the proper claim construction the

21   jury need not consider Samsung's argument that the Galaxy Tab 10.1 does not infringe because it

22   has a matte back, an argument Samsung pressed at closing.  (See Tr. 4163:8-4164:22 ("You can

23   see it with your own eyes.  This is not a shiny surface.  This is matte surface.").)

24        **C.    At A Minimum, The Court Should Grant Apple A New Trial On
                   Infringement Of The D'889 Patent**

25        If the Court declines to grant judgment as a matter of law, it should at a minimum exercise

26   its discretion to grant a new trial on infringement of the D'889 patent.  Here, the jury verdict of

27   non-infringement is against the clear weight of evidence for the reasons discussed above; the

28

1    evidence shows that the Galaxy Tab 10.1 has substantially the same overall appearance as the

2    D'889.  *See Molski*, 481 F.3d at 729.

3            A new trial is warranted on the additional ground that the jury was incorrectly instructed

4    on design patent infringement.  Where, as here, "an incorrect claim construction…removes from

5    the jury a basis on which the jury could reasonably have reached a different verdict, the verdict

6    should not stand."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1383 (Fed.

7    Cir. 2004).  The jury was erroneously instructed that the back of the device shown in Figure 2

8    was "a transparent, translucent, or highly polished or reflective surface."  (Dkt. No. 1903 at 59.)

9    This construction prejudiced Apple because it gave Samsung a non-infringement argument—that

10   the back of the Galaxy Tab 10.1 has "a matte surface."  (Tr. 4163:8-4164:22.)  As the record

11   clearly reflects sufficient evidence to support a jury verdict of infringement under the correct

12   construction, *see supra* Section II.B., this claim construction error warrants a new trial.  *Ecolab,*

13   *Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1376 (Fed. Cir. 2002).

14           Furthermore, jury instruction No. 46 charged: "[t]wo designs are substantially the same if,

15   in the eyes of an ordinary observer…the resemblance between the two designs is such as to

16   deceive such an observer, inducing him to purchase one supposing it to be the other."  (Dkt. No.

17   1903 at 63.)  This was error.  The law is clear that deception of the consumer in his purchasing

18   decision—whether likely or actual—is not required to prove design patent infringement.  In *L.A.*

19   *Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993), the Federal Circuit affirmed

20   the district court's holding of design patent infringement because the accused shoe designs were

21   substantially similar to the patented designs, *id.* at 1126, yet held that "the district court clearly

22   erred in holding that purchasers of [the accused] shoes would be likely to be confused or deceived

23   or mistakenly think that they were buying the L.A. Gear athletic shoes, despite the substantial

24   similarity of overall design," *id.* at 1134.  Those two holdings make clear that design patent

25   infringement does not depend on deception in purchasing.  *See also Unette Corp. v. Unit Pack*

26   *Co.*, 785 F.2d 1026, 1029 (Fed. Cir. 1986) (likelihood of confusion as to source of goods is not

27   factor); *Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815, 821 (Fed. Cir. 1992) (rejecting argument

28   that absence of evidence of deception precludes jury from finding infringement).

1    This error, too, prejudiced Apple because it goes to the core of the design patent

2    infringement test and removed grounds on which the jury could reasonably have found

3    infringement.  Moreover, Samsung heavily relied on this erroneous instruction in its closing.  (Tr.

4    4135:6-13 ("This is the test, it's jury instruction number 46.  And I'll just read it. 'Two designs

5    are substantially the same if, in the eye of an ordinary observer, giving such attention as a

6    purchaser usually gives, the resemblance between the two designs is such as to deceive such an

7    observer, inducing him to purchase one supposing it to be the other.'").)  Although instruction

8    No. 46 included the additional charge that "[y]ou do not need…to find that any purchasers

9    actually were deceived or confused," the erroneous initial instruction allowed Samsung to argue

10    otherwise to the jury.  (*Id.*; *see* Tr. 4135:6-4136:25 ("Now, you'd think that if Apple was going to

11    come in here and ask for over $2 billion in damages…That they would have an expert to come in

12    and say, 'I did a study in evaluating whether people were deceived or confused.'…But you

13    don't.").)  Thus, the prejudice introduced by the initial instruction could not effectively be undone

14    by the second, contradictory charge.  Under the correct instruction, the jury would not have

15    considered deception or confusion of the ordinary observer in determining infringement.

16    Accordingly, at a minimum, Apple is entitled to a new trial on infringement of the D'889 patent.

17    **III.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL ITS
18         REMAINING CLAIMS**

19         **A.    All Accused Samsung Smartphones Infringe The D'677 And D'087 Patents**

20         Apple is entitled to judgment as a matter of law on each of its claims for infringement of

21    the D'677 and D'087 patents because the only reasonable conclusion from the evidence is that

22    Samsung's product designs accused of infringing those patents are substantially the same as the

23    patented designs to an ordinary observer familiar with the prior art.  *See Egyptian Goddess*,

24    543 F.3d at 670, 678.  The jury correctly found infringement with respect to all but one Samsung

25    smartphone accused of infringing the D'677 and as to many of the smartphones accused of

26    infringing the D'089, but incorrectly found that the Samsung Galaxy Ace phone did not infringe

27    the D'677 and that the Samsung Galaxy S II (AT&T; i9100; Epic 4G Touch; and Skyrocket) and

28    Infuse 4G phones did not infringe the D'087.  (Dkt. No. 1931 at 6.)  The evidence cannot support

1    the findings of non-infringement.  (*See, e.g.*, Tr. 1056:20-1057:9 (Bressler) ("the ordinary

2    observer would consider the design or appearance of [phones including the Galaxy Ace] to be

3    substantially the same as that of the '677"); Tr. 1060:18-22, 1062:12-1064:11 (Bressler) ("the

4    overall impression an ordinary observer would have of [the relevant] phones would be the same

5    as their impression of the design representing the '087 patent").)  Accordingly, Apple is entitled

6    to judgment as a matter of law on its claims that the Samsung Galaxy Ace infringes Apple's

7    D'677 patent and that the Galaxy S II and Infuse 4G phones infringe the D'087 patent.  *See*

8    *Ostad*, 327 F.3d at 881.  Alternatively, if there is to be a new trial regarding the D'677 or D'087

9    patent (which there should not be), any trial involving the D'677 should include the Galaxy Ace

10    and any trial involving the D'087 should include the Galaxy S II and Infuse 4G phones because

11    the jury's findings on those products are against the clear weight of evidence.

