MCKOOL SMITH HENNIGAN, P.C.
Courtland L. Reichman (SBN 268873)
creichman@mckoolsmith.com
303 Twin Dolphin Drive, 6th Floor
Redwood Shores, CA 94065
Telephone: 650-394-1400
Fax: 650-551-9901

*Attorneys for Non-Party
Telefonaktiebolaget
LM Ericsson*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 11-CV-01846-LHK <br><br> **DECLARATION OF ANNA JOHNS IN SUPPORT OF SAMSUNG'S ADMINISTRATIVE MOTION TO SEAL** |

I, Anna Johns, declare as follows:

1. I am Director, Patent Licensing for Ericsson Inc., and am responsible for the patent licensing activities of Telefonaktiebolaget LM Ericsson ("Ericsson") in North America. I have personal knowledge of the facts stated herein.

2. I understand that Samsung has filed a renewed motion to seal, among other things, excerpts from Plaintiff's Exhibits 87 and 2065. I have reviewed Plaintiff's Exhibit 87 and pages 252 through 256 of Plaintiff's Exhibit 2065. Each exhibit discloses confidential and sensitive competitive business and licensing information of Ericsson, which Ericsson treats as trade secrets.

3. Plaintiff's Exhibit 87 appears to be an expert report prepared for Samsung, entitled "2nd Expert Report on Ericsson's Cross-License Offer to Samsung" (the "Report"). The authors of the Report describe and discuss the terms of a cross-license offer that Ericsson made to Samsung on patents essential for practicing certain GSM standards. More specifically, the Report discloses Ericsson's reference royalty rate for Ericsson's essential patents in this area, and the royalty payments that Ericsson proposed to apply in the proffered cross-license. See paragraphs 3, 4, 5, 10, 11, 12, 16, 21, 27, and 28 and Table 2. I am familiar with each of these terms. They comprise part of Ericsson's licensing strategy and approach. These terms are non-public information that Ericsson maintains as trade secrets.

4. Plaintiff's Exhibit 2065 is the transcript of the deposition of Karl Heinz Rosenbrock. Pages 252, line 25 through page 256, line 13, discuss Exhibit 13 to that deposition. Exhibit 13 is also Plaintiff's Exhibit 87. A question on page 254, lines 19 through 24, quotes from paragraph 28 of Plaintiff's Exhibit 87. That quote contains the royalty payments offered and Ericsson's reference royalty rate. These are the same terms, I identified in paragraph 3 herein as non-public information that Ericsson maintains as trade secrets.

5. Ericsson goes to great lengths to protect its licensing terms and related information from disclosure, including the terms and information which I have identified in Plaintiff's Exhibits 87 and 2065. Prior to entering talks with Samsung, the parties would have agreed to keep their negotiations, including the licensing terms, confidential and to maintain that confidentiality even if a license did not result from their negotiations. To my knowledge, Ericsson has complied with this

confidentiality agreement, and I am not aware of any violations of this agreement by Samsung.

6. Given the highly competitive nature of Ericsson's business and the fact Ericsson and the other companies that compete with it do so through technology development and the licensing of technology and products derived from that technology, licensing negotiations are constant, almost continual, and are conducted in private with the parties agreeing to maintain the confidentiality of the negotiations and the licensing terms even when the negotiations do not culminate in a license. Ericsson's licensing counterparts expect Ericsson to keep the terms of their negotiations secret and Ericsson expects the same of them.

7. The terms that are offered during negotiations, including royalty rates, royalty payments, and how each was determined, are just as important as the final license terms in understanding and determining a license negotiation strategy. Disclosure of these terms would provide competitors and potential licensees with knowledge of Ericsson's negotiation approach and give them an unfair competitive advantage. Competitors and potential licensees could, for example, use this information to shape and bolster their own negotiating strategy and gain a sense of the course that negotiations may take.

8. As with license terms and the terms of expired licenses, terms offered during license negotiations, including royalty rates, royalty payments, and related calculations, go to the heart of Ericsson's business and licensing strategy and planning. If the licensing terms Ericsson offers potential licensees or cross-licensees, including the information that Ericsson seeks to have sealed in Plaintiff's Exhibits 87 and 2065, become public knowledge, Ericsson will be placed at a competitive disadvantage in ongoing and future license negotiations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Plano, Texas on this 27th day of September 2012.

By: _____
Anna Johns