QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | **SAMSUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50 AND 59** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | Date:    **December 6, 2012** <br> Time:    **1:30 p.m.** <br> Place:   **Courtroom 8, 4th Floor** <br> Judge:  **Hon. Lucy H. Koh** <br><br> **FILED UNDER SEAL** |

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.    JUROR CONDUCT REQUIRES A NEW TRIAL............................................... 2

II.   SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A
      NEW TRIAL ON APPLE'S DESIGN PATENT INFRINGEMENT CLAIMS ................. 4

      A.    No Reasonable Jury Could Find Infringement of Apple's Design Patents.............. 4

      B.    No Reasonable Jury Could Find Apple's Design Patents Valid .............................. 7

III.  SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A
      NEW TRIAL ON APPLE'S TRADE DRESS CLAIMS........................................ 8

      A.    No Reasonable Jury Could Find Apple's Trade Dress Protectable ......................... 8

      B.    No Reasonable Jury Could Find Actionable and Willful Dilution ........................ 10

IV.   SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A
      NEW TRIAL ON APPLE'S UTILITY PATENT INFRINGEMENT CLAIMS .............. 12

      A.    No Reasonable Jury Could Find Apple's Utility Patents Valid ............................. 12

      B.    No Reasonable Jury Could Find Infringement Of Apple's Utility Patents............ 13

V.    THE RECORD LACKS CLEAR AND CONVINCING EVIDENCE OF *WILLFUL*
      INFRINGEMENT ............................................................................................ 15

VI.   THE RECORD LACKS SUFFICIENT EVIDENCE OF DIRECT
      INFRINGEMENT OR ACTIVELY INDUCED INFRINGEMENT BY SEC ................. 16

VII.  SAMSUNG IS ENTITLED TO JUDGMENT, NEW TRIAL AND/OR
      REMITTITUR ON DAMAGES ........................................................................ 17

      A.    The Record Lacks Sufficient Evidence To Support The Damages Verdict........... 18

            1.    The Award Of $948,278,061 For Samsung's Profits................................. 18

            2.    The Award of $91,132,279 For Apple's Lost Profits ............................... 20

            3.    The Award Of $9,180,124 In Royalties ................................................... 22

      B.    The Damages Rest Upon An Incorrect Notice Date ............................................. 23

      C.    At A Minimum, The Jury's Damages Award Should Be Remitted....................... 24

            1.    Reduction Of $70,034,295 In Lost Profits ............................................... 24

2.      Reductions of $253,328,000 And $220,952,000 To Reflect Correct
        Notice Dates ........................................................................................... 25

3.      Reductions Of $329,204,825 And $86,162,404 Based On The
        Portion Of Samsung's Profits Attributable To Infringement or
        Dilution.................................................................................................... 25

4.      Reduction of $57,867,383 On The Prevail................................................. 26

VIII.   SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS
        OFFENSIVE CASE ........................................................................................... 26

        A.      Judgment of Infringement Should be Entered for the '516 and '941 Patents ......... 26

        B.      Standards Patents Exhaustion.................................................................... 28

        C.      Judgment Should Be Entered For Samsung On The '460, '893, & '711
                Patents ......................................................................................................... 29

IX.     A NEW TRIAL SHOULD BE GRANTED IN THE INTERESTS OF JUSTICE ............. 30

# TABLE OF AUTHORITIES

**Page**

## Cases

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
2008 WL 4279812 (D. Or., Sept. 12, 2008) ................................................21, 27

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) ...........................................................................1

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994) ..............................................................................24

*Anti-Monopoly, Inc. v. Gen. Mills Fun Group*,
611 F.2d 296 (9th Cir. 1979) ................................................................................8

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ................................................................................6

*Aro Mfg. Co. v. Convertible Top Replac. Co.*,
377 U.S. 476 (1964) ............................................................................................27

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
457 F.3d 1062 (9th Cir. 2006) ..........................................................................8, 9

*Avery Dennison Corp. v. Sumpton*,
189 F.3d 868 (9th Cir. 1999) ...........................................................................8, 10

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
1 F.3d 1214 (Fed. Cir. 1993) ..............................................................................21

*SEB S.A. v. Montgomery Ward & Co.*,
594 F.3d 1360 (Fed. Cir. 2010) ..........................................................................29

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*,
750 F.2d 903 (Fed. Cir. 1984) ............................................................................12

*Bard Peripheral Vascular, Inc. v. Gore & Assoc., Inc.*,
682 F.3d 1003 (Fed. Cir. 2012) ..........................................................................15

*Bell Commc'ns Res., Inc. v. Vitalink Commc'ns Corp.*,
55 F.3d 615 (Fed. Cir. 1995) ..............................................................................30

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
260 F. App'x 284 (Fed. Cir. 2008) ......................................................................15

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) .........................................................................................8, 16

*Brands Corp. v. Fred Meyer, Inc.*,
809 F.2d 1378 (9th Cir. 1987) ............................................................................10

02198.51855/4974375.1

Case No. 11-cv-01846-LHK

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

*Brocklesby v. United States*,
  767 F.2d 1288 (9th Cir. 1985)...........................................................................25

*Bush & Lane Piano Co. v. Becker Bros.*,
  222 F. 902 (2d Cir. 1915)...............................................................................19

*Bush & Lane Piano Co. v. Becker Bros.*,
  234 F. 79 (2d Cir. 1916)................................................................................19

*Carbice Corp. of Am. v. Am. Patents Dev. Corp.*,
  283 U.S. 27 (1931).......................................................................................19

*Casanas v. Yates*,
  2010 WL 3987333 (N.D. Cal. Oct. 12, 2010).......................................................3

*Coach Inc. v. Asia Pac. Trading Co.*,
  676 F. Supp. 2d 914 (C.D. Cal. 2009)...............................................................26

*CollegeNET, Inc. v. XAP Corp.*,
  483 F. Supp. 2d 1058 (D. Oregon 2007).............................................................12

*Compco Corp. v. Day-Brite Lighting, Inc.*,
  376 U.S. 234 (1964).......................................................................................8

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002).........................................................................6

*Cornell Univ. v. Hewlett-Packard Co.*,
  609 F. Supp. 2d 279 (N.D.N.Y. 2009)..........................................................19, 25

*Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001)........................................................................21

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)........................................................................17

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009)........................................................................16

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998)...........................................................................9

*Duraco Prod., Inc. v. Joy Plastic Enter., Ltd.*,
  40 F.3d 1431 (3d Cir. 1994)............................................................................10

*Dyer v. Calderon*,
  151 F.3d 970 (9th Cir. 1998)............................................................................2

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008)......................................................................4, 16

*Elmer v. ICC Fab., Inc.*,
  67 F.3d 1571 (Fed. Cir. 1995)...........................................................................9

-iv-                                                    Case No. 11-cv-01846-LHK
**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
   234 F.3d 558 (Fed. Cir. 2000)................................................................25

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)........................................................17, 25

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*,
   394 F.3d 1368 (Fed. Cir. 2005)............................................................29

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
   616 F.3d 1357 (Fed. Cir. 2010)............................................................24

*Gibson v. Clanon*,
   633 F.2d 851 (9th Cir. 1981)..................................................................3

*Go Med. Indus., Ltd. v. Inmed Corp.*,
   471 F.3d 1264 (Fed. Cir. 2006)............................................................23

*Goodyear Tire v. Hercules Tire*,
   162 F.3d 1113 (Fed. Cir. 1998)............................................................16

*Hard v. Burlington N. R.R.*,
   812 F.2d 482 (9th Cir. 1987)............................................................2, 3

*Highmark, Inc. v. Allcare Health Mgmnt. Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012)............................................................15

*Hupp v. Siroflex of Am.*,
   122 F.3d 1456 (Fed. Cir. 1997)............................................................16

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)..............................................................15

*I.P. Lund Trading ApS v. Kohler Co.*,
   163 F.3d 27 (1st Cir. 1998)............................................................8, 10

*Informatica Corp. v. Business Objects Data Integration, Inc.*,
   2007 WL 2344962 (N.D. Cal. Aug. 16, 2007)....................................25

*Int'l Seaway Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009)..............................................................6

*Intel Corp. v. Broadcom Corp.*,
   173 F. Supp. 2d 201 (D. Del. 2001)....................................................29

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001)............................................................30

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   327 F.3d 1364 (Fed. Cir. 2003)............................................................28

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982)......................................................................9, 10

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

*IpVenture, Inc. v. Cellco P'ship,*
   2011 WL 207978 (N.D. Cal. Jan. 21, 2011) ..................................................15

*Jazz Photo Corp. v. U.S.,*
   439 F.3d 1344 (Fed. Cir. 2006) .............................................................29

*Jessen Elec. & Serv. Co. v. Gen. Tel. Co.,*
   106 F.3d 407 (9th Cir. 1997) .................................................................1

*Junker v. HDC Corp.,*
   2008 WL 3385819 (N.D. Cal. July 28, 2008) .............................................19

*Kellogg Co. v. Nat'l Biscuit Co.,*
   305 U.S. 111 (1938) ..........................................................................10

*LML Holdings, Inc. v. Pac. Coast Dist., Inc.,*
   2012 WL 1965878 (N.D. Cal. May 30, 2012) ...........................................15

*L&W, Inc. v. Shertech, Inc.,*
   471 F.3d 1311 (Fed. Cir. 2006) .............................................................13

*Lakeside-Scott v. Multnomah Cty.,*
   556 F.3d 797 (9th Cir. 2009) .................................................................1

*Laserdynamics v. Quanta Computer, Inc.,*
   __ F.3d ___, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012) ...........................10

*Lee v. Dayton-Hudson,*
   838 F.2d 1186 (Fed. Cir. 1988) .............................................................4

*Lindy Pen Co. v. Bic Pen Corp.,*
   982 F.2d 1400 (9th Cir. 1993) ..............................................................20

*Litecubes, LLC v. N. Light Products, Inc.,*
   523 F.3d 1353 (Fed. Cir. 2008) .............................................................29

*Litton Sys., Inc. v. Honeywell, Inc.,*
   140 F.3d 1449 (Fed. Cir. 1998) .............................................................24

*Los Angeles Nut House v. Holiday Hardware Corp.,*
   825 F.2d 1351 (9th Cir. 1987) ..............................................................14

*Lotus Dev. v. Borland Int'l,*
   49 F.3d 807 (1st Cir. 1995) ..................................................................6

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009) .............................................................17

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon,*
   420 F.3d 1369 (Fed. Cir. 2005) .............................................................16

*McKeon Prods., Inc. v. Flent Prods. Co.,*
   2002 U.S. Dist. LEXIS 27123 (E.D. Mich. Nov. 19, 2002) ...........................11

*Merch. & Evans, Inc. v. Roosevelt Bldg. Products Co., Inc.*,
   963 F.2d 628 (3d Cir. 1992) ..................................................................................8

*Mgmt. Sys. Assocs., Inc. v. McDonnell Douglas Corp.*,
   762 F.2d 1161 (4th Cir. 1985) ............................................................................29

*Miller v. Eagle Mfg. Co.*,
   151 U.S. 186 (1894) ...............................................................................................7

*Mirror Worlds, LLC v. Apple Inc.*,
   2011 WL 6939526 (Fed. Cir. Nov. 10, 2011) ...................................................17

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007) ...............................................................................1

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   476 F. Supp. 2d 1143 (N.D. Cal. 2007) ............................................................21

*MyMail, Ltd. v. Am. Online, Inc.*,
   476 F.3d 1372 (Fed. Cir. 2007) .........................................................................27

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994) ............................................................................29

