Pierce Declaration

# EXHIBIT 18

Filed Under Seal

**Contains Information Subject to Apple-Samsung NDA**

April 30, 2012



**BY INTERNATIONAL OVERNIGHT & EMAIL**

Seongwoo Kim
Director
Licensing Team, IP Center
Samsung Electronics
416, Maetan 3-Dong
Yeongtong-Gu, Suwon-Si
Geongii-Do, 443-742, Korea

Dear Mr. Kim:

I write in response to your January 31, 2012 letter responding to my letter of December 24, 2011, regarding Apple's request for FRAND licensing terms for patents that Samsung has declared essential to the UMTS standard—including those that Samsung has asserted against Apple. In this letter, I address Samsung's positions regarding its declared-essential UMTS patents, and also provide specific licensing terms for Apple's own declared-essential UMTS patents.

### *Samsung's Positions Regarding Its Declared-Essential Patents*

To begin, Apple is presently licensed to Samsung's declared-essential patents by virtue of Samsung's FRAND commitments to ETSI and Apple's acceptance of Samsung's offer of a FRAND licenses when Apple began to implement the UTMS standard. Accordingly, the only remaining issue for Apple and Samsung to negotiate is the FRAND rate for Apple's present license. As Apple has stated repeatedly, it is willing to pay FRAND royalties to Samsung insofar as Samsung's declared-essential patents are actually valid, infringed, and enforceable and Apple is not otherwise authorized to practice those patents (e.g., based on Samsung's licenses with Apple's baseband chipset suppliers Intel and Qualcomm).

We are surprised that Samsung refuses to agree with the basic FRAND licensing framework that Apple set forth in its letter to ETSI dated November 11, 2011, for purposes of negotiating licensing terms with Apple. Several points must be made:

*First*, Apple does not contend that a proper portfolio rate for a party's declared-essential patents must in all instances be based exclusively on the party's number of essential patents as a proportion of all patents that have been declared essential to the UMTS standard, but rather that this calculation should help guide the negotiations. Samsung has never offered any explanation of why it could ever be entitled to a 2.4% royalty rate when it holds only a small proportion of all patents declared essential to the UMTS standard. Nor has Samsung offered any explanation, much less evidence, why the declared essential patents that Samsung has asserted against Apple should be viewed as more valuable than Samsung's other declared essential patents. The results so far in the three German cases on the EP '726, EP '528, and EP '269 patents—in which each patent was held not infringed by Apple—certainly would not support such a proposition.

According to the 2009 Fairfield Resources International Study, Samsung holds 5.45% of the total number of declared-essential patents for UMTS. Even that percentage is overstated: the

1

PLAINTIFF'S EXHIBIT NO. 79
United States District Court
Northern District of California
No. 11-CV-01846-LHK (PSG)
Apple Inc. v. Samsung Elecs.
Date Admitted:_____ By:_____

APPLE CONFIDENTIAL BUSINESS
INFORMATION, SUBJECT TO PROTECTIVE ORDER

APL794N-0000015789

**Contains Information Subject to Apple-Samsung NDA**

Fairfield Study found that Samsung had not only over-declared patents, but done so at a rate much higher than the industry as a whole. The litigation between Apple and Samsung provides further evidence of the Fairfield Study's conclusion regarding Samsung's pattern of over-declaration. Samsung has contended that its EP '726, EP '528, and EP '269 patents are essential to the UMTS standard, yet the German court recently found none of them is truly essential and held that Apple did not infringe any.

Even putting aside the over-declaration issue, and giving full effect to Samsung's own declarations, Samsung's demand would imply approximately a 44% aggregate royalty burden on UMTS products. This is far above the 5-7% range that Samsung argued (in its earlier litigation with Ericsson and InterDigital) was the appropriate range for aggregate royalties.

*Second*, it is quite surprising that Samsung would contend that a common royalty base should consist of any more than the price of the baseband chip that provides the allegedly infringing functionality—rather than the full price of an advanced device like the iPhone. Indeed, in its litigation with Ericsson, Samsung, itself, complained that Ericsson was abusively seeking to "base the royalty rate on the net selling prices of the [Samsung's] mobile telecommunications products, which are in significant part, and increasingly, determined by extraneous features that do not relate to the licensed telecommunications technology, such as photo and video cameras, games, color screens, mp3 players, and radio." We fail to understand how Samsung's demand for a royalty on the entire value of the Apple products could ever be consistent with Samsung's FRAND obligations—indeed, Samsung's own prior statements regarding FRAND cannot be reconciled with its present position. At bottom, Samsung is demanding a tax on the unprecedented innovative features in the iPhone and iPad that have no relation to telecommunications capability, exactly what Samsung claimed was not FRAND when the shoe was on the other foot.

