HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO ENFORCE VARIOUS COURT ORDERS**<br><br>Date:      January 19, 2012<br>Time:     10:00 a.m.<br>Place:    Courtroom 5, 4th Floor<br>Judge:   Hon. Paul S. Grewal |

**SUBMITTED UNDER SEAL
CONTAINS CONFIDENTIAL INFORMATION**

1

**TABLE OF CONTENTS**

2

**Page**

3 INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

4

5 I.    APPLE HAS NOT VIOLATED THE COURT'S ORDERS TO PRODUCE
      RELEVANT SKETCHBOOKS ..................................................................... 3

6 II.   APPLE'S PRODUCTION OF FILES RELATING TO THE CONCEPTION AND
      REDUCTION TO PRACTICE OF THE ASSERTED DESIGNS HAS BEEN
7      THOROUGH AND IT HAS NOT VIOLATED ANY COURT ORDERS ...................... 5

8        A.    CAD .................................................................................................... 6

9        B.    Sketchbooks ....................................................................................... 7

         C.    Models ................................................................................................ 7
10
         D.    Mechanical Outlines ("MCOs") ..................................................... 8

11 III.  APPLE HAS NOT VIOLATED ANY COURT ORDER REGARDING DE-
       DESIGNATION OF MODEL 035 PHOTOGRAPHS ....................................... 9

12 IV.   APPLE HAS NOT VIOLATED ANY ORDER TO IDENTIFY WHAT FILES
       WERE SEARCHED .......................................................................................... 10

13 CONCLUSION ....................................................................................................... 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Because Apple has fully complied with all of the Court's orders regarding production, Samsung's Motion to Enforce should be denied.  Samsung's motion is based on an overbroad and unsupported reading of its own requests and the Court's prior orders and is also brought for an improper purpose.

*__Sketchbooks:__*  Samsung claims that Apple has failed to produce all relevant sketchbooks, based on its belief that it previously requested and the Court's orders span dates before 2003.  Both are untrue.  Samsung's requests for Apple's sketchbooks—and the prior related motion practice before this Court—have always concerned the alleged relevance of these sketchbooks to the *asserted design patents*.  For this reason, and in view of the September 2003 conception date for the earliest design, Apple previously proposed a January 1, 2003 lower cut-off date for its sketchbook production.

Apple openly disclosed this date to Samsung and invited Samsung to propose a different date—but Samsung did not respond.  Samsung's sudden demand now for 2002 sketchbooks, after Apple has completed its sketchbook production, is arbitrary.  Samsung's moving papers confirm this, as they articulate no reason for believing 2002 sketchbooks to be relevant.  Apple could not have violated an order with respect to something that Samsung did not previously request, and it should not be forced to repeat the time-consuming and burdensome process of collecting, scanning, reviewing, and producing earlier sketchbooks based on Samsung's belated demands.

*__MCOs:__*  Samsung claims that Apple has violated Court orders allegedly requiring the production of mechanical outlines ("MCOs"), CAD drawings, prototypes, and models.  But Apple has complied with those orders.  Apple has produced industrial design models and CAD, as it agreed to do *months ago*, and Samsung has already inspected them.  As for the Model 035 CAD files that Samsung claims were not produced on December 30, Samsung simply did not know how to open them, and thus mistakenly believed that they were unavailable.

Earlier Court orders made no reference to MCOs because Samsung did not move to compel their production.  In any event, MCOs are of very limited relevance, as they relate

1   primarily to the *internal* design of the products, not the *external* designs of the products, and

2   would be an immense burden to collect and produce.

3       ***Photograph de-designation***:  Samsung claims that Apple has violated an order to de-

4   designate photographs.  This, too, is based on a misreading of the Court's December 22, 2011

5   Order.  In that Order, the Court noted that Apple "may maintain its confidentiality designation on

6   only those photos that display details or aspects of the tablet mockups that were not disclosed in

7   the earlier patent filings and that remain proprietary to Apple."  (Order Granting in Part

8   Samsung's Motion to Compel [Dkt. No. 536] at 3.)  Consistent with the Order, Apple informed

9   Samsung that it would redact the details that went beyond what was disclosed in earlier patent

10  filings before de-designating the photographs at issue—namely, scale information.  Concurrently

11  with this filing, Apple has produced to Samsung de-designated photographs with the additional

12  scale information redacted.

