1   HAROLD J. MCELHINNY (CA SBN 66781)   WILLIAM F. LEE
    hmcelhinny@mofo.com                  william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)    WILMER CUTLER PICKERING
    mjacobs@mofo.com                     HALE AND DORR LLP
3   JENNIFER LEE TAYLOR (CA SBN 161368)  60 State Street
    jtaylor@mofo.com                     Boston, MA 02109
4   ALISON M. TUCHER (CA SBN 171363)     Telephone: (617) 526-6000
    atucher@mofo.com                     Facsimile: (617) 526-5000
5   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
6   JASON R. BARTLETT (CA SBN 214530)    MARK D. SELWYN (SBN 244180)
    jasonbartlett@mofo.com               mark.selwyn@wilmerhale.com
7   MORRISON & FOERSTER LLP              WILMER CUTLER PICKERING
    425 Market Street                    HALE AND DORR LLP
8   San Francisco, California  94105-2482  950 Page Mill Road
    Telephone:  (415) 268-7000           Palo Alto, California 94304
9   Facsimile:  (415) 268-7522           Telephone: (650) 858-6000
                                         Facsimile: (650) 858-6100
10

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.
12

13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                        SAN JOSE DIVISION

| | |
|---|---|
| 17 APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK (PSG) |
| 18     Plaintiff, | **APPLE INC.'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS** |
| 19     v. | |
| 20 SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS | |
| 21 AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS | |
| 22 AMERICA, LLC, a Delaware limited liability company, | Date:     March 27, 2012<br>Time:    10:00 a.m. |
| 23     Defendants. | Place:    Courtroom 5, 4th Floor<br>Judge:   Hon. Paul S. Grewal |
| 24 | |

25                    **SUBMITTED UNDER SEAL**

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION AND MOTION ........................................................................... iv

RELIEF REQUESTED ...................................................................................................... iv

STATEMENT OF ISSUES TO BE DECIDED ................................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.    FACTS AND PROCEDURAL HISTORY REGARDING SAMSUNG'S
      PRODUCTIONS ....................................................................................................... 3

      A.    Samsung's Initial Failure To Produce Copying And Survey Documents .............. 3

      B.    Samsung's Representations That No Copying Documents Exist ........................... 5

      C.    The Court's September 28 Order ........................................................................... 6

      D.    Samsung's Limited Productions Between The September 28 Order And
            The Preliminary Injunction Hearing ..................................................................... 6

      E.    Samsung's Assurances of Compliance .................................................................. 7

      F.    Samsung's Productions Between December 7 and 22 ........................................... 8

      G.    The Court's December 22 Order............................................................................ 8

      H.    Samsung's Unsuccessful Motion To Extend The Deadline Beyond
            December 31 .......................................................................................................... 9

      I.    Samsung's Productions Before December 31 ........................................................ 9

      J.    Samsung's Additional Assurances of Compliance ............................................... 10

      K.    Samsung's January Productions............................................................................ 11

II.   LEGAL STANDARDS ........................................................................................... 12

III.  ARGUMENT ........................................................................................................... 12

      A.    Samsung Violated Both Of The Court's Orders Regarding Copying
            Documents ............................................................................................................ 12

      B.    Samsung Violated The September Order Regarding Survey Documents ........... 13

      C.    Samsung's Violations Harmed Apple By Withholding Inculpatory
            Evidence Until After The Preliminary Injunction Was Denied........................... 14

            1.    Samsung's failure to produce evidence that design is important and
                  that consumers preferred Apple's designs to Samsung's........................... 15

**TABLE OF CONTENTS**
(continued)

**Page**

2.  Samsung's failure to produce evidence that Samsung sought to imitate Apple's designs because they were better than Samsung's .......... 17

3.  Samsung's failure to produce evidence that Samsung sought to imitate Apple's user interface, including Apple's patented "bounce effect" ........................................................................................................ 19

4.  Samsung's failure to produce evidence that its customers may switch to Apple ..................................................................................... 20

5.  Importance of the withheld evidence ........................................................ 20

D.  The Court Should Impose Sanctions For Samsung's Violations ......................... 21

IV.  CONCLUSION ........................................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Computer Task Group, Inc. v. Brotby,*
    364 F.3d 1112 (9th Cir. 1993)........................................................................... 12, 14

*In re Google Litig.,*
    No. C08-03172-RMW (PSG), 2011 U.S. Dist. LEXIS 151337
    (N.D. Cal. Aug. 2, 2011)..................................................................................... 23

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
    460 F.3d 1217 (9th Cir. 2006)............................................................................ 12

*Unigard Security Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,*
    982 F.2d. 363 (9th Cir. 1992).............................................................................. 12

OTHER AUTHORITIES

Federal Rule of Civil Procedure 37(b)(2) ............................................................ passim

Local Rule 37-4....................................................................................................... iv

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

iii

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on March 13, 2012, at 10:00 a.m., or as soon as the matter

4   may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for

5   the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street,

6   San Jose, CA 95113, Apple Inc. ("Apple") shall and hereby does move the Court for an order

7   pursuant to Federal Rule of Civil Procedure 37(b)(2) imposing sanctions against Samsung

8   Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications

9   America, LLC (collectively, "Samsung") and its counsel for materially violating two of this

10  Court's discovery orders.

11      This motion is based on this notice of motion and supporting memorandum of points and

12  authorities; the Declaration of Minn Chung In Support of Apple's Motion for Rule 37(b)(2)

13  Sanctions for Samsung's Violation of Two Discovery Orders and exhibits attached thereto; and

14  such other written or oral argument as may be presented at or before the time this motion is taken

15  under submission by the Court.

16

## RELIEF REQUESTED

17      Pursuant to Federal Rule of Civil Procedure 37, Local Rule 37-4, and the Court's inherent

18  authority, Apple seeks (1) an order finding that Samsung violated this Court's September 28 and

19  December 22, 2011 Orders by failing to produce documents by the deadlines specified in those

20  orders, and (2) an order requiring Samsung and its attorneys to pay Apple the attorneys' fees and

21  expenses it has incurred (and will incur) arising out of Samsung's violations.  Apple seeks fees

22  and expenses incurred in connection with:

23      (a)    Apple's preliminary injunction motion and appeal from the order denying the

24             preliminary injunction;

25      (b)    Apple's motion to compel that resulted in the December 22 Order, including its

26             analysis of Samsung's compliance with the September 28 Order and its efforts to

27

28

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

iv

1    redress Samsung's non-compliance with that Order through correspondence and

2    meeting and conferring;

3       (c)    Apple's analysis of Samsung's compliance with the December 22 Order, including

4    Apple's review and analysis of the documents that Samsung produced from

5    December 22 through the present, and Apple's efforts to redress Samsung's non-

6    compliance with that Order through correspondence and meeting and conferring;

7       (d)    Apple's Motion to Compel Timely Production of Foreign-Language and Other

8    Documents in Advance of Related Depositions, filed on January 27, 2012, which

9    addressed many documents that were subject to the September 28 and

10   December 22 Orders, and that should have been produced long before the

11   depositions in question; and

12      (e)    Apple's fees and expenses in connection with this motion.

