HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**DECLARATION OF MINN CHUNG IN SUPPORT OF APPLE INC.'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS**<br><br>Date:  March 27, 2012<br>Time:  10:00 a.m.<br>Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |

## SUBMITTED UNDER SEAL

I, MINN CHUNG, declare as follows:

1.        I am an attorney at the law firm of Morrison & Foerster LLP, counsel of record in this action for plaintiff Apple Inc. ("Apple").  I submit this declaration in support of Apple's Motion for Finding That Samsung Violated Discovery Orders (the "Motion").  Unless otherwise indicated, I have personal knowledge of the matters set forth below.  If called as a witness I could and would testify competently as follows:

2.        I am a native Korean speaker and proficient in written Korean language.  I have a Bachelor of Science degree in physics from the Massachusetts Institute of Technology and spent over 15 years developing technology products, both hardware and software, before attending law school.

3.        Attached hereto as **Exhibit A** is a true and correct copy of Samsung's Response and Objections to Apple's Interrogatories Relating to Apple's Motion for a Preliminary Injunction (No. 1) dated September 19, 2011.  In its Response, Samsung identified the following persons as the designers of the Infuse 4G, the Galaxy S 4G, the Galaxy Tab 10.1, and the Droid Charge: Jinsoo Kim, Jung Min Yeo, Minhyouk Lee, GiYoung Lee, Yongseok Bang, Bora Kim, Yunjung Lee, Wookyun Kho, Kihyung Nam, Dooju Byun, Jaegwan Shin, Qi Ling, and Jeeyeun Wang ("Designer Custodians").

4.        Attached hereto as **Exhibit B** is a true and correct copy of Samsung's Objections and Responses to Apple's Interrogatories Relating to Apple's Motion for a Preliminary Injunction – Set Two (Nos. 10-14), dated September 21, 2011.  In its Responses to Apple's Interrogatories Nos. 10 and 11, Samsung identified the same persons listed in Paragraph 3 above as designers of the Infuse 4G, the Galaxy S 4G, the Galaxy Tab 10.1, and the Droid Charge.

5.        The last day Samsung produced any document prior to the hearing on Apple's Motion for a Preliminary Injunction, which was held on October 13, 2011, was October 12, 2011.  Two documents numbering ten pages, Bates numbered SAMNDCA00045058-00045067, which appear to be prior art references, were produced on October 12, 2011.  No custodian information was provided for these documents by Samsung.

6.      By October 13, 2011, Samsung had produced 2,446 documents in total sourced to the Designer Custodians listed in Paragraph 3 above.  Of these, **98** documents, **only about 4 percent**, mentioned Apple or Apple products.

7.      After October 13, 2011, Samsung produced no documents sourced to any of the Designer Custodians listed in Paragraph 3 above until December 7, 2011.

8.      Between December 7, 2011 and December 31, 2011, Samsung produced 293 documents in total sourced to the Designer Custodians, 84 of which referenced Apple or Apple products.  Hence, the percentage of documents referencing Apple or Apple products from the Designer Custodians in this period was **28 percent**, which was a ***seven-fold jump*** compared to the percentage in Samsung's production up to October 13, 2011.

9.      ***After December 31, 2011***, Samsung produced 4,282 documents sourced to the Designer Custodians, ***1,034*** of which referenced Apple or Apple products—***over ten times*** the number produced during the Preliminary Injunction phase of this case.  The percentage of documents referencing Apple or Apple products from the Designer Custodians in this period was 24 percent.

10.     In total, Samsung produced ***1,118 documents numbering over 35,000 pages*** from the custodial files of the Designer Custodians that reference Apple or Apple products ***since December 7, 2011***.  Of these documents, all but 2 were produced since ***December 23, 2011***.

11.     Attached hereto as **<u>Exhibit C</u>** is a chart summarizing Samsung's production of all documents sourced to the Designer Custodians from the beginning of this case until January 24, 2012.  As shown in the chart, many of the designers who produced relevant documents on or after December 23, 2011 produced little or no such documents during the Preliminary Injunction phase of this case.  For example, no relevant document sourced to Jaegwan Shin was produced before October 13, 2011.  The extent of Samsung's production of Jaegwan Shin document before the Preliminary Injunction hearing was limited to a single document produced on October 8, 2011.  That document made no mention of Apple or Apple products.  On December 23, 2011, however, Samsung produced over two dozen documents sourced to Jaegwan Shin that referenced Apple or Apple products.

