# EXHIBIT 22

# FILED UNDER SEAL

## Unknown

| | |
|---|---|
| **From:** | Paul Zeineddin [p.zeineddin@samsung.com] |
| **Sent:** | 21 February 2006 11:47 |
| **To:** | Injung Lee; Hosik Jang; SEUNGGUN PARK; HEUNGMO LEE |
| **Subject:** | Fwd: FW: Joint Ericsson, Motorola, Nokia contribution for IPRR ahg#2 |

------- Original Message -------
Sender : Taylor Neill-W20180<Neill.Taylor@motorola.com>
Date : Feb 21, 2006 06:38
Title : FW: Joint Ericsson, Motorola, Nokia contribution for IPRR ahg#2

Paul,

These are the revised documents submitted to ETSI today.  I look forward
to seeing you on March 8 in Seoul.

Neill

23/11/2006

**Confidential Business Information - Subject to Protective Order**
Confidential Business Information -- Subject to Protective Order

SS 03067975

S-794-ITC-005215292

**ETSI GA ahg on IPR Review #2**
**Sophia Antipolis,**
**22-23 February 2006**

**ETSI GA/IPRR02(06)xx**
23/11/2006
page 1 of 1

| | |
|---|---|
| **Source:** | **Ericsson, Motorola, Nokia** |
| **Title:** | **Expanded Proposal for IPR Policy Reform** |
| **Agenda item:** | new |

**Document for:**

| Decision | |
|---|---|
| Discussion | **X** |
| Information | |

# 1    Decision/action requested

> *The ETSI GA ad hoc group is invited to consider this revised "Minimum Change Optimum Impact" proposal for updating the IPR regime to meet current challenges.*

# 2    References

| | |
|---|---|
| ETSI RoP Annex 6 | ETSI IPR Policy |
| ETSI/GA#42(03)20rev1 | Report of the GA ad hoc group on ETSI's IPR Policy Operation |
| ETSI Guide on IPRs | as approved by the ETSI Board #48 on 1 September 2004 |
| ETSI GA/IPRR01(06)08 | Proposal for IPR Policy Reform (Ericsson, Motorola, Nokia) |

# 3    Background & Rationale

Standards development in ETSI has been highly effective and cellular wireless technology, for example, has been an extremely valuable technology offering which has had unprecedented success both in terms of its widespread availability and minimal interoperability problems.

However, the task of licensing all the essential patents needed to implement a standard is becoming increasingly complex due to the proliferation of patents and patent owners, and the lack of transparency surrounding essential patents.

Many alternative views and approaches are currently being discussed among the stakeholder community. Views vary, sometimes dramatically, according to the business model and position in the value chain of the respective stakeholders. This makes it all the more difficult to find a package of measures which is going to be acceptable to all stakeholders in a reasonable time frame.

The present proposal – which is an expanded version of our original proposal ETSI GA/IPRR01(06)08 - is still based on a "minimum change optimum impact" approach in that it seeks to identify what are commonly believed to be the most important and pressing issues that need to be addressed and proposes minimum change to the current regime to promptly achieve maximum improvement in the commercial and competitive landscape.

**Confidential Business Information - Subject to Protective Order**

Confidential Business Information -- Subject to Protective Order

## 4      Identification of the critical issues

The ETSI IPR policy requires Members to undertake to license their essential patents on fair, reasonable and non-discriminatory terms (FRAND). However, currently no express definition or qualification of FRAND exists in the ETSI rules.

Consequently, each essential patent owner can develop its own idea of how FRAND should be applied in practice. This fragmented approach means that when there are many essential patents and many essential patent owners the overall license cost, i.e. the "cumulative royalties", are more uncertain.

Also, the increasing tendency for multi-function, multi-technology products means there are ever more patents covering the end product, giving rise to the phenomenon of so-called "royalty stacking".

Overall, cumulative royalties are perceived to be uncertain and often too high, possibly even prohibitive.  The application of FRAND at the cumulative royalty level as well as at the individual patent owner level can be difficult to achieve.

