HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105–2482
Telephone:  (415) 268–7000
Facsimile:  (415) 268–7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526–6000
Facsimile: (617) 526–5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858–6000
Facsimile: (650) 858–6100

Attorneys for Plaintiff and
Counterclaim–Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                  Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                  Defendants. | Case No. 11–cv–01846–LHK (PSG)<br><br>**APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JANUARY 27, 2012 DAMAGES DISCOVERY ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      April 3, 2012<br>Time:      10:00 a.m.<br>Place:     Courtroom 5, 4th Floor<br>Judge:    Hon. Paul S. Grewal |

**SUBMITTED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................ iii

RELIEF REQUESTED ...................................................................................................... iii

APPLE'S CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL
    PROCEDURE 37 AND LOCAL RULES 37–1 AND 37–4 ........................................ iv

STATEMENT OF ISSUES TO BE DECIDED ................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.      INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

    A.    Apple's Requests for Production of Sales and Financial Information
        Relevant to Establishing Damages ............................................................ 2

    B.    Apple's Motion to Compel ........................................................................ 2

    C.    Samsung's Assurances to the Court That It Would Provide All the
        Requested Information .............................................................................. 4

    D.    The Court's Order .................................................................................... 5

    E.    Samsung's February 3, 2012 Production ................................................. 5

    F.    Samsung Refuses to Provide Any Additional Information ....................... 7

III.   LEGAL STANDARD ............................................................................................ 7

IV.   ARGUMENT ......................................................................................................... 8

    A.    Samsung's Meager Production Violated the Court's Discovery Order ................. 8

        1.    The Order Reflects Samsung's Broad Assurances to the Court That
            Samsung Would Produce What Apple Requested ...................................... 8

        2.    No Single Document Can Satisfy the Order .............................................. 9

        3.    Samsung's Production Omits Numerous Categories of Documents ........ 10

        4.    Samsung's Production Fails to Provide a Complete Set of Critically
            Important Internal Accounting and Financial Information ...................... 11

        5.    The Spreadsheet Is Inconsistent with the Testimony of STA's
            Controller ............................................................................................. 12

        6.    The Spreadsheet Is Riddled with Errors.................................................. 12

    B.    Samsung Intentionally Withheld Specific Documents Created in the
        Ordinary Course That Apple Requested and That Are Subject to the
        Court's Order ........................................................................................ 12

    C.    Samsung's Violation Has Prejudiced and Will Continue to Prejudice Apple ...... 14

    D.    The Court Should Impose Sanctions for Samsung's Violation ........................... 16

V.    CONCLUSION ..................................................................................................... 18

APPENDIX:  [Proposed] Order Granting Apple's Motion to Compel Production of
        Documents and Things, Dkt. No. 616

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bergstrom v. Sears, Roebuck & Co.*,
   496 F. Supp. 476 (D. Minn. 1980) ........................................................................... 14

*Computer Task Group, Inc. v. Brotby*,
   364 F.3d 1112 (9th Cir. 2004).................................................................................... 8

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006).................................................................................... 8

*Lundy Enters., LLC. v. Wausau Underwriters Ins. Co.*,
   No. 06–3509–MVL–SS, 2010 WL 323571 (E.D. La. Jan. 21, 2010).................................... 15

*Tacori Enters. v. Beverlly Jewellery Co.*,
   253 F.R.D. 577 (C.D. Cal. 2008) .......................................................................... 7 n.4

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992)...................................................................................... 7

**STATUTES**

15 U.S.C.
   § 1117....................................................................................................................... 14

35 U.S.C.
   § 284
   § 289....................................................................................................................... 14

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
   37(b)(2) ..................................................................................................................... 7
   37(b)(2)(A)......................................................................................................... 8, 17

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

ii

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on April 3, 2012, at 10:00 a.m., or as soon as the matter

4

may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for

5

the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street,

6

San Jose, CA 95113, Apple Inc. ("Apple") shall and hereby does move the Court pursuant to

7

Federal Rule of Civil Procedure 37(b)(2), Local Rule 37–4, and the Court's inherent authority for

8

further orders arising from the material violation, by Defendants Samsung Electronics Co., Ltd.

9

("SEC"), Samsung Electronics America, Inc.'s ("SEA"), and Samsung Telecommunications

10

America, LLC's ("STA") (collectively, "Samsung") of Section D(4) of the Court's January 27,

11

2012 Order re Discovery Motions (Order), addressing "Sales and financial information relevant to

12

establishing damages."

13

This Motion is based on this Notice of Motion and Motion and supporting Memorandum

14

of Points and Authorities; the Declarations of Erik J. Olson ("Olson Decl.") and Eric R. Roberts

15

("Roberts Decl.") in Support of Apple's Rule 37(b)(2) Motion Re Samsung's Violation of

16

January 27, 2012, Order and the exhibits attached thereto; all other papers and pleadings on file in

17

this action; and such other written or oral argument as may be presented at or before the time this

18

Motion is taken under submission by the Court.

19

**RELIEF REQUESTED**

20

Pursuant to Federal Rule of Civil Procedure 37(b)(2), Local Rule 37-4, and the Court's

21

inherent authority, Apple seeks:

22

1.  An order requiring that, within one week after the order is entered, Samsung produce

23

all the documents identified in Section V of Apple's proposed order submitted with its

24

January 11, 2012 Motion to Compel, entitled "Financial Information Relevant to

25

Damages."  (*See* [Proposed] Order Granting Apple's Motion to Compel Production of

26

Documents and Things, (Dkt. No. 616), attached hereto as Appendix A.)

27

2.  An order permitting Apple's damages experts to base their opinions to be offered at

28

trial on the documents identified in Paragraph 1 above without providing a new expert

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

iii

1   report and without being deposed after production of those documents, and precluding

2   Samsung from cross-examining Apple's damages experts based on their expert

3   reports, which are due before the hearing on this Motion and therefore will be

4   prepared without access to those documents.

5      3.  An order permitting Apple to depose a Samsung Rule 30(b)(6) witness on the newly-

6   produced documents set forth in Paragraph 1 for a total of no more than ten hours (not

7   to count against Apple's allotted deposition hours).

8      4.  An order precluding any of Samsung's expert and other witnesses from testifying

9   regarding Samsung's sales or profitability based on any document other than the

10   document labeled "SAMNDCA00323946," which Samsung produced on February 3,

11   2012.

12      5.  An order precluding Samsung from seeking a continuance or extension of the trial date

13   or any other case deadline, or seeking to delay any deadline or obligation that

14   Samsung faces in this action, based in whole or in part on orders issued in connection

15   with this Motion or on any party's actions in compliance with those orders.

16      6.  An order finding that Samsung materially violated the January 27, 2012, Order

17   (Order).

18   **APPLE'S CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37 AND LOCAL RULES 37–1 AND 37–4**

19

20   In accordance with Federal Rule of Civil Procedure 37 and Local Rules 37-1 & 37-4,

21   Apple hereby certifies that it has in good faith conferred with Samsung in an effort to obtain

22   Samsung's full compliance with the Order without further Court action.  Apple's efforts to

23   resolve this dispute without Court intervention are described in the Olson Declaration and its

24   attached exhibits.  (*See* Olson Decl. ¶¶ 13, 16, 18, 20–24, Exs. 11, 13–18.)

25

26

27

28

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

iv

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      Whether Samsung has violated the Court's January 27, 2012, Order (Order) by failing to

3 produce the damages–related documents it committed and was obligated to produce.

