1  HAROLD J. MCELHINNY (CA SBN 66781)
   hmcelhinny@mofo.com
2  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
3  JENNIFER LEE TAYLOR (CA SBN 161368)
   jtaylor@mofo.com
4  ALISON M. TUCHER (CA SBN 171363)
   atucher@mofo.com
5  RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
6  JASON R. BARTLETT (CA SBN 214530)
   jasonbartlett@mofo.com
7  MORRISON & FOERSTER LLP
   425 Market Street
8  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
9  Facsimile:  (415) 268-7522

   WILLIAM F. LEE
   william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   60 State Street
   Boston, MA 02109
   Telephone: (617) 526-6000
   Facsimile: (617) 526-5000

   MARK D. SELWYN (SBN 244180)
   mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING
   HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, California 94304
   Telephone: (650) 858-6000
   Facsimile: (650) 858-6100

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company., <br><br> Defendants. | Case No.   11-cv-01846-LHK (PSG) <br><br> **DECLARATION OF ERIC R. ROBERTS IN SUPPORT OF MOTION TO ENFORCE JANUARY 27, 2012 ORDER AS TO FINANCIAL DOCUMENTS** <br><br> Date:    April 3, 2012 <br> Time:    10:00 a.m. <br> Place:   Courtroom 5, 4th Floor <br> Judge:   Hon. Paul S. Grewal |

**SUBMITTED UNDER SEAL**

I, Eric R. Roberts, declare as follows:

1. I am the Director of Forensic Accounting Services at Morrison & Foerster LLP, and have served in that position since 2006. For the eight years prior to that, I performed the same work and function at Morrison & Foerster but under different titles. I have over 40 years of financial and accounting experience, including 29 years at Deloitte (19 as a partner). I am a Certified Fraud Examiner and I have been certified in financial forensics by the American Institute of CPAs, as well as having been a CPA for over 40 years (currently in inactive status). I have a BS in Business Administration and an MBA from the University of California, Berkeley.

2. As a partner at Deloitte, I was responsible for financial statement audits of both large, multinational companies as well as small and startup operations. Many of these clients were in high-technology businesses. After several years as an audit partner, I transferred to the consulting practice, where I led the litigation support and bankruptcy practice in Northern California for 8 years. During that time I testified in many depositions and arbitrations and was accepted in federal and state courts both as an accounting and finance expert and as a damages expert. I also served as an arbitrator in an accounting-related case.

3. At Morrison & Foerster, much of my role is to assist attorneys by analyzing and often explaining financial statements and other financial data. I also work on cases involving financial or accounting-related matters brought by the Securities and Exchange Commission Enforcement Division.

4. I have reviewed and analyzed a document produced by Samsung to evaluate whether it provided information responsive to the Court's January 27, 2012 Order requiring the production of documents and/or internal Samsung reports relating to, among other things, U.S. and worldwide sales, unit sales, costs, selling prices, and profits by accused product by carrier by quarter. Attached hereto as Exhibit A is a true and correct copy of the Spreadsheet produced by Samsung, bearing Bates number SAMNDCA00323946. I understand that the Spreadsheet is the

ROBERTS DECLARATION ISO APPLE'S RULE 37 MOTION AS TO VIOLATION OF COURT'S JAN. 27 ORDER
11-CV-01846-LHK (PSG)
pa-1513195

1

1  primary document produced in response to the Court order that contains any information relating
2  to the above-mentioned categories specific to the accused products.[1]

3      5.    While the Spreadsheet does contain some summary information, it clearly is not
4  sufficient and does not provide the detailed data required by the Court's Order. Nor does it
5  provide the level of detail required by a comprehensive damages analysis. The major reasons
6  supporting my conclusion are summarized below.

