# EXHIBIT C
# FILED UNDER SEAL

**quinn emanuel** trial lawyers | washington, dc

1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL: (202) 756-1950  FAX: (202) 756-1951

November 8, 2011

VIA ELECTRONIC MAIL

Jason Bartlett
Morrison and Foerster
425 Market Street
San Francisco, California  94105-2482

Re:    *Apple v. Samsung Elecs. Co. et al*., Case No. 11-cv-1846 LHK (N.D. Cal.)

Dear Jason:

I write to follow up on several items which we have recently discussed.

First, on our meet and confer Wednesday, Nov. 2, you indicated that Apple would be producing the source code for Mac OS 10.0, a working computer loaded with Mac OS 10.0, and the source code for SuperClock.  Please make these available no later than November 11, and let us know when we can expect them.

Second, Apple indicated on the same meet and confer that it would be producing documents previously produced in the 794 action in ND Cal by the end of last week.  This has not yet been done.  Please produce these documents by November 11.

Third, in your letter dated October 31, 2011, you indicated that Apple would be supplementing several interrogatories.  Please supplement these interrogatories no later than November 11.  In addition, please confirm that you do not intend to supplement any additional interrogatories, other than those in these supplements, at this time.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo  100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712

Fourth, on November 2, I sent an email to Ms. Mazza regarding redactions on the document with Bates numbers APLNDC-X4557.  She indicated that she was looking into this matter.  Please respond to this email by Friday, November 11.

Fifth, on November 1, Mike Zeller sent Apple a letter regarding certain issues including, among other things, sketchbooks and Brain Box documents.  Please respond to this letter no later than tomorrow and be prepared to discuss on the meet and confer Wednesday.

Please be prepared to discuss these, and all other pending Apple discovery deficiencies on the Wednesday meet and confer.


Best regards,


*/s/ Marissa R. Ducca*

Marissa R. Ducca

MRD

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
rachelkassabian@quinnemanuel.com

November 8, 2011

VIA E-MAIL

Jason R. Bartlett                        S. Calvin Walden
Morrison & Foerster                      WilmerHale
425 Market Street                        399 Park Avenue
San Francisco, CA                        New York, New York 10022

Re:     *Apple, Inc. v. Samsung Elecs. Co.*, Case No. 11-cv-1846-LHK (N.D.Cal.)

Dear Jason and Calvin:

This letter is intended to summarize the issues discussed on Wednesday, November 2, 2011, during the parties' weekly meet and confer call, and to address certain of the inaccuracies in Ms. Mazza's correspondence of November 4, 2011.

APPLE'S ISSUES

1.      **Custodial Information in the Parties' Productions**

As we made clear during the parties' call, Judge Grewal's September 28 Order ("the Order") does not require either party to identify custodians on a document-by-document basis.  Separate and apart from the Order, the parties have agreed to identify custodial information for each document produced, in all cases where the parties actually possess that information.  That information will be conveyed in the load files and/or cover emails accompanying each production.  The parties have further agreed not to leave the custodial field in a load file blank, and instead will put some information in that field, even if the custodial information for those documents is unknown such

Jason R. Bartlett
S. Calvin Walden
November 8, 2011

that the information is simply a placeholder such as "unknown" or "Wilmer Hale" or "Quinn Emanuel." Doing so will ensure that the receiving party will not mistake a blank field for a technical error. Contrary to Ms. Mazza's November 4 letter, we did not agree to exchange "source logs" as Apple defines them, nor does Judge Grewal's order require such a thing. Samsung has already provided document-by-document custodial information in load files accompanying several of its productions (including for documents collected from the custodial files of the inventors of Samsung's asserted patents). That said, it remains Apple's responsibility to determine what documents it believes are relevant for each inventor deposition.

As you know, each party has propounded an interrogatory seeking custodial information for documents produced. Samsung will timely respond to that interrogatory, and we expect Apple to do the same. Ms. Mazza's November 4 letter inappropriately demands that Samsung disclose the contents of its interrogatory response before that response is due. Samsung is under no such obligation, and indeed, we are still conferring with our client on an appropriate response. If Apple follows through with Ms. Mazza's threat to file a motion to compel this interrogatory response before it is even due, Samsung will seek all available sanctions for Apple's filing of a facially meritless motion.

**2.      Specific categories of documents and things to be produced by Samsung**

*Inventor Documents*

Please see my separate correspondence of November 4, 2011 on this issue. To date we have received no response to my letter. Please provide one immediately.

*Documents regarding compensation of inventors*

Apple requested that Samsung produce documents relating to the compensation Samsung inventors received with respect to the issuance of specific patents. However, Apple has taken the position during depositions that such information is not within the scope of permissible discovery, and has instructed its inventors not to answer questions on the specific amount or form of payment an inventor received. Further, to date Apple has not produced documents revealing this information. In light of the position Apple has taken on this issue, we presume that Apple will withdraw its demand for this information. If Apple intends to reconsider its position and provide this information for its own inventors, please advise.

*Documents relating to licensing and standards*

Apple clarified that it was seeking licenses and licensing information for the patents-in-suit. Since Samsung has similar outstanding licensing requests, the parties discussed a potential

2

Jason R. Bartlett
S. Calvin Walden
November 8, 2011

agreement that Apple and Samsung would exchange licenses that cover the patents asserted in
this matter.  With respect to the Samsung patents-in-suit that have not been declared essential to
a wireless standard at issue in this litigation, Apple represented that it would be satisfied if
Samsung only produced the license itself.  With respect to the Samsung patents that have been
declared essential to a standard at issue in this lawsuit, Apple requested that Samsung provide
both the license and all related negotiating documents.

We are conferring with our client regarding Apple's proposal and related issues, and will get
back to you shortly.

### 3.        Samsung's compliance with the September 28 order

Apple reiterated its belief that Judge Grewal's Order requires the production of *every* consumer
survey conducted in connection with *any* product ever sold by Samsung—including foreign
consumer surveys regarding products that were never sold in the United States and are not at
issue in this case—if the survey mentions the iPad or iPhone.  Samsung disagrees with Apple's o
overly broad reading of the Order, which of course is broader than what Apple even requested in
its document requests.  *See* Apple's RFPs Relating to Apple's Mot. for PI—Set Two, No. 206
(requesting "All documents relating to any customer surveys, studies, analyses or investigations
***regarding the Products at Issue***").  Nevertheless, during our call we agreed to take Apple's
request back to Samsung in hopes of resolving the issue.  We have done so, and Samsung has
agreed to consider Apple's broader request.  We will get back to you with Samsung's response
shortly.

To address Apple's inquiry regarding whose files were searched, in the spirit of transparency,
during our call we clarified many of the steps Samsung undertook to comply with Judge
Grewal's Order.  Moreover, in its October 10 Amended Identifications Samsung identified the
precise search terms used.  As can be seen from these disjunctive search terms, Samsung did not
limit its search to surveys of U.S. consumers, nor did it limit its search to documents regarding
an accused product.  To the extent that any previous meet and confer discussions or
correspondence did not make this clear, we'd like to clarify it now.

Apple also has taken issue with the fact that Samsung did not include the term "Apple" in all of
its custodial document searches.  We previously explained that the term generated too many false
hits.  Nevertheless, Samsung is generally agreeable to including the term "Apple" (perhaps with
delimiters) in its searches of its designers' custodial documents, provided that Apple re-runs
searches of its designers' documents for the term "Samsung."  Please advise whether this is
acceptable to Apple.

Jason R. Bartlett
S. Calvin Walden
November 8, 2011

Going forward, Samsung has proposed that the parties agree upon an orderly and regular process for updating their respective court-ordered identifications as additional custodians are identified or if new sets of search terms are run.  Samsung suggested that the parties provide amended disclosures on a monthly basis.  Counsel for Apple stated that they would check with their client and get back to Samsung on this issue.

<u>SAMSUNG'S ISSUES</u>

**1.      Apple's responses to Samsung's interrogatories and requests for production**

       *Code Names.* (*See* RFP No. 144)

Samsung has been forced to dedicate valuable deposition time attempting to determine the meaning of product or feature code names such as "Purple" or "Grape."  Samsung thus requested a comprehensive list of internal code names used by Apple designers or inventors to refer to various products or functionalities.  Apple agreed to provide Samsung with a list of all internal model numbers and to meet and confer on an ongoing basis regarding any code names that Samsung encounters in depositions or in its review of documents.  Samsung is considering Apple's proposal.

       *Documents Produced in the 794 Investigation*

In responding to Samsung's interrogatories and requests for production, Apple has frequently cited to documents it has produced in the ITC action.  *See, e.g.,* Apple's Objections and Responses to Samsung's Second Set of Interrogatories at No. 15.  However, no cross-use provision is currently in place.  Apple therefore offered to "cross-designate" those documents as being produced in the NDCA matter.  Until a cross-use agreement is in place, Apple should produce the documents relevant to the NDCA action with the appropriate NDCA bates numbers.  Since Samsung has been producing its documents directed to each action separately, we expect Apple to do the same.

