QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>          Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS**<br><br>Date:     January 19, 2012<br>Time:    10:00 a.m.<br>Place:   Courtroom 5, 4th Floor<br>Judge:  Honorable Paul S. Grewal |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

I.     APPLE'S DEFICIENT MEET AND CONFER EFFORTS LEADING UP TO
THIS MOTION. ......................................................................................................... 1

     A.    Technical Documents ...................................................................................... 2

     B.    Design History Documents ............................................................................. 3

     C.    Financial Documents ...................................................................................... 4

     D.    Design-Around Documents ............................................................................. 4

     E.    Marketing and Advertising Documents .......................................................... 4

     F.    Trademark and Trade Dress Infringement ...................................................... 5

II.    THE PARTIES' RESPECTIVE PRODUCTIONS AND DEPOSITIONS. ...................... 6

I.     SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE THE
TECHNICAL DOCUMENTS. ..................................................................................... 6

II.    SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE ALL
NON-PRIVILEGED DOCUMENTS THAT ARE RELEVANT TO SAMSUNG'S
ALLEGED EFFORTS TO DESIGN AROUND APPLE'S PATENTS .............................. 8

III.   DESPITE APPLE'S FAILURE TO MEET AND CONFER, SAMSUNG HAS
AGREED TO PRODUCE DOCUMENTS RELATING TO ALLEGED
TRADEMARK AND TRADE DRESS INFRINGEMENT AND ADVERTISING
AND MARKETING. .................................................................................................... 9

     A.    Documents Relating to Products *Not* Accused In This Lawsuit ............................... 9

     B.    Documents Relating to Trademark and Trade Dress Issues.................................... 11

     C.    Samsung's Marketing and Advertising Documents................................................ 11

     D.    The Television Survey Rumor on Amazon.Com ..................................................... 13

IV.   SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE ALL
OF THE FINANCIAL INFORMATION THAT APPLE REQUESTS. ............................ 14

V.    APPLE'S SCORCHED-EARTH LITIGATION TACTICS SHOULD BE
CURBED WITH A DENIAL OF ITS MOTION AS MOOT AND MERITLESS. ........... 15

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Doubt v. NCR Corp., No. C 098-5917 SBA,*
     2011 WL 3740853 (N.D. Cal. Aug. 25, 2011)............................................................................10

*Kelora Systems, LLC v. Target Corp.,*
     2011 WL 5444419 (N.D. Cal. Nov. 9, 2011)............................................................................10

*Microsoft Corp. v. AT&T Corp.,*
     550 U.S. 437 (2007)...............................................................................................................14

*Tumbling v. Merced Irr. District,*
     262 F.R.D. 509 (E.D. Cal. 2009).........................................................................................8, 9

**INTRODUCTION**

Once again, Apple has filed a meritless and unnecessary discovery motion, and it should be denied.   Samsung has already agreed to produce several of the categories of documents that Apple seeks, and to complete its production by specific dates certain.   For many other requests, Apple has failed to meet and confer regarding its demands.   For the small remainder for which the parties have reached a true impasse, Apple has failed to present any reason why such wildly overbroad discovery is relevant or necessary.   Apple's motion should be denied.

**BACKGROUND**

**I.      APPLE'S DEFICIENT MEET AND CONFER EFFORTS LEADING UP TO THIS MOTION.[1]**

Apple has not met and conferred regarding all of the issues raised in its motion.   On December 24, 2011, Apple identified six general topics on which it intended to move to compel, and asked that the parties discuss such topics during the in-person lead counsel meet and confer conference.   (Declaration of Melissa N. Chan ("Chan Decl.") at ¶ 11.)   Of the six, three are subject of Apple's motion to compel filed January 10, 2012.   (*See* Dkt. No. 611.)   The remaining three were described as "(1) all additional technical documents described in Wes Overson's November 8, 2011, letter; (2) all design history described in Apple's December 6, 2011, letter, expanded to cover all tablet, touchscreen phone and touchscreen media player products sold by Samsung, regardless of where sold; (3) all financial documents described in Apple's December 19, 2011, letter, including the information for worldwide sales described

_____

[1]    Apple abandoned the parties' efforts to meet and confer to reach mutual agreement over the reciprocal production of many of these requests.   Over the course of several weeks in November and December, the parties attempted to negotiate a narrowed scope of reciprocal production based on the parties' overlapping discovery requests.   (Chan Decl. ¶ 4.) Samsung's counsel invested hundreds of hours of attorney time into formulating a proposal that would resolve as many of the parties' discovery requests as possible—a proposal which Apple described as "thoughtful" and "useful."   (Chan Decl. ¶ 5.)   Apple, however, abandoned any negotiations toward a mutual agreement (*Id.*), and instead began a letter-writing campaign, expanding the scope of its broad requests and demanding in each letter that Samsung produce the full extent of such requests or else face a motion to compel.

therein."   (Chan Decl. ¶ 11.)   Then, over the holidays between December 24, 2011 and January 5, 2012, Apple's counsel sent nearly daily correspondence to repeat (and expand) the three topics described in its December 24, 2011, letter.   On January 3, 2012—only two days before the parties' scheduled lead counsel meet and confer conference—Apple demanded for the first time immediate production of what it describes in its current motion as "marketing, market research and advertising documents," "design-around" documents, and nearly all of the hodgepodge of document requests loosely described as "documents relevant to design patent, trademark and trade dress infringement."   (Chan Decl. ¶¶ 30-39.)

