QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL**<br><br>Date:     January 19, 2012<br>Time:     10:00 a.m.<br>Place:    Courtroom 5, 4th Floor<br>Judge:    Honorable Paul S. Grewal<br><br>SUBMITTED UNDER SEAL<br>CONTAINS CONFIDENTIAL INFORMATION |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

I. APPLE'S DEMANDS REGARDING SAMSUNG'S INVENTOR DOCUMENT PRODUCTION ARE UNREASONABLE AND UNNECESSARY. ................................ 1

    A. Samsung's Inventor Searches Were Reasonable and Comprehensive ...................... 1

    B. Apple's Proposed Search Terms are Irrelevant, Overbroad and Duplicative. .......... 4

    C. Apple Mischaracterizes the Testimony of Samsung's Inventors ............................... 7

II. APPLE'S REQUESTS FOR "ALL" ETSI AND 3GPP DOCUMENTS ARE HOPELESSLY OVERBROAD AND UNDULY BURDENSOME. .................................. 9

    A. Apple's Requests for All Documents Related to Samsung's Participation in ETSI and/or 3GPP Amount to an Enormous Fishing Expedition. ......................... 10

    B. Samsung Has Already Agreed to Produce Documents Relevant to Apple's Defenses and Counterclaims. ................................................................................ 10

    C. To the Extent that Apple Seeks Documents Beyond What Samsung Has Agreed to Produce, Its Motion to Compel Should be Denied. ................................ 11

    D. Apple's Demands Make a Mockery of the Proportionality Requirement ............... 14

III. APPLE'S REQUESTS FOR LICENSES AND NEGOTIATION DOCUMENTS FAR EXCEED THE RELEVANT SCOPE OF DISCOVERY ......................................... 15

CONCLUSION ....................................................................................................................... 17

# INTRODUCTION

In this latest installment of Apple's "Death by Discovery" litigation plan, Apple seeks a veritable ocean of documents when it is entitled to no more than a few droplets. First, Apple insists that Samsung run over 100 newly-identified search terms in its inventors' custodial files, despite the fact that those terms are overly broad, unfocused, and wholly unnecessary. Second, Apple demands that Samsung produce every single document related to Samsung's more than decade-long participation in several standard-setting organizations ("SSOs") and working groups—despite the fact that the vast majority of the standards, specifications and technologies involved have absolutely nothing to do with this case. And finally, Apple urges that Samsung produce every single license agreement and all related negotiation documents for each of the 3,500+ Samsung patents that have been declared essential to any ETSI or 3GPP standard – despite the fact that very few of those agreements have any bearing on the technology or patents at issue.

Samsung has already agreed to produce the sliver of documents within these categories that are arguably relevant. The remaining documents – which would include things like standards documents related to broadcasting, and license agreements related to television technology -- have no bearing whatsoever on this case. Apple's motion is a model of overreaching, and should be denied in its entirety.

# ARGUMENT

## I. APPLE'S DEMANDS REGARDING SAMSUNG'S INVENTOR DOCUMENT PRODUCTION ARE UNREASONABLE AND UNNECESSARY.

Apple claims that Samsung's search terms for its inventor custodial files were deficient, and that these searches were done without attorney supervision. Apple is wrong on both counts, and its attempts to saddle Samsung with pointless and costly busywork should be rejected.

### A. Samsung's Inventor Searches Were Reasonable and Comprehensive.

In its motion, Apple grossly – and misleadingly – mischaracterizes Samsung's inventor-related document production. In truth, Samsung has produced over 122,000 pages of documents -- enough to fill fifty bankers' boxes -- from the custodial files of seventeen inventors of the

Samsung patents-in-suit.   (Declaration of Melissa N. Chan ("Chan Decl.") at ¶ 7.)   This averages to more than 7,000 pages (or more than three bankers' boxes) per witness.   (*Id.*) Samsung also produced source code, documents from Samsung's central files, and documents from other litigation, all relating to the patents-in-suit.   (*Id.*)   In short, Apple's claim that "very few responsive documents" were produced by Samsung is a fiction.

***Samsung's Collection Methodology***.   Contrary to Apple's accusations, in-house and outside counsel for Samsung were deeply involved throughout the inventor document collection process.   (*Id.* at ¶ 6.)   Counsel for Samsung interfaced with each inventor on multiple occasions, guiding the inventors in identifying where relevant documents might be located, and then searching those locations—including checking for external or shared drives, home computers, personal email accounts, as well as any source code or hard copies of documents that were kept. (Declaration of Rosa Kim ("Kim Decl.") ¶¶ 22-23.)   All documents and things related to the invention as disclosed in the patent at issue were collected and reviewed for production.   (*Id.*)

While Samsung expected that virtually all relevant documents would have been found through this painstaking process, Samsung nonetheless then took the additional step of running search terms on the inventors' computers and email accounts in order to make sure that no relevant documents were overlooked in the primary document collection.   Under the direction of and in conjunction with counsel, the inventors conducted the keyword searches, or in some instances, key word searches were conducted in the inventors' presence.   (*Id.* at ¶ 24.)   These search terms were applied to the inventors' entire hard drives, including email.   (*Id.*)   To the extent any inventors searched their own files or computers, it was done under the supervision of counsel. (*Id.*)   Finally, after the inventors' documents were collected and reviewed, outside counsel met with each inventor personally, to ensure that the search protocol had been properly executed.[1] (Chan Decl. ¶ 6.)

---

[1] Although Samsung's searches yielded robust results, no documents were located in the custodial files of fifteen inventors.   For instance, ten inventors are no longer employed by Samsung and had not retained documents relating to their work on the patents-in-suit.   (Kim (footnote continued)

1    ***Samsung's Chosen Search Terms***.    Over the course of several weeks, Samsung's in-house and outside counsel worked together to determine the appropriate search terms that would capture relevant documents without pulling every document in each of these inventors' files.[2]   A team of Quinn Emanuel attorneys generated an initial list of relevant search terms, and those terms were revised, supplemented and refined in collaboration with in house counsel and the inventors themselves.   (*Id.*)   Ultimately, a comprehensive search strategy—one that would return all relevant and responsive documents while minimizing false positives—was developed.   This is the very same search term methodology that Apple itself claims to use.   (Chan Decl. Ex. 2)

In sum, Samsung has more than met its discovery obligations on this issue, and nothing more should be required.   *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (a party may use "defined search strategies," and need not "examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations.   Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy").   Despite having deposed Samsung's inventors with more than 100,000 pages of relevant documents in hand, Apple has not identified any specific documents missing from Samsung's production relating to the conception and reduction to practice of the asserted claims or

---

Decl., ¶ 28)   Indeed, Samsung has been unable to locate seven of these former employee-inventors, none of whom were deposed in this action.   (Kim Decl. ¶ 28)   With respect to inventors who are still employed at Samsung, some of these individuals did not retain relevant documents due to the length of time that has passed since they worked on the patented inventions, as well as the fact that several of them have switched to new groups and departments over the many intervening years.   (*Id.* at ¶ 30-35.)   This is not surprising, given that the relevant inventive activity occurred anywhere from five to fifteen years ago.   Compelling Samsung to repeat its searches would do nothing to overcome these realities.

  [2]   The use of search terms in e-discovery is a widely accepted practice.   *See, e.g.* The Sedona Principles, Best Practices Recommendations & Principles for Addressing Electronic Document Production at 11 (2003) ("A responding party may properly access and identify potentially responsive electronic data and documents by using reasonable selection criteria, such as search terms or samples.").

to potential inequitable conduct claims.[3]   Samsung has repeatedly detailed its search process to Apple in correspondence and in meet and confer discussions.   Inexplicably, Apple filed its motion to compel anyway.

### B.  Apple's Proposed Search Terms are Irrelevant, Overbroad and Duplicative.

In a transparent attempt to play Monday morning quarterback, Apple proposes an entirely new set of more than 100 overbroad and unnecessary search terms, and demands that Samsung be ordered to (1) run them on its dozens of inventor files, (2) review them all and (3) produce resulting responsive documents, all in the space of just *four days*.   Aside from the sheer impossibility of Apple's demand – not to mention the fact that Apple's proposed deadline falls on what Apple knows is the Lunar New Year, a major Korean holiday -- it is also completely unnecessary because any relevant documents retrieved by Apple's proposed terms would already have been collected through the search process outlined above.   Apple's overreaching and harassing discovery demands should be given short shrift.

#### 1. Apple's "Patent-Specific" Search Terms are Overbroad and Unnecessary

Apple's proposed list of search terms contains terms that are so broad and generic as to defeat the purpose of utilizing search terms in the first place.   One can only imagine the number of email files retrieved by a search using terms like "email," "attach*" or "enclose*," as Apple proposes for the '460 patent.   Similarly, terms such as "cell* phone," "mobile phone," "mobile device," "music," "MP3," "mode," and "camera" are likely to yield hundreds of thousands of documents, few of which will be related to the precise technologies disclosed in the Samsung patents-in-suit.

Lest it be accused of speculating, Samsung ran some sample searches on the documents of the inventors of the '941 patent, to illustrate this point.   The terms that Apple proposes for the

---

[3]  To the extent any of the inventors participated in standards setting organizations, Samsung has already agreed to supplement its production of documents in certain relevant respects relating to the participation of Samsung and its inventors in the relevant standards bodies.

'941 Patent retrieved **17,085 out of 63,566 total files** from the hard drives of the '941 Patent inventors, and **207,260 out of 609,607 total emails** from their email accounts.[4] (Chan Decl. ¶¶ 12-13) Thus, through its ill-contrived search terms, Apple demands that Samsung review one out of every four files stored on these individuals' hard drives, and every third email they sent during the relevant time period. This is unacceptable. *Cf. DCG Sys. Inc. v. Checkpoint Tech., LLC*, C-11-03792, 2011 WL 5244356 (N.D. Cal. Nov. 2, 2011) (discussing the need "to impose reasonable restrictions on the timing and scope" of electronic discovery in patent cases involving competitors.) Such hopelessly overbroad search terms defeat the very purpose of using search terms in the first place; Apple might as well just demand that Samsung manually review the inventors' entire hard drives.

Given the number of hits on Apple's proposed search terms, reviewing and producing them would be oppressively burdensome. Even if counsel for Samsung could competently review one document per minute (a lofty aspiration), a first-level review of just these two '941 inventors' 200,000+ email hits would take roughly 3,500 attorney hours. Assuming these results are typical of what would be retrieved from the other inventors for whom custodial files are available, Samsung estimates that Apple's requested searches would take approximately 25,000 attorney hours to complete. Thus, a staff of fifty document reviewers, working 50 hours per week, would need ten weeks just to complete review of the additional emails (not even counting non-email documents) retrieved by Apple's overbroad and unnecessary terms. Samsung would have to hire several hundred new attorneys immediately to even have a fighting chance at meeting Apple's absurd January 23, 2012 Lunar New Year deadline.[5]

---

[4] At the parties' January 5, 2012 lead counsel meet and confer conference, Apple stated that it refused to review or produce the search results for "Android" since the search term resulted in hundreds of thousands of hits. (Chan Decl. ¶ 15)

[5] Samsung further confirmed the impropriety of Apple's overbroad search terms by reviewing a random sample of 100 documents retrieved from this search, and found that not one document was relevant to the invention disclosed in the '941 Patent. (Chan Decl. ¶ 13.)

This is a textbook example of overreaching.  Apple is trying to generate useless, time consuming and expensive busywork to prevent Samsung from effectively defending itself in this case or prosecuting its counterclaims.  Having failed to point to even a single missing document in Samsung's inventor productions, the burden to Samsung generated by this oppressive demand far outweighs any speculative or theoretical benefit to Apple.

2. **As Apple Knows, Samsung was Unable to Produce Documents From the Files of The '055 Patent and '871 Patent Inventors, Because Samsung Could Not Locate the Inventors Themselves.**

Samsung has been unable to locate Hye-Young Lee ('055 Patent inventor) and Pyung-Soo Kim ('871 Patent inventor).  (Kim Decl. ¶¶ 28-29.)  These individuals are no longer employed by Samsung, and have not been deposed in this action.  (*Id.*)  Although Samsung has produced some documents from its central files relating to the subject matter of these patents (*see id.* at ¶ 29), Samsung's policy is to limit the information stored in central files, as numerous witnesses testified.  (Chan Decl. Ex. 7 at 81:11-15; Ex. 9 at 72:5-8.)  Samsung's investigation thus far has not identified any additional repositories that would contain documents relevant to the '055 Patent and the '871 Patent, which were filed 13 years ago and 8 years ago, respectively.  Samsung's investigation is ongoing, however, and Samsung will produce all relevant and responsive documents in its possession, custody or control relating to these patents.

3. **Samsung's Searches Using Korean Search Terms Was Adequate**

In other contexts, Apple complains about the volume of Korean language documents produced by Samsung.  (Dkt. No. 613 at 2.)  In its latest motion, however, Apple does an about-face and claims that Samsung somehow excluded Korean-language documents from its production.  (*See* Mot. to Compel at 8.)  Samsung translated search terms into Korean when counsel, after consulting with inventors, identified terms with Korean equivalents that inventors were likely to use.  (Kim Decl. ¶ 24.)  As a general matter, however, most of the relevant technical terms did not have commonly used Korean-language equivalents, particularly because all ETSI- and 3GPP-related communications are in English.  (*Id.*)

    4. Samsung's Searches Using SSO-Related Search Terms Was Adequate.

Samsung's search terms relating to declared-essential technology were likely to capture all documents relevant to the inventors' involvement with standards bodies relating to the patents-in-suit. As Apple concedes, Samsung's search resulted in a substantial number of SSO-related documents produced from its inventors' files. (Mot. to Compel at 12.) Searching for SSO-specific search terms, as Apple proposes, generated an inordinate number of false positives, including documents authored by other entities relating to technology that is far afield from the inventions disclosed in the patents-in-suit. In any event, Samsung has already agreed to supplement its production of documents relating to the inventors' participation in SSOs, thus mooting Apple's request.

  **C.** **Apple Mischaracterizes the Testimony of Samsung's Inventors**

Apple attempts to cobble together a handful of vague comments from the deposition of just five inventors (out of 24 deposed in this action) in order to support its contention that Samsung failed to adequately direct or supervise its inventors' searches. Not one inventor testified that counsel was absent during these searches; instead, the inventors testified that along with counsel, they themselves were heavily involved in the search process because they also knew the relevant terms or documents to look for.

- Dr. Cho conducted a search under the supervision of counsel pursuant to the protocol described in Section I.A above—applying search terms to his laptop and providing all of the search results to legal counsel. (Chan Decl., Ex. 7 at 84:11-85:14.) This search led to the production of 174 documents totaling 11,842 pages. (Chan Decl. ¶ 20) Apple takes issue with the fact that Dr. Cho, before being approached by outside counsel, conducted an additional search (at the request of an engineer) that only yielded one document. (Chan Decl., Ex. 7 at 83:11-20.) The sufficiency of this additional search has no bearing whatsoever on the completeness of the search conducted under the direction of outside counsel.

- Dr. Yoon, after being interviewed for the second time by outside counsel consistently with the protocol described in Section I.A, ran another search in order to make sure that all relevant emails were provided to outside counsel. (Chan Decl. Ex. 8 at 60:25-62:1.) None of these emails predated the issuance date of the '792 Patent, a date restriction that both Apple and Samsung have applied to all utility patent inventor searches.

- Dr. Lee searched his hard drive and emails, but did not retain documents in hardcopy form, nor did he store documents on a central server. (Chan Decl., Ex. 9 at 72:5-73:7). Apple apparently objects to Dr. Lee's testimony that due to what he believed to be a "technical glitch," his initial search may not have returned all relevant emails—a fact that was not apparent to the in-house legal counsel supervising Dr. Lee's search. (Id. at 156:2-5). The fact that this defect was discovered and remedied by outside counsel refutes Apple's contention that Samsung relied on its inventors to conduct "self-searches." As a result of Samsung's search Dr. Lee's files, 662 documents totaling 9,420 pages were produced to Apple. (Chan Decl. ¶ 22)

- Apple's assertion that Mr. Van Lieshout "was asked to conduct self-guided searches" unfairly takes advantage of the fact that Mr. Van Lieshout was specifically instructed not to disclose "any communications with Samsung attorneys about how to conduct the searches," and to limit his testimony to "whether or not [he] conducted a search" and "what locations [he] searched." (Chan Decl. Ex. 10 at 109:13-21.) Mr. Van Lieshout's search followed the protocol described above, and Samsung's outside counsel flew to the Netherlands in order to be present during the search and collect Mr. Van Lieshout's documents. (Id. at 111:1-3)   As a result of Samsung's search Mr. Lieshout's files, 112 documents totaling 19,913 pages were produced to Apple. (Chan Decl. ¶ 23)

- Apple spent less than two minutes questioning Mr. Oh about how his documents were searched, and most of this time was spent on translation issues. (Chan Decl. Ex. 11 at 17:17-18:15.)   Apple's description of Mr. Oh's "self-search" rests solely on the fact that, in addition to running the keyword searches provided to him by counsel, he continued his search by "sifting through" documents stored on his hard drive.

Apple fails to cite even one case holding that inventors are prohibited from being involved in the formulation of the search strategy for their files, or that inventors cannot be involved in the search of their files or computers pursuant to counsel's direction. Nor does any case say that inventors are not permitted to search for relevant documents on their own, so long as such searches are reviewed and verified for sufficiency. Moreover, on closer read of the several of the cases cited in Apple's motion, not one is applicable to the facts of this case. For example, in *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769, 2011 WL 2292326 (W.D. Wash. June 8, 2011), the plaintiff's counsel produced 360 bankers' boxes of documents without making any effort to narrow the documents to those that were responsive to defendant's requests, and thus the Court found that counsel had failed "to assist and guide his client's production of discovery responses." Id. at *2, *6. Here, by contrast, Samsung has done the opposite: Samsung has gone the extra mile to ensure that its production identified the documents that were responsive to

Apple's requests, and Samsung's counsel worked with inventors to determine the appropriate search terms, guided inventors through the searches in custodial interviews, and were personally present to quality-check the results.

Nor did Samsung rely on inventors to make their own, independent decisions about the relevance of documents, or to "turn over whatever documents they thought were responsive, without verifying that the searches were sufficient." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. 2006). In *Wachtel*, the paralegal asked specific individuals for specified documents, but then did not follow up with them to see if they had further responsive documents; moreover, the paralegal did not attempt to identify other locations for responsive documents. *Id.* at 92. Unlike *Wachtel*, Samsung not only interviewed its inventors, but also supervised the collection of documents returned by keyword searches, and then reviewed those results to verify that all potentially relevant and responsive documents were searched. For these same reasons, Apple's reliance on *Jones v. Bremen High School District 228*, No. 08 C 3548, 2010 WL 2106640 (N.D. Ill. May 25, 2010), is also misplaced; unlike *Jones*, where defendant failed to place a litigation hold on its employees' email, Samsung has issued multiple litigation holds—and Apple has not contested these holds—and Samsung's counsel actively assisted its inventors in the search for relevant documents.

## II. APPLE'S REQUESTS FOR "ALL" ETSI AND 3GPP DOCUMENTS ARE HOPELESSLY OVERBROAD AND UNDULY BURDENSOME.

Apple's demand that Samsung produce "entire categories of documents" related to Samsung's more than decade-long participation in the European Telecommunications Standards Institute ("ETSI") and the 3rd Generation Partnership Project ("3GPP"), encompasses documents that have nothing to do with Apple's defenses or counterclaims – or even smartphones or tablets, for that matter. ( Mot. to Compel at 12.)   As detailed below, Samsung agrees to produce a narrower subset of documents that are relevant to this litigation, thus mooting Apple's motion. As the remaining documents requested by Apple are not relevant and would be crushingly burdensome to produce, its motion to compel these documents should be denied.

### A. Apple's Requests for All Documents Related to Samsung's Participation in ETSI and/or 3GPP Amount to an Enormous Fishing Expedition.

Apple ties its document requests relating to Samsung's participation in ETSI and 3GPP to its unenforceability defense and antitrust, unfair competition, and contract counterclaims. (Mot. to Compel at 9-10.) Apple alleges that Samsung has declared seven of the patents-in-suit essential to certain specifications of the UMTS standard adopted by ETSI, but has violated antitrust and unfair competition laws by untimely disclosing the patents and failing to offer Apple a license to the patents on FRAND terms. (Am. Counterclaims at ¶¶ 77-86.) Similarly, Apple's unenforceability defense and contract counterclaims are based on the contention that, due to this alleged commitment to license these patents on FRAND terms, Samsung's lawsuit breaches a license or an irrevocable right to license these patents to Apple. (Am. Counterclaims at ¶¶ 180-182.) Thus, Apple's counterclaims are limited to Samsung's conduct with respect to particular standards-essential patents relevant to just a few specifications of the UMTS standard.[6] Yet Apple's motion seeks much, much more.

### B. Samsung Has Already Agreed to Produce Documents Relevant to Apple's Defenses and Counterclaims.

Samsung has agreed to produce documents relevant to Apple's defenses and counterclaims. These documents are necessarily limited to the relevant specifications of the

---

[6] Apple's counterclaims no. 24-29, discussed above, have already been dismissed once (Dkt. No. 315), and are subject to Samsung's Second Motion to Dismiss currently noticed for April 4 due to the Court's heavy motion calendar. (Dkt. No. 405.) Samsung incorporates that motion by reference here and submits that given that Apple's claims suffer fatal weakness on the merits, it is particularly appropriate to limit the discovery in this case. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("Limitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss," and such limitations or postponements are granted with "substantial frequency."); *see also Spencer Trask Software & Info. Services, LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) ("[D]iscovery may in a proper case be stayed pending the outcome of a motion to dismiss."). The Court may "consider the strength of the dispositive motion," particularly where, as here, the Court has already dismissed Apple's counterclaims once before. *Id.*

UMTS standard and the patents in suit, which relate to WCDMA/HSPA technology. Samsung previously agreed to produce all relevant documents required by the proportionality considerations contemplated by the rules, including all "nonpublic communications between Samsung and the ETSI working groups that developed the UMTS specifications identified in Apple's counterclaims [*i.e.* 25.212, 25.213, and 25.214], and internal communications regarding Samsung's participation in these working groups relating to the patents-in-suit." (Mot. to Compel at 13-14.) Even meeting this burden will require significant resources and manpower from Samsung. (Kim Decl. ¶¶ 9-10.)

Nevertheless, in the spirit of compromise, Samsung will also agree to produce documents falling within the following categories outlined by Apple in its Motion:

- Documents showing Samsung's "general policies and/or practices with regard to the disclosure of purportedly essential IPR to ETSI and 3GPP";
- Documents showing the "structure of the departments or teams at Samsung that work on SSO-related issues so that Apple may identify pertinent fact witnesses to depose"; and
- "Documents related to Samsung's decision to disclose (or not to disclose) the patents-in-suit to ETSI and 3GPP."

(Mot. to Compel at 14.) Apple is entitled to nothing more.

**C.  To the Extent that Apple Seeks Documents Beyond What Samsung Has Agreed to Produce, Its Motion to Compel Should be Denied.**

While Apple's counterclaims and defenses are limited to particular specifications of the UMTS standard, Apple's requests for production encompass documents relating to thousands of standards promulgated by ETSI and the 3GPP. These standards are not relevant to the litigation. More specifically, ETSI has promulgated over 4,900 standards for information and communications technologies, including fixed, mobile, radio, converged, broadcast and internet

1  technologies.   (Kim Decl. ¶ 7.)   ETSI also promulgates standards relating to intelligent transport
2  systems, medical devices, aeronautics, and mobile television formats (*e.g.*, MBMS and DVB-H)
3  which have no relevance at all to Apple's defenses or counterclaims.   (*Id.*)   ETSI is just one of
4  the six standards-setting organizations that comprise 3GPP, which promulgates standards relating
5  to a broad array of telecommunications standards and technologies.   WCDMA/ HSPA is just one
6  of six standardized technologies that form the 3GPP specifications.   (*Id.*)   Apple does not
7  contend that the Samsung patents in suit have been declared essential to any mobile
8  telecommunications standard other than WCDMA/ HSPA.   Despite the fact that Samsung's
9  participation in ETSI and 3GPP is only relevant to the extent that the participation involved the
10  specifications identified in Apple's complaint, Apple seeks an enormous volume of discovery
11  regarding Samsung's participation with respect to *any* standard set by ETSI or 3GPP.   Apple has
12  not limited its motion to the relevant standards body, a particular specification, or even by any
13  time period, patent family, custodian, or technological subject matter.   Moreover, Apple does not
14  claim to have been harmed by Samsung's conduct before any of the five other organizations which
15  comprise 3GPP, nor does it allege that Samsung violated the rules or policies of SSOs other than
16  ETSI.   Given the dizzying array of acronyms and the many layers of irrelevance in Apple's
17  demand, Samsung has prepared the following diagram to illustrate just how sweepingly overbroad
18  Apple's document demands are:

[Figure: Nested circles diagram showing ETSI (large black circle) containing 3GPP (GPRS, GSM, EDGE, WCDMA/HSPA, LTE, LTE Adv.), zoomed to WCDMA/HSPA (TSG GERAN, TSG RAN with WG 1-5, TSG CT, TSG SA), zoomed to WG 1 & 2 (S21, S22, S23, S24, S25), zoomed to "3 out of 248 Specifications"]

While Apple is seeking the contents of the large black circle above (all documents related to Samsung's 18-year participation in ETSI), it is in fact entitled only to the tiny red sliver of documents in the white circle at the bottom of the chart, which represents the three specifications accused in Apple's counterclaims.   Apple is overreaching on a stunning scale.

### D. Apple's Demands Make a Mockery of the Proportionality Requirement

Apple's motion fails to even acknowledge the burden of its demands on Samsung. Samsung has disclosed over 3,500 patent or patent applications as essential to various ETSI and 3GPP standards. Apple would have Samsung locate, interview and search every inventor of each one of these patents, as well as virtually all individuals who have worked in its standards groups for the last fifteen years. (Kim Decl. ¶ 8.) Apple's conclusory assertion that its requests meet the proportionality requirement (Mot. to Compel at 14 n.10) cannot satisfy its burden to show that such discovery is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). It is not.

None of the cases cited by Apple ordered anywhere near the extraordinary scope of production Apple seeks here. In fact, the scope of discovery called for in these cases more closely resembles Samsung's most recent offer to produce documents relevant to the declared-essential patents-in-suit for the standard in question. For instance, in *LG Elecs., Inc. v. Motorola, Inc.*, No. 10-CV-3179, 2010 WL 3075755 (N.D. Ill. Aug. 5, 2010), the court *denied* LG's motion to compel in part, with respect to LG's document requests directed to Motorola's involvement with SSOs in general, since LG had failed to establish how Motorola's activities in those SSOs related to or were "necessary" to LG's claims. *Id.* at *3. The court thus tailored its order to two *very specific* standards (SCTE 07 and ITU-T J.83), declining LG's invitation to order production of a broad range of SSO-related documents for an entire specification. *See id.* at *3, *5.

Similarly, in *SmithKline Beecham Corp. v. Apotex Corp.*, 2006 WL 279073 (E.D. Pa. Jan. 31, 2006), the defendant moved to compel communications between the plaintiff and three, discrete private organizations. In that case, the plaintiff did not contest the relevance of these organizations, but only complained that two of the organizations were located in Europe. *Id.* at *3. The court thus only considered and ruled that plaintiff's communications with the two

organizations located outside the U.S. were within the scope of permissible discovery.[7]  Finally, *In Re Rambus*, 7 Fed. Appx. 925 (Fed. Cir. 2001), is entirely inapposite, as Samsung has already offered to produce all documents relating to its disclosures of the patents-in-suit to the relevant working groups of the UMTS standard.  Samsung's offer of production therefore includes all documents possibly relevant to Apple's affirmative defenses.  *Townshend Intellectual Prop., L.L.C. v. Broadcom Corp.*, C 06-05118 JF(RS), 2007 WL 2462152 at * 3 (N.D. Cal. Aug. 29, 2007) (denying requests for documents relating to "[Defendant's] interactions with industry standard setting organizations ('SSOs'), and those seeking information regarding [Defendant's] products other than the V.90-compliant modems alleged in this action to be infringing.")

### III.  APPLE'S REQUESTS FOR LICENSES AND NEGOTIATION DOCUMENTS FAR EXCEED THE RELEVANT SCOPE OF DISCOVERY

Just as with its request for all documents relating to Samsung's participation in the ETSI and 3GPP SSOs, Apple's requests for licenses and negotiation documents are overly broad. Apple has not limited its requests for licenses or negotiation documents by the standard to which the underlying intellectual property applies, time period, technological subject matter, or product line, nor has Apple limited its request to licenses for the patents-in-suit, or even to all U.S. patents and/or patent applications.  Rather, Apple demands every license for every Samsung patent declared essential to any technological standard promulgated by ETSI or 3GPP – which would include such things as licenses for television technology.  Apple also requests, for the first time in its motion, that Samsung should produce licenses to "relevant technologies" to the patents in suit, without defining that term in its brief or in prior meet and confer.  (Motion to Compel at 15-16.)

---

[7]  Likewise, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988), also cited by Apple, has nothing to do with a motion to compel documents, nor, as Apple appears to contend, does it stand for any broad proposition that communications between a corporation and any SSO is discoverable simply because it can form the basis of an antitrust claim.

Only a few of the documents sought by Apple are relevant to any claim or defense in this litigation.    Samsung agrees to produce these relevant categories of documents:

- All communications with third parties negotiating the terms of licenses to the patents in suit;[8]
- All licenses to Samsung patents incorporated in the UMTS specifications identified in Apple's Amended Answer, Defenses, and Counterclaims (25.212, 25.213, and 25.214).

The first category of documents includes the information that Apple contends is relevant to its license and exhaustion claims.    (Mot. to Compel at 17.)    The second category of documents includes information that may be relevant to a reasonable royalty.    (*Id.*)

The remaining requests for production either seek documents that are not relevant to this litigation or are so ill-defined that Samsung has no hope of locating responsive documents. Apple asserts without any basis in fact or law that "documents reflecting patent license negotiations for declared-essential patents (even declared-essential patents not asserted in this action) are relevant to the determination of an appropriate 'Fair, Reasonable, and Non-Discriminatory' (FRAND) royalty rate, if any."    (Mot. to Compel at 17.)    Apple does not and cannot cite any law for this proposition.    Further, Apple provides no rationale as to why the terms of a license to declared-essential patents relating to an unrelated ETSI technology, such as medical devices or aeronautics, should have any bearing on licenses to declared-essential patents relating to the UMTS standard.    Analogously, courts have limited discovery in the reasonable royalty context to licenses that relate to the same technology as the patents in suit.    *Bally Technologies, Inc. v. Bus. Intelligence Sys. Solutions, Inc.*, 2:10-CV-00440-PMP, 2011 WL 3892221 at *3 (D. Nev. Aug. 30, 2011) (denying discovery because Plaintiff failed to establish that "license agreements involving other patents are sufficiently relevant to be discoverable.").

---

[8]    Samsung's agreement to provide these documents moots Apple's contention that Samsung is withholding documents relevant to its license and exhaustion claims.    (Mot. at 17.)

As referenced above, Apple also contends that Samsung should produce licenses to "relevant technologies" to the patents in suit. (Mot. to Compel at 15-16.) Apple has not defined what it means by "relevant technologies" and has not met and conferred with Samsung regarding the particular technologies it contends to be relevant. As such, Apple's motion is premature. Samsung is willing to meet and confer with Apple to determine whether the parties can reach an agreement as to which technologies are relevant to the patents in suit rather than unnecessarily burdening the court with this (or another) motion to compel.

## CONCLUSION

For the foregoing reasons, the Court should DENY Apple's Motion to Compel.

DATED: January 17, 2012         QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP


                                By /s/ Rachel Herrick Kassabian
                                   Charles K. Verhoeven
                                   Kevin P.B. Johnson
                                   Victoria F. Maroulis
                                   Michael T. Zeller
                                   Rachel Herrick Kassabian
                                   Attorneys for SAMSUNG ELECTRONICS CO.,
                                   LTD., SAMSUNG ELECTRONICS AMERICA,
                                   INC., and SAMSUNG
                                   TELECOMMUNICATIONS AMERICA, LLC