1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
14 INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
15

16                UNITED STATES DISTRICT COURT

17        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18

| | |
|---|---|
| 19  APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| 20          Plaintiff, | **DECLARATION OF ROSA KIM** |
| 21     vs. | Date:   January 19, 2012<br>Time:   10:00 a.m. |
| 22  SAMSUNG ELECTRONICS CO., LTD., a<br>Korean business entity; SAMSUNG | Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |
| 23  ELECTRONICS AMERICA, INC., a New<br>York corporation; SAMSUNG | |
| 24  TELECOMMUNICATIONS AMERICA,<br>LLC, a Delaware limited liability company, | SUBMITTED UNDER SEAL<br>CONTAINS CONFIDENTIAL<br>INFORMATION |
| 25          Defendant. | |
| 26 | |

27

28

I, Rosa Kim, do hereby declare as follows:

1. I am Senior Legal Counsel at Samsung Electronics Co., Ltd. I submit this Declaration in support of Samsung's Opposition to Apple's Motion to Compel Discovery Relating to Apple's Affirmative Defenses and Counterclaims ("Motion to Compel"). I have personal knowledge of the facts set forth in this declaration or I have obtained such information through my investigation with other Samsung employees personally involved in such matters, and, if called as a witness, could and would competently testify to them.

2. I have reviewed Apple's Motion to Compel and the accompanying proposed order.

### Apple's Requests Relating to Standard Setting Organizations

3. Samsung manufactures a broad range of products that extend far beyond the products at issue in this lawsuit, and continually launches new products that meet and anticipate consumer demand. In addition to mobile phones, Samsung also manufactures and sells televisions, DVD and Blu-Ray players, speaker systems, satellite and cable receivers, laptops, desktops, printers, keyboards, monitor, DVRs, image scanners, cameras, camcorders, photocopiers, memory and storage devices, washing machines, microwaves, refrigerators, dishwashers, and semiconductors, among other things. These businesses are described in Samsung's Annual Report which can be viewed at http://www.samsung.com/us/aboutsamsung/ir/financialinformation/annualreport/downloads/2010/SECAR2010_Eng_Final.pdf.

4. I understand that in developing these products, Samsung also has obtained thousands of patents—registering more than 4,500 in 2010 in the United States alone—many of which have been declared essential to a particular technological standard. For example, Samsung has notified the European Telecommunications Standards Institute (ETSI), in two dozen publicly available Information Statement and Licensing Declarations (ISLD), that at least 3,500 Samsung patents or patent applications cover technology that may be considered essential to parts of the ETSI Standards.

5. **Standards Setting Organization Documents.** I understand that Apple requests in its motion to compel that Samsung produce "all documents related to Samsung's participation in ETSI and/or 3GPP." According to its motion, Apple seeks this information because it wishes to find evidence that Samsung failed to disclose to ETSI or 3GPP (short for "Third Generation Partnership Project") its intellectual property rights that are essential to the UMTS standard. (*See* Motion to Compel at 10.) 3GPP is a collaboration project that united a number of telecommunications standards bodies including ETSI and others. One of 3GPP's goals was to produce globally applicable Technical Specifications and Technical Reports for a 3rd Generation Mobile System based on evolved GSM core networks and the radio access technologies that they support, and to maintain and develop the Global System for Mobile communication (GSMTM) Technical Specifications and Technical Reports.

6. I believe that it will be effectively impossible to satisfy Apple's sweeping demands, and even our greatest efforts would not yield the broad set of documents Apple seeks. This far-reaching request asks that Samsung produce every single document that is even "related to" Samsung's participation in ETSI and/or 3GPP, and thus imposes such a massive and undue burden that would significantly disrupt Samsung's business operations.

7. ETSI and 3GPP cover a broad array of telecommunications standards and technologies. According to ETSI's website at http://ipr.etsi.org and http://www.etsi.org/WebSite/Technologies/Technologies.aspx, ETSI has promulgated 4,948 standards relating to 33 broadly defined technological subject areas. I am informed that Samsung became a member of ETSI in 1994, and is involved in many other covered technologies besides Mobile, *e.g.*, Broadband Wireless Access, Broadcast, M2M, Next Generation Networks, Regulation & Legislation, Testing, etc. Similarly, according to the 3GPP website at http://www.3gpp.org/3GPP-scope and http://www.3gpp.org/Technologies, at least six other technologies are built into the 3GPP specifications—only one of which is "UMTS," and the WCDMA/HSPA technology that is a part of UMTS. I am informed that Samsung became a member of 3GPP in 1998, the year it was formed, and is involved in many other covered

technologies besides UMTS, such as GERAN, MBMS, DVB (digital video broadcasting), SECURITY, ADSL, VDSL, ISDN, SAE, HSPA+, and LTE.

8. If Samsung is compelled to search for every document relating to Samsung's participation in ETSI and/or 3GPP, Samsung would have to search virtually all of its multiple business units (e.g., Digital Media & Communications R&D Center, Modem Team, Telecommunication Systems Business, Samsung Advanced Institute of Technology, SERI, SISO, DTL, BST), going back to at least 1998, the date of Samsung's first IPR disclosure to ETSI. This includes business units that offer products which have not been accused in this lawsuit and/or have no bearing on this lawsuit. For example, Samsung has numerous standards regarding MBMS and DVB-H, which are mobile television formats having nothing to do with this case.

9. Moreover, based on publicly available records of Samsung's Intellectual Property Rights ("IPR") disclosures to ETSI, I understand that Samsung has submitted approximately 24 ISLDs disclosing the IPR that Samsung believes are relevant to the ETSI standards. These ISLDs disclose over 3,500 patents and patent applications as potentially essential to an ETSI standard. I believe it would be unduly burdensome for Samsung to search all of the thousands of patents and/or applications listed in these ISLDs, identify and interview all the personnel involved in working with the technologies covered by all of the thousands of patents and/or applications, and collect and review documents relating to SSO involvement.

10. In order to narrow this request to a more reasonable subset of standards setting organization documents that are directly relevant to Apple's investigation of Samsung's UMTS-essential patents, I am informed that during the meet and confer process Samsung agreed to produce nonpublic communications between Samsung and the working groups that developed the UMTS specifications identified in Apple's counterclaims, and internal communications regarding Samsung's participation in these working groups relating to the patents-in-suit. Apple filed its motion despite Samsung's agreement.

11. I understand from Apple's motion to compel that it believes that the production of such documents would satisfy its requests (*see* Motion to Compel at 13-14), but that Apple further wants documents in and beyond the files of the inventors of the Samsung patents-in-suit:

   a. that show Samsung's general policies with regard to the disclosure of purportedly essential IPR to ETSI and 3GPP;

   b. that show the structure of the departments or teams at Samsung that work on SSO-related issues, so that Apple may identify pertinent fact witnesses to depose;

   c. documents related to Samsung's decision to disclose (or not to disclose) the patents-in-suit to ETSI and 3GPP.

  12. I am informed and believe that only documents related to Samsung's decision to disclose (or not to disclose) the patents-in-suit to ETSI and 3GPP exist or are within Samsung's possession, custody or control. Samsung is willing to produce these documents that it has in its possession, custody or control relating to Samsung's general policies with regard to the disclosure of purportedly essential IPR and internal documents relating to Samsung's decision to disclose the patents-in-suit to the relevant ETSI or 3GPP working groups, if any exist. Samsung will also provide names of the relevant individuals at Samsung that work on SSO-related issues relevant to Apple's counterclaims, such that Apple may identify the pertinent fact witnesses to depose.

  13. In order to identify internal documents relating to Samsung's practices with regard to the disclosure of IPR or the departments that work on "SSO-related issues," Samsung would have to identify and interview potentially hundreds of Samsung's employees in different business units to determine their involvement in the various ETSI or 3GPP standards. I understand that finding the right custodians would also be very difficult. While there are groups that do work on technology related to standardization or in standards groups, Samsung's employees working in multiple business units also address the issues relevant to SSOs even though they might not necessarily be in a group called a "standards group."

  14. Accordingly, I believe that the documents Apple requests in its motion to compel and its proposed order—requests which lack any time limit or limits to technology or specific sections of the ETSI or 3GPP standards—seek an unduly burdensome volume of documents such that Samsung will be unable to meaningfully comply with any order compelling such production on the timetable set by the governing Case Management Order.

15. I am informed and believe that there are no nonpublic communications between Samsung and the working groups, since such information is publicly accessible from the standards websites. However, Samsung remains agreeable to producing relevant materials that may exist – i.e., non-privileged, nonpublic communications between Samsung and other companies that were members of the working groups that developed the UMTS specifications identified in Apple's counterclaims, and internal communications regarding Samsung's participation in these working groups relating to the patents-in-suit, which necessarily would include documents related to Samsung's decision to disclose (or not to disclose) the patents-in-suit, if any.

**Licensing Documents**

16. **Licensing Documents**. I understand that Apple has demanded that Samsung produce "all license agreements and documents reflecting license negotiations (whether resulting in a contract or not) relating to patents that Samsung has declared essential to the ETSI and/or 3GPP standards; and all license agreements to relevant technologies that cover only patents that have not been declared essential to a standards body ." As far as I can tell from Apple's motion, Apple does not identify what those "relevant technologies" are. I am informed that Apple seeks this information because it wishes to find evidence regarding the "breadth of the licenses granted to the patents-in-suit" and what would be an appropriate fair, reasonable, and non-discriminatory (FRAND) rate. (*See* Motion to Compel at 17.)

17. Apple seeks licenses and license negotiation documents that extend far beyond the scope of reasonable discovery for the purposes of calculating a reasonable royalty or a FRAND rate. As described above, Samsung makes products and technologies in multiple industries, including mobile phones, televisions, DVD and Blu-Ray players, speaker systems, satellite and cable receivers, laptops, desktops, printers, keyboards, monitor, DVRs, image scanners, cameras, camcorders, photocopiers, memory and storage devices, washing machines, microwaves, refrigerators, dishwashers, and semiconductors. I believe Samsung also has patents in most, if not all, of these industries, and has licensed its patents and patent portfolio to numerous licensees for a variety of product or technology areas not limited to mobile phones or tablet products.

18. In order to comply with Apple's requests, Samsung would have to locate its patent licenses relating to refrigerators or washing machines, for example, where such product licenses would be by no means comparable to the licenses for the patents in suit. Moreover, what Samsung might have offered in connection with a license covering microwaves or DVD players would not be probative of what a FRAND rate would be in the mobile telecommunications context.

19. Moreover, I am informed and believe that it will be unduly burdensome to satisfy these requests, and even our greatest efforts would not yield the broad set of documents which Apple demands be produced by January 23, 2012. I understand that Samsung has submitted approximately 24 ISLDs disclosing over 3,500 patents and applications that Samsung believes are relevant to ETSI standards. It would be unduly burdensome for Samsung to search all of the thousands of patents and/or applications identified in these ISLDs (most of which would have nothing to do with the technologies implicated by this case), identify and interview all the personnel involved in licensing the thousands of patents and/or applications, and collect and review such licenses and negotiation documents. And this would only be for the ETSI standards, and would not even include the "all license agreements to [unspecified] relevant technologies" that Apple is demanding as well.

20. As Samsung has made clear to Apple before Apple filed this motion, Samsung is willing to produce licensing materials relevant to this suit – specifically, licenses for the patents-in-suit, and licensing negotiation documents for those patents-in-suit that have been declared to essential to a standard. Otherwise, Apple's overly broad request extends far beyond the scope of relevant and reasonable discovery.

### Samsung's Inventor Document Collection Efforts

21. I have been involved, along with a team of counsel and our outside lawyers, in collecting information and relevant documents from the inventors of the Samsung patents-in-suit asserted in Samsung's counterclaims in this lawsuit, including documents responsive to Apple's hundreds of requests for production of documents.

22.   I am informed and believe that Samsung has conducted a thorough search for relevant documents from its inventor custodians.   First, Samsung's counsel worked with the inventors to identify where responsive documents might be located—i.e. where work-related and/or invention documents were maintained, whether external or shared drives were used, what email accounts were used for work-related correspondence, and whether they had hard copies of documents and where those were kept.

23.   Next, with guidance from counsel, the inventors manually searched for and turned over relevant documents.   Any other relevant sources or locations with potentially relevant documents were searched and reviewed for production.   Paper documents and source code were manually collected by counsel, if any.

24.   Samsung also took the additional step of running search terms on the inventors' computers in order to make sure that relevant documents had not been missed in the primary document collection.   Samsung's counsel provided each inventor with a specific set of search terms to run on their computers.   Samsung's counsel also worked with the inventors to refine those search terms as appropriate, to determine the most comprehensive search methodology that would identify all relevant documents without returning an overly burdensome volume of irrelevant documents.   Depending on whether the inventors used English or Korean in their work and correspondence, the appropriate translated terms would be applied where appropriate.   Based on our investigations, we determined that most of the relevant technical terms did not have commonly used Korean-language equivalents, particularly because all ETSI- and 3GPP-related communications are in English.   To the extent any inventors searched their own files or computers, it was done under the direction and supervision of counsel.   I understand these search terms were applied to the inventors' entire hard drives, including email.   The resulting hits (as well as the manually collected documents) were then transmitted from in-house counsel to outside counsel for review and production.

25.   I understand that the inventors (with our supervision) searched not only the titles of documents, but also the contents of files, emails and attachments.

26.     We also searched the central server for documents relating to the Samsung patents-in-suit and the inventors, and collected those documents for our outside counsel's review and production.

27.     Finally, multiple members of Samsung's counsel and/or outside counsel met with the inventor after the searches had been run, to again confirm and run a quality check on the inventor's document searches, to ensure that the search terms were used properly and the correct procedures were followed.   In a few instances, our "QC" efforts yielded some additional documents that had been missed the first time around.   Those documents were produced to Apple as soon as they were discovered.

28.     Samsung's policy is that departing employees are not permitted to retain documents relating to their work at Samsung.   I understand ten of the inventors of the patents-in-suit are no longer employed by Samsung: Beong-Jo Kim, Hye-Young Lee, Hyuk-Soo Son, Jae-Min Kim, Joong-Ho Jung, Pyung-Soo Kim, Yung-Hwan Lee, Yoon-Hyung Heo, Hyun Woo Lee, and Gin-Kyu Choi.   Of these individuals, only Hyun Woo Lee and Gin-Kyu Choi were deposed in this action.   None of these ten inventors had any relevant documents in their possession, custody or control.

29.     Despite our best efforts, Samsung's counsel was unable to locate the inventors for the '055 or '871 patents.   However, we did search the central server at Samsung for documents relating to these two patents, and produced any non-privileged documents that we had.   This included Invention Disclosures, among other things.

30.     In some cases, certain inventors had no relevant documents in their possession, custody or control.   This occurred, for instance, where the patents-in-suit had issued many years ago, where the inventor switched departments some time ago and did not retain documents pertaining to his previous work, or received a new computer and did not back up or copy files from his previous computer.

31.     I am informed that Mr. Jeong Seok Oh, inventor of the '460 Patent, has changed departments numerous times after his work on the '460 Patent.   Mr. Oh was the most junior inventor on the team that developed the subject matter of the '460 Patent, the application for

which was filed thirteen years ago.  Samsung has produced over 7,500 pages worth of documents from the files of Sang-Ryul Park, who was Mr. Oh's superior on the '460 Patent team.

32.  I am informed that Dr. Yong-Suk Moon, inventor of the '792 Patent, performed the relevant inventive activity roughly a decade ago.  Dr. Moon retained no paper documents from that period, he had no emails pre-dating the issuance date of the '792 Patent, and he has since switched departments and received new work computers over the intervening years.

33.  I am informed that Dr. Jun Sung Lee, inventor of the '792 Patent, was provided with a new computer on several occasions upon switching departments.  Dr. Lee did not back up or copy his files from the computer he had when working on the subject matter of the '792 Patent in the early 2000s.  Dr. Lee does not maintain a personal space where he stores paper documents from that time period.

34.  I am informed that Mr. Sung Ho Eun, inventor of the '893 Patent, was the most junior member of the team that developed the technology claimed by the '893 Patent, the application for which was filed in 2005.  I understand that documents relating to this technology were maintained by Hyuk-Soo Son, Mr. Eun's supervisor, who is no longer employed by Samsung.  I am informed that Mr. Eun changed computers during his employment at Samsung, and the documents on his old computers were not retained.  Mr. Eun did not retain any hard copies documents.

35.  I am informed that Mr. Se Hyoung Kim, inventor of the '410 Patent, has been provided with new computer equipment on several occasions since the application that lead to the '410 Patent was filed in 2000.  Mr. Kim did not back up or copy his files from the computer he used during this time period.

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge.

Executed this 17th day of January, 2012, at Suwon, South Korea.

_____
Rosa Kim

**General Order 45 Attestation**

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file this Declaration.   In compliance with General Order 45(X)(B), I hereby attest that Rosa Kim has concurred in this filing.

*/s/ Victoria Maroulis*