# EXHIBIT 8
# FILED UNDER SEAL

# In The Matter Of:

*APPLE INC., a California corporation,*
*v.*
*SAMSUNG ELECTRONICS CO., LTD., et al.*

_____

## *JAE-SEUNG YOON - Vol. 1*
### *December 3, 2011*

_____

# *HIGHLY CONFIDENTIAL*
# *OUTSIDE COUNSELS' EYES ONLY*

**MERRILL CORPORATION**

**LegaLink, Inc.**

101 Arch Street
3rd Floor
Boston, MA 02110
Phone: 617.542.0039
Fax: 617.542.2119

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 34

1      times.

2            Q.    Do you remember when you received any

3      notice?

4            A.    Yes.

10:21:13    5      Q.    When?

6            A.    I recall that it was early this year.

7            Q.    January through March?

8            A.    Yes.

9            Q.    Did you receive another notice after that

10:21:35   10      first notice?

11           A.    Would you repeat your question?

12           Q.    Did you receive a notice after that one

13      you remember from January to March?

14           A.    I don't quite recall, but I think I have

10:22:18   15      received a few notices between January and March.

16           Q.    What do you understand a preservation

17      notice to require?

18           A.    My understanding is that when it comes

19      to documents related to this litigation, I'm not

10:23:20   20      supposed to delete or shred -- strike that.

21                 My understanding is that when it comes

22      to documents related to this litigation, I'm not

23      supposed to delete or shred them.  I am required

24      to preserve them.

10:23:39   25                 THE CHECK INTERPRETER:  Can we say:  I'm

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 35

|  |  |  |
|---|---|---|
|  | 1 | not supposed to delete or destroy them. |
|  | 2 | BY MR. MCALHANY: |
|  | 3 | Q.   Have you complied with the notices? |
|  | 4 | A.   Yes. |
| 10:23:52 | 5 | Q.   Did you have documents in your possession |
|  | 6 | related to the '792 patent? |
|  | 7 | MR. TUNG:  Objection.  Vague and to the |
|  | 8 | extent it calls for a legal conclusion. |
|  | 9 | THE WITNESS:  I don't have a clear |
| 10:24:32 | 10 | understanding when it comes to the coverage of |
|  | 11 | documents since I don't have -- I don't have |
|  | 12 | sufficient legal knowledge as to that.  But upon |
|  | 13 | receiving the request for searching -- but upon |
|  | 14 | receiving the request for a document search, I |
| 10:24:53 | 15 | submitted search results. |
|  | 16 | THE CHECK INTERPRETER:  I don't have |
|  | 17 | a clear understanding when it comes to the scope |
|  | 18 | of documents since I don't have sufficient legal |
|  | 19 | knowledge as to that; however, upon receiving of -- |
| 10:25:08 | 20 | upon receiving a search request, I did submit the |
|  | 21 | search result. |
|  | 22 | BY MR. MCALHANY: |
|  | 23 | Q.   I understand.  I'm going to ask you about |
|  | 24 | the search request later, but I'm just asking at |
| 10:25:22 | 25 | this point about the document preservation notices |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG   YOON – 12/3/2011

Page 36

| | | |
|---|---|---|
| | 1 | that you received. |
| | 2 | A.   Yes. |
| | 3 | Q.   You said your understanding of the |
| | 4 | document preservation notice was that you were |
| 10:25:39 | 5 | not to delete or destroy documents related to |
| | 6 | this litigation; is that correct? |
| | 7 | A.   Yes, that's correct. |
| | 8 | Q.   Did you have documents related to this |
| | 9 | litigation? |
| 10:26:01 | 10 | A.   I didn't have any documents that had any |
| | 11 | particular thing to do with this subject matter, but |
| | 12 | what I was trying to say is that I didn't delete any |
| | 13 | documents. |
| | 14 | Q.   So you neither had nor deleted any |
| 10:26:42 | 15 | documents related to this litigation? |
| | 16 | MR. TUNG:  Objection.  Vague. |
| | 17 | THE WITNESS:  Yes, that's correct. |
| | 18 | BY MR. MCALHANY: |
| | 19 | Q.   Did the document preservation notice |
| 10:27:06 | 20 | explain to you what documents related to this |
| | 21 | litigation meant? |
| | 22 | A.   I don't think it pinpointed anything, |
| | 23 | but it broadly explained as to that. |
| | 24 | Q.   What was your understanding of what it |
| 10:27:43 | 25 | was explaining was related to this litigation? |

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 45

                    1             MR. TUNG:  Objection.  Vague.

                    2             THE WITNESS:  No.

                    3      BY MR. MCALHANY:

                    4         Q.   Do you remember how many computers you've

10:46:39   5      had since you've been at Samsung?

                    6         A.   No, I don't exactly recall.

                    7         Q.   More than five?

                    8         A.   I'm not quite sure.

                    9         Q.   When you receive a new computer from

10:47:03   10      Samsung, what do you do with your old computer?

                    11        A.   We return the old computer to the company.

                    12        Q.   Before you return the old computer, do you

                    13     transfer your files from the old computer to the new

                    14     computer?

10:47:35   15             MR. TUNG:  Objection.  Vague.

                    16             THE WITNESS:  In general we do.

                    17     BY MR. MCALHANY:

                    18        Q.   When do you not?

                    19        A.   In general we transfer the files, but in

10:48:02   20      case where a computer is broken up; so if it's not

                    21     physically feasible, then we don't do that.

                    22        Q.   Has there been an instance where you've

                    23     HAD a computer that was broken so you could not

                    24     transfer the data from the old to the new computer?

10:48:22   25        A.   When it comes to me, I didn't have such a

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 46

1    case.

2        Q.    So is it accurate to say that the data

3    from your computer when you first joined Samsung

4    is still present on your computer to this day?

10:48:59    5        MR. TUNG:  Objection.  Vague.

6        THE WITNESS:  It's hard to say what -- to

7    say that I have kept all the data.

8        THE CHECK INTERPRETER:  I don't know if I

9    can definitely say that I have all of the data.

10:49:23    10    BY MR. MCALHANY:

11        Q.    Do you remember the search terms you were

12    asked to input into the search window?

13        A.    I can recall some of the terms.

14        Q.    What were those terms that you can

10:49:49    15    remember?

16        A.    To my recollection, they include

17    such words as "systematic bit," "interleaver,"

18    and "symbol method."

19        Q.    Do you remember if you were asked to

10:50:21    20    search for the term "SMP"?

21        A.    I do.

22        Q.    Do you remember if you were asked to

23    search for the Patent No. 7,200,792?

24        A.    Yes, it was included.

10:50:48    25        Q.    Do you remember how many documents were

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 47

1       identified following your search for these terms?

2               MR. TUNG:  Objection.  Vague.  Compound.

3               THE WITNESS:  I don't quite recall as to

4       the number of documents.

10:51:30    5           THE CHECK INTERPRETER:  I don't quite

6       recall as to how many exactly.

7       BY MR. MCALHANY:

8           Q.   You created zip files which you emailed in

9       response to this search; correct?

10:51:40   10           A.   Yes.

11          Q.   How many zip files did you create?

12              MR. TUNG:  Objection.  Lacks foundation.

13              THE WITNESS:  I created into one zip file.

14      BY MR. MCALHANY:

10:52:08   15           Q.   And you don't remember how many documents

16      were within that zip file?

17          A.   I don't quite recall as to the exact

18      number.

19          Q.   Do you remember if there were more than a

10:52:23   20      hundred?

21          A.   I don't quite recall, but I recall that it

22      was less than a hundred.

23              THE CHECK INTERPRETER:  I don't quite --

24      I don't really know, but I recall that it was less

10:52:53   25      than a hundred.

Merrill Corporation - Boston

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG   YOON - 12/3/2011

Page 48

1    BY MR. MCALHANY:

2         Q.    Do you remember if it was more than 50?

3         A.    I don't know as to that.

4         Q.    How about more than ten?

10:53:13    5    A.    I think it was more than ten.

6         Q.    Did you also perform a search of emails

7    for those terms that you mentioned earlier?

8         A.    Yes, I did.

9         Q.    And how did you perform that search?

10:53:53    10        MR. TUNG:  Objection.  Vague.  Calls for

11    a narrative.

12             THE WITNESS:  My understanding is the

13    Windows search includes emails as well.

14    BY MR. MCALHANY:

10:54:15    15    Q.    What email program do you use at Samsung?

16             MR. TUNG:  Objection.  Vague.

17             THE WITNESS:  It's Windows Live Mail.

18    BY MR. MCALHANY:

19        Q.    And I don't know anything about Windows

10:54:42    20    Live Mail, so let me just see if I understand this.

21    Windows Live Mail is a separate program that you

22    launch?

23        A.    Yes.

24        Q.    And your understanding is the -- well, let

10:55:06    25    me go back.

Merrill Corporation - Boston

617-542-0039                    www.merrillcorp.com/law

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 49

|          | 1  | The search that you did, is that through |
|          | 2  | the start menu search? |
|          | 3  | MR. TUNG:  Objection.  Vague. |
|          | 4  | THE WITNESS:  Yes, I performed it through |
| 10:55:31 | 5  | the start menu search. |
|          | 6  | BY MR. MCALHANY: |
|          | 7  | Q.   Your understanding is that the search |
|          | 8  | part -- your understanding is that the start menu |
|          | 9  | search searches both the contents of that computer's |
| 10:55:42 | 10 | hard drive and Windows Live Mail? |
|          | 11 | A.   Yes, that's correct. |
|          | 12 | Q.   Do you remember if any emails were found |
|          | 13 | in response to your search for those terms that you |
|          | 14 | identified earlier? |
| 10:56:25 | 15 | A.   Yes.  There were the results out of |
|          | 16 | emails. |
|          | 17 | Q.   Besides your Samsung-issued computer, |
|          | 18 | are there any other locations where you would |
|          | 19 | store physical documents; hard copies of documents? |
| 10:57:07 | 20 | MR. TUNG:  Objection.  Vague. |
|          | 21 | THE WITNESS:  In general we don't keep |
|          | 22 | hard copies of documents. |
|          | 23 | BY MR. MCALHANY: |
|          | 24 | Q.   When you said you maintained documents |
| 10:57:26 | 25 | "pursuant to the preservation notice," where were |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON – 12/3/2011

Page 50

| | | |
|---|---|---|
| | 1 | those documents? |
| | 2 | A.   They were stored on my computer. |
| | 3 | Q.   You don't maintain any physical files |
| | 4 | or -- you don't maintain any physical files for |
| 10:58:04 | 5 | documents related to SMP or the '792 patent? |
| | 6 | A.   To the best of my knowledge, I don't |
| | 7 | maintain any physical documents. |
| | 8 | Q.   What about network storage?  Does Samsung |
| | 9 | or do you use any shared network storage? |
| 10:58:38 | 10 | A.   Yes, occasionally we do use such storage. |
| | 11 | THE CHECK INTERPRETER:  Yes, occasionally. |
| | 12 | It depends on instances, we do use that as well. |
| | 13 | BY MR. MCALHANY: |
| | 14 | Q.   Did you perform a search request for the |
| 10:59:14 | 15 | terms you previously identified such that it would |
| | 16 | search the shared storage? |
| | 17 | A.   No, I didn't. |
| | 18 | Q.   Does Samsung permit you to use cloud-based |
| | 19 | storage such as Dropbox or Google Storage? |
| 10:59:48 | 20 | A.   No. |
| | 21 | Q.   Does Samsung permit you to use flash |
| | 22 | drives? |
| | 23 | A.   In order to use such drives, we need |
| | 24 | to get special permission in line with a specific |
| 11:00:23 | 25 | purpose. |

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 54

1          Q.    How was that data stored?

2          A.    To my present recollection, the test

3     results were generated in text format.

4          Q.    When you say "text format," do you mean a

11:07:20    5     digital file?

6                MR. TUNG:  Objection.  Vague.

7                THE WITNESS:  Yes.  I'm referring to

8     text files that are stored within a Windows OS

9     operating system.

11:07:47    10    BY MR. MCALHANY:

11         Q.    During your time in the HSDPA group, were

12    you required to generate any computer code?

13         A.    Yes.

14         Q.    How was that computer code stored?

11:08:10    15    A.    That was stored on my personal computer.

16         Q.    Do you know if your current personal

17    computer has code generated from your time in the

18    HSDPA group?

19         A.    Yes.

11:08:46    20    Q.    When you performed your searches for

21    the terms you mentioned previously, was the code

22    generated during your time in the HSDPA group part

23    of the result, the search result?

24         A.    Yes.  My understanding was -- is that it

11:09:21    25    was included.

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 55

|          |    |                                                     |
|----------|----|-----------------------------------------------------|
|          | 1  | Q.   So your understanding is that part of          |
|          | 2  | the zip file that you sent included the code that   |
|          | 3  | you generated when you were in the HSDPA group?     |
|          | 4  | A.   No.  When I initially submitted the zip        |
| 11:10:22 | 5  | files that code was not included, but I updated my  |
|          | 6  | search results and submitted it again and when I    |
|          | 7  | submitted that additional file, that code was       |
|          | 8  | included.                                           |
|          | 9  | Q.   Okay.  So you said "zip files."  You           |
| 11:10:49 | 10 | previously said you made one zip file.  Was it one  |
|          | 11 | zip file or more than one?                          |
|          | 12 | THE INTERPRETER:  Interpreter's                     |
|          | 13 | interjection:  There is no distinction in Korean    |
|          | 14 | whether it's plural or singular so it must be       |
| 11:11:04 | 15 | interpreter's mistake.  My apologies.               |
|          | 16 | BY MR. MCALHANY:                                     |
|          | 17 | Q.   You just said that you updated your search     |
|          | 18 | results.  What do you mean by that?                 |
|          | 19 | A.   The search method that I initially used        |
| 11:11:49 | 20 | actually didn't cover the entire documents that     |
|          | 21 | needed to be searched, which I found out later.     |
|          | 22 | So I changed the search method to search all the    |
|          | 23 | documents related.  There were some additional      |
|          | 24 | documents identified with a second method so I      |
| 11:12:09 | 25 | submitted those additional documents.               |

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON – 12/3/2011

Page 56

|  |  |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 11:12:34 | 5 |

1       Q.    Do you remember how many additional

2  documents that was?

3       A.    I -- strike that.  I recall that there

4  were a large number of documents additionally

5  identified.

6            THE CHECK INTERPRETER:  I recall that

7  there are more than a few number of documents

8  additionally identified.

9  BY MR. MCALHANY:

11:12:42   10       Q.    More than ten?

11       A.    Yes.

12       Q.    When did you implement this different

13  search method?

14       A.    I recall it was yesterday.

11:13:02   15       Q.    How did you learn that the first search

16  method you used didn't cover all of the documents

17  you thought it did?

18            MR. TUNG:  I caution the witness not

19  to include anything concerning attorney-client

11:13:33   20  communications.

21            THE CHECK INTERPRETER:  Wait.  I wasn't

22  sure if he heard the attorney's caution.

23            MR. TUNG:  Make sure you understand the

24  caution before you answer.

11:14:26   25            THE INTERPRETER:  Yeah.  I asked the

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 57

|  |  |
|---|---|
| | 1 |  witness if he understood; he said he understood the |
| | 2 |  caution. |
| | 3 |        Can I continue to interpret the answer? |
| | 4 |        MR. MCALHANY:  Yes, please. |
| 11:14:38 | 5 |        THE WITNESS:  I learned that in the course |
| | 6 |  of having conversation with my counsel yesterday. |
| | 7 |        MR. TUNG:  Okay.  Stop right there. |
| | 8 |  I mean, the course of conversation with counsel, |
| | 9 |  that's privileged information. |
| 11:14:48 | 10 |        MR. MCALHANY:  Well, he's not disclosing |
| | 11 |  what he heard from you but when he heard it from |
| | 12 |  you, so during conversation with you.  He has not |
| | 13 |  testified as to what you guys said. |
| | 14 |        MR. TUNG:  He is.  Because the question |
| 11:14:58 | 15 |  asked when did you learn of a certain specific |
| | 16 |  thing.  That's content. |
| | 17 |        MR. MCALHANY:  I said when, and he said |
| | 18 |  during counsel -- conversations with counsel. |
| | 19 |        MR. TUNG:  No, no, no.  Your question |
| 11:15:08 | 20 |  asked for when, but it asked for when did you learn |
| | 21 |  of a particular fact.  That is content. |
| | 22 |        I mean, if you want to try to spend your |
| | 23 |  time asking for every single fact that we might have |
| | 24 |  discussed and ask when for every single one, that |
| 11:15:18 | 25 |  reveals content.  That's why it's privileged. |

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 58

1              MR. MCALHANY:  I think we need to change

2       tapes so let's take a break now.

3              THE VIDEOGRAPHER:  This is the end of

4       disk 1 of Jae-Seung Yoon.  Off the record at 11:14.

11:15:34    5              (Off the record.)

6              THE VIDEOGRAPHER:  This is disk 2 of

7       Jae-Seung Yoon.  On the record at 11:24.

8       BY MR. MCALHANY:

9          Q.   Earlier you testified that it was the

11:25:49   10       patent team that gave you the keywords to search

11       for your initial search.

12              Do you remember that?

13          A.   Yes.

14          Q.   Was it the patent team that notified you

11:26:11   15       that you needed to revise your search method?

16              MR. TUNG:  I'm going to instruct the

17       witness not to answer that question.  You're asking

18       if the patent team provided a specific instruction

19       to the witness.  That's attorney-client

11:26:33   20       communication.

21       BY MR. MCALHANY:

22          Q.   Are you listening to his instruction?

23          A.   Yes.

24          Q.   When you performed the revised search

11:27:15   25       method you mentioned earlier, how was it different

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON – 12/3/2011

Page 59

|  |  |  |
|---|---|---|
|  | 1 | than the initial search? |
|  | 2 | A.   The location where I entered the keywords |
|  | 3 | was different. |
|  | 4 | THE CHECK INTERPRETER:  The location where |
| 11:27:46 | 5 | I entered the search key terms or keywords were |
|  | 6 | different -- was different. |
|  | 7 | BY MR. MCALHANY: |
|  | 8 | Q.   Please tell me where you entered the |
|  | 9 | search key terms in the revised search method. |
| 11:28:17 | 10 | A.   I entered the keywords in a location where |
|  | 11 | you can -- strike that. |
|  | 12 | I entered the keywords in a location which |
|  | 13 | pops up when you push a Windows button. |
|  | 14 | Q.   I'm trying to understand how it's |
| 11:28:55 | 15 | different from the first search you ran.  The first |
|  | 16 | search you said you ran, when you went to the start |
|  | 17 | window you ran a search.  How is that different from |
|  | 18 | this revised search method? |
|  | 19 | A.   The start window was something that I |
| 11:29:39 | 20 | used lastly.  The initial method that I used was |
|  | 21 | something related to the Windows Explorer. |
|  | 22 | THE CHECK INTERPRETER:  Excuse me. |
|  | 23 | The start menu search was the last method I used. |
|  | 24 | Initially I launched the Window Explorer search |
| 11:30:00 | 25 | window. |

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 60

|  |  |  |
|---|---|---|
|  | 1 | BY MR. MCALHANY: |
|  | 2 | Q.   So let me backtrack.  Earlier I think you |
|  | 3 | said that you believe your first search included |
|  | 4 | both the contents of your hard drive and Windows |
| 11:30:14 | 5 | Live Mail; is that correct? |
|  | 6 | A.   Those contents were included when I |
|  | 7 | searched it using a revised method. |
|  | 8 | THE CHECK INTERPRETER:  Those contents |
|  | 9 | were included when I searched for the final time. |
| 11:30:49 | 10 | BY MR. MCALHANY: |
|  | 11 | Q.   Is it your understanding that your initial |
|  | 12 | search method did not search both Windows Live Mail |
|  | 13 | and the contents of your hard drive? |
|  | 14 | A.   I confirmed that the entirety of documents |
| 11:31:17 | 15 | was not included in that search. |
|  | 16 | Q.   What documents were not included in your |
|  | 17 | first search method? |
|  | 18 | A.   I don't exactly recall as to that. |
|  | 19 | Q.   Do you believe emails were included in |
| 11:31:41 | 20 | that first search? |
|  | 21 | A.   I recall that emails were not included in |
|  | 22 | my first search. |
|  | 23 | Q.   Did you receive an email regarding -- |
|  | 24 | excuse me. |
| 11:32:03 | 25 | Did you receive an email telling you to |

Merrill Corporation - Boston

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 61

| | | |
|---|---|---|
| | 1 | perform a revised search? |
| | 2 | A.  I did not receive such an email. |
| | 3 | Q.  Did you receive a document in writing |
| | 4 | asking you to perform a revised search? |
| 11:32:23 | 5 | A.  I did not. |
| | 6 | Q.  Do you remember was the person that you -- |
| | 7 | did some -- did you speak to someone who asked you |
| | 8 | to run a revised search? |
| | 9 | MR. TUNG:  You should exclude from your |
| 11:32:56 | 10 | answer any attorney that you spoke with that -- |
| | 11 | well, you should exclude from your answer any |
| | 12 | attorney you spoke with. |
| | 13 | THE WITNESS:  No. |
| | 14 | BY MR. MCALHANY: |
| 11:33:15 | 15 | Q.  So you didn't speak with anyone who asked |
| | 16 | you to run a revised search; correct? |
| | 17 | A.  That's correct. |
| | 18 | Q.  How did you -- so you didn't get a |
| | 19 | writing, you didn't get an email and you didn't |
| 11:33:43 | 20 | speak to anybody.  How did you learn that you |
| | 21 | needed to run a revised search? |
| | 22 | MR. TUNG:  Again, I caution you not |
| | 23 | to reveal the substance of any attorney-client |
| | 24 | communications in your answer. |
| 11:34:14 | 25 | THE WITNESS:  I think I mentioned |

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 62

1           this earlier, but I learned that in the course of

2           conversing with my counsel.

3                   MR. TUNG:  Okay.  Counsel, let's take a

4           break.

11:34:26    5                   MR. MCALHANY:  Okay.

6                   THE VIDEOGRAPHER:  Off the record at

7           11:33.

8                   (Off the record.)

9                   THE VIDEOGRAPHER:  On the record at 11:38.

11:39:17    10     BY MR. MCALHANY:

11              Q.   Dr. Yoon, were any non-attorneys present

12          at the meeting you had that you were referring to

13          earlier?

14                   MR. TUNG:  Objection.  Vague.

11:39:33    15                   THE WITNESS:  Yes.

16          BY MR. MCALHANY:

17              Q.   So who was present in the meeting you

18          were just referring to where you learned you needed

19          to provide -- perform an additional search?

11:39:53    20              A.   I recall that five people that I had --

21          have mentioned earlier were present, including

22          myself.

23              Q.   Okay.  Let's shift gears here.  Are you

24          a -- excuse me.  Are you a named inventor on any

11:40:39    25          patents?

30f3dcea-4981-4701-8baf-359b5c1518e6

HIGHLY CONFIDENTIAL - OUTSIDE COUNSELS' EYES ONLY
JAE-SEUNG  YOON - 12/3/2011

Page 63

                             1          MR. TUNG:  Objection.  Vague.

                             2          THE WITNESS:  Yes, there are.

                             3    BY MR. MCALHANY:

                             4       Q.   Approximately how many patents?

11:40:52   5       A.   I don't have the exact number with me, but

                             6    I think it's less than 50.

                             7       Q.   5-0?  50?

                             8          THE INTERPRETER:  50.

                             9          MR. MCALHANY:  Okay.  Thank you.

11:41:23   10   BY MR. MCALHANY:

                            11       Q.   Do you understand that there's litigation

                            12    pending in the United States, in particular in

                            13    California, between Samsung and Apple?

                            14          MR. TUNG:  Again, I caution you not

11:41:37   15   to reveal the substance of any attorney-client

                            16    communication in your answer.  If your understanding

                            17    is separate from attorney-client communication, you

                            18    can answer the question.

                            19          THE WITNESS:  Yes.

11:42:01   20   BY MR. MCALHANY:

                            21       Q.   And you understand that Samsung has

                            22    asserted your '792 patent against Apple?

                            23          MR. TUNG:  And I caution you not to reveal

                            24    the substance of any attorney-client communication.

11:42:25   25   If your understanding of whether Samsung has