# EXHIBIT 1
# FILED UNDER SEAL

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>                    Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION FOR A PROTECTIVE ORDER**<br><br><br>Date: March 27, 2012[1]<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

---

[1]     Samsung has noticed this motion for hearing on the same day as Apple's Motion to Compel (Dkt No. 746), as directed by the Court's February 21, 2012 Order Denying Motion to Shorten Time.   (Dkt. 745 at 2).

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 27, 2012 at 10:00 a.m., or as soon as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court to enter a protective order.   This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting declarations of Samuel Lee and Rachel Herrick Kassabian; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

# RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 26, and the Court's inherent authority, Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") respectfully request that the Court grant a protective order preventing Apple from taking the deposition of ten of Samsung's highest-ranking executives:

1.   Gee Sung Choi, Vice-Chairman and Chief Executive Officer of SEC;

2.   Jong Kyun Shin, President of Mobile Communications for SEC;

3.   Won-Pyo Hong, Executive Vice President of Product Strategy of Mobile Communications for SEC;

4.   Heonbae Kim, Executive Vice President of the Korea R&D Team of Mobile Communications for SEC;

5.   Seunghwan Cho, Executive Vice President of Advanced Software Research and Development Team 2 of Mobile Communications for SEC;

6.   Dong Jin Koh, Executive Vice President of the Technology Strategy Team of Mobile Communications for SEC;

1      7.      Seungho Ahn, Executive Vice President and Head of SEC's Intellectual Property

2              Center;

3      8.      Jaewan Chi, Executive Vice President in SEC's Intellectual Property Center;

4      9.      Dale Sohn, President and Chief Executive Officer of STA; and

5      10.     Joseph Cheong, Chief Financial Officer of STA.

6

7    February 22, 2012                        QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
8

9

10                                            By *Rachel Herrick Kassabian*
                                                 Charles K. Verhoeven
11                                               Kevin P.B. Johnson
                                                 Victoria F. Maroulis
12                                               Michael T. Zeller

13                                            Attorneys for SAMSUNG ELECTRONICS CO.,
                                              LTD., SAMSUNG ELECTRONICS AMERICA,
14                                            INC., and SAMSUNG
                                              TELECOMMUNICATIONS AMERICA, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 1

      A.   Apple's Multitude of Deposition Notices to Samsung .............................. 1

      B.   Apple's Repeated Refusals To Discuss Reasonable Limitations On Apex
           Discovery ................................................................................................... 2

      C.   Apple's Motion to Compel, and This Court's Order to Further Meet and
           Confer ........................................................................................................ 4

      D.   Samsung's Corporate Hierarchy ............................................................... 5

      E.   Apple's Previously Taken And Scheduled Depositions ............................. 7

III.  LEGAL STANDARD ........................................................................................ 7

IV.   ARGUMENT ..................................................................................................... 9

      A.   Apple CANNOT satisfy the requirements for an apex deposition of any of
           the executives it seeks. .............................................................................. 9

           1.   CEO Gee Sung Choi Is An Apex Executive And Has No Unique,
                Personal Knowledge That Cannot Be Obtained Through Other
                Means. .............................................................................................. 9

           2.   President Jong Kyun Shin Is An Apex Executive And Has No
                Unique, Personal Knowledge That Cannot Be Obtained Through
                Other Means. .................................................................................. 11

           3.   Won Pyo Hong Is An Apex Executive And Has No Unique,
                Personal Knowledge That Cannot Be Obtained Through Other
                Means. ............................................................................................ 12

           4.   Heonbae Kim, Seunghwan Cho, And Dong Jin Koh, Are Apex
                Executives And Have No Unique, Personal Knowledge That Cannot
                Be Obtained Through Other Means. ................................................ 14

           5.   Seungho Ahn and Jaewan Chi Have No Unique, Personal
                Knowledge That Cannot Be Obtained Through Other Means ............ 16

           6.   CEO Dale Sohn And CFO Joseph Cheong Are Apex Executives
                And Have No Unique, Personal Knowledge That Cannot Be
                Obtained Through Other Means. ..................................................... 17

      B.   Apple Has Ample Opportunities To Depose Lower Level Employees and
           30(b)(6) Witnesses. ................................................................................. 18

      C.   Samsung's Motion Should Be Granted for the Additional Reason that Apple
           Has Failed to Meet and Confer ............................................................... 19

V.      CONCLUSION ................................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Affinity Labs of Tex. v. Apple, Inc.*,
  2011 WL 1753982 (N.D. Cal. May 9, 2011) ...............................................................9

*Baine v. General Motors Corp.*,|
  141 F.R.D. 332 (M.D. Ala. 1991) ...........................................................................8,9

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
  2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ..........................................................8, 20

*Doble v. Mega Life and Health Ins. Co.*,
  2010 WL 1998904 (N.D. Cal. May 18, 2010) ...........................................................10

*First United Methodist Church of San Jose v. Atl. Mutual Ins. Co.*,
  1995 WL 566026 (N.D. Cal 1995) .............................................................................8

*In re Google Litig.*,
  2011 WL 4985279 (N.D. Cal. Oct. 19, 2011) ........................................................11, 14

*Groupion, LLC v. Groupon, Inc.*,
  2012 WL 359699 (N.D. Cal. Feb. 2, 2012) ...........................................................9, 16

*Hardin v. Wal-Mart Stores, Inc.*,
  2011 WL 6758857 (E.D. Cal. Dec. 22, 2011) ............................................................9

*Mehmet v. Paypal, Inc.*,
  2009 WL 921637 (N.D. Cal. Apr. 3, 2009) ...........................................................9, 11

*WebSideStory, Inc. v. NetRatings, Inc.*,
  2007 WL 1120567 (S.D. Cal. April 6, 2007) ..............................................................8

## **Statutes**

F.R.C.P. 30(b)(6) .................................................................1, 2, 11, 14, 17, 18, 19

F.R.C.P. 26(c) .........................................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION

Throughout this litigation, Apple has engaged in a series of oppressive tactics designed to pressure Samsung into capitulating and exiting the mobile device market.   Apple has moved, unsuccessfully, for sanctions during the preliminary injunction phase of the litigation.   (Dkt. No. 247.)   Apple has also moved for a protective order to exclude one of Samsung's attorneys from taking depositions.   (Dkt. No. 390.)   Apple moved again for sanctions just two weeks ago, and then yet again for additional sanctions a week after that.   (Dkt. Nos. 715 & 741.)   Predictably following its pattern of harassment, Apple now insists on subjecting many of Samsung's highest ranking executives to depositions.   This Court should reject Apple's latest installment in its Death by Discovery campaign.

Under federal law, high-ranking executives should only be subject to deposition if two conditions are met.   <u>First</u>, the executives must have unique, personal knowledge that is relevant to the case.   <u>Second</u>, the party seeking the deposition must first exhaust less burdensome means of discovery.   Apple can meet neither requirement here.   Apple can obtain, and in many cases already has obtained, any relevant information these executives may possess through the depositions of lower level employees who were centrally involved in the design, development, and marketing of the products at issue, as well as the numerous 30(b)(6) witnesses who have been designated in response to Apple's 250+ 30(b)(6) topics.   And further, Apple has not even come close to exhausting the many less burdensome avenues available to it for obtaining the discovery it claims to need.   Because Apple cannot justify the significant disruption to Samsung's business that would be triggered by these apex depositions, a protective order should issue.

### II.       STATEMENT OF FACTS

#### A.        Apple's Multitude of Deposition Notices to Samsung

Since November 1, 2011, Apple has noticed nearly 100 depositions of current or former Samsung employees.   (Declaration of Rachel Herrick Kassabian In Support of Samsung's Motion for Protective Order ("Kassabian Decl.") ¶ 2.)   Nearly one-third of these deposition notices – 30 out of 95 – were directed to Samsung's senior executives, with titles of Vice President or higher.

1    (*Id.*)   Only three of those 30 executives -- Brian Rosenberg, Tim Sheppard and Todd Pendleton --

2    were identified in Samsung's Initial disclosures or Supplemental Initial Disclosures.   (*Id.* ¶ 3.)

3    Samsung has not objected to the depositions of those three executives.   (*Id.*)   Apple has also

4    served eleven sets of Rule 30(b)(6) deposition notices traversing more than 250 topics and sub-

5    topics.   (*Id.* ¶ 2.)   Apple served many of these Rule 30(b)(6) notices after it served the bulk of its

6    Rule 30(b)(1) notices.

7            In many of the depositions Apple has taken to date, Apple eschewed basic factual

8    questions of the industrial designers, UX designers, and engineers who actually designed and

9    developed the accused products, and instead asked questions lacking in foundation and fishing for

10   information regarding Samsung's senior executives.   *See, e.g.*, Kassabian Decl. Ex. F at 38:2-4

11   (Hangil Song Dep. Tr. ) ("Who gave the order to make Samsung's phones look like Apple's

12   phones?), & 43:20-22, 47:22-24) ("Who at Samsung gave the instruction to make Samsung cell

13   phones look more similar to the iPhone after the release of the iPhone?"); Kassabian Decl. Ex. G

14   at 99:24-100:1 (Bo-Ra Kim Dep. Tr.) ("Do you receive recommendations from anyone to move

15   Samsung's product designs closer to Apple's product designs?"); Kassabian Decl. Ex. H at 60:9-

16   13, 93:20-22, 95:13-15, 96:11-12, 98:1-3 (Sun Young Yi Dep. Tr.) (asking these primary

17   witnesses about the responsibilities of executives they had little involvement with, and the

18   meaning of comments executives purportedly made about subject matter the employee did not

19   work on, such as asking industrial designers about comments regarding user interface design);

20   Kassabian Decl. Ex. I at 15-20, 23:4-29:18, 29:19-39:11, 34:4-12, 34:13-14 (Jinsoo Kim Dep. Tr.)

21   (questioning extensively about Samsung's organizational chart and the roles of various

22   executives).

23        **B.      Apple's Repeated Refusals To Discuss Reasonable Limitations On Apex**

24                **Discovery**

25            Samsung first voiced its objection to Apple's disproportionate noticing of senior

26   executives for deposition at the parties' lead counsel meet and confer session on January 5, 2012.

27   (Kassabian Decl. ¶ 4.)   Thereafter, Apple continued to notice additional Samsung senior

28   executive depositions.   (*Id.*)   On January 13, 2012, Samsung more specifically identified its apex

objections in relation to at least one of Samsung's executives that had been noticed as of that date. (*Id.* ¶ 4.)   Apple again served several additional apex deposition notices thereafter.   (*Id.* ¶ 4.)   On February 3, Samsung sent additional correspondence regarding its objections to Apple's apex deposition notices, specifically identifying 23 senior executives whose depositions Apple had improperly noticed.   (*Id.* ¶ 5; Ex. A.)   At the parties' lead counsel meet and confer on February 6, 2012, Samsung asked Apple to explain what unique personal knowledge it believed these individuals posses, and to propose some reasonable limitations on the scope of testimony.   (*Id.* ¶ 6.)   Apple finally responded on February 9, but did not agree to withdraw even a single one of its senior executive deposition notices.   (*Id.* ¶ 7; Ex. B.)   Samsung responded that same day, again requesting that Apple explain why whatever knowledge these individuals possess is unique to them and why other means of discovery were insufficient.   (*Id.* ¶ 7; Ex. C.)   Apple did not respond.   (*Id.*)   Nevertheless, Samsung subsequently narrowed its apex objections down from 23 to 17 executives.   (*Id.*, ¶ 8.)

After Samsung raised the apex issue, Apple began withdrawing numerous deposition notices—including many lower-ranking individuals, even while leaving intact its notices for their supervisors—and in some cases the supervisor of their supervisor.   (Kassabian Decl. ¶ 9.)   At the parties' lead counsel meet and confer session on February 14, Samsung's counsel attempted to engage Apple's counsel in a merits discussion of the apex issue.   (*Id.* ¶ 10.)   More specifically, Samsung pointed out that the evidence Apple had offered to date did not reflect that any of the apex executives at issue possessed unique knowledge, and asked for a response.   (*Id.*)   Apple refused, stating only that its position was laid out in its February 9 letter.   (*Id.*)   Samsung also pointed out that Apple had recently cancelled the depositions of several lower-level employees who reported (directly or indirectly) to these apex executives, and asked why Apple had done so and why that didn't defeat Apple's demand for these apex depositions.   (*Id.* ¶ 11.)   Apple responded only that it had done so for "strategic" reasons, and repeatedly stated that the only issue to discuss was whether Samsung intended to immediately drop all of its objections and offer all of the apex executives without limitation—otherwise it would file a motion.   (*Id.*)   Apple then refused to discuss the matter further, demanding instead that the parties move on to the next issue.

(*Id.*)   Nevertheless, during this same meeting Samsung offered to drop three more of its apex objections, bringing its objections down from 17 to 14 executives.   (*Id.* ¶ 12.)   Samsung asked Apple if it would drop other of its apex notices in return.   (*Id.*)   Apple again refused.   (*Id.*)

## C.   Apple's Motion to Compel, and This Court's Order to Further Meet and Confer

On February 16, 2012, Apple filed a motion to compel the depositions of the 14 apex executives for whom Samsung had refused to provide deposition dates, and requested shortened time on its motion.   (Dkt. No. 736, 738.)   On February 17, this Court issued an order denying Apple's request, and instructed the parties to file their apex motions for a regular noticed hearing on the same date.   (Dkt. 745.)   In that Order, the court instructed the parties to "use the additional time available to them to carry out further attempts through the meet and confer process to reduce the number of individuals in dispute."   (Dkt. 745 at 2 n. 3.)   To that end, on February 20, Samsung reached out to Apple to further discuss the apex issues, and requested that the parties participate in a conference call.   (Kassabian Decl. ¶ 14, Ex. D.)   Apple failed to respond to Samsung's meet and confer request.   (*Id.*)   Instead, on February 21, Apple unilaterally re-noticed its motion to compel for hearing on March 27.   (Dkt. No. 746.)

Even after Apple unilaterally re-noticed its motion, Samsung again reached out to Apple on February 22, offering to drop four more of its apex objections, and asking Apple to respond. (Kassabian Decl. ¶ 15, Ex. E.)   Apple ignored this request to meet and confer as well.   (*Id.*)

Thus, as a result of several rounds of compromise on Samsung's part, and despite no compromise on Apple's part, Samsung now objects to the depositions of just ten of the senior level executives Apple noticed:

1.   Gee Sung Choi, Vice-Chairman and Chief Executive Officer of SEC;

2.   Jong Kyun Shin, President of Mobile Communications for SEC;

3.   Won-Pyo Hong, Executive Vice President of Product Strategy of Mobile Communications for SEC;

4.   Heonbae Kim, Executive Vice President of the Korea R&D Team of Mobile

Communications for SEC;

5.     Seunghwan Cho, Executive Vice President of Advanced Software Research and Development Team 2 of Mobile Communications for SEC;

6.     Dong Jin Koh, Executive Vice President of the Technology Strategy Team of Mobile Communications for SEC;

7.     Seungho Ahn, Executive Vice President and Head of SEC's Intellectual Property Center;

8.     Jaewan Chi, Executive Vice President in SEC's Intellectual Property Center;

9.     Dale Sohn, President and Chief Executive Officer of STA; and

10.    Joseph Cheong, Chief Financial Officer of STA.

**D.     Samsung's Corporate Hierarchy**

General Overview of SEC.   SEC is a multi-national corporation with over 190,000 employees.   (Declaration of Samuel S. Lee ("Lee Decl.") ¶ 3.)   The corporation is divided into eight major business divisions -- Mobile Communications, Semiconductor, Liquid Crystal Display, Visual Display, Telecommunication System, Information Technology Solutions, Digital Appliances, and Digital Imaging divisions -- and several stand-alone centers or offices.   (Lee Decl. ¶ 3.)   The products and features at issue in this case were developed by one of those eight— the Mobile Communications Division.   (Lee Decl. ¶ 4.)   The Mobile Communications Division is divided into several "teams" that are responsible for the various facets of product development. (*Id.*)   The teams are further divided into "groups," which in turn contain "parts" and "cells." (*Id.*)   The designers and engineers responsible for the day-to-day development of the products and features at issue worked in various "parts" or "cells."   (*Id.*)   They were often supervised by Senior Engineers and Senior Designers, who in turn reported to Vice Presidents who were responsible for individual parts.   For example, the products at issue were designed by individuals within cells that belonged to various parts, including UX Design Part 1 and Industrial Design.

1   (Lee Decl. ¶ 5.)   Both parts are headed by Vice Presidents and belong to the Design Group,[2]

2   which in turn belongs to the Product Strategy Team.[3]   (*Id.*)   Similarly, the engineering features

3   were developed by individuals in "parts" or "cell" that belonged to various groups that belonged to

4   one of several major teams.   (*Id.*)   As explained *infra*, several of the high-ranking SEC

5   executives included in this Motion oversee one of the major teams at a high level -- often three or

6   more steps removed from those who were responsible for the day-to-day development of the

7   products and features at issue.

8          The Teams Responsible For Developing The Products And Features At Issue.   At least six

9   technical development teams, including Advanced Software R&D Team 1, Advanced Software

10   R&D Team 2, the R&D Management Team; the Visual R&D Development Team, the System

11   Software R&D Team, and the Advanced Mechanical R&D Team, developed the hardware and

12   software for the products at issue, while the Product Strategy Team was responsible for design and

13   marketing.   (Lee Decl. ¶ 6.)   The Intellectual Property Center, a stand-alone department that

14   reports directly to CEO Gee Sung Choi, was responsible for intellectual property related issues

15   and STA, along with various groups within the Product Strategy Team, was responsible for

16   coordinating the marketing and sales of the products in the United States.   (Lee Decl. ¶ 7.)   In

17   addition to SEC CEO Gee Sung Choi and President Jong Kyun Shin, Apple seeks to depose the

18   heads of three Mobile Communications teams[4], STA CEO Dale Sohn and CFO Joseph Cheong,

19   and two high-ranking executives in the Intellectual Property Center.

20

21   _____

22          [2]   The Design Group is headed by Executive Vice President DongHoon Chang.   (Lee Decl.

23   ¶ 5.)
         [3]   The Product Strategy Team is headed by Executive Vice President WonPyo Hong.   (Hong

24   Decl. ¶ 2.)
         [4]   Specifically, Apple has noticed Seunghwan Cho, Executive Vice President and the head of

25   Advanced Software R&D Team 2; Dong Jin Koh, Executive Vice President and head of the

26   Technology Strategy team; and WonPyo Hong, Executive Vice President and head of the Product
     Strategy team.   In addition, Apple has noticed Heonbae Kim, Executive Vice President and head

27   of the Korea R&D team, which, as explained *infra*, was not responsible for developing the
     products and features at issue.

28

**E.      Apple's Previously Taken And Scheduled Depositions**

To date, Apple has deposed or scheduled:

- Eight lower-level employees, and one Vice President in Advanced Software R&D Team 1;

- Four lower-level employees in Advanced Software R&D Team 2;

- Four lower-level employees in the R&D Management Team[5];

- Seven lower-level employees in the Visual R&D Development Team;

- Two lower-level employees and one Vice President in the System Software R&D Team; and

- 18 lower-level employees, three Vice Presidents, and DongHoon Chang, the Senior Vice President in charge of the Design Group and SEC's highest ranking design executive, in the Product Strategy Team.

(Lee Decl. ¶ 6.)   In addition, Apple has deposed or scheduled seven STA employees who had knowledge regarding STA's finances and marketing efforts and the person with the most knowledge regarding Samsung's licensing efforts.   (Lee Decl. ¶ 7.)

## III.   **LEGAL STANDARD**

Federal law protects high-ranking executives from harassing and unnecessary depositions. Under Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition or limiting its scope.   The concern regarding "annoyance, embarrassment, oppression, [and] undue burden" is especially prevalent when a party seeks to depose high-ranking executives at the top of a corporation's hierarchy.   Indeed, "[v]irtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."   *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067,

---

[5]   As discussed *infra*, Apple has cancelled the deposition of a Vice President in the R&D Management Team, Woncheol Chae.

at *3 (N.D. Cal. Jan. 25, 2007).   Accordingly, courts impose two requirements before ordering the depositions of high-ranking executives.   First, the executive must have "unique first-hand, non-repetitive knowledge of facts at issue in the case."   *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. April 6, 2007).   Second, the party seeking deposition must "exhaust other less intrusive discovery methods, such as interrogatories and depositions of lower level employees."   *Id.*

When "high-level decision maker[s are] 'removed from the daily subjects of the litigation' [and have] no unique personal knowledge of the facts at issue," depositions of those executives are improper.   *Celerity*, 2007 WL 205067, at *3 (quoting *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991)); *see also First United Methodist Church of San Jose v. Atl. Mutual Ins. Co.*, 1995 WL 566026 (N.D. Cal 1995) (noting that "[b]ecause of the potential for abuse by plaintiffs," courts preclude depositions of high-level corporate officers "when the officer has no first-hand knowledge of the facts of the case *or* where the officer's testimony would be repetitive") (emphasis added).

Even if an executive has unique firsthand knowledge, a party must first exhaust the depositions of lower level employees and establish a need to depose high-ranking executives. *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *6-7 (N.D. Cal. May 9, 2011) (granting Apple, Inc.'s motion for a protective order and noting that "[c]ourts regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness"); *Mehmet v. Paypal, Inc.*, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009) (granting protective order and noting that "[c]ourts generally refuse to allow the immediate deposition of high-level executives, the so-called 'apex deponents,' before the depositions of lower level employees with more intimate knowledge of the case.")

IV.     **ARGUMENT**

The ten Samsung executives at issue in this motion, all of whom hold the title of Executive Vice President or higher, warrant protection under the apex doctrine.[6]   This Court should preclude the depositions of these high-ranking executives because (1) Apple has failed to demonstrate that the information sought from these executives is both unique, first-hand, and non-repetitive, and not known by any other Samsung employee, and (2) Apple has not made an attempt to obtain information regarding the disputed issues through other less intrusive and burdensome means. These depositions should not be permitted for the additional reason that Apple has again disregarded this Court's directives in failing to meaningfully meet and confer on apex issues. Samsung's motion should be granted.

A.     **Apple CANNOT satisfy the requirements for an apex deposition of any of the executives it seeks.**

1.     **CEO Gee Sung Choi Is An Apex Executive And Has No Unique, Personal Knowledge That Cannot Be Obtained Through Other Means.**

Gee Sung Choi, Chief Executive Officer and Vice Chairman of SEC, epitomizes the "apex" designation.   Mr. Choi directly or indirectly oversees approximately 190,000 SEC employees—*three times* more than the number of employees at Apple.   (Decl. of Gee Sung Choi ("Choi Decl.") ¶ 2; Lee Decl. ¶ 3.)   In addition to the Mobile Communications division (which designed and developed the products at issue), Mr. Choi is responsible for *seven* other business divisions that make thousands of products entirely unrelated to smartphones and tablets, including semiconductor chips, washing machines, microwaves, and refrigerators.   (Choi Decl. ¶ 3, Lee Decl. ¶ 3.)

---

[6]     *See Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *1 (N.D. Cal. Feb. 2, 2012) (denying request to depose four Senior Vice Presidents);   *Hardin v. Wal-Mart Stores, Inc.*, 2011 WL 6758857, at *1-2 (E.D. Cal. Dec. 22, 2011) (noting that there is "no question" that an Executive Vice President "is a busy, high-ranking executive" subject to the apex doctrine); *Baine* 141 F.R.D. at 332 (granting protective order for Vice President under the apex doctrine).

1    Apple claims it seeks to depose Mr. Choi because he is "responsible for the direction of the

2    company in matters highly relevant to this case."   (Kassabian Decl. Ex. B at 2.)   Of course, Mr.

3    Choi—as CEO and Vice Chairman—is responsible for the direction of the company in *all matters*.

4    In Mr. Choi's role at the pinnacle of one of the world's largest electronics companies, however, his

5    knowledge regarding the accused features of the products at issue—which represent a tiny fraction

6    of the thousands of products manufactured by Samsung each year—is necessarily limited to

7    information reported to him during meetings with other high-ranking Samsung executives.   (Choi

8    Decl. ¶ 5); *cf. Doble v. Mega Life and Health Ins. Co.*, 2010 WL 1998904, at *2 (N.D. Cal. May

9    18, 2010) (attending high-level business meetings or making generalized comments "is not the

10   level of personal involvement which would justify deposition of the CEO.")   The depositions

11   Apple has taken thus far in this case confirm Mr. Choi's non-involvement in the day-to-day

12   decision-making of product design, development, and marketing.   (*See, e.g.*, Kassabian Decl. Ex.

13   J at 32:4-6 (Jungmin Yeo Dep. Tr.) (confirming Mr. Choi never directly gave developers input

14   regarding design); Ex. K at 109:1-19 (Timothy Sheppard Dep. Tr.) (Mr. Choi has visited STA

15   only twice in four years and focused on meetings with the highest-ranking STA executives).

16   Apple simply cannot demonstrate how Mr. Choi—who is not a designer, engineer, or

17   software developer—has information that is both unique and first-hand or why it cannot obtain

18   this information from numerous lower level employees.   Mr. Choi is several levels removed from

19   the individuals who are primarily responsible for designing, developing and marketing the

20   products at issue.[7]   *Compare In re Google Litig.*, 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011).[8]

21

---

22       [7]   In fact, Mr. Choi is at least *five* levels removed from the actual designers of the products at

23   issue.   For example, Bo-Ra Kim, the designer responsible for the industrial design of the Infuse
     4G, reports to Vice President Chang Hwan Hwang, who in turn reports to Senior Vice President

24   Dong Hoon Chang, who in turn reports to Executive Vice President Won Pyo Hong, who in turn
     reports to Mobile Communications President Jong Kyun Shin, who in turn reports to Mr. Choi.

25   (Lee Decl. ¶ 8.)

26       [8]   This court's ruling in *In re Google Litig.* is instructive.   There, Larry Page was a named
     inventor on seven patents at issue, had direct knowledge of the search industry, was involved in

27   licensing negotiations, and Google's discovery responses   specifically reference[d] [Larry] Page
     and [Sergey] Brin's unique knowledge."   2011 WL 4985279, at *2.   Yet, this court held that Mr.

28       (footnote continued)

---

Whatever information Apple seeks to obtain from Mr. Choi is readily available through the other depositions Apple has noticed, as well as the testimony of thirteen 30(b)(6) witnesses Samsung has designated to date.   Apple has served deposition notices for twenty Samsung employees involved in product design, at least twenty-six employees involved in technical development, and fourteen employees involved in sales and marketing.   (Lee Decl. ¶¶ 6,7; Kassabian Decl. ¶ 26.) Many of these employees hold managerial or executive-level positions.   (*Id.*)   Rather than pursue these depositions—several of which Apple has canceled—Apple seeks to bypass more directly knowledgeable witnesses and depose the CEO first.   The apex doctrine, however, was specifically designed to prevent "the immediate deposition of high-level executives . . . before the depositions of lower level employees with more intimate knowledge of the case[.]"   *Mehmet*, 2009 WL 921637 at *2.

> **2.     President Jong Kyun Shin Is An Apex Executive And Has No Unique, Personal Knowledge That Cannot Be Obtained Through Other Means.**

As President, Jong Kyun Shin oversees five business divisions at SEC, including the Mobile Communications Division.   (Shin Decl. ¶ 3.)   The four other divisions Mr. Shin in responsible for—the Telecommunications Systems, Information Technology Solutions, Digital Imaging, and Media Solution Center divisions—are unrelated to mobile devices.   (*Id.*)   Within just the Mobile Communications Division, Mr. Shin oversees over 68,000 employees—more than Apple CEO Tim Cook.   (Shin Decl. ¶ 2; Lee Decl. ¶ 4; Kassabian Decl. Ex. N.)   Only CEO Choi occupies a position senior to President Shin at SEC.

While Apple claims it seeks to depose Mr. Shin regarding the design and development of mobile phones and tablets, by Apple's own admission, his knowledge is limited to what he learned during executive-level meetings and comments me made regarding overall business strategy. (Kassabian Decl. Ex. B at 2.)   Apple's stated justification for the deposition of Mr. Shin is that he attended an "executive-level meeting" in February 2010 where business strategy regarding mobile

---

Page's deposition must be restricted to three hours and that Mr. Brin could not be deposed until the plaintiff demonstrated unique knowledge.   *Id*.

phones was discussed and authored an e-mail discussing "Samsung's general strategy on the Galaxy Tab."   This is insufficient.

Like CEO Choi, Mr. Shin is not a designer or engineer and did not have primary responsibility for the day-to-day decision making process regarding the design, development, or marketing of any Mobile Communications products.   (Shin Decl. ¶¶ 5-7.)   His knowledge regarding the products is based on high-level meetings, such as the one Apple identified during its February 9 letter, and reports they receive from lower level employees within Mobile Communications.   (Shin Decl. ¶ 5.)   Like Mr. Choi, Mr. Shin is responsible for overseeing multiple different SEC business divisions that include tens of thousands of employees and, as a result is far removed from the design and engineering processes.   As explained *supra*, only one of those five divisions, Mobile Communications division, is even relevant here.   Apple has not identified any specific unique knowledge Mr. Shin has and until it exhausts the depositions of the various employees within the parts, units, and cells actually responsible for design and development of the products at issue, Mr. Shin's deposition must be precluded.

**3.      Won Pyo Hong Is An Apex Executive And Has No Unique, Personal Knowledge That Cannot Be Obtained Through Other Means.**

Won Pyo Hong is the Executive Vice-President of the Product Strategy team in SEC's Mobile Communications division.   (Hong Decl. ¶ 2.)   Mr. Hong oversees approximately 800 employees.   (*Id*.)   As Executive Vice President Mr. Hong is one of the highest-ranking executives in SEC's Mobile Communications Division, and the highest ranking executive in the Product Strategy Team.   His responsibilities extend far beyond the products at issue.   Mr. Hong is responsible for overseeing the nine groups within the Mobile Communications division, each of with are managed by a Senior Vice President or Vice President.   (Hong Decl. ¶ 3.)

Despite Apple's claim that Mr. Hong has extensive knowledge regarding the design and development of the products at issue, (Kassabian Decl. Ex. B at 2-4), in fact, his knowledge is limited to what he learned during executive-level meetings and reports he received from lower level executives and employees who were directly involved in the design process.   Apple's basis for alleging Mr. Hong is involved in product design is an Apple document

1    (APLNDC0000036110) that supposedly reflects a statement he made regarding Samsung's

2    potential success in the smart phone market.   A more tenuous connection is difficult to imagine.

3            Mr. Hong oversees many hundreds of employees engaged in developing numerous

4    products.   He is not a designer and did not have primary responsibility for the day-to-day decision

5    making process regarding the design, development, or marketing of any Mobile Communications

6    products.   (Hong Decl. ¶¶ 5-7.)   His knowledge regarding the products is based on high-level

7    meetings, such as the one Apple identified, and reports they receive from lower level employees

8    within Mobile Communications.   (Hong Decl. ¶ 5.)   Again, Apple has not identified any unique,

9    knowledge he might have regarding the design and development of the products at issue that

10   cannot be discovered from lower level employees.

11           As explained *supra*, Apple will have or has had the opportunity to depose numerous

12   witnesses who were involved in the day-to-day design and development of the products at issue,

13   including eighteen lower-level employees, and the three Vice Presidents who were responsible for

14   the parts that actually designed the products at issue—Sungsik Lee, Vice President of UX Design

15   Part 1, SeogGuen Kim, Vice President of Product Design Part 1, and Minhyouk Lee, Vice

16   President of the Industrial Design Cluster Part.   (Lee Decl. ¶ 5.)   Apple will also be deposing

17   Senior Vice President DongHoon Chang, the head of the Product Design Group.   In addition,

18   Samsung has designated a 30(b)(6) witness on several topics related to the Product Strategy

19   Team's activities.   (*See* Kassabian Decl. ¶ 22.)   Apple has not demonstrated why these

20   depositions would be insufficient and what non-repetitive, unique knowledge Mr. Hong might

21   have.

22           Apple has also failed to exhaust the depositions of lower-level designers.   To date, Apple

23   has cancelled at least three depositions of lower-level employees who would have superior

24   knowledge regarding the products at issue, including Youngseok Bang, a Senior Designer who

25   was responsible for the Galaxy S II and Infuse 4G; Yun-Jung Lee, A Principal Designer; and

26   ChangHwan Hwang, Vice President of Product Design Part 2.   (Lee Decl. ¶ 9.)   Until Apple

27   completes the depositions of lower level employees and Senior Vice President DongHoon Chang,

28   it could not possibly even begin to demonstrate any need to depose Executive Vice President Won

1    Pyo Hong.   *Cf. In re Google Litig.*, 2011 WL 4985279, at *2 (noting that Sergey Brin may not be

2    deposed until the plaintiff completed the depositions of other witnesses and "identif[ied] topics

3    that only Brin [could] address.")

4              **4.        Heonbae Kim, Seunghwan Cho, And Dong Jin Koh, Are Apex**

5                         **Executives And Have No Unique, Personal Knowledge That Cannot Be**

6                         **Obtained Through Other Means.**

7              Apple also seeks to depose three high-ranking executives in various SEC engineering and

8    strategy divisions.   Heonbae Kim is the Executive Vice President of the Korea R&D Team at

9    SEC's Wireless, or Mobile Communications, division and oversees approximately 970 employees.

10   (Kim Decl. ¶ 2.)   Seunghwan Cho is the Executive Vice President of the Advanced Software

11   R&D 2 team at SEC's Wireless, or Mobile Communications, division and oversees approximately

12   800 employees. (Cho Decl. ¶ 2.)   Dong Jin Koh is the Executive Vice President of the

13   Technology Strategy team of the Wireless, or Mobile Communications, division and oversees

14   approximately 370 employees.   (Koh Decl. ¶ 2.)

15             Once again, Apple's rationale for deposing these executives amounts to little more than

16   these executives' positions as heads of various teams that were involved in the development of the

17   products at issue.   Apple claims that Mr. Koh "is the head of Samsung's R&D Management

18   Group" and that "[i]ndividuals within the R&D Management Group have generated numerous

19   documents" that discuss the products at issue, and that he "discussed support" for various

20   Samsung products.   Apple believes it should be allowed to depose Mr. Kim because "[h]e

21   purportedly contributed to Samsung's overwhelming first-place ranking in the domestic market"

22   and that he "participated in executive-level meetings [regarding] phones."   Similarly, Apple

23   views Mr. Cho's deposition as necessary because he "contributed to Samsung's smartphone (sic)

24   success" and "attended meetings . . . during which the R&D Center reported its finding to Mr.

25   Cho."   (Kassabian Decl. Ex. B at 4, 6-7.)

26             On their face, Apple's bases for deposing these apex executives fails to pass muster.   They

27   had little or no direct involvement in the design or development of the products at issue.   SEC's

28   R&D teams are responsible for developing dozens, if not hundreds, of products.   For example, in

the past year alone, Mr. Cho has overseen the development of 75 products, while Mr. Kim has overseen the development of 45 products.   (Cho Decl. ¶ 3; Kim Decl. ¶ 3.)   As the highest-ranking executives within these teams, Messrs. Kim, Cho, and Koh oversee hundreds of employees.   (Lee Decl. ¶ 12-14.)   The mere fact that some of those lower level employees who indirectly report to these executives were involved in the development of the products at issue does not demonstrate that these executives have unique, non-repetitive knowledge.   Indeed, none of them had primary responsibility for the day-to-day decision making regarding the design, development, or marketing of the products at issue and their knowledge is based on high-level meetings and reports they receive from lower level employees. (Cho Decl. ¶¶ 5-7; Kim Decl. ¶¶ 5-7; Koh Decl. ¶¶ 5-7.)

Apple's decision to seek depositions of Samsung's highest-ranking R&D executives is especially unwarranted given Apple's decision to cancel the depositions of lower-level employees like Eun Ko, an Assistant Manager in SEC's R&D Management Group.   Additionally, as explained *supra*, Apple has deposed or scheduled twenty six lower-level employees and Vice President MinCheol Schin.   (Lee Decl. ¶ 6.)   These employees, along with the lower level employees Apple has chosen not to depose, are substantially more likely to have discoverable information than the three high-ranking executives Apple insists on deposing.

Moreover, Apple's strategy of working its way up Samsung's organizational charts and noticing any names it finds is especially apparent with the noticing of Heonbae Kim.   Mr. Kim has never worked with either of the Advanced Software R&D teams responsible for developing the features at issue.   (Lee Decl. ¶ 12.)   If Apple had cooperated with Samsung during the lead counsel meet and confer, at the very least the parties could have resolved notices that are clearly erroneous.   In any event, Apple has not demonstrated why these depositions would be insufficient and what non-repetitive, unique knowledge Messrs. Kim, Cho, and Koh have.   When a party has not exhausted less intrusive means of discovery and seeks to depose apex witnesses on information that could be obtained from lower-level employees, such depositions must be precluded.   *Groupion, LLC*, 2012 WL 359699, at *4.

**5. Seungho Ahn and Jaewan Chi Have No Unique, Personal Knowledge That Cannot Be Obtained Through Other Means**

Seungho Ahn is the Executive Vice President and Head of Samsung's Intellectual Property Center.   (Ahn Decl. ¶ 2.)   As part of his job, Dr. Ahn supervises 250 employees at Samsung's Intellectual Property Center.   (*Id.*)   The Intellectual Property Center has four different teams that report to Dr. Ahn—Intellectual Property Strategy; Licensing; Technical Analytics; and the Intellectual Property Legal teams.   Jaewan Chi is the Executive Vice President of the Licensing team and supervises approximately 35 individuals.   (Chi. Decl. ¶ 2.)   Both Messrs Ahn and Chi are lawyers.   (Lee Decl. ¶ 15.)   Notably, Apple did not notice their depositions until after they attended a court-ordered mediation with Apple on December 20 and 21, 2011, noticing their depositions within a week of the mediation.   (Lee Decl. ¶ 15.)

Apple claims it seeks to depose these executives as to two topics: ETSI and licensing issues, but it cannot demonstrate that any of these executives has unique, personal knowledge that is not available through lower level employees. Apple claims that Dr. Ahn made a comment regarding licensing issues in a press release and that Mr. Chi "is knowledgeable about key facts related to Samsung's licensing practices." (Kassabian Decl. Ex. B at 10-12.)

Neither topic justifies these depositions.   As reflected in their declarations, neither of these executives oversee Samsung's participation in ETSI or are personally involved in that organization.   (Ahn Decl. ¶ 4; Chi Decl. ¶ 3.)   To the extent Apple wants to depose Samsung witnesses about ETSI, Samsung has designated a 30(b)(6) witness to on several topics, including those that seek information regarding Samsung's participation in ETSI and Samsung's licensing practices.   (Kassabian Decl. ¶ 22.)   In addition, Apple has already deposed Seong-Woo Kim, who is a Director in the Licensing Team at the Intellectual Property Center at SEC and testified extensively about its licensing practices, and YoungSoon Lee, a Senior Engineer in the Technical Analysis Group in the Intellectual Property Center.   (Lee Decl. ¶ 7.)   Furthermore, though it believes that they do not possess any knowledge relevant to this action, in an effort to further compromise pursuant to this Court's February 21, 2012 Order, Samsung has withdrawn its apex objections to the depositions of three other high-ranking executives in the Intellectual Property

1   Center—Senior Vice Presidents Seung Gun Park and Minhyung Chung, and Vice President and

2   General Counsel Kenneth Korea.   As such, Apple cannot show that Dr. Ahn and Mr. Chi have

3   unique personal knowledge on those topics that cannot be obtained through other depositions.

4            **6.     CEO Dale Sohn And CFO Joseph Cheong Are Apex Executives And**

5                 **Have No Unique, Personal Knowledge That Cannot Be Obtained**

6                 **Through Other Means.**

7            Dale Sohn and Joseph Cheong are the Chief Executive Officer and Chief Financial Officer

8   respectively of STA.   (Sohn Decl. ¶ 2; Ceong Decl. ¶ 2.)   As such, they are two of STA's top

9   ranking officers.   Mr. Sohn oversees STA's approximately 1,000 employees and three business

10  divisions – Wireless Terminals Systems; Wireless Networks Systems; and Business

11  Communications Systems.   (Sohn Decl. ¶ 3.)   As Chief Financial Officer, Mr. Cheong oversees

12  approximately 300 employees.   (Cheong Decl. ¶ 3.)

13           Apple cannot demonstrate that Messrs. Sohn and Cheong have unique, non-repetitive

14  knowledge that is not available through lower level employees.   Apple's basis for deposing Mr.

15  Sohn is that he sent high-level e-mails regarding STA's overall strategy and has knowledge about

16  "Samsung's decision not to put its logo on the fact of the Galaxy tab."   Apple admits that it seeks

17  to depose Mr. Cheong based on nothing more than his role as "the senior-most financial person at

18  STA" and that he "signs STA's financial statements," analyzes STA's financial performance, and

19  *receives* memoranda regarding various financial issues.   (Kassabian Decl. Ex. B at 8-9.)

20  However, as reflected in Messrs. Sohn's and Cheong's declarations, their knowledge regarding the

21  design, development, and marketing of Mobile Communications products is based on reports they

22  receive during high-level meetings with other senior executives.   (Sohn Decl. ¶ 5; Cheong Decl. ¶

23  5.)   They are not primarily responsible for the day-to-day decision making regarding the design,

24  development, or marketing of these products.   (*Id.* ¶ 6.)

25           Moreover, Apple has already deposed a number of STA employees who had superior

26  personal knowledge of the Samsung products and STA's finances, including Tim Sheppard,

27  STA's Vice President of Finance, Accounting, and Service & Operations; Justin Denison, STA's

28  Chief Strategy Officer; Omar Khan, STA's former Chief Product and Technology Officer; and

1  Brian Rosenberg, STA's Senior Vice President of Sales.   These lower-ranking executives testified

2  in detail regarding STA's finances, mobile device design, development, and marketing strategy,

3  and the specific products at issue and did not identify any unique relevant knowledge of Messrs.

4  Sohn or Cheong.   In addition, Samsung has designated three STA employees as 30(b)(6)

5  witnesses on product design and strategy, marketing topics, and financial topics.   (Kassabian

6  Decl. ¶ 22.)

7       Apple has not demonstrated why these depositions would be insufficient and what non-

8  repetitive, unique knowledge Messrs. Sohn and Cheong have.

9   **B.    Apple Has Ample Opportunities To Depose Lower Level Employees and**

10        **30(b)(6) Witnesses.**

11       Samsung has provided Apple with more than sufficient information from the persons most

12  knowledgeable about the facts and circumstances related to this case.   In addition to the

13  individual witnesses discussed *supra*, Apple has already served notices under FRCP Rule 30(b)(6)

14  covering roughly 250 topics and subtopics.    (Kassabian Decl. ¶ 2.)   To date, Samsung has

15  offered witnesses on most of those topics (subject to its objections), and is working quickly to

16  identify and schedule the remaining designees.[9]   (Kassabian Decl. ¶ 22)

17  _____

18   [9]   The 30(b)(6) witnesses already designated include:

19
20   • SEC employees Seongwoo Kim, Sungho Choi and Junwon Lee to testify to various
        licensing and ETSI-related topics;
21   • SEC employee GiSang Lee to testify regarding the development of various features at
        issue, including the '055 and '871 Patents;
22   • SEC employee Yungjung Lee to testify regarding the hardware design of the products
        at issue;
23   • STA employees Todd Pendleton and Tim Benner and SEC employee Oh Chae Kwon
        to testify regarding the marketing of the products at issue;
24   • SEC employee Ioi Lam, Dooju Byun, and Wookyun Kho to testify regarding the
        development of various features at issue;
25   • SEC employee Heonseok Lee to testify regarding various topics related to the
        development of features and products at issue;
26   • STA employee Tim Sheppard to testify regarding finances; and
27   • STA employee Justin Denison to testify regarding product design and strategy.

28   (footnote continued)

1        Instead of forcing high-ranking executives to sit for depositions during which they will be

2   questioned about reports they *received*, high-level strategy meeting they *attended*, and e-mails

3   they were *copied* on, Apple should depose the lower-ranking employees who actually prepared the

4   reports, wrote the e-mails, and were primarily responsible for the daily decision making regarding

5   the design, development, and marketing of the products at issue.   Rather than follow this logical

6   course, however, Apple has actually been *cancelling* depositions of designers, engineers, and other

7   lower-ranking employees.   Although these cancellations may result from Apple's realization that

8   it noticed far more witnesses than it could possibly depose, its decision to wait until the last

9   minute to cancel several long-scheduled depositions just three weeks before the end of discovery

10  (under the expedited schedule Apple insisted upon) raises concern regarding Apple's motives in

11  seeking these apex depositions, particularly given the post-mediation timing of the notices issued

12  to a number of Samsung's executives.   Apple's attempt to hold hostage the time of a competitor's

13  executives who had little direct knowledge of the subject matter of this lawsuit should not be

14  condoned.

15       If, after completing all other depositions, Apple is able to demonstrate that Samsung's

16  high-ranking executives have unique, personal knowledge that Apple could not have obtained

17  during the depositions of lower level employees, Apple could renew its request.   *See Celerity*,

18  2007 WL 205067, at *3 (noting that granting a motion for a protective order "merely postpone[s]"

19  apex depositions until a party can "demonstrate that other less intrusive discovery methods . . . are

20  inadequate.").   However, Apple has thus far failed to do so and Samsung believes in good faith

21  that Apple will be unable to do so in the future.

22       **C.      Samsung's Motion Should Be Granted for the Additional Reason that Apple**

23  **                Has Failed to Meet and Confer**

24       As demonstrated above, despite Samsung's repeated overtures, Apple has failed to

25  meaningfully meet and confer regarding apex issues.   Samsung has made concession after

26  concession, whittling down its apex objections from 23, to 17, to 14, to 10 – yet Apple has

27  _____

28       (Kassabian Decl. ¶ 22.)

remained steadfast in its original position, refusing to drop even a single apex deposition notice. Apple's staunch refusal to compromise, even in the face of this Court's express directives to do so, should not be rewarded.   Samsung's motion should be granted in full.

**V.       CONCLUSION**

For the foregoing reasons, Samsung respectfully requests that this Court grant Samsung's motion in full, and adopt and enter Samsung's Proposed Protective Order.


DATED: February 22, 2012            QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP


                                    By /s/ Rachel Herrick Kassabian
                                       Charles K. Verhoeven
                                       Kevin P.B. Johnson
                                       Victoria F. Maroulis
                                       Michael T. Zeller
                                       Rachel Herrick Kassabian

                                       Attorneys for SAMSUNG ELECTRONICS CO.,
                                       LTD., SAMSUNG ELECTRONICS AMERICA,
                                       INC., and SAMSUNG
                                       TELECOMMUNICATIONS AMERICA, LLC