# EXHIBIT B
# FILED UNDER SEAL

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482
U.S.A.

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

February 9, 2012

Writer's Direct Contact

415.268.6024
MMazza@mofo.com

*By Email* (rachelkassabian@quinnemanuel.com)

Rachel Herrick Kassabian
Quinn Emanuel
555 Twin Dolphin Drive, Fifth Floor
Redwood Shores, CA 94065

Re:   *Apple v. Samsung*, Case No. 11-cv-1846-LHK (PSG) (N.D. Cal.)
      **CONFIDENTIAL—Attorneys' Eyes Only—Contains Information Subject to
      Protective Order**

Dear Rachel:

Consistent with its improper strategy to delay these proceedings and interfere with the July
trial date, Samsung continues to withhold deposition dates for witnesses who have unique
and highly relevant knowledge of facts relevant to the issues in this case.  We understand that
Samsung objects to these depositions because of the seniority of the witnesses, the alleged
lack of any potential connection to the subject matter of this case, and Samsung's bald
assertion that none of these senior employees have unique personal knowledge relevant to
this case and no relationship to the accused products other than their place atop Samsung's
organizational hierarchy.  But the very documents that Samsung has produced in this case
show that these individuals were personally and intimately involved in issues that go to the
heart of the dispute between the parties, proving that there is no meritorious or even good
faith basis for Samsung's objections.

We have set forth below a witness-by-witness summary outlining why Samsung's objections
are meritless, including references to just a sampling of the documents that support Apple's
requests.  By Monday, February 13, 2012, please confirm deposition dates no later than
February 29, 2012, for each of these witnesses.  If Samsung fails to do so for any or all of
these witnesses, please be prepared to discuss this issue at next week's lead counsel meet and
confer meeting.  If the parties are unable to resolve this dispute during that meeting, Apple
will file a motion to compel that evening.

sf-3104209

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Two


**Gee Sung Choi - Vice Chairman and CEO of SEC**
**> Deposition Noticed For:  February 8**

Based on documents produced by Samsung, Mr. Choi played a direct, intimate, and key role
in directing the development of relevant products during the relevant time period.  For
example, **SAMNDCA00513783** reflects a March 5, 2011, meeting over which Mr. Choi
presided.  During that meeting, the group established a development plan for a tablet series,
which included a decrease in the thickness of the product.  A second document, **SAMNDCA
00514511**, which discusses the same meeting, further stated that "GS presided over the
Tablet development meeting and decided" to make a series of changes "intending the
improvement of product competitiveness against iPad2."  The discussion thereafter focused
on the view that this would "destroy a key marketing element of iPad2, thinness."  In a
different meeting, Mr. Choi, JK Shin (discussed below), and other executives discussed the
Galaxy Tab design **(SAMNDCA10403697)**.  Mr. Choi ordered detailed changes to the
Galaxy Tab in light of the iPad 2 (including the megapixel count of the camera), required
that the price remain below Apple's, and emphasized that the Tab's graphics capabilities
must remain competitive.

Another document, **SAMNDCA10249770**, which Samsung has clawed back (albeit without
sufficient explanation to date—which will be the subject of a separate letter), provides
"instructions from the CEO" regarding changes to be made to a Samsung phone product to
make it more like the iPhone 3GS.  These instructions contain detailed comments from Mr.
Choi regarding the UX and several side-by-side comparisons of the Samsung phone product
and the iPhone.  And in a March 2, 2010 email, Mr. Choi "strongly criticized Samsung UX's
mindset of 'clinging to the past generation.'"  (**SAMNDCA10247549.)**  Mr. Choi went on to
instruct Samsung employees to "think about and decide all matters from the perspective of
the consumer," with "the most representative example" being "obviously the iPhone."
Indeed, these are just representative examples of documents showing why his testimony is
directly relevant to the issues in this case.  Furthermore, Mr. Choi was part of, and/or
directed, the Office of Development—a division that Samsung has denied exists—which is
responsible for the direction of the company in matters highly relevant to this case.

**Jong-Kyun Shin - President of Mobile Communications**
**> Deposition Noticed For:  February 13**

Johg-Kyun Shin, or J.K. Shin, was involved in directing the development of Samsung's
mobile touchscreen products, at a hands-on level.  This is reflected in numerous documents.
For example, **SAMNDCA10247373** is an email summarizing an executive-level meeting
that occurred in February 2010 and was supervised by the Head of Division, J.K. Shin.  The
person who wrote this summary "wrote it all down without leaving out a single grammatical
particle."  The email describes a speech given by Mr. Shin to designers, during which he
stated:  "All the carriers tell me, Hey JK!  Your phones have great technological prowess and

MORRISON | FOERSTER

Rachel Herrick Kassabian
February 9, 2012
Page Three

everything's great.  But it's hard to sell them as high-end phones. . . .  I hear things like this:
Let's make something like the iPhone."  Mr. Shin went on to laud the iPhone: "When
everybody (both consumers and the industry) talk about UX, they weigh it against the
iPhone.  iPhone has become the standard."  And referring to Samsung's Omnia phone, Mr.
Shin stated:  "Do you know how inconvenient the Omnia is?  When you compare the 2007
version iPhone with our current Omnia, can you honestly say Omnia is better?  If you
compare the UX to the iPhone, the difference is heaven and earth."  Mr. Shin also
participated in the same meeting as Mr. Choi, discussed above.  The minutes reflect that Mr.
Shin held a "follow on meeting" where he went into more detail regarding Samsung's tablet
strategy.  **(SAMNDCA10403697.)**

In another document, **SAMNDCA00516172**, Mr. Shin is the author of an email discussing in
detail Samsung's general strategy on the Galaxy Tab.  In that email, he states that Galaxy
Tab sales are important because Samsung has a chance to essentially create a duopoly in the
tablet computer market, with Samsung being the company besides Apple, by increasing the
Galaxy Tab sales very fast now before the market matures; the prospects for growth in the
tablet computer market is tremendous.  And in yet another email written by Mr. Shin,
**SAMNDCA10185356,** he issues orders to the design team to improve the design of a phone
by easing the "pointy edges."  Mr. Shin was even involved with packaging decisions for the
Galaxy phones.  **SAMNDCA10172082** is an email describing Mr. Shin's orders to change
the "Galaxy S package design to [the] iPhone style."  Similarly, **SAMNDCA10174517** is a
spreadsheet tracking issues with the Galaxy S phones.  In that document, new visuals for the
Galaxy S packaging were sent to Mr. Shin "for his approval of the direction."  This, again, is
just a representative sampling of the documents showing why Apple should be permitted to
depose Mr. Shin.

**Won-Pyo Hong - VP of Mobile Communications**
**> Deposition Noticed For:** January 12

Won-Pyo Hong directed designers (including Minhyouk Lee) to compare Apple and
Samsung products side-by-side when reporting on initial designs of Samsung products.  Mr.
Hong is clearly knowledgeable about Samsung's efforts to target and directly challenge the
iPhone.  In fact, Junho Park testified that the North America Product Planning Group reports
to Mr. Hong (15:22-16:3), who is cited at **APLNDC0000036110** as telling his team that he
was confident Samsung could overtake Apple in the smartphone market.  Jin Soo Kim
testified that Mr. Hong makes ultimate decisions on initiating new designs.  And Nara Cho
testified that the "Smartphone Planning Group" was changed to "Product Strategy Group,"
which reports to Mr. Hong, the head of the Product Strategy Team.  (14:22-15:25).  Justin
Denison confirmed that Mr. Hong is the "head of product strategy" for mobile products
(126:23-127:5), and Omar Sharif Khan testified that Hong is the "global head of product

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Four

strategy" (197:9-21).  Mr. Hong was also involved in the re-design of the Tab 10.1 after
Apple's iPad 2 was announced.

**Dong Jin Koh - Sr. VP of R&D Management**
**> Deposition Noticed For:**  January 10

Dong Jin Koh is the head of Samsung's R&D Management Group—which is also known as
the Development Management Group or Office of Development —which in turn is part of
Samsung's Mobile & Communication Division.  (*See* Nara Cho Depo. Tr. at 69:5-15.)
Individuals within the R&D Management Group have generated numerous documents that
closely compare Apple's products and user interfaces with Samsung's counterparts.  (*See*,
*e.g.*, **SAMNDCA00214274**.)  As such, the R&D Management Group's personnel are
amongst the witnesses most likely to have knowledge of facts relevant to this case.  Mr. Koh
himself was deeply involved in chipset roadmap selection especially with Verizon Wireless
when he worked at SEA (**SAMNDCA10199166-169**).  In another email dated March 31,
2011, in communication with Dohun Kwon, Senior VP North America CDMA R&D, Mr.
Koh followed up the corrective actions for Verizon VoLTE, and discussed support for the
Stealth, Aegis, Stealth 2, P7 LTE, Fascinate2, and OS upgrades (**SAMNDCA10192696-
10192698**).

**Dong Hoon Chang - Sr. VP, Design Group**
**> Deposition Noticed For:**  January 9

Dong Hoon Chang is Senior Vice President and head of Product Design for the Mobile &
Communications Division.  Kim Bo-Ra confirmed that Mr. Chang is the head of product
design for Samsung wireless products.  (20:21-21:7)  In that role, for example, Mr. Chang
was involved in directing Samsung's choices that resulted in the accused GUI designs.  With
regard to icon design, Jeeyeun Wang testified that, during 2008-2012, Chang's approval
would have been required for any changes to icon designs.  (102:2-103:17).  In addition to
his involvement with the design of numerous accused products, Mr. Chang also interfaces
with U.S. carriers regarding Samsung's product designs.  He attended the February 2010
meeting described above (**SAMNDCA10247373**), where Mr. Shin gave the speech about the
iPhone.  In that summary, he was described as the Executive Director, and was an active
participant in the meeting.  Two other examples show Mr. Chang involved with design
decisions.  First, **SAMNDCA10247685** shows Mr. Chang as the VP of the Design Group
("Head of UX Part").  Mr. Chang is shown managing GUI design; Jeeyeun Wang explained
that Chang was "giving instructions" to designers regarding color usage and the need to
create guidelines for that.  (46:9-48:10).  Second, **SAMNDCA10247679** is an email from
Mr. Chang (as vice president) regarding AT&T.  Jeeyeun Wang explained that it related to
"high level instructions and directions from superiors" regarding specific design issues.
(67:2-69:4)  Ms. Wang explained that the directive from Mr. Chang would have resulted in
changes to the colors used in icon designs.

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Five

**Seog Guen Kim - VP of Design Part 1**
**> Deposition Date Accepted:** February 24

Mr. Kim has been identified as decision-maker on design issues.  He was the design manager responsible for the design of Galaxy Tab 10.1 / P5-LTE (SGH-i957).   Furthermore, he is identified as Vice President of Product Design Part on the Samsung organizational chart (**S-ITC-003006124 at 003006128**).  He is identified as Senior Director of Design Department on page 2 of a product specification document entitled "P5-LTE (SGH-i957) PPD" (**SAMNDCA00507336 - 360**), that is, **SAMNDCA00507337**.  He is also identified in the same capacity in another document titled "P1 (GT-P1100)" (**SAMNDCA00525528**).  Jin-Soo Kim, Jung Min Yeo, and Joon Yong Song all reported to Mr. Kim during the relevant time period.  Mr. Kim was also involved with the philosophy and design of the Galaxy S in comparison to the iPhone, as evidenced by quotes attributed to him from an article:  in his words, Samsung was "heavily burdened because [they] had to make it distinct from Apple's iPhone."  (http://economyplus.chosun.com/special/special_view.php? boardName=C04&t_num=5981).

**Younghee Lee - Sr. VP, Marketing Group**
**> Deposition Noticed For:** February 10

Ms. Lee is the SVP of Sales and Marketing at SEC, and has direct and personal knowledge of issues relevant to Apple's damages claims.  Although Samsung has improperly failed to produce documents from her files, she has been an instrumental force behind Samsung's decision to market the accused products specifically to Apple's customers by copying the look and feel of the iPhone and iPad.  According to a recent news article, Ms. Lee admitted that, "especially in the U.S., people are obsessed with Apple," and stated her intent "to change people's attention."  The article states that "Younghee Lee wants to achieve Apple-level excitement by engaging 'with consumers from the bottom of their heart, and not just be a big and functional and rational and reasonable brand.'"  (TechnoBuffalo, Samsung Marketing Executive Dreaming of Apple-Like Consumer Obsession, available at http://www.technobuffalo.com/companies/ samsung/samsung-marketing-executive-dreaming-of-apple-like-consumer-obsession/.)

In addition, in **SAMNDCA10453261**, there is an email thread between Ms. Lee and others discussing an ad campaign that Samsung wanted to run, called "Next Big Thing," which was explicitly geared toward de-positioning Apple as a leader and position Samsung as the brand of choice for consumers/retailers.  This email reflects that Google prevented Samsung from running this ad because Google "never, ever runs marketing campaigns that make reference (explicitly or implicitly) to the competition.  This would cheapen our brand and goes against everything we stand for."  In a later email on that same issue, Ms. Lee suggests certain reallocations of Samsung's advertising budget to both maintain the relationship with Google while also accomplishing Samsung's own advertising goals.  (**SAMNDCA10455641**.)  Ms.

sf-3104209

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Six

Lee also makes strategic marketing decisions, as evidenced in **SAMNDCA00507730**.  In that
email, Ms. Lee writes that the decision to launch the Tab 7.3 at the CTIA was still being
decided and that various circumstances were being considered.

**YoungHoon Eom - Sr. VP, Sales & Marketing**
**> Deposition Noticed For:**  February 8

Mr. Eom has personal knowledge regarding Samsung decisions relating to placing its logo on
the front face of all Galaxy S phones at various points in time, as confirmed during the
depositions of Brian Rosenberg and Junho Park.  While Apple asked these witnesses about
the logo issue during their depositions, they could not answer, leaving Mr. Eom as the proper
person to discuss this issue, as confirmed by **SAMNDCA00513026**.  Mr. Eom also has
knowledge about competition, including promotional efforts/returns/strategy at the retail
level, as well as keeping up with competitors' sales.  He is copied on financial documents,
and is the go-to person from other high-level people re: competitive efforts.  For example,
from a Nov. 17, 2011 email thread, it is clear that that Mr. Eom is knowledgeable about
relevant sales/marketing goals:  "our strategy for next year was to be number 1 in the entire
tablet market including Apple, but it seems we need to lead as number 1 in Android for one
more year…even if we modify our goal to be number one for Android, this looks difficult
based on our current matching Apple strategy."  (**SAMDNCA10413584.**)

Mr. Eom is also the go-to person for diminishing returns/accessories/promotions/pricing.  He
sends updates regarding competitor sales volume and is copied on emails regarding weekly
sell thrus (sent from Travis Miller) for the Galaxy Tab 10.1 (*e.g.*, **SAMNDCA10375617**).
Mr. Eom also received an email thread from Harrison Kim concerning Table lineup strategy
and price quotation.  (**SAMNDCA00517836.**)  And Mr. Eom is responsible for marketing
coordination with Je Stinziano, as indicated on page 2 of an email from Travis Miller
(**SAMNDCA10383543**.)  Mr. Eom also sent an email to Don Joo Lee regarding promotion
for Galaxy Tab units launching on 6/8 and 6/19 for Father's day.  (**SAMNDCA10416538**.)
Mr. Eom also sent an email to Don Joo Lee and Dale Sohn regarding Notes of Meeting with
Best Buy where volume estimates and opportunity size was discussed
(**SAMNDCA00513616**.)

**Heonbae Kim - Executive VP, Advanced S/W R&D**
**> Deposition Noticed For:**  February 6

Mr. Kim is a top Samsung engineer who led the development of the hardware for the Galaxy
S phones and Galaxy Tab products.  Mr. Kim also oversaw Japan and China Development
groups.  He was recently promoted to Executive VP, which is similar to VP in the U.S.  He
purportedly contributed to Samsung's overwhelming first-place ranking in the domestic
market, having successfully launched the Galaxy S II and Galaxy S.  In a July 2010 email,
**SAMNDCA10182955**, Dongjin Koh orders Mr. Kim to help the Task Force for marketing

MORRISON | FOERSTER

Rachel Herrick Kassabian
February 9, 2012
Page Seven

Samsung products to Korean-American consumers.  Mr. Kim also organized workshops
(**SAMNDCA10763734**) and modified Samsung's phones to allow consumers to better
recognize when calls drop on their phones (**SAMNDCA10190076**).  Kim has detailed
knowledge of product development and hardware issues, and participated in executive-level
meetings for the phones.  (*See, e.g.,* **SAMNDCA10312068**.)

**Seunghwan Cho - Sr. VP Advanced R&D**
**> Deposition Noticed For:**  February 6

Mr. Cho is a top Samsung engineer who led the development of the software for the Galaxy
S phones and Galaxy Tab products.  Only recently promoted to Senior Executive Vice
President, Mr. Cho was directly involved in communications regarding the comparison of
Samsung and Apple products.  For example, in one group of emails, **SAMNDCA10319614**,
Mr. Cho states that the user experience of the "Lismore" product is deficient compared to the
iPhone.  In another email, Mr. Cho ordered Samsung employees to improve the usability of
various GUIs.  (**SAMNDCA10167858**.)  Various emails addressed to Mr. Cho as the main
recipient address User Experience issues.  (*See, e.g.,* **SAMNDCA10544756** and
**SAMNDCA10508131**.)  Mr. Cho also attended meetings relating to the "Seine
Differentiation Solution" during which the R&D Center reported its findings to Mr. Cho.
(**SAMNDCA10307733**.)  Mr. Cho oversees the software development process as well, and
apparently directs UX-related meetings.  (**SAMNDCA10560237**.)  In addition, he provided
detailed feedback on UX design and models.  (*See, e.g.*, **SAMNDCA10167858**.)  Beyond his
comparative work, he purportedly contributed to Samsung's smartphone success by choosing
the best time to release products in each country.

**Min Cheol Shin - VP, Advanced Development Software Group**
**> Deposition Noticed For:**  February 8

Mr. Shin is Vice President in the Android Development Group.   Shin has personal
knowledge regarding comparison of iPad and Galaxy Tab technical specifications between
Apple's iPad and the Galaxy Tab/S.  In an email from December 16, 2010,
**SAMNDCA10323417**, Mr. Shin asks for a study regarding differences between the iPad and
Galaxy Tab's user settings.  In another email, **SAMNDCA10511708**, Mr. Shin is listed as
responsible for reporting competitive benchmarking results for the Tab and iPad.  In
addition, Mr. Shin participated in development of the Galaxy Tab user interface.  For
example, an email from June 24, 2011 asks Mr. Shin to provide information regarding
Galaxy Tab widgets.  (**SAMNDCA10756046**.)

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Eight

**Dale Sohn - President, STA**
**> Deposition Noticed For:** January 9

Mr. Sohn was identified by STA Controller Tim Sheppard as personally involved in sales leadership meetings (Sheppard Tr. at 99:8-17), and the recipient of key financial documents at STA, including weekly sales reports (*id*. at 105:4-5), Pumi reports (*id*. at 79:8-9), and monthly close reports (*id*. at 41:15-23). Emails authored or received by Mr. Sohn show that he has significant hands-on involvement in Samsung's sales and marketing strategy. For example, Mr. Sohn sent an email on September 15, 2010, entitled "Apple benchmark," outlining STA's role in the "Beat Apple campaign." Among the items on the agenda were "[h]ow to create new products (design, UI, process, core competence, etc)," emphasizing that "everyone and every department should be able to beat the company [Apple]." (**SAMNDCA10360108**.) He also requested having a "workshop with the team" to discuss the Beat Apple campaign. (**SAMNDCA10360108**.)

This level of hands-on involvement with his leadership team is reflected in dozens of documents produced by Samsung. (*See*, *e.g.*, **SAMNDCA10343802-03** (email from Dale Sohn entitled "beat Apple strategy and new year kick off," outlining discussion topics for discussion "at the Jan 3rd extended leadership meeting"); **SAMNDCA10360161** (email from Dale Sohn entitled "4 inch OCTA model plan" asking for a meeting to discuss marketing strategy and sales forecasting on the OCTA smartphone model); **SAMNDCA10368282-83** (email from Dale Sohn entitled "Samsung Tab project" setting detailed agenda on the marketing strategy and sales forecasting for the Galaxy Tab). Sohn also is knowledgeable about Samsung's decision not to put its logo on the front face of the Galaxy Tab, which relates to whether there is a likelihood of confusion between Apple's asserted iPad trade dress and the design of Samsung's Galaxy tablets. Samsung has produced an email from Dale Sohn discussing this issue. Specifically, he wrote "I don't personally agree that we should have Samsung logo on the front considering this bezel of the design." (**SAMNDCA00513439**.) This confirms that the decision whether to include the logo on the front of product was influenced by design considerations, which is contrary to Samsung's branding policies, as discussed later in the email chain. This document was introduced as Exhibit 1279 at the deposition of Brian Rosenberg, but Mr. Rosenberg could offer no testimony as to the meaning of Mr. Sohn's statements.

**Joseph (Joon Kyo) Cheong - Chief Financial Officer, STA**
**> Deposition Noticed For:** February 1

Joseph Cheong is the senior-most financial person at STA. Mr. Cheong has direct, comprehensive, personal knowledge of the financial position of STA. First, Mr. Cheong signs STA's financial statements and submits them to headquarters, thus taking ultimate responsibility for their accuracy and contents. (01/24/2012 Sheppard Depo Tr. at 9:4-19.) Moreover, Mr. Cheong both reports to SEC about, and fields SEC requests concerning, the

MORRISON | FOERSTER

Rachel Herrick Kassabian
February 9, 2012
Page Nine

operations and financial position of STA.  In an email to Hak-kyu Park, Sr. VP, at SEC, Mr.
Cheong discusses improvements in the operations and updated sales strategies of STA, and
compares financial performance (sales and revenues per carrier) across quarters, and
provides forecasted growth rates based on STA's release of iconic Samsung models such as
Stealth and Dempsey.  (**SAMNDCA00512101**.)  Another email, **SAMNDCA10425384**,
shows Mr. Cheong urgently requesting his team to prepare a summary of the "business
impact and insight" of the effect of Apple CEO Steve Jobs' resignation on STA, and his team
responding, directly to him, with detailed analysis for Mr. Cheong to provide to SEC.  Mr.
Cheong also manages STA's relationship with its auditors. (**S-ITC-50012960**). Mr. Cheong
analyzes STA's performance against its objectives (**SAMNDCA10434367** (email directed to
Mr. Cheong regarding "MBO Results" and requesting specific review of detailed data as to
same); **SAMNDCA10434371** (email to Mr. Cheong re: MBO results for following quarter).

Additionally, Mr. Cheong signed SEA's Advance Pricing Agreement with IRS, an agreement
that, because of transfer pricing, Samsung avers underlies profitability calculations for the
Accused Products.  (*See* **S-ITC-007274461**.)  He holds detailed discussions about and
approves write-offs or contract changes that impact STA's profit for the accused products;
for example, **S-ITC500008574** is a memorandum to Mr. Cheong regarding a carrier claim
for reimbursement for certain quality issues. The memorandum discloses that "after a
discussion with … [Mr. Cheong]" it was proposed that STA pay the carrier $7M for the at-
issue quality problems. (*Id.*)  Another email, **S-ITC-500007502**, sent only to Mr. Cheong,
provides detailed analysis of return rates to carrier T-Mobile and explains that "as [Mr.
Cheong and the email's sender] have discussed previously," the contract with that carrier
assumed a particular return rate, and then discusses renegotiation of the T-Mobile contract.
(*See also* **SAMNDCA10335890** (email to only Mr. Cheong, attaching a presentation
discussing problems with STA/Sprint relationship and explaining that the sender and Mr.
Cheong had reviewed the presentation live); **SAMNDCA10350549** (email addressed to Mr.
Cheong regarding penalties to STA for under AT&T contract, and simulations of profit
impact of same; **SAMNDCA10349617** (email describing "request from [Mr.] Cheong to
negotiate a settlement" with T-Mobile as to broken phone kits and referencing follow-up
discussion with Mr. Cheong on same).)

Mr. Cheong also actively engages with inventory and other operational data his team
prepares; **S-ITC-500020183**, for example, is an email thread in which Mr. Cheong's reports
provide detailed inventory asset data, and Mr. Cheong asks about a particular line item.
(See also **SANDCA10348682** (email in which Mr. Cheong points out inaccuracy in return
rates data compiled by others at STA); **SAMNDCA10349086** (email in which Mr. Cheong
urges team to "use all our sensing tools" to get the best data on STA's return rates).)

MORRISON | FOERSTER

Rachel Herrick Kassabian
February 9, 2012
Page Ten

**Corey Kerstetter - VP of Business Planning and Analysis at STA**
**> Deposition Noticed For:** February 3

Mr. Kerstetter heads the business planning group at STA, *see* **S-ITC000084984**, and is in charge of the "team primarily responsible for forecasting and planning [STA's] sales," including "forecast[ing] sales in units." T. Sheppard Tr. at 19:3-21:1. Samsung has produced 70 records sourced to Mr. Kerstetter, many of which are weekly carrier sales reports and cover emails to them. The reports are among the few Samsung documents that comprehensively provide sales data by carrier—a category of documents Judge Grewal's January 27 order required Samsung to provide. Based on the reports, Mr. Kerstetter leads a team of analysts, each responsible for financial planning and analysis for particular carriers. Moreover, the fact that Mr. Kerstetter reports to Brian Rosenberg, (*see* **S-ITC000084984**), who Samsung produced for deposition without objection on January 27, 2012, is further evidence that Samsung's apex objection is meritless.

**Seungho Ahn - Executive VP, Samsung IP Center**
**> Deposition Noticed For:** January 23

Based on his position as Head of the IP Center and Licensing Team, coupled with nearly two decades of IP and licensing-related work at Samsung, Dr. Ahn is a key source of information on Samsung's licensing practices and policies, which plainly are relevant to Apple's defenses. We understand that Dr. Ahn has been involved in numerous licensing negotiations and agreements. For instance, in Samsung's November 18, 2010 press release, entitled "Samsung Electronics and Intellectual Ventures Enter Into License Agreement," Dr. Ahn commented that the agreement "grants Samsung access to a broad and comprehensive IP portfolio under terms attractive to Samsung." In IBM's February 8, 2011 press release, entitled "Samsung Electronics and IBM Announce Patent Cross-License Agreement," Dr. Ahn also commented on the agreement. Lastly, the fact that Dr. Ahn participated in pre-litigation meetings with Apple seeking to negotiate a resolution to the parties' dispute (*see* beginning Bates **APLNDC0000001029**, **1064**, and **1085**) further suggests that he had been involved in similar negotiations with other parties related to standards-essential patents.

**Jaewan Chi - Executive VP, Samsung IP Center**
**> Deposition Noticed For:** January 24

Apple understands Jaewan Chi to be the leader of the licensing team within the IP Center at Samsung. Again, similar to Dr. Ahn, Mr. Chi is knowledgeable about key facts relating to Samsung's licensing practices and policies. Further, given his lead role, he is undoubtedly aware of all of Samsung's license negotiations, including those with other firms holding standards-essential patents.

**MORRISON | FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Eleven

**Minhyung Chung - Sr. VP, Samsung IP Center**
**> Deposition Noticed For:** January 25

Given his role as the head of the technical planning team at Samsung's Digital Media R&D Center, Minhyung Chung is responsible for both licensing and management of Samsung's IP portfolio.  In addition to the licensing topics noted above for Messrs. Ahn and Chi, Mr. Chung's management of the IP portfolio puts him in the unique position of being able to provide testimony regarding the role of IP, and in particular, standards-essential IP in Samsung's business planning.

**Yeung Gyun Kim - Leader, Information Communications Standard Research Team**
**> Deposition Noticed For:**  February 7

Samsung's December 20, 2005 document entitled "WCDMA Release 7 Standardization Research Project Completion Report" (**SAMNDCA00166606**) lists and identifies Yeung Gyun Kim as a "Lead Employee" on the project.  The project included goals for IPR and for "standard selection."  Based on his involvement in the project, it is clear that Mr. Kim has knowledge of Samsung's involvement in standards setting organizations.  Additional documents produced by Samsung (*e.g.*, **SAMNDCA00175074, SAMNDCA00175817, SAMNDCA00175380, SAMNDCA00175461, SAMNDCA00175542, SAMNDCA00175560, SAMNDCA00175582, SAMNDCA00175312,** and **SAMNDCA00175978**) show that Mr. Kim regularly received reports from Samsung employees who participated in various 3GPP TSG Working Group 1 Meetings.  In addition, Apple expects he has knowledge of Samsung's corporate plans as they relate to standards activity.

**Ken Korea - VP, Samsung San Jose IP Center**
**> Deposition Noticed For:**  January 26

Like Dr. Ahn, Ken Korea participated in the pre-litigation negotiations with Apple (*see* **APLNDC0000001065**, **APLNDC0000001066,** and **APLNDC0000001072**), which suggests that he had been involved in similar negotiations related to standards-essential patents, and Apple is entitled to discovery on those issues.  In addition, based on his position as Vice President of Samsung's San Jose IP Office, Mr. Korea is a potential source of information on Samsung's licensing practices and policies.

**Seung Gun Park - Sr. VP, Intellectual Property Strategy**
**> Deposition Noticed For:**  January 31

Mr. Park is uniquely familiar with and knowledgeable about Samsung's licensing practices and policies as well as Samsung's license negotiations with firms holding standards-essential patents.  Again, these topics are relevant to Apple's defenses.  As Head of the IP Team at

**MORRISON** | **FOERSTER**

Rachel Herrick Kassabian
February 9, 2012
Page Twelve


Samsung's Telecommunication R&D Center, Mr. Park signed several of Samsung's IPR disclosure forms that submitted to ETSI, including the May 16, 2006 form that identified one of the Patents-in-Suit. Samsung's inventors uniformly testified that they did not play a role in determining whether or not to declare IPR essential to ETSI. It is clear that Mr. Park played a key role in such determination, and Apple is entitled to discovery on his knowledge of Samsung's practices and policies regarding IPR disclosure. In addition, documents produced by Samsung show Mr. Park's heavy involvement in Samsung's licensing negotiations, including those with Motorola, Siemens, and Ericsson (*see* **S-794-ITC-003061294, S-794-ITC-005214296, S-794-ITC-005216179,** and **S-794-ITC-005518865**).

***

In addition to the summaries set forth above, and the documents and deposition testimony cited therein, we further note that Apple propounded an interrogatory on Samsung asking it to identify the five Samsung employees most knowledgeable about some of the subject matter discussed above. This was an effort by Apple to help focus in on specific, appropriate witnesses for depositions. But Samsung refused to respond, objecting to the request, contending that it could not complete its investigation during the 30-day period between service and response due date, and stating it would supplement its response in the future. (*See* Samsung's February 6, 2012 response to Apple's Interrogatory Number 18.) This is further evidence of Samsung's improper strategy to delay these proceedings and interfere with the July trial date.

***

Samsung's delay in confirming deposition dates for the people listed above—all of whom clearly have unique and personal knowledge of facts relevant to the issues in this case—is substantially prejudicing Apple's ability to prepare this case for trial. Among other things, their testimony is important for Apple's experts to have, it is important for purposes of allowing Apple to assess whether there are additional witnesses whose testimony it needs, and it is important for purposes of allowing Apple to test whether Samsung continues to violate the Court's orders relating to document production.

By **Monday, February 13, 2012**, please confirm deposition dates no later than February 29, 2012, for each of these witnesses. If Samsung fails to do so for any or all of these witnesses, please be prepared to discuss this issue at next week's lead counsel meet and confer meeting. If the parties are unable to resolve this dispute during that meeting, Apple will file a motion to compel the next day, and Apple reserves the right to seek further sanctions for Samsung's continuing misconduct.

MORRISON | FOERSTER

Rachel Herrick Kassabian
February 9, 2012
Page Thirteen


Assuming motions practice becomes necessary, in light of the discovery cut-off, Apple will ask that the Court hear and resolve this issue on an expedited schedule.  In that context, we will propose the following schedule:

➢  Apple's opening brief:  file by 5:00 pm Pacific on Wednesday, February 15

➢  Samsung's opposition brief:  file by 5:00 pm Pacific on Friday, February 17

➢  Hearing on Tuesday, February 21

Please be prepared to let us know at Tuesday's meeting whether Samsung will agree to this expedited schedule if motion practice becomes necessary.

Sincerely,

*/s/ Mia Mazza*

Mia Mazza

cc:     S. Calvin Walden
        Peter Kolovos