# EXHIBIT I
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1            UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
2                 SAN JOSE DIVISION

3    _____

4    APPLE, INC., a California corporation,

5    Plaintiff,

6    v.                                    Civil Action No.
                                           11-CV-01846-LHK
7

     SAMSUNG ELECTRONICS CO., LTD.,
8    a Korean business entity;
     SAMSUNG ELECTRONIC AMERICA, INC.,
9    a New York corporation; and
     SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
10   a Delaware limited liability company,

11   Defendants.
     _____

12

13

                    *** HIGHLY CONFIDENTIAL ***
14                     ATTORNEYS EYES ONLY

15             VIDEOTAPED PERSONAL DEPOSITION OF:

16

17                       JINSOO KIM

18

19

20                    February 2, 2012

21                       Kim & Chang

22                      Seoul, Korea

23                  9:50 a.m. - 5:41 p.m.

24

25

```
 1    to read the following statement:  We understand the

 2    court reporter is not authorized to administer oaths in

 3    this venue.  Nevertheless, we request that she

 4    administer the oath, and we stipulate that we waive any

 5    objection to the validity of the deposition based on the

 6    oaths.

 7             THE REPORTER:  Counsel, do you agree?

 8             MS. CARUSO:  Yes.

 9             (Interpreters sworn.)

10                         JINSOO KIM,

11    having been first duly sworn to state the whole truth

12    testified as follows:

13                         EXAMINATION

14    BY MR. STERN:

15        Q.    Mr. Kim, good morning.

16        A.    Good morning.

17        Q.    As I introduced myself off the record, my name is

18    Peter Stern.  I'm an attorney for Apple, representing Apple

19    in litigation with Samsung in the Northern District of

20    California.  And we're here today for the purpose,

21    obviously, of taking your deposition.

22             I'm going to be asking you some questions under

23    oath and asking for your responses.  If you don't understand

24    my question, please let me know and I'll try to rephrase it.

25    If you'd like to take a break, please let me know, and I'm
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.    At present, we are in the stage of thinking about

2  specifically what we are going to do in the future, so it

3  will be somewhat difficult for me to tell you we are going

4  to do this or that.

5    Q.    Will you have responsibility for cell phone

6  design?

7          MS. CARUSO:  Objection, lacks foundation,

8  calls for speculation, asked and answered, vague.

9    A.    Cell phone design is something that I basically

10  have done, so I believe that I will continue to do so.

11  BY MR. STERN:

12    Q.    Going forward in your role as a principal

13  designer, will you have responsibility for tablet computer

14  design?

15          MS. CARUSO:  Objection, lacks foundation,

16  calls for speculation.

17    A.    It seems to me that I might be responsible for

18  tablet design as well as accessory design, but that's my

19  personal opinion.

20  BY MR. STERN:

21    Q.    Prior to the structural change that you testified

22  about which took place as of February 1st, 2012, you

23  testified that you were responsible for the design of

24  tablets and premium smartphone products; is that correct?

25          MS. CARUSO:  Objection, mischaracterizes the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   testimony.

 2        A.    Yes.

 3              MR. STERN:  The answer was "yes"?

 4              LEAD INTERPRETER:  "Yes."

 5              MR. STERN:  Okay.

 6   BY MR. STERN:

 7        Q.    And as senior designer prior to becoming

 8   principal designer in 2010, what was the scope of your job

 9   responsibilities?

10              MS. CARUSO:  Objection, vague.

11        A.    I was responsible for designing cell phones.

12   BY MR. STERN:

13        Q.    As senior designer, did you have any

14   responsibility for the design of tablets?

15        A.    Are you asking me as to 2010 or 2009?

16              MR. STERN:  Any -- at any time when Mr. Kim

17   was working as senior designer, before becoming

18   principal designer, did he have responsibility for

19   tablet design?

20        A.    Yes.

21              MR. STERN:  Okay.  I'd like to ask the court

22   reporter to mark as exhibit next in order 1364, a

23   one-page document bearing Bates No. S-ITC-003006128.

24              (Deposition Exhibit 1364 was marked.)

25   ///
```

```
 1    BY MR. STERN:

 2         Q.   Mr. Kim, do you recognize this document as an

 3    organizational chart for a portion of the -- of Samsung

 4    Electronics?

 5         A.   Yes, I do.

 6         Q.   And in particular, does this one-page document

 7    reflect the organization of the design group?

 8              MS. CARUSO:  Objection, vague as to time.

 9    Lacks foundation.  It calls for speculation.

10         A.   It does not reflect the current structure of our

11    organization.

12    BY MR. STERN:

13         Q.   Does this document reflect the organization of

14    the design group as of a date prior to the recent

15    restructuring which took effect on February 1st, 2012?

16              MS. CARUSO:  Objection, lacks foundation,

17    calls for speculation.

18         A.   Yes.

19    BY MR. STERN:

20         Q.   Mr. Kim, do you see your name on this

21    organizational chart?

22         A.   Yes.

23         Q.   And does it appear as the first entry in the

24    middle column for the group named Product Design Part I?

25         A.   My name doesn't come first.  Actually, the name
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    that appears first is SukKeun Kim, vice president.

 2              LEAD INTERPRETER:  Spelling by the

 3    interpreter:  S-u-k-K-e-u-n space K-i-m.

 4    BY MR. STERN:

 5        Q.    Your name appears underneath the name of director

 6    SukKeun Kim; is that correct?

 7        A.    My name appears under the words "IA."

 8        Q.    Okay.  Looking at the rectangular box immediately

 9    above the larger box with names of designers in which your

10    name appears, do you see the name director SukKeun Kim?

11              MS. CARUSO:  Objection, vague.

12              Mr. Stern, do you have a copy of this with

13    the translation of this in English?

14              MR. STERN:  No, I don't.

15              MS. CARUSO:  All right.  I would like to put

16    on the record a continuing objection to not having an

17    English translation because I'm unable to look at the

18    document and understand what it says and object as to

19    whether it's mischaracterizing testimony or not.

20              Your last question in particular was very

21    confusing to someone who doesn't understand which large

22    rectangular box you're referring to.

23        A.    Counsel, what was your question, sir?

24    BY MR. STERN:

25        Q.    Let me ask you the question a different way.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

1          Mr. Kim, do you report to director SukKeun Kim of

2   the Product Design Part I?

3      A.    Yes, that is correct.

4      Q.    And looking at this chart, do I understand

5   correctly that director SukKeun Kim, in turn, reports to the

6   design group executive DH Jang?

7          MS. CARUSO:  Objection, lacks foundation,

8   calls for speculation.

9      A.    Yes.

10  BY MR. STERN:

11     Q.    And do I further understand correctly that

12  director DongHoon Jang reports to global product strategy --

13  strike that -- well, Mr. DongHoon Jang reports to Dr. WP

14  Hong, who appears to have two titles, vice president and

15  also person in charge of product -- global product strategy?

16         MS. CARUSO:  Objection, compound.

17     A.    Yes, that is correct.  Our command -- chain of

18  command is working in a way.  Mr. DongHoon Jang, senior vice

19  president, is reporting to WonPyo Hahn, executive vice

20  president.

21         LEAD INTERPRETER:  Spelling by interpreter as

22  for DongHoon Jang:  D-o-n-g-H-o-o-n, last name Jang,

23  C-h-a-n-g [sic].  As for WonPyo Hong:  First name

24  W-o-n-P-y-o, last name H-o-n-g.

25  ///

1    BY MR. STERN:

2         Q.    And who does Mr. WonPyo Hong report to currently?

3              MS. CARUSO:  Objection, lacks foundation,

4    calls for speculation.

5         A.    My understanding is that executive vice president

6    Jang is reporting to president JongKyun Shin.

7              LEAD INTERPRETER:  Spelling by the

8    interpreter:  J-o-n-g-K-y-u-n, last name Shin, S-h-i-n.

9    BY MR. STERN:

10        Q.    Is Mr. Shin sometimes referred to as JK Shin?

11        A.    Yes.

12        Q.    What is the responsibility of Mr. DH Jang with

13   respect to the design of cellular phone product by Samsung

14   Electronics?

15             MS. CARUSO:  Objection, lacks foundation,

16   calls for speculation, vague.

17        A.    I think your question is a little broad, but

18   anyways, he's responsible for external design of Samsung's

19   cell phone products as well as internal design, which

20   includes UX aspects.

21   BY MR. STERN:

22        Q.    Okay.  What is "UX"?

23        A.    My understanding is that UX refers --

24             LEAD INTERPRETER:  Strike that.

25        A.    My understanding is that UX stands for user

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  experience.  So when it comes to display, that -- actually,

2  I'm not responsible for UX so I'm not quite sure, but my

3  understanding is that UX is related to everything that comes

4  on the screen.

5          THE WITNESS:  (Through Interpreter)  Can I

6  take a quick break, Counsel?

7          MR. STERN:  Yes.  Let's go off the record.

8          THE VIDEOGRAPHER:  Going off the record.  The

9  time now is 10:24.

10          (Recess taken.)

11          THE VIDEOGRAPHER:  We are now back on the

12  record.  The time now is 11:32.

13          MS. CARUSO:  Thank you very much, Mr. Stern,

14  for the warmer office.

15  BY MR. STERN:

16     Q.    Mr. Kim, before we took a break, I asked you some

17  questions about the job responsibilities of Mr. DH Jang.

18     A.    Yes.

19     Q.    Does Mr. Jang currently have any responsibilities

20  for the design of tablet products?

21          MS. CARUSO:  Objection, lacks foundation,

22  calls for speculation.

23     A.    Based on my understanding, I believe he's, to a

24  certain extent, involved in that job.

25          MR. STERN:  I'd like to have marked next in

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

21

```
 1    order an exhibit that bears Bates stamp SAMNDCA10183936

 2    through -83948 [sic].

 3                   (Deposition Exhibit 1365 was marked.)

 4                   MS. CARUSO:  Mr. Stern, again, you don't have

 5    an English translation of this document?

 6                   MR. STERN:  Counsel, it's not my

 7    responsibility to provide you with English translations

 8    of materials that your company has produced in a

 9    language in which your company does business.

10                   MS. CARUSO:  If you're expecting to introduce

11    testimony at trial in the United States court, you need

12    certified copies of translations.

13                   MR. STERN:  Not at this deposition.

14    BY MR. STERN:

15       Q.    Mr. Kim, please take a look at this document, and

16    in particular, I'd like to direct your attention to the page

17    beginning 10183938.

18       A.    Yes.

19       Q.    Mr. Kim, what is this document?

20                   MS. CARUSO:  Objection to the extent you're

21    asking him to identify the entire document based on one

22    page.  Also lacks foundation.

23       A.    Would it be okay for me to answer with regard to

24    the portions involving my interview?

25    ///
```

```
 1   BY MR. STERN:

 2       Q.    Yes.

 3       A.    Let me take some time to read this.

 4       Q.    That's fine.

 5             (Pause.)

 6       Q.    Mr. Kim, please feel free to take whatever time

 7   you need look at the document, but I'm only going to ask you

 8   questions about pages -938 through -939.

 9       A.    Yes.

10       Q.    Directing your attention to the middle of

11   page ending in -939 --

12       A.    Yes.

13       Q.    -- in the middle of the page, there's a heading

14   and then a first paragraph.  Could you please read that text

15   for me, Mr. Kim.

16       A.    The era of touch phones, philosophy for new

17   design.

18       Q.    Could you please read the next sentence?

19       A.    With the advent of full touch phones,

20   principle --

21             LEAD INTERPRETER:  Strike that.

22       A.    Senior engineer Kim is faced with new challenges

23   because there is wide touchscreen which takes up the most

24   portions of cellular phones.  The room for showing

25   creativity is decreasing.
```

```
 1   BY MR. STERN:

 2       Q.    Mr. Kim, do you agree with what's stated in this

 3   article, that cell phone design is currently in a "full

 4   touch era"?

 5               MS. CARUSO:  Objection, vague.  Vague as to

 6   time.

 7       A.    With regard to that statement, I do not fully

 8   agree.

 9   BY MR. STERN:

10       Q.    Okay.  This article, if you look at the first

11   page of the document, there's a date that appears,

12   August 4th, 2009.  Do you see that?

13       A.    Yes, I'm there.

14       Q.    Okay.  Mr. Kim, do you recognize this as an

15   article that was circulated within Samsung on August 4th,

16   2009?

17               MS. CARUSO:  Objection, vague.  By "this,"

18   are you referring to the entire document or some smaller

19   portion of it?

20       A.    With regard to this document, I cannot quite

21   recall.

22   BY MR. STERN:

23       Q.    Returning to the answer that you gave to my

24   earlier question regarding the text in the middle of

25   page ending -939, Mr. Kim, could you please explain for me
```

```
 1    your grounds for disagreeing with the statement that you
 2    read from the news report?
 3              MS. CARUSO:  Objection, mischaracterizes the
 4    testimony.
 5         A.   As you mentioned in your objection, I believe the
 6    countries where we are selling our cell phones are not
 7    limited to a few number of countries.  There are countries
 8    which are developing countries or there are other countries.
 9    So these cell phones are selling globally.  Therefore, even
10    though we are embracing the era of full touch phones, but
11    that era does not apply to all countries at once.
12    BY MR. STERN:
13         Q.   With respect to the United States market,
14    Mr. Kim, would you agree that as of August 2009, the market
15    had entered a full touch era?
16              MS. CARUSO:  Objection, vague.
17         A.   I'm not quite sure.
18    BY MR. STERN:
19         Q.   With respect to Samsung cell phones directed to
20    the United States market, in your view as a designer, is
21    full touch the primary market appeal of Samsung phones
22    today?
23              MS. CARUSO:  Objection, vague, lacks
24    foundation, calls for speculation.
25         A.   I don't believe you pointed out a particular time
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

25

1    frame.

2    BY MR. STERN:

3        Q.    Let me ask you a different question.  What do you

4    understand by "full touch technology"?

5             MS. CARUSO:  Objection, vague.

6        A.    In my opinion, it refers to a technology that

7    allows you to manipulate the functions of cell phones by

8    touching the screen.

9    BY MR. STERN:

10       Q.    Would you agree with me that the Apple iPhone is

11   an example of full touch technology?

12            MS. CARUSO:  Objection, vague.

13       A.    Are you asking me only on iPhone?

14   BY MR. STERN:

15       Q.    I'm limiting my question to the iPhone.  Is the

16   iPhone an example of full touch technology?

17            MS. CARUSO:  Objection, vague, lacks

18   foundation.

19       A.    In my opinion, it could be one of the examples.

20   BY MR. STERN:

21       Q.    And in your opinion, does Samsung currently

22   manufacture cell phones that implement full touch

23   technology?

24       A.    Yes.

25       Q.    So far as you are aware, what was the first model

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   cell phone that Samsung introduced using full touch

 2   technology?

 3            MS. CARUSO:  Objection, lacks foundation.

 4        A.   I cannot exactly recall now.

 5   BY MR. STERN:

 6        Q.   Can you give me an example of one of the first

 7   models of cell phones that Samsung introduced using full

 8   touch technology?

 9        A.   Among the products that I worked on, there was a

10   product called I 7500.

11        Q.   At some point in time, was the I 7500 released in

12   the United States market?

13            MS. CARUSO:  Objection, lacks foundation.

14        A.   No, it was not.

15   BY MR. STERN:

16        Q.   Okay.  Are you aware of any other product that

17   you have worked on as a designer that implemented full touch

18   technology and that was introduced into the United States

19   market?

20        A.   I cannot exactly recall.

21        Q.   Okay.  Let me ask you this.  Are you aware of any

22   Samsung cell phone implementing full touch technology that

23   was introduced before the iPhone in 2007?

24            MS. CARUSO:  Objection, vague.

25        A.   Well, as to that, I don't have any precise
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   recollection as of now.
 2   BY MR. STERN:
 3       Q.    Did Samsung introduce cell phones implementing
 4   full touch technology in response to the introduction of the
 5   Apple iPhone?
 6             MS. CARUSO:  Objection, vague, lacks
 7   foundation.
 8       A.    Personally I have some objections as to the word
 9   that you chose to use, "response."
10   BY MR. STERN:
11       Q.    What's the nature of your objection to my use of
12   the word "response," Mr. Kim?
13       A.    When you say "response," it gives an impression
14   that you are trying to imitate something or you are doing
15   something inevitably, so it has a connotation of being
16   passive.
17       Q.    Would you agree with me, Mr. Kim, that
18   implementation of full touch technology in a cell phone is a
19   design choice?
20             MS. CARUSO:  Objection, vague.
21       A.    Personally, I agree, to a certain extent.
22   BY MR. STERN:
23       Q.    What does "to a certain extent" mean?
24       A.    Would you repeat your first question?
25       Q.    Yes.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

28

1          Would you agree that implementation of full touch

2   technology in a cell phone is a design choice?

3          MS. CARUSO:  Objection, vague; vague as to

4   time.

5     A.    I think there are some problems with regard to

6   the time.  And I don't agree.

7   BY MR. STERN:

8     Q.    You don't agree with what?

9     A.    Would you please repeat what you've just

10  mentioned?

11    Q.    Sure.  Let me ask it a different way, perhaps.

12  My question is whether using full touch technology, as

13  opposed to other types of cell phone technology, in a cell

14  phone represents one among many design choices that a

15  designer would make in creating a cell phone product.

16          MS. CARUSO:  Objection.

17    A.    I think that your question is somewhat difficult

18  to understand.

19  BY MR. STERN:

20    Q.    For a designer, Mr. Kim, does the use of the full

21  touch screen represent a design choice?

22          MS. CARUSO:  Objection, vague; vague as to

23  time.  Calls for expert opinion.

24    A.    Personally I don't believe it's a design choice.

25  Rather, as the technology or functions evolve, certain

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   design is being applied.

2   BY MR. STERN:

3       Q.    So, Mr. Kim, do I understand your testimony

4   correctly that a designer -- well, strike that.

5             At the present day, Mr. Kim, is it your testimony

6   that a designer who wishes to design a cell phone has no

7   choice but to implement full touch technology?

8             MS. CARUSO:  Objection, vague, lacks

9   foundation, calls for speculation, incomplete

10  hypothetical.  Vague as to time.

11      A.    Personally I have some problems with the word

12  "choice" -- of have to choice -- "have no choice."

13  BY MR. STERN:

14      Q.    What's the problem with the phrase "have no

15  choice"?

16      A.    I don't believe with the development of

17  technology we have to implement full touch technology no

18  matter what.

19            (Deposition Exhibit 1366 was marked.)

20  BY MR. STERN:

21      Q.    I've asked the reporter to mark another exhibit

22  for you, Mr. Kim.  Mr. Kim, the court reporter has handed

23  you an exhibit that is Bates stamped SAMNDCA10097541 through

24  -552.

25      A.    Yes.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.    And I would like to direct your attention to a

2  page in the middle of the document ending in the number

3  -547.  And specifically I want to direct your attention

4  towards the bottom of the page, a portion of the document

5  that refers to a design report meeting.

6      A.    Yes.

7      Q.    Mr. Kim, do you recall attending the meeting that

8  is stated as taking place here on July 13th, 2010?

9           MS. CARUSO:  Objection, vague.

10      A.    To be honest, I can't quite recall.

11  BY MR. STERN:

12      Q.    Okay.  Do you see your name appearing on the

13  page that I've directed you to?  And for the sake of the

14  record, this is page Bates numbered SAMNDCA10097547.

15      A.    Yes.

16      Q.    And, Mr. Kim, do you know an individual named

17  KyoungSun or Iris Cho?

18      A.    Yes.

19      Q.    Who is Ms. Cho?

20      A.    She is a senior designer at the design strategy

21  part.

22      Q.    And from time to time, does she prepare meeting

23  minutes of design report meetings?

24      A.    Yes.

25      Q.    And does she circulate those minutes to

1   individuals who have a need to have access to that

2   information?

3                MS. CARUSO:  Objection, lacks foundation,

4   calls for speculation, compound, vague.

5        A.   Since I'm not senior designer KyoungSun Cho,

6   there is no way of knowing to what extent she is circulating

7   that information or sharing that information with other

8   individuals.

9   BY MR. STERN:

10       Q.   From time to time, have you received messages

11  from Ms. Cho containing design meeting minutes?

12       A.   Yes.  Time to time.

13       Q.   Do you have any reason to doubt that the e-mail

14  that I've directed you to is an example of such a

15  communication from Ms. Cho?

16       A.   In my opinion, no.

17       Q.   No, you have no reason to doubt?

18       A.   Correct.

19       Q.   Directing your attention to the names of the

20  individuals who are listed as being in attendance at the

21  meeting on July 13th, 2010.  Do you have an understanding as

22  to who the head of business operations is listed first in

23  attendance?

24       A.   Yes.  President, JongKyun Shin, S-h-i-n.

25       Q.   Is that JK Shin?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.    Yes, that is correct.

 2        Q.    And directing your attention to the content of

 3   the e-mail.  Do you see that there are comments regarding

 4   design proposals relating to products including the Seine,

 5   S-e-i-n-e, product?

 6             MS. CARUSO:  Objection, vague.

 7        A.    Let me read it first.

 8             (Pause.)

 9        A.    I'm done.

10   BY MR. STERN:

11        Q.    Okay.  From time to time, does JK Shin

12   participate in design meetings as indicated in this e-mail?

13             MS. CARUSO:  Objection, lacks foundation,

14   calls for speculation, vague.

15             CHECK INTERPRETER:  I have an interjection.

16   For the previous interpretation of the testimony, the

17   alternative interpretation would be, "I'm done reading

18   the portion about Seine."

19             MR. STERN:  Thank you.

20   BY MR. STERN:

21        Q.    Mr. Kim, do you have my question in mind?

22        A.    Yes.  From time to time, he does participate in

23   such a meeting.

24             (Deposition Exhibit 1367 was marked.)

25        Q.    Mr. Kim, I've asked the court reporter to hand
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    you a document that is Bates stamped SAMNDCA00239585 through
 2    -586.
 3               MR. STERN:  And, Counsel, maybe at a break,
 4    there are a couple of e-mails that we're going to be
 5    using today, this exhibit and the previous exhibit,
 6    where we have garbled text up at the top.  I'd like to
 7    see about getting clear copies of those from you.  So
 8    I'd like to discuss that at -- sometime today.
 9    BY MR. STERN:
10        Q.    Mr. Kim, is this a document that -- well,
11    directing your attention towards the lower half of the page,
12    do you see your e-mail address, jinsoo24.kim@samsung.com?
13        A.    Yes.
14        Q.    Is this an e-mail that you sent on or about
15    January 11th, 2010?
16        A.    I believe that to be the case.
17        Q.    And the e-mail concerns the P1 design, correct?
18        A.    I think I need to read further.
19              (Pause.)
20        A.    I'm done reading.
21        Q.    Directing your attention to the second point with
22    a dash and an arrow in the body of the e-mail.
23        A.    Yes.
24        Q.    In this portion of the e-mail, were you
25    summarizing remarks of vice president SukGuen Kim?
```

1              MS. CARUSO:  Objection, vague.

2         A.    I think that that was the case.

3    BY MR. STERN:

4         Q.    Could you please read the text of the bullet

5    point that I -- or of the dashed portion of this -- let me

6    ask you a clean question.  Could you please read the text

7    corresponding to the second dash line and arrow in the

8    portion of the text on page ending -239585?

9         A.    If we go ahead with the same concept as the

10   existing working sample, we won't be able to highlight the

11   design, so it is necessary to explore new ideas such as

12   Apple, parenthesis, vice president SukGuen Kim.

13        Q.    Mr. Kim, when you wrote this text, did you have

14   an understanding as to what Mr. SukGuen Kim meant?

15             MS. CARUSO:  Objection, lacks foundation.

16        A.    I think even though I didn't fully understand

17   what he meant by this, but to a certain extent, I believe I

18   had a certain understanding.

19   BY MR. STERN:

20        Q.    And what was your understanding?

21        A.    At this time, we were talking about connecting

22   portions.  So we're not --

23             LEAD INTERPRETER:  Strike that.

24        A.    We didn't want to have something open by creating

25   a hole.  Instead, we wanted to do something like the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    Company A.  I believe that company had a notebook PC called
2    Mac Air or something like that.  So they had a USB which you
3    can open and close.
4             So -- I mean, I wanted -- we wanted something
5    that is working as well as hidden.  In other words, we need
6    a new idea.  But here, it didn't indicate any single idea.
7             LEAD INTERPRETER:  Strike the last sentence,
8    please.
9             (A discussion was had off the record between
10   Lead Interpreter and Check Interpreter in Korean.)
11            CHECK INTERPRETER:  "So it didn't mean to
12   single out this as particular idea."
13            LEAD INTERPRETER:  Okay.
14   BY MR. STERN:
15       Q.    Mr. Kim, did you want to provide some more
16   testimony on this question?
17       A.    He was suggesting to explore a solution such as
18   opening and closing a USB.  It was just a suggestion.  He
19   didn't present it as an answer to this problem at all.
20       Q.    And specifically when Mr. Kim remarked about a
21   need to find new ideas as with Apple, what did you
22   understand him to mean by that?
23            MS. CARUSO:  Objection, lacks foundation,
24   assumes facts not in evidence.
25       A.    I don't know precisely.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

36

```
 1              MR. STERN:  Let's take a moment to change the

 2   tape.

 3              THE VIDEOGRAPHER:  Going off the record.  The

 4   time now is 12:20.  This is the end of Tape No. 1.

 5              (Pause.)

 6              THE VIDEOGRAPHER:  This is the beginning of

 7   Tape No. 2.  The time now is 12:22.

 8              (Deposition Exhibit 1368 was marked.)

 9   BY MR. STERN:

10       Q.    Mr. Kim, when you wrote in the e-mail that we've

11   been discussing a summary of Mr. Kim's -- Mr. SukGuen Kim's

12   comment on Apple, did you have any understanding what he

13   meant?

14              MS. CARUSO:  Objection, lacks foundation,

15   calls for speculation.

16       A.    In my opinion, he was not suggesting to follow

17   Apple's design.  Actually, Apple was mentioned as one of the

18   examples.  So he wanted to develop an idea of having

19   something you can hide.

20   BY MR. STERN:

21       Q.    And having something you can hide is the type of

22   idea that Apple implements in his products -- its product;

23   is that correct?

24              MS. CARUSO:  Objection, vague, lacks

25   foundation.
```

1          A.     I didn't mean that --

2                 LEAD INTERPRETER:  Strike that.

3          A.     That's not what I meant.  I was talking about a

4     connecting portion, which is open and which you can see with

5     your eyes.

6     BY MR. STERN:

7          Q.     Directing your attention to the fourth dashed

8     line with an arrow in the middle of the text on page

9     -239585, do you see what I'm looking at, Mr. Kim?

10         A.     Are you asking me as to the portion that starts

11    with Main Body?

12         Q.     Yes.  Could I ask you to please read that

13    sentence, Mr. Kim?

14         A.     It appears to me that main body has to be as

15    simple as possible and shouldn't have anything unnecessary.

16    Vice president, SukGuen Kim.

17         Q.     Mr. Kim, in your role as a designer, do you

18    sometimes seek to create a design that is as simple as

19    possible?

20                MS. CARUSO:  Objection, vague.

21         A.     Not as always.

22    BY MR. STERN:

23         Q.     Not always, but sometimes; is that correct?

24                MS. CARUSO:  Objection, vague.

25         A.     Sometimes I could do.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

 1   BY MR. STERN:

 2       Q.    And in your role as designer, is it sometimes

 3   your goal to implement a design that doesn't, quote, have

 4   anything unnecessary, as you indicated with regard to the

 5   comments of Mr. SukGuen Kim?

 6             MS. CARUSO:  Objection, vague, compound.

 7       A.    I think that sometimes that's the case.

 8   BY MR. STERN:

 9       Q.    Mr. Kim, would you understand what I mean if I

10   refer to a design that is minimal or minimalistic?

11             MS. CARUSO:  Objection, vague.

12       A.    There can be some subjective differences in

13   interpretation.

14   BY MR. STERN:

15       Q.    In other words, interpretation about what is

16   minimalistic or not?

17       A.    Would you repeat your question, please?

18       Q.    Sure.  Let me ask you a different question.  In

19   your role as a designer, have you ever sought to create a

20   design that you believed was minimalistic?

21       A.    I don't have precise recollection, but I think I

22   did.  Probably.

23       Q.    Mr. Kim, if two designers were both seeking to

24   create a design that was as simple as possible or

25   minimalistic -- strike that.  Let me give you a cleaner

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    question.

2           If two designers were trying to create a design

3    that was minimalistic, do you believe that they would end up

4    with the same design or is it possible that they might come

5    up with designs that were, in some respects, different?

6           MS. CARUSO:  Objection, vague, compound,

7    incomplete hypothetical.

8       A.    I believe it depends on the circumstances

9    surrounding those designers, such as their working

10   conditions, workplace, and working time.  So depending on

11   those elements, I believe the results would be different.

12   BY MR. STERN:

13      Q.    Let me ask you to take a look at another exhibit.

14   This is a lengthy document, Mr. Kim, but I only need to ask

15   you a question about one page.  The document covers Bates

16   numbers SAMNDCA00217372 through -7388.  And I'd like to ask

17   you to please take a look at the page that ends with the

18   numbers -7380.  First, if I may, Mr. Kim, let me take a step

19   back.  Do you recognize this document?

20      A.    I don't recall.

21      Q.    Are you familiar with the mobile UX group of

22   Samsung Electronics?

23          MS. CARUSO:  Objection, vague.

24      A.    No, I'm not.

25   ///

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   BY MR. STERN:

 2       Q.    Do you have any interaction with that group in

 3   your work as a designer?

 4             MS. CARUSO:  Objection, vague.

 5       A.    Rarely.

 6   BY MR. STERN:

 7       Q.    Directing your attention to the page ending in

 8   -7380.  Do you see some words in English relating to Apple

 9   on this page, under the column headed Apple with the Apple

10   logo?

11       A.    Yes.

12             MS. CARUSO:  Objection, vague.

13   BY MR. STERN:

14       Q.    Mr. Kim, what's your understanding based on

15   looking at the document of the meaning of those English

16   words in relation to Apple?

17             MS. CARUSO:  Objection, lacks foundation,

18   vague.

19             I would request that the interpreter read

20   those words to the witness and translate them into

21   Korean for him.

22             MR. STERN:  Okay.  That's helpful.

23   BY MR. STERN:

24       Q.    Let me take it this way, Mr. Kim.  In your mind,

25   as a designer, do you have a set of characteristics or
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

109

```
 1              C E R T I F I C A T E

 2    SEOUL              )
                         )
 3    KOREA              )

 4              I, Lisa A. Knight, Registered Merit
      Reporter and Certified Realtime Reporter, do hereby
 5    certify that the aforementioned witness was first duly
      sworn by me pursuant to stipulation of counsel to
 6    testify to the truth; that I was authorized to and did
      report said deposition in stenotype; and that the
 7    foregoing pages are a true and correct transcription of
      my shorthand notes of said deposition.

 8
                I further certify that said deposition was
 9    taken at the time and place hereinabove set forth and that
      the taking of said deposition was commenced and completed as
10    hereinabove set out.

11              I further certify that I am not attorney or
      counsel of any of the parties, nor am I a relative or
12    employee of any attorney or counsel of any party connected
      with the action, nor am I financially interested in the
13    action.

14              The foregoing certification of this
      transcript does not apply to any reproduction of the same by
15    any means unless under the direct control and/or direction
      of the certifying reporter.

16

17              IN WITNESS WHEREOF, I have hereunto set my
18    hand this 3rd day of February, 2012.

19

20
      _____
21    LISA A. KNIGHT
      Certified Realtime Reporter
22    Registered Merit Reporter
      Realtime Systems Administrator
23

24

25
```