# EXHIBIT J
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

```
 1                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
 2                     SAN JOSE DIVISION

 3   APPLE, INC., a California
     corporation,
 4                                            CASE NO.
            Plaintiff,                        11cv01846-LHK
 5
     v.
 6
     SAMSUNG ELECTRONICS, CO., LTD., a
 7   Korean business entity; SAMSUNG
     ELECTRONICS AMERICA, INC., a New
 8   York corporation; SAMSUNG
     TELECOMMUNICATIONS AMERICA, LLC,
 9   a Delaware limited liability
     company,
10
            Defendants.
11   _____

12   SAMSUNG ELECTRONICS, CO., LTD., a
     Korean business entity; SAMSUNG
13   ELECTRONICS AMERICA, INC., a New
     York corporation; SAMSUNG
14   TELECOMMUNICATIONS AMERICA, LLC,
     a Delaware limited liability
15   company,

16          Counterclaim-Plaintiffs,

17   v.

18   APPLE, INC., a California
     corporation,
19
            Counterclaim-Defendant.
20

21       *** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY ***

22              VIDEOTAPED PERSONAL DEPOSITION OF:
                          JUNGMIN YEO
23
                        February 2, 2012
24                        Kim & Chang
                       Seoul, South Korea
25                 9:51 a.m. - 3:29 p.m.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

5

```
 1              LEAD INTERPRETER:  Jamie Wright, lead
 2   interpreter.
 3              CHECK INTERPRETER:  Hyesun Lee, checker
 4   interpreter, certified court interpreter.
 5              THE VIDEOGRAPHER:  Would counsel please state
 6   any stipulations for the record.
 7              MR. ZHANG:  We understand that the court
 8   reporter is not authorized to administer oaths in this
 9   venue.  Nevertheless, we request that he administer the
10   oath, and we stipulate that we waive any objection to
11   the validity of the deposition based on the oaths.
12              MR. WALL:  Defendants agree.
13              THE WITNESS:  I have a question:  Should I
14   look at the camera, or should I look at the counsels
15   specifically?
16              MR. WALL:  Please look at the camera.
17              THE WITNESS:  Yes.
18              THE VIDEOGRAPHER:  Thank you.  At this time,
19   our court reporter will swear in the witness and
20   interpreters and then we can proceed.
21              (Interpreters sworn.)
22
23
24
25
```

```
 1        Q.    Then what about design considerations?  What
 2   design considerations did you have in mind when you were
 3   working on the Tab 10.1?
 4        A.    There are many, but if I may try to organize it a
 5   little bit, I would say usability, easiness or convenience,
 6   aesthetics and portability.  I think that would be the
 7   considerations.
 8        Q.    And by "convenience," do you mean convenience for
 9   the user?
10        A.    Yes.
11        Q.    Who has to give final approval for a Samsung
12   product before it's commercially manufactured?
13              MR. WALL:  Objection to form.
14        A.    I think the scope is too broad.  Are you talking
15   about design confirmation?
16   BY MR. ZHANG:
17        Q.    Yes, design confirmation.
18        A.    My boss do -- does.
19        Q.    And is that Mr. Jinsoo Kim?
20        A.    Yes.
21        Q.    Do you ever receive design input on -- actually,
22   let me strike that.
23              Have you ever received design input on the Galaxy
24   Tab 10.1 from Mr. JK Shin?
25              MR. WALL:  You can answer that question yes
```

```
 1   or no.
 2        A.    No.
 3   BY MR. ZHANG:
 4        Q.    What about from Mr. JiSung Choi, have you ever
 5   received design input on the Galaxy Tab 10.1 from him?
 6        A.    No.
 7        Q.    Do you know if Mr. Jinsoo Kim has received design
 8   input on the Galaxy Tab 10.1 from either Mr. Choi or from
 9   Mr. Shin?
10             MR. WALL:  Objection to form, compound.
11        A.    I don't know.
12   BY MR. ZHANG:
13        Q.    Are you aware of a design meeting concerning
14   Samsung tablets that occurred the weekend after the iPad 2
15   release?
16             MR. WALL:  Objection to form.
17        A.    What design meeting are you talking about?
18   BY MR. ZHANG:
19        Q.    I'm talking about a design meeting that was
20   chaired by Mr. JiSung Choi concerning the design of
21   Samsung's tablets.
22        A.    I do not know.
23        Q.    You've never heard of such a meeting?
24             MR. WALL:  Objection to form, asked and
25   answered.
```

1      A.    I do not know.

2  BY MR. ZHANG:

3      Q.    Did you receive any design direction on the

4  Galaxy Tab 10.1 after the iPad 2 was released?

5            MR. WALL:  Objection to form.

6      A.    I do not know when iPad 2 was released.

7  BY MR. ZHANG:

8      Q.    Have you had any discussions with employees at

9  Samsung about redesigning the Galaxy Tab 10.1 in light of

10 the iPad 2 announcement?

11           MR. WALL:  Objection to form.

12     A.    No, it's not redesign.

13 BY MR. ZHANG:

14     Q.    And what do you mean by it's not redesigned?

15     A.    I just do not know the term itself, the redesign.

16 I don't know what it means at all.

17     Q.    You don't know what the term "redesign" means?

18     A.    Correct.  I don't -- we haven't done

19 redesigned -- we haven't done redesign.

20     Q.    So you worked on the P3 project; is that correct?

21     A.    Yes.

22     Q.    And you worked on the P4 project as well; is that

23 correct?

24     A.    Yes.

25     Q.    What was the rationale that you were given for

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

87

1        C E R T I F I C A T E

2   SEOUL              )
                       )
3   KOREA              )

4           I, Michael E. Miller, Registered Diplomate
    Reporter, Certified Realtime Reporter, do hereby certify
5   that the aforementioned witness was first duly sworn by
    me pursuant to stipulation of counsel to testify to the
6   truth; that I was authorized to and did report said
    deposition in stenotype; and that the foregoing pages
7   are a true and correct transcription of my shorthand
    notes of said deposition.

8
            I further certify that said deposition was
9   taken at the time and place hereinabove set forth and that
    the taking of said deposition was commenced and completed as
10  hereinabove set out.

11          I further certify that I am not attorney or
    counsel of any of the parties, nor am I a relative or
12  employee of any attorney or counsel of any party connected
    with the action, nor am I financially interested in the
13  action.

14          The foregoing certification of this
    transcript does not apply to any reproduction of the same by
15  any means unless under the direct control and/or direction
    of the certifying reporter.

16

17          IN WITNESS WHEREOF, I have hereunto set my

18  hand this February 3, 2012.

19

20

21  _____
    MICHAEL E. MILLER
22  Certified Realtime Reporter
    Registered Diplomate Reporter
23  Realtime Systems Administrator

24

25