QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S ALLEGED VIOLATION OF TWO DISCOVERY ORDERS**<br><br>Date:    March 27, 2012<br>Time:    10:00 a.m.<br>Place:   Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT .......................................................................................................................... 11

I.      SAMSUNG SUBSTANTIALLY COMPLIED WITH BOTH COURT ORDERS ........... 12

     A.      Samsung Complied With The Orders to Produce Documents From Its
          Designers Referencing Apple Products ................................................................. 12

     B.      Samsung Complied With The Orders to Produce Documents From Its
          Survey Employees Referencing Apple Products. ................................................. 13

II.     ANY ISOLATED AND INADVERTENT DELAYS IN PRODUCTION WERE
      SUBSTANTIALLY JUSTIFIED. ...................................................................................... 15

III.    IN THESE CIRCUMSTANCES, A SANCTIONS AWARD WOULD BE
      MANIFESTLY UNJUST ................................................................................................. 16

IV.    APPLE CANNOT DEMONSTRATE THAT ITS EXPENSES WERE CAUSED
      BY ANY ALLEGED VIOLATION OF ANY DISCOVERY ORDER ............................ 18

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Asbestos Products Liability Litig.*,
　2010 WL 2034636................................................................................................15

*Buchanan v. Santos*,
　2011 WL 2112475 (E.D. Cal. 2011) ...................................................................18

*Century Indem. Co. v. Aero-Motive Co.*,
　254 F. Supp. 2d 670 (W.D. Mich. 2003)............................................................15

*Computer Task Group, Inc. v. Brotby*,
　364 F.3d 1112 (Fed. Cir. 2004)...........................................................................17

*Eldon Indus., Inc. v. Rubbermaid, Inc.*,
　735 F. Supp. 786 (N.D. Ill. 1990) .......................................................................18

*Hyde & Drath v. Baker*,
　24 F.3d 1162 (9th Cir. 1994)...............................................................................16

*Liew v. Breen*,
　640 F.2d 1046 (9th Cir. 1981) .............................................................................18

*Rice v. Icicle   Seafoods, Inc.*,
　2008 WL 5246396 (W.D. Wash. 2008) ...............................................................18

*United States for Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
　857 F.2d 600 (9th Cir. 1988)...............................................................................17

*Wilson v. Seattle Housing Authority*,
　2011 WL 338793 (W.D. Wash. February 3, 2011) .............................................19

## Statutes

Fed. R. Civ. P.
　Rule 26(a) .............................................................................................................3
　Rule 37 ...............................................................................................................11
　Rule 37(b) ...........................................................................................................18
　Rule 37(b)(2) .......................................................................................................18
　Rule 37(b)(2)(C)...............................................................................11, 15, 18, 19

## Miscellaneous

Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus,
　8B Fed. Prac. & Proc. Civ. § 2289   (3d. ed. 2011) .................................................18

# PRELIMINARY STATEMENT

Apple's motion seeks sanctions based upon Samsung's production of some documents during the general discovery phase that Apple argues were responsive to preliminary injunction phase requests and orders.   Apple's motion fails because Samsung substantially complied with all of its preliminary injunction-related discovery obligations and all discovery orders.

At the outset, Judge Koh directed that the parties' preliminary injunction-related discovery was to be narrowly tailored and reasonable in scope.   Apple vigorously applied that rule to itself, yet Apple now seeks to impose a more stringent standard to Samsung's conduct.   It may not do so. Samsung diligently obeyed all relevant Court orders by immediately conducting numerous witness interviews, collecting documents from dozens of custodians, and reviewing and producing hundreds of thousands of documents—all in the mere matter of days it was given to comply with the Orders.   Samsung undertook these large-scale efforts in the face of formidable obstacles – including a drastically compressed time-frame caused by Apple's desire for a quick trial, sweepingly broad discovery demands from Apple, language, encryption, and technical barriers, and the complications of overseas discovery.   Without question, Samsung's discovery conduct was reasonable in the circumstances.

Apple bases its entire motion on isolated and inadvertent delays in Samsung's production due to technical glitches.   These circumstances do not even come close to warranting the multi-million dollar sanctions award Apple seeks.   On these facts, such an award would be manifestly unjust, particularly given Apple's failure to show prejudice.   Apple claims only that Judge Koh would have granted Apple's preliminary injunction motion had certain documents been produced some weeks earlier.   But Apple lost its motion for failure to proffer its own evidence of irreparable harm to its business and due to the invalidity of two of its asserted patents (among other things).   No amount of evidence on the alleged infringement prong of the preliminary injunction test would have saved Apple's motion.   And finally, Apple has not demonstrated, as it must, that the expenses it seeks – essentially its entire litigation bill – were caused by a handful of cumulative documents being produced later than Apple wished.   Apple points to no other fee award issued under such circumstances.   Its unprecedented motion should be denied.

## BACKGROUND

On April 15, 2011, Apple filed suit, alleging that Samsung unlawfully copied Apple's products, including its iPhone and iPad. (Dkt. No. 1 at 2.) On July 1, 2011, Apple filed a motion for a preliminary injunction, alleging that Samsung's Infuse 4G, Galaxy S 4G, and Droid Charge phones, and Galaxy Tab 10.1 tablet infringed three design patents (the D618,677, D593,087, and D504,889 patents), and one utility patent (the 7,469,381 patent). (Dkt. No. 86.) The D'677 and D'087 patents each claimed designs related to smartphones; the D'889 patent claimed a design of a tablet computer, and the '381 patent claimed a "bounce back" method for affecting a display on a touchscreen device.

**1.    The Court Sets Strict Limits For "Narrowly Tailored" Preliminary Injunction Discovery.**

Early in the case, Apple urged the Court to adopt an expedited and limited discovery schedule for its  "focused," motion "limited to three design patents and one utility patent."  (Dkt. No. 100 at 1, 2.) Based on these representations, the Court limited the injunction-related discovery phase, instructing the parties to "***keep discovery requests reasonable in scope and narrowly tailored to address the preliminary injunction motion***."  (Dkt. No. 115. at 2 (emphasis added).) Apple repeatedly used this limitation to cabin its responses to Samsung's discovery requests.  For instance, on August 5, 2011, in response to Samsung's request for Apple's infringement positions relating to the four Apple patents at issue in the preliminary injunction motion, Apple accused Samsung of "inappropriately seek[ing] to expand the permissible scope of discovery…"[1]  Similarly, in its preliminary injunctions-related discovery responses, Apple made clear that it was only "conducting *a reasonable investigation* appropriate for *the limited preliminary injunction discovery*."[2]

---

[1]    Declaration of Sara Jenkins in Support of Samsung's Opposition to Apple's Motion for Rule 37(b)(2) Sanctions, ("Jenkins Decl."), Ex. A.
[2]    Jenkins Decl. Ex., B (Apple's Supplemental Responses to Interrogatories 1, 3, and/or 6) (emphasis added).

**2.      Apple Propounds Belated and Sweepingly Broad Preliminary Injunction Discovery Demands, In Disregard of Judge Koh's Scheduling Order**

In contrast to the two-month time-frame Samsung gave Apple to respond to Samsung's preliminary injunction-related document requests (serving them on July 6, 2011), Apple waited until August 26, 2011 – the very last day for propounding such discovery and over two months after it filed its preliminary injunction motion – before serving its preliminary injunction discovery requests.   (Jenkins Decl., ¶ 5.)   Apple then served many dozens of document requests with multiple subparts, leaving Samsung with only seventeen days to comply.   (Dkt. No. 115.) Apple's belated service of its requests proved extremely burdensome to Samsung, given the large number of document custodians and the difficulties of collecting documents overseas.[3] Nonetheless, Samsung collected and reviewed many thousands of documents, and began its rolling production on September 1, 2011, producing more than 32,000 pages of documents by September 20, 2011.   (Jenkins Decl., ¶ 8.)

**3.      Apple's September 2011 Motion to Compel**

On September 20, 2011, just a week after Samsung's production deadline and while the meet-and-confer process was ongoing, Apple moved to compel discovery of design documents "relating to copying of Apple's [p]roducts" and "customer surveys relating to Apple products." (Dkt. No. 247 at 8, 12.)   Even so, Apple asked the Court to grant a much broader discovery order, arguing that a central issue in its motion were "documents where the designers are talking about *Apple*."   (September 28, 2011 Hr'g Tr. at 25 (Dkt. No. 270a).)   Apple further represented that it sought "all documents relating to the marketing of products at issue that discussed or refer directly or indirectly to *Apple* or Apple products"   (*Id.* at 32:4-10), as well as all e-mails resulting from a search "for terms like *Apple*, iPhone, iPad."   (*Id.* at 78:23-79:3).

**4.      The Court's September 2011 Discovery Order**

On September 28, 2011, this Court ordered Samsung to produce the following documents[4]:

---

[3]  Jenkins Decl., ¶ 7; Samsung's First Amended and Supplemental Identification of Custodians, Litigation Hold Notices and Search Terms, Jenkins Decl., Ex. C.
[4]  Apple does not move for sanctions relating to Samsung's document productions in compliance with Paragraph 2 of the Court's September 28, 2011 Order.

1.      From the custodial files of each of Samsung designers of Samsung's Galaxy S 4G and Infuse 4G, Droid Charge phones and Galaxy Tab 10.1 table[t] computer identified in Samsung's Rule 26(a) disclosures or interrogatory responses, all documents referencing **the Apple products** alleged by Apple to embody one or more of the ornamental or utility features claimed in the patents.  All means all: email, memoranda, whatever.  Samsung put these documents at issues when, at page 39 of its opposition to Apple's preliminary injunction motion, it boldly declared that "[a]lthough **willful infringement, including deliberate copying**, may be relevant to a preliminary injunction motion, Apple has offered no evidence of such copying or willful infringement."

2.      From the custodial files of Lee Don-Joo, all documents relating to the redesign of the Galaxy Tab 10.1 following Apple's announcement of the iPad 2 on or about March 2, 2011….

3.      From any central files or the custodial files of any individuals with specific responsibility for surveying customers of Samsung's Galaxy S 4G and Infuse 4G, Droid Charge phones and Galaxy Tab 10.1 table[t] computer, all survey documents that reference **the Apple products** currently alleged by Apple to embody one or more the ornamental or utility features claimed in the patents.

(Dkt. No. 267 at 3 (emphasis added).)   The Court gave Samsung seven days to comply with its Order.   Notably, the Court declined Apple's request that Samsung be ordered to search its custodial files for the term "Apple."

### 5.      Samsung's Substantial Compliance with the September 28 Order

After the issuance of the September 28 Order, Samsung took immediate steps to ensure that it had identified the right custodians and had collected any documents responsive to Apple's preliminary injunction requests, as limited by that Order.   (Declaration of Hankil Kang in Support of Samsung's Opposition to Apple's Motion for Rule 37(b)(2) Sanctions ("Kang Decl."), ¶ 5; Jenkins Decl., ¶ 9.)   Samsung's outside counsel immediately flew to Korea, and a team of attorneys, including Samsung's in house and outside counsel, conducted several days of document collection interviews with dozens of Samsung employees.   (Kang Decl., ¶ 5.)   During these interviews, Samsung's counsel confirmed the identity of those individuals who were involved in the design or in the consumer survey research for the products and features at issue in the preliminary injunction proceedings.   (*Id*.)   Samsung's counsel then ran searches on the custodians' desktop computers for the relevant search terms (including "iPhone" and "iPad").   (*Id.*, ¶ 6.)   This process consumed many hours due to the high volume of irrelevant and false hits.   (*Id*.)   Samsung then decrypted, processed and uploaded those documents for Samsung's

counsel's review in the United States – a process that consumed a significant amount of additional time due to the security measures that needed to be addressed relating to the documents, the volume of the documents, as well as the geographic distance. (*Id.*) Samsung's outside counsel then processed, reviewed and produced the responsive documents by the Court-ordered deadline. (Jenkins Decl., ¶ 9.) Samsung performed manual searches for responsive documents as well. (Kang Decl., ¶ 6.)

As the result of this search, within the mere days that Samsung had to comply with the Court's Order, Samsung produced almost 10,000 pages of documents from the custodial files of the relevant Samsung designers of the disputed products,[5] as well as from its central files and the custodial files of the relevant individuals with specific responsibility for surveying customers.[6] (Jenkins Decl., ¶ 10.)

**6.     Apple Successfully Moves to Augment The Preliminary Injunction Record With Documents Samsung Produced in Response to the September 28 Order**

On October 11, 2011, Apple submitted a Motion to Augment the Record, citing documents that Apple believed were "probative of issues in dispute on Apple's [preliminary injunction motion]" and that allegedly showed that Samsung "copied" the "bounce" feature from Apple. (Dkt. No. 299a at 1.) For example, Apple cited one Samsung document that purported to show Samsung's evaluation of the accused features of the iPad 2, Samsung's determination that its own product was "inferior" to the iPad 2, and comments that Samsung's product lacked the "Fun, Wow Effect" or emotional response of the iPad 2. (*Id.* at 2; Dkt. No. 299b, Ex. A.) Apple also presented a Samsung document showing the results of a consumer survey, in which Samsung purportedly concluded that "American consumers are influenced greatly by iPhone design" and that design mattered to its consumers. (Dkt. No. 299a at 3; Dkt. No. 299b, Ex. E.) On December 2, 2011, Judge Koh granted Apple's Motion to Augment, and allowed all of the new evidence to be considered on Apple's preliminary injunction motion. (Dkt. No. 452 at 8.)

---

[5] During the course of Samsung's investigation, the appropriate designers were identified; Samsung ultimately amended its Rule 26(a) disclosures to reflect more accurate information regarding the identities of the designers. (*see supra* n. 1, Jenkins Decl., Ex. C.)

[6] Because Samsung personnel are not assigned on a per-product basis, Samsung interpreted its discovery mandate broadly and searched the custodial files of those who are generally responsible for design-related survey work in the relevant departments.

**7.      The District Court Denies Apple's Preliminary Injunction Motion**

On December 2, 2011, the Court denied Apple's preliminary injunction motion.    Beginning with Apple's iPhone, the Court held that Samsung could not meet its threshold burden of showing the likelihood of invalidity of Apple's D′087 and D′677 design patents based on functionality (*See* December 2, 2011 Order Denying Motion for Preliminary Injunction (Dkt. No. 449 at 14-15)), but noted the "substantial questions" raised about validity of the D'087 patent.    (*Id*.) Although the Court held that the Galaxy S 4G and Infuse 4G likely infringed Apple's patents (*Id*. at 37-39), it denied injunctive relief based on the absence of irreparable harm and the balance of equities in Samsung's favor. Specifically, the Court rejected Apple's twin theories of irreparable harm: that (1) "the entrance of Samsung's infringing phones into the smartphone market is likely to erode Apple's design and brand distinctiveness, resulting in a loss of goodwill…," and (2) Samsung's conduct caused Apple to permanently lose market share and customers.    (*See id*.)

Rejecting Apple's "conclusory statements," "theoretical arguments," and lack of authority (*Id*.), the Court held that Apple failed to demonstrate a "nexus between Apple's harm of lost customers and loss in market share and Samsung's allegedly infringing conduct."    (*Id*. at 33.) Judge Koh also faulted Apple's delay in asserting infringement.    (*Id*. at 35-36.)    Finally, the Court held that the balance of hardships tipped in Samsung's favor.    (*Id*. at 37.)    Noting that the D'677 patent only covers the front view of the smartphone—one of many aspects of Samsung's phones—the Court held that it would be unfair to enjoin both smartphones "based on one aspect of the overall product …."    (*Id*. at 38.)

With respect to Apple's D'889 patent, the Court found that Samsung had not raised any substantial questions of invalidity based on functionality (*See id*. at 50), and that Apple likely could prove infringement as a result of consumer confusion over the tablets.    (*See id*.)    The Court also cited Apple's stronger claims of irreparable harm, in light of its declining tablet market share (*See id*.), and stronger evidence that "design is an important driver in demand for tablets." (*Id*. at 49, 50.)    However, the Court denied an injunction in light of a substantial question of invalidity based on prior art and Apple's lack of likely trial success.    (*See id*. at 50, 65.)    Finally, the Court held that Apple's '381 utility patent, "which claims a method for scrolling on a touch-

screen device," (*Id.* at 30) known as "bounce back," did not warrant an injunction due to the lack of irreparable harm.   (*See id.* at 63-64.)   The ruling currently is on appeal to the Federal Circuit.

**8.**      **Apple Warns Samsung to Expect to See Documents Responsive to Samsung's Preliminary Injunction Requests During the General Discovery Phase**

As the preliminary injunction discovery phase drew to a close and general discovery was about to commence, Apple wrote a letter to Samsung regarding document production issues. Specifically, Apple made clear its expectation that neither side should take the position that a party's production of documents during the general discovery phase that were also responsive to preliminary injunction discovery was somehow improper or actionable:

> **The parties now face general discovery. This necessarily is broader in scope than the "narrowly tailored" preliminary injunction discovery that Judge Koh ordered in July, which allowed Apple only a three-week window to make its production.**   As part of this general discovery, Apple is performing searches for documents that are responsive to Samsung's recent discovery requests. **Some of the documents located as part of this process also may be responsive to Samsung's preliminary injunction discovery requests. This does not mean, however, that Apple has not done what you and I specifically agreed would be done during the preliminary injunction phase of Apple's discovery.**
>
> **\*\*\***
>
> [T]his is going to be a long discovery process. **I hope we don't need to take extreme measures and record every agreement we reach in a signed written instrument filed with the Court in order to avoid ambushes.**

(Jenkins Decl., Ex. D (10/7/11 letter from M. Jacobs to V. Maroulis) (emph. added).)   To date, Samsung has not taken such a position in any motion practice.

**9.**      **October-November 2011:   The Parties Focus on Inventor Depositions and Document Productions**

In November and December 2011, Apple deposed dozens of the inventors of the Samsung patents in suit.   Thus, during this time, Samsung and its counsel and employees were extensively focused on the collection, review, processing and production of documents and things sourced to those inventors.   Among other things, Samsung worked with its outside counsel on  crafting search terms, identifying the location of responsive documents, conducting inventor interviews (both by phone and in person), and quality-checking the inventors' collection efforts in face-to-face meetings.   (*See* Dkt. No. 643-5 at ¶ 6.)

**10.      Apple's December Motion to Compel and the Court's December 22, 2011 Order**

Six days after the Court's denial of its preliminary injunction ruling, and just as the parties began to shift their focus toward the general phase of discovery, Apple filed another motion to compel.    (Dkt. No. 467-1.)    At the time of Apple's filing on December 8, the parties had been in the midst of negotiating various discovery agreements, including:

(1) an agreement to reciprocally produce certain categories of documents such as consumer survey, design history, and documents reflecting copying (*see* Jenkins Decl., Ex. E (December 5, 2011 letter from M. Mazza to R. Kassabian observing that "the parties should enter into any reciprocal agreements as soon as possible so that the agreements can serve their purpose of guiding the parties' subsequent collection and production efforts.")); and

(2) an agreement whereby each party would search their files for the other party's company names – "Apple" and "Samsung."    (Jenkins Decl., Ex. F (November 15, 2011 letter from W. Overson to R. Kassabian, noting Samsung's agreement to search for the term "Apple" in the relevant custodians' files, and promising that "Apple will reciprocally search its relevant custodians' documents for the term "Samsung" and review those documents for responsiveness and production."), Ex. E (December 5, 2011 letter from M. Mazza to R. Kassabian, confirming that "Samsung will search for documents that mention the term "Apple," or any Apple product at issue in this case, or any alias therefore, or any Korean equivalent thereof….    Apple agrees to search for "Samsung," or any Samsung product at issue in this case, or any alias therefore….").)[7]  At this same time the parties were also discussing the fact that Apple wished Samsung to "continue to search its relevant custodians' documents for other pertinent search terms, such as the names of Apple's products at issue."    (*Id.,* Jenkins Ex. F (November 15, 2011 letter from W. Overson to R. Kassabian).)

Despite these negotiations and agreements, Apple's December motion to compel demanded:

---

[7] Dkt. No. 537 at 3 (emphasis added). Apple later reneged on this agreement, and Samsung had to seek court relief to enforce it.    (Dkt. No. 603.)   On January 27, the Court ordered Apple to produce documents responsive to a "Samsung" search in the relevant custodians' files.   (Dkt. No. 673 at 18.)

1.     Sketchbooks, physical models and CAD files for all Galaxy phone and tablet products, regardless of where sold, whether for a final design or an alternative design that was not used;

2.     All documents that mention the term "Apple," Apple product, any alias therefor, any Korean equivalent thereof, in relevant central files or the files of all relevant custodians, including designers and engineers who worked on the Samsung products at issue or other Galaxy phone or tablet products, employees responsible for marketing those products, and employees responsible for developing the infringing features.

3.     All survey documents that refer to Apple, Apple's products, or any alias therefore, from any relevant central file or from the files of any custodian with survey responsibility, anywhere in the world.

4.     Source code and configuration files for the products at issue relating to the accused functionalities, as well as touchscreen-related source code and documents.

(Dkt. No. 467-1).

**11.     The Court's December 22 Discovery Order.**

In its written order, the Court required Samsung to produce the following:

1.     [Certain] source code and technical documents showing the operation of the allegedly infringing product features... [by] December 31, 2011;

2.     Design history documents showing the decision-making process that led to the design of Samsung's accused products, including CAD files, inventor and designer sketchbooks, models and mockups, and email correspondence amongst Samsung employees… [by] December 31, 2011;

3.     Emails and documents showing Samsung's analysis of and consideration of *Apple's products*. With respect to any materials subject to the court's September 28, 2011 order that have not been produced, Samsung shall complete its production immediately and, in any event, no later than December 31, 2011.   Any further failure to comply with the September 28 Order will subject Samsung to sanctions. All other responsive documents, specifically relating to the additional products and patent claims that were not at issue during the preliminary injunction phase, shall be produced on a rolling basis and no later than January 15, 2012.

4.     Survey and marketing documents. Samsung shall complete its production of these materials no later than January 15, 2012. As above, with respect to any materials that were subject to the September 28 Order and not yet produced, Samsung shall complete its production immediately and, in any event, no later than December 31, 2011. Once again, any further failure to comply with the September 28 Order will subject Samsung to sanctions.

(Dkt. No. 537.)   Notably, the Court declined Apple's request to order Samsung to search its designers' files for the term "Apple."

**12.     Samsung's Substantial Compliance with the Court's December 22 Court Order**

Leading up to the Court's Order, Samsung was already gathering documents responsive to Apple's demands.   (Kang Decl., ¶ 9.)   Indeed, the day Apple served its December 8 motion to compel, Samsung already had a team of outside counsel on the ground in Korea conducting custodial interviews and gathering documents.   (*Id.*)   After the Court's Order, Samsung redoubled its efforts.   (*Id.*)   As Samsung informed the Court previously regarding its compliance efforts, given the massive volume of data that had to be collected pursuant to the Order, and the physical limitations on how much Samsung's current e-discovery vendor could process in such a short period of time (nine days over the winter holiday period), Samsung engaged an additional discovery vendor to assist in collecting and processing the requested documents.   (*Id.*)   Samsung also arranged for the imaging of all relevant custodians' hard drives, to facilitate the collection given the massive scale of documents and witnesses involved.   (*Id.*) Samsung further directed its outside counsel to hire additional attorneys to assist in the expedited review process, given the amount of data involved and the limited availability of certain personnel over this nine-day holiday period.   (*Id.*)   Both Samsung and its outside counsel worked straight through the holidays, including on Christmas Eve and Christmas Day, to meet the Court's deadlines.   (*Id.*)   As the result of such efforts, between the issuance of the Court's December 22 Order and the ordered deadline of January 15, 2012, Samsung reviewed millions of documents and produced over 390,000 pages of documents, over 50 million pages of source code, over 100 mockups, and over 1,300 CAD files.   (Jenkins Decl., ¶ 20.)

**13.      Apple's Dilatory and Incomplete Preliminary Injunction-Related Production**

After the preliminary injunction hearing, Samsung discovered that Apple had failed to produce material evidence that was responsive to Samsung's discovery requests during the preliminary injunction phase.   For example:

- **Designer Emails**.   Samsung had requested emails from the design inventors on the asserted patents, since Apple's preliminary injunction motion was premised on three design patents.   *See, e.g.*, Jenkins Decl., Ex. G (Samsung's Requests for Production Nos. 89-91.)   Ultimately, Apple admitted that it never even searched its design inventors' emails in response to Samsung's document requests.   In addition, over a month after the injunction hearing, Apple produced an internal email circulated

among senior executives that was probative of Samsung's contention that the D'677 design patent was just as invalid as the almost identical D'087 patent.[8]

- **035 Mockup**.   Samsung learned after the injunction briefing had closed, that Apple had provided to the Patent Office photos of a physical model of the design reflected in one of the patents Apple had asserted in the preliminary injunction motion -- the D'889 patent, on which Apple sought to enjoin sales of Samsung's Galaxy Tab 10.1.   Without the evidence of this physical model, the Court concluded that Apple likely would be able to establish infringement, based on similarities between the D'889 drawings and Samsung's tablet, although Samsung had raised substantial questions regarding validity based on prior art.  (Dkt. No. 449 at 40-46.)   This important mockup was responsive to several of Samsung's preliminary injunction requests.   *See, e.g.*, Jenkins Decl., Ex. G (Samsung's Requests for Production Nos. 1, 6, 8.)

- **Early iPhone Models.**   Apple refused to produce earlier iPhone models, which impeded Samsung's ability during the preliminary injunction briefing to show that the features depicted in its D'087 and D'677 designs are functional.   Apple also failed to produce testing results showing how its products function after they are dropped, which are probative of whether certain features of Apple's design are purely functional, and thus, are not protected.   These materials are responsive to several of Samsung's preliminary injunction requests.   *See, e.g.*, Jenkins Decl., Ex. G (Samsung's Requests for Production Nos. 1, 5, 6 & 8.)

- **iPad 2 Patent Applications.**   Apple still has not produced the patent applications for the iPad 2.   The Court relied on a comparison of Samsung's Galaxy Tab 10.1 and the iPad 2 to support its infringement analysis.   (Dkt. No. 449 at 47.)   However, if Apple has certified in its patent application that the iPad 2 design is novel, then the iPad 2 could not be a commercial embodiment of the 2005 D'889 patent, and Apple would have been unable to use the iPad 2 to support its preliminary injunction motion.   These materials are responsive to several of Samsung's preliminary injunction requests.   *See, e.g.*, Jenkins Decl., Ex. G (Samsung's Requests for Production Nos. 1, 6, 8 & 11.)

## ARGUMENT

Apple has failed to demonstrate that sanctions should issue.   Federal Rule of Civil Procedure 37(b)(2)(C) provides that if a discovery order is violated, "the court must order the disobedient party, the attorney advising the party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or

---

[8]   (Dkt. No. 449 at 23-24).   The feature of the D'677 patent the Court cited in rejecting Samsung's invalidity arguments was its use of a flat black translucent screen.  The internal email from February 22, 2006--two months before the claimed priority date for the D'677 patent--discussed Sony's design philosophy as incorporating a "color theme . . . of black and silver, [without] excessive ornamentation."  (Jenkins Decl. Ex. H.)  Within weeks, Apple's internal computer aided design files show phone concepts with the word "Sony" on them that have a black and silver color scheme, and an iPhone 1 design with a black screen, silver and black body, and minimal ornamentation, just like the original Sony design concepts.  The email Apple failed to produce thus demonstrated that the black screen – the only feature that distinguished the D'677 design from the D'087 design – was anticipated by, and obvious in, light of Sony's own designs, and that Apple used this design as a model just weeks before its claimed D'677 priority date.

1   other circumstances make an award of expenses unjust."   Rule 37 therefore precludes an award

2   of attorney's fees where no court order was violated or, in the event there was some violation: (1)

3   where any failure to comply was substantially justified; (2) where other circumstances make the

4   award unjust and/or (3) where the moving party's attorney's fees were not "caused by the failure"

5   to obey the court order.

6       Here, Samsung did indeed comply with the Court's Orders by taking immediate action and

7   producing thousands of responsive documents prior to the ordered deadlines.   But in any event,

8   any isolated and inadvertent delays in production were substantially justified in light of the

9   expedited time-frame, the breadth of Apple's demands, and complications with overseas

10  discovery.   Additionally, a sanctions award would be manifestly unjust because Samsung's

11  herculean discovery efforts were completed in good faith, Apple suffered no prejudice by any

12  alleged delay, and Apple cannot be heard to complain given its own delays in productions.

13  Finally, Apple has failed to demonstrate that it incurred any fees caused by any discovery conduct

14  of Samsung.   Apple's motion should be denied.

15  **I.     SAMSUNG SUBSTANTIALLY COMPLIED WITH BOTH COURT ORDERS.**

16      Apple argues that Samsung violated the Court's Orders because it failed to produce: (1)

17  documents from certain of its designers referencing Apple and the Apple products at issue, and (2)

18  survey documents from certain survey custodians that reference the Apple products at issue.

19  Apple is incorrect on both counts.

20      **A.     Samsung Complied With The Orders to Produce Documents From Its Designers**

21          **Referencing Apple Products.**

22      Samsung conducted a proper search for documents referencing the Apple products from the

23  files of the relevant Samsung designers.   After the Court's September 28, 2011 Discovery Order

24  issued, Samsung's outside counsel immediately flew to Korea.   (Kang Decl., ¶ 5.)   A team of

25  attorneys, including Samsung's in house and outside counsel, conducted several days of document

26  collection interviews with dozens of Samsung employees.   *Id.*   Samsung's counsel ran searches

27  on custodians' computers using the relevant search terms, including "iPhone" and "iPad."   (*Id.* at

28  ¶ 6.)   This process consumed many hours due to the high volume of irrelevant and false hits.

1   (*Id*.)  Samsung then decrypted, processed and uploaded those documents for Samsung's counsel's

2   review in the United States – a process that consumed a significant amount of additional time due

3   to the security measures that needed to be addressed relating to the documents, the volume of the

4   documents, as well as the geographic distance.  (*Id*.)  Attorneys in the United States then

5   reviewed these documents and produced all responsive, non-privileged documents that were

6   collected.  (Jenkins Decl., ¶ 9.)

7       Samsung's efforts were more than sufficient under the circumstances.  Nevertheless, Apple

8   points to some documents Samsung produced in December 2011 January 2012 containing the

9   terms "iPhone" and "iPad" from certain design custodians and claims that this must mean that

10  Samsung intentionally concealed documents or that Samsung didn't bother to search for

11  documents in response to the September 28 Order.   Neither accusation is true.  The October 2011

12  and December/January searches were run using different hardware, software and vendors.  (*See*

13  Kang Dec. ¶¶ 7, 9.)  Samsung cannot be sure what precise technical glitch caused the discrepancy

14  in search results, but it was completely inadvertent and impacted only a small fraction of the total

15  production.  (*Id*. ¶7.)   Given the circumstances, Samsung substantially complied with the

16  Court's Orders regarding such designer documents.

17      Apple next argues that Samsung also failed to search for documents containing references to

18  "Apple."  (Pl. Mot. at 11).   In fact, neither of the Court's Orders required Samsung to search for

19  and produce such documents.  (*See* Dkt. No. 267; Dkt. No. 537.).   Rather, discovery was limited

20  to documents referring to the "Apple's products" that were at issue in Apple's preliminary

21  injunction motion.  (*Id*.)  While Samsung is searching for and producing documents referencing

22  the term "Apple" by agreement, those documents were not compelled to be produced by either the

23  October 7, December 31 or January 15 deadlines.   Thus, Apple's evidence improperly conflates

24  documents the Court *required* Samsung to produce with those Samsung has *voluntarily* produced.[9]

25  **B.    Samsung Complied With The Orders to Produce Documents From Its Survey**

26          **Employees Referencing Apple Products.**

27  _____

28      [9]   Declaration of Minn Chung in Support of Apple Inc.'s Motion for Rule 37(b)(2) Sanctions
    for Samsung's Violation of Two Discovery Orders ("Chung Decl.") (Dkt. No. 715-02), ¶¶ 6, 8, 9,
    10, 12, 36.

1    Likewise, and contrary to Apple's claims, Samsung conducted a fulsome search for

2    documents from the relevant employees charged with conducting surveys for files referencing the

3    Apple products at issue.  In house and outside counsel interviewed custodians, ran search terms

4    on hard drives, de-crypted and uploaded hits and then reviewed and produced documents all

5    within the seven days provided by the Court for compliance with the Order.  (*See* Kang Decl., ¶¶

6    5-7.)    Samsung's search was more than sufficient in the circumstances.   Nevertheless, Apple

7    claims Samsung violated the September 28 Order by (1) failing to produce even a single page of

8    survey documents by the October 7 deadline, and (2) producing 400 survey documents mentioning

9    "Apple or its products" in December 2011.   Apple has it wrong on both counts.

10    First, Samsung produced more than 2,500 pages of survey documents by October 7, 2011 in

11    compliance with the Court Order.  (Jenkins Decl., ¶ 11).  These documents came from the files

12    of Tim Benner, Sang Hung, and Samsung's central marketing files.  (*Id.*)    Second, as discussed

13    above, Samsung was never ordered to produce survey documents referencing "Apple."

14    In November 2011 on a meet and confer call with Apple, Samsung's outside counsel

15    became aware that files from two survey custodians had not been produced in October as they had

16    originally thought.  (Jenkins Decl., ¶ 13).  After investigating, it became clear that documents

17    that had been collected in early October 2011 had inadvertently been missed in the production due

18    to transmission issues – specifically, some email bouncebacks.  Upon this discovery, Samsung

19    immediately corrected the oversight, and produced the survey documents in question on December

20    9, 2011. [10] (*Id.*)  Thus, despite any inadvertent glitches, Samsung substantially complied with the

21    Court's Orders.

22    Moreover, Samsung complied with the Court's December 22 Order, which required

23    production of any materials subject to the September 28th Order by December 31, 2011.   As even

24    Apple concedes, Samsung produced all but one survey document for all survey custodians before

25    the court-ordered deadline.  The one survey document produced on January 5, 2012, was in fact a

---

[10]    Samsung likewise experienced technical difficulties with respect to the initial collection of documents from custodian Jaegwan Shin.  After producing documents in October 2011, an additional 24 documents were produced from Mr. Shin in December 2011 that had not been caught by the original search of his hard drive that contained the term iPhone or iPad.  However, of those 24, 18 were iterations of the same email string. (Jenkins Decl. ¶ 13.)

1   stimulus and background document (blank survey) requested by Apple following Samsung's
2   October 2011 production of survey results sourced to Mr. Benner.  (Jenkins Decl., ¶ 14.) Once
3   Apple requested the supplemental document, Mr. Benner contacted the vendor that conducted the
4   survey, and Mr. Benner sent the background document to Samsung.  (*Id.*)   Thus, this document
5   did not actually come from Mr. Benner's files.

6   **II.    ANY ISOLATED AND INADVERTENT DELAYS IN PRODUCTION WERE**
7   **SUBSTANTIALLY JUSTIFIED.**

8        Even if the Court concludes that Samsung failed to comply in full with the Court's Orders,
9   that failure is substantially justified and cannot support a sanctions award.  Samsung faced
10   monumental obstacles in its discovery efforts, including a drastically compressed time-frame
11   caused by Apple's desire for a quick trial, sweepingly broad discovery demands from Apple that
12   were served at the very last minute, foreign language translation issues, complicated decryption
13   and technical issues, and logistical issues in connection with moving vast amounts of data halfway
14   across the world.  Despite those obstacles, Samsung made reasonable and diligent efforts to
15   produce responsive documents.

16        To be sure, the mere fact that Samsung located additional responsive documents during the
17   broader, post-injunction discovery phase does not establish an unjustified failure to comply with
18   the Court's Orders.  Samsung did not intentionally fail to produce or conceal any documents or
19   ignore the Court's Orders. Although Apple seeks to assign nefarious motives to these isolated
20   production delays, the fact remains that Samsung worked tirelessly to produce expedited
21   discovery.  These delays were substantially justified and the circumstances here militate against
22   the imposition of sanctions.  *See In re Asbestos Products Liability Litig.*, 2010 WL 2034636, *6
23   (declining to impose monetary sanctions where failure to produce documents was "de minimis
24   considering the nature of the material sought and … the wide-ranging scope of [the] Order");
25   *Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670. 695 (W.D. Mich. 2003) (declining
26   to impose sanctions for late production of documents where delay was not the result of bad faith,
27   but good-faith oversight during a search for outdated documents).

28

### III.   IN THESE CIRCUMSTANCES, A SANCTIONS AWARD WOULD BE MANIFESTLY UNJUST.

Rule 37(b)(2)(C) precludes an award of expenses where circumstances make such an award unjust.   Sanctions would be manifestly unjust here for two reasons.

First, as demonstrated above, Samsung's discovery efforts were carried out with the utmost speed, diligence and good faith.   (*See* Kang Decl., ¶¶ 5-9; Jenkins Decl., ¶¶ 9-14, 18-20 (detailing Samsung's herculean efforts to comply with the Court's discovery orders in difficult circumstances).   Punishing Samsung for a few unintended technical glitches amongst the many hundreds of thousands of documents Samsung timely produced would be pointless and unjust. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) (good or bad faith is a consideration in determining whether imposition of sanctions would be unjust.)   This is particularly true where Apple too has suffered its own technical glitches that resulted in violations of this Court's orders.   For example, notwithstanding the Court's December 22, 2011, Order to produce documents three days before deposition, Apple dropped approximately 17,000 pages of documents on Samsung the night before the scheduled deposition of Richard Dinh, blaming "a technical issue."   (Jenkins Decl., Ex. O (February 15, 2012 letter from M. Mazza to S. Jenkins).) Similarly, Apple recently admitted that it missed the Court's February 3, 2012 deadline to produce copies of certain documents responsive to the Court's January 27, 2012 Order due to technical issues as well.   (Jenkins Decl., Ex. O.)   Punishing Samsung but not Apple for such technical glitches would be unjust.

Second, Apple has failed to demonstrate that it was prejudiced by Samsung's document production efforts.   Apple's claim of prejudice rests entirely on the notion that, had Samsung produced certain documents some weeks earlier than it did, Judge Koh would have granted Apple's preliminary injunction motion.   (Pl. Motion at 14-20.)   Apple's argument is a non-starter for at least three reasons.

As a preliminary matter, the entire premise of Apple's motion is suggestive of an improper collateral attack on Judge Koh's preliminary injunction order.   By claiming that Samsung's document production was "outcome determinative," it asks this Court to speculate as to how a

different judge *might* have exercised her discretion had certain documents been presented – a tenuous exercise that necessarily would require the Court to undertake its own merits analysis to determine whether the disputed documents—a small subset of the thousands produced—likely would have altered the injunction outcome.   This assessment, in turn, would require Samsung to present rebuttal evidence that Apple itself failed to produce documents during the preliminary injunction phase.   Apple cites no precedent for its "alternate universe" motion, nor could Samsung locate any.

Moreover, the documents in question have nothing to do with the grounds on which Apple lost its motion.   Specifically, the four categories of documents it points to are:

(1) "evidence" that design of smartphones is generally important and that consumers preferred Apple products;

(2) "evidence" that Samsung analyzed competitors' products, including Apple's;

(3) "evidence" that Samsung analyzed certain aspects of Apple's user interface, and

(4) "evidence" that some of Samsung's customers may switch to Apple.

None of this purported "evidence" could possibly establish prejudice, because Apple lost its preliminary injunction motion on two grounds:   (1) failure to submit its own evidence of irreparable harm to its business, and (2) the invalidity of two of its asserted patents (among other things).   No amount of evidence on the alleged infringement prong of the preliminary injunction test – which is the only issue the above-referenced evidence could be relevant to – could have saved Apple's motion.[11]

And finally, Apple was not deprived of making whatever arguments it wanted to during the preliminary injunction briefing, because the documents in question are cumulative of those Judge Koh considered.   For example, with respect to the '381 patent, Apple trumpets a spreadsheet entitled "Analysis of Galaxy tab Operation Speed and Screen Effects."   (Pl. Motion at 19 (citing

---

[11]  Apple cites *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (Fed. Cir. 2004), for the proposition that the "failure to produce documents as ordered . . . is considered sufficient prejudice."   In *Computer Task Group*, the plaintiff intentionally "refused to produce key documents."   *Id.* at 1114.   Apple has made no such showing here.   Further, *Computer Task Group* concerned the stringent standard applicable to default judgments,  (*see id.* at 1115), which requires a showing "that the delay "impaired [its] ability to go to trial or threatened to interfere with the rightful decision of the case."   *United States for Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988).

Chung Decl., Ex. L).)   The spreadsheet compares the Galaxy Tab with the Apple iPad and finds that the Tab's browser lacks "emotional impact" because it lacks a bounce effect.   (Chung Decl., Ex. L at SAMNDCA00201775.)   Yet, Apple submitted virtually the exact same evidence to Judge Koh in the form of Samsung's "P5 Usability Evaluation Results," which noted that the Samsung browser lacked "the Fun, Wow Effect" due to the absence of a "bounce effect."   (Dkt No. 299b, Ex. A at SAMNDCA005326011.)   Apple fails to identify any substantive difference between the documents it cites and those Judge Koh considered.   Likewise, the competitor analysis documents are also duplicative (*See* Pl. Motion at 17-18 (citing Chung Decl., Exs. E, F, H. I)), because in its preliminary injunction papers Apple submitted numerous documents regarding Samsung's competitive analysis of Apple products.   (*See* Dkt No. 299b, Exs. A, E.)   For example, Apple submitted a market analysis that compared the Apple iPhone 4 with the Samsung Vibrant, as well as HTC and Motorola smartphones.   (*See, e.g.*, Declaration of Francis Ho in Support of Apple's Reply in Support of Its Motion for a Preliminary Injunction (Dkt. No. 430), Ex. A.)[12]

## IV. APPLE CANNOT DEMONSTRATE THAT ITS EXPENSES WERE CAUSED BY ANY ALLEGED VIOLATION OF ANY DISCOVERY ORDER

Apple's Motion fails for another reason: it cannot show that its claimed expenses were "caused by" Samsung's alleged violation of the Court's Orders, as required by Rule 37(b)(2)(C). Not only does Apple fail to even attempt to meet this standard, but it brazenly seeks reimbursement for virtually every dime it has spent since preparing its preliminary injunction motion—including expenses that may have been incurred *before this lawsuit was ever filed.* Apple's overreaching should not be rewarded.[13]

---

[12]   Apple's entire premise that competitive analysis equates to evidence of copying is incorrect.   "[P]roduct designers frequently study competing products in the course of new product design. . ."   *Eldon Indus., Inc. v. Rubbermaid, Inc.*, 735 F. Supp. 786, 820 n.18 (N.D. Ill. 1990).   Indeed, Apple's own designers have admitted that Apple performs competitor mobile device teardowns too, because there is "nothing wrong" with competitive analysis and "it pays to know the competition."   (Jenkins Decl., Ex. I (Stringer Dep. Tr. at 32:12-15, 33:22-25; *see also id.* at 33:1-5).)   Apple has produced numerous documents revealing its own comparative analysis of competing smartphones.   (Jenkins Decl., Exs. J-N.)

[13]   *See, e.g., Buchanan v. Santos*, 2011 WL 2112475, *6 (E.D. Cal. 2011) (denying fees where Plaintiff failed to offer evidence he incurred the requested costs); *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981)   (overturning fees and costs unrelated to the violation of a court order);

1    Apple's Motion, moreover, is also deficient because it is devoid of any attorney declaration

2    or other sworn evidence that would set forth the connection between Samsung's document

3    production and each of the categories of "Relief Requested" in Apple's Motion. *See Rice v. Icicle*

4    *Seafoods, Inc*., 2008 WL 5246396, *2 (W.D. Wash. 2008) ("The Court will not award fees and

5    costs based on an approximation.").   Apple's most outrageous requests include its demand for

6    fees and expenses incurred in connection with its preliminary injunction motion, filed almost three

7    months *before* the Court's first Discovery Order.   (Pl. Motion at iv.)   Apple clearly incurred fees

8    before its filing date (but fails to properly itemize them).   There is thus no basis to hold Samsung

9    responsible for paying Apple's costs of seeking an injunction, since such expenses – many

10   incurred prior to any discovery disputes – were not "caused by" Samsung's alleged discovery

11   errors which arose after those discovery disputes.

12   Apple further seeks expenses relating to "Apple's analysis of Samsung's compliance."

13   (Pl. Motion at iv, v.)   However, Apple's Motion reveals that such requests relate to its counsel's

14   review of Samsung's production – which it would have to do anyway, to prepare for depositions,

15   dispositive motions and trial.   Moreover, Apple's document review apparently extends far

16   beyond the Court's injunction-related Orders to numerous other aspects of the case, including

17   depositions, patent disclosures, and claim construction briefing, thereby exceeding the scope of

18   Rule 37(b)(2)(C)). *See, e.g. Wilson v. Seattle Housing Authority*, 2011 WL 338793, at *3 (W.D.

19   Wash. February 3, 2011) (denying plaintiff's request for attorneys' fees for "time reviewing"

20   documents, since "[p]laintiffs' document review was not *caused by* [defendant's] failure," and

21   limiting sanctions to fees incurred in connection with plaintiff's  motion for sanctions) (emphasis

22   in original)).

23   Fees and expenses related to Apple's Motion to Compel Timely Production of Foreign-

24   Language and Other Documents in Advance of Related Depositions ("Motion to Compel") are

25   similarly not compensable given the absence of any nexus between it and Apple's sanctions

26   motion.  (Pl. Motion at v.)  Likewise, Apple cannot justify fees related to Apple's appeal of

---

27   Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, 8B Fed. Prac. & Proc.
     Civ. § 2289   (3d. ed. 2011) ("The expenses that may be recovered under [Rule 37(b)] are those
28   `caused by the failure' to obey an order and therefore do not include the expense of obtaining the
     order itself.") (quoting Fed. R. Civ. P. 37(b)(2)).

Judge Koh's injunction ruling.   (Pl. Motion at iv.)   Apple's request erroneously asks this Court to draw the unsubstantiated inference that (a) Apple would not have appealed the ruling *but for* Samsung's discovery violations and (b) *all* of the issues on appeal are traceable to Samsung's alleged violation.   Such conjecture fails to satisfy the causation standard contained in Rule 37(b)(2)(C).

## **CONCLUSION**

For the reasons stated, Apple's Motion for Sanctions should be denied.

DATED: February 25, 2012              Respectfully submitted,

                                      QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                      By:      */s/ Victoria Maroulis*
                                               Charles K. Verhoeven
                                               Kevin P.B. Johnson
                                               Victoria F. Maroulis
                                               Michael T. Zeller

                                      Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
                                      SAMSUNG ELECTRONICS AMERICA, INC. and
                                      SAMSUNG TELECOMMUNICATIONS AMERICA,
                                      LLC