QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**DECLARATION OF SARA JENKINS IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS**<br><br>Date: March 6, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal<br><br>**FILED UNDER SEAL** |

02198.51855/4617652.3

Case No. 11-cv-01846-LHK
JENKINS DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS

I, Sara Jenkins, declare:

1. I am an associate in the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC (collectively, "Samsung"). I am licensed to practice law in the State of California. I submit this declaration in support of Samsung's Opposition to Apple's Motion to For Rule 37(B)(2) Sanctions for Samsung's Violation of Two Discovery Orders. I have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, I could and would testify to the following facts.

**The Court Sets Strict Limits For "Narrowly Tailored" Preliminary Injunction Discovery.**

2. Early in the case, Apple urged the Court to adopt an expedited and limited discovery schedule for its "focused," motion "limited to three design patents and one utility patent." (Dkt. No. 100 at 1, 2.) Based on these representations, the Court limited the injunction-related discovery phase, instructing the parties to "keep discovery requests reasonable in scope and narrowly tailored to address the preliminary injunction motion." (Dkt. No. 115. at 2 .)

3. Over the next several months, Apple repeatedly stated that the scope of discovery for the preliminary injunction was "narrowly tailored," in justifying its limited production of documents in response to Samsung's discovery requests. Attached as **Exhibit A** is a true and correct copy of an August 5, 2011 letter from Jason Bartlett to Victoria Maroulis. In this letter, Apple refused to provide complete discovery responses regarding Apple's infringement positions relating to the four Apple patents at issue in the preliminary injunction motion stating that "Samsung's 'discovery requests [should be] reasonable in scope and narrowly tailored to address the preliminary injunction motion."

4. Similarly, in its preliminary injunction-related discovery responses, Apple made clear that it was only "conducting a reasonable investigation appropriate for the limited preliminary injunction discovery." Attached hereto as **Exhibit B** is a true and correct copy of Apple's Supplemental Responses to Interrogatories 1,3, and/or 6 dated 9/30/11.

**Apple Propounds Belated and Sweepingly Broad Preliminary Injunction Discovery Demands**

5. In contrast to the two-month time-frame Samsung gave Apple to respond to Samsung's preliminary injunction-related document requests (serving them on July 6, 2011), Apple waited until August 26, 2011 – the very last day for propounding such discovery and over two months after it filed its preliminary injunction motion – before serving the vast majority of its preliminary injunction discovery requests.

6. Apple effectively sought a full-fledged production of general discovery in just seventeen days. Below are just some of Apple's preliminary injunction requests that capture the breadth of subject matter that Apple pursued:

    a. **REQUEST NO. 158:** All Documents relating to the design, development, or implementation of the following features of the Products at Issue: (1) their Hardware Design; (2) the functionality that allows for a list to be scrolled beyond its terminus or a document to be translated beyond its edge until the list or document is partially displayed; and (3) functionality that allows for a list that is scrolled beyond its terminus to scroll back or bounce back into place or for a document that is translated beyond its edge to translate back or bounce back so that the list or document returns to fill the screen.

    b. **REQUEST NO. 161:** All Documents and things relating to the design of the Hardware Design of the Products at Issue, including for example, CAD images or files, emails, notebooks, photographs, sketches, design specifications, models, mock-ups, and other design documents.

    c. **REQUEST NO. 163:** All Documents relating to functional and cost considerations that constrained or altered the Hardware Design of the Products at Issue.

    d. **REQUEST NO. 164:** All Documents relating to aesthetic considerations relating to the Hardware Design of the Products at Issue.

    e. **REQUEST NO. 167:** All Documents to the design of the user interface for each of the Products at Issue.

  f. **REQUEST NO. 204:** All Documents relating to your analysis, review, consideration, or copying of, or comparison against, any Apple product or product feature, including (1) their Hardware Design; (2) the functionality that allows for a list to be scrolled beyond its terminus or a document to be translated beyond its edge until the list or document is partially displayed; and (3) functionality that allows for a list that is scrolled beyond its terminus to scroll back or bounce back into place or for a document that is translated beyond its edge to translate back or bounce back so that the list or document returns to fill the screen.

  g. **REQUEST NO. 206:** All Documents relating to any customer surveys, studies, analyses or investigations regarding the Products at Issue.

  h. **REQUEST NO. 207:** All Documents identifying or analyzing the market or markets to which Samsung intends to sell the Products at Issue.

  i. **REQUEST NO. 208:** All Documents created within the last five years relating to Samsung's actual or projected smartphone market share.

  j. **REQUEST NO. 209:** All Documents created within the last five years relating to Samsung's actual or projected tablet computer market share.

  k. **REQUEST NO. 214:** All Documents relating to marketing of any Products at Issue that discuss or refer directly or indirectly to Apple or Apple products, including copies of all advertisements or other promotional materials, marketing plans, market surveys, focus group studies, or other documents related to testing of advertisements or advertisement messaging. Documents responsive to this Request include, but are not limited to, your "Hello" marketing campaign relating to the Galaxy S, your "See Flash Run" marketing campaign for the Galaxy Tab, and your "Appelmos" ("Applesauce") marketing campaign relating to the Galaxy S II.

  l. **REQUEST NO. 215**: All Documents relating to any instances of consumer confusion in which Samsung was made aware that a person confused an Apple product for a Product at Issue, or a Product at Issue for an Apple product.

7. Apple's belated service of its requests proved extremely burdensome to Samsung, given the large number of document custodians and the difficulties of collecting documents overseas.

8. On September 1, 2011, four business days after receiving Apple's August 26 document requests, Samsung began producing documents to Apple. Samsung ultimately produced preliminary injunction-related documents both before and after the rolling deadline (as Apple did with its preliminary injunction production), providing them to Apple as expeditiously as possible given the circumstances. Samsung had produced more than 32,000 pages of documents by September 20, 2011.

**Samsung's Substantial Compliance with the September 28 Order**

9. After the issuance of the September 28 Order, Samsung took immediate steps to comply with the Order. Samsung's outside counsel immediately flew to Korea, and a team of attorneys, including Samsung's in house and outside counsel, conducted several days of document collection interviews with dozens of Samsung employees. Documents that were collected in Korea were reviewed by outside counsel in the United States and responsive, non-privileged documents were produced.

10. As the result of this search, within the mere days that Samsung had to comply with the Court's Order, Samsung produced over 10,000 pages of documents from the custodial files of the relevant Samsung designers of the disputed products, as well as from its central files and the custodial files of the relevant individuals with specific responsibility for surveying customers.

11. On October 7, 2011, Samsung produced more than a 1,500 pages of survey-related documents from Mr. Tim Benner. Additionally, Samsung produced more than another 300 pages of survey-related documents from Mr. Sang Hung, another custodian that Samsung had identified had worked with surveys. Samsung also produced almost one thousand pages of survey-related documents from central servers in response to the Court order on October 7, 2011.

12. Attached hereto as **Exhibit C** is a true and correct copy of Samsung's First Amended and Supplemental Identification of Custodians, Litigation Hold Notices and Search

Terms, dated October 10, 2011, that show the specific search terms that were run on the computers for each of the custodians who were at issue for the Courts' September 28 Order.

13.  In November, 2011, through meet and confer discussions with Apple, Samsung's outside counsel became aware that the files from two relevant survey custodians, Jinna Yoon and Sungwook Kwon, had not been produced in October as they had originally thought. After investigating, it became clear that the survey documents, which had been collected by Samsung in early October in response to the Court Order, inadvertently had not been produced due to transmission problems – specifically, some email bouncebacks. Samsung immediately corrected the oversight and produced the survey documents in question on December 9, 2011. Samsung likewise experienced technical difficulties with respect to the initial collection of documents from custodian Jaegwan Shin. After producing documents in October 2011, an additional 24 documents were produced from Mr. Shin in December 2011 that had not been caught by the original search of his hard drive that contained the term iPhone or iPad. However, of those 24, 18 were iterations of the same email string.

14.  The one survey document that Apple cites in its motion as being produced on January 5, 2012 was a background document requested by Apple following Samsung's October 2011 production of survey results by Tim Benner. Once Apple requested the document, Mr. Benner contacted the vendor that conducted the survey to obtain the document, and then caused it to be sent to Samsung's outside counsel.

**Apple Warns Samsung to Expect to See Documents Responsive to Samsung's Preliminary Injunction Requests During the General Discovery Phase**

15.  Attached hereto as **Exhibit D** is a true and correct copy of a letter from Michael Jacobs to Victoria Maroulis dated October 7, 2011 in which Mr. Jacobs warns Samsung that "[s]ome of the documents located as part of" Apple's general discovery process "may also be responsive to Samsung's preliminary injunction discovery requests."

02198.51855/4617652.3

-6-   Case No. 11-cv-01846-LHK
JENKINS DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS

**Apple's December Motion to Compel and the Court's December 22, 2011 Order**

16. At the time of Apple's filing of a motion to compel on December 8, the parties had been in the midst of negotiating various discovery agreements, including an agreement to reciprocally produce certain categories of documents such as consumer survey, design history, and alleged copying documents. Attached hereto as **Exhibit E** is a true and correct copy of a letter from Mia Mazza to Rachel Kassabian observing that "the parties should enter into any reciprocal agreements as soon as possible so that the agreements can serve their purpose of guiding the parties' subsequent collection and production efforts" dated 12/5/11.

17. The parties were also negotiating an agreement whereby each party would search their files for the other party's company names – "Apple" and "Samsung." Attached hereto as **Exhibit F** is a true and correct copy of a letter from Wes Overson to Rachel Kassabian dated 11/15/11 noting Samsung's agreement to search for the term "Apple" in the relevant custodians' files, and promising that "Apple will reciprocally search its relevant custodians' documents for the term "Samsung" and review those documents for responsiveness and production."

**Samsung's Substantial Compliance with the Court's December 22 Order**

18. Leading up to the Court's Order, Samsung was already gathering documents responsive to Apple's demands. The day Apple served its December 8 motion to compel, Samsung already had a team of outside counsel on the ground in Korea conducting custodial interviews and gathering documents. After the Court's Order, Samsung redoubled its efforts.

19. Samsung hired an additional e-discovery vendor, directed outside counsel to hire additional attorneys, and worked straight through the holidays.

20. As the result of these efforts, between the issuance of the Court's December 22 Order and January 15, 2012, Samsung reviewed millions of pages of documents and produced over 390,000 pages of documents, the equivalent over 50 million pages of source code (829 GB), over 100 mockups, and over 1,300 CAD files.

02198.51855/4617652.3

-7-   Case No. 11-cv-01846-LHK
JENKINS DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS

**Apple's Failure to Produce Relevant Documents Prior to the Preliminary Injunction Hearing**

21. As preliminary injunction discovery came to a close, Samsung discovered that Apple had failed to produce material evidence that was responsive to Samsung's discovery requests during the preliminary injunction phase.

22. Samsung had requested emails from Apple's design inventors of Apple's asserted patents during preliminary injunction related discovery. Attached hereto as **Exhibit G** is a true and correct copy of excerpts of Samsung's Requests for Production of Documents and Things Relating to Apple Inc.'s Motion for a Preliminary Injunction, dated July 6, 2011.. Apple ultimately admitted that it had never searched its design inventors' email for responsive documents.

23. Apple failed to produce a highly relevant design e-mail, which discussed Sony's design philosophy as incorporating a "color theme . . . of black and silver, [without] excessive ornamentation." Attached hereto as **Exhibit H** is a true and correct copy of the email from Tony Fadell to Jony Ive, Steve Jobs, Greg Jozwiak and Phil Schiller, re "Fwd: Sony Strives for Original Design (Business Week)," dated February 22, 2006 (Bates range: APLNDC0001207640-APLNDC0001207643). This document is responsive to Samsung's preliminary injunction requests, but Apple did not produce it until after the preliminary injunction hearing.

24. Attached hereto as **Exhibit I** is a true and correct copy of excerpts taken from the deposition of Christopher J. Stringer, dated February 15, 2012.

25. Apple has produced numerous documents describing its own comparative analysis of competing smartphones. These documents include detailed "Take Apart" studies documenting Apple's disassembly of its competitors' products. Attached hereto as **Exhibit J** is a true and correct copy of a document entitled, "HTC Touch HD Take Apart," dated November 12, 2008 (Bates range: APLNDC0001360047-APLNDC0001360058). Attached hereto as **Exhibit K** is a true and correct copy of a document entitled, "RIM – Blackberry Storm Take Apart," dated December 18, 2008 (Bates range: APLNDC0001360060-APLNDC0001360077). Attached

02198.51855/4617652.3

-8- Case No. 11-cv-01846-LHK
JENKINS DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS

1  hereto as **Exhibit L** is a true and correct copy of a document entitled, "Palm Pre Take Apart,"
2  dated June 11, 2009 (Bates range: APLNDC0001360146-APLNDC0001360160).   Attached
3  hereto as **Exhibit M** is a true and correct copy of a document entitled, "Camera Validation –
4  Google Nexus One Camera Tear Down," dated January 13, 2010 (Bates range:
5  APLNDC0001539652-APLNDC0001539662).   Attached hereto as **Exhibit N** is a true and
6  correct copy of an email from Richard Dinh to Ashutosh Shukla, copying Tang Yew Tan, re
7  "Samsung Infuse 4G Teardown – Friday @ 5 in Vise," dated May 24, 2011 (Bates range:
8  APLNDC0001540056-APLNDC0001540083).

9  26.  Apple periodically has experienced technical problems with its document production. For instance, notwithstanding the Court's December 22, 2011, Order to produce documents three (3) days before deposition, Apple dropped approximately 17,000 pages of documents on Samsung the night before the scheduled deposition of Richard Dinh, citing  "a technical issue."   Attached hereto as **Exhibit O** is a true and correct copy of a letter from Mia Mazza to Sara Jenkins, dated February 15, 2012.

15  27.  On January 27, 2012, the Court Ordered that Apple produce several categories of documents, and that "[a]ll production subject to this order must be completed on a rolling basis and no later than February 3, 2012, with priority placed on completing relevant production no later than three-days prior to any deposition."   (Dkt. No. 673 at 2)   Yet, Apple recently admitted that Apple did not comply in several respects with the Court's Order.   First, Apple admitted that "due to processing errors." Apple could not produce Bates numbered survey reports, marketing reports, and media plans for iPhone, iPod touch, and iPad products until February 9, six days after the court-ordered deadline.   Second, Apple admitted that is still searching for and producing documents responsive to Samsung's Request for Production No. 55, now twenty days after the court-ordered deadline.   Third, Apple admitted that it produced its "Financial Documents" on February 5 and February 16, 2012, between two and thirteen days after the court-ordered deadline.

26  I declare under penalty of perjury under the laws of the United States that the foregoing is
27  true and correct.

02198.51855/4617652.3

-9-   Case No. 11-cv-01846-LHK
**JENKINS DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS**

Executed in Redwood Shores, California on February 25, 2012.

By  */s/ Sara Jenkins*
    Sara Jenkins
    .

02198.51855/4617652.3

-10-                                Case No. 11-cv-01846-LHK
**JENKINS DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS**