Confidential Business Information
Pursuant to Protective Order

Page 1

1          UNITED STATES INTERNATIONAL TRADE COMMISSION

2                     WASHINGTON, D.C.

3

4

5    In the Matter of:

6    CERTAIN ELECTRONIC DIGITAL

     MEDIA DEVICES AND COMPONENTS    Inv. No.  337-TA-796

7    THEREOF

     _____/

8

9

10

11          CONFIDENTIAL BUSINESS INFORMATION

12          PURSUANT TO THE PROTECTIVE ORDER

13

14

15    VIDEOTAPED DEPOSITION OF CHRISTOPHER J. STRINGER

16               REDWOOD SHORES, CALIFORNIA

17             WEDNESDAY, FEBRUARY 15, 2012

18

19

20

21

22

23    BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24    CSR LICENSE NO. 9830

25    JOB NO. 46383

Confidential Business Information
Pursuant to Protective Order

Page 2

1          WEDNESDAY, FEBRUARY 15, 2012

2                   9:42  a.m.

3

4

5

6    VIDEOTAPED DEPOSITION OF CHRISTOPHER J.

7    STRINGER, taken at QUINN, EMANUEL, URQUHART &

8    SULLIVAN, 555 Twin Dolphin Drive, Suite 500,

9    Redwood Shores, California, pursuant to

10   Notice, before me, ANDREA M. IGNACIO HOWARD,

11   CLR, CCRR, RPR, CSR License No. 9830.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential Business Information
Pursuant to Protective Order

Page 3

1    A P P E A R A N C E S:

2

3           FOR APPLE INC.:

4           MORRISON & FOERSTER

5           By:  MICHAEL A. JACOBS, Esq.

6                FRANCIS C. HO, Esq.

7           425 Market Street

8           San Francisco, California 94105

9

10

11

12

13          FOR SAMSUNG ELECTRONICS CO. LTD:

14          QUINN EMANUEL URQUHART & SULLIVAN

15          By:  MICHAEL T. ZELLER, Esq.

16               SCOTT HALL, Esq.

17          865 South Figueroa Street

18          Los Angeles, California 90017

19

20

21

22

23          ALSO PRESENT:   Cyndi Wheeler, Apple, Inc.

24                          Sean McGrath, Videographer

25

Confidential Business Information
Pursuant to Protective Order

Page 4

1                    REDWOOD SHORES, CALIFORNIA

2                    WEDNESDAY, FEBRUARY 15, 2012

3                            9:42 A.M.

4

5

6

7                    CHRISTOPHER J. STRINGER,

8                having been sworn as a witness

9            by the Certified Shorthand Reporter,

10                   testified as follows:

11

12                EXAMINATION BY MR. ZELLER

13       MR. ZELLER:  Good morning.

14   A    Good morning.

15   Q    Could you tell us your full name for the

16   record.

17   A    Christopher Stringer -- Christopher Johnson

18   Stringer.

19   Q    And where do you currently reside?

20   A    20100 Skyline Boulevard, Redwood City --

21   Woodside, 94062.

22   Q    And that's in California?

23   A    Yes, it is.

24   Q    And you're currently employed by Apple?

25   A    That's correct.

Confidential Business Information
Pursuant to Protective Order

Page 31

1    was actually on the boxes that these were in.

2        A    That is possible, but I cannot confirm it.   I

3    do not have any idea what you mean by "custodian" in

4    your terms.

5        Q    Well, I'm not using it in a technical legal

6    term.   I apologize.

7             Let me -- let me try it this way.   I

8    understand that Apple has produced some teardowns of

9    competitor mobile devices, including cell phones, and

10   I'll show you some of those here in a moment.

11            My further understanding is that some of

12   those were in boxes that were associated with Richard

13   Howarth or had his name on there.

14            Do you have any understanding or -- or -- or

15   idea why that would be?

16       A    There is every reason that the PD guys would

17   be bringing these teardowns to Richard's attention,

18   but I do not -- I do not have any specific

19   recollections of teardowns in this -- in this period.

20   It, again, is a blur of many, many events, so I cannot

21   dissect it suitably --

22       Q    Okay.

23       A    -- or accurately.

24       Q    Well, then maybe I'll -- let me -- let me

25   step back and make it a little -- make it a little

Confidential Business Information
Pursuant to Protective Order

Page 32

1    easier, then.

2          If I understood you correctly, over the

3    course of time, you have seen competitor mobile device

4    teardowns that were done by people within PD?

5        A    Yes.

6        Q    And typically, if you can, please tell me the

7    context in which you have seen those -- those

8    teardowns that PD did.

9        A    The context is typically somewhat casual,

10   showing simple interest in -- in the makeup of these

11   products and...

12       Q    And what's your understanding as to why --

13   why PD does these teardowns?

14       A    I cannot speak to their motivations, but it

15   pays to know the competition.

16       Q    Then let me bring it to -- to -- from your

17   perspective.  Why does it -- why does it pay to know

18   the competition from your perspective in industrial

19   design?

20       A    It's a measure of how advanced we are as a

21   company to know where we stand relative to the

22   innovation and technology used by competitors.

23       Q    Are there other reasons, from your

24   perspective?

25       A    No.

Confidential Business Information
Pursuant to Protective Order

Page 33

1    Q    Is there anything wrong, in your view, with

2    you and the others within industrial design engaging

3    or looking at teardowns done of competitive product?

4    A    Looking at competitors' products is

5    acceptable.

6    Q    And that's something that's routinely done

7    within Apple?

8         MR. JACOBS:  Objection; form; foundation.

9         THE WITNESS:  I cannot attest to a routine,

10   but it's not unfamiliar.

11        MR. ZELLER:  Q.  It's something that you have

12   seen on -- on many occasions?

13        MR. JACOBS:  Objection; vague.

14        THE WITNESS:  "Many" might be misleading.  I

15   have occasionally seen such things.

16        MR. ZELLER:  Q.  And as you mentioned, you

17   also have seen, from time to time, competitive

18   analysis that's -- that's been done within the

19   company; right?

20   A    I have seen competitive analysis within the

21   company.

22   Q    And in your view, is there anything wrong

23   with doing competitive analysis?

24   A    There is nothing wrong with analysis.

25   Q    Does Apple have anyone, to your understanding

Confidential Business Information
Pursuant to Protective Order

Page 34

1    or knowledge, who actually analyzes the -- the

2    competition, does any kind of market intelligence?

3          MR. JACOBS:  Objection; form; compound;

4    vague.

5          THE WITNESS:  Each department is responsible

6    for their own analysis.  I cannot speak to each

7    department's investigations or analysis.

8          MR. ZELLER:  Q.  What kind of analysis --

9    what kind of competitive analysis, apart from

10   teardowns, have you seen?

11         MR. JACOBS:  Objection; vague.

12         THE WITNESS:  Paul Meade, for example, puts

13   together a spreadsheet of the various metrics, whether

14   that be how many megapixels the camera has, or the

15   chip speed, the dimensions, the thickness, the weight.

16   The major attributes are captured in the spreadsheet.

17         MR. ZELLER:  Q.  What other kinds of

18   competitive analysis have you seen, apart from that

19   and -- and from the teardowns that we've talked about?

20         MR. JACOBS:  Objection; vague.

21         THE WITNESS:  That's -- that's the extent of

22   my understanding of our analysis of competitive

23   products.

24         MR. ZELLER:  Q.  Is it the case that, from

25   time to time, the industrial design group has used

Confidential Business Information
Pursuant to Protective Order

Page 379

CERTIFICATE OF REPORTER

1

2

3

4        I, ANDREA M. IGNACIO HOWARD, hereby certify

5   that the witness in the foregoing deposition was by me

6   duly sworn to tell the truth, the whole truth, and

7   nothing but the truth in the within-entitled cause;

8

9        That said deposition was taken in shorthand

10  by me, a Certified Shorthand Reporter of the State of

11  California, and was thereafter transcribed into

12  typewriting, and that the foregoing transcript

13  constitutes a full, true and correct report of said

14  deposition and of the proceedings which took place;

15

16       That I am a disinterested person to the said

17  action.

18

19       IN WITNESS WHEREOF, I have hereunto set my

20  hand this 16th day of February, 2012.

21

22  _____

23  ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

24

25