QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and Samsung
Telecommunications America, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | **CASE NO. 11-cv-01846-LHK**<br><br>**SUPPLEMENTAL DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL AND/OR REMITTITUR PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50 AND 59** |

I, Michael T. Zeller, declare as follows:

1. I am a member of the State Bars of California, New York and Illinois, admitted to practice before this Court, and a partner at Quinn Emanuel Urquhart & Sullivan, LLP, counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung").  Unless otherwise indicated, I have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, I would testify to such facts under oath.

2. I submit this declaration in response to Apple's request that Samsung disclose "how and when it learned of the facts underlying its allegations that the judicial process was tainted," which Apple alleges is relevant to Samsung's Motion for Judgment as a Matter of Law, New Trial and/or Remittitur ("Motion for JMOL or New Trial").  Attached hereto as Exhibit A is a true and correct copy of Apple's email making this request.  Nothing in this declaration is intended as a waiver of any privilege or work product protection, and this declaration is expressly subject to, and is expressly given in reliance upon, Apple's promise and agreement that disclosure of this information is not and will not be argued to be a waiver.  Apple's agreement is reflected in the emails attached hereto as Exhibit A and Exhibit C.

3. Samsung and its counsel had no knowledge until after the jury verdict in this case of the facts concerning foreman Velvin Hogan's failure to truthfully disclose during *voir dire* his litigation with Seagate in answer to the Court's question, "Have you or a family member or someone very close to you ever been involved in a lawsuit, either as a plaintiff, a defendant, or as a witness?"  *See* July 30, 2012 Trial Tr. at 148:18-150:12.  Specifically, Samsung and its counsel did not know until after the verdict that Mr. Hogan had been in litigation with Seagate, had been a defendant to claims brought by Seagate or had filed his own claims against Seagate.  Samsung and its counsel also had no information until after the verdict regarding Mr. Hogan's stated influence on the jury verdict or his stated introduction of extraneous material to the jury's deliberations.  After the verdict, Mr. Hogan made numerous public statements to the press about the trial.  Samsung and its counsel learned of Mr. Hogan's claims about the jury's decision-making process only after Mr. Hogan began making those public statements.  And Samsung and

its counsel learned of Mr. Hogan's undisclosed Seagate litigation only through investigation undertaken after those post-verdict public statements.

4. After the verdict and after Mr. Hogan began making public statements, certain media accounts questioned Mr. Hogan's impartiality, including by suggesting that he had financial ties to Apple by virtue of his patents. Examples of these articles are attached hereto as Exhibit E. Because bankruptcy filings may contain information regarding a debtor's financial ties, Samsung and its counsel requested from Westlaw on September 4, 2012 a copy of the Bankruptcy Court file from *In re Velvin R. Hogan and Carol K. Hogan*, Case No. 93-58291-MM (Bankr. N.D. Cal. Dec. 27, 1993). Samsung and its counsel received that Court file on September 10, 2012. A true and correct copy of the file is attached hereto as Exhibit H.

5. The Bankruptcy Court file that Samsung received on September 10, 2012 included papers showing that Mr. Hogan was involved in litigation that he had not disclosed during *voir dire*, namely, a suit by Seagate Technology, Inc. against Mr. Hogan in a matter captioned *Seagate Tech., Inc. v. Hogan*, MS 93-0919 (Santa Cruz Municipal Ct.). A true and correct copy of the file is attached hereto as Exhibit I. This was the first time either Samsung or its counsel learned of any litigation between Mr. Hogan and Seagate. These same papers showed that Seagate's attorney in the lawsuit was Michael Grady, a fact which neither Samsung nor its counsel had known prior to the verdict and prior to obtaining the Bankruptcy Court file.

6. After receiving the Bankruptcy Court file that referenced Seagate's litigation against Mr. Hogan on September 10, 2012, Samsung and its counsel ordered, via a Westlaw court messenger, a copy of the *Seagate Tech., Inc. v. Hogan* Court file from the Santa Cruz Municipal Court. Samsung and its counsel learned from the Westlaw messenger on September 11, 2012 that this court file had not been retained by the court.

7. On September 21, 2012, Samsung filed its Motion for JMOL or New Trial and redacted its arguments related to Mr. Hogan. *See* Dkt. No. 1990. On September 26, 2012, Thomson Reuters News and Insight published an article entitled "Samsung goes after jury foreman in bid to reverse Apple verdict," a true and correct copy of which is attached as Exhibit F hereto. The article discussed Samsung's Motion for JMOL or New Trial and stated that based on

the case law cited in the table of authorities, Samsung's Motion for JMOL or New Trial was making arguments related to Mr. Hogan's litigation with Seagate. The article also included descriptions of a new interview with Mr. Hogan, and according to the article, Mr. Hogan stated "that he didn't mention the 1993 Seagate case" because "he wasn't asked specifically to disclose every case he'd ever been involved in." Further the article stated that, "Hogan said he sued Seagate for fraud, Seagate countersued." Samsung and its counsel learned of this claim by Mr. Hogan against Seagate in litigation for the first time through Mr. Hogan's statement in this Reuters' article.

8. On October 3, 2012, Bloomberg published an account of an additional interview given by Mr. Hogan, in an article entitled "Samsung Claims Jury Foreman Misconduct Tainted Apple Case." A true and correct copy of this article is attached as Exhibit G hereto. According to the article, Mr. Hogan stated that "the court instructions for potential jurors required disclosure of any litigation they were involved in within the last 10 years." The article quoted Mr. Hogan as claiming with regard to the Seagate litigation that "'[h]ad I been asked an open-ended question with no time constraint, of course I would've disclosed that.'" Samsung and its counsel learned of this explanation by Mr. Hogan as to why he did not disclose the litigation Seagate for the first time through this article. Samsung and its counsel have not been able to indentify any such 10-year limitation mentioned at any point to prospective jurors during *voir dire*. In fact, the Court did ask an open-ended question which had no time limitation; the Court asked Mr. Hogan: "Have you or a family member or someone very close to you *ever* been involved in a lawsuit, either as a plaintiff, a defendant, or as a witness." *See* July 30, 2012 Trial Tr. at 148:18-150:12 (emphasis added). In response to a question regarding his prior jury service, Mr. Hogan included in his response his service on a jury related to "an accident that occurred that was back in 1973," twenty years before his litigation with Seagate. *Id.* at 194:17-195:18.

9. On October 1, 2012, at Apple's request and in reliance upon Apple's agreement that doing so would not constitute a waiver of any privilege or work product protection (*see* Exh. A), Samsung disclosed to Apple in the form of a declaration from me the information showing that it did not discover the facts giving rise to the portion of Samsung's Motion for JMOL or New Trial

related to Mr. Hogan's failure to disclose the Seagate litigation until after the verdict. A true and correct copy of my prior declaration is attached hereto as Exhibit B. On October 2, 2012, Apple requested additional information regarding when Samsung and its counsel learned of Mr. Hogan's 1993 bankruptcy. A true and correct copy of Apple's email request is attached hereto as Exhibit C. Samsung and its counsel learned on July 30, 2012 that Mr. Hogan had declared bankruptcy in 1993 through a search performed on the LexisNexis database. A true and correct copy of the report Samsung's counsel received on July 30, 2012 is attached hereto as Exhibit D. The LexisNexis report does not mention Mr. Hogan's litigation with Seagate. Because Mr. Hogan's 1993 bankruptcy did not involve litigation and was not responsive to any *voir dire* questioning, Samsung and its counsel did not investigate Mr. Hogan's 1993 bankruptcy any further until after the verdict.

10. Apple also has requested additional information regarding "whether and when the Quinn partner whose husband filed the Seagate lawsuit realized this lawsuit involved Velvin Hogan, as well as whether and when her husband first became aware of this connection." That Quinn Emanuel partner, Diane Doolittle, first learned that this lawsuit involved Mr. Hogan on September 12, 2012, after Samsung and its counsel received the bankruptcy court file from *In re Velvin R. Hogan and Carol K. Hogan*, Case No. 93-58291-MM (Bankr. N.D. Cal. Dec. 27, 1993), when I informed her of it. Ms. Doolittle, who was not part of the Samsung trial team in this matter and has not otherwise worked on this litigation, had not heard of and had no knowledge about Mr. Hogan prior to that date. Mr. Grady likewise did not know of Mr. Hogan's connection to this case until he was informed of the connection on that same day, September 12, 2012, by Ms. Doolittle.

11. In sum, Samsung and its counsel discovered that Mr. Hogan had been involved in prior litigation with Seagate and that he had not fully and truthfully answered questions during *voir dire* regarding that litigation only after the jury verdict was announced in this case. Apple has yet to disclose when it first learned that Mr. Hogan had been a party to litigation with Seagate.

1    I declare under penalty of perjury under the laws of the United States of America that the
2    foregoing is true and correct.
3    Executed in Los Angeles, California on October 4, 2012.

By _____
       Michael T. Zeller