HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION ON NON-JURY CLAIMS, INCLUDING INDEFINITENESS**<br><br>Date:  Dec. 6, 2012<br>Time:  1:30 p.m.<br>Place:  Courtroom 4, 5th Floor<br>Judge:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

I.     THE TERM "SUBSTANTIALLY CENTERED" IS NOT INDEFINITE. ...................... 1

       A.     Samsung's '163 Indefiniteness Argument Is Untimely. ........................... 1

       B.     Terms Of Degree Do Not Render A Claim Indefinite. ............................ 2

       C.     The Patent Itself, and Testimony About it, Confirm that "Substantially Centered" is Amenable to Construction. ................................................... 2

II.    APPLE'S DESIGN PATENTS ARE NOT INDEFINITE. ................................................ 4

       A.     Samsung Waived Its Indefiniteness Defenses. ........................................ 4

       B.     The Design Patents Are Not Indefinite. ................................................... 4

III.   APPLE PROVED THAT SAMSUNG'S PATENT INFRINGEMENT WAS OBJECTIVELY WILLFUL. .............................................................................................. 7

       A.     Samsung's Subjective Willfulness Arguments Belong In Its JMOL Motion. ... 7

       B.     Samsung Was Objectively Willful. .......................................................... 8

       C.     If The Court Reaches This Issue, Apple Proved Subjective Willfulness. ............... 9

            1.     Any willfulness assessment should take into account Samsung's deliberate copying before and after litigation was filed. ............................ 9

            2.     Samsung had notice of the patents in suit. ................................. 10

       D.     There Is No Objective Willfulness Requirement For Trade Dress Claims. .......... 11

IV.   APPLE'S PATENTS ARE NOT OBVIOUS. ................................................................ 12

CONCLUSION ................................................................................................................ 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Amgen, Inc. v. Chugai Pharm. Co.,*
  927 F.2d 1200 (Fed. Cir. 1991)........................................................................................ 1, 2

*Andrew Corp. v. Gabriel Elec., Inc.,*
  847 F.2d 819 (Fed. Cir. 1988)............................................................................................... 2

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.,*
  682 F.3d 1003 (Fed. Cir. 2012)............................................................................................ 7

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.,*
  460 F.3d 1349 (Fed. Cir. 2006)............................................................................................ 4

*Datamize, LLC v. Plumtree Software, Inc.,*
  417 F.3d 1342 (Fed. Cir. 2005)........................................................................................ 1, 2

*Dataquill Ltd. v. High Tech Computer Corp.,*
  No. 08-cv-543,
  2011 U.S. Dist. LEXIS 138565 (S.D. Cal. Dec. 1, 2011)................................................. 10

*Ethicon Endo-Surgery, Inc. v. Hologic, Inc.,*
  689 F. Supp. 2d 929 (S.D. Ohio 2010) ............................................................................. 10

*Exxon Research & Eng'g Co.,*
   265 F.3d 1371 (Fed. Cir. 2001)..................................................................................... 1, 2, 4

*Fractus, S.A. v. Samsung Elecs. Co.,*
  No. 6:09-CV-203,
  2012 U.S. Dist. LEXIS 90284 (E.D. Tex. June 28, 2012) ............................................. 4, 8

*Haemonetics Corp. v. Baxter Healthcare Corp.,*
  607 F.3d 776 (Fed. Cir. 2010)............................................................................................... 4

*i4i Ltd. P'ship v. Microsoft Corp.,*
  598 F.3d 831 (Fed. Cir. 2010)............................................................................................. 11

*In re Seagate Techs., LLC.,*
  497 F.3d 1360 (Fed. Cir. 2007)................................................................................... 7, 9, 10

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,*
  688 F.3d 1342 (Fed. Cir. 2012)........................................................................................... 12

*KLA-Tencor Corp. v. Xitronix Corp.,*
  No. A-08-CA-723,
  2011 WL 318123 (W.D. Tex. Jan. 31, 2011)................................................................. 1, 2

*LML Holdings, Inc. v. Pac. Coast Distrib., Inc.*,
No. 11-cv-6173,
2012 U.S. Dist. LEXIS 75843 (N.D. Cal. May 30, 2012) ..................................................... 10

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354 (Fed. Cir. 2004) .................................................................................................... 5

*Minks v. Polaris Indus.*,
546 F.3d 1364 (Fed. Cir. 2008) .................................................................................................. 10

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008) .................................................................................................... 4

*Seattle Box Co. v. Indus. Crating & Packing*,
731 F.2d 818 (Fed. Cir. 1984) ...................................................................................................... 2

*Spansion Inc. v. ITC*,
629 F.3d 1331 (Fed. Cir. 2010) .................................................................................................... 5

*Spectralytics, Inc. v. Cordis Corp.*,
649 F.3d 1336 (Fed. Cir. 2011) .................................................................................................. 12

*Standard Oil Co. v. American Cyanamid Co.*,
774 F.2d 448 (Fed. Cir. 1985) .................................................................................................. 1, 2

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp*,
587 F.3d 1339 (Fed. Cir. 2009) .................................................................................................... 6

*Verve LLC v. Crane Cams, Inc.*,
311 F.3d 1116 (Fed. Cir. 2002) .................................................................................................... 2

*Young v. Lumenis, Inc.*,
492 F.3d 1336 (Fed. Cir. 2007) .................................................................................................... 2

**STATUTES, REGULATIONS & RULES**

37 C.F.R.
§ 1.84(a)(2) ..........................................................................................................................6-7

Fed. R. Civ. P.
Rule 50 ............................................................................................................................................ 4
Rule 50(a) ........................................................................................................................................ 4
Rule 50(b) ........................................................................................................................................ 5

MPEP
§ 1503.02(v) .................................................................................................................................. 7

**INTRODUCTION**

While Samsung's motion purports to address non-jury claims, its arguments about willful infringement and challenge to the jury's verdict of non-obviousness should have been raised in its JMOL motion, within the page limits set for that motion.  Samsung's indefiniteness defenses would have been non-jury claims, but Samsung raises them too late.  All of the arguments also fail on the merits.  Samsung's motion should be denied in its entirety.

**I.      THE TERM "SUBSTANTIALLY CENTERED" IS NOT INDEFINITE.**

**A.      Samsung's '163 Indefiniteness Argument Is Untimely.**

As this Court recognized at the summary judgment stage, a claim is not indefinite unless the party seeking to invalidate it proves by clear and convincing evidence that "reasonable efforts at claim construction" have proved "futile" because the claim is "'not amenable to construction' or 'insolubly ambiguous.'"  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005) (quoting *Exxon Research & Eng'g Co.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). (*See* Dkt. No. 1156 at 14.)  Samsung did not ask the Court to construe "substantially centered" in the Local Rules claim construction process or at any other time before trial.  Nor did Samsung raise indefiniteness in the Joint Pretrial Statement.  And although Samsung cites cases recognizing that "determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims," *Exxon*, 265 F.3d at 1376, Samsung bypassed every proper route to raise this issue, and instead invited error by submitting a proposed jury instruction on indefiniteness. [1]  (Dkt. No. 1809; Tr. 3782.)  Now, post-trial, it is too late for Samsung to ask the Court to construe this term.

---

[1] Samsung's cited indefiniteness cases explicitly reflect that courts attempted to or did construe the term at issue during pre-jury-trial claim construction or at summary judgment; although one case, *KLA-Tencor Corp. v. Xitronix Corp.*, No. A-08-CA-723, 2011 WL 318123 (W.D. Tex. Jan. 31, 2011), is silent on that issue.  *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200 (Fed. Cir. 1991), and *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985) are pre-*Markman* cases involving bench trials, where the lower court had the opportunity to attempt to construe the terms at issue before issuing a dispositive opinion on both factual and legal questions, as Federal Circuit case law requires.

**B.      Terms Of Degree Do Not Render A Claim Indefinite.**

Samsung's untimely defense also fails on the merits.  Samsung has not shown either futility or insoluble ambiguity.  Terms of degree like "substantially" are "ubiquitous in patent claims," *Andrew Corp. v. Gabriel Elec., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) ("substantially equal"), and have repeatedly survived indefiniteness challenges.  *See, e.g.*, *Verve LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002) ("substantially constant wall thickness"); *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 826 (Fed. Cir. 1984) ("substantially equal to or greater than").  In *Exxon*, for example, the Federal Circuit held that "substantial absence of slug flow" was not indefinite, noting "in this setting, as in others, mathematical precision is not required — only a reasonable degree of particularity and definiteness."  265 F.3d at 1380-81; *see also Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007) ("near" not insolubly ambiguous; has ordinary meaning of "close to or at").

Samsung cites only three Federal Circuit decisions holding a patent claim indefinite.  Each is inapposite.  Two involved chemical processes, which necessitate precision.  *See Amgen*, 927 F.2d at 1217-18; *Standard Oil*, 774 F.2d at 453.  The third found the phrase "aesthetically pleasing" indefinite because it was "entirely subjective" and not amenable to any reasonable construction or anchored to any objective standard.  *Datamize*, 417 F.3d at 1347-48.  Nor are Samsung's district court cases persuasive.  For example, in *KLA-Tencor*, 2011 WL 318123, at *3-4, the term "substantially" appeared nowhere in the specification and there was no objective basis for interpreting "substantially maximize."

**C.      The Patent Itself, and Testimony About it, Confirm that "Substantially Centered" is Amenable to Construction.**

Samsung argues that the '163 patent provides no guidance on the meaning of "substantially centered" and that a person of ordinary skill could not understand the meaning of the term.  The record is to the contrary.  The specification and the claims as drafted and issued use the term "substantially centered" and the Examiner never challenged the term as indefinite or asked the applicants to clarify it.  (JX1049.)  Although Samsung asserts that the specification does not include a clear example of a "'box of content' that is not precisely centered on the touch-

1   screen display" (Mot. at 3), the patent shows otherwise:  Figure 5C, Block 5 has a wider margin

2   on the left side of the screen than on the right, and is positioned below the vertical mid-line of the

3   screen.  In other words, to any reader, and certainly to a person of ordinary skill in the art, Box 5

4   is "substantially centered" but not mathematically or exactly centered on the display.

5          Apple's expert, Dr. Singh, testified at deposition that Box 5 was not exactly centered but

6   was "substantially centered."  (Sabri Decl. Ex. 1 at 112:15-23.)  He offered "mostly centered" as

7   his own understanding of the term, and agreed with inventor testimony that a person of ordinary

8   skill would understand that deviations from exact centering could be "substantially centered"

9   where necessary to accomplish the objective of enhancing the readability of pieces of content.

10  (*Id.* at 108:22-113:20; *see also id.* Ex. 2 at 19:21-21:18, 23:4-24:2, 166:23-168:14 (Forstall Dep.)

11  ("substantially centered" content might not be "precisely in the center," and could include

12  centering using "golden rule" rather than mathematical midline).)  Even Samsung's expert Mr.

13  Gray plainly understood the term:  he conceded at deposition that all the Samsung devices he

14  tested were capable of "substantially centering" boxes of content.  (*Id.* Ex. 3 at 181:17-182:22,

15  185:1-186:20.)

16         To manufacture an issue where none exists, Samsung mischaracterizes the trial testimony.

17  According to Samsung, "[w]hen asked about the meaning of 'substantially centered,'" the only

18  explanation offered by inventor Scott Forstall was that it meant "placing a box 'where it makes

19  sense.'"  (Mot. at 4 (citing Tr. 758:12-15).)  However, Mr. Forstall's complete answer explains

20  how one of ordinary skill would understand situations in which one might substantially center

21  rather than precisely center a piece of text:

22              But if you have a, a column of information, let's say it's a column of first
               names and they're very short names and it's on the very left-hand side of a
23              web page, if you double tap on that column, it would be foolish to center that
               column in the middle of the phone because you leave all this empty space
24              beyond it to the left.  You're just wasting space.  You can still perfectly read
               those names lined up on the edge of the phone and see more of the web page
25              to the right.  **So we talked about it as being substantially centered,**
               **meaning center it where it makes sense, but don't go beyond the edge of**
26              **a document because there's no reason to do that.**

27  (Tr. 758:1-15 (emphasis added).)

28         Dr. Singh testified that the term "substantially centered" was not ambiguous to a person of

1   ordinary skill.  Agreeing that the patent does not explicitly define the term, he explained:  "But by

2   and large, it's something that a person of ordinary skill in the art will have no problem

3   understanding."  (Tr. 1901:7-19.)  Although Samsung makes much of Dr. Singh's testimony that

4   there could be rare instances in which "reasonable minds might deviate" on whether a box of

5   content is substantially centered, that is not the test for indefiniteness.  A claim is not indefinite

6   even where "reasonable persons will disagree" about its meaning.  *Exxon,* 265 F.3d at 1375;

7   *accord Haemonetics Corp. v. Baxter Healthcare Corp*., 607 F.3d 776, 783 (Fed. Cir. 2010).

8   **II.      APPLE'S DESIGN PATENTS ARE NOT INDEFINITE.**

9        **A.      Samsung Waived Its Indefiniteness Defenses.**

10      When asked via interrogatory to explain the legal and factual bases for its invalidity

11  defenses, Samsung responded, with no explanation, that Apple's design patents are indefinite.

12  (Sabri Decl. Ex. 4.)  The Court subsequently struck Samsung's expert testimony on indefiniteness

13  because it included material not disclosed in that interrogatory response (Dkt. No. 1144), and

14  reaffirmed that ruling during trial:  "Samsung will not be permitted to argue, through fact

15  witnesses or otherwise, for invalidity of design patents . . . based on theories not timely disclosed

16  in Samsung's amended responses to contention interrogatories."  (Dkt. No. 1545 at 10.)  The

17  indefiniteness arguments in Samsung's post-trial motion are no less untimely.

18      Samsung also waived its indefiniteness defenses by failing to raise them in its claim

19  construction briefs, the pre-trial order, or its Rule 50(a) motions.  (Dkt. Nos. 1090-1, 1139-3, &

20  1819; Tr. 2173-2192).  "Indefiniteness is a matter of claim construction," *Praxair, Inc. v. ATMI,*

21  *Inc*., 543 F.3d 1306, 1319 (Fed. Cir. 2008), and "litigants waive their right to present new claim

22  construction disputes if they are raised for the first time after trial," *Conoco, Inc. v. Energy &*

23  *Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).  *See Fractus, S.A. v. Samsung Elecs. Co*.,

24  No. 6:09-CV-203, 2012 U.S. Dist. LEXIS 90284 (E.D. Tex. June 28, 2012) (indefiniteness

25  challenge waived "by not raising the issue at trial or preserving it via Rule 50").

26      **B.      The Design Patents Are Not Indefinite.**

27      Samsung's indefiniteness defenses also fail on the merits.  Samsung has no possible

28  argument that the design patent claims are not amenable to construction because the Court has

APPLE'S OPPOSITION TO SAMSUNG'S MOTION ON NON-JURY CLAIMS
CASE NO. 11-cv-01846-LHK
sf-3200315

4

1    already construed those claims.  *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370

2    F.3d 1354, 1366 (Fed. Cir. 2004) (claim not indefinite where "the claim construction exercise at

3    the trial court produced a discernible and clear meaning").   Moreover, trial testimony from

4    experts on *both* sides confirms that the design patents are not indefinite.  *See Spansion Inc. v. ITC*,

5    629 F.3d 1331, 1344-45 (Fed. Cir. 2010) (claims not indefinite where both sides' experts said one

6    of ordinary skill could determine the claim boundaries).  Apple's experts Mr. Bressler and

7    Dr. Kare described the designs at issue consistent with the Court's claim construction.  (*E.g.*, Tr.

8    1014:2-1016:20 (Bressler re D'677); 1018:20-1019:20 (Bressler re '087); 1366:9-1367:21 (Kare

9    re D'305).)  Mr. Sherman, Samsung's sole design expert, also understood the designs.  As

10   explained below, he testified to his theories that the designs were obvious and functional.

11        ***The D'889 Patent.***  Samsung offers a litany of cursory indefiniteness arguments on the

12   D'889 patent, but each fails on its merits.  Samsung's arguments regarding inconsistent usage of

13   broken lines are refuted by the Court's claim construction order and the patent itself.  The Court

14   construed the broken lines in the D'889 patent pursuant to the clear statement in the specification

15   disclaiming them only for Figure 9.  (Dkt. Nos. 1425 & 1447; JX1040.)  Samsung itself concedes

16   that "broken lines may mean different things in different circumstances."  (Mot. at 7.)

17        Samsung now contends that the construction as to surface shading that the Court adopted

18   *at Samsung's request*, and over Apple's objections, renders the patent indefinite.  The Court

19   construed the D'889 surface shading, wherever it appears, to mean transparency, translucency or

20   reflectivity.  (Dkt. Nos. 1425 & 1447.)  Apple has challenged that construction in its Rule 50(b)

21   motion, arguing that the use of surface shading only on the back perspective view in Figure 2 and

22   not on the back plan view in Figure 4 would indicate to one skilled in the art that the back surface

23   is flat.  Even under the Court's interpretation, however, Figure 4's lack of surface shading does

24   not render the patent indefinite because surfaces may be reflective when viewed at an angle (as in

25   Figure 2) and not reflective when viewed straight on (as in Figure 4).

26        Samsung argues that the "views of the D'889 patent make it impossible to know which

27   way the device should be oriented and where certain environmental features should go" (Mot.

28   at 6), but there is no authority for the proposition that patent drawings must be oriented in a

1  particular direction.

2          Finally, Samsung argues that the D'889 patent is indefinite because Apple witnesses

3  testified that the 035 mockup and the iPad 2 "both show the design of the D'889." (Mot. at 7.)

4  But Samsung's cited authority is not about design patents and in fact goes the other way. *See*

5  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp*, 587 F.3d 1339, 1352 (Fed. Cir. 2009)

6  (claim for formula with 5,000 possible combinations held *not* indefinite).

7          **The D'087 and D'677 Patents**.  Samsung's indefiniteness arguments concerning the

8  D'087 and D'677 patents focus on manufacturing and construction rather than ornamental

9  appearance. (Mot. at 8.)  Certain of the design features of Apple's D'677 patent, including a

10  lozenge shape and a rectangular shape, are readily understood based on their appearance in the

11  figures.  Samsung's expert, Mr. Sherman, was able to determine what these features are, as he

12  testified that they corresponded to features in the prior art. (*E.g.*, Tr. 2578:10-21 (describing

13  features), 2581:9-21 (comparing to JP638 patent).)  Samsung misstates Mr. Bressler's testimony;

14  he never testified that the rectangular shape in the design is "*below* a transparent surface" or the

15  lozenge shape is an "opening, *in* the face." (Mot. at 7 (citing Tr. 1014:14-10, 1015:24).)  That

16  different manufacturing techniques (*i.e.*, with features below, in, or on top of the front surface)

17  can be used to create the design cannot render the patent drawings themselves indefinite.

18          In another attempt to read limitations into the claims based upon manufacturing

19  techniques, Samsung argues that the D'087 patent is indefinite because the lack of surface

20  shading makes it impossible for a designer "to understand that the internal rectangle is actually a

21  display area below a transparent surface." (Mot. at 8.)  As this Court has already ruled, no

22  surface shading is required because the front surface of the D'087 patent does not claim

23  transparency. (Dkt. No. 1425 at 6-8.)  Again, Mr. Sherman was able to understand the design

24  when he attempted to correlate it with the prior art. (Tr. 2579:8-20 (describing features), 2581:9-

25  21 (comparing to JP638 patent).)

26          **The D'305 Patent**.  Samsung's sole indefiniteness argument concerning the D'305

27  patent — that the patent does not indicate whether color is "necessary for the claim" — blatantly

28  misrepresents the record.  Apple submitted a Petition for Acceptance of Color Drawings under 37

1  C.F.R. § 1.84(a)(2) during prosecution, explaining that "[i]t is necessary to present Figure 1 in

2  color because color is the most effective manner to communicate of [sic] the features shown in

3  Figure 1." (Sabri Decl. Ex. 5 at 1.) This statement complied with MPEP § 1503.02(v), which

4  requires a petition to "explain that color drawings or color photographs are necessary because

5  color is an integral part of the claimed design."

6  **III.    APPLE PROVED THAT SAMSUNG'S PATENT INFRINGEMENT WAS OBJECTIVELY WILLFUL.**

7

8      **A.      Samsung's Subjective Willfulness Arguments Belong In Its JMOL Motion.**

9      *Seagate* identified a threshold objective standard for willful infringement, which requires

10  "clear and convincing evidence that the infringer acted despite an objectively high likelihood that

11  its actions constituted infringement of a valid patent." *In re Seagate Techs., LLC.*, 497 F.3d 1360,

12  1371 (Fed. Cir. 2007) (*en banc*). The court was explicit that the "state of mind of the accused

13  infringer is not relevant to this objective inquiry." *Id.* To assess objective willfulness, a court

14  should determine "whether a 'reasonable litigant could realistically expect' [defendant's asserted]

15  defenses to succeed." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d

16  1003, 1006-08 (Fed. Cir. 2012).

17      Samsung's motion includes only a single, unsupported sentence concerning the supposed

18  reasonableness of its defenses. (Mot. at 10:18-19.) Samsung focuses instead on what it knew or

19  should have known — its state of mind — about Apple's patents. (*See*, *e.g.*, Mot. at 9-10 (citing

20  cases about party's notice of patent); *id.* at 10 (discussing "*pre*-litigation knowledge on

21  Samsung's part").) But under *Seagate*, Samsung's state of mind is irrelevant to objective

22  willfulness and is instead part of the subjective inquiry that the jury has already decided. If the

23  "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-

24  defined risk (determined by the record developed in the infringement proceeding) was *either*

25  *known or so obvious that it should have been known to the accused infringer.*" *Seagate*, 497 F.3d

26  at 1371 (emphasis added). Thus, Samsung's arguments about its state of mind should have been

27  raised in its JMOL motion, within the confines of the page limits for that motion.

28

### B.  Samsung Was Objectively Willful.

As noted, Samsung's Motion includes but a single conclusory sentence about its supposedly reasonable defenses.  (Mot. at 10:18-10.)  Perhaps Samsung intends to rely on its blanket incorporation of its JMOL Motion.  (*See* Mot. at 1.)  If so, Apple relies on the portion of its motion for damages enhancements that details the objectively high likelihood that Samsung infringed valid Apple patents (Dkt. No. 1982-1 at 12-16), as well as Apple's forthcoming opposition to Samsung's JMOL motion, to be filed October 19.  As summarized below, Samsung's defenses are not reasonable.

*Design patents.*  As shown in Apple's enhancement motion, no Samsung witness refuted infringement of Apple's design patents, and Samsung's infringement defense was based largely on the absence of evidence of confusion at the point of sale, even though no such evidence is required.  (*See* Dkt. No. 1982-1 at 13.)  This Court and the Federal Circuit concluded that Samsung failed to raise substantial questions as to validity of Apple's D'677 and D'087 patents and Samsung failed to identify a primary reference as to the D'305 patent.  (*Id*. at 13-14.)  That Samsung "resort[ed] to altering the prior art to make it resemble the figures in the Patents-in-Suit" by depicting only partial views of the JP638 (*see* DX511) further underscores its objective willfulness.  *Fractus*, 2012 U.S. Dist. LEXIS 90284, at *62-63 (E.D. Tex. June 28, 2012) (finding objective willfulness in part because Samsung's demonstrative "did not demonstrate the true nature of" prior art reference).  Samsung's reliance on its JMOL motion is unavailing because, for example, that motion again misstates that the law regarding design patent infringement requires deception "in purchasing."  (Dkt. No. 2013 at 4.)

*Utility patents.*  As Apple has shown, no Samsung expert offered a non-infringement opinion on the '381 patent, and its expert's non-infringement theories on the '163 and '915 patents were not reasonable.  (Dkt. No. 1982 at 14-15.)  Samsung's invalidity contentions were insubstantial for all three patents (*id*. at 15-16), and the '381 patent was confirmed in reexamination.  (JX1047.)  Samsung's post-trial arguments do not rehabilitate its unsupported defenses:  its expert testimony on many prior art references did not meet Samsung's burden to establish invalidity in the first instance (*see* Dkt. No. 1982-1 at 15-16), and Apple rebutted with

1    detailed expert testimony on every prior art reference (Tr. 3614-3628; 3630-3636).

2            **C.      If The Court Reaches This Issue, Apple Proved Subjective Willfulness.**

3            Samsung's argument that the Court should decide whether Samsung knew or should have

4    known of the risk of infringing Apple's patents ignores that the jury was instructed to, and did,

5    decide that precise question.  (*See* Dkt. No. 1893 at 78 (Final Jury Instruction No. 59).)  Any

6    challenge to those findings belonged in Samsung's JMOL motion.  In any event, Samsung has not

7    shown that the only reasonable conclusion the jury could have reached was that Samsung did not

8    have sufficient notice of Apple's patents to establish subjective willfulness.

9                    **1.      Any willfulness assessment should take into account Samsung's
                        deliberate copying before and after litigation was filed.**

10           Samsung asserts that, in "ordinary circumstances," willfulness depends on an infringer's

11   "pre-suit knowledge."  (Mot. at 10 (citing *Seagate*, 497 F.3d at 1374).)  But these are no ordinary

12   circumstances because here, Samsung made a deliberate decision to study the designs and

13   features of Apple's devices and then blatantly copy them in order to take market share from

14   Apple, releasing one copycat product after another, both before and after Apple filed this lawsuit.

15   (PX7; JX1500 (photographs and first sale dates of infringing phones).)  As detailed in Apple's

16   motion for willfulness enhancements, Samsung was under pressure to "make something like the

17   iPhone."  (PX40.2.)  Samsung did exactly that in March through June 2010, using the 126

18   "Direction[s] for Improvement" in its internal "Relative Evaluation Report" to make Samsung's

19   latest phone like the iPhone.  (PX44.)  The result was the first of many copycat phones:  the

20   Galaxy S i9000.  (*See, e.g.*, Tr. 1378:7-1378:11 (i9000 visual impression substantially same as

21   D'305); 1840:16-1841:19 (i9000 infringes '163).)  Samsung's copying was widely recognized.

22   (PX6 (press reports), PX43.2 ("Respond to the issue of design similarity for the S series by

23   changing the CMF.").)  Having chosen this path, Samsung cannot credibly assert that it lacked

24   notice that it was copying protected intellectual property.

25           Samsung urges the Court to ignore copying because it "is 'of no import to the question of

26   whether the claims of an issued patent are infringed.'"  (Mot. at 10 (citation omitted).)  But the

27   issue here is *willfulness*, not infringement, and copying is a recognized factor in establishing

28

1    willfulness.  *See, e.g., Minks v. Polaris Indus.*, 546 F.3d 1364, 1381 (Fed. Cir. 2008)

2    (emphasizing evidence that defendant "deliberately copied" in affirming willfulness verdict).

3           Samsung also suggests that its post-litigation infringing conduct should not be considered

4    because Apple did not seek a preliminary injunction on the '915, '163, and D'305 patents.  But

5    this argument is of no avail, because there is overwhelming evidence of Samsung's copying from

6    the pre-filing period.  In any event, a patentee need not move for a preliminary injunction, let

7    alone move on every patent in a multi-patent case, to preserve claims for post-filing willful

8    infringement.  As *Seagate* recognized, preliminary injunctions may not be appropriate despite a

9    likelihood of success on the merits, and "whether a willfulness claim based on conduct occurring

10   solely after litigation began is sustainable will depend on the facts of each case."  497 F.3d at

11   1374; *see Dataquill Ltd. v. High Tech Computer Corp.*, No. 08-cv-543, 2011 U.S. Dist. LEXIS

12   138565, at *43-44 (S.D. Cal. Dec. 1, 2011) (declining to read *Seagate* to always require

13   preliminary injunction motions).  Samsung ignores this Court's discouragement of any

14   preliminary injunction motions on the utility patents.  (June 17, 2011 Hrg. Tr. 26.)  Samsung

15   likewise ignores that Apple *did* seek a preliminary injunction on the D'087, D'677, and '381

16   patents, and that the Court found that Apple was likely to prevail on infringement and invalidity

17   for the D'677 and '381 patents.  (Dkt. No. 452 at 24, 27, 56, 63.)

18                  **2.      Samsung had notice of the patents in suit.**

19          There is no question that Samsung knew or should have known that the designs and

20   features it was copying were Apple's protected intellectual property.  *See Ethicon Endo-Surgery,*

21   *Inc. v. Hologic, Inc.*, 689 F. Supp. 2d 929, 944 (S.D. Ohio 2010) (notice sufficient if defendant

22   "should have known" about patent); *LML Holdings, Inc. v. Pac. Coast Distrib., Inc*., No. 11-cv-

23   6173, 2012 U.S. Dist. LEXIS 75843, at *10 (N.D. Cal. May 30, 2012) (same).  At the 2007

24   iPhone launch, which was widely publicized and closely watched by the entire tech industry,

25   Steve Jobs told the world that Apple had filed "for over 200 patents" on the iPhone.  (JX1091 at

26   1:30:24.)  That alone gave Samsung notice that its copying would infringe Apple's patents.

27          **The '381 patent**.  Samsung concedes that the '381 patent was listed in Apple's August

28   2010 infringement presentation.  (Mot. at 10; PX52.14 (presentation).)  During that presentation,

1    Apple expressly told Samsung to stop copying Apple's iPhone patents and designs.  (PX201

2    (J.W. Lee Dep., played 8/13/2012.)  The head of Samsung's Mobile Design Group admitted that

3    Samsung "paid attention" to "UX" patents such as Apple's "bounce" patent (*i.e.,* the '381 patent)

4    when designing its Galaxy smartphones.  (PX202 (Chang Dep., played 8/13/2012).)

5            **The '163 and '915 patents**.  As noted, the head of Samsung's Mobile Design Group

6    conceded that Samsung monitored "UX" patents.  (PX202.)  *See Ethicon,* 689 F. Supp. 2d at 944

7    (monitoring of patentee's patents supports notice, even absent "evidence of actual knowledge").

8    Samsung's careful analysis of the iPhone's user interface further confirms that Samsung should

9    have known of both patents — and certainly knew it was copying Apple — long before Apple

10   filed suit.  (PX44.)  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010)

11   (attending demonstrations of product practicing patent constitutes "circumstantial evidence" of

12   notice).

13           **The D'087, D'677, and D'305 patents**.  Samsung also knew or should have known of

14   Apple's design patents.  At the August 2010 meeting, Apple highlighted the similarities between

15   the iPhone design (protected by the D'677, D'087, and D'305 patents and the trade dress) and the

16   Galaxy S i9000's design.  (PX52.17-19; Tr. 1958-1962 (Boris Teksler testimony regarding

17   August 2010 presentation).)  Samsung's director of licensing, who attended the meeting, admitted

18   that Samsung's infringement of "Apple phone's patents and design" was discussed.  (PX201 at

19   31:15-16; 31:18-20; 33:21-24; 37:21-38:05 (Jun Won Lee Dep., played 8/13/2012).)

20           **D.       There Is No Objective Willfulness Requirement For Trade Dress Claims.**

21           Samsung's pro forma argument that Apple lacks evidence of objectively willful trade

22   dress infringement should be disregarded.  It relies on the objective willfulness requirement in

23   *patent cases*; Samsung does not, and cannot, cite a single *trade dress case* requiring objective

24   willfulness.  And even if the Court decides subjective willfulness as a non-jury claim, the record

25   establishes that Samsung had sufficient notice of Apple's trade dress to establish subjective

26   willfulness.  Apple's trade dress is the appearance of the iPhone, and the record establishes that

27   Apple showed Samsung pictures of the phone in the August 2010 infringement presentation and

28   demanded that Samsung stop copying the iPhone's design.  (PX52.17-19.)

1   **IV.    APPLE'S PATENTS ARE NOT OBVIOUS.**

2           Samsung contends that, because the ultimate decision on obviousness is a legal question,

3   the Court "can and should make an independent legal determination of obviousness in light of the

4   evidence presented by the parties." (Mot. at 12.)  Samsung ignores the jury's resolution of this

5   issue.  With Samsung's agreement, the Court instructed the jury at length on invalidity, including

6   obviousness.  (Dkt. No. 1883 at 39-40.)  The jury found that none of Apple's patents was invalid.

7   (Dkt. No. 1930 at 10.)  This portion of Samsung's motion is simply a JMOL in disguise.

8           Moreover, the Court's review of the jury's obviousness finding is not "independent."

9   "[T]he Court cannot, on a post-trial motion, substitute its view of the evidence for the jury's."

10  *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1342 (Fed. Cir. 2011) (affirming denial of

11  JMOL on obviousness).  Instead, the Court applies the "substantial evidence" standard, deferring

12  to the "underlying factual findings that were the jury's to make." *Id.* at 1344-45.  This is true

13  even if "the Court likely would have found the . . . patent[s] invalid," had the case "been tried to

14  the Court." *Id.* at 1342.  Under this standard, the Court must "presume that the jury resolved the

15  underlying factual disputes in [Apple's] favor . . . and leave those presumed findings undisturbed

16  if they are supported by substantial evidence." *Id.*  The Court also "must infer that the jury found

17  [Apple's] experts to be credible and persuasive" on all factual questions. *Kinetic Concepts, Inc. v.*

18  *Smith & Nephew, Inc.*, 688 F.3d 1342, 1371 (Fed. Cir. 2012) (reversing JMOL on obviousness,

19  where court "fail[ed] to defer to the jury's factual findings").   The burden remains on Samsung

20  "to establish by clear and convincing evidence that the patent[s] [are] obvious." *Id.* at 1360.

21  Samsung makes no attempt in its "non-jury" motion to do so, simply referring the Court to its

22  JMOL.  Apple will respond to that JMOL on October 19.

23                                **CONCLUSION**

24          For all the foregoing reasons, Samsung's motion should be denied.

25  Dated:  October 5, 2012                  MORRISON & FOERSTER LLP

26                                     By:    */s/ Michael A. Jacobs*
                                            Michael A. Jacobs

27                                          Attorneys for Plaintiff
28                                          APPLE INC.