QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:    (650) 801-5000
Facsimile:      (650) 801-5100

Susan R. Estrich (Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S RESPONSE TO APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER, EQUITABLE ESTOPPEL, UNCLEAN HANDS, AND UNFAIR COMPETITION** |

02198.51855/4988798.10

Case No. 11-cv-01846-LHK
SAMSUNG'S RESPONSE TO  APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER. EQUITABLE ESTOPPEL. UNCLEAN HANDS. AND UNFAIR COMPETITION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................... 1

II. STATEMENT OF FACTS ..................................................................................................... 2

III. ARGUMENT .......................................................................................................................... 4

    A. Apple's Waiver Defense Must Be Denied .................................................................. 4

        1. Apple Has Not Proven that Samsung Had a Duty to Disclose the Korean Applications ............................................................................................. 4

        2. Apple Has Failed To Show the Korean Patent Applications Were Not Confidential and Therefore Covered By the ETSI IPR Policy ............... 5

        3. There Is No Evidence That Samsung Intentionally Breached ETSI's IPR Policy ............................................................................................................. 6

        4. The Circumstances Here Do Not Warrant a Finding of Waiver ................... 7

    B. Apple's Equitable Estoppel Defense Must Be Denied ............................................... 8

    C. Apple's Unclean Hands Defense Must Be Denied .................................................. 10

    D. Apple's Unfair Competition Counterclaim Must Be Denied .................................. 10

IV. CONCLUSION ..................................................................................................................... 12

02198.51855/4988798.10

-i-  Case No. 11-cv-01846-LHK
**SAMSUNG'S RESPONSE TO APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER. EQUITABLE ESTOPPEL. UNCLEAN HANDS. AND UNFAIR COMPETITION**

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.C. Aukerman Co. v. R.L Chaides Const. Co.*,
 960 F.2d 1020 (Fed. Cir. 1992)...........................................................................................8

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
 214 F. Supp. 2d 530 (D. Md. 2002) ..................................................................................11

*Broadcom v. Qualcomm*,
 548 F.3d 1004 (Fed. Cir. 2008) ........................................................................1, 4, 5, 7, 8

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular*,
 20 Cal. 4th 163 (1999)................................................................................................11, 12

*Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794,
 Initial Determination (September 14, 2012) ......................................................................2

*Certain L-Lysine Feed Products, Investigation No. 337-TA-571*,
 2008 WL 3872209 (U.S.I.T.C. 2008) ...............................................................................10

*Dybczak v. Tuskegee Institute*,
 737 F.2d 1524 (11th Cir. 1984) ..........................................................................................1

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 645 F.3d 1336 (Fed. Cir. 2011) ..........................................................................................5

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.*,
 874 F.2d 653 (9th Cir. 1989) ..............................................................................................6

*Therasense, Inc. v. Becton, Dickinson & Co.*,
 649 F.3d 1276 (Fed. Cir. 2011) ........................................................................................10

*United States v. Grinnell*,
 384 U.S. 563 (1966) ..........................................................................................................11

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001) ............................................................................................11

*Unitherm Food Sys., Inc. v. Swift-Eckert, Inc.*,
 375 F.3d 1341 (Fed. Cir. 2004), *reversed on other grounds*, 564 U.S. 394 (2006).............11, 12

*Winbond Electronics Corp. v. Int'l Trade Comm'n*,
 262 F.3d 1363 (Fed. Cir. 2001) ..........................................................................................9

**Statutes**

U.S.C.A. Const. Amend. 7 ..........................................................................................................1

## I. INTRODUCTION

The relief sought by Apple cannot be reconciled with the jury verdict. Apple's waiver, equitable estoppel, and unclean hands theories are premised on the contentions that Samsung breached an obligation to ETSI either by failing to timely disclose its intellectual property rights ("IPR") during development of the UMTS standard or failing to license its "declared essential" patents on fair, reasonable, and non-discriminatory ("FRAND") terms. The jury specifically considered and rejected each of these contentions in denying Apple recovery for its breach of contract claims. The jury also found that Samsung did not violate Section 2 of the Sherman Antitrust Act by monopolizing one or more technology markets related to the UMTS standard. This finding rules out any relief on unfair competition claims, which the Court has held are not "materially different" from those antitrust claims. In the event and to the extent that the Court denies Samsung's new trial motion, the jury's findings are binding upon the Court and fatal to Apple's contentions here. *See* U.S. CONST. AMEND. VII; *see also, e.g.*, *Dybczak v. Tuskegee Institute,* 737 F.2d 1524, 1526-27 (11th Cir. 1984) ("It is well-settled that where claims at law and equity are joined and the legal claims are tried separately by a jury, the jury's verdict operates as a finding of fact binding on the trial court in its determination of the equitable claims."). But regardless of the verdict, Apple's equitable defenses and claims lack merit.

Apple has not established that a single one of the four elements of implied waiver is met here. *Broadcom v. Qualcomm*, 548 F.3d 1004, 1012 (Fed. Cir. 2008). Apple attempts to rewrite ETSI's rules as to what constitutes IPR that needs to be disclosed and when that IPR needs to be disclosed. As the jury found, Apple failed to demonstrate that Samsung had breached any duty, which is hardly surprising given Apple's failure to present evidence that any person responsible for the disclosure of Samsung's patent applications knew they were essential, yet intentionally delayed their disclosure. Nor did Apple adduce any evidence that Samsung engaged in a "carefully orchestrated scheme" to conceal its patents and thereby hold the industry hostage, the key consideration on which the Federal Circuit upheld the finding of implied waiver in *Broadcom v. Qualcomm*. At bottom, Apple failed to prove that Samsung engaged in the kind of "egregious misconduct" that both the implied waiver doctrine and the unclean hands defense seek to prevent.

For equitable estoppel, Apple, among other things, has failed to show the required detrimental reliance on any misstatement by Samsung.  Apple failed to prove Samsung made any such misstatements, let alone that Apple or even any ETSI technical committee relied on such a misstatement.  The evidence showed that neither Apple nor ETSI would have acted any differently had they known earlier, for example, of any pending Samsung Korean patent application.

Finally, as to Apple's unfair competition counterclaim, the jury found that Apple had failed to demonstrate any underlying antitrust violation.  Apple failed to prove its claims that:  there exists a relevant technology market; that Samsung exercised market power by maintaining above-market prices; that Samsung's offer for a FRAND license exceeded market norms; and that Samsung's alleged misconduct damaged Apple.  In view of the fact that Apple's antitrust claims fail, so too must its unfair competition counterclaim.

As a result, all of Apple's requests for equitable relief in this case should be denied. Apple's nearly identical claims have already been rejected at the ITC.[1]

## II.     STATEMENT OF FACTS

ETSI, the European Telecommunications Standards Institute ("ETSI"), publishes an Intellectual Property Rights ("IPR") Policy, which contains the following provision:

> 4.1 Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

(PX74.2.) Clause 4.1 requires that ETSI members, like Samsung or Apple, make "reasonable endeavors" to disclose its Essential IPR in a timely fashion and that Samsung draw the attention of ETSI to IPR relevant to the standard.  Although ETSI requests that members inform it of essential IPRs in a "timely" fashion, ETSI members have never agreed on a definition of "timely" under the policy.  (*See* DX613.008-009.)  Only "Intentional Delay" has been defined as a breach of the ETSI IPR Policy.  (DX613.008-009.)

ETSI's IPR Policy also requires that, under Clause 6.1, members must be prepared to

---

[1]  Declaration of Victoria Maroulis ("Maroulis Decl."), Ex. 9 (*Certain Electronic Devices*, Inv. No. 337-TA-794, Initial Determination at 470-487 (September 14, 2012)).

license Essential IPR on FRAND terms and conditions.  (PX74.3.)  "Essential" is defined under the Policy as necessary to perform a standard.  (PX74.5.)  The definition of "IPR" specifically excludes confidential information.  (PX74.5.)

Apple tried a number of claims related to its allegations that Samsung committed standards misconduct, including its breach of contract and antitrust claims.  These claims were premised on two theories:  (1) that Samsung's disclosure of the Korean applications to which it patents claim priority were untimely because they were disclosed after the freeze date of the applicable standards; and (2) that Samsung's offer to Apple for a license of Samsung's declared essential patent portfolio was not FRAND.  Apple presented testimony from its experts Dr. Walker, Mr. Donaldson, and Dr. Ordover in support of these claims.  On cross-examination, Walker admitted:

- Confidential information is excluded from the definition of IPR.
- Korean applications may be designated as confidential and he did not know whether Samsung's priority applications were confidential.
- He was not offering an opinion that Samsung intentionally delayed in disclosing its IPR.
- He had no opinion whether or not under Section 14 (Violation of Policy), Samsung violated to the ETSI IPR Policy.

(RT at 3517:6-3526:11.)  Donaldson criticized an offer that Samsung had made to Apple for a license to Samsung's standard essential patents as non-compliant with its FRAND obligations, but did not provide any evidence about other licenses or license offers in the industry.  (RT at 3536:15-3539:20.)

Samsung's expert economist, Dr. Teece, rebutted these claims, testifying regarding published UMTS offer rates, the rates that Samsung paid to third parties for their UMTS portfolios, and calculations to estimate the royalty rate that Samsung charged for its portfolio in cross-licenses.  (RT at 3134:1-3138:1; 3646:17-3647:25.)  Teece also presented empirical evidence demonstrating that ETSI members commonly disclosed their IPR to ETSI after the adoption of the relevant standard.  (RT at 3644:7-3646:12.)

Apple failed to present testimony from the inventors or the individuals that disclosed the Korean patent applications.  Apple also failed to present any testimony from any members of the

02198.51855/4988798.10

-3-  Case No. 11-cv-01846-LHK
**SAMSUNG'S RESPONSE TO  APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER. EQUITABLE ESTOPPEL. UNCLEAN HANDS. AND UNFAIR COMPETITION**

technical committees that considered Samsung's proposals or members of the plenary committee that froze the standards. As a result of Apple's failure to present sufficient evidence, the jury found no breach of contract or antitrust violations—the basis for all of Apple's claims here.

## III.     ARGUMENT

### A.     Apple's Waiver Defense Must Be Denied

To prevail on its waiver defense, Apple must show by clear and convincing evidence that (1) Samsung had a duty to disclose the existence of the Korean patent applications to ETSI prior to the time that the standard was frozen; (2) the Korean patent applications were in fact essential to an ETSI standard; (3) Samsung breached its disclosure duty by failing to timely disclose the Korean patent applications; and (4) appropriate circumstances exist to justify the Court exercising its discretion to hold the '941 and '516 patents are unenforceable against products practicing the ETSI standard. *See Broadcom v. Qualcomm*, 548 F.3d 1004, 1012 (Fed. Cir. 2008) (hereinafter "*Broadcom*"). Apple has failed to present any evidence to support these required elements.

#### 1.     **Apple Has Not Proven that Samsung Had a Duty to Disclose the Korean Applications**

Apple's assertion that Samsung did not timely disclose its IPR rests on a bright line rule that finds no support in the ETSI IPR Policy. Apple relies on Clause 4.1 of the ETSI IPR Policy for the proposition that an IPR disclosure is not timely unless the IPR is disclosed before the adoption of the proposal to which it applies. (Apple's Non-Jury Brief (hereinafter "Br.") at 2-3.) But Apple's interpretation of this provision is erroneous. This provision does not set a deadline for disclosure and simply requires that a member use "its reasonable endeavours" with respect to IPR it "becomes aware of." The provision then goes on to require disclosure, on a "bona fide basis," *i.e.*, in good faith and without deceit, of IPR that might be essential if a proposal submitted by a member is adopted. Apple also incorrectly asserts that the use of the phrase "if the proposal is adopted," necessarily requires disclosure before the proposal has been adopted. This provision simply provides the conditions under which an IPR must be disclosed (if a proposal is adopted), not the time when it must be disclosed (before the proposal is adopted).

Additional evidence further undermines Apple's "bright line" interpretation of Clause 4.1.

02198.51855/4988798.10

-4-                                      Case No. 11-cv-01846-LHK
**SAMSUNG'S RESPONSE TO  APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER. EQUITABLE ESTOPPEL. UNCLEAN HANDS. AND UNFAIR COMPETITION**

First, the ETSI Guide on IPRs explains that ETSI members have never agreed on a definition of what constitutes "untimely" disclosure, but have only agreed that intentional delay is a breach of the ETSI IPR Policy.  (DX613.008-009.)  Second, Apple's interpretation of this rule is not borne out by the actual behavior of ETSI members, which, as Teece testified, commonly do not disclose their IPR before the adoption of the relevant standard.[2]  (RT at 3644:7-3646:12.)  Apple's own RFA responses demonstrate that Apple itself does not see its own post-finalization disclosures as untimely.  (Maroulis Decl., Ex. 11 at RFA 1846; *see also Id*. at RFAs 1824, 1828.)  The Federal Circuit has consistently relied on just such a fact-intensive inquiry into the behavior of members of standard setting organizations ("SSOs") to determine the nature of the obligations owed to the SSOs.  *Broadcom*, 548 F.3d at 1016 (holding that "the JVT participants' understanding of the policies further establishes that the policies imposed disclosure duties on participants (apart from the submission of technical proposals)."); *see also Hynix Semiconductor Inc. v. Rambus Inc.,* 645 F.3d 1336, 1348 (Fed. Cir. 2011) (concluding that SSO members "did not share a clearly defined expectation that members would disclose relevant knowledge they had about patent applications or the intent to file patent applications on technology being considered for adoption as a [] standard").  This is not a matter of "two wrongs do not make a right," as Apple tries to characterize it.  Rather, it is a matter of Apple failing to meet its burden of establishing that the ETSI IPR Policy, by its plain language, or as understood by its members, actually imposes the specific bright line rule on which Apple's entire case hinges.

2. **Apple Has Failed To Show the Korean Patent Applications Were Not Confidential and Therefore Covered By the ETSI IPR Policy**

Apple failed to provide any evidence that Samsung's Korean patent applications were not confidential at the time Samsung made its proposals, and therefore that they even fell within ETSI's definition of IPR, which expressly excludes such confidential information.

---

[2]  Apple implausibly speculates that these companies, including some of the most prolific contributors of technology to the UMTS standard, may not have filed patents related to technology of their proposals.  (RT at 3644:7-3645:13 (analyzing ETSI IPR disclosures of HTC, Nokia, Ericsson, and Motorola).)

In defining "IPR," ETSI's IPR Policy specifically provides that: "[f]or the avoidance of doubt rights relating to get-up, *confidential information*, trade secrets or the like are excluded from the definition." (PX74.5 (emphasis added).)  Although ETSI's IPR Policy separately defines "CONFIDENTIAL INFORMATION" using uppercase letters to denote certain information requested by a committee chairman per Clause 10, this uppercase definition of the phrase does not appear outside of Clause 10—and Clause 10 is unrelated to the Policy's definition of "IPR."  The use of lower case letters indicates that this specialized definition of "CONFIDENTIAL INFORMATION" was not incorporated in the definition of "IPR" and that the term has a generic meaning.  *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.*, 874 F.2d 653, 658 (9th Cir. 1989) (recognizing the importance of capital letters in making terms conspicuous).

Thus, Walker's testimony that Samsung did not comply with Clause 10 to designate its proposal confidential is irrelevant.  (Br. at 8.)  But Walker admitted that Korean applications can be designated confidential and that he did not know whether this application was so designated.  (RT at 3517:14-3518:12.)   Apple thus failed to prove that the Korean applications were IPR under ETSI's IPR Policy and were required to be disclosed.[3]

### 3.  There Is No Evidence That Samsung Intentionally Breached ETSI's IPR Policy

Apple's assertion that "Samsung deliberately failed to disclose its IPR relating to the '941 and '516 patents until after its proposals corresponding to those technologies were adopted" lacks any basis and was rejected by Apple's own expert, a former Chairman of the Board of ETSI.  (Br. at 3.)  Indeed, Walker testified unequivocally that Samsung's conduct did not in any way run afoul of Clause 14, which concerns violations of the ETSI IPR Policy (RT at 3526:4-11) and that he was not offering the opinion that Samsung deliberately or intentionally delayed its disclosure of the Korean patent applications.  (RT at 3520:11-3521:2.)  This last admission alone is fatal to Apple's

---

[3]  The jury's finding of non-infringement also indicates that the patents were not essential to the ETSI UMTS standard and, therefore, that neither Clause 4.1 or 6.1 of the ETSI IPR Policy was applicable to either of them.  (*See* PX74 § 15.7 ("ESSENTIAL" as applied to IPR means that it is not possible . . . to make . . . use or operate EQUIPMENT or METHODS without infringing that IPR"); PX74 § 4.1 (applies only to "ESSENTIAL IPR"); PX74 § 6.1 (same).)

02198.51855/4988798.10

-6-   Case No. 11-cv-01846-LHK
SAMSUNG'S RESPONSE TO  APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER. EQUITABLE ESTOPPEL. UNCLEAN HANDS. AND UNFAIR COMPETITION

1  case because it was the evidence of intentional conduct that led the Federal Circuit in *Broadcom* to
2  uphold the district court's finding of waiver.  548 F.3d at 1022 (finding waiver since the patentee
3  "intentionally organized a plan to shield its patents" from the standards body so that it could later
4  obtain royalties for standards-compliant products).

5        Apple failed to present any evidence that Samsung's conduct was anything but reasonable.
6  Apple accuses Samsung of a deliberate failure to disclose its IPR to ETSI, yet it failed to adduce
7  evidence that anyone involved in the disclosure of these patents intentionally failed to disclose
8  them to ETSI in a timely fashion.  Although Apple deposed Seung Gun Park, the executive who
9  signed Samsung's declarations to ETSI, and the Samsung engineers who attended the relevant
10 ETSI meetings, it failed to offer any of their testimony, let alone testimony suggesting that any
11 Samsung employee acted in a manner inconsistent with the ETSI IPR Policy.  Apple relies on the
12 testimony of Jun Won Lee to show intentionality, but Apple presented no evidence that Mr. Lee
13 had responsibility for disclosure of the patent applications to which the patents in suit claimed
14 priority.  In any event, Mr. Lee's testimony is consistent with a proper reading of the ETSI IPR
15 Policy, namely, that Samsung was not obligated to disclose its patent applications prior to the
16 applicable freeze dates.  (*See* Maroulis Decl., Ex. 10 at 114:17-115:5.)  While Apple relies on
17 testimony that Samsung drafted patent applications that covered aspects of ETSI standards, the
18 ETSI IPR Policy contemplates that parties will seek patents on their proposals and simply requires
19 that the parties commit to licensing such patents on FRAND terms.  (PX74.3.)  As the jury found,
20 Samsung complied with these obligations.

21             4.      **The Circumstances Here Do Not Warrant a Finding of Waiver**
22       Apple's waiver claim should also be rejected because the circumstances are not
23 comparable to those in the *Broadcom* case on which Apple relies.  In that case, Qualcomm
24 asserted patents against Broadcom based on Broadcom's implementation of the Joint Video Team
25 ("JVT") H.264 standard.  "Throughout discovery, motions practice, trial, and even post-trial,
26 Qualcomm adamantly maintained that it did not participate in JVT during development of" that
27 standard.  *Broadcom*, 548 F.3d at 1009.  However, evidence at the end of trial revealed that
28 Qualcomm secretly "participated in the JVT from as early as January 2002, that Qualcomm

1  witnesses . . . and other engineers were all aware of and a part of this participation, and that
2  Qualcomm knowingly attempted in trial to continue the concealment of evidence." *Id.* According
3  to the Court, the goal was to "hold[] hostage the entire industry desiring to practice the H.264
4  standard by insulating its IPR from the JVT so that the JVT would lose the opportunity to
5  mitigate, if not to avoid, Qualcomm's IPR in the development" of the standard. *Id.* at 1009-10.
6       The facts here are not in any way similar to those of *Broadcom*. As the evidence at trial
7  demonstrated, Samsung submitted a general IPR declaration in 1998, long before the standards
8  proposals or patent applications at issue existed, stating that it was prepared to offer licenses to
9  any essential patents on FRAND terms and conditions. (DX549; RT at 3522:1-3523:15.)
10 Samsung also submitted specific IPR declarations disclosing members of the families of the '516
11 and '941 patents again stating that Samsung would be prepared to license these patents families on
12 FRAND terms and conditions to the extent they remained essential. (PX122.) As Apple's own
13 expert confirmed, there is simply no evidence that Samsung intentionally delayed in disclosing its
14 patents to ETSI let alone that Samsung sought to hold the industry hostage by preventing the
15 unlicensed manufacture of UMTS-compliant products. (RT at 3520:11-3521:2.)

    **B.**    **Apple's Equitable Estoppel Defense Must Be Denied**

17      The defense of equitable estoppel requires that: (1) the patent holder communicates
18 something in a misleading way to the infringing party about the lack of infringement or about not
19 being sued; (2) the alleged infringer relies upon the misleading communication from the patent
20 holder; and (3) the alleged infringer will be materially harmed if the patent holder is allowed to
21 assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading
22 communication. *A.C. Aukerman Co. v. R.L Chaides Const. Co*., 960 F.2d 1020, 1028 (Fed. Cir.
23 1992) (*en banc*).
24      Apple's defense must be rejected because there is no evidence that Apple was aware of any
25 of the representations that Samsung made to the SSO regarding the patents in suit. The Federal
26 Circuit has affirmed the rejection of an equitable estoppel defense where the alleged infringer
27 conceded it was unaware of the asserted patent or any statements to an SSO prior to the patentee's
28 offer to license its patent. *Winbond Electronics Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363,

1374-75 (Fed. Cir. 2001).  In *Winbond*, the alleged infringer asserted that Atmel's patent was unenforceable under the doctrine of equitable estoppel because Atmel's predecessor had made qualified statements to an SSO that it would offer licenses to its patent on royalty-free terms.  *Id*. at 1374.  However, the accused infringer admitted it was unaware of the patent before the license offer and the Federal Circuit held that it had failed to prove its equitable estoppel claim.  *Id*.  As in *Winbond*, Apple does not allege and has offered no evidence that it was aware of or reasonably relied on Samsung's alleged delay in disclosing the '516 or '941 patents to ETSI.

For the reasons set forth with respect to waiver above, Samsung did not engage in any misconduct relating to timely disclosure of essential IPR or commitment to license on FRAND terms and conditions—let alone the type of misleading communication necessary for equitable estoppel relief to be granted.  There is no bright line rule that ETSI members must disclose essential IPR before a proposal is adopted.

Even crediting Apple's theory that it can rely on Samsung's representations to ETSI as a basis for its equitable estoppel theory, Apple presented no evidence that ETSI actually relied on alleged failure to timely disclose its patent applications to ETSI.  Apple's only evidence on this issue was Dr. Ordover's testimony, who had no factual knowledge of what occurred and simply speculated that Samsung's proposal "*may* not have been chosen but for its conduct."  (RT at 3578:23-3579:19.)  This speculation is not sufficient for Apple to meet its burden of proving by clear and convincing evidence that ETSI (let alone Apple) relied on any alleged failure to timely disclose its patent applications to ETSI.

Moreover, given that Samsung promised to license its declared essential UMTS patents on FRAND terms and conditions (*see* PX122) and has offered such a license to Apple (*see* PX80), Apple cannot possibly establish that Samsung made a misrepresentation regarding its FRAND commitments or that Apple detrimentally relied on any such misrepresentation.  As Dr. Teece explained, Samsung's license offer was within the range of published rates in the industry, Samsung's licenses to other parties' portfolios, and the estimated rates that Samsung charged others.  (RT at 3128:22-3139:12, 3646:21-3647:2.)  After hearing the evidence, the jury rejected Apple's breach of contract theory based on Clause 6.1 of the ETSI IPR Policy.

### C. Apple's Unclean Hands Defense Must Be Denied

Apple has failed to prove its affirmative defense of unclean hands because it has not shown, by clear and convincing evidence, that Samsung intentionally and in bad faith deceived ETSI and breached its duties to ETSI. Accordingly, its defense lacks substance and must be rejected. *See Certain L-Lysine Feed Products*, Investigation No. 337-TA-571, 2008 WL 3872209, *66 (U.S.I.T.C. 2008).

Unclean hands bars the court from exercising its equitable power only where the patent holder "has acted fraudulently, or [] by deceit or any unfair means has gained an advantage," and such inequitable conduct bears "an immediate and necessary relation" to the equity that the patent holder seeks. *Id.* at *65. The defense applies only in cases of "particularly egregious misconduct." The inequitable conduct doctrine grew out of the doctrine of unclean hands, and the level of intentionality that must be shown to prove unclean hands is analogous to that required by the Federal Circuit to prove inequitable conduct: the infringer must prove that the patent holder had a "specific intent to deceive." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

ETSI's Rules do not impose or enforce any action against a Member who might have made an untimely disclosure, unless it arises from an "Intentional Delay." (DX613.008-009.) Apple has introduced no evidence that Samsung intentionally delayed making its declarations to ETSI, and Apple's own expert on the ETSI IPR Policy, Walker, made clear that he was not offering any opinion that Samsung had intentionally delayed. (RT at 3520:11-3521:2.)

Similarly, Apple presents no evidence that Samsung reneged on its promise to be prepared to license its patents on FRAND terms. (*See* Br. at 11.) To the contrary, the evidence demonstrated that Samsung made such an offer to Apple and that the offer was within market norms. (PX80; RT at 3128:22-3139:12, 3646:21-3647:2.)

### D. Apple's Unfair Competition Counterclaim Must Be Denied

California courts have made clear that the harm that the Unfair Competition Laws ("UCL") seeks to prevent is founded in antitrust: Apple fails to note that with respect to its claim, "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or

spirit of one of those laws." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular*, 20 Cal. 4th 163, 186-87 (1999). This Court previously found Apple's UCL claim not "materially different" than its antitrust claim. Dkt. 305, at 13. Yet Apple seeks judgment on its claim if the Court reverses the jury on Apple's *contract* claim, and nowhere mentions its similarly rejected antitrust claim. The jury's rejection of Apple's antitrust claim resolves the factual issues underpinning its UCL claim and Apple's request to overturn those factual findings here is meritless.

As a threshold matter, Apple failed to demonstrate a relevant market in which Samsung's patents faced competition. Apple's economics expert offered no substantive testimony on the relevant antitrust market, instead relying on Apple's technical experts. (RT at 3582:3-8.) Those experts were unqualified to offer economic opinion (*see Berlyn, Inc. v. Gazette Newspapers*, *Inc.*, 214 F. Supp. 2d 530, 537 (D. Md. 2002) (excluding antitrust expert testimony from engineer whose qualifications were "completely devoid of specific education, training, or experience in economics or antitrust analysis")), and they in fact offered none of the economic evidence necessary to establish a relevant antitrust market. (RT at 3582:3-8; 3460:15-25); *Unitherm Food Sys., Inc. v. Swift-Eckert, Inc.*, 375 F.3d 1341, 1364 (Fed. Cir. 2004) ("[R]eliance upon technological, rather than economic, substitution is therefore a fatal flaw in establishing [a] proposed market definition . . . ."), *reversed on other grounds*, 564 U.S. 394 (2006). Their testimony on relevant market was that technological alternatives to Samsung's patents existed, not that those alternatives were commercially viable. (RT at 3582:3-8; 3460:15-25.) Apple provided no reason to believe its alleged alternatives were economically part of the same market.

Apple also failed to provide any proof of Samsung's monopoly power. Regardless of the initial licensing offer that Samsung made, direct proof of monopoly power requires proof that Samsung raised prices substantially above a competitive level and excluded competition. *United States v. Grinnell*, 384 U.S. 563, 571 (1966); *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001). Apple only points to the fact that Samsung made a 2.4% offer, which Apple never paid. This is not proof of monopoly power. *See Unitherm*, 375 F.3d at 1364 (noting that a failure to secure licensees indicates a lack of pricing power). With respect to indirect proof, Apple provides no evidence at all of Samsung's market share amongst other substitute technologies and

1 no evidence regarding other competitors.

2 Apple also has not demonstrated that Samsung engaged in anticompetitive conduct. With respect to Samsung's license offer, the 2.4% rate was in line with royalty rates throughout the industry. (DX630; RT at 3130:10-3137:12; 3646:21-3647:25.) Nor was this offer unreasonable because Samsung's patents were worthless, as Apple contends. Samsung opted to receive cross-licenses to others' standard essential patents. Dr. Teece testified this is standard industry practice, and only demonstrates Samsung's preference to be paid in kind, not that Samsung licensed its patents for free. (RT at 3133:1-3134:20.) Finally, Apple has introduced no evidence nor cited any precedent demonstrating that a mere request for injunctive relief constitutes anticompetitive conduct.

Apple also has not shown any causation between the alleged anticompetitive conduct and its unquantified attorney fees. Walker admitted that ETSI technical meeting participants do not disclose IPR during technical meetings, (RT at 3521:11-25), and ETSI documents make clear that "Technical Bodies are not the appropriate place to discuss IPR Issues." (DX613.015.) Thus even assuming Samsung violated a contractual duty (it did not), there is no evidence that, but for Samsung's conduct, ETSI would not have incorporated Samsung's proposals into the standard. Further, because Apple did not demonstrate that any producers were excluded from any market as a result of Samsung's alleged unfair conduct, there has been no harm to competition, and no cognizable antitrust damage to Apple. *See Cel-Tech*, 20 Cal.4th at 186 ("Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws.").

## IV. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court enter judgment in favor of Samsung on Apple's non-jury claims including waiver, equitable estoppel, unclean hands, and unfair competition.

| | | |
|---|---|---|
| 1 | DATED: October 5, 2012 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | |
| 4 | | By */s/ Victoria Maroulis* |
| 5 | | Victoria F. Maroulis<br>Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |

02198.51855/4988798.10

-13-   Case No. 11-cv-01846-LHK

**SAMSUNG'S RESPONSE TO APPLE'S BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER. EQUITABLE ESTOPPEL. UNCLEAN HANDS. AND UNFAIR COMPETITION**