# EXHIBIT 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6  CORPORATION,                 )
                                )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,        )
                                )  AUGUST 16, 2012
8         VS.                    )
                                )  VOLUME 10
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  PAGES 2966-3386
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                              )
              DEFENDANTS.       )
15 _____

16            TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17            UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
24                         IRENE RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF         MORRISON & FOERSTER
      APPLE:                    BY:  HAROLD J. MCELHINNY
 3                                   MICHAEL A. JACOBS
                                     RACHEL KREVANS
 4                             425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT   WILMER, CUTLER, PICKERING,
      APPLE:                    HALE AND DORR
 7                             BY:  WILLIAM F. LEE
                              60 STATE STREET
 8                            BOSTON, MASSACHUSETTS  02109

 9                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:    QUINN, EMANUEL, URQUHART,
                                OLIVER & HEDGES
12                             BY:  CHARLES K. VERHOEVEN
                              50 CALIFORNIA STREET, 22ND FLOOR
13                            SAN FRANCISCO, CALIFORNIA  94111

14                             BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
16                            REDWOOD SHORES, CALIFORNIA  94065

17                             BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
19                            LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

<pre>
 1                      INDEX OF WITNESSES

 2     DEFENDANT'S

 3     TIMOTHY SHEPPARD
            DIRECT EXAM BY MR. PRICE          P. 3001
 4          CROSS-EXAM BY MR. JACOBS          P. 3012

 5     MICHAEL WAGNER
            DIRECT EXAM BY MR. PRICE          P. 3018
 6          CROSS-EXAM BY MR. JACOBS          P. 3057
            REDIRECT EXAM BY MR. PRICE        P. 3073
 7
       RAMAMIRTHAM SUKUMAR
 8          DIRECT EXAM BY MS. MAROULIS       P. 3092
            CROSS-EXAM BY MR. SELWYN          P. 3095
 9
       VINCENT O'BRIEN
10          DIRECT EXAM BY MS. MAROULIS       P. 3101
            CROSS-EXAM BY MR. SELWYN          P. 3113
11
       DAVID TEECE
12          DIRECT EXAM BY MS. MAROULIS       P. 3123
            CROSS-EXAM BY MR. MUELLER         P. 3141
13

14     PLAINTIFF'S REBUTTAL:

15     TONY BLEVINS
            DIRECT EXAM BY MR. LEE            P. 3164
16
       EMILIE KIM
17          DIRECT EXAM BY MR. SELWYN         P. 3173
            CROSS-EXAM BY MR. JOHNSON         P. 3185
18
       PAUL DOURISH
19          DIRECT EXAM BY MR. SELWYN         P. 3188

20     TONY GIVARGIS
            DIRECT EXAM BY MR. SELWYN         P. 3220
21
       MANI SRIVASTAVA
22          DIRECT EXAM BY MR. SELWYN         P. 3287
            CROSS-EXAM BY MR. JOHNSON         P. 3317
23          REDIRECT EXAM BY MR. SELWYN       P. 3320

24     HYONG KIM
            DIRECT EXAM BY MR. LEE            P. 3322
25
</pre>

INDEX OF EXHIBITS

                                    MARKED          ADMITTED

PLAINTIFF'S

180                                                 3016
186                                                 3067
195                                                 3070
35                                                  3071
80                                                  3144
121                                                 3203
112                                                 3206
125                                                 3234
117                                                 3235
116                                                 3236
91                                                  3246
119                                                 3307
118                                                 3308
120                                                 3309


DEFENDANT'S

676                                                 3004
753                                                 3008
754.502, PAGE 2                                     3026
781                                                 3032
1018                                                3037
69                                                  3043
78                                                  3169
647                                                 3185
648                                                 3186

1    CASE?

2    A    I WAS ASKED TO COMPUTE THE REASONABLE ROYALTY

3    DAMAGES DUE SAMSUNG FROM APPLE FOR USE OF ITS UMTS

4    PATENTS.

5    Q    AND THOSE ARE '941 AND '516 PATENTS?

6    A    THAT IS CORRECT.

7    Q    HAVE YOU PREPARED A SLIDE TO SUMMARIZE YOUR

8    CALCULATION?

9    A    I HAVE.

10   Q    LET'S TAKE A LOOK AT SDX 3963.005.

11              DR. TEECE, WHAT DOES THIS SLIDE

12   ILLUSTRATE?

13   A    THE HIGHLIGHTED YELLOW IS THE REASONABLE

14   ROYALTY RATES THAT I HAVE DETERMINED ARE

15   APPLICABLE.  IT'S A RANGE.  AT A MINIMUM END IT'S 2

16   PERCENT.  AT THE UPPER END IS 2.75 PERCENT OF NET

17   SALES.

18              ON THE LEFT I HAVE THE INFRINGING SALES

19   OF IPHONES AND IPADS, 12.23 BILLION OF IPHONES, AND

20   2.29 BILLION OF IPADS.

21              AND THAT LEADS ME TO A TOTAL DAMAGES

22   NUMBER ON THE FAR RIGHT WHICH RANGES FROM, AT THE

23   LOW END, 290 MILLION, AT THE RIGHT HAND, 399

24   MILLION.

25   Q    SIR, HOW DO YOU CALCULATE THESE REASONABLE

1    ROYALTY AMOUNTS THAT ARE LISTED ON THIS CHART?

2    A    WELL, I -- SINCE THERE WAS NO LICENSE ENTERED

3    INTO BETWEEN APPLE AND SAMSUNG, I HAD TO GO THROUGH

4    AN EXERCISE TO FIGURE OUT WHAT THEY MIGHT HAVE

5    AGREED UPON IF THERE WAS A NEGOTIATION BACK AT

6    ABOUT THE TIME OF FIRST INFRINGEMENT.

7              SO I SET UP SOMETHING CALLED THE

8    HYPOTHETICAL NEGOTIATION AS A FRAMEWORK FOR

9    DETERMINING WHAT THE REASONABLE ROYALTIES BASE

10   WOULD BE.

11   Q    AND WHAT IS THE BASE THAT YOU HAVE USED FOR

12   THE PURPOSES OF THIS ANALYSIS.

13   A    YES, THE ROYALTY BASE, BECAUSE IF YOU HAVE A

14   RATE, IT'S NO GOOD TO YOU WITHOUT A BASE, THE BASE

15   IS THE NET SALES OF THE INFRINGING PRODUCTS, AND

16   THE NET SALES ARE BASICALLY THE SALES NUMBERS MINUS

17   A FEW RETURNS.  SO IT'S BASICALLY THE SALES OR

18   REVENUE NUMBERS FOR THE PRODUCTS IN QUESTION.

19   Q    WHAT PERIOD OF TIME DID YOU ASSUME FOR THE

20   PURPOSES OF THIS ANALYSIS IN CALCULATING THE

21   ROYALTY BASE?

22   A    THE DATES ARE AT THE TOP THERE FOR.  FOR THE

23   IPHONE, IT WAS POST SEPTEMBER 9TH, 2010.  FOR THE

24   IPADS, IT WAS POST APRIL 27TH, 2011.

25   Q    SIR, LET'S TAKE THESE COMPONENTS ONE AT A

```
 1    TIME.
 2              TURNING TO THE ROYALTY BASE, HOW DID YOU
 3    DETERMINE THE NET SALES PRICE OF A PRODUCT WAS THE
 4    APPROPRIATE ROYALTY BASE?
 5    A    WELL, I LOOKED AT TWO THINGS.  ONE IS INDUSTRY
 6    PRACTICE.  IT'S VERY COMMON TO STATE A LICENSE AS A
 7    PERIOD OF TIME OF THE SALES PRICE OF THE PRODUCT.
 8              SECONDLY, IN THIS CASE I LOOKED AT UMTS
 9    TECHNOLOGY AND HOW IT IMPACTED SALES OF THE PRODUCT
10    AND TOOK THAT INTO ACCOUNT AS WELL.
11    Q    DID YOU PREPARE ANY SLIDES TO ILLUSTRATE THE
12    VALUE CONFERRED BY THE UMTS TECHNOLOGY?
13    A    I DID.
14    Q    LET'S TAKE A LOOK AT SDX 3963.006, PLEASE.
15              CAN YOU PLEASE DESCRIBE FOR THE JURY WHAT
16    THESE SLIDES ILLUSTRATE.
17    A    YES.  I TRIED TO GET A CONTROL OR AN
18    EXPERIMENT AFTER EXPERIMENT, IF YOU WILL, FOR
19    WHAT'S REALLY THE VALUE OF UMTS TECHNOLOGIES
20    EMBEDDED IN THE APPLE PRODUCTS.
21              AND FORTUNATELY THE IPOD TOUCH IS A
22    PRODUCT IN THE MARKET THAT HAS MOST OF THE FEATURES
23    IN THE IPHONE BUT WITHOUT THE PHONE FEATURE AND
24    WITHOUT THE CONNECTIVITY ASSOCIATED WITH UMTS
25    TECHNOLOGY.
```

3128

```
 1                AND AS YOU CAN SEE, THERE'S A SIGNIFICANT

 2     PRICE PREMIUM BETWEEN THE IPOD AND THE IPHONE.  IN

 3     FACT, FOR THE TWO DIFFERENT MODELS I LOOKED AT,

 4     IT'S EXACTLY 400, THAT'S APPLE'S PRICING, THAT'S

 5     NOT TAKING INTO ACCOUNT ANY SERVICE DISCOUNTS OR

 6     DISCOUNTS YOU MAY GET THROUGH A SERVICE PROVIDER.

 7                BUT THERE'S A VERY SUBSTANTIAL PRICE

 8     PREMIUM ASSOCIATED WITH THE UMTS TECHNOLOGY WHICH I

 9     THINK IS WELL CAPTURED BY LOOKING AT THAT PRICE

10     DIFFERENTIAL.

11     Q    AND HAVE YOU PREPARED ANY ADDITIONAL SLIDES

12     WITH RESPECT TO THE IPAD PRODUCT?

13     A    YES.  SO I'VE DONE A SIMILAR COMPARISON WITH

14     RESPECT TO THE IPAD.

15     Q    LET'S TAKE A LOOK AT 3963.07.

16     A    YES.  THE PRICE DIFFERENCE IS NOT QUITE AS

17     GREAT, BUT IF YOU LOOK AT AN IPAD THAT'S JUST GOT

18     THE WI-FI FEATURES OR THE ONE WITH UMTS, THEN

19     THERE'S A $177 OR $180 DIFFERENCE IN PRICE BY

20     HAVING THAT EXTRA FUNCTIONALITY ASSOCIATED WITH THE

21     UMTS TECHNOLOGY.

22     Q    THANK YOU, SIR.

23                TURNING NOW TO ROYALTY RATES, HOW DID YOU

24     DETERMINE THAT THE ROYALTY RATES SHOULD BE BETWEEN

25     2 PERCENT AND TWO AND THREE QUARTERS PERCENT?
```

4129

```
1    A    AS AN ECONOMIST, I LIKE TO LOOK AT MARKET

2    TRANSACTIONS.  THAT'S USUALLY THE BEST MEASURE OF

3    VALUE.  SO I LOOKED AT LICENSING AGREEMENTS THAT I

4    FOUND IN THE RECORD OF THE CASE TO SEE WHAT I COULD

5    GLEAN FROM THOSE IN TERMS OF WHAT A REASONABLE

6    ROYALTY MIGHT BE.

7    Q    SIR, I'M NOW GOING TO TURN YOUR ATTENTION TO

8    AN EXHIBIT THAT IS ONLY GOING TO BE SHOWN TO THE

9    JURY AND THE COURT AND YOURSELF.  IT HAS HIGHLY

10   CONFIDENTIAL INFORMATION OF THIRD PARTIES.

11             PLEASE TURN TO EXHIBIT DX 630 IN YOUR

12   BINDER.

13   A    OKAY.

14   Q    WHAT IS EXHIBIT DX 630?

15   A    I'M THERE.

16   Q    HAVE YOU PREPARED THIS EXHIBIT?

17   A    I HAVE.

18   Q    WHAT DOES IT SUMMARIZE?

19   A    IT SUMMARIZES THE NUMBER OF LICENSING

20   AGREEMENTS, IN THIS CASE I'M LOOKING AT THE SAMSUNG

21   LICENSING AGREEMENTS THAT I WAS ABLE TO FIND

22   INFORMATION ON, THAT I COULD ACTUALLY GET AHOLD OF

23   THE LICENSE AGREEMENT AND DISTILL CERTAIN

24   INFORMATION FROM IT.

25             MS. MAROULIS:  YOUR HONOR, I MOVE EXHIBIT
```

```
 1    DX 630 INTO EVIDENCE.

 2              THE COURT:  ANY OBJECTION?

 3              MR. MUELLER:  NO OBJECTION.

 4              THE COURT:  IT'S ADMITTED.

 5              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

 6              630, HAVING BEEN PREVIOUSLY MARKED FOR

 7              IDENTIFICATION, WAS ADMITTED INTO

 8              EVIDENCE.)

 9    BY MS. MAROULIS:

10    Q    SIR, TURNING YOUR ATTENTION TO ROW 12 OF

11    CONFIDENTIAL EXHIBIT DX 630, HAVE YOU CONSIDERED

12    THIS LICENSE THAT I'M POINTING YOU TO IN YOUR

13    ANALYSIS?

14    A    YES, I HAVE.

15    Q    WHEN DID THE PARTIES ENTER INTO THIS LICENSE?

16    A    THIS ONE WAS ENTERED INTO IN 2004.

17    Q    WHAT IS BEING LICENSED HERE?

18    A    A NUMBER OF TECHNOLOGIES, INCLUDING UMTS

19    TECHNOLOGY.

20    Q    AND WHERE DID THE JURY FIND THE FINANCIAL

21    TERMS OF THE AGREEMENT?

22    A    IN THE COLUMN SECOND FROM THE RIGHT.

23    Q    OKAY.  DID THOSE TERMS SUPPORT YOUR CONCLUSION

24    THAT THE NET SALE PRICE IS THE APPROPRIATE ROYALTY

25    BASE FOR ASSESSING REASONABLE ROYALTY?
```

1    A    YES, IT DOES.  IT'S --

2    Q    IT SUPPORT --

3    A    UNDER THE PAYMENTS SECTION THERE, YES, YOU CAN

4    HIGHLIGHT IT ON THE TOP LINE, BUT IT'S A PERIOD OF

5    TIME OF NET SELLING PRICE THAT IS IDENTIFIED THERE

6    THAT GIVES ME A CLUE, AT LEAST WITH RESPECT TO THAT

7    PARTICULAR PROVIDER OF UMTS TECHNOLOGY, AS TO WHAT

8    A REASONABLE ROYALTY RATE IS.  IT'S EXPRESSED AS A

9    PERIOD OF TIME OF NET SALES.

10   Q    AND DOES IT SUPPORT YOUR ROYALTY RATE AS WELL?

11   A    YES.  IT'S ABOVE THE ROYALTY RATE RANGE THAT I

12   HAVE CHOSEN, BUT IT CERTAINLY IS CONSISTENT WITH

13   THE HIGH END OF IT.

14   Q    PLEASE TAKE A LOOK AT ROW 29 OF DX 630.  HAVE

15   YOU CONSIDERED THIS LICENSE IN SUPPORTING YOUR

16   ANALYSIS?

17   A    YES, I HAVE.

18   Q    HOW DOES THIS LICENSE SUPPORT YOUR

19   DETERMINATION OF ROYALTY BASE AND ROYALTY RATE?

20   A    WELL, ONCE AGAIN, IF YOU LOOK AT THE PAYMENTS

21   SECTION, THERE IS A REASONABLE -- OR THERE IS A

22   ROYALTY RATE AS A PERIOD OF TIME OF SALES IT'S

23   SPECIFIED.

24           MAYBE YOU CAN HIGHLIGHT THAT.  AND IT IS

25   WITHIN THE RANGE, THERE'S A NUMBER IN THE MIDDLE,

```
1    THERE'S A PERCENTAGE.  IT'S A PERCENTAGE OF NET

2    SALES.  THERE'S A NUMBER THERE THAT IS WITHIN MY

3    RANGE THAT I DESCRIBED EARLIER TO THE JURY.

4    Q    OKAY.  YOU CAN TAKE DOWN THE EXHIBIT.

5            DOES THIS EXHIBIT SET FORTH THE ROYALTY

6    RATE FOR SAMSUNG'S ESSENTIAL PATENTS?

7    A    NO, IT DOESN'T.  THESE ARE WHAT SAMSUNG HAS

8    PAID FOR THE USE OF OTHER PEOPLE'S TS TECHNOLOGY,

9    SO IT'S NOT IDEAL, BUT I THINK IT'S INDICATIVE.

10   Q    CAN YOU DESCRIBE HOW IT'S NONETHELESS RELEVANT

11   TO YOUR ANALYSIS?

12   A    HOW IT IS RELEVANT TO MY ANALYSIS?

13   Q    YES.

14   A    YES, I MEAN, THERE'S A GENERAL MARKETPLACE OUT

15   THERE FOR TECHNOLOGY, AND WHETHER YOU'RE THE BUYER

16   OR THE SELLER FOR UMTS TECHNOLOGY, THEY TEND TO GO

17   DOWN IN APPROXIMATELY THE SAME RANGE.

18   Q    SO HOW MANY SAMSUNG CROSS-LICENSES HAVE YOU

19   ANALYZED IN THIS CASE?

20   A    WELL, I WAS ABLE TO GET SOME INFORMATION ON

21   TWO SAMSUNG CROSS-LICENSES WHERE SAMSUNG WAS

22   LICENSING OUT ITS UMTS TECHNOLOGY.  THE ONES I

23   LOOKED AT, THOSE WERE LICENSING IN.  BUT I WAS ABLE

24   TO GET INFORMATION ON TWO LICENSES WHERE SAMSUNG

25   WAS LICENSING OUT ITS UMTS.
```

```
 1     Q    WE'RE GOING TO SHOW TO THE JURY NOW THE

 2     CONFIDENTIAL DEMONSTRATIVE 3963.019.  ONCE THE JURY

 3     SEES THAT, AND WE CANNOT SHOW IT TO THE REST OF THE

 4     WORLD, CAN YOU PLEASE EXPLAIN THIS SLIDE TO THE

 5     JURY?

 6     A    YES.  THE FIRST POINT I'VE GOT TO GET ACROSS

 7     IS THAT MOST LICENSES ARE, IN FACT, CROSS-LICENSES,

 8     BY WHICH I MEAN ONE PARTY WILL LICENSE OUT

 9     TECHNOLOGY AND THEY WILL LICENSE BACK IN

10     TECHNOLOGY.

11          MONEY IS USED AS A BALANCING PAYMENT, BUT

12     THE PRIMARY CONSIDERATION IN GOING BACK AND FORTH

13     ISN'T MONEY.  IT'S INTELLECTUAL PROPERTY RIGHTS.

14     IT'S CALLED A CROSS-LICENSE.

15          SO THE CHALLENGE HERE IS FOR ME TO FIGURE

16     OUT, BECAUSE I'M LOOKING AT CALCULATING DAMAGES,

17     WHAT APPLE WOULD PAY SAMSUNG FOR ONE LICENSE, I'VE

18     GOT TO TRY AND FIGURE OUT FROM THE CROSS-LICENSE

19     WHAT THE VALUE OF THE ONE-WAY LICENSE WOULD BE.  SO

20     THERE'S A SIMPLE EQUATION HERE.

21     Q    SIR, IF I MAY REMIND YOU NOT TO MENTION THE

22     NUMBERS PUBLICLY?

23     A    OKAY.

24     Q    THERE'S SOME THIRD PARTIES IN THE AUDIENCE?

25     A    OKAY.
```

1    Q    GO AHEAD.

2    A    BASICALLY IF I KNOW THE ROYALTY BASE, WHICH I

3    DO IN THIS CASE, AND IF I KNOW WHAT THE STANDARD

4    ROYALTY RATE IS FOR THE OTHER PARTY, I CAN ESTIMATE

5    WHAT SAMSUNG'S RATE IS IF I ALSO KNOW WHAT THE

6    BALANCING PAYMENT IS.

7         SO IN THIS CASE, I'VE JUST SET UP THE

8    PROBLEM.  I'M TRYING TO FIGURE OUT WHAT SAMSUNG'S

9    IMPLIED RATE IS, AND THAT'S A SIMPLE EQUATION THAT

10   I LOOKED AT, AND THE NEXT SLIDE GIVES THE ANSWER.

11   Q    LET'S TAKE A LOOK AT THE NEXT CONFIDENTIAL

12   SLIDE, 3963.020.  DOES THIS SLIDE SHOW THE ROYALTY

13   RATE THAT YOU ANALYZED?

14   A    YES, THAT IS THE IMPLIED OR ESTIMATED RATE

15   THAT I GET FROM THAT PIECE OF ANALYSIS, THREE

16   PERCENTAGE POINTS OF NET SALES, WHICH IS SLIGHTLY

17   ABOVE MY RANGE OF 2 TO 2.75.

18   Q    IS THIS NUMBER CONSISTENT WITH THE INDUSTRY

19   LICENSES YOU LOOKED AT EARLIER?

20   A    IT IS.

21   Q    SIR, HAVE YOU PREPARED A SLIDE SHOWING WHAT

22   SAMSUNG PROVIDED TO THE -- IN THE CROSS-LICENSE TO

23   THE OTHER SIDE?

24   A    YES.

25   Q    AND IS THAT THE SLIDE, CONFIDENTIAL SLIDE

```
1    3963.022?

2    A    YES.

3    Q    CAN YOU PLEASE EXPLAIN TO THE JURY WHAT YOU

4    EXPRESSED IN THIS SLIDE WITHOUT MENTIONING THE

5    NUMBERS?

6    A    YES, THIS ANALYTICAL FRAMEWORK ALSO ENABLES ME

7    TO VALUE THE LICENSING RIGHTS THAT ARE TRADED AND

8    TO SHOW IT IN COMPARISON TO THE BALANCING PAYMENTS.

9              AND AS YOU CAN SEE, THE PAYMENT IN KIND,

10   IF YOU WILL, OF INTELLECTUAL PROPERTY RIGHTS IS WAY

11   GREATER THAN THE BALANCING PAYMENTS.

12             SO I OFTEN SPEAK OF THE BALANCING

13   PAYMENT, THE CASH AMOUNT THAT TRADES HANDS HERE AS

14   JUST THE TIP OF THE ICEBERG.

15             MY CHALLENGE, OF COURSE, HERE IS TO

16   FIGURE OUT THE VALUE OF THE ICEBERG, NOT JUST THE

17   TIP.

18   Q    WHAT IS THE PRIMARY VALUE THAT SAMSUNG WAS

19   PROVIDING TO ITS COUNTER PARTIES IN ITS LICENSING

20   AGREEMENT?

21   A    THE PRIMARY VALUE IN A CROSS-LICENSE, AND

22   CERTAINLY IN THE CASE OF SAMSUNG'S CROSS-LICENSES,

23   I BELIEVE WAS THE LICENSING RIGHT.

24   Q    AND HOW DOES THE BALANCING RATE COMPARE TO THE

25   VALUE OF THE PATENT RIGHTS PROVIDED BY SAMSUNG?
```

```
1    A    IT'S LOW IN COMPARISON.

2    Q    DID YOU PREPARE, SIR, EXHIBIT DX 631 TO

3    EXPLAIN YOUR ANALYSIS?

4    A    YES.

5    Q    CAN YOU PLEASE CONFIRM IN YOUR BINDER THAT DX

6    631, CONFIDENTIAL EXHIBIT, IS WHAT YOU PREPARED.

7    A    YES.

8         MS. MAROULIS:  YOUR HONOR, WE MOVE DX 631

9    UNDER SEAL, REDACTED, INTO EVIDENCE.

10        THE COURT:  ANY OBJECTION?

11        MR. MUELLER:  NO OBJECTION, YOUR HONOR.

12        THE COURT:  ALL RIGHT.  IT'S ADMITTED.

13        (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

14        631, HAVING BEEN PREVIOUSLY MARKED FOR

15        IDENTIFICATION, WAS ADMITTED INTO

16        EVIDENCE.)

17   BY MS. MAROULIS:

18   Q    SIR, DID YOU PREPARE ANOTHER SLIDE TO

19   ILLUSTRATE A DIFFERENT CROSS-LICENSE AT 3963.024?

20   A    I DID.

21   Q    LET'S TAKE A LOOK, JUST FOR THE JURY, AT THIS

22   SLIDE.  CAN YOU PLEASE EXPLAIN, WITHOUT REFERENCE

23   TO THE NUMBERS, WHAT IS DEPICTED THERE?

24   A    YES.  THIS IS A CROSS-LICENSE WITH ANOTHER

25   PARTY WHERE I WAS LIKEWISE ABLE TO DETERMINE THE
```

```
 1    ROYALTY BASE, AND I WAS ALSO ABLE TO DETERMINE THE

 2    STANDARD RATE FOR THE OTHER PARTY, AS WELL AS THE

 3    BALANCING PAYMENT, AND TOOK IN MATHEMATICALLY FOR

 4    THIS TO GET AN ESTIMATE OF SAMSUNG'S RIGHT RATE.

 5    Q    LET'S TURN TO THE NEXT CONTENTION SLIDE.  IS

 6    THAT THE ROYALTY RATES THAT YOU ANALYZED?

 7    A    YES.  YOU NEED TO CHANGE THE SLIDE THERE, I

 8    THINK.

 9    Q    IT'S 3963.021.  IT'S 025.  I'M SORRY.

10    A    YES.  SO THE ESTIMATED RATE THERE IS 1.74,

11    WHICH IS SLIGHTLY BELOW THE LOW END OF MY 2 TO 2.75

12    RANGE.

13    Q    OKAY.  THANK YOU, RYAN.

14               WE CAN TAKE THOSE DOWN.

15               DR. TEECE, HOW DID YOU ACCOUNT FOR THE

16    FACT THAT THERE ARE TWO PATENTS AT ISSUE HERE AND

17    THESE AGREEMENTS COVER MORE THAN TWO PATENTS?

18    A    YES, I'M COGNIZANT OF THE FACT THAT THIS

19    HYPOTHETICAL LICENSE WOULD BE FOR TWO PATENTS, AND

20    TYPICALLY WITH A CROSS-LICENSE, YOU'RE LICENSING A

21    MUCH LARGER PORTFOLIO.  BUT WHAT STUDIES SHOW IS

22    THAT THE VOLUME OF ANY PORTFOLIO, OR GROUPING OF

23    LICENSES USUALLY COMES DOWN TO THE VALUE OF ONE,

24    TWO, OR THREE OR A HANDFUL SO THAT A SMALL

25    PERCENTAGE OF THE PATENTS IN A LICENSE ARE REALLY
```

1    WHAT DRIVES VALUE IN MOST INSTANCES.

2    Q    LET'S TAKE A LOOK AT SLIDE 3963.027.  DOES

3    THIS SLIDE SUMMARIZE WHAT YOU JUST EXPLAINED ABOUT

4    THE VALUE?

5    A    YES.  WHAT I'M DOING IN THIS CHART IS LOOKING

6    AT SOME WHAT ARE CALLED PLUS FACTORS OR MINUS

7    FACTORS, THINGS THAT WOULD TEND TO PRESS THE RATE

8    DOWNWARDS OR RAISE IT UPWARDS.

9         AND IF I BEGIN AT THE BOTTOM THERE, I'M

10   COMPARING A BENCHMARK OF A MARKETPLACE LICENSE AND

11   I'M SAYING, OKAY, HOW DOES THAT INFORM ME WITH

12   RESPECT TO WHAT THE DAMAGES RATE WOULD BE HERE,

13   WHAT THE REASONABLE ROYALTY RATE WOULD BE AND I'M

14   SAYING SINCE THIS IS NOT A FULL PORTFOLIO, THIS

15   WOULD BE SOME DISCOUNT.  THAT'S WHY THERE'S THE RED

16   MINUS SIGN.  BUT AT THE SAME TIME THERE'S TWO

17   OFFSETS FACTORS THAT I THINK FULLY ACCOUNT FOR THAT

18   DISCOUNT OR ESSENTIALLY NEUTRALIZE IT.

19   Q    THANK YOU, SIR.  YOU HEARD DR. O'BRIEN HERE

20   TESTIFYING ABOUT GEORGIA PACIFIC ANALYSIS.  DID YOU

21   DO ONE AS WELL?

22   A    I DID.  BUT CAN I FIRST EXPLAIN THESE OTHER

23   FACTORS.

24   Q    YES, GO AHEAD.

25   A    OKAY.  THE OTHER FACTORS, HERE I'M REQUIRED TO

```
 1     ASSUME THE PATENTS ARE VALID AND INFRINGED.
 2     TECHNICALLY WHEN THERE'S A MARKET TRANSACTION, YOU
 3     DON'T KNOW FOR SURE IF THE PATENTS ARE VALID AND
 4     INFRINGED, SO LICENSES, WHAT YOU OBSERVE IN THE
 5     BUSINESS WORLD ARE DISCOUNTED RATES BECAUSE YOU'RE
 6     UNCLEAR ABOUT VALIDITY AND INFRINGEMENT.
 7                HERE IN THE COURTROOM, WE KNOW THE
 8     ANSWER.  SO THAT WOULD BE A PLUS FACTOR.
 9                AND THEN ALSO THE LICENSING QUESTION
10     WOULD BE A U.S. ONLY LICENSE, AND THEY TYPICALLY
11     COMMAND A PREMIUM OVER A WORLDWIDE LICENSE BECAUSE
12     THE ROYALTY BASE WILL BE SMALLER.
13     Q    THANK YOU, SIR.  TURNING TO MY QUESTION OF
14     GEORGIA PACIFIC ANALYSIS, DID YOU CONDUCT ONE AS
15     WELL?
16     A    YES, I DID.
17     Q    AND DID CONDUCTING GEORGIA PACIFIC ANALYSIS
18     CONFIRM YOUR FINDINGS THROUGH THE MARKET DATA
19     RESEARCH THAT YOU PERFORMED?
20     A    YES, THE GENERAL FRAMEWORK I'M USING IS
21     GEORGIA PACIFIC, BUT I DID LOOK AT SOME OTHER
22     FACTORS SUGGESTED IN THE FRAMEWORK, AND I DO
23     BELIEVE THAT THEY'RE CONFIRMATORY.
24     Q    CAN YOU GIVE US A FEW FACTORS THAT YOU LOOKED
25     AT AND BRIEFLY SUMMARIZE THEM FOR THE JURY?
```

```
 1      A    ONE THING YOU'RE ASKED TO LOOK IS WHETHER

 2      THERE ARE ANY CONVOYED SALES, WHETHER THERE'S

 3      PROFITABILITY ATTACHED TO THE PRODUCTS IN QUESTION,

 4      AND I THINK IT'S WELL KNOWN THAT THE IPHONE AND THE

 5      IPOD ARE VERY PROFITABLE PRODUCTS.

 6            IT'S WELL KNOWN THAT THERE'S PASS

 7      THROUGH, OR THAT SUCCESS WITH THE IPHONE AND THE

 8      IPAD, SALES FROM THE ITUNES AND THE APP STORE AND

 9      SO ON AND SO FORTH.

10            SO I THINK THERE ARE SOME OTHER PLUS

11      FACTORS IN GEORGIA PACIFIC.  SO I TOOK COMFORT FROM

12      THOSE OTHER FACTORS.

13            CRITICALLY, GEORGIA PACIFIC REQUIRES YOU

14      TO ASK THIS FUNDAMENTAL QUESTION, WHAT WOULD BE THE

15      REASONABLE ROYALTY IN A HYPOTHETICAL NEGOTIATION IF

16      THE PARTIES HAD ACTUALLY NEGOTIATED RATHER THAN

17      INFRINGED, AND THAT IS THE LINCHPIN OF MY ANALYSIS.

18      Q    SIR, TO SUMMARIZE, WHAT ARE THE DAMAGES THAT

19      APPLE WILL OWE TO SAMSUNG IF IT IS FOUND TO

20      INFRINGE SAMSUNG'S STANDARDS PATENTS?

21      A    IF YOU GO BACK TO MY FIRST SLIDE.

22      Q    3963.005?

23      A    YEAH.  AND I'VE GIVEN A RANGE THERE FROM 290

24      MILLION TO 300 MILLION.

25            MS. MAROULIS:  THANK YOU, SIR.  I PASS
```

```
 1    THE WITNESS.

 2              THE COURT:  OKAY.  IT IS NOW 11:54.  GO

 3    AHEAD, PLEASE.

 4                    CROSS-EXAMINATION

 5    BY MR. MUELLER:

 6    Q    GOOD MORNING, DR. TEECE.

 7    A    GOOD MORNING.

 8    Q    MY NAME IS JOE MUELLER.  I'M GOING TO ASK YOU

 9    A FEW QUESTIONS.

10    A    CERTAINLY.

11    Q    THE FIRST QUESTION IS YOU HAVE NEVER

12    NEGOTIATED A PATENT LICENSE AS A PRINCIPAL

13    NEGOTIATOR; CORRECT?

14    A    THAT'S CORRECT.

15    Q    NOW, YOU'RE HERE TODAY TO DISCUSS TWO PATENTS;

16    CORRECT?

17    A    YES.

18    Q    I NOTICED DURING YOUR DIRECT EXAMINATION YOU

19    DIDN'T USE THE WORD "FRAND;" CORRECT?

20    A    CORRECT.

21    Q    YOU KNOW WHAT THAT WORD MEANS?

22    A    YES, I DO.

23    Q    IT MEANS FAIR, REASONABLE, AND

24    NON-DISCRIMINATORY LICENSING; CORRECT?

25    A    THAT'S RIGHT.
```

1    Q    IS THAT RIGHT?

2    A    THAT'S RIGHT.  THE MIDDLE WORD, THE SECOND

3    LETTER IS R, REASONABLE, WHICH IS WHAT I'VE DONE.

4    Q    AND FRAND PATENTS ARE A SPECIAL CATEGORY OF

5    PATENTS; CORRECT?

6    A    WELL, FRAND LICENSING ARRANGEMENTS ARE -- CAN

7    BE, YES.

8    Q    AND COMPANIES MAKE FRAND COMMITMENTS AS PART

9    OF A SPECIAL PROCESS CALLED STANDARDS SETTING;

10   CORRECT.

11   A    THAT'S CORRECT.

12           MS. MAROULIS:  OBJECTION, YOUR HONOR.

13   THIS IS A DIFFERENT PART OF THE CASE THAT HASN'T

14   STARTED YET.

15           MR. MUELLER:  YOUR HONOR, IT'S NOT.

16   THESE ARE TWO FRAND PATENTS, THE EXACT ISSUE HE

17   TESTIFIED ON.

18           THE COURT:  I'LL ALLOW LIMITED

19   QUESTIONING, BUT THIS SHOULD BE SAVED FOR YOUR

20   CASE.

21   BY MR. MUELLER:

22   Q    DR. TEECE, LET'S BE CLEAR.  YOU'RE HERE TO

23   TESTIFY ON TWO PATENTS; CORRECT?

24   A    CORRECT.

25   Q    AND SAMSUNG HAS MADE A FRAND COMMITMENT FOR

1

2

3                          CERTIFICATE OF REPORTERS

4

5

6

7            WE, THE UNDERSIGNED OFFICIAL COURT

8    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

9    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

10   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

11   CERTIFY:

12           THAT THE FOREGOING TRANSCRIPT,

13   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

14   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

15   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

16   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

17   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

18

19                      /S/
                        _____
20                      LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595
21

22                      /S/
                        _____
23                      IRENE RODRIGUEZ, CSR, CRR
                        CERTIFICATE NUMBER 8074
24

25                      DATED:  AUGUST 16, 2012