# EXHIBIT 2

1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                         SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6  CORPORATION,                 )
                                )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,      )
                                )  AUGUST 17, 2012
8          VS.                  )
                                )  VOLUME 11
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  PAGES 3387-3711
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                              )
                DEFENDANTS.     )
15 _____

16                TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE LUCY H. KOH
17              UNITED STATES DISTRICT JUDGE

18

19

20              APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24                          IRENE RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8074
25

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                     BY:  HAROLD J. MCELHINNY
3                                    MICHAEL A. JACOBS
                                     RACHEL KREVANS
4                               425 MARKET STREET
                                SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
     APPLE:                  HALE AND DORR
7                               BY:  WILLIAM F. LEE
                                60 STATE STREET
8                               BOSTON, MASSACHUSETTS  02109

9                               BY:  MARK D. SELWYN
                                950 PAGE MILL ROAD
10                              PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:    QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
12                            BY:  CHARLES K. VERHOEVEN
                              50 CALIFORNIA STREET, 22ND FLOOR
13                            SAN FRANCISCO, CALIFORNIA  94111

14                            BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
16                            REDWOOD SHORES, CALIFORNIA  94065

17                            BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
19                            LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

```
 1                    INDEX OF WITNESSES

 2   PLAINTIFF'S REBUTTAL

 3   HYONG KIM
          DIRECT EXAM BY MR. LEE (RES.)     P. 3414
 4        CROSS-EXAM BY MR. VERHOEVEN       P. 3432
          REDIRECT EXAM BY MR. LEE          P. 3434
 5   EDWARD KNIGHTLY
          DIRECT EXAM BY MR. MUELLER        P. 3435
 6        CROSS-EXAM BY MR. VERHOEVEN       P. 3462
          REDIRECT EXAM BY MR. MUELLER      P. 3464
 7   SUSAN KARE
          DIRECT EXAM BY MS. KREVANS        P. 3465
 8        CROSS-EXAM BY MR. VERHOEVEN       P. 3474
     MICHAEL WALKER
 9        DIRECT EXAM BY MR. MUELLER        P. 3477
          CROSS-EXAM BY MR. VERHOEVEN       P. 3516
10        REDIRECT EXAM BY MR. MUELLER      P. 3526
     RICHARD DONALDSON
11        DIRECT EXAM BY MR. MUELLER        P. 3531
     SEUNG-HO AHN
12        VIDEOTAPED DEPOSITION PLAYED      P. 3547
     JUN WON LEE
13        VIDEOTAPED DEPOSITION PLAYED      P. 3548
     JANUSZ ORDOVER
14        DIRECT EXAM BY MR. MUELLER        P. 3569
     PETER BRESSLER
15        DIRECT EXAM BY MS. KREVANS        P. 3589
          CROSS-EXAM BY MR. VERHOEVEN       P. 3608
16   KARAN SINGH
          DIRECT EXAM BY MR. JACOBS         P. 3614
17   RAVIN BALAKRISHNAN
          DIRECT EXAM BY MR. JACOBS         P. 3629
18
     DEFENDANT'S SURREBUTTAL
19
     DAVID TEECE
20        DIRECT EXAM BY MS. MAROULIS       P. 3643
          CROSS-EXAM BY MR. LEE             P. 3651
21
     TIM WILLIAMS
22        DIRECT EXAM BY MR. VERHOEVEN      P. 3656
          CROSS-EXAM BY MR. LEE             P. 3660
23
     WOODWARD YANG
24        DIRECT EXAM BY MR. VERHOEVEN      P. 3665
          CROSS-EXAM BY MR. LEE             P. 3670
25
```

INDEX OF EXHIBITS

|  | MARKED | ADMITTED |
|---|---|---|
| **PLAINTIFF'S** | | |
| 100 | | 3425 |
| 104 | | 3431 |
| 1060 | | 3450 |
| 97 | | 3454 |
| 2277 | | 3469 |
| 2278 | | 3472 |
| 74 | | 3486 |
| 1085 | | 3499 |
| 101 | | 3501 |
| 72 | | 3502 |
| 84 | | 3504 |
| 122 | | 3507 |
| 193 | | 3510 |
| 1084 | | 3511 |
| 70 | | 3512 |
| 81 | | 3541 |
| 1078 | | 3603 |
| 1048 & 1049 | | 3628 |
| 1047 | | 3636 |
| 1066 | | 3672 |
| **DEFENDANT'S** | | |
| 613 | | 3519 |
| 549 | | 3522 |

1    DR. KNIGHTLY, CAN YOU JUST MARK IT, CAN YOU EXPLAIN

2    THIS PASSAGE IN THAT FIGURE?

3    A    RIGHT.  SO THIS IS A FLOW CHART OF HOW THE

4    TRANSMITTER TAKES A CELL OR A PACKET FROM A HIGHER

5    LAYER AND DOES A CHECK AND SAYS, IS THIS PACKET A

6    MINIMUM SIZE?

7              AND IT GIVES AN EXAMPLE IN THE TEXT ABOUT

8    THAT MINIMUM BEING 53 BYTES.  SO IT LOOKS FOR IT

9    BEING EXACTLY 53 BYTES.

10              IF IT'S NOT, THEN IT -- IF IT'S NOT THE

11    MINIMUM, THEN IT HAS TO BE SEGMENTED BECAUSE IN

12    THAT CASE IT WOULD BE LARGER, SO IT'S GOT TO BE

13    SEGMENTED INTO MULTIPLE SEGMENTS.  IF IT IS THE

14    MINIMUM, THEN THERE'S NO SEGMENTATION AND THE

15    ENTIRE SDU DOES FIT AND SO THAT'S TRANSMITTED.

16    Q    DR. KNIGHTLY, HAVE YOU CONSIDERED WHETHER THIS

17    PATENT, THE AGARWAL REFERENCE, DISCLOSES EACH AND

18    EVERY LIMITATION OF CLAIMS 10 AND 15 OF THE '941?

19    A    YES, I HAVE CONSIDERED THAT AND IT DOES.

20    Q    I'M SORRY.  WHAT'S YOUR OPINION?

21    A    AND IT DOES.

22    Q    LET'S START WITH CLAIM 10, AND WE'LL WALK

23    THROUGH IT QUICKLY LIMITATION BY LIMITATION.

24              AND LET'S TURN TO PDX 36.15, PLEASE.

25              THE PREAMBLE STATES AN APPARATUS FOR

1    TRANSMITTING DATA IN A MOBILE COMMUNICATION SYSTEM.

2         IS THAT PRESENT IN AGARWAL?

3    A    YES, IT DOES.  AS I MENTIONED, IT'S WIRELESS

4    NETWORKS AND SATELLITE WIRELESS NETWORKS ARE

5    MOBILE.

6    Q    NEXT ELEMENT BEGINS A TRANSMISSION BUFFER FOR

7    RECEIVING AN SDU.

8         AND THEN IT CONTINUES.  IS THAT ELEMENT

9    DISCLOSED IN AGARWAL?

10   A    YES.  SO IT HAS THE BUFFERING AND WE SAW IN

11   THE FLOW CHART THAT IT WOULD SEE THAT AND THEN MAKE

12   THAT DETERMINATION THAT, YES OR NO WHETHER IT IS

13   SEGMENTED OR NOT.

14   Q    NEXT ELEMENT IS A TRANSMISSION BUFFER FOR

15   RECEIVING A SERVICE DATA UNIT.  IS THAT ELEMENT

16   PRESENT OR DISCLOSED IN AGARWAL?

17   A    THAT WAS THE ONE I WAS JUST REFERRING TO.

18   Q    I'M SORRY.  I MISSPOKE.  THE NEXT ONE IS A

19   HEADER INSERT?

20   A    YES.  SO THE HEADER INSERT WE JUST WENT

21   THROUGH EARLIER THE DIFFERENT PARTS OF THE HEADER,

22   THE SEQUENCE NUMBER, THE ONE BIT FIELD, LENGTH.

23   Q    NEXT ELEMENT IS A ONE BIT FIELD HEADER.  IS

24   THAT PRESENT IN AGARWAL?

25   A    YES.  SO THAT ONE BIT, THAT THIRD BIT OF THE

1    HEADER, THAT'S THE ONE BIT FIELD THAT'S SET TO

2    WHETHER OR NOT THERE'S AN ENTIRE SDU.

3    Q    AND THE NEXT LIMITATION IS A LENGTH INDICATOR

4    INSERTER.  IS THAT DISCLOSED IN AGARWAL?

5    A    YES.  WE ALSO DISCUSSED THAT, THAT LENGTH

6    INDICATOR, AS WELL AS THE PREDEFINED VALUES.

7    Q    FINAL ELEMENT OF CLAIM 10 IS A TRANSMITTER FOR

8    SENDING PDU'S TO RECEIVER.  IS THAT DISCLOSED IN

9    AGARWAL?

10   A    YES.  SO THE SYSTEM TRANSMITS OVER THE

11   WIRELESS NETWORK AFTER THOSE STEPS.

12   Q    LET'S TURN TO CLAIM 15 IF WE COULD.  THE

13   PREAMBLE SAYS, "AN APPARATUS FOR RECEIVING DATA IN

14   A MOBILE COMMUNICATIONS SYSTEM."  WE'LL PUT THIS ON

15   THE SCREEN.  IT'S PDX 36.22.  IS THAT PRESENT IN

16   AGARWAL, THE PREAMBLE LIMITATION?

17   A    YES.  SO FOR THE SAME REASON, IT'S THE -- IT'S

18   A MOBILE COMMUNICATION SYSTEM, YES.

19   Q    AND ARE THE OTHER LIMITATIONS LISTED HERE IN

20   PDX 36.22 PRESENT IN AGARWAL, AND COULD YOU EXPLAIN

21   BRIEFLY HOW, IF SO?

22   A    YES.  SO CLAIM 15 IS A RECEIVER SIDE ANALOG

23   FOR THE SENDER SIDE IN CLAIM 10.

24        SO AGARWAL ALSO DOES THE RECEIVER SIDE

25   AFTER IT'S SEGMENTED, PUTTING EVERYTHING BACK

1    TOGETHER AS IN THIS CLAIM.

2    Q    DR. KNIGHTLY, IN SUM, WHAT IS YOUR OPINION ON

3    THE VALIDITY OF THIS PATENT?

4    A    THAT THE '941 CLAIMS ARE INVALID IN LIGHT OF

5    AGARWAL.

6    Q    JUST A FEW MORE QUESTIONS.

7         LET'S TURN BACK TO THE ALTERNATIVE E-BIT

8    IN THE UMTS STANDARD, AND I WANT TO PUT THIS INTO

9    CONTEXT.

10        HOW LARGE IS THE UMTS STANDARD?

11   A    THOUSANDS OF PAGES OF DOCUMENTS.

12   Q    AND HOW MUCH OF THE STANDARD IS DEVOTED TO THE

13   ALTERNATIVE E-BIT?

14   A    ABOUT A PAGE.

15   Q    NOW, AT THE TIME THE ALTERNATIVE E-BIT WAS

16   ADOPTED BY THE UMTS WORKING GROUPS, WERE THERE

17   ALTERNATIVES?

18   A    YES, THERE WERE.

19   Q    WHAT WERE THEY?

20   A    WELL, ONE ALTERNATIVE IS OTHER HEADER

21   STRUCTURES, SUCH AS WHAT WE JUST SAW, THAT THERE

22   ARE OTHER WAYS TO, TO DEFINE HEADERS AS AGARWAL

23   DID.

24        AND THEN ANOTHER ALTERNATIVE IS TO USE

25   THE ORIGINAL E-BIT INTERPRETATION.

1    Q    NOW, FOR A PRODUCT LIKE THE IPHONE OR THE

2    IPAD, DO THOSE PRODUCTS CONTROL WHETHER THE E-BIT

3    IS USED?

4    A    NO, THEY DON'T.

5    Q    WHO DOES?

6    A    THE NETWORK SERVICE PROVIDER, SUCH AS AT&T,

7    DECIDES WHETHER OR NOT THE ALTERNATIVE E-BIT IS

8    USED BECAUSE IT'S AN OPTION TO THE PROVIDER WHETHER

9    TO USE THE NORMAL E-BIT OR TO TURN ON THIS OPTION

10   FOR ALTERNATIVE E-BIT.

11   Q    NOW, FOR THE PRODUCTS ACCUSED IN THIS CASE,

12   WHICH CARRIER IS THE RELEVANT CARRIER?

13   A    AT&T.

14   Q    HAVE YOU SEEN ANY EVIDENCE THAT AT&T USES THE

15   ALTERNATIVE E-BIT?

16   A    I'VE SEEN NO EVIDENCE THAT THEY EVER TURN IT

17   ON.

18   Q    FINALLY, JUST SO WE'RE CLEAR, WHAT IS YOUR

19   OPINION AS TO WHETHER OR NOT THE '941 PATENT COVERS

20   THE ALTERNATIVE E-BIT?

21   A    MY OPINION IS THAT IT DOES NOT.

22        MR. MUELLER:  NO FURTHER QUESTIONS.

23   THANK YOU.

24        THE COURT:  ALL RIGHT.  TIME IS NOW 9:54.

25   GO AHEAD, PLEASE.

|    |                                                        |
|----|--------------------------------------------------------|
| 1  | **CROSS-EXAMINATION**                                  |
| 2  | BY MR. VERHOEVEN:                                       |
| 3  | Q    GOOD MORNING, DR. KNIGHTLY.                        |
| 4  | A    GOOD MORNING.                                      |
| 5  | Q    IN YOUR DIRECT EXAMINATION -- LET ME BACK UP.      |
| 6  | WERE YOU HERE FOR DR. WILLIAMS' TESTIMONY?              |
| 7  | A    YES.                                               |
| 8  | Q    OKAY.  AND YOU HEARD HIM TESTIFY EXTENSIVELY       |
| 9  | ABOUT THE INTEL SPECIFICATION?                          |
| 10 | A    THE --                                             |
| 11 | Q    YES?                                               |
| 12 | A    INTEL SOURCE CODE.                                 |
| 13 | Q    AND THE SOURCE CODE.  DO YOU REMEMBER HIM          |
| 14 | TALKING ABOUT THE DOCUMENTS AND SOURCE CODE?  HE        |
| 15 | WENT THROUGH IT IN GREAT DETAIL?                        |
| 16 | A    YES.                                               |
| 17 | Q    IN YOUR EXAMINATION, YOU DIDN'T MENTION IT?        |
| 18 | A    I REVIEWED SCORED, BUT I DIDN'T TALK ABOUT IT.     |
| 19 | Q    YOU DIDN'T GO THROUGH IT, DID YOU?                 |
| 20 | A    NOT TODAY.                                          |
| 21 | Q    YOU DON'T DISPUTE THE ACCURACY OF DR.              |
| 22 | WILLIAMS' DESCRIPTIONS OF HOW THE INTEL CHIP WORKS,     |
| 23 | DO YOU, SIR?                                            |
| 24 | A    I AGREE WITH THE STEPS IN THE INTEL CODE, YES.     |
| 25 | Q    SO CAN WE PUT UP PDX 36.9?  NOW, IN YOUR           |

1   DIRECT EXAMINATION, YOU FOCUSSED IN PART ON THIS

2   PHRASE AN ENTIRE SDU IN THE DATA FIELD.  DO YOU

3   REMEMBER THAT?

4   A    YES.

5   Q    NOW, SIR, ISN'T IT TRUE THAT SOMETIMES THE

6   APPLE ACCUSED PRODUCTS TRANSMIT AN ENTIRE SDU?  YES

7   OR NO, SIR?  SOMETIMES THEY DO THAT, DON'T THEY?

8   A    WHEN THEY'RE RUNNING THE, THE -- WELL, DO YOU

9   MEAN WITH OR WITHOUT THE 3G -- THE ALTERNATE E-BIT.

10   Q    CAN YOU ANSWER MY QUESTION?

11   A    WELL --

12   Q    ISN'T IT TRUE THAT SOMETIMES THE APPLE ACCUSED

13   PRODUCTS TRANSMIT AN ENTIRE SDU?  YES OR NO?

14   A    WITHOUT THE ALTERNATIVE E-BIT, DEFINITELY,

15   YES.

16   Q    AND SOMETIMES, IF YOU'RE INFRINGING, YOU'RE

17   STILL INFRINGING, ISN'T THAT TRUE?

18   A    OH, WELL, THERE ISN'T THAT BIT, SO THEY HAPPEN

19   TO HALF AN ENTIRE SDU, BUT NOT WITH THAT BIT.

20   Q    IF SOMETIMES THEY'RE TRANSMITTING AN ENTIRE

21   SDU, THEY'RE TRANSMITTING AN ENTIRE SDU; CORRECT?

22   A    YES, BUT NOT WITH THAT BIT INDICATED.

23   Q    AND IF YOU'RE INFRINGING SOMETIMES, YOU'RE

24   STILL INFRINGING; RIGHT?

25   A    THEY'RE NOT INFRINGING.

1    THE SCREEN?

2              THE COURT:  YES.

3    BY MR. MUELLER:

4    Q    SO, DR. WALKER, JUST SO WE'RE CLEAR, THIS

5    CHRONOLOGY STARTS WITH THE KOREAN APPLICATION THAT

6    SAMSUNG FILED?

7    A    THAT'S CORRECT.

8    Q    AND CONTINUES THROUGH PROPOSALS MADE BY

9    SAMSUNG TO ETSI?

10   A    THAT IS CORRECT.

11   Q    AND CAN YOU EXPLAIN TO THE JURY THE

12   SIGNIFICANCE OF THAT JUNE 1ST THROUGH 3RD, 2005

13   DATE?

14   A    SO THIS IS THE DATE AT WHICH THE PROPOSAL WAS

15   ADOPTED AND BECAME THEN A PART OF THE CURRENT -- OF

16   THE STANDARD OF THAT -- AT THAT POINT IN TIME.

17   Q    LET'S TURN BACK TO TAB 7 IN YOUR BINDER,

18   PLAINTIFF'S EXHIBIT 122.

19   A    YES.

20   Q    PLEASE TURN TO PAGE 122.32.

21   A    YES, I HAVE THAT PAGE.

22   Q    AND DO YOU SEE ANY REFERENCE ON THIS PAGE TO

23   THE U.S. APPLICATION THAT LED TO THE '516 PATENT?

24   A    YES, I DO.  THIS IS -- I'M LOOKING, CREATED

25   PAGE -- THIS IS THE SECOND COLUMN DOWN.

```
1    Q    AND, SIR, IS THIS THE DISCLOSURE THAT SAMSUNG

2    MADE --

3    A    SO THIS IS --

4    Q    I'M SORRY.  THIS IS THE DISCLOSURE THAT

5    SAMSUNG MADE TO ETSI?

6    A    THIS IS THE DISCLOSURE THAT SAMSUNG MADE TO

7    ETSI, AND AS YOU CAN SEE, IT IDENTIFIES THE U.S.

8    PATENT APPLICATION, '181, THE KOREAN APPLICATION,

9    423,000, THE PARTICULAR SPECIFICATION, THAT IT WAS

10   AFFECTING, '214, THE ACTUAL PARAGRAPHS THAT WERE

11   AFFECTED, IN THIS CASE JUST ONE, AND THE VERSION

12   THAT IT WAS NOW ADOPTED INTO.

13   Q    AND IF YOU GO BACK, SIR, TO THE PAGE ENDING,

14   IN THE BATES NUMBER AT THE BOTTOM, 9415, WHAT WAS

15   THE DATE ON WHICH THIS DISCLOSURE WAS MADE?

16   A    SO THE DATE ON WHICH THIS DISCLOSURE WAS MADE

17   WAS THE 16TH OF MAY, 2006.

18   Q    LET'S ADD THAT TO OUR TIMELINE AT PDX 43.12,

19   AND IF YOU LOOK AT THAT, HERE WE HAVE THE

20   DISCLOSURE ON MAY 16TH, 2006.  IS THAT CORRECT,

21   SIR?

22   A    THAT'S CORRECT.

23            MR. MUELLER:  YOUR HONOR, COULD MAY I

24   APPROACH ONE MORE TIME.

25            THE COURT:  GO AHEAD.
```

1    BY MR. MUELLER:

2    Q    DR. WALKER, HAVE YOU SEEN ANY EVIDENCE THAT

3    SAMSUNG DISCLOSED THIS PATENT NUMBER TO ETSI BEFORE

4    JUNE 1ST, 2005?

5    A    NONE WHATSOEVER.

6    Q    WHEN WAS THE DISCLOSURE MADE?

7    A    THE DISCLOSURE WAS MADE ON THE 16TH OF MAY,

8    2006.

9    Q    DR. WALKER, GIVEN THIS CHRONOLOGY, DO YOU HAVE

10   AN OPINION AS TO WHETHER SAMSUNG COMPLIED WITH ITS

11   DISCLOSURE OBLIGATIONS WITH RESPECT TO THE '516

12   PATENT?

13   A    MY OPINION IS THAT IT DID NOT COMPLY WITH THE

14   OBLIGATION BECAUSE IT SHOULD HAVE DISCLOSED BEFORE

15   ADOPTION.

16            MR. MUELLER:  THANK YOU, SIR.  I HAVE NO

17   FURTHER QUESTIONS.

18            THE COURT:  ALL RIGHT.  THE TIME IS NOW

19   11:16.

20            PLEASE GO AHEAD.  11:17.  GO AHEAD.

21            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

22                    **CROSS-EXAMINATION**

23   BY MR. VERHOEVEN:

24   Q    GOOD MORNING, DR. WALKER.

25   A    GOOD MORNING.

```
 1    Q    AS YOU MAY HAVE NOTICED, WE'RE UNDER SOME

 2    STRICT TIME LIMITS SO IF, AS I'M ASKING YOU

 3    QUESTIONS, IF YOU CAN FAIRLY ANSWER YES OR NO, I'D

 4    APPRECIATE YOU DOING THAT.  OKAY?

 5    A    OKAY.

 6    Q    NOW, SIR, ISN'T IT TRUE THAT TO FALL WITHIN

 7    THE ETSI IPR POLICY, AN INTELLECTUAL PROPERTY RIGHT

 8    NEEDS TO MEET ETSI'S DEFINITION OF IPR?

 9    A    THAT IS CORRECT.

10    Q    CAN WE PUT UP SDX 3916, SLIDE 12.  AND THIS IS

11    THE DEFINITION I HAVE ON THE SCREEN THAT ETSI HAS

12    FOR IPR; RIGHT?

13    A    THAT'S CORRECT.

14    Q    AND IT SAYS, "IPR SHALL MEAN ANY INTELLECTUAL

15    PROPERTY RIGHT CONFERRED BY STATUTE LAW INCLUDING

16    APPLICATIONS THEREFORE OTHER THAN TRADEMARKS."

17         AND THEN IT CONTINUES, SIR, "FOR THE

18    AVOIDANCE OF DOUBT, RIGHTS RELATING TO GET-UP,

19    CONFIDENTIAL INFORMATION, TRADE SECRETS OR THE LIKE

20    ARE EXCLUDED FROM THE DEFINITION OF IPR."

21         DO YOU SEE THAT, SIR?

22    A    YES, I DO.

23    Q    NOW, SO ONE OF THE THINGS THAT'S EXCLUDED FROM

24    IPR IS CONFIDENTIAL INFORMATION; RIGHT?

25    A    THAT IS CORRECT.  IT'S NOT IPR.
```

```
1    Q    AND IF WE CAN PUT UP PDX 45.6.  THIS IS YOUR

2    SLIDE.

3              YOU REFERRED TO THE SAMSUNG KOREAN PATENT

4    APPLICATION; RIGHT?

5    A    YES, I DID.

6    Q    BUT YOU DON'T -- YOU DIDN'T EVEN READ THAT

7    APPLICATION, DID YOU?

8    A    THAT IS CORRECT.

9    Q    YOU DON'T KNOW WHETHER IT'S CONFIDENTIAL, DO

10   YOU?

11   A    I DON'T KNOW WHETHER THEY MADE A CONFIDENTIAL

12   APPLICATION WITH REGARD TO THAT PATENT, NO.

13   Q    NOW, THE JURY, THEY SAW A VIDEO AT THE

14   BEGINNING OF THIS TRIAL THAT TALKED ABOUT THE

15   UNITED STATES, HOW WHEN YOU FILE PATENT

16   APPLICATIONS THEY'RE INITIALLY CONFIDENTIAL.

17             ISN'T IT TRUE, SIR, THAT THE SAME IS TRUE

18   IN THE KOREAN PATENT SYSTEM, THEY'RE CONFIDENTIAL?

19   A    I BELIEVE YOU CAN REQUEST THAT TO BE THE CASE,

20   YES.

21   Q    AND IF THEY'RE CONFIDENTIAL, IT'S NOT WITHIN

22   THE DEFINITION OF IPR AND THERE'S NO DUTY TO

23   DISCLOSE.  ISN'T THAT TRUE, SIR?

24   A    NO, BECAUSE YOU CAN'T USE IT THEN WITHIN THE

25   CONTEXT OF ETSI, BECAUSE IF YOU WISH TO --
```

```
1    Q    IT'S NOT IPR UNDER THE DEFINITION, IS IT, SIR?

2    A    IT'S NOT IPR.

3    Q    NOW, I'LL DIRECT YOUR ATTENTION TO EXHIBIT 613

4    IN YOUR BINDER.  ARE YOU THERE?

5    A    NO.  613?

6    Q    613.

7              MR. LEE:  HE'S LOOKING AT OUR BINDER.

8              THE COURT:  IT'S THE BLACK --

9              THE WITNESS:  I HAVE IT.  YES, THANK YOU.

10   BY MR. VERHOEVEN:

11   Q    OKAY.  YOU'VE SEEN THIS DOCUMENT BEFORE,

12   RIGHT?

13   A    YES, THE ETSI GUIDE ON IPR, YES.

14             MR. VERHOEVEN:  YOUR HONOR, WE MOVE

15   DEFENDANT'S EXHIBIT 613 INTO EVIDENCE.

16             MR. MUELLER:  NO OBJECTION.

17             THE COURT:  IT'S ADMITTED.

18             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

19             613, HAVING BEEN PREVIOUSLY MARKED FOR

20             IDENTIFICATION, WAS ADMITTED INTO

21             EVIDENCE.)

22   BY MR. VERHOEVEN:

23   Q    I'LL DIRECT YOUR ATTENTION TO PAGE 8.  HERE --

24   CAN WE PULL OUT THIS BOTTOM PORTION, SECTION 2.

25             THIS IS THE GUIDELINE; RIGHT?
```

```
 1    A    THAT IS CORRECT.

 2    Q    AND IT'S THE IMPORTANCE OF TIMELY DISCLOSURE

 3    OF ESSENTIAL IPR'S IS THE SECTION; RIGHT?

 4    A    THAT IS CORRECT.

 5    Q    AND NOTE 1, DEFINITIONS FOR TIMELINESS OR

 6    TIMELY CANNOT BE AGREED BECAUSE SUCH DEFINITIONS

 7    WOULD CONSTITUTE A CHANGE TO THE POLICY.

 8              DO YOU SEE THAT, SIR?  IS THAT WHAT THAT

 9    SAYS?

10    A    THAT IS CORRECT, THAT SAYS THAT.

11    Q    AND -- BUT THERE IS A DESCRIPTION OF

12    INTENTIONAL DELAY.  DO YOU SEE THAT, SIR?

13    A    YES, I DO SEE THAT.

14    Q    AN INTENTIONAL DELAY ARISES WHEN IT CAN BE

15    DEMONSTRATED THAT AN ETSI MEMBER HAS DELIBERATELY

16    WITHHELD IPR DISCLOSURES SIGNIFICANTLY BEYOND WHAT

17    WOULD BE EXPECTED FROM NORMAL CONSIDERATIONS OF

18    TIME LIMITS.

19              RIGHT?

20    A    THAT IS CORRECT.

21    Q    YOU'RE NOT OFFERING AN OPINION HERE TODAY THAT

22    SAMSUNG DELIBERATELY OR INTENTIONALLY DELAYED, ARE

23    YOU, SIR?

24    A    I HAVE NOT USED THOSE WORDS, NO.

25    Q    AND YOU'RE NOT OFFERING THAT OPINION, ARE YOU,
```

```
1    SIR?

2    A    NO, I AM NOT.

3    Q    NOW, YOU HAVE A TECHNICAL BACKGROUND, RIGHT?

4    A    I DO HAVE A TECHNICAL BACKGROUND, YES.

5    Q    A PH.D. IN MATHEMATICS?

6    A    YES.

7    Q    AND FROM 2001 TO 2009, YOU WERE GROUP RESEARCH

8    AND DEVELOPMENT DIRECTOR FOR THE VODAFONE GROUP OF

9    COMPANIES; RIGHT?

10   A    THAT IS CORRECT.

11   Q    AND YOU'VE BEEN INVOLVED IN ETSI SINCE 1988

12   THROUGH YOUR WORK AT VODAFONE; RIGHT?

13   A    THAT IS CORRECT.

14   Q    AND YOU STARTED OUT BY PARTICIPATING IN THESE

15   TECHNICAL WORKING GROUPS THAT YOU WERE TALKING

16   ABOUT.  DO YOU REMEMBER?

17   A    THAT'S CORRECT, YES.

18   Q    AND YOU WERE -- YOU WENT TO MANY OF THESE;

19   RIGHT?

20   A    YES, I DID.

21   Q    AND IN ALL OF THOSE MEETINGS WHERE YOU

22   ATTENDED AS A MEMBER OF THE WORKING GROUP, NEVER

23   ONCE DID ANYBODY RAISE THEIR HAND AND SAY, HEY,

24   I'VE GOT ESSENTIAL IPR.  CORRECT?

25   A    THAT IS CORRECT.
```

1    Q    NOW, ETSI ENCOURAGES COMPANIES LIKE SAMSUNG TO

2    MAKE A GENERAL IPR DECLARATION AS PART OF A CALL

3    FOR IPR'S; RIGHT?

4    A    THAT'S CORRECT, ALL COMPANIES ARE ASKED TO DO

5    THAT.

6    Q    AND, IN FACT, IN DECEMBER OF 1998, SAMSUNG

7    SUBMITTED A GENERAL IPR LICENSING DECLARATION TO

8    ETSI, DIDN'T IT?

9    A    THEY DID, YES, INDEED.

10   Q    TURN TO EXHIBIT 549.

11            CAN WE PUT THAT --

12            AND I WOULD MOVE THIS INTO EVIDENCE, YOUR

13   HONOR.

14            MR. MUELLER:  NO OBJECTION.

15            THE COURT:  IT'S ADMITTED.

16            (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

17            549, HAVING BEEN PREVIOUSLY MARKED FOR

18            IDENTIFICATION, WAS ADMITTED INTO

19            EVIDENCE.)

20            MR. VERHOEVEN:  CAN WE PUT IT ON THE

21   SCREEN.

22   Q    NOW, THIS IS DECEMBER 1998; RIGHT?

23   A    CORRECT.

24   Q    AND DO YOU SEE HERE IT SAYS SEC, THAT'S THE

25   SAMSUNG COMPANY WHO'S A DEFENDANT IN THIS CASE;

```
 1      RIGHT?

 2      A    YES.

 3      Q    SEC IS PREPARED TO GRANT LICENSES TO ITS

 4      SPECIAL IPR'S ON A FAIR, REASONABLE, AND

 5      NON-DISCRIMINATORY BASIS IN ACCORDANCE WITH THE

 6      TERMS AND CONDITIONS SET FORTH IN CLAUSE 6.1 OF THE

 7      ETSI IPR POLICY.

 8                DO YOU SEE THAT?

 9      A    CORRECT.

10      Q    SO SAMSUNG SAID TO ALL THESE MEMBERS OF ETSI,

11      HEY, IF SOMETHING BECOMES ESSENTIAL IN THE FUTURE,

12      WE'RE LETTING YOU KNOW IN ADVANCE, WE WILL LICENSE

13      THAT ON FAIR, REASONABLE, AND NON-DISCRIMINATORY

14      TERMS.  ISN'T THAT WHAT THAT'S SAYING?

15      A    THAT IS CORRECT.  MANY COMPANIES DID THAT.

16      Q    NOW, LET'S GO BACK TO PDX 45.6.

17                NOW, YOU'VE GOT A TIME LINE HERE, SIR,

18      BUT YOU DIDN'T PUT ON THE TIMELINE THIS GENERAL

19      DECLARATION THAT SAMSUNG MADE; ISN'T THAT TRUE,

20      SIR?

21      A    THAT IS TRUE.  THIS TIMELINE RELATED TO

22      DISCLOSURE.

23      Q    SIR, IF YOU COULD PLEASE ANSWER MY QUESTION.

24      A    YES, I HAVE.

25      Q    YOU DIDN'T PUT IT ON THE TIMELINE, DID YOU?
```

```
 1    A    NO, I HAVE NOT.

 2    Q    IN FACT, THAT WOULD BE WAY BEFORE ANY OF THESE

 3    ITEMS ON THE TIMELINE; CORRECT?

 4    A    THAT IS CORRECT.  BUT IT'S NOT RELATED TO

 5    DISCLOSURE.  THESE ARE THE DISCLOSURE EVENTS.

 6    Q    NOW --

 7    A    YOU CITED CLAUSE 6.1.

 8    Q    NOW, SIR, SIR, I'M ON THE CLOCK.

 9         YOU WERE HERE TODAY.  YOU SAW THE

10    TESTIMONY OF DR. KIM; RIGHT?

11    A    I DID, YES.

12    Q    AND DR. KNIGHTLY?

13    A    YES, I DID.

14    Q    AND YOU HEARD BOTH OF THEM TESTIFY THAT THESE

15    TWO PATENTS, THE '941 AND THE '516 PATENTS, ARE NOT

16    ESSENTIAL.

17    A    YES, I DID.

18    Q    DIDN'T YOU, SIR?

19    A    I DID HEAR THEM SAY THAT.

20    Q    AND ISN'T IT TRUE IF A PATENT IS NOT

21    ESSENTIAL, AS APPLE'S OWN SWORN EXPERTS SAID, THEN

22    THERE'S ABSOLUTELY NO DISCLOSURE OBLIGATION, IS

23    THERE, SIR?

24    A    YOU ONLY HAVE TO BELIEVE IT LIKELY TO BE

25    ESSENTIAL.
```

```
1    Q    NOW, YOU TALKED A LITTLE BIT ABOUT FRAND.

2    ISN'T IT TRUE, SIR, YOU HAVE NO OPINION TO PRESENT

3    TO THIS JURY WITH RESPECT TO WHETHER SAMSUNG HAS

4    MADE A FRAND OFFER OR NOT?

5    A    I'M DEALING WITH DISCLOSURE AT THE MOMENT,

6    YES.

7    Q    SO THE ANSWER IS YES?

8    A    YES.

9    Q    LET'S GO BACK TO THE IPR POLICY.  CAN WE PUT

10   UP SDX 3916.2.  ETSI HAS A SECTION 14 IN THE ETSI

11   IPR POLICY CALLED VIOLATION OF POLICY.  YES OR NO?

12   A    YES, IT HAS.

13   Q    IT SAYS, "ANY VIOLATION OF THE POLICY BY A

14   MEMBER SHALL BE DEEMED TO BE A BREACH BY THAT

15   MEMBER OF ITS OBLIGATIONS TO ETSI.  THE ETSI

16   GENERAL ASSEMBLY SHALL HAVE THE AUTHORITY TO DECIDE

17   THE ACTION TO BE TAKEN, IF ANY, AGAINST THE MEMBER

18   IN BREACH IN ACCORDANCE WITH ETSI STATUTES."

19            DO YOU SEE THAT, SIR?

20   A    YES, I DO.

21   Q    YOU HAVE NO OPINION AS TO WHETHER OR NOT,

22   UNDER SECTION 14, SAMSUNG VIOLATED THE ETSI POLICY;

23   CORRECT?

24   A    CORRECT.  AS FAR AS I KNOW, NO PROCESS HAS

25   TAKEN PLACE WITHIN ETSI TO DECIDE THAT.
```

1    Q    IF YOU CAN ANSWER ME YES OR NO ON THAT?

2    A    YES, I HAVE NO OPINION AS TO THE HYPOTHETICAL

3    QUESTION.

4    Q    YOU HAVE NO OPINION AS TO WHETHER OR NOT

5    SECTION 14 -- LET ME REPHRASE.  YOU HAVE NO OPINION

6    AS TO WHETHER OR NOT, UNDER SECTION 14, SAMSUNG

7    VIOLATED THE ETSI POLICY?

8    A    THAT'S CORRECT.  SECTION 14 DOESN'T MEAN --

9    Q    EXCUSE ME, SIR.  IS THAT A YES?

10   A    THAT IS A YES BECAUSE --

11              MR. VERHOEVEN:  THANK YOU, SIR.

12              YOUR HONOR, PASS THE WITNESS.

13              THE COURT:  ALL RIGHT.  THE TIME IS

14   11:27.  GO AHEAD, PLEASE.

15                  **REDIRECT EXAMINATION**

16   BY MR. MUELLER:

17   Q    TO YOUR KNOWLEDGE, HAS ETSI CONDUCTED ANY

18   INVESTIGATION INTO SAMSUNG'S DISCLOSURE PRACTICES?

19   A    NO, THEY HAVE NOT.

20              MR. MUELLER:  NOW -- MAY I APPROACH THE

21   WITNESS, YOUR HONOR?

22              THE COURT:  GO AHEAD, PLEASE.

23   BY MR. MUELLER:

24   Q    I'M HANDING YOU PLAINTIFF'S EXHIBIT 75.

25   MR. VERHOEVEN REFERRED YOU TO THE ETSI GUIDE.  IS

3527

```
1    THIS ANOTHER VERSION OF THAT GUIDE?

2    A    I DIDN'T NOTICE THE ACTUAL VERSION THAT WAS

3    PRESENTED, BUT THIS IS A VERSION, YES.

4              MR. MUELLER:  YOUR HONOR, I OFFER IT.

5              THE COURT:  ANY OBJECTION?

6              MR. VERHOEVEN:  I'VE JUST BEEN HANDED

7    THIS JUST NOW, YOUR HONOR.  I NEED TO CHECK TO SEE

8    WHAT IT IS.  WE HAVE TO CHECK, YOUR HONOR.  WE

9    DON'T BELIEVE THIS WAS DISCLOSED IN THE EXAMINATION

10   EXHIBITS.

11             MR. MUELLER:  YOUR HONOR, I'M RAISING IT

12   BECAUSE IT WAS RAISED ON CROSS AS A NEW SUBJECT.

13             MR. VERHOEVEN:  NO, THIS DOCUMENT WAS

14   NOT, YOUR HONOR.

15             THE COURT:  ALL RIGHT.  MOVE ONTO

16   SOMETHING ELSE.

17             MR. MUELLER:  OKAY, THAT'S FINE.

18   Q    DR. WALKER, DOES A GENERAL DECLARATION SATISFY

19   THE SPECIFIC DISCLOSURE OBLIGATIONS UNDER CLAUSE 4.

20             MR. VERHOEVEN:  OBJECTION, LEADING.

21             THE COURT:  OVERRULED.

22   BY MR. MUELLER:

23   Q    YOU CAN ANSWER, SIR?

24   A    NO, IT DOESN'T BECAUSE IT DOESN'T ADDRESS

25   DISCLOSURE.
```

1   Q    NEXT SUBJECT, DR. WALKER.  MR. VERHOEVEN ASKED

2   YOU SOME QUESTIONS ABOUT CONFIDENTIALITY.  DO YOU

3   RECALL THAT?

4   A    YES, I DO.

5   Q    LET'S TAKE A LOOK AT THE ETSI IPR POLICY FROM

6   1997, WHICH YOU HAVE BEFORE YOU.  PLEASE TURN, IF

7   YOU COULD, SIR, TO PROVISION 10 AND LET'S PUT THAT

8   ON THE SCREEN.

9           SIR, WHAT DOES THIS PROVISION SAY?

10          MR. VERHOEVEN:  OBJECTION.  OUTSIDE OF

11   SCOPE OF THIS WITNESS'S REPORT.

12          MR. MUELLER:  YOUR HONOR, IT'S NOT.  IT

13   WAS DIRECTLY WITHIN THE SCOPE OF THE

14   CONFIDENTIALITY CROSS-EXAMINATION THAT WE JUST

15   HEARD ABOUT.

16          THE COURT:  OVERRULED.  GO AHEAD.

17          THE WITNESS:  WHAT THIS SAYS IS THAT IF

18   YOU HAVE INFORMATION THAT YOU BELIEVE IS

19   CONFIDENTIAL AND YOU WISH TO MAKE IT, CREATE A

20   PROPOSAL FROM IT AND BRING IT TO ETSI, THEN YOU

21   HAVE TO MARK IT AS CONFIDENTIAL.  IT HAS TO BE IN

22   WRITING.  YOU HAVE TO TAKE IT TO THE CHAIRMAN OF

23   THE, OF THE TECHNICAL GROUP.  HE HAS TO AGREE THAT

24   YOU CAN NOW SUBMIT IT TO THAT TECHNICAL BODY.  THE

25   TECHNICAL BODY WILL MAINTAIN CONFIDENTIALITY.  BUT

```
1    THAT IS THE LIMIT.

2    BY MR. MUELLER:

3    Q    DR. WALKER, HAVE YOU SEEN ANY EVIDENCE THAT

4    SAMSUNG FOLLOWED THIS PROVISION?

5    A    ABSOLUTELY NOT.  ALL THEIR DOCUMENTS THAT I

6    HAVE SEEN, THEY WERE SUBMITTED WITHOUT ANY

7    CONFIDENTIAL MARKINGS WHATSOEVER.

8    Q    AND, DR. WALKER, YOU WALKED US THROUGH THE

9    WORKING GROUP MEETINGS.  WERE THOSE PUBLIC OR

10   CONFIDENTIAL MEETINGS?

11   A    ALL OF THOSE MEETINGS, 3GPP MEETINGS, ALL OF

12   THE REPORTS, ALL OF THE DOCUMENTATION IS PUBLIC.

13   Q    INCLUDING THE SAMSUNG PROPOSALS?

14   A    INCLUDING THE SAMSUNG PROPOSALS.

15   Q    LAST QUESTION, DR. WALKER.  IF WE LOOK AT

16   CLAUSE 4, MR. VERHOEVEN ASKED YOU SOME QUESTIONS

17   ABOUT THE WORD "TIMELY."

18        I WANT TO FOCUS YOUR ATTENTION ON THAT

19   SECOND SENTENCE, CLAUSE 4.1, "A MEMBER SUBMITTING A

20   TECHNICAL PROPOSAL FOR A STANDARD SHALL, ON A BONA

21   FIDE BASIS, DRAW THE ATTENTION OF ETSI TO ANY OF

22   THAT MEMBER'S IPR WHICH MIGHT BE ESSENTIAL IF THAT

23   PROPOSAL IS ADOPTED."

24        WHAT IS YOUR VIEW ON THE TIMING

25   REQUIREMENT OF THAT SENTENCE?
```

1   A    THAT IF YOU BELIEVE THAT YOUR PROPOSAL

2   CONTAINS IPR THAT MAY BE ESSENTIAL, THEN YOU SHOULD

3   DISCLOSE IT BEFORE OR AT THE POINT OF WHICH THAT

4   PROPOSAL IS ADOPTED.

5   Q    AND, SIR, IN YOUR OPINION, DID SAMSUNG COMPLY

6   WITH THAT PROPOSAL?

7   A    IN NEITHER CASE DID THEY COMPLY WITH IT.

8            MR. MUELLER:  I HAVE NOTHING FURTHER.

9            THE COURT:  ALL RIGHT.  IT'S 11:30.  ANY

10  RECROSS.

11           MR. VERHOEVEN:  JUST ONE SECOND, YOUR

12  HONOR.

13           THE COURT:  OKAY.

14           (PAUSE IN PROCEEDINGS.)

15           MR. VERHOEVEN:  YOUR HONOR, IN THE

16  INTEREST OF TIME, I'M NOT GOING TO HAVE ANY FURTHER

17  EXAMINATION.

18           THE COURT:  ALL RIGHT.  MAY THIS WITNESS

19  BE EXCUSED AND IS IT SUBJECT TO RECALL OR NOT?

20           MR. MUELLER:  NOT SUBJECT TO RECALL, YOUR

21  HONOR.

22           THE COURT:  OKAY.  YOU MAY BE EXCUSED.

23           CALL YOUR NEXT WITNESS, PLEASE.

24           MR. LEE:  YOUR HONOR, APPLE CALLS

25  MR. DONALDSON.

```
 1              THE COURT:  OKAY.  IF ANYONE WANTS TO

 2    STAND UP AND STRETCH DURING THE TRANSITION TIME,

 3    PLEASE DO SO.

 4              DO WE HAVE PHOTOS OR ANYBODY.

 5              MR. MUELLER:  WE'VE TAKEN THEM, YOUR

 6    HONOR.  WE'LL PASS THEM UP OF THE I THINK THEY'RE

 7    BEING PRINTED.

 8              MR. LEE:  THERE THEY ARE, YOUR HONOR.

 9              THE COURT:  GO AHEAD AND PASS THEM OUT.

10              THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

11                   RICHARD DONALDSON,

12    BEING CALLED AS A WITNESS ON BEHALF OF THE

13    PLAINTIFF, HAVING BEEN FIRST DULY SWORN, WAS

14    EXAMINED AND TESTIFIED AS FOLLOWS:

15              THE WITNESS:  I DO.

16              THE CLERK:  THANK YOU.  PLEASE BE SEATED.

17              THE COURT:  CAN YOU PASS THE PHOTOGRAPHS.

18              I WANT PEOPLE TO WRITE NOTES ON THE

19    PHOTOS AND IF YOU GIVE THEM TO US LATE, THEY DON'T

20    GET TO WRITE NOTES ON THE PHOTOS.

21              MR. MUELLER:  SORRY, YOUR HONOR.

22                   DIRECT EXAMINATION

23    BY MR. MUELLER:

24    Q    GOOD MORNING, MR. DONALDSON.  COULD YOU PLEASE

25    INTRODUCE YOURSELF TO THE JURY.
```

3532

```
1     A    YES.  MY NAME IS RICHARD DONALDSON.

2              THE COURT:  TIME IS 11:32.

3              THE WITNESS:  I LIVE IN PLANO, TEXAS.

4     BY MR. MUELLER:

5     Q    HAVE YOU BEEN RETAINED BY APPLE AS AN EXPERT

6     WITNESS IN THIS CASE?

7     A    YES, SIR, I HAVE.

8     Q    COULD YOU BRIEFLY SUMMARIZE YOUR EDUCATION AND

9     PROFESSIONAL BACKGROUND?

10    A    YES.  I HAVE A DEGREE IN ELECTRICAL

11    ENGINEERING; I HAVE A LAW DEGREE FROM ST. LOUIS

12    UNIVERSITY; AND THEN I HAVE A MASTER'S OF LAW

13    DEGREE FROM GEORGE WASHINGTON UNIVERSITY WHERE I

14    SPECIALIZED IN PATENT AND TRADE REGULATION.

15    Q    WHAT IS YOUR PROFESSIONAL BACKGROUND, SIR?

16    A    YES, FROM MY WORK WITH RESPECT TO PATENTS, I

17    WENT TO WORK FOR TEXAS INSTRUMENTS IN 1969 AS A

18    PATENT ATTORNEY.  I WORKED THERE FOR 31 YEARS,

19    FOCUSSED MOST OF MY TIME AS THE CHIEF LICENSING

20    PERSON AT TEXAS INSTRUMENTS.

21              I BECAME GENERAL PATENT COUNSEL AND

22    RETIRED FROM TEXAS INSTRUMENTS IN 2000 AS GENERAL

23    PATENT COUNSEL AND SENIOR VICE PRESIDENT OF TEXAS

24    INSTRUMENTS.

25    Q    SIR, HOW MANY LICENSES HAVE YOU NEGOTIATED AS
```

1    A PRINCIPAL NEGOTIATOR?

2    A    THAT WOULD BE IN THE HUNDREDS.

3    Q    AND HAVE YOU NEGOTIATED LICENSES THAT COVER

4    SOMETHING KNOWN AS FAIR, REASONABLE, AND

5    NON-DISCRIMINATORY COMMITTED PATENTS, OR FRAND

6    PATENTS?

7    A    YES, SIR, I HAVE.

8    Q    CAN YOU EXPLAIN BRIEFLY?

9    A    MANY OF THE LICENSES, IN FACT, MOST OF THE

10   LICENSES THAT I NEGOTIATED WOULD INCLUDE PATENTS

11   RELATED TO FRAND.

12           I ALSO, SINCE RETIRING FROM TEXAS

13   INSTRUMENTS, HAVE BEEN IN LICENSING CONSULTING, AND

14   IN CONSULTING WITH OTHER COMPANIES.  I'VE ACTUALLY

15   DONE NEGOTIATIONS INVOLVING FRAND PATENTS.

16           AND I'VE ALSO SERVED AS A WITNESS, OR AS

17   AN EXPERT IN PATENT LITIGATION WHERE FRAND PATENTS

18   WERE ASSERTED.

19           MR. MUELLER:  YOUR HONOR, I OFFER

20   MR. DONALDSON AS AN EXPERT IN PATENT LICENSING,

21   INCLUDING FRAND PATENT LICENSING.

22           MS. MAROULIS:  NO OBJECTION.

23           THE COURT:  ALL RIGHT.  HE IS CERTIFIED.

24   GO AHEAD, PLEASE.

25   BY MR. MUELLER:

1    Q    MR. DONALDSON, CAN YOU BRIEFLY SUMMARIZE ANY

2    DIFFERENCES THAT, IN YOUR OPINION, DISTINGUISH

3    FRAND PATENTS FROM OTHER PATENTS?

4    A    YES, THERE ARE SEVERAL, MANY DISTINCTIONS, AND

5    I HAVE A SLIDE THAT --

6    Q    LET'S PUT IT UP.  PDX 49.2, PLEASE.  WHAT DO

7    WE SEE HERE?

8    A    THIS SLIDE SHOWS THREE AREAS OF MATERIAL

9    DIFFERENCES BETWEEN HOW YOU GO ABOUT LICENSES WHAT

10   YOUR RIGHTS ARE WITH RESPECT TO LICENSES PATENTS

11   THAT ARE SUBJECT TO FRAND OBLIGATIONS AND PATENTS

12   THAT ARE NOT SUBJECT TO THAT.

13   Q    FIRST ROW REFERS TO EXCLUSIVE USE.  CAN YOU

14   EXPLAIN?

15   A    WELL, YES.  THE FRAND PATENTS, AS EXPLAINED

16   EARLIER TODAY, THEY RELATE TO PATENTS THAT ARE

17   GENERATED WITH RESPECT TO AN INDUSTRY STANDARD,

18   SUCH AS UMTS.

19        AND ONE OF THE PURPOSES OF THAT STANDARD

20   IS WIDE DISTRIBUTION OR USE THROUGHOUT THE

21   INDUSTRY.

22        SO COMPANIES WHO OBTAIN PATENTS RELATING

23   TO THAT SPECIFICATION SIGN AN UNDERTAKING THAT THEY

24   WILL LICENSE IT TO ANYONE WHO WANTS A LICENSE

25   UNDERSTOOD IT, AND THAT MEANS THEY DO NOT HAVE

1    EXCLUSIVE USE.

2            WHEREAS IF YOU GO TO THE NON-FRAND

3    PATENTS, THAT'S ONE OF THE PRIMARY RIGHTS OF A

4    PATENT OWNER IS TO HAVE EXCLUSIVE USE OF THAT

5    PATENT.

6    Q    SECOND ROW REFERS TO FREEDOM TO DETERMINE

7    ROYALTY AMOUNT.  CAN YOU EXPLAIN TO THE JURY WHAT

8    THAT MEANS?

9    A    YES.  WITH RESPECT TO THESE FRAND PATENTS,

10   COMPANIES WHO OWN SUCH A PATENT ARE UNDER SOME

11   MATERIAL LIMITATIONS OR RESTRICTIONS OF WHAT WE CAN

12   DO WHEN THEY LICENSE THAT PATENT.

13           AND IN PARTICULAR, THEY ARE COMMITTING

14   THEMSELVES TO SAY THEY WILL LICENSE THESE PATENTS

15   UNDER FAIR, REASONABLE, EXAMINE NON-DISCRIMINATORY

16   TERMS, WHICH ARE VERY SIGNIFICANT LIMITATIONS.

17           WHEREAS IF YOU GO TO OTHER PATENTS, THERE

18   ARE NO RESTRICTIONS.  YOU CAN LICENSE AT WHATEVER

19   THE MARKET WILL BEAR.

20   Q    LAST ROW REFERS TO DISTINGUISHING PRODUCTS

21   FROM COMPETITORS.  CAN YOU EXPLAIN THAT, PLEASE?

22   A    WELL, AGAIN, WHEN YOU LOOK AT THE PATENTS THAT

23   RELATE TO THESE SPECIFICATIONS THAT ARE SUBJECT TO

24   THESE FRAND OBLIGATIONS, YOU HAVE MADE A COMMITMENT

25   AS A PATENT OWNER TO LICENSE IT TO ANYONE WHO WANTS

```
 1    A LICENSE.  SO YOU CANNOT DISTINGUISH ANY PRODUCT
 2    FROM ANOTHER PRODUCT BECAUSE THEY ALL HAVE A RIGHT
 3    TO USE ALL OF THE FRAND PATENTS.
 4          WHEREAS OTHER PATENTS, THESE ARE
 5    SOMETIMES SOME OF THE MOST IMPORTANT PATENTS THAT A
 6    COMPANY CAN OWN BECAUSE THEY COVER THE BELLS AND
 7    THE WHISTLES OF A PRODUCT.  THEY COVER FEATURES
 8    THAT WILL DISTINGUISH YOUR PRODUCT FROM A
 9    COMPETITOR'S PRODUCT.  AND YOU CAN KEEP THOSE
10    FEATURES JUST TO YOURS AND NOT LICENSE THEM AT ALL,
11    OR WHEN YOU DO LICENSE IT, YOU CAN GET
12    SUBSTANTIALLY HIGHER ROYALTIES, IN MY EXPERIENCE,
13    THAN WHAT YOU WOULD GET FROM A FRAND-RELATED
14    PATENT.
15    Q    SIR, IF YOU COULD TURN TO TAB 2 IN YOUR
16    BINDER, THIS IS PX 80, THE SAMSUNG PORTFOLIO
17    PROPOSAL THAT THE JURY HEARD ABOUT YESTERDAY FROM
18    DR. TEECE.
19          DO YOU HAVE AN OPINION AS TO WHETHER THIS
20    PORTFOLIO PROPOSAL MET SAMSUNG'S REQUIREMENTS OF
21    FRAND LICENSING?
22    A    YES, IN MY OPINION, IT DOES NOT MEET THE
23    REQUIREMENTS TO LICENSE UNDER FRAND TERMS.
24    Q    CAN YOU EXPLAIN WHY NOT, SIR?
25    A    BECAUSE THE ROYALTY BASE THAT IS USED AND THE
```

```
 1    ROYALTY RATE THAT IS USED TO CALCULATE THE

 2    ROYALTIES ARE NOT REASONABLE.  THEY'RE NOT FAIR AND

 3    REASONABLE.

 4    Q    AND JUST SO WE'RE CLEAR, WHEN YOU REFER TO THE

 5    RATE AND THE BASE, ARE YOU REFERRING TO 2.4 PERCENT

 6    OF THE PRICE OF EACH APPLE PRODUCT?

 7    A    THAT IS CORRECT.

 8    Q    AND THE RATE IS 2.4 PERCENT?

 9    A    AND THE BASE IS THE ENTIRE PRICE, SELLING

10    PRICE OF ONE OF THE ACCUSED PRODUCTS, LIKE THE

11    IPHONE.

12    Q    NOW, LET'S FOCUS FIRST ON THE BASE.  DO YOU

13    HAVE AN OPINION AS TO WHETHER OR NOT THE BASE IN

14    THE SAMSUNG PROPOSAL COMPLIED WITH FRAND?

15    A    YES, I BELIEVE IT DOES NOT APPLY TO FRAND.

16    Q    AND WHY NOT, SIR?

17    A    BECAUSE IN LICENSING, WHEN YOU ARE LICENSING A

18    PATENT, YOU PRIMARILY, WHEN YOU SELECT THE ROYALTY

19    BASE, ARE LOOKING FOR SOMETHING THAT MOST CLOSELY

20    RELATES TO THE SCOPE OF THE PATENT.

21          HERE WE'RE TALKING ABOUT TWO PATENTS THAT

22    COVER UMTS, THEY COVER CELL PHONE APPLICATIONS.

23          THE IPHONE, OR THE IPOD THAT ARE ACCUSED,

24    THEY COVER MANY, MANY OTHER FEATURES.  IN FACT, THE

25    ONLY CAPABILITY, WHAT PROVIDES THE CAPABILITY IN
```

```
 1    THESE PRODUCTS IS THE UMTS CHIPSET, OR THE BASEBAND

 2    CONTROLLER, WHICH IS JUST ONE SMALL PART OF THE

 3    PHONE.

 4              AND THAT WOULD BE A MORE REASONABLE

 5    BASIS, BECAUSE OTHERWISE YOU'RE OBTAINING ROYALTIES

 6    ON VALUE COMPLETELY UNRELATED TO YOUR PATENT.

 7    Q    NOW, SIR, WERE YOU HERE YESTERDAY FOR THE

 8    TESTIMONY OF TONY BLEVINS FROM APPLE?

 9    A    YES, I WAS.

10    Q    AND DID YOU HEAR HIM DISCUSS HOW MUCH APPLE

11    PAYS FOR THE BASEBAND PROCESSORS AND THE PRODUCTS

12    ACCUSED?

13    A    YES.  AS I RECALL HE TESTIFIED THAT APPLE

14    PURCHASES THESE BASEBAND CONTROLLER FROM INTEL AND

15    THE PRICE IS BETWEEN $6 AND $10 PER UNIT.

16    Q    HOW DOES THAT COMPARE TO THE ROYALTIES THAT

17    SAMSUNG WAS DEMANDING UNDER THIS PROPOSAL?

18    A    WELL, SAMSUNG IS APPLYING, IN THIS PROPOSAL A

19    ROYALTY OF 2.4 PERCENT TO A PRODUCT THAT SELLS FOR

20    $600, WHERE THE CAPABILITY TO DO THE CELL PHONE,

21    THE UMTS CHIPSET, SELLS FOR $6 TO $12.  I THINK $12

22    IS WHAT HE USED.

23    Q    AND DO YOU KNOW HOW MUCH THE SAMSUNG ROYALTY

24    WOULD TRANSLATE INTO IN DOLLARS AND CENTS?

25    A    YES, UNDER SAMSUNG'S PROPOSAL, IT WOULD BE
```

3539

```
 1    OVER $14 FOR EACH PRODUCT.

 2    Q    AS COMPARED TO WHAT PRICE FOR THE BASEBAND?

 3    A    BETWEEN $6 AND $12.

 4    Q    NOW, WHAT DOES THE N-D IN FRAND STANDS FOR?

 5    A    IT STANDS FOR NON-DISCRIMINATORY.

 6    Q    WAS SAMSUNG PROPOSAL NON-DISCRIMINATORY?

 7    A    NO, I BELIEVE IT IS DISCRIMINATORY.

 8    Q    COULD YOU EXPLAIN?

 9    A    SURE.  BECAUSE THE FUNCTIONALITY THAT THESE

10    PATENTS RELATE TO IS CELL PHONE CAPABILITY.  THAT'S

11    PROVIDED BY THE UMTS CHIP THAT SELLS FOR $6 TO $12.

12         SO IF A COMPANY, ONE COMPANY BUILDS JUST

13    A STANDARD CELL PHONE, SELLING FOR MAYBE $100, THEY

14    WOULD PAY 2.4 PERCENT UNDER THAT EXAMPLE, OR $2.04.

15         BUT IF YOU APPLY THE 2.4 PERCENT TO THE

16    ENTIRE PRICE OF AN APPLE SMARTPHONE, THAT'S $600,

17    THAT'S OVER $14 FOR CAPABILITIES AND

18    FUNCTIONALITIES UNRELATED TO THE CELL PHONE.

19    Q    AND YOU VIEW THAT AS DISCRIMINATORY?

20    A    YES, I CERTAINLY DO.

21    Q    NOW, LET'S SWITCH GEARS FOR A MOMENT.  I WANT

22    TO ASK YOU TO TURN TO TAB 3 IN YOUR BINDER.  THIS

23    IS A REDACTED VERSION OF A LICENSE AGREEMENT.  THE

24    JURY WILL HAVE THE FULL VERSION, BUT THE PUBLIC

25    WILL HAVE A REDACTED VERSION OF THIS AGREEMENT.
```

1              DO YOU RECOGNIZE IT?

2   A    YES, I DO.

3   Q    WHAT IS IT?

4   A    THIS IS A LICENSE AGREEMENT BETWEEN SAMSUNG

5   AND INTEL THAT REALLY RELATES TO A BROAD RANGE OF

6   INTEGRATED CIRCUITS, BUT IT'S A LICENSE THAT WOULD

7   INCLUDE A BASEBAND CONTROLLER.

8   Q    BETWEEN INTEL?

9              MS. MAROULIS:  YOUR HONOR, OBJECTION WITH

10  REFERENCE TO PRIOR PRETRIAL ORDER AS TO THE SCOPE

11  OF MR. DONALDSON'S TESTIMONY.

12             MR. MUELLER:  YOUR HONOR, I'M GOING TO

13  ASK ONLY ABOUT MR. DONALDSON'S UNDERSTANDING AS TO

14  HOW PARTICULAR TERMS ARE COMMONLY UNDERSTOOD IN THE

15  ENTRY.  THAT'S PRECISELY WHAT YOU ALLOWED IN DOCKET

16  ENTRY 1157 ON JUNE 30TH.

17             THE COURT:  GO AHEAD.

18  Q    MR. DONALDSON, DO YOU HAVE PERSONAL EXPERIENCE

19  LICENSING IN THE SEMICONDUCTOR INDUSTRY?

20  A    YES.  MOST OF MY CAREER AT T.I. WAS DOING JUST

21  THAT.

22  Q    LET'S TAKE A LOOK AT SECTION 31(A)(1), WHICH

23  IS PART OF THE MATERIALS IN THIS LICENSE AGREEMENT.

24             AND, YOUR HONOR, BEFORE I DO, I OFFER

25  THIS.

```
 1              THE COURT:  ANY OBJECTION, MS. MAROULIS?

 2              MS. MAROULIS:  NO OBJECTION OTHER THAN

 3    STATED.

 4              THE COURT:  IT'S ADMITTED.

 5              (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

 6              81, HAVING BEEN PREVIOUSLY MARKED FOR

 7              IDENTIFICATION, WAS ADMITTED INTO

 8              EVIDENCE.)

 9    BY MR. MUELLER:

10    Q    THIS IS THE REDACTED VERSION.  I'M GOING TO

11    ASK YOU TO TURN TO THIS SECTION, WHICH IS SOMETHING

12    THE PUBLIC CAN SEE, AND DO YOU SEE WHERE IT SAYS

13    SUBJECT TO THE TERMS AND CONDITIONS OF THIS

14    AGREEMENT, SAMSUNG HERE BY GRANDS TO INTEL A

15    NONEXCLUSIVE, NON TRANSFERRABLE, ROYALTY-FREE

16    WORLDWIDE LICENSE, WITHOUT THE RIGHT TO SUBLICENSE,

17    UNDER SAMSUNG'S PATENTS TO MAKE, USE, SELL,

18    DIRECTLY OR INDIRECTLY, OFFER TO SELL, IMPORT, OR

19    OTHERWISE DISPOSE OF ALL INTEL LICENSED PRODUCTS.

20              DO YOU SEE THAT, SIR?

21    A    I DO.

22    Q    DO YOU SEE IT SAYS ROYALTY-FREE?

23    A    I DO.

24    Q    WHAT DOES THAT MEAN WITH RESPECT TO WHAT INTEL

25    OWED SAMSUNG IN TERMS OF MONEY?
```

```
 1              MS. MAROULIS:  OBJECTION, CALLS FOR LEGAL

 2      CONCLUSION.

 3              MR. MUELLER:  YOUR HONOR, AGAIN, I'M

 4      ASKING ABOUT HOW SOMEONE IN THE INDUSTRY WOULD

 5      UNDERSTAND THESE TERMS.

 6              THE COURT:  OVERRULED.

 7              GO AHEAD.

 8              THE WITNESS:  I WAS INVOLVED IN

 9      NEGOTIATING A NUMBER OF ROYALTY-FREE CROSS LICENSES

10      OF THIS NATURE, AND IT'S JUST WHAT IT SAYS.  WHAT

11      PEOPLE UNDERSTOOD, THAT NO MONEY CHANGES HANDS

12      BETWEEN THE PARTIES.

13      Q    NOW, YOU'VE REVIEWED OTHER SAMSUNG AGREEMENTS;

14      IS THAT RIGHT?

15      A    I HAVE.

16      Q    HAVE YOU SEEN ANY EVIDENCE THAT ANYONE HAS

17      PAID SAMSUNG MONEY FOR ITS UMTS PORTFOLIO?

18      A    NO, I HAVE NOT.

19      Q    LET'S FOCUS ON THIS PROVISION.  DO YOU SEE

20      WHERE IT SAYS MAKE, USE, SELL, DIRECTLY OR

21      INDIRECTLY.  CAN YOU EXPLAIN HOW THOSE TERMS ARE

22      COMMONLY UNDERSTOOD IN THE SEMICONDUCTOR INDUSTRY?

23              MS. MAROULIS:  OBJECTION.

24              THE COURT:  OVERRULED.

25              THE WITNESS:  THIS IS UNDERSTOOD AND USED
```

```
 1              AND, HOWEVER, THERE'S A BIG INCONVENIENCE
 2    FOR THAT, BECAUSE IF YOU BUY A TOASTER AT SEARS AND
 3    YOU BRING IT HOME AND IT TURNS OUT THAT IT DOESN'T
 4    FIT THE PLUG.  WELL, YOU WASTED YOUR MONEY, OR AT
 5    LEAST YOUR TIME.
 6              SO THE STANDARD IS SET.
 7    Q    AND LET'S TALK ABOUT POST-STANDARD.  ON THE
 8    SCREEN WE HAVE THOSE SAME THREE PLUGS WITH A
 9    CHECKMARK NEXT TO ONE AND X'S NEXT TO THE OTHER.
10    WHAT DO YOU MEAN BY THAT?
11    A    WELL, WHAT I MEAN BY THAT, ONCE THE STANDARD
12    IS SET THROUGH WHATEVER MEANS, STANDARD SETTING
13    ORGANIZATIONS IN THE BUILDING TRADES, THEY WILL DO
14    THAT, THE TWO ALTERNATIVE TYPES OF PLUGS ARE NO
15    LONGER AVAILABLE FOR PURCHASE IN THE, LET'S SAY THE
16    UNITED STATES, BECAUSE THESE PLUGS NO LONGER WILL
17    FIT THE RECEPTACLES IN WHICH THEY WERE DESIGNED.
18              SOME OF THEM YOU CAN BUY IN EUROPE OR
19    CONTINENTAL EUROPE OR UK, BUT IN THE UNITED STATES
20    WE ARE DOWN TO THE PLUG DESIGN ON THE LEFT.
21              AND WHAT HAS HAPPENED IS WHATEVER
22    COMPETITION THERE MAY HAVE EXISTED BETWEEN THE
23    OWNERS OF THOSE TECHNOLOGIES TO GET THE TECHNOLOGY
24    INTO THE HANDS OF THE APPLIANCE SUPPLIERS, THAT
25    TECHNOLOGY IS NOW A MONOPOLIST IN THIS NARROW
```

1    MARKET OF THE TECHNOLOGY FOR CONNECTIVITY.

2    Q    AND, SIR, IF YOU COULD, HOW DOES THIS EXAMPLE

3    RELATE TO WHAT YOU DESCRIBED AS HOLD UP?

4    A    WELL, THE WAY THAT IT RELATES, AND AGAIN,

5    PRETTY MUCH STRAIGHTFORWARD TYPE OF CONNECTION THAT

6    I'M MAKING, AND THAT IS THAT IF THERE WAS

7    COMPETITION AND ONE OF THE -- THE GREEN PLUG

8    MANUFACTURER TRIED TO RAISE THE PRICE RELATIVE TO

9    WHAT THE RIVALS WERE CHARGING, WHICH WOULD LOSE

10   BUSINESS.

11         HOWEVER, NOW, IF THE PRICE -- IF THE

12   GREEN TECHNOLOGY GETS OVERPRICED, PEOPLE HAVE

13   NOWHERE TO GO BECAUSE YOU NEED TO HAVE THAT TYPE OF

14   PLUG-IN ORDER TO USE THE TOASTER.

15         THAT GIVES THE MANUFACTURER THE ABILITY,

16   INCREASED ABILITY TO MANIPULATE PRICE RELATIVE TO

17   THE PRE-STANDARD LEVEL.

18   Q    NOW, SIR, ARE YOU FAMILIAR WITH AN

19   ORGANIZATION CALLED THE EUROPEAN TELECOMMUNICATIONS

20   STANDARDS INSTITUTE, OR ETSI?

21   A    YES.

22   Q    AND ARE YOU FAMILIAR WITH THE ETSI

23   INTELLECTUAL PROPERTY RIGHTS POLICY?

24   A    YES, I AM.

25   Q    LET'S PUT UP PDX 44.3.  THIS QUOTES TWO

```
 1    SECTIONS FROM THE ETSI IPR POLICY, CLAUSE 4 AND

 2    CLAUSE 6.

 3               ARE YOU FAMILIAR WITH THESE PROVISIONS?

 4    A    YES, THOSE WERE DISCUSSED ACTUALLY THIS

 5    MORNING EXTENSIVELY.

 6    Q    ARE THESE BINDING ON THE ETSI MEMBERSHIP?

 7    A    THAT'S MY UNDERSTANDING.

 8    Q    FIRST RULE RELATES TO DISCLOSURE OF

 9    INTELLECTUAL PROPERTY RIGHTS.  FROM AN ECONOMIC

10    PERSPECTIVE, WHAT IS THE PURPOSE OF THIS PROVISION?

11    A    WELL, I SEE THAT PROVISION AS BEING REALLY

12    DIRECTED TOWARDS INFORMING THE STANDARD SETTING

13    BODY WHAT KIND OF TECHNOLOGIES ARE AVAILABLE AND

14    WHAT KIND OF INTELLECTUAL PROPERTY RIGHTS ATTACH TO

15    THESE ALTERNATIVE TECHNOLOGIES.

16    Q    THE SECOND RULE, CLAUSE 6, IS WHAT DR. WALKER

17    REFERRED TO AS THE FRAND PROVISION; IS THAT RIGHT?

18    A    YES, THAT'S WHAT IT IS.

19    Q    WHAT ARE THE ECONOMIC IMPLICATIONS OF THE

20    FRAND PROVISION?

21    A    WELL, THAT, I THINK, IS A BIT AT THE HARD OF

22    THE HOLD UP, BECAUSE WHAT FRAND TRIES TO IMPLEMENT

23    IS THE KIND OF RESTRICTION THAT IS A COMPETITIVE

24    MARKET WOULD IMPOSE ON THE OWNER OF TECHNOLOGY ONCE

25    THE STANDARD IS DETERMINED.  ONCE IT'S FROZEN,
```

```
 1    THERE IS NO CHOICE.  YOU HAVE TO USE THE TECHNOLOGY
 2    THAT IS IN THE STANDARD AND THE FRAND PROVISIONS,
 3    THEY REALLY TRY TO MIMIC WHAT THE MARKET,
 4    COMPETITIVE MARKET WILL DELIVER.  THEY CANNOT
 5    ALWAYS DO THAT, BUT THAT'S WHAT THEY TRY TO
 6    ACCOMPLISH.
 7    Q    NOW, SIR, WERE YOU HERE THIS MORNING FOR
 8    DR. WALKER'S TESTIMONY REGARDING WHETHER SAMSUNG
 9    COMPLIED WITH THE DISCLOSURE PROVISION, CLAUSE 4?
10    A    YES.
11    Q    AND WERE YOU HERE THIS MORNING FOR
12    MR. DONALDSON'S TESTIMONY REGARDING WHETHER SAMSUNG
13    COMPLIED WITH THE FRAND PROVISION, CLAUSE 6?
14    A    YES.
15    Q    NOW, THE LADIES AND GENTLEMEN OF THE JURY WILL
16    NEED TO DECIDE FOR THEMSELVES WHETHER THEY AGREE
17    WITH DR. WALKER AND MR. DONALDSON.
18         BUT FOR PURPOSES OF THE QUESTIONS I'M
19    ABOUT TO ASK YOU, I WANT YOU TO ASSUME THEY DO
20    AGREE.
21         DO YOU HAVE THAT IN MIND?
22    A    YES.
23    Q    IF DR. WALKER AND MR. DONALDSON ARE CORRECT,
24    WHAT ARE THE ECONOMIC CONSEQUENCES?
25    A    WELL, LET ME SUMMARIZE THEM AND SORT OF GO
```

```
 1     THROUGH THE TILE.  I THINK THE FIRST CONCEPT WAS
 2     THAT SAMSUNG'S CONDUCT DISTORTED THE DECISION
 3     MAKING PROCESS AT ETSI.
 4          SECOND, THAT DISTORTION HAS LED TO A
 5     CHOICE OF TECHNOLOGY THAT MAY NOT HAVE BEEN CHOSEN
 6     BUT FOR ITS CONDUCT.
 7          NUMBER THREE, IT ENABLED SAMSUNG'S
 8     TECHNOLOGY TO BE INTRODUCED, AT LEAST THEY CLAIM IT
 9     HAS BEEN INTRODUCED, BECOME PART OF THE STANDARD.
10     THEY THINK OF THEMSELVES AS STANDARD ESSENTIAL
11     TECHNOLOGIES.
12          AS A FINAL STEP, BECAUSE THEY ARE NOW
13     STANDARD, PROCEED TO SELL STANDARD ESSENTIAL
14     TECHNOLOGIES FOR THESE TWO TYPES OF FEATURES THAT
15     UMTS IMPLEMENTS, THEY HAVE ACQUIRED WHAT I CALL THE
16     HOLDUP POWER, THE PATENT OWNER HOLDUP POWER, AND
17     THAT IS THE RISK THAT THE STANDARD SETTING CREATES,
18     AND THAT'S THE RISK THAT THE PROVISION 6.1 IS
19     SUPPOSED TO CONTROL.
20     Q    DR. ORDOVER, AS AN ECONOMIST, HOW DO YOU
21     MEASURE THE TYPES OF CONSEQUENCES THAT YOU'VE
22     DESCRIBED?
23     A    WELL, THE -- FIRST OF ALL, YOU CAN LOOK AT THE
24     CONSEQUENCES AN INCENTIVE TO INNOVATE, YOU CAN LOOK
25     AT THE CONSEQUENCES OF THE PRICING OF THE
```

```
 1    TECHNOLOGY, WHICH IS CRITICAL INPUT INTO THE COST

 2    OF MANUFACTURING THESE HANDSETS.

 3              YOU CAN LOOK AT THE OVERALL PRICING IN

 4    THE MARKETPLACE, AND IN PARTICULAR, THE QUESTION

 5    BECOMES THAT OF WHETHER YOU HAVE SEEN AN EMERGENCE

 6    OF MARKET POWER OR MONOPOLY POWER IN THE HANDS OF

 7    THE FIRM THAT IS SUPPLYING THE TECHNOLOGY.

 8    Q    NOW, SIR, ARE YOU FAMILIAR WITH A CONCEPT

 9    CALLED A TECHNOLOGY MARKET?

10    A    YES, I AM.

11    Q    WHAT IS A TECHNOLOGY MARKET?

12    A    WELL, THE PLACE, THE SOURCE CODE FOR IT, THAT

13    IDEA; IN THE UNITED STATES DEPARTMENT OF JUSTICE

14    FEDERAL TRADE COMMISSION GUIDELINES FOR LICENSING

15    OF INTELLECTUAL PROPERTY.

16              AND THESE GUIDELINES DESCRIBE THE

17    TECHNOLOGY MARKET AS CONSISTING OF TECHNOLOGIES

18    THAT A REASONABLE GROUP SUBSTITUTES FOR EACH OTHER.

19    THEY DON'T HAVE TO BE PERFECT SUBSTITUTES, BUT THEY

20    HAVE TO BE GOOD ENOUGH SUBSTITUTES SO THAT IN THE

21    MARKETPLACE, IF ALL OF THEM ARE PRESENT, THEY WILL

22    PRESS DOWN ON THE PRICE OF THE TECHNOLOGY, WHICH IS

23    THE LICENSE PRICES.

24              GOING BACK TO THE PLUGS, THE TECHNOLOGY

25    MARKET WOULD CONSIST OF THE THREE TYPES OF PLUG
```

1    SOLUTIONS, BUT AFTER THE STANDARD IS SET, IT'S

2    GOING TO BE ONLY ONE TECHNOLOGY IN THE RELEVANT

3    MARKET.

4    Q    NOW, COULD YOU EXPLAIN TO THE JURY, PLEASE,

5    THE DIFFERENCE BETWEEN THE TECHNOLOGY MARKET ON THE

6    ONE HAND AND A PRODUCT MARKET ON THE OTHER?

7    A    YES.  JUST SOME OF THE EXAMPLES I'M GOING TO

8    USE THE ONE THAT I USE IN MY CLASS.  SO YOU MAY

9    HAVE A MARKET FOR TECHNOLOGIES TO MAKE JAM.  THAT

10   TECHNOLOGY MARKET IS BASICALLY, IN THE OLDEN DAYS

11   YOU WOULD TAKE THE CHERRIES AND YOU COULD COOK THEM

12   DOWN IN THE POT.  BUT THESE DAYS, OF COURSE THIS IS

13   NOT THE WAY JAM IS MADE.  AT THE SAME TIME, THERE

14   IS A DOWNSTREAM MARKET FOR JAM.  THERE ARE MANY

15   FIRMS PRODUCING JAM AND THEY COMPETE ON TOP OF THE

16   TECHNOLOGY WITH THEIR OWN INNOVATIONS.

17          SO IN THE TECHNOLOGY MARKET, WE HAVE

18   COMPETING JAM MAKING TECHNOLOGIES, AND ON THE LOWER

19   LEVEL, WHICH IS CALLED THE DOWNSTREAM MARKET IN

20   ECONOMICS, WE HAVE JAMS.

21          AND HOPEFULLY THERE'S A VIBRANT

22   COMPETITION UPSTREAM AND THE TECHNOLOGY MARKET AND

23   HOPEFULLY THERE IS VIBRANT COMPETITION IN THE

24   DOWNSTREAM MARKET, WHICH IS THE JAMS .

25   Q    NOW, SIR, FOR SAMSUNG'S '516 AND '941 PATENTS,

1    HAVE YOU ATTEMPTED TO DETERMINE RELEVANT TECHNOLOGY

2    MARKETS?

3    A    YES.  I THINK THERE WAS RELEVANT TESTIMONY BY

4    DRS. KIM AND KNIGHTLY WHICH DESCRIBE THE RELEVANT

5    TECHNOLOGIES AS CENTERING ON THE TECHNOLOGIES THAT

6    SAMSUNG SPONSORED INTO THE STANDARD, AND ALL THE

7    OTHER TECHNOLOGIES THAT COULD HAVE PERFORMED THE

8    FEATURES ON WHICH THOSE TECHNOLOGIES READ.

9    Q    NOW, ARE YOU REFERRING TO TECHNICAL

10   ALTERNATIVES?

11   A    YES, I AM REFERRING TO TECHNICAL ALTERNATIVES,

12   AND I'M REMINDING MYSELF, AND EVERYONE ELSE, THAT

13   THESE TECHNICAL ALTERNATIVES DO NOT HAVE TO BE

14   PERFECT SUBSTITUTES, BUT THEY HAVE TO BE GOOD

15   ENOUGH SUBSTITUTES THAT PRIOR TO STANDARDIZATION,

16   THEY COULD HAVE BEEN REASONABLE ALTERNATIVES FROM

17   THE STANDPOINT OF THE DESIGNER OF THE STANDARD.

18   Q    NOW, YOU WERE HERE FOR THE TESTIMONY OF

19   DR. KIM AND DR. KNIGHTLY?

20   A    YES.

21   Q    ON THE ISSUE OF TECHNICAL ALTERNATIVES, WE'RE

22   GOING TO LET THE JURY EVALUATE THE TESTIMONY OF

23   DR. KIM AND DR. KNIGHTLY AND I'M NOT GOING TO ASK

24   YOU ABOUT THOSE TECHNICAL ISSUES, OKAY?

25   A    OKAY.  THAT'S GOOD.

1    Q    IF YOU COULD, THOUGH, THE TECHNOLOGY MARKETS

2    THAT YOU'VE DESCRIBED, WHAT IS THE GEOGRAPHIC SCOPE

3    OF THOSE MARKETS?

4    A    I THINK IT'S COMMONLY RECOGNIZED, BY

5    ECONOMISTS AND INTELLECTUAL PROPERTY LICENSES

6    GUIDELINES THAT I REFERENCED ALREADY, THEY

7    GENERALLY REFER TO TECHNOLOGY MARKETS AS BEING

8    GLOBAL.

9         NOW, WHAT IS A TECHNOLOGY MARKET?  WELL,

10   AS I SAID, IT'S A MARKET THAT CONSISTS OF THE

11   ALTERNATIVE TECHNOLOGIES FOR A PARTICULAR FEATURE,

12   AND IT'S QUITE CLEAR THAT THESE TECHNOLOGIES CAN BE

13   PROCURED FROM ANYWHERE IN THE WORLD.

14        THESE -- THESE ARE RECOGNIZED BY ETSI,

15   WHICH IS INVITING PARTICIPATION OF FIRMS LOCATED IN

16   EVERY CONCEIVABLE COUNTRY OF THE WORLD.  IT IS

17   NOT -- EVEN THOUGH IT'S A EUROPEAN ORGANIZATION, WE

18   KNOW THAT MEMBERS ARE GLOBAL FIRMS OR INTERNATIONAL

19   FIRMS.

20        AND, THEREFORE, I WOULD SAY THAT THE

21   TECHNOLOGY MARKET IS GLOBAL, UNLIKE THE MARKET FOR

22   HAIRCUTS.  IF YOU LIVE IN SAN JOSE, YOU'RE NOT

23   LIKELY GOING TO SPEND LOTS OF MONEY TO GO TO

24   SAN FRANCISCO FOR A HAIRCUT, ALTHOUGH SOME PEOPLE

25   HAVE BEEN KNOWN TO DO THAT.

3584

```
 1            SO THE POINT I'M MAKING THAT HOW BROAD IS
 2    THE GEOGRAPHIC MARKET DEPENDS ON THE PRODUCT,
 3    DEPENDS ON THE -- ON HOW COSTLY IT IS TO GET IT
 4    FROM SOMEWHERE ELSE, WHETHER THE QUALITY AS IT
 5    TRAVELS LONG DISTANCES, NONE OF THAT HAPPENS TO
 6    TECHNOLOGY.  IT'S FREE TO TRANSPORT.  IT WAS AS
 7    GOOD AS IT WAS IN KOREA WHEN IT GOT TO THE
 8    UNITED STATES.
 9    Q    NOW, SIR, JUST TO WE'RE CLEAR, YOU'RE DEFINING
10    YOUR TECHNOLOGY MARKETS BY REFERENCE TO FEATURES IN
11    THE STANDARD?
12    A    YES, THE TECHNOLOGY MARKETS IN THIS CASE ARE
13    COEXTENSIVE, YOU CAN THINK OF IT THAT WAY, WITH THE
14    ACTUAL FEATURES THAT I'M DESCRIBING IN THOSE
15    RELEASES THAT PROFESSOR WALKER WALKED US THROUGH
16    THIS MORNING.
17    Q    NOW, DO YOU HAVE AN OPINION AS TO WHETHER
18    SAMSUNG ACQUIRED MONOPOLY POWER IN PARTICULAR
19    TECHNOLOGY MARKETS?
20    A    YES.  BUT BEFORE I EXPLAIN, LET ME STAND BACK
21    FOR A MOMENT AND MAKE A DISTINCTION BETWEEN MARKET
22    POWER AND MONOPOLY POWER.
23            MANY FIRMS HAVE MARKET POWER IN THE
24    ECONOMY.  WHAT DOES THAT MEAN?  THEY CAN MANIPULATE
25    THEIR PRICES UP AND DOWN A LITTLE BIT WITHOUT
```

```
 1    GAINING ALL OF THE BUSINESS FROM EVERYBODY OR
 2    LOSING ALL OF THE BUSINESS.
 3            SO THE FACT THAT YOU CAN HAVE SOME
 4    FLEXIBILITY IN YOUR PRICING IS DEFINED IN ECONOMICS
 5    AS MARKET POWER.
 6            WHAT DO I MEAN BY MONOPOLY POWER?  WELL,
 7    MONOPOLY POWER IS SOMETHING GREATER THAN THAT, IT
 8    IS THE ABILITY TO RAISE PROFITABLY, AND THAT'S THE
 9    KEY THING, PROFITABLY THE PRICE ABOVE THE BENCHMARK
10    OR COMPETITIVE LEVEL WITHOUT LOSING THE BUSINESS
11    EITHER TO THE EXISTING FIRMS OR INVITING ENOUGH NEW
12    ENTRANTS TO TAKE THE BUSINESS AWAY FROM YOU.  SO IT
13    HAS TO BE A SIGNIFICANT INCREASE FOR A PERSISTENT
14    PERIOD.
15    Q    HAS SAMSUNG EXERCISED MONOPOLY POWER?
16    A    WELL, IT GAINED MONOPOLY PRESENCE IN THESE TWO
17    TECHNOLOGY MARKETS, AND I THINK AS WE HEARD FROM
18    MR. DONALDSON, IT HAS ACTED IN A WAY THAT, THAT
19    EVIDENCES THAT IT HAS GAINED MONOPOLY POWER BY
20    VIRTUE OF MAKING LICENSING DEMANDS TO SAMSUNG -- TO
21    APPLE, AND ONLY TO APPLE, ACTUALLY, THAT ARE
22    INCONSISTENT WITH THE FRAND PRINCIPLE.
23            THAT, TO ME, EVIDENCES THAT THEY'VE
24    GAINED MONOPOLY POWER BECAUSE NOBODY CAN NOW TAKE
25    THEM OUT OF THE STANDARD UP UNTIL SUCH TIME AS THE
```

```
1    SAYING WE RECEIVED JURY NOTE NUMBER 3.  WOULD THAT

2    BE HELPFUL?  HE CAN ALSO DO A PHONE TREE.

3                MR. MINTZ IS HERE FROM THE MERCURY NEWS.

4    WE CAN NOTIFY AND HE CAN LET -- HE'S THE ONE THAT'S

5    BASED IN THIS COURTHOUSE, IF HE CAN LET FOLKS KNOW,

6    JUST IN CASE ECF MAY SOME DOWN, IT HAS IN THE PAST,

7    AND THAT WAY WE CAN STILL COMMUNICATE WITH YOU.

8                THE WITNESS:  E-MAIL ME.

9                THE COURT:  WE DON'T WANT TO BE

10   RESPONSIBLE FOR E-MAILING EVERYBODY.  WE COULD LET

11   MR. MINTZ KNOW AND IF YOU ALL COULD WORK IT OUT.

12               THE WITNESS:  YES, WE'LL WORK ON IT,

13   JUDGE.

14               AUDIENCE:  IS BETTER THAN PHONE TREE.

15               THE COURT:  IS MS. PARKER-BROWN WILL BE

16   BACK NEXT WEEK, AND SHE'LL E-MAIL MR. MINTZ.  WE

17   CAN ALSO FILE THINGS ON ECF SINCE YOU'RE PROBABLY

18   ALSO GETTING ECF NOTICES, AND MAYBE IT WOULD BE

19   EASIER -- WE CAN JUST E-FILE WHEN THE JURY STARTED

20   EACH DAY AND WHEN THEY'VE LEFT, AND IF THERE'S EVER

21   A NOTE OR A VERDICT, WE'LL JUST DO A CLERK'S

22   NOTICE.

23               AUDIENCE:  THANK YOU VERY MUCH.

24               THE COURT:  YOU CAN FIND THAT, BETWEEN

25   THAT AND THE E-MAIL TREE, I THINK WE SHOULD BE
```

```
 1    OKAY.
 2              THE WITNESS:  THANK YOU.
 3              THE COURT:  ALL RIGHT.  LET'S GO AHEAD
 4    AND FINISH UP THEN.
 5              (WHEREUPON, THE FOLLOWING PROCEEDINGS
 6    WERE HELD IN THE PRESENCE OF THE JURY:)
 7              THE COURT:  WELCOME BACK.  WE'RE IN OUR
 8    LAST 36 MINUTES.
 9              ALL RIGHT.  MR. LEE.
10              MR. LEE:  APPLE RESTS, YOUR HONOR.
11              THE COURT:  OH, OKAY.  ALL RIGHT.
12              MR. PRICE:  WE SAVED TIME FOR ME.
13              THE COURT:  ALL RIGHT.  THEN IT'S 3:07.
14    LET'S GO BACK THEN TO SAMSUNG.  WHO WOULD YOU LIKE
15    TO CALL?
16              MS. MAROULIS:  YOUR HONOR, SAMSUNG CALLS
17    DR. DAVID TEECE.
18              THE COURT:  YOU KNOW, JUST BELTS AND
19    SUSPENDERS, WE'RE GOING TO RESWEAR IN EVERYONE LIKE
20    WE DID WITH THE OTHER WITNESSES.  OKAY.
21              MS. MAROULIS:  YES.
22              THE COURT:  PLEASE RAISE YOUR RIGHT HAND.
23                        DAVID TEECE,
24    BEING RECALLED AS A WITNESS ON BEHALF OF THE
25    DEFENDANTS, HAVING BEEN PREVIOUSLY SWORN, WAS
```

3643

```
 1    EXAMINED AND TESTIFIED AS FOLLOWS:
 2              THE WITNESS:  I DO.
 3              THE CLERK:  THANK YOU.  PLEASE BE SEATED.
 4              THE COURT:  ALL RIGHT.  TIME IS NOW 3:08,
 5    GO AHEAD, PLEASE WITH YOUR DIRECT.
 6                     DIRECT EXAMINATION
 7    BY MS. MAROULIS:
 8    Q    WELCOME BACK.  DO YOU AGREE WITH THE TESTIMONY
 9    OF DR. WALKER THAT DISCLOSURE TO ETSI AFTER THE
10    ADOPTION OF THE STANDARD IS UNTIMELY?
11    A    NO.  BASED ON WHAT I'VE OBSERVED FROM THE
12    PUBLIC DATABASE OF ETSI, I DON'T.
13    Q    HAVE YOU CONDUCTED AN EMPIRICAL STUDY OF HOW
14    THE PARTICIPANTS IN ETSI DISCLOSE THEIR IPR'S TO
15    ETSI?
16    A    I HAVE.
17    Q    LET'S TAKE A LOOK AT SDX 3975.006.  IS THIS
18    THE SLIDE THAT YOU PREPARED TO SUMMARIZE YOUR
19    FINDINGS?
20              MR. LEE:  YOUR HONOR, I OBJECT.  THIS WAS
21    EXCLUDED.
22              MS. MAROULIS:  YOUR HONOR, THE OBJECTION
23    WAS OVERRULED, I BELIEVE.
24              MR. LEE:  NO.  IT WAS SUSTAINED AS TO 06
25    AND THEY WERE ALLOWED TO SHOW WHAT WAS 01 TO 05
```

```
 1    ONLY.
 2              THE COURT:  ALL RIGHT.  LET ME SEE.
 3              MS. MAROULIS:  YOUR HONOR, I'LL MOVE ON
 4    TO 05 WHILE IT'S BEING CHECKED BY MY LEAGUES.
 5              THE COURT:  OKAY.
 6    BY MS. MAROULIS:
 7    Q    LET'S TAKE A LOOK AT 3975.005.  WHAT DOES THIS
 8    SLIDE REPRESENT, MR. TEECE?
 9    A    THIS IS ONE YEAR, 2011, WHERE I WENT INTO THE
10    PUBLIC DATABASE THAT DR. WALKER REFERRED TO AND I
11    MEASURED IN DAYS THE TIME FROM THE ADOPTION OF THE
12    STANDARD TO THE DISCLOSURE BY THREE PARTIES HERE OF
13    INTELLECTUAL PROPERTY POTENTIAL AND AS YOU CAN SEE
14    FOR APPLE, THAT TIME LAPSE WAS ABOUT 250 DAYS ON
15    AVERAGE.
16              FOR HTC, IT WAS ABOUT 700 DAYS ON
17    AVERAGE.  AND FOR NOKIA, IT WAS ACTUALLY NORTH OF A
18    THOUSAND DAYS ON AVERAGE.  SO WE'RE NOT TALKING
19    DAYS, WE'RE ACTUALLY TALKING MONTHS AND YEARS.
20    Q    HAVE YOU ALSO STUDIED SUCH PARTICIPANTS AS
21    ERICSSON AND MOTOROLA FOR THE PURPOSE OF THIS
22    ANALYSIS?
23    A    YES.
24    Q    AND DID THEY EXHIBIT SIMILAR DELAYS?
25    A    YES.
```

1    Q    DO YOU RECALL WHAT DELAYS THEY EXHIBITED ON

2    AVERAGE?

3    A    I DON'T RECALL THE NUMBER.  BUT WE'RE TALKING

4    WEEKS AND MONTHS AND SOMETIMES YEAR.

5    Q    DR. TEECE, HOW DOES THIS EMPIRICAL STUDY

6    EFFECT YOUR ANALYSIS OF THE TIME LIMITS OF THE

7    DISCLOSURE TO ETSI?

8    A    WELL, WITH RESPECT TO RULES, AS AN ECONOMIST,

9    I LOOK AT THE WAY PEOPLE BEHAVE.  THAT TELLS ME THE

10   MOST ABOUT WHAT THE RULES ARE.  AND THIS IS THE WAY

11   THAT PARTICIPANTS BEHAVE.  THEY DON'T DISCLOSE, OR

12   THEY DON'T CERTAINLY HARDLY EVER DISCLOSE BEFORE

13   THE PATENTS ARE ISSUES.

14            MR. LEE:  I OBJECT, YOUR HONOR.  THAT'S

15   BEYOND WHAT YOUR HONOR ALLOWED.  HE WAS ALLOWED TO

16   DISCUSS THE DELAYS.  THERE'S NO FOUNDATION FOR --

17            MS. MAROULIS:  YOUR HONOR, THERE WAS

18   OBJECTIONS TO TWO SPECIFIC EXHIBITS, BOTH WERE

19   OVERRULED BY YOUR ORDER.

20            THE COURT:  I KNOW.  THE OBJECTION SO

21   THIS SLIDE WAS OVERRULED.  SO.

22            MR. LEE:  RIGHT, AND I HAVEN'T OBJECTED

23   TO THAT THAT.  THIS TIME I BELIEVE HE'S GOING

24   BEYOND THIS NOW AND TALK ABOUT WHEN THEY DISCLOSE.

25   THESE SLIDES DON'T SHOW ANYTHING ABOUT DISCLOSURE.

1    NOW HE'S GIVING OPINION ON WHEN THEY DISCLOSE.

2    THERE'S NOTHING BEFORE THE COURT ABOUT THAT AND

3    THERE'S NOTHING --

4              THE COURT:  OVERRULED.  I'M GOING TO LET

5    YOU CROSS.  GO AHEAD, PLEASE.

6    BY MS. MAROULIS:

7    Q    DR. TEECE, HOW DOES THIS EMPIRICAL STUDY

8    AFFECT YOUR ANALYSIS.  FINISH YOUR ANSWER, PLEASE.

9    A    IT SHOWS THAT THE PRACTICE AT ETSI IS THAT

10   COMPANIES FREQUENTLY PROVIDE INFORMATION ABOUT

11   PATENTS CONSIDERABLY AFTER THE STANDARDS ARE

12   ISSUED.

13   Q    THANK YOU, DR. TEECE.  YOU HEARD MR. DONALDSON

14   TESTIFY ABOUT THE FRAND OFFER THAT SAMSUNG MADE TO

15   APPLE.  WERE YOU HERE?

16   A    I WAS.

17   Q    AND IN HIS OPINION, THE RATE THAT SAMSUNG

18   OFFERED TO APPLE WAS NOT FAIR AND REASONABLE.  DO

19   YOU AGREE WITH THAT OPINION?

20   A    NO, I DON'T.

21   Q    WHY DO YOU DISAGREE WITH MR. DONALDSON?

22   A    ONE, IT WAS IN THE RANGE OF RATES THAT I'VE

23   OBSERVED FROM OTHER COMPANIES; AND, TWO, THE LETTER

24   SPECIFICALLY WAS AN INVITATION TO CONSIDER A

25   CROSS-LICENSE, WHICH IF THAT NEGOTIATION HAD BEEN

3647

1    PURSUED, COULD HAVE RESULTED THAT THE RATE GOING

2    AWAY AND POSSIBLY JUST A BALANCING PAYMENT.

3    Q    WHAT TYPICALLY HAPPENS ONCE SUCH AN OFFER IS

4    MADE?

5    A    IT'S USUALLY RESPONDED TO.

6    Q    TO YOUR KNOWLEDGE, HAS APPLE EVER RESPONDED TO

7    SAMSUNG WITH A COUNTER OFFER OF ROYALTY RATES?

8    A    NOT TO MY KNOWLEDGE.

9    Q    DR. TEECE, MR. DONALDSON ALSO TESTIFIED THAT

10   THE BASE USED IN THE SAMSUNG OFFER LETTER WAS NOT

11   FRAND.

12        DO YOU AGREE WITH THAT CONCLUSION?

13   A    I DISAGREE WITH THAT CONCLUSION.

14   Q    WHY DO YOU DISAGREE WITH THAT CONCLUSION?

15   A    HE BELIEVED THE BASE SHOULD BE THE BASEBAND

16   CHIP AND I LOOKED AT ALL -- ALL THE LICENSES I

17   LOOKED AT, NOBODY ELSE USED THE BASEBAND CHIP.  IT

18   WAS REFERRING EITHER TO SET SALES OR SOME UNIT

19   SALES MEASURE.

20   Q    SIR, WHAT ARE YOU RELYING ON WHEN YOU SAY THAT

21   YOU LOOKED AT LICENSES AND HAVE NOT SEEN THE

22   BASEBAND CHIP USED AS A MEASURE OF BASE?

23   A    I LOOKED AT SAMSUNG'S LICENSES, NOKIA'S

24   LICENSES, AND A NUMBER OF OTHERS REPORTED IN THE

25   PUBLIC DATABASES.

1    Q     THANK YOU, SIR.

2          WHAT ABOUT -- YOU WERE HERE ALSO FOR

3    DR. ORDOVER'S PRESENTATION; CORRECT?

4    A     I WAS.

5    Q     WHAT IS YOUR OPINION WITH REGARD TO THE MARKET

6    DEFINITION PROPOSED BY DR. ORDOVER?

7    A     VERY UNUSUAL, HIS DEFINITION IS VERY UNUSUAL.

8          AND NOR DID HE DO WHAT AN ECONOMIST IS

9    SUPPOSED TO DO TO ESTABLISH A MARK, WHICH IS LOOK

10   FOR COMMERCIALLY VIABLE SUBSTITUTES.  HE WAS VERY

11   CLEAR IN HIS REPORT THAT HE ASSUMED THAT THERE WAS

12   SUBSTITUTES WHEN, IN FACT, ECONOMIC ANALYSIS

13   REQUIRES THAT YOU PROVE THAT THERE ARE SUBSTITUTES.

14   Q     WHAT IS THE RELEVANCE OF IDENTIFYING

15   SUBSTITUTES TO DEFINING THE MARKET?

16   A     YOU CANNOT DEFINE AN ANTITRUST MARKET, OR A

17   RELEVANT ANTITRUST MARKET WITHOUT DOING A CAREFUL

18   ECONOMIC ANALYSIS OF THE SUBSTITUTES THAT ARE

19   AVAILABLE.

20   Q     WHAT TYPE OF DATA DOES AN ECONOMIST ANALYZE TO

21   ESTABLISH THAT ONE TECHNOLOGY CAN SUBSTITUTE FOR

22   ANOTHER?

23   A     YOU LOOK AT COST DATA, PERFORMANCE DATA, YOU

24   WANT TO SHOW THAT ECONOMICALLY THESE VARIOUS

25   TECHNOLOGIES CAN BE SUBSTITUTED.  IT'S NOT ENOUGH

1      FOR A TECHNICAL PERSON TO SAY MAYBE THEY WILL BE

2      TECHNICALLY SIMILAR.  THEY HAVE TO BE ECONOMICALLY

3      AND COMMERCIALLY SIMILAR.

4      Q    DID DR. ORDOVER LOOK AT THAT DATA IDENTIFIED

5      WHAT TECHNOLOGIES HE TALKED ABOUT AS SUBSTITUTE

6      ITSELF?

7      A    HE DID NOT.

8      Q    WHAT DATA DID HE LOOK?

9      A    HE LOOKED AT VARIOUS INFORMATION BY TECHNICAL

10     EXPERTS WHICH WAS COMPLETELY BEREFT OF ANY ECONOMIC

11     ANALYSIS.

12     Q    THEN HOW DOES HE GO ABOUT DEFINING THE MARKET

13     DEFINITION?

14     A    IN ESSENCE HE ASSUMES HIS MARKET BASED ON THE

15     SCOPE OF THE PATENT.

16     Q    IS THIS APPROACH CONSISTENT WITH ECONOMIC

17     PRINCIPLES AS YOU UNDERSTAND THEM?

18     A    IT IS NOT.

19     Q    WHAT ARE THE IMPLICATIONS OF ADOPTING THIS

20     MARKET DEFINITION PROPOSED BY DR. ORDOVER?

21     A    BASICALLY HE ASSUMES HIS RESULT, THAT THERE IS

22     MONOPOLY POWER BECAUSE HE HASN'T DONE THE

23     BACKGROUND WORK THAT'S NECESSARY TO ESTABLISH THAT

24     THERE ARE COMMERCIALLY VIABLE SUBSTITUTES.

25     Q    AND WHAT IS THE CONSEQUENCE OF THAT FOR THE

1    MARKET PARTICIPANTS IN THE STANDARD SETTING

2    ORGANIZATIONS?

3    A    IF THE DESIGNER'S CORRECT, EVERYBODY IS A

4    MONOPOLIST.  ANYBODY WITH A PATENT IS A MONOPOLIST

5    AND THERE'S THOUSANDS OF MONOPOLISTS OUT THERE

6    WHICH IS CLEARLY, IN MY VIEW, NOT CORRECT WHY.

7    Q    SIR, HAS SAMSUNG LICENSED ITS STANDARD

8    ESSENTIAL PATENTS TO OTHER COMPANIES?

9    A    I BELIEVE SO, YES.

10   Q    AND HAVE YOU TESTIFIED YESTERDAY REGARDING

11   SAMSUNG'S LICENSING OF THESE PATENTS TO OTHER

12   COMPANIES?

13   A    YES.

14   Q    IS IT CORRECT THAT EXHIBIT 630 CONTAINS THE

15   INFORMATION REGARDING THAT?

16   A    IT DOES.

17   Q    TO YOUR KNOWLEDGE, IS APPLE PAYING ANYTHING TO

18   SAMSUNG FOR SAMSUNG'S DECLARED ESSENTIAL PATENTS?

19   A    NOT TO MY KNOWLEDGE.

20            MS. MAROULIS:  ONE MINUTE, YOUR HONOR.

21            YOUR HONOR, THIS WITNESS CAN BE EXCUSED,

22   OR PASS THE WITNESS.

23            MR. LEE:  I'D LIKE TO ASK A FEW

24   QUESTIONS.

25            THE COURT:  ALL RIGHT.  3:16.  GO AHEAD.

1

2

3

4                 <u>CERTIFICATE OF REPORTERS</u>

5

6

7

8        WE, THE UNDERSIGNED OFFICIAL COURT

9  REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

10  THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11  FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12  CERTIFY:

13       THAT THE FOREGOING TRANSCRIPT,

14  CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15  CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

16  SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

17  HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18  TRANSCRIPTION TO THE BEST OF OUR ABILITY.

19

20                /S/

                   _____

21                LEE-ANNE SHORTRIDGE, CSR, CRR

                CERTIFICATE NUMBER 9595

22

23                /S/

                   _____

24                IRENE RODRIGUEZ, CSR, CRR

                CERTIFICATE NUMBER 8074

25

                DATED:  AUGUST 17, 2012