HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S REPLY BRIEF REGARDING NON-JURY CLAIMS INCLUDING WAIVER, EQUITABLE ESTOPPEL, UNCLEAN HANDS, AND UNFAIR COMPETITION** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I. THE COURT SHOULD FIND THAT SAMSUNG WAIVED ITS RIGHTS TO ENFORCE THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS. ................ 1

II. THE COURT SHOULD FIND SAMSUNG EQUITABLY ESTOPPED FROM ENFORCING THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS ............ 4

III. THE COURT SHOULD FIND THAT THE '516 AND '941 PATENTS ARE UNENFORCEABLE BECAUSE SAMSUNG ACTED WITH UNCLEAN HANDS. ..................................................................................................................... 6

IV. THE COURT SHOULD FIND THAT SAMSUNG VIOLATED THE CALIFORNIA UNFAIR COMPETITION LAW. ............................................................ 7

CONCLUSION ................................................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) (*en banc*) ........................................................................ 5

*Apple Inc. v. Motorola Mobility, Inc.*,
  No. 11-cv-178 (W.D. Wis. Aug. 10, 2012) ........................................................................ 2

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) ........................................................................................ 5, 6, 7

*Cel-Tech Communications, Inc. v. L.A. Cellular*,
  20 Cal. 4th 163 (1999) ........................................................................................................ 7

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  645 F.3d 1336 (Fed. Cir. 2011) ...................................................................................... 2, 5

*In re Negotiated Data Solutions LLC*,
  No. C-4234, 2008 WL 4407246 (FTC Sept. 22, 2008) ...................................................... 7

*Keystone Driller Co. v. General Excavator Co.*,
  290 U.S. 240 (1933) ............................................................................................................ 6

*Lozano v. AT&T Wireless Services, Inc.*,
  504 F.3d 718 (9th Cir. 2007) .............................................................................................. 7

*Miller v. Fairchild Industries, Inc.*,
  885 F.2d 498 (9th Cir. 1989) .............................................................................................. 1

*Qualcomm Inc. v. Broadcom Corp.*,
  548 F.3d 1004 (Fed. Cir. 2008) ....................................................................................... 2, 4

*Texas Instruments v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996) ............................................................................................ 1

*Winbond Electronics Corp. v. International Trade Commission*,
  No. 01-1031, 2001 U.S. App. LEXIS 25113 (Fed. Cir. 2001) ........................................... 5

*W.R. Grace & Co. v. Western U.S. Industries, Inc.*,
  608 F.2d 12 (9th Cir. 1979) ................................................................................................ 4

**INTRODUCTION**

Samsung has carried out a corporate policy of manipulating the standard-setting process through its failure both to timely disclose IPR according to ETSI rules and to honor its FRAND commitments. Samsung now attempts to avoid the consequences of that misconduct by ignoring relevant facts and mischaracterizing the law. Samsung contends, for example, that no "person responsible for the disclosure of Samsung's patent applications" intentionally delayed their disclosure (Dkt. 2029 ("Opp.") at 1), but does not deny that Samsung—as a corporate entity—deliberately chose to wait to disclose its relevant IPR until *after* the UMTS standard was frozen. Similarly, Samsung contends that its offer to license its "declared essential" patents to Apple was FRAND, but cannot overcome the facial unfairness, unreasonableness, and discrimination of that offer. The Court should exercise its discretion to hold Samsung responsible for its misconduct and should bar Samsung from enforcing the '516 and '941 patents against UMTS products.

Moreover, Apple's request for equitable relief is consistent with the verdict. The jury's finding on Apple's contract claim does not preclude a finding of waiver, equitable estoppel, or unclean hands because those equitable defenses involve different elements, and a finding of a breach of contract is not a prerequisite to them. *See Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 507 (9th Cir. 1989) (only "jury's implicit or explicit factual determinations" are binding). For example, because the jury's general verdict on Apple's contract claim could have been based on a finding that Apple did not prove it was harmed, there is no implicit finding regarding Samsung's conduct. And, as explained below, Samsung has violated the California Unfair Competition Law ("UCL") regardless of whether its conduct technically violated the antitrust laws.[1]

**ARGUMENT**

**I.    THE COURT SHOULD FIND THAT SAMSUNG WAIVED ITS RIGHTS TO ENFORCE THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS.**

"To support a finding of implied waiver in the standard setting organization context, the

---

[1] Contrary to Samsung's suggestion (Opp. at 2), the ITC proceedings between Apple and Samsung cannot impact Apple's request for equitable relief here. *See Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("[T]he rule that decisions of the ITC involving patent issues have no preclusive effect in other forums has not changed.").

1  accused must show by clear and convincing evidence that … (1) the patentee had a duty of
2  disclosure to the standard setting organization, and (2) the patentee breached that duty." *Hynix*
3  *Semiconductor Inc. v. Rambus Inc.*, 645 F. 3d 1336, 1348 (Fed. Cir. 2011).  Because Samsung
4  submitted technical proposals to 3GPP, it was obligated to disclose IPR that "might be
5  ESSENTIAL if [its] proposal is adopted." (PX74.2 Cl. 4.1.)  Samsung does not contest that it
6  owned related patent applications when it submitted the technical proposals to 3GPP, that the
7  inventors knew about their own patent applications and attended the relevant 3GPP meetings, or
8  that Samsung disclosed those patent applications to ETSI only *after* 3GPP had frozen the relevant
9  standard.  These facts clearly establish waiver, and Samsung's contrary arguments are meritless.

10     *First*, Samsung wrongly argues that Apple must prove "the Korean patent applications
11  were in fact essential." (Opp. at 4.)  But the ETSI rules could not be clearer:  parties making
12  technical proposals must disclose IPR that "*might* be ESSENTIAL." (PX74.2 Cl. 4.1.)  In
13  considering a similar rule from another standard-setting organization, the Federal Circuit upheld a
14  finding of waiver for patents that were found not to be essential, explaining that the disclosure
15  duty "does not require that the patents ultimately must 'actually be necessary' to practice the
16  [relevant] standard." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1018 (Fed. Cir. 2008).

17     *Second*, Samsung wrongly focuses on the IPR Policy's general rule requiring "reasonable
18  endeavours" to "timely" disclose IPR a member "becomes aware of." (Opp. at 4-5.)  But again,
19  Samsung ignores the specific rule applicable to its behavior as a submitter of technical proposals
20  implicating its own IPR, which requires disclosure of IPR that "*might be ESSENTIAL if that*
21  *proposal is adopted*." (PX74.2 Cl. 4.1.)  "By using the terms 'might' and 'if,' the policy clearly
22  requires members to make efforts to disclose intellectual property rights *before* a standard is
23  adopted." *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, Dkt. 194 at 43 (W.D. Wis. Aug.
24  10, 2012).  In the face of a clear rule, Samsung's evidence purporting to show that ETSI members
25  commonly disclose IPR after the freeze date (Opp. at 5) is legally irrelevant. *See Qualcomm*, 548
26  F.3d at 1012 (examining standard-setting participants' understanding of disclosure obligations
27  only "to the extent the written … IPR policies are ambiguous").  In any event, the IPR Policy
28  imposes different disclosure obligations depending on whether a member submits a technical

APPLE'S REPLY BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)                                                              2

proposal. Dr. Teece admitted that his "study" included "no specific instances where people, other than Samsung, made a proposal, had a patent and didn't disclose until later." (Tr. 3654:17-3655:1.) As a result, his "study" is irrelevant to waiver and does not support the argument that Samsung's conduct was typical of ETSI practices.

*Third*, Samsung argues that the relevant patent applications were not "IPR" because they might have been confidential. (Opp. at 5-6.) But Samsung introduced no evidence that those applications were actually confidential, and does not contest that it submitted the contents of the applications at 3GPP meetings without following the confidentiality procedures in Clause 10 of the IPR Policy and "without any confidential markings whatsoever." (Tr. 3528:1-3529:14 (Walker).) Instead, Samsung contends that Clause 10 is "irrelevant" because it capitalizes "CONFIDENTIAL INFORMATION," while the definition of IPR does not. (Opp. at 6.) The IPR Policy provides that "all information submitted to a COMMITTEE shall be treated as if non-confidential" unless certain procedures are followed (PX74.4 Cl. 10), and Dr. Walker testified that "all of those … 3GPP meetings, all of the reports, all of the documentation is public … [i]ncluding the Samsung proposals." (Tr. 3529:8-14.) Whatever their original status, the applications were non-confidential—and thus "IPR"—once Samsung submitted its proposals.

*Fourth*, Samsung contends that there was no evidence that its failure to disclose its IPR was intentional. (Opp. at 6-7.) Samsung makes much of Dr. Walker's testimony that he had "no opinion as to whether or not, under Section 14, Samsung violated the ETSI Policy." (*Id.*; *see* Tr. 3525:21-25.) But as Dr. Walker explained, he was simply confirming that ETSI—a standard-setting body—had not conducted a formal proceeding under Clause 14 to determine whether Samsung had violated the Policy. (Tr. 3525:21-25 ("As far as I know, no process has taken place within ETSI to decide that."); Tr. 3526:17-19.) His own expert testimony, however, was unequivocal that Samsung "did not comply" with Clause 4.1 of the Policy "because it should have disclosed before adoption." (Tr. 3516:9-15; *see also* Tr. 3509:1-10.) Similarly, Samsung relies heavily on Dr. Walker's failure to opine that Samsung's violation of the Policy was intentional. But Dr. Walker simply stated that he was "not offering an opinion" one way or the other as to Samsung's subjective state of mind—a factual matter. (Tr. 3520:21-3521:2.)

APPLE'S REPLY BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)

3

1   The factual evidence on intent is unequivocal and shows that Samsung's conduct was
2   deliberate. Jun Won Lee, who had a "role or responsibility for Samsung's policies, practices, or
3   activities related to the disclosure of intellectual property to ETSI or 3GPP" from 2005 to 2010,
4   testified that it would be "stupid" to disclose IPR before the freeze date (PX220.2-.3)—clear
5   evidence of Samsung's intent.[2]  Moreover, Samsung's 3GPP representatives, as named inventors,
6   were aware of the potential essentiality of the relevant IPR. Because Samsung knew it had IPR
7   that might be essential if its proposals were adopted, it was required to disclose that IPR before
8   the standard was frozen. Samsung tries to evade its obligations by arguing that Apple did not
9   establish that Seung Ho Park knew about the disclosure obligation (Opp. at 7), but it is irrelevant
10  whether the particular individual who signed Samsung's belated disclosure was aware of the
11  obligation. As a corporate entity, Samsung knew about its obligation through the knowledge of
12  its 3GPP representatives—including the inventors who had submitted the patent applications—
13  and was obligated to disclose its IPR. *See W.R. Grace & Co. v. W. U.S. Indus., Inc*., 608 F.2d
14  1214, 1218-19 (9th Cir. 1979) (imputing agents' knowledge to corporation and its principals).

*Finally*, Samsung argues that waiver is improper because it did not engage in the litigation misconduct found in *Qualcomm*. (Opp. at 7-8.) But *Qualcomm*'s waiver finding was *not* based on litigation misconduct; it was based on Qualcomm's failure to disclose its IPR during the standard-setting process. *Qualcomm*, 548 F.3d at 1019-22. Samsung engaged in the same deliberate failure to disclose its IPR, but Samsung's misconduct was even *more egregious* because, here, *Samsung* made and advocated the proposals that were adopted into the standard.

## II. THE COURT SHOULD FIND SAMSUNG EQUITABLY ESTOPPED FROM ENFORCING THE '516 AND '941 PATENTS AGAINST UMTS PRODUCTS.

Samsung should be estopped from enforcing the '516 and '941 patents against UMTS products because, by concealing its IPR and falsely committing to offer FRAND terms, Samsung caused Apple—and the UMTS community—to believe that it did not intend to enforce those

---

[2] Samsung is thus wrong that there was "no evidence that Mr. Lee had responsibility for disclosure of the patent applications to which the patents in suit claimed priority." (Opp. at 7.) Samsung's technical proposals, which Samsung says correspond to the '516 and '941 patents, were both frozen into the standard in 2005. (Tr. 3505:6-3506:18; Tr. 3513:10-24, 3514:11-16.)

APPLE'S REPLY BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)                                                                                    4

1  patents.  (Dkt. 1981 ("Apple Br.") at 9-10.)  Samsung's contrary arguments should be rejected.

2  *First*, Samsung mistakenly asserts that Apple must prove equitable estoppel by clear and
3  convincing evidence.  (Opp. at 9.)  As Samsung agreed in the joint proposed jury instructions
4  (Dkt. 1693 at 21), however, the proper burden of proof is a preponderance of the evidence.  *See*
5  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1046 (Fed. Cir. 1992) (*en banc*)
6  ("[W]e adopt the preponderance of evidence standard in connection with the proof of equitable
7  estoppel factors ….").  Under either standard, Apple has proved its claim.

8  *Second*, Samsung contends that "there is no evidence that Apple was aware of the
9  representations that Samsung made to [ETSI] regarding the patents in suit."  (Opp. at 8.)  But
10 again, as Samsung correctly recognized in the joint proposed jury instructions (Dkt. 1693 at 21),
11 silence or inaction may constitute misleading conduct.  *See Hynix*, 645 F.3d at 1348 ("'Conduct'
12 may include … inaction, or silence where there was an obligation to speak.").  Here, ETSI and its
13 members were aware of Samsung's technical proposals, but could not have been aware that
14 Samsung claimed to own related IPR because Samsung withheld that information until *after* its
15 proposals were adopted.  Thus, by being silent in the face of a duty to disclose its IPR, Samsung
16 led ETSI and its members (including Apple) to reasonably believe that Samsung did not intend to
17 enforce *any* of its patents that purportedly covered the technology adopted into the standard.

18 Samsung's reliance on *Winbond Electronics Corp. v. International Trade Commission*,
19 No. 01-1031, 2001 U.S. App. LEXIS 25113 (Fed. Cir. 2001), is therefore misplaced.  In that case,
20 the court found no estoppel because the patentee's technical proposal was *not* adopted into the
21 industry standard.  *Id.* at *29.  In contrast, Samsung's failure to disclose its relevant IPR and the
22 subsequent adoption of Samsung's technical proposals into the UMTS standard is precisely why
23 Samsung should be estopped from enforcing its '516 and '941 patents against UMTS products.

24 *Third*, Samsung contends that there was "no evidence" that ETSI relied on Samsung's
25 failure to disclose its IPR as required by ETSI rules or its FRAND commitment.  (Opp. at 9.)  On
26 the contrary, the evidence shows that compliance with ETSI's rules is critical for the operation of
27 the organization, and that members rely on the binding effect of the rules.  (Tr. 3480:15-18
28 (Walker) (IPR Policy "fundamental to the working of ETSI").)  *See Broadcom Corp. v.*

APPLE'S REPLY BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)

5

*Qualcomm Inc.*, 501 F.3d 297, 312 (3d Cir. 2007) ("[Standard-setting] participants rely on structural protections, such as rules requiring the disclosure of IPRs, to facilitate competition and constrain the exercise of monopoly power."). Samsung presented no evidence to support its illogical position that ETSI members do not rely on other members complying with the rules.

*Finally*, Samsung argues that its FRAND commitment "cannot possibly" lead to estoppel because Samsung "has offered such a license to Apple." (Opp. at 9.) However, Samsung's offer to license its "declared essential" patents for 2.4% of the selling price of each product—which came only after Samsung sued for an injunction—"does not meet the requirements to license under FRAND terms." (Tr. 3536:15-23 (Donaldson).) As explained in Apple's opening brief (pp. 11-12), Samsung has never received a penny for its "declared essential" patents and, contrary to Federal Circuit law, its proposed license would have given Samsung windfall royalties on features unrelated to the UMTS standard. Samsung contends that its offer was within "market norms" (Opp. at 10), but Dr. Teece discussed these supposed norms in a cursory fashion and made no attempt to defend the merits of the other companies' offers—nor did he meaningfully explain how this data justified Samsung's extreme demand under FRAND principles. (Tr. 3646:21-3647:2.) Indeed, if Samsung's 2.4% royalty approach were applied by all UMTS patent owners, the total royalty to implement the UMTS standard would be "about 50 percent" of a product's total selling price, which is "totally unreasonable." (Tr. 3544:4-3545:6 (Donaldson).)

### III. THE COURT SHOULD FIND THAT THE '516 AND '941 PATENTS ARE UNENFORCEABLE BECAUSE SAMSUNG ACTED WITH UNCLEAN HANDS.

Samsung should also be barred from enforcing the '516 and '941 patents by unclean hands. Samsung failed not only to disclose its IPR as required by ETSI, but also to license those patents on FRAND terms. The failure to adhere to standard-setting rules "distort[s] the decision making process" (Tr. 3578:7-3579:19 (Ordover)), *Broadcom*, 501 F.3d at 313-14, and creates precisely the sort of unfair advantage that the doctrine of unclean hands is designed to address. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). Samsung argues that Apple introduced "no evidence" of these facts (Opp. at 10), but as discussed above, the record shows that Samsung intentionally violated its disclosure obligations and FRAND commitments.

APPLE'S REPLY BRIEF REGARDING NON-JURY CLAIMS
CASE NO. 11-CV-01846-LHK (PSG)

6

## IV. THE COURT SHOULD FIND THAT SAMSUNG VIOLATED THE CALIFORNIA UNFAIR COMPETITION LAW.

Apple's UCL claim is based on Samsung's twin violations of the ETSI disclosure rules and its FRAND obligations.  Samsung argues that the jury's antitrust verdict bars Apple's UCL claim, citing *Cel-Tech Communications, Inc. v. L.A. Cellular*, 20 Cal. 4th 163, 186-87 (1999). (Opp. at 10-11.)  But that test applies to competitors, not consumers.  Here, Samsung's conduct harmed competition in the relevant technology markets, which in turn harmed Apple as a consumer in those markets by forcing it to incur litigation costs defending against Samsung's abuse of its illicitly-obtained monopoly power.[3]  (Apple Br. at 11-12.)  Under the balancing test applicable to the UCL—and not considered by the jury—Samsung has not shown that there were any benefits to competition from its breach of the disclosure and FRAND obligations, whereas Apple has demonstrated competitive harm.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (endorsing balancing test in consumer UCL case).

Even under *Cel-Tech*, conduct that "violates the policy or spirit" of the antitrust laws violates the UCL.  20 Cal. 4th at 185-87.  Under that standard, Apple need not prove a violation of Section 2 of the Sherman Act to prevail on its UCL claim.  *See In re Negotiated Data Solutions LLC*, No. C-4234, 2008 WL 4407246, at *1-6 (FTC Sept. 22, 2008) (charging unfair competition based on breach of standard-related licensing commitment without Section 2 analysis).  Standard-setting is consistent with the antitrust laws only when there are "meaningful safeguards that prevent the standard-setting process from being biased by members with economic interests in stifling product competition."  *Broadcom*, 501 F. 3d at 310.  ETSI employs such safeguards:  it requires disclosure of IPR and commitments to license.  Samsung's disregard of both rules is thus contrary to the policy and spirit of the antitrust laws and a violation of the UCL.

## CONCLUSION

The Court should find Samsung has engaged in waiver, equitable estoppel, unclean hands, and unfair competition and hold the '516 and '941 patents unenforceable against UMTS products.

---

[3]  Samsung claims this harm was "unquantified" (Opp. at 12), but does not address the $365,000 in expert fees proven by Apple and identified in its opening brief.  (Apple Br. at 12.)

Dated: October 12, 2012

WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Mark D. Selwyn*
　　　Mark D. Selwyn

Attorneys for Plaintiff
APPLE INC.