QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Susan R. Estrich (Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION ON NON-JURY CLAIMS, INCLUDING INDEFINITENESS**<br><br>Date: December 6, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

I.  CLAIM 50 OF THE '163 PATENT IS INDEFINITE .......................................................... 1

    A.  Apple Fails To Identify An Objective Standard For "Substantially Centered" In The Intrinsic Evidence ................................................................................................ 1

    B.  Samsung Has Not Waived Its Indefiniteness Argument .............................................. 2

II. APPLE'S DESIGN PATENTS ARE INDEFINITE ............................................................ 2

    A.  Apple's Opposition Reinforces Samsung's Indefiniteness Position ............................ 2

    B.  Samsung Did Not Waive Its Indefiniteness Defense .................................................. 5

III. THIS COURT SHOULD FIND FOR SAMSUNG ON LACK OF WILLFULNESS ............. 5

    A.  Samsung's Defenses To Apple's Design Patents Are Irrelevant To Enhancement And, In Any Event, Reasonable .............................................................. 5

    B.  Samsung's Defenses As To Apple's Utility Patents Are Reasonable .......................... 6

    C.  There Is No Proof Samsung Was On Notice Of Apple's Relevant Patents. ................. 6

    D.  There Is No Proof Of Willful Trade-Dress Dilution .................................................... 7

IV. APPLE'S DESIGN AND UTILITY PATENTS ARE INVALID AS OBVIOUS .................. 7

# TABLE OF AUTHORITIES

**Page**

### Cases

*Accentra Inc. v. Staples, Inc.*,
 851 F. Supp. 2d 1205 (C.D. Cal. 2011)..................................................................................2

*Andrew Corp. v. Gabriel Elec., Inc.*,
 847 F.2d 819 (Fed. Cir. 1988)................................................................................................2

*Bard Peripheral Vascular v. WL Gore & Assocs.*,
 682 F.3d 1003 (Fed. Cir. 2012)..............................................................................................5

*In re Blum*,
 374 F.2d 904 (C.C.P.A. 1967)................................................................................................3

*Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*,
 433 F.2d 686 (2d Cir. 1970)...................................................................................................7

*Datamize, LLC v. Plumtree Software, Inc.*,
 417 F.3d 1342 (Fed. Cir. 2005)..............................................................................................1

*IpVenture, Inc. v. Cellco P'ship*,
 2011 WL 207978 (N.D. Cal. Jan. 21, 2011) .........................................................................7

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
 688 F.3d 1342 (Fed. Cir. 2012)..............................................................................................7

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
 370 F.3d 1354 (Fed. Cir. 2004)..............................................................................................3

*Philco Corp. v. Admiral Corp.*,
 199 F. Supp. 797 (D. Del. 1961) ...........................................................................................4

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*,
 599 F.3d 1308 (Fed. Cir. 2010)..............................................................................................2

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*,
 170 F.3d 449 (4th Cir. 1999).................................................................................................7

*Sealant Sys. Int'l, Inc. v. TEK Global*,
 2012 WL 13662 (N.D. Cal. Jan. 4, 2012) .............................................................................7

*Seattle Box Co. v. Indus. Crating & Packing*,
 731 F.2d 818 (Fed. Cir. 1984)................................................................................................1

*Seed Lighting Design Co. v. Home Depot*,
 2005 WL 1868152 (N.D. Cal. Aug. 3, 2005)........................................................................4

*Solannex, Inc. v. Miasole*,
 2011 WL 4021558 (N.D. Cal. Sep. 9, 2011).........................................................................7

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) ......................................................................................... 7

*Universal Oil Prods. Co. v. Globe & Refining Co.*,
    322 U.S. 471 (1944) ......................................................................................................... 4

*Verve LLC v. Crane Cams, Inc.*,
    311 F.3d 1116 (Fed. Cir. 2002) ......................................................................................... 2

*Young v. Lumenis, Inc.*,
    492 F.3d 1336 (Fed. Cir. 2007) ......................................................................................... 1

**<u>Statutes</u>**

35 U.S.C. § 289 .......................................................................................................................... 5

37 C.F.R. § 1.153(a) .................................................................................................................. 4

## I. CLAIM 50 OF THE '163 PATENT IS INDEFINITE

### A. Apple Fails To Identify An Objective Standard For "Substantially Centered" In The Intrinsic Evidence

Apple does not dispute that a claim term of degree requires an objective standard *in the intrinsic evidence* to survive an indefiniteness challenge. Yet Apple fails to identify any objective standard for "substantially centered" in the specification or prosecution history of the '163 patent.

While, as Apple notes, the specification uses the term "substantially centered," the mere *use* of that term does not objectively define its scope. Moreover, even if the box of content in Figure 5C is an example of substantial centering, it still does not objectively define when a box of content is and is not "substantially centered." *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1352 (Fed. Cir. 2005) (an example in specification does not save a claim from indefiniteness absent an objective standard). Tellingly, when asked about the box in Figure 5C at his deposition, Dr. Singh testified that he would have to know the "rationale for it being there." Reply Declaration of John M. Pierce ("Pierce Reply Dec.") Ex. 1, 4/26/2012 Singh Tr. at 118:3-121:21. Likewise, Mr. Forstall testified that "substantially centered" means placing "it where it makes sense." RT at 758:1-15. Terms of degree cannot depend on such undefined, subjective standards. *Datamize,* 417 F.3d at 1352-53 ("the definition of [a term of degree] cannot depend on the undefined views of unnamed persons, even if they are experts, specialists, or academics.").

The cases cited by Apple undermine its position. First, Apple cites two cases which, unlike the situation here, involved terms of degree that were accompanied by an objective teaching or standard in the intrinsic evidence that permitted a person of skill to understand the invention's scope. In *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 821 (Fed. Cir. 1984), the Federal Circuit addressed that a claim term requiring that blocks separating tiers of cargo be "substantially equal to or greater than" the cargo height. The court found the term definite, but only after finding a "clear[]" teaching in the patent that the blocks were intended to absorb the weight of overhead loads. *Id.* at 826. Similarly, in *Young v. Lumenis, Inc.*, the court held that the term "an incision . . . near the edge of the ungual crest of the claw," was definite only after noting that "[t]he *specification makes reasonably clear* that the first incision is made very close to or at the edge . . . ." 492 F.3d 1336, 1346 (Fed. Cir.

2007) (emphasis added).  The '163 patent provides no similar standard or teaching.

Next, Apple cites two cases that are inapposite because they involved a term of degree that were "warranted by the nature of the invention."  *See Verve LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002).  In *Verve*, the Federal Circuit vacated an indefiniteness ruling and remanded for consideration of whether the claim described "the invention with precision *appropriate to the technology*."  *Id.* (emphasis added).  Likewise, in *Andrew Corp. v. Gabriel Elec., Inc.*, 847 F.2d 819 (Fed. Cir. 1988), the court held that a term covering an antenna with "substantially equal . . . illumination patterns" was definite.  But, critical to the court's analysis was its conclusion that the term "substantially equal" was "as precise as the subject matter permit[ted]," as demonstrated by the use of the same term in "prior art patents that were of record in the district court, dealing with similar technology."  847 F.2d at 822.  Here, there is no evidence that "substantially centered" is as precise as the subject matter permits.  Furthermore, the evidence demonstrates that one skilled in the art would not know when a box of content was "substantially centered."  *See id.* at 822; Mot. at 4-5 (discussing testimony of Singh, Forstall and Gray).

### B.  Samsung Has Not Waived Its Indefiniteness Argument

Samsung's indefiniteness argument is timely.  Samsung identified "substantially centered" as indefinite pursuant to the Patent Local Rules.  Pierce Reply Dec. Ex. 2 at 53 (Invalidity Contentions).  Samsung did not advance this argument during claim construction or summary judgment due to term and page limitations imposed by the Court.  At trial, Apple successfully prevented Samsung from submitting the indefiniteness issue to the jury, but conceded that Samsung could "make a JMOL on that . . . and let [the Court] determine it" after trial.  RT 3335:25-3336:22.  The Court later issued an order specifically permitting the parties to raise indefiniteness post-trial (*see* Dkt. 1965), which is fully supported by the law.  *See Accentra Inc. v. Staples, Inc.*, 851 F. Supp. 2d 1205 (C.D. Cal. 2011) (finding it proper to resolve indefiniteness post-trial) (citing *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010)).

## II.  APPLE'S DESIGN PATENTS ARE INDEFINITE

### A.  Apple's Opposition Reinforces Samsung's Indefiniteness Position

Apple's arguments read as a series of admissions about the guesswork required to practice its

design patents. First, Apple wrongly asserts that the Court's claim construction somehow preempts an indefiniteness finding, relying on a single utility patent case where the court actually construed the allegedly indefinite term. *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366 (Fed. Cir. 2004). Here, the Court—at Apple's request—*declined* to construe the patents in relevant respects, limiting its remarks to drafting conventions instead of describing the scope of the patents' claims. Dkt. 1425 at 3-5. Even to that limited degree, the Court still had to adopt Apple's conflicting positions regarding drafting rules to salvage the patents. *See id.* at 6, 8-10 (crediting broken line disclaimer for D'087 while excusing lack of disclaimer for D'677 and limiting disclaimer in D'889 to only certain features; defining surface shading on D'677 and D'889 but not lack of shading on D'087). Second, Apple's comment about expert testimony misses the point because no expert testified that the patents enabled designers of skill in the art to practice them without their having to speculate or make assumptions about their meaning. On this score, Apple ignores the abundant other evidence showing that the patents are indefinite, including testimony by its own named inventors and other witnesses that they could not understand the designs reflected in Apple's patents.[1]

As for D'889, Apple persists in its failure to show how the "clear statement" disclaiming Figure 9's broken lines could disclaim only one of the broken line features in that figure. If the broken lines have different meanings, as Apple claims, "it *must* be made entirely clear what they do mean, else the claim is bad for indefiniteness." *In re Blum*, 374 F.2d 904, 907 (C.C.P.A. 1967). Apple provides no explanation nor challenges this standard. Apple also misunderstands D'889's indefiniteness from surface shading. Contrary to Apple's assertion, the Court's instruction that Figure 2 depicts a reflective or transparent surface *reinforces* the ambiguity created by Figure 4's lack of

---

[1] *See, e.g.*, Pierce Reply Dec. Ex. 3, 10/18/11 Anzures Tr. at 105:21-106:20; Ex. 4,10/27/11 Coster Tr. at 38:20-23, 39:18-25; Ex. 5, 3/23/12 Dammerman (ITC) Tr. at 234:7-24; Ex. 6, 10/21/12 De Iullis Tr. at 157:3-162:18; Ex. 7, 10/31/11 Howarth Tr. at 96:21-97:3, 94:21-22, 95:8-21; Ex. 8, 7/16/12 Howarth Tr. at 39:4-40:3; Ex. 9, 11/27/11 Kerr Tr. at 27:19-30; Ex. 10, 10/24/11 Rohrbach Tr. at 99:6-102:25, 115:18-124:24; Ex. 11, 10/27/11 Whang Tr. at 74:25-75:23; Ex. 12, 10/21/11 Zorkendorfer Tr. at 54:3-15, 55:4-21, 56:19-57:1, 91:7-12, 94:6-95:5, 107:4-111:18.
  Various designers were even unable to tell what product, if any, embodied D'889 (*see* Ex. 13, 2/23/12 (ITC) Rohrbach Tr. at 113:4-117:5; Ex. 10, 10/24/11 Rohrbach Tr. at 113:12-116:12; Ex. 14, 2/17/12 Whang (ITC) Tr. at 172:17-172:23; Ex. 9, 10/26/11 Kerr Tr. at 14:6-15:25; Ex. 15, 2/8/12 Howarth (ITC) Tr. at 163:25-164:13), while other witnesses gave contradictory testimony (*see* RT 1048:2-9; 3611:19-3612:17 (Bressler claiming iPad 2 embodied D'889 while admitting iPad 1 did not).

surface shading.  Apple's new, post hoc argument, advanced for the first time in its Opposition, that a surface may be reflective when viewed at an angle but not when viewed straight on is just more evidence that D'889 fails to teach a designer what it claims.  It is pure guesswork whether D'889's back surface is reflective, non-reflective or, as Apple now is forced to posit, some hybrid when seen at different angles.  Further, Apple also fails to explain why the long and short sides of the D'889 device as depicted in Figures 1-4 do not match the sides as oriented in Figs. 5-8, instead making the non-responsive argument that patent drawings do not have to be "oriented in a particular direction."  Opp. at 5-6.  Such generalities do not assist Apple.  The D'889 patent's orientation and labeling make it impossible to tell which way the device is oriented and where the features go. Mot. at 6.  Apple has no answer to this.

Apple makes similarly non-responsive arguments regarding D'677 and D'087.  Contrary to Apple's assertions, design patents are for articles *of manufacture*, and thus must be disclosed "so fully, clearly and with such certainty as to enable those skilled in the art *to make the article*." *Philco Corp. v. Admiral Corp.*, 199 F. Supp. 797, 801 (D. Del. 1961) (citing cases).  Otherwise, the industry is prevented from knowing the "precise scope of the monopoly asserted," and the public never receives the quid pro quo for a patent's monopoly right—clear disclosure of the invention. *Universal Oil Prods. Co. v. Globe & Refining Co.*, 322 U.S. 471, 484 (1944).  As Apple cannot dispute, the fact that articles based on D'677 and D'087 can be made in multiple ways—with rectangular elements below a continuous surface, as breaks in material co-planar with the surface, or as ornamentation atop the surface— is reason to *find* indefiniteness. *See, e.g.*, *Seed Lighting Design Co. v. Home Depot*, 2005 WL 1868152, *8-9 (N.D. Cal. Aug. 3, 2005).

Apple's response for D'305 similarly misses the point because there is no disagreement that Apple told the PTO color was important *for Figure 1*.  That is precisely the problem.  There is a *second* figure that is in black and white.  It is impossible that color could simultaneously be necessary or important and also be optional, particularly since D'305 can have only a single claim as a matter of law.  37 C.F.R. § 1.153(a) ("More than one claim is neither required nor permitted.").  Yet, that is what the two figures purport to depict.  The patent requires guesswork — the very definition of indefiniteness. Apple fails to address this fundamental point.

### B. Samsung Did Not Waive Its Indefiniteness Defense

Apple's argument that Samsung waived its indefiniteness defense by not raising the issue at the claim construction stage fails on several grounds. First, the cases Apple cites in support of its argument are all utility patent cases, which do not address the unique situation of design patent claim construction nor the specific chronology of this case where claim construction was briefed only a few weeks prior to trial. Second, Samsung *did* raise the issue of indefiniteness in its claim construction briefing, advancing certain constructions based on arguments that Apple's patents are inconsistent and ambiguous, and therefore indefinite. Dkt. 1139-03 at 8-11. Third, Apple's claim of untimeliness ignores the fact that Samsung repeatedly raised the issue of indefiniteness throughout this litigation, both before and after claim construction: in its answer (Dkt. 80 at ¶ 278), interrogatory responses (Dkt. 939-29 at 9-15; Dkt. 939-42 at 57-63, 67-71, 93-97, 137-138), summary judgment briefing (Dkt. 930-1 at 15), and by proposing jury instructions on indefiniteness and objecting to their rejection (Dkt. 1694 at 123-24 (Proposed Instruction Nos. 39.1 and 39.2); RT at 3908:21-25).[2]  Finally, Apple's reliance on Judge Grewal's order is misplaced; the Court held certain *evidence* was inadmissible at trial, not that the parties had waived entire claims or defenses—especially those that are based on questions of law and not the evidentiary record. Apple cites no particulars showing otherwise.

## III. THIS COURT SHOULD FIND FOR SAMSUNG ON LACK OF WILLFULNESS

Apple's claim of objective willfulness requires it to point to clear and convincing evidence that "a reasonable litigant could [not] realistically expect [Samsung's] defenses to succeed." *See Bard Peripheral Vascular v. WL Gore & Assocs.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) (citation omitted). Yet all Apple offers are passing observations that Samsung's defenses ultimately failed, which by no means clears this high bar.

### A. Samsung's Defenses To Apple's Design Patents Are Irrelevant To Enhancement And, In Any Event, Reasonable

---

[2] In stark contrast, Apple was allowed to pursue a theory of indirect design patent infringement despite its never having pled it, disclosed it in contention interrogatories, or presented it in an expert report. *See* Dkt 1185-3 at 14-15.

1  Although Apple first focuses on Samsung's design-related defenses, those design patents are
2  no basis for enhancement because Apple elected to recover Samsung's resulting profits pursuant to 35
3  U.S.C. § 289, which prohibits any ensuing enhancement. Regardless, Samsung's non-infringement
4  and invalidity defenses to the D'677 and D'305 patents were serious ones. The Court initially agreed
5  that the JP'638 was a primary reference to the D'677 patent (Dkt. 449 at 22) and Apple itself
6  acknowledged many significant design elements were disclosed in the prior art (RT 1110:23-1121:4,
7  1175:1-4; DX 511; DX 727; DX 728; JX 1093). Moreover, the fact that Apple witnesses admitted that
8  many important features of Apple's design patents are functional—and the Court's prior ruling to that
9  effect (*see* Dkt. 449 at 15)—demonstrates the reasonableness of Samsung's functionality defense. RT
10 1197:13-17; 1199:25-1200:16; 1438:13-19; 1440:7-12; 1451:13-1453:9; 1455:12-25; 1474:5-76:7.

### B. Samsung's Defenses As To Apple's Utility Patents Are Reasonable

Samsung's defenses to Apple's utility patents, though rejected, remain beyond reproach. Samsung offered LaunchTile and Tablecloth as prior art to the '381 patent. Apple's only distinction of Tablecloth was that it is not a "touch screen display." And LaunchTile clearly meets each claim limitation at least some of the time, inclusive of "instructions for" performing the behavior called for by claim 19. Samsung's evidence regarding the '915 patent was no less strong. The FractalZoom reference shows precisely the same behavior as the '915 patent, with Apple again relying solely on the absence of an integrated, touch-sensitive display. The Nomura e-book reference also discloses the claimed behavior in an indisputably integrated system, and the Jefferson Han reference also invalidates Apple's gesture patent. As to the '163 patent, LaunchTile, XNav, the Agnetta patent, and the Robbins patent meet each of its elements. Apple's main distinction, that the prior art fails to show a "structured" electronic document, was far from sure. Finally, any possible doubt as to the objective reasonableness of Samsung's invalidity argument should be extinguished by the decision of the PTO to grant reexamination of the '381 and '915 patents. Pierce Reply Dec. Exs. 16 – 17.

### C. There Is No Proof Samsung Was On Notice Of Apple's Relevant Patents.

Apple has little of substance to say about the absence of any notice whereby Samsung knew or should have known about the existence, validity and infringement of the specific patents at issue. Instead, Apple seems to contend that the "entire tech industry" should have been on notice thanks

simply to its "widely publicized" iPhone launch. Mot. at 10. Apart from charging the world with notice of all particulars based simply on product launch, Apple cites no evidence specific to any patent apart from the '381, trying to fill this glaring gap with supposed evidence that Samsung copied its products. But knowing of a product does not equate with knowing of a particular patent, and "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." *See, e.g., Solannex, Inc. v. Miasole*, 2011 WL 4021558, *3 (N.D. Cal. Sep. 9, 2011); *Sealant Sys. Int'l, Inc. v. TEK Global*, 2012 WL 13662, *3-4 (N.D. Cal. Jan. 4, 2012); *IpVenture, Inc. v. Cellco P'ship*, 2011 WL 207978, *2 (N.D. Cal. Jan. 21, 2011).

### D.  There Is No Proof Of Willful Trade-Dress Dilution

Notably, Apple's only proof of Samsung's supposed willfulness in diluting trade dress is that Samsung saw "pictures of the phone." Opp. at 11. That is a far cry from showing that Samsung lacked an objectively reasonable belief that its actions would not dilute an admittedly known mark. *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 466 (4th Cir. 1999); *see also Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 707 (2d Cir. 1970). The Court should find absence of willfulness on this point as well.

## IV.  APPLE'S DESIGN AND UTILITY PATENTS ARE INVALID AS OBVIOUS

While Apple mischaracterizes as "a JMOL in disguise" Samsung's assertion that the Court must conduct an independent obviousness determination, the authority it cites confirms that such a determination is required. As stated in the *Spectralytics* case, "[t]he district court recognized that 'although the Court must review the conclusion of obviousness *de novo*, that conclusion depends on underlying factual findings that were the jury's to make.'" *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011). The only other case cited by Apple, *Kinetic Concepts, Inc. v. Smith & Nephew*, *Inc.*, 688 F.3d. 1342 (Fed. Cir. 2012), also supports Samsung's assertion. "There is no question that the judge must remain the ultimate arbiter on the question of obviousness," first exercising that role by giving proper jury instructions and "again when presented with a motion for JNOV or new trial." 688 F.3d. at 1358-59. Consequently, the Court should independently consider whether the asserted patents are obvious and, based on the overwhelming evidence, enter judgment finding each of the asserted patents invalid as obvious.

1 | DATED: October 12, 2012

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Victoria F. Maroulis*
Victoria F. Maroulis
Attorney for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC