Andrew L. Chang (CA Bar No. 222309)
achang@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California  94104-4505
Phone:  (415) 544-1900
Facsimile:  (415) 391-0281

B. Trent Webb
bwebb@shb.com
Angel Mitchell
amitchell@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108-2613
Telephone:     816.474.6550
Facsimile:      816.421.5547

Attorneys for Non-Party
SPRINT SPECTRUM, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California Corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean Corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York Corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability Company ,<br><br>　　　　　Defendants. | Case No. 11-CV-01846-LHK<br><br>**EXPEDITED MOTION FOR ADMINISTRATIVE RELIEF BY NONPARTY SPRINT SPECTRUM, L.P. TO SEAL DOCUMENT IN PART**<br><br>[Civ. L.R. 79-5]<br><br>Date:         Expedited Request<br>Courtroom: 8, 4th Floor<br>Judge:        Hon. Lucy H. Koh<br>Courtroom: 5, 4th Floor<br>Magistrate:  Paul S. Grewal |

## I. INTRODUCTION

The Court's Order Granting-In-Part and Denying-In-Part Apple's and Samsung's Administrative Motions to File Documents Under Seal (doc. #1978) ("Order") unsealed certain filings in this case and directed the parties to file them in the public record. One of those documents is Exhibit 42 to Mia Mazza's Declaration in support of Apple's Motion to Compel Depositions of 14 of Samsung's Purported "Apex" Witnesses (doc. #736). (*See* Order, at 15.) More than two weeks after the Court issued the Order, nonparty Sprint Spectrum, L.P. ("Sprint")[1] learned that the Court ordered this document unsealed, to be filed in the public record by Apple. Sprint respectfully submits that good cause exists to redact certain information in this document from the public record regarding Sprint's economics surrounding the Samsung devices mentioned in the document, none of which are at issue in this lawsuit. Sprint has narrowly tailored its request to redact only information that is completely irrelevant to any issue in this case and that would cause substantial harm to Sprint if it were publicly disclosed. Sprint therefore moves the Court to allow this document to be filed in the public record with Sprint's requested redactions.[2]

## II. PROCEDURAL HISTORY

On February 28, 2012, Apple filed a Motion to Compel Depositions of 14 of Samsung's Purported "Apex" Witnesses. (Mot. to Compel (doc. #2018).) Apple argued it was entitled to take the depositions of fourteen Samsung executives, one of which was Joseph Cheong, the Chief Financial Officer of Samsung Telecommunications America ("STA"), the Samsung subsidiary that markets and sells the accused products in the United States. (*Id.* at 20-21.) In arguing that Apple was entitled to take Mr. Cheong's deposition, Apple pointed out that Mr. Cheong has ultimate authority to make decisions regarding STA's profitability from selling the accused products. (*Id.* at 22.) To support this argument, Apple cited two documents showing Mr. Cheong's decision-making authority. (*Id.*) One of these was the document at issue, Exhibit 42 to the Mazza declaration.

---

[1] Sprint Spectrum, L.P. is owned by Sprint Nextel Corporation. Sprint Spectrum, L.P. is the primary Sprint-related entity that sells various smartphone devices and corresponding services to end users in the United States.

[2] Samsung and Apple do not oppose this motion.

1  Apple cited Exhibit 42 as being a memorandum to Mr. Cheong regarding a carrier claim for
2  reimbursement from the sale of phones with certain quality issues. (*Id.*) In the document, it was
3  noted that "after a discussion with . . . [Mr. Cheong]" it was proposed that STA pay the carrier
4  $7M. (*Id.*) Sprint was the carrier making that reimbursement claim and that claim did not involve
5  any of the Samsung devices at issue in this lawsuit.

6  Now, many months later, discovery is closed and this case has been tried to a jury. The
7  Court recently issued its Order unsealing certain filings and directing the parties to file them in the
8  public record. In ordering Exhibit 42 unsealed, the Court reasoned that "Samsung has failed to
9  provide a particularized showing that specific harm will result if its comparisons of the phones are
10  made publicly available." (Order, at 15.)

11  Sprint respectfully submits that the Court, however, has not had an opportunity to consider
12  the competitive harm that would befall Sprint if certain information in this document were made
13  public. This document relates to a quality claim Sprint made against Samsung for a particular
14  Samsung device. (Mitchell Decl., Ex. A-1.) It sets forth the projected financial impact of this
15  particular device on Sprint. (*Id.*) It includes a chart with Sprint's return and exchange rates for a
16  number of Samsung devices that includes the cost per unit Sprint pays for those Samsung devices.
17  (*Id.*) It generally explains the handling of the performance issues with the particular device that is
18  the subject of the memorandum. (*Id.*) As will be explained below, this type of highly confidential
19  information regarding the economics of handset devices for a given wireless carrier is carefully
20  guarded within the wireless industry. In fact, even within Sprint itself, this type of information is
21  considered so sensitive that only employees with a clear and direct need to know it are given access
22  to this information. Sprint does not object to the global concept reflected in this document being
23  filed in the public record—i.e., that Sprint made a quality claim against Samsung for a particular
24  device and Mr. Cheong was involved in Samsung's handling of that claim. Sprint merely asks the
25  Court to allow it to redact specific information therein that would disclose to the public the
26  economics surrounding Sprint's handset devices.

27  Sprint appreciates the extraordinary burden that this case continues to take on the Court's

28

1  resources. Motions such as this also burden non-parties such as Sprint who are forced to protect
2  their legitimate business interests. Thus, Sprint does not bring this motion lightly to unnecessarily
3  burden itself and the Court with a trivial matter. The information Sprint seeks to redact would
4  cause Sprint substantial harm if it were to fall into the hands of Sprint's competitors. There is
5  simply no need for this information to be filed in the public record. It is irrelevant to the issue for
6  which Exhibit 42 was originally presented to the Court, which was to justify Mr. Cheong's
7  deposition by showing his status as a relevant STA decisionmaker. Sprint does not seek to redact
8  the salient aspects of Exhibit 42 from the public record. But good cause exists for the specific
9  redactions because that information is highly proprietary to Sprint and is wholly irrelevant to any
10 issue in this case.

## III.     GOOD CAUSE EXISTS FOR THE REDACTIONS AND SPRINT'S REQUEST IS NARROWLY TAILORED

13  The Court has already set forth the legal standards that govern this issue presented. The
14 document at issue is Exhibit 42 to Mia Mazza's declaration in support of Apple Inc.'s Motion to
15 Compel Depositions of 14 of Samsung's Purported "Apex" Witnesses (doc. #736). Because this
16 document was not attached to a dispositive motion, it is not subject to the "compelling reasons"
17 standard for overcoming the presumption of public access for dispositive motions. (Order, at 2.)
18 Rather, the "good cause" standard of Rule 26(c) applies because it was attached to a nondispositive
19 motion. (*Id.*) This standard requires a "particularized showing" that "specific prejudice or harm
20 will result" if the information is disclosed. (*Id.*) In addition, parties must "narrowly tailor" their
21 requests to only sealable material. (*Id.* at 3.)

22  Sprint has narrowly tailored its request to redact only specific information within the
23 document that would cause Sprint significant competitive harm if it were disclosed to the public.
24 Exhibit 42 contains extremely sensitive trade secret information that Sprint closely guards, including
25 the amount paid by Sprint to Samsung for several different Samsung handset models. The document
26 relates to a Sprint claim for reimbursement from Samsung for Sprint's costs caused by quality issues
27 associated with a particular Samsung handset device. It sets forth the financial impact that these

28

quality issues had on Sprint, including Samsung's handling of its proposed resolution for those quality issues. The chart at the top of page 2 of Exhibit 42 sets forth detailed and confidential information regarding seven different Samsung handsets, including the cost to Sprint of each handset device, return/exchange rates for each type of device, the extent to which those return/exchange rates were above what Sprint considers to be normal, incremental exchanges, and total excessive costs to Sprint associated with returns and exchanges on the listed Samsung handsets. It also contains the actual cost of repair for handset devices. It then sets forth screen shots with consumer ratings from which a reader could deduce the particular Samsung handset at issue. Finally, on the third page, it sets forth the major software issues Sprint encountered for this handset. (Owens Decl. ¶ 4.)

Financial information such as this relating to the economics associated with a wireless carrier carrying a particular handset device, including the price paid by the carrier for the device, is extraordinarily sensitive competitive information that is carefully guarded by all players within the wireless industry. For example, Sprint and the other carriers treat the prices they pay a handset manufacturer for handsets as extremely confidential trade secrets that they never share with other carriers or other handset makers. Indeed, Sprint and the other carriers and manufacturers consider such information to be so confidential that even when they are co-defendants in patent litigation, the information is treated as highly confidential and is not made available to anyone other than outside counsel for co-defendants. Similarly, even within Sprint itself, this type of information is considered so sensitive that it is disclosed internally only to employees with a clear and direct need to know it. (*Id.* ¶ 5.)

Public disclosure of the price and other economic information in Exhibit 42 would give Sprint's competitors and other manufacturers, who do not have to disclose their own similar information, a significant competitive advantage over Sprint. Carriers and manufacturers would be able to use this information to influence negotiations with each other and to make strategic purchasing and pricing decisions. Such disclosure would give Sprint's competitors and other manufacturers access to closely guarded information that they never otherwise would be able to obtain, while they would still be able to maintain secrecy of their own confidential trade secret

information.  (*Id.* ¶ 6.)

Exhibit 42 also sets forth the number of handsets repaired because of software issues like sluggish performance, locking up, and data freezing.  This information is carefully recorded and closely analyzed by Sprint, and by other carriers regarding their own devices, for the purpose of identifying which devices are more desired by consumers and where to shift corporate resources for optimizing market demand for the best devices paired with the best services.  This information takes resources to collect, analyze, and maintain.  Disclosure of this data would allow competitors to forgo the costs associated with market research and to benefit from Sprint's corporate expenditure and diligent efforts to maintain the secrecy of important knowledge of the trade for the purpose of optimizing company offerings with consumer demand.  Moreover, disclosure of this information would give other carriers a potential competitive advantage that they could use against Sprint, for example in marketing, without allowing Sprint access to similar information from those carriers about their devices.  (*Id.* ¶ 7.)

## IV.   CONCLUSION

For these reasons, Sprint respectfully requests that this Court allow Exhibit 42 to be filed in the public record, if at all, with the redactions requested by Sprint.  Sprint should not be forced to suffer competitive harm as a result of this smartphone war between Apple and Samsung.  Exhibit 42 is only tangentially related to a discovery dispute in this lawsuit, and the particular information Sprint seeks to redact is not relevant to that discovery dispute or any other issue in this case.

Dated:  October 16, 2012                    Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Andrew L. Chang*
    Andrew L. Chang
    B. Trent Webb
    Angel Mitchell

Attorneys for Non-Party
SPRINT SPECTRUM, L.P.