1   HAROLD J. MCELHINNY (CA SBN 66781)      WILLIAM F. LEE
    hmcelhinny@mofo.com                      william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)        WILMER CUTLER PICKERING
    mjacobs@mofo.com                         HALE AND DORR LLP
3   RACHEL KREVANS (CA SBN 116421)           60 State Street
    rkrevans@mofo.com                        Boston, MA 02109
4   JENNIFER LEE TAYLOR (CA SBN 161368)      Telephone: (617) 526-6000
    jtaylor@mofo.com                         Facsimile: (617) 526-5000
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California 94105-2482     MARK D. SELWYN (SBN 244180)
    Telephone: (415) 268-7000                mark.selwyn@wilmerhale.com
7   Facsimile: (415) 268-7522                WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
8                                            950 Page Mill Road
    Attorneys for Plaintiff and              Palo Alto, California 94304
9   Counterclaim-Defendant APPLE INC.        Telephone: (650) 858-6000
                                             Facsimile: (650) 858-6100
10

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15

16
    APPLE INC., a California corporation,      Case No. 11-cv-01846-LHK
17
              Plaintiff,                       **APPLE'S OPPOSITION TO**
18                                             **SAMSUNG'S MOTION FOR JMOL,**
         v.                                    **NEW TRIAL, AND/OR**
19                                             **REMITTITUR**
    SAMSUNG ELECTRONICS CO., LTD., a           **(FED. R. CIV. P. 50 & 59)**
20  Korean corporation; SAMSUNG
    ELECTRONICS AMERICA, INC., a New           Date:    Dec. 6, 2012
21  York corporation; and SAMSUNG              Time:    1:30 p.m.
    TELECOMMUNICATIONS AMERICA,                Place:   Courtroom 4, 5th Floor
22  LLC, a Delaware limited liability company, Judge:   Hon. Lucy H. Koh

23            Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

I.    SAMSUNG'S JUROR MISCONDUCT ALLEGATIONS FAIL .................................... 1

    A.    Mr. Hogan's Voir Dire Responses Do Not Require A New Trial ......................... 1

        1.    Samsung waived these objections ................................................... 1

        2.    Samsung cannot meet the test for a new trial ............................................. 2

        3.    Samsung cannot meet the "extraordinary" test for "implied bias" ............. 2

    B.    Samsung Has Not Shown That The Jury's Verdict Was Affected By Any Improper "Extraneous Evidence" ......................................................................... 3

    C.    Samsung's Attack On The Jury Does Not Require An Evidentiary Hearing ......... 4

II.    SAMSUNG IS NOT ENTITLED TO EITHER JMOL OR A NEW TRIAL ON APPLE'S DESIGN PATENT INFRINGEMENT CLAIMS. ........................................... 4

    A.    Substantial Evidence Supports The Finding Of Design Patent Infringement ......... 4

        1.    Samsung relies on an erroneous legal standard ......................................... 4

        2.    No claimed features in the patented designs are dictated by function ........ 5

    B.    Substantial Evidence Supports That The Design Patents Are Not Invalid ............. 6

III.    SAMSUNG IS NOT ENTITLED TO JMOL OR A NEW TRIAL ON APPLE'S TRADE DRESS CLAIMS. ............................................................................................. 7

    A.    Substantial Evidence Supports That The iPhone Trade Dress Is Protectable ......... 7

        1.    Samsung applies incorrect legal standards for functionality ..................... 7

        2.    Substantial evidence supports a finding of secondary meaning ................ 8

    B.    Substantial Evidence Supports The Finding Of Dilution ..................................... 9

IV.    SAMSUNG IS NOT ENTITLED TO EITHER JMOL OR A NEW TRIAL ON APPLE'S UTILITY PATENT INFRINGEMENT CLAIMS ........................................... 10

    A.    Substantial Evidence Supports The Validity Of Apple's Utility Patents ............. 10

    B.    Substantial Evidence Supports The Jury's Determinations Of Infringement ....... 11

V.    SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S WILLFULNESS FINDINGS ................................................................................................................... 13

VI.    SUBSTANTIAL EVIDENCE SUPPORTS SEC'S DIRECT INFRINGEMENT AND ACTIVE INDUCEMENT OF INFRINGEMENT ................................................... 15

VII.    SAMSUNG IS NOT ENTITLED TO JMOL, A NEW TRIAL, OR REMITTITUR ON DAMAGES ......................................................................................................... 16

    A.    The Damages Verdict Must Be Upheld Because It Is Neither Grossly Excessive Nor Unsupportable By The Record As A Whole ................................ 16

    B.    This Court Should Not Attempt To "Deconstruct" The Verdict ........................ 17

    C.    Samsung's "Hypothetical Award Components" Do Not Warrant Relief ............. 18

        1.    The record supports the jury's award of Samsung's profits ..................... 18

**TABLE OF CONTENTS**
(continued)

Page

2. The record supports the jury's award of Apple's lost profits.................... 20

3. The record supports the jury's award of royalties.................................... 21

D. Samsung's "Incorrect Notice Date" Arguments Are Wrong ............................... 22

E. Samsung Has Not Shown That It Is Entitled To Remittitur................................ 24

F. Samsung Has Not Accounted For The Stipulation And Order ............................ 25

VIII. SAMSUNG IS NOT ENTITLED TO JMOL ON ITS OFFENSIVE CASE.................... 25

A. Substantial Evidence Supports The Jury's Non-Infringement And Patent Exhaustion Findings For The '516 And '941 Patents............................................ 26

B. Substantial Evidence Supports The Jury's Non-Infringement Findings For The '460, '893, And '711 Patents ...................................................................... 28

IX. SAMSUNG'S DELIBERATE TRIAL STRATEGY CANNOT IMPLICATE THE "INTERESTS OF JUSTICE" ............................................................................................ 30

CONCLUSION...................................................................................................................... 30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Alpex Computer Corp. v. Nintendo Co.*,
    102 F.3d 1214 (Fed Cir. 1997).............................................................................. 27

5

6

*Apple Inc. v. Samsung Elecs. Co.*,
    678 F.3d 1314 (Fed. Cir. 2012).......................................................................... 6, 7

7

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
    457 F.3d 1062 (9th Cir. 2006)................................................................................ 8

8

9

*B & H Mfg. Co., Inc. v. Bright*,
    No. CVF01-6619,
    2005 WL 1342815 (E.D. Cal. May 10, 2005)...................................................... 10

10

11

*Best Lock Corp. v. Ilco Unican Corp.*,
    94 F.3d 1563 (Fed. Cir. 1996)................................................................................ 6

12

13

*Braun, Inc. v. Dynamics Corp. of Am.*,
    975 F.2d 815 (Fed. Cir. 1992)................................................................................ 4

14

*Brocklesby v. United States*,
    767 F.2d 1288 (9th Cir. 1985).............................................................................. 24

15

16

*Burberry Ltd. v. Euro Moda, Inc.*,
    No. 08 Civ. 5781,
    2009 WL 1675080 (S.D.N.Y. June 10, 2009)........................................................ 9

17

18

*Carbice Corp. v. Am. Patents Dev. Corp.*,
    283 U.S. 27 (1931)................................................................................................ 19

19

20

*Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*,
    817 F. Supp. 979 (D. Mass. 1992) ....................................................................... 23

21

*Chuy v. The Philadelphia Eagles Football Club*,
    595 F.2d 1265 (3d Cir. 1979)............................................................................... 17

22

23

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
    870 F.2d 512 (9th Cir. 1989).................................................................................. 9

24

25

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
    460 F.3d 1349 (Fed. Cir. 2006)....................................................................... 6, 26

26

27

*Contessa Food Products, Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002)............................................................................. 5

28

1

2

## <u>TABLE OF AUTHORITIES</u>
**(continued)**

**Page**

3

4

*Crocs, Inc. v. ITC,*
    598 F.3d 1294 (Fed. Cir. 2010) ............................................................. 5

5

*D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.,*
    692 F.2d 1245 (9th Cir. 1982) ............................................................. 24

6

7

*Disc Golf Ass'n v. Champion Discs, Inc.,*
    158 F.3d 1002 (9th Cir. 1998) ............................................................. 8

8

*DSPT Int'l, Inc. v. Nahum,*
    624 F.3d 1213 (9th Cir. 2010) ............................................................. 1

9

10

*Dyer v. Calderon,*
    151 F.3d 970 (9th Cir. 1998) ............................................................. 2, 3

11

12

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
    543 F.3d 665 (Fed. Cir. 2008) ............................................................. 5

13

14

*Energy Transp. Grp., Inc., v. William Demant Holding A/S,*
    No. 2011-1487,
    2012 WL 4840813 (Fed. Cir. Oct. 12, 2012) ...................................... 1, 16, 23, 24

15

16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002) ............................................................. 29

17

*Global-Tech Appliances, Inc., v. SEB S.A.,*
    131 S. Ct. 2060 (2011) ............................................................. 16

18

19

*GTFM, Inc. v. Solid Clothing, Inc.,*
    215 F. Supp. 2d 273 (S.D.N.Y. 2002) ............................................................. 22

20

21

*Hard v. Burlington N. Railroad,*
    870 F.2d 1454 (9th Cir. 1989) ............................................................. 4

22

23

*Hatcher v. County of Alameda,*
    No. C09-01650,
    2011 WL 4634053 (N.D. Cal. Oct. 5, 2011) ...................................... 3, 4

24

25

*Highmark, Inc. v. Allcare Health Mgmt. Sys.,*
    687 F.3d 1300 (Fed. Cir. 2012) ............................................................. 14

26

*i4i Ltd. P'ship v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010) ............................................................. 14

27

28

*Image Tech. Servs. Inc. v. Eastman Kodak Co.,*
    125 F.3d 1195 (9th Cir. 1997) ............................................................. 2

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006)..................................................................... *passim*

4

5

*In re Geiger*,
57 C.C.P.A. 1073 (C.C.P.A. 1970) ........................................................... 7

6

7

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982). (Mot. at 9 n.9.)........................................................ 8

8

*Junker v. HDC Corp.*,
No. C-07-05094,
2008 WL 3385819 (N.D. Cal. July 28, 2008) .......................................... 19

9

10

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
752 F.2d 1326 (9th Cir. 1984)................................................................... 19

11

12

*Keystone Mfg. Co. v. Jaccard Corp.*,
No. 03-CV-648S,
2007 WL 655758 (W.D.N.Y. Feb. 26, 2007) ........................................... 8

13

14

*Kohler Co. v. Moen Inc.*,
12 F.3d 632 (7th Cir. 1993)....................................................................... 8

15

16

*Krause v. Dresser Indus., Inc.*,
910 F.2d 674 (10th Cir. 1990)................................................................... 17

17

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993)................................................................. 6

18

19

*Landes Constr. Co. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987)................................................................... 24

20

21

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)..................................................................... 15

22

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993)................................................................... 19

23

24

*Litecubes, LLC v. N. Light Prods.*,
523 F.3d 1353 (Fed. Cir. 2008)................................................................. 15

25

*Los Angeles Mem'l Coliseum Comm'n v. NFL*,
791 F.2d 1356 (9th Cir. 1986)................................................................... 17

26

27

*Los Angeles Nut House v. Holiday Hardware Corp.*,
825 F.2d 1351 (9th Cir. 1987)................................................................... 12, 13

28

## TABLE OF AUTHORITIES
### (continued)

Page

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .................................................................. 18

*Mgmt. Sys. Associates, Inc. v. McDonnell Douglas Corp.*,
  762 F.2d 1161 (4th Cir. 1985) .................................................................... 27

*McDonough Power Equip., Inc. v. Greenwood*,
  464 U.S. 548 (1984) ............................................................................. 1, 2

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) .................................................................. 28

*Mid-west Underground Storage, Inc. v. Porter*,
  717 F.2d 493 (10th Cir. 1983) .................................................................... 17

*Minks v. Polaris Indus., Inc.*,
  546 F.3d 1364 (Fed. Cir. 2008) .................................................................. 23

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ....................................................................... 1

*Morgan v. Woessner*,
  997 F.2d 1244 (9th Cir. 1993) ..................................................................... 4

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
  35 F.3d 1576 (Fed. Cir. 1994) .................................................................... 28

*Nike Inc. v. Wal-Mart Stores*,
  138 F.3d 1437 (Fed. Cir. 1998) .................................................................. 19

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
  40 F.3d 1007 (9th Cir. 1994) ...................................................................... 19

*Oiness v. Walgreen Co.*,
  88 F.3d 1025 (Fed. Cir. 1996) .................................................................... 24

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ............................................................. 16, 19

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008) ................................................................................ 28

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) .................................................................... 19

# TABLE OF AUTHORITIES
### (continued)

Page

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
563 F.3d 1358 (Fed. Cir. 2009)................................................................. 18, 23, 24

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010)........................................................................... 6

*Robinson v. Monsanto Co.*,
758 F.2d 331 (8th Cir. 1985)........................................................................ 1, 2, 4

*Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*,
206 F.3d 900 (9th Cir. 2000)............................................................................. 4

*Spectralytics, Inc. v. Cordis Corp.*,
649 F.3d 1336 (Fed. Cir. 2011)......................................................................... 22

*Telcordia Techs., Inc. v. Cisco Systems, Inc.*,
612 F.3d 1365 (Fed. Cir. 2010)......................................................................... 18

*The Home Indem. Co. v. Lane Powell*,
43 F.3d 1322 (9th Cir. 1995)............................................................................ 13

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001).......................................................................................... 8

*United States v. Bolinger*,
837 F.2d 436 (11th Cir. 1988)............................................................................ 1

*United States v. Budziak*,
No. 11-10223,
2012 WL 4748704 (9th Cir. Oct. 5, 2012)........................................................... 3

*United States v. Smith*,
424 F.3d 992 (9th Cir. 2005)............................................................................. 4

*United States v. Span*,
75 F.3d 1383 (9th Cir. 1996)............................................................................. 3

*United States v. Stacey*,
475 F.2d 1119 (9th Cir. 1973)........................................................................... 3

*Wechsler v. Macke Int'l Trade, Inc.*,
486 F.3d 1286 (Fed. Cir. 2007)......................................................................... 21

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
274 F.3d 1276 (9th Cir. 2001)........................................................................... 26

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

15 U.S.C.

§ 1057(b) ................................................................................................................. 7, 8
§ 1117 ................................................................................................................... 18, 20
§ 1117(a) .................................................................................................................... 19
§ 1125(c)(1) ................................................................................................................. 9
§ 1125(c)(2)(A) ........................................................................................................... 9

35 U.S.C.

§ 102(a) ....................................................................................................................... 6
§ 284 ..................................................................................................................... 19, 20
§ 289 ..................................................................................................................... 18, 19

1

**INTRODUCTION**

2          Samsung fails to meet the high bar to obtain judgment or new trial on any claim.  *DSPT*

3   *Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) ("verdict must be upheld if it is

4   supported by substantial evidence" and disturbed only if "evidence permits only one reasonable

5   conclusion," which is "contrary to the jury's verdict"); *Molski v. M.J. Cable, Inc*., 481 F.3d 724,

6   729 (9th Cir. 2007) (new trial permissible only if "verdict is contrary to the clear weight of the

7   evidence" or "to prevent a miscarriage of justice").  Samsung also falls far short of showing the

8   "grossly excessive or monstrous" damages "clearly not supported by the evidence, or based only

9   on speculation or guesswork" required to disturb the jury's award.  *Energy Transp. Grp., Inc., v.*

10  *William Demant Holding A/S*, No. 2011-1487, 2012 WL 4840813, at *11 (Fed. Cir. Oct. 12,

11  2012) (internal quotation marks omitted).

12  **I.      SAMSUNG'S JUROR MISCONDUCT ALLEGATIONS FAIL**

13          **A.      Mr. Hogan's Voir Dire Responses Do Not Require A New Trial**

14                  **1.      Samsung waived these objections**

15          Samsung accuses Mr. Hogan of "fail[ing] to answer truthfully during voir dire" by not

16  mentioning a dispute with Seagate in 1993 and a related bankruptcy.  (Mot. at 2.)  Samsung

17  waived these objections because it knew of or could have discovered the alleged "lies" before the

18  verdict.  "'[A] defendant cannot learn of juror misconduct during the trial, gamble on a favorable

19  verdict by remaining silent, and then complain in a post-verdict motion that the verdict was

20  prejudicially influenced by that misconduct.'"  *United States v. Bolinger*, 837 F.2d 436, 438-39

21  (11th Cir. 1988); *Robinson v. Monsanto Co.*, 758 F.2d 331, 335 (8th Cir. 1985) (objection waived

22  if basis "might have been discovered during voir dire"); *see McDonough Power Equip., Inc. v.*

23  *Greenwood*, 464 U.S. 548, 550 n.2 (1984) (party cannot attack verdict based on unchallenged voir

24  dire answer that it "thought to be factually incorrect").

25          Mr. Hogan disclosed during voir dire that he had "worked for Seagate" (Tr. 191:20-

26  192:2), and Samsung also knew that day that Mr. Hogan failed to disclose that he "declared

27  bankruptcy in 1993."  (Dkt. No. 2022 ¶ 9.)  If Samsung's recent acquisition of a 9.6% stake in

28  Seagate (Dkt. No. 2013-4) were so important that bias toward Seagate could create bias against

APPLE'S OPPOSITION TO SAMSUNG'S JMOL, NEW TRIAL, AND REMITTITUR MOTION
CASE NO. 11-CV-01846-LHK
sf-3200293

1

1   Samsung, it should have asked Mr. Hogan about Seagate.  Had Samsung done so, or ordered the

2   bankruptcy file—the exact step it took *only after* it received the unfavorable jury verdict—it

3   could have discovered the Seagate complaint.  (Dkt. No. 2022 ¶ 4.)  By doing nothing, Samsung

4   waived its objections.  *Robinson*, 758 F.2d at 334-35 (no new trial where juror disclosed

5   employer and plaintiff failed to ask about dealings between employer and defendant).

6   **2.  Samsung cannot meet the test for a new trial**

7   To obtain a new trial, Samsung "must first demonstrate that a juror failed to answer

8   honestly a material question on voir dire, and then further show that a correct response would

9   have provided a valid basis for a challenge for cause."  *McDonough*, 464 U.S. at 556; *see id.* at

10   555-56 (prejudice to "peremptory strike" insufficient).  Samsung cannot meet this high bar.  Its

11   theory is that, due to a decades-old dispute with *Seagate*, Mr. Hogan lied to serve on the jury in a

12   case *where Seagate is not a party* in order to exact revenge by harming a Seagate *shareholder*.

13   This falls far short of establishing challenge for cause.  *See Image Tech. Servs. Inc. v. Eastman*

14   *Kodak Co*., 125 F.3d 1195, 1220-21 (9th Cir. 1997) (no cause to challenge juror with "sometimes

15   adversarial relationship" with defendant).

16   Samsung also cannot show that Mr. Hogan's responses were "dishonest."  "Dishonest"

17   means more than a mistake:  "[A]n honest yet mistaken answer to a *voir dire* question rarely

18   amounts to a constitutional violation; even an intentionally dishonest answer is not fatal, so long

19   as the falsehood does not bespeak a lack of impartiality."  *Dyer v. Calderon*, 151 F.3d 970, 973

20   (9th Cir. 1998) (en banc).  When asked, "[h]ave you . . . ever been involved in a lawsuit, either as

21   a plaintiff, a defendant, or as a witness," Mr. Hogan described a 2008 technology ownership

22   lawsuit.  (Tr. 148:18-150:11.)  He was never asked if there were other lawsuits or a bankruptcy,

23   and hence never failed to answer a question truthfully.

24   **3.  Samsung cannot meet the "extraordinary" test for "implied bias"**

25   Samsung asserts that "implied bias" requires a new trial when a juror "'lies materially and

26   repeatedly'" to "'secure a seat on the jury.'"  (Mot. at 2.)  Samsung cites *Dyer*, but that case

27   limited implied bias to "extraordinary" cases, 151 F.3d at 981, and involved extraordinary facts:

28   a juror who concealed "the killing of her brother in a way that she knew was very similar to the

way Dyer was accused of killing his victims" and hid "many other facts that would have jeopardized her chances of serving on the *Dyer* jury." *Id.* at 982.  Mr. Hogan's post-verdict comments about serving on a jury in an important case (Mot. at 2) are not remotely similar.  Mr. Hogan said that he had "'expected to be dismissed'" (Mot. at 2-3) because he "had a tech patent to his name" (Dkt. No. 2013-9 at 1)—a fact he disclosed during voir dire (Tr. 163:19-24).  These comments do not show an attempt to hide facts to get on the jury.   Samsung points to Mr. Hogan's comments about intellectual property, but his comments were balanced, not biased. "[N]o matter who you are—whether you are Apple, whether you are Samsung, or anybody—if you wil[l]fully take the risk to cross the line and start infringing and you get caught, and again I emphasi[z]e wil[l]fully, you need to be prepared to pay the cost for that."  (Dkt. No. 2013-13 at 2; *see also* Dkt. No. 2013-10 at 1 ("I wanted to be satisfied from my own perspective that *this trial was fair* and protected copyrights and intellectual property rights, *no matter who they belonged to*" (emphasis added)); Dkt. No. 2013-12 at 1 (Apple's damages claim "extraordinarily high" and damages should be neither "unreasonable" nor "just a slap on the wrist.").)

### B.   Samsung Has Not Shown That The Jury's Verdict Was Affected By Any Improper "Extraneous Evidence"

Samsung contends media interviews show Mr. Hogan "told his fellow jurors" about "incorrect and extraneous legal standards."  (Mot. at 3.)  Samsung is barred from attacking the verdict based on evidence of "the jury's deliberations," Fed. R. Evid. 606(b), including evidence that "jurors misunderstood the applicable law," *United States v. Span*, 75 F.3d 1383, 1390 n.8 (9th Cir. 1996).  This rule is so fundamental that the Ninth Circuit has denied new trials even where, for example, a jury would have acquitted a criminal defendant had it properly understood the law.  *United States v. Stacey*, 475 F.2d 1119, 1120 (9th Cir. 1973).  Because Mr. Hogan's comments involve "legal standards" (Mot. at 3), they do "not constitute extraneous evidence and [are] not eligible for consideration under 606(b)."  *Hatcher v. County of Alameda*, No. C09-01650, 2011 WL 4634053, at *3 (N.D. Cal. Oct. 5, 2011).  Samsung suggests Mr. Hogan improperly relied on his general technical experience, but such reliance is allowed.  *United States v. Budziak*, No. 11-10223, 2012 WL 4748704, at *5 (9th Cir. Oct. 5, 2012) ("computer savvy" jurors'

1  remarks about software "not a legitimate subject of inquiry" under Rule 606(b)).  Unlike *Casanas*

2  *v. Yates*, Mr. Hogan did not "apply[] his experience to question the law."  No. 08-02991, 2010

3  WL 3987333, at *6 (N.D. Cal. Oct. 12, 2010) (dismissal for cause before Rule 606(b) attached).

4  He stated:  "My opinion does not matter the current law is what it is today and I swore an[] oath

5  to abide by it and I did just that."  (Dkt. No. 2013-16 at 12.)

6      Samsung also cannot meet its burden of showing "by a preponderance of the evidence that

7  the outcome would have been different" but for Mr. Hogan's alleged reliance on his personal

8  experience, *Hard v. Burlington Northern Railroad*, 870 F.2d 1454, 1461 (9th Cir. 1989),[1] because

9  substantial evidence supports the verdict, as shown below in Sections II to VI.

10      **C.      Samsung's Attack On The Jury Does Not Require An Evidentiary Hearing**

11      Samsung's request for a hearing "with all jurors" should be denied because its attack on

12  the jury is clearly unfounded and inadmissible evidence about jury deliberations "cannot serve to

13  require an evidentiary hearing."  *Hatcher*, 2011 WL 4634053, at *6; *see Morgan v. Woessner*,

14  997 F.2d 1244, 1261-62 (9th Cir. 1993) (no hearing because remark about "send[ing] a message"

15  inadmissible under Rule 606(b)); *Robinson*, 758 F.2d at 333 (no hearing because no evidence of

16  deliberate concealment or probable bias); *United States v. Smith*, 424 F.3d 992, 1011-13 (9th Cir.

17  2005) (no hearing because record sufficient to find no bias).

18  **II.    SAMSUNG IS NOT ENTITLED TO EITHER JMOL OR A NEW TRIAL ON
        APPLE'S DESIGN PATENT INFRINGEMENT CLAIMS.**

19      **A.      Substantial Evidence Supports The Finding Of Design Patent Infringement**

20          **1.      Samsung relies on an erroneous legal standard**

21      Samsung's arguments rest on the false premise that design patent infringement requires

22  purchaser deception (Mot. at 4-5), but no case so holds.  *See, e.g.*, *Braun, Inc. v. Dynamics Corp.*

23  *of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992).  Samsung's straw man regarding "general design

24  concepts" also fails, as the Court specifically instructed the jury that a design patent "does not

25

26  ――――――――――――――
    [1] *Hard* is the controlling Ninth Circuit test for civil cases.  No "extraneous information" was at
27  issue in *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*, 206 F.3d 900, 906 (9th Cir. 2000),
    so its formulation of the test (citing criminal cases) was dictum that did not overrule the earlier
28  *Hard* case, which *Hatcher* applied.  2011 WL 4634053, at *5.

1   cover a general design concept." (Dkt. No. 1903 (JI 43).)

2        The test for design patent infringement is whether, in the eye of an ordinary observer

3   familiar with the prior art and giving such attention as a purchaser usually gives, the patented and

4   accused designs are substantially the same.  *See, e.g., Egyptian Goddess, Inc. v. Swisa, Inc.*, 543

5   F.3d 665, 677-78 (Fed. Cir. 2008). [2]  Under the Court's correct construction of the D'305, D'677,

6   and D'087 patents, substantial evidence supports infringement.  Taking the prior art into

7   consideration, Mr. Bressler and Dr. Kare testified that the infringing phones' designs are

8   substantially similar to Apple's patented designs.  (Tr. 1049:6-1064:11 (Bressler on substantial

9   similarity of Samsung phones and D'677/D'087); Tr. 1371:18-1381:23 (Kare, same re D'305).)

10       Samsung's argument relies on features in isolation.  (Mot. at 5-7.)  But the law requires an

11   analysis of "the *overall* design, not of similarities in ornamental features in isolation."  *Crocs, Inc.*

12   *v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  Samsung recycles its "home screen" argument

13   (Mot. at 6-7), but Apple did not accuse Samsung's home screen and infringement requires no

14   proof of actual deception.  Samsung cites *Contessa Food Products, Inc. v. Conagra, Inc.*, 282

15   F.3d 1370 (Fed. Cir. 2002), but *Contessa* held that the comparison of patent to product is based

16   on "normal use of the product," and not only on what appears at time of sale.  *Id.* at 1381.

17           **2.**     **No claimed features in the patented designs are dictated by function**

18       Samsung waived many of its functionality contentions—the "rectangular" shape, "curved

19   corners," "black" color, "opaque borders," and "bezel" of the D'087 and D'677, and the

20   "sufficient space between icons," "color green," "images of clock," the "colorful" aspect of the

21   "matrix of icons in a grid," and "square shapes with rounded corners" of the D'305—by not

22   presenting them as claim construction issues before trial.  They were not raised in Samsung's

23   claim construction brief (Dkt. No. 1090), in its Rule 50(a) brief (Dkt. No. 1819), in its High

24

25   [2] Contrary to Samsung's footnote 1, the Court correctly instructed that:  "[m]inor differences
should not prevent a finding of infringement" (Dkt. No. 1903 (JI 46)); *see Crocs, Inc. v. ITC*, 598

26   F.3d 1294, 1303 (Fed. Cir. 2010); the jury should "consider perceived similarities or differences
between the patented and accused designs"; "[w]hen the claimed design is visually close to prior

27   art design, small differences . . . may be important"; the infringement test takes prior art into
account; and the jury "must familiarize yourself with the prior art" in determining "whether there
has been direct infringement."  (Dkt. No. 1903 (JI 46).)

28

1   Priority Objections to the jury instructions (Dkt. No. 1859-1860), or at the charging conference

2   (*see* Tr. 3769:11-3770:14; 3904:3-5; 3906:14-23 (Samsung referring only to prior claim

3   construction positions).  It is too late for Samsung to raise these contentions.  *Conoco, Inc. v.*

4   *Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("new claim construction

5   disputes" waived "if they are raised for the first time after trial").

6          Samsung's arguments also fail on the merits.  First, the Court was correct not to instruct

7   the jury to factor out functional elements because that is a legal issue for the Court.  *Richardson v.*

8   *Stanley Works, Inc*., 597 F.3d 1288, 1293 (Fed. Cir. 2010).  Second, Samsung's entire

9   "functionality" argument is based on an incorrect legal standard:  that if an element of a design

10   patent has a function, it is "functional."  But the law requires more:  the element must be "dictated

11   by" function.  *See id*.  A "design is not dictated solely by its function when alternative designs for

12   the article of manufacture are available."  *Best Lock Corp. v. Ilco Unican Corp*., 94 F.3d 1563,

13   1566 (Fed. Cir. 1996).  The evidence at trial, including extensive evidence of alternative designs,

14   supports the Court's conclusion that none of the elements Samsung cited is dictated by function.

15   (Tr. 1090:12-1091:8, 3605:5-19 (Bressler on non-functionality of D'087/D'677); Tr. 1404:16-

16   1405:12, 3465:21-3474:11 (Kare, same re D'305); PX10, PX148, PX150, PX2277, PX2278

17   (third party alternative designs); PX163-PX168 (Apple internal alternative phone designs).)

18   Samsung's sole design expert, Mr. Sherman, conceded that there were plenty of alternative

19   designs.  (Tr. 2621:19-24 ("[i]n no way did I say that there aren't alternative designs").)

20          **B.      Substantial Evidence Supports That The Design Patents Are Not Invalid**

21          Samsung argues the functionality of *individual elements of* the designs, but the law

22   requires proof that the "overall" designs are "dictated by" function, a test Samsung does not even

23   attempt to meet.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

24   Samsung's obviousness arguments ignore the requirement for primary and secondary references,

25   which Samsung failed to identify.  *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329-30

26   (Fed. Cir. 2012).  And Samsung cannot rely on the LG Prada phone, as Samsung offered no

27   evidence that it was released in the U.S. before the patents' critical date.  *See* 35 U.S.C. § 102(a).

28          Under the correct test, substantial evidence supports the jury's finding that the design

1    patents are not obvious.  (Tr. 1340:16-1347:17, 1352:5-10, 3590:15-3606:4 (Bressler

2    distinguishing prior art).)  The Federal Circuit has already rejected the argument that the TC1000

3    and the Fidler mock-up render the D'889 patent obvious.  *Apple*, 678 F.3d at 1330-32.  Samsung

4    also ignores the substantial evidence of objective indicia of nonobviousness:  initial skepticism,

5    acclaim, commercial success, and copying by Samsung.  (*E.g.*, Tr. 508:4-509:4 (design awards);

6    PX36.20-.32 ( "revolutionary"; "strong, screen-centric design"); PX134.1 ( "beautiful"; "initial

7    skepticism" of lack of keyboard); PX135.1 ("iPhone is pretty" was number one reason for

8    invention of the year award); Tr. 611:6-613:12 (iPhone sold "extremely well"); Tr. 625:1-636:19

9    (design is reason for success); PX146.7 (design important to iPhone purchasers); PX3 & PX4

10   (timelines showing Samsung's copying); PX40 (Samsung "hear[s] things like this:  'Let's make

11   something like the iPhone'"); PX44.122, .127, .131 (Samsung copying iPhone UI and icons).)

12        Finally, Samsung waived its argument that the D'677 is invalid for double-patenting over

13   the D'087 as it failed to make the argument in its Rule 50(a) motion.  (Dkt. No. 1819.)

14   Furthermore, Samsung never sufficiently disclosed this defense, merely asserting without

15   explanation that every Apple design patent was invalid for double patenting.  (Dkt. No. 949-2 Ex.

16   25 at 10-11.)  Even if not waived, the D'677 patent is not invalid for double-patenting because the

17   D'087 and D'677 do not claim identical designs.  *See In re Geiger*, 57 C.C.P.A. 1073, 1078

18   (C.C.P.A. 1970) (no double-patenting because "the subject matter claimed in the application

19   before us is not identical to the subject matter claimed in the patent").

20   **III.   SAMSUNG IS NOT ENTITLED TO JMOL OR A NEW TRIAL ON APPLE'S
          TRADE DRESS CLAIMS.**

21        **A.    Substantial Evidence Supports That The iPhone Trade Dress Is Protectable**

22             **1.    Samsung applies incorrect legal standards for functionality**

23        Apple's registered iPhone 3G Trade Dress is presumed non-functional and valid.  15

24   U.S.C. § 1057(b).  Samsung fails to address this presumption or identify evidence to rebut it.  As

25   for Apple's unregistered trade dress, there was substantial evidence supporting the jury's decision

26   that it is non-functional.  As this Court previously recognized, under the "'traditional rule,'" a

27   trade dress is functional if it is "'essential to the use or purpose of the article or if it affects the

28

1    cost or quality of the article.'"  (Dkt. No. 1159 at 4 (quoting *TrafFix Devices, Inc. v. Mktg.*

2    *Displays, Inc.*, 532 U.S. 23, 33 (2001)).)  *TrafFix* looks to four factors in assessing functionality,

3    *id.,* and the evidence on each supported non-functionality.  First, does advertising tout the

4    utilitarian advantages of the design?  Apple's did not.  (Tr. 654:24-655:1 (Schiller) ("product as

5    hero" ads show "visual impact" and do not tout utility).)  Second, does the design result from a

6    comparatively simple or inexpensive method of manufacture?  Apple's did not.  (Tr. at 494:15-

7    495:21 (Stringer) (detailing "many" "[p]roduction problems" in manufacturing iPhone).)  Third,

8    does the design yield a utilitarian advantage?  Apple's did not.  (*Id*. at 493:14-15 (Apple chose

9    design because "[i]t was the most beautiful").)  Fourth, were alternative designs available?  Dr.

10    Kare and Mr. Bressler testified that there were.  (PX10 (alternative designs); Tr. 1400:6-1401:1

11    (Kare on alternative designs).)[3]  "[I]n evaluating functionality, the trade dress should be

12    considered as a whole rather than as a collection of individual elements,"  (Dkt. No. 1159 at 5),

13    yet  Samsung attempts only to show that individual elements are functional.  Samsung argues that

14    the iPhone trade dress is unprotectable because it is "beautiful" (Mot. at 9), but the Ninth Circuit

15    has squarely rejected this notion.  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d

16    1062, 1072 (9th Cir. 2006).  Nor can the iPhone's beauty support a finding of aesthetic

17    functionality, as there is no evidence that protection for the iPhone trade tress would put

18    competitors at a "significant non-reputation-related disadvantage."  *TrafFix*, 532 U.S. at 33.[4]

19                **2.**       **Substantial evidence supports a finding of secondary meaning**

20          Courts consider various factors in assessing secondary meaning, including:  (1) whether

---

[3] Samsung wrongly argues that evidence of alternative designs is irrelevant under the "essential to the use or purpose" or "affects the cost or quality" test of *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982).  (Mot. at 9 n.9.)  In fact, the Ninth Circuit specifically identified alternative designs as a factor to be considered in applying the *Inwood* test.  *See Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (citing *Qualitex Co. v. Jacobson Prods. Co*., 514 U.S. 159, 165 (1995), which in turn cites *Inwood*).

[4] Samsung's argument that Apple cannot obtain protection for the same designs under both design patent and trade dress law (Mot. at 9) is incorrect.  *See Kohler Co. v. Moen Inc.*, 12 F.3d 632, 640 n.10 (7th Cir. 1993) ("federal trademark protection does not transform the durationally limited monopoly of a design patent into a perpetual right" as it "does not create a monopoly in the use of the product's shape").  Far from voiding trade dress protection, design patents may be evidence of a corresponding trade dress's non-functionality.  *See Keystone Mfg. Co. v. Jaccard Corp*., No. 03-CV-648S, 2007 WL 655758, at *7-8 (W.D.N.Y. Feb. 26, 2007).

purchasers associate the configuration with plaintiff; (2) the degree and manner of plaintiff's advertising; (3) the length and manner of plaintiff's use of the configuration; and (4) whether plaintiff's use has been exclusive.  *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989).  Apple presented sales numbers, advertising expenditures, and advertisements prominently displaying the iPhone design.  (PX11 (print and outdoor ads); PX12 & PX127 (TV ads); PX14 (media clips); PX15 (sales numbers); PX16 (ad spend); Tr. 639:8-640:3 (Schiller re Apple's "product as hero" advertising approach).)

### B.       Substantial Evidence Supports The Finding Of Dilution

Samsung wrongly claims that the record contains "no evidence" of fame before its first infringing sales in July 2010.  (Mot. at 10-11.)  First, surveys are not required to establish fame.  *See Burberry Ltd. v. Euro Moda, Inc*., No. 08 Civ. 5781, 2009 WL 1675080, at *12 (S.D.N.Y. June 10, 2009) (finding fame without surveys in part because of "prominent advertising").  Second, *most* of Apple's fame evidence was before July 2010.  (PX11 (print/outdoor ads), PX12 (TV ads), PX14 (media clips), PX133 & PX135 (press coverage).)  Apple also offered "Advertising Expenditures (U.S.)" (PX 16), "Cumulative Unit Sales (U.S.") (PX15), and an estimate of advertising expenses as of June 2010 (Tr. 653:24-655:1 (Schiller estimating $120-130 million in advertising from October 2009 through June 2010).  Samsung similarly distorts the record on dilution by overstating its evidence of "similar" third-party smartphones (Mot. at 11), including irrelevant phones that post-date Samsung's first release of accused products.  (DX712 ("State of Mobile 2011").)  Samsung faults Apple for its alleged failure to offer "empirical evidence" and "hard data" showing dilution (Mot. at 11), but the correct test is *likelihood* of dilution, not actual dilution, and no such evidence is required.  15 U.S.C. § 1125(c)(1).

Samsung's attacks also overlook Apple's evidence of the strength and recognition of its iPhone Trade Dress, the similarity of the accused products to the iPhone Trade Dress, Samsung's intent to trade on recognition for the iPhone Trade Dress, and actual association of the accused products with the iPhone Trade Dress.  *See* 15 U.S.C. § 1125(c)(2)(A) (listing factors relevant to dilution analysis).  (*E.g.*, JX1007, 1010-13, 1015-17, 1019, 1022, 1025, 1027, 1031-35 (accused products); PX6 (press reports regarding similarity between iPhone and accused products'

1  designs); Tr. 1521:22-24 (Winer) ("[T]here is a high degree of dilution, and, therefore, blurring

2  between the trade dresses."), 1506:16-1507:2 ("Samsung held Apple's products up as targets and

3  tried to emulate them."); Tr. 1695:17-1695:22 (Van Liere reporting net association rates of 38%

4  and 37% for two different accused products).)  Samsung was undisputedly aware of Apple's

5  iPhone when it designed its accused products, viewed the iPhone as "a revolution" (PX36.20),

6  and strove for its products to resemble the iPhone (PX44 (Relative Evaluation Report on S1,

7  iPhone).)  Nothing more is required to support the jury's finding of willful dilution. *See, e.g.*, *B &*

8  *H Mfg. Co., Inc. v. Bright*, No. CVF01-6619, 2005 WL 1342815, at *9 (E.D. Cal. May 10, 2005)

9  (plaintiff must show defendant "willfully intended to trade on the owner's reputation or to cause

10  dilution of the famous mark").  And Apple need only prove willfulness by a preponderance of the

11  evidence (Dkt. No. 1903 at 93:9-10 (JI 71), not "clear and convincing proof" as Samsung

12  erroneously asserts (Mot. at 11.)

13  **IV.   SAMSUNG IS NOT ENTITLED TO EITHER JMOL OR A NEW TRIAL ON
         APPLE'S UTILITY PATENT INFRINGEMENT CLAIMS**

14

15         **A.   Substantial Evidence Supports The Validity Of Apple's Utility Patents**

16         ***'915 and '163 Patents.***  Samsung is incorrect that Mr. Gray's testimony established

17  invalidity and that there was "no evidence" to the contrary.  (Mot. at 12-13.)  On claim 8 of

18  the '915 patent, each of Mr. Gray's cited references was missing elements:  DiamondTouch with

19  Fractal Zoom was "not a touch-sensitive display . . . integrated with the data processing system"

20  (Tr. 3623:7-18 (Singh)); more than two input points in FractalZoom resulted in a scroll rather

21  than a gesture operation (Tr. 2356:22-2357:5 (Forlines) ("[I]f it's not a two-finger touch, we set

22  the application mode to panning mode here.")); and Mr. Gray failed to show that two limitations

23  regarding "views associated with the event object" were met (Tr. 3624:21-3625:5 (Singh)).  Dr.

24  Singh rebutted Mr. Gray's opinion (Tr. 3622:19-3625:9) ("Mr. Gray did not disclose any kind of

25  view object in any way[.]").  For Han, Mr. Gray summarily asserted that "a film . . . that shows

26  exactly what the [Han] system does" proved anticipation, without referring to any source code or

27  showing that any limitation was present.  (Tr. 2908:8-2910:5.)  The video proved only that the

28  Han system did not have a touch screen display "integrated with the data processing system."

APPLE'S OPPOSITION TO SAMSUNG'S JMOL, NEW TRIAL, AND REMITTITUR MOTION
CASE NO. 11-cv-01846-LHK                                                              10
sf-3200293

1    (Tr. 3627:23-3628:10.)  For Nomura, Mr. Gray failed to show that any of the three key technical

2    features in claim 8—"events, objects, and views"—was present.  (Tr. 3625:12-21 (Singh).)

3         As to claim 50 of the '163 patent, Dr. Singh showed that LaunchTile offered no

4    "structured electronic document" that was being "enlarged and substantially centered," and the

5    "Agnetta" patent similarly taught only magnifying and launching a single application tile from an

6    array of tiles.  (Tr. 3615:19-3616:4 (Singh re LaunchTile and Agnetta), 3618:5-3620:10 (Singh re

7    Agnetta).)  Mr. Gray's conclusory testimony on the Robbins patent did not make a prima facie

8    case of invalidity (Tr. 2920:1-2922:6) and was rebutted by Dr. Singh (Tr. 3619:4-3620:10) ("Mr.

9    Gray . . . breezed through a slide . . . all the elements from G to J are just simply not met.")  The

10   jury also properly rejected Samsung's obviousness defense.  Mr. Gray gave a garbled and

11   unsupported obviousness opinion on direct, and confirmed on cross that "anticipation is all [he]

12   spoke to."  (Tr. 2907:20-25, 2924:12-17.)

13        `*381 Patent.*  Samsung did not establish the invalidity of claim 19 of the '381 patent.  Dr.

14   Van Dam did not examine the LaunchTile or DiamondTouch TableCloth source code and he

15   failed to show that either reference had instructions for "detecting an edge" of an electronic

16   document or "responding" to the detection of an "edge."  (Tr. 2874:6-2875:14 (Van Dam);

17   3633:23-3634:11 (Balakrishnan).  He and Mr. Forlines, who wrote the code, both admitted that

18   these systems did not translate a document in a second direction "until the area beyond the edge"

19   was no longer displayed, because the program always returned to its starting point rather than

20   reversing direction until the edge was reached. (Tr. 2875:15-2876:10 (Van Dam); 2357:21-2358:5

21   (Forlines).)  Dr. Balakrishnan demonstrated that the TableCloth code does "not deal with what

22   happens in response to an edge" (Tr. 3631:14-3634:19), and the jury could see that it lacked a

23   single "electronic document."  LaunchTile did not solve the "frozen screen" or "Desert Fog"

24   problems and did not detect or respond to an "edge" of an electronic document.  (Tr. 3634:20-

25   3636:8 (Balakrishnan).)

26        **B.    Substantial Evidence Supports The Jury's Determinations Of Infringement**

27        ***The '915 and '163 Patents***.  Samsung's assertion that Apple showed infringement of the

28   '915 and '163 patents for only one product is wrong.  (Mot. at 13.)  All 24 accused products were

APPLE'S OPPOSITION TO SAMSUNG'S JMOL, NEW TRIAL, AND REMITTITUR MOTION
CASE NO. 11-cv-01846-LHK
sf-3200293

1   admitted into evidence and the jurors were able to test their operation against the asserted claims.

2   (JX1007, 1009-1016, 1019-1020, 1022-1028, 1030-1033, 1036-1037.)  Dr. Singh showed videos

3   of all the accused devices performing the claimed steps and testified that every accused product

4   infringed.  (Tr. 1829-1830 (confirming '915 infringement), 1840-1842 (confirming '163

5   infringement).)  Dr. Singh also testified that he reviewed the source code for every Android

6   version and that the source code running on each of the products contained infringing

7   instructions.  (Tr. 1830:14-21 (based on analysis of devices and code, 24 products infringe '915

8   patent), 1840:16-22 ('163 limitations in all enumerated devices), 1868:20-1869:7 (confirming

9   analysis of code for all 24 products).)

10          Samsung offered no real rebuttal.  Mr. Gray testified that the Samsung code did not

11   "invoke" a scroll or gesture operation because the MotionEvent object did not itself directly call a

12   scroll or gesture operation (Tr. 2910:18-2912:1 (MotionEvent object "not the causer")), but he did

13   not dispute that the determination of a scroll or gesture was caused by the detection of input

14   points on the touch screen (*see* Tr. 1824:10-1825:8, 1874:8-21), and he relied on the same flawed

15   claim construction that the Court rejected at summary judgment.  (Dkt. No. 1158 at 20.)[5]

16          ***The '915 patent***.  The jury's finding that the Ace, Intercept, and Replenish did not

17   infringe the '915 patent does not warrant a new trial on the 21 products the jury found did

18   infringe.  Although Apple believes that the Ace, Intercept and Replenish infringe, possibly those

19   devices malfunctioned in the jury room (and thus failed to perform scrolling or scaling) or the

20   jurors tested them on a "mobile" website that did not allow two-finger scaling and therefore

21   concluded that those particular devices did not infringe.  There is no basis for a new trial on any

22   of the other 21 products.  Samsung's sole cited authority recognizes that, where there are

23   inconsistent verdicts, "if reasonably possible we resolve the inconsistency in favor of sustaining

24   the judgment."  *Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1353-54 (9th

25   _____

[5] Mr. Gray asserted that undisclosed Samsung product(s) did not infringe because they could
26   perform "two-finger scrolling."  (Tr. 2912:2-19.)  As Dr. Singh testified, one Samsung product,
the Galaxy Tab 10.1 running Android version 3.1, was capable of performing a combined
scaling/translation "gesture operation" when manipulated with two fingers and thus infringed
27   claim 8.  (Tr. 1826:2-1827:17, 1862:11-1864:16 (analyzing DX2577 video of Galaxy Tab 10.1);
PX 29.14 (slide re Android 3.1 source code).)

28

1    Cir. 1987).  In that case, the jury's answer to a special interrogatory barred the remedy granted by

2    its general verdict.  *Id*. at 1354.  Here, in contrast, the jury's verdicts that 21 out of 24 products

3    infringed were *not* "irreconcilably inconsistent."  (Mot. at 14.)  Moreover, after the jury revised

4    its initial verdict, the Court asked the parties to confirm "no further inconsistencies" (other than

5    on patent exhaustion) and whether the jury could be excused; Samsung confirmed and stated that

6    it had no objection to excusing the jury.  (Tr. at 4316-17.)  Samsung thus waived any objection to

7    asserted inconsistencies in the verdict.  *See The Home Indem. Co. v. Lane Powell,* 43 F.3d 1322,

8    1331 (9th Cir. 1995).

9         **The '381 patent**.  Dr. Balakrishnan testified that "21 Samsung products infringe claim 19

10   of the '381 patent." (Tr. 1728:6-8.)  He showed videos of those products performing the

11   infringing steps (Tr. 1751:21-1755:21) and confirmed by personally testing all 21 devices and

12   reviewing the Samsung source code for Android 2.1, 2.2, 2.3 and 3.1—all the Android releases

13   that Samsung produced in discovery—that all accused products had the required instructions (Tr.

14   1728:6-1729:10) (confirming source code review).  All accused products were in evidence for the

15   jury to test.

16        Samsung's only attempted defense was the so-called "hold still" behavior.  As Dr.

17   Balakrishnan testified, that behavior could not be performed reliably or consistently, and did not

18   change the fact that "the instructions for doing the bounce back . . . continue to exist on those

19   phones" and the products still perform the infringing steps.  (Tr. 1756:9-1757:21.)  Samsung is

20   wrong that the Court previously found the claim to require the electronic document "to *always*

21   snap back." (Mot. at 14.)  At the preliminary injunction stage, the Court tentatively construed

22   claim 1, a method claim.  (Dkt. No. 452 at 58-60.)  That decision does not bear on claim 19,

23   which is an apparatus claim requiring certain computer instructions.

24   **V.    SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S WILLFULNESS FINDINGS**

25        Samsung improperly used its motion on non-jury claims to expand on its attack on the

26   jury's willfulness findings, thereby skirting the page limits for its JMOL motion.  (*Compare, e.g.,*

27   Mot. at 16:4-16, *with* Dkt. No. 1988 at 10-11 (identical language as JMOL, with additions).)

28   Apple's opposition to Samsung's non-jury claims motion responds to these arguments.  (Dkt. No.

1   2027 at 8-11.)  And as Apple has shown in its enhancement motion (Dkt. No. 1982 at 12),

2   substantial evidence supports the jury's willfulness findings, including evidence that Samsung

3   intended to take Apple's market share by deliberately copying the iPhone design and features, and

4   that Samsung lacked a good faith belief that Apple's patents were invalid or not infringed.  (*E.g.*,

5   PX44 (comparing iPhone and Galaxy S1 features, with "Direction for Improvement" for each

6   Samsung feature); PX36.20 (report to Samsung that iPhone was considered a "revolution").)

7       Samsung's two additional arguments are without merit.  The willfulness inquiry is

8   directed to an infringer's reckless disregard of a *patent,* not *individual claims.  See, e.g., i4i Ltd.*

9   *P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) ("reasonable jury could have

10  concluded that Microsoft willfully infringed the '449 patent").  Thus, the Court instructed the jury,

11  without objection, to examine whether a party acted "with reckless disregard of the patent it

12  infringed."  (Dkt. No. 1883 at 72.)  Samsung's cited authority addresses not willfulness, but

13  whether a patentee had "pursued frivolous infringement claims" justifying attorney's fees under

14  Section 285.  *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1306 (Fed. Cir. 2012).

15      Samsung suggests that the evidence that it deliberately copied Apple's products "did not

16  even address the patents or rights at issue here," but concedes that there are a "few exceptions."

17  (Mot. at 16.)  The exceptions presumably include evidence that Samsung studied and then

18  implemented the technologies covered by all three utility patents.  (PX38.24 ("tap to zoom"

19  (covered by'163) "can be used as a design benchmark"); PX36.36 ("two-fingered pinch" (covered

20  by'915) and "bounc[ing]" lists (covered by '381) make iPhone "sexy to use"); Tr. 846 (Denison)

21  (acknowledging Samsung engineer's testimony regarding study of iPhone's "bounce-back

22  functionality").)  They no doubt also include evidence that Samsung took the same approach to

23  copying the industrial design of Apple's iPhone and its GUI, as covered by the D'677, D'087, and

24  D'305 patents.  (*E.g.*, PX3.3 (photo timeline); PX35 (urging icon redesign to more closely

25  resemble iPhone); PX36.20 (noting that iPhone was "hailed for its beauty"), PX36.31 (conceding

26  iPhone's "strong, screen-centric design" with "[o]versized screen" and "[c]onsistent surface").)

27

28

## VI.   SUBSTANTIAL EVIDENCE SUPPORTS SEC'S DIRECT INFRINGEMENT AND ACTIVE INDUCEMENT OF INFRINGEMENT

Samsung waived any challenge to SEC's direct infringement by not raising it in its Rule 50(a) motions.  It also loses on the merits.  SEC sold phones and tablets directly into the U.S. to its subsidiaries, SEA and STA.  (*E.g.*, Tr. 2068:14-17 (Musika) ("STA and SEA buy[] product from SEC), 2069:14-16 ("SEC sells . . . to . . .STA, and phones . . . land in the United States.")); Tr. 795:1-4 (Denison) (agreeing that SEC "ships the products to locations in the United States").  That STA and SEA "were in the United States when they contracted for the accused [devices] and the products were delivered directly to the United States" constitutes "substantial evidence to support the jury's conclusion" that SEC "sold the accused [devices] within the United States."  *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008).

The verdict against SEC is independently supported by substantial evidence that it actively induced STA and SEA to infringe.  SEC knew of at least the '381 patent by August 2010.  (PX52.14) (Apple presentation listing '381 patent).  There is evidence that SEC also knew of the '163 and '915 patents in designing the infringing products, as SEC's Mobile Design Group head conceded that SEC monitored "UX" patents.  (PX202) (DH Chang).  SEC undisputedly knew of the remaining patents no later than the filing of the complaint.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012) (knowledge of patents for inducement can be based on filing of complaint).  And as explained in Section V above, SEC knew that its subsidiaries' sales of smartphones and tablets were infringing.

Despite this knowledge, SEC actively aided and abetted its subsidiaries' infringing sales.  SEC controlled STA's interactions with carriers and stores.  (Tr. 796:14-18 (Denison) (SEC "directions" to STA); PX59.2 ("Headquarters . . . team personnel" (*i.e.,* SEC) led taskforce investigation of Tab returns at Best Buy with STA employees); PX35 (icon designs relayed from AT&T to SEC through STA).)  SEC set the wholesale prices for the infringing phones and tablets sold by STA in the US.  (PX204 at 188:9-17 (Sheppard Dep.) ("SEC sets the wholesale price"; STA does not have "direct responsibility" for this).)  SEC's CEO specifically directed STA to "Beat Apple" via its sales of infringing products.  (PX58; Tr. 810:6-812:25 (Denison re PX58).)

1    Even assuming that SEC lacked actual awareness of one or more of Apple's patents, SEC

2    acted with "willful blindness."  A defendant is willfully blind, and therefore liable for inducement,

3    even absent actual knowledge of a patent, where it "subjectively believe[s] that there is a high

4    probability that a fact exists," but "take[s] deliberate actions to avoid learning of that fact."

5    *Global-Tech Appliances, Inc., v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011).  As in *Global-Tech,*

6    Apple's patented iPhone and iPad devices were "innovation[s] in the U.S. market" when

7    Samsung copied them, containing "advanced technology that would be valuable in the U.S.

8    market."  *Id.* at 2071.  Given this, like the defendant in *Global-Tech,* SEC had reason to believe

9    that Apple's iPhone and iPad products were protected by patents.   Further, Steve Jobs stated at

10   the iPhone's launch that Apple had filed for "over 200 patents" to protect its

11   innovations.  (JX1091 at 1:30:24.)  Although warned of the need to make its products "noticeably

12   different" from Apple's (PX42), SEC deliberately ignored the risk of infringement and copied

13   Apple's products flagrantly.  (*E.g.,* PX44 (126-slide presentation concerning ways to copy

14   iPhone); PX34.37 (noting "easy imitation" of iPhone's "HW"); PX55.15 (side-by-side

15   comparison of iPhone icons by Samsung's icon designer).)  The jury appropriately determined

16   that SEC induced infringement by SEA and STA.

17   **VII.   SAMSUNG IS NOT ENTITLED TO JMOL, A NEW TRIAL, OR REMITTITUR
          ON DAMAGES**

18

19        **A.    The Damages Verdict Must Be Upheld Because It Is Neither Grossly
               Excessive Nor Unsupportable By The Record As A Whole**

20        To set aside the damages award, Samsung must satisfy a significantly higher standard than

21   the test for JMOL on liability.  The Court "upholds a jury's damages award unless grossly

22   excessive or monstrous, clearly not supported by the evidence, or based only on speculation or

23   guesswork."  *Energy Transp.*, 2012 WL 4840813, at *11 (internal quotation marks omitted).

24   Samsung "must show that the award is, in view of all the evidence, either so outrageously high or

25   so outrageously low as to be unsupportable as an estimation" of damages.  *Id.* (quoting *Rite-Hite*

26   *Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc)).  Damages need only be

27   "'within the range encompassed by the record as a whole.'"  *Powell v. Home Depot U.S.A., Inc.*,

28   663 F.3d 1221, 1241 (Fed. Cir. 2011).

APPLE'S OPPOSITION TO SAMSUNG'S JMOL, NEW TRIAL, AND REMITTITUR MOTION
CASE NO. 11-cv-01846-LHK                                                                          16
sf-3200293

1   Samsung falls far short of this high burden.  The award, $1,049,393,540, lies closer to the

2   $519 million minimum amount proposed by Samsung (DX781.1 (Samsung's profits summary))

3   than to the $2.75 billion advocated by Apple (PX25A1 (Summary of Apple's Damages

4   Calculations)) and finds ample support in the record as a whole.  The individual product amounts

5   found in Question 23 also fall within the range advocated by the parties' experts or, in some cases,

6   $155,841,889 below both experts' ranges.  (*Compare* Dkt. No. 1931 at 16, *with* DX781.1, *and*

7   PX25A1.4; *see also* Dkt. No. 2002 at 18:14-19:17) (identifying damages awards that fell a total

8   of $155,841,889 below undisputed, minimum amounts Samsung advocated).)

9   **B.    This Court Should Not Attempt To "Deconstruct" The Verdict**

10   Samsung asks the Court to set aside the jury's award based on speculation regarding how

11   the jury calculated its verdict.  Using individual breakdowns found solely in Mr. Wagner's

12   declaration, Samsung argues that the record "lacks sufficient evidence" to support the

13   deconstructed figures.  (Mot. at 18.)  Precedent forbids Samsung's deconstruction and speculation

14   because Samsung's method "encroach[es] upon the jury's proper function under the

15   Constitution."  *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1365 (9th Cir.

16   1986).  "Even a total inadequacy of proof on isolated elements of damages claims submitted to a

17   jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of

18   the totality of the evidence."  *Id.* at 1366.  If "the jury's verdicts find substantial support in the

19   record and lie within the range sustainable by the proof, we will not 'play Monday morning

20   quarterback' and supplant the jury's evaluation of the complex and conflicting evidence with our

21   own."  *Id.*  This Ninth Circuit law applies to the treatment of jury verdicts, which is not an issue

22   unique to patent law.  The consensus across circuit courts likewise forbids courts from

23   "speculat[ing] as to the jury's calculation methods, as long as the damage amount is supported by

24   the evidence."  *Krause v. Dresser Indus., Inc.*, 910 F.2d 674, 679-80 (10th Cir. 1990); *see also,*

25   *e.g.*, *Chuy v. The Philadelphia Eagles Football Club*, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979)

26   ("Of course, it is well accepted that a court will not inquire into the calculation methods employed

27   by the jury during its deliberations.").  Courts have affirmed damages awards even where they

28   correspond to the penny to a legal theory that the jury *rejected* in its verdict.  *Mid-west*

1  *Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501-02 (10th Cir. 1983).  The Federal

2  Circuit's jurisprudence is in accord.  *See, e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,

3  563 F.3d 1358, 1371-72 (Fed. Cir. 2009) (rejecting challenge to damages based on claim that

4  verdict was "mathematically impossible" in light of jury's choice of a 5% royalty and defendants'

5  revenues, because record as a whole supported verdict).

6         None of Samsung's cases holds otherwise.  The Federal Circuit in *Lucent Technologies,*

7  *Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), reviewed all of the evidence before

8  determining that "substantial evidence does not support the jury's verdict of a lump-sum royalty

9  payment of $357,693,056.18."  *Id.* at 1324, 1325-36.  Considering the defendants' alternative

10  argument, the Court further held that the record also did not support the use of the entire market

11  value of Microsoft's products to calculate a royalty.  *Id.* at 1336-39.  Solely as an introduction to

12  why this issue was relevant, the Court noted that "working the math backwards strongly suggests

13  that the jury must have used some calculation of a rate applied to the entire market value of the

14  software." *Id.* at 1336.  The Court never used any hypothetical calculation as a foundation for its

15  analysis, and *Lucent* offers no reason to reverse decades of authority and start speculating about a

16  jury's methods.  *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, 612 F.3d 1365 (Fed. Cir.

17  2010) dealt solely with whether the district court abused its discretion by "interpreting the verdict

18  form" to determine whether it compensated the patent-holder for future infringement, thereby

19  precluding an injunction.  *Id.* at 1378.  *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir.

20  2006) reversed because the jury award was "directly traceable" to an instructional error and

21  inadmissible evidence.  *Id.* at 1001.  Samsung does not and could not make such a contention here.

22       **C.      Samsung's "Hypothetical Award Components" Do Not Warrant Relief**

23              **1.       The record supports the jury's award of Samsung's profits**

24         Samsung deconstructs the verdict and argues that $948 million is an unsupported award of

25  Samsung's profits on 16 products.  Even if the Court were to deconstruct the verdict, that

26  argument is specious.  Federal statutes provide for an award of defendant's profits for design

27  patent infringement (35 U.S.C. § 289) and willful trade dress dilution (15 U.S.C. § 1117).

28  Controlling precedent permits such awards if the jury finds liability and reasonable proof of

1   defendants' profits—nothing more is required.  *See, e.g.*, *Nike Inc. v. Wal-Mart Stores*, 138 F.3d

2   1437, 1442 (Fed. Cir. 1998) (design); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007,

3   1012 (9th Cir. 1994) (Lanham Act).  No additional "causation" requirement applies, and none of

4   Samsung's cited cases supports its position.  *E.g.*, *Carbice Corp. v. Am. Patents Dev. Corp.*, 283

5   U.S. 27, 33 (1931) (not addressing damages at all); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d

6   860, 869 (Fed. Cir. 2010) (addressing reasonable royalties under 35 U.S.C. § 284); *Junker v.

7   HDC Corp.*, No. C-07-05094, 2008 WL 3385819, at *5 (N.D. Cal. July 28, 2008) (awarding

8   defendant's profits without requiring proof of causation).

9          Substantial evidence supports the verdict.  Mr. Musika testified that the jury should award

10  Apple more than $2.2 billion dollars in Samsung's profits for the products found to infringe

11  Apple's design patents or trade dress.  (PX25A1.5; Dkt. No. 1990-20 ¶¶ 12-13.)  Mr. Wagner

12  placed Samsung's profits between $519 million and $1.086 billion.  (DX781.01, .03).  He

13  admitted that using "Mr. Musika's calculation of Samsung's profitability" and the "start dates"

14  advocated by Samsung, $1.396 billion is the "correct number" for Samsung's profits.  (Tr.

15  3065:6-16.)  Thus, Samsung's hypothetical $948 million in Samsung profits falls "within the

16  range encompassed by the record as a whole."  *Powell*, 663 F.3d at 1241.

17         Samsung's remaining arguments conflict with controlling law.  The Federal Circuit

18  rejected "apportionment" under § 289.  *Nike*, 138 F.3d at 1442.  For trade dress infringement,

19  Samsung bore the burden of proving that "sales were demonstratively not attributable" to its

20  dilution.  *Nintendo*, 40 F.3d at 1012; *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408

21  (9th Cir. 1993).  For both claims, Samsung bore the burden of showing that any proposed cost

22  deductions were directly tied to the infringing sales.  15 U.S.C. § 1117(a); Dkt. No. 1903 at 72 (JI

23  54); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) (allowing

24  overhead deduction only when infringer demonstrates it was of actual direct assistance in

25  infringing product's production or sale).

26         In light of this authority, Samsung's analysis of the record must be rejected.  First,

27  because Samsung bore the burden of proof, the jury was free to reject Samsung's evidence and

28  award up to $2.2 billion.  The jury awarded less than half this amount.  Second, Mr. Musika gave

1   the jury sufficient reason to question the veracity and size of the non-manufacturing costs

2   Samsung sought to deduct.  (Tr. 2062:7-2066:22 (testifying that some Samsung's expenses lacked

3   even indirect relationship to infringing sales, and Samsung's information did not tie to reliable

4   source, was not used to run business, included multiple errors, was repeatedly withheld, and was

5   questioned by Court ).)  Moreover, Samsung's "apportionment" evidence was irrelevant, sparse,

6   and woefully inadequate to compel a 95% reduction in Samsung's profits.  The verdict cannot be

7   reversed or remitted based on Samsung's bare assertion that the jury had to make every deduction

8   that Samsung requested.

9                    **2.      The record supports the jury's award of Apple's lost profits**

10         Samsung claims that $91 million of the jury's award reflects Apple's lost profits on five

11   products.  The Court should not divide the award in that way, but if it does, the record fully

12   supports Samsung's proposed amount.  Federal statutes provide for an award of lost profits for

13   patent infringement (35 U.S.C. § 284) and willful trade dress dilution (15 U.S.C. § 1117), and

14   Mr. Musika testified to lost profits exceeding $488 million overall (Tr. 2075:1-16).  Mr. Musika's

15   damages summary includes $91 million specifically for the five products for which Samsung

16   alleges that lost profits were awarded.  (PX25A1.4; Dkt. No. 1990-20 ¶ 13).  This alone provides

17   a sufficient basis for the supposed $91 million lost profits award.

18         Samsung argues that the jury could not conclude that the iPhone and Samsung products

19   compete as potential substitutes because of alleged price differences.  The Court previously

20   rejected this challenge, (Dkt. No. 1157 at 10-11 ("*BIC Leisure*, however, does not require a

21   separate price elasticity study where the parties are clearly direct competitors, as is the case

22   here.")), and the evidence contradicts it.  (*E.g.*, Tr. 656:18-657:2 (Schiller confirming competition

23   between Apple and Samsung); 1510:5-11 (Winer) ("products do compete and compete heavily").)

24   Certainly, disputed evidence regarding price differences that Mr. Musika already took into

25   account does not satisfy Samsung's burden.  (Tr. 2133:7-2135:22 (Musika re price differences).)

26         Samsung next argues that the jury could only conclude that virtually all Samsung's

27   customers would have purchased other Android smartphones if Samsung's infringing products

28   were not available.  Samsung points to evidence that some customers chose Android phones over

1   Apple, but Mr. Musika acknowledged that and on that basis allocated the majority of the market

2   to companies other than Apple.  (PX25A1.8-.9.)  In fact, Mr. Musika allocated only "2 million

3   out of that 22 million" in infringing sales as Apple's lost profits.  (Tr. 2084:1-2085:9.)  There was

4   also ample evidence that design, user interface, and Apple's proprietary touch screen navigation

5   technology affect consumer demand, including testimony from Stringer, Schiller, Benner, Musika,

6   Hauser and Wagner and numerous internal Apple and Samsung documents and surveys.  (*See* Dkt.

7   No. 1982 at 7-9 (discussing in detail exhibits and testimony showing that Apple's designs and

8   navigation technology drive consumer demand for smartphones).)

9        Nor can Samsung show that the record lacked evidence of Apple's capacity to make

10   iPhones.  Two pages of PX25A1 set out data showing Apple's capacity during the relevant

11   periods, and these pages and Mr. Musika's testimony that "Apple . . . did have the ability to make

12   those [2 million incremental] sales" establish that Apple could have sold more iPhone 4 *and*

13   *iPhone 3GS* models during the relevant period.  (PX25A1.14-15; Tr. 2085:10-2086:3 (Musika),

14   2097:13-17 (identifying capacity analysis).)  Samsung's argument that Apple could not sell the

15   *iPhone 4* for four out of 24 months does not show that Apple could not make the comparatively

16   small number of iPhones needed during the relevant period.

17        Samsung's final argument is that Mr. Musika's calculations lacked sufficient detail to

18   adjust the lost profits by some undefined combinations of patents, periods, or products.

19   Samsung's only cited case, *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1294 (Fed. Cir.

20   2007), disallowed lost profits because the patentee *was not selling any competing product* when

21   the defendant infringed, and does not apply.

22        **3.        The record supports the jury's award of royalties**

23        Samsung's final attack on hypothetical elements of the verdict is its claim that the $9.1

24   million in reasonable royalties supposedly awarded for five products is improper because

25   Mr. Musika's reasonable royalty opinions lack sufficient detail.  Samsung wrongly assumes that

26   the jury awarded Apple $7.14 per unit for the utility patents and $24 for design claims for these

27   products, but this theory bears no relationship to the jury's actual verdict.  When the amounts

28   awarded by product are divided by the unit sales for the five products Samsung includes, the

1    resulting royalties range between $1.58 to $3.57 per unit, 50% or less than the rates Mr. Musika

2    proposed.  (*Compare* Dkt. No. 1931, question 23, *with* JX1500's unit sales; PX25A1.5; Dkt. No.

3    1990-20 ¶ 14.)  Much higher royalty rates were supported both by his testimony (Tr. 2087:3-

4    2093:22) (Musika re reasonable royalties) and a table that summarized his methods, the relevant

5    royalty ranges he derived from three different economic methodologies, and the rates he offered.

6    (PX25A1.16.)  The alleged $9 million award is not outrageously high, and must be upheld.

7    *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1345 (Fed. Cir. 2011).

8             **D.      Samsung's "Incorrect Notice Date" Arguments Are Wrong**

9             Samsung wrongly asserts that it is entitled to a new trial because "the jury calculated

10   Samsung's profits and Apple's damages based on Mr. Musika's use of an incorrect notice date."

11   (Mot. at 24.)  First, *Samsung's own expert* testified that applying *his* view of the appropriate

12   notice dates, damages of "$1.396 billion" for Samsung's profits were appropriate if the jury

13   accepted Mr. Musika's calculation of Samsung's profitability.  (Tr. 3064:14-3066:16 (Wagner).)

14   Second, Samsung assumes that the alleged 40% reduction from Musika's number relates solely to

15   disputes over costs (*see* Mot. at 18), but any adjustment made by the jury could have accounted

16   for notice, costs, or both.  Wagner's present declaration reinforces this.  He claims that Musika's

17   numbers "adjusted for notice" total to $1,093,071,655 (Dkt. No. 1990-20 at Schedule 1B, col. [g]

18   (adding $866,328,487 and $266,743,168)), which is more than the jury's entire award and $100

19   million more than what Samsung alleges is attributable to Samsung's profits.  Thus, the evidence

20   supports the jury's award whether the jury accepted Samsung's or Apple's position on notice.

21            Second, Apple can recover damages for Samsung's violations of Apple's unregistered

22   trade dress regardless of the date on which it gave Samsung notice.  *GTFM, Inc. v. Solid*

23   *Clothing, Inc.*, 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002); *see also* McCarthy on Trademarks

24   § 19:144 (4th ed. 2012).  Thus, the argument is moot for the five products found to dilute it.

25            Third, ample evidence supports the August 4, 2010, notice date.  Samsung was fully

26   aware of Apple's complaints by that time.  Apple's written presentation repeatedly identifies

27   Samsung's use of Apple's utility patents, including the '381 and other "user interface" patents,

28   and accused Samsung of copying Apple's designs, including side-by-side comparisons of the

1    industrial design of iPhone 3GS (which embodies the D'677, D'305 and D'087 patents and

2    Apple's trade dress) and the Galaxy S product, and of the products' user interfaces.  (PX52.14-18

3    (presentation); Tr. 1958:25-1962:19 (Teksler on August 2010 presentation).)  Samsung's director

4    of licensing, who attended the meeting, admitted that the parties discussed Samsung's

5    infringement of "Apple phone's patents and design."  (PX201 at 31:15-16; 31:18-20; 33:21-24;

6    37:21-38:05 (JW Lee Dep.).)  Nothing more, including more specificity about individual or later-

7    issued patents, was required.  *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir.

8    2008) (trier of fact must take into account history of parties' relationship in determining whether

9    communication was "sufficiently specific" to give rise to actual notice); *Ceeco Mach. Mfg., Ltd. v.*

10   *Intercole, Inc*., 817 F. Supp. 979 (D. Mass. 1992) (actual notice does not require identifying

11   patent by number where plaintiff notified adversary he had patent on given item and defendant

12   was infringing that patent).  Samsung's claim that the jury had to conclude that Samsung lacked

13   notice of Apple's allegations until the lawsuit was filed is inconsistent with this record.

14          Finally, Samsung misstates the law when it claims that the Court can throw out the verdict

15   so long as the jury "may have" relied on the August 4, 2010, notice date.  (Mot. at 24.)  As noted

16   above, a jury's damage award must be sustained unless the amount is "grossly excessive or

17   monstrous, clearly not supported by the evidence or based only on speculation or guesswork."

18   *Energy Transp.*, 2012 WL 4840813, at *11 (internal quotation marks omitted).  Because the

19   $1.05 billion is supported based on an alternative theory, the Court must affirm the verdict.  In

20   *Energy Transportation,* the patentee's damages expert improperly relied on the "25% rule" for

21   one calculation of damages.  *Id.*  The Court nonetheless *affirmed* the jury verdict because "[t]he

22   jury did not adopt either expert's damages analysis wholesale," and "this court perceives that the

23   record supports the jury's award with substantial evidence."  *Id.* at *12.  In *Revolution Eyewear*,

24   the Federal Circuit similarly affirmed a jury verdict, despite arguments that it was

25   "mathematically impossible" to square the jury's award with the plaintiff's evidence on

26   defendant's revenue.  563 F.3d at 1371.  Whether or not the jury relied on plaintiff's number, the

27   verdict as a whole was supported by substantial evidence and could not be disturbed.  *Id.*

28          Samsung's cited cases do not hold otherwise.  In *First Alliance*, the jury received an

APPLE'S OPPOSITION TO SAMSUNG'S JMOL, NEW TRIAL, AND REMITTITUR MOTION
CASE NO. 11-cv-01846-LHK
sf-3200293

23

1    incorrect instruction *and* erroneously admitted evidence as to one legal theory.  471 F.3d at 1002.

2    No such error occurred here.  The court's statement in *Brocklesby v. United States*, 767 F.2d 1288

3    (9th Cir. 1985), that "the judgment must be reversed if any of the three theories [of liability on

4    which the jury was instructed] is legally defective," *id.* at 1294, clearly does not apply here, as

5    Samsung makes no showing that any of Apple's liability claims was "legally defective," instead

6    asserting that there were not sufficient facts to support one of multiple damages theories.  This

7    challenge does not justify the Court's intervention if the record as a whole supports the damages.

8    *See*, *e.g.*, *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987)

9    (general verdict returned after hearing alternative calculations of damages upheld if substantial

10   evidence exists for any one calculation.").

11                   **E.       Samsung Has Not Shown That It Is Entitled To Remittitur**

12          As Samsung acknowledges (Mot. at 24), the proper amount of a remittitur is "the

13   maximum amount sustainable by the proof."  *D&S Redi-Mix v. Sierra Redi-Mix & Contracting

14   Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982).  Further, remittitur is only permissible if the jury's

15   award is "monstrous."  *Revolution Eyewear*, 563 F.3d at 1372.  Samsung must therefore show

16   that the verdict *as a whole* is monstrous and more than the maximum sustainable by the evidence.

17   *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996) ("This court has adopted the

18   'maximum recovery rule' which requires this court to remit the damage award to the highest

19   amount the jury could 'properly have awarded based on the relevant evidence.'").  Further, the

20   "court cannot 'correct' a damages figure by extrapolating" new damage figures not found on the

21   verdict form; doing so would deprive Apple of its constitutional right to a jury.  *Energy Transp.*,

22   2012 WL 4840813, at *36.  Samsung never attempts to satisfy this standard.

23          The evidence as a whole supports awards well in excess of the verdict.  *See* § VII.A, *supra*.

24   Further, Samsung's argument that the damages award should be reduced due to failures of proof

25   with respect to Apple's lost profits or Samsung's profits fails, as explained above.  *See* § VII.B,

26   *supra.*  Samsung's effort to reduce the award "to reflect correct notice dates" (Mot. at 25) fails

27   because the jury awarded Apple less than the maximum supported by the evidence, even if

28   Samsung were correct as to the appropriate notice dates, and Samsung's argument relies entirely

1   on a *post hoc* extrapolation and recalculation of damages.  *See* § VII.C, *supra*.

2          Finally, Samsung claims that the jury's award of $57 million for the Galaxy Prevail is

3   unsupported because Mr. Musika's "lost profits" number for the Prevail was $8.5 million.  (Mot.

4   at 26.)  But Samsung ignores that Mr. Musika accounted for nearly all of the Galaxy Prevail units

5   through a calculation of *Samsung's* profits.  (PX25A1.5 (including $143 million for Samsung's

6   profits).)  Having determined that the Prevail infringed the utility patents but not the trade dress or

7   design patents, the jury needed to award a different type of damages for the Prevail units Mr.

8   Musika had assigned to Samsung profits, and could reasonably award Apple's lost profits instead.

9   The evidence was that (1) Apple's profit margin was approximately $244 per phone (Tr. 2075:1-7

10  ($488.8 million in Apple's lost profits for 2 million units)); (2) it would take Samsung between 1

11  and 8 months to design around Apple's patents (Tr. 2084:11-19); (3) Samsung sold 1.2 million

12  Prevail phones in Q2 2011 and Q3 2011 (JX1500.1); and (4) Apple's market share in those time

13  periods was between 22.5% and 29.0% (PX25A1.8).  Based on these facts, there was sufficient

14  evidence to support Apple's lost profits damages of $65 million or more for the Prevail (1.2

15  million x $244 x 22.5%).  Mr. Musika explained to the jury how to do such a revised calculation

16  (Tr. 2162:11-2163:12), and Apple reminded them in closing (Tr. 4131:24-4132:4).

17          **F.     Samsung Has Not Accounted For The Stipulation And Order**

18          Samsung makes several arguments challenging the lack of specificity in Mr. Musika's

19  calculations. All must be rejected because Samsung ignores the stipulation and order precluding

20  such challenges.  (*See* Dkt. No. 1597 ¶¶ 1, 2, 6 & 14; *see also* Dkt. No. 1649).  Thus, to the extent

21  Samsung's arguments regarding Samsung's profits (Mot. at 19:15-20:21), price elasticity (*id.* at

22  21:1-6), lost profits calculations (*id.* at 22:3-16), and reasonable royalty rates (*id.* at 22:18-23:5)

23  are based on lack of specificity of the evidence, these arguments have been waived.

24  **VIII.  SAMSUNG IS NOT ENTITLED TO JMOL ON ITS OFFENSIVE CASE**

25          For Samsung's patents, substantial evidence supports the jury's findings of non-

26  infringement and patent exhaustion.[6]  The jury was also free to reject the testimony of Samsung's

27  ─────────────
    [6] Samsung conceded that Apple's accused products do not infringe the '516, '941, '893, and '711
28  patents under the doctrine of equivalents.  (Tr. 3261:21-3262:1.)

experts as not credible and to find that Samsung failed to meet its burden of proving infringement. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) ("In ruling on a motion for JMOL, the court is not to make credibility determinations or weigh the evidence and should view all inferences in the light most favorable to the nonmoving party.").

### A. Substantial Evidence Supports The Jury's Non-Infringement And Patent Exhaustion Findings For The '516 And '941 Patents

Samsung's only challenge to the jury's non-infringement findings is a belated attempt to raise claim construction arguments for "total transmit power" in the '516 patent and "an entire SDU" in the '941 patent. (Mot. at 26-28.) These arguments come too late, since Samsung never sought a construction for *any* term in these patents and never objected to the Court's instruction that the jury should apply the claim language's "plain and ordinary meaning" for terms that had not been construed (Dkt. No. 1693 at 10 (undisputed jury instruction)). *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial."). Samsung's request for a judgment of infringement also fails on the merits, as explained below.

**'516 Patent.** Substantial evidence shows that Apple's accused products do not satisfy the "total transmit power" limitations. Samsung improperly focuses on the *embodiments* disclosed in the '516 patent, while infringement requires comparing the accused products to the *claims* of the patent. Here, as Samsung's expert Dr. Williams testified, the asserted claims refer to only two channels. (JX1073.27 (claim 15); Tr. 2766:14-23 (Williams) (agreeing that "the channels" in claim 15 "refers to the first and second channel").) The evidence showed that Apple's products, in contrast, calculate the total transmit power of all five physical channels (JX1083.25; PX208 ("this is the transmit power of *all* physical channels")), and Dr. Kim explained that this difference resulted in no infringement. (Tr. 3418:18-3419:2 ("Apple product does not obtain the total transmit power by adding two channels, but it actually adds five channels"), 3421:8-3422:20.) The jury therefore had ample evidence from which to find that Apple's products do not infringe.

**'941 Patent.** Substantial evidence demonstrates that Apple's accused products do not meet the "entire SDU" limitations. Again, Samsung improperly compares Apple's products to

1  the *embodiments* disclosed in the '941 patent.  (Mot. at 27-28.)  Samsung also ignores the

2  prosecution history in which Samsung disclaimed the "exact match" scenario that it now contends

3  the claims cover.  (JX1060.22-.23, .28-.29 (amendment and remarks); Tr. 3449:23-3453:5

4  (Knightly).)  *See Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221 (Fed Cir. 1997)

5  ("[P]ositions taken before the PTO may bar an inconsistent position on claim construction.").

6  When Apple's products are properly compared to the asserted *claims*, as Dr. Knightly did at trial,

7  it is clear that Apple's products do not have the "one-bit field" indicating "whether the PDU

8  contains an entire SDU" that claims 10 and 15 require.  (Tr. 3464:11-16 (Knightly) ("[Apple's

9  products] don't have the one bit field that's in the claim"); *see* Tr. 3446:21-3449:4, 3453:6-10

10  (Knightly).)  The jury's non-infringement finding is thus supported by substantial evidence.

11          **Patent Exhaustion.**  Substantial evidence also supports the jury's finding that Samsung's

12  rights in the '516 and '941 patents were exhausted.  Samsung's challenges to that verdict fail.

13          *First*, Apple proved that Intel's sales to Apple were authorized by Samsung.  The

14  Samsung-Intel license authorized Intel to sell chipsets "indirectly" (PX81.11, .23),[7] which

15  includes the authority to sell through a subsidiary.  (Tr. 3543:12-24 (Donaldson) ("indirectly"

16  includes "right to sell" through "a number of subsidiaries")).[8]  Apple further proved that the

17  chipset sales were indirect sales made by Intel Corporation through its sales subsidiary Intel

18  Americas.  (PX78 (invoices from Intel Americas); Tr. 3170:1-4 (Blevins) ("Intel Americas is a

19  sales subsidiary of Intel whose function it is to send invoices and collect payments for Intel

20  products.").)  It is irrelevant whether Intel Americas was separately sublicensed.

21          *Second*, Apple proved that the relevant sales occurred in the United States.  (PX78

22  (invoices showing that buyer, seller, and payment were in the United States).)  Samsung does not

---

23  [7] Samsung's reliance on *Management Systems Associates, Inc. v. McDonnell Douglas Corp.*, 762
24  F.2d 1161 (4th Cir. 1985), is misplaced.  In that case, the jury considered an exhibit containing
   damages calculations that were based on a faulty construction of a contract.  *Id.* at 1173-78.  The
25  court based its reversal primarily on the improper admission of that exhibit into evidence and
   noted that the jury instructions were deficient for implicitly incorporating those faulty
26  constructions.  *Id.* at 1177-78.  Here, in contrast, the agreement itself was submitted to the jury
   and the jury was asked to determine whether it authorized Intel's sales to Apple.

27  [8] Contrary to Samsung's assertion (Mot. at 28), none of Dr. Ahn's deposition testimony played at
   trial discussed the Samsung-Intel license.  (*See* Selwyn Decl., Ex. 1.)

28

1  dispute this evidence.  Instead, Samsung contends that a U.S. sale requires delivery in the United

2  States (Mot. at 28), but the Federal Circuit has held that the location of the "essential activities"—

3  including ordering, payment, and/or performance of the sales contract—may establish that a sale

4  took place at one or more particular locations, even if delivery occurred elsewhere.[9]  *See, e.g.*,

5  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375-77 (Fed.

6  Cir. 2005) (finding that a sale occurred in Japan where the ordering, payment, and shipping

7  instructions were in Japan, despite delivery in Texas); *N. Am. Philips Corp. v. Am. Vending Sales,*

8  *Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (stating that a sale may occur in several locations,

9  including the "places of contracting and performance," and rejecting that a sale occurs only

10  "where the goods change hands").

11      *Finally*, although Samsung does not challenge the sufficiency of the evidence that the

12  Intel chipsets substantially embodied the patents, it argues that the jury's exhaustion finding is

13  inconsistent with the non-infringement finding.  But there is no inconsistency:  a product may

14  "substantially embody" a patent without infringing.  *See Quanta Computer, Inc. v. LG Elecs., Inc.*,

15  553 U.S. 617, 621, 630-35 (2008) (finding exhaustion from sale of non-infringing chips that

16  substantially embodied patent).

### B.    Substantial Evidence Supports The Jury's Non-Infringement Findings For The '460, '893, And '711 Patents

18      **'460 Patent.**  Substantial evidence supports the jury's finding that Apple does not infringe

19  the '460 patent for multiple reasons.  *First*, Samsung argues that Apple's application programs—

20  called "apps"—are the claimed "modes" and "sub-modes" (Mot. at 29), but Samsung's expert Dr.

21  Yang conceded that "application programs and modes are different."  (Tr. 2482:15-2483:2.)

22  Apple's witnesses similarly explained that "apps are quite different from modes."  (Tr. 3196:15-

23  3197:5 (Dourish); *see also* Tr. 3181:2-8 (E. Kim); Tr. 3297:4-7, 3304:12-3306:4 (Srivastava); Tr.

24  3232:9-3233:8 (Givargis).)  *Second*, the Court properly instructed the jury that no particular order

26  _____

[9] At the jury charge conference, Samsung's counsel agreed with the "essential activities" language (Tr. 3767:8-17 ("if the Court is intending to keep what it has, if we can include delivery as one of the essential activities")), and further agreed that "performing under the obligations of the contract would include delivery" (Tr. 3768:1-8).

1    of steps was required "absent [claim] language specifying a specific order." (Dkt. No. 1903 at

2    41.)  Here, the plain meaning of the claim language—including the phrase "displaying *other*

3    images"—requires step C to be performed after step B.  (JX1069.19 (claim 1); Tr. 3297:10-

4    3299:19 (Srivastava).)  As Dr. Srivastava testified—and Samsung does not dispute (Mot. at 29)—

5    "Apple products simply cannot do . . . element C after element B." (Tr. 3299:20-3300:24.)  *Third*,

6    Dr. Yang conceded that Apple's iOS 5 products do not literally have "scroll keys" (Tr. 2394:12-

7    14), and substantial evidence showed that "swiping" is not equivalent to using "scroll keys." (Tr.

8    3181:25-3183:10 (E. Kim); Tr. 3300:25-3304:9 (Srivastava) (explaining differences in function,

9    way, and result).)  Prosecution history estoppel also bars Samsung from asserting equivalents

10   because Samsung added "scroll keys" during prosecution to overcome prior art (JX1066.180,

11   .183).  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002).

12        **'893 Patent.**  Substantial evidence supports the jury's non-infringement finding because,

13   as discussed above, the "apps" used in Apple's products are not the "modes" claimed by

14   Samsung's patents.  (Tr. 3197:23-3200:12 (Dourish); Tr. 2482:15-2483:2 (Yang) ("[A]pplication

15   programs and modes are different.").)  In addition, Apple's products do not meet the "irrespective

16   of a duration" limitation because "there are a number of circumstances under which when you

17   switch from the camera app to the photo app you are not going to be presented with the same

18   image that you were viewing before you left."  (Tr. 3200:13-3202:14 (Dourish); *see also* Tr.

19   3178:12-3180:18 (E. Kim) (describing circumstances).)

20        **'711 Patent.**  Substantial evidence supports the jury's non-infringement finding because,

21   for the same reasons explained above, the "apps" used in Apple's products are not the "MP3

22   mode" claimed in the '711 patent.  (Tr. 3232:9-3233:8 (Givargis); Tr. 2482:15-2483:2 (Yang)

23   ("[A]pplication programs and modes are different.").)  Moreover, Dr. Yang failed to identify "an

24   application module including at least one applet" in Apple's source code (Tr. 2479:4-8 ("I just

25   can't recall exactly which one they are."); *see* Tr. 2476:1-2479:23), and there was no evidence

26   that Apple's products contain that claim element.  On the contrary, Dr. Givargis testified that

27   Apple's products "do not use applets."  (Tr. 3228:19-3229:4; *see also* Tr. 3229:5-3232:8.)

28

1

**IX.    SAMSUNG'S DELIBERATE TRIAL STRATEGY CANNOT IMPLICATE THE "INTERESTS OF JUSTICE"**

2

3    This Court did not "prevent[] Samsung from presenting a full and fair case."  (Mot. at 30.)

4    Samsung made a strategic decision to reject a separate trial on its counterclaims and to proceed

5    instead with a single trial under the established time limitations.  (July 24, 2012 Hr'g Tr. 45:20-

6    46:4, 47:23-48:7, 49:10-12 (Court offers separate trial if Samsung thinks limits "are prejudicial";

7    Samsung responds: "Our choice is parity. . . .  We'll do the case within the time limits."); Dkt.

8    No. 1329 at 2 (confirming trial limits and noting Samsung's rejection of separate trial).)  Samsung

9    then made strategic choices about how to use its allotted time, including "a strategic decision to

10    spend more time to cross-examine Apple witnesses" than Apple used "to present its affirmative

11    case" (Tr. 3250:22-3252:2) and not to call certain witnesses.  The Court followed Ninth Circuit

12    precedent in allowing each side to comment on the other's failure to call witnesses.  (Dkt. No.

13    1721 at 1-2 (citing *Food Machinery & Chem. Corp. v. Meader*, 294 F.2d 377, 384 (9th Cir.

14    1961).)  Samsung cites no contrary authority.

15        Nor does Samsung establish unequal treatment.  Samsung points to rulings excluding

16    theories and evidence not timely disclosed during discovery, but the Court applied the same rule

17    to Apple (*e.g.*, Tr. 942:20-943:13, 1254:20-22).  The Court also required both sides to lay

18    sufficient foundation for witness testimony.  (*E.g.*, Tr. 2484:21-2485:3 (sustaining Samsung's

19    foundation objection).)  The examples Samsung cites (Mot. at 30:21-23) simply reflect its failures

20    to establish that a witness knew anything about the topic or exhibit (Tr. 524:15-525:19, 527:3-12)

21    and, in contrast, Apple's appropriate questions about witnesses' personal knowledge (Tr. 2832:1-

22    19), documents with stipulated authenticity that witnesses had considered (*e.g.*, Tr. 1406:11-

23    1410:8; *see also* Dkt. No. 1205 (stipulation)), or topics for which Samsung had opened the door

24    (Tr. 987:21-992:12).  Apple's advertisements were relevant to secondary meaning and fame

25    analyses (Dkt. No. 1903 at 83, 87), but Samsung's proffered advertisement was not relevant.  In

    sum, Samsung received a fair trial; it simply does not like the result.

26

**CONCLUSION**

27

    Samsung's motion for JMOL, new trial, or remittitur should be denied.

28

1

Dated: October 19, 2012          MORRISON & FOERSTER LLP

2

3                                        By:   */s/ Michael A. Jacobs*
                                                Michael A. Jacobs
4

5                                              Attorneys for Plaintiff
                                               APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28