1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Cal. Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
3   San Francisco, California 94111
    Telephone: (415) 875-6600
4   Facsimile: (415) 875-6700

5   Kathleen M. Sullivan (Cal. Bar No. 242261)
    kathleensullivan@quinnemanuel.com
6   Kevin P.B. Johnson (Cal. Bar No. 177129)
    kevinjohnson@quinnemanuel.com
7   Victoria F. Maroulis (Cal. Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
8   555 Twin Dolphin Drive 5th Floor
    Redwood Shores, California 94065
9   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100
10
    Susan R. Estrich (Cal. Bar No. 124009)
11  susanestrich@quinnemanuel.com
    Michael T. Zeller (Cal. Bar No. 196417)
12  michaelzeller@quinnemanuel.com
    865 S. Figueroa St., 10th Floor
13  Los Angeles, California 90017
    Telephone: (213) 443-3000
14  Facsimile: (213) 443-3100

15  Attorneys for SAMSUNG ELECTRONICS
    CO., LTD., SAMSUNG ELECTRONICS
16  AMERICA, INC. and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC
17
                    UNITED STATES DISTRICT COURT
18        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19
    APPLE INC., a California corporation,        CASE NO. 11-cv-01846-LHK
20
                Plaintiff,                       SAMSUNG'S OPPOSITION TO APPLE'S
21                                               MOTION FOR JUDGMENT AS A
            vs.                                  MATTER OF LAW, NEW TRIAL, AND
22                                               AMENDED JUDGMENT
    SAMSUNG ELECTRONICS CO., LTD., a
23  Korean business entity; SAMSUNG             Date:   December 6, 2012
    ELECTRONICS AMERICA, INC., a New           Time:   1:30 p.m.
24  York corporation; SAMSUNG                   Place:  Courtroom 8, 4th Floor
    TELECOMMUNICATIONS AMERICA,                 Judge:  Hon. Lucy H. Koh
25  LLC, a Delaware limited liability company,

26              Defendants.                        PUBLIC REDACTED VERSION

27

28

02198.51855/4995117.9
                                                           Case No. 11-cv-01846-LHK

# TABLE OF CONTENTS

**Page**

I.   APPLE IS NOT ENTITLED TO JUDGMENT OR A NEW TRIAL ON INFRINGEMENT OR DILUTION OF THE IPAD TRADE DRESS ................................ 1

    A.   The Jury Correctly Found That The iPad Trade Dress Is Not Protectable ............... 1

    B.   The Record Does Not Support Judgment Or New Trial for Apple On Trade Dress Infringement ........................................................................................................ 3

    C.   The Record Does Not Support Judgment Or A New Trial For Apple On Trade Dress Dilution ........................................................................................................... 5

II.  APPLE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON INFRINGEMENT OF THE D'889 PATENT ......................................... 6

    A.   The Jury Correctly Found The Galaxy Tab 10.1 Does Not Infringe The D'889 .................................................................................................................. 6

    B.   The Court Correctly Construed Figure 2 Of The D'889 Patent ............................ 10

    C.   No New Trial Is Warranted On Infringement Of The D'889 Patent..................... 10

III. APPLE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON ITS REMAINING CLAIMS .................................................................. 11

    A.   The Record Supports The Jury's Findings Of Non-Infringement Of The D'677 Or D'087 Patents........................................................................................ 11

    B.   The Record Supports The Jury's Findings Of Non-Dilution Of Apple's Registered iPhone And Unregistered iPhone 3G Trade Dresses .......................... 12

    C.   The Record Supports The Jury's Finding Of Non-Dilution Of Apple's Unregistered Combination iPhone Trade Dress....................................................... 13

    D.   The Record Supports The Findings Of Utility Patent Non-Infringement ............. 13

    E.   The Record Supports The Findings That Samsung Did Not Willfully Infringe ................................................................................................................. 14

    F.   The Record Supports The Jury's Finding Of SEC Non-Infringement And Non-Inducement........................................................................................................ 14

    G.   The Court May Not Increase The Jury's Damages Award ................................... 16

IV.  THE RECORD PROVIDES NO BASIS TO FIND SAMSUNG'S PATENTS INVALID AS ANTICIPATED OR OBVIOUS ................................................................. 17

V.   THE RECORD SUPPORTS THE JURY'S REJECTION OF APPLE'S CONTRACT CLAIMS ....................................................................................................... 18

    A.   Apple Failed To Establish Samsung's ETSI Obligations Under French Law ........ 18

B.   The Record Fails To Show Samsung's Breach Under ETSI IPR Policy ................ 19

C.   The Record Fails To Show Causation Or Damages On Apple's Non-Disclosure Contract Claim ................................................................................ 20

D.   The Record Supports The Jury's Rejection Of Apple's FRAND Licensing Contract Claim ................................................................................ 20

VI.   THE RECORD SUPPORTS THE JURY'S REJECTION OF APPLE'S ANTITRUST CLAIM ................................................................................ 21

A.   Apple Failed To Introduce Competent Evidence Of An Antitrust Market ............ 21

B.   Apple Introduced No Evidence Of Monopoly Power ............................................ 22

C.   Apple's Theory Of Anticompetitive Conduct Fails ................................................ 23

D.   Apple Demonstrated No Cognizable Antitrust Injury Or Damages ...................... 23

VII.   APPLE IS NOT ENTITLED TO $121 MILLION IN SUPPLEMENTAL DAMAGES ................................................................................ 24

A.   Apple Is Not Entitled Supplemental Damages Based On The Jury's Verdicts ................................................................................ 24

B.   Apple's Methodology Is Flawed ............................................................................ 26

1.   Supplemental Damages May Not Be Based On Apple's Average Per-Sale Damages Of $50.40 ........................................................ 26

2.   Supplemental Damages Cannot Be Based On Apple's Inaccurate Sales Projections ........................................................................ 27

VIII.   APPLE IS NOT ENTITLED TO $50 MILLION IN PREJUDGMENT INTEREST ........ 29

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>Cases</u>

4

*Accuscan, Inc. v. Xerox Corp.,*
   2000 WL 280005 (S.D.N.Y. Mar. 15, 2000) .................................................30

5

*Akermanis v. Sea-Land Service, Inc.,*
6    688 F.2d 898 (2d Cir. 1982) .................................................................16

7

*Allen Engineering Corp. v. Bartell Indus.,*
   299 F.3d 1336 (Fed. Cir. 2002) ........................................................14,15

8

*AMF Inc. v. Sleekcraft Boats,*
9    599 F.2d 341 (9th Cir. 1979) ..................................................................3

10

*Am. Honda Motor Co. v. Two Wheel Corp.,*
   918 F.2d 1060 (2d Cir. 1990)— .............................................................29

11

*Aro Mfg. Co. v. Convertible Top Replac. Co.,*
12    377 U.S. 476 (1964) ............................................................................27

13

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
   457 F.3d 1062 (9th Cir. 2006) .................................................................2

14

*Aurora World, Inc. v. Ty, Inc.,*
15    719 F. Supp. 2d 1115 (C.D. Cal. 2009) ....................................................2

16

*Autodesk, Inc., v. Dassault Systems Solidworks Corp.,*
   685 F. Supp. 2d 1001 (N.D. Cal. 2009) ....................................................3

17

*Autry v. Republic Prods.,*
18    30 Cal. 2d 144 (1947) ........................................................................21

19

*Bard Peripheral Vascular, Inc. v. Gore & Assoc., Inc.,*
   682 F.3d 1003 (Fed. Cir. 2012) .............................................................14

20

*Beatrice Foods Co. v. New England Printing & Lithographing Co.,*
21    923 F.2d 1576 (Fed. Cir. 1991) .............................................................29

22

*Berlyn, Inc. v. Gazette Newspapers, Inc.,*
   214 F. Supp. 2d 530 (D. Md. 2002) ........................................................22

23

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
24    489 U.S. 141 (1989) .............................................................................5

25

*Boston Scientific Corp. v. Johnson & Johnson,*
   550 F. Supp. 2d 1102 (N.D. Cal. 2008) ...................................................26

26

*Braintree Labs., Inc. v. Nephro-Tech Inc.,*
27    81 F. Supp. 2d 1122 (D. Kan. 2000) .......................................................25

28

*Braun, Inc. v. Dynamics Corp.,*
   975 F.2d 815 (Fed. Cir. 1992) ..........................................................11, 24

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
2009 WL 160235 (S.D. Cal. Jan. 20, 2009) ....................................................................30

*Broadcom Corp. v. Qualcomm, Inc*
501 F.3d 297 (3d Cir. 2007) ..........................................................................................22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ......................................................................................................23

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal 1998) .............................................................................4

*Carnival Corp. v. SeaEscape Casino Cruises, Inc.*,
74 F. Supp. 2d 1261 (S.D. Fla. 1999) .............................................................................6

*CollegeNET, Inc. v. XAP Corp.*,
2007 WL 1667125 (D. Or. June 20, 2007) ....................................................................30

*Conceptus, Inc. v. Hologic, Inc.*,
2012 WL 44064 (N.D. Cal. Jan. 9, 2012) ......................................................................30

*Continental Lab. Products, Inc. v. Medax Int'l, Inc.*,
114 F. Supp. 2d 992 (S.D. Cal. 2000) .............................................................................3

*Copeland v. Baskin Robbins U.S.A.*,
96 Cal. App. 4th 1251 (2002) ........................................................................................21

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010) .....................................................................................11

*Cuba R. Co. v. Crosby*,
222 U.S. 473 (1912) ......................................................................................................19

*DSU Medical Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) .....................................................................................15

*DePinto v. Provident Sec. Life Ins. Co.*,
323 F.2d 826 (9th Cir. 1963) .........................................................................................16

*Decorations for Generations, Inc. v. Home Depot USA, Inc.*,
2003 U.S. Dist. LEXIS 26608 (E.D. Cal. 2003) ...........................................................30

*Dimick v. Schiedt*,
293 U.S. 474 (1935) ......................................................................................................16

*Earl v. Bouchard Transp. Co., Inc.*,
917 F.2d 1320 (2d Cir. 1990) ........................................................................................16

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ...........................................................................6, 7, 8, 11

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) ....................................................................................4, 5

*Eolas Techs. Inc. v. Microsoft Corp.*,
2004 WL 170334 (N.D. Ill. Jan. 15, 2004) ...................................................................27

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL, NEW TRIAL AND AMENDED JUDGMENT**

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ............................................................24, 28

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ....................................................................16

*First Brands Corp. v. Fred Meyer, Inc.*,
   809 F.2d 1378 (9th Cir. 1987) ....................................................................3

*First Nat'l Mort. Co. v. Fed. Realty Inv. Trust*,
   631 F.3d 1058 (9th Cir. 2011) ..................................................................21

*First Nationwide Bank v. Mountain Cascade, Inc.*,
   77 Cal. App. 4th 871 (2000) .....................................................................20

*Floe Int'l, Inc. v. Newman's Mfg. Inc.*,
   2006 WL 2472112 (D. Minn. Aug. 23, 2006) ..........................................29

*Franceschi v. Hospital General San Carlos Inc.*,
   420 F.3d 1 (1st Cir. 2005) ........................................................................16

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
   243 F. Supp. 500 (S.D.N.Y. 1965) ...........................................................24

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, L.P.*,
   423 F.3d 539 (6th Cir. 2005) ......................................................................4

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
   874 F.2d 431 (7th Cir. 1989) ....................................................................29

*Gorham Mfg. Co. v. White*,
   81 U.S. 511 (1871) ...........................................................................9, 10, 11

*Gucci v. Guess*,
   2012 WL 2304247 (S.D.N.Y. June 18, 2012) ............................................4

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir. 1979) ....................................................................23

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ................................................................15

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996) ....................................................................8

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ....................................................23

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   609 F. Supp. 2d 951 (N.D. Cal. 2009) ......................................................24

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2008 WL 73689 (N.D. Cal. Jan. 5, 2008) .................................................22

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009) ..................................................................8

1  *Itron, Inc. v. Benghiat*,
    2003 WL 22037710 (D. Minn. Aug. 29, 2003)..................................................27
2
3  *Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002) ...........................................................................9
4  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993)......................................................................10, 15
5
6  *LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*,
    2012 WL 1965878 (N.D. Cal. May 30, 2012) ....................................................14
7  *Laitram Corp. v NEC Corp.*,
    115 F.3d 947 (Fed. Cir. 1997) ............................................................................30
8
9  *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
    199 F.3d 1009 (9th Cir. 1999) ..............................................................................1
10 *Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ............................................................................14
11
12 *M2 Software, Inc. v. Madacy Entertainment*,
    421 F.3d 1073 (9th Cir. 2005)...............................................................................5
13 *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*,
    420 F.3d 1369 (Fed. Cir. 2005) ..........................................................................14
14
15 *Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ..............................................................................................9
16 *Mars, Inc. v. Coin Acceptors, Inc.*,
    513 F. Supp. 2d 128 (D. N.J. 2007) ....................................................................30
17
18 *Mirror Worlds, LLC v. Apple Inc.*,
    2011 WL 6939526 (Fed. Cir. Nov. 10, 2011) ....................................................15
19 *Mirror Worlds, LLC v. Apple Inc.*,
    No. 2011-1392, 2012 WL 3800812 (Fed. Cir. Sept. 4, 2012).............................15
20
21 *Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*,
    372 F.3d 1330 (Fed. Cir. 2004) ............................................................................4
22 *Nissan Motor Co. v. Nissan Comp. Corp.*,
    378 F.3d 1002 (9th Cir. 2004) ...............................................................................6
23
24 *Novak v. Gramm*,
    469 F.2d 430 (8th Cir. 1972) ..............................................................................16
25 *Nutri/System, Inc. v. Con-Stan Indus.*,
    809 F.2d 601 (9th Cir. 1987) ................................................................................4
26
27 *OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) .......................................................................8, 11
28 *Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996) .......................................................................28, 24

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

*Oscar Mayer Foods Corp. v. Conagra, Inc.*,
    869 F. Supp. 656 (W.D. Wis. 1994)................................................................26, 29

*Otis v. Doctor's Assocs., Inc.*,
    1998 WL 673595 (N.D. Ill. Sept. 14, 1998)..........................................................28

*PHG Techs., LLC v. St. John Cos.*,
    469 F.3d 1361 (Fed. Cir. 2006)..............................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..............................................................................7

*Philp v. Macri*,
    261 F.2d 945 (9th Cir. 1958)...........................................................................19, 20

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) .............................................24, 25, 26

*Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................................23

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)................................................................................8

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012)................................................................................4

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995)................................................................................21

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)..............................................................................................20

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010).........................................................................8, 11

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000)............................................................................14

*Russello v. United States*,
    464 U.S. 16 (1983) .........................................................................................25, 29

*S. Or. Barter Fair v. Jackson County*,
    372 F.3d 1128 (9th Cir. 2004).................................................................................9

*In re Seagate Techs., Inc. v. Gateway, Inc.*,
    497 F.3d 1360 (Fed. Cir. 2007)............................................................................14

*Sharper Image Corp. v. Target Corp.*,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006) .................................................................4

*Smith v. Whitman Saddle*,
    148 U.S. 674 (1893)................................................................................................7

*St. Paul Fire and Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
    101 Cal. App. 4th 1038 (2002)..............................................................................20

SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL, NEW TRIAL AND AMENDED JUDGMENT

*Taylor v. Green*,
   868 F.2d 162 (5th Cir. 1989) ............................................................................................ 16

*Tegal Corp. v. Tokyo Electron Co.*,
   248 F.3d 1376 (Fed. Cir. 2001) ....................................................................................... 15

*Thane Int., Inc., v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002) ............................................................................................ 5

*Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002) ............................................................................................ 2

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23 (2001)— ........................................................................................................ 1

*Unette Corp. v. Unit Pack Co.*,
   785 F.2d 1026 (Fed. Cir. 1986) ..................................................................................... 11

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965) ........................................................................................................ 23

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   375 F.3d 1341 (Fed. Cir. 2004), *reversed on other grounds*, 564 U.S. 394 (2006) ........ 22

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) .......................................................................................................... 2

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) ........................................................................................................ 23

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) ........................................................................... 3

*Yankee Candle Co., Inc. v. Bridgewater Candle Co.*,
   99 F. Supp. 2d 140 (D. Mass. 2000) ................................................................................ 3

*Yankee Candle Co. v. Bridgewater Candle Co.*,
   259 F.3d 25 (1st Cir. 2001) ............................................................................................... 3

### Statutes

Cal. Civ. Code § 1717 ........................................................................................................... 20

Cal. Civ. Code § 3300 ........................................................................................................... 20

Cal Civ. Proc. Code § 1021 ................................................................................................... 20

Cal Civ. Proc. Code § 1033.5(b)(1) ...................................................................................... 20

15 U.S.C. § 1114(1)(a) .......................................................................................................... 30

15 U.S.C. § 1125(c) ................................................................................................................. 5

35 U.S.C. § 284 ............................................................................................................... 24, 29

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

35 U.S.C. § 289 ....................................................................................24, 25, 29

**Miscellaneous**

*McCarthy on Trademarks and Unfair Competition* § 32:189 ....................................4

*McCarthy on Trademarks and Unfair Competition* § 15:47 (4th ed. 1996) ...................3

*McCarthy on Trademarks and Unfair Competition* § 24:106 (2008 ed.) ......................6

## MEMORANDUM OF POINTS AND AUTHORITIES

Seeking to compound an already excessive, improper jury award of over $1 billion, Apple seeks to override the jury's well-founded conclusions that Samsung's Galaxy Tab 10.1 does not infringe or dilute Apple's iPad trade dress or infringe the D'889 patent; that Samsung's smartphones do not dilute Apple's combination iPhone trade dress; and that a number of Samsung's smartphones do not infringe Apple's D'677, D'087, '163, or '915 patents or dilute Apple's registered iPhone trade dress and unregistered iPhone 3G trade dress.   Apple further seeks to overturn the jury's findings that Samsung's patents are valid and that Samsung did not breach its contracts or violate the antitrust laws.   Apple's arguments lack merit.

## I.   APPLE IS NOT ENTITLED TO JUDGMENT OR A NEW TRIAL ON INFRINGEMENT OR DILUTION OF THE IPAD TRADE DRESS

### A.   The Jury Correctly Found That The iPad Trade Dress Is Not Protectable

Apple fails to show any ground for judgment or new trial on its unregistered iPad trade dress claims.   *First*, Apple failed to prove that the alleged iPad trade dress is protectable.   The evidence amply supports a finding that the iPad trade dress is unprotectable as functional—that is, "essential to the use or purpose of the article" and "affect[ing] the cost or quality of the article," *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001)—because it features a large rectangular display (RT 2603:11-2604:2 ("any other shape would be more expensive, completely rare")); an overall rectangular shape (RT 2604:7-22 ("practically dictated by the fact that there is a rectangular display")); rounded corners (RT 2604:23-2605:18 ("significant benefits" for "usability and economics")); a flat front face (RT 2608:19-2609:9 ("easy to manipulate")); a clear surface covering the display (RT 1199:25-1200:16 ("absolutely functional")); and familiar icon images (RT 1451:13-1453:9; 1455:12-25 ("communicate clearly and consistently")).   Apple's own advertisements for the iPad emphasize its functionality.   *See, e.g.*, PX11 ("Thinner. Lighter. Faster. FaceTime. Smart Covers. 10-hour battery."); PX128; RT 646:9-20.   Apple's experts offered only conclusory opinions that alternatives "would provide the same functions." RT 1079:2-18; 1094:19-1096:2.   *See Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013-14 (9th Cir. 1999) (claimed alternative designs must offer "exactly the same

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL, NEW TRIAL AND AMENDED JUDGMENT**

1  features" as plaintiff's product).   Indeed, Susan Kare admitted she did not even investigate "the

2  functionality of the icons and how they work and how a user would interact with them" as part of

3  her analysis.   RT 1469:24-1470:16.   Another Apple expert, Peter Bressler, admitted when

4  testifying about alleged alternatives that "how they function really was insignificant to me."   RT

5  1206:18-1208:6.

6       Apple cannot refute functionality by citing testimony that the iPad was designed to be

7  beautiful (RT 499:3-8; RT 617:10-618:1), or that beauty is a primary motivator for consumer

8  purchases (RT 626:5-19; RT 629:3-9 ("customers value beautiful products")), for such evidence

9  merely establishes that the iPad trade dress is aesthetically functional.   Features that are "at the

10 heart of basic consumer demand for the product" are not protectable, whether utilitarian or

11 attractive.   *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1073 (9th Cir.

12 2006); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002) ("features which

13 constitute the actual benefit that the consumer wishes to purchase . . . do not engender trademark

14 production"); *Aurora World, Inc. v. Ty, Inc.*, 719 F. Supp. 2d 1115, 1149 (C.D. Cal. 2009).

15      *Second*, the record amply supports a conclusion that the iPad trade dress was not

16 protectable because it had not acquired secondary meaning before Samsung started selling the

17 Galaxy Tab 10.1 in June 2011.   *See id.* at 1151-52 (heightened standard for proving secondary

18 meaning in product configurations); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205,

19 213 (2000) (consumers "almost invariably" do not perceive product configurations as indicators of

20 source).   Undisputed evidence showed that numerous third-party tablet products had similar

21 designs.   DX687 (internal Apple report with a "summary of our enemies" in the tablet market,

22 including Motorola "Xoom," RIM "Playbook," LG "G-Slate," and Palm-HP "Opal" and "Topaz").

23 The survey by Apple's expert Hal Poret showed no association of the iPad trade dress with Apple

24 *before* the accused Samsung tablets were released (RT 1601:5-1602:12); showed a mere 40%

25 recognition rate for a blurred iPad image (RT 1594:25-1595:3); used improper control stimuli that

26 looked nothing like the iPad (RT 1720:21-23 (Poret used a Nook (DX2526) instead of a more

27 comparable control, such as the Motorola Xoom (DX2529)); cued respondents by using non-

28 claimed features like the "home button" (RT 1680:19-1681:9; 1682:5-11); and rested on a

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   methodology that Poret changed at Apple's behest after his first study yielded results that were too

2   low to establish the required level of association (RT 1679:15-1680:18).   Apple's "impressive

3   sales" (Mot. at 4) do not translate into secondary meaning because product success can be

4   attributable to a variety of factors unrelated to source-identification, including the products'

5   functional capabilities.   *Continental Lab. Products, Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992,

6   1002-03 (S.D. Cal. 2000); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.,* 99 F. Supp. 2d

7   140, 154-55 (D. Mass. 2000); 4 *McCarthy on Trademarks and Unfair Competition* § 15:47 (4th

8   ed. 1996) ("McCarthy") ("Popularity of a product is not synonymous with secondary meaning.

9   Large sales of the product may be due to dozens of factors, only one of which may be the drawing

10  power of the trademark.").   And Apple's advertisements of images of the iPad (PX11, PX128)

11  cannot support a finding of secondary meaning because they do not direct the consumer's attention

12  to the specific features of the claimed trade dress.   *First Brands Corp. v. Fred Meyer, Inc.*, 809

13  F.2d 1378, 1383 (9th Cir. 1987) (plaintiff failed to use "look for" advertising); *Autodesk, Inc., v.*

14  *Dassault Systems Solidworks Corp.*, 685 F. Supp. 2d 1001, 1014 (N.D. Cal. 2009); *Walker &*

15  *Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1180 (N.D. Cal. 2007); *see also*

16  *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 44 (1st Cir. 2001) ("To be probative

17  of secondary meaning, the advertising must direct the consumer to the features claimed as trade

18  dress. . . .   Merely 'featuring' the relevant aspect of the product in advertising is no more

19  probative of secondary meaning than are strong sales").

20          **B.      The Record Does Not Support Judgment Or New Trial for Apple On Trade**

21                   **Dress Infringement**

22          Even if the iPad trade dress were protectable, Apple failed to meet its burden of showing

23  likelihood of confusion under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).

24  To begin with, Apple failed to present any credible survey evidence to support its claim.   RT

25  900:8-11 (Denison); 1101:23-1102:8 (Bressler); 1532:16-21 (Winer); 1704:1-8 (Van Liere).   Van

26  Liere's survey results were both irrelevant and exaggerated due to serious methodological flaws.

27  For example, respondents were not shown the back of the Samsung tablet, which prominently

28  bears the "Samsung" trademark (RT 1707:11-1711:13), and the survey used a Nook as a control,

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   even though the Nook was identified with clear branding that customers would immediately

2   recognize as not an iPad (RT 1711-14-1712:10).   Moreover, Van Liere's survey measured only

3   post-sale confusion (RT 1702:6-14), and Apple failed to show that any alleged post-sale confusion

4   affected consumers' purchasing decisions.   RT 1704:1-8 (Van Liere); *see Rearden LLC v.*

5   *Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012) ("Trademark infringement protects

6   only against mistaken purchasing decisions and not against confusion generally.") (citations

7   omitted).   Indeed, such post-sale product design trade dress claims are not legally cognizable at

8   all.   *Gibson Guitar Corp. v. Paul Reed Smith Guitars, L.P.*, 423 F.3d 539, 552 (6th Cir. 2005).

9   Finally, even the post-sale survey evidence reflected at most a 6% confusion rate among

10  respondents shown the branded tablet, which defeats liability.   *See Gucci v. Guess*, 2012 WL

11  2304247, at *15 (S.D.N.Y. June 18, 2012) (survey showing 5.8 percent level of confusion in the

12  post-sale setting supported defendant); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1040

13  (C.D. Cal 1998) ("survey evidence clearly favors the defendant when it demonstrates a level of

14  confusion much below ten percent") (citation omitted); 3 *McCarthy* § 32:189 (same).

15      Apple relies (Mot. at 5) on quadruple-hearsay about unconfirmed Galaxy Tab 10.1 returns

16  at a single Best Buy store in New Jersey.   Yet the document it cites shows on its face that the

17  returns related to lack of product knowledge, not confusion, and its "Design" section makes no

18  reference to any supposed confusion or mistake concerning the iPad.   PX 59.19 ("consumers'

19  lack of preexisting product knowledge and returns due to simple change of heart"); PX59.21-27.

20  In any case, a few alleged instances of actual confusion do not support likely confusion given the

21  volume of iPad sales.[1]

22      Any possibility of confusion was further undermined by evidence that consumers exercise

23  much care when purchasing such high-priced electronics devices (RT 899:7-21 (Denison);

24  1103:13-1104:18 (Bressler); 1538:12-19; 1539:3-15 (Winer)) and that Apple and Samsung

25  employ different marketing and advertising strategies to sell their tablets (*see, e.g.*, PX54.36

---

[1]   *Nutri/System, Inc. v. Con-Stan Indus.*, 809 F.2d 601, 606-07 (9th Cir. 1987); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150-51 (9th Cir. 2002); *Nautilus Group, Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330, 1337-38 (Fed. Cir. 2004) (four misdirected phone calls out of thousands); *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1074 (N.D. Cal. 2006).

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1  ("alternative retail concept: stores within a store"); PX59.18, 59.30, 60.11 (showing different

2  placement of Apple products); RT 682:20-683:6 (Schiller); 896:15-897:12 (Denison)).  *See*

3  *Entrepreneur Media*, 279 F.3d at 1152.

4        The record also lacks evidence of Samsung's intent to trade on the source-identifying

5  attributes of Apple's claimed trade dress.   Samsung wants consumers to know they are buying

6  Samsung products.   RT 888:5-12 ("We want consumers to hear our message, understand that our

7  message is ours, and go out and buy our device."); 878:2-879:19 (copying is not a sustainable

8  strategy).   To that end, the Samsung logo appears on the Galaxy Tab 10.1, and the device

9  immediately displays the Samsung logo when turned on.   RT 1541:14-1543:3 (Winer).

10  Samsung had been working on the Galaxy Tab 10.1 design before the iPad was even announced

11  (DX900; RT 2802:25-2804:16; 2814:1-2815:4), and Samsung viewed functionality, not product

12  configuration, as paramount (RT 2808:11-2809:12, 2811:19-2813:5, 2831:2-15 ("form follows

13  function")).   Finally, there was no evidence that Samsung represented itself as Apple in selling

14  the product.[2]

15        **C.**      **The Record Does Not Support Judgment Or A New Trial For Apple On Trade**

16                    **Dress Dilution**

17        Just as the record fails to show that Apple's iPad trade dress acquired secondary meaning

18  by June 2011 (*see* Section I.A, *supra*), it also fails to show that the trade dress was ***famous*** as of

19  June 2011, as required to show dilution.   Fame requires a level of recognition so high that the

20  asserted trade dress is a "household name."   *See Thane Int., Inc., v. Trek Bicycle Corp.*, 305 F.3d

21  894, 911 (9th Cir. 2002), *superseded by statute on other grounds, see* 15 U.S.C. § 1125(c).

22  Apple introduced no survey to prove such a level of recognition.   The Court instructed the jury

23  that it should not consider the Poret survey results as evidence of fame, and those results were

24  inconsistent with Apple's claims of fame.   RT 1594:25-1595:3 (40.3% net association from

25

26  ───────────────
     [2]   *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The defendant
27  . . . may copy plaintiff's goods slavishly down to the minutest detail; but may not represent
     himself as the plaintiff in their sale.") (quotation omitted); *M2 Software, Inc. v. Madacy*
28  *Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) (no intent because defendant did not have
     "any intention of capitalizing on [plaintiff's] trademark").

1    respondents who viewed the iPad without the home button).[3]   Nor do Apple's advertisements

2    prove that the trade dress became famous by June 2011; the iPad advertisements focused on

3    product performance rather than promoting Apple's claimed trade dresses as source identifiers.

4    PX11; PX128; RT 645:1-13, 646:9-20.

5            Nor does the record support likely dilution by blurring, which requires proof that "the

6    capacity of the [plaintiff's] mark to identify and distinguish goods or services sold by [plaintiff]

7    has been lessened." *Nissan*, 378 F.3d at 1012.   Apple introduced no survey showing point-of-

8    sale confusion (Section I.B., *supra*), and no evidence of actual association (RT 1534:14-17;

9    1535:1-20; 1537:2-13).   Numerous similar third-party tablets were already on the market at the

10   time Samsung introduced the Galaxy Tab 10.1.   Section I.A, *supra*.   And Apple failed to show

11   that Samsung intended to trade on the unregistered trade dress in support of its claim for dilution

12   damages.   Section I.B, *supra.*

13           For these reasons, Apple's motion for judgment as a matter of law or a new trial on

14   infringement or dilution by blurring should be denied.

15   **II.     APPLE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A**

16           **NEW TRIAL ON INFRINGEMENT OF THE D'889 PATENT**

17           **A.      The Jury Correctly Found The Galaxy Tab 10.1 Does Not Infringe The D'889**

18           Apple seeks to substitute itself for the jury in determining whether the ordinary observer

19   familiar with the prior art would be deceived into believing the Galaxy Tab 10.1 design is the

20   same as the D'889 design, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir.

21   2008) (en banc), but the evidence fails to support such an infringement.   From the front, the

22   Galaxy Tab 10.1 has different aspect ratios, border widths and corner radii than the D'889 as well

23   as writing and other ornamentation not present on the D'889.   JX1037, 1038, 1040.   From the

24   side, the Galaxy Tab 10.1 has a thin profile that curves continuously around to the front (JX1037,

25   1038), while the D'889 has a thicker profile that intersects the front surface at a right angle

26   ───────────────────────
27   [3]   *Nissan Motor Co. v. Nissan Comp. Corp.*, 378 F.3d 1002, 1014 (9th Cir. 2004); 4 *McCarthy* §
     24:106 ("minimum threshold survey response should be in the range of 75% of the general
     consuming public of the United States"); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F.
28   Supp. 2d 1261, 1270-71 (S.D. Fla. 1999) (68% consumer recognition insufficient to find fame).

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

(JX1040).   And from the back, the Galaxy Tab 10.1 reveals a two-piece design with a seam separating its two parts as well as a rim separating the front glass surface and the larger back panel (RT 1227:24-1228:19), while the back panel of the D'889 design is one piece that extends to the front of the device to form a "single, seamless vessel" (RT 522:24-523:4; 1225:15-18) with only a single seam (or "gap") with the glass front face (RT 1225:19-1226:8).   Mr. Stringer, a D'889 named inventor, testified that the "seamless back housing" and the "single gap" were important objectives of the D'889 design, neither of which is found in the Galaxy Tab 10.1.   RT 522:24-523:10.[4]   Moreover, the Galaxy Tab 10.1 back is two-toned while the D'889 has a uniform back (RT 1233:2-4); the back of the Galaxy Tab 10.1 has logos and writing while the D'889 has none (JX1037; 1038); and the back of the Galaxy Tab 10.1 has a brushed, matte, non-reflective surface (RT 1232:19-1233:1), while the D'889 has a translucent and/or reflective back, as indicated by the oblique line shading in Figure 2 (RT 1230:11-18).   These differences are more than sufficient to support the jury's verdict of no infringement.   *See, e.g.*, *Smith v. Whitman Saddle*, 148 U.S. 674, 682 (1893) (distinguishing saddle designs based on angle of drop at rear of pommel); *Egyptian Goddess*, 543 F.3d at 682-83 (no infringement based on one design difference).

The differences between the Galaxy Tab 10.1 and the D'889 are further reinforced by a direct comparison to the 035 model, which Apple admits is the physical embodiment that was used to prepare the figures in the D'889 patent (RT 528:12-15; Dkt. 1184 at 1), and is shown in the photographs submitted to the PTO during prosecution (RT 538:20-539:14; DX740, 741).   A straightforward visual comparison confirms all of the differences discussed above and more:   a two-piece housing versus single seamless housing; multiple seams versus single gap between screen and housing; thin rounded profile versus thicker straight profile; and a matte, two-tone back versus reflective, uniform back.   JX1037, 1038; RT 4012:14-19.

In an effort to overcome these differences, Apple relies heavily (Mot. at 8) on Bressler's conclusory opinion that "the continuous flat, clear, edge-to-edge glass front surface" is the "major driver of the overall impression" of the D'889.   But this opinion focuses only on the front

---

[4]   Contrary to Apple's argument that Mr. Stringer's "inspiration" for his design cannot limit the scope of the D'889 patent (Mot. at 9), the inventor's testimony on cross-examination about his invention is relevant here.   *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

1    surface, not on all views of the claimed design.   Bressler also conceded that the other views

2    matter when he admitted that the iPad 1 is *not* an embodiment of the D'889 patent because of

3    differences in the back of the device (RT 3611:19-3612:21), even though that device has a "flat,

4    clear, edge-to-edge glass front surface" (JX1004).   *See Int'l Seaway Trading Corp. v. Walgreens*

5    *Corp.*, 589 F.3d 1233, 1242-43 (Fed. Cir. 2009).

6         The record also shows that many features of the D'889 design are functional and thus not

7    protectable elements of the claimed design.   Such features must be factored out in the

8    infringement analysis.   *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010);

9    *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997).   As Samsung's expert

10   Itay Sherman testified, a rectangular display, overall rectangular shape, rounded corners, and a flat

11   front face are all functional.   RT 2604:7-22; 2605:2-18; 2608:19-2609:9.   Bressler admitted that

12   he did not factor out any functional aspects of the D'889 design (RT 1090:9-22), even though he

13   acknowledged that certain features of Apple's claimed designs, such as the transparent cover over

14   the display screen, are "absolutely functional" (RT 1199:25-1200:4).   Because Bressler failed to

15   apply the correct legal standard, his opinion on infringement merits no weight.   *Read Corp. v.*

16   *Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992), *superseded on other grounds as recognized by*

17   *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575 (Fed. Cir. 1996).[5]

18        The record further shows that many features of the D'889 design are found in the prior art,

19   which heightens the significance of the differences between the D'889 and the Galaxy Tab 10.1.

20   *Egyptian Goddess,* 543 F.3d at 676.   Here, the prior art, including the Compaq TC1000 and the

21   Fidler Tablet, disclosed many of the same fundamental features shown in the D'889 patent:

22   "overall rectangular [shape] with evenly rounded corners"; "flat front surface that goes across the

23   whole front face up to a relatively thin rim"; "relatively narrow profile"; and "almost identical to

24   the proportions of the D'889."   RT 2597:24-2598:10, 2600:1-17.[6]

25   ─────────────────────

26   [5]   To the extent Bressler addressed functionality at all, he merely alleged that alternative designs were available.   RT 1090:12-1091:8.   This conclusory opinion was entitled to no weight, for design patent alternatives must offer the same functional utility as the accused device.   *PHG*

27   *Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366-67 (Fed. Cir. 2006).
     [6]   Bressler's opinion that the TC1000 and Fidler designs were "far afield" from the D'889 patent

28   does not warrant overturning the jury's verdict, as Apple contends.   Mot. at 8-9.   The jury was
            (footnote continued)

1    Apple argues (Mot. at 9) that the similarity of the designs is apparent from press reports

2    and internal Samsung documents.   But these are unavailing because the key vantage point for

3    substantial similarity is that of "the ordinary observer, giving such attention as a purchaser usually

4    gives."   *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).   This standard requires more than

5    a mere mistake by "passers-by" or a person who is seeing and holding the Galaxy Tab 10.1 "for

6    the first time."   And it requires "the resemblance" between the designs to be so close as to

7    "deceive" the ordinary observer, "inducing him to purchase one supposing it to be the other," *id.*,

8    which Apple's cited documents do not establish.   Likewise, a handful of unconfirmed, hearsay

9    reports regarding customer returns at a single New Jersey Best Buy (*see* Section I.B, *supra*) does

10   not support infringement.   Not only does the document fail as proof for the reasons discussed

11   above, but the ordinary observer purchasing costly and highly-marketed tablets will pay close

12   attention and will not be deceived in product purchasing.   *See* RT 899:16-21, 1103:13-1104:18.

13   Finally, Apple ignores the Seventh Amendment and settled precedent in suggesting (Mot.

14   at 7-8) that the jury's finding of non-infringement should yield to this Court's prior finding that

15   Apple was likely to persuade a jury of its infringement claim.   "[I]nfringement cases today must

16   be tried to a jury" under the Seventh Amendment, *Markman v. Westview Instruments, Inc.*, 517

17   U.S. 370, 377 (1996), and preliminary injunction findings are ***not*** binding on the jury at trial.

18   *See, e.g.*, *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002); *S.*

19   *Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004).   This Court recognized

20   as much when it it sent the infringement issue to the jury and when it later dissolved the

21   preliminary injunction it previously ordered.   Dkt. 2011.   And the jury did not have "the same

22   visual evidence" as the Court or the Federal Circuit at the preliminary injunction stage (Mot. at 7);

23   the jury was able to consider the physical specimens of the TC1000 and the Fidler Tablet prior art,

24   Apple's admissions at trial (like the admission that the iPad 1 does not embody the D'889 patent),

25   and the 035 model (Dkt. 346, 398).   The Court's earlier determination is no reason to set aside

26   the jury's non-infringement verdict now.

27   _____

28   able to inspect the prior art devices itself, and to weigh the credibility of Bressler's conclusion in light of the striking similarities between the prior art and the claimed D'889 design.

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1

### B.     The Court Correctly Construed Figure 2 Of The D'889 Patent

2      Apple offers no persuasive reason (Mot. at 10-11) for the Court to reconsider its

3 construction of the "oblique line shading" in Figure 2 of the D'889 patent as depicting a

4 "transparent, translucent, or highly polished or reflective surface from . . . the bottom perspective

5 view of the claimed design."   Dkt. 1425 at 10-11; Dkt. 1447 at 2-3 (denying reconsideration).

6 The Court's construction is grounded in the MPEP guidelines, which provide that "[o]blique line

7 shading must be used to show transparent, translucent and highly polished or reflective surfaces."

8 MPEP 1503.02 (II).   Apple concedes (Mot. at 10) that the oblique lines depicted on the front of

9 the claimed design in Figures 1 and 3 represent transparent or translucent surfaces.   There is no

10 reason to construe the oblique lines in Figure 2 any differently.   Dkt. 1425 at 10 n.1.   Moreover,

11 Apple's own expert admitted that the oblique line shading indicated that the back of the D'889

12 design is a "shiny surface," RT 1230:11-18, and the 035 model (DX741) used as the basis for the

13 figures in the D'889 patent has a shiny back surface, confirming the Court's construction that the

14 back of the design is reflective and/or highly polished.   The photographs of the 035 model show

15 this same feature.   DX740.007-9.   In any case, the numerous differences between the D'889

16 design and the Galaxy Tab 10.1 are more than sufficient to support the jury's verdict of no

17 infringement regardless of this issue of construction.

18

### C.     No New Trial Is Warranted On Infringement Of The D'889 Patent

19      Contrary to Apple's final argument for new trial with respect to the D'889 patent (Mot. at

20 12-13), the Court made no error insofar as it instructed the jury under *Gorham* that deceptive

21 similarity is required for design patent infringement.[7]   It is undisputed that *Gorham* is the

22 governing articulation of the infringement test.   Apple's reliance on *L.A. Gear, Inc. v. Thom*

23 *McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993), is misplaced, for that decision explicitly relied on

24 the *Gorham* standard, including the requirement of deceptive similarity, to affirm a judgment of

25 design patent infringement.   *Id.* at 1124.   Apple ignores this discussion (Mot. at 12), and instead

26 misleadingly points to the Federal Circuit's analysis of unfair competition under the Lanham Act.

27

---

28 [7]   To the contrary, the Court's jury instructions on design patent infringement unduly favored Apple's positions.   *See* Samsung JMOL (Dkt. 1990-3), at 4-9.

1    *Id.* at 1134.   Apple's other cited cases (Mot. at 12) are similarly inapposite:   *Unette Corp. v.*

2    *Unit Pack Co.*, 785 F.2d 1026, 1028 (Fed. Cir. 1986), and *Braun, Inc. v. Dynamics Corp.*, 975

3    F.2d 815, 819-22 (Fed. Cir. 1992), both explicitly relied on the *Gorham* deceptive similarity

4    standard.   Nothing in Apple's authorities suggests that the Federal Circuit has deviated from the

5    *Gorham* standard, and the Federal Circuit's most recent *en banc* decision on design patents,

6    *Egyptian Goddess*, and other panel decisions confirm that the Court has consistently applied

7    *Gorham*, including the deceptive similarity requirement.   *E.g.*, *Egyptian Goddess*, 543 F.3d at

8    670; *Richardson*, 597 F.3d at 1295; *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010);

9    *OddzOn Prods.*, 122 F.3d at 1405.

10   **III.    APPLE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A**

11   **NEW TRIAL ON ITS REMAINING CLAIMS**

12        **A.    The Record Supports The Jury's Findings Of Non-Infringement Of The D'677**

13        **Or D'087 Patents**

14        Apple incorrectly asserts (Mot. at 13-14) that, because the jury found infringement as to

15   some of Samsung's accused devices, Apple is entitled to judgment or a new trial as to those for

16   which no infringement was found.   That is incorrect, for infringement requires a product-by-

17   product assessment.   Dkt. 1931 at 6-8.   The accused Samsung phones have individual and

18   distinctive designs, yet Apple points only to the conclusory testimony of its expert Bressler that

19   the "overall impression" of all the Samsung devices is the same.   Mot. at 14.   Apple cannot

20   bootstrap a partial victory into a clean sweep in this way.

21        *First*, the evidence amply supports the jury's finding that the Galaxy Ace does not infringe

22   the **D'677 patent**.   Among other differences, the Galaxy Ace has a rectangular central physical

23   button accented with chrome trim, a long thin speaker opening above the screen filled with a

24   chrome grate, prominent silver writing and ornamentation, wider lateral borders, and icons below

25   the screen.   JX1030.   These differences make the Galaxy Ace markedly different from the

26   D'677 patent, which lacks these features and colors.   *Compare* JX1030 *with* JX1043.   Bressler

27   also distinguished the D'677 design from a prior art device having "a huge button across the

28   bottom" (RT 1119:19-22), so the Galaxy Ace cannot infringe on the basis of that feature.

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1    *Second*, the jury also correctly decided that the Galaxy S II phones (AT&T; i9100; Epic

2    4G Touch, and Skyrocket) and the Infuse 4G do not infringe the ***D'087 patent***.   The Galaxy S II

3    phones do not have a prominent bezel with the shape or size of the D'087 patent (JX1031, 1032,

4    1034, 1035), and on the Infuse 4G, there is no bezel at all (JX1027; RT 1126:22-1127:1).   As

5    Bressler admitted, "the absence of a bezel takes you out of substantial similarity" for the D'087

6    patent.   RT 1121:7-10.   A visual survey of the phones found to be non-infringing also shows

7    other differences from the D'087 patent, including the presence of icons on the front; writing and

8    logos above and below the screen; speaker slots with different locations, shapes, and appearances;

9    different borders; and corners with varying radii.   *See* JX1027; RT 1159:17-21; 1160:6-11;

10   1163:23-1164:10; 1164:17-21; 1165:11-17 (Infuse 4G); JX1031 (Galaxy S II – AT&T); JX1032

11   (Galaxy S II – i9100); JX1034 (Epic 4G Touch); JX1035 (Galaxy S II – Skyrocket).

12   **B.      The Record Supports The Jury's Findings Of Non-Dilution Of Apple's**

13   **Registered iPhone And Unregistered iPhone 3G Trade Dresses**

14   There also is no basis to overturn the jury's finding that many of the accused Samsung

15   smartphones did not dilute the iPhone 3G trade dresses.   Dkt. 1930 at 11-12.   The iPhone 3G

16   trade dresses are not protectable as they are functional and lack secondary meaning, and they were

17   not famous as of the critical date.   *See* Dkt. 1990-3 at 19-22.   Even if the iPhone 3G trade

18   dresses were protectable and famous, however, Apple failed to establish likely dilution by any of

19   Samsung's accused smartphones.   Apple introduced no evidence of actual dilution, as its own

20   expert admitted on cross-examination.   RT 1534:14-21 ("no empirical evidence" and "no hard

21   data to show that Samsung's actions have diluted Apple's brand").   The survey results of

22   "association" introduced by Apple's expert Van Liere were shown on cross-examination to be

23   unreliable, inflated, and inapplicable to most of the accused phones.   RT 1716:11-1721:17

24   (admitting survey tested only two Samsung phones and may have measured association merely in

25   the same manner that consumers "associate" Burger King and McDonald's).   The evidence of

26   third-party smartphones with similar trade dress undercuts Apple's dilution claim.   Dkt. 1990-3

27   at 11:14-20.   And the iPhone 3G trade dresses include features, such as a prominent "metallic

28

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   bezel" and "rounded silver edges" (JX1039; Dkt. 1904-11 at 113) that are plainly missing from

2   these accused Samsung phones (JX1011-12, 1016, 1022, 1025, 1027, 1031-35).

3        **C.      The Record Supports The Jury's Finding Of Non-Dilution Of Apple's**

4              **Unregistered Combination iPhone Trade Dress**

5        The evidence similarly supports the jury's finding that the unregistered combination

6   iPhone trade dress is not protectable.   That alleged trade dress is functional.   Dkt. 1990-3 at 19-

7   21.   It includes a clear face covering the front (RT 1199:25-1200:16 ("absolutely functional"));

8   four evenly rounded corners (RT 680:9-15 ("help you move things in and out of your pocket"),

9   2605:2-18, 2607:6-2608:2); a large display screen (RT 674:20-675:24 ("a benefit to users"));

10  substantial borders above and below the display screen (RT 679:15-20 ("hide internal wiring and

11  components"); familiar icon images (RT 1451:13-1453:9; 1455:12-25 ("communicate clearly and

12  consistently")); and a useful size and shape (DX562.001 ("size and shape/comfort benefits")).

13       Apple also failed to establish that the alleged combination trade dress acquired secondary

14  meaning.   Dkt. 1990-3 at 21.   The claimed combination trade dress excludes many features of

15  the iPhone—including the home button, the Apple logo, and the metallic bezel claimed in the

16  iPhone 3G trade dress.   Dkt. 1904-11 at 114.   Instead, it is directed to generic features of slab

17  smartphones that are widely marketed by numerous third-parties besides Apple.   RT 893:16-

18  895:12-20; DX712; DX2627.   Even if the unregistered combination iPhone trade dress were

19  protectable, the evidence does not support a finding of dilution by blurring.   Apple failed to

20  establish fame, likely dilution or that Samsung intended to trade on any source-identifying

21  attributes of the combination trade dress.   Dkt. 1990-3 at 11-12, 21-22.

22       **D.      The Record Supports The Findings Of Utility Patent Non-Infringement**

23       Contrary to Apple's argument (Mot. at 16-17), ample evidence supports the jury's findings

24  that several Samsung products did not infringe *the '915 and '163 patents*.   *See* RT 2910:6-

25  2912:19; 2922:7-2924:3 (Gray non-infringement testimony); JX1007, 1009-16, 1019-20, 1022-28,

26  1030-33, 1036-37 (non-infringing products).   Apple's expert performed an infringement analysis

27  on only *one* product—the Samsung Galaxy S II (AT&T)—but failed to provide any infringement

28  analysis for the other 23 accused products (RT 1741:15-1747:23; 1751:19-1753:12), including

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL, NEW TRIAL AND AMENDED JUDGMENT**

1   those that the jury found were not infringing.   Those findings are well-supported.   By contrast,

2   the jury's findings that other accused Samsung products infringe these patents are not supported

3   by evidence, as Samsung has shown.   Dkt. 1990-3 at 13-14.

4         **E.**      **The Record Supports The Findings That Samsung Did Not Willfully Infringe**

5         Although Apple seeks judgment as a matter of law on willfulness as to instances where the

6   jury declined to find or did not reach willfulness (Mot. at 17-18), it fails to acknowledge that it

7   needed to prove willfulness by clear and convincing evidence.   *See In re Seagate Techs., Inc. v.*

8   *Gateway, Inc.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc); *Bard Peripheral Vascular, Inc. v.*

9   *Gore & Assoc., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012).   Because Apple offered *no* evidence

10  as to what Samsung knew or should have known about the existence, validity, and infringement of

11  the patents or trade dresses at issue, the record supports the jury's findings.   *See i4i Ltd. P'ship v.*

12  *Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010); *LML Holdings, Inc. v. Pac. Coast Distrib.*

13  *Inc.*, 2012 WL 1965878 at *4 (N.D. Cal. May 30, 2012).   Apple cites supposed evidence of

14  copying, but copying differs from infringement as a matter of law, *see Allen Engineering Corp. v.*

15  *Bartell Indus.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002).   There is thus no basis to overturn the

16  jury's findings of non-willfulness.

17        **F.**      **The Record Supports The Jury's Finding Of SEC Non-Infringement And**

18                      **Non-Inducement**

19        Apple argues that evidence of copying "conclusively demonstrated" that SEC infringed

20  Apple's D'087 and D'889 patents, diluted its trade dress, and induced STA and SEA to infringe

21  and dilute, based solely on the opinion testimony of its damages expert that "SEC sells product to .

22  . . [STA], and the phones move across the Pacific and land in the United States."   Mot. at 17-18.

23  But patent infringement "cannot be predicated on acts wholly done in a foreign country," *Rotec*

24  *Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000), and "[m]ere knowledge

25  that a product sold overseas will ultimately be imported into the United States is insufficient to

26  establish liability under section 271(a)," *MEMC Elec. Materials, Inc. v. Mitsubishi Materials*

27  *Silicon*, 420 F.3d 1369, 1377 (Fed. Cir. 2005).   The evidence at trial failed to show that SEC

28  negotiated or signed contracts, made, used, offered to sell, or sold any infringing products in the

1   United States; or took any action in the United States to dilute Apple's trade dress.   Furthermore,

2   supposed copying "is of no import on the question of whether the claims of an issued patent are

3   infringed."   *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350-51 (Fed.

4   Cir. 2002); *accord L.A. Gear*, 988 F.2d at 1126-27.

5          The record similarly fails to furnish evidence that SEC actively induced infringement or

6   dilution.   "To establish liability under section 271(b), a patent holder must prove that once the

7   defendants knew of the patent, they actively and knowingly aided and abetted another's direct

8   infringement."   *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).

9   Inducement requires proof that the defendant "intend[ed] to cause" the infringing acts.   *Hewlett-*

10  *Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990).   The Federal Circuit

11  has made clear that "mere knowledge of possible infringement by others does not amount to

12  inducement; specific intent and action to induce infringement must be proven."   *DSU*, 471 F.3d at

13  1305.   And "evidence of mere inaction by a parent company in the face of infringement by a

14  subsidiary – i.e., a failure to stop infringement" is not sufficient.   *Tegal Corp. v. Tokyo Electron*

15  *Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001).

16         Apple claims (Mot. at 18) that SEC should have been found liable for inducing

17  infringement by its subsidiaries simply "because SEC knew or was willfully blind to the fact that

18  their sales infringed Apple's patents."[8]   But the scant evidence introduced by Apple shows

19  nothing more than passive knowledge by SEC, and the uncontradicted evidence establishes that

20  STA makes its own decisions regarding its sales.   RT 900:12-24 (Denison).   Absent evidence of

21  intentional acts of inducement, the jury's finding should not be overturned.

22

23

---

24      [8]   This directly contradicts Apple's recent argument in the Federal Circuit in another case that
     proving inducement requires evidence of "'specific intent to encourage another's infringement,'"
25   and requires evidence of culpable conduct, directed to encourage another's infringement, not
     merely that the inducer had knowledge of the direct infringers activities.'"   Brief of Defendant-
26   Appellee Apple, Inc. at *25, *Mirror Worlds, LLC v. Apple Inc.*, 2011 WL 6939526 (Fed. Cir. Nov.
     10, 2011) (Nos. 2011-1392, 2011-1393) (quoting *DSU Medical Corp.*, 471 F.3d at 1306).   The
27   Federal Circuit, adopting Apple's argument, held that "there was a lack of substantial evidence" of
     underlying direct infringement by consumers.   *Mirror Worlds, LLC v. Apple Inc.*, No. 2011-1392,
28   2012 WL 3800812, at *9 (Fed. Cir. Sept. 4, 2012).

G.      **The Court May Not Increase The Jury's Damages Award**

Contrary to Apple's suggestion (Mot. at 18-19) that the Court should increase the verdicts as to five products if the Court grants remittitur on some of the damages verdicts, the Seventh Amendment prohibits judicial increase of a jury award.   *Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935); *DePinto v. Provident Sec. Life Ins. Co*., 323 F.2d 826, 837 (9th Cir. 1963) ("Federal practice does not permit the use of additur in cases where the amount of damages is disputed."). The principle that federal courts may *decrease* the amount of a jury damages award but may not *increase* such an amount is long established.   *See Dimick*, 293 U.S. at 486 ("increase by the court is a bald addition of something which in no sense can be said to be included in the verdict").

Apple cannot avoid this clear prohibition by couching its request (Mot. at 18) as an "offset" against reductions.   Courts have long recognized that the prohibition against additur applies even if a district court has already granted remittitur.   *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1331 (2d Cir. 1990) (remanding "impermissible 'additur'" because in granting remittitur, district court factored in an amount for a dismissed claim); *Akermanis v. Sea-Land Service, Inc.*, 688 F.2d 898, 902, 907 n.1 (2d Cir. 1982) (same even if party consents); *see also Franceschi v. Hospital General San Carlos Inc*., 420 F.3d 1, 5 (1st Cir. 2005).

Nor can Apple rely upon Samsung's own expert's figures at trial.   A jury is "not bound to accept the bottom line provided by any particular damages expert."   *In re First Alliance Mortg. Co*., 471 F.3d 977, 1002 (9th Cir. 2006); *see Novak v. Gramm*, 469 F.2d 430, 432-33 (8th Cir. 1972) (rejecting argument that additur was warranted because damages were undisputed in light of expert's computations).   Samsung never conceded that its expert's figures represented a minimum for product damages, and the jury was not required to treat them as such.   Moreover, no authority permits the cherry-picking Apple advocates, where jury awards that are *lower* than Samsung's expert's profits calculations (for the five products Apple mentions) would be increased, yet jury awards that are *higher* than Samsung's expert's profits calculations (for the 18 other products that Apple ignores (DX781)) would *not* be decreased to those amounts.

The sole authority Apple cites in support of its request, *Taylor v. Green*, 868 F.2d 162, 165 (5th Cir. 1989), is inapposite.   In *Taylor*, the court recognized that it "lacked power to add to the

1   amount of the verdict for either compensatory or punitive damages," but modified the judgment to

2   award one dollar as nominal damages after the jury found the defendants liable for a civil rights

3   violation.   *Id.* at 164-65.   This narrow exception to the constitutional prohibition against additur

4   for awards of nominal damages has no bearing here.   Far from seeking additur of $1 in nominal

5   damages, Apple seeks additur of more than $155 million in compensatory damages.   The Court

6   should deny its request for such unwarranted violation of Samsung's constitutional rights.

7   **IV.     THE RECORD PROVIDES NO BASIS TO FIND SAMSUNG'S PATENTS**

8   **INVALID AS ANTICIPATED OR OBVIOUS**

9       ***The '893 Patent.***   Contrary to Apple's argument (Mot. at 19-20), a reasonable jury could

10  have found that Apple did not meet its burden to invalidate the '893 patent.   Apple's evidence

11  did not even address significant features of the '893 patent.   Apple contends that it proved

12  through the testimony of Dr. Dourish that the LG patent discloses every limitation of claim 10.

13  As Dr. Yang explained, however, the LG patent discloses only switching between "different

14  display modes," and fails to disclose the claimed switch to a "camera photographing mode" (that

15  is, the mode in which photographs are taken/captured).   RT 3666:4-3666:19.   In fact, Dr.

16  Dourish only testified that the LG patent discloses switching between two viewing modes—an

17  "image display mode" and a "*view* photograph mode" (RT 3214:17-3216:3)—which has no

18  bearing on the obviousness of switching to the camera mode, and failed to explain why it would

19  have been obvious to bookmark a last-viewed photo even while capturing new photos.

20      ***The '711 Patent.***   A reasonable jury similarly could have found that Apple did not meet

21  its burden to invalidate the '711 patent.   Apple failed to prove that the K700i was on sale and

22  publicly available in 2004.   The Court sustained Samsung's objection to Apple's introduction of

23  an affidavit from Sony (PX113) purporting to authenticate the sale of the K700i in 2004.   Dkt.

24  1774 at 5-6.   Apple provided only the last two pages, without authentication, coupled with other

25  hearsay evidence.   RT 3234:21-3237:18.   Further, Apple failed to meet its burden to prove (a)

26  that the Applet in Wong could be used for multitasking on a mobile phone as required in the '711

27  patent; (b) that the K700i only contained a single processor; and (c) that there was a motivation to

28  combine the K700i with the Wong patent.   Samsung showed that (a) neither the K700i nor the

1    Wong patent disclosed the use of an Applet for multitasking music on a single processor as the

2    '711 patent claims (RT 3242:1-7, 3667:10-25); and (b) the USPTO examiner was aware of phones

3    like the K700i that could multitask music and still issued the '711 patent.   RT 3666:20-3667:9.

4         **The '460 Patent.**   A reasonable jury likewise could have found that Apple failed to prove

5    that the '460 patent is invalid.   Apple failed to provide any prior art that disclosed one of the key

6    elements of the patent—displaying a photo in the body of an email.   As Dr. Yang explained,

7    none of Dr. Srivastava's references discloses sending an email displaying a photo, as opposed to

8    merely attaching it.   RT 3669:2-17.   Dr. Srivastava's conclusory testimony that it would have

9    been obvious for a person of skill in the art to combine the Yoshida, Suso, and Harris references,

10   and then perform the additional limitation of displaying a photo in an email, fails in light of

11   Apple's inability to find any art disclosing the display of pictures within an email.   And the '460

12   patent goes beyond even that element, and combines it with other features such as the text-only

13   email in a first email sub-mode and scrolling.

14        **The '516 Patent.**   Apple also failed to prove that the '516 patent is invalid.   Apple's only

15   prior art reference, Hatta, disclosed nothing more than the problem the '516 patent solved.   RT

16   3657:23-3658:17.   Hatta also failed to disclose scaling only the HARQ channels, a fundamental

17   element of the '516 invention.   RT 3657:16-3658:6.   Apple failed to meet its burden of producing

18   clear and convincing evidence demonstrating invalidity.

19        **The '941 Patent.**   Apple's only prior art reference here, Agarwal, was directed to an

20   entirely different situation, addressing a fixed communication facility that talks to satellites, not a

21   mobile phone network.   RT 3659:2-7.   Agarwal also failed to disclose a number of limitations in

22   claims 10 and 15, including the one bit field, the serial number, and the length indicator field.   RT

23   3659:10-21.   The jury properly rejected Apple's arguments for invalidity.

24   **V.    THE RECORD SUPPORTS THE JURY'S REJECTION OF APPLE'S CONTRACT**

25   **CLAIMS**

26        **A.    Apple Failed To Establish Samsung's ETSI Obligations Under French Law**

27        Apple failed to call any French law expert to testify about the meaning of Samsung's

28   obligations under the ETSI IPR Policy even though it expressly provides that it "shall be governed

by the laws of France" (DX613.19), and Samsung's ETSI declarations for the '516 and '941 patents state that their "construction, validity, and performance" are governed by the laws of France (PX122.024; PX122.041).   Under Ninth Circuit law, the failure to prove foreign law on which a claim depends warrants dismissal of the claim.   *Philp v. Macri*, 261 F.2d 945, 948 (9th Cir. 1958) (citing *Cuba R. Co. v. Crosby*, 222 U.S. 473 (1912)).

**B.      The Record Fails To Show Samsung's Breach Under ETSI IPR Policy**

Apple argues (Mot. at 22) for a bright-line rule that confidential patent applications must be disclosed to ETSI before the adoption of the relevant standard.   But that supposed rule lacks support in the ETSI IPR Policy (PX74); Clause 4.1 of the Policy merely requires that members "use [] reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs" and disclose IPRs that might relate to their proposals on a "bona fide" basis.   PX74.2.   ETSI has never been able to agree on a definition of "timely" (DX613.8 ("Definitions for 'Timeliness' or 'Timely' cannot be agreed . . . ."), and distinguishes between "intentional delay" and mere delay (DX613.8-9), treating only "intentional delay" as a violation of the ETSI IPR Policy (DX613.9; PX74.5).

Moreover, the uncontroverted evidence showed a course of conduct by ETSI members negating any such bright-line rule.   Major companies (such as Nokia and Motorola) do not disclose their IPR before a standard is finalized, and regularly disclose IPR later in the standard-setting process than Samsung.   RT 3644:7-3646:12 (Teece).   And Dr. Walker admitted that no company discloses its IPR at meetings where technical proposals are discussed (RT 3521:21-25); that Samsung's actions did not constitute "intentional delay" (RT 3520:21-3521:2); and that Samsung's actions were not a "Violation" of the IPR Policy (RT 3526:4-10).

The evidence in the record similarly failed to demonstrate that any disclosure duty applied to Samsung's Korean patent applications.   The IPR Policy expressly excludes "confidential information, trade secrets or the like" from the definition of "IPR" (PX74.5).   Dr. Walker admitted that confidential patent applications are not IPR under the ETSI IPR Policy (RT 3517:23-25); that the Korean patent applications were confidential at the time Apple claims they should have been disclosed (RT 3518:17-3519:2); and that he had not read the Korean applications he

1   asserted Samsung did not timely disclose (RT 3518:1-8).   Thus, no disclosure duty attached to

2   Samsung's applications, which were not IPR until they were published.[9]

3       **C.     The Record Fails To Show Causation Or Damages On Apple's Non-Disclosure**

4               **Contract Claim**

5           Even if the record warranted judgment on Samsung's purported breach of the ETSI

6   disclosure rules (and it does not), it fails to support any finding of causation or damages.   Apple

7   introduced no evidence of the French standard for causation in a contract damages case, *see Philp*,

8   261 F.2d at 948, nor did it carry its burden if California law applies.   *See* CAL. CIV. CODE § 3300

9   (requiring proximate causation); *St. Paul Fire and Marine Ins. Co. v. Am. Dynasty Surplus Lines*

10  *Ins. Co.*, 101 Cal. App. 4th 1038, 1061 (2002).   Apple introduced no credible evidence that ETSI

11  would have adopted different technologies in place of Samsung's proposals.   The evidence Apple

12  cites is insufficient to support even but-for causation.   RT at 3579:2-6 (Ordover) ("led to a choice

13  of technology *that may not have been chosen* but for its conduct") (emphasis added).   Finally,

14  the damages Apple claims for breach of contract are its technical expert fees (Mot. at 23), which

15  are not recoverable as compensatory damages.   CAL. CIV. CODE § 1717; CAL CODE CIV. PROC. §§

16  1021, 1033.5(b)(1) (expert fees are unrecoverable costs); *First Nationwide Bank v. Mountain*

17  *Cascade, Inc.*, 77 Cal. App. 4th 871, 878-89 (2000) ("must specially plead and prove their right to

18  recover expert witness fees under an appropriate provision of their contract").   Apple cites no

19  provision of the ETSI IPR Policy that authorizes expert fees, and no legal authority supporting its

20  contention that they are damages rather than costs.

21      **D.     The Record Supports The Jury's Rejection Of Apple's FRAND Licensing**

22              **Contract Claim**

23          In arguing that Samsung breached its ETSI IPR obligations by failing to make a FRAND

24  offer (Mot. at 23-24), Apple simply restates the conclusory testimony of its expert, Richard

25  Donaldson, which the jury need not have believed, and the Court must disregard.   *Reeves v.*

26  *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).   A reasonable jury could well

27  ⎯⎯⎯⎯⎯⎯⎯⎯
        [9]    While Apple asked Dr. Walker during redirect about a provision of the ETSI IPR Policy
28  regarding the confidentiality of committee proceedings (RT 3528:1-3529:14; PX74.4), that
    provision is irrelevant to whether confidential patent applications fall within the definition of IPR.

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1  accept Samsung's showing at trial that its 2.4% unilateral license offer was fair, reasonable, and

2  non-discriminatory based on licensing rates in the industry for comparable portfolios and

3  Samsung's past licensing practices.   DX630; RT 3130:10-3137:12; 3646:21-3647:25.   Apple's

4  argument that cumulative royalties would become unreasonable fails to account for the common

5  practice of patent cross-licensing.   RT 3646:22-3647:8.   Rates commonly offered and agreed to

6  in the industry are certainly relevant, as Apple itself admits by considering their cumulative effect

7  (Mot. at 24).   Additionally, California law does not recognize an "agreement to agree" such that

8  Samsung is bound to contract with Apple without good-faith negotiations.   *First Nat'l Mort. Co.*

9  *v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1065 (9th Cir. 2011) (quoting *Autry v. Republic Prods.*,

10  30 Cal.2d 144, 151-52 (1947)).   Samsung's declarations at most constitute agreements to

11  negotiate in good faith.   Such an agreement is not breached by a failure conclude a contract.

12  *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1257 (2002).   Apple failed to

13  introduce any evidence that Samsung was unwilling to negotiate in good faith; rather, the evidence

14  shows that *Apple* refused to negotiate.   RT 3647:3-8 (Teece).   Finally, Apple's FRAND contract

15  claim fails the same tests for causation and cognizable damages as its non-disclosure claim.

16  **VI.    THE RECORD SUPPORTS THE JURY'S REJECTION OF APPLE'S ANTITRUST**

17  **CLAIM**

18  **A.    Apple Failed To Introduce Competent Evidence Of An Antitrust Market**

19  The jury reasonably rejected Apple's claim that Samsung violated Section 2 of the

20  Sherman Act.   The evidence failed to establish the existence of a market, even though "[m]arket

21  definition is crucial."   *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

22  "[A] market is *the group of sellers or producers* who have the actual or potential ability to deprive

23  each other of significant levels of business."   *Id.* (quotations omitted) (emphasis added).   Apple

24  failed to present *any* evidence of any other seller or producer in any marketplace.

25  Moreover, even if it were sufficient to demonstrate a competing *technology* rather than a

26  competing *producer*, Dr. Ordover did not provide any technical or economic analysis of

27  competing technologies; rather, he relied completely on Drs. Kim and Knightly.   RT 3581:25;

28  3582:8.   Dr. Kim did not establish that any competing technologies were either technical or

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   economic alternatives to Samsung's '516 patent—i.e., that they could be implemented in the

2   UMTS standard with similar performance and similar cost.   RT 3432:2-14.   Dr. Knightly

3   similarly provided no testimony on the technical or economic exchangeability of his proposed

4   "alternatives" " to the '941 patent.   RT 3460:15-25.   Both experts' testimony was conclusory

5   and insufficient to support Apple's allegations.   *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,

6   375 F.3d 1341, 1364 (Fed. Cir. 2004) ("reliance upon technological, rather than economic,

7   substitution is therefore a fatal flaw in establishing [a] proposed market definition . . . ."), *reversed*

8   *on other grounds*, 564 U.S. 394 (2006).   Furthermore, neither expert was qualified to provide

9   economic testimony establishing an antitrust market.   RT 3326:2-4 (Kim) ("expert in wireless

10   communications and networks"); RT 3438:12-14 (Knightly) ("expert in wireless communications

11   systems and networking protocols"); *see Berlyn, Inc. v. Gazette Newspapers*, Inc., 214 F. Supp. 2d

12   530, 537 (D. Md. 2002) (excluding antitrust expert testimony from engineer whose qualifications

13   were "completely devoid of specific education, training, or experience in economics or antitrust

14   analysis").   Dr. Ordover could not rely on non-experts to conduct an analysis of the economic

15   substitutes available and his failure to perform any market analysis is fatal to Apple's motion.

16        Apple's argument that it need not provide economic data, analysis, or evidence is without

17   merit.   *Broadcom Corp. v. Qualcomm, Inc.* was concerned with the sufficiency of *pleadings*, not

18   *evidence*.   501 F.3d 297, 315 (3d Cir. 2007).   Apple also fails to meet the standard it sets forth

19   from *Hynix v. Rambus*—it provides no competent evidence of technical or economic

20   substitutability demonstrating technologies a "buyer could switch to if necessary."   *Hynix*

21   *Semiconductor Inc. v. Rambus Inc.*, 2008 WL 73689, at *3 (N.D. Cal. Jan. 5, 2008).

22       **B.**    **Apple Introduced No Evidence Of Monopoly Power**

23        Apple suggests (Mot. at 25) that it showed monopoly power based on Samsung's ability to

24   charge supracompetitive prices.   But there was no evidence that Apple paid any license royalties

25   to Samsung; to the contrary, Apple refused to accept Samsung's offer, refused to take a license to

26   Samsung's portfolio, and refused even to *negotiate* a license price.   RT 3647:3-8 (Teece); PX80.

27   The evidence also shows that Samsung has amicably licensed its UMTS portfolio to numerous

28

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   industry participants.   DX630; RT 3130:10-22.   The evidence thus can support Apple's

2   monopoly theory only if every standards-essential patent holder is a monopolist, an absurd result.

3   **C.      Apple's Theory Of Anticompetitive Conduct Fails**

4         The jury found that Samsung breached no contract regarding its IPR disclosure duties or

5   FRAND licensing obligations—the only bases of Apple's allegations of anticompetitive conduct.

6   **D.      Apple Demonstrated No Cognizable Antitrust Injury Or Damages**

7         Finally, there is no basis in the record for judgment or new trial on antitrust damages.   *See*

8   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).   Under *Noerr-*

9   *Pennington*, the right to petition the courts for redress is protected from antitrust liability; as a

10  result, litigation expenses are rarely cognizable as antitrust damages.   *See Prof'l Real Estate*

11  *Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993).   Traditionally recognized

12  exceptions are limited to fraud in obtaining a patent, *Walker Process Equip., Inc. v. Food Mach. &*

13  *Chem. Corp.*, 382 U.S. 172 (1965), or objectively baseless, "sham" litigation.   *Handgards, Inc. v.*

14  *Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979).   Apple relies on Judge Whyte's synthesis in *Hynix*,

15  made at the pleadings stage, to argue that an "anticompetitive scheme" including litigation as an

16  element could render litigation expenses antitrust damages.   *Hynix Semiconductor Inc. v.*

17  *Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007).   Here, however, Apple failed to

18  prove that Samsung engaged in an "anticompetitive scheme," and the jury rejected Apple's claim

19  that Samsung violated any FRAND commitments.   And even if Apple had proved such a scheme,

20  the law is clear that legitimate petitioning activities "do not violate the antitrust laws" whether

21  they are engaged in "standing alone or as part of a broader scheme itself violative of the Sherman

22  Act."   *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).[10]

23

24

25   ─────────────────

     [10]     *Hynix* is also factually distinguishable.   While Rambus was accused there of waging a
26   "litigation campaign to extract royalties" as part of its overall anticompetitive scheme, 527 F.
     Supp. 2d at 1098, the evidence shows that Samsung has amicably licensed its portfolio and sought
27   to avoid litigation.   PX80; DX630.   Further, Rambus withheld disclosure to JEDEC in order to
     avoid making a RAND commitment for its patents, *Hynix*, 527 F. Supp. 2d at 1088-89, while
28   Samsung made and stands by its FRAND commitment to ETSI.   *See* PX122; PX80.

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

VII.    **APPLE IS NOT ENTITLED TO $121 MILLION IN SUPPLEMENTAL DAMAGES**

Apple asks the Court to award $121 million in additional damages on eight products for the period from July 1, 2012 through the end of December.    No authority supports this request.

A.    **Apple Is Not Entitled Supplemental Damages Based On The Jury's Verdicts**

Apple arrives at its supplemental damages by multiplying an average per-sale damages amount of $50.40 by projected sales of the eight phones at issue.    Robinson Decl., ¶¶9-12. Apple calculates this $50.40 per-sale damages amount by dividing the jury's total award $1,049,343,540 for all products by the total number of units sold for those products through June 30, 2012, as calculated by Mr. Musika.    *Id.* at ¶9.    The overwhelming majority ($948 million) of the award that is the basis of the $50.40 per-sale average represents Samsung's profits.    Dkt. 1990-20 (Wagner JMOL Decl.), ¶17; Dkt. 1990-3 at 18.    Apple cites no authority, however, that permits awards of *supplemental* damages based on infringer's profits under 35 U.S.C. § 289. Patent cases awarding supplemental damages, including those cited by Apple, do so based on 35 U.S.C. § 284, which does not permit awards of infringer's profits.    *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) (awarding reasonable royalty damages on post-verdict infringing sales under § 284); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 961 (N.D. Cal. 2009) (awarding supplemental damages under § 284 based on jury's reasonable royalty rate); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2010 WL 3070370, at *4-6 (S.D. Cal. Aug. 5, 2010) (same, based on jury's award of lost profits).

While under appropriate circumstances, supplemental damages may serve "section 284's expressed interest in providing damages 'adequate to compensate for the infringement,'" *Hynix*, 609 F. Supp. 2d at 961, awards of infringer's profits under § 289 are not limited to, and go well beyond, compensating the patentee for the infringement.    *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 243 F. Supp. 500, 537 (S.D.N.Y. 1965) (award of infringer's profits would result in "a windfall out of all proportion to the 'detriment suffered by [the plaintiff]'"); *see also Braun*, 975 F.2d at 824 ("the longstanding distinction in patent law between damages and profits" precludes enhancing awards of infringer's profits under § 289).    And while § 284 expressly provides that, "[w]hen damages are not found by a jury, the court shall assess them," *see Finjan*,

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   626 F.3d at 1212, no such language is found in § 289.   *See Russello v. United States*, 464 U.S.

2   16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits

3   it in another section of the same Act, it is generally presumed that Congress acts intentionally and

4   purposely in the disparate inclusion or exclusion.").

5         Here, Apple elected to seek Samsung's profits under § 289.   The jury awarded Apple

6   $948 million in Samsung's profits under § 289, including $466 million on the eight phones at

7   issue.   Dkt. 1990-20, ¶¶12-13.   Apple may not now seek supplemental damages on these

8   phones.

9         Apple's average per-sale damages of $50.40 also reflects the jury's award of $91 million in

10  lost profits, *id.* at ¶18, which cannot serve as a basis for an award of supplemental damages either.

11  Apple's expert, Mr. Musika, calculated lost profits for only the one-to-eight-month period

12  (varying based on the I.P. at issue) during which Samsung ostensibly would be out of the market

13  while designing around the patents or trade dress at issue.   RT 2084:1-19, 2123:7-24.   The

14  longest of these design-around periods expired long ago.   Wagner Decl., ¶¶19-20, Ex. C.   For

15  that very reason, Mr. Musika did not even calculate lost profits on Samsung's Galaxy S II phones,

16  including four of the eight phones for which Apple seeks supplemental damages, which were first

17  sold in the third quarter of 2011.   *See* PX25A1.4; JX1500.   Thus, by its own expert's account,

18  Apple is not entitled to lost profits on sales made after June 30, 2012, which is the start of the

19  alleged supplemental damages period.   Moreover, the jury did not award any lost profits as to six

20  of the eight phones at issue (all but the Galaxy S 4G and Galaxy S Showcase (Dkt. 1990-20, ¶¶12-

21  13, 15)); as to those, awarding supplemental damages based on lost profits would not be consistent

22  with the verdicts.   *See Presidio*, 2010 WL 3070370, at *2 ("Supplemental damages are calculated

23  consistent with the damages awarded in the jury verdict."); *Braintree Labs., Inc. v. Nephro-Tech

24  Inc.*, 81 F. Supp. 2d 1122, 1140 (D. Kan. 2000) (denying supplemental damages for failure to

25  "accurately correspond to the damages awarded by the jury").[11]

26

27  _____

28      [11]   Apple is also not entitled to lost profits on any sales for additional reasons set forth in
     Samsung's JMOL motion.   *See* Dkt. 1990-3 at 20-22.

1    Nor is Apple entitled to supplemental damages based on a reasonable royalty.   The jury

2  did not award, and Mr. Musika did not calculate, reasonable royalty damages for any of the eight

3  phones.   Dkt. 1990-20, ¶¶12-14; PX25A1.4-5.   Furthermore, Apple failed to provide sufficient

4  evidence to establish a reasonable royalty for the eight phones.   Dkt. 1990-3 at 22-23.   For the

5  Court to award one now would violate Samsung's Seventh Amendment rights.   *Boston Scientific*

6  *Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008) ("Even if there were

7  evidence sufficient for the Court, as opposed to the jury, to determine a reasonable royalty, doing

8  so at this point would violate BSC's Seventh Amendment rights.").

9    Finally, Apple wrongly seeks nearly $42 million in supplemental damages from July 1,

10 2012 to August 24, 2012, which is the period that predates the jury's verdict, including more than

11 $22 million in supplemental damages prior to the start of trial on July 30, 2012.   Wagner Decl.,

12 ¶¶13-14.   That is error, for the jury verdict resolved Apple's claim for pre-verdict damages, *see*

13 *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994) (pre-verdict

14 damages "an improper invasion of the jury's province to determine actual damages"), and

15 certainly any claim for pre-trial supplemental damages.   *See Presidio*, 2010 WL 3070370, at *2,

16 n.1 (supplemental pre-trial damages denied where plaintiff failed to request that jury

17 proportionately increase award for "the two months not accounted in the sales data").

18    **B.    Apple's Methodology Is Flawed**

19       **1.    <u>Supplemental Damages May Not Be Based On Apple's Average Per-</u>**

20         <u>**Sale Damages Of $50.40**</u>

21    *First*, calculating average per-sale damages based on the jury's total award for all products,

22 and then applying the average to each of the eight products, awards Apple supplemental damages

23 based on amounts the jury never awarded as to any of those eight products.   For instance,

24 Apple's average includes $143,539,179 the jury awarded on the Fascinate (Dkt. 1931), but the

25 Fascinate is not one of the products for which Apple seeks supplemental damages.   Moreover,

26 the jury's total award includes $948 million in Samsung profits based on Apple's expert's

27 historical profit calculations that do not even apply to the supplemental damages period.   Apple's

28 per-sale average also includes the jury's award of $91 million in lost profits even though Apple

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   never claimed lost profits on four of the eight phones, and the jury awarded lost profits on only

2   two of them.   PX 25A1.4; Dkt. 1990-20, ¶¶12-18.   The $50.40 per-sale average thus wrongly

3   gives Apple the benefit of amounts it never sought and the jury never awarded on the products at

4   issue.

5          *Second*, Apple's per-sale average includes the impermissible award of $57,867,383 in

6   Samsung's profits for the Prevail even thought it was found to infringe only utility patents.   Dkt.

7   1990-20, ¶¶15; Dkt. 1931; *see Aro Mfg. Co. v. Convertible Top Replac. Co.*, 377 U.S. 476, 506

8   (1964).

9          *Third*, Apple's per-sale average is based on the jury's *entire* award, but at a minimum that

10  award must be reduced for the reasons explained in Samsung's JMOL motion.   *See* Dkt. 1990-3

11  at 24-26.   Thus, any calculation of supplemental damages based on average per-sale damages

12  should be made only *after* post-trial motions and the appeal have been resolved and the final pre-

13  verdict damages amounts are known with certainty.   *See Itron, Inc. v. Benghiat*, 2003 WL

14  22037710, at *16 (D. Minn. Aug. 29, 2003) (staying decision on supplemental damages until after

15  appeal to "avoid potentially unnecessary expenditures of time and money"); *Eolas Techs. Inc. v.*

16  *Microsoft Corp.*, 2004 WL 170334, at *8 (N.D. Ill. Jan. 15, 2004) (same).

17          **2.    Supplemental Damages Cannot Be Based On Apple's Inaccurate Sales**

18                 **Projections**

19          Apple's sales projections are based on the false assumption that Samsung is still selling

20  each of the eight phones at issue and will continue to do so through December 2012.   Robinson

21  Decl., ¶¶8, 11-12.   In fact, Samsung had stopped selling *five* of the eight phones in the U.S. on or

22  before October 5, 2012.   Kerstetter Decl., ¶¶6-7; Choi Decl., ¶¶4-5.   There is no basis for

23  awarding supplemental damages on products that Samsung no longer sells.[12]

24          Apple's projections are inaccurate for additional reasons.   Actual sales data shows that in

25  the third quarter of 2012, ███████████████████████████

26  ──────────────────
   [12]   Apple bases its assumption on internet print outs and invoices showing third parties
27  offering the products for sale.   Robinson Decl., ¶8, n.3.   These pages do not show sales by
   Samsung, as opposed to third-party carriers and distributors; nor do they show when Samsung sold
28  the products to those carriers and distributors.

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**

1   ██████████████ (*compare* Robinson Decl., ¶11, Ex. 3 with Kerstetter Decl., ¶¶14-15 and Ex. 2),

2   which also renders Apple's fourth quarter projections unreliable.   Wagner Decl., ¶18.   Apple's

3   projections fail even to consider the impact of real world events on the smartphone market like the

4   release of the Galaxy S III or the iPhone 5 on sales of the phones at issue, which, together with

5   other flaws, renders them inherently unreliable.   *Id.*, ¶¶16-17; *see Oiness v. Walgreen Co.*, 88

6   F.3d 1025, 1032 (Fed. Cir. 1996) (rejecting lost profits projections that "rest on faulty assumptions

7   and a lack of reliable economic testimony relevant to this market."); *Otis v. Doctor's Assocs., Inc.*,

8   1998 WL 673595, at *4 (N.D. Ill. Sept. 14, 1998) (sales estimates had no basis in reality because it

9   failed to account for "future trends").

10        Apple's projections also fail to take into account non-infringing sales and design-arounds.

11  For example, the Galaxy S II (Epic 4G Touch) and the Galaxy S II (Skyrocket) were found to

12  infringe only the D'677 patent (Dkt. 1931), which requires a black face (Lucente Decl., ¶¶12-

13  21). ████████████████████████████████████████████████████████████

14  ████████████████████████████ Kerstetter Decl., ¶¶14-15, Ex. 2. ██████████████

15  ██████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████

17  ████ *Id.*, ¶8; Choi Decl., ¶¶6, 20.   Likewise, the only design I.P. found to be infringed by the

18  Galaxy S II (T-Mobile) was the D '677 patent.   Dkt. 1931. ████████████████████

19  ██████████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████ Kersetter

21  Decl., ¶8; Choi Decl., ¶¶6, 20; Rowden Decl., ¶¶4-7.   Apple's expert's failure even to consider

22  whether ongoing sales are infringing renders her projections unreliable.[13]

23        Any calculation of supplemental damages, if there is to be one, should be based on *actual*

24  sales of infringing products made after the supplemental damages period has been established.

25  To base such a calculation on Apple's speculative and erroneous projections that include non-

26  infringing products and products that are no longer sold plainly would be error.   *See Finjan*, 626

27  _____

28  [13]   While Samsung was precluded from introducing evidence of design-arounds at trial, the Court expressly reserved Samsung's right to do so in post-trial proceedings.   Dkt. 1106 at 4:2-6.

1   F.3d at 1212 (remanding for supplemental damages based on post-judgment, pre-injunction

2   infringing sales); *Floe Int'l, Inc. v. Newman's Mfg. Inc.*, 2006 WL 2472112, at *9 (D. Minn. Aug.

3   23, 2006) (courts "routinely grant" accountings to determine supplemental damages); *Oscar*

4   *Mayer*, 869 F. Supp. at 668 (ordering "accounting of defendants' post-judgment sales").

5   **VIII.   APPLE IS NOT ENTITLED TO $50 MILLION IN PREJUDGMENT INTEREST**

6        Apple's request for $50 million in prejudgment interest is both premature and flawed.    It is

7   premature because the interest Apple seeks is based on the full amount of the jury's damages

8   award, which should be eliminated or remitted.   Dkt. 1990-3 at 24-26.   Any calculation of

9   prejudgment interest should be deferred until after the final amount of the judgment is known.

10       Apple's prejudgment interest calculation is based on the entirety of the jury's award

11  (Robinson Decl., ¶17), most of which represents infringer's profits under § 289.   Dkt. 1990-20,

12  ¶17.   Apple offers no authority that § 289 permits the recovery of prejudgment interest, and it

13  plainly does not.   Unlike § 284, where Congress expressly authorized courts to award "interest,"

14  § 289 makes no reference to awards of interest; in such situations, it is generally presumed that

15  Congress acts intentionally and purposely in the disparate inclusion or exclusion."   *Russello*, 464

16  U.S. at 23.   Moreover, "prejudgment interest may be based only on the compensatory portion of

17  the award."   *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576,

18  1580-81 (Fed. Cir. 1991).   Awards for infringer's profits under § 289 are not limited to

19  compensation.   Apple claimed lost profits on only 2 of 22 million allegedly infringing Samsung

20  sales (RT 2050:16-2051:5).   It was not required to prove that Samsung's alleged infringement

21  *caused* what Mr. Musika referred to not as compensation but   "unjust enrichment."   RT 2046:1-

22  5; 2050:16-25; 2056:5-13; 2061:1-9; *see Oiness*, 88 F.3d at 1033 ("[T]he court granted [the

23  patentee] interest for the use of its money when the [patentee's] money had not been used.   This

24  award violated the compensatory purpose of prejudgment interest.").

25       The two out-of-circuit cases Apple cites supporting its Lanham Act claim—*Gorenstein*

26  *Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431 (7th Cir. 1989), and *Am. Honda Motor Co.*

27  *v. Two Wheel Corp.*, 918 F.2d 1060 (2d Cir. 1990)—involve completely different facts.   Courts

28  in this Circuit hold that prejudgment interest is available under the Lanham Act only in

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL, NEW TRIAL AND AMENDED JUDGMENT**

counterfeiting cases under 15 U.S.C. § 1114(1)(a).   *See Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 WL 160235, at *5 (S.D. Cal. Jan. 20, 2009) (no prejudgment interest under the Lanham Act "as this case was not a counterfeit trademark case"); *CollegeNET, Inc. v. XAP Corp.*, 2007 WL 1667125, at *5 (D. Or. June 20, 2007) (accord); *Decorations for Generations, Inc. v. Home Depot USA, Inc.*, 2003 U.S. Dist. LEXIS 26608, at *36-37 (E.D. Cal. 2003) (accord).

In any case, Apple's calculations are erroneous.   Apple asserts without explanation that the prime rate "is the appropriate rate for calculating prejudgment interest here," and it seeks compounding.   Mot. at 29.   To the contrary, simple interest calculated based on the average 52-week U.S. Treasury Bill rate is clearly sufficient where, as here, "there [is] no evidence that [Apple] borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the] infringement."   *Laitram Corp. v NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997); *see also Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 132-137 (D. N.J. 2007) (discussing why Treasury Bill rate more appropriate than prime rate); *Accuscan, Inc. v. Xerox Corp.*, 2000 WL 280005, at *2 (S.D.N.Y. Mar. 15, 2000) (the 52-week Treasury bill rate "has often been employed by the Federal Circuit and other courts in awarding prejudgment interest in patent cases").   Given the size of the jury's award, the short damages period, and Apple's extraordinary cash reserves (Wagner Decl., ¶25), the Court should deny prejudgment interest or, at a minimum, use the Treasury Bill rate and no compounding.   *Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012) (denying prejudgment interest because "[t]he jury award was generous enough.").   Adjusting Apple's methodology to use the Treasury Bill rate and no compounding, and to remove all amounts reflecting Samsung's profits, results in prejudgment interest through December 31, 2012 of $248,023, and a daily rate of $489.   Wagner Decl., ¶24.[14]

---

[14]   Using Apple's interest rate and compounding and removing amounts for Samsung's profits, the amount through December 31, 2012 is $4,719,736, with a daily rate of $8,973. Wagner Decl., ¶24.

1 | DATED: October 19, 2012      QUINN EMANUEL URQUHART & SULLIVAN, LLP

2 |                              By   /s/ Susan R. Estrich
                                    Charles K. Verhoeven
3 |                                  Kathleen M. Sullivan
                                    Kevin P.B. Johnson
4 |                                  Victoria F. Maroulis
                                    Susan R. Estrich
5 |                                  Michael T. Zeller
                                    Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
6 |                                  SAMSUNG ELECTRONICS AMERICA, INC., and
                                    SAMSUNG TELECOMMUNICATIONS AMERICA, LLC
7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-31-                                    Case No. 11-cv-01846-LHK

**SAMSUNG OPPOSITION TO APPLE MOTION FOR JMOL. NEW TRIAL AND AMENDED JUDGMENT**