QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**<br><br>**Date:**  December 6, 2012<br>**Time:**  1:30 p.m.<br>**Place:**  Courtroom 8, 4th Floor<br>**Judge:**  Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.      THE COURT SHOULD NOT ISSUE A PERMANENT INJUNCTION .......................... 1

      A.      Apple Has Not Shown That It Will Suffer Irreparable Harm From
            Samsung's Use of Its Claimed Intellectual Property ................................. 2

            1.      Apple Has Not Shown Irreparable Harm From Design Patent
                Infringement ................................................................................. 3

                (a)      Apple Overstates The Importance Of Design In Purchasing ........... 4

                (b)      Apple Has Not Shown That Its Patented Designs Drive
                      Demand ................................................................................. 5

                (c)      Changes To Apple's Offerings Defeat Irreparable Harm ................ 6

            2.      Apple Has Not Shown Irreparable Harm From Trade Dress Dilution.......... 7

            3.      Apple Has Not Shown Irreparable Harm From Utility Patent
                  Infringement ................................................................................. 10

                (a)      Apple Has Not Shown That Its Features Patents Drive
                      Consumer Demand ................................................................ 10

                  (b)      "Copying" Does Not Demonstrate a Nexus .................................. 12

                  (c)      Dr. Hauser's Survey Results Do Not Show Consumer
                      Demand ................................................................................. 13

             4.      There Is No Basis For Apple's Claimed Irreparable Harm........................ 13

      B.      Apple Has Not Shown That Monetary Remedies Are Inadequate........................ 15

      C.      The Balance Of Hardships Favors Samsung........................................................ 17

      D.      An Injunction Would Not Be In The Public Interest .......................................... 18

      E.      Apple's Proposed Injunction Is Vague, Overbroad And Otherwise Improper ....... 20

      F.      Apple Should Post Security to Protect Samsung From A Wrongful
            Injunction ................................................................................................. 21

II.     THE COURT SHOULD NOT ENHANCE THE JURY'S DAMAGES VERDICTS ....... 22

      A.      Nearly $950 Million Of The Jury's Award Represents Disgorgement Of
            Infringer's Profits That Is Not Subject To Enhancement................................. 23

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1.   Products Found To Infringe Design Patents But Not Dilute Trade
     Dress .......................................................................................... 23

2.   Products Found To Infringe Design Patents And Dilute Trade Dress ........ 24

3.   Products Found To Infringe Only Utility Patents ...................................... 27

B.   Apple's Requested Enhancement Is Unavailable Under The Lanham Act ............. 27

1.   Apple's Claim Of Uncompensated Injury Is Unsupported ........................ 28

2.   Apple's Calculation Is Flawed and Arbitrary ........................................... 28

C.   Apple Is Not Entitled To Enhancement Based On Utility Patent
     Infringement ...................................................................................... 30

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4   *Accentra, Inc. v. Staples, Inc.*,
    2011 WL 7563039 (C.D. Cal. Dec. 19, 2011) ......................................................18

5

6   *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
    ___ F.3d __, 2012 WL 3636908 (Fed. Cir. Aug. 24, 2012)..................................2, 15

7   *Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008)...........................................................................17

8

9   *Advanced Cardiovascular Inc. v. Medtronic, Inc.*,
    265 F.3d 1294 (Fed. Cir. 2001)...........................................................................32

10  *Advanced Cardiovascular Sys. v. Medtronic, Inc.*,
    2008 U.S. Dist. LEXIS 88892 (N.D. Cal. Oct. 21, 2008) ......................................17

11

12  *Aero Prods. Int'l, inc. v. Intex Recreation Corp.*,
    466 F.3d 1000 (Fed. Cir. 2006).........................................................................26, 27

13  *AFL Telecommunications LLC v. SurplusEZ.com, Inc.*,
    2011 WL 5547855 (D. Ariz. 2011) .......................................................................7

14

15  *ALPO Petfoods, Inc. v. Ralston Purina Co.*,
    913 F.2d 958 (D.C. Cir. 1990) ............................................................................27

16  *ALPO Petfoods, Inc. v. Ralston Purina Co.*,
    997 F.2d 949 (D.C. Cir. 1993) ............................................................................27

17

18  *Apple, Inc. v. Motorola, Inc.*,
    __ F. Supp. 2d __, 2012 WL 2376664 (N.D. Ill. June 22, 2012)..................... passim

19  *Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012)................................................3, 5, 10, 12, 13

20

21  *Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    __ F.3d __, 2012 WL 4820601 (Fed. Cir. Oct. 11, 2012)............................... passim

22  *Apple, Inc. v. Samsung Elecs. Co.*,
    No. 12-cv-630.....................................................................................................3

23

24  *Arnott v. Am. Oil Co.*,
    609 F.2d 873 (8th Cir. 1979)......................................................................24, 25, 26

25  *Automated Merch. Sys, Inc. v. Crace Co.*,
    357 F. App'x 297 (Fed. Cir. 2009) .....................................................................15

26

27  *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, ,
    2007 WL 2790777 (W.D. Wash. 2007) ..............................................................34

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1    *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.,*
      682 F.3d 1003 (Fed. Cir. 2012) ..................................................................24, 31
2

3    *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,*
      670 F.3d 1171 (Fed. Cir. 2012), *vacated in part on other grounds,*
      682 F.3d 1003 (Fed. Cir. 2012) ......................................................................16
4

5    *Belden Techs. Inc. v. Superior Essex Comms. LP,*
      802 F. Supp. 2d 555 (D. Del. 2011) ...............................................................19

6    *Binder v. Disability Group, Inc.,*
      772 F. Supp. 2d 1172 (C.D. Cal. 2011)..........................................................28
7

8    *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
      489 U.S. 141 (1989) ..................................................................................6, 21

9    *Braun Inc. v. Dynamics Corp. of America,*
      975 F.2d 815 (Fed. Cir. 1992) ..................................................................23, 27
10

11    *Broadcom Corp. v. Qualcomm Inc.,*
      543 F.3d 683 (Fed. Cir. 2008) ........................................................................19

12    *Brooktree Corp. v. Adv. Micro Devices, Inc.,*
      977 F.2d 1555 (Fed. Cir. 1992) ......................................................................31
13

14    *Buddy Sys., Inc. v. Exer-Genie, Inc.,*
      545 F.2d 1164 (9th Cir. 1976) ........................................................................21

15    *Catalina Lighting, Inc. v. Lamps Plus, Inc.,*
      295 F.3d 1277 (Fed. Cir. 2002) .............................................................23, 26, 27
16

17    *Conceptus, Inc. v. Hologic, Inc.,*
      No. 09-2280, 2012 WL 44064 (N.D. Cal. Jan. 9, 2012) .................................16

18    *Creative Internet Advertising Corp. v. Yahoo! Inc.,*
      689 F. Supp. 2d 858 .......................................................................................31
19

20    *Cybermedia, Inc. v. Symantec Corp.,*
      19 F. Supp. 2d 1070 (N.D. Cal. 1998) ...........................................................22

21    *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
      567 F.3d 1314 (Fed. Cir. 2009) ......................................................................34
22

23    *Dexter 345 Inc. v. Cuomo,*
      663 F.3d 59 (2d Cir. 2011) .............................................................................15

24    *eBay v. MercExchange, LLC,*
      547 U.S. 388 (2006) ..........................................................................2, 5, 17, 18
25

26    *F.T.C. v. Whole Foods Market, Inc.,*
      548 F.3d 1028 (D.C. Cir. 2008) .......................................................................9

27    *Ferrari S.p.A. Esercizio Fabbriche Automobili e Corse v. McBurnie,*
      No. 86-1812, 11 U.S.P.Q. 2d 1843 (S.D. Cal. May 26, 1989)..........................9
28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

*Forest Labs., Inc. v. Ivax Pharms., Inc.*,
  501 F.3d 1263 (Fed. Cir. 2007)...................................................................................20

*Fractus, S.A. v. Samsung Elecs. Co., Ltd.*,
  No. 6:09-cv-203, 2012 WL 2505741 (E.D. Tex. June 28, 012)................................19

*Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*,
  593 F. Supp. 2d 1088 (N.D. Cal. 2009), aff'd 616 F.3d 1357 (Fed. Cir. 2010)...............31, 32

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
  2009 WL 3064800 (M.D. Fla. Sept. 22, 2009) ........................................................31

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
  49 F.3d 1551 (Fed Cir. 1995).............................................................................7, 15, 17

*Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.*,
  720 F.2d 981 (8th Cir. 1983).................................................................................9

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  609 F. Supp. 2d 951 (N.D. Cal. 2009) .................................................................7, 14

*iLOR LLC v. Google, Inc.*,
  631 F.3d 1372 1378 (Fed. Cir. 2011)....................................................................31

*I.P. Lund Trading ApS v. Kohler Co.*,
  163 F.3d 27 (1st Cir. 1998) ..................................................................................30

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008) ............................................................................16

*Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*,
  389 U.S. 64 (1967) ..............................................................................................20

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
  456 U.S. 844 (1982) ..............................................................................................8

*Judkins v. HT Window Fashions Corp.*,
  704 F. Supp. 2d 470 (W.D. Pa. 2010) ............................................................31, 32, 34

*Jurgens v. McKasy*,
  927 F.2d 1552 (Fed. Cir. 1991) ............................................................................27

*Kaufman Co., Inc. v. Lantech, Inc.*,
  926 F.2d 1136 (Fed. Cir. 1991) ............................................................................25

*Kowalski v. Mommy Gina Res.*,
  2009 WL 855976 (D. Haw. Mar. 30, 2011) .......................................................33, 34

*Kusek v. Family Circle*,
  894 F. Supp. 522 (D. Mass. 1995) ........................................................................9

*La Quinta Corp. v. Heartland Properties LLC*,
  603 F.3d 327 (6th Cir. 2010)................................................................................28

*Lee v. Dayton-Hudson,*
　838 F.2d 1186 (Fed. Cir. 1988) ................................................................................6

*Los Angeles Police Protective League v. Gates,*
　995 F.2d 1469 (9th Cir. 1993) ................................................................................8

*Magna-RX, Inc. v. Holley,*
　No. 05-3545, 2008 WL 5068977 (D. Ariz. Nov. 25, 2008) .....................................7

*Mandile v. Clark Material Handling Co.,*
　303 F. Supp. 2d 531 (D.N.J. 2004) *aff'd*, 131 F. App'x 836 (3d Cir. 2005) ...........24

*Mass Engineered Design,   Inc. v. Ergotron,*
　663 F. Supp. 2d 361 (E.D. Tex. 2009) ..........................................................32, 33, 35

*Mead Johnson & Co. v. Abbott Labs.,*
　201 F.3d 883 (7th Cir. 2000) ................................................................................22

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.,*
　244 F.3d 1365 (Fed. Cir. 2001) ..............................................................................31

*Modine Mfg. Co. v. Allen Group. Inc.,*
　917 F.2d 538 (Fed. Cir. 1990) ................................................................................31

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
　2010 WL 583960 (N.D. Cal. Feb. 16, 2010)..........................................................24

*Nichia Corp. v. Seoul Semi. Ltd.,*
　2008 WL 346416 (N.D. Cal. Feb. 7, 2008) ............................................................14

*Nintendo of Am., Inc. v. Dragon Pac. Int'l,*
　40 F.3d 1007 (9th Cir. 1994) ................................................................................29

*Nissan Motor Co. v. Nissan Computer Corp.,*
　378 F.3d 1002 (9th Cir. 2004) ................................................................................8

*Paice LLC v. Toyota Motor Corp.,*
　504 F.3d 1293 (Fed. Cir. 2007) ..............................................................................16

*Paice LLC v. Toyota Motor Corp.,*
　2006 U.S. Dist. LEXIS 61600 (E.D. Tex. Aug. 16, 2006)......................................18

*Paper Converting Machine Co. v. Magna Graphics Corp.,*
　745 F.2d 11 (Fed. Cir. 1984) ................................................................................25

*Power Integrations, Inc. v. Fairchild Semiconductor Inc.,*
　762 F. Supp. 2d 710 (D. Del. 2011) ..................................................................33, 34

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,*
　723 F. Supp. 2d 1284 (S.D. Cal. 2010) ........................................................15, 17, 19

*Read Corp. v. Portec, Inc.,*
　970 F.2d 816 (Fed Cir. 1992) ........................................................................31, 35

02198.51855/5003337.14

Case No. 11-cv-01846-LHK

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

*In re Renard,*
    451 B.R. 12 (Bankr. C.D. Cal. 2011) ...................................................................18

*Richardson v. Stanley Works, Inc.,*
    597 F.3d 1288 (Fed. Cir. 2010) ...........................................................................6

*Ricoh Co. v. Quanta Computer, Inc.,*
    2010 WL 1607908 (W.D. Wis. April 19, 2010) ..................................................16

*Ryco, Inc. v. Ag-Bag Corp.,*
    857 F.2d 1418 (Fed. Cir. 1998) .........................................................................25

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.,*
    707 F. Supp. 2d 737 (N.D. Ohio 2010) .............................................................24

*Schmidt v. Lessard,*
    414 U.S. 473 (1974) ..........................................................................................20

*In re Seagate Techs., LLC.,*
    497 F.3d 1360 (Fed. Cir. 2007) .........................................................................31

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,*
    758 F.2d 613 (Fed. Cir. 1985) ...........................................................................24

*Skydive Arizona, Inc. v. Quattrocchi,*
    673 F.3d 1105 (9th Cir. 2012) ...........................................................................27

*Soverain Software LLC v. Newegg Inc,*
    836 F. Supp. 2d 462 (E.D. Tex. 2010) ..........................................................16, 18

*Spine Solutions v. Medtronic Sofamor Danek USA,*
    620 F.3d 1305 ....................................................................................................34

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ...........................................................................18

*Taco Cabana Int'l, Inc. v. Two Pesos,*
    932 F.2d 1113 (5th Cir. 1991) ...........................................................................28

*Tate Access Floors v. Interface Architectural Res., Inc.,*
    132 F. Supp. 2d 365 (D. Md. 2001) ...................................................................19

*Techs., Inc. v. Microsoft Corp.,*
    434 F. Supp. 2d 437 (E.D. Tex. 2006) ...............................................................16

*Telecordia v. Cisco,*
    592 F. Supp. 2d 727 (D. Del. 2009) ..................................................................34

*TiVo, Inc. v. Echostar Corp.,*
    646 F.3d 869 (Fed. Cir. 2007) ...........................................................................14

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 23 (2001) ..............................................................................................9

*Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*,
   994 F. Supp. at 379-381 (W.D.N.C. 1997) ................................................27, 28

*Victor Stanley Inc. v. Creative Pipe Inc.*,
   No. 06-2662, 2011 WL 4596043 (D. Md. Sept. 30, 2011) ...........................26, 27

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
   645 F.3d 26 (1st Cir. 2011) ....................................................................................7

*W.R. Grace & Co. v. Local Union 759*,
   461 U.S. 757 (1983) .............................................................................................21

*Wilson v. Burlington Northern Railroad*,
   803 F.2d 563 (10th Cir. 1986) .............................................................................24

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
   2009 WL 113771 (E.D. Cal. 2009) ......................................................................32

## **Statutes/Rules**

15 U.S.C. § 1116(a)..............................................................................................7, 21

15 U.S.C. § 1117(a)...................................................................................................28

15 U.S.C. § 1125(c)...............................................................................................7, 30

35 U.S.C. § 283 .........................................................................................................21

35 U.S.C. § 284 ...................................................................................................23, 26

35 U.S.C. § 289 ...............................................22, 23, 24, 25, 26, 27, 31

Fed. R. Civ. P. 50 ......................................................................................................29

Fed. R. Civ. P. 65(d)(1).............................................................................................20

## **Miscellaneous**

4 *McCarthy on Trademarks and Unfair Competition* § 24:102 (4th ed.) ...........................30

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1

**Preliminary Statement**

2       Apple's motion for an injunction attempts to convert the jury's specific infringement

3  findings into a broad injunction that it can use to bully Samsung and third parties in an effort to

4  stifle lawful, fair competition.    The severe threats to fair competition created by Apple's positions

5  in this case have been widely reported.[1]    Apple now seeks, through its requested injunction, to

6  deprive consumers not only of the products that Apple has accused but also unspecified *other*

7  products that Apple will argue infringe or merely include "a feature or features not more than

8  colorably different" from features that Apple accuses.    Dkt. 1987 at 2.    The Court should reject

9  this effort to hinder competition and limit consumer choice.    *Apple Inc. v. Samsung Elecs. Co.,*

10 *Ltd.*, __ F.3d __, 2012 WL 4820601, at *3 (Fed. Cir. Oct. 11, 2012) ("*Apple II*") (requiring courts

11 to analyze whether "patentee seeks to leverage its patent for competitive gain beyond that which

12 the inventive contribution and value of the patent warrant").

13      Likewise, Apple's request for more than $500 million in *additional* damages as

14 "enhancements" shows that Apple's goal is not to protect innovation but to hinder competition.

15 The enhancements that Apple seeks should not be awarded.[2]

16

**Argument**

17 **I.    THE COURT SHOULD NOT ISSUE A PERMANENT INJUNCTION**

18      "For a permanent injunction to issue, the party requesting an injunction must demonstrate

19 _____

[1]    *See, e.g.,* Cao, "Apple co-founder Wozniak says he hates Samsung patent verdict," Financial
20 Post, Sept. 14, 2012 ("'I hate it,' Wozniak said when asked about the patent fights between Apple
   and Samsung. 'I don't think the decision of California will hold. And I don't agree with it — very
21 small things I don't really call that innovative.'"); Love, "Apple-Samsung patent fight: Fuzzy
   math," Los Angeles Times, Aug. 30, 2012; Nocera, "Has Apple Peaked?" New York Times, Sept.
22 21, 2012; Duhigg and Lorr, "The Patent Used as a Sword" New York Times, Oct. 7, 2012
   ("Former Apple employees say senior executives made a deliberate decision . . . to use patents as
23 leverage against competitors to the iPhone"); "The Colbert Report," Sept. 18, 2012; Raustiala &
   Sprigman, "Apple vs. Samsung: Is Copying Theft or Innovation?", Los Angeles Times, Sept. 4,
24 2012 ("Does anyone own the rectangle?    Should anyone own the rectangle?"); Editorial,
   "Apple's Courtroom Win Reveals Deeper Woes in U.S. Patents," Boston Globe, Sept. 4, 2012.
25 All are attached as Exhibit 1 to the concurrently-filed Declaration of John Pierce ("Pierce Decl.").
[2]    In violation of this Court's Order (Dkt. 1945), Apple has submitted over 40 pages of
26 declarations used "as a vehicle for circumventing the Court's page limits."    *Id.*    Pursuant to this
   Court's October 9, 2012 Order (Dkt. 2038) and L.R. 7-3(a), Samsung thus moves to strike the
27 following: Crouse Decl., ¶¶ 2 and 4 (from 1:13 to 1:14); Musika Decl. ¶¶ 7, 10-28, 31-60;
   Robinson Decl., ¶¶ 34-36, 38-40, and 42; Schiller Decl., ¶¶ 3-10, 13, 15 (from 5:21 to 5:26); and
28 Winer Decl., ¶¶ 7-14.

02198.51855/5003337.14

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1    that: (1) it has suffered an irreparable injury; (2) legal remedies, such as money damages are

2    inadequate compensation; (3) the balance of hardships warrants an injunction; and (4) the public

3    interest would not be disserved by an injunction." *ActiveVideo Networks, Inc. v. Verizon*

4    *Communications, Inc.*, ___ F.3d __, 2012 WL 3636908, at *21 (Fed. Cir. Aug. 24, 2012) (citing

5    *eBay*, 547 U.S. at 391).    These factors should be applied with an awareness of the "danger that

6    Apple's goal in obtaining an injunction is harassment of its bitter rival" for anticompetitive

7    purposes, *Apple, Inc. v. Motorola, Inc.*, __ F.Supp.2d __, 2012 WL 2376664, at *20 (N.D. Ill. June

8    22, 2012) (Posner, J.) ("*Motorola*"), and with the recognition that Apple has already benefitted

9    from an enormous (and excessive) verdict and that Samsung has either redesigned or stopped

10   selling virtually every product found to infringe.

11       **A.       Apple Has Not Shown That It Will Suffer Irreparable Harm From Samsung's**

12                  **Use of Its Claimed Intellectual Property**

13       Irreparable harm may not be presumed based on an infringement finding; instead, Apple

14   "must make a clear showing that it is at risk of irreparable harm, which entails showing a

15   likelihood of substantial and immediate irreparable injury."    *Apple II*, 2012 WL 4820601 at *2.

16   "But in cases such as this—where the accused product includes many features of which only one

17   (or a small minority) infringe—a finding that the patentee will be at risk of irreparable harm does

18   not alone justify injunctive relief."    *Id.*    "Rather, the patentee must also establish that the harm is

19   sufficiently related to the infringement"—which requires a showing "that a sufficiently strong

20   causal nexus relates the alleged harm to the alleged infringement."    *Id.*    "It is not enough for the

21   patentee to establish some insubstantial connection between the alleged harm and the infringement

22   and check the causal nexus requirement off the list."    *Id.* at *3.    Nor is the requirement satisfied

23   "simply because removing an allegedly infringing component would leave a particular feature,

24   application, or device less valued or inoperable."    *Id.* at *4.    "The patentee must rather show that

25   the infringing feature drives consumer demand for the accused product."    *Id.* at *3.

26

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES**
**ENHANCEMENT**

1    Apple must make this causal showing—which it fails even to acknowledge[3]—separately

2    for each item of intellectual property at issue.   *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678

3    F.3d 1314, 1323-28 (Fed. Cir. 2012) (considering separately whether Apple had proved a causal

4    nexus for '381 and D'677 patents); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-630, Dkt. 221, at

5    78-93 ("*Apple II* Dkt. 221") (considering separately whether Apple had proved a causal nexus for

6    each of four patents); *Motorola,* 2012 WL 2376664, at *19 (denying permanent injunction after

7    considering patents individually where Apple did "not indicate that infringement of *these* claims"

8    caused its claimed irreparable harms) (emphasis in original).   Apple seeks a separately

9    enforceable injunction against infringement of *each feature* of *each individual* claimed patent and

10   right, but fails to justify that request as to each claimed patent and right individually, opting

11   instead for a blunderbuss approach that relies on the alleged "combined effects of Samsung's

12   infringement and dilution" (Mot. at 9) and the sort of generalized arguments that the Federal

13   Circuit rejected in *Apple II*.   This does not meet Apple's burden.

14   **1.      Apple Has Not Shown Irreparable Harm From Design Patent**

15   **Infringement**

16   This Court held previously that Apple failed to demonstrate a nexus between Samsung's

17   alleged use of the D'677 patent and Apple's claimed harms of lost customers and lost market

18   share.   Dkt. 452 at 34.   The Federal Circuit upheld this finding and ruled it applies equally to the

19   D'087 patent.   *Apple*, 678 F.3d at 1324-27.   Both this Court and the Federal Circuit placed

20   weight on evidence that "design was not a determinative factor in consumer decisionmaking" for

21   smartphones, *id.* at 1324, and this Court explained that "even if 'design' matters to a new

22   smartphone purchaser," Apple failed to show demand was tied to the D'677, which is limited to

23   portions of a device's front face.   Dkt. 452 at 33-34; *accord Apple*, 678 F.3d at 1325-27.

24   Apple offers neither evidence nor argument to justify a different conclusion now.

25

26   [3]   Apple states that "no authority in the permanent injunction context requir[es] a causal nexus"
     between the alleged wrongdoing and the claimed irreparable harm, Mot. at 2, but makes no
27   argument that principles of causation that are fundamental when considering interim relief become
     irrelevant when permanent relief is sought.   There is no support for any such position, and it is
28   fundamentally inconsistent with *eBay* and *Apple II*.

02198.51855/5003337.14

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

Instead, it rehashes the same points this Court and the Federal Circuit already rejected. *Compare, e.g.*, Mot. at 7 (arguing for permanent injunction because "80% of iPhone purchasers identify 'attractive appearance and design'" as important and "up to 40% of customers" identified "exterior design" as a purchasing factor) *with* Dkt. 452 at 34 (this Court denying preliminary injunction as to design patent despite evidence that "design is one of six factors that influence a person's decision to buy a particular smartphone" and "82% of iPhone purchasers find 'attractive appearance/design'" important).   For the same reasons as before, and for additional reasons, Apple has not established irreparable harm tied to the design patents asserted here.

### (a)   Apple Overstates The Importance Of Design In Purchasing

*First*, while Apple argues that it advertises the design of its products and customers care about the "style" of their smartphones, Mot. at 7, the evidence shows—as the Court found before—that sales of iPhones rise with the release of new products, suggesting "the driver in consumer demand may be the novelty of the product, and not necessarily the design."   Dkt. 452 at 34.   The success of the iPhone 5, which sold five million units in the first three days, confirms this (Pierce Decl., Ex. 2), as does the fact that sales spikes occur with new products even when their design does not change.   Wagner Decl., Ex. 54.

Survey evidence equally refutes Apple's claims.   Apple's own survey demonstrated that only 1% of iPhone users and 4% of all respondents listed "design/color" as their reason for purchasing, DX 592.023, and appearance and design came in *eighth* when domestic iPhone buyers ranked features and attributes by importance, behind ease of use, service and support, trust Apple brand, quality of apps, battery life, value for price paid and quantity of apps.   Pierce Decl. Ex. 5 at APLNDC-Y0000027523; PX146.5.   The same holds true for Android purchasing decisions; in a January 2011 study, Apple recognized that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   DX572.026; DX572.082 (top three reasons domestic consumers purchase Android phones are desire to stay with current cell provider, trust in Google brand, and preference for larger screens); RT 873:6-12 (consumers desire large screens for their functionality).   Consumers purchase Android phones for many reasons unrelated to design,

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   ████████████████████████████████   DX572.027-28.   Apple overlooks the *non-design*

2   factors that affect consumer choice in these complex technology products.   "In this light, the

3   causal link between the alleged infringement and consumer demand for the [accused products] is

4   too tenuous to support a finding of irreparable harm."   *Apple II*, 2012 WL 4820601 at \*5.

5                   **(b)      Apple Has Not Shown That Its Patented Designs Drive Demand**

6           Having failed to establish that design even *generally* is a significant driver of purchasing

7   decisions, Apple provides no evidence that the *specific* design patents at issue drive consumer

8   demand, as required.   *Apple II*, 2012 WL 4820601 at \*3 ("patentee must rather show that *the*

9   *infringing feature* drives consumer demand for the accused product") (emphasis added).   Apple's

10  alleged proof that "design matters" says nothing about whether Samsung's purported *use of the*

11  *patents in suit* drives demand for Samsung's products.   As the Court has explained, mere proof

12  that "'design' matters" does *not* establish a causal link between the use of a design patent and

13  claimed harms.   Dkt. 452 at 34.   Apple offers *no* evidence establishing that critical link.

14          Because Apple's design patents cover only portions of the devices at issue, the need for

15  patent-specific proof of causation is particularly crucial.   *See eBay v. MercExchange, LLC*, 547

16  U.S. 388, 396-97 (2006) (Kennedy, J., concurring) ("When the patented invention is but a small

17  component of the product the companies seek to produce and the threat of injunction is employed

18  simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for

19  the infringement and an injunction may not serve the public interest.").   The D'677 patent covers

20  only one exterior face, and does not claim even the entirety of that face (it excludes the home

21  button, for example).   Dkt. 1893 at 59 (Instruction No. 43).   The D'087 adds a bezel, but like

22  the D'677 covers far less than the complete design for any product.   *Id.*   The D'305 relates only

23  to a single page of icons in a graphical user interface, which falls far short of the complete design

24  for any Apple product, *id.* at 60, and even Apple concedes that Samsung did not use the D'305 as

25  claimed since nearly every icon in Samsung's phones differs substantially from the D'305 icons.

26  RT 1426:14-1435:24 (Kare).   As this Court has recognized, "even if 'design' matters to a new

27  smartphone purchaser, it is not clear how much design of the front face of the phone matters to

28  that same purchaser."   Dkt. 452 at 34; *see also Apple*, 678 F.3d at 1321 (noting this Court's

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   reliance on "fact that Apple's patents do not claim the entire article of manufacture").   Apple

2   offers no evidence that Samsung's alleged use *of the designs at issue* drives demand, and fails

3   even to acknowledge the limited scope of the patents in suit.   This is fatal under *Apple II*, 2012

4   WL 4820601, at *3.

5         In any case, even if there were proof of such a causal connection, there is no proof that

6   Samsung's infringement of *protectable aspects* of Apple's designs had any effect on Apple's

7   market share.   Functional and structural components of a design are not protectable, *Richardson*

8   *v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); *Lee v. Dayton-Hudson*, 838 F.2d

9   1186, 1188 (Fed. Cir. 1988), and Apple conceded at trial that many elements of its designs fall

10   into these categories.   Dkt. 1990-03 at 5 (non-ornamental features of D'677 and D'087 include

11   form that is rectangular with curved corners; flat, clear, large screens; size that can be handheld;

12   speakers near the top; opaque borders and bezel); *id.* at 6 (non-ornamental features of D'305

13   include use of pictures and images as "visual shorthand" to communicate information, and

14   inclusion of sufficient space to allow for finger-operation).[4]   Samsung, like the rest of the world,

15   is entitled to compete with Apple by incorporating unprotected features into its products.   *Bonito*

16   *Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 159-60 (1989).   To show that an

17   injunction is needed to avoid irreparable harm, however, Apple must but cannot show that

18   Samsung's infringement of protectable features of Apple's designs is causing such harm. .

19        **(c)**     **Changes To Apple's Offerings Defeat Irreparable Harm**

20         Apple admits it no longer sells the iPhone 3 and 3GS.   Schiller Decl. ¶ 15.   Because

21   those are the only later-generation products that Apple has claimed embody the D'087 (RT

22   1022:23-1024:10 (Bressler)), Apple no longer practices that patent.   It is also clear that Apple is

23   no longer practicing the D'305.   While Apple has argued that the iPhone 4 also embodies the

24   D'305 (RT 1369:1-14), the testimony that the D'305 was designed to have the appearance of a

25   "missing row" of icons (Dkt. 1090-1 at 14; Pierce Decl. Ex. 42) and the undisputed fact that the

---

26   [4]    Indeed, at the announcement of the iPhone 5, and in subsequent television ads, Apple touted
27   the dimensions of the user interface as being optimally designed for control by the user's thumb—
     including the phone's being only four icons wide, like the D'305 patent.   *See, e.g.*, Pierce Decl.
28   Exs. 46-47.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1   iPhone 4 does *not* incorporate such a "missing row" (JX1003) shows that the iPhone 4 does not

2   practice the D'305 patent.   And it is plain that Apple's current screen differs from the D'305 in

3   many other respects.

4         That Apple no longer practices the patents undermines its claim of irreparable harm.   *See*

5   *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed Cir.

6   1995) (failure to practice an invention is "a significant factor" in the irreparable harm calculus).

7   Apple must show that *ongoing* infringement of these design patents will cause irreparable harm,

8   *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 968 (N.D. Cal. 2009), yet

9   nowhere does it explain, let alone prove, how it purportedly is losing market share from

10  infringement of patents it no longer practices.

11        As Apple has not shown that any ongoing infringement of Apple's design patents will

12  cause irreparable harm, its motion as to these patents and the Samsung phones found to infringe

13  them should be denied.[5]

14        **2.**      **Apple Has Not Shown Irreparable Harm From Trade Dress Dilution**

15        Apple's trade dress arguments fare no better.   Citing the dilution statute, Apple argues

16  that it need not show irreparable harm to obtain an injunction for dilution.   Mot. at 6.   But the

17  statute makes clear that injunctive relief is "subject to the principles of equity," 15 U.S.C. §

18  1125(c), and post-*eBay* authorities applying the similar provision for trademark infringement (15

19  U.S.C. § 1116(a)) apply equitable principles when considering injunction motions.[6]   Apple must

20  prove irreparable harm on its dilution claim, and fails to do so.

21        *First*, Apple's claims of irreparable harm from dilution fail for the reasons shown above.

22  Apple's generic claim that "design matters" to consumers makes no showing that demand is

---

23

24  [5]    The Samsung products at issue here are:   Capitvate; Continuum; Droid Charge; Epic 4G;
    Fascinate; Galaxy S i9000; Galaxy S 4G; Galaxy S II (AT&T); Galaxy S II (i9100); Galaxy S II
25  (T-Mobile); Galaxy S II (Epic 4G Touch); Galaxy S II (Skyrocket); Galaxy S Showcase (i500);
    Gem; Indulge; Infuse 4G; Mesmerize; and Vibrant.
26  [6]   *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 33-34 (1st Cir.
    2011); *AFL Telecommunications LLC v. SurplusEZ.com, Inc.*, 2011 WL 5547855, at *3 (D. Ariz.
27  2011) (rejecting presumption of irreparable harm in post-*eBay* trademark case); *Magna-RX, Inc. v.
    Holley*, No. 05-3545, 2008 WL 5068977, at *4 (D. Ariz. Nov. 25, 2008) (applying *eBay* to
28  trademark case).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

driven by its claimed trade dress, which incorporates less than the entirety of its actual products. PDX 26.18; Dkt. 75 at ¶¶ 49, 59 & Ex. 16.   Apple also has made no effort to show that the *source-identifying attributes* of its trade dress drive demand, yet those attributes are all that trade dress law protects.   *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 851 n.11 (1982).   In short, Apple offers no evidence that there is a causal connection between the alleged dilution of the source-identifying attributes of its trade dress and its claimed harms.   To the contrary, Apple's expert Dr. Winer affirmatively conceded at trial that there was no actual harm to Apple stemming from Samsung's alleged use of any Apple trade dress.[7]

*Second,* Apple no longer practices its claimed trade dress, which dooms its request for an injunction.   The only products that Apple claims once practiced the trade dress at issue—the Unregistered iPhone 3G Trade Dress and Registered iPhone Trade Dress—are the now-discontinued iPhone 3G and 3GS.   Dkt. 75 at ¶¶ 58 & 60.   Apple's discontinuance of these products eliminates any possibility of irreparable harm from dilution, for dilution requires proof that "the capacity of the [plaintiff's] mark to identify and distinguish goods or services sold by [plaintiff] has been lessened."   *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004).   Any *future* lessening of the capacity of Apple's trade dress to identify goods that Apple sells will result *from Apple's decision to no longer sell goods that use its trade dress*, not from Samsung's purported use of a similar dress.   That Apple has unilaterally decided not to sell products incorporating its trade dress is fatal to its request for prospective relief.

Recognizing this, Apple argues that its current product offerings, like the iPhone 4S, "incorporate many elements of the trade dress found to be diluted."   Mot. at 6.   This ignores that the jury found this "Unregistered Combination iPhone Trade Dress" that Apple claims its current offerings embody ***is unprotectable***.   Dkt. 1931 at 10; Dkt. 75 at ¶¶ 62, 64.   This finding is binding, *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)

---

[7]   While Winer now claims that Samsung's "similar-looking smartphones . . . mudd[y] the distinctiveness cues," "reduce[] the strength of Apple's brand," and will decrease Apple's sales, Winer Decl., ¶¶ 7, 10, he admitted at trial that he has "no empirical evidence to show that Samsung's actions have diluted Apple's brand" or that "Apple has actually lost any market share," and he could not "quantify the number of purchasers who bought a Samsung device in lieu of buying an Apple device."   RT 1534:14-23; *see also* 4/27/2012 Winer Depo. at 344 (same).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   (court sitting in equity bound by jury's findings), and it means that this unprotected trade dress

2   lawfully may be used by the world at large.   *See TrafFix Devices, Inc. v. Marketing Displays,*

3   *Inc.*, 532 U.S. 23, 29 (2001) ("Trade dress protection must subsist with the recognition that in

4   many instances there is no prohibition against copying goods and products.   In general, unless an

5   intellectual property right such as a patent or copyright protects an item, it will be subject to

6   copying.").   Any similarities between the products Apple sells now and those it has discontinued

7   are immaterial.   No injunction can prohibit Samsung or anyone else from practicing that

8   supposed trade dress.

9          That Apple offers iPhone 3G or 3GS phones as replacements, or that such products remain

10   available from third parties, does not establish that Apple will suffer irreparable harm as to a trade

11   dress that it no longer uses in the marketplace.   Apple offers no evidence and no authority that

12   offering "replacement phones" supports draconian injunctive relief.   *Ferrari S.p.A. Esercizio*

13   *Fabbriche Automobili e Corse v. McBurnie*, No. 86-1812, 11 U.S.P.Q. 2d 1843, 1848-49 (S.D.

14   Cal. May 26, 1989), on which Apple relies, addressed whether the defendant established the

15   affirmative defense of abandonment.   Apple thus erroneously conflates the substantive trademark

16   issue of abandonment with the wholly different irreparable harm requirement for an injunction,

17   which is not met here even if Apple has not abandoned trade dress.[8]   Moreover, Ferrari continued

18   to *sell* replacement parts for its discontinued line of cars and thus continued to commercially

19   exploit the mark at issue, *id*. at 1848-49, which Apple does not claim here.   Its expert, Dr. Winer,

20   ignores that Apple no longer sells the iPhone 3G or 3GS, which further renders his newly found

21   opinions both inconsistent with his prior testimony and simply not credible.   *F.T.C. v. Whole*

22   *Foods Market, Inc*., 548 F.3d 1028, 1040-41 (D.C. Cir. 2008) (discrediting expert opinion

23   inconsistent with prior report and testimony).

24          Finally, as explained below, Samsung has discontinued the only products the jury found

25

26   [8]   While Samsung need not make any such showing, Apple's discontinuance of its trade dress
     does constitute abandonment.   *See Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.,* 720 F.2d

27   981, 984 (8th Cir. 1983) (resale of returned potato chips held not sufficient use to avoid
     abandonment of trademark); *Kusek v. Family Circle*, 894 F. Supp. 522, 532-33 (D. Mass. 1995)

28   (production and sale of back issues of magazine not sufficient to avoid abandonment).

1   diluted Apple's trade dress.   This Court should not issue a permanent injunction on Apple's

2   product-configuration dilution claim after Apple has discontinued the trade dress and Samsung has

3   discontinued the products found to infringe

### 3.      Apple Has Not Shown Irreparable Harm From Utility Patent Infringement

6         Apple sought a preliminary injunction as to only one of the utility patents in this case, the

7   '381 patent.   In rejecting that request, the Court recognized that "the fact that the '381 patent is

8   but one patent utilized in the accused products . . . weighs against a finding of irreparable harm"

9   because Apple failed to show that purchasing decisions were based on the snap-back feature

10  claimed by that patent.   Dkt. 452 at 63-64.   The Federal Circuit affirmed this ruling, *Apple*, 678

11  F.3d at 1327-28, and it continues to apply now.   The Federal Circuit also recently held that Apple

12  failed to establish the requisite causal nexus for the universal search apparatus claimed in the '604

13  patent, *Apple II*, 2012 WL 4820601 at *2-5, and the same reasoning likewise forecloses a finding

14  of nexus for the two additional utility patents now at issue.   Because a smartphone or tablet is

15  "comprised of a multitude of different features," Apple's burden of proof is high.   *Apple II,* Dkt.

16  221 at 79; *see Apple II,* 2012 WL 4820601 at *2; *Motorola*, 2012 WL 2376664, at *21 ("The

17  notion that these minor-seeming infringements have cost Apple market share and consumer

18  goodwill is implausible").   As Apple offers no evidence that Samsung's use of the discrete patent

19  drives consumer demand, it has not met its burden.

### (a)      Apple Has Not Shown That Its Features Patents Drive Consumer Demand

22        Apple's patents cover narrow features.   Apple concedes that the '381 patent does not

23  cover the general concept of bounce on a touchscreen, but is limited to a bounce effect occurring

24  at the edge of the document.   RT 1782:14-1783:20, 1746:3-1747:15 (Balakrishnan).   The '163

25  patent similarly does not cover double tapping to zoom or recentering generally, but requires a

26  second gesture *after* the user is already zoomed in to recenter on another box of content.   RT

27  1840:4-14, 1878:22-1879:20 (Singh).   This patent is so limited that Apple's infringement

28  analysis was restricted to a single program (browser) on a single web page (nytimes.com), and

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   Apple's expert admitted the patent does not apply at all to "mobile websites"—web pages

2   specifically designed for viewing on a small screen device.   RT 1904:17-1907:16.   The '915

3   patent similarly does not encompass the concepts of "scrolling" or "a gesture, a scale, a zoom, or

4   detecting those."   RT 1855:25-1856:2, 1856:21-1857:1 (Singh).   It is limited to source code that

5   distinguishes between a single input point and multiple input points, and performing a scroll or

6   zoom on that basis.   RT 1857:13-24 (describing "all-important test in the claim"); 1818:10-22.

7       Apple offers no evidence that these specific, narrow features cause consumers to purchase

8   Samsung's accused products.   Instead, Apple conflates these features with general concepts like

9   "ease of use" and "fun" and argues that ease of use drives demand.   Mot. at 8.   This approach is

10  precisely what the Federal Circuit rejected in *Apple II*.   Apple can claim no patent on "fun" and

11  no monopoly over "ease of use," which is why its burden is to show that the *specific patent*

12  *features* at issue, and not their claimed overarching effects, are causally linked to Apple's alleged

13  harms.   *Apple II,* 2012 WL 4820601 at *4 ("To establish a sufficiently strong causal nexus,

14  Apple must show that consumers buy the Galaxy Nexus because it is equipped with the apparatus

15  claimed in the '604 patent – not because it can search in general, and not even because it has

16  unified search"); *Motorola*, 2012 WL 2376664, at *19 (similar: "The '263 patent in issue in this

17  litigation is not a claim to a monopoly on streaming video!").   As this Court ruled in *Apple II*—

18  rejecting Apple's claims of irreparable harm from ostensible infringement of its '647 (links for

19  structures), '721 (slide to unlock) and '172 (word recommendations)—Apple must "disaggregate

20  what 'ease of use' features drive consumer decisions" and show that the patents in issue claim

21  features that do so.   *Apple II,* Dkt. 221 at 85-93.   The iPhone has "innumerable" features, *id.* at

22  87-88, which Apple claims all "contribute to ease of use."   Pierce Decl. Ex. 11 [4/4/12 Sinclair

23  Tr. at 52:2-8].   Apple has made no showing that the specific features at issue here "would drive

24  sales if sold by [themselves]."   *Apple II*, 2012 WL 4820601 at *5.

25      Moreover, even Apple's generalized evidence that "ease of use" drives demand shows no

26  such thing.   Schiller Decl., ¶ 12.   In the survey Apple cites, ten out of thirteen factors were rated

27  "important" by iPhone consumers, making the importance of any one factor indeterminate.   PX

28  146.5.   When Apple studied what caused consumers to purchase Android devices instead of

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   iPhones, ██████████████████████. ██████   Apple also cites a

2   GravityTank study which states the iPhone is easy to use and describes zooming and scrolling as

3   "fun" and "magic," Mot. at 8 (citing PX36.24, PX36.21), but "zooming" and "scrolling" were in

4   existence well before the '915 patent and are not exclusively owned by Apple.   RT 1856:21-

5   1857:12 (Singh).   Once again, Apple misapprehends the limited nature of its monopoly under its

6   patents, and fails to provide evidence linking Samsung's purported infringement of that limited

7   monopoly right to Apple's claims of irreparable losses.[9]

8                    **(b)   "Copying" Does Not Demonstrate a Nexus**

9            Recognizing that it lacks proof of nexus, Apple claims that the accused features must drive

10  demand because Samsung "copied" them.   This Court has rejected this argument, previously

11  holding that similar evidence is "probative of the fact that both Apple and Samsung value the

12  functionality claimed by" the asserted patent, but does not "demonstrate that the [patented

13  technology] drives consumer demand."   *Apple II*, Dkt. 221 at 86.   And the Federal Circuit has

14  explained that "the relevant inquiry focuses on the objective reasons as to why the patentee lost

15  sales, not on the infringer's subjective beliefs as to why it gained them (or would be likely to gain

16  them)."   *Apple*, 678 F.3d at 1328; *see also Apple II*, 2012 WL 4820601, at *4-5.

17           Further, Apple's "copying" argument has no evidentiary support.   Apple cites PX46.66,

18  but this document calls only for a "fun visual effect," not one that is covered by '381.   Likewise,

19  PX57.15-20 relates to a multitude of visual effects that have no bearing on the '381 patent;

20  PX195.1 indicates that Samsung "did not release" the bounce algorithm discussed in that

21  document; Exhibit 31 to the Robinson Declaration contains repeated statements that "the Bounce

22  effect has no emotional impact," confirming that bouncing behavior does not inherently create

23  "fun"; PX38.24 discusses double-tap to zoom and two-level zooming, not the recentering behavior

24  covered by '163; and PX44.58 is ambiguous as to whether it even addresses the '163, and gives no

25

26  _____
    [9]   Apple also cites Mr. Schiller's broad claim that "ease of use" is important to customers,
    which is immaterial here for the same reasons above, and Apple executive Scott Forstall's
27  speculation that "[the '163 patent], I think, enables you to have a, a dramatically better experience
    browsing the web," Mot. at 8 (citing PDX10.2 and RT 751-759).   Such speculation by an Apple
28  executive does not support a request for a permanent injunction.

1   support to the claim that this patent drives sales.   Apple offers no "copying" evidence regarding

2   '915 at all.   Apple's evidence shows at most that Samsung engaged in the type of competitive

3   analysis that Apple too routinely practices.   RT 760:19-776:8 (Forstall); RT 532:8-536:25

4   (Stringer); RT 2838:9-2842:11 (Howarth).   It does not even begin to show that consumer

5   purchases were driven by the patented features.

6                      **(c)     Dr. Hauser's Survey Results Do Not Show Consumer Demand**

7                      Apple relies (Mot. at 9) on Dr. Hauser's survey results to show consumer demand for the

8   features claimed in its three utility patents.   Yet these surveys do not address consumer demand

9   for smartphones and tablets equipped with those features.   *See* Wind Decl., ¶¶13-14, 40-45, 74;

10  Sukumar Decl., ¶¶4-6, 19, filed concurrently.   In the real world, consumers choose among several

11  brands of smartphones and tablets and may ultimately choose to make no purchase at all; Dr.

12  Hauser's survey forced respondents to select a *Samsung* device and excluded the option of

13  selecting another brand—or no device at all.   Wind Decl. ¶¶14, 28-31, 33, 40-45, 66-67; Sukumar

14  Decl., ¶6.  By design, therefore, his survey could only produce estimates of *intra-brand* "price

15  premiums," i.e., amounts consumers would pay for additional features *on a Samsung device*,

16  which says nothing about whether consumers buy *Samsung* devices because they have certain

17  features.   Wind Decl., ¶¶13-14, 32-45; Sukumar Decl., ¶¶4-6, 19.   Moreover, fundamental flaws

18  in methodology biased Dr. Hauser's price premium estimates, rendering them unreliable.   Wind

19  Decl.¶¶15-17, 21-39, 46-74; Sukumar Decl. ¶¶3, 7-19.   In the real world, consumers selecting

20  between smartphones or tablets base their decisions on a subset of features, and those features do

21  *not* include those claimed in the utility patents at issue here.   *See* Erdem Decl., ¶¶16, 25-62.

22                      **4.     There Is No Basis For Apple's Claimed Irreparable Harm**

23                      Because "[t]his record does not permit the inference that the allegedly infringing features

24  of [the accused products] drive consumer demand[,]" there is no need for the Court to consider

25  "Apple's allegations of irreparable harm."   *Apple II,* 2012 WL 4820601 at *5.   But there is no

26  basis for those allegations either, particularly given that Samsung has discontinued all but three of

27  the 26 products that are the subject of Apple's motion.   By the time the Court hears this motion,

28  Samsung will only be selling ██████████████████████████

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1    ████████████████████  Decl. of Hee-chan Choi at ¶¶ 2-9 and Exh. 1; Decl. of Corey Kerstetter,

2    ¶¶2-13 and Exh. 1; Decl. of David Kim, ¶¶2-4.   None of these products was found to dilute

3    Apple's trade dress, and none was found to infringe the D'087, D'305, or the '381 patent.[10]   And

4    while the Galaxy SII (T-Mobile)—and only that product—was found to infringe the '163 and '915

5    patents, Samsung has implemented non-infringing design-arounds.   Gray Decl., ¶¶11-55; Choi

6    Decl., ¶¶13-19, 22; Decl. of Tim Rowden, ¶¶3-7.[11]   With respect to the design patents, the black

7    models of the three remaining Galaxy S II products were found to infringe only the D'677

8    patent.   Samsung is discontinuing the version of the Galaxy S II (Skyrocket) with a black front

9    mask color ██████████████████████████████████████████████

10   which does not infringe D'677.   Choi Decl., ¶20; Kerstetter Decl., ¶8, Lucente Decl., ¶¶12-

11   21.   ████████████████████████████████████   Kerstetter Decl., ¶8.   The

12   discontinuance and redesign of the accused products defeats the claim that Apple will be

13   irreparably harmed absent an injunction.   *Hynix Semi. Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951,

14   968 (N.D. Cal. 2009); *Nichia Corp. v. Seoul Semi. Ltd.*, 2008 WL 346416, at *1-2 (N.D. Cal. Feb.

15   7, 2008); *see also TiVo, Inc. v. Echostar Corp.*, 646 F.3d 869, 881 (Fed. Cir. 2007).

16   Apple's claim of harm from lost market share, downstream sales, and impact on its

17   ecosystem suffers from numerous additional flaws.   Its attempt to extend its claim of harm to

18   markets and products not covered by the patents or trade dress at issue here (Mot. at 4-5) is an

19   improper effort to "leverage its patent for competitive gain beyond that which the inventive

20   contribution and value of the patent warrant" (*Apple II*, 2012 WL 4820601 at *2), and cannot be

21   squared with *Apple II*'s causal nexus requirements.   Apple has not even attempted to (nor could

---

22   [10]   Samsung introduced a blue glow design-around to the '381 patent in early 2012.   Van Dam
23   Decl. ¶¶24-31; Choi Decl., ¶¶10-12.   The parties' experts agree that this design-around does not
     infringe.   Van Dam Decl. ¶¶32-34.

24   [11]   The new source code no longer contains "instructions for, in response to detecting the second
25   gesture, translating the structured electronic document so that the second box is substantially
     centered on the touch screen display" as required by claim 50 of the '163 patent.   Gray Decl.
26   ¶¶51-55.   Now the product either does nothing (single tap) or zooms out (double tap) in response
     to the second gesture.   *Id.* ¶52.   Likewise, the new code no longer performs the "quintessential
27   test" of "distinguishing between a single input point . . . that is interpreted as the scroll operation
     and two or more input points . . . that are interpreted as the gesture operation" as required by claim
28   8 of the '915 patent.   *Id.* ¶¶31-44; RT 1822:22-1826:22 (Singh testimony).

1   it) show that consumers' purchase decisions in other markets or for other products are driven by

2   the specific features of its patents or trade dress.   Moreover, Apple and Samsung do not compete

3   in a two-player smartphone or tablet market, but rather face competition from other manufacturers,

4   which collectively enjoy a 43.4% share of the North American smartphone market.   Wagner

5   Decl., ¶146.   Apple also overstates the competition between the parties by ignoring the fact that

6   they use different operating systems, which is a critical factor for consumers, by relying on market

7   share figures for all of Samsung's products instead of the market share for the specific products

8   Apple seeks to enjoin, and by wrongly assuming that the purchasing behavior of late adopters of

9   smartphone technology will be the same as early adopters.   *Id.*, ¶¶120-23, 160-181.   Apple's

10  strong iPad and iPhone 4, 4S, and 5 sales also refute any claim of lost market share due to the

11  alleged infringement by the accused products.   *Id.*, ¶¶124-144.

12          **B.          Apple Has Not Shown That Monetary Remedies Are Inadequate**

13          Apple bears the burden of providing at least "[s]ome evidence and reasoned analysis" to

14  demonstrate the inadequacy of monetary damages to compensate its alleged harms.   *Apple II*,

15  Dkt. 221 at 73; *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d

16  1284, 1338 (S.D. Cal. 2010).   There is no presumption that money damages would be inadequate.

17  *High Tech Med. Instrumentation*, 49 F.3d at 1557.   Neither lost market share nor damage to

18  goodwill is necessarily irreparable.   *Automated Merch. Sys, Inc. v. Crace Co.*, 357 F. App'x 297,

19  301 (Fed. Cir. 2009) (lost market share not necessarily irreparable); *Dexter 345 Inc. v. Cuomo*, 663

20  F.3d 59, 63 (2d Cir. 2011) (same, loss of goodwill).   Nevertheless, Apple has not shown that any

21  injuries it will suffer cannot be fully compensated by monetary remedies, or that Samsung is

22  unable to satisfy a money judgment.   *Motorola,* 2012 WL 2376664 at *14 ("There is no question

23  of collectability in this case, a common reason why a damages remedy is inadequate.   Both

24  parties have deep pockets"); *ActiveVideo*, 2012 WL 3636908, at *24 (similar).

25          At Apple's urging, the jury awarded Apple monetary remedies and calculated specific

26  amounts.   Because Apple has discontinued products embodying its patents and because Samsung

27  will have ceased any infringing activity by the time that the Court rules on this motion, no further

28  relief will be necessary.   But even if further relief were proper, the jury's award confirms that any

-15-
Case No. 11-cv-01846-LHK
**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

purported future harms can be remedied through a monetary award.   *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1380-81 (Fed. Cir. 2008) (no irreparable harm where jury awarded damages requested by patentee); *Conceptus, Inc. v. Hologic, Inc.*, No. 09-2280, 2012 WL 44064 at * 2 (N.D. Cal. Jan. 9, 2012) (jury damages award shows damages reparable).

Apple has not shown, in particular, why any harm could not be compensated by an ongoing royalty, which courts increasingly have ordered "as a substitute for an injunction against infringement."   *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1192 (Fed. Cir. 2012) (proper to award ongoing royalty instead of permanent injunction), *vacated in part on other grounds*, 682 F.3d 1003 (Fed. Cir. 2012); *Motorola*, 2012 WL 2376664, at *16 - 17 (similar); *Ricoh Co. v. Quanta Computer, Inc.*, 2010 WL 1607908, at *4 (W.D. Wis. April 19, 2010) ("plaintiff has failed to show that the public interest would be better served through an injunction rather than a compulsory license.").   An ongoing royalty in lieu of injunction is especially appropriate in a case like this where the patented features are but a small component of the overall product.   *See* Pierce Decl., Ex. 44 ("more than 250,000 active patents relevant to today's smartphones").   This Court has previously "take[n] to heart Justice Kennedy's admonition that '[w]hen the patented invention is but a small component of the product the companies seek to produce . . . legal damages may well be sufficient to compensate for the infringement,'" and should do so here as well.   *Apple II*, Dkt. 221 at 98 (quoting *eBay*); *see Motorola*, 2012 WL 2376664 at *16-17 (discussing Justice Kennedy's admonition as applied to smartphone case).[12]   Rather than impose an injunction, the Court should, at most, direct the parties to negotiate an ongoing royalty.   *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007) ("In most cases, where the district court determines that a permanent injunction is not warranted, the district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty.").

---

[12]   *See also Soverain Software LLC v. Newegg Inc*, 836 F. Supp. 2d 462, 482 (E.D. Tex. 2010) (denying injunction where infringing feature was small part of defendant's system); *Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 441, 2006 (E.D. Tex. 2006) (similar).

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1    Apple asserts that denial of an injunction would amount to a compulsory license (Mot. at

2    10), but that is not true in light of Samsung's discontinuance of its products and design-arounds.

3    Moreover, an injunction may not issue merely because a patentee refuses to offer a license.

4    *Presidio*, 723 F. Supp. 2d at 1338-39.   And in any event, Apple *has* shown a willingness to

5    license both utility and design patents in the past, including patents at issue in this litigation and

6    similar ones.   For example, ███████████████████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████

9    ███   Apple's Boris Teksler confirmed that Apple licenses its intellectual property, including the

10   technology and designs that Apple considers a "unique user experience I.P."   RT 1957: 3-9;

11   1972:18-24.   And prior to filing this suit, Apple offered Samsung a "royalty-bearing license" to

12   manufacture the products that Apple said "embrace[d] and imitate[d] Apple's iPhone archetype,"

13   including "Android-based full touch screen devices" that Apple now seeks to enjoin.   DX 586 at

14   17; *see* RT 1971:4-1972:17 (Apple offered to "provide Samsung with a number of options for

15   obtaining a cost-effective license to our patent portfolio," without carving out any patents that it

16   was refusing to license).   This evidence weighs against any finding that monetary relief is

17   inadequate, for it demonstrates that Apple is willing to forego exclusivity in exchange for

18   monetary compensation.   *Apple II*, Dkt. 221 at 96; Dkt. 452 at 64 (Apple's licenses of '381 patent

19   weigh against injunction); *see Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir.

20   2008), *High Tech Med.*, 49 F.3d at 1557; *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 2008

21   U.S. Dist. LEXIS 88892 (N.D. Cal. Oct. 21, 2008).

22        **C.    The Balance Of Hardships Favors Samsung**

23        "An injunction that imposes greater costs on the defendant than it confers benefits on the

24   plaintiff reduces net social welfare.   That is the insight behind the 'balance of hardships'

25   component of the *eBay* standard for injunctive relief in patent cases."   *Motorola*, 2012 WL

26   2376664, at *21.   Apple will not suffer in the absence of an injunction.   It no longer offers the

27   iPhone 3G and 3GS, and it does not argue that its recent sales of the iPhone 5 were negatively

28   affected by Samsung's limited sales of the accused products.   To the extent that there is any

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1   ongoing infringement, the availability of a reasonable royalty weighs against Apple.   *See*

2   *Motorola*, 2012 WL 2376664, at *19 (availability of royalty "is germane to the 'balance of

3   hardships' component of *eBay*'s test for whether to grant an injunction").

4        In contrast, an injunction would impose severe hardship on Samsung by disrupting its

5   relationships with carriers who may be selling pre-existing stock and with customers who may still

6   be using the accused products, *see Paice LLC v. Toyota Motor Corp.*, 2006 U.S. Dist. LEXIS

7   61600, at *16-17 (E.D. Tex. Aug. 16, 2006) ("enjoining [defendant's] sales will likely interrupt

8   not only Defendants' business but that of related businesses, such as dealers and suppliers . . .

9   [and] will damage their reputation"), and by creating paralyzing uncertainty as to the future steps

10   Apple might take seeking to enforce an injunction against as yet unaccused products and features.

11   *See Motorola*, 2012 WL 2376664, at *20 (relying on possibility that "Apple will sue Motorola

12   alleging that the redesigned phones still infringe its patents, just as it is [doing in the ITC]"); *see*

13   *also Accentra, Inc. v. Staples, Inc.*, 2011 WL 7563039, at *30 (C.D. Cal. Dec. 19, 2011) (rejecting

14   "position that an injunction should issue because [it] will have little negative impact on" the

15   defendant if the defendant does not "infringe in the future" because *eBay* rejects such a 'better-

16   safe-than-sorry' approach.").[13]   In fact, Apple previously abused the short-lived Galaxy Tab 10.1

17   preliminary injunction by falsely claiming without legal basis that third-party carriers were bound

18   by it and that it extended to wholly unspecified tablet computer products.   *See* Dkt. 1943 at 2.

19        **D.**    **An Injunction Would Not Be In The Public Interest**

20        Apple bears the burden of showing that an injunction is in the public interest, *Stormans,*

21   *Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009), a burden that is especially great because the

22   first three *eBay* factors favor Samsung.   *Soverain*, 836 F. Supp. 2d at 482.   Both "the harm that

23   an injunction might cause to consumers who can no longer buy preferred products because their

24   sales have been enjoined, and the cost to the judiciary as well as to the parties of administering an

25   injunction" should be considered.   *Motorola*, 2012 WL 2376664, at *20.   The only public

---

26   [13]    Apple asserts that the jury's finding of willful infringement obviates the need to balance

27   hardships.   Mot. at 10.   It cites no post-*eBay* case that has so held.   More recent decision are to the contrary.   *See, e.g., In re Renard*, 451 B.R. 12, 23 (Bankr. C.D. Cal. 2011) (rejecting

28   argument against balancing of hardships in case involving intentional conduct).

Case No. 11-cv-01846-LHK

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   interest cited by Apple—preserving rights of patent holders—cannot alone justify injunctive relief

2   because such interests "are always present in a patent case!"   *Presidio*, 723 F. Supp. 2d at 1339;

3   *Belden Techs. Inc. v. Superior Essex Comms. LP*, 802 F. Supp. 2d 555, 579 (D. Del. 2011) (same).

4         While Apple identifies no compelling public interest favoring an injunction here, the

5   public has an overwhelming interest in *preventing* one company from having a monopoly over

6   basic elements of smartphone design such as a rectangular shape with rounded corners.   Even

7   though the patents at issue are but "small component[s] of the product" and Apple no longer

8   practices the only trade dress the jury found protectable, an injunction would have a significant

9   impact on competition in the smartphone market.   *Motorola*, 2012 WL 2376664, at *20 ("the

10   harm that an injunction might cause to consumers who can no longer buy preferred products

11   because their sales have been enjoined" weighs against entry of injunction).   This litigation is

12   part of Apple's campaign against makers of Android devices, which provide free, opensource

13   mobile software that any developer can use to create applications for mobile devices and that any

14   handset manufacturer can install on a device.   Dkt. 179-44 at 5.   This Court should not deprive

15   consumers of choice by granting the broad, vague injunction that Apple seeks.

16         An injunction would also be disruptive for third parties, such as suppliers, retailers,

17   carriers, and their customers.   *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir.

18   2008); *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, No. 6:09-cv-203, 2012 WL 2505741 at *45

19   (E.D. Tex. June 28, 012).   Indeed, Apple's inability to supply all consumers with the iPhone

20   strongly weighs against the broad injunction it seeks.   *See Tate Access Floors v. Interface*

21   *Architectural Res., Inc.*, 132 F. Supp. 2d 365, 377 (D. Md. 2001) (considering patentee's

22   manufacturing capacity).   Demand for the iPhone 5 exceeded initial supply, and labor disputes at

23   Foxconn, Apple's supplier, caused at least two production stoppages in September and October.[14]

24   These shortages are likely to continue as Apple releases the iPhone 5 to additional countries

25   (including 70 in December alone) and carriers around the world; and the Wall Street Journal

26   ─────────────────

27   [14]   *See* Poonima Gupta & Jennifer Saba, Apple Sells Over 5 Million iPhone 5, Supply
    Constraints Loom, Reuters, Sept. 24, 2012 (Pierce Decl., Ex. 16); Foxconn Labor Disputes
    Disrupt iPhone Output for 2nd Time, Bloomberg News, Oct. 7, 2012 (Pierce Decl., Ex. 17).

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1    reports that NAND memory shortages may lead to further constraints on Apple's output.[15]   The

2    public interest will be harmed by diminishing consumer access to competing smartphones under

3    these circumstances.

4        Finally, the broad and vaguely worded injunction that Apple requests would also impose a

5    significant administrative burden on this Court, for there can be no doubt that Apple will

6    aggressively seek to extend it to non-accused products.   This further weighs against Apple's

7    motion.   *See Motorola*, 2012 WL 2376664, at *20 (denying motion for permanent injunction in

8    part based on "the cost to the judiciary as well as to the parties of administering an injunction").

9        **E.    Apple's Proposed Injunction Is Vague, Overbroad And Otherwise Improper**

10       No injunction should issue; if any will, the language that Apple seeks should be rejected.

11   Rule 65(d) requires that an injunction "(A) state the reasons why it issued; (B) state its terms

12   specifically; and (C) describe in reasonable detail—not by referring to the complaint or other

13   document—the act or acts restrained or required."   Fed. R. Civ. P. 65(d)(1); *Schmidt v. Lessard*,

14   414 U.S. 473, 476 (1974).   Apple's broad, vague injunction violates these principles.

15       *First*, the language of Apple's proposed injunction is improper because it extends generally

16   to unspecified violations of the law and would broadly and vaguely cover unidentified "other

17   products."   Dkt. 1987 at 2.[16]   This language is an invitation to endless litigation, against the

18   backdrop of the "deadly" threat of the contempt power, as well as to overbroad, anti-competitive

19   threats by Apple against third parties as Apple sought to do in the past.   *Int'l Longshoremen's*

20   *Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); *see Forest Labs., Inc. v. Ivax*

21   *Pharms., Inc.,* 501 F.3d 1263, 1272 (Fed. Cir. 2007) (finding injunction overbroad and modifying

22   it "to delete the language 'any products that infringe the '712 patent, including . . . .'").

23       *Second*, the injunction proposed by Apple wrongly extends to a "feature or features not

24   more than colorably different" from "any of the infringing feature or features in any of the

---

25

26   [15]    Yun-Hee Kim, Why There May Be an iPhone 5 Shortage, Wall Street Journal, Oct. 8, 2012 (Pierce Decl., Ex. 18).

27   [16]    Apple's proposed injunction improperly lists the "Galaxy S," the "Galaxy S II (i9000)" and the "Infuse," when the correct product names are Galaxy S (i9000), Galaxy S II (i9100) and Infuse 4G respectively.

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   Infringing Products."   Dkt. 1987 at 2.   Apple's focus on specific "features" of its design patents

2   ignores that many of those features are functional and structural, and therefore are not protectable.

3   *See supra* Section I.A; Dkt. 1990-3 at 7-10.   Apple cannot obtain an injunction against use of

4   features that are free for the world to use.   *Bonito Boats*, 489 U.S. at 159-60.   Moreover,

5   Apple's demand that Samsung be prohibited from using undefined "features" is inconsistent with

6   Apple's refrain during trial that the test is whether an accused product shares the same overall

7   visual impression as the patented designs.   RT 1348:8-17; 1374:6-1375:15; 1376:19-1377:8.

8        The jury made particular findings, rejecting, for example, Apple's allegations that specific

9   products infringed the D'087 and D'677 patents or else diluted Apple's trade dress.   Dkt. 1931.

10  The "colorably different" standard that Apple seeks to rely on would allow Apple to seek

11  contempt violations for the very sorts of "features," or equivalent ones, that the jury itself found to

12  be non-infringing or non-diluting.   Apple's request for a broad injunction against unspecified

13  products and unprotected features should be denied.   *See Motorola*, 2012 WL 2376664, at *20

14  ("The danger that Apple's goal in obtaining an injunction is harassment of its bitter rival, requiring

15  particularly watchful supervision by the court should it issue an injunction, is suggested by the fact

16  that . . . it wants to forego [a royalty revenue stream] in favor of imposing costs and litigation

17  burdens on its adversary").

18       **F.     Apple Should Post Security to Protect Samsung From A Wrongful Injunction**

19       Apple should be required to post a bond to protect Samsung's interests if any injunction is

20  overturned on appeal.   The Court has power to grant an injunction upon "the principles of equity

21  and upon such terms as the court may deem reasonable."   15 U.S.C. § 1116(a), 35 U.S.C. § 283.

22  An injunction bond is necessary to protect Samsung from the financial consequences of Apple's

23  sweeping proposed injunction, should Samsung be wrongfully enjoined.   If a bond does not issue

24  now, Samsung may have no recourse for the damages it sustains from a wrongful injunction,

25  making the requirement of a substantial bond critical.   *W.R. Grace & Co. v. Local Union 759*,

26  461 U.S. 757, 770 (1983); *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1167 (9th Cir.

27  1976).

28       When setting the amount of an injunction bond, district courts should err on the high side.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1    *Apple II,* Dkt. 221 at 100 (citing *Mead Johnson & Co. v. Abbott Labs.,* 201 F.3d 883, 888 (7th Cir.

2    2000)).    Courts may consider (1) lost profits, (2) out-of pocket expenses related to promotion of

3    the defendant's infringing products; (3) damage to the defendant's reputation; and (4) expenses

4    associated with the recall of the infringing products.    *Cybermedia, Inc. v. Symantec Corp.*, 19 F.

5    Supp. 2d 1070, 1079-80 (N.D. Cal. 1998).    Samsung estimates that over the course of roughly

6    11.2 months—the median time from docketing to disposition in 2011 in the Federal Circuit-- ███

7    ████████████████████████████████████████████████████████████████

8    ███████████████████████████████     ███████████████████

9    ████████   ███████   ██████████        (http://www.cafc.uscourts.gov/images/stories/the-

10   court/statistics/Median_Disp_Time_table_02-11.pdf).    Accordingly, in the event the court issues

11   an injunction covering these non-infringing products, a bond of at least $32,550,725 should be

12   required.    Wagner Decl., ¶¶229-232.

13   **II.        THE COURT SHOULD NOT ENHANCE THE JURY'S DAMAGES VERDICTS**

14        As Samsung explained in its JMOL, the jury's damages award already goes too far; that

15   award should be reduced, not enhanced—much less by the $535 million Apple seeks.    There is

16   no dispute that an award of infringer's profits under Section 289 cannot be enhanced, and it is

17   apparent that the vast bulk of the jury's award—a full $948,278,061—reflects disgorgement of

18   Samsung's profits (whether from products found to infringe Apple's design patents, or in the case

19   of the Galaxy Prevail, a utility patent that cannot be the basis for such an award).    *See* Dkt. 1990-

20   20 (Wagner JMOL Decl.) at ¶ 17.    Thus, only $101,145,479 of the total award could even

21   conceivably be subject to enhancement, making Apple's request for *more than five times* that

22   plainly excessive.

23        As a matter of law, Apple has failed to establish the prerequisites for enhancement:

24   Apple has not offered clear and convincing evidence of willfulness, as required, nor demonstrated

25   that additional damages would recompense Apple for any actual harm not accounted for by the

26   jury.    To the extent enhancement is a matter of discretion, the Court should exercise its discretion

27   not to enhance the jury's award any further.

28

A.      **Nearly $950 Million Of The Jury's Award Represents Disgorgement Of Infringer's Profits That Is Not Subject To Enhancement**

Under 35 U.S.C. § 289, infringement of a design patent is subject to a special measure of damages—infringer's profits—not otherwise available in a patent case.   The trade-off for a plaintiff's claiming infringer's profits is relinquishing any right to seek enhancements.   35 U.S.C. § 289 (patentee "shall not twice recover the profit made from the infringement"); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1290-92 (Fed. Cir. 2002) (election to recover defendant's profits under Section 289 bars any further recovery on same sales); *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 283-84 (Fed. Cir. 1992) (Section 289 "insure[s] that a patentee not recover both the profit of an infringer and some additional damage remedy from the same infringer").   Apple concedes that the Court "cannot treble amounts for which the sole basis for the award was disgorgement of Samsung's profits under section 289."   Mot. at 28. In this case, fully ***$948,278,061*** of the award represents supposed infringer's profits, awarded per Apple's requested jury instruction and verdict form.   Dkt. 1694 at 147; Dkt. 1903 at 72; Dkt. 1990-3 at 17-18.

1.      **Products Found To Infringe Design Patents But Not Dilute Trade Dress**

The jury found that 11 Samsung products infringe one or more design patents and do not dilute Apple's trade dress.[17]   As to each of these, the jury awarded exactly 40% of Apple's calculation of Samsung's profits, which shows that the jury's awards for these products were made under Section 289.   *See* Dkt. 1990-20, ¶ 20.   Indeed, the jury could have arrived at these awards *only* pursuant to Section 289, for the jury's awards for these products – which together total $599,859,395 (*id.*)—exceed the amount Apple requested under Section 284 for its own alleged lost profits.   *See* PX25A1.4 (seeking $333,365,673 in lost profits for the 11 products found to infringe only Apple's design patents).   Therefore, ***$599,859,395*** of the jury's award cannot be enhanced as a matter of law—a fact that Apple appears not to dispute.

---

[17]    The Captivate, Continuum, Droid Charge, Epic 4G, Galaxy S II (AT&T), Galaxy S II (T-Mobile), Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), Gem, Indulge, and Infuse 4G.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1

2.       **Products Found To Infringe Design Patents And Dilute Trade Dress**

2          The jury awarded damages on five products found to infringe one or more design patents

3    and also dilute Apple's trade dress.[18]   As to each, the jury awarded Apple the same 40% of

4    Apple's calculation of Samsung's profits (a total of $290,551,283), *plus* the amount of lost profits

5    claimed by Apple (a total of $91,132,279), for a total award of $381,683,562.    Dkt. 1990-20, ¶13.

6    Apple argues for enhancement of the total award on these products by positing that the jury

7    awarded these damages under the Lanham Act.   Mot. at 25.   But none of these damages, and

8    certainly not the ***$290,551,283*** representing infringer's profits, may be enhanced.

9          *First,* Apple is wrong that Samsung "bear[s] the burden of any uncertainty" as to whether

10   the jury's award was made under Section 289 or the Lanham Act.   Mot. at 30.   "The

11   jurisprudence . . . uniformly requires *clear and convincing evidence* in support of increased

12   damages," and it is the moving party that must produce such evidence.   *Shatterproof Glass Corp.*

13   *v. Libbey-Owens Ford Co.*, 758 F.2d 613, 628 (Fed. Cir. 1985); *see Bard Peripheral Vascular,*

14   *Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012); *Monolithic Power Sys., Inc. v.*

15   *O2 Micro Int'l Ltd.*, 2010 WL 583960 (N.D. Cal. Feb. 16, 2010); *Saint-Gobain Autover USA, Inc.*

16   *v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 753 (N.D. Ohio 2010), as corrected (Apr. 13,

17   2010).   Apple offers no authority for its claim that ambiguity in a jury verdict permits special

18   judicial enhancement, and the law is to the contrary.   *See Arnott v. Am. Oil Co.*, 609 F.2d 873,

19   888-89 (8th Cir. 1979) ("[i]t would be purely speculative to assume that the entire general verdict

20   of $100,000 was awarded as damages resulting from violation of the antitrust laws" that were

21   subject to trebling rather that other violations that were not); *Wilson v. Burlington Northern*

22   *Railroad*, 803 F.2d 563, 567–68 (10th Cir. 1986) (McKay, J., concurring) ("Since we are here

23   faced with a general verdict not properly segregated into its component parts [of actual economic

24   loss and non-economic damages], that task is now impossible.   Plaintiff failed to timely present

25   the matter based on sound testimony and proper instructions or interrogatories and must bear the

26   burden of that failure."); *Mandile v. Clark Material Handling Co.*, 303 F. Supp. 2d 531, 536

27
_____

28   [18]      The Fascinate, Galaxy S 4G, Galaxy S Showcase (i500), Mesmerize, and Vibrant.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1    (D.N.J. 2004) *aff'd*, 131 F. App'x 836 (3d Cir. 2005) (rejecting prejudgment interest where

2    plaintiff did not request discrete verdicts segregating losses).[19]

3         *Second,* Apple alone is to blame for any ambiguity in the jury's verdict.   Samsung

4    requested a verdict form that would have required more specificity in the jury's findings; Apple

5    tactically resisted Samsung's proposed verdict form as "way too specific" and requested a single

6    damages figure for each product.   RT 3852:24-3856:10; *see also* RT 3764:1-6, 3813:14-3814:25

7    (noting Apple's failure to elect a single damages theory).   As the party bearing the burden here,

8    and having created the claimed ambiguity, Apple cannot now use that claimed ambiguity to

9    circumvent the statutory bar against enhancements of infringer's profits.

10        *Third,* there in fact is no ambiguity here, as the jury uniformly awarded 40% of Samsung's

11   profits as calculated by Mr. Musika as to every product found to infringe a design patent, whether

12   those products were found only to infringe design patents or both infringe design patents and also

13   dilute trade dress.   As to the products that diluted trade dress, the jury then *added* sums reflecting

14   *Apple's lost profits*.   *See* Dkt. 1990-20, ¶¶12-13.   Only that $91,132,279 consisting of Apple's

15   profits might under any circumstances (and not these) fall outside Section 289's ban on

16   enhancement for infringers' profits.

17        *Finally,* having elected to seek parallel recoveries on the same bucket of products pursuant

18   to Section 289 and the Lanham Act, Apple cannot seek enhancement of *any* portion of the

19   resulting award, including the $91,132,279.   The Federal Circuit has rebuffed efforts by patent-

20   holders who try to recover beyond the limits of Section 289 by claiming parallel intellectual

---

21   [19]   Ignoring on point authority, Apple cites three cases that address uncertainty in the dollar
22   amount of the underlying damages award, not whether the award is eligible for enhancement.
     *E.g., Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991) ("Any doubts
23   regarding the calculatory precision of the damage amount must be resolved against the infringer.")
     (emphasis added); *see also Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1998)
24   (damages award cannot be "speculative" but need not be calculated with "unerring precision").
     Such cases speak to a district court's exercise of discretion in arriving at statutorily authorized
25   damages "as a matter of just and reasonable inference," without resort to "mere speculation or
     guess," *Paper Converting Machine Co. v. Magna Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir.
26   1984).   None of these cases even purports to address the distinct legal issues involved in
     enforcing the statutory line separating those damages eligible for special enhancement from those
27   that are ineligible, let alone ambiguity that was sown by the party seeking enhancement.   *Cf.*
     *Arnott*, 609 F.2d at 888-89 (reversing trebling where general verdict did not differentiate antitrust
28   theory from others that might have grounded the award).

                                                    -25-                    Case No. 11-cv-01846-LHK

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1   property rights have been violated based on "the same set of operative facts."   *Aero Prods. Int'l,*

2   *Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016-17 (Fed. Cir. 2006) (plaintiff who recovers

3   under the Patent Act cannot further recover under the Lanham Act); *see Catalina Lighting*, 295

4   F.3d at 1290-1292 (profits recovery under Section 289 bars further recovery on the same sales

5   despite overlapping protection of utility as well as design patents).   *Catalina Lighting* and *Aero*

6   *Products* prohibit Apple from obtaining any enhancement atop the award it has collected under

7   Section 289 by pursuing parallel recovery under the Lanham Act based on the same core of

8   operative facts.[20]   Although Apple protests that Samsung's "infringement caused more than one

9   type of harm to Apple" (Mot. at 30), the same was true in both *Catalina Lighting* and *Aero*

10  *Products*.

11        The only case Apple cites in support of its demand for parallel enhancement is an

12  unpublished district court decision, enhancing a Lanham Act award that ostensibly overlapped

13  with a far smaller amount of profits separately awarded under Section 289.   *Victor Stanley Inc. v.*

14  *Creative Pipe Inc.*, No. 06-2662, 2011 WL 4596043 (D. Md. Sept. 30, 2011).   After a bench trial,

15  the court awarded $1,150,750 in Lanham Act profits for "reverse passing off," which the court

16  enhanced by 50%.   *Id.* at *11-12.   The court also awarded, but did not enhance, $35,137 in

17  profits under Section 289 for design patent infringement.   *Id.* at *20.   Notably, the Lanham Act

18  violation and design patent infringement in *Victor Stanley* involved entirely distinct facts—

19  defendant's passing off plaintiff's technical drawings as its own, and defendant's sale of a product

20  infringing plaintiff's design patent.   Thus, the theories of recovery in *Victor Stanley* were not

---

[20]   Still more unsupportable is Apple's suggestion that its same requested enhancement might follow *under the Patent Act*, Section 284.   Despite its plain statement specifying that it "requests an enhancement of $135 million under the Patent Act and $400 million under the Lanham Act," (Mot. at 11), with the former computation limited to products found to infringe utility patents not subject to Section 289, Apple then shifts gears to argue the Court could "justify the full $535 million enhancement based on the Patent Act alone." (Mot. at 29.)   Without offering any explanation, much less plausible explanation, of how more than $10 million of the amount the jury awarded for infringement of Apple's patents might arise outside Section 289, Apple is barreling headlong into Section 289's prohibition against enhancement.   Moreover, assuming *arguendo* that overlapping theories of recovery pose ambiguity in the verdict form, that alone would rule out enhancement.   *See Arnott*. 609 F.2d at 888-89.   Finally, Apple is at best attempting to do precisely what *Catalina Lighting* and *Aero Products* foreclose—namely, to circumvent the limits Section 289 imposes upon recovery by invoking Section 284 and separate intellectual property rights in parallel.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1  coextensive and interchangeable, as is true here and was true in *Catalina Lighting* and *Aero*

2  *Products*.   Perhaps as a result, *Victor Stanley* addressed no objection and offered no analysis with

3  respect to Section 289's prohibition, *Braun*, *Catalina Lighting*, or *Aero Products*.   In sum, *Victor*

4  *Stanley* does not illuminate, much less commend, a path towards Apple's requested enhancement.

### 3.   Products Found To Infringe Only Utility Patents

6       The jury found that seven Samsung products infringe only utility patents.   For one of

7  those, the Galaxy Prevail, the jury awarded $57,867,383—exactly 40% of Samsung's profits for

8  that product, as calculated by Mr. Musika.   Dkt. 1990-3 at 18, 26; PX25A1.4; Dkt. 1990-20 at

9  ¶15.   This award (comprising all but some $10 million of the total award for products found to

10 infringe utility patents) undoubtedly represents Samsung's profits, because *Apple's claimed lost*

11 *profits* for the Prevail as calculated by Mr. Musika were limited to *$8.5 million*.   PX25A1.4.

12 But disgorgement of an infringer's profits is peculiar to Section 289; the award must be remitted,

13 and it certainly is not subject to enhancement.

### B.   Apple's Requested Enhancement Is Unavailable Under The Lanham Act

15      Even apart from the bar on Apple's efforts at dual recovery, the award of $91,132,279 in

16 Apple's lost profits (for trade dress dilution) under the Lanham Act should be further reduced by

17 $70,034,295 (*see* Dkt. 1990-3 at 17-18), leaving $20,097,984 in Apple's lost profits as the

18 maximum potentially eligible for enhancement under the Lanham Act.   Even this amount,

19 however, should not be enhanced.   Because the Lanham Act "expressly forbid[s] the award of

20 damages to punish an infringer," any enhancement must be limited "to ensur[ing] that the plaintiff

21 receives compensation."   *Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1108 (9th Cir.

22 2012) (citation omitted); *see also Jurgens v. McKasy,* 927 F.2d 1552, 1564 (Fed. Cir. 1991);

23 *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 970 (D.C. Cir. 1990).   Only if the

24 requested enhancement serves to compensate Apple for actual harm in excess of the jury's award

25 might it be permissible.   *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 997 F.2d 949, 955 (D.C.

26 Cir. 1993); *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. at 379-81

27 (W.D.N.C. 1997).   Here, Apple makes no such showing.

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

### 1.    Apple's Claim Of Uncompensated Injury Is Unsupported

Apple maintains that the jury's award is too parsimonious to compensate it for what it characterizes as incalculable injuries to its brand image and lost downstream sales of later generation iPhones and tag-along products.   Mot. at 6, 26.   As to brand dilution, Apple identifies no evidence that would justify finding the jury's calculation inadequate.[21]   *See Vanwyk*, 994 F. Supp. at 380-381.   As to any lost sales, Apple argues those "cannot be quantified with reasonable certainty," Mot. at 5, and does not even try to quantify them, for instance, by specifying what its claimed profit margins would have been.   *See id.*   In fact, far from undercompensating, the jury's award already gives Apple a windfall, as discussed in Samsung's JMOL.   First, the jury awarded all of Samsung's profits, without apportionment, although there was no evidence suggesting that the entire sales value of Samsung's products is attributable to their outer casings and GUI.   *See* Dkt. 1990-3 at 18.   Second, the jury failed to deduct Samsung's expenses, resulting in an award that exceeds the actual profits Samsung derived from its allegedly diluting sales.   *Id.* at 19.   Third, the jury based its award on an incorrect notice date.[22]   It follows that the award of damages for trade-dress dilution should be reduced rather than enhanced.

### 2.    Apple's Calculation Is Flawed and Arbitrary

Even if the verdict had not properly compensated Apple, Apple makes no showing that its

---

[21]    This absence of proof distinguishes this case from those cited by Apple, where a plaintiff provided substantial, concrete evidence of its actual harm, thereby enabling determination that such harm exceeded the damages awarded.   *See Binder v. Disability Group*, 772 F. Supp. 2d 1172, 1181-84 (C.D. Cal. 2011) (surveys and testimony from consumers showing deception); *Taco Cabana*, 932 F.2d at 1126-1127 (expert's damages model valuing preempted competition at $4.4 million).   Similarly, in *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 343 (6th Cir. 2010), the award of royalties was limited by the parties' license agreement, affording no prospect of recompense for the plaintiff's lost "ability to control its brand image."   By contrast, Apple's expert expressly disclaimed any evidence that Samsung's conduct actually harmed Apple's brand or caused any other loss to Apple, RT 1534:14-17; 1534:22-1535:11, and his post-trial declaration identifies harm merely "[a]s a conceptual matter" at best.   Dkt. 1986, ¶ 8.
[22]    As discussed in Samsung's motion for judgment as a matter of law, the record does not show that Samsung had actual notice of Apple's trade dress or selected its designs in order to willfully trade on its goodwill.   *See* Dkt. 2013 at 15-16, 23-25.   Because willfulness is prerequisite to any recovery for dilution under Section 1117(a), enhancement requires a heightened showing of willfulness—otherwise, there would be no distinction between the proof required to award regular damages and that required to enhance them.   Samsung has already submitted, and respectfully reiterates, that requisite proof of willfulness is lacking.   *See id.*

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1   requested enhancements are calibrated to accomplish that purpose.   Apple's new expert, Ms.

2   Robinson, opines that, but for Samsung's unlawful conduct, Apple would have sold 2.1 million

3   additional units, but neither Apple nor Ms. Robinson attempts to show that these units were not

4   *already accounted for* in the jury's verdict awarding damages for the *13.9 million units* that

5   Robinson says Samsung would not have sold absent the infringement or dilution.   Just as Mr.

6   Musika acknowledged the need to ensure against any double counting (RT 2048:21-2050:15), the

7   Lanham Act bars "double recovery" of "both plaintiff's lost profits and disgorgement of

8   defendant's profits" on the same sale.   *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007,

9   1010 (9th Cir. 1994).   Yet Apple's new expert does not even attempt to account for this problem.

10   In addition, Ms. Robinson's request for additional lost profits further compounds the flaws

11   identified in Samsung's Rule 50 motion.   Dkt. 1990-3 at 20-25.   *First*, Ms. Robinson arrived at

12   her calculations using IDC market-share data that includes *all* Samsung smartphones, without

13   attempting to identify what percentage of Samsung's increased market share is attributable

14   specifically to the diluting products.   Robinson Decl. at ¶ 27.   *Second*, Ms. Robinson simply

15   assumes that, but for the diluting phones, Samsung's market share would have remained at 5%,

16   without addressing—much less denying—that *non*-infringing products could predictably make

17   their own contributions to Samsung's increase in market share.   *Compare id.* at ¶ 26 *with, e.g.*,

18   Dkt. 1931 at 5-7, 10-11 (products found non-infringing).   *Third*, Ms. Robinson calculates that

19   Apple would have made an additional 2.1 million sales based on the quantity sold of *all*

20   "infringing and diluting" products, not just the diluting phones, *see* Robinson Decl. at ¶ 27, but

21   fails to explain why lost sales caused by *other* products—including 11 products explicitly found

22   *not* to dilute Apple trade dress—should support Lanham Act enhancement for these five.

23   Finally, Ms. Robinson ignores key factors that Mr. Musika recognized as critical to proper

24   analysis. She does not account for constraints on Apple's capacity to make additional sales.   *Cf.*

25   RT 2085:10-2086:3.   Her *Mor-Flo* analysis does not account for consumer's carrier preferences

26   and the unavailability of Apple's products through numerous carriers during the relevant time

27   period.   *Cf.* RT 2096:24-2097:5; 2123:5-18.   Nor does she heed Federal Circuit precedent

28   requiring that she account for the possibility of design-arounds.   *Cf.* RT 2123:17-24; PX25.2

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES ENHANCEMENT**

1    (limiting lost-profits analysis to 8 months).[23]

2          As numerous courts and commentators have observed, proper application of the Lanham

3    Act "becomes complicated when the concept of blurring is applied to competing similar products."

4    *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 49 (1st Cir. 1998); 4 *McCarthy on Trademarks*

5    *and Unfair Competition* § 24:102 (4th ed.) (noting complications "if antidilution law was applied

6    to give exclusive rights to a product shape").    Contrary to Apple's assertion that its alleged injury

7    "is exactly why Congress authorized judicial enhancement for trade dress dilution," *see* Dkt. 1982-

8    1 at 26, there is "doubt that Congress intended the reach of the dilution concept under the FTDA to

9    extend this far . . ."   *I.P. Lund*, 163 F.3d at 50.    Product design is particularly far removed from

10   the purpose of anti-dilution laws, especially where a direct competitor allegedly diluted without

11   creating likelihood of confusion.    *Id.* at 48.    To enhance a monetary award for trade-dress

12   dilution of such magnitude and novelty, atop a parallel monetary award for design-patent

13   infringement, based on little more than pure speculation, would exceed anything Congress

14   contemplated in Section 1125(c).

15         **C.      Apple Is Not Entitled To Enhancement Based On Utility Patent Infringement**

16          Although Apple claims some $68 million as the baseline for potential utility patent

17   enhancement, most of this consists of the $57,867,383 that the jury awarded specifically for the

18   Galaxy Prevail, which represents Samsung's profits and is not subject to enhancement.    Of the

19   jury's award for the products found to infringe only utility patents, $10,013,200 might arguably be

20   subject to enhancement under Section 284—$9,180,124 of which represents Apple's royalties for

21   the Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform, and $833,076 of which

22   represents the award for the Galaxy Tab 10.1 (WiFi).    *See* Dkt. 1931 at 16.    Samsung has

23   already noted the absence of record support for finding willfulness that is prerequisite to any

24

25   [23]  In an effort to find some alternative basis for its request, Apple conjures other amounts totaling
     $400 million.   Mot. at 26-27.   For example, $400 million represents 40% of Mr. Denison's
26   estimation of STA's total annual advertising budget; and $400 million roughly approximates
     Apple's advertising expenditures over four arbitrarily chosen years.   Neither fact has anything to
27   do with the proper measure of any allegedly uncompensated harm to Apple, nor does Apple's
     reference to Samsung's gross profits and revenues—across *all* Samsung subsidiaries and *all*
28   Samsung products, many of which are not in any way implicated here.

02198.51855/5003337.14
**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

enhancement.  *See* Dkt 1988 at 8-10; Dkt. 1990-3 at 15-16.  This includes a threshold showing that Samsung's infringement was *objectively* willful, *In re Seagate Techs., LLC.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), a demanding standard that excludes instances where "a 'reasonable litigant could realistically expect' [its] defenses to succeed." *Bard Peripheral Vascular v. WL Gore & Associates*, 682 F.3d 1003 (Fed. Cir. 2012); *see iLOR LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011).  Here, Apple fails to show that Samsung's defenses to Apple's patents, particularly as to the utility patents' likely invalidity, were unreasonable.

Moreover, because Section 284 speaks in discretionary terms, finding willfulness is necessary but not sufficient to enhance.  *See Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed Cir. 1992) (finding of willfulness "does not mandate that damages be enhanced, much less mandate treble damages."); *Modine Mfg. Co. v. Allen Group Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). Accordingly, courts frequently deny enhancement despite finding willfulness.  *See, e.g., Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 593 F. Supp. 2d 1088 (N.D. Cal. 2009), aff'd 616 F.3d 1357 (Fed. Cir. 2010); *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 977 F.2d 1555, 1581-82 (Fed. Cir. 1992); *Modine Mfg*, 917 F.2d at 543.   The "paramount determination" is the "egregiousness of the defendant's conduct based on all the facts and circumstances." *Read*, 970 F.2d at 826.

***Supposed Evidence of Copying***.  Apple's purported evidence of deliberate copying amounts to far less than it claims.  *See Creative Internet Advertising Corp. v. Yahoo! Inc.*, 689 F. Supp. 2d 858, 863-64. (E.D. Tex. 2010) (evidence supporting strong inference of copying still did not demonstrate deliberate copying under *Read*); *Judkins v. HT Window Fashions Corp.*, 704 F. Supp. 2d 470 (W.D. Pa. 2010); *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2009 WL 3064800, at *6 (M.D. Fla. Sept. 22, 2009).  Most of the documents cited by Apple show comparative analysis or benchmarking of competitor products that is typical of all companies, including Apple.  *See, e.g.,* DX687; DX717.   Certain documents, like PX34, are not even from the business unit that designs and develops Samsung's products; rather, they come from the division that manufactures components for Apple, and merely identify iPhone-related issues that may affect manufacturing trends.   And much of what Apple cites as evidence of alleged copying

1   relates to Apple's hardware and GUI design patents (Mot. at 16-17 (citing PX3, PX6, PX40, RT

2   2530:10-2531)); awards relating to these patents are not subject to enhancement.   Finally, to the

3   extent design-related documents may be relevant, whereas the jury was not permitted to consider

4   evidence that Samsung's smartphone designs date back to 2006, before the iPhone's

5   announcement and release (Dkt. 1970 at 11-18 (detailing Samsung's prior smartphone

6   development efforts); Dkt. 1970-26 (Samsung's Korean Patent No. 30-0452985, covering

7   independently developed designs)), the Court should account for these documents as undermining

8   the copying allegations.   *See Advanced Cardiovascular Inc. v. Medtronic, Inc.*, 265 F.3d 1294,

9   1311 (Fed. Cir. 2001); *Judkins*, 704 F. Supp. 2d at 483.

10          ***Absence of Notice/Bad Faith*.**   With the possible exception of the '381 patent, Samsung

11  did not receive any specific notice of the patents and accused products before Apple filed suit.

12  PX52; RT 1964:20-1968:11 (Mr. Teksler admitting that other utility and design patents and trade

13  dress were not identified or mentioned in Apple's 2010 presentation to Samsung).   Even as to the

14  '381 patent, the parties' first meeting took place months——not years——before suit was initiated.

15  These facts differentiate this case from those enhancing damages against infringers who were

16  "repeatedly notified that their products infringed on Plaintiff's patents" but "continued to engage

17  in their tortious conduct over the course of a number of years."   *Wordtech Sys., Inc. v. Integrated*

18  *Network Solutions, Inc.*, 2009 WL 113771, at *2 (E.D. Cal. 2009).

19          Apple is wrong to accuse Samsung of litigation misconduct as a basis for enhancement.

20  Mot. at 19-22.   The alleged copying documents Apple cites did not correlate with the patents and

21  features at issue here, and were produced beginning in December 2011 and all turned over before

22  discovery closed.   *See* Dkt. 1992 at ¶7.   Apple's argument that Samsung was sanctioned ignores

23  this Court's finding that "discovery sanctions are litigation related conduct, which does not serve

24  as the main basis for a willful infringement finding."   Dkt. 1267 at 5.   Apple also ignores that

25  Judge Grewal made no finding that Samsung acted in bad faith, and in two instances expressly

26  found that Apple *failed* to show bad faith.   Dkt. 880 at 15; Dkt. 898 at 6.   Prior imposition of

27  sanctions, unadorned by any finding of bad faith, should not be "double counted" as grounds for

28  still more and harsher sanctions.   *See Funai*, 593 F. Supp. 2d at 1115; *Mass Engineered Design,*

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1    *Inc. v. Ergotron*, 663 F. Supp. 2d 361, 391-92 (E.D. Tex. 2009).   Similarly, in relying on

2    Samsung's release of excluded evidence, Apple ignores that (i) the Court has already denied

3    Apple's motion for sanctions based on this very conduct (RT 574:4-9); (ii) the Court polled the

4    jurors and concluded that the publication of evidence had no effect (RT 578:10-590:16); and (iii)

5    in all events, the evidence in question had previously been publicly filed and discussed at length in

6    open court and resulting media coverage.   Dkt. 1533.[24]

7         Apple also ignores the many instances where it was found to have delayed and obstructed

8    Samsung's discovery, necessitating multiple successful motions to compel (Dkt. Nos. 233, 292,

9    398, 536, 673 at 15-23, 821), motions to enforce (Dkt. Nos. 673 at 23-28, 867, 1213), and motions

10   for sanctions (Dkt. Nos. 1144, 1213).   *Kowalski*, 2009 WL 855976, at *2 (factor is neutral where

11   both parties were responsible for impeding discovery).   Indeed, this Court on multiple occasions

12   criticized Apple for litigation misconduct.   *See, e.g.,* Dkt 404, Tr. 63:13-22 (Court criticizing

13   Apple counsel's instructions to witnesses during depositions); Dkt. 1164, Tr. 145:7-146:15; 147:4-

14   20 (expressing frustration with Apple's refusal to schedule depositions requested by Samsung);

15   148:3-10 (expressing frustration at how Apple "stiffed [Samsung] on transcripts")).   In addition,

16   Apple obstructed discovery by █████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████     *See* Pierce Decl. Exs. 22-44; Dkt. 2042

20   at 3, n.1.

21        ***Samsung's Finances Do Not Warrant Enhancement.***   While a company's finances can

22   be mitigating to avoid crippling its business, the opposite is not true.   *Power Integrations, Inc. v.*

23   *Fairchild Semiconductor Inc.*, 762 F. Supp. 2d 710, 722 (D. Del. 2011) (citing cases).

24        <u>*Samsung Had Reasonable Defenses.*</u>   This Court repeatedly noted that neither party was

25

26   [24]   As to witness lists, the Court ordered *both* parties, not just Samsung, to reduce the number of
     witnesses on their respective lists to 50 live witnesses and 45 deposition designations.   Dkt. 1267
27   at 2; Dkt. 1272 (July 18 Tr.) at 18:13-23 (describing both parties' lists as "not realistic").   Nor
     was Samsung's Appendix to its revised witness list improper.   The document's title makes clear
28   that it was intended simply to preserve appellate recourse.   Dkt. 1278 at 20.

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1   assured of victory and both faced exposure.   *See* RT 2660:25-2661:15 (Court noting there were

2   "risks here for both sides").   This Court similarly recognized that Samsung's infringement of the

3   D'087 and D'677 patents was a "close question."   Dkt. 452, at 26, 27, 37, 38.   The jury found

4   that a claimed Apple trade dress was not protectable, two of Apple's four asserted trade dresses

5   were not diluted or infringed, the D'889 patent was not infringed; and the majority of accused

6   Samsung products did not infringe the D'087.   Dkt. 1931 at 6, 7, 10.   The persistence of

7   substantial questions of validity, infringement and enforceability through trial indicates closeness

8   that weighs against enhancement.   *See Judkins*, 704 F. Supp. 2d at 481; *Telecordia v. Cisco*, 592

9   F. Supp. 2d 727 (D. Del. 2009).   Nor do the jury's ultimate findings of infringement make

10   Samsung's defenses unreasonable.   *See, e.g., DePuy Spine, Inc. v. Medtronic Sofamor Danek,*

11   *Inc*., 567 F.3d 1314, 1337 (Fed. Cir. 2009) ("The mere fact that the jury ultimately found

12   equivalence does not diminish the difficulty of their task . . . ."); *Spine Solutions v. Medtronic*

13   *Sofamor Danek USA*, 620 F.3d 1305, 1319-20 (granting JMOL of no willfulness based on a

14   "reasonable" obviousness defense, despite "substantial evidence to support the jury's implicit

15   finding" of nonobviousness).

16       ***The Duration Of Infringement Does Not Support Enhancement***.   Apple argues that

17   Samsung has been infringing for "more than two years since being notified of its infringement"

18   (Mot. at 22), but that claim is based solely on the '381 patent, which was first presented some

19   months (August 2010), not years, before suit was filed.   PX 52.14.   And as Apple is aware,

20   Samsung has long since designed around the '381 and '163 patents.   Apple's other patents were

21   not asserted until this litigation began in April 2011.   Moreover, Apple did not accuse the Galaxy

22   SII devices of infringing Apple's design patents until March 4, 2012.   *See* Dkt. 1185-3, at 10-13.

23       ***Samsung's Intent and Remedial Action Weigh Against Enhancement.***   Samsung will by

24   the time of the hearing have either designed around or discontinued the products found to infringe.

25   Prior to the verdict, Samsung believed in good faith that Apple's patents were invalid and not

26   infringed.   *See Kowalski*, 2009 WL 855976, at *3.   Only a specific intent to harm Apple,

27   beyond simply gaining market share through vigorous competition, would support enhancement.

28   *See Power Integrations*, 762 F. Supp. 2d at 724; *Baden Sports, Inc. v. Kabushiki Kaisha Molten,*

-34-                                    Case No. 11-cv-01846-LHK

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**

1  2007 WL 2790777 (W.D. Wash. 2007), at *5.   This requires showing that Samsung had a

2  "specific intent to steal" from Apple as opposed to a "sincere belief" in "a legitimate argument that

3  [it] was acting lawfully."   *Mass Engineered*, 633 F. Supp. 2d at 391.   Yet the documents Apple

4  cites show nothing more than robust competition or, as even Apple puts it, desire to "go head to

5  head with Apple in [the smartphone] market."   Mot. at 23.

6        ***Samsung Has Not Attempted To Conceal Misconduct***.   Apple's claim that Samsung

7  attempted to conceal its misconduct does not square with its repeated claims that Samsung has

8  "flooded the market" with "millions" of copycat products.   Mot. at 13, 25.   Moreover, Samsung

9  obtained its own smartphone and tablet-design patents in full public view, citing certain Apple

10  patents in applying for its design patents and obtaining patents over them.   Dkt. 1970 at 8-10.

11  Whatever Apple's complaints about Samsung's conduct, that conduct was anything but concealed.

12        In sum, the *Read* factors, if reached, weigh against any enhancement as to the $10,013,200

13  that is even arguably eligible for enhancement under the Patent Act.   And the remaining

14  $91,132,279 of the award that Apple might try to spotlight as an eligible baseline for

15  enhancement, specifically under the Lanham Act, is of a piece—either insusceptible to or else

16  undeserving of any enhancement for the reasons stated above.

17

18  DATED: October 19, 2012              QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
19
                                         By   */s/ Susan R. Estrich*
20                                             Charles K. Verhoeven
                                               Kathleen M. Sullivan
21                                             Kevin P.B. Johnson
                                               Victoria F. Maroulis
22                                             Susan R. Estrich
                                               Michael T. Zeller
23                                             Attorneys for SAMSUNG ELECTRONICS CO.,
                                               LTD., SAMSUNG ELECTRONICS AMERICA,
24                                             INC., and SAMSUNG
                                               TELECOMMUNICATIONS AMERICA, LLC
25

26

27

28

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION AND DAMAGES
ENHANCEMENT**