# EXHIBIT 8

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6  CORPORATION,                )
                               )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,       )
                               )  JULY 31, 2012
8          VS.                 )
                               )  VOLUME 2
9  SAMSUNG ELECTRONICS CO.,    )
   LTD., A KOREAN BUSINESS     )  PAGES 283-555
10 ENTITY; SAMSUNG             )
   ELECTRONICS AMERICA,        )
11 INC., A NEW YORK            )
   CORPORATION; SAMSUNG        )
12 TELECOMMUNICATIONS          )
   AMERICA, LLC, A DELAWARE    )
13 LIMITED LIABILITY           )
   COMPANY,                    )
14                             )
                DEFENDANTS.    )
15 _____

16           TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
24

25

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF        MORRISON & FOERSTER
     APPLE:                   BY:  HAROLD J. MCELHINNY
3                                  MICHAEL A. JACOBS
                                   RACHEL KREVANS
4                            425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
     APPLE:                   HALE AND DORR
7                             BY:  WILLIAM F. LEE
                              60 STATE STREET
8                             BOSTON, MASSACHUSETTS  02109

9                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
12                        BY:  CHARLES K. VERHOEVEN
                          50 CALIFORNIA STREET, 22ND FLOOR
13                        SAN FRANCISCO, CALIFORNIA  94111

14                        BY:  VICTORIA F. MAROULIS
                               KEVIN P.B. JOHNSON
15                        555 TWIN DOLPHIN DRIVE
                          SUITE 560
16                        REDWOOD SHORES, CALIFORNIA  94065

17                        BY:  MICHAEL T. ZELLER
                               WILLIAM C. PRICE
18                             JOHN B. QUINN
                          865 SOUTH FIGUEROA STREET
19                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
20

21

22

23

24

25
```

1

2                           INDEX OF PROCEEDINGS

3

4     OPENING STATEMENT BY MR. MCELHINNY        P. 304

5     OPENING STATEMENT BY MR. LEE              P. 353

6     OPENING STATEMENT BY MR. VERHOEVEN        P. 380

7

8

9

10

11

12

13                           INDEX OF WITNESSES

14    PLAINTIFF'S

15    **CHRISTOPHER STRINGER**
             DIRECT EXAM BY MR. MCELHINNY        P. 469
16           CROSS-EXAM BY MR. VERHOEVEN         P. 511
             REDIRECT EXAM BY MR. MCELHINNY      P. 537
17

18    **PHILIP SCHILLER**
             DIRECT EXAM BY MR. MCELHINNY        P. 541

19

20

21

22

23

24

25

1    Q    DO YOU REMEMBER, SIR, LOOKING AT SOFT BUTTONS

2    AT THE BOTTOM OF THE SAMSUNG PHONES?

3              MR. MCELHINNY:  OBJECTION, YOUR HONOR.

4    THAT'S NOT A QUESTION.  HE'S ARGUING WITH THE

5    WITNESS.

6              THE COURT:  OVERRULED.

7              YOU CAN ANSWER.

8              THE WITNESS:  COULD YOU REPEAT THE

9    QUESTION, PLEASE?

10   BY MR. VERHOEVEN:

11   Q    DO YOU REMEMBER, YES OR NO, WHEN YOU LOOKED AT

12   THE SAMSUNG PHONES TO FORM THE OPINION AND THE

13   TESTIMONY THAT YOU GAVE BEFORE THE JURY, WHETHER

14   THEY HAD FOUR SOFT BUTTONS AT THE BOTTOM?

15   A    I HAVE SEEN MANY SAMSUNG PHONES.  I DO NOT

16   REMEMBER THE EXACT DETAILS OF SOFTWARE BUTTONS.

17   Q    SO YOU DON'T REMEMBER WHETHER THEY HAD BUTTONS

18   ON THE BOTTOM?

19   A    I -- LIKE I SAID, I'VE SEEN MANY SAMSUNG

20   PHONES.  I DO NOT KNOW THAT THEY'RE ALL THE SAME IN

21   TERMS OF THEIR BUTTON ARRANGEMENTS AT THE BOTTOM.

22   Q    HAVE YOU EVER SEEN ANY SAMSUNG PHONES THAT

23   HAVE FOUR SOFT BUTTONS AT THE BOTTOM?

24   A    I WOULD LIKE YOU TO SHOW ME THE PHONE.  THIS

25   COULD BE A TRICK QUESTION.  I DON'T KNOW.

1    Q    I'M JUST ASKING YOU, HAVE YOU EVER SEEN A

2    SAMSUNG PHONE THAT HAD FOUR SOFT BUTTONS AT THE

3    BOTTOM?

4    A    IF YOU SHOWED ME THE PHONE, I COULD DETERMINE

5    THAT THERE ARE FOUR SOFT BUTTONS.

6    Q    THAT'S NOT MY QUESTION, SIR.  MY QUESTION IS,

7    HAVE YOU SEEN A SAMSUNG PHONE THAT HAD FOUR SOFT

8    BUTTONS AT THE BOTTOM?

9    A    I CANNOT RECALL IT IT'S THREE OR FOUR.  I

10   CANNOT RECALL.

11   Q    HAVE YOU SEEN ANY PHONE, ANY SMARTPHONE THAT

12   HAD FOUR SOFT BUTTONS AT THE BOTTOM?

13   A    QUITE POSSIBLY.

14   Q    DID YOU THINK THEY WERE BEAUTIFUL?

15   A    CLEARLY THEY DID NOT STICK IN MY MIND.

16   Q    NOW, YOU TESTIFIED ON DIRECT ABOUT BUTTONS AND

17   HOW SOMETIMES YOU MIGHT DO 50 DIFFERENT MODELS OF A

18   BUTTON.  DO YOU REMEMBER THAT?

19   A    THAT'S CORRECT.

20   Q    HOW MANY MODELS DID YOU DO OF THE HOME BUTTON?

21   A    I COULD NOT GIVE YOU AN EXACT NUMBER, BUT I'M

22   SURE THERE WERE MANY.

23   Q    OVER TEN?

24   A    VERY LIKELY.

25   Q    OVER 100?

```
1    A    MAYBE NOT.

2    Q    WHAT'S YOUR BEST ESTIMATE?

3    A    I WILL NOT ESTIMATE BECAUSE I DO NOT KNOW.

4    Q    DID YOU WORK ON THE DIFFERENT MODELS OF THE

5    HOME BUTTON?

6    A    YES.

7    Q    AND WHY WERE THERE SO MANY MODELS OF THE HOME

8    BUTTON DONE?

9    A    TO GET IT EXACTLY RIGHT.

10   Q    BECAUSE SMALL DETAILS MATTER; RIGHT?

11   A    ABSOLUTELY.

12   Q    AS AN APPLE INDUSTRIAL DESIGNER, YOU TESTIFIED

13   ABOUT THE WORK YOU DID TO COME UP WITH YOUR DESIGNS

14   ON DIRECT.

15         DO YOU REMEMBER THAT?  YOU TESTIFIED

16   GENERALLY ABOUT SITTING AROUND THE KITCHEN TABLE

17   AND ALL THAT.

18   A    YES.

19   Q    ONE OF THE THINGS THAT YOU ALSO DO AS AN

20   INDUSTRIAL DESIGNER IS YOU PAY ATTENTION TO MOBILE

21   PHONES AND SMARTPHONES MANUFACTURED AND SOLD BY

22   YOUR COMPETITORS, DON'T YOU?

23   A    ON OCCASION WE PAY SOME ATTENTION.

24   Q    YOU ACTUALLY GET COMPETITIVE ANALYSES DONE AND

25   REVIEW THOSE OF YOUR COMPETITION, DON'T YOU?
```

1    A    THERE IS A COMPETITIVE ANALYSIS EXERCISE

2    THAT'S PERFORMED BY OUR PRODUCT DESIGN.

3    Q    AND YOU OCCASIONALLY REQUEST THAT SO YOU CAN

4    SEE WHAT THE COMPETITION IS DOING AS PART OF YOUR

5    DESIGN WORK; RIGHT?

6    A    VERY RARELY DO WE MAKE ANY SUCH REQUESTS.  WE

7    ARE SHOWN THESE COMPETITIVE ANALYSIS.

8    Q    WELL, LET'S LOOK AT DX 687.  AND IF WE COULD

9    BLOW UP THE TOP PART OF THIS.

10         DO YOU SEE -- DO YOU SEE YOUR NAME IS UP

11   THERE, CHRIS STRINGER?

12   A    I SEE THAT.

13   Q    AND IF WE COULD GO TO PAGE 2 OF THIS DOCUMENT

14   AND ABOUT A THIRD OF THE WAY DOWN WHERE IT SAYS "ON

15   JANUARY 19TH, 2011," CAN WE BRING THAT UP?

16         THIS IS AN E-MAIL STRING, THIS DOCUMENT;

17   RIGHT?

18   A    YES, IT IS.

19   Q    SO THIS IS PART OF THE E-MAIL STRING?

20   A    YES, IT IS.

21   Q    AND THIS PART OF IT IS AN E-MAIL THAT YOU

22   WROTE ON JANUARY 19TH, 2011 AT 2:14 P.M.; CORRECT?

23   A    THAT IS CORRECT.

24   Q    AND YOU SENT IT TO PAUL.  WHO'S PAUL?

25   A    PAUL IS -- I BELIEVE HIS TITLE IS ENGINEERING

533

```
1    PROGRAM MANAGER.  HE WORKS IN THE IPAD DIVISION.

2    Q    AND YOU SAID TO PAUL, QUOTE, "I NEED YOUR

3    LATEST SUMMARY OF OUR ENEMIES FOR AN I.D.

4    BRAINSTORM ON FRIDAY."

5              DO YOU SEE THAT, SIR?

6    A    I SEE THAT.

7    Q    I.D. STANDS FOR?

8    A    INDUSTRIAL DESIGN.

9    Q    SO YOU HAD AN INDUSTRIAL DESIGN BRAINSTORMING

10   SESSION COMING UP ON FRIDAY; RIGHT?

11   A    THAT'S WHAT IT SAYS.

12   Q    AND YOU'RE ASKING PAUL TO GIVE YOU HIS LATEST

13   SUMMARY OF, QUOTE, "OUR ENEMIES," CLOSED QUOTE.  DO

14   YOU SEE THAT?

15   A    THAT'S CORRECT.

16   Q    IS THAT SAMSUNG?

17   A    IN THIS INSTANCE, YES.

18   Q    OKAY.  AND THE SUMMARY -- THIS IS IN YOUR

19   BINDER IF YOU WANT TO LOOK AT IT -- WE CAN GO TO

20   PAGE 9.

21   A    WHAT IS THE EXHIBIT NUMBER?

22   Q    687, SIR.

23              GO TO PAGE 9, PLEASE.  AND HIGHLIGHT THE

24   TOP PART, BRING IT OUT.  CAN YOU MOVE IT OVER A

25   LITTLE BIT?  THANK YOU.
```

534

```
 1              THIS SUMMARY LISTS A NUMBER OF YOUR

 2     COMPETITORS, DOESN'T IT?

 3     A    IT DOES.

 4     Q    THERE'S THE PLAYBOOK --

 5              WHY DON'T WE HAVE THIS ON THE SCREEN?

 6              MR. MCELHINNY:  BECAUSE IT'S NOT IN

 7     EVIDENCE.

 8              MR. VERHOEVEN:  OH, IT'S NOT IN EVIDENCE.

 9              YOUR HONOR, I MOVE THIS INTO EVIDENCE.

10     THE WITNESS HAS AUTHENTICATED IT.

11              THE COURT:  ANY OBJECTION.

12              MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.

13              THE COURT:  I DIDN'T HEAR YOU.  WHAT?  NO

14     OBJECTION?

15              MR. MCELHINNY:  NO OBJECTION.

16              THE COURT:  IT'S ADMITTED.

17              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

18              687, HAVING BEEN PREVIOUSLY MARKED FOR

19              IDENTIFICATION, WAS ADMITTED INTO

20              EVIDENCE.)

21              MR. VERHOEVEN:  SO IT HASN'T BEEN ON THE

22     SCREEN YET?

23              OKAY.  LET'S GO BACK, JUST FOR

24     COMPLETENESS.

25              I APOLOGIZE, YOUR HONOR.  I THOUGHT IT
```

535

```
 1    WAS ON THE SCREEN.
 2              GO TO PAGE 2.  AND BRING OUT --
 3    Q    THIS IS WHAT WE WERE JUST TALKING ABOUT FROM
 4    PAGE 2; RIGHT?
 5    A    YES.
 6    Q    WHERE YOU SAID, "PAUL, I NEED YOUR LATEST
 7    SUMMARY OF OUR ENEMIES FOR THE I.D. BRAINSTORM ON
 8    FRIDAY."
 9              DO YOU SEE THAT?
10    A    I DO.
11    Q    AND THEN IF WE GO TO 9, PAGE 9, AND HIGHLIGHT
12    THAT AGAIN ONE MORE TIME, PLEASE.
13              THAT'S A LITTLE BIT HARD TO READ.  MAYBE
14    WE COULD JUST HIGHLIGHT THE TOP FEW ROWS SO WE CAN
15    SEE BETTER.  THAT DOESN'T LOOK MUCH BETTER.
16              BUT YOU CAN SORT OF SEE THERE'S THE
17    PLAYBOOK.  DO YOU SEE THAT, MR. STRINGER?
18    A    YES.
19    Q    WHO MAKES THE PLAYBOOK?
20    A    COULD YOU ZOOM IN?  I CAN'T READ IT.
21    Q    YOU DON'T KNOW WHO MAKES THE PLAYBOOK?
22    A    NOT OFF THE TOP OF MY HEAD.
23    Q    OKAY.  AND THEN THERE'S THE GALAXY TAB.  DO
24    YOU SEE THAT?
25    A    YES.
```

1    Q    AND THAT'S ONE OF THE PRODUCTS THAT'S BEING

2    ACCUSED IN THIS CASE?

3    A    YES.

4    Q    RIGHT?  AND ON THE LEFT-HAND SIDE, IT SAYS OS,

5    PROCESSOR, RAM, AND A BUNCH OF OTHER DETAILS.

6              DO YOU SEE THAT?

7    A    YES.

8    Q    SO ISN'T IT TRUE THAT YOU WANTED THIS

9    INFORMATION FOR YOUR BRAINSTORMING SESSION SO YOU

10   COULD ASSESS AND YOU AND THE OTHER DESIGN TEAM

11   MEMBERS COULD ASSESS WHAT YOUR COMPETITORS ARE

12   DOING?

13   A    WE WERE INTERESTED IN UNDERSTANDING THE

14   FEATURE SETS AND OVERALL DIMENSIONS OF COMPETITIVE

15   PRODUCTS.

16   Q    YOU WERE INTERESTED IN KNOWING WHAT THEY WERE

17   DOING?

18   A    WE WERE INTERESTED IN UNDERSTANDING THOSE

19   FACTS.

20   Q    SO YOU ANALYZED THEIR PRODUCTS AND THE

21   PARAMETERS OF THEIR PRODUCTS, DIDN'T YOU?

22   A    WE PAID ATTENTION TO THE FEATURE SET AND WE

23   WERE VERY INTERESTED IN THE DIMENSIONS.

24   Q    IS THERE ANYTHING WRONG WITH DOING THAT?

25   A    NO.

537

```
 1              MR. VERHOEVEN:  PASS THE WITNESS, YOUR
 2     HONOR.
 3              THE COURT:  YOU'RE DONE?
 4              MR. VERHOEVEN:  PASS THE WITNESS.
 5              THE COURT:  OKAY.  ALL RIGHT.  IT IS NOW
 6     4:20.
 7              MR. MCELHINNY:  I HAVE ONE REDIRECT
 8     QUESTION, YOUR HONOR.
 9              THE COURT:  ALL RIGHT.  GO AHEAD.  IT'S
10     4:20.  IT'S ALL YOURS.
11              MR. MCELHINNY:  I'M ON THE CLOCK HERE.
12                     REDIRECT EXAMINATION
13     BY MR. MCELHINNY:
14     Q    SIR, THE LAST DOCUMENT THAT WAS VIEWED, WAS
15     THAT USED FOR DESIGN INSPIRATION ON HOW TO DESIGN
16     SOME NEW APPLE PRODUCT?
17     A    ABSOLUTELY NOT.
18              MR. MCELHINNY:  NOTHING FURTHER, YOUR
19     HONOR.
20              THE COURT:  ALL RIGHT.
21              ANY RECROSS, MR. VERHOEVEN?
22              MR. VERHOEVEN:  JUST ONE SECOND, YOUR
23     HONOR.  I'M SORRY.
24              (DISCUSSION OFF THE RECORD BETWEEN
25     DEFENSE COUNSEL.)
```

538

```
 1              MR. VERHOEVEN:  JUST SOME HOUSEKEEPING

 2   MATTERS.  I'VE BEEN INFORMED I FAILED TO MOVE IN

 3   EXHIBIT 740.

 4              THE COURT:  ANY OBJECTION?

 5              MR. MCELHINNY:  NO OBJECTION.

 6              THE COURT:  IT'S ADMITTED.

 7              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

 8              740, HAVING BEEN PREVIOUSLY MARKED FOR

 9              IDENTIFICATION, WAS ADMITTED INTO

10              EVIDENCE.)

11              MR. VERHOEVEN:  AND 741.

12              THE COURT:  ANY OBJECTION?

13              MR. MCELHINNY:  NO OBJECTION.

14              THE COURT:  SO ADMITTED.

15              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

16              741, HAVING BEEN PREVIOUSLY MARKED FOR

17              IDENTIFICATION, WAS ADMITTED INTO

18              EVIDENCE.)

19              THE COURT:  IS THAT IT, MR. VERHOEVEN?

20              MR. VERHOEVEN:  WELL, THAT -- 741 IS A

21   STIPULATION ABOUT THE PHOTOGRAPHS FROM THE MODEL.

22              AT SOME POINT I'D LIKE TO READ IT INTO

23   THE RECORD.  I COULD DO THAT NOW.  IT'S ADMITTED

24   INTO EVIDENCE, YOUR HONOR.

25              THE COURT:  THAT'S FINE.
```

539

```
1              MR. VERHOEVEN:  IT STATES, QUOTE, "APPLE,
2      INC., THROUGH ITS COUNSEL, STIPULATES AS FOLLOWS:
3              PARAGRAPH 1.  THE SPECIFIC PHYSICAL MODEL
4      IDENTIFIED BY APPLE INDUSTRIAL DESIGNER
5      CHRISTOPHER STRINGER DURING THE NOVEMBER 4TH, 2011
6      DEPOSITION IDENTIFIES APPLE MODEL 035 IS THE SAME
7      MODEL OR MOCK-UP APPEARING IN THE PHOTOGRAPHS OF
8      THE D'889 PATENT PROSECUTION HISTORY PRODUCED BY
9      APPLE.
10             PARAGRAPH 2.  THE PHOTOGRAPHS FROM THE
11     '889 PATENT PROSECUTION HISTORY PRODUCED BY APPLE
12     ARE THE HIGHEST QUALITY THAT IT HAS FOUND."
13             AND THAT CONCLUDES THE STIPULATION, YOUR
14     HONOR.
15             THE COURT:  ALL RIGHT.
16             ANYTHING FURTHER FOR MR. STRINGER OR IS
17     HE EXCUSED?  IS HE EXCUSED?
18             MR. MCELHINNY:  HE'S EXCUSED, YOUR HONOR.
19             THE COURT:  ALL RIGHT.  AND NOT WITH
20     ANY -- HE'S JUST EXCUSED, PERIOD?  NOT SUBJECT TO
21     RECALL?
22             MR. MCELHINNY:  HE'S EXCUSED.  WE ARE NOT
23     GOING TO HAVE HIM IN THE COURTROOM IN CASE THERE'S
24     A REBUTTAL ISSUE.
25             THE COURT:  ALL RIGHT.  YOU'RE EXCUSED.
```

1

2

3

4                       CERTIFICATE OF REPORTER

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                   /S/
                    _____
22                   LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
23

24                   DATED:  JULY 31, 2012

25

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,                  )
                                 )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,        )
                                 )  AUGUST 3, 2012
8         VS.                    )
                                 )  VOLUME
9  SAMSUNG ELECTRONICS CO.,      )
   LTD., A KOREAN BUSINESS       )  PAGES 556-930
10 ENTITY; SAMSUNG               )
   ELECTRONICS AMERICA,          )
11 INC., A NEW YORK              )
   CORPORATION; SAMSUNG          )
12 TELECOMMUNICATIONS            )
   AMERICA, LLC, A DELAWARE      )
13 LIMITED LIABILITY             )
   COMPANY,                      )
14                               )
              DEFENDANTS.        )
15 _____

16           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
24

25

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                 BY:  HAROLD J. MCELHINNY
3                                MICHAEL A. JACOBS
                                 RACHEL KREVANS
4                           425 MARKET STREET
                            SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
     APPLE:                 HALE AND DORR
7                           BY:  WILLIAM F. LEE
                            60 STATE STREET
8                           BOSTON, MASSACHUSETTS  02109

9                           BY:  MARK D. SELWYN
                            950 PAGE MILL ROAD
10                          PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                            OLIVER & HEDGES
12                          BY:  CHARLES K. VERHOEVEN
                            50 CALIFORNIA STREET, 22ND FLOOR
13                          SAN FRANCISCO, CALIFORNIA  94111

14                          BY:  VICTORIA F. MAROULIS
                                 KEVIN P.B. JOHNSON
15                          555 TWIN DOLPHIN DRIVE
                            SUITE 560
16                          REDWOOD SHORES, CALIFORNIA  94065

17                          BY:  MICHAEL T. ZELLER
                                 WILLIAM C. PRICE
18                               JOHN B. QUINN
                            865 SOUTH FIGUEROA STREET
19                          10TH FLOOR
                            LOS ANGELES, CALIFORNIA  90017
20

21

22

23

24

25
```

558

1                        INDEX OF WITNESSES

2       PLAINTIFF'S

3       **PHILIP SCHILLER**
            DIRECT EXAM BY MR. MCELHINNY        P. 594
4           (RES.)
            CROSS-EXAM BY MR. PRICE             P. 666
5           REDIRECT EXAM BY MR. MCELHINNY      P. 717
            RECROSS-EXAM BY MR. PRICE           P. 721
6

7       **SCOTT FORSTALL**
            DIRECT EXAM BY MR. MCELHINNY        P. 724
8           CROSS-EXAM BY MR. JOHNSON           P. 760
            REDIRECT EXAM BY MR. MCELHINNY      P. 784
9           RECROSS-EXAM BY MR. JOHNSON         P. 787

10

11      **JUSTIN DENISON**
            AS-ON CROSS-EXAM BY MR. LEE         P. 790
12          AS-ON DIRECT EXAM BY MR. QUINN      P. 839

13

14

15

16

17

18

19

20

21

22

23

24

25

571

```
 1    AGREEMENT HERE ON LIMITED NUMBER OF PAGES.  SO THIS
 2    REALLY SHOULD BECOME A NONISSUE.
 3            IF YOU'RE GOING TO INSIST ON THE WHOLE
 4    THING, I'M GRANTING A STAY UNTIL NEXT FRIDAY SO
 5    THEY CAN TAKE IT UP ON APPEAL.
 6            MR. PRICE:  WE'RE NOT INSISTING ON THAT.
 7            THE COURT:  ALL RIGHT.  WHY DON'T YOU
 8    WORK IT OUT?  IT SOUNDS LIKE THERE'S AGREEMENT
 9    HERE.
10            ALL RIGHT.  NOW, THE OBJECTION PROCESS IS
11    NOT WORKING.  THE OBJECTIONS TO THESE WITNESSES
12    HAVE BEEN BRIEFED FIVE TIMES.  OKAY?  AND WE FILED
13    OUR ORDER AT 11:00 O'CLOCK LAST NIGHT AND THIS
14    MORNING THERE ARE RECONSIDERATIONS OF OUR ORDERS.
15            SO THIS IS WHAT I'M GOING TO DO.  FROM
16    NOW ON, NONE OF THIS IS GOING TO BE DONE ON PAPER.
17            YOU'RE GOING TO DO IT IN FRONT OF THE
18    JURY AND IT'S GOING TO COUNT TOWARDS YOUR TRIAL
19    TIME, OKAY?
20            BECAUSE SOME OF THESE OBJECTIONS ARE
21    RIDICULOUS.  THEY'RE LIKE FOUR OR FIVE PARAGRAPHS
22    LONG SAYING 403, 401, 402.  NO EXPLANATION, NO
23    DESCRIPTION.
24            IF YOU WANT TO DO THAT KIND OF MESSY
25    OBJECTION, YOU'RE GOING TO DO IT RIGHT IN FRONT OF
```

572

1    THE JURY AND THE TIME CLOCK WILL BE TICKING.  I'M

2    GOING TO KEEP A RECORD.  IT'S ALL ON YOUR TIME.

3    OKAY?

4          SO FROM NOW ON, NO OBJECTIONS BEFORE.

5    YOU DO IT ALL RIGHT IN FRONT OF THE JURY.  AND IF

6    YOU CAN'T EXPLAIN IT TO ME, THEN I'M JUST GOING TO

7    OVERRULE IT.  OKAY?

8          SO YOU NEED TO POINT -- IF YOU'RE GOING

9    TO SAY "THIS IS EXCLUDED" OR "THIS IS IRRELEVANT

10   FOR X, Y, Z PURPOSE," YOU BETTER HAVE ALL THE

11   EXHIBITS YOU NEED TO PERSUADE ME RIGHT ON THE SPOT.

12   OKAY?  SO NO MORE OBJECTIONS.

13         NOW, ALSO, THE RECONSIDERATION SITUATION

14   HAS GOTTEN OUT OF CONTROL.  EVERYTHING IS BEING

15   RECONSIDERED MULTIPLE TIMES.

16         SO FROM NOW ON, ANY TIME YOU MOVE FOR

17   RECONSIDERATION, MY TIME ON REVIEWING YOUR

18   RECONSIDERATION MOTIONS IS GOING TO COUNT TOWARDS

19   YOUR 25 HOURS OF TRIAL TIME.  ALL RIGHT?

20         SO IF THERE IS NO DISCIPLINE IN THIS

21   CASE, IT'S JUST GOING TO BE OUT OF YOUR TIME SO

22   YOU'LL HAVE LESS THAN 25 HOURS BEFORE THE JURY.

23         NOW, HAVING SAID THAT, THE

24   RECONSIDERATIONS THAT HAVE BEEN FILED TODAY, ARE

25   THERE ANY THAT YOU WANT ME TO RULE ON?  BECAUSE I

```
 1    WILL DO THAT IN FRONT OF THE JURY.  WE WILL HAVE
 2    THE FULL DISCUSSION IN FRONT OF THE JURY AND IT
 3    WILL COUNT TOWARDS YOUR TRIAL TIME.
 4             SO WHO WANTS TO GO FORWARD WITH ALL THE
 5    RECONSIDERATIONS THAT WERE FILED BETWEEN MIDNIGHT
 6    AND THIS MORNING?  WHO WANTS TO DO THAT?
 7             MR. JACOBS:  I THINK WE DO, YOUR HONOR.
 8             THE COURT:  ALL RIGHT.  THAT'S FINE.
 9    WE'LL BRING IN THE JURY AND WE'LL ARGUE IT IN FRONT
10    OF THEM.  OKAY?
11             NOW, LET'S GO TO THE OTHER ISSUE, AND
12    THAT IS WITH REGARD TO THE SAMSUNG PRESS RELEASE
13    AND MR. QUINN.
14             SO MY SOLE CONCERN IS TO PRESERVE THE
15    IMPARTIALITY OF THE JURY IN ORDER TO HAVE A FAIR
16    TRIAL.
17             SO THIS MORNING I'M GOING TO POLL THEM TO
18    SEE IF THEY'VE READ OR SEEN ANYTHING ABOUT THE CASE
19    SINCE LAST TUESDAY AFTERNOON, WHETHER THAT HAS
20    CAUSED THEM TO FORM AN IMPRESSION OR OPINION ABOUT
21    THE CASE, WHETHER THEY CAN DECIDE THIS CASE BASED
22    SOLELY ON THE EVIDENCE THAT'S ADMITTED AT THE
23    TRIAL, AND WHETHER THEY WILL FOLLOW THE LAW AS I
24    INSTRUCT THEM, AND WHETHER THEY CAN BE FAIR AND
25    IMPARTIAL TO BOTH SIDES.
```

1          BASED ON HOW A JUROR ANSWERS THAT

2    QUESTION, WE'LL HAVE TO SEE WHETHER THEY REMAIN ON

3    THIS JURY.

4          BASED ON THE CURRENT RECORD, I DENY

5    APPLE'S REQUEST FOR JUDGMENT ON THE PHONE DESIGN

6    PATENTS, FOR FURTHER EXCLUSION OF EVIDENCE, AND FOR

7    AN ADVERSE JURY INSTRUCTION REGARDING THE SAMSUNG

8    PRESS RELEASE.  THOSE REMEDIES ARE NOT WARRANTED BY

9    CURRENT RECORD.

10          BUT I DO RESERVE FOR AFTER THE TRIAL THE

11    QUESTION AS TO WHETHER A FURTHER INVESTIGATION AS

12    TO EXACTLY WHAT HAPPENED AND WHAT OTHER

13    CONSEQUENCES MAY BE APPROPRIATE.

14          I WILL TELL YOU WHAT ASPECTS OF WHAT HAS

15    OCCURRED CAUSE ME THE MOST CONCERN, OR AT LEAST

16    SOME CONCERN.  I'M SURE THERE ARE WILL BE OTHERS

17    THE MORE I THINK ABOUT IT.

18          BUT AT THE TIME THAT SAMSUNG RELEASED ITS

19    PRESS RELEASE WITH THE LINK TO EXCLUDED

20    DEMONSTRATIVES, THE COURT HAD ALREADY SELECTED AND

21    SEATED A JURY, TRIAL HAD ALREADY BEGUN, AND THE

22    PRESS RELEASE REFERS MORE THAN ONCE TO WHAT

23    EXCLUDED EVIDENCE THE JURY SHOULD CONSIDER.

24          MOREOVER, BOTH SAMSUNG AND QUINN, EMANUEL

25    WERE ON NOTICE THAT THE POSSIBILITY OF JURY TAINT

```
 1   IS REAL.  OF OUR 34 POTENTIAL JURORS WHO WERE VOIR

 2   DIRED ON MONDAY, 18 ADMITTED SOME EXPOSURE TO

 3   PRETRIAL PUBLICITY.

 4            OF OUR NINE SEATED JURORS, FOUR ADMITTED

 5   TO EXPOSURE TO SOME PRETRIAL PUBLICITY.

 6            SO THIS WAS A REAL AND POSSIBLE DANGER

 7   THAT SAMSUNG AND QUINN, EMANUEL MADE THE DECISION

 8   TO TAKE THE RISK OF TAINTING THE JURY.

 9            AT THE TIME THAT MR. QUINN REQUESTED YET

10   ANOTHER RECONSIDERATION OF THE MULTIPLE RULINGS OF

11   THE COURT, THE PARTIES HAD BRIEFED AT LEAST THE

12   SONY-STYLE ISSUE NO LESS THAN SIX TIMES, SIX TIMES,

13   AND ON TUESDAY MORNING, I MADE IT ABSOLUTELY CLEAR

14   THAT I WAS NOT GOING TO RECONSIDER THAT RULING.

15            YET MR. QUINN LEFT THIS COURTROOM AND

16   DELIBERATELY AND WILLFULLY, WITH SAMSUNG, ISSUED A

17   PRESS RELEASE TO HIGHLIGHT EVIDENCE THAT THEY BOTH

18   KNEW WAS EXCLUDED AND WAS INADMISSIBLE IN THIS

19   TRIAL.

20            AND THE LINK TO THE EXCLUDED

21   DEMONSTRATIVES IN THE PRESS RELEASE WAS A WILLFUL

22   AND DELIBERATE ATTEMPT TO FURTHER PROPAGATE THAT

23   EXCLUDED EVIDENCE THE DAY AFTER A JURY HAD BEEN

24   IMPANELED.

25            THIS IS AN UNFORTUNATE SITUATION, BUT I
```

```
 1    DON'T WANT ANYONE TO LOSE SIGHT OF THE FACT THAT

 2    THIS IS A SITUATION OF SAMSUNG AND QUINN, EMANUEL'S

 3    OWN MAKING.

 4              HAD SAMSUNG TIMELY COMPLIED WITH ITS

 5    DISCOVERY OBLIGATIONS, THERE WOULD BE NO EXCLUSION.

 6              BOTH JUDGE GREWAL AND I HAVE HELD BOTH

 7    PARTIES TO THE SAME STANDARD.  APPLE'S UNTIMELY

 8    DISCOVERY AND THEORIES HAVE EQUALLY BEEN EXCLUDED

 9    FROM THIS TRIAL.

10              I WILL NOT LET ANY THEATRICS OR ANY SIDE

11    SHOW DISTRACT US FROM WHAT WE ARE HERE TO DO, WHICH

12    IS TO FAIRLY AND EFFICIENTLY TRY THIS CASE.

13              WHEN THE JURY IS HERE, WE'RE GOING TO DO

14    OUR BEST TO MAKE THE MOST OF THEIR TIME, WHETHER

15    THAT MEANS READING JURY INSTRUCTIONS AT 4:30 ON

16    MONDAY AFTERNOON OR CALLING A WITNESS DURING THE

17    LAST FEW MINUTES OF THE DAY ON TUESDAY.

18              NOW, I HOPE THAT ALL PARTIES AND LAWYERS

19    IN THIS CASE WHO ARE SUPPOSED TO BE OFFICERS OF THE

20    COURT WILL RESPECT THE UNITED STATES JUSTICE SYSTEM

21    AND OUR JURY TRIAL PROCESS.

22              NOW, WOULD YOU PLEASE BRING IN THE JURY,

23    AND WHATEVER RECONSIDERATIONS AND OBJECTIONS TO

24    EVIDENCE, WE'RE GOING TO DO IT ON YOUR TIME.

25              MR. LEE:  YOUR HONOR, BEFORE THE JURY IS
```

```
1    BROUGHT IN, CAN I JUST ADDRESS THE LAST POINT THAT

2    YOUR HONOR ADDRESSED AND JUST RAISED TWO POINTS,

3    NOT TO REARGUE --

4              THE COURT:  I'LL GIVE YOU 30 SECONDS.

5              MR. LEE:  ALL RIGHT.  I'LL DO IT 30

6    SECONDS.

7              WE WOULD ASK THAT THE JURY BE POLLED

8    INDIVIDUALLY OUTSIDE THE COURTROOM.  I THINK WITH

9    ALL THE PRESS HERE, ASKING THESE NINE FOLKS THE

10   QUESTIONS YOU'VE ASKED IS GOING TO GET A PARTICULAR

11   RESPONSE.

12             I THINK THIS IS UNUSUAL ENOUGH, IT'S

13   IMPORTANT ENOUGH AND DIFFERENT ENOUGH TO HAVE YOU

14   TALK TO THEM INDIVIDUALLY, WITH OR WITHOUT COUNSEL

15   THERE, IS IMPORTANT.

16             THAT'S WHAT HAPPENS IN OTHER

17   CIRCUMSTANCES AND WE'D ASK YOUR HONOR TO DO THAT.

18             THE SECOND THING, YOUR HONOR, IS YOU ARE

19   CORRECT THAT THERE ARE UNANSWERED QUESTIONS,

20   INCLUDING --

21             THE COURT:  ALL RIGHT.  I THINK YOUR 30

22   SECONDS ARE UP.  I WILL TAKE YOUR SUGGESTION AND

23   POLL THEM INDIVIDUALLY.

24             MR. LEE:  ALL RIGHT.  THANK YOU.

25             THE COURT:  I THINK MS. PARKER BROWN JUST
```

```
1    LEFT.  JUST BRING THEM IN ONE BY ONE.
2              MR. LEE:  YOUR HONOR, WE THOUGHT -- I
3    KNOW I'M OFF MY 30 SECONDS -- ONE BY ONE IN YOUR
4    HONOR'S CHAMBERS, NOT IN FRONT OF EVERYBODY HERE
5    SITTING IN THE COURTROOM.
6              THE COURT:  NO, THAT'S DENIED.
7              BRING THEM IN, PLEASE.
8              (WHEREUPON, THE FOLLOWING PROCEEDINGS
9    WERE HELD IN THE PRESENCE OF JUROR NUMBER 9:)
10             THE COURT:  ALL RIGHT.  GOOD MORNING.
11             I JUST HAD A FEW QUESTIONS TO ASK, AND
12   I'M JUST GOING TO CALL YOU JUROR NUMBER 9, IF
13   THAT'S OKAY --
14             JUROR 9:  SURE.
15             THE COURT:  -- JUST FOR YOUR OWN PRIVACY
16   AT THIS POINT.
17             SINCE WE WERE LAST HERE ON TUESDAY
18   AFTERNOON, DID YOU READ OR HEAR ANYTHING ABOUT THE
19   CASE?
20             JUROR 9:  NO.
21             THE COURT:  OKAY.  CAN YOU STILL DECIDE
22   THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S
23   ADMITTED AT THE TRIAL AND BASED SOLELY ON THE LAW
24   AS I INSTRUCT YOU?
25             JUROR 9:  YES.
```

579

```
1            THE COURT:  CAN YOU GIVE BOTH SIDES IN
2     THIS CASE -- CAN YOU BE FAIR AND IMPARTIAL TO BOTH
3     SIDES IN THIS CASE?
4            JUROR 9:  ABSOLUTELY.
5            THE COURT:  ALL RIGHT.  THANK YOU.
6            IF YOU WOULDN'T MIND, PLEASE, WHEN YOU GO
7     BACK IN THERE, EVERYONE IS GOING TO ASK YOU WHAT
8     HAPPENED.  IF YOU JUST SAY YOU CAN'T TALK ABOUT IT,
9     BUT THE JUDGE IS GOING TO ASK EVERYONE TO COME OUT
10    INDIVIDUALLY, SO THEY'LL ALL FIND OUT SOON ENOUGH.
11           JUROR 9:  SURE.
12           (WHEREUPON, THE FOLLOWING PROCEEDINGS
13    WERE HELD IN THE PRESENCE OF JUROR NUMBER 6:)
14           THE COURT:  ALL RIGHT.  GOOD MORNING.
15           JUROR 6:  GOOD MORNING.
16           THE COURT:  ALL RIGHT.  WELCOME BACK.
17           FOR YOUR PRIVACY, I'M JUST GOING TO REFER
18    TO YOU AS JUROR NUMBER 6.  IS THAT OKAY?
19           JUROR 6:  YES.
20           THE COURT:  ALL RIGHT.  I JUST WANT TO
21    FIND OUT WHETHER, SINCE WE WERE TOGETHER ON TUESDAY
22    AFTERNOON, HAVE YOU READ OR HEARD ANYTHING ABOUT
23    THIS CASE?
24           JUROR 6:  NO.
25           THE COURT:  ALL RIGHT.  WILL YOU DECIDE
```

```
1    THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S
2    ADMITTED DURING THE TRIAL AND APPLY ONLY THE LAW
3    THAT I INSTRUCT YOU?
4              JUROR 6:  YES.
5              THE COURT:  WILL YOU BE FAIR AND
6    IMPARTIAL TO BOTH SIDES IN THIS CASE?
7              JUROR 6:  YES.
8              THE COURT:  ALL RIGHT.  THANK YOU.
9              NOW, WHEN YOU GO BACK IN THERE, PEOPLE
10   MAY ASK WHAT'S GOING ON.  IF YOU COULD JUST LET
11   THEM KNOW, THE COURT ASKED YOU NOT TO SAY.
12   EVERYONE IS GOING TO BE COMING IN INDIVIDUALLY, SO
13   THEY'LL FIND OUT SOON ENOUGH.  OKAY?
14             JUROR 6:  SURE.
15             THE COURT:  THANK YOU.
16             (WHEREUPON, THE FOLLOWING PROCEEDINGS
17   WERE HELD IN THE PRESENCE OF JUROR NUMBER 2:)
18             THE COURT:  GOOD MORNING.  WELCOME BACK.
19             FOR YOUR PRIVACY, I'M JUST GOING TO REFER
20   TO YOU AS JUROR NUMBER 2.  IS THAT ALL RIGHT?
21             JUROR 2:  YES.
22             THE COURT:  OKAY.  I JUST HAVE A COUPLE
23   OF QUESTIONS.
24             SINCE WE WERE LAST TOGETHER ON TUESDAY
25   AFTERNOON, DID YOU READ OR HEAR ANYTHING ABOUT THIS
```

```
 1    CASE?

 2              JUROR 2:  NO.

 3              THE COURT:  ALL RIGHT.  WILL YOU DECIDE

 4    THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S

 5    ADMITTED DURING THIS TRIAL AND APPLY THE LAW AS I

 6    INSTRUCT YOU?

 7              JUROR 2:  YES.

 8              THE COURT:  WILL YOU BE FAIR AND

 9    IMPARTIAL TO BOTH SIDES IN THIS CASE?

10              JUROR 2:  YES.

11              THE COURT:  ALL RIGHT.  WELL, THANK YOU

12    SO MUCH.

13              THE OTHER JURORS MAY ASK YOU WHAT'S GOING

14    ON.  IF YOU COULD JUST LET THEM KNOW THAT I ASKED

15    YOU NOT TO SAY ANYTHING.  THEY'RE ALL GOING TO BE

16    COMING IN HERE IN JUST A SECOND, SO THEY'LL FIND

17    OUT SOON ENOUGH.

18              JUROR 2:  ALL RIGHT.

19              THE COURT:  ALL RIGHT.  THANK YOU.

20              (WHEREUPON, THE FOLLOWING PROCEEDINGS

21    WERE HELD IN THE PRESENCE OF JUROR NUMBER 8:)

22              THE COURT:  GOOD MORNING AND WELCOME

23    BACK.

24              IF YOU DON'T MIND, I'M GOING TO CALL YOU

25    JUROR NUMBER 8.
```

582

```
 1                    JUROR 8:  OKAY.
 2               THE COURT:  JUST FOR YOUR PRIVACY.
 3               SINCE WE WERE LAST TOGETHER HERE ON
 4    TUESDAY AFTERNOON, DID YOU READ OR HEAR ANYTHING
 5    ABOUT THIS CASE?
 6                    JUROR 8:  NO, I DID NOT.
 7               THE COURT:  ALL RIGHT.  WILL YOU DECIDE
 8    THIS CASE BASED SOLELY ON THE LAW THAT I INSTRUCT
 9    YOU AND THE EVIDENCE THAT'S ADMITTED HERE IN OPEN
10    COURT DURING THIS TRIAL?
11                    JUROR 8:  YES, I WILL.
12               THE COURT:  WILL YOU BE FAIR AND
13    IMPARTIAL TO BOTH SIDES IN THIS CASE?
14                    JUROR 8:  YES.
15               THE COURT:  ALL RIGHT.  WELL, THANK YOU
16    SO MUCH.
17               IF THE OTHER JURORS ASK YOU WHAT'S
18    HAPPENING, CAN YOU JUST LET THEM KNOW THAT I ASKED
19    YOU NOT TO SAY AND THAT EVERYONE IS GOING TO BE
20    BROUGHT IN ONE BY ONE, SO THEY'LL FIND OUT SOON
21    ENOUGH.  OKAY?
22                    JUROR 8:  YES.
23               THE COURT:  ALL RIGHT.  THANK YOU.
24               (WHEREUPON, THE FOLLOWING PROCEEDINGS
25    WERE HELD IN THE PRESENCE OF JUROR NUMBER 3:)
```

```
1              THE COURT:  ALL RIGHT.  GOOD MORNING.

2              JUROR 3:  GOOD MORNING.

3              THE COURT:  AND WELCOME BACK.  FOR YOUR

4    PRIVACY, I'M JUST GOING TO CALL YOU JUROR NUMBER 3

5    IF THAT'S OKAY.

6              JUROR 3:  OKAY.

7              THE COURT:  ALL RIGHT.  SINCE WE WERE

8    LAST HERE ON TUESDAY AFTERNOON, DID YOU READ OR

9    HEAR ANYTHING ABOUT THE CASE?

10             JUROR 3:  NO, I HAVEN'T.

11             THE COURT:  ALL RIGHT.  WILL YOU DECIDE

12   THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S

13   ADMITTED DURING THIS TRIAL AND APPLY THE LAW AS I

14   INSTRUCT YOU?

15             JUROR 3:  YES.

16             THE COURT:  ALL RIGHT.  WILL YOU BE FAIR

17   AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

18             JUROR 3:  YES.

19             THE COURT:  ALL RIGHT.  THANK YOU.

20             WHEN YOU GO BACK, IF YOU WOULD -- IF

21   FOLKS ASK YOU WHAT'S GOING ON, IF YOU COULD JUST

22   LET THEM KNOW, THE JUDGE ASKED ME NOT TO SAY, AND

23   EVERYONE IS GOING TO BE CALLED IN, SO THEY'LL FIND

24   OUT IN JUST A MINUTE OR TWO.

25             JUROR 3:  NO PROBLEM.
```

584

```
1              THE COURT:  OKAY.  THANK YOU.

2              JUROR 3:  UM-HUM.

3              (WHEREUPON, THE FOLLOWING PROCEEDINGS

4      WERE HELD IN THE PRESENCE OF JUROR NUMBER 4:)

5              THE COURT:  ANYWHERE YOU'D LIKE.  THIS IS

6      GOING TO BE PRETTY SHORT, I THINK.

7              JUROR 4:  OKAY.

8              THE COURT:  GOOD MORNING AND WELCOME

9      BACK.

10             JUROR 4:  THANK YOU.

11             THE COURT:  FOR YOUR PRIVACY, I'M GOING

12     TO REFER TO YOU AS JUROR NUMBER 4.  IS THAT ALL

13     RIGHT?

14             JUROR 4:  OKAY.

15             THE COURT:  OKAY.  SINCE WE WERE LAST

16     TOGETHER ON TUESDAY AFTERNOON, DID YOU READ OR HEAR

17     ANYTHING ABOUT THIS CASE?

18             JUROR 4:  NO.

19             THE COURT:  WILL YOU DECIDE THIS CASE

20     BASED SOLELY ON THE EVIDENCE THAT'S ADMITTED DURING

21     THE TRIAL AND APPLY THE LAW AS I INSTRUCT YOU?

22             JUROR 4:  YES.

23             THE COURT:  ALL RIGHT.  WILL YOU BE FAIR

24     AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

25             JUROR 4:  YES.
```

585

```
 1              THE COURT:  ALL RIGHT.  WELL, THANK YOU.
 2              IF YOU WOULDN'T MIND, WHEN YOU GO BACK IN
 3     THERE, IF SOMEONE ASKS YOU WHAT'S GOING ON, JUST
 4     LET THEM KNOW, THE JUDGE ASKED ME NOT TO SAY, THAT
 5     THEY'RE ALL GOING TO BE CALLED IN.  OKAY?
 6              JUROR 4:  ALL RIGHT.
 7              THE COURT:  ALL RIGHT.  THANK YOU.
 8              (WHEREUPON, THE FOLLOWING PROCEEDINGS
 9     WERE HELD IN THE PRESENCE OF JUROR NUMBER 1:)
10              THE COURT:  ALL RIGHT.  GOOD MORNING AND
11     WELCOME BACK.  PLEASE TAKE A SEAT ANYWHERE THAT YOU
12     WOULD LIKE.
13              JUROR 1:  OKAY.
14              THE COURT:  ALL RIGHT.  FOR YOUR PRIVACY,
15     I'M JUST GOING TO REFER TO YOU AS JUROR NUMBER 1.
16     IS THAT ALL RIGHT?
17              JUROR 1:  SURE.
18              THE COURT:  OKAY.  SO SINCE WE WERE LAST
19     TOGETHER HERE ON TUESDAY AFTERNOON, DID YOU READ OR
20     HEAR ANYTHING ABOUT THIS CASE?
21              JUROR 1:  NO, YOUR HONOR.
22              THE COURT:  ALL RIGHT.  WILL YOU DECIDE
23     THIS CASE BASED SOLELY ON THE EVIDENCE THAT'S
24     ADMITTED DURING THIS TRIAL AND APPLY THE LAW AS I
25     INSTRUCT YOU?
```

```
 1              JUROR 1:  YES, YOUR HONOR.

 2              THE COURT:  OKAY.  WILL YOU BE FAIR AND

 3     IMPARTIAL TO BOTH SIDES IN THIS CASE?

 4              JUROR 1:  YES.

 5              THE COURT:  ALL RIGHT.  THANK YOU.

 6              IF YOU -- I'M GOING TO ASK YOU TO STEP

 7     BACK IN THE JURY ROOM, BUT IF YOU WOULD PLEASE NOT

 8     EXPLAIN TO ANYONE ELSE WHAT'S GOING ON, JUST LET

 9     THEM KNOW THAT THEY'RE ALL GOING TO COME IN IN A

10     MINUTE.

11              JUROR 1:  YES.

12              THE COURT:  ALL RIGHT.  THANK YOU.

13              (WHEREUPON, THE FOLLOWING PROCEEDINGS

14     WERE HELD IN THE PRESENCE OF JUROR NUMBER 7:)

15              THE COURT:  ALL RIGHT.  PLEASE TAKE A

16     SEAT.

17              WELCOME BACK.  GOOD MORNING.

18              I JUST HAVE A FEW QUESTIONS TO ASK YOU,

19     AND FOR YOUR PRIVACY, I'M GOING TO CALL YOU JUROR

20     NUMBER 7.  IS THAT ALL RIGHT?

21              JUROR 7:  YES.

22              THE COURT:  SINCE WE WERE LAST HERE ON

23     TUESDAY, DID YOU READ OR HEAR ANYTHING ABOUT THIS

24     CASE?

25              JUROR 7:  HEADLINES ON THE INTERNET.
```

587

```
 1              THE COURT:  HEADLINES.  OKAY.  CAN YOU
 2    TELL ME WHAT HEADLINES YOU READ?
 3              JUROR 7:  IT SAYS 15 KITCHEN TABLE
 4    SOMETHING.  IT WAS ABOUT THE, WHAT THE FIRST
 5    WITNESS WAS TALKING ABOUT.
 6              THE COURT:  OH, 15 PEOPLE AT THE KITCHEN
 7    TABLE, YOU MEAN THE INDUSTRIAL DESIGNERS?
 8              JUROR 7:  YEAH.
 9              THE COURT:  OKAY.  ANYTHING ELSE?  NO,
10    NOTHING ELSE?
11              JUROR 7:  I TRIED TO AVOID IT.
12              THE COURT:  OKAY.  THANK YOU.
13              NOW, BASED ON ANYTHING THAT YOU READ, DID
14    YOU FORM AN IMPRESSION OR AN OPINION ABOUT THIS
15    CASE?
16              JUROR 7:  NO.  I DIDN'T READ THE ARTICLE.
17    I JUST SAW THE HEADLINE.
18              THE COURT:  OKAY.  ANY OTHER HEADLINES
19    THAT YOU CAN RECALL OTHER THAN THE KITCHEN TABLE
20    ONE?
21              JUROR 7:  NO.
22              THE COURT:  ALL RIGHT.  BASED ON THE
23    HEADLINES THAT YOU SAW AND ANYTHING ELSE YOU MAY
24    HAVE SEEN OR HEARD, HAVE YOU FORMED ANY LIKES,
25    DISLIKES, BIASES TOWARDS ONE SIDE OR THE OTHER OR
```

1    ANYTHING IN PARTICULAR?

2                JUROR 7:  NO.

3                THE COURT:  NO.  OKAY.  WILL YOU DECIDE

4    THIS CASE SOLELY ON THE EVIDENCE THAT'S ADMITTED

5    DURING THIS TRIAL?

6                JUROR 7:  ABSOLUTELY.

7                THE COURT:  OKAY.  WILL YOU APPLY THE LAW

8    AS I INSTRUCT YOU?

9                JUROR 7:  YES.

10                THE COURT:  WILL YOU BE FAIR AND

11    IMPARTIAL TO BOTH SIDES?

12                JUROR 7:  YES.

13                THE COURT:  ALL RIGHT.  I KNOW WE'RE

14    ASKING YOU TO DO SOMETHING THAT'S DIFFICULT, NOT

15    LOOKING AT ANY OF THIS, BUT I'M GOING TO MAKE THIS

16    OFFER TO YOU, AND I'M GOING TO TELL ALL THE OTHER

17    JURORS WHEN THEY COME BACK, THAT WE ARE GOING TO

18    COLLATE ALL OF THE ARTICLES ON THIS CASE AND WHEN

19    YOU ARE COMPLETELY DONE WITH YOUR ROLE AS A JUROR,

20    WE'LL GIVE YOU A FULL COMPILATION.

21                SO I DON'T WANT YOU TO FEEL LIKE YOU'RE

22    BEING LEFT OUT, THAT THERE'S SOMETHING EXCITING

23    ABOUT WHAT'S GOING ON THAT YOU DON'T KNOW ABOUT.

24    AT THE VERY END OF THIS CASE, YOU'RE GOING TO GET

25    IT ALL.  OKAY?

```
 1              SO I'M GOING TO MAKE THAT OFFER TO ALL

 2    THE OTHER JURORS, SO DON'T FEEL LIKE YOU'RE BEING

 3    LEFT OUT AT ALL.  WE'RE GOING TO COMPILE EVERYTHING

 4    FOR YOU AND WE'RE GOING TO GIVE IT TO YOU AT THE

 5    END.  SO YOU'LL BE ABLE TO LEARN EVERYTHING AT THE

 6    END, BUT WE JUST NEED YOU TO SHUT OFF ANY OTHER

 7    COMMENTS, READING, OR HEARING ABOUT THE CASE.

 8              CAN YOU DO THAT?

 9              JUROR 7:  YES.

10              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11              (WHEREUPON, THE FOLLOWING PROCEEDINGS

12    WERE HELD IN THE PRESENCE OF JUROR NUMBER 5:)

13              THE COURT:  TAKE A SEAT ANYWHERE, PLEASE.

14              ALL RIGHT.  THIS IS JUROR NUMBER 5.

15              WELL, WELCOME BACK.

16              JUROR 5:  THANKS.

17              THE COURT:  AND GOOD MORNING.

18              SINCE WE WERE LAST HERE ON TUESDAY

19    AFTERNOON, DID YOU READ OR HEAR ANYTHING ABOUT THIS

20    CASE?

21              JUROR 5:  NO.

22              THE COURT:  WILL YOU DECIDE THIS CASE

23    BASED SOLELY ON THE EVIDENCE THAT'S ADMITTED DURING

24    THE TRIAL?

25              JUROR 5:  YES.
```

590

```
 1              THE COURT:  WILL YOU APPLY THE LAW THAT I
 2     INSTRUCT YOU?
 3              JUROR 5:  YES.
 4              THE COURT:  OKAY.  WILL YOU BE FAIR AND
 5     IMPARTIAL TO BOTH SIDES?
 6              JUROR 5:  YES.
 7              THE COURT:  ALL RIGHT.  THANK YOU.
 8              JUROR 5:  IS THAT IT?
 9              THE COURT:  YES.
10              (WHEREUPON, THE FOLLOWING PROCEEDINGS
11     WERE HELD OUT OF THE PRESENCE OF THE JURY:)
12              THE COURT:  I DON'T BELIEVE ANY FURTHER
13     VOIR DIRE IS NECESSARY.  I'M SATISFIED THAT THIS
14     JURY IS CREDIBLE, THAT THEY'RE GOING TO BE FAIR AND
15     IMPARTIAL TO BOTH SIDES, BUT I'LL GIVE YOU HALF A
16     SECOND TO RESPOND.
17              MR. LEE:  NO FURTHER VOIR DIRE FOR APPLE,
18     YOUR HONOR.
19              THE COURT:  ALL RIGHT.  ANY FURTHER VOIR
20     DIRE FOR SAMSUNG?
21              MR. VERHOEVEN:  NO, YOUR HONOR.
22              THE COURT:  ALL RIGHT.  OKAY.  THEN LET'S
23     GO TO MR. SCHILLER, AND WHAT I HAVE AS BEING
24     EXCLUDED ARE PLAINTIFF'S EXHIBIT 126, THE PILLOW
25     ADS, AND THEN THE DEFENSE EXHIBIT 649.
```

591

```
 1              NOW, IF YOU HAVE ANY OTHER FIGHTS ABOUT
 2     MR. SCHILLER'S EXHIBITS, WE'RE GOING TO DO IT RIGHT
 3     HERE IN OPEN COURT ON THE CLOCK.  OKAY?
 4              SO --
 5              MR. PRICE:  YOUR HONOR, IF I MAY?
 6     BILL PRICE.
 7              TWO THINGS:  CAN WE HAVE THIS MOVED JUST
 8     A LITTLE BIT OVER, BECAUSE I CAN'T SEE THE WITNESS?
 9              THE COURT:  SURE, ABSOLUTELY.
10              MR. PRICE:  AND THE SECOND THING IS WHEN
11     WE MAKE ARGUMENTS IN OPEN COURT, I WOULD,
12     OBVIOUSLY, REQUEST THAT THEY'RE GOING TO BE MADE AT
13     SIDE-BAR, BECAUSE OBJECTIONS TEND TO BE VIOLATION
14     OF ORDERS, THINGS LIKE THAT, AND IF WE'RE GOING TO
15     GET INTO THAT, OBVIOUSLY I DON'T THINK THAT SHOULD
16     BE DONE IN FRONT OF THE JURY.
17              THE COURT:  OKAY.  UNFORTUNATELY, OUR
18     MICROPHONE HERE IS STILL BROKEN.
19              WELL, WE CAN TRY TO DO THAT ON THE SIDE.
20              MR. PRICE:  MAY I APPROACH AND MOVE THIS?
21              THE COURT:  PLEASE, MOVE IT HOWEVER YOU'D
22     LIKE.
23              NOW, I DON'T WANT ANY SPEAKING
24     OBJECTIONS, SO -- ALL RIGHT.
25              NOW, 9:11.  WE'RE ON THE CLOCK.  GO
```

592

```
 1    AHEAD.
 2              MR. MCELHINNY:  EXCUSE ME, YOUR HONOR.
 3    I'VE GOT TO UNDO THE -- ARE WE OKAY?
 4              ALL RIGHT.  WE RECALL MR. SCHILLER.
 5              I DON'T HAVE A JURY HERE TO BE ON THE
 6    CLOCK, YOUR HONOR.
 7              THE COURT:  ALL RIGHT.  WE'LL BRING IN
 8    THE JURY.
 9              (WHEREUPON, THE FOLLOWING PROCEEDINGS
10    WERE HELD IN THE PRESENCE OF THE JURY:)
11              THE COURT:  ALL RIGHT.  WELCOME BACK AND
12    GOOD MORNING.
13              I DO NEED TO MAKE EVERYONE THE OFFER.  WE
14    GREATLY APPRECIATE YOUR PATIENCE AND YOUR SERVICE
15    AS JURORS AND ALL OF YOUR ATTEMPTS TO PRESERVE THE
16    INTEGRITY OF THE JURY BY NOT READING OR HEARING OR
17    DISCUSSING THE CASE WITH ANYONE.
18              I JUST WANTED TO LET ALL OF YOU KNOW THAT
19    WE'RE GOING TO COMPILE ALL THE ARTICLES ABOUT THIS
20    CASE, AND WHEN YOU CONCLUDE YOUR SERVICE AS JURORS,
21    WE'RE GOING TO GIVE YOU THE WHOLE STACK, SO DON'T
22    FEEL LIKE YOU'RE MISSING OUT ON ANYTHING.  WE CAN
23    SCRAPBOOK IT FOR YOU, WHATEVER YOU'D LIKE.  BUT YOU
24    ARE NOT GOING TO BE LEFT OUT.
25              SO WE'RE ASKING YOU TO HOLD ON AND NOT
```

1    LISTEN OR READ OR TALK ABOUT THE CASE.

2            BUT THERE WILL BE TIME ENOUGH, AND WE'RE

3    GOING TO GIVE YOU EVERYTHING.  OKAY?  SO WE'LL

4    COLLATE IT ALL AND YOU WILL HAVE IT AT THE END OF

5    THE DAY CASE.

6            SO DON'T FEEL LIKE YOU'RE MISSING OUT ON

7    ANYTHING THAT YOU WON'T BE ABLE TO FIND OUT

8    ULTIMATELY WHAT'S GOING ON.  IT'S ALL GOING TO BE

9    TOGETHER FOR YOU, OKAY?

10           WE'LL JUST GIVE IT TO YOU WHEN YOUR

11   SERVICE IS DONE, WHEN THE INTEGRITY OF THE JURY IS

12   NO LONGER AT ISSUE.

13           OKAY?  ALL RIGHT.  SO THAT'S WHAT WE'RE

14   GOING TO DO.

15           NOW, I'M GOING TO TELL YOU THAT WE ARE

16   GOING TO DO A SLIGHTLY DIFFERENT PROCESS.  WE HAVE

17   TRIED AND TRIED OF HAVING ALL OF THE OBJECTIONS OF

18   THE PARTIES RULED ON OUTSIDE YOUR PRESENCE AND IT'S

19   GOTTEN OUT OF HAND, OKAY?

20           SOME OF THESE HAVE BEEN BRIEFED AND

21   BRIEFED SIX TIMES, AND SO WE'RE -- I'M SORRY TO

22   TELL YOU THIS, BUT WE'RE GOING TO DO IT HERE IN

23   COURT.  THERE WILL BE CONVERSATIONS THAT YOU CANNOT

24   HEAR, SO WE WILL GO TO THE SIDE.

25           BUT THE GOOD NEWS IS THIS IS GOING TO BE

748

```
1    TOUCHSCREEN?

2    A    THERE WERE A NUMBER OF CHALLENGES.  ONE OF

3    THEM WAS EVERYTHING WE DEALT WITH BEFORE WAS BASED

4    ON A MOUSE AND A KEYBOARD, AND HERE WE WERE

5    CHANGING THE ENTIRE USER INTERFACE TO BE BASED

6    AROUND TOUCH.

7              SO WE HAD TO RETHINK EVERYTHING ABOUT HOW

8    BIG CONTROLS SHOULD BE, WHAT SHOULD HAPPEN WHEN YOU

9    TOUCH, HOW DO YOU SCROLL, HOW DO YOU KNOW WHERE YOU

10   ARE IN A DOCUMENT, HOW DO YOU KNOW IF YOU'RE AT THE

11   END OF A LIST OR THE END OF A DOCUMENT?

12             EVERY SINGLE PART OF THE ENTIRE DEVICE

13   HAD TO BE RETHOUGHT FOR DOING TOUCH.  SO WE STARTED

14   WITH A BRAND NEW U/I, A BRAND NEW USER INTERFACE,

15   INSTEAD OF SOMETHING THAT WAS EXISTING.  SO THAT'S

16   ONE.

17             SECOND IS WE DIDN'T WANT TO HAVE A

18   PHYSICAL KEYBOARD ON HERE.  I MEAN, IF YOU LOOK

19   BACK TO, YOU KNOW, EVEN 2005 WHEN THE ENGINEERING

20   TEAM STARTED ON THIS, SMARTPHONES ALL HAD PHYSICAL

21   KEYBOARDS.  YOU KNOW, THE MOST POPULAR AT THE TIME

22   PROBABLY WAS A BLACKBERRY AND IT HAD A PHYSICAL

23   KEYBOARD.

24             AND MANY PEOPLE THOUGHT WE WERE ACTUALLY

25   CRAZY TO TRY TO BUILD SOMETHING WITHOUT ANY FORM OF
```

749

```
 1      PHYSICAL KEYBOARD, NOT A SLIDE OUT ONE, NOT ONE ON
 2      THE FRONT SCREEN, NOTHING.
 3              AND SO THAT WAS, IN LARGE PART, A SCIENCE
 4      PROJECT FOR US TO BE ABLE TO CREATE A, AN ON SCREEN
 5      TOUCH KEYBOARD THAT COULD WORK REALLY WELL AND THEN
 6      GET OUT OF THE WAY WHEN YOU WEREN'T USING IT.
 7              AND THEN WHEN YOU SWITCHED TO A DIFFERENT
 8      LANGUAGE, YOU COULD ADD DIFFERENT KEYS.
 9              SO THERE'S LOTS OF ADVANTAGES.  BUT IT
10      WAS REALLY DIFFICULT.
11              ONE OTHER ONE WAS WE WANTED TO GIVE
12      PEOPLE THE ENTIRE WEB, THE ENTIRE INTERNET
13      EXPERIENCE, AND THE INTERNET IS DESIGNED FOR A MUCH
14      LARGER SCREEN.  WHEN A WEB DEVELOPER IS BUILDING A
15      SITE FOR THE INTERNET, THEY DESIGN IT EXPECTING A
16      WINDOW LIKE THIS ON A COMPUTER.
17              AND, YET, WE HAVE THIS VERY, YOU KNOW,
18      COMPARED TO THAT, SMALL WINDOW, SMALL SCREEN, INTO
19      THAT WEB WORLD.
20              SO WE WANTED TO SOLVE THE PROBLEM OF
21      GIVING PEOPLE THE ENTIRE REAL INTERNET ON THIS
22      DEVICE.
23      Q    WHERE THERE INTERNET BROWSERS AVAILABLE AT THE
24      TIME ON PHONES?
25      A    THERE WERE.  THERE WAS A TECHNOLOGY CALLED
```

750

```
1   WAP, W-A-P, AND IT REALLY GAVE YOU THIS BABY WEB,

2   THIS DUMBED DOWN WEB.

3          YOU CAN IMAGINE A WEB DEVELOPER WHO'S

4   BUILDING A WEBSITE, SAY THE NEW YORK TIMES.  IF

5   THEY WANTED TO PROVIDE THAT FOR A MOBILE DEVICE,

6   THEY HAD TO REWRITE THE ENTIRE WEB PAGE, THE HOME

7   PAGE AND ALL OF THE OTHER PAGES, SPECIFICALLY TO

8   APPEAR IN THIS OTHER FORMAT FOR THESE DUMBED DOWN

9   BROWSERS.

10  Q    WHEN YOU'RE PUTTING A WEB PAGE ON A SMALL

11  SCREEN, IS PRINT SIZE AN ISSUE?

12  A    ABSOLUTELY.  IF YOU'RE LOOKING AT, SAY, AGAIN,

13  THE NEW YORK TIMES, THE ENTIRE WEB PAGE AND IT'S

14  FITTING ON A THREE AND A HALF INCH SCREEN, THEN THE

15  TEXT SIZE IS FAR TOO SMALL FOR MOST THINGS TO READ

16  IT.

17         SO YOU HAVE TO BE ABLE TO ZOOM AROUND TO

18  BE ABLE TO SEE IT.

19  Q    YOU HAVEN'T BEEN HERE FOR SOME OF THE

20  ARGUMENTS, BUT THERE'S BEEN SOME DISCUSSIONS OF

21  WHETHER SOME OF THE USER INTERFACE INVENTIONS THAT

22  WE ARE GOING TO BE TALKING ABOUT ARE SMALL THINGS

23  OR TRIVIAL THINGS OR LESS IMPORTANT THAN OTHER

24  STUFF.

25         FROM YOUR OWN EXPERIENCE, HOW DO YOU
```

1    CAPTURE THE AMOUNT OF THE INVESTMENT THAT WENT INTO

2    CREATING THESE USER INTERFACE FEATURES THAT YOU'RE

3    TALKING ABOUT?

4              MR. JOHNSON:  OBJECTION, VAGUE.

5              THE COURT:  OVERRULED.

6              THE WITNESS:  THE INVESTMENT IN BUILDING

7    A USER INTERFACE THAT COULD WORK ON THIS SIZE

8    DEVICE WITH YOUR FINGERS AND TOUCH WAS IMMENSE.  I

9    KNOW I PERSONALLY DEDICATED YEARS OF MY LIFE TO

10   THIS, AS DID HUNDREDS OF PEOPLE ON THIS TEAM.

11             AND IT WAS VERY, VERY DIFFICULT.

12   BY MR. MCELHINNY:

13   Q    SIR, IF YOU WOULD OPEN YOUR BINDER, PLEASE, TO

14   EXHIBIT 163.  I'M SORRY, EXHIBIT 1046.

15             WHAT IS EXHIBIT 1046, SIR?

16   A    IT IS U.S. PATENT 7,864,163.

17   Q    AND ARE YOU ONE OF THE NAMED INVENTORS ON THIS

18   PATENT?

19   A    I AM.

20             MR. MCELHINNY:  YOUR HONOR, I WOULD MOVE

21   EXHIBIT 1046.

22             THE COURT:  ANY OBJECTION?

23             MR. JOHNSON:  NO, YOUR HONOR.

24             THE COURT:  IT'S ADMITTED.

25   ///

```
 1                  (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

 2                  1046, HAVING BEEN PREVIOUSLY MARKED FOR

 3                  IDENTIFICATION, WAS ADMITTED INTO

 4                  EVIDENCE.)

 5      BY MR. MCELHINNY:

 6      Q    SIR, CAN YOU TELL US, AT A GENERAL LEVEL, WHAT

 7      YOUR INVENTION DEALT WITH?

 8      A    SO THIS INCLUDES A LOT OF THINGS.  LET ME

 9      DESCRIBE ONE EXAMPLE THAT'S COVERED BY THIS

10      INVENTION.

11              WHEN YOU'RE BROWSING THE WEB IN A WEB

12      BROWSER, LIKE SAFARI, THERE ARE A LOT OF DIFFERENT

13      STORIES AND SO, AGAIN, IMAGINE THE NEW YORK TIMES

14      HOME PAGE.  YOU GO THERE AND THERE'S COLUMNS OF

15      STORIES, THERE'S HORIZONTAL STORIES, THERE MIGHT BE

16      AN IMAGE OF A DIFFERENT SIZE, MAYBE A MOVIE, ALL

17      THESE DIFFERENT PIECES OF CONTENT ON THE WEB PAGE.

18              AND THE ISSUE IS -- WELL, WHAT THIS TRIES

19      TO SOLVE IS TO MAKE A REALLY EASY WAY FOR YOU TO

20      NAVIGATE BETWEEN THOSE DIFFERENT STORIES, THOSE

21      DIFFERENT PIECES OF CONTENT ON THE WEB PAGE.

22      Q    AND HOW -- CAN YOU TELL US HOW IT DOES THAT?

23      A    YES.  SO IN THAT EXAMPLE, YOU CAN JUST -- WHAT

24      WE IMPLEMENTED WAS YOU CAN DOUBLE TAP ON ONE OF THE

25      STORIES, AND JUST BY DOUBLE TAPPING ON THE STORY,
```

753

```
 1    THE IPHONE ITSELF WILL FIGURE OUT WHICH STORY YOU

 2    MEAN AND THEN ZOOM IT UP SO IT SETS THE FONT SIZE

 3    RIGHT AND POSITIONS IT AS BEST IT CAN FOR YOU TO

 4    READ THAT STORY.

 5              AND THEN YOU CAN TAP, DOUBLE TAP ON

 6    ANOTHER STORY NEXT TO IT, AND IT'LL AUTOMATICALLY

 7    CHANGE THE SCALING AND MOVE THAT PART OF THE STORY

 8    SO YOU CAN READ THAT ONE REALLY WELL ALSO.

 9              SO IT ALLOWS YOU TO REALLY EASILY

10    NAVIGATE THROUGH A WEBSITE JUST BY TAPPING AROUND,

11    OR DOUBLE TAPPING AROUND.

12    Q    CAN WE PLEASE HAVE PLAINTIFF'S DEMONSTRATIVE

13    EXHIBIT 25?

14              CAN YOU -- CAN YOU TELL US WHAT THIS IS

15    SHOWING, PLEASE?

16    A    SO I THINK THIS MIGHT BE THE NEW YORK TIMES

17    WEBSITE, I CAN'T SEE THE TOP OF IT HERE, BUT IT

18    LOOKS LIKE A WEBSITE WITH A NUMBER OF NEWS STORIES.

19              CAN WE PLAY IT?

20              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

21    OPEN COURT OFF THE RECORD.)

22              THE WITNESS:  SO YOU SEE THERE, HE DOUBLE

23    TAPPED, IT FIGURED OUT THE STORY THE PERSON WANTED

24    TO READ, ZOOMED IN TO SHOW THAT STORY, SO THE STORY

25    LOOKS GREAT.
```

754

```
 1              NOW IF HE DOUBLE TAPS SOMEWHERE ELSE, IT
 2     AUTOMATICALLY ZOOMS AND MOVES THAT OTHER STORY OR
 3     INFORMATION -- THIS IS SOME STOCK PRICES -- INTO
 4     VIEW.
 5              SO IT MAKES IT REALLY SIMPLE FOR YOU TO
 6     MOVE AROUND, NAVIGATE AROUND THE WEBSITE JUST BY
 7     DOUBLE TAPPING ON WHAT YOU WANT TO SEE.
 8     BY MR. MCELHINNY:
 9     Q    HOW DID YOU COME UP WITH THIS INVENTION?
10     A    I REMEMBER AS WE BUILT THE IPHONE, I SPENT A
11     LOT OF TIME USING THE EARLY PROTOTYPES MYSELF.  AND
12     I WOULD USE THEM TO SEND ALL MY E-MAIL, TO BROWSE
13     THE WEB, BASICALLY ANYTHING I COULD DO ON THE
14     PROTOTYPE I WOULD DO ON THE PROTOTYPE INSTEAD OF ON
15     A COMPUTER.
16              AND SO I SPENT A LOT OF TIME BROWSING THE
17     WEB ON THE EARLY PROTOTYPE.  IT WAS REALLY COOL,
18     BECAUSE YOU COULD PINCH IN TO STORIES, YOU COULD
19     USE YOUR FINGER TO SCROLL THROUGH THE STORY, MOVE
20     TO ANOTHER STORY AND YOU COULD PINCH OUT.
21              BUT I FOUND I SPENT A LOT OF TIME
22     CAREFULLY PINCHING A STORY TO BE JUST RIGHT, SO IT
23     WOULD FIT JUST RIGHT WITH THE RIGHT FONT SIZE, AND
24     THEN SCROLLING IT, AND THEN PINCHING THE NEXT STORY
25     TO BE JUST RIGHT, SITUATED EXACTLY WHERE I WANTED
```

755

```
1     IT ON THE PHONE.

2              AND I THOUGHT, I'M HOLDING THIS

3     INCREDIBLY POWERFUL DEVICE IN MY HAND, WHY CAN'T IT

4     FIGURE OUT WHAT I KEEP ON DOING OVER AND OVER AGAIN

5     AND JUST DO IT FOR ME?

6              AND SO I CHALLENGED THE TEAM TO ENABLE

7     YOU TO JUST DOUBLE TAP ON A STORY AND THEN HAVE IT

8     DO THE ZOOM UP AND CENTER IT, SUBSTANTIALLY IN THIS

9     CASE, CENTER IT FOR ME TO READ THAT STORY.

10             AND THE TEAM AT FIRST THOUGHT THIS IS

11    GOING TO BE SUPER HARD, MAYBE NOT POSSIBLE, AND

12    THEY WENT BACK AND WORKED REALLY HARD AND MADE IT

13    POSSIBLE.

14    Q    IS THERE ANY RELATIONSHIP BETWEEN THE FEATURES

15    THAT WE'RE SHOWING AND THE ACTUAL STRUCTURE OF THE

16    WEB PAGE ITSELF?

17    A    YES.  THE WEB PAGE, BY ITS NATURE, IS -- IT'S

18    AN ELECTRONIC DOCUMENT, THE WEB PAGE IS, AND WEB

19    PAGES ARE GENERALLY MADE WITH THIS LANGUAGE CALLED

20    HTML, AND HTML DEFINES PIECES OF STRUCTURE.

21             AND SO WHAT WE IMPLEMENTED WAS WHEN THE

22    USER DOUBLE TAPS ON AN AREA, IT FIGURES OUT THE

23    PIECE OF STRUCTURE THAT IS DEFINED BY THE HTML AND

24    DEFINED BY THE APPEARANCE ON THE SCREEN, DETERMINES

25    THE SORT OF BOX OF STRUCTURE YOU CARE ABOUT, AND
```

1    THAT'S THE ONE THAT IT ZOOMS UP FOR YOU.

2    Q    PHYSICALLY, HOW IS THIS FEATURE IMPLEMENTED?

3    HOW DO YOU PUT IT INTO THE PHONE SYSTEM?  IS IT A

4    SOFTWARE STRUCTURE?

5    A    IT IS -- THE WHOLE THING IS A PIECE OF

6    SOFTWARE.  IT'S BUILT RIGHT INTO THE OS, AND BUILT

7    INTO A NUMBER OF PLACES IN THE OS.

8              SO YOU CAN USE IT, YOU KNOW, IN THIS

9    EXAMPLE IN A BROWSER.  YOU CAN USE IT IN MAIL, SAY

10   YOU RECEIVE DOCUMENTS.

11             YOU CAN DO IT, I THINK, TO PREVIEW OTHER

12   SORTS OF DOCUMENTS, LIKE PDF'S.

13             SO IT'S SORT OF BUILT THROUGHOUT THE OS

14   TO NAVIGATE THROUGH STRUCTURED DOCUMENTS.

15   Q    ARE THERE ANY CHALLENGES TO CODING OR PUTTING

16   THIS FEATURE INTO SOFTWARE?

17   A    YEAH, THERE WERE.

18             UNDERSTANDING THAT STRUCTURE AND, IN

19   FACT, THE STRUCTURE THAT THE USER CARES ABOUT,

20   THAT'S THE CHALLENGE.  THAT'S A LOT OF THE

21   CHALLENGE.

22             YOU CAN IMAGINE A STORY ON THE WEBSITE

23   WHERE THE FIRST LETTER OF THE FIRST WORD OF A STORY

24   IS A BIG CAPITAL LETTER, A GIANT LETTER, AND THE

25   REST OF THE STORY IS SMALLER.

757

```
 1            WHEN YOU DOUBLE TAP AROUND THAT FIRST
 2   LETTER, THE USER PROBABLY DOESN'T MEAN TO ZOOM INTO
 3   ONE LETTER.  THEY PROBABLY MEAN TO ZOOM INTO THE
 4   COLUMN OF THAT STORY.
 5            SO THERE WAS A LOT OF WORK TO FIGURE OUT
 6   WHAT WAS THE CORRECT STRUCTURE AND THE CORRECT BOX
 7   THAT THE USER CARED ABOUT AND ZOOM UP THAT CORRECT
 8   ONE.
 9   Q    IS IT THE GOAL HERE TO MOVE EACH THING THAT
10   THE PERSON WANTS INTO THE EXACT CENTER OF THE
11   SCREEN?
12            MR. JOHNSON:  OBJECTION.  LEADING.
13            THE COURT:  SUSTAINED.
14   BY MR. MCELHINNY:
15   Q    CAN YOU TELL US WHETHER OR NOT IT IS THE GOAL
16   OF THIS TO MOVE THE BOX DIRECTLY INTO THE CENTER OF
17   THE STRUCTURE?
18   A    SO THE GOAL IS TO -- WE CALL IT SUBSTANTIALLY
19   CENTER IT, BUT THE GOAL IS TO MOVE IT TO THE BEST
20   VIEWING PLACE FOR YOU.
21            IF YOU HAVE A PICTURE WHICH IS SURROUNDED
22   BY A LOT OF OTHER TEXT OR PICTURES AND THAT PICTURE
23   IS IN THE CENTER, WHEN YOU DOUBLE TAP ON THAT
24   PICTURE, IT'LL LIKELY END UP EXACTLY CENTERED ON
25   THE PHONE.
```

1            BUT IF YOU HAVE A, A COLUMN OF

2     INFORMATION, LET'S SAY IT'S A COLUMN OF FIRST NAMES

3     AND THEY'RE VERY SHORT NAMES AND IT'S ON THE VERY

4     LEFT-HAND SIDE OF A WEB PAGE, IF YOU DOUBLE TAP ON

5     THAT COLUMN, IT WOULD BE FOOLISH TO CENTER THAT

6     COLUMN IN THE MIDDLE OF THE PHONE BECAUSE YOU LEAVE

7     ALL THIS EMPTY SPACE BEYOND IT TO THE LEFT.  YOU'RE

8     JUST WASTING SPACE.

9            YOU CAN STILL PERFECTLY READ THOSE NAMES

10    LINED UP ON THE EDGE OF THE PHONE AND SEE MORE OF

11    THE WEB PAGE TO THE RIGHT.

12           SO WE TALKED ABOUT IT AS BEING

13    SUBSTANTIALLY CENTERED, MEANING CENTER IT WHERE IT

14    MAKES SENSE, BUT DON'T GO BEYOND THE EDGE OF A

15    DOCUMENT BECAUSE THERE'S NO REASON TO DO THAT.

16    Q    SIR, AS THE DEVELOPER OF ALL OF THE IOS

17    SYSTEM, DO YOU CONSIDER THIS A SIGNIFICANT FEATURE

18    IN THE IPHONE?

19    A    ABSOLUTELY.

20    Q    AND WHAT IS THE SIGNIFICANCE OF IT?

21    A    I REMEMBER WHAT IT WAS LIKE TO USE BEFORE WE

22    HAD THIS, WHILE WE WERE DEVELOPING IT, AND AFTER WE

23    IMPLEMENTED THE FEATURE, AND IT DRAMATICALLY

24    CHANGED HOW I USED THE WEB.  FOR ME PERSONALLY, IT

25    ENABLED ME TO BROWSE THE WEB MUCH MORE QUICKLY,

1    MUCH MORE FLUIDLY, AND I WOULD THINK TO GO AND

2    BROWSE CERTAIN WEBSITES ON MY PHONE WHERE, BEFORE,

3    I MIGHT HAVE THOUGHT I HAVE TO GO TO A COMPUTER FOR

4    THAT.

5            AND WE KNOW FROM OUR USERS THAT BROWSING

6    THE WEB IS ONE OF THE MORE POPULAR THINGS THEY DO

7    ON OUR IPHONES, AND ESPECIALLY ON OUR IPADS.

8            AND SO THIS, I THINK, ENABLES YOU TO HAVE

9    A, A DRAMATICALLY BETTER EXPERIENCE BROWSING THE

10   WEB ON OUR DEVICES.

11   Q    SIR, WAS THE FEATURE THAT'S COVERED BY THIS

12   PATENT, YOUR INVENTION, WAS IT EVER THE SUBJECT OF

13   A SPECIFIC AD THAT APPLE DID FOR ITS PRODUCTS?

14   A    YES.  WE MADE A TELEVISION AD SPECIFICALLY TO

15   HIGHLIGHT THIS.

16           MR. MCELHINNY:  YOUR HONOR, AT THIS POINT

17   I WOULD LIKE TO SHOW THAT AD, WHICH IS PART OF

18   PLAINTIFF'S EXHIBIT 12, WHICH IS IN EVIDENCE.

19           THE COURT:  ALL RIGHT.  GO AHEAD, PLEASE.

20           (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

21   OPEN COURT OFF THE RECORD.)

22           MR. MCELHINNY:  THANK YOU, MR. FORSTALL.

23           I HAVE NO FURTHER QUESTIONS.

24           THE COURT:  ALL RIGHT.  THE TIME IS NOW

25   1:40.

760

**CROSS-EXAMINATION**

1

2   BY MR. JOHNSON:

3   Q   GOOD AFTERNOON, MR. FORSTALL.

4   A   GOOD AFTERNOON.

5   Q   MY NAME IS KEVIN JOHNSON.  WE'VE SEEN EACH

6   OTHER BEFORE; RIGHT?

7   A   SEVERAL DEPOSITIONS.

8   Q   OKAY.

9          SO IF I MAY APPROACH, YOUR HONOR, WE'RE

10  GOING TO HAND OUT SOME BINDERS.

11         (PAUSE IN PROCEEDINGS.)

12         MR. JOHNSON:  I THINK I'M JUST GOING TO

13  REFER TO THE LAST ONE.

14   Q   NOW, THE ORIGINAL IPHONE WAS INTRODUCED,

15  MR. FORSTALL, IN JANUARY 2007; RIGHT?

16   A   CORRECT.

17   Q   AND LET'S GO BACK A LITTLE BIT FURTHER AND

18  TALK ABOUT THE DEVELOPMENT OF THE IPHONE.

19         IN 2006, YOUR TEAM WAS CONCERNED THAT THE

20  SPEED OF THE PROCESSOR THAT WAS GOING TO BE USED IN

21  THE IPHONE WAS TOO SLOW COMPARED TO THE SPEED OF

22  THE PROCESSORS USED IN OTHER SMARTPHONES, INCLUDING

23  SAMSUNG'S SMARTPHONES; RIGHT?

24   A   I HAD CONCERNS THAT I WANTED IT TO BE AS FAST

25  AS POSSIBLE, YES.

761

1    Q    AND IN FACT, YOU LOOKED AT WHAT SAMSUNG'S

2    PHONE DID AND WHAT KIND OF PROCESSOR IT HAD; RIGHT?

3    DO YOU REMEMBER DOING THAT?

4    A    YES.

5    Q    OKAY.  AND THE IDEA THERE WAS THAT, BY LOOKING

6    AT WHAT YOUR COMPETITORS WERE DOING, POTENTIALLY,

7    THAT WAS OKAY; RIGHT?

8    A    YES.

9    Q    NOW, THERE WERE OTHER INSTANCES WHEN

10   EXECUTIVES AT APPLE LOOKED AT WHAT COMPETITORS WERE

11   DOING DURING THE DEVELOPMENT OF THE IPHONE; RIGHT?

12   A    YES.

13   Q    AND THERE WERE OTHER EXAMPLES WHEN APPLE

14   EXECUTIVES LOOKED SPECIFICALLY AT WHAT SAMSUNG WAS

15   DOING IN DEVELOPMENT OF THE IPHONE; RIGHT?  DURING

16   THE DEVELOPMENT OF THE IPHONE?

17   A    YES.

18   Q    NOW, DO YOU RECALL LOOKING AT A SAMSUNG PHONE

19   CALLED THE SGH-E910, A BANG & OLUFSEN FASHION

20   PHONE?

21   A    I DO NOT.

22   Q    DO YOU REMEMBER THAT IT HAD A CLICKWHEEL-LIKE

23   CONTROL?

24   A    I DO NOT.

25   Q    IF I CAN DIRECT YOUR ATTENTION TO EXHIBIT,

762

1    DEFENDANT'S EXHIBIT 2524 THERE, PLEASE.

2            LET ME KNOW WHEN YOU'RE THERE.

3            DO YOU SEE IT?

4    A    YEP.

5    Q    OKAY.  DO YOU SEE IN THE MIDDLE THERE'S A --

6    THERE'S AN E-MAIL FROM TONY FADELL TO STEVE JOBS,

7    JONATHAN IVE, AND YOUR NAME IS LISTED AS A

8    RECIPIENT?

9    A    YES.

10   Q    AND THE E-MAIL IS DATED OCTOBER 5TH, 2005.  DO

11   YOU SEE THAT?

12   A    YES.

13   Q    AND THAT WAS OBVIOUSLY DURING THE DEVELOPMENT

14   OF THE IPHONE?

15   A    YES.

16           MR. JOHNSON:  YOUR HONOR, I'D ASK THAT

17   THIS EXHIBIT BE ADMITTED.

18           THE COURT:  ANY OBJECTION?

19           MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.

20           THE COURT:  IT'S ADMITTED.

21           (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

22           2524, HAVING BEEN PREVIOUSLY MARKED FOR

23           IDENTIFICATION, WAS ADMITTED INTO

24           EVIDENCE.)

25   BY MR. JOHNSON:

763

```
1    Q    AND DO YOU SEE THAT IN THIS EXHIBIT,

2    MR. FADELL -- BY THE WAY, MR. FADELL IS, WHAT, HE

3    WAS IN CHARGE OF HARDWARE FOR THE DEVELOPMENT OF

4    THE IPHONE?

5    A    YES, MOST OF THE HARDWARE.

6    Q    AND WE OBVIOUSLY KNOW WHO STEVE JOBS IS.

7              WHO'S JOHN RUBENSTEIN?

8    A    TONY FADELL REPORTED TO JOHN RUBENSTEIN, I

9    BELIEVE.

10   Q    SO WAS MR. RUBENSTEIN IN CHARGE OF, ULTIMATELY

11   IN CHARGE OF HARDWARE FOR THE IPHONE AT THE TIME?

12   A    YES.

13   Q    AND JEFF WILLIAMS IS ANOTHER SENIOR APPLE

14   EXECUTIVE; RIGHT?

15   A    YES.

16   Q    IS HE A MEMBER OF THE APPLE EXECUTIVE TEAM,

17   ONE OF THE TEN PEOPLE YOU TALKED ABOUT?

18   A    HE IS NOW.  HE WASN'T AT THE TIME.  BUT HE IS

19   NOW, YES.

20   Q    OKAY.  AND HOW ABOUT JOHNNY IVE?  JOHNNY IVE

21   IS THE LEAD INDUSTRIAL DESIGNER AT APPLE; RIGHT?

22   A    YES.

23   Q    AND IS HE A MEMBER OF THE EXECUTIVE TEAM?

24   A    YES, HE IS.

25   Q    AND DO YOU SEE THAT MR. FADELL FORWARDS
```

```
1    ULTIMATELY THIS E-MAIL ALONG TO MEMBERS WHO ARE NOW
2    ON THE EXECUTIVE TEAM AT APPLE, AND DO YOU SEE THAT
3    ULTIMATELY ABOVE THERE, STEVE JOBS FORWARDS THAT
4    E-MAIL TO MR. IVE AND SAYS, QUOTE, "THIS MAY BE OUR
5    ANSWER -- WE COULD PUT THE NUMBER PAD AROUND OUR
6    CLICKWHEEL."
7             DO YOU SEE THAT?
8    A    YES.
9    Q    AND DO YOU SEE THAT HE THEN, MR. JOBS, IS
10   ASKING FOR THOUGHTS FROM MR. IVE AND FROM
11   MR. ORDING ABOUT WHETHER THAT WOULD WORK OR NOT?
12   A    YES.
13   Q    THIS IS AN EXAMPLE OF APPLE EXECUTIVES LOOKING
14   AT THE SAMSUNG, IN THIS CASE, THE SGH-E910, FOR
15   INSPIRATION, RIGHT, DURING THE DEVELOPMENT OF THE
16   IPHONE.  THAT'S WHAT MR. JOBS SAYS THERE; RIGHT?
17   "THIS MAY BE OUR ANSWER"?
18   A    SO I CAN'T TELL FROM THIS WHETHER OR NOT IT
19   WAS FOR INSPIRATION.  WHEN HE SAYS "THIS MAY BE OUR
20   ANSWER," I CAN'T, READING THIS ONE, SAY BECAUSE I
21   DON'T REMEMBER WHAT THIS BANG & OLUFSEN PHONE WAS,
22   WHETHER HE'S SAYING THAT THAT ONE DOES SOMETHING,
23   OR HE'S SAYING "THIS MIGHT BE OUR ANSWER, WE CAN
24   PUT THE NUMBER PAD AROUND THE CLICKWHEEL."  SO I'M
25   NOT SURE HOW TO READ THIS ONE.
```

765

```
1    Q    ALL RIGHT.  LET'S LOOK AT EXHIBIT 2525,

2    PLEASE.  THIS IS AGAIN ANOTHER E-MAIL FROM

3    MR. FADELL TO MR. IVE, MR. JOBS, MR. SCHILLER, WHO

4    JUST TESTIFIED, AND TO YOU; RIGHT?

5    A    YES.

6    Q    AND THIS IS DATED NOVEMBER 7TH, 2006?

7    A    YES.

8              MR. JOHNSON:  YOUR HONOR, WE ASK THAT

9    THIS BE ADMITTED AS WELL.

10             THE COURT:  ANY OBJECTION?

11             MR. MCELHINNY:  NO, YOUR HONOR.

12             THE COURT:  IT'S ADMITTED.

13             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

14             2525, HAVING BEEN PREVIOUSLY MARKED FOR

15             IDENTIFICATION, WAS ADMITTED INTO

16             EVIDENCE.)

17   BY MR. JOHNSON:

18   Q    THIS IS ANOTHER EXAMPLE OF APPLE EXECUTIVES

19   LOOKING AT ANOTHER SAMSUNG PRODUCT DURING THE

20   DEVELOPMENT OF THE IPHONE; RIGHT?

21   A    YES.

22   Q    AND THIS REFERENCE HERE REFERS TO WHAT'S

23   CALLED A NEW THREE-WAY FOLDABLE COMBINATION OF

24   PHONE, PERSONAL COMPUTER, AND MUSIC PLAYER.

25             DO YOU SEE THAT?
```

766

1    A    YES.

2    Q    DO YOU REMEMBER WHAT THIS PHONE LOOKED LIKE?

3    A    I DO NOT, NO.

4    Q    LET ME DIRECT YOUR ATTENTION TO EXHIBIT 2517.

5         NOW, ISN'T IT TRUE THAT APPLE EMPLOYEES

6    EVEN STARTED A COMPETITIVE ANALYSIS --

7    A    HOLD ON A SECOND.

8    Q    SURE.

9    A    2517.  OKAY.

10   Q    ARE YOU WITH ME?

11   A    YES.

12   Q    OKAY.  SO ISN'T IT TRUE THAT APPLE EMPLOYEES

13   STARTED A COMPETITIVE ANALYSIS INITIALLY IN 2008 TO

14   DETERMINE THE AREAS THAT THE IPHONE WAS LAGGING

15   BEHIND THE COMPETITION, INCLUDING SAMSUNG IN THIS

16   EXAMPLE?

17   A    NO, THAT'S NOT NECESSARILY WHAT THIS ONE

18   REFERS TO.

19        WE ARE ASKED TO BENCHMARK AGAINST THE

20   CALL PERFORMANCE OF OTHER CARRIERS, WHICH MEANS THE

21   NUMBER OF CALLS DROPPED.

22        WHEN YOU HAVE A PHONE, IT MAY DROP A CALL

23   AND THAT COULD BE DUE TO THE PHONE ITSELF, BUT IT

24   ALSO COULD BE DUE TO THE NETWORK.

25        AND SO THE LITMUS TEST THAT CARRIERS ASK

767

```
 1    US TO DO IS TO TAKE CERTAIN OTHER PHONES, DRIVE

 2    THESE DRIVE ROUTES WHERE WE'RE ON A PHONE CALL ON

 3    MULTIPLE PHONES, OUR OWN AND OTHERS, AND SO -- AND

 4    SEE WHERE IT DROPS.

 5          AND IF WE DROP LESS PHONES THAN WHAT THEY

 6    WOULD CONSIDER TO BE THEIR GOLDEN HANDSET, THEN THE

 7    PHONE MIGHT BE GREAT AND BE DOING THE RIGHT THING

 8    WITH ITS SOFTWARE, BUT THE NETWORK MIGHT HAVE A, A

 9    LOW COVERAGE IN THAT AREA.

10          AND SO THIS RIGHT HERE -- AND THE PERSON

11    WHO'S RESPONSIBLE FOR SENDING THIS IS THE ONE WHO'S

12    RESPONSIBLE FOR THESE KIND OF DRIVE TESTS THEY WERE

13    REQUESTING TO COMPARE THE CALL DROP PERFORMANCE.

14    Q    AND IN THIS INSTANCE, THEY WERE COMPARING THE

15    PERFORMANCE OF THE IPHONE TO EVERY MAJOR SMARTPHONE

16    VENDOR, INCLUDING SAMSUNG; RIGHT?

17    A    YES.

18    Q    AND IN FACT, IN THIS INSTANCE, AND THIS IS --

19    YOU SEE THAT THIS IS AN APPLE INTERNAL E-MAIL DATED

20    NOVEMBER 18TH, 2008?

21    A    YES.

22    Q    AND DO YOU SEE THAT TOWARDS THE END, IT REFERS

23    SPECIFICALLY TO THE FACT THAT EACH FUNCTIONAL TEAM

24    WILL NEED TO ANALYZE THE AREA THAT WE ARE LAGGING

25    IN COMPETITION?
```

768

```
 1    A    YES.
 2              MR. JOHNSON:  YOUR HONOR, WE HAD ASK AT
 3    THIS POINT THAT EXHIBIT 2517 BE MOVED INTO
 4    EVIDENCE.
 5              THE COURT:  ANY OBJECTION?
 6              MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.
 7              THE COURT:  SO ADMITTED.
 8              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
 9              2517, HAVING BEEN PREVIOUSLY MARKED FOR
10              IDENTIFICATION, WAS ADMITTED INTO
11              EVIDENCE.)
12    BY MR. JOHNSON:
13    Q    DO YOU SEE THAT THERE'S ALSO A REFERENCE AT
14    THE END OF THE FIRST PARAGRAPH THAT SAYS "WE'RE IN
15    THE PROCESS OF PURCHASING THESE DEVICES"?  DO YOU
16    SEE THAT?
17    A    YES.
18    Q    AND THAT "ONCE THEY ARRIVE, WE'LL START
19    VERIFYING THEIR FEATURE SETS IN EACH AREA."  RIGHT?
20    A    YES.
21              NOW, THIS TEAM IS THE TEAM THAT DOES
22    BASEBAND, WHICH IS THE CELL CONNECTIVITY TO THE
23    CELL TOWERS.
24              SO WHAT THEY WOULD BE REFERRING TO IS
25    FEATURES HERE, AND EVEN IN THE PART BELOW,
```

```
 1    FUNCTIONAL TEAMS, OUR FUNCTIONAL TEAMS RELATED TO

 2    PROTOCOLS BETWEEN THE PHONE AND THE CELL TOWER.

 3              THIS HAS NOTHING TO DO WITH USER

 4    INTERFACE OR TOUCH AT ALL.  THIS IS SPECIFICALLY TO

 5    DO WITH MAKING PHONE CALLS.

 6    Q    THIS SAYS THEY'RE GOING TO BE EVALUATING THE

 7    FEATURE SET IN EACH AREA; RIGHT?

 8    A    IT SAYS EACH AREA, AND FOR HYNENG, EACH AREA

 9    WOULD MEAN HIS AREA, WHICH IS THE PROTOCOLS FOR

10    MAKING A PHONE CALL.

11    Q    AND MR. HYNENG IS A SENIOR MANAGER IN THE

12    SOFTWARE?  HE REPORTS ULTIMATELY AS PART OF YOUR

13    GROUP?

14    A    HE'S IN THE RADIO TEAM.

15    Q    BUT HE'S PART OF YOUR GROUP; RIGHT?

16    A    YES.

17    Q    HE'S PART OF THE 1,000 OR 2,000 PEOPLE YOU

18    MENTIONED THAT ULTIMATELY YOU HAVE SUPERVISION FOR,

19    HE'S PART OF THAT; RIGHT?

20    A    YES.

21    Q    ARE YOU AWARE THAT APPLE HAS DONE VERY

22    DETAILED TEAR-DOWN ANALYSES OF COMPETITORS'

23    PRODUCTS, INCLUDING SAMSUNG'S?

24    A    YES.

25    Q    LET ME DIRECT YOUR ATTENTION TO EXHIBIT 2519.
```

770

```
1    LET ME KNOW WHEN YOU HAVE THAT.

2    A    GOT IT.

3    Q    OKAY.  THIS IS AN EXAMPLE OF ONE OF THOSE

4    TEAR-DOWNS; RIGHT?  IN THIS INSTANCE, THERE'S A

5    TEAR-DOWN OF THE SAMSUNG GALAXY S; RIGHT?

6    A    YES.

7              MR. JOHNSON:  YOUR HONOR, WE'D MOVE 2519

8    INTO EVIDENCE.

9              MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.

10             THE COURT:  IT'S ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             2519, HAVING BEEN PREVIOUSLY MARKED FOR

13             IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15   BY MR. JOHNSON:

16   Q    AND I THINK YOU SAID, LOOKING AT THE OTHER

17   REFERENCE THAT WE JUST LOOKED AT, THAT THAT RELATED

18   TO DROPPED CALLS.

19             THIS IS A TEAR-DOWN THAT WE'RE LOOKING AT

20   NOW, 2519, THAT SPECIFICALLY REFERS TO EXAMINING

21   THE SOFTWARE FEATURES AND USER INTERFACE FOR THE

22   GALAXY S.  RIGHT?  DO YOU SEE ON THE SECOND PAGE AT

23   THE TOP, "EXAMINE SOFTWARE FEATURES AND U/I"?

24   A    I SEE THAT.  I'VE NEVER SEEN THIS BEFORE, AND

25   THIS WAS NOT DONE BY THE SOFTWARE TEAM.
```

1    Q    BUT IF YOU THUMB THROUGH THE PAGES, IF YOU

2    LOOK, FOR EXAMPLE, AT THE PAGE THAT ENDS IN 984,

3    YOU'LL SEE THERE A REFERENCE TO THE SAMSUNG

4    GALAXY S PHONE; RIGHT?

5    A    YES.

6    Q    AND IT SHOWS THE TOUCH BUTTONS THAT WE SEE AT

7    THE BOTTOM?

8    A    YEP.

9    Q    NOW, THESE ARE DIFFERENT FROM THE SINGLE HOME

10   BUTTON THAT'S USED ON AN IPHONE OR ON THE IPAD;

11   RIGHT?

12   A    YES.

13   Q    AND YOU'LL SEE THAT IT ALSO REFERS TO THE

14   SAMSUNG TOUCHWIZ U/I 3.0; RIGHT?

15   A    YES.

16   Q    AND ANDROID 2.1 IS A REFERENCE TO THE GOOGLE

17   ANDROID OPERATING SYSTEM; RIGHT?

18   A    CORRECT.

19   Q    AND IF YOU GO TO THE NEXT PAGE, 985, YOU'LL

20   SEE A FURTHER TEAR-DOWN OF THE DEVICE.  YOU'LL SEE

21   THE FACT THAT IT REFERS TO A, A -- THERE'S A BACK

22   COVER THAT'S REMOVED?

23   A    YEP.

24   Q    RIGHT?  AND THE -- AND HAVE YOU SEEN -- STRIKE

25   THAT.

```
1              THE -- THE BATTERY IN AN IPHONE CAN'T BE

2     REMOVED, RIGHT, BY A CONSUMER?

3     A    CORRECT.

4     Q    OKAY.  IF YOU GO TO THE NEXT PAGES, 986, 987,

5     YOU'LL SEE FURTHER DETAILED TEAR-DOWN ANALYSES,

6     RIGHT, BREAKING OUT EACH COMPONENT AND LOOKING BOTH

7     AT HARDWARE COMPONENTS AND THE ACTUAL BOARDS THAT

8     ARE USED, FOR EXAMPLE, ON 991?

9     A    ON 991?  WHERE IS THAT?

10    Q    THE LAST THREE NUMBERS ARE 991.  DO YOU SEE

11    THE LETTERS AT THE BOTTOM, PCB, THAT'S THE PRINTED

12    CIRCUIT BOARD ON THE GALAXY S?

13    A    SORRY.  YOU FLIPPED SEVERAL PAGES DOWN.

14             OKAY, YEAH, I SEE IT.

15    Q    OKAY.  AND THEN ON THE NEXT PAGE THERE'S AN

16    EVALUATION OF THE SOFTWARE FEATURES.

17             DO YOU SEE THAT?

18    A    I DON'T KNOW IF I'D CALL IT AN EVALUATION OF

19    SOFTWARE FEATURES, BUT IT'S A LIST OF A FEW

20    SOFTWARE FEATURES, YES.

21    Q    WELL, EARLIER IN THE DOCUMENT, WE SAW "EXAMINE

22    SOFTWARE FEATURES AND U/I."  THAT'S WHAT THIS PAGE

23    AT LEAST IS REFERRING TO; RIGHT?

24    A    YEAH.  I GUESS I JUST DON'T -- IT SAYS SAMSUNG

25    TOUCHWIZ.  IT'S DESCRIBING IT.  THERE'S NO
```

773

```
 1    EVALUATION ON THAT.
 2    Q    AT LEAST, FOR EXAMPLE, IN THE SOCIAL HUB, IT
 3    TALKS ABOUT INTEGRATING ALL MESSAGING STREAMS INTO
 4    ONE; UNDER SWIPE, IT TALKS ABOUT THE FACT THAT YOU
 5    CAN TYPE UP TO 40 WORDS PER MINUTE; RIGHT?
 6    A    YES.
 7    Q    NOW, THERE'S NO SWIPE ON THE IPHONE, IS THERE?
 8    A    THERE IS NOT.
 9    Q    THERE'S NO SOCIAL HUB WIDGET ON THE IPHONE;
10    RIGHT?
11    A    THERE IS NOT.
12    Q    MR. FORSTALL, ARE YOU AWARE OF APPLE'S SENIOR
13    EXECUTIVES LOOKING AT SAMSUNG'S GALAXY TAB, IN THIS
14    INSTANCE A SEVEN-INCH TAB, TABLET COMPUTER, AND
15    LOOKING AT IT FOR THE PURPOSE OF EVALUATING WHETHER
16    IT MADE SENSE FOR APPLE TO MAKE A SEVEN-INCH IPAD?
17    A    I DON'T KNOW IF IT WAS LOOKED AT FOR THAT
18    REASON.  I DO KNOW THAT EDDIE CUE ONCE LOOKED AT,
19    USED IT FOR A LITTLE WHILE.
20         BUT I DON'T REMEMBER IF IT WAS DONE AS,
21    YOU KNOW, TO THE EXTENT, THE REASON THAT YOU SAID.
22    HE MIGHT HAVE COME TO A CONCLUSION, BUT I DON'T
23    REMEMBER HIM SAYING "I'M GOING TO LOOK AT THIS TO
24    SEE IF THIS IS SOMETHING WE SHOULD DO."
25    Q    WHO'S EDDIE CUE?
```

774

```
1    A    HE RUNS ITUNES AND A NUMBER OF THE APPS AT
2    APPLE.
3    Q    OKAY.  LET ME DIRECT YOUR ATTENTION TO EXHIBIT
4    2522, PLEASE.  THIS IS AN E-MAIL FROM MR. CUE TO
5    YOU, AS WELL AS TO MR. SCHILLER AND TIM COOK.  DO
6    YOU SEE THAT?
7    A    YEAH.  THERE'S SOMETHING ODD ABOUT THE
8    PRINTER, THE PRINTOUT YOU GAVE ME HERE.
9    Q    THIS IS A DOCUMENT -- THIS IS AN INTERNAL --
10   A    HOLD ON A SECOND.  WHAT I HAVE ON HERE LOOKS
11   DIFFERENT FROM WHAT YOU'RE SHOWING ON THE SCREEN
12   HERE.
13   Q    THERE MAY NOT HAVE -- IT'S THE SAME DOCUMENT.
14   IT JUST MAY NOT HAVE THE EXHIBIT?
15   A    IT'S NOT JUST THAT.  IT ACTUALLY SAYS, I DON'T
16   KNOW, I-G-A-D-S-A-L.  IT HAS NONSENSICAL WORDS ON
17   HERE.
18   Q    OKAY.  LET'S LOOK AT EXHIBIT 2522 AND I'LL
19   HAND UP -- I'LL HAND YOU A SEPARATE COPY DURING THE
20   INTERIM.
21              CAN WE GET THAT PLEASE?
22              IF WE LOOK AT WHAT'S ON THE SCREEN IN
23   FRONT OF YOU, CAN YOU SEE THAT?
24   A    I CAN.  IT'S A LITTLE BLURRY, BUT YES.
25              (PAUSE IN PROCEEDINGS.)
```

```
1              (DISCUSSION OFF THE RECORD.)
2              THE COURT:  I DON'T THINK THIS IS
3    APPROPRIATE FOR YOU ALL TO BE HAVING A
4    CONVERSATION, OKAY?
5              MR. JOHNSON:  YEAH.
6              THE COURT:  JUST ASK HIM.
7    BY MR. JOHNSON:
8    Q    LET'S GO BACK.  2522 IN FRONT OF YOU, DO YOU
9    RECOGNIZE THAT AS AN E-MAIL FROM MR. CUE TO YOU, TO
10   MR. COOK, AND TO MR. SCHILLER?
11   A    YES.
12   Q    AND IT'S DATED NOVEMBER -- IT'S DATED
13   JANUARY 24TH, 2011?
14   A    YES.
15   Q    AND THIS IS AN APPLE INTERNAL E-MAIL; RIGHT?
16   A    YES.
17             MR. JOHNSON:  WE ASK THAT IT BE ADMITTED,
18   YOUR HONOR, PLEASE.
19             THE COURT:  ANY OBJECTION?
20             MR. MCELHINNY:  NO OBJECTION.
21             THE COURT:  IT'S ADMITTED.
22             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
23             2522, HAVING BEEN PREVIOUSLY MARKED FOR
24             IDENTIFICATION, WAS ADMITTED INTO
25             EVIDENCE.)
```

776

```
 1   BY MR. JOHNSON:
 2   Q    NOW, IN THIS INSTANCE, THIS IS AN EXAMPLE OF
 3   AN APPLE EXECUTIVE LOOKING AT THE GALAXY TAB HERE,
 4   AND HE SAYS THAT HE TENDS TO AGREE WITH MANY OF THE
 5   COMMENTS BELOW, AND, QUOTE, "I BELIEVE THERE WILL
 6   BE A SEVEN-INCH MARKET AND WE SHOULD DO ONE."
 7              DO YOU SEE THAT?
 8   A    I DO.
 9   Q    ALL RIGHT.  TO GO BACK, THERE'S NOTHING WRONG
10   WITH COMPETITORS LOOKING AT OTHER COMPETITORS'
11   PRODUCTS FOR PURPOSES OF BENCHMARKING, IS THERE?
12   A    NO.
13   Q    NOW, YOU ARE THE INVENTOR ON -- ONE OF THE
14   INVENTORS ON THE '163 PATENT; RIGHT?
15   A    YES.
16   Q    AND I THINK YOU TALKED ABOUT HOW THE WORK THAT
17   WAS DONE WITH RESPECT TO THAT WAS DONE IN SECRECY;
18   RIGHT?
19   A    AS SECRET AS WE COULD MAKE IT, YES.
20   Q    AS SECRET AS YOU COULD MAKE IT.  OKAY.
21              SO THE WORK THAT STARTED ON THE IPHONE
22   STARTED IN ABOUT 2004; RIGHT?
23   A    YEAH, 2004.
24   Q    AND IT'S AFTER YOU GOT TO APPLE?
25   A    IT -- YEAH.  I GOT TO APPLE IN 1997 AND WE
```

1    STARTED, AS I SAID, THE TABLET PIECE IN 2003.

2    Q    RIGHT.

3    A    AND THEN MOVED TO THE IPHONE PIECE IN 2004.

4    Q    OKAY.  SO WITH RESPECT TO YOUR PATENT, YOU'RE

5    AWARE, SIR, THAT A CLAIM -- THE CLAIMS THAT COME AT

6    THE END OF THE PATENT ARE WHAT DEFINE THE SCOPE OF

7    THE INVENTION; RIGHT?

8    A    YES.

9    Q    AND YOU'RE AWARE THAT IN ORDER FOR THERE TO BE

10   INFRINGEMENT, EACH AND EVERY LIMITATION, EVERY WORD

11   THAT'S IN THOSE CLAIMS HAS TO BE FOUND IN THE

12   ACCUSED PRODUCTS?

13   A    SO I'M NOT A LAWYER, SO I CAN'T EXPLAIN TO YOU

14   WHAT THE LAW IS AROUND EXACTLY EACH WORD.  I DON'T

15   KNOW THAT.

16   Q    RIGHT.  BUT THAT'S YOUR GENERAL UNDERSTAND;

17   RIGHT?

18   A    MY UNDERSTANDING IS THE CLAIMS DESCRIBE THE

19   PATENT AND INFRINGEMENT IS BASED ON THOSE CLAIMS.

20   Q    IT -- YOU TALKED GENERALLY ABOUT THE SUBJECT

21   MATTER OF THE '163.

22        NOW, ARE YOU AWARE THAT IN DECIDING TO

23   ISSUE A PATENT, THE U.S. PATENT OFFICE LOOKS AT

24   WHAT OTHER INVENTIONS THAT IT CAN FIND WERE IN THE

25   FIELD PREVIOUSLY?

778

```
1              MR. MCELHINNY:  OBJECTION, YOUR HONOR.
2    THIS IS BEYOND THE SCOPE AND, GIVEN THE LIMITATIONS
3    ON DIRECT, I THINK THE CROSS SHOULD BE LIMITED TO
4    THE SCOPE THAT I WAS ALLOWED TO GO INTO.
5              MR. JOHNSON:  YOUR HONOR, HE TALKED ABOUT
6    THE DEVELOPMENT OF THIS AND ALL I'M TRYING TO DO IS
7    VERY BRIEFLY GO INTO A LITTLE BIT OF BACKGROUND.
8              THE COURT:  YOU'RE GOING INTO HOW YOU GET
9    A PATENT, WHICH IS NOT REALLY RELEVANT.
10             I'M GOING TO SUSTAIN THE OBJECTION.  GO
11   TO SOMETHING ELSE.
12   BY MR. JOHNSON:
13   Q    LET ME ASK YOU, ARE YOU AWARE -- YOU'RE THE
14   INVENTOR ON THE PATENT.  WERE YOU INVOLVED IN THE
15   PROSECUTION OF THE PATENT AT ALL?
16   A    I DON'T REMEMBER THE PATENT LAWYERS COMING
17   BACK TO ME DURING THE PROSECUTION.
18   Q    ARE YOU AWARE THAT THE CLAIMS OF THE '163
19   PATENT WERE NARROWED DURING THE PROSECUTION?
20             MR. MCELHINNY:  SAME OBJECTION, YOUR
21   HONOR.  THIS IS WAY BEYOND WHAT I WAS ALLOWED TO
22   ADDRESS AND WHAT HE'S ADDRESSED.
23             THE COURT:  OVERRULED.
24             THE WITNESS:  COULD YOU REPEAT THE
25   QUESTION?
```

779

```
 1    BY MR. JOHNSON:

 2    Q    ARE YOU AWARE THAT DURING THE PROSECUTION OF

 3    THE PATENT, THE CLAIMS WERE NARROWED BY APPLE?

 4    A    I AM NOT.

 5    Q    ARE YOU AWARE THAT CERTAIN PRIOR ART WAS

 6    LOCATED WITH RESPECT TO THE '163 PATENT AND, AS A

 7    RESULT OF THAT PRIOR ART, THE CLAIMS WERE NARROWED

 8    DURING THE PROSECUTION?

 9    A    I WAS NOT AWARE OF THAT.  I THINK YOU

10    MENTIONED THAT DURING MY DEPOSITION, BUT OTHER THAN

11    THAT, I WAS NOT AWARE OF IT.

12    Q    I THINK YOU -- YOU MENTIONED ELECTRONIC

13    DOCUMENT DURING YOUR DIRECT TESTIMONY.  DO YOU

14    REMEMBER TALKING ABOUT THAT?

15            MR. MCELHINNY:  HE DID NOT MENTION

16    ELECTRONIC DOCUMENT, YOUR HONOR.

17            MR. JOHNSON:  HE DID IN THE CONTEXT OF

18    THE NEW YORK TIMES WEB PAGE.  I LISTENED VERY

19    CAREFULLY, BECAUSE THAT'S OBVIOUSLY ONE OF THE

20    ISSUES INVOLVED IN THIS CASE.

21            SO LET ME REPHRASE IT.

22    Q    IN -- WHEN YOU WERE TESTIFYING ON DIRECT, YOU

23    MENTIONED THE NEW YORK TIMES WEB PAGE AS AN EXAMPLE

24    OF AN ELECTRONIC DOCUMENT THAT'S SORT OF COVERED BY

25    YOUR '163 PATENT; RIGHT?
```

870

1    Q    WHAT IS THAT?

2    A    IT SIMPLY -- AGAIN, THEY'RE MAIN COMPONENTS IN

3    A PHONE, AND THEY'RE NOT ALL PUT BEHIND THE GLASS,

4    IF YOU WILL, BEHIND THE DISPLAY FOR MANY REASONS.

5          SO YOU HAVE TO PUT THEM ON THE TOP AND/OR

6    ON THE BOTTOM OF THE DISPLAY, WHICH, OF COURSE,

7    MEANS THAT THERE HAS TO BE SPACE ABOVE AND BELOW

8    THIS WAY.

9          FOR INSTANCE, THE SPEAKER TYPICALLY IS

10   ABOVE THE DISPLAY.  THE MICROPHONE IS TYPICALLY

11   BELOW THE DISPLAY.

12         THERE'S KEYS, WHETHER THEY'RE HARD KEYS

13   OR CAPACITIVE KEYS, THAT ARE BELOW THE DISPLAY, FOR

14   INSTANCE.

15         AND THERE'S MANY OTHER I/C COMPONENTS

16   THAT YOU EITHER WOULD CHOOSE NOT TO PUT BEHIND THE

17   DISPLAY OR YOU NECESSARILY HAVE TO PUT ABOVE OR

18   BELOW JUST FOR REASONS OF EVEN DEVICE THINNESS.

19   Q    WE'VE HEARD SOME TESTIMONY ABOUT THE LOCATION

20   OF THE SPEAKER UP NEAR THE TOP.  DO YOU HAVE ANY

21   UNDERSTANDING ABOUT WHY SPEAKERS TEND TO BE PUT AT

22   THE TOP OF THE DEVICE?

23   A    IT'S JUST CLOSER TO THE EAR THAT WAY.

24   Q    AND THEN WE'VE HEARD ABOUT THIS, THE SPACING,

25   YOU KNOW, THE METAL OR PLASTIC ALONG THE SIDE OF

871

1    THE SCREEN.  IS THERE A TERM FOR THAT THAT'S USED

2    IN THE BUSINESS?

3    A    THE TERM I'VE HEARD IS CALLED THE BLACK MASK.

4    Q    AND THAT'S -- WHERE IS THAT ON THE PHONE?

5    A    THAT IS KIND OF, AS YOU WERE GESTURING, ALONG

6    THE SIDES OF THE SCREEN, LET'S SAY, IN BETWEEN WHAT

7    YOU WOULD SEE AS THE EDGE OF THE SCREEN TO THE EDGE

8    OF THE SORT OF OUTER EDGE OF EITHER THE BEZEL, IF

9    THERE'S A BEZEL, OR THE FRAME IF THERE'S A UNIBODY

10   FRAME, FOR INSTANCE.

11   Q    IS THERE A REASON WHY THESE PHONES ALL TEND TO

12   HAVE THESE BLACK MASKS ON EITHER SIDE OF THE

13   SCREEN?

14   A    THERE IS.

15   Q    AND WHAT IS THAT?

16   A    AGAIN, IN MY EXPERIENCE IN THE INDUSTRY,

17   ACTUALLY PEOPLE HAVE TRIED TO GET RID OF THAT, YOU

18   KNOW, BECAUSE YOU ACTUALLY WANT -- YOU REALLY DO

19   JUST WANT THE DEVICE TO BE JUST ONE GIANT SCREEN.

20   THAT'S WHAT WE THINK CONSUMERS ULTIMATELY WILL

21   WANT.

22        BUT YOU HAVE TO HAVE THAT FOR

23   MANUFACTURABILITY REASONS, AS WELL AS QUALITY

24   REASONS.  SO MANUFACTURABILITY BECAUSE YOU

25   ACTUALLY -- THERE'S NOTHING TO HOLD THE GLASS, PER

872

```
1    SE, ON TOP OF THE DEVICE.

2              AND SO WHAT ENDS UP HAPPENING IS YOU

3    ACTUALLY GLUE OR TAPE THE ACTUAL GLASS USING THOSE

4    THIN BORDERS ON TOP OF THE ACTUAL UNDERLYING

5    DISPLAY, BECAUSE THERE'S A PIECE OF GLASS AND THEN

6    UNDERNEATH THAT IS A DISPLAY AND YOU HAVE TO GLUE

7    THAT ON TOP.

8              MANUFACTURABILITY -- OR I'M SORRY.

9    QUALITY REASONS BECAUSE IF YOU WERE TO DROP A PHONE

10   ON ITS SIDE, LET'S SAY, AND THERE WERE NO, YOU

11   KNOW, DISTANCE LET'S SAY, OR NOTHING BETWEEN THE

12   EDGE OF THE DISPLAY AND THE EDGE OF THE PHONE,

13   THERE WOULD BE A VERY SIGNIFICANT IMPACT ON THE

14   DISPLAYS.

15             DISPLAYS CAN BE FRAGILE.  THEY'RE

16   EXTREMELY EXPENSIVE TO REPLACE.  THEY'RE ONE OF THE

17   MOST EXPENSIVE COMPONENTS ON THE DEVICE.

18             SO THAT'S WHY THAT EXISTS.

19   Q    NOW, WE'VE HEARD TESTIMONY ABOUT HOW THESE

20   SCREENS ON SMARTPHONES HAVE GOTTEN LARGER AND TEND

21   TO BE RECTANGULAR AND TEND TO TAKE UP MOST OF THE

22   REAL ESTATE ON THE SURFACE OF THE PHONE.

23             DO YOU HAVE AN UNDERSTANDING ABOUT WHY

24   THAT'S HAPPENING?

25   A    YES, I DO.
```

873

```
1    Q     WHY IS THAT?

2    A     WELL, TWO PARTS.  SO THE SCREENS ARE

3    RECTANGULAR BECAUSE THEY'RE RECTANGULAR.  THAT'S

4    HOW WE DEVELOPED TECHNOLOGY.  TV'S ARE RECTANGULAR.

5    SO THAT'S KIND OF APPEARANCE.

6              IN TERMS OF WHY THE SCREEN TAKES UP THE

7    MAJORITY OF THE DEVICE, AGAIN, IT GOES TO THIS

8    DESIGN IDEAL, WHAT WE THINK CONSUMERS WANT AT THE

9    END OF THE DAY, WHAT I WOULD WANT AS A CONSUMER,

10   WHICH IS A GIANT SCREEN, THE GIANT WINDOW INTO MY

11   CONTENT AND TO MY, YOU KNOW, MOBILE WEB

12   ENVIRONMENT, THINGS LIKE THAT.

13   Q     AND I THINK YOU MAY HAVE SUGGESTED THIS, BUT

14   DOES THAT HAVE SOMETHING TO DO WITH BEING ABLE TO

15   SEE MOVIES BETTER, PHOTOGRAPHS BETTER, THINGS LIKE

16   THAT?

17   A     YES, IT DOES.

18   Q     AND SO THESE VARIOUS FEATURES THAT YOU'VE

19   TALKED ABOUT, DID THESE TEND TO BECOME COMMON

20   ACROSS MOST ALL SMARTPHONES?

21   A     I WOULD SAY THAT AS THE TECHNOLOGY BECOMES

22   AVAILABLE TO DO THESE THINGS, THAT'S WHEN YOU SEE

23   PEOPLE INTRODUCING IT INTO THE MARKET, YES.

24   Q     AND CAN YOU TELL US, THESE VARIOUS FEATURES

25   WE'VE IDENTIFIED, IS IT JUST APPLE THAT DOES THIS,
```

874

```
 1    OR JUST SAMSUNG THAT DOES THIS, OR JUST NOKIA THAT

 2    DOES THIS?  PRETTY MUCH IN THE SMARTPHONE BUSINESS,

 3    CAN YOU TELL US WHETHER OR NOT ALL SMARTPHONE

 4    MANUFACTURERS HAVE ADOPTED THIS TECHNOLOGY AS IT

 5    BECAME AVAILABLE?

 6    A    I WOULD SAY THIS IS THE GENERAL DIRECTION THAT

 7    THE INDUSTRY IS GOING, YES.

 8    Q    CHANGING GEARS NOW.

 9              YOU WERE SHOWED SOME DOCUMENTS WHERE

10    YOU -- YOU AUTHORED A DOCUMENT.  IT'S EXHIBIT 58.

11              IF WE COULD PUT UP ON THE SCREEN THE

12    FIRST PAGE OF THAT.

13              AND YOU WROTE THIS AND YOU SAID, "PLEASE

14    FIND ATTACHED UPDATED PRESENTATION RE:  BEAT APPLE

15    STRATEGY UPDATE."

16              DO YOU SEE THAT THERE?

17    A    I DO.

18    Q    AND CAN YOU JUST -- DOES SAMSUNG WANT TO BEAT

19    APPLE?

20    A    SAMSUNG ABSOLUTELY WANTS TO SELL MORE DEVICES

21    THAN APPLE, HTC, MOTOROLA, LG, EVERYBODY IN THE

22    MARKET.

23    Q    DO YOU APOLOGIZE FOR THAT?

24    A    I DON'T.

25    Q    IN THIS SAME DOCUMENT, IF WE LOOK AT THE BACK,
```

875

```
 1    STARTING ON PAGE BATES NUMBER 659, INTERNALLY IT'S
 2    PAGE 18 OF THE DOCUMENT.
 3              THIS IS ABOUT YOUR ASSESSMENT OF LG.
 4              GO FORWARD TWO MORE PAGES.  IF WE CAN
 5    ENLARGE THAT IN THE UPPER LEFT.
 6              LG?
 7    A    YES.  THIS SHOWS OUR, OUR ROAD MAP ANALYSIS,
 8    COMPETITIVE ANALYSIS OF THEM.
 9    Q    ALL RIGHT.  SO IS -- I MEAN, DOES SAMSUNG ONLY
10    WANT TO BEAT APPLE?
11    A    NO, ABSOLUTELY NOT.
12    Q    CAN YOU TELL US WHETHER OR NOT SAMSUNG ALSO
13    MONITORS ITS OTHER COMPETITORS AND SEEKS TO BEAT
14    THEM AS WELL?
15    A    WE DO.  WE MONITOR ALL THE COMPETITION IN THE
16    MARKET.
17    Q    AND THE NEXT PAGE, YOU SEE RIM IN THE UPPER
18    LEFT?  THAT'S -- RIM IS RESEARCH IN MOTION,
19    BLACKBERRY?
20    A    YES, IT IS.
21    Q    AND ON THE NEXT PAGE, HTC?
22    A    YES.
23    Q    WHO'S HTC?
24    A    HTC IS A COMPETITOR.  I FORGET WHAT THE
25    ACRONYM STANDS FOR.
```

876

```
1    Q    HIGH TECH CORPORATION, SOMETHING LIKE THAT?

2    A    THAT RINGS A BELL.

3    Q    AND THE NEXT PAGE, IS THAT MOTOROLA?

4    A    YES.

5    Q    OKAY.  DOES -- THANK YOU VERY MUCH.

6         DOES SAMSUNG, AT ANY GIVEN TIME, TEND TO

7    FOCUS ONLY ON ONE COMPETITOR OR ON ONE COMPETITOR

8    MORE THAN OTHERS?

9    A    I WOULD SAY IT'S FAIR TO SAY THAT SAMSUNG

10   LOOKS AT ALL THE COMPETITION.  WE MAY FOCUS ON ONE

11   COMPETITOR VERSUS THE OTHER DEPENDING ON THE MARKET

12   THAT WE'RE LOOKING AT DURING THAT TIME.

13   Q    COULD YOU EXPLAIN TO THE JURY WHAT YOU MEAN?

14   A    THERE'S DIFFERENT WAYS TO SEGMENT THE MARKET.

15   ONE WAY WOULD BE TO LOOK AT IT ON A CARRIER BY

16   CARRIER BASIS.  ANOTHER WAY TO LOOK AT IT IS

17   PREPAID VERSUS POST PAID.  SO THOSE ARE WAYS TO

18   SEGMENT THE MARKET.

19   Q    ALL RIGHT.  WHAT EXACTLY IS YOUR JOB AT

20   SAMSUNG?  I HAVEN'T ASKED YOU THAT.  WHAT ARE YOUR

21   RESPONSIBILITIES?

22   A    SO I'M THE HEAD OF CORPORATE PLANNING STRATEGY

23   FOR STA, SO MY JOB IS TO CHART THE LONG-RANGE

24   STRATEGIC PLAN FOR STA, OR AT LEAST TO FACILITATE

25   THE CREATION OF THAT PLAN.
```

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13               THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                    /S/
                    _____
22                    LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
23

24                    DATED:  AUGUST 3, 2012

25

931

1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5

    APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6   CORPORATION,                  )
                                  )  SAN JOSE, CALIFORNIA
7                 PLAINTIFF,      )
                                  )  AUGUST 6, 2012
8            VS.                  )
                                  )  VOLUME 4
9   SAMSUNG ELECTRONICS CO.,      )
    LTD., A KOREAN BUSINESS       )  PAGES 931-1296
10  ENTITY; SAMSUNG               )
    ELECTRONICS AMERICA,          )
11  INC., A NEW YORK              )
    CORPORATION; SAMSUNG          )
12  TELECOMMUNICATIONS            )
    AMERICA, LLC, A DELAWARE      )
13  LIMITED LIABILITY             )
    COMPANY,                      )
14                                )
                  DEFENDANTS.     )
15  _____

16             TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17            UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
24                           IRENE RODRIGUEZ, CSR, CRR
                             CERTIFICATE NUMBER 8074
25

932

```
1     A P P E A R A N C E S:

2     FOR PLAINTIFF        MORRISON & FOERSTER
      APPLE:                  BY:  HAROLD J. MCELHINNY
3                                  MICHAEL A. JACOBS
                                   RACHEL KREVANS
4                             425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
5

6     FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:              HALE AND DORR
7                             BY:  WILLIAM F. LEE
                              60 STATE STREET
8                             BOSTON, MASSACHUSETTS  02109

9                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
12                            BY:  CHARLES K. VERHOEVEN
                                   ALBERT P. BEDECARRE
13                            50 CALIFORNIA STREET, 22ND FLOOR
                              SAN FRANCISCO, CALIFORNIA  94111
14
                              BY:  VICTORIA F. MAROULIS
15                                 KEVIN P.B. JOHNSON
                              555 TWIN DOLPHIN DRIVE
16                            SUITE 560
                              REDWOOD SHORES, CALIFORNIA  94065
17
                              BY:  MICHAEL T. ZELLER
18                                 WILLIAM C. PRICE
                                   JOHN B. QUINN
19                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
20                            LOS ANGELES, CALIFORNIA  90017

21    FOR INTERVENOR       RAM, OLSON,
      REUTERS:             CEREGHINO & KOPCZYNSKI
22                            BY:  KARL OLSON
                              555 MONTGOMERY STREET, SUITE 820
23                            SAN FRANCISCO, CALIFORNIA  94111

24

25
```

933

1

2

3                          INDEX OF WITNESSES

4      PLAINTIFF'S

5

       **JUSTIN DENISON**
6            AS-ON DIRECT EXAM BY MR. QUINN     P. 946
             AS-ON RECROSS-EXAM BY MR. LEE      P. 977
7            AS-ON REDIRECT EXAM BY MR. QUINN   P. 997

8

       **PETER BRESSLER**
9            DIRECT EXAM BY MS. KREVANS         P. 1002
             CROSS-EXAM BY MR. VERHOEVEN        P. 1098
10           REDIRECT EXAM BY MS. KREVANS       P. 1236

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE FLAT FRONT FACE AND THE BEZEL OF AN ELECTRONIC

2    DEVICE.  AS YOU CAN SEE BY THE BROKEN LINES, AGAIN,

3    IT'S NOT CLAIMING THE BODY.  IT'S CLAIMING THE

4    BEZEL AND THE FRONT FACE.

5              THAT FRONT FACE IS A RECTANGULAR DESIGN

6    WITH ROUNDED CORNERS IN THE PROPORTIONS AND THE

7    SCALE, LENGTH TO WIDTH AND PROPORTIONAL RATIOS THAT

8    ARE BEING SHOWN HERE IN THE DRAWING.

9              AND IT INCLUDES A RECTANGULAR DISPLAY, AS

10   DID THE OTHER PATENT, WITH NARROW BORDERS ON EITHER

11   SIDE AND WIDER BORDERS TOP AND BOTTOM.

12             AND IT SHOWS THAT RECTANGULAR FRONT FACE

13   AREA AS NOT HAVING ANY SPECIFICATION.  IT DOESN'T

14   HAVE DIAGONAL CROSS ACTION, IT DOESN'T HAVE

15   SHEETING.  SO THAT FLAT FRONT SURFACE COULD BE ANY

16   COLOR.  IT COULD BE TRANSPARENT.  IT COULD BE

17   ANYTHING.  NOTHING IS BEING SPECIFIED.

18             THE OTHER PART OF IT TO NOTICE IS IN THE

19   SIDE VIEWS THAT, AGAIN, THIS IS SPECIFYING A FRONT

20   FACE AND BEZEL THAT ARE ABSOLUTELY FLAT.

21             MS. KREVANS:  YOUR HONOR, MAY I APPROACH

22   THE WITNESS AND HAND HIM SOME OF THE PHONES --

23             THE COURT:  YES.

24             MS. KREVANS:  -- HE HAS TO TALK ABOUT?

25             THE WITNESS:  THANK YOU.

2020

```
 1              THE COURT:  LET'S BREAK AT 10:25.  OKAY?
 2    THANK YOU.
 3    BY MS. KREVANS:
 4    Q    MR. BRESSLER, I'VE HANDED YOU FOUR PHONES, THE
 5    ORIGINAL IPHONE; THE 3G; THE 3GS; AND THE IPHONE 4.
 6              THOSE ARE EXHIBITS JX 1000, 1001, 1002
 7    AND 1003, ALL IN EVIDENCE, YOUR HONOR.
 8              DID YOU STUDY THESE IPHONES FOR THIS
 9    CASE?
10    A    I DID.
11    Q    OKAY.  COULD YOU LOOK AT PX 8 IN YOUR BINDER.
12    THAT'S GOING TO BE BACK CLOSER TO THE FRONT.  WHAT
13    IS PX 8, MR. BRESSLER?
14    A    PX 8 IS A PHOTOGRAPHIC PRESENTATION OF ALL OF
15    THE VIEWS OF ALL OF THE PHONES THAT YOU PRESENTED
16    TO ME.
17    Q    SO PX 8 SHOWS A COLLECTION OF PHOTOS OF ALL
18    THE DIFFERENT VIEWS OF THE FOUR IPHONES THAT I JUST
19    GAVE YOU, THE ORIGINAL, 3G, 3GS, AND 4?
20    A    CORRECT.  AND THEY'RE IN VIEWS THAT YOU MIGHT
21    SEE THEM -- SEE A DESIGN THAT IS SIMILAR TO THEM IN
22    THE PATENT.
23    Q    OKAY.
24              YOUR HONOR, WE'D MOVE THE ADMISSION OF PX
25    8.
```

```
1              THE COURT:  ANY OBJECTION?
2              MR. VERHOEVEN:  IT'S A DEMONSTRATIVE,
3    YOUR HONOR, SO MY UNDERSTANDING IS DEMONSTRATIVES
4    SHOULDN'T BE INTRODUCED INTO EVIDENCE.
5              MS. KREVANS:  YOUR HONOR, IT'S NOT A
6    DEMONSTRATIVE.  IT WAS OFFERED AS AN EXHIBIT.
7    THERE WERE OBJECTIONS THAT WERE MADE PREVIOUSLY
8    THAT YOUR HONOR HAS OVERRULED.
9              THE COURT:  IT'S ADMITTED.
10             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER 8,
11             HAVING BEEN PREVIOUSLY MARKED FOR
12             IDENTIFICATION, WAS ADMITTED INTO
13             EVIDENCE.)
14             THE COURT:  GO AHEAD.
15   BY MS. KREVANS:
16   Q   DID YOU REACH ANY CONCLUSIONS, MR. BRESSLER,
17   ABOUT WHETHER THE DESIGNS OF THE IPHONE ARE ANY OF
18   THE IPHONES IN FRONT OF YOU WERE THE DESIGN OF THE
19   D'677 PATENT?
20   A   YES.  I BELIEVE ALL OF THESE PHONES ARE
21   SUBSTANTIALLY THE SAME AS THE '677 PATENT.
22   Q   OKAY.  COULD WE SEE YOUR SLIDE 26.5, PLEASE,
23   MR. LEE.
24             WHAT HAVE YOU DEPICTED ON YOUR SLIDE
25   26.5?
```

3022

```
1    A    26.5 IS EFFECTIVELY A FOUR-WAY COMPARISON, IF

2    YOU WILL, THAT SHOWS ALL OF THE FIGURES OF THE '677

3    DESIGN PATENT, AND IT SHOWS THE CORRESPONDING VIEWS

4    OF EACH OF THE ORIGINAL IPHONE, THE 3G AND 3GS AND

5    THE 4.

6            I THINK IT ILLUSTRATES FAIRLY CLEARLY

7    THAT ALL OF THEM EMBODY THE DESIGN THAT YOU SEE IN

8    THE '677 PATENT.

9    Q    OKAY.  LET ME ASK YOU A QUESTION ON ONE

10   SPECIFIC ASPECT OF THIS DESIGN.

11           DOES THE -- DO THE DRAWINGS IN THE D'677

12   PATENT TELL YOU WHETHER THE MATERIAL THAT'S THE

13   SURFACE OF THE FLAT FRONT FACE YOU DESCRIBED IS THE

14   SAME MATERIAL, EDGE TO EDGE, ACROSS THE WHOLE FACE?

15   A    YES, IT DOES.

16           AS I MENTIONED IN MY DESCRIPTION OF THE

17   '677 PATENT, THE DIAGONAL LINE, IF YOU LOOK AT

18   THEM, I THINK I POINTED IT OUT, GO FROM ONE

19   DIAGONAL CORNER TO THE OTHER ALL THE WAY,

20   UNINTERRUPTED, ACROSS, AND THAT FRONT DIAGONAL

21   CROSS ACTION SHOWS THAT IT GOES ALL THE WAY ACROSS

22   THE FACE.

23   Q    OKAY.  DID YOU DO A SIMILAR ANALYSIS TO

24   DETERMINE WHETHER ANY OF THE FOUR IPHONES I GAVE

25   YOU INCORPORATE THE DESIGN OR EMBODY THE DESIGN OF
```

1    THE '087 PATENT?

2    A     I DID.

3    Q     AND IF WE COULD SEE YOUR SLIDE -- I'M SORRY.

4    WHY DON'T WE DO THIS.  CAN WE SHOW FIGURE 9 FROM

5    THE '087 PATENT, MR. LEE?

6              OKAY.  AND THE IPHONE NEXT TO IT.

7              WHAT ARE WE LOOKING AT IN THIS

8    COMPARISON, MR. BRESSLER?

9    A     THIS IS A COMPARISON BETWEEN FIGURE 9 OF THE

10   '087 PATENT AND -- WHICH IS THE THREE-QUARTER FRONT

11   VIEW, AND A THREE-QUARTER FRONT VIEW OF WHAT

12   APPEARS, IN THIS PHOTOGRAPH, TO BE THE ORIGINAL

13   IPHONE.

14   Q     OKAY.  AND WHAT DID YOU CONCLUDE WITH RESPECT

15   TO THE ORIGINAL IPHONE AND THE '087 PATENT?

16   A     I BELIEVE THE DESIGN OF THE FRONT FACE AND

17   BEZEL IS, IS EXACTLY THE SAME AS EMBODIED IN THIS

18   PHONE.

19   Q     WHAT CONCLUSION DID YOU DRAW ABOUT WHETHER THE

20   IPHONE AND THE IPHONE 3GS EMBODY THE DESIGN OF THE

21   PATENT?

22   A     I BELIEVE THEY DO AS WELL.

23   Q     AND WHAT ABOUT THE IPHONE 4, AND MAYBE YOU

24   COULD HOLD THE IPHONE 4 UP FOR THE JURY, WHAT

25   CONCLUSION DID YOU DRAW ABOUT WHETHER OR NOT THE

1    IPHONE 4 EMBODIED THE DESIGN OF THE '087 PATENT?

2    A    I BELIEVE THE IPHONE 4 DOES NOT EMBODY THE

3    DESIGN OF THE '087 PATENT.

4    Q    AND WHY IS THAT?

5    A    BECAUSE IT DOES NOT HAVE A BEZEL THAT DIRECTLY

6    SURROUNDS THE FRONT FACE.  IT HAS A BAND THAT GOES

7    AROUND THE EDGE.

8         SO IT WOULD APPEAR THAT GLASS ACTUALLY

9    STANDS UP IN FRONT OF THE BAND, SO YOU DON'T REALLY

10   SEE A CLEAR BEZEL.

11   Q    OKAY.  ONE OTHER DETAIL ABOUT THE '087 DESIGN,

12   I KNOW WE'RE LOOKING AT ONE FIGURE HERE, BUT THE,

13   THE SHAPE OF THE -- I THINK YOU CALLED IT A LOZENGE

14   SHAPED SPEAKER SLOT AT THE TOP, IS THAT CLAIMED IN

15   THE '087 PATENT IN THE SECOND EMBODIMENT?

16   A    ACTUALLY, IT'S KIND OF IN THE THIRD EMBODIMENT

17   AND IN THE SIXTH.

18   Q    BUT NOT IN THE SECOND?

19   A    BUT NOT IN THE SECOND.

20   Q    SO THAT'S ANOTHER EMBODIMENT THAT DOES THAT?

21   A    YES, IT'S IN THE PATH.

22        MS. KREVANS:  OKAY.  YOUR HONOR, THIS

23   WOULD BE A CONVENIENT TIME AND I THINK IT'S ABOUT

24   10:25.

25        THE COURT:  ALL RIGHT.  IT'S 10:27.

```
1     LET'S TAKE OUR BREAK.

2               I HAVE SOME ISSUES I'D LIKE TO SPEAK WITH

3     THE LAWYERS ABOUT.  WE'LL TAKE A SLIGHTLY LONGER

4     BREAK THIS TIME.  LET'S SAY 10:50, OKAY?

5               SO, AGAIN, PLEASE KEEP AN OPEN MIND.

6     PLEASE DON'T SPEAK WITH ANYONE ABOUT THE CASE AND

7     PLEASE DON'T DO ANY RESEARCH OR READING ABOUT THE

8     CASE.  ALL RIGHT.  THANK YOU.

9               WE'LL SEE YOU BACK AT 10:50.

10              (WHEREUPON, THE FOLLOWING PROCEEDINGS

11    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

12              THE COURT:  ALL RIGHT.  YOU CAN STEP

13    DOWN.

14              THE RECORD SHOULD REFLECT THE JURORS HAVE

15    LEFT THE COURTROOM.

16              I JUST WANTED TO MAKE SURE THAT THERE

17    AREN'T ANY ISSUES WITH SOME OF THESE EXHIBITS.

18              NOW, WITH YOUR DEMONSTRATIVE 684, THAT

19    HAS THE F700 IN IT, WHICH HAS BEEN EXCLUDED.  SO

20    WHY ARE YOU STILL TRYING TO GET THAT IN?

21              MR. VERHOEVEN:  YOUR HONOR, I DON'T

22    BELIEVE -- I DON'T BELIEVE THE F700 HAS BEEN

23    EXCLUDED.  THOSE WERE -- I THINK YOU EXCLUDED

24    INTERNAL DEVELOPMENT DOCUMENTS.  THE F700 ITSELF

25    HAS NOT BEEN EXCLUDED AND, IN FACT, IS RELIED UPON
```

```
1    BY THIS WITNESS AS AN ALTERNATIVE DESIGN IN HIS
2    EXPERT REPORTS.
3             AND SO WE THINK THAT THE FACT THAT THIS
4    WITNESS HAS PROFFERED THE F700 --
5             THE COURT:  ALL RIGHT.  LET ME SEE, WHERE
6    IN HIS REPORT DOES HE TALK ABOUT THE F700?  SHOW
7    ME.  I WANT TO SEE THE ACTUAL DOCUMENTS.
8             MR. VERHOEVEN:  YES, YOUR HONOR.
9             THE COURT:  WELL, I HAVE HIS REPORT HERE.
10   YOU JUST GIVE ME A PAGE NUMBER, AND I CAN LOOK AT
11   IT MYSELF.
12            MS. KREVANS:  YOUR HONOR, IF I MAY.
13            THE COURT:  YEAH.
14            MS. KREVANS:  FOR COMPLETENESS, BECAUSE
15   WE WERE NOT SURE HOW ALL THE RULES WERE GOING TO
16   COME OUT IN THE CASE, THIS WITNESS DID GIVE SOME
17   OPINIONS IN HIS REPORT ABOUT THE F700.  WE DON'T
18   INTEND TO OFFER ANY TODAY.
19            THE COURT:  IF IT'S IN THERE, WHY
20   SHOULDN'T IT COME IN?
21            MS. KREVANS:  BECAUSE, YOUR HONOR, THE
22   F700 IS NOT AN ACCUSED PRODUCT IN THE CASE.  IT IS
23   NOT THE BASIS FOR ANY DESIGN OF ANY PRODUCT WHICH
24   IS ACCUSED, AND THE THEORY OF INDEPENDENT
25   DEVELOPMENT THAT SAMSUNG HAS OFFERED SUPPOSEDLY FOR
```

3027

```
1    THE ACCUSED PRODUCTS IN THE CASE IS BASED ON THE
2    F700 AND THAT HAS BEEN EXCLUDED.
3              SO THE ONLY REASON FOR THEM TO TRY TO USE
4    AN EXHIBIT THAT HAS THE F700 OR ANY MOCKUPS, ANY
5    DESIGNS OF THE F700 ON IT WOULD BE TO TRY TO
6    BACKDOOR GET IN THE INDEPENDENT DEVELOPMENT THEORY
7    WHICH HAS ALREADY BEEN EXCLUDED.
8              THIS IS THE CUE BALL, THE EARLY F700'S,
9    THIS WHOLE THEORY WAS NOT DISCLOSED AND IS,
10   THEREFORE, EXCLUDED.
11             MR. VERHOEVEN:  I HAVE THE EXPERT REPORT,
12   YOUR HONOR, IF I CAN HAND IT UP AND JUST SHOW YOU.
13             THE COURT:  PLEASE.
14             MR. VERHOEVEN:  MAY I APPROACH?
15             THE COURT:  YES.  NOW, TELL ME WHERE
16   JUDGE GREWAL'S ORDER, I ASSUME THAT'S WHAT YOU'RE
17   REFERRING TO, WHERE IT EXCLUDED IT?  I WANT TO SEE
18   THE ACTUAL DOCUMENT.  I'M NOT GOING TO RELY ON
19   REPRESENTATIONS ANY MORE FROM EITHER SIDE.
20             THE COURT:  OKAY.  THIS IS PAGES 138 AND
21   139 IN THE REBUTTAL EXPERT REPORT OF PETER
22   BRESSLER.
23             MS. KREVANS:  SO THE REBUTTAL EXPERT
24   REPORT IS NOT AN ISSUE IN THE TESTIMONY TODAY, YOUR
25   HONOR.  THIS IS INFRINGEMENT.
```

1

2

3

4                       CERTIFICATE OF REPORTERS

5

6

7            WE, THE UNDERSIGNED OFFICIAL COURT

8    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

9    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

10   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

11   CERTIFY:

12           THAT THE FOREGOING TRANSCRIPT,

13   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

14   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

15   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

16   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

17   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

18

19                    /S/
                    _____
20                  LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
21

22                    /S/
                    _____
23                  IRENE RODRIGUEZ, CSR, CRR
                    CERTIFICATE NUMBER 8074
24

25                  DATED:  AUGUST 6, 2012

1297

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,               )
                              )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,      )
                              )  AUGUST 7, 2012
8          VS.                )
                              )  VOLUME 5
9  SAMSUNG ELECTRONICS CO.,   )
   LTD., A KOREAN BUSINESS    )  PAGES 1297-1637
10 ENTITY; SAMSUNG            )
   ELECTRONICS AMERICA,       )
11 INC., A NEW YORK           )
   CORPORATION; SAMSUNG       )
12 TELECOMMUNICATIONS         )
   AMERICA, LLC, A DELAWARE   )
13 LIMITED LIABILITY          )
   COMPANY,                   )
14                            )
              DEFENDANTS.     )
15 _____

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
24                         IRENE RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8074
25

8298

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF        MORRISON & FOERSTER
     APPLE:                 BY:  HAROLD J. MCELHINNY
3                                MICHAEL A. JACOBS
                                 RACHEL KREVANS
4                          425 MARKET STREET
                           SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT  WILMER, CUTLER, PICKERING,
     APPLE:                HALE AND DORR
7                          BY:  WILLIAM F. LEE
                           60 STATE STREET
8                          BOSTON, MASSACHUSETTS  02109

9                          BY:  MARK D. SELWYN
                           950 PAGE MILL ROAD
10                         PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                           OLIVER & HEDGES
12                         BY:  CHARLES K. VERHOEVEN
                                ANNE ABRAMOWITZ
13                         50 CALIFORNIA STREET, 22ND FLOOR
                           SAN FRANCISCO, CALIFORNIA  94111
14
                           BY:  VICTORIA F. MAROULIS
15                              KEVIN P.B. JOHNSON
                           555 TWIN DOLPHIN DRIVE
16                         SUITE 560
                           REDWOOD SHORES, CALIFORNIA  94065
17
                           BY:  MICHAEL T. ZELLER
18                              WILLIAM C. PRICE
                           865 SOUTH FIGUEROA STREET
19                         10TH FLOOR
                           LOS ANGELES, CALIFORNIA  90017
20

21

22

23

24

25
```

INDEX OF WITNESSES

PLAINTIFF'S

**PETER BRESSLER**
     REDIRECT EXAM BY MS. KREVANS (RES.)P. 1336
     RECROSS-EXAM BY MR. VERHOEVEN      P. 1349
     FURTHER REDIRECT BY MS. KREVANS    P. 1354


**SUSAN KARE**
     DIRECT EXAM BY MS. KREVANS         P. 1356
     CROSS-EXAM BY MR. VERHOEVEN        P. 1414
     REDIRECT EXAM BY MS. KREVANS       P. 1478
     RECROSS-EXAM BY MR. VERHOEVEN      P. 1489
     FURTHER REDIRECT BY MS. KREVANS    P. 1492
     FURTHER RECROSS BY MR. VERHOEVEN   P. 1493


**RUSSELL WINER**
     DIRECT EXAM BY MR. JACOBS          P. 1496
     CROSS-EXAM BY MR. VERHOEVEN        P. 1529
     REDIRECT EXAM BY MR. JACOBS        P. 1565
     RECROSS-EXAM BY MR. VERHOEVEN      P. 1572
     FURTHER REDIRECT BY MR. JACOBS     P. 1576


**HAL PORET**
     DIRECT EXAM BY MR. JACOBS          P. 1577
     CROSS-EXAM BY MR. PRICE            P. 1591

```
 1     EXTERNAL COVER COMPONENT.

 2     Q     OKAY.

 3     A     THAT'S TRANSPARENT.

 4     Q     LET'S SEE THE NEXT VIEW.

 5               WHAT'S HERE?

 6     A    THIS VIEW, I BELIEVE, IS A BACK VIEW AND A TOP

 7     VIEW.

 8     Q     OKAY.  LET'S SEE THE NEXT PAGE, THOMAS.

 9               WHAT IS THIS?

10     A    THIS, I BELIEVE, IS A BOTTOM VIEW AND A

11     SIDE -- AND A LEFT SIDE VIEW, RIGHT SIDE VIEW.

12     Q     OKAY.  AND THE NEXT PAGE, THOMAS?

13     A     IS THE OTHER SIDE VIEW.

14               AND THE NEXT PART IS A SECTION.  NOW, A

15     SECTION IS WHERE YOU SLICE THE OBJECT IN THE PATH

16     POTENTIALLY AND YOU CAN GET TO LOOK AT WHAT IT

17     LOOKS LIKE FROM THE END OF THE SLICE OF BOLOGNA, IF

18     YOU WILL.

19     Q     OKAY.  SO THAT'S NOT WHAT AN ORDINARY OBSERVER

20     WOULD SEE?

21     A     USUALLY, NO.

22     Q     UNLESS WE CUT OUR PHONES IN HALF?

23     A     RIGHT.

24     Q     OKAY.  LET'S LOOK AT THE NEXT PAGE.  WHAT DO

25     WE SEE HERE?
```

3846

```
1    A    THIS IS A THREE-QUARTER FRONT VIEW, THE TOP IS

2    A THREE-QUARTER FRONT VIEW OF THE CORNER, AND THE

3    TOP IS THE THREE-QUARTER FRONT VIEW OF THE ACTUAL

4    ELECTRONIC DEVICE ITSELF.

5    Q    OKAY.  SO IN THAT ONE, THAT'S THE ONE WE'RE

6    SEEING THE ACTUAL ELECTRONIC DEVICE?

7    A    CORRECT.

8    Q    AND COULD YOU TELL US ABOUT THAT?

9    A    YES.  IN MY REVIEW OF THIS PATENT, I

10   DETERMINED THAT THE ELECTRONIC DEVICE ITSELF HAD A

11   TRANSPARENT AREA OVER THE DISPLAY WHICH RAN EDGE TO

12   EDGE ALL THE WAY ACROSS THAT WAS BALANCED IN THE

13   MIDDLE.

14        BUT IF YOU LOOK AT THE EDGE, WHICH IS AN

15   INTERESTING DEPICTION BECAUSE WHAT THOSE LINES ARE

16   ACTUALLY SHOWING -- I'M SORRY.  IT'S HARD TO

17   DESCRIBE THIS WITH LOOKING WITHOUT A POINTER, BUT

18   THERE ARE LINES THAT SURROUND THE CIRCUMFERENCE OF

19   THE FACE AND THERE ARE ACTUALLY TWO LINES.  THERE'S

20   AN INNER LINE AND THERE'S AN OUTER LINE.

21        ONE COULD MISTAKE THOSE FOR A BEZEL.

22   Q    WHAT ARE THEY, IN FACT, IN YOUR VIEW?

23   A    IN MY VIEW, THOSE ARE THE POINTS WHERE THE

24   CURVED CORNER MEETS THE FLAT SURFACE AND WHEN

25   YOU'RE CREATING A DIAGRAM LIKE THIS WITH A
```

38847

```
1    COMPUTER, THE COMPUTER SHOWS THOSE LINES AS THE

2    TANGENCY OF WHERE THE RADIUS MEETS THE FLAT

3    SURFACE, THE TANGENCY IS THAT POINT WHERE RADIUS

4    TURNS INTO THE FLAT.

5            SO IT'S SHOWING BOTH ENDS OF THE RADIUS

6    IS BASICALLY WHAT THAT'S SHOWING, AND THAT CAN BE

7    SEEN IF YOU GO BACK TO A PRIOR VIEW.

8    Q    OKAY.

9    A    IF YOU WILL.

10   Q    WHICH VIEW DO YOU WANT TO LOOK AT?

11   A    THAT ONE IS FINE.

12           THE TOP VIEW AND/OR BOTTOM VIEW, YOU CAN

13   SEE THAT THE SHAPE OF THE INSIDE BOX ACTUALLY HAS A

14   RADIUS IN THE TOP LEFT CORNER IF YOU'RE LOOKING AT

15   THE TOP ONE OR THE TOP LEFT CORNER IF YOU'RE

16   LOOKING AT THE BOTTOM ONE.  SO MY READ IS THAT'S A

17   RADIANT CORNER, NOT A BEZEL.

18   Q    OKAY.  LET'S GO BACK TO THE OTHER VIEW.

19   LOOKING AT THE ACTUAL DEVICE THAT'S SHOWN BY ITSELF

20   IN THE BOTTOM THERE.  DOES THAT HAVE A SURFACE

21   THAT'S CONTINUOUS ACROSS THE ENTIRE FACE, EDGE TO

22   EDGE EVERYWHERE?

23   A    IT HAS A FLAT FRONT SURFACE, BUT IT IS NOT

24   CONTINUOUS.  THERE IS A TRANSPARENT DISPLAY AREA

25   AND AN AREA ABOVE AND BELOW THAT ARE NOT INDICATED
```

1848

1    TO BE TRANSPARENT; THEREFORE, ONE WOULD EXPECT THEM

2    TO BE ANYTHING, AND IT COULD BE OPAQUE.

3    Q    OKAY.  ONE QUESTION ABOUT THE '889 PATENT.

4    COULD WE SEE PDX 26.6, PLEASE.  IS THIS ALL OF THE

5    FIGURES SHOWN IN THE DESIGN OF THE '889 PATENT,

6    MR. BRESSLER?

7    A    YES.

8    Q    IN YOUR VIEW, AS A DESIGNER WHAT HAS WORKED

9    WITH CONSUMERS, WOULD ALL NINE OF THESE VIEWS OF

10   THE DEVICE, BECAUSE WE'RE IGNORING THE MAN, WOULD

11   ALL NINE OF THESE VIEWS BE EQUALLY IMPORTANT IN

12   FORMING AN OVERALL VISUAL IMPRESSION?

13             MR. VERHOEVEN:  OBJECTION.  LEADING.

14             THE COURT:  OVERRULED.

15             THE WITNESS:  ALL OF THESE VIEWS ARE

16   EQUALLY IMPORTANT IN THE DESIGNER'S ANALYSIS OF THE

17   PATENT.

18             THEY ARE, HOWEVER, IN MY OPINION NOT

19   EQUALLY IMPORTANT IN FORMING THE OVERALL IMPRESSION

20   HELD BY THE ORDINARY OBSERVER.

21             IT'S -- WOULD YOU LIKE IT BRIEF OR --

22   BY MS. KREVANS:

23   Q    A BRIEF EXPLANATION OF WHY PLEASE.

24   A    OKAY.  I BELIEVE THAT THE DEPARTURE, THE

25   DESIGN DEPARTURE THAT'S DEPICTED IN THIS PATENT,

3849

```
 1    WHICH IS THE CONTINUOUS FLAT, CLEAR, EDGE-TO-EDGE
 2    GLASS FRONT SURFACE, AT THE TIME OF THIS PATENT,
 3    WAS SUCH A VISUAL DEPARTURE, AND I BELIEVE EVEN NOW
 4    IN THE PRODUCTS THAT ARE AVAILABLE IN THE MARKET,
 5    THE FACT THAT THAT'S A CONTINUOUS SHEET OF GLASS
 6    ACROSS THE WHOLE FRONT OF THE SURFACE I BELIEVE IS
 7    SUCH A DESIGN DEPARTURE THAT IT IS THE MAJOR DRIVER
 8    OF THE OVERALL IMPRESSION, SUCH THAT THE OTHER
 9    VIEWS, THOUGH THEY'RE PART OF THE IMPRESSION, I
10    BELIEVE THEY ASSUME LESS IMPORTANCE IN ONE'S MIND
11    WHEN ONE'S VIEWING THAT PRODUCT.
12              MS. KREVANS:  THANK YOU, MR. BRESSLER.
13              PASS THE WITNESS.
14              THE COURT:  ALL RIGHT.  IT'S NOW 9:27.
15              ANY RECROSS?
16              MR. VERHOEVEN:  JUST A FEW MINUTES, YOUR
17    HONOR.
18              THE COURT:  OKAY.  GO AHEAD, PLEASE.
19              MR. VERHOEVEN:  CAN WE PUT UP DX 511,
20    PLEASE.
21                   RECROSS-EXAMINATION
22    BY MR. VERHOEVEN:
23    Q    GOOD MORNING, MR. BRESSLER.
24    A    GOOD MORNING.
25    Q    WE JUST LOOKED AT THIS.  I THINK WE LOOK ADD,
```

1    OR COUNSEL FOR APPLE DIRECTED TO YOU PAGE 2; IS

2    THAT RIGHT?

3    A    YES.

4    Q    AND CAN WE -- MR. FISHER, CAN WE PULL UP THE

5    BOTTOM IMAGE AND BLOW IT UP AND MAKE IT BIG?

6              AND IF IT'S POSSIBLE, MR. FISHER, CAN WE

7    SHOW THE '087 PATENT, JX 1041, AND PULL OUT AN

8    IMAGE FROM THERE OF THE FRONT SCREEN?  ACTUALLY,

9    LET'S GO BACK ONE, PLEASE.

10             LET'S TAKE FIGURE 1 BECAUSE THAT'S

11   SLIGHTLY ORIENTED IN THE WAY THAT IT'S SLIGHTLY

12   TILTED AS WELL.

13             I DON'T KNOW IF WE CAN PUT THOSE TWO ON

14   THE SAME SCREEN.  THERE WE GO.

15             NOW, YOU JUST TESTIFIED THAT IT WAS

16   IMPORTANT TO LOOK AT OTHER ANGLES BESIDES THE FRONT

17   ANGLE; CORRECT?

18   A    YES.

19   Q    NOW, WE CAN SEE IN THE '087 PATENT -- AND I

20   BELIEVE YOU TESTIFIED TO THIS -- BUT THERE'S DOTTED

21   LINES AROUND THE BACK OF THE PHONE.

22   A    THAT'S CORRECT.

23   Q    AND SO YOU'RE NOT SAYING WE SHOULD LOOK AT

24   THE, AT ANYTHING BELOW THE BEZEL IN THE '087;

25   RIGHT?

1851

```
1    A    THAT'S CORRECT.

2    Q    ALL THOSE DOTTED LINES WE SHOULD IGNORE;

3    RIGHT?

4    A    YES.

5    Q    THAT'S NOT BEING CLAIMED; RIGHT?

6    A    CORRECT.  THEY WERE THERE ONLY FOR REFERENCE.

7    Q    SO IT'S JUST THE FRONT AND THE BEZEL

8    SURROUNDING IT THAT'S BEING CLAIMED; RIGHT?

9    A    CORRECT.

10   Q    AND THAT'S WHAT WE SHOULD LOOK AT?

11   A    YES.

12   Q    SO IF WE LOOK AT THE DX 511, THE PRIOR ART

13   DESIGN PATENT, THE FACT THAT IT'S THICKER AND HAS A

14   DIFFERENT SHAPE ON THE DOWNWARD SIDES AND BACK IS

15   IRRELEVANT; RIGHT?

16   A    THAT'S CORRECT.

17   Q    OKAY.  SO YOUR POINT IS JUST LOOKING AT THE

18   FRONT, IF YOU LOOK AT DX 511, THE DESIGN PATENT,

19   THE PRIOR ART DESIGN PATENT, IT'S NOT ABSOLUTELY

20   FLAT ALL THE WAY ACROSS THE FRONT; RIGHT?

21   A    THAT'S CORRECT.

22   Q    SO WE'RE TALKING ABOUT RIGHT HERE

23   (INDICATING), RIGHT?

24   A    AND BELOW.

25   Q    THE TOP AND BOTTOM THERE, RIGHT?
```

1866

```
1    ALERT AND AWAKE.  ANYONE NEED ANY CAFFEINE?
2            WE'VE GOT CAFFEINATED DRINKS IN THE
3    REFRIGERATOR.  WE'RE NOT SUPPOSED TO DRINK THEM,
4    BUT I'M OKAY IF YOU NEED ONE.  ANYBODY?  NO.  OKAY.
5    GO AHEAD.
6    BY MS. KREVANS:
7    Q    LET ME STRIKE THAT AND ASK A NEW QUESTIONS SO
8    YOU HAVE IT IN MIND.
9            IS THIS CLAIM LIMITED TO ANY PARTICULAR
10   KIND OF GRAPHICAL USER INTERFACE FOR A DISPLAY
11   SCREEN?
12   A    IT DOESN'T SAY.  IT SAYS ORNAMENTAL DESIGN FOR
13   A DISPLAY SCREEN.
14   Q    OKAY.  UNDERNEATH THE CLAIM WHERE IT SAYS "AS
15   SHOWN AND DESCRIBED," IT HAS A LIST OF FIGURES.
16           DID YOU REVIEW THE FIGURES IN THIS
17   PATENT?
18   A    YES.
19   Q    OKAY.  COULD WE LOOK AT FIGURE 1 OF THE
20   PATENT, THOMAS?
21           IS FIGURE 1A -- WELL, WHAT ARE WE SEEING
22   ON THE SCREEN HERE, DR. KARE?
23   A    FIGURE 1 IS THE IMAGE THAT IS THE D'305
24   PATENT.  THAT'S THE GRAPHICAL USER INTERFACE
25   ORNAMENTAL DESIGN.
```

```
 1     Q     OKAY.  WE JUST SAW ON THE SCREEN BOTH A BLACK

 2     AND WHITE AND A COLOR VERSION OF FIGURE 1.  ARE

 3     BOTH OF THOSE IN THE PATENT?

 4     A     YES.

 5     Q     OKAY.  LOOKING AT THE COLOR VERSION OF FIGURE

 6     1, COULD YOU EXPLAIN TO THE JURY WHAT ARE THE

 7     FEATURES IN FIGURE 1 THAT CONTRIBUTE TO THE OVERALL

 8     VISUAL IMPRESSION IT CREATES?

 9     A     YES.  WE'RE LOOKING AT THE RECTANGULAR AREA

10     THAT'S WITHIN THE DOTTED LINE THAT GOES AROUND THE

11     OUTSIDE.

12            AND I SEE THERE'S A REGULAR GRID OF ICONS

13     THAT ARE SQUARE WITH ROUNDED CORNERS, THEY'RE ABOUT

14     THE SAME DISTANCE APART, THEY'RE COLORFUL, THERE'S

15     A MIX OF DESIGN STYLES, THERE'S A LABEL UNDERNEATH

16     EACH ICON THAT'S UPPER AND LOWER CASE, SANS SERIF,

17     LIGHT AGAINST THE DARK BACKGROUND.

18            AND AT THE BOTTOM OF THE SCREEN THERE ARE

19     FOUR ICONS AND THERE'S A GRAPHIC BEHIND THEM THAT

20     SERVES TO SEPARATE THEM FROM THE ROWS AND COLUMNS

21     OF ICONS ABOVE.

22     Q     AND IN THIS DESIGN, WHAT IS THE GRAPHIC THAT

23     IS BEHIND THE BOTTOM FOUR ICONS THAT SERVES, AS YOU

24     SAID, TO SEPARATE THEM?

25     A     IT LOOKS LIKE A LIGHT GRAY RECTANGLE THAT
```

```
 1    LOOKS A LITTLE BIT PERFORATED.

 2    Q    OKAY.  YOU MENTIONED A MIX OF ICON STYLES.

 3    CAN YOU EXPLAIN TO THE JURY WHAT YOU MEAN BY THAT?

 4    A    I THINK I HAVE A SLIDE.

 5    Q    LET'S JUST GO AHEAD AND USE THIS FIGURE.

 6    A    OKAY.  TYPICALLY WHEN I WOULD WORK ON AN ICON

 7    JOB, I MIGHT DISCUSS WITH THE CLIENT OR DEVELOP A

 8    FEW STYLES AND THEN WE'D PICK A STYLE SO THAT WE

 9    COULD HAVE SOME CONSISTENCY VISUALLY BETWEEN --

10    AMONG THE ICONS IN A PROJECT.

11            SO THIS IS INTERESTING BECAUSE THERE ARE

12    A FEW DIFFERENT STYLES.  YOU CAN SEE THE PHONE IN

13    THE LOWER-LEFT IS VERY PLAIN COMPARED TO, SAY, THE

14    LENS OF THE CAMERA IN THE UPPER RIGHT THAT IS MUCH

15    MORE DETAILED.

16    Q    HAVE YOU LOOKED AT ANY APPLE PHONES IN FORMING

17    YOUR OPINIONS IN THIS CASE?

18    A    YES.

19    Q    AND DID YOU -- WELL, LET'S START WITH WHAT

20    APPLE PHONES DID YOU LOOK AT?

21    A    I LOOKED AT SEVERAL IPHONES.

22    Q    OKAY.  DID YOU DRAW ANY CONCLUSIONS AS TO

23    WHETHER ANY OF THEM HAVE A USER INTERFACE THAT USES

24    THE DESIGN OF THE D'305 PATENT?

25    A    YES.
```

869

```
1    Q    OKAY.  COULD WE SEE PDX 14.6.

2              COULD YOU EXPLAIN TO THE JURY WHAT YOU'VE

3    DEPICTED ON YOUR SLIDE 14.6?

4    A    ON THE LEFT IS THE D'305 PATENT THAT WE'VE

5    JUST LOOKED AT, THAT IMAGE, AND ON THE RIGHT ARE

6    SCREEN SHOTS OF THE IPHONE, THE IPHONE 3G, THE

7    IPHONE 3GS, AND THE IPHONE 4.

8    Q    AND WHAT WAS THE CONCLUSION YOU DREW AS TO

9    WHETHER THESE IPHONES HAVE USER INTERFACES, ANY

10   USER INTERFACES THAT USE THE DESIGN OF THE D'305

11   PATENT?

12   A    I CONCLUDED THAT THEY ALL REFLECT A COLLECTION

13   OF DESIGN FEATURES THAT IS PRESENT IN THE D'305

14   PATENT.

15   Q    OKAY.  IS THE BACKGROUND COLOR OF THE USER

16   INTERFACE YOU'RE SHOWING US FROM EACH OF THESE

17   IPHONES THE SAME?

18   A    NO.

19   Q    HOW DID THAT ENTER INTO THE CONCLUSIONS THAT

20   YOU DREW?

21   A    IT'S DEFINITELY SOMETHING THAT'S DIFFERENT

22   ABOUT THE IPHONE 3GS AND THE IPHONE 4, BUT WHEN I

23   LOOKED AT THE D'305 PATENT AND I METHODICALLY

24   COMPARED THE SET OF FEATURES, THE OVERALL GRID, THE

25   ROWS OF FOUR ICONS, THE SHAPE OF THE ICONS, THE
```

1    SQUARE WITH ROUNDED CORNERS, THE MIX OF ICON STYLES

2    FROM VERY SYMBOLIZED TO STYLIZED TO VERY DETAILED,

3    I COULD -- THE SEPARATE LITTLE ICONS AT THE BOTTOM

4    AND THE LIGHT TYPE REVERSED OUT, I COULD SEE ALL OF

5    THAT COLLECTION OF FEATURES THAT OVERALL VISUAL

6    IMPRESSION IN ALL THE PHONES.

7    Q    OKAY.  WERE YOU ASKED TO OFFER AN OPINION AS

8    TO WHETHER ANY SAMSUNG PHONE HAD ANY GRAPHICAL USER

9    INTERFACE SCREENS THAT WERE USING THE -- THAT HAD A

10   DESIGN THAT WAS THE SAME AS THE DESIGN IN THE D'305

11   PATENT?

12   A    YES.

13   Q    OKAY.  WHAT WAS THE TEST THAT YOU USED IN

14   MAKING THAT ANALYSIS?

15   A    IT WAS THE SAME KIND OF METHODICAL, VISUAL

16   ANALYSIS BECAUSE I'M SO USED TO LOOKING AT PIXELS

17   AND WHAT I CAN DO WITH THEM, THAT I LOOKED AT THE

18   GRID, HOW CLOSE ICONS WERE TO EACH OTHER

19   PROPORTIONALLY, ROUNDED CORNERS, ICON STYLE, THE

20   FAIRLY SIGNIFICANT AREA OF THE BOTTOM OF FOUR

21   CORRALLED ICONS.  THOSE WERE THE KINDS OF FEATURES

22   I LOOKED AT TO DO MY VISUAL COMPARISON FROM THE

23   SCREEN TO THE D'305 ART.

24   Q    OKAY.  DID YOU FORM ANY CONCLUSION AS TO

25   WHETHER ANY SAMSUNG PHONE HAD A USER INTERFACE

```
 1    DISPLAY SCREEN THAT WAS SUBSTANTIALLY SIMILAR IN
 2    DESIGN TO THE D'305 DESIGN?
 3              MR. VERHOEVEN:  OBJECTION, YOUR HONOR.
 4    NOWHERE IN THIS WITNESS'S EXPERT REPORT IS THERE
 5    ANY OPINION USING THOSE WORDS, "SUBSTANTIALLY
 6    SIMILAR," AND NOW THE -- COUNSEL IS ASKING HER --
 7              THE COURT:  I'M SORRY.  CAN YOU REPEAT
 8    MY -- MY SCREEN IS NOT WORKING.  REPEAT THE
 9    QUESTION, PLEASE.
10              MS. KREVANS:  ALL RIGHT.  DID YOU FORM --
11              THE COURT:  I'M SORRY.  I'M ASKING
12    MS. SHORTRIDGE.  ARE YOU GOING TO --
13              MS. KREVANS:  I'M GOING TO REPHRASE IT.
14    I MAY HAVE MISSPOKEN.
15              THE COURT:  GO AHEAD.
16              MS. KREVANS:  AND I DON'T REMEMBER THE
17    QUESTION MYSELF.
18    Q    DID YOU FORM ANY CONCLUSIONS AS TO WHETHER
19    THERE WERE, IN THE SAMSUNG PHONES YOU LOOKED AT,
20    ANY DISPLAY SCREENS THAT HAD A DESIGN THAT WAS
21    SUBSTANTIALLY THE SAME AS THE DESIGN OF THE D'305
22    PATENT?
23              MR. VERHOEVEN:  OBJECTION, YOUR HONOR.
24    THE WITNESS NOWHERE IN HER EXPERT REPORT SUBMITS AN
25    OPINION ON "SUBSTANTIAL SIMILARITY."  THE WORDS
```

```
 1    "SUBSTANTIAL SIMILARITY" DO NOT APPEAR.

 2            MS. KREVANS:  ALL RIGHT.  LET ME PAUSE

 3    ONE MORE TIME, YOUR HONOR, SO WE CAN SHORTCUT THIS

 4    AND MOVE THIS ALONG.

 5    Q    DID YOU FORM ANY CONCLUSIONS, DR. KARE, ABOUT

 6    WHETHER ANY SAMSUNG PHONE HAD A DISPLAY SCREEN

 7    WHICH HAD A DESIGN THAT PRODUCED THE SAME OVERALL

 8    VISUAL IMPRESSION AS THE D'305 PATENT?

 9    A    YES.

10    Q    OKAY.  DID YOU FORM THAT CONCLUSION AS TO

11    EVERY SAMSUNG PHONE THAT YOU LOOKED AT?

12    A    NO.

13    Q    COULD YOU LOOK AT PX 21 THAT'S IN THE BINDER

14    IN FRONT OF YOU?

15            MR. VERHOEVEN:  YOUR HONOR, WE HAVE AN

16    OBJECTION TO THIS EXHIBIT FOR THE SAME REASONS THAT

17    CROSS-EXHIBITS WERE OBJECTED TO YESTERDAY BECAUSE

18    IT DEPICTS NOT JUST SCREEN-TO-SCREEN SHOTS.  IT'S

19    THE OVERALL PHONE.

20            THE COURT:  SUSTAINED.

21            MS. KREVANS:  YOUR HONOR, THERE'S NO

22    COMPARISON IN THESE PICTURES.  THEY'RE ALL JUST THE

23    SAMSUNG PHONES.

24            THE COURT:  YOU ASKED THAT BODY STYLE NOT

25    BE INCLUDED.  THAT WAS THE RECORD.  YOU NEED TO
```

3873

```
 1    TAKE THAT DOWN, PLEASE.  YOU ASKED FOR THE
 2    OBJECTION.  IT APPLIES BOTH WAYS.
 3            GO AHEAD.
 4    BY MS. KREVANS:
 5    Q    COULD WE SEE SLIDE PDX 14.7, PLEASE.  WHAT IS
 6    SET OUT ON SLIDE PDX 14.7, DR. KARE?
 7    A    IT IS THE IMAGE FROM THE D'305 PATENT NEXT TO
 8    THE FIRST OF THE APPLICATION SCREENS, A PHOTO, ON
 9    THE SAMSUNG FASCINATE.
10    Q    WHEN YOU SAY, "THE FIRST," WHAT DO YOU MEAN?
11    A    I CAN SEE FROM THE PAGE INDICATOR THAT THERE
12    ARE THREE SCREENS FULL, OR PARTIALLY FULL, OF
13    APPLICATION ICONS, AND I CAN SEE FROM THE ONE ABOVE
14    THE ICONS THAT THIS IS THE FIRST.
15            SO WHEN YOU BRING UP APPLICATION SCREENS,
16    THIS IS WHAT YOU'D SEE FIRST.
17    Q    OKAY.  DID YOU DRAW ANY CONCLUSION AS TO
18    WHETHER THIS PARTICULAR PHONE, THE FASCINATE, HAD
19    AN APPLICATION SCREEN FOR WHICH THE OVERALL VISUAL
20    APPEARANCE IS SUBSTANTIALLY THE SAME AS THE OVERALL
21    VISUAL APPEARANCE AS THE DESIGNS DEPICTED IN THE
22    D'305 PATENT?
23    A    YES.
24    Q    AND WHAT WAS YOUR CONCLUSION?
25    A    MY CONCLUSION IS THAT THIS APPLICATION SCREEN
```

```
 1    SHOWN ON THE RIGHT IS SUBSTANTIALLY SIMILAR TO THE

 2    D'305 PATENT.

 3              MR. VERHOEVEN:  OBJECTION, YOUR HONOR.

 4    THIS IS NOWHERE IN HER EXPERT REPORT.

 5              THE COURT:  SUSTAINED UNLESS YOU CAN.

 6              MS. KREVANS:  YOUR HONOR, ON PAGE 42 OF

 7    THE EXPERT REPORT, PARAGRAPH 66 --

 8              THE COURT:  OKAY.  GIVE ME ONE SECOND,

 9    PLEASE.

10              MS. KREVANS:  THIS IS A SUMMARY IN WHICH

11    THE WITNESS SETS OUT THE TEST AND HER CONCLUSIONS.

12              THE COURT:  ALL RIGHT.  OVERRULED.

13    BY MS. KREVANS:

14    Q   I'M SORRY.  DID YOU HAVE A CHANCE TO ANSWER

15    THE QUESTION, DR. KARE?

16    A   UM --

17    Q   I THINK YOU DID, ACTUALLY.

18    A   YES.  AND I WAS TALKING -- I WAS SPEAKING TO

19    OVERALL VISUAL IMPRESSION.

20    Q   OKAY.

21    A   THAT'S WHAT I WAS COMPARING.

22    Q   COULD YOU BRIEFLY DESCRIBE FOR US WHAT LED YOU

23    TO THE CONCLUSION THAT THE APPLICATION SCREEN THAT

24    WE'RE SEEING HERE FROM THE FASCINATE HAD

25    SUBSTANTIALLY THE SAME OVERALL VISUAL IMPRESSION,
```

2875

```
 1    APPEARANCE, AS THE OVERALL VISUAL APPEARANCE OF THE
 2    D'305 PATENT DESIGN?
 3    A    YES.  I LOOKED AT THE SIMILAR -- THE
 4    SIMILARITIES I SAW WERE THE REGULAR GRID, THE ROSE
 5    OF FOUR ICONS, THE COLORFUL MIX OF ICONS THAT ARE
 6    SQUARE WITH ROUNDED CORNERS, THE SIMILARITY OF THE
 7    MIX OF ICON STYLES, LET'S SAY CLOCK TO CLOCK IS
 8    REALISTIC, BUT ALSO STYLIZED BECAUSE IT'S KIND OF A
 9    SIMPLE DESIGN THAT READS EASILY, THE PHONES ARE
10    BOTH THAT SIMPLE STYLE THAT LOOKS AS IF THE WHITE
11    RETRO HANDSET COULD HAVE BEEN CUT OUT OF WHITE
12    PAPER, THE MORE MODELLED KIND OF ICON STYLES THAT
13    ARE PRESENT ON BOTH THE CAMERA AND THE SUNFLOWER ON
14    THE D'305 THAT LOOK PHOTO REALISTIC, I CAN SEE THAT
15    KIND OF ICON ON THE RIGHT AS WELL.
16           AND --
17    Q    CAN YOU JUST POINT OUT FOR US, BY DESCRIBING
18    THE ROW AND THE COLUMN, WHERE THE SUNFLOWER IS THAT
19    YOU'RE TALKING ABOUT ON EACH OF THESE DESIGNS?
20    A    IN THE TOP ROW ON THE D'305, THE THIRD FROM
21    THE LEFT IS A KIND OF A PHOTO REALISTIC SUNFLOWER .
22           AND ON THE FASCINATE IN THE BOTTOM ROW,
23    30 FROM THE LEFT, IS A CLOSE-UP OF WHAT APPEARS TO
24    BE SUNFLOWER PETALS, AND THEY BOTH FIGURE THE
25    USER'S COLLECTION OF PHOTOS THAT THEY TOOK.
```

3876

1    Q    OKAY.

2    A    AND, ADDITIONALLY, THEY EACH HAVE FOUR ICONS

3    AT THE BOTTOM SET OFF WITH A GRAPHIC.  ON THE LEFT

4    IS THE GRAY AREA, ON THE RIGHT, THERE'S A -- IT'S A

5    SLIGHTLY LIGHTER GRAY AREA WITH A BOUNDING LINE

6    OVER THE ICONS.

7              AND THEY BOTH HAVE LIGHT COLORED MIXED

8    CASE LABELS IN A SANS SERIF FONT.

9    Q    WHEN YOU SAY MIXED CASE LABELS IN SANS SERIF,

10   ARE YOU TALKING ABOUT THE TEXT UNDER THE GRAPHICS?

11   A    UNDER THE GRAPHICS.  SANS SERIF IS THE NAME OF

12   A FONT.  IT IS, ACTUALLY, IT MEANS THAT IT'S PLAIN,

13   AND IT DOESN'T HAVE THE LITTLE HORIZONTAL LINES

14   THAT MAKE THE FONT LOOK A LITTLE BIT LIKE IT WAS

15   CARVED IN STONE.  IT'S A MORE MODERN KIND OF A

16   FONT.

17   Q    OKAY.  CAN WE LOOK AT YOUR SLIDE 14.12.  WHAT

18   DO YOU SHOW ON 14.12, DR. KARE?

19   A    THIS IS ANOTHER SAMSUNG PHONE CALLED THE

20   CAPTIVATE WHERE I FOUND SIMILARLY THAT THE OVERALL

21   VISUAL IMPRESSION WAS SUBSTANTIALLY SIMILAR TO THE

22   D'305 FOR THE SAME, USING THE SAME KIND OF

23   ANALYSIS.

24   Q    OKAY.  WHAT ABOUT 14.13?  COULD WE SEE THAT

25   ONE?

3877

```
1              WHAT'S THIS, DR. KARE?

2     A    THIS IS THE CONTINUUM.  THIS IS ANOTHER ONE OF

3     THE GROUP OF PHONES THAT I THOUGHT WAS

4     SUBSTANTIALLY SIMILAR TO THE D'305.

5     Q    OKAY.  AND 14.14?

6     A    THIS IS THE DROID CHARGE, WHICH I ALSO FOUND

7     TO BE SUBSTANTIALLY SIMILAR OVERALL VISUAL

8     IMPRESSION, SAME KIND OF ANALYSIS.

9     Q    OKAY.  14.15?

10    A    THIS IS --

11    Q    WHAT PHONE IS THIS?

12    A    THIS IS THE EPIC 4G, ANOTHER SAMSUNG PHONE

13    WHERE THE PATTERN OF SIMILARITIES WAS SUBSTANTIALLY

14    THE SAME.

15    Q    AND WHAT WAS THE BASIS FOR YOUR CONCLUSIONS

16    ABOUT THE EPIC 4G?

17    A    IT WAS THE RESULT OF THE SAME KIND OF

18    METHODICAL VISUAL ANALYSIS OF THE FEATURE SET OF

19    THE D'305.

20    Q    OKAY.  LET'S LOOK AT YOUR SLIDE 14.16.

21              WHAT HAVE YOU SHOWN HERE?

22    A    THIS IS THE GALAXY S 4G, AND --

23    Q    DID YOU DRAW CONCLUSIONS ABOUT THE GALAXY S

24    4G?

25    A    YES.
```

1    Q    WHAT WERE THEY?

2    A    THAT THE OVERALL VISUAL IMPRESSION WAS

3    SUBSTANTIALLY SIMILAR TO THE DESIGN OF THE D'305

4    PATENT.

5    Q    FOR THE SAME REASONS?

6    A    YES.

7    Q    OKAY.  14.17?  THE GALAXY S I9000.

8           WHAT CONCLUSIONS DID YOU DRAW ABOUT THIS

9    DESIGN?

10   A    THAT, AGAIN, THE OVERALL VISUAL IMPRESSION WAS

11   SUBSTANTIALLY THE SAME TO THE DESIGN OF THE D'305.

12   Q    OKAY.  14.18, THE SAMSUNG GEM.

13          WHAT CONCLUSIONS, IF ANY, DID YOU DRAW

14   ABOUT THIS PHONE?

15   A    THAT THE SAME VISUAL FEATURES IN THE D'305 ARE

16   REFLECTED IN THE GEM AND THAT THEY LOOK

17   SUBSTANTIALLY THE SAME.

18   Q    OKAY.  LET'S SEE 14.19.  THIS IS THE SAMSUNG

19   INDULGE.

20          WHAT CONCLUSIONS DID YOU DRAW ABOUT THIS

21   DESIGN?

22   A    THAT THE OVERALL VISUAL IMPRESSION IS THE SAME

23   AS THE D'305 BY THE SAME METHOD.

24   Q    OKAY.  14.20, PLEASE.  THIS IS THE INFUSE 4G.

25   WHAT CONCLUSIONS DID YOU DRAW ABOUT THE DESIGN OF

1    THE APPLICATION SCREEN OF THE INFUSE 4G?

2    A    THAT THE OVERALL VISUAL IMPRESSION IS LIKE THE

3    DESIGN OF THE D'305 PATENT.

4    Q    DID YOU APPLY THE SAME OVERALL VISUAL

5    IMPRESSION, SUBSTANTIALLY SIMILAR TEST?

6    A    I, I FOUND THAT THE OVERALL VISUAL IMPRESSION

7    WAS SUBSTANTIALLY THE SAME.

8    Q    OKAY.  LET'S LOOK AT 14.21.  THIS IS THE

9    SAMSUNG MESMERIZE.  DID YOU DRAW ANY CONCLUSIONS

10   ABOUT THIS DESIGN?

11   A    YES.  THAT, AGAIN, THAT THE OVERALL VISUAL

12   IMPRESSION IS SUBSTANTIALLY THE SAME AS THE DESIGN

13   OF THE D'305 PATENT.

14   Q    OKAY.  LET'S LOOK AT 14.22, THE SAMSUNG

15   GALAXY S SHOWCASE.

16            CAN YOU DRAW ANY CONCLUSIONS ABOUT THIS

17   DESIGN?

18   A    YES.  THAT -- THAT THE OVERALL VISUAL

19   IMPRESSION IS SUBSTANTIALLY SIMILAR TO THE D'305

20   PATENT FIGURE ON THE LEFT.

21   Q    LET ME ASK YOU A QUESTION ABOUT THE SHOWCASE.

22   DO YOU SEE AT THE TOP THERE'S A, IT'S LIKE IT'S A

23   BLUE-ISH BAR ACROSS THE TOP.

24            DID YOU TAKE THAT INTO ACCOUNT IN YOUR

25   OPINION?

1    A    YES.

2    Q    IS THAT PRESENT IN THE D'305?

3    A    NO.

4    Q    COULD YOU EXPLAIN, THEN, WHY YOU STILL

5    CONCLUDED THAT THESE TWO ARE SUBSTANTIALLY THE

6    SAME, OVERALL VISUAL IMPRESSION?

7    A    WELL, I WOULD SAY THAT FEATURE, ALONG WITH A

8    FEW OTHERS OCCASIONALLY IN THE SET OF PHONES WE

9    LOOKED AT, THERE WAS ONE ROUND ICON AT THE BOTTOM,

10   OR A BLUE BAR AT THE TOP, AND THEY'RE DIFFERENT,

11   BUT I, I FELT THAT THE OVERALL IMPRESSION CAME FROM

12   THE SALIENT SET OF FEATURES THAT WAS THE

13   PREDOMINANT OVERALL VISUAL IMPRESSION THAT MOST

14   PEOPLE AREN'T GOING TO STOP AND ANALYZE, OH, THIS

15   FEATURE IS THE SAME.

16          SO I FOUND THAT DESPITE SOME MINOR

17   DIFFERENCES, I WAS LOOKING AT OVERALL VISUAL

18   IMPRESSION.  I MIGHT HAVE LOOKED -- I DIDN'T MISS

19   THAT.  I LOOKED AT EVERYTHING.

20          BUT I CONCLUDED THAT THE OVERALL VISUAL

21   IMPRESSION WAS SUBSTANTIALLY THE SAME.

22   Q    OKAY.  ANOTHER QUESTION ABOUT THE SHOWCASE.

23   DO YOU SEE THAT AT THE TOP OF THE SCREEN THERE'S

24   THREE DOTS, ONE IS A LITTLE BIGGER AND IT HAS A 1

25   AND THERE'S TWO DOTS TO THE RIGHT?

```
1    RIGHT?

2    A    YES.

3    Q    WHAT DO THEY HAVE TO DO?

4    A    MOVE THE PUZZLE PIECE TO THE RIGHT TO UNLOCK

5    IT.

6    Q    OKAY.  NOW, WHAT IS THE CONSUMER LOOKING AT?

7    A    THE HOME SCREEN OF THE SAMSUNG PHONE.

8    Q    OKAY.  AND SO WHAT DOES A CONSUMER NEED TO

9    DO -- THIS IS -- THIS SCREEN HERE IS NOT ACCUSED;

10   RIGHT?

11   A    NO.

12   Q    YOU WEREN'T EVEN ASKED TO LOOK AT THIS SCREEN;

13   RIGHT?

14   A    I WOULD SAY -- I WAS NOT ASKED TO CONSIDER

15   THIS SCREEN.

16   Q    OKAY.  SO IT'S JUST THE APPLICATION SCREEN;

17   RIGHT?

18   A    YES.

19   Q    OKAY.  AND REMIND US, WHAT DOES THE USER HAVE

20   TO DO -- WHAT DOES THE CONSUMER HAVE TO DO TO GET

21   TO THE APPLICATION SCREEN?

22   A    TOUCH THE BLUE BUTTON ON THE LOWER RIGHT WITH

23   THE GRID OF SQUARES.

24   Q    OKAY.  SO IT'S ONLY AFTER ALL OF THOSE STEPS

25   THAT A CONSUMER GETS TO THE APPLICATION SCREEN.
```

```
 1    FAIR?

 2    A    YES.

 3    Q    NOW, DR. KARE, WOULDN'T YOU AGREE THAT BY THE

 4    TIME A CONSUMER GOES THROUGH ALL THOSE STEPS TO GET

 5    TO THE APPLICATION SCREEN, THAT CONSUMER KNOWS THAT

 6    THIS IS A SAMSUNG PHONE?

 7    A    I WAS ONLY ASKED TO CONSIDER THIS APPLICATION

 8    SCREEN COMPARED TO THE APPLE HOME SCREEN.

 9    Q    I UNDERSTAND THAT.

10    A    BECAUSE --

11    Q    BUT I HAVE A DIFFERENT QUESTION FOR YOU.

12          WOULDN'T YOU AGREE THAT BY THE TIME THAT

13    A CONSUMER TURNS ON THE PHONE AND GOES THROUGH

14    THOSE STEPS WE LOOKED AT, WHERE THEY SEE THE

15    SAMSUNG NAME PROMINENTLY FOR SEVERAL SECONDS, WHERE

16    THEY SEE THE GRAPHIC FOR DROID, WHERE THEY HAVE TO

17    GO PAST THE HOME SCREEN TO THE APPLICATION SCREEN,

18    BY THE TIME THEY GET TO THAT APPLICATION SCREEN,

19    WOULDN'T YOU AGREE THAT A CONSUMER KNOWS THAT

20    THEY'RE USING A SAMSUNG PHONE?

21    A    I'M NOT AN EXPERT IN CONSUMER BEHAVIOR AND

22    THAT KIND OF USER EXPERIENCE.

23          I'M REALLY FOCUSSED ON GRAPHIC U/I.  SO I

24    DON'T KNOW THAT I'M QUALIFIED TO ANSWER THAT.

25    Q    WELL, QUALIFIED OR NOT, WOULD YOU AGREE WITH
```

```
 1    ME?  A CONSUMER, BY THIS POINT, GOING THROUGH THE

 2    START-UP AND ALL OF THAT, SEEING ALL THAT

 3    ADVERTISING, THEY KNOW THEY HAVE A SAMSUNG PHONE,

 4    DON'T THEY?

 5    A    I JUST CAN'T SPEAK TO THAT BECAUSE I DON'T --

 6    I DON'T KNOW.

 7    Q    YOU'RE NOT QUALIFIED?

 8    A    I HAVEN'T STUDIED START-UP EXPERIENCE FROM

 9    PHONE TO PHONE.  I -- I COMPLETELY -- I KNOW THAT

10    THIS IS THE APPLICATION SCREEN, NOT THE HOME

11    SCREEN.

12    Q    BY THE TIME THAT THE CONSUMER TURNS ON THE

13    PHONE, SEES THE SAMSUNG NAME PROMINENTLY DISPLAYED,

14    SEES THE DROID ADVERTISEMENT AND ANIMATION,

15    WOULDN'T YOU AGREE THAT NO CONSUMER WOULD BE

16    CONFUSED AS TO WHICH PHONE THEY HAVE BY THAT TIME?

17    A    I CAN'T AGREE BECAUSE I HAVEN'T -- I DON'T --

18    I DON'T KNOW ABOUT CONSUMER BEHAVIOR STARTING -- I

19    DON'T KNOW ABOUT THE QUESTION YOU'RE ASKING ME.

20    THAT'S OUTSIDE MY FOCUS.

21    Q    IT'S OUTSIDE YOUR EXPERTISE?

22    A    YES, AS A GRAPHIC U/I DESIGNER.

23    Q    NOW, THERE WAS ONE SLIDE -- I'LL TURN THIS OFF

24    NOW, YOUR HONOR, IF THAT'S OKAY.

25              THE COURT:  GO AHEAD, PLEASE.
```

```
 1    BY MR. VERHOEVEN:

 2    Q    THERE'S ONE SLIDE THAT YOU FOCUSSED ON WITH

 3    RESPECT TO YOUR TESTIMONY MORE THAN OTHERS WHEN YOU

 4    WERE TESTIFYING ABOUT YOUR OPINIONS WITH RESPECT TO

 5    THE DESIGN '305 PATENT, AND THAT WAS PDX 14.7.

 6              CAN WE PUT THAT ON THE SCREEN.  THIS IS A

 7    SLIDE THAT COUNSEL FOR APPLE SHOWED YOU.  DO YOU

 8    REMEMBER THAT?

 9    A    YES.

10    Q    AND DO YOU REMEMBER YOU SPENT MOST OF YOUR

11    TIME EXPLAINING THIS SLIDE, AND FOR THE OTHER

12    SLIDES SHE SHOWED YOU, YOU SAID SAME REASONS?

13    A    YES.

14    Q    SO LET'S FOCUS ON THIS SLIDE.

15              NOW, IF WE LOOK AT THE DESIGN '305 PATENT

16    COMPARED TO THE FASCINATE, DO YOU SEE IN THE DESIGN

17    '305 PATENT THE FIRST BOX IN THE UPPER LEFT SAYS

18    SMS?

19    A    YES.

20    Q    WHERE IS THAT ICON IN THE FASCINATE?

21    A    I BELIEVE THAT THE ANALOGOUS ICON IS IN THE

22    BOTTOM ROW ON THE RIGHT, THREE FROM THE LEFT.

23    Q    I HAVE A LASER POINTER, YOUR HONOR.

24              DO YOU MIND IF I HAND THIS TO THE WITNESS

25    SO SHE CAN INDICATE ON THE BIG SCREEN?
```

```
1    A    GO AHEAD, PLEASE.

2    Q    DO YOU KNOW HOW TO USE THESE?

3    A    I'M NOT A LASER POINTER EXPERT, EITHER.

4    Q    JUST PUT THIS BUTTON.  DON'T POINT IT IN

5    ANYBODY'S EYES.

6    A    OKAY.

7    Q    SO THE SMS IS ON THE TOP LEFT, RIGHT, IN THE

8    D'305?

9    A    YES.

10   Q    AND WHERE IS IT IN THE FASCINATE?

11   A    (INDICATING).

12   Q    RIGHT DOWN HERE?

13   A    I BELIEVE THAT THOSE ARE ANALOGOUS.

14   Q    OKAY.  SO IT'S IN A DIFFERENT PLACE; RIGHT?

15   A    YES.

16   Q    IN THE '305, THERE'S A DOCK OR -- WHAT WOULD

17   YOU CALL THIS BOTTOM ROW ON THE '305?

18   A    YOU KNOW, IT DOESN'T REALLY SAY IN THE '305

19   BECAUSE IT'S JUST A DESIGN, ORNAMENTAL DESIGN.  SO

20   I JUST HAVE BEEN CALLING IT AN AREA AT THE BOTTOM,

21   A SEPARATED AREA AT THE BOTTOM, BECAUSE IT

22   DOESN'T -- THE '305 DOESN'T TALK ABOUT

23   FUNCTIONALITY.

24   Q    OKAY.  WELL, IN THE D'305, THE SMS ICON IS NOT

25   IN THE BOTTOM ROW THAT'S SET OFF SEPARATELY; RIGHT?
```

1    A    RIGHT.

2    Q    BUT IN THE FASCINATE, IT IS IN THE BOTTOM ROW.

3    IS THAT BOTTOM ROW SET OFF SEPARATELY?

4    A    YES.

5    Q    SO YOU WOULD AGREE THAT'S A DIFFERENCE?

6    A    YES.

7    Q    NOW, YOU TALKED ABOUT ROUNDED RECTANGLES FOR

8    THE IPHONES.  DO YOU REMEMBER THAT?

9    A    YES.

10   Q    AND DO YOU REMEMBER YOU TESTIFIED WITH RESPECT

11   TO ALTERNATIVE DESIGNS THAT, GEE, SAMSUNG COULD

12   HAVE USED SOMETHING BESIDES ROUNDED RECTANGLES,

13   RIGHT?  THEY COULD HAVE PICKED A DIFFERENT SHAPE?

14   A    YES.

15   Q    WELL, THIS ICON SHEER NOT JUST A ROUNDED

16   RECTANGLE.  IT'S GOT A LITTLE -- IT'S ALMOST LIKE A

17   SPEECH BOX THAT YOU SEE IN CARTOONS; RIGHT?

18   A    RIGHT.

19   Q    DO YOU AGREE WITH THAT?

20   A    YES.  I WOULD SAY IT IS A SPEECH BALLOON THAT

21   HAS, HAS ROUNDED RECTANGULAR ELEMENTS, BUT IT'S NOT

22   A SQUARE.

23   Q    IT'S A DIFFERENT SHAPE?  RIGHT?

24   A    IT'S NOT A SQUARE.  IT HAS -- IT HAS STRAIGHT

25   EDGES ON TOP AND BOTTOM, BUT IT'S NOT -- AND

```
 1    ROUNDED CORNERS, BUT IT'S NOT A SQUARE.
 2    Q    AND THE D'305 PATENT SAYS SMS, BUT THE
 3    FASCINATE JUST HAS A HAPPY FACE; RIGHT?
 4    A    YES.
 5    Q    IS IT YOUR TESTIMONY -- IT'S NOT YOUR
 6    TESTIMONY THAT THOSE ARE SUBSTANTIALLY SIMILAR
 7    ICONS, IS IT?
 8    A    MY TESTIMONY DIDN'T COMPARE SPECIFICALLY
 9    THOSE.  THEY HAVE FEATURES IN COMMON AND THEY HAVE
10    DIFFERENCES.
11    Q    DR. KARE, IS IT KARE OR KARE?
12    A    KARE.
13    Q    KARE, THANK YOU.
14         DR. KARE, YOU'RE NOT TESTIFYING TO THIS
15    JURY THAT THIS SMS ICON IS SUBSTANTIALLY SIMILAR TO
16    THIS OTHER ICON THAT SAYS, "MESSAGES," ARE YOU?
17    A    NO.
18    Q    IT'S NOT, IS IT?
19    A    IT HAS SOME SIMILARITIES.  IT USES THE SPEECH
20    BALLOON AS A METAPHOR AND IT HAS, AS I MENTIONED,
21    THE HORIZONTAL AND VERTICAL EDGES THAT ARE STRAIGHT
22    AND IT HAS ROUNDED CORNERS.  THOSE WOULD BE WHAT IT
23    HAS IN COMMON.
24         AND IT OBVIOUSLY HAS DIFFERENCES, LIKE
25    THE FACE AND THE POINT.
```

1    Q    IT'S NOT SUBSTANTIALLY SIMILAR, IS IT?

2    A    NO.

3    Q    THEN IF YOU LOOK AT THE NEXT ICON, IT SAYS

4    "CALENDAR."  AND YOU SEE IT'S GOT A 6, AND IT'S --

5    IT'S GOT WHITE AND A TOP BORDER THAT'S RED?

6    A    YES.

7    Q    AND I BELIEVE IT'S HARD TO SEE ON THE SCREEN.

8    IT SAYS WEDNESDAY IN THE BORDER?

9    A    MY EYES AREN'T THAT GOOD, BUT YES.

10   Q    OKAY.  WHERE IS THE CALENDAR ICON IN THE

11   FASCINATE?

12   A    (INDICATING).

13   Q    RIGHT THERE?

14   A    YES.

15   Q    OKAY.  SO IT'S NOT THE SECOND ICON, SECOND

16   COLUMN IN THE TOP ROW, RIGHT?

17   A    RIGHT.

18   Q    IT'S IN A DIFFERENT PLACE?

19   A    YES.

20   Q    AND IT'S A COMPLETELY DIFFERENT PICTURE, ISN'T

21   IT?

22   A    YES.

23   Q    THAT CALENDAR ICON IS NOT SUBSTANTIALLY

24   SIMILAR TO THE CALENDAR ICON IN THE D'305; RIGHT?

25   A    NO.

```
1    Q    YOU AGREE WITH ME?

2    A    YES.

3    Q    IF YOU LOOK AT THIS SECOND ROW HERE, THE LEFT

4    ICON, IT SAYS, "YOUTUBE."  DO YOU SEE THAT?

5    A    YES.

6    Q    YOUTUBE IS A REFERENCE TO WHAT?

7    A    THE D'305 DESIGN DOESN'T INCLUDE, YOU KNOW, A

8    DEFINITION OF EVERYTHING.  I ASSUME IT'S THE

9    YOUTUBE.COM APPLICATION.

10         BUT --

11   Q    AND WHAT COMPANY --

12   A    I DON'T KNOW THAT FROM THE D'305.

13   Q    DO YOU KNOW WHAT COMPANY PROVIDES YOUTUBE?

14   A    I THINK GOOGLE BOUGHT THEM.

15   Q    IT'S A GOOGLE ICON, ISN'T IT?

16   A    I DON'T KNOW.  I DON'T KNOW THE ORIGIN OF THAT

17   ICON.

18   Q    CAN YOU TELL THE JURY, WHERE IS THE YOUTUBE

19   ICON IN THE FASCINATE?

20   A    IN THIS APPLICATION SCREEN, I DON'T THINK

21   THERE IS ONE.

22   Q    IT'S NOT THERE, IS RIGHT?

23   A    CORRECT.

24   Q    THEN THIS NEXT ICON, THE NEXT ROW, SECOND

25   COLUMN, IT SAYS, "STOCKS."  AND IT'S GOT A TICKER
```

1    SYMBOL.  DO YOU SEE THAT?

2    A    YES.

3    Q    WHERE IS THAT IN THE FASCINATE?

4    A    ON THIS APPLICATION SCREEN, THERE ISN'T ONE.

5    Q    IT'S NOT THERE; RIGHT?

6    A    YES.

7    Q    AND THEN THIS NEXT ICON, IT SAYS, "MAPS."

8             DO YOU SEE THAT?

9    A    YES.

10   Q    WHO PROVIDES THE MAP FUNCTIONALITY ON APPLE'S

11   PHONES?

12   A    I DON'T KNOW.

13   Q    YOU DON'T KNOW THAT GOOGLE PROVIDE IT IS?

14   A    I DON'T KNOW.

15   Q    DO YOU KNOW WHETHER OR NOT THIS IS A GOOGLE

16   ICON?

17   A    I DON'T KNOW.

18   Q    WHERE IS THE MAPS ICON ON THE FASCINATE?

19   A    IT -- ON THIS SCREEN, I DON'T SEE ONE.

20   Q    IT'S NOT THERE; RIGHT?

21   A    YES.

22   Q    WHAT ABOUT WEATHER?  SECOND ROW, FOURTH

23   COLUMN, A PICTURE OF THE SUN AND 73 DEGREES.

24             WHERE IS THAT IN THE FASCINATE?

25   A    I DON'T SEE IT ON THIS SCREEN.

1    Q    IF WE GO TO THE FOURTH ROW, SECOND COLUMN, DO

2    YOU SEE THAT ICON FOR CALCULATOR?

3    A    YES.

4    Q    WHERE IS THE CALCULATOR ICON IN THE FASCINATE?

5    A    IN THE SECOND ROW.

6    Q    RIGHT THERE?  SO IT'S IN A DIFFERENT ROW;

7    RIGHT?

8    A    YES.

9    Q    AND IF WE LOOK AT THE CALCULATOR ICON ON THE

10   D'305, IT'S GOT A GRAY BACKGROUND, GRAY-WHITE-ISH

11   BACKGROUND; RIGHT?

12   A    YES.

13   Q    AND IT'S GOT THREE CIRCLES, FOUR CIRCLES,

14   RIGHT?

15   A    YES.

16   Q    PLUS NOTICE EACH OF THE FOUR CIRCLES

17   RESPECTIVELY ARE THE PLUS, THE MINUS, THE TIMES,

18   AND THE DIVISION SYMBOLS; RIGHT?

19   A    YES.

20   Q    NOW, IF YOU LOOK AT THE CALCULATOR IN THE

21   FASCINATE, IT DOESN'T HAVE A WHITE-GRAY BACKGROUND,

22   DOES IT?

23   A    NO.

24   Q    IT HAS A YELLOW ORANGE BACKGROUND; RIGHT?

25   A    YES.

```
 1    Q    AND IT DOESN'T JUST HAVE FOUR CIRCLES, DOES

 2    IT?

 3    A    NO.

 4    Q    IT HAS A PICTURE OF AN ENTIRE CALCULATOR;

 5    RIGHT?

 6    A    YES.

 7    Q    DR. KARE, YOU WOULD AGREE WITH ME THAT THE

 8    CALCULATOR ICON IN THE FASCINATE IS NOT

 9    SUBSTANTIALLY SIMILAR TO THE CALCULATOR ICON IN THE

10    D'305?

11    A    YES.

12    Q    AND THE NEXT ICON ON THE FOURTH ROW, THIRD

13    COLUMN, NOTES, WHERE IS THAT FOUND IN THE

14    FASCINATE?

15    A    IT'S NOT ON THIS SCREEN.

16    Q    IT'S NOT THERE?

17    A    NO.

18    Q    WHAT ABOUT THE LAST ICON THAT SAYS SETTINGS?

19    IT'S THE FOURTH COLUMN, FOURTH ROW, BOTTOM RIGHT.

20    WHERE IS THAT FOUND IN THE FASCINATE?

21    A    IT'S NOT IN THIS SCREEN.

22    Q    WELL, THERE'S A GEAR UP HERE.  DO YOU SEE

23    THAT?

24    A    I SEE THAT.

25    Q    DO YOU KNOW IF THAT'S AN ICON?
```

1    A    I KNOW THAT THAT'S A STATUS BAR, BUT I DIDN'T

2    KNOW -- I GUESS THAT COULD BE A SETTINGS ICON.

3    Q    IT COULD BE.

4         YOU WOULD AGREE WITH ME THAT THAT GEAR IN

5    THE TOP-LEFT QUADRANT OF THE FASCINATE DEPICTED ON

6    PDX 14.7 IS NOT SUBSTANTIALLY SIMILAR TO THE

7    SETTINGS ICON IN THE D'305 PATENT?

8    A    NO.

9    Q    YOU WOULD AGREE WITH ME?

10   A    YES.

11   Q    OKAY.  FOR THE RECORD, THEN, YOU AGREE --

12   BECAUSE YOU SAID NO AND YES, I JUST WANT TO MAKE

13   SURE --

14   A    WELL, IT'S THE SAME METAPHOR, SO I HADN'T

15   REALLY THOUGHT ABOUT THAT BEFORE.  AND IT'S GOT A

16   BIT OF A SIMILAR FORM FACTOR, DIFFERENT SIZE.  SO

17   IT'S NOT 100 PERCENT DIFFERENT, BUT --

18   Q    IS IT YOUR TESTIMONY THAT THAT TINY LITTLE

19   GEAR IS SUBSTANTIALLY SIMILAR TO THIS LARGER ICON

20   THAT'S GOT A RECTANGLE WITH A BORDER AROUND IT,

21   THREE GEARS, AND SHADING?

22   A    NO.

23   Q    IT'S NOT SUBSTANTIALLY SIMILAR, IS IT?

24   A    NO.

25   Q    YOU DID TESTIFY ABOUT A COUPLE OF THESE ICONS

1    THAT YOU WANTED TO POINT THE JURY TO.

2              ONE WAS THE PHONE ICON ON THE BOTTOM

3    LEFT, OR LET'S CALL IT THE BOTTOM -- WELL, FOR THE

4    RECORD, WHY DON'T YOU USE YOUR WORDS.  HOW WOULD

5    YOU DESCRIBE THIS, THIS GRAY AREA WITH THE FOUR

6    ICONS IN THE VERY BOTTOM OF THE D'305?

7    A    JUST THE SEPARATE AREA AT THE BOTTOM.

8    Q    OKAY.  SO I'LL JUST USE THAT TO DESCRIBE IT.

9    OKAY?

10   A    UM-HUM, THANKS.

11   Q    SO THE SEPARATE AREA AT THE BOTTOM HAS, IN THE

12   D'305, HAS THE FINE ICON; RIGHT?

13   A    YES.

14   Q    AND YOU POINT TO THE FACT THAT THE FASCINATE

15   HAS A PHONE ICON AND IT'S ALSO GREEN AND HAS A

16   PICTURE OF A PHONE; RIGHT?

17   A    YES.

18   Q    NOW, THAT PICTURE OF THAT PHONE, YOU HAVEN'T

19   SEEN A PHONE RECEIVER LIKE THAT IN ABOUT 25 YEARS,

20   HAVE YOU?

21   A    I KNOW THAT IT WAS DESIGNED IN 1938, AND IT

22   WAS BY HENRY DREYFUS AND IT WAS USED, YOU KNOW,

23   THROUGH THE '60S, '70S.

24              BUT I --

25   Q    THOSE WERE MA BELL PHONES?

```
 1    A    I THINK OF IT AS RETRO.

 2    Q    SO THAT'S A PICTURE OF A MA BELL PHONE

 3    RECEIVER; RIGHT?

 4    A    I DON'T KNOW WHETHER IT'S A MA BELL PHONE, BUT

 5    I KNOW THAT IT'S RETRO.

 6    Q    DO YOU REMEMBER IN THE OLD DAYS WHEN THERE WAS

 7    PHONE BOOTHS ON THE STREETS?

 8    A    YES.

 9    Q    BEFORE CELL PHONES?

10    A    YES.

11    Q    AND DO YOU REMEMBER THEY HAD THAT SAME PICTURE

12    OF THE PHONE ON THE SIDE OF A PHONE BOOTH?

13    A    A LOT OF THEM HAD BLUE ONES WITH A RECEIVER

14    THAT WAS VERTICAL.

15    Q    AND IT'S THE SAME RECEIVER, RIGHT?

16    A    SIMILAR.

17    Q    IT'S THE OLD ICONIC MA BELL RECEIVER; RIGHT?

18    A    IT'S, IT'S A RETRO VERSION OF A RETRO PHONE

19    RECEIVER.

20    Q    THE OLD MA BELL PHONES.  DO YOU REMEMBER WHEN

21    YOU GREW UP, YOU HAD TO DIAL PHONES AND YOU PICKED

22    THE RECEIVER UP, THAT'S A PICTURE OF THAT RECEIVER,

23    RIGHT?

24    A    YEAH.  I JUST DON'T -- I NEVER KNEW ABOUT

25    ASSOCIATING IT WITH THE TERM MA BELL, SO --
```

```
1    Q    WELL, CERTAINLY APPLE DOESN'T OWN THE IMAGE
2    AFTER THAT PHONE RECEIVER, DOES IT?
3    A    I DON'T KNOW.
4    Q    DO YOU BELIEVE IT DOES?
5    A    I BELIEVE THAT SEEING THAT WHITE PHONE ON AN
6    ANGLE ON A SCREEN BACKGROUND --
7    Q    THAT'S NOT WHAT I ASKED YOU.
8    A    -- IS DISTINCTIVE.
9    Q    THAT'S NOT WHAT I ASKED YOU.  DO YOU BELIEVE
10   THAT APPLE OWNS THE IMAGE OF THE OLD RETRO PHONE
11   RECEIVER?
12   A    I DON'T KNOW.
13   Q    OKAY.  WHAT ABOUT THE COLOR GREEN?  WHEN
14   PEOPLE SEE THE COLOR GREEN, THAT MEANS GO; RIGHT?
15   A    SOMETIMES.
16   Q    APPLE DOESN'T OWN THE COLOR GREEN FOR GO, DOES
17   IT?
18   A    NO.  I DON'T -- I DON'T KNOW, BUT I WOULD
19   ASSUME NO.
20   Q    YOU'VE WORKED WITH ICONS A LOT.  YOU'VE SEEN
21   DOZENS OF ICONS THAT HAVE GREEN WITH TELEPHONE
22   RECEIVERS ON THEM IN THE PAST, HAVEN'T YOU?
23   A    I -- WHEN I WAS LOOKING AT THIS DESIGN, I
24   LOOKED SPECIFICALLY AT THAT INCARNATION OF A PHONE
25   ICON, GREEN, ROUNDED CORNERS, TILTED, POINTING UP,
```

1631

1    A    THE LEAD PERSON AT CORNERSTONE.  HIS NAME IS

2    SHANKAR, S-H-A-N-K-A-R, IYER, I-Y-E-R.

3    Q    SINCE 2000 -- SINCE THE YEAR 2000, YOU'VE

4    SERVED AS AN EXPERT WITNESS ON AT LEAST 14 OTHER

5    LITIGATION MATTERS; RIGHT?

6    A    THAT MIGHT BE CORRECT.  I HAVEN'T COUNTED.

7    Q    AND YOU'RE BEING PAID FOR YOUR TIME IN THIS

8    CASE; RIGHT?

9    A    CORRECT.

10   Q    TELL THE JURY HOW MUCH YOU'RE BEING PAID?

11   A    SIX HUNDRED AND TWENTY-FIVE DOLLARS AN HOUR.

12   Q    AND HOW MUCH MONEY HAS APPLE PAID YOU SO FAR?

13   A    APPROXIMATELY $50,000.

14   Q    AND HOW MUCH TOTAL HAS IT PAID CORNERSTONE?

15   A    I HAVE NO IDEA.

16   Q    NOW, IN REACHING YOUR OPINIONS IN YOUR EXPERT

17   REPORT, YOU DID NOT DO ANY SYSTEMATIC CONSUMER

18   RESEARCH, DID YOU, SIR?

19   A    I DID NOT CONDUCT ANY NEW STUDIES BEYOND WHAT

20   WAS ALREADY DONE FOR THE CASE.

21   Q    YOU, YOURSELF, DID NOT PERSONALLY CONDUCT ANY

22   SYSTEMATIC CONSUMER RESEARCH; FAIR?

23   A    THAT'S CORRECT.

24   Q    YOU DIDN'T DO ANY FORMAL INTERVIEWS WITH

25   CONSUMERS ABOUT THEIR PURCHASING EXPERIENCES;

```
 1    RIGHT?

 2    A    THAT'S CORRECT.

 3    Q    AND YOU HAVE NO EVIDENCE THAT CONSUMERS IN THE

 4    REAL WORLD HAVE ACTUALLY BOUGHT APPLE DEVICES

 5    THINKING THEY ARE SAMSUNG DEVICES; RIGHT?

 6              MR. JACOBS:  YOUR HONOR, OPENING THE

 7    DOOR.  MR. LEE'S TESTIMONY THAT YOUR HONOR EXCLUDED

 8    THIS MORNING, MR. VERHOEVEN HAS JUST ASKED THIS

 9    WITNESS WHETHER HE HAS ANY ACTUAL EVIDENCE OF

10    CONSUMER CONFUSION AND THIS WITNESS DOES.

11              MR. VERHOEVEN:  LET ME, LET ME ASK YOU --

12    Q    AT YOUR DEPOSITION -- DO YOU REMEMBER YOUR

13    DEPOSITION WAS TAKEN ON APRIL 27TH?

14    A    I REMEMBER BEING DEPOSED.  I DON'T REMEMBER

15    THAT DATE, BUT I'LL ASSUME YOU'RE CORRECT.

16    Q    AND DO YOU REMEMBER TESTIFYING THAT YOU HAVE

17    NO EVIDENCE THAT CONSUMERS OUT THERE IN THE REAL

18    WORLD HAVE ACTUALLY BOUGHT APPLE DEVICES THINKING

19    THEY WERE SAMSUNG DEVICES?

20    A    I THINK THAT MY REPLY WAS IN THE CONTEXT OF I

21    DID NOT DO ANY RESEARCH MYSELF THAT PROVED THAT.

22    Q    WELL, LET'S LOOK AT WHAT YOU SAID.

23              CAN WE PLAY DR. WINER'S DEPOSITION

24    TESTIMONY FROM APRIL 27TH, 2012, PAGE 35, LINES 7

25    THROUGH 15.
```

```
1                    (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

2        OPEN COURT OFF THE RECORD.)

3                    MR. VERHOEVEN:  ALL RIGHT.  LET'S PAUSE

4        IT AND GET THE VOLUME WORKING.  I APOLOGIZE, YOUR

5        HONOR.

6                    (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

7        OPEN COURT OFF THE RECORD.)

8        BY MR. VERHOEVEN:

9        Q    THAT WAS YOUR TESTIMONY YOU GAVE UNDER OATH IN

10       APRIL, SIR?

11                   MR. JACOBS:  YOUR HONOR, UNDER THE RULE

12       OF COMPLETENESS, I BELIEVE WE SHOULD READ A COUPLE

13       MORE PASSAGES DOWN, AND MR. VERHOEVEN HAS OPENED

14       THE DOOR.

15                   THE COURT:  I THINK HE'S OPENED THE DOOR,

16       BUT YOU'RE NOT GOING TO DO IT DURING HIS CROSS.

17                   THE WITNESS:  I BELIEVE I RESPONDED TO

18       THAT IN THE CONTEXT OF WHETHER I HAD DONE ANY

19       RESEARCH MYSELF.

20                   I CERTAINLY HAD READ DOCUMENTS, AND I

21       ALLUDED TO THEM IN MY DEPOSITION, AND MY REPORT,

22       THAT THERE WERE INTERNAL SAMSUNG DOCUMENTS

23       INDICATING REAL CASES OF CONFUSION IN THE

24       MARKETPLACE.

25       BY MR. VERHOEVEN:
```

1    Q    DO YOU STAND BY THE TESTIMONY WE JUST SAW,

2    SIR?

3    A    SURE I DO.

4    Q    OKAY.   THANK YOU.

5         YOU HAVE NO IDEA WHETHER CONSUMERS HAVE

6    ACTUALLY BOUGHT APPLE DEVICES THINKING THEY WERE

7    SAMSUNG DEVICES, HAVE YOU?

8         MR. JACOBS:   YOUR HONOR, I'M SORRY.   THE

9    WITNESS HAS BEEN INSTRUCTED NOT TO -- TO FOLLOW AN

10   EARLIER ORDER OF THE COURT AND MR. VERHOEVEN IS

11   OPENING THE DOOR.   THE WITNESS SHOULD BE INFORMED

12   THAT HE CAN ANSWER THAT QUESTION TRUTHFULLY.

13        MR. VERHOEVEN:   I'LL MOVE ON, YOUR HONOR.

14   Q    DR. WINER, YOU HAVE NO EMPIRICAL EVIDENCE TO

15   SHOW THAT SAMSUNG'S ACTIONS HAVE DILUTED APPLE'S

16   BRAND; RIGHT?

17   A    CORRECT.

18   Q    AND YOU HAVE NO HARD DATA TO SHOW THAT

19   SAMSUNG'S ACTIONS HAVE DILUTED APPLE'S BRAND;

20   RIGHT?

21   A    I WAS NOT ASKED TO DO THAT.

22   Q    YOU HAVE NEVER QUANTIFIED THE AMOUNT OF ANY

23   ALLEGED HARM FROM DILUTION OR LOSS OF ANY KIND TO

24   APPLE AS A RESULT OF SAMSUNG'S ACTIONS; RIGHT?

25   A    CORRECT.

```
 1    Q    YOU HAVE NO EMPIRICAL EVIDENCE THAT SHOWS THAT

 2   APPLE HAS ACTUALLY LOST ANY MARKET SHARE AS A

 3   RESULT OF SAMSUNG'S SALES OF ITS DEVICES; RIGHT?

 4   A    NO.

 5    Q    THAT ANSWER IS YOU DON'T HAVE ANY EMPIRICAL

 6   EVIDENCE; CORRECT?

 7   A    CORRECT.

 8    Q    AND YOU DON'T HAVE ANY EVIDENCE THAT

 9   QUANTIFIES THE AMOUNT OF ANY LOST MARKET SHARE;

10   CORRECT?

11   A    THAT'S CORRECT.

12    Q    YOU HAVE NO EVIDENCE QUANTIFYING THE NUMBER OF

13   PURCHASERS WHO BOUGHT A SAMSUNG DEVICE IN LIEU OF

14   BUYING AN APPLE DEVICE; RIGHT?

15   A    I KNOW OF AT LEAST ONE.

16    Q    YOU CAN'T QUANTIFY THE NUMBER OF PURCHASERS

17   WHO BOUGHT A SAMSUNG DEVICE IN LIEU OF BUYING AN

18   APPLE DEVICE; RIGHT?

19   A    AS FAR AS I KNOW, ONE IS A QUANTIFICATION,

20   COUNSELOR.

21    Q    OKAY.  LET'S SEE WHAT YOU SAID IN RESPONSE TO

22   THAT AT YOUR DEPOSITION, SIR.  PAGE NOTE NOTE LINE

23   CITE.

24            (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

25   OPEN COURT OFF THE RECORD.)
```

```
1     BY MR. VERHOEVEN:

2     Q    YOU WERE ASKED THAT QUESTION AND YOU GAVE THAT

3     ANSWER AT YOUR DEPOSITION; RIGHT, SIR?

4     A    APPARENTLY SO.

5     Q    DO YOU STAND BY THAT TESTIMONY?

6     A    YES.

7     Q    WILL HE ME SWITCH SUBJECTS NOW.

8              IN YOUR MARCH 22ND, 2012 EXPERT REPORT AT

9     PAGE 160, YOU REFER TO WHAT YOU CALL A SLEEKCRAFT

10    FACTOR, NUMBER 6, DEGREE OF CARE WITH RESPECT TO

11    THE IPAD.

12             CAN WE PUT UP PARAGRAPH 160 FROM

13    DR. WINER'S EXPERT REPORT FROM MARCH 22, PLEASE.

14             CAN YOU PUSH THAT DOWN SO I CAN SEE WHERE

15    IT WAS PULLED OUT FROM, MR. FISHER?  GO BACK.

16             OKAY.  SO CAN WE -- THAT'S WHAT I'M

17    LOOKING FOR, 160.

18             DO YOU SEE IT SAYS SLEEK, SLEEK -- YOU

19    HAVE IT IN YOUR BINDER AS WELL, SIR?

20    A    YES, I DO HAVE IT.

21    Q    SLEEK -- SLEEKCRAFT FACTOR SAYS, "TYPES OF

22    GOODS AND," THIS IS WHAT I'M GOING TO FOCUS ON

23    HERE, THE REST OF THIS, "AND THE DEGREE OF CARE

24    LIKELY TO BE EXERCISED BY THE PURCHASER."

25             DO YOU SEE THAT?
```

1    A    I DO.

2    Q    AND SO THE DEGREE OF CARE, YOU'D AGREE WITH

3    ME, THAT THE HIGHER THE DEGREE OF CARE EXERCISED BY

4    THE CONSUMER, THE LESS CHANCE THERE IS GOING TO BE

5    THAT THERE'S CONFUSION OR DILUTION; RIGHT?

6    A    FOR ANY INDIVIDUAL CONSUMER, THAT WOULD BE

7    TRUE.

8    Q    SO IF IT'S LIKE A 50 CENTS DOODAD IN THE

9    GROCERY STORE THAT PEOPLE MIGHT PICK UP, THE DEGREE

10   OF CARE WOULD BE REALLY LOW, RIGHT?

11   A    YOU WOULD BE SURPRISED, BUT I WOULD AGREE THAT

12   IT WOULD BE, OVERALL, LOWER THAN FOR A $600 ITEM OR

13   $300 ITEM.

14   Q    OR TO GET REALLY CONTRASTING, A NEW CAR WOULD

15   BE SOMETHING THAT WOULD BE VERY EXPENSIVE FOR A LOT

16   OF PEOPLE, YOU'LL HAVE TO PAY FOR IT OVER A NUMBER

17   OF YEARS, SO THEY'LL BE REALLY CAREFUL WHEN THEY

18   BUY THAT, RIGHT?

19   A    I JUST DON'T WANT TO USE GENERALITIES.  I

20   WOULD SAY THAT THERE ARE ALWAYS SEGMENTS OF

21   CONSUMERS WHO TAKE MORE OR LESS CARE IN MAKING

22   PURCHASES OF PRODUCTS.

23          SOME MARKETING, WE DON'T WORK WITH THE

24   NOTION OF THERE BEING A MARKET.  WE WORK WITH THE

25   IDEA THAT THERE ARE SEGMENTS AND DIFFERENT KINDS OF

```
 1    CUSTOMERS.

 2              SO WHILE THE RATIONAL -- YOU KNOW,

 3    EXPLANATION OF PURCHASING WOULD BE, YES, PEOPLE

 4    TAKE A LOT OF CARE EVEN IN BUYING CARS.  THE FACT

 5    IS THAT EVEN THAT WILL VARY OVER CONSUMERS IN TERMS

 6    OF HOW MUCH INFORMATION THEY USE, HOW MANY

 7    DEALERSHIPS THEY VISIT AND THE WHOLE RANGE OF

 8    INFORMATION AND COLLECTION ACTIVITIES.

 9    Q    FAIR ENOUGH.  DIFFERENT CONSUMERS EXHIBIT

10    DIFFERENT BEHAVIORS; RIGHT?

11    A    THAT'S WHAT I'M SAYING.

12    Q    BUT SETTING THAT ASIDE, GENERALLY SPEAKING,

13    WHEN WE'RE TALKING ABOUT THIS FACTOR HERE, IF IT'S

14    A MORE EXPENSIVE ITEM, ON AVERAGE, CONSUMER WILL

15    EXERCISE MORE CARE; RIGHT?

16    A    ONE WOULD EXPECT THAT.

17    Q    THAT MEANS THERE'S LESS CHANCE OF CONFUSION,

18    RIGHT?

19    A    LESS, BUT NOT ZERO.

20    Q    SO IF WE SWITCH TO WHAT WE'RE TALKING ABOUT

21    HERE, I'M HOLDING IN MY HAND ACCUSED SAMSUNG

22    TAB 10.1, WHICH IS EXHIBIT, TRIAL JOINT EXHIBIT

23    1037, YOU'VE SEEN THIS DOCUMENT, THIS --

24    A    IT'S NOT TURNED ON, BUT I'LL ASSUME THAT

25    YOU'RE CORRECT.
```

1

2

3

4

5                        CERTIFICATE OF REPORTERS

6

7

8            WE, THE UNDERSIGNED OFFICIAL COURT

9    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

19

20                        /S/
                 _____
21               LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595
22

23                        /S/
                 _____
24               IRENE RODRIGUEZ, CSR, CRR
                 CERTIFICATE NUMBER 8074
25

1                     DATED:  AUGUST 7, 2012

1638

1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

        APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6       CORPORATION,                )
                                    )  SAN JOSE, CALIFORNIA
7                   PLAINTIFF,      )
                                    )  AUGUST 10, 2012
8             VS.                   )
                                    )  VOLUME 6
9       SAMSUNG ELECTRONICS CO.,    )
        LTD., A KOREAN BUSINESS     )  PAGES 1638-1988
10      ENTITY; SAMSUNG             )
        ELECTRONICS AMERICA,        )
11      INC., A NEW YORK            )
        CORPORATION; SAMSUNG        )
12      TELECOMMUNICATIONS          )
        AMERICA, LLC, A DELAWARE    )
13      LIMITED LIABILITY           )
        COMPANY,                    )
14                                  )
                    DEFENDANTS.     )
15      _____

16           TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                  CERTIFICATE NUMBER 9595
24

25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                     BY:  HAROLD J. MCELHINNY
 3                                    MICHAEL A. JACOBS
                                      RACHEL KREVANS
 4                               425 MARKET STREET
                                 SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                  HALE AND DORR
 7                            BY:  WILLIAM F. LEE
                              60 STATE STREET
 8                            BOSTON, MASSACHUSETTS  02109

 9                            BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:  QUINN, EMANUEL, URQUHART,
                          OLIVER & HEDGES
12                        BY:  CHARLES K. VERHOEVEN
                          50 CALIFORNIA STREET, 22ND FLOOR
13                        SAN FRANCISCO, CALIFORNIA  94111

14                            BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
16                            REDWOOD SHORES, CALIFORNIA  94065

17                            BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
19                            LOS ANGELES, CALIFORNIA  90017

20                            BY:  EDWARD J. DEFRANCO
                              51 MADISON AVENUE, 22ND FLOOR
21                            NEW YORK, NEW YORK  10010

22

23

24

25
```

1640

```
1                     INDEX OF WITNESSES

2     PLAINTIFF'S

3     HAL PORET
             CROSS-EXAM BY MR. PRICE (RES.)    P. 1665
4            REDIRECT EXAM BY MR. JACOBS       P. 1687

5     KENT VAN LIERE
             DIRECT EXAM BY MR. JACOBS         P. 1690
6            CROSS-EXAM BY MR. PRICE           P. 1702

7     RAVIN BALAKRISHNAN
             DIRECT EXAM BY MR. JACOBS         P. 1723
8            CROSS-EXAM BY MR. JOHNSON         P. 1769
             REDIRECT EXAM BY MR. JACOBS       P. 1806
9            RECROSS-EXAM BY MR. JOHNSON       P. 1813

10    KARAN SINGH
             DIRECT EXAM BY MR. JACOBS         P. 1815
11           CROSS-EXAM BY MR. DEFRANCO        P. 1848
             REDIRECT EXAM BY MR. JACOBS       P. 1909
12

13    JOHN HAUSER
             DIRECT EXAM BY MR. JACOBS         P. 1914
14           CROSS-EXAM BY MR. PRICE           P. 1917
             REDIRECT EXAM BY MR. JACOBS       P. 1945
15           RECROSS-EXAM BY MR. PRICE         P. 1948

16    BORIS TEKSLER
             DIRECT EXAM BY MR. MUELLER        P. 1951
17           CROSS-EXAM BY MS. MAROULIS        P. 1964

18

19

20

21

22

23

24

25
```

```
1              COULD WE HAVE 27.10, MR. LEE.

2              SO THE FIRST PART OF CLAIM 19 DISCUSSES A

3    DEVICE WITH A TOUCHSCREEN DISPLAY, A PROCESSOR,

4    MEMORY, AND A PROGRAM FOR PERFORMING RUBBER BANDING

5    OF THE BOUNCE FUNCTION.

6              DO SAMSUNG'S PRODUCTS MEET THESE

7    ELEMENTS, REQUIREMENTS, OR LIMITATIONS AS THE

8    PATENT LAWYERS CALL THEM?

9    A    YES, THEY DO.

10   Q    SO LET'S GO TO 27.12.  AND CAN YOU JUST REVIEW

11   THIS ELEMENT, THIS FIRST ELEMENT OF CLAIM 19

12   BRIEFLY WITH THE JURY AND WHY YOU FIND IT PRESENT

13   IN THE SAMSUNG DEVICE?

14   A    SURE.  THIS FIRST ELEMENT ESSENTIALLY SAYS IT

15   HAS TO BE A COMPETING DEVICE WHICH HAS A

16   TOUCHSCREEN DISPLAY.  AND WHAT A TOUCHSCREEN

17   DISPLAY IS IS A TOUCH SENSOR THAT SENSES THE USER'S

18   TOUCH INPUTS INTEGRATED WITH A DISPLAY.

19              AND ALL THESE PHONES AND TABLETS CLEARLY

20   HAVE A TOUCH SENSOR INTEGRATED WITH THE DISPLAY.

21              IT ALSO HAS ONE OR MORE COMPUTING

22   PROCESSORS, WHICH MAKES ALL THE PROGRAMS RUN;

23   MEMORY TO INSTALL THOSE PROGRAMS AND DATA; AND ONE

24   OR MORE PROGRAMS THAT ACTUALLY GIVE YOU THE

25   FUNCTIONALITY THAT WE USE ON THESE DIFFERENT
```

1    DEVICES.

2    Q    CAN WE HAVE 27.14, MR. LEE.

3            NOW, THIS IS ELEMENT 2 OF THE CLAIM -- OF

4    CLAIM 19 OF THE '381 PATENT.  WHAT IS IT CALLING

5    FOR?

6    A    ELEMENT 2 SIMPLY SAYS IT HAS TO BE

7    INSTRUCTIONS OR COMPUTER CODE FOR DISPLAYING A

8    FIRST PORTION OF AN ELECTRONIC DOCUMENT.

9            SO THE GALLERY APPLICATION, THE

10   ELECTRONIC DOCUMENT WILL BE THE PHOTOGRAPH, AND AS

11   YOU CAN SEE ON THIS PARTICULAR SLIDE, I'VE

12   ILLUSTRATED IT DISPLAYING A FIRST PORTION, JUST A

13   FIRST PART OF THAT DOCUMENT.

14   Q    LET'S GO TO THE NEXT SLIDE, MR. LEE, 27.16.

15           THIS IS THE THIRD ELEMENT OF CLAIM 19,

16   AND WHAT IS IT LOOKING FOR?

17   A    THIS ELEMENT IS LOOKING FOR THE DETECTION OF

18   AND MOVEMENT OF AN OBJECT ON A TOUCHSCREEN DISPLAY.

19           NOW, THE OBJECT COULD BE ANY OBJECT OR IT

20   COULD BE THE FINGER, THE USER'S FINGER AS WELL, AND

21   THE SAMSUNG DEVICES CLEARLY DETECT THE TOUCH.

22           AS YOU CAN SEE IN SUBSEQUENT VIDEOS, AND

23   EVEN THE ORIGINAL VIDEO WE SHOWED, IT CLEARLY

24   DETECTS THE MOVEMENT OF THAT OBJECT, A FINGER ON

25   THE SCREEN.

1    Q    LET'S GO TO 27.18.  THIS IS THE FOURTH ELEMENT

2    OF CLAIM 19.  AND WHAT IS IT REQUIRING?

3    A    THIS REQUIRES A TRANSLATION OR MOVEMENT OF THE

4    ELECTRONIC DOCUMENT, IN THIS EXAMPLE, THE

5    PHOTOGRAPH, IN A FIRST DIRECTION, AND THEN IT

6    SUBSEQUENTLY DISPLAYS A SECOND PORTION OF THAT SAME

7    DOCUMENT WHERE THAT SECOND PORTION HAS TO BE

8    DIFFERENT FROM THE FIRST PORTION.

9            AS YOU CAN SEE HERE -- IF YOU CAN SHOW

10   THE VIDEO AGAIN, PLEASE?

11           (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

12   OPEN COURT OFF THE RECORD.)

13   BY MR. JACOBS:

14   Q    THAT'S THE FIRST PORTION.

15   A    NOW, WHEN YOU DRAG IT IN THE FIRST DIRECTION,

16   A SECOND PORTION OF THE SAME ELECTRONIC DOCUMENT OR

17   PHOTOGRAPH IS SHOWN.

18           AS YOU CAN SEE, THE SECOND PORTION COULD

19   OVERLAP THE FIRST PORTION, BUT IT'S STILL DIFFERENT

20   FROM THE FIRST PORTION.

21   Q    AND JUST BECAUSE IT WENT A LITTLE FAST, SIR,

22   WHEN YOU WERE APPLYING THE PHRASE "TRANSLATING THE

23   ELECTRONIC DOCUMENT," YOU WERE LOOKING FOR WHAT?

24   A    I'M LOOKING FOR MOVEMENT.  "TRANSLATION"

25   SIMPLY MEANS MOVEMENT ON A PARTICULAR SET OF AXES,

```
 1    IN THIS CASE IT'S MOVING ON THE X AND Y OR
 2    TWO-DIMENSIONAL PLANE OF THE SCREEN.
 3    Q    SO NOW LET'S LOOK AT THE FIFTH ELEMENT ON THE
 4    SCREEN, AND WE'RE LOOKING AT 27.20.  WHAT DOES THIS
 5    ELEMENT CALL FOR?
 6    A    THIS ELEMENT IS WHAT HAPPENS WHEN THE USER
 7    CONTINUES TO DRAG THE DOCUMENT, TRANSLATE THE
 8    DOCUMENT, AND IT REACHES THE EDGE OF THE DOCUMENT.
 9              WHEN THE SYSTEM RECOGNIZES THAT THE EDGE
10    OF A DOCUMENT HAS BEEN REACHED, IN RESPONSE TO THAT
11    EDGE BEING REACHED, AN AREA BEYOND THE EDGE IS
12    SHOWN, WHAT I'VE ILLUSTRATED IN THE YELLOW BOX TO
13    THE LEFT OF THE ACTUAL DOCUMENT'S EDGE THERE ON THE
14    SCREEN.
15              AND THE LAST PART OF THIS IS THAT A THIRD
16    PORTION OF THE DOCUMENT HAS TO REMAIN ON THE SCREEN
17    WHERE THAT THIRD PORTION HAS TO BE SMALLER THAN THE
18    ORIGINAL FIRST PORTION.
19              AND THAT'S PRETTY APPARENT FROM THIS
20    IMAGE HERE.  THE THIRD PORTION IS NOT -- DOESN'T
21    FILL THE FULL SCREEN, WHEREAS THE FIRST PORTION I
22    ORIGINALLY SHOWED FILLS THE FULL SCREEN.
23    Q    DOES THE SAMSUNG GALAXY S II, AT&T, MEET THIS
24    LIMITATION?
25    A    YES, IT DOES.
```

```
 1    Q    LET'S GO TO THE SIXTH ELEMENT OF CLAIM 19.

 2    WHAT DOES THIS ELEMENT REQUIRE?

 3    A    THIS ELEMENT DEALS WITH WHAT HAPPENS WHEN THE

 4    OBJECT OR FINGER IS RELEASED FROM THE SCREEN, IT'S

 5    NO LONGER DETECTED BY THE TOUCHSCREEN, AND THIS

 6    REQUIRES THAT WHEN THAT HAPPENS, THE DOCUMENT IS

 7    TRANSLATED IN A SECOND DIRECTION, IT'S MOVED IN A

 8    SECOND DIRECTION, SUCH THAT THE AREA BEYOND THE

 9    EDGE OF THE SCREEN PREVIOUSLY DISPLAYED IS NO

10    LONGER DISPLAYED.

11           AND FINALLY, IT DISPLAYS A FOURTH PORTION

12    OF THE ELECTRONIC DOCUMENT, AND THAT FOURTH PORTION

13    HAS TO BE DIFFERENT FROM THE ORIGINAL FIRST PORTION

14    THAT WE SAW AT THE START OF THIS SEQUENCE OF

15    VIDEOS.

16           AND FOR SAKE OF ILLUSTRATION, JUST TO

17    REMIND US, I'VE ASKED TO PUT UP THE FOURTH -- THE

18    FIRST PORTION AS A CALL OUT.  IF WE CAN HAVE THAT

19    ON THE SLIDE?

20           THAT IS THE ORIGINAL FIRST PORTION.  AS

21    YOU CAN SEE, IT'S DIFFERENT FROM THE FOURTH PORTION

22    THAT'S ENDED UP ON THE SCREEN AND OF THIS

23    INTERACTION.

24    Q    SO WE'VE BEEN LOOKING AT THESE ELEMENTS IN THE

25    CONTEXT OF THE GALLERY APPLICATION ON THE
```

```
 1    GALAXY S II, AT&T.  DOES THIS PHONE MEET THESE SAME
 2    REQUIREMENTS IN OTHER APPLICATIONS?
 3    A    YES, IT DOES.  THE GALAXY S II, AT&T, MEETS
 4    THE ELEMENTS OF CLAIM 19 OF THE '381 PATENT IN TWO
 5    OTHER APPLICATIONS, IN THE CONTACTS LIST AND THE
 6    INTERNET BROWSER APPLICATIONS.
 7    Q    LET'S TAKE A LOOK AT THOSE BRIEFLY.
 8              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
 9    OPEN COURT OFF THE RECORD.)
10              THE WITNESS:  SO ON THE LEFT YOU HAVE A
11    VIDEO OF THE CONTACTS LIST APPLICATION.  THIS IS
12    SIMPLY THE LIST OF PEOPLE YOU HAVE PHONE NUMBERS
13    AND SO FORTH FOR ON THE PHONE.
14              AND IF WE CAN PLAY THAT AGAIN, THE USER
15    IS DRAGGING THE LIST UPWARDS, AND WHEN THEY REACH
16    THE EDGE, IT'S HARD TO SEE, BUT YOU REACH THE EDGE,
17    IT'S BLACK ON THE BOTTOM, THE AREA BEYOND THE EDGE,
18    A BLACK AREA IS SHOWN.
19              WHEN THE USER LIFTS THEIR FINGER UP, IT
20    BOUNCES BACK.  IT'S THE EDGE OF THE PHOTOGRAPH,
21    JUST IN A DIFFERENT DIRECTION.
22    BY MR. JACOBS:
23    Q    AND HOW ABOUT IN THE BROWSER APPLICATION?
24    A    THE BROWSER APPLICATION SIMILARLY WORKS THE
25    SAME WAY.  YOU CAN DRAG IT BEYOND THE EDGE, IN THIS
```

1    CASE YOU'VE REACHED THE EDGE, AN AREA BEYOND THE

2    EDGE IS SHOWN, YOU RELEASE YOUR FINGER, IT BOUNCES

3    BACK, VERY MUCH LIKE THE GALLERY ACTUALLY.

4    Q    CLAIM 19 DISCUSSES INSTRUCTIONS THAT MAKE THIS

5    FEATURE WORK.  WHAT ARE INSTRUCTIONS IN THE CONTEXT

6    OF A SMARTPHONE OR A TABLET COMPUTER?

7    A    INSTRUCTIONS IN THE CONTEXT OF PHONES AND

8    TABLET COMPUTERS THAT WE'RE DISCUSSING HERE ARE

9    REALLY JUST COMPUTER CODE, COMPUTER PROGRAM

10   INSTRUCTIONS, AND THIS IS LINES OF CODE THAT'S IN

11   THE COMPUTER THAT EXECUTE ON THE PROCESSOR TO MAKE

12   THIS FUNCTIONALITY WORK.

13   Q    HOW DO YOU KNOW THAT THESE INSTRUCTIONS ARE

14   PRESENT ON THE GALAXY S II, AT&T?

15   A    AS I TESTIFIED EARLIER, I LOOKED AT THE

16   SAMSUNG PRODUCED CODE AND WHAT I'VE DONE IS I'VE

17   EXCERPTED JUST TWO SMALL PORTIONS TO ILLUSTRATE

18   SOME OF THE PERTINENT CODE FOR THE GALLERY AND FOR

19   THE BROWSER APPLICATIONS ON THE SCREEN.

20            IT'S NOT ON THE SCREEN YET.

21            MR. JACOBS:  SO, YOUR HONOR, WE'D LIKE TO

22   DISPLAY THIS FOR YOU, FOR OPPOSING COUNSEL, AND FOR

23   THE JURY AS IS REPRESENTATIVE OF THE CODE OF

24   SAMSUNG.

25            THE COURT:  OKAY.  GO AHEAD.

```
 1    BY MR. JACOBS:

 2    Q    SO WE'RE LOOKING AT 27.31, SIR, AND IS IT ON

 3    THE JURY'S SCREEN.

 4              NO, NOT ON THE PUBLIC SCREEN.

 5              THE COURT:  TAKE THAT DOWN, PLEASE.

 6              MR. JACOBS:  IS IT ON THE JURORS'

 7    SCREENS?  NO.

 8              THANK YOU MR. LEE.

 9    Q    SO DR. BALAKRISHNAN, CAN YOU SHOW US WHAT WE

10    ARE SEEING ON THIS, IN THIS SOURCE CODE?

11    A    SURE.

12    Q    CAN YOU TELL US WHAT WE'RE SEEING ON THE

13    SOURCE CODE?

14    A    ON THE LEFT-HAND SIDE IS THE SOURCE CODE FOR

15    THE GALLERY APPLICATION THAT WE'VE BEEN TALKING

16    ABOUT.  SO THIS IS A VERY SMALL SNIPPET OF THE

17    OVERALL CODE THAT RUNS.  WHAT I'VE DONE IS

18    ILLUSTRATE JUST A PORTION THAT SETS UP THE

19    PARAMETERS FOR DETERMINING WHAT HAPPENS AT THE EDGE

20    OF THE DOCUMENT.

21              SO IT LOOKS AT THE LEFT EXTENT OR THE

22    RIGHT EXTENT OR THE TOP OR BOTTOM.  THOSE ARE FOUR

23    EDGES OF THE DOCUMENT.  IF IT EXCEEDS THE THRESHOLD

24    OF THAT EDGE, IT MOVES THE DOCUMENT BY THE

25    APPROPRIATE AMOUNT SO YOU CAN SEE IT.
```

```
1     RELY ON THIS SLIDE?  THE ANSWER IS NO, I DID NOT
2     RELY ON THIS SLIDE TODAY.
3     BY MR. JOHNSON:
4     Q    BECAUSE THIS SLIDE IS INCORRECT; RIGHT?
5     A    I DIDN'T SAY THAT.  I SAID I DID NOT RELY ON
6     THIS SLIDE.
7     Q    I'M ASKING YOU, THIS SLIDE IS INCORRECT, ISN'T
8     IT?
9     A    I'M NOT SURE WHY IT WOULD BE INCORRECT.
10    Q    WELL, LET'S LOOK AT BOTH THE CONTACT LIST AND
11    THE BROWSER THAT APPEARS ON THIS SLIDE.
12              WE'RE TALKING ABOUT ELEMENT NUMBER 5.
13              LET'S START ON THE LEFT, THE CONTACT
14    LIST.  THIS YELLOW BOX HERE SHOWS THE AREA BEYOND
15    THE EDGE AS THIS YELLOW BOX AT THE BOTTOM OF THE
16    CONTACT LIST.
17              NOW, THAT CANNOT BE THE AREA BEYOND THE
18    EDGE BECAUSE THE USER HASN'T REACHED THE EDGE HERE;
19    CORRECT?
20    A    I'D HAVE TO LOOK AT THAT IMAGE VERY CLOSELY.
21    THERE MAY BE A MISTAKE IN THE IMAGE.
22    Q    WELL, THIS IS A SLIDE, AGAIN, THAT YOU
23    APPROVED AND YOU REVIEWED; RIGHT?
24    A    I DID NOT RELY UPON IT TODAY.
25    Q    I DIDN'T ASK YOU THAT, SIR.  I ASKED YOU, THIS
```

1780

```
 1   IS A SLIDE THAT YOU REVIEWED AND YOU APPROVED
 2   BEFORE IT WAS SENT OVER TO SAMSUNG AS PART OF YOUR
 3   DEMONSTRATIVE EXHIBITS?
 4   A    I REVIEWED MY SLIDES.  I'M NOT SURE AT WHAT
 5   POINT, WHAT VERSION WAS SENT OVER TO SAMSUNG, SO I
 6   JUST WANT TO MAKE THAT CLEAR, THAT THERE WERE MANY
 7   VERSIONS OF THESE SLIDES THAT I'VE WORKED ON IN THE
 8   LAST WEEK.
 9   Q    YOU WOULD AGREE WITH ME THAT THIS IS -- THIS
10   CANNOT BE THE AREA BEYOND THE EDGE FOR THE CONTACT
11   LIST OF THE SAMSUNG GALAXY S II; RIGHT?
12             MR. JACOBS:  YOUR HONOR, I'M SORRY.  I
13   HAVE TO INTERJECT.
14             WE'VE NOW HAD A CHANCE TO CHASE DOWN
15   WHAT'S GOING ON.  THIS IS A VIDEO, AND WHEN YOU
16   CONFLATE A VIDEO INTO A PDF, WHEN YOU PUT IT ALL
17   TOGETHER IN A SINGLE IMAGE, THIS IS HOW IT APPEARS.
18   BUT IT'S ACTUALLY A VIDEO.
19             MR. JOHNSON:  YOUR HONOR, THIS IS THE
20   SLIDE THAT WAS PROVIDED TO US BY APPLE AND I'M JUST
21   ASKING HIM QUESTIONS ABOUT IT, WHETHER HE AGREES IT
22   OR NOT.
23             THE COURT:  THE OBJECTION IS OVERRULED.
24             YOU'LL HAVE A CHANCE TO REDIRECT.
25             THE WITNESS:  SO IN THIS PARTICULAR IMAGE
```

3781

```
 1    ON THE LEFT-HAND SIDE, IT APPEARS THAT IT'S NOT YET

 2    BEYOND THE EDGE.

 3              BUT I BELIEVE THE VIDEO WOULD HAVE SHOWN

 4    THAT IT WENT BEYOND THE EDGE.

 5    BY MR. JOHNSON:

 6    Q    WHAT ABOUT ON THE RIGHT-HAND SIDE FOR THE

 7    BROWSER?  THAT'S -- WHAT'S DELINEATED HERE IN

 8    YELLOW IS SHOWN AS THE AREA BEYOND THE EDGE BUT, IN

 9    FACT, THAT IS NOT THE AREA BEYOND THE EDGE, IS IT?

10    A    IN THAT PARTICULAR IMAGE, THAT IS NOT THE AREA

11    BEYOND THE EDGE.  I DID NOT RELY ON THIS SLIDE.

12    Q    OKAY.  LET'S LOOK AT PDX 27-30.

13              THIS IS THE NEXT ELEMENT, ELEMENT 6 OF

14    CLAIM 19; RIGHT?

15    A    YES.

16    Q    OKAY.  AND FOR THIS, AGAIN, THIS REFERS TO THE

17    GALAXY S II FOR THE CONTACT LIST AND THE BROWSER

18    APPLICATIONS; RIGHT?

19    A    YES.

20    Q    AND LOOK AT THE FIGURE ON THE LEFT FOR CONTACT

21    LIST, AND DO YOU SEE IT SAYS IT'S LABELED THE

22    FOURTH PORTION, NO AREA BEYOND THE EDGE?

23    A    OKAY.  I BELIEVE THIS WAS A STILL FROM A

24    VIDEO.  THE IMAGE DOESN'T SHOW THE RIGHT THING.

25              AGAIN, I DID NOT RELY ON THIS SLIDE TODAY
```

```
1    THAT WAS SHOWN TO THE JURY.

2    Q    SORRY ABOUT THAT.  THIS IS INCORRECT; RIGHT?

3    A    THE IMAGE IS INCORRECT.

4    Q    AND THE IMAGE ON THE RIGHT-HAND SIDE UNDER THE

5    BROWSER APPLICATION IS ALSO INCORRECT, ISN'T IT?

6    A    IN THAT THAT IS NOT THE FULL PORTION.  THAT

7    STILL SHOWS AN AREA BEYOND THE EDGE.

8    Q    OKAY.  THANK YOU.

9         DO YOU KNOW, HOW MUCH IS APPLE CLAIMING

10   IN DAMAGES FOR INFRINGEMENT OF THIS PARTICULAR

11   PATENT?

12   A    I DON'T KNOW THE EXACT FIGURE.

13   Q    LET'S LOOK AT PDX 27.3, PLEASE.

14        NOW, FIRST, DR. BALAKRISHNAN, YOU WOULD

15   AGREE THAT NOT EVERY BOUNCE EFFECT ON A TOUCHSCREEN

16   IS COVERED BY THE '381 PATENT; RIGHT?

17   A    COULD YOU REPHRASE THE QUESTION?  I DON'T

18   UNDERSTAND.

19   Q    YEAH.  NOT EVERY BOUNCE EFFECT THAT YOU SEE ON

20   A TOUCHSCREEN IS COVERED BY THE '381 PATENT, IS IT?

21   A    IF THE BOUNCE EFFECT MEETS ALL OF THE

22   LIMITATIONS OF CLAIM 19, IT WOULD BE COVERED.

23   Q    BUT THERE ARE BOUNCE EFFECTS THAT DO NOT MEET

24   THE LIMITATIONS OF CLAIM 19; RIGHT?

25   A    CAN YOU GIVE ME AN EXAMPLE?
```

4783

```
1    Q    WELL, WHEN AN IMAGE BOUNCES BACK TO THE CENTER

2    BEFORE YOUR FINGER REACHES THE EDGE OF THE DISPLAY,

3    THAT'S NOT COVERED BY THE '381 PATENT; RIGHT?

4    A    IF IT HASN'T REACHED THE EDGE, IT IS NOT IN

5    RESPONSE TO THE EDGE AS THE CLAIMS REQUIRE, THEN

6    CLAIM 19 WOULD NOT BE INFRINGED.

7    Q    SO THERE ARE BOUNCE EFFECTS THAT DON'T

8    INFRINGE CLAIM 19; RIGHT?

9    A    I DON'T SEE AN EXAMPLE.  IF YOU PROVIDED A

10   HYPOTHETICAL -- ARE YOU SAYING IN THE SAMSUNG

11   DEVICES THERE'S A BOUNCE EFFECT THAT YOU WANT ME TO

12   LOOK AT THAT DOESN'T INFRINGE?

13   Q    I'M ASKING YOU MORE GENERALLY.  AREN'T THERE

14   BOUNCE EFFECTS THAT ARE NOT COVERED BY CLAIM 19?

15   A    JUST GENERALLY OUT THERE?

16   Q    YES.

17   A    SURE.  YOU CAN HAVE ALL KINDS OF THINGS THAT

18   BOUNCE THAT DON'T --

19   Q    ALL RIGHT.

20   A    THAT DON'T MEET THE ELEMENTS OF CLAIM 19.

21   Q    WELL, DURING YOUR DIRECT TESTIMONY, YOU SHOWED

22   27.3.  LET'S ACTUALLY GO TO 14, 27.14.  YOU SHOWED

23   27.14 AS A BASIS FOR INFRINGEMENT OF THE SAMSUNG

24   GALAXY S II; RIGHT?

25   A    I SHOWED A SLIDE SIMILAR TO THIS.  I'M NOT
```

```
 1    SURE OF THE EXACT SLIDE NUMBER, SO I JUST WANT TO

 2    MAKE SURE, BECAUSE YOU SEEM TO HAVE A DIFFERENT

 3    SLIDE FROM WHAT I SHOWED TODAY.

 4    Q    IS THIS ONE CORRECT?

 5    A    IT APPEARS CORRECT, BUT I -- I CAN'T SAY FOR

 6    SURE WHETHER IT'S THE EXACT SAME SLIDE NUMBER.

 7    Q    WELL, THE PORTION THAT'S SHOWN ON THE DISPLAY

 8    IS ONLY PART OF THE STICK FIGURE; RIGHT?

 9    A    IT LOOKS TO BE, YES.

10    Q    AND IN ALL OF THE EXAMPLES THAT YOU SHOWED IN

11    YOUR VIDEOS, EVEN THE ONES THAT HAD THE, THE

12    FOUR-BY-FOUR, THE USER MUST FIRST ZOOM IN ON THE

13    STICK FIGURE IN ORDER TO MEET THE LIMITATIONS OF

14    CLAIM 19 OF THE '381; RIGHT?

15    A    IN ALL OF THOSE, THE IMAGE WOULD HAVE TO BE

16    BIGGER THAN WOULD FIT ON THE SCREEN, YES.

17    Q    AND YOUR VIDEOS, AND EVEN YOUR DEMONSTRATIVE

18    HERE, LEAVES OUT THAT STEP OF WHERE THE USER FIRST

19    ZOOMS IN ON THE IMAGE TO GET THE ENLARGED IMAGE;

20    RIGHT?

21    A    IT DOESN'T -- YOU DON'T NEED TO SHOW THAT

22    BECAUSE CLAIM 19 DOESN'T REQUIRE THAT.

23    Q    CLAIM 19 DOESN'T REQUIRE A SET UP MOVE LIKE

24    THAT?

25    A    NO.
```

3785

```
 1    Q    I'M SORRY?

 2    A    NOT IN -- NOT EXACTLY, NO.  IT DIDN'T REQUIRE

 3    THAT.  YOU COULD HAVE IT, BUT IT'S NOT REQUIRED.

 4    Q    WELL, YOU HAVE ACCUSED THE GALAXY TAB 7.0 OF

 5    INFRINGEMENT; RIGHT?

 6    A    THAT IS CORRECT.

 7    Q    OKAY.  NOW, I'D LIKE TO SHOW YOU A VIDEO OF

 8    THE GALAXY TAB PRODUCT.

 9              LET'S PUT UP SLIDE 3918.101 PLEASE,

10    MR. FISHER.

11              AND YOU'VE SEEN THIS VIDEO BEFORE.  IT'S

12    A -- I'M GOING TO SHOW IT TO YOU, BUT IT'S FROM THE

13    JOHNSON REPORT.

14    A    MAYBE I COULD LOOK AT THE VIDEO FIRST.

15    Q    LET'S TAKE A LOOK AT IT.

16              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

17    OPEN COURT OFF THE RECORD.)

18    BY MR. JOHNSON:

19    Q    NOW, DR. BALAKRISHNAN, WHAT WE JUST SAW IN THE

20    SDX 3918.101, THAT DOESN'T INFRINGE THE '381

21    PATENT, DOES IT?

22    A    THAT FUNCTIONALITY -- IS MY MIKE ON?

23              THAT FUNCTIONALITY DOES NOT APPEAR TO

24    MEET THE CLAIMS, BUT --

25    Q    BECAUSE IT SHOWS --
```

```
1    A    -- I DON'T KNOW WHETHER THAT TABLET HAS THE

2    BOUNCE BACK FEATURE IN OTHER APPLICATIONS THAT ARE

3    NOT SHOWN ON THE SCREEN.

4    Q    THAT APPLICATION THAT WE JUST LOOKED AT SHOWS

5    SOMETHING WE CALLED HARD STOP; RIGHT?  THERE'S NO

6    BOUNCE THERE?

7    A    THAT PARTICULAR FUNCTIONALITY YOU JUST SHOWED

8    IS THE HARD STOP, YES.

9    Q    OKAY.  AND YOU ORIGINALLY ACCUSED THE BROWSER

10   FUNCTION OF THE TAB 7.0, WHAT WE JUST LOOKED AT, OF

11   INFRINGING THE '381 PATENT; RIGHT?

12   A    THAT IS CORRECT.

13   Q    BUT IT'S YOUR UNDERSTANDING THAT THE BROWSER

14   APPLICATION OF THE GALAXY TAB 7.0 DOES NOT INFRINGE

15   THE '381 PATENT BECAUSE IT DOESN'T BOUNCE BACK;

16   RIGHT?

17   A    NO, THAT'S NOT CORRECT.  THE GALAXY TAB 7.0

18   THAT I ACCUSED, IN THE VERSION I LOOKED AT, THE

19   VERSION I ANALYZED DOES DO THE BOUNCE BACK.

20   Q    I JUST -- I JUST ASKED YOU ABOUT THE BROWSER.

21   A    OKAY.

22   Q    SO THE BROWSER APPLICATION OF THE GALAXY TAB

23   7.0 THAT WE JUST LOOKED AT DOESN'T INFRINGE THE

24   '381 PATENT; RIGHT?

25   A    IN THAT PARTICULAR VERSION --
```

815

```
 1   FORMALLY ANNOUNCE, WE CALL DR. KARAN SINGH AS OUR

 2   NEXT WITNESS.

 3             THE COURT:  ALL RIGHT.  THE TIME IS NOW

 4   1:15.  GO AHEAD.

 5             THE CLERK:  WOULD YOU STATE YOUR NAME,

 6   PLEASE, AND SPELL IT?

 7             THE WITNESS:  KARAN SHER SINGH,

 8   K-A-R-A-N, S-H-E-R, AND MY LAST NAME IS S-I-N-G-H.

 9             THE COURT:  THANK YOU.

10                   DIRECT EXAMINATION

11   BY MR. JACOBS:

12   Q    DR. SINGH, WHAT DO YOU DO FOR A LIVING?

13   A    I'M A PROFESSOR OF COMPUTER SCIENCE AT THE

14   UNIVERSITY OF TORONTO.  I CODIRECT THE GRAPHICS AND

15   HUMAN/COMPUTER INTERACTION LAB.  I TEACH.  I DO

16   RESEARCH AND SUPERVISE GRADUATE STUDENTS.

17             I'M ALSO INVOLVED WITH A NUMBER OF

18   PRIVATE COMPANIES IN THE AREA OF GRAPHICS

19   INTERFACE.

20   Q    HOW LONG HAVE YOU BEEN A PROFESSOR, SIR?

21   A    TEN YEARS.

22   Q    WHERE DID YOU GO TO SCHOOL?

23   A    I HAVE A NUMBER OF COMPUTER SCIENCE DEGREES.

24   I HAVE A BACHELOR'S FROM THE INDIAN INSTITUTE OF

25   TECHNOLOGY IN '91, AND A MASTER'S AND A PH.D., BOTH
```

```
 1    FROM THE OHIO STATE UNIVERSITY IN '92 AND '95.

 2    Q     WHAT DID YOU DO BEFORE YOU BECAME A PROFESSOR?

 3    A     WELL, AFTER MY PH.D. IN '95, I JOINED A

 4    TORONTO COMPANY CALLED WAVEFRONT WHERE I HELPED

 5    DESIGN AN ANIMATION SYSTEM CALLED MAYA.

 6          LATER I WORKED IN CALIFORNIA AND I

 7    CONSTRUCTED A SYSTEM CALLED PARAFORM THAT CONVERTED

 8    PHYSICAL OBJECTS INTO DIGITAL MONITORS.

 9    Q     WERE MAYA AND PARAFORM, WERE THEY A SUCCESS?

10    A     WELL, MAYA HAS BEEN THE INDUSTRY STANDARD FOR

11    COMMERCIAL ANIMATION AND MOVIE SPECIAL EFFECTS FOR

12    THE PAST DECADE.

13          IT WON A TECHNICAL OSCAR FOR THIS IN

14    2003, AND PARAFORM ALSO RECEIVED AN ACADEMY AWARD

15    FOR TECHNOLOGY.

16    Q     YOU SAID A TECHNICAL OSCAR.  IS THIS AN

17    ACADEMY AWARD WITH THE OSCAR AND ALL THAT?

18    A     THAT IS CORRECT.

19    Q     NOW, DR. SINGH, WOULD YOU SAY YOU'RE FAMILIAR

20    WITH COMPUTER PROGRAMMING, AND IN PARTICULAR, WITH

21    HUMAN/COMPUTER INTERFACES AND COMPUTER GRAPHICS?

22    A     SURE.  FOR OVER 20 YEARS IT'S BEEN THE FOCUS

23    OF MY EDUCATION, MY COMMERCIAL WORK, MY RESEARCH

24    AND MY TEACHING.

25          MR. JACOBS:  ALL RIGHT.  YOUR HONOR, WE
```

1    TENDER DR. SINGH AS AN EXPERT IN COMPUTER

2    PROGRAMMING, HUMAN/COMPUTER INTERFACES, AND

3    COMPUTER GRAPHICS.

4              THE COURT:  ANY OBJECTION?

5              MR. DEFRANCO:  NO OBJECTION, YOUR HONOR.

6              THE COURT:  THANK YOU.

7    BY MR. JACOBS:

8    Q    DR. SINGH, LET'S DIVE INTO SOME PATENTS.

9              I'D LIKE TO TALK FIRST ABOUT THE '915

10   PATENT.  COULD YOU TURN TO JX 1044 IN YOUR BINDER,

11   PLEASE.

12             YOUR HONOR, WE WOULD OFFER 1044 INTO

13   EVIDENCE.

14             THE COURT:  OKAY.  ANY OBJECTION.

15             MR. DEFRANCO:  NO, YOUR HONOR.

16             THE COURT:  OKAY.  THAT'S ADMITTED.

17             (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

18             1044, HAVING BEEN PREVIOUSLY MARKED FOR

19             IDENTIFICATION, WAS ADMITTED INTO

20             EVIDENCE.)

21   BY MR. JACOBS:

22   Q    NOW, WHAT IS THE '915 PATENT, DR. SINGH?

23   A    THIS IS APPLE'S '915 PATENT WHICH YOU MIGHT

24   RECALL MR. FORSTALL IN HIS TESTIMONY DESCRIBED THE

25   CHALLENGE OF VIEWING AN IMAGE OF A BICYCLE THROUGH

```
 1     A WINDOW THE SIZE OF A POSTCARD AND HOW YOU MIGHT

 2     DIRECTLY REACH IN TO POSITION AND RESIZE THAT IMAGE

 3     WITH YOUR FINGERS.

 4              NOW, THE '915 PATENT DEALS EXACTLY WITH

 5     THAT PROBLEM AND GIVES YOU ACCESS TO THESE VARIOUS

 6     VIEW OPERATIONS IN A NATURAL AND FLUID MANNER.

 7     Q    LET'S TAKE A LOOK AT A DEMONSTRATION OF THIS

 8     ON THE IPHONE 4.  WE'RE LOOKING AT PDX 29.4, AND

 9     WHAT ARE WE SEEING HERE, DR. SINGH?

10     A    SO THE '915 PATENT SPECIFICALLY DRAWS A

11     DISTINCTION BETWEEN A VERY COMMONLY USED SCROLLING

12     OPERATION ON AN INTEGRATED TOUCHSCREEN DEVICE, LIKE

13     A SMARTPHONE OR A TABLET, AND ONCE IT MAKES THE

14     DISTINCTION BETWEEN THE COMMON SCROLLING OPERATION

15     AND A MORE GENERAL COMPLEX OPERATION, SUCH AS A

16     SCALE OR ROTATE, IT MAPS SINGLE FINGER INPUT TO, AS

17     WE'LL SEE OVER HERE, SINGLE FINGER INPUT TO

18     SCROLLING AND TWO OR MORE FINGERS TO THIS GENERAL

19     GESTURE TRANSFORMATION, SUCH AS SCALING, SO THAT

20     YOU CAN PERFORM BOTH OF THEM KIND OF

21     SATISFACTORILY, INTUITIVELY, AND AT THE SAME TIME

22     THEY ARE DISTINGUISHABLE FROM EACH OTHER.

23     Q    NOW, DID YOU STUDY WHETHER SAMSUNG HAS

24     INFRINGED CLAIM 8 OF APPLE'S '915 PATENT?

25     A    YES, I HAVE.
```

3819

```
1     Q     AND WHAT DID YOU CONCLUDE?

2     A     I CONCLUDED THAT 24 SAMSUNG PRODUCTS INFRINGE

3     CLAIM 8 OF THE '915 PATENT.

4     Q     AND HOW DID YOU REACH THAT CONCLUSION?

5     A     WELL, FOR STARTERS, I STUDIED THE PATENTS, OR

6     THE PATENT, ITS PROSECUTION HISTORY TO FULLY

7     UNDERSTAND THE CLAIMED INVENTION.

8            AND THEN I PERSONALLY TESTED EACH OF

9     THESE 24 PRODUCTS TO OBSERVE THAT THEY, INDEED,

10    PERFORM THE FUNCTIONALITY THAT'S DESCRIBED BY CLAIM

11    8 OF THE '915.

12    Q     DID YOU DO ANYTHING ELSE?

13    A     SURE.  I ALSO REVIEWED ALL THE SOURCE CODE

14    THAT SAMSUNG MADE AVAILABLE IN THIS LITIGATION --

15    Q     SO LET'S LOOK --

16    A     SORRY.  -- THAT WAS RELEVANT TO THE '915

17    PATENT.

18    Q     SO LET'S LOOK AT THE SAMSUNG DEVICE.  AND YOU

19    HAVE UP HERE THE SAMSUNG GALAXY S II, T-MOBILE.

20    AND WHAT DOES THIS DEVICE -- WHAT BEHAVIOR DOES

21    THIS DEVICE DEMONSTRATE THAT IS RELEVANT TO THIS

22    CLAIM IN THE '915 PATENT, CLAIM 8?

23    A     WELL, AS YOU SEE IN THIS VIDEO, VERY MUCH

24    ALONG THE LINES OF WHAT YOU SAW WITH THE APPLE

25    IPHONE, A SINGLE FINGER IS USED IN THE WEB BROWSER
```

3820

```
 1    PROGRAM TO SCROLL THE CONTENT ON THE SCREEN.
 2              AND SUBSEQUENTLY, YOU WILL NOW SEE TWO
 3    FINGERS BEING USED TO SCALE THE, THE CONTENT, THE
 4    VIEW, AND THE SCALE IS AN EXAMPLE OF A GESTURE
 5    TRANSFORM.
 6              AND WHAT YOU'VE JUST SEEN DESCRIBES, IN
 7    EFFECT, THE CLAIM LANGUAGE OF THE CLAIM 8 OF THE
 8    '915.
 9    Q    WELL, LET'S GO TO THAT.  LET'S TURN TO THE
10    CLAIM LANGUAGE OF THE -- OF CLAIM 8 OF THE '915
11    PATENT.  AND CAN YOU WALK US THROUGH YOUR ANALYSIS
12    OF THAT CLAIM LANGUAGE AGAINST THE SAMSUNG DEVICE?
13    A    SURE.  SO THE FIRST PIECE OF LANGUAGE THAT IS
14    THE PREAMBLE OF THE CLAIM OVER HERE ESSENTIALLY IS
15    DESCRIBING A COMPUTING DEVICE, SUCH AS -- AN
16    EXAMPLE OF WHICH IS A SMARTPHONE OR A TABLET.  IT'S
17    A MACHINE READABLE STORAGE MEDIUM, IT HAS PROGRAMS,
18    AND THESE PROGRAMS DO THINGS.
19              SO THAT'S, THAT'S WHAT THE FIRST PART
20    DESCRIBES.
21    Q    LET'S GO TO THE NEXT SLIDE, SIR, AND LOOK AT
22    THE FIRST TWO ELEMENTS OF THE CLAIM.
23              WHAT DO THEY REQUIRE?
24    A    SO THE, THE FIRST ELEMENT, ELEMENT A, THE
25    OPERATIVE WORDS THERE ARE THAT THE DEVICE RECEIVES
```

```
 1    USER INPUT.

 2              YOU'VE JUST SEEN AN EXAMPLE OF A VIDEO OF

 3    THE DEVICE PERFORMING THIS FUNCTIONALITY.  SO IT'S

 4    CLEARLY RECEIVING AND RESPONDING TO THAT INPUT.

 5              THE USER INPUT IS IN THE FORM OF ONE OR

 6    MORE INPUT POINTS, AND IT IS APPLIED TO A TOUCH

 7    SENSITIVE DISPLAY.

 8              AND WE'VE SEEN THAT WITH THE SAMSUNG

 9    DEVICES.  TABLETS AND SMARTPHONES ARE, IN FACT,

10    TOUCH SENSITIVE DISPLAYS THAT ARE INTEGRATED.  THE

11    TOUCH SURFACE IS INTEGRATED TO THE SCREEN AND

12    FURTHER INTEGRATED WITH THE ACTUAL COMPUTING

13    DEVICE.

14              SO THAT, THAT MEETS THE CLAIM ELEMENT A.

15              CLAIM ELEMENT B ACTUALLY REQUIRES A PEEK

16    INTO THE SAMSUNG SOURCE CODE, AND I'LL WALK YOU

17    THROUGH THIS.

18              SO HERE WE SEE THE EXAMPLE RESULTING FROM

19    CLAIM ELEMENT A WHERE, AS I'VE ALREADY DESCRIBED,

20    USER INPUT IS, IS RECEIVED IN RESPONSE TO THIS USER

21    INPUT WITHIN SAMSUNG CODE, AND WHAT YOU SEE --

22    Q    OKAY.  CAN WE HAVE IT ON THE JURORS' SCREEN

23    AND THE COURT'S SCREEN AND OPPOSING COUNSEL?

24              GREAT.

25    A    SO WHAT YOU SEE ON THIS SLIDE IS ESSENTIALLY,
```

3822

```
 1   IT'S AN EXCERPT FROM SAMSUNG'S SOURCE CODE THAT
 2   GETS CALLED WHEN THE USER PROVIDES INPUT ON THE
 3   SCREEN.
 4            AND WITHIN THIS FUNCTION, THAT
 5   INFORMATION IS ENCAPSULATED, IT, IT CREATES -- IT
 6   IS USED TO CREATE WHAT'S KNOWN AS A MOTION EVENT
 7   OBJECT, AND THIS MOTION EVENT OBJECT IS WHAT IS
 8   BEING REFERRED TO AS AN EVENT OBJECT IN CLAIM B.
 9            TO GIVE YOU SOME MORE SENSE OF WHAT THIS
10   MOTION EVENT OBJECT ACTUALLY IS, JUST BELOW THE
11   MOTION EVENT OBJECT, YOU SEE ANDROID DOCUMENTATION
12   DESCRIBING THE MOTION EVENT OBJECT, AND THE
13   DOCUMENTATION GOES ON TO SAY THAT THE MOTION EVENT
14   OBJECT REPORTS ON MOVEMENTS AND MOVEMENT EVENTS AND
15   IT HOLDS MOVEMENT DATA REGARDING FINGERS AND PENS
16   AND OTHER FORMS OF INPUT, THE LOCATIONS, THE TIMES
17   OF THE INPUT AND SO ON.
18   Q    AND SO DO YOU FIND ELEMENTS A AND B MET IN THE
19   SAMSUNG DEVICES AND CODE THAT YOU EXAMINED,
20   DR. SINGH?
21   A    YES, I DO.
22   Q    LET'S GO ON TO THE NEXT ELEMENTS OF THE CLAIM.
23   A    SO --
24   Q    SORRY.  LET ME JUST INTRODUCE -- WE'RE LOOKING
25   AT 29.12, AND BOTH 29.11 AND .12 ARE BEING SEEN
```

3823

```
1    ONLY BY THE JURY AND THE COURT AND OPPOSING
2    COUNSEL.
3    A    OKAY.  SO THESE ELEMENTS, AGAIN, ARE -- SORT
4    OF DESCRIBE IN SOME SENSE WHAT'S HAPPENING BELOW IN
5    THE, IN THE SAMSUNG CODE.
6             AND THE OPERATIVE WORDS IN THE BIG ONE
7    ARE DETERMINING WHETHER THE EVENT OBJECT INVOKES A
8    SCROLLING OPERATION, WHICH I'VE DESCRIBED BEFORE,
9    WHICH IS MOVING CONTENT, OR THE SMALL COMPLEX
10   GESTURE OPERATION, SUCH AS SCALING, BY
11   DISTINGUISHING BETWEEN WHETHER A SINGLE INPUT POINT
12   IS APPLIED TO THE SCREEN OR TWO OR MORE INPUTS, IN
13   WHICH CASE A GESTURE OPERATION IS MADE.
14            SO TO UNDERSTAND THIS -- TO UNDERSTAND
15   THIS ELEMENT, WHAT YOU SEE BELOW IS A SCHEMATIC.
16   IT'S, IT'S JUST A SCHEMATIC SHOWING THE SAMSUNG
17   SMARTPHONE AND TAB PHONE.
18            AGAIN, WHAT YOU SEE OVER THERE ARE
19   EXCERPTS TAKEN FROM THE SAMSUNG SOURCE CODE AND
20   LAID OUT JUST TO MAKE THINGS VERY CLEAR.
21            AND UPON RECEIVING INPUT, THERE IS A --
22   THERE'S A FUNCTION IN THE WEB VIEW.  THE WEB VIEW
23   IS THE BROWSER PROGRAM, THE INTERNET BROWSER
24   PROGRAM ON THE SAMSUNG DEVICE.
25            WEB VIEW HAS A FUNCTION CALLED ON TOUCH
```

3824

```
1    EVENT, SO WHENEVER THERE'S A TOUCH, YOU GO INTO
2    THAT CODE.
3              WHEN YOU GO INTO THAT CODE, THAT CODE IS
4    CALLED AND CAUSED BY THIS MOTION EVENT OBJECT THAT
5    IS BEING PASSED INTO THIS PIECE OF CODE AND IT'S --
6    IT'S SENT INTO THIS CODE AS A PARAMETER.
7              I'VE KIND OF ILLUSTRATED IT ON TOP JUST
8    SO YOU CAN CLEARLY SEE THE FLOW THAT IS TAKING
9    PLACE IN THE CODE.
10             AND THERE'S A VERY IMPORTANT LINE IN THIS
11   CODE WHERE A SIMPLE TEST IS MADE.  THE MOTION EVENT
12   OBJECT HAS A POINTER COUNT.  THE POINTER COUNT
13   TELLS YOU WHETHER ONE INPUT IS ONE INPUT TOUCH, TWO
14   INPUT TOUCHES, OR MORE.
15             SO ALL YOU'RE DOING OVER HERE IS MAKING
16   THIS QUINTESSENTIAL TEST, AND THEN BASED ON THE
17   TEST, WHEN A SINGLE INPUT TOUCH IS ON THE SCREEN,
18   YOU GO DOWN A ONE FINGER PART, THAT RESULTS IN A
19   SCROLL OPERATION.
20             SO THAT TAKES YOU TO THIS CLAIM ELEMENT C
21   WHERE YOU'RE DISTINGUISHING AND YOU'RE GOING DOWN
22   THIS SCROLL BAR, AND I'LL GO ONE STEP FURTHER INTO
23   CLAIM ELEMENT D, WHICH SAYS ISSUES AT LEAST A
24   SCROLL CALL OR A GESTURE CALL, DEPENDING ON WHICH
25   PART YOU GO DOWN, AND A SCROLL CALL, AN EXAMPLE OF
```

1    A SCROLL CALL IN THIS CASE IS A METHOD THAT SAYS DO

2    DRAG, WHICH SAYS I'M DRAGGING NOW, AND WHAT DO I

3    DO?  THAT'S IF YOU GO DOWN THE SCROLL CALL.

4            VERY SIMILARLY, IF YOU GO DOWN THE

5    GESTURE PART, WHICH IS TWO OR MORE FINGERS, YOU GO

6    DOWN IN THE CODE AND YOU PERFORM A GESTURE

7    OPERATION WHICH RESULTS IN A GESTURE CALL BEING

8    MADE.

9            IN THIS EXAMPLE, THE GESTURE CALL IS A

10   THE TOUCH EVENT OF A SCALE GESTURE, SOMETHING THAT

11   RESULTS IN THE SCALE OPERATION.

12           SO WHAT WE'VE JUST SEEN OVER HERE IS A

13   RUN THROUGH THROUGH THE SAMSUNG SOURCE CODE TO GIVE

14   YOU A SENSE OF TWO IMPORTANT THINGS.

15           ONE, THAT THE MOTION EVENT OBJECT CAUSES

16   A VERY IMPORTANT TEST TO BE MADE, ONE FINGER OR TWO

17   OR MORE FINGERS; AND THEN BASED ON THAT TEST,

18   THERE'S A FORK IN THE CODE AND YOU EITHER GO DOWN A

19   SCROLL BOX WHERE A SCROLL CALL IS MADE AND A SCROLL

20   OPERATION RESULTS, OR DOWN THE GESTURE PART AND A

21   GESTURE CALL IS MADE AND A GESTURE RESULTS.

22           SO THAT'S THESE TWO ELEMENTS.

23   Q    NOW, WHICH DEVICES DOES THIS ANALYSIS THAT YOU

24   JUST PROVIDED APPLY TO?

25   A    IT APPLIES -- THIS SPECIFIC SCHEMATIC APPLIES

3826

```
 1    TO 23 OF THE 24 ACCUSED DEVICES.

 2              THE SAMSUNG GALAXY TAB 10.1 ALSO

 3    INFRINGES THIS CLAIM, BUT FOR THE PURPOSES OF

 4    CLAIM -- FOR ELEMENTS C AND D, IT'S STRUCTURED A

 5    LITTLE BIT DIFFERENTLY.

 6    Q    DO YOU WANT TO JUST SPEND A MINUTE EXPLAINING

 7    THAT WITH 29.14?

 8    A    SURE.  SO AS YOU CAN SEE ON THIS SLIDE, THE

 9    SCHEMATIC OF THE SOURCE CODE, IT'S VIRTUALLY --

10    IT'S VERY SIMILAR.  AND FOR THE PURPOSES OF THESE

11    CLAIMS, IT'S ACTUALLY IDENTICAL.

12              YOU STILL HAVE THE MOTION EVENT OBJECT

13    CAUSING THIS ALL-IMPORTANT TEST OF ONE FINGER INPUT

14    OR TWO OR MORE FINGERS WITH INPUTS, SO YOU STILL

15    HAVE THE LOGICAL TEST.

16              YOU STILL HAVE THE BRANCHING TAKING PLACE

17    IN THE CODE, AND GOING DOWN THE SCROLL PART RESULTS

18    IN A SCROLL CALL.  EVENTUALLY IT RESULTS IN A

19    SCROLL OPERATION.

20              GOING DOWN THE GESTURE BOX ESSENTIALLY

21    RESULTS IN A GESTURE CALL AND THEN THE

22    CORRESPONDING GESTURE OPERATION.

23              THIS LOGIC THAT YOU SEE ACTUALLY ALLOWS

24    THE GALAXY TAB 10.1 TO PERFORM WHAT YOU CAN THINK

25    OF AS A MORE COMPLEX GESTURE TRANSFORM WHERE IT
```

27

1    SIMULTANEOUSLY SCALES AND TRANSLATES THE VIEW.

2            IF YOU GO BACK TO THAT PICTURE OF A

3    BICYCLE AND IMAGINE YOUR FINGERS ARE DOWN ON THE

4    WHEELS OF THE BICYCLE AND NOW YOU'RE GOING TO START

5    TO MOVE YOUR FINGERS AROUND, MOVING -- SPREADING

6    THEM APART WILL SCALE THE BICYCLE.

7            BUT YOU ALSO WANT TO MOVE IT SO THAT YOUR

8    FINGERS REMAIN ON TO THE BICYCLE.  IF YOU DON'T

9    MOVE WITH IT, SIMULTANEOUSLY, ALL OF A SUDDEN YOUR

10   BICYCLE IS OFF IN SPACE AND IT'S BIGGER, BUT IT

11   DOESN'T HAVE THAT DIRECT FEEL.

12           AND THAT DIRECT FEEL IS WHAT THE APPLE

13   PRODUCTS PROVIDE.

14           OF THE 24 INFRINGING DEVICES, ONLY THE --

15   OVER HERE WITH THIS CODE, ONLY THE SAMSUNG GALAXY

16   TAB 10.1 KIND OF PROVIDES THIS, THIS -- IT MAKES IT

17   MORE LIKE THE APPLE PRODUCTS.

18   Q    OKAY.  LET'S MARCH THROUGH THE REST OF THE

19   CLAIM LIMITATIONS.

20   A    UM --

21   Q    WE'RE LOOKING AT 29.16.

22   A    SO CLAIM ELEMENT E, ONCE -- NOW THAT WE'VE

23   SPENT, WE'VE BEEN THROUGH THE SLIGHTLY MORE

24   DIFFICULT PART IN THE SAMSUNG CODE, THIS IS -- THIS

25   IS A LOT SIMPLER.

3828

```
 1            YOU'VE ALREADY SEEN THIS VIDEO OF THE
 2     SAMSUNG GALAXY S II.  IF YOU CAN PLAY THIS VIDEO
 3     AGAIN, YOU WILL SEE THAT, IN FACT, IN RESPONSE TO
 4     THAT ONE FINGER INPUT, ONCE YOU'VE GONE DOWN THAT
 5     SCROLL PART, CLEARLY A SCROLL CALL HAS BEEN MADE
 6     AND THAT SCROLL CALL, EVENTUALLY IT RESULTS IN
 7     SCROLLING THE WINDOW, HAVING A VIEW ASSOCIATED WITH
 8     THE EVENT OBJECT.
 9            I'D JUST LIKE TO CLARIFY WHAT WE MEAN BY
10     A VIEW ASSOCIATED WITH THE EVENT OBJECT.
11            THE EVENT OBJECT WAS THE MOTION EVENT
12     OBJECT THAT WE SAW IN THE LAST COUPLE OF SLIDES,
13     AND THE VIEW WAS THE WEB VIEW, WEB VIEW FROM WHICH
14     THE PROGRAM THAT RUNS THE -- THAT IS THE BROWSER
15     THAT WE ARE SEEING THIS FUNCTIONALITY BEING
16     PERFORMED IN.
17            SO THAT ESSENTIALLY EXPLAINS ELEMENT E.
18     Q   GREAT.  LET'S GO TO ELEMENT F.
19            WHAT DOES IT REQUIRE?
20     A   ELEMENT F IS, IS ACTUALLY VERY ANALOGOUS TO
21     ELEMENT E.  ELEMENT E DESCRIBES WHAT HAPPENS WHEN
22     YOU GO DOWN THE SCROLL BAR.
23            ELEMENT F SIMPLY TELLS YOU WHAT HAPPENS
24     IF YOU GO DOWN THE GESTURE BAR.  SO IF YOU PLAY
25     THIS VIDEO, YOU NOTICE AGAIN OVER HERE, BASED ON
```

29

```
1    TWO FINGER INPUT, A GESTURE CALL IS MADE AND THAT

2    IS RESULTING IN SCALING THE VIEW ASSOCIATED WITH

3    THE OBJECT.

4    Q    DR. SINGH, CAN YOU SHOW THE JURY -- I'M SORRY.

5    LET'S GO TO THE NEXT SLIDE.

6              DR. SINGH, ARE EACH ELEMENTS -- ARE EACH

7    OF THE ELEMENTS OF CLAIM 8 MET BY THE SAMSUNG

8    DEVICES THAT YOU HAVE DETERMINED INFRINGE?

9    A    YES, THEY HAVE.  WE'VE JUST BEEN THROUGH ALL

10   THE ELEMENTS IN SEQUENCE, AND INDEED, ALL THE

11   DEVICES ACTUALLY MEET THESE CLAIM ELEMENTS.

12   Q    OKAY.  NOW LET'S SHOW THE JURY THE DEVICES,

13   AND CAN YOU SHOW ALL 24 OF THESE AS THEY

14   DEMONSTRATE THE INFRINGING BEHAVIOR?

15   A    SURE.  WE'LL START WITH THE GALAXY S II, AT&T,

16   THE GALAXY S II, T-MOBILE, THE GALAXY S II I9100,

17   AND THE GALAXY T 4G.

18              YOU JUST NOTICED THE ONE FINGER SCROLL

19   FOLLOWED BY A TWO FINGER SCALE GESTURE OPERATION.

20   Q    AND THAT WAS 29.20?

21   A    HERE WE SEE ANOTHER SET OF SIX DEVICES, THE

22   ACE, THE CAPTIVATE, THE CONTINUUM, THE DROID

23   CHARGE, THE EPIC 4G, AND THE EXHIBIT 4G.

24              ONCE AGAIN, ONE FINGER, SCROLL; TWO

25   FINGERS, STAY OR GESTURE.
```

1    SHOULD STRUCTURE AND DISPLAY THE CONTENT, THE

2    STORIES, THE HEADLINES, THE IMAGES ON THE SCREEN.

3    Q    LET'S LOOK AT THE NEXT ELEMENT, ELEMENT F ON

4    PDX 29.34.

5    A    OKAY.  SO THESE TWO CLAIM ELEMENTS ARE SORT

6    OF -- THEY SORT OF REQUIRE AN UNDERSTANDING OF WHAT

7    WE SEE ON THE SCREEN, AND PERHAPS WHAT THE PROGRAM

8    SEES.

9              SO I'LL TRY AND EXPLAIN THIS IN A WAY

10   THAT HOPEFULLY WILL BE UNDERSTANDABLE.

11             IN CLAIM ELEMENT F, WE SEE INSTRUCTIONS

12   FOR DETECTING A FIRST GESTURE AT A LOCATION OF THE

13   DISPLAYED PORTION OF THE ELECTRONIC DOCUMENT.

14             SO THAT ONE IS EASY.  DETECTING A FIRST

15   GESTURE, CLEARLY WE SAW IN THE VIDEO A GESTURE IS

16   MADE.  BASED ON THAT GESTURE, THE DEVICE RESPONDS,

17   SO THAT GESTURE IS, IS BEING DETECTED.

18             ON THE -- AND THEN BASED ON THAT,

19   INSTRUCTIONS FOR DETERMINING A FIRST BOX AMONG THE

20   PLURALITY OF BOXES.  THAT'S SORT OF ELEMENT G.

21             SO WHAT YOU SEE ON THE LEFT-HAND SIDE ARE

22   A NUMBER OF BOXES.  I'VE SORT OF LABELED THEM

23   SCHEMATICALLY 1 THROUGH 9.

24             BOX 6 IS PARTICULARLY INTERESTING, AND

25   WHAT YOU SEE ON THE RIGHT-HAND SIDE IS SORT OF A

```
1     TREE STRUCTURE THAT THE SAMSUNG CODE PRODUCES THAT

2     IS REPRESENTATIVE OF WHAT YOU SEE ON THE SCREEN.

3               SO NOW WHEN --

4               THE COURT:  I'M SORRY.

5               DOES ANYONE NEED ANY CAFFEINE?  I'M MORE

6     THAN HAPPY IF YOU WANT TO TAKE A LITTLE MINUTE

7     BREAK OR TWO.  WOULD THAT BE GOOD NOW?  OR IF YOU

8     WOULD LIKE TO BRING A CAFFEINATED DRINK IN, THAT'S

9     FINE, TOO.  WOULD YOU LIKE TO DO THAT?  WE CAN TAKE

10    A COUPLE MINUTE BREAK TO DO THAT.

11              NO?  IS EVERYBODY OKAY?

12              ALL RIGHT.  GO AHEAD.

13              THE WITNESS:  WHEN A GESTURE IS MADE

14    WITHIN THE SAMSUNG CODE, A DOUBLE TAP FUNCTION IS

15    CALLED WHEN YOU TAP ON THERE.

16              AND THEN ONCE YOU DO THAT WITHIN THE

17    CODE, YOU WILL SEE THAT IT USES THE LOCATION OF

18    THAT TAP TO ESSENTIALLY TRAVERSE DOWN THIS TREE

19    STRUCTURE AND FIND WHICH BOX IN THAT TREE STRUCTURE

20    CORRESPONDED TO THE LOCATION.  IN THIS CASE, IT

21    HAPPENS TO BE BOX 6.

22              SO THAT TAKES CARE OF ELEMENTS F AND G.

23    BY MR. JACOBS:

24    Q    BECAUSE WHAT YOU HAVE JUST ILLUSTRATED IS

25    INSTRUCTIONS FOR DOING WHAT?
```

3839

```
 1    A    IT'S INSTRUCTIONS FOR DETECTING THIS GESTURE

 2    AND, BASED ON THE LOCATION OF THAT GESTURE,

 3    ACTUALLY DETERMINING A BOX, A FIRST BOX THAT IS

 4    PART OF THIS STRUCTURED ELECTRONIC DOCUMENT.

 5    Q    OKAY.  LET'S GO TO THE NEXT ELEMENT OF CLAIM

 6    50.

 7         THE COURT:  OKAY.  WHAT WAS THE NUMBER OF

 8    THAT ONE?

 9         MR. JACOBS:  THAT ONE WAS 29.36.

10         THE COURT:  OKAY.  THANK YOU.

11    BY MR. JACOBS:

12    Q    AND NOW WE'RE ON 29.37.

13    A    SO ELEMENT H SORT OF BRINGS US BACK OUT OF

14    THE, OUT OF THE NITTY GRITTY OF THE SAMSUNG SOURCE

15    CODE AND HERE AGAIN WE'RE LOOKING AT THE DEVICE.

16         IF YOU PLAY THIS VIDEO, YOU'VE ALREADY

17    SEEN THIS VIDEO BEFORE WHERE, UPON RECEIVING THAT,

18    THAT FIRST GESTURE AND DETERMINING THE BOX, YOU CAN

19    SEE THAT THAT INFORMATION IS BEING USED TO ENLARGE

20    THE ENTIRE DOCUMENT AND THEN MOVE IT SUCH THAT THE

21    BOX IS ENLARGED AND SUBSTANTIALLY CENTERED ON THE

22    DISPLAY.

23    Q    AND JUST TO REMIND US, THIS IS A VIDEO OF

24    THE --

25    A    THIS IS A VIDEO OF THE SAMSUNG GALAXY S II,
```

840

```
1    T-MOBILE, THAT WE'VE SEEN ONCE BEFORE.
2    Q    NOW LET'S GO TO THE NEXT ELEMENT, THE NEXT TWO
3    ELEMENTS, I AND J.
4    A    SO ELEMENTS I AND J ESSENTIALLY RELATE TO THE
5    SECOND GESTURE.  SO ONCE YOU HAVE PERFORMED WHAT
6    YOU JUST SAW, YOU CAN SEE THAT THE FIRST BOX IS
7    STILL ENLARGED, AND YOU WILL SEE IN THE VIDEO
8    DETECTING A SECOND GESTURE ON A SECOND BOX, AND YOU
9    CAN SEE THAT THE SECOND BOX IS DISTINCT FROM THE
10   FIRST BOX.
11         AND THEN THE INSTRUCTIONS IN RESPONSE TO
12   THAT GESTURE ESSENTIALLY TRANSLATE THE DOCUMENT SO
13   THAT NOW THE SECOND BOX IS SUBSTANTIALLY CENTERED
14   ON THE WEB SCREEN DISPLAY.
15   Q    AND THAT'S PDX 29.39.
16         SO HAVE YOU NOW GONE THROUGH ALL OF THE
17   ELEMENTS, ALL OF THE LIMITATIONS OF CLAIM 50 OF THE
18   '163 PATENT, SIR?
19   A    YES, I HAVE.
20   Q    AND YOU FIND THEM -- DO YOU FIND THEM PRESENT
21   IN THE SAMSUNG DEVICES YOU'RE ABOUT TO ENUMERATE?
22   A    YES, I DO, AND I HAVE.
23   Q    OKAY.  LET'S LOOK AT THE DEVICES.
24   A    OKAY.
25   Q    THIS IS 29.41.
```

```
1    A    WE SEE THE GALAXY S II, AT&T.  YOU JUST SAW

2    THE FIRST GESTURE AND NOW THE SECOND GESTURE.

3              THE GALAXY S II, T-MOBILE, WHICH IS A

4    VIDEO THAT WE'VE ALREADY SEEN.

5              THE GALAXY S II I9100, SECOND GESTURE.

6              GALAXY S II 4G, FIRST GESTURE, AND NOW

7    THE SECOND GESTURE.

8              OKAY.  HERE IS A SET OF SIX OTHER

9    DEVICES, THE ACE, THE CAPTIVATE, THE CONTINUUM, THE

10   DROID CHARGE, THE EPIC 4G, AND THE EXHIBIT 4G.

11             MAYBE THAT RAN BY A LITTLE QUICKLY.

12   PERHAPS WE CAN PLAY THAT ONE AGAIN.

13             (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

14   OPEN COURT OFF THE RECORD.)

15   BY MR. JACOBS:

16   Q    AND WE'RE UP TO 29.42.

17   A    ANOTHER SIX DEVICES, THE FASCINATE, THE

18   GALAXY S I9000, THE GEM, THE INDULGE, THE

19   INFUSE 4G, AND INTERCEPT.

20   Q    THAT'S 29.43.

21   A    THE MESMERIZE, NEXUS S 4G, PREVAIL, REPLENISH,

22   TRANSFORM, AND VIBRANT.

23   Q    THAT'S PDX 29.44.

24   A    AND THEN FINALLY THE TABLETS, THE GALAXY TAB

25   7.0, THERE YOU SEE THE FIRST GESTURE, AND THE
```

3842

```
 1    SECOND GESTURE.
 2              AND THE GALAXY TAB 10.1.
 3              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
 4    OPEN COURT OFF THE RECORD.)
 5    BY MR. JACOBS:
 6    Q    AND THAT'S 29.45.
 7              YOUR HONOR, THE DEMONSTRATIVES -- SORRY.
 8              THE VIDEOS THAT WE'VE SHOWN PREPARED
 9    UNDER DR. SINGH'S DIRECTION WE WOULD OFFER INTO
10    EVIDENCE.
11              THE COURT:  AND WHICH ONES?  THERE HAVE
12    BEEN QUITE A FEW VIDEOS.
13              MR. JACOBS:  YES.
14              THE COURT:  WHY DON'T YOU GO THROUGH THE
15    NUMBERS, PLEASE?
16              MR. JACOBS:  29.4, 29.5, 29.6, 29.10;
17    THEN THREE THAT WOULD BE UNDER SEAL, 29.12, .13,
18    .14; 29.16, 29.18, 29.20, .21, .22, .23, .24, .25,
19    THEN 29.26, .27, .28, .32, .34, .35; THE NEXT ONE
20    WOULD BE SEALED, THAT WOULD BE 29.36, .37, .39,
21    29.41, .42, .43, .44, AND .45.
22              THE COURT:  I DIDN'T SEE ON THE SCREEN
23    29.23, 29.25, 29.35.  I WAS MOSTLY CATCHING EVEN
24    NUMBERS.
25              MR. JACOBS:  LET'S TAKE A QUICK LOOK.
```

3843

```
1              THE COURT:  ARE THOSE PART --
2              MR. JACOBS:  29.23, MR. LEE.
3              THE COURT:  IS THAT -- ALL RIGHT.
4              MR. JACOBS:  '915 INFRINGING SMARTPHONES.
5              WHAT WAS THE NEXT ONE, YOUR HONOR?
6              THE COURT:  FOR THE SEALED, I HAD 29.11,
7       29.12, AND 29.13.  IT COULD BE THESE ARE
8       INTERMEDIARY ONES THAT I DIDN'T CATCH.
9              MR. JACOBS:  SO .12 IS THE FIRST ONE, .13
10      IS THE NEXT ONE, AND .14, THOSE ARE ALL THE SOURCE
11      CODE.  OH, YES.
12             THE COURT:  OKAY.  29.11, .12, .13, .14.
13             MR. JACOBS:  11 DOESN'T NEED TO BE UNDER
14      SEAL.  ACTUALLY, I DIDN'T LIST -- LET'S GO BACK TO
15      11.  THAT'S JUST THE CLAIM LANGUAGE, YOUR HONOR.
16      WE DON'T NEED THAT IN.
17             THE COURT:  OKAY.  SO THAT'S 29.11 IS NOT
18      COMING IN.
19             MR. JACOBS:  CORRECT.
20             THE COURT:  SO .12, .13, .14, .16, .18,
21      .20, .21, .22, .23, .24, .25, AND THEN 29.26, .27,
22      .28, .30, .32, .34, .35, .36.  IS THAT RIGHT?
23             MR. JACOBS:  .32, .34, .35, .36 IS
24      SEALED.
25             THE COURT:  YES.
```

```
1    YOU'RE TALKING ABOUT, BUT YES.

2    Q    WELL, I SAW ON THE WEB A LIST OF ABOUT 15

3    PEOPLE THAT WERE ASSOCIATED WITH THE WORK THAT WENT

4    INTO THE OSCAR THAT WAS OBTAINED.

5    A    PERHAPS.

6    Q    AND MY POINT IS, I JUST NEED TO MAKE CLEAR FOR

7    THE RECORD, THAT THAT WASN'T AN OSCAR THAT YOU AS

8    AN INDIVIDUAL OBTAINED; IS THAT TRUE, SIR?

9    A    I NEVER SAID IT WAS.  I SAID THE -- I SAID THE

10   SOFTWARE WON AN OSCAR.

11   Q    YOU TALKED ABOUT A COUPLE OF OTHER PROJECTS

12   THAT YOU WORKED ON AT ALIAS, WAVEFRONT, AND SOME

13   OTHER COMPANIES, PARAFORM.  DO YOU REMEMBER THAT,

14   SIR?

15   A    SURE.

16   Q    THAT WORK WASN'T SPECIFICALLY DIRECTED TO CELL

17   PHONES OR OTHER PORTABLE DEVICES LIKE TABS.  IS

18   THAT FAIR?

19   A    IT'S FAIR.

20   Q    AND IF YOU LOOK ON YOUR WEB PAGE ON THE

21   INTERNET, AN AWFUL LOT OF INFORMATION THERE,

22   CERTAINLY DISCUSSING SOME OF THE THINGS YOU TOLD US

23   ABOUT ON DIRECT BASED ON YOUR WORK EXPERIENCE.

24        BUT I DIDN'T SEE ANY PARTICULAR MENTION

25   OF YOUR WORK OR EXPERTISE RELATED TO CELL PHONES,
```

1    FOR EXAMPLE.  IS THAT FAIR?  ARE YOU AWARE OF ANY?

2    A    IT'S NOT FAIR.

3    Q    I DIDN'T SEE ANY SPECIFIC CALL OUT, MENTION OF

4    YOUR PARTICULAR EXPERTISE OR WORK EXPERIENCE IN THE

5    AREA OF TAB DEVICES.  IS THAT FAIR TO SAY, SIR?

6    A    IT'S NOT FAIR TO SAY.

7    Q    I DIDN'T -- WAS THERE SOMETHING MENTIONED ON

8    YOUR WEBSITE RELATING TO TABS LIKE WE'RE SEEING IN

9    THIS CASE?

10   A    ABSOLUTELY.  I -- ONE OF MY MAIN AREAS OF

11   RESEARCH IS AN AREA CALLED SKETCH-BASED INTERFACES,

12   WHICH IS VERY MUCH APPLICABLE TO TOUCHSCREEN

13   DEVICES WHERE YOU, YOU, YOU PROVIDE DIRECT INPUT

14   AND YOU SKETCH AND PERFORM OTHER KINDS OF DIRECT

15   MANIPULATION OPERATIONS.

16            SO I'VE JUST CHAIRED THE MAIN CONFERENCE

17   IN THAT AREA IN ANNECY ABOUT A MONTH BACK, ANNECY,

18   A-N-N-E-C-Y, FRANCE.

19   Q    AND YOU'RE TALKING ABOUT TOUCHSCREEN DEVICES

20   GENERALLY, NOT TAB DEVICES IN PARTICULAR?

21   A    I'M TALKING ABOUT GENERAL STROKE-BASED INPUT

22   THAT COULD COME FROM THE FINGERS, THAT COULD COME

23   FROM A PEN, BUT IS CLEARLY DISTINCT FROM

24   TRADITIONAL WINDOWS, MOUSE, KEYBOARD INTERFACES.

25   Q    LET'S TALK ABOUT THAT TECHNOLOGY.

3854

```
 1              YOU STARTED WITH THE '915 PATENT.  DO YOU

 2    REMEMBER THAT?

 3    A    YES.

 4    Q    YOU TALKED ABOUT MR. FORSTALL AND SOME OF HIS

 5    TESTIMONY THAT HE GAVE IN THIS CASE.

 6              DO YOU REMEMBER THAT?

 7    A    YES, I DO.

 8    Q    WERE YOU HERE IN COURT FOR HIS TESTIMONY?

 9    A    I WAS HERE FOR, I BELIEVE, FOR AT LEAST A PART

10    OF IT.

11    Q    LET'S PUT UP ONE OF YOUR SLIDES.  IT'S CLAIM 8

12    OF THE '915 PATENTS.  IT'S PDX 29.8.  THIS IS ONE

13    OF YOUR SLIDES, DR. SINGH; RIGHT?

14    A    YES.

15    Q    NOW, YOU SAID, IF I HAVE THIS RIGHT, ON DIRECT

16    EXAMINATION, THAT -- YOU MENTIONED MR. FORSTALL A

17    BIT, YOU TALKED GENERALLY ABOUT THE INVENTION IN

18    THE '915 PATENT, AND YOU SAID IT RELATES TO HOW TO

19    POSITION AND RESIZE, WITH YOUR FINGERS, ITEMS ON A

20    SMALL SCREEN, LIKE THE SIZE OF A POSTCARD.

21              DO YOU REMEMBER THAT?

22    A    I GAVE THAT EXAMPLE ACTUALLY BEFORE THIS SLIDE

23    SHOWED UP AS A GENERAL UNDERSTANDING TO PEOPLE AS

24    TO WHAT THE PATENT DEALT WITH.

25              WHEN WE CAME TO THIS SLIDE, WE WERE
```

855

```
1    TALKING MUCH MORE SPECIFICALLY ABOUT THE CLAIM

2    LANGUAGE.

3    Q    OKAY.  LET'S TALK ABOUT SOME OF THE CLAIM

4    LANGUAGE.  ONE OF THE THINGS THAT -- YOUR TITLE, BY

5    THE WAY, IS SCROLL VERSUS GESTURE; RIGHT?

6    A    SURE.

7    Q    DO YOU SEE THAT?

8    A    YES.

9    Q    AND THOSE ARE ACTUAL WORDS THAT ARE USED IN

10   CLAIM 8; ISN'T THAT RIGHT?

11   A    YES.

12   Q    NOW, A SCROLL GENERALLY, AS WE'VE SEEN IN THE

13   CASE, IS YOU CAN USE TWO FINGERS OR YOU CAN MOVE

14   TWO FINGERS TO MOVE CONTENT UP ON THE DEVICES THAT

15   WE'RE TALKING ABOUT.  IS THAT FAIR?

16   A    YOU'LL HAVE TO BE A LITTLE MORE PRECISE WITH A

17   QUESTION LIKE THAT IF YOU EXPECT AN ANSWER.

18   Q    WHAT'S A SCROLL, DOCTOR?

19   A    A SCROLL -- IN THE CONTEXT OF THE '915 PATENT,

20   A SCROLL IS MOVING OR SLIDING CONTENT ON THE

21   SCREEN.

22   Q    OKAY.  MOVING OR SLIDING CONTENT ON THE

23   SCREEN.  IS THAT RIGHT?

24   A    YEAH.

25   Q    THAT CONCEPT ALONE, SCROLL, THE '915 INVENTORS
```

```
 1    DIDN'T INVENT SCROLLING.  THAT'S FAIR, ISN'T IT?
 2    A    THAT'S FAIR.
 3    Q    GESTURE, A GESTURE, WE'VE HEARD ALSO, IS A
 4    SCALE.  THAT WORD IS USED IN THE CLAIM, RIGHT, A
 5    SCALE?
 6    A    YES.
 7    Q    THEY'RE INTERCHANGEABLE IN YOUR VIEW; RIGHT?
 8    A    NO, THEY'RE NOT INTERCHANGEABLE.  SCALE IS AN
 9    EXAMPLE OF A MORE GENERAL GESTURE OPERATION.
10    Q    BETTER PUT.  THANK YOU.
11         BUT A SCALE IS A GESTURE; ISN'T THAT
12    TRUE?
13    A    A SCALE IS A GESTURE OPERATION IN THE CONTEXT
14    OF THE '915.
15    Q    AND A SCALE, IS THAT PRETTY MUCH THE SAME
16    THING AS A ZOOM?  YOU'RE TAKING TWO FINGERS AND
17    ZOOMING IN OR OUT?
18    A    YES.
19    Q    IS THAT FAIR?
20    A    THAT'S FAIR.
21    Q    THE INVENTORS OF THE '915 PATENT, THEY DIDN'T
22    INVENT A GESTURE, A SCALE, A ZOOM, OR DETECTING
23    THOSE ON THE DEVICES WE'RE TALKING ABOUT.  ISN'T
24    THAT FAIR, SIR?
25    A    ABSOLUTELY NOT.  THE CONCEPT OF SCALING GOES
```

```
1    BACK TO THE ANCIENT GREEKS.

2    Q    I THINK AS YOU PUT IT -- LATER ON IN YOUR

3    TESTIMONY WHEN WE GOT TO THE DETERMINATION STEP, I

4    THINK YOU USED THE WORDS THE "ALL-IMPORTANT TEST."

5              DO YOU REMEMBER THAT?  DO YOU REMEMBER

6    USING THAT PHRASE?

7    A    I MAY HAVE SAID THAT, YEAH, SURE.

8    Q    AND BY THAT, DIDN'T YOU MEAN THAT THIS CLAIM

9    IS NOT TALKING ABOUT JUST USING A SCROLL AND THE

10   DEVICE FIGURING OUT IF A SCROLL IS THERE, BECAUSE

11   CERTAINLY THAT'S NOT WHAT THEY INVENTED.  FAIR?

12   A    FAIR.

13   Q    THE CLAIM IS NOT ABOUT SOME -- A USER USING A

14   GESTURE OPERATION LIKE A ZOOM AND THE DEVICE

15   FIGURING OUT IF THERE'S A GESTURE THAT HAS BEEN

16   PERFORMED; RIGHT?  BECAUSE THAT WAS THERE, AS YOU

17   SAID; CORRECT?

18   A    IT IS ABOUT THE DEVICE FIGURING OUT WHETHER

19   IT'S A GESTURE BASED ON TWO OR MORE FINGER INPUTS.

20   Q    BUT AS YOU SAID, IT'S THE ALL-IMPORTANT TEST

21   IN THE CLAIM AS TO WHETHER IT'S A ONE FINGER SCROLL

22   VERSUS A TWO FINGER GESTURE.  THAT'S WHAT THIS

23   INVENTION IS ABOUT.  FAIR?

24   A    SURE.

25   Q    OKAY.  NOW, YOU SAID YOU LOOKED AT THE
```

```
1    PROSECUTION HISTORY.

2              DO YOU REMEMBER THAT?

3    A    YES, I DID.

4    Q    LET'S PUT UP A SLIDE THAT'S BEEN PREPARED.

5    IT'S SLIDE SDX 3912.007.

6              NOW, DR. SINGH, HAVE YOU SEEN THIS SLIDE

7    BEFORE TODAY?

8    A    YES, I HAVE.

9    Q    YOU'VE SEEN -- THIS IS ONE OF OUR SLIDES WE

10   PREPARED FOR CROSS.  YOU SAW IT BEFORE YOU TOOK THE

11   STAND TODAY; RIGHT?

12   A    YES.

13   Q    YOU KNOW WHAT THIS SLIDE IS?  IT'S SHOWING ON

14   THE LEFT-HAND SIDE AN EARLY VERSION OF THE CLAIM

15   AND THE PROSECUTION HISTORY.  IS THAT RIGHT?

16   A    THAT IS CORRECT.

17   Q    AND PROSECUTION HISTORY, AGAIN, IS THE BACK

18   AND FORTH BETWEEN THE PATENT OFFICE.  IT'S THE

19   DIALOGUE THAT ULTIMATELY, IF SUCCESSFUL, RESULTS IN

20   A PATENT BEING ISSUED.  IS THAT FAIR?

21   A    ABSOLUTELY.

22   Q    AND ON THE RIGHT-HAND SIDE IS THE ACTUAL

23   CLAIM.  DO YOU SEE THAT?

24   A    YES.

25   Q    AND THERE'S -- YOU CAN TELL JUST BY LOOKING AT
```

3859

```
1    THE TWO THERE'S MORE WORDS, INFORMATION, THERE ARE
2    MORE LIMITATIONS IN THE CLAIM AS ACTUALLY ISSUED
3    THAN IN THE EARLY FILE CLAIM.  IS THAT FAIR?
4    A    VERY FAIR.
5    Q    AND IT'S TRUE, ISN'T IT, SIR, THAT FOR THERE
6    TO BE INFRINGEMENT -- YOU'RE AN EXPERT ON
7    INFRINGEMENT, RIGHT? -- FOR THERE TO BE
8    INFRINGEMENT, EACH AND EVERY CLAIM ELEMENT MUST BE
9    FOUND IN THE ACCUSED DEVICE; IS THAT RIGHT?
10   A    THAT IS RIGHT.
11   Q    IF ONE IS MISSING, ONE, ONLY ONE IS MISSING,
12   THERE'S NO INFRINGEMENT; RIGHT?
13   A    THAT IS RIGHT.
14   Q    NOW, THIS REFLECTS, DOESN'T IT, THAT AS
15   ORIGINALLY FILED, THAT ALL-IMPORTANT TEST THAT YOU
16   MENTIONED WAS NOT IN THE CLAIM; RIGHT?
17        DO YOU SEE THAT HIGHLIGHTED, "BY
18   DISTINGUISHING BETWEEN A SINGLE INPUT POINT," AND
19   THEN IT GOES ON TO TALK ABOUT TWO OR MORE INPUT
20   POINTS?  THAT NOTION WAS NOT IN THE CLAIM AS IT
21   ORIGINALLY FILED.  IS THAT FAIR?
22   A    ABSOLUTELY NOT.
23   Q    NOW, WHY -- THAT LANGUAGE IS -- DO YOU SEE
24   THAT LANGUAGE IN THE CLAIM AS ORIGINALLY FILED,
25   SIR?
```

```
 1     A    I DO.

 2     Q    OKAY.  NOW, IS IT YOUR UNDERSTANDING, SIR,

 3     THAT ONE OF THE REASONS THAT PATENT EXAMINERS

 4     INSIST ON ADDITIONS BEING MADE TO CLAIMS IS BECAUSE

 5     THEY'VE SEEN SOMETHING THAT SAYS TO THEM, UNLESS

 6     THAT'S ADDED, THIS CLAIM MAY NOT BE VALID, FOR

 7     EXAMPLE?

 8     A    PERHAPS.

 9     Q    AND BY THE WAY, IF A CLAIM -- WE'RE GOING TO

10     TALK ABOUT INVALIDITY LATER IN THE CASE, BUT IF A

11     CLAIM IS INVALID, THEN YOU CAN'T INFRINGE THAT

12     CLAIM.  IS THAT FAIR?  YOU'RE HERE TO TALK ABOUT

13     INFRINGEMENT TODAY; RIGHT?

14     A    RIGHT.

15     Q    NOW, YOU SHOWED SOME DEMONSTRATIVES ON DIRECT

16     EXAMINATION.  YOU SHOWED SOME ACTUAL PRODUCTS.

17               DO YOU REMEMBER THAT?

18     A    THAT IS CORRECT.

19     Q    YOU SHOWED SOME INSTANCES WHERE THERE'S A, A

20     ONE FINGER SCROLL.  IS THAT FAIR?

21     A    YES.

22     Q    LET'S PUT BACK UP ON THE SCREEN, PLEASE, RYAN,

23     PDX 29.8.

24               NOW, WITH RESPECT TO THE SCROLL VERSUS A

25     GESTURE, THE CLAIM AS IT ULTIMATELY CAME OUT OF THE
```

1    WE GOT A DIATRIBE ABOUT CAUSES.  THAT WAS NOT MY

2    QUESTION.

3              MR. JACOBS:  YOUR HONOR, I --

4              THE COURT:  OVERRULED.  GO TO THE NEXT

5    QUESTION.

6              THE WITNESS:  SORRY.

7    BY MR. DEFRANCO:

8    Q    LET ME ASK AGAIN.  MAYBE MY QUESTION WASN'T

9    CLEAR.  LET ME TRY AGAIN.

10             I THOUGHT ON DIRECT EXAMINATION YOU SAID

11   THE MOTION EVENT OBJECT CALLS FOR CAUSES.  YOU JUST

12   TOLD US ABOUT CAUSES.  I DON'T WANT TO TALK ABOUT

13   CAUSES FOR THE MOMENT.

14             I WANT TO FOCUS ON CALLS.  CALLS IS

15   SOMETHING SPECIFIC IN COMPUTER PARLANCE; RIGHT?

16   A    YES.

17   Q    IS IT YOUR TESTIMONY HERE THAT MOTION EVENT

18   OBJECT PERFORMS A CALL OPERATION?

19   A    NO.  THE MOTION EVENT OBJECT CAUSES --

20   Q    DOES IT PERFORM A CALL OPERATION?  YES OR NO,

21   SIR?  I NEED A YES OR NO TO THAT.

22             MR. JACOBS:  YOUR HONOR, THAT WAS AN

23   ANSWER.

24             THE COURT:  OVERRULED.

25             GO AHEAD, PLEASE.  YOU CAN ANSWER.

2876

```
 1    BY MR. DEFRANCO:

 2    Q    PLEASE, SIR, JUST YES OR NO, DOES IT PERFORM A

 3    CALL OPERATION?

 4    A    WHEN YOU SAY "PERFORM A CALL OPERATION," A

 5    CALL IS NOT AN OPERATION.  A CALL IS SOME -- IS A

 6    FUNCTION.

 7    Q    LET ME TRY IT THIS WAY, SIR.

 8    A    YES.

 9    Q    WOULD YOU AGREE WITH ME THAT MOTION EVENT

10    OBJECT DOESN'T MAKE A SCROLL CALL, FOR EXAMPLE?

11    A    THE MOTION EVENT OBJECT ITSELF DOES NOT.

12         BUT IT CAUSES THE CODE THAT RESULTS IN A

13    SCROLL CALL TO BE MADE, YES.

14    Q    IT DOESN'T DO IT ITSELF?

15    A    IT IS RESPONSIBLE FOR IT.

16    Q    IT DOESN'T DO IT ITSELF IS WHAT YOU JUST SAID,

17    SIR?

18    A    I SAID IT IS RESPONSIBLE FOR IT.

19    Q    DID YOU -- WERE NOT HERE WITH ME, SIR?  DID

20    YOU JUST SAY IT DOESN'T DO IT ITSELF?  YES OR NO?

21    A    I BELIEVE THE ANSWER TO THIS QUESTION NEEDS TO

22    BE COMPLETED, SO I SAID, YES, IT DOESN'T DO IT

23    ITSELF, BUT IT CAUSES IT.

24    Q    AND THERE'S NOTHING IN THE MOTION EVENT OBJECT

25    THAT CALLS A GESTURE OPERATION; ISN'T THAT TRUE,
```

1    SIR?

2    A    ONCE AGAIN, IT CAUSES IT.

3    Q    THERE'S NOTHING, THOUGH, THAT CALLS IT?  IS

4    THAT TRUE?

5    A    ONCE AGAIN, IT CAUSES IT.

6    Q    LET'S MOVE ON.  LET'S MOVE ON TO THE '163

7    PATENT.

8              THAT'S THE SECOND PATENT THAT YOU

9    TESTIFIED ON DIRECT EXAMINATION ABOUT INFRINGEMENT;

10   CORRECT?

11   A    YES.

12   Q    NOW, I THINK ON DIRECT EXAMINATION YOU SAID

13   SOMETHING TO THE EFFECT THAT IN THE '163 PATENT

14   THAT WAS A RESULT, IN YOUR VIEW, OF A KEY INSIGHT,

15   THOSE PARTICULAR WORDS I WROTE DOWN, KEY INSIGHT IN

16   REALIZING THAT THERE'S AN INHERENT STRUCTURE IN WEB

17   PAGES THAT CAN BE EXPLOITED FOR USE IN THE

18   INVENTION.

19              IS THAT FAIR?

20   A    THAT'S FAIR.

21   Q    OKAY.  THERE ARE NINE PATENTS -- NINE

22   INVENTORS ON THE, ON THE '163 PATENT; IS THAT

23   CORRECT?

24   A    I HAVEN'T COUNTED THEM, BUT THERE ARE MANY.

25   Q    YOU HAVEN'T SPOKEN TO THESE INVENTORS ABOUT,

```
1    DIRECTLY ABOUT THE '163 PATENT OR THEIR INVENTION

2    OR ANY INSIGHTS THEY MAY HAVE HAD.  ISN'T THAT

3    TRUE, SIR?

4    A    I READ THEIR DEPOSITION TESTIMONIES.

5    Q    YOU HAVEN'T SPOKEN TO THEM ABOUT ANY INSIGHTS

6    THEY MAY HAVE HAD.  IS THAT TRUE, SIR?

7    A    I READ THEIR DEPOSITION TESTIMONIES WHERE THEY

8    TALK ABOUT INSIGHTS THEY MAY HAVE HAD.

9    Q    AND -- BY THE WAY, ARE YOU AWARE THAT MANY OF

10   THE INVENTORS ARE WORKING FOR APPLE AND THEY'RE

11   READILY ACCESSIBLE TO YOU IF YOU WANTED TO SPEAK TO

12   THEM AND ASK THEM ABOUT THE INVENTION AND WHAT LED

13   TO IT AND THEIR INSIGHTS AND THAT SORT OF THING?

14   WERE YOU AWARE OF THAT THAT, THAT'S AVAILABLE TO

15   YOU AS AN EXPERT FOR APPLE?

16   A    PERHAPS.

17   Q    NOW, LET'S PULL UP THE SLIDE THAT YOU PREPARED

18   FOR THE '163 PATENT.  THIS IS PDX 29.29.

19         NOW, YOU TOOK US THROUGH THIS ON DIRECT

20   EXAMINATION.  I JUST WANT TO POINT OUT A FEW

21   THINGS.

22         AGAIN, THIS CLAIM -- THIS IS THE -- YOU

23   CALLED IT TAP TO ZOOM AND SUBSTANTIALLY CENTER.

24         DO YOU SEE THAT?

25   A    YES.
```

3879

1    Q    THAT'S SHORTHAND THAT YOU USED TO DESCRIBE

2    THIS INVENTION IN VERY GENERAL TERMS.  IS THAT

3    FAIR?

4    A    THAT'S FAIR.

5    Q    YOU WEREN'T TRYING TO SAY THAT'S WHAT THIS

6    INVENTION IS ALL ABOUT; RIGHT?

7    A    NO.  JUST, AS YOU SAID, A SHORTHAND

8    DESCRIBING.

9    Q    BECAUSE, OF COURSE, TAP TO ZOOM WAS, WAS OUT

10   THERE IN THIS FIELD BEFORE THIS PATENT; RIGHT?  YOU

11   WOULDN'T SAY THESE INVENTORS INVENTED TAP TO ZOOM;

12   RIGHT?

13   A    THAT IS CORRECT.

14   Q    AND SUBSTANTIALLY CENTERING CONTENT, WHATEVER

15   THAT MEANS -- WELL, LET'S TALK ABOUT CENTERING

16   CONTENT ON A MOBILE DEVICE, A PHONE OR AN IPAD.

17         THESE INVENTORS OF THE '163 PATENT, THEY

18   CERTAINLY DIDN'T INVENT SUBSTANTIALLY CENTERING; IS

19   THAT RIGHT?

20   A    IN A VERY GENERAL CONTEXT, MAYBE NOT.

21   Q    OKAY.  BUT AGAIN, YOU WOULD SAY -- I KNOW IT'S

22   COMING -- YOU WOULD SAY, WELL, YOU'VE GOT TO PUT

23   ALL THE ELEMENTS TOGETHER INTO THIS PARTICULAR

24   CLAIM, THAT'S WHAT DESCRIBES THE INVENTION.  THAT'S

25   FAIR; RIGHT?  NOT ANY ONE ELEMENT; RIGHT?

```
1    A    RIGHT.

2    Q    EVEN THOUGH, AS YOU TAKE APART THE ELEMENTS,

3    THEY MAY HAVE BEEN OUT THERE INDIVIDUALLY,

4    CERTAINLY LIKE TAP TO ZOOM AND CENTERING; IS THAT

5    TRUE?

6    A    WELL, WHEN YOU SAY TAP TO ZOOM, YOU HAVE TO,

7    AGAIN, TALK ABOUT IT IN WHAT CONTEXT YOU'RE TALKING

8    ABOUT IT.  SIMPLY ZOOMING, QUITE OFTEN ZOOMING OR

9    TAPPING TO ZOOM WITHOUT -- WITH NO STRUCTURE FOR A

10   DOCUMENT WITHOUT STRUCTURE IS, IS A COMPLETELY

11   DIFFERENT PIECE OF FUNCTIONALITY.  IT'S

12   COMPLETELY -- IT'S SOMETHING THAT'S QUITE

13   DIFFERENT.

14        SO JUST BECAUSE YOU SHARE SOME TECHNICAL

15   WORDS DOESN'T MEAN THAT, YOU KNOW, SOMETHING IS

16   VERY COMMON.

17   Q    ABSOLUTELY.  BUT TAP TO ZOOM, AGAIN, ALONE,

18   THAT CONCEPT WAS NOT -- THESE INVENTORS DID NOT

19   COME UP WITH THAT CONCEPT?

20   A    IN A HYPER TECHNICAL GENERAL SENSE, YES.

21   Q    WHEN YOU SAY THE KEY INSIGHT IS THEY REALIZED

22   THERE'S AN INHERENT STRUCTURE IN WEB PAGES THAT CAN

23   BE EXPLOITED, THE PATENT, THE CLAIM, 50, USES THE

24   PHRASE "STRUCTURED ELECTRONIC DOCUMENT."

25        DO YOU SEE THAT?
```

1    A    YES, I DO.

2    Q    THAT'S ANOTHER LIMITATION ELEMENT THAT MUST BE

3    PRESENT IN THE ACCUSED DEVICE OR FEATURE IN ORDER

4    FOR THERE TO BE INFRINGEMENT; CORRECT?

5    A    WHAT, THAT A STRUCTURED ELECTRONIC DOCUMENT

6    MUST BE PRESENT?

7    Q    YES, YES.

8    A    NO, ABSOLUTELY NOT.

9    Q    OKAY.  IT'S GOT TO BE -- IT'S GOT TO BE DOING

10   SOMETHING TO A STRUCTURED ELECTRONIC DOCUMENT?

11   THERE'S GOT TO BE A DISPLAY, AND THEN THE CLAIM

12   CONTINUES ON; RIGHT?  SO THERE'S GOT TO BE A

13   STRUCTURED ELECTRONIC DOCUMENT PRESENT; IS THAT

14   TRUE?

15   A    NO, IT'S NOT TRUE.

16   Q    OKAY.  STRUCTURED ELECTRONIC DOCUMENT, SIR,

17   THEY WERE OUT THERE; RIGHT?  I MEAN, WEB PAGES USE

18   HTML.  THAT'S THE CODE THAT, AS YOU SAY, WITH TABS

19   WILL STRUCTURE AN ELECTRONIC DOCUMENT; IS THAT

20   RIGHT?

21   A    WITH TAGS.

22   Q    I'M SORRY.  I SAID TABS.  WITH TAGS, THOSE ARE

23   THE LITTLE CHARACTERS; RIGHT?  IS THAT RIGHT?

24   A    YEAH.

25   Q    SO ANY PROGRAMMER KNOWS THAT CERTAIN

3882

```
1    INFORMATION YOU CAN GET ON THE INTERNET AND ACCESS

2    THROUGH A MOBILE DEVICE, LIKE A WEB PAGE, THOSE ARE

3    STRUCTURED DOCUMENTS USING, IN THAT INSTANCE, HTML

4    CODE.  IS THAT FAIR?

5    A    YEAH, THAT'S FAIR.

6    Q    NOW, THIS CLAIM TALKS ABOUT INSTRUCTIONS.  DO

7    YOU SEE THAT, SIR?

8    A    YES.

9    Q    ALL THE WAY DOWN?

10   A    YES.

11   Q    NOW, INSTRUCTIONS ARE ACTUAL LINES OF CODE; IS

12   THAT CORRECT?

13   A    YES.

14   Q    NOW, THAT MEANS THAT SOMEWHERE IN THE SOURCE

15   CODE, THERE ARE VERY SPECIFIC INSTRUCTIONS FOR

16   PERFORMING THOSE OPERATIONS; IS THAT CORRECT?  IS

17   THAT RIGHT?

18   A    YES.

19   Q    AND CAN YOU DETERMINE INFRINGEMENT JUST BY

20   OPERATING AN ACCUSED DEVICE, REGARDLESS OF WHAT MAY

21   OR MAY NOT ACTUALLY BE IN THE SOURCE CODE?

22   A    IT DEPENDS ON WHAT THE, WHAT THE CLAIM

23   LANGUAGE IS, IS STATING.

24        IF THE CLAIM LANGUAGE IS DESCRIBING A

25   VISUAL OPERATION AND YOU CLEARLY OBSERVE THAT
```

1    INFORMATION; IS THAT RIGHT?

2    A    THAT IS CORRECT.

3    Q    NOW, YOU ANALYZED WHETHER OR NOT THE ACCUSED

4    PRODUCTS SUBSTANTIALLY CENTERED CONTENT IN YOUR

5    WORK ON INFRINGEMENT; IS THAT CORRECT?

6    A    YES.

7    Q    NOW, THERE'S NO -- OTHER THAN THAT PHRASE,

8    "SUBSTANTIALLY CENTERED," THERE'S NO -- THERE'S NO

9    DEFINITION OR EXPLANATION ABOUT WHAT THOSE TERMS

10   MEAN IN THE CLAIM; RIGHT?

11   A    NOT IN THE CLAIM, NO.

12   Q    AND THE SPECIFICATION TALKS ABOUT THOSE TERMS,

13   BUT THERE'S NO EXPLICIT DEFINITION IN THE

14   SPECIFICATION; ISN'T THAT RIGHT?

15   A    WELL, THERE'S TALK IN THE SPECIFICATION ABOUT

16   PADDING AND SO ON WITH REGARDS TO, TO THE DOCUMENT.

17          BUT BY AND LARGE, IT'S SOMETHING THAT A

18   PERSON OF ORDINARY SKILL IN THE ART WILL HAVE NO

19   PROBLEM UNDERSTANDING.

20   Q    SO IS IT YOUR TESTIMONY, SIR, THAT IF I HAD 50

21   PEOPLE LINED UP WHO WERE SKILLED IN THE ART, THEY

22   WOULD ALL GIVE ME THE EXACT SAME ANSWER IF I SHOWED

23   THEM SOMETHING AND ASKED THEM IF IT WAS

24   SUBSTANTIALLY CENTERED?

25   A    BY AND LARGE, GIVEN THE CONTEXT FOR THE '163

1      PATENT, THERE ARE OTHER DESIGN CRITERIA, DESIGN

2      GOALS THAT UNDERLIE THE, THE PATENT, AND SO USUALLY

3      IN THE RARE CIRCUMSTANCE WHERE YOU FIND -- YOU FEEL

4      THAT REASONABLE MINDS MIGHT, MIGHT DEVIATE.

5              THERE'S USUALLY A GOOD REASON IN THE, IN

6      THE INTERFACE DESIGN FOR, FOR THINGS APPEARING THE

7      WAY THEY DO.

8      Q    SO TWO PEOPLE MIGHT DISAGREE ABOUT WHETHER

9      SOMETHING IS SUBSTANTIALLY CENTERED, BUT THAT MAY

10     BE KEY TO THE DESIGN GOAL FOR THE SPECIFIC DEVICE?

11     IS THAT WHAT YOU'RE SAYING?

12     A    NO, THAT'S NOT WHAT I'M SAYING.

13     Q    OKAY.  LET ME ASK YOU THIS.  THERE'S NO -- IN

14     TERMS OF GIVING THOSE 50 HYPOTHETICAL PEOPLE SOME

15     TOOLS, THERE'S NO SPECIFIC PARAMETERS SET FORTH IN

16     THE CLAIM; IS THAT TRUE?

17     A    THERE DOESN'T NEED TO BE SPECIFIC PARAMETERS

18     SET FORTH IN THE CLAIM.

19     Q    THERE ARE NONE SET FORTH IN THE CLAIM, SIR;

20     ISN'T THAT TRUE?

21     A    WELL, THERE'S THE TERM "SUBSTANTIALLY

22     CENTERED."

23     Q    RIGHT.  IT DOESN'T SHOW ANY -- IT DOESN'T GIVE

24     ANY MORE INDICATION.  IT DOESN'T GIVE YOU

25     MEASUREMENTS OR DISTANCE OR ANY OTHER INDICATION

1    ABOUT WHAT THAT MEANS, ISN'T THAT TRUE, SIR, IN THE

2    CLAIM?

3    A    IN THE CLAIM TAKEN WITH THE PATENT, A PERSON

4    OF ORDINARY SKILL IN THE ART WILL UNDERSTAND WHAT

5    IT MEANS.

6    Q    THERE ARE NO -- THERE ARE NO SPECIFIC

7    PARAMETERS.  YOU'VE SEEN CLAIMS THAT HAVE

8    PARAMETERS, RIGHT, SPECIFIC MEASUREMENTS DETAILED

9    EXACTLY IN THE CLAIM?  YOU'VE SEEN THAT, RIGHT,

10   BEFORE SIR?  THAT'S NOT THE SITUATION, IS IT, HERE,

11   SIR?

12   A    NOT FOR THIS PARTICULAR --

13   Q    I'M SORRY.  EVERYBODY IS RUSHED.  I APOLOGIZE

14   FOR TALKING OVER YOU.

15          THAT'S ALSO NOT THE SITUATION WITH

16   RESPECT TO THE '163 SPECIFICATION.  THERE ARE NO

17   SPECIFIC PARAMETERS FOR EACH OF THOSE 50

18   INDIVIDUALS TO COME TO THE SAME CONCLUSION, TO SEE

19   WHETHER THOSE PARAMETERS ARE MET.  THAT'S FAIR,

20   ISN'T IT, SIR?

21   A    THAT'S WHY YOU NEED TO BE A PERSON OF ORDINARY

22   SKILL IN THE ART.

23   Q    NOW, YOU ANALYZED, FOR INFRINGEMENT OF THE

24   '163 PATENT, ONE WEB PAGE.  IS THAT TRUE, SIR?

25   A    THAT IS NOT TRUE.

```
1    Q    YOU ANALYZED A PARTICULAR APPLICATION, DIDN'T
2    YOU, THE BROWSER APPLICATION?
3    A    YES, THE BROWSER APPLICATION, YES.
4    Q    AND IN YOUR REPORT, YOU DIDN'T ANALYZE OTHER
5    APPLICATIONS, LIKE E-MAIL, THE MUSIC PLAYER, OR
6    GALLERY, OR ANY OTHER APPLICATION.  YOU FOCUSSED ON
7    THE GALLERY APPLICATION; IS THAT TRUE?
8    A    NO, I DID NOT.
9    Q    I'M SORRY?
10   A    I DID NOT FOCUS ON THE GALLERY APPLICATION AT
11   ALL.
12   Q    I APOLOGIZE.  I MISSPOKE.  I'M RUSHED.  LET ME
13   SLOW DOWN.
14         YOU FOCUSSED ON THE WEB BROWSER
15   APPLICATION IN YOUR ANALYSIS; IS THAT TRUE?
16   A    THAT IS TRUE.
17   Q    THERE ARE MANY OTHER APPLICATIONS OUT THERE,
18   HIGHER ORDER APPLICATIONS LIKE GALLERY AND E-MAIL
19   AND THINGS LIKE THAT, AND HUNDREDS OF OTHER MORE
20   DETAILED APPLICATIONS YOU CAN DOWNLOAD FROM THE
21   WEB, FOR EXAMPLE.  YOU DIDN'T ANALYZE OTHER
22   APPLICATIONS?
23   A    I DIDN'T NEED TO.
24   Q    NOW -- AND THE WEB PAGE, YOU ALSO -- WITHIN
25   ANALYZING THE WEB BROWSER, YOU PICKED OUT A
```

```
1    PARTICULAR WEB PAGE, THE NEW YORK TIMES WEB PAGE;

2    IS THAT TRUE?

3    A    AS PART OF MY TESTING, I TESTED IT ON A NUMBER

4    OF WEB PAGES.  I JUST CHOSE THE NEW YORK TIMES AS A

5    GOOD REPRESENTATIVE WEB PAGE FOR MY ILLUSTRATIONS.

6         BUT THE DESIGN WORKS ON, ON AN

7    INNUMERABLE NUMBER OF WEB PAGES.

8    Q    IN THE INTERESTS OF TIME, SIR, DO YOU RECALL

9    TESTIFYING AT YOUR DEPOSITION THAT YOU COULD NOT

10   RECALL TESTING, PERFORMING ANY TESTS ON ANY OTHER

11   WEB PAGE OTHER THAN THE NEWYORKTIMES.COM WEB PAGE?

12   DO YOU RECALL THAT?

13   A    I RECALL SAYING AT MY DEPOSITION THAT I DID

14   NOT CONCLUSIVELY REMEMBER VERY PRECISE WEBSITES

15   THAT I TESTED ON.

16        AS PART OF MY TESTING, I SPENT A LOT OF

17   TIME JUST BROWSING AROUND GENERALLY ON THE WEB

18   PAGE.  WHEN ONE DOES THAT, YOU DON'T NECESSARILY

19   KEEP A CLEAR TRACK OF EVERY WEB PAGE THAT YOU MIGHT

20   HAPPEN TO VISIT.

21   Q    SO YOU DON'T DISAGREE, AT YOUR DEPOSITION, YOU

22   COULDN'T IDENTIFY ANY OTHER WEB PAGE OTHER THAN THE

23   NEW YORK TIMES?

24   A    NO.  I BELIEVE I DID GIVE AN EXAMPLE OR TWO.

25   Q    YOU DIDN'T REMEMBER EXACTLY WHAT YOU TESTED;
```

```
 1    ISN'T THAT FAIR, SIR?

 2    A    ARE YOU ASKING ME TO REMEMBER WHAT I SAID AT

 3    THE DEPOSITION THREE MONTHS BACK?  OR I DON'T KNOW

 4    HOWEVER LONG BACK?  YOU'D LIKE TO KNOW WHAT WEB

 5    PAGES I TESTED ON, I'D BE HAPPY TO GIVE YOU A LIST.

 6    Q    LET'S KEEP GOING.

 7              THE -- THERE ARE OTHER -- THERE ARE

 8    CERTAIN TYPES OF CONTENT WEB PAGES THAT ARE NOT OF

 9    USE FOR THE '163 PATENT; IS THAT TRUE, SIR?

10    A    CAN YOU BE MORE PRECISE WITH THAT QUESTION?

11    Q    THERE ARE CERTAIN TYPES OF, LIKE, MOBILE

12    WEBSITES?  ISN'T IT TRUE, SIR, THAT MOBILE WEBSITES

13    ARE NOT USEFUL IN THE CONTEXT OF THE '163 PATENT?

14    A    MOBILE WEBSITES ARE SITES THAT ARE

15    SPECIFICALLY DESIGNED AS AN ALTERNATIVE, AS AN

16    ALTERNATIVE SOLUTION TO BROWSING ON A SMALL SCREEN

17    DEVICE.

18              THE '163 PATENT SORT OF OBVIATES THE NEED

19    FOR PEOPLE TO GO AND REWRITE THEIR ENTIRE WEB PAGE.

20              SO IT'S -- IT DOESN'T MATTER -- IT'S NOT

21    DESIGNED FOR IT, I WILL AGREE.

22              BUT IT DOESN'T MATTER FOR THE CASE -- FOR

23    THE SAKE OF INFRINGEMENT.

24    Q    WELL, WOULDN'T YOU AGREE THAT IT GOES AGAINST

25    THE TEACHING, MOBILE WEBSITES GO AGAINST THE
```

11907

```
 1    TEACHING OF THE '163 PATENT?

 2    A    OF COURSE.

 3    Q    NOW, GENERALLY, YOU DON'T HAVE ANY IDEA -- YOU

 4    ANALYZED THE BROWSER -- YOU LOOKED AT THE

 5    NEW YORK TIMES WEB PAGE.

 6              DO YOU REMEMBER THAT?

 7    A    AND OTHER WEB PAGES.

 8    Q    AND YOU SPECIFICALLY AT YOUR DEPOSITION -- I

 9    CAN PLAY IT FOR YOU, SIR -- YOU COULDN'T, AT YOUR

10    DEPOSITION, IDENTIFY OTHER SPECIFIC ONES YOU

11    REMEMBERED LOOKING AT.

12              DO YOU REMEMBER THAT?

13    A    YOU'RE WELCOME TO PLAY MY DEPOSITION

14    TESTIMONY, BUT I SAID I DID NOT CONCLUSIVELY GIVE

15    ANY NAMES, BUT I DID VERY CLEARLY SAY THAT I HAD

16    LOOKED AT OTHER WEB PAGES.

17    Q    OKAY.

18    A    I'M -- AT THIS POINT, I'M HAPPY TO GIVE YOU A

19    LIST IF YOU WANT.

20    Q    NOW, I JUST WANT TO COVER YOUR MEMORY AT YOUR

21    DEPOSITION.

22              YOU DON'T KNOW, SIR, DO YOU, SITTING

23    HERE, WHAT PERCENTAGE OF PEOPLE WHO OWN A SAMSUNG

24    PRODUCT HAVE ACTUALLY USED THE BROWSER APPLICATION?

25    THAT'S NOT PART OF YOUR TESTIMONY?  IS THAT TRUE?
```

1    A    THAT IS TRUE, I DON'T KNOW.

2    Q    AND YOU -- YOU'RE NOT PROVIDING ANY SURVEY

3    ESTIMATE OF USAGE TO BACK UP YOUR TESTIMONY ON

4    INFRINGEMENT HERE.  IS THAT TRUE?

5    A    NO, IT'S NOT RELEVANT TO INFRINGEMENT AT ALL.

6    Q    AND, IN FACT, ISN'T IT TRUE, SIR, THAT YOU'VE

7    NEVER SEEN ANYONE USE A SAMSUNG SMARTPHONE OR

8    TABLET COMPUTER IN A WAY THAT WOULD DEMONSTRATE THE

9    RESULTS OF STEPS -- OF THE STEPS IN CLAIM 50 OF THE

10   '163 PATENT, OUTSIDE OF THE TESTING THAT YOU'VE

11   DONE?

12   A    IT'S NOT RELEVANT TO THIS CLAIM OF THE PATENT.

13   THIS IS A CLAIM THAT SPECIFICALLY TALKS ABOUT

14   HAVING INSTRUCTIONS ON A DEVICE.

15           IF THE INSTRUCTIONS FOR THIS CLAIM

16   LANGUAGE EXIST ON THE DEVICE, IT DOESN'T MATTER

17   WHETHER ANYONE EVER USES THAT DEVICE OR EVEN DOES

18   ANYTHING ABOUT IT.

19           THE FACT IS IT'S THE DEVICE THAT

20   INFRINGES BECAUSE IT POSSESSES THESE INSTRUCTIONS.

21   Q    YOU DIDN'T -- MY QUESTION WAS, YOU DIDN'T

22   SPEAK TO ANYBODY WHO ACTUALLY USES THIS

23   FUNCTIONALITY, SIR?

24   A    NO.

25   Q    AND THAT WOULD INCLUDE THE INVENTORS; IS THAT

```
 1    TRUE, SIR?  YOU DIDN'T SPEAK TO THE INVENTORS ABOUT

 2    THIS FUNCTIONALITY?

 3    A    I DIDN'T SPEAK TO THE INVENTORS OF --

 4    Q    THANK YOU.

 5              THE COURT:  ALL RIGHT.

 6              MR. DEFRANCO:  THANK YOU.

 7              THE COURT:  ALL RIGHT.  THE TIME IS 3:22.

 8              MR. JACOBS:  JUST A COUPLE OF QUESTIONS

 9    FOR DR. SINGH.

10              COULD WE HAVE THE CLAIM LANGUAGE UP,

11    MR. LEE.

12                    REDIRECT EXAMINATION

13    BY MR. JACOBS:

14    Q    THERE WAS A MOMENT OF POSSIBLE CONFUSION.  YOU

15    WERE ASKED WHETHER A STRUCTURED ELECTRONIC DOCUMENT

16    HAS TO BE PRESENT IN THE ACCUSED DEVICE IN ORDER

17    FOR THERE TO BE INFRINGEMENT, AND I BELIEVE YOU

18    ANSWERED NO, AND I WONDERED IF YOU COULD EXPLAIN

19    YOUR ANSWER.

20    A    THAT'S RIGHT.  WHAT THE CLAIM LANGUAGE

21    REQUIRES IS THAT YOUR PROGRAM HAS INSTRUCTIONS THAT

22    ARE CAPABLE OF DEALING WITH A STRUCTURED ELECTRONIC

23    DOCUMENT, DISPLAYING IT AND THEN PERFORMING ALL

24    THESE ACTIONS.

25              THE ACTUAL SORT OF -- THE SPECIFIC
```

3910

```
 1    STRUCTURED ELECTRONIC DOCUMENT OR MULTIPLE OR WHICH

 2    STRUCTURED ELECTRONIC DOCUMENT IS NOT OF

 3    CONSEQUENCE.

 4            WHAT IS OF CONSEQUENCE IS THAT THERE'S A

 5    PROGRAM TO DEAL WITH SUCH DOCUMENTS.

 6    Q    AND WHEN WE'RE OBSERVING THE DEVICES IN

 7    ACTION, ARE WE OBSERVING THOSE ACTIONS OPERATING ON

 8    A STRUCTURED ELECTRONIC DOCUMENT?

 9    A    YES.

10            MR. DEFRANCO:  YOUR HONOR, WE'RE LEADING

11    THE WITNESS NOW THROUGH HIS TESTIMONY.

12            THE COURT:  YES.  SUSTAINED.

13    BY MR. JACOBS:

14    Q    CAN YOU EXPLAIN WHETHER OR NOT, WHEN WE'RE

15    OBSERVING THE DEVICE IN ACTION, WE ARE OBSERVING

16    THE INSTRUCTIONS OPERATING ON A STRUCTURED

17    ELECTRONIC DOCUMENT?

18    A    YES, EXACTLY.  WHEN WE OBSERVE THE DEVICE IN

19    ACTION, THESE INSTRUCTIONS ARE, IN FACT, OPERATING

20    ON A STRUCTURED ELECTRONIC DOCUMENT.  IN

21    PARTICULAR, WE SAW THEM OPERATING ON THE

22    NEW YORK TIMES WEB PAGE.

23    Q    YOU WERE ASKED ABOUT SOME SOURCE CODE EXTRACTS

24    AND THE WORD GESTURE IN YOUR SLIDE VERSUS THE

25    PRESENCE OF GESTURE IN THE ACTUAL CODE.
```

3954

```
1    INNOVATE QUITE A BIT.  I'LL HIGHLIGHT A COUPLE.
2              SO IN 2001, WE BUILT THE IPOD AND, WITH
3    IT, WE REVOLUTIONIZED THE MUSIC INDUSTRY.
4              IN 2007, WE BUILT IPHONE AND, WITH IT, WE
5    RECAST WHAT ARE MEANT TO BE THE SMARTPHONES.
6              AND IN 2010, WE BUILT THE IPAD, AND WITH
7    IPAD WE CREATED A WHOLE NEW MARKET CATEGORY KNOWN
8    AS TABLETS.
9              MS. MAROULIS:  YOUR HONOR, OBJECTION.
10   MOVE TO STRIKE.  IT'S BEYOND THIS WITNESS'S
11   EXPERTISE.  HE STARTED OUT IN 2001.
12             THE COURT:  OVERRULED.
13   BY MR. MUELLER:
14   Q    CONTINUE, PLEASE.
15   A    AND WITH THAT SAID, WE BUILT A PORTFOLIO, A
16   PATENT PORTFOLIO ALONG THE WAY AND HAVE DONE A LOT
17   OF INNOVATION TO BUILD THOSE PRODUCTS OUT TO
18   MARKET.
19   Q    MR. TEKSLER, COULD YOU EXPLAIN TO THE JURY,
20   PLEASE, HOW THIS CATEGORY OF COMPUTING PATENTS
21   RELATE, IF AT ALL, TO WIRELESS DEVICES?
22   A    CERTAINLY.  SO ANY MODERN SMARTPHONE THAT HAS
23   A OPERATING SYSTEM BUILT INTO IT THAT YOU WANT TO
24   DOWNLOAD THIRD PARTY APPLICATIONS TO, THAT'S AN
25   EXAMPLE OF CORE COMPUTING I.P. THAT WE'VE REALLY
```

1955

```
1    BUILT THE FOUNDATIONAL POSITIONING.

2    Q    WHAT IS APPLE'S POSITION ON LICENSING THIS

3    PORTION OF ITS PATENT PORTFOLIO?

4    A    SO UNLIKE STANDARDS WHERE WE HAVE TO LICENSE,

5    THIS IS AN AREA WHERE WE DON'T HAVE TO LICENSE.

6              MS. MAROULIS:  OBJECTION.  BEYOND THE

7    COURT'S ORDER ON STANDARDS.

8              MR. MUELLER:  YOUR HONOR, HE'S JUST

9    DESCRIBING THE SECOND CATEGORY, NON-STANDARDS

10   PATENTS.

11             THE COURT:  ALL RIGHT.  OVERRULED.

12             THE WITNESS:  SO WITH RESPECT TO THE

13   COMPUTING PORTFOLIO, IT'S NOT ONE THAT WE HAVE TO

14   LICENSE, BUT WE'RE CERTAINLY WILLING TO DISCUSS

15   LICENSING.

16             WE DO THAT WITH TWO PRIMARY GOALS.  THE

17   FIRST ONE IS THAT WE WANT TO GET FAIRLY COMPENSATED

18   FOR THE WORK THAT WE'VE DONE; AND THE SECOND -- AND

19   THE SECOND ONE IS WE WANT TO MAKE SURE THAT WE

20   SAFEGUARD APPLE'S DIFFERENTIATED USER EXPERIENCE.

21   BY MR. MUELLER:

22   Q    MR. TEKSLER, LET'S TURN, IF WE COULD, TO THE

23   THIRD CATEGORY IN THE APPLE PORTFOLIO.  WOULD YOU

24   REMIND US WHAT THAT IS?

25   A    CERTAINLY.  THAT'S APPLE'S UNIQUE USER
```

```
1     EXPERIENCE I.P.

2     Q    WHAT DOES THAT REFER TO?

3     A    SO I WOULD DESCRIBE THAT IN A COUPLE DIFFERENT

4     WAYS.  FROM A TOP LEVEL, IT'S THAT WHICH MAKES OUR

5     BRAND IDENTITY AND KEEPS US UNIQUE IN THE

6     MARKETPLACE, AND IT'S WHAT WE DON'T WISH TO SHARE

7     AND OTHER PEOPLE TO MAKE.

8            SO WITH THAT, I WOULD SAY FROM A

9     TECHNICAL PERSPECTIVE, IT INCLUDES TRADEMARKS,

10    TRADE DRESS, ALL THE DESIGN PATENTS, AND A SMALL

11    SET OF UTILITY PATENTS THAT REALLY DEAL WITH USER

12    INTERFACE ELEMENTS, AND MAYBE A COUPLE OF

13    ASSOCIATED FEATURES.

14    Q    AND HOW DOES THIS CATEGORY RELATE TO WIRELESS

15    DEVICES?

16    A    WELL, I GUESS YOU DON'T REALLY NEED A LICENSE

17    TO THIS.  FROM OUR PERSPECTIVE, UNLESS YOU'RE

18    TRYING TO BUILD AN IPHONE KNOCK-OFF OR A CLONE OR

19    AN IPAD CLONE, YOU WOULDN'T NEED A LICENSE TO THIS

20    SET OF I.P.

21    Q    AND TO BE CLEAR, WHAT IS APPLE'S POSITION ON

22    LICENSING THIS PORTION OF ITS PORTFOLIO?

23    A    WE STRONGLY DESIRE NOT TO LICENSE IT.  IT'S

24    NOT AN AREA THAT WE LICENSE, AND OUR GOAL IN

25    LICENSING IS TO ENABLE PEOPLE TO DESIGN THEIR OWN
```

1957

1    PRODUCTS, NOT THE ABILITY TO JUST COPY OUR

2    PRODUCTS.

3    Q    HAS APPLE EVER LICENSED ANY OF THE PATENTS

4    WITHIN THIS CATEGORY?

5    A    CERTAINLY OVER TIME WE HAVE, BUT I CAN COUNT

6    THOSE INSTANCES ON ONE HAND QUITE EASILY.  AND WE

7    DO SO WITH RARE EXCEPTION AND WE DO IT CONSCIOUSLY

8    KNOWING THAT WE'RE NOT ENABLING SOMEBODY TO BUILD A

9    CLONE PRODUCT.

10   Q    MR. TEKSLER, I WANT TO SHIFT GEARS, IF I

11   COULD, AND TURN BACK THE CLOCK TO THE BEGINNING OF

12   THE APPLE/SAMSUNG DISPUTE.

13        DO YOU KNOW WHEN THAT DISPUTE BEGAN?

14   A    YES.  IT BEGAN IN THE SUMMER OF 2010.

15   Q    AND WHAT HAPPENED IN THE SUMMER OF 2010?

16   A    SO SAMSUNG INTRODUCED THEIR GALAXY S PHONE,

17   AND WITH THIS, WE WERE QUITE SHOCKED FOR A COUPLE

18   OF REASONS.

19        FIRST, THEY WERE A TRUSTED PARTNER OF

20   OURS AND WE DIDN'T UNDERSTAND HOW A TRUSTED PARTNER

21   WOULD BUILD A COPYCAT PRODUCT LIKE THAT.

22        AND THE SECOND ONE WAS THAT THE PRODUCT

23   WAS JUST WAY TOO CLOSE TO OUR PRODUCT.

24        SO WE TOOK IT SO SERIOUS THAT STEVEN JOBS

25   AND TIM COOK CONTACTED SAMSUNG EXECUTIVES AND MET

```
 1    WITH THEM TO RELAY OUR CONCERN.
 2              MS. MAROULIS:  YOUR HONOR, I MOVE TO
 3    STRIKE FOR LACK OF FOUNDATION ON THAT RESPONSE.
 4              THE COURT:  YOU'RE GOING TO HAVE TO LAY A
 5    FOUNDATION HOW HE KNOWS THAT.
 6    BY MR. MUELLER:
 7    Q    SURE.  MR. TEKSLER, WERE YOU AT APPLE AT THAT
 8    TIME?
 9    A    I WAS.
10    Q    WHAT WAS YOUR POSITION AT THAT TIME?
11    A    I WAS THE DIRECTOR OF APPLE I.P. AND STRATEGY.
12    Q    YES OR NO, WERE YOU PRIVY TO CONVERSATIONS
13    INVOLVING SAMSUNG?
14    A    YES, I WAS.
15              MR. MUELLER:  YOUR HONOR, I'VE LAID A
16    FOUNDATION.
17    Q    COULD YOU PLEASE TURN TO TAB 1 IN YOUR BINDER,
18    THAT'S PLAINTIFF'S EXHIBIT 52.
19              THE COURT:  I DON'T HAVE THE DIRECT
20    EXHIBITS TO MR. TEKSLER.  I THOUGHT THEY WERE
21    COMING.
22              MR. MUELLER:  I'M SORRY.  I THOUGHT YOU
23    HAD A BINDER.  I APOLOGIZE, YOUR HONOR.  THIS IS
24    TAB 1, PLAINTIFF'S EXHIBIT 52.
25    Q    MR. TEKSLER, DO YOU KNOW WHAT THIS DOCUMENT
```

```
 1    IS?

 2    A    I DO.

 3    Q    WHAT IS IT?

 4    A    IT'S A PRESENTATION THAT WAS GIVEN TO SAMSUNG

 5    IN AUGUST OF 2010.  IT'S ONE THAT I HELPED AUTHOR

 6    AND CREATE.

 7                MR. MUELLER:  YOUR HONOR, I OFFER IT.

 8                MS. MAROULIS:  YOUR HONOR, NO FURTHER

 9    OBJECTION, BUT YOUR HONOR RULED THAT THE WITNESS

10    WOULD NOT BE ALLOWED TO TESTIFY ABOUT THE MEETING

11    ITSELF.

12                THE COURT:  AND I'LL CONTINUE THAT

13    RULING.  IT'S ADMITTED.

14                (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

15                52, HAVING BEEN PREVIOUSLY MARKED FOR

16                IDENTIFICATION, WAS ADMITTED INTO

17                EVIDENCE.)

18                THE COURT:  GO AHEAD.

19    BY MR. MUELLER:

20    Q    MR. TEKSLER, WE'RE PUTTING PLAINTIFF'S EXHIBIT

21    52 ON THE SCREEN.  THIS IS TITLED "SAMSUNG'S USE OF

22    APPLE PATENT IN SMARTPHONES."

23                AND COULD YOU REMIND US WHAT THIS

24    DOCUMENT IS?  IT'S A PRESENTATION?

25    A    YES, IT'S A PRESENTATION GIVEN TO SAMSUNG IN
```

```
 1      AUGUST OF -- AUGUST 4TH OF 2010.

 2      Q    WHO DELIVERED THE PRESENTATION?

 3      A    CHIP LUTTON DID.

 4      Q    WHO IS CHIP LUTTON?

 5      A    CHIP LUTTON WAS THE CHIEF PATENT COUNSEL AND

 6      MY MANAGER AT THAT TIME.

 7      Q    MR. LUTTON IS STILL AT APPLE?

 8      A    NO, HE'S NOT.

 9      Q    NOW, WERE YOU AT THIS PRESENTATION?

10      A    I WAS NOT.

11      Q    BUT YOU NOW WHEN IT WAS GIVEN?

12      A    I DO.

13      Q    WHAT WAS THAT DATE?

14      A    AUGUST 4TH, 2010.

15      Q    LET'S TURN, IF WE COULD, TO PAGE 17 OF THE

16      PRESENTATION AND PUT IT ON THE SCREEN.

17              WHAT DO WE SEE HERE?

18      A    SO THIS WAS REALLY A CHAPTER THAT WAS ENTITLED

19      "SAMSUNG COPYING IPHONE," AND WHAT WE WERE -- WHAT

20      WE WERE RELAYING WITH THIS CONTENT WAS REALLY ABOUT

21      THE REMARKABLE SIMILARITY OF THE TWO PRODUCTS, ALL

22      THE WAY FROM THE OVERALL APPEARANCE OF THE PRODUCT

23      DOWN TO THE ARRANGEMENT, THE FOUR-BY-FOUR

24      ARRANGEMENT OF THE ICONS, THE SIMILARITY OF THE

25      ICONS, THE PERSISTENT DOCK THAT YOU HAVE AT THE
```

```
 1    BOTTOM THAT DOESN'T CHANGE WITH THE SCREENS.

 2              AND WE DETAILED IT, YOU KNOW, WITH

 3    SUBSEQUENT PAGES THAT REALLY TALKED ABOUT THESE,

 4    THE USER INTERFACE ELEMENTS THAT WERE SIMILAR ALL

 5    THE WAY DOWN TO THE PACKAGING.

 6    Q    LET'S TURN --

 7              MS. MAROULIS:  YOUR HONOR, I MOVE TO

 8    STRIKE.  THIS WAS A LAY OPINION ON INFRINGEMENT

 9    ISSUES AND, AGAIN, THE WITNESS WAS NOT DISCLOSED.

10              MR. MUELLER:  YOUR HONOR, I'M SIMPLY

11    ASKING MR. TEKSLER ABOUT A DOCUMENT THAT HE HELPED

12    AUTHOR.

13              THE COURT:  OVERRULED.

14    BY MR. MUELLER:

15    Q    LET'S PUT PAGE 14 ON THE SCREEN IF WE COULD.

16              WHAT DO WE SEE HERE?

17    A    SO IN THIS PAGE WHAT WE WERE DESCRIBING --

18    THIS WAS PART OF THE CHAPTER WHERE WE TALK ABOUT

19    THE ARCHITECTURE OF SAMSUNG PHONES, AND

20    SPECIFICALLY HERE WE'RE REFERRING TO THE ANDROID

21    APPLICATION FRAMEWORK THAT'S HIGHLIGHTED IN THE

22    LEFT ARCHITECTURE DIAGRAM THERE.

23              AND WE WERE COMMUNICATING TO SAMSUNG BY

24    THIS SLIDE THAT THESE ARE SOME OF THE, SOME OF THE

25    PATENTS -- IT'S JUST REPRESENTATIVE OF A LIST OF
```

```
 1    PATENTS THAT SAMSUNG INFRINGES WITH THIS PORTION OF
 2    THE ARCHITECTURE.
 3    Q    I'D LIKE TO DIRECT YOUR ATTENTION, IF I COULD,
 4    MR. TEKSLER, TO U.S. PATENT NUMBER 7,469,381 ON
 5    THIS LIST.
 6              ARE YOU FAMILIAR WITH THAT PATENT?
 7    A    I AM.
 8    Q    WHAT IS IT?
 9    A    SO THIS PATENT RELATES TO SCROLL BOUNCING AND,
10    I GUESS PUT SIMPLY, IT'S A USER INTERFACE ELEMENT
11    WHEN YOU'RE PANNING THROUGH A LIST, WHEN YOU GET TO
12    THE BOTTOM OF THE LIST, HOW DO YOU KNOW THAT YOU
13    GOT TO THE BOTTOM?
14              WELL, WE HAVE A RUBBER BAND LIKE EFFECT
15    THAT HAPPENS WHEN YOU GET TO THE BOTTOM OF THE
16    LIST.  IF YOU DIDN'T HAVE SOMETHING LIKE THIS, YOU
17    WOULDN'T KNOW, IS THE COMPUTER HUNG UP?  SO YOU
18    NEED TO HAVE SOME KIND OF USER INTERFACE ELEMENT
19    AND THIS IS HOW WE DO IT.
20              MS. MAROULIS:  YOUR HONOR, MOVE TO
21    STRIKE.  LACK OF FOUNDATION AND OPINION TESTIMONY.
22              MR. MUELLER:  YOUR HONOR, AGAIN, THIS IS
23    A PORTION OF A PRESENTATION THAT MR. TEKSLER HELPED
24    TO AUTHOR.  I'M JUST ASKING ABOUT ONE ENTRY ON THIS
25    PAGE.
```

```
 1              THE COURT:  ALL RIGHT.  OVERRULED.
 2      BY MR. MUELLER:
 3      Q    MR. TEKSLER, IF YOU COULD, PLEASE TURN TO TAB
 4      2 IN YOUR BINDER, AND THIS IS PDX 32.  IF WE COULD
 5      ALSO PUT THAT ON THE SCREEN.
 6              MR. TEKSLER, THIS SHOWS SEVEN PATENT
 7      COVERS.  ARE YOU FAMILIAR WITH THESE PATENTS?
 8      A    I AM.
 9      Q    WHAT ARE THEY?
10      A    THESE ARE THE PATENTS --
11              MS. MAROULIS:  OBJECTION, CALLS FOR
12      OPINION TESTIMONY.  LACKS FOUNDATION.
13              THE COURT:  WHAT ARE YOU ASKING?
14              MR. MUELLER:  I MERELY WANTED TO GET
15      ACROSS THAT THESE ARE THE ASSERTED PATENTS IN THIS
16      CASE.
17              THE COURT:  IS THERE ANY QUESTION ABOUT
18      THAT SO FAR?
19              MR. MUELLER:  I CAN REPHRASE IF YOU -- IF
20      I MIGHT, YOUR HONOR.
21      Q    ARE THESE THE SEVEN ASSERTED PATENTS?
22      A    YES, THEY ARE.
23      Q    WHERE DO THESE FALL, THESE SEVEN PATENTS,
24      WITHIN THE CATEGORIES YOU DESCRIBED EARLIER IN THE
25      APPLE PORTFOLIO?
```

1    A    CERTAINLY.  SO THERE'S FOUR DESIGN PATENTS,

2    AND ALL FOUR DESIGN PATENTS FALL INTO APPLE'S

3    UNIQUE USER EXPERIENCE.

4             AND THEN THE THREE UTILITY PATENTS THAT

5    ARE LISTED HERE GENERALLY RELATE TO USER INTERFACE

6    AND FEATURES THAT WE WOULD ALSO PUT IN THAT SAME

7    CATEGORY OF APPLE'S UNIQUE USER INTERFACE, OR USER

8    EXPERIENCE.

9             MR. MUELLER:  THANK YOU, SIR.

10            NO FURTHER QUESTIONS.

11            THE COURT:  ALL RIGHT.  THE TIME IS NOW

12   4:22.

13                    **CROSS-EXAMINATION**

14   BY MS. MAROULIS:

15   Q    GOOD AFTERNOON, MR. TEKSLER.  HOW ARE YOU?

16   A    GOOD AFTERNOON.

17   Q    MY NAME IS VICTORIA MAROULIS.  I'M COUNSEL FOR

18   SAMSUNG.  AND SEEING HOW IT'S LATE FRIDAY

19   AFTERNOON, I'LL BE VERY BRIEF.

20            YOU TESTIFIED THAT YOU PREPARED A

21   POWERPOINT FOR A MEETING BETWEEN APPLE AND SAMSUNG

22   IN AUGUST 2010.  IS THAT CORRECT?

23   A    I BELIEVE THAT WAS KEY NOTE, BUT YES.

24   Q    AND YOU DIDN'T PERSONALLY ATTEND THE MEETING

25   IN QUESTION; RIGHT?

1    A    NO, I DID NOT.

2    Q    YOU CANNOT TELL US FROM YOUR PERSONAL

3    KNOWLEDGE ANYTHING ABOUT THAT MEETING AND WHAT WAS

4    PRESENTED; CORRECT?

5    A    I KNOW THAT THAT WAS PRESENTED.  WE LATER SENT

6    SAMSUNG THE PRESENTATION AND, IN SUBSEQUENT

7    MEETINGS WITH SAMSUNG, WE REFERRED BACK TO THAT

8    PRESENTATION AND TO THE DIALOGUE THAT HAPPENED THAT

9    DAY.  SO THAT'S --

10   Q    BUT FROM PERSONAL KNOWLEDGE, YOU DO NOT KNOW

11   WHAT OCCURRED AT THAT MEETING AND WHAT WAS SHOWN

12   AND WHAT WAS NOT SHOWN; CORRECT?

13   A    OKAY, CERTAINLY.

14   Q    AND THE POWERPOINT PRESENTATION THAT YOU

15   PREPARED IS EXHIBIT 52 IN EVIDENCE; CORRECT?  IF

16   YOU CAN LOOK IN YOUR CROSS-EXAMINATION BINDER AT

17   TAB 52, DO YOU SEE THAT?

18   A    I DO.

19   Q    IF YOU LOOK AT PAGES 12 THROUGH 14, DO YOU SEE

20   A VARIETY OF PATENTS LISTED THERE?

21   A    YES, I DO.

22   Q    OKAY.  AND DO YOU REMEMBER, ON DIRECT, JOE

23   ASKED YOU ABOUT THE SEVEN PATENTS ASSERTED IN THIS

24   CASE; CORRECT?

25   A    YES, THAT'S CORRECT.

1   Q    FOUR OF THEM WERE DESIGN PATENTS?

2   A    YES, THAT'S CORRECT.

3   Q    ONE OF THOSE DESIGN PATENT PATENTS WAS D'677;

4   RIGHT?

5   A    I BELIEVE THAT'S CORRECT, YES.

6   Q    THAT PATENT IS NOWHERE IN THIS PRESENTATION;

7   IS THAT CORRECT?

8   A    IT'S NOT ENUMERATED.

9   Q    IT'S NOT MENTIONED AT ALL AS A PATENT, THE

10  D'677; RIGHT?

11  A    SO I THINK WHAT I WOULD SAY IS I AGREE THAT

12  IT'S NOT ENUMERATED IN THE PRESENTATION.

13          WHEN WE WERE PREPARING THE, THE POINTS

14  THAT WE WANTED TO GET ACROSS -- AND I BELIEVE THAT

15  WAS BACK IN SLIDE 17 OF THIS PRESENTATION -- WE DID

16  SAY THAT THERE WAS A REMARKABLE SIMILARITY BETWEEN

17  THE PRODUCTS AND, IN DOING SO, WE DID TALK ABOUT

18  DESIGN PATENTS.

19  Q    SIR, THIS PRESENTATION DOES NOT MENTION THE

20  WORD "DESIGN PATENT" AT ALL; CORRECT?

21  A    I AGREE.

22  Q    AND DESIGN PATENT '087 THAT YOU REVIEWED WITH

23  COUNSEL IS ALSO NOT MENTIONED IN THIS PRESENTATION;

24  IS THAT RIGHT?

25  A    I AGREE.

3967

```
1    Q    AND DESIGN PATENT '889 IS SIMILARLY NOT
2    MENTIONED IN THIS PRESENTATION; CORRECT?
3    A    I AGREE.
4    Q    AND SO IS D'305, THAT IS ALSO NOT MENTIONED IN
5    THE PRESENTATION; RIGHT?
6    A    I AGREE.
7    Q    YOU ALSO LOOKED AT SEVERAL UTILITY PATENTS
8    WITH COUNSEL; IS THAT RIGHT?
9    A    I DID.
10   Q    ONE OF THEM WAS '163 PATENT; CORRECT?
11   A    I BELIEVE THAT'S CORRECT, YES.
12   Q    THAT PATENT IS NOT ENUMERATED ANYWHERE IN THIS
13   PRESENTATION WE JUST LOOK AT; RIGHT?
14   A    THAT'S CORRECT.
15   Q    AND THE '915 PATENT THAT YOU ALSO LOOKED AT IN
16   YOUR DIRECT TESTIMONY IS ALSO NOWHERE MENTIONED;
17   CORRECT?
18   A    THAT'S CORRECT.
19   Q    THIS PRESENTATION THAT YOU PREPARED FOR
20   SAMSUNG DOES NOT HAVE ANY MENTION OF TRADE DRESS;
21   RIGHT?
22   A    AGAIN, I THINK I WOULD PUT IT INTO THE SAME
23   CATEGORY OF BULLET POINTS THAT WE TALKED ABOUT.
24   Q    SIR, YOU'RE A LICENSING PROFESSIONAL.  YOU
25   KNOW WHAT A REGISTERED TRADE DRESS IS; CORRECT?
```

```
1    A    I AM, YES.

2    Q    SO NOWHERE IN THIS PRESENTATION IS THERE

3    MENTION OF A REGISTERED TRADE DRESS FOR AN IPHONE;

4    CORRECT?

5    A    I AGREE THAT THERE IS NOT.

6    Q    AND THERE'S NO MENTION OF UNREGISTERED TRADE

7    DRESS FOR IPHONE AS WELL; CORRECT?

8    A    I AGREE THAT IT'S NOT WRITTEN ON THE SLIDES.

9    Q    AND THERE'S NO UNREGISTERED TRADE DRESS FOR

10   IPAD; CORRECT?

11   A    I AGREE.

12   Q    EXHIBIT 52 DOESN'T SAY ANYWHERE THAT APPLE

13   WOULD NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; IS

14   THAT RIGHT?

15   A    I AGREE.

16   Q    AND THE PRESENTATION DOES NOT IDENTIFY ANY

17   UTILITY PATENTS THAT APPLE WOULD NOT LICENSE TO

18   SAMSUNG; IS THAT RIGHT?

19   A    I AGREE.

20   Q    PLEASE TAKE A LOOK AT EXHIBIT DX 586 IN YOUR

21   BINDER.  THIS IS A PRESENTATION THAT YOU MADE TO

22   SAMSUNG IN OCTOBER 2010; CORRECT?

23   A    YES, THAT'S CORRECT.

24   Q    YOU PREPARED IT YOURSELF?

25   A    I DID.
```

```
1    Q    AS PART OF DOING BUSINESS AS A LICENSING

2    OFFICER AT APPLE; CORRECT?

3    A    YES, THAT'S CORRECT.

4             MS. MAROULIS:  YOUR HONOR, I MOVE EXHIBIT

5    586 INTO EVIDENCE.

6             MR. MUELLER:  NO FURTHER OBJECTIONS, YOUR

7    HONOR, SUBJECT TO THE LIMITING INSTRUCTION THAT

8    YOUR HONOR MENTIONED.

9             THE COURT:  RIGHT.  AND THERE IS A --

10   THIS IS ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             586, HAVING BEEN PREVIOUSLY MARKED FOR

13             IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15             THE COURT:  YOU MAY CONSIDER THIS -- YOU

16   MAY NOT CONSIDER THIS EVIDENCE TO PROVE OR DISPROVE

17   THE VALIDITY OR INVALIDITY OF THE CLAIM OR THE

18   AMOUNT OF THE DISPUTED CLAIM.

19             HOWEVER, YOU MAY CONSIDER THIS EVIDENCE

20   FOR SOME OTHER PURPOSE, FOR EXAMPLE, WHETHER OR NOT

21   SAMSUNG LACKED NOTICE OF APPLE'S INFRINGEMENT

22   CLAIMS.

23             OKAY.  GO AHEAD, PLEASE.

24   BY MS. MAROULIS:

25   Q    MR. TEKSLER, NOWHERE IN EXHIBIT 586 DOES APPLE
```

3970

```
1     IDENTIFY ANY PATENTS; CORRECT?

2     A    THAT'S CORRECT.

3     Q    AND NOWHERE IN THIS WRITTEN PRESENTATION DOES

4     IT SAY THAT APPLE WOULD NOT LICENSE ITS DESIGN

5     PATENTS TO SAMSUNG; CORRECT?

6     A    I'M NOT SURE THAT I AGREE WITH THAT.  I KNOW

7     THAT WE TALKED ABOUT THAT AND THAT THERE WAS A

8     SPECIFIC BULLET, I BELIEVE, ON ONE OF THE PAGES

9     THAT ADDRESSED THAT.

10    Q    SIR, I'M NOT ASKING YOU ABOUT THE MEETING

11    ITSELF.  I'M ASKING YOU ABOUT THE PRESENTATION.

12    NOWHERE IN THIS DOCUMENT, 586, IS THERE A STATEMENT

13    THAT APPLE WOULD NOT LICENSE DESIGN PATENTS TO

14    SAMSUNG?

15    A    I THINK THERE IS A BULLET IN HERE THAT SAYS

16    SPECIFIC APPLE PROPRIETARY FEATURES TO BE

17    DISCUSSED.

18              AND IN THAT CONSTRUCT, WE TALKED ABOUT

19    NOT HAVING THE ABILITY TO CLONE OUR PRODUCTS.

20    Q    AGAIN, WITHIN THE CONTEXT OF THIS

21    PRESENTATION, THERE'S NO STATEMENT THAT APPLE WOULD

22    NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; CORRECT?

23    A    I AGREE.

24    Q    AND NOWHERE IN THIS DOCUMENT DOES APPLE SAY

25    THAT IT WOULD NOT LICENSE CERTAIN UTILITY PATENTS
```

3971

```
 1    TO SAMSUNG; CORRECT?

 2    A    SUBJECT TO THE SAME, YOU KNOW, POINT THAT I

 3    MADE EARLIER, YES.

 4    Q    LET'S PUT UP 586, PAGE 13, PLEASE.

 5          AT THE TOP OF THE PAGE, IT SAYS "WE WILL

 6    PROVIDE SAMSUNG WITH A NUMBER OF OPTIONS FOR

 7    OBTAINING A COST-EFFECT LICENSE TO OUR PATENT

 8    PORTFOLIO."

 9          DID I READ THIS CORRECTLY?

10    A    YES, THAT'S CORRECT.

11    Q    AND THIS REFERS TO LICENSING PATENT PORTFOLIO;

12    RIGHT?

13    A    YES, THAT'S CORRECT.

14    Q    IT DOES NOT SAY "PATENT PORTFOLIO EXCEPT

15    DESIGN PATENTS."  CORRECT?

16    A    NO, I AGREE THE SLIDE DOESN'T SAY THAT.

17    Q    AND IT DOESN'T SAY "EXCEPT FOR CERTAIN UTILITY

18    PATENTS."  CORRECT?

19    A    THAT'S CORRECT.

20    Q    IN EXHIBIT 586, APPLE PROPOSED CERTAIN

21    DISCOUNTS ON THE LICENSE FEES BASED ON CERTAIN

22    ELEMENTS; CORRECT?

23    A    YES, THAT'S CORRECT.

24    Q    AND ONE OF THOSE ELEMENTS WERE PROPRIETARY,

25    SO-CALLED PROPRIETARY FEATURES?
```

1    A    YES.  I'M NOT SURE THAT WE'RE USING THE WORD

2    THE SAME WAY, BUT YES.

3    Q    OKAY.  AND APPLE DEFINED SOME OF ITS

4    PROPRIETARY FEATURES, WHAT IT'S CALLED DISTINCTIVE

5    INDUSTRIAL DESIGN; CORRECT?

6    A    APPLE DEFINED SOME OF IT AS -- OR WHAT I DID

7    SPECIFICALLY, I SHOULD SAY, IS I DEFINED THEM AS

8    DISTINCTIVE INDUSTRIAL DESIGNS, THAT'S CORRECT.

9    Q    AND APPLE NEVER GAVE SAMSUNG ANYTHING IN

10   WRITING THAT IDENTIFIED PATENTS OR FEATURES THAT

11   WERE NOT AVAILABLE FOR LICENSE; IS THAT RIGHT?

12   A    IN THIS PRESENTATION?  OR EVER?

13   Q    IN THIS PRESENTATION, SIR.

14   A    IN THIS PRESENTATION, NO, WE HAD NOT GOTTEN TO

15   THAT POINT OF THE DISCUSSION.  WE HAD JUST SIMPLY

16   MENTIONED THAT THERE WERE SOME THINGS THAT YET HAD

17   TO BE DISCUSSED.

18   Q    OKAY.  SIR, IT'S TRUE, IS IT NOT, THAT APPLE

19   LICENSED ITS DESIGN PATENTS TO ANOTHER PARTY?

20   A    YES.  I THINK I SAID EARLIER THAT THERE WERE

21   LESS THAN A HANDFUL OF SUCH EVENTS.

22   Q    BUT THOSE PATENTS HAVE BEEN LICENSED BEFORE;

23   CORRECT?

24   A    YES.

25   Q    ARE YOU AWARE OF WHETHER ANYONE HAS EVER PAID

3973

```
 1    APPLE A PER UNIT ROYALTY OF $2.02 FOR THE '381

 2    PATENT?

 3    A    NO, I'M NOT AWARE.

 4               (PAUSE IN PROCEEDINGS.)

 5    BY MS. MAROULIS:

 6    Q    I'M SORRY, SIR?

 7    A    NO, I'M NOT AWARE OF THAT.

 8               MS. MAROULIS:  OKAY.  YOUR HONOR, WE'RE

 9    ALMOST AT THE END.  SHOULD WE STOP OR CONTINUE?

10               THE COURT:  IT'S NOW 4:30, SO WE CAN END

11    FOR TODAY.

12               MS. MAROULIS:  OKAY.

13               THE COURT:  SO WE'LL CONTINUE WITH THE

14    CROSS ON MONDAY.

15               ALL RIGHT.  SO PLEASE DON'T DISCUSS THE

16    CASE WITH ANYONE, DON'T DO ANY RESEARCH, PLEASE

17    KEEP AN OPEN MIND, AND YOU'RE EXCUSED FOR TODAY AND

18    WE'LL SEE YOU BACK ON MONDAY AT 9:00 O'CLOCK.

19               AND NEXT WEEK WE ARE GOING FIVE DAYS

20    STRAIGHT, OKAY?

21               THANK YOU FOR YOUR PATIENCE AND YOUR

22    SERVICE.

23               AND IF YOU WOULD, PLEASE, LEAVE YOUR JURY

24    BOOKS IN THE JURY ROOM OVER THE WEEKEND.

25               OKAY.  THANK YOU.
```

3974

```
 1                 (WHEREUPON, THE FOLLOWING PROCEEDINGS
 2      WERE HELD OUT OF THE PRESENCE OF THE JURY:)
 3                 THE COURT:  THE RECORD SHOULD REFLECT THE
 4      JURY HAS LEFT THE COURTROOM.
 5                 YOU MAY STEP DOWN.
 6                 THE WITNESS:  THANK YOU.
 7                 THE COURT:  AND PLEASE TAKE A SEAT.
 8                 ARE YOU -- IS APPLE NOT CALLING ANY OF
 9      THE INDIVIDUALS, THE FOUR INDIVIDUALS WHO WERE
10      IDENTIFIED FOR DEPOSITION DESIGNATIONS?
11                 MR. MCELHINNY:  I'M -- I'M SORRY, YOUR
12      HONOR.  I'M NOT SURE I UNDERSTAND YOUR QUESTION.
13                 WE WILL BE PLAYING THE DEPOSITION
14      DESIGNATIONS.
15                 THE COURT:  OF JUNWON LEE AND DONG HOON
16      CHANG AND TIMOTHY BENNER AND TIMOTHY SHEPPARD?
17                 MR. MCELHINNY:  YES, YOUR HONOR.
18                 THE COURT:  OKAY.  SO THAT'S WHAT YOU'LL
19      DO ON MONDAY.
20                 MR. MCELHINNY:  YES, YOUR HONOR.
21                 THE COURT:  AFTER MR. TEKSLER?
22                 MR. MCELHINNY:  YES, YOUR HONOR.
23                 THE COURT:  OKAY.
24                 MR. MCELHINNY:  AND THEN MR. MUSIKA.
25                 THE COURT:  AND THEN MR. MUSIKA.  AND
```

3975

```
 1    THEN WILL YOU HAVE ANY ADDITIONAL WITNESSES OR DO
 2    YOU PLAN TO REST?
 3               MR. MCELHINNY:  WE PLAN TO REST AFTER
 4    MR. MUSIKA.
 5               THE COURT:  I SEE.  OKAY.  SO THEN THE
 6    ONLY OBJECTIONS THAT ARE LEFT, THEN, ARE
 7    MR. MUSIKA.
 8               AND THEN HAVE YOU REDESIGNATED THE
 9    DEPOSITION EXCERPTS THAT YOU WANT FOR MR. SHEPPARD?
10               MR. MCELHINNY:  WE HAVEN'T YET.  WE'LL DO
11    THAT TOMORROW, YOUR HONOR.
12               THE COURT:  OKAY.  I NEED THE OBJECTIONS
13    TO ANY WITNESSES TO BE FILED AT 8:00 A.M. THE DAY
14    BEFORE THE WITNESS TESTIFIES.  DOING IT AT 4:00
15    O'CLOCK JUST DOESN'T GIVE ME ENOUGH TIME.  OKAY?
16               MR. JACOBS:  SO, YOUR HONOR, THE PROBLEM
17    I THINK WE'RE GOING TO RUN INTO IS WE WILL FINISH
18    WITH MR. MUSIKA, AND THEN THERE'S THE SAMSUNG CASE
19    ABOUT WHICH WE KNOW ABSOLUTELY NOTHING.
20               THE COURT:  WELL, I ASSUME THAT SAMSUNG
21    ALSO IS GOING TO DO ITS ROLLING LIST OF SEVEN
22    WITNESSES THAT APPLE HAS DONE.
23               SO WHEN ARE YOU INTENDING TO FILE THAT,
24    UNDERSTANDING, I THINK, THAT YOUR CASE,
25    MR. VERHOEVEN, WILL START ON MONDAY.
```

1

2

3

4                     <u>CERTIFICATE OF REPORTER</u>

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                   /S/

                     _____
22                   LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
23

24                   DATED:  AUGUST 11, 2012

25

1989

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,                  )
                                 )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,        )
                                 )  AUGUST 13, 2012
8         VS.                    )
                                 )  VOLUME 7
9  SAMSUNG ELECTRONICS CO.,      )
   LTD., A KOREAN BUSINESS       )  PAGES 1989-2320
10 ENTITY; SAMSUNG               )
   ELECTRONICS AMERICA,          )
11 INC., A NEW YORK              )
   CORPORATION; SAMSUNG          )
12 TELECOMMUNICATIONS            )
   AMERICA, LLC, A DELAWARE      )
13 LIMITED LIABILITY             )
   COMPANY,                      )
14                               )
              DEFENDANTS.        )
15 _____

16         TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
               CERTIFICATE NUMBER 9595
24

25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                 BY:  HAROLD J. MCELHINNY
 3                                MICHAEL A. JACOBS
                                  RACHEL KREVANS
 4                           425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                 HALE AND DORR
 7                           BY:  WILLIAM F. LEE
                             60 STATE STREET
 8                           BOSTON, MASSACHUSETTS  02109

 9                           BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
10                           PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
12                           BY:  CHARLES K. VERHOEVEN
                             50 CALIFORNIA STREET, 22ND FLOOR
13                           SAN FRANCISCO, CALIFORNIA  94111

14                           BY:  VICTORIA F. MAROULIS
                                  KEVIN P.B. JOHNSON
15                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
16                           REDWOOD SHORES, CALIFORNIA  94065

17                           BY:  MICHAEL T. ZELLER
                                  WILLIAM C. PRICE
18                           865 SOUTH FIGUEROA STREET
                             10TH FLOOR
19                           LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

                    INDEX OF WITNESSES

PLAINTIFF'S

BORIS TEKSLER
        CROSS-EXAM BY MS. MAROULIS (RES.)  P. 2006
        REDIRECT EXAM BY MR. MUELLER       P. 2009
        RECROSS-EXAM BY MS. MAROULIS       P. 2019
        FURTHER REDIRECT EXAM              P. 2022

JUN WON LEE
        BY VIDEOTAPED DEPOSITION           P. 2023
                                              2025

DONG HOON CHANG
        BY VIDEOTAPED DEPOSITION           P. 2026


TIMOTHY BENNER
        BY VIDEOTAPED DEPOSITION           P. 2028
                                              2029

TIMOTHY SHEPPARD
        BY VIDEOTAPED DEPOSITION           P. 2030


TERRY MUSIKA
        DIRECT EXAM BY MS. KREVANS         P. 2031
        CROSS-EXAM BY MR. PRICE            P. 2098
        REDIRECT EXAM BY MS. KREVANS       P. 2160
        RECROSS-EXAM BY MR. PRICE          P. 2165
        FURTHER REDIRECT EXAM              P. 2171



DEFENDANT'S

BENJAMIN BEDERSON
        DIRECT EXAM BY MR. DEFRANCO        P. 2228
        CROSS-EXAM BY MR. JACOBS           P. 2254
        REDIRECT EXAM BY MR. DEFRANCO      P. 2269


ADAM BOGUE
        DIRECT EXAM BY MR. JOHNSON         P. 2274
        CROSS-EXAM BY MR. JACOBS           P. 2300

```
 1    A    ONCE AGAIN, THIS ISN'T MY INFORMATION.  THIS

 2    IS TAKEN NOT FROM APPLE OR FROM SAMSUNG IN THIS

 3    CASE.  THIS IS TAKEN -- YOU CAN SEE PERHAPS RIGHT

 4    DOWN THERE ON THE BOTTOM, SOURCE IDC WORLDWIDE

 5    QUARTERLY.

 6              IDC IS AN INDEPENDENT MARKETING

 7    ORGANIZATION THAT BOTH APPLE AND SAMSUNG USE TO

 8    HELP THEM IN DOING THEIR OWN MARKET RESEARCH.  SO

 9    THIS IS AN INDEPENDENT STUDY AND ANALYSIS THAT WAS

10    DONE BY IDC.

11    Q    OKAY.  LET'S TURN TO THE SPECIFIC DAMAGES

12    REMEDIES THAT YOU EVALUATED IN THIS CASE.

13              WHAT KINDS OF REMEDIES DID YOU APPLY WITH

14    RESPECT TO THE VARIOUS INTELLECTUAL PROPERTY RIGHTS

15    THAT APPLE HAS ASSERTED IN THE CASE?

16    A    I CONSIDERED THREE DIFFERENT FORMS OF REMEDY

17    IN TOTAL AS IT RELATES TO THE DESIGN, AND THAT

18    WOULD BE THE DESIGN PATENT AND THE TRADE DRESS.  I

19    CONSIDERED TWO FORMS OF DAMAGE.

20    Q    WHAT WERE THOSE TWO FORMS?

21    A    ONE, ONE IS CALLED SAMSUNG'S PROFITS, AND THE

22    OTHER IS CALLED APPLE'S LOST PROFITS.

23              TO PUT IT IN REAL STRAIGHT TERMS, IT'S

24    EITHER WHAT SAMSUNG HAS GAINED OR IT'S WHAT APPLE

25    HAS LOST.
```

3046

```
 1              IN THE CASE OF SAMSUNG'S GAIN, THAT'S
 2    SOMETIMES REFERRED TO AS AN UNJUST ENRICHMENT
 3    BECAUSE THE PRESUMPTION IS THEY'VE MADE THAT GAIN,
 4    THAT MONEY HAS SLID ACROSS THE SLIDE BECAUSE THEY
 5    VIOLATED APPLE'S INTELLECTUAL PROPERTY.
 6    Q    OKAY.  AND REMIND US AGAIN, WHICH TYPES OF
 7    INTELLECTUAL PROPERTY RIGHTS DID YOU USE THIS KIND
 8    OF ANALYSIS, THE SAMSUNG PROFIT OR APPLE'S LOST
 9    PROFITS FOR?
10    A    I USED THEM BOTH, AND WE'RE GOING TO SEE THE
11    SITUATION -- THIS ISN'T DOUBLE COUNTING.  I USED
12    THEM BOTH FOR THE DESIGN PATENTS AND TRADE DRESS.
13    Q    OKAY.  WHAT KIND OF REMEDY DID YOU LOOK AT FOR
14    VIOLATIONS OF APPLE'S UTILITY PATENT RIGHTS?
15    A    DIFFERENT COMBINATION THERE.  LOST PROFITS
16    AGAIN, WHICH I'VE ALREADY DESCRIBED, THAT'S APPLE'S
17    LOSS.
18              BUT HERE I'VE CONSIDERED IN THE
19    ALTERNATIVE WHAT'S CALLED A REASONABLE ROYALTY.
20    Q    OKAY.  HOW DID YOU -- WHAT WAS YOUR BASIS FOR
21    APPLYING A DIFFERENT KIND OF REMEDY FOR SOME KINDS
22    OF PATENT RIGHTS THAN OTHERS?
23    A    IT'S MY UNDERSTANDING OF WHAT IS THE ACCEPTED
24    DAMAGE METHODOLOGY TO BE USED, DEPENDING ON THE
25    TYPE OF INTELLECTUAL PROPERTY.  SO THAT'S WHY WE
```

```
1    SEE A SLIGHT CHANGE IN THE UTILITY PATENTS VERSUS

2    THE DESIGN AND TRADE DRESS.

3    Q    OKAY.  COULD WE LOOK AT SLIDE 34B.75.

4              WHAT IS SHOWN ON SLIDE 34B.75,

5    MR. MUSIKA?

6              MR. PRICE:  YOUR HONOR, I OBJECT.  HE'S

7    NOT A LAWYER.  I OBJECT TO SHOWING HIM LAW.

8              THE COURT:  I'VE OVERRULED THAT OBJECTION

9    IN MY ORDER OF LAST NIGHT, SO I'LL STILL OVERRULE

10   IT.

11             THE WITNESS:  YES.  THIS IS THE DAMAGES

12   DESCRIPTION UNDER THE LAW FOR DESIGN PATENT

13   DAMAGES.

14   BY MS. KREVANS:

15   Q    AND IS THIS THE TEST YOU APPLIED, THAT IS,

16   THAT THE -- IF THE DEFENDANT DID INFRINGE, THEY'RE

17   FOUND LIABLE TO THE EXTENT OF TOTAL PROFIT?

18   A    RIGHT.  KEEPING IN MIND, AGAIN, I'M MAKING NO

19   DETERMINATION ON WHETHER THEY DID OR DIDN'T

20   INFRINGE.  I'M ACCEPTING THAT AS AN ASSUMPTION.

21             BUT, YES, HAVING DONE THAT, I'VE USED THE

22   TOTAL PROFITS, AGAIN, OF SAMSUNG.

23   Q    OKAY.  COULD WE SEE SLIDE 34B.76, WHICH IS

24   HEADED TRADE DRESS DAMAGES.

25             IS THIS THE TEST FOR DAMAGES THAT YOU
```

```
 1    USED FOR TRADE DRESS VIOLATIONS?
 2    A    YES.  AND, AGAIN, WE CAN SEE IN THE
 3    ENUMERATION, ONE, DEFENDANT'S PROFITS, THAT WOULD
 4    BE SAMSUNG AGAIN; AND DAMAGES SUSTAINED BY
 5    PLAINTIFF, THAT WOULD BE LOST PROFITS; AND COSTS OF
 6    THE ACTION.  I'M NOT GIVING ANY OPINION ON THAT
 7    THIRD PIECE.
 8    Q    AND IF WE COULD SEE SLIDE 34B.74.  THIS ONE IS
 9    JUST HEADED PATENT DAMAGES.
10             WHAT IS THIS TEST?
11    A    YES.  AND THIS TEST BASICALLY SAYS THAT UNDER
12    A UTILITY PATENT, THE PATENTEE IS ENTITLED TO
13    DAMAGES ADEQUATE TO COMPENSATE FOR INFRINGEMENT,
14    BUT UNDER NO EVENT LESS THAN A REASONABLE ROYALTY.
15             SO THAT'S WHY YOU USE THOSE TWO FORMS,
16    LOST PROFITS OR, IN THE ALTERNATIVE, A REASONABLE
17    ROYALTY.
18    Q    OKAY.  YOU'VE TALKED, MR. MUSIKA, ABOUT THREE
19    DIFFERENT FORMS OF DAMAGES AND 22 MILLION PHONES
20    AND TABLETS.
21             DID YOU DO ANYTHING TO MAKE SURE THAT YOU
22    WERE NOT DOUBLE COUNTING THE DAMAGES FOR ANY ONE OF
23    THOSE PHONES AND TABLETS?
24    A    I DID.
25    Q    WHAT DID YOU DO?
```

3049

```
 1    A    WELL, IT'S -- IT'S -- IT'S EASY TO VISUALIZE,
 2    BUT IT'S HARD TO IMAGINE.
 3            BUT THE CALCULATION REALLY HAD TO BE DONE
 4    ON A PHONE-BY-PHONE, TABLET-BY-TABLET BASIS.  EACH
 5    PHONE, EACH TABLET DESERVES OR GETS ITS OWN DAMAGE,
 6    AND SO THAT CALCULATION HAD TO BE DONE INDIVIDUALLY
 7    ON EACH ONE OF THOSE PRODUCTS.
 8    Q    AND HOW DID YOU DECIDE, FOR EACH ONE OF THOSE
 9    PRODUCTS, WHICH OF THE THREE DIFFERENT KINDS OF
10    DAMAGES YOU DESCRIBED SHOULD BE ASSIGNED TO IT?
11    A    WELL, THERE WERE SEVERAL CRITERIA.  ONE WE
12    JUST WENT THROUGH, WHICH IS THE FORM OF DAMAGES.
13            ANOTHER WOULD BE THE TIME PERIOD IN
14    WHICH -- NOT ALL SALES OCCURRED AT THE SAME TIME.
15    THEY OCCURRED AT DIFFERENT TIMES.
16            AND NOT ALL THE INTELLECTUAL PROPERTY,
17    WHETHER IT WAS A UTILITY PATENT OR A DESIGN PATENT,
18    THEY DIDN'T ALL ISSUE AT ONCE.  SO THEY ISSUED AT
19    VARIOUS POINTS IN TIME.
20            SO IT'S REALLY THE INTERSECTION OF WHEN
21    SOMETHING WAS SOLD, WHICH FORM OF DAMAGES -- WHICH
22    FORM OF INTELLECTUAL PROPERTY IT IS ACCUSED OF, AND
23    THEN MAKING THAT CALCULATION ON, AGAIN, A
24    UNIT-BY-UNIT BASIS.
25    Q    OKAY.  COULD WE SEE SLIDE 34B.56.
```

2050

```
 1              WHAT HAVE YOU DEPICTED ON THIS SLIDE,
 2    MR. MUSIKA?
 3    A     I THINK THIS IS GOING TO HELP SHOW AND EXPLAIN
 4    WHAT I WAS JUST BRIEFLY TRYING TO EXPLAIN.
 5              I'VE GOT 22 PHONES AT THE TOP, AND THINK
 6    OF THESE AS EITHER PHONES OR TABLETS, IT DOESN'T
 7    MATTER.  BUT EACH ONE OF THOSE REPRESENTS A MILLION
 8    UNITS TO TRY AND KEEP US ORIENTED ON THE 22 MILLION
 9    TOTAL UNITS.
10              AND SO AS WE JUST WENT THROUGH, I HAVE
11    THREE FORMS OF DAMAGE.  EACH ONE OF THOSE PHONES,
12    EACH ONE OF THOSE 22 MILLION PHONES, HAS TO GO IN
13    ONE OF THOSE CATEGORIES, BUT NOT TWO CATEGORIES.
14    IF WE PUT IT IN TWO CATEGORIES, THEN WE'RE GOING TO
15    END UP WITH DOUBLE COUNTING.
16    Q    OKAY.  CAN YOU JUST WALK US THROUGH,
17    UNDERSTANDING THIS IS A SIMPLIFICATION, WALK US
18    THROUGH THE ALLOCATION THAT YOU MADE.
19    A     WELL, THE ALLOCATION THAT I MADE WAS I, I
20    FIRST -- I THINK THE NEXT SLIDE IS GOING TO SHOW
21    THE AMOUNT OF 17 MILLION UNITS SHOULD SLIDE DOWN,
22    AND I CALCULATED THEM AS SAMSUNG'S PROFITS.  THAT'S
23    THE UNJUST GAIN.  SO I'M USING THAT FORM OF DAMAGES
24    FOR APPROXIMATELY 17 MILLION OF THE TOTAL 22
25    MILLION.
```

```
 1    Q    OKAY.  HOW MANY OF THE 5 MILLION LEFT DID YOU

 2    PUT IN THE APPLE LOST PROFITS DAMAGES CATEGORY?

 3    A    I PUT TWO INTO THE LOST PROFITS CATEGORY, SO

 4    WE SHOULD HAVE TWO OF THOSE SLIDE DOWN, AND 2

 5    MILLION, APPROXIMATELY, COME DOWN THERE.

 6              AND THAT, OF COURSE, LEAVES THE 3

 7    MILLION, AND YOU CAN OF COURSE GUESS WHERE THOSE

 8    GO, DOWN TO THE REASONABLE ROYALTY.

 9              AND WE CAN SEE VERY CLEARLY THAT NO

10    INDIVIDUAL PRODUCT HAS HAD MORE THAN ONE DAMAGE

11    CALCULATED ON IT.

12    Q    OKAY.  THAT LOOKED EASY.

13              CAN YOU DESCRIBE FOR THE JURY THE ACTUAL

14    AMOUNT OF EFFORT THAT IT TOOK TO MAKE THESE

15    ALLOCATIONS AND THEN MAKE THOSE ONE, ONE PHONE BY

16    ONE TABLET DAMAGES CALCULATIONS THAT YOU MADE.

17    A    IT -- I CAN ASSURE YOU, IT'S NOT ME SITTING AT

18    A DESK WITH A CALCULATOR DOING 22 MILLION

19    CALCULATIONS.

20              IN FACT, BECAUSE OF THE VARIOUS

21    COMBINATIONS, THERE ARE LITERALLY HUNDREDS OF

22    MILLIONS OF CALCULATIONS, AND SO THE ONLY WAY,

23    PRACTICALLY, TO DO THIS IS TO WRITE A COMPUTER

24    PROGRAM.

25              AND SO OVER THE LAST YEAR AND A HALF TO
```

```
 1    TWO YEARS, I HAVE HAD A TEAM OF 20 PEOPLE,

 2    ECONOMISTS, PROGRAMMERS, STATISTICIANS AND C.P.A.'S

 3    DEVELOPING A MODEL THAT IS DYNAMIC ENOUGH TO TAKE

 4    IN ALL 22 MILLION AND MAKE CHANGES AND ADJUSTMENTS,

 5    SINCE THIS PROCESS WENT ON FOR A YEAR AND A HALF,

 6    AS NEW PRODUCTS CAME IN AND WENT OUT.

 7              AND ABOUT 7,000 TOTAL PROFESSIONAL HOURS

 8    WERE DEDICATED TOWARDS THE CREATION AND OPERATION

 9    OF THAT COMPUTER MODEL.

10    Q    THAT SOUNDS EXPENSIVE.  WAS IT EXPENSIVE?

11    A    IT WAS VERY EXPENSIVE.

12    Q    WHAT DID IT COST TOTAL FOR YOUR TEAM OF 23

13    PEOPLE?

14    A    20 PEOPLE, OVER MORE THAN A YEAR AND A HALF,

15    THAT 7,000 HOURS, WAS APPROXIMATELY $1,750,000.

16    Q    OKAY.  LET'S GO BACK TO THE FIRST CATEGORY YOU

17    TALKED ABOUT, THE SAMSUNG PROFIT CATEGORY.

18              ONCE YOU HAD ALLOCATED 17 MILLION PHONES

19    AND TABLETS TOTAL INTO THAT CATEGORY, WHAT WAS THE

20    NEXT STEP IN DETERMINING THE DAMAGES FOR THOSE 17

21    MILLION DEVICES?

22    A    WELL, IT'S, IT'S MAKING THE ACTUAL

23    CALCULATIONS.  IT'S FIGURING OUT HOW MUCH -- WE NOW

24    KNOW THE UNITS, BUT HOW MUCH DID SAMSUNG ACTUALLY

25    MAKE ON THOSE 17 MILLION?
```

2053

```
 1    Q    OKAY.  IF WE COULD SEE THE NEXT SLIDE.  WE'RE
 2    SHOWING $2.241 BILLION HERE.
 3              CAN YOU EXPLAIN TO THE JURY HOW YOU CAME
 4    UP WITH THAT NUMBER IN CONCEPT?
 5    A    IN CONCEPT, KEEP IN MIND THE 17 MILLION UNITS,
 6    AGAIN, AND IT'S -- IT'S FIGURING OUT HOW MUCH DID
 7    SAMSUNG ACTUALLY MAKE IN PROFIT ON EACH ONE OF
 8    THOSE UNITS, AS SIMPLISTICALLY MULTIPLICATION.
 9    IT'S THE UNITS TIMES THE PROFITS AND THAT GETS YOU
10    TO $2.2 BILLION.
11    Q    WHAT WAS THE SOURCE OF THE INFORMATION YOU
12    USED FOR THE PURPOSES OF MAKING THESE CALCULATIONS?
13    A    THESE NUMBERS ARE, IN THIS CASE ARE SAMSUNG'S
14    NUMBERS.  WHEN I'M TALKING ABOUT SAMSUNG'S PROFIT,
15    THESE ARE NUMBERS THAT COME DIRECTLY FROM SAMSUNG'S
16    FINANCIAL RECORDS.
17    Q    OKAY.  COULD WE SEE SLIDE 34B.15.
18              STARTING HERE -- I KNOW YOU HAVE A SERIES
19    OF SLIDES HERE, MR. MUSIKA.  CAN YOU WALK US
20    THROUGH THE NATURE OF THE CALCULATION YOU DID TO
21    ARRIVE AT THE $2.24 BILLION PROFIT NUMBER FOR THE
22    $17 MILLION PHONES -- 17 MILLION PHONES?
23    A    YES.  WELL, THERE'S THE $8.1 BILLION NUMBER
24    AGAIN -- PARDON ME -- AND HOPEFULLY WE CAN REMEMBER
25    THAT WAS THE TOTAL OF THE ACCUSED SALES.
```

3082

```
 1    FOUNDATION.
 2               MS. KREVANS:  AGAIN, YOUR HONOR, WE'VE
 3    LAID THE FOUNDATION AND IT'S A SAMSUNG ADMISSION.
 4               THE COURT:  IT'S ADMITTED.
 5               (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER
 6               194, HAVING BEEN PREVIOUSLY MARKED FOR
 7               IDENTIFICATION, WAS ADMITTED INTO
 8               EVIDENCE.)
 9    BY MS. KREVANS:
10    Q    WHAT IS EXHIBIT 194, MR. MUSIKA?
11    A    IT'S A, AN INTERNAL E-MAIL FROM SAMSUNG
12    EXECUTIVES TO OTHER SAMSUNG EXECUTIVES.
13    Q    AND THE DATE OF THIS DOCUMENT IS?
14    A    MARCH 2ND, 2010.
15    Q    AND WHO IS IT -- WHAT IS THE SUBJECT MATTER
16    INDICATING?
17    A    THE SUBJECT SAYS "TO UX," USER EXPERIENCE,
18    "EXECUTIVES."
19    Q    WHAT PART OF THIS MARCH 2ND, 2010 E-MAIL DID
20    YOU FIND RELEVANT TO THE DEMAND OPINIONS THAT YOU
21    FORMED?
22    A    GO DOWN ONE, TWO, THREE, FOUR, FIVE PARAGRAPHS
23    AND HIGHLIGHT THAT.  YES.
24               IT SAYS, "I AM NOT SAYING TO MAKE A UX
25    THAT IS EXACTLY IDENTICAL TO THE IPHONE, BUT I AM
```

```
 1    SAYING TO LEARN THE WISDOM OF THE IPHONE AND
 2    RECOGNIZE THE STANDARD OF THE INDUSTRY WHICH WAS
 3    SET BY THEM ALREADY."
 4    Q    LET'S TURN BACK TO YOUR SLIDE 34B.32, AND LOOK
 5    AT THE SECOND FACTOR YOU CONSIDERED, WHICH WAS
 6    MARKET ALTERNATIVES.
 7              WHAT EVIDENCE DID YOU FIND WHEN YOU
 8    LOOKED AT MARKET ALTERNATIVES?
 9    A    UM --
10    Q    AND LET ME FIRST ASK YOU, WHAT DO YOU MEAN BY
11    "MARKET ALTERNATIVES"?
12    A    SO I THINK YOU PHRASED IT WELL, IS IF SAMSUNG
13    DIDN'T MAKE THE SALE, WOULD APPLE HAVE MADE THE
14    SALE?
15              SO IF, IF THERE WERE OTHER ALTERNATIVES
16    IN THE MARKETPLACE, THEN APPLE WOULDN'T MAKE EVERY
17    ONE OF THOSE 22 MILLION SALES.  OF COURSE I DIDN'T
18    CALCULATE LOST PROFITS ON THE 22 MILLION.  YOU MAY
19    RECALL IT WAS ONLY 2 MILLION.
20              PART OF THE REASON WAS BECAUSE ALTHOUGH
21    I'M NOT OFFERING AN OPINION THAT THERE ARE MARKET
22    ALTERNATIVES, I CONSERVATIVELY SAID, WELL, I'M JUST
23    GOING TO ASSUME AND ACCEPT THAT SAMSUNG'S OTHER
24    PRODUCTS AND THAT EVERY OTHER MARKET PARTICIPANT IS
25    A MARKET ALTERNATIVE.
```

```
 1    Q    COULD YOU EXPLAIN TO US THE EVIDENCE THAT YOU

 2    FOUND WHEN YOU LOOKED AT THIS QUESTION.

 3    A    I DID TWO, TWO RESTRICTIONS.  ONE, I, I LOOKED

 4    AT THE TIME PERIOD AND I TOOK THAT TWO YEARS,

 5    BASICALLY THE TWO-YEAR TIME PERIOD OF 2010, 2011,

 6    2012, AND I SHRUNK THAT -- SORRY -- I SHRUNK THAT

 7    DOWN.  I ASSUMED THAT WITH EACH PATENT OR EACH

 8    TRADE DRESS THAT SAMSUNG WOULD SIMPLY NOT LEAVE THE

 9    MARKET, THAT THEY WOULD DO SOMETHING TO TRY TO GET

10    BACK INTO THE MARKET.

11          SO I LIMITED MY CALCULATIONS TO LOST

12    PROFITS TO ONLY A TIME PERIOD WHICH WOULD BE

13    ASSOCIATED WITH THE TIME SAMSUNG WOULD BE OUT OF

14    THE MARKET.

15          SO DEPENDING ON THE INTELLECTUAL

16    PROPERTY, IT WAS AS LITTLE AS ONLY ONE MONTH OR AS

17    HIGH AS EIGHT MONTHS, BUT NOT THE ENTIRE TIME

18    PERIOD.  SO THAT 22 MILLION SHRINKS DOWN TO EIGHT

19    MONTHS OR ONE MONTH, RIGHT, BASED ON THAT.

20          AND THERE WAS ONE OTHER THING.

21    Q    YES, THE MARKET SHARE ALLOCATION.  WHAT ARE

22    YOU REFERRING TO THERE?

23    A    MARKET SHARE ALLOCATION, THERE WAS A FURTHER

24    CUT.  ONCE I GOT IT DOWN TO JUST THAT TIME PERIOD,

25    THE SALES THAT WOULD HAVE BEEN MADE IN THAT TIME
```

1    PERIOD, THEN I DISTRIBUTED THOSE SALES TO ALL THE

2    MARKET PARTICIPANTS.

3              I ONLY PUT IN APPLE'S PILE THEIR MARKET

4    SHARE.  I GAVE BACK TO SAMSUNG THEIR MARKET SHARE.

5    I GAVE NOKIA THEIR MARKET SHARE.  I GAVE MOTOROLA

6    THEIR MARKET SHARE.

7              SO THAT CARVED IT DOWN FURTHER AND THAT'S

8    WHY I ONLY END UP WITH 2 MILLION OUT OF THAT 22

9    MILLION THAT QUALIFY FOR LOST PROFITS.

10   Q    WHAT WAS THE THIRD FACTOR YOU CONSIDERED IN

11   DETERMINING HOW MANY OF THE 22 MILLION UNITS

12   QUALIFIED FOR LOST PROFITS?

13   A    CAPACITY.  COULD APPLE -- DID THEY HAVE THE

14   FACILITIES TO ACTUALLY PRODUCE THIS AND SELL THIS?

15   Q    AND WHAT DID YOU FIND?

16   A    I FOUND THAT THEY DID.  THERE WERE -- THERE

17   WERE LIMITATIONS, AS -- BECAUSE THE DEMAND WAS SO

18   HIGH, FROM TIME TO TIME, APPLE DID HAVE

19   CONSTRAINTS.

20             BUT WITH RESPECT TO THIS 2 MILLION

21   INCREMENTAL UNITS OVER THE TWO YEAR TIME PERIOD,

22   APPLE, I CONCLUDED, DID HAVE THE ABILITY TO MAKE

23   THOSE SALES.

24   Q    WHEN YOU SAY "THE ABILITY TO MAKE THOSE

25   SALES," ARE YOU REFERRING TO MANUFACTURING

1    CAPACITY?

2    A    MANUFACTURING AND MARKETING CAPACITY.  IT

3    COULD BE EITHER OR BOTH.

4    Q    AND WHAT WAS THE FOURTH FACTOR YOU USED IN

5    DETERMINING WHETHER UNITS QUALIFIED FOR LOST

6    PROFITS REMEDY?

7    A    IT'S JUST A CALCULATION OF APPLE'S PROFITS,

8    AND I WAS ABLE TO CALCULATE HOW MUCH APPLE MAKES ON

9    EACH ONE OF ITS SMARTPHONES OR TABLETS.  AND ONCE

10   AGAIN, IT'S SIMPLE MULTIPLICATION, TIMES 2 MILLION

11   UNITS GAVE ME MY LOST PROFITS.

12   Q    LET'S GO BACK TO SLIDE 34B.62.  IF YOU HAD NOT

13   CONCLUDED THAT 2 MILLION OF THE DEVICES DID QUALIFY

14   FOR LOST PROFIT DAMAGES, WHAT WOULD HAVE CHANGED IN

15   YOUR ULTIMATE CONCLUSION?

16   A    WE WOULD JUST SLIDE THOSE PHONES UP BECAUSE

17   THEY'RE ENTITLED -- UNDER THE ASSUMPTION THAT

18   THEY'RE INFRINGING, THEY'RE GOING TO GET SOME FORM

19   OF DAMAGE.  SO I SLIDE IT UP TO SAMSUNG'S

20   PROFITS -- I'M NOT DOUBLE COUNTING -- AND THE

21   RESULT IS, I THINK WE CAN SHOW, WE DON'T HAVE ANY

22   LOST PROFITS, BUT THE INFRINGING PROFITS NOW GOES

23   UP TO $2.481 BILLION.

24   Q    LET'S GO BACK TO YOUR ORIGINAL APPROACH IN

25   WHICH YOU HAVE PHONES AND TABLETS IN ALL THREE

1    CATEGORIES, AND LET ME ASK YOU ABOUT THE LAST

2    CATEGORY, THE REASONABLE ROYALTY CATEGORY.

3             FIRST, COULD YOU EXPLAIN TO THE JURY IN

4    CONCEPT WHAT IS MEANT BY A REASONABLE ROYALTY?

5    A    YES.  I HAVE A SIMPLE LITTLE SLIDE THAT HELPS.

6    Q    34B.42, PLEASE.

7    A    YES.  A ROYALTY PAYMENT IS, IT'S JUST LIKE, AS

8    THE FIRST EXAMPLE, RENT.  SO IF YOU DECIDE TO RENT

9    OUT YOUR HOUSE OR IF YOU HAVE AN APARTMENT AND YOU

10   WANT TO RENT IT, THAT'S YOUR ASSET.  YOU OWN THAT.

11   IT'S A TANGIBLE ASSET.  IF SOMEBODY ELSE IS GOING

12   TO USE IT, YOU WANT TO BE PAID FOR IT.  SO THEY PAY

13   YOU RENT.

14   Q    LET ME STOP YOU RIGHT THERE.  UNDER YOUR REAL

15   ESTATE COLUMN ON THIS GRAPHIC, YOU HAVE WHAT LOOKS

16   LIKE A PICTURE OF TWO HANDS SHAKING.  WHY DO YOU

17   HAVE THAT THERE?

18   A    WELL, IN THE TWO EXAMPLES, REAL ESTATE AND

19   MINERAL RIGHTS, THE PARTIES GET TOGETHER AND

20   ACTUALLY AGREE.

21             BUT HERE, WITHIN THE CONTEXT OF THE

22   LITIGATION, THE REASON WE'RE ALL HERE,

23   UNFORTUNATELY, IS THE TWO PARTIES HAVEN'T AGREED.

24   THEY HAVEN'T SHOOK HANDS AND AGREED.  SO WE DON'T

25   HAVE AN AGREEMENT.

```
 1    Q    AND WE SEE THE WORDS, UNDER PATENTS,

 2   "HYPOTHETICAL NEGOTIATION."  WHAT DO YOU MEAN BY

 3   THAT?

 4   A    WELL, IT'S A -- IT'S CALLED A LEGAL FICTION.

 5   THE PARTIES HAVEN'T -- IN FACT, APPLE HAS TAKEN THE

 6   POSITION THAT THEY DON'T WANT A ROYALTY.  THEY

 7   DON'T WANT TO LICENSE THEIR INTELLECTUAL PROPERTY.

 8          BUT AS A FLOOR, REMEMBER THAT, THAT ONE

 9   STATUTE THAT WE WERE READING, THAT'S A MINIMUM

10   AMOUNT OF DAMAGES FOR THE UTILITY PATENTS.

11          AND IT'S A LEGAL FICTION THAT I'M ASKING

12   TO TRY TO IDENTIFY WHAT AMOUNT WOULD OR SHOULD --

13   I'M SORRY -- WHAT AMOUNT SHOULD SAMSUNG PAY APPLE

14   FOR THE USE OF THEIR INTELLECTUAL PROPERTY, EVEN

15   THOUGH APPLE DOESN'T WANT IT?

16   Q    AND DID YOU REACH A CONCLUSION ON WHAT THE

17   RIGHT ROYALTY RATES SHOULD BE FROM THIS

18   HYPOTHETICAL NEGOTIATION?

19   A    YES.  I DID A NUMBER OF EVALUATION TECHNIQUES

20   AND I DID SOMETHING CALLED A GEORGIA PACIFIC

21   ANALYSIS, AND THEN I ULTIMATELY IDENTIFIED THE

22   RATES, THE ROYALTY RATES TO BE PAID TO APPLE FOR

23   ITS ASSET.

24   Q    WHAT METHODS DID YOU USE TO IDENTIFY THE RANGE

25   OF POTENTIAL VALUES FOR THIS HYPOTHETICALLY
```

```
1     NEGOTIATED LICENSE PAYMENT?

2     A    RIGHT.  I USED THREE VALUATION METHODS:  A

3     COST METHOD; AN INCOME METHOD; AND A MARKET METHOD.

4     Q    WHAT ARE EACH OF THOSE METHODS, JUST BRIEFLY?

5     A    I THINK, AGAIN, EASY REAL ESTATE, A MARKET IS

6     A COMPARABLE, SO IT'S A HOUSE DOWN THE STREET

7     THAT'S LIKE YOURS.  THAT'S A COMPARABLE.

8              IN THIS CASE IT WOULD BE A LICENSE.  ARE

9     THERE OTHER LICENSES THAT ARE LIKE THE LICENSE THEY

10    WOULD ENTER INTO?

11             COST WOULD BE HOW MUCH DID SAMSUNG OR

12    APPLE PAY TO DEVELOP IT OR DESIGN AROUND IT?

13             AND INCOME IS INCOME DRIVEN, HOW MUCH

14    REVENUE IS BEING PRODUCED BY SAMSUNG AND/OR APPLE

15    USING THESE PATENTS.

16             AND WE DISCOUNT THAT BACK AND CAPITALIZE

17    THAT.

18    Q    AND YOU MENTIONED SOMETHING CALLED THE

19    GEORGIA PACIFIC FACTORS.  WHAT ARE THOSE -- THOSE

20    OF US OLD ENOUGH TO REMEMBER KNOW THAT

21    GEORGIA PACIFIC WAS A LUMBAR AND PAPER COMPANY.

22    WHAT DOES THAT HAVE TO DO WITH THIS CASE?

23    A    I THINK THEY STILL ARE.  IT'S A CASE

24    REFERENCE.  GEORGIA PACIFIC WAS INVOLVED IN A

25    PATENT SUIT AND THE COURT IDENTIFIED 15 FACTORS,
```

3893

```
 1     Q    OKAY.  IF, INSTEAD OF CALCULATING FOR THE 17

 2     MILLION PHONES AND TABLETS IN THE TOP LINE AND THE

 3     2 MILLION PHONES AND TABLETS IN THE MIDDLE LINE

 4     SAMSUNG PROFITS AND APPLE'S LOST PROFITS, IF YOU

 5     HAD JUST DONE A REASONABLE ROYALTY FOR ALL 22

 6     MILLION UNITS, WHAT WOULD THAT NUMBER HAVE BEEN?

 7     A    RIGHT.  THAT'S 500 -- IT'S APPROXIMATELY

 8     540 --

 9               MR. PRICE:  OBJECT TO THAT.  THAT'S

10     BEYOND THE SCOPE OF HIS REPORT.

11               MS. KREVANS:  YOUR HONOR, THIS IS IN THE

12     SUPPLEMENTAL EXPERT REPORT AT EXHIBIT 19-S IN THE

13     MIDDLE COLUMN.

14               THE COURT:  THAT'S OVERRULED.

15               GO AHEAD.

16               THE WITNESS:  IF YOU SLID ALL THE PHONES,

17     AS COUNSEL HAS SAID, OVER AND DOWN INTO REASONABLE

18     ROYALTY AND CALCULATED DAMAGES AGAIN AS A FLOOR, A

19     MINIMUM AMOUNT, NO LOST PROFITS, NO REASONABLE --

20     AND NO INFRINGER'S PROFITS, THE AMOUNT IS

21     APPROXIMATELY $540 MILLION, STANDALONE.

22     BY MR. KREVANS:

23     Q    LOOKING AT THE NUMBERS THE WAY YOU DID

24     CALCULATE THEM IN THE THREE SEPARATE BUCKETS, WHAT

25     IS THE TOTAL DAMAGES THAT YOU CALCULATED THAT YOU
```

1    BELIEVE SAMSUNG SHOULD PAY IN THIS CASE IF THE JURY

2    FINDS THAT APPLE'S INTELLECTUAL PROPERTY IS VALID

3    AND INFRINGED?

4    A    SUMMING THE THREE UP, THE TOTAL NUMBER COMES

5    TO $2,751,000,000.

6    Q    COULD YOU TURN TO EXHIBIT 25 IN YOUR BINDER.

7    I'M SORRY, THIS IS 25A-1.

8    A    YES.

9    Q    WHAT IS 25A-1, MR. MUSIKA?

10   A    THIS IS A SUMMARY OF SOME OF THE CALCULATIONS

11   THAT I'VE BEEN TALKING ABOUT THIS MORNING.

12   Q    AND WHO PREPARED EXHIBIT 25A-1?

13   A    MY TEAM UNDER MY DIRECTION.

14        MS. KREVANS:  YOUR HONOR, WE OFFER

15   EXHIBIT 25A-1.

16        MR. PRICE:  NO FURTHER OBJECTION.

17        THE COURT:  OKAY.  IT'S ADMITTED.

18        (WHEREUPON, PLAINTIFF'S EXHIBIT NUMBER

19        25A-1, HAVING BEEN PREVIOUSLY MARKED FOR

20        IDENTIFICATION, WAS ADMITTED INTO

21        EVIDENCE.)

22        MS. KREVANS:  OKAY.

23   Q    COULD YOU, JUST BRIEFLY, MR. MUSIKA, WALK THE

24   JURY THROUGH WHAT INFORMATION IS SET OUT ON EACH

25   PAGE OF EXHIBIT 25A-1?

```
1    A    YES.  SO I'LL USE MY BOOK, AND I ASSUME THAT
2    YOU'LL MOVE THE SCREEN AS I TALK.
3              SO PAGE 2 OF 16 IS JUST THE SUMMARY OF
4    DAMAGES, WHAT WE JUST LOOKED AT.
5              PAGE 3 OF 16 --
6    Q    LET ME STOP YOU FOR A MOMENT ON PAGE 3.  YOU
7    SEE AT THE BOTTOM THERE'S A NOTE?
8    A    YES.
9    Q    WHAT DOES THAT NOTE EXPLAIN?
10   A    THAT EXPLAINS THE, THE TIME PERIODS THAT WERE
11   USED FOR THE CALCULATION OF THE DAMAGES.
12   Q    AND WHAT DOES IT INDICATE THOSE TIME PERIODS
13   WERE?
14   A    IT INDICATES THAT THE TIME PERIODS THAT I USED
15   FOR THE REGISTERED TRADE DRESS WAS BASICALLY THE
16   START OF THE INFRINGING TIME PERIOD.
17   Q    THAT'S FOR THE UNREGISTERED TRADE DRESS?
18   A    UNREGISTERED TRADE DRESS.
19   Q    AND FOR THE REST?
20   A    AND FOR THE REST I USED AUGUST 4TH, 2010 AS
21   THE START DATE.
22   Q    THANK YOU.  COULD YOU CONTINUE EXPLAINING TO
23   THE JURY WHAT THE CONTENTS OF PX 25 ARE.
24   A    YES.  PAGE 3 OF 16 IS JUST THE MATRIX.  YOU
25   SEE THE PRODUCTS THERE ON THE LEFT AND ALL THE
```

1    FORMS OF INTELLECTUAL PROPERTY THAT HAVE BEEN

2    IDENTIFIED THERE, WHICH PRODUCTS ARE ACCUSED OF

3    INFRINGING WHICH OF THE INTELLECTUAL PROPERTY.

4            THE NEXT PAGE IS JUST A SUMMARY OF, A

5    MORE DETAILED SUMMARY BY PRODUCT OF THE FOLLOWING

6    PHONES THAT WE WENT THROUGH.  IT'S JUST DIFFERENT

7    CALCULATIONS.

8            THE SAME IS TRUE OF 5 OF 16.

9            6 OF 16 IS A LISTING OF PRODUCTS AND THE

10   CARRIERS THAT ARE ASSOCIATED WITH EACH PRODUCT.

11   Q    SO THE -- THIS IS JUST WHICH PHONE COMPANIES

12   ARE PROVIDING THEIR CUSTOMERS WITH WHICH SAMSUNG

13   PRODUCTS?

14   A    THAT'S CORRECT.

15   Q    THANK YOU.  AND YOU HAVE A SERIES OF PAGES

16   THAT ARE HEADED "MOR-FLO ANALYSIS."

17   A    THAT'S 7 THROUGH 12.

18   Q    WHAT ARE THOSE?

19   A    THAT'S THE MARKET SHARE ALLOCATIONS.  THAT'S

20   WHERE I LIMITED THE NUMBER OF PHONES THAT APPLE

21   WOULD GET BECAUSE I'VE ALLOCATED PERCENTAGES TO THE

22   OTHER MARKET PARTICIPANTS, AND THOSE ARE THOSE

23   CALCULATIONS.

24   Q    THAT TAKES US TO PAGE 13, AND WHAT IS SET OUT

25   ON PAGE 13?

2097

```
 1    A    PAGE 13 IS A STUDY DONE, I THINK IT WAS DONE
 2    BY IBM, BUT IT WAS DONE BY SOMEONE ELSE WHICH
 3    REALLY LOOKED AT THE PERCENTAGE OF USERS THAT WOULD
 4    SWITCH CARRIERS, AND THAT WAS ANOTHER LIMITING
 5    FACTOR THAT I USED.
 6    Q    OKAY.  LET'S -- MR. LEE, DON'T SHOW IT IN
 7    COURT, BUT JUST SHOW THE JURORS PAGES 14 AND 15.
 8              YOUR HONOR, I'D NOTE FOR THE RECORD THAT
 9    THESE TWO PAGES, PER A PRIOR ORDER OF THE COURT,
10    HAVE BEEN PERMITTED TO BE REDACTED AND FILED UNDER
11    SEAL AND WE HAVE PROVIDED BOTH THE REDACTED AND
12    UNREDACTED COPIES TO THE COURT.
13              AND MR. MUSIKA, CAN YOU TELL US WHAT
14    INFORMATION IS SET OUT ON PAGES 14 AND 15?
15    A    YES.  IT'S MY ANALYSIS THAT RELATES TO THE
16    CAPACITY FACTOR, DETERMINING WHETHER OR NOT THERE'S
17    SUFFICIENT CAPACITY.
18    Q    AND FINALLY, PAGE 16.
19    A    16 IS THE RATES THAT WE JUST LOOKED AT, AND IT
20    GIVES A LITTLE MORE DETAILS ABOUT THE THREE
21    VALUATION METHODOLOGIES I USED.
22    Q    JUST TO FINISH UP, MR. MUSIKA, COULD YOU
23    SUMMARIZE FOR THE JURY YOUR OVERALL DAMAGES OPINION
24    IN THIS CASE?
25    A    YES.  WHERE I BEGAN, THE DAMAGES ARE A RANGE
```

```
1    BETWEEN $2.5 BILLION AND AT THE HIGH END,

2    $2,750,000,000.

3    Q    AND WHAT IS THE DIFFERENCE BETWEEN THE BOTTOM

4    AND THE TOP OF THAT RANGE?

5    A    ONE ASSUMES -- YOU REMEMBER WE WERE SLIDING

6    THE PHONES, THAT WE BASICALLY -- THE LOWER END

7    NUMBER IS JUST ALL OF SAMSUNG'S UNJUST ENRICHMENT,

8    PLUS A REASONABLE ROYALTY.

9              THE HIGHER NUMBER WAS SAMSUNG'S UNJUST

10   ENRICHMENT, LOST PROFIT ON THOSE 2 MILLION, PLUS

11   THE REASONABLE ROYALTY.

12             MS. KREVANS:  THANK YOU.

13             NOTHING FURTHER, YOUR HONOR.

14             THE COURT:  ALL RIGHT.  THE TIME IS NOW

15   11:20.

16                    CROSS-EXAMINATION

17   BY MR. PRICE:

18   Q    GOOD MORNING, MR. MUSIKA.

19   A    GOOD MORNING.

20   Q    MY NAME IS BILL PRICE.

21             AND I WANTED TO ASK YOU, BEFORE WE GET

22   INTO YOUR METHODOLOGIES, YOU SAID YOU'VE DONE THIS

23   A NUMBER OF TIMES, THIS SORT OF ANALYSIS; CORRECT?

24   A    YES.

25   Q    AND YOU'VE DONE IT IN CONNECTION WITH
```

1    LITIGATION?

2    A    YES.

3    Q    AND I JUST WANT TO SEE HOW YOU APPROACH THAT

4    AS AN EXPERT.  IT'S YOUR UNDERSTANDING THAT YOU ARE

5    SUPPOSED TO KIND OF APPLY YOUR EXPERTISE IN A

6    NEUTRAL FASHION; CORRECT?

7    A    THAT'S CORRECT.

8    Q    YOU'RE NOT SUPPOSED TO FAVOR ONE PARTY OVER

9    THE OTHER; RIGHT?

10   A    THAT'S CORRECT.

11   Q    YOU'RE GOING TO GIVE THE SAME OPINION

12   REGARDLESS OF WHICH SIDE HIRES YOU?  THAT'S THE

13   IDEA?

14   A    THAT IS THE IDEA.

15   Q    AND IN THAT CONNECTION, YOU KNOW THAT IT WOULD

16   BE INAPPROPRIATE, THEN, FOR YOU AS AN EXPERT TO BE

17   AN ADVOCATE?  THAT IS, YOU'RE SUPPOSED TO BE

18   OBJECTIVE USING YOUR EXPERTISE?

19   A    I WOULD AGREE.

20   Q    AND -- NOW, WE LOOKED AT A LOT OF SLIDES.  I

21   ASSUME THAT YOU REVIEWED THOSE SLIDES BEFORE THEY

22   WERE PRESENTED TO THE JURY.

23   A    YES.

24   Q    AND EITHER YOU CREATED THEM OR, LIKE THE

25   PRESIDENTIAL ADS, YOU APPROVED OF THEM?

```
1    A    YES.

2    Q    AND WERE THERE ANY THAT YOU CREATED VERSUS

3    APPROVED, OR --

4    A    I DON'T MAKE THAT DISTINCTION, NO.

5    Q    OKAY.  AND IF WE COULD LOOK AT, FOR EXAMPLE, I

6    THINK IT WAS SLIDE 34B.2, AND I'M JUST WONDERING,

7    FOR EXAMPLE, WITH THIS SLIDE -- I'M NOT GETTING

8    ANYTHING OUT OF THIS.

9           OKAY.  SO ON THIS SLIDE, YOU SEE ON THE

10   RIGHT HERE THERE'S A SAMSUNG PHONE.  DO YOU SEE

11   THAT?

12   A    I DO.

13   Q    AND DID YOU SELECT THAT PICTURE?

14   A    THE INDIVIDUAL PHONE?

15   Q    YES.

16   A    NO.  I THINK THAT -- THIS -- THE SLIDE ITSELF

17   WAS CONSTRUCTED ORIGINALLY BY ME, BUT THERE'S A

18   TEAM OF, OF GRAPHICS PEOPLE THAT, THAT PUT IN THE

19   ICONS ULTIMATELY.  SO, NO, I DIDN'T SELECT THAT

20   PHONE.

21   Q    I JUST WANT TO -- YOUR UNDERSTANDING IS THAT

22   APPLE IS NOT CLAIMING THAT YOU HAVE TO USE HARD

23   KEYS ON A PHONE; RIGHT?

24   A    THAT IS NOT MY UNDERSTANDING, NO.

25   Q    AND IT'S YOUR UNDERSTANDING THAT APPLE IS NOT
```

```
 1    PROFITS IF THERE'S -- IF THE PATENT THAT IS
 2    INFRINGED IS A UTILITY PATENT; RIGHT?
 3    A    THAT'S RIGHT.  THAT'S NOT ONE OF THE FORMS OF
 4    DAMAGES UNDER A UTILITY PATENT, I AGREE.
 5    Q    SO THOSE BIG NUMBERS ALL HAVE SOMETHING TO DO
 6    WITH THE WAY THE PHONE OR THE TABLET LOOKS?
 7    A    WELL, THE ONLY ADDITION, SO THE RECORD IS
 8    CLEAR, IS REMEMBER THE SLIDING PHONES.  SO IF YOU
 9    MOVE THOSE PHONES OUT OF INFRINGER'S PROFITS,
10    YOU'VE GOT TO PUT THEM INTO SOME COLUMN, LOST
11    PROFITS OR REASONABLE ROYALTY.
12            AND SO AT A MINIMUM, YOU WOULD MOVE THEM
13    ALL DOWN TO REASONABLE ROYALTY TO THE EXTENT THAT
14    THEY ALSO INFRINGED THE UTILITY PATENT.
15    Q    AND SO THAT'S, THAT'S WHAT I'M SAYING.  IT'S
16    ONLY -- YOU GET INFRINGER'S PROFITS ONLY IF THERE'S
17    SOME FINDING ABOUT BASICALLY HOW THESE PHONES LOOK?
18    A    RIGHT.
19    Q    THE DESIGN PATENT, THE DESIGN PATENT OR TRADE
20    DRESS INFRINGEMENT; RIGHT?
21    A    I'M AGREEING WITH YOU.  BUT ALL I'M SAYING IS
22    IT'S NOT LIKE YOU SUBTRACT IT.  YOU HAVE TO
23    SUBTRACT IT, BUT YET ADD IT BACK ON THE OTHER FORM.
24    Q    WELL, YOU DON'T ADD IT BACK IF THERE'S A
25    FINDING THAT, YOU KNOW, AN ORDINARY OBSERVER, FOR
```

```
 1     EXAMPLE, IS NOT GOING TO BE CONFUSED OR THERE'S NOT

 2     DECEIT OR THAT THE PATENT'S INVALID; RIGHT?

 3     A    NO, YOU DO.  THAT'S WHAT'S KEY, BECAUSE THE

 4     KEY TO THE CALCULATION IS EVERY PRODUCT -- THE

 5     CALCULATION IS DONE ON AN INDIVIDUAL PRODUCT.  SO

 6     IN YOUR HYPOTHETICAL, WE HAVE JUST A PHONE, AND

 7     THAT PHONE INFRINGES THE UTILITY PATENTS AND IT

 8     INFRINGES THE TRADE DRESS AND IT INFRINGES THE

 9     DESIGN PATENTS.

10          I'M THINKING THAT YOUR HYPOTHETICAL --

11     AND ON THAT BASIS, THE CALCULATION WOULD BE

12     PRESUMABLY BASED ON THE INFRINGER'S PROFITS.

13          YOU SAY LET'S ASSUME THAT THEY DON'T

14     INFRINGE THE DESIGN PATENTS AND THE TRADE DRESS.

15     LET'S TAKE THAT AWAY.

16          WELL, WE STILL HAVE THE POTENTIAL OF LOST

17     PROFITS ON THE UTILITY AND, AT A MINIMUM, THE

18     REASONABLE ROYALTY.

19          SO WHEN YOU TAKE AWAY THE INFRINGER'S

20     PRODUCTS, YOU'VE TO RECALCULATE THE DAMAGES FOR

21     THAT PARTICULAR PHONE ON ONE OF THOSE OTHER BASES

22     THERE, ASSUMING IT INFRINGES ONE OF THE OTHER

23     UTILITY PATENTS.

24     Q    AND THAT'S WHAT YOU'RE SAYING.  ASSUMING

25     THERE'S SOME OTHER INFRINGEMENT, THERE'S GOING TO
```

```
1    BE SOME WAY TO CALCULATE IT?

2    A    YES.

3    Q    AND YOU'VE TOLD US THAT YOU WEREN'T ASKED TO

4    CALCULATE ASSUMING THAT, YOU KNOW, ONE OF THESE

5    PATENTS, UTILITY PATENTS WAS INFRINGED ONLY, OR, OR

6    A COMBINATION OF THE UTILITY PATENTS?

7    A    THE COMBINATION -- THAT'S WHY A MODEL WAS

8    REQUIRED -- IS ENDLESS.  THERE ARE REALLY HUNDREDS

9    OF THOUSANDS OF COMBINATIONS GIVEN THE NUMBER OF

10   PATENTS, ET CETERA.

11             AND NO, I WASN'T.  THE ANSWER IS NO, I

12   WASN'T.

13   Q    AND THE ONLY COMBINATIONS I'M TALKING ABOUT

14   ARE THE THREE UTILITY PATENTS.  OKAY?

15   A    YOU'RE RIGHT, I WAS NOT ASKED TO PRESENT THAT.

16   Q    SO THE ASSUMPTIONS, THEN, ARE WE TALKED ABOUT

17   EACH PATENT, DESIGN PATENT IS VALID AND INFRINGED.

18   THAT'S YOUR ASSUMPTION FOR YOUR DAMAGES; RIGHT?

19   A    YES.

20   Q    THAT ALL THE DIFFERENT PRODUCTS THAT APPLE

21   SAYS INFRINGE DO INFRINGE; CORRECT?

22   A    YES.

23   Q    THAT EACH OF THE UTILITY PATENTS IS VALID AND

24   WHATEVER APPLE SAYS INFRINGES INFRINGES; CORRECT?

25   A    UNTIL THE JURY SAYS IT, YES.
```

```
 1    Q    THAT ALL OF APPLE'S TRADE DRESS IS VALID AND
 2   EVERYTHING APPLE SAYS INFRINGES INFRINGES; CORRECT?
 3    A    YES.
 4    Q    AND IT'S GIVEN ALL THOSE ASSUMPTIONS THAT YOU
 5   THEN HAVE THIS RANGE OF 2.5 BILLION TO 2.7 BILLION?
 6    A    THAT'S CORRECT.
 7    Q    SO LET'S TALK ABOUT, FOR EXAMPLE, THE BOUNCE
 8   BACK.  ON YOUR LOST PROFITS, I THINK YOU'RE UP
 9   AROUND, FOR TOTAL, YOU'RE UP AROUND 400 SOMETHING
10   MILLION?
11    A    488 MILLION.
12    Q    OKAY.  AND THAT OBVIOUSLY ISN'T LOST -- WOULD
13   NOT BE APPLE'S LOST PROFITS WITH RESPECT TO, SAY, A
14   BOUNCE BACK PATENT?
15    A    NOT EXCLUSIVELY, NO.  SAME QUESTION, SAME
16   ANSWER.
17    Q    IN FACT, YOUR ANALYSIS ON THAT, WHEN YOU
18   TALKED -- WHEN YOU THOUGHT IT WOULD TAKE -- IF
19   SAMSUNG WERE TOLD "YOU CAN'T DO THAT ON YOUR
20   PHONE," IT WOULD TAKE THEM A MONTH TO DESIGN AROUND
21   THAT AND DO SOMETHING ELSE?
22    A    AS ONE OF THOSE LIMITING CONDITIONS THAT I
23   TALKED ABOUT, YES, I LIMITED THE CALCULATION TO
24   JUST ONE MONTH OF LOST PROFITS FOR THAT.
25    Q    SO LET'S TALK ABOUT YOUR ANALYSIS ON -- YOU
```

```
 1    SAID YOU DID ANALYSIS ON BUT-FOR; THAT IS, IF -- IF

 2    SAMSUNG DIDN'T HAVE A FEATURE, WHAT WOULD HAPPEN?

 3              AND FOR BUT-FOR, FOR LOST PROFITS, FOR

 4    APPLE'S LOST PROFITS, OKAY, YOU'RE SAYING THAT IF

 5    THE JURY FOUND INFRINGEMENT ON A UTILITY PATENT,

 6    THEN YOU'VE GOT TO LOOK AT, OKAY, WHAT WOULD APPLE

 7    HAVE MADE IF SAMSUNG DIDN'T HAVE THAT FEATURE;

 8    RIGHT?

 9    A    MADE?  WHAT --

10    Q    WOULD HAVE MADE.

11    A    ALL RIGHT.  I'LL SAY YES.  I'M NOT SURE WHAT

12    YOU MEAN, BUT I'LL SAY YES.

13              THEY'VE ALREADY MADE THEIR PRODUCTS.  THE

14    PRODUCTS ARE THE IPHONES IN YOUR HYPOTHETICAL, SO

15    IT WOULD BE THE IPHONE.  IT'S ALREADY MADE.

16    Q    OKAY.  AND I DIDN'T MEAN MANUFACTURE, BUT THE

17    PROFITS THEY WOULD HAVE EARNED?

18    A    OKAY.  THAT'S WHERE I WAS NOT SURE.

19    Q    AND WHEN YOU'RE DOING THAT, YOU'VE GOT TO ASK

20    YOURSELF, HERE'S A SAMSUNG CUSTOMER, THEY'VE GOT A

21    PHONE, ONE OF THE ACCUSED PHONES, THAT HAS BOUNCE

22    BACK.  NOW, IF BOUNCE BACK ISN'T IN THERE, ARE THEY

23    GOING TO LEAVE SAMSUNG TO GO TO APPLE BECAUSE OF

24    THAT ONE FEATURE?  THAT'S THE BUT-FOR ANALYSIS,

25    ISN'T IT?  THAT -- IS SOMEONE GOING TO SAY, "I
```

```
1    BOUGHT THIS PHONE.  I LIKED IT.  WELL, DARN.  IT
2    DOESN'T HAVE BOUNCE BACK ANYMORE.  I'M GOING TO GO
3    BUY AN APPLE."
4    A    WELL, THAT'S KIND OF A STATEMENT, BUT I'LL
5    RESPOND TO IT AS A QUESTION.
6    Q    TRUE.
7    A    MY CALCULATION IS THAT THEY WOULD GO TO THEM
8    BECAUSE, REMEMBER, I'VE ONLY TAKEN THE SALE AWAY
9    FOR THE MONTH IT WOULD TAKE FOR SAMSUNG TO
10   BASICALLY REMOVE THE BOUNCE BACK.  THEY'RE GOT
11   TO -- THAT'S JUST A PHYSICAL FACT.  SAMSUNG, WITH
12   THE ASSUMPTION THAT THEY CAN'T USE IT, HAS TO TAKE
13   IT OUT OF THEIR PHONE.  THEY HAVE TO REDESIGN THE
14   PHONE.  THEY HAVE TO NEGOTIATE A DIFFERENT PRICE.
15   THEY NEED TO PUT THE MANUFACTURING FACILITY IN
16   PLACE.  I'VE ALLOWED, FOR EVERYTHING TO HAPPEN, ONE
17   MONTH AND ONLY ONE MONTH.
18           AND DURING THAT PERIOD OF TIME, YES, SOME
19   PORTION OF THE MARKET WOULD CHOOSE AN IPHONE
20   INSTEAD OF SAYING, "OH, WELL, I'M GOING TO WAIT OR
21   DO SOMETHING ELSE."
22   Q    WELL, FOR ONE THING, YOU WOULDN'T HAVE TO
23   START A MANUFACTURING FACILITY TO CHANGE THE BOUNCE
24   BACK.  THAT'S JUST A SOFTWARE UPGRADE, RIGHT?  PLUG
25   IT INTO YOUR COMPUTER AND IT WOULD BE CHANGED?
```

```
 1     A    FAIR ENOUGH, YES.

 2     Q    OKAY.  AND MY QUESTION IS DIFFERENT.  WE KNOW

 3     SOMETHING ABOUT THE PEOPLE WHO PURCHASE THE SAMSUNG

 4     PHONES THAT WE DON'T KNOW ABOUT THE GENERAL PUBLIC,

 5     WHICH IS THAT THEY CHOSE A SAMSUNG PHONE; RIGHT?

 6     A    YES.

 7     Q    OKAY.  SO IF THEY CHOSE A SAMSUNG PHONE, YOU

 8     MIGHT WANT TO LOOK AS TO WHY THEY CHOSE THAT PHONE;

 9     CORRECT?

10     A    I AGREE, AND I DID.

11     Q    AND IN CONNECTION WITH THAT, YOU'D WANT TO

12     ASK, OR FIND OUT, "OKAY, MR. PURCHASER, IF YOU

13     DIDN'T HAVE BOUNCE BACK, WOULD YOU NOT HAVE CHOSEN

14     THAT PHONE AND GONE SOMEWHERE ELSE?"  THAT'S WHAT

15     THE BUT-FOR CAUSATION IS.  IF NOT FOR WHAT SAMSUNG

16     WAS DOING, IT WOULD HAVE GONE TO APPLE INSTEAD;

17     RIGHT?

18     A    THAT'S CORRECT.

19     Q    AND THERE ARE HUNDREDS AND HUNDREDS OF

20     FEATURES ON A SAMSUNG SMARTPHONE; RIGHT?

21     A    YES.

22     Q    APPLE HAS DONE RESEARCH, ITSELF, ON WHY THE

23     PEOPLE WHO BUY SAMSUNG, OR ANDROID, WHY ARE THEY

24     ATTRACTED TO THAT PRODUCT INSTEAD OF OURS; RIGHT?

25     A    YES.
```

1

2

3

4                        CERTIFICATE OF REPORTER

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                    /S/

                    _____
22                    LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
23

24                    DATED:  AUGUST 14, 2012

25

2321

1                 UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,                  )
                                 )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,        )
                                 )  AUGUST 14, 2012
8         VS.                    )
                                 )  VOLUME 8
9  SAMSUNG ELECTRONICS CO.,      )
   LTD., A KOREAN BUSINESS       )  PAGES 2321-2650
10 ENTITY; SAMSUNG               )
   ELECTRONICS AMERICA,          )
11 INC., A NEW YORK              )
   CORPORATION; SAMSUNG          )
12 TELECOMMUNICATIONS            )
   AMERICA, LLC, A DELAWARE      )
13 LIMITED LIABILITY             )
   COMPANY,                      )
14                               )
                  DEFENDANTS.    )
15 _____

16            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24                          IRENE RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF         MORRISON & FOERSTER
      APPLE:                   BY:  HAROLD J. MCELHINNY
 3                                  MICHAEL A. JACOBS
                                    RACHEL KREVANS
 4                            425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5
      FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
 6    APPLE:                 HALE AND DORR
                             BY:  WILLIAM F. LEE
 7                           60 STATE STREET
                             BOSTON, MASSACHUSETTS  02109
 8
                             BY:  MARK D. SELWYN
 9                           950 PAGE MILL ROAD
                             PALO ALTO, CALIFORNIA  94304
10
      FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
11                           OLIVER & HEDGES
                             BY:  CHARLES K. VERHOEVEN
12                           50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
13
                             BY:  VICTORIA F. MAROULIS
14                                 KEVIN P.B. JOHNSON
                             555 TWIN DOLPHIN DRIVE
15                           SUITE 560
                             REDWOOD SHORES, CALIFORNIA  94065
16
                             BY:  MICHAEL T. ZELLER
17                                 WILLIAM C. PRICE
                             865 SOUTH FIGUEROA STREET
18                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
19
      FOR INTEL:             PERKINS COIE
20                           BY:  DANIEL T. SHVODIAN
                             3150 PORTER DRIVE
21                           PALO ALTO, CALIFORNIA 94304

22
      INTERPRETERS:          JAMES YIM VICTORY
23                           ALBERT S. KIM
                             ANN PARK
24

25
```

2823

1

                    INDEX OF WITNESSES
2


3      DEFENDANT'S


4
       **CLIFTON FORLINES**
5          DIRECT EXAM BY MR. JOHNSON         P. 2349
           CROSS-EXAM BY MR. JACOBS           P. 2367
6


7      **WOODWARD YANG**
           DIRECT EXAM BY MR. JOHNSON         P. 2373
8          CROSS-EXAM BY MR. LEE              P. 2436
           REDIRECT EXAM BY MR. JOHNSON       P. 2485
9          RECROSS-EXAM BY MR. LEE            P. 2490


10

11     **JINYEUN WANG**
           DIRECT EXAM BY MR. QUINN           P. 2522
           CROSS-EXAM BY MR. JACOBS           P. 2541
12         REDIRECT EXAM BY MR. QUINN         P. 2549


13     **ROGER FIDLER**
           BY VIDEOTAPED DEPOSITION           P. 2558
14                                            P. 2565


15     **ITAY SHERMAN**
           DIRECT EXAM BY MR. VERHOEVEN       P. 2573
16         CROSS-EXAM BY MS. KREVANS          P. 2611

17

18

19

20

21

22

23

24

25

```
 1    GRAND PRIZE, I WOULD RECEIVE 100 MILLION WON AS A

 2    PRIZE AND ALSO WOULD BE PROMOTED ONE RANK HIGHER.

 3              MR. QUINN:  I GUESS, YOUR HONOR, THE

 4    INTERPRETERS PROBABLY DON'T DO CURRENCY

 5    CONVERSIONS.  I'M HEARING 100 MILLION WON.  MAYBE

 6    WE CAN FILL LATER ON FILL IN THE RECORD ABOUT WHAT

 7    THAT TRANSLATES TO.

 8    Q    IS BEING A DESIGNER AT SAMSUNG AN EASY JOB?

 9    A    NO, NOT AT ALL.

10    Q    WE'VE HEARD TESTIMONY FROM APPLE WITNESSES

11    ABOUT HOW HARD THEY WORKED ON THE IPHONE.  DID

12    YOU --

13              THE COURT:  OH, OKAY.  I'M SORRY.  ONE OF

14    OUR JURORS IS HAVING A LITTLE DIFFICULTY HEARING.

15    IS THAT THE TRANSLATIONS?

16              JUROR:  THE INTERPRETER.

17              THE COURT:  OKAY.  COULD WE GIVE HIM A

18    MICROPHONE, OR --

19              THE INTERPRETER:  I CAN STEP UP, YOUR

20    HONOR.

21              THE COURT:  OH.  BUT WE MAY HAVE A

22    MICROPHONE IF YOU WOULDN'T MIND.

23              MR. QUINN:  CAN WE STOP THE CLOCK, YOUR

24    HONOR.

25              THE COURT:  YES, IT'S 1:34.
```

```
 1              COULD YOU JUST SAY SOMETHING AND MAKE
 2     SURE THAT ALL OF OUR --
 3              THE INTERPRETER:  ACTUALLY, I WOULD HAVE
 4     TO PLACE IT ON THE TABLE.  TESTING.  IS THAT GOOD
 5     ENOUGH, OR NO?
 6              JUROR:  I DIDN'T HEAR HIM.  TESTING,
 7     TESTING 1, TESTING 2.  IS THAT BETTER?
 8              THE COURT:  OKAY.  I'M JUST -- I WANT TO
 9     MAKE SURE THAT HE CAN HEAR YOU.
10              MR. QUINN:  WOULD THIS STOOL BE HELPFUL?
11              THE COURT:  I THINK HE DOESN'T WANT TO
12     SIT DOWN.
13              THE INTERPRETER:  I WOULD SIT NEXT TO THE
14     WITNESS, EXCEPT THAT I DON'T WANT TO BE TOO CLOSE
15     TO THE WITNESS.
16              THE COURT:  WELL, I THINK THAT MIGHT
17     ENSURE THAT YOU CAN BE HEARD, WHICH --
18              THE INTERPRETER:  SURE, OKAY, THAT'S
19     FINE.
20              THE COURT:  IF YOU TWO DON'T MIND.
21              THE INTERPRETER:  TESTING.
22              THE COURT:  OKAY.  THIS IS NOT YOUR TIME.
23              THUS FAR, IS THERE ANY PART THAT YOU HAVE
24     NOT HEARD?
25              JUROR:  NO.  I THINK IT WAS THE -- JUST A
```

3529

```
 1    LITTLE BIT IN BETWEEN, I NOTICED VOLUME WOULD DROP
 2    A LITTLE BIT.  SO I WAS ABLE TO PRETTY MUCH HEAR
 3    JUST ABOUT EVERYTHING, BUT THE VOLUME DROPPED JUST
 4    A LITTLE BIT.  I WANT TO MAKE SURE THAT I'M NOT
 5    MISSING ANYTHING.
 6              THE COURT:  WELL, YOU HEARD THE EDUCATION
 7    AND THE PRIZE AND HER FUNCTION AT HER COMPANY?
 8              JUROR:  YES.
 9              THE COURT:  YOU HEARD ALL OF THAT?
10              JUROR:  YES.
11              THE COURT:  JUST FOR THE RECORD, THIS IS
12    JUROR NUMBER 9.
13              YOU HEARD ALL OF THAT ABOUT HER EDUCATION
14    AND WHERE SHE WORKS AND THAT SHE'S GOING TO GET
15    THIS, IS BEING CONSIDERED FOR A PRIZE?
16              PROSPECTIVE JUROR:  YES.
17              THE COURT:  YOU HEARD ALL OF THAT?
18              PROSPECTIVE JUROR:  YEAH.
19              THE COURT:  OKAY.  ALL RIGHT.  ARE THERE
20    ANY POINTS THAT YOU RECALL?  YOU DIDN'T HEAR
21    ANYTHING?
22              JUROR:  SHE MENTIONED SOMETHING ABOUT
23    THE, BEING THE LEAD, I THINK IT WAS THE LEAD
24    DESIGNER IN THE DESIGN TEAM.
25              THE COURT:  IT WAS CORRECTED TO SENIOR
```

2530

```
 1    DESIGNER.

 2               THE INTERPRETER:  THAT IS CORRECT, YOUR

 3    HONOR.

 4               JUROR:  OKAY.

 5               THE COURT:  ANY OTHER THINGS?

 6               JUROR:  NOT AT THIS TIME.

 7               THE COURT:  OKAY.  ALL RIGHT.

 8               OKAY.  IT'S 1:36.  GO AHEAD, PLEASE.

 9               MR. QUINN:  THANK YOU, YOUR HONOR.

10    Q    MS. WANG, WE'VE HEARD TESTIMONY FROM APPLE

11    WITNESSES ABOUT HOW HARD THEY WORKED TO BRING THE

12    IPHONE TO MARKET.

13               DID YOU -- WOULD YOU TELL US WHAT IT WAS

14    LIKE WORKING ON THE GALAXY PHONE, THE DESIGN

15    ASPECTS FOR THE USER EXPERIENCE THAT YOU WORKED ON?

16    A    YES, I CAN.  SAMSUNG IS A COMPANY THAT'S VERY

17    TOUGH TO WORK AT AND IN KOREA.  IT'S A VERY HARD

18    WORKING TYPE OF COMPANY.  ANYWAY, WHEN WE WERE

19    DESIGNING GALAXY SI, WE HAD PEOPLE FROM SEOUL AND

20    ALSO FROM SUWON, AND ALSO FROM GUMI.  THE PEOPLE

21    FROM SUWON, THERE WERE HUNDREDS OF DEVELOPERS, AND

22    ALSO PEOPLE FROM GUMI, THERE WERE MULTIPLE OF TENS

23    WHO WERE INVOLVED IN VERIFICATIONS.

24               SO WITH ALL THOSE PEOPLE COMING FROM

25    DIFFERENT PLACES.  THERE WAS AT ONE POINT WHERE WE
```

3531

```
1    HAD ALL COME TOGETHER AND WORKED TOGETHER AS A TEAM
2    FOR ABOUT THREE MONTHS AND DURING THAT TIME PERIOD
3    OF THREE MONTHS, MY RECOLLECTION WOULD BE THAT I
4    SLEPT PERHAPS TWO HOURS OR THREE HOURS A NIGHT.
5    THAT WAS ABOUT IT.
6              AND ALSO DURING THAT TIME PERIOD, I
7    ACTUALLY ENCOUNTERED SOMETHING THAT WAS VERY
8    DIFFICULT FOR ME.  BACK THEN I HAD JUST GIVEN BIRTH
9    TO A NEWBORN, AND I WAS FEEDING MOTHER'S MILK TO
10   THE BABY.  BUT SINCE I WASN'T ABLE TO BE WITH THE
11   BABY SO MUCH, I HAD TO SAVE THE BREAST MILK.
12             BUT IT JUST HAPPENED THAT I WASN'T ABLE
13   TO DO THAT ON A CONSISTENT BASIS.  SO MY
14   RECOLLECTION WAS THAT THE BREAST FEEDING HAD TO
15   COME TO A STOP BECAUSE I HAD -- MY BODY WOULD NOT
16   GIVE MILK ANY MORE.
17   Q    SO IT WAS A DEVELOPING, THE USER INTERFACE,
18   THE ICONS, THAT MENU PAGE, WAS THAT A VERY INTENSE
19   PERIOD OF HARD WORK FOR YOU?
20   A    THAT'S CORRECT.  THOSE WERE DIFFICULT TIMES.
21   Q    LET'S TALK ABOUT SOME -- LET'S TALK ABOUT
22   ICONS AND ICON DESIGN.
23             WHAT FACTORS DO YOU CONSIDER MOST
24   IMPORTANT IN DESIGNING AN EFFECTIVE ICON?
25   A    THERE ARE A FEW THINGS THAT'S IMPORTANT WHEN
```

```
1    IT COMES TO DESIGNING AN ICON.  THE FIRST THING

2    THAT COMES TO MIND IS THAT WHEN A USER IS LOOKING

3    AT AN ICON, THE USER SHOULD BE ABLE TO RECOGNIZE IT

4    AS SUCH RIGHT AWAY.

5              AND, SECONDLY, THE COLOR AND THE SHAPE

6    ARE ALSO IMPORTANT IN THAT THEY SHOULD BE GOOD OR

7    PRETTY TO LOOK AT.

8              AND ALSO, EASILY -- EASY TO GRASP.

9              THIRDLY, IT HAS TO BE SOMETHING THAT HAS

10   TO BE EASILY MEMORIZED OR MEMORABLE.

11   Q    AND WHEN YOU'RE DESIGNING -- I'M SORRY.  IS

12   THERE A CORRECTION?

13             THE INTERPRETER:  NO, YOUR HONOR.  NO,

14   SIR.

15   BY MR. QUINN:

16   Q    ARE THERE ADDITIONAL SPECIAL CONSIDERATIONS

17   THAT HAVE TO BE TAKEN INTO ACCOUNT WHEN YOU DESIGN

18   AN ICON THAT'S GOING TO BE USED ON A TOUCHSCREEN?

19   A    YES, OF COURSE.  WHEN IT COMES TO TOUCHSCREEN,

20   IT HAS TO BE A CERTAIN AMOUNT OR A CERTAIN PART OF

21   THE SCREEN THAT WOULD ALLOW FOR THE TOUCHING TO

22   TAKE PLACE.

23             AND SO THERE HAS TO BE A CERTAIN SIZE,

24   SHALL WE SAY, AND ALSO THERE HAS TO BE A VIVID

25   COLOR THAT IS AVAILABLE FOR THE USER SO THE USER
```

```
 1    WILL BE ABLE TO RECOGNIZE THE AREA AND USE THEIR
 2    FINGER TO TOUCH.
 3    Q    LET'S TAKE A LOOK AT AN ICON.  WE DON'T HAVE
 4    TIME TO GO THROUGH VERY MANY OF THEM, BUT IF WE
 5    COULD PUT UP, YOUR HONOR, DEMONSTRATIVE 3972.012,
 6    3972.012, THE MENU SCREEN FOR THE GALAXY S, AND
 7    LET'S JUST BEGIN WITH THAT PHONE ICON IN THE LOWER
 8    LEFT.
 9            ARE YOU THE ONE THAT SELECTED THIS ICON
10    FOR USE ON THE GALAXY PHONE?
11    A    YES, THAT IS CORRECT.
12    Q    WHY DID YOU CHOOSE THIS ONE?
13            MR. JACOBS:  YOUR HONOR, OBJECTION.
14    PRIOR DISCUSSION.  YOU WILL SEE AT PAGE 18.
15            THE COURT:  OVERRULED.
16            GO AHEAD.
17            THE WITNESS:  WELL, I DESIGNED IT AS SUCH
18    BECAUSE IT'S A PHONE, SO I DESIGNED IT AS A PHONE.
19    THE SAME GOES WITH THE CLOCK, AND ALSO THE CAMERA.
20    BY MR. QUINN:
21    Q    HAVE YOU, IN THE PAST, HAS SAMSUNG
22    EXPERIMENTED WITH OTHER ICONS FOR PHONE ON
23    TELEPHONES?
24    A    YES, WE HAVE.
25    Q    AND WHAT OTHER ICONS HAVE YOU USED FOR PHONES
```

2534

```
1    AND WHAT WAS YOUR EXPERIENCE WITH THEM?
2    A    YES.  WELL, WE HAVE TRIED QUITE A FEW
3    DIFFERENT ICONS AND THERE WERE EVEN CERTAIN
4    DIRECTIVES COMING FROM UP ABOVE TELLING US TO COME
5    UP WITH SOMETHING OF A DESIGN THAT'S MORE
6    SOPHISTICATED, SOMETHING THAT LOOKS MORE LIKE A
7    SMARTPHONE.
8              SO WE TRIED DIFFERENT ICONS.  FOR
9    EXAMPLE, WE TRIED AN ICON THAT LOOKED LIKE A CELL
10   PHONE WITH AN ANTENNA, AND THEN WE ALSO TRIED AN
11   ICON THAT LOOKED MORE LIKE A SMARTPHONE.
12             BUT WHAT HAPPENED WAS THAT THE PEOPLE
13   WOULD ACTUALLY MISTAKE THESE ICONS.  SOME PEOPLE
14   THOUGHT THIS WAS A GAME OR MAYBE A PDA OR EVEN A
15   CALCULATOR.  SO WE HAD SOME PROBLEMS.
16   Q    HOW LONG HAS SAMSUNG USED THIS PARTICULAR TYPE
17   OF MA BELL, WE'VE HEARD IT CALLED A MA BELL, I
18   DON'T KNOW IF THAT TRANSLATES INTO KOREAN, ICON ON
19   PHONES.
20             MR. JACOBS:  OBJECTION, YOUR HONOR.
21   LEADING.  HE'S GIVING THE WITNESS A NAME FOR THIS.
22             THE COURT:  SUSTAINED.  SUSTAINED.
23   THAT'S STRICKEN.
24   BY MR. QUINN:
25   Q    DO YOU HAVE A NAME THAT YOU USE FOR THIS
```

1

2                    CERTIFICATE OF REPORTERS

3

4

5

6            WE, THE UNDERSIGNED OFFICIAL COURT

7    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

8    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11            THAT THE FOREGOING TRANSCRIPT,

12   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

13   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

14   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

15   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

16   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

17

18                     /S/
                     _____.
19                   LEE-ANNE SHORTRIDGE, CSR, CRR
                     CERTIFICATE NUMBER 9595
20

21                     /S/
                     _____
22                   IRENE RODRIGUEZ, CSR, CRR
                     CERTIFICATE NUMBER 8074
23

24                   DATED:  AUGUST 14, 2012

25

2651

1               UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6  CORPORATION,                 )
                                )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,       )
                                )  AUGUST 15, 2012
8          VS.                   )
                                )  VOLUME 9
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  PAGES 2651-2965
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                              )
                DEFENDANTS.      )
15 _____

16             TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
24                           IRENE RODRIGUEZ, CSR, CRR
                             CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                       BY:  HAROLD J. MCELHINNY
 3                                      MICHAEL A. JACOBS
                                        RACHEL KREVANS
 4                           425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                 HALE AND DORR
 7                           BY:  WILLIAM F. LEE
                             60 STATE STREET
 8                           BOSTON, MASSACHUSETTS  02109

 9                           BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
10                           PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
12                           BY:  CHARLES K. VERHOEVEN
                                  ALBERT P. BEDECARRE
13                           50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
14
                             BY:  VICTORIA F. MAROULIS
15                                KEVIN P.B. JOHNSON
                             555 TWIN DOLPHIN DRIVE
16                           SUITE 560
                             REDWOOD SHORES, CALIFORNIA  94065
17
                             BY:  MICHAEL T. ZELLER
18                                WILLIAM C. PRICE
                                  JOHN B. QUINN
19                           865 SOUTH FIGUEROA STREET
                             10TH FLOOR
20                           LOS ANGELES, CALIFORNIA  90017

21    FOR INTERVENOR         RAM, OLSON,
      REUTERS:               CEREGHINO & KOPCZYNSKI
22                           BY:  KARL OLSON
                             555 MONTGOMERY STREET, SUITE 820
23                           SAN FRANCISCO, CALIFORNIA  94111

24
      INTERPRETERS:          JAMES YIM VICTORY
25                           ANN PARK
                             ALBERT KIM
```

1

2                        INDEX OF WITNESSES

3       DEFENDANT'S

4       **MARKUS PALTIAN**
             VIDEO DEPOSITION PLAYED          P. 2670
5                                             P. 2671

6

7       **ANDRE ZORN**
             VIDEO DEPOSITION PLAYED          P. 2671
                                              P. 2672
8

9       **TIM ARTHUR WILLIAMS**
             DIRECT EXAM BY MR. VERHOEVEN     P. 2676
             CROSS-EXAM BY MR. LEE            P. 2739
10

11      **JIN SOO KIM**
             DIRECT EXAM BY MR. QUINN         P. 2787
12           CROSS-EXAM BY MR. MCELHINNY      P. 2821
             REDIRECT EXAM BY MR. QUINN       P. 2833
13

14      **RICHARD HOWARTH**
             DIRECT EXAM BY MR. PRICE         P. 2838
15           CROSS-EXAM BY MR. MCELHINNY      P. 2842

16

17      **ANDRIES VAN DAM**
             DIRECT EXAM BY MR. JOHNSON       P. 2845
             CROSS-EXAM BY MS. KREVANS        P. 2873
18           REDIRECT EXAM BY MR. JOHNSON     P. 2883
             RECROSS-EXAM BY MS. KREVANS      P. 2884
19

20      **STEPHEN GRAY**
             DIRECT EXAM BY MR. DEFRANCO      P. 2893
21           CROSS-EXAM BY MR. JACOBS         P. 2924

22

23

24

25

```
1    NOT HAVE ALLEGATIONS TO COUNTER WHAT'S BEEN
2    REPRESENTED.
3              MR. SELWYN:  YOUR HONOR, WE'LL BE
4    PREPARED TO FILE OUR BRIEF BY NOON.  I CAN ADDRESS
5    IT ORALLY NOW IF YOU'D LIKE AS WELL.
6              THE COURT:  NO, BECAUSE I WANT TO SEE
7    ACTUAL DOCUMENTS.  I DON'T WANT ANY ATTORNEY
8    REPRESENTATION ABOUT WHAT VARIOUS THINGS SAY.
9    OKAY.
10             MR. SELWYN:  CERTAINLY.  WE CAN HAVE THAT
11   FILED BY NOON IF YOU NEED IT.
12             THE COURT:  BY NOON.  OKAY, WHAT'S THE
13   CHANCE THAT -- I'M ASSUMING -- HOW QUICKLY DO I
14   NEED TO RULE ON THIS?
15             IS THERE ANY CHANCE THAT ANY OF THESE
16   FOLKS WILL BE TESTIFYING TODAY?
17             MR. SELWYN:  NO.  I DON'T BELIEVE THEY'LL
18   ALL BE TESTIFYING TOMORROW.
19             THE COURT:  ALL RIGHT.  SO IF I GIVE YOU
20   A RULING AT THE END OF THE DAY, THAT WOULD BE
21   ENOUGH TIME?
22             MR. SELWYN:  CERTAINLY.
23             THE COURT:  ALL RIGHT.  FILE THAT,
24   PLEASE, NO LATER THAN NOON.  AND WE'LL FILE AN
25   ORDER TONIGHT.
```

```
 1              OKAY.  DID YOU TALK TO MS. KARE?

 2              MS. KREVANS:  MY COLLEAGUE, WHO TRIED TO

 3    GET IN TOUCH WITH HER TRIED AND COULDN'T GET HER

 4    LAST NIGHT.  WE'RE TRYING TO GET HER THIS MORNING.

 5    I FOUND OUT MORE PARTICULARS, YOUR HONOR.

 6              THE ISSUE IS SHE IS TAKING ONE SON

 7    BACK-TO-SCHOOL WHO DOESN'T LIVE HERE AND DOESN'T GO

 8    TO SCHOOL IN THE BAY AREA AND DRIVING DOWN TO SAN

 9    DIEGO TO PICK UP HER YOUNGEST CHILD FROM CAMP.  SHE

10    CAN'T PICK HIM UP UNTIL FRIDAY.  SO THAT'S PROBLEM.

11    WE'RE TRYING AGAIN, BUT THAT'S THE SPECIFICS OF IT.

12              THE COURT:  WELL, LET ME TELL YOU WHAT MY

13    CONCERN IS.  I HAVE A CRIMINAL CALENDAR NEXT

14    WEDNESDAY AND A CIVIL CALENDAR.  I ONLY HAVE SPEEDY

15    TRIAL EXCLUSIONS FOR MY DEFENDANTS IN MY CRIMINAL

16    CASES UNTIL NEXT WEDNESDAY, SO THAT'S NOT GOING TO

17    MOVE.  I'VE GOT OTHER CIVIL CASES WEDNESDAY.  I'VE

18    GOT SUMMARY JUDGMENT MOTIONS ON CASES THAT ARE SET

19    TO GO TO TRIAL IN SEPTEMBER ON THURSDAY.

20              SO I'M NOT -- YOU KNOW, I'VE MOVED ENOUGH

21    FOR THIS CASE.  I'M NOT GOING TO MOVE IT ANY MORE.

22              SO IF WE DON'T HAVE THE JURY START

23    DELIBERATING ON TUESDAY, EVERYTHING IS GOING TO

24    START GETTING PUSHED UNTIL FRIDAY AND WE'RE GOING

25    TO LOSE PEOPLE.  I'M GOING TO SAY IF SHE CAN'T MAKE
```

```
1    IT THIS WEEK, WE'RE GOING TO HAVE TO MOVE THE

2    EVIDENCE.  IF SHE CAN'T COME THIS WEEK, I'M SORRY,

3    WE'RE PUSHING FORWARD.  I'M ASSUMING, ARE YOU GOING

4    TO MAKE THE SAME REQUEST THAT THE CLOSING ALL HAVE

5    TO BE ON THE SAME DAY OR ARE YOU OKAY WITH THEM

6    BEING SPLIT UP.

7             MR. VERHOEVEN:  I BELIEVE THE CLOSING

8    WOULD BE THE SAME DAY, YOUR HONOR.

9             THE COURT:  SAME DAY.  WELL, THAT'S A

10   FOUR-HOUR STRETCH.  AND READING THESE JURY

11   INSTRUCTIONS IS GOING TO PUT EVERYONE IN A COMA AND

12   IT'S GOING TO TAKE AT LEAST -- I DON'T EVEN KNOW

13   THE FULL LENGTH, BUT IT'S PROBABLY GOING TO TAKE AT

14   LEAST AN HOUR AND A HALF.  SO IF WE WANT TO READ

15   THESE INSTRUCTIONS TO THE JURY, WHICH I HAVE TO DO,

16   AND GIVE ALL FOUR HOURS, THIS THING HAS GOT TO GO

17   TO CLOSING BY TUESDAY.

18             SO --

19             MS. KREVANS:  YOUR HONOR, SHE'S A SINGLE

20   PARENT.

21             THE COURT:  I'M SORRY.  I'M ALL FOR

22   FAMILY VALUES, BUT SHE NEEDS TO BE HERE.

23             MS. KREVANS:  SHE'S A SINGLE PARENT.

24   THERE'S ONLY SO MUCH SHE CAN DO.  WE ARE WORKING ON

25   IT.
```

```
 1              THE COURT:  OKAY.  NOW, ONE OTHER THING I
 2     WANT TO ASK BEFORE WE BRING IN OUR JURY IS I WOULD
 3     LIKE TO -- I'M GOING TO MAKE TWO MORE REQUESTS.
 4              ONE IS, IS THERE ANY FURTHER NARROWING OF
 5     THE CASE THAT CAN BE DONE BEFORE THIS GOES TO THE
 6     JURY?  AND I'M JUST -- I'M JUST THROWING IT OUT
 7     THERE.  I WANT YOU ALL TO THINK ABOUT IT, CONSULT
 8     WITH YOUR CLIENTS BECAUSE IT WOULD HELP A LOT WITH
 9     BOTH THE JURY INSTRUCTIONS AND THE VERDICT FORM AND
10     JUST WHAT THIS JURY HAS TO DEAL WITH IF THERE COULD
11     BE FURTHER STREAMLINING.
12              NOW THAT YOU'VE SEEN EVERYTHING THAT'S
13     COME IN, ONE THING THAT COMES TO MIND IS THOSE SAME
14     THREE PRODUCTS FOR WHICH I GRANTED THE RULE 30
15     MOTION AS TO SEC -- I MEAN, I WANT YOU ALL TO JUST
16     THINK ABOUT IT, OKAY?  BUT, I MEAN, IF YOU ALL WANT
17     TO KEEP OVERREACHING, THAT'S UP TO YOU.  BUT IF
18     NOT, I THINK IT WOULD BE BETTER TO STREAMLINE THIS
19     CASE.
20              SO CAN YOU ALL THINK ABOUT THAT, IF THERE
21     ARE OTHER NARROWING THAT COULD BE DONE DURING THIS
22     PROCESS BEFORE WE GET TO A VERDICT FORM?
23              MR. MCELHINNY:  YES, YOUR HONOR.
24              MR. VERHOEVEN:  YES, YOUR HONOR.
25              THE COURT:  OKAY.  THEN THE OTHER THING I
```

```
 1    AM GOING TO REQUEST, AND I'M JUST GIVING YOU A

 2    HEADS UP, I GREATLY APPRECIATE THAT AT MY REQUEST

 3    OR ORDER YOUR CEO'S MET IN PERSON WITH JUDGE SPERO

 4    FOR SEVERAL DAYS OVER THE LAST FEW MONTHS.

 5              BUT BEFORE THIS JURY STARTS DELIBERATING,

 6    I'M GOING TO MAKE ONE LAST REQUEST THAT THEY AT

 7    LEAST SPEAK BY PHONE ONE LAST TIME BECAUSE I SEE

 8    RISKS HERE FOR BOTH SIDES IF YOU GO TO A VERDICT OR

 9    IF IT HANGS, WHATEVER IS GOING TO HAPPEN.  AND I

10    THINK THAT IT'S AT LEAST WORTH ONE MORE CHANCE.

11              I DON'T MEAN TO WASTE THEIR TIME, AND I

12    APOLOGIZE IF I'M WASTING THEIR TIME, BUT WOULD YOU

13    ALL COMMIT TO ME THAT PERHAPS ONE MORE TIME, BEFORE

14    THIS JURY STARTS DELIBERATING, YOU'LL HAVE YOUR

15    CEO'S HAVE ONE LAST CONVERSATION?

16              MR. MCELHINNY:  YES, MA'AM.

17              THE COURT:  OKAY.  IS THAT --

18              MR. VERHOEVEN:  YES, YOUR HONOR.

19              THE COURT:  I MEAN, I --

20              MR. SEWALL:  YOUR HONOR, I'LL COMMIT ON

21    BEHALF OF APPLE.

22              THE COURT:  OKAY.  THANK YOU.  YOU KNOW,

23    IF WHAT YOU ALL HAVE WANTED IS TO RAISE AWARENESS

24    THAT YOU HAVE I.P. ON THESE DEVICES, MESSAGE

25    DELIVERED.  OKAY?
```

```
1              IF WHAT YOU ALL HAVE WANTED IS SOME

2    EXTERNAL VALUATIONS OF THE STRENGTH OF YOUR I.P., I

3    THINK YOU'VE KIND OF GOTTEN THAT FROM TRIAL COURTS

4    AND APPELLATE COURTS WORLDWIDE.

5              SO IN MANY RESPECTS, MISSION

6    ACCOMPLISHED.  IT'S TIME FOR PEACE.  OKAY.  SO I'M

7    JUST GIVING YOU A HEADS UP, BECAUSE THIS JURY MAY

8    START DELIBERATING WITHIN A WEEK, IF YOU COULD HAVE

9    YOUR CEO'S HAVE ONE LAST CONVERSATION, I'D

10   APPRECIATE IT.

11             MR. VERHOEVEN:  YES, YOUR HONOR.

12             THE COURT:  ALL RIGHT.  OKAY.  WHAT ELSE

13   DO WE NEED TO COVER?  ANYTHING ELSE?

14             MR. LEE:  YOUR HONOR, JUST A COUPLE OF

15   LOGISTICS.  I'D LIKE TO LODGE JUST THE TRANSCRIPT

16   PORTIONS FROM THE DEPOSITION CLIPS THAT WE SHOWED

17   YESTERDAY.

18             THE COURT:  OH, OKAY.

19             MR. LEE:  AND I'VE SHOWN THEM TO

20   MR. JOHNSON.

21             PX 211 WILL BE THE --

22             THE COURT:  YOU KNOW WHAT, THIS IS ON

23   YOUR TRIAL TIME.

24             MR. LEE:  OKAY.  I'LL DO IT QUICKLY.

25             THE COURT:  NO, NO.  WE'RE GOING TO DO
```

```
1    THIS WITH THE JURY.  IT'S GOING TO BE ON YOUR TRIAL

2    TIME.

3              MR. LEE:  OKAY.

4              THE COURT:  OKAY?  BECAUSE THIS IS

5    LODGING OF EXHIBITS.  AND IS EVERYONE'S CASE VIEW

6    WORKING?  BECAUSE MINE IS NOT WORKING AGAIN.

7              MS. MAROULIS:  YOUR HONOR, CAN I HAVE A

8    QUICK ADMINISTRATIVE QUESTION?

9              THE COURT:  YES, PLEASE,

10             MS. MAROULIS:  WE'VE BEEN LODGING THE

11   EXHIBITS IN CONNECTION WITH OUR OBJECTIONS, PER THE

12   COURT'S INSTRUCTIONS, BUT WE HAVEN'T BEEN FILING

13   THEM.

14             FOR PURPOSES OF THE APPELLATE RECORD, I

15   ASSUME THE PARTIES WILL BOTH WANT TO FILE THESE

16   EITHER REJECTED EXHIBITS OR OBJECTED TO.  WHEN

17   WOULD THE COURT LIKE US TO DO THAT AND HOW?

18             THE COURT:  I'M GOING TO DEFER TO YOU ALL

19   ON THAT.  WHEN WOULD YOU LIKE TO DO THAT?

20             MS. MAROULIS:  IF WE CAN DO IT BEFORE THE

21   END OF THE CASE BY AGREEMENT AND COME UP WITH A

22   LIST OF WHAT WAS OBJECTED TO AND SIMPLY BRING A

23   STACK TO YOU AND PUT IT IN FOR THE RECORD AS

24   REJECTED EXHIBITS OR OBJECTED TO EXHIBITS.

25             THE COURT:  THAT'S FINE.  I'M MOSTLY
```

```
1    CONCERNED WITH THE ONES THAT ARE COMING IN.  I'LL

2    FINE IF YOU WANT TO WORK IT OUT.

3                 MS. MAROULIS:  OKAY.  WE'LL MEET AND

4    CONFER.

5                 THE COURT:  YOU WANT TO SAY BY NEXT

6    TUESDAY, YOU'LL FILE ALL THE REJECTED EXHIBITS.

7                 MS. MAROULIS:  YES, YOUR HONOR.

8                 THE COURT:  OKAY.  WHAT ELSE?  ANYTHING

9    ELSE?

10                MR. VERHOEVEN:  VERY BRIEFLY, YOUR HONOR,

11   THIS IS MR. VERHOEVEN.

12                YOU WILL RECALL THAT YESTERDAY THERE WAS

13   EXHIBIT 621, WHICH WAS THE VIDEO FROM ROGER FIDLER.

14                THE COURT:  YES.

15                MR. VERHOEVEN:  AND YOUR HONOR PERMITTED

16   ME TO PUT MR. SHERMAN ON THE STAND BEFORE APPLYING

17   THAT.

18                THE COURT:  UM-HUM.

19                MR. VERHOEVEN:  WE -- THAT'S A 13 -- OR A

20   15 -- I THINK ABOUT A 15-MINUTE VIDEO.

21                THE COURT:  OKAY.

22                MR. VERHOEVEN:  AND WE DON'T WANT TO USE

23   15 MINUTES OF OUR TIME.

24                THE COURT:  OKAY.

25                MR. VERHOEVEN:  SO WE'VE CREATED A
```

4835

```
1     Q    SIR --

2     A    THAT'S NOT WHAT I HEARD.

3     Q    THE GALAXY 7.0 IS NOT ANYTHING THIS JURY NEEDS

4     TO MAKE ANY DECISION ABOUT; ISN'T THAT TRUE?

5              MR. MCELHINNY:  YOUR HONOR, THAT'S JUST

6     FACTUALLY WRONG.  IT'S AN ACCUSED DEVICE IN THE

7     CASE.  THAT'S WHY I'M HAVING THIS PROBLEM.

8              MR. QUINN:  MAYBE I CAN GET A

9     CLARIFICATION FROM COUNSEL, YOUR HONOR.  IS HE

10    SAYING IT'S ACCUSED FOR DESIGN?

11             MR. MCELHINNY:  WHAT COUNSEL IS SAYING,

12    YOUR HONOR, IS THIS WITNESS HAS NO IDEA WHAT'S AT

13    ISSUE.

14    BY MR. QUINN:

15    Q    SIR, IS IT YOUR UNDERSTANDING THAT THERE ARE

16    ANY DESIGN CLAIMS REGARDING THE GALAXY 7.0 PRODUCT?

17    A    NO.

18    Q    SO THE ONLY DOCUMENTS THAT COUNSEL SHOWED YOU

19    ARE REGARDING THE DESIGN OF DOCUMENTS THAT HAVE

20    NOTHING TO DO WITH THIS CASE; CORRECT?

21    A    YES, THAT'S CORRECT.

22             MR. QUINN:  NOTHING FURTHER.

23             THE COURT:  ALL RIGHT.  IT'S 2:20.  IS

24    THERE ANY REDIRECT?

25             MR. MCELHINNY:  NONE FOR ME, YOUR HONOR.
```

```
1              THE COURT:  ALL RIGHT.  MAY THIS WITNESS

2     BE EXCUSED, AND IS HE SUBJECT TO RECALL?

3              MR. MCELHINNY:  WE WON'T NEED HIM.

4              MR. QUINN:  WE DON'T NEED HIM, YOUR

5     HONOR.

6              THE COURT:  ALL RIGHT.  THEN YOU ARE

7     EXCUSED.

8              OKAY.  CALL YOUR NEXT WITNESS, PLEASE.

9              MR. VERHOEVEN:  YOUR HONOR, NEXT, AS

10    YOU'LL RECALL YESTERDAY, WE PLAYED THE DEPOSITION

11    DESIGNATIONS OF MR. FIDLER.

12             THE COURT:  OKAY.

13             MR. VERHOEVEN:  AND AUTHENTICATED HIS

14    PRESENTATION, AND YOUR HONOR SUGGESTED THAT -- WE

15    MOVED IT IN, AND YOUR HONOR SUGGESTED WE PLAY IT.

16    WE HAVE A SHORTENED VERSION OF THAT, WHICH IS DX

17    621-A, YOUR HONOR.

18             THE COURT:  OKAY.

19             MR. VERHOEVEN:  AND WE'VE ALLOWED COUNSEL

20    FOR APPLE TO REVIEW IT, AND WE'RE READY TO PLAY IT.

21             THE COURT:  OKAY.  GO AHEAD, PLEASE.

22             COULD YOU DIM THE LIGHTS PLEASE,

23    MR. RIVERA.

24             THIS IS 621-A; CORRECT?

25             MR. VERHOEVEN:  CORRECT, YOUR HONOR.
```

8337

```
1              THE COURT:  OKAY.  THANK YOU.
2              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN
3     OPEN COURT OFF THE RECORD.)
4              THE COURT:  ALL RIGHT.
5              MR. VERHOEVEN:  FOR THE RECORD, THAT'S
6     621-A.  IS THAT ADMITTED, YOUR HONOR?
7              THE COURT:  IT'S BEEN ADMITTED, YES.
8              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
9              621-A, HAVING BEEN PREVIOUSLY MARKED FOR
10             IDENTIFICATION, WAS ADMITTED INTO
11             EVIDENCE.)
12             MR. VERHOEVEN:  OKAY.  THANK YOU.
13             THE COURT:  ALL RIGHT.  IT'S 2:26.
14     CALL YOUR NEXT WITNESS, PLEASE.
15             MR. PRICE:  WE CALL RICHARD HOWARTH.
16             THE COURT:  OKAY.
17             THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.
18                      RICHARD HOWARTH,
19     BEING CALLED AS A WITNESS ON BEHALF OF THE
20     DEFENDANT, HAVING BEEN FIRST DULY SWORN, WAS
21     EXAMINED AND TESTIFIED AS FOLLOWS:
22             THE WITNESS:  I DO.
23             THE CLERK:  THANK YOU.  PLEASE BE SEATED.
24             THE COURT:  ALL RIGHT.  TIME IS NOW 2:27.
25     GO AHEAD, PLEASE.
```

1              **DIRECT EXAMINATION**

2      BY MR. PRICE:

3      Q    MR. HOWARTH, YOU'RE AN INDUSTRIAL DESIGNER AT

4      APPLE; CORRECT?

5      A    THAT'S RIGHT.

6      Q    AND YOU WERE A LEAD DESIGNER ALONG WITH CHRIS

7      STRINGER ON THE ORIGINAL IPHONE PROJECT; CORRECT?

8      A    SURE.

9      Q    AND I'D LIKE YOU TO LOOK IN YOUR BINDER,

10     THERE'S AN EXHIBIT DX 2627.  DO YOU SEE THAT?

11     A    YES.

12     Q    AND DO YOU SEE THIS IS AN APPLE 3G SM CONGRESS

13     TRADE SHOW REPORT.  CORRECT?

14     A    JUST GIVE ME A SECOND.

15     Q    ARE YOU LOOKING AT EACH PAGE ONE BY ONE?

16     A    YEAH, I'M TRYING TO GET AN IDEA WHAT IT IS.

17     Q    LET ME ASK YOU, THE PAGE SAYS -- IT HAS AN

18     APPLE LOGO ON IT, AND AT THE BOTTOM IT HAS BATES

19     NUMBERS THAT BEGIN WITH A-P-L, APPLE, CORRECT?

20     A    SURE.

21              MR. PRICE:  YOUR HONOR, MOVE 2627 INTO

22     EVIDENCE.

23              MR. MCELHINNY:  YOUR HONOR, WE OBJECT TO

24     THIS DOCUMENT.  IT'S NOT ON THE ORIGINAL LIST OF

25     200.  IT'S OUT OF LIMIT.

1          MR. PRICE:  IT WAS NOT ON THE LIST,

2    BECAUSE IT WAS JUST DISCOVERED.

3          THE COURT:  I'M GOING ALLOW IT, BUT

4    YOU'RE DOING TRANSLATION OF A DOCUMENT TO HAVE TO

5    SUBTRACT ANOTHER ONE.  OKAY.

6          MR. PRICE:  SURE.

7          THE COURT:  IT'S ADMITTED.

8          (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

9          2627, HAVING BEEN PREVIOUSLY MARKED FOR

10          IDENTIFICATION, WAS ADMITTED INTO

11          EVIDENCE.)

12    BY MR. PRICE:

13    Q    LOOK AT THE FIRST PAGE, THIS IS ITSELF REPORT,

14    CORRECT, FIRST PAGE, RIGHT?

15    A    YES.

16    Q    LOOK AT PAGE 25 THROUGH 26.  ONE OF THE THINGS

17    THIS DOES IS COMPARE PRODUCTS, COMPARE THE PRODUCTS

18    SUCH AS THE F700 ON PAGE 26; CORRECT?  DO YOU SEE

19    THAT?

20    A    JUST GIVE ME A SECOND.

21          MR. PRICE:  YOUR HONOR, I BELIEVE THERE'S

22    A LIMITING INSTRUCTION YOU WERE GOING TO GIVE ON

23    THIS DOCUMENT, ONE BEING THAT THE DATE IS WRONG.

24          CAN WE GO TO THE FIRST PAGE AND SHOW

25    THAT.

3840

```
 1              THE COURT:  YES, GIVE ME A SEC.  I
 2   THOUGHT MR. LUCENTE WAS THE NEXT WITNESS.  SO I'VE
 3   GOT STUFF READY FOR HIM.  GIVE ME ONE SECOND.
 4              (PAUSE IN PROCEEDINGS.)
 5              THE COURT:  YES, YOU MAY NOT CONSIDER THE
 6   F700 AS EVIDENCE OF INVALIDITY OR NON-INFRINGEMENT.
 7              YOU MAY ONLY CONSIDER THE F700 FOR
 8   ALTERNATIVE DESIGN AND FUNCTIONALITY.
 9              MR. MCELHINNY:  I'M SORRY, YOUR HONOR.
10   ALSO THERE WAS AN INSTRUCTION ABOUT THE INCORRECT
11   DATE.
12              THE COURT:  YES, THAT IS CORRECT.  THE
13   DATE OF THIS DOCUMENT IS 2006, BUT THAT'S ACTUALLY
14   AN INCORRECT DATE.  THE CORRECT DATE IS 2007.
15   BY MR. PRICE:
16   Q    AND IF WE LOOK AT PAGE 42, 43, YOU'VE SEEN
17   THESE, RIGHT?
18   A    YES.
19   Q    I'D LIKE YOU TO LOOK, IF YOU WOULD, AT EXHIBIT
20   712 IN YOUR BINDER.
21   A    OKAY.
22   Q    AND YOU SEE THIS IS AN APPLE INTERNAL
23   DOCUMENT, APPLE BATES STAMPS AT THE BOTTOM.  IT IS
24   FEBRUARY 25, 2001 CONCERNING COMPREHENSIVE LIST FOR
25   CURRENT AND FUTURE FLAGSHIP PHONES.  DO YOU SEE
```

1    THAT?

2    A    DID YOU SAY 2001?

3    Q    I SAID 712, FEBRUARY 25, 2011.  SORRY.

4    A    OKAY.

5    Q    DO YOU SEE THAT?

6    A    SURE.

7              MR. PRICE:  YOUR HONOR, I MOVE EXHIBIT

8    712 INTO EVIDENCE.

9              MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.

10             THE COURT:  ALL RIGHT.  712 IS ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             712, HAVING BEEN PREVIOUSLY MARKED FOR

13             IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15   BY MR. PRICE:

16   Q    AND IF YOU WOULD LOOK NOW AT EXHIBIT 717.  AND

17   DO YOU SEE THAT IS A DOCUMENT WITHIN APPLE DATED

18   FEBRUARY 11TH, 2012, APPLE BATES STAMP CONCERNING

19   THE SAMSUNG GALAXY TAB 10.1 TAKE-APART.  DO YOU SEE

20   THAT?

21   A    YES.

22             MR. PRICE:  YOUR HONOR, I MOVE 717 INTO

23   EVIDENCE.

24             THE COURT:  NO OBJECTION?

25             MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.

2842

```
 1              THE COURT:  IT'S ADMITTED.
 2              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER
 3              717, HAVING BEEN PREVIOUSLY MARKED FOR
 4              IDENTIFICATION, WAS ADMITTED INTO
 5              EVIDENCE.)
 6    BY MR. PRICE:
 7    Q    AND IF YOU COULD LOOK AT PAGE 10 OF THE
 8    DOCUMENT, DO YOU SEE THERE ARE VARIOUS PHOTOS
 9    SHOWING THE TAKE-APART OF THE GALAXY TABLET;
10    CORRECT?
11    A    THEY LOOK LIKE, YEAH, A BUNCH OF COMPONENTS.
12              MR. PRICE:  OKAY.  NO FURTHER QUESTIONS.
13              THE COURT:  ALL RIGHT.  TIME IS NOW 2:33.
14              IS THERE ANY CROSS?
15                      CROSS-EXAMINATION
16    BY MR. MCELHINNY:
17    Q    COULD YOU PUT ON THE SCREEN, PLEASE,
18    DEFENDANT'S EXHIBIT 562, WHICH IS IN EVIDENCE, YOUR
19    HONOR.
20              THE COURT:  OKAY.
21    BY MR. MCELHINNY:
22    Q    MR. HOWARTH, IS THIS AN E-MAIL THAT YOU SENT
23    ON MARCH 8TH, 2006?
24              MR. PRICE:  YOUR HONOR, THIS EXCEEDS THE
25    SCOPE OF THE DIRECT.
```

```
 1                THE WITNESS:  YES.

 2                MR. PRICE:  IT CONCERNS THE CHAPPY.

 3                THE COURT:  IT DOES EXCEED THE SCOPE OF

 4     THE DIRECT.

 5                MR. MCELHINNY:  YOUR HONOR, IT DOES.  I

 6     WILL CONCEDE THAT.  THERE'S BEEN A BUNCH OF

 7     TESTIMONY ABOUT A PICTURE THAT'S BEEN ATTACHED TO

 8     THIS, AND MR. HOWARTH IS THE AUTHOR OF THE PICTURE.

 9     HE'S HERE.  I JUST WANT HIM TO IDENTIFY WHAT'S IN

10     THE PICTURE.  I'M NOT GOING TO GO INTO ANYTHING

11     OTHER THAN WHAT'S IN THE PICTURE.  CAN WE SEE THE

12     PICTURE.  CAN WE SEE THE PICTURE.

13                MR. PRICE:  I'VE ALSO BEEN INFORMED,

14     THOUGH I HAVEN'T BEEN HERE THE LAST COUPLE OF DAYS,

15     THAT THERE'S NOT BEEN, QUOTE, A BUNCH OF TESTIMONY

16     ABOUT THE PICTURES.  BEYOND THE SCOPE.

17                THE COURT:  I THINK IT IS BEYOND THE

18     SCOPE OF THE DIRECT.

19                MR. MCELHINNY:  THANK YOU, YOUR HONOR.  I

20     HAVE NO FURTHER QUESTIONS.

21                THE COURT:  ALL RIGHT.  MAY THIS WITNESS

22     BE EXCUSED?  IS IT SUBJECT TO RECALL OR NOT?  ARE

23     YOU GOING TO CALL HIM IN YOUR CASE, OR WHAT'S

24     HAPPENING?

25                MR. MCELHINNY:  HE'S EXCUSED, YOUR HONOR.
```

3844

```
 1                THE COURT:  OKAY.  ALL RIGHT.

 2                MR. VERHOEVEN:  HE'S EXCUSED.

 3                THE COURT:  ALL RIGHT.  YOU'RE EXCUSED.

 4           OKAY.  CALL YOUR NEXT WITNESS, PLEASE.

 5           IT IS NOW 2:35.  WHO'S YOUR NEXT WITNESS?

 6                MR. JOHNSON:  YOUR HONOR, SAMSUNG CALLS

 7      PROFESSOR ANDRIES VAN DAM.

 8                THE COURT:  OKAY.  CAN I ASK, THIS IS NOT

 9      THE WITNESS I WAS TOLD, SO CAN I FIND OUT --

10                MR. VERHOEVEN:  YOUR HONOR, I APOLOGIZE

11      FOR THAT.

12                THE COURT:  IT'S NOT A PROBLEM.

13                MR. VERHOEVEN:  WE'RE JUST TRYING TO

14      BALANCE THE TIME FOR TODAY.

15                THE COURT:  NO PROBLEM.

16                MR. VERHOEVEN:  SO WE'VE SKIPPED OVER

17      MR. LUCENTE.  I APOLOGIZE FOR NOT INFORMING, YOU

18      YOUR HONOR.

19                THE COURT:  OH, NO, IT'S NOT A PROBLEM AT

20      ALL.

21                MR. VERHOEVEN:  AND THEN THE WITNESS

22      AFTER THIS ONE WILL BE STEPHEN GRAY, YOUR HONOR.

23      SO WE'RE GOING TO GO DIRECTLY FROM THE CURRENT

24      WITNESS TO MR. GRAY.

25                THE COURT:  OKAY.
```

3845

```
1              MR. VERHOEVEN:  AND THAT SHOULD CLOSE OUT
2    THE DAY I THINK, YOUR HONOR.
3              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
4    SO MR. VAN DAM AND THEN MR. GRAY.
5              MR. VERHOEVEN:  YES, YOUR HONOR.
6              THE COURT:  ALL RIGHT.  THANK YOU.
7              DO YOU HAVE PICTURES OF THE WITNESSES?
8    IF NOT, WE'LL GET THEM LATER.  NO PROBLEM.
9              MR. JOHNSON:  GOOD AFTERNOON, LADIES AND
10   GENTLEMEN.
11             THE CLERK:  PLEASE STAND AND RAISE YOUR
12   RIGHT HAND.
13                     ANDRIES VAN DAM,
14   BEING CALLED AS A WITNESS ON BEHALF OF THE
15   DEFENDANT, HAVING BEEN FIRST DULY SWORN, WAS
16   EXAMINED AND TESTIFIED AS FOLLOWS:
17             THE WITNESS:  I DO.
18             THE CLERK:  THANK YOU.  PLEASE BE SEATED.
19             THE COURT:  ALL RIGHT.  TIME IS NOW 2:36.
20   GO AHEAD, PLEASE.
21                     DIRECT EXAMINATION
22   BY MR. JOHNSON:
23   Q    GOOD AFTERNOON, PROFESSOR VAN DAM.  COULD YOU
24   PLEASE STATE YOUR FULL NAME FOR THE RECORD?
25   A    GOOD AFTERNOON.  I'M ANDRIES VAN DAM.
```

1

2

3                           CERTIFICATE OF REPORTERS

4

5

6            WE, THE UNDERSIGNED OFFICIAL COURT

7    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

8    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11            THAT THE FOREGOING TRANSCRIPT,

12   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

13   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

14   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

15   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

16   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

17

18                           /S/
                             _____
19                           LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
20

21                           /S/
                             _____
22                           IRENE RODRIGUEZ, CSR, CRR
                             CERTIFICATE NUMBER 8074
23

24                           DATED:  AUGUST 15, 2012
25

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

        APPLE INC., A CALIFORNIA    )  C-11-01846 LHK
6       CORPORATION,                )
                                    )  SAN JOSE, CALIFORNIA
7                   PLAINTIFF,      )
                                    )  AUGUST 20, 2012
8              VS.                  )
                                    )  VOLUME 12
9       SAMSUNG ELECTRONICS CO.,    )
        LTD., A KOREAN BUSINESS     )  PAGES 3712-3940
10      ENTITY; SAMSUNG             )
        ELECTRONICS AMERICA,        )
11      INC., A NEW YORK            )
        CORPORATION; SAMSUNG        )
12      TELECOMMUNICATIONS          )
        AMERICA, LLC, A DELAWARE    )
13      LIMITED LIABILITY           )
        COMPANY,                    )
14                                  )
                    DEFENDANTS.     )
15      _____

16             TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24                            IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074
25

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF        MORRISON & FOERSTER
     APPLE:                   BY:  HAROLD J. MCELHINNY
3                                  MICHAEL A. JACOBS
                                   RACHEL KREVANS
4                             425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT  WILMER, CUTLER, PICKERING,
     APPLE:                   HALE AND DORR
7                             BY:  WILLIAM F. LEE
                              60 STATE STREET
8                             BOSTON, MASSACHUSETTS  02109

9                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
12                            BY:  CHARLES K. VERHOEVEN
                              50 CALIFORNIA STREET, 22ND FLOOR
13                            SAN FRANCISCO, CALIFORNIA  94111

14                            BY:  VICTORIA F. MAROULIS
                                   KEVIN P.B. JOHNSON
15                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
16                            REDWOOD SHORES, CALIFORNIA  94065

17                            BY:  MICHAEL T. ZELLER
                                   WILLIAM C. PRICE
18                                 SUSAN ESTRICH
                              865 SOUTH FIGUEROA STREET
19                            10TH FLOOR
                              LOS ANGELES, CALIFORNIA  90017
20

21

22

23

24

25
```

1

2                        INDEX OF EXHIBITS

3                                MARKED          ADMITTED

4

5      DEFENDANT'S

6      556                                      3722

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    US.

2                THE COURT:  OKAY.  SO HOW MUCH TIME DO

3    YOU NEED FOR YOUR STRAIGHT PUTTING EVERYTHING ON

4    THE RECORD?

5                MR. JACOBS:  PROBABLY 20 MINUTES FOR US,

6    YOUR HONOR.

7                MR. JOHNSON:  ABOUT THE SAME.  MAYBE NOT

8    QUITE AS LONG.

9                THE COURT:  DO YOU WANT TO DO THAT FIRST

10   OR DO THAT SECOND?

11               MR. JACOBS:  I WOULD DO IT SECOND, IF

12   ONLY BECAUSE GOING THROUGH THE HPO'S MAY --

13               THE COURT:  MAY MOOT SOME OF THEM?

14               MR. JACOBS:  YES.

15               THE COURT:  OKAY.  ALL RIGHT.  THAT'S

16   FINE.  ALL RIGHT.

17               SO THIS IS WHAT I'D LIKE TO DO.  WHAT IF

18   I JUST TOLD YOU WHAT THE TENTATIVE IS AS TO EACH

19   ONE AND THEN YOU CAN DECIDE HOW MUCH OF YOUR TIME

20   YOU WANT TO SPEND ON FIGHTING IT OR NOT.  OKAY?

21               ALL RIGHT.  SHOULD WE GO THROUGH

22   SAMSUNG'S FIRST?

23               OKAY.  THE TIME IS NOW 2:42.

24               ALL RIGHT.  WITH REGARD TO SALE IN THE

25   UNITED STATES, THAT'S DENIED.  I DON'T BELIEVE THAT

1     DELIVERY INTO THE UNITED STATES IS REQUIRED.  I

2     KNOW YOU RELY ON MINEBEA VERSUS PAPST AND THE OTHER

3     CASES.  THOSE ARE OUT OF DISTRICT COURT CASES.

4     THEY'RE NOT BINDING ON ME.

5                FEDERAL CIRCUIT CASES REALLY SEEM TO

6     FOCUS ON WHERE THE ACTIVITY TOOK PLACE, SO I THINK

7     THE INSTRUCTION THAT'S IN THE INSTRUCTIONS NOW IS

8     MORE CONSISTENT WITH FEDERAL CIRCUIT LAW.

9                SO I'M DENYING THE SALE IN THE U.S.

10               DO YOU WANT TO FIGHT IT OR NO?

11               MR. JOHNSON:  YOUR HONOR, CAN WE GO

12    THROUGH THE WHOLE LIST AND THEN LET US DECIDE?

13               THE COURT:  OH, OKAY.  SURE.  ALL RIGHT.

14               LET'S GO TO DESIGN PATENT COPYING, THAT'S

15    34.4(B).  THIS IS DENIED.

16               WHILE IT'S TRUE THAT INTENT TO COPY IS

17    NOT RELEVANT TO AN INFRINGEMENT ANALYSIS, ADDING

18    ANOTHER INSTRUCTION WHEN THIS IS ALREADY COVERED

19    ELSEWHERE I THINK WOULD PLACE UNDUE EMPHASIS ON

20    THIS ISSUE AND I THINK IT'S A RELATIVELY MINOR

21    POINT AND SHOULDN'T BE OVEREMPHASIZED.  SO THAT'S

22    DENIED.

23               NOW, WITH REGARD TO DESIGN PATENT

24    FUNCTIONALITY, I'M NOT PERSUADED BY AMINI

25    INNOVATION CORP.  THAT SEEMS TO BE AN OUTLIER.

1    THERE AREN'T ANY OTHER FED CIRCUIT CASES THAT ADOPT

2    TRADE DRESS AS A TEST FOR FUNCTIONALITY AND DESIGN

3    PATENTS.

4            AND OTHERWISE I THINK THAT THE DICTATED

5    BY FUNCTIONALITY STANDARD IS THE CORRECT STATEMENT

6    OF THE LAW.

7            NOW, I ALSO, I KNOW THAT I HAD

8    PREVIOUSLY, WHEN I DID THE CLAIM CONSTRUCTION ON

9    THE DESIGN PATENTS, HAD SAID I MIGHT ISSUE AN ORDER

10   ON FUNCTIONALITY AND CALLING OUT SPECIFIC

11   FUNCTIONS, BUT I'M NOT CONVINCED THAT, ON THE

12   RECORD BEFORE US, ANY ADDITIONAL LIMITATIONS HAVE

13   BEEN ESTABLISHED BASED ON FUNCTIONALITY, SO I DENY

14   THAT REQUEST.

15           NOW, THE ONE WHERE I COULD HAVE SOME

16   MOVEMENT ON IS WHETHER WE WANT TO -- EVEN THOUGH

17   THE PGH TECHNOLOGY FACTORS ARE NOT IN THE MODEL

18   INSTRUCTIONS THAT WE'VE BEEN USING, I WOULD NOT BE

19   OPPOSED TO INCLUDING THESE AS SOME FACTORS YOU MAY

20   CONSIDER.  I DON'T FEEL THAT STRONGLY.

21           I MEAN, I PREFER GENERALLY -- AS YOU'VE

22   SEEN WITH THE JURY INSTRUCTIONS I'VE ISSUED, I

23   PREFER TO GO WITH THE MODEL LANGUAGE WITHOUT MUCH

24   ALTERATION, BUT THAT'S THE ONE WHERE THERE COULD BE

25   SOME POTENTIAL MOVEMENT.

```
 1            OKAY.  LET'S GO TO 40 TO 43, DESIGN

 2    PATENT DAMAGES.  AS MUCH AS I WOULD LIKE TO MAKE

 3    APPLE ELECT UPFRONT, I DON'T THINK THERE'S ANY LAW

 4    THAT REQUIRES THEM TO DO THAT, SO I'M NOT GOING TO

 5    REQUIRE THAT EVEN THOUGH THAT CERTAINLY WOULD BE

 6    HELPFUL.

 7            NOW, I DO AGREE WITH YOU THAT THE

 8    INSTRUCTIONS SHOULD BE CLEARER, A LITTLE BIT, TO

 9    AVOID DOUBLE RECOVERY, AND THESE ARE VERY

10    COMPLICATED INSTRUCTIONS AND I HAVE SOME CONCERNS,

11    WHICH IS WHY I ASKED THE PARTIES TO FILE THE

12    ADDITIONAL BRIEFING ON DAMAGES AND DOUBLE RECOVERY,

13    BECAUSE I SHARE THE SAME CONCERNS THAT SAMSUNG

14    DOES.

15            SO WHAT I MIGHT CONSIDER DOING IS MAYBE

16    REARRANGING THE INSTRUCTIONS, PUTTING LOST PROFITS

17    FIRST, THEN REASONABLE ROYALTY, THEN INFRINGER'S

18    PROFITS AND HAVING -- IN THE LOST PROFITS AND

19    REASONABLE ROYALTY INSTRUCTIONS, MAKE IT A LITTLE

20    MORE CLEAR THAT APPLE MAY RECOVER COMPENSATORY

21    DAMAGES IN THE FORM OF EITHER LOST PROFITS OR

22    REASONABLE ROYALTY; AND THEN IN THE, YOU KNOW,

23    INSTRUCTIONS SAYING THAT, LOOK, YOU CANNOT RECOVER

24    FOR BOTH COMPENSATORY DAMAGES AND AN INFRINGER'S

25    PROFITS FOR THE SAME SALE OF AN INFRINGING PRODUCT.
```

1          NOW, ALL OF THOSE INSTRUCTIONS ARE

2     ALREADY IN THE CURRENT SET, BUT I AM AMENABLE TO

3     TRYING TO MAKE IT A LITTLE CLEARER IF YOU THINK

4     IT'S STILL POTENTIALLY MISLEADING OR IT MIGHT

5     CONFUSE THE JURY INTO THINKING THEY CAN GIVE DOUBLE

6     RECOVERY.  SO THERE'S SOME FLEXIBILITY ON THAT ONE.

7          IF YOU HAVE SPECIFIC LANGUAGE THAT YOU

8     THINK WOULD HELP CLARIFY THAT, I'M OPEN TO IT.

9          LET'S GO TO 42, DESIGN PATENT DAMAGES.  I

10    THINK THAT'S SORT OF ALONG THE SAME LINES AS WHAT

11    I'VE JUST DESCRIBED.  I MIGHT BE WILLING TO DO A

12    LITTLE BIT MORE BY WAY OF INTRODUCTION IN SOME OF

13    THESE INSTRUCTIONS TO MAKE IT A LITTLE CLEARER.

14         TRADE DRESS FUNCTIONALITY, SO FOR TRADE

15    DRESS, I'M THINKING OF PERHAPS TAKING THIS DISC

16    GOLF LANGUAGE OUT.  I THINK IT MIGHT BE CONFUSING

17    TO A JURY.

18         WITH REGARD TO YOUR CHANGE ON NUMBER 51,

19    PARAGRAPH 3, TO SAY "TO DETERMINE WHETHER A PRODUCT

20    FEATURE IS FUNCTIONAL, YOU MAY CONSIDER THE

21    FOLLOWING FACTORS," THAT'S FINE.

22         MODIFYING PARAGRAPH 4 TO DELETE "AFTER

23    CONSIDERING THESE FACTORS," THAT'S OKAY.

24         YOUR REQUEST MODIFYING PARAGRAPH 5 TO

25    DELETE "ALTERNATIVE" AND REPLACING IT WITH "IN

```
 1      ADDITION," THAT SEEMS OKAY.

 2               WITH REGARD TO TRADE DRESS DILUTION,

 3      WHICH WAS NUMBER 55, I'M GOING TO DENY SAMSUNG'S

 4      FIRST ARGUMENT.  I DON'T BELIEVE THE LANGUAGE THE

 5      CLAIM IS MISSING IS ACTUALLY MISSING.  IT'S IN THE

 6      PRECEDING SENTENCE, AND I DON'T THINK THERE'S

 7      ANYTHING MISLEADING ABOUT THE JURY INSTRUCTION

 8      ITSELF.

 9               NOW, YOU DO ASK THAT AT THE END OF THE

10      INSTRUCTION, THE COURT JUST ADD A SENTENCE SAYING

11      "THESE FACTORS SHOULD BE WEIGHED BY YOU GIVEN THE

12      FACTS AND CIRCUMSTANCES OF THE CASE," I THINK

13      THAT'S REASONABLE.  THAT WOULD BE OKAY WITH ME.

14               WITH REGARD TO TRADE DRESS NOTICE AND

15      DAMAGES, I WOULD GRANT THAT.  YOU WANT THE CLEAN --

16      COMPLETE INSTRUCTION WITH PART OF THE NINTH CIRCUIT

17      MODEL INSTRUCTION CLARIFYING WHAT STATUTORY NOTICE

18      IS, I'M WONDERING IF APPLE MIGHT BE WILLING TO

19      STIPULATE TO THAT SINCE IT'S MODEL JURY INSTRUCTION

20      LANGUAGE AND IT DOESN'T SEEM PARTICULARLY

21      CONTROVERSIAL.

22               SO HEARING THAT, HOW MUCH TIME DO YOU

23      WANT TO SPEND ON THE HIGH PRIORITY OBJECTIONS AND

24      HOW MUCH TIME DO YOU WANT TO JUST MAKE YOUR RECORD?

25               MR. ZELLER:  JUST ONE MOMENT, YOUR HONOR?
```

```
 1              THE COURT:  OKAY.

 2              (DISCUSSION OFF THE RECORD BETWEEN

 3      DEFENSE COUNSEL.)

 4              MR. JOHNSON:  YOUR HONOR, I THINK WE'RE

 5      GOING TO TALK ABOUT THREE OR FOUR POTENTIALLY.

 6              THE COURT:  OKAY.  ALL RIGHT.  CAN YOU

 7      TELL ME --

 8              MS. MAROULIS:  YOUR HONOR, WITH RESPECT

 9      TO EXHAUSTION, WITHOUT GIVING UP OUR OBJECTIONS,

10      CAN WE PLEASE INCLUDE, IN THE COURT'S CURRENT

11      INSTRUCTION, THE STATEMENT "WHERE THE SPECIAL

12      ACTIVITIES INCLUDE, FOR EXAMPLE, WHERE A PRODUCT IS

13      DELIVERED."

14              IN OTHER WORDS, WE'RE OBJECTING TO THE

15      INSTRUCTION, BUT IF THE COURT IS INTENDING TO KEEP

16      WHAT IT HAS, IF WE CAN INCLUDE DELIVERY AS ONE OF

17      THE ESSENTIAL ACTIVITIES.

18              THE COURT:  OKAY.  LET ME HEAR FROM -- IS

19      THERE ANY OBJECTION FROM APPLE ON THAT ONE?

20              MR. SELWYN:  YOUR HONOR, THERE IS AN

21      OBJECTION TO THAT.  THERE'S NO REASON TO SINGLE OUT

22      THAT SPECIFIC EXAMPLE OF AN ACTIVITY IN THIS LIST.

23              IF YOU WERE TO GO DOWN THAT PATH, THERE

24      ARE OTHER THINGS THAT WE WOULD WANT TO IDENTIFY AS

25      EXAMPLES THAT THE JURY CAN CONSIDER.
```

3810

```
 1                SO ON INSTRUCTION NUMBER 40, DESIGN
 2   PATENT DAMAGES, OKAY.
 3                MR. JACOBS:  LET ME, IF I -- WE FILED
 4   THIS ONE BEFORE WE GOT THE VERY LAST INSTRUCTION.
 5                THE COURT:  OH.
 6                MR. JACOBS:  INSTRUCTIONS, AND I THINK
 7   YOUR HONOR'S 61.3 CAPTURES THE ESSENCE OF WHAT WE
 8   WERE TRYING TO SAY AND YOU HAD, I THINK YOUR HONOR,
 9   ALLUDED TO THIS IN OPENING COMMENTS.
10                61.3 IS A UNIT-BY-UNIT -- PROVIDES FOR A
11   UNIT-BY-UNIT ANALYSIS OF WHAT REMEDY IS CALLED FOR,
12   AND OUR PROBLEM WAS THAT IN SOME OF THE EARLIER
13   INSTRUCTIONS, THE INSTRUCTIONS SUGGESTED THAT WE
14   HAD TO MAKE A RIGHT-BY-RIGHT ELECTION.
15                THE COURT:  UM-HUM.
16                MR. JACOBS:  SO THIS DESIGN PATENT, WE
17   HAVE TO SEEK ONLY LOST PROFITS ON AND THIS DESIGN
18   PATENT WE CAN SEEK INFRINGER'S PROFITS.  BUT 61.3
19   CLARIFIED THAT THAT'S NOT RIGHT.
20                AND I THINK REORDERING PROBABLY MAKES
21   SOME SENSE, BUT ALSO SOME INTERLINEATIONS TO
22   CAPTURE 61.3 AND SOME OF THE OTHER INSTRUCTIONS
23   WOULD BE HELPFUL.
24                IN OTHER WORDS, I DON'T THINK WE'RE IN
25   DISAGREEMENT WITH YOUR HONOR NOW ON THE LAW.  I
```

3811

```
1     THINK IT'S JUST THAT SOME OF THESE EARLIER

2     INSTRUCTIONS WITH THE LANGUAGE OF ELECTION ARE

3     GOING TO BE CONFUSING.

4              THE COURT:  SO GIVE ME A SPECIFIC

5     LANGUAGE CHANGE, PLEASE.

6              MR. JACOBS:  SO ON 40, FOR EXAMPLE --

7              THE COURT:  OKAY.

8              MR. JACOBS:  -- AT LINE 7 AND

9     THREE-QUARTERS AFTER THE POTENTIAL RECOVERY --

10             THE COURT:  YES.

11             MR. JACOBS:  -- WE WOULD ADD, "WITH

12    RESPECT TO THE SALE OF EACH UNIT OF AN INFRINGING

13    PRODUCT."

14             AND THEN AT THE END OF THAT --

15             THE COURT:  I'M SORRY.  CAN YOU REPEAT

16    THAT LANGUAGE ONE MORE TIME?

17             MR. JACOBS:  SURE.  "WITH RESPECT TO THE

18    SALE OF EACH UNIT OF AN INFRINGING PRODUCT."

19             AND THEN AT THE END OF THAT PARAGRAPH,

20    I'LL CALL IT LINE 9, TO MAKE IT CLEAR THAT WE'RE

21    NOT ENTITLED TO A DOUBLE RECOVERY, WE WOULD PROPOSE

22    TO ADD -- SO IT'LL READ AS A WHOLE, "APPLE IS NOT

23    ENTITLED TO RECOVER BOTH COMPENSATORY DAMAGES AND

24    THE DEFENDANT'S PROFITS ON THE SAME UNIT SALE,"

25    WITH "ON THE SAME UNIT SALE" BEING THE PROPOSED
```

3812

```
1     ADDITIONAL LANGUAGE.
2              THE COURT:  ALL RIGHT.  WHO WANTS TO
3     SPEAK FOR SAMSUNG ON THESE TWO CHANGES?
4              MR. ZELLER:  AS THE COURT IS AWARE, AND
5     WE'VE BRIEFED THIS PREVIOUSLY, WE MAINTAIN OUR
6     OBJECTION.  WE DON'T THINK THAT'S A CORRECT
7     STATEMENT OF THE LAW.  WE DON'T THINK IT CAN BE
8     DONE UNIT-BY-UNIT IN THIS MANNER.
9              COUNSEL HAS NOT PROPERLY RECITED OUR
10    POSITION ON THIS, EITHER.  WE'RE NOT SAYING IT HAS
11    TO BE DESIGN PATENT BY DESIGN PATENT, BUT
12    THERE'S -- WE DON'T AGREE WITH THE LAW ON THIS.
13             BUT SETTING THAT ASIDE FOR A MOMENT, WE
14    ACTUALLY THINK THAT THIS MAKES IT ALL MORE
15    CONFUSING.  THEY LITERALLY ARE GOING TO BE ASKING
16    THE JURY TO GO THROUGH AND DETERMINE MILLIONS AND
17    MILLIONS OF UNIT SALES AND TRY AND GROUP THEM IN
18    VARIOUS WAYS TO DETERMINE WHAT AMOUNT OF THAT
19    PARTICULAR UNIT SALE, OR WHAT GROUPING OF UNIT
20    SALES SHOULD BE LOST PROFITS VERSUS SOME OTHER
21    MEASURE OF REMEDY.
22             AND THIS IS -- THIS IS EXTREMELY
23    CONFUSING IN MY OPINION.
24             THE COURT:  CAN YOU ALL GIVE ME -- AND
25    THIS IS WHY THE VERDICT FORM TOOK SO LONG IS JUST
```

1    TRYING TO FIGURE OUT HOW TO PRESENT THE DAMAGES

2    QUESTIONS WHEN THERE'S SO MANY DIFFERENT

3    ALTERNATIVE REMEDIES HERE.  WE CAN'T HAVE DOUBLE

4    RECOVERY.

5            AND YET, I MEAN, SO WHAT -- GIVE ME

6    SOME -- I'M ALL EARS ON HOW WE CAN REVISE THE

7    INSTRUCTIONS TO MAKE THIS CLEAR.  DO YOU HAVE

8    SPECIFIC LANGUAGE?

9            BECAUSE I AGREE, I'M NOT -- I UNDERSTAND

10   WHAT APPLE IS TRYING TO DO HERE, BUT I'M NOT

11   SURE -- AND ON BALANCE, PROBABLY IT'S BETTER TO

12   INCLUDE THIS LANGUAGE, BUT I'M NOT SURE THAT IT

13   WON'T MAKE THINGS MORE CONFUSING FOR OUR JURORS.

14           MR. ZELLER:  RIGHT.  AND THAT IS, FROM

15   OUR PERSPECTIVE, THE PROBLEM.

16           AND IT ALL STEMS FROM, YOUR HONOR, THE

17   FACT THAT IN ORDER TO MAXIMIZE THEIR DAMAGES

18   NUMBER, THEY WANT TO HAVE THE JURY LITERALLY

19   APPLYING DIFFERENT THEORIES TO EVEN THE SAME TYPES

20   OF DEVICES AND THE SAME PATENTS.  SO THAT'S THE

21   ROOT OF THE PROBLEM IS THAT THIS IS, THIS IS THE

22   WAY APPLE HAS DONE IT TO MAXIMIZE DAMAGES.

23           THIS IS THE ROOT OF ALSO WHY WE SUGGESTED

24   THAT APPLE SHOULD ELECT.  I MEAN, WHETHER THE COURT

25   CAN FORCE IT OR NOT, I UNDERSTAND THE COURT'S

1    POSITION ON THAT.

2            THE COURT:  I DON'T THINK I CAN FORCE IT,

3    AS MUCH AS I WOULD LIKE TO.

4            MR. ZELLER:  BUT AT THIS POINT, IT MAY

5    BE -- MAYBE APPLE IS GOING TO HAVE TO REALLY CHOOSE

6    TO DO IT IF IT WANTS SOMETHING CLEAR THAT CAN GO TO

7    THIS JURY THAT'S NOT GOING TO CREATE CONSIDERABLE

8    CONFUSION.

9            AND ONE THING I WOULD ALSO NOTE ABOUT

10   THIS INSTRUCTION THAT IS SOMEWHAT PROBLEMATIC THAT

11   OVERLAYS IT AS WELL, AS THE COURT IS AWARE FROM

12   CASES LIKE CATALINA LIGHTING, ONCE THERE'S A

13   RECOVERY ON A PARTICULAR DEVICE OR UNIT OR HOWEVER

14   THIS GETS PARSED OUT, WHETHER IT'S ON UTILITY OR

15   DESIGN PATENTS, YOU CAN'T RECOVER ON BOTH.

16           AND THAT'S NOT MADE CLEAR IN THIS

17   INSTRUCTION, EITHER.

18           SO IF -- SAY, FOR EXAMPLE, ON, AGAIN,

19   WHETHER IT'S A UNIT OR A PARTICULAR CATEGORY OF

20   UNITS, IF SAMSUNG'S PROFITS ARE THE MEASURE OF

21   DAMAGES, THAT'S IT.  THEY DON'T GET ANYTHING ELSE,

22   NO MATTER HOW MANY OTHER SUPPOSED INFRINGEMENTS

23   HAVE OCCURRED.

24           AND THAT IS NOT MADE CLEAR IN ANY OF

25   APPLE'S INSTRUCTIONS.

3815

```
1              I -- I APOLOGIZE, I DON'T HAVE ANY --
2              THE COURT:  WELL, WHY DON'T -- I'M GOING
3    TO GIVE MR. JACOBS AN OPPORTUNITY TO SPEAK, BUT IF
4    YOU WANT TO THINK ABOUT SOME WAYS THAT WE CAN
5    CLARIFY THIS?
6              I MEAN, I AM SERIOUSLY CONCERNED,
7    MR. JACOBS, THAT WE MAY GET A VERY CONFUSED JURY
8    HERE WHO MAY NOT -- I MEAN, I HAVE TROUBLE
9    UNDERSTANDING THIS AND I'VE SPENT A LITTLE BIT MORE
10   TIME WITH IT THAN THEY HAVE.
11             SO TELL ME, HOW CAN WE MAKE THIS CLEARER?
12   IT'S VERY CONFUSING.
13             MR. JACOBS:  WELL, I'M NOT SURE THAT --
14   WELL, I THINK THE ANSWER IS THIS:  OUR DAMAGES
15   EXPERT PRESENTED A DAMAGES MODEL.  IT HAD VARIOUS
16   COMPONENTS AND IT HAD VARIOUS ALTERNATIVES.
17             THE DAMAGES MODEL -- THE PRESENTATION TO
18   THE JURY WAS VERY CLEAR THAT WE WERE NOT SEEKING A
19   DOUBLE RECOVERY, WHETHER AS AGAINST DIFFERENT TYPES
20   OF RECOVERIES OR DIFFERENT TYPES OF RIGHTS AGAINST
21   PARTICULAR UNITS.
22             FOR EACH UNIT, YOU'LL RECALL KIND OF THE
23   WATERFALL THAT HE DEMONSTRATED, THE PHONES FELL
24   INTO THE VARIOUS BUCKETS.
25             THERE WAS NO CRITICISM OF THAT MODEL, ON
```

1    THAT ASPECT OF THE MODEL, FROM SAMSUNG'S DAMAGES

2    EXPERT.

3              SO THERE IS NO CLAIM THAT THE MODEL THAT

4    HE PRESENTED AND THE TOTALS THAT HE PRESENTED, THE

5    CALCULATIONS THAT HE PRESENTED SUFFER FROM A DOUBLE

6    RECOVERY PROBLEM.

7              THAT SHOULD BE SUFFICIENT.  IF THE

8    DAMAGES MODEL HAD A FUNDAMENTAL FLAW BY WAY OF

9    DOUBLE RECOVERY AND SAMSUNG HAD SAID THAT, WE WOULD

10   BE IN A DIFFERENT WORLD, BUT WE DON'T.

11             SO THE JURY WILL TAKE ALL OF THIS IN,

12   THEY WILL TAKE THE EVIDENCE FROM BOTH SIDES,

13   MR. WAGNER DID TAKE A RUN AT THE LOST PROFITS

14   COMPONENT AND MR. MUSIKA SAID TO THE JURY "IF YOU

15   REJECT OUR LOST PROFITS COMPONENT, THIS IS WHAT

16   HAPPENS ON INFRINGER'S PROFITS" AND HE PRESENTED

17   THAT ALTERNATIVE CALCULATION.

18             THE COURT:  UM-HUM.

19             MR. JACOBS:  THE JURY WILL GIVE US A

20   NUMBER BASED ON ALL THE EVIDENCE THAT THEY'VE

21   RECEIVED FROM THE WITNESSES AND THE EXHIBITS THAT

22   GO BACK.

23             AND I'M REASONABLY OPTIMISTIC THAT THE

24   NUMBER THEY PRODUCE WILL BE DEFENSIBLE BASED ON THE

25   LIABILITY FINDINGS THEY GENERATE.

```
 1              I THINK IF WE GET MORE GRANULAR --

 2              THE COURT:  I MEAN, I'M NOT SAYING THAT

 3     AN IMPROPER DAMAGES THEORY WAS PUT FORTH.

 4              I'M JUST CONCERNED THAT IT'S VERY COMPLEX

 5     AND THERE'S SO MANY PIECES HERE AND THEN THERE ARE

 6     ALTERNATIVE RECOVERIES FOR EACH ONE.

 7              I'M JUST CONCERNED ABOUT POTENTIAL JURY

 8     CONFUSION.

 9              SO DO YOU HAVE ANY SUGGESTION, AND MAYBE

10     THE VERDICT FORM WILL HELP US IN TRYING TO SORT

11     THAT THROUGH, BUT -- ANY OTHER SUGGESTIONS ABOUT

12     WHAT WE CAN DO, OTHER THAN THE FEW CHANGES I'VE

13     TALKED ABOUT DURING SAMSUNG'S OBJECTIONS ABOUT

14     MAYBE REORDERING AND SOME OF THE DIFFERENT DAMAGES

15     REMEDIES?

16              MR. JACOBS:  I THINK THAT ACTUALLY

17     REORDERING IN THE WAY THE COURT PROPOSED MAY

18     AGGRAVATE THE CONFUSION BECAUSE THE LEAD COMPONENT

19     OF DAMAGES IS REALLY INFRINGER'S PROFITS AND THAT'S

20     HOW MR. MUSIKA PRESENTED IT.

21              SO I THINK IF WE START OUT WITH LOST

22     PROFITS AND REASONABLE ROYALTY, THE JURY MARCHING

23     THROUGH THE INSTRUCTIONS MAY WELL GET CONFUSED.

24              SO I WOULD SUGGEST KEEPING INFRINGER'S

25     PROFITS FIRST, LOST PROFITS SECOND, REASONABLE
```

```
 1    APPLICATION, WOULD REALLY MAKE IT DIFFICULT FOR THE

 2    JURY.

 3               THE COURT:  RIGHT.  I'M NOT GOING TO DO

 4    THAT.

 5               OKAY.  WHAT ELSE?

 6               MS. MAROULIS:  STILL ON '381, THERE IS A

 7    PRODUCT CALLED GEM.  IN THEIR INFRINGEMENT

 8    CONTENTIONS, APPLE DID NOT ACCUSE GEM, AND I'M

 9    GOING TO HAND TO THE COURT AND COUNSEL APPLE'S

10    INFRINGEMENT CONTENTIONS, EXHIBIT 20, WHERE YOU CAN

11    SEE --

12               MAY I APPROACH, YOUR HONOR?

13               THE COURT:  YES, PLEASE.

14               MS. MAROULIS:  -- GEM WAS LISTED AS N/A

15    WITH RESPECT TO '381.

16               MR. JACOBS:  YOUR HONOR RULED ON PHONES

17    SOME MONTHS AGO NOW AND SAMSUNG DID NOT MOVE ON THE

18    GEM.  SAMSUNG'S EXPERT WROTE A REPORT ON THE GEM

19    EXPLAINING WHY THE GEM DID NOT INFRINGE.

20               SAMSUNG THEN HAD A FURTHER DISCUSSION

21    WITH THE COURT ABOUT THE PHONES ISSUE AND DID NOT

22    RAISE THE GEM.

23               SO NOW WE ARE AT THE END OF TRIAL, THERE

24    WAS NO MOTION ON THE GEM, WE PUT ON OUR PROOF ON

25    THE GEM, IT'S TOO LATE NOW TO SAY IT WASN'T IN THE
```

3850

```
 1    INFRINGEMENT CONTENTIONS.

 2              I WOULD NOTE THAT ONE OF THE PHONES WAS

 3    RULED OUT BECAUSE WE FLIPPED THE ORDER OF THE TERMS

 4    AND WE DIDN'T COME BACK TO THE COURT ON THAT AND

 5    ASK FOR RECONSIDERATION.  IT WAS --

 6              THE COURT:  WHICH PHONE WAS THAT?

 7              MR. JACOBS:  SHOWCASE.  I THINK WE SAID

 8    THE SHOWCASE, THE GALAXY S SHOWCASE, AND IT'S THE

 9    SHOWCASE GALAXY S.  THE COURT SAID WE HADN'T PUT IN

10    OUR INFRINGEMENT CONTENTIONS.  WE MOVED ON.

11              NOW FOR SAMSUNG TO COME IN AT THE LAST

12    MINUTE AND SAY, "WE FORGOT TO MOVE ON THIS, BUT

13    IT'S OUT OF THE CASE," THAT'S QUITE UNFAIR.

14              MS. MAROULIS:  WE ACTUALLY MOVED FOR JMOL

15    AND I THINK WE PREVIOUSLY OBJECTED TO THAT, SO THIS

16    IS DEFINITELY NOT THE FIRST TIME THAT COUNSEL IS

17    HEARING ABOUT IT.

18              THE COURT:  WELL, I GUESS WHAT'S

19    CONFUSING TO ME IS IF THESE ARE THE INFRINGEMENT

20    CONTENTIONS, GEM IS ON HERE.

21              MS. MAROULIS:  NOT WITH RESPECT TO '381,

22    YOUR HONOR.  IT SAYS N/A.

23              THE COURT:  OH, I SEE WHAT YOU'RE SAYING.

24    I THINK IT'S UNTIMELY FOR THIS REQUEST.

25              OKAY.  GO AHEAD.  WHAT'S NEXT?
```

3851

```
 1          MS. MAROULIS:  YOUR HONOR, CAN WE SKIP A

 2    LITTLE BIT, THERE'S A PRETTY SIMPLE ISSUE, BEFORE

 3    WE GET TO DAMAGES, WHICH IS WAIVER, WHICH IS THE

 4    VERY LAST PORTION OF THE VERDICT FORM.

 5          WAIVER IS AN EQUITABLE ISSUE, AND YOUR

 6    HONOR DID NOT ISSUE JURY INSTRUCTIONS ON WAIVER

 7    BECAUSE IT IS AN EQUITABLE ISSUE AND SHOULD NOT GO

 8    BEFORE THE JURY.  SO WE RESPECTFULLY REQUEST THAT

 9    IT BE REMOVED FROM THE VERDICT FORM.

10          THE COURT:  LET ME ASK, AND I APOLOGIZE

11    IF THIS WAS A MISTAKE, BUT THE PRELIMINARY

12    INSTRUCTIONS, WE TALKED ABOUT THE SUMMARY OF

13    CONTENTIONS AND ACTUALLY INCLUDED ANTITRUST, PATENT

14    EXHAUSTION, WAIVER, AND BREACH OF CONTRACT.

15          SO IT WAS IN THAT PRELIMINARY --

16          MS. MAROULIS:  WE'VE ALWAYS MAINTAINED,

17    SAMSUNG HAS ALWAYS MAINTAINED THAT ESTOPPEL AND

18    WAIVER SHOULD NOT BE BEFORE THE JURY, BUT BECAUSE

19    WE WERE NEGOTIATING JURY INSTRUCTIONS.  WE PROPOSED

20    COMPETING LANGUAGE SO THAT IF THE COURT DECIDED IT

21    DOES GO, THERE'S SOMETHING FOR THE JURY TO LOOK AT.

22          BUT THE COURT IS NOT SENDING THIS ISSUE

23    TO THE JURY, SO IT WOULD NOT BE USEFUL TO HAVE THIS

24    IN THE JURY VERDICT FORM.

25          MR. SELWYN:  YOUR HONOR, IT WAS IN THE
```

```
1    PRELIMINARY JURY INSTRUCTIONS, YOU'RE QUITE RIGHT.

2              IN THE BROADCOM CASE, WHICH IS BASED ON

3    SIMILAR STANDARD SETTING AS THIS ONE, THE COURT

4    ALSO SOUGHT AN ADVISORY VERDICT ON THE WAIVER

5    ISSUE.

6              WE BELIEVE, CONSISTENT WITH THE

7    PRELIMINARY INSTRUCTIONS, IT SHOULD GO TO THE JURY.

8              THE COURT:  YOU KNOW, I ACTUALLY DON'T

9    WANT ANY ADVISORY VERDICTS.

10             AND I RECOGNIZE I DID INCLUDE IT IN THE

11   PRELIMINARY.  I DON'T HAVE A WAIVER INSTRUCTION IN

12   THIS FINAL SET.

13             I THINK I'M GOING TO TAKE IT OUT.  OKAY?

14             MS. MAROULIS:  THANK YOU, YOUR HONOR.

15             THE COURT:  ALL RIGHT.  WHAT ELSE?

16             MS. MAROULIS:  RETURNING BACK TO THE

17   BEGINNING OF THE FORM, AGAIN, BECAUSE WE'RE LODGING

18   OUR OBJECTIONS, WE PROPOSE TO INCLUDE VERSION,

19   ANDROID VERSION ON DIFFERENT PHONES THAT ACTUALLY

20   ARE IN THE CASE.  WE SEE THAT IT'S NOT IN THERE AND

21   WE RESPECTFULLY REQUEST THAT IT BE INCLUDED.

22             THE COURT:  OKAY.  THAT'S DENIED.

23             WHAT'S NEXT?

24             MS. MAROULIS:  WE'RE MOVING ON TO THE

25   DAMAGES SECTION, AND WITH RESPECT TO DAMAGES, AS
```

3853

```
 1    YOUR HONOR NOTED, IT'S A COMPLICATED ISSUE, AND ONE

 2    THING THAT WE NEED TO ADD TO THE EXISTING DAMAGES

 3    CHART -- AND I WAS TRYING TO SCRATCH IT OUT BUT

 4    DIDN'T HAVE A CHANCE TO FULLY FIGURE OUT HOW TO DO

 5    IT -- BUT THERE ARE THREE DIFFERENT THEORIES ON

 6    WHICH APPLE IS SEEKING DAMAGES, AND SAMSUNG

 7    INDICATED IN ITS PRETRIAL SUBMISSIONS AND ITS JMOLS

 8    THAT THERE ARE INFIRMITIES WITH EACH OF THEM.

 9              FOR IT TO BE PROPERLY REVIEWED, TO THE

10    EXTENT THERE'S A REVIEW OF THESE, WE NEED TO

11    IDENTIFY WHICH DAMAGES THEORIES APPLE IS SEEKING

12    DAMAGES ON AND WHAT THE JURORS WOULD AWARD, IF

13    ANYTHING.

14              SO ONE WAY TO DO IT WOULD BE TO ADD

15    COLUMNS TO THE EXISTING CHART, WHICH IS REASONABLE

16    ROYALTY PROFITS AND LOST PROFITS; OR POTENTIAL

17    ALTERNATIVE, WHAT WE SUGGEST IN OUR VERDICT FORM IS

18    TO ASK AN INTERROGATORY, WHICH IS "OF THE NUMBER

19    THAT YOU GAVE, WHAT IS THE BREAKDOWN BETWEEN THE

20    THREE DIFFERENT THEORIES?" TO HAVE THAT IN THE

21    RECORD AND TO UNDERSTAND WHAT THE JURY DID.

22              THE SECOND ISSUE WITH THIS IS THAT IT

23    DOESN'T TIE PRODUCTS TO THE PATENT.  THERE ARE SOME

24    PRODUCTS ON WHICH APPLE IS SEEKING MULTIPLE

25    THEORIES AND MULTIPLE PATENTS AND ACCUSING THEM OF
```

3854

```
 1    DIFFERENT I.P.
 2              SO IDEALLY WE'D LIKE TO HAVE A CHART OR
 3    SOME FORM THAT ADDRESSES ALL OF THESE ISSUES SO THE
 4    RECORD IS CLEAR.
 5              AND WE IDENTIFIED ISSUES THAT WE HAVE
 6    WITH IT, BUT HAVE NOT YET PROPOSED A SOLUTION.
 7    THIS IS ONE PLACE WHERE POTENTIALLY IF WE CAN HAVE
 8    A FEW HOURS TO BRAINSTORM AND SUGGEST SOMETHING TO
 9    THE COURT, IT MIGHT BE USEFUL.
10              THE COURT:  I DON'T WANT A MATRIX THAT'S
11    SO COMPLICATED.  TO HAVE SEVEN PATENTS AND FOUR
12    TRADE DRESSES BROKEN DOWN BY THIS MANY NUMBER OF
13    PRODUCTS I THINK WOULD BE OVERCOMPLICATED.
14              MS. MAROULIS:  WE DO NEED TO INDICATE
15    BOTH WHICH ENTITY THE DAMAGES ARE BEING SOUGHT FROM
16    AND WHICH THEORY OF DAMAGES IS BEING RELIED ON,
17    BECAUSE THEY ALL HAVE DIFFERENT LEGAL FRAMEWORK,
18    AND TO THE EXTENT THAT THE JURY GETS IT WRONG OR
19    DOES NOT APPLY THE CORRECT THEORY OR WHERE WE
20    BELIEVE THE THEORY HAS NOT BEEN SUFFICIENTLY
21    PROVEN, WE NEED THAT RECORD.
22              THE COURT:  WELL, WOULDN'T THAT BE
23    REFLECTED IN THE EARLIER PAGES?  BECAUSE THE
24    EARLIER PAGES ARE REQUIRING REQUIREMENTS BY
25    PRODUCT, BY PATENT, BY DEFENDANT.
```

```
 1              SO I'M HOPING THAT THE FIRST 17 PAGES,
 2     FROM THE FIRST 17 PAGES AND THE FINAL NUMBER, IF
 3     THE JURY PICKS A NUMBER, THAT YOU CAN SORT OF WORK
 4     BACKWARDS AND FIGURE OUT WHICH I.P. WAS ACTUALLY
 5     FOUND VALID AND INFRINGED, WHICH PRODUCT, WHICH
 6     ENTITY.
 7              MR. JACOBS:  THIS IS A MATTER OF FINDING
 8     A HAPPY MEDIUM, YOUR HONOR, AND OVER DETAIL GIVES
 9     RISE TO CLAIMS OF ERROR, TOO, BECAUSE IF THE JURY
10     DOES THINGS AT A VERY GRANULAR LEVEL THAT PRESENT
11     INCONSISTENCIES, THEN IT JUMPS OUT.
12              AND WE THINK THIS IS TOO SPECIFIC.  WE
13     OBJECT TO THIS LEVEL OF SPECIFICITY IN QUESTION 25,
14     FOR EXAMPLE.
15              BUT TO GO ANY DEEPER WOULD REALLY PRESENT
16     VERY SERIOUS PROBLEMS.
17              MS. MAROULIS:  YOUR HONOR, TO ILLUSTRATE
18     AN ISSUE THAT WE MIGHT HAVE IF WE DON'T IDENTIFY
19     THE THEORIES, FOR EXAMPLE, PROFITS ARE NOT
20     APPROPRIATE FOR UTILITY PATENTS.  IF THE JURY IS TO
21     INCLUDE PROFITS IN THE UTILITY PATENT
22     DETERMINATION, THAT IS NOT PROPER.
23              THE COURT:  UM-HUM.
24              MR. JACOBS:  THE JURY WILL GIVE US
25     AMOUNTS, AND THAT'S ALL THAT WE SHOULD ASK THEM TO
```

```
1     DO.
2                THE COURT:  AS YOU MIGHT IMAGINE, THIS
3     WAS THE PAGE THAT TOOK THE MOST TIME TO FIGURE OUT.
4                MS. MAROULIS:  YES.
5                THE COURT:  AND IT IS COMPLICATED.
6                BUT OVERALL, I THINK THAT THIS MAY BE THE
7     BEST WAY TO DO IT, ASSUMING THAT THE JURY IS GOING
8     TO FOLLOW THE JURY INSTRUCTIONS AND NOT DO ANYTHING
9     INAPPROPRIATE IN AWARDING IMPROPER DAMAGES FOR ANY
10    PARTICULAR CLAIM AND NOT GIVING DOUBLE RECOVERY.
11               MR. JACOBS:  YOUR HONOR --
12               MS. MAROULIS:  WOULD YOUR HONOR CONSIDER
13    INCLUDING FORMER QUESTION 23 FROM THE SAMSUNG FORM,
14    WHICH IS -- SAY, "IF YOU FIND ANY DAMAGES, CAN YOU
15    SEPARATE IT BY ENTITY?"  IT'S A YES OR NO QUESTION.
16               MR. JACOBS:  AND THE PROBLEM THERE IS
17    THAT MR. WAGNER, FROM THE ACCOUNTING PERSPECTIVE,
18    TESTIFIED THERE REALLY WAS NO BASIS TO DO THAT.
19               MS. MAROULIS:  YOUR HONOR, WE'RE NOT
20    GOING TO ARGUE ABOUT THE TESTIMONY HERE.
21    MR. WAGNER PROVIDED A ROADMAP FOR THE JURY.
22               BUT THE POINT IS THAT IF YOU CAN'T FIND
23    DAMAGES ATTRIBUTABLE JUST TO ONE SINGLE ENTITY, IF
24    YOU ASSUME THREE DIFFERENT DEFENDANTS, THAT
25    DEFENDANTS HAVE AN OPPORTUNITY TO KNOW WHAT DAMAGES
```

3857

```
 1    ARE AWARDED AGAINST THEM.
 2              MR. JACOBS:  NO PREJUDICE HERE, YOUR
 3    HONOR.  IT'S A CONSOLIDATED ENTITY, CONSOLIDATED
 4    BALANCE SHEETS, CONSOLIDATED FINANCIALS, CONTROLLED
 5    BY SAMSUNG ELECTRONICS FOR BOTH ENTITIES, VERY
 6    CLOSE CONTROL.  THAT WAS TESTIFIED TO.
 7              THE COURT:  WELL, I'M ALSO HOPING THAT
 8    PAGES 1 THROUGH 17 WILL ALSO HELP IN INFORMING AS
 9    WELL, BECAUSE IT COULD BE THAT THE JURY FINDS ONE
10    OR MORE OF THESE ENTITIES NOT LIABLE AT ALL BASED
11    ON THE EVIDENCE, WHICH WAS REALLY GEARED MORE
12    TOWARDS SEC ANYWAY.
13              LET ME ASK YOU, WITH REGARD TO HOW I
14    SHOULD HANDLE THE TRADE DRESS CLAIMS AGAINST THE
15    TABLETS, I GUESS I SHOULD THEN JUST DIVIDE UP --
16              MS. MAROULIS:  YES, YOUR HONOR, THAT WAS
17    ONE OF THE ISSUES THAT WE NOTED IN QUESTION 19.
18              THERE WAS A TAB TRADE DRESS THAT REALLY
19    PROBABLY SHOULDN'T BE THERE BECAUSE YOU'RE ALREADY
20    ASKING QUESTION 18 OF THE TAB TRADE DRESS.
21              MR. JACOBS:  AND THEN WHAT YOUR HONOR
22    COULD --
23              THE COURT:  ALTHOUGH 18 IS DILUTION AND
24    21 AND 22 ARE INFRINGEMENT.  THAT'S WHY IT'S BROKEN
25    OUT DIFFERENTLY.
```

3858

```
1              MS. MAROULIS:  19 IS FOR DILUTION.
2              MR. JACOBS:  BUT I DO THINK IF WE DO AN
3    18 STYLE BREAKOUT --
4              THE COURT:  NO, 19 IS INDUCEMENT.  SO THE
5    WAY IT'S WORKED OUT IS ON PAGE 10, 12 AND 13 ARE
6    GOING TO, IS THIS PROTECTABLE?  AND THEN 14 SAYS IS
7    THIS FAMOUS?
8              AND THEN 15 SAYS, "IF YOU FIND IT
9    PROTECTABLE AND FAMOUS, THEN HAS THERE BEEN
10   DILUTION OF THE REGISTERED PHONE DRESS?"
11             AND THEN THE NEXT QUESTION IS, "HAS THERE
12   BEEN DILUTION OF THE UNREGISTERED IPHONE 3 DRESS?"
13             AND THEN THE NEXT QUESTION IS, "HAS THERE
14   BEEN DILUTION OF THE UNREGISTERED COMBINATION PHONE
15   DRESS?"  AND THEN IT GOES TO THE PATENT.
16             AND THEN AFTER THAT, WE GO TO INDUCEMENT
17   AND WILLFULNESS AND THEN TRADE DRESS AND
18   INFRINGEMENT.  SO THAT'S HOW IT'S ORGANIZED.
19             MR. JACOBS:  UNDERSTOOD.
20             THE COURT:  I'LL FIGURE OUT SOME WAY TO
21   SPLIT UP THESE TABS.
22             MR. JACOBS:  I THINK IF YOU SPLIT OUT THE
23   TABS, YOU CAN MAKE THE REST OF THE CHART TWO
24   COLUMNS AND HAVE TWO COLUMNS FOR THE TABS, OR THREE
25   COLUMNS WITH A SHADED BOX FOR THE TABS.
```

3859

```
 1              A COUPLE OF THINGS ON OUR END, YOUR

 2     HONOR.

 3              MS. MAROULIS:  I'M NOT DONE.

 4              WITH RESPECT TO TRADE DRESS, THERE WERE A

 5     COUPLE OF PREDICATE QUESTIONS WE INCLUDED IN THE

 6     VERDICT FORM AS TO DAMAGES.  WE BELIEVE THEY'RE

 7     APPROPRIATE.

 8              FOR EXAMPLE, YOU HAVE TO SHOW ACTUAL HARM

 9     FOR THE SPECIFIC TRADE DRESS DAMAGES, AND THAT WAS

10     FORMER QUESTION 17 ON OUR FORM.

11              AND SIMILARITY, YOU NEED TO SHOW ACTUAL

12     CONFUSION WITH INTENT TO DECEIVE.  AGAIN, THIS IS A

13     PREDICATE FOR DILUTION DAMAGES.

14              SO WE RESPECTFULLY REQUEST THAT THEY BE

15     PUT BACK IF POSSIBLE, RECOGNIZING THAT THE FORM

16     IS -- HAS TO HAVE SOME LIMITATIONS, BUT BECAUSE

17     THOSE ARE PREDICATE FOR DAMAGES, WE THINK IT'S

18     NECESSARY FOR TRADE DRESS.

19              THE COURT:  I'M GOING TO ASSUME A JURY IS

20     GOING TO FOLLOW JURY INSTRUCTIONS AND MAKE THE

21     REQUIRED FINDINGS BEFORE THEY MAKE ANY LIABILITY

22     DETERMINATION IN AWARDING DAMAGES.  OKAY?

23              MS. MAROULIS:  AND FINALLY, YOUR HONOR,

24     WITH RESPECT TO TRADE DRESS INDUCEMENT, SAMSUNG

25     BELIEVES THAT THERE'S NO SUCH THEORY UNDER NINTH
```

1

2

3

4                    <u>CERTIFICATE OF REPORTER</u>

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21             /S/

             _____
22           LEE-ANNE SHORTRIDGE, CSR, CRR
             CERTIFICATE NUMBER 9595
23

24             DATED:  AUGUST 20, 2012

25