# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | CASE NO. 11-cv-01846-LHK |

**REBUTTAL EXPERT REPORT OF STEPHEN GRAY
REGARDING NON-INFRINGEMENT OF ASSERTED CLAIMS OF U.S. PATENT NOS.
7,844,915 AND 7,864,163**

193. A common non-infringing use of the Accused Products would be to use the phone in conjunction with personal information management functions—without use of the browser functions which is the only function mentioned as allegedly infringing the '915 Patent in the Singh Report. It is my opinion that the Singh Report does not make even a threshold showing that any of the method claims of the '915 Patent are indirectly infringed.

### D.     Other Non-infringing Alternatives

194. As stated in Section IV.B of this report, it is my opinion that the Accused Products do not infringe any claims of the '915 Patent. I note that there are several additional non-infringing alternatives which can be implemented in the Accused Products which are simple, if not trivial, to implement. Further, several of these non-infringing alternatives (e.g., tilt zoom, over-scroll glow, dimensional distortion, and list stretching) have already been implemented in at least some of the Accused Products.

195. The Singh Report indicates that any design around of the '915 Patent would be undesirable because the resultant product would have much less functionality:

> In my opinion, any such re-design would make the Accused Products much less useable, render them inconvenient for users, and deprive them of intuitive functionality that smartphone and tablet users have come to expect. (¶ 456)

196. I disagree. As the following sections illustrate, there are many easy to implement and cost effective non-infringing alternatives that would provide at least equivalent functionality to the current modes of operation.

#### 1.     Removing the test for number of inputs

197. Apple's expert points specifically to the WebView.handleQueuedMotionEvent() method as using the MotionEvent object to distinguish between a single input point and two or more input points in WebView.java lines 10281-10314:

> For example, in the Galaxy Tab 10.1 tablet, which runs Android 3.1, the WebView class's handleQueuedMotionEvent() method interprets the input points associated with the MotionEvent object it processes. The

-32-

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

handleQueueMotionEvent() method distinguishes between a single input point (ev.getPointerCount == 1) and two or more input points (ev.getPointerCount > 1). (See WebView.java:10281-10314 [SAMNDCA-C000002857].) If one input point is detected, the contact is interpreted as a scroll operation in handleTouchEventCommon(). (See WebView.java:10312 [SAMNDCA-C000002857].) If two or more input points are detected, the contact is interpreted as a gesture operation via a call to handleMultiTouchInWebView(). (See WebView.java:10302 [SAMNDCAC000002857]; WebView.java:7887-7944 [SAMNDCA-C000002858].)

198.   While I disagree that the Accused Products infringe the '915 Patent for the reasons explained above, a straightforward and fully functional non-infringing alternative is available.

199.   Simply removing Android's initial test for one versus two or more touch inputs at WebView.java:10281-10314 [SAMNDCA-C000002857], and, instead, always calling a slightly modified version of handleMultiTouchInWebView() to determine whether to scroll, scale, or rotate based on the position and direction of all touch input, regardless of the number of fingers touching the screen. The proposed modification would not read on Claim 1[c], which requires "determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation."

200.   I further note that the Android's MotionEvent class already contains the information required:

> Some devices can report multiple movement traces at the same time. Multi-touch screens emit one movement trace for each finger. The individual fingers or other objects that generate movement traces are referred to as pointers. Motion events contain information about all of the

-33-

other point is double tapped, the screen shrinks . . . only the whole screen can be enlarged/minimized." While the slide does suggest "augmenting" the enlarging/shrinking feature, it is referring to the ability of the Apple devices to re-center to a new focus area *and* "enlarge[] once again."

420.   This is further evident by looking at the figures on the slide. The figures labeled with the header "i-Phone" show an initial page that is partially enlarged, and then show a further enlarging of the text after the double tap. Additionally, the figure actually does not even show "substantial" centering of the zoomed material after the second enlarging step. The figures labeled with the header "S1" show a minimization of the text after a double tap. Therefore, it is clear that what was being investigated had nothing to do with the second gesture of the '163 Patent and repositioning the page after a zoom, but rather a zoom itself.

421.   Therefore, the slide at SAMNDC00203937 does not support the assertion that Samsung copied, or even considered the functionality associated with the second gesture of Claim 2 of the '163 Patent. My understanding is, however, that the investigation of this document is continuing, and I reserve the right to supplement this Report in the event further information comes to light.

422.   For these reasons, it is my opinion that the Singh Report does not cite evidence sufficient to make even a threshold showing that Samsung intentionally emulated features embodied in Apple products or described by the '163 Patent.

### E.   Other Non-infringing Alternatives

423.   Although it is my opinion that none of the Accused Products infringe the Asserted Claims, I also believe there are several other non-infringing alternatives to Claim 2 of the '163 Patent.

424.   I would note that several web designers, apparently finding the '163 methods for navigating structured electronic documents on small-screen devices insufficient, have actually begun to create specially designed "mobile" versions of their websites to more permit users to more easily navigate such websites without the need for the "tap-to-zoom" or "tap-to-pan" features. Such "mobile" websites are themselves non-infringing alternatives and are continuously becoming more prevalent. The ubiquity of such "mobile" devices likely explains why the analysis of the Singh Report and the exhibits in support are limited strictly to a single webpage (the *New York Times*).

425. Additionally, it is my opinion that a non-infringing alternative can be designed by removing the functionality associated with the second gesture completely. I disagree with the Singh Report opinion that removing this "tap-to-pan" feature would be undesirable because the feature is "elegant" and "intuitive" (¶ 281). Instead, it is my opinion that eliminating the translating step of Claim 2 in response to a second gesture would not appreciably decrease user satisfaction for the following reasons:

426. First, upon observing the device perform a zoom operation in response to a first gesture, it is my opinion that a user would not expect the device to perform a completely different translating operation in response to a second gesture that is the same or similar. The second gesture is thus not intuitive and unlikely to be discovered by users.

427. Second, because the first gesture "enlarges" and "substantially centers" a first box, it is often the case that whatever portion of a second box that is visible on the touch screen display would be in the periphery of the user's view. Because of the limited space on such devices, it is likely that only a very minor portion (if any) of such a second box would be visible or accessible to users (as is illustrated in Exhibit 11 to the Singh Report). Further, because the "boxes" of content on the Accused Products are not bounded by delineated borders, and it would be unclear to a user whether and where such a "second box" existed. It is therefore unlikely that the second box would provide a sufficient visual cue to the permit the user to gesture at a location of the second box.

428. Third, each of the manuals cited by the Singh Report expressly describe a finger "[t]ouch and drag" gesture that permits users to "reposition pages within the screen." Because of this express guidance in the device user manuals, and because I believe users would find touching and dragging the screen far more intuitive for a panning or translating operation, it is my opinion that users are far more likely to use this "touch and drag" gesture to translate across an enlarged view of a web-page.

429. Fourth, as I noted in my invalidity report, the functionality associated with the second gesture was added by the *Patent Examiner* late in the prosecution history of the '163 Patent after an initial rejection. The fact that Apple did not initially include the functionality associated with the second gesture, and the fact that the limitation was added by the Examiner, indicates to me that even Apple did

-73-

not consider the "tap-to-pan" feature important to functionality. By all indications, the "tap-to-pan" feature was *only* important to the Patent Examiner and *only* for purposes of patentability.

430. For these reasons, it is my opinion the "second gesture" described by Claim 2 of the '163 Patent does not appreciably improve the functionality of portable electronic devices, and this feature could be eliminated from an infringing device without any noticeable loss of user satisfaction.

431. I disagree with the Singh Report that Samsung considered a "less appealing" alternative. As already discussed above in Section V.D.2, it is my opinion that the slide at SAMNDCA00203937 does not describe the feature associated with the second gesture of the '163 Patent. It certainly does not show that Samsung considered, and rejected, a design-around that would eliminate entirely a second gesture causing translation *without* further enlarging.

432. Finally, I understand that removing the "second gesture" functionality would not take a significant amount of time or effort. Indeed, a programmer can simply change the response to the second gesture to perform a non-infringing operation (such as a zooming out), or to do nothing. It is my opinion that most users would not even notice the absence of this functionality. Moreover, as explained above, there would be no need to change any documentation associated with the Accused Products because I am only aware of documentation that shows another (non-infringing) way to reposition the page after zooming in.

## CONCLUSION

433. For the foregoing reasons, it is my opinion that the Asserted Products do not infringe either the '915 Patent or the '163 Patent.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

1  Dated: April 16, 2012

By *[signature: Stephen Gray]*
Stephen Gray