HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

Case No. 11-cv-01846-LHK

**APPLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAMSUNG'S ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL**

In accordance with Civil Local Rules 7-11 and 79-5, and General Order No. 62, Apple submits this memorandum in support of Samsung's motion (Dkt. No. 2064) to seal documents related to Samsung's Oppositions to Apple's Motion for Judgment as a Matter of Law, New Trial, and Amended Judgment ("JMOL Opposition") and Apple's Motion for a Permanent Injunction and Damages Enhancements ("PI Opposition").

## I. THE COURT SHOULD SEAL CAPACITY INFORMATION, FINANCIAL INFORMATION, THIRD PARTY RESEARCH DATA, FULL LICENSE AGREEMENTS AND APPLE'S CONFIDENTIAL CONSUMER RESEARCH

The Court should grant Samsung's motion to seal Apple-confidential material as outlined in greater detail below and the Declaration of Cyndi Wheeler in Support of Samsung's Motion to File Under Seal ("Wheeler Decl.") filed herewith. The need to protect trade secrets contained in Apple documents filed in connection with Samsung's motions is a "compelling reason" to seal material, which is sufficient to outweigh the public's interest in disclosure. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The type of information that Apple seeks to seal qualifies as trade secret. *See, e.g.*, *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (concluding that data relating to profit margin constituted trade secrets); *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1198 (D.N.J. 1992) (noting that multiple courts have found customer product use and preference information to be trade secrets).

### A. The Court should seal Apple's capacity information

The Court has previously approved sealing of capacity information, including the information Samsung has proposed redacting. (Wheeler Decl. ¶¶ 2-5; Dkt. No. 1649 at 4, 13.) For the same reasons, the Court should seal capacity information filed with Samsung's JMOL Opposition and PI Opposition in Exhibit 13 to the Pierce Declaration ISO Samsung's JMOL Opposition, Exhibit C to the Wagner Declaration ISO Samsung's JMOL Opposition, and Exhibit 212 to the Wagner Declaration ISO Samsung's PI Opposition.

### B. The Court should seal unredacted license agreements

The Court should also seal Samsung Exhibits 12-1 and 12-2 to the Pierce Decl. ISO PI Opposition, which are complete, unredacted license agreements. (Wheeler Decl. ¶ 14.) The

Court has previously sealed such license agreements because they "contain a whole host of terms (e.g. termination conditions, side-agreements, waivers) that are irrelevant to matters in this litigation [and] disclosure of these full documents could result in significant competitive harm to the licensing parties as it would provide insight into the structure of their licensing deals, forcing them into an uneven bargaining position in future negotiations." (Dkt. No. 1649 at 10, 16.) For the same reason, Apple respectfully requests that Exhibits 12-1 and 12-2 to the Pierce Decl. ISO PI Opposition be sealed.

**C. The Court should seal third party confidential research data**

Samsung filed an extensive IDC spreadsheet as Exhibit 199 to the Wagner Decl. ISO PI Opposition, with data from this spreadsheet making up Schedules 2.1 and 2.2 in Exhibit 2 to the Wagner Decl. ISO PI Opposition. (Wheeler Decl. ¶¶ 11-12.) The Court has previously granted Apple's motions to seal consumer research reports prepared by third parties such as IDC (*E.g.*, Dkt. No. 2047 at 4-5). The Court found that release of such information "could harm IDC in so far as it might reduce IDC's ability to sell its reports to other customers, and the public's interest in this information about the smartphone market generally is not especially great, and could be satisfied by the information disclosed at trial." (Dkt. No. 2047 at 4-5; *see also* Dkt. No. 1649 at 10.) Pages '627, '628, '629, '634, '643, '644, '655, '656, '667, '668, '679, '680, '691, and '692 of Exhibit 29 to the Wagner Decl. ISO PI Opposition similarly contain data derived from reports published from third parties IDC and Gartner. (Wheeler Decl. ¶ 13.) Consistent with the Court's prior order, and for the same reasons discussed in Apple's prior motions to seal, Apple respectfully requests that the Court seal this material.

**D. The Court should seal Apple's highly confidential financial information**

Apple has previously moved to seal, supported by detailed declarations, the same types of financial information at issue in Samsung's PI Opposition, specifically in Exhibits 2, 47, 83, 84, 85, 86, 87, 201, 202, 203, 204, and 212 to the Wagner Decl. ISO PI Opposition. (Wheeler Decl. ¶¶ 7-10.) The Court previously denied Apple's motions but stayed enforcement of its order pending Apple's appeal to the Federal Circuit. (Dkt. Nos. 1754, 2047.).

Apple takes extensive steps to protect the secrecy of its critical financial information. Even within Apple, very few people have access to this information. Access is on a "need to know" basis and must be approved in advance by one of Apple's Vice Presidents of Finance. (Dkt. No. 1502 ¶ 3.) The list of approved individuals is reviewed quarterly and revised to ensure that employees who no longer require access do not receive that information. (*Id.*) On the very rare occasions Apple must disclose its nonpublic financial information to those outside Apple, it marks such information "confidential" and distributes it only subject to highly restrictive nondisclosure agreements or protective orders. (*Id.*)

Apple goes to such lengths to protect its financial information because the information is competitively sensitive. Apple derives enormous value from the fact that its financial details are not shared with Apple's competitors and suppliers. (Dkt. No. 1502 ¶¶ 4-8.) Apple's competitors could use profits and margins data to undercut Apple's prices by determining the products for which Apple has substantial profits, low costs, and wide margins and thus would be most susceptible to a price cut. (*Id.* ¶ 8.) Competitors' products—particularly if released with pricing designed to take advantage of unfair knowledge of Apple's bottom line—will substantially affect demand for Apple's products. Competitors could use the information to develop products that they can strategically price to undercut Apple. The facts of this case substantiate this risk. Indeed, Samsung may be in a position to undercut Apple's prices for smartphones and tablets, having already economized on development costs by free-riding off Apple's innovation. Apple's suppliers could use quarterly profits, costs, and margins data to determine when Apple has the highest margins and hike their prices accordingly. (*Id.*)

Product-line specific information, i.e. financial details with information as to specific versions of a given product, is also critically sensitive and valuable. (Dkt. No. 1502 ¶ 7.) Product line sales and revenue information reveal to competitors what Apple's most and least successful products are, and therefore provide unfair intelligence into which markets are ripe for competition and which markets may be more difficult to approach. (*Id.*) Apple respectfully requests that the financial information contained in Samsung's filings be sealed, as set out in in the Wheeler Declaration ¶¶ 6-10.

**E. The Court should seal Apple's confidential consumer research**

Exhibit 6 to the Pierce Declaration ISO Samsung's PI Opposition and Exhibits 10-12, 31-32, 38, 72, and 189 to the Wagner Declaration ISO Samsung's PI Opposition contain Apple confidential consumer research data. (Wheeler Decl. ¶ 15.) At Apple's request, Samsung has agreed to withdraw these exhibits and refile only the portions that Samsung believes are relevant to the instant motions. (Sabri Decl. ¶ 1 Ex. A.)

The Court has denied Apple's previous motions to seal confidential consumer research data but stayed enforcement of its orders pending appeal and a motion to stay before the appellate court. (*E.g.*, Dkt. No. 1754.)

Apple again requests that the Court seal Apple's confidential consumer research. No competitor has access to Apple's customer base to conduct the type of in-depth analysis Apple is able to conduct. (Dkt. No. 1496 ¶ 5.) Access to this analysis would be of enormous benefit to Apple's competitors. (*Id.*) Apple's competitors will know the importance Apple's customers place on each of a wide variety of features; what demographics are most satisfied with Apple's products; and even the preferences of customers in countries around the world, which are irrelevant to this case. (*Id.*) Competitors would be able to observe trends over time. (*Id.*) No other entity can replicate this research. (*Id.*)

Also important are the conclusions Apple has drawn from the data. (*Id.* ¶ 6.) Knowing what Apple thinks about its market and where Apple is focusing its attention is extremely valuable to competitors. (*Id.*) If competitors gain access to such documents, they will able to infer Apple's next product moves. Knowing where Apple is headed, they can target their efforts to prepare products and marketing counterstrategies in the short term and target product development plans to stay ahead of Apple in the long term. All of this would result in serious competitive harm to Apple. (*Id.*)

Because of this extreme sensitivity, distribution of Apple's internal customer research is very tightly controlled at Apple. (*Id.* ¶ 7.) The documents are stamped as confidential and no internally conducted surveys circulate outside a small, select group of Apple executives. (*Id.*) No iPhone-related surveys or iPad-related surveys are allowed to be distributed to *anyone* outside this

group without the personal permission of Apple's Vice President of Product Marketing, Gregory Joswiak. (*Id.*) Thus, the Court should seal Exhibit 6 to the Pierce Declaration ISO Samsung's PI Opposition and Exhibits 10-12, 31-32, 38, 72, and 189 to the Wagner Declaration ISO Samsung's PI Opposition.

## II. IF SEALING IS DENIED, THE COURT SHOULD STAY THE EFFECT OF ITS ORDER PENDING APPEAL

Apple respectfully requests that if the Court denies sealing of any of the materials that are the subject of this motion, the Court continue its practice of staying effect of its order pending appeal. (Dkt. No. 2047 at 7.) As the Court has previously held, once information is publicly filed, "what once may have been trade secret no longer will be. Thus, the parties may be irreparably injured absent a stay. In contrast, the public interest, which favors disclosure of relevant information in order to understand the proceedings, is not unduly harmed by a short stay." (*Id.*)

Dated: October 26, 2012

MORRISON & FOERSTER LLP

By: */s/ Jason R. Bartlett*
JASON R. BARTLETT

Attorneys for Plaintiff
APPLE INC.