1  JENNIFER A. GOLINVEAUX (SBN: 203056)
   jgolinveaux@winston.com
2  WINSTON & STRAWN LLP
   101 California Street
3  San Francisco, CA  94111-5894
   Telephone:     (415) 591-1000
4  Facsimile:     (415) 591-1400

5  PETER J. CHASSMAN (*pro hac vice*)
   pchassman@winston.com
6  WINSTON & STRAWN LLP
   1111 Louisiana, 25th Floor
7  Houston, TX  77002-5242
   Telephone:     (713) 651-2623
8  Facsimile:     (713) 651-2700

9  Attorneys for Non-Party,
   MOTOROLA MOBILITY LLC
10

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                   **SAN JOSE DIVISION**

14

15  APPLE, INC., a California Corporation,    ) **CASE NO.:  11-CV-01846-LHK**
                                              )
16              Plaintiff,                    )
                                              )
17         v.                                 ) **DECLARATION OF JENNIFER A.**
                                              ) **GOLINVEAUX IN SUPPORT OF**
18  SAMSUNG ELECTRONICS CO., LTD., a          ) **RENEWED MOTION BY NONPARTY**
    Korean corporation; SAMSUNG              ) **MOTOROLA MOBILITY LLC TO**
    ELECTRONICS AMERICA, INC., a New York    ) **SEAL PORTIONS OF EXHIBIT 23**
19  corporation; SAMSUNG                      )
    TELECOMMUNICATIONS AMERICA, LLC, a       )
20  Delaware limited liability company,       )
                                              ) [Civ. L.R. 79-5]
21              Defendants.                    )
                                              ) Date: Expedited Request
22                                            ) Courtroom: 5, 4th Floor
                                              ) Magistrate: Paul S. Grewal
23                                            )

24

25

26

27
                              -1-
28

**DECLARATION OF JENNIFER A. GOLINVEAUX**

I, Jennifer A. Golinveaux, declare and state:

1.       I am an attorney at law and a partner at Winston & Strawn LLP, counsel for nonparty Motorola Mobility LLC ("Motorola").   I submit this declaration in support of the Renewed Motion by Nonparty Motorola Mobility LLC To Seal Portions of Exhibit 23.   I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify thereto.

2.       Pursuant to Civ. L.R. 7-11, on October 5, 2012, counsel for Motorola contacted the parties to this action, Apple and Samsung, asking if they would oppose Motorola's Original Motion to Seal Exhibit 23 in its entirety, which was filed on October 5, 2012 (Dkt. No. 2028). Samsung and Apple both responded that they would not oppose Motorola's Original Motion to Seal.

3.       Attached hereto as Exhibit 1 is a true and correct copy of Exhibit 23, highlighting for the Court's convenience the redactions requested by Motorola.

4.       Attached hereto as Exhibit 2 is the redacted version of Exhibit 23 requested by Motorola, which is now being publicly filed.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.   Executed this 1st day of November, 2012, in San Francisco, California.

*/s/ Jennifer A. Golinveaux* _____
Jennifer A. Golinveaux

**DECL. OF JENNIFER A. GOLINVEAUX ISO RENEWED MOTION BY NONPARTY
MOTOROLA MOBILITY LLC TO SEAL PORTIONS OF EXHIBIT 23
Case No. 11-CV-01846-LHK**

# EXHIBIT 1 – REDACTED

# LODGED WITH THE CLERK

PROPOSED REDACTED VERSION OF
DOCUMENT IDENTIFIED AS
EXHIBIT 23 TO THE DECLARATION OF
CALVIN WALDEN ISO APPLE'S MOTION TO
COMPEL DEPOSITIONS OF SAMSUNG'S
PURPORTED "APEX" WITNESSES

# EXHIBIT 2

# EXHIBIT 23

# FILED UNDER SEAL

SUMMARY OF SEPTEMBER 7, 2000 MOTOROLA MEETING IN WASHINGTON, D.C.

Attendees:

For Samsung Electronics -- Chuck Donohoe, Seung-Gun Park, Injung, Lee, Junwon Lee, and Mike Barry

For Motorola -- John Motsinger, Ray Warren, and Mike Stolarski

Conclusion:

Samsung made the first offer of the meeting ▆▆▆ for past damages through 1999 and ▆▆▆ running royalty on handsets for 2000~04 (five years), with a guaranteed minimum of ▆▆ and maximum of ▆▆▆ payment each year. The minimum payment under Samsung's proposal would be ▆▆▆ over five years and the maximum payment could be ▆▆▆ Motorola eventually (after more than eight hours) made two proposals. The first proposal used a formula with fixed payments and running royalties for six years. Using Samsung's internal sales projections, this offer would result in an estimated ▆▆▆ over the first five years (2000~04). Over the five-year period, this represented probably about ▆▆▆ less than Motorola's last proposal before this meeting. Motorola's second proposal was a lump-sum of ▆▆▆ over four years for all handsets excluding W-CDMA. Converting the first proposal to four years, Motorola's second proposal represented probably about ▆▆▆ less than its first proposal. Thus, the expected value of Motorola's position came down over ▆▆▆ for a four-year license (2000~03) that excludes W-CDMA handsets and all infrastructure.

Negotiation highlights:

After preliminary discussions, Chuck explained the various factors related to the offer made by KT Lee at the previous meeting and presented the authorized offer for this meeting, which essentially added royalty caps to the previous offer. In other words, as Motorola noted at the end of the meeting, Samsung opened the meeting with an offer that was lower than the offer we made at the end of the previous meeting.

For the next several hours, Motsinger referred back to letters Motorola sent to Samsung and emphasized Motorola consistently had made and explained certain assumptions about the nature of the proposed license. Basically, Motsinger was complaining that Samsung seemed to be ignoring Motorola's assumptions. Chuck answered that Samsung also consistently had assumed certain things about Samsung's offers and had explained these items to Motorola (but not in writing). Chuck explained that Samsung never had accepted all of Motorola's assumptions regarding the proposed deal.

**Confidential Business Information - Subject to Protective Order**
CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

**SS 03066258**
S-794-ITC-003061294

After several hours, the primary issues other than money were: (1) what would be the term of the agreement (Motorola wanted a longer term); (2) would the agreement cover infrastructure (Motorola wanted this); (3) would the agreement cover all Motorola non-essential patents (Motorola did not want this); and (4) would North Korea be considered part of Korea after reunification (assuming there was a different royalty structure in the agreement for Korean sales). A fifth issue identified at the end of the meeting was (5) would the agreement cover all 3G products (Motorola ended up insisting on exclusion of W-CDMA products from the agreement, that is, cdma2000 3G handsets were included in the scope of Motorola's proposal).

Here are some negotiation discussion highlights:

· Motorola: Why does Samsung want a five-year license term (through '04)? (Motorola insisted always before it had licensed "for the life of the standard.)
· Answer: Samsung believes there will have been a shift in technology and relative patent portfolio strength by then.

· Motorola: What does Samsung want for the licensed product? (Motorola had been proposing only 2 and 2.5G handsets and infrastructure)
· Answer: All handsets including 3G, no infrastructure.
· Note: Motorola stated there may not have been a common understanding of Samsung's prior proposals, indicating Motorola may have misunderstood our previous lump-sum offers to cover infrastructure, and therefore Motorola may have undervalued Samsung's prior proposals. Also, Samsung should expect Motorola to return to the negotiating table soon for an infrastructure license.

· Motorola: We understand Samsung does not have a funded W-CDMA R&D program
· Answer: Your understanding is incorrect. We have both cdma2000 and W-CDMA programs, but our cdma2000 position is stronger.
· Note: Motorola stated W-CDMA development might be an area for cooperation between Samsung and Motorola.

· Motorola: What is Samsung's position about South-North reunification – will "Korea" include the former North Korea for purposes of the license agreement?
· Answer: Of course.
· Note: This was really a non-issue for Samsung, and probably for Motorola also.

· Motorola: What about Motorola's proposal regarding a limited license for Motorola non-essential patents?
· Answer: Samsung expects a full peace agreement over the term, that is, a license under all Motorola non-essential patents.
· Note: There has never been any agreement on this issue. It seems unlikely Motorola would ever accept a blanket license over the term of the agreement. In other words, Motorola will insist any new non-essential Motorola patents that issue during the term of the agreement will be unlicensed. The compromise offered by Motorola is to provide some window of time and procedure for Samsung to design around any newly identified

2

**Confidential Business Information - Subject to Protective Order**
CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

**SS 03066259**
S-794-ITC-003061295

non-essential Motorola patents.  Furthermore, Motorola will insist that any existing Motorola non-essential patent not used by a current Samsung handset similarly will remain unlicensed.  Thus, if during the term of the agreement a new Samsung handset design uses some previously unused Motorola non-essential patent, then Samsung will have this same window of time and procedure for designing around the previously unused non-essential Motorola patent.

· Motorola:  We assume Samsung will sell 106 million handsets in Korea over the six years 2000~2005 with an average selling price of $175 in 2000.  We assume Samsung's infrastructure equipment sales will be worth about 2/3 of the dollar value of Samsung's world-wide CDMA handset sales.  We assume 75% of Samsung's CDMA infrastructure sales will be inside Korea.  What does Samsung think of our assumptions.
· Answer:  No comment on infrastructure issues.  The Korean handset sales number assumed by Motorola seems high.  For negotiation, let's just divide by two.

· Motorola then offered a modification of the offer on the second page of its July 27, 2000 letter:  a ████ quarterly payment declining by ████████ and ███ running royalty on non-Korean sales and ████ running royalty on Korean handset sales exceeding 10.5M in '00, 4.5M in '01, 5M in '02, 5M in '03, 10M in '04, and 15M in '05.  Motorola's proposal included ████ running royalty on non-Korean infrastructure sales and ████ running royalty on Korean infrastructure sales above certain amounts each year over the term of the agreement ████ of Korean infrastructure sales would be exempted from the running royalty over the six years).
· Note:  Using conservative estimates of Samsung's proposed sales over the five-year period 2000~04 and the agreed-upon past damages amount of ████, the expected total payments under Motorola's proposal would be about ████ for the five years 2000~04.  This is about ████ less than the estimated total payments for the same period under Motorola's last proposal before this meeting.

· Samsung highlighted problematic issues with Motorola's proposal, such as inclusion of infrastructure, the non-essential patent issue, the term, and the lack of a cap on payments.  While refusing to explain its "formula", Motorola offered to reduce its proposal to a five-year term but rejected Samsung's proposal of annual caps.  Motorola argued Most Favorable Licensee (MFL) clause provisions in other agreements limited its proposal.  Samsung argued there must be a cap, and indicated there could be no resolution at this meeting in view of the differences between the parties' positions.

· Finally, a little more than eight hours into the meeting, which started about 1:00 p.m., Motorola offered ████ for a four-year (2000~03) license covering all handsets except W-CDMA.  After some analysis, Samsung observed this was a significant improvement in Motorola's position and agreed to present the offer to Ki Tae Lee.  Motorola stated it expected an answer (of Samsung's acceptance) by September 20.

· Note:  Using Samsung's internal sales projections, Motorola's final four-year offer probably represented about a ████ improvement over the value of the first four years of Motorola's six-year offer earlier in the meeting.

3

**Confidential Business Information - Subject to Protective Order**
CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

**SS 03066260**
S-794-ITC-003061296