# Estrich Declaration

# Exhibit 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6  CORPORATION,                 )
                                )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,        )
                                )  JULY 30, 2012
8         VS.                   )
                                )  VOLUME 1
9  SAMSUNG ELECTRONICS CO.,     )
   LTD., A KOREAN BUSINESS      )  PAGES 1-282
10 ENTITY; SAMSUNG              )
   ELECTRONICS AMERICA,         )
11 INC., A NEW YORK             )
   CORPORATION; SAMSUNG         )
12 TELECOMMUNICATIONS           )
   AMERICA, LLC, A DELAWARE     )
13 LIMITED LIABILITY            )
   COMPANY,                     )
14                              )
               DEFENDANTS.      )
15 _____

16            TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595
24

25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                      BY:  HAROLD J. MCELHINNY
 3                                     MICHAEL A. JACOBS
                                       RACHEL KREVANS
 4                                425 MARKET STREET
                                  SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:                      HALE AND DORR
 7                                BY:  WILLIAM F. LEE
                                  60 STATE STREET
 8                                BOSTON, MASSACHUSETTS  02109

 9                                BY:  MARK D. SELWYN
                                  950 PAGE MILL ROAD
10                                PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                                  OLIVER & HEDGES
12                                BY:  CHARLES K. VERHOEVEN
                                  50 CALIFORNIA STREET, 22ND FLOOR
13                                SAN FRANCISCO, CALIFORNIA  94111

14                                BY:  VICTORIA F. MAROULIS
                                       KEVIN P.B. JOHNSON
15                                555 TWIN DOLPHIN DRIVE
                                  SUITE 560
16                                REDWOOD SHORES, CALIFORNIA  94065

17                                BY:  MICHAEL T. ZELLER
                                       WILLIAM C. PRICE
18                                865 SOUTH FIGUEROA STREET
                                  10TH FLOOR
19                                LOS ANGELES, CALIFORNIA  90017

20

21

22

23

24

25
```

```
 1                    AFTERNOON SESSION

 2              (WHEREUPON, THE FOLLOWING PROCEEDINGS

 3    WERE HELD OUT OF THE PRESENCE OF THE PROSPECTIVE

 4    JURORS.)

 5              THE COURT:  OKAY.  ONE QUESTION THAT I

 6    HAVE -- WELCOME BACK, EVERYBODY -- IS WHAT WE

 7    SHOULD DO TODAY AFTER THE JURY IS SELECTED.

 8              I COULD SHOW THEM THE VIDEO AND READ THE

 9    STATEMENT REGARDING THE FEDERAL JUDICIAL CENTER

10    VIDEO.

11              I'M RELUCTANT TO START WITH THE JURY

12    INSTRUCTIONS IF WE DON'T HAVE THE LIMITING

13    INSTRUCTION AS TO MR. NISHIBORI COMPLETELY

14    RESOLVED, AND I DON'T WANT TO SORT OF READ IT

15    SEPARATELY AS AN ADD-ON TOMORROW.

16              DOES THAT MAKE ANY SENSE?  BECAUSE THEN

17    IT JUST MAKES IT SEEM LIKE THAT'S NOT PART OF THE

18    PACK.

19              MR. VERHOEVEN:  YES, YOUR HONOR.

20              THE COURT:  SO SHOULD WE AT LEAST SHOW

21    THE VIDEO?  I DON'T WANT TO ALSO LOSE A GOOD CHUNK

22    OF TIME THIS AFTERNOON, EITHER.

23              SO WE COULD SHOW THE VIDEO AND JUST READ

24    THE FJC STATEMENT AND JUST SAVE THE READING OF ALL

25    THE JURY INSTRUCTIONS UNTIL TOMORROW, OR I COULD AT
```

```
1    LEAST READ THE PRELIMINARY ONES AND GIVE THEM THE

2    BOOKS TOMORROW FOR ALL OF THEM.

3              DO HAVE ANY THOUGHTS ON THIS?

4              MR. VERHOEVEN:  I THINK WE AGREE THAT IT

5    WOULDN'T MAKE SENSE TO SEPARATE THE NISHIBORI

6    INSTRUCTION SEPARATE FROM THE OTHERS AND THE

7    INITIAL INCLINATION WOULD BE CORRECT.

8              MR. MCELHINNY:  I ACTUALLY DON'T -- I

9    THINK THE PROPER TIME FOR A LIMITING INSTRUCTION IS

10   WHEN THE EVIDENCE -- I BELIEVE THAT THE TIME FOR

11   THE LIMITING INSTRUCTION IS WHEN THE EVIDENCE COMES

12   INTO EVIDENCE.

13             BUT IF YOUR HONOR IS GOING TO ALLOW IT IN

14   THE OPENING, THEN I THINK THAT'S THE FIRST TIME

15   THEY'LL HEAR IT AND THAT'S IT.

16             I THINK A LIMITING INSTRUCTION THAT

17   POINTS TO SPECIFIC EVIDENCE AND SAYS "THIS IS THE

18   REASON I'M LETTING THIS IN," TO FOLD THAT IN A

19   PACKAGE OF FOUR MINUTES OF PRELIMINARY -- I THINK

20   IT OBVIATES THE PURPOSE OF IT BECAUSE IT'S SUPPOSED

21   TO BE TYING THE JURY'S MIND TO WHEN THEY FIRST HEAR

22   THE EVIDENCE SO THEY KNOW WHAT YOU'RE TALKING

23   ABOUT.

24             THE COURT:  ALL RIGHT.  LET'S BRING OUR

25   JURY UP --
```

```
 1              THE CLERK:  I'M WAITING TO HEAR FROM
 2    MR. YOUNGER IF THEY'RE ALL DOWN THERE.
 3              THE COURT:  I'M SORRY?
 4              THE CLERK:  I'M WAITING TO HEAR FROM J
 5    WHETHER THEY'RE ALL DOWN THERE.  HE WAS GOING TO DO
 6    ANOTHER ROLE CALL.
 7              THE COURT:  OH, ON ALL OF THEM?  OKAY.
 8              (DISCUSSION OFF THE RECORD BETWEEN THE
 9    COURT AND THE CLERK.)
10              (PAUSE IN PROCEEDINGS.)
11              (WHEREUPON, THE FOLLOWING PROCEEDINGS
12    WERE HELD IN OF THE PRESENCE OF THE PROSPECTIVE
13    JURORS.)
14              THE COURT:  OKAY.  WELCOME BACK.  PLEASE
15    TAKE A SEAT.  WE HAD A FEW MORE DEPARTURES IN YOUR
16    ABSENCE.
17              LET'S CONTINUE WITH THE QUESTIONS.
18              THE NEXT QUESTION IS, HAVE YOU OR A
19    FAMILY MEMBER OR SOMEONE VERY CLOSE TO YOU EVER
20    BEEN INVOLVED IN A LAWSUIT, EITHER AS A PLAINTIFF,
21    A DEFENDANT, OR AS A WITNESS?
22              LET'S SEE.  ON THE FIRST ROW, WHO WOULD
23    RAISE THEIR HAND TO THAT QUESTION?
24              ALL RIGHT.  LET'S GO TO MR. HOGAN.
25              PROSPECTIVE JUROR:  IN 2008, AFTER MY
```

```
1     COMPANY WENT BELLY UP, THE PROGRAMMER THAT WORKED

2     FOR ME FILED A LAWSUIT AGAINST ME AND ULTIMATELY,

3     ACROSS THE NEXT FEW MONTHS, IT WAS DISMISSED AND IN

4     SUCH A FASHION THAT NEITHER ONE OF US COULD SUE THE

5     OTHER ONE FOR THAT MATTER.

6               THE COURT:  WHAT WAS HIS -- WHAT WAS THE

7     EMPLOYEE'S CLAIM?

8               PROSPECTIVE JUROR:  IT WAS A DISPUTE OVER

9     THE SOFTWARE THAT WE HAD DEVELOPED, WHETHER IT

10    BELONGED TO THE COMPANY OR TO HIM, AND I HAD

11    DOCUMENTS THAT SHOWED IT BELONGED TO THE COMPANY.

12              ULTIMATELY, AS I SAID, IT WOULD -- WE

13    SETTLED OUT OF COURT AND IT WAS DISMISSED.

14              THE COURT:  ALL RIGHT.  ANYTHING ABOUT

15    THAT EXPERIENCE THAT WOULD AFFECT YOUR ABILITY TO

16    BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE?

17              PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

18              THE COURT:  OKAY.  WAS THERE ANY

19    DISPUTE -- WAS THERE ANY DISPUTE AS TO WHO HAD

20    CREATED AND INVENTED THE TECHNOLOGY, OR WAS IT

21    LARGELY WHO HAD OWNERSHIP OF IT?

22              PROSPECTIVE JUROR:  IT WAS STRICTLY WHO

23    HAD OWNERSHIP OF IT, AND ULTIMATELY IT WAS

24    ESTABLISHED THAT THE COMPANY DID HAVE OWNERSHIP OF

25    IT, ALTHOUGH -- AND I STILL DO -- ALTHOUGH THE
```

```
1     COMPANY IS NOT IN BUSINESS ANY LONGER.

2               THE COURT:  I SEE.  BUT WAS THERE A SORT

3     OF DISPUTE AS TO WHO HAD CREATED OR INVENTED THE

4     TECHNOLOGY AS PART OF THAT OWNERSHIP QUESTION?

5               PROSPECTIVE JUROR:  YES, THERE WAS.

6               THE COURT:  UM-HUM.

7               PROSPECTIVE JUROR:  BUT LIKE I SAID, WE

8     SETTLED THAT -- BECAUSE OF DOCUMENTATION I HAD, WE

9     WERE ABLE TO SETTLE IT OUT OF COURT AND THEN WE

10    WENT BACK TO COURT ONE LAST TIME FOR THE DISMISSAL

11    PAPERWORK.

12              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

13              MS. ROUGIERI, I THINK YOU RAISED YOUR

14    CARD?

15              PROSPECTIVE JUROR:  YES, I DID.

16              THE COURT:  GO AHEAD.

17              PROSPECTIVE JUROR:  I BROUGHT A LAWSUIT

18    AGAINST A DENTIST.  THAT WAS IN 2005, 2006.

19              THE COURT:  OH, CAN WE HAVE THE

20    MICROPHONE?  APPARENTLY IN THE OVERFLOW ROOM, THEY

21    CAN'T HEAR THE JURORS WITHOUT THE MICROPHONE.

22              THANK YOU.

23              PROSPECTIVE JUROR:  I HAD A SMALL CLAIM

24    AGAINST A DENTIST THAT WAS IN 2005.  IT WORKED OUT

25    THAT WHEN WE DID THE SMALL CLAIM, I WON THE FIRST
```

1    TIME, AND HE HAD AN APPEAL AND HE BROUGHT HIS

2    LAWYER AND I LOST.

3                 THE COURT:  ALL RIGHT.  SO YOU

4    REPRESENTED YOURSELF?  WAS THAT IN SMALL CLAIMS

5    COURT?

6                 PROSPECTIVE JUROR:  IT WAS IN SMALL

7    CLAIMS COURT.

8                 THE COURT:  OKAY.  ANYTHING ABOUT THAT

9    EXPERIENCE THAT WOULD AFFECT YOUR ABILITY TO BE

10   FAIR AND IMPARTIAL IN THIS CASE?

11                PROSPECTIVE JUROR:  WELL, NO.

12                BUT IT AFFECTED ME BECAUSE THE LAWYER

13   KNOWS THE JUDGE.  THE LAWYER THAT WAS AGAINST ME

14   KNOWS THE JUDGE, SO THEY WERE TALKING FRIENDLY

15   TERMS IN A WAY THAT THE CHILDREN, THEY PLAYED EACH

16   OTHER TOGETHER IN SCHOOL.

17                AND THAT REALLY I THINK -- MY BELIEF IS

18   THAT THAT'S HOW I LOST THE CASE, BECAUSE THE LAWYER

19   KNOWS THE JUDGE.

20                THE COURT:  WAS THAT AFTER IT WAS

21   APPEALED TO THE SUPERIOR COURT JUDGE?

22                PROSPECTIVE JUROR:  YES.

23                THE COURT:  AND YOU'RE SAYING THAT THE

24   LAWYER KNEW THE SUPERIOR COURT JUDGE?

25                PROSPECTIVE JUROR:  CORRECT, YES.

```
 1              THE COURT:  I SEE.  AND YOU THOUGHT THAT
 2    THERE WAS SOME UNFAIRNESS?
 3              PROSPECTIVE JUROR:  UNFAIRNESS TO THAT,
 4    YES.
 5              THE COURT:  OKAY.  WOULD YOUR NEGATIVE
 6    IMPRESSION FROM THAT EXPERIENCE SPILL OVER INTO
 7    THIS CASE AT ALL?
 8              PROSPECTIVE JUROR:  NO, NO, YOUR HONOR.
 9              THE COURT:  OKAY.
10              PROSPECTIVE JUROR:  I -- NO, YOUR HONOR.
11              THE COURT:  ALL RIGHT.  AND THIS IS FOR
12    EVERYONE.
13              WE'LL TALK FURTHER ABOUT WHO'S BEEN ON
14    JURY DUTY, BUT THERE ARE DEFINITELY DIFFERENT, YOU
15    KNOW, STANDARDS OF PROOF IN DIFFERENT CASES, AND I
16    JUST WANTED TO MAKE SURE -- YOU ALL HAD CIVIL
17    CASES, SO I WOULD ASSUME THAT YOU ALSO HAD, YOU
18    KNOW, PREPONDERANCE OF THE EVIDENCE.  DOES THAT
19    SOUND FAMILIAR?
20              AND WE'LL TALK ABOUT THIS A LITTLE BIT
21    LATER ON, BUT IN DIFFERENT TYPES OF CASES, THERE
22    MAY BE DIFFERENT STANDARDS OF PROOF, AND ALSO THE
23    LAW MAY HAVE CHANGED SINCE WHENEVER YOU WERE A
24    LITIGANT.
25              SO I WANT TO MAKE SURE THAT BOTH
```

1    MR. HOGAN, AND MS. ROUGIERI, THAT YOU WOULD APPLY

2    THE LAW AS I INSTRUCT YOU AND NOT BASED ON YOUR

3    UNDERSTANDING OF THE LAW BASED ON YOUR OWN CASES.

4              IS THAT CORRECT, MR. HOGAN?

5              PROSPECTIVE JUROR:  YES.

6              THE COURT:  AND MS. ROUGIERI?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  OKAY.  ANYONE ELSE IN THE

9    FIRST ROW?

10             PROSPECTIVE JUROR:  YES, SMALL CLAIMS --

11             THE COURT:  WOULD YOU PLEASE USE THE

12   MICROPHONE?  THANK YOU.

13             PROSPECTIVE JUROR:  SMALL CLAIMS COURT,

14   AND I THINK IT WAS AT THE END OF 2011.

15             THE COURT:  WHAT WAS THE BASIS OF THE

16   CLAIM?  WERE YOU A DEFENDANT OR A CLAIMANT?

17             PROSPECTIVE JUROR:  I BROUGHT SOMEONE TO

18   COURT WHO OWED ME MONEY.

19             THE COURT:  AND WHAT WAS THE -- HOW DID

20   THAT RESOLVE?

21             PROSPECTIVE JUROR:  IT WAS IN MY FAVOR.

22             THE COURT:  DID YOU REPRESENT YOURSELF?

23             PROSPECTIVE JUROR:  YES.

24             THE COURT:  ALL RIGHT.  ANYTHING BASED ON

25   THAT EXPERIENCE THAT LEAVES YOU WITH A LASTING

1    IMPRESSION ABOUT THE JUSTICE SYSTEM, ABOUT THE

2    COURTS, ABOUT --

3              PROSPECTIVE JUROR:  NO, NO.

4              THE COURT:  -- THE JUDICIARY THAT WOULD

5    AFFECT YOUR ABILITY TO BE FAIR HERE?

6              PROSPECTIVE JUROR:  NO, NO PROBLEM.

7              THE COURT:  ALL RIGHT.  THANK YOU.

8              ANYONE ELSE ON ROW 2?

9              ALL RIGHT.  LET'S GO TO MS. FRIESEN.

10             PROSPECTIVE JUROR:  THERE WAS A SMALL

11   CLAIMS COURT CASE IN REGARDS TO THE BUSINESS I HAD,

12   IT WAS AN ADVERTISING CASE, AND THE OTHER COMPANY

13   WON THE SUIT.

14             THE COURT:  WERE YOU THE PLAINTIFF OR THE

15   DEFENDANT?

16             PROSPECTIVE JUROR:  DEFENDANT.

17             THE COURT:  AND THIS WAS WITH REGARD TO

18   YOUR FRANCHISE INSURANCE AGENCY?

19             PROSPECTIVE JUROR:  CORRECT.

20             THE COURT:  OKAY.  WHEN WAS THIS LAWSUIT?

21             PROSPECTIVE JUROR:  I THINK IT WAS 2008.

22             THE COURT:  I THOUGHT YOUR BUSINESS ENDED

23   IN 2006.

24             PROSPECTIVE JUROR:  CORRECT.

25             THE COURT:  OH.  THIS WAS AFTER THE

```
 1    BUSINESS HAD ALREADY RESOLVED?
 2              PROSPECTIVE JUROR:  CORRECT.
 3              THE COURT:  OKAY.  AND YOU REPRESENTED
 4    YOURSELF; RIGHT?
 5              PROSPECTIVE JUROR:  YES.
 6              THE COURT:  OKAY.  ANYTHING FROM THAT
 7    EXPERIENCE THAT LEFT YOU WITH A, EITHER A BAD TASTE
 8    IN YOUR MOUTH OR A GOOD TASTE IN YOUR MOUTH ABOUT
 9    THE SYSTEM, ABOUT JUDGES, LAWYERS THAT WOULD AFFECT
10    YOUR ABILITY TO BE FAIR HERE?
11              PROSPECTIVE JUROR:  NOT THAT I KNOW OF.
12              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
13              WHAT ABOUT ROW 3?  ANYONE RAISE THEIR
14    HAND?  NO?
15              THE RECORD SHOULD REFLECT NO HANDS HAVE
16    BEEN RAISED.
17              WHAT ABOUT ROW 4, ROW 5?
18              OH, I'M SORRY.  MS. HOLLOWAY, DID YOU
19    HAVE YOUR HAND RAISED?
20              IF YOU COULD PASS THE MICROPHONE, PLEASE,
21    TO MS. HOLLOWAY.
22              PROSPECTIVE JUROR:  WORK-RELATED LAWSUIT
23    BACK IN 1986.
24              THE COURT:  AND WERE YOU THE PLAINTIFF OR
25    THE DEFENDANT?
```

```
1              PROSPECTIVE JUROR:  DEFENDANT.

2              THE COURT:  AND WHAT WAS THE CLAIM?

3              PROSPECTIVE JUROR:  AT THE TIME I WAS

4    WORKING FOR INTEL, AND SO ONE OF MY STAFF MEMBERS

5    BROUGHT A LAWSUIT AGAINST INTEL.  WE WENT AS FAR AS

6    A DEPOSITION AND THEN HE DROPPED THE CASE.

7              THE COURT:  OKAY.  WAS IT SOME TYPE OF

8    EMPLOYMENT CASE?

9              PROSPECTIVE JUROR:  YES, IT WAS.

10             THE COURT:  I SEE.  SO WERE YOU ACTUALLY

11   DEPOSED?

12             PROSPECTIVE JUROR:  I WAS THE MANAGER.

13             THE COURT:  I SEE.  BUT YOU WERE DEPOSED,

14   OR NOT?  DID THEY TAKE YOUR DEPOSITION?

15             PROSPECTIVE JUROR:  OH, ABSOLUTELY, YES.

16             THE COURT:  I SEE.  ALL RIGHT.  AND YOU

17   SAID THAT CASE RESOLVED HOW?  IT WAS --

18             PROSPECTIVE JUROR:  HE DROPPED THE CASE.

19             THE COURT:  HE DROPPED THE CASE.  OKAY.

20             ANYTHING FROM YOUR EXPERIENCE IN THAT

21   CASE THAT WOULD AFFECT YOUR ABILITY TO BE FAIR AND

22   IMPARTIAL HERE?

23             PROSPECTIVE JUROR:  NONE WHATSOEVER.

24             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25             ANYONE ON ROWS -- I KNOW MR. SINA, YOU
```

```
1     RAISED YOUR HAND.  GO AHEAD.

2                PROSPECTIVE JUROR:  YES.  BACK IN 1998, I

3     HAD A SURGERY.  I DIDN'T HAVE INSURANCE.  I WAS

4     PURSUED BY THE DOCTOR AND I WENT TO THE JUDGE AND

5     WE AGREED TO -- I AGREED TO PAY THE FEES IN

6     INSTALLMENTS.  THAT'S ALL I HAVE.

7                THE COURT:  WAS THAT IN SMALL CLAIMS

8     COURT?

9                PROSPECTIVE JUROR:  I'M SORRY.  AT THAT

10    TIME, MY ENGLISH WAS NOT VERY GOOD, SO --

11               THE COURT:  ALL RIGHT.  WAS THAT HERE IN

12    SANTA CLARA COUNTY?

13               PROSPECTIVE JUROR:  NO, NO.  IT WAS IN

14    INDIANA.

15               THE COURT:  I SEE.  AND IT WAS -- WERE

16    YOU REPRESENTING YOURSELF?

17               PROSPECTIVE JUROR:  I BELIEVE SO.

18               THE COURT:  OKAY.  ANYTHING FROM THAT

19    EXPERIENCE THAT WOULD IMPACT YOUR ABILITY TO BE

20    FAIR AND IMPARTIAL IN ANY WAY?

21               PROSPECTIVE JUROR:  I HOPE NOT.

22               THE COURT:  NO?

23               PROSPECTIVE JUROR:  NO.

24               THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

25               ANYONE ON ROW 5?  OR ROW 6?  I'M SORRY.
```

```
1              OKAY.  THE RECORD SHOULD REFLECT NO HANDS
2     HAVE BEEN RAISED.
3              OKAY.  NOW, RAISE YOUR HAND, PLEASE, IF
4     YOU HAVE EVER APPLIED FOR A PATENT, A COPYRIGHT, A
5     TRADEMARK OR TRADE DRESS REGISTRATION.
6              ALL RIGHT.  SO WE HAVE THREE HANDS
7     RAISED.  IF YOU WOULD -- OH, FOUR.  ALL RIGHT.
8              WELL, SINCE THE MICROPHONE IS DOWN THERE,
9     WHY DON'T YOU GO AHEAD PLEASE AND GIVE THAT TO
10    MR. CHIU.
11             PROSPECTIVE JUROR:  I WORK FOR -- I WORK
12    FOR THE NATIONAL SEMICONDUCTOR BEFORE AND THEY WERE
13    ACQUIRED BY TEXAS INSTRUMENTS, AND I FILED PATENTS
14    FOR THE COMPANY.
15             THE COURT:  OKAY.  AND WERE YOU AN
16    INVENTOR ON THAT PATENT?
17             PROSPECTIVE JUROR:  YES.
18             THE COURT:  WAS A PATENT ISSUED?
19             PROSPECTIVE JUROR:  YES.
20             THE COURT:  AND WITHOUT SPECIFICS, WHAT
21    WAS THE GENERAL TECHNOLOGY?
22             PROSPECTIVE JUROR:  IT IS THE INTEGRATED
23    CIRCUIT RELATED.
24             THE COURT:  INTEGRATED CIRCUIT DESIGN?
25             PROSPECTIVE JUROR:  YES.
```

```
1              THE COURT:  OKAY.  HOW LONG AGO WAS THAT?

2              PROSPECTIVE JUROR:  I THINK FROM 3 TO 15

3      YEARS.  I HAVE SEVERAL PATENTS.

4              THE COURT:  YOU HAVE SEVERAL.  AND WERE

5      THEY ALL WHILE YOU WERE EMPLOYED AT NATIONAL

6      SEMICONDUCTOR?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  AND ARE THEY ALL RELATED TO

9      INTEGRATED CIRCUIT DESIGN?

10             PROSPECTIVE JUROR:  YES.

11             THE COURT:  ALL RIGHT.  AND -- OKAY.  ALL

12     RIGHT.  AND THEY WERE ROUGHLY 15 YEARS AGO?

13             PROSPECTIVE JUROR:  YES, FROM 3 TO 15

14     YEARS.

15             THE COURT:  3 TO 15 YEARS.  OKAY.  SO

16     VERY RECENTLY.

17             DO YOU HAVE PATENT APPLICATIONS PENDING

18     NOW?

19             PROSPECTIVE JUROR:  YES.

20             THE COURT:  YOU DO.  OKAY.  ALL WITHIN

21     INTEGRATED CIRCUIT DESIGN --

22             PROSPECTIVE JUROR:  YES.

23             THE COURT:  -- FIELD?

24             PROSPECTIVE JUROR:  RIGHT.

25             THE COURT:  OKAY.  ALL RIGHT.  WOULD THAT
```

```
 1    IN ANY WAY -- YOU'LL BE INSTRUCTED ON WHAT THE LAW
 2    IS AND WOULD YOU BE ABLE TO FOLLOW THE INSTRUCTIONS
 3    I GIVE YOU ON THE LAW, EVEN IF IT MAY NOT
 4    COMPLETELY CORRESPOND TO WHAT YOU MAY KNOW ABOUT
 5    THE PATENT SYSTEM OR THE INTELLECTUAL PROPERTY
 6    LAWS?
 7              PROSPECTIVE JUROR:  YES, I FOLLOW YOUR
 8    INSTRUCTIONS.
 9              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.
10              LET'S GO, I THINK, TO MS. HALIM,
11    MR. OKAMOTO, AND MR. HOGAN.  YOU RAISED YOUR HANDS.
12              OKAY.  LET'S PLEASE START WITH MS. HALIM.
13              PROSPECTIVE JUROR:  OKAY.  I HAVE TWO
14    PATENTS.  ONE IS ISSUED WHEN I WAS AT WEITEK, ALSO
15    I.C. DESIGN.
16              ANOTHER ONE WAS AT SILICON GRAPHICS.
17              THE COURT:  AND IT WAS ALSO ON I.C.
18    DESIGN?
19              PROSPECTIVE JUROR:  YES, RIGHT.
20              THE COURT:  OKAY.  WERE PATENTS ISSUED?
21              PROSPECTIVE JUROR:  YES.
22              THE COURT:  AND YOU WERE THE INVENTOR ON
23    BOTH?
24              PROSPECTIVE JUROR:  YES.
25              THE COURT:  OKAY.  ALL RIGHT.  ANYTHING
```

1   ABOUT PREVIOUSLY?  WHAT WERE HIS EMPLOYERS?

2              PROSPECTIVE JUROR:  CISCO SYSTEMS.

3              THE COURT:  I SEE.  OKAY.  AND ARE ANY OF

4   YOUR CHILDREN CURRENTLY WORKING?  ARE THEY

5   STUDENTS?

6              PROSPECTIVE JUROR:  THEY ARE STUDENT.

7   ONE IS WORKING ON INTERNSHIP AT FACEBOOK.

8              THE COURT:  OKAY.

9              PROSPECTIVE JUROR:  YEAH.

10             THE COURT:  AND THE OTHERS ARE STUDENTS?

11             PROSPECTIVE JUROR:  YES.

12             THE COURT:  OKAY.  THANK YOU.

13             PROSPECTIVE JUROR:  THANK YOU.

14             THE COURT:  WOULD YOU PLEASE PASS THE

15   MICROPHONE TO MR. OKAMOTO PLEASE?

16             PROSPECTIVE JUROR:  MY NAME IS STEVE

17   OKAMOTO.  I WAS BORN IN LAGUNA BEACH, CALIFORNIA.

18   I CURRENTLY RESIDE IN SAN JOSE.

19             I HAVE A MASTER'S DEGREE IN INDUSTRIAL

20   PSYCHOLOGY FROM CAL STATE LONG BEACH.  UNDERGRAD AT

21   U.C. IRVINE IN PSYCHOLOGY.

22             CURRENT JOB TITLE, I'M A DESIGNER FOR

23   GOOGLE.  RESPONSIBILITIES INCLUDE DESIGNING

24   INTERFACES -- RESPONSIBILITIES INCLUDE DESIGNING

25   THE USER INTERFACE, RUNNING TESTS ON THOSE, AND

```
 1      ITERATIONS, WORKING WITH ENGINEERING TO GET THOSE
 2      CODED.
 3              PREVIOUS JOBS, I'VE BEEN AT EBAY, I'VE
 4      BEEN AT IBM, I'VE BEEN AT CADENCE DESIGN SYSTEMS
 5      AND PROPEL, WHICH WAS A START-UP.
 6              FAVORITE HOBBY, I KIND OF LIKE GADGETS,
 7      ELECTRONICS.
 8              WE HAVE TWO KIDS, SO I LIKE TO DO A LOT
 9      OF SPORTS WITH THE KIDS, SO SPORTS.
10              I'M CURRENTLY MARRIED.  MY WIFE WORKS FOR
11      THE COUNTY AS A COURT OFFICER.  SHE'S BEEN DOING
12      THAT FOR SEVERAL YEARS NOW.
13              PRIOR TO THAT, THAT WOULD BE IN '98 SHE
14      BECAME A COURT OFFICER, OR SHE WORKED FOR THE
15      COUNTY.  PRIOR TO THAT, SHE WAS DOING CANCER
16      RESEARCH.
17              MY CHILDREN, I HAVE A SON WHO'S 8 AND MY
18      DAUGHTER IS 11, AND THEY'RE BOTH GOING TO SCHOOL.
19              AND I HAVE HAD NO PRIOR JURY EXPERIENCE.
20              THE COURT:  THANK YOU.  CAN YOU TELL ME A
21      LITTLE BIT MORE WHAT YOUR WIFE DOES FOR THE COURT?
22              PROSPECTIVE JUROR:  SO SHE WAS A
23      PROBATION OFFICER.
24              THE COURT:  UM-HUM.
25              PROSPECTIVE JUROR:  AND NOW SHE'S A COURT
```

1    OFFICER, SO I GUESS SHE JUST REPRESENTS THE COUNTY

2    IN COURT.

3              THE COURT:  AS A PROBATION OFFICER?

4              PROSPECTIVE JUROR:  YEAH.  WELL, I GUESS

5    SHE'S A COURT OFFICER, BUT SHE REPRESENTS THE

6    PROBATION DEPARTMENT.

7              THE COURT:  RIGHT.  OKAY.  AND THAT'S FOR

8    SANTA CLARA COUNTY?

9              PROSPECTIVE JUROR:  YES.

10             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11             MR. HOGAN?

12             PROSPECTIVE JUROR:  MY NAME -- EXCUSE ME,

13   MY NAME IS VELVIN HOGAN.  I WAS BORN IN GREENVILLE,

14   TEXAS.  I RESIDE IN SAN JOSE, CALIFORNIA.

15             I HAVE AN A.A. DEGREE FROM SAN JOSE CITY

16   COLLEGE AND I ATTENDED SAN JOSE STATE IN THE

17   ELECTRICAL ENGINEERING DEPARTMENT, THOUGH I DID NOT

18   GRADUATE.

19             I HAVE BEEN IN -- I WAS IN THE HARD DRIVE

20   INDUSTRY FOR 35-PLUS YEARS AS AN ELECTRICAL

21   ENGINEER.  I WORKED FOR COMPANIES LIKE MEMOREX,

22   DIGITAL EQUIPMENT CORPORATION TO NAME A FEW, SEVEN

23   ALTOGETHER.

24             AND MY HOBBIES ARE WHAT I WAS DOING IN

25   THE REALM OF VIDEO COMPRESSION.

```
 1                    AND I AM MARRIED.

 2                    AND MY -- I HAVE TWO CHILDREN, A SON 43

 3      AND A DAUGHTER 42.

 4                    MY DAUGHTER WORKS FOR THE COUNTY AND MY

 5      SON WORKS IN PRIVATE INDUSTRY.

 6                    AND I HAVE BEEN A JUROR IN THE PAST ON

 7      THREE DIFFERENT OCCASIONS, BUT THEY WERE ALL THREE

 8      CIVIL CASES.

 9                    THE COURT:  CAN YOU TELL US -- LET ME

10      BACK UP A SECOND.  WHAT ABOUT YOUR SPOUSE?  WHAT

11      DOES SHE DO OR DID SHE WORK OUTSIDE THE HOUSE?

12                    PROSPECTIVE JUROR:  SHE'S RETIRED

13      CURRENTLY, BUT BEFORE SHE RETIRED, SHE WORKED FOR

14      THE SAN JOSE UNIFIED SCHOOL DISTRICT.  SHE WAS A

15      SPECIAL EDUCATION -- NOT A CREDENTIALED TEACHER,

16      BUT A CERTIFIED ASSISTANT.

17                    THE COURT:  ALL RIGHT.  AND CAN YOU TELL

18      US THE SEVEN COMPANIES YOU WORKED FOR?  DIGITAL

19      EQUIPMENT, MEMOREX?

20                    PROSPECTIVE JUROR:  OKAY.  TO BEGIN WITH,

21      I WORKED FOR A COMPANY THAT NO LONGER EXISTS CALLED

22      CAYLIS MEMORIES; THEN MEMOREX CORPORATION; THEN

23      STORAGE TECHNOLOGY CORPORATION IN COLORADO; DIGITAL

24      EQUIPMENT CORPORATION IN COLORADO SPRINGS; I WORKED

25      FOR SEAGATE TECHNOLOGY; AND THE LAST COMPANY WAS --
```

1    AND THEN MICROPOLIS CORPORATION, WHICH NO LONGER

2    EXISTS; AND QUANTUM.

3             THE COURT:  ALL RIGHT.  AND YOUR DAUGHTER

4    THAT WORKS FOR THE COUNTY, IS THAT IN ANY WAY FOR

5    THE COURT SYSTEM?

6             PROSPECTIVE JUROR:  NO, NO.  SHE IS A --

7    A DIRECTOR'S ASSISTANT.  SHE WAS DOING WORK PRIOR

8    TO THE CENSUS FOR THE CENSUS, PUTTING EVERYTHING

9    TOGETHER TO GET THAT GOING.

10            AND CURRENTLY I'M NOT 100 PERCENT SURE

11   WHAT SHE'S DOING.  SHE JUST RECENTLY TRANSFERRED TO

12   A NEW POSITION.

13            THE COURT:  OKAY.  AND YOUR SON WHO'S IN

14   PRIVATE INDUSTRY, IS THAT IN ANY WAY RELATED CELL

15   PHONES, COMPUTERS, TABLETS, NOTHING IN THE TECH

16   INDUSTRY?

17            PROSPECTIVE JUROR:  NO.  IT'S IN OPTICS,

18   BASICALLY, FIBER OPTICS.

19            THE COURT:  ALL RIGHT.  THANK YOU.

20            MR. BELLA?

21            PROSPECTIVE JUROR:  MY NAME IS TERRY

22   BELLA.  MY BIRTH PLACE IS PALO ALTO AND I'M A

23   RESIDENT OF MOUNTAIN VIEW.

24            MY EDUCATION BACKGROUND, A.A. DEGREE IN

25   AUTOMATIC TECHNOLOGY AND AN A.A. AGREE IN

1    ELECTRONICS, TECHNICIAN, COLLEGE OF SAN MATEO.

2            PAST JOBS, I WAS PART OWNER IN

3    COMMUNICATIONS RESEARCH FOR MANY YEARS, A TWO-WAY

4    RADIO COMPANY.  AND I CURRENTLY WORK AT STANFORD

5    POLICE DEPARTMENT AS LOGISTICS.

6            HOBBIES, I LIKE TO DO REMODELS ON MY

7    HOUSE AND CAMPING AND WORK ON CARS AS HOBBIES.

8            I'M CURRENTLY MARRIED, 41 YEARS NEXT

9    WEEK.

10           THE COURT:  CONGRATULATIONS.

11           PROSPECTIVE JUROR:  THANK YOU.

12           AND MY WIFE WORKS CURRENTLY WITH TRADER

13   JOE'S IN PALO ALTO, AND DURING THE SCHOOL TIME

14   SHE'S AN ART TEACHER AT SPRINGER SCHOOL IN

15   LOS ALTOS.

16           I HAVE A SON WHO'S 25.  HE'S MARRIED AND

17   THEY JUST MOVED BACK FROM MARYLAND AND THEY'RE

18   LIVING WITH US NOW UNTIL THEY CAN FIND A JOB, BOTH

19   OF THEM CAN FIND A JOB.

20           PAST JURY, I REMEMBER TWO JURY SERVICES I

21   DID.  BOTH WERE GUILTY.

22           ONE HAD TO DO WITH DRUGS AND I DON'T

23   REMEMBER WHAT THE OTHER ONE WAS.

24           THE COURT:  ALL RIGHT.  BUT THEY WERE

25   BOTH CRIMINAL?

```
1                    PROSPECTIVE JUROR:  YES.

2                    THE COURT:  AND WERE THEY IN THIS COUNTY?

3                    PROSPECTIVE JUROR:  YES.

4                    THE COURT:  AND WERE THEY STATE COURT OR

5        FEDERAL COURT, IF YOU REMEMBER?

6                    PROSPECTIVE JUROR:  I DON'T KNOW.

7                    THE COURT:  THAT'S FINE.  HOW LONG AGO

8        WERE THESE?

9                    PROSPECTIVE JUROR:  OH, JEEZ.  PROBABLY

10       20-SOME YEARS AGO.

11                   THE COURT:  20-SOME ODD YEARS AGO.  OKAY.

12                   AND YOU UNDERSTAND THAT THE STANDARD IN A

13       CRIMINAL CASE IS BEYOND A REASONABLE DOUBT, WHICH

14       IS HIGHER THAN THE STANDARDS THAT WOULD APPLY IN

15       THIS CASE?

16                   PROSPECTIVE JUROR:  YES.

17                   THE COURT:  ALL RIGHT.  I FORGOT TO ASK

18       MR. HOGAN, THE THREE CIVIL LAWSUITS FOR WHICH YOU

19       WERE A JUROR, DO YOU REMEMBER WHAT THE CAUSES OF

20       ACTION WERE?

21                   PROSPECTIVE JUROR:  ONE OF THEM WAS AN

22       ACCIDENT THAT OCCURRED THAT WAS BACK IN 1973 AND

23       WE, THE JURY, DID NOT RULE IN FAVOR OF THE

24       DEFENDANT IN THAT CASE.

25                   THE COURT:  OH.  AND I'M NOT ASKING
```

```
1    ANYONE TO REVEAL THE VERDICT.  I JUST WANT TO KNOW

2    WHETHER YOU REACHED A VERDICT.

3              PERSONAL INJURY, CAR ACCIDENT?

4              PROSPECTIVE JUROR:  ALL THREE WE REACHED

5    A VERDICT.  THAT ONE WAS PERSONAL INJURY.

6              THE COURT:  OKAY.

7              PROSPECTIVE JUROR:  THE NEXT ONE WAS

8    SPOUSAL ABUSE, BUT NOT CRIMINAL, SO IT WAS DONE IN

9    SUPERIOR COURT.

10              THE COURT:  OKAY.

11              PROSPECTIVE JUROR:  THE OTHER ONE WAS A

12    LITTLE BIT OLDER AND RIGHT NOW I CAN'T REMEMBER THE

13    DETAILS.  I REMEMBER WE REACHED A VERDICT.

14              THE COURT:  DO YOU REMEMBER ROUGHLY, WHAT

15    WAS THE ONE TWO DECADES AGO?

16              PROSPECTIVE JUROR:  WELL, ONE WAS IN '73;

17    ONE WAS IN THE MID '80S, '87, I THINK IT WAS; AND

18    THE OTHER ONE THAT WAS MORE RECENT WAS 1990.

19              THE COURT:  SO YOU'RE DUE FOR ANOTHER

20    ONE.

21              PROSPECTIVE JUROR:  YEAH.

22              THE COURT:  OKAY.  ALL RIGHT.  OKAY.

23    THANK YOU.

24              LET'S GO TO MS. ROUGIERI.

25              PROSPECTIVE JUROR:  MY NAME IS LUZVIMINDA
```

```
1    ROUGIERI.  MY PLACE OF BIRTH IS PHILIPPINES, BUT I
2    GREW UP IN THE UNITED STATES.  CITY OF RESIDENCE,
3    EVERGREEN IN SAN JOSE.
4              EDUCATIONAL BACKGROUND, I HAVE A
5    BACHELOR'S DEGREE IN FOREIGN LANGUAGE.
6              PAST AND CURRENT JOB, I HAVE NOT WORKED
7    FOR 23 YEARS.  I'VE BEEN RAISING OUR SON.
8              I WORKED AT NATIONAL SEMICONDUCTOR AND
9    THAT WAS WHEN WE WERE LIVING IN -- I MOVED TO
10   MASSACHUSETTS AND CHANGED CAREER AND GET INTO
11   RETAIL.
12             FAVORITE HOBBY WOULD BE PAINTING,
13   COOKING, AND GARDENING.
14             I AM CURRENTLY MARRIED.  IT'LL BE 25
15   YEARS BY NEXT MONTH.
16             THE COURT:  CONGRATULATIONS.
17             PROSPECTIVE JUROR:  CURRENT JOB, MY
18   HUSBAND, HE WORKED FOR APPLIED MATERIALS.  HE
19   WORKED FOR K.L.A.  HE WORKED FOR HARRIS, ETON, AND
20   NOW HE WORKS FOR A MEDICAL START-UP COMPANY WORKING
21   WITH -- TEAM UP WITH LAWRENCE LIVERMORE.
22             WE HAVE ONE CHILD WHO IS NOW IN COLLEGE,
23   A 21 YEAR OLD.
24             PRIOR JURY SERVICE, THIS IS THE FIRST
25   TIME, SO I'M OVERWHELMED AND A JURY, IT'S -- THIS
```

1    IS THE FIRST TIME.

2              THE COURT:  OKAY.  THANK YOU.

3              LET ME ASK, WITH YOUR RETAIL NOW, IS THAT

4    IN ANY WAY RELATED TO PHONES, TABLETS, COMPUTERS?

5              PROSPECTIVE JUROR:  NO, IT HAD NOTHING TO

6    DO WITH THAT.

7              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

8              MS. FLAVIN?

9              PROSPECTIVE JUROR:  MY NAME IS NICOLE

10   FLAVIN.

11             THE COURT:  FLAVIN, EXCUSE ME.

12             PROSPECTIVE JUROR:  IT'S ALL RIGHT.

13   PLACE OF BIRTH, LOS GATOS, CALIFORNIA.  I CURRENTLY

14   LIVE IN SUNNYVALE.

15             EDUCATIONAL BACKGROUND, SOME COLLEGE.

16             I CURRENTLY WORK AT UPS.  I'M A

17   SUPERVISOR.  I'M RESPONSIBLE FOR PACKAGE PLANNING

18   AND DISPATCH.

19             I'M NOT MARRIED.  I DON'T HAVE ANY

20   CHILDREN.  AND I'VE NEVER SERVED ON A JURY BEFORE.

21             THE COURT:  OKAY.  THANK YOU.

22             MS. LEROSE, IF YOU WOULD PLEASE PASS THE

23   MICROPHONE OVER.  THANK YOU.

24             PROSPECTIVE JUROR:  MY NAME IS LYNN

25   LEROSE.  PLACE OF BIRTH IS EASTON, PENNSYLVANIA.  I

```
1    RESIDE IN RIO DEL MAR IN SANTA CRUZ COUNTY.

2              I HAVE MY MASTER'S IN EARLY CHILDHOOD

3    EDUCATION AND SPEECH PATHOLOGY -- MY MASTER'S IS

4    NOT IN SPEECH PATHOLOGY.  IT'S A B.S. IN SPEECH

5    PATHOLOGY.

6              I'VE OWNED MY OWN BUSINESS, A NATIONALLY

7    ACCREDITED PRESCHOOL FOR 20 YEARS, CLOSED, WHICH I

8    HAVE ALREADY DISCLOSED, IN 2005.

9              AND PREVIOUS TO THAT, THEY WERE JUST

10   PART-TIME JOBS TO GET ME THROUGH SCHOOL TO GET TO

11   WHERE I WAS GOING, AND I CAN'T REMEMBER THOSE

12   LITTLE JOBS, BUT I HAVE BEEN GRATEFUL FOR THEM.

13             FAVORITE HOBBIES, I LOVE READING AND

14   GARDENING AND PLANTING MY -- THE RECREATIONAL

15   ACTIVITIES, PLANTING MY FEET ON ANY BEACH THAT I

16   CAN WALK ON FOR AT LEAST A COUPLE OF HOURS.

17             I AM MARRIED.  MY PARTNER'S CURRENT

18   OCCUPATION IS IN INFORMATION TECHNOLOGY WITH

19   SANTA CLARA MEDICAL.

20             MY CHILDREN, I HAVE TWO, A 29 YEAR OLD

21   AND A 34 YEAR OLD.  ONE IS IN RETAIL, COMPUTERS,

22   AND MY OTHER ONE OWNS HIS OWN CONSTRUCTION

23   BUSINESS.

24             AND NO, NO PRIOR SERVICE.

25             THE COURT:  ALL RIGHT.  THANK YOU.
```

1

2

3

4                          CERTIFICATE OF REPORTER

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20                        /S/

21                        _____
                          LEE-ANNE SHORTRIDGE, CSR, CRR
22                        CERTIFICATE NUMBER 9595

23

24                        DATED:  JULY 30, 2012

25