# Estrich Declaration

# Exhibit 4

1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

    APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
6   CORPORATION,                 )
                                 )  SAN JOSE, CALIFORNIA
7                 PLAINTIFF,     )
                                 )  AUGUST 6, 2012
8            VS.                 )
                                 )  VOLUME 4
9   SAMSUNG ELECTRONICS CO.,     )
    LTD., A KOREAN BUSINESS      )  PAGES 931-1296
10  ENTITY; SAMSUNG              )
    ELECTRONICS AMERICA,         )
11  INC., A NEW YORK             )
    CORPORATION; SAMSUNG         )
12  TELECOMMUNICATIONS           )
    AMERICA, LLC, A DELAWARE     )
13  LIMITED LIABILITY            )
    COMPANY,                     )
14                               )
                  DEFENDANTS.    )
15  _____

16           TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24                          IRENE RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF        MORRISON & FOERSTER
      APPLE:                   BY:  HAROLD J. MCELHINNY
 3                                  MICHAEL A. JACOBS
                                    RACHEL KREVANS
 4                             425 MARKET STREET
                               SAN FRANCISCO, CALIFORNIA  94105
 5

 6    FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
      APPLE:               HALE AND DORR
 7                             BY:  WILLIAM F. LEE
                               60 STATE STREET
 8                             BOSTON, MASSACHUSETTS  02109

 9                             BY:  MARK D. SELWYN
                               950 PAGE MILL ROAD
10                             PALO ALTO, CALIFORNIA  94304

11    FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                           OLIVER & HEDGES
12                             BY:  CHARLES K. VERHOEVEN
                                    ALBERT P. BEDECARRE
13                             50 CALIFORNIA STREET, 22ND FLOOR
                               SAN FRANCISCO, CALIFORNIA  94111
14
                               BY:  VICTORIA F. MAROULIS
15                                  KEVIN P.B. JOHNSON
                               555 TWIN DOLPHIN DRIVE
16                             SUITE 560
                               REDWOOD SHORES, CALIFORNIA  94065
17
                               BY:  MICHAEL T. ZELLER
18                                  WILLIAM C. PRICE
                                    JOHN B. QUINN
19                             865 SOUTH FIGUEROA STREET
                               10TH FLOOR
20                             LOS ANGELES, CALIFORNIA  90017

21    FOR INTERVENOR       RAM, OLSON,
      REUTERS:             CEREGHINO & KOPCZYNSKI
22                             BY:  KARL OLSON
                               555 MONTGOMERY STREET, SUITE 820
23                             SAN FRANCISCO, CALIFORNIA  94111

24

25
```

1

2

3                        INDEX OF WITNESSES

4     PLAINTIFF'S

5

6     **JUSTIN DENISON**
           AS-ON DIRECT EXAM BY MR. QUINN      P. 946
           AS-ON RECROSS-EXAM BY MR. LEE       P. 977
7          AS-ON REDIRECT EXAM BY MR. QUINN    P. 997

8

9     **PETER BRESSLER**
           DIRECT EXAM BY MS. KREVANS          P. 1002
           CROSS-EXAM BY MR. VERHOEVEN         P. 1098
10         REDIRECT EXAM BY MS. KREVANS        P. 1236

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    WHOLE POINT OF THE PROCESS WAS TO EXCHANGE
 2    OBJECTIONS SO THAT THIS DOESN'T HAPPEN, AND THEY
 3    DID NOT OBJECT.  WE STRONGLY DISPUTE WHAT THEY'RE
 4    SAYING ABOUT THESE ORDERS AND --
 5              THE COURT:  LET ME JUST -- THE ONLY ONES
 6    THAT I HAD AN ISSUE WITH IS THE LG KE850.
 7              NOW, IF THIS WAS IN YOUR INVALIDITY
 8    CONTENTION INTERROGATORY RESPONSE, THEN LET ME SEE
 9    THAT.
10              MR. VERHOEVEN:  I'M SORRY.  WHAT WAS THE
11    NUMBER, YOUR HONOR?
12              THE COURT:  THE LG KE850, THE TOUCHABLE
13    CHOCOLATE.  IT'S IN THE BACK OF, I THINK, VOLUME 1.
14              MS. KREVANS:  AND WHILE HE'S LOOKING THAT
15    UP, YOUR HONOR, I HAVE IN MY HAND THE WRITTEN
16    OBJECTIONS THAT WE SERVED UPON THEM AND FILED WITH
17    THE COURT THAT INCLUDED THE EXACT OBJECTIONS --
18              THE COURT:  IS THIS DOCUMENT NUMBER 1571?
19              MS. KREVANS:  IT IS 1571, YOUR HONOR, AND
20    THIS IS ON PAGE -- NUMBERED PAGE 4 AT THE TOP OF
21    THE PAGE.
22              I THINK MR. VERHOEVEN MAY SIMPLY HAVE
23    OVERLOOKED THIS, BUT WE HAVE OBJECTED.  IT'S AT THE
24    TOP OF THE COLUMN WHERE --
25              THE COURT:  THAT'S THE ONE THAT YOU'RE --
```

```
1    THAT'S THE ONE THAT YOU'RE --

2              MR. VERHOEVEN:  YOUR HONOR HAS ALREADY

3    RULED ON THEIR OBJECTION TO THE LG PRADA IN

4    CONNECTION WITH MR. DENISON'S TESTIMONY AND YOU

5    OVERRULED THE OBJECTION.

6              THE COURT:  I DISAGREE WITH THAT.

7              MS. KREVANS:  OKAY.  THIS EXHIBIT IS THE

8    LG KE850.

9              THE COURT:  RIGHT.  I DISAGREE WITH THAT.

10   I'M GOING TO SUSTAIN THAT OBJECTION.  OKAY?  I'LL

11   GET BACK TO YOU ON THE F700.

12             THE LG KE850, THE OBJECTION IS SUSTAINED.

13             AND --

14             MR. VERHOEVEN:  YOUR HONOR, JUST SO I

15   CAN -- YOU HAVE AN ORDER ON APPLE'S MOTION IN

16   LIMINE NUMBER 3 ON THIS ISSUE, AND I CAN HAND THIS

17   UP IF YOU'D LIKE, YOU GRANTED THE MOTION -- APPLE'S

18   MOTION ON MOTION IN LIMINE NUMBER 3 IN PART AND

19   DENIED IT IN OTHER RESPECTS, AND IT SAYS, QUOTE,

20   "THE MOTION IS DENIED IN ALL OTHER RESPECTS.  IN

21   OTHER WORDS, THE LG KE 750 MAY BE ADMISSIBLE AS A

22   PRIOR ART REFERENCE UNDER 35 U.S.C. SECTION 102."

23             THE COURT:  THIS IS THE LG KE 850.  IT'S

24   A DIFFERENT PRODUCT.

25             MS. KREVANS:  AND, YOUR HONOR, THE
```

```
 1    SUBJECT OF THE TESTIMONY ARE --

 2              THE COURT:  THIS IS A DIFFERENT PRODUCT.

 3    THIS IS TOUCHABLE CHOCOLATE.  KE 850.

 4              OKAY.  WELL, I WILL TAKE A LOOK AT THE

 5    F700 ISSUE THAT YOU'VE RAISED AND --

 6              MR. VERHOEVEN:  YOUR HONOR, I THINK THAT

 7    IS ACTUALLY THE SAME PRODUCT.  ON THE BREAK, WE CAN

 8    VERIFY THAT.  THE ARTICLE USES A SLIGHTLY DIFFERENT

 9    TERMINOLOGY FOR IT.

10              THE COURT:  ALL RIGHT.  AND I'LL TAKE A

11    LOOK AT THIS LAST ONE.  OKAY.

12              ALL RIGHT.  THANK YOU.

13              MR. MCELHINNY:  DO YOU STILL WANT US BACK

14    IN TEN MINUTES, YOUR HONOR.

15              THE COURT:  NO.  UNFORTUNATELY, LET'S

16    TAKE A 15-MINUTE BREAK.  THANK YOU.

17              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

18              (WHEREUPON, A RECESS WAS TAKEN.)

19              (WHEREUPON, THE FOLLOWING PROCEEDINGS

20    WERE HELD OUT OF THE PRESENCE OF THE JURY:)

21              THE COURT:  ALL RIGHT.  WELCOME BACK.  I

22    APOLOGIZE FOR THE DELAY.

23              THE F700 IS -- OH, PLEASE TAKE A SEAT --

24    IT'S NOT ADMISSIBLE FOR OBVIOUSNESS OR INVALIDITY.

25    JUDGE GREWAL DID STRIKE THAT AND I DID AFFIRM HIS
```

1   ORDER, BUT IT WILL BE ADMISSIBLE FOR ALTERNATIVE

2   DESIGN.

3             I'M GOING TO ASK MR. VERHOEVEN PLEASE NOT

4   TO CROSS THE LINE INTO INVALIDITY AND OBVIOUSNESS

5   SINCE THAT'S BEEN EXCLUDED.

6             THE DEMONSTRATIVES, I'M GOING TO RESERVE

7   AND GIVE YOU A RULING ON THAT LATER, SO IF YOU

8   COULD MAKE THAT TOWARDS THE END OF YOUR CROSS, I'D

9   APPRECIATE IT.

10            NOW, WITH REGARD TO THE LG CHOCOLATE,

11  IT'S NOT PRIOR ART, BUT IT CAN BE USED FOR OTHER

12  PURPOSES.  WE CAN HAVE A LIMITING INSTRUCTION IF

13  NECESSARY.

14            THE LG PRADA, THAT WAS RAISED IN APPLE'S

15  MOTION IN LIMINE NUMBER 3, AND THERE IS A FACTUAL

16  DISPUTE AS TO WHETHER IT WAS, IN FACT, SOLD IN THE

17  U.S. OR NOT AND WHETHER, IN FACT, IT IS OR IS NOT

18  PRIOR ART.  SO SAMSUNG CAN USE THAT.

19            MS. KREVANS:  YOUR HONOR, WITH RESPECT TO

20  THE SPECIFIC DOCUMENT THAT RAISED THIS ISSUE, THIS

21  DOCUMENT HAS NEVER BEEN PRODUCED OR DISCLOSED

22  BEFORE, SO INDEPENDENT OF WHETHER THEY CAN TALK

23  ABOUT THOSE DEVICES, WE DON'T THINK THEY CAN USE

24  THIS DOCUMENT BECAUSE --

25            THE COURT:  OKAY.  WELL, THEN, LET ME

1    HEAR FROM SAMSUNG.  GIVE ME THE DOCUMENT PRODUCTION

2    NUMBER.

3              I DON'T SEE THAT THIS IS BATES LABELED AT

4    ALL.

5              MR. VERHOEVEN:  YES, YOUR HONOR.  THIS

6    IS -- THIS IS SIMPLY POTENTIALLY GOING TO BE USED

7    FOR IMPEACHMENT, OR TO REFRESH THE WITNESSES

8    RECOLLECTION.

9              YOUR HONOR HAS DIRECTED US THAT FOR ANY

10   POTENTIAL IMPEACHMENT EXHIBITS, WE NEEDED TO

11   EXCHANGE THEM WITH THE OTHER SIDE.

12             SO THIS KIND OF FALLS UNDER THAT.

13             THE COURT:  ALL RIGHT.  THEN IT'S

14   EXCLUDED.  ALL RIGHT.  OKAY.  LET'S GO FORWARD

15   THEN.  OKAY.  THANK YOU.

16             (WHEREUPON, THE FOLLOWING PROCEEDINGS

17   WERE HELD IN THE PRESENCE OF THE JURY:)

18             THE COURT:  I APOLOGIZE FOR THE DELAY.

19             IT'S NOW 11:19.  GO AHEAD, PLEASE.

20   BY MS. KREVANS:

21   Q   MR. BRESSLER, I'D LIKE YOU TO TURN TO EXHIBIT

22   JX 1040 IN YOUR BINDER, YOU SHOULD FIND IT

23   SOMEWHERE NEAR THE BACK.

24             FOR THE RECORD, 1040 IS ALREADY IN

25   EVIDENCE.

1045

```
 1              WHAT IS JX 1040, MR. BRESSLER?

 2     A    THIS IS THE '889 PATENT.

 3     Q    AND COULD YOU TURN TO THE FIRST PRINTED PAGE,

 4     WHICH IS SHOWING ON THE SCREEN, AND TELL US, GOING

 5     TO THE SECTION HEADED CLAIM, WHAT IS CLAIMED BY

 6     APPLE'S D'889 DESIGN PATENT?

 7     A    WHAT IS CLAIMED IS "AN ORNAMENTAL DESIGN FOR

 8     AN ELECTRONIC DEVICE, SUBSTANTIALLY AS SHOWN AND

 9     DESCRIBED," AND THE SUBSEQUENT DESCRIPTION.

10     Q    OKAY.  AND HOW MANY FIGURES DOES THE '889

11     PATENT HAVE THAT SHOW AND DESCRIBE WHAT IS CLAIMED?

12     A    THERE ARE, IN FACT, NINE FIGURES IN THIS

13     PATENT.

14     Q    TELL US ABOUT THE NINE FIGURES.

15     A    THE FIRST, AS -- THE FIRST EIGHT ARE REALLY

16     THE NORMAL FIGURES THAT YOU WOULD EXPECT TO SEE IN

17     A DESIGN PATENT.

18              THE NINTH FIGURE IS EXPLAINED AT THE

19     BOTTOM OF THE LIST ACTUALLY AS "AN EXEMPLARY

20     DIAGRAM OF THE USE OF THE ELECTRONIC DEVICE THEREOF

21     THE BROKEN LINES BEING SHOWN FOR ILLUSTRATIVE

22     PURPOSES ONLY AND FORM NO PART OF THE CLAIMED

23     DESIGN."

24     Q    OKAY.  COULD WE LOOK AT FIGURE 9, MR. LEE?

25              I TAKE IT, MR. BRESSLER, THAT THAT TEXT
```

1    YOU READ MEANS THAT APPLE WASN'T TRYING TO DISCLAIM

2    THE MAN SHOWING THIS PICTURE ACTUALLY HOLDING THE

3    DEVICE?

4    A    CORRECT.

5    Q    BUT THE DEVICE AND THE UTILITY IS WHAT'S

6    CLAIMED?

7    A    YES.

8    Q    OKAY.  LET'S LOOK AT YOUR SLIDE PDX 26.6.  IS

9    THIS THE FIRST -- IN FACT, THIS IS ALL OF THE

10   FIGURES OF THE '889 PATENT?

11   A    YES.  THIS IS A SLIDE INCLUDING ALL THE

12   FIGURES.

13   Q    OKAY.  USING THESE FIGURES OF THE '889 PATENT,

14   CAN YOU WALK THE JURY THROUGH THE DESIGN THAT IS

15   CLAIMED AND SHOWN IN THESE FIGURES?

16   A    YES.  THIS DESIGN INCLUDES AN ELECTRONIC

17   DEVICE THAT HAS A FLAT, TRANSPARENT, AS YOU CAN SEE

18   BY THE DIAGONAL LINES, AND SHINY, FLAT SURFACE THAT

19   GOES IN A RECTANGULAR FORM AS SHOWN IN THE DRAWING

20   FROM EDGE TO EDGE ACROSS THE FRONT OF THE DEVICE.

21        IT MEETS A THIN EDGE AT THE BORDER AND

22   YOU CAN SEE THROUGH THAT CLEAR MATERIAL A BORDER

23   THAT GOES AROUND THE DISPLAY THAT IS OF EQUAL WIDTH

24   ALL THE WAY AROUND.

25        AND THEN IF YOU LOOK -- I WAS LOOKING AT

1   BEEN PASSED OUT?  YES.

2            THE COURT:  ALL RIGHT.  WE'RE ALL SET.

3   IT'S 1:23.  PLEASE GO AHEAD.

4            MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

5                    **CROSS-EXAMINATION**

6   BY MR. VERHOEVEN:

7   Q    GOOD AFTERNOON, MR. BRESSLER.

8   A    GOOD AFTERNOON.

9   Q    GOOD TO SEE YOU AGAIN.

10  A    AND YOU.

11  Q    WE'RE ALL ON THE CLOCK HERE, SO I'M GOING TO

12  ASK YOU A PRELIMINARY QUESTION, AND THAT IS, AS I

13  GO THROUGH MY QUESTIONING, IF YOU CAN MAKE AN

14  EFFORT, IF MY QUESTION IS FAIRLY ANSWERABLE WITH A

15  YES OR A NO, I'D ASK YOU TO ANSWER IT IN THAT

16  MANNER.  OKAY?

17  A    YES.

18  Q    NOW, MR. BRESSLER, IN FORMING YOUR OPINIONS,

19  IT'S CORRECT THAT YOU DID NOT RELY ON ANY APPLE

20  CONSUMER SURVEYS THAT IDENTIFIED WHAT APPLE

21  CUSTOMERS CONSIDERED TO BE IMPORTANT WITH RESPECT

22  TO IPHONES; TRUE?

23  A    YES.

24  Q    YOU DON'T HAVE ANY FIRST-HAND KNOWLEDGE OF ANY

25  SURVEYS THAT APPLE HAS CONDUCTED WITH RESPECT TO

1    IPHONES; RIGHT?

2    A    I BELIEVE I HAVE SEEN A COUPLE, BUT I DON'T --

3    I HAVEN'T EXAMINED THEM.

4    Q    THE ANSWER IS YOU DON'T HAVE ANY FIRST-HAND

5    KNOWLEDGE OF ANY SURVEYS APPLE CONDUCTED WITH

6    RESPECT TO ITS IPHONES; TRUE?

7    A    NOT TRUE.

8    Q    OKAY.  NOW, YOU TESTIFIED FOR APPLE BEFORE IN

9    ANOTHER HEARING ON MAY 31ST, 2012.

10             DO YOU REMEMBER THAT?

11   A    YES.

12   Q    AND YOU TESTIFIED UNDER OATH; CORRECT?

13   A    YES.

14   Q    AND SO YOU TOOK JUST AS MUCH CARE WITH YOUR

15   ANSWERS TO QUESTIONS DURING THAT HEARING AS YOU ARE

16   TODAY; RIGHT?

17   A    YES.

18   Q    OKAY.  LET'S PUT UP WHAT YOU SAID AT THAT

19   HEARING ON MAY 31ST, 2012, PAGE 705, LINES 6

20   THROUGH 10.

21             MS. KREVANS:  OBJECTION, YOUR HONOR.

22             MR. VERHOEVEN:  MR. FISHER, IF WE COULD

23   DO THAT.

24             MS. KREVANS:  IT'S IMPROPER TO SHOW

25   TESTIMONY UNTIL THE JURY -- UNTIL IT'S BEEN SHOWN

1100

```
 1    THAT IT'S IMPEACHING TO SOMETHING THE WITNESS HAS

 2    SAID AND THAT SHOWING HAS NOT BEEN MADE.

 3              MR. VERHOEVEN:  YOUR HONOR, THIS IS

 4    EXACTLY WHAT COUNSEL IN EXAMINING MR. DENISON DID.

 5              THE COURT:  OVERRULED.

 6              GO AHEAD, PLEASE.

 7              MR. VERHOEVEN:  PULL THAT UP, MR. FISHER.

 8    AND PULL OUT LINES 7 THROUGH 10, AND I'LL READ IT

 9    INTO THE RECORD.

10              "QUESTION:  YOU DON'T HAVE ANY FIRSTHAND

11    KNOWLEDGE OF ANY SURVEYS APPLE'S CONDUCTED WITH

12    RESPECT TO ITS IPHONES, CORRECT?

13              "ANSWER:  CORRECT."

14    Q    WAS THAT TRUTHFUL TESTIMONY WHEN YOU GAVE IT

15    IN MAY?

16    A    IT WAS TRUE THEN, YES.

17    Q    OKAY.  THANK YOU, MR. FISHER.

18              IN FORMING YOUR OPINIONS, YOU DID NOT

19    HAVE ANY INFORMATION ABOUT WHAT PERCENTAGE OF

20    PURCHASERS OF IPHONES PURCHASED THOSE PRODUCTS

21    EITHER FROM AN APPLE STORE OR A WEBSITE; RIGHT?

22    A    CORRECT.

23    Q    YOU DID NOT TALK TO CONSUMERS ABOUT THEIR

24    PERCEPTIONS OF PRODUCTS IN AN APPLE STORE; RIGHT?

25    A    I DID SPEAK TO A FEW CONSUMERS IN SOME VERY
```

1101

1    BRIEF DISCUSSIONS I HAD WITH THEM.

2    Q    SIR, YOU DID NOT TALK TO CONSUMERS ABOUT THEIR

3    PERCEPTIONS OF PRODUCTS AT AN APPLE STORE, DID YOU?

4    A    AN APPLE STORE, NO, I DID NOT.

5    Q    OKAY.  YOU DID HAVE A 20-MINUTE PHONE

6    CONVERSATION WITH MR. STRINGER; RIGHT?

7    A    YES.

8    Q    BUT YOU SPOKE WITH NO ONE ELSE AT APPLE IN

9    FORMING YOUR OPINIONS, DID YOU, SIR?

10   A    NO, I DIDN'T.

11   Q    AND YOU HAVE NO DIRECT EVIDENCE TO SUGGEST

12   THAT ANY CONSUMER HAS EVER PURCHASED A SAMSUNG

13   SMARTPHONE OR AN APPLE SMARTPHONE BELIEVING IT WAS

14   ACTUALLY A DEVICE MANUFACTURED BY THE OTHER, DO

15   YOU?

16   A    WOULD YOU REPEAT THAT, PLEASE?

17          MR. VERHOEVEN:  CAN WE HAVE THE QUESTION

18   READ BACK, PLEASE?

19          (WHEREUPON, THE RECORD WAS READ BY THE

20   COURT REPORTER.)

21          THE WITNESS:  I DO NOT.

22   BY MR. VERHOEVEN:

23   Q    YOU DON'T KNOW WHETHER CONSUMERS HAVE BEEN

24   CONFUSED AT ANY TIME WHEN PURCHASING APPLE DEVICES

25   OR SAMSUNG DEVICES INTO THINKING THEY ARE DEVICES

102

```
1   FROM THE OTHER MANUFACTURER; CORRECT?

2   A    I BELIEVE THAT'S CORRECT.  I'M SORRY.  COULD

3   YOU REPEAT THE QUESTION?

4            MR. VERHOEVEN:  CAN WE HAVE IT READ BACK

5   FOR MR. BRESSLER?

6            (WHEREUPON, THE RECORD WAS READ BY THE

7   COURT REPORTER.)

8            THE WITNESS:  THAT'S CORRECT.

9   BY MR. VERHOEVEN:

10  Q    YOU DON'T KNOW WHETHER CONSUMERS CONFUSE APPLE

11  AND SAMSUNG DEVICES DURING THE COURSE OF THEIR

12  PURCHASING DECISIONS, DO YOU?

13  A    I BELIEVE I HAVE SEEN SOME ARTICLES THAT

14  SUGGEST THAT PEOPLE DO GET CONFUSED.

15  Q    WELL, IN ADDITION TO THIS HEARING IN WHICH YOU

16  TESTIFIED, YOU ALSO HAD YOUR DEPOSITION TAKEN.

17            DO YOU REMEMBER THAT IN THIS CASE?

18  A    YES, I DO.

19  Q    AND THAT HAPPENED ON APRIL 24TH, 2012?  DOES

20  THAT SOUND ABOUT RIGHT?

21  A    SOUNDS ABOUT RIGHT, YES.

22  Q    AND A DEPOSITION, YOU UNDERSTAND, IS A

23  PROCEEDING JUST LIKE IN THE COURT HERE WHERE YOU'RE

24  SWORN UNDER OATH AND YOU GAVE TRUTHFUL TESTIMONY;

25  RIGHT?
```

1    A    YES.

2    Q    LET'S LOOK AT WHAT YOU SAID AT YOUR DEPOSITION

3    AT PAGE 145:24 THROUGH 146, LINE 7, THE DEPOSITION

4    DATED APRIL 24TH, 2012.

5              CAN WE PLAY THAT?

6              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

7    OPEN COURT OFF THE RECORD.)

8    BY MR. VERHOEVEN:

9    Q    THAT WAS TRUTHFUL TESTIMONY WHEN YOU GAVE IT

10   AT THE DEPOSITION IN APRIL OF THIS YEAR; RIGHT,

11   SIR?

12   A    I BELIEVE SO.

13   Q    TO THE BEST OF YOUR KNOWLEDGE, SMARTPHONE

14   CONSUMERS EVALUATE DIFFERENT MODELS, COMPARE THEM

15   TO ONE ANOTHER, EVEN BEFORE GOING INTO THE STORE;

16   RIGHT?

17   A    YES.

18   Q    SMARTPHONE CONSUMERS CONSIDER A NUMBER OF

19   FACTORS, SUCH AS PRICE, PERFORMANCE, AS WELL AS

20   APPEARANCE; RIGHT?

21   A    I GUESS.

22   Q    DO YOU BELIEVE THAT'S TRUE?

23   A    I SUSPECT THEY DO.

24   Q    YOU WOULD EXPECT THAT IF THE PURCHASER WAS

25   ENTERING INTO A MULTI-YEAR CONTRACT, THEY WOULD

104

```
1    KNOW WHAT BRAND OF PHONE THEY WERE BUYING; RIGHT?
2    A    YES.
3    Q    YOU BELIEVE, BY THE END OF THE SMARTPHONE
4    PURCHASING PROCESS, THE ORDINARY CONSUMER WOULD
5    HAVE TO KNOW WHICH PHONE THEY WERE BUYING; RIGHT?
6    A    YES.
7    Q    GIVEN THE ENVIRONMENT IN WHICH THESE PHONES
8    ARE BEING SOLD AND THE DEGREE OF ADVERTISING
9    BRANDING, YOU DON'T KNOW WHETHER ANYBODY WOULD EVER
10   BE DECEIVED INTO THINKING THEY WERE BUYING A
11   SAMSUNG PHONE WHEN THEY WERE BUYING AN APPLE PHONE
12   OR VICE-VERSA; ISN'T THAT TRUE, SIR?
13   A    COULD YOU REPEAT THAT AGAIN, PLEASE.
14            MR. VERHOEVEN:  CAN WE READ IT BACK,
15   PLEASE.
16            (WHEREUPON, THE RECORD WAS READ BY THE
17   COURT REPORTER.)
18            THE WITNESS:  YES.
19   BY MR. VERHOEVEN:
20   Q    AND WHEN YOU PERFORMED YOUR INFRINGEMENT
21   ANALYSIS THAT YOU'VE TESTIFIED TO EARLIER TODAY,
22   YOU DID NOT ENDEAVOR TO DETERMINE WHETHER THE
23   SIMILARITY BETWEEN TWO DESIGNS WAS DECEPTIVE, DID
24   YOU?
25   A    YES, I DID.
```

105

1    Q    OKAY.  LET'S GO TO YOUR TESTIMONY ON MAY 31ST,

2    2012, PAGE 659, LINES 6 THROUGH 14.

3         CAN WE PUT THAT UP, MR. FISHER?  659,

4    PAGE -- LINES 6 THROUGH 14.  IT'S THE MAY 31ST,

5    2012.  THERE WE GO.

6         "QUESTION:  DID YOU APPLY THIS TEST THAT

7    I HAVE ON THE SCREEN ON RDX-49C, PAGE 20?

8         "ANSWER:  I CERTAINLY APPLIED THE ISSUE

9    OF THE EYE OF THE ORDINARY OBSERVER GIVING AS MUCH

10   ATTENTION AS A PURCHASER USUALLY GIVES TO THE TWO

11   DESIGNS, FINDING THEM SUBSTANTIALLY THE SAME.

12        "IT WAS MY UNDERSTANDING, FROM COUNSEL,

13   THAT IT WAS NOT NECESSARY THAT THE SIMILARITY BE

14   DECEPTIVE."

15   Q    DO YOU SEE THAT?

16   A    I SEE THAT, YES.

17   Q    AND THAT'S THE TESTIMONY YOU GAVE ON MAY 31ST,

18   2012; RIGHT?

19   A    IT IS.

20   Q    AFTER YOU SUBMITTED YOUR OPINIONS IN THIS

21   CASE?

22   A    YES.

23   Q    SO AT THE TIME YOU SUBMITTED YOUR OPINIONS IN

24   THIS CASE, IT WAS YOUR UNDERSTANDING IT WAS NOT

25   NECESSARY TO LOOK INTO WHETHER A SIMILARITY WAS

1106

1    DECEPTIVE; ISN'T THAT TRUE, SIR?

2    A    NO.  IT WAS MY UNDERSTANDING THAT THE

3    MEASUREMENT WAS DIFFERENT THAT YOU'RE DESCRIBING.

4              MS. KREVANS:  YOUR HONOR, MAY I ASK, FOR

5    COMPLETENESS, THAT I BE PERMITTED TO READ AN

6    ADDITIONAL PORTION OF THE TESTIMONY?  THIS IS FROM

7    THE ITC TRIAL.

8              THE COURT:  NO.  YOU'LL HAVE AN

9    OPPORTUNITY IN REDIRECT.

10   BY MR. VERHOEVEN:

11   Q    NOW, I WANT TO SWITCH TO TALKING ABOUT THE

12   DESIGN PATENTS, '087 AND '677 MORE SPECIFICALLY,

13   OKAY?

14   A    YES.

15   Q    WHEN YOU PREPARED YOUR OPINIONS WITH RESPECT

16   TO THOSE DESIGN PATENTS, YOU WERE ASKED TO APPLY

17   CERTAIN PRINCIPALS OR RULES OF THE ROAD FOR YOUR

18   ANALYSIS BY THE ATTORNEYS; CORRECT?

19   A    YES.

20   Q    AND IF WE COULD JUST GO TO, MR. BRESSLER, YOUR

21   OPENING EXPERT REPORT DATED MARCH 22, 2012 AT

22   PARAGRAPH 21.  I THINK THAT'S IN YOUR BINDER IF

23   YOU'D LIKE TO LOOK AT IT.  WE'RE GOING TO PUT IT ON

24   THE SCREEN AS WELL.

25   A    COULD YOU TELL ME WHERE IT WAS IN MY BINDER,

```
 1    PLEASE.

 2

 3              MR. VERHOEVEN:  IF I COULD APPROACH, YOUR

 4    HONOR?

 5              THE COURT:  GO AHEAD, PLEASE.

 6              MR. VERHOEVEN:  THANK YOU.

 7              YOU HAVE MY BINDER, SO -- THERE SHOULD BE

 8    AN EXHIBIT IN THERE.

 9              THE WITNESS:  THANK YOU.

10              MR. VERHOEVEN:  SURE.

11              THE WITNESS:  AND WHAT PAGE WAS THIS

12    AGAIN, PLEASE?

13    BY MR. VERHOEVEN:

14    Q    IT'S PARAGRAPH 21, SIR.  ARE YOU THERE?

15    A    YES.

16    Q    OKAY.  SO OBVIOUSLY YOU'RE NOT A LAWYER;

17    RIGHT?

18    A    THAT'S CORRECT.

19    Q    BUT YOU WERE GIVEN, BY THE LAWYERS, CERTAIN

20    PRINCIPLES THEY ASKED YOU TO APPLY IN CONDUCTING

21    YOUR ANALYSIS; CORRECT?

22    A    YES.

23    Q    AND THIS WAS IN THE PART OF YOUR REPORT WHERE

24    YOU DELINEATE WHAT THOSE PRINCIPLES WERE; CORRECT?

25    "I, THEREFORE, HAVE BEEN ASKED TO APPLY THE
```

```
1    OPEN COURT OFF THE RECORD.)

2              MS. KREVANS:  YOUR HONOR, THAT DOES NOT

3    IMPEACH ANY TESTIMONY THAT THE WITNESS HAS GIVEN

4    HERE IN COURT.

5              THE COURT:  OVERRULED.

6    BY MR. VERHOEVEN:

7    Q    THAT WAS YOUR UNDERSTANDING WHEN YOU TESTIFIED

8    AT YOUR DEPOSITION; RIGHT?

9    A    I GUESS.  I GUESS I SAID THAT IN ANSWER TO

10   THAT QUESTION, YES.

11   Q    AND LET ME ASK IT ONE MORE TIME?

12   A    I WAS CONFUSED.

13   Q    LET ME ASK ONE MORE TIME.  AND, AGAIN, TO THE

14   EXTENT YOU CAN FAIRLY ANSWER MY QUESTION YES OR NO,

15   I WOULD APPRECIATE IT.

16              ARE YOU AN EXPERT IN THE FUNCTIONALITY OF

17   PHONES?

18   A    IN TERMS OF THEIR OPERATION FUNCTIONALITY, NO.

19   Q    OKAY.  YOU'RE NOT AN EXPERT WITH RESPECT TO

20   TOUCH DISPLAY TECHNOLOGY; CORRECT?

21   A    THAT IS CORRECT.

22   Q    IN FACT, YOU'RE NO MORE EQUIPPED THAN ANY

23   ORDINARY OBSERVER TO OPINE ON THE FUNCTIONALITY OF

24   A SMARTPHONE?

25   A    DEPENDS ON WHETHER YOU MEAN FUNCTIONALITY
```

1    RELATIVE TO A DESIGN PATENT OR THE GENERAL

2    FUNCTIONALITY OF HOW IT OPERATES.

3    Q    IN TERMS OF THE SPECIFIC TECHNICAL KNOWLEDGE

4    AND SCIENTIFIC FUNCTIONALITY, YOU DON'T HAVE ANY

5    KNOWLEDGE; RIGHT?

6    A    THAT'S CORRECT.

7    Q    IN FACT, YOU BELIEVE THAT YOU ONLY NEED A

8    THIN, TOP LEVEL KNOWLEDGE TO BE ABLE TO PASS

9    JUDGMENT ON THE COMPARABLE FUNCTIONALITY OF THE

10   DIFFERENT PHONES?

11   A    AS IT RELATES TO DESIGN FUNCTION, I BELIEVE

12   THAT'S TRUE.

13   Q    IT'S YOUR TESTIMONY, SIR, THAT HAVING A

14   DISPLAY ELEMENT IS NOT NECESSARY OR FUNCTIONAL FOR

15   A SMARTPHONE?  THAT'S YOUR TESTIMONY TO THIS JURY;

16   RIGHT?

17   A    NO.

18   Q    OKAY.  WELL, LET'S -- YOUR DEPOSITION

19   TESTIMONY, AGAIN, WAS TAKEN APRIL 24TH, 2012;

20   RIGHT?

21   A    THAT'S CORRECT.

22   Q    IT WAS UNDER OATH?

23   A    YES.

24   Q    AND YOU ANSWERED QUESTIONS AS CAREFULLY AS YOU

25   COULD; RIGHT?

1    A    YES.

2    Q    LET'S PLAY AN EXCERPT FROM YOUR DEPOSITION,

3    PAGE 210, LINES 14 THROUGH 24.

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. VERHOEVEN:

7    Q    THAT WAS TRUE TESTIMONY WHEN YOU GAVE IT?

8    A    THAT WAS PART OF THE TESTIMONY THAT I GAVE

9    THAT IT TURNS OUT WAS, WAS GOING BOTH DIRECTIONS

10   DEPENDING ON -- BECAUSE I MISUNDERSTOOD THE USE OF

11   THE TERM "FUNCTION" AND THE QUESTION AT THAT TIME.

12   Q    SO THAT TESTIMONY IS NOT TRUE?

13   A    THE TESTIMONY IS TRUE.  I WAS REFERRING TO THE

14   FUNCTION AS IT RELATES TO A DESIGN PATENT, WHICH

15   MEANS THEY CAN BE ANY SHAPE AND LOCATION AND SIZE.

16             AND IN THAT SENSE, IT'S NOT FUNCTIONAL IN

17   THAT SHAPE, LOCATION OR SIZE ARE NOT REQUIRED BY AS

18   FUNCTIONS.

19   Q    CAN WE PUT UP THE HARD COPY TRANSCRIPT OF WHAT

20   WE JUST WATCHED, PAGE 210, LINES 14 THROUGH 24.

21             SO THIS IS 210, LINE 14 THROUGH 24.

22   APRIL 24TH, 2012 DEPOSITION.

23             SIR, DO YOU SEE THE QUESTION, IT DOESN'T

24   TALK ABOUT THE DESIGN PATENTS, IT TALKS ABOUT

25   SMARTPHONES.

1          DO YOU SEE THAT, SIR?

2     A    I SEE THAT'S WHAT IT SAYS.

3     Q    THAT'S WHAT YOU WERE ASKED; RIGHT?

4     A    I BELIEVE IT WAS ASKING ME ABOUT AS IT RELATED

5     TO DESIGN PATENTS.

6     Q    BUT IT DOESN'T SAY THAT, DOES IT?

7     A    I DON'T SEE IT SAYING THAT.

8     Q    USING YOUR DEFINITION OF FUNCTIONAL, ISN'T IT

9     TRUE THAT YOUR OPINION TO THIS JURY IS THAT THE USE

10    OF A TRANSPARENT COVER OVER A DISPLAY IS NOT

11    NECESSARY FOR FUNCTIONAL?

12    A    IN DEFINING "FUNCTIONAL" AS NOT BEING DRIVEN

13    BY THE SHAPE AND LOCATION AND IT NOT BEING -- I

14    BELIEVE THAT'S TRUE.  I THINK THE FACT THAT IT IS

15    CLEAR ON A SMARTPHONE NEEDS -- YES, THAT'S

16    FUNCTIONAL.

17    Q    LET'S PLAY PAGE 209 FROM THE SAME DEPOSITION,

18    LINES 9 THROUGH 21.

19          (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

20    OPEN COURT OFF THE RECORD.)

21    BY MR. VERHOEVEN:

22    Q    DO YOU STAND BY THAT TESTIMONY?

23    A    I BELIEVE THAT'S WHAT I MAY HAVE JUST SAID A

24    MOMENT AGO.

25    Q    SO IT'S YOUR TESTIMONY TO THIS JURY THAT

1    HAVING A CLEAR COVER OVER THE DISPLAY ELEMENT IS

2    NOT SOMETHING THAT'S FUNCTIONAL?

3    A    FROM A PERFORMANCE STANDPOINT AND OPERATIONS

4    STANDPOINT, I BELIEVE IT'S ABSOLUTELY FUNCTIONAL.

5    Q    BUT JUST NOT IN YOUR ANALYSIS?  IS THAT RIGHT?

6    A    IF IT'S CLEAR THAT IT'S A -- IF IT IS CLEAR IN

7    THE DESIGN PATENT THAT IT'S A DISPLAY, THEN ONE

8    WOULD EXPECT IT TO BE TRANSPARENT OVER THAT

9    DISPLAY.

10   Q    BUT YOUR CONCLUSION, WHEN YOU WERE ASKED UNDER

11   OATH ABOUT WHETHER USE OF A COVER THAT IS

12   TRANSPARENT OR A DISPLAY IS FUNCTIONAL, IS THAT

13   IT'S NOT FUNCTIONAL AS YOU'VE DEFINED IT; RIGHT?

14   A    I WAS TALKING ABOUT ITS SHAPE AND LOCATION AND

15   SIZE AND THE DESIGN PATENT DEFINITION OF

16   FUNCTIONALITY.

17   Q    AND YOU ALSO TESTIFIED THAT -- WELL, LET ME

18   ASK YOU, IN YOUR VIEW, IS LOCATING THE SPEAKER IN

19   THE UPPER PORTION OF THE FRONT FACE OF A SMARTPHONE

20   SOMETHING THAT'S NOT FUNCTIONAL AS YOU USE THAT

21   TERM IN YOUR EXPERT REPORTS?

22   A    DEFINING THE PRECISE LOCATION FROM AN

23   AESTHETIC STANDPOINT, IS NOT DRIVEN BY FUNCTION.

24   Q    SO THAT'S NO, IT'S NOT FUNCTIONAL?

25   A    WITH THE CONDITIONS THAT I JUST SAID, YES,

1    IT'S NOT FUNCTIONAL.

2    Q    LET'S PLAY PAGE 212, LINE 25 THROUGH 213, LINE

3    4 OF YOUR APRIL 24TH DEPOSITION.

4              (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

5    OPEN COURT OFF THE RECORD.)

6    BY MR. VERHOEVEN:

7    Q    YOU DIDN'T HAVE ANY QUALIFICATIONS WHEN YOU

8    ANSWERED THAT AT YOUR DEPOSITION, DID YOU, SIR?

9    A    BECAUSE I UNDERSTOOD IT TO BE THE WAY I JUST

10   SAID IT.

11   Q    DO YOU STAND BY THAT TESTIMONY?

12   A    YES.

13   Q    NOW, YOU TESTIFIED ON DIRECT EXAMINATION THAT

14   YOUR AN INDUSTRIAL DESIGNER; CORRECT?

15   A    THAT'S CORRECT.

16   Q    BUT, IN FACT, YOU'VE NEVER DESIGNED A

17   SMARTPHONE, HAVE YOU?

18   A    NO, I HAVE NOT DESIGNED A SMARTPHONE.

19   Q    IS IT FAIR TO SAY THAT YOU HAVE NEVER DESIGNED

20   A SMARTPHONE AT ANY STAGE?

21   A    I'M NOT SURE WHAT YOU MEAN BY "ANY STAGE."

22   Q    WELL, LET ME ASK IT THIS WAY:  REGARDLESS OF

23   WHETHER OR NOT THE DESIGN WAS ACTUALLY IMPLEMENTED

24   OR MANUFACTURED OR PRODUCED IN ANY WAY, YOU NEVER

25   HAVE NOT DESIGNED ANY SMARTPHONES AT ANY STAGE IN

1    THAT PROCESS?

2    A    NO.  I'VE DESIGNED CELL PHONES, NOT

3    SMARTPHONES.

4    Q    YOU HAVE DESIGNED SOME CELL PHONES, BUT THOSE

5    DESIGNS ARE ONLY CONCEPTS; RIGHT?

6    A    THAT'S CORRECT.

7    Q    AND NONE OF THOSE CONCEPTS WERE EVER PRODUCED

8    OR MANUFACTURED; CORRECT?

9    A    I DON'T KNOW FOR SURE.

10    Q    WELL, AS FAR AS YOU KNOW, THOSE CONCEPTS WERE

11    NEVER EVEN MADE INTO MODELS OR PROTOTYPES, WERE

12    THEY?

13    A    YES, THEY WERE MADE INTO MODELS.

14    Q    OKAY.  LET'S LOOK AT YOUR DEPOSITION, THIS

15    TIME LET'S JUST PUT UP THE WRITTEN DEPOSITION,

16    PLEASE, MR. FISHER, DATED APRIL 23, 2012.

17              JUST ONE SECOND, YOUR HONOR.

18              (PAUSE IN PROCEEDINGS.)

19              MR. VERHOEVEN:  I'M SORRY, MR. FISHER.

20    CAN WE GO TO THE ITC TRANSCRIPT, PAGE 219, LINES 13

21    THROUGH 24.

22    Q    DO YOU SEE THIS IS FROM THE HEARING THAT YOU

23    ATTENDED AND GAVE TESTIMONY TO RELATED IN ANOTHER

24    PROCEEDING.  DO YOU REMEMBER THAT, IN WASHINGTON?

25    A    IT LOOKS FAMILIAR, YES.

```
 1    Q    AND YOU WERE ASKED, WITH RESPECT TO OTHER CELL

 2    PHONE DESIGNS THAT YOU WORKED ON, DID YOU WORK ON

 3    ANY OF THOSE PRIOR TO 2006?  DO YOU SEE THAT?

 4    A    YES.

 5    Q    AND DOWN AT THE BOTTOM, IT SAYS QUESTION, THIS

 6    IS LINES 21 THROUGH 24?

 7              "QUESTION:  DID ANY OF THEM BECOME MODELS

 8    OR PROTOTYPES OR WERE OTHERWISE EXPRESSED IN

 9    THREE-DIMENSIONAL FORM?"

10              WHAT WAS YOUR ANSWER?

11    A    APPARENTLY I SAID "NOT THAT I KNOW OF," AND

12    I'D APPARENTLY FORGOTTEN THAT MODELS AND MOCK-UPS

13    WERE MADE.

14    Q    SO IN MAY OF THIS YEAR YOU TESTIFIED NONE WERE

15    MADE, AND NOW YOU'RE TESTIFYING THAT SOME WERE

16    MADE?  IS THAT RIGHT?

17    A    YES.  I MEAN, IT WAS A LONG TIME AGO.  I THINK

18    I REMEMBERED THAT THERE WERE MODELS MADE.

19    Q    SO IT THIS TESTIMONY NOT TRUE?

20    A    AT THAT POINT, I DIDN'T REMEMBER THAT.

21    Q    THAT TESTIMONY WAS GIVEN UNDER OATH, SIMILAR

22    TO THIS TESTIMONY; CORRECT?

23    A    TO THE BEST OF MY ABILITY, YES.

24    Q    ISN'T IT TRUE THAT IN ALL YOUR TIME AS AN

25    INDUSTRIAL DESIGNER, YOU ONLY WORKED ON CONCEPTS
```

1

2

3

4                        CERTIFICATE OF REPORTERS

5

6

7            WE, THE UNDERSIGNED OFFICIAL COURT

8    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

9    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

10   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

11   CERTIFY:

12            THAT THE FOREGOING TRANSCRIPT,

13   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

14   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

15   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

16   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

17   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

18

19                    /S/
                      _____
20                    LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
21

22                    /S/
                      _____
23                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER 8074
24

25                    DATED:  AUGUST 6, 2012