Estrich Declaration

Exhibit 6

1638

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3            SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6   CORPORATION,               )
                               )  SAN JOSE, CALIFORNIA
7            PLAINTIFF,        )
                               )  AUGUST 10, 2012
8         VS.                  )
                               )  VOLUME 6
9   SAMSUNG ELECTRONICS CO.,   )
    LTD., A KOREAN BUSINESS    )  PAGES 1638-1988
10  ENTITY; SAMSUNG            )
    ELECTRONICS AMERICA,       )
11  INC., A NEW YORK           )
    CORPORATION; SAMSUNG       )
12  TELECOMMUNICATIONS         )
    AMERICA, LLC, A DELAWARE   )
13  LIMITED LIABILITY          )
    COMPANY,                   )
14                             )
             DEFENDANTS.       )
15  _____

16          TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595
24

25

```
 1   A P P E A R A N C E S:

 2   FOR PLAINTIFF          MORRISON & FOERSTER
     APPLE:                 BY:  HAROLD J. MCELHINNY
 3                               MICHAEL A. JACOBS
                                 RACHEL KREVANS
 4                          425 MARKET STREET
                           SAN FRANCISCO, CALIFORNIA  94105
 5

 6   FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
     APPLE:                 HALE AND DORR
 7                          BY:  WILLIAM F. LEE
                           60 STATE STREET
 8                          BOSTON, MASSACHUSETTS  02109

 9                          BY:  MARK D. SELWYN
                           950 PAGE MILL ROAD
10                          PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                           OLIVER & HEDGES
12                          BY:  CHARLES K. VERHOEVEN
                           50 CALIFORNIA STREET, 22ND FLOOR
13                          SAN FRANCISCO, CALIFORNIA  94111

14                          BY:  VICTORIA F. MAROULIS
                                 KEVIN P.B. JOHNSON
15                          555 TWIN DOLPHIN DRIVE
                           SUITE 560
16                          REDWOOD SHORES, CALIFORNIA  94065

17                          BY:  MICHAEL T. ZELLER
                                 WILLIAM C. PRICE
18                          865 SOUTH FIGUEROA STREET
                           10TH FLOOR
19                          LOS ANGELES, CALIFORNIA  90017

20                          BY:  EDWARD J. DEFRANCO
                           51 MADISON AVENUE, 22ND FLOOR
21                          NEW YORK, NEW YORK  10010

22

23

24

25
```

1                    INDEX OF WITNESSES

2       PLAINTIFF'S

3       HAL PORET
             CROSS-EXAM BY MR. PRICE (RES.)     P. 1665
4            REDIRECT EXAM BY MR. JACOBS        P. 1687

5       KENT VAN LIERE
             DIRECT EXAM BY MR. JACOBS          P. 1690
6            CROSS-EXAM BY MR. PRICE            P. 1702

7       RAVIN BALAKRISHNAN
             DIRECT EXAM BY MR. JACOBS          P. 1723
8            CROSS-EXAM BY MR. JOHNSON          P. 1769
             REDIRECT EXAM BY MR. JACOBS        P. 1806
9            RECROSS-EXAM BY MR. JOHNSON        P. 1813

10      KARAN SINGH
             DIRECT EXAM BY MR. JACOBS          P. 1815
11           CROSS-EXAM BY MR. DEFRANCO         P. 1848
             REDIRECT EXAM BY MR. JACOBS        P. 1909
12

13      JOHN HAUSER
             DIRECT EXAM BY MR. JACOBS          P. 1914
14           CROSS-EXAM BY MR. PRICE            P. 1917
             REDIRECT EXAM BY MR. JACOBS        P. 1945
15           RECROSS-EXAM BY MR. PRICE          P. 1948

16      BORIS TEKSLER
             DIRECT EXAM BY MR. MUELLER         P. 1951
17           CROSS-EXAM BY MS. MAROULIS         P. 1964

18

19

20

21

22

23

24

25

```
 1    HAVE USED?  YOU COULD HAVE USED A MOTOROLA.  YOU

 2    COULD HAVE USED AN LG TABLET.  YOU COULD HAVE USED

 3    SOMETHING THAT LOOKED A LOT CLOSER TO THE IPAD THAN

 4    THAT?

 5    A    NO, I DON'T AGREE WITH THAT.

 6    Q    OKAY.  SO HAVE YOU SEEN OTHER TABLETS IN THE

 7    MARKET AND WHAT THEY LOOK LIKE?

 8    A    YES.

 9    Q    OKAY.  AND YOU DON'T AGREE THAT THE MOTOROLA

10    AND LG, WHICH WE'VE SEEN ALREADY HERE IN COURT AND

11    PASSED AROUND, YOU DON'T THINK THEY LOOK MORE LIKE

12    THE IPAD THAN THIS?

13    A    YES, I THINK, IN FACT, THEY DO LOOK MORE LIKE

14    THE IPAD IN THE SENSE THAT THEY HAVE MORE ELEMENTS

15    OF THE ALLEGEDLY INFRINGING TRADE DRESS.

16              SO IN CHOOSING THE CONTROL, THE IDEA IS

17    TO GET A PRODUCT THAT'S IN THE SAME MARKET THAT HAS

18    THE SAME BASIC FUNCTIONALITY, BUT DOES NOT INCLUDE

19    THE ALLEGEDLY INFRINGING TRADE DRESS.

20    Q    WELL, ACTUALLY -- SO ARE YOU SAYING THAT APPLE

21    IS CONTENDING THAT MOTOROLA AND LG, THAT THOSE

22    TABLETS INFRINGE APPLE'S TRADE DRESS AND THAT'S WHY

23    YOU DIDN'T USE THEM?

24              MR. JACOBS:  YOUR HONOR, THIS IS ASKING

25    FOR A LEGAL CONCLUSION FROM THIS WITNESS AND LACKS
```

1714

1    FOUNDATION.

2              THE COURT:  SUSTAINED.

3    BY MR. PRICE:

4    Q    I'M ASKING YOUR UNDERSTANDING AS TO WHY YOU

5    DIDN'T USE THEM.  OKAY?

6              IS IT YOUR UNDERSTANDING, WHICH WOULD BE

7    THE BASIS OF YOU NOT USING THE MOTOROLA AND THE LG,

8    IS IT YOUR UNDERSTANDING THAT YOU COULDN'T USE THEM

9    BECAUSE APPLE IS SAYING THAT THOSE INFRINGE ITS

10   TRADE DRESS?

11             MR. JACOBS:  YOUR HONOR, YOU JUST

12   SUSTAINED AN OBJECTION TO THIS SAME QUESTION.

13             THE COURT:  SUSTAINED.

14   BY MR. PRICE:

15   Q    IF WE CAN LOOK BACK AT THAT 30.5, I THINK IT

16   WAS 30.5, 24.5.  NO, I'M SORRY.  31.3.  THIS IS

17   YOUR STUDY.  I BELIEVE IT'S 31.3.

18             SO IS THIS THE STUDY -- THIS IS YOUR

19   RESULTS SHOWING THAT VIDEO, SHOWING THE NOOK, AND

20   YOU GOT 6 PERCENT IS POST-CONFUSION WITH THE

21   BRANDED, 19, AND YOU AVERAGED THOSE TO GET 12.

22             NOW, IF YOU REALLY WANTED TO COME UP WITH

23   AN AVERAGE THAT MEANT ANYTHING AS FAR AS THE REAL

24   WORLD, YOU'D HAVE TO WEIGHT THOSE NUMBERS; RIGHT?

25   A    WELL, I THINK I UNDERSTAND YOUR QUESTION, AND

```
 1    THE -- FIRST OF ALL, THE 12 WAS NOT -- IT ISN'T --

 2    I DIDN'T AVERAGE THE TWO.  I JUST SUMMED EVERYTHING

 3    ACROSS THE TWO CONDITIONS AND THEY COME TO 12

 4    PERCENT.

 5    Q    SO LET ME STOP YOU THERE.

 6            SO THIS IS NOT AN OPINION YOU HAVE AS TO

 7    NET CONFUSION RATE IN THE MARKET; RIGHT?

 8    A    NO.  I BELIEVE THE CONFUSION -- THE OPINION I

 9    OFFERED IN MY REPORT IS THAT IT'S SOMEWHERE BETWEEN

10    6 PERCENT AND 19 PERCENT WERE ACTUALLY CONFUSED BY

11    MY TEST.

12    Q    AND THE 19 HERE, YOU DON'T KNOW HOW MANY,

13    QUOTE, "UNBRANDED" TABLETS WERE IN THE MARKET

14    COMPARED TO THE BRANDED ONES; RIGHT?

15    A    WELL, TWO COMMENTS.  ONE --

16    Q    CAN YOU ANSWER YES OR NO?  BECAUSE I'M ON THE

17    CLOCK.

18    A    I'M SORRY.  I UNDERSTAND.

19    Q    DO YOU KNOW HOW MANY --

20    A    ASK ME THE QUESTION AGAIN.

21    Q    DO YOU KNOW IN THE MARKETPLACE HOW MANY

22    UNBRANDED VERSUS BRANDED THERE WERE?

23    A    NO, I DON'T KNOW HOW MANY UNBRANDED VERSUS

24    BRANDED THERE WERE.

25    Q    NOW LET'S TALK ABOUT YOUR PHONE ASSOCIATION
```

```
 1    SURVEY.
 2              AND, AGAIN, THIS IS NOT A SURVEY THAT
 3    SHOWS CONSUMER CONFUSION AT ALL; CORRECT?
 4    A    LET ME JUST MENTALLY SHIFT GEARS.
 5              SO YOU'RE TALKING ABOUT NOW MY PHONE
 6    ASSOCIATION STUDY?
 7    Q    YES.
 8    A    YES, THAT STUDY WAS NOT DESIGNED TO MEASURE
 9    LIKELIHOOD OF CONFUSION.  THAT STUDY WAS DESIGNED
10    TO MEASURE ASSOCIATION.
11    Q    OKAY.  SO IF WE CAN LOOK AT YOUR STUDY AND
12    LOOK AT 3900.153, THIS IS THE QUESTION YOU ASKED.
13    3900.153.  YOU SHOWED THE PICTURE OF ONE OF THE
14    SAMSUNG PHONES AND SAID, "DOES THE LOOK AND DESIGN
15    OF THIS PHONE BRING TO MIND OR CREATE ANY
16    ASSOCIATION FOR YOU WITH ANY OTHER PHONES?"
17              DO YOU SEE THAT?
18    A    YES.
19    Q    IN THE DEMONSTRATIVE YOU SHOWED THE JURY,
20    WHICH WAS THE QUESTION YOU ASKED, YOU DIDN'T
21    UNDERLINE "OTHER," BUT "OTHER" WAS UNDERLINED IN
22    THE ACTUAL SURVEY?
23    A    YES.
24    Q    THE PEOPLE WHO READ THIS KNEW THEY WERE
25    SUPPOSED TO THINK OF SOME OTHER PHONE FOR
```

1    ASSOCIATION; RIGHT?

2    A    IT SUGGESTS THAT -- WE'RE ASKING THEM, FIRST,

3    YES, NO, OR DON'T KNOW, DOES IT BRING TO MIND ANY

4    ASSOCIATION?  AT THIS STAGE WE'RE NOT TELLING THEM

5    THERE IS AN ASSOCIATION.

6    Q    NOW, I WANT TO ASK YOU, IF SOMEONE ASKED YOU,

7    FOR EXAMPLE, SHOWED YOU A PICTURE OF A COKE AND

8    SAID, "DOES THIS BRING TO MIND OR CREATE ANY

9    ASSOCIATION WITH ANY OTHER SOFT DRINK," YOU'D THINK

10   A LOT OF PEOPLE MIGHT SAY PEPSI; RIGHT?  BECAUSE

11   THEY'RE THE TWO BIGGEST PLAYERS IN THE MARKET?

12   A    I HAVEN'T DONE THAT STUDY, SO I WOULDN'T HAVE

13   AN OPINION ON HOW THAT MIGHT TURN OUT.

14   Q    WELL, IF SOMEONE ASKED YOU, YOU KNOW, SHOWED A

15   PICTURE OF A BURGER KING, YOU KNOW, RESTAURANT AND

16   SAID, "DOES THE LOOK AND DESIGN OF THIS RESTAURANT

17   BRING TO MIND OR CREATE ANY ASSOCIATION WITH YOU OF

18   ANY OTHER RESTAURANT," THEY'RE QUITE LIKELY TO SAY

19   MCDONALD'S; RIGHT?

20   A    AGAIN, I HAVEN'T DONE THAT SURVEY.  I DON'T

21   KNOW THAT TO BE THE CASE.

22   Q    YOU DON'T KNOW THAT FROM COMMON SENSE?

23   A    I DON'T KNOW THAT FROM COMMON SENSE AS YOU'VE

24   DESCRIBED IT.

25   Q    WELL, IF YOU DID FIND THAT, HYPOTHETICALLY,

1    HYPOTHETICALLY YOU DID A SURVEY, "DOES THIS BURGER

2    KING RESTAURANT BRING TO MIND ANY OTHER FAST FOOD

3    RESTAURANT" AND THEY SAID MCDONALD'S, YOU CERTAINLY

4    COULDN'T CONCLUDE FROM THAT THAT THE ASSOCIATION

5    WAS BECAUSE THE DESIGNS ARE SIMILAR; RIGHT?

6    A    AGAIN, YOU'RE ASKING ME ABOUT A HYPOTHETICAL

7    STUDY THAT I HAVEN'T CONDUCTED, SO --

8    Q    WELL, IN THIS CASE, YOU UNDERSTAND THAT

9    SAMSUNG AND APPLE ARE THE TWO LARGEST COMPETITORS

10   IN THIS MARKET; RIGHT?

11   A    I UNDERSTAND THEY'RE TWO LARGE COMPETITORS IN

12   THIS MARKET.

13   Q    AND YOU UNDERSTAND FROM KNOWING THE MARKET

14   THAT IF SOMEONE SHOWED YOU A SAMSUNG PHONE AND SAID

15   "WHAT OTHER PHONE DOES THIS REMIND YOU OF," PEOPLE

16   ARE LIKELY TO SAY APPLE, AND VICE-VERSA, BECAUSE

17   THEY'RE THE TWO BIGGIES, JUST LIKE BURGER KING AND

18   MCDONALD'S AND COKE AND PEPSI?

19   A    PERHAPS.

20          BUT TO THE EXTENT THAT THAT'S TRUE,

21   THAT'S ALSO HAPPENING IN THE CONTROL.  SO IF THIS

22   WAS CREATING A DEMAND CHARACTERISTIC AS YOU

23   SUGGEST, THEN IT WOULD BE NETTED OUT IN THE CONTROL

24   CONDITION.

25   Q    SO NOW LET'S TALK ABOUT THE CONTROL.  THE

1    CONTROL -- I THINK IF WE CAN SHOW 3900.129.

2              IN SELECTING A CONTROL, YOU COULD HAVE

3    SELECTED FROM A NUMBER OF PHONES; RIGHT?

4    A    YES.

5    Q    AND YOU INSTEAD -- WELL, OF THE PHONES, YOU

6    SELECTED A BLACKBERRY?

7    A    YES, A BLACKBERRY STORM.

8    Q    AND IF WE COULD LOOK AT EXHIBIT 24, I GUESS

9    PAGE 4.  AND AGAIN, A BLACKBERRY, YOU SAID THIS

10   CONTROL, THE BLACKBERRY CONTROL FOR THE FACT THAT

11   SAMSUNG AND APPLE JUST MIGHT BE NAMES ON THE TIPS

12   OF YOUR TONGUE.

13             IF SOMEONE SHOWED YOU A PICTURE OF A CAN

14   OF MOXIE, DO YOU THINK PEOPLE WOULD ASSOCIATE THAT

15   WITH COKE OR PEPSI?

16   A    A CAN OF WHAT?

17   Q    MOXIE.  YOU DON'T KNOW MOXIE?

18   A    I DON'T KNOW MOXIE.

19   Q    OKAY.  WELL, JUST AS WITH THE BLACKBERRY --

20   AND BY THE WAY, IN THE REAL PICTURE, YOU CAN SEE

21   BLACKBERRY ACROSS THE TOP HERE; RIGHT?

22   A    YES.  IN ALL OF THE PHONES, THE PICTURES ARE

23   THE ACTUAL PRODUCTS THAT ARE IN THE MARKETPLACE AS

24   THEY WOULD LOOK.

25   Q    AND BLACKBERRY AND RIM ARE, ARE PRETTY MUCH --

```
1    AT THE TIME YOU TOOK THIS SURVEY, THEY'RE NOT ON

2    THE TONGUES OF MANY PEOPLE THINKING ABOUT

3    SMARTPHONES?  THEY ARE HAVING SERIOUS TROUBLE AND

4    ALMOST DROPPING OUT OF THE MARKET; RIGHT?

5    A    I DON'T HAVE THAT UNDERSTANDING DURING THE

6    PERIOD OF TIME OF THE SURVEY.

7    Q    YOU DON'T HAVE IT ONE WAY OR THE OTHER?

8    A    THAT'S CORRECT.

9    Q    AND IS IT JUST A COINCIDENCE THAT BOTH YOU AND

10   DR. PORET USED A NOOK AND THE BLACKBERRY STORM FOR

11   YOUR CONTROLS?  DID YOU GUYS GET TOGETHER AND TALK

12   ABOUT THIS?

13   A    NO.  I HAVE NO KNOWLEDGE OF MR. PORET'S WORK

14   BEFORE I CAME TO TRIAL AND HEARD ABOUT IT OTHER

15   THAN I KNEW HE HAD DONE SURVEYS.

16   Q    DID YOU -- WERE YOU GIVEN THESE PHONES AND THE

17   BLACKBERRY AND THE NOOK TO USE AS THE CONTROLS?

18   A    NO.  I SELECTED THESE PHONES AND TABLETS WITH

19   MY STAFF FROM OUR REVIEW OF THE PRODUCTS THAT WERE

20   AVAILABLE.

21   Q    SO YOU INTENTIONALLY SELECTED THE NOOK AS THE

22   TABLET TO USE AS A CONTROL; RIGHT?

23   A    YES.

24   Q    YOU'RE SAYING THAT?

25   A    YES.
```

```
 1    Q     AND YOU INTENTIONALLY SELECTED THE BLACKBERRY

 2    TO USE AS THE CONTROL; RIGHT?

 3    A     THE BLACKBERRY STORM.

 4    Q     AND YOU INTENTIONALLY DECIDED, IN THOSE

 5    VIDEOS, NOT TO SHOW THE COMPLETE PRODUCT, THE

 6    SAMSUNG TABLET?  THAT WAS YOUR DECISION?

 7    A     WELL, IT WAS MY DECISION BASED ON MY

 8    UNDERSTANDING FROM THE COMPLAINT, THAT -- AND

 9    DISCUSSION WITH COUNSEL, THAT THE FRONT AND THE

10    SIDE VIEWS WAS WHAT MATTERED IN THE TABLET SETTING.

11    Q     AND WITH RESPECT TO THE SAMSUNG PHONES, YOU

12    TESTED JUST TWO OF THE PHONES?

13    A     YES, I TESTED TWO OF THE, WHATEVER THE NUMBER

14    OF PHONES IS.

15    Q     SO, FOR EXAMPLE, YOU DIDN'T TEST THE PHONE

16    THAT MS. KARE SAID HAD A CHIN, THE DROID CHARGE?

17    A     NO, I DIDN'T TEST THAT SPECIFIC DEVICE.

18              MR. PRICE:  THANK YOU, YOUR HONOR.

19              THE COURT:  ALL RIGHT.  THE TIME IS

20    10:19.

21              MR. PRICE:  I'M SORRY.  I MEANT TO MOVE

22    IN THE NOKIA -- I MEAN THE NOOK.

23              MR. JACOBS:  YOUR HONOR, AGAIN, THAT IS

24    LISTED ON THE LIST OF DEMONSTRATIVES.

25              THE COURT:  IS THAT 2526?
```

```
 1              THE COURT:  ALL RIGHT.  OVERRULED.

 2     BY MR. MUELLER:

 3     Q    MR. TEKSLER, IF YOU COULD, PLEASE TURN TO TAB

 4     2 IN YOUR BINDER, AND THIS IS PDX 32.  IF WE COULD

 5     ALSO PUT THAT ON THE SCREEN.

 6              MR. TEKSLER, THIS SHOWS SEVEN PATENT

 7     COVERS.  ARE YOU FAMILIAR WITH THESE PATENTS?

 8     A    I AM.

 9     Q    WHAT ARE THEY?

10     A    THESE ARE THE PATENTS --

11              MS. MAROULIS:  OBJECTION, CALLS FOR

12     OPINION TESTIMONY.  LACKS FOUNDATION.

13              THE COURT:  WHAT ARE YOU ASKING?

14              MR. MUELLER:  I MERELY WANTED TO GET

15     ACROSS THAT THESE ARE THE ASSERTED PATENTS IN THIS

16     CASE.

17              THE COURT:  IS THERE ANY QUESTION ABOUT

18     THAT SO FAR?

19              MR. MUELLER:  I CAN REPHRASE IF YOU -- IF

20     I MIGHT, YOUR HONOR.

21     Q    ARE THESE THE SEVEN ASSERTED PATENTS?

22     A    YES, THEY ARE.

23     Q    WHERE DO THESE FALL, THESE SEVEN PATENTS,

24     WITHIN THE CATEGORIES YOU DESCRIBED EARLIER IN THE

25     APPLE PORTFOLIO?
```

```
 1    A    CERTAINLY.  SO THERE'S FOUR DESIGN PATENTS,

 2    AND ALL FOUR DESIGN PATENTS FALL INTO APPLE'S

 3    UNIQUE USER EXPERIENCE.

 4           AND THEN THE THREE UTILITY PATENTS THAT

 5    ARE LISTED HERE GENERALLY RELATE TO USER INTERFACE

 6    AND FEATURES THAT WE WOULD ALSO PUT IN THAT SAME

 7    CATEGORY OF APPLE'S UNIQUE USER INTERFACE, OR USER

 8    EXPERIENCE.

 9           MR. MUELLER:  THANK YOU, SIR.

10           NO FURTHER QUESTIONS.

11           THE COURT:  ALL RIGHT.  THE TIME IS NOW

12    4:22.
```

**CROSS-EXAMINATION**

```
14    BY MS. MAROULIS:

15    Q    GOOD AFTERNOON, MR. TEKSLER.  HOW ARE YOU?

16    A    GOOD AFTERNOON.

17    Q    MY NAME IS VICTORIA MAROULIS.  I'M COUNSEL FOR

18    SAMSUNG.  AND SEEING HOW IT'S LATE FRIDAY

19    AFTERNOON, I'LL BE VERY BRIEF.

20           YOU TESTIFIED THAT YOU PREPARED A

21    POWERPOINT FOR A MEETING BETWEEN APPLE AND SAMSUNG

22    IN AUGUST 2010.  IS THAT CORRECT?

23    A    I BELIEVE THAT WAS KEY NOTE, BUT YES.

24    Q    AND YOU DIDN'T PERSONALLY ATTEND THE MEETING

25    IN QUESTION; RIGHT?
```

1965

1    A    NO, I DID NOT.

2    Q    YOU CANNOT TELL US FROM YOUR PERSONAL

3    KNOWLEDGE ANYTHING ABOUT THAT MEETING AND WHAT WAS

4    PRESENTED; CORRECT?

5    A    I KNOW THAT THAT WAS PRESENTED.  WE LATER SENT

6    SAMSUNG THE PRESENTATION AND, IN SUBSEQUENT

7    MEETINGS WITH SAMSUNG, WE REFERRED BACK TO THAT

8    PRESENTATION AND TO THE DIALOGUE THAT HAPPENED THAT

9    DAY.  SO THAT'S --

10   Q    BUT FROM PERSONAL KNOWLEDGE, YOU DO NOT KNOW

11   WHAT OCCURRED AT THAT MEETING AND WHAT WAS SHOWN

12   AND WHAT WAS NOT SHOWN; CORRECT?

13   A    OKAY, CERTAINLY.

14   Q    AND THE POWERPOINT PRESENTATION THAT YOU

15   PREPARED IS EXHIBIT 52 IN EVIDENCE; CORRECT?  IF

16   YOU CAN LOOK IN YOUR CROSS-EXAMINATION BINDER AT

17   TAB 52, DO YOU SEE THAT?

18   A    I DO.

19   Q    IF YOU LOOK AT PAGES 12 THROUGH 14, DO YOU SEE

20   A VARIETY OF PATENTS LISTED THERE?

21   A    YES, I DO.

22   Q    OKAY.  AND DO YOU REMEMBER, ON DIRECT, JOE

23   ASKED YOU ABOUT THE SEVEN PATENTS ASSERTED IN THIS

24   CASE; CORRECT?

25   A    YES, THAT'S CORRECT.

1966

```
1    Q    FOUR OF THEM WERE DESIGN PATENTS?

2    A    YES, THAT'S CORRECT.

3    Q    ONE OF THOSE DESIGN PATENT PATENTS WAS D'677;

4    RIGHT?

5    A    I BELIEVE THAT'S CORRECT, YES.

6    Q    THAT PATENT IS NOWHERE IN THIS PRESENTATION;

7    IS THAT CORRECT?

8    A    IT'S NOT ENUMERATED.

9    Q    IT'S NOT MENTIONED AT ALL AS A PATENT, THE

10   D'677; RIGHT?

11   A    SO I THINK WHAT I WOULD SAY IS I AGREE THAT

12   IT'S NOT ENUMERATED IN THE PRESENTATION.

13           WHEN WE WERE PREPARING THE, THE POINTS

14   THAT WE WANTED TO GET ACROSS -- AND I BELIEVE THAT

15   WAS BACK IN SLIDE 17 OF THIS PRESENTATION -- WE DID

16   SAY THAT THERE WAS A REMARKABLE SIMILARITY BETWEEN

17   THE PRODUCTS AND, IN DOING SO, WE DID TALK ABOUT

18   DESIGN PATENTS.

19   Q    SIR, THIS PRESENTATION DOES NOT MENTION THE

20   WORD "DESIGN PATENT" AT ALL; CORRECT?

21   A    I AGREE.

22   Q    AND DESIGN PATENT '087 THAT YOU REVIEWED WITH

23   COUNSEL IS ALSO NOT MENTIONED IN THIS PRESENTATION;

24   IS THAT RIGHT?

25   A    I AGREE.
```

1967

1    Q    AND DESIGN PATENT '889 IS SIMILARLY NOT

2    MENTIONED IN THIS PRESENTATION; CORRECT?

3    A    I AGREE.

4    Q    AND SO IS D'305, THAT IS ALSO NOT MENTIONED IN

5    THE PRESENTATION; RIGHT?

6    A    I AGREE.

7    Q    YOU ALSO LOOKED AT SEVERAL UTILITY PATENTS

8    WITH COUNSEL; IS THAT RIGHT?

9    A    I DID.

10   Q    ONE OF THEM WAS '163 PATENT; CORRECT?

11   A    I BELIEVE THAT'S CORRECT, YES.

12   Q    THAT PATENT IS NOT ENUMERATED ANYWHERE IN THIS

13   PRESENTATION WE JUST LOOK AT; RIGHT?

14   A    THAT'S CORRECT.

15   Q    AND THE '915 PATENT THAT YOU ALSO LOOKED AT IN

16   YOUR DIRECT TESTIMONY IS ALSO NOWHERE MENTIONED;

17   CORRECT?

18   A    THAT'S CORRECT.

19   Q    THIS PRESENTATION THAT YOU PREPARED FOR

20   SAMSUNG DOES NOT HAVE ANY MENTION OF TRADE DRESS;

21   RIGHT?

22   A    AGAIN, I THINK I WOULD PUT IT INTO THE SAME

23   CATEGORY OF BULLET POINTS THAT WE TALKED ABOUT.

24   Q    SIR, YOU'RE A LICENSING PROFESSIONAL.  YOU

25   KNOW WHAT A REGISTERED TRADE DRESS IS; CORRECT?

1968

1    A    I AM, YES.

2    Q    SO NOWHERE IN THIS PRESENTATION IS THERE

3    MENTION OF A REGISTERED TRADE DRESS FOR AN IPHONE;

4    CORRECT?

5    A    I AGREE THAT THERE IS NOT.

6    Q    AND THERE'S NO MENTION OF UNREGISTERED TRADE

7    DRESS FOR IPHONE AS WELL; CORRECT?

8    A    I AGREE THAT IT'S NOT WRITTEN ON THE SLIDES.

9    Q    AND THERE'S NO UNREGISTERED TRADE DRESS FOR

10   IPAD; CORRECT?

11   A    I AGREE.

12   Q    EXHIBIT 52 DOESN'T SAY ANYWHERE THAT APPLE

13   WOULD NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; IS

14   THAT RIGHT?

15   A    I AGREE.

16   Q    AND THE PRESENTATION DOES NOT IDENTIFY ANY

17   UTILITY PATENTS THAT APPLE WOULD NOT LICENSE TO

18   SAMSUNG; IS THAT RIGHT?

19   A    I AGREE.

20   Q    PLEASE TAKE A LOOK AT EXHIBIT DX 586 IN YOUR

21   BINDER.  THIS IS A PRESENTATION THAT YOU MADE TO

22   SAMSUNG IN OCTOBER 2010; CORRECT?

23   A    YES, THAT'S CORRECT.

24   Q    YOU PREPARED IT YOURSELF?

25   A    I DID.

1969

```
 1    Q    AS PART OF DOING BUSINESS AS A LICENSING

 2    OFFICER AT APPLE; CORRECT?

 3    A    YES, THAT'S CORRECT.

 4              MS. MAROULIS:  YOUR HONOR, I MOVE EXHIBIT

 5    586 INTO EVIDENCE.

 6              MR. MUELLER:  NO FURTHER OBJECTIONS, YOUR

 7    HONOR, SUBJECT TO THE LIMITING INSTRUCTION THAT

 8    YOUR HONOR MENTIONED.

 9              THE COURT:  RIGHT.  AND THERE IS A --

10    THIS IS ADMITTED.

11              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12              586, HAVING BEEN PREVIOUSLY MARKED FOR

13              IDENTIFICATION, WAS ADMITTED INTO

14              EVIDENCE.)

15              THE COURT:  YOU MAY CONSIDER THIS -- YOU

16    MAY NOT CONSIDER THIS EVIDENCE TO PROVE OR DISPROVE

17    THE VALIDITY OR INVALIDITY OF THE CLAIM OR THE

18    AMOUNT OF THE DISPUTED CLAIM.

19              HOWEVER, YOU MAY CONSIDER THIS EVIDENCE

20    FOR SOME OTHER PURPOSE, FOR EXAMPLE, WHETHER OR NOT

21    SAMSUNG LACKED NOTICE OF APPLE'S INFRINGEMENT

22    CLAIMS.

23              OKAY.  GO AHEAD, PLEASE.

24    BY MS. MAROULIS:

25    Q    MR. TEKSLER, NOWHERE IN EXHIBIT 586 DOES APPLE
```

1   IDENTIFY ANY PATENTS; CORRECT?

2   A    THAT'S CORRECT.

3   Q    AND NOWHERE IN THIS WRITTEN PRESENTATION DOES

4   IT SAY THAT APPLE WOULD NOT LICENSE ITS DESIGN

5   PATENTS TO SAMSUNG; CORRECT?

6   A    I'M NOT SURE THAT I AGREE WITH THAT.  I KNOW

7   THAT WE TALKED ABOUT THAT AND THAT THERE WAS A

8   SPECIFIC BULLET, I BELIEVE, ON ONE OF THE PAGES

9   THAT ADDRESSED THAT.

10   Q    SIR, I'M NOT ASKING YOU ABOUT THE MEETING

11   ITSELF.  I'M ASKING YOU ABOUT THE PRESENTATION.

12   NOWHERE IN THIS DOCUMENT, 586, IS THERE A STATEMENT

13   THAT APPLE WOULD NOT LICENSE DESIGN PATENTS TO

14   SAMSUNG?

15   A    I THINK THERE IS A BULLET IN HERE THAT SAYS

16   SPECIFIC APPLE PROPRIETARY FEATURES TO BE

17   DISCUSSED.

18           AND IN THAT CONSTRUCT, WE TALKED ABOUT

19   NOT HAVING THE ABILITY TO CLONE OUR PRODUCTS.

20   Q    AGAIN, WITHIN THE CONTEXT OF THIS

21   PRESENTATION, THERE'S NO STATEMENT THAT APPLE WOULD

22   NOT LICENSE ITS DESIGN PATENTS TO SAMSUNG; CORRECT?

23   A    I AGREE.

24   Q    AND NOWHERE IN THIS DOCUMENT DOES APPLE SAY

25   THAT IT WOULD NOT LICENSE CERTAIN UTILITY PATENTS

```
1     TO SAMSUNG; CORRECT?

2     A    SUBJECT TO THE SAME, YOU KNOW, POINT THAT I

3     MADE EARLIER, YES.

4     Q    LET'S PUT UP 586, PAGE 13, PLEASE.

5          AT THE TOP OF THE PAGE, IT SAYS "WE WILL

6     PROVIDE SAMSUNG WITH A NUMBER OF OPTIONS FOR

7     OBTAINING A COST-EFFECT LICENSE TO OUR PATENT

8     PORTFOLIO."

9          DID I READ THIS CORRECTLY?

10    A    YES, THAT'S CORRECT.

11    Q    AND THIS REFERS TO LICENSING PATENT PORTFOLIO;

12    RIGHT?

13    A    YES, THAT'S CORRECT.

14    Q    IT DOES NOT SAY "PATENT PORTFOLIO EXCEPT

15    DESIGN PATENTS."  CORRECT?

16    A    NO, I AGREE THE SLIDE DOESN'T SAY THAT.

17    Q    AND IT DOESN'T SAY "EXCEPT FOR CERTAIN UTILITY

18    PATENTS."  CORRECT?

19    A    THAT'S CORRECT.

20    Q    IN EXHIBIT 586, APPLE PROPOSED CERTAIN

21    DISCOUNTS ON THE LICENSE FEES BASED ON CERTAIN

22    ELEMENTS; CORRECT?

23    A    YES, THAT'S CORRECT.

24    Q    AND ONE OF THOSE ELEMENTS WERE PROPRIETARY,

25    SO-CALLED PROPRIETARY FEATURES?
```

1

2

3

4                    <u>CERTIFICATE OF REPORTER</u>

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21                    /S/

                 _____

22               LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595

23

24                    DATED:  AUGUST 11, 2012

25