# Estrich Declaration

# Exhibit 8

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5

6    APPLE INC., A CALIFORNIA     )  C-11-01846 LHK
     CORPORATION,                 )
                                  )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,        )
                                  )  AUGUST 14, 2012
8          VS.                    )
                                  )  VOLUME 8
9    SAMSUNG ELECTRONICS CO.,     )
     LTD., A KOREAN BUSINESS      )  PAGES 2321-2650
10   ENTITY; SAMSUNG              )
     ELECTRONICS AMERICA,         )
11   INC., A NEW YORK             )
     CORPORATION; SAMSUNG         )
12   TELECOMMUNICATIONS           )
     AMERICA, LLC, A DELAWARE     )
13   LIMITED LIABILITY            )
     COMPANY,                     )
14                                )
                DEFENDANTS.       )
15   _____

16           TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE

18

19

20         APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24                            IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074
25

```
 1    A P P E A R A N C E S:

 2    FOR PLAINTIFF        MORRISON & FOERSTER
      APPLE:                   BY:  HAROLD J. MCELHINNY
 3                                  MICHAEL A. JACOBS
                                    RACHEL KREVANS
 4                            425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 5
      FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
 6    APPLE:              HALE AND DORR
                              BY:  WILLIAM F. LEE
 7                            60 STATE STREET
                             BOSTON, MASSACHUSETTS  02109
 8
                              BY:  MARK D. SELWYN
 9                            950 PAGE MILL ROAD
                             PALO ALTO, CALIFORNIA  94304
10
      FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
11                         OLIVER & HEDGES
                              BY:  CHARLES K. VERHOEVEN
12                            50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
13
                              BY:  VICTORIA F. MAROULIS
14                                 KEVIN P.B. JOHNSON
                             555 TWIN DOLPHIN DRIVE
15                           SUITE 560
                             REDWOOD SHORES, CALIFORNIA  94065
16
                              BY:  MICHAEL T. ZELLER
17                                 WILLIAM C. PRICE
                             865 SOUTH FIGUEROA STREET
18                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
19
      FOR INTEL:           PERKINS COIE
20                            BY:  DANIEL T. SHVODIAN
                             3150 PORTER DRIVE
21                           PALO ALTO, CALIFORNIA 94304

22
      INTERPRETERS:        JAMES YIM VICTORY
23                         ALBERT S. KIM
                           ANN PARK
24

25
```

1

                         INDEX OF WITNESSES

2


3    DEFENDANT'S


4

     **CLIFTON FORLINES**
5          DIRECT EXAM BY MR. JOHNSON          P. 2349
           CROSS-EXAM BY MR. JACOBS            P. 2367
6

7    **WOODWARD YANG**
           DIRECT EXAM BY MR. JOHNSON          P. 2373
8          CROSS-EXAM BY MR. LEE               P. 2436
           REDIRECT EXAM BY MR. JOHNSON        P. 2485
9          RECROSS-EXAM BY MR. LEE             P. 2490

10

11   **JINYEUN WANG**
           DIRECT EXAM BY MR. QUINN            P. 2522
           CROSS-EXAM BY MR. JACOBS            P. 2541
12         REDIRECT EXAM BY MR. QUINN          P. 2549

13   **ROGER FIDLER**
           BY VIDEOTAPED DEPOSITION            P. 2558
14                                             P. 2565

15   **ITAY SHERMAN**
           DIRECT EXAM BY MR. VERHOEVEN        P. 2573
16         CROSS-EXAM BY MS. KREVANS           P. 2611

17

18

19

20

21

22

23

24

25

```
1    INTERROGATORIES.  IT'S NOT IN THE EXPERT REPORT.

2             THE COURT:  HE CAN'T GIVE ANY NEW -- I

3    AGREE WITH MR. LEE THAT WHAT'S IN HIS EXPERT REPORT

4    AND WHAT HE SAID DURING HIS DEPOSITION WAS VERY

5    CONCLUSORY AND DIDN'T SPECIFICALLY IDENTIFY EITHER

6    THE APPLET OR THE APPLICATION MODULE.

7             SO HE CAN'T NOW UNDO WHAT HE DID IN HIS

8    EXPERT REPORT OR IN HIS DEPOSITION TESTIMONY.  SO

9    THAT'S WHY IT WAS STRICKEN.

10            BUT THE ONE QUESTION THAT YOU'VE RAISED

11   NOW WILL BE ALLOWED.  OKAY?

12            MR. JOHNSON:  YOUR HONOR, I WOULD JUST

13   ASK, HIS EXPERT REPORT --

14            THE COURT:  ALL RIGHT.  NOW I'M DOCKING

15   TIME.  GO AHEAD.  I'M DOCKING TIME.  IT'S 10:30.

16   GO AHEAD.  I RULED ON THIS SUNDAY NIGHT FOR

17   RECONSIDERATION YESTERDAY.  GO FOR IT.  10:35.  THE

18   TIME IS TICKING.  GO AHEAD.

19            MR. JOHNSON:  I DON'T HAVE ANYTHING

20   FURTHER.

21            THE COURT:  GO AHEAD.  I'M ALL EARS.

22            MR. JOHNSON:  GO AHEAD.

23            THE COURT:  10:35.

24            SO WHAT ELSE, DO YOU WANT TO KEEP

25   FIGHTING ON THIS OR DO YOU WANT TO GO TO TRIAL?
```

```
1      I'M TALKING TO BOTH SIDES HERE.

2                MR. LEE:  WE'RE READY TO GO.

3                MR. JOHNSON:  WE'RE READY TO GO.

4                THE COURT:  ALL RIGHT.

5                (WHEREUPON, A RECESS WAS TAKEN.)

6                (WHEREUPON, THE FOLLOWING PROCEEDINGS

7      WERE HELD OUT OF THE PRESENCE OF THE JURY:)

8                THE COURT:  SO NEITHER INTEL NOR SAMSUNG

9      FILED ANYTHING.  I GOT THE SELWYN DECLARATION

10     WITH -- PLEASE SIT DOWN -- THAT ATTACHES THE

11     E-MAILS AND OTHER EXPERTS BEING DISCLOSED IN MARCH

12     OF THIS YEAR.

13               WHAT'S HAPPENING WITH THAT?  I SAID TO

14     FILE IT BY 10:30.

15               MR. SHVODIAN:  YOUR HONOR, WE'RE HAVING

16     IT PRINTED RIGHT NOW.  BUT I CAN LET YOU KNOW,

17     INTEL HAS DECIDED THAT THEY WILL REQUEST SANCTIONS

18     AND AN ORDER OF CONTEMPT, BUT ARE NOT GOING TO

19     REQUEST THAT DR. WILLIAMS BE PRECLUDED FROM

20     TESTIFYING.

21               THE COURT:  I WAS NEVER GOING TO GRANT

22     THAT.

23               MR. SHVODIAN:  OKAY.

24               THE COURT:  THAT'S AN EXTREME AND

25     UNWARRANTED SANCTION, AND IT WOULD BE OVERLY
```

1    PREJUDICIAL.

2            MR. SHVODIAN:  OKAY.  THE PAPERS ARE

3    BEING COPIED NOW AND WILL BE ELECTRONICALLY FILE.

4            THE COURT:  WHAT I WAS GOING TO SUGGEST

5    IS WHATEVER IT IS, WE'LL JUST DEAL WITH IT LATER.

6    WE'RE NOT GOING TO DEAL WITH IT RIGHT NOW.

7            MR. SHVODIAN:  THANK YOU, YOUR HONOR.

8            THE COURT:  ALL RIGHT.  WHATEVER YOU'RE

9    GOING TO FILE, IT SHOULD STILL BE FILED, AND WE'LL

10   TAKE CARE OF IT LATER.

11           OKAY.

12           MR. JOHNSON:  SO, YOUR HONOR, THE

13   QUESTION THAT I'M GOING TO ASK --

14           THE COURT:  IT'S 10:52, GO AHEAD.

15           MR. JOHNSON:  -- IS DID YOU LOOK AT THE

16   SOURCE CODE TO CONFIRM THAT THE DEVICES HAD THIS

17   ELEMENT?  THAT'S RIGHT OUT OF THE PROFFER.  THAT'S

18   THE ONE AND ONLY QUESTION I'LL ASK.

19           THE COURT:  THAT'S FINE.  YOU'LL JUST

20   HAVE TO CROSS HIM ON IT.

21           MR. JOHNSON:  AND THEN CAN I MOVE 645

22   INTO EVIDENCE?

23           THE COURT:  WHAT IS 645?

24           MR. JOHNSON:  THAT'S THE SOURCE CODE.

25           THE COURT:  THAT'S FINE.

1        ALL RIGHT.  LET'S BRING IN THE JURY.

2            (WHEREUPON, THE FOLLOWING PROCEEDINGS

3    WERE HELD IN THE PRESENCE OF THE JURY:)

4            THE COURT:  ALL RIGHT.  PLEASE TAKE A

5    SEAT.  IT'S 10:53.  GO AHEAD, PLEASE.

6            MR. JOHNSON:  RYAN, CAN WE BRING UP SDX

7    3967.034.

8    Q    DR. YANG, DID YOU LOOK AT THE SOURCE CODE IN

9    EXHIBIT DX 645 TO CONFIRM THE ACCUSED DEVICES HAD

10   THIS ELEMENT?

11   A    YES, I DID.

12           MR. JOHNSON:  YOUR HONOR, WE ASK THAT DX

13   645 BE MOVED INTO EVIDENCE.

14           MR. LEE:  NOTHING MORE THAN THE OBJECTION

15   PREVIOUSLY SUBMITTED.

16           THE COURT:  UNDERSTOOD.  THAT'S ADMITTED.

17           (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

18           645, HAVING BEEN PREVIOUSLY MARKED FOR

19           IDENTIFICATION, WAS ADMITTED INTO

20           EVIDENCE.)

21           MR. JOHNSON:  YOUR HONOR, WE ALSO ASK

22   THAT EXHIBIT 3967.012, WHICH WAS THE VIDEO THAT WAS

23   USED ON THE '460 PATENT, ALSO BE MOVED INTO

24   EVIDENCE.

25           THE COURT:  012, I THOUGHT THAT WAS

```
1    ALREADY ADMITTED.  THAT'S CLAIM 1 OF THE PRODUCTS

2    REGARDING THE '460.

3              MR. JOHNSON:  YEAH.  THERE WAS SOME

4    DEBATE AS TO WHETHER IT WAS ADMITTED OR NOT.

5              THE COURT:  OKAY.

6              MR. JOHNSON:  IT'S 3967.012.

7              THE COURT:  THAT'S ADMITTED.  IS THAT THE

8    ONE YOU'RE ASKING ABOUT?

9              MR. JOHNSON:  YES.

10             THE COURT:  THAT'S ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             3967.012, HAVING BEEN PREVIOUSLY MARKED

13             FOR IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15             MR. JOHNSON:  AND THEN ALSO THE

16   DEMONSTRATIVES THAT WERE REFERRED TO IN DR. YANG'S

17   DIRECT, 3967.002 THROUGH 43, JUST THE INDIVIDUAL

18   SLIDES, NOT THE VIDEOS.  EVERYTHING EXCEPT SLIDE 16

19   AND 29 IN THAT RANGE.  THEY WERE ALL REFERRED TO.

20             THE COURT:  HANG ON ONE SECOND.  002 IS

21   HIS C.V.  I HAVE NOT BEEN ADMITTING THAT FOR

22   ANYBODY.

23             MR. JOHNSON:  THAT SHOULDN'T BE ON THERE,

24   THEN.  003 -- IT SHOULD START AT 003.

25             THE COURT:  003 IS JUST THE PATENTS WITH
```

2435

```
1    THE DESCRIPTION OF THE PATENTS, I MEAN THE PATENTS

2    THEMSELVES ARE IN.

3              ANYWAY, IS THERE ANY OBJECTION TO THE --

4              MR. LEE:  NO.

5              THE COURT:  NO?  ALL RIGHT.  IF YOU WANT

6    THE C.V. IN --

7              MR. LEE:  TO THE C.V., YES.

8              MR. JOHNSON:  WE DON'T NEED THE C.V.

9              MR. LEE:  NOT TO THE DEMONSTRATIVES OF

10   THE PATENTS.

11             THE COURT:  SO 3967.003 IS IN, WHICH IS

12   THE COVER OF THE PATENTS.  005 AS WELL, IS THAT

13   WHAT YOU'RE REQUESTING?

14             MR. JOHNSON:  YES, FOR 005 --

15             THE COURT:  I DON'T HAVE 004.  WHICH ONE

16   WAS THAT?

17             MR. JOHNSON:  YOUR HONOR, JUST IN THE

18   INTEREST OF TIME, SINCE WE ALREADY HAVE THE VIDEOS

19   IN, I'M JUST GOING TO STICK WITH THE VIDEOS AT THIS

20   POINT.

21             THE COURT:  ALL RIGHT.  003 IS ADMITTED

22   AND 005 IS ADMITTED.

23             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS

24             3967.003 AND 3967.005, HAVING BEEN

25             PREVIOUSLY MARKED FOR IDENTIFICATION,
```

1           WERE ADMITTED INTO EVIDENCE.)

2           MR. JOHNSON:  OKAY.  YOUR HONOR, I PASS

3      THE WITNESS.  NO FURTHER QUESTIONS.

4           THE COURT:  OKAY.  THE TIME IS 10:56.  GO

5      AHEAD.

6           MR. LEE:  YOUR HONOR, THE BINDERS ARE ON

7      THEIR WAY.  MAY I PROCEED, YOUR HONOR?

8           THE COURT:  GO AHEAD.

9                     **CROSS-EXAMINATION**

10     BY MR. LEE:

11     Q    GOOD MORNING, DR. YANG.

12          GOOD MORNING, LADIES AND GENTLEMEN.

13          DR. YANG, YOU TESTIFIED ABOUT THREE

14     PATENTS, THE '460; CORRECT?

15     A    YES.

16     Q    THE '893; CORRECT?

17     A    YES.

18     Q    THE '711; CORRECT?

19     A    YES.

20     Q    I'M GOING TO ASK YOU ABOUT EACH OF THEM

21     INDIVIDUALLY, BUT LET'S SEE IF WE CAN AGREE UPON A

22     FEW THINGS THAT ARE TRUE FOR ALL THREE OF THESE

23     PATENTS.  OKAY?

24     A    OKAY.

25     Q    FIRST, THERE ARE SIX NAMED INVENTORS ON ALL

```
1    DESIGNER.

2              THE INTERPRETER:  THAT IS CORRECT, YOUR

3    HONOR.

4              JUROR:  OKAY.

5              THE COURT:  ANY OTHER THINGS?

6              JUROR:  NOT AT THIS TIME.

7              THE COURT:  OKAY.  ALL RIGHT.

8         OKAY.  IT'S 1:36.  GO AHEAD, PLEASE.

9              MR. QUINN:  THANK YOU, YOUR HONOR.

10   Q    MS. WANG, WE'VE HEARD TESTIMONY FROM APPLE

11   WITNESSES ABOUT HOW HARD THEY WORKED TO BRING THE

12   IPHONE TO MARKET.

13             DID YOU -- WOULD YOU TELL US WHAT IT WAS

14   LIKE WORKING ON THE GALAXY PHONE, THE DESIGN

15   ASPECTS FOR THE USER EXPERIENCE THAT YOU WORKED ON?

16   A    YES, I CAN.  SAMSUNG IS A COMPANY THAT'S VERY

17   TOUGH TO WORK AT AND IN KOREA.  IT'S A VERY HARD

18   WORKING TYPE OF COMPANY.  ANYWAY, WHEN WE WERE

19   DESIGNING GALAXY SI, WE HAD PEOPLE FROM SEOUL AND

20   ALSO FROM SUWON, AND ALSO FROM GUMI.  THE PEOPLE

21   FROM SUWON, THERE WERE HUNDREDS OF DEVELOPERS, AND

22   ALSO PEOPLE FROM GUMI, THERE WERE MULTIPLE OF TENS

23   WHO WERE INVOLVED IN VERIFICATIONS.

24             SO WITH ALL THOSE PEOPLE COMING FROM

25   DIFFERENT PLACES.  THERE WAS AT ONE POINT WHERE WE
```

```
1    HAD ALL COME TOGETHER AND WORKED TOGETHER AS A TEAM

2    FOR ABOUT THREE MONTHS AND DURING THAT TIME PERIOD

3    OF THREE MONTHS, MY RECOLLECTION WOULD BE THAT I

4    SLEPT PERHAPS TWO HOURS OR THREE HOURS A NIGHT.

5    THAT WAS ABOUT IT.

6           AND ALSO DURING THAT TIME PERIOD, I

7    ACTUALLY ENCOUNTERED SOMETHING THAT WAS VERY

8    DIFFICULT FOR ME.  BACK THEN I HAD JUST GIVEN BIRTH

9    TO A NEWBORN, AND I WAS FEEDING MOTHER'S MILK TO

10   THE BABY.  BUT SINCE I WASN'T ABLE TO BE WITH THE

11   BABY SO MUCH, I HAD TO SAVE THE BREAST MILK.

12          BUT IT JUST HAPPENED THAT I WASN'T ABLE

13   TO DO THAT ON A CONSISTENT BASIS.  SO MY

14   RECOLLECTION WAS THAT THE BREAST FEEDING HAD TO

15   COME TO A STOP BECAUSE I HAD -- MY BODY WOULD NOT

16   GIVE MILK ANY MORE.

17   Q    SO IT WAS A DEVELOPING, THE USER INTERFACE,

18   THE ICONS, THAT MENU PAGE, WAS THAT A VERY INTENSE

19   PERIOD OF HARD WORK FOR YOU?

20   A    THAT'S CORRECT.  THOSE WERE DIFFICULT TIMES.

21   Q    LET'S TALK ABOUT SOME -- LET'S TALK ABOUT

22   ICONS AND ICON DESIGN.

23          WHAT FACTORS DO YOU CONSIDER MOST

24   IMPORTANT IN DESIGNING AN EFFECTIVE ICON?

25   A    THERE ARE A FEW THINGS THAT'S IMPORTANT WHEN
```

1    IT COMES TO DESIGNING AN ICON.  THE FIRST THING

2    THAT COMES TO MIND IS THAT WHEN A USER IS LOOKING

3    AT AN ICON, THE USER SHOULD BE ABLE TO RECOGNIZE IT

4    AS SUCH RIGHT AWAY.

5              AND, SECONDLY, THE COLOR AND THE SHAPE

6    ARE ALSO IMPORTANT IN THAT THEY SHOULD BE GOOD OR

7    PRETTY TO LOOK AT.

8              AND ALSO, EASILY -- EASY TO GRASP.

9              THIRDLY, IT HAS TO BE SOMETHING THAT HAS

10   TO BE EASILY MEMORIZED OR MEMORABLE.

11   Q    AND WHEN YOU'RE DESIGNING -- I'M SORRY.  IS

12   THERE A CORRECTION?

13             THE INTERPRETER:  NO, YOUR HONOR.  NO,

14   SIR.

15   BY MR. QUINN:

16   Q    ARE THERE ADDITIONAL SPECIAL CONSIDERATIONS

17   THAT HAVE TO BE TAKEN INTO ACCOUNT WHEN YOU DESIGN

18   AN ICON THAT'S GOING TO BE USED ON A TOUCHSCREEN?

19   A    YES, OF COURSE.  WHEN IT COMES TO TOUCHSCREEN,

20   IT HAS TO BE A CERTAIN AMOUNT OR A CERTAIN PART OF

21   THE SCREEN THAT WOULD ALLOW FOR THE TOUCHING TO

22   TAKE PLACE.

23             AND SO THERE HAS TO BE A CERTAIN SIZE,

24   SHALL WE SAY, AND ALSO THERE HAS TO BE A VIVID

25   COLOR THAT IS AVAILABLE FOR THE USER SO THE USER

2533

```
1    WILL BE ABLE TO RECOGNIZE THE AREA AND USE THEIR

2    FINGER TO TOUCH.

3    Q    LET'S TAKE A LOOK AT AN ICON.  WE DON'T HAVE

4    TIME TO GO THROUGH VERY MANY OF THEM, BUT IF WE

5    COULD PUT UP, YOUR HONOR, DEMONSTRATIVE 3972.012,

6    3972.012, THE MENU SCREEN FOR THE GALAXY S, AND

7    LET'S JUST BEGIN WITH THAT PHONE ICON IN THE LOWER

8    LEFT.

9              ARE YOU THE ONE THAT SELECTED THIS ICON

10   FOR USE ON THE GALAXY PHONE?

11   A    YES, THAT IS CORRECT.

12   Q    WHY DID YOU CHOOSE THIS ONE?

13             MR. JACOBS:  YOUR HONOR, OBJECTION.

14   PRIOR DISCUSSION.  YOU WILL SEE AT PAGE 18.

15             THE COURT:  OVERRULED.

16             GO AHEAD.

17             THE WITNESS:  WELL, I DESIGNED IT AS SUCH

18   BECAUSE IT'S A PHONE, SO I DESIGNED IT AS A PHONE.

19   THE SAME GOES WITH THE CLOCK, AND ALSO THE CAMERA.

20   BY MR. QUINN:

21   Q    HAVE YOU, IN THE PAST, HAS SAMSUNG

22   EXPERIMENTED WITH OTHER ICONS FOR PHONE ON

23   TELEPHONES?

24   A    YES, WE HAVE.

25   Q    AND WHAT OTHER ICONS HAVE YOU USED FOR PHONES
```

2534

```
 1    AND WHAT WAS YOUR EXPERIENCE WITH THEM?

 2    A    YES.  WELL, WE HAVE TRIED QUITE A FEW

 3    DIFFERENT ICONS AND THERE WERE EVEN CERTAIN

 4    DIRECTIVES COMING FROM UP ABOVE TELLING US TO COME

 5    UP WITH SOMETHING OF A DESIGN THAT'S MORE

 6    SOPHISTICATED, SOMETHING THAT LOOKS MORE LIKE A

 7    SMARTPHONE.

 8              SO WE TRIED DIFFERENT ICONS.  FOR

 9    EXAMPLE, WE TRIED AN ICON THAT LOOKED LIKE A CELL

10    PHONE WITH AN ANTENNA, AND THEN WE ALSO TRIED AN

11    ICON THAT LOOKED MORE LIKE A SMARTPHONE.

12              BUT WHAT HAPPENED WAS THAT THE PEOPLE

13    WOULD ACTUALLY MISTAKE THESE ICONS.  SOME PEOPLE

14    THOUGHT THIS WAS A GAME OR MAYBE A PDA OR EVEN A

15    CALCULATOR.  SO WE HAD SOME PROBLEMS.

16    Q    HOW LONG HAS SAMSUNG USED THIS PARTICULAR TYPE

17    OF MA BELL, WE'VE HEARD IT CALLED A MA BELL, I

18    DON'T KNOW IF THAT TRANSLATES INTO KOREAN, ICON ON

19    PHONES.

20              MR. JACOBS:  OBJECTION, YOUR HONOR.

21    LEADING.  HE'S GIVING THE WITNESS A NAME FOR THIS.

22              THE COURT:  SUSTAINED.  SUSTAINED.

23    THAT'S STRICKEN.

24    BY MR. QUINN:

25    Q    DO YOU HAVE A NAME THAT YOU USE FOR THIS
```

1    PARTICULAR TYPE OF ICON FOR A PHONE?

2    A    YEAH.  IN OUR DESIGN TEAM, WE CALLED IT A MA

3    BELL.

4              THE INTERPRETER:  YOUR HONOR, CORRECTION.

5              THE WITNESS:  IN OUR DESIGN TEAM, WE

6    CALLED IT A DUMBBELL ICON.

7    BY MR. QUINN:

8    Q    AND HOW LONG HAS SAMSUNG USED THIS DUMBBELL

9    STYLE ICON ON THE PHONES?

10             THE INTERPRETER:  YOUR HONOR, MAY THE

11   WITNESS REPEAT HER ANSWER?

12             THE COURT:  PLEASE.

13             THE WITNESS:  THAT ICON WAS IN USE EVEN

14   BEFORE I HAD JOINED THE COMPANY IN 2002.  AND THIS

15   WAS USED BY SAMSUNG.  I'M SAYING THAT THE DUMBBELL

16   SHAPE HAD BEEN USED IN SAMSUNG EVEN PRIOR TO 2002.

17   BY MR. QUINN:

18   Q    AND IT'S GREEN, OBVIOUSLY.  DOES THE COLOR

19   GREEN HAVE ANY SIGNIFICANCE FROM A DESIGN

20   STANDPOINT IN THIS ICON?

21   A    YES.  WELL, THE GREEN WOULD HAVE A POSITIVE

22   CONNOTATION TO IT, MEANING GO OR DO OR MAKE THE

23   CALL.

24             LIKEWISE, A RED COLOR WOULD BE SOMETHING

25   LIKE "DON'T" OR "STOP" TYPE OF INFORMATION.

1           SO IN ORDER TO TELL THE USER TO MAKE THE

2    CALL OR ENABLE THE USER TO MAKE THE CALL, OF COURSE

3    IT HAS TO BE GREEN.

4    Q     AND ARE YOU FAMILIAR -- ARE YOU FAMILIAR WITH

5    THE CONCEPT OF A VISUAL LANGUAGE?

6    A     YES, I AM VERY WELL AWARE.

7    Q     WHAT DOES A VISUAL LANGUAGE, WHAT DOES THAT

8    MEAN TO YOU AS AN ICON DESIGNER?

9    A     VISUAL LANGUAGE WOULD MEAN TELLING THE PERSON

10   USING A PICTURE BY LOOKING AT A PICTURE OR AN ART,

11   ONE WOULD BE ABLE TO DISTINCTIVELY TELL WHAT IT

12   MEANS.

13           FOR EXAMPLE, A RESTROOM SIGN FOR THAT

14   WOULD BE A VISUAL COMMUNICATION, EVEN AN AIRPORT, A

15   SIGN FOR THAT, THAT WOULD ALSO BE A VISUAL

16   COMMUNICATION.

17   Q     AND IN THE SMARTPHONE INDUSTRY, DO YOU SEE THE

18   DEVELOPMENT OF A VISUAL LANGUAGE FOR ICONS?

19           MR. JACOBS:  OBJECTION.  LEADING AN

20   EXPERT.

21           THE COURT:  SUSTAINED.

22   BY MR. QUINN:

23   Q     ARE THERE OTHER SMARTPHONE COMPANIES THAT USE

24   A SIMILAR IMAGE OF A HANDSET FOR A TELEPHONE?

25           MR. JACOBS:  SAME OBJECTION, YOUR HONOR.

```
 1                THE COURT:  LAY A FOUNDATION, PLEASE.

 2    BY MR. QUINN:

 3    Q    AS PART OF YOUR JOB, DO YOU PAY ATTENTION TO

 4    WHAT ICONS OTHER COMPANIES ARE USING?

 5    A    NOT ONLY THE OTHER COMPANIES, I WOULD ALSO

 6    LOOK AT THE ICONS THAT COME UP ON THE WEBSITES OR

 7    WEBS, AND ALSO AIRPORT SIGN SYSTEMS, THINGS LIKE

 8    THAT.  SO I WOULD PAY ATTENTION TO ALL THESE

 9    THINGS.

10    Q    AND WHY IS -- IS THERE A REASON WHY THE

11    HANDSET IS TILTED AT AN ANGLE?

12    A    WELL, AS I'VE INDICATED TO YOU EARLIER, THIS

13    IS FOR A TOUCHSCREEN, SO THERE HAS TO BE A CERTAIN

14    AMOUNT OF AREA THAT IS ALLOTTED FOR THE USER TO

15    ACTUALLY ACCESS THIS TYPE OF FUNCTION.

16               SO IT COULD NOT BE SOMETHING THAT IS MORE

17    OF A HORIZONTAL TYPE OF BOX OR SOMETHING THAT'S

18    MORE VERTICAL BECAUSE TO DO SO WOULD MEAN THAT

19    THERE WOULD NOT BE EITHER ENOUGH SPACE OR TOO MUCH

20    SPACE FOR THE FINGER TOUCHING.

21               AND ALSO, IT'S LEANING A LITTLE BIT

22    BECAUSE THAT'S HOW PEOPLE MAKE PHONE CALLS.  WHEN

23    YOU MAKE A PHONE CALL AND SAY HELLO, WHEN YOU PICK

24    IT UP, YOU WOULD PICK IT UP AT AN ANGLE AND YOU

25    WOULD END THE PHONE CALL BY PLACING IT IN THIS
```

```
1    A    SLIGHT CURVATURE.

2    Q    SLIGHT CURVATURE AT THE VERY TOP AND BOTTOM OF

3    THE FRONT FACE.

4              DOES THAT -- IS THERE ANY CURVATURE ON

5    THE FRONT FACE KR-547?

6    A    NO, IT'S ENTIRELY FLAT.

7    Q    OKAY.  AND, AGAIN, THIS SIDE VIEW HERE THAT WE

8    WERE SEEING IS IRRELEVANT TO YOUR ANALYSIS?  IS

9    THAT RIGHT?

10   A    IT IS IRRELEVANT AGAIN SINCE THE '677 AND '087

11   DO NOT CLAIM THE SIDE VIEWS.

12             MR. VERHOEVEN:  YOUR HONOR, MAY I

13   APPROACH THE WITNESS WITH A PHYSICAL EXHIBIT?

14             THE COURT:  PLEASE, GO AHEAD.

15   BY MR. VERHOEVEN:

16   Q    I'M GOING TO HAND YOU PHYSICAL EXHIBIT JX

17   1093, WHICH ARE ALREADY IN EVIDENCE.

18             MS. KREVANS:  MAY I SEE THIS, YOUR HONOR?

19   BY MR. VERHOEVEN:

20   Q    DO YOU RECOGNIZE JX 1093?

21   A    YES, THIS IS THE LG PRADA.

22   Q    LET'S PUT UP 3970.08, WHICH ARE PHOTOGRAPHS OF

23   THE PRADA SO THE JURY CAN SEE.  ARE THOSE

24   PHOTOGRAPHS OF WHAT YOU HAVE IN YOUR HAND, SIR?

25   A    YES.
```

```
 1    Q    DO YOU KNOW WHEN THE LG PRADA WAS DISCLOSED

 2    PUBLICLY?

 3    A    IT WAS DISCLOSED IN LATE 2006.

 4    Q    HOW DO YOU KNOW THAT?

 5    A    I READ ARTICLES ON THE FACT THAT --

 6              MS. KREVANS:  OBJECTION, YOUR HONOR, THIS

 7    IS BEYOND THE SCOPE OF THE REPORT.

 8              THE COURT:  CAN YOU GIVE ME THE PARAGRAPH

 9    NUMBER OR THE PAGE NUMBER?  I HAVE HIS REPORT IN

10    FRONT OF ME.

11              MR. VERHOEVEN:  AT PAGE 60, PARAGRAPH 2.

12              MS. KREVANS:  PAGE 60, PARAGRAPH 2, YOUR

13    HONOR, WAS STRUCK.  AND IN ADDITION, IT IS NOT --

14    IT DOES NOT RELATE TO ANY OF THE EVIDENCE THAT THE

15    WITNESS JUST CITED.

16              THE COURT:  LET ME SEE YOUR PAGE 60,

17    PARAGRAPH 2, PLEASE, BECAUSE I HAVE THE OPENING

18    EXPERT REPORT.  WHAT ARE YOU ALL REFERRING TO?

19    REBUTTAL?

20              MS. KREVANS:  I THINK THAT MR. SHERMAN

21    GAVE ONLY ONE REPORT, YOUR HONOR, ON THE TOPIC OF

22    INVALIDITY.

23              THE COURT:  OH, I HAVE THIS.  I'M SORRY.

24    MINE DOESN'T HAVE NUMBERED PARAGRAPHS.

25              (PAUSE IN PROCEEDINGS.)
```

```
 1              THE COURT:  I DON'T SEE HERE ABOUT THE

 2    DATES OF THE --

 3              MR. VERHOEVEN:  YOUR HONOR, IF I COULD

 4    APPROACH.

 5              THE COURT:  -- DEVICE.  OKAY.  I SEE IT.

 6    GO AHEAD.

 7              MR. VERHOEVEN:  THANK YOU.

 8              MS. KREVANS:  YOUR HONOR, I DIDN'T OBJECT

 9    WHEN HE ASKED HIM IF HE THOUGHT HE KNEW WHEN IT WAS

10    RELEASED.  IT WAS THE SUBSEQUENT QUESTION THAT I

11    OBJECTED TO, AND IF YOU LOOK AT THE ANSWER ON YOUR

12    LIVE NOTE, YOU WILL SEE WHY, BECAUSE WHAT THE

13    WITNESS WAS TRYING TO SAY IS NOT IN THIS DOCUMENT.

14              THE COURT:  THAT IS CORRECT.  ALL RIGHT.

15    WHY DON'T YOU --

16              MR. VERHOEVEN:  YOUR HONOR, HE --

17              THE COURT:  IT'S ALSO HEARSAY, RIGHT?

18              MR. VERHOEVEN:  I'M TOLD THAT HE CITES

19    ARTICLES TO THIS EFFECT IN THE MATERIALS THAT ARE

20    CITED IN THE REPORT.

21              THE COURT:  WELL, IT'S NOT ON PAGE 60.

22              MS. KREVANS:  AND THEY'RE NOT IN

23    EVIDENCE, YOUR HONOR, AND THEY WERE STRUCK BY A

24    PRIOR RULING OF THIS COURT.

25              THE COURT:  ANYWAY, HE CAN CERTAINLY SAY
```

```
 1    WHEN HE THOUGHT IT WAS RELEASED.

 2              MR. VERHOEVEN:   OKAY.   LET'S DO THAT IN

 3    THE INTEREST OF TIME.

 4    Q    WHAT'S YOUR OPINION AS TO WHEN THE LG PRADA

 5    WAS DISCLOSED PUBLICLY?

 6    A    LATE 2006.

 7    Q    AND IS LATE 2006 BEFORE OR AFTER THE FILING

 8    DATES OF THE '087 AND '677 PATENTS?

 9    A    BEFORE.

10    Q    AND CAN YOU DESCRIBE THE PRADA, LG PRADA THAT

11    WE HAVE UP ON THE SCREEN HERE?

12    A    SURE.   SO THIS IS THE MOBILE HANDSET AND IT

13    HAS OVERALL RECTANGULAR SHAPE.   IT HAS EVENLY

14    ROUNDED CORNERS AND COMPLETELY FLAT FRONT SURFACE,

15    TRANSPARENT ONE.

16              THERE IS A LARGE DISPLAY WHICH IS

17    CENTERED ON THE FRONT FACE.

18              IT HAS LOZENGE SHAPED EARPIECE SLOT AND A

19    COMPLETELY FLAT FRONT SURFACE.

20    Q    SO ONE OF THE DIFFERENCES --

21    A    AND IT'S BLACK, SORRY.   OBVIOUSLY.

22    Q    SO ONE OF THE DIFFERENCES BETWEEN THE '677

23    PATENT AND THE '087 PATENT IS THAT THE '677 PATENT

24    IS BLACK; IS THAT RIGHT?

25    A    CORRECT.
```

```
 1    Q    AND THE LG PRADA IS BLACK AS WELL; IS THAT

 2    RIGHT?

 3    A    CORRECT.

 4    Q    I'LL DIRECT YOUR ATTENTION TO DX 728 IN YOUR

 5    BINDER.  THIS IS IN EVIDENCE, YOUR HONOR.

 6              SO CAN WE GO TO THE NEXT SLIDE?

 7              DID YOU CONSIDER JAPANESE DESIGN PATENT

 8    '383 AS PART OF YOUR PRIOR ART ANALYSIS?

 9    A    YES, I DID.

10    Q    AND I'M GOING TO REFER TO THIS DESIGN PATENT

11    AS JP'383; OKAY?

12    A    YES.

13    Q    AND WHAT DOES JP'383 SHOW ITSELF?

14    A    IT SHOWS A PORTABLE INFORMATION TERMINAL.  THE

15    DEVICE IS, AGAIN -- THIS IS ACTUALLY COMPOSE OF TWO

16    PIECES.  THERE IS AN EXTERNAL COVER AND THERE IS AN

17    INTERNAL DEVICE.  THE DEVICE HAS OVERALL

18    RECTANGULAR SHAPE WITH EVENLY ROUNDED CORNERS.  IT

19    HAS A CENTERED RECTANGULAR DISPLAY.  IT IS

20    COMPLETELY FLAT, THE FRONT FACE IS COMPLETELY FLAT.

21              AND IT HAS A UNIFORM BEZEL SURROUNDING

22    THE FRONT FACE.

23    Q    MR. FISHER, IF WE COULD TAKE THE FRONT VIEWS

24    OF THESE PRIOR ART REFERENCES AND PUT THEM ON THE

25    SCREEN TOGETHER WITH THE D'677 AND '087.
```

```
1              OKAY.  SO UP AT THE TOP HERE IS '677;

2    RIGHT?

3    A    CORRECT.

4    Q    AND THIS IS '087?

5    A    YES.

6    Q    AND THEN THESE ARE THE PIECES OF PRIOR ART

7    THAT YOU JUST WENT THROUGH THAT YOU CONSIDERED?

8    A    YES.

9    Q    IN YOUR OBVIOUSNESS ANALYSIS?

10   A    YES.

11   Q    IS THAT RIGHT?

12   A    YES.

13   Q    DID YOU REACH ANY CONCLUSION, IN ADDITION TO

14   YOUR OPINION ON THE JP'638, DID YOU REACH ANY OTHER

15   CONCLUSION ABOUT THE COMBINATION OF THESE

16   REFERENCES WHEN YOU FORMED YOUR OBVIOUSNESS

17   CONCLUSIONS?

18   A    YES, I DID.

19              MS. KREVANS:  OBJECTION, YOUR HONOR.

20   AGAIN, BEYOND THE SCOPE.  THE PRADA WAS NOT

21   DISCUSSED BY THIS WITNESS IN ANY WAY IN CONNECTION

22   WITH THE '087 PATENT.  HE TESTIFIED ABOUT BOTH.

23              THE COURT:  IS IT JUST PAGE 60 OR IS IT

24   SOMEWHERE ELSE AS WELL?

25              MR. VERHOEVEN:  THE PRADA IS UP THERE,
```

```
 1        YOUR HONOR, BECAUSE I'M GOING TO ASK ABOUT THE '677

 2        PATENT, AS WELL AS THE '087.  I'VE JUST ASKED HIM A

 3        GENERAL QUESTION AND THERE'S NOT --

 4                THE COURT:  GO AHEAD.

 5                OVERRULED.

 6                MR. VERHOEVEN:  THANK YOU, YOUR HONOR.

 7    Q    DO YOU HAVE THE QUESTION IN MIND, SIR?

 8    A    YES.

 9    Q    CAN YOU EXPLAIN TO THE JURY, USING THESE

10        IMAGES, YOUR ANALYSIS AND YOUR OPINIONS WITH

11        RESPECT TO OBVIOUSNESS?

12    A    YES.  SO I FIND THAT THE '638, IN COMBINATION

13        WITH THE THREE OTHER REFERENCES, IS RENDERING THE

14        '677 AND THE '087 OBVIOUS.

15                AND LOOKING AT THE '638 --

16                MS. KREVANS:  YOUR HONOR, HE JUST

17        ELICITED THE EXACT OPINION HE SAID HE WASN'T GOING

18        TO ASK HIM ABOUT IN CONNECTION WITH USING THE PRADA

19        IN CONNECTION WITH THE '087.

20                MR. VERHOEVEN:  LET ME TRY IT THIS WAY,

21        YOUR HONOR.

22    Q    LOOKING AT THE '677 PATENT, DO YOU SEE THAT?

23    A    YES.

24    Q    AND THESE OTHER PRIOR ART REFERENCES TOGETHER,

25        WHICHEVER ONE YOU WANT TO TALK ABOUT, CAN YOU TELL
```

1

2                    <u>CERTIFICATE OF REPORTERS</u>

3

4

5

6              WE, THE UNDERSIGNED OFFICIAL COURT

7    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

8    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11             THAT THE FOREGOING TRANSCRIPT,

12   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

13   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

14   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

15   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

16   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

17

18                      /S/
                        _____.
19                      LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595
20

21                      /S/
                        _____
22                      IRENE RODRIGUEZ, CSR, CRR
                        CERTIFICATE NUMBER 8074
23

24                      DATED:  AUGUST 14, 2012

25