Estrich Declaration

Exhibit 9

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
6  CORPORATION,                  )
                                 )  SAN JOSE, CALIFORNIA
7            PLAINTIFF,          )
                                 )  AUGUST 15, 2012
8        VS.                     )
                                 )  VOLUME 9
9  SAMSUNG ELECTRONICS CO.,      )
   LTD., A KOREAN BUSINESS       )  PAGES 2651-2965
10 ENTITY; SAMSUNG               )
   ELECTRONICS AMERICA,          )
11 INC., A NEW YORK              )
   CORPORATION; SAMSUNG          )
12 TELECOMMUNICATIONS            )
   AMERICA, LLC, A DELAWARE      )
13 LIMITED LIABILITY             )
   COMPANY,                      )
14                               )
             DEFENDANTS.         )
15 _____

16        TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE LUCY H. KOH
17       UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
24                         IRENE RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8074
25

```
1    A P P E A R A N C E S:

2    FOR PLAINTIFF        MORRISON & FOERSTER
     APPLE:                   BY:  HAROLD J. MCELHINNY
3                                  MICHAEL A. JACOBS
                                   RACHEL KREVANS
4                             425 MARKET STREET
                              SAN FRANCISCO, CALIFORNIA  94105
5

6    FOR COUNTERCLAIMANT  WILMER, CUTLER, PICKERING,
     APPLE:                   HALE AND DORR
7                             BY:  WILLIAM F. LEE
                              60 STATE STREET
8                             BOSTON, MASSACHUSETTS  02109

9                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
10                            PALO ALTO, CALIFORNIA  94304

11   FOR THE DEFENDANT:   QUINN, EMANUEL, URQUHART,
                              OLIVER & HEDGES
12                            BY:  CHARLES K. VERHOEVEN
                                   ALBERT P. BEDECARRE
13                            50 CALIFORNIA STREET, 22ND FLOOR
                              SAN FRANCISCO, CALIFORNIA  94111
14
                              BY:  VICTORIA F. MAROULIS
15                                 KEVIN P.B. JOHNSON
                              555 TWIN DOLPHIN DRIVE
16                            SUITE 560
                              REDWOOD SHORES, CALIFORNIA  94065
17
                              BY:  MICHAEL T. ZELLER
18                                 WILLIAM C. PRICE
                                   JOHN B. QUINN
19                            865 SOUTH FIGUEROA STREET
                              10TH FLOOR
20                            LOS ANGELES, CALIFORNIA  90017

21   FOR INTERVENOR       RAM, OLSON,
     REUTERS:                 CEREGHINO & KOPCZYNSKI
22                            BY:  KARL OLSON
                              555 MONTGOMERY STREET, SUITE 820
23                            SAN FRANCISCO, CALIFORNIA  94111

24
     INTERPRETERS:        JAMES YIM VICTORY
25                            ANN PARK
                              ALBERT KIM
```

1

2                        INDEX OF WITNESSES

3       DEFENDANT'S

4       MARKUS PALTIAN
              VIDEO DEPOSITION PLAYED              P. 2670
5                                                  P. 2671

6

7       ANDRE ZORN
              VIDEO DEPOSITION PLAYED              P. 2671
                                                   P. 2672
8

9       TIM ARTHUR WILLIAMS
              DIRECT EXAM BY MR. VERHOEVEN         P. 2676
              CROSS-EXAM BY MR. LEE                P. 2739
10

11      JIN SOO KIM
              DIRECT EXAM BY MR. QUINN             P. 2787
12            CROSS-EXAM BY MR. MCELHINNY          P. 2821
              REDIRECT EXAM BY MR. QUINN           P. 2833
13

14      RICHARD HOWARTH
              DIRECT EXAM BY MR. PRICE             P. 2838
15            CROSS-EXAM BY MR. MCELHINNY          P. 2842

16

17      ANDRIES VAN DAM
              DIRECT EXAM BY MR. JOHNSON           P. 2845
              CROSS-EXAM BY MS. KREVANS            P. 2873
18            REDIRECT EXAM BY MR. JOHNSON         P. 2883
              RECROSS-EXAM BY MS. KREVANS          P. 2884
19

20      STEPHEN GRAY
              DIRECT EXAM BY MR. DEFRANCO          P. 2893
21            CROSS-EXAM BY MR. JACOBS             P. 2924

22

23

24

25

```
1              THE COURT:  WE CAN GO A LITTLE BIT
2     LONGER, BUT I DON'T WANT OUR COURT REPORTERS TO
3     HAVE TO GO TWO HOURS STRAIGHT.  THEY'VE BEEN GOING
4     SINCE 1:03.
5              MR. JOHNSON:  THIS IS A PERFECT PLACE.
6              THE COURT:  IS THIS A GOOD PLACE.  OKAY.
7     IT'S NOW 2:52.  WE'LL TAKE A 15-MINUTE BREAK.  SAME
8     ADMONITION, PLEASE KEEP AN OPEN MIND, DON'T DISCUSS
9     THE CASE WITH ANYONE.  PLEASE DON'T READ ABOUT THE
10    CASE OR DO ANY RESEARCH.  YOU CAN LEAVE YOUR
11    BINDERS ON YOUR CHAIRS, AND WE'LL SEE YOU BACK IN
12    15 MINUTES.  THANK YOU.
13             (WHEREUPON, THE FOLLOWING PROCEEDINGS
14    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
15             THE COURT:  ALL RIGHT.  THANK YOU.
16             (WHEREUPON, A RECESS WAS TAKEN.)
17             (WHEREUPON, THE FOLLOWING PROCEEDINGS
18    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
19             THE COURT:  ALL RIGHT.  WELCOME BACK,
20    PLEASE TAKE A SEAT.
21             IF YOU WOULD PLEASE BRING OUR JURY BACK.
22             (WHEREUPON, THE FOLLOWING PROCEEDINGS
23    WERE HELD IN THE PRESENCE OF THE JURY:)
24             THE COURT:  OKAY.  PLEASE TAKE A SEAT.
25    WELCOME BACK.
```

```
1              IT IS 3:07.  GO AHEAD, PLEASE.

2              MR. JOHNSON:  THANK YOU, YOUR HONOR.

3              YOUR HONOR, I'D LIKE TO START BY MOVING

4    IN SDX 3964.15, WHICH IS THE VIDEO WE JUST WATCHED.

5              MS. KREVANS:  NO OBJECTION, YOUR HONOR.

6              THE COURT:  ALL RIGHT.  3964.015, NOT A,

7    JUST 015.

8              MR. JOHNSON:  THE VIDEO.

9              THE COURT:  WHAT WAS THE NUMBER FOR THAT?

10             MR. JOHNSON:  IT SHOULD BE .015A.

11             THE COURT:  IT IS A, OKAY.

12             MR. JOHNSON:  YES.

13             THE COURT:  THANK YOU.  THAT'S ADMITTED.

14             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

15             3964.015A, HAVING BEEN PREVIOUSLY MARKED

16             FOR IDENTIFICATION, WAS ADMITTED INTO

17             EVIDENCE.)

18   BY MR. JOHNSON:

19   Q    PROFESSOR VAN DAM, CAN YOU SHOW US HOW

20   TABLECLOTH MEETS THE NEXT LIMITATION OF CLAIM 19?

21   A    SURE.  IT'S A VERY SHORT ELEMENT, AND IT SAYS

22   THAT YOU MUST HAVE INSTRUCTIONS FOR DISPLAYING A

23   FIRST PORTION OF AN ELECTRONIC DOCUMENT.

24             IT DOESN'T TELL YOU HOW YOU ARRIVE AT

25   THAT FIRST PORTION.  SO LET'S ZOOM IN AGAIN AND NOW
```

1    WE'LL SEE A BIT OF SCROLLING, AND THEN SOMEWHERE

2    WE'LL STOP AND SAY THAT'S OUR FIRST PORTION AND

3    ANNOTATE IT AS SUCH.

4    Q    OKAY.  WHAT ABOUT THE NEXT LIMITATION,

5    INSTRUCTIONS FOR TRANSLATING?

6    A    SO HERE WE'VE TRANSLATED JUST A LITTLE BIT

7    MORE, SHOWING THAT THERE ARE INSTRUCTIONS FOR

8    TRANSLATING.

9         AND THAT TRANSLATION DIRECTION IS CALLED

10   THE FIRST DIRECTION, THE UPWARD DIRECTION IN THE

11   CASE OF TABLECLOTH AND IN THIS DEMONSTRATION.

12        NOW, WHEN YOU SCROLL, INEVITABLY YOU'RE

13   GOING TO DISPLAY A DIFFERENT PORTION OF THE

14   ELECTRONIC DOCUMENT.  AND THAT IS CALLED THE SECOND

15   PORTION IN THE CLAIM LANGUAGE.

16        NOW, I WANT TO POINT OUT THAT THIS

17   DISCUSSION OF FIRST PORTION, SECOND PORTION, AND

18   YOU'LL SOON SEE A THIRD AND FOURTH IS THE PATENT'S

19   WAY OF TEXTUALLY DESCRIBING WHAT YOU'RE GOING TO

20   SEE VISUALLY.  IT IS NOT, IN FACT, A SEPARATE

21   DESIGN FEATURE.  IT'S A CONSEQUENCE OF THE

22   SCROLLING MOTION.

23        SO WHAT ELSE IS REQUIRED?  WELL, BECAUSE

24   YOU'RE SCROLLING, YOU'RE GOING TO SEE A DIFFERENT

25   PORTION, AND, THEREFORE, THE SECOND PORTION WILL BE

```
 1    DIFFERENT FROM THE FIRST PORTION.

 2              AND YOU CAN CLEARLY SEE THAT, FOR

 3    EXAMPLE, IF YOU LOOK AT THE AMOUNT OF SKY IN THE

 4    SECOND PORTION VERSUS THE AMOUNT IN THE FIRST

 5    PORTION.

 6              SO WE CAN CHECK OFF THAT ENTIRE ELEMENT.

 7    Q    OKAY.  CAN YOU SHOW US HOW TABLECLOTH MEETS

 8    THE NEXT LIMITATION OF THE CLAIM.

 9    A    SURE.  SO IN THE CASE WE'RE GOING TO SCROLL,

10    AS WE'VE SEEN BEFORE, UNTIL WE REACH THE EDGE AND

11    THEN SCROLL A LITTLE BIT MORE TO OVER SCROLL, SO GO

12    BEYOND THE EDGE, AT WHICH POINT WE HAVE TO SEE

13    SOMETHING NOT PART OF THE ELECTRONIC DOCUMENT,

14    WHICH THE PATENT CALLS AREA BEYOND THE EDGE.

15              NEXT, AGAIN, INEVITABLY BECAUSE OF THE

16    SCROLLING ACTION, WE'LL SEE YET A DIFFERENT PORTION

17    OF THE ELECTRONIC DOCUMENT CALLED THE THIRD

18    PORTION, AND THE PATENT DESCRIBES THAT, AGAIN,

19    INEVITABLY, THAT THE PORTION HAS TO BE SMALLER THAN

20    THE FIRST PORTION, NOT JUST DIFFERENT, BUT SMALLER.

21              WHY?  WELL, BECAUSE WE HAVE TO MAKE ROOM

22    FOR THE AREA BEYOND THE EDGE AND THUS THE RED

23    RECTANGLE IS SMALLER THAN THE ORANGE RECTANGLE.

24    THE IMAGE IS JUST SMALLER.

25    Q    AND CAN YOU DESCRIBE FOR US HOW TABLECLOTH
```

```
 1    MEETS THE NEXT LIMITATION AS DESCRIBED IN CLAIM 34?

 2    A    SO THE NEXT ELEMENT IS GOING TO BE SHOWN HERE,

 3    AND THIS IS SETTING US UP FOR THE SNAP-BACK.  WHAT

 4    IS THE SNAP-BACK?  IT MEANS TRANSLATING IN ANOTHER

 5    DIRECTION, A SECOND DIRECTION, HERE THE OPPOSITE

 6    DIRECTION GOING DOWNWARD.

 7             AND WHAT ARE YOU TRYING TO ACCOMPLISH?

 8    WELL, YOU'RE TRYING TO GET RID OF THAT AREA BEYOND

 9    THE EDGE, AND WHEN YOU DO, YOU SNAP BACK.

10             NOW, ADDITIONALLY, BECAUSE YOU'RE LOOKING

11    AT YET A DIFFERENT PORTION OF THE ELECTRONIC

12    DOCUMENT, YOU'RE GOING TO SEE A FOURTH PORTION AND

13    THE PATENT REQUIRES THAT IT BE DIFFERENT FROM WHERE

14    YOU STARTED THE ANALYSIS.

15             AND JUST TO REMIND YOU, WE HAVE --

16    WHOOPS -- A COMBINATION OF TWO IMAGES IN THE FIRST

17    PORTION OVER HERE AND A SINGLE IMAGE ON THE RIGHT

18    AS OUR FOURTH PORTION.

19             AND THAT COMPLETES THE LAST ELEMENT, AND

20    SO WE'VE SHOWN THAT ALL OF THE ELEMENTS OF CLAIM 19

21    ARE FOUND IN TABLECLOTH.

22             MR. JOHNSON:  YOUR HONOR, WE ASK THAT SDX

23    3964.026 THROUGH 38, THAT THOSE SLIDES THAT

24    PROFESSOR VAN DAM JUST REFERRED TO BE ADMITTED.

25             MS. KREVANS:  NO OBJECTION.
```

2864

```
 1              THE COURT:  I'M SORRY.  GIVE ME THAT
 2      BATES RANGE AGAIN.
 3              MR. JOHNSON:  IT'S 3964.026 THROUGH .038.
 4              THE COURT:  OKAY.  AND NO ONE WILL BE
 5      ABLE TO GET ANY DEMONSTRATIVES ADMITTED IN THEIR
 6      REBUTTAL CASES BECAUSE THIS IS FAR EXCEEDING ALL
 7      THE EXHIBIT LIMITS.  OKAY?
 8              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBERS
 9               3964.026 - .038, HAVING BEEN PREVIOUSLY
10               MARKED FOR IDENTIFICATION, WERE ADMITTED
11               INTO EVIDENCE.)
12      BY MR. JOHNSON:
13      Q    PROFESSOR VAN DAM, WHEN IS YOUR UNDERSTANDING
14      OF WHEN TABLECLOTH WAS CREATED?
15      A    IT WAS CREATED, AS DR. FORLINES TESTIFIED, BY
16      HIS COLLEAGUE AT MITSUBISHI ELECTRIC RESEARCH LAB
17      DURING THE HOLIDAY WINTER VACATION, AND IT WAS THUS
18      AVAILABLE EARLY IN JANUARY, MID-JANUARY IT WAS
19      SHOWN TO THE PUBLIC AT THE NEW SCHOOL FOR SOCIAL
20      RESEARCH, AND I UNDERSTAND FROM HIS TESTIMONY THAT
21      ONE OF THE ATTENDEES WAS SENATOR KERREY.
22      Q    WHAT YEAR WAS THAT?
23      A    THAT WAS 2005.
24      Q    OKAY.  LET'S TURN OUR ATTENTION TO LAUNCHTILE.
25              NOW, CAN YOU TAKE US THROUGH A DISCUSSION
```

1   OF HOW LAUNCHTILE MEETS EACH AND EVERY LIMITATION

2   OF CLAIM 19?

3   A    I WILL.  HERE WE SEE THE DEVICE THAT

4   DR. BEDERSON DEMONSTRATED ALREADY.  IT'S AN ARRAY

5   OF 36 TILES, EACH OF WHICH IS MEANT, IN THIS

6   PROTOTYPE, EVENTUAL TO LAUNCH AN APPLICATION.

7            AND, AGAIN, THE FIRST THING WE HAVE TO DO

8   IS IDENTIFY WHAT OUR ELECTRONIC DOCUMENT IS GOING

9   TO BE.

10           BY THE COURT'S CONSTRUCTION, IT CAN BE

11  ANYTHING THAT HAS A DIGITAL REPRESENTATION.  I

12  COULD PICK A SINGLE TILE.  I COULD PICK TWO, FOUR,

13  EIGHT OR THE ENTIRE SET OF TILES.

14           FOR THE PURPOSES OF MY INVALIDITY

15  ANALYSIS, I PICKED TWO ADJACENT ZONES.  I'LL ZOOM

16  IN TO MAKE THOSE SHOW UP.

17           AND THE TWO ZONES I'LL PICK ARE THE

18  LEFT-MOST ONES.

19           SO THERE IT IS.  IT'S KIND OF SMALL, SO

20  LET ME GO IN A LITTLE BIT.  AND TO ILLUSTRATE WHAT

21  I MEAN BY THE ELECTRONIC DOCUMENT, I'M GOING TO

22  SHOW YOU A SCHEMATIC OF THOSE TWO ZONES OF FOUR

23  TILES EACH, TOGETHER, AS YOU CAN THINK OF THEM AS

24  TWO PHOTOGRAPHS OR EIGHT PHOTOGRAPHS.  IT'S OUR

25  ELECTRONIC DOCUMENT, AND THAT'S HOW WE'RE GOING TO

```
 1    DO OUR ANALYSIS.  WE'RE GOING TO START IN THE LEFT
 2    ZONE, THE LEFT-MOST PART OVER HERE, AND WE'RE GOING
 3    TO SEE THE DOCUMENTS SCROLL IN THE LEFT DIRECTION.
 4              EVENTUALLY WE'RE GOING TO COME TO THE
 5    EDGE OVER HERE.
 6    Q    WHY DOES THE AREA BEYOND THE EDGE?
 7    A    WELL, HERE IT IS ANYTHING THAT IS NOT PART OF
 8    THE ELECTRONIC DOCUMENT, SO IT'S WHATEVER LIES
 9    OUTSIDE THAT WHITE BOX DESIGNATING THE ELECTRONIC
10    DOCUMENT.
11    Q    HAVE YOU PREPARED A VIDEO THAT DESCRIBES HOW
12    THIS PARTICULAR DEVICE MEETS THE LIMITATIONS?
13    A    I HAVE, YES.
14    Q    AND CAN YOU EXPLAIN WHAT WE SEE?
15    A    SO --
16    Q    AND WE'RE LOOKING AT 3964.043 AT THIS POINT.
17    A    WE START OFF BY HAVING ONLY A PORTION IN VIEW,
18    JUST AS IN THE CASE OF TABLECLOTH.  MOTION IN
19    LIMINE ELECTRONIC DOCUMENTS ARE TOO MUCH TO BE SEEN
20    IN THEIR ENTIRETY IN WHATEVER DISPLAY YOU USE,
21    WHETHER IT'S A SMARTPHONE OR EVEN A VERY LARGE
22    INTERACTIVE WHITE BOARD.
23              SO THIS IS THE AMOUNT THAT WE CAN SEE ON
24    THIS LITTLE HANDHELD DEVICE, AND EVENTUALLY WE'RE
25    GOING TO SCROLL TO THE LEFT UNTIL WE -- SORRY.  MY
```

2895

1    TELLS YOU HOW LONG I'VE BEEN DOING THIS.  VARIOUS

2    ASSEMBLY LEVEL LANGUAGES, A VARIETY OF DIFFERENT

3    COMPUTING LANGUAGES.

4    Q    AND, SIR, YOU'RE HERE AS SAMSUNG'S TECHNICAL

5    EXPERT ON THE '915 AND '163 PATENTS; IS THAT

6    CORRECT?

7    A    THAT'S CORRECT.

8    Q    HAVE YOU WORKED BEFORE AS A TECHNICAL EXPERT

9    IN YOUR CAREER?

10   A    I HAVE.

11          MR. DEFRANCO:  YOUR HONOR, AT THIS POINT

12   WE WOULD OFFER MR. GRAY AS AN EXPERT IN SOFTWARE

13   PROGRAMMING AND USER INTERFACE.

14          THE COURT:  ANY OBJECTION?

15          MR. JACOBS:  NO OBJECTION.

16          THE COURT:  SO CERTIFIED.

17   BY MR. DEFRANCO:

18   Q    BRIEFLY, SIR, WOULD YOU GIVE US SOME EXAMPLES

19   OF SOME OF THE MATERIALS THAT YOU LOOKED AT IN YOUR

20   WORK IN THIS CASE?

21   A    I REVIEWED THE PATENTS; I REVIEWED THE FILE

22   HISTORY, AND WHAT BY "FILE HISTORY" WHAT I MEAN IS

23   THE COMMUNICATION BETWEEN THE PATENT OFFICE AND THE

24   APPLICANT WHEN THEY'RE GETTING THEIR PATENT

25   APPROVED.

2896

```
 1            I'VE STUDIED THE REPORTS OF THE EXPERTS
 2    IN THIS MATTER, I'VE STUDIED DEPOSITIONS AND A
 3    VARIETY OF OTHER DOCUMENTS THAT ARE RELATED TO THE
 4    MATTER.
 5    Q    OKAY.  WE'RE GOING TO TAKE THE PATENTS ONE AT
 6    A TIME STARTING WITH THE '915.  WE'RE GOING TO USE
 7    SOME SLIDES, DEMONSTRATIVES AS HAS BEEN DONE IN THE
 8    CASE.
 9            THIS IS THE '915 PATENT.  CAN YOU REMIND
10    US IN A SENTENCE WHAT THE '915 PATENT IS ABOUT?
11    A    SO THE '915 IS THE SCROLL WITH ONE FINGER,
12    ZOOM WITH TWO FINGERS.  THAT'S THE '915.
13    Q    AND THE FILING DATE OF THAT PATENT, SIR?
14    A    THAT PATENT WAS FILED ON JANUARY 7TH, 2007.
15    Q    AND THIS IS THE PATENT IN WHICH APPLE IS
16    ASSERTING CLAIM 8; IS THAT CORRECT?
17    A    THAT'S CORRECT, CLAIM 8.
18    Q    ALL RIGHT.  LET'S -- YOU DESCRIBED WHAT THE
19    PATENT IS ABOUT GENERALLY.  IS THAT WHAT'S DEPICTED
20    HERE?
21    A    EXACTLY.  THERE'S A LITTLE ANIMATION THAT
22    COMES FROM THE PATENT ITSELF.  ON THE LEFT-HAND
23    SIDE WE SEE A SCROLL OPERATION, ONE FINGER MOVING
24    THE, THE IMAGE ACROSS THE SCREEN THE VIEW OF THE
25    IMAGE ACROSS THE SCREEN.
```

```
 1                    IT DOESN'T SEEM TO BE PERFORMING.
 2    THERE'S A LITTLE BUG HERE IT LOOKS LIKE.  THERE WE
 3    GO.
 4                    SO THAT'S THE SCROLLING OPERATION, SINGLE
 5    FINGER SCROLLING OPERATION.
 6                    ON THE RIGHT-HAND SIDE IS WHAT'S REFERRED
 7    TO AS THE GESTURE OPERATION.  THE GESTURE
 8    OPERATION, FOR EXAMPLE, IS A MULTIPOINT GESTURE
 9    OPERATION AND ALLOWS, FOR EXAMPLE, SCALE IN AND OUT
10    FOR A PARTICULAR OBJECT.  SO THAT'S THE MULTIPOINT
11    GESTURE OPERATION.
12    Q    OKAY.  AND WE ARE, WE'RE GOING TO TALK A BIT
13    ABOUT CLAIM 8.  JUST IN A SENTENCE, TELL US WHAT
14    YOU, WHAT PRIOR ART YOU LOOKED AT?
15    A    SO THE PRIOR ART THAT YOU SEE HERE ON THE
16    LEFT-HAND SIDE OF THE SCREEN, THE BLUE BACKGROUND
17    IS THE PRIOR ART I INTEND TO TALK ABOUT TODAY.  ALL
18    OF THAT ART WAS FILED SOMETIME PRIOR TO THE
19    APPLICATION IN JANUARY 2007 OF THE '915 PATENT.
20    Q    AND YOUR UNDERSTANDING WAS ANY OF THAT ART
21    BEFORE THE PATENT OFFICE DURING PROSECUTION OF WHAT
22    BECAME THE '915 PATENT?
23    A    I DON'T BELIEVE SO, NO.
24    Q    OKAY.  LET'S START WITH DIAMONDTOUCH RUNNING
25    FRACTAL ZOOM, OKAY?  DOES THAT MAKE SENSE?
```

```
 1    A    SURE.

 2    Q    I'D LIKE TO WALK THROUGH THE CLAIM ELEMENTS.

 3              BY THE WAY, WERE YOU IN THE COURTROOM

 4    WHEN THESE FACT WITNESSES TESTIFIED, MR. BOGUE AND

 5    MR. FORLINES?

 6    A    YES, I WAS.

 7    Q    OKAY.  IN A SENTENCE -- I THINK WE'VE HEARD A

 8    BIT ABOUT THE SYSTEM, ENOUGH SO THAT WE CAN JUST GO

 9    TO THE CLAIM AND COMPARE IT TO THE DEVICE ITSELF.

10              ARE YOU WITH ME?

11    A    SURE.

12    Q    WHY DON'T WE WALK THROUGH THAT ONE LIMITATION

13    IN THE CLAIM AT A TIME AND YOU CAN TELL US WHERE IN

14    THE CLAIM IT'S FOUND.

15    A    SO CLAIM 8 REQUIRES MANUFACTURE READABLE

16    STORAGE, AND, AGAIN, THAT'S MEMORY THAT CONTAINS

17    INSTRUCTIONS THAT CAUSE THE COMPUTER, IN THIS CASE

18    THE DIAMONDTOUCH SYSTEM, TO PERFORM ITS OPERATIONS.

19              ONE OF THOSE OPERATIONS IS RECEIVING USER

20    INPUT IN THE FORM -- I SHOULD SAY RECEIVING USER

21    INPUT ON A TOUCH SENSITIVE DISPLAY THAT IS

22    INTEGRATED WITH THE DATA PROCESSING SYSTEM.

23              SO AS THE PREVIOUS WITNESS SPOKE ABOUT,

24    THAT'S THE WAY THAT THE DIAMONDTOUCH SYSTEM WORKS.

25    IT'S A COMPUTER SYSTEM THAT HAS A TOUCH SENSITIVE
```

2899

```
 1    DISPLAY THAT ALLOWS FOR CAPTURING OF THE INPUT

 2    POINTS.

 3    Q    LET'S GO TO THE NEXT LIMITATION, CREATING AN

 4    EVENT OBJECT.  CAN YOU DESCRIBE THAT FOR US,

 5    PLEASE, WHERE IT'S IN THE REFERENCE, SIR?

 6    A    SURE.  SO CREATING AN EVENT OBJECT IN THE DT,

 7    THE DIAMONDTOUCH SYSTEM IS SHOWN, IS ILLUSTRATED BY

 8    THIS PIECE OF CODE.  THIS PIECE OF CODE IDENTIFIES

 9    AN OBJECT KNOWN AS THE DTLIBINPUTTFRAME.  THAT

10    STANDS FOR DIAMONDTOUCH LIBRARY INPUT TOUCH FRAME.

11              AND WHAT IT CONTAINS IS THE TOUCH

12    INFORMATION THAT WHEN THE USERS TOUCH THE SCREEN,

13    THIS IS THE OBJECT THAT CONTAINS THAT INFORMATION.

14              THE DTLIBINPUTTFRAME EVENT OBJECT

15    INCLUDES, FOR EXAMPLE, INFORMATION LIKE THE NUMBER

16    OF TOUCHES THAT THE USER HAD ON THE SCREEN, WHERE

17    THE TOUCHES STARTED AND WHERE THEY ENDED.  THAT'S

18    THE REFERENCE THERE AT THE XY POSITION, AND TIME

19    REFERENCES TO CERTAIN ASPECTS OF THOSE, OF THAT

20    TOUCH.

21              SO THAT'S THE ELEMENT.  THAT'S THE

22    OBJECT.

23    Q    OKAY.  LET'S GO TO THE NEXT ELEMENT, SIR.

24    COULD YOU PLEASE DESCRIBE FOR US WHERE THAT IS?

25    A    SO THE NEXT ELEMENT IS DETERMINING WHETHER OR
```

```
1    NOT WE HAVE DONE A, USE A -- OR INTENDING TO DO A

2    SCROLL OR A GESTURE OPERATION BY DISTINGUISHING

3    BETWEEN A SINGLE INPUT POINT WHICH IS TOUCHED ON

4    THE INPUT DISPLAY OR MULTIPLE INPUT POINTS.

5            IF IT IS A SINGLE INPUT POINT, IT'S A

6    SCROLL OPERATION.  IF IT'S MULTIPLE INPUT POINTS,

7    WE'RE TALKING ABOUT A GESTURE IN THE WAY IT'S

8    REFERRED TO IN THE '915 PATENT, AND THE GESTURE

9    WOULD BE, FOR EXAMPLE, A SCALING OPERATION.

10           SO, SO THERE'S ONE FINGER FOR SCROLL, TWO

11   FINGERS FOR GESTURES, AND THAT'S THE DISTINGUISHING

12   ASPECT HERE.  SO THAT CLAIM IS MET.

13   Q    OKAY.

14   A    I'M SORRY.  I SHOULD MENTION, THE SPLASH

15   SCREEN THAT'S SHOWN HERE, THE SPLASH SCREEN THAT IS

16   UP THERE INDICATES THE ACTUAL MANNER IN WHICH THE

17   DEVICES OPERATE.

18   Q    OKAY.  LET'S GO TO THE NEXT LIMITATION,

19   PLEASE.

20   A    SO THE NEXT LIMITATION HAS TO DO WITH ISSUING

21   A SCROLL OR GESTURE CALL BASED ON INVOKING THE

22   SCROLL OR GESTURE OPERATION.  AGAIN, THIS IS A

23   FRAGMENT OF CODE.  THIS IS FROM A, A PIECE OF CODE

24   CALLED THE FRACTAL ZOOM APP, WHICH IS AN

25   APPLICATION THAT WAS REFERRED TO THE OTHER DAY WHEN
```

2901

1    DR. FORLINES TALKED ABOUT THE DEVICE.

2              THE FRACTAL ZOOM, THIS PARTICULAR METHOD

3    IS ONE CALLED TOUCH DETECTED.  THE TOUCH DETECTED

4    METHOD DOES PROCESSING, BUT BY THE TIME IT GETS

5    HERE, IT DETERMINES WHETHER OR NOT THE M CURRENT

6    MODE IS EQUAL TO MODE ZOOM OR M CURRENT MODE IS

7    EQUAL TO MODE PAN.

8              BASED UPON THAT, THE SYSTEM PERFORMS

9    DIFFERENT OPERATIONS, ONE THAT CREATES A SCALING

10   FACTOR, THE OTHER ONE DOES NOT CREATE A SCALING

11   FACTOR.

12             BUT IN ANY EVENT, THE RESPONSE IS TO --

13   THE RESPONSE IS TO REPAINT THE SCREEN BASED UPON

14   THE OPERATIONS WHICH ARE DEFINED IN THE TOUCH

15   DETECTIVE.

16   Q    OKAY.  THE LAST LIMITATION, SIR, PLEASE?

17   A    THE LAST LIMITATION IS ACTUALLY HOW THE SCREEN

18   IS ALTERED BY VIRTUE OF THE FACT THAT THE USER HAS

19   DONE IT.  SO HERE YOU SEE THE SCROLL THAT'S BEING

20   OPERATED ON, SCROLL UP AND SCROLL DOWN, SO THAT

21   CLAIM LIMITATION IS MET.

22   Q    OKAY.  AND THEN WE TAKE YOU TO?

23   A    AND HERE'S THE TWO FINGER GESTURE.  WE'RE

24   ZOOMING IN AND THEN A TWO FINGER GESTURE WHILE

25   WE'RE -- ACTUALLY, IT'S THE OPPOSITE, ZOOMING OUT

2902

1    AND ZOOMING IN.  SO THAT LIMITATION IS ALSO MET.

2    Q    AND THAT LIMITATION FOR THE RECORD IS

3    RESPONDING TO AT LEAST ONE GESTURE CALL.  DO YOU

4    SEE THAT, SIR?

5    A    THAT'S CORRECT.

6    Q    ALL RIGHT.  LET'S TURN TO THE SECOND REFERENCE

7    YOU ANALYZED.  WOULD YOU GIVE US A SENTENCE OR TWO

8    ABOUT THE NOMURA REFERENCE, PLEASE, SIR?

9    A    SO THE NOMURA REFERENCE IS A JAPANESE PATENT.

10   IT WAS FILED NOVEMBER OF 1998.  AND THE PATENT

11   TALKS ABOUT AN ELECTRONIC OR PORTABLE INFORMATION

12   DEVICE, A PORTABLE DEVICE THAT IS USED FOR A MAP

13   APPLICATION.

14        AND ONE OF THE -- SEVERAL OF THE

15   FUNCTIONS THAT ARE PERFORMED IN THE MAP APPLICATION

16   RELATE TO ENLARGEMENT, WHICH IS SCALING, REDUCTION,

17   WHICH IS ALSO SCALING, AND THEN SCROLLING.

18        SO IT'S A, A PATENT APPLICATION THAT

19   IDENTIFIES A MAPPING APPLICATION AND AN E-BOOK, AN

20   ACTUAL DEVICE, THAT PERFORMS THOSE OPERATIONS.

21   Q    SIR, IS THAT IN THE BINDER IN FRONT OF YOU AS

22   EXHIBIT DX 550?

23   A    DX 550, YES, THAT'S THE REFERENCE I'M

24   REFERRING TO.

25        MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE

```
 1    FOR ADMISSION OF EXHIBIT DX 550, THE NOMURA

 2    PREFERENCE.

 3              MR. JACOBS:  OBJECTION, YOUR HONOR.

 4    REFERENCE TO COUNSEL'S CHARACTERIZATION OF IT AS A

 5    PATH.  IT'S AN UNEXAMINED PATENT APPLICATION.

 6              MR. DEFRANCO:  THAT'S CORRECT, YOUR

 7    HONOR, IT'S AN UNEXAMINED PATENT APPLICATION FOR

 8    THE RECORD.

 9              THE COURT:  IT'S ADMITTED.

10              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

11              550, HAVING BEEN PREVIOUSLY MARKED FOR

12              IDENTIFICATION, WAS ADMITTED INTO

13              EVIDENCE.)

14    BY MR. DEFRANCO:

15    Q   LET'S DO THE SAME THING, MR. GRAY.  LET'S WALK

16    THROUGH THE LIMITATIONS IN THE CLAIM AND IF YOU

17    COULD COMPARE THEM TO THE DISCLOSURE IN THE NOMURA

18    REFERENCE.  ARE YOU WITH ME?

19    A   I'M WITH YOU.  SO, AGAIN, THIS IS A LITTLE

20    DEMONSTRATION.  HERE IS THE SCROLL, THE SINGLE

21    FINGER SCROLL, AN ANIMATION THAT SHOWS MOVING THE

22    MAP ACROSS THE ELECTRONIC BOOK.  AND THEN THE OTHER

23    ONE WAS A PINCH.

24    Q   NO NEED TO RUSH YOU.  LET'S START WITH THE

25    CLAIM ELEMENTS.  OKAY.
```

1    A    FAIR ENOUGH.  SO THE FIRST PART OF CLAIM 8 IS

2    AGAIN THE MANUFACTURE READABLE STORAGE MEDIUM.

3    FIGURE 2 FROM THE PATENT SHOWS AN INSTRUCTION

4    STORAGE MEDIUM THERE, THAT'S THE BOX THAT I'VE

5    HIGHLIGHTED IN YELLOW.  THAT FEEDS THE PROCESSING

6    UNIT, AND THE INFORMATION STORAGE MEDIUM CONTAINS

7    DATA AND INSTRUCTIONS WHICH ARE USED BY THE E-BOOK

8    IN PERFORMANCE OF ITS APPLICATION.  SO THAT CLAIM

9    ELEMENT IS MET.

10            THE FINGER MOVEMENT DETECTOR, WHICH IS

11   NUMBER -- WHICH IS ELEMENT 10 OF FIGURE 2, SHOWS --

12   IS THE RECEIVER OF THE INPUTS FROM THE TOUCH

13   SENSITIVE SCREEN THAT THE USER OPERATING ON, ON THE

14   DEVICE.

15            SO THE FINGER MOVEMENT DETECTOR CREATES A

16   FINGER MOVEMENT HISTORY.  THAT HISTORY IS --

17   RECORDS WHAT THE MOVEMENTS WERE ON THE SCREEN.

18   Q    AND THAT --

19   A    SO THAT LIMITATION IS ALSO MET.

20   Q    THAT MEETS THE RECEIVING A USER INPUT

21   LIMITATION?

22   A    CORRECT.

23   Q    OKAY.  LET'S TURN TO THE NEXT LIMITATION,

24   WHICH IS CREATING AN EVENT OBJECT IN RESPONSE TO

25   THE USER INPUT.

1           WHERE IS THAT IN NOMURA, SIR?

2     A    SO AS I JUST MENTIONED, THE UNIT THAT RECEIVES

3     THE USER INPUTS STORES THAT INFORMATION IN THE

4     MOVEMENT HISTORY, AND THE MOVEMENT HISTORY, A

5     FINGER MOVEMENT HISTORY IN NOMURA IS THE '915'S

6     VERSION OF THE EVENT OBJECT.

7     Q    OKAY.  HOW ABOUT THE NEXT LIMITATION,

8     DETERMINING WHETHER AN EVENT OBJECT INVOKES A

9     SCROLL OR GESTURE ELEMENT?

10    A    SO ELEMENT 30, THE OPERATING CONTENTS

11    DETERMINATION UNIT, IS WHAT MAKES A DETERMINATION

12    AS -- USING THE FINGER HISTORY TO DETERMINE WHETHER

13    OR NOT -- WHAT KIND OF MOTION IS BEING PROSCRIBED,

14    WHETHER IT IS A SCROLL OR A GESTURE OPERATION.

15           SO YOU CAN SEE HERE THE GESTURE OPERATION

16    MOVES ONE FINGER, THE UNIT DETERMINES THAT A MAP

17    SCROLLING OPERATION IS INPUT, AND THEN USING TWO

18    FINGERS, IT SHOWS THAT IT WAS, IT WAS EITHER DOING

19    A SCALE, A SCALE IN OR A SCALE OUT.

20    Q    OKAY.

21    A    SO USING TWO FINGERS TO PERFORM.

22    Q    ALL RIGHT.  CAN WE GO TO THE NEXT LIMITATION,

23    SIR?

24    A    SO THE, THE MAP OPERATIONS PROCESSING UNIT

25    CONTAINS A SERIES OF ELEMENTS AS WELL.  THE

1    REQUIREMENT -- OR THE CLAIM ELEMENT HERE SAYS

2    ISSUING AT LEAST ONE SCROLL OR GESTURE CALL BASED

3    ON INVOKING THE SCROLL OR GESTURE OPERATION.

4              SO WE CAN SEE HERE THAT ELEMENT 48, THE

5    SCROLL PROCESSING UNIT, IS ACTUALLY THE UNIT THAT

6    MAKES -- THAT IS FED BY THE OPERATING CONTENTS OF

7    THE DETERMINATION UNIT, AND THEN CREATES THE --

8    PERFORMS WHAT NEEDS TO BE DONE IN TERMS OF A

9    SCROLL.

10   Q    OKAY.  ALL RIGHT.  AND THE NEXT LIMITATION,

11   SIR, WOULD YOU TAKE US THROUGH THAT?

12   A    CAN WE GO BACK A SLIDE.  THERE'S A COUPLE OF

13   OTHER UNITS ON HERE, TOO, THAT AREN'T HIGHLIGHTED,

14   BUT THE COMPRESSION PROCESSING UNIT 42 AND

15   COMPRESSION PROCESSING UNIT 44 ARE THE UNITS THAT

16   PERFORM THE SCROLLING OPERATION, YEAH, THE

17   SCROLLING -- I'M SORRY, THE SCALING OPERATION.  I

18   MISSPOKE.

19             SO, YEAH, SO THAT LIMITATION HAS BEEN

20   MET.

21   Q    OKAY.  GREAT.  LET'S TURN TO THE NEXT ONE,

22   SIR.  CAN YOU TAKE US THROUGH THAT LIMITATION,

23   PLEASE?

24   A    SO BASED UPON WHAT THE MAP OPERATIONS

25   PROCESSING UNIT HAS DONE, THE IMAGE GENERATION UNIT

1    RECEIVES THAT, THAT INPUT AND PERFORMS -- SENDS IT

2    TO THE DISPLAY UNIT, WHICH THEN UPDATES THE DISPLAY

3    ON THE E-BOOK ITSELF.

4    Q    OKAY.  I THINK THERE'S A LITTLE MOTION.

5    A    SO THERE'S A SCROLL BAR THAT SHOWS, THAT

6    DEMONSTRATES THE SCROLL OPERATION.  SO THAT

7    LIMITATION IS MET.

8    Q    OKAY.  AND LET'S FINISH THE LAST SLIDE WITH

9    RESPECT TO NOMURA.

10    A    SO, AGAIN, SIMILARLY TO THE WAY THAT THE

11    SCROLL OPERATION WAS, WAS MET, THE SYSTEM ALSO

12    RESPONDS TO A GESTURE CALL BY PASSING THE

13    INFORMATION TO THE IMAGE GENERATION UNIT WHICH GOES

14    TO THE DISPLAY UNIT WHICH UPDATES THE E-BOOK.

15    Q    OKAY.  NOW, IN YOUR OPINION, SIR, WITH

16    RESPECT -- ARE ALL THE LIMITATIONS OF CLAIM 8 OF

17    THE 195 -- '915 PATENT FOUND IN NOMURA?

18    A    YES, THEY ARE.

19    Q    AND WHAT DOES THAT LEAD YOU TO CONCLUDE?

20    A    WHAT THAT MEANS IS BY VIRTUE OF THE FACT THAT

21    ALL OF THE CLAIM LIMITATIONS ARE COVERED BY NOMURA,

22    OR THAT IT ANTICIPATES OR RENDERS OBVIOUS, OR

23    INVALIDATES, RATHER, THE '915 PATENT BY WHAT'S

24    REFERRED TO AS ANTICIPATION, MEANING THAT ONE

25    SOURCE ENCOMPASSES ALL OF THE CLAIM ELEMENTS.

2908

1    Q    AND WHAT CONCLUSION, SIR, JUST TO MAKE SURE I

2    DIDN'T MISS IT, WHAT WAS YOUR CONCLUSION WITH

3    RESPECT TO DIAMONDTOUCH RUNNING FRACTAL ZOOM

4    COMPARED TO CLAIM 8 OF THE '915 PATENT?

5    A    LIKE NOMURA, DIAMONDTOUCH COVERS ALL OF THE

6    CLAIM ELEMENTS OF CLAIM 8, AND, THEREFORE,

7    INVALIDATES CLAIM 8 AS WELL.

8    Q    I JUST WANT TO SPEND A MOMENT ON A THIRD

9    REFERENCE, IF I HAVE SUCCESS BRINGING IT UP HERE

10   HERE.

11           JUST A SENTENCE OR TWO, SIR, ABOUT WHAT

12   THE HAN SYSTEM WAS?

13   A    SURE.  JEFFERSON HAN WAS A RESEARCH SCIENTIST

14   AT NEW YORK UNIVERSITY AND HE CREATED A DEVICE, NOT

15   ENTIRELY DISSIMILAR FROM THE DIAMONDTOUCH SYSTEM,

16   BUT IT'S A USER INTERFACE, LARGE SCALE USER

17   INTERFACE THAT RESPONDS TO TOUCH INPUT.  AND

18   THERE'S A, A FILM HERE THAT SHOWS EXACTLY WHAT THAT

19   SYSTEM DOES.

20   Q    OKAY.  AND I THINK JUST TO BRING IT BACK TO

21   MIND, LET'S SHOW A VERY SHORT PORTION OF THE HAN

22   VIDEO.

23           CAN YOU PUT THAT UP, PLEASE.

24           (WHEREUPON, A VIDEOTAPE WAS PLAYED IN

25   OPEN COURT OFF THE RECORD.)

2909

```
 1              MR. DEFRANCO:  OKAY.

 2              THE COURT:  WHAT'S THE NUMBER ON THAT

 3    VIDEO, PLEASE?

 4              MR. DEFRANCO:  YOUR HONOR, WE WOULD OFFER

 5    THAT INTO EVIDENCE.  THAT IS GOING TO BE EXHIBIT DX

 6    556.

 7              THE COURT:  ALL RIGHT.  THAT'LL BE

 8    PENDING THE STIPULATION.  OKAY.  SO IT'S NOT

 9    ADMITTED RIGHT NOW UNLESS THERE'S A STIPULATION ON

10    THE VIDEO.  SO I'LL HOLD THAT.

11              MR. DEFRANCO:  YES, YOUR HONOR.

12              THE COURT:  GO AHEAD, PLEASE.

13    BY MR. DEFRANCO:

14    Q    BRIEFLY, CAN YOU WALK THROUGH CLAIM 8 OF THE

15    '915 PATENT WITH RESPECT TO THE HAN VIDEO, SIR?

16    A    SO THE HAN DEMONSTRATION SHOWS A MACHINE

17    READABLE -- A COMPUTER THAT HAS INSTRUCTIONS IN IT

18    THAT PERFORM VARIOUS OPERATIONS.  IT'S SHOWN IT

19    RECEIVES INPUTS, AS YOU CAN SEE WHEN HE WAS

20    DEMONSTRATING THE SYSTEM, IT RECEIVES INPUTS IN THE

21    FORM OF SINGLE INPUT SCROLLS, MULTI INPUT ZOOMING

22    OPERATIONS.  IT CREATES -- IT DETERMINES WHETHER OR

23    NOT THE EVENT OBJECT INVOKES A SCROLL BECAUSE IT

24    RECORDS THOSE EVENTS IN AN EVENT OBJECT.  IT

25    DETERMINES BY DISTINGUISHING WHETHER IT'S A SINGLE
```

1    POINT OR MULTIPOINT.

2         IT THEN ISSUES A SCROLL OR GESTURE CALL

3    BASED ON THE DETERMINATION IT MADE AND THEN UPDATES

4    THE SCREEN TO REFLECT WHAT THE USER HAD DONE WITH

5    THE SINGLE OR MULTITOUCH INPUTS.

6    Q    OKAY.  LET'S TALK ABOUT NON-INFRINGEMENT,

7    INFRINGEMENT ISSUES FOR JUST A MOMENT.

8         CAN YOU TELL US WHAT CLAIM ELEMENT D IS

9    ABOUT AGAIN IN THIS CLAIM.

10   A    SO CLAIM ELEMENT D HAS TO DO WITH DETERMINING

11   WHETHER THE EVENT OBJECT INVOKES A SCROLL BY

12   DISTINGUISH -- OR A GESTURE BY DISTINGUISHING

13   BETWEEN ONE POINT OR MULTIPOINT.

14        AND IT'S -- THE EVENT OBJECT IS --

15   INVOKES THE SCROLL OR GESTURE OPERATION.  THERE'S

16   AN INVOCATION OF THE SCROLL OR GESTURE OPERATION BY

17   THE EVENT OBJECT.

18   Q    WHAT IS YOUR UNDERSTANDING OF THE DEFINITION

19   OF INVOKE AS IT'S TO BE USED IN THIS CASE?

20   A    SO INVOKE, AS I UNDERSTAND IT, HAS COME TO

21   MEAN TO CAUSE, AND I UNDERSTAND THAT'S THE COURT'S

22   CONSTRUCTION FOR THE TERM "INVOKE."

23   Q    OKAY.  AND --

24        MR. JACOBS:  YOUR HONOR, THAT'S AN

25   INCOMPLETE RECITATION OF THE COURT'S CLAIM

911

```
 1    CONSTRUCTION.

 2              THE COURT:  OVERRULED.  YOU'LL HAVE A

 3    CHANCE ON CROSS.

 4              GO AHEAD.

 5    BY MR. DEFRANCO:

 6    Q    OKAY.  IN YOUR OPINION, DO THE ACCUSED

 7    PRODUCTS HAVE THAT FEATURE, SIR?

 8    A    NO.  THE ACCUSED PRODUCTS, I THINK THERE'S A

 9    SLIDE ON THIS, BUT THE ACCUSED PRODUCTS OPERATE

10    MORE ALONG THE LINES LIKE THIS.

11              WE HEARD THE OTHER DAY DR. SINGH TALK

12    ABOUT THE WEB VIEW OBJECT AND THAT THE WEB VIEW

13    OBJECT RELIED -- USES THE DATA THAT IS STORED IN

14    THE MOTION EVENT OBJECT TO MAKE A DETERMINATION AS

15    TO WHETHER ONE TOUCH OR MULTIPLE TOUCHES HAD

16    OCCURRED.

17              AND IF ONE USES -- IT TAKES A DIFFERENT

18    PATH THROUGH THE CODE, IN ORDER TO SEE IF ONE TOUCH

19    OR MULTITOUCH HAD BEEN USED.

20              THE POINT IS THAT THE MOTION EVENT OBJECT

21    IS NOT THE CAUSER OF THIS DETERMINATION AS TO

22    WHETHER OR NOT ONE TOUCH OR MULTIPLE TOUCHES HAVE

23    OCCURRED.

24              THE MOTION OF THAT OBJECT THAT CONTAINS

25    THE DATA, WHICH IS THEN USED BY THE WEB VIEW OBJECT
```

```
 1   IN ORDER TO MAKE THE DETERMINATION.

 2   Q    OKAY.  AND THEN THERE'S BEEN SOME TALK ABOUT

 3   TWO FINGER SCROLLING.  WOULD YOU TELL US WHAT

 4   YOU'VE CONCLUDED WITH RESPECT TO TWO-FINGER

 5   SCROLLING IN SOME OF THE SAMSUNG PRODUCTS THAT YOU

 6   ANALYZED?

 7   A    SO ON SOME OF THE SAMSUNG PRODUCTS THAT I HAD

 8   THE OPPORTUNITY, THAT I'VE ANALYZED, WHICH ARE THE

 9   ACCUSED PRODUCTS IN THIS MATTER, THE PRODUCTS DO

10   PERFORM MULTIPOINT SCROLLING, IN OTHER WORDS, BEING

11   ABLE TO SCROLL A DEVICE USING MULTIPLE POINTS.

12             AGAIN, THE PATENT CALLS FOR

13   DISTINGUISHING BETWEEN A MULTIPOINT SCROLL AND A

14   SINGLE -- I MEAN, A MULTIPOINT SCALE AND A SINGLE

15   POINT SCROLL.

16             WHAT I WAS ABLE -- WHAT I'VE OBSERVED IS

17   THAT SOME OF THE DEVICES DO PERFORM MULTIPOINT

18   SCROLLING WHICH, AGAIN, IS CONTRARY TO THE WAY THE

19   PATENT, THE WAY THE PATENT CLAIMS OPERATE.

20   Q    OKAY.  LET'S SHIFT GEARS NOW AND LET'S TALK

21   ABOUT THE '163 PATENT, OKAY?

22   A    SURE.

23   Q    I WANT TO MOVE AHEAD A LITTLE BIT.  I KNOW

24   THIS IS INTRODUCTORY SLIDE.  YOU'VE GOT THE SAME

25   PRIOR ART?
```

2913

```
 1    A    AGAIN, SAME PRIOR ART, YES, TO THE RIGHT.

 2    Q    THERE'S BEEN QUITE A BIT OF DISCUSSION OF

 3    LAUNCHTILE IN THIS CASE.  I THINK WE'VE HEARD

 4    ENOUGH ABOUT THAT.  SO WHY DON'T WE GO STRAIGHT TO

 5    THE ASSERTED CLAIM IN THE '163 PATENT.  THAT'S

 6    CLAIM 50, IS THAT RIGHT, SIR?

 7    A    CLAIM 50 IS THE ASSERTED CLAIM IN THE '163

 8    PATENT.

 9    Q    WHY DON'T WE DO THIS.  WHY DON'T WE -- LET'S

10    START WITH THE FIRST ELEMENT AND I WILL MOVE

11    THROUGH THE SLIDES AS YOU DESCRIBE WHERE YOU

12    BELIEVE THE ELEMENT AT ISSUE IS FOUND IN CLAIM 50.

13    ARE YOU WITH ME?

14    A    OKAY.  SO THE FIRST ELEMENT IS OF -- DESCRIBES

15    A PORTABLE ELECTRONIC DEVICE WHICH THE LAUNCHTILE

16    SYSTEM RUNNING ON THIS HEWLETT-PACKARD IPAQ

17    HANDHELD UNIT PERFORMS.  IT'S A CROSS -- IT'S WITH

18    A PROCESSOR, A TOUCH SENSITIVE SCREEN, MEMORY, AND

19    A SERIES OF PROGRAMS AND THOSE PROGRAMS CONTAIN

20    INSTRUCTIONS WHICH ALLOW THE PROGRAM TO DO WHAT

21    IT'S SUPPOSED TO DO.  SO THAT CLAIM ELEMENT IS MET.

22         SO THE SECOND PART OF CLAIM 50 SAYS

23    DISPLAYING AT LEAST A PORTION OF A STRUCTURED

24    ELECTRONIC DOCUMENT.

25         WHAT'S REFERRED TO THERE, IN LAUNCHTILE,
```

1    THE STRUCTURED ELECTRONIC DOCUMENT IS WHAT

2    DR. BEDERSON REFERRED TO AS THE INTERACTIVE ZOOM

3    SPACE.  THAT INTERACTIVE ZOOM SPACE IS THAT

4    COLLECTION OF 36 TILES THAT DR. BEDERSON TALKED

5    ABOUT, AND THOSE 36 TILES ARE AN INTERACTIVE ZOOM

6    SPACE THAT IS THE STRUCTURED ELECTRONIC DOCUMENT OF

7    THE REQUIREMENT.

8            IF YOU SEE HERE, WHAT IT ALLOWS IS FOR

9    THE IDENTIFICATION OF A FIRST BOX IN THAT -- IN A

10   PLURALITY OF BOXES OF CONTENT.

11   Q    OKAY.  AND THE NEXT LIMITATION, SIR?

12   A    SO THE -- THE PATENT REQUIRES THAT THE SYSTEM

13   BE ABLE TO DETECT A FIRST GESTURE AT THE LOCATION

14   DISPLAYED ON THE -- AT A LOCATION DISPLAYED ON THE

15   STRUCTURED ELECTRONIC DOCUMENT FOR DETERMINING A

16   FIRST BOX IN THE PLURALITY OF BOXES LOCATED AT THAT

17   LOCATION.

18           SO, IN OTHER WORDS, AS YOU CAN SEE HERE,

19   THE USER IS ABOUT TO SELECT AN AREA WITHIN THAT BOX

20   OF FOUR, BECAUSE THAT'S THE WAY THAT THE LAUNCHTILE

21   IS ORGANIZED IS A SERIES OF QUAD TILES, OR

22   TWO-BY-TWO ELEMENTS, AND WHEN THAT HAPPENS, THE

23   STRUCTURED ELECTRONIC DOCUMENT, OR THE INTERACTIVE

24   ZOOM SPACE, IS TRANSLATED AND ENLARGED, AND WE'LL

25   SEE THAT IN THE NEXT CLAIM ELEMENT.  THIS MEANS

```
 1    THIS ONE HAS BEEN MET.

 2              SO HERE WE SEE THE STRUCTURED ELECTRONIC

 3    DOCUMENT, THE INTERACTIVE ZOOM SPACE IS NOW

 4    TRANSLATED, MEANING SCROLLED, AND ENLARGED OR

 5    CENTERED, CENTERED AND ENLARGED SO THAT WE ENLARGE

 6    THAT, THAT FIRST BOX OF CONTENT WITHIN THAT

 7    STRUCTURED ELECTRONIC DOCUMENT.

 8              AND THAT'S WHAT'S SHOWN HERE.  THE

 9    FOUR -- THAT QUAD TILE, THOSE FOUR TILES, ARE NOW

10    SELECTED AND ENLARGED.  SO THAT CLAIM ELEMENT IS

11    MET.

12    Q    AND THE NEXT LIMITATION, SIR?

13    A    SO THE NEXT LIMITATION, THIS IS AN IMPORTANT

14    ONE, THE NEXT LIMITATION IS AFTER THE FIRST BOX IS

15    ENLARGED, DETECTING A SECOND BOX WHICH IS NOT THAT

16    FIRST BOX.

17              AND THAT SECOND GESTURE NOW, YOU CAN SEE

18    IT BEING DONE HERE, THE USER IS SELECTING THAT

19    SECOND BOX OTHER THAN THE FIRST BOX.

20              AND SO THE -- ONCE THE FIRST BOX HAS BEEN

21    ENLARGED, NOW I'M SELECTING A SECOND BOX, WHICH IS

22    THIS UPPER LEFT-HAND QUADRANT HERE.  SO THAT

23    ELEMENT IS MET.

24    Q    OKAY.  AND THEN FINALLY THE LAST LIMITATION,

25    SIR?
```

1916

```
1    A    AND THEN TRANSLATING AND ENLARGING, SO WHAT

2    HAPPENS IS THE SELECTION OF THAT SECOND BOX ALLOWS

3    FOR IT, FOR THE UNIT TO BE TRANSLATED AND CENTERED

4    ON THE DISPLAY SCREEN, AND THAT'S WHAT THE LAST

5    CLAIM ELEMENT MEANS, SO THAT THE SECOND BOX IS

6    CENTERED AND TRANSLATED.

7              SO, ONCE AGAIN, I'VE GONE FROM THE

8    STRUCTURED ELECTRONIC DOCUMENT, AND I SELECTED A

9    SPACE WITHIN THE STRUCTURED ELECTRONIC DOCUMENT,

10   AND THEN A FINER SPACE WITHIN THE STRUCTURED

11   ELECTRONIC DOCUMENT THAT ORIGINATED WITH THE TILES

12   OF 36.

13   Q    AND, SIR, HAVE YOU ALSO LOOKED AT AND ANALYZED

14   WHAT'S KNOWN AS XNAV RUNNING ON THE IPAQ AND THE

15   SOURCE CODE?

16   A    I HAVE.  I HAVE.

17   Q    AND GENERALLY, CAN YOU TELL US, WHAT'S YOUR

18   CONCLUSION AS TO WHETHER LAUNCHTILE AND XNAV ON THE

19   IPAQ INVALIDATE CLAIM 50 OF THE '163 PATENT?

20   A    SO XNAV IS A PRODUCT THAT IS DERIVED FROM

21   LAUNCHTILE.  WE'VE SEEN THE SOURCE CODE FOR XNAV.

22   IT RUNS ON A DIFFERENT SET OF HARDWARE, A SONY

23   DEVICE THAT'S A DIFFERENT SET OF HARDWARE.  I'VE

24   OPERATED IT.

25              AND IT PERFORMS ESSENTIALLY IDENTICAL
```

1       FUNCTIONS TO THE LAUNCHTILE SYSTEM.

2               SO IT TOO INVALIDATES.

3       Q    ALL RIGHT.  I'D LIKE TO MOVE ON TO ANOTHER

4       REFERENCE NOW, AND WE HAVE A -- I'VE ASKED THAT A

5       SUMMARY SLIDE BE PREPARED.  THIS IS THE AGNETTA

6       PATENT.  IT'S THE '632 PATENT.  DO YOU SEE THAT

7       PATENT IN YOUR BINDER THERE, SIR?  YOU SHOULD HAVE

8       AS EXHIBIT 561 SOME DOCUMENTATION RELATING TO

9       AGNETTA.  DO YOU SEE THAT?

10      A    I DO.

11      Q    AND THERE'S A -- IS THERE A PROVISIONAL

12      APPLICATION IN THE FRONT OF EXHIBIT 561 AND IT'S

13      THE '632 PATENT ITSELF IN THE BACK?

14      A    THERE IS A PROVISIONAL APPLICATION, YES.

15              MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE

16      FOR EXHIBIT DX 561 INTO THE RECORD.

17              MR. JACOBS:  NO OBJECTION, YOUR HONOR.

18              THE COURT:  ALL RIGHT.  IT'S ADMITTED.

19              (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

20              561, HAVING BEEN PREVIOUSLY MARKED FOR

21              IDENTIFICATION, WAS ADMITTED INTO

22              EVIDENCE.)

23              MR. DEFRANCO:  OKAY.  WHAT YOU WANT TO DO

24      SIR, RATHER THAN WALKING THROUGH -- BY THE WAY, IS

25      THIS SOMEWHAT -- IN THE CONSTRUCT OF WHAT'S SHOWN

2918

```
 1    IN THIS PATENT, IS IT SIMILAR SOMEWHAT TO
 2    LAUNCHTILE?
 3    A    IT IS SIMILAR TO LAUNCHTILE.  THE -- THIS
 4    CONFIGURATION --
 5    Q    AND LET ME JUST JUMP IN --
 6    A    SURE.
 7    Q    -- IN THE INTEREST OF TIME.  WHAT I'VE DONE
 8    HERE IS WE PUT THE CLAIMS SIDE BY SIDE WITH ONE
 9    FIGURE FROM THAT PATENT, AND RATHER THAN TAKE YOU
10    THROUGH EACH ELEMENT ONE SLIDE AT A TIME, COULD YOU
11    JUST DESCRIBE FOR US GENERALLY WHERE IN YOUR
12    OPINION THE LIMITATIONS IN CLAIM 50 OF THE '163
13    PATENT ARE FOUND IN THE AGNETTA REFERENCE, SIR?
14    A    SURE.  SO THE AGNETTA REFERENCE AGAIN IS
15    DIRECTED TO A PORTABLE ELECTRONIC DOCUMENT WITH
16    MEMORY AND PROCESSORS AND COMPUTER INSTRUCTIONS.
17    SO 50A AND 50B ARE MET.
18         50C IS MET BECAUSE WHAT IT DOES --
19    BECAUSE THE STRUCTURED ELECTRONIC DOCUMENT WAS
20    SIMILAR TO LAUNCHTILE IS WHAT IS REFERRED TO HERE
21    AS A TILE SPACE WHICH, AGAIN, PROVIDES INSIGHT INTO
22    THE INFORMATION AND CONTENT THAT IS ON THE
23    PARTICULAR ELECTRONIC DEVICE.
24         THE USER CAN SELECT ANY OF THOSE TILES.
25    ONCE THOSE TILES -- ANY TILE THAT IS SELECTED IS
```

```
 1   ENLARGED AND CENTERED, SO THAT MEANS THAT CLAIM 50D

 2   AND E ARE MET, AND F FOR THAT MATTER.

 3            AND IN ADDITION, ONCE THAT -- ONCE THE

 4   TILE HAS BEEN ENLARGED AND CENTERED, THE ADJACENT

 5   TILES AROUND IT ARE AVAILABLE, THE USER THEN HAS

 6   THE OPPORTUNITY TO SELECT THOSE ADJACENT TILES,

 7   WHICH THAT TILE WILL NOW BE CENTERED AND ENLARGED

 8   AS WELL.  SO MUCH LIKE LAUNCHTILE, THE AGNETTA

 9   PATENT PERFORMS THE SAME OPERATIONS AND SAME

10   FUNCTIONS.

11   Q    AND WHAT IS YOUR YOUR OPINION OF THE VALIDITY

12   OF CLAIM 50 OF THE '163 PATENT IN VIEW OF THE

13   AGNETTA REFERENCE, SIR?

14   A    I BELIEVE THE AGNETTA REFERENCE INVALIDATES

15   CLAIM 50 BECAUSE IT MEETS ALL THE CLAIM

16   LIMITATIONS.

17   Q    WE HAVE ONE MORE TO DO, THE ROBBINS PATENT.

18   IT SHOULD BE IN YOUR BINDER AGAIN.  IT'S '349

19   PATENT.  DO YOU SEE THAT THERE, SIR?  IT'S EXHIBIT

20   DX 1081.

21            AND, RYAN, WHILE WE'RE DOING THAT, CAN

22   YOU PLEASE PUT UP THE SUMMARY SLIDE FOR THAT

23   REFERENCE.

24   A    I DO.  I SEE EXHIBIT 1081 AND IT IS THE '349

25   OR ROBBINS PATENT.
```

```
1    Q    IS THAT THE ROBBINS PATENT THAT YOU ANALYZED

2    IN YOUR WORK IN THIS CASE?

3    A    IT IS.

4              MR. DEFRANCO:  YOUR HONOR, WE WOULD MOVE

5    EXHIBIT DX 1081 INTO EVIDENCE, PLEASE.

6              THE COURT:  ANY OBJECTION?

7              MR. JACOBS:  IS THAT THE PATENT?

8              THE COURT:  YES, IT IS.

9              MR. JACOBS:  NO OBJECTION.

10             THE COURT:  IT'S ADMITTED.

11             (WHEREUPON, DEFENDANT'S EXHIBIT NUMBER

12             1081, HAVING BEEN PREVIOUSLY MARKED FOR

13             IDENTIFICATION, WAS ADMITTED INTO

14             EVIDENCE.)

15             THE COURT:  GO AHEAD, PLEASE.

16   BY MR. DEFRANCO:

17   Q    MR. GRAY, ONE MORE TIME.  WE'RE ALMOST DONE.

18   WOULD YOU PLEASE DO THE SAME.  TAKE US THROUGH EACH

19   ELEMENT IN CLAIM 50 OF THE '163 PATENT AND TELL US

20   WHERE IN YOUR OPINION THAT IS FOUND IN THE ROBBINS

21   '349 PRIOR ART PATENT.

22   A    SO THE ROBBINS PATENT, AGAIN, IS A ZOOM

23   PATENT.  IT IS DIRECTED TO PORTABLE ELECTRONIC

24   DEVICES.  AGAIN, THERE'S A MAP APPLICATION

25   UNDERNEATH IT.  THE ROBBINS PATENT AGAIN BEING
```

```
 1    DIRECTED TO A PORTABLE ELECTRONIC DOCUMENT HAS
 2    PROCESSOR AND A TOUCHSCREEN AND A VARIETY -- AND
 3    MEMORY AND INSTRUCTIONS THAT PERFORM VARIOUS
 4    OPERATIONS.
 5              IN THIS PARTICULAR CASE, WHAT HAPPENS IS,
 6    IN THIS EXAMPLE THAT'S SHOWN HERE, THE SCREEN IS
 7    DIVIDED INTO THREE-BY-THREE MATRIX THAT OVERLAPS,
 8    AND WE'LL TALK A LITTLE BIT ABOUT WHY THAT
 9    OVERLAPS.
10              THE USER THEN CAN SELECT ANY OF THOSE
11    SEGMENTS AND THOSE SEGMENTS THEN BECOME CENTERED
12    AND ENLARGED ON THE DISPLAY SCREEN.
13              IF YOU NOTICE ON THE -- IF YOU TAKE THE
14    UPPER RIGHT-HAND SEGMENT, THERE'S A SMALL RECTANGLE
15    TO THE LEFT-HAND SIDE OF THAT SEGMENT.  THE
16    SELECTION OF THAT SEGMENT NOW ALLOWS THE, THE USER
17    INTERFACE TO MOVE TO THE ADJACENT SEGMENT AND HAVE
18    THAT BE CENTERED AND ENLARGED AS WELL.
19              SO THE PATENT MEETS THE LIMITATIONS OF
20    THE FIRST PART OF 50A AND B BECAUSE IT IS A
21    STRUCTURED -- IT'S A PORTABLE ELECTRONIC DEVICE.
22    IT ALLOWS FOR THE ENLARGEMENT OF THE DOCUMENTS,
23    THAT'S 50C.  IT ALLOWS FOR SELECTION OF THE SECOND,
24    A SECOND SPACE, AND THEN THE ENLARGEMENT AND
25    CENTERING OF THAT.  SO IT MEETS ALL THE LIMITATIONS
```

1    OF THE CLAIM AS WELL.

2    Q    AND, IN YOUR VIEW, IS CLAIM 50 INVALID IN VIEW

3    OF THIS REFERENCE?

4    A    AGAIN, ROBBINS AS WELL, THIS CLAIM COVERS ALL

5    OF THE CLAIM LIMITATIONS OF '163, CLAIM 50, AND

6    CONSEQUENTLY IS -- INVALIDATES IT AS WELL.

7    Q    SHIFTING GEARS BRIEFLY TO INFRINGEMENT,

8    NON-INFRINGEMENT ISSUE, YOU'VE HEARD THE TERM

9    "SUBSTANTIALLY CENTERED."  IS THAT CORRECT?

10   A    RIGHT.  ONE OF THE CLAIM ELEMENTS HERE, 50F,

11   FOR EXAMPLE, REFERS TO SOMETHING BEING

12   SUBSTANTIALLY CENTERED.

13   Q    AND WHAT IS YOUR VIEW ON THAT, SIR?

14   A    IN MY OPINION, THE TERM "SUBSTANTIALLY

15   CENTERED" IS AN AMBIGUOUS TERM.  I -- PART OF WHAT

16   A PATENT DOES IS PROVIDE INFORMATION TO AN ENGINEER

17   TO ALLOW THEM TO UNDERSTAND THE SCOPE OF THE PATENT

18   SO THAT THEY CAN AVOID INFRINGING THE PATENT.

19            I DON'T KNOW WHEN SOMETHING IS

20   SUBSTANTIALLY CENTER.  I KNOW WHEN SOMETHING IS

21   FULLY CENTERED OR NOT CENTERED, BUT "SUBSTANTIALLY

22   CENTERED" IS AMBIGUOUS.

23            HOW WOULD A PATENT -- HOW WOULD AN

24   ENGINEER UNDERSTAND HOW TO MAKE SOMETHING

25   SUBSTANTIALLY CENTERED OR NOT?  SO IN MY OPINION,

1    "SUBSTANTIALLY CENTERED" IS AN AMBIGUOUS TERM.

2    Q    AND, FINALLY, SIR, WITH RESPECT TO ELEMENT E,

3    DETERMINING A FIRST BOX IN THE PLURALITY OF BOXES

4    AT THE LOCATION OF THE FIRST GESTURE, CAN YOU GIVE

5    US YOUR OPINION AS IT RELATES TO INFRINGEMENT ON

6    THAT ELEMENT?

7    A    AGAIN, 50E TALKS ABOUT IDENTIFYING A BOX IN

8    PLURALITY OF BOXES AT THE LOCATION OF THE FIRST

9    GESTURE.

10        WHAT THAT SEEMS TO INTEND, AT LEAST THE

11   WAY I READ THIS CLAIM THE FIRST TIME I READ IT, WAS

12   THAT THERE ARE A PLURALITY OF BOXES.

13        IF YOU THINK ABOUT NESTED BOXES WHERE

14   THERE ARE MULTIPLE BOXES THAT ARE NESTED AND THE

15   USER SELECTS A BOX OR A SPACE, SOME LOCATION WITHIN

16   THAT NESTED BOX, WHAT HAPPENS IS THE SYSTEM WOULD

17   THEN NEED TO DETERMINE WHICH ONE OF THOSE NESTED

18   BOXES THE USER WAS ACTUALLY INTENDING TO HAVE

19   CENTERED AND ENLARGED.

20        SIMILARLY TO THE WAY LAUNCHTILE WORKS.

21   IF YOU RECALL LAUNCHTILE, YOU CAN SELECT ANY ONE OF

22   THE FOUR IN THE QUAD TILES AND THAT WHOLE QUAD TILE

23   GETS ENLARGED AND CENTERED.

24        AGAIN, I'M NOT SEEING ANY EVIDENCE AT ALL

25   SUPPLIED, OR ANYTHING IN ANY OF THE REPORTS THAT

1    INDICATE HOW THE ACCUSED PRODUCTS MEET THE

2    LIMITATION OF SELECTING A -- SOMETHING IN A

3    PLURALITY OF BOXES.  SO, AGAIN, I'M NOT SEEING IT.

4              MR. DEFRANCO:  MY TIME IS UP.  THANK YOU,

5    SIR.

6              THE COURT:  ALL RIGHT.  THE TIME IS NOW

7    4:20.  GO AHEAD, PLEASE, WITH ANY CROSS.

8                      **CROSS-EXAMINATION**

9    BY MR. JACOBS:

10   Q    GOOD AFTERNOON, MR. GRAY.

11   A    GOOD AFTERNOON.

12   Q    NOW, YOUR TESTIMONY ON THE SUBJECT OF

13   INVALIDITY WAS PREMISED ON THE IDEA OF

14   ANTICIPATION; CORRECT, SIR?

15   A    THAT'S CORRECT.

16   Q    AND ANTICIPATION IS ALL YOU SPOKE TO; CORRECT?

17   A    THAT'S CORRECT.

18   Q    AND ANTICIPATION REQUIRES THAT EVERY ELEMENT,

19   THE JURY HAS HEARD THIS MANTRA, EVERY ELEMENT OF

20   THE CLAIM BE PRESENT IN THE PROPOSED INVALIDATING

21   REFERENCE; CORRECT, SIR?

22   A    THAT'S CORRECT.

23   Q    AND SO IF THE JURY --

24   A    WELL, WITH A POSSIBLE EXCEPTION THERE.  IT IS

25   EITHER -- IT IS EITHER COVERED OR IS INHERENTLY IN

2925

1    THE REFERENCE.

2    Q    AND SO IF THE JURY FINDS THAT IN -- WHEN IT

3    COMES TO INVALIDITY, IF ANY ELEMENT OF THE CLAIM IS

4    NOT PRESENT IN THE PROPOSED INVALIDATING REFERENCE,

5    THEN YOUR OPINION SHOULD BE REJECTED; CORRECT, SIR?

6    A    AGAIN, WITH THE PROVISO THAT IF IT IS AN

7    ELEMENT THAT IS INHERENT OR IMPLIED, THAT'S MY

8    UNDERSTANDING.

9    Q    OTHERWISE YOU AGREE WITH ME, YOUR OPINION

10   RISES AND FALLS ON THE IDEA OF -- THERE'S NO CLOSE

11   HERE, YOU EITHER GOT IT, EVERY ELEMENT IS PRESENT,

12   OR YOU DON'T.  CORRECT, SIR?

13   A    EITHER EVERY ELEMENT IS PRESENT OR IT IS

14   INHERENT AS IS REQUIRED.

15   Q    NOW, I LISTENED CAREFULLY TO THE ANSWER TO THE

16   QUESTION ABOUT YOUR ROLE IN LITIGATION SUPPORT OVER

17   THE LAST COUPLE YEARS, AND YOU SAID YOU SPENT SOME

18   TIME DOING LITIGATION SUPPORT.

19          WHAT DID YOU MEAN BY "SOME TIME," SIR?

20   A    WELL, ACTUALLY SINCE, STARTING IN 1984, I DID

21   SOME LITIGATION SUPPORT, AND THROUGHOUT MY CAREER

22   AS AN ENGINEER, I PERIODICALLY DID LITIGATION

23   SUPPORT ASSIGNMENTS.  SO IT'S BEEN OVER A LONG

24   TIME, SINCE 1984.

25   Q    BUT OVER THE LAST COUPLE OF YEARS, ALMOST ALL

1

2

3                        CERTIFICATE OF REPORTERS

4

5

6             WE, THE UNDERSIGNED OFFICIAL COURT

7    REPORTERS OF THE UNITED STATES DISTRICT COURT FOR

8    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11             THAT THE FOREGOING TRANSCRIPT,

12   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

13   CORRECT TRANSCRIPT OF OUR SHORTHAND NOTES TAKEN AS

14   SUCH OFFICIAL COURT REPORTERS OF THE PROCEEDINGS

15   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

16   TRANSCRIPTION TO THE BEST OF OUR ABILITY.

17

18                       /S/
                         _____
19                       LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595
20

21                       /S/
                         _____
22                       IRENE RODRIGUEZ, CSR, CRR
                         CERTIFICATE NUMBER 8074
23

24
                         DATED:  AUGUST 15, 2012
25