Estrich Declaration

Exhibit 12

Neutral Citation Number: [2012] EWCA Civ 1430

Case No: A3/2012/1845

**IN THE COURT OF APPEAL (CIVIL DIVISION)**
**ON APPEAL FROM THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION PATENTS COURT**
**HHJ BIRSS QC**
**[2012] EWHC 1882 (Pat)**

Royal Courts of Justice
Strand, London, WC2A 2LL

Date: 09/11/2012

**Before:**

**LORD JUSTICE LONGMORE**
**LORD JUSTICE KITCHIN**
and
**SIR ROBIN JACOB**

- - - - - - - - - - - - - - - - - - - - -
**Between:**

| | |
|---|---|
| **Samsung Electronics (UK) Limited** | **Claimant/Respondent** |
| - and - | |
| **Apple Inc** | **Defendant/Appellant** |

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

Michael Beloff QC and Richard Hacon (instructed by Freshfields Bruckhaus Deringer) for Apple Inc
Henry Carr QC and Miss Anna Edwards-Stuart (instructed by Simmons & Simmons) for Samsung Electronics (UK) Limited

Hearing date: 1 November 2012
- - - - - - - - - - - - - - - - - - - - -

# Judgment

**Sir Robin Jacob** (giving the first judgment at the invitation of Longmore LJ)**:**

1. On 18th October 2012 this court dismissed Apple's appeal from HHJ Birss's decision that none of the Samsung tablet computers infringed Apple's Community registered design No. 000181607-001, [2012] EWCA Civ 1339.  For the reasons we gave (essentially because Apple had created much uncertainty in the market place) we thought it necessary to make a publicity order requiring Apple to disperse the fog of confusion it had created.

2. Samsung say that Apple has failed to comply with the publicity order we made and that accordingly we ought to make a further, clearer and more specific order.  We heard the parties on 1st November and decided that such an order was indeed necessary.  The order was made at the end of the hearing.  These are my reasons for it.

**The Order which was made on 18th October**

3. The terms of the first order required Apple to give publicity to the decisions in two ways.  First was via its UK homepage and the second was via advertisements in newspapers and magazines.

4. The order about the homepage was (so far as matters) as follows:

    > Within seven days of the date of this Order the Appellant shall at its own expense, provide on the homepage of its UK website a link … entitled "Samsung/Apple UK judgment" to the notice specified in Annex 1 to this Order together with hyperlinks to [the judgments of HHJ Birss and this Court], said link, notice and hyperlinks to remain for a period of one month.

    The required Notice (Annex 1) read:

    > On 9th July 2012 the High Court of Justice of England and Wales ruled that [Samsung's] Galaxy Tablet Computers, namely the Galaxy Tab 10.1, Tab 8.9 and Tab 7.7 do not infringe Apple's Community registered design No. 0000181607-0001.  A copy of the full judgment of the High Court is available from [link]

    > That Judgment has effect throughout the European Union and was upheld by the Court of Appeal of England and Wales on 18th October 2012.  A copy of the Court of Appeal's judgment is available from [link].  There is no injunction in respect of the Community Registered Design in force anywhere in Europe.

5. The order about newspaper advertisements read:

    > Within seven days of the date of this Order the Appellant shall, at it own expense, submit for publication … the notice specified in Annex 1 on a page earlier than page 6 to be published in the earliest available issue of the Financial Times, the Daily Mail, The Guardian, Mobile Magazine and T3 Magazine.

6.  The order was not intended to and did not prevent Apple's freedom of expression. It specifically added:

    > Nothing in this Order shall prevent the Appellant from publishing any comment or information regarding the dispute between the parties in respect of the Samsung Galaxy Tablet computers in issue in this appeal.

**What Apple did**

   *(a)    Publicity in newspapers and magazines*

7.  Although it is a lesser matter than the dispute about what Apple did on its website, I have to record that Apple's compliance with the newspaper advertisement order was lackadaisical at best. The order required publication "in the earliest available issue" of the specified newspapers and magazines. I would have thought that self-evidently meant what it said – get the advertisements into each publication as soon as possible.

8.  What Apple chose to do as regards the newspapers and magazines was less than that. Its Vice President Worldwide Marketing Communications said he understood the approach to be adopted was "to co-ordinate adverts across those publications in order to ensure the widest readership possible is exposed to the advert on the same day." That apparently meant to Apple so far as the newspapers were concerned the same day, but not the magazines which had longer lead times. Apple accordingly arranged for November 16th for all the newspapers. I note in passing that it is not said that November 16th was the earliest possible date even for just all the newspapers. I would be surprised if it were, given that our order was made on 18th October.

9.  So there was self-evident non-compliance with the newspaper/magazine aspect of the publicity order. Apple did not contend otherwise. Its breach of that part of the order is clearly an additional factor justifying the indemnity costs order we made against Apple.

   *(b)    The Website*

10. This is much more serious. Samsung's major complaint, the matter in respect of which it seeks a further and better order, was in respect of Apple's purported compliance with the website aspect of the order. On its homepage it provided a link (albeit in small type after "Terms of use", "Privacy Policy" and "Use of Cookies") reading "Apple/Samsung Judgement". So far that was in accordance with the order.

11. But if you clicked the link you came to the following (the "Contested Notice"):

    > **Samsung / Apple UK judgment**
    >
    > On 9th July 2012 the High Court of Justice of England and Wales ruled that Samsung Electronic (UK) Limited's Galaxy Tablet Computer, namely the Galaxy Tab 10.1, Tab 8.9 and Tab 7.7 do not infringe Apple's registered design No. 0000181607-0001. A copy of the full judgment of the High court is available on the following link www.bailii.org/ew/cases/EWHC/Patents/2012/1882.html.

> In the ruling, the judge made several important points comparing the designs of the Apple and Samsung products:
>
> "The extreme simplicity of the Apple design is striking. Overall it has undecorated flat surfaces with a plate of glass on the front all the way out to a very thin rim and a blank back. There is a crisp edge around the rim and a combination of curves, both at the corners and the sides. The design looks like an object the informed user would want to pick up and hold. It is an understated, smooth and simple product. It is a cool design."
>
> "The informed user's overall impression of each of the Samsung Galaxy Tablets is the following. From the front they belong to the family which includes the Apple design; but the Samsung products are very thin, almost insubstantial members of that family with unusual details on the back. They do not have the same understated and extreme simplicity which is possessed by the Apple design. They are not as cool."
>
> That Judgment has effect throughout the European Union and was upheld by the Court of Appeal on 18 October 2012. A copy of the Court of Appeal's judgment is available on the following
> link www.bailii.org/ew/cases/EWCA/Civ/2012/1339.html.
> There is no injunction in respect of the registered design in force anywhere in Europe.
>
> However, in a case tried in Germany regarding the same patent, the court found that Samsung engaged in unfair competition by copying the iPad design. A U.S. jury also found Samsung guilty of infringing on Apple's design and utility patents, awarding over one billion U.S. dollars in damages to Apple Inc. So while the U.K. court did not find Samsung guilty of infringement, other courts have recognized that in the course of creating its Galaxy tablet, Samsung wilfully copied Apple's far more popular iPad.

**Samsung's complaints**

12.   The Contested Notice is a mixture of the notice we ordered along with material added by Apple. There are two kinds of addition.

13.   The first is how Apple published the notice we did order (Annex 1 quoted above). Instead of simply publishing the text as ordered, Apple broke it up, interspersing it with text of its own devising. The first and fifth paragraphs constitute the notice as ordered. The middle three paragraphs were interspersed by Apple.

14.   The second kind of added matter was via the concluding paragraph.

15.   Samsung objects to each kind of addition. As regards the first it says it was not open to Apple to break up the text ordered by the court by adding in the middle of it matter

that was not ordered. Moreover, even if Apple was at liberty to intersperse matter, that liberty did not extend to adding misleading matter and the interspersed matter is indeed misleading. As regards the concluding paragraph, Samsung says that Apple were not at liberty to add misleading material to what was ordered so as undermine its intended effect, namely "removing the fog".

16. Samsung has supported its application by citation from a large number of press and web reports showing that the effect of the Contested Notice has indeed been to undermine what was intended. Our attention was specifically drawn, for instance, to an online magazine called "The Register":

    > APPLE: SCREW YOU, BRITS, everyone else says Samsung copied us
    >
    > Apple has complied with a UK court order by admitting on its website that Samsung's Galaxy Tab did not rip off the patented iPad design. High Court Judge Birss had instructed Apple to publish a statement online and in print that the South Korean electronics giant had not infringed Cupertino's patent.
    >
    > The statement can be found via a small link labelled "Samsung/Apple UK judgement" on Apple's UK homepage and is a mealy mouthed six-paragraph account of the litigation over Apple's registered design.

17. There is much more material of the same sort. Nearly all of it reveals a fundamental misconception, namely that the UK case was about whether Samsung had copied the iPad. I cannot emphasise enough that it was not. As I said in my earlier judgment "this case must be decided as if the iPad never existed". "It is not about whether Samsung copied the iPad" and "the registered design is <u>not</u> the same as the iPad."

**My conclusions as regards the Contested Notice**

18. Mr Michael Beloff QC for Apple submitted that Apple could not be held responsible for inaccurate reporting by journalists. But it can, if it contributed to that inaccuracy by inaccurate statements and false innuendo in the Contested Notice as I consider it did.

19. For I accept all of Samsung's contentions. Firstly I do not consider it was open to Apple to add matter in the middle of the notice we ordered to be published. A notice with such matter is simply not the notice ordered.

20. Even if that were not so, it cannot be legitimate to break up the ordered notice with false material. And the matter added was indeed false. Before introducing the quotes from HHJ Birss it begins:

    > In the ruling, the judge made several important points comparing the designs of the Apple and Samsung products.

    But the Judge was not comparing "the Apple and Samsung products." There is not and has never been any Apple product in accordance with the registered design. Apple's statement would clearly be taken by ordinary readers and journalists to be a

> reference to a real Apple product, the iPad. By this statement Apple was fostering the false notion that the case was about the iPad. And that the Samsung product was "not as cool" as the iPad.

21. I turn to the last paragraph. I do not think the order as made precluded any addition to the required notice if that addition had been true and did not undermine the effect of the required notice. But I do consider that adding false and misleading material was illegitimate. For by adding such material the context of the required notice is altered so that it will be understood differently.

22. Here what Apple added was false and misleading. I turn to analyse it. The first sentence reads:

> However, in a case tried in Germany regarding the same patent, the court found that Samsung engaged in unfair competition by copying the iPad design.

That is false in the following ways:

(a) "Regarding the same patent." No patent of any kind has been involved in Germany or here, still less "the same patent."

(b) As regards the Community Registered Design, the German Courts held that neither the Galaxy 10.1 nor the 8.9 infringed it. As to the 7.7 there was for a short while a German provisional order holding that it infringed. Whether there was a jurisdiction to make that order is very doubtful for the reasons given in my earlier judgment but in any event the order had been (or should have been) discharged by the time the Contested Notice was published.

(c) There is a finding and injunction, limited to Germany alone, that the 10.1 and 8.9 infringe German unfair competition law. But the statement is likely to be read as of more general application.

23. The second sentence reads:

> A U.S. jury also found Samsung guilty of infringing on Apple's design and utility patents, awarding over one billion U.S. dollars in damages to Apple Inc.

That is misleading by omission. For the US jury specifically rejected Apple's claim that the US design patent corresponding to the Community Design in issue here was infringed. The average reader would think that the UK decision was at odds with that in the US. Far from that being so, it was in accordance with it.

24. The third sentence reads:

> So while the U.K. court did not find Samsung guilty of infringement, other courts have recognized that in the course of creating its Galaxy tablet, Samsung wilfully copied Apple's far more popular iPad.

> This is calculated to produce huge confusion. The false innuendo is that the UK court came to a different conclusion about copying, which is not true for the UK court did not form any view about copying. There is a further false innuendo that the UK court's decision is at odds with decisions in other countries whereas that is simply not true.

25. The reality is that wherever Apple has sued on this registered design or its counterpart, it has ultimately failed. It may or may not have other intellectual property rights which are infringed. Indeed the same may be true the other way round for in some countries Samsung are suing Apple. But none of that has got anything to do with the registered design asserted by Apple in Europe. Apple's additions to the ordered notice clearly muddied the water and the message obviously intended to be conveyed by it.

**Jurisdiction to make a Further Order**

26. Mr Beloff suggested that we had no jurisdiction to make a further order. But he accepted that the court has power to vary its orders to make their meaning and intention clear. The meaning and intention of the first order was plain: to require Apple to publicise properly that there was no infringement of the registered design. The proposed order now sought does no more than that.

27. So it is unnecessary to explore further the power of the court to grant an injunction where an earlier court order has been breached or disobeyed. One would expect such a power to exist irrespective of formal proceedings for contempt. As my late father observed:

> Under its inherent jurisdiction, the court has undoubted power to compel observance of its process and obedience of and compliance with its orders. These powers are inherent in the sense that they are necessary attributes to render the judicial function effective in the administration of justice, *The Inherent Jurisdiction* Current Legal Problems, 1970 p.44

**The Form of the Further Order**

28. The form of this was settled at the hearing. So I need do no more than explain the reasons for the matters over which there was some dispute.

29. Given our finding that the Contested Notice did not comply with our order and did not achieve what was intended there was no dispute but that we should order it be removed. There was dispute as to what should go up in its place. Apple contended that no more was needed on its home page. We thought otherwise. The Contested Notice had had over a million hits. It was necessary that the fact it was misleading be brought home. Only a notice on Apple's homepage could be sure to do that. We were of course conscious that a notice on the homepage was highly undesirable from Apple's point of view, but its own actions had made it necessary. We also thought that a rather longer period was needed than the one month period of the original order. We ordered that the notice and link should stay up until 15th December. The notice on the homepage had to make it clear that the Contested Notice was inaccurate and did not comply with the first order.

30. We also thought it appropriate that the correct statement – the notice required by the original notice – should appear without modification or addition.  Apple's previous modifications and additions made it clear that it should not be allowed to do the same or something similar again.  Of course that did not preclude it from making statements elsewhere – even untrue ones which might amount to a libel or malicious falsehood.  That would amount to a prior restraint which would obviously be inappropriate.   All we required is that the notice we ordered should appear unvarnished or unembellished in any way.

31. As to the costs (lawyers' fees) to be awarded against Apple, we concluded that they should be on an indemnity basis.  Such a basis (which is higher than the normal, "standard" basis) can be awarded as a mark of the court's disapproval of a party's conduct, particularly in relation to its respect for an order of the court.  Apple's conduct warranted such an order.

32. Finally I should mention the time for compliance.  Mr Beloff, on instructions (presumably given with the authority of Apple) told us that "for technical reasons" Apple needed fourteen days to comply.  I found that very disturbing: that it was beyond the technical abilities of Apple to make the minor changes required to own website in less time beggared belief.  In end we gave it 48 hours which in itself I consider generous.  We said the time could be extended by an application supported by an affidavit from a senior executive explaining the reasons why more was needed.  In the event no such application was made.   I hope that the lack of integrity involved in this incident is entirely atypical of Apple.

**Lord Justice Kitchin:**

33. I agree.

**Lord Justice Longmore:**

34. I also agree.