HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**REPLY DECLARATION OF MARYLEE ROBINSON IN SUPPORT OF APPLE'S MOTIONS FOR A PERMANENT INJUNCTION, FOR DAMAGES ENHANCEMENT, FOR SUPPLEMENTAL DAMAGES AND FOR PREJUDGMENT INTEREST; AND JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT [FRCP 50, 59]** |

I, Marylee Robinson, hereby declare as follows:

## I. BACKGROUND

1. I am a Director with Invotex Group, located at 1637 Thames Street, Baltimore, Maryland 21231. I previously submitted a declaration in support of Apple's Motion for Judgment as a Matter of Law (Renewed), New Trial, and Amended Judgment, and Apple's Motion for a Permanent Injunction and for Damages Enhancements. I submit this declaration in further support of those same motions.

## II. SUPPLEMENTAL DAMAGES CALCULATIONS

2. In Samsung's opposition to Apple's request for supplemental damages, Samsung argues that Apple's $50.40 per-sale damages rate based on the jury's total damages award "awards Apple supplemental damages based on amounts the jury never awarded as to any of [the] eight products" that remained on sale after June 30, 2012. (Dkt. No. 2053 at 26:22-23.) "For instance," Samsung explains, "Apple's average includes $143,539,179 the jury awarded on the Fascinate (Dkt. 1931), but the Fascinate is not one of the products for which Apple seeks supplemental damages." (*Id.* at 26:23-25.)

3. As discussed in my prior declaration, I calculated supplemental damages based on the jury's verdict as a whole. This approach was more conservative than calculating a per-unit rate based only on the eight specific products. As illustrated in **Exhibit 1** attached hereto, if Apple had calculated supplemental damages using only the eight specific products, as opposed to the entire jury award, the resulting per-unit damages figure would have been $50.85, instead of $50.40, resulting in an additional $1.07 million in supplemental damages.

4. I used all the sales data available at the time of my declaration to prepare the projections of future sales of infringing products. As discussed at paragraphs 7 to 12 of my declaration, this calculation was intended to serve as an estimate for all infringing products and not just the eight products that I used for purposes of the projection.

REPLY ROBINSON DECL. ISO APPLE'S MOT. FOR PERMANENT INJUNCTION, DAMAGES ENHANCEMENT, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST; AND JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT [FRCP 50, 59]
CASE NO. 11-CV-01846-LHK (PSG)
sf-3213371

1

5. Samsung has provided a declaration from Mr. Kerstetter which only includes figures on unit sales for the eight products used in the projections, as well as a subsequently produced single page with figures for the Galaxy Tab 7.0. I understand that Apple asked for the underlying documents created in the ordinary course to verify these figures, as well as all infringing and diluting devices, but Samsung has refused to provide them. Discovery in this case demonstrates that this information is easily available to Samsung and could be produced. The failure to do so is a significant concern given the substantial difficulties that Invotex had in getting accurate financial data from Samsung during discovery in this case. It is a further concern because I was able to verify that products were being sold by carriers in September in a manner that is not consistent with Mr. Kerstetter's statement.[1] Finally, Samsung's prior data reflects a pattern in which, for some products, sales end for a period and then resume later.[2] Without the ability to verify using information prepared in the ordinary course of Samsung's business, I continue to believe that my prior projections are sensible projections of Samsung's sales of infringing products.

6. As an alternative, I have updated my projections and calculations using the figures provided by Mr. Kerstetter and Samsung. With this information included, my calculation of supplemental damages through December 31, 2012 is $101,167,892 (**see Exhibit 2**). The resulting daily figure would be $399,196 (**see Exhibit 2.3**). My calculation of prejudgment interest on the supplemental damages would be $770,339 (**see Exhibit 3**). Further, the alternative daily interest accumulated on Apple's supplemental and verdict damages would be $106,872 (**see Exhibit 4**).

---

[1] For example, Mr. Kerstetter states that there were zero unit sales in September 2012 of the Galaxy S 4G, but I was able to verify that carriers were offering the Galaxy S 4G for sale in September 2012. See paragraph 8, footnote 3, of my September 21 declaration, and Exhibit 12 thereto. (*See* Dkt. No. 1982-71 ¶ 8 & n.3; Dkt. No. 1982-83.)

[2] For example, as reflected in Exhibit 2.1 to my September 21 declaration, the Continuum experienced a stop in sales in February 2011, a restart in sales in March 2011, another stop in sales in October through November 2011, and another restart in sales in December 2011. Likewise, the Indulge experienced a stop in sales in April through June 2011 and a restart in sales in July 2011. (Dkt. No. 1982-73 at 4.)

REPLY ROBINSON DECL. ISO APPLE'S MOT. FOR PERMANENT INJUNCTION, DAMAGES ENHANCEMENT, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST; AND JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT [FRCP 50, 59]
CASE NO. 11-CV-01846-LHK (PSG)
sf-3213371

2

## III. ENHANCEMENT DAMAGES

### A. Model Reflecting the Benefit of Samsung's Increase in Market Share from the Products that Violated Apple's Trade Dress

7. Samsung argues that the model described in Paragraphs 25-30 and Exhibits 7-8 of my September 21, 2012 declaration overstates the harm that Samsung's sale of the trade-dress diluting products has caused to Apple. I disagree with those arguments. My calculations include a number of conservative assumptions that tend to understate Apple's harm.

8. Most significant among those is the 50% reduction in Apple's share of available units that I used to be conservative and to account for other factors that may affect the rate at which Apple would have acquired sales. This adjustment, which was not used in any prior model, is sufficient to account for differences in carrier preferences, operating system preferences, price or other market considerations as calculated in Mr. Musika's previously disclosed model of Apple's lost profits used at trial. In the absence of this 50% adjustment, the model suggests that Apple would have lost more than $1.4 billion in lost profits.

9. Another conservative assumption is the use of unadjusted market share for Apple in the calculation. This understates the number of units captured by Apple as compared to a traditional *Mor-Flo* analysis and correspondingly reduces the lost profits calculated in the model. On average, using a traditional *Mor-Flo* analysis would have increased Apple's market share from 30% to 37% from Q3-2010 to Q2-2012.

10. Samsung claims that the model failed to account for Apple's capacity. That is incorrect. Before submitting my original declaration, I checked my final unit sales figures against the capacity calculations prepared by Mr. Musika and used at trial, which showed more than sufficient inventory and manufacturing capacity to account for the unit sales included in the model.

11. Samsung claims the model does not account for non-infringing and non-diluting units of Samsung's smartphones. That is incorrect. First, the revenue and lost profits calculations reflected in Exhibits 7 and 8 of my September 21 declaration do not include any unit sales other than infringing or diluting units. Second, by using the percent reduction described in paragraph

REPLY ROBINSON DECL. ISO APPLE'S MOT. FOR PERMANENT INJUNCTION, DAMAGES ENHANCEMENT, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST; AND JUDGMENT AS A MATTER OF LAW (RENEWED), NEW TRIAL, AND AMENDED JUDGMENT [FRCP 50, 59]
CASE NO. 11-CV-01846-LHK (PSG)
sf-3213371

3

1  27 of my September 21 declaration, which was applied only to infringing and diluting units, I effectively assumed that Samsung would retain all of its sales of non-infringing and non-diluting smartphones. Thus, the model assumes that Samsung's non-infringing and non-diluting smartphones would contribute substantially to increases in Samsung's market share after 2010.

12. Samsung claims that I failed to account for the impact of hypothetical changes to products to design-around Apple's patents as considered by Mr. Musika. The model differs from Mr. Musika's analysis for two reasons. First, the model I presented seeks to account for what Samsung did do beginning in 2010 and through 2012, and it is my understanding that, with very limited exceptions involving two of the utility patents, Samsung did not implement alternative designs or features that sought to avoid Apple's intellectual property. Second, the model attempts to account for the "head start" or benefit that Samsung obtained by substantially increasing its market share following introduction of the products that violated the trade dress, design patents and utility patents. The introduction of a hypothetical design-around after the diluting and infringing phones were in the marketplace would not impact those downstream benefits and thus would not reduce the harm suffered by Apple.

13. Samsung claims that the model captures sales for which Apple has already been awarded lost profits as a part of the $1,049,343,540 jury award. I disagree. First, it is not possible to know with certainty how many units sold by Samsung the jury included in an Apple's lost profits calculation. Moreover, if Samsung is correct in its hypothesis that the jury awarded $91 million in lost profits, that award would correspond to less than 300,000 lost unit sales. My model predicts Apple would have lost over $700 million in lost profits corresponding to over 2 million unit sales attributable to Samsung's dilution, while I understand Apple is only seeking $400 million in enhancement damages under the Lanham Act. The model reflects an analysis of incremental gains to Samsung and incremental harm to Apple from gains in Samsung's market share beyond the original 5% that existed in the second quarter of 2010.

14. In light of the multiple conservative adjustments included in the model, the relative rate at which Apple captures sales not made by Samsung in this model is very similar to Mr. Musika's prior analysis. Apple captures approximately 12% in Mr. Musika's analysis as reflected

on page 40 of his March 22 expert report, and approximately 10% in the model included with my September 21 declaration. The methods differ but the results are complementary and consistent.

15. After reviewing the criticisms stated by Samsung, I continue to conclude that the model reflected in my prior declaration provides an appropriate analysis of the benefit that Samsung received and the harm Apple experienced based on the "head-start" Samsung received by substantially increasing its market share by selling products that violated the Lanham Act, as found by the jury. Market share increases have substantial positive effects on the sales of follow on products by the same company and a corresponding negative effect on other competitors. That was certainly the case in the present circumstances as reflected in the model. The jury's verdict does not compensate Apple for this harm.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed this 9th day of November 2012, at Baltimore, Maryland.

_____
MARYLEE P. ROBINSON