QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, AND/OR REMITTITUR** |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................1

II.  THE JURY FOREMAN'S BIAS REQUIRES A HEARING AND NEW TRIAL..............1

    A.  Foreman Hogan Failed To Disclose Material Information During *Voir Dire* ..........1

    B.  Mr. Hogan's Dishonesty Supports An Inference Of Bias.........................................2

    C.  Samsung Has Not Waived Its Juror Bias Arguments .................................................4

III.  SAMSUNG IS ENTITLED TO JMOL ON APPLE'S DESIGN PATENT
INFRINGEMENT CLAIMS.........................................................................................5

    A.  Apple's Attempt To Re-Write The Infringement Test Lacks Merit ........................5

    B.  The Record Evidence Establishes that Apple's Design Patents Are Invalid ............6

IV.  SAMSUNG IS ENTITLED TO JMOL ON APPLE'S TRADE DRESS CLAIMS .............7

V.  SAMSUNG IS ENTITLED TO JMOL ON APPLE'S UTILITY PATENT CLAIMS........9

VI.  SAMSUNG IS ENTITLED TO JMOL ON WILLFULNESS ...........................................10

VII.  SAMSUNG IS ENTITLED TO JMOL ON APPLE'S CLAIMS OF DIRECT
INFRINGEMENT AND INDUCEMENT.........................................................................11

VIII.  SAMSUNG IS ENTITLED TO JMOL, NEW TRIAL AND/OR REMITTITUR ON
DAMAGES .................................................................................................................12

    A.  The Court Can And Should Interpret The Damages Verdicts And Correct
Errors.........................................................................................................................12

    B.  Apple Fails To Justify The Jury's Award Of Samsung's Profits...........................14

    C.  Apple Fails To Justify The Jury's Lost Profits Award ...........................................15

    D.  Apple Points To No Evidence Supporting The Jury's Royalty Award ..................16

    E.  Apple's Incorrect Notice Date Requires A New Trial Or Remittitur .....................16

    F.  Apple's Arguments Against Remittitur Fail ............................................................18

    G.  The Parties' Stipulation Does Not Apply to Samsung's Post-Trial Arguments ......19

IX.  SAMSUNG IS ENTITLED TO JMOL ON ITS OFFENSIVE CASE ...............................19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Accuride Int'l, Inc. v. Accuride Corp.*,
  871 F.2d 1531 (9th Cir. 1989)......................................................................................9

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
  439 F.3d 1365 (Fed. Cir. 2006)....................................................................................6

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  544 F.3d 1310 (Fed. Cir. 2008)....................................................................................7

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006)......................................................................................8

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
  1 F.3d 1214 (Fed. Cir. 1993)......................................................................................15

*Broklesby v. United States*,
  767 F.2d 1288 (9th Cir. 1985)....................................................................................17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)....................................................................................................15

*Brown v. Ala. Dep't of Transp.*,
  597 F.3d 1160 (11th Cir. 2010)..................................................................................13

*Bush & Lane Piano Co. v. Becker Bros.*,
  222 F. 902 (2d Cir. 1915)...........................................................................................14

*Bush & Lane Piano Co. v. Becker Bros.*,
  234 F. 79 (2d Cir. 1916).............................................................................................14

*Ceeco Mach. Mfg, Ltd. v. Intercole, Inc.*,
  817 F. Supp. 979 (D. Mass. 1992) .............................................................................16

*Chuy v. The Philadelphia Eagles Football Club*,
  595 F.2d 1265 (3d Cir. 1979).....................................................................................13

*Clark v. United States*,
  289 U.S. 1 (1933)..........................................................................................................3

*CollegeNET, Inc. v. XAP Corp.*,
  483 F. Supp. 2d 1058 (D. Or. 2007) ............................................................................9

*Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.*,
  114 F. Supp. 2d 992 (S.D. Cal. 2000).........................................................................9

*Cornell Univ. v. Hewlett Packard Co.*,
  609 F. Supp. 2d 279 (N.D.N.Y. 2009) .......................................................................13

*Crocs, Inc. v. ITC*,
  598 F.3d 1294 (Fed. Cir. 2010).....................................................................................6

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
    818 F. Supp. 2d 1193 (E.D. Cal. 2011) ................................................................10

*Dyer v. Calderon*,
    151 F.3d 970 (9th Cir. 1998) ..................................................................2, 3, 4, 5

*Ecolab, Inc. v. FMC Corp.*,
    569 F.3d 1335 (Fed. Cir. 2009) ............................................................................12

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ..............................................................................6

*Eli Lilly and Co. v. Teva Parenteral Meds., Inc.*,
    689 F.3d 1368 (Fed. Cir. 2012) ............................................................................7

*Energy Transp. Group, Inc. v. William Demant Holding A/S*,
    2012 WL 4840813 (Fed. Cir. Oct. 12, 2012) .............................................17, 18

*Fields v. Brown*,
    503 F.3d 755 (9th Cir. 2007) ............................................................................3, 4

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ...............................................................12, 13, 17

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987) ............................................................................9

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
    2012 WL 4497966 (N.D. Cal. Sept. 28, 2012) ................................................11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ........................................................................................12

*Gorham Mfg. Co. v. White*,
    81 U.S. 511 (1871) ..............................................................................................5

*Green v. White*,
    232 F.3d 671 (9th Cir. 2000) ..............................................................................4

*Image Tech Servs. Inc v. Eastman Kodak*,
    125 F.3d 1195 (9th Cir. 1997) ............................................................................3

*Intel Corp. v. Broadcom Corp.*,
    173 F. Supp. 2d 201 (D. Del. 2001) ....................................................................19

*IpVenture, Inc. v. Cellco P'ship*,
    2011 WL 207978 (N.D. Cal. Jan. 21, 2011) ....................................................10

*Johnson v. Hill*,
    274 F.2d 110 (8th Cir. 1960) ..............................................................................5

*Junker v. HDC Corp.*,
    2008 WL 3385819 (N.D. Cal. July 28, 2008) ..................................................14

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ............................................................................................7

*Kellogg Co. v. Nat'l Biscuit Co.*,
  305 U.S. 111 (1938) ............................................................................8

*Kirsch v. Fleet St, Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ...........................................................13

*Krause v. Dresser Indus., Inc.*,
  910 F.2d 674 (10th Cir. 1990) ........................................................13

*Landes Constr. Co. v. Royal Bank of Canada*,
  833 F.2d 1365 (9th Cir. 1987) ........................................................17

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ..........................................................14

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
  199 F.3d 1009 (9th Cir. 1999) ..........................................................8

*Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*,
  814 F. Supp. 2d 665 (N.D. Tex. 2011) ...........................................13

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ........................................................14

*Litecubes, LLC v. N. Light Prods.*,
  523 F.3d 1353 (Fed. Cir. 2008) ......................................................11

*Litton Sys., Inc. v. Honeywell, Inc.*,
  140 F.3d 1449 (Fed. Cir. 1998) ......................................................17

*Los Angeles Mem'l Coliseum Comm'n v. NFL*,
  791   F.2d 1356 (9th Cir. 1986) ......................................................12

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1365 (Fed. Cir. 2009) ......................................................13

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) ..................................................11, 19

*McDonough Power Equip. v. Greenwood*,
  464 U.S. 548 (1984) ..........................................................................5

*Midwest Underground Storage, Inc. v. Porter*,
  717 F.2d 493 (10th Cir. 1983) ........................................................13

*Miller v. Eagle Mfg. Co.*,
  151 U.S. 186 (1894) ..........................................................................7

*Minks v. Polaris Indus., Inc.*,
  546 F.3d 1364 ..................................................................................16

*Miss World (UK), Ltd. v. Mrs. Am. Pageants, Inc.*,
  856 F.2d 1445 (9th Cir. 1988) ..........................................................9

*Nike, Inc. v. Wal-Mart Stores*,
  138 F.3d 1437 (Fed. Cir. 1998) ......................................................14

**SAMSUNG'S REPLY ISO MOTION FOR JMOL. NEW TRIAL. AND/OR REMITTITUR**

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994)......................................................................14

*Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996)....................................................................15

*PHG Techs., LLC v. St. John Cos.*,
    469 F.3d 1361 (Fed. Cir. 2006)................................................................6, 7

*Pivonka v. Cent. Garden & Pet Co.*,
    2008 WL 486049 (D. Colo. Feb. 19, 2008)..............................................11

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008)..................................................................................20

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    563 F.3d 1358 (Fed. Cir. 2009)...........................................................13, 17

*Richardson v. Stanley Works*,
    597 F.3d 1288 (Fed. Cir. 2010)...................................................................6

*Robinson v. Monsanto Co.*,
    758 F.2d 331 (8th Cir. 1985)....................................................................3, 5

*S.F. Mercantile Co. v. Beeba's Creations, Inc.*,
    704 F. Supp. 1005 (C.D. Cal. 1988)............................................................8

*Sega Enters., Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992)......................................................................8

*Solannex, Inc. v. Miasole*,
    2011 WL 4021558 (N.D. Cal. Jan. 4, 2012)..............................................10

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011)..................................................................16

*Talking Rain Beverage Co. v. S. Beach Beverage Co.*,
    349 F.3d 601 (9th Cir. 2003)........................................................................8

*Tesco Corp. v. Weatherford Int'l Inc.*,
    750 F. Supp. 2d 780 (S.D. Tex. 2010) ......................................................11

*United States v. Bolinger*,
    837 F.2d 436 (11th Cir. 1988)......................................................................5

*United States v. Colombo*,
    869 F.2d 149 (2d Cir. 1989).....................................................................2, 3

*United States v. Gonzalez*,
    214 F.3d 1109 (9th Cir. 2000)......................................................................4

*United States v. Medshares Mgmt. Group, Inc.*,
    400 F.3d 428 (6th Cir. 2005)......................................................................13

*United States v. Perkins*,
    748 F.2d 1519 (11th Cir. 1984)....................................................................3

*United States v. Warner,*
   498 F.3d 666 (7th Cir. 2007) .................................................................................3

*Untermeyer v. Freund,*
   58 F. 205 (2d Cir. 1893) .......................................................................................14

*Verizon Servs. Corp. v. Vonage Holdings Corp.,*
   503 F.3d 1295 (Fed. Cir. 2007) ...........................................................................12

*Water Tech. Corp. v. Calco Ltd.,*
   850 F.2d 660 (Fed. Cir. 1988) .............................................................................15

*WhitServe, LLC v. Computer Pack., Inc.,*
   694 F.3d 10 (Fed. Cir. 2012) .........................................................................15, 16

## **Statutes/Rules**

35 U.S.C. §102(a) ..........................................................................................................7

§ 271(a) ........................................................................................................................11

§ 271(b) ........................................................................................................................12

Rule 50 .........................................................................................................................11

Rule 50(a) ......................................................................................................................6

Rule 606(b) ....................................................................................................................4

Section 284 ...................................................................................................................14

Section 289 ...................................................................................................................14

## **Miscellaneous**

4 McCarthy on Trademarks and Unfair Comp. § 24:87 (4th ed. 2008) ........................9

**SAMSUNG'S REPLY ISO MOTION FOR JMOL, NEW TRIAL, AND/OR REMITTITUR**

I.      INTRODUCTION

Apple's opposition fails to defeat the grounds Samsung has established for judgment, new trial or remittitur.   This is the rare case where juror misconduct requires new trial because the jury foreman withheld crucial information at the very moment it was most important that he reveal it. Apple also fails to refute the evidentiary and legal errors warranting the Court's relief.   And review of the jury's damages awards shows, down to the dollar, the serious errors that require remittitur.

II.     THE JURY FOREMAN'S BIAS REQUIRES A HEARING AND NEW TRIAL

As post-trial developments have made clear, jury foreman Velvin Hogan deliberately concealed information about his prior litigation experience in response to this Court's direct questioning about that subject.   Had he answered truthfully, Samsung could have stricken him and prevented his introduction of extraneous information into the jury's deliberations.   Apple does not dispute that Samsung learned the key facts that Mr. Hogan withheld only *after* the verdict was reached.   In suggesting that Samsung should have investigated the truthfulness of Mr. Hogan's answer earlier, Apple invites unprecedented intrusion into juror's affairs.   While juror misconduct is a rare basis to void a jury verdict, this is the rare case in which this Court should grant such remedy.

A.      Foreman Hogan Failed To Disclose Material Information During *Voir Dire*

This Court asked Mr. Hogan, open-endedly and without limitation of time, "Have you or a family member or someone very close to you *ever* been involved in a lawsuit, either as a plaintiff, a defendant, or as a witness?"   RT 148:18-21 (emphasis added).   In answer to that question, Mr. Hogan failed to disclose a bitter legal battle in which Seagate sued Mr. Hogan for breach of contract and Mr. Hogan (according to Mr. Hogan's press statements) sued Seagate for fraud.   This omission cannot be attributed to inadvertence.   Samsung is Seagate's largest shareholder, having invested nearly $2 billion in a deal that was extensively publicized in the technology sector in which Mr. Hogan works, and also is a critical strategic partner of Seagate with a deep and well-known corporate relationship.   Dkt. 2013-1, ¶¶5-9.   And Mr. Hogan's dispute with Seagate related to a loan for his house, and culminated in his filing for bankruptcy in order to protect that house—hardly an incident that is easily forgotten.   Dkt. 2012, ¶4.

Apple remarkably argues that Mr. Hogan "never failed to answer a question truthfully"

SAMSUNG'S REPLY ISO MOTION FOR JMOL. NEW TRIAL. AND/OR REMITTITUR

because he disclosed one lawsuit and "was never asked if there were other lawsuits."   Opp. 2.   But Apple offers no basis for refusing to take this Court at its word when it asked whether any juror was a party to *any* lawsuit.   And Mr. Hogan's own post-verdict media statements refute Apple's hypothesis:   In one interview, he "confirmed" that he "sued Seagate for fraud, Seagate countersued, and he ultimately declared personal bankruptcy to protect his house."   Dkt. 2012, ¶4.   In another, he stated, contrary to the record, that the Court asked only about litigations "within the last 10 years." (Dkt. 2022, ¶8).   Mr. Hogan perceived no such 10-year limitation when he disclosed his jury service going as far back as 1973.   RT 191:6-8; 195:14-23 ("one was in '73; one was in the mid '80s, '87, I think it was; and the other one that was more recent was 1990").[1]   Apple offers no answer to this. Nor does Apple refute that Mr. Hogan's own statements reveal a strong motive to withhold information on *voir dire* in order to improve his chances of being selected for the jury.   Mr. Hogan told the media that serving on this jury was, excepting his family, "the high spot of my career.   You might even say my life."   Dkt. 2013-1, ¶11.   He feared he would be stricken and was "very grateful" he was not.   *Id.*, ¶10.   And his role on the jury brought him international media attention, garnering him numerous interviews in which he boasted about single-handedly altering the outcome of the trial.   *See* Dkt. 2012, 2013-1.

### B.   Mr. Hogan's Dishonesty Supports An Inference Of Bias

Mr. Hogan's deliberate dishonesty during *voir dire* "bespeak[s] a lack of impartiality" that gives rise to more than a "colorable claim" of bias warranting at a minimum "an investigation" by this Court, *Dyer v. Calderon*, 151 F.3d 970, 973-74 (9th Cir. 1998) (Kozinski, C.J.) (en banc), and indeed a new trial based on "intentional nondisclosure," *United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989).   Mr. Hogan's explanations for his answers are not "plausible," *Dyer*, 151 F.3d at 975, and he was not "indifferent to service on the jury," *id.* at 982.   An "individual who lies in order to improve his chances of service has too much of a stake in the matter to be considered indifferent." *Id.*   Mr. Hogan's own press statements make clear he was just such an individual.   "Whether the desire to serve is motivated by an overactive sense of civic duty, by a desire to avenge past wrongs,

---

[1]  Notably, other prospective jurors disclosed lawsuits as far back as 1986 in response to the same question by the Court.   RT 155:22-23; 156:24-157:6.

by the hope of writing a memoir or by some other unknown motive, this excess of zeal introduces the kind of unpredictable factor into the jury room that the doctrine of implied bias is meant to keep out." *Id.* at 982-83 (juror whose answers "are willfully evasive or knowingly untrue" is "a juror in name only") (quoting *Clark v. United States*, 289 U.S. 1, 11 (1933) (Cardozo, J.)); *Colombo*, 869 F.2d at 152 ("willingness to lie"—even if the lie "would not be cause for dismissing the juror"—"exhibit[s] an interest strongly suggesting partiality"); *United States v. Perkins*, 748 F.2d 1519, 1531-33 (11th Cir. 1984) (that juror did not disclose even a "remote" relationship to a party and participation in non-disclosed lawsuits indicated bias).[2]

It is no answer, as Apple suggests (Opp. 2), that Mr. Hogan revealed another, unrelated lawsuit involving a former employee.   To the contrary, a juror is presumptively biased where "she told the part truth that was useless, and held back the other part that had significance and value." *Clark*, 289 U.S. at 10-11 (juror "counted off a few [past jobs] and checked herself at the very point where the count, if completed, would be likely to bar her from the box"); *see Dyer*, 151 F.3d at 983.

Nor is it any answer that, as Apple claims (Opp. 2), honest responses by Mr. Hogan would not have resulted in a striking for cause.   Challenges both for cause[3] and (if needed) as a peremptory[4] are exactly what would have resulted from honest answers.   Moreover, Mr. Hogan's dishonesty is not beside the point in analyzing bias:   "All of the[] facts, considered as a whole," must be considered in deciding whether there are "serious questions" or "destructive uncertainties" regarding

---

[2]  Actual bias, while not required, is also sufficient to require a new trial, and dishonesty during *voir dire* can support a showing of such bias.   *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc) (juror not actually biased where he "did not lie to conceal bias").

[3]  A juror's hostility and adversity towards a party-associated company **is** sufficient to support a challenge for cause, particularly when that adversity also extends to an attorney who is affiliated with the party's counsel.   *See, e.g., United States v. Warner*, 498 F.3d 666, 686 (7th Cir. 2007) (juror's undisclosed conviction, which resulted in possible "negative association" with non-party government entity affiliated with defendant, "provide[d] ample grounds for dismissal for cause"). In *Image Tech Servs. Inc v. Eastman Kodak*, 125 F.3d 1195, 1220-21 (9th Cir. 1997), the only case cited by Apple, (Opp._2), the juror honestly disclosed previously dealings with Kodak, and Kodak's counsel had an opportunity to question him about those dealings and then declined to challenge the juror.   Although the juror later sent a note describing his "sometimes adversarial relationship with Kodak," the business relationship between them did not involve anything like a lawsuit that forced the juror into bankruptcy, and the juror reassured the court of his impartiality before verdicts were reached.

[4]  Hogan's dishonesty prevented Samsung from fully examining him and making a fully informed decision as to his qualifications.   While Apple claims (Opp. 2) that prejudicing Samsung's exercise of peremptory strikes is insufficient to warrant a new trial, the law is clear that being dishonest to avoid challenges to service—whether those challenges are for cause or as a peremptory—does constitute bias.   *Dyer*, 151 F.3d at 982-83; *Colombo*, 869 F.2d at 152.   Apple's own authority confirms this.   *See Robinson v. Monsanto Co.*, 758 F.2d 331, 334 (8th Cir. 1985) ("An evidentiary hearing on a juror's alleged failure to disclose information during *voir dire* must be granted when the movant has alleged facts which establish a prima facie case that his 'right to a peremptory challenge (footnote continued)

**SAMSUNG'S REPLY ISO MOTION FOR JMOL. NEW TRIAL. AND/OR REMITTITUR**

a juror's impartiality.   *Green v. White*, 232 F.3d 671, 678 (9th Cir. 2000).   And any "[d]oubts regarding bias must be resolved against the juror," *United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000), particularly where dishonesty prevented full exploration before trial began.

While prejudice need not be proven, *Dyer*, 151 F.3d at 983 n.2, Mr. Hogan's own statements to the media suffice if such a showing is required.   Once inside the jury room, Mr. Hogan acted as a "de facto technical expert" who touted his high-tech experience to bring the divided jury together. Dkt. 2013-1, ¶11.   Contrary to this Court's instructions (*e.g.*, Dkt. 1893 at Instr. Nos. 24, 26, 27, 31-33, 49-51), he told other jurors incorrectly that an accused device infringes a utility patent unless it is "entirely different" (*id.*, ¶15); that a prior art reference could not be invalidating unless that reference was "interchangeable" (*id.*, ¶14, 16); and that invalidating prior art must be currently in use (*id.*, ¶17). He thus failed "to listen to the evidence, not to consider extrinsic facts, [and] to follow the judge's instructions."   151 F.3d at 983.[5]

## C.    Samsung Has Not Waived Its Juror Bias Arguments

Apple argues (Opp. 1-2) that Samsung waived its juror bias argument by failing to make it sooner, but Samsung could not reasonably have ascertained Mr. Hogan's dishonesty before the jury's verdicts.   As Samsung has made clear and Apple cannot dispute, Mr. Hogan made public statements after the verdicts that so clearly favored Apple that the press speculated about their possible financial ties.   Dkt. 2022, ¶4.   Only by chance did Samsung discover the suit by Seagate against Mr. Hogan while it was investigating these *other* potential bias issues reported post-verdict; and because the court file no longer exists, it was even later that Samsung discovered Mr. Hogan's lawsuit against Seagate when Mr. Hogan himself disclosed it in an interview.   *Id.* ¶¶3-4, 7.

Nevertheless, Apple insists that Samsung waived because it "could have" and "should have" discovered the dishonesty before it actually did so by ordering Mr. Hogan's 1993 bankruptcy file during *voir dire*.   Opp. 2.   Even apart from the impracticality of this suggestion (it took a week to receive the file after it was ordered post-verdict, Dkt. 2022, ¶4), the Court should reject Apple's

---

was prejudicially impaired.'").
[5]   Apple argues (Opp. 3-4) that Samsung is barred under Rule 606(b) from relying on Mr. Hogan's statements about jury deliberations.   But evidence barred by Rule 606(b) in other contexts is routinely considered when assessing juror bias.   *See, e.g., Fields*, 503 F.3d at 764.

02198.51855/5046724.4

**SAMSUNG'S REPLY ISO MOTION FOR JMOL. NEW TRIAL. AND/OR REMITTITUR**

1   untenable suggestion that trial counsel should engage, upon pain of waiver, in scorched-earth, extra-

2   judicial investigations into a sitting juror's life, absent any reason to believe that they lied on *voir dire*

3   or otherwise warranted such an intrusion upon their privacy.   *See Dyer*, 151 F.3d at 978 ("While

4   trial is ongoing, lawyers may not conduct the kind of aggressive investigation of jurors they would of

5   other witnesses."); 6/29/12 Hearing Tr. 63:18-64:13 (Dkt. 1166) ("THE COURT: I'm not going to

6   give you the jury questionnaires that have been filled out long enough in advance for you all to

7   research all these folks.").   The Court asked Mr. Hogan about his prior lawsuits; Samsung was

8   entitled to rely on the truthfulness of his answers.

9        Apple's authorities provide no support for its position.   In one case, counsel *actually learned*

10   of a juror's bias pre-verdict but did not object.   *United States v. Bolinger*, 837 F.2d 436, 438-39

11   (11th Cir. 1988).   The court held only that claims of misconduct "must be supported by proof that

12   the evidence of misconduct was not discovered until after the verdict was returned," which is

13   precisely what Samsung has shown here.   In a second, the court stated that *if* the plaintiffs heard an

14   answer in *voir dire* that "they thought to be factually incorrect" and stood silent, they could not

15   complain later.   *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 550 n.2 (1984).   In the

16   last, "the jurors were asked no direct questions" regarding the allegedly withheld information and the

17   juror therefore never lied or "deliberately concealed any information."   *Robinson*, 758 F.2d at 334-

18   35.   Apple thus identifies not a single authority supporting waiver on the facts here.[6]   The burden

19   of proving waiver is substantial; Apple has not even begun to meet that burden.

20   **III.   SAMSUNG IS ENTITLED TO JMOL ON APPLE'S DESIGN PATENT
        INFRINGEMENT CLAIMS**

21        **A.   Apple's Attempt To Re-Write The Infringement Test Lacks Merit**

22        Apple's attack on the legal standard for design patent infringement underscores the gaps in its

23   evidence.   *First*, the rule that "design patent infringement requires similarity so great as to deceive

24   in purchasing" is not a "false premise" (Opp. 4) but rather the established standard for over a century.

25   *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871) (test is whether "the resemblance is such as to

26   _____

27   [6]   Apple cites one more case in its response to Samsung's related motion to compel:   *Johnson v.*
     *Hill*, 274 F.2d 110, 116 (8th Cir. 1960).   Dkt. 2118 at 3.   In that case, contrary to the facts here, "at

28   the time of *voir dire* examination appellant's counsel had information from two sources" that "put
     him on notice" that an answer given by a juror was not true, but nevertheless "he remained mute and
     made no request of the court for a further interrogation."   *Id.*

1   deceive such an observer, inducing him to purchase one supposing it to be the other").   Apple's

2   authority confirms this.   *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303-06 (Fed. Cir. 2010) (infringement

3   found where accused products were likely to "cause market confusion").   Apple's experts conceded

4   that purchasers would not be confused.   RT 1101:11-1102:8; 1103:2-1104:18; 1424:3-1425:22.

5       *Second*, Apple is wrong that the jury need not "factor out functional elements because that is a

6   legal issue for the Court."   Opp. 6.   It is *precisely because* "factoring out functional elements" is a

7   legal requirement that the Court *must* instruct the jury to do so before deciding infringement, yet no

8   such instruction was given.   Nor is functionality found only where "overall designs" are "dictated by

9   function" (*id.*); functional elements *always* must be "factored out" as part of the infringement

10   analysis.   *Richardson v. Stanley Works*, 597 F.3d 1288, 1292-93 (Fed. Cir. 2010).   Apple does not

11   dispute that its witnesses admitted that elements of its designs are functional, *Amini Innovation Corp.*

12   *v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (element is functional "if it is essential to

13   the use or purpose of the article or if it affects the cost or quality of the article"), and Apple's

14   hypothesized "alternatives" are insufficient because Apple failed to show they are equivalent.   *PHG*

15   *Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1367 (Fed. Cir. 2006).   As Apple offered no proof of

16   infringement with unprotected elements factored out, judgment for Samsung is required.[7]

17       *Third*, Apple defends the Court's instruction that "[m]inor differences should not prevent a

18   finding of infringement" (Opp. 5, n.2) but cannot dispute that minor differences that "might not be

19   noticeable in the abstract can become significant" in light of prior art.   *Egyptian Goddess, Inc. v.*

20   *Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).   It is undisputed that Apple's witnesses also

21   admitted that "details are important" in the context of Apple's non-ornamental designs and that Apple

22   itself relied on "little differences" to distinguish its designs from prior art.

23       Applying the correct legal standards, Samsung is entitled to JMOL of non-infringement.

24       **B.    The Record Evidence Establishes that Apple's Design Patents Are Invalid**

25   ―――――――――――――――
    [7]   Apple's argument that Samsung waived its right to rely on *trial admissions* establishing
26   functionality because it did not cite that testimony in its *pre-trial filings* is absurd.  Opp. 5.  In any
    case, Samsung repeatedly preserved its functionality contentions.   *See, e.g.*, Dkt. 1819 (Rule 50(a));
27   Dkt. 1090 at 11-15 (claim construction); Dkt. 1859 at 4-5 (objections to jury instructions); RT at
    3769 (charging conference).  Based on Samsung's functionality contentions, the Court had
28   previously factored out elements of Apple's designs (*e.g.*, Dkt. 449 at 14-15) and agreed to "provide
    a supplemental claim construction at the close of evidence addressing any potential functional
    limitations."  Dkt. 1425 at 2.  It ultimately did not do so *despite* Samsung's contentions.

1    Apple nowhere disputes that, in the aggregate, the functional elements of Apple's designs

2    render its design patents functional and therefore invalid.   Dkt. 1990-03 at 7; Opp. 6.   Apple

3    instead misstates the law, which requires that "[i]n determining whether a design is primarily

4    functional, the purposes of the *particular elements* of the design necessarily must be considered."

5    *See PHG Techs.*, 469 F.3d at 1368 n.2.   And it wrongly relies on a "rigid and mandatory formula[]"

6    for obviousness, inconsistent with the Supreme Court's "expansive and flexible approach."   *See*

7    *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415-19 (2007).

8    Even under the primary/secondary reference framework, Samsung has met the standard for

9    obviousness.   The LG Prada was disclosed publically in "late 2006" (RT 2588:4-6), and Apple's

10    own early 2007 report lists the Prada as a competitive product already in the market.   DX2627.

11    Section 102(a) does not require sale in the U.S., but that the invention be "known or used by others in

12    this country," or "described in a printed publication in this or a foreign country," 35 U.S.C. §102(a),

13    and the Court already ruled that the Prada is admissible as prior art to the D'677 and D'087 patents.

14    Dkts. 1267, 1563, 1749, 1976, 1852; RT 1043:14-18.   As for the D'889, the Federal Circuit's prior

15    opinion on which Apple relies did not consider the *physical* prior art (only poor quality images), the

16    035 model, or the deposition testimony of tablet designer Roger Fidler.   And Apple's purported

17    "objective indicia of nonobviousness" (Opp. 7) do not show that the success of its products was tied

18    to any patented design features, *e.g.*, *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed.

19    Cir. 2008); the evidence is, in fact, to the contrary.   *E.g.*, PX36.22, PX134.1, PX135.2 (users and

20    commentators touting functionality of iPhone).

21    Samsung did not waive its double-patenting argument as it moved for judgment on all issues

22    for which Apple failed to provide sufficient evidence, and for invalidity of the D'677 in light of prior

23    art (and notably, the D'677 itself lists the D'087 application as prior art).   RT 2173:10-17; 2176:22-

24    2177:5; Dkt. 1819 at 3.   Nor is the prohibition on double-patenting limited to "identical designs"

25    (Opp. 7); the question is whether the designs are "substantially different," *Miller v. Eagle Mfg. Co.*,

26    151 U.S. 186, 198 (1894), or at least "patentably distinct," *Eli Lilly and Co. v. Teva Parenteral*

27    *Meds., Inc.*, 689 F.3d 1368, 1376 (Fed. Cir. 2012), and the D'677 and D'087 are not.

28    **IV.    SAMSUNG IS ENTITLED TO JMOL ON APPLE'S TRADE DRESS CLAIMS**

**Functionality.**   Apple does not dispute it must prove non-functionality as to Apple's unregistered trade dress; it must also do so as to its registered trade dress given the overwhelming evidence that rebuts the statutory presumption.   *See Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003).   The trade dress consists predominantly of features Apple's witnesses admitted are functional (*see* Dkt. 2013 at 9), and that were essential to its goal of creating "the simplest and purest manifestation" of a smartphone.   RT 484:2-23; *see S.F. Mercantile Co. v. Beeba's Creations, Inc.*, 704 F. Supp. 1005, 1008-09 (C.D. Cal. 1988).   Nor does the evidence establish that Apple's claimed trade dress "serves no other purpose than identification." *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1531 (9th Cir. 1992).

Contrary to Apple's argument (Opp. 8), the *Disc Golf* factors *support* functionality.   Apple's advertising ***did*** tout functional features of its designs, *e.g.*, PX11; and the iPhone design ***does*** result in economies in manufacture and use.   *E.g.*, RT 1199:25-1200:16 (clear face "absolutely functional"); 680:9-15 (round corners); 674:20-675:24 (large screen); 679:15-20 (black color); 2533:25-2534:15 (familiar icons); DX562.001 ("size and shape/comfort benefits")).   Apple claims that alternative designs exist, but offered no evidence of alternatives "offer[ing] the same functionality," *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999); *see also Talking Rain*, 349 F.3d at 603.   Nor did the Ninth Circuit "squarely reject" (Opp. 8) the notion that trade dress is unprotectable for aesthetic functionality when it was designed to be aesthetically appealing, as Apple's witnesses admit the iPhone was.   *E.g.*, RT 484:1-11 (in designing iPhone, Apple sought a "beautiful object"); 602:8-19 (iPhone is "beautiful and that that alone would be enough to excite people"); 721:3-7 (similar).   *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) (aesthetic functionality considers "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage").   Lacking any response, Apple ignores its own fatal admissions that consumers regard Apple's claimed trade dress as desirable in and of itself, rather than as source-indicators.

**Secondary Meaning.**   Apple's survey evidence does *not* establish that consumers primarily associate the asserted trade dress with *Apple* (the producer) rather than the product.   *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118-19 (1938).   Nor did Apple prove that its advertising

**SAMSUNG'S REPLY ISO MOTION FOR JMOL. NEW TRIAL. AND/OR REMITTITUR**

1  specifically directed consumers *to the asserted trade dress*.   *See First Brands Corp. v. Fred Meyer,*

2  *Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987); Dkt. 2053 at 3.   Apple presented no evidence that its sales

3  success is primarily attributable to source-designating functions, rather than to functional capabilities

4  and/or design.   *See* Dkt. 2053 at 3; *see also Cont'l Lab. Products, Inc. v. Medax Int'l, Inc.*, 114 F.

5  Supp. 2d 992, 1002-03 (S.D. Cal. 2000).   In addition, widespread use of the claimed features by

6  third parties (*see* Mot. 11) negates secondary meaning.   *See, e.g.*, *Miss World (UK), Ltd. v. Mrs. Am.*

7  *Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (confusion unlikely in "a crowd of marks").

8         **Dilution.**   Apple does not dispute that its expert survey cannot support fame.   Apple argues

9  that its advertising and sales establish fame, but this evidence lacks probative value, including

10  because much of it relates to the wrong product (the original iPhone, not the iPhone 3G, *see* PX11,

11  12, 14-16, 133, 135) and the wrong time period (after Samsung's alleged first use).

12         Nor did Apple prove likely dilution.   *First*, pervasive use of the claimed design features by

13  third parties undermines distinctive quality.   *See, e.g.*, *Accuride Int'l, Inc. v. Accuride Corp.,* 871

14  F.2d 1531, 1539 (9th Cir. 1989); 4 McCarthy on Trademarks and Unfair Comp. § 24:87 (4th ed.

15  2008).   *Second*, because the iPhone was designed predominantly to be functional, the alleged

16  similarity (Opp. 9) is not probative.   *Third*, Apple's argument that Samsung's alleged copying is

17  relevant to dilution (*id*. 9-10) is baseless.   *See Continental*, 114 F. Supp. 2d at 1010.   *Fourth*, no

18  evidence supports actual association.   RT 1716:11-1718:19 (Van Liere's survey questions skewed

19  results in Apple's favor); 1534:14-21 ("no empirical evidence" and "no hard data to show that

20  Samsung's actions have diluted Apple's brand").   *Finally*, Apple failed to prove willful dilution by

21  clear and convincing evidence.   *See, e.g.*, *CollegeNET, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058,

22  1066 (D. Or. 2007).   Samsung is entitled to JMOL on the trade dress claims.

23  **V.    SAMSUNG IS ENTITLED TO JMOL ON APPLE'S UTILITY PATENT CLAIMS**

24         Apple incorrectly claims that the prior art that invalidates these patents has missing claim

25  elements.   Opp. 10-11.   As to the '915 patent, DiamondTouch/Fractal Zoom is an integrated touch-

26  sensitive display, distinguishes between a single input point and two or more input points, and

27  includes "views associated with the event objects" (RT 2898:19-22; 2900:5-2902:4); and Nomura

28  plainly includes event objects and views.   RT 2905:2-6; 2906:24-2907:18.   The '381 patent prior

art, Tablecloth and LaunchTile, both detect and respond to a document edge.   RT 2862:9-2863:21.   The LaunchTile and Agnetta prior art to the '163 patent both include structured electronic documents that are enlarged and centered (RT 2233:12-22; 2234:3-8; 2913:14-2917:2; 2918:7-2919:16), and Robbins meets all limitations.   RT 2920:22-2922:6.   Finally, because the jury's implicit findings that certain Android versions do not infringe the '915 patent are "irreconcilably inconsistent" with its findings that the same versions of Android do infringe, at a minimum a new trial is required.   *See Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1220-21 (E.D. Cal. 2011).   There is no waiver in these circumstances.   *Id.* (new trial despite the parties' "opportunity to address the inconsistency by further deliberations before the jury was discharged").

## VI.   SAMSUNG IS ENTITLED TO JMOL ON WILLFULNESS

While claiming to have adduced "substantial" evidence to support the jury's finding of willful patent infringement (Opp. 13-14), Apple relies (with the exception of the '381 patent) exclusively on "copying" evidence which, even if true (*but see* Dkt. 2054 at 31-32), would not come close to the *clear and convincing* evidence it needs.[8]   "To willfully infringe *a patent*, the patent must exist and one must have knowledge of it…."   *IpVenture, Inc. v. Cellco P'ship*, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011) (emphasis in original).   "Hence a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."   *Solannex, Inc. v. Miasole*, 2011 WL 4021558, at *3 (N.D. Cal. Jan. 4, 2012).   Knowledge of Apple products simply does not equate to knowledge of Apple patents—and Samsung plainly had no such notice.   Indeed, the so-called "copying" evidence Apple cites predates the issuance of the '915, '163, and D'677 patents found infringed.   *Compare* Opp. 14 (citing PX36 & PX38, dated 12/17/08 & 4/17/09) and Dkt. 2027 at 9 (citing PX40 & PX44, dated 2/11/10 & 3/2/10), with JX1043, JX1044 and JX1046 (D'677, '915 and '163 patents issued later—on 6/29/10, 11/30/10 & 1/4/11).   Thus, Apple's claimed evidence would "prove" willful infringement of patents even before those patents issued.   And Apple ignores entirely the *reasonableness* of Samsung's defenses, which defeats willfulness as a matter of law.

As for the '381 patent (*see* PX52), a PowerPoint referencing that patent does not prove that

---

[8]   Apple complains that Samsung "skirt[ed] the page limits for its JMOL motion" by simultaneously contesting willfulness in "its motion on non-jury claims."   Opp. 13.   To the contrary, Samsung expended *greater* pages by raising this issue in both submissions.

1  Samsung knew or should have known it was valid and infringed.   And the PTO's recent rejection of

2  all claims of the '381 patent in reexamination (*see* Dkt. 2079-1) forecloses a finding of objective

3  willfulness, as a neutral expert has embraced Samsung's view on invalidity.   *See Tesco Corp. v.*

4  *Weatherford Int'l Inc.,* 750 F. Supp. 2d 780, 817-18 (S.D. Tex. 2010) ("the reexamination

5  proceedings are sufficient evidence that the objective prong is not met"); *Pivonka v. Cent. Garden &*

6  *Pet Co.*, 2008 WL 486049 at *2 (D. Colo. Feb. 19, 2008) (even preliminary order of invalidity by

7  PTO precludes willfulness); *see also Fujitsu Ltd. v. Belkin Int'l, Inc.*, 2012 WL 4497966, at *35 (N.D.

8  Cal. Sept. 28, 2012) (Koh, J.) (relevant to look to PTO reexamination).

9  **VII.   SAMSUNG IS ENTITLED TO JMOL ON APPLE'S CLAIMS OF DIRECT INFRINGEMENT AND INDUCEMENT**

10       Samsung did not waive (*see* Opp. 15) its argument that Apple lacks evidence of U.S. sales

11  supporting SEC's direct infringement.   Samsung raised this argument in its oral Rule 50 motion and

12  again in writing.   RT 2178:11-13; Dkt. 1819 at 1.[9]   And Apple points to no evidence of direct

13  infringement by SEC, but merely asserts that SEC sells its subsidiaries products—in Korea—which

14  ultimately "land in the United States."   Opp. 15.   This is not sufficient; as in *MEMC Elec.*

15  *Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005), there was no

16  sale under § 271(a) here because "there was no evidence that 'contracting and performance' took

17  place in the United States."   *Id.* at 1377.   In *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353 (Fed.

18  Cir. 2008), on which Apple relies, the foreign defendant contracted *directly with customers in the*

19  *U.S.* and then shipped the products *directly to the customers in the U.S.   Id.* at 1371.   But here,

20  there is no evidence that any contractual negotiations or execution of contracts, or any other actions

21  to make, use, offer to sell or sell products, occurred in the U.S.   Mot. 16-17.

22       Apple's purported evidence of inducement by SEC also falls short.   Apple acknowledges

23  that the evidence fails to prove awareness by SEC of any patent other than the '381 prior to the filing

24  of the complaint, and Apple admits that specific intent to encourage another's infringement is also

25  required.   Opp. 15.   Apple's vague references to SEC's purported "directions" and/or pricing or

26  marketing guidance (Opp. 15-16) merely show interactions between corporate entities; they do not

27

28  [9] As the Court acknowledged, Samsung also moved for judgment on *all issues* for which Apple failed to provide sufficient evidence, which includes this one.   RT 2173:10-17; 2176:22-2177:5.

**SAMSUNG'S REPLY ISO MOTION FOR JMOL. NEW TRIAL. AND/OR REMITTITUR**

1    rebut the specific evidence that STA and SEA manage and make their own business decisions.    Mot.

2    17.    Moreover, SEC had neither knowledge nor "willful blindness" of infringement, as required

3    under § 271(b).    *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011) (cited by

4    Apple).    To the contrary, all the Samsung entities had a good faith belief that their actions were not

5    infringing valid patents, and in fact obtained smartphone and tablet design patents over cited Apple

6    patents.    Dkt. 2054 at 33-35.    *See Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335, 1350-51 (Fed. Cir.

7    2009) (no inducement where defendant reasonably believes there would be no infringement).

8         Accordingly, judgment for SEC is required.    And because Apple does not dispute that the

9    bulk of the jury's damages awards represents profits made by SEC (Mot. 17) and Apple obtained a

10   verdict form that neither breaks out damages by defendant nor identifies profits earned by other

11   entities (RT 3853:5-3856:1), a new trial on damages as to remaining claims also is required.    *E.g.,*

12   *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) (after granting

13   new liability trial as to one patent, vacating damages award as to two other patents in light of jury's

14   "single verdict on damages" which did not "break[] down the damages attributable to each patent").[10]

15   **VIII.   SAMSUNG IS ENTITLED TO JMOL, NEW TRIAL AND/OR REMITTITUR ON DAMAGES**

16        **A.    The Court Can And Should Interpret The Damages Verdicts And Correct Errors**

17        Apple does not dispute the validity of Samsung's explanation of how the jury reached its

18   damages awards—an explanation that plainly reveals the need for corrective action by the Court.

19   Mot. 17-18; Dkt. 1990-20 ("Wagner Decl."); *see* Robinson Depo. Tr. at 88:2-8, Estrich Reply Decl.,

20   Ex. 13.    Instead, Apple insists that "[p]recedent forbids" any consideration of how a jury reached its

21   awards.    Opp. 17.    In fact, precedent dictates that an identifiable error should be corrected where "a

22   candid assessment of the jury's calculations justifies it" and "there is no other plausible explanation

23   for the amount calculated by the jury."    *In re First Alliance Mortg. Co.* 471 F.3d 977, 1001 (9th Cir.

24   2006); *see id.* at 1003 (courts should not "ben[d] over backwards to find a potentially valid basis in

25   the record for the jury verdict").[11]    Apple cites *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791

---

[10] For the same reasons, and in light of the verdict form's failure to separately assess damages by patent or trade dress, setting aside the liability verdict as to any *one* claim will mandate a new trial on damages as to *all* products relating to that claim.    Mot. 17.

[11] Nothing in *First Alliance* suggests it is confined to cases where "instructional error and inadmissible evidence" led to an erroneous damages award.    Opp. 18.

F.2d 1356 (9th Cir. 1986), but nothing in that case "forbids" scrutinizing a damages verdict and the Ninth Circuit distinguished it in *First Alliance, see* 471 F.3d at 1001.   Federal Circuit authority is similar.   *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1365, 1336-38 (Fed. Cir. 2009) ("working the math backwards strongly suggests that the jury must have used some [improper] calculation").   It is proper to examine the bases of a jury's damages awards, particularly where Apple resisted including any detail in the verdicts (*see* RT 3852:24-3856:10; Dkt. 2054 at 25).   *See Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, 814 F. Supp. 2d 665, 692-93 (N.D. Tex. 2011) (construing verdict's ambiguity against plaintiff after it defeated defendant's request for "some way to tell us [the] type of award").[12]

In addition to misstating when a jury's damages verdicts should be examined, Apple misstates when errors in such verdicts warrant relief.   According to Apple, a jury's damages verdicts are immune from scrutiny so long as they fall "within the range encompassed by the record as a whole," and the verdicts here fall within that "range" because they are lower than the damages Apple sought. Opp. 17.   Yet Apple ignores that courts grant remittitur or new trial not only when a verdict is "intrinsically excessive," but *also* when a court can, by examining a verdict, identify particular amounts that are attributable to error.   Mot. 24 (citing *Cornell Univ. v. Hewlett Packard Co.*, 609 F. Supp. 2d 279, 292 (N.D.N.Y. 2009) (Rader, J.)).[13]   The jury's awards here were infected by identifiable errors; the Court must take action to correct these erroneous awards.[14]

---

[12]   *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1371 (Fed. Cir. 2009), does not reject scrutinizing a damages verdict; the court there affirmed only because the evidence supported the award.   Apple's cases from other jurisdictions are likewise factually and legally distinguishable. *See Krause v. Dresser Indus., Inc.*, 910 F.2d 674, 679-80 (10th Cir. 1990) (affirming award of $165,000 for employment termination where amount was supported by "ample evidence"); *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501-02 (10th Cir. 1983) (reverse engineering verdict before affirming award of $3,900,000); *Chuy v. The Philadelphia Eagles Football Club*, 595 F.2d 1265, 1279 n.19 (3d Cir. 1979) (affirming award of $60,000 in punitive damages for mistreatment of injured player).
[13]   *See also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1183 (11th Cir. 2010) (remanding "where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken."); *United States v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 458 (6th Cir. 2005) (affirming remittitur of improper portion of award although "it was not entirely clear how [the jury] calculated the amount of damages"); *Kirsch v. Fleet St, Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) ("Where the court has identified a specific error . . . the court may set aside the resulting award even if its amount does not shock the conscience.").
[14]   Moreover, the damages opinions on which Apple relies were themselves the product of errors and mistaken assumptions, meaning that relief is required even under Apple's erroneous standard. Apple cites, first, the "$2.75 billion" that it requested (Opp. 17), but that request assumed that *every* Samsung product violated *all* of Apple's claimed rights, RT 2122:16-2123:6, and the jury found that was not the case.   Apple also cites the *lower* damages calculated by Samsung's expert; why Apple believes Samsung's lower calculations support the jury's *higher* awards is mysterious.   Last, Apple (footnote continued)

### B.     Apple Fails To Justify The Jury's Award Of Samsung's Profits

Ignoring survey evidence that *at most* 5% of Samsung's profits were caused by the infringement of Apple's outer casing or GUI design patents (Mot. 19), Apple contends that causation is not required for design patent infringement or trade dress dilution.   Opp. 19.   But Apple does not dispute that causation is required under Section 284, or that "in any case involving multi-component products," damages are limited to "the smallest salable patent-practicing unit" unless "demand for the entire product is attributable to the patented features."   *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012).   These same principles govern under Section 289.   *Junker v. HDC Corp.*, 2008 WL 3385819, at *5 (N.D. Cal. July 28, 2008).[15]   As the cases Apple ignores entirely make clear, the jury's award of Samsung's profits from the phones as a whole cannot be sustained in light of Apple's failure to offer any evidence that those are the profits from the "article of manufacture" at issue, which is the phones' outer casings or GUI.   *See Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 905 (2d Cir. 1915); *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 81-82 (2d Cir. 1916); *Untermeyer v. Freund*, 58 F. 205 (2d Cir. 1893) (same for watch case design).

The only patent case Apple cites, *Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1442 (Fed. Cir. 1998), addressed apportionment, not causation.   As for dilution, Apple's case explains damages are awarded "for all injuries ***caused*** to plaintiff by the wrongful act" and are limited to "sales that are attributable to the infringing conduct."   *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993) (emphasis added); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (permitting recovery only of profits from sales "attributable" to the infringing mark).

Causation was thus required, and Apple makes no argument that it was proved.   No evidence shows that Samsung's alleged infringement or dilution caused the hundreds of millions in damages that were awarded.   And it is no answer to say that the jury could have reached an even *more* excessive result since Apple's expert's opinions were even higher, for those opinions reflect the very

---

notes that the amounts awarded by the jury for five products are lower than Samsung's expert's calculations.   Yet those were not "undisputed, minimum amounts" as Apple claims (Opp. 17).   *See* Dkt. 2053 at 16-17.   To the contrary, the amounts Apple points to are premised on incorrect notice dates (compare DX781.3 with DX781.1) and/or fail to account for causation or apportionment.
[15] *Junker* did not award profits without "proof of causation" (Opp. 19); it concluded that "[p]laintiff (footnote continued)

errors Samsung has identified.   *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").   Mr. Musika's "more than $2.2 billion" number (Opp. 19) is premised on incorrect notice dates, a failure to deduct any operating expenses, and a failure to account for causation or apportionment.   PX25A1.4 and 5;RT 2053:17-2055:2; 2056:17-2057:3; 2060:22-2061:11; 3025:1-8.   As for the figures from Mr. Wagner, they too are based on assumptions, made for purposes of argument only, that were rejected and are erroneous.[16]

### C.    Apple Fails To Justify The Jury's Lost Profits Award

Mr. Musika's *ipse dixit* is not "alone a sufficient basis" for the jury's lost profits award (Opp. 20), for speculation by an expert cannot sustain such an award.   *WhitServe, LLC v. Computer Pack., Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1032 (Fed. Cir. 1996).   *First*, Apple fails to identify evidence that consumer purchases were driven by a desire for the designs and inventions at issue, instead resorting to generic references to "design, user interface, and … touch screen navigation" (Opp. 21) which do not show that Apple would have made Samsung's sales if not for the violations found by the jury.   *See Water Tech. Corp. v. Calco Ltd.*, 850 F.2d 660, 671 (Fed. Cir. 1988).   *Second*, there was no evidence that Apple would have made a *pro rata* share of sales in light of the significant price differences between the parties' products.   *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993); *see also Water Tech.*, 850 F.2d at 673 (reversing lost profits award for lack of causation where price of patentee's products "significantly exceeded" price of infringer's products).   *Third*, Mr. Musika's market share allocation does not account for the lack of evidence that Samsung customers would have bought iPhones rather than non-accused Android devices (Opp. 20-21); it incorrectly assumes Android purchasers would have switched to the iPhone in proportion to Apple's market share.

---

has made the requisite showing" under the entire market value rule.   *Id.* at *5.

[16] Mr. Wagner's upper range of $1.086 million incorporates Mr. Musika's incorrect notice assumptions and makes no adjustment for causation or apportionment.   *See* DX781.003 (calculating profits based on date of first sale).   Apple concedes the $1.396 billion and $1.093 billion figures it seeks to attribute to Mr. Wagner are premised on Mr. Musika's calculation of Samsung's profitability (Opp. 19 and 22), which the jury plainly rejected when it awarded only 40% of Mr. Musika's claimed Samsung profitability figures across the board.

**SAMSUNG'S REPLY ISO MOTION FOR JMOL, NEW TRIAL, AND/OR REMITTITUR**

*Fourth*, the two pages Apple cites from PX25A1, and Mr. Musika's mere say so, fall far short of the proof necessary to show that Apple had capacity to manufacture 2 million more iPhones, as Apple's lost profits claim assumed.   Nor does this evidence overcome Apple's admission that it lacked capacity to manufacture additional iPhone 4s for five months during the damages period.   Even if Apple had capacity to manufacture additional iPhone 3GSs (and Apple fails to show that it did), there is no evidence consumers would have bought the outdated iPhone 3GS instead of a more current market alternative.   *Finally*, Apple does not dispute that Mr. Musika's lost profits numbers wrongly assumed that *every* accused product infringed *all* of Apple's claimed rights—assumptions that are contrary to the jury's verdict and therefore undermine the opinions based on them.   Mot. 22, n.19.

### D.   Apple Points To No Evidence Supporting The Jury's Royalty Award

The sum total of the evidence to which Apple points to support the jury's royalty award is Mr. Musika's conclusory testimony and one page that he prepared.   Opp. 22.   Federal Circuit authority rejects a royalty award that is "conclusory" and "speculative."   *WhitServe*, 694 F.3d at 33.   It is no answer for Apple to say that the jury awarded only half of royalty rates that were themselves unsupported, and Apple simply ignores that the jury improperly applied the same 50% reduction to all five products even though it decided infringement differently as to each.[17]

### E.   Apple's Incorrect Notice Date Requires A New Trial Or Remittitur

Apple heavily relies on a presentation Apple gave to Samsung.   Opp. 22-23.   But Mr. Teksler admitted that presentation failed to identify any asserted design patents or trade dress and, as to asserted utility patents, identified only the '381 patent.   RT 1966:12-19; 1967:18; 1968:2-11.   Apple did not identify a single design patent to Samsung prior to filing suit (RT 2008:11-18), and accused only the Galaxy S.   PX52.17.   Mr. Musika's opinions plainly were premised on erroneous notice date assumptions, and Apple does not dispute that these false assumptions inflated the revenue that Mr. Musika used to calculate Samsung's profits by more than $3.3 billion.[18]

---

[17] In *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346-47 (Fed. Cir. 2011), which Apple cites, the record included sales figures, profit margins, an indemnification agreement and an asset sale to support a *Georgia-Pacific* analysis.   No such evidence supported such an analysis here.
[18] In *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364. 1376-77 (Fed. Cir. 2008), cited by Apple, the defendant knew of the specific patent-in-suit and the plaintiff communicated that a specific component would infringe the patent.   And in *Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979, 985 (D. Mass. 1992), the court acknowledged authorities holding that "actual notice of (footnote continued)

Nevertheless, Apple insists no relief is required—even as it relies on Mr. Musika's inflated opinions throughout its opposition to justify the jury's verdicts.   But Apple simply ignores the Federal Circuit's instruction that a new trial is required where, as here, "a jury may have relied on an impermissible basis in reaching its verdict," *Litton Sys., Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1465 (Fed. Cir. 1998)), and it offers no compelling answer to the Ninth Circuit's instruction in *First Alliance* that a new trial and/or remittitur is required where "one of the figures used" by jury to determine damages is erroneous, 471 F.3d at 1001-03.[19]    Apple's cases are not to the contrary.[20]

Apple speculates that the jury's award of 40% of Mr. Musika's claimed Samsung profit figures "could have accounted for notice" (Opp. 22), but the record demonstrates otherwise.   *First*, the jury applied the same 60% reduction even when there was no erroneous notice date that needed correcting (*i.e.,* where the products were first sold *after* the filing of the amended complaint). *Compare* Wagner Decl., ¶12 *with* JX1500 (Galaxy S II (AT&T), Galaxy S II (T-Mobile), Galaxy S II (Epic 4G Touch) & Galaxy S II (Skyrocket)).   *Second*, adjusting Mr. Musika's profit figures to account for correct notice dates *does not come close* to the amount the jury awarded for any of products, whereas reducing Mr. Musika's claimed profit amounts by 60% to account for operating expenses results in the *exact* amounts awarded by the jury (or, as to products found to dilute trade dress, the *exact* amounts awarded by the jury minus Mr. Musika's lost profits calculations). *Compare* Wagner Decl., Ex. B, Schedule 1-B, column g, *with* Wagner Decl., ¶¶12-13.   *See First Alliance*, 471 F.3d at 1002 (determining jury's methodology based on mathematical results "to the dollar").   *Third*, for eight products[21] the jury's award is *higher* than the amount Mr. Musika claimed

---

infringement must include the same information required for actual marking of the invention," a requirement since confirmed by Federal Circuit authority that Apple simply ignores.

[19] While Apple notes that instructional and evidentiary errors undermined "one legal theory" that went to the jury in *First Alliance* (Opp. 23-24), it ignores that a "legal theory" that went to the jury, premised on earlier notice dates than are sustainable, has been undermined here as well.   Apple also offers no persuasive response to *Broklesby v. United States*, 767 F.2d 1288 (9th Cir. 1985), as nothing in that opinion restricts its application to impermissible *liability* theories; it was "legally defective" here (*id.* at 1294) for the jury to base its damages award on the August 4, 2010 notice date.

[20] In *Energy Transp. Group, Inc. v. William Demant Holding A/S*, 2012 WL 4840813, at *11-12 (Fed. Cir. Oct. 12, 2012), the damages award *was not* premised on an impermissible "25% rule" and was supported by the overall analysis conducted by the expert.   In *Revolution Eyewear*, the question was support for the jury's royalty calculation, not whether the verdict was infected by a legal error. 563 F.3d at 1371.   And in *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987), where the challenging party (unlike Samsung) "failed to make a timely request for a special verdict," a new trial was not required because the defendant failed to show that presenting the erroneous damages theory was prejudicial, which Samsung has shown here.   *Id.* at 1373.

[21] The Captivate, Continuum, Droid Charge, Epic 4G, Gem, Fascinate, Mesmerize and Vibrant.

1   as profits *after* correcting for notice, showing that notice corrections cannot explain the awards.

2   *Compare* Wagner Decl., Ex. B, Schedule 1-B, column b *with* column g.[22]

3       **F.**    **Apple's Arguments Against Remittitur Fail**

4       Citing *Energy Transp.*, Apple argues that "the 'court cannot "correct" a damages figure by

5   extrapolating' new damage figures not found on the verdict form."   Opp. 24.   This confuses JMOL

6   and remittitur.   *Energy Transp.* involved a requested reduction in damages based on a JMOL ruling

7   of partial non-infringement.   While the Federal Circuit could not "extrapolate" a lower amount, the

8   "[d]efendant could have sought remittitur from the district court."   2012 WL 4840813, at *12-13.

9       Apple's Prevail arguments fare no better.   *First*, the lost profits analysis Apple posits does

10  *not* lead precisely to the number actually awarded—unlike 40% of Samsung's profits as calculated by

11  Mr. Musika, which Apple does not deny constitutes an impermissible remedy here.   *Second*, to the

12  extent there were a basis for any lost profits award (and there is none), Mr. Musika presented the jury

13  with an $8.5 million lost profits number for the Prevail, PX25A1.4, and there was no evidence to

14  support a higher number.   *Third*, Mr. Musika *never* explained to the jury how to make a revised lost

15  profits calculation if design patents were not infringed and trade dress were not diluted (RT 2122:3-

16  2123:6), and it was impossible for the jury to do so without knowing the not-in-evidence design-

17  around periods for each utility patent found to have been infringed.   RT 2083:10-2084:19.   *Finally*,

18  Apple's alternative theory is contrary to Mr. Musika's own testimony.   Mr. Musika testified that a

19  "limiting factor" in his lost profits calculation was "the percentage of users [shown in PX25A1.13]

20  that would switch carriers," RT 2097:3-5, yet Apple's alternative theory omits this step.   Had Apple

21  included it, Apple's alternative theory could at most yield $17 million in lost profits for the Prevail

22  (1.2 million x $244 x 22.5% x 26%) – $40 million less than the jury's actual award.

---

[22] Apple argues the jury may have corrected for notice *and* adjusted Mr. Musika's costs (Opp. 22), but this assumes the jury deducted *fewer* costs than Mr. Musika.   There is no basis in evidence for that assumption, for Mr. Musika did not deduct *a single dollar* in operating expenses and conceded that Samsung was entitled to deduct all costs of goods sold.   RT 2053:17-2055:2, 2056:17-2057:3, 2060:22-2061:11, 3025:1-8.   Apple also argues that it can recover damages on its unregistered trade dress claim regardless of notice issues (Opp. 22), but the jury's uniform award of 40% of Samsung's alleged profits clearly was for design patent infringement.   Dkt. 2054 at 25.   In any case, Apple's argument that the award of 40% of Samsung's alleged profits for these five phones was for a claim that does not require notice, if credited, serves to confirm that the jury's across the board 60% reduction can only be explained as an adjustment for operating expenses, not notice dates.

### G.     The Parties' Stipulation Does Not Apply To Samsung's Post-Trial Arguments

Apple mischaracterizes (Opp. 25) the parties' stipulation on limited use of non-sealed financial exhibits.   The parties in fact agreed to forego only challenges *to summaries of sales and revenues*, with the express caveat that this "is not a waiver of any claims or defenses or claims for relief."   Dkt. 1597 at 1-2.   The stipulation is irrelevant to this motion.

## IX.     SAMSUNG IS ENTITLED TO JMOL ON ITS OFFENSIVE CASE

**Features Patents**.   For the '460, '893, and '711 patents, Apple repeats (Opp. 26-27) its flawed non-infringement arguments:   that apps and modes are somehow irreconcilable.   Undisputed evidence shows that its apps have the claimed modes; to the extent the jury accepted Apple's proposed construction of "mode," it improperly usurped the Court's claim construction role.   Similarly, for the '893 patent, the unrebutted evidence shows that Apple's devices return to a last-viewed photo "irrespective of a duration"; Apple exclusively points to other scenarios that do not depend on the lapse of time—such as running out of battery power—again asking the jury to usurp the Court's claim construction role.   Finally, as to the '711 patent, the evidence shows that Apple's products have the claimed applet.   RT 2433:8-11; DX645.

**Exhaustion**.   Apple has not met its burden of showing an authorized sale under the Intel contract.[23]   Apple's evidence, consisting solely of Donaldson's testimony, failed to address any specific clauses of the expired Intel contract, including those requiring an affirmative act to sublicense subsidiaries in order to sell "indirectly" through them.   PX81.23; *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 222 (D. Del. 2001) (right to sublicense subsidiaries not self-executing).   Apple offered no evidence of any affirmative act by Intel to license any subsidiary under the contract; any involvement—direct or indirect—by Intel in the transaction; or any "essential activities" of Intel Americas' in the U.S.   The invoices Apple introduced at trial (PX78) demonstrate at best that while payment may have been made in the U.S., Apple took delivery of the foreign-manufactured chips in China; there was no evidence the chips originated in or ever passed through the U.S. while the contract was in force.   Apple introduced no evidence of any underlying supply

---

[23] Samsung properly relies on testimony Apple lodged as PX218.   Dkt. 1887 at 2, 1887-11.

1    agreement, let alone one that was negotiated in or controlled from the U.S.[24]

2       *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008), is inapposite.   That case

3    holds that for a device to "substantially embod[y]" *a method claim* for exhaustion purposes, it must

4    "carry out *all the inventive processes* when combined, according to their design, with standard

5    components." *Id.* at 634 (emphasis added).   Here, *apparatus* claims, not method claims, are in

6    issue and Apple itself argued that the asserted Samsung patent claims are substantially embodied by

7    the Intel chip.   RT 361:12-22 ("[The baseband processor] is the device that actually performs what

8    Samsung says is infringing, the Intel chip.").    Apple did not dispute the operation of the Intel chip or

9    rely on any aspect of its own products other than that chip in arguing noninfringement.   Dkt. 1832 at

10   7-8.   If, as the jury found, Apple's products do not infringe, then the Intel chips do not substantially

11   embody the patents and the verdict of exhaustion cannot stand.   On the other hand, if the Court

12   correctly finds that Apple infringes the asserted standards patents, exhaustion still would not apply

13   given the complete lack of evidence of any authorized U.S. sale by Intel Corp. under that agreement.

14

15   DATED: November 9, 2012                QUINN EMANUEL URQUHART & SULLIVAN, LLP

16

17                                         By   */s/ Susan R. Estrich*
                                              Charles K. Verhoeven
18                                            Kathleen M. Sullivan
                                              Kevin P.B. Johnson
19                                            Victoria F. Maroulis
                                              Susan R. Estrich
20                                            Michael T. Zeller

21                                         Attorneys for SAMSUNG ELECTRONICS CO.,
                                           LTD., SAMSUNG ELECTRONICS AMERICA,
22                                         INC., and SAMSUNG TELECOMMUNICATIONS
                                           AMERICA, LLC

23

24

25

26

27   ─────────────────────
     [24] In *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed.
28   Cir. 2005), on which Apple relies, the court's finding of a non-U.S. sale turned in part on plaintiff's
     similar inability to prove that negotiations occurred in the U.S.

     **SAMSUNG'S REPLY ISO MOTION FOR JMOL, NEW TRIAL, AND/OR REMITTITUR**