1    HAROLD J. MCELHINNY (CA SBN 66781)        WILLIAM F. LEE
     hmcelhinny@mofo.com                       william.lee@wilmerhale.com
2    MICHAEL A. JACOBS (CA SBN 111664)         WILMER CUTLER PICKERING
     mjacobs@mofo.com                          HALE AND DORR LLP
3    RACHEL KREVANS (CA SBN 116421)            60 State Street
     rkrevans@mofo.com                         Boston, MA 02109
4    JENNIFER LEE TAYLOR (CA SBN 161368)       Telephone: (617) 526-6000
     jtaylor@mofo.com                          Facsimile: (617) 526-5000
5    MORRISON & FOERSTER LLP
     425 Market Street
6    San Francisco, California  94105-2482     MARK D. SELWYN (SBN 244180)
     Telephone:  (415) 268-7000                mark.selwyn@wilmerhale.com
7    Facsimile:  (415) 268-7522                WILMER CUTLER PICKERING
                                               HALE AND DORR LLP
8                                              950 Page Mill Road
     Attorneys for Plaintiff and               Palo Alto, California 94304
9    Counterclaim-Defendant APPLE INC.         Telephone: (650) 858-6000
                                               Facsimile: (650) 858-6100

10

11                       UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13                            SAN JOSE DIVISION

14

15   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK

16                     Plaintiff,                 **REPLY IN SUPPORT OF APPLE'S**
                                                  **MOTION FOR JUDGMENT AS A**
17          v.                                    **MATTER OF LAW (RENEWED),**
                                                  **NEW TRIAL, AND AMENDED**
18   SAMSUNG ELECTRONICS CO., LTD., a             **JUDGMENT (FRCP 50, 59)**
     Korean corporation; SAMSUNG
19   ELECTRONICS AMERICA, INC., a New             Date:    Dec. 6, 2012
     York corporation; and SAMSUNG               Time:    1:30 p.m.
20   TELECOMMUNICATIONS AMERICA,                  Place:   Courtroom 4, 5th Floor
     LLC, a Delaware limited liability company,  Judge:   Hon. Lucy H. Koh
21
                       Defendants.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

I.    APPLE IS ENTITLED TO JUDGMENT THAT SAMSUNG INFRINGED AND DILUTED THE IPAD TRADE DRESS, OR TO A NEW TRIAL ON THIS ISSUE.................................................................................................................. 1

    A.    The iPad Trade Dress Is Protectable ....................................................... 1

    B.    The Tab 10.1 Infringes and Dilutes the iPad Trade Dress ...................... 4

II.    APPLE IS ENTITLED TO JUDGMENT THAT SAMSUNG INFRINGED THE D'889 PATENT, OR TO A NEW TRIAL ON THIS ISSUE............................................ 6

    A.    The Evidence Establishes Infringement................................................. 6

    B.    A Correct Claim Construction Makes Infringement Even Clearer........................ 7

    C.    Design Patent Infringement Does Not Require "Deceptive Similarity"................. 7

III.    APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON ITS REMAINING CLAIMS ...................................................... 8

    A.    All Accused Phones Infringe The D'677 And D'087 Patents And Dilute the iPhone Trade Dresses ............................................................. 8

    B.    All Accused Phones Infringe the '163 and '915 Patents......................... 9

    C.    Samsung's Infringement And Dilution Was Always Willful ............................. 10

    D.    SEC Is Liable Directly And For Inducing Patent Infringement........................... 11

    E.    Apple's Damages Award Should Not Be Reduced If The Court Disaggregates And Adjusts Damages On Product-Specific Grounds.................... 12

IV.    APPLE IS ENTITLED TO JMOL THAT SAMSUNG'S PATENTS ARE INVALID. .......................................................................................... 13

V.    APPLE IS ENTITLED TO JMOL OR A NEW TRIAL ON ITS BREACH OF CONTRACT AND ANTITRUST COUNTERCLAIMS ............................................. 14

    A.    Samsung Breached Its Contractual Obligations Under The ETSI IPR Policy ........................................................................................ 14

    B.    Samsung Violated Section 2 Of The Sherman Act................................. 16

VI.    APPLE IS ENTITLED TO SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST ....................................................................... 17

CONCLUSION ..................................................................................................................... 20

1

## TABLE OF AUTHORITIES

**Page(s)**

2

C<small>ASES</small>

3

4

*Akermanis v. Sea-Land Serv.*,
    688 F.2d 898 (2d Cir. 1982).................................................................. 12

5

*Apple Inc. v. Samsung Elecs Co.*,
    678 F.3d 1314 (Fed. Cir. 2012)................................................................ 7

6

7

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
    457 F.3d 1062 (9th Cir. 2006)............................................................. 2, 4

8

9

*Aurora World, Inc. v. Ty, Inc.*,
    719 F. Supp. 2d 1115 (C.D. Cal. 2009) ................................................... 3

10

*Autodesk, Inc. v. Dassault Systems Solidworks Corp.*,
    685 F. Supp. 2d 1001 (N.D. Cal. 2009) ................................................... 3

11

12

13

*B & H Mfg. Co. v. Bright*,
    No. CVF016619AWISMS,
    2005 WL 1342815 (E.D. Cal. May 10, 2005)........................................ 11

14

*Beatrice Foods Co. v. New England Printing & Lithographing Co.*,
    923 F.2d 1576 (Fed. Cir. 1991)............................................................. 19

15

16

*Braun, Inc. v. Dynamics Corp. of Am.*,
    975 F.2d 815 (Fed. Cir. 1992)................................................................. 8

17

18

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F. 3d 297 (3d Cir. 2007)................................................................. 17

19

20

*Burberry Ltd. V. Euro Moda, Inc.*,
    No. 08 Civ. 5781,
    2009 WL 1675080 (S.D.N.Y. June 10, 2009)......................................... 5

21

22

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,
    870 F.2d 512 (9th Cir. 1989)................................................................. 20

23

*Clicks Billiards, Inc. v. Sixshooters Inc.*,
    251 F.3d 1252 (9th Cir. 2001)................................................................. 1

24

25

*Continental Lab. Prods. v. Medax Int'l*,
    114 F. Supp. 2d 992 (S.D. Cal. 2000) ..................................................... 3

26

*Crocs, Inc. v. ITC*,
    598 F.3d 1294 (Fed. Cir. 2010)............................................................... 8

27

28

*Cyclone USA, Inc. v. LL & C Dealer Serv., LLC*,
No. CV 03-992,
2010 WL 2132378 (C.D. Cal. May 24, 2010) ....................................................................... 20

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) .......................................................................................... 11

*Dimick v. Schiedt*,
293 U.S. 474 (1935) ............................................................................................................ 12

*Disc Golf Ass'n v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) .............................................................................................. 2

*Earl v. Bouchard Transp. Co., Inc.*,
917 F.2d 1320 (2d Cir. 1990) ............................................................................................. 12

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ......................................................................................... 6, 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ............................................................................................ 7

*First Brands Corp. v. Fred Meyer, Inc.*,
809 F.2d 1378 (9th Cir. 1987) ......................................................................................... 3, 17

*Fresenius Med. Care Holdings v. Baxter Int'l, Inc.*,
No. C 03-1431,
2008 WL 928535 (N.D. Cal. Apr. 4, 2008) ......................................................................... 19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011) ....................................................................................................... 12

*Gorham Co. v. White*,
81 U.S. 511 (1871) ............................................................................................................... 8

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
365 F. Supp. 707 (S.D.N.Y. 1973) ........................................................................................ 4

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009) ................................................................................ 19

*In re First Alliance Mortg. Co.*,
417 F.3d 977 (9th Cir. 2006) .............................................................................................. 13

*K-Tec Inc. v. Vita-Mix Corp.*,
104 U.S.P.Q. 2d 1408 (Fed. Cir. 2012) ............................................................................... 11

*Keystone Mfg. Co. v. Jaccard Corp.*,
   No. 03-CV-648S,
   2007 WL 655758 (W.D.N.Y. Feb. 26, 2007) .......................................................... 1

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
   199 F.3d 1009 (9th Cir. 1999).............................................................................. 2

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)........................................................................... 16

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*,
   833 F. Supp. 2d 333 (E.D.N.Y. 2011) ................................................................ 19

*Novak v. Gramm*,
   469 F.2d 430 (8th Cir. 1972)............................................................................... 13

*OddzOnProds. v. Just Toys*,
   122 F.3d 1396 (Fed. Cir. 1997)............................................................................. 8

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996)............................................................................. 20

*Padco, Inc. v. Newell Cos.*,
   No. 85-C-1325,
   1988 WL 187504 (E.D. Wis. July 27, 1988) ...................................................... 18

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*,
   No. 08-CV-335,
   2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) ...................................................... 18

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012).............................................................................. 4

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288, 1296 (Fed. Cir. 2010) ................................................................. 8

*Roman v. Western Mfg.*,
   691 F.3d 686 (5th Cir. 2012)............................................................................... 12

*San Rafael Compania Naviera v. Am. Smelting & Refining Co.*,
   327 F.2d 581 (9th Cir. 1964)............................................................................... 14

*Smith v. Whitman Saddle*,
   148 U.S. 674 (1893)............................................................................................. 6

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997)............................................................................ 16

*United States EEOC v. Massey Yardley Chrysler Plymouth, Inc.*,
   117 F.3d 1244 (11th Cir. 1997)............................................................................ 12

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) .......................................................................................... 4

**STATUTES**

35 U.S.C. § 289 ........................................................................................................ 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 44.1 .................................................................................................. 14

Fed. R. Civ. P. 51 ..................................................................................................... 14

## INTRODUCTION

The evidence at trial proved conclusively that, despite its frequent public denials, Samsung pulled together a task force of designers and engineers to rip off Apple's unique and inventive designs and technology, down to the smallest detail.  Because the evidence permits only one reasonable conclusion as to Apple's D'889 and iPad trade dress claims, this Court should award judgment as a matter of law.  In the alternative, Apple asks that the Court exercise its discretion to award a new trial on infringement and dilution.  Apple's opening brief explains why this Court should award judgment as a matter of law or a new trial on the other claims where the jury favored Samsung, and why the judgment should be amended to include supplemental damages and pre-judgment interest.  Samsung's contrary arguments lack merit.

### I.    APPLE IS ENTITLED TO JUDGMENT THAT SAMSUNG INFRINGED AND DILUTED THE IPAD TRADE DRESS, OR TO A NEW TRIAL ON THIS ISSUE

#### A.    The iPad Trade Dress Is Protectable

The iPad trade dress is protectable because (1) it is not functional and (2) it had acquired secondary meaning before Samsung began selling the Galaxy Tab 10.1 in June 2011.  Samsung failed to show that substantial evidence supports the jury's contrary findings.

*On functionality*, Samsung selects isolated elements of the iPad trade dress that it claims are functional, but points to no evidence that the iPad trade dress is functional in its entirety.  This omission is fatal.  "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress *as a whole* is functional." *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).  The Court correctly determined that no features of Apple's analogous design patents are functional. *See infra*, at 6.  The only reasonable conclusion as to the iPad trade dress is that it, too, is non-functional. *See Keystone Mfg. Co. v. Jaccard Corp.*, No. 03-CV-648S, 2007 WL 655758, at *7-8 (W.D.N.Y. Feb. 26, 2007) (design patents may be evidence of a corresponding trade dress's non-functionality).

Samsung argues that Apple's advertisements emphasize the iPad's functionality, which is neither true nor relevant.  All six iPad advertisements in the record feature a large colorful photograph of the iPad trade dress.  (PX11.)  Four have no accompanying text other than the

1   name of the product.  Two include in small print the language Samsung cites, but that text does

2   not "tout[] the utilitarian advantages of the design," as required by the Ninth Circuit's four-factor

3   functionality test.  *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).

4   From the text Samsung cites, "thinner" is a reference to the product's design but not to any

5   utilitarian advantage, while the other language addresses attributes of the product other than its

6   design, such as battery life.  (Opp. 1.)  Apple's advertising thus weighs strongly in its favor.

7           Samsung does not dispute Apple's evidence on the second and third factors – that the iPad

8   trade dress was not designed to yield utilitarian advantage or to be cheaper but to make the iPad

9   "breathtakingly simple [and] beautiful."  (Mot. 15.)  Samsung instead offers Mr. Sherman's

10  testimony as to isolated elements of Apple's trade dress.  (Opp. 1.)  Samsung also cites

11  Mr. Bressler and Ms. Kare, whose testimony proves nothing relevant here.  (*Id.*)  Mr. Bressler

12  acknowledged that performance requires the "cover over the display element" to be "clear," (Tr.

13  1199:25 – 1200:4.) but that does not mean that the surface of the product from edge to edge must

14  be a flat, clear surface, as with the iPad.  Alternatives exist.  (PX4 & PX10 (tablets).)  Similarly,

15  Dr. Kare agreed that "[g]ood icons communicate clearly and consistently."  (Tr. 1455:24-25.)

16  But good icons need not adopt Apple's visual language.  "You're only limited by your

17  imagination," Dr. Kare explained.  (Tr. 1399:22-1401:1.)

18          As to the fourth factor – the availability of alternative designs – Samsung misquotes the

19  law.  *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009 (9th Cir. 1999), does

20  not say "alternative designs must offer 'exactly the same features' as plaintiff's product."  (Opp.

21  1-2.)  It says only that in that case none of the designs did offer such features.  *Leatherman*, 199

22  F.3d at 1013-14.  Samsung concedes that Apple's experts testified the alternative designs "'would

23  provide the same functions.'"  (Opp. 1.)  Samsung introduced no contrary evidence, yet presses

24  its expansive view of "aesthetic functionality," which this Court has properly rejected.  (*E.g.*, Dkt.

25  1159 at 7-8.)  Samsung provides no evidence that it would be competitively disadvantaged if

26  Apple's iPad trade dress were enforced.  The Ninth Circuit has "squarely rejected the notion" that

27  features that are attractive to consumers are, for that reason, functional.  *Au-Tomotive Gold, Inc.*

28  *v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1073 (9th Cir. 2006).

1   ***On secondary meaning***, Samsung makes four arguments, all unavailing.  First, Samsung

2   cites other manufacturer's tablets with "similar designs," but offers no evidence that these

3   products had a presence in the market by June 2011 that detracted from consumers identifying the

4   iPad trade dress with Apple.

5   Second, Samsung attempts to impeach Hal Poret's testimony but mischaracterizes the

6   record.  Mr. Poret's survey did not show "no association of the iPad trade dress with Apple"

7   before June 2011.  (Opp. 2.)  Mr. Poret explained that his study showed that "the large majority of

8   those respondents [who] said that they came to associate these looks with Apple," did so "prior to

9   the time that the Samsung products came on the market."  (Tr. 1590:22-25; 1602:7-12.)  Samsung

10   is also wrong that Mr. Poret "changed" his methodology "at Apple's behest" because the results

11   of his first study were too low.  (Opp. 2-3.)  In the testimony Samsung cites, Mr. Poret rejects

12   Samsung's premise that his results were too low and testifies to no change in methodology.  (Tr.

13   1679:15 – 1680:18 (Q:  50% is "the number you want to get above?  A:  No.")

14   Third, Samsung attempts to discount the significance of the iPad's "impressive sales," but

15   the case Samsung cites acknowledges that "evidence of sales may have relevance in establishing

16   secondary meaning."  *Continental Lab. Prods. v. Medax Int'l*, 114 F. Supp. 2d 992, 1003 (S.D.

17   Cal. 2000) (cited in Opp. 3).

18   Finally, Samsung argues that Apple's advertisements featuring images of the iPad do not

19   "direct the consumer's attention to the specific features of the claimed trade dress," but by

20   featuring images of the trade dress, of course they do.  There is no requirement that an

21   advertisement use words to call out the features of the trade dress; it is enough that an

22   advertisement "feature in some way the trade dress itself."  *First Brands Corp. v. Fred Meyer,*

23   *Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987); *accord Autodesk, Inc. v. Dassault Systems Solidworks*

24   *Corp.*, 685 F. Supp. 2d 1001, 1015 (N.D. Cal. 2009) (analyzing whether advertising "stress[es] or

25   feature[s]" the trade dress).  Through its product-as-hero advertisements, Apple showcases the

26   iPad and its trade dress.  *See* PX11 (iPad advertisements); (Tr.  639:8-15; 639:22 (Schiller).)[1]

27   ---

[1] Samsung also urges a "heightened standard" that its cases do not require.  (Opp. at 2.)
Plaintiff in *Aurora World, Inc. v. Ty, Inc.*, 719 F. Supp. 2d 1115, 1152-55 (C.D. Cal. 2009),

28   (Footnote continues on next page.)

1

**B.      The Tab 10.1 Infringes and Dilutes the iPad Trade Dress**

***On infringement,*** Samsung refuses to acknowledge that "[t]he law in the Ninth Circuit is

clear that 'post-purchase confusion'. . . can establish the required likelihood of confusion under

the Lanham Act." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1216 (9th Cir. 2012)

(quoting *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848 (9th Cir.

2002).  A company that profits from post-sale confusion is "a free-rider." *Au-Tomotive Gold*, 603

F.3d at 1138.  Samsung's argument rests on a single out-of-circuit case and a single sentence

from *Rearden*.  (Opp. 4.)  But in *Rearden*, after the broad statement Samsung quotes, the court

goes on to endorse and explain the Ninth Circuit's post-sale confusion cases.  683 F.3d at 1215-

17.

Samsung's attack on Mr. Van Liere's survey fails because of this error and others.

Samsung argues the survey "does not test point of purchase" behavior (Tr. 1704:5-6 (Opp. 3),

ignoring that "confusion on the part of potential consumers," as well as actual consumers, "may

be relevant." *Rearden* , 683 F.3d at 1215.  Potential and actual consumers are precisely the

universe that Mr. Van Liere surveyed. (Tr. 1691:13-22; 1698:10-22.)  Samsung attacks the

control on the theory that consumers "immediately recognize" the Nook as "not an iPad" (Opp. 3-

4), a charge belied by the fact that almost a quarter of consumers incorrectly identified the Nook

as an Apple product.  (Tr. 1700:2-1701:21.)  Samsung is also wrong to cherry-pick among

Mr. Van Liere's findings on the rate of confusion.  Forty-three percent of consumers shown an

unbranded Galaxy Tab—as if seen at a "coffee shop" or "on the light rail"—identified it as an

iPad or Apple product (19% net of control), supporting a "combined rate" of confusion of twelve

percent.  (Tr. 1698:10-1701:21.)  In light of Apple's other overwhelming evidence of confusion,

these findings are "strong evidence" that consumers are likely to be confused by the Galaxy Tab.

*See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707, 716

(Footnote continued from previous page.)

offered no evidence of its U.S. sales volume, no evidence that its advertising featured the trade
dress, and no consumer survey evidence, so it is unsurprising that the court found plaintiff could
not establish secondary meaning.  And *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205,
216 (2000), held that a product's design *is* protectable "upon a showing of secondary meaning."

1   (S.D.N.Y. 1973), *modified*, 523 F.2d 1331 (2d Cir. 1975).

2          Finally, Samsung cannot avoid the results of its own study into "the reasons customers

3   return" the Tab 10.1 to Best Buy, which found that the "[g]reatest number of customer return[s]

4   were those who purchased thinking it was an Apple iPad2." (PX59.19.)  Best Buy is Samsung's

5   "largest vendor for the North American [Tab 10.1] WiFi model" (PX59.2), so Samsung's cases

6   about "a few alleged instances" of confusion are inapposite.  And because Samsung knew its

7   copycat tablets were being confused with the popular iPad (*see also* PX56.22 (54% of viewers

8   attributed "Samsung Tab" advertisement to Apple); PX43.2 (Google "demanding distinguishable

9   design"); PX56.30 (iPad "most recognized product")), Samsung's refusal to adopt a different

10  product design shows that its infringement and dilution were intentional.

11          ***On dilution***, Apple has established fame. Samsung's critique that Apple lacked a survey is

12  irrelevant because a party needs no survey evidence where other evidence amply demonstrates

13  that a trade dress is famous.  *Burberry Ltd. V. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL

14  1675080, at *12 (S.D.N.Y. June 10, 2009).  And Samsung is simply wrong that the iPad

15  advertisements promoted product performance over Apple's claimed trade dress.  (*See* Opp. 6.)

16  Like the print advertisements, the television advertisement on which Samsung relies shows the

17  iPad "as this hero, beautiful product" with a "beautiful design."  (Tr. 645:10-11; 64611-12

18  (Schiller).)  Samsung also argues, in direct conflict with the record, that Apple has "no evidence

19  of actual association."  (Opp. 6.)  Samsung points to (and mischaracterizes) the testimony of Dr.

20  Winer to support this charge, but it was Mr. Van Liere who conducted the survey.  Mr. Van Liere

21  found actual association with Apple's product, corroborating all the other evidence of likely

22  confusion cited in Apple's opening brief.  (*See supra* at 4, Mot. 17.)

23          Because this evidence allows only one reasonable conclusion – that the iPad trade dress is

24  protectable and Samsung has infringed and diluted it – the Court should award judgment as a

25  matter of law in Apple's favor.  Alternatively, the Court should award a new trial on these claims.

26

27

28

1

II.    **APPLE IS ENTITLED TO JUDGMENT THAT SAMSUNG INFRINGED THE**
       **D'889 PATENT, OR TO A NEW TRIAL ON THIS ISSUE**

2

3

       A.    **The Evidence Establishes Infringement**

4     Legal and evidentiary errors infect Samsung's non-infringement argument.  (Opp. 6-9.)

5     Samsung begins with a legal error – that the test for design infringement is whether consumers

6     would be "deceived."  (*See infra*, Section II.C.)  It continues with evidence of the subjective

7     intent of a designer, which has no probative value in assessing infringement because infringement

8     is assessed from the perspective of the "ordinary observer," not the inventor.  *Egyptian Goddess,*

9     *Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008) (en banc).  Samsung's argument also

10    relies on evidence that the Court ruled inadmissible for non-infringement purposes – the 035

11    model.  (Dkt. 1889 at 11.)  Samsung even faults Apple for introducing expert testimony that "did

12    not factor out any functional aspects of the D'889 design" (Opp. at 8), although the Court

13    correctly determined that Samsung had not "established based on functionality" that the claim

14    construction for Apple's design patents should exclude features that Samsung claimed were

15    functional.  (RT 3763:7-14).

16    Samsung's remaining non-infringement arguments also fail because they rely on small

17    differences between the Tab 10.1 design and Apple's D'889 design (Opp. 6-7), contrary to black

18    letter law that "'minor differences . . . cannot, and shall not, prevent a finding of infringement.'"

19    (Mot. 22 (quoting *Payless Shoesource, Inc. v Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir.

20    1993).)  The two cases Samsung cites actually undermine its position: both base non-infringement

21    holdings on a difference between the accused product and the patented design that was substantial

22    in light of the prior art.  (Opp. 7.)  In *Smith v. Whitman Saddle*, 148 U.S. 674 (1893), the accused

23    saddle differed from the patented design in that it lacked a "sharp drop of the pommel at the rear,"

24    a feature that the Court explained "seems to constitute what was new and to be material" in that it

25    rendered the entire design patentable.  *Id*. at 682.  Similarly, in *Egyptian Goddess*, the accused

26    nail buffer closely resembled a prior art product except with regard to its basic shape, leading the

27    court to conclude:  "When considering the prior art in the nail buffer field, this difference between

28    the [4-sided] accused design and the [3-sided] patented design cannot be considered minor."  543

1   F.3d at 683.  Both decisions support infringement here because the features that set the D'889

2   apart from the prior art – such as its elegant symmetry and its "transparent, glass-like front

3   surface . . . extending from edge to edge," *Apple Inc. v. Samsung Elecs Co.*, 678 F.3d 1314, 1331

4   (Fed. Cir. 2012)[2] – are among the features that the Tab 10.1 copied.  In sum, the evidence permits

5   only one reasonable conclusion: the Tab 10.1 infringes the D'889.

6          **B.      A Correct Claim Construction Makes Infringement Even Clearer**

7          Samsung acknowledges that "[o]blique line shading must be used to show . . . highly

8   polished or reflective surfaces," but avoids the logical consequences of this statement.  (Opp. 10

9   (quoting MPEP 1503.02 (II)).)  If such shading "must be used to show" highly polished or

10  reflective surfaces and such shading is not used in Figure 4 (back of the D'889 design), then the

11  back need not be polished or reflective.  And if the back is not required to be polished or

12  reflective in Figure 4, then the back is also not polished or reflective in Figure 2.  This result is

13  perfectly consistent with the MPEP.  The principle that oblique line shading "<u>must</u> be used to

14  show" a highly polished or reflective surface does not mean that oblique line shading can <u>only</u> be

15  used to show such a surface.  Samsung cites Mr. Bressler's testimony at trial accepting the

16  Court's claim construction, which proves nothing since "[n]o party may contradict the court's

17  construction to a jury."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir.

18  2009).  Samsung also argues that the 035 model has a shiny surface, which is irrelevant because

19  (1) the "appendix showing various photographs" of the 035 model was "cancelled" from the

20  application that became D'889 so that only the drawings define the claimed design (Dkt. 1089-14

21  at APLNDC00032359; Dkt. 1089-15 at APLNDC00032436), and (2) a "shiny" surface is not

22  required even by the Court's construction.

23         **C.      Design Patent Infringement Does Not Require "Deceptive Similarity"**

24         Attempting to defend Jury Instruction No. 46, Samsung cites a "deceptive similarity"

25  requirement" that is not in the case law.  (Opp. 11.)  No appellate court has ever required

26  ─────────────────────
    [2] Samsung is mistaken that the Seventh Amendment prevents Apple from relying on this
27  Court's or the Federal Circuit's preliminary injunction decision.  (*See* Opp. 9.)  While the earlier
    findings may not bind the Court, the facts remain the same so the analysis should as well.

28

1   evidence that ordinary observers have been deceived by the similarity between the accused and

2   patented designs.  *Gorham Co. v. White*, 81 U.S. 511 (1871), did not.  It analyzed infringement by

3   comparing drawings in the asserted patent and defendant's patents.  *Id*. at 521.  *Egyptian Goddess*

4   did not,  it clarified that infringement did not require an accused product to embody the patented

5   design's "point of novelty" over the prior art.  543 F.3d at 678.  Similarly in Samsung's other

6   cases, courts analyzed infringement by comparing the accused products side by side with the

7   patented designs to assess whether they were substantially similar, and did not require evidence

8   that purchasers had been deceived.  *E.g., Richardson v. Stanley Works*, *Inc.*, 597 F.3d 1288, 1296

9   (Fed. Cir. 2010); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303-06 (Fed. Cir. 2010); *OddzOnProds. v.*

10  *Just Toys*, 122 F.3d 1396, 1404-07 (Fed. Cir. 1997).

11      In sum, the Court should grant judgment as a matter of law or, in the alternative, a new

12  trial on Apple's D'889 infringement claim.

13  **III.   APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW**
        **TRIAL ON ITS REMAINING CLAIMS**
14

15      On the remaining design, trade dress, and utility patent claims, the Court should grant

16  judgment as a matter of law in Apple's favor.  In the alternative, for the iPhone combination trade

17  dress claim or any other claim in which the Court grants a new trial, a new trial should include

18  accused products as to which this jury failed to find for Apple.

19      **A.    All Accused Phones Infringe The D'677 And D'087 Patents And Dilute the**
            **iPhone Trade Dresses**
20

21      Where the jury found some but not all of Samsung's phones to infringe a design patent or

22  to dilute an iPhone trade dress, Apple has moved for judgment or a new trial.

23      ***On the D'677 and D'087***, Samsung objects that Apple provided no "product-by-product

24  assessment" of infringement (Opp. 11), but every accused phone is in evidence and a visual

25  comparison between these devices and the patented design is evidence enough to establish

26  infringement.  *Braun, Inc. v. Dynamics Corp. of Am.* 975 F.2d 815, 821 (Fed. Cir. 1992).

27  Moreover, Mr. Bressler performed "the same analysis" for each accused phone.  (Tr. 1055:12-17;

28  1062:23-1063:9.)  That Mr. Bressler summarized his opinions as to a group of accused products is

1   of no moment.

2          Samsung's specific non-infringement arguments also fail.  On the D'677 patent, Samsung

3   holds out the chrome trim on the home button of the Ace as a significant difference, when the

4   patent clearly disclaims the home button area.  (JX1043.)  On the D'087 patent, Samsung

5   concentrates on minor differences in the bezel of the Galaxy S II phones (AT&T; i9100; Epic 4G

6   Touch; and Skyrocket), rather than their overall similarity in visual impression to the Apple

7   design.  And as to the Infuse 4G, Samsung's erroneous focus on manufacturing construction,

8   rather than visual impression, leads it to ignore the visual appearance of a bezel in the Infuse 4G

9   that is substantially similar to the one claimed in the D'087 patent.

10          **On the iPhone trade dress claims**, Samsung's opposition mostly incorporates by

11   reference arguments that Samsung makes and Apple has responded to elsewhere.  (*See* Opp. 12-

12   13; Mot. 16-19.)  Samsung's new arguments are without merit.  For example, Mr. Van Liere did

13   not admit his survey "may have measured association merely in the same manner that consumers

14   'associate' Burger King and McDonalds."  (Opp. 12.)  In Samsung's cited testimony, Mr. Van

15   Liere disagreed with that proposition, and explained that *if* his survey "was creating a demand

16   characteristic as [Samsung] suggest[s], then it would be netted out in the control condition."  (Tr.

17   1718:13 – 1718:24.)

18          **B.      All Accused Phones Infringe the '163 and '915 Patents**

19          Samsung charges that Apple's infringement expert analyzed only one product, when in

20   fact Dr. Singh showed videos of all accused devices performing the claimed steps and testified

21   that each infringed both the '163 (Tr. 1840:23-1842:2.) and '915 patent.  (Tr. 1829:12-1830:21.)

22   Samsung cites Mr. Gray, but his testimony provides no reasonable basis for finding non-

23   infringement.

24          **On the '163 patent**, Samsung relies on Mr. Gray's testimony that the claim term

25   "substantially centered" is ambiguous.  (Tr. 2922:7 – 2923:1.)  This is a conclusory opinion on

26   the legal question of indefiniteness, not a non-infringement argument.  Samsung also relies on

27   muddled testimony in which Mr. Gray refers to "nested boxes" (Tr 2923:2 – 2924:3), but since

28   the "plurality of boxes" claimed in the patent can be adjacent to one another (JX1046 at col. 19,

lines 15-16 & Fig. 5A), this testimony is irrelevant.  **On the '915 patent**, the Ace, Intercept, and

Replenish run the same versions of code (2.2.1 and 2.2.2) that the jury correctly found infringing

in other products such as the Galaxy S 4G (2.2.1) and Fascinate (2.2.2).  (JX1030, JX1009,

JX1024, JX1019, JX1013; Dkt. 1931 at 3; Dkt. 1825-2 at 3.)  Samsung relies on Mr. Gray's

testimony that the MotionEvent object does not "cause" scrolling or scaling because it does not

itself directly call the scrolling or scaling operation (Tr. 2101-2012), but that opinion is contrary

to the Court's claim construction (Dkt. 1158 at 18-19), and was properly rejected by the jury on

the other 21 of 24 accused products.  As for Samsung's "two-finger scrolling" argument, there is

no evidence that the Ace, Intercept or Replenish phones perform "two finger scrolling" (they do

not).  (JX1009; JX1024; JX1030.)  In any event, the ability to perform a two-finger "gesture

operation" that combines both scaling and panning does not avoid infringement, as Dr. Singh

explained and the jury correctly concluded with respect to the Galaxy Tab 10.1 running Android

3.1.  (Tr. 1862:11-1864:17; Dkt. 1931 at 3 (verdict).)

### C.    Samsung's Infringement And Dilution Was Always Willful

Apple agrees that evidence must be clear and convincing to prove willfulness for patent

infringement (see Opp. 14), but the evidence more than meets this standard.  Samsung knew or

should have known of Apple's patents and that its products infringed.  (*See*, *e.g.*, JX1091 (public

announcement that Apple had "patented the heck out of" the iPhone); Tr. 2023:11 – 2024:9 (J.W.

Lee admits "in the first meeting [] Apple was talking about Samsung's smartphone infringed

Apple phone's patents and design"); Tr. 2025:22-2026:10 (Design Strategy Team Leader testifies

that Samsung did not pay any attention to Apple's design patents).  Samsung knew that it had

copied the iPhone and iPad with its Galaxy phones and tablets, yet it persisted with the infringing

designs.  (Tr. 1074:20 – 1075:4 (Samsung Vibrant "shockingly similar" to the iPhone 3G; 1080:4

– 1082:10 ("Tab 10.1 . . . often . . . mistaken . . . for an iPad 2"); 1087:24 – 1090:8; PX59 (

"greatest number of customer return[s]" of the Tab 10.1 at Best Buy "were those who purchased

thinking it was an Apple iPad 2")); PX42 & 43.2 ("Google is demanding distinguishable design

vis-à-vis the iPad for the P3," a code name for the Tab 10.1 per RT 2823:21-2824:2).

Samsung fails to rebut Apple's evidence of "'deliberate copying,'" which is "'strong

1    evidence of willful infringement.'"  (Dkt. 2002 at 29 (quoting *L.A. Gear v. Thom McAn Shoe Co.*,

2    988 F.2d 1117, 1127 (Fed. Cir. 1993)); *see also K-Tec Inc. v. Vita-Mix Corp.*, 104 U.S.P.Q. 2d

3    1408, 1418 (Fed. Cir. 2012).)  Instead, Samsung attempts to obscure the law, offering that

4    "copying differs from infringement."  (Opp. 14.)  But if "evidence of copying is 'of no import on

5    the question of whether the claims of an issued patent are infringed,'" it is relevant "to *Seagate*'s

6    second prong, as it may show what the accused infringer knew or should have known about the

7    likelihood of its infringement."  *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d

8    1314, 1336 (Fed. Cir. 2009) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336,

9    1351 (Fed. Cir. 2002)).

10        Samsung's cases do not address trade dress claims, where a preponderance of the

11   evidence suffices to prove willfulness.  *B & H Mfg. Co. v. Bright*, No. CVF016619AWISMS,

12   2005 WL 1342815, at *8-9 (E.D. Cal. May 10, 2005); Dkt. 1903 at 93.  For Apple's unregistered

13   trade dress, the only notice that Apple was required to prove was that Samsung had seen the

14   Apple products, and it certainly did, in the course of copying them.  (*See also* Dkt. 418 (Lutton), ¶

15   14; PX52.17-19 ("Samsung Copying iPhone").)

### D.    SEC Is Liable Directly And For Inducing Patent Infringement

17        Where the jury found Samsung had infringed Apple's patents, it properly found SEC

18   liable for that infringement both directly and on a theory of inducement.  (Dkt. 1931 at 2-8.)

19   Apple's motion for judgment as a matter of law or, in the alternative, for a new trial would extend

20   SEC's liability on both theories to an additional patent (the D'889) and to additional products for

21   the D'087, '163, and '915 patents when they are found to be infringing.  (Mot. 2, 4.)  Samsung's

22   arguments against such liability are unavailing.

23        Samsung is liable as a direct infringer and for inducing infringement, because it

24   intentionally participated in the sale of its products in the U.S. market.  (Dkt. 1849 at 31, 73 (Jury

25   Instr's) and cases cited therein.)  SEC designs and manufactures the products, ships them to two

26   locations in the United States, and gives its wholly owned subsidiaries, who sell the phones to

27   carriers in the United States, "directions."  (Tr. 791:20 – 796:18 (Denison).)  For example, SEC

28   sets the price at which its products are sold to carriers (Tr. 2029:22 - 2030:8 (Benner).) and

1    investigates why customers return its products to U.S. retailers (PX59.2).  Apple also proved that

2    Samsung knew or was willfully blind to the fact that Apple had patented the designs and

3    technology Samsung was copying.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060,

4    2070 (2011); PX59.10-11; Dkt. 2050 at 24.  The evidence permits only one conclusion – that

5    Samsung is liable as a direct infringer and for inducing its subsidiaries' infringement.

6    **E.    Apple's Damages Award Should Not Be Reduced If The Court Disaggregates And Adjusts Damages On Product-Specific Grounds**

7

8    Citing *Dimick v. Schiedt*, 293 U.S. 474 (1935), Samsung argues that Apple's conditional

9    request for increased damages on five products for which the jury awarded amounts lower than

10   those calculated by either party's expert violates the rule against *additur*.  But Samsung's

11   argument is contrary to longstanding precedent upholding "an exception to *Dimick* where the jury

12   has found the underlying liability and there is no genuine issue as to the correct amount of

13   damages."  *United States EEOC v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244,

14   1252-53 (11th Cir. 1997) (court erred in failing to increase compensatory award of six months

15   back pay when "nothing in the record" justified "cutting off back pay after six months"); *see also*

16   *Roman v. Western Mfg.*, 691 F.3d 686, 702 (5th Cir. 2012) (district court properly increased

17   compensatory jury award from $15,000 to $168,804.22 because "jury had no valid basis in

18   evidence for its $15,000 sum, as opposed to the full measure of medical costs").  As these cases

19   show, Samsung is also incorrect in asserting that this exception applies only to nominal damages.

20   Accordingly, if the Court reviews the damages award on a product-by-product basis,[3] the

21   Court should offset any remittitur by the additional damages to which Apple is entitled as a

22   matter of law.  No reasonable jury could have awarded less than what Samsung's own expert

23   calculated for the five products at issue; he calculated Samsung's profits using *all* of Samsung's

24   direct and indirect cost deductions and the latest possible notice dates.  He thus identified the

25   [3] Samsung cites no precedent to justify product-level parsing of the damages award.  *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320 (2d Cir. 1990), and *Akermanis v. Sea-Land Serv.*,
26   688 F.2d 898 (2d Cir. 1982), are distinguishable because, *inter alia*, they involve judicial attempts to adjust liability determinations rather than damages.  *See* 917 F.2d at 1321 (seaman's claim for
27   maintenance and cure); 688 F.2d at 902 (increase in contributory negligence percentage).

28

minimum damages – the compensation "floor" – for the alleged infringement.  Because Samsung failed to identify any evidence that might have justified lower damages, the award Samsung itself calculated for these five products would not constitute impermissible *additur*, but would instead correct the verdict to award undisputed damages.[4]

## IV.     APPLE IS ENTITLED TO JMOL THAT SAMSUNG'S PATENTS ARE INVALID.

**'893 Patent.**  Samsung argues that the LG patent "has no bearing on the obviousness of switching to the camera mode" (Opp. 17), but the evidence demonstrates otherwise.  The LG patent discloses "mode switching" (PX112.4 & Fig. 3), and Dr. Dourish testified that it would have been obvious to switch between a photographing mode and a stored image displayed mode. (Tr. 3217:3-3218:14 ("[T]hrough the discussion of mode switching, it makes clear if you have those modes, you have to be able to switch amongst them …." ).)  He also explained that it would have been obvious to display the last-viewed image because "there's … only a finite number of choices you can make for which image should be on the screen."  (Tr. 3218:1-14.)  Dr. Yang did not rebut ***any*** of Dr. Dourish's obviousness opinions.  (*See* Tr. 3666:4-19.)

**'711 Patent.**  Samsung objects that Apple relies on unauthenticated and hearsay evidence (Opp. 17), but the ***admitted evidence***—including sales data, press releases, and a user manual— clearly demonstrates that the K700i was on sale and publicly available in 2004.  (PX113; PX116; PX117; Tr. 3234:21-3238:2 (Givargis) (all admitted without objection).)  Samsung also contends that neither the K700i nor Wang ***by itself*** discloses using an "Applet for multitasking music on a single processor" (Opp. 17-18), but Dr. Givargis explained that applets "were well known prior to 2005" and would have been ***obvious*** to use for a "music background play object" in a mobile phone.  (Tr. 3244:20-3248:14.)  In any event, claim 9 contains no "single processor" requirement as Samsung suggests.  (*See* JX1071.9.)

---

[4] Samsung cites inapposite cases on this issue.  *In re First Alliance Mortg. Co.,* 417 F.3d 977, 1002 (9th Cir. 2006), involves a legally erroneous expert calculation, which the jury was not bound to accept, while *Novak v. Gramm,* 469 F.2d 430, 432-33 (8th Cir. 1972), is a wrongful death suit involving an expert's valuation of a young mother's life.

1    **'460 Patent.**  Contrary to Samsung's assertion (Opp. 18), Apple proved that the prior art

2    teaches sending an email displaying a photo.  As Dr. Srivastava explained, Yoshida describes "a

3    device … able to send an e-mail image" (Tr. 3313:12-3315:4), and Yoshida plainly discloses

4    attaching a displayed image to an email.  (PX120 at 6:38-44, 17:60-67, 20:29-37 & Figs. 4, 10.)

5    **'516 Patent.**  Samsung contends that Hatta was "Apple's only prior art reference" (Opp.

6    18), but Apple relied on Hatta ***combined with*** the admitted prior art ("APA") in the '516 patent.

7    The APA discloses HARQ channels (JX1073, Fig. 5 ("E-DPDCH")), and Hatta teaches the '516

8    patent's alleged solution of "unequal scaling."  (PX100.23, Fig. 5.)  As Dr. Kim explained, this

9    combination renders claims 15 and 16 obvious.  (Tr. 3426:5-3427:20.)

10   **'941 Patent.**  Samsung argues that Agarwal addresses only satellite systems (Opp. 18),

11   but Agarwal ***also*** discloses "wireless terrestrial" systems (PX97.21, 7:25-30), which indisputably

12   include mobile communication systems.  (Tr. 3454:17-3455:1 (Knightly).)  Dr. Knightly

13   explained how Agarwal discloses the one-bit field, serial number, and length indicator claimed by

14   the '941 patent.  (Tr. 3455:23-2459:2.)  Although Samsung now argues that Agarwal does not

15   teach those elements (Opp. 18), it failed to present evidence responding to Dr. Knightly's analysis

16   at trial.

17   **V.    APPLE IS ENTITLED TO JMOL OR A NEW TRIAL ON ITS BREACH OF
         CONTRACT AND ANTITRUST COUNTERCLAIMS**

18

19   **A.    Samsung Breached Its Contractual Obligations Under The ETSI IPR Policy**

20   Samsung first argues that Apple failed to establish Samsung's ETSI obligations under

21   French law (Opp. 18-19), but Apple was not required to call a French law expert to testify before

22   the jury.  Rather, the Court properly determined the content of French law, *see* Fed. R. Civ. P.

23   44.1, based on the ***undisputed*** jury instructions submitted jointly by the parties.  (Dkt. 1693 at 29-

24   30.)  Samsung therefore waived any argument that Apple failed to prove French law.  *See* Fed. R.

25   Civ. P. 51  But even if Samsung were correct that Apple failed to prove foreign law (which it is

26   not), that is no basis for dismissal because, where foreign law is not proven, "it is presumed to be

27   the same as the law of the forum."  *San Rafael Compania Naviera v. Am. Smelting & Refining*

28   *Co.*, 327 F.2d 581, 587 (9th Cir. 1964).

1   Samsung next contends that Apple failed to prove that Samsung breached the ETSI IPR

2   Policy by failing to timely disclose its Korean patent applications.  (Opp. 19-20.)  Samsung

3   attempts to distort its disclosure obligation by arguing that there is no "bright-line rule" requiring

4   disclosure before adoption of the relevant standard.  (Opp. 19.)  As another court recently found

5   in interpreting the same provision, however, Clause 4.1 is clear (PX74.2):  "By using the terms

6   'might' and 'if,' the policy clearly requires members to make efforts to disclose intellectual

7   property rights *before* a standard is adopted."  *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-

8   178 (W.D. Wis. Aug. 10, 2012) ("*Apple v. Motorola*"); Dkt. 194 at 43.  Samsung plainly violated

9   that obligation by deliberately failing to disclose its applications until *after* its related technical

10  proposals had been adopted into the standard—facts that Samsung does not dispute.  The conduct

11  of *other* ETSI members is irrelevant to *Samsung's* breach, especially because there was no

12  evidence that any other member had made a technical proposal and then withheld its IPR until

13  after its proposal was adopted.  (Tr. 3654:23-3655:1 (Teece).)  Furthermore, contrary to

14  Samsung's argument (Opp. 19-20), its Korean applications were "IPR" because they were no

15  longer confidential once Samsung publicly submitted their subject matter to ETSI.  (*See* Apple

16  Br. 23.)[5]

17  Samsung further contends that Apple failed to prove causation or damages.  (Opp. 20.)

18  On the contrary, Apple established that it was harmed by Samsung's late disclosure because it

19  "led to a choice of technology that may not have been chosen but for [Samsung's] conduct" (Tr.

20  3579:2-6 (Ordover)) and Samsung based its assertion of its purportedly standard-essential patents

21  on that choice.  (Tr. 2743:10-15 (Williams) (infringement contentions based on compliance with

22  standard).)  As this Court has previously held, that is sufficient to establish causation because

23  Samsung's concealment of its IPR biased the standard-selection process that led to this litigation

24  and proximately caused Apple's litigation expenses.  (*See* Dkt. 1158 at 40 (where holdup arises

25  from "failure to disclose essential patents to ETSI" and "failure to license on FRAND terms,"

26  ――――――――――――――
    [5]  Samsung's failure to oppose Apple's arguments on this point acts as a waiver.  *See Apple v.*
27  *Motorola* at 45 ("By failing to respond to Apple's contention that the specific patent applications
    at issue in this case were not confidential, Motorola has waived any arguments in opposition.").

28

1    litigation costs "stem directly" from such conduct).)

2          Finally, Samsung maintains that that it complied with its FRAND obligations.  (Opp. 20-

3    21.)  But Samsung's offer of a 2.4% royalty on the *entire sales price* of Apple's accused products

4    is *per se* unfair and unreasonable because, among other reasons, it would compensate Samsung

5    for "many other features" unrelated to Samsung's patents (Tr. 3537:12-3538:6 (Donaldson))—a

6    fact that Samsung does not dispute.  Instead, Samsung points to "licensing rates in the industry"

7    and "Samsung's past licensing practices."  (Opp. 21.)  Dr. Teece's testimony that Samsung's

8    offer "was in the range of rates" observed from other companies (Tr. 3646:21-3647:2), however,

9    did not consider that those other licenses were not comparable in technological or economic

10   terms.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-29 (Fed. Cir. 2009)

11   (rejecting evidence that licenses were comparable where "[t]he testimony provides no analysis of

12   those license agreements, other than, for example, noting the agreement was a cross-license of a

13   large patent portfolio and the amount paid" and rejecting argument that describing licensed

14   portfolios as "PC-related" established requisite comparability).  Similarly, Dr. Teece's testimony

15   that a negotiation "could have resulted" in a cross-license with "the rate going away and possibly

16   just a balancing payment" (Tr. 3646:21-3647:2) is irrelevant to the reasonableness of the offer

17   that Samsung actually made.  Moreover, Samsung's unilateral 2.4% offer—which it made only

18   *after* suing Apple and has never agreed to modify—was not a good-faith negotiation and did not

19   satisfy its obligation "to grant irrevocable licenses on [FRAND] terms."  (PX74.3.)

20          **B.      Samsung Violated Section 2 Of The Sherman Act**

21          Samsung argues that Apple failed to prove a relevant market because there was no

22   evidence of technical alternatives that "a buyer could switch to if necessary."  (Opp. 22.)  But

23   Drs. Kim and Knightly testified that there existed alternative technologies (Apple Br. 25), which

24   could have been used had Samsung's proposals been rejected.  Dr. Ordover was entitled to rely

25   on that testimony in his market analysis.  *See*, *e.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108

26   F.3d 1134, 1142 (9th Cir. 1997) ("The fact that Engelke's opinions are based on data collected by

27   others is immaterial; Federal Rule of Evidence 703 expressly allows such opinion testimony.").

28          Next, Samsung concedes that the evidence supports Apple's theory of monopoly power so

1    long as "every standards-essential patent holder is a monopolist," and argues only that this is "an

2    absurd result."  (Opp. 23.)  There is no absurdity:  "the incorporation of a patent into a

3    standard … makes the scope of the relevant market congruent with that of the patent." *Broadcom*

4    *Corp. v. Qualcomm Inc.*, 501 F. 3d 297, 315 (3d Cir. 2007).  Although Apple disputes that

5    Samsung has any truly essential asserted patents--and the jury properly concluded that it did not--

6    Samsung's claims of essentiality give Samsung the power to exclude competition or demand

7    supracompetitive licensing terms in the relevant technology markets (i.e., the markets that include

8    the technologies that Samsung claims are covered by its patents).  *See id.;* Mot. 25.

9         Finally, Samsung is wrong that Apple may not recover its litigation expenses as damages,

10   as the Court has previously ruled.  (*See* Dkt. 1158 at 40 ("[L]itigation expenses may establish

11   damages for an antitrust claim.").)

12   **VI.    APPLE IS ENTITLED TO SUPPLEMENTAL DAMAGES AND PREJUDGMENT**
          **INTEREST**

13

14        *Supplemental damages.*  Samsung cannot dispute that Apple is entitled to damages

15   through final judgment for Samsung's continuing infringement.  Samsung purports to deconstruct

16   the award, and then asserts that (1) some components of the award are not subject to

17   supplementation, and (2) Apple's calculation is inconsistent with Samsung's assumptions

18   regarding the jury's methodology.  Samsung's arguments are contrary to law.

19        *First*, Samsung did not attempt to rebut or distinguish the cases Apple cited holding that

20   supplemental damages awards should extend the jury's existing verdict without revisiting or

21   reevaluating its methods or conclusions.  (Mot. 27-28.)  Those cases prohibit speculation about

22   how the jury calculated damages so long as the damages are supported in the record as a whole.

23   (*See also* Dkt. 2050 at 26.9-27.5.)  Here, the record amply supports the jury's $1.05 billion award,

24   and thus Apple's reasonable calculation based on the award.  Because Apple properly extends the

25   jury's verdict forward in time, Apple's method poses no Seventh Amendment problem.

26        *Second*, even if the Court were to attempt to deconstruct the jury's damages methodology,

27   supplemental damages are not barred on the bases Samsung identifies.  Courts have expressly

28   rejected Samsung's argument that infringer's profits cannot be awarded post-verdict as

1    supplemental damages.  *E.g.*, *Padco, Inc. v. Newell Cos.*, No. 85-C-1325, 1988 WL 187504, at

2    *2-3 (E.D. Wis. July 27, 1988); *see also* 35 U.S.C. § 289 ("Nothing in this section shall prevent,

3    lessen, or impeach any other remedy which an owner of an infringed patent has under the

4    provisions of this title" except trebling.).  Likewise, Samsung's argument that extending lost

5    profits or royalties would be inconsistent with the methodology of Apple's damages expert misses

6    the mark because "[s]upplemental damages are calculated consistent with the damages awarded

7    in the jury verdict."  *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, No. 08-CV-335,

8    2010 WL 3070370, at *1-2 (S.D. Cal. Aug. 5, 2010).  Courts and parties cannot know, nor try to

9    guess, what methods the jury used in calculating damages.

10          *Third*, Samsung's suggestion that Apple's calculation should be rejected because it does

11   not use actual sales data for Samsung products is not credible, given that Samsung has only

12   disclosed partial data, and that just before this brief was due, when Apple had no opportunity to

13   test its reliability. (Hung. Decl. Ex. 20-22.)  Apple's projected sales were conservative because

14   they excluded any sales of the other 18 of 26 infringing products after June 30, 2012.  (*See* Dkt.

15   1982-71 ¶ 11.)  Even from the selective and self-serving disclosures in Samsung's opposition, it

16   is clear that Samsung continued to sell numerous products after June 30, 2012.  (Dkt. 2060; Ex.

17   1.)  Moreover, even Samsung's new data (and projections through the entry of judgment based on

18   it) produces supplemental damages totaling more than $100 million, which confirms the

19   reasonableness of Apple's request for $121 million.  (*See* Reply Robinson Decl. ¶ 6.)[6]

20          Samsung's other criticisms are similarly disingenuous.  Samsung suggests that Apple's

21   per-unit damages amount of $50.40 (calculated by dividing the total verdict by the number of

22   infringing units) is too high because it includes products like the Fascinate that Samsung no

23   longer sells.  But if Apple had calculated a per-unit damages amount based solely on the eight

24   products used in its supplemental damages calculation, the per unit amount (and thus the total

25   _____

26          [6] If supplemental damages are awarded based on Samsung's newly-produced claimed
     sales data, prejudgment interest on the verdict would remain the same at $48,969,088, while
27   interest on the supplemental damages portion would decrease from about $899,201 to $770,339.
     (*Compare* Dkt. 1982-71 ¶¶ 19-20, *with* Reply Robinson Decl. ¶ 6.)

28

1   supplemental damages) would have been *higher*.  (*See* Reply Robinson Decl. ¶ 3.)  Samsung also

2   wrongly criticizes Apple for failing to consider the effect of new products or supposedly non-

3   infringing variations of the eight products, although Apple's model of supplemental damages took

4   into account the likelihood of reduced demand, and thus reduced sales.  (*See* Dkt. 1982-74; Ex.

5   3.2.)  And Samsung attempts to limit the award to post-verdict infringement, although the

6   limitations on information available meant the jury was not asked to and did not compensate

7   Apple for sales after June 30, 2012.  Pre-verdict supplemental damages – beginning after the "the

8   last date for which [the patentee] was able to present evidence of [infringing] sales to the jury –

9   are proper. *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 609 F. Supp. 2d 951, 959-65, 987 (N.D.

10  Cal. 2009); *see also Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333,

11  349-351 (E.D.N.Y. 2011).

12        *Finally*, the Court should reject Samsung's attempt to postpone an award of supplemental

13  damages until after final judgment and appeal.  The Court has all the information it needs to

14  fashion appropriate post-verdict relief, and waiting until later to award supplemental damages will

15  needlessly drag out the proceedings.

16        **Pre-judgment interest.**  Samsung's calculation of prejudgment interest of only $248,023

17  on a $1.05 billion judgment is not plausible on its face.  Samsung fails to identify any evidence

18  that Apple could have borrowed $1.05 billion at the historically low rate – about two tenths of

19  one percent – that Samsung identifies in its opposition.  (*See* Opp. 30.)  Apple's request for

20  prejudgment interest using the compounded prime rate better reflects actual borrowing costs for

21  businesses during the relevant period and, as courts have frequently recognized, the prime rate "is

22  appropriate for calculating prejudgment interest in a patent case." *Fresenius Med. Care Holdings

23  v. Baxter Int'l, Inc.*, No. C 03-1431, 2008 WL 928535, at *3 (N.D. Cal. Apr. 4, 2008).

24        Samsung's argument that the Court should deconstruct the jury's verdict and award

25  prejudgment interest on only portions of it finds no support in the case law. *Beatrice Foods Co.

26  v. New England Printing & Lithographing Co.*, 923 F.2d 1576 (Fed. Cir. 1991), upheld a

27  prejudgment interest award to the full extent of the assessed damages, declining only to affirm

28  prejudgment interest for amounts that reflected the trebling of that award. *Id*. at 1578-81.  Here,

1    Apple has not sought prejudgment interest on any enhancement of its damages.  *Oiness v.*

2    *Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996), is similarly inapposite because *Oiness* involved two

3    separate awards, one for past damages where the Federal Circuit said prejudgment interest on the

4    entire award was appropriate, and one for projected future damages, a remedy Apple has not

5    sought.  (*See id.* at 11033.)  "Interest compensates the patent owner for the use of its money

6    between the date of injury and the date of judgment," the *Oiness* court explained, a principle that

7    supports awarding prejudgment interest on all of the damages in this case.  As noted above with

8    respect to supplemental damages, any deconstruction of the jury award is contrary to Federal

9    Circuit precedent.

10        Samsung is also wrong that the Ninth Circuit awards prejudgment interest in Lanham Act

11    cases only where counterfeiting is at issue.  In this Circuit and elsewhere, courts have discretion

12    to award prejudgment interest for other types of Lanham Act violations.  *See Clamp Mfg. Co.,*

13    *Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512 (9th Cir. 1989) (affirming award of prejudgment interest

14    in non-counterfeiting Lanham Act case); *Cyclone USA, Inc. v. LL & C Dealer Serv., LLC*, No.

15    CV 03-992, 2010 WL 2132378, at *1 (C.D. Cal. May 24, 2010) (awarding prejudgment interest

16    for trademark infringement and other Lanham Act violations because "prejudgment interest

17    should be presumptively available" for violations of federal law).

18        Finally, Apple's request for prejudgment interest is not premature. Apple's request is

19    consistent with the schedule ordered by the Court, which will have all the information it requires

20    to calculate and award interest on the final amount of the judgment.

21                                    **CONCLUSION**

22        For the foregoing reasons and as set forth in Apple's opening brief, Apple requests that

23    the Court award judgment as a matter of law or, in the alternative, a new trial as to certain claims,

24    together with supplemental damages and prejudgment interest.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: November 9, 2012

MORRISON & FOERSTER LLP

By:  /s/ Michael A. Jacobs
     Michael A. Jacobs

Attorneys for Plaintiff
APPLE INC.