Exhibit E

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION FOR A PERMANENT INJUNCTION AND FOR DAMAGES ENHANCEMENTS**<br><br>Date:   Dec. 6, 2012<br>Time:   1:30 p.m.<br>Place:  Courtroom 4, 5th Floor<br>Judge:  Hon. Lucy H. Koh |

SUBMITTED UNDER SEAL

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      A PERMANENT INJUNCTION SHOULD ISSUE ...................................................... 1

    A.      Samsung's Infringement Causes Irreparable Harm to Apple ................................. 1

        1.      Apple's designs drive demand for the infringing products ......................... 2

        2.      Apple's utility patents drive demand for the products .............................. 4

        3.      Apple's trade dress supports an injunction ................................................ 6

        4.      The harm to Apple is irreparable .............................................................. 7

        5.      Samsung's alleged changes to its products do not defeat the motion ........ 8

    B.      The Balance of Equities Favors an Injunction ...................................................... 9

    C.      The Public Interest Favors an Injunction ............................................................. 9

    D.      Apple's Proposed Injunction Is Proper .............................................................. 10

II.     THE COURT SHOULD ENHANCE THE AWARD BY $535 MILLION ..................... 10

    A.      The Lanham Act Authorizes a $400M Enhancement ......................................... 10

    B.      The Patent Act Authorizes at Least an Additional $135M Enhancement ........... 13

III.    SAMSUNG'S SUBMISSIONS VIOLATE THE COURT'S ORDERS ......................... 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Acumed LLC v. Stryker Corp.*,
   551 F.3d 1323 (Fed. Cir. 2008) ......................................................................................... 8

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
   No. C95-03577-DLJ,
   2008 WL 4647384 (N.D. Cal. Oct. 20, 2008) ...................................................................... 8

*Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006) ....................................................................................... 11

*Allee v. Medrano*,
   416 U.S. 802 (1974) ........................................................................................................... 8

*Apple v. Motorola*,
   No. 11-cv-08540,
   2012 WL 2376664 (N.D. Ill June 22, 2012) ....................................................................... 9

*Apple v. Samsung Elecs. Co. ("Apple I")*,
   678 F.3d 1314 (Fed. Cir. 2012) ................................................................................. 1, 3, 7

*Apple v. Samsung Elecs. Co. ("Apple II")*,
   No. 2012-1507,
    2012 WL 4820601 (Fed. Cir. Oct. 11, 2012) ........................................................ 1, 3, 4, 7

*Arnott v. Am. Oil Co.*,
   609 F.2d 873 (8th Cir. 1979) ........................................................................................... 12

*Belden Techs. Inc. v. Superior Essex Commc'ns L.P.*,
   802 F. Supp. 2d 555 (D. Del 2011) .................................................................................. 10

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002) ....................................................................................... 11

*E. Mountain Platform Tennis, Inc. v. Sherwin-Williams Co.*,
   40 F.3d 492 (1st Cir. 1994) ............................................................................................. 12

*eBay Inc. v. Mercexchange LLC*,
   547 U.S. 388 (2006) ........................................................................................................... 7

*Fujitsu v. Belkin*,
   No. 10-cv-3972,
   2012 WL 4497966 (N.D. Cal. Sept. 28, 2012) ................................................................. 13

*Funai Elec. Co. v. Daewoo Elec. Corp.*,
    593 F. Supp. 2d 1088 (N.D. Cal. 2009) ............................................................. 14

*High Tech Med. Instr. Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ......................................................................... 4

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
    397 F. Supp. 2d 537 (D. Del. 2005) ................................................................. 8

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
    609 F. Supp. 2d 951 (N.D. Cal. 2009) .......................................................... 4, 9

*Int'l Rectifier Corp. v. IXYS Corp.*,
    383 F.3d 1312 (Fed. Cir. 2004) .................................................................. 9, 10

*Nichia Corp. v. Seoul Semi. Ltd.*,
    No. 06-0162 MMC,
    2008 WL 346416 (N.D. Cal. Feb. 7, 2008) ....................................................... 9

*Nigg v. United States Postal Serv.*,
    555 F.3d 781 (9th Cir. 2009) ......................................................................... 11

*Polo Fashions Inc. v. Dick Bruhn Inc.*,
    793 F.2d 1132 (9th Cir. 1986) ......................................................................... 8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    762 F. Supp. 2d 710 (D. Del. 2011) ................................................................ 14

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ....................................................................... 14

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .................................................................. 2, 7

*Sanofi-Synthelabo v. Apotex*,
    470 F.3d 1368 (Fed. Cir. 2006) ..................................................................... 10

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
    758 F.2d 613 (Fed. Cir. 1985) ....................................................................... 12

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
    466 F. Supp. 2d 978 (W.D. Tenn. 2006) ........................................................... 8

*Tate Access Floors v. Interface Arch. Res. Inc.*,
    132 F. Supp. 2d 365 (D. Md. 2001) ................................................................ 10

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    592 F. Supp. 2d 727 (D. Del. 2009) ................................................................ 13

*Tivo, Inc. v. Echostar Corp.*,
  646 F.3d 869 (Fed. Cir. 2007).............................................................................9, 10

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992)..................................................................................................6

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
  842 F.2d 1275 (Fed. Cir. 1988).................................................................................8

*Winter v. Natural Resources Defense Council*,
  555 U.S. 7 (2008)......................................................................................................1

**STATUTES**

15 U.S.C.
  § 1117(a)(3)..............................................................................................11, 13, 14
  § 1125(c)....................................................................................................................6

35 U.S.C.
  § 284..........................................................................................................................14
  § 289.............................................................................................................11, 12, 14

## I.  A PERMANENT INJUNCTION SHOULD ISSUE

Samsung willfully infringed Apple's design and utility patents and diluted its trade dress, selling over 20 million infringing products and obtaining $7.5 billion in revenues.  Samsung copied this intellectual property in a calculated effort to wrest market share from Apple.  Samsung asks this Court to permit it to continue because its violations allegedly have no effect on the market, the Court can impose a compulsory license, and Samsung intends to stop at a time of its own choosing.  None of these excuses justifies denial of an injunction.

### A.  Samsung's Infringement Causes Irreparable Harm to Apple

The Federal Circuit requires "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple v. Samsung Elecs. Co. ("Apple II")*, No. 2012-1507, 2012 WL 4820601, at *2 (Fed. Cir. Oct. 11, 2012).  It is not enough that "alleged infringement caused an insignificant amount of lost sales." *Apple v. Samsung Elecs. Co. ("Apple I")*, 678 F.3d 1314, 1324 (Fed. Cir. 2012).  "The patentee must rather show that the infringing feature drives consumer demand for the accused product."  2012 WL 4820601, at *3.  Evidence that the patent drives demand will "establish that the harm is sufficiently related to the infringement." *Id.* at *2.  Samsung fails to rebut Apple's evidence of a causal link that far exceeds the evidence available during the preliminary injunction phase in this case or Apple II.

Samsung does not claim that the patented feature must be the primary or sole driver of demand; it instead argues that Apple failed to show the patent "is a significant driver" of consumers' choices.  (Opp. 5:6.)  Any higher standard would conflict with the Federal Circuit's distinction between "some insubstantial connection" and "a sufficient showing that that harm flows from" the infringement (2012 WL 4820601, at *3, 5), and its opinion affirming this Court's finding of irreparable harm when design was "an important driver." *Apple I*, 678 F.3d at 1328; Dkt. No. 452 at 49:11.  It would also likely be impossible given that Samsung's experts could not identify any patented feature that would be a primary driver of demand by itself.  (Hauser Decl. Ex. A at 26:8-27:2 (Wind Dep.); *id.* Ex. G at 26:7-27:13 (Erdem Dep.).)  Moreover, preliminary injunctions are an "extraordinary remedy," *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 9 (2008), while permanent injunctions are imposed after a competitor is found liable for

1  infringement.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1153-55 (Fed. Cir.

2  2011).  The contexts differ and affect the standard.

3                  **1.**       **Apple's designs drive demand for the infringing products**

4        Apple presented compelling evidence that design drives demand for smartphones.  (Mot.

5  7-8; Dkt. No. 2120-1 ¶¶ 40-52.)  It includes:  (1) an April 2011 Samsung survey finding that

6  "exterior design" was the "biggest reason" for buying infringing Galaxy S smartphones (Dkt. No.

7  2120-10 at PX185.1, .7, .11); (2) an admission that "implementation of sleek product design as

8  shown by iPhone would be what is considered by product planning and sales as the greatest

9  appealing factor" (Dkt. No. 1982-51 at PX9.2 (sealed)); (3) Samsung's repeated decisions to copy

10  Apple's highly praised designs (Mot. 7, 16-18); and (4) J.D. Power studies that twice concluded

11  that "Liked overall design/style" was the top reason "for choosing the smartphone manufacturer."

12  (Dkt. No. 1983-6 at 57-58; Dkt. Nos. 2120-11 at 51, 1982-55 at PX69.57.)  Apple also presented

13  new testimony from Samsung's head of consumer research that "appearance is an aspect of

14  choice in almost every decision" (Dkt. No. 1982-52 at 38:6-7) and similar testimony from

15  Apple's head of marketing (Dkt. No. 1985 ¶¶ 3, 11; Tr. 625:4-42:22 (Schiller)).  Multiple

16  Samsung documents admit that design is an important driver of the iPhone's success and show

17  that consumers viewed Samsung's non-infringing (pre-Galaxy S) designs as less desirable than

18  Apple's iPhone.[1]

19        This record is much stronger than last fall, when Samsung had withheld almost all of the

20  evidence cited above, and removes any ambiguity over the importance of Apple's designs.  (Dkt.

21  No. 880 at 9; Tr. 2517:3-7 (noting that PX44 "would have been highly relevant to" preliminary

22  

23  [1] Mot. 7:15-20; *see* PX36.20 (iPhone "widely hailed for its beauty"); PX36.31 (iPhone's "strong, screen-centric design has come to equal what's on trend and cool for many consumers"); PX36.32

24  ("Apple has overtaken Samsung as the most stylish brand"); Dkt. No. 2017-5 at SAMNDCA00229020 (iPhone is "delight to the eye" and "most inspired mobile handset on the

25  market"); Hung Decl. Ex. 9 at SAMNDCA00202379 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* Ex. 10 at SAMNDCA00221852 (iPhone "[s]leekness" was "key appealing

27  factor"); *id.* Ex. 11 at SAMNDCA10807326, 330 (iPhone superior to Samsung in "attractive design"); Dkt. Nos. 1982-60 to 63, 2120-12 to 13 (summarizing praise for Apple's GUI, including statement "Consumers want GUI with emotional design like iPhone has").

28

1    injunction).)  Even on that more limited record, the Court found that "product design generally is

2    at least *one factor*, and for some people may be the *primary factor*, influencing a person's

3    decision to purchase a smartphone," and concluded (as later approved by the Federal Circuit) that

4    design was "an important driver" of demand for tablets.  (Dkt. No. 452 at 34, 49.)  *See Apple I*,

5    678 F.3d at 1328 ("Apple establish[ed] the required nexus").  This record also differs in scope

6    and depth from the evidence of nexus in *Apple II*, 2012 WL 4820601, at *4-5.

7         Samsung's argument that Apple's evidence does not show a nexus to the specific patented

8    features ignores that Apple's design patents cover the iPhone's most prominent design elements,

9    including the black reflective front (D'677), the overall front shape, large screen, and distinctive

10   bezel (D'087), and the overall look of the home screen (D'305).  Samsung also ignores its own

11   consumer surveys emphasizing the importance of these design elements, such as the "[g]lossiness

12   of the iPhone's reinforced glass on the front" that "gives it a luxurious feel"; the uniform black

13   color for which consumers have a "strong preference"; and the "iPhone's metal edges," which

14   "look classy and trendy."  (Dkt. No. 2120-10 at PX185.13-.15; *see* Hung Decl. Ex. 12 at

15   SAMNDCA01716195█████████████████████████████████████

16   ████████████   Industry reviewers praised the iPhone's "shiny black face," "rimmed by mirror-finish

17   stainless steel" (PX133.1) and consumers liked that Samsung's menu screen was similar to the

18   D'305 design.  (Dkt. No. 1350-6 at 1 ("The menu looks just like the iPhone.  But I like it cause it

19   looks familiar to me"); Hung Decl. Ex. 13 ("Looks exactly like an iPhone.  Looks really nice.

20   Very sleek looking.  Rounded – good"); *id*. Ex. 14 at 84:5-85:4, 93:10-95:12 (Sang Hung Dep.)

21   (prior comments concern Galaxy S).)

22        Samsung's citation of survey questions that do not even include "design" as an option

23   (DX572.027) does not rebut overwhelming survey evidence that design is an important driver of

24   demand.  (Mot. 7-8; Dkt. Nos. 2120-10 at PX185.11, .13 (2011 Samsung Consumer Survey);

25   2120-11 at 51-52 (2009 JD Power Survey); 1982-55 at PX69.11, .57 (2011 JD Power Survey).)

26   Apple has shown that design drives demand; it does not need to show that all other factors are

27   unimportant.  That burden would be insurmountable and is inconsistent with the requirement of

28

1    "a sufficient showing that the harm flows from Samsung's" infringement.  *Apple II*, 2012 WL

2    4820601, at *5.

3         Samsung is wrong that Apple fails to practice its patents, as Apple continues to support

4    the iPhone 3GS.  (Mot. 6.)  And Samsung's cases are inapposite.  One involved a patentee that

5    never practiced the patent, *see High Tech Med. Instr. Inc. v. New Image Indus., Inc.*, 49 F.3d 1551,

6    1556 (Fed. Cir. 1995), and the other states that "equity does not require that patents be practiced,"

7    *Hynix Semiconductor Inc. v. Rambus, Inc.*, 609 F. Supp. 2d 951, 968 (N.D. Cal. 2009).

8              **2.    Apple's utility patents drive demand for the products**

9         Apple also provided compelling evidence of demand for the iOS utility patents, which

10   distinguishes this record from the prior preliminary injunction proceedings.  The patented features

11   were widely praised when the iPhone was introduced and are important elements "of the multi-

12   touch experience that makes the iPhone easy to use," which "is a key driver for demand for the

13   iPhone."[2]  The record underscores the importance of these features, explains Samsung's decision

14   to copy them, and demonstrates Samsung's purchasers' willingness to pay more for them.  (Mot.

15   8-9.)

16        Apple's conjoint survey rebuts Samsung's argument that Apple has not provided evidence

17   of demand specific to the utility patents.  The survey targets these patents and directly evaluates

18   consumer demand for the relevant features.  (Hauser Decl. ¶¶ 5-6, 9; PX30.)  Samsung's attacks

19   on the survey are baseless.  Samsung's argument that "willingness to pay" does not measure

20   consumer demand ignores that economics textbooks define demand as consumers' marginal

21   willingness to pay for a product, as even its own expert admits.  (Hauser Decl. ¶¶ 7-8 & Ex. C at

22   20:9-19, 117:5-8 (Wind Dep.).)

23        Dr. Hauser's methods are sound.  He properly surveyed purchasers of Samsung's

24   infringing products.  (*Id*. ¶ 9.)  Inclusion of "outside options," which Dr. Wind suggests, is

25   _____

26   [2] Hung Decl. Ex. 19 at 487:21-489:12, 509:13-517:8 (Schiller Dep.); *see* PX133.3, PX134.3
     (praising tap-to-zoom and pinch-to-zoom); PX135.2 (iPhone creates "whole new kind of
     interface," that gives users illusion of "stretching and shrinking photographs with their fingers");
27   PX36.10-.16, .21, .26 (praising iPhone's "magic," easy-to-use touch technology, including
     "pinch" and "bounce").

28

1  unnecessary and would introduce risk of greater bias and uncertainty.  (*Id*. ¶¶ 40-42.)  Dr.

2  Hauser's survey methods follow techniques used in actual industry applications for decades,

3  which have been validated as accurately reflecting consumer behavior.  (*Id*. ¶¶ 12-16.)  Moreover,

4  Samsung's own experts did not meet the standards it now proposes.  Dr. Wind states conjoint

5  surveys may be biased because real money is not used (Dkt. No. 2054-4 ¶¶ 68-69), but he

6  retracted this criticism in his deposition and admitted he has only done one survey in 40 years

7  using actual funds.  (Hauser Decl. ¶¶ 14-15 & Ex. C at 55:6-57:3 (Wind Dep.).)  Dr. Wind has

8  written and testified before the Library of Congress that "business and governments regularly

9  make billions of dollars of decisions based on the results of conjoint analyses," and "[t]he

10  continued and *repeated* use of conjoint analysis by industry is the best indication of its proven

11  validity."  (*See id*. ¶ 16.)  Samsung criticizes Dr. Hauser on technical grounds but Samsung's

12  conjoint survey expert, Dr. Sukumar, did not do a market reconstruction, include a "no purchase

13  option," or follow the other practices that Dr. Wind calls for.  (*Id*. ¶¶ 11, 17, 32, 34, 43.)  Dr.

14  Wind admits his report incorrectly stated that Dr. Hauser did not include non-infringing

15  alternatives in his surveys.  (*Id*. ¶ 45 & Ex. C at 80:7-81:8 (Wind Dep.).)  Dr. Wind's other

16  criticisms are not consistent with common practice (*id*. ¶¶ 11, 14, 16-17, 32-34, 43), and are based

17  on conjecture that Dr. Hauser's methods *may* bias the results, rather than any actual evidence of

18  bias (*id*. ¶ 30 & Ex. C at 27:16-23, 28:8-18 (Wind Dep.)), and *predictions* that irrational results

19  may arise, not the existence of any actual irrational choices made by the survey's respondents.

20  (*Id*. ¶¶ 19-25 & Ex. C at 88:23-89:2, 91:7:92:1, 95:22-96:2 (Wind Dep.).)

21      When coupled with Samsung's deliberate copying, Apple's survey demonstrates

22  substantial consumer demand for the patented features, whether or not the measurement reflects a

23  precise calculation of consumer's price premiums.  This record reflects Samsung's analysis of

24  consumer demand, not merely internal speculation as Samsung claims.  As a prime example,

25  Gravity Tank reported to Samsung on *consumers'* feedback that iPhone was "intuitive

26  everywhere," emphasizing "bounce" and "two fingered pinch."  (PX36.35-36; *see also* PX34.38

27  (identifying "Easy and intuitive UI" as a key iPhone "Success Factor").)  Further, McKinsey told

28  Samsung that to "win" in smartphones, it needed to "match the iPhone UI within the next 12

months," noting features such as "pinch to zoom." (Dkt. No. 1982-70 at 45; Hung Decl. Ex. 11 at SAMNDCA10807316, 332-33, 358-59, 361.) After repeated reports on the importance of the iPhone's design and features, and pressure from mobile phone carriers to "make something like the iPhone," Samsung copied Apple's design and utility patents. (PX40.2; Mot. 16-17.) The combined impact on consumer demand of such wholesale copying exceeds that of any single feature.

### 3.    Apple's trade dress supports an injunction

Samsung argues as though the "causal nexus" test applies equally to Apple's trade dress. No authority supports this claim, and the statutory regimes are different. Congress recognized that injury to the goodwill inherent in dilution is itself an irreparable harm: Following a finding of dilution, "the owner of a famous mark . . . *shall* be entitled to an injunction regardless of the presence or absence. . . of actual economic injury." 15 U.S.C. § 1125(c) (emphasis added). Samsung relies solely on three trademark *infringement* cases (Opp. 7 n.6) but § 1125(c) is unique to *dilution* claims. Apple is not avoiding the "four factor" test. The remaining three elements must still be satisfied, consistent with the principles of equity, but Congress has decided that the irreparable harm factor is satisfied by dilution of a brand.

The goodwill present in Apple's trade dress helps drive Apple's success in the market. (Mot. 6.; Dkt. No. 1985 ¶¶ 10-11, 13-14; Tr. 625-37, 659-65 (Schiller explaining importance of distinctive design to Apple and harm from Samsung's dilution).) The jury found Apple's trade dress was famous and identified products as originating from Apple. Permitting Samsung to trade on this goodwill by misappropriating and blurring Apple's brand would contravene the purpose of the Lanham Act, which protects investments in consumer goodwill. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992). Samsung's argument that Apple abandoned its trade dress in September ignores that Apple continues to support this product. (Mot. 6.) Moreover, the jury found that the iPhone 3GS trade dress has secondary meaning, tying it to Apple and its brand. No authority supports Samsung's view that, less than three months later, it can now copy that trade dress based on changes in Apple's product line.

1          **4.       The harm to Apple is irreparable**

2       Twice this Court has concluded that market share losses in the smartphone and tablet

3  markets and the effects on downstream sales and Apple's ecosystem result in harm that cannot be

4  fully compensated by damages.  (*See* Mot. 3-5.)  Twice the Federal Circuit has let these

5  conclusions stand.  *Apple I*, 678 F.3d at 1336-27; *Apple II*, 2012 WL 4820601, at *5.  Samsung

6  offers no reason to reach a different conclusion now.

7       Relying on Justice Kennedy's concurrence in *eBay*, Samsung argues that the harm is

8  insignificant because Apple's patents are only part of a complex product.  The concurrence

9  addressed a new "industry that has developed in which firms use patents not as a basis for

10  producing and selling goods but instead primarily for obtaining licensing fees."  *eBay Inc. v.*

11  *Mercexchange LLC*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring).  This case presents the

12  opposite situation:  Apple uses its patents "as a basis for producing and selling goods."  Samsung

13  infringed as part of an effort to take market share through products that used Apple's

14  differentiating technology.  Under these circumstances, earlier cases properly "establish[ed] a

15  pattern of granting an injunction against patent infringers almost as a matter of course."  *Id.*

16  Injunctions remain a vital tool to protect innovators' right to exclude even where the invention

17  covers part and not all of the product.  *Robert Bosch LLC*, 659 F.3d at 1145 (patents cover

18  "aspects of beam blade technology").  Samsung's demand for a compulsory license of Apple's

19  innovations at some undefined reasonable royalty ignores the "fundamental nature" of patents,

20  which are "property rights granting the owner the right to exclude."  *Id.* at 1149.

21       Apple considers these patents "unique to its user experience" and unavailable for

22  licensing, particularly to competitors; the few patent agreements cited by Samsung do not justify

23  denying an injunction, as they are consistent with Apple's position.  (Mot. 10.)  Microsoft's

24  agreement is limited to patents filed before 2002, and covers none of the patents in suit.  (Opp.

25  17:8.)  IBM's agreement is a cross license with a party that does not market smartphones, entered

26  into five years before the iPhone launched.  (Dkt. No. 2061 Ex. 12-2; Dkt. No. 128 ¶ 5 (sealed).)

27  The Nokia settlement includes a provisional license to resolve litigation involving only one of the

28  relevant patents (the '381).  (Dkt. No. 2061 Ex. 12-2; Dkt. No. 128 ¶ 6 (sealed).)  And Apple

1    already explained without rebuttal from any Samsung witness that the parties' 2010 discussions

2    did not include any right to copy Apple's products using these patents.  (Mot. 10.)

3            Nor do Samsung's cases support denying an injunction. One *granted* a permanent

4    injunction between competitors despite prior licenses by the patentee, *Acumed LLC v. Stryker*

5    *Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008), and the other relied on extensive prior licensing

6    arrangements of a medical device, including multiple competitors who achieved greater market

7    share than the patentee. *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, No. C95-03577-

8    DLJ, 2008 WL 4647384, at *10 (N.D. Cal. Oct. 20, 2008).

9            **5.      Samsung's alleged changes to its products do not defeat the motion**

10           Samsung argues that it has stopped or will stop infringing (Opp. 13-14), but even if that

11   were true, it is no reason to deny an injunction.  "[A]n injunction does not become moot merely

12   because the conduct complained of has terminated, if there is a possibility of recurrence, since

13   otherwise the defendants would be free to return to their old ways." *Allee v. Medrano*, 416 U.S.

14   802, 810-11 (1974).  It is at most relevant if a defendant "no longer has the capacity" to make

15   infringing products. *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed.

16   Cir. 1988).  Samsung has not shown that it cannot make infringing products, only that it may

17   *choose* not to do so. *Id.* at 1282.  But the "entire purpose of an injunction is to take away

18   defendant's discretion not to obey the law." *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F.

19   Supp. 2d 978, 984 (W.D. Tenn. 2006).[3]

20           This same principle is applied to claims of proposed "design-arounds," *Honeywell Int'l,*

21   *Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 544-45 (D. Del. 2005), and

22   injunctions under the Lanham Act, *Polo Fashions Inc. v. Dick Bruhn Inc.*, 793 F.2d 1132, 1135-

23   36 (9th Cir. 1986).  None of Samsung's cases suggest that proposed design-arounds should defeat

24

25

26   _____
     [3] Samsung again claims that it did not sell the Galaxy Ace, Galaxy i9100, and i9000 in the U.S.,
27   but the Galaxy Ace and Galaxy i9100 were available for purchase in the U.S. through
     Walmart.com and Bestbuy.com both before and after the verdict.  (Hung Decl. Exs. 1-8.)
28

a permanent injunction.[4]  The question whether a product avoids an injunction is properly left to

proceedings to enforce the injunction against whatever products Samsung actually sells in the

future.  *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1318 (Fed. Cir. 2004); *TiVo Inc. v.*

*EchoStar Corp.,* 646 F.3d 869, 881-883 (Fed. Cir. 2011) (en banc).[5]

### B.     The Balance of Equities Favors an Injunction

The equities tip decidedly in Apple's favor because Samsung is a direct competitor that

deliberately copied and willfully infringed for over two years during a critical period in the

smartphone and tablet market.  (Mot. 10-11.)  If, as Samsung claims, Apple's patents "cover

narrow features" that are insignificant drivers of demand, are easily removed, and will be

removed by the December 6 hearing (Opp. 10-11, 14), then the minor inconvenience of removing

them carries no weight.  But if, as Apple contends, Samsung has willfully copied Apple's designs

and patents to obtain a significant marketplace advantage, the equities lie with Apple.

This Court reviews Samsung's conduct and the present patents on the fully developed

record in this case, not on the incomplete record in *Apple v. Motorola*, No. 11-cv-08540, 2012

WL 2376664, at *23 (N.D. Ill June 22, 2012), where there were no liability or willfulness

findings and all testimony on economic harm was excluded under *Daubert*.

### C.     The Public Interest Favors an Injunction

Samsung's public interest argument ignores that "encouragement of investment-based risk

is the fundamental purpose of the patent grant, and is based directly on the right to exclude."

---

[4] *Hynix*, 609 F. Supp. 2d at 982 (relying on extensive prior licensing); *Nichia Corp. v. Seoul Semi. Ltd.*, No. 06-0162 MMC, 2008 WL 346416 (N.D. Cal. Feb. 7, 2008) (lack of historic sales of product); *Tivo, Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2007) (affirming injunction).

[5] Moreover, Samsung's submission fails to show that its proposed products avoid Apple's patents



1   *Sanofi-Synthelabo v. Apotex*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).  None of Samsung's cases

2   denies injunctions due to possible inconvenience to third parties or temporary delays in supplies

3   of consumer goods.  *See*, *e.g.*, *Tate Access Floors v. Interface Arch. Res. Inc.*, 132 F. Supp. 2d

4   365, 377-78 (D. Md. 2001) (capacity issues should not prevent injunction); *Belden Techs. Inc. v.*

5   *Superior Essex Commc'ns L.P.*, 802 F. Supp. 2d 555, 579 (D. Del 2011) (limiting public interest

6   evaluation to "matters of public health or safety" or public's access to "category of products").

### D.   Apple's Proposed Injunction Is Proper

8         Apple properly requested an injunction directed to products found to infringe and "other

9   products with a feature or features that are not more than colorably different from any of the

10  infringing feature or features in any of the Infringing Products."  The Federal Circuit endorses

11  injunctions against "infringement of the patent by the adjudicated devices and infringement by

12  devices not more than colorably different from the adjudicated devices," *Int'l Rectifier*, 383 F.3d

13  at 1316, and the focus is on the infringing feature of the relevant product, *Tivo*, 646 F.3d at 882.

14  Samsung's cited cases (Opp. 20:19-22) are inapposite because they did not include any similar

15  limitation.  Nor does Apple seek to extend the injunction to less than the complete inventions.

16  To avoid any confusion, however, Apple has revised its proposed injunction to refer to Infringing

17  Products and "other product not more than colorably different from an Infringing Product as to a

18  feature or design found to infringe."

## II.   THE COURT SHOULD ENHANCE THE AWARD BY $535 MILLION

### A.   The Lanham Act Authorizes a $400M Enhancement

21        Samsung remade its smartphones in the iPhone's image, building its Galaxy and successor

22  product lines and its dramatic market share gains on Apple's risky investment in the iPhone.

23  (Mot. 25-28; Dkt. No. 1982-6 at 2 (market share graph).)  Samsung does not rebut that sales of its

24  cloned phones caused long-lasting, irreversible harm to Apple, by giving Samsung a market share

25  "head start," changing consumer perceptions, and depriving Apple of sales of follow-on products

26  and services.  The jury's award of $382M does not come close to compensating Apple for the full

27  extent of this harm; a $400M enhancement under the Lanham Act is more than justified.

28

1    Samsung refuses to acknowledge the massive damage its copied phones have caused

2    Apple and focuses instead on supposed bars to enhancement.  Yet even if the Court accepts

3    Samsung's improper invitation to deconstruct the verdict (*see* Dkt. No. 2050 at 17-18), and uses

4    Samsung's calculation that the award consists only of $91,132,279 of actual damages, Apple's

5    request is warranted.  (Opp. 24.)  First, the Lanham Act authorizes treble damages, which allows

6    a $182,264,558 enhancement.  *See* 15 U.S.C. § 1117(a)(3).  Second, if an award of a defendant's

7    profits (which Samsung calculates at $290,551,283) is "inadequate," the Court may also award

8    "such sum" as it "find[s] to be just."  *Id*.  The Court could award $400 million on that basis alone.

9    Samsung does not contest that the Court can treble the damages; it merely points out that

10   35 U.S.C. § 289 does not permit "an owner of an infringed patent" to "twice recover the profit

11   made from the infringement."  That provision does not apply here, however, because Apple does

12   not seek doubling of the award Samsung characterizes as its *profits* but instead seeks a "just" sum

13   under the Lanham Act because Apple's recovery was "inadequate."  15 U.S.C. § 1117(a)(3).

14   Moreover, § 289 cannot be read to "trump[]" the Lanham Act provision that explicitly authorizes

15   enhancements if an award of defendant's profits is inadequate; instead the Court must "'regard

16   each as effective.'"  *See Nigg v. United States Postal Serv.*, 555 F.3d 781, 785-86 (9th Cir. 2009).

17   While § 289 does not authorize enhancement of a patent infringer's profits, it explicitly does not

18   "prevent, lessen, or impeach any other remedy . . . under the provisions of this title."  35 U.S.C.

19   § 289.  Samsung's cited cases hold only that a "fully compensated" plaintiff cannot recover

20   double damages for a single infringing sale, *not* that § 289 prevents enhancements under a

21   different statute.  *Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir.

22   2006); *see Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002).

23   Further, the rationale of preventing double recovery by a "fully compensated" plaintiff does not

24   apply to Lanham Act enhancements, which are awarded precisely because recovery would

25   otherwise be "inadequate."  15 U.S.C. § 1117(a)(3).  Accordingly, the Court may award more

26   than the $290,551,283 that Samsung calculates as its profits on the six trade-dress diluting phones

27   by entering judgment for a "just" sum.  *Id*.

28

1    Samsung argues about ambiguity in the award but concludes that "there in fact is no

2    ambiguity," due to its calculation of the amount of damages.  (Opp. 24-25.)  That conclusion

3    defeats Samsung's arguments because, as shown, Apple's requested enhancements are justified

4    using Samsung's calculations.  Moreover, Samsung has no basis to "blame" Apple for "any

5    ambiguity" based on Apple's objections to Samsung's various proposed verdict forms.  (Opp.

6    25.)  Samsung's last two proposed verdict forms, filed on July 23 and August 18, asked only

7    "how is the total amount of damages . . . divided" into "Lost profits, Reasonable royalty, and

8    Samsung's profits."  (Dkt. Nos. 1283 (Q22), 1825-2 (Q24).)  Adoption of those forms would not

9    have identified the statutory source for any award of Samsung's profits.  Samsung also did not

10   object to the Court's final verdict form for lack of specificity.  (Dkt. Nos. 1825, 1882; *see* Tr.

11   3853:22-3854:13 (at 8/20 hearing on Court's tentative verdict form, Samsung states it had "not

12   yet proposed a solution" to "tie products to the patent," but might "suggest something").)  By

13   failing to object, Samsung "agreed to let the court determine" whether "all damages flowed from"

14   the Lanham Act.  *E. Mountain Platform Tennis, Inc. v. Sherwin-Williams Co*., 40 F.3d 492, 501

15   (1st Cir. 1994).  Samsung's cited authority recognizes that the lack of specificity in its July 23 and

16   August 18 proposed verdict forms, and failure to object to the lack of specificity in the final form,

17   waives the type of objections Samsung now relies on.  *Arnott v. Am. Oil Co*., 609 F.2d 873, 889

18   (8th Cir. 1979).  Moreover, Samsung seeks to use the lack of specificity to invoke § 289's bar on

19   enhancement of infringer's profits, but fails to account for the statutory language indicating § 289

20   was not intended to impeach other remedies.[6]

21   Samsung's quarrels with Apple's calculations do not undermine Apple's request.  Apple's

22   expert used conservative assumptions, including halving the sales Apple would have captured had

23   Samsung's market share remained constant.  (Dkt. No. 1982-71 ¶ 28.)[7]  Samsung's contention

24

[6] None of Samsung's cases concerning general verdicts addresses statutes that state an intent to
25   preserve other remedies.  (Opp. 24.)  Its cases on clear and convincing evidence address
     willfulness, not enhancement.  *See, e.g., Shatterproof Glass Corp. v. Libbey-Owens Ford Co*.,
26   758 F.2d 613, 628 (Fed. Cir. 1985).

[7] Contrary to Samsung's arguments, Apple's expert considered the effect of carrier preference
27   and availability, capacity, non-diluting and non-infringing phones, hypothetical design-arounds,
     and the jury's damages award.  (Reply Robinson Decl. ¶¶ 7-15.)

28

that the jury may already have awarded damages on those sales misses the point, because the Lanham Act specifically allows enhancement where the recovery is inadequate.  15 U.S.C. § 1117(a)(3).  Samsung fails to rebut that Apple was undercompensated by the jury's award, including because Apple lost over $700M in profits on those sales independent of sales of downstream or follow-on products.  (Mot. 27-28.)  An enhancement of $400M (or of $217,735,442 in combination with trebled damages of $182,264,558) is plainly a "just" sum to compensate Apple for the inadequate award on the trade-dress diluting products.

### B.    The Patent Act Authorizes at Least an Additional $135M Enhancement

Samsung fails to refute Apple's showing that the Court should treble the $67,880,583 damages award for products found to infringe only utility patents (Dkt. No. 1982-71 ¶ 31).

***Willfulness/defenses.***  Samsung offers a cursory discussion of its defenses (Opp. 31:6-7, 33-34) but never addresses the myriad deficiencies in them that Apple identified.  (Mot. 12-16.)[8]

***Copying/lack of good faith***.  Apple's powerful evidence of Samsung's deliberate copying shows anything but "typical" comparative analysis or benchmarking. Samsung's cited cases base enhancement on the "totality of the circumstances," *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 592 F. Supp. 2d 727, 750 (D. Del. 2009), so all of its copying is relevant.  Samsung's earlier designs do not rebut copying, as the accused products' designers never considered those designs (but did copy Apple's).  (Dkt. Nos. 1647 at 3, 1676 at 5.)  Samsung asserts it believed Apple's patents were invalid and not infringed (Opp. 34:25-26) but fails to rebut Apple's evidence contradicting good faith (Mot. 18-21.)  Samsung claims it will stop infringing one patent before the injunction hearing (Opp. 14) but continuing infringement until the last possible minute is not good faith.  Samsung had notice of Apple's patents.  (Dkt. No. 2027 at 10-11.)

***Improper litigation tactics***.  Samsung's cursory attempts to minimize its extensive litigation misconduct are unavailing.  Although litigation sanctions may not be relevant to a jury's willful infringement finding, "the infringer's behavior as a party to the litigation" is a factor for

---

[8] Samsung's submission of the non-final initial rejection of the '381 Patent in an *ex parte* reexamination cannot overcome the jury verdict and does not undermine the willfulness claim. *See Fujitsu v. Belkin*, No. 10-cv-3972, 2012 WL 4497966, at *33-35 (N.D. Cal. Sept. 28, 2012).

1  enhancement.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).[9]  The Court

2  expressly "reserve[d] for after the trial" what "consequences may be appropriate" for Samsung's

3  counsel's propagation of excluded evidence.  (Tr. 573:11-575:24.)

4     ***Duration***.  Samsung fails to acknowledge that its infringement occurred at a crucial time.

5  Although Samsung may have released some products that designed around some patents, it has

6  continued infringing even after the verdict.

7     ***Motive/concealment***.  Samsung's cited authority holds that motive weighs in favor of

8  enhancement where, as here, an infringer is in "direct competition" with, and "specifically

9  intend[s] to take business away from the patent owner."  *Power Integrations, Inc. v. Fairchild*

10 *Semiconductor Int'l, Inc.*, 762 F. Supp. 2d 710, 724 (D. Del. 2011).  Samsung ignores the

11 evidence of concealment.  (Mot. 23.)

12    ***Amount subject to enhancement***.  Samsung mischaracterizes $57,867,383 of the jury's

13 award on the Galaxy Prevail as *Samsung's* profits, supposedly leaving only $10,013,200 of

14 damages for products found to infringe only utility patents.  (Opp. 30.)  The record establishes at

15 least $65M of *Apple's* lost profits damages on the Prevail.  (*See* Dkt. No. 2050 at 25; Tr. 2162:11-

16 2163:12 (Musika).)  Thus, the entire $67,880,583 utility-only damages award may be trebled.

17 Apple showed that the Patent Act justifies an even greater award.  (Mot. 28-29.)  Samsung

18 responds with erroneous arguments about § 289 (Opp. 26 n.20), and does not refute Apple's

19 calculations.[10]

20

21 ─────────────────
   [9] Samsung's defense of its litigation conduct relies on misstatements of cited authority.  Judge
22 Grewal did not find in Dkt. No. 898 that "Apple *failed* to show bad faith" (Opp. 32); as Apple
   showed, he stated that "'Samsung offer[ed] precisely zero evidence to show . . . good faith.'"
23 (Mot. 20.)  *Funai* did not hold that sanctions "should not be 'double counted'" (Opp. 32); it found
   the sanctioned conduct was "not so severe as to justify" an enhancement.  *Funai Elec. Co. v.*
24 *Daewoo Elec. Corp.*, 593 F. Supp. 2d 1088, 1115 (N.D. Cal. 2009)).)
   [10] Even if credited, Samsung's § 289 theory would bar enhancement only of the $290,551,283 it
25 calculates as an award of its profits on the six trade-dress diluting phones.  Its theory does not
   affect the Court's authority under 15 U.S.C. § 1117(a)(3) to treble the $91,132,279 that Samsung
26 calculates as the award of Apple's lost profits on those same phones, or its authority under 35
   U.S.C. § 284 to treble the $67,880,583 awarded for products that infringed only Apple's utility
27 patents.  Thus, using Samsung's calculations, $159,012,862 of damages is subject to trebling,
   allowing an enhancement of $318,025,724.

28

### III.   SAMSUNG'S SUBMISSIONS VIOLATE THE COURT'S ORDERS

The Court imposed strict page limits on briefing and ordered: "Any supporting documentation shall be for corroboration purposes solely and shall not be used as a vehicle for circumventing the Court's page limits." (Dkt. No. 1945 at 3.)  The Court also imposed an expert discovery schedule that closed in May 2012.  Apple accordingly filed only declarations that address and corroborate topics discussed in Apple's brief.  Thus, Mr. Musika, Mr. Winer and Mr. Schiller provide specifics regarding the types of harm and the effect of the patents in the smartphone market discussed in Apple's motion at pages 3-5 and 7-9.  And Apple's experts and the topics on which they opined were all previously disclosed.  (Ms. Robinson works with Mr. Musika at Invotex and supplied a separate declaration solely due to Mr. Musika's illness.  (Dkt. No. 1982-71 ¶ 4.))

In contrast, Samsung violates both the briefing and expert disclosure orders.  The 156 paragraphs submitted by Erdem, Wind, and Sukumar relate to only five sentences in Samsung's brief.  (Opp. 13:8-21.)  184 paragraphs from Wagner's declaration never appear in Samsung's opposition.  Four declarations (Gray, Van Dam, Rowden, and Choi) are summarized in a single line and two footnotes.  (Opp. 14:5.)  Wind and Erdem are new experts who address work disclosed by Apple in March 2012.  Samsung's violations of the Court's strict limits prejudice Apple.  The following materials (and associated exhibits) should accordingly be stricken:  Wind (all); Erdem (all); Lucente (all); Van Dam (all); Sukumar (all); Gray ¶¶ 10-49; Choi ¶¶ 11-22; and Wagner ¶¶ 15-42, 45-119, 124-145, 147-228.

Dated: November 9, 2012                MORRISON & FOERSTER LLP


                                       By:    /s/ Michael A. Jacobs
                                              Michael A. Jacobs

                                              Attorneys for Plaintiff
                                              APPLE INC.