# EXHIBIT 1

Highly Confidential - Attorneys' Eyes Only

Page 1

1        UNITED STATES DISTRICT COURT
         STATE OF CALIFORNIA SAN JOSE DIVISION
2                    - - -
3

   APPLE INC., A CALIFORNIA
4  CORPORATION,
                Plaintiff,
5
      vs.                    NO. 11-CV-01846-LHK
6
   SAMSUNG ELECTRONICS CO.,
7  LTD., A KOREAN BUSINESS
   ENTITY; SAMSUNG ELECTRONICS
8  AMERICA, INC., A NEW YORK
   CORPORATION; SAMSUNG
9  TELECOMMUNICATIONS AMERICA,
   LLC, A DELAWARE LIMITED
10 LIABILITY COMPANY,
11              Defendants.
12
13
14
         VIDEOTAPED DEPOSITION OF YORAM (JERRY) WIND
15        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
              Philadelphia, Pennsylvania
16             Wednesday, November 7, 2012
17
18
19
20
21
22
23 Reported by:
24 Maureen Broderick, RPR
25 JOB NO. 55261

Highly Confidential - Attorneys' Eyes Only

Page 2

1

2              November 7, 2012

                10:03 a.m.

3

4

5        Videotape deposition of YORAM (JERRY)

6   WIND, taken at Summit Court Reporter Incorporated,

7   1500 Walnut Street, 16th Floor Conference

8   Room, Philadelphia, Pennsylvania, before Maureen E.

9   Broderick, Registered Professional Reporter and

10  Notary Public in and of the Commonwealth of

11  Pennsylvania.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    APPEARANCES
 2    MORRISON FOERSTER
      Attorneys for Plaintiff
 3        755 Page Mill Road
          Palo Alto, CA 94304
 4
      BY:   KENNETH A. KUWAYTI, ESQUIRE
 5
 6    QUINN EMANUEL URQUHART & SULLIVAN
      Attorneys for Defendants
 7        51 Madison Avenue
          New York, NY 10010
 8
      BY:   CAREY RAMOS, ESQUIRE
 9    BY:   MICHAEL JUDE GALVIN, ESQUIRE
10
11
12    ALSO PRESENT:   Shankar Iyer, Cornerstone Research
                      Greg Gottlob, Videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Attorneys' Eyes Only

Page 24

| | | |
|---|---|---|
| 1 | And, again, you're going to try to | 10:25 |
| 2 | determine, if it's a driver or not, will be | 10:25 |
| 3 | basically, what is the relative importance of | 10:25 |
| 4 | this?  What is the relative importance compared | 10:25 |
| 5 | to the brand and the design, the look? | 10:25 |
| 6 | BY MR. KUWAYTI: | 10:25 |
| 7 | Q   So you correct me if I'm wrong, but I | 10:25 |
| 8 | think what I hear you saying is that -- well, strike | 10:25 |
| 9 | that.  Let me ask it a different way. | 10:25 |
| 10 | In the case of that BMW, we know | 10:25 |
| 11 | there are three, as I've described it, there are | 10:25 |
| 12 | three things that are leading me to purchase the | 10:25 |
| 13 | car; there is no one, sole factor that is leading me | 10:25 |
| 14 | to buy the car.  You're saying that's your typical | 10:26 |
| 15 | experience?  That's normally the case based on your | 10:26 |
| 16 | experience in the marketing field? | 10:26 |
| 17 | A    I'm sorry.  Typical experience is multiple | 10:26 |
| 18 | factors, not necessarily three. | 10:26 |
| 19 | Q    Right.  Okay. | 10:26 |
| 20 | A    You're the one that qualified the three. | 10:26 |
| 21 | I'm saying that typically in most studies, consumer | 10:26 |
| 22 | behavior is driven by multiple factors.  And the | 10:26 |
| 23 | factors are typically moving more and more towards | 10:26 |
| 24 | features, not -- I'm sorry, more and more away from | 10:26 |
| 25 | features, toward benefits, and toward total solution | 10:26 |

Page 25

1  and toward experience and away from features.                    10:26
2              Features are actually, in increasing                 10:26
3  number of studies, are becoming less and less                    10:26
4  critical factors in consumer purchases behavior.                 10:26
5  And whether you look at a combination of features,               10:26
6  services, benefits, solution, the experience, look               10:26
7  at the totality of this, consumer buying decision is             10:26
8  a combination of a number of these and rarely, if                10:27
9  ever, a factor of one factor, let alone one feature.             10:27
10     Q    So if the test for driving consumer demand              10:27
11 were whether this one factor was the sole item                   10:27
12 leading you to the -- leading a consumer to purchase             10:27
13 a product, that test would almost never be met?                  10:27
14          MR. RAMOS:  Object to the form.                         10:27
15          THE WITNESS:  I don't think I ever said                 10:27
16     that the requirement needs to be a sole                      10:27
17     determinant.                                                 10:27
18 BY MR. KUWAYTI:                                                  10:27
19     Q    Right.                                                  10:27
20     A    I think from the beginning I emphasized                 10:27
21 we're talking about relative importance.  And the                10:27
22 question then is, is the relative importance strong              10:27
23 enough, significant enough to tilt the decision?  So             10:27
24 when you're confronted with your two BMWs, the one               10:27
25 great brand, great look, superior technology, and                10:27

Highly Confidential - Attorneys' Eyes Only

Page 26

| | | |
|---|---|---|
| 1 | the second which is the same brand, the same look, | 10:27 |
| 2 | but somewhat less kind of sophisticated or less good | 10:27 |
| 3 | technology, you know, kind of -- does the difference | 10:28 |
| 4 | in technology between the two change your decision? | 10:28 |
| 5 | And you'll decide, no; now that the level of the | 10:28 |
| 6 | technology is below, it's not good enough and I will | 10:28 |
| 7 | now look at other options in the marketplace. | 10:28 |
| 8 | Q   Right.  And I think, I think I understand | 10:28 |
| 9 | what you're saying.  But if the test for whether | 10:28 |
| 10 | something were driving consumer demand is whether | 10:28 |
| 11 | that was the sole determinant of the reason to | 10:28 |
| 12 | purchase the product, that test could almost never | 10:28 |
| 13 | be met in your experience? | 10:28 |
| 14 | MR. RAMOS:  Object to the form. | 10:28 |
| 15 | THE WITNESS:  I would find it kind of | 10:28 |
| 16 | strange to find a factor that is a sole | 10:28 |
| 17 | determinant.  Perhaps with the exception I | 10:28 |
| 18 | mentioned before of a brand name, that a brand | 10:28 |
| 19 | name represents a totality of images, | 10:28 |
| 20 | associations, perceptions of a consumer of the | 10:29 |
| 21 | brand; and a consumer may decide, you know, BMW | 10:29 |
| 22 | is such a terrific brand; I will just go ahead | 10:29 |
| 23 | and buy a BMW kind of basically because, in | 10:29 |
| 24 | their mind, if you probe further, the BMW is a | 10:29 |
| 25 | very rich set of association with them.  So if | 10:29 |

Highly Confidential - Attorneys' Eyes Only

Page 27

| | | |
|---|---|---|
| 1 | you probe further for the association, you'll | 10:29 |
| 2 | find out; and one of them may be technology. | 10:29 |
| 3 | BY MR. KUWAYTI: | 10:29 |
| 4 | Q    Okay.  Did you try to do your own conjoint | 10:29 |
| 5 | analysis in this case? | 10:29 |
| 6 | A    No. | 10:29 |
| 7 | Q    Did anybody on your team try to do an | 10:29 |
| 8 | analysis or a conjoint analysis? | 10:29 |
| 9 | A    Not that I know. | 10:29 |
| 10 | Q    Are you aware of anybody on your team or | 10:29 |
| 11 | not on your team that tried to replicate all or any | 10:29 |
| 12 | part of Dr. Hauser's survey with survey respondents? | 10:29 |
| 13 | A    Not that I know. | 10:29 |
| 14 | Q    Did you consider doing another survey | 10:29 |
| 15 | to -- let me step back. | 10:29 |
| 16 | You point out in your report that, in | 10:30 |
| 17 | your opinion, there are a number of design flaws | 10:30 |
| 18 | with Dr. Hauser's survey.  Did you consider doing | 10:30 |
| 19 | another survey in revising some of those flaws to | 10:30 |
| 20 | see what would happen? | 10:30 |
| 21 | A    No.  We didn't have time.  This was very, | 10:30 |
| 22 | you know, time-compressed.  And there was no way I | 10:30 |
| 23 | could have designed a survey in this time period. | 10:30 |
| 24 | Q    About how much time would have been needed | 10:30 |
| 25 | to do that? | 10:30 |

Highly Confidential - Attorneys' Eyes Only

Page 80

| | | |
|---|---|---|
| 1 | BY MR. KUWAYTI: | 11:59 |
| 2 | Q   Do you know, Dr. Wind, whether at the time | 11:59 |
| 3 | Dr. Hauser constructed his survey these | 11:59 |
| 4 | design-arounds were in the marketplace? | 11:59 |
| 5 | A   I don't know.  I don't know the exact time | 12:00 |
| 6 | when they were lunched. | 12:00 |
| 7 | Q   So your report actually does not make | 12:00 |
| 8 | mention of the fact that Dr. Hauser presented these | 12:00 |
| 9 | non-infringing alternatives in the video animations, | 12:00 |
| 10 | does it? | 12:00 |
| 11 | A   Correct.  Might have been oversight.  I | 12:00 |
| 12 | focused primarily on what I considered to be the | 12:00 |
| 13 | most important factors, which are the screens, the | 12:00 |
| 14 | 16 stimuli screens. | 12:00 |
| 15 | Q   You didn't explain that to the Court, | 12:00 |
| 16 | that, in fact, when you say he didn't -- you say | 12:00 |
| 17 | here his non-infringing alternatives were to remove | 12:00 |
| 18 | the features from the device; you did not in your | 12:00 |
| 19 | report explain to the Court that, in fact, | 12:00 |
| 20 | non-infringing alternatives were presented for each | 12:01 |
| 21 | of the three patents in detail in video animations | 12:01 |
| 22 | to the respondents of this survey, right? | 12:01 |
| 23 | MR. RAMOS:  Object to the form. | 12:01 |
| 24 | BY MR. KUWAYTI: | 11:00 |
| 25 | Q   Yes or no? | 12:01 |

Highly Confidential - Attorneys' Eyes Only

Page 81

1   A   Correct. I did not. I did not mention                    12:01
2  it. It can easily be corrected. But, again, my                12:01
3  understanding here and my view is that the two                12:01
4  problems that were mentioned before, that the                 12:01
5  animation, we don't know how clear it was to the              12:01
6  respondent and, two, that the critical 16 screens             12:01
7  did not include any reference to alternative                  12:01
8  designs.                                                      12:01
9              (Reporter clarification.)                         12:01
10 BY MR. KUWAYTI:                                               12:01
11  Q   Yeah. And that's a different problem than                12:01
12 you what describe in your report because here we're           12:01
13 quibbling about whether Dr. Hauser needed to not              12:01
14 just show consumers a detailed animation at the               12:01
15 beginning and when he presented the 16 alternatives,          12:01
16 give them a link if they were confused and wanted to          12:01
17 go back. That's what we're arguing about, whether             12:02
18 that biased the survey, and not whether he just               12:02
19 failed to present non-infringing alternatives at              12:02
20 all.                                                          12:02
21         MR. RAMOS:  Object to form.                           12:02
22         THE WITNESS:  I lost you. I thought that              12:02
23    he did fail --                                             12:02
24 BY MR. KUWAYTI:                                               12:02
25   Q   Let's strike the question.                              12:02

Highly Confidential - Attorneys' Eyes Only

Page 82

| | | |
|---|---|---|
| 1 | A    -- that he did fail to mention the | 12:02 |
| 2 | alternative design in the 16 screens.  The | 12:02 |
| 3 | 16 screens do not mention, when people are looking | 12:02 |
| 4 | at it -- and if you think about this in term of a | 12:02 |
| 5 | typical respondent to an Internet patent all trying | 12:02 |
| 6 | to work as fast as they can to finish this, they're | 12:02 |
| 7 | focusing on the screens.  And the screens basically | 12:02 |
| 8 | did not mention the alternatives.  That's what I was | 12:02 |
| 9 | referring to.  If it's unclear, I'd be glad to | 12:02 |
| 10 | modify it to include this comment on the animation. | 12:02 |
| 11 | BY MR. KUWAYTI: | 12:02 |
| 12 |     Q    And this could have been tested, right? | 12:02 |
| 13 | Dr. Hauser presented his results in March of this | 12:02 |
| 14 | year in his report, right? | 12:02 |
| 15 |     A    I did not see his report in March.  I saw | 12:02 |
| 16 | it much later. | 12:02 |
| 17 |     Q    Right.  But Dr. Sukumar was Samsung's | 12:03 |
| 18 | expert at trial and critiqued Dr. Hauser's survey, | 12:03 |
| 19 | correct? | 12:03 |
| 20 |     A    That's my understanding. | 12:03 |
| 21 |     Q    And Samsung has had the report since March | 12:03 |
| 22 | of 2012, correct? | 12:03 |
| 23 |     A    That's my understanding. | 12:03 |
| 24 |     Q    And one way to determine, rather than sit | 12:03 |
| 25 | here and have you speculate as to whether people | 12:03 |

Highly Confidential - Attorneys' Eyes Only

Page 83

| | | |
|---|---|---|
| 1 | understood these animations or whether people were | 12:03 |
| 2 | willing to click on them and that somehow biased | 12:03 |
| 3 | things, one way we could have determined that is | 12:03 |
| 4 | somebody on the Samsung side could have replicated | 12:03 |
| 5 | Dr. Hauser's survey, but made that modification, | 12:03 |
| 6 | right? | 12:03 |
| 7 | MR. RAMOS: Object to form. | 12:03 |
| 8 | THE WITNESS: I'm not privy to Samsung | 12:03 |
| 9 | decisions what to do or not. What I can talk | 12:03 |
| 10 | about is when I got it, I got it very late. | 12:03 |
| 11 | And based on everything I know about | 12:03 |
| 12 | marketing research and consumer behavior and | 12:04 |
| 13 | respondents in Internet panels and the like is | 12:04 |
| 14 | that the main focus of the respondent most | 12:04 |
| 15 | likely would have been on the 16 screens and | 12:04 |
| 16 | not on the animation, and the animation had its | 12:04 |
| 17 | own impact, as we discussed before. | 12:04 |
| 18 | And the 16 screens are basically what I | 12:04 |
| 19 | was referring to in my report. | 12:04 |
| 20 | BY MR. KUWAYTI: | 12:04 |
| 21 | Q    Do you know how long the average | 12:04 |
| 22 | respondent took to complete the survey? | 12:04 |
| 23 | A    I recall seeing somewhere an estimate | 12:04 |
| 24 | beginning that said it would take about 25 minutes. | 12:04 |
| 25 | But I don't recall the actual time. I think it | 12:04 |

Page 146

1      C E R T I F I C A T E

2

3  COMMONWEALTH OF PENNSYLVANIA   :

4                                 :

5  COUNTY OF PHILADELPHIA         :

6

7

8              I, MAUREEN BRODERICK, Registered

9  Professional Reporter - Notary Public, within and

10 for the Commonwealth of Pennsylvania, do hereby

11 certify that the proceedings, evidence, and

12 objections noted are contained fully and accurately

13 in the notes taken by me of the preceding

14 deposition, and that this copy is a correct

15 transcript of the same.

16 DATED: 11/7/12

17

18

19

                                  _____

20

                                  MAUREEN BRODERICK

21

                                  Registered Professional

22

                                  Reporter - Notary Public

23

24

25