1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| Plaintiff, | ORDER RE: JUROR MISCONDUCT |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

On August 21, 2012, a jury returned a verdict that Samsung was liable to Apple for infringement and dilution of a range of patents and trade dresses. ECF No. 1890. Samsung has now filed a motion for a new trial. ECF No. 2013 ("Motion") at 3. Samsung alleges that the jury foreperson, Velvin Hogan, gave dishonest answers during voir dire, and that statements he made in interviews given after the verdict show that he was biased. *Id.* at 2-3. Specifically, Samsung claims that Mr. Hogan lied about his involvement nineteen years ago in a lawsuit with Seagate, a company in which Samsung is, as of 2011, a 9.6% shareholder. Samsung also argues that Mr. Hogan improperly presented extraneous prejudicial information during jury deliberations. *Id.* at 3.

For the reasons explained below, Samsung's request for an evidentiary hearing and a new trial on these grounds is DENIED.

## I.    BACKGROUND

Jury selection in this case took place on July 30, 2012.  The Court conducted extensive voir dire, and then allowed counsel for each side to question prospective jurors for an additional twenty minutes each.  Transcript of Proceedings held on July 30, 2012 ("Tr.") at 212:1-4.  The Court asked a number of questions to elicit factual information from prospective jurors about their experiences and potential relationships with the parties and the issues in the case.  The Court also repeatedly questioned jurors as to their ability and willingness to be fair and impartial, and to follow the law as it was given to them.

Initially, the Court instructed jurors to "raise your hand if you have such strong feelings about this case, the parties, what the charges and the claims are that you could not be fair and impartial." Tr. at 45:5-9.  Five prospective jurors raised their hands and were questioned further, but Mr. Hogan was not among them.  The Court then asked whether any prospective juror knew any of the parties, witnesses, or attorneys in the case.  Again, Mr. Hogan did not raise his hand. The Court then again asked prospective jurors to "raise your hand if what you have read or heard about this case would affect your ability to be fair and impartial to both sides." Tr. at 100:13-16. Mr. Hogan did not raise his hand.  The Court went on to ask "if you've basically already formed an impression in your mind about – and this is for everybody – if you've basically already formed an impression in your mind about who you think ought to win this case based on what you've read." Tr. at 100:24-101:4.  Two prospective jurors raised their hands, but Mr. Hogan did not.  The Court continued its questioning, instructing prospective jurors: "If you cannot keep an open mind and you cannot decide this case based solely on the evidence that's admitted during this trial, based on what you've read previously about this case, raise your hand." Tr. at 101:13-17.  Mr. Hogan did not raise his hand.  The Court then asked "if you have any belief or feeling towards any of the parties,

2

any of the lawyers, any of the witnesses that would make it difficult to be fair and impartial.  If so, would you raise your hand?"  Tr. at 101:24-102:3.  Mr. Hogan did not raise his hand.  The Court then asked, "does anyone else have any special interest, financial or otherwise, in the outcome of this trial?"  Tr. at 102:7-9.  Again, Mr. Hogan did not raise his hand.

The Court then moved on to the question of prospective jurors' ability to follow the law:

> Now, many of you may have your own views about what our laws should be, but I just need to ask you one more time whether you would accept the instructions on the law that I give you and not insert and substitute your own personal views of what the laws should be.  Whether you disagree or disagree with what I tell you the law is, will you accept it?  If you cannot do that, will you please raise your hand?

Tr. at 103:16-25.  Mr. Hogan did not raise his hand.

The Court then asked whether the prospective jurors had "been negatively impacted by the recent economic downturn?"  Tr. at 104:2-4.  Here, Mr. Hogan did raise his hand. He then had the following exchange with the Court:

> The Court: Let me start with Mr. Hogan.  Go ahead, please.
> Mr. Hogan: When the economy – excuse me – went south, I was trying to establish a start-up, and it went belly up and, in the course of events, I diminished all savings that I had and subsequently, through foreclosure, lost my house."
> The Court: I'm sorry to hear that.
> Mr. Hogan:  So that was a negative impact.  But in terms of anything else, I feel totally impartial to the proceedings.
> The Court: Okay.  Would you – you've seen the number of days that this trial would require, correct?
> Mr. Hogan: Yes.
> The Court: Would it be a hardship for you to serve this many days?
> Mr. Hogan: No, not at this time.
> The Court: Okay.  All right.  And nothing about your experience – I'm very sorry to hear about it – that would make you feel resentful to one of these parties here today?
> Mr. Hogan: Of course not.
> The Court: Okay. Thank you.

Tr. at 104:12-105:11.

The Court then asked prospective jurors, "[H]ave you or a family member or someone very close to you ever been involved in a lawsuit, either as a plaintiff, a defendant, or as a witness?"  Tr. at 148:18-21.  Mr. Hogan answered that "[i]n 2008, after my company went belly up, the programmer that worked for me filed a lawsuit against me and ultimately, across the next few months, it was dismissed and in such a fashion that neither one of us could sue the other one for

United States District Court
For the Northern District of California

that matter." Tr. at 148:25-149:5. The Court then elicited a few further details, before asking whether there was "anything about that experience that would affect your ability to be fair and impartial to both sides in this case?" Tr. at 148:14-16. Mr. Hogan responded, "I don't believe so." Tr. at 149:17.

After questioning another prospective juror about lawsuit experience, the Court then returned to Mr. Hogan:

> The Court: So I want to make sure that both Mr. Hogan, and [the other prospective juror], that you would apply the law as I instruct you and not based on your understanding of the law based on your own cases. Is that correct, Mr. Hogan?
>
> Mr. Hogan: Yes.

Tr. at 152:25-153:5.

There was, however, an additional lawsuit in Mr. Hogan's past that Mr. Hogan did not disclose during this exchange: Mr. Hogan was sued by his former employer, Seagate, in 1993 (*Seagate Tech., Inc. v. Hogan*, Case No. MS-93-0919 (Santa Cruz Mun. Ct. Filed June 30, 1993)). Nor did he mention that he filed for personal bankruptcy six months after being sued by Seagate (*In re Velvin R. Hogan and Carol K. Hogan*, Case No. 93-58291-MM (Bankr. N.D. Cal. Dec. 27, 1993)), which appears, at least in part, to be due to that lawsuit. RT 148:25-150:11; Estrich Decl., Exs. A, B.

Next, the Court questioned prospective jurors about their experiences with the patent system. Mr. Hogan indicated that he had a patent for video compression software, which had been issued in 2008, and a second patent application that was currently pending. Tr. at 163:19-24. After hearing about another prospective juror's patent experience, the Court then asked both of them together:

> The Court: You all have a lot of experience, but will you be able to decide this case based solely on the evidence that's admitted during the trial?
>
> Mr. Hogan: Yes.
>
> The Court: Okay. Mr. Hogan says yes.

Tr. at 165:14-18. The Court then asked the entire pool of prospective jurors, "If you have strong feelings or strong opinions about either the United States patent system or intellectual property laws, would you raise your hand, please?" No prospective jurors raised their hands.

Case No.: 11-CV-01846-LHK
ORDER RE: JUROR MISCONDUCT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The last portion of the Court's voir dire involved each prospective juror responding to a series of demographic and biographical questions about their education, profession, families, and hobbies.  When Mr. Hogan's turn came, he said: "I was in the hard drive industry for 35-plus years as an electrical engineer.  I worked for companies like Memorex, Digital Equipment Corporation to name a few, seven altogether."  Tr. at 190:19-23.  The Court then asked Mr. Hogan to list the seven companies.  He responded:

> Okay.  To begin with, I worked for a company that no longer exists called Caylis memories; then Memorex Corporation; then Storage Technology Corporation in Colorado; Digital Equipment Corporation in Colorado Springs; I worked for Seagate Technology; and the last company was – and then Micropolis Corporation, which no longer exists. And Quantum."

Tr. at 191:20-192:2.  The Court engaged in no further questioning of Mr. Hogan, and turned the questioning over to the attorneys.  Counsel for Samsung, William Price, asked Mr. Hogan several detailed questions:

> Mr. Price: Mr. Hogan, would – were you actively involved in the prosecution of your patent?  That is, obviously you had an attorney?
> Mr. Hogan: Yes.
> Mr. Price: And my understanding is yours was not for your company, but it was actually you?
> Mr. Hogan: Yes.
> Mr. Price: So how – how active were you in that process of working with the patent office?
> Mr. Hogan: We spoke almost every day until we got it penned and submitted.  Very active.
> Mr. Price: And you –
> Mr. Hogan: Even when the office actions came back, I was active in – with my attorney to settle those.
> Mr. Price: Okay.  And so you have a lot of back and forth?  Was it like a six-year period, I think?
> Mr. Hogan: From 2001 when – 2002, excuse me, until 2008 when it was actually issued.  So yes.
> Mr. Price: Okay.  Now, does that experience give you any bias for or against, for example, the patent office?
> Mr. Hogan: No, not really.  Although I will say that I was glad to hear that they opened – that they're contemplating opening up an office here in town to speed the process along.  It took me seven years to get my patent, and that seemed like a long time to wait, you know?
> Mr. Price: And did you go to D.C.?
> Mr. Hogan: No, no, no.  It was all done over the phone and through correspondence.  But seven years seemed like a long time, and the first four years of that, there was no activity from the patent office whatsoever.

5

> Mr. Price: And I wasn't exactly clear then, what was the technology that your patent was on?
> Mr. Hogan: Video compression.
> Mr. Price: That's your hobby, too.  That's your hobby, also I think you said?
> Mr. Hogan: Yes.
> Mr. Price: Anything else that you have as a hobby? No? Okay.

Tr. 228:19- 230:18.  Though this exchange included questions about Mr. Hogan's experiences with the patent system and his hobbies, Samsung's counsel expressed no concerns about Mr. Hogan's past employment at Seagate.

The basis for Samsung's present motion, however, is a relationship between Samsung and Seagate.  In April 2011, Seagate purchased Samsung's hard disk drive-manufacturing division for $1.375 billion in cash and stocks, which resulted in Samsung holding approximately 9.6% of Seagate's stock and becoming Seagate's single largest direct shareholder.  Motion at 2; ECF No. 2013, Declaration of Susan Estrich in Support of Samsung's Rules 50 and 59 Motion ("Estrich Decl."), Exh. C at 1.  Despite this relationship, counsel for Samsung did not ask Mr. Hogan about his relationship with Seagate, and did not seek to elicit any information about whether that relationship might influence Mr. Hogan's view in any way.

Samsung asserts that it learned of Mr. Hogan's lawsuit with Seagate from Mr. Hogan's bankruptcy file, which Samsung reviewed only after the trial had concluded.[1]  ECF No. 2022, Supplemental Declaration of Michael T. Zeller in Support of Samsung's Rules 50 and 59 Motion ("Zeller Decl.") at ¶ 5.  Though Samsung learned of the bankruptcy through its own research on July 30, 2012, the day of voir dire, *see id.*, Samsung did not request the bankruptcy file, which mentions Mr. Hogan's litigation with Seagate, until September 4, 2012, five days after the verdict in Apple's favor.  *Id.* ¶¶ 4-5, 9.  Samsung received the bankruptcy file on September 10, 2012, and discovered the lawsuit.  *Id.* ¶ 5.  Samsung also learned on September 12, 2012, that the lawyer who filed the Seagate lawsuit against Mr. Hogan is the husband of a partner in the law firm of Quinn Emanuel.  *Id.* ¶ 10.  Although Quinn Emanuel represents Samsung in the present case, the partner was not a part of the trial team, nor has she worked on any part of this litigation.  *Id.*

---

[1] Samsung filed a motion to compel Apple to disclose when and how Apple learned of the Seagate lawsuit.  ECF No. 2108.  As Apple voluntarily filed such a disclosure on November 30, 2012, ECF No. 2176, Samsung's motion to compel is DENIED as moot.

Case No.: 11-CV-01846-LHK
ORDER RE: JUROR MISCONDUCT

United States District Court
For the Northern District of California

In post-verdict interviews, Mr. Hogan made several comments on the case and his involvement as the jury foreperson.  He stated that he "expected to be dismissed from the jury because of [his] experience," but was "very grateful to have been part of this case."  Estrich Decl., Ex. H. at 2.  He also said, "[e]xcept for my family, it was the high spot of my career.  You might even say my life."  *Id.*, Ex. I at 1.  Mr. Hogan was pleased that he was selected for the jury "because [he] wanted to be satisfied from [his] own perspective that this trial was fair, and protected copyrights and intellectual property rights, no matter who they belonged to."  *Id.*  In other interviews, he disclosed that "[t]he jury 'wanted to send a message to the industry at large that patent infringing is not the right thing to do, not just Samsung,'" and that the "message [they] sent was not just a slap on the wrist."  *Id.*, Exs. J at 1, K at 1.

In addition to these sentiments, Mr. Hogan also commented on the deliberation process itself, and what legal tests he and the other jurors applied during that process.  He explained, among other things, his view that whether design patents infringe depends on the "look and feel" of the device, and that a prior art reference is not invalidating unless it is "interchangeable."  *Id.*, Exhs. L at 2-3, N at 2.

Samsung now argues that this Court should hold a hearing with all jurors to fully examine Mr. Hogan's conduct during voir dire and jury deliberations.  Motion at 3.  Samsung contends that a new trial is warranted based on Mr. Hogan's conduct because it shows that he was a biased juror who lied in order to obtain a seat on the jury, and that he inappropriately introduced extraneous prejudicial information to jury deliberations.  *Id.* at 2.

Apple opposes Samsung's request for an evidentiary hearing.  ECF No. 2050, Apple's Opposition to Samsung's Rules 50 and 59 Motion ("Opposition") at 4.  Apple argues that Samsung waived its right to object to Mr. Hogan's alleged dishonesty during voir dire by gambling on a favorable verdict despite having the opportunity to investigate the matter, and only raising the issue after an unfavorable verdict.  *Id.* at 1-2.  Apple also argues that statements made by Mr. Hogan in post-verdict interviews regarding the allegedly "incorrect and erroneous standards" applied during jury deliberations and cited by Samsung are barred by Federal Rule of Evidence 606(b), and thus cannot form the basis for a new trial.  Opposition at 3-4.

7

1

2

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     DISCUSSION

Samsung's argument is based on two contentions.  First, Samsung claims that Mr. Hogan's bias should be presumed because he deliberately concealed his lawsuit with Seagate during voir dire when he gave an incomplete answer to the Court's question about prior lawsuits.  Samsung alleges that this lie was motivated by a desire to secure a seat on the jury.  Motion at 2.  Second, Samsung argues that Mr. Hogan improperly introduced incorrect and erroneous standards during the jury deliberation process.  *Id.* at 3.

### A.  Waiver

Samsung has waived its claim for an evidentiary hearing and a new trial based on Mr. Hogan's alleged dishonesty during voir dire.  Prior to the verdict, Samsung could have discovered Mr. Hogan's litigation with Seagate, had Samsung acted with reasonable diligence based on information Samsung acquired through voir dire, namely that Mr. Hogan stated during voir dire that he had worked for Seagate.

#### 1.  Legal Standard

The right to challenge the partiality of a jury verdict based on a juror's alleged misconduct during voir dire may be waived.  *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 at 551 n. 2 ("It is not clear . . .whether the information stated in Greenwood's affidavit [about the juror] was known to respondents or their counsel at the time of the voir dire examination.  If it were, of course, respondents would be barred from later challenging the composition of the jury when they had chosen not to interrogate [the] juror … further upon receiving an answer which they thought to be factually incorrect." (citing *Johnson v. Hill*, 274 F.2d 110, 115-16 (8th Cir. 1960))); *see also City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 459 (4th Cir. 1990) ("If the right to challenge a juror is waived by failure to object at the time the jury is empanelled if the bases for objection might have been discovered during voir dire, such a right surely is waived if the basis could have been discovered before voir dire.") (citation and internal quotation marks omitted).

The Supreme Court recently reiterated that constitutional rights can be waived, even in complex cases:

8

1

2

3

4

5

> We have recognized "the value of waiver and forfeiture rules" in "complex" cases, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487-88, n.6 (2008), and this case is no exception.  In such cases, as here, the consequences of "a litigant … 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor," *Puckett v. United States*, 556 U.S. 129, [134] (2009) (some internal quotation marks omitted)—can be particularly severe. . . . Pierce repeatedly stated to the Bankruptcy Court that he was happy to litigate there.  We will not consider his claim to the contrary, now that he is sad.

6

*Stern v. Marshall*, 131 S.Ct. 2594, 2608 (2011).

7

8

9

10

11

12

13

14

15

        The waiver doctrine as explicated in *McDonough* and *Stern* reflects courts' disfavor of litigants who fail to act on information in their possession only to claim later that such information resulted in a violation of their rights.  For example, in *United States v. Brazelton*, 557 F.3d 750, 755 (7th Cir. 2009), counsel for the defendant did not challenge for cause a juror who was the second cousin to the victim of a shooting by the defendant, which led to the defendant's arrest on the drug and weapons charges for which he was on trial.  On appeal, the defendant argued that he was denied his right to an impartial jury, which he claimed was not waivable.  The Seventh Circuit disagreed:

16

17

18

19

20

21

> In this circuit, there is no ambiguity on the question whether the right to an impartial jury can be waived.  We have held that "[t]he Sixth Amendment right to an impartial jury, like any constitutional right, may be waived."  *United States v. Zarnes*, 33 F.3d 1454, 1472 (7th Cir. 1994); *accord United States v. Joshi*, 896 F.2d 1303, 1307 (11th Cir. 1990).  Brazelton's on-the-record decision to pass up not one, but two opportunities to ask that Juror Number Four be struck for cause was a waiver.  If a defendant is allowed to twice forego challenges for-cause to a biased juror and then allowed to have the conviction reversed on appeal because of that juror's service, that would be equivalent to allowing the defendant to "plant an error and grow a risk-free trial."  *United States v. Boyd*, 86 F.3d 719, 722-23 (7th Cir. 1996).

22

*Brazelton*, 557 F.3d at 755.

23

24

25

26

27

28

        The discussion in *United States v. Bolinger*, 837 F.2d 436, 438-39 (11th Cir. 1988), is similarly instructive.  In *Bolinger*, on a weekend break in the middle of jury deliberations, an attorney for the defense learned from a relative of a juror's neighbor that the juror had purportedly formed a view of the defendant's guilt prior to the close of evidence.  The jury did not return a verdict until three days later.  Rather than inform the court of what he had learned, defense counsel

9

filed a post-verdict motion for a new trial based on the juror's bias and purported misconduct.  The

Eleventh Circuit upheld the district court's denial of the new trial motion, explaining:

> Our cases teach that "a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct." *United States v. Jones*, 597 F.2d 485, [488] n.3 (5th Cir. 1979).  In *Jones*, the court explained that a motion for new trial based on juror misconduct is a form of new trial motion for newly discovered evidence.  *Id.* at 488.  As such, the motion must be supported by proof that the evidence of misconduct was not discovered until after the verdict was returned.  In the particular context of juror misconduct, this rule serves to ensure that the trial court is given every available opportunity to attempt to salvage the trial by ridding the jury of prejudicial influences.  Thus, where the defendant or defense counsel knows of juror misconduct or bias before the verdict is returned but fails to share this knowledge with the court until after the verdict is announced, the misconduct may not be raised as a ground for a new trial.  *Id.*; *see also United States v. Edwards*, 696 F.2d 1277, 1282 (11th Cir. 1983) (no abuse of discretion in refusing to interrogate jury about alleged juror misconduct where defendant waited to hear the verdict before contesting jury's impartiality); *United States v. Dean*, 667 F.2d 729, 732-34 (8th Cir. 1982) (en banc) (untimely notification of juror misconduct waives right to new trial even where actual prejudice can be shown).

*Bolinger*, 837 F.2d at 438-39 (footnote and subsequent history omitted).

Further, actual knowledge of misconduct is not required.  Ultimately, parties waive their

right to challenge the jury's impartiality if they are aware of the evidence giving rise to the motion

for a new trial or fail to exercise reasonable diligence in discovering that evidence.  *See Bolinger*,

837 F.2d at 439 ("Although the June 10 telephone call did not disclose the full extent of [the

juror's] misconduct, enough information was relayed that counsel should have contacted the

district court for instructions while counsel continued his investigation. . . . [The defendant's]

decision to gamble on the jury rather than inform the court of the problem in time to allow the

court to determine if corrective action was possible prior to verdict is fatal to his claims regarding

juror Hunter.").

To be sure, actual knowledge of facts establishing juror bias is an absolute bar to any

challenge to that juror after a verdict.  *McDonough*, 464 U.S. at 551 n.2.  But a litigant cannot

consciously avoid learning the truth in the hope the jury verdict will be in his favor.  *See Johnson*,

274 F.2d at 115-16.  In *Johnson*, a decision on which the Supreme Court relied in *McDonough*, the Eighth Circuit explained:

> The right to challenge the panel or to challenge a particular juror may be waived, and in fact is waived by failure to seasonably object.  It is established that failure to object at the time the jury is empanelled operates as a conclusive waiver if the basis of the objection is known *or might have been known or discovered through the exercise of reasonable diligence*, or if the party is otherwise chargeable with knowledge of the ground of the objection.

274 F.2d at 115-16 (quoting *Batsell v. United States*, 217 F.2d 257, 260 (8th Cir. 1954)) (emphasis added, internal citations omitted); *see also Gray v. Hutto*, 648 F.2d 210, 212 (4th Cir. 1981) ("In short, however strong Gray's case for a mistrial might have been had the court been immediately notified, counsel's deliberate inaction amounted to a conscious decision to find out what the jury was going to do."); *Burden v. CSX Transp., Inc.*, No. 08-CV-04-DRH, 2001 WL 3793664, at *8-9 (S.D. Ill. Aug. 30, 2011) ("The Court agrees because all the information about Juror Nos. 2 and 9 submitted by defendant was found in public documents, primarily by internet searches, consistent with *McDonough*, *Johnson*, and *Stanczak* [*v. Penn. RR Co.*, 174 F.2d 43, 48-49 (7th Cir. 1949)] the Court finds that defendant waived its present objections because the basis of the objections might have been known or discovered through the exercise of reasonable diligence.  Defendant gambled with the possibility of a verdict and now raises questions it might have raised earlier.").

The facts of *Johnson* are also illustrative.  In a personal injury case arising from a multi-car accident, prospective jurors were asked whether they or their family members were involved in accidents of any kind.  Juror Harry Strege answered "no" to those questions, when in fact his son had been in a car accident, and Strege had acted as a guardian ad litem in a property damage claim arising from the accident.  In affirming the district court's rejection of the motion for a new trial, the Eighth Circuit noted that defense counsel, having "information from two sources that an individual by the name of 'Harry' or 'Harris' Strege had been involved in a property damage suit in Richland County … was possessed of information which was sufficient to put him on notice as to the prior Strege incident."  *Johnson*, 274 F.2d at 116.  Defense counsel "made no request of the court for a further interrogation."  *Id.*  The *Johnson* court further noted that the trial spanned a

11

1    week, "which certainly afforded counsel ample time and opportunity to apprise the court of his

2    knowledge with respect to juror Strege." *Id*.

3        As *Johnson* and subsequent cases make clear, litigants and their counsel must act with

4    reasonable diligence based on information about juror misconduct in their possession, or they will

5    be deemed to have waived their right to challenge the verdict based on that juror misconduct.

6    Delay is of special concern where it appears that a party may have been taking a calculated risk that

7    the concealed information would turn out to work in that party's favor.

8            **2.   Lack of Reasonable Diligence**

9        Samsung asserts that Mr. Hogan's dishonesty during voir dire "prejudicial[ly] impair[ed]

10   [its] right to the exercise of peremptory challenge."  Motion at 2 (internal quotations and citations

11   omitted).  Apple argues, and the Court agrees, that waiver is appropriate here because of

12   Samsung's lack of reasonable diligence in investigating Mr. Hogan's relationship with Seagate.

13   Opposition at 1-2.

14       As an initial matter, it is not clear whether Mr. Hogan was intentionally dishonest.  Neither

15   party has conclusively shown whether Mr. Hogan intentionally concealed his lawsuit with Seagate,

16   or whether he merely forgot to mention it when asked by the Court whether he was ever involved

17   in a lawsuit, or whether he believed that the answer he gave had sufficiently responded to the

18   Court's question.  Further, it is not even clear that Mr. Hogan knew of any relationship between

19   Seagate and Samsung.  Mr. Hogan left Seagate's employment in 1993, and his lawsuit against

20   Seagate was nearly two decades ago.  Further, as detailed above, Mr. Hogan repeatedly stated that

21   he had no bias toward either party, and could be a fair and impartial juror.  However, because the

22   Court finds that Samsung waived its right to object to Mr. Hogan's answer even if it was dishonest,

23   no evidentiary hearing or factual finding regarding Mr. Hogan's state of mind during that portion

24   of voir dire is required.

25       Samsung argues that the issue can be raised now because the Seagate lawsuit was not

26   discovered until after the verdict.  ECF No. 2131, Samsung's Reply in Support of Rules 50 and 59

27   Motion ("Reply") at 4.  Samsung further contends that it was post-verdict events which brought to

28   light the potential for bias, and thus the basis for Samsung's investigation did not exist before the

Case No.: 11-CV-01846-LHK
ORDER RE: JUROR MISCONDUCT

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    verdict. *Id.*  However, the record shows that Samsung had the chance to investigate the matter on

2    its own or pursue further questioning in voir dire.

3          First, Samsung admits that it knew about Mr. Hogan's bankruptcy on the day of jury

4    selection on July 30, 2012.  Zeller Decl. ¶ 9.  According to Samsung, it took a week after making

5    the request to obtain Mr. Hogan's bankruptcy file, and Samsung discovered his lawsuit with

6    Seagate in Mr. Hogan's bankruptcy file on the same day Samsung received the file.  *Id.* ¶¶ 4-5.

7    Had Samsung requested the bankruptcy file on July 30, 2012 and received it one week later,

8    Samsung would have had nearly three weeks to look over the file, discover the potential bias, and

9    alert the Court before the jury reached a verdict on August 24, 2012.  Thus, Samsung certainly had

10   the *ability* to learn about the Seagate lawsuit before the verdict.

11         Instead, Samsung contends that it had no *reason* to investigate until after the verdict.

12   Samsung argues that it learned facts giving rise to its suspicions only after the verdict, when Mr.

13   Hogan made "public statements after the verdicts that so clearly favored Apple that the press

14   speculated about their possible financial ties."[2]  Reply at 4.  However, the statements cited by

15   Samsung (Motion at 3) neither show that Mr. Hogan favored Apple nor show that he was being

16   deceitful in voir dire.  The statements Mr. Hogan made after the verdict only reveal his gratitude

17   for being part of what he considered a "landmark decision."  Estrich Decl., Ex. I at 1.  When Mr.

18   Hogan commented on the damages the jury ultimately found in favor of Apple, he specifically

19   stated that the "message" was "to the industry at large" and "not just Samsung."  *Id.*, Ex. J at 1.

20   This is consistent with Mr. Hogan's repeated confirmation during voir dire that he did not have any

21   bias toward either party, and could be fair and impartial.  There was also nothing in the post-verdict

22   statements on which Samsung relies that referred to Seagate, bankruptcy, lawsuits, or any other

23   information Mr. Hogan allegedly concealed.[3]  Thus, Mr. Hogan's comments cannot serve to trigger

24   Samsung's investigation obligations.

25   _____

[2] As discussed below, many of Mr. Hogan's post-verdict statements revealing his sentiments about
26   the case are barred by Federal Rule of Evidence 606(b).  *See United States v. Pimentel*, 654 F.2d
     538, 542 (9th Cir. 1981) ("Testimony of a juror concerning the motives of individual jurors and
27   conduct during deliberation is not admissible").
[3] When Mr. Hogan *did* discuss his voir dire answers in the press, it was after Samsung had done its
28   investigation and filed its motion, and thus cannot justify undertaking the investigation to begin

13

United States District Court
For the Northern District of California

1   Samsung, instead, had all the information it needed to uncover Mr. Hogan's lawsuit against

2   Seagate – the fact of the bankruptcy and the fact that Mr. Hogan had a relationship with Seagate –

3   on the day of jury selection, nearly four weeks before the verdict was reached.  Samsung cannot

4   use post-verdict statements unrelated to any potential bias to restart the clock on its obligation to

5   investigate.  What changed between Samsung's initial decision not to pursue questioning or

6   investigation of Mr. Hogan, and Samsung's later decision to investigate was simple: the jury found

7   against Samsung, and made a very large damages award.  This is precisely the situation that courts

8   have consistently found constitutes a waiver of the juror misconduct claim.

9   Second, despite learning through the Court's initial questioning that Mr. Hogan had once

10  been employed by Seagate, Samsung's counsel failed to ask any follow-up questions regarding that

11  relationship.  Tr. at 191:24-25.  After learning that Mr. Hogan had worked for Seagate, Samsung's

12  counsel was given twenty minutes to ask the prospective jurors any additional questions.  But as

13  explained above, Samsung's counsel questioned Mr. Hogan only about his patents and his hobbies,

14  and did not take the opportunity to delve into the nature of his relationship with Seagate.

15  Samsung's entire bias theory is premised on the relationship between Samsung and

16  Seagate.  If Samsung believes that its relationship with Seagate is close enough that feelings toward

17  Seagate could bias a juror one way or the other toward Samsung, counsel should have pursued the

18  subject during voir dire.  Questioning Mr. Hogan about the nature and valence of that relationship

19  also could have led him to reveal his lawsuit with Seagate.  The record does not suggest that

20  Samsung's counsel was running out of time and unable to ask Mr. Hogan about his employment

21  with Seagate.  Rather, by not asking Mr. Hogan about his relationship with Seagate, or further

22  investigating that relationship, Samsung either conceded that the relationship was too remote to

23  give rise to a serious claim of bias, or took a calculated risk.  If Mr. Hogan had a positive

24  relationship with Seagate, then Samsung might have stood to benefit by having Mr. Hogan on the

25  jury.  Now that an unfavorable verdict is in, Samsung cannot cry foul on grounds that bias ran the

26  other way.  *See Stern*, 131 S.Ct. at 2608 (find waiver where litigant was "sandbagging the court—

27  with.  *See* Reply at 2 (citing interview given on September 25, 2012).  Samsung's motion was filed
28  on September 21, 2012.  ECF No. 1990-3.

14

Case No.: 11-CV-01846-LHK
ORDER RE: JUROR MISCONDUCT

1    remaining silent about his objection and belatedly raising the error only if the case does not

2    conclude in his favor" (internal quotations and citation omitted)); *Bolinger*, 837 F.2d at 438 ("[A]

3    defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by

4    remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially

5    influenced by that misconduct." (internal quotations and citation omitted)).

6         "It is established that failure to object at the time the jury is empaneled operates as a

7    conclusive waiver if the basis of the objection is known [or] might have been known or discovered

8    through the exercise of reasonable diligence, or if the party is otherwise chargeable with

9    knowledge of the ground of the objection." *Johnson*, 274 F.2d at 116.  Samsung could have

10   uncovered the Seagate lawsuit, or at least Mr. Hogan's feelings regarding Seagate, had it exercised

11   reasonable diligence in questioning Mr. Hogan during its allotted time in voir dire.  Moreover, even

12   without asking Mr. Hogan directly, Samsung could have exercised reasonable diligence outside of

13   trial and could have discovered the lawsuit by requesting the bankruptcy file, exactly as Samsung

14   did later, when it became motivated to do so.  Samsung had twenty-five days between jury

15   selection and when the verdict was reached to investigate the matter and inform the Court.

16   Because Samsung failed to exercise reasonable diligence, Samsung's argument pertaining to Mr.

17   Hogan's dishonesty is waived.[4]  Samsung's request for an evidentiary hearing or a new trial on this

18   ground is DENIED.

19        **B.  Extraneous Prejudicial Information**

20        Samsung argues that an evidentiary hearing and a new trial are also warranted based on Mr.

21   Hogan's post-verdict interviews, which show that he introduced "incorrect and extraneous legal

---

[4] Samsung also suggests that possible bias can be shown from the fact that the lawyer who filed the
Seagate lawsuit against Mr. Hogan in 1993 was a Quinn Emanuel partner's husband.  Motion at 2.
Given that counsel for Samsung – themselves Quinn Emanuel lawyers – did not even know about
this relationship until weeks after the trial, it is implausible to suppose that Mr. Hogan would know
a Quinn Emanuel lawyer who is not working on the Apple v. Samsung case, and know that that
lawyer is married to a lawyer who represented Seagate nineteen years ago.  Samsung does not
provide this as a separate ground for holding an evidentiary hearing or having a new trial.  *See id.*
at 2-3.  In any event, because Samsung's probing of the Seagate relationship could have uncovered
any potential bias against Samsung because of Mr. Hogan's relationship with Seagate or with
Seagate's counsel, the Court's finding that Samsung waived its right to object to Mr. Hogan's
allegedly dishonest answer also results in Samsung's waiver of juror bias claims based on the
Seagate lawyer's marriage.

Case No.: 11-CV-01846-LHK
ORDER RE: JUROR MISCONDUCT

United States District Court
For the Northern District of California

standards" to jury deliberations.  Motion at 3.  These statements, however, are barred by Federal Rule of Evidence 606(b).

### 1.  Legal Standard

"[T]he law presumes that jurors carefully follow the instructions given to them."  *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1023 (9th Cir. 2000).  The Supreme Court has explained that this is a "crucial assumption underlying [the] system."  *Parker v. Randolph*, 442 U.S. 62, 73 (1979), *abrogated on other grounds by Cruz v. New York*, 481 U.S. 186 (1987).  Thus, courts do not disturb jury verdicts because of allegations that the jury may not have fully understood the judge's instructions.

This rule is given effect in part through evidentiary rules protecting the deliberative process. "The near-universal and firmly established common law rule in the United States flatly prohibited the admission of juror testimony to impeach a verdict."  *Tanner v. United States*, 483 U.S. 107, 107 (1987); *McDonald v. Pless*, 238 U.S. 264, 267 (1915) ("[T]he weight of authority is that a juror cannot impeach his own verdict.").  Federal Rule of Evidence 606(b) is an embodiment of this longstanding policy, strongly disfavoring the admission of juror testimony to impeach a verdict.  It states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).

Rule 606(b) applies not only to testimony, but any statement made by a juror after the verdict has been reached.  *See Hard v. Burlington N. R. Co.* (*Hard II*), 870 F.2d 1454, 1461 (9th Cir. 1989).  When such evidence is submitted, the Court must review the statements under the same standard as would be applied were the statement spoken live, in court.  *Id.*

1    In deciding whether an evidentiary hearing will be required to determine the necessity of

2    retrial, the Court must consider only that portion of the affidavit or testimony which would be

3    admissible under Rule 606(b).  *Hard II*, 870 F.2d at 1461.  To that end, the Court "may not

4    consider jurors' testimony addressing the jury's deliberative process unless the testimony 'bear[s]

5    on extraneous influences on the deliberation.'"  *Harrison v. Gillespie*, 640 F.3d 888, 896 n.4 (9th

6    Cir. 2011) (quoting *United States v. Pimentel*, 654 F.2d 538, 542 (9th Cir. 1981)).

7    The question then becomes what constitutes an extraneous influence.  A "juror's personal

8    knowledge constitutes extraneous prejudicial information where the juror has personal knowledge

9    regarding the parties or issues involved in the litigation."  *Hard v. Burlington N. R.R.* (*Hard I*), 812

10   F.2d 482, 486 (9th Cir. 1987).  Jurors are expected to bring their own personal experiences with

11   them into the courtroom, and may generally rely on their personal knowledge or past experiences

12   when hearing the evidence, deliberating, and deciding their verdict so long as they do not have

13   knowledge related to the specific case they are deciding.  *Id.*

14   However,  "[a]fter a verdict is returned a juror will not be heard to impeach the verdict

15   when his testimony concerns his misunderstanding of the court's instructions," even where a juror

16   would be able to "testify, objectively, of incidents tending to indicate that other jurors may have

17   misunderstood the court's instructions on the elements of the offense," as "the inquiry would still

18   concern the mental processes by which the jurors reached their decision and would therefore be

19   barred by the nonimpeachment rule."  *United States v. Stacey*, 475 F.2d 1119, 1121 (9th Cir. 1973).

20   Thus, a juror's understanding of the Court's instructions is not considered extraneous prejudicial

21   information, and the Court cannot receive testimony on how the jurors understood or followed

22   instructions.  To do so would be to undermine the "crucial assumption" necessary for the

23   functioning of our jury system.  *Parker*, 442 U.S. at 73.

24   Should there be any portion of a juror's statement to the court which *is* eligible for

25   consideration, the court must then determine whether the information contained in the juror's

26   admissible statement is sufficient to justify an evidentiary hearing.  "An evidentiary hearing is

27   justified only when these materials are sufficient on their face to require setting aside the verdict.

28   Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a

17

preponderance of the evidence that the outcome would have been different.  Unless the affidavits on their face support this conclusion, no evidentiary hearing is required.  Unless such a showing is made at the evidentiary hearing, no new trial is required."  *Hard*, 870 F.2d at 1461.

### 2.   Mr. Hogan's Post-Verdict Statements Do Not Suggest Extraneous Prejudicial Information, and Are Therefore Barred by Federal Rule of Evidence 606(b)

Samsung argues that Mr. Hogan's post-verdict interviews show that he introduced "incorrect and erroneous legal standards" pertaining to infringement and invalidity issues.  Motion at 3.  Mr. Hogan gave several post-verdict interviews in which he recounted the legal standards that were utilized during deliberations to enable the jury to reach a verdict.  *See* Estrich Decl., Exs. L, M, N, O.  These statements, however, all pertain to what occurred during jury deliberations, or to the jurors' mental processes – evidence specifically barred by Rule 606(b).  Samsung does not argue that Mr. Hogan introduced any outside knowledge specific to the facts of this case.  Even if the standards related by Mr. Hogan were completely erroneous, those statements would still be barred by Federal Rule of Evidence 606(b) and cannot be considered in deciding whether to hold an evidentiary hearing.  *Stacey*, 475 F.2d at 1121 ("After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions"); *Hard II*, 870 F.2d at 1461 (court must decide whether to hold hearing "[l]ooking only at affidavits and testimony admissible under Rule 606(b)").

Further, Mr. Hogan agreed several times that he would do his best to follow the law as it was given to him:

> The Court:  So I want to make sure that both Mr. Hogan, and [another prospective juror], that you would apply the law as I instruct you and not based on your understanding of the law based on your own cases.  Is that correct, Mr. Hogan?
>
> Mr. Hogan: Yes.

Tr. at 152:25-153:5.

> The Court: You all have a lot of experience, but will you be able to decide this case based solely on the evidence that's admitted during the trial?
> Mr. Hogan: Yes.
> The Court: Okay.  Mr. Hogan says yes.

Tr. at 165:14-18.

18

United States District Court
For the Northern District of California

1    The judicial system can ask no more of jurors, who are brought into the case through no

2    initiative of their own and who devote their time as a matter of civic duty, than that they do their

3    best to apply the law as they are instructed.  Moreover, at the hearing on post-trial motions,

4    Samsung repeatedly praised the jury, noting the care, precision, and consistency with which the

5    jury calculated damages based on trial damages evidence.  Samsung also praised the jury for ruling

6    for Samsung on Apple's breach of contract and antitrust claims.  Samsung cannot credibly claim

7    that the jury's conduct was simultaneously worthy of such great praise and so biased as to warrant

8    a new trial.

9    Samsung cites several cases in support of its argument that Mr. Hogan's statements show

10   that extraneous prejudicial information was improperly brought to the jury's attention, and thus the

11   statements should not be barred.  Motion at 3.  None of these cases establishes that Mr. Hogan's

12   statements concerned extraneous prejudicial information.  The Court will address each case in turn.

13   In *Hard I*, the Ninth Circuit ruled that the district court should have held an evidentiary

14   hearing after it received jurors' testimonies revealing that another juror had talked about the

15   defendant's prior settlement practices during deliberations.  *Id.*, 812 F.2d at 485-86.  In other

16   words, that juror has specific knowledge about one of the parties, and shared it with fellow jurors.

17   Similarly, in *United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984), the court held that a new

18   trial was warranted based on prejudicial extrinsic evidence where one of the jurors had personal

19   knowledge of the facts of the case and told other jurors during deliberation.  *Id.*, 748 F.2d at 1534.

20   Here, Mr. Hogan had no "personal knowledge regarding the parties or issues involved in the

21   litigation."  *Hard I*, 812 F.2d at 486.  Instead, the knowledge he is alleged to have introduced

22   concerned only the general principles of the patent system.  Thus, these two cases are inapposite.

23   In *Gibson v. Clanon*, 633 F.2d 851 (9th Cir. 1981), jurors improperly consulted medical

24   encyclopedias on their own during deliberations.  *Id.* at 851-55.  The court found that to be

25   extrinsic evidence that could have affected the verdict and therefore granted the petitioner federal

26   habeas relief.  *Id.* at 855.  Samsung does not suggest that Mr. Hogan improperly consulted another

27   source during jury deliberations, nor that he introduced any factual material whatsoever.  Thus,

28

19

1    nothing about *Gibson* establishes that any of Mr. Hogan's statements, which concern legal

2    standards, constitute extraneous prejudicial information.

3        Finally, in *Casanas v. Yates*, No. 08–02991 CW, 2010 WL 3987333 (N.D. Cal. Oct. 12,

4    2010), a juror, surprised to find that his personal conduct could have constituted the same offense

5    for which the defendant was being tried, discussed his personal experience in voir dire to question

6    the wisdom of the law.  *Id.*, 2010 WL 3987333 at *6.  The court found that this was a proper

7    ground to dismiss the juror for cause before a verdict was reached.  *Id.*  Because the statements in

8    *Casanas* were made before a verdict was reached, it was not subject to the same Rule 606(b) bar

9    that is relevant here.

10        In sum, the integrity of the jury system and the Federal Rules of Evidence demand that the

11    Court not consider Mr. Hogan's post-verdict statements concerning the jury's decision-making

12    process.  None of the cases Samsung cites suggests otherwise.  Because the Court cannot consider

13    these inadmissible statements in determining whether to hold an evidentiary hearing, there is no

14    evidence properly before the Court to require such a hearing.  Instead, the Court must apply the

15    well established presumption that the jury followed the law.  *See Caudle*, 224 F.3d at 1023.

16    **III.**      **CONCLUSION**

17        For the reasons explained above, Samsung's arguments concerning Mr. Hogan's connection

18    to Seagate are waived.  The Court cannot consider Samsung's evidence concerning the standards

19    applied during jury's deliberations because that evidence is barred by Federal Rule of Evidence

20    606(b).  Accordingly, Samsung's motion for a new trial is DENIED.

21    **IT IS SO ORDERED.**

22    Dated: December 17, 2012

23                            LUCY H. KOH

24                            United States District Judge

25

26

27

28