### B.    All Accused Samsung Smartphones Dilute Apple's Registered iPhone And Unregistered iPhone 3G Trade Dresses

12

13           Apple is entitled to judgment as a matter of law on each of its claims for dilution of

14    Apple's registered iPhone and unregistered iPhone 3G Trade Dresses because the only reasonable

15    conclusion from the evidence is that all Samsung's smartphones accused of diluting these Trade

16    Dresses are likely to dilute them.  In determining trade dress dilution, a court may consider "all

17    relevant factors," including those set forth in 11 U.S.C. § 1125(c)(2)(B).  *See* Section II *supra*;

18    *Jada Toys*, 518 F.3d at 635-36.  The evidence permits no reasonable conclusion other than that

19    dilution was likely as to each of the accused Samsung smartphone products—including those the

20    jury found not likely to dilute Apple's trade dresses.  (*See, e.g.*, Tr. 1528:17-21 (Winer)

21    (confirming that "the sale of Samsung's [accused smartphone products] is likely to dilute the

22    distinctiveness of Apple's iPhone trade dresses"); Tr. 1695:23-1696:2 (Van Liere) (recounting

23    results of study showing "that it is likely that consumers will associate the look and design of the

24    Samsung [accused smartphone products] with Apple or with the iPhone, and that would be

25    evidence suggestive of dilution").)  Accordingly, Apple is entitled to judgment as a matter of law

26    that each accused Samsung smartphone dilutes Apple's registered iPhone and unregistered iPhone

27    3G Trade Dresses.  *See Jada Toys*, 518 F.3d at 635-36.  Alternatively, if there is to be a new trial

28

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

14

regarding the registered iPhone Trade Dress (which there should not be), it should include the Samsung i9100, Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, Galaxy S II (AT&T, T-Mobile, Epic 4G Touch, and Skyrocket), and Infuse 4G phones, and if there is to be a new trial regarding the unregistered iPhone 3G trade dress (which there should not be), the new trial should include the Samsung i9100, Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, Galaxy S II (AT&T, T-Mobile, Epic 4G Touch, and Skyrocket), and Infuse 4G phones. In each case the jury's findings on those products are against the clear weight of evidence.

C.    **All Accused Samsung Smartphones Dilute Apple's Protectable And Famous Unregistered Combination iPhone Trade Dress**

Apple is entitled to judgment as a matter of law on each of its claims for the unregistered combination iPhone Trade Dress because the only reasonable conclusion from the evidence is that the combination iPhone Trade Dress is both protectable and famous and each accused Samsung smartphone product dilutes that Trade Dress.  *First*, Apple's combination iPhone Trade Dress is protectable because it is not functional and has acquired distinctiveness. 15 U.S.C. § 1125(a)(3); *Wal-Mart Stores*, 529 U.S. at 216.  The trade dress is not functional under the four-factor inquiry in *Traffix*.  *See Traffix Devices*, 532 U.S. at 33.  (*See, e.g.*, Tr. 1094:14-18 (Bressler) ("It's my opinion that [all] aspects of the iPhone trade dress are not functional.").)  By July 2010, the unregistered combination iPhone Trade Dress also had acquired distinctiveness (secondary meaning) as set forth in *Clamp*.  *See Clamp*, 870 F.2d at 517 (identifying test and likely factors in assessing secondary meaning).  Expert witness Dr. Winer offered unrebutted testimony, concluding that "Apple trade dresses are among the most distinctive in the world, and particularly in the U.S., and have a very high degree of recognition."  (Tr. 1507:7-9.)

*Second*, the evidence further requires the conclusion that, no later than July 2010, Apple's combination iPhone Trade Dress was famous, as required by 15 U.S.C. § 1125(c)(2)(A).  For example, Dr. Winer, testified that "[t]here's no question in my mind that [Apple's asserted iPhone trade dresses are] famous among the general consuming public."  (Tr. 1508:6-7.)  This evidence was unrebutted.

*Finally*, Apple proved that, as a matter of law, each of the accused Samsung smartphone

1  products dilutes the unregistered combination iPhone Trade Dress, considering "all relevant

2  factors" including those set forth in 15 U.S.C. § 1125(c)(2)(B).  (*See, e.g.*, Tr. 1528:17-21

3  (Winer) (confirming that "the sale of Samsung's [accused smartphone products] is likely to dilute

4  the distinctiveness of Apple's iPhone trade dresses"); Tr. 1695:23-1696:2 (Van Liere) (recounting

5  results of study showing "that it is likely that consumers will associate the look and design of the

6  Samsung [accused smartphone products] with Apple or with the iPhone, and that would be

7  evidence suggestive of dilution").)

8        In sum, the evidence permits only one reasonable conclusion—Apple's unregistered

9  combination iPhone Trade Dress is protectable, famous, and diluted by the accused Samsung

10  smartphones—and accordingly, Apple is entitled to judgment as a matter of law on those claims.

11  Alternatively, because the jury's finding as to the protectability of the combination iPhone Trade

12  Dress is contrary to the clear weight of evidence, Apple is entitled to a new trial on its claim that

13  the accused Samsung smartphones dilute the combination iPhone Trade Dress.

14        **D.**    **All Accused Samsung Smartphones Infringe The '163 And '915 Patents**

15        The evidence permits only one reasonable conclusion—that each of Samsung's accused

16  smartphone products infringes Apple's '163 and '915 utility patents.  The jury incorrectly found

17  that the Samsung Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and

18  Vibrant phones did not infringe claim 50 of the '163 patent.  (Dkt. No. 1931 at 4.)  The jury also

19  incorrectly found that the Samsung Galaxy Ace, Intercept, and Replenish phones did not infringe

20  claim 8 of the '915 patent.  (Dkt. No. 1931 at 3.)  The findings of non-infringement cannot be

21  reconciled with the evidence.  Apple's expert, Dr. Singh, testified that all of these products

22  infringed, and Samsung offered no evidence to the contrary.  (*See, e.g.*, Tr. 1819:2-1830:21 ("I

23  concluded that [the accused Samsung smartphone products] infringe claim 8 of the '915 patent.");

24  Tr. 1833:21-1842:6 (reviewing claim 50 of the '163 patent and confirming that the elements of

25  that claim are "present in" the accused Samsung smartphone products).)  Accordingly, Apple is

26  entitled to judgment as a matter of law on its claims that all Samsung smartphones infringe the

27  '163 and '915 patents.  *See Ostad*, 327 F.3d at 881.  Alternatively, if there is to be a new trial

28  regarding the '163 patent (which there should not be), the new trial should include the Samsung

16

1   Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and Vibrant phones, and

2   if there is to be a new trial regarding the '915 patent (which there should not be), the new trial

3   should include the Samsung Galaxy Ace, Intercept, and Replenish phones.

**E.    Samsung Willfully Infringed Apple's Patents And Willfully Diluted Apple's Trade Dresses And SEC Induced Its Subsidiaries' Infringement And Dilution**

Apple is entitled to judgment as a matter of law that Samsung acted willfully in those instances where the jury declined to find or did not reach willfulness.  Specifically, Apple proved willful infringement of the D'087 and D'889 design patents for all accused Samsung products, willful dilution of Apple's unregistered combination iPhone Trade Dress, and willful infringement and dilution of Apple's unregistered iPad/iPad 2 Trade Dress.  The evidence requires the conclusion that Samsung willfully infringed and diluted each of these Apple patents and trade dresses.

Samsung's conduct was objectively unreasonable, and it knew or should have known that its smartphone and tablet products infringe Apple's asserted patents.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  Beginning in February 2010, Samsung systematically copied the iPhone design.  (*See, e.g.*, PX3 (images of Samsung phones pre- and post-iPhone introduction).)  Samsung persisted in its copying even after Apple showed Samsung in side-by-side comparisons how the design of the Galaxy phone imitated the iPhone and walked Samsung through how the product infringed various Apple patents.  (PX52.)  And after learning that its original Galaxy Tab looked confusingly like an iPad, Samsung designed the Galaxy Tab 10.1 to look even more like an iPad 2.  (PX56.7 (Samsung internal report stating that "[o]ver half of consumers" thought the Samsung ad for the original Galaxy Tab was for Apple).)  This is paradigmatic willful infringement and willful dilution.  "Deliberate copying" is "strong evidence of willful infringement."  *L.A. Gear*, 988 F.2d at 1127.  The evidence thus permits only one reasonable conclusion—that Samsung's infringement and dilution of each of Apple's asserted patents and trade dresses was willful.

The evidence of Samsung's intentional copying also requires a judgment that Samsung Electronics Co., Ltd. (SEC) induced infringement.  Apple conclusively demonstrated that SEC

1   infringed Apple's patents both directly and by inducing its subsidiaries to infringe.  SEC's

2   infringement was direct, as it sold phones and tablets directly into the United States.  (*See, e.g.*,

3   Tr. 2068-2071 (Musika) ("SEC sells the product to…[Samsung Telecommunications America,

4   LLC], and the phones move across the Pacific and land in the United States.").)  *See SEB S.A. v.*

5   *Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) (affirming direct infringement

6   where product sold directly into United States), *aff'd*, *Global-Tech. Appliances, Inc. v. SEB S.A.*,

7   131 S. Ct. 2060 (2011).  And SEC induced its subsidiaries to infringe because SEC knew or was

8   willfully blind to the fact that their sales infringed Apple's patents.  *See Global-Tech Appliances,*

9   *Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2069 (2011).

10       Alternatively, if there is to be a new trial on any of Apple's infringement or dilution

11   claims, the new trial should include Apple's willfulness and inducement claims where the jury

12   either made no finding or found no willfulness or inducement, as this is against the clear weight

13   of evidence.

14   **F.    If The Court Chooses To Disaggregate The Damages Award And Adjust It
          Based On Product-Specific Amounts, Then Apple Is Entitled To Additional**
15   **      Sums As A Matter Of Law**

16       In reviewing damages awards, the Federal Circuit "give[s] broad deference to the

17   conclusions reached by the finder of fact."  *Monsanto Co. v. McFarling*, 488 F.3d 973, 981 (Fed.

18   Cir. 2007).  The amount chosen by the jury need only "be within the range encompassed by the

19   record as a whole."  *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995).

20   Recognizing this broad deference, Apple does not challenge the jury's damages award, except

21   conditionally.  Samsung has stated it will likely file a motion for remittitur challenging aspects of

22   the jury's damages award, such as damages attributed to the Prevail.  (Dkt. No. 1941 at 5.)  If in

23   response the Court decides to review the damages award on a product-by-product basis, then

24   Apple urges as to certain products that it is entitled to higher damages amounts as a matter of law,

25   at a minimum to offset any reductions that might result from parsing of the jury's unitary award.

26       Specifically, Apple is entitled to an additional $155,841,889 in damages as a matter of law

27   based on five infringing products for which the jury awarded less than the minimum, undisputed

28   amount calculated by Samsung's own damages expert.  Three of those products—the Fascinate,

1   Galaxy S 4G, and Mesmerize—diluted Apple's unregistered iPhone 3G trade dress, for which

2   damages are calculated from the date of first sale.  *See, e.g.*, *Dwyer Instruments, Inc. v. Sensocon,*

3   *Inc.*, No. 3:09-CV-10-TLS, 2012 U.S. Dist. LEXIS 78491, at *29 (N.D. Ind. June 5, 2012)

4   ("[T]he notice language of § 1111 only applies to registered marks and to claims for infringement

5   of such registered marks.").  The jury awarded $270,007,459 for those three products combined

6   (Dkt. No. 1931 at 16), although Samsung's expert calculated minimum damages of $351,295,561,

7   even including Samsung's additional claimed overhead expenses.  (DX781.003.)  Similarly, the

8   jury awarded $145,119,962 for the Galaxy S II (Epic 4G Touch) and Infuse 4G (Dkt. No. 1931 at

9   16), when Samsung calculated $219,673,839 as the minimum damages based on the shortest

10  alleged notice dates, and including all cost deductions.  (DX781.001.)  Should the Court decide to

11  examine the award at a product-specific level (and it should not), damages should therefore be

12  increased by $155,841,889 as a matter of law.  (($351,295,561 – $270,007,459) + ($219,673,839

13  – $145,119,962) = $155,841,889.)  *See, e.g.*, *Taylor v. Green*, 868 F.2d 162, 165 (5th Cir. 1989)

14  ("[W]hen the amount of damages is not disputed and a party is entitled to damages under the

15  verdict as a matter of law…it would be a mere formality to order a partial new trial limited to the

16  issue of damages when the court could immediately thereafter grant summary judgment for the

17  undisputed amount." (internal quotation marks omitted)).

18
19  **IV.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT
       SAMSUNG'S PATENTS ARE INVALID**

20          Based on the evidence presented at trial, the only reasonable conclusion is that the

21  asserted claims of Samsung's patents are invalid as anticipated or obvious in view of the prior art.

22  Alternatively, if there is to be a new trial on infringement for any of Samsung's patents (which

23  there should not be), the trial should also include the validity of those patents because the jury's

24  not-invalid findings are against the clear weight of evidence.

25          **'893 Patent.**  Apple proved that claim 10 is invalid as anticipated or obvious in view of

26  Korean Patent No. 10-2004-0013792 (PX112), an LG patent published in February 2004 (Tr.

27  3206:5-11).  Dr. Dourish explained how the LG patent disclosed every limitation of claim 10 (Tr.

28  3207:4-3216:25), including a "photographing mode" (Tr. 3213:19-3214:6), a "stored-image

display mode" (Tr. 3214:7-16), a "mode-switching operation" (Tr. 3214:17-3215:12), and

displaying the "most recently displayed" image (Tr. 3215:13-3216:3) "irrespective of a duration"

under Dr. Yang's interpretation (Tr. 3216:4-21).  Dr. Dourish provided unrebutted testimony that

the LG patent renders claim 10 obvious and that secondary considerations support that opinion.

(Tr. 3217:1-3219:1.)  In rebuttal, Dr. Yang provided only conclusory testimony that the LG patent

did not disclose the "mode-switching" limitation.  (Tr. 3666:6-19.)  Dr. Yang's testimony is

insufficient to overcome Apple's proof of invalidity.

**'711 Patent.**  Apple proved that claim 9 is invalid as obvious over the Sony K700i device

(PX125) and Wong (PX91), a U.S. patent published in October 2002 (Tr. 3246:2-15).  Apple

provided unrebutted evidence that the K700i is prior art because it was on sale and publicly

available in 2004.  (PX113; PX116; PX117; Tr. 3234:21-3238:2.)  Dr. Givargis testified that the

K700i included a "music background play object" (Tr. 3241:18-3242:15) and all claim elements

other than the "applet" limitation.  (Tr. 3238:23-3244:19.)  He then explained that the claimed

invention of the '711 patent would have been obvious because applets were well known in the art,

Wong taught the use of applets for cell phones, and secondary considerations supported his

opinion of obviousness.  (Tr. 3244:20-3248:14.)  In rebuttal, Dr. Yang provided only conclusory

testimony that is insufficient to rebut Apple's proof of invalidity.  (Tr. 3666:20-3667:25.)

**'460 Patent.**  The Patent Office stated during prosecution that the three core functions

claimed in the '460 patent—emailing with text, sending an email with a picture, and looking at

stored images—"had been done by others before."  (Tr. 2467:16-20 (Yang).)  Against this

backdrop, Apple proved that claim 1 is invalid as obvious over the combination of three camera

phone patents in the prior art:  Suso (PX119), Harris (PX118), and Yoshida (PX120).

Dr. Srivastava explained how those references disclosed all the limitations found in claim 1 (Tr.

3310:14-3315:24), including that Yoshida taught a "second e-mail transmission sub-mode" (Tr.

3313:9-3315:24).  He also testified that a person skilled in the art would have been motivated to

combine those references (Tr. 3309:15-3310:8), and that secondary considerations support his

obviousness opinion (Tr. 3315:25-3316:22).  Dr. Yang summarily stated on rebuttal that Yoshida

did not teach a "second email transmission sub-mode" (Tr. 3669:2-17), but no reasonable

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

20

1    factfinder could have accepted that testimony since it is inconsistent with Yoshida's disclosure of

2    attaching a displayed image to an email (PX120 at 6:38-44, 17:60-67, 20:29-37 & Fig. 10).

3        **'516 Patent.**  Apple proved that claims 15 and 16 are invalid as obvious in view of the

4    admitted prior art ("APA") described in the '516 patent (JX1073) and Hatta (PX100), a Japanese

5    patent application published in July 2002 (Tr. 3425:24-3426:4).  Dr. Kim testified that the APA

6    disclosed a system with HARQ and non-HARQ channels that reduced power by "equally scaling"

7    power on different channels.  (Tr. 3423:6-3424:19; JX1073 at Figs. 4-5.)  He then explained that

8    Hatta taught the alleged solution of the '516 patent by *unequally* scaling down power on different

9    types of channels and that it would have been obvious to combine this teaching with the APA to

10   arrive at the claimed invention of the '516 patent.  (Tr. 3424:20-3427:20; PX100 at Fig. 5.)  Dr.

11   Kim showed how the APA combined with Hatta teaches every limitation of claims 15 and 16 of

12   the '516 patent and renders them obvious (Tr. 3427:21-3430:12), and further testified that

13   "secondary considerations" support his analysis (Tr. 3430:13-3431:6).  In rebuttal, Dr. Williams

14   offered only conclusory statements and did not contradict any of Dr. Kim's invalidity opinions.

15   (Tr. 3657:3-3658:17.)  His testimony is insufficient to rebut Apple's proof of invalidity.

16       **'941 Patent.**  Apple proved that claims 10 and 15 are invalid as anticipated by Agarwal

17   (PX97), a U.S. patent filed in July 1998 (Tr. 3454:7-11).  Dr. Knightly explained that Agarwal

18   disclosed a header format for minimizing overhead during segmentation and reassembly of data

19   packets in satellite and wireless networks.  (Tr. 3454:17-3455:9, 3457:22-3458:5.)  He also

20   explained how Agarwal taught every limitation in claims 10 and 15 (Tr. 3457:16-3460:5),

21   including that the third bit in Agarwal's header is a "one-bit field" (Tr. 3455:23-3456:3, 3456:22-

22   3457:15, 3458:18-3459:2), that Agarwal's "Total Length" and "F"/"L" fields are a "length

23   indicator with a predefined value" (Tr. 3456:4-16, 3459:3-6), and that Agarwal's "PKTSQNU" is

24   a "sequence number" (Tr. 3456:17-21, 3458:18-22).  In rebuttal, Dr. Williams summarily stated

25   that Agarwal did not disclose a "mobile communication system," a "one-bit field," a "serial

26   number," or a "length indicator," but failed to provide any explanation or respond to

27   Dr. Knightly's identification of elements in Agarwal that taught these limitations.  (Tr. 3658:18-

28   3659:17.)  Thus, a reasonable juror could only conclude that claims 10 and 15 are invalid.

1

2

**V.      APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS BREACH OF CONTRACT AND ANTITRUST COUNTERCLAIMS**

3

4

     **A.      Apple Is Entitled To Judgment As A Matter Of Law Or A New Trial That Samsung Breached Its Contractual Obligation To Timely Disclose Its Patents As Required By The ETSI IPR Policy**

5

Clause 4.1 of the ETSI IPR Policy requires that:

6

7

8

> Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of.  In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

9

(PX74.2.)  Samsung is a member of ETSI (Tr. 3483:4-5) and is therefore contractually bound by

10

this provision.  As Dr. Walker explained, when a member of ETSI submits a technical proposal, it

11

must disclose any patent that "might be essential" (Tr. 3495:12-13) and should do so "prior to

12

adoption [of the standard] actually happening" (Tr. 3495:16-18).

13

     Apple proved that Samsung was required to, but did not, disclose the '516 and '941 patent

14

families to ETSI before the adoption of its technical proposals.  The undisputed evidence showed

15

that:  (1) Samsung filed Korean patent applications to which the '516 and '941 patents claim

16

priority in June 2004 and May 2005, respectively (JX1073.1; Tr. 3513:6-24 (Walker); JX1070.1;

17

Tr. 3498:3-3499:23 (Walker)); (2) Samsung subsequently submitted technical proposals relating

18

to the '516 technology (Tr. 3510:10-3511:23 (Walker); PX193; JX1084) and the '941 technology

19

(Tr. 3498:25-3500:3 (Walker); JX1085; PX101) at 3GPP meetings attended by the named

20

inventors (Tr. 3512:1-4; PX70.42 ('516 inventors Kwak, Lee, Cho, and Heo attended); Tr.

21

3502:10-3503:5 (Walker); PX72.15 ('941 inventor van der Velde attended)); and (3) Samsung did

22

not disclose its Korean patent applications or any IPR from the '516 and '941 patent families until

23

*after* the relevant proposals were adopted (Tr. 3513:6-24, 3506:7-3507:1 (Walker)).  Samsung

24

accordingly breached Clause 4.1.

25

     Apple also proved that Samsung's breach harmed Apple, as an implementer of the UMTS

26

standard.  As Dr. Ordover testified, "Samsung's conduct distorted the decision making process at

27

ETSI…. [T]hat distortion has led to a choice of technology that may not have been chosen but for

28

its conduct."  (Tr. 3579:2-6.)  Moreover, the adoption of Samsung's technical proposals into the

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

22

1  3GPP standard was the basis for Samsung's infringement claims against Apple.  (Tr. 2743:10-15

2  (Williams) (infringement opinion based on compliance with 3GPP release 6).)  Apple incurred

3  significant costs in defending against those claims, including fees paid to its technical experts.

4  (Tr. 3439:14-19 (Knightly) ($140,000); Tr. 3326:11-18 (Kim) (500 hours at $450/hour).)

5          Samsung did not dispute that it disclosed its IPR relating to the '516 and '941 patents only

6  *after* the relevant technical proposals were adopted.  (Tr. 3655:11-16 (Teece) ("no reason to

7  disagree" with timeline).)  Instead, Samsung's Dr. Teece  argued—without identifying any

8  specific examples resembling Samsung's conduct here (Tr. 3653:23-3655:1)—that "late"

9  disclosure is common (Tr. 3645:8-3646:12).  That is irrelevant; purported breaches by others

10  cannot excuse Samsung's breach.  *See*, *e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004,

11  1012 (Fed. Cir. 2008) (participants' understanding of disclosure obligations is relevant only "to

12  the extent the written JVT IPR policies are ambiguous").  The meaning of Clause 4.1 is not

13  ambiguous, and the unrebutted testimony of Dr. Walker is that disclosure should be made "prior

14  to adoption [of the standard] actually happening" (Tr. 3495:16-18).  Samsung has also suggested

15  that it did not need to disclose its patent applications because they were confidential, but Samsung

16  disclosed their subject matter publicly when it submitted technical proposals without requesting

17  confidential treatment under ETSI's rules (Tr. 3528:5-3529:14 (Walker)).

18      **B.      Apple Is Entitled To Judgment As A Matter Of Law Or A New Trial That
                 Samsung Breached Its Contractual Obligations To License Its Declared-
19               Essential Patents On FRAND Terms**

20          For each declared-essential patent, Samsung promised that it was "prepared to grant

21  irrevocable licenses under the IPRs on terms and conditions which are in accordance with Clause

22  6.1 of the ETSI IPR Policy, in respect of the STANDARD, to the extent that the IPRs remain

23  ESSENTIAL."  (PX122.41; PX122.24; *see* PX122.1 (general declaration).)  Samsung was bound

24  by these commitments prior to the jury's non-infringement verdict (and remains bound to offer

25  FRAND licenses to IPR it claims to be essential).  However, Samsung's first—and only—

26  licensing offer to its declared-essential portfolio was made after this litigation began, and sought

27  2.4% of the entire selling price of each accused product.  (Tr. 3145:1-3146:23 (Teece); PX80.1.)

28          Samsung did not cure the breach that arose from its failure to offer any license terms prior

to suit, and Apple proved that Samsung's post-suit demand breached its FRAND commitments in two ways.  *First*, Samsung's proposed royalty base—the entire price of each licensed product— was not FRAND because it included "many, many other features" beyond those claimed in the patents and sought royalties "on value completely unrelated to [Samsung's] patent[s]."  (Tr. 3537:12-3538:6, 3539:6-20 (Donaldson).)  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("[T]he patentee…must in every case give evidence tending to separate or apportion…damages between the patented feature and the unpatented features….") (internal quotations marks omitted).  *Second*, Apple proved that Samsung's proposed 2.4% rate was not FRAND because "if other companies choose the same approach as Samsung…then the total amount of royalty on something like an iPhone would be about 50 percent.  And from a business perspective…this would be totally unreasonable."  (Tr. 3544:17-3545:6 (Donaldson).) Dr. Teece stated that 2.4% was "in the range of rates that I've observed from other companies" (Tr. 3646:17-23), but that is irrelevant because other companies' rates have nothing to do with the appropriate rate for *Samsung's* portfolio.

Apple also proved that Samsung's breach harmed Apple.  If Samsung had made a FRAND offer to Apple for its declared-essential patent portfolios, Apple would have accepted that offer and there would have been no need for this litigation.  Apple's costs in defending against Samsung's claims for the '516 and '941 patents, including $365,000 fees that Apple paid to technical experts (Tr. 3439:14-19 (Knightly) ($140,000); Tr. 3326:11-18 (Kim) (500 hours at $450/hour)), are harms directly caused by Samsung's breach of its FRAND commitments.  The Court should grant judgment as a matter of law that Samsung breached its contractual obligations and award Apple $365,000 in damages.  Alternatively, if there is to be a new trial on infringement for Samsung's '516 or '941 patent (which there should not be), the Court should grant a new trial on Apple's contract claims because the jury's findings are against the clear weight of evidence.

### C.    Apple Is Entitled To Judgment As A Matter Of Law That Samsung Violated Section 2 Of The Sherman Act

Apple established all elements to show that Samsung violated the antitrust laws.  *See*, *e.g.*, *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)

1   (monopoly); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (injury).

2        *First*, Apple proved the relevant antitrust markets.  Dr. Ordover testified that the relevant

3   technology markets "center[] on the technologies that Samsung sponsored into the standard, and

4   all the other technologies that could have performed the features on which those technologies

5   read." (Tr. 3581:25-3582:8.)  He identified the technologies that compete in those markets based

6   on Dr. Kim's and Dr. Knightly's testimony about alternatives to the '516 and '941 patents.  (Tr.

7   3582:3-8; Tr. 3432:2-13 (Kim) ('516 alternatives); Tr. 3460:15-25 (Knightly) ('941 alternatives).)

8   Dr. Ordover also explained that the relevant markets are worldwide.  (Tr. 3583:1-3584:8.)

9        Samsung offered no evidence suggesting an alternative market.  Instead, Dr. Teece

10  criticized Dr. Ordover's methodology for failing to look at cost data for the substitutes identified.

11  (Tr. 3648:5-3649:24.)  But no such analysis is required in these technology markets.  *See*, *e.g.*,

12  *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905, 2008 WL 73689, at *3 (N.D. Cal.

13  Jan. 5, 2008) ("[A] technology market can still be defined by determining what other technologies

14  a buyer could switch to if necessary.").  Also, the alleged "incorporation of a patent into a

15  standard…makes the scope of the relevant market congruent with that of the patent." *Broadcom

16  Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3rd Cir. 2007).

17       *Second*, Apple proved that Samsung had monopoly power in the relevant markets.

18  Dr. Ordover explained that, regardless of whether the '941 and '516 patents are actually essential,

19  "the mere presence in the standard create[s] itself a very potent effect on how people act and how

20  they perceive the firm's ability to control price and overcharge for the technology."  (Tr. 3586:2-

21  16; *see also* Tr. 3579:12-19 ("[B]ecause [Samsung's patented technologies] are now standard, …

22  they have acquired what I call the holdup power, the patent owner holdup power, and that is the

23  risk that the standard setting creates.").)  Moreover, "the fact that [Samsung]…can charge, or

24  attempt to charge the non-FRAND rates to [Apple] is what economists call a direct proof of

25  market or monopoly power, and in this particular case…Mr. Donaldson concluded that what they

26  are asking for is totally way out of line with FRAND."  (Tr. 3587:8-14; *see also* Tr. 3586:8-16.)

27       *Third*, Apple proved that Samsung willfully acquired its monopoly power in the relevant

28  markets through anticompetitive activity including its failure to timely disclose its IPR, and its

1    failure to offer to license its declared-essential patents on FRAND terms.  As Dr. Ordover

2    explained, the economic effect of such conduct was to "distort the decision making process at

3    ETSI" (Tr. 3578:23-3579:3), which is clear evidence of anticompetitive conduct.  *See Broadcom*,

4    501 F.3d at 314 ("Deception in a consensus-driven private standard-setting environment harms

5    the competitive process by obscuring the costs of including proprietary technology in a standard

6    and increasing the likelihood that patent rights will confer monopoly power on the patent

7    holder.").  Dr. Ordover also established that Samsung's anticompetitive conduct led to its

8    acquisition of monopoly power.  *See*, *e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 78-80

9    (D.C. Cir. 2001).

10         *Fourth*, there was no dispute that Samsung's conduct affected interstate commerce.  (Dkt.

11   No. 1883 at 103 (Final Jury Instruction No. 70).)

12         *Finally*, Apple demonstrated that it was harmed by Samsung's anticompetitive conduct.

13   The adoption of Samsung's proposals was accomplished by Samsung and its inventors, who

14   deliberately failed to disclose their patent applications (Tr. 3579:7-11 (Ordover)), and was the

15   basis for Samsung's infringement claims against Apple.  (Tr. 2743:10-15 (Williams)

16   (infringement opinion based on products' compliance with standard).)  As Dr. Ordover explained,

17   Apple "has to spend money defending…itself in courts on these patent issues."  (Tr. 3587:19-22;

18   *see also* Tr. 3439:14-19 (Knightly) ($140,000); Tr. 3326:11-18 (Kim) (500 hours at $450/hour).)

19         Accordingly, the Court should grant judgment as a matter of law that Samsung violated

20   Section 2 of the Sherman Act and award Apple $1,095,000 in damages (for Dr. Kim's and Dr.

21   Knightly's fees, trebled per 15 U.S.C. § 15.)  Alternatively, if there is to be a new trial on

22   infringement for Samsung's '516 or '941 patent (which there should not be), the trial should also

23   include Apple's antitrust counterclaim because the jury's finding is against the clear weight of

24   evidence.

25   **VI.   APPLE IS ENTITLED TO SUPPLEMENTAL DAMAGES AND PREJUDGMENT
          INTEREST**

26         Pursuant to Rule 59(e), Apple requests that the Court amend the judgment to award

27   supplemental damages and prejudgment interest through the date a final judgment is entered

28

1    resolving proceedings before this Court.  The precise amount of supplemental damages will

2    depend on the date the amended judgment is entered.  If judgment enters on December 31, 2012,

3    Apple is entitled to supplemental damages totaling $121,098,389 and prejudgment interest of

4    $48,969,088 on the jury award and $899,201 on the supplemental damages.  Apple provides a

5    formula by which the Court can adjust the amount of supplemental damages and prejudgment

6    interest to conform to the actual date an amended judgment is entered.  Under that formula per

7    diem damages as of December 2012 are $516,197, while per diem interest is $108,658.  Pursuant

8    to this motion and Apple's motion for enhancement of damages in the amount of $535 million

9    also filed today, Apple requests amendment of the judgment to add to the existing verdict and

10   judgment a total of $707,061,678 through December 31, 2012.

11           **A.      Apple Is Entitled To A Supplemental Damage Award For Samsung's Sales
                      Between July 1 And The Resolution Of District Court Proceedings**

12           The jury awarded Apple $1,049,349,540 in damages for Samsung's infringing sales of 24

13   product models.  (Dkt. No. 1931.)  This award accounts for Samsung's infringing and diluting

14   sales only through June 30, 2012.  (*See* JX1500 (reflecting sales through Q2 2012); Dkt. No. 1554

15   at 3 ("Apple and Samsung by agreement exchanged documents reflecting financial results

16   updated for periods between April and June 2012.").)  Apple is also entitled to monetary relief—

17   supplemental damages and prejudgment interest—for Samsung's sales between July 1, 2012, and

18   the date a final judgment is entered resolving proceedings before this Court.  *See Finjan*, 626 F.3d

19   at 1212-13 (ordering supplemental damages to compensate patentee for uncompensated sales).

20           The Court has discretion in determining how to calculate post-verdict damages, and any

21   uncertainty regarding that calculation should be resolved against the infringer.  *Stryker Corp. v.*

22   *Davol Inc.*, 234 F.3d 1252, 1260 (Fed. Cir. 2000) (district court has discretion in assessing

23   damages); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554-55 (Fed. Cir. 1984)

24   (doubts regarding amount of damages should be resolved against infringer).  In awarding

25   supplemental damages, the Court should apply the jury's existing verdict without revisiting or

26   reevaluating the jury's methods or conclusions.  *See Hynix Semiconductor Inc. v. Rambus Inc.*,

27   609 F. Supp. 2d 951, 964-65 (N.D. Cal. 2009); *Presidio Components, Inc. v. Am. Technical*

28

*Ceramics Corp.*, No. 08-CV-3335-IEG, 2010 U.S. Dist. LEXIS 79039, at *4-6 (S.D. Cal. Aug. 5, 2010). This simple approach best meets the purpose of supplemental damages, which is to ensure that damages are "'adequate to compensate for the infringement'" without requiring "additional litigation [that] would be inefficient and unhelpful, serving only to delay the patentee's right to recover." *Hynix*, 609 F. Supp. 2d at 961 (quoting 35 U.S.C. § 284). Any approach to supplemental damages requiring additional discovery would only delay Apple's right to recover.

Accordingly, Apple requests that the Court calculate supplemental damages based on the jury's award of $1.05 billion and the undisputed information of actual past unit sales of infringing models. As set forth in the attached declaration, Apple's damages consultant Marylee P. Robinson first divided the jury award of $1.05 billion by the total number of Samsung's infringing and diluting sales (20,820,168), yielding an average damages amount of $50.40 per sale. (Robinson Decl. ¶ 9.) The total number of sales reflects all sales of Samsung's smartphones found to have diluted Apple's unregistered iPhone 3G trade dress and all sales after August 4, 2010 of phones found to have infringed a patent. (*Id.*) This total is consistent with Mr. Musika's trial testimony and is a conservative estimate, in that it produces a lower average damage amount than if one assumes notice only as of the filing of Apple's complaint. (*Id.* ¶ 10.)

Next, to estimate the number of Samsung's infringing sales for the third and fourth quarters of 2012, Apple's consultant evaluated eight infringing products that she could verify remain on sale[1] and made a linear plot of the actual monthly sales of those models for the nine months between October 2011 (when all eight products were on sale in the marketplace) and June 2012 (the last month for which sales were available). (*Id.* ¶ 11.) Extending the overall downward trend of this line for the remainder of 2012 resulted in projected additional sales of 2.4 million units—1,350,684 units in the third quarter and 1,052,046 units in the fourth quarter of 2012. (*Id.*) Multiplying those estimated sales by the average amount of damages per sale ($50.40) results in supplemental damages of $121,098,389 million. (*Id.* ¶ 12.) On a daily basis, the number of sales

---

[1] The Droid Charge, Galaxy Prevail, Galaxy S 4G, Galaxy S II (AT&T Edition, 4G), Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), Galaxy S II (T-Mobile edition), and Galaxy S Showcase (i500) remain on sale. (Robinson Decl. ¶ 8.)

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-CV-01846-LHK
sf-3194101

28

1   forecast for December 2012 (317,500 units, equal to 10,242 units per day) yields $516,197 in

2   supplemental damages per day.  The Court may add (or subtract) this daily amount from the

3   $121 million in supplemental damages as of December 31, 2012, to bring the supplemental

4   damages figure current to the date of the amended judgment when entered.  (*Id.* ¶ 13.)

5        **B.**    **Apple Is Entitled To Prejudgment Interest Of $49,868,289 Through December 31, 2012**

6       Under 35 U.S.C. § 284, a prevailing patent holder is entitled to prejudgment interest on

7   damages.  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656, 657 (1983) ("[P]rejudgment

8   interest should be awarded under § 284 absent some justification for withholding such an

9   award.").  Federal common law similarly authorizes awarding prejudgment interest for Lanham

10  Act violations.  *Gorenstein Enters., Inc. v. Quality Care—USA, Inc.*, 874 F.2d 431 (7th Cir.

11  1989); *see also Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990).

12      "The rate of prejudgment interest and whether it should be compounded or

13  uncompounded are matters left largely to the discretion of the district court," *Bio-Rad Labs.,*

14  *Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986), which "may award interest

15  at or above the prime rate," *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir.

16  1991).  "[W]hen the amount of the damages cannot be ascertained with precision, any doubts

17  regarding the amount must be resolved against the infringer."  *Lummus Indus., Inc. v. D.M. & E.*

18  *Corp.*, 862 F.2d 267, 274-75 (Fed. Cir. 1988) (internal quotation marks omitted).

19      This Court has repeatedly used the prime rate to calculate prejudgment interest in

20  intellectual property cases, and that is the appropriate rate for calculating prejudgment interest

21  here.  *See Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1101 (N.D. Cal.

22  2002); *Junker v. HDC Corp.*, No. C-07-05094, 2008 WL 3385819, at *6 (N.D. Cal. 2008);

23  *Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*, No. C 03-1431, 2008 WL 928535, at *3 (N.D.

24  Cal. 2008) ("Numerous other courts have also held that the prime rate is appropriate for

25  calculating prejudgment interest in a patent case.").  During the damages period, the prime rate

26  remained at 3.25%, which is not only historically low but also well below the interest rates this

27  Court has found appropriate in a variety of intellectual property cases.  *See, e.g., O2 Micro Int'l*

1   *Ltd. v. Monolithic Power Sys, Inc.*, 420 F. Supp. 2d 1070, 1076-77 (N.D. Cal. 2006) (7% rate); *In*

2   *re Hayes Microcomputer Prods. Bus.*, 766 F. Supp. 818, 824 (N.D. Cal. 1991) (7% rate);

3   *Informatica v. Bus. Objects Data Integration*, 489 F. Supp. 2d. 1075, 1087 (N.D. Cal. 2007)

4   (4.78% rate).

5          Given the historically low prime rate during the damages period as well as the fairly short

6   damages period, compounding the interest annually is warranted, and consistent with the many

7   cases in which this Court has awarded compound interest.  *See, e.g.*, *Atmel*, 202 F. Supp. 2d at

8   1101 (compounding interest quarterly and monthly).

9          Apple's damages consultant calculated prejudgment interest on the jury award of $1.05

10  billion by first allocating the damages award to each quarter from June 2010 through July 2012,

11  and then compounding at the prime rate annually.  As discussed above, to allocate the jury award,

12  she multiplied the number of actual sales in each quarter, per JX1500, by the per-unit average

13  damages amount of $50.40.  To calculate interest on these amounts, she compounded annually on

14  January 1 of each year at the prime rate of 3.25%.  (Robinson Decl. ¶¶ 15-18.)  The resulting

15  prejudgment interest totals $48,969,088 on the jury award through December 31, 2012.  (*Id.*

16  ¶ 19.)  Using the same compounding methodology for sales forecasted for supplemental damages,

17  Samsung owes an additional $899,201 in prejudgment interest on the supplemental damages

18  requested above, as of December 31, 2012.  (*Id.* ¶ 20.)  Summing these two figures yields a total

19  of $49,868,289 in prejudgment interest, assuming judgment is entered on December 31, 2012.

20  (*Id.* ¶ 21.)  By calculating daily interest at prime on this total, Apple's consultant has also

21  calculated $108,658 in prejudgment interest per day for the jury award and supplemental damages

22  amount for periods before and after December 31, 2012 so that the Court may calculate the

23  relevant interest amounts as necessary in connection with the entry of final judgment.  (*Id.* ¶ 22.)

24                                   **CONCLUSION**

25         Apple respectfully requests that this Court award Apple judgment as a matter of law on

26  the foregoing claims or in the alternative, as indicated, a new trial.  Apple also requests that this

27  Court award Apple supplemental damages and prejudgment interest.

28

1

2

Dated: September 21, 2012                MORRISON & FOERSTER LLP

3

4                                              By:    /s/ Michael A. Jacobs
                                                    Michael A. Jacobs

5
                                                    Attorneys for Plaintiff
6                                                   APPLE INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT
CASE NO. 11-cv-01846-LHK
sf-3194101

31