*Nissan Motor Co. v. Nissan Comp. Corp.*,
   378 F.3d 1002 (9th Cir. 2004) ......................................................................10, 11

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) ...........................................................................4

*PHG Techs., LLC v. St. John Cos.*,
   469 F.3d 1361 (Fed. Cir. 2006) ...........................................................................7

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
   833 F.2d 931 (Fed. Cir. 1987) ............................................................................13

*Princeton Biochemicals, Inc. v. Beckman Ins., Inc.*,
   180 F.R.D. 254 (D.N.J. 1997) ...........................................................................16

*Quanta Computer, Inc. v. LG Elec., Inc.*,
   553 U.S. 617 (2008) .............................................................................................29

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) .............................................................................5

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ............................................................19, 23, 24

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010) ...........................................................................4

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) ............................................................................21

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000).............................................................................16

*SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*,
   127 F.3d 1462 (Fed. Cir. 1997).............................................................................24

*Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*,
   206 F.3d 900 (9th Cir. 2000)..................................................................................3

*Seagate Tech., Inc. v. Hogan*,
   Case No. MS-93-0919 (Santa Cruz Mun. Ct. June 30, 1993)..................................2

*In re Seagate Techs., Inc. v. Gateway, Inc.*,
   497 F.3d 1360 (Fed. Cir. 2007)...........................................................................15

*Sealant Sys. Int'l, Inc. v. TEK Global*,
   2012 WL 13662 (N.D. Cal. Jan. 4, 2012) ...........................................................15

*Sears v. Stiffel*,
   376 U.S. 225 (1964) ...............................................................................................8

*Solannex, Inc. v. Miasole*,
   2011 WL 4021558 (N.D. Cal. Sept. 9, 2011) .....................................................15

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
   620 F.3d 1305 (Fed. Cir. 2010)...........................................................................15

*Sunbeam Prod., Inc. v. Wing Shing Prod. (BVI) Ltd.*,
   311 B.R. 378 (S.D.N.Y. 2004)............................................................................21

*Talking Rain Bev. Co., Inc. v. South Beach Bev. Co.*,
   349 F.3d 601 (9th Cir. 2003)..................................................................................9

*Tegal Corp. v. Tokyo Elec. Co.*,
   248 F.3d 1376 (Fed. Cir. 2001)...........................................................................17

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
   612 F.3d 1365 (Fed. Cir. 2010)...........................................................................17

*Textron*,
   753 F.2d at 1025..................................................................................................11

*Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002)..................................................................................8

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009).............................................................................7

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23 (2001) ........................................................................................8, 9, 16

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010)...........................................................................29

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

*U. S. v. 4.0 Acres of Land,*
    175 F.3d 1133 (9th Cir. 1999)............................................................1

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011), reh'g denied (Mar. 22, 2011)............................15

*United States. v. Colombo,*
    869 F.2d 149 (2d Cir. 1989)..........................................................2

*United States v. Gonzalez,*
    214 F.3d 1109 (9th Cir. 2000)........................................................2

*United States v. Perkins,*
    748 F.2d 1519 (11th Cir. 1984).......................................................3

*In re Velvin R. Hogan and Carol K. Hogan,*
    Case No. 93-58291-MM (Bankr. N.D. Cal. Dec. 27, 1993)................................2

*Verizon Servs. Corp. v. Vonage Holdings Corp.,*
    503 F.3d 1295 (Fed. Cir. 2007)...................................................19, 28

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
    529 U.S. 205 (2000)..................................................................8

*WhitServe, LLC v. Computer Pack., Inc.,*
    ___ F.3d ___, 2012 WL 3573845 (Fed. Cir. Aug. 7, 2012)..............................23

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
    683 F.3d 1356 (Fed. Cir. 2012).......................................................16

## Statutes

15 U.S.C. § 1111 ................................................................24, 26

15 U.S.C. § 1114 ..................................................................26

15 U.S.C. § 1117(a) ...............................................................27

15 U.S.C. § 1125(a) ...............................................................26

15 U.S.C. § 1125(c) ................................................................1

15 U.S.C. § 1125(c)(2)(B) .........................................................11

35 U.S.C. § 1125(c) ...............................................................11

35 U.S.C. § 171 ....................................................................4

35 U.S.C. § 271 ....................................................................1

35 U.S.C. § 271(a) ................................................................16

35 U.S.C. § 271(b) ................................................................17

1  35 U.S.C. § 284 ...................................................................................................................27

2  35 U.S.C. § 287(a) ..............................................................................................................24

3  35 U.S.C. § 289 .............................................................................................................19, 21

4  Fed. R. Civ. P. 49 .............................................................................................................1, 14

5  Fed. R. Civ. P. 50(a) ..............................................................................................................1

6  Fed. R. Civ. P. 50(b) ..............................................................................................................1

7  Fed. R. Civ. P. 59 .........................................................................................................1, 25, 31

8  Fed. R. Evid. 606(b)(1) ..........................................................................................................2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1

## **NOTICE OF MOTION AND MOTION**

2       PLEASE TAKE NOTICE that on December 6, 2012, at 1:30 p.m., before the Honorable

3   Lucy H. Koh, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung

4   Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court

5   for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), renewing Samsung's prior

6   request pursuant to Fed. R. Civ. P. 50(a), and alternatively for a new trial or remittitur pursuant to

7   Fed. R. Civ. P. 59, as to each and every claim and issue on which Apple prevailed before the jury,

8   including both parties' claims for patent infringement pursuant to 35 U.S.C. § 271, Apple's claims

9   for trade dress dilution pursuant to 15 U.S.C. § 1125(c), and Apple's claims for damages, as more

10  fully set forth below.   Samsung additionally requests new trial or hearing pursuant to Fed. R. Civ.

11  P. 49.   This motion is based on the memorandum of points and authorities below, the trial record,

12  the accompanying declarations of Susan Estrich, John Pierce, and Michael Wagner, all pleadings

13  and papers on file in this action, such matters as are subject to judicial notice, and all other matters

14  or arguments that may be presented in connection with this motion.

15

## **MEMORANDUM OF POINTS AND AUTHORITIES**

16       Judgment as a matter of law under Fed. R. Civ. P. 50(b) is required where a plaintiff fails

17  to present a legally sufficient basis for a reasonable jury to rule in its favor.  *Lakeside-Scott v.*

18  *Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009).   A new trial is appropriate under Fed. R. Civ.

19  P. 59 where "'the verdict is against the weight of the evidence, [] the damages are excessive, or []

20  for other reasons, the trial was not fair to the party moving.'"   *Molski v. M.J. Cable, Inc.*, 481

21  F.3d 724, 729 (9th Cir. 2007); *Rattray v. City of National City*, 51 F.3d 793, 800 (9th Cir. 1994)

22  (same, prevent "miscarriage of justice"); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d

23  1272, 1275 (Fed. Cir. 2000) (same, for "prejudicial legal error" in jury instructions).   Remittitur

24  is appropriate under Rule 59 where the damages awarded by the jury are not supportable, and the

25  "proper amount of a remittitur is the maximum amount sustainable by the evidence."   *Jessen*

26  *Elec. & Serv. Co. v. Gen. Tel. Co.,* 106 F.3d 407 (9th Cir. 1997).   Samsung is entitled to

27  judgment as a matter of law, new trial, or remittitur here for the reasons below.

28

1    **I.      JUROR CONDUCT REQUIRES A NEW TRIAL**

2          A new trial is warranted based on a finding of implied bias if a juror "lies materially and

3    repeatedly in response to legitimate inquiries," and a court should "presume bias where a juror lies

4    in order to secure a seat on the jury."  *Dyer v. Calderon*, 151 F.3d 970, 982 (9th Cir. 1998) (en

5    banc).  "Statements which tend to show deceit during *voir dire* are not barred by [Fed. R. Evid.

6    606(b)(1)]."  *Hard v. Burlington N. R.R.*, 812 F.2d 482, 485 (9th Cir. 1987).   A juror's failure to

7    answer truthfully also may constitute a "prejudicial impairment" of a party's "right to the exercise

8    of peremptory challenges."  *United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989); *see*

9    *United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000).

10         The jury foreman, Velvin Hogan, failed to answer truthfully during *voir dire*.   Asked by

11   the Court whether "you or a family member or someone very close to you [has] ever been

12   involved in a lawsuit, either as a plaintiff, a defendant, or as a witness?" (Reporter's Transcript

13   ("RT") 148:18-21), he disclosed one such lawsuit but failed to disclose two others, including one

14   in which he was sued by his former employer, Seagate, for breach of contract after he failed to

15   repay a promissory note (RT 148:22-150:12; *Seagate Tech., Inc. v. Hogan*, Case No. MS-93-0919

16   (Santa Cruz Mun. Ct. June 30, 1993), Declaration of Susan Estrich ("Estrich Decl.") Ex. A), and

17   filed for personal bankruptcy six months later (*In re Velvin R. Hogan and Carol K. Hogan*, Case

18   No. 93-58291-MM (Bankr. N.D. Cal. Dec. 27, 1993); Estrich Decl., Ex. B).  Samsung has a

19   substantial strategic relationship with Seagate (Estrich Decl. Ex. C), which culminated last year in

20   the publicized sale of a division to Seagate in a deal worth $1.375 billion, making Samsung the

21   single largest direct shareholder of Seagate (*id.* Exs. D-G).   The attorney who sued Mr. Hogan on

22   Seagate's behalf is the husband of a Quinn Emanuel partner.  *Id.* ¶3.   Mr. Hogan's failure to

23   disclose the Seagate suit raises issues of bias that Samsung should have been allowed to explore in

24   questioning and that would have triggered a motion to strike for cause or a peremptory strike.

25         Moreover, Mr. Hogan's public statements suggest that he failed to answer the Court's

26   question truthfully "in order to secure a seat on the jury," in which case bias is presumed, *Dyer*,

27   151 F.3d at 982-83 ("The individual who lies in order to improve his chances of serving [on a

28   jury] has too much of a stake in the matter to be considered indifferent.").   He stated he

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1   "expected to be dismissed from the jury because of [his] experience" and was "grateful" to be

2   selected (Estrich Decl. Ex. H), and that, "[e]xcept for my family, it was the high spot of my

3   career.  You might even say my life."   *Id.*, Ex. I.   During *voir dire*, Mr. Hogan remained silent

4   when asked if he had "strong feelings or strong opinions about either the United States patent

5   system or intellectual property laws" (RT 167:1-6) and would be able to follow the Court's

6   instructions "even if it may not completely correspond to what you may know about the patent

7   system or the intellectual property laws."  RT 159:25-160:11; 165:13-18.   After the verdict,

8   however, he said he wanted to be satisfied that the verdicts "protected copyrights and intellectual

9   property rights" in order "to send a message to the industry at large that patent infringing is not the

10  right thing to do" and "make sure the message we sent was not just a slap on the wrist."   Estrich

11  Decl. Exs. I, J. K.

12      Finally, Mr. Hogan's self-reported conduct during the jury deliberations presents the

13  "reasonable possibility" that extraneous material "could have affected the verdict."   *Sea Hawk*

14  *Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*, 206 F.3d 900, 906 (9th Cir. 2000*).*   In post-verdict

15  interviews with the media, Mr. Hogan said that he told his fellow jurors an accused device

16  infringes a design patent based on "look and feel" (Estrich Decl. Ex. N), that an accused device

17  infringes a utility patent unless it is "entirely different" (i*d.* Ex. M), that a prior art reference could

18  not be invalidating unless that reference was "interchangeable" (*id.* Exs. L, N), and that

19  invalidating prior art must be currently in use (*id.* Ex. O).   These incorrect and extraneous legal

20  standards had no place in the jury room.   *See Hard*, 812 F.2d at 485; *Gibson v. Clanon*, 633 F.2d

21  851, 853, 855 (9th Cir. 1981); *United States v. Perkins*, 748 F.2d 1519, 1530-33 (11th Cir. 1984);

22  *Casanas v. Yates*, 2010 WL 3987333, at *6 (N.D. Cal. Oct. 12, 2010) (approving for cause

23  dismissal where juror "was applying his experience to question the law, not using his experience

24  to determine the facts").

25      For all these reasons, Mr. Hogan's conduct during *voir dire* and jury deliberations must be

26  fully examined in a hearing with all jurors and can be cured only by a grant of new trial.

27

28

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

## II.   SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON APPLE'S DESIGN PATENT INFRINGEMENT CLAIMS

### A.   No Reasonable Jury Could Find Infringement of Apple's Design Patents

The key to design patent infringement is whether a "hypothetical ordinary observer who is conversant with the prior art" would in purchasing be deceived by similarities with an accused product *when focusing only on the ornamental features* of the claimed designs.   *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).   Design patent law protects only designs that are new, original and ornamental, 35 U.S.C. § 171, not "general design concepts," *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997), or a design's "functional" and "structural" elements or "basic configuration," *Lee v. Dayton-Hudson*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).   Unprotected attributes must be "factored out" when analyzing infringement, with only the remaining elements compared to the accused designs.   *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); *OddzOn Prods*, 122 F.3d at 1405. Even differences between the patented and accused designs that are so minor that they "might not be noticeable in the abstract can become significant" in light of prior art.   *Egyptian Goddess*, 543 F.3d at 678.[1]

The record fails to support the jury's finding of infringement of any of Apple's design patents under these standards.   Apple conceded that some attributes of its designs were functional or otherwise unprotectable.   *E.g.*, RT 1197:13-17; 1199:25-1200:4 (Bressler admitting "a clear cover over the display element" is "absolutely functional"); 1438:13-19; 1440:7-12; 1474:5-76:7 (Kare admitting Apple's patents do not protect features like use of "the color green for go" on icon, or images of clock, or square shapes with rounded corners, or "colorful matrix of icons" arranged in grid).   Apple conceded that it did not limit its infringement analysis to new and ornamental designs.   RT 1090:12-22 (Bressler did not factor out functional elements); 1470:12-

---

[1]   The Court's design patent instructions to the jury erred under these standards in failing to explain that the jury's comparisons must be from the perspective of a hypothetical ordinary observer who is conversant with the prior art; in relegating the comparison of patented and accused designs to the prior art to a series of discretionary guidelines, in instructing that "[m]inor differences should not prevent a finding of infringement," and in failing to factor out non-ornamental elements.   Dkt. 1903 at 63.   These instructional errors require a new trial.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

16; 3475:1-24 (Kare did not consider functionality). And Apple failed to show that an ordinary observer would be deceived by similarities, admitting that, "by the end of the smartphone purchasing process, the ordinary consumer would have to know which phone they were buying." RT 1103:13-1104:18.[2] Judgment as a matter of law for Samsung is therefore required. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992).

***The D'677 and D'087 Patents***. The jury should have factored out the non-ornamental elements of these design patents in assessing infringement, especially since the record showed that those designs are largely devoid of ornamentation (RT 1145:19-23 (designs do not "have much ornament"); RT 522:8-12 (Apple wanted iPhone to be "as simple as possible")). The record showed that the non-ornamental elements included designs that are rectangular and have curved corners; have flat, clear, large screens; are of a size that can be handheld; are black; and have speakers near the top, opaque borders and a bezel. RT 675:5-12; 678:5-680:15 (larger screens benefit users, black and opaque borders hide components, speaker near top is required for sound, and round corners "help you move things in and out of your pocket"); RT 1199:8-1200:4 (transparent cover). Moreover, as Apple admitted, the prior art discloses numerous elements of these designs, including at least a "rectangular" display screen that is "balanced vertically and horizontally within the design," "rounded corners," "narrower lateral borders," "larger borders above and below the screen," a bezel, and a "lozenge shaped" speaker placed in the top border. RT 1110:23-1121:4, 1175:1-4 (referencing DX511, DX727, DX728 and JX1093).

Considering only the ornamental attributes of Apple's designs in light of the prior art, no reasonable jury could find infringement of the D'677 and D'087 patents by any accused device. Apple's expert Peter Bressler admitted that "details are important" and "contribute to how an

---

[2] Bressler admitted he lacked evidence "that any consumer has ever purchased a Samsung smartphone believing it was actually a device manufactured by [Apple]" or that "consumers have been confused at any time when purchasing Apple devices or Samsung devices into thinking they are devices from the other manufacturer" or "whether anybody would ever be deceived" when purchasing a smartphone. RT 1101:11-1102:8; 1103:2-1104:18; DX807. Bressler's opinions were also based on the incorrect standard of whether an ordinary observer "might" mistake two designs, and an erroneous belief that similarity need not "be deceptive." RT 1008:12-1010:4; 1105:6-22. Dr. Kare admitted she did not know whether consumers would be deceived after turning a Samsung phone on and navigating to the application screen. RT 1424:1-1425:22.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

ordinary observer forms an overall impression" and pointed to the "very specific proportion[s]" of Apple's phone designs and the "very specific impression" those dimensions create.   RT 1016:11-20, 1019:5-8, 1133:9-11, 1157:8-12.   Apple distinguished its own designs from the prior art based on "little differences" in details.   RT 3613:6-11; 1154:3-15 (distinction in "lateral borders"); 1176:6-21 (distinction that "lozenge shaped speaker opening" is "centered"); 1351:17-1352:10, 3597:10-3598:1 (prior art is "not absolutely flat all the way across the front"); 1121:7-10 (absence of bezel in prior art).   The types of differences that suffice to separate Apple's designs from prior art also suffice to prevent a finding of infringement.   *Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009).   Comparison of Samsung's products and Apple's designs shows such differences and more exist here, as Apple's expert admits.   RT 1176:13-1178:25 (locations of speaker slots); 1126:10-1127:24, 1131:7-1132:1, 1138:5-1140:7 (absence of bezel, differing shapes or forms of bezels); 1143:2-16 (shapes of corners); 1162:18-23 (additional keys).

   ***The D'305 Patent***.   Nor could any rational jury have found infringement of the D'305 when limited to its ornamental visual impression.   Apple does not own the concept of colorful icons arranged in a grid of square icons with rounded corners, nor can Apple claim protection over the functional aspects of the D'305 design, including the use of pictures and images as "visual shorthand" to communicate information (RT 1452:1-1455:25), the inclusion of sufficient space between icons to allow for finger-operation (RT 1467:3-1468:22), and other elements discussed above.[3]   Apple's expert Susan Kare admitted that differences abound between the accused Samsung products and Apple's designs, including the selection, location and shapes of, and images on, the icons.   RT 1426:2-1435:24; 1444:7-23.   Apple only attempted to claim 2 of the 20 Samsung icons were substantially similar to Apple's icons.   RT 1429:2-1430:25; 1433:9:-1435:24; 1444:7-23.   Apple admitted that the home screen of the accused products "doesn't, in

---

[3]   Courts have repeatedly denied a monopoly in the copyright context over the GUI design concepts that Apple seeks to protect here.   *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) ("No copyright protection inheres in the[] ideas" of "icons representing familiar objects from the office environment that describe functions being performed"); *Lotus Dev. v. Borland Int'l*, 49 F.3d 807, 815-18 (1st Cir. 1995) (similar).   The result should be no different under design patent law.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1   fact, look like the patent" (RT 1397:1-4); the fact that users are required to pass through start-up

2   screens that say "Samsung" and the names of the products at issue (RT 1422:14-1424:2) shows

3   there is no risk of deception.  *Contessa Food Prods., Inc. v. Conagra*, *Inc*., 282 F.3d 1370, 1381

4   (Fed. Cir. 2002) (ordinary observer test considers "normal use of the product").   The Court

5   should enter judgment for Samsung of non-infringement on all three of Apple's design patents, or

6   order a new trial.

7         **B.      No Reasonable Jury Could Find Apple's Design Patents Valid**

8         The Court also should enter judgment on Apple's design patents because no rational jury

9   could find those patents valid.    *First*, Apple's design patents are all invalid as functional in light

10  of the evidence discussed above.   *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366 (Fed.

11  Cir. 2006) ("If the patented design is primarily functional rather than ornamental, the patent is

12  invalid.").[4]   *Second*, the D'677 and D'087 patents are invalid as obvious based upon the prior art

13  (including the JP'638, as well as the JP'383, KR'547, and LG Prada) that Apple admitted

14  displayed  design  characteristics  of  the  asserted  patents  (RT  2581:9-2590:18;  2591:2593:20;

15  2595:7-22; DX511; DX727; DX728; JX1093).   *Titan Tire Corp. v. Case New Holland, Inc*., 566

16  F.3d 1372, 1380-81 (Fed. Cir. 2009).    *Third*, the D'677 patent is invalid for double-patenting.

17  *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 198 (1894) (second patent must be "substantially

18  different"  from  first).    D'677  and  embodiments  of  D'087  (particularly  the  sixth  embodiment)

19  depict the same design; the only elements added by the D'677 are the color black and oblique

20  lines, features that do not make D'677 "a separate invention, distinctly different and independent,"

21  *id.* at 198, and the D'087 subsumes the D'677 because Apple admits that "the flat front surface [of

22  D'087] could be any color.   It could be transparent.   It could be anything."   RT 1019:12-17.[5]

---

4      *See also* RT 2603:15-2611:7 (functional elements include "rectangular shape for the
device" and the "display," "rounded corners," "flat surface," "location of the earpiece slot" and its
"elongated shape," and color "black"); RT 1194:4-1212:14; DX807 (Bressler is "[n]o more
equipped than any ordinary observer to opine on the functionality of a smartphone" and had
"never designed a smartphone," did not consider whether alternatives "functioned the same or not"
and failed to determine if any feature affected "cost" or "quality" of article).

5      Apple claimed that the same Apple devices that embody D'087 also embody D'677 (RT
1021:16-1023:22), and that the same Samsung devices that infringe D'087 also infringe D'677.
RT 1049:6-23, 1056:6-1057:24; 1060:7-1064:11.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

*Fourth,* the D'889 patent is also invalid as obvious in light of prior art including the TC1000 and the 1994 Fidler tablet (JX1074; JX1078; DX 805; RT 2595:23-2601:17 (prior art shares "overall rectangular shape with evenly rounded corners," "transparent, flat front cover," "very large display," "flat front surface that goes across the whole front face up to a relatively thin rim," "relatively narrow profile," "almost identical to the proportions of the D'889," "flat back")), and as functional given Apple's admissions that it does not own the "use of a rectangular shape with rounded corners" or "the use of a large display screen for an electronic device." RT 3609:9-3611:10; DX 810. The Court should enter judgment of invalidity or order a new trial.

## III. SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON APPLE'S TRADE DRESS CLAIMS

### A. No Reasonable Jury Could Find Apple's Trade Dress Protectable

"The traditional interest in trademark protection is stretched very thin in dilution cases where confusion is absent," as here, and unlike patent protection, which is time-limited, trade dress law poses special dangers if used to give "permanent protection" to "the design of an article of manufacture." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 53 (1st Cir. 1998) (Boudin, J., concurring).[6] These concerns have constitutional dimension.[7]

Accordingly, trade dress is not protected if doing so would impose "significant non-reputation-related disadvantages" on competitors. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 33-35 (2001); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006). Protection is limited to "identification of source," and does not

[6] *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000) ("Consumers should not be deprived of the benefits of competition with regard to the utilitarian and aesthetic purposes that product design ordinarily serves."); *Anti-Monopoly, Inc. v. Gen. Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979) ("trademark is misused if it serves to limit competition"); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (recognizing breadth of dilution claims). Even in the infringement context, courts reject claims based on alleged post-sale confusion as to product configuration trade dress. *Gibson Guitar Corp. v. Paul Reed Guitars, LP*, 423 F.3d 539 (6th Cir. 2005).

[7] *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989) ("Congress may not create patent monopolies of unlimited duration"); *Sears v. Stiffel*, 376 U.S. 225, 232-33 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 237 (1964); *I.P. Lund Trading*, 163 F.3d at 50 (recognizing constitutional concerns when "attempting to apply the dilution analysis to the design itself of the competing product involved"); *Merch. & Evans, Inc. v. Roosevelt Bldg. Products Co., Inc.*, 963 F.2d 628, 633 (3d Cir. 1992) ("indefinite trademark protection of product innovations would frustrate the purpose of the limited duration of patents").

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1    extend to "usefulness," *id.* at 1073, or "features which constitute the actual benefit that the

2    consumer wishes to purchase," *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir.

3    2002).[8]   No reasonable jury could fail to find Apple's claimed trade dress functional under

4    *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982), for Apple's own evidence confirmed

5    that its trade dress is "essential to the use or purpose of the article" and "affects [its] cost or

6    quality."   *Au-Tomotive Gold,* 457 F.3d at 1072 (quoting *Inwood*).[9]   For example, the claimed

7    trade dress had a clear face covering the front of the iPhone (RT 1199:25-1200:16 ("absolutely

8    functional")); rounded corners (RT 680:9-15 ("help you move things in and out of your pocket"));

9    a large display screen (RT 674:20-675:24 ("a benefit to users")); a black color (RT 679:15-20

10   ("hide internal wiring and components"); familiar icon images (RT 2533:25-2534:15); and a

11   useful size and shape (DX5622.001 ("size and shape/comfort benefits")).

12        Moreover, Apple's trade dress is unprotectable on account of its aesthetic functionality.

13   Apple argued that its trade dress was designed to be aesthetically appealing and that aesthetic

14   beauty is a primary motivator for consumer purchases.   RT 484:1-11 (in designing iPhone, Apple

15   sought a "beautiful object"); 602:8-19 (iPhone is "beautiful and that that alone would be enough to

16   excite people and make people want to buy it"); 625:4-626:4 ("reasons for the iPhone success" are

17   "people find the iPhone designs beautiful" and "it's an incredibly easy-to-use device."); 635:23-

18   636:5 ("attractive appearance and design" motivates purchases); 721:3-7 (customers "lust after

19   [iPhone] because it's so gorgeous").   Apple cannot use design patents to protect these same

20   features and then obtain a perpetual monopoly in allegedly desirable designs under trade dress

21        [8]   The jury instructions did not properly explain these principles, having deleted the language
22   from the model instructions that a feature is functional "[i]f the feature is part of the actual benefit
     that consumers wish to purchase when they buy the product," RT 3921:1-10, and having
23   incorrectly stated that a feature can be non-functional even if it "contributes to consumer appeal
     and saleability" without explaining that is true, if at all, only if the feature contributing to appeal
24   "is indistinguishable from and tied to the mark's source-identifying nature." *Au-Tomotive Gold*,
     457 F.3d at 1074.   *See* Dkt. 1903 at 84.   These and other instructional errors merit a new trial.
25        [9]   A product feature "need only have some utilitarian advantage to be considered functional,"
     not "*superior* utilitarian advantages."   *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d
26   1002, 1007 (9th Cir. 1998) (emphasis in original).   Apple claimed (PX 10; RT 4111:1-12) that
     Samsung could have employed alternate designs, but alternative designs are irrelevant—once
27   functionality under *Inwood* is established, "speculation about other design possibilities" is
     immaterial.   *TrafFix*, 532 U.S. at 33; *Talking Rain Bev. Co., Inc. v. South Beach Bev. Co.*, 349
28   F.3d 601, 603 (9th Cir. 2003) (same).

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

1   law.   *E.g., Elmer v. ICC Fab., Inc.*, 67 F.3d 1571, 1580 (Fed. Cir. 1995) (trade dress functional

2   where it "was broadly defined to be essentially coextensive with, and in fact broader than, the

3   patent claim"); *Duraco Prod., Inc. v. Joy Plastic Enter., Ltd.*, 40 F.3d 1431, 1453 (3d Cir. 1994).

4        Secondary meaning requirements likewise limit trade dress protectability to cases where

5   "the primary significance of a product feature or term is to identify the source of the product rather

6   than the product itself."   *Inwood*, 456 U.S. at 851 n.11.   No rational jury could find secondary

7   meaning on the record here, for the evidence failed to show that consumers believed the *primary*

8   *significance* of the asserted trade dress was to identify it with Apple.   Apple's survey established

9   only that a majority of respondents shown blurred images of iPhones said they associate the

10  "overall appearance" of the phone with "Apple" *or* "iPhone" (RT 1583:10-1584:24), but that is

11  insufficient because a plaintiff "must show that the primary significance of the term in the minds

12  of the consuming public is not the product but the producer."   *Kellogg Co. v. Nat'l Biscuit Co.*,

13  305 U.S. 111, 118-19 (1938).   Apple's evidence that it advertised the iPhone as a whole (PX 11-

14  14) is insufficient as well; the differences here between Apple's iPhone product (which includes

15  the Apple logo, trademark, and home button) and its generic claimed trade dress (which does not)

16  undermine the claim that advertising the product as a whole created secondary meaning.   *First*

17  *Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987).

18        For these reasons, the Court should grant judgment as a matter of law that Apple's trade

19  dress is not protectable, or order a new trial.

20        **B.      No Reasonable Jury Could Find Actionable and Willful Dilution**

21        Nor did the evidence establish crucial elements of trade dress dilution and damages.

22  *First*, "to meet the 'famousness' element," "a mark [must] be truly prominent and renowned"

23  among the general public.   *Avery Dennison*, 189 F.3d at 875 (quoting *I.P. Lund*, 163 F.3d at 46)).

24  This must have been so prior to the time of Samsung's sales of accused products.   *Nissan Motor*

25  *Co. v. Nissan Comp. Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004).[10]   The record contains no

26

27  ───────────────
    [10]     The Court erroneously refused to instruct the jury that, "to be 'famous,' each of Apple's
28  asserted trade dresses must have been truly prominent and renowned at the time of Samsung's first
    (footnote continued)

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

evidence of such fame.   Apple offered no survey restricted to the time before Samsung entered the market, and its June 2011 survey shows recognition by less than 64% of likely cell phone purchasers (not the general population).   RT 1578:24-1579:4; 1584:17-1585:5; *see Nissan*, 378 F.3d at 1014 (65% awareness insufficient); *Textron,* 753 F.2d at 1025; 4 McCarthy on Trademark at § 24:106, 24-310 (2008 ed.) ("75% of the general consuming public of the United States" is required).   Much of Apple's advertisement and press coverage evidence (PX 12-14) was dated after Samsung's alleged first use, rendering it irrelevant; it focused on the product as a whole and its appealing features, not the source-identifying features of the claimed trade dress; and in any case, the consumer response to this advertising is already reflected in Apple's survey results, which show insufficient fame.

*Second*, the record does not support a finding of likely dilution.   Apple offered no evidence that the accused Samsung phones "impair the distinctiveness" of Apple's trade dress.   15 U.S.C. § 1125(c)(2)(B).   *See* RT 1534:14-21 ("no empirical evidence" and "no hard data to show that Samsung's actions have diluted Apple's brand").   And proof of at least 25 third-party smartphones bearing similar trade dress to that claimed by Apple (*see* Ex. 712 (third-party phones with similar trade dress elements); RT 893:16-25; 895:12-20 (market contains many smartphones that look similar)) undermines any finding of likely dilution.   *McKeon Prods., Inc. v. Flent Prods. Co.,* 2002 U.S. Dist. LEXIS 27123, at *34-35 (E.D. Mich. Nov. 19, 2002) (rejecting dilution claim where "retailers typically have at least hundreds of products with blue and yellow and white packaging" so that "[p]laintiff's colored packaging does not stand out in retail stores.").

*Third*, "willfulness" is a required element for any award of trade dress dilution damages. 35 U.S.C. § 1125(c) (damages available only when a party "willfully intended to trade on the recognition of the famous mark").   Willfulness requires that a party "willfully calculate[s] to exploit the advantage in an established mark," and mere copying does not suffice.   *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 920-21 (Fed. Cir. 1984).   Apple failed to introduce any evidence, let alone clear and convincing proof, that Samsung intended to trade on the source-

commercial sale of its accused products" and "have become very widely recognized by the consuming public as the designator of Apple's goods," Dkt. 1903 at 87.

1   identifying attributes of Apple's trade dress.[11]   Apple did not even contend it notified Samsung of

2   any asserted trade dress, much less establish Samsung knew its conduct was infringing.  RT

3   1968:2-11 (no mention of trade dress in presentations to Samsung); PX 52; DX 800.

4          For these reasons, the Court should also grant judgment as a matter of law or a new trial on

5   trade dress dilution liability and damages.

6   **IV.   SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW
        TRIAL ON APPLE'S UTILITY PATENT INFRINGEMENT CLAIMS**

7

8          **A.     No Reasonable Jury Could Find Apple's Utility Patents Valid**

9          No reasonable jury, applying correct standards, could find Apple's utility patents valid.

10  Samsung's expert testified that Fractal Zoom and Nomura, which both scroll or zoom by

11  distinguishing between one or two or more input points, anticipate or render obvious every

12  limitation of claim 8 of the '915 patent.   RT 2897:12-2902:5, 2908:1-7, 2903:15-2907:25 (Gray

13  invalidity testimony).   The record contains no evidence to support any contrary finding.   There

14  is also no dispute that Fractal Zoom and Nomura are 102(a) and (b) prior art to the '915 patent.

15  RT  2285:4-2290:20;  2275:24-2290:20,  2350:15-2357:18,  2362:8-2366:19;  2902:6-24;  DX  550

16  (Bogue, Forlines and Gray testimony establishing prior art dates).

17         Samsung's expert also testified that TableCloth and LaunchTile, which both have the

18  claimed snap-back behavior, anticipate or render obvious every limitation of claim 19 of the '381

19  patent.   RT 2854:18-2858:22; 2860:3-2864:11; 2864:24-2870:22; 2872:17-2873:9 (van Dam

20  invalidity testimony).   The record contains no evidence to support any contrary finding, and it is

21  undisputed that TableCloth and LaunchTile are 102(a) and (b) prior art to the '381 patent.   RT

22  2293:9-23;  2363:7-13;  2275:24-2282:4;  2290:21-2299:16;  2350:15-2351:8;  2357:19-2364:5;

23  2247:22-2248:13;  2229:14-2253:16  (Bogue,  Forlines,  Bederson  and  van  Dam  testimony

24  establishing prior art dates).

25         Samsung's expert testified that LaunchTile, Agnetta, and Robbins, which all exhibit the

26  ───────────────

27  [11]   The jury instructions incorrectly stated that willfulness could be established by a mere
    preponderance of the evidence, *see CollegeNET, Inc. v. XAP Corp.*, 483 F.Supp.2d 1058, 1066 (D.
    Oregon 2007) (clear and convincing evidence required), and failed to provide guidance as to *how*
28  to determine whether Samsung's conduct was willful.   Dkt. 1903 at 93.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

1   claimed enlarging and centering behavior, anticipate or render obvious every limitation of claim

2   50 of the '163 patent.   RT 2913:2-2917:2; 2917:3-2919:16; 2919:17-2922:6 (Gray invalidity

3   testimony).   The record contains no evidence to support any contrary finding, and there is no

4   dispute that these references are 102(a) and (b) prior art.   RT 2247:22-2248:13; 2229:14-

5   2253:16; 2919:17-2920:14; JX 1081; 2917:3-22; DX 561; JX 1046 (Bederson and Gray testimony

6   establishing prior art dates).   The Court should enter judgment of invalidity or order a new trial.[12]

7   **B.      No Reasonable Jury Could Find Infringement Of Apple's Utility Patents**

8           The Court should also enter judgment of non-infringement as to each accused product.

9   To establish infringement, Apple must show the presence of every limitation in the accused

10  product.   *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (*en

11  banc*), overruled in part on other grounds, *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83

12  (1993).   When multiple products are accused, this showing must be made as to each product; a

13  patentee "cannot simply 'assume' that all of the [accused] products are like the one [patentee's

14  expert] tested and thereby shift to [the defendant] the burden to show that is not the case."   *L&W,

15  Inc. v. Shertech, Inc*., 471 F.3d 1311, 1318 (Fed. Cir. 2006).   For the '915 and '163 patents,

16  Apple's expert performed a limitation-by-limitation analysis of only *one* product, the Samsung

17  Galaxy S II (T-Mobile) (RT 1819:18-1831:7, 1833:21-1840:22), and then introduced videos of the

18  other 23 accused devices with no infringement analysis (RT 1829:12-1830:13; 1840:23-1842:6).

19  For the '381 patent, Apple's infringement analysis for the Gallery application was also limited to a

20  single product, the Samsung Galaxy S II (AT&T) (RT 1741:15-1747:23; 1751:19-1753:12); and

21  for the Contacts application the record contains no source code evidence or even demonstrative

22  videos for six accused products (the Continuum, Epic 4G, Galaxy S (i9000), Galaxy S II (i9100),

23  Indulge, and Mesmerize) (RT 1753:13-1755:21).   This fails to meet Apple's burden of proof.

24          Separately, the record does not support any infringement of the '915 patent because the

25  event object does not cause a scroll or gesture operation as required by claim 8.   Dkt. 1158 at 20;

---

26          [12]    Mr. Hogan told the jury that prior art cannot invalidate a patent unless the prior art was
27  "interchangeable," meaning one could "load" the old "software" into the new system and have it
"run without error."   Estrich Decl., Ex. L. at 2-3.   That is incorrect. *See* 35 U.S.C. §§ 102-103;
28  Dkt. 1903 at 44, 46.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1   RT 2910:18-22; 2911:6-2912:1.    Apple identified the MotionEvent object in Samsung's devices

2   as the claimed event object (RT 1821:25-1822:17), but it is the WebView object, not the

3   MotionEvent object, that causes the scroll or gesture operation; the MotionEvent object causes

4   nothing.   RT 2911:6-2912:1 (Gray non-infringement testimony).   Apple admits that the "all-

5   important test" for infringement of the '915 patent is found in the limitation "distinguishing

6   between a single input point…that is interpreted as the scroll operation and two or more input

7   points…that are interpreted as the gesture operation."   RT 1826:12-15; 1857:2-24 (Singh

8   testimony).   But that limitation is not satisfied:   because a device that scrolls with two fingers

9   does not meet this test (RT 2896:5-12, 2912:2-19; 1860:15-1862:10), some Samsung products

10  allow for such scrolling (RT 1862:22-1865:9; 2912:2-19), and the record contains no evidence of

11  any that do not, the jury could not find infringement of the '915 patent.

12      A new trial is also necessary due to inconsistencies in the jury's verdict on the '915

13  patent.   The jury found that the Ace, Intercept, and Replenish devices do not infringe the '915

14  patent but the remainder of the accused devices do.   These verdicts are irreconcilably inconsistent,

15  for the Ace, Intercept and Replenish exhibit the same behavior as devices found to infringe,

16  including the Droid Charge, Indulge, Epic 4G, Infuse 4G, Transform and Prevail.   The same

17  Android version found in the non-infringing Ace (Android 2.2.1) and the Intercept and Replenish

18  (Android 2.2.2) are found in these other devices which the jury found to be infringing.   A new

19  trial is therefore warranted under Fed. R. Civ. P. 49.   *Los Angeles Nut House v. Holiday*

20  *Hardware Corp.*, 825 F.2d 1351, 1356 (9th Cir. 1987).

21      No reasonable jury could have found infringement of the '381 patent either.   The Court

22  previously found the claims of this patent to require the electronic document to *always* snap back.

23  Dkt. 452 at 58-60.   Samsung's products do not do so, using instead a "hold still" feature which

24  Apple's expert admitted does not infringe.   RT 1792:16-1793:7; 1796:22-1797:7 (Balakrishnan

25  non-infringement testimony).   This feature does not translate the electronic document into a

26  second direction, as required by the last limitation of Claim 19.   RT 1791:14-1799:4.

27  Samsung's products also exhibit a "hard stop" behavior, wherein they do not display an area

28  beyond the edge of the electronic document at all.   Apple admits this "hard stop" behavior does

-14-
Case No. 11-cv-01846-LHK

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

not infringe the '381 patent.   RT 1785:19-1787:3 (Balakrishnan non-infringement testimony).   Accordingly, judgment of non-infringement should enter.

## V.   THE RECORD LACKS CLEAR AND CONVINCING EVIDENCE OF *WILLFUL* INFRINGEMENT

Willfulness requires clear and convincing proof (1) to the jury that Samsung subjectively knew or recklessly disregarded that particular patents were valid and infringed, and (2) to the Court of an objectively high likelihood of such infringement.   *Bard Peripheral Vascular, Inc. v. Gore & Assoc., Inc.,* 682 F.3d 1003, 1007 (Fed. Cir. 2012); *In re Seagate Techs., Inc. v. Gateway, Inc.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).   Willfulness is assessed "on a claim by claim basis."   *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1311 (Fed. Cir. 2012).   Knowledge of the asserted patents is mandatory but insufficient.   *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010).[13]   In "ordinary circumstances" the inquiry focuses on the defendant's pre-suit knowledge because patentees "should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct"; the usual remedy for alleged post-filing willful infringement is a preliminary injunction.   *Seagate*, 497 F.3d at 1374.[14]

Here, proof of willfulness, objective as well as subjective, is deficient.   The record contains no evidence that Samsung knew of any Apple patent in issue other than the '381 patent; the '915 and '163 patents, in particular, did not issue until November 30, 2010 and January 4, 2011, mere months before this litigation commenced.   JX 1044, 1046.   As to the '381, the record shows only that it was listed amidst 75 other patents in Apple's 23-page August 2010 presentation, without proof that it was ever discussed, belying any inference that Samsung was on notice of those particular claims.   PX 52 at 12-16; *see* RT 1958:17-1959:13 (Teksler unable to testify to discussions).   Even if Samsung's defenses as to validity and infringement do not prevail, they are at least reasonable, which also forecloses a finding of willfulness.   *See Spine Solutions, Inc. v.*

---

[13]   Authorities routinely deny willfulness claims when such knowledge is not shown.   *E.g., Sealant Sys. Int'l, Inc. v. TEK Global, Inc.*, 2012 WL 13662, at *3-4 (N.D. Cal. Jan. 4, 2012); *LML Holdings, Inc. v. Pac. Coast Dist., Inc.*, 2012 WL 1965878, at *4 (N.D. Cal. May 30, 2012); *Solannex, Inc. v. Miasole*, 2011 WL 4021558, at *3 (N.D. Cal. Sept. 9, 2011); *IpVenture, Inc. v. Cellco P'ship*, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011).

[14]   Apple never sought a preliminary injunction as to the '915, '163, or D'305 patents.

1   *Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010); *Uniloc USA, Inc. v.*

2   *Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011), reh'g denied (Mar. 22, 2011); *Black &*

3   *Decker, Inc. v. Robert Bosch Tool Corp.*, 260 F. App'x 284, 291 (Fed. Cir. 2008).

4          Nor is Apple's evidence of alleged "copying" sufficient, as—far from showing willful

5   infringement—copying is "of no import on the question of whether the claims of an issued patent

6   are infringed." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d 1314, 1336 (Fed.

7   Cir. 2009); *Goodyear Tire v. Hercules Tire*, 162 F.3d 1113, 1121 (Fed. Cir. 1998) (no

8   infringement despite intent "to appropriate the general appearance of the Goodyear tire"),

9   *abrogated on other grounds by Egyptian Goddess*, 543 F.3d at 678; *Hupp v. Siroflex of Am.*,   122

10  F.3d 1456, 1464-65 (Fed. Cir. 1997).  Copying publicly-known information not protected by a

11  valid patent is fair competition, *see TrafFix,* 532 U.S. at 29; *Bonito Boats*, 489 U.S. at 159-60, and

12  it "is erroneous" to suppose "that copying is synonymous with willful infringement." *Princeton*

13  *Biochemicals, Inc. v. Beckman Ins., Inc.,* 180 F.R.D. 254, 258 n.3 (D.N.J. 1997).  Moreover, with

14  few exceptions these documents did not even address the patents or rights at issue here.   There

15  can be no equation between copying and willful infringement of established patent rights. *Wm.*

16  *Wrigley Jr. Co. v. Cadbury Adams USA LLC,* 683 F.3d 1356, 1364 (Fed. Cir. 2012).

17         Accordingly, the Court should grant judgment to Samsung on willfulness, or a new trial.

18  **VI.   THE RECORD LACKS SUFFICIENT EVIDENCE OF DIRECT INFRINGEMENT
       OR ACTIVELY INDUCED INFRINGEMENT BY SEC**

19

20         Patent infringement "cannot be predicated on acts wholly done in a foreign country."

21  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000); *see MEMC Elec.*

22  *Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375, 1377 (Fed. Cir. 2005)

23  ("Mere knowledge that a product sold overseas will ultimately be imported into the United States

24  is insufficient to establish liability under section 271(a).").   The record lacks sufficient evidence

25  that SEC engaged in any negotiations, signed any contracts, or offered for sale or sold any

26  products *in the U.S.*   The record also lacks sufficient evidence that SEC actively induced any

27  direct infringement in the U.S. under 35 U.S.C. § 271(b).   "To establish liability under section

28  271(b), a patent holder must prove that once the defendants knew of the patent, they actively and

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

1  knowingly aided and abetted another's direct infringement."  *DSU Med. Corp. v. JMS Co.*, 471

2  F.3d 1293, 1305 (Fed. Cir. 2006) (*en banc*).  "[M]ere knowledge of possible infringement by

3  others does not amount to inducement; specific intent and action to induce infringement must be

4  proven."  *DSU*, 471 F.3d at 1305; *Tegal Corp. v. Tokyo Elec. Co.*, 248 F.3d 1376, 1379 (Fed. Cir.

5  2001) ("a failure to stop infringement" is insufficient).[15]  Apple offered no evidence of

6  inducement; the evidence establishes the opposite.  RT 948:11-13; 900:12-24 (STA, SEA and

7  SEC have distinct management and employees; STA makes its own business decisions).  The

8  Court should grant judgment of non-infringement by SEC, or order a new trial.  In any event, a

9  new trial on damages is necessary because, as Apple's expert admits, the vast majority of Apple's

10  claimed damages are based on profits made by SEC.  RT 2071:1-2072:1; 2072:21-24; DX180.

11  **VII.  SAMSUNG IS ENTITLED TO JUDGMENT, NEW TRIAL AND/OR REMITTITUR ON DAMAGES**

12      Over Samsung's objection (RT 3853:5-3856:10), the Court used a verdict form providing

13  for a single damages amount for each product without specifying the amounts attributable to

14  particular patents or trade dress or whether the award was derived from Samsung's profits,

15  Apple's lost profits, and/or a reasonable royalty.  Dkt. 1931, at 15-16.[16]  Where, as here, the

16  basis for the jury's award is unclear, the Court may "work[] the math backwards" to determine the

17  basis for the award.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-37 (Fed. Cir.

18  2009); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010); *In re First*

19  *Alliance Mortg. Co.*, 471 F.3d 977, 1002-03 (9th Cir. 2006).  Comparison of the verdicts with the

20  amounts presented by Apple's expert Terry Musika in PX25A1 reveals the following:

21      •  For each of the 11 Samsung phones (Captivate, Continuum, Droid Charge, Epic

22  4G, Galaxy S II 2 (AT&T), Galaxy S II (T-Mobile), Galaxy S II (Epic 4G Touch), Galaxy S II

23  (Skyrocket), Gem, Indulge, and Infuse 4G) for which the jury found infringement of one or more

24

25      [15]     Apple agrees that inducement requires proof of "'specific intent to encourage another's
    infringement.'"  Brief of Defendant-Appellee Apple, Inc. at *25, *Mirror Worlds, LLC v. Apple*
26  *Inc.*, 2011 WL 6939526 (Fed. Cir. Nov. 10, 2011) (Nos. 2011-1392, 2011-1393) (quot. omitted).
      [16]     If the Court sets aside the verdict for insufficient proof of liability on any ground urged
27  here, the verdict's failure to separate each damages amount by patent or trade dress will mandate a
    new trial on damages.  *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310
28  (Fed. Cir. 2007).

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

1  design patents but no trade dress dilution, the jury awarded exactly 40% of Apple's claimed figure

2  for Samsung's profits.    Wagner Decl. at ¶ 12.

3      •      For each of the five Samsung phones (Fascinate, Galaxy S 4G, Galaxy S Showcase

4  (i500), Mesmerize, and Vibrant) for which the jury found infringement of one or more design

5  patents and trade dress dilution, the jury awarded exactly the amount of lost profits claimed by

6  Apple *plus* 40% of Apple's claimed figure for Samsung's profits.    *Id*. at ¶ 13 .

7      •      For five of the seven Samsung products that were found to infringe only utility

8  patents (Exhibit 4G, Galaxy Tab, Nexus S 4G ('381 & '915), Replenish ('162 and '381), and

9  Transform ('915)), the jury awarded exactly half of Apple's claimed royalties figure.    *Id*. at ¶14.

10      •      For the remaining two Samsung products found to infringe only utility patents, the

11  jury awarded exactly 40% of what Apple claimed as Samsung's profits on the Galaxy Prevail, and

12  $833,076 for the Galaxy Tab 10.1 (WiFi).    *Id*. at ¶¶ 15-16.

13      •      Accordingly, ***$948,278,061*** of the verdict represents ***Samsung's profits***:

14  ($599,859,395 for 11 phones the jury found infringed design patents, $290,551,383 for five

15  phones the jury found infringed design patents and diluted trade dress, and the remaining

16  $57,867,383 for one phone found to infringe only utility patents); ***$91,132,279*** of the verdict

17  represents Apple's ***lost profits*** for five Samsung phones found to infringe design patents and dilute

18  trade dress; ***$9,180,124*** of the verdict represents Apple's ***royalties*** for five Samsung devices found

19  to infringe only utility patents; and ***$833,076*** of the verdict represents an amount awarded for one

20  device found to infringe utility patents.    *Id*. at ¶¶ 17-20.

**A.      The Record Lacks Sufficient Evidence To Support The Damages Verdict**
**1.      *The Award Of $948,278,061 For Samsung's Profits***

***Design Patent Infringement.***    Apple did not limit its calculations of Samsung's profits to

those attributable to use of the patented designs.    While 35 U.S.C. § 289 allows an award for

patent infringement of an "article of manufacture" up "to the extent of [the infringer's] total

profit," it does not eliminate the requirement inherent in all patent infringement litigation that

causation must be shown.    *Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 33

(1931) (patent infringement is "essentially a tort"); *see ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d

02198.51855/4974375.1
**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention.").   Unless limited to the portion of profits attributable to infringement of the patented design rather than other, noninfringing features of accused devices, infringer's profits violate the causation requirement and impose excessive damages far beyond any compensation or deterrence rationale.   *Cf. Laserdynamics v. Quanta Computer, Inc.*, __ F.3d. ___, 2012 WL 3758093, at *12 (Fed. Cir. Aug. 30, 2012) (limiting damages "in any case involving multi-component products" to "the smallest salable patent-practicing unit" unless "demand for the entire product is attributable to the patented features"); *Junker v. HDC Corp.*, 2008 WL 3385819, at * 5 (N.D. Cal. July 28, 2008) (applying same rule to infringer's profits under section 289); *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 905 (2d Cir. 1915) and *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 81-82 (2d Cir. 1916) (applying same rule to predecessor statute to § 289 and limiting infringer's profits to those attributable to design of piano case rather than whole piano); *see also Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286-87 (N.D.N.Y. 2009) (Rader, J.).

The record contains no evidence that the entire sales value of Samsung's products was attributable to their outer casings or GUI, as opposed to the numerous noninfringing technological components that enable the devices to function and drive consumer choice.   Apple's own study showed that only 1% of iPhone users said that design and color is the reason they chose a phone (DX592.023), and just 5% of respondents to a J.D. Power study identified visual appeal as why they purchased a phone.   PX69.43 (all aspects of physical design comprised only up to 23% of the reasons for consumer selections, and visual appeal amounted to only 22% of that 23%, or just 5% of the total).   There was thus no evidence that infringement of the design of the outer casings or GUI caused Samsung to receive $600 million in profits.

**Trade Dress Dilution.**   "Trademark remedies are guided by tort law principles," and a plaintiff may recover "profits only on sales that are attributable to the infringing conduct."   *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993).   The record contains no evidence that Samsung profited in an amount over $290 million on sales of five phones from lessening the capacity of Apple's trade dress to identify and distinguish its goods or services.   To

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1    the contrary, Apple's expert, Professor Winer, admitted he had no empirical evidence to show

2    Samsung's actions have diluted Apple's brand, and he never quantified the amount of any alleged

3    harm from dilution or loss of any kind to Apple as a result of Samsung's actions.   RT 1534:14-

4    17; 1534:22-1535:11.   Nor did Apple's damages expert Mr. Musika.   In addition, as explained

5    above, *supra*, the evidence showed that design of a smartphone accounts for at most between 1%

6    and 5% of the reason consumers purchase a particular phone.   *See* DX592.023; PX69.43.

7        ***Failure To Deduct Samsung's Operating Expenses.***   Mr. Musika calculated Samsung's

8    profits as gross revenue minus cost of goods sold.   RT 2054:11-2055:2; PX34B.17-18.   He did

9    not deduct any of Samsung's other operating expenses, even though he admitted Samsung

10   incurred those expenses.   RT 2061:1-11.   Using his method, "the overall gross profit percentage

11   on just the accused products was approximately 35.5 percent."   RT 2060:19-21.   By contrast,

12   Samsung's expert Mr. Wagner testified to the operating expenses that Samsung incurred in

13   making the accused sales, which resulted in an average profit margin of 12%.   RT 3022:7-

14   3025:8, 3028:7-3031:23, 3074:23-3075:5.   He also noted that the audited figures for Samsung's

15   Telecommunications segment showed its profit margin to be 15%, and the entire company's

16   profitability to be 10%.   RT 3073:5-3074:22.   There was no basis for Mr. Musika's failure to

17   deduct Samsung's operating expenses in arriving at his figures for Samsung's profits.   *See*

18   *Sunbeam Prod., Inc. v. Wing Shing Prod. (BVI) Ltd.*, 311 B.R. 378, 401 (S.D.N.Y. 2004)

19   (appropriate to deduct fixed costs in determining infringer's profits under Section 289); *adidas*

20   *Am., Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812, at *13 (D. Or. Sept. 12, 2008) (same for

21   operating costs in trademark case).

22          2.    ***The Award of $91,132,279 For Apple's Lost Profits***

23        A plaintiff in a patent infringement action must establish both but-for and proximate

24   causation between infringement and lost profits, *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538,

25   1545-46 (Fed. Cir. 1995), showing "likely outcomes with infringement factored out of the

26   economic picture."   *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d

27   1336, 1355 (Fed. Cir. 2001) (citation omitted).   The record fails to support the award of $91

28   million in lost profits for five phones for several independent reasons.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1     *First*, Apple's damages expert failed to take price elasticity of demand into consideration,

2     even though it was undisputed that consumers would have had to pay $67 more for an iPhone than

3     a Samsung smartphone, and $240 more for an iPad than a Galaxy Tab.[17]   *See id.* at 1355-56

4     (requiring consideration of consumer reaction to products' "different prices"); *Monolithic Power*

5     *Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1155-56 (N.D. Cal. 2007); c*f. BIC Leisure*

6     *Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993).

7     *Second*, Apple failed to show that consumer purchases were driven by the desire for

8     Apple's designs and inventions, as opposed to the functionality of Samsung's phones.   Mr.

9     Musika referred to two Samsung documents, PX34 and PX194 (RT 2078:4-2083:3), but neither

10    discusses any of the Apple patented features or trade dress.   With respect to utility patents, Mr.

11    Musika testified that he relied on Dr. Hauser's survey.   RT 2077:1-8.   But Dr. Hauser testified

12    for less than two minutes on direct (RT 1913:23 (Time: 3:28) to RT 1916:16-17 (Time: 3:30)),

13    failed to offer any meaningful explanation, and admitted that his survey bears no relationship to

14    the real world.   *See* RT 1935:16-1936:9.

15    *Third*, the evidence failed to show that, absent Samsung's infringement, Samsung

16    customers would have bought iPhones rather than a non-accused Android device from Samsung or

17    another manufacturer.   As Apple's own research showed, just 25% of Android purchasers even

18    considered an iPhone.   PX572.82; RT 2129:4-2132:6.

19    *Fourth*, neither Mr. Musika nor any other Apple witness offered any basis to conclude

20    Apple had "either or both" the "manufacturing and marketing capacity" to sell the "2 million

21    incremental units over the two year time period" on which he based his lost profits figures.   RT

22

23

24

25

---

26    [17]   Mr. Wagner testified the average Apple customer paid $206 for an iPhone, while the average
      Samsung customer paid $139 for Samsung smartphones (RT 3049:4-3050:18), and testified the
27    average price of the Galaxy Tab was $240 lower than the iPad.   RT 3050: 19-3051:4.   Because
      Mr. Musika admitted he knew there was a difference between the prices of the parties' products
28    (RT 2132:7-2133:5), Mr. Wagner's testimony was uncontroverted.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1    2085:10-2086:3.[18]   He also admitted that Apple had no capacity to manufacture additional

2    iPhone 4s for five months during the damages period.   RT 2141:13-2142:13.

3         *Fifth*, Mr. Musika presented the jury with only one lost profits number per accused product

4    (PX25A1.4), assuming that each and every Samsung product infringed all of Apple's patents and

5    diluted all its trade dresses.   RT 2114:15-2118:24; 2122:3-2123:6.   Because the jury failed to

6    find infringement and dilution for all Apple's asserted rights, and lacked any basis in evidence to

7    adjust Mr. Musika's number on a per-product basis, the record fails to support any causation

8    between the liability findings and lost profits.[19]   Moreover, Mr. Musika's lost profits calculations

9    were based on the length of the design around periods for the intellectual property found to be

10   infringed.   RT 2084:2-19.   Yet, with the exception of a one-month design around period for the

11   '381 patent (RT 2123:12-24), Mr. Musika provided the jury with no basis to determine the length

12   of the design around period for any particular item of intellectual property (let alone the

13   reasonableness of that period), when the periods started or ended, or how changes in his notice

14   date assumptions impacted these variables, including whether the design around period had

15   already ended before the notice period even began.   *Wechsler v. Macke Int'l Trade, Inc.,* 486

16   F.3d 1286, 1294 (Fed. Cir. 2007).

17                    3.    ***The Award Of $9,180,124 In Royalties***

18        There was no evidence to support Mr. Musika's "ultimate conclusion" that a reasonable

19   per-unit royalty for each of the utility patents would be $3.10, $2.02, $2.02 (RT 2090:20-2091:2),

20   or that the combined royalty for all design patents and trade dress would be $24 per unit

21   (PX25A1.16; RT 2164:23-25).   Although Mr. Musika stated that he performed a *Georgia-Pacific*

22   analysis and used three valuation methods (RT 2088:20-21, 2089:2-17), he identified no specific

23   evidence supporting his royalty rates.   Such unsupported testimony is insufficient to support a

24

25        [18]    While Apple introduced just two pages of Mr. Musika's analysis to support this bare
     conclusion (PX25A1.14-15), Mr. Musika did not explain what these pages showed, how they were
26   prepared, or the assumptions on which they relied.   RT 2097:13-17.
          [19]    For example, Mr. Musika assumed that Samsung would have no market share from non-
27   diluting sales in Q2 2011, *see* PX25A1.8, but the jury found that many Samsung phones on sale
     that quarter (Captivate, Continuum, Droid Charge, Epic 4G, Galaxy Prevail, and Infuse 4G) did
28   *not* violate Apple's trade dress.   *See* Dkt. 1931 at 1.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1   reasonable royalty award.   *WhitServe, LLC v. Computer Pack., Inc.,* ___ F.3d ___, 2012 WL

2   3573845, at *15 (Fed. Cir. Aug. 7, 2012) (reasonable royalty award unsupported by expert

3   testimony that was "conclusory, speculative and, frankly, out of line with economic reality"); *see*

4   *also ResQNet.com*, 594 F.3d at 869-872 (similar); *Go Med. Indus., Ltd. v. Inmed Corp.*, 471 F.3d

5   1264, 1274 (Fed. Cir. 2006) (affirming JMOL rejecting unsupported trademark royalty).

6        Moreover, while Mr. Musika's royalty analysis assumes each Samsung product infringes

7   *all* Apple's claimed utility patents (RT 2114:15-2118:24; 2122:16-2123:6), the Nexus S 4G was

8   held not to infringe the '163 patent; the Replenish not to infringe the '915 patent; and the

9   Transform not to infringe the '381 or the '163 patent.   Dkt. 1931.   By using one-half of Mr.

10  Musika's calculated royalty, the jury improperly applied the *same* royalty rate to all five products,

11  despite the fact that the jury reached *different* conclusions about infringement.

**B.        The Damages Rest Upon An Incorrect Notice Date**

13       Apple's patent infringement damages are limited to the time period after it gave Samsung

14  actual written notice of the allegedly infringed patents and the specifically accused products.   *See*

15  35 U.S.C. § 287(a); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.,* 616 F.3d 1357, 1373 (Fed. Cir.

16  2010); *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *Amsted*

17  *Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).   Actual notice is

18  similarly a prerequisite for recovery of damages or profits for registered trade dress infringement

19  because Apple does not display the trade dress with the required statutory language identifying its

20  registration.   *See* 15 U.S.C. § 1111; RT 2007:21-2008:1.

21       Mr. Musika based all of his damage estimates for patent infringement and registered trade

22  dress dilution on a notice date of August 4, 2010, the date of a meeting between SEC and Apple

23  representatives.   PX25A1.2; RT 2095:6-21; 2168:18-2169:10.   But only the '381 patent was

24  mentioned in the associated presentation.   PX52.12-16; RT 1965:22-1968:11.   The earliest

25  notice Samsung received of the '915 and D'677 patents and Apple's registered trade dress was

26  Apple's filing of the April 15, 2011 complaint.   RT 1968:20-1970:2.   The earliest notice

27  Samsung received of the '163, D'305, D'889, and D'087 patents was Apple's filing of the June

28  16, 2011 amended complaint.   Dkt. 1903 (Final Instruction Nos. 42 & 57).   Mr. Musika's

reliance on an erroneous notice date inflated the revenue he used to calculate Samsung's profits and Apple's damages by more than $3.3 billion.   *See* JX1500; Wagner Decl. at 25.   Because the jury calculated Samsung's profits and Apple's damages based on Mr. Musika's use of an incorrect notice date, the Court should vacate the award and grant a new trial on damages.   *See Litton Sys., Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1465 (Fed. Cir. 1998) (new trial required "if a jury may have relied on an impermissible basis in reaching its verdict"); *see also In re First Alliance,* 471 F.3d 977, 1001-03 (9th Cir. 2006) (remanding for new trial and consideration of remittitur where "one of the figures used" by jury to determine damages award was improper); *Brocklesby v. United States*, 767 F.2d 1288, 1294 (9th Cir. 1985) (holding that "judgment must be reversed if any of the three theories [underlying it] is legally defective").[20]

### C.      At A Minimum, The Jury's Damages Award Should Be Remitted

"[T]he proper amount of a remittitur is the maximum amount sustainable by the evidence." *Informatica Corp. v. Business Objects Data Integration, Inc.*, 2007 WL 2344962, at *4 (N.D. Cal. Aug. 16, 2007).   Remittitur is appropriate under Rule 59 "(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken . . . and (2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error."   *Cornell Univ.*, 609 F. Supp. 2d at 292 (citations omitted).   Here the Court has available numerous easily quantifiable bases to reduce the award:

#### 1.      *Reduction Of $70,034,295 In Lost Profits*

Because the lost profits portion of the jury's award on five phones (Fascinate, Galaxy S 4G, Galaxy S Showcase, Mesmerize and Vibrant) found to infringe design patents and dilute trade dress rested on insufficient evidence, *see supra*, the Court should reduce the award on these phones by the amount of $70,034,295, leaving the amount awarded on those phones at most at

---

[20]    The Court's conclusion that a preservation obligation arose in August 4, 2010 (Dkt. 1894 at 16) does not establish that Apple also satisfied the more stringent statutory notice requirements for damages on its patent and trade dress claims as of that date.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1    $311,649,267, which represents 40% of Mr. Musika's number for Samsung's profits on those

2    phones (PX25A1.5).    Wagner Decl., ¶ 26.

                        **2.** ***Reductions of $253,328,000 And $220,952,000 To Reflect Correct Notice***
3                                    ***Dates***

4             Because Mr. Musika's profit calculations incorrectly assume an August 4, 2010 notice date

5    for each design patent at issue, *see supra*, the Court should reduce the jury's award of

6    $599,859,395 in Samsung's profits on the 11 phones found to infringe one or more design patents

7    but not to dilute trade dress by $253,328,000 to $346,531,495, which represents 40% of Mr.

8    Musika's calculation of Samsung's profits on these phones after adjustment for the correct notice

9    dates based on the filing of the complaint (for D '677) and the amended complaint (for D '087 and

10   D '305).    Wagner Decl., ¶ 27.    For the same reason, the Court should reduce the jury's award on

11   the five phones found to infringe design patents and dilute registered trade dress to correct for the

12   wrong August 4, 2010 notice date.    Assuming the jury's lost profit award is already eliminated,

13   *see supra*, this adjustment yields an additional reduction in the amount of $220,952,000 to

14   $90,697,267 or 40% of Mr. Musika's calculation of Samsung's profits on these phones adjusted

15   for notice.    Wagner Decl., ¶ 28.[21]

                        **3.** ***Reductions Of $329,204,825 And $86,162,404 Based On The Portion Of***
16                                 ***Samsung's Profits Attributable To Infringement or Dilution***
17

18            ***Design Patent Infringement.***    Because no more than 5% of Samsung's profits were

19   attributable to the design patents at issue, *see supra*, any award of Samsung's profits on the 11

20   phones found to infringe one or more of design patents but not to dilute trade dress should be

21   reduced to no more than 5% of Mr. Musika's calculation of Samsung's profits for these products.

22   After adjusting for the correct notice date, *see supra*, this results in an additional reduction of

23   $329,204,825, leaving an award of $17,326,570 for these 11 products.    Wagner Decl. ¶ 29 & 31.

24

---

25            [21]    Contrary to Mr. Musika's assumption (RT 2095:6-21), the damages period for Apple's
26   unregistered trade dress claim should not have commenced until the April 15, 2011 complaint,
     requiring the same reduction of any award whether for registered or unregistered trade dress
27   dilution on these five phones.    *See Coach Inc. v. Asia Pac. Trading Co.*, 676 F. Supp. 2d 914,
     924-25 (C.D. Cal. 2009) (plaintiff who sues under both 15 U.S.C. §§ 1114 and 1125(a) "must
28   meet § 1111's 'actual notice requirement . . .'").

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

1    **Trade Dress Dilution.**   Any award of Samsung's profits for the five phones found liable

2    for trade dress dilution likewise should be limited to the amount attributable to the underlying

3    trade dress violation—no more than 5% of Mr. Musika's profit number for these five products.

4    After adjusting for the removal of lost profits, *see supra*, and correcting for the incorrect notice

5    date, *see supra*, this results in an additional reduction in the award of $86,162,404, leaving a

6    remaining award of $4,534,863 for these five products.   Wagner Decl. at ¶ 30 & 31.[22]

7                    4.    ***Reduction of $57,867,383 On The Prevail***

8         The jury awarded $57,867,383 on the Galaxy Prevail.   Because the Prevail was found to

9    infringe only Apple's utility patents and Apple did not seek a reasonable royalty for this product

10   (*see* PX25A1.4-5), the only permissible remedy the jury could have awarded was Apple's

11   unsupported lost profits.   But the maximum lost profits figure Mr. Musika presented for the

12   Prevail was $8,573,370 (PX25A1.4), so the jury's award was necessarily based on Mr. Musika's

13   number for *Samsung's profits* for the Prevail, $144,668,457 (PX25A1.5).   Because infringer's

14   profits are an impermissible remedy for utility patent infringement under 35 U.S.C. §284, *Aro*

15   *Mfg. Co. v. Convertible Top Replac. Co.*, 377 U.S. 476, 506 (1964), and because Mr. Musika's

16   lost profits figures are unsupported, the damages award for this product should be remitted to zero.

17   **VIII.  SAMSUNG IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS**
18   **OFFENSIVE CASE**

19        **A.    Judgment of Infringement Should be Entered for the '516 and '941 Patents**

20        No rational jury would not find infringement of claims 15 and 16 of the '516 patent and

21   claims 10 and 15 of the '941 patent.   Since Apple did not challenge Samsung's evidence of the

22   PMB 9801's operation in the accused products (RT 3433:7-25; 3462:17-24), literal infringement

23   "reduces to a question of claim interpretation" that should be resolved in Samsung's favor.

24   *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).

25        **The "Total Transmit Power" Element of Claim 15 of the 516 Patent is Met.**   For the

26   '516 patent, the only dispute was whether the "total transmit power" limitation of claim 15 was

27   ───────────────
     [22]   15 U.S.C. § 1117(a) permits the Court to reduce an award of defendant's profits to "such
28   sum as the court shall find to be just according to the circumstances of the case."  *See adidas Am.,*
     *Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812, at *12-13 (D. Or., Sept. 12, 2008).

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1   met.   RT 3422:12-14.   The evidence showed that:   1) Apple's products calculate total transmit

2   power by summing the transmit power for all utilized channels (*i.e.*, E-DPDCH, E-DPCCH,

3   DPDCH, and DPCCH, *see* RT 3420:18-3421:2); and 2) the transmit power for its E-DPCCH

4   channel is scaled down when total transmit power exceeds maximum allowed power (RT 3421:18-

5   3422:11).   Apple asserted that the total transmit power must be calculated by summing ***only*** the

6   transmit powers for the E-DPDCH and DPDCH channels.   RT 3421:8-17.   That is at odds with

7   all of the patent's embodiments.   Figure 6, for example, shows that, when total transmit power

8   for the physical channels—which includes E-DPCH, DPDCH, DPCCH, and E-DPCCH—exceeds

9   the maximum allowed power, the transmit power for the E-DPDCH channels is scaled down.

10  JX1073 at Fig. 6.   In each embodiment, total transmit power of ***all*** utilized channels is summed

11  when determining whether total transmit power exceeds maximum allowed power and is never

12  limited to only DPDCH and E-DPDCH.   As Apple's construction of "total transmit power"

13  improperly excludes preferred embodiments, it must be rejected.   *Verizon Servs. Corp. v. Vonage*

14  *Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007); *Invitrogen Corp. v. Biocrest Mfg., L.P.*,

15  327 F.3d 1364, 1369 (Fed. Cir. 2003) (same).   When this limitation is properly construed, the

16  undisputed evidence establishes literal infringement of the '516 patent.

17        ***The "Entire SDU" Limitations of the '941 Patent are Met.***   For the '941 patent, the only

18  dispute was whether Apple's products meet the "entire SDU" limitation of claims 10 and 15, a

19  phrase whose meaning is plain from the specification and contrary to Apple's interpretation.   The

20  invention comprises a single-bit field, after the Sequence Number (SN) field in the packet header,

21  which is set to '0' when an exact match exists between the sizes of the data part and the Service

22  Data Unit (SDU) and there is no room for padding or concatenation, as shown in Fig. 5A ("DATA

23  PART = RLC SDU").   This field is set to '1' when one or more other fields, including a padding

24  field or the start of another SDU (concatenation), may be inserted.   That this one-bit field

25  indicates an exact match between the sizes of the data part and the SDU is confirmed throughout

26  the specification and never contradicted.   JX1070 at 4:7-10 ("one concrete RLC SDU…without

27  any segmentation/concatenation/ padding"); 8:27-29; 10:12-13; 6:37-44 (similar examples).   Yet

28  Apple argued the "entire SDU" field need not indicate an exact match but could be set to any

02198.51855/4974375.1                                  -27-                        Case No. 11-cv-01846-LHK
**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

1   value whether or not padding/concatenation is required.   RT 3447:19-3449:22.   This unsound

2   construction should be rejected and the verdict of non-infringement set aside.

3        **B.        Standards Patents Exhaustion**

4        The verdict that Samsung's standards patents were exhausted by Samsung's sales to Intel

5   Corp. is not supported by substantial evidence, for Apple introduced no evidence that Intel made

6   ***authorized*** "indirect" sales to Apple of the Intel PMB 9801 chips, let alone that any initial sales ***in***

7   ***the United States*** had occurred.   *See Quanta Computer, Inc. v. LG Elec., Inc.*, 553 U.S. 617, 630-

8   35 (2008); *Jazz Photo Corp. v. U.S.*, 439 F.3d 1344, 1350 (Fed. Cir. 2006).   Nor can the

9   exhaustion verdict be squared with the jury's non-infringement finding, because exhaustion

10  requires an item to sufficiently embody the patent, *Quanta,* 553 U.S. at 628.

11       Apple failed to prove an initial sale in the U.S. of the Intel PMB 9801 chips, which are

12  delivered to Apple in China.   PX79 (showing chip delivery location in China); RT 3664:4-9.

13  That the expired Intel agreement may have been international in scope "does not affect exhaustion

14  of that patentee's rights in the United States."   *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394

15  F.3d 1368, 1376 (Fed. Cir. 2005).   To the contrary, the Federal Circuit has found an initial U.S.

16  sale only where the goods are actually delivered to a U.S. location.[23]   Moreover, the sum total of

17  Apple's evidence on authorization was several lines of video deposition testimony from

18  Samsung's Dr. Ahn concerning an expired Intel agreement that he did not recognize (RT 3547:22-

19  24 (PX218.2)) and testimony from Apple expert Donaldson opining on the meaning to licensing

20  professionals of "sell . . . indirectly" (RT 3542:19-3543:24).   Apple introduced no other evidence

21  about the agreement and did not ask the Court to construe it or provide relevant guidance, a

22  "fundamental error" that undermines the verdict.   *Mgmt. Sys. Assocs., Inc. v. McDonnell Douglas*

23  *Corp.*, 762 F.2d 1161, 1177-78 (4th Cir. 1985).   Finally, Apple offered no evidence that Intel

24  Corp. took affirmative steps to extend rights to Intel Americas before the agreement expired (*see*

25

---

26  [23]      *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) (invoices "all identify delivery to U.S. destinations"); *Litecubes, LLC v. N. Light Products, Inc.*, 523 F.3d

27  1353, 1371 (Fed. Cir. 2008) (products delivered directly to U.S.); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) (same); *N.*

28  *Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578 (Fed. Cir. 1994) (same).

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW. NEW TRIAL AND REMITTITUR**

PX81.23 (authorizing Intel to extend rights to subs)) or otherwise had *any* involvement in the Intel

Americas transaction reflected in Apple's invoices.   RT 3169:4-3170:16.   There was no

evidence that Intel Corp. sold the PMB 9801 chips to Apple either directly or indirectly, let alone

with authorization.   *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 222 (D. Del. 2001).

**C.       Judgment Should Be Entered For Samsung On The '460, '893, & '711 Patents**

***The '460 Patent.***   The evidence shows that Apple's products send email messages, send

email messages displaying photos, and scroll through photos exactly as claim 1 of the '460 patent

requires.   Dkt. 1156 at 16; RT 709:20-711:19, 2383:1-2401:6, 2487:1-2490:12.   First, Apple

argued that claim 1 requires a specific sequence of steps—an claim construction argument not

properly left to the jury—that its devices allegedly cannot perform.   RT 3297:8-3300:24; Dkt.

1904 at 41; *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001).

But the intrinsic record of the '460 patent confirms that claim 1 does not have this sequence

limitation.   Dkt. 1826 at 35; JX 1069, fig. 8, tag 802 before 810; col. 10:50-11:11; Dkt. 1156 at

16.   Second, Apple argued that swiping between photos and "use of scroll keys" are not

equivalent, RT 3297:1-3; 3301:3-4, yet Apple's own user guides equate swiping and use of scroll

keys on Apple's devices and this argument only applies to some but not all accused products.   RT

2399:9-2400:16; DX 533.119.   Third, Apple argued that its apps are somehow so new that they

cannot use claim 1's "modes" (RT 3297:4-7; 3304:15-17).   This argument, however, is

unsupported either by any claim construction of "mode" or by the actual evidence – every Apple

expert and Apple's own fact witness admitted that Apple's apps have modes including "camera

mode" and "photo browsing mode," and Apple's documents confirm this.   RT 3180:19-21,

3181:2-8, 3232:25-3233:1; 3244:8-15, 3294:11-23, 3305:21-3306:4; 3318:3-3319:18; DX 533.

***The '893 Patent.***   Samsung presented indisputable evidence that Apple's products

maintain a bookmark on the last viewed image even after the user uses the camera as required by

claim 10 of the '893 patent.   RT 2403:3-2412:20, 2485:25-2486:25,3186:19-3187:2.   Apple's

first argument, that Apple uses "apps" and not "modes," is discussed above.   The second, that

Apple's products ***sometimes*** did not infringe and therefore did not meet the "irrespective of a

duration" element cannot serve as a basis for non-infringement as a matter of law.   *Bell*

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1   *Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995).   In

2   any event, this argument again impermissibly raised a matter of claim construction with the jury

3   that Apple failed to raise earlier with the Court.

4          ***The '711 Patent.*** Aside from raising the same "apps" and not "modes" argument," Apple's

5   only other argument was that its products do not have "applets."   An "applet" is construed by the

6   court.   Apple's expert, however, testified repeatedly that the term "applet" *includes* the limitation

7   of operating system independence.   RT 3225:23-3226:7; 3227:12-18.   Samsung's expert,

8   correctly applied the court's construction.   RT 2433:8-11; DX 645.   Under the Court's

9   construction, the record can only support a judgment of infringement.

10  **IX.     A NEW TRIAL SHOULD BE GRANTED IN THE INTERESTS OF JUSTICE**

11         Rule 59 permits the Court to grant new trial to prevent manifest unfairness.   Here, the

12  Court's constraints on trial time, witnesses and exhibits (Dkt. 1297, 1329) were unprecedented for

13  a patent case of this complexity and magnitude, and prevented Samsung from presenting a full and

14  fair case in response to Apple's many claims.   Denial of Samsung's "empty chair" motion (Dkt.

15  1692, 1721) compounded the problem, enabling Apple to exploit Samsung's absent witnesses to

16  repeated advantage at trial.   RT 3348:14-17; 4080:3-6; 4090:2-4; 4095:7-14; 4232:15-22.

17         Samsung was also treated unequally: Apple's lay and expert witnesses were allowed to

18  testify "we were ripped off" and "Samsung copied" (RT 509:11-510:22; 659:2-664:19; 1957:15-

19  21; 1960:15-1963:1), while Samsung's witnesses were barred from explaining how Samsung's

20  products differ from Apple's (RT 850:12-851:20; 2511:9-2515:5), or even how one Samsung

21  product differs from another (RT 948:14-950:17).   Samsung was required to lay foundation for

22  any Apple document (RT 524:15-525:19; 527:3-12), while Apple was not (RT 1525:12-1526:7;

23  1406:11-1410:8; 1844:16-1845:8; 987:21-988:20; 2832:6-12).   Apple was permitted to play

24  advertisements (RT 641:6-642:16; 645:14-646:7), but Samsung was not (Dkt 1511).   And Apple

25  had free rein to cross-examine Samsung's experts based on their depositions, but Samsung did not.

26  RT 1085:6-11; 1188:9-15; 1213:17-1220:5.   In the interests of justice, Samsung therefore

27  respectfully requests that the Court grant a new trial enabling adequate time and evenhanded

28  treatment of the parties.

**SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND REMITTITUR**

1 | DATED: September 21, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

2

By   /s/ Susan R. Estrich

3 | Charles K. Verhoeven
Kathleen M. Sullivan

4 | Kevin P.B. Johnson
Victoria F. Maroulis

5 | Susan R. Estrich
Michael T. Zeller

6 | Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,

7 | INC., and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28