*Third*, you state that "we disagree that a party violates its commitment to FRAND licensing by seeking an injunction." Since you wrote your last letter, the District Court in the Hague held (on March 14, 2012) that Samsung's FRAND commitments preclude Samsung from seeking injunctions on its declared-essential patents. Moreover, even long before you wrote your letter, in a 2007 submission that Samsung submitted in its litigation against Ericsson, Samsung told the court that Ericsson, "having committed itself to licensing the Patents upon fair, reasonable and non-discriminatory terms, has accepted that it can be compensated in monetary terms for any use of the Patents . . ., and "should [Ericsson] be entitled to any relief . . . the appropriate relief is the grant of damages equivalent to a fair, reasonable, and nondiscriminatory royalty." What explains Samsung's complete reversal of position? Does Samsung maintain its new position, even in the face of the Netherlands court's repudiation of that position?

In addition, as your letter re-confirms, Samsung is continuing to violate its FRAND obligations by refusing to provide Apple information required to understand whether Samsung's demands comport with Samsung's prior agreements, including information about Samsung's licenses with other parties for patents that Samsung has declared essential to the UMTS standard. Apple cannot properly evaluate whether any future license offer that Samsung might make is truly FRAND—or make an educated counteroffer—without adequate transparency to the terms of Samsung's licenses with other UMTS implementers.

APPLE CONFIDENTIAL BUSINESS
INFORMATION, SUBJECT TO PROTECTIVE ORDER

APL794N-0000015790

**Contains Information Subject to Apple-Samsung NDA**

Can Samsung provide Apple with any evidence of *any* company paying Samsung a royalty similar to the 2.4% of ASP terms that Samsung has requested from Apple? Can Samsung provide Apple with any evidence that Samsung has *ever* told a company other than Apple that Samsung's declared-essential UMTS patents should be valued at 2.4% of ASP, for either a one-way license to those patents, or as part of a larger cross-license? You have previously suggested that you cannot share license-terms information because of confidentiality agreements. But Samsung's own valuations of its own patents, as conveyed to other companies, constitute information that is within Samsung's sole control. Again, can you provide *any* evidence that Samsung has *ever* negotiated a license based on a proposal that Samsung's declared-essential UMTS patents be valued at 2.4% of ASP?

### *Apple's License Terms For Its Declared-Essential Patents*

Unlike Samsung, Apple is today willing to agree to FRAND terms for Apple's own strong and growing UMTS-essential portfolio, including the large set of patents that Apple recently acquired from Nortel. We hereby offer Samsung the following terms:

1. Apple is willing to license its declared-essential UMTS patents to Samsung on license terms that rely on the price of baseband chips as the FRAND royalty base, and a rate that reflects Apple's share of the total declared UMTS-essential patents (and all patents required for standards for which UMTS is backward-compatible, such as GSM)—provided that Samsung reciprocally agrees to this same, common royalty base, and same methodological approach to royalty rate, in licensing its declared-essential patents to Apple.

    Apple estimates that this approach, which implements the true meaning of and requirements imposed by FRAND, results in a $.33 (thirty-three cents) per unit royalty for the Apple patents. Apple will today license its declared-essential UMTS patents to Samsung at that rate, provided Samsung reciprocally agrees to the FRAND principles that result in that rate. This rate would be applied to all Samsung units that Apple has not otherwise licensed. Samsung would likewise need to agree that it would only charge royalties on Apple units that Samsung has not otherwise licensed.

* * *

We hope that Samsung will reconsider its positions and accept the FRAND framework, and that the parties can resolve their disputes amicably. Please provide your response by Monday, May 7, 2012.

Very truly yours,

Boris Teksler

Director of Patent Licensing & Strategy

3

APPLE CONFIDENTIAL BUSINESS
INFORMATION, SUBJECT TO PROTECTIVE ORDER

APL794N-0000015791