13      The scale information in Samsung's photographs is not part of the public record, and thus

14  Apple could not have violated an order by failing to unredact it and allow public dissemination.

15  Samsung's demand for production of de-designated versions of photographs showing non-public

16  scale information appears to be driven by its improper desire to use the images in foreign

17  litigation.

18      ***Photograph search protocol***:  Samsung claims that Apple violated an order to identify

19  which files were searched to find photographs that were submitted to the Patent Office during the

20  prosecution of the D'889 patent.  In its moving papers, however, Samsung *concedes* that Apple

21  has already provided the requested information.

22      Samsung's "motion to enforce" must be seen for what it is:  a threadbare attempt to defuse

23  a future sanctions motion against it.  Even in the final months of discovery, Samsung's production

24  has been late, incomplete, and begrudging.  (Apple's Motion to Compel Production [Dkt. No.

25  613-1] at 1-2.)  Samsung has produced documents only under court order or threatened sanctions.

26  (*See* Order Granting in Part Apple's Motion to Compel [Dkt. No. 537] (explaining that "further

27  failure to comply with the September 28 Order will subject Samsung to sanctions.")  But even

28  then, Samsung has still proceeded to miss court-ordered deadlines.  (*See* Samsung's Motion to

1  Extend Time for Compliance [Dkt. No. 554-0] (claiming that compliance with December 22,

2  2011 Order was "physically impossible"); Order Denying Samsung's Motion to Extend Time to

3  Complete Discovery [Dkt. No. 567].)  Apple has not violated this Court's orders—Samsung has.

4  The Court should deny Samsung's motion.

5  **ARGUMENT**

6        Samsung seeks an order from the Court directing Apple to "comply in full with all

7  standing discovery orders" by either January 22, 2012 (the date stated in Samsung's brief) or

8  January 25, 2012 (the date stated in Samsung's proposed order).  Apple has fully complied with

9  the Court's orders.  Samsung's motion should be denied.

10

11  **I.      APPLE HAS NOT VIOLATED THE COURT'S ORDERS TO PRODUCE RELEVANT SKETCHBOOKS.**

12        Apple finished producing *all* designer sketchbooks that it could find relating to the patents

13  in suit by December 30, 2011—a day before the deadline set by the Court in its Order of

14  December 22.  (Order Granting in Part Samsung's Motion to Compel [Dkt. No. 536] at 4)

15  ("December 22 Order.")[1]  The produced sketchbooks range in date from 2003 to 2010.

16  Samsung's theory that Apple violated the Order appears to be based on the assumption that the

17  Court required Apple to produce *all* sketchbooks in its possession, regardless of relevance.  The

18  Court did no such thing.

19        **The Court's Prior Orders:**  The Court's September 13, 2011 preliminary injunction

20  discovery order directed Apple to produce sketchbooks "relating to the four patents at issue in

21  Apple's preliminary injunction motion."  (Order Granting-In-Part and Denying-In-Part

22  Samsung's Motion to Compel [Dkt. No. 233] at 2) ("September 13 Order.")  Samsung's next

23  motion to compel did not seek to expand this universe, but rather noted that the Court had ordered

24  ────────────────

25      [1] Apple discovered five additional sketchbooks belonging to Apple designer Bart Andre after December 30, and immediately inspected the sketchbooks to identify pages relevant to the asserted designs.  (*See* Declaration of Jason R. Bartlett in Support of Apple's Opposition to

26  Samsung's Motion to Enforce Various Court Orders ("Bartlett Decl.") ¶ 2.)  Apple produced the 22 unredacted pages of content it identified as relevant, as well as additional redacted pages and

27  covers, within just a few days of the discovery of these additional sketchbooks, on January 9. (*Id.*)

28

1   "Apple to produce all relevant inventor sketchbooks relating to certain" design patents, and

2   requested that the Court enforce that prior order by ordering more fulsome copies of the

3   sketchbooks at issue.  (Samsung's Motion to Compel [ECF No. 487] at 15.)  The Court's

4   December 22 Order granted Samsung's request in part and ordered production by December 31.

5   (December 22 Order at 4.)

6        There is nothing to suggest that, via its order, the Court was seeking to expand the scope

7   of Apple's sketchbook production beyond what Samsung requested and irrespective of relevance

8   relevance.  (*Id.*)  Apple has now produced sketchbooks relating to *all* design patents in suit.

9   (Bartlett Declaration ¶ 2.)

10       **Apple's Compliance Efforts:**  As part of its collection process, Apple had to identify

11  what sketchbooks it would collect and produce.  This was a massive undertaking, and as Apple

12  has previously described to the Court, the final leg of Apple's sketchbook review and production

13  involved a team of more than 25 individuals working overtime and over weekends during the

14  holiday season to complete production.  (Apple's Opposition to Samsung's Motion to Extend

15  Time for Compliance [Dkt. No. 565] at 4-5.)  It would be nonsensical, fruitless, and burdensome

16  for Apple to additionally collect and process sketchbooks from years before designers were even

17  working on the projects that led to the design patents at issue.

18       Apple has been transparent about its sketchbook production process.  Apple disclosed on

19  *November 15* that it used a 2003 date cut-off in connection with Industrial Designer document

20  productions.  (*See* Bartlett Decl. Ex. a.)  In subsequent meet-and-confer discussions, the parties

21  discussed Apple's 2003 date cut-off on sketchbooks specifically.  (*Id.* Ex. B.) (summarizing

22  correspondence and meet-and-confer regarding lower date cut-off for industrial design document

23  production.)  Apple selected this date because it had found no evidence that any industrial

24  designer was working on anything relating to a design patent at issue until the fall of 2003.  (*Id.*)

25  As a result, the January 2003 date Apple applied provided a comfortable buffer and should

26  include all relevant sketchbooks.

27       The parties discussed Apple's 2003 date cut-off on sketchbooks specifically during a

28  meet-and-confer on December 21.  (*Id.*)  Apple invited Samsung to name a date that it considered

1    early enough, if Samsung believed that Apple's selection of 2003 as the lower cutoff was not

2    sufficiently early.  (*Id.*)  Samsung refused to do so, instead asked Apple to confirm in writing

3    what date it used as a cut-off for production of sketchbooks.  (*Id.*)  Apple did so in a letter of

4    December 24, 2011, then proceeded to complete scanning and processing of sketchbooks over the

5    Christmas holiday.  (*Id.*)  *After* Apple had completed this process, Samsung arbitrarily declared

6    that it wanted 2002 sketchbooks too.  (*Id.*)

7          To this day, Samsung still presents *no* basis for its very belated request for pre-January

8    2003 sketchbooks.  Even its motion fails to offer a rationale for why 2002 sketchbooks should be

9    relevant, or an excuse for not making its request earlier.[2]  Samsung's demands are therefore

10   baseless and its reading of the Court's Orders is wrong.  Samsung's motion should be denied.

11   **II.    APPLE'S PRODUCTION OF FILES RELATING TO THE CONCEPTION**
         **AND REDUCTION TO PRACTICE OF THE ASSERTED DESIGNS HAS**
12       **BEEN THOROUGH AND IT HAS NOT VIOLATED ANY COURT ORDERS**

13         Samsung wrongly argues that Apple has violated Court orders by failing to produce

14   documents relating to the conception and reduction to practice of the asserted design patents.

15   Apple has made a full and complete production that is more than adequate to show conception

16   and reduction to practice.  Apple has produced all the CAD files that industrial designers created

17   when they were designing the products at issue.  (Bartlett Decl. ¶ 4.)  Unlike Samsung, Apple has

18   produced all industrial design CAD, including all drafts, for all relevant products (that is, all

19   released generations of iPhone, iPad, and iPod touch).  (*Id.*)  Apple has produced every sketch

20   related to these products that its industrial designers made while working on these products.  (*Id.*)

21   And Apple has produced every model that it could find that the industrial designers made or had

22   made relating to those products.  (*Id.*)  Samsung began inspection of those models on Friday,

23   January 13, 2012.  (*Id.* Ex. G.)  The production included *more than 1,000 models*, plus assorted

24
25         [2] Samsung's reference to Apple's production of e-mails from 2002 is a red herring.  E-
     mails are produced for many reasons.  For example, an e-mail may be a hit for one of Apple's
26   search terms.  Samsung does not cite a single e-mail that suggests sketchbooks from 2002 would
     be relevant.  Samsung's failure to point to a single piece of evidence that Apple designers were
27   working on relevant designs in 2002 means it has no such evidence.  Samsung is simply grasping
     for an argument to support its late attempt to burden Apple by reopening its sketchbook collection
     and production process.
28

1  partial models and parts.  The Court's prior orders did *not* require Apple to produce MCOs.  For

2  the reasons discussed below, no such order should issue now.

3      **A.**    **CAD**

4      Apple began producing CAD files long ago, during the preliminary injunction phase of

5  this case.   Apple has produced all the CAD files that industrial designers created when they were

6  designing the products at issue.  (Bartlett Decl. ¶ 4.)  A portion of a produced CAD file is

7  attached to the Bartlett Declaration as Exhibit B and pictured below.  As shown in the example

8  below, CAD alone is more than sufficient to show the relevant details and multiple views of a

9  given design:



21  Before December 31, Apple produced industrial design CAD files covering all announced

22  generations of iPhone, iPod touch, and iPad, as well as CAD relating to the 035 model that

23  Samsung requested.  (Bartlett Decl. ¶ 4.)

24      Samsung's claim that Apple still has not produced the CAD files relating to the 035 tablet

25  is flat-out false.  Apple produced CAD files relating to the 035 tablet by December 31, pursuant

26  to the Court's Order.  (*Id.*)  When Samsung reported that it was unable to view the CAD data,

27  Apple immediately began investigating the issue.  In the interim, and as a courtesy, Apple's

28  attorneys prepared PDFs of the CAD files over the weekend and provided them to Samsung as a

1  temporary workaround.  (*Id*. Ex. D.)  Through its investigation, Apple determined that the

2  relevant CAD files were not corrupted or missing.  Instead, Samsung simply did not understand

3  how to open them using the relevant software program (rather than by simple double-clicking on

4  the file).  (*Id.* Ex. E.)

5       **B.**     **Sketchbooks**

6       In addition to CAD, as described above in greater detail, Apple produced before

7  December 31 every sketch that it could locate related to every design patent at issue.  (*See **infra***

8  Section I.)

9       **C.**     **Models**

10       Apple has produced *all industrial design models* for Samsung's inspection.  (Bartlett Decl.

11  Ex. F.) A photograph of one design model is pictured below as an exemplar:



20  Samsung began inspecting the models on Friday, January 13.  (Bartlett Decl. Ex. G.)

21       The production was unprecedented in Apple's experience.  (Bartlett Decl. ¶ 7.)  More than

22  a thousand models, plus assorted partial models and parts, were collected and numbered, boxed,

23  covered in shrouds, and transported by a team of movers to a secure, guarded hotel conference

24  room for Samsung's inspection.  (*Id.*)  Apple included an enormous variety of models in the

25  production.  (*Id.*)  Some models were only incrementally different from Apple's iconic products.

26  Others were vastly different mockups of products that only vaguely resemble anything Apple has

27  released in the past.  (*Id.*)

28

1    Apple has also agreed to produce any still-working prototypes that it has been able to

2 identify, although it has only identified a limited number.  (*Id.* Ex. B.)  Apple has canvassed

3 individuals working on touch hardware, design, operating system software, core driver software,

4 and product design to identify any working prototypes, and has asked that Samsung do the same.

5 (*Id.* ¶ 8).  Samsung has not responded.  (*Id.*)

6    The only items that Apple has *not* agreed to produce are the many non-working prototypes

7 and parts and pieces.  (*Id.*)  Many Apple engineers have old dead parts sitting in desk drawers, on

8 shelves, or in boxes.  (*Id.*)  To attempt to gather up all of those old pieces of hardware and present

9 them to Samsung for inspection would be a massive waste of time and effort, particularly in view

10 of the other materials Apple has produced.  Given Apple's substantial production of design

11 documents, as discussed above, including production of all relevant CAD, sketchbooks, models,

12 and its agreement to produce working prototypes, the burden of collecting, transporting, and

13 presenting for inspection non-working prototype pieces and parts far outweighs any potential

14 relevance.  (*Id.*)

15    **D.    Mechanical Outlines ("MCOs")**

16    Apple acknowledges that industrial design CAD files, sketchbooks, and design models

17 pertaining to the asserted design patents are relevant to conception and reduction to practice of

18 Apple's asserted designs.  MCOs are not relevant, however.  MCOs are primarily directed to the

19 internal mechanics of the device.  (*Id.* ¶ 9.)  The exemplary MCO below from the original iPad

20 shows the outline of space available for certain integrated circuits to be put on a printed circuit

21 board located *within* the device enclosure.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10



11  (*Id.* Ex. H.)  Every Apple device at issue is likely to have hundreds if not thousands of MCOs

12  relating to it.  Apple roughly estimates that Samsung's request would require production of more

13  than *16,000* MCO documents.  (Bartlett Decl. ¶ 9.)  Apple has no automatic process for exporting

14  MCOs.  (*Id.*)  An Apple employee would have to manually export them one-by-one from its

15  database.  (*Id.*)

16       The Court has never issued an order directing Apple to produce MCOs, nor should it.

17  Apple's asserted design patents cover the external appearance of its products, not internal

18  component makeup.  As a result, MCO's are, at best, only marginally relevant to conception and

19  reduction to practice of Apple's design patents.  Apple has already made a more than adequate

20  production of materials relating to conception and reduction to practice of its asserted designs.  In

21  this late stage of discovery, the parties have much more pressing issues to focus on than whatever

22  marginal information might be gleaned from MCOs.

23  **III.    APPLE HAS NOT VIOLATED ANY COURT ORDER REGARDING DE-
         DESIGNATION OF MODEL 035 PHOTOGRAPHS**

24

25       Samsung claims that Apple has violated an order to de-designate photographs, but this

26  misrepresents the Court's December 22, 2011 Order.

27

28

As Samsung admits in its Motion, the Court noted in its Order that Apple "may maintain its confidentiality designation on only those photos that display details or aspects of the tablet mockups that were not disclosed in the earlier patent filings and that remain proprietary to Apple." (Order Granting in Part Samsung's Motion to Compel [Dkt. No. 536] at 3.) Consistent with this Order, Apple informed Samsung that it would redact the details that went beyond what was disclosed in earlier patent filings before de-designating the photographs at issue—namely, scale information. (Bartlett Decl. Ex. B.) Apple also informed Samsung that if it wished to take photographs that did *not* include such additional information, Apple would not designate such photographs as confidential. (*Id.*)

Samsung derides Apple's position as a "waste" and "meritless objection," but fails to dispute the key point—the photographs submitted to the PTO do not contain any scale information.[3] Unlike Samsung's photographs, the photographs submitted to the PTO do not contain rulers. Unlike Samsung's photographs, the model in the photographs submitted to the PTO is not set side-by-side with an iPad 2. Concurrently with this opposition, Apple has produced to Samsung de-designated photos that omit scale information and that are consistent with the photographs submitted to the PTO. (*Id.* Ex. I.)

## IV.    APPLE HAS NOT VIOLATED ANY ORDER TO IDENTIFY WHAT FILES WERE SEARCHED

The Court's Order of November 16 required Apple to "identify specifically which custodians' files were searched, any search terms that were used, and the time frame included in those searches." (Order Granting-in-Part Samsung's Motion to Compel Apple to Produce Documents and Things [Dkt. No. 398] at 2-3.) The purpose of this Order was to provide Samsung the opportunity to suggest additional locations to search. (*Id.*)

---

[3] Samsung's Motion to Enforce mentions that one photograph provided to the USPTO shows a person holding the model. (Motion at 9.) An image of an individual of unknown size holding a tablet does not provide precise scale information on the level of rulers or side-by-side products.

1    Samsung's own brief concedes that Apple has already identified what files it searched to

2  find photographs submitted to the USPTO during the prosecution of the D'889 patent.  (Motion at

3  10.)  On November 28, 2011, Apple wrote Samsung to identify which custodian files were

4  searched, the absence of search terms used, and the lack of timeframe restrictions:

5         Apple's outside prosecuting attorney, Tracy Durkin of Sterne,
          Kessler, Goldstein & Fox. Sterne Kessler received from Beyer
6         Weaver, the firm of Apple's former prosecuting agent Quin
          Hoellwarth, the entire file that Beyer Weaver possessed relating to
7         the prosecution of the D'889 Patent. Ms. Durkin searched both
          electronic and paper files relating to the D'889 Patent. Apple
8         acquired from Ms. Durkin the best copies of the photographs that
          were present in the file. Original photographs were not found.
9
          Steve Beyer of the Beyer Law Group, formerly of the Beyer
10        Weaver firm. Mr. Beyer checked both hard copy and electronic
          document repositories relating to the D'889 Patent. Mr. Beyer
11        confirmed that his firm has previously transferred its whole file to
          Sterne Kessler at Apple's request.
12
          Quin Hoellwarth, formerly of the Beyer Weaver firm and now an
13        in-house patent agent at Apple. Mr. Hoellwarth did not take any
          files related to the prosecution of the D'889 Patent with him to
14        Apple. Nonetheless, Mr. Hoellwarth searched his own paper files,
          emails, and local electronic drives. As noted above, Mr.
15        Hoellwarth's former firm sent its entire file for the D'889 Patent to
          Tracy Durkin at Sterne Kessler. Mr. Hoellwarth did not possess
16        original photographs or any copies that were better than the copies
          provided by Ms. Durkin.
17
          Apple's legal department. Mr. Hoellwarth also searched Apple
18        legal department paper files and servers.

19        Publicly available files stored by the USPTO.

20        The above searches were manual, were intended to search in each
          location previously known potentially to have contained the files,
21        and accordingly did not rely on any automated date restrictions or
          search terms."
22
23  (Bartlett Decl. Ex. J.)  Samsung's claim, in the face of this letter, that Apple has not identified

24  which files were searched and violated the Court's order requiring such disclosure is simply

    untrue.
25
26        Samsung's remaining argument relies on a selective and misleading quotation of a portion

27  of the deposition of Tracy Durkin, an outside patent prosecution attorney.  Ms. Durkin, a nonparty

28  witness, was asked what steps she took to review documents in response to Samsung's subpoena.

1    (Motion at 10 n.32.)  She noted, correctly, that she is outside the jurisdiction of the Court and, as

2    a nonparty witness, was under no obligation to affirmatively search for documents responsive to

3    Samsung's invalid subpoena.  (*Id.*)  But Ms. Durkin's comments do not detract from the adequacy

4    of her collection and production efforts, on Apple's behalf, of any relevant documents in her

5    possession.

6         Samsung claims, *without any citation or support*, that it has identified relevant CDs that

7    were not searched and asks the Court to order immediate production as these may contain "the

8    photos submitted to the PTO."  (*E.g.*, Motion at 12-13.)  The only support Apple has found for

9    Samsung's claim is a statement in Ms. Durkin's more recent deposition in a related action in the

10   U.S. International Trade Commission.  Ms. Durkin states that she has a CD in the files her firm

11   received from Apple's prior patent prosecution firm.  (Bartlett Decl. Ex. K at 265:8-268:13.)

12   Ms. Durkin also testified that there are no images of the item shown in the D'889 prosecution on

13   the CD, and indeed, she *does not believe there are photographs of any kind on the CD*.  (*Id.* at

14   268:4-13.)

15        Samsung's continued obsession with Apple's efforts to search for the 035 photographs is

16   bizarre and unproductive.[4]  Apple has already produced the highest quality photographs it was

17   able to locate, and has confirmed as such in writing—both in a letter and in a stipulation signed

18   by Apple's co-lead counsel.  (Bartlett Decl. Ex. J.)  Apple has produced *the model itself* for

19   inspection and allowed Samsung to take its own photographs.  (*See* Samsung's Motion to Compel

20   [Dkt. No. 487-0] at 10) (acknowledging that Samsung inspected various Apple tablet models and

21   took photographs of those items).  Apple has produced concurrently with this filing de-designated

22   photographs showing the details that were visible in the public USPTO filings.  (Bartlett Decl. Ex.

23   I.)  Apple has also agreed to let Samsung take high-quality photographs that reproduce images

24   submitted to the PTO and confirmed that Apple would not designate such photographs as

25   ───────────────

26   [4] Apple has noted for Samsung and the Court that the previously-taken 035 photographs
     are of limited, if any, relevance, given the file history of the D'889 patent.  (*See* Apple's
     Opposition to Samsung's Motion to Compel [Dkt. No. 502-3] at 9-10.)  The photographs are *not*
27   part of the prosecution history, but were attached in an appendix that the Examiner struck from
     the application.  (*Id.*)

28

confidential under the protective order.  (*Id.* Ex. B.)  At this point, it is not clear what possible need Samsung has for additional photographs of the 035 model or additional detail on Apple's searches.  Samsung's groundless and moot motion is an unnecessary burden on Apple and the Court and should be denied.

## CONCLUSION

For the reasons set forth above, the Court should deny Samsung's motion.

Dated:  January 17, 2012

MORRISON & FOERSTER LLP

By:   */s/ Michael A. Jacobs*
Michael A. Jacobs

Attorneys for Plaintiff
APPLE INC.