13   **STATEMENT OF ISSUES TO BE DECIDED**

14      1.    Whether Samsung violated the Court's September 28 discovery Order

15   (Dkt. No. 267) requiring Samsung to produce certain categories of documents by October 7, 2011.

16      2.    Whether Samsung violated the Court's December 22 discovery Order

17   (Dkt. No. 537) requiring Samsung to produce certain categories of documents by December 31,

18   2011.

19

20   Dated:  February 8, 2012                    MORRISON & FOERSTER LLP

21

22                                    By:    */s/ Michael A. Jacobs*
        Michael A. Jacobs

23   Attorneys for Plaintiff
     APPLE INC.

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

After Apple introduced its revolutionary iPhone and iPad products, Samsung introduced competing smartphones and tablets that looked just like Apple's products.  Indeed, the Court described Samsung's Galaxy Tab 10.1 as "virtually indistinguishable" from Apple's iPad and iPad 2.  The Court's evaluation of Apple's preliminary injunction motion turned on whether those design similarities were important to consumers and whether they arose "naturally," rather than through study and copying of Apple's products.  In opposing a preliminary injunction, Samsung and its counsel told the Court that copying documents "don't exist" because its designers did not even *consider* Apple's products in developing Samsung's competing products and argued that design was not an important factor to consumers.  Samsung and its counsel also repeatedly represented that they had fully complied with the Court's orders setting deadlines for Samsung to produce documents concerning these crucial issues.

But now—long after the preliminary injunction was denied—we know the real reason that Samsung's products look like Apple's:  Samsung deliberately copied Apple's products because Samsung *knew that design was very important to consumers and had analyzed Apple's products and found them superior*.  The very documents that Samsung proclaimed "don't exist" during the preliminary injunction phase *did exist*, and they contradict the arguments that Samsung made to defeat Apple's motion.

By withholding these inculpatory documents until late December 2011 and January 2012, Samsung violated two of this Court's discovery orders.  The Court's Order of September 28, 2011 set a deadline of October 7 (just before the preliminary injunction hearing) for Samsung to produce documents evidencing its investigations of Apple products and its surveys of consumers about Samsung's accused products.  (Dkt No. 267 (Sept. 28, 2011 Order).)  After Samsung failed to comply, the Court set a deadline of December 31 for Samsung to comply with the September Order, stating in no uncertain terms that "[a]ny further failure to comply with the September 28 Order will subject Samsung to sanctions."  (Dkt No. 537 (Dec. 22, 2011 Order).)  Samsung's recent productions—including *more than 1000 documents produced in January* that were subject

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

1

to the September Order—demonstrate that it violated not only the September Order but also the December Order.

Samsung's violations of the Court's Orders are egregious and have severely prejudiced Apple. If Samsung had produced those documents before the preliminary injunction hearing (as required by the September 28 Order), they would have substantially strengthened Apple's motion and could well have led to a different result. The Court held that two of Apple's patents were likely valid and infringed but denied an injunction on the narrow ground that Apple had not presented sufficient evidence that the patented features had a significant impact on consumer purchasing decisions. Samsung's late-produced documents include evidence that goes directly to this outcome-determinative issue: Samsung copied Apple's designs because they attracted customers to Apple's products (and away from Samsung's). The importance of design is shown by belatedly-produced Samsung surveys that show that design is the single most important factor to purchasers, as well as by evidence that Samsung concluded the Apple's designs were superior and then deliberately copied those designs.

Apple sought a preliminary injunction because damages cannot compensate Apple for the irreparable harm caused by Samsung's sales of infringing copy-cat products. Even more so, sanctions cannot make Apple whole after being deprived of crucial inculpatory evidence that was directly relevant to the grounds on which the Court denied a preliminary injunction. Nevertheless, sanctions can and should be imposed.

Pursuant to Rule 37(b)(2)(A), the Court "may issue further just orders." Apple requests that the Court make findings that Samsung violated both the September 28 and December 22 Orders. These findings will be relevant as this case proceeds, including should Apple seek to prove at the end of the case that Samsung's litigation conduct amounts to willful misconduct or special circumstances.

Under Rule 37(b)(2)(C), the Court "must" order Samsung and/or its attorneys to compensate Apple for the expenses it has incurred due to Samsung's violation of the September and December Orders. Apple requests that the Court order Samsung and its attorneys to pay Apple the attorneys' fees and expenses it has incurred (and will incur) in connection with:

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

2

(1)     Apple's preliminary injunction motion and appeal from the order denying the preliminary injunction;

(2)     Apple's motion to compel that resulted in the December 22 Order, including its analysis of Samsung's compliance with the September 28 Order and its efforts to redress Samsung's non-compliance with that Order through correspondence and meeting and conferring;

(3)     Apple's analysis of Samsung's compliance with the December 22 Order, including Apple's review and analysis of the documents that Samsung produced from December 22 through the present, and Apple's efforts to redress Samsung's non-compliance with that Order through correspondence and meeting and conferring;

(4)     Apple's Motion to Compel Timely Production of Foreign-Language and Other Documents in Advance of Related Depositions, filed on January 27, 2012, which addressed many documents that were subject to the September 28 and December 22 Orders and that should have been produced long before the depositions in question; and

(5)     Apple's fees and expenses in connection with this motion.

## I.      FACTS AND PROCEDURAL HISTORY REGARDING SAMSUNG'S PRODUCTIONS

### A.      Samsung's Initial Failure To Produce Copying And Survey Documents

Apple filed its preliminary injunction motion on July 1, 2011.  At Samsung's request, the hearing was delayed so the parties would have "a fair and reasonable opportunity to conduct discovery and brief the complex issues raised in Apple's motion."  (Dkt. No. 100 (July 8, 2011 Joint Submission) at 3.)  The Court set the hearing for October 13 and required document production to be completed by September 12.  (Dkt. No. 115 (July 18, 2011 Order Setting Briefing.)

Despite the longer period, Samsung did not provide Apple with fair or reasonable discovery.  Apple's requests for production included documents that related to the design history of the products that Apple sought to enjoin and that referred to Apple products (to establish

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

3

1    deliberate copying).[1]  (Dkt. No. 249 (Sept. 20, 2011 Motion to Compel) at 1-2.)  Yet Samsung's

2    initial productions were devoid of design and development documents concerning the products at

3    issue and instead included reams of irrelevant materials ranging from pictures of office buildings

4    to schematics of product packaging.  (Dkt. No. 249 (Sept. 20, 2011 Chung Decl.) ¶¶ 3-4, 6-12

5    (filed under seal).)  When Apple filed a motion to compel on September 20, Samsung had

6    produced no documents relating to the analysis of Apple's designs by Samsung designers—in

7    short, no documents relating to Samsung's copying of Apple products.  (*Id.* ¶ 11; Dkt. No. 467

8    (Dec. 8, 2011 Chung Decl.) ¶ 8 (filed under seal).)

9          Apple's requests also sought documents, including customer surveys, that related to the

10   marketing of the products it sought to enjoin and that referred to Apple or its products, as

11   evidence that Samsung's sales of accused products result in irreparable harm to Apple.[2]  (Dkt.

12   No. 249 (Sept. 20, 2011 Mot. to Compel) at 11.)  Samsung objected and notified Apple that it

13   would not produce any such surveys or marketing documents that did not specifically mention

14   one of the four Samsung products named in Apple's preliminary injunction motion, even if those

15   surveys or documents mentioned or referred to any Apple products.  (Dkt. No. 249 (Sept. 28,

16   2011 Bartlett Decl.) ¶ 15.)

17

18

19       [1] <u>Request for Production No. 1:</u> Documents relating to your analysis, review, consideration, or copying of, or comparison against, any Apple product or product feature

20   in designing, developing, or implementing any feature of the Products at Issue, including (1) their Exterior Design; (2) functionality that allows for an image, list, or webpage to be scrolled beyond its edge until it is partially displayed; and (3) functionality that allows for

21   an image, list, or webpage that is scrolled beyond its edge to scroll back or bounce back into place so that it returns to fill the screen.

22

   (Dkt. No. 245 (Sept. 20, 2011 Apple Mot. to Compel) at 2.)

23

24       [2] <u>Request for Production No. 214:</u> All Documents relating to marketing of any Products at Issue that discuss or refer directly or indirectly to Apple or Apple products, including

25   copies of all advertisements or other promotional materials, marketing plans, market surveys, focus group studies, or other documents related to testing of advertisements or advertisement messaging. . . .

26

27   (Dkt. No. 245 (Sept. 20, 2011 Apple Mot. to Compel) at 4.)

28

### B.      Samsung's Representations That No Copying Documents Exist

At the same time that Samsung was failing to produce design and development documents, Samsung trumpeted Apple's alleged lack of "copying" evidence as a basis to deny Apple's preliminary injunction motion, which had been set for hearing on October 13.  Samsung claimed that its smartphones and tablets "naturally evolved in the direction" of Apple's designs and that, "[a]lthough willful infringement, including deliberate copying, may be relevant to a preliminary injunction motion, Apple has offered no evidence of such copying or willful infringement."  (Dkt. No. 175 (Aug. 22, 2011 Opp. To Motion for Prelim. Inj.) at 1-2 & 39.)

Samsung assured the Court that the evidence Apple was seeking simply did not exist.  Samsung's opposition to Apple's September 20 motion to compel stated:  "Samsung already has produced the responsive documents it has located to date regarding" Apple's request for copying documents.  (Dkt. No. 258 (Sept. 26, 2011 Opp. to Mot. to Compel) at 5.)  Samsung's counsel made even stronger representations at the September 28 hearing:

> So with respect to the first set of issues which is four different categories of documents [including the copying documents], we believe that the record is clear from the Jenkins declaration and from our brief and otherwise that we've produced documents after reasonable search that answer these requests. . . .  **But in producing our design documents we are not obligated to manufacture documents that don't exist.  They are looking for a smoking gun document, a document that says we copied something from Apple.  We don't have those documents.**
>
> . . . .
>
> [Samsung's 30(b)(6) representative] testified that he spoke with [the designers identified in Samsung's interrogatory responses] and **inquired extensively whether any of them considered Apple products when designing their products, not just copying, but any consideration of frame of reference.  They testified they have not**.

(Declaration of Minn Chung In Support of Apple Inc's Motion For Rule 37(B)(2) Sanctions ("Chung Decl.") Ex. T at 45-48 (emphases added); *see also id.* Ex. BB).)

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

5

### C.    The Court's September 28 Order

The September 28 Order expressly found that Samsung had put its development documents at issue in the preliminary injunction proceedings by "boldly declar[ing]" in its opposition that Apple had presented no evidence of copying.  The Court ordered that

> [N]o later than October 7, 2011, Samsung shall produce:
>
> 1. From the custodial files of each of Samsung designers of Samsung's Galaxy S 4G and Infuse 4G, Droid Charge phones and Galaxy Tab 10.1 table computer identified in Samsung's Rule 26(a) disclosures or interrogatory responses, all documents referencing the Apple products alleged by Apple to embody one or more of the ornamental or utility features claimed in the patents.  All means all: email, memoranda, whatever.  Samsung put these documents at issue when, at page 39 of its opposition to Apple's preliminary injunction motion, it boldly declared that "[a]lthough willful infringement, including deliberate copying, may be relevant to a preliminary injunction motion, Apple has offered no evidence of such copying or willful infringement."

(Sept. 28, 2011 Order at 3.)

The Order also required Samsung to produce by October 7, "[f]rom any central files or the custodial files of any individuals with specific responsibility for surveying customers of [Samsung's products at issue in the preliminary injunction], all survey documents that reference [Apple's products at issue]."  (*Id.* at 4.)

Because the October 7 deadline for Samsung to complete its production of these documents was less than a week before the preliminary injunction hearing, if Samsung failed to comply with the Court's Order, Apple would not have the evidence in time to support its motion.

### D.    Samsung's Limited Productions Between The September 28 Order And The Preliminary Injunction Hearing

Samsung produced approximately 10,000 documents on October 7, 8, and 10, many of which were in Korean.[3]  (Dkt. No. 298 (Oct. 10, 2011 Chung Decl. ¶ 2 (filed under seal)).)

---

[3] Samsung represented that its October 7 production was delayed on account of technical issues.  (Chung Decl. Ex. AA.)  Apple is not relying on that production delay as a basis for relief in this motion.

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

6

1    Samsung also identified the custodians whose files it had searched and the search terms it had

2    used (the "Amended Identification").  (Chung Decl. Ex. U.)  The custodians included all of the

3    persons whom Samsung had identified in discovery responses as the designers of the Samsung's

4    products at issue in Apple's preliminary injunction motion (the "Designer Custodians").  (*See*

5    Chung Decl. Exs. A-B.)  Samsung subsequently identified three persons responsible for surveying

6    customers about the accused products (the "Survey Custodians").  (Chung Decl. Ex. M.)

7            Apple scrambled to review and translate documents.  Very few documents relating to the

8    design history of the accused products or showing any analysis of Apple's products by Samsung's

9    designers and engineers were found.  (Dkt. No. 529 (Dec. 8, 2011 Chung Decl.) ¶¶ 11-13, 16

10    (filed under seal).)  On October 11, Apple filed a motion to augment the record on its preliminary

11    injunction motion with five of the newly-produced documents, which had been produced on

12    October 8 and 10.[4]  Four of those documents addressed the significance of Apple's patented

13    "bounce" feature and Samsung's implementation of this feature, and the other was a Samsung

14    survey concerning consumer preferences and reactions to the design of the iPhone and of

15    Samsung smartphones.  (Dkt. No. 298 (Oct. 11, 2011 Mot. to Augment) (filed under seal));

16    Oct. 11, 2011 Chung Decl. ¶¶ 3-7 (filed under seal).)

17            **E.        Samsung's Assurances of Compliance**

18            Apple suspected that Samsung had not fully complied with the September 28 Order.

19    Apple raised its concerns with Samsung's counsel, who responded with assurances that:

20                 Samsung's document production pursuant to the September 28,
                  2011 Order is complete.  As always, if additional documents are
21                 subsequently discovered, Samsung will supplement this production
                  as quickly as practicable.
22

23    (Chung Decl. Ex. V at 2.)  At the same time, however, Samsung's counsel admitted that Samsung

24    had stopped using the search term "Apple" to search the files of certain relevant designers and

25    _____

26            [4] Samsung produced two additional documents on October 12, but they were not design,
     development or survey documents.  (Chung Decl. ¶ 5.)
27

28

1  developers despite the clear necessity of such a search term to capture documents specified in the

2  September 28 Order.  (*Id.*; *see also* Chung Decl. Ex. X at 2.)  Samsung also revealed that it had

3  limited its search for survey documents to U.S. marketing documents (despite the absence of any

4  such limitation in the September 28 Order).  (*Id.*)  Apple objected to these and other improper

5  practices on multiple occasions.  (*See*, *e.g.*, Chung Decl. Exs. M, W & Y.)

6  **F.      Samsung's Productions Between December 7 and 22**

7  Apple notified Samsung on November 30, that it would file a second motion to compel on

8  December 8.  (Dkt. No. 613-2 (Jan. 11, 2012 Mazza Decl.) ¶ 4.)  On December 7, Samsung began

9  to produce additional documents.  However, Samsung produced only two documents referencing

10  Apple or Apple products that were sourced to any of the Designer Custodians.  (Chung Decl. ¶ 8

11  & Ex. C.)

12  On December 9, Samsung produced 117 documents from two of the three Survey

13  Custodians.  (Chung Ex. N.)  These documents were subject to the September 28 Order and

14  required to be produced by October 7.  Moreover, Samsung had represented to Apple on

15  October 10 that its production required by the September 28 Order was complete.  (Chung Decl.

16  Exs. U-V.)  Samsung violated the September 28 Order by not producing these documents until

17  December.

18  **G.      The Court's December 22 Order**

19  Apple filed its second motion to compel on December 8 (Dkt. No. 467-1 (Dec. 8, 2011

20  Mot. to Compel).)  The Court's December 22 Order granted Apple's motion in part, and

21  addressed the copying and survey documents as follows:

22  3.  Emails and documents showing Samsung's analysis of and
consideration of Apple's products.  **With respect to any materials**

23  **subject to the court's September 28, 2011 order that have not
been produced, Samsung shall complete its production**

24  **immediately and, in any event, no later than December 31,
2011.  Any further failure to comply with the September 28**

25  **Order will subject Samsung to sanctions**.  All other responsive
documents, specifically relating to the additional products and

26  patent claims that were not at issue during the preliminary
injunction phase, shall be produced on a rolling basis and no later

27  than January 15, 2012.

28

4. <u>Survey and marketing documents</u>.  Samsung shall complete its production of these materials no later than January 15, 2012. **As above, with respect to any materials that were subject to the September 28 Order and not yet produced, Samsung shall complete its production immediately and, in any event, no later than December 31, 2011.  Once again, any further failure to comply with the September 28 Order will subject Samsung to sanctions.**

(Dec. 22, 2011 Order) at 3 (emphasis added).)

**H.      Samsung's Unsuccessful Motion To Extend The Deadline Beyond December 31**

Samsung subsequently moved for an extension of the deadline set by the December 22 Order, but the Court held Samsung to the December 31 deadline.  (Dkt. No. 554 (Dec. 22, 2011 Mot. to Extend Time); Dkt. No. 567 (Dec. 30, 2011 Order Den. Motion).  That motion revealed the stunning extent of Samsung's non-compliance with the Court's September 28 Order. Samsung asserted that the volume of documents subject to production by December 31 was so large that it was "physically impossible" to produce them by that deadline—even though Samsung had been required to produce those documents almost three months earlier.  (Dec. 22, 2011 Mot. at 1.)  ***Samsung's supporting declaration revealed that it had not begun making a concerted effort to collect and produce the documents required under the Court's September 28 Order until December 22***.  (*Id.* at 2:18–3:5 (admitting that Samsung waited until after the December 22 Order to commit resources necessary for completing production, including engaging new discovery vendor and hiring additional attorneys).)

**I.      Samsung's Productions Before December 31**

Between December 23 and 31, Samsung produced approximately 291 documents sourced from the Designer Custodians.  (Chung Decl. Ex. C.)  *Those productions included 82 documents that mention Apple's products and were clearly subject to the September 28 Order*.  (*Id.*) Moreover, Samsung had specifically represented to Apple on October 10 that it had searched their files before making its productions required by the September 28 Order.  (Chung Decl. Exs. U-V.)

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

9

1    Samsung's late-December productions stand in sharp contrast to its minimal production of

2   relevant documents during the preliminary injunction phase of the case.  For example, prior to

3   October 13, Samsung had produced only a single document from Designer Custodian Jaegwan

4   Shin, and that document did not reference Apple or Apple products.  On December 23, however,

5   Samsung produced more than two dozen documents sourced to Jaegwan Shin that referenced

6   Apple or its products.  (Chung Decl. ¶ 11 & Ex. C.)

7    In this same period, Samsung for the first time produced documents from Tim Benner,

8   who was one of the three Survey Custodians identified as having been searched in connection

9   with the September 28 Order.  (Chung Decl. ¶ 32 & Ex. M; *see also id.* Ex. N.)  Samsung's late-

10   December productions included 180 documents sourced to Benner and 156 documents from Jinna

11   Yoon, one of the Survey Custodians whose documents were included in the December 9

12   production.  (Chung Decl. Ex. N; *see id.* Ex. R (listing survey documents referencing Apple or

13   Apple products produced from Survey Custodians on or after December 8).)  All of these

14   documents were covered by the September 28 Order.

15    These late-December documents should have been produced without Court intervention

16   by the September 12 deadline for productions in connection with Apple's preliminary injunction

17   motion.  Once Samsung missed that deadline, the documents were subject to the September 28

18   Order and required to be produced by October 7.  Samsung violated the September 28 Order by

19   not producing these documents until late December—long after the hearing on Apple's

20   preliminary injunction motion.

21    **J.      Samsung's Additional Assurances of Compliance**

22    In January, Samsung represented to the Court that it had met the December 31 deadline

23   set by the December 22 Order:

24           I want to be crystal clear about that.  The Order said any documents
             that should have been produced pursuant to the September 28th
25           Order must be produced by December 31st or there may be
             sanctions.  We—all of the documents that were ordered produced
26           by September 28th had already been produced pursuant to that
             order in December.

27

28

1   (Chung Decl. Ex. Z at 159.)  Samsung's counsel further explained that Samsung had requested a

2   "mercy extension of time" over the holidays because it had found a few "additional survey

3   custodians" whose documents were arguably covered by the Court's discovery Orders.  (*Id.*)

4   "But I'm saying that despite our investigations we found new custodians . . . .  We didn't

5   withhold anything, there were just witnesses that came to light months later."  (*Id.* at 160.)

6   **K.      Samsung's January Productions**

7   In January 2012, as Apple began taking depositions of Samsung's witnesses, Samsung

8   began producing documents from each witness.  In connection with those productions, Samsung

9   produced more than 4,000 documents from the Designer Custodians, *including 1,034 documents*

10  *that reference Apple or Apple products*.  (Chung Decl. ¶ 9 & Ex. C; *see id.* Ex. S (listing

11  documents referencing Apple or Apple products produced from Designer Custodians on or after

12  December 8).)[5]  These documents were from the files of employees whom Samsung had

13  identified as responsible for designing and developing the accused products and whose files

14  Samsung had already supposedly searched in connection with not only the September 28 Order

15  but also the December 22 Order.[6]  (Chung Decl. Exs. A-B, U-V.)

16  The January productions, like the late-December productions, stand in sharp contrast to

17  Samsung's minimal production of relevant documents during the preliminary injunction phase of

18  the case.  For example, Samsung produced *only three documents* sourced to Designer Custodian

19  Jeeyeun Wang before October 13, none of which referenced Apple or its products.  Samsung

20  failed to produce additional documents from Wang by the December 31 deadline set by the

21  December 22 Order.  However, on January 13 and 24, Samsung produced more than 1,800

22  _____

23      [5] Samsung's practice regarding these depositions has been to produce thousands of pages

24  of Korean-language documents related to each deponent fewer than five days before the
    deposition—or even during a deposition.  (Dkt. No. 683 (Jan. 27, 2012 Mazza Decl.) ¶¶ 5-8.)

25  These late productions do not allow Apple sufficient time to process and translate the documents
    in time to use them at a deposition.  (*Id.* ¶¶ 9-13.)

26      [6] Samsung also produced an additional document from a Survey Custodian in a January 5

27  production.  (Chung Decl. Ex. N.)

28

1    documents sourced to Jeeyeun Wang, including *more than 950 documents that referenced Apple*

2    *or Apple products.*  (Chung Decl. ¶¶ 11-12.)

3         Samsung should have provided the January-produced documents without Court

4    intervention by September 12.  When Samsung failed to do so, they became subject to the

5    September 28 Order and were required to be produced by October 7.  When Samsung missed that

6    Court-ordered deadline, the documents were subject to the December 31 deadline set by the

7    December 22 Order.  Samsung's failure to produce these documents until January violated both

8    the September 28 and December 31 Orders.

9    **II.    LEGAL STANDARDS**

10        A court has inherent authority to sanction a party for discovery misconduct even absent a

11   prior court order.  *Unigard Security Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d. 363,

12   368 (9th Cir. 1992).  Where a party violates a discovery order, Federal Rule of Civil Procedure

13   37(b)(2) authorize a court to impose sanctions.  "Failure to produce documents as ordered is

14   considered sufficient prejudice" to establish sanctionable conduct.  *Computer Task Group, Inc. v.*

15   *Brotby*, 364 F.3d 1112, 1116 (9th Cir. 1993).  A court may issue findings of misconduct as a

16   sanction for failure to obey a court order.  *See, e.g.,* Fed. R. Civ. P. 37(b)(2)(A) (court may issue

17   "further just orders" as sanction for failure to comply with court order); *In re*

18   *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) (available

19   sanctions include warnings to counsel and reprimands).  In addition to (or instead of) such orders,

20   a court "must order the disobedient party, the attorney advising that party, or both to pay the

21   reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

22   substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

23   37(b)(2)(C).

24   **III.   ARGUMENT**

25        **A.    Samsung Violated Both Of The Court's Orders Regarding Copying**
              **Documents**

26

27        The Court's Orders concerning production of copying documents were crystal clear.

28   The September 28 Order directed that:

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

12

1

2

3

4

> no later than October 7, 2011, Samsung shall produce:  From the custodial files of each of Samsung [designers of the accused products], all documents referencing the Apple products alleged by Apple to embody one or more of the ornamental or utility features claimed in the patents.  All means all:  email, memoranda, whatever.

5

(Sept. 28, 2011 Order) at 3.)  The December 22 Order provided:

6

7

8

> With respect to any materials subject to the court's September 28, 2011 order that have not been produced, Samsung shall complete its production immediately and, in any event, no later than December 31, 2011.  Any further failure to comply with the September 28 Order will subject Samsung to sanctions.

9

(Dec. 22, 2011 Order) at 3.)

10      Samsung's violations of the Orders are just as clear.  Samsung did not produce "all"

11  copying documents by the October 7 deadline set by the September 28 Order.  Nor did Samsung

12  "complete its production" of "any materials subject to the court's September 28, 2011 order"

13  "immediately and, in any event, no later than December 31, 2011," as required by the

14  December 22 Order.  Instead, at the end of December, Samsung produced almost 100 copying

15  documents; and in January, Samsung produced more than 1000 copying documents.  (Chung

16  Decl. Ex. C.)  Samsung plainly violated both the September and the December Orders.

17      **B.      Samsung Violated The September Order Regarding Survey Documents**

18      The Court's September Order as to survey documents, and Samsung's violations of that

19  Order, also are clear.  The September Order required Samsung, by October 7, to produce "[f]rom

20  any central files or the custodial files of any individuals with specific responsibility for surveying

21  customers of [Samsung's products at issue in the preliminary injunction], all survey documents

22  that reference [Apple's products at issue]."  (Sept. 28, 2011 Order at 4.)

23      Yet Samsung did not produce *any* documents from its three identified Survey Custodians

24  by the time of the preliminary injunction hearing.  Instead, Samsung waited until December to

25  produce from those individuals more than 400 documents mentioning Apple or its products, all of

26  which should have been produced during the preliminary injunction phase of the case.  (Chung

27  Decl. Ex. N.)

28

13

1

**C.      Samsung's Violations Harmed Apple By Withholding Inculpatory Evidence Until After The Preliminary Injunction Was Denied**

2

3      Although the failure to comply with a court order to produce documents is in itself

4    "sufficient prejudice" to establish sanctionable conduct, *Computer Task Group*, 364 F.3d at 1116,

5    Samsung's violations caused Apple real and concrete harm.  Samsung deprived Apple of

6    evidence that would have substantially strengthened a preliminary injunction motion that was

7    denied on narrow grounds.  Moreover, Samsung impaired Apple's ability to prepare for and

8    conduct meaningful depositions in January and February by delaying until the eve of depositions

9    the production of documents that were subject to the September 28 Order and should have been

10   produced months earlier.

11      Samsung's belated productions contain the most inculpatory evidence Samsung has

12   produced to date on design copying, showing that the self-evident similarities between Samsung's

13   and Apple's products were not caused "naturally," as Samsung had claimed, but instead were

14   deliberately copied because Samsung recognized that consumers preferred Apple's designs and

15   features over Samsung's.  This evidence was highly relevant to Apple's preliminary injunction

16   motion because it showed that Samsung was selling competing products that copied Apple's

17   patented designs and features, and that the copied designs and features were important to

18   consumers.  That evidence speaks directly to an outcome-determinative issue in the preliminary

19   injunction order:  whether the patented features had a significant impact on consumer purchasing

20   decisions.

21      The Court concluded that Apple's D'677 iPhone design patent was likely valid and

22   infringed and that Samsung's sale of infringing smartphones would likely cause Apple to suffer a

23   "loss of customers and future downstream purchases," which "would be difficult to recover and

24   can support a finding of irreparable harm."  (Dec. 2, 2011 Order at 24-27, 32 [redacted version at

25   Dkt. No. 452].)  The Court nevertheless denied a preliminary injunction on the iPhone design

26   patent due to lack of irreparable harm, finding that Apple had not presented sufficient evidence

27   that Samsung's use of Apple's patented design was a significant driver of consumer demand for

28   Samsung's phones.  (*Id.* at 33-34, 38.)  The Court further noted that "even if 'design' matters to a

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-CV-01846-LHK
sf-3101324

14

1    new smartphone purchaser, it is not clear how much design of the front face of the phone matters

2    to that same purchaser."  (*Id.* at 38.)

3        Similarly, the Court held that "Apple is likely to succeed on the merits at trial on its

4    claims that the four accused Samsung devices infringe the '381 patent," but denied an injunction

5    because Apple had not shown that consumers' purchasing decisions were "based on" the "snap

6    back" (or "bounce effect") feature protected by the '381 patent.  (*Id.* at 63.)

7        Samsung's late-produced documents provide precisely the evidence that the Court found

8    lacking, and contradict Samsung's assertion that "[t]he evidence . . . refutes Apple's claim that

9    the ornamental design of its products is the basis for its market share."  (Dkt. No. 175 (Aug. 22,

10   2011 Opp. to Mot. for Prelim. Inj.) at 31.)

11       **1.    Samsung's failure to produce evidence that design is important and**
12       **that consumers preferred Apple's designs to Samsung's**

13       In January, Samsung produced from the files of Designer Custodian Jeeyeun Wang an

14   April 2011 report of a consumer satisfaction survey of 900 Samsung customers and 600 Apple

15   customers, conducted over several months.  (Chung Decl. ¶ 14 & Ex. D at

16   SAMNDCA10257314-15.)  The document includes a chart of the "Main reasons why people

17   purchased current [Samsung] smartphone," which shows that "Exterior design" (which includes

18   "screen," "shape/form," "color," and "materials") was by far the most important factor (29% to

19   41%).  (Chung Decl. Ex. D at SAMNDCA10257319.)  Other factors such as applications,

20   processing speed, and manufacturer received much lower scores (a few percent to at most 14%

21   each).  (*Id.*)  The same page states as "Key Analysis":  "Need to recognize the importance of

22   exterior design and screen size, as they are customer purchase decision factors."  (*Id.*)  That

23   document is precisely the type of evidence of consumer demand regarding design that the Court

24   found lacking during the preliminary injunction phase.

25       This late-produced document refutes Samsung's argument—which the Court noted in

26   denying an injunction—that Apple's "potential loss of customers is unrelated to Samsung's

27   product design, and that smartphone design in general is not a determinative factor in consumer

28   decision-making."  (Dec. 2, 2011 Order at 34.)  Samsung's consumer survey shows, on the

1   contrary, that "exterior design" is *the single most important* reason that consumers buy Samsung

2   smartphones.  (Chung Decl. Ex. D at SAMNDCA10257319.)  It also notes that the "iPhone's

3   strengthened glass (front/black) has a glossy feel, which looks classy," and recommends that

4   Samsung "improve" its design by adding "glossiness."  (*Id.* at 10257322.)  This is significant

5   because a key feature of the D'677 iPhone design patent is a "black transparent and glass-like

6   front surface."  (Dec. 2, 2011 Order at 21.)  Thus, the Samsung survey shows not only that design

7   is the most important "customer purchase decision factor," but also that Samsung decided to

8   imitate the "classy" look of Apple's "glossy," "glass-like" front surface.  If Samsung had not

9   violated its obligation to produce this document before the preliminary injunction hearing, this

10   document may well have persuaded the Court to grant a preliminary injunction on Apple's iPhone

11   design patent.  Indeed, in the context of Apple's D'889 tablet design patent, the Court held that

12   Apple had established irreparable harm in view of a Samsung survey that concluded that "Design

13   on the Galaxy Tab 10.1 was and is the main sales driver for the device."  (*Id.* at 49.)  The

14   smartphone survey that Samsung failed to produce provides similar evidence that design is the

15   main sales driver for Samsung phones.

16          Other late-produced documents confirm not only the importance of design, but also

17   consumers' preference for Apple's designs over Samsung's.  For example, in late December,

18   Samsung produced a "Brand Attitude Survey" from the files of Survey Custodian Tim Brenner,

19   which compared the design features of Apple's iPhone with Samsung's phones.  The survey

20   shows that the iPhone has a "more distinctive image" than Samsung phones, with significantly

21   higher rankings on image attributes such as "stylish," "prestigious," "contemporary," "young,"

22   "passionate," and "imaginative."  (Chung Decl. ¶ 35 & Ex. Q at SAMNDCA00232256.)

23   Samsung had a higher ranking only in one imagery factor:  "traditional."  (*Id.*)  Overall,

24   customers ranked Samsung's phones 18.7 points lower than Apple's in terms of "sensual design."

25   (*Id.*; *see* Chung Decl. Ex. Q  at SAMNDCA00232286-89 (explaining the attributes); *see also*

26   *id.* ¶ 34 & Ex. P.)

27

28

Apple's Motion for Rule 37(B)(2) Sanctions for Samsung's Violation of Two Discovery Orders
Case No. 11-cv-01846-LHK
sf-3101324

16

### 2. Samsung's failure to produce evidence that Samsung sought to imitate Apple's designs because they were better than Samsung's

Samsung's late productions include numerous documents from Samsung's Designer Custodians showing that, from the time the first iPhone was released, Samsung repeatedly made side-by-side comparisons of Apple's and Samsung's products, found Samsung's own products wanting, and then copied Apple's designs. (Chung Decl. ¶¶ 23-30.) This evidence, coupled with Samsung's introduction of copy-cat products that looked like Apple's products, demonstrates how important design is in sales of smartphones and tablets in general and Apple's designs in particular—if design was not important, Samsung would not have copied Apple's.

For example, Designer Custodian Bora Kim's files included an October 2007 study entitled "Phase 2 Design Strategy," which set forth Samsung's design strategy for next-generation smartphones. (Chung Decl. Ex. E at SAMNDCA00202336-42.) Specialists from the U.S., Europe, and Asia scored the iPhone much higher than Samsung's products in every category, including "Appearance/Desire," "Emotional resonance/Delight," and "Intrigue/Sensory Perception/Interaction." (*Id.* at SAMNDCA00202379.) The document shows that Samsung was shifting from its "Phase 1" focus on "logical value" (*e.g.*, reliability and performance) to a "Phase 2" focus on "emotional value" (*e.g.*, "[i]ndividuality" and the "5 senses"). (*Id.* at SAMNDCA00202338.) Samsung's internal designers suggested that Samsung create designs that "make you love the product itself," and are "something that you desire to have, can be your own and gives satisfaction for the emotional value that you'll feel once you own it." (*Id.* at SAMNDCA00202340.) The report concluded by recommending that Samsung offer its users a "total experience" just like Apple's, citing Apple's use of "Event[s]" (Steve Jobs product introduction), advertisements, Apple stores, and distinctive Apple packaging. (*Id.* at SAMNDCA00202363.)

Other withheld documents show that Samsung took this recommendation to heart. Samsung recently produced a document titled "Competitor Analysis GUI Benchmarking," dated April 2008, which it sourced to Designer Custodian Minhyouk Lee, the head Samsung designer responsible for the industrial design of Samsung's Galaxy S products. (Chung Decl. Ex. F at

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-CV-01846-LHK
sf-3101324

17

1   SAMNDCA00229011.)  The document describes the iPhone as "the most inspired mobile handset

2   on the market," and "a delight to the eye as well as a highly usable device."  (*Id.* at

3   SAMNDCA00229020.)  Samsung then presented a detailed, side-by-side analysis of numerous

4   features of Samsung and Apple phones, concluding that the "iPhone" is "Best" and the "Winner!"

5   in numerous categories.  (*Id.* at SAMNDCA00229057-71.)

6        Similarly, an email chain sourced to Designer Custodian Jeeyeun Wang summarizes a

7   February 2010 meeting between the Head of Samsung's Mobile Communication Division on

8   Design and numerous Samsung designers, including Minhyouk Lee, Yunjung Lee, and Jinsoo

9   Kim.  (Chung Decl. Ex. H at SAMNDCA10247377.)  The Head of Samsung's Mobile Division

10  strongly criticized the design of Samsung's current phones and, at the same time, praised the

11  iPhone design:

12          *Influential figures outside the company come across the iPhone and*
            *they point out that "Samsung is dozing off."*  **All this time we've**
13          **been paying all our attention to Nokia, and concentrated our**
            **efforts on things like Folder, Bar, Slide,** yet when our UX is
14          compared to the unexpected competitor Apple's iPhone, the
            difference is truly that of Heaven and Earth. It's a crisis of design.
15

16              **. . . .**

17          **[A]ll this time, when Operators made comments about the**
            **designs we put before them, we modified and modified again,**
18          **without missing a single comment.  That style of Business has**
            **worked until now, but the iPhone's emergence means the time**
19          **we have to change our methods has arrived**

20  (*Id.* (emphasis added).)  Samsung's Mobile Division Head further stated:

21          . . . All the carriers tell me, Hey JK! Your phones have great
            technological prowess and everything's great. But it's hard to sell
22          them as high-end phones.

23          That's because we spent all of our subsidy funds on the iPhone and
            can't give a penny in subsidy to your phones, so of course your
24          phones will be expensive and then it follows that they won't sell.

25          I hear things like this: Let's make something like the iPhone.

26          When everybody (both consumers and the industry) talk about UX,
            they weigh it against the iPhone. The iPhone has become the
27          standard.  That's how things are already.

28

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-CV-01846-LHK
sf-3101324

18

1   (Chung Decl. Ex. H at SAMNDCA10247374; *see also id.* ¶ 20 & Ex. G (U.S. mobile carriers

2   urged Samsung to make its phone look more like iPhone).)

3        Another withheld email, from March 2010, titled "To UX executives …," relays a

4   strongly worded message from the Samsung CEO, Gee Sung Choi, to the senior designers at

5   Samsung, criticizing their mindset of "clinging to the past generation."  (Chung Decl. Ex. I at

6   SAMNDCA10247549.)  The author of the email, Principal Designer / Engineer Sungsik Lee,

7   states that "[t]he most representative example" of the new design is "***obviously the iPhone***" and

8   urges Samsung's designers to "learn the wisdom of the iPhone and recognize that they have

9   already set the industry standard."  (*Id.* (emphasis added).)

10         **3.**       **Samsung's failure to produce evidence that Samsung sought to imitate**

11                   **Apple's user interface, including Apple's patented "bounce effect"**

12        Samsung's late productions show that Samsung sought to imitate the "emotional impact"

13   of Apple's "natural" and "intuitive" user interface, including the "Bounce effect" that is the

14   subject of the '381 patent that Apple asserted in its preliminary injunction motion.  For example,

15   the October 2007 "Phase 2 Design Strategy" discussed above refers to an "Intuitive Interface,"

16   that "naturally facilitates intuitive use," showing a photo that appears to be an Apple iPod.

17   (Chung Decl. Ex. E. at SAMNDCA00202358.)

18        Similarly, the Head of Samsung's Mobile Division criticized Samsung's "Omnia" phone

19   as difficult to use, stating that when "you compare the UX with the iPhone, it's a difference

20   between Heaven and Earth."  (Chung Decl. Ex. H at SAMNDCA10247374.)  He told Samsung's

21   lead engineers to create a user interface ("UX") that "can be used by anyone from six year olds to

22   senior citizens," emphasizing that "ease of use" is the answer.  (*Id.* at SAMNDCA10247375.)

23        Samsung's designers implemented this directive by conducting extremely detailed

24   comparisons of the Apple and Samsung user interfaces.  For example, Samsung's late productions

25   include a spreadsheet sourced to Samsung Designer Jaegwan Shin, titled "Analysis of Galaxy tab

26   Operation Speed and Screen Effects."  (Chung Decl. ¶ 28 & Ex. L at SAMNDCA00201771.)

27   This spreadsheet contains a detailed comparison of specific features of Samsung's Galaxy Tab

28   and the Apple iPad, including the "screen effects" that appear and the speed at which these effects

Apple's Motion for Rule 37(B)(2) Sanctions for Samsung's Violation of Two Discovery Orders
Case No. 11-cv-01846-LHK
sf-3101324

19

take place.  As to certain features, Samsung concluded that its Galaxy Tab lacked "emotional impact" because "no Bounce effect is provided."  (Chung Decl. Ex. L at SAMNDCA00201773-74 (Row 29), SAMNDCA00201775-76 (Row 39).)  As to other features, Samsung concluded that its "Bounce effect" was inferior because it lacked the "smooth" and "natural" movement of Apple's.  (*Id.* at SAMNDCA00201773-74 (Rows 20, 32.))

### 4. Samsung's failure to produce evidence that its customers may switch to Apple

Samsung had opposed a preliminary injunction in part by arguing that "there is no reason to conclude that any particular Samsung customer would switch to Apple instead of another manufacturer if an injunction issued," and that "it is more likely that a Samsung customer would switch to another Android device."  (Aug. 22, 2011 Opp. to Mot. at 30.)  The Court was persuaded by that argument, finding that "the evidence suggests that an increase in sales of Samsung smartphones is likely to come at the expense of other smartphones with Android operating systems," rather than Apple smartphones.  (Dec. 2, 2011 Order Denying Prelim. Inj.) at 31.)  Yet Samsung had withheld an April 2011 "Smartphone Market Opportunity Study" showing that, after Samsung, Apple "was the second most considered brand" for existing Samsung customers' future smartphones.  (Chung Decl. ¶ 33 & Ex. O at SAMNDCA00226677.) The study shows that more current owners of Samsung products would consider buying an Apple phone than all other (non-Samsung) brands combined—both Android and non-Android.  (*Id.*)

### 5. Importance of the withheld evidence

The withheld documents were relevant to every aspect of Apple's preliminary injunction motion.  The documents were relevant to Apple's likelihood of success on the merits and to irreparable harm because they showed that design and "screen effects" such as Apple's Bounce effect are important features that Samsung deliberately copied. These documents were also relevant to the balance of hardships because Samsung could not claim legitimate hardship from having to stop selling products that it deliberately copied, and to the public interest, which condemns copying.

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

20

1    There is no question that the documents described above should have been produced by

2    the deadline set by the September 28 Order, and in all events no later than December 31 as

3    required by the December 22 Order.  As noted, the documents come from the files of the very

4    custodians identified by Samsung as the designers and marketing personnel responsible for the

5    accused products (*see* Chung Decl. Exs. A-B, M, U-V), and they are plainly covered by the

6    Court's Orders.

7            **D.      The Court Should Impose Sanctions For Samsung's Violations**

8            Samsung's late productions stand in stark contrast to Samsung's and its counsel's repeated

9    assurances to Apple and the Court that Samsung had fully complied with the Court's Orders.

10   (Chung Decl. Ex. V at 2; Ex. Z at 159.)  For example, at a time of great urgency in the case, when

11   Apple was seeking to compel Samsung to produce documents for Apple to use in its preliminary

12   injunction reply (or at hearing), Samsung's counsel assured the Court that documents showing

13   copying "don't exist."  (Chung Decl. Ex. T at 48.)  That assurance was predicated on testimony

14   from a Samsung 30(b)(6) witness who supposedly had "spoke[n] to" the Designer Custodians,

15   had "inquired extensively whether any of them considered Apple products when designing their

16   products, not just copying, but any consideration of frame of reference," and was told that "they

17   have not."  (*Id.*; *see also id.* Ex. BB.)  We now know the Designer Custodians had extensively

18   considered Apple's products and had compared them to Samsung's products.  Thus, either the

19   30(b)(6) witness's statements about his extensive inquiry and its results were false, or the

20   statements that the Designer Custodians made to that witness were false.  Regardless of the

21   reason, during the preliminary injunction phase of the case and in connection with Apple's

22   motions to compel, Samsung's counsel made representations to the Court and to Apple

23   concerning the evidence and Samsung's compliance with its discovery obligations and the

24   Court's Orders that proved to be false.

25           In truth, not only did copying evidence exist, but Samsung's Designer and Survey

26   Custodians had hundreds of responsive, highly-relevant documents—consisting of thousands of

27   pages of materials—showing that Samsung conducted detailed investigations of Apple's

28   products.  Despite the clear mandates in the September 28 and December 22 Orders, these

1    documents were not produced until long after the deadlines imposed by those Orders and after

2    Apple's motion for a preliminary motion was denied.  Moreover, it is now clear that Samsung did

3    not begin making a concerted effort to collect and produce the documents required under the

4    September 28 Order until the Court issued its December 22 Order.  (*See* Dec. 22, 2011 Mot. to

5    Extend Time.)

6          There are only two possible explanations for Samsung's failure to produce these highly-

7    relevant documents in a timely manner.  Samsung chose to withhold them in an attempt to avoid

8    an injunction, or Samsung and/or its counsel failed to search with anything close to reasonable

9    diligence (despite making claims to the contrary).  Either way, their behavior is unjustified.

10         The withheld documents would have substantially strengthened Apple's preliminary

11   injunction motion and would have weakened Samsung's opposition even more substantially, as

12   the documents directly contradict Samsung's arguments.  Although sanctions cannot begin to

13   compensate Apple for the irreparable harm it has suffered since the Court denied the preliminary

14   injunction without having considered the withheld evidence, Apple is entitled to remedies under

15   Rule 37(b)(2).

16         As a "further just order[]" pursuant to Rule 37(b)(2)(A) and the Court's inherent authority,

17   Apple requests that the Court make findings that Samsung violated both the September 28 and

18   December 22 Orders.  Samsung, with its experience in patent litigation, fully appreciates the

19   potential penalties at the end of a case for a party whose litigation conduct amounts to willful

20   misconduct or special circumstances.  An express finding by this Court is therefore likely to

21   encourage Samsung to comply with its responsibilities as the case continues.

22         In addition, pursuant to Rule 37(b)(2)(C) and the Court's inherent authority, Apple

23   requests that the Court order Samsung and its attorneys to pay Apple the attorneys' fees and

24   expenses it has incurred (and will incur) in connection with:

25         (1)    Apple's preliminary injunction and appeal from the order denying the preliminary

26                injunction.  Given that the withheld documents were highly relevant to the equities

27                of that motion and to outcome-determinative issues, Apple's having to litigate the

28                motion without the withheld documents and its appeal from the denial of the

1    preliminary injunction should be deemed to have been caused by Samsung's

2    violation of the Orders.

3    (2)    Apple's motion to compel that resulted in the December 22 Order, including its

4    analysis of Samsung's compliance with the September 28 Order and its efforts to

5    redress Samsung's non-compliance with that Order through correspondence and

6    meeting and conferring.  That work was caused by Samsung's violation of the

7    September 28 Order.

8    (3)    Apple's analysis of Samsung's compliance with the December 22 Order, including

9    Apple's review and analysis of the documents that Samsung produced from

10    December 22 through the present, and Apple's efforts to redress Samsung's non-

11    compliance with that Order through correspondence and meeting and conferring.

12    That work was caused by Samsung's violation of the September 28 and

13    December 22 Orders.

14    (4)    Apple's Motion to Compel Timely Production of Foreign-Language and Other

15    Documents in Advance of Related Depositions, filed on January 27, 2012.  This

16    motion addressed many documents that were subject to the September 28 and

17    December 22 Orders, and that should have been produced long before the

18    depositions in question.  Had the documents been produced when ordered, Apple

19    would not have had to file that motion.

20    (5)    Apple's fees and expenses in connection with this motion.

21    Apple's fees and expenses in connection with the work described above arose from

22    Samsung's failure to comply with the Court's Orders and may be recovered under Rule

23    37(b)(2)(C) and the Court's inherent authority.  *See*, *e.g.*, *In re Google Litig*., No. C08-03172-

24    RMW (PSG), 2011 U.S. Dist. LEXIS 151337, at *26-27 (N.D. Cal. Aug. 2, 2011) (monetary

25    sanctions are appropriate to reimburse party for both sanctions motion and cost of analyzing

26    producing party's inadequate production).

27

28

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

23

1       Apple proposes that if the Court grants this motion and allows Apple to recover fees and

2   expenses, Apple submit documentation of its fees and expenses three weeks after such order is

3   issued.

4   **IV.     CONCLUSION**

5       For the reasons discussed above, the Court should grant Apple's motion and issue orders

6   finding that Samsung violated the September 28 and December 22 Orders and directing Samsung

7   and its attorneys to pay Apple the attorneys' fees and expenses it has incurred (and will incur)

8   arising from the violations.

Dated:  February 8, 2012          MORRISON & FOERSTER LLP

By:   */s/ Michael A. Jacobs*
          Michael A. Jacobs

          Attorneys for Plaintiff
          APPLE INC.

APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS
CASE NO. 11-cv-01846-LHK
sf-3101324

24