12.     Similarly, Samsung produced only three documents sourced to Jeeyeun Wang during the Preliminary Injunction phase.  In contrast, Samsung produced ***over 950 documents*** referencing Apple or Apple products in ***January, 2012***, more than three months after the Court ordered deadline of October 7, 2011, and nearly two weeks after the second Court ordered deadline of December 31, 2011.

13.     The designer custodial documents Samsung produced after December 23, 2011, are highly material to the disputed issues in Apple's Motion for a Preliminary Injunction.  Some help refute arguments Samsung made in opposition to Apple's preliminary injunction motion.

14.     For example, Samsung's Opposition brief claimed that the evidence then in the record "refutes Apple's claim that the ornamental design of is products is the basis for its market share."  (Samsung Opposition to Apple's Motion for a Preliminary Injunction ("Opposition") filed Aug. 22, 2011 at 31.)  Samsung's belatedly-produced documents tell a different story. Attached hereto as **<u>Exhibit D</u>** is a true and correct copy and a certified translation of excerpts of a document produced by Samsung on January 13, 2012 from the custodial files of Jeeyeun Wang. The document contains a study measuring various factors that influence consumers' smartphone purchasing decisions.  "Exterior design" is by far the most important purchasing factor, selected by 28% to 40% of the persons surveyed (depending on age).  (Ex. D at SAMNDCA10257319.) In contrast, factors such as UI, applications, processing speed, and manufacturer received much lower scores, ranging between a few percent and at most 14.3%.  (*Id.*)  The document contains the following recommendation: "Need to recognize the importance of exterior design and screen size, as they are customer purchase decision factors."  (*Id.*)

15.     On December 29, 2011, Samsung produced from the custodial files of Bora Kim a document called "Phase 2 Design Strategy," dated October 8, 2007, which shows that Samsung hired design experts from around the world to compare Samsung's then-existing products to the Apple iPhone.  A true and correct copy of that study and a certified translation of relevant pages are attached hereto as **<u>Exhibit E</u>**.  The experts who took part in the study scored the iPhone higher than Samsung's products in every category of product design, stating that the iPhone's design evoked feelings of "desire, intrigue and delight" better than any Samsung phone.  (Ex. E at

SAMNDCA00202379.)  Samsung's evaluation indicates that these rankings were a composite of numerous individual elements, such as attractive shape and materials; harmonious and original appearance; detailed finish; emotional attachment; and design leadership.  (*Id.* at SAMNDCA 00202377-78.

16.     The report concludes with a recommendation to Samsung that it offer its users a "total experience" just like Apple's.  For each part of that experience, the document shows an aspect of Apple's brand identity that Samsung should emulate, from Steve Jobs introducing the iPhone to the look of the Apple store.  (Ex. E at SAMNDCA 00202363.)

17.     Samsung's "Phase 2 Design Strategy" shows that Samsung's emphasis on emotional factors reflected a "Change of Design Strategy" to create products that that not only had "logical value" (*e.g.*, good price, performance, and reliability), but that also had "emotional value" that would strengthen their "premium quality" and create an "emotional experience" for customers.  (Ex. E at SAMNDCA00202338.)  Samsung noted that emotional response is important because it "affect[s] decision making or behavior in a complex manner."  (*Id.*)

18.     Attached hereto as **Exhibit F** is a true and correct copy of an English-language document called "Competitor Analysis GUI Benchmarking," authored by Tanya Anderson and Diana Ng of Samsung and dated April 2008.  This document was produced on December 29, 2011 and sourced to Minhyouk Lee, the head Samsung designer responsible for the industrial design of Samsung's Galaxy S products.  Exhibit F is another example of highly material documents that Samsung failed to produce in a timely manner.

19.     On page 10 of Exhibit F, Samsung authors note that the iPhone is "the most inspired mobile handset on the market," and is "a delight to the eye as well as a highly usable device."  (Ex. F at SAMNDCA00229020.)  Samsung's analysis then compares various features of Samsung's phone with the Apple iPhone and other competing phones.  Samsung concluded that the iPhone is superior to Samsung's phone in numerous respects.  For example, Samsung concluded that the iPhone browser is the "best" as to seven of nine features, and that iPhone browser is the overall "winner."  (Ex. F at SAMNDCA00229059-71.)

20.     Samsung's belatedly-produced documents also show that U.S. mobile carriers specifically urged Samsung to make its phone look more like the iPhone.  For example, on *January 13, 2012*, Samsung produced a February 2010 email chain, titled "Fwd: RE: Behold III UI Change Required!!," from the custodial files of Jeeyeun Wang that includes T-Mobile's comments on Samsung's proposed design.  Attached hereto as **Exhibit G** is a true and correct copy of this email chain, including a certified translation of the Korean portions of the first three pages (most of the email is in English).  As relayed by the Samsung employee who authored the last email of the chain, T-Mobile (referred to as TMO in the email) demanded a new "look & feel" that is "completely different" from the Samsung design.  (Ex. G at SAMNDCA10247537.) Specifically, T-Mobile suggested that Samsung consider "lighter backgrounds and colors throughout," noting that "the iPhone has been successful at achieving a light and airy aesthetic." (*Id.*)  T-Mobile also stated that the "iPhone maintains a lively, vivid experience largely due to the 'pop' of their icons," and urged Samsung to "create similar magic."  (*Id.* at SAMNDCA10247538.)

21.     Another highly relevant Samsung document sourced to Jeeyeun Wang and produced on January 13, 2012 is an email chain summarizing an important February 2010 meeting between the President of Samsung's Mobile Communication Division on Design and numerous Samsung designers, including Minhyouk Lee, Yunjung Lee, and Jinsoo Kim.  Attached as **Exhibit H** hereto is a true and correct copy of this email and a certified English translation. The email does not indicate the recipients, but it was presumably sent to all of the persons who attended this meeting, including Minhyouk Lee, Yunjung Lee, and Jinsoo Kim.  The President of Samsung's Mobile Division strongly criticized the design of Samsung's current phones and, at the same time, praised the iPhone design.  He stated:

A company goes out of business because of its own success factors.  Samsung's success factors are diligence, sincerity, and acting in an exemplary manner.  The kind that says yes to whatever a carrier wants…  That's a shortcut to going out of business.  All the carriers tell me, "Hey JK! Your phones have great technological prowess and everything's great. But it's hard to sell them as high-end phones. That's because we spent all of our subsidy funds on the iPhone and can't give a penny in subsidy to your phones, so of course your phones will be expensive, and then it follows that they won't sell.  I hear things like this: ***Let's make something like the iPhone***.

When everybody (both customers and the industry) talks about UX, they ***compare it against the iPhone***.  ***The iPhone has become the standard***.  That's how things are already.  Do you know how inconvenient the Omnia is?  When you compare 2007 version iPhone with our current Omnia, can you honestly say Omnia is better?  If you compare the UX of the iPhone, it's a difference between Heaven and Earth.

(Exh. H at SAMNDCA10247374 (emphasis added).)

***Influential figures outside the company come across the iPhone and they point out that "Samsung is dozing off."***  All this time we've been paying all our attention to Nokia, and concentrated our efforts on things like Folder, Bar, Slide, ***yet when our UX is compared to the unexpected competitor Apple's iPhone, the difference is truly that of Heaven and Earth. It's a crisis of design.***

All this time, when Operators made comments about the designs we put before them, we modified and modified again, without missing a single comment.  That style of Business has worked until now. but the iPhone's emergence means the time we have to change our methods has arrived

(Ex. H at SAMNDCA10247377 (emphasis added).)

22.     Attached as **Exhibit I** hereto is a true and correct copy of a March 2010 email produced on January 13, 2012 and sourced to Jeeyeun Wang, and a complete and accurate English translation thereof.  The email, titled "To UX executives …," relays a strongly worded message from the Samsung CEO, Gee Sung Choi, to the senior designers at Samsung, criticizing their mindset of "clinging to the past generation."  (Ex. I at SAMNDCA10247549).  The author of the email, Principal Designer / Engineer Sungsik Lee, states that "[t]he most representative example" of the new design is "***obviously the iPhone***."  (*Id.* (emphasis added).)  Lee goes on to say that he is not suggesting "make a UX that is exactly the same as the iPhone," but rather that Samsung should "learn the wisdom of the iPhone and recognize that they *[i.e., Apple]* have already set the industry standard."

23.     Furthermore, there are hundreds of documents in Samsung's December 2011 and January 2012 productions from the Designer Custodian files that show Samsung's detailed analysis of Apple products and/or comparison of Apple products against Samsung products.  For example, a document produced January 13, 2012 and sourced to Jeeyeun Wang, titled " 『GA3』 Grade and Quality Satisfaction Evaluation Results," dated November 5, 2010, shows Samsung's detailed side-by-side comparisons of the iPhone 4 against a Samsung product code-named GA3. Attached hereto as **Exhibit J** is a true and correct copy of relevant excerpts of this document and a corresponding translation.  Samsung conducted side-by-side comparisons of its product with the iPhone 4 receiving higher satisfaction scores in every single category.  (Ex. J at SAMNDCA10252809, 812, 818-22, 825, 832-34.)  The comparisons include physical design of the phones as well as the user interface design.  For example, in Category 22, the case frame is compared:

- GA3: The monotonous material and coloring are plain, making it look like it was not a carefully crafted design.
- iPhone 4: Mixture with metal provides a luxurious and futuristic feeling.

(Exh. J at SAMNDCA10252832.)

24.     For Category 23, Material Satisfaction, the iPhone 4 also comes out on top:

- GA3: The rear side pattern and plastic material are evaluated as being unsatisfactory.
- iPhone 4: … since it is made of metal material and tempered glass, it looks expensive.

(Exh. J at SAMNDCA10252833.)

25.     The result is summarized on page 7 of the report with graphs showing Apple's iPhone 4 receiving higher scores than the Samsung phone in every category.  (Ex. J at SAMNDCA10252809.)

26.     Another example of a late-produced document is an English language document titled "Rollout Strategy: Touch Portfolio / Recommendation Based on Consumer Insight," dated

December 17, 2008, which was also produced on January 13, 2012 and sourced to Jeeyeun Wang. Attached hereto as **Exhibit K** is a true and correct copy of relevant excerpts of this document, which is called "Touch portfolio Rollout Strategy Recommendation Based on Consumer Insight." On page 12, the document acknowledges that the iPhone 4 is the most stylish brand "For State of the Art." The following input from a surveyed user is also included:

> "I think Apple is so successful because they have come out with a
> ***unique product*** [and] you see all other mobile phone providers are
> trying to copy each other. Apple came out with something
> different and that's why ***everyone likes Apple because it's***
> ***different***."

(Ex. K at SAMNDCA10244368.)

27.     On page 13, the document mentions that "iPhone users show deep loyalty" with quotations from users for "Expression of love" – e.g., "I have an emotional relationship with it" – and "Expression of awe" – e.g., "This thing is world-changing in terms of phones." (Ex. K at SAMNDCA10244369.) Moreover, on page 19, it is acknowledged that "***Samsung touch phones are liked, but not loved.***" (*Id.* at SAMNDCA10244375 (emphasis added).)

28.     As discussed above, the first time any document mentioning Apple or Apple products was produced from the custodial files of Jaegwan Shin—a Samsung engineer identified as a person having personal knowledge of Samsung's development and design of the Bounce feature in Samsung products—was December 23, 2011. Many of these documents showed detailed testing and comparison of the utility functional aspects of Apple products by Samsung, including the Bounce effect. Attached hereto as **Exhibit L** is a true and correct copy of a spreadsheet titled "Analysis of Galaxy tab Operation Speed, Screen Effect Analysis," which was produced on December 23, 2011 and sourced to Jaegwan Shin. Column C of this spreadsheet lists the particular Application being tested, Column D designates the categories for specific function or feature tested, Column E describes the feature or function of Samsung Galaxy tab, and Column F is for "iPad Comparison." (Ex. L at SAMNDCA00201771-72.) Column G shows "Analysis."

29.     Row 20 of this spreadsheet shows a comparison of the Bounce effect for the Contact application.  Column D on Row 20 lists "List Bounce" of Galaxy Tab as the feature tested, and Column E describes the Bounce effect of the Samsung product as having "no emotional impact."  (Ex. L at SAMNDCA00201773.)  Under Columns F and G, the Bounce effect on the iPad is described as "smooth" and "natural."  (*Id.* at SAMNDCA00201774.) Similarly, on Row 29, the Memo application in Galaxy Tab is described as lacking "emotional impact" due to the Samsung products' lack of Bounce effect, compared to the iPad, which provides the effect.  (*Id.* at SAMNDCA00201773-74.)  Rows 39, 54, 61, and 68, show similar comparison of the Bounce feature in the Browser, the Settings, the myFiles, and the Alarm applications in the Galaxy Tab and the iPad.  (*Id.* at SAMNDCA00201775-80.)

30.     There are many more documents in Samsung's December 2011 and January 2012 productions that show Samsung's detailed analysis of Apple products and comparison of Apple products against Samsung products.  Just to give a few examples, these documents include:

- "Touch Wiz 3.0," dated 12/8/2009, sourced to Jeeyeun Wang, produced 1/13/2012: A 90-page document showing a detailed side-by-side comparison of Apple's iPhone against Samsung's Touch Wiz 3.0 graphical user interface. (SAMNDCA10247283-372.)

- "iPhone Touch Response Strategy," dated 1/11/2007, sourced to Jeeyeun Wang, produced 1/13/2012: A 29-page document showing a detailed analysis of the iPhone and a detailed comparison against Samsung products. (SAMNDCA10280077-105.)

- Email dated 5/9/2011, sourced to Jaegwan Shin, produced 12/23/2012: Email chain showing detailed performance comparisons of iPad and iPad 2 against various Samsung tablet computer products.  (SAMNDCA00202089-113.)

31.     Samsung's December and January productions also contain survey documents mentioning Apple and its products that should have been produced earlier pursuant to the September 28 and December 22 Orders.

32.     Attached hereto as **Exhibit M** is a true and correct copy of a letter dated November 4, 2011 sent from Apple's counsel to Samsung's counsel.  The letter confirms the names of the three survey custodians whose files Samsung supposedly searched pursuant to the September 28 Order:  Sungwook Kwon, Tim Benner, and Jinna Yoon (the "Survey Custodians"). Attached hereto as **Exhibit N** is a true and correct copy of a chart summarizing Samsung's production of survey documents from the files of these Survey Custodians.  For each Survey Custodian, the chart shows the number of survey documents referencing Apple or its products produced before October 13 and the number of documents produced after that date.  Before October 13, Samsung did not produce any survey documents from the files of Survey Custodians at all.  In December 2011 and January 2012, Samsung produced 410 documents referencing Apple or its products.

33.     Like the design documents discussed above, the survey documents withheld from Samsung's preliminary injunction production contain highly relevant materials that were central to the issues in dispute in Apple's preliminary injunction motion.  For example, attached hereto as **Exhibit O** is a true and correct copy of excerpts from an April, 2011 Smartphone Market Opportunity Study bearing the Bates numbers SAMNDCA00226589-6816.  The document was produced by Samsung on December 29, 2011 from the files of Jinna Yoon.  In opposition to Apple's preliminary injunction motion, Samsung argued that "there is no reason to conclude that any particular Samsung customer would switch to Apple instead of another manufacturer if an injunction issued."  (Opposition at 30.)  Exhibit P, however, shows that 29% of Samsung customers were considering buying an iPhone in the future.  (*Id.* at SAMNDCA00226677.) In fact, as the study shows, there were more Samsung customers who would consider buying an Apple phone than all other brands combined (both Android and non-Android, such as RIM).  (*Id.*)

34.     Attached hereto as **Exhibit P** is a true and correct copy of excerpts from a January 30, 2007 study by The Cambridge Group entitled "Positioning Strategy Recommendation" bearing the Bates numbers SAMNDCA00249029-9120.  The document was produced on December 31, 2011 from the files of Tim Benner.  The "overall objective" of the study was "to develop relevant, differentiated positioning for Samsung's mobile phones in the

U.S. market in order to drive new momentum in the category." (Ex. P at SAMNDCA00249031.) The study notes that smart phones and music phones are growing categories expected to be "huge opportunity areas going forward." (*Id.*) It finds that Apple's "recently announced introduction of the iPhone is likely to bring new momentum and attention" to these categories. (*Id.* at SAMNDCA00249046.) "Despite relatively modest near-term sales objectives. . .," the study states, "the impact of the category is likely to be material **because the product will affect consumer expectations for design, user interface and presumably cell phone music capabilities.**" (*Id.*) The study concludes with a foreboding recommendation: "Although unlikely to have a significant impact on Samsung share in the near term, Apple's evolving strategy with the iPhone must be monitored carefully as it evolves." (*Id.* at SAMNDCA00249048.)

35.    Attached hereto as **<u>Exhibit Q</u>** is a true and correct copy of excerpts from a January 2010 Brand Attitude Survey bearing the Bates numbers SAMNDCA00232190-2290. Samsung produced this survey on December 30, 2011 from the files of Tim Benner. The survey shows that the iPhone has a "more distinctive image" than Samsung phones, with significantly higher rankings on image attributes such as "stylish," "prestigious," "contemporary," "young," "passionate," and "imaginative." (Ex. Q at SAMNDCA00232256.) Samsung had a higher ranking only in one factor: "traditional." Overall, customers ranked Samsung's phones 18.7 points lower than Apple's in terms of "sensual design." (*Id.*; *see also*, *id.* at SAMNDCA00232286-88 (explaining these attributes).)

36.    Separately and together, the documents discussed above provide solid evidence in support of Apple's preliminary injunction motion and help refute several claims Samsung made in opposition to that motion. Attached hereto as **<u>Exhibit R</u>** is a list of all documents referencing Apple or Apple products produced on or after December 8, 2011 from the custodial files of the Designer Custodians. Attached hereto as **<u>Exhibit S</u>** is a list of all survey documents referencing Apple or Apple products produced on or after December 8, 2011 from the custodial files of the Survey Custodians. For each entry in these lists, a short description of the nature of reference to

1    Apple or Apple products is provided.  It is unquestionable that all of these documents should have

2    been produced by October 7, 2011, under the Court's September 28 Order.

3         37.     Attached hereto as **Exhibit T** is a true and correct copy of excerpts from the

4    transcript of the September 28, 2011 hearing on Apple's motion to compel.

5         38.     Attached hereto as **Exhibit U** is a true and correct copy of Samsung's Amended

6    Identification of Custodians, Litigation Hold Notices and Search Terms dated October 10, 2011.

7    The document was produced to Apple in conjunction with Samsung's production of documents in

8    October, 2011.

9         39.     Attached hereto as **Exhibit V** is a true and correct copy of a letter from Sara

10   Jenkins to Wesley Overson dated October 10, 2011.

11        40.     Attached hereto as **Exhibit W** is a true and correct copy of a letter from Wesley

12   Overson to Victoria Maroulis dated October 10, 2011.

13        41.     Attached hereto as **Exhibit X** is a true and correct copy of a letter from Rachel

14   Kassabian to Wesley Overson dated October 25, 2011.

15        42.     Attached hereto as **Exhibit Y** is a true and correct copy of a letter from Wesley

16   Overson to Rachel Kassabian dated November 1, 2011.

17        43.     Attached hereto as **Exhibit Z** is a true and correct copy of excerpts from a

18   transcript of a hearing held before this Court on January 19, 2012.

19        44.     Attached hereto as **Exhibit AA** is a true and correct copy of an e-mail from

20   Samsung's counsel discussing vendor problems dated October 7, 2011.

21        45.     Attached hereto as **Exhibit BB** is a true and correct copy of excerpts from the

22   transcript of the deposition of Justin Denison, Samsung's 30(b)(6) designee, which took place on

23   September 21, 2011.

24        I declare under the penalty of perjury under the laws of the United States of America that

25   the forgoing is true and correct and that this Declaration was executed this 8th day of February

26   2012, at Seoul, South Korea.                    By:  _____*/s/ Minn Chung*_____

                                                           Minn Chung

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with General Order 45, X.B., I hereby attest that Minn Chung has concurred in this filing.

Dated:  February 8, 2012

/s/ Michael A. Jacobs
Michael A. Jacobs