Also open standardization is increasingly attracting participants that possess patents but do not themselves manufacture standards-compliant products. While attracting technical contributions from such entities is in itself to be encouraged it also poses a risk of pushing up royalties in an unlimited way because such patent owners are merely licensors and as such are not constrained in their royalty claims. Manufacturers, on the other hand, are generally both licensors AND licensees and being on both sides of the licensing fence has a natural balancing effect in royalty setting.

Another trend is for entities who are not at all active in the technology field to hold essential patents, for example they may have acquired them, perhaps only for licensing purposes, and sometimes such entities (popularly called "patent trolls") may seek extortionate royalties, thus undermining the viability of the standard leading to unreasonably high royalty levels and create uncertainty that is harmful to the sound functioning of the markets.

As an overall principle, FRAND must balance the interests of both the developers and users of the technology. The major contributors to standards invest significant amounts of money and resourcing to develop open standards for the benefit of the whole industry and consumers. IPR policies need to be formulated in a way that such contributors are not at a competitive disadvantage due to their high investment in technology development but rather can be compensated for their effort.  At the same time the technology needs to be affordable for the whole industry and the consumers.

An additional, but subsidiary, point concerns "transparency" of essential patents.  Firstly, there is a need to have greater visibility of the patent landscape early in the standardization process in order to be able to gauge the economic impact of essential - and potentially essential – patents incorporated into emerging standards.  Secondly, essentiality declarations are based on companies' own judgment of their patents and the declaration policy of each individual company can significantly vary.  False or misleading declarations of essentiality have the potential to distort the perception of royalty expectations in the market place.

## 5      Proposal for "Minimum Change Optimum Impact" solution:

Solving the key issues around clarity of the current FRAND based IPR rules will be sufficient to solve the most critical issues and re-establish the credibility of the IPR regime generally in ETSI and also in other standardization bodies.

Therefore, it is proposed to make changes to the IPR regime and practices, but that the changes should focus primarily on clarifying the meaning of FRAND (as proposed in Section 6.1 below).

**Confidential Business Information - Subject to Protective Order**
Confidential Business Information -- Subject to Protective Order

Additionally, increased transparency of essential patents (as proposed in section 6.2) would help (a) technology selection, and (b) underpin the practical application of the clarified FRAND requirements.

This "minimum change optimum impact" approach is also desirable from the perspective of the long term credibility of ETSI and other standard development organizations. These proposed changes are really in the nature of clarifications of existing FRAND rules and commonly understood goals. As such, they should not undermine existing FRAND obligations. Major changes in the fundamental rules and statutes may be interpreted as negative evidence of the overall process. Major changes should be applied only as a last resort.

The related practices in the industry such as license negotiations can continue as today i.e. based on bilateral negotiations. This will also reduce risk of expanding the uncertainty beyond the area of our control.

This proposal has the important advantage that it is a generic solution for all situations, not just for specific projects, so that the same IPR regime would apply equally to all standards. Also, the "minimum change" means it can be implemented quickly and easily, so removing any potential roadblocks that could hinder the timetable for ongoing standardisation activities.

# 6      Consequences and Implication of the proposed changes:

This proposal, although requiring only minimum change, would nevertheless have an optimum impact.

The impact that this proposal would have relative to the key milestones of the standardisation process is illustrated in Annex 1.

In more details the specific changes we are proposing are:

## 6.1     Clarification of FRAND

It is proposed to revise the ETSI IPR policy to clarify the meaning of FRAND in two important respects in order to assist in the unhindered development of commercially viable standards, and hence commercially viable standard-compliant products.

The two proposed changes would introduce the principles of AGGREGATED REASONABLE TERMS and PROPORTIONALITY into the FRAND definition, as follows:

1.  AGGREGATED REASONABLE TERMS means that in the aggregate the terms are *objectively commercially reasonable* taking into account the generally prevailing business conditions relevant for the standard and applicable product, patents owned by others for the specific technology, and the estimated value of the specific technology in relation to the necessary technologies of the product.

2.  PROPORTIONALITY. Compensation under FRAND must reflect the patent owner's proportion of all essential patents.  This is not simply a numeric equation but the compensation must, within reasonable bounds, reflect the contribution.

The definition of Aggregated Reasonable Terms has been updated since our original proposal.

**Enforceability of proportionality concept**

It is proposed to continue to rely on bilateral licensing and legal enforceability of the rules against anyone violating them, rather than establishing any special resolution mechanisms. This is a traditionally preferred model of regulating licensing transactions.  Once one or two test cases have

**Confidential Business Information - Subject to Protective Order**

Confidential Business Information -- Subject to Protective Order

been heard in the courts, for example, it will help to establish a common and authoritative precedent of how FRAND is to be applied. In the mean time the new definition will greatly help parties set the parameters in bilateral negotiations, especially in a case where either party is seeking royalties which are orders of magnitude away from reasonable expectations and would give rise to prohibitive cumulative licensing costs. Importantly, the proposed new definition in the IPR policy will enable and signal to judges in patent litigation that they can and should look at the overall cumulative royalty costs for a given standard and not just to assess whether the terms being offered by one particular licensor are fair and reasonable *in vacuo*. In other words the courts will be directed to take into account the cumulative royalty effect in standards where there are potentially many patent claims.

It is not necessary to impose any concrete royalty cap as market forces will take care of that, and this PROPORTIONALITY approach allows flexibility to accommodate different parameters and considerations applying in different standards and under different market conditions and at different times. It also promotes the continued benefits available from bilateral licensing, where overlapping R&D and alternative technologies can be traded without duplicative costs to the end user.

Importantly, this proposal also influences essential patent owners (a) who are not members of ETSI, and (b) who are not themselves manufacturing standard-compliant products, including "patent trolls".

## 6.2    Visibility of Patent Landscape

**Patent Scanning**

Greater visibility of potentially relevant background patents early in the standardisation process would help the technology selection process.

It is proposed that once the technology scope of a new standard project has been agreed an entity external to ETSI would conduct a search of potentially relevant background patents before development of the standard gets under way. This would provide a snapshot of background patents and ownership with reference to:

- those parties who are committed to make licenses available on FRAND terms in accordance with the reformed ETSI IPR policy, that is to say subject to the principles of Aggregated Reasonable Terms and Proportionality;
- those parties who have not made such a commitment; and
- those parties who may be subject to other licensing frameworks.

It is intended that the results of this patent landscape scan would be published and so would be available to all ETSI Members at no cost.

The patent scanning exercise itself would of course need to be funded and it is proposed that the cost would be borne by interested parties on an entirely voluntary basis, per project, as the need arises and agreed at the outset.

Each ETSI member would then be able to take into account the patent landscape when choosing technology for standardisation. Indeed it is expected that this would even lead to adoption of an alternative solution if the technology in question has unpredictable IPR concerns, e.g patents where there is no commitment to license on FRAND terms and the principles of Aggregated Reasonable Terms and Proportionality.

Further patent scans may be conducted for future releases of the standard before the respective technology selection process.

It is emphasised that the patent scanning activity proposed here would be performed entirely outside ETSI, so that ETSI itself would have no responsibility for conducting or even arranging the search, nor any liability for the search results.

## 6.3 Transparency of Essential Patents

**More Robust Essentiality Declarations/Disclsoures.**

In order that the principle of PROPORTIONALITY can be applied fairly in practice it is important that declarations of essentiality are as robust and reliable as possible.

We are proposing the following two measures to enhance the reliability of essentiality declarations:

### 6.3.1 Complete Declarations

The ETSI database needs to distinguish more clearly between complete essentiality declarations, i.e. those which include a full reference to the standard and relevant part of the standard, and incomplete declarations which do not.

The standard form on which declarations of essential patents are supposed to be made to ETSI, i.e. the so-called IPR Information Statement and Licensing Declaration Form (Annex B to the ETSI Guide on IPRs) was revised in September 2004, following the Recommendation from the previous IPR ad hoc group (Issue 13) in order to provide exactly this kind of better mapping of patents onto a particluar standard or technical specification or part of it (see Recommendation 25 of the Report of the GA ad hoc group on ETSI's IPR Policy Operation.)   A copy of the form with a sample data entry line is included here in Annex 2 .

However, it seems that not all patent owners are providing this additional information in practice. Recommendation 26 of ETSI/GA#42(03)20rev1 went on to deal with the case where the information was still missing, as follows:

> "If the IPR owner fails to volunteer the information about the applicable standard or technical specification at the outset, ETSI Secretariat could – as a matter of standard practice – write to the declarer or IPR owner (if different) with an invitation to provide this information, which can then be included in the database. If the IPR owner declines or fails to provide this information within a set time (say 6 months), ETSI could add a note to the undertaking/declaration explaining the action ETSI has taken and indicating the outcome."

We believe it is in the interest of transparency, especially in underpinning the principle of PROPORTIONALITY, for the above Recommendation 26 to be fully implemented.

Further it is proposed that the database should be modified to flag even more clearly patent declarations that are incomplete so they can be easily distinguished.

### 6.3.2 Evidence of Essentiality

We are proposing that the ETSI IPR policy is revised to supplement the existing obligation (in Article 4.1) to disclose essential patents with a new commitment that anyone disclosing an essential patent will also be obliged to provide supporting evidence of essentiality (such as claim charts) to a prospective licensee on request in bilateral negotiations.

To be clear, we are not requiring that this evidence of essentiality is placed in the public domain. What we are proposing is that supporting evidence concerning the relevant standard <u>must</u> be supplied on a confidential basis to a bona fide prospective licensee if they ask for it.

We believe this would be a significant benefit for prospective licensees and an important basis for ensuring that the principle of PROPORTIONALITY works properly in practice. Furthermore, it will act as a disincentive for patent owners to over-disclose patents when there are no grounds to believe they are essential, because there will be an overarching commitment to provide evidence of essentiality if asked to do so in bilateral negotiations.

## 7    Issues for discussion/decision

The ETSI IPR ad hoc group is invited to study the "Minimum Change Optimum Impact" proposal presented here.

In particular the ETSI IPR ad hoc group is invited:

1. To agree to change the IPR policy to clarify FRAND in terms of AGGREGATED REASONABLE TERMS and PROPORTIONALITY

2. To agree to implement the changes proposed with respect to (a) Visibility of the Patent Landscape and (b) TRANSPARENCY of essential patents (more robust essentiality declarations).

**Note:**

We recognize that this contribution only addresses the technologies standardized in ETSI and there may be a need to address non-ESTI technologies with respect to IPRs.

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

SS 03067982

S-794-ITC-005215299

*ETSI GA ahg on IPR Review #2*
*Sophia Antipolis,*
*22-23 February 2006*

*ETSI GA/IPRR02(06)xx*
23/11/2006
page 7 of 7



**Minimum Change Optimum Impact (MCOI) proposal**

**Enhanced ETSI IPR Policy** : FRAND=Aggregated Reasonable Terms+Proportionality; transparency ; supportable essentiality

Future Releases

- Pre-Commit to enhanced ETSI IPR Policy

- Agree target technology scope
- Perform external scan of patent landscape representing observable investments in target technology
- Publish snapshot of patent ownership giving **transparency** relative to parties 1) committed to IPR Policy, 2) not committed, 3) committed to other licensing framework

- Each Member has the opportunity to consider patent landscape **transparency** when choosing technology to be selected for standardization : *(may yield adoption of alternative solution if technology in question has unpredictable IPR concerns)*

- Disclose essential patents to ETSI as standard stabilizes

- Implement new technology
- Develop competitive market in an environment of reasonable trust, confidence and predictability

*Commercially viable terms*

- Negotiate Bilateral licenses based on **Aggregated Reasonable Terms** and **Proportionality**
- Licensor must supply **supporting evidence of essentiality** if requested by Licensee

Pre-standardization

Feasibility study

Standards development & approval

Technology rollout and deployment

**Annex 1**

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

*ETSI GA ahg on IPR Review #2*
*Sophia Antipolis,*
*22-23 February 2006*

*ETSI GA/IPRR02(06)xx*
23/11/2006
page 8 of 8

**Annex 2**

**ETSI IPR Information Statement**

| ETSI Standard or Work Item | | | | Patent Proprietor | Patent/ application No. | Patent Subject/ Title | Country | OPTIONAL INFORMATION: Other patents/applications in same family*: to which the Undertaking applies | |
|---|---|---|---|---|---|---|---|---|---|
| Project or Standard name | Work Item OR Standard No. | Section | Version | | | | | Patent/application No. | country |
| UMTS | TS 125 215 | 6.1.1.2 | v.3.5.0 | Nokia | 1131972 | Scheduling of slotted-mode related measurements | EPO | 12740/00 | Australia |
| | | | | | | | | 99813100.8 | China P.R. |
| | | | | | | | | 108270 | Finland |
| | | | | | | | | 11-318161 | Japan |
| | | | | | | | | 6532226 | USA |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

*Patent family information is provided voluntarily. The completeness and accuracy of any patent family information that is provided cannot be guaranteed.*

SS 03067983

S-794-ITC-005215300

# ETSI IPR Policy Reform

## Minimum Change Optimum Impact

Expanded Proposal

by

Ericsson, Motorola, and Nokia

Sophia Antipolis, 22-23 February 2006

**Confidential Business Information - Subject to Protective Order**

Confidential Business Information -- Subject to Protective Order

# Key Elements:

1. Clarification of FRAND in the IPR policy

   - Codify NOT re-define

2. Early Visibility of Relevant Patents

3. Enhanced TRANSPARENCY of essential patents

Confidential Business Information - Subject to Protective Order

Confidential Business Information -- Subject to Protective Order

SS 03067985

S-794-ITC-005215302

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

S-794-ITC-005215303

SS 03067986

# 1. Clarification of FRAND:

## Aggregated Reasonable Terms

- **Cumulative royalties are commercially viable**
- **Flexible dynamic cap that encourages innovation**

## Proportionality

- **Individual entitlement to royalties benchmarked against all other patent owners' entitlements**

➤ *N.B. Definitions are work in progress – feedback invited !*

Page 3

# 2. Early Visibility of Relevant Patents

1. Patent Landscaping early in standardisation

   - Results made public to all at no cost

   - Informs technology selection

**Confidential Business Information - Subject to Protective Order**

Confidential Business Information -- Subject to Protective Order

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# 3. Enhanced Transparency of Essential Patents

## More robust essentiality declarations

- *So proportionality can be applied fairly in practice*

 

    1. Declarations must indicate relevant part of standard
- *If not, flagged as "incomplete" in ETSI database*

 

    2. Pre-commitment to provide claim charts  of declared essentials on request in bilateral negotiations

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Minimum Change Optimum Impact (MCOI) proposal

**Enhanced ETSI IPR Policy** : FRAND=Aggregated Reasonable Terms+Proportionality; transparency ; supportable essentiality

Future Releases

- Pre-Commit to enhanced ETSI IPR Policy

- Agree target technology scope
- Perform external scan of patent landscape representing observable investments in target technology
- Publish snapshot of patent ownership giving **transparency** relative to parties 1) committed to IPR Policy, 2) not committed, 3) committed to other licensing framework

- Each Member has the opportunity to consider patent landscape **transparency** when choosing technology to be selected for standardization : *(may yield adoption of alternative solution if technology in question has unpredictable IPR concerns)*

- Disclose essential patents to ETSI as standard stabilizes

- Implement new technology
- Develop competitive market in an environment of reasonable trust, confidence and predictability

*Commercially viable terms*

- Negotiate Bilateral licenses based on **Aggregated Reasonable Terms** and **Proportionality**
- Licensor must supply **supporting evidence of essentiality** if requested by Licensee

| Pre-standardization | Feasibility study | Standards development & approval | Technology rollout and deployment |

SS 03067989

S-794-ITC-005215306

6

Doc: ETSI GA/IPRR01(06)13
Agenda item: 8
Document for: Discussion

# IPR in standardisation:

## Joint mobile operator statement of expectation

**based on document VIE_DOC_12_r1**
## some criteria for further discussion (outcome of a brainstorming session)

Source:

      

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

S-794-ITC-005215307

SS 03067990

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

S-794-ITC-0052153O8

SS 03067991

# Criteria & expectations (1/7)

- **predictability of commercial environment**
  - **Business margins are anticipated to come under pressure**
  - **The lengthy technology life cycle in the infrastructure requires significant, long term investment**
  - **The rapid turnover in consumer terminals introduces additional difficulty**
  - **Today's IPR regime in standardisation does not allow operators to assess the total expected cost of technologies**
  - **We need a less unpredictable commercial environment**

- **definition of FRAND**
  - **FRAND regime has worked well in the past, but now proving somewhat vague in some cases**
  - **For avoidance of doubt, we need some additional measures in special cases (FRAND+)**

- **maintain pro-competitive effect**
  - **FRAND was designed to ensure the pro-competitive nature of standardisation**
  - **FRAND+ shall maintain and strengthen the pro-competitive effect**

2

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Criteria & expectations (2/7)

- **Transparency**
  - **IPR transparency supports our aim to develop standards in a climate of openness**
  - **We need to achieve transparency around IPR ownership and licensing terms**
  - **Outside the standards development community, a certain level of IPR transparency can be achieved by conducting appropriate searches**

- **late IPR declaration ("silence is golden") vs. "declaration is golden"**
  - **Early declaration desirable, however, we do not see it strictly necessary**
  - **Solutions can be found which avoid enforcement of early declarations**
  - **E.g. under the capped cumulative royalty regime declarations are not required until royalties get claimed**

- **cumulative patent royalties**
  - **Cumulative patent royalties represent a key challenge to creating a more predictable commercial environment**
  - **Any acceptable solution to a new IPR regime must solve this effect while still encouraging innovation**
  - **Capping cumulative royalties is one measure proposed**

3

SS 03067992

S-794-ITC-005215309

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Criteria & expectations (3/7)

- **rules against "trolls", with whom it is difficult to negotiate**
  - 3rd parties whose intent is to observe the technology development and engage in IPR activities without regard for established IPR regimes undermine the transparency and predictability of the IPR in standards
  - Defensive mechanisms (e.g. non-public working mode, patent searches) must come in place to curtail "trolling" activities

- **assessment of essentiality**
  - An IPR holder claiming royalties from an implementer of a standards shall prove the essentiality of his IPR against the standards at stake
  - We expect the cost of an independent essentiality check to be borne by the IPR holder

- **binding rules defined consensus based / enforceable**
  - This holds true in both cases: (1) The IPR rules of an SDO and (2) the IPR rules of a Technology Interest Group
  - Enforceability works best if commercial advantages are bound to adherence of rules. Non-compliance with rules should result in forfeit of commercial return

S-794-ITC-005215310

SS 03067993

4

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Criteria & expectations (4/7)

- **within legal framework**
  - **Yes, we should act within current legal framework**
  - **While IPR law might have deficiencies in some jurisdictions, it is beyond the remit of an SDO to change this**

- **attractive by incentive**
  - **Any revised IPR regime should facilitate participating IPR developers and holders to monetise their IPR according to the terms agreed ex-ante**
  - **Any revised IPR regime should minimise the risk to the standard from additional 3rd party IPR liabilities by jointly conducting patent searches, assist in negotiating 3rd party IPR licensing, etc.**
  - **The revised IPR regime should create a trusted environment between participating IPR holders and users by keeping contributions and draft specifications confidential until standards are adopted**

- **R&D re-financing effectively supporting innovation**
  - **Ex-ante agreed IPR terms must balance the interests of IPR holders and IPR users at the same time**
  - **IPR holders shall be rewarded through royalties paid by IPR users in return for the R&D and technology that IPR holders contribute to the standard**

5

SS 03067994

S-794-ITC-005215311

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Criteria & expectations (5/7)

- **simple, flexible, applicable**
  - We do not believe in "one-size-fits-all". Rules must be flexible enough to adapt to the specific situations they are applied
  - Achieving more predictability in a complex commercial & legal environment is a major undertaking. Solutions might not always be easy but they must be worth the effort

- **economic issues no burden for daily standardization process**
  - A new solution, once in place, must not impose time consuming burden on the technical standardisation work
  - We believe: The earlier ex-ante IPR terms are agreed, the greater the freedom for the technical work to progress

- **Essentiality – tricky issue**
  - Today's IPR regimes deal with technically essential IPR only
  - Economically essential IPR, required to implement a standard efficiently, might have similar effects and might therefore be of equal importance
  - We are open to suggestions as how economically essential IPR can be reflected in a new IPR solution, if possible

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Criteria & expectations                    (6/7)

- **proportionality**
  - Agree ex-ante how royalties shall be distributed among IPR holders
  - Proportionality to the IPR included seems like a suitable general rule which might need to be refined appropriately
  - We solicit suggestions from IPR holders

- **clarify ownership of technologies before inclusion into standard**
  - This criterion seems similar to "declaration is golden" commented earlier
  - While early declaration is desirable, this might not be strictly necessary

- **support means for license negotiations / arbitration?**
  - We are open to detailed suggestions for ex-ante agreed arbitration rules from arbitration proponents

- **case by case vs. general solution / start case by case?**
  - We suggest to introduce new general rules to make them firm and enforceable
  - But only start making use of new rules in exceptional (i.e. IPR-loaded) cases
  - Existing rules remain in place for majority of standardisation projects

7

SS 03067996

S-794-ITC-005215313

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

S-794-ITC-005215314

SS 03067997

# Criteria & expectations                          (7/7)

- **define scope of "ex ante" /  rules only?  more (e.g. cap)?**
  - See last slide …

- **proceed with appropriate speed**
  - LTE might be the first major standardisation project requiring new IPR rules after finishing its study phase

- **thorough understanding / convincing proposals**
  - We strongly suggest to make educated decisions, but there is no such reform out there yet

- **3rd party patents have to be taken into consideration**
  - Any attempt to create a more predictable commercial environment is limited by 3rd parties potentially holding essential IPR
  - Be they trolls or serious technology developers, 3rd parties deserve special attention in any new IPR solution.

- **Concentrate our power on areas where we (standardization) can do changes**
  - Agreed!

8

Confidential Business Information - Subject to Protective Order
Confidential Business Information -- Subject to Protective Order

# Expecting ex-ante agreement of IPR terms

- **Goal: Maintain competitive effect in technology selection based on total cost of technology**

- **When to agree?**
  - **Earliest: Start of a standardisation project, e.g. launch of feasibility study**
  - **Latest: Before the standard gets agreed**
  - **Trade-off: Early agreements can help to focus work on technical grounds**

- **What to agree?**
  - **Licensing framework for the royalty-bearing technology**
  - **Introduce firm, enforceable new IPR rules, to be applied in exceptional (i.e. IPR-loaded) cases; (existing rules remain in place for majority of standardisation projects)**
  - **Technology Interest Group framework for the royalty-bearing technology**
  - **Possible components of licensing framework: Royalty-bearing elements, licensing scheme (volume and/or time dependency), cumulative royalty cap, reciprocity, arbitration, etc.**
  - **Possible components for the Interest Group framework: Working model for technical groups, administration & funding, patent handling, patent searches, principle rules for a patent pool (administration, funding, royalty distribution)** 9

SS 03067998

S-794-ITC-005215315