4 Dated:  February 28, 2012              MORRISON & FOERSTER LLP

5

6                                    By:    */s/ Michael A. Jacobs*
                                          Michael A. Jacobs
7
                                       Attorneys for Plaintiff
8                                      APPLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.     INTRODUCTION**

3          When Apple moved in January to compel Samsung to produce sales and financial

4  information relevant to establishing Apple's damages, Samsung claimed that the motion was

5  moot because Samsung had agreed to produce the information that Apple wanted.  The Court

6  accepted Samsung's promises and ordered Samsung make a complete production by February 3,

7  2012 (the "Order").  But Samsung did not comply.  Instead of the robust production that Samsung

8  promised, Samsung produced *a single spreadsheet*.  That spreadsheet supposedly addresses

9  nearly all the Order requires regarding sales, expenses, and profits associated with the accused

10  products.  It does not do so.  It is a litigation-generated, highly-summarized, internally-

11  inconsistent, uncorroborated, and incomplete statement representing what Samsung wants Apple

12  to have.  It is not what the Order requires and not what Apple needs to build its damages model

13  and prove its damages case.

14          There is no doubt that Samsung could readily provide the information that Apple

15  requested and that Samsung told the Court it would produce.  STA's controller testified at

16  deposition that Samsung routinely creates detailed documents that are relevant to Samsung's sales

17  of and profits from sales of accused products, such as monthly profit and loss statements and

18  reports of "profitability at a handset level."

19          Indeed, despite Samsung's adamant refusal to produce such documents in this case,

20  Samsung recently produced in the parallel ITC action a smattering of documents that include

21  monthly profit and loss statements and other detailed information that—if the information were

22  supplied in full—would meet Apple's needs.  It is not clear why Samsung refuses to produce all

23  the documents that Apple seeks in this case—*notwithstanding this Court's Order*—when it has

24  produced a handful of some of these types of documents in the ITC action.  Regardless of

25  Samsung's reasons, we now know with certainty not only that these types of documents exist but

26  also that Samsung can and will produce them when it suits Samsung's agenda to do so.

27          Samsung thus has no good excuse for its failure to produce.  But Samsung's strategy is

28  plain:  Samsung seeks to dribble out its production even of core documents such as the financial

1    information at issue here—and then try to leverage delays to its advantage in seeking a

2    postponement of the trial date.  Apple seeks enforcement of the Order and mitigating sanctions.

3    Samsung should be required to produce the full range of documents that Apple sought in its

4    Motion to Compel and a witness to testify regarding them (not counted against Apple's allotted

5    deposition time).  Moreover, because expert reports are due on March 22, 2012, before this

6    Motion is heard, Apple's damages experts' reports will be prepared based on Samsung's deficient

7    production and without benefit of the full production sought by this Motion.  Accordingly,

8    Apple's experts should be allowed to base their opinions to be offered at trial on the newly-

9    produced documents without a new expert report and without being deposed on those documents,

10   and Samsung should be precluded from cross-examining Apple's damages experts based on their

11   reports.  Samsung should be required to base its damages testimony solely on the spreadsheet that

12   it contends provided Apple with all that it needed.  Samsung should also be found to have

13   materially violated the Order.

14   **II.    FACTUAL BACKGROUND**

15         **A.    Apple's Requests for Production of Sales and Financial Information Relevant
16                 to Establishing Damages**

17         On August 26, 2011, and October 26, 2011, Apple propounded detailed requests for the

18   production of financial documents evidencing Samsung's U.S. and worldwide revenue, unit sales,

19   selling price, gross margins, various expenses and operating profits, and other financial data for

20   the accused products. (Olson Decl. ¶ 2, Exs. 1–2.)  This information is, of course, fundamental to

21   the calculation of Apple's damages.  (*Id.* ¶ 26.)  Samsung has never questioned the relevance of

22   Apple's requests.  (*See, e.g.*, *id.* Ex. 6; *see also* January 27, 2012, Order (Order) ("Order") at 15.)

23         **B.    Apple's Motion to Compel**

24         When, by mid–December, Samsung had produced nothing more than a smattering of

25   unconnected reports, Apple repeatedly requested immediate production of the documents.  (Olson

26   Decl. ¶ 3, Exs. 3, 4, 5.)  Samsung dragged its feet.  (*Id.* ¶ 3.)  On January 10, nearly a month after

27   Apple's initial letter and faced with Apple's threatened motion to compel to be filed the next day,

28

1    Samsung suggested that it would make a full and complete production of all of the documents

2    Apple requested by February 3.  (*Id.* ¶ 4, Ex. 6.)

3         To ensure that Samsung would, in fact, provide all of the documents that Apple had

4    requested, and would do so in time for Apple to use those documents when deposing Samsung's

5    financial controller on January 24, Apple filed a Motion to Compel on January 11.  (Dkt. No.

6    613.)  Apple's motion included a detailed proposed order with a comprehensive list of the

7    documents and information that it needed, a copy of which is included as an Appendix A to this

8    Motion.  The following examples reflect the detail with which information was requested:

9        A.  Documents evidencing Samsung's U.S. and worldwide revenue, unit sales and
             selling price for the accused products (smartphones and tablets), including:

10

11           1.  Samsung's U.S. and worldwide revenues for the accused products (1)
             per smartphone or tablet (2) per carrier (3) per quarter.

12                                          * * *

13       C.  Reports showing gross profit and Samsung's costs of goods sold:

14           1.  For each accused product, costed bills of materials and financial reports
             provided to U.S. or corporate management reflecting Samsung's calculation of its

15           gross margin for the accused products from June 2009 to the present.

16           2.  To the extent the reports are not prepared on a product–by–product
             basis, reports reflecting gross margins or gross profit consolidated for the accused

17           products, for tablets and for smartphones or for Galaxy S and Galaxy S II line of
             phones as reflected on a quarterly or monthly basis.

18

19           3.  Based on standard accounting and financial conventions, these reports
             should show both standard costs for the components that make up the phones and

20           allocations of other expenses (such as freight, variances, and manufacturing
             overhead) to calculate a consolidated cost of goods sold.

21       D.  Reports reflecting operating costs and profitability with respect to
             smartphones:

22

23           1.  Consolidated reports provided to U.S. and corporate management
             reflecting any expenses not included in costs of goods sold that Samsung incurs or

24           allocates to U.S. smartphone or tablet products, including any research and
             development expenses, sales and marketing expenses, and general and

25           administrative expenses.

26           2.  Consolidated reports that reflect how such expenses for the accused
             products compare to U.S. expenses for mobile phones more generally and/or to

27           worldwide expenses.

28

3.  Consolidated reports on operating profit for any of the accused phones, for smartphones, and for mobile phones more broadly reflecting the foregoing expenses.

* * *

G.  Documents sufficient to show relevant expense for research and development and to design around any patent, including:

1.  Any consolidated reports on the expense[s] Samsung incurred to develop any of the accused products.

2.  Any reports or financial information that reflect the actual or projected expense[s] to design around any patent.

H.  Any quarterly, annual or multi–year business plans prepared for the accused products or the divisions of Samsung that sell the accused products.

(Appendix A at 8–10.)  Apple sought the production no later than January 23, explaining: "Given that the initial exchange of expert reports is set for March 22, 2012, it is imperative that Apple timely receive documents containing such information."  (Dkt. No. 613–1 at 22.)

At the hearing, Apple's counsel explained that Apple required the requested documents to create a damages model that measures Samsung's profits from sales of the accused products.  He specifically explained Apple's need to obtain financial information from all Samsung entities (because Samsung could move revenue and allocate costs in ways that might benefit Samsung for tax or other reasons) and to obtain information at a "fairly granular" level, including information for each product on a month–by–month level, G&A allocations, and costed bills of material (because not all Samsung products are at issue and products are rolled in and out).  (Olson Decl. Ex. 8 at 154:13–156:18.)  And the Court specifically focused on Apple's request "for the bill of materials for each of the individual units that infringe."  (*Id*. at 156:5–11.)

C.      **Samsung's Assurances to the Court That It Would Provide All the Requested Information**

Samsung opposed Apple's motion on the sole ground that it was unnecessary and "moot." (Dkt. No. 642–3 at 15.)  In its Opposition, in its counsel's supporting declaration, and at the hearing, Samsung repeatedly and unequivocally assured the Court that Samsung would provide the requested information.  (*Id*. at 4–9, 11–12, 14; Dkt. No. 642–4 ¶¶ 6, 17, 18, 24, 36, 40; Olson

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

4

1    Decl. Ex. 8 at 168:3–12, 168:22–169:3.)  Samsung's Opposition stated that it had "agreed to

2    produce nearly every category of financial documents *that Apple requested*—with a few

3    exceptions for duplicative or non–existent information—by February 3, 2012."  (Dkt. No. 642

4    at 4 (emphasis added).)  At the hearing, Samsung's counsel asserted that "*all those financial*

5    *documents* are going to be produced and have been and we have agreed to produce

6    them. . . relating to the financial categories involved for the three named defendants."  (Olson

7    Decl. Ex. 8 at 168:5–12) (emphasis added.)  Samsung not only made these general promises as to

8    the categories of information that Apple sought, it also specifically promised to produce costed

9    bills of materials, information at the product level, and worldwide information about its sales.

10   (*See, e.g.*, *id.* at 168:2–7, 168:22–169:3, 169:21–25.)

11       **D.      The Court's Order**

12           The Court relied on Samsung's commitments.  On January 27, 2012, the Court entered the

13   following Order:

14           Apple seeks a number of categories of sales and marketing
             information, including U.S. and worldwide sales and revenues,
15           selling price per accused product, gross margin, expenses and
             operating profit, and Samsung's audited or unaudited financial
16           reports.  Apple argues that Samsung's production to date has
             provided scattered and piecemeal financial information that does
17           not offer any consistent record for Apple to draw from.  Samsung
             does not dispute that sales and profitability information is relevant
18           to Apple's damages, if any.  Samsung has agreed to supplement its
             production to date and provide responsive documents to all of the
19           categories listed by Apple.  The court finds Samsung's proposed
             production to be sufficient to meet Apple's legitimate requests for
20           this category of documents.

21   (Order at 15 (footnote omitted).)  The Order required:  "All production subject to this order must

22   be completed on a rolling basis and no later than February 3, 2012."  (*Id*. at 2.)

23       **E.      Samsung's February 3, 2012 Production**

24           Samsung's production fell far short of the Court's Order.  Although the Order required

25   Samsung to produce "responsive documents to all of the categories listed by Apple" (Order at

26   15), Samsung did not produce the documents and reports that Apple requested.  The only

27   document provided on February 3 that was at all responsive to Apple's requests quoted above is

28

one 26–page Excel spreadsheet (the "Spreadsheet").  (Roberts Decl. Ex. A.)[1]  Samsung did not produce a comprehensive set of any type of "reports" at all.

Samsung failed to produce a comprehensive set of documents responsive to many of the specific categories or subcategories of Apple's requests, including "costed bills of materials"; "reports provided to U.S. or corporate management" reflecting "Samsung's calculation of its gross margin" or "any expenses not included in costs of goods sold that Samsung incurs or allocates to U.S. smartphone or tablet products"; and "business plans prepared for the accused products or the divisions of Samsung that sell the accused products."  (Olson Decl. ¶ 20, Ex. 15; Appendix A at 9–10.)  The production does not "moot" Apple's requests and does not comply with the Court's Order.

Despite Apple's request for reports and documents provided to Samsung management in the U.S. and Korea, nothing about the Spreadsheet indicates it was made in the ordinary course of business or ever provided to U.S. or Korean management or used within Samsung.  (Roberts Decl. ¶ 7.)  To the contrary, it appears to have been created at the direction of Samsung's lawyers, who limited it solely to the information that they wished to include (and exclude).  (*Id.*)  Further, it is riddled with problems, omissions, and inconsistencies, including that "totals" are not actually the sum of the underlying numbers in the Spreadsheet, rows do not "add across," and columns do not "foot" or "add down," in violation of basic accounting rules.  (*Id.* ¶ 5.)  How it was created is entirely opaque, and the results presented call into question its reliability for any purpose.  (*Id.* ¶ 19.)

---

[1] On February 3, Samsung also produced twelve audited financial statements (four for STA and eight for SEA).  (Olson Decl. ¶ 15.)  None of those documents provides product–level data or in any way allows for apportionment to accused Samsung products versus those not at issue in this case.  (Roberts Decl. ¶¶ 22–28; *see also id.* Exs. D–F.)  Moreover, these records do not tie to the Spreadsheet.  (Roberts Decl. ¶ 29.)  On February 10, Samsung supplemented the Spreadsheet with a document in the same format as the Spreadsheet that appears to provide data on two additional products.  (*Id.* ¶ 4, *see also id.* Ex. B.)  That supplement, however, simply reclassified information previously included in the Spreadsheet, without any revisions to reported totals.  (*Id.* ¶ 4).

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

6

1    Even apart from these errors, the Spreadsheet fails to provide the information necessary

2    for Apple to complete a comprehensive damage analysis.  (Roberts Decl. ¶¶ 5–6.)  Samsung is

3    intentionally thwarting Apple's efforts to obtain relevant damages information.

4    **F.    Samsung Refuses to Provide Any Additional Information**

5    Beginning on January 27, Apple asked Samsung to produce specific categories of

6    financial documents that, as STA's controller testified at his January 24 deposition, Samsung

7    prepares and provides to management in the ordinary course of business.  (Olson Decl. ¶ 11, Exs.

8    10, 11, 13, 15–17.)  Samsung refused to produce these documents, claiming "Samsung has

9    fulfilled its obligation to produce financial documents, as required by the [Order]."  (*Id*. ¶ 23,

10   Ex. 18.)  According to Samsung, Apple cannot see relevant financial reports or materials created

11   inside Samsung because the single Spreadsheet produced on February 3 satisfies all of Samsung's

12   obligations under the Order, and Samsung has no other obligations to respond to Apple's requests

13   for production of damages information.  (*Id*.)  Samsung also ignored Apple's letters asking

14   Samsung to provide the Bates ranges of any financial documents it believed were responsive to

15   these requests.  (Olson Decl. ¶ 18, Exs. 14, 16.)

16   Samsung has not—and could not—claim that the requested reports are unavailable.  Apple

17   has located a handful of some of these specifically requested documents in Samsung's production

18   in the ITC 794 action.  (Olson Decl. ¶¶ 28–29.)  Although these files reflect only some of the

19   categories of information that Apple requested and only for certain months, they show

20   conclusively that Samsung has the kinds of reports to management that Apple seeks, that they are

21   not privileged, and that they contain the detailed information that, if produced in full, would allow

22   Apple to obtain a more complete picture of the damages that it is incurring.  (*Id*.; Roberts Decl.

23   ¶ 29.)

24   **III.    LEGAL STANDARD**

25   A court has inherent authority to sanction a party for discovery misconduct even absent a

26   prior court order.  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d. 363, 368

27   (9th Cir. 1992).   Where a party violates a discovery order, Federal Rule of Civil Procedure

28   37(b)(2) authorizes a court to impose sanctions.  "Failure to produce documents as ordered . . . is

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

7

considered sufficient prejudice" to establish sanctionable conduct.  *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004).   A court may issue "further just orders" to address a party's failure to comply with discovery orders.  Fed. R. Civ. P. 37(b)(2)(A); *see, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) (upholding dismissal of action for failure to comply with discovery order and noting alternative sanctions include warnings, counsel reprimands and suspensions, fines, imposition of costs and fees, and claim/defense preclusion).

## IV.    ARGUMENT

### A.    Samsung's Meager Production Violated the Court's Discovery Order.

#### 1.    The Order Reflects Samsung's Broad Assurances to the Court That Samsung Would Produce What Apple Requested.

Samsung opposed Apple's Motion to Compel solely on the ground that the motion was unnecessary and "moot" because Samsung promised to provide the information that Apple's motion sought.  (Dkt. No. 642 at 15.)  With full knowledge of exactly what information Apple was moving to compel—as set forth in Apple's detailed proposed order (Appendix A)—Samsung unequivocally and repeatedly represented to the Court that:

- It had "agreed to produce *all of the financial information that Apple request[ed]*."  (Dkt. No. 642 at 14 (emphasis added).)

- It had "agreed to produce nearly every category of financial documents *that Apple requested*—with a few exceptions for duplicative or non–existent information—by February 3, 2012."  (*Id.* at 4 (emphasis added)).

- "Again, Apple's motion is moot."  (*Id.* at 15.)

- It had "agreed to produce nearly every category of financial documents that Apple requested, by February 3, 2012."  (Dkt. No. 642–4 ¶ 24.)

- Its "offer [is] that for the accused defendants which would include STA which is a subsidiary of SEC, that *all those financial documents* are going to be produced and have been and we have agreed to produce them."  (Olson Decl. Ex. 8 at 168:3–7 (emphasis added).)

- "[T]here's not been a refusal on Samsung's part to produce documents relating to the financial categories involved for the three named defendants."  (*Id.* at 168:9–12.)

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

8

- Samsung would produce "information at the product level," "bills of materials," and "worldwide" sales and revenue data for the accused products. (*Id.* at 168:22–169:25.)

The Order explicitly recognized that Apple sought "a number of categories" of financial documents and pointed to Samsung's promise to produce "responsive documents to all of the categories listed by Apple." (Order at 15.) Accordingly, the Court resolved Apple's motion by ordering Samsung to produce all of the documents it had agreed to produce by February 3. (*Id.* at 2, 15.)

Despite Samsung's broad representations that it would produce the information that Apple had requested, Samsung now claims that the Order narrowly requires production only of materials specifically identified on page 14 of Samsung's Opposition Brief and its January 10 letter to Apple. (Olson Decl. ¶ 23, Ex. 18.) That interpretation flatly contradicts the Order's reference to Samsung's promise to produce "responsive documents to all of the categories listed by Apple." (Order at 15.)

Samsung's interpretation likewise contradicts its forceful assurances to the Court that it would provide documents responsive to *all the categories that Apple requested.* The Court should reject Samsung's bait–and–switch tactics. If Samsung intended to produce anything less than all that "*Apple has requested*" it should have said so, rather than make repeated promises to the Court and to Apple intended to render Apple's Motion to Compel "moot." If it intended to produce only the single Spreadsheet, it should have said so, clearly and unequivocally. It did not.

### 2. No Single Document Can Satisfy the Order.

It is simply not possible for a single spreadsheet to provide all the information that Apple sought in its Motion to Compel and that Samsung committed to produce. As the Court noted, Apple's requests included "a number of categories of sales and marketing information, including U.S. and worldwide sales and revenues, selling price per accused product, gross margin, expenses and operating profit, and Samsung's audited or unaudited financial reports." (Order at 15.) Apple's proposed order referred to "documents," "reports," "consolidated reports," "bills of materials," and "business plans." (Appendix A at 8–10.) That is the universe of documents that

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

9

1    Samsung committed to produce when it made the broad assurances discussed above and that the

2    Court ordered when requiring production of "responsive documents" that would address "all of

3    the categories listed by Apple."  (Order at 15.)

4        In light of Apple's detailed requests and Samsung's representations, no one document—

5    no matter how good or how comprehensive—could satisfy the Order.  Samsung's production

6    violates the Order on this ground alone.

7            **3.     Samsung's Production Omits Numerous Categories of Documents.**

8        Samsung withheld multiple categories of documents that were specifically identified in

9    Apple's proposed order, including:  (1) "costed bills of materials"—documents explicitly

10   discussed at the hearing and explicitly promised by Samsung (Olson Decl. Ex. 8 at 167:16–

11   169:11, 169:15–18); (2) "financial *reports provided to U.S. or corporate management*";

12   (3) reports showing "*standard costs* for the components that make up the phones and *allocations*

13   *of other expenses (such as freight, variances, and manufacturing overhead)* to calculate a

14   consolidated cost of goods sold"; (4) "*consolidated reports provided to U.S. and corporate*

15   *management* reflecting any expenses not included in costs of goods sold that Samsung incurs or

16   allocates to U.S. smartphone or tablet products"; (5) "consolidated reports on the *expense*

17   *Samsung incurred to develop any of the accused products*"; (6) "reports or financial information

18   that reflect the actual or projected *expense to design around any patent*"; and (7) the 2012

19   "*business plans* prepared for the accused products or the divisions of Samsung that sell the

20   accused products."  ((Olson Decl. ¶ 29; Appendix A at 9–10) (emphasis added).)

21       Apple's requests sought the production of materials created in the ordinary course of

22   business or given to management.  (Appendix A at 8–10; Dkt. No. 613–1 at 19–21.)[2]  In contrast,

23   the Spreadsheet is a litigation–driven document created at the direction of Samsung's lawyers.

24

25

26   [2] Apple's production provided a detailed production on financial issues, including reports provided to management in the ordinary course of business.  (Olson Decl. ¶ 30.)  As indicated by the myriad errors in Samsung's Spreadsheet, documents that are produced at the direction of lawyers and not finance professionals, accountants, or business professionals do not carry the same indicia of reliability as the financial reports to management that Apple requested.

27

28

1 (Roberts Decl. ¶ 7.)  Samsung was not entitled unilaterally to exclude the more detailed

2 documents created by Samsung's financial professionals that Apple's proposed order identified.

3      Finally, Samsung's Spreadsheet omitted any information on at least the following accused

4 products:  the Galaxy S II Skyrocket, the Galaxy S II Epic 4G, the Galaxy S II (T–Mobile

5 edition), the Galaxy S II (AT&T edition) and the Galaxy Tab 10.1 LTE.  (Roberts Decl. ¶ 5.)

6 With no data at all on sales of these products, Apple cannot calculate damages for the

7 infringement they represent.  (Olson Decl. ¶ 26.)  Samsung's production for this reason alone

8 cannot be complete.

9           **4.**     **Samsung's Production Fails to Provide a Complete Set of Critically**

10                 **Important Internal Accounting and Financial Information.**

11      Even the information that Samsung purports to include in the Spreadsheet is incomplete.

12 For example, Apple had requested detailed information on expenses, including "costed bills of

13 material" and reports showing "standard costs for the components that make up the phones,"

14 "allocations of other expenses (such as freight, variances, and manufacturing overhead) to

15 calculate a consolidated cost of goods sold," and "expenses not included in the costs of goods

16 sold . . . including any research and development expenses, sales and marketing expenses, and

17 general and administrative expenses."   (*See* Appendix A at 8–10; *see also id.*, Ex. 8 at 168:22–

18 169:3.)  Yet Samsung's Spreadsheet includes single lines for all "expenses" purportedly

19 associated with the sale of the accused phones and tablets at STA and SEA.  (Roberts Decl. ¶ 5,

20 Ex. A.)  Where Apple requested detailed information on cost of goods sold, such as information

21 on standard costs, freight, variances, and other items, the Spreadsheet includes minimal,

22 summarized information.  (*Id.* ¶ 6.)  Samsung omits even more information when it presents its

23 alleged operating expenses.  (*Id.* ¶ 15, Ex. A.)  While Samsung tracks expenses pursuant to a

24 detailed set of line items that are included in its Business Plans (*see* Olson Decl. Ex. 9 at 54:23–

25 59:4), its production concealed everything beyond a few high–level line items.  (*See* Roberts

26 Decl. ¶ 15.)

27

28

Apple's Rule 37(b)(2) Motion re Samsung's Violation of Jan. 27, 2012 Damages Discovery Order
Case No. 11-cv-01846-LHK (PSG)
pa-1514071

11

1    Apple also asked for revenue and other sales information by carrier.  (Olson Decl. Ex. 3.)

2    Samsung promised it, but Samsung's single document does not provide any indication as to

3    which carriers' phones were sold, and its prior productions were so scattershot that Apple cannot

4    create meaningful data from them.  (Olson Decl. Ex. 15.)  Apple is entitled to know which phones

5    Samsung sold to major carriers, which phones were sold to regional or local carriers, and which

6    phones were sold apart from any carrier relationship.  These divisions may affect the opinion of

7    Apple's expert, are likely to affect the opinion of Samsung's expert, and may affect the manner in

8    which the jury evaluates the marketplace and the scope of the harm that Samsung's infringement

9    imposed on Apple.

10                **5.       The Spreadsheet Is Inconsistent with the Testimony of STA's**
                  **Controller.**

11

12    STA's financial controller, Tim Sheppard, confirmed STA does not directly relate or

13    allocate its operating expenses to any accused products.  (Olson Decl. ¶ 10, Ex. 9 at 65:18–67:5;

14    73:13–74:18).)  Despite this, the Spreadsheet individually allocates STA expenses in a single line

15    item without any explanation how such items were derived or allocated.  (Roberts Decl. ¶ 17.)

16    Because STA does not track this information by product, it is impossible to give any credit to the

17    "expense" or "operating profit" lines that Samsung has included in the document.  (*Id.* ¶ 18.)

18                **6.       The Spreadsheet Is Riddled with Errors.**

19    The Spreadsheet suffers from an exceptional number of errors and inconsistencies that

20    makes it both incomplete and inadequate as a reliable record of Samsung's financial performance.

21    (*See, e.g.*, Roberts Decl. ¶ 19.)  For example, the quantity and sales amounts in the Manufacturing

22    section do not agree with the totals in the Consolidate section (the sections do not "add down").

23    (*Id.* ¶¶ 5, 11.)  As a result, a reader cannot place any confidence in the total sales or other amounts

24    in the Spreadsheet.  (*Id.*)  Similarly, the sum of 25 separate tabulations regarding individual

25    products does not equal the amounts shown on the "Total" tab for virtually every line item.  (*Id.*

26    ¶¶ 5, 13.)  Furthermore, product sales figures in many cases are obviously missing or, where

27    stated, clearly illogical.  (*Id.* ¶ 5.)  The declaration of Eric Roberts provides a more detailed

28    description of these issues, which are too numerous to describe in full here.

## B.  Samsung Intentionally Withheld Specific Documents Created in the Ordinary Course That Apple Requested and That Are Subject to the Court's Order.

Samsung's conduct cannot be explained by a lack of responsive documents.  The deposition of Tim Sheppard identified documents that Samsung routinely maintains, that are relevant to Samsung's sales of and profits from sales of accused products, that are responsive to Apple's requests, and that therefore should have been produced.  (Olson Decl. ¶ 10, Ex. 9.)

For example, Mr. Sheppard testified that STA generates profit-and-loss statements monthly, and each month creates "flux analysis reports" analyzing variations in revenues or costs (*id.* Ex. 9 at 28:11–31:12); SEC generates reports—deemed "pumi reports"—of "profitability at a handset level" (*id.* at 74:6–79:13); and Samsung tracks its expenses and reports them monthly to management using a detailed breakdown of expense categories (*id.* at 65:18–67:5; 73:13–74:18).  These are documents that Samsung maintains in the ordinary course of business.  (*See id.* at 28:15–29:2, 30:7–10, 31:25–32:3, 74:21–79:13.)  They evidence sales, revenues, expenses, and profits for the accused products, and fall squarely within the categories of documents Apple requested in its Motion to Compel.  (*See* Appendix A at 8–10.)  Moreover, Mr. Sheppard testified that the "pumi reports" are prepared based on consolidated information at the parent company and thus reflect a much closer association to the calculation that is ultimately required for a damages presentation to the jury than other records that divide Samsung's profits and expenses among its parent and three subsidiaries as the Spreadsheet does.  (*Id.* Ex. 9 at 74:6–79:13.)

Yet Samsung has refused to produce any of these documents.  (*Id.* Ex. 18.)  According to Samsung, the Court's Order is so narrow, and the Spreadsheet is so comprehensive, that they in combination preclude Apple from requesting additional relevant financial documents.  This position turns the meaning of the Order on its head, converting an order to produce everything responsive to Apple's request into a means to prevent Apple from obtaining the documents it needs to prepare its damages case.

Apart from the deficient Spreadsheet that Samsung contends fulfills its obligations under the Order, Apple has located sporadic, haphazard productions of a handful of documents in some of the categories specifically identified by Apple based on Mr. Sheppard's deposition.  (Olson

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

13

Decl. ¶ 28.)  Apple located *in Samsung's ITC productions* a handful of closing reports, an old chart of accounts, and certain global financial reporting documents, which reflect the level of detail with which Samsung reports on its revenues, costs, and expenses for its executives. (*Id*. ¶ 29.)  The reports provide detail regarding the types of expenses tracked by Samsung, which would permit an evaluation of whether the expenses are properly attributable to the accused products and whether they are fixed or variable.  (Roberts Decl. ¶ 26.)  The complete production of these types of reports is precisely what Apple was looking for and will provide an appropriate foundation on which to evaluate the damage caused by Samsung's infringing conduct and to test the summarized information in the single Spreadsheet.

Samsung's sporadic production (predominantly in a different action) demonstrates that Samsung has the documents that Apple seeks but made a deliberate decision to withhold them, notwithstanding the Court's Order.

### C.        Samsung's Violation Has Prejudiced and Will Continue to Prejudice Apple.

By limiting its production to the single Spreadsheet, Samsung has substantially prejudiced Apple's ability to prepare its damages case.  Samsung's sales of the accused products are the infringing act.  Information on Samsung's sales, gross margin, various expenses, and operating profit form the basis for any available remedy and are key to establishing Apple's damages.  *See* 35 U.S.C. §§ 284, 289; 15 U.S.C. § 1117; *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) (rejecting defendant's method of "apply[ing] the percentage of profit on all of its merchandising operations to the figure which represents the total sales of the [infringing product] in order to determine the net profit for [the] particular [infringing] product" to establish damages from design patent infringement).  Samsung does not contend otherwise.  (*See* Order at 15.)

Allowing Samsung to produce only a Spreadsheet that reports "expenses," but gives Apple no way to tell what those expenses are, substantially prejudices Apple's preparation of its damages case.  A determination of accounting and profits is not a matter of just putting highly-summarized numbers on a page.  (Roberts Decl. ¶ 15.)  It involves an evaluation of what expenses make up that calculation, why they were (or were not) associated with an accused product, and

14

1    whether or not they vary with the number of units sold.  (*Id*. ¶ 12.)  Contrary to the Order,

2    Samsung offers the most summarized financial information possible on a "trust us" basis, while

3    refusing Apple's requests that it produce the corresponding reports provided to management by

4    which they could be verified.  This turns discovery on its head.  *See Lundy Enters., LLC. v.*

5    *Wausau Underwriters Ins. Co.*, No. 06–3509–MVL–SS, 2010 WL 323571, at *3 (E.D. La. Jan.

6    21, 2010) (awarding evidentiary sanctions against party that produced Excel spreadsheet related

7    to damages but "did not provide any foundational documents for it").

8        Further, STA controller Sheppard's testimony makes clear that the only way to evaluate

9    Samsung's profits with respect to these products is to combine data from STA, SEA and SEC.

10   (*See* Olson Decl. Ex. 9 at 51:11–52:18, 74:6–75:6.)  STA's "profits" are based entirely on an

11   artificial "transfer pricing" regime dictated not by any actual costs incurred but by an agreement

12   with the Internal Revenue Service. (*Id*. at 21:14–22:1, 115:11–116:5.) The single Spreadsheet

13   purports to offer information from all three entities without any indication how they have been

14   mixed.  (Roberts Decl. Ex. A.) This is exactly what Apple intended to overcome when it asked for

15   the documents provided to *Samsung's management, including its management in Korea*.  The

16   single Spreadsheet does not permit Apple to determine how U.S. or worldwide expenses have

17   been allocated to the accused products, how those costs and expenses compare to Samsung's

18   overall amounts, or what profits are legitimately associated with the accused products (as

19   compared to a fiction created by Samsung's attorneys in a document made solely for purposes of

20   this litigation).  (Roberts Decl. ¶ 7.)[3]

21       Moreover, even if Samsung is now ordered (again) to produce the information that Apple

22   needs for its damages analysis, Apple will continue to be prejudiced by Samsung's failure to have

23   provided the information earlier.  (*See* Olson Decl. ¶¶ 25, 26.)  Samsung's failure to provide

24   meaningful damages discovery forced Apple to file its Motion to Compel.  (*Id*. ¶ 5).  Apple's

25       [3] Apple is also prejudiced in its defense of Samsung's counterclaims.  Apple served its
26   ninth set of interrogatories requesting Samsung to provide specificity concerning its claims for
     patent damages, but in its responses dated February 17, 2012, Samsung refused to provide any
27   substantive answers.  Whether Samsung's damages theory on its counterclaims is reasonable
     royalty or lost profits, the financial information discovery that it has failed to produce is highly
28   relevant to Apple's defense.

1    motion sought production of documents by January 23, which would have allowed Apple to use

2    the documents in the January 24, 2012 deposition of STA controller Tim Sheppard.  (Appendix A

3    at 8–10.)  But Apple did not have the requested information for that deposition; instead, Apple

4    was forced to use limited deposition time to identify the categories of relevant financial and sales

5    data that Samsung keeps but has refused to produce.  (Olson Decl. ¶ 9.)  Now, because Samsung

6    failed to comply with the Order's February 3 deadline, any additional Court–ordered production

7    will take place *after* Apple has deposed Samsung's 30(b)(6) witness (which is scheduled to occur

8    before March 8, 2012) and *after* Apple's damages experts will have prepared their reports (which

9    are due on March 22, 2012).  (Olson Decl. ¶ 25.)  Thus, Apple will suffer additional prejudice

10   because its damages analysis will not have the benefit of basic, reliable information in the areas

11   required by the Court's Order.

12        Apple will be further prejudiced if Samsung produces new, corrected, or additional

13   information at some future point.  (*Id.* ¶ 26.)  Samsung has repeatedly claimed to have complied

14   with a Court–ordered deadline to produce documents, only to produce such documents after that

15   deadline passed.  (*See*, *e.g.*, Dkt. No. 537 at 3 (setting new deadline for Samsung to produce

16   documents subject to Sept. 28, 2011 order); Dkt. No. 715-1.)  Apple will have to address a

17   constantly moving target if Samsung again doles out only the information that it wants to give, on

18   a schedule of its own choosing.

19        **D.    The Court Should Impose Sanctions for Samsung's Violation.**

20        There is no ready cure for the prejudice to Apple discussed above.  The Court set an

21   expedited trial date at Apple's request and over Samsung's objections.  Apple is the only party

22   invested in keeping the expedited trial date set by the Court.  Thus, when Samsung drags its feet

23   in meeting its discovery obligations and complying with the Court's orders, Samsung knows

24   Apple will not ask to move case deadlines, and therefore will be hamstrung by getting

25   information long after it was needed.

26

27

28

APPLE'S RULE 37(b)(2) MOTION RE SAMSUNG'S VIOLATION OF JAN. 27, 2012 DAMAGES DISCOVERY ORDER
CASE NO. 11-cv-01846-LHK (PSG)
pa-1514071

16

1    Although the prejudice to Apple cannot be eradicated, it could be mitigated.  Accordingly,

2    as "further just orders" pursuant to Rule 37(b)(2)(A) and the Court's inherent authority, Apple

3    seeks the following orders.[4]

4    **1.      An order requiring that, within one week after the order is entered, Samsung**

5    **produce all the documents identified in Section V of Apple's proposed order submitted with**

6    **its Motion to Compel.**  There is no more time for the parties to negotiate what documents

7    Samsung should be required to produce or for Samsung to make more promises about what it will

8    produce.  Samsung had its chance to make the robust production that it promised when it asserted

9    that Apple's Motion to Compel was moot.  We now know the motion was not moot.  Samsung

10   should now be required to give Apple all the relief that it had sought in that motion.  (*See*

11   Appendix A at 8–10.)

12   **2.      An order permitting Apple's damages experts to base their opinions to be**

13   **offered at trial on the documents sought by this Motion without providing a new expert**

14   **report and without being deposed after production of those documents, and precluding**

15   **Samsung from cross-examining Apple's damages experts based on their expert reports.**

16   Had Samsung complied with the Order, Apple and its experts would have had information to

17   allow preparation of complete and timely reports.  Instead, they will have to base the reports on

18   Samsung's deficient Spreadsheet.  Apple's experts should be permitted to testify at trial based on

19   the opinions they reach on the basis of the documents that they should have had before preparing

20   their reports.  Samsung should be precluded from deposing the experts after the documents are

21   produced and from crossing Apple's experts about their original reports that were prepared based

22   on Samsung's deficient production.

---

23   [4] In a related suit pending before the International Trade Commission, the ITC
     Administrative Law Judge has twice ordered Samsung to comply with Apple's discovery
24   requests. (Olson Decl. ¶ 27.)  In its most recent order, the ITC ALJ found that there, like here,
     Samsung had attempted to improperly and "unilaterally limit discovery."  (Olson Decl. ¶ 27,
25   Ex. 19 at 6.)  The ALJ stated that Samsung "attempts to turn discovery on its head" and noted that
     Samsung "has a duty to ensure that Samsung's discovery responses are accurate."  (*Id.*)  *See also,*
26   *Tacori Enters. v. Beverly Jewellery Co.*, 253 F.R.D. 577, 582 (C.D. Cal. 2008) ("The Court may,
     in deciding whether to grant a motion for sanctions, 'properly consider all of a party's discovery
27   misconduct . . . , including conduct which has been the subject of earlier sanctions.'") (quoting
     *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997)).

28

1          **3.       An order permitting Apple to depose a Rule 30(b)(6) witness on the newly**

2  **produced documents set forth in Paragraph 1 above for a total of no more than ten hours**

3  **(not to count against Apple's allotted deposition time).**  Apple should have the opportunity to

4  depose one witness authorized to speak on Samsung's behalf with respect to the new financial

5  documents it produces.  This is particularly important because Apple will need a person who can

6  speak on behalf of all three Samsung entities whose financial results are at issue:  STA, SEA, and

7  SEC.

8          **4.       An order precluding Samsung's expert and any Samsung witnesses from**

9  **testifying regarding Samsung's sales or profitability based on any document other than the**

10  **Spreadsheet.**  Samsung insisted that the Spreadsheet fully complied with the Court's Order and

11  gave Apple all the information it had requested.  (Olson Decl. Ex. 18.)  Samsung should be held

12  to its word and should defend Apple's damages case based on that document alone.

13          **5.       An order precluding Samsung from seeking to extend or delay case deadlines**

14  **or obligations based on orders issued in connection with this Motion.**  Samsung should not be

15  rewarded for its violations of the Court's Order by claiming that any further orders from the Court

16  to remedy the violation are a basis to delay the trial or any other deadlines.

17          **6.       An order finding that Samsung materially violated the Court's January 27,**

18  **2012, Order.**  A finding that Samsung materially violated the January 27, 2012, Order may be

19  important at the end of the case if Apple seeks to prove that Samsung's litigation conduct

20  amounts to willful misconduct or special circumstances.

21  **V.       CONCLUSION**

22          For the foregoing reasons, Apple requests that the Court grant Apple's Motion and issue

23  the orders identified in Paragraphs 1–6 above.

24  Dated:  February 28, 2012                    MORRISON & FOERSTER LLP

25
                                              By:    */s/ Michael A. Jacobs*
26                                                   Michael A. Jacobs

27                                                   Attorneys for Plaintiff
                                                   APPLE INC.
28

# APPENDIX A

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK |
| Plaintiff, | **[PROPOSED] ORDER GRANTING APPLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

1    Plaintiff Apple Inc. ("Apple") has moved pursuant to Federal Rule of Civil Procedure 37

2  and Patent Local Rule 3-4(a) for an order compelling Defendants Samsung Electronics Co., Ltd,

3  Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC

4  (collectively, "Samsung") to complete, by the dates specified below, its production of certain

5  identified documents and things.  Having considered the arguments of the parties and the papers

6  submitted, and GOOD CAUSE HAVING BEEN SHOWN, the Court hereby GRANTS Apple's

7  Motion to Compel Production of Documents and Things as follows:

8  **I. Technical Documents Relevant to Utility Patent Infringement.**

9    IT IS ORDERED that **by no later than January 23, 2012**, Samsung shall complete its

10  production of the <u>technical documents</u> identified in subsections A through R below.

11    A.  Documents sufficient to show, for each Product at Issue, which versions of the

12  operating system (including but not limited to the Android operating system or TouchWiz

13  overlay) included the accused functionality, and the dates during which each version of the

14  operating system was used.[1]

15    B.  Documents sufficient to show, for each Product at Issue, which updates to the

16  operating system (including but not limited to the Android operating system or TouchWiz

17  overlay) included the accused functionality, and the dates when such updates were made

18  available.

19    C.  Documents sufficient to show, for each Product at Issue, which features, operations,

20  characteristics of, or changes made to each version of the operating system (including, but not

21  limited to, the Android operating system or TouchWiz overlay) included the accused

22  functionality, including technical specifications as well as instructions relating to deployment,

23  installation, maintenance, and upgrade procedures.

24    D.  Documents sufficient to show, for each Product at Issue, which versions of any

25  software, firmware, program(s) library(ies) or other system used to control the touchscreens

---

26    [1]  For purposes of this Order, Samsung "Products at Issue" includes all Galaxy phone and
tablet products and all products identified in Apple's Amended Complaint.  Apple "Products at
27  Issue" includes all iPhone, iPod Touch, and iPad products.

28

(including at least the touch sensor panels) included the accused functionality, and the dates during which each such version was in use.

E.  Documents sufficient to show, for each Product at Issue, which updates to any software, firmware, program(s), library(ies) or other system used to control the touch screens (including at least the touch sensor panels) included the accused functionality, and the dates when such updates were made available.

F.  Documents sufficient to show, for each Product at Issue, which features, operations, characteristics of, or changes made to each version of the any software, firmware, program(s), library(ies) or other system used to control the touch screens (including the display and touch sensor panels) included the accused functionality, including technical specifications as well as instructions relating to deployment, installation, maintenance, and upgrade procedures.

G.  Documents sufficient to show, for each Product at Issue, which versions of each Samsung application installed in the Products at Issue included the accused functionality, and the dates during which each such version was in use.

H.  Documents sufficient to show, for each Product at Issue, which updates to each Samsung application included the accused functionality, and the dates when such updates were made available.

I.  Documents sufficient to show, for each Product at Issue, which features, operations, characteristics of, or changes made to each version of any Samsung application of the Products at Issue included the accused functionality, including, but not limited to, those relating to deployment, installation, maintenance, and upgrade procedures.

J.  Documents sufficient to show arrangement and specification of traces, conductive lines, conductive layers, glass, dielectrics, substrates, adhesives, and other elements used to construct the touch screens (including the display and touch sensor panels) of the Products at Issue.

K.  Documents sufficient to show the design, manufacture, specification and operation of any monitoring circuitry, integrated circuit, chip, controller or module used to operate the touch screens (including the display and touch sensor panels) of the Products at Issue.

PROPOSED ORDER ON APPLE'S MOTION TO COMPEL
CASE NO. 11-cv-01846-LHK
sf-3089365

2

L.  All data sheets concerning the touch screens (including the display and touch sensor panels) on the Products at Issue or any monitoring circuitry, integrated circuit, chip, controller or module used to operate said touch screens.

M.  Documents sufficient to show and to understand design, specifications, and manufacturing tolerances for the touch screens, touch sensor controllers, and touch screen components in the Samsung Products at Issue, including but not limited to specifications, schematics, flow charts, formulas, or other documentation showing the design and operation of the touch screens, touch sensor controllers, and touch screen components or of other accused features.

N.  All requests for quotations relating to the touchscreens, touchscreen controllers, and touch screen components in each Samsung Product at Issue.

O.  All qualification documentation for the touchscreens, touchscreen controllers, and touch screen components in each Samsung Product at Issue, including internal qualification documentation and vendor qualification documentation, specifications used to qualify both first- and third-party supplied parts and components, and quality control criteria used for manufacturing.

P.  All Bills of Materials and design drawings relating to the Samsung Products at Issue provided to or received from vendors or suppliers.

Q.  All functional testing results and testing criteria relating to the touch screens, touch sensor controllers, and touch screen components in the Samsung Products at Issue, including documents pertaining to prototypes and pre-production touch screens, touch sensor controllers, and touch screen components.

R.  All testing data related to the shielding of traces of conductive material in the Samsung Products at Issue.

*** *** ***

## II.  Documents Related to Design-Around Efforts

IT IS FURTHER ORDERED that **by no later than January 23, 2012**, Samsung shall complete its production to Apple of the <u>documents relating to design-around efforts</u> identified in subsections A through E below.

A.  Documents sufficient to identify and show in detail each design around, allegedly non-infringing alternative manufacturing process, and/or alternative technology or method that can be used as an alternative to the patented technology of each of the Utility Patents at Issue.

B.  All Documents concerning each design around, and/or allegedly non-infringing alternative design that can be used as an alternative to the Design Patents at Issue.

C.  All Documents relating to each change Samsung made, is now making, or will make to the Products at Issue in response to Apple's allegations in this lawsuit.

D.  All Documents relating to Samsung's analyses, actions, plans or attempts to exercise due care to avoid infringing the Patents at Issue.

E.  All Communications with Google or any other third party regarding design arounds for the Patents at Issue.

*** *** ***

## III.  Documents Relevant to Design Patent, Trademark, and Trade Dress Infringement.

IT IS FURTHER ORDERED that **by no later than January 23, 2012**, Samsung shall complete its production to Apple of the <u>documents relating to infringement of Apple's design patents, trademark, and trade dress</u> identified in subsections A through O below.

A.  E-mails and documents from designers, developers, or anyone else responsible for or involved in the design, development or marketing of Samsung's Products at Issue (including but not limited to individuals responsible for or involved in consumer surveys, R&D, management, and product planning), and counsel (if not privileged) discussing actual consumer confusion or the possibility of consumer confusion between the parties' Products at Issue or the source, sponsorship, or affiliation of the parties' Products at Issue.

B.  Trademark, trade dress, and design patent search reports relating to any element of Apple's asserted trade dress or asserted trademarks, including prior art searches.

C.  Documents discussing or assessing the design of Apple's Products at Issue, including the distinctiveness or lack of distinctiveness thereof or the similarity of design between any of the parties' products, from the files of designers, developers, anyone else responsible for or involved in the design, development or marketing of Samsung's Products at Issue (including but not limited individuals responsible for or involved in consumer surveys, R&D, management, and product planning), and counsel (if not privileged).

D.  For inspection, all physical samples of Apple's Products at Issue in Samsung's possession (excluding products purchased for litigation or products personally owned by its employees).

E.  Documents sufficient to show the identity and title of individuals who developed the external hardware design and the GUI design for each of Samsung's Products at Issue (including the design of the icons used in the GUI).

F.  E-mails and documents from designers, developers, engineers, and others (including but not limited to CAD drawings, sketchbooks/notebooks, models/mockups, and Adobe Illustrator or other computer files) relating to the design and development of all GUI designs for each of Samsung's Products at Issue, including but not limited to the design and development of TouchWiz, the icons and icon arrangement(s) used in each Samsung Product at Issue, and all alternative GUI designs considered or used by Samsung.

G.  E-mails and documents from designers, developers, engineers, and others relating to the feasibility of all GUI designs considered (including ease of manufacturing, cost savings, enhanced usability and technological challenges).

H.  E-mails and documents from designers, developers, engineers and others relating to the design and development of all external hardware designs—including design alternatives and redesigns and the feasibility (including ease of manufacturing, cost savings, enhanced usability and technological challenges) of the designs considered—for all smartphone and tablet computer products offered for sale by Samsung.

I.  E-mails and documents from designers, developers, engineers and others relating to the design and development of the earphone or speaker slot design for all mobile phone products

offered for sale by Samsung—including design alternatives and redesigns and the feasibility (including ease of manufacturing, cost savings, enhanced usability and technological challenges) of the designs considered.

J.  Designer meeting minutes, notes of design meetings, specifications or requirements communicated to the designers, project management reports, and reports to executives relating to the external hardware design or the GUI for all smartphones or tablet computers offered for sale by Samsung.

K.  Three samples of each Samsung Product at Issue, including user and service manuals and all other end user documentation relating to the intended use or operation of the products at issue.

L.  Documents sufficient to show all model numbers, code names, or other internal designations used to refer to each of Samsung's Products at Issue.

M.  To the extent not already produced under the Court's December 22, 2011, Order (Dkt. 537), all Samsung sketchbooks (or similar hand drawings, however created, stored, or archived) created on or after January 1, 2000, that depict designs for any Samsung mobile phone product, tablet product, or touchscreen digital media player, regardless of where sold, whether for a final design or an alternative design that was not commercially released.

N.  To the extent not already produced under the Court's December 22, 2011, Order, all CAD drawings (or other schematics that Samsung uses to design its products) created on or after January 1, 2000, that depict designs for any Samsung mobile phone product, tablet product, or touchscreen digital media player, regardless of where sold, whether for a final design or an alternative design that was not commercially released.

O.  To the extent not already produced under the Court's December 22, 2011, Order, All physical models created on or after January 1, 2000, that depict designs for any Samsung mobile phone product, tablet product, or touchscreen digital media player, regardless of where sold, whether for a final design or an alternative design that was not commercially released.

*** *** ***

**IV.  Marketing, Market Research, and Advertising Documents.**

IT IS FURTHER ORDERED that **by no later than January 23, 2012**, Samsung shall complete its production to Apple of the <u>marketing, market research, and advertising</u> documents identified in subsections A through K below.

A.  All U.S. and global marketing and advertising strategy documents, marketing requirements documents, market analyses (including actual or projected market demand), market share analyses, competitor analyses, consumer surveys, and focus group studies relating to the Apple or Samsung Products at Issue, including but not limited to those that mention Apple, iPod, iPhone, iPad or any other nicknames or designations used by Samsung to indicate Apple or any of its products.

B.  Documents evidencing or referencing U.S. or global media plans for any of Samsung's Products at Issue.

C.  A copy of each U.S. advertisement and any drafts of each U.S. advertisement for any of Samsung's Products at Issue, including but not limited to print, television, billboard, radio, on-line, and airline advertisements, and documents sufficient to determine where and when each such advertisement appeared.

D.  Copies of any advertisements, wherever run, that mention or target Apple or any of its products, including but not limited to advertisements that are meant to evoke Apple or any of its products and/or to compete with Apple or any of its products.

E.  Documents referencing or relating to the number of times an online advertisement for any of Samsung's Products at Issue has been "clicked on" by a user.

F.  Documents sufficient to identify all markets and retail outlets where Samsung's Products at Issue are or will be sold.

G.  Documents describing how Samsung's Products at Issue are to be marketed or presented in retail outlets or by carriers, including but not limited to scripts or sales points to be used by salespeople.

H.  Documents referencing or relating to any incentives that Samsung offers to any retail outlet or carrier in connection with the sale of any of Samsung's Products at Issue.

I.  Documents sufficient to identify all markets and media outlets where Samsung's Products at Issue are or will be advertised.

J.  Documents sufficient to show per-month advertising and marketing spending in the U.S. regarding the Products at Issue.

K.  Documents sufficient to identify the demographics of likely or targeted customers for each of Samsung's Products at Issue.

**V. Financial Information Relevant to Damages.**

IT IS FURTHER ORDERED that **by no later than January 23, 2012**, Samsung shall complete its production to Apple of the sales and other financial documents identified in subsections A through H below.  All figures provided should tie to Samsung's general ledger, should include any carrier subsidies, rebates or payments, and should be provided in U.S. dollars (including any currency conversions used).  To the extent that Samsung contends that any form of damages will include less than a full quarter for any product, Samsung must provide these figures on a monthly basis for that product and the specific quarter (or monthly for all products and periods).  All figures should be provided from the date the product was first available in the U.S. or worldwide.

A.  Documents evidencing Samsung's U.S. and worldwide revenue, unit sales and selling price for the accused products (smartphones and tablets), including:

1.  Samsung's U.S. and worldwide revenues for the accused products (1) per smartphone or tablet (2) per carrier (3) per quarter.

2.  Samsung's U.S. and worldwide unit sales for the accused products (1) per smartphone or tablet (2) per carrier (3) per quarter.

3.  Samsung's U.S. and worldwide average selling price for the accused products (1) per smartphone or tablet (2) per carrier (3) per quarter.

B.  Documents sufficient to show the date when each accused product was introduced into the U.S. market.

C.  Reports showing gross profit and Samsung's cost of goods sold:

1.  For each accused product, costed bills of materials and financial reports provided to U.S. or corporate management reflecting Samsung's calculation of its gross margin for the accused products from June 2009 to the present.

2.  To the extent the reports are not prepared on a product-by-product basis, reports reflecting gross margins or gross profit consolidated for the accused products, for tablets and for smartphones or for Galaxy S and Galaxy SII line of phones as reflected on a quarterly or monthly basis.

3.  Based on standard accounting and financial conventions, these reports should show both standard costs for the components that make up the phones and allocations of other expenses (such as freight, variances, and manufacturing overhead) to calculate a consolidated cost of goods sold.

D.  Reports reflecting operating costs and profitability with respect to smartphones:

1.  Consolidated reports provided to U.S. and corporate management reflecting any expenses not included in costs of goods sold that Samsung incurs or allocates to U.S. smartphone or tablet products, including any research and development expenses, sales and marketing expenses, and general and administrative expenses.

2.  Consolidated reports that reflect how such expenses for the accused products compare to U.S. expenses for mobile phones more generally and/or to worldwide expenses.

3.  Consolidated reports on operating profit for any of the accused phones, for smartphones, and for mobile phones more broadly reflecting the foregoing expenses.

E.  Audited or unaudited financial reports for each entity named as a defendant in this case and for each Samsung entity that sells any of the accused products, audited (or, if audited are unavailable, unaudited) financial reports (including at a minimum an income statement, balance sheet, cash flow statement and all associated notes) for each quarter or fiscal year ending on or after March 31, 2009.

F.  Documents relating to any financial valuation of the intellectual property in suit. The foregoing should include any reports on in-process research and development calculations that

include technology related to any accused products, any valuation used for balance sheet valuations, amortization, or a write-off of intangible assets.

G. Documents sufficient to show relevant expense for research and development and to design around any patent, including:

1. Any consolidated reports on the expense Samsung incurred to develop any of the accused products.

2. Any reports or financial information that reflect the actual or projected expense to design around any patent.

H. Any quarterly, annual or multi-year business plans prepared for the accused products or the divisions of Samsung that sell the accused products.

**IT IS SO ORDERED.**

Dated:                                                    By: _____

Honorable Paul S. Grewal, U.S.M.J.