- All accused product models are not included. For example, the Spreadsheet is missing information on at least the following accused products: the Galaxy S II Skyrocket, the Galaxy S II Epic 4G, the Galaxy S II (T-Mobile edition), the Galaxy S II (AT&T edition), and the Galaxy Tab 10.1 LTE.
- There is no information whatsoever regarding sales by carrier. While some smartphones may only be sold to specific carriers, that information cannot be verified or evaluated from the Spreadsheet.
- The Total tab shows two different totals. One total, referred to as "Consolidate," does not equal the other total, referred to as "Manufacturing." I refer to this as the problem that "the document does not add down."
- Amounts on the Total tab do not equal the sum of the 25 product tabs. I refer to this as the problem that "the document does not add across."
- There is no indication whether some or all of certain sales (HQ Direct sales) are made in or to the U.S.
- Amounts cannot be reconciled to audited financial statements or to publicly available information because no summary or other data are provided as to sales and expenses of non-accused products.

---

[1] The Spreadsheet was supplemented by SAMNDCA00325495-503, a true and correct copy of which is attached as Exhibit B, which provided data on two more accused products. However, the supplement simply reclassified information previously included in the Fascinate tab between the Fascinate, Showcase, and Mesmerize models, and did not change any combined totals. Samsung also has not provided an updated document combining the information in the Spreadsheet and supplemental document and refused to provide the new information in an Excel spreadsheet.

- No details are provided as to the detailed composition of costs that are expected and commonly provided in internal and external financial statements and reports, making verification of costs and determinations of fixed and variable amounts impossible.

- The "expenses" for each phone have plainly been allocated by human judgment on some basis; however, no basis or explanation of expense allocations, such as R&D, is provided and there is no way to determine how this compares to Samsung's normal business practice.

- Certain product tabs show negative quantities and negative sales, and in some cases, negative quantities yet positive sales. This is illogical and very difficult to account for in the manner presented in the document.

6. Before describing in more detail the deficiencies of the Spreadsheet in relation to the Court order, I provide a general overview of the document. The Spreadsheet is an Excel workbook consisting of 26 separate tabs (or pages) covering the time frame of Q2 2010 through Q4 2011, with total amounts shown for each year.[2] The first tab is called "Total" and purports to summarize the data contained on the following 25 tabs. Each of those 25 tabs contains data relating to a phone or tablet referred to as an accused product. As indicated above, a number of the accused products are not included on the Spreadsheet nor is there any information regarding carriers.

7. Based on my experience in reviewing internal and external financial statements and reports, it is apparent to me that this document was not prepared as a contemporaneous business record, but rather it appears to have been prepared specifically for this litigation at the direction of some attorney or other person associated with this litigation. Further, there is nothing about this document that indicates it was ever utilized by Samsung or provided to U.S. or Korean management.

---

[2] If the Spreadsheet were to be updated to reflect the information on SAMNDCA00325495, there would be 28 tabs consisting of a total tab and 27 products, but the total amounts of the combined product tabs would not change.

ROBERTS DECLARATION ISO APPLE'S RULE 37 MOTION AS TO VIOLATION OF COURT'S JAN. 27 ORDER
11-CV-01846-LHK (PSG)
pa-1513195

3

8. Each of the 26 tabs is divided into sections. The top section is called "Consolidate" and shows the total quantity and dollar sales as well as the ASP (average sales price) of the following five sections: "STA," "SEC," "SECA,"[3] "Others," and "Direct HQ S sales". The final section is referred to as "Manufacturing".

9. The STA SEC, SECA, and Others sections each include totals by month, quarter, and year for quantity (in units), sales, COGS (cost of goods sold), expenses, and operating profit. STA and SEA are U.S. subsidiaries of Samsung; SECA is a Canadian subsidiary and Others I understand to represent the rest of the world (excluding HQ Direct Sales). The COGS numbers in these sections appear to be based on transfer prices between Samsung in Korea and the subsidiaries and as such the gross margins (not shown but which can be calculated) and operating profits of these sections do not reflect in any way the actual profits and losses to Samsung as a whole from the sale of the products.

10. The HQ Direct Sales section contains quantity and sales information but no data on any costs. As such, there is no way to determine the profitability of these product sales, even in a summary fashion. In addition, there is no explanation of what these sales are and how they may differ from sales made by the North American subsidiaries or sales in the rest of the world (Others) or whether some or all of these sales should be included as U.S. sales.

11. The final section called "Manufacturing" contains line item information for quantity, sales, COGS, with subtotals for material cost and for manufacturing expense, GA (general and administrative expense), sales expense, R&D expense, operating profit, and operating profit percentage. It is unclear whether this section is meant to show Samsung's worldwide operations relating to the accused products or instead includes only sales made by Samsung in Korea to its foreign subsidiaries (and any direct sales from Korea to customers) and costs incurred (or allocated) in Korea. In either event, as I describe in more detail, the

---

[3] Samsung Telecommunications America, Samsung Electronics America, and Samsung Electronics Canada.

"Manufacturing" amounts are inconsistent with the total amounts of the Consolidate section of the Spreadsheet.

12. This makes obvious that one serious issue with the Spreadsheet is that it does not add down, or "foot." In other words, the quantity and the sales amounts in the Manufacturing section do not agree with the totals in the Consolidate section. For instance, Consolidate units sold in 2010 and 2011 combined total 61,290,703 while Manufacturing for that same period totals 63,890,646, a difference of over 2.5 million units. Likewise, combined Consolidate sales for 2010 and 2011 total $24,113,250,373 while Manufacturing sales for that same period total $22,583,330,974, a difference of over $1.5 billion. As a result, an outside observer cannot have any confidence in the total sales or other amounts reported by Samsung on the Spreadsheet.

13. A similar serious issue is that the sum of the 25 product tabs does not agree with the amounts shown on the Total tab for virtually every line item. Put another way, the Spreadsheet does not add across. In fact, when combining 2010 and 2011, not one line agrees to what purports to be the sum of the 25 tabs supporting the Total tab. For instance, for the two combined years, the 25 detail tabs total 60,313,183 units, and $23,777,691,298 in sales which is 977,520 fewer units and $335,289,075 lower sales than the amount shown on the Total tab. It is a fundamental principle of accounting that proper accounting documents both "add down" and "add across" when presenting financial information. This failure to add accurately seriously undermines the confidence that any outsider observer would have in the document.

14. Samsung has produced audited financial statements for STA for 2010[4] and earlier, but none for 2011. It is impossible to reconcile 2010 STA sales in total from the audited statements to the STA amounts included on the Spreadsheet. For instance, the audited statements show sales of $8.925 billion while the Total tab shows STA sales for the accused products at $2.090 billion, or 23.4% of the total. Even accounting for the 0.5% increase in gross margin of the accused products compared to other STA sales, it is unclear how the accused sales amounting

---

[4] *See, e.g.*, SAMNDCA00322209-38, a true and correct copy of which is attached hereto as Exhibit C.

ROBERTS DECLARATION ISO APPLE'S RULE 37 MOTION AS TO VIOLATION OF COURT'S JAN. 27 ORDER
11-CV-01846-LHK (PSG)
pa-1513195

5

to less than 25% of total sales could account for over 75% of STA's operating profit.[5] Likewise, there is not enough data to reconcile the audited SEA financial statements with the Spreadsheet. This leads directly into another serious issue with the Spreadsheet: the allocation of expenses.

15. How expenses are allocated to products can significantly impact their profitability. In my experience it is highly unusual for companies to directly relate general and administrative expenses and certain sales costs to specific products. It is my understanding that STA's controller has confirmed in a deposition that STA does not directly relate such expenses to any accused products. (*See* Olson Decl. Ex. 9 at 65:18-67:5; 73:13-74:18.) In some situations companies will allocate these costs on a rational and consistent basis for management review and related purposes. The Spreadsheet Samsung has provided does allocate highly summarized expenses (in the STA and SEA sections) and highly summarized G&A expense and sales expense (in the Manufacturing section) to individual products, impacting the profitability of each of the accused products. But there is no explanation of what these expenses are composed of and whether, how, and to what degree the expenses are allocated. Without detailed information supporting the types of expenses, it is impossible to give any credit to the "operating profit" numbers provided on the Spreadsheet. Furthermore, the fact that this document is prepared not for management but for litigation creates an even greater risk that the document is not an accurate picture of Samsung's financial activity.

16. In addition to failing to provide information as to the composition of expenses, G&A expense, and sales expense, the Spreadsheet fails to provide composition information for manufacturing expense. Without data as to the composition of all of these expense categories, it is virtually impossible for a damages expert to determine which costs are fixed and which are variable. In my experience, the determination of the types and amount of costs which are fixed and variable is a significant input into a damage calculation.

17. The manufacturing section also allocates over $1.4 billion of R&D expenses to individual accused products. It is impossible to tell from the Spreadsheet the reason or the basis

---

[5] Determined after eliminating research and development revenue and expense.

ROBERTS DECLARATION ISO APPLE'S RULE 37 MOTION AS TO VIOLATION OF COURT'S JAN. 27 ORDER
11-CV-01846-LHK (PSG)
pa-1513195

6

1   for this allocation.  This figure is higher than expected when viewed in light of the sales of the

2   products and in comparison to other smartphone manufacturers.  Samsung has not produced

3   anything by which to verify how this number was derived, what additions may be inappropriate,

4   or how it was allocated to specific products.

5          18.      The foregoing issues regarding the method and basis of allocation also calls into

6   question the operating profits for STA and SEA as set forth on the Spreadsheet.  Given testimony

7   that Samsung's U.S. subsidiaries carefully monitor profitability to be in conformity with transfer

8   pricing rules and agreements with the IRS, it is difficult to understand the claimed operating

9   losses on accused products in 2011 for STA (losses of over $24 million) and SEA (losses of over

10  $7 million). This suggests an effort to disproportionately allocate expenses to the accused

11  products and thereby artificially lower STA's profits on the accused products.  Absent the

12  documents supporting these allocations, there is no way for Apple or its experts to verify the

13  expenses claimed.

14         19.      In addition to the above points, there are a number of other issues calling into

15  question the veracity of the Spreadsheet.  Each of the following suggests that the document is an

16  unreliable collection of financial data from Samsung's information systems:

- The Galaxy Tab 7.0 was introduced in the fall of 2010 but no sales are shown on the Galaxy 7.0 tab until Q4 2010.
- The Acclaim tab shows negative sales in units and dollars for Q3 2011 and negative cost of sales for certain periods even though there are positive sales and cost of sales in subsequent periods.
- The Continuum tab shows sales of 62 units in December 2011 but sales of over $1.6 million with an ASP of over $27 thousand.
- The Exhibit 4G tab shows a negative gross margin for all quarters it was sold during 2011.
- The Galaxy S 4G tab shows a negative gross margin in Q4 2011 compared to a 9.11% gross margin in the preceding quarter.
- The Indulge tab shows negative unit sales of 51 units in Q2 2011 but over $3.8 million in negative sales, an ASP of over $75 thousand.

- The Intercept tab shows sales of $17 thousand and negative $1.4 million in August and September 2011 but shows no units sold.  For Q3 2011 it shows a negative ASP of $547 in spite of never showing a positive ASP over $250 in prior periods.
- The Nexus S 4G tab shows 23,020 units sold in Q3 2011 for negative sales of $5.2 million but shows over 80 thousand units sold for almost $20 million the next quarter.
- The Replenish tab shows negative units and sales for November 2011 of 20 units and negative sales of over $1.4 million resulting in a negative ASP of over $73 thousand per unit.  In December, the Spreadsheet shows 198 negative units and over $1.7 million of negative sales resulting in an ASP of negative $8,792.
- The Transform tab shows no units but negative $345 thousand in sales in Q4 2011.
- The Vibrant tab shows negative units of 118, 122, and 62 in July through September 2011 but sales in excess of $812 thousand for that quarter.

20. As a result of the foregoing, it is impossible to determine how the Spreadsheet was prepared and whether there is verifiable support for numbers included on it.  This, of course, calls into question its reliability for any purpose, including the preparation of a comprehensive damage calculation.

21. I have been informed that Apple attorneys located certain financial documents that Samsung produced in the parallel ITC action after Apple filed its motion to compel.  I conducted a review of these documents to determine if a comprehensive production of these documents would provide important information for testing the information in the Spreadsheet referred to above or for calculating an appropriate amount of damages for this case.

22. Attached hereto as Exhibit D is a true and correct copy of an STA Monthly Closing Report, prepared for or by STA financial management, bearing Bates number S-ITC-500036295.  Only a handful of these were produced.[6]  This document is an Excel workbook containing 12 tabs.  While it does not contain all of the detail Apple is requesting, the document

---

[6] For instance, Apple was able to locate in Samsung's ITC productions closing reports for only four months of 2010.

ROBERTS DECLARATION ISO APPLE'S RULE 37 MOTION AS TO VIOLATION OF COURT'S JAN. 27 ORDER  
11-CV-01846-LHK (PSG)  
pa-1513195

8

does contain additional detail that would be useful in analyzing profitability and damages for the accused products.

23. For instance, the document contains sales by STA division and for STA as a whole (QAP tab) as well as Smartphone sales (Smart Sales tab). A comprehensive production on this basis could be used to verify and test Samsung assertions regarding sales in dollars and units that are included in the single Spreadsheet referred to above.

24. The document also contains sales by phone model (Basic Model (Pkg) tab). Again, this is the type of information that could be analyzed and tested by damage experts to determine whether all accused products were accounted for as well as the relationship of accessory sales to unit sales.

25. Sales by carrier also is a tab (2011 WT sales by Carrier). Apple had specifically requested information for sales to carriers but, as discussed above, that information was excluded from the Spreadsheet.

26. Several of the tabs include expenses in far more detail than are shown on the Spreadsheet. In particular, this new document shows allocations of these expenses to the WT division (which includes phones and certain tablets – see WT PL tab). This detail provides substantially more insight into the type of expenses that Samsung is including in its analysis and the additional detail is important to a damages expert when assessing which expenses should be allocated to an accused product and which expenses reflect fixed and variable costs.

27. Another type of document produced in the ITC action contains descriptions and details STA expense general ledger accounts. Attached hereto as Exhibit E is a true and correct copy of STA's expense general ledger accounts, bearing Bates numbers S-ITC-500000702-726. While those documents show a limited number of expenses and are far from complete, they are the types of documents damages experts could use to analyze and test expenses and their allocations. Only a few of these documents were produced in the ITC action (and none in this action).

28. Finally, I have been informed that Samsung produced a limited number of GCPS (Global Consolidation Package System) documents for STA. Attached hereto as Exhibit F is a

ROBERTS DECLARATION ISO APPLE'S RULE 37 MOTION AS TO VIOLATION OF COURT'S JAN. 27 ORDER
11-CV-01846-LHK (PSG)
pa-1513195

9

true and correct copy of such a GCPS documents, bearing Bates numbers S-ITC-500021629-21678. These appear to show STA's financial statements and detailed listing of (general ledger) expense accounts. This is the type of information that can be used to test, among other things, which expenses are fixed or variable and whether they should or should not be allocated to the accused products in assessing the product's profitability. These types of documents, which are prepared on a routine basis and provided to Samsung management, also provide an important means by which to test whether the Spreadsheet is accurate or complete with respect to the revenues, costs, and expenses that have been included.

29. In order to complete a comprehensive damage analysis, Apple and its experts need a full set of the documents and equivalent reports provided to management for STA. But in addition to that, they need equivalent reports and information for SEA and for Korea (or those costs included in the "Manufacturing" section of the Spreadsheet). This is particularly true because the expenses shown in the "Manufacturing" section dwarf the expenses of STA and SEA combined. In addition, the not-yet-produced costed bills of materials, which exist at the point of manufacture, remain essential for understanding the total costs and profitability of the accused products.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of February, 2012 at San Francisco, California.

*/s/ Eric R. Roberts*
Eric R. Roberts

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Eric R. Roberts has concurred in this filing.

Dated: February 28, 2012          */s/ Michael A. Jacobs*
                                                  Michael A. Jacobs