       *Technical Documents.*  (*See, e.g.,* RFP Nos. 6-8, 16, 39, 69, 76-77)

Apple agreed to provide Samsung with technical documents sufficient to show the functionality of the accused products, a detailed accounting of Apple's manufacturers with respect to the accused products, the volume of products imported from foreign manufacturers, detailed sales information for each accused product dating back six years, and information relating to buildup materials so Samsung can understand the components in the accused products and the standard costs related to each component.  Apple represented that this production would begin in the next

Jason R. Bartlett
S. Calvin Walden
November 8, 2011

few weeks and would continue on a rolling basis.  Apple requested reciprocal information, specifically as to manufacturing costs. Samsung is considering Apple's position on these issues.

*Documents relating to trademark and trade dress* (*See, e.g.,* RFP No. 173)

In light of Apple's inconsistent responses to Samsung's RFPs, Apple clarified that it intended to produce and would not be withholding documents in response to RFPs 184 and 192.  With respect to RFP 173, however—business plans, reports, analyses, and research relating to Apple's trade dress, trademarks, or design patents—Apple stated that the request as written was overbroad, and asked for examples in order to better understand what Samsung was seeking in making the request.  Samsung stated that the request as written was fair, but for purposes of illustration and example only, identified consumer and market research, competitive analyses, and business plans that pertain to the trademark, trade dress and design patent portfolios asserted in this matter.  Samsung requested that Apple's counsel make a good faith effort to conduct exploratory interviews with Apple about the nature and volume of documents responsive to this request, then inform Samsung of what it is willing to produce.  Counsel for Apple stated that they would consult with Apple and provide an update shortly.

In response to RFP 166, which seeks documents relating to designs or products that Apple regards as confusingly similar or dilutive, Apple agreed to produce cease and desist letters and formal complaints against others.  Samsung stated that cease and desist letters are insufficient, and requested all responsive documents, including internal correspondence and reports.

**2.      Deposition Transcripts and Exhibits Thereto**  (*See* RFP No. 184).

Samsung continues to disagree with Apple's assertion that prior deposition transcripts are relevant only to the extent that they pertain to patents asserted in the current matter.  Indeed, Apple has produced some deposition transcripts that do not relate to the asserted patents.  Please see separate correspondence from Marissa Ducca, dated November 4, 2011, which details authority in support of Samsung's contentions regarding the relevance and discoverability of prior testimony.  Apple has not yet responded to this letter.  Please do so immediately.

**3.      Apple's document production relating to the '891 and '002 patents** .  *(See, e.g.,* RFP Nos. 96 and 98)

Apple agreed to produce source code for Mac OS 10 as well a computer with a copy of Mac OS 10 installed.

Jason R. Bartlett
S. Calvin Walden
November 8, 2011


**4.      Next Meet and Confer**

Both parties agreed to follow up in correspondence on discovery issues yet to be resolved in the
hopes of narrowing the issues that require discussion at next week's meeting.  By letter dated
November 4, Marissa Ducca provided Apple with a detailed list of categories of documents it
would be seeking during this Wednesday's meeting.  Since our last call, Apple has not responded
to the substance of Ms. Ducca's letter.  As Samsung has repeatedly stated on prior meet and
confer calls, Samsung urges Apple to provide its positions in writing in advance of the parties'
weekly meet and confer calls, such that our time can more productively be spent discussing and
resolving known disputes, rather than determining whether disputes exist.

Very truly yours,

/s/


Rachel Herrick Kassabian



cc:      Mia Mazza
         Wes Overson
         Samuel Maselli
         Peter Kolovos

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

Writer's Direct Contact
415.268.6024
MMazza@mofo.com

November 10, 2011

Via E-Mail (marissaducca@quinnemanuel.com)

Marissa Ducca
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139

Re:     *Apple v. Samsung*, Case No. 11-cv-1846-LHK (PSG) (N.D. Cal.)

Dear Marissa:

I write in response to November 1 and 8 letters regarding miscellaneous categories of
documents and things.

Your letters requests that Apple produce various things that Samsung contends constitute
"prior art" to Apple's asserted patents.  Apple disagrees that the requested devices and
software are prior art, and those items are not responsive to your requests as drafted.
Nevertheless, Apple will search for and produce documents and things as indicated below:

**Mac OS 10.0**

Apple will produce portions of the source code, if any, of Mac OS 10.0 that relates to the
features claimed in the '891 patent.  Apple will also provide a computer running Mac OS
10.0.  Apple cannot produce these things by Friday, however, as it will take time to identify
the relevant source code and get a computer running.

**1989 "Brain Box"**

Apple will search for documents and things relating to this 22-year-old prototype.  To the
extent that Samsung can provide any additional information about this prototype that would
assist in this search, please do so.  As the parties discussed yesterday, we understand that

**MORRISON** | **FOERSTER**

Marissa Ducca
November 10, 2011
Page Two

Samsung is only seeking information about the external appearance of the Brain Box at this time.

**"Super Clock"**

Apple will search for source code relating to the Super Clock. Apple will not be able to produce such code by Friday, however.

**"Phillips Receiver" testing reports**

Apple will conduct a supplemental search for documents relating to the "Phillips"-related material discussed during the Howarth deposition.

**Designs Based on "Sony"**

Mr. Howarth testified that Shin Nishibori created worked for a brief period on a design that expressed the Sony design language. Mr. Howarth further testified that the design was not an actual part of an iPhone project. Furthermore, Apple notes that it first made available CAD drawings relating to Mr. Nishibori's design approximately several months ago when it produced CAD data for Samsung's inspection in connection with the preliminary injunction phase of the case.

Nevertheless, Apple will search for additional documents or models, if any, relating to Mr. Nishibori's project.

**Designs Based on other Smart Phones**

Apple disputes Samsung's characterization of Apple's designs as having been based on other smart phone products, including the Treo and Razr. It is plain that Apple's asserted designs are not based on these products. In any event, Apple will produce for Samsung's inspection all physical models created as part of iPhone, iPad and iPod touch projects as well as CAD data relating to each. As the parties discussed yesterday, we understand that Samsung is not requesting information relating to unannounced products.

**Apple Cinema Display**

Samsung's new contention that the Apple's 1999 Cinema Display computer monitor is prior art to Apple's D'889 design patent is baseless. Moreover, even if the computer monitor were prior art, it is obvious that a request for "all documents related to" that monitor is overbroad and unduly burdensome given the alleged relevance of the device. As the parties discussed

sf-3069243

**MORRISON | FOERSTER**

Marissa Ducca
November 10, 2011
Page Three

yesterday, we understand that Samsung is only seeking information about the external
appearance of the display at this time.

**CAD Drawings for the Apple Model 035 Tablet Computer Mockup**

Apple has produced or will produce all CAD drawing data that it is able to locate relating to
the Q79 project.

Sincerely,

/s/ *Mia Mazza*

Mia Mazza

cc:    Samuel Maselli
       Peter J. Kolovos
       S. Calvin Walden

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

December 5, 2011

Writer's Direct Contact
415.268.6024
MMazza@mofo.com

*Via E-Mail* (rachelkassabian@quinnemanuel.com)

Rachel Herrick Kassabian
Quinn Emanuel
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065

Re:     *Apple v. Samsung*, Case No. 11-cv-1846-LHK (PSG) (N.D. Cal.)

Dear Rachel:

I write to summarize the discussion of Apple's issues in our meet-and-confer call on
Wednesday, November 30, 2011, and to address a few follow-up items arising therefrom.
Our summary of the discussions of Samsung's issues will be sent by Jason Bartlett in a
separate letter.

     1.  Schedule for Apple's motion to compel

We understand that the parties' lead trial counsel are attempting to schedule the required
meet-and-confer.  In the meantime, and as we have explained previously, Judge Grewal is
unavailable the week of December 19.  Thus, any motion to compel must be heard on or
before December 16.  Otherwise, due to Quinn Emanuel's apparent unavailability the entire
subsequent week, the motion would be delayed until next year.  Given the impending March
8 discovery cutoff, it is critical that court intervention, if necessary, take place before the
Winter holidays.

As we also emphasized during the call, there are specific categories of documents, discussed
further below, that need to be produced on an expedited basis for Apple to proceed with
litigating its case in an orderly manner.  This requires substantial completion by Samsung of
its production of at least those categories by mid-December.  **Apple intends to immediately
move to compel complete production of these categories of documents by a date certain
before the Winter holidays unless Samsung commits to that production now.**  Samsung
has not been willing to do so.

We advised you that in the event that motion practice is required, Apple would like to
propose the following shortened briefing and hearing schedule:

sf-3078893

MORRISON | FOERSTER

Rachel Herrick Kassabian
December 5, 2011
Page Two

- Motions to compel:  Thursday, December 8, 2011
- Opposition briefs:  Monday, December 12, 2011
- Reply briefs:  Wednesday, December 14, 2011
- Hearing:  Friday, December 16, 2011

2.  Protective order

The parties also discussed finalization of a proposed, stipulated protective order for purposes of this action.  Based on our discussions, we understand that Samsung will agree to the provisions negotiated by Samsung's counsel in the ITC investigations.  As you know, Apple and Samsung recently agreed to provisions regarding source code production and prosecution bar in the ITC investigations, but we continue to await Samsung's response to the proposed provision concerning cross-use of documents produced in the Northern District of California action.  (*See, e.g.*, December 1, 201 email from Maselli to Lasher et al.).  Aside from this remaining issue, we believe that all other provisions set forth in our proposed draft have been agreed to by the parties.

Please immediately advise as to whether Samsung agrees to the proposed cross-use language.  We are hopeful that the parties can finalize the proposed protective order by Wednesday, December 7.  **If we do not receive a timely reply to this issue, Apple is prepared to unilaterally file a motion for protective order in this case.**

3.  Production of documents mentioning "Apple," Apple products, or aliases

During the call, you confirmed that Samsung will search for documents that mention the term "Apple," or any Apple product at issue in this case, or any alias therefor, or any Korean equivalent thereof, as described in Wes Overson's November 15, 2011, letter.  This means, as stated in that letter, that these terms would be applied to the files of "all relevant custodians, including designers and engineers who worked on the products at issue, employees responsible for marketing those products, and employees responsible for developing the infringing features."

We specified that, per Mr. Overson's December 20 letter, "employees responsible for marketing" should at least include customer survey, R&D management, and product planning groups.  You did not disagree with that clarification.  We asked that you let us know immediately if Samsung thinks any of those groups should be excluded from Samsung's search.

As discussed during the call and in recent correspondence, Apple is reciprocating.  Apple agrees to search for "Samsung," or any Samsung product at issue in this case, or any alias therefore, with respect to documents in the files of its designers and engineers who worked

sf-3078893

# MORRISON | FOERSTER

Rachel Herrick Kassabian
December 5, 2011
Page Three

on the relevant products, employees responsible for marketing those products, and employees responsible for developing the features at issue.

The parties confirmed that in performing these searches, each party may use reasonable delimiters solely to exclude wholly irrelevant documents from their respective productions. In other words, if Samsung finds that a large number of documents hit a relevant term like "Apple" *solely* because of discussions that are wholly irrelevant to this lawsuit, Samsung may set up a secondary search term covering documents in that category and set up a rule that those documents may be excluded from the production. Note that if any document hits more than one of these relevant search terms or a particular relevant search term more than once, all instances of the search terms must be subject to one or more delimiters or the document must be produced. Any delimiters will be identified in the parties' disclosures of search terms applied to each custodian.

Samsung suggested that a document containing the statement: "I bought this new Apple product, isn't it cool?" would be irrelevant. In Apple's view, however, that is a relevant document that should be produced.

We note that in a December 4 letter, you referenced an upcoming production of these types of documents from Samsung's "central marketing files." Although Apple appreciates Samsung's commitment to produce those documents, the agreed scope of documents to be produced is much broader and also includes the files of numerous individual custodians, as outlined above. **Apple will not agree to limit the scope of Samsung's required search to "central marketing files."**

As discussed below, Apple has requested that Samsung commit to substantially completing its *entire* production of the documents discussed above by December 15, 2011, and absent such a commitment, Apple is prepared to immediately move to compel production of the documents by a date certain before the Winter holidays. This issue will therefore be placed on the agenda for the upcoming lead trial counsel meeting.

4.  Production of survey documents

During the call, you confirmed that Samsung agrees to the scope of production of survey documents described in Wes Overson's November 15, 2011, letter. As stated in that letter, Samsung agrees to produce "from any central file or from the files of any custodian with survey responsibility, anywhere in the world, all survey documents that refer to Apple's products." Within this category, no relevance cut will be made.

You asked us to confirm whether Apple views this as a reciprocal obligation. We stated that although Apple generally agrees to produce relevant survey documents, unlike Samsung, Apple is not required to do so by a court order. We understand that Samsung views this

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
December 5, 2011
Page Four

production to be broader than the scope of the Court's September 28 Order, but in any event, Samsung's production of survey documents is pursuant to a court order and therefore, should proceed immediately regardless of otherwise ongoing discussions regarding reciprocity.

We note that in a December 4 letter, you referenced an upcoming production of these documents from Samsung's "central marketing files." Again, although Apple appreciates Samsung's commitment to produce those documents, the agreed scope of documents to be produced is much broader and also includes the files of numerous individual custodians, as set forth above. **Again, Samsung's search must extend beyond central marketing files.**

As discussed below, Apple has requested that Samsung commit to substantially completing its *entire* production of survey documents by December 15, 2011, and absent such a commitment, Apple is prepared to immediately move to compel complete production of the documents by a date certain before the Winter holidays. This issue will therefore be placed on the agenda for the upcoming lead trial counsel meeting.

5. <u>Production of source code and other technical documents</u>

During the call, we pointed out that we had enumerated a number of specific categories of source code and other technical documents in a letter dated November 9 (and reiterated on November 28), and that although Samsung had stated on November 20 that it would respond, no response had been received.

You did not identify any category of source code or other technical document as being excluded from the scope of Samsung's required production, but instead asked whether Apple was going to produce the same categories of source code. We noted that the categories in the November 9 and 28 letters were specific to Samsung and its products and were therefore not directly applicable to Apple and its products, but that Apple agrees, as a general matter, to produce relevant source code and other technical documents. We further noted that although Apple has already made available substantial source code for inspection on a stand-alone computer, Samsung has never come to inspect that source code. We noted that Samsung had not produced any source code other than in connection with the inventor depositions that took place in November 2011, and those did not relate to the issues in Apple's offensive case.

As of November 30, Samsung had only identified two items of source code that it would like Apple to frontload – Mac OS 10.0 and Super Clock. As noted in our November 28 letter on this topic, Samsung requested these two items of source code as potential prior art, and thus Apple had no prior obligation to search for this source code or to produce them. Nevertheless, as we have stated repeatedly in correspondence and in meet-and-confer discussions, Apple is currently engaged in the burdensome process of locating these 10 and 20-year-old bits of code and has not objected to producing them.

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
December 5, 2011
Page Five

During Wednesday's call, you stated that Samsung would send a letter responding to our November 9 and 28 letters regarding Apple's request for source code and other technical documents from Samsung.  You sent that letter on December 2, but focused primarily on new requests for categories of source code and technical documents that *Samsung* was interested in receiving from *Apple*.  **We will respond to that letter in detail shortly, but it does not change Apple's position or need for Samsung's substantial completion of its *entire* production of source code and other technical documents by December 15.**  This issue will therefore be placed on the agenda for the upcoming lead trial counsel meeting.

      6.  <u>Substantial completion of production in certain categories by December 15</u>

The parties spent a significant portion of the November 30 meet-and-confer session discussing the timing of Samsung's production of the above three categories of documents (hereinafter referred to as "copying, survey, and technical documents").

We stated that Apple wishes Samsung to substantially complete its production of those three specific categories of documents by December 15, and that Apple intends to move to compel on this topic on December 8, absent Samsung's commitment to such substantial production. Apple will consider Samsung's production of these three categories of documents substantially complete by December 15 if Samsung has made a good-faith, expedited effort to locate and produce the documents on or before that date.  **In addition, to the extent that Samsung has been unable to make a substantially complete production of any of these three categories of documents, Samsung will on December 15 provide a written disclosure** identifying the specific steps taken to search for and produce the documents, the additional specific steps that need to be taken to complete the search for and production of documents, and an estimated, near-term date certain by when production will be substantially complete.

Apple is entitled to these copying, survey, and technical documents to litigate its offensive case, and you did not disagree with that general proposition.  You asked for an explanation of why these documents needed to be frontloaded and produced before other documents.  In response, we discussed:  (1) Samsung's long-overdue obligation to produce some of these documents as part of its Patent Local Rules production; (2) Apple's need for some of the documents for claim construction purposes; and finally, (3) Apple's need for all of these documents to prepare for upcoming depositions.

More generally, however, there is a March 8 fact discovery cutoff in this case.  It is for this reason that **Apple has noticed nine depositions that will take place in the second half of December and in early January, and it has notified Samsung that it will be noticing additional depositions to take place in January and early February.**  Apple is entitled to receive the documents it needs in connection with these depositions, and Apple is not

# MORRISON | FOERSTER

Rachel Herrick Kassabian
December 5, 2011
Page Six

required to justify its reasons for needing certain categories of documents on an expedited basis.

Although we received correspondence purporting to address this timing issue after Wednesday's meet-and-confer call, Samsung still has not made the above-described commitment to substantially complete its production of these three categories of documents by December 15:

- Melissa Chan's December 2 letter states that Samsung "hopes" to make a *limited* set of source code (*and no other technical documents*) available for inspection by December 15, "*or we will let you know if such inspections are not possible on that date.*"

**This is not a sufficiently firm commitment as to either scope or accountability.** Samsung must agree to substantial production of the *entire* scope of agreed technical documents by December 15, and it must agree to provide the above-described report on December 15 identifying the specific steps have been taken to search for and produce the documents, the additional specific steps that need to be taken to substantially complete production, and an estimated, near-term date certain by when production will be substantially complete.

- Your December 3 letter states that Samsung "will use its best efforts" to substantially complete its production of survey documents before December 15, and "*if we are unable to substantially complete production by that date, we will so advise*."

- Your December 4 letter states that Samsung "is working in good faith" to produce the agreed copying and survey documents "as expeditiously as possible," and that Samsung "is committed to using its best efforts to substantially complete" production of those documents "from Samsung's central marketing files" (*excluding, by omission, any documents from custodial files*) by December 15, "*or as soon as possible thereafter.*"

**These are not sufficiently firm commitments as to either scope or accountability.** Samsung must agree to substantial production of the entire scope of agreed copying and survey documents by December 15, and it must agree to provide the above-described report on December 15 identifying the specific steps have been taken to search for and produce the documents, the additional specific steps that need to be taken to substantially complete production, and an estimated, near-term date certain by when production will be substantially complete.

**Absent a meaningful, concrete, written commitment that will hold Samsung accountable for additional delays as described above, Apple is prepared to immediately move to compel a complete production of the entire scope of copying, survey, and**

sf-3078893

MORRISON | FOERSTER

Rachel Herrick Kassabian
December 5, 2011
Page Seven

**technical documents by a date certain before the Winter holidays.**  This issue will therefore be placed on the agenda for the upcoming lead trial counsel meeting.

      7.   Reciprocal production agreements

On Wednesday's call you acknowledged receiving Apple's charts on reciprocal discovery, labeled Exhibits A and B.  We stated that Apple had expected a response to at least the first set of proposals by this time.  You stated that Samsung did not have a response to Apple's proposals, that you were working on a redline response, and that you were unable to state when Samsung would have a response.

We asked that Samsung respond to at least our proposals contained in Exhibit A by the end of the week.  We further noted that we expected a full response on both Exhibits A and B before next week's regularly scheduled meet-and-confer.  You were unable to give us a commitment regarding when your response would be ready and stated that you would consider sending a response to Exhibit A first, if it made sense to you.  There is no longer time for this kind of noncommittal response in discovery matters.  You have now had Exhibit A for over *three weeks*.  **Please be prepared at the next meet-and-confer to discuss the categories in Exhibits A and B, and provide your redlines of these exhibits no later than the evening of December 5 so that Apple may have time to consider Samsung's proposed scope of reciprocal production in those categories.**

As we noted on the call, the parties should enter into any reciprocal agreements as soon as possible so that the agreements can serve their purpose of guiding the parties' subsequent collection and production efforts.  Neither party should be suspending *any* efforts at collection, review, or production of documents pending these negotiations.

      8.   Production of Samsung inventor documents

During the call, we noted that Apple is expecting responses to three pieces of correspondence we have sent regarding inventor document collection and production (November 17, 2011, email from M. Silhasek to R. Kassabian; November 18, 2011, letter from S. Maselli to R. Kassabian, November 29, 2011, email from C. Walden to R. Kassabian).  Although you stated that responses were being drafted, you were unable to tell us when to expect these responses.  We reiterated our concerns addressed in prior meet-and-confers, particularly our concern that Samsung has not taken proper steps to identify, collect, search, review, and produce documents from the files of its named inventors.

We stated that we would follow-up with a letter summarizing our concerns and detailing even more instances in which the inventors discussed how they searched for documents, and why those searches were inadequate.  That letter was sent to you by Sam Maselli on December 2, 2011.  Given that inventor depositions were ordered to have been completed by

MORRISON | FOERSTER

Rachel Herrick Kassabian
December 5, 2011
Page Eight

now, we are very concerned that Samsung's *initial* collection from its inventors has been so woefully deficient.  We have therefore asked for a response to Mr. Maselli's letter by December 5, and if we do not get a satisfactory answer, we will need to place this issue on the agenda for the upcoming lead trial counsel meeting.

 9.  <u>Production of documents related to standards-setting organizations</u>

During the call we noted that Apple is expecting answers to letters sent on October 13 (C. Walden to V. Maroulis), November 15 (C. Walden to M. Chan), and November 18 (S. Maselli to R. Kassabian) pertaining to Samsung's inadequate production of internal and public documents relating to Standards Setting Organizations ("SSO").  You stated that Samsung was working on responses to those letters, but were unable to give us a date for when the responses would be forthcoming.

This subject has now been discussed in meet-and-confers for at least three weeks in a row, and Samsung is still unwilling to provide *any clarity* regarding what types of SSO documents it is willing to produce, or any date by which it will commit to having a substantially complete production.  By Monday, December 5, Samsung must provide substantive responses to the October 13, November 15, and November 18 letters identified above, and further commit to providing the categories of SSO documents identified in Mr. Walden's October 13 and November 15 letters by a reasonable date certain.  If Samsung is unwilling to do so, we will need to place this issue on the agenda for the upcoming lead trial counsel meeting.

 10.  <u>Apple's Second Set of Preliminary Injunction Interrogatories, Nos. 12-14</u>

During the call we discussed Samsung's failure to supplement Apple's Preliminary Injunction Interrogatories Nos. 12–14 despite its multiple oral and written commitments that it would do so no later than November 21.

You represented on Wednesday *for the first time* that when you had stated in previous correspondence and meet-and-confer discussions that Samsung was going to supplement its responses to PI Interrogatories 10–14, it actually meant that it was only going to supplement its responses to Nos. 10 and 11.  Samsung apparently has no current plan to supplement its responses to Nos. 12 through 14.

You further represented, also for the first time, that you are unaware of Apple's basis for asserting the insufficiency of Samsung's responses to Nos. 12 through 14.  As we discussed Wednesday, Wes Overson's first letter on the subject stated that all five Interrogatory responses were equally insufficient.  He pointed to Nos. 10 and 11 as examples, but the letter identified all of them as insufficiently substantive for the same reasons.  And in Samsung's first supplementation of its responses, it supplemented its responses to all five

sf-3078893

**MORRISON** | **FOERSTER**

Rachel Herrick Kassabian
December 5, 2011
Page Nine

interrogatories, not just Nos. 10 and 11.  Apple would have provided detailed discussion of the insufficiencies of Samsung's responses had you not represented that Samsung was in the process of supplementing its responses.  This is an unacceptable course of conduct that we will address further in separate correspondence.

Sincerely,

*/s/ Mia Mazza*

Mia Mazza

cc:     Samuel Maselli
        S. Calvin Walden
        Peter Kolovos

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
rachelkassabian@quinnemanuel.com

December 3, 2011

Mia Mazza                                S. Calvin Walden
Morrison & Foerster                      WilmerHale
425 Market Street                        399 Park Ave
San Francisco, CA 94105-2482             New York, NY 10022

Re:    Apple, Inc. v. Samsung Elecs. Co., Case No. 11-CV-1846 LHK

Dear Mia and Calvin:

This letter is intended to summarize and address the issues discussed on Wednesday, November 30, 2011, during the parties' weekly meet and confer call.

SAMSUNG'S ISSUES

I.    **Deficiencies in Apple's searches and production**

    *Documents relating to Apple v. Motorola*

Samsung requested that Apple produce the Motorola documents that it had identified with ITC bates numbers on November 23, 2011 with APLNDC Bates numbers, and Apple agreed to do so by December 1.  Samsung also asked Apple whether this production addressed the improper redactions Samsung had previously identified in certain of these documents, and Apple agreed to search for unredacted versions.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo  100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000  FAX +49(0) 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow  125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667

Mia Mazza
S. Calvin Walden
December 3, 2011

*Date restrictions*

Samsung again asked Apple to explain why it applied the lower date cutoff of June 2003 to design inventors, and Apple again refused to articulate a reason for choosing this date. Rather, Apple pointed to its response to Samsung's Interrogatory No. 1, which states, with regard to the D'889 patent, that "the asserted claim . . . were [sic] conceived . . . and reduced to practice *no later than September 3, 2003*." (emphasis added). This is a non-response. Samsung is interested in the *earliest* date of conception. Apple agreed to investigate the conception date of the D'889 design, and to inform Samsung of the date it discovers before running any further searches.

With regard to upper date cutoffs, Samsung has not changed its position that the proper cutoff is the date of patent issuance. Apple agreed to re-run its searches of all utility patent inventors using the issuance date as the appropriate upper date limit. Apple represented, however, that it would not need to re-run searches for design patent inventors because its searches for members of the Industrial Design team will capture all relevant documents up to the release date of the products embodying those patented inventions. That is improper. If the product release dates are earlier than the patent issuance date, then the date range is insufficient. If the product release dates are later than the patent issuance date, then Apple should have no problem agreeing to re-run searches of the design patent inventors' inventor documents to capture all documents up to the patent issuance date. Please confirm that you will re-run these searches with the patent issuance date as the upper cutoff date. Please also set forth in writing your basis for distinguishing between utility inventors and design patent inventors with respect to the date ranges to apply.

*Search term deficiencies*

In Marissa Ducca's November 29, 2011 letter, Samsung noted many deficiencies in the terms Apple used to locate and produce inventor documents. During the call, Apple agreed to re-run its searches with Samsung's proposed terms, and also to apply the enhanced lists to Steve Jobs' files. Apple stated that it would then discuss the results of its search with Samsung, and indicated that it would be generally willing to produce any new documents that it discovers as long as they are relevant and not overly burdensome to produce.

2

Mia Mazza
S. Calvin Walden
December 3, 2011

*Judge Grewal's Order*

Samsung again requested more information regarding the process by which Apple searched for photographs responsive to Judge Grewal's orders. Samsung also noted that Apple failed to search many potential sources and failed to use proper search terms. Apple agreed to address the issues regarding its search process raised in Diane Hutnyan's November 29, 2011 letter, and to provide additional information to Samsung regarding its search process.

Finally, Apple represented that it does not possess color versions of the photographs it sent to the U.S. Patent and Trademark Office during the prosecution of D'889. Rather, Apple clarified that it had scanned, using a color scanner, the black-and-white photographs it received. Apple represented that, consistent with its stipulation, the photographs provided in Exhibit 8 to Erik Olson's November 1, 2011 declaration are the best quality that it has. As we requested on the call, please confirm these representations in writing.

*Other discovery related to D'889 and the Apple Tablet 035 Mockup*

Apple stated that it would respond to Samsung's request to de-designate photos of the Apple Tablet 035 Mockup within a week, although its deadline to meet and confer on the issue is December 6.

With regard to model shop records and CAD files, Apple stated that this was part of a "cluster" of information it was currently working on producing. Samsung explained that such "clustering" was inappropriate, and urged Apple to produce these items as soon as possible, on a rolling basis if necessary.

Finally, with regard to Doug Satzger's emails, Apple claimed that it has conducted an exhaustive search but found nothing. Please detail in writing what Apple has done to search for Mr. Satzger's emails, model shop records, CAD files, and anything else that is being "clustered" by Apple.

*Prior deposition testimony*

Samsung again requested Apple to provide a list of cases in which an employee who would likely appear as a witness in this case testified in his or her capacity as an Apple employee. Samsung explained that it was willing to provide the same to Apple, and that this process was necessary so that each party could determine for itself which transcripts were relevant to its case. Apple refused to provide any such list on the grounds that creating such a list was "make work." Rather, Apple insisted on adhering to its new and very limited definition of "technological nexus," and further insisted that it alone would determine which transcripts were relevant for

3

Mia Mazza
S. Calvin Walden
December 3, 2011

production to Samsung.  Apple stated that it would only provide the requested list if Samsung issued an Interrogatory requesting it.

Apple's position is unacceptable to Samsung and violates the spirit of Judge Grewal's transparency order.  We hope that Apple will reconsider its position and provide a full list of cases to Samsung, including those cases that it believes are irrelevant and the reasons why it believes those cases are irrelevant.  Samsung is willing to provide the same list to Apple.  If Apple is unwilling to change its stance, please be prepared to discuss this issue at the lead counsel meet and confer.

> *Mac OS 10.0, SuperClock, Brain Box, Phillips Receiver, Apple Cinema Display, Sony-based designs, other smartphone (Treo, Razr) designs*

Even though Samsung requested many of these items nearly a month ago, Apple stated that it was still searching for these items.  When pressed for a date certain, or even an estimated date, by which it would provide these items, Apple could not provide any date for any item.  Instead, it proposed that both parties agree they will "substantially complete" their production of several unidentified categories of items (apparently including these requested items) by December 15, 2011, and at that point state what they have done and what still needs to be done.

This response does not seem to follow.  Either Apple can produce the requested items by December 15, 2011, or it can't.  There is no reason why Apple's ability to produce these items should be related to or contingent on Samsung's production of items.  Samsung instead proposes that rather than setting artificial deadlines and withholding items for exchange, both parties continue to make a good faith effort to produce the items requested by the other side.  Samsung has always made, and continues to make, good faith efforts to satisfy Apple's production requests.

Apple's counsel revealed on the call that when it searches for items requested by Samsung, rather than conducting supplementary searches at Apple, it only searches the documents and things it had already previously collected from Apple.  This type of search is improper and insufficient.  Samsung requested on the call that Apple provide a detailed, written explanation of the specific efforts that have been made to date in order to search for each of the requested items, and of the current status of each search.

## II.     Apple's written responses to Samsung's Requests for Production

Samsung is working diligently on the counterproposals to Exhibits A and B, and will try to provide them to Apple next week.  Samsung will consider providing its counterproposal to Exhibit A before it provides its counterproposal to Exhibit B if it makes sense to do so.

Mia Mazza
S. Calvin Walden
December 3, 2011

## III.    Apple's selective waiver of attorney-client privilege

Apple refused to provide any facts or authority (or even a colorable rationale) in support of its claim of privilege with respect to the communications between Apple's counsel and Apple's employees that Mr. Jacobs described in open court at the protective order hearing.  Parties wishing to assert privilege over attorney-client communications must provide information sufficient to support their claim of privilege, and Apple's continual failure to do so merely confirms the unprivileged nature of the communications at issue.  Samsung encourages Apple to reconsider its position and to provide its rationale, including whatever facts and authority it has, in support of its claim, in writing.

## IV.    Protective order for Itay Sherman

Apple stated that Harold McElhinny was available for a lead counsel meet and confer on December 5-7.  Samsung said it would determine Mr. Verhoeven's availability on these dates.

APPLE'S ISSUES

## I.    Scheduling lead counsel meet and confer

Apple stated that Mr. Harold McElhinny will be available for an in-person meet and confer on December 5-7, although its preference would be December 6.  Samsung stated that it would need to check with Mr. Verhoeven to see if he would also be available on those dates.  Apple was unable to definitively state what issues it would propose for this meeting, despite Samsung's emphasis on the need to identify all the issues on which lead counsel would need to be briefed. Samsung identified prior deposition transcripts and Itay Sherman's access to Apple confidential information (as well as all the issues previously identified in Rachel Herrick Kassabian's November 20 letter as being ready for a lead counsel meet and confer), as issues that should be discussed at the meeting.

## II.    Protective Order

Apple represented that as of the morning of November 30, the parties had reached an agreement in the ITC matter as to the source code and prosecution bar provisions.  Apple has made recent revisions to the provisions relating to cross-use of documents, however, and Samsung has yet to approve these provisions in the N.D. Cal. case.  In furtherance of its desire for an expedited resolution of this issue, Apple represented that it would provide Samsung's N.D. Cal. team with a new, redlined draft that reflects all of the edits Apple has made since last week, as well as the joint motion to be filed in the ITC matter.

Mia Mazza
S. Calvin Walden
December 3, 2011

### III.     Production of documents that include the term "Apple"

Apple has requested that Samsung re-run its searches of the following categories of custodians for all documents using the term "Apple" and Korean equivalents:  designers and engineers who worked on the products at issue, employees responsible for marketing those products, and employees responsible for developing the infringing features.  Apple demanded that this search be "substantially complete" by December 15, 2011.  When asked to explain why Apple needed all documents matching this description by December 15, Apple was unable to do so.[1]

Samsung will proceed with its searches on the basis of the language used in Mr. Wes Overson's letter of November 15, 2011, which Apple represented during the previous meet and confer call represented its final position on this issue.  We will consult with Samsung to identify custodians who fall within the categories described by Mr. Overson.

Samsung will use its best efforts to complete substantial production of these documents before December 15, 2011.  Apple confirmed that it would perform reciprocal searches of its custodians for the term "Samsung," code names used to refer to Samsung, as well as the names of the Samsung accused products.  However, Apple further requested that the parties not perform any review for relevance, instead producing all documents that include the opposing party's name that are not excluded by delimiters.  At this time, Samsung will not agree to produce documents that are not relevant to the claims and defenses asserted in this action, and asks that Apple likewise not produce irrelevant documents.

### IV.     Production of survey-related documents

Apple has requested production of survey documents in excess of the production required by Judge Grewal's September 28th order.  Samsung has agreed in principle to perform these searches on a reciprocal basis, given the numerous Samsung requests for production directed at consumer surveys, focus groups, and other marketing-related documents.  *See, e.g.,* Samsung RFPs 177, 178, 190, 191, and 249.

Apple refused to commit to reciprocal production, instead demanding that Samsung "substantially complete" its production of this entire category of documents by December 15, 2011.  Apple was unable to advance any legitimate justification for expedited treatment of this category of documents.  Rather, Apple only stated that these documents would be relevant to

---

[1]   Apple generally proposed during the meet and confer call, and then by letter dated December 2, 2011, that the parties identify certain categories of documents deserving of expedited treatment, and agree to complete substantial production of these documents before December 15, 2011.  Samsung is considering the terms of this proposal as set forth in Ms. Mazza's letter.

Mia Mazza
S. Calvin Walden
December 3, 2011

upcoming depositions noticed last week.  The fact that Apple has noticed (but not calendared) depositions for eight individuals does not support its contention that it needs immediate production of all the documents it seeks.  Moreover, none of the individuals noticed are marketing employees, and thus consumer survey documents will have little, if any, relevance to those depositions.  Nevertheless, as stated in my letter dated December 2, 2011, Samsung will use its best efforts to complete substantial production of these documents before December 15, 2011.  If we are unable to substantially complete production by that date, we will so advise.

## V.    Production of source code and other technical documents

Samsung has already produced source code relating to conception and reduction to practice, and is preparing to make a production of source code relating to the accused products.  Apple again demanded the "substantial completion" of dozens of categories of source code before December 15, 2011, stating that source code relating to the accused functionalities is relevant to the upcoming claim construction briefing.

As Samsung pointed out, however, this justification runs counter to bedrock principles of claim construction because "claims may not be construed with reference to the accused device."  *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002); *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("[T]he construction of the claim is independent of the device charged with infringement . . . ."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc).  Apple refused to provide any additional basis why source code is relevant to claim construction, or why it needed to receive all of the documents referenced in Mr. Overson's letter before December 15, 2011.  Despite Apple's failure to explain the basis for its demand, Samsung will work diligently to produce the source code Apple requests as expeditiously as possible, and hopes to complete substantial production before December 15, 2011.

## VI.    Apple's Second Set of Preliminary Injunction Interrogatories

Apple's previous correspondence complaining about the sufficiency of Samsung's interrogatory responses was ambiguous.  That is, Apple was unclear whether it was simply referring to Interrogatory Nos. 10-14 as a set or whether it was requesting that Samsung supplement its response to each of these interrogatories.  Moreover, Apple has consistently articulated specific issues with respect to Interrogatories 10 and 11.  Thus, Samsung reasonably believed that it had fully satisfied Apple's request by supplementing Interrogatories 10 and 11.

Samsung is willing to supplement its response to other interrogatories, including 12-14, provided that Apple identifies deficiencies in specific responses or provides some sort of additional

Mia Mazza
S. Calvin Walden
December 3, 2011

guidance as to what information it believes is missing.  It will also amend its interrogatories as appropriate, as discovery continues.  Apple stated that it understood Samsung's position.

**VII.     Production of documents relating to inventors and participation in standard-setting organizations**

Samsung is making ongoing inventor-related productions on a rolling basis.  Apple's correspondence has identified instances where it believes documents should have been produced but were not.  Samsung has responded to many of the issues raised in these letters, and will respond to all outstanding correspondence on this subject.  Samsung will also be responding to Calvin Walden's November 15, 2011 letter regarding production of documents related to participation in standard-setting organizations.

Apple also stated that it is preparing a letter outlining broader concerns with Samsung methodology in searching for inventor-related documents.  Samsung will respond to Apple's concerns after it receives this letter.

Very truly yours,

*/s/*

Rachel Herrick Kassabian

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
rachelkassabian@quinnemanuel.com

November 20, 2011

VIA ELECTRONIC MAIL

Mia Mazza                                   Samuel Maselli
Morrison & Foerster                         WilmerHale
425 Market Street                           950 Page Mill Road
San Francisco, CA  94125-2482               Palo Alto, CA 94304

Re:      *Apple, Inc. v. Samsung Elecs. Co. et al.*, Cae No. 11-cv-1846 LHK (N.D. Cal.)

Dear Mia and Samuel:

I write to address and memorialize several issues discussed during our meet-and-confer call on Wednesday, November 16, 2011.

Apple's Issues

## I.      The Court's September 28th Order

*Searching files for the opposing party's name*

As previously indicated in my letter of November 8, 2011, Samsung is generally agreeable to including the term "Apple" (with delimiters as needed) in searching its designers' custodial documents provided that Apple search for the term "Samsung" in its designers' files.  Samsung made it clear, and Apple is not contesting, that this was not something ordered by the Court in its September 28 Order, but rather, would be done pursuant to an agreement of the parties.  During the November 16, 2011 meet and confer call, Apple has now broadened its request by asking Samsung to include the term "Apple" in searching the files of (1) engineers who worked on the

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543  | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788  | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510  | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400  | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom  | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo  100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000  FAX +49(0) 621 43298 6100

Mia Mazza
Samuel Maselli
November 20, 2011

products at issue, (2) employees responsible for marketing those products, and (3) employees responsible for developing the accused features.  Moreover, Apple further requested that the parties include in their search terms any nicknames or foreign language terms that custodians may use to refer to the opposing party.  Apple further proposed that the parties would disclose, in their court-ordered identifications, any delimiters used to reduce the number of false "hits" in their searches.

We will consult with our client to see whether it will agree to this new proposal.

*Consumer surveys*

Despite Samsung's previous agreement to supplement its production of consumer survey documents, Apple has broadened its request yet again.  In Wes Overson's November 16th letter, Apple requests that Samsung search the central marketing files, wherever located, as well as the files of Sungwook Kwon, Jinna Yoon, Tim Benner, and any other custodians with responsibility for surveying customers of the products at issue during the preliminary injunction phase, using the search string disclosed in Samsung's October 10 identifications.  During the meet-and-confer call, in response to our questions, Apple agreed that the searches it is proposing would be limited to the named defendants' employees' and central marketing files – and would not include the custodians or files of any Samsung subsidiary or entity which is not a party to this case.  We will confer with Samsung and get back to you.

## II.  Proposed reciprocal agreement to produce certain categories of documents

We believe Apple's proposal of reciprocal categories of document requests is a helpful exercise.  However, several aspects of Apple's current proposal (hereafter "Exhibit A") are problematic.  For instance, Exhibit A omits numerous Samsung requests that fall squarely within the identified categories, while including many other requests that are irrelevant to them.  Moreover, Exhibit A inappropriately focuses on numerous Apple requests for which Samsung's written responses are not yet due.  Finally, Apple indicated on last week's call that its Exhibit A was incomplete, and that Apple would be sending us additional categories of documents which it believes implicate reciprocal obligations.  Please send us those additional categories as soon as possible, so that the parties can avoid dealing with these issues on a piecemeal basis.  In the meantime, Samsung is considering and preparing a response to Apple's Exhibit A.

## III.  Production of relevant inventor documents

Samsung does not believe that inventor-related documents is a reciprocal category at this stage in discovery.  Exhibit A only includes one proposed agreement for this category:  that the parties limit inventor-related searches to the filing date of the relevant patent application.  Not only has

2

Mia Mazza
Samuel Maselli
November 20, 2011

Samsung already rejected this idea weeks ago, this proposal is not reciprocal because Apple has already completed its searches, albeit using improper date restrictions.  As discussed below and in other previous correspondence, Samsung demands that Apple re-run its searches using proper date restrictions.

During the call Samsung confirmed that it is searching its inventors' files for any and all types of responsive documents, through the use of search terms and witness interviews.  Samsung has not specifically or intentionally withheld certain categories of documents over others.  Apple confirmed that it had engaged in these same activities in searching its inventors' files for responsive documents.

Apple stated that it would send a separate correspondence clarifying any questions or concerns it might still have regarding Samsung's inventor searches.

### III.    Apple's Second Set of Preliminary Injunction Interrogatories (Nos. 10-14).

Pending final client approval, Samsung intends to supplement its responses to Apple's interrogatory requests Nos. 10-14 by Monday, November 21, 2011.  Samsung's supplemental responses will be as complete as possible in light of the fact that nearly four months remain before the close of fact discovery, and Samsung's investigation is ongoing.

### IV.    Reciprocal agreement to produce licensing documents.

Apple has proposed that the parties exchange (1) license agreements and royalty information for non-FRAND patents-in-suit, and (2) license agreements, royalty information, and negotiation documents for all patents (whether asserted or not) that have been declared essential to a standard at issue in this lawsuit.  We will confer with Samsung on this issue, along with the other reciprocal document categories Apple has raised.  We understand that Apple wishes to expedite the approval process for this category of documents, which we will endeavor to do.

### V.    Protective Order provisions regarding cross-use.

The parties have agreed in principle on domestic cross-use of produced documents only.  Samsung is in the process of fine-tuning the language of these provisions and evaluating edits made by Apple.  Samsung will try to provide Apple with a final draft before the Thanksgiving holiday, or the week thereafter.

Mia Mazza
Samuel Maselli
November 20, 2011

## VI.    Production of documents related to participation in standards-setting organizations

The parties have reciprocal requests for this category of documents.  *See, e.g.*, Samsung's RFPs,
Set One, No. 117-119.  Therefore, Samsung will include these requests in its revisions to Exhibit
A and deal with them accordingly.  In the meantime, Samsung has produced documents
responsive to Apple's standards-related requests and will continue to do so.  Any specific
concerns raised in Samuel Maselli's letters of November 8th and November 14th will be addressed
shortly.

## VII.    Samsung attorneys' assertion of privilege in depositions.

Samsung disagrees that its assertions of privilege during recent depositions was inappropriate,
and will respond to Samuel Maselli's November 15th email in due course.

## VIII.    The Five-Day Rule

Apple requested that the parties provide advance notice to the opposing party if they know in
advance that they will be unable to complete a deposition-related production five days prior to
the deposition.  While Samsung suspects that the parties often may not know in advance that
there will be such a production issue, Samsung agrees to Apple's proposal, with the
understanding that Apple will provide the same advance notice if it comes to learn that it will not
be able to complete a deposition-related production five days prior to the deposition.

## IX.    Production of source code related to accused features

As we made clear during the previous meet and confer call, both parties have requests seeking
production of source code for the accused products.  Like all reciprocal categories, we will
confer with Samsung and get back to you.  In the meantime, Samsung will produce relevant
source code on a rolling basis and will also respond to Wes Overson's letter dated November 9,
2011.

Mia Mazza
Samuel Maselli
November 20, 2011

<u>Samsung's Issues</u>

## I.     Deficiencies in Apple's searches and production

*Apple's written responses to Samsung's first, second and third requests for production*

Apple's written responses to Samsung's requests for production fail to give Samsung fair notice of what Apple intends to produce or why it finds Samsung's requests objectionable.  Rather, Apple has either merely labeled requests as overbroad—a bare legal conclusion—or stated that it would meet and confer on the scope of a request.  Marissa Ducca first requested that Apple clarify its position nearly two months ago on September 30, 2011, and again on November 3 November 8, 2011.  None of Apple's correspondence is responsive to Marissa's letters.  In contrast, when Apple asked Samsung to clarify its objections, my letter of October 26, 2011 explained in detail Samsung's objections to at least eighty of Apple's requests.

During the call, Apple stated that Wes Overson's letter of November 10, 2011 was intended to be Apple's response to Marissa's letters on this issue.  Mr. Overson's letter, however, only addresses ***Apple's*** requests and contains no indication of Apple's positions with respect to why it should not provide all documents responsive to Samsung's requests.  Although Exhibit A does include Samsung requests for which Apple has reciprocal requests, this exhibit mischaracterizes many of Samsung's requests, and further, does not absolve Apple of its obligations to provide adequate responses to *all* of Samsung's document requests, including those that are nonreciprocal.

Apple indicated that it will send a letter indicating whether it will produce documents in response to Samsung's nonreciprocal production requests.  Samsung, in turn, agreed that it would revisit its response to S. Calvin Walden's letter dated October 13, 2011 and further discuss any issues that may have gone unaddressed.

*Documents relating to Apple's assertion of its patents against Motorola*

Apple represented that it has collected and is in the process of reviewing the documents referenced in Marissa Ducca's November 10th letter.  Samsung noted again the importance of receiving these materials promptly, in light of impending claim construction proceedings, and Apple stated that it will produce these documents before Thanksgiving.  If Apple does not do so, we will need to have a lead counsel meet and confer to resolve the matter.  Please let us know when during the next two weeks Apple's lead counsel is available.

Mia Mazza
Samuel Maselli
November 20, 2011

*Date restrictions for inventor files*

It has been more than two weeks since Samsung first requested that Apple redo its inventor searches to include all documents up to and including the patent issuance date.  Apple stated that it is still considering Samsung's request, and will respond by Thanksgiving.  Samsung also asked Apple to explain the significance of the June 2003 and October 2004 date restrictions it applied. Apple was unable to do so, and stated only that it was entitled to use arbitrary date restrictions as long as it concluded that the search "was early enough" that it would capture all relevant documents.  Apple stated that it was willing, however, to prepare a letter explaining why it chose the dates that it did.  Please do so immediately.

If Apple does not agree to re-run its inventor searches to include all documents up to and including the patent issuance date by Monday, November 28, Samsung will have to move forward and will expect Mr. McElhinny to discuss it with Mr. Verhoeven at the lead counsel meet and confer.

*Transcripts of prior testimony*

Samsung has repeatedly asked Apple to produce all transcripts of prior testimony where an individual who would likely appear as a witness in this case has testified in his or her capacity as an Apple employee.  With respect to Samsung's inventors, Samsung is producing all such transcripts that it is able to locate through a reasonable search.  By contrast, Apple has made clear that the only transcripts it regards as relevant are those in which the witness testified regarding a patent asserted in this matter, notwithstanding case law to the contrary.

During the meet-and-confer call, Apple stated that it may now be willing to broaden its concept of relevance to include transcripts from proceedings that have a "technological nexus" to the subject matter of the instant case.  Samsung indicated that it may be willing to adopt the "technological nexus" approach, provided that the parties agree on a mutually acceptable definition of that concept.  During the call, however, Apple was unable to articulate what it meant by "technological nexus."  Consequently, Samsung insisted that the parties exchange a list of the prior cases in which their witnesses have testified, so that the parties would be able to make their own independent determination of which transcripts are relevant and should be produced.  Apple stated that it would consider Samsung's request, but as of this writing still has not provided its final position.  More than two weeks have elapsed since Samsung raised this issue, during which time Samsung has had to depose several Apple witnesses without this pertinent evidence.  In light of Apple's consistent failure to articulate any meaningful alternative standard, or otherwise move the ball forward, please be advised that if we cannot resolve this issue in the next week, Apple should be prepared to discuss it at the upcoming lead counsel meet and confer.

Mia Mazza
Samuel Maselli
November 20, 2011

### *Inventor-related document production*

Samsung still has not received a response to Marissa Ducca's letters of October 18, 2011 and November 12, 2011 regarding documents missing from Apple's inventor productions. Apple stated that it has been investigating why these documents were not produced and is currently drafting a response. Apple stated that it would respond by Monday, November 21, 2011.

### *Missing custodial information*

Apple represented that all of the custodial information in its productions is complete and up to date. We will consider Apple's representation and get back to you.

### *Source code for Mac OS X and SuperClock*

Apple stated that it was in the process of locating the source code for Mac OS X and SuperClock. Samsung clarified that while source code relating to accused features is a reciprocal category of requests, source code relating to prior art is not. Because Samsung will need to amend its invalidity contentions, Samsung urgently needs source code relating to prior art. Apple agreed to find and produce this source code as soon as possible. Furthermore, this source code is relevant to conception and reduction to practice, and hence, to claim construction issues. Therefore, it is essential that Samsung have access to this source code and time to review it before the claim construction briefing deadlines. We have been asking for this source code since November 1 and still do not have a date certain for production. Although the source code is readily available to Apple, we have received nothing but unsubstantiated promises that it will be produced at some unidentified point in the future. Please produce this source code immediately. If we do not have access to the code by Monday, November 28, Mr. McElhinny should plan to discuss this with Mr. Verhoeven at the upcoming lead counsel meet and confer.

### *Brain Box, Sony Design Investigation, Phillips Receiver Testing, Other Smartphone (Treo/Razr), and Apple Cinema Display Documents and Tangibles*

Apple has agreed to produce the requested materials at least to the extent they bear on the external design, rather than any internal components. However, weeks have passed, and Apple has refused to provide a date certain for production of any of these materials. Please provide a date certain for each of them by Thanksgiving and if not, then please include this on the agenda for the upcoming lead counsel meet and confer.

Mia Mazza
Samuel Maselli
November 20, 2011

*035 Table Computer Mockup and Emails*

Samsung has been requesting these materials since November 8.  Apple has agreed to produce some of the materials requested at some unspecified point in time and utterly failed to address the balance of our request, including our request for Mr. Satzger's unproduced emails.  Please provide a full written response, including an agreement to produce all responsive materials by Monday, November 28.  If Apple fails to do so, these issues will need to be discussed at the lead counsel meet and confer as well.

## II.     Apple's use of inaccurate translations during depositions

Apple has used English translations of Korean documents while deposing Korean speakers.  Samsung objects to the use of English translations with Korean speakers where the original Korean document would suffice.  Samsung also objects to the use of any translations that are not produced to Samsung in advance of depositions in sufficient time for Samsung to evaluate their accuracy.  Apple represented that where possible, it will produce translations to Samsung in advance of the deposition, but that it will continue to use translations even if they are not produced in advance.  Samsung objects to this practice, and will continue to object at deposition to the use of any translations that it has not been given an opportunity to check for accuracy.

## III.     Apple's selective waiver of the attorney-client privilege

At Apple's insistence, Michael Zeller sent a letter dated November 10, 2011 that spells out precisely which portions of the hearing transcript constitute a waiver of the privilege.  Yet after ignoring that letter, and without providing any authority or rationale in support of its position, Apple told us only that it disagrees.  This is improper.  Please provide a written response to Mr. Zeller's November 10 letter which details Apple's position and the authority on which it relies.

## IV.     Expert witnesses

Samsung has objected to Apple's disclosure of Peter Bressler as an expert witness in this case.  Apple indicated that it will neither show Mr. Bressler any confidential Samsung documents nor pursue motion practice to obtain the right to do so.  Please let us know if Apple's position changes in the future.

Samsung also requests that Apple set up a time for an in-person meet and confer on the issue of Itay Sherman's access to Apple confidential documents.  Apple said that it will inform Samsung of Harold McElhinny's availability for such a meeting but has yet to do so.  Please confirm that Mr. McElhinny will make himself available during the next two weeks.

Mia Mazza
Samuel Maselli
November 20, 2011


Very truly yours,



Rachel Herrick Kassabian

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
**rachelkassabian@quinnemanuel.com**

November 15, 2011

<u>VIA E-MAIL</u>

Jason R. Bartlett                        S. Calvin Walden
Morrison & Foerster                      WilmerHale
425 Market Street                        339 Park Ave.
San Francisco, CA 94105-2484             New York, NY

Re:     *Apple, Inc. v. Samsung Elecs. Co.*, Case No. 11-cv-1846-LHK (N.D. Cal.)

Dear Jason and Calvin:

This letter is intended to memorialize the parties' discussion during the meet and confer call on Wednesday, November 9, 2011, and to address certain statements made in Jason Bartlett's letter dated Tuesday, November 15, 2011.

<u>SAMSUNG'S ISSUES</u>

**1.      Date restrictions**

Although Samsung's counsel was provided very little time to consider Mia Mazza's letter of November 9, 2011, the parties discussed various inaccuracies in her letter.  For example, Ms. Mazza incorrectly stated that Samsung failed to indicate the cut-off date it has been applying or its proposed reciprocal cut-off date.  In, fact, we previously made clear that Samsung applied the patent issuance date as the relevant date restriction for searching the files of any inventor listed on a utility or design patent.  Apple should have done the same.  During our call, Apple indicated that it will reconsider the issue and get back to us.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 756-1950  FAX (202) 756-1951
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo  100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712

Jason R. Bartlett
S. Calvin Walden
November 15, 2011


We also discussed Apple's proposal that the date limitation be extended beyond the issuance date in instances where the first product embodying the patented invention was made and sold to the public after the issuance date.  We disagreed with Apple, and Apple failed to articulate why such documents would be relevant.  Specifically, the only reason Apple came up with was that such later documents could be relevant to design issues, if the inventor had been involved in creating the released product.  But as we made clear on the call, such design documents would be otherwise called for by the document requests covering product design.  Samsung has considered this issue further, and rejects Apple's proposal.  Please see Marissa Ducca's letter, sent today, discussing Samsung's position in further detail.

**2.      Updating identifications of custodians and search terms**

As we discussed on the call, Samsung will provide Apple with an updated version of its court-ordered identifications for the month of November.  Having now conferred internally on this issue, Samsung proposes that the parties exchange updated identifications on a monthly basis on the last business day of each month.

**3.      Michael Zeller's letters dated November 1 and November 8**

Apple generally stated that it intends to respond in detail to each of Mr. Zeller's letters referenced on Samsung's agenda in later correspondence; we understand that as of the date of this letter, Apple has recently sent additional correspondence on these issues, and Samsung will respond separately.  During the meet and confer call, Apple agreed to conduct additional searches for documents relating to Brain Box, the "Phillips Receiver" testing reports, the Sony investigation, Apple's inspection of Treo and Razr, and Apple Cinema Display.  At this time, Apple need only search for documents relating to the external design of these devices, rather than their internal components or mechanisms.

Regarding design inventor sketchbooks, Apple stated that in response to Samsung's requests, it would conduct additional searches for sketchbooks of its inventors (including but not limited to Peter Russell-Clarke and Douglas Satzger).

**4.      Marissa Ducca's letters of November 1 and November 8**

Apple indicated that it will produce the source code for Mac OS v. 10 and a computer with a working copy of Mac OS v.10 installed.  Regarding the Mac OS 10.0 source code, as we indicated on the meet and confer, we are most interested in the source code for the contrast, or "brightness" window.  This was referenced during Mr. Chaudhri's deposition (14:2-6, 20-22) and Mr. Ording's deposition (115:19-116:7).  To help you identify this feature, below are images of the brightness adjustment window:

Jason R. Bartlett
S. Calvin Walden
November 15, 2011





Please produce the source code that generates and causes the disappearance of this window immediately.  Contrary to Mr. Bartlett's letter of today, Samsung did not limit its request to the source code related to the brightness adjustment window.  Samsung may need additional source code from Mac OS 10.0 as discovery progresses.  Please let us know when this source code will be available for inspection.

Apple also agreed to provide an unredacted version of the document with Bates number APLNDC-X4557.  Although Apple represented that it would "not take long" to produce an unredacted version of the document, Samsung has not yet received it.   Please produce it immediately.

**5.      Transcripts of prior deposition testimony**

In light of Marissa Ducca's November 3rd letter, Samsung asked if Apple had reconsidered its position that only prior testimony involving the particular patents-in-suit is relevant.  Samsung has made clear that it does not seek transcripts of depositions pertaining to personal matters.  Apple indicated its willingness to produce transcripts consistently with the "technological nexus" approach, as discussed in cases such as *Inventio AG v. Thyssenkrupp Elevator Amers. Corp.*, 662

Jason R. Bartlett
S. Calvin Walden
November 15, 2011

F. Supp. 2d 375 (D. Del. 2009), and to indicate which depositions it deems irrelevant in order to permit Samsung to assess how Apple defines the technological nexus concept.

**6.      Apple's waiver of attorney-client privilege**

Apple has not yet responded to Michael Zeller's November 2nd letter on this issue.  Despite Apple's failure to conduct anything more than a cursory investigation into Michael Jacobs' statements, Samsung has sent separate correspondence which identifies which parts of the transcript constitute a waiver of the privilege.  Contrary to Mia Mazza's assertion in her letter dated November 15, 2011, Mr. Zeller sent a letter identifying these statements five days ago.

**7.      Samsung's objection to Apple's disclosure of Peter Bressler as an expert witness**

Apple has not yet responded to my correspondence of November 7, nor was it willing to respond during the meet and confer call.  While Apple represented that it would respond "in due course," Samsung emphasized the importance of a prompt and thorough response to its objections, given Apple's apparent intention to show confidential Samsung design documents to an individual who designs products for Samsung competitors.  Please provide Apple's response to my November 7 correspondence on our next meet and confer call.

**8.      Shin Nishibori's deposition**

Despite our requests, Apple declined to provide us with an estimated date for Mr. Nishibori's deposition.  We remind you that there is a court order requiring Apple to produce Mr. Nishibori for deposition by December 1.  If Apple does not intend to abide by that order, please advise.

APPLE'S ISSUES

**1.      Finalizing the proposed protective order**

The parties are nearing agreement on the proposed protective order in the Northern District of California matter.  Apple identified four issues which it felt still needed to be resolved: (1) the cross-use provisions, (2) limitations on expert witness/voicemail/archive discovery, (3) the source code review provisions, and (4) the trademark prosecution bar.  As we discussed during the call, Samsung agrees to the limitations on expert witness and voicemail/archive discovery that have been negotiated by the parties in the ITC matter.  Further, it is our understanding that the parties are near agreement on the source code review terms in the ITC matter.  We anticipate that we will be able to agree to the same terms in the NDCA matter, subject to final client approval.  Regarding item 1, we agree in concept to domestic cross-use of documents only, and

Jason R. Bartlett
S. Calvin Walden
November 15, 2011

will be sending our proposed revisions to the draft protective order shortly.  Regarding item 4, Samsung has agreed to withdraw its request for a trademark prosecution bar.

**2.      Inventor document production**

As we discussed, Samsung is in the process of searching its inventors' files and is producing relevant documents on a rolling basis.  With respect to Mr. Jeong-Seok Oh, Samsung employed search terms that it will disclose to Apple in its amended identifications.  Apple stated that it intends to ask Mr. Oh further document-related questions during his deposition next week and will follow up with any remaining concerns in written correspondence.

**3.      Reaching reciprocal agreements on production in various categories**

The parties reiterated the need to identify which categories of discovery requests are at least partially reciprocal and attempt to reach agreement as to the scope of production.  In preparing for the process of reaching an agreement, Samsung requested that Apple provide its position in writing.  Since the meet and confer, I believe additional correspondence has been sent relating to these matters; Samsung will respond separately.  Regarding financial documents, Samsung will consider Apple's request that the parties provide spreadsheet-type financial documents in native format.

**4.      Production of source code**

Samsung is investigating the issues raised by Wesley Overson in the letter sent one hour before the meet and confer call.  Samsung expects that Apple, in requesting these types of documents, intends to search for and produce the same for the Apple accused products, since such materials have also been sought by Samsung.  Apple and Samsung agreed to follow up in writing, in light of the reciprocal nature of this category of documents.

GENERAL ISSUES

Samsung requested that the parties agree to send all correspondence relating to the issues on the parties' respective meet and confer agendas Tuesday night, so that each party can be fully prepared to address the issues on Wednesday's call.  We appreciate Apple's understanding and commitment to do everything it can going forward to accommodate Samsung's request.

Very truly yours,

Jason R. Bartlett
S. Calvin Walden
November 15, 2011


/s/

Rachel Herrick Kassabian