During the parties' lead counsel meet and confer conference on January 5, 2012, Apple admitted that it had not completed review of all of the documents or source code that Samsung had rushed to produce for Apple per its demands.   (Chan Decl. ¶ 6.)   The parties also discussed the fact that Apple's belated January 3, 2012, letter requests would require additional meet and confer after Samsung had the opportunity to consider and respond to such requests.   (Chan Decl. ¶ 30.) Nevertheless, Samsung engaged in a good faith effort to reach an agreement over the weekend regarding such requests, ultimately agreed to produce many of the categories demanded by Apple, and sent Apple correspondence on January 10, 2012, memorializing these agreements.   (*See* Chan Decl. Ex. 2.)   Apple filed its motion on January 11, 2012, anyway, including each and every one of its document demands, including those for which the parties had insufficient time to discuss.

    A.    Technical Documents

On December 22, 2011, the Court denied Apple's motion to compel technical documents for which the parties had not met and conferred in advance of court intervention.   (Dkt. No. 537.) On January 2, 2012, Apple's counsel sent correspondence regarding the categories of technical documents for which the Court required the parties to meet and confer in its December 22, 2011 Order.   The letter largely copied and pasted the language from 13 of the 14 requests for production.   (Chan Decl. ¶ 13.)

1    Apple ignored Samsung's request for a meet and confer on these technical documents.

2  (Chan Decl. ¶ 14.)    It was not until the morning of the parties' lead counsel meet and confer

3  conference that Apple began to suggest ways to narrow some these requests.    (Chan Decl. ¶ 15.)

4  Samsung's counsel resolved many of those requests in its letter to Apple's counsel on January 10,

5  2012; however, to date, Apple has not provided a meaningful response or opportunity to meet and

6  confer regarding Samsung's objections to the relevance of "all requests for quotations," "all

7  qualification documentation," "all functional testing results and testing criteria," and "all testing

8  data," which Apple demands in response to RFP No. 240.    (Chan Decl. ¶ 19.)    Instead, Apple

9  just went ahead and filed its motion.    Apple also has not met and conferred with Samsung

10  regarding RFP No. 193, which was not a subject of Apple's correspondence or the parties' lead

11  counsel meet and confer.    (Chan Decl. ¶ 20.)    Apple filed its motion anyway.

12    B.    <u>Design History Documents</u>

13    To date, the parties have exchanged discovery regarding the products at issue.    For the

14  first time on December 20, 2011, Apple massively expanded the scope of its demands, insisting

15  that Samsung produce all design documents regarding each and every phone, tablet or media

16  player Samsung has ever designed since the year 2000 – whether released or not.    More

17  specifically, Apple demanded "all sketchbooks (or similar hand drawings, however created,

18  stored, or archived)," "all CAD drawings (or other schematics that Samsung uses to design its

19  products)," and "all physical models" depicting designs for "any Samsung phone product, tablet

20  product, or touchscreen digital media player, regardless of where sold, whether for a final design

21  or an alternative design that was not commercially released."    (Chan Decl. ¶ 27.)    Apple gave

22  Samsung no basis for the purposed relevance of the mountain of documents it demanded.    (Chan

23  Decl. ¶ 26-29.)    The parties met and conferred regarding this request during the parties' lead

24  counsel meet and confer conference on January 5, 2012, but were not able to reach agreement.

25  (Chan Decl. ¶ 29.) Apple filed its motion anyway.

26

27

28

SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL

1      C.      <u>Financial Documents</u>

2      On December 19, 2011, Apple's counsel sent Samsung's counsel a letter requesting that

3 Samsung immediately produce documents that established Samsung's U.S. and worldwide

4 revenues, unit sales, and average selling price for the accused products.   (Chan Decl. ¶ 21.)

5 Apple's counsel stated in later correspondence that Apple was seeking immediate production of

6 "*only the most basic data on pricing and on sales in units and revenue* for the accused products"

7 (Chan Decl. ¶ 22. (emphasis added).)     However, on December 28, 2011, Apple's counsel sent

8 another letter, demanding that Samsung produce another *eight* broad categories of financial

9 documents.   (Chan Decl. ¶ 23.)

10      On January 10, 2012, after the parties had met and conferred regarding Apple's requests,

11 Samsung agreed to produce nearly every category of financial documents that Apple requested—

12 with a few exceptions for duplicative or non-existent information—by February 3, 2012.   (*See*

13 Chan Decl. Ex. 1.)   Apple filed its motion anyway.

14      D.      <u>Design-Around Documents</u>

15      On November 29, 2011, Apple requested documents relating to a "blue glow" functionality

16 that Apple believed was incorporated into Samsung's products as a design-around.   (Chan Decl.

17 ¶ 31.)   On January 3, 2012—two days before the parties' lead counsel meet and confer

18 conference—Apple broadened its demands, asking for the first time for immediate production of

19 not only the "blue glow" documents but "all documents" relating to any design-arounds or designs

20 that "can be used as an alternative" to Apple's asserted patents.   (Chan Decl. ¶ 32.)

21      Samsung agreed to produce any responsive, non-privileged documents relating to the "blue

22 glow" functionality by January 23, 2011.   (*See* Chan Decl. Ex. 1.)   However, the parties have

23 not had the opportunity to meet and confer regarding Apple's additional design-around requests.

24 (Chan Decl. ¶ 33.) Apple filed its motion anyway.

25      E.      <u>Marketing and Advertising Documents</u>

26      On January 3, 2012, Apple demanded for the first time that Samsung engage in meet and

27 confer regarding the production of broad categories of *all* marketing and advertising documents.

28

1   (Chan Decl. ¶ 38.)    During the parties' scheduled lead counsel meet and confer conference on

2   January 5, 2012, the parties did not discuss or meet and confer regarding narrowing these requests,

3   since Apple did not provide any relevance bases for such broad requests and Samsung's counsel

4   had not yet had the opportunity to confer with Samsung regarding such requests.    (Chan Decl. ¶

5   39.)

6          On January 10, 2012, Samsung agreed to produce nearly every category of advertising and

7   marketing documents that Apple requested, by January 31, 2012.    (*See* Chan Decl. Ex. 1.)

8   However, the parties still have yet to discuss Apple's request for drafts of each U.S.

9   advertisement; copies of advertisements that "target" or "evoke" Apple; any incentives Samsung

10  offers to retail outlets; and Samsung's per-month spending on advertising and marketing.    (Chan

11  Decl. ¶ 41.)    Apple filed its motion anyway, demanding both the documents Samsung had

12  already agreed to produce, as well as the documents on which the parties had not met and

13  conferred.

14          F.      Trademark and Trade Dress Infringement

15          For the first time on January 3, 2012, Apple requested that Samsung substantially complete

16  the production of a dozen broad categories of documents by January 23, 2012.    (Chan Decl. ¶

17  34.)    During the parties' lead counsel meet and confer conference on January 5, 2012, the parties

18  were unable to engage in a meaningful meet and confer regarding Apple's document requests.

19          On January 10, 2012, Samsung agreed to produce nearly every category of "trademark and

20  trade dress" documents that Apple requested, by February 3, 2012.    (*See* Chan Decl. Ex. 1.)

21  However, Samsung's counsel objected to Apple's request for documents relating to the GUI for

22  "all smartphones or tablet computers offered for sale by Samsung."    Moreover, the parties still

23  have yet to discuss Apple's demand for trademark, trade dress, and design patent search reports

24  relating to any element of Apple's asserted trade dress or asserted trademarks, including prior art

25  searches, although Samsung is confident that it can reach an agreement soon.    (Chan Decl. ¶ 37.)

26  Apple filed its motion anyway, demanding both the documents Samsung had already agreed to

27  produce, as well as the documents on which the parties had not met and conferred.

28

**II.      THE PARTIES' RESPECTIVE PRODUCTIONS AND DEPOSITIONS.**

To date, Samsung has produced over 622,000 pages of documents in this case from more than 55 different custodians, has made available over 50 of its inventors and employee designers or engineers for deposition, and has offered deposition dates for 37 individual Samsung witnesses that Apple has noticed.   (Chan Decl. ¶ 46.)   Although Apple repeatedly claimed that it needed these depositions urgently, Apple took more than two weeks to get back to Samsung and accept the deposition dates.   (Chan Decl. ¶ 45.)

To date, Apple has produced 870,000 pages of documents.   More than 600,000 pages of those documents are from a single custodian, comprised of hundreds of thousands of useless pages of unreadable code, blank pages, or useless thumbnails.   (*See* Chan Decl. ¶ 9-10.)   For example, at least five individual documents were over 14,000 pages each, with one item of code printed on each page.   Thus, Apple has only produced 250,000 pages of useable documents from all of its remaining custodians combined.   As of the date of Apple's motion, Apple had offered only a single deposition date for the 49 Apple non-inventor witnesses noticed by Samsung.   (Chan Decl. ¶ 47.)

**ARGUMENT**

**I.      SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE THE TECHNICAL DOCUMENTS.**

Although required by the Order to meet and confer regarding its remaining technical document requests, Apple did not do so.   It expressly refused to make non-lead counsel available to meet and confer, and instead just sent a letter shortly before the lead counsel meet and confer, in which it merely copied verbatim the text of its previous requests. (Chan Decl. ¶ 13.)   Apple ignored Samsung's articulated concerns about scope and relevance.   (Chan Decl. ¶ 19.)   Then, at 2:11 a.m. on the morning of the lead counsel meet and confer, Apple "narrowed" some of its requests by changing "all documents" to "documents sufficient to show."   (Chan Decl. ¶ 15.) Given the hour at which Apple sent this letter, however, Samsung's counsel was unable to consult with their client to evaluate the burden of Apple's new requests prior to the lead counsel meet and confer.   After doing so, however, Samsung in its January 10, 2012, letter, committed to

producing virtually all of the documents Apple requested.[2]   (Chan Decl. ¶ 17.)   Despite

Samsung's commitment—which Apple specifically represented would "avoid motion practice"—

Apple filed its motion anyway, and now seeks a court order compelling Samsung to produce what

it already has produced or agreed to produce.

Thus, Apple's claim that Samsung "rejected Apple's proposed compromise" is

categorically false.   Samsung has already produced[3]  or agreed to produce documents sufficient

to show the design, specifications, and manufacturing tolerances of the touchscreens, documents

relating to circuitry design of touchscreens, documents sufficient to show the arrangement of

elements used to construct touchscreens, bills of materials for the accused products' touchscreens,

and data sheets for the accused touchscreens (Chan Decl. ¶ 17.)—the very types of documents that

Apple claims "go[] to the heart of Apple's patent infringement claims."   (Mot. at 7.)

Furthermore, Samsung can agree to produce documents sufficient to show when relating to

version histories, updates, and changes made to the accused functionalities or features; however,

such information cannot be determined or gathered by Apple's arbitrary deadline.

Notwithstanding Apple's baseless assertion, this information is not "well-documented" at

Samsung.   Samsung will need to collect the information relating to the potentially hundreds of

versions, updates and/or changes made to the operating systems, software applications, and

---

[2]   Since Apple still has failed to engage in a meaningful meet and confer regarding two
requests (RFP Nos. 193, 240), those still remain to be discussed between the parties.   (Chan Decl.
¶¶ 19-20.)   Indeed, Apple does not provide any explanation of how "all requests for quotations"
and "all qualification documentation" and "all functional testing" data (Chan Decl. ¶ 19.) is
"narrowly tailored to Apple's allegations" or relevant to Apple's infringement claims.   (Mot. at
7.)

[3]   During the lead counsel meet and confer, Apple admitted that Samsung's previous
productions were in fact "sufficient to show" much of the information that is the subject of its
technical document requests.   (Chan Decl. ¶ 16.)   Apple merely complained about the "level of
detail."   (Id.)   Apple has refused to explain why the "level of detail" it seeks is necessary to
determine infringement of patents that disclose inventions in broad and generic terms, such as the
'607 Patent and the '828 Patent.
    Moreover, during meet and confer and in its motion to compel, Apple makes no attempt to
explain why Samsung's production to date is not "sufficient to show the operation of any aspects
or elements" charted by Apple in its infringement contentions, which is all that Patent Local Rule
3-4(a) requires.

1  touchscreen-related software in order to determine precisely when the accused functionalities were

2  incorporated into the accused products.    (Declaration of Hankil Kang ("Kang Decl.") ¶ 4-6)

3  Apple has acknowledged that its request is burdensome.    (*See* Chan Decl. ¶ 15.)    True to form,

4  however, rather than work with Samsung in order to minimize the burden of its requests, or permit

5  Samsung some additional time to gather the information, Apple just filed its motion.

6         Apple apparently sees no irony or hypocrisy in its request for an order compelling

7  Samsung to produce documents that Apple itself has improperly withheld "pending the entry of a

8  protective order."    Apple has not yet even completed production of source code relating to the

9  accused products—production which Samsung completed in December and which Apple was

10  required to make in October—much less peripheral (and marginally relevant) technical documents

11  like requests for quotations and functional testing results.    With no leg to stand on, Apple's

12  motion should be denied.    Samsung's agreement to produce these materials also moots Apple's

13  motion.    *See Tumbling v. Merced Irr. Dist.*, 262 F.R.D 509, 523 (E.D. Cal. 2009) (denying "as

14  moot" motions to compel documents that opposing party has already agreed to produce).

15  **II.    SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE ALL
        NON-PRIVILEGED DOCUMENTS THAT ARE RELEVANT TO SAMSUNG'S**
16      **ALLEGED EFFORTS TO DESIGN AROUND APPLE'S PATENTS**

17         Apple initially demanded that Samsung produce documents related to the alleged "blue

18  glow" design-around.    Samsung informed Apple that few, if any, non-privileged documents were

19  likely to exist, due to the fact that this effort was initiated in connection with Apple's litigation

20  against Samsung, but agreed to produce whatever non-privileged responsive documents it located.

21  (Chan Decl. ¶ 31.)

22         Then, for the first time on January 3, 2012, Apple demanded that Samsung produce all

23  documents relating to all of Samsung's design-arounds or non-infringing alternative designs that

24  "can be used as an alternative" to Apple's asserted patents.    (Chan Decl. ¶ 32.)    Again,

25  Samsung's position is no different – it will produce any non-privileged, responsive documents

26  regarding design-arounds in released products.    Samsung has agreed to produce these documents

27  on or before January 27, 2012.    Apple makes no attempt to explain why this date is insufficient

28

or how it would be prejudiced by the four-day difference.   Once again, no motion was necessary, but Apple filed anyway.   The motion should be denied as moot.   *See Tumbling*, 262 F.R.D   at 523.

## III.   DESPITE APPLE'S FAILURE TO MEET AND CONFER, SAMSUNG HAS AGREED TO PRODUCE DOCUMENTS RELATING TO ALLEGED TRADEMARK AND TRADE DRESS INFRINGEMENT AND ADVERTISING AND MARKETING.

There is nothing "specific" or "narrowed" about the broad-sweeping categories Apple seeks in its motion to compel relating to Apple's design patents, trademarks, and trade dress. Indeed, Apple's requests are so broad and vague that Apple makes no effort to tie any of its requests back to its 100+ page laundry list of requests for production.[4]   (*See* Mot. at 1-108.) And nearly every one of Apple's requests is copied verbatim from Apple's original requests. Apple's failure to meet and confer is evidenced by the fact that ***Apple first raised these requests only four days before it filed this motion***.   Plainly, Apple never sought to compromise on any one of its massive demands.

A.      Documents Relating to Products *Not* Accused In This Lawsuit

Apple first asked that Samsung agree to produce "documents related to trademark and trade dress issues" on January 3, 2012.   (Chan Decl. ¶ 34.)   As with its previous correspondence, Apple made only the most conclusory statements regarding why the documents it seeks are relevant.   For example, Apple fails to explain why documents related to "all GUI designs" and "all external hardware designs" for "all" or "any Samsung mobile phone product, tablet product or touchscreen digital media player"—***which includes thousands of products and designs that Apple has not accused in this lawsuit***—are in any way relevant to Apple's claims for trademark or trade dress infringement.   (Chan Decl. ¶ 26-29.)

In its Motion, Apple claims that the entire universe of Samsung's mobile products are vaguely "relevant to distinctiveness, functionality and Samsung's intent" (Mot. at 12), without

---

[4]   Apple cites more than 50 document requests that it claims relate to "this section" (Mot. at 10 n. 3; 14 n.5; 18 n.7)—many of those requests the parties have never discussed.

1   providing any concrete reason explaining how that could be, or why more narrowly tailored

2   discovery would not be sufficient.    Apple's argument that it needs all of these documents to fish

3   for evidence that at some point over the past 12 years Samsung considered third-party designs is

4   equally far-fetched.    (Mot. at 13.)    Clearly, a line must be drawn—the alternatives that a

5   designer considered when designing an accused product may be within the scope of permissible

6   discovery, but Apple's current demand for **all** documents relating to **all** Samsung phones, tablets

7   and media players ever made is not reasonable, let alone reasonably calculated to lead to the

8   discovery of admissible evidence or proportional to the benefit of such discovery under Rule

9   26(b).[5]    *See Kelora Systems, LLC v. Target Corp.*, 2011 WL 5444419 at *2 (N.D. Cal. Nov. 9,

10  2011) ("to make discovery manageable," denying discovery for instrumentalities not accused of

11  infringement); *Doubt v. NCR Corp.*, No. C 098-5917 SBA, 2011 WL 3740853 at *4 (N.D. Cal.

12  Aug. 25, 2011) (upholding magistrate judge's denial of motion to compel where requests were

13  "not limited in scope" and would require the party to search "almost all" documents "to and from

14  all employees" throughout the company "about the general topics" provided in the requests).

15      Thus, Apple's demands for the following broad categories of documents should be **denied**

16  since they concern products not accused in this case, and Apple's demands are not calculated to

17  lead to the discovery of relevant, admissible evidence:

18  - documents relating to the design and development of GUI designs and the external
    hardware design for *Samsung's smartphone and tablet products*;

19

20  - documents relating to the design and development of the earphone or speaker slot design
    for *all mobile phone products offered for sale by Samsung*;

21  - sketchbooks, CAD drawings (or other schematics used by Samsung in designing its
    products), and physical models depicting designs created on or after January 1, 2000, that

22

23  _____

24      [5]   Apple incredulously claims that because Samsung has produced documents and things
    related to non-accused devices, such as the F700, *all* non-accused devices should be open to

25  discovery.    (Mot. at 13.)    Yet only weeks ago, Apple's counsel flatly rejected the theory that
    production of documents concedes relevance; Apple also has represented that its responses to

26  document requests "are made without waiver and with the preservation of all issues as to the . . .
    relevancy . . . and the subject matter thereof for any purpose."    (Chan Decl. ¶ 54)    Apple must

27  play by these same rules.

28

depict designs for any Samsung mobile phone product, tablet product, or touchscreen digital media player;

- minutes, notes, specifications, or requirements communicated to the designers, project management reports, and reports to executives relating to the external hardware design or the GUI for all Samsung smartphones or tablet computers.

B.    Documents Relating to Trademark and Trade Dress Issues

Despite the mere four business days Apple gave Samsung to confer with its client to determine whether it would agree to Apple's broad demands, on January 10 Samsung was able to commit to producing documents responsive to the categories Apple had demanded, including:

- e-mails and documents from employees responsible for the design, development or marketing of the Samsung accused products discussing actual or possible consumer confusion with Apple's products,

- documents discussing or assessing the design of Apple's products.

- e-mails and documents from the relevant designers and developers relating to the design and development of the accused GUI designs for the products at issue.

- documents sufficient to show internal designations used to refer to each of Samsung's products at issue

- documents sufficient to show the identity and title of those who developed the hardware design and the GUI design for the products at issue.

- one sample of each of Apple's products that are in its possession, custody or control

- one sample of each Samsung accused product (with accompanying end user documentation).   (Chan Decl. Exs. 1-2)

Again, Apple's motion was unnecessary and should be denied as moot.[6]

C.    Samsung's Marketing and Advertising Documents

As with Apple's trademark and trade dress requests, Apple's first effort to meet and confer regarding any of its advertising and marketing document requests came two days before the

_____

[6]    Since the parties had not yet the opportunity to meet and confer on the issue, Samsung could not agree to produce trademark, trade dress, and design patent search reports relating to any element of Apple's asserted trade dress or asserted trademarks, pending additional meet and confer.

parties' lead counsel meet and confer conference.   (Chan Decl. ¶ 38.)   The parties have had no

opportunity to discuss the scope of these requests, nor has Apple agreed to narrow these requests.

Indeed, Apple's motion to compel is the *first* time Samsung has ever heard any of Apple's

explanations regarding its bases for demanding such documents.

Nevertheless, Samsung has agreed to produce, to the extent not already produced,

documents responsive to the following requests:

- copies of all U.S. advertisements that mention Apple;[7]  however, the parties have not yet had the opportunity to meet and confer regarding what advertisements would "target or evoke Apple or its products."

- documents sufficient to show U.S. retail outlets for Samsung products;

- U.S. markets and media outlets where Samsung products are advertised;

- scripts or sales points given to U.S. retail outlets for Samsung products;

- documents sufficient to show demographics of likely or targeted customers for each of the Samsung products at issue;

- U.S. product placements for Samsung phone or tablet products;

- U.S. or global media plans relating to the accused products; copies of all U.S. advertisements for Samsung accused products; and

- documents sufficient to show the number of times an online advertisement for an accused product has been clicked on by a user, as well as Samsung tracking efforts for such advertisements.   (Chan Decl. Ex. 1)

Thus, these Apple requests are moot.   Further, Apple's requests for the following

categories of documents should be **denied** for failure to meet and confer:

- marketing, market analysis, and advertising strategy documents relating to the Apple or Samsung Products at Issue (pending further meet and confer);

- drafts of U.S. advertisements for Samsung Products at Issue (since Apple has not demonstrated how drafts are relevant);

---

[7]   Samsung does not agree that advertisements would support Apple's contrived argument that Samsung is a "copier," and Apple has given no other reason why *all* advertisements mentioning Apple would be relevant.   However, Samsung has agreed to search for and produce such advertisements in the interests of compromise.

- copies of all advertisements for all Samsung products that "target or evoke" Apple or its products (pending the parties' meet and confer on such issues);

- documents reflecting any foreign retail outlets and scripts or sales points for Samsung's Products at Issue, and any incentives that Samsung offers in connection with the sale of Samsung's Products at Issue.

D.     The Television Survey Rumor on Amazon.Com

Finally, the Court should deny Apple's request relating to the survey purportedly sent to Samsung purchasers regarding Apple products.   (Mot. at 17.)   Again, Apple's brief and accompanying declaration omits key facts relating to its document request.

First, Apple never mentions that the survey it seeks—if such survey was ever sent at all— was purportedly a survey sent to a Samsung *television* consumer.   Such survey was referenced in an internet comment by a purported Amazon.com user commenting on Samsung's UN46D8000 46-Inch LED *HDTV product*—a television product that is neither accused in this lawsuit nor part of a product line that is accused in this lawsuit.[8]   (Chan Decl. ¶¶ 42-44.)   Apple has not accused Samsung of infringement, purported copying, or *anything* related to *televisions*.   Apple's request for "any other similar surveys" allegedly conducted by Samsung's other product divisions is plainly overly broad, irrelevant, unduly burdensome and harassing.

Second, it must be noted that as of the parties' lead counsel meet and confer conference, Apple's counsel admitted that Apple *had not yet completed its review of Samsung's survey production*.   (Chan Decl. ¶ 6.)     Thus, Apple cannot even be sure that the survey it seeks has not been produced.   Apple complains for sanctions, yet it is **Apple** who should be sanctioned for bringing a motion before it has even reviewed the tens of thousands of survey documents Samsung

_____

[8]   Contrary to Apple's assertions in its motion, (Mot. at 17), Samsung was not ordered in the Court's September 28, 2011 Order to search for and produce surveys not in the relevant custodial files for the products accused in this lawsuit, or concerning completely unrelated product lines such as televisions.   (*See* Dkt. No. 267.)

already has produced to confirm that any survey documents actually are missing.   Apple's motion to compel these specific "surveys," (Mot. at 15), should be denied on all of these grounds.

## IV.   SAMSUNG HAS ALREADY PRODUCED OR AGREED TO PRODUCE ALL OF THE FINANCIAL INFORMATION THAT APPLE REQUESTS.

Apple again omits in its moving papers that Samsung already has agreed to produce the financial information Apple has requested, by February 3, 2012.   (Chan Decl. ¶ 24.)   More specifically, Samsung has already agreed to produce:

- U.S. (and where the same products are sold elsewhere, worldwide) units from the time of the product's release or first sale to 2011 for the accused products;

- U.S. (and where the same products are sold elsewhere, worldwide) revenue from the time of the product's release or first sale to 2011 for the accused products;

- documents showing cost of goods sold, operating expenses, and profitability for the accused products;

- non-public audited financial reports from each of the Samsung defendant entities;

- documents sufficient to show the date each accused product became available to U.S. markets (at least for accused products that were actually sold or offered for sale in the U.S.),

- and any non-privileged IP valuations for the patents-in-suit.   (*Id.*)

Given that expert reports are not due for another two months, Apple will suffer no prejudice if Samsung substantially completes production by Samsung's proposed date of February 3, rather than Apple's arbitrary January 23, 2012 deadline.[9]

Apple needlessly spends nearly four pages responding to objections that Samsung has never made.   Samsung has never sought to limit its production to information specifically or artificially tied to an accused product; Samsung has merely sought to provide Apple with

---

[9]   In consecutive sentences, Apple accuses Samsung of withholding financial information, and then admits that Samsung has produced enough financial information for Apple to determine the details of Samsung's allocation of expenses, deductions and profits.   (Mot. at 20.)   Apple's statements that the information Samsung has produced to date is incomplete are completely beside the point, given that Samsung has never represented that its production of financial documents is complete.   Samsung has no intention of withholding relevant financial information, and that production has already commenced.

1  sufficient information to calculate damages (if any) relating to the accused products sold in the

2  U.S.—the only damages that Apple can recover in this action.   *See, e.g.*, *Microsoft Corp. v.*

3  *AT&T Corp.*, 550 U.S. 437, 441 (2007).   Nor has Samsung done anything to suggest that it need

4  only produce documents maintained in printed form—and it is comical for Apple to state that

5  Samsung has made such a claim.   Instead, Samsung has merely stated that it is under no

6  obligation to create work product or generate information, make profits calculations, or organize

7  data that it does not maintain in the ordinary course of its business. Again, Apple's motion is

8  moot.

9
10 **V.      APPLE'S SCORCHED-EARTH LITIGATION TACTICS SHOULD BE CURBED
         WITH A DENIAL OF ITS MOTION AS MOOT AND MERITLESS.**

11       As the discussion above and Apple's prior motions demonstrate, Apple has flouted the

12 rules of this Court and the Federal Rules that require a movant to meet and confer in *good faith*

13 before filing its motion.   Apple also has wasted this Court's time in raising issues about which

14 there is no real controversy for the Court to resolve.   Apple is not meaningfully participating in

15 meet and confer conferences to clarify positions, focus the disputed issues, and avoid unnecessary

16 motions on agreed issues so as to conserve the Court's resources.   Instead, no matter what

17 Samsung produces and no matter what Samsung agrees to produce, Apple files incredibly broad

18 and vague motions to compel anyway—providing the Court with no distinctions between what

19 was discussed and what wasn't, or what is disputed and what has been resolved.   Apple also

20 submits kitchen-sink-style proposed orders that bear little resemblance to the arguments it makes

21 in its motion.   The effect of such tactics is to force Samsung to weed through Apple's motions

22 and explain to the Court what is in Column A and what is in Column B.   Apple's modus

23 operandi—every step followed to a T leading up to this motion—is as follows:

24   •   Apple propound hundreds of extremely broad and unduly burdensome discovery requests
         calling for millions of documents having little or only remote relevance to its claims;
25
26   •   Apple copies and pastes the text of those requests into "meet and confer" correspondence,
         and demand immediate production by an arbitrary deadline while threatening a motion to
27       compel;

28
                                             -15-                    Case No. 11-cv-01846-LHK
                            SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL

- Apple refuses to meet and confer in good faith to negotiate a reasonable scope of document production, or to explain the relevance of its demands except in general, vague terms;

- Apple refuses to agree to produce any of the same types of documents by the same deadline;

- After Samsung makes the commitment it seeks, Apple moves the goalposts and demands that Samsung immediately agree to produce more;

- After Samsung commits to producing more, Apple files a motion to compel anyway, asking the Court to compel Samsung to produce what it has already agreed to produce; and then finally,

- Apple throws the kitchen sink into its motion to compel and proposed order, sneaking in dozens of categories of the documents for which the parties have not yet met and conferred.

Apple's "Death by Discovery" tactics show no signs of letting up.    To the contrary, it is clear that Apple has yet another omnibus motion on the horizon.    Just last week, Apple insisted that Samsung make its lead counsel available over a holiday weekend to discuss two purportedly urgent deposition-related issues. (Chan Decl. ¶ 52.)    Samsung complied, and the conference was set for Martin Luther King Day, January 16.    (*Id.*)    Then, on the eve of the conference, Apple sent further correspondence demanding that Samsung agree to discuss 32 new agenda items at the conference, about which the parties have not yet properly begun to talk and vet in advance so that a meaningful meet and confer could even be held.    (Chan Decl. ¶ 53.)    Apple demanded immediate production of these items or it would seek court relief after the lead counsel meet and confer conference.    (*Id.*)    Apple's attempts to ambush Samsung with new discovery demands at lead counsel meet and confer sessions lays plain its intentions to merely give lip service to its meet and confer obligations, rather than engage in those discussions in good faith.    Samsung does not doubt that it will be receiving Apple's next baseless motion any day now—which undoubtedly will waste yet more of this Court's scarce judicial resources.

Finally, Apple's claims of looming depositions or the coming of the close of discovery do not excuse these tactics.    Indeed, Apple's feigned cries of urgency are belied by its behavior outside the courtroom.    Apple previously told this Court that it had already been prejudiced by

the purported delay in the production of the documents subject to its prior motion to compel, and that it needed to receive *all* of those documents "*now*."   (*See* Dkt. No. 565, at 5.)    It was on this basis that Apple refused to grant Samsung a courtesy extension over the winter holidays to complete its court-ordered production.    Samsung was then forced to engage in herculean efforts to expedite its production over the holidays.    On the first court-ordered deadline, December 31, 2011, Samsung made good and produced for inspection its source code, CAD files and mockups. Apple refused to send someone to inspect, claiming that it had insufficient notice that these materials were to be produced that day. (Chan Decl. ¶ 50.)    Apple then waited three full days before sending someone to inspect Samsung's source code—days that Samsung could have spent producing these materials without ruining everyone's holidays, had Apple been candid about the lack of urgency.    (*Id.*)    Similarly, as of the parties' January 5, 2012 lead counsel meet and confer, Apple's counsel admitted that they had not yet completed their review of the source code or documents Samsung had produced nearly a week before—again, despite their representations to this Court that they simply could not wait another day for these materials.    (Chan Decl. ¶ 6.) Even as of the date of Apple's motion to compel, Apple has made no representation that it has completed its review of Samsung's production before racing to the courthouse.

Apple's blatant disrespect for the meet and confer rules should not be sanctioned by this Court, and its "Death by Discovery" litigation strategy should be squelched.

**CONCLUSION**

For the foregoing reasons, the Court should DENY Apple's Motion to Compel.

DATED:                                  QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By _/s/ Rachel H. Kassabian_____
                                           Charles K. Verhoeven
                                           Kevin P.B. Johnson
                                           Victoria F. Maroulis
                                           Michael T. Zeller
                                           Rachel Herrick Kassabian
                                           Attorneys for SAMSUNG ELECTRONICS CO.,
                                           LTD., SAMSUNG ELECTRONICS AMERICA,
                                           INC., and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC