1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA        )   C-11-01846 LHK
6  CORPORATION,                    )
                                   )   SAN JOSE, CALIFORNIA
7               PLAINTIFF,         )
                                   )   DECEMBER 6, 2012
8          VS.                     )
                                   )   PAGES 1-138
9  SAMSUNG ELECTRONICS CO., LTD.,  )
   A KOREAN BUSINESS ENTITY;       )
10 SAMSUNG ELECTRONICS AMERICA,    )
   INC., A NEW YORK CORPORATION;   )
11 SAMSUNG TELECOMMUNICATIONS      )
   AMERICA, LLC, A DELAWARE        )
12 LIMITED LIABILITY COMPANY,      )
                                   )
13              DEFENDANTS.        )
   _____ )
14                                 )
                                   )
15

16          TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22

23 OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25

```
 1        A P P E A R A N C E S:

 2
          FOR PLAINTIFF          MORRISON & FOERSTER
 3        APPLE:                 BY:  HAROLD J. MCELHINNY
                                      MICHAEL A. JACOBS
 4                               425 MARKET STREET
                                 SAN FRANCISCO, CALIFORNIA  94105
 5

 6        FOR COUNTERCLAIMANT    WILMER, CUTLER, PICKERING,
          APPLE:                 HALE AND DORR
 7                               BY:  WILLIAM F. LEE
                                 60 STATE STREET
 8                               BOSTON, MASSACHUSETTS  02109

 9                               BY:  MARK D. SELWYN
                                 950 PAGE MILL ROAD
10                               PALO ALTO, CALIFORNIA  94304

11

12        FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                                 OLIVER & HEDGES
13                               BY:  CHARLES K. VERHOEVEN
                                 50 CALIFORNIA STREET, 22ND FLOOR
14                               SAN FRANCISCO, CALIFORNIA  94111

15                               BY:  KATHLEEN M. SULLIVAN
                                 51 MADISON AVENUE, 22ND FLOOR
16                               NEW YORK, NEW YORK  10022

17                               BY:  JOHN B. QUINN
                                      MICHAEL T. ZELLER
18                                    WILLIAM C. PRICE
                                 865 SOUTH FIGUEROA STREET
19                               10TH FLOOR
                                 LOS ANGELES, CALIFORNIA  90017
20
                                 BY:  VICTORIA F. MAROULIS
21                               555 TWIN DOLPHIN DRIVE
                                 SUITE 560
22                               REDWOOD SHORES, CALIFORNIA  94065

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    DECEMBER 6, 2012

 2                    P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5              THE CLERK:  CALLING CASE NUMBER C-11-01846 LHK,

 6    APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANIES,

 7    LIMITED, ET AL.

 8              MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.  ON

 9    BEHALF OF APPLE, HAROLD MCELHINNY AND MICHAEL JACOBS ON BEHALF

10    OF APPLE AS THE PLAINTIFF.

11              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE AND

12    MARK SELWYN FOR APPLE FROM WILMER HALE.

13              MR. VERHOEVEN:  GOOD AFTERNOON, YOUR HONOR.

14    CHARLES VERHOEVEN, JOHN QUINN, KATHLEEN SULLIVAN,

15    VICTORIA MAROULIS, MR. PRICE, AND MR. ZELLER ON BEHALF OF

16    DEFENDANT SAMSUNG.

17              THE COURT:  OKAY.  GOOD AFTERNOON TO EVERYONE.

18        I HAVE QUITE A NUMBER OF QUESTIONS BECAUSE THERE ARE SO

19    MANY ISSUES AND THEY'RE QUITE COMPLEX.

20        IF WE HAVE TIME AT THE END, I'LL GIVE YOU A FEW MINUTES TO

21    MAKE WHATEVER PRESENTATION YOU'D LIKE TO MAKE, BUT I'D LIKE TO

22    JUST SORT OF, IF YOU DON'T MIND, JUST GO THROUGH THE QUESTIONS

23    THAT I HAVE ON VARIOUS ISSUES.

24        I'M ALSO PLANNING -- ORIGINALLY I HAD WANTED TO DO ONE

25    OMNIBUS ORDER ON EVERYTHING, BUT I THINK THERE ARE TOO MANY
```

```
1    MOTIONS AND TOO MANY ISSUES THAT IT MAY SLOW DOWN THE WHOLE

2    PROCESS, SO I'M ACTUALLY PLANNING TO ISSUE ORDERS IN

3    INSTALLMENTS, AND THEY'LL BE MORE ORGANIZED BY SUBJECT MATTER

4    THAN THEY WILL BY THE SPECIFIC TYPE OF MOTION IT WAS IN BECAUSE

5    THERE ARE SO MANY ISSUES THAT ARE ACTUALLY BRIEFED IN MULTIPLE

6    MOTIONS.  SO I JUST WANTED TO GIVE YOU A HEADS-UP ON WHAT'S

7    LIKELY TO HAPPEN.

8         I GUESS ON APPEAL YOU'LL HAVE TO ASK FOR CONSOLIDATION

9    BECAUSE IT'LL COME OUT IN QUITE A FEW DIFFERENT ORDERS.

10        ACTUALLY, I'M ALSO IN A PATENT TRIAL RIGHT NOW WHICH

11   STARTED ON NOVEMBER 26TH AND WILL GO TO THE JURY ON

12   DECEMBER 17TH, SO I WILL NOT BE ABLE TO GET YOU ALL YOUR ORDERS

13   THIS MONTH, BUT I WILL TRY TO DO AS MANY AS I CAN, BUT

14   UNDERSTAND THAT MOST OF THIS MONTH IS GOING TO BE TAKEN UP WITH

15   THAT OTHER PATENT TRIAL.

16        OKAY.  SO I'D LIKE TO -- WHY DON'T WE JUST START WITH THE

17   '163 UTILITY PATENT?  I'M GOING TO GIVE APPLE JUST A FEW

18   MINUTES TO EXPLAIN WHY THIS PATENT IS NOT INDEFINITE.  I WILL

19   TELL YOU, I -- I FIND SAMSUNG'S ARGUMENT ON THIS PATENT

20   PERSUASIVE, SO I'LL GIVE YOU JUST A FEW MINUTES, PLEASE.

21             MR. JACOBS:  GOOD AFTERNOON, YOUR HONOR.

22             THE COURT:  GOOD AFTERNOON.

23             MR. JACOBS:  THE LEGAL STANDARD IS VERY HIGH.  I'M

24   SURE THE COURT IS AWARE OF THE DECISIONAL LAW IN THE AREA OF

25   INDEFINITENESS.  INSOLUBLY AMBIGUOUS IS THE STANDARD BY CLEAR
```

1    AND CONVINCING EVIDENCE.

2         THERE IS VERY LITTLE EVIDENCE ON AMBIGUITY.  THERE IS

3    EVIDENCE THAT THE DEFENDANT WAS ABLE TO -- THE DEFENDANT'S

4    EXPERT WAS ABLE TO TESTIFY AS TO WHETHER THE ACCUSED PRODUCTS,

5    IN FACT, SUBSTANTIALLY CENTERED AFTER TAPPING, AND THAT

6    EVIDENCE IS BEFORE THE COURT IN THE PAPERS.

7         HE WENT ON TO SAY, "BY THE WAY, I DON'T KNOW WHAT

8    SUBSTANTIALLY CENTERED MEANS," BUT HE WAS ABLE TO SAY, "YES, I

9    WAS SEE SUBSTANTIALLY CENTERING."

10        SO WE HAVE A RECORD OF NO ONE ATTEMPTING, CERTAINLY NOT

11   SAMSUNG, ATTEMPTING TO CONSTRUE "SUBSTANTIALLY CENTERED."  SO

12   WE DON'T HAVE AN EFFORT TO CONSTRUE AND A FAILURE OF

13   CONSTRUCTION, WHICH, UNDER A STANDARD OF INSOLUBLY AMBIGUOUS,

14   ONE WOULD THINK ONE WOULD HAVE TO GO THROUGH IN ORDER TO REACH

15   THE CONCLUSION OF INSOLUBILITY.

16        THE COURT:  BUT IN THE CASE LAW IN OTHER EXAMPLES,

17   AREN'T SORT OF OBJECTIVE CRITERIA THAT WOULD DEFINE A MUSHY

18   TERM, FOR LACK OF A BETTER WORD, THEY'RE ACTUALLY IN THE

19   PATENT.  THERE ARE SOME, YOU KNOW, BRIGHT LINE EITHER

20   MEASUREMENTS OR LIMITATIONS THAT YOU CAN POINT TO.  IT DOESN'T

21   REQUIRE A COURT, DOWN THE ROAD, TO CONSTRUE THAT TERM, THAT IT

22   WOULD BE EVIDENT FROM THE PATENT ITSELF.

23        MR. JACOBS:  AND SO WE'RE DEALING HERE WITH A CLAIM

24   TO SOMETHING THAT'S HAPPENING VISUALLY, AND THE EYE OBSERVES

25   WHAT IS SUBSTANTIALLY CENTERED.

1          WHAT SAMSUNG SEEMS TO BE URGING IS A REQUIREMENT THAT WITH

2     RESPECT TO A GOOEY TYPE OF PATENT IN WHICH THE ACTION IS

3     SUBSTANTIALLY CENTERED, IT MUST -- THE CLAIM MUST SAY PRECISELY

4     WHAT THE BOUNDARIES OF CENTERING ARE, AND THERE IS NO SUCH

5     REQUIREMENT.

6          MOREOVER, THE SPECIFICATION DOES GIVE US DIRECTION ON WHAT

7     "SUBSTANTIALLY CENTERED" MEANS.

8          MR. LEE, IF I COULD HAVE FIGURE 5C?

9          SO IN 5C, ACCORDING TO THE SPECIFICATION, BLOCK 5, WHICH

10    IN 5A WAS JUST A SMALL BLOCK AND NOT IN ANY CENTERING POSITION,

11    HAS BEEN SUBSTANTIALLY CENTERED.  THE SPECIFICATION

12    SPECIFICALLY SAYS THAT.

13         AND AS WE NOTED IN OUR BRIEF, IT'S NOT DEAD-ON CENTER

14    BECAUSE YOU CAN SEE QUITE READILY THAT IT'S A LITTLE MOVED OVER

15    TO THE RIGHT AS AGAINST THE SCREEN DIMENSION, AND IF YOU

16    ACTUALLY HOLD UP A MEASURING ITEM TO IT, YOU CAN SEE THAT IT IS

17    PULLED DOWN FROM THE EXACT CENTRAL POSITION.

18         MOREOVER, THE SPECIFICATION -- I THINK THIS IS IMPORTANT

19    AGAINST THE FEDERAL CIRCUIT CASE LAW, INCLUDING A CASE THAT

20    CAME DOWN JUST THE OTHER DAY IN WHICH THE QUESTION WAS, IS

21    THERE SOMETHING -- IS THERE SOMETHING AGAINST WHICH YOU CAN SEE

22    THERE IS NO -- THAT THE ITEM IS NOT SUBSTANTIALLY CENTERED?

23         AND THE SPECIFICATION GOES ON TO SAY, AS TO BLOCK 4 AND 6,

24    THAT THEY COULD YET BE SUBSTANTIALLY CENTERED IF YOU WERE TO

25    TAP ON THEM, INDICATING THAT BLOCK 4 AND BLOCK 6 ARE NOT

1       SUBSTANTIALLY CENTERED.

2            SO IN THE SPECIFICATION WE HAVE A BLOCK THAT IS

3       SUBSTANTIALLY CENTERED AND WE HAVE TWO BLOCKS THAT ARE NOT

4       SUBSTANTIALLY CENTERED.

5            HAD WE GONE THROUGH THE CONSTRUCTION EXERCISE, MAYBE THAT

6       WOULD HAVE BEEN THE BASIS FOR THE CONSTRUCTION.  IT WOULD HAVE

7       BEEN AS ILLUSTRATED BY BLOCK 5 AND AS ILLUSTRATED BY BLOCK 4

8       AND BLOCK 6 NOT BEING SUBSTANTIALLY CENTERED IN FIGURE 5C, AND

9       THAT WOULD HAVE GIVEN THE JURY DIRECTION AS SUBSTANTIAL

10      CENTERING.

11           INTERESTINGLY, SAMSUNG HASN'T SAID THIS IS ALL RANDOM.

12      THEY'VE SAID THAT IN THE ABSTRACT, THIS TERM IS INDEFINITE.

13           AND THAT BRINGS US BACK TO THE FEDERAL CIRCUIT CASE LAW.

14      IT'S VERY HARD TO FIND A TERM INDEFINITE UNDER MODERN FEDERAL

15      CIRCUIT CASE LAW.

16             THE COURT:  OKAY.  LET ME ASK, IF I DON'T AGREE WITH

17      YOU AND I FIND IT INDEFINITE, THEN WHAT AM I SUPPOSED TO DO

18      WITH EXHIBIT 4G, THE TAB, TAB 10.1, REPLENISH, AND PREVAIL,

19      WHICH WERE FOUND TO INFRINGE THE '163, AS WELL AS ONE OR TWO

20      OTHER APPLE UTILITY PATENTS?  WHAT AM I SUPPOSED TO DO WITH

21      DAMAGES?  DO WE NEED ANOTHER TRIAL ON DAMAGES?

22           OR IF I ISSUED AN ORDER SAYING IT'S INDEFINITE AND WAS NOT

23      ABLE TO MAKE A NEW DAMAGES DETERMINATION, THAT SHOULD JUST GO

24      UP TO THE FEDERAL CIRCUIT FIRST?  IS THAT AN INTERLOCUTORY

25      ORDER?  IS IT DIRECTLY APPEALABLE?

```
 1          TELL ME JUST -- WHAT ARE THE NEXT STEPS?

 2              MR. JACOBS:  WELL, I THINK THE NEXT STEP WOULD BE

 3      YOUR HONOR WOULD DETERMINE WHETHER, IN LIGHT OF THE RECORD AS A

 4      WHOLE, THE DAMAGES AWARDS CAN BE SUSTAINED NOTWITHSTANDING THAT

 5      DETERMINATION.

 6              THE COURT:  UM-HUM.

 7              MR. JACOBS:  YOU MIGHT ASK FOR BRIEFING ON THAT

 8      POINT SO THAT WE COULD MAKE OUR CASE TO YOU THAT THAT IS THE

 9      CASE.

10          I BELIEVE THE RECORD WOULD SUSTAIN THAT, THAT -- THAT THE

11      RECORD WILL SUSTAIN THE VERDICT BECAUSE THE -- THIS IS A

12      MULTI-LAYERED VERDICT IN WHICH THERE ARE A LOT OF DAMAGES, AND

13      DAMAGES THAT FLOW FROM VARIOUS FORMS OF INFRINGEMENT.

14          SO I THINK THE BURDEN WILL BE ON THE OTHER SIDE TO SHOW

15      HOW IT'S IMPOSSIBLE FOR THE VERDICT TO BE SUSTAINED IN LIGHT OF

16      THAT.

17              THE COURT:  SO WHAT DO YOU THINK?  IT'S A NEW TRIAL

18      ON DAMAGES ON THOSE PRODUCTS?  OR WHAT'S THE --

19              MR. JACOBS:  I THINK THE ANSWER IS THE VERDICT --

20      YOU DON'T EVEN REACH THAT UNLESS YOU DECIDE THAT THE VERDICT

21      CAN'T BE SUSTAINED EVEN IN LIGHT OF THAT FINDING.

22              THE COURT:  BUT WOULDN'T THAT BE A WINDFALL TO APPLE

23      THEN IF THE JURY AWARDED DAMAGES ASSUMING TWO OR THREE UTILITY

24      PATENTS WERE INFRINGED AND IT TURNS OUT ONLY ONE OR TWO WERE?

25          HOW COULD I -- I'M NOT CLEAR ON HOW COULD I FIND THAT --
```

```
1       THAT THAT DAMAGES AWARD STILL STANDS.

2              MR. JACOBS:  I THINK WHAT WE WOULD URGE, YOUR HONOR,

3       IN THAT CIRCUMSTANCE IS THAT WE BRIEF TO YOU WHAT EXACTLY THE

4       RESULT IS UNDER THAT SCENARIO AND WHAT OUR OPTIONS ARE UNDER

5       THAT SCENARIO.  I THINK WE'D WANT TO LOOK AT WHETHER WE CAN

6       TAKE UP AN INDEFINITENESS RULING LIKE THAT.  WE'D WANT TO LOOK

7       AT IT AGAINST THE TOUGH FEDERAL CIRCUIT STANDARD --

8              THE COURT:  UM-HUM.

9              MR. JACOBS:  -- BEFORE WE GO BACK AND TRY DAMAGES.

10             THE COURT:  WELL, I GUESS THE PROBLEM IS SINCE THE

11      JURY VERDICT WAS BY PRODUCT AND NOT BY I.P., WE DON'T HAVE ANY

12      APPORTIONMENT AMONGST THE DIFFERENT UTILITY PATENTS OF HOW MUCH

13      EACH ONE WOULD BE WORTH.

14             MR. JACOBS:  WE DO --

15             THE COURT:  SO --

16             MR. JACOBS:  THE VERDICT FORM DOES NOT INCLUDE THAT

17      LEVEL OF DETAIL, THAT'S CORRECT.

18             THE COURT:  OKAY.  LET ME HEAR FROM SAMSUNG.

19         IF -- IF THE '163 WERE FOUND TO BE INDEFINITE, WHAT IS THE

20      NEXT STEP?  WHAT HAPPENS NEXT?

21             MR. VERHOEVEN:  I THINK THERE WOULD HAVE TO BE A NEW

22      TRIAL ON DAMAGES BECAUSE WE HAD -- AS YOU MAY RECALL, YOUR

23      HONOR -- AND I WASN'T HERE ARGUING, SOME OF MY COLLEAGUES WERE

24      ARGUING ABOUT THIS I'VE BEEN INFORMED -- WE HAD ASKED IN THE

25      JURY VERDICT FORM FOR MUCH MORE SPECIFICITY IN DAMAGES.
```

```
 1          APPLE SUCCESSFULLY CONVINCED THE COURT NOT TO HAVE THAT

 2     SPECIFICITY, SO NOW WE HAVE A SITUATION LIKE THIS WHERE YOU

 3     CAN'T SEPARATE OUT WHAT -- IF, FOR EXAMPLE, THE '163, CLAIM 50

 4     IS HELD INDEFINITE, THE ONLY FAIR REMEDY TO SAMSUNG IS TO HAVE

 5     A NEW TRIAL ON DAMAGES.

 6               THE COURT:  NOW, WOULD THE ORDER -- IF THERE WERE AN

 7     ORDER FINDING INDEFINITENESS ON THIS PATENT, WOULD THAT BE

 8     INTERLOCUTORY, SO I WOULD HAVE TO CERTIFY IT FOR APPEAL?  OR

 9     WOULD ALL OF THIS JUST GO UP TOGETHER?  OR HOW WOULD THAT WORK?

10               MR. VERHOEVEN:  UM -- I'M TRYING TO ANSWER THIS OFF

11     THE TOP OF MY HEAD, YOUR HONOR.  MS. SULLIVAN IS ALSO HERE.

12          I THINK IT MIGHT BE DISCRETIONARY, BUT I'D HAVE TO LOOK AT

13     IT.

14               THE COURT:  ALL RIGHT.

15               MR. VERHOEVEN:  I DON'T WANT TO GIVE YOU

16     MISINFORMATION, YOUR HONOR.

17               THE COURT:  SURE.  THAT'S FINE.  I KNOW THIS IS SORT

18     OF MAYBE COMING OUT OF THE BLUE.

19          GO AHEAD, PLEASE.

20               MS. SULLIVAN:  GOOD AFTERNOON, YOUR HONOR.

21          JUST TO ANSWER THAT QUESTION, YOU COULD CERTIFY FOR

22     INTERLOCUTORY APPEAL, BUT WE'LL BE PRESENTING A GREAT MANY

23     OTHER REASONS WHY YOU SHOULD HOLD A NEW TRIAL ON DAMAGES.

24          SO WITH RESPECT, WE THINK THIS MIGHT BE SUBSUMED BY THAT

25     AND THAT WOULD BE THE MORE EFFICIENT ROUTE RATHER THAN HAVING A
```

```
 1        PIECEMEAL APPEAL ON INDEFINITENESS.

 2               MR. MCELHINNY:  MAY I BE HEARD JUST ON THIS ISSUE

 3        REAL BRIEFLY, YOUR HONOR?

 4               THE COURT:  PLEASE, GO AHEAD.

 5               MR. MCELHINNY:  WE HAD BRIEFED THIS IN THE CONCEPT

 6        OF DAMAGES, AND I WANT TO BE CLEAR --

 7               THE COURT:  AND WE ARE GOING TO GET TO DAMAGES.

 8               MR. MCELHINNY:  BUT I JUST -- THE NINTH CIRCUIT DOES

 9        NOT APPLY -- THERE'S -- WHAT WE'RE TALKING ABOUT IS THE

10        APPLICATION OF THE BALDWIN RULE, WHICH IS IF YOU HAVE AN

11        AGGREGATED VERDICT AND ONE OF THE LEGAL THEORIES UNDERNEATH

12        THAT IS, IS FOUND NOT TO SUSTAIN IT, WHAT IS THE EFFECT OF

13        THAT?

14            AND THE ANSWER IS IN THE NINTH CIRCUIT, WHOSE LAW COVERS

15        HERE, THE NINTH CIRCUIT APPLIES A HARMLESS ERROR TEST.  IT

16        INSTRUCTS THE TRIAL JUDGE TO UPHOLD THE AGGRAVATED -- THE

17        AGGREGATED VERDICT.

18            OUR VIEW IS THAT THE VERDICT IS THE ANSWER TO 22, THAT THE

19        VERDICT, THE JURY'S VERDICT WAS THE ENTIRE AGGREGATED NUMBER ON

20        WHICH THEY GAVE YOU DETAIL TO MAKE SURE THAT IT WAS RATIONAL,

21        BUT THAT THE BINDING VERDICT NUMBER IS 22 AND THAT'S AN

22        AGGREGATED VERDICT.

23            ON EACH OF THESE ITEMS THAT YOU'RE TALKING ABOUT, EVEN IF

24        YOU FIND THE '163 INDEFINITE, THEY WERE HELD TO, TO INFRINGE

25        OTHER PATENTS AND SO THAT'S WHAT BRINGS IN THE NINTH CIRCUIT'S
```

1    APPLICATION OF THE BALDWIN RULE IN WHICH THE NINTH CIRCUIT

2    APPLIES -- AND THE KEY CASE HERE IS A CASE CALLED DEL MONTE

3    DUNES VERSUS THE CITY OF MONTEREY IN WHICH THE JURY FOUND IN

4    FAVOR OF THE PLAINTIFF ON TWO DIFFERENT CAUSES, A FEDERAL AND

5    STATE CAUSE, AWARDED ONE SET OF DAMAGES.

6         THE DISTRICT COURT DETERMINED THAT THE -- OR THE FEDERAL

7    CIRCUIT DETERMINED THAT THE FEDERAL CLAIM COULDN'T STAND, BUT

8    BECAUSE -- UNDER ALL OF THE EVIDENCE THAT WOULD BE LOOKED AT TO

9    SUSTAIN A VERDICT, THEY DETERMINED THAT THE EVIDENCE WAS

10   SUFFICIENT TO SUSTAIN THAT VERDICT UNDER THE STATE LAW CLAIM

11   ALONE.

12        SO OUR POSITION IS WHAT -- UNDER THIS DUTY OF ATTEMPTING

13   TO SUSTAIN A GENERAL VERDICT, WHAT YOU WOULD DO IF YOU

14   DETERMINE THAT THE '163 WAS INVALID, WHICH OBVIOUSLY WE DON'T

15   THINK IT IS, BUT IF YOU COME TO THAT CONCLUSION, YOU THEN LOOK

16   AT THE ENTIRE EVIDENCE IN THE RECORD IN ORDER TO DETERMINE

17   WHETHER OR NOT THE AGGREGATED NUMBER IS SUSTAINED BY THE CLAIMS

18   THAT YOU WILL UPHOLD.

19        AND OBVIOUSLY IN THIS CASE WHERE WE WERE AWARDED, YOU

20   KNOW, LESS THAN HALF OF WHAT WE ASKED FOR, WHERE YOU HAVE

21   MULTIPLE VIOLATIONS OF CLAIMS, WE DON'T THINK THAT THIS VERDICT

22   NUMBER TURNS ON ANY ONE PARTICULAR PATENT OR I.P. RIGHT.

23        THAT'S -- THAT'S OUR POSITION --

24             THE COURT:  UM-HUM.

25             MR. MCELHINNY:  -- THAT WE HAVE BRIEFED FOR YOU IN

```
1     THE JMOL ON DAMAGES ABOUT HOW TO DEAL WITH THIS.  WHAT DO YOU

2     DO?  DO YOU HAVE TO THROW OUT THE ENTIRE VERDICT --

3             THE COURT:  UM-HUM.

4             MR. MCELHINNY:  -- IF ONE PART -- WHEN MULTIPLE

5     CLAIMS WERE TURNED IN AND YOU DISAGREE WITH ONE OF THEM, DO YOU

6     HAVE TO THROW OUT THE ENTIRE VERDICT?

7        AND IN THE NINTH CIRCUIT THE ANSWER IS BASICALLY IT'S A

8     HARMLESS ERROR TEST, WITH AN ADMONITION TO THE TRIAL JUDGE TO

9     UPHOLD THE VERDICT WHENEVER IT'S POSSIBLE.

10            MR. VERHOEVEN:  MAY I ADDRESS THAT BRIEFLY, YOUR

11    HONOR?

12            THE COURT:  GO AHEAD, PLEASE.

13            MR. VERHOEVEN:  WE'RE TALKING ABOUT PATENT DAMAGES.

14    THIS IS GETTING APPEALED TO THE NINTH CIRCUIT AND THE NINTH

15    CIRCUIT WILL APPLY FEDERAL CIRCUIT -- OR EXCUSE ME -- THE

16    FEDERAL CIRCUIT, AND THE FEDERAL CIRCUIT WILL APPLY FEDERAL

17    CIRCUIT LAW ON PATENT DAMAGES, NOT NINTH CIRCUIT LAW, NUMBER

18    ONE.

19       WE CITED, IN FOOTNOTE 16 OF OUR JMOL, THE VERIZON SERVICES

20    CORP. VERSUS VONAGE HOLDINGS CORP. CASE, 503 F.3D 1295, PIN

21    CITE 1310, FED CIRCUIT 2007 FOR THE PROPOSITION THAT A

22    VERDICT'S FAILURE TO SEPARATE EACH DAMAGES AMOUNT BY PATENT OR

23    TRADE DRESS WILL MANDATE A NEW TRIAL ON DAMAGES.

24       THIS IS NOT A SITUATION WHERE WE HAVE A FEDERAL CAUSE OF

25    ACTION AND A STATE CAUSE OF ACTION THAT COVERS THE SAME
```

```
1    CONDUCT.  WE'RE TALKING ABOUT TWO -- WE'RE TALKING ABOUT

2    MULTIPLE DIFFERENT PATENT CAUSES OF ACTION THAT ARE FEDERAL,

3    GOVERNED BY THE FEDERAL CIRCUIT, AND THE FEDERAL CIRCUIT LAW IS

4    VERY CLEAR THAT IN THIS SITUATION, IT MANDATES A NEW TRIAL ON

5    DAMAGES.

6              THE COURT:  OKAY.  BUT LET ME ASK YOU, DOES THAT

7    HAVE TO BE ON ALL DAMAGES?  OR JUST THE ONES THAT ARE FOUND TO

8    APPEAR TO CONTAIN ERRORS?  BECAUSE THIS, THIS JURY WAS FAIRLY

9    PRECISE AND SOMEWHAT CONSISTENT IN HOW THEY -- THEY APPEARED

10   TO, AT LEAST, APPEAR TO HAVE BEEN PRECISE AND SOMEWHAT

11   CONSISTENT IN HOW THEY AWARDED DAMAGES.

12             MR. VERHOEVEN:  THERE'S MANY CAUSES OF ACTION.  IF

13   YOU'RE TALKING ABOUT UTILITY PATENTS, IF YOU'VE GOT OVERLAPPING

14   UTILITY PATENTS AND ONE AMOUNT AND A COURT SAYS, "WELL, ONE OF

15   THOSE PATENTS IS INVALID OR NOT INFRINGED" OR WHATEVER AFTER

16   THE VERDICT, "UNDER THIS LAW, YOU HAVE TO HAVE A NEW TRIAL ON

17   DAMAGES ON EVERYTHING."

18        I DON'T KNOW IF THAT ANSWERS YOUR QUESTION OR NOT.

19             THE COURT:  OKAY.  AND NOT JUST THE ONES THAT WOULD

20   BE IMPLICATED?  YOU KNOW, FOR EXAMPLE, THERE ARE NUMEROUS

21   PRODUCTS THAT WERE NOT FOUND TO HAVE INFRINGED THE '163.

22             MR. VERHOEVEN:  UM-HUM.

23             THE COURT:  SO IF I DON'T FIND -- IF I FIND THE '163

24   INDEFINITE, WHY DO I HAVE TO RETRY EVERYTHING IF THERE AREN'T

25   OTHER ERRORS IN THE AWARD FOR THOSE PRODUCTS?  DOES THAT MAKE
```

```
 1      SENSE?

 2              MR. VERHOEVEN:  I'M TRYING TO FOLLOW, YOUR HONOR.

 3          BUT I THINK THE POINT IS, JUST LIKE YOU SAID, WE DON'T

 4      KNOW IF THE CUMULATIVE EFFECT OF THE JURY FINDING THREE

 5      DIFFERENT PATENTS AFFECTED THEIR JUDGMENT --

 6              THE COURT:  UM-HUM.

 7              MR. VERHOEVEN:  -- AND WHAT THEY SHOULD AWARD.

 8      THERE'S A BUNCH OF DIFFERENT FACTORS THAT GO INTO THE DAMAGES

 9      CALCULATION UNDER GEORGIA-PACIFIC AND WHATNOT, AND WE WOULD

10      INTERPRET THE LAW TO REQUIRE A NEW TRIAL ON ALL OF THOSE

11      UTILITY PATENTS.

12              THE COURT:  OKAY.  LET'S GO --

13              MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  JUST ONE

14      FACTUAL -- JUST --

15              THE COURT:  YEAH, GO AHEAD, PLEASE.

16              MR. MCELHINNY:  WE BELIEVE THE LAW, AND WE'VE CITED

17      CASES FOR IT, THAT THE FEDERAL CIRCUIT WILL APPLY NINTH CIRCUIT

18      LAW ON THIS QUESTION OF HOW TO PRESERVE A VERDICT.  IT'S A

19      MATTER OF GENERAL APPEARANCE IN THE -- AND THE FEDERAL CIRCUIT

20      DOES THAT.

21          IN THE VERIZON CASE, WHICH MR. VERHOEVEN JUST CITED, WHEN

22      YOU READ THE CASE -- YOU PROBABLY HAVE ALREADY -- BUT WHAT YOU

23      WILL SEE IS THEY DID NOT REVERSE THE GENERAL VERDICT.  THEY

24      SENT IT BACK TO THE DISTRICT COURT TO DO THE KIND OF HARMLESS

25      ERROR EVALUATIONS -- IT WASN'T A NINTH CIRCUIT CASE, BUT THEY
```

1    SENT IT BACK TO THE DISTRICT COURT FOR AN EVALUATION OF WHETHER

2    OR NOT THE ENTIRE VERDICT HAD TO BE SET ASIDE.

3              MR. JACOBS:  AND, YOUR HONOR, THAT NEW FEDERAL

4    CIRCUIT CASE THAT I WAS REFERRING TO AS A SUBSTANTIALLY CASE, A

5    CASE ABOUT THE PHRASE "SUBSTANTIALLY," IS DEERE AND CO. V. BUSH

6    HOG, DECEMBER 4, 2012.  THE FEDERAL CIRCUIT NUMBER, APPEAL

7    NUMBER IS 2011-1629.

8              THE COURT:  OKAY.  WELL, I WANTED TO GET TO SOME OF

9    THE OTHER PATENTS, BUT SINCE WE'RE ALREADY DEEP INTO DAMAGES,

10   WHY DON'T WE JUST KEEP GOING ON DAMAGES?

11        BECAUSE THE JURY WAS VERY PRECISE AND GENERALLY VERY

12   CONSISTENT IN HOW THEY DID THEIR CALCULATION FOR DAMAGES, IT

13   DOES APPEAR THAT FOR THE PREVAIL, THEY DID AWARD 40 PERCENT OF

14   SAMSUNG'S PROFITS, EVEN THOUGH ONLY UTILITY PATENTS WERE DEEMED

15   TO HAVE BEEN INFRINGED.

16        SO LET ME HEAR FROM APPLE.  I UNDERSTAND YOUR, YOUR

17   OVERALL POINT, BUT THERE ARE ONLY UTILITY PATENTS AND NO DESIGN

18   PATENTS FOUND TO HAVE BEEN INFRINGED BY THIS PRODUCT AND IT

19   APPEARS THAT THE AWARD -- THE DAMAGES AWARD IS REALLY NOT

20   AUTHORIZED BY THE LAW FOR THIS PARTICULAR PRODUCT.

21        DO YOU WANT TO RESPOND TO THAT?

22              MR. MCELHINNY:  I DO, YOUR HONOR.

23              THE COURT:  OKAY.

24              MR. MCELHINNY:  FIRST OF ALL, I WANT TO MAKE THE

25   OVERALL POINT THAT WE THINK THE NINTH CIRCUIT, IN THE COLISEUM

1    CASE, MADE IT VERY CLEAR THAT YOU DON'T GO BELOW THE AGGREGATED

2    VERDICT.  YOU LOOK TO SEE IF THERE'S EVIDENCE OF THE AGGREGATED

3    VERDICT AND YOU DO NOT GO BEYOND THAT IN ORDER TO TRY TO

4    RECONSTRUCT HOW THE JURY GOT TO THE AGGREGATED VERDICT.

5         IN OTHER WORDS, WE THINK -- WE THINK IT'S INAPPROPRIATE TO

6    TRY TO LOOK AT EACH ONE OF THESE SEPARATE PRODUCTS AND

7    DETERMINE WHETHER THAT NUMBER WAS ALSO CORRECT.

8         THE TEST IS WHETHER OR NOT THE EVIDENCE IN THE RECORD

9    SUSTAINS THE ENTIRE VERDICT THAT WAS REPORTED BACK AS A LUMP

10   SUM.

11            THE COURT:  BUT I JUST DON'T SEE HOW YOU CAN

12   EVALUATE THE AGGREGATE VERDICT WITHOUT LOOKING AT THE PIECES

13   THAT ACCUMULATED TO CREATE THAT AGGREGATE VERDICT.

14            MR. MCELHINNY:  BECAUSE I -- MAY I RESPOND TO THAT?

15            THE COURT:  GO AHEAD, PLEASE.

16            MR. MCELHINNY:  BECAUSE WE'RE TALKING ABOUT TWO

17   ENTIRELY DIFFERENT PROCESSES.

18        ONE IS LOOKING AT THE RECORD AND WHETHER THERE WAS

19   EVIDENCE IN THE RECORD THAT WOULD HAVE SUSTAINED THE OVERALL

20   VERDICT, WHICH IS WHAT THE NINTH CIRCUIT INSTRUCTS YOU TO DO.

21        THE OTHER IS TRYING TO RECONSTRUCT HOW THE JURY GOT TO

22   THAT AND THEN DETERMINE WHETHER OR NOT EACH STEP IN THEIR

23   RECONSTRUCTION -- IN OTHER WORDS, YOU'RE GOING INTO THEIR

24   THOUGHT PROCESS.

25            AND THAT -- AGAIN, THE COLISEUM CASE IS VERY CLEAR THAT

1      THAT IS NOT WHAT THE COURT IS SUPPOSED TO DO.

2          TO TAKE IT A STEP FURTHER, WHY THIS IS SUCH A TRAP IS THAT

3      WE DISAGREE -- WE DISAGREE WITH THE STATEMENT THAT ANYBODY

4      UNDERSTANDS HOW THE JURY GOT TO THESE VARIOUS NUMBERS.

5          THE IDEA THAT THIS RECONSTRUCTION THAT SAMSUNG HAS DONE

6      SOMEHOW TELLS US THAT THEY APPLIED 40 PERCENT HERE OR THEY DID

7      IT THIS WAY OR THEY DID IT THAT WAY FOR THESE PATENTS OR

8      SOMETHING ELSE, THAT IS COMPLETELY SOME EXPERT'S RECONSTRUCTION

9      OF THE PROCESS.

10             THE COURT:  UM-HUM.

11             MR. MCELHINNY:  THERE IS NO SUPPORT FOR IT, IT IS

12     COMPLETE SPECULATION, AND IT DOESN'T WORK.

13         BECAUSE WHEN YOU GET TO HIS COLUMN 5, HIS FIFTH GROUP,

14     IT'S, "OH, THESE ARE THE ONES THAT DIDN'T FIT, SO THEY JUST

15     SORT OF STAND OUT BY THEMSELVES.  I HAVE A UNIFIED THEORY OF

16     HOW IT WORKED, BUT MY UNIFIED THEORY DOESN'T COUNT FOR TWO

17     SEPARATE GROUPS OF PATENTS AT THE END."

18         IT'S NOT -- WE CITED, YOUR HONOR, A TENTH CIRCUIT CASE

19     WHERE THEY WERE ABLE TO FIGURE OUT -- THE NUMBER WAS EXACTLY

20     WHAT WAS ASKED FOR.

21         BUT THE TENTH CIRCUIT AFFIRMED THE VERDICT BECAUSE THERE

22     WAS ANOTHER GROUND ON WHICH THAT NUMBER COULD HAVE BEEN

23     JUSTIFIED.

24         SO ONCE -- THE FATAL FIRST STEP HERE --

25             THE COURT:  AND THAT'S WHAT I INTEND TO DO.  IF

```
 1          THERE IS A BASIS TO UPHOLD A DAMAGES AWARD --

 2                    MR. MCELHINNY:  OKAY.

 3                    THE COURT:  -- IF THERE IS A BASIS IN THE RECORD TO

 4          UPHOLD IT.

 5                    MR. MCELHINNY:  AND I'M GOING TO GET RIGHT TO THAT.

 6                    THE COURT:  BUT IT'S AMBIGUOUS WHETHER THEY WENT

 7          METHOD A OR METHOD B, BUT IF EITHER WAY WOULD BE JUSTIFIED BY

 8          THE RECORD, THEN I'M GOING TO UPHOLD IT.

 9              BUT I THINK IT IS APPROPRIATE TO DO ANALYSIS BY PRODUCT,

10          AND FOR THIS PARTICULAR PRODUCT, IT'S WAY BEYOND REASONABLE

11          ROYALTY OR LOST PROFITS, WHICH IS THE ONLY THING THAT APPLE

12          WOULD BE ENTITLED TO.

13              SO --

14                    MR. MCELHINNY:  OKAY.  I JUST WANTED TO CARVE OUT

15          FIRST THAT BUYING INTO THE CONCEPT THAT WE KNOW HOW THE JURY

16          DID IT, WE -- WE STRONGLY DISAGREE.  WE AGREE -- WE DISAGREE

17          THAT IT'S AN APPROPRIATE EXERCISE AND WE DISAGREE THAT THE

18          STORY THAT SAMSUNG HAS TOLD US IN THEIR BRIEF ABOUT HOW WE KNOW

19          WHAT THE JURY DID IS EVEN FACTUALLY ACCURATE BECAUSE WE JUST

20          DON'T THINK IT IS.

21                    THE COURT:  YOU WOULD AGREE, THOUGH, IT'S AWFULLY

22          CONSISTENT.  IT'S AWFULLY CONSISTENT THAT'S 40 PERCENT OF

23          SAMSUNG'S PROFITS AND 50 PERCENT OF THE ROYALTY RATE

24          CALCULATION?

25                    MR. MCELHINNY:  ACTUALLY, I DON'T.
```

1          THE COURT:  NOT IN EVERY CASE, BUT OVERALL.

2          MR. MCELHINNY:  I DON'T AGREE.  I DON'T AGREE IT'S

3   CONSISTENT, AND PARTICULARLY I DON'T AGREE BECAUSE THERE WERE A

4   NUMBER OF FACTORS THAT THE JURY WAS LOOKING AT.  THE JURY WAS

5   LOOKING AT COSTS, THE JURY WAS LOOKING AT NOTICE, THE JURY WAS

6   LOOKING AT DIFFERENT MEASURES OF DAMAGES.

7       TO TRY TO RETROACTIVELY, WHEN IT DOESN'T APPLY IN EVERY

8   CASE, TO SAY, "WELL, WE HAVE A PRETTY GOOD IDEA OF WHAT THEY

9   DID," THAT IS EXACTLY THE TRAP.

10          THE COURT:  OKAY.  WELL, LET ME ASK YOU ANOTHER WAY.

11          MR. MCELHINNY:  OKAY.

12          THE COURT:  YOUR VERDICT SAID X AMOUNT FOR

13   REASONABLE ROYALTY, Y AMOUNT FOR LOST PROFITS.

14          MR. MCELHINNY:  YES.

15          THE COURT:  JURY FINDS INFRINGEMENT ON UTILITY

16   PATENTS.

17          MR. MCELHINNY:  YES.

18          THE COURT:  BUT THE AWARD FOR THAT UTILITY PATENT IS

19   WAY BEYOND WHAT EVEN THE PATENT OWNER REQUESTED --

20          MR. MCELHINNY:  IT'S NOT.

21          THE COURT:  -- FOR THAT.

22          MR. MCELHINNY:  IT'S NOT.  TO REFRESH YOUR HONOR'S

23   RECOLLECTION, WHAT WE SAID WAS FOR EACH OF THESE VARIOUS

24   PHONES -- AND EXPLAINING OUR THEORY OF HOW THEY SHOULD HAVE

25   GOTTEN TO DAMAGES -- WE SAID IF IT INFRINGES THE DESIGN

1    PATENTS, WE GET ALL OF APPLE'S -- WE GET ALL OF SAMSUNG'S

2    PROFITS.

3        IF IT INFRINGES THE TRADEMARKS, WE GET SAMSUNG'S PROFITS.

4        AND IF IT INFRINGES THE UTILITY PATENTS, WE GET OUR LOST

5    PROFITS AND/OR ROYALTY, AND THEN YOU DID AN ANALYSIS OF WHAT

6    PERCENTAGE SHOULD BE ROYALTY AND WHAT PERCENTAGE -- SO THERE'S

7    LITERALLY A MATRIX THAT WAS PUT OUT THERE.

8        THE COURT:  UM-HUM.

9        MR. MCELHINNY:  AND IN HIS MATRIX, WE ARGUED THAT

10   BECAUSE -- THE NUMBER HE ACTUALLY ARGUED FOR THIS PHONE WAS

11   $152 MILLION, AND HE ARGUED FOR $152 MILLION AS A COMBINATION

12   OF SAMSUNG'S PROFITS AND APPLE'S LOST PROFITS AND A REASONABLE

13   ROYALTY.

14       SO THERE WERE SOME SALES THAT WERE PUT IN THREE OF THE

15   DIFFERENT BOXES.

16       WHEN THE JURY FOUND AGAINST US ON THE DESIGN ISSUES --

17       THE COURT:  UM-HUM.

18       MR. MCELHINNY:  -- THEY WERE THEN REQUIRED TO GO

19   BACK AND DO THEIR OWN NUMBER.

20       BUT THEY HAD TO USE THE TOTAL NUMBER OF SALES OF THE

21   PHONE, WHICH WAS MUCH LARGER THAN JUST TO FIND OUR 8.9.  THEY

22   HAD TO TAKE THE THREE BOXES AND THEY HAD TO REALLOCATE IT INTO

23   TWO BECAUSE WE WERE NO LONGER PERMITTED TO, TO OBTAIN SAMSUNG'S

24   PROFITS, SO THEY HAD TO REALLOCATE THOSE UNITS INTO APPLE'S

25   LOST PROFITS AND A ROYALTY.

```
 1          AND OUT OF -- BUT THE FACTS ARE THAT THEY AWARDED US, ON

 2    THAT PATENT, 65 MILLION -- 65 MILLION -- I'M SORRY.  THEY

 3    AWARDED US --

 4          THE COURT:  57.

 5          MR. MCELHINNY:  -- 57 OUT OF THE 152 THAT WE HAD

 6    ASKED FOR ON THAT PHONE.

 7          AND OBVIOUSLY THE ONLY WAY THEY GOT THERE WAS BY FIGURING

 8    OUT SOME PART OF APPLE'S LOST PROFITS AND SOME PART OF A

 9    ROYALTY.

10          I DON'T KNOW HOW THEY DID IT, BUT IF YOU'RE ASKING ME

11    WHETHER OR NOT THE MATERIALS WERE IN THE RECORD TO PERMIT THEM

12    TO DO IT, OF COURSE THEY WERE.  THEY WERE IN THE MATRIX.

13          WE'VE SET OUT IN THE BRIEF THAT THEY KNEW WHAT APPLE'S

14    PROFIT MARGIN WAS.  THEY KNEW THE DESIGN AROUND PERIOD.  THEY

15    KNEW WHAT OUR MARKET SHARE WAS, AND WE HAD A LOST PROFITS

16    CALCULATION THAT WOULD HAVE JUSTIFIED AN AWARD OF $65.9

17    MILLION.

18          THE COURT:  ALL RIGHT.  WELL, OKAY.  I'M LOOKING

19    AT -- AND I UNDERSTAND THAT THIS WAS AMENDED DURING THE TRIAL,

20    BUT I'M LOOKING AT PLAINTIFF'S EXHIBIT 25.7, WHICH I BELIEVE IS

21    MR. MUSIKA'S DAMAGES CALCULATIONS, AND FOR THE GALAXY PREVAIL,

22    HE SAYS APPLE'S LOST PROFITS ARE $28,452,173.  OKAY?

23          AND IF YOU LOOK AT HIS REASONABLE ROYALTY CALCULATIONS,

24    THERE'S NOTHING MORE THAN 5 MILLION.

25          OH, I'M SORRY, THERE'S 6 MILLION.
```

```
 1          BUT, YOU KNOW, IN COMPARISON TO EITHER APPLE'S LOST

 2     PROFITS OR SAMSUNG'S PROFITS, THE REASONABLE ROYALTY NUMBERS

 3     ARE, ARE REALLY MINIMAL OR DWARFED IN COMPARISON TO -- SO IF

 4     YOU HAD LOST PROFITS OF 28,452,173, HOW DO YOU GET UP TO

 5     57,867,383?

 6               MR. MCELHINNY:  BECAUSE WHEN WE DIVIDED THE UNITS --

 7               THE COURT:  UM-HUM.

 8               MR. MCELHINNY:  -- WE PUT INTO APPLE'S LOST PROFITS

 9     THE UNITS THAT GOT US TO THE NUMBER YOU JUST QUOTED.  WE PUT

10     INTO THE PREMIUM BUCKET THE UNITS THAT GOT US THE ROYALTY THAT

11     YOUR HONOR JUST QUOTED.

12          BUT WE PUT THE VAST MAJORITY OF THE UNITS INTO THIS

13     SAMSUNG'S LOST PROFITS BUCKET.

14          SO WE ASKED FOR 100 -- AND THIS IS IN EXHIBIT 25A1.  WE

15     ASKED FOR $144 MILLION IN SAMSUNG'S LOST PROFITS.

16          SO THE JURY DIDN'T GIVE US THAT --

17               THE COURT:  WELL, THEY COULDN'T.  THEY DIDN'T FIND

18     ANY DESIGN PATENT TRADE DRESS INFRINGEMENT.  THEY COULDN'T GIVE

19     YOU ANY OF THAT.

20               MR. MCELHINNY:  THAT'S CORRECT.  BUT SOMETHING HAS

21     TO HAPPEN TO THOSE UNITS.  IF WE DON'T GET SAMSUNG'S LOST

22     PROFITS, THEY STILL INFRINGE.

23          SO IF WE ARE -- IF THEY DIDN'T AWARD US SAMSUNG'S LOST

24     PROFITS, THEY THEN WERE REQUIRED, UNDER YOUR INSTRUCTIONS, TO

25     AWARD US EITHER OUR LOST PROFITS --
```

```
 1                 THE COURT:  WHICH IS 28.

 2                 MR. MCELHINNY:  NO, NO.  THE 28 IS -- YOU TAKE -- I

 3     WISH I HAD THE DETAIL IN FRONT OF ME.  I WISH I HAD IT IN MIND.

 4        BUT LET'S SAY THERE WERE 200 UNITS, JUST FOR NOW.  WE PUT

 5     100 INTO DESIGN, WE ARE ENTITLED TO SAMSUNG'S LOST PROFITS FOR

 6     THESE; WE PUT 70 INTO WE'RE ENTITLED TO OUR LOST PROFITS FOR

 7     THESE; AND WE PUT 30 INTO WE'RE ENTITLED TO A ROYALTY FOR

 8     THESE.

 9        THAT WAS THE WAY WE BROKE THAT -- AS MR. MUSIKA ATTRIBUTED

10     THOSE.

11        BUT WHEN THEY DIDN'T GIVE US LOST PROFITS, THAT LEAVES

12     OUT -- THAT SUDDENLY LEAVES 100 UNITS FOR WHICH WE DIDN'T GIVE

13     THEM A SPECIFIC NUMBER.

14        BUT WE TOLD THEM QUITE SPECIFICALLY, I TOLD THEM IN THE

15     CLOSING, THAT IF THEY DIDN'T AWARD US WHAT WE ASKED FOR, THEY

16     HAD TO CALCULATE A REASONABLE DAMAGE FOR THOSE 100 UNITS IN ANY

17     EVENT.

18        AND IF THEY WERE ONLY UTILITY PATENTS, IF THEY WERE ONLY

19     UTILITY PATENTS, THE REASONABLE DAMAGES THERE COULD EITHER BE

20     LOST PROFITS OR REASONABLE ROYALTY.

21        SO IF I WERE DOING IT, WHAT I WOULD HAVE DONE WAS DIVIDE

22     THOSE UNITS EQUALLY INTO THE LOST PROFITS, THE SAME WAY THAT I

23     DID THE LOST PROFITS.

24        BUT THOSE UNITS HAD TO BE AWARDED.  ALL -- WE WERE

25     ENTITLED TO A ROYALTY -- TO DAMAGES ON EVERY UNIT THAT WAS
```

```
 1       SOLD.

 2            AND MR. MUSIKA EXPLAINED THIS PROCESS.  THAT'S WHY WE GAVE

 3       THEM THE MATRIX, BECAUSE WE EXPLAINED THE PROCESS.  WE SAID,

 4       "IF YOU DON'T PUT THESE IN THE SAME BUCKETS THAT WE PUT THEM

 5       IN, WE ARE STILL ENTITLED TO A RECOVERY AND YOU NEED TO PUT

 6       THEM IN THE BUCKET THAT JUSTIFIES IT."

 7            SO --

 8            THE COURT:  SO YOU'RE SAYING MR. MUSIKA DID NOT GIVE

 9       YOU FULL CREDIT FOR ALL OF THE UNITS SOLD IN HIS OWN DAMAGES

10       CALCULATION?

11            MR. MCELHINNY:  NO.  I'M SAYING HE GAVE US FULL

12       CREDIT.

13            THE COURT:  UM-HUM.

14            MR. MCELHINNY:  BUT IF A PRODUCT INFRINGES A DESIGN

15       PATENT --

16            THE COURT:  WHICH THESE DON'T.  THE JURY FOUND THAT

17       PREVAIL DOES NOT.

18            MR. MCELHINNY:  IF A PRODUCT INFRINGES A DESIGN

19       PATENT AND A UTILITY PATENT, WE OBVIOUSLY PREFER TO TAKE OUR

20       RECOVERY UNDER THE DESIGN PATENT BECAUSE WE GET SAMSUNG'S

21       PROFIT.

22            THE COURT:  UM-HUM.

23            MR. MCELHINNY:  IF YOU SAY, "SORRY, YOU DON'T

24       DESIGN -- YOU DON'T INFRINGE THE DESIGN PATENT," THEN YOU --

25       THEN WE'RE ENTITLED TO OUR RECOVERY UNDER THE OTHER MEASURE.
```

1    WE JUST DIDN'T GIVE THEM A SPECIFIC NUMBER FOR THAT.  WE TOLD

2    THEM HOW TO DO IT.

3         THE ONES THAT WE WERE TRYING TO GET CREDIT FOR AT THE

4    DESIGN PATENT RATE HAVE TO THEN GO INTO THE UTILITY PATENT RATE

5    AND THERE, AS YOUR HONOR -- WELL, I THINK --

6              THE COURT:  WELL, IF THEY WENT WITH WHAT MR. MUSIKA

7    SAID THEY SHOULD DO, THE $2.02 OR $3.03, THEY WOULDN'T COME UP

8    WITH 57 MILLION.

9              MR. MCELHINNY:  BUT THEY WOULD IF THEY PUT THE

10   MAJORITY OF THOSE UNITS UNDER OUR LOST PROFITS.

11        IF THEY HAD TAKEN THE UNITS THAT WE ASKED FOR SAMSUNG'S

12   PROFITS AND INSTEAD GAVE US OUR PROFITS, THAT WOULD HAVE --

13   THAT WOULD HAVE BEEN $65 MILLION AS WE DO THE CALCULATION, YOUR

14   HONOR.

15             THE COURT:  SO IN -- WELL, ALL RIGHT.  LET ME GIVE

16   SAMSUNG AN OPPORTUNITY TO RESPOND ON THE PREVAIL.

17             MS. SULLIVAN:  YOUR HONOR, THAT COLLOQUY WITH

18   MR. MCELHINNY WAS VERY CONFUSING.

19        I'D LIKE TO TAKE US BACK TO THE FIRST PRINCIPLES WITH

20   WHICH YOU SO CORRECTLY BEGAN, AND THAT IS THAT THIS JURY DID

21   THINGS VERY, VERY EXACTLY, TO THE EXTENT THAT THEY WERE

22   PERMITTED TO, AND THAT IS THEY DID THINGS VERY, VERY EXACTLY ON

23   A PRODUCT-BY-PRODUCT BASIS.

24        THEY WERE NOT DOING THINGS EXACTLY ON AN INFRINGER'S

25   PROFITS VERSUS LOST PROFITS VERSUS REASONABLE ROYALTY BASIS

1     BECAUSE SAMSUNG'S REQUEST TO PARTICULARIZE THE VERDICT FORM

2     BASED ON DAMAGES THEORY WAS REJECTED, NOR DID THEY

3     PARTICULARIZE AS TO I.P. INFRINGED OR DILUTED.  AS MY

4     COLLEAGUE, MR. VERHOEVEN, SAID BEFORE, THAT'S WHY YOU CAN'T

5     REALLY DISAGGREGATE THE '163 PATENT SHOULD YOU FIND IT

6     INDEFINITE FROM OTHER THINGS.

7          BUT YOU ARE EXACTLY RIGHT, YOUR HONOR.  AS TO

8     PRODUCT-BY-PRODUCT DAMAGES AMOUNTS, THE JURY COULD NOT HAVE

9     BEEN MORE PRECISE, AND THE VERY PRECISION REQUIRES YOU TO GIVE

10    JUDGMENT TO SAMSUNG ON THE PREVAIL FOR EXACTLY THE REASONS YOU

11    HAVE SO CORRECTLY ALREADY STATED, AND THAT IS THAT THE JURY

12    GAVE THE EXACT SAME 40 PERCENT OF SAMSUNG'S PROFITS FOR THE

13    PREVAIL, $58 MILLION -- AND THOSE ARE APPLE'S FIGURES FOR

14    SAMSUNG'S PROFITS -- THEY GAVE THE EXACT SAME 40 PERCENT OF

15    SAMSUNG'S PROFITS ON THE PREVAIL THAT THEY DID ON ALL OF THE

16    PHONES FOUND TO INFRINGE DESIGN PATENTS, THE 11 PHONES, AND

17    ALL -- A COMPONENT OF ALL THE PHONES FOUND TO HAVE INFRINGED

18    DESIGN AND DILUTE TRADE DRESS.

19          SO THE 40 PERCENT LOGIC WAS A SAMSUNG PROFITS LOGIC.  IT'S

20    MATHEMATICALLY EXACT.

21          AND YOU HIT THE NAIL ON THE HEAD.  IT IS LEGALLY

22    UNACCEPTABLE.  IT IS LEGALLY ERRONEOUS TO AWARD SAMSUNG'S

23    PROFITS ON A UTILITY PATENT.  IT'S FORECLOSED BY SECTION 284.

24    IT'S PERMITTED ONLY FOR DESIGN PATENT INFRINGEMENT UNDER

25    SECTION 289.

```
 1        NOW, YOUR HONOR, WHILE WE'RE ON FIRST PRINCIPLES, YOU'RE

 2   ABSOLUTELY RIGHT THAT LOOKING BACK INTO THE VERDICT TO

 3   INTERPRET WHAT THE JURY HAS DONE, WHAT YOU MIGHT CALL REVERSE

 4   ENGINEERING -- WE DON'T THINK IT'S REVERSE ENGINEERING.  WE

 5   THINK IT'S REALLY STRAIGHTFORWARD AND UNARGUABLE MATH THAT

 6   COMES RIGHT OUT OF WHAT THE JURY DID, AND IT WAS CONFIRMED BY

 7   POST-TRIAL INTERVIEWS BY GARRULOUS JURORS, AND WHAT THE JURY

 8   DID WAS TO TAKE 40 PERCENT OF SAMSUNG'S PROFITS.

 9        THEY MADE A MISTAKE ON THE PREVAIL.  THEY FORGOT, WHEN

10   THEY GOT TO THE PREVAIL, THAT THEY COULDN'T USE SAMSUNG'S

11   PROFITS ON THE PREVAIL BECAUSE IT DIDN'T INFRINGE ANY DESIGN

12   PATENTS.  IT ONLY INFRINGED UTILITY PATENTS.

13        NOW, YOUR HONOR, WHAT GIVES YOU THE AUTHORITY TO

14   INVALIDATE THAT VERDICT ON THE PREVAIL IS NINTH CIRCUIT LAW

15   THAT IS CONTROLLING, AND IT'S NOT THE COLISEUM CASE.  IT'S THE

16   CASE OF IN RE:  FIRST ALLIANCE MORTGAGE, 471 F.3D 977, WHICH

17   EXPRESSLY DISTINGUISHES MR. MCELHINNY'S COLISEUM CASE.

18        AND FIRST ALLIANCE IS A KEY CASE FOR YOU, YOUR HONOR,

19   BECAUSE IT'S THE NINTH CIRCUIT, WHICH DOES GOVERN DAMAGES AND

20   REMITTITUR HERE.

21        THE NINTH CIRCUIT, IN THAT CASE, VACATED, AS AN ABUSE OF

22   DISCRETION, A TRIAL COURT'S REFUSAL TO UNPACK A VERDICT AND TO

23   REMIT AMOUNTS THAT WERE BASED ON LEGALLY ERRONEOUS THEORIES.

24        AND THE KEY LANGUAGE, YOUR HONOR, IS THE PHRASE --

25   JUDGE CLIFTON WRITING FOR THE COURT -- "HAVING BASED THE
```

1    DAMAGES CALCULATION IN SUBSTANTIAL PART ON AN IMPROPER THEORY

2    OF DAMAGES, WHICH THE JURY MOST CERTAINLY DID, THE JURY DID NOT

3    FOLLOW THE LAW ACCORDING TO ITS INSTRUCTIONS."

4        AND FIRST ALLIANCE GOES ON TO SAY THAT THE DISTRICT COURT

5    SHOULD NOT BEND OVER BACKWARDS TO FIND A POTENTIALLY VALID

6    BASIS IN THE RECORD FOR THE JURY VERDICT THAT IS NOT TETHERED

7    TO THE LAW OR THE FACTS OF THE CASE.

8        WHAT YOU JUST HEARD MR. MCELHINNY DO WAS BEND OVER

9    BACKWARDS TO TRY TO FIND A FANCIFUL THEORY OF HOW THE JURY

10   COULD HAVE FOUND $58 MILLION ON THE PREVAIL WITHOUT RELYING ON

11   40 PERCENT OF SAMSUNG'S PROFITS, WHICH IS LEGALLY FORECLOSED.

12       NOW, YOUR HONOR, WE THINK THERE ARE OTHER LEGAL ERRORS

13   THAT SHOULD REQUIRE YOU OR PERMIT YOU TO REVERSE AND ENTER

14   JUDGMENT FOR US, OR TO REMIT WITHIN YOUR DISCRETION.

15       THE OTHER MAIN LEGAL ERROR I JUST WANT TO FLAG, AND WE'LL

16   TALK ABOUT WHEN YOUR HONOR WOULD LIKE TO, BUT IT'S THE

17   INCORRECT NOTICE DATE.

18           THE COURT:  WE'RE GOING TO GET TO THAT.

19           MS. SULLIVAN:  OKAY.  BUT, YOUR HONOR, ALL I WANTED

20   TO --

21           THE COURT:  WHAT IF I JUST CALCULATED THE REASONABLE

22   ROYALTY FOR THE PREVAIL, REMIT THE 40 PERCENT OF SAMSUNG'S

23   PROFITS?

24           MS. SULLIVAN:  WELL, YOUR HONOR --

25           THE COURT:  HOW ABOUT THAT?

1          MS. SULLIVAN:  IF YOU REMIT THE 40 PERCENT OF

2    SAMSUNG'S PROFITS, WE THINK THAT THE MOST YOU COULD DO IS GO

3    WITH THE CORRECT LOST PROFITS NUMBER THAT MR. MUSIKA GAVE,

4    BECAUSE THAT'S WHAT WAS BEFORE THE JURY.

5          IN OTHER WORDS, YOU CAN'T COME UP WITH A THEORY THAT

6    WASN'T BEFORE THE JURY.

7          WHAT WAS BEFORE THE JURY -- AND I APOLOGIZE, YOUR HONOR,

8    BUT THE EXHIBIT THAT WAS UP ON THE SCREEN A MOMENT AGO WAS NOT

9    THE CORRECT EXHIBIT.

10         WHAT WE WANT TO LOOK AT IS PLAINTIFF'S EXHIBIT 25A1, PAGE

11   4, AND ON THAT PAGE YOU'LL SEE THAT THE LOST PROFITS FIGURE

12   THAT WAS SUBMITTED INTO EVIDENCE BY MR. MUSIKA WAS 8,573,370,

13   8.57.  IT WAS NOT 24.

14         SO THE MOST YOU COULD DO IS REMIT TO 8.57 BECAUSE THAT'S

15   THE ONLY LOST PROFITS -- THAT'S THE ONLY ALTERNATIVE TO

16   SAMSUNG'S PROFITS THAT WAS IN EVIDENCE WITH RESPECT TO THE

17   PREVAIL.

18         WITH RESPECT TO --

19         THE COURT:  I THOUGHT THAT MR. MUSIKA, EVEN THOUGH

20   IT WASN'T IN HIS REPORT, HE ONLY LISTS REASONABLE ROYALTY

21   AMOUNTS FOR MAYBE A THIRD TO 40 PERCENT OF THE ACCUSED

22   PRODUCTS, BUT I THOUGHT THAT HE HAD PROVIDED GENERAL TESTIMONY

23   THAT, YOU KNOW, OVERALL, YOU CAN ALWAYS GIVE US A REASONABLE

24   ROYALTY OF 2.02 OR 3.03 AND THAT THAT IS IN THE RECORD AS WELL.

25         BUT I -- BUT I DON'T HAVE A STRONG -- WELL --

1          MS. SULLIVAN:  YOUR HONOR, AS YOU'LL SEE FROM THE

2     CORRECT EXHIBIT WHICH IS NOW UP, HE CERTAINLY DIDN'T CALCULATE

3     A REASONABLE ROYALTY FOR THE PREVAIL.

4          THE COURT:  UM-HUM.

5          MS. SULLIVAN:  SO WE WOULD SUBMIT THAT WHAT WAS

6     BEFORE THE JURY WOULD LIMIT YOU IN REMITTITUR -- WE THINK YOU

7     SHOULD REMIT THE ENTIRE $58 MILLION, OR MORE CORRECTLY, WE

8     THINK YOU SHOULD ENTER JUDGMENT FOR SAMSUNG ON THE 58 BECAUSE

9     IT WAS BASED ON A LEGALLY ERRONEOUS THEORY.

10         BUT SHOULD YOU CHOOSE RULE 59 REMITTITUR INSTEAD, THEN YOU

11    SHOULD GO WITH THE 8.57 FIGURE BECAUSE THAT WAS IN EVIDENCE AND

12    BEFORE THE JURY ON A LOST PROFITS AMOUNT.

13         WE DON'T THINK THERE'S SUPPORT FOR LOST PROFITS.

14         AND YOUR HONOR, AS TO THE GENERAL REASONABLE ROYALTY

15    TESTIMONY, WE'VE ARGUED IN OUR BRIEFS IT'S PURELY CONCLUSORY.

16    IT WASN'T SUPPORTED BY A PROPER FOUNDATION OR EVIDENCE AND SO

17    WE WOULD SUBMIT THAT'S NOT A GOOD GROUND FOR YOU TO RECONSTRUCT

18    A POSSIBLE SUBSTITUTE DAMAGES HERE.

19         SO WE WOULD SUGGEST JUDGMENT ON THE WHOLE 58 -- WE SHOULD

20    PREVAIL ON THE PREVAIL.  THAT'S THE EASIEST ONE WE HAVE BEFORE

21    US.  IT WAS A STRAIGHT MISTAKE.  IT WAS JUST MATHEMATICAL.

22         YOUR HONOR, IF I COULD JUST FLAG ONE OTHER CASE FOR YOU?

23         THE COURT:  OKAY.

24         MS. SULLIVAN:  IT'S JUDGE RADER SITTING BY

25    DESIGNATION ON THE TRIAL COURT, AND IT'S CORNELL UNIVERSITY

1    VERSUS HEWLETT-PACKARD, 609 F.SUPP.2D 279, AND THAT'S, OF

2    COURSE, WHERE JUDGE RADER ACTUALLY JMOL'D A DAMAGED VERDICT AND

3    ISSUED A NEW TRIAL OR REMITTITUR AS AN ALTERNATIVE SHOULD HIS

4    JMOL NOT WORK ON APPEAL.

5          AND HE DID EXACTLY WHAT YOUR HONOR IS SUGGESTING YOU MIGHT

6    DO HERE, AND THAT IS HE LOOKED AND HE SAW THERE WAS A

7    MATHEMATICAL ERROR IN THE WAY THE JURY CALCULATED THE VERDICT

8    THAT LED TO A LEGAL ERROR.

9          AND SO HE ENTERED JMOL ON THAT, AND HE QUOTED SOMETHING --

10   IT COMES FROM ANOTHER CIRCUIT, BUT IT'S RELEVANT HERE -- HE

11   SAID, "REMITTITUR IS APPROPRIATE WHERE THE COURT CAN IDENTIFY

12   AN ERROR THAT CAUSED THE JURY TO INCLUDE IN THE VERDICT A

13   QUANTIFIABLE AMOUNT THAT SHOULD BE STRICKEN."

14         IF EVER THERE WAS SUCH A VERDICT HERE, WE HAVE IT AND YOU

15   CAN TAKE OUT QUANTIFIABLE AMOUNTS.  WE THINK THE PREVAIL IS THE

16   EASIEST ONE.  LATER, IF YOUR HONOR ALLOWS US TO, WE'D LIKE TO

17   EXPLAIN SOME OTHERS THAT ARE EASILY QUANTIFIABLE.  BUT THE

18   PREVAIL IS EASY AND THE 58 SHOULD GO.

19               THE COURT:  OKAY.

20               MS. SULLIVAN:  THANK YOU, YOUR HONOR.

21               THE COURT:  OKAY.  LET ME ASK YOU ONE THAT'S A

22   LITTLE BIT -- IT'S NOT AS, I THINK, CLEAR CUT AS THE PREVAIL.

23         SO FOR THE FASCINATE, THE S 4G, THE S SHOWCASE, MESMERIZE,

24   AND VIBRANT, THE JURY APPEARS TO HAVE GIVEN 40 PERCENT OF

25   SAMSUNG'S PROFITS PLUS APPLE'S LOST PROFITS.

1     MS. SULLIVAN:  THAT'S CORRECT, YOUR HONOR.

2     THE COURT:  NOW, THIS ONE MIGHT FALL INTO THE

3  CATEGORY THAT I SPOKE WITH MR. MCELHINNY ABOUT IN THAT EVEN THE

4  COMBINED AWARD IS JUST ABOUT 60 PERCENT OF SAMSUNG'S PROFITS.

5     SO IT COULD BE THAT THE JURY, FOR THESE PARTICULAR

6  PRODUCTS, FOUND THAT A GREATER PERCENTAGE THAN 40 PERCENT WAS

7  WARRANTED AND I COULD FIND IN THE RECORD THAT THERE IS ENOUGH

8  TO SUPPORT THAT AWARD IN THESE, YOU KNOW, FIVE PRODUCT

9  INSTANCES.  THEY'RE NOT -- THE JURY IS CERTAINLY NOT BOUND TO

10  CAP EVERYTHING AT 40 PERCENT.

11     SO DO YOU WANT TO ADDRESS THAT ONE?

12     MS. SULLIVAN:  YOUR HONOR, WITH RESPECT, I'D LIKE TO

13  DISAGREE WITH THE IDEA THAT IF THE JURY DOES ANYTHING

14  WITHOUT -- WITHIN AN OUTER ENVELOPE, NO MATTER THE THEORY, THAT

15  THAT'S ACCEPTABLE.  APPLE HAS PUT THAT FORTH AND IT'S

16  INCONSISTENT WITH FIRST ALLIANCE.

17     IF YOU KNOW THAT THERE'S A MATHEMATICAL ERROR WITHIN THE

18  COMPONENTS OF THE JURY'S VERDICT, YOU CAN'T JUST SAY, "NEVER

19  MIND, LET'S ATTRIBUTE TO THEM A THEORY WE KNOW THEY DIDN'T

20  HAVE."

21     THAT'S WHY I FOCUSSED ON THAT KEY LANGUAGE FROM FIRST

22  ALLIANCE.  IF THERE'S A DAMAGES CALCULATION THAT'S BASED IN

23  SUBSTANTIAL PART ON AN IMPROPER THEORY OF DAMAGES, WHICH THE

24  JURY MOST CERTAINLY DID, WHAT THE NINTH CIRCUIT IS SAYING IS

25  YOU CAN'T JUST MAKE UP ANOTHER THEORY THAT'S WITHIN THE OUTER

1    ENVELOPE.  SO THAT'S THE FIRST POINT.

2         SECOND POINT IS WE DON'T THINK THAT THE LOST PROFITS

3    COMPONENT -- WE AGREE WITH YOU ABSOLUTELY, YOUR HONOR, THAT TO

4    A MATHEMATICAL CERTAINTY, WHAT THE JURY DID ON THOSE PHONES

5    THAT YOU JUST CITED WAS GIVE 40 PERCENT OF APPLE'S -- SORRY --

6    40 PERCENT OF SAMSUNG'S PROFITS AND THEN A FIGURE FOR APPLE'S

7    LOST PROFITS.

8         AND THE PROBLEM, YOUR HONOR, IS THAT WE THINK THAT IT'S

9    LEGALLY UNSUSTAINABLE TO UPHOLD ANYTHING BASED ON APPLE'S LOST

10   PROFITS, AND THERE'S -- IF I CAN BOIL DOWN OUR BRIEFS TO FOUR

11   MAIN POINTS, THE LOST PROFITS TESTIMONY WAS NOT SUPPORTED BY

12   ADEQUATE CAUSATION SHOWING.  THERE WASN'T ENOUGH LINKAGE

13   BETWEEN THE PATENTED FEATURES OR DESIGNS AT ISSUE AND THE

14   SUPPOSED DAMAGE TO APPLE'S PROFITS.

15        THE SECOND FLAW IN THE LOST PROFITS TESTIMONY THAT MAKES

16   IT INSUFFICIENT AS TO ANY PRODUCT IS THAT APPLE FAILED TO

17   DEMONSTRATE THAT IT HAD THE MANUFACTURING AND MARKETING

18   CAPACITY TO MAKE ALL THOSE PHONES IT SAID IT WAS GOING TO MAKE

19   ITS LOST PROFITS ON.  IT ADMITTED IT COULDN'T MAKE IPHONE 4'S

20   FOR FIVE MONTHS IT WAS SO BACKLOGGED.

21        THE THIRD KEY DEFICIENCY IN THE LOST PROFITS TESTIMONY IS

22   THAT THE EXPERT DIDN'T TAKE INTO ACCOUNT PRICE ELASTICITY.  HOW

23   DO YOU KNOW SOMEBODY WOULD HAVE BOUGHT AN EXPENSIVE IPHONE

24   RATHER THAN A LESS EXPENSIVE SAMSUNG OR ANDROID -- OTHER

25   ANDROID PRODUCT IF YOU DON'T TAKE PRICE INTO ACCOUNT?  AND THE

1    FACT THAT THERE WERE PRICE DIFFERENCES WAS UNDISPUTED.

2         AND THE FOURTH PROBLEM IS THAT THE -- IS MUSIKA'S NUMBERS

3    FOR LOST PROFITS, WHICH IS WHERE THAT COMPONENT YOU JUST

4    ALLUDED TO CAME FROM.  APPLE'S EXPERT'S LOST PROFITS AMOUNTS

5    ASSUMED THAT EVERY SINGLE CLAIM AS TO TRADE DRESS, EVERY SINGLE

6    CLAIM AS TO UNREGISTERED AND REGISTERED TRADE DRESS, EVERY

7    SINGLE CLAIM AS TO EVERY PATENT INFRINGEMENT WAS VINDICATED BY

8    THE JURY.

9         AND OF COURSE THE JURY DIDN'T DO THAT.  THE JURY RULED FOR

10   SAMSUNG ON THE '889.  THE JURY RULED FOR SAMSUNG ON TWO OF THE

11   TRADE DRESSES APPLE CLAIMED.

12        AND, THEREFORE, MUSIKA'S ENVELOPE NUMBER FOR LOST PROFITS

13   FROM WHICH HE DERIVED THE SMALLER NUMBERS AND THE PER UNIT

14   NUMBERS WAS INCORRECT.

15        SO WITH RESPECT, YOUR HONOR, WE THINK THERE'S LEGALLY

16   INSUFFICIENT BASIS FOR THE LOST PROFITS NUMBERS THAT APPLE

17   SUBMITTED FOR ALL THE PRODUCTS, SO WE WOULD SUBMIT THAT WHEN

18   YOU GET TO THOSE PHONES THAT HAD A LOST PROFITS COMPONENT, WE

19   THINK YOU SHOULD ENTER JUDGMENT FOR SAMSUNG ON THE LOST PROFITS

20   COMPONENT.

21        OR, ALTERNATIVELY, WE WOULD ASK YOUR HONOR TO REMIT THE

22   LOST PROFITS COMPONENT, AND I'LL BE HAPPY TO TALK ABOUT NOTICE

23   DATE LATER.

24        BUT WITH RESPECT, WE DON'T THINK YOU CAN JUST MOVE TO LOST

25   PROFITS.  WE THINK WHAT FIRST ALLIANCE MORTGAGE IS TELLING YOU

1    IS THAT ONCE WE KNOW EXACTLY WHAT THE JURY DID TO A

2    MATHEMATICAL CERTAINLY, WE CAN'T MAKE UP A WORLD IN WHICH THEY

3    DIDN'T OPERATE.

4        AND YOUR HONOR, IF THERE'S ANY DOUBT ABOUT THE

5    MATHEMATICAL CERTAINTY, I'D JUST REFER YOU TO PAGE 88 OF THE

6    POST-BRIEFING DEPOSITION OF APPLE'S NEW ECONOMIC EXPERT,

7    MS. ROBINSON, WHERE SHE SAID SHE AGREED WITH OUR MATHEMATICS

8    AND OUR MATHEMATICS WERE RIGHT.  SO PAGE 88 OF THE NOVEMBER

9    DEPOSITION OF MARYLEE ROBINSON, SHE SAYS OUR MATHEMATICS WERE

10   RIGHT.

11       SO IT'S NOT MATHEMATICAL CERTAINTY ACCORDING TO SAMSUNG.

12   IT'S UNDISPUTED MATHEMATICAL CERTAINTY.

13       AND UNDER NINTH CIRCUIT LAW -- FEDERAL CIRCUIT LAW IS IN

14   ACCORD, OF COURSE -- LUCENT AGAINST GATEWAY ALSO SAYS WHEN YOU

15   KNOW THE MATH TO A CERTAINTY, IT'S OKAY TO REVERSE ENGINEER THE

16   VERDICT.

17           THE COURT:  ARE WE CREATING A SORT OF WEIRD OR

18   PERVERSE POLICY OUTCOME?  SO IF THE JURY IS JUST SORT OF RANDOM

19   AND SAYS 20 MILLION FOR THIS, 100 MILLION FOR THAT, AND IS NOT

20   PRECISE AND CONSISTENT, WE'RE ACTUALLY GOING TO THROW UP OUR

21   HANDS AND SAY WE REALLY CAN'T FIGURE OUT WHAT THEY DID, WE

22   CAN'T DETERMINE WHETHER THERE'S A MATHEMATICAL OR A CALCULATION

23   ERROR HERE, WE CAN'T FIGURE OUT ANY BASIS FOR THEIR THEORY,

24   THEREFORE, WE'RE JUST GOING TO UPHOLD THE WHOLE AWARD; WHEREAS

25   IF YOU HAVE A JURY THAT IS APPARENTLY TRYING TO BE, TRYING TO

 1    HAVE AT LEAST SOME CONCISE, PRECISE, CONSISTENT AND BASED ON

 2    SOME KIND OF EVIDENCE THAT WAS ADMITTED IN THE TRIAL BASIS FOR

 3    THEIR AWARDS, THEN WE'RE ACTUALLY GOING TO, YOU KNOW, THROW OUT

 4    THEIR AWARDS MORE THAN A JURY THAT'S JUST COMPLETELY RANDOM AND

 5    IS INCOMPREHENSIBLE IN TERMS OF WHAT THEIR THEORY WAS AND

 6    WHETHER THERE'S A MATHEMATICAL ERROR?

 7              MS. SULLIVAN:  YES.  I HEAR YOU, YOUR HONOR, AND

 8    THAT WOULD BE A DISTURBING OUTCOME IF IT WERE ONE WE REALLY

 9    FACED.

10        I DON'T THINK WE FACE THAT PERVERSE POLICY OUTCOME HERE

11    FOR TWO REASONS.

12        FIRST, I THINK IN THE -- THE RANDOM JURY THAT GOES INTO

13    THE JURY ROOM AND THROWS DARTS AT THE EVIDENCE AND JUST HAPPENS

14    TO COME OUT WITH A NUMBER THAT IS RANDOM, I THINK THE ANSWER IS

15    WE DON'T UPHOLD THOSE DAMAGES VERDICTS, THAT THE DAMAGES HAS TO

16    BE PROVEN -- WE'RE IN THE WORLD OF TORTS HERE AND THERE ARE

17    TORT ANALOGIES.  THERE HAS TO BE CAUSATION.  THERE HAS TO BE

18    A -- JURIES HAVE TO BE RATIONAL.  THEY HAVE TO BE -- WE HAVE TO

19    BE ABLE TO ATTRIBUTE TO THEM A RATIONAL THEORY CONNECTED TO THE

20    EVIDENCE BASED ON PROPER INSTRUCTIONS UNDER THE LAW.

21        SO WITH RESPECT, I THINK WE CAN AND DO HAVE -- YOU HAD --

22    YOU CAN AND DO HAVE POST-TRIAL AUTHORITY, AND THE CIRCUITS HAVE

23    APPELLATE AUTHORITY, TO INVALIDATE DAMAGES AWARDS THAT ARE

24    REALLY SO RANDOM.

25        SO I DON'T THINK THE PROBLEM IS SO GREAT AS YOU SUGGEST ON

1    THE OTHER SIDE.

2         AND ON OUR SIDE WHERE A JURY DOES WORK WITH ENORMOUS

3    PRECISION AND CARE, TO THE EXTENT IT'S ALLOWED TO WITHIN THE

4    CONFINES OF THE VERDICT FORM, IT WOULD DISRESPECT THE JURY TO

5    DO ANYTHING OTHER THAN SAY, "WE SEE WHAT YOU WERE DOING AND, BY

6    THE WAY, PRETTY GOOD UP TO THE POINT WHERE YOU INCLUDE THE

7    PREVAIL IN YOUR ANALYSIS," THEIR PRECISION SHOULD BE A BASIS

8    FOR YOU TO ENTER JUDGMENT.

9         AND THIS IS A CASE WHERE YOU DON'T HAVE TO GO BACK AND

10   HAVE A NEW TRIAL.

11        SO LET ME -- IN MY WORLD, IN SAMSUNG'S WORLD, IN A WORLD

12   WHERE WE THINK YOU CAME OUT SUGGESTING MIGHT BE THE RIGHT WORLD

13   AND WHAT WE THINK IS THE RIGHT WORLD, YOU SHOULD REVERSE

14   ENGINEER AND YOU SHOULD MAKE SURE THAT THE JURY VERDICT IS

15   CAUSALLY CONNECTED TO THE EVIDENCE BASED UNDER THE PROPER LEGAL

16   THEORY.

17        SO THE PREVAIL HAS TO GO.  WRONG LEGAL THEORY ON A PRECISE

18   NUMBER WE KNOW ABOUT.

19        BUT LET'S CONSIDER WHAT WOULD HAPPEN IF WE WENT INTO

20   MR. MCELHINNY'S WORLD AND WE SAID, "OH, WE CAN MAKE IT UP AFTER

21   THE FACT, WE CAN COME UP WITH A NEW THEORY, AND WE CAN TAKE

22   FROM COLUMN A AND ADD TO COLUMN B AND COME UP WITH A NEW NUMBER

23   THAT WASN'T IN THE JURY'S MIND, BUT IT'S GOOD ENOUGH FOR JAZZ."

24        IF WE DID THAT, THEN WE WOULD RESPECTFULLY SUBMIT YOU HAVE

25   TO HAVE A NEW TRIAL ON DAMAGES AS TO EVERY PRODUCT, BECAUSE IN

```
 1    HIS WORLD, IF YOU CAN'T REVERSE ENGINEER AND SURGICALLY SELECT

 2    DIFFERENT ERRORS IN THE JURY'S RULING, THEN YOU HAVE TO RETRY

 3    EVERYTHING.

 4        SO IF YOU GO WITH HIS METHODOLOGY, THEN, AS MR. VERHOEVEN

 5    SAID BEFORE, YOU HAVE TO RETRY ALL THE PRODUCTS BECAUSE THE,

 6    THE ERROR FROM ONE WOULD INFECT THE JUDGMENTS ON THE OTHER.

 7        BUT IN OUR WORLD, YOU MIGHT BE ABLE TO SURGICALLY, NOW,

 8    EITHER REDUCE OR REMIT -- ENTER JUDGMENT FOR US OR REMIT UNDER

 9    RULE 59, YOU MIGHT BE ABLE TO LOP OFF A BUNCH OF NUMBERS, AND I

10    WANT TO HAVE THE CHANCE TO TELL YOU LATER ABOUT HOW YOU CAN LOP

11    OFF A BUNCH OF OTHERS.

12        BUT WE THINK THE PREVAIL IS SO EASY, IT'S A GREAT PLACE TO

13    START.  IT'S FIRST ALLIANCE 101 AND YOU SHOULD GIVE JUDGMENT TO

14    US FOR 58 MILLION.

15            THE COURT:  LET ME GIVE MR. MCELHINNY AN OPPORTUNITY

16    TO RESPOND ON FASCINATE, S 4G, S SHOWCASE, MESMERIZE, AND

17    VIBRANT.

18        IT DOES APPEAR THAT THEY DID 40 PERCENT OF SAMSUNG'S

19    PROFITS PLUS APPLE'S LOST PROFITS, WHICH SAMSUNG'S PROFITS

20    SHOULD BE THE SOLE REMEDY.

21        GO AHEAD, PLEASE.

22            MR. MCELHINNY:  YOUR HONOR, I DON'T WANT TO KEEP

23    REPEATING THE STUFF, BUT THIS IS --

24            THE COURT:  THEN YOU DON'T HAVE TO.  IF YOU DON'T

25    HAVE ANYTHING ELSE, THAT'S OKAY.
```

```
 1              MR. MCELHINNY:  THIS IS THE TRAP THAT YOU GET INTO.

 2              THE COURT:  YEAH.

 3              MR. MCELHINNY:  THIS IS WHAT THE SEVENTH AMENDMENT

 4    PROTECTS IS THE JURY'S PROCESS IN HOW THEY GET TO THESE

 5    NUMBERS.

 6         THE ANSWER IS, IF THERE IS ENOUGH EVIDENCE IN THE RECORD

 7    TO JUSTIFY THAT DAMAGE AWARD, THEN THE VERDICT SHOULD BE

 8    UPHELD.

 9         I'M -- YOU DIDN'T GIVE ME A CHANCE -- I NEED TO TALK ABOUT

10    THE PREVAIL JUST FOR A MINUTE.

11              THE COURT:  GO AHEAD.

12              MR. MCELHINNY:  IF I CAN HAVE THE CHART BACK UP

13    THERE ON THE PREVAIL?

14              THE COURT:  AND WHICH ONE IS -- UNFORTUNATELY, I

15    DON'T HAVE THE A VERSION THAT WAS THE ONE THAT WAS ADMITTED IN

16    THE TRIAL.  IT'S LOCKED UP IN OUR DUNGEONS DOWNSTAIRS, SO --

17              MS. SULLIVAN:  YOUR HONOR, THIS IS THE CORRECT ONE.

18              THE COURT:  OKAY.  THIS IS THE A?

19              MR. MCELHINNY:  YOUR HONOR, IN THE TRIAL EXHIBIT

20    WHICH IS ITS COMPANION, TRIAL EXHIBIT 1500 SET OUT THE NUMBER

21    OF SALES, THE NUMBER OF SALES OF EACH DEVICE.

22         AND THAT ONE, THE GALAXY PREVAIL, DURING THE ACCUSED

23    PERIOD, SOLD 2,255 PHONES.

24              THE COURT:  2,000 AND WHAT?

25              MR. MCELHINNY:  2,255 UNITS.
```

```
 1              THE COURT:  OKAY.
 2              MR. MCELHINNY:  WHAT MR. MUSIKA DID WAS HE SAID,
 3      "BECAUSE I THINK -- BECAUSE I ASSUME THAT IT INFRINGES ALL OF
 4      THESE PATENTS, FOR SOME NUMBER OF PHONES, I AM CLAIMING
 5      SAMSUNG'S PROFITS."  SO HE CLAIMED 142.8 MILLION.
 6          THERE'S NO DOUBLE RECOVERY.  SO THAT -- THAT REPRESENTS A
 7      PARTICULAR NUMBER OF UNITS ON WHICH WE CLAIMED SAMSUNG'S LOST
 8      PROFITS.
 9          ON -- AND WE DO THAT BECAUSE IT'S HIGHER.
10          ON OURS THEN, FOR THE REMAINING UNITS, WE CLAIMED OUR LOST
11      PROFITS, $8,500,000.
12          WE DID NOT CLAIM A ROYALTY FOR ANY OF THOSE UNITS.  IN
13      OTHER WORDS, MR. MUSIKA'S TESTIMONY WAS THAT ALL OF THESE
14      REFLECTED THAT -- THE 8 MILLION REFLECTED SALES THAT WE WOULD
15      HAVE MADE, AND HE EXPLAINED TO THE JURY HOW TO CALCULATE THAT
16      LOST PROFITS NUMBER.
17          SAMSUNG QUARRELS WITH THAT, BUT YOUR HONOR HAS ALREADY
18      UPHELD THAT IN THE DAUBERT.
19          HE WENT THROUGH ALL OF THE DETAILS.  HE WENT THROUGH THE
20      COMPETITION.  HE WENT THROUGH ALL OF THE ELEMENTS ABOUT HOW YOU
21      GET TO THE LOST PROFITS NUMBER.
22              THE COURT:  UM-HUM.
23              MR. MCELHINNY:  WHEN THEY WERE SITTING IN THE JURY
24      ROOM AND THE JURY DECIDED THAT THE PREVAIL DID NOT VIOLATE THE
25      DESIGN PATENTS --
```

```
 1                THE COURT:  UM-HUM.

 2                MR. MCELHINNY:  -- THEY HAD TO DO SOMETHING WITH THE

 3      UNITS THAT ARE REFLECTED IN THAT $142 MILLION NUMBER.

 4           THE QUESTION IS, WHAT DID THEY DO WITH IT?  WE DIDN'T ASK

 5      FOR A ROYALTY ON ANYTHING.  IF THEY HAD SIMPLY TRANSFERRED IT

 6      ALL OVER TO OUR PROFITS, THE NUMBER WOULD HAVE BEEN IN EXCESS

 7      OF $65 MILLION.  IF THEY HAD GIVEN US OUR PROFITS ON THOSE

 8      UNITS INSTEAD OF SAMSUNG'S PROFITS, THE NUMBER WOULD HAVE

 9      EXCEEDED THE VERDICT THEY CAME BACK WITH.

10           AND WE HAD SET OUT THE MATH THAT WAS IN THE RECORD IN OUR

11      BRIEF OF HOW TO GET TO THAT CALCULATION.

12           AND WE EXPLAINED TO THEM THAT "IF YOU DON'T FOLLOW OUR

13      ALLOCATION EXACTLY, HERE'S HOW YOU HAVE TO DO IT YOURSELF AND

14      HERE'S WHY WE'VE GIVEN YOU A MATRIX THAT ALLOWS YOU TO DO IT."

15           SO JUST THE SPECIFIC -- I MEAN, I'M -- I AM CAUGHT IN

16      MR. MCELHINNY'S WORLD BECAUSE I SPEND A LOT OF TIME IN IT --

17      BUT HERE --

18                THE COURT:  SO YOU'RE SAYING THEY ADDED 8,573,370

19      PLUS SOME PERCENTAGE OF THE UNITS THAT SAMSUNG SOLD?

20                MR. MCELHINNY:  I'M SAYING THEY TOOK THE UNIT NUMBER

21      FOR WHICH WE CLAIMED SAMSUNG'S PROFITS --

22                THE COURT:  WHICH IS THE $2 MILLION --

23                MR. MCELHINNY:  IT'S SOME PERCENTAGE OF THAT.  I

24      DON'T HAVE IN FRONT OF ME HOW MANY WE PUT IN EACH BUCKET.

25           BUT THEY TOOK WHATEVER THOSE UNITS WERE, AND I'M GUESSING
```

```
 1      THAT THEY AWARDED US EITHER OUR LOST PROFITS ON SOME OF THESE

 2      UNITS, AND MAYBE SOME ROYALTY ON SOME, OR MAYBE A PERCENTAGE

 3      BECAUSE THEY NEVER GAVE US EVERYTHING WE ASKED.  THEY GAVE US

 4      SOME PERCENTAGE OF WHAT WE WERE ASKING FOR IN THE LOST PROFITS.

 5              THE COURT:  SO WHAT ARE YOU SAYING IS THE CONNECTION

 6      BETWEEN APPLE'S LOST PROFITS HERE AND SAMSUNG'S PROFITS ON THIS

 7      CHART?

 8              MR. MCELHINNY:  I'M SAYING -- THERE IS NO

 9      CONNECTION.  I'M SAYING IF YOU DON'T GIVE US THE 142 MILLION --

10              THE COURT:  UM-HUM.

11              MR. MCELHINNY:  -- FOR THOSE UNITS --

12              THE COURT:  UM-HUM.

13              MR. MCELHINNY:  -- THE JURY WAS INSTRUCTED TO GIVE

14      US EITHER OUR LOST PROFITS ON THOSE SAME NUMBER OF UNITS OR A

15      ROYALTY.  AND THERE WAS EVIDENCE IN THE RECORD THAT WOULD HAVE

16      ALLOWED THEM TO MAKE THAT CALCULATION.

17              THE COURT:  RIGHT.  BUT THE REASONABLE ROYALTY THAT

18      YOU CONTEND MR. MUSIKA ADVOCATED DOES NOT GET YOU TO 58

19      MILLION.

20              MR. MCELHINNY:  BECAUSE -- BUT WHAT'S INTERESTING

21      ABOUT IT -- THAT'S WHY I WANTED TO POINT THIS OUT.  WE DIDN'T

22      ASK FOR A ROYALTY ON THOSE PHONES.  SO IF YOU BUY INTO

23      SAMSUNG'S LET'S TRY TO GET IN THERE AND FIGURE OUT WHAT THE

24      JURY DID, THE MOST LOGICAL IS THEY GAVE US SOME PERCENTAGE OF

25      OUR PROFITS --
```

1          THE COURT:  UM-HUM.

2          MR. MCELHINNY:  -- ON THE -- THEY USED THE PROFIT

3     NUMBER PER PHONE THAT WE HAD GIVEN THEM -- NO, ACTUALLY, THEY

4     USED WHATEVER PERCENTAGE OF THE PROFITS THEY WERE AWARDING US

5     BECAUSE THEY DIDN'T GIVE US EVERYTHING WE ASKED FOR, BUT THEY

6     USED WHATEVER PERCENTAGE OF OUR PROFITS AND APPLIED THAT TO THE

7     NUMBER OF UNITS THAT THEY WERE NOT GIVING US SAMSUNG'S PROFITS

8     NUMBER ON.

9          THAT IS -- THAT'S THE LOGICAL THING TO HAVE DONE UNDER THE

10    CIRCUMSTANCES.

11          THE COURT:  FOR BARELY 2 MILLION PHONES?  IT -- I

12    JUST DON'T THINK IT'S REALISTIC THAT EVEN APPLE'S LOST PROFITS

13    WOULD BE 58 MILLION.

14          MR. MCELHINNY:  WE -- I CAN GO THROUGH IT WITH YOU,

15    BUT WE LITERALLY SET OUT THE MATH THAT GETS THERE THAT'S OUT OF

16    THE RECORD IN OUR BRIEF.

17          THE COURT:  IT'S IN YOUR BRIEF.

18       OKAY.  LET ME HAVE YOU PLEASE --

19          MR. MCELHINNY:  I WANT TO --

20          THE COURT:  -- BRIEFLY ADDRESS FASCINATE, S 4G,

21    SHOWCASE, MESMERIZE AND VIBRANT, BECAUSE UNFORTUNATELY I STILL

22    HAVE A LOT OF OTHER QUESTIONS.

23          MR. MCELHINNY:  I UNDERSTAND.  MS. SULLIVAN CITED

24    YOU A DECISION FROM JUDGE RADER WHEN HE WAS A DISTRICT COURT

25    JUDGE.

1          WE ACTUALLY HAVE A DECISION FROM HIM FROM A MONTH AGO WHEN

2     HE WAS THE CHIEF JUDGE OF THE FEDERAL CIRCUIT, AND IT'S THE NS

3     ENERGY TRANSPORTATION GROUP CASE, AND IN THAT CASE, AS YOUR

4     HONOR WILL RECALL, THE EXPERT HAD GIVEN SEVERAL BASES FOR WHY

5     DAMAGES SHOULD BE ALLOWED, AND ONE OF THE REASONS THAT THE

6     EXPERT GAVE IS THE 25 PERCENT RULE, AND THE 25 PERCENT RULE WAS

7     ERRONEOUS.

8          SO IT WENT UP TO THE FEDERAL CIRCUIT, AND THE ANSWER WAS,

9     WELL, BECAUSE HE GAVE THE JURY A WRONG RULE, YOU SHOULD REVERSE

10    THIS DETERMINATION.

11         AND JUDGE RADER, WRITING FOR THE COURT, SAID, "NO, WE

12    DON'T DO THAT."  SPECIFICALLY, HE SAID, "EVEN IF DEFENDANTS HAD

13    NOT WAIVED THIS ARGUMENT, THIS COURT CANNOT 'CORRECT' A DAMAGES

14    FIGURE BY EXTRAPOLATING A ROYALTY RATE FROM THE JURY'S LUMP SUM

15    DAMAGES AWARD AND MULTIPLYING THAT ROYALTY RATE BY A REVISED

16    SALES BASE."

17         SO WHAT HE DID, AND WHAT THE FEDERAL CIRCUIT DID, WAS THEY

18    LOOKED AT WHETHER THE OVERALL VERDICT WAS SUPPORTED BY THE

19    EVIDENCE THAT WAS IN THE RECORD AND THEY AFFIRMED THE VERDICT.

20         AND FOR ALL OF THE PHONES THAT YOUR HONOR IS MENTIONING,

21    THE QUESTION IS WHETHER OR NOT WE PROVIDED SUFFICIENT EVIDENCE

22    OF LOST PROFITS, OF ROYALTY, OF SOME COMBINATION OF DAMAGES

23    THAT WOULD ALLOWED THE JURY TO GET TO THESE NUMBERS, AND WE

24    CLEARLY DID.

25         I -- LET'S KEEP THE CONTEXT HERE.  THE JURY AWARDED AN

```
 1      AGGREGATE NUMBER THAT WAS LOWER -- IT WAS LOWER THAN ANY OF OUR

 2      RANGES.  IT WAS WITHIN THE RANGE OF WHAT SAMSUNG'S EXPERT SAID

 3      THE NUMBER SHOULD BE.

 4           SO THE AGGREGATE NUMBER IS ACTUALLY BELOW THE MAJORITY

 5      THAT SAMSUNG'S EXPERT CONCEDED THE RECORD WOULD HAVE REFLECTED.

 6           AND SO THERE IS -- THIS IS NOT A MONSTROUS VERDICT.

 7      THERE'S NO -- THERE'S NO UNFAIRNESS DONE HERE.

 8           THE QUESTION IS WHETHER OR NOT SAMSUNG CAN LURE YOU INTO

 9      TRYING TO MAKE SURE THAT THIS JURY ACTED WITH THE MATHEMATICAL

10      PERFECTION THAT YOU WOULD HAVE BROUGHT TO IT PERSONALLY, AND

11      THAT'S THE SEVENTH AMENDMENT TRAP.

12           BUT THE ANSWER TO YOUR QUESTION ON THESE OTHER PHONES IS

13      IT WAS WELL WITHIN -- IT'S LESS THAN WE ASKED FOR, BUT IT'S

14      WELL WITHIN WHAT THE PATENT LAWS WOULD HAVE ALLOWED.  IT WAS

15      WELL WITHIN THE DAMAGES THAT WE SUFFERED.

16           WE DID NOT, IN THIS CASE, RECOVER ALL OF THE DAMAGES THAT

17      WE PROVED THAT WE SUFFERED.

18               THE COURT:  OKAY.  LET'S GO TO THE NOTICE DATE

19      ISSUE.  I DON'T KNOW IF YOU WANT TO COME BACK, MR. MCELHINNY,

20      OR -- ON THE NOTICE DATE.  WE'RE STILL ON REMITTITUR, AND THIS

21      WILL BE MY LAST GROUPING -- WELL, NO, NOT QUITE -- OF

22      REMITTITUR QUESTIONS.

23           I -- IT APPEARS THAT THE ONLY CASE AUTHORITY THAT APPLE

24      HAS FOR ARGUING THAT AN I.P. OWNER DOESN'T HAVE TO IDENTIFY THE

25      PATENT NUMBERS IS THE SICO DISTRICT COURT OF MASSACHUSETTS
```

1    CASE, AND IN THAT INSTANCE IT SEEMS DIFFERENT BECAUSE THE

2    ENTITY ACCUSED OF INFRINGEMENT SAID, "I DIDN'T BUY THOSE

3    PRODUCTS, DON'T BOTHER TO TELL ME."

4         SO I DON'T THINK WE HAVE THAT SITUATION HERE.

5         SO OTHER THAN SICO, WHICH IS NOT CONTROLLING, IT'S NOT IN

6    THE CIRCUIT, IT'S ANOTHER DISTRICT COURT --

7              MR. MCELHINNY:  I THINK WE ALSO CITED TO YOUR HONOR

8    THE MINKS VERSUS POLARIS CASE, WHICH IS A FEDERAL CIRCUIT CASE,

9    THAT TALKS ABOUT THE FACT THAT THE AMOUNT OF NOTICE CAN TURN ON

10   THE RELATIONSHIP WITH THE PARTIES, BETWEEN THE PARTIES, AND THE

11   LEVEL OF DETAIL -- THE TERM IS "SUBJECT TO THE FACTS AND

12   CIRCUMSTANCES."

13        LET ME -- I DON'T KNOW THE ORDER IN WHICH YOU WANT TO DO

14   THIS, BUT LET ME JUST MAKE -- I'LL MAKE THE FIRST POINT.

15             THE COURT:  OKAY.

16             MR. MCELHINNY:  WE DON'T THINK THE NOTICE IS

17   RELEVANT -- WE DON'T THINK THE NOTICE ISSUE IS EVEN ONE FOR

18   YOUR HONOR TO LOOK AT.

19             THE COURT:  WHY?

20             MR. MCELHINNY:  BECAUSE THE DAMAGE VERDICT THAT CAME

21   BACK REFLECTS A COMPROMISE THAT THE JURY DID AMONGST A NUMBER

22   OF FACTORS, INCLUDING THE COSTS FACTORS, WHICH WAS THE MAJOR

23   ONE, HOW MUCH OF SAMSUNG'S COSTS SHOULD BE ATTRIBUTABLE.

24        AND THERE IS NO WAY TO FIGURE OUT WHAT NOTICE DAY THEY

25   USED, WHETHER THEY AGREED WITH US ON NOTICE OR DIDN'T AGREE

```
 1        WITH US ON NOTICE, OR WHETHER OR NOT THEY WENT ON TO COSTS

 2        BECAUSE, AGAIN --

 3                CAN I HAVE THE SLIDE, PLEASE, OF THE VARIOUS DAMAGES?

 4                -- THIS IS WHAT THE TRIAL RECORD REFLECTED THE VARIOUS

 5        DAMAGES NUMBERS THAT WERE GIVEN TO THE JURY WERE.

 6                AND YOU CAN SEE THAT IF THEY -- ON THE 1.09 FROM SAMSUNG,

 7        THAT EVEN IF THEY HAD USED SAMSUNG'S NOTICE PERIOD AND OUR

 8        PROFIT PERCENTAGE, THEY AWARDED US LESS THAN THAT AMOUNT WOULD

 9        HAVE BEEN.

10                SO UNLESS YOU'RE GOING TO FIND ALL OF THESE, THE PROFITS

11        AND THE NOTICE, THEN THIS FALLS WITHIN THE RUBRIC THAT IF THERE

12        IS A REASONABLE BASIS, A RATIONAL BASIS ON THESE FACT ISSUES --

13        BECAUSE THESE ARE FACT ISSUES NOW.  EARLIER WE WERE TALKING

14        ABOUT WHAT HAPPENS IF THE LEGAL THEORY IS SET ASIDE.

15                BUT THE NINTH CIRCUIT MEASURE ON WHETHER THIS IS A FACTUAL

16        ISSUE IS MUCH MORE LENIENT.  I MEAN, THERE'S THE FAMOUS CASE IN

17        WHICH THERE WERE EIGHT ALLEGATIONS OF MALPRACTICE, THE FEDERAL

18        CIRCUIT SAID FOUR OF THEM WERE NO GOOD, BUT THEY STILL UPSET

19        THE VERDICT BECAUSE ANY ONE OF THE OTHER FOUR WOULD HAVE

20        JUSTIFIED IT.

21                SO THERE ARE MULTIPLE WAYS THAT THE JURY COULD HAVE GOTTEN

22        TO THIS NUMBER, AND BECAUSE NOTICE -- IF THERE'S NO WAY TO

23        DETERMINE THAT NOTICE WAS CRITICAL OR REQUIRED, THEN IT'S

24        NOT -- THIS IS LIKE THE 25 PERCENT NUMBER IN THE ENERGY CASE

25        THAT I JUST MENTIONED TO YOU.
```

```
 1          I JUST WANT TO MAKE THAT POINT.

 2               THE COURT:  UM-HUM.

 3               MR. MCELHINNY:  NOW, OUR POSITION IS THAT WE DID

 4     GIVE NOTICE.  THE --

 5               THE COURT:  I UNDERSTAND THAT.

 6               MR. MCELHINNY:  -- PARTIES MET IN AUGUST.

 7          AND REMEMBER WHO THEY ARE.  I MEAN, THIS IS OUR BIGGEST

 8     SUPPLIER.  THEY'RE GETTING CONFIDENTIAL INFORMATION FROM US.

 9          WE GIVE THEM A WRITTEN DOCUMENT THAT SAYS TO THEM, "WE

10     HAVE A PATENT PORTFOLIO OF 3500 PATENTS," AND IT SAYS, "YOU ARE

11     COPYING," AND IT SHOWS THE PHONES RIGHT NEXT TO EACH OTHER,

12     "YOU ARE COPYING OUR PATENTS AND YOU ARE COPYING OUR DESIGNS."

13          WE HAD THE TESTIMONY OF MR. JUE, WHO WAS THERE, WHO

14     TESTIFIED THAT THE DISCUSSIONS AT THAT MEETING WENT TO BOTH

15     PATENTS AND TO DESIGNS, AND THEN THERE WERE A LIST OF EXEMPLARY

16     PATENTS THAT WERE ATTACHED TO THAT.

17          AND WE KNOW THAT THE HISTORY FROM THEN ON IS THAT THE

18     PARTIES WENT INTO LICENSING NEGOTIATIONS OVER PORTFOLIOS.

19          SO THE CONCEPT THAT -- AND I GUESS THE MOST IMPORTANT

20     THING IS THIS WAS A FACT ISSUE SUBMITTED ON CORRECT

21     INSTRUCTIONS FROM YOUR HONOR TO THE JURY.  THE JURY DETERMINED

22     IN OUR FAVOR.

23          BUT ONE OF THE THINGS THAT HAS TO BE TAKEN INTO ACCOUNT IS

24     THERE'S NO CONTRARY TESTIMONY.  WE PUT ON PEOPLE WHO SAID, "WE

25     GAVE THEM NOTICE.  WE HAD THIS.  WE TALKED ABOUT THE PATENTS.
```

1    THEY HAD TO -- YOU KNOW, WE WENT INTO NEGOTIATIONS OVER

2    PORTFOLIOS.  WE THOUGHT THEY WERE GOING TO STOP COPYING."

3         THERE'S THIS -- THE APPLE PATENT PORTFOLIO WAS WHAT WAS

4    BEING ALLEGED, AND NO ONE FROM SAMSUNG CAME AND SAID, "THIS

5    TOOK US COMPLETELY BY SURPRISE.  WE DIDN'T KNOW ABOUT THIS.  WE

6    HAD NO NOTICE."

7         YOU PROBABLY THINK I'M ALREADY INTO CLOSING ARGUMENT, BUT

8    THIS IS A LAWYER ARGUMENT.  THE FACTS THAT WERE SUBMITTED TO

9    THE JURY WERE BASED ON THE, THE CROSS-EXAMINATION TESTIMONY

10   THAT WE HAD, THE DOCUMENTS, OUR WITNESSES' EXPLANATION OF THE

11   DOCUMENTS, AND YOUR INSTRUCTION, AND THE JURY FOUND IN OUR

12   FAVOR ON THAT AND THERE IS NO CONTRARY TESTIMONY.

13              THE COURT:  OKAY.  I'M NOT PERSUADED THAT THE LAW

14   DOESN'T REQUIRE THE IDENTIFICATION OF SPECIFIC PATENT NUMBERS.

15              MR. MCELHINNY:  I NEED --

16              THE COURT:  AND I DON'T WANT TO BE AVANT GARDE ON

17   THIS LAW.

18              MR. MCELHINNY:  I NEED TO CITE ANOTHER --

19              THE COURT:  SO TELL ME, ASSUMING I DISAGREE WITH

20   YOU, WHAT DO I DO ABOUT CAPTIVATE, CONTINUUM, DROID CHARGE,

21   EPIC 4G, AND GEM?

22              MR. MCELHINNY:  UNDER NINTH CIRCUIT AUTHORITY --

23              THE COURT:  UM-HUM.

24              MR. MCELHINNY:  -- AND UNDER THE ENERGY CASE WHICH I

25   JUST CITED TO YOU, THE ONE ABOUT 25 PERCENT --

```
 1                    THE COURT:  OKAY.

 2                    MR. MCELHINNY:  -- IF YOU AGREE THAT THE VERDICT

 3      THAT CAME IN WOULD HAVE BEEN SUSTAINED BY -- THE CLAIMS THAT

 4      DON'T REQUIRE NOTICE, FOR EXAMPLE, THE UNREGISTERED TRADEMARK

 5      DOES NOT REQUIRE NOTICE --

 6                    THE COURT:  YEAH.

 7                    MR. MCELHINNY:  -- SO IF THE CLAIMS -- AND FOR THE

 8      SALES THAT HAPPENED AFTER AND FOR AWARDING US ALL OF SAMSUNG'S

 9      COSTS, IF THOSE CLAIMS WOULD HAVE SUSTAINED THE JURY VERDICT,

10      THEN YOU DISAGREE WITH US ON NOTICE, BUT YOU SAY EXACTLY WHAT

11      JUDGE RADER SAID, WHICH IS --

12                    THE COURT:  WELL, LET'S GO TO CAPTIVATE.  IT WAS NOT

13      FOUND -- TWO OF THE TRADE DRESSES WERE FOUND NOT PROTECTABLE.

14      THE OTHER TWO, THERE'S NO EVOLUTION, SO NOTICE WAS REQUIRED.

15                    MR. MCELHINNY:  WELL, WE KNOW THEY GOT NOTICE OF THE

16      '381, YOUR HONOR.

17                    THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.

18                    MR. MCELHINNY:  I MEAN, AT A MINIMUM THEY GOT NOTICE

19      OF THE '381.

20                    THE COURT:  UH-HUH.

21                    MR. MCELHINNY:  WE THINK THEY GOT NOTICE OF ALL OF

22      THE PATENTS.

23                    THE COURT:  ALL RIGHT.  LET ME ASK YOU ANOTHER

24      QUESTION.

25                    LET'S SAY I STRIKE THE AWARD OF INFRINGER'S PROFITS FOR --
```

```
1    IT'S COMPLICATED BECAUSE IT'S DIFFERENT TIMES FOR DIFFERENT

2    PRODUCTS AND DIFFERENT PATENTS -- BUT LET'S SAY I STRIKE THE

3    INFRINGER'S PROFITS FOR THE PERIOD FROM THE LICENSING

4    PRESENTATION, AUGUST 4TH, 2010, UNTIL THE AMENDED COMPLAINT WAS

5    FILED, JUNE 16TH, 2011.

6        HOW SHOULD I THEN CALCULATE -- WELL, LET ME STEP BACK A

7    SECOND.

8        IF I STRIKE THE SAMSUNG PROFITS, I STILL NEED TO DO SOME

9    ACCOUNTING FOR THE '381 BETWEEN THE LICENSING PRESENTATION IN

10   AUGUST AND THE -- FOR CERTAIN PRODUCTS, UNTIL APRIL 15TH, THE

11   ORIGINAL COMPLAINT FILING DATE, AND FOR OTHER PRODUCTS

12   JUNE 16TH, 2011, THE AMENDED COMPLAINT FILING DATE BY WHICH --

13   YOU KNOW, AS SOON AS THE DESIGN PATENTS ARE IN THERE, THEN I

14   THINK I DON'T HAVE ANY PROBLEM WITH REGARD TO DAMAGES BECAUSE

15   THEY ARE ENTITLED TO GET -- TO AWARDED INFRINGER'S PROFITS IF

16   THEY THINK IT'S APPROPRIATE.

17            MR. MCELHINNY:  RIGHT.

18            THE COURT:  BUT I HAVE THAT WINDOW FOR SOME OF THE

19   PRODUCTS FROM THE LICENSING PRESENTATION TO THE FIRST

20   COMPLAINT, OR BETWEEN, AND I NEED TO FIGURE OUT SOME WAY TO DO

21   EITHER A REASONABLE ROYALTY OR LOST PROFITS FOR THE '381

22   BETWEEN AUGUST 4TH OF 2010 AND JUNE 16TH OF 2011.

23       SO WHAT SHOULD I DO?

24            MR. MCELHINNY:  I --

25            THE COURT:  DO YOU SEE WHAT I'M SAYING?
```

```
 1              MR. MCELHINNY:  I'M WORRIED THAT I'M NOT SEEING WHAT
 2    YOU'RE SAYING, AND I'M WORRIED ABOUT DOING THIS ON THE FLY.
 3              THE COURT:  YEAH.
 4              MR. MCELHINNY:  AND I GUESS WHAT I WOULD SUGGEST TO
 5    YOUR HONOR IS MAYBE, IN THE ROLLING SERIES OF ORDERS, THAT
 6    MAYBE YOU SHOULD ISSUE THE ORDERS AND MAYBE WE CAN TELL YOU
 7    WHAT THE EFFECT OF THOSE ORDERS IS, OR SHOULDN'T BE.
 8              THE COURT:  ALL RIGHT.  I WAS HOPING TO SEND YOU ALL
 9    ON YOUR MERRY WAY TO THE FEDERAL CIRCUIT AND --
10              MR. MCELHINNY:  THAT'S WHAT WE STILL WANT, YOUR
11    HONOR.  THAT'S WHAT WE'RE ARGUING FOR.
12              THE COURT:  I KNOW.
13              MR. MCELHINNY:  IF YOU ISSUE AN INJUNCTION, YOU'LL
14    SEND US ON TO THE FEDERAL CIRCUIT.
15              THE COURT:  ALL RIGHT.  WELL, LET ME HEAR FROM
16    SAMSUNG THEN.
17          WHAT -- I DO NEED TO ACCOUNT FOR THE '381 FOR WHICH NOTICE
18    WAS GIVEN ON AUGUST 4TH, 2010 BY SPECIFIC PATENT NUMBER, SO
19    THERE NEEDS TO BE SOME DAMAGES FOR THAT WINDOW BETWEEN THE
20    LICENSING PRESENTATION AND THE FILING OF THE AMENDED COMPLAINT.
21          AND THEN FOR THE '915 PATENT, I DO NEED TO PROVIDE AN
22    AWARD, SOME DAMAGES FOR THE PERIOD FROM THE ORIGINAL COMPLAINT
23    THROUGH THE FILING OF THE AMENDED COMPLAINT FOR CERTAIN
24    PRODUCTS.
25              MS. SULLIVAN:  I'M WITH YOU, YOUR HONOR.
```

```
 1              THE COURT:  YEAH.

 2              MS. SULLIVAN:  COULD I JUST START BY EMPHATICALLY

 3    AGREEING WITH YOU THAT ACTUAL NOTICE IS REQUIRED AND THE

 4    ANCIENT DISTRICT OF MASSACHUSETTS SICO CASE THAT MR. MCELHINNY

 5    CITED IS NOT THE GUIDE HERE.

 6         THE GUIDE IS THE FEDERAL CIRCUIT CASES WE CITED IN OUR

 7    JMOL BRIEF ON PAGE 28, AND I'LL REFER YOU SPECIFICALLY TO FUNAI

 8    ELECTRIC COMPANY VERSUS DAEWOO ELECTRIC, 616 F.3D 1357.

 9              SO PLEASE DON'T BE AVANT GARDE.  IF THERE'S NO MARKING,

10    THEN WE HAVE TO HAVE ACTUAL NOTICE IN THE FORM OF A DEMAND, AS

11    WAS AT ISSUE IN FUNAI, WHICH WASN'T PRESENT HERE.

12              THE COURT:  UM-HUM.

13              MS. SULLIVAN:  SO AT MOST, I MEAN, OBVIOUSLY THE

14    '381 ON AUGUST 4TH, 2010 WAS BURIED IN A LIST OF 75 PATENTS.

15    WE DON'T CONCEDE THAT THAT WAS PROPER NOTICE.

16         BUT EVEN IF WE GIVE YOU THAT, YOUR HONOR, YOU'RE RIGHT,

17    THAT'S THE ONLY PATENT THAT YOU HAVE TO FIGURE OUT DAMAGES FOR

18    FROM AUGUST 4TH, 2010 UNTIL APRIL 15TH OF 2011.

19         IF I HAVE THE LIST CORRECT, YOUR HONOR, IT'S THE '915 AND

20    THE '677 THAT WE GET NOTICE OF ON APRIL 15TH IN THE ORIGINAL

21    COMPLAINT.

22              THE COURT:  THAT'S RIGHT.

23              MS. SULLIVAN:  AND WE GET OUR FIRST NOTICE ON '305,

24    '889, '163, AND '087 ONLY WITH THE FILING OF THE AMENDED

25    COMPLAINT ON JUNE 6TH, '11.
```

1      NOW, WE THINK, YOUR HONOR, THAT IT'S LEGAL ERROR -- YOU

2  PROPERLY INSTRUCTED THE JURY TO FIND DAMAGES ONLY FROM THE

3  POINT OF ACTUAL NOTICE, AND THE JURY DIDN'T DO THAT BECAUSE THE

4  JURY TOOK 40 PERCENT OF SAMSUNG'S PROFITS AS CALCULATED BY

5  MR. MUSIKA, APPLE'S EXPERT, RUNNING FROM AUGUST 4TH, 2010.

6      SO THE JURY HAS INCLUDED A LOT OF DAMAGES THAT ARE LEGALLY

7  ERRONEOUS UNDER THE CORRECT NOTICE DATES.

8      SO I JUST WANT TO AGREE WITH YOU, YOUR HONOR, THAT'S A

9  LEGAL ERROR.  WE HAVE TO TAKE IT UP AND GET THE DAMAGES

10  REVERSED IN THE CIRCUIT UNLESS YOU ENTER JUDGMENT TAKING THEM

11  OUT OR REMIT.

12      NOW, WE'VE TRIED TO DO THE CALCULATION FOR YOU, IT'S IN

13  OUR BRIEF, BUT IF I COULD JUST HAVE SLIDE 4 TO BEGIN WITH?

14      I DIVIDED THIS, YOUR HONOR, INTO TWO GROUPS, THE 11 PHONES

15  ON WHICH THERE WAS DESIGN PATENT AND NO TRADE DRESS, THOSE ARE

16  THE PHONES THAT -- IF YOU -- SO THIS IS JUST REPLAYING THE

17  NUMBERS IN OUR BRIEF IN SHORT FORM, YOUR HONOR.

18          THE COURT:  UM-HUM.

19          MS. SULLIVAN:  IF YOU WERE TO CORRECT FOR ACTUAL

20  NOTICE DATES ON THOSE 11 PHONES, YOU WOULD REMIT OR ENTER

21  JUDGMENT REDUCING THE AWARD, IF YOU LOOK OVER TO THE FOURTH

22  COLUMN FROM THE LEFT, IN THE AMOUNT OF $253,328,000.  ALL

23  RIGHT?  THAT'S THE NUMBER THAT CORRECTS FOR THE NOTICE DATE.

24  THAT'S THE MATH THAT'S IN THE WAGNER DECLARATION THAT WE

25  SUBMITTED WITH OUR JMOL OR NEW TRIAL OR REMITTITUR MOTION.

 1           AND IF WE COULD GO TO THE NEXT SLIDE, THERE'S A SLIDE

 2     NUMBER 5.  THIS IS A LITTLE BIT MORE COMPLICATED AND I

 3     APOLOGIZE, YOUR HONOR, BUT THERE ARE FIVE PHONES FOR WHICH YOU

 4     CORRECTLY SAID BEFORE WE KNOW TO THE DOLLAR, TO QUOTE FIRST

 5     ALLIANCE MORTGAGE, WHAT THE JURY DID.  IT GAVE 40 PERCENT OF

 6     APPLE'S -- OF SAMSUNG'S PROFITS, 40 PERCENT OF SAMSUNG'S

 7     PROFITS, PLUS A PORTION OF APPLE'S PROFITS.

 8           SO AS I ARGUED TO YOU BEFORE, I GAVE YOU THE FOUR REASONS

 9     WE THINK THERE'S LEGALLY INSUFFICIENT EVIDENCE OF LOST PROFITS

10     DAMAGES, AND SO YOU SHOULD STRIKE THE LOST PROFITS DAMAGES.

11           SO WHAT WE'VE RESPECTFULLY URGED HERE, YOUR HONOR, IS IF

12     YOU GO IN THE FIRST ROW, YOU WOULD CORRECT FOR THE INCORRECT

13     INCLUSION OF LOST PROFITS IN THE DAMAGES AWARD FOR THOSE FIVE

14     PHONES.

15           AND THEN AFTER YOU DO THAT, YOU GO TO THE SECOND ROW, AND

16     YOU GO FOR THOSE FIVE PHONES AND NOW YOU CORRECT FOR NOTICE

17     DATE.

18           AND THEN YOU TAKE THE DAMAGES DOWN $220,952 BEYOND THE

19     70,000 -- STRIKE THAT -- $220,952,000 AFTER YOU'VE TAKEN 70

20     MILLION OFF FOR LOST PROFITS.

21           ADDING UP THOSE THREE SETS OF REDUCTIONS, YOUR HONOR, YOU

22     WOULD TAKE THE DAMAGES JUDGMENT DOWN ABOUT $600 MILLION.

23           WHAT WOULD BE LEFT, AND WE CAN TALK ABOUT IT LATER, IS

24     AMOUNTS WE THINK WERE IMPROPERLY AWARDED BECAUSE THEY'RE NOT

25     BASED ON PROPER CAUSATION.

```
 1        BUT IF YOU TAKE -- THESE NUMBERS ARE ALL IN OUR BRIEF --

 2   YOU'D REMIT -- IF YOU CAN GO BACK TO SLIDE 4 -- YOU'D TAKE IT

 3   DOWN 253 MILLION FOR THE CORRECT NOTICE DATES ON THE 11 PHONES

 4   FOUND TO INFRINGE DESIGN PATENTS ONLY; AND THEN IF WE GO BACK

 5   TO SLIDE 5, YOU TAKE IT DOWN ON THE FIVE PHONES FOUND TO

 6   INFRINGE BOTH DESIGN PATENT AND TO DILUTE TRADE DRESS, YOU TAKE

 7   IT DOWN 70 MILLION BECAUSE THERE'S NO BASIS IN THE RECORD FOR A

 8   LEGALLY CORRECT FINDING ON LOST PROFITS; AND THEN YOU TAKE IT

 9   DOWN AGAIN BY $221 MILLION TO CORRECT FOR NOTICE DATE.

10        NOW, I CAN'T BE CERTAIN, YOUR HONOR, THAT I'VE ANSWERED

11   YOUR ORIGINAL QUESTION, WHAT DO YOU DO WITH THE '381?

12        ON THE '381, YOU CAN, OF COURSE, WORK WITH LOST PROFITS

13   AND REASONABLE ROYALTY FOR THAT ADDITIONAL PERIOD FROM

14   AUGUST 4TH TO APRIL --

15             THE COURT:  UM-HUM.

16             MS. SULLIVAN:  -- APRIL OR JUNE OF '11.

17        THE ONLY PROBLEM, YOUR HONOR, IS THAT, YOU KNOW, WE'RE --

18   THE '381 IS -- HAS BEEN SUBJECT TO FIRST OFFICE RE-EXAM.

19   THERE'S A COLORABLE INVALIDITY DEFENSE NOW.

20        I'M NOT SURE THAT -- HOW THE TIMING WOULD GO FOR YOU TO

21   RESOLVE DAMAGES FOR '381.  IT MIGHT BE MORE PRUDENT TO WAIT AND

22   SEE IF, YOU KNOW, DAMAGES ARE APPROPRIATE.

23        BUT IN ANY EVENT, THE MAIN POINT I WANT TO MAKE HERE IS,

24   YOUR HONOR, WE'VE GIVEN YOU TWO LEGAL ERRORS THAT YOU CAN

25   CORRECT WITH MATHEMATICAL CERTAINTY AS FIRST ALLIANCE -- AND I
```

1    THINK YOU LIVE IN THE NINTH CIRCUIT'S WORLD, NOT IN

2    MR. MCELHINNY'S WORLD, BUT IN THE NINTH CIRCUIT'S WORLD AS TO

3    THIS ISSUE -- AND AS TO THIS ISSUE, YOU HAVE METICULOUSLY SEEN

4    A WAY TO REDUCE THE DAMAGES AWARD BASED ON NOTICE DATE.

5         YOU DID IT FOR PREVAIL, TOO.  WE'VE GIVEN YOU THE PREVAIL

6    BASES.  IT'S THE WRONG DAMAGES THEORY AND THIS IS THE WRONG

7    NOTICE DATE.

8         ONCE YOU CORRECT FOR NOTICE DATES, YOU WOULD EITHER ENTER

9    JUDGMENT IF YOU GO THE RULE 50 ROUTE, OR YOU WOULD REMIT IF YOU

10   GO THE RULE 59 ROUTE, WHICH IS COMPLETELY WITHIN YOUR

11   DISCRETION.

12        IF YOU REMIT, IT GOES UP TO THE CIRCUIT ON AN ABUSE OF

13   DISCRETION STANDARD AND YOU HAVE ABSOLUTELY ACTED WITHIN YOUR

14   DISCRETION IF YOU TAKE IT DOWN $600 MILLION TO CORRECT FOR

15   NOTICE DATE.

16        AND I CAN'T THINK OF A CLEARER EXAMPLE OF WHAT THE NINTH

17   CIRCUIT WAS TALKING ABOUT WHEN IT SAID IF YOU CAN FIND THAT THE

18   JURY RESTED DAMAGES ON A LEGALLY ERRONEOUS BASIS OF LAW WHEN

19   THEY WERE CORRECTLY INSTRUCTED, THERE'S REALLY NO WAY TO KEEP

20   THOSE DAMAGES IN THE CASE.

21        SO ON '381, I'M NOT SURE WE'VE CAPTURED IT, BUT BASICALLY

22   WE'VE CAPTURED IT IN THE $600 MILLION REDUCTION THAT TAKES IT

23   DOWN FOR NOTICE DATE.

24        THE ONLY EXTRA DETAIL IS WE DO THE LOST PROFITS FIRST ON

25   THOSE FIVE PHONES THAT HAVE THE TWO COMPONENTS.

```
 1        YOUR HONOR, IF I COULD TAKE THIS OPPORTUNITY TO GO BACK

 2   ONE TOPIC, I JUST WANTED TO SAY WHY MR. MCELHINNY'S LOST

 3   PROFITS BUCKETS MOVING ON THE PREVAIL WAS COMPLETELY FANCIFUL.

 4        WITH ALL RESPECT TO MY FRIEND MR. MCELHINNY, THE JURY

 5   COULDN'T HAVE MOVED LOST PROFITS BETWEEN BUCKETS AS HE

 6   DESCRIBED BECAUSE MR. MUSIKA -- WHY DO YOU THINK MR. MUSIKA

 7   ONLY CAME UP WITH $8.7 MILLION IN APPLE'S LOST PROFITS?  HE --

 8   MR. MUSIKA WAS APPLE'S EXPERT.  HE HAD NO INTEREST IN COMING UP

 9   WITH A LOWER LOST PROFITS NUMBER.

10        HE DID IT BECAUSE, AS MR. MCELHINNY FAILED TO MENTION,

11   THERE WERE DESIGN AROUND PERIODS AND HE COULD ONLY CALCULATE

12   LOST PROFITS TO APPLE DURING THE DESIGN AROUND PERIOD.  ONCE WE

13   HAD DESIGNED AROUND, THERE WERE NO MORE LOST PROFITS THAT COULD

14   BE ATTRIBUTED TO ANY INFRINGEMENT.

15        AND THE JURY WAS NOT GIVEN ANY WAY TO DISREGARD, TO

16   REALLOCATE LOST PROFITS FROM ONE BUCKET TO ANOTHER BECAUSE THEY

17   WEREN'T TOLD, APPLE DIDN'T TELL THEM, HOW TO MOVE THINGS AMONG

18   THE LOST PROFITS BUCKETS.

19        SO THAT ENTIRE ANALYSIS MR. MCELHINNY DID TO TRY TO

20   REHABILITATE THE PREVAIL WAS INCORRECT, AND I JUST WANT TO

21   FOCUS ON TWO WORDS, DESIGN AROUND PERIOD.  THAT WAS THE KEY TO

22   MUSIKA NUMBER AND THAT'S WHY HE GAVE 8.7 MILLION.

23        I'M SORRY TO TAKE YOU BACK TO THAT.  I JUST WANTED TO MAKE

24   THAT ONE QUICK CORRECTION.

25        DO YOU HAVE ANY FURTHER QUESTIONS ON ACTUAL NOTICE?
```

```
 1              THE COURT:  NO, THANK YOU.

 2              MS. SULLIVAN:  THANK YOU.

 3              THE COURT:  OKAY.  LET'S GO TO THE '915 UTILITY

 4     PATENT.  FROM THE BRIEFING IT APPEARS THAT BOTH SIDES AGREE

 5     THAT THE JURY VERDICT WAS INCONSISTENT IN THAT REGARDLESS OF

 6     WHETHER IT WAS ANDROID 2.2.1 OR 2.2.2.  CERTAIN PRODUCTS WERE

 7     DEEMED TO INFRINGE THE '915 AND CERTAIN OTHERS WERE NOT, BUT

 8     THEY BASICALLY HAD THE SAME ACCUSED FEATURES.

 9          SO WHAT AM I SUPPOSED TO DO NOW?  DO WE NEED -- ON THE

10     OTHER HAND, I WILL SAY THERE'S EVIDENCE IN THE RECORD TO GO

11     EITHER WAY ON EACH OF THESE PRODUCTS, SO IT'S POSSIBLE THAT THE

12     JURY JUST DECIDED ONE WAY AS TO THREE AND THE OTHER WAY AS TO

13     THE OTHERS.

14          BUT LET ME HEAR FROM MR. VERHOEVEN, PLEASE.

15              MR. VERHOEVEN:  YES, REALLY BRIEFLY, YOUR HONOR.

16          THE JURY VERDICT IS CLEARLY, WHEN YOU GET BACK AND STUDY

17     THE SOURCE CODES INVOLVED AND WHATNOT, INCONSISTENT WITH

18     RESPECT TO CERTAIN OF THE PRODUCTS VERSUS OTHERS.

19          AND IT GOES BACK TO, I THINK, TO THE REQUIREMENT -- IT

20     GOES, AT LEAST IN OUR VIEW, YOUR HONOR, WE HAD A CERTAIN AMOUNT

21     OF TIME TO TRY THIS CASE AND APPLE ELECTED TO TRY MANY, MANY

22     DIFFERENT CLAIMS AND ONE OF THE -- ONE OF THE WAYS -- BASICALLY

23     THE ONLY WAY THEY WERE ABLE TO DO THAT WITHIN THE TIME

24     PERIOD -- AND IT'S NOT JUST THE '915, IT WAS THE OTHER UTILITY

25     PATENTS, IT WAS THE DESIGN PATENTS AS WELL -- BUT USING THE
```

1    '915 AS AN EXAMPLE IS THEY PUT AN EXPERT WITNESS ON THE STAND

2    WHO ONLY TALKED ON AN ELEMENT-BY-ELEMENT BASIS ON THE ONE

3    PRODUCT, AND THE LAW IS VERY -- AND THEN AFTER DOING THAT, VERY

4    QUICKLY, IN A MATTER OF 15 MINUTES MAYBE, THEN THEY PUT UP ON

5    THE SCREEN A DEMONSTRATIVE OF 22-SOME ODD OTHER PRODUCTS AND

6    SAID, "DO YOU HAVE AN OPINION AS TO WHETHER OR NOT THESE

7    22-SOME ODD OTHER PRODUCTS INFRINGE?"

8         ANSWER, "YES.  I THINK THEY ALL INFRINGE."

9         FULL STOP.  THAT'S IT.  THAT'S THE TESTIMONY.

10        SO THE FIRST POINT, YOUR HONOR, IS WE'RE IN THIS SITUATION

11   BECAUSE THE PLAINTIFF DIDN'T MEET THEIR BURDEN OF PROOF ON

12   PROVING ON AN ELEMENT-BY-ELEMENT BASIS FOR EACH OF THE ACCUSED

13   PHONES THAT THERE IS -- THAT THE ACCUSED PHONES MEET EACH

14   ELEMENT.

15        AND THE LAW IS VERY CLEAR -- WE CITED IT IN OUR BRIEF, THE

16   PENNWALT CORP. VERSUS DURAN CASE -- THAT IT IS THE PLAINTIFF'S

17   BURDEN, THE PATENTEE'S BURDEN TO PRESENT EVIDENCE ON AN

18   ELEMENT-BY-ELEMENT BASIS FOR EACH PRODUCT THAT THERE'S

19   INFRINGEMENT.

20        IF THEY DON'T DO THAT, YOUR HONOR, THEY FAIL TO MEET THEIR

21   BURDEN OF PROOF.

22        AND HERE ON THE '941, THE PLAINTIFFS -- OR APPLE'S EXPERT,

23   DR. SINGH ON THIS PATENT, PERFORMED AN ELEMENT-BY-ELEMENT

24   ANALYSIS ON ONLY A SINGLE PRODUCT, THE GALAXY S II BY T-MOBILE.

25        AND AS TO ALL THE OTHER 23 SAMSUNG PRODUCTS THAT HE

```
 1        ACCUSED, HE MERELY FLASHED UP A DEMONSTRATIVE, WHICH ISN'T EVEN

 2        EVIDENCE, AND SAID, "I'VE LOOKED AT THESE PHONES AND THEY

 3        INFRINGE, TOO."

 4             AND AS A LEGAL PROPOSITION, YOUR HONOR, AND WE PUT THIS IN

 5        OUR BRIEFS, WE SUBMIT THAT IS NOT SUFFICIENT FOR THEM TO MEET

 6        THEIR BURDEN OF PROOF.

 7             AND ESPECIALLY WHEN -- WELL, LET ME MOVE ON.

 8             SO WHAT'S THE RESULT?  THE RESULT IS THE JURY DOESN'T HAVE

 9        ENOUGH INFORMATION TO DISTINGUISH BETWEEN THESE PRODUCTS AND

10        THEY GET AN INCONSISTENT VERDICT.

11             SO I THINK IT TIES BACK, YOUR HONOR, TO THE WAY THIS CASE

12        WAS TRIED AND THAT THE COURT SHOULD FIND THAT THE PLAINTIFFS

13        SIMPLY DIDN'T DO THAT ELEMENT-BY-ELEMENT ANALYSIS.  THEY DIDN'T

14        MEET THEIR BURDEN OF PROOF.

15             BUT CERTAINLY THE INCONSISTENT VERDICT IS ANOTHER REASON

16        SUPPORTING A FINDING BY THIS COURT THAT THIS -- THAT THIS

17        PATENT NEEDS TO BE RETRIED.

18             WE'VE GOT AN INDISPUTABLY INCONSISTENT VERDICT, AND I CAN

19        GO THROUGH IT IF YOU WANT WITH THE DIFFERENT PHONES.  I THINK

20        YOU HAVE IT IN HAND.

21                  THE COURT:  NO, I HAVE IT.  IT'S THE ACE, THE

22        INTERCEPT, AND THE REPLENISH.

23                  MR. VERHOEVEN:  RIGHT.

24                  THE COURT:  SO I DO HAVE THAT.

25                  MR. VERHOEVEN:  AND JUST SO -- JUST FINALLY, YOUR
```

1    HONOR, THERE WERE SEVEN DIFFERENT VERSIONS OF SOURCE CODE

2    LOADED ON TO THESE DIFFERENT 24 PHONES.

3         THIS EXPERT WITNESS DID NOT GO THROUGH DIFFERENT VERSIONS

4    OF SOURCE CODE FOR DIFFERENT PHONES.  HE SIMPLY SAID,

5    CONCLUSORILY, "I'VE LOOKED AT THIS ONE PHONE.  ALL THE REST

6    INFRINGE."

7         AND FOR US, THAT DOESN'T PRESENT US AN ADEQUATE

8    OPPORTUNITY TO CHALLENGE HIM AND IT DOESN'T PRESENT THE JURY

9    WITH ENOUGH INFORMATION TO MAKE A REASONED, PRODUCT-BY-PRODUCT

10   DIFFERENTIATION ON THESE DIFFERENT PHONES THAT HAD DIFFERENT

11   SOURCE CODES, DIFFERENT FEATURES.

12        JUST THROWING UP A DEMONSTRATIVE WITH 23 OTHER PHONES AND

13   HAVING TWO OR THREE QUESTIONS AND ANSWERS ABOUT THOSE PHONES IN

14   GENERAL WITH NO ELEMENT-BY-ELEMENT ANALYSIS, NO REPRESENTATIVE

15   PRODUCTS AGREEMENT HERE, YOUR HONOR, IS NOT ENOUGH FOR THE

16   PLAINTIFF TO MEET ITS BURDEN ON THESE PHONES.

17        AND THAT IN AND OF ITSELF MERITS AN OVERTURNING OF THE

18   JURY VERDICT AS TO THIS PATENT AND THE, THE -- THE SOMEWHAT

19   UNSURPRISING FACT THAT YOU'VE GOT A DEMONSTRABLY INCONSISTENT

20   RULING BY THE JURY ACROSS THESE PHONES IS A PRODUCT OF THAT,

21   YOUR HONOR, BUT IT IS ALSO ANOTHER BASIS WHY WE NEED TO REVERSE

22   THE VERDICT HERE AND RETRY THIS PATENT.

23             THE COURT:  ALL RIGHT.  LET ME HEAR FROM APPLE.

24        I THOUGHT, IN YOUR OPPOSITION, YOU WOULD ACTUALLY SAY,

25   "OH, NO.  IT'S BECAUSE THESE THREE PRODUCTS ARE ACTUALLY

```
 1        DIFFERENT."

 2             BUT THEN YOUR RESPONSE WAS, "OH, THEY MUST HAVE LOOKED ON

 3        THE WRONG WEBSITE OR NOT BEEN ABLE TO GET" -- I WAS A LITTLE

 4        SURPRISED BY YOUR RESPONSE.

 5             GO AHEAD, PLEASE.

 6                  MR. MCELHINNY:  OUR RESPONSE IS DRIVEN, YOUR HONOR,

 7        BY THE CASE LAW --

 8                  THE COURT:  UM-HUM.

 9                  MR. MCELHINNY:  -- AND BY THE NINTH CIRCUIT'S

10        ADMONITION IN ONE OF MY FAVORITE CASES, THE L.A. NUT HOUSE

11        CASE --

12                  THE COURT:  OKAY.

13                  MR. MCELHINNY:  -- IN WHICH THE TRIAL COURT HAS

14        INSTRUCTED THAT IF REASONABLY POSSIBLE, RESOLVE INCONSISTENCY

15        IN FAVOR OF SUSTAINING THE JUDGMENT.

16             SO YOU'RE CORRECT THAT WE HAVE TWO POSITIONS ON THIS.

17                  THE COURT:  UM-HUM.

18                  MR. MCELHINNY:  IN THE FIRST ONE ABOUT WHAT TO DO

19        ABOUT IT --

20                  THE COURT:  UM-HUM.

21                  MR. MCELHINNY:  -- THE QUESTION IS NOT WHETHER THE

22        VERDICT IS INCONSISTENT.  IT'S WHETHER OR NOT IT'S

23        IRRECONCILABLY INCONSISTENT.

24             AND WHEN YOU READ THE CASES, THE ONES THAT ARE

25        IRRECONCILABLY ARE NOT WHEN THERE'S A FACTUAL DIFFERENCE.  IT'S
```

```
 1        WHEN THERE'S A LEGAL IMPOSSIBILITY.

 2            SO THE FEDERAL CIRCUIT HAS REVERSED WHEN A, A DEPENDENT

 3    CLAIM WAS FOUND TO BE VALID AND AN INDEPENDENT -- A DEPENDENT

 4    CLAIM WAS FOUND TO BE OBVIOUS AND AN INDEPENDENT CLAIM WAS

 5    FOUND TO BE INVALID, AND THAT'S A LEGAL IMPOSSIBILITY AND SO

 6    THEY SAID THAT THAT WAS IRRECONCILABLE.

 7            HERE THE QUESTION IS, IS THERE ANY FACTUAL -- COULD THERE

 8    HAVE BEEN ANY FACTUAL WAY TO EXPLAIN HOW THEY GOT TO THIS

 9    DECISION?

10            AND THE ANSWER IS, WE GAVE THEM THE PHONES.  I MEAN, WE

11    DON'T KNOW WHAT THEY DID IN THERE.  WE DON'T KNOW IF THEY TRIED

12    IT.  THEY CERTAINLY WERE TOLD TO SEE IF IT INFRINGED, AND IF

13    FOR SOME REASON THEY DIDN'T THINK IT DID WHEN THEY TRIED THE

14    PHONES, THAT EXPLAINS HOW THEY GOT TO THEIR VERDICT AND THAT

15    DOES IT.

16            IT IS ALSO OUR POSITION THAT GIVEN THE EVIDENCE AND GIVEN

17    SAMSUNG'S ADMISSION -- NOW, OF COURSE, SAMSUNG -- SAMSUNG

18    DIDN'T ADMIT THAT ALL THESE PHONES WERE THE SAME.  THEY TOOK

19    THE POSITION THAT MR. VERHOEVEN IS SAYING NOW, WHICH IS EVERY

20    PHONE IS DIFFERENT AND YOU'VE GOT TO DO EACH ONE AND ALL OF

21    REST OF THAT KIND OF STUFF.

22            BUT NOW THEY HAVE ADMITTED, NOW THEY HAVE ADMITTED THAT

23    THESE PHONES ARE EXACTLY THE SAME AND THEY OPERATE EXACTLY THE

24    SAME, SO WE THINK THE PROPER THING HERE NOW IS A JMOL IN OUR

25    FAVOR BASED ON THEIR ADMISSION AND BASED ON THE FACT THAT,
```

1    GIVEN THAT ADMISSION, NO REASONABLE JURY COULD HAVE FOUND THAT

2    THEY DON'T INFRINGE.

3         I -- JUST FOR MY RECORD, YOUR HONOR, I WANT TO MAKE ONE

4    POINT.

5              THE COURT:  YEAH, OKAY.

6              MR. MCELHINNY:  SORRY.  YOU WENT BACK TO YOU DON'T

7    WANT TO BE A CUTTING EDGE JUDGE ON THIS NOTICE ISSUE.

8         I JUST WANT TO MAKE SURE YOUR HONOR IS CONSIDERING THE

9    SUPREME COURT DECISION IN GLOBAL-TECH VERSUS S.E.B. WHERE THEY

10   LOOKED AT THE INDUCEMENT QUESTION ABOUT NOTICE AND THEY FOUND

11   THAT WILLFUL BLINDNESS, WILLFUL BLINDNESS IN THE FACE OF -- THE

12   FACTS ARE EXACTLY THE SAME, SOMEBODY WHO COPIED AN ELECTRONICS

13   PRODUCT ON THE MARKET IN THE UNITED STATES ABSOLUTELY HAD TO

14   KNOW THAT THERE WERE PATENTS, ABSOLUTELY HAD TO KNOW AND, IN

15   OUR CASE, WHERE THEY WERE TOLD AND WENT FORWARD TAKING THE RISK

16   AND THE SUPREME COURT SAID THAT WILLFUL BLINDNESS WILL BE THE

17   EQUIVALENT OF NOTICE IN A STATUTE THAT REQUIRES IT.

18              THE COURT:  OKAY.  LET'S GO TO THE -- TO SAMSUNG'S

19   '941 UTILITY PATENT.  I'M GOING TO GIVE SAMSUNG A FEW MINUTES

20   TO EXPLAIN -- I KNOW THAT DR. WILLIAMS DID TESTIFY AS TO WHY HE

21   THOUGHT AGARWAL DID NOT ANTICIPATE, BUT WAS THERE ANYTHING ELSE

22   IN THE RECORD THAT SAMSUNG PROVIDED THAT WAS DEFICIENT ABOUT

23   APPLE'S ANTICIPATION SHOWING AT TRIAL?

24              MR. VERHOEVEN:  I THINK WHAT WE HAVE IS IN OUR

25   BRIEFS, YOUR HONOR.

```
 1              THE COURT:  OKAY.  ALL RIGHT.  SO I WOULD ASSUME,
 2    THEN, IT WAS DR. WILLIAMS' TESTIMONY THEN, DOES THAT SOUND
 3    RIGHT, THAT LAID OUT WHAT THE DEFICIENCIES WERE?
 4              MR. VERHOEVEN:  YES.
 5              MR. LEE:  WELL --
 6              THE COURT:  OKAY.
 7              MR. LEE:  YOUR HONOR, IF I COULD?
 8              THE COURT:  YES.
 9              MR. LEE:  DR. WILLIAM'S TESTIMONY WAS LESS THAN A
10    MINUTE ON THIS ISSUE.  IT'S AT PAGE 3658, LINE 16 TO 3659, LINE
11    17.  THAT'S THE SUM TOTAL OF DR. WILLIAMS' TESTIMONY ON THIS
12    ISSUE, AND IT IS CONCLUSORY AND LEGALLY INSUFFICIENT.
13              THE COURT:  LET ME ASK, MS. SHORTRIDGE, WHEN DO YOU
14    WANT TO TAKE A BREAK?
15         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE COURT
16    REPORTER.)
17              THE COURT:  ALL RIGHT.  LET'S GO TO APPLE'S JMOL.
18    SO WHAT IS -- IS THAT YOU, MR. MCELHINNY?
19              MR. MCELHINNY:  YES, YOUR HONOR.
20              THE COURT:  OKAY.  WHAT'S YOUR STRONGEST AUTHORITY
21    FOR AWARDING SUPPLEMENTAL DAMAGES FOR POST-VERDICT SALES UNDER
22    289?
23              MR. MCELHINNY:  OH, THANK YOU, YOUR HONOR.  THAT'S
24    MR. JACOBS.
25              THE COURT:  OKAY.
```

```
 1              (LAUGHTER. )

 2                    MR. JACOBS:  I WAS RELAXING THERE FOR A MINUTE, YOUR

 3       HONOR.  I HEARD "SUPPLEMENTAL DAMAGES" AND THE QUESTION OF

 4       STRONGEST AUTHORITY.

 5              BUT I WANT TO BE CLEAR.

 6                    THE COURT:  UNDER 289.

 7                    MR. JACOBS:  THE JUNKER CASE, YOUR HONOR, A DECISION

 8       FROM MAGISTRATE JUDGE SPERO THAT ASSEMBLES THE AUTHORITY ON

 9       THAT, AND I CAN GIVE YOU THE CITE, IT IS 2008 U.S. DISTRICT

10       LEXIS 111104, JUNKER V. H.D.C. CORPORATION.

11              HE SAYS THERE -- I'M SORRY, YOUR HONOR.  THIS WAS ON THE

12       TOPIC OF PRE-JUDGMENT INTEREST ON DESIGN PATENT DAMAGES.

13              ON THE QUESTION OF SUPPLEMENTAL DAMAGES FOR 289 --

14                    THE COURT:  YEAH, POST-VERDICT SALES UNDER 289.

15                    MR. JACOBS:  I THINK THE STRONGEST AUTHORITY IS THE

16       AUTHORITY THAT WE'VE ARTICULATED, YOUR HONOR, IN THE 284

17       CONTEXT AND THE LIKE.  THERE'S NO REASON TO DISTINGUISH 289.

18              THE HYNIX CASE IS A GOOD CASE FROM THIS DISTRICT ON HOW TO

19       HANDLE SUPPLEMENTAL DAMAGES.  THERE'S NO PROHIBITION ON THE

20       COURT ENTERING AN ACCOUNTING.  289 IS EXPLICITLY -- DOES NOT

21       DEROGATE FROM OTHER REMEDIES THAT ARE AVAILABLE UNDER THE

22       STATUTE.

23              AND SO I THINK THAT'S THE ANSWER TO THAT QUESTION.

24                    THE COURT:  WHY SHOULD THE COURT AWARD POST-VERDICT

25       DAMAGES TO DESIGN AROUND MODELS THAT THE JURY NEVER CONSIDERED
```

```
 1          AND CERTAINLY NEVER FOUND TO INFRINGE?

 2               MR. JACOBS:  BECAUSE --

 3               THE COURT:  WHY SHOULD YOU GET THAT?

 4               MR. JACOBS:  BECAUSE SAMSUNG HAD THE OPPORTUNITY,

 5     HAD THEY PROPERLY LAID OUT THEIR CASE, TO HAVE THE DESIGN

 6     AROUNDS ADJUDICATED DURING THE PROCEEDING AND TO PROVE

 7     NON-INFRINGEMENT BY DESIGN AROUND VERSIONS OF THE MODELS.

 8          SO RECALL THE WAY THIS TEES UP.  WE DO OUR LOCAL RULES

 9     INFRINGEMENT CONTENTIONS.  WE IDENTIFY MODELS OF INFRINGING

10     PRODUCTS.

11          THEN SAMSUNG DEFENDS ON THOSE MODELS AND WE HAVE THE

12     VERDICT THAT WE HAVE.

13          ALONG THE WAY, SAMSUNG WAS PRECLUDED BY MAGISTRATE

14     JUDGE GREWAL FROM INTRODUCING EVIDENCE OF DESIGN AROUNDS

15     BECAUSE OF THEIR FAILURE TO ADDUCE -- TO PRODUCE SOURCE CODE TO

16     US DURING THE LITIGATION.

17          AND SO THEY'RE -- THEY WERE HAMPERED AT TRIAL IN PROVING

18     THEIR SUPPOSED DESIGN AROUNDS, BUT THAT'S THEIR OWN FAULT.  HAD

19     THEY PRODUCED THEIR DESIGN AROUNDS ON TIME, HAD THEY PRODUCED

20     THE EVIDENCE ON TIME, HAD THEY HAD THE EXPERT REPORTS, THEY

21     COULD HAVE SAID, "AFTER THIS DATE, WE DON'T INFRINGE."

22          BUT YOU HAVE THE RECORD THAT YOU HAVE IN TERMS OF A

23     VERDICT AND A FINDING THAT MODELS INFRINGE.  THAT'S THE LEVEL

24     OF GRANULARITY OF THIS VERDICT.

25               THE COURT:  I GUESS I DON'T UNDERSTAND YOU.  YOU'RE
```

1    SAYING THEIR DESIGN AROUNDS DID NOT COME INTO THE TRIAL BECAUSE

2    OF PRECLUSION, SO THE JURY DIDN'T CONSIDER IT, SO THE JURY

3    DIDN'T FIND INFRINGEMENT, BUT YOU SHOULD STILL GET DAMAGES ON

4    IT?

5          MR. JACOBS:  YES, BECAUSE THE VERDICT IS ON A

6    MODEL-BY-MODEL BASIS.  WE'RE NOT EXTENDING OUR DAMAGES TO NEW

7    MODELS THAT THEY CLAIM REPRESENT DESIGN AROUNDS.

8          SO WE'RE NOT -- IN THIS DAMAGES VERDICT, FOR EXAMPLE,

9    WE'RE NOT SEEKING ADDITIONAL DAMAGES ON, SAY, THE GALAXY S III,

10   WHICH MAY STILL INFRINGE, BECAUSE THE GALAXY S III IS NOT PART

11   OF THE VERDICT.

12         BUT THE GALAXY S II IS PART OF THE VERDICT AND THE

13   GALAXY S IS PART OF THE VERDICT, AND THOSE SALES CONTINUE.

14   THOSE SALES CONTINUE UNTIL THE -- UNTIL, EVEN ACCORDING TO

15   SAMSUNG, RIGHT AFTER THE DATE OF THIS HEARING.

16         THE COURT:  BUT YOU'RE ASKING FOR AN INJUNCTION ON

17   DESIGN AROUND MODELS; CORRECT?

18         MR. JACOBS:  WE'RE ASKING FOR -- AGAIN, THE

19   INJUNCTION THAT WE'RE PROPOSING WOULD BE AN INJUNCTION AIMED AT

20   IDENTIFIED MODELS AND THOSE, AND THOSE PRODUCTS THAT ARE NOT

21   COLORABLY DIFFERENT AS TO A FEATURE OR DESIGN FOUND TO

22   INFRINGE, NOT MORE THAN COLORABLY DIFFERENT AS TO A FEATURE OR

23   DESIGN.

24         THE COURT:  SO THERE WOULD HAVE TO BE A SEPARATE

25   PROCEEDING ON ANY DESIGN AROUND MODELS?

```
 1              MR. JACOBS:  IN THE CONTEXT OF AN INJUNCTION, THAT'S
 2     CORRECT.
 3              THE COURT:  THERE WOULD HAVE TO BE FOR AN INJUNCTION
 4     BECAUSE THE JURY DIDN'T MAKE ANY FINDING AS TO WHAT FUTURE
 5     PRODUCTS WOULD BE COLORABLY DIFFERENT OR NOT.
 6              MR. JACOBS:  EXACTLY.  I JUST WANTED TO BE CLEAR WE
 7     WEREN'T TALKING ABOUT DAMAGES.
 8              THE COURT:  OKAY.  LET ME ASK SAMSUNG A QUESTION,
 9     AND THAT IS THAT IF I DO HAVE TO AWARD AT LEAST REASONABLE
10     ROYALTY FOR POST-VERDICT SALES, THEN HOW SHOULD THAT BE
11     DETERMINED IF THE PRE-JUDGMENT AWARD WAS ISSUED PURSUANT TO
12     289, THE INFRINGER'S PROFITS?
13          I MEAN, I GUESS WHAT I'M GETTING AT IS IF THERE ARE MIXED
14     DAMAGES HERE, HOW AM I SUPPOSED TO HANDLE THAT?
15              MS. SULLIVAN:  SURE.  THANK YOU, YOUR HONOR.
16          FIRST, THE SUPPLEMENTAL DAMAGES THAT APPLE IS SEEKING ARE
17     SUBSTANTIAL.  THEY'RE SEEKING $121 MILLION.
18          AND WE THINK THE ANSWER TO YOUR FIRST QUESTION -- YOUR
19     FIRST QUESTION IS, HAS ANY COURT EVER AWARDED POST-VERDICT
20     SUPPLEMENTAL DAMAGES ON SECTION 289 INFRINGEMENT?
21          AND YOU FINALLY GOT THE ANSWER FROM APPLE, WHICH IS GREAT,
22     WHICH WAS NO, NO COURT EVER HAS, AND YOU SHOULDN'T BE THE FIRST
23     COURT TO.  TO THE EXTENT THAT WE'RE TALKING ABOUT 289 DAMAGES,
24     THERE SHOULD BE NO SUPPLEMENTAL DAMAGES, PERIOD, END OF CASE,
25     FULL STOP.
```

1          AND THAT'S -- AND MR. JACOBS POINTS TO SECTION 284, BUT

2     SECTIONS 284 AND 289 ARE DEEPLY DIFFERENT.   SECTION 284 DOESN'T

3     ALLOW INFRINGER'S PROFITS.   289 DOES.

4               THE COURT:   UM-HUM.

5               MS. SULLIVAN:   289 ALLOWS INFRINGER'S PROFITS, WHICH

6     IS A DISGORGEMENT REMEDY.   IT IS AN UNJUST ENRICHMENT REMEDY.

7     IT IS NOT A COMPENSATORY REMEDY.   IT HAS A PUNITIVE COMPONENT.

8          AND, THEREFORE, THE WHOLE IDEA OF ADDING NOW A

9     SUPPLEMENTAL DAMAGES COMPONENT, WHICH IS COMPENSATORY, TO A 289

10    VERDICT, WHICH IS NOT, IS ABSURD, AND THERE'S A REASON WHY NO

11    CASE HAS EVER DONE IT, NO COURT HAS EVER DONE IT, AND YOU

12    SHOULDN'T DO IT.

13         SO TO ANSWER YOUR FIRST QUESTION, NO SUPPLEMENTAL DAMAGES

14    PERIOD FOR THE 289 INFRINGEMENT.

15         AS TO THE OTHER CASES, YOUR HONOR CORRECTLY NOTED APPLE'S

16    REALLY STUNNING POSITION.   THEY ARE SEEKING AN INJUNCTION ON

17    ALL 26 PRODUCTS, EVEN THOUGH SAMSUNG ONLY SELLS THREE OF THEM

18    AT THIS POINT, GALAXY S II T-MOBILE, S II EPIC 4G TOUCH, AND

19    S II SKYROCKET, AND SAMSUNG HAS DESIGNED AROUND THE '677 PATENT

20    ON THOSE BY CHANGING THE BLACK FRONT TO GRAY, AND IT'S DESIGNED

21    AROUND ANY '163 OR '915 INFRINGEMENT AS TO THOSE PATENTS.

22         THE NOTION YOU WOULD GIVE POST-VERDICT DAMAGES FOR DESIGN

23    AROUND FOR DISCONTINUED PRODUCTS IS TRULY ABSURD.   THE JURY

24    HASN'T FOUND INFRINGEMENT.

25         WITH ALL RESPECT, YOUR HONOR, YOU'D HAVE TO INVADE THE

1    PROVINCE OF THE JURY AND IF -- AND IMAGINE THAT THEY WOULD HAVE

2    FOUND INFRINGEMENT.

3              THE COURT:  UM-HUM.

4              MS. SULLIVAN:  AND I THINK, IF I HEARD APPLE

5    CORRECTLY, THEY'RE MAKING THE ASTONISHING ARGUMENT THAT IF

6    THERE'S A POST-VERDICT DESIGN AROUND AND WE USE THE SAME MODEL

7    NUMBER, WE'RE INFRINGING BECAUSE OF THE NAME.  THAT IS THE

8    SHEEREST, MOST PREPOSTEROUS FORMALISM, AND THAT CAN'T BE RIGHT.

9              SO WHAT YOU SHOULD DO, YOUR HONOR, IF YOU'RE LOOKING AT

10   POST-VERDICT SUPPLEMENTAL DAMAGES, IS TO LOOK ONLY AT PRODUCTS

11   THAT ARE STILL SOLD -- THERE ARE ONLY THREE, NOT EIGHT -- AND

12   PRODUCTS THAT HAVE NOT BEEN DESIGNED -- TO THE EXTENT THEY HAVE

13   NOT BEEN DESIGNED AROUND.  WE BELIEVE THAT THEY'VE BEEN

14   DESIGNED AROUND AS TO ANY INFRINGEMENT.

15             AND JUST TO REMIND YOUR HONOR, ON THOSE THREE PRODUCTS,

16   THE GALAXY S II T-MOBILE, S II EPIC 4G TOUCH AND THE

17   S II SKYROCKET, THERE WAS NEVER ANY FINDING THAT THEY INFRINGED

18   THE '087, THE '305, OR THE '381.

19             AND AS TO '677, '163 AND '915, AS I MENTIONED EARLIER,

20   WE'VE DESIGNED AROUND.

21             SO WE THINK THE BASIS FOR SUPPLEMENTAL DAMAGES HERE IS, IS

22   SLIM TO NONE.

23             AND CERTAINLY APPLE CAN'T BASE IT ON THE PER PRODUCT

24   CALCULATION THEY MADE BECAUSE THEY'RE BASING THAT ON ALL

25   PRODUCTS RATHER THAN ALL 26 PRODUCTS AND THEY'RE NOT LIMITING

```
1     IT EVEN TO THE EIGHT ON WHICH THEY SEEK SUPPLEMENTAL DAMAGES.

2          IF I COULD JUST MAKE ONE LAST POINT, YOUR HONOR, IT'S

3     STUNNING THAT APPLE IS SEEKING AN INJUNCTION, WHICH WE HOPE

4     WE'LL HAVE THE OPPORTUNITY TO OPPOSE VIGOROUSLY, ON ALL 26

5     PRODUCTS, BUT THEY'RE ONLY SEEKING SUPPLEMENTAL DAMAGES ON

6     EIGHT, WHICH IS AS IF THEY CONCEDE THERE'S NO ONGOING OR FUTURE

7     HARM FROM 14 OF THEM.

8          SO I'M SURE WE'LL ADDRESS THE INJUNCTION WHEN YOU WANT,

9     YOUR HONOR, BUT I HOPE THAT ANSWERS YOUR QUESTION.

10         ON SUPPLEMENTAL DAMAGES, THEY SHOULD BE BASED -- AND LAST

11    POINT ON SUPPLEMENTAL DAMAGES.  APPLE HAS BASED THEIR REQUEST

12    FOR THIS HIGHLY INFLATED NUMBER ON PROJECTIONS OF SALES

13    REVENUES RATHER THAN ACTUAL SALES REVENUES, AND ACTUAL SALES

14    REVENUES, AFTER DISCONTINUATION, ARE MUCH LOWER.

15         SO ONE WAY TO HANDLE SUPPLEMENTAL DAMAGES, YOUR HONOR,

16    MIGHT BE TO POSTPONE CALCULATION UNTIL AFTER YOU'VE REACHED

17    FINAL JUDGMENT, AND WE THINK THERE ARE VERY SERIOUS ISSUES

18    ABOUT REDUCING THE DAMAGES, AND REACH SUPPLEMENTAL DAMAGES AT A

19    LATER POINT BASED ON ACTUAL SALES AND ONLY PRODUCTS THAT

20    HAVEN'T BEEN DISCONTINUED OR DESIGNED AROUND, HAD THE

21    INFRINGEMENT DESIGNED AROUND.

22         THANK YOU, YOUR HONOR.

23              MR. JACOBS:  VERY BRIEFLY, YOUR HONOR?

24              THE COURT:  OKAY.

25              MR. JACOBS:  WE CITED THE PADCO CASE IN OUR BRIEF.
```

```
 1        THAT'S A DISTRICT COURT CASE IN WHICH SUPPLEMENTAL DAMAGES WERE

 2    BEING AWARDED UNDER DESIGN PATENT LAW.

 3        THERE'S SOME CONFUSION BEING SOWN.  OBVIOUSLY WE'RE NOT

 4    SEEKING DAMAGES FOR PRODUCTS THAT WEREN'T SOLD.

 5        WE'RE SEEKING DAMAGES FOR SALES FROM THE PERIOD JULY 30 TO

 6    THE ENTRY OF FINAL, FINAL JUDGMENT AND AN INJUNCTION.

 7            THE COURT:  UM-HUM.

 8            MR. JACOBS:  THEY HAVE -- SAMSUNG HAS TOLD US THAT

 9    THERE ARE EIGHT SUCH PRODUCTS, AND THERE ARE SEVERAL SUCH

10    PRODUCTS THAT THEY HAVE SAID ARE BEING SOLD LITERALLY TODAY

11    BUT, THEY CLAIM, NOT TOMORROW.

12        THERE ARE TWO POSSIBILITIES IN THE WORLD.  WE COULD FILE

13    ANOTHER LAWSUIT AND GET DAMAGES FOR THOSE PRODUCTS BASED ON

14    ANOTHER LAWSUIT.  I DON'T THINK YOUR HONOR WANTS ANOTHER

15    LAWSUIT.  I THINK I'M -- OF ALL THE THINGS I'M CONFIDENT ABOUT

16    TODAY --

17            THE COURT:  I DON'T EVEN WANT THE ONES THAT I HAVE.

18        (LAUGHTER.)

19            MR. JACOBS:  OF ALL THE THINGS THAT I'M CONFIDENT

20    ABOUT YOUR HONOR'S VIEW TODAY, IT IS THAT THAT IS NOT A

21    JUDICIALLY EFFICIENT -- IT IS MY BELIEF THAT YOUR VIEW WOULD BE

22    THAT THAT IS NOT A JUDICIALLY EFFICIENT WAY TO GO, AND THAT'S

23    TRUE UNDER 289 OR 284.

24        AND SO THE LAW ALLOWS US TO SEEK A CALCULATION OF

25    SUPPLEMENTAL DAMAGES FROM YOUR HONOR.  WE DID USE A FORECAST AS
```

```
 1        OUR INGOING BASIS.  IT WAS PRETTY CLOSE EVEN TO SAMSUNG'S
 2        REPORTED FIGURES.
 3             BUT SAMSUNG HAS REPEATEDLY REFUSED TO GIVE US THE KIND OF
 4        BACK-UP FOR THE REPORTED UPDATED FIGURES, EVEN THE KIND OF
 5        BACK-UP THAT WE GOT WHEN YOU'LL RECALL WE EXTENDED THE DAMAGES
 6        PERIOD FROM THE EARLY SPRING THROUGH JULY 30 AND WE UPDATED OUR
 7        DAMAGES TESTIMONY.
 8             SO SAMSUNG KNOWS EXACTLY WHAT WE ARE ASKING FOR IN ORDER
 9        TO PROVIDE BACK-UP ON THE ACTUALS, AND WE'RE HAPPY TO TEST,
10        BASED ON THAT INFORMATION, WHETHER THE REPORTED SALES FIGURES
11        ARE CORRECT OR NOT.
12             AS TO THE METHODOLOGY, AGAIN, ONE COULD GET INFINITELY
13        COMPLICATED HERE.  IT SEEMED TO US THAT THE LOGICAL APPROACH
14        WAS TO DO EXACTLY WHAT OUR EXPERT, MS. ROBINSON, DID, AND WHEN
15        SHE RE-RAN THE NUMBERS BASED ON SAMSUNG'S RECOMMENDED APPROACH,
16        IT INCREMENTED THE PER UNIT AMOUNT UP BY ROUGHLY 30 CENTS A
17        UNIT.
18             SO WE HAVE ACTUALLY PRETTY GOOD CORROBORATION BECAUSE AT
19        THE LEVEL OF $50.40 VERSUS $50.70, WHICH I BELIEVE WERE HER
20        FIGURES, USING TWO DIFFERENT METHODOLOGIES, WE'RE COMING OUT
21        VERY CLOSE, AND THAT SUGGESTS THAT THE, THAT THE METHODOLOGY
22        THAT WE'RE USING IS CORRECT.
23             THE COURT:  LET ME -- I WANT TO FOLLOW-UP WITH A
24        QUESTION TO MS. SULLIVAN.
25             IF THE JURY AWARDED 289 DAMAGES AND UNDER FINJAN I HAVE TO
```

1    AWARD REASONABLE ROYALTY POST-VERDICT SALES DAMAGES, HOW SHOULD

2    I DO THAT?  IF THE JURY DIDN'T AWARD 284 DAMAGES, ONLY AWARDED

3    289 DAMAGES, WHAT AM I SUPPOSED TO DO?

4             MS. SULLIVAN:  WELL, AGAIN, WE THINK WHERE THERE'S

5    ONLY 289 DAMAGES --

6             THE COURT:  THAT IT'S NOT --

7             MS. SULLIVAN:  -- THERE CAN BE NO SUPPLEMENTAL

8    DAMAGES.

9         AND JUST TO DISTINGUISH PADCO BRIEFLY, IT'S AN ANCIENT

10   WESTERN -- EASTERN DISTRICT OF WISCONSIN CASE AND IT DIDN'T

11   ACTUALLY AWARD 289 SUPPLEMENTAL DAMAGES.

12            THE COURT:  I'M NOT SAYING I WOULD AWARD 289

13   DAMAGES.  I THINK I MIGHT BE REQUIRED TO DO 284 DAMAGES,

14   REGARDLESS OF WHAT THE JURY VERDICT AWARD WAS.  I THINK I'M

15   STILL REQUIRED UNDER 284 TO DO --

16            MS. SULLIVAN:  SUPPLEMENTAL DAMAGES.

17            THE COURT:  YES.  HOW AM I SUPPOSED TO CALCULATE

18   THAT IF THE JURY USED 289?

19        I AGREE WITH YOU.  I DON'T THINK THERE IS SUPPLEMENTAL

20   DAMAGES ON 289.

21        BUT UNDER FINJAN, I THINK I HAVE TO DO SUPPLEMENTAL

22   DAMAGES ON 284.  SO --

23            MS. SULLIVAN:  SO, YOUR HONOR, WITH RESPECT, I THINK

24   IT'S REALLY PREMATURE UNTIL YOU DECIDE IF YOU'RE GOING TO

25   REDUCE OR REMIT THE VERDICT, BECAUSE THEN EVERYTHING HAS TO BE

1      RECALCULATED.

2              THE COURT:  UM-HUM.

3              MS. SULLIVAN:  AND WE DO THINK YOU HAVE TO TAKE INTO

4      ACCOUNT DISCONTINUATION OR DESIGN AROUND.

5          AND JUST TO THE POINT ABOUT THE MAGISTRATE -- ABOUT

6      MAGISTRATE JUDGE GREWAL'S ORDER, NOTHING IN HIS ORDER ABOUT THE

7      TRIAL EVIDENCE SAYING WE COULDN'T SHOW DESIGN AROUNDS ON UNITS

8      FOR WHICH APPLE SOUGHT DAMAGES AT TRIAL.  HE EXPRESSLY CARVED

9      OUT POST-TRIAL.  JUDGE GREWAL, MAGISTRATE JUDGE GREWAL

10     EXPRESSLY CARVED OUT DESIGN AROUNDS POST-TRIAL AND RESERVED ON

11     THAT.

12         SO WE THINK THAT YOU SHOULD FIRST -- THE EFFICIENT

13     PROCEDURE WOULD BE TO FIRST DECIDE WHAT YOU'RE GOING TO DO WITH

14     DAMAGES, LOOK AT DESIGN AROUND, SEE IF THERE'S ANYTHING LEFT ON

15     WHICH THERE'S A 284 BASIS FOR SUPPLEMENTAL DAMAGES.

16         WE THINK IT WILL BE VERY SMALL, A LOT SMALLER THAN THE

17     CURRENT NUMBER, AND BASED ON ACTUAL REVENUES.

18         AND PROBABLY THE TIME TO DO IT WOULD BE AFTER POST-TRIAL

19     MOTIONS.  SUPPLEMENTAL DAMAGES, LIKE PREJUDGMENT INTEREST, IS

20     SOMETHING YOU COULD POSTPONE UNTIL AFTER YOU'VE RESOLVED THE

21     DAMAGES JUDGMENT AND WE HAVE TAKEN ALL APPEALS SO YOU KNOW

22     EXACTLY WHAT THE PROPER BASIS BEFORE YOU WOULD BE.

23             THE COURT:  OKAY.  ALL RIGHT.  WE'RE GOING TO TAKE A

24     BREAK AT 3:30.

25         LET'S GO TO SAMSUNG'S JMOL MOTION, AND I KNOW WE'VE

```
1      HANDLED SOME ISSUES UNDER DIFFERENT SORT OF CATEGORIES, BUT IT
2      LOOKS LIKE THE JURY HAS AWARDED SAMSUNG'S PROFITS FOR VIRTUALLY
3      ALL OF THE PRODUCTS FOR WHICH IT COULD, AND IN SOME INSTANCES
4      MAYBE WHERE IT COULDN'T AS WELL.
5           BUT INFRINGER'S PROFITS ARE NOT ENHANCEABLE, SO DO I HAVE
6      TO DO ANY ANALYSIS OF WILLFULNESS FOR THE DESIGN PATENTS?
7           IF I COULD GET AGREEMENT ON THIS, IT WOULD SAVE ME ON THE
8      ORDER, SO I HAVE A SELF-INTEREST IN ASKING THIS QUESTION.
9           CAN I GET AGREEMENT THAT, FOR THE DESIGN PATENTS, I DON'T
10     HAVE TO DO A SPECIFIC ANALYSIS OF WILLFUL INFRINGEMENT?
11          (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)
12               MR. JACOBS:  I CAN GIVE YOU PARTIAL AGREEMENT, I
13     THINK.
14               THE COURT:  OKAY.  WHAT'S THAT?
15               MR. JACOBS:  IT'S NOT MUCH MORE THAN WE REPORTED IN
16     OUR BRIEF.
17          289, BY ITS TERMS, DOES NOT ALLOW ENHANCEMENT OF 289
18     DAMAGES.
19               THE COURT:  RIGHT.
20               MR. JACOBS:  BUT WILLFULNESS IS RELEVANT TO
21     ATTORNEYS' FEES AND AN EXCEPTIONAL CASE FINDING AND IT'S
22     RELEVANT TO AN INJUNCTION.
23          AND SO WE WOULD URGE THAT, IN LIGHT OF THE RECORD,
24     INCLUDING SAMSUNG'S DECISION, EVEN AFTER THE LAWSUIT WAS FILED,
25     TO INTRODUCE DESIGN PATENT INFRINGING PRODUCTS, EVEN AFTER THE
```

1    AMENDED COMPLAINT WAS FILED FOUR MONTHS LATER TO INTRODUCE THE

2    S II LINE, WHICH INFRINGED THE '677 OR THE '305, THAT SAMSUNG

3    SHOULD BE HELD TO BE A WILLFUL INFRINGER EVEN IF YOUR HONOR IS

4    GOING TO ADOPT A TOUGH STANDARD ON NOTICE.

5         AND FOR WILLFULNESS PURPOSES, WE DON'T THINK THAT NOTICE

6    RULE APPLIES.  FOR WILLFULNESS PURPOSE, WILLFUL BLINDNESS IS

7    PERFECTLY ADEQUATE AS A STANDARD.

8         AND SO WE WOULD GO ALL THE WAY BACK, FOR WILLFULNESS

9    PURPOSES, TO THAT PRESENTATION IN AUGUST 2010.

10        THE COURT:  I THINK I MISSED THE CONCESSION.  WHAT

11   WAS THE CONCESSION?

12      (LAUGHTER.)

13        MR. JACOBS:  IT WASN'T AS MUCH AS I THINK YOU WERE

14   LOOKING FOR, YOUR HONOR.

15        THE COURT:  ALL RIGHT.  SO FROM WHAT I HEARD, IT

16   SOUNDS LIKE I STILL NEED TO DO A WILLFULNESS ANALYSIS ON THIS.

17        MR. JACOBS:  YES.

18        THE COURT:  OKAY.  ALL RIGHT.

19        MS. SULLIVAN:  DO YOU WANT TO HEAR FROM SAMSUNG ON

20   THAT, YOUR HONOR?

21        THE COURT:  PLEASE.

22        MS. SULLIVAN:  I DON'T WANT TO INTERFERE IF YOU OR

23   THE COURT REPORTER NEEDS A BREAK --

24        THE COURT:  WE AGREED AT 3:30, SO MAYBE AFTER THIS

25   RESPONSE WE'LL GO AHEAD AND TAKE OUR BREAK.

```
 1            MS. SULLIVAN:  OKAY.  SO PRECISELY BECAUSE APPLE DID

 2    NOT GIVE YOU A CONCESSION, WE CAN'T AGREE TO FORGO A FINDING ON

 3    WILLFULNESS.  WE BELIEVE THE CORRECT FINDING IS WE WERE NOT

 4    WILLFUL AND YOU SHOULD NOT ENHANCE.

 5            IF THEY AGREE TO FORGO ATTORNEYS' FEES OR INJUNCTION, THAT

 6    WOULD BE A DIFFERENT MATTER.

 7            BUT JUST TO BRIEFLY SUMMARIZE OUR POSITION, THE IMPORTANT

 8    THING TO DO IN THE ENHANCEMENT ANALYSIS IS FIRST GET TO THE

 9    RIGHT BASE.

10            AND YOU'RE CORRECT, YOUR HONOR, YOU WOULD TAKE OUT

11    EVERYTHING THAT INVOLVES PURE DESIGN INFRINGEMENT.

12            SO THE 11 PHONES -- IF I COULD JUST PUT UP SLIDE 2 FOR A

13    MOMENT -- OF THE 11 PHONES THAT WERE FOUND TO INFRINGE DESIGN

14    PATENTS, BUT ONLY -- THIS IS OUR VERDICT.  IF YOU LOOK AT THE

15    BLUE COMPONENT, THAT'S THE AMOUNT OF DAMAGES FOUND BY THE JURY

16    THAT WE BELIEVE ARE MATHEMATICALLY PRECISELY ATTRIBUTABLE

17    SOLELY TO DESIGN PATENT INFRINGEMENT, AND ENHANCEMENT IS BARRED

18    THERE.

19            SO THE 600 MILLION COMES OUT OF THE BASE.  THAT'S THE BLUE

20    QUADRANT, THE BLUE SEMICIRCLE ON THE RIGHT.

21            THAT LEAVES US WITH THE FIVE PHONES THAT WERE FOUND TO

22    INFRINGE BOTH DESIGN PATENTS AND TO DILUTE FOR TRADE DRESS.

23            THOSE FIVE PHONES, AS WE'VE DISCUSSED BEFORE, THAT HAS A

24    SAMSUNG PROFITS COMPONENT AND A LOST PROFITS COMPONENT, AND TO

25    THE EXTENT IT'S GOT A SAMSUNG PROFITS COMPONENT, THE $291
```

1    MILLION PIECE OF THE PIE, ENHANCEMENT, AGAIN, IS BARRED BY

2    SECTION 289.

3         SO WE'VE NOW TAKEN OUT $891 MILLION THAT YOU CAN'T ENHANCE

4    ON.  SO YOU CAN'T ENHANCE, AS BARRED BY SECTION 289, ON THE

5    $600 MILLION ON THE 11 PHONES, OR THE $291 MILLION COMPONENT OF

6    THE FIVE PHONES.

7         SO THAT LEAVES YOU WITH THE LITTLE GREEN SLICE.  THAT'S

8    THE LOST PROFITS PIECE.  THAT'S THE PART THAT'S ATTRIBUTABLE

9    PERHAPS TO TRADE DRESS DILUTION.  THAT'S THE $91 MILLION.

10        BUT NOW YOU HAVE A PROBLEM, YOUR HONOR, THAT ARROW

11   PRODUCTS, A FEDERAL CIRCUIT CASE CITED IN OUR BRIEF, ARROW

12   PRODUCTS SAYS THAT THERE CAN'T BE DOUBLE RECOVERY FOR BOTH

13   PATENT AND TRADEMARK DAMAGES FOR THE SAME SET OF OPERATIVE

14   FACTS, FOR THE SAME SET OF OPERATIVE FACTS.

15        SO YOU'VE GOT TO -- WE BELIEVE YOU'VE GOT TO TAKE THAT $91

16   MILLION OUT OF THE BASE AS WELL, AND REALLY THAT BRINGS US TO

17   YOUR REMAINING BASE FOR ENHANCEMENT.  THAT TAKES US TO THE RED

18   SLICE.  IT TAKES US TO THE RED SLICE, WHICH IS THE DAMAGES THE

19   JURY AWARDED ON THE SEVEN PRODUCTS FOUND ONLY TO INFRINGE

20   UTILITY PATENTS.

21        NOW WE'RE IN THE REALM OF 284, ENHANCEMENT IS POSSIBLE,

22   SEVEN PRODUCTS FOUND TO INFRINGE ONLY UTILITY PATENTS.

23        THERE'S JUST A GREAT BIG $58 MILLION PROBLEM WITH THE RED

24   SLICE, AND THAT'S THE PREVAIL, BECAUSE THE PREVAIL WAS AN

25   INFRINGER'S PROFITS THEORY.  AS WE WORKED OUT BEFORE,

```
1        MATHEMATICALLY THE ONLY -- THAT'S THE ONLY MATHEMATICAL

2        EQUATION, SO YOU HAVE TO TAKE THAT OUT.

3            SO WHAT YOU'RE LEFT WITH AS THE BASE FOR ENHANCEMENT IS

4        REALLY THE LITTLE RED SLICE AT THE TOP.  IT'S $10 MILLION.

5        YOUR ACCEPTABLE, NON-289, NON-ERRONEOUS PREVAIL BASE FOR

6        ENHANCEMENT IS $10 MILLION.

7            AND, AGAIN, THIS IS JUST A GRAPHIC REPRESENTATION OF THE

8        NUMBERS THAT ARE IN OUR BRIEF --

9                THE COURT:  UM-HUM.

10               MS. SULLIVAN:  -- OPPOSING APPLE'S ENHANCEMENT

11       REQUEST.

12           SO NOW, YOUR HONOR, WHAT IF YOU SAY, "WELL, HOW CAN I BE

13       SURE ABOUT THE GREEN SLICES?  HOW DO I -- HOW CAN I BE SURE --

14       CAN I REALLY ATTRIBUTE THAT PRECISELY THE DIFFERENCE BETWEEN

15       THE 829 PIECE AND THE LANHAM ACT PIECE?  CAN'T I ENHANCE ON THE

16       LANHAM ACT PIECE?"

17           AND HERE WE RESPECTFULLY SUBMIT THAT IF IT'S AMBIGUOUS,

18       YOU HAVE TO RULE AGAINST ENHANCEMENT FOR US.  THE TIE FOR AN

19       AMBIGUITY HAS TO BE RESOLVED IN OUR FAVOR.  APPLE BEARS THE

20       BURDEN ON ENHANCEMENT.

21           AND AS MR. VERHOEVEN DESCRIBED EARLIER, APPLE PREVENTED US

22       FROM OUR DESIRED PARTICULARIZATION OF THE VERDICT FORM.  IF MY

23       COLLEAGUE, MS. MAROULIS, HAD BEEN SUCCESSFUL IN PERSUADING THE

24       COURT TO PARTICULARIZE THE VERDICT FORM MORE AS TO DAMAGE

25       THEORY OR AS TO I.P. INFRINGEMENT, THEN MAYBE THERE WOULDN'T BE
```

1        AN AMBIGUITY.

2               BUT IF THERE'S AN AMBIGUITY, IT GOES TO US.

3               WE DON'T THINK THERE'S AN AMBIGUITY.  WE THINK THAT'S

4        CLEAR AS DAY.  IT'S MATHEMATICALLY PRECISE.  YOUR ONLY POSSIBLE

5        BASE FOR ENHANCEMENT IS $10 MILLION.

6               AND NOW JUST VERY BRIEFLY, BECAUSE I REALLY WANT TO GIVE

7        THE COURT REPORTER A REST, APPLE HAS NOT COME CLOSE TO MEETING

8        ITS BURDEN OF PROOF ON WILLFULNESS.  NOT CLOSE.

9               IF I COULD JUST REMIND YOU OF THE FEDERAL CIRCUIT'S LATEST

10       STATEMENT OF THE STANDARD ON OBJECTIVE WILLFULNESS, IT'S A VERY

11       TOUGH STANDARD.  THE BARD DECISION, WHICH YOUR HONOR KNOWS

12       WELL, SAYS THAT OUR DEFENSES, APPLE WOULD HAVE TO SHOW THAT OUR

13       DEFENSES WERE SO OBJECTIVELY BASENESS THAT NO REASONABLE

14       LITIGANT COULD REALISTICALLY EXPECT SUCCESS, AND APPLE CAN'T

15       COME CLOSE TO MEETING THAT STANDARD.

16              AND I'M TALKING HERE ABOUT OBJECTIVE WILLFULNESS, WHICH IS

17       ENTIRELY WITHIN YOUR BAILIWICK AND REQUIRES NO DEFERENCE TO THE

18       JURY VERDICT.

19              AND REMEMBER HERE, DESIGN PATENTS ARE BEHIND THE -- BESIDE

20       THE POINT, SO APPLE'S TENDENCY TO COME BACK AND TALK ABOUT THE

21       SUPPOSED COPYING ON THE DESIGN SIDE IS COMPLETELY IRRELEVANT,

22       AND THEY HAVEN'T COME CLOSE TO SHOWING THAT WE DIDN'T HAVE

23       REASONABLE DEFENSES.

24              IF WE JUST LOOK AT THE UTILITY PATENT WORLD, ON '381, WE

25       CERTAINLY HAD A REASONABLE INVALIDITY DEFENSE.  DON'T ASK US.

1    LOOK AT THE PATENT AND TRADEMARK OFFICE FIRST OFFICE RE-EXAM ON

2    THE '381.  WE HAD A COLORABLE INVALIDITY DEFENSE BASED ON PRIOR

3    ART.

4         ON THE '163 AND THE '915 -- WE'VE ALREADY DISCUSSED THIS

5    AT LENGTH -- WE HAD NO PRE-LITIGATION NOTICE.  HOW CAN YOU FIND

6    THAT'S WILLFUL OBJECTIVELY FOR PRE-LITIGATION CONDUCT AS TO

7    WHICH WE HAD NO NOTICE?

8         AND MR. MCELHINNY'S ATTEMPT TO GET YOU TO ADOPT THE

9    WILLFUL BLINDNESS STANDARD, KNOWLEDGE OR PURPOSE IS REQUIRED.

10   WILLFUL BLINDNESS MIGHT EQUATE TO KNOWLEDGE, BUT IT HAS TO BE

11   AS TO A SPECIFIC PATENT.  WILLFULNESS, KNOWLEDGE, NOTICE ARE

12   ALL CONCEPTS THAT REQUIRE SPECIFIC PATENTS.

13        AND I UNDERSTAND REFERENCE TO VAGUE CONCEPTS OF DESIGN

14   CAN'T GET YOU TO A SPECIFIC PATENT.

15        AND IN ADDITION ON '163 AND '915, AS YOU'VE ALREADY

16   DISCUSSED, WE HAD A REASONABLE INDEFINITENESS DEFENSE OBVIOUSLY

17   ON '163, YOU'VE TALKED ABOUT THAT, AND WE HAD A REASONABLE

18   NON-INFRINGEMENT DEFENSE ON '915.

19        IF APPLE COMES BACK AND SAYS -- MAKES ITS USUAL KIND OF

20   WHAT WE THINK ARE BASELESS ALLEGATIONS ABOUT COPYING, OBVIOUSLY

21   WE'RE ENTITLED TO BENCHMARK OUR COMPETITOR'S PRODUCTS.

22        THE FEDERAL CIRCUIT DUPUY CASE SAYS THAT COPYING IS NOT

23   RELEVANT TO YOUR OBJECTIVE RELEVANCE DETERMINATION -- I'M

24   SORRY -- YOUR OBJECTIVE WILLFULNESS DETERMINATION.

25        SO IN SUM, WE THINK YOU SHOULD FIND IN OUR FAVOR ON

1       WILLFULNESS.  YOU SHOULD FIND IT'S NOT OBJECTIVELY WILLFUL.

2               THIS WAS A CLOSE CASE.  YOUR HONOR, HOW MANY TIMES DID YOU

3       SAY, IN THE COURSE OF THIS LONG PROCEEDING, WHAT KIND OF CLOSE

4       ISSUES THERE WERE?  I RECALL YOU SAYING AT THE PRELIMINARY

5       INJUNCTION HEARING, THERE ARE RISKS HERE FOR BOTH SIDES.

6               I RECALL YOU SAYING, IN CONNECTION WITH THE INFRINGEMENT

7       DETERMINATION AT THAT STAGE, THAT THE INFRINGEMENT QUESTION ON

8       '677 AND '087 IS A CLOSE QUESTION, EVEN IF DESIGN PATENTS WERE

9       RELEVANT HERE.

10              YOUR HONOR SAID AT SUMMARY JUDGMENT THAT THE TRADE DRESS

11      FAME QUESTION IS A CLOSE QUESTION.

12              AND THE JURY FOUND FOR US, THE JURY FOUND FOR SAMSUNG ON

13      TWO TRADE DRESSES, ON THE '889.

14              SO WITH RESPECT, WE THINK YOU SHOULD FIND US OBJECTIVELY

15      NOT WILLFUL.  BUT SHOULD YOU FIND ANY ELEMENT OF WILLFULNESS,

16      YOU SHOULD APPLY IT ONLY TO A $10 MILLION BASE.  THAT'S ALL

17      THAT'S LEFT AFTER YOU TAKE ALL THESE COMPONENTS OUT THAT ARE

18      EITHER 289 BASED OR INSOLUBLY CONNECTED WITH THE 289 BASE,

19      WHICH IS AN IMPROPER BASIS FOR ENHANCEMENT.

20              THAT'S OUR ARGUMENT ON ENHANCEMENT.

21                      THE COURT:  OKAY.

22                      MS. SULLIVAN:  THANK YOU, YOUR HONOR.

23                      THE COURT:  ALL RIGHT.  THANK YOU.  LET'S TAKE --

24                      MR. MCELHINNY:  YOUR HONOR --

25                      THE COURT:  YES?

```
 1            MR. MCELHINNY:  -- I'M NOT FIGHTING THE BREAK, BUT
 2      WE WOULD LIKE TO BE HEARD ON THIS WILLFULNESS ISSUE JUST
 3      BRIEFLY AT SOME POINT.
 4            THE COURT:  THAT'S FINE.  WHEN WE COME BACK.
 5            MR. MCELHINNY:  THANK YOU, YOUR HONOR.
 6            THE COURT:  LET'S TAKE A 15 MINUTE BREAK.  OKAY?
 7      ALL RIGHT.  THANK YOU.
 8      (RECESS FROM 3:33 P.M. UNTIL 3:51 P.M.)
 9            THE COURT:  ALL RIGHT.  PLEASE TAKE A SEAT.  WELCOME
10      BACK.
11         I'M GOING TO GIVE APPLE JUST A FEW MINUTES TO DISCUSS THE
12      ENHANCEMENTS.  IF IT'LL SAVE YOU TIME, I DON'T AGREE THAT IF
13      IT'S A MIXED DAMAGE AWARD OF 289 AND LANHAM ACT DAMAGES, THAT
14      THAT CAN'T BE A BASE FOR ENHANCEMENT, IF THAT --
15            MR. JACOBS:  MEANING THAT IT CAN BE?
16            THE COURT:  IT CAN BE.  I DON'T AGREE THAT IT
17      CANNOT.  THAT'S TOO MANY NEGATIVES.
18            MR. MCELHINNY:  LET ME ASK YOU -- UNFORTUNATELY,
19      THIS IS ONE THAT IS DIVIDED ACROSS THE MOTION.  I'M SUPPOSED TO
20      UPHOLD THE JURY VERDICT AND MR. JACOBS WAS GOING TO TALK ABOUT
21      ENHANCEMENTS.  SO CAN WE SPLIT OUR TIME AND EACH TAKE A MINUTE?
22            THE COURT:  THAT'S FINE.
23            MR. MCELHINNY:  THANK YOU, YOUR HONOR.
24         ON THE -- WHAT WE'RE LOOKING AT ON WILLFULNESS, YOUR HONOR
25      INSTRUCTED THE JURY CORRECTLY, WHICH IS WE'RE LOOKING AT
```

```
 1        SAMSUNG'S STATE OF MIND.  THAT'S THE ISSUE.

 2             AND THE KEY CASE THAT I THINK WE'RE GOING TO BE TALKING

 3        ABOUT AND YOUR HONOR IS GOING TO BE WORKING ON IS THE SEAGATE

 4        CASE, BECAUSE THE SEAGATE CASE REWROTE THE LAW OF WILLFULNESS.

 5             PRIOR TO THAT, WE HAD THE UNDERWATER DEVICES CASE WHICH

 6        SET OUT ALL THE ROLES, AND THEN SEAGATE CAME OUT AND GAVE A

 7        RULING.

 8             BUT WHAT'S REALLY IMPORTANT, I THINK, IS THAT SEAGATE SAID

 9        THAT THE PRIOR FEDERAL CIRCUIT LAW WAS NOT IN LINE WITH

10        STANDARD SUPREME COURT RECKLESSNESS DECISIONS, AND THAT WAS THE

11        REASON -- THAT'S WHAT THEY SAY IN THE DECISION.  "WE WANT TO

12        BRING FEDERAL CIRCUIT LAW ON RECKLESSNESS IN LINE WITH

13        TRADITIONAL STANDARD SUPREME COURT TEACHINGS ON THAT."

14             AS A RESULT OF THAT, AT LEAST ONE COURT, THE DISTRICT

15        COURT IN CONNECTICUT IN A CASE CALLED SERGEANT MANUFACTURING

16        VERSUS CAL ROYAL PRODUCTS AT 2012 WEST LAW 603268, LAST

17        FEBRUARY, INTERPRETED SEAGATE AS TO HAVE DONE AWAY WITH

18        UNDERWATER DEVICE'S REQUIREMENT THAT SPECIFIC PATENTS HAVE BEEN

19        BROUGHT TO A PERSON'S ATTENTION.

20             WHAT THEY SAID WAS, AS LONG AS WHAT YOU'RE TESTING IS

21        WHETHER OR NOT A PERSON WHO HAS INFRINGED A PATENT DID THAT

22        RECKLESSLY -- AND OBVIOUSLY, AS YOUR HONOR SAID IN THE LIFT-U

23        CASE, IF A PERSON HAD NO KNOWLEDGE OF THE PATENT AT ALL, THEN

24        YOU'RE NOT GOING TO FIND THAT THEY KNEW ABOUT IT RECKLESSLY --

25        THEY'RE NOT GOING TO FIND THAT THEY ACTED RECKLESSLY BECAUSE
```

1    THEY DIDN'T EVEN KNOW ABOUT IT.

2         BUT IN THIS CASE, THE QUESTION OF WHETHER OR NOT SAMSUNG

3    ACTED RECKLESSLY WAS SUBMITTED TO THE JURY, AND WE THINK THE

4    EVIDENCE IS JUST OVERWHELMING THAT THIS WAS AN INTENTIONAL PLAN

5    ON SAMSUNG'S PART TO COPY AN ELECTRONIC DEVICE THAT THEY HAD

6    BEEN TOLD WAS COVERED BY LITERALLY THOUSANDS OF PATENTS AND

7    THAT THEY DID THAT WILLFULLY.

8         THE OTHER ASPECT OF SEAGATE THAT IS SOMETIMES MISQUOTED

9    THAT I WANT TO MAKE SURE THAT PEOPLE FOCUS ON IS THAT

10   SEAGATE -- WHICH, OF COURSE, WAS A DISCOVERY CASE AND IT'S

11   TALKING ABOUT WHEN WE'RE GOING TO REQUIRE WAIVER OF THE

12   ATTORNEY-CLIENT PRIVILEGE -- SAID THAT, AS ONE OF THE REASONS

13   WE DON'T, IS THAT IN MOST CASES, THEY SAID, PRE-LITIGATION

14   CONDUCT IS NOT RELEVANT AND -- OR POST-LITIGATION, POST-SUIT

15   CONDUCT IS NOT RELEVANT AND, THEREFORE, THERE'S NO REASON TO

16   GET IN AND OPEN UP THE ATTORNEY-CLIENT CONDUCT.  BUT WHAT THEY

17   SAID WAS IN MOST CASES.

18        AND ON THAT SECTION THEY END UP AND SAY, "OF COURSE WE'RE

19   GOING TO LEAVE TO THE DISTRICT COURTS A DETERMINATION OF WHAT

20   WOULD HAPPEN IN THE CASE WHERE POST-LITIGATION CONDUCT IS

21   RELEVANT."

22        IN THIS CASE -- AND THEN, OF COURSE, THEY OPEN THAT UP

23   FURTHER BY SAYING WHETHER OR NOT SOMEBODY MOVES FOR A

24   PRELIMINARY INJUNCTION CAN BE RELEVANT, BECAUSE IF YOU DON'T

25   MOVE FOR A PRELIMINARY INJUNCTION, THEN OBVIOUSLY YOU WEREN'T

```
 1        BEING HARMED OR WHATEVER.

 2             BUT IF YOU DO MOVE FOR A PRELIMINARY INJUNCTION AND THE

 3        COURT SAYS THERE'S SUBSTANTIAL QUESTIONS, THEN OBVIOUSLY THAT

 4        WOULD GO TO THE OBJECTIVE TEST.

 5             IN THIS CASE, OF COURSE, YOUR HONOR FOUND THAT IT WAS

 6        LIKELY THAT THREE OF OUR PATENTS WERE BEING INFRINGED, AND YOU

 7        DENIED THE INJUNCTION ON THE GROUNDS OF PRELIMINARY INJUNCTION

 8        BALANCE OF HARM ISSUES.

 9             SO YOUR HONOR TOLD SAMSUNG THAT THEY WERE LIKELY

10        INFRINGING OUR PATENTS, BUT WHAT YOU SAID, IN EFFECT, WAS, "I'M

11        NOT GOING TO STOP YOU, BUT YOU ARE EXPOSING YOURSELF TO THE

12        REMEDIES THAT THE LAW PERMITS AT THE TIME THAT WE GET TO

13        TRIAL."

14             YOU DID NOT TELL THEM THAT THERE WAS A REASONABLE GROUND

15        TO BELIEVE THAT THEY DIDN'T ENJOY -- THAT THEY DIDN'T INFRINGE,

16        AND THEY -- THEY CHOSE, QUITE DRAMATICALLY, TO CONTINUE TO

17        INFRINGE THOSE PATENTS DESPITE YOUR HONOR'S HOLDING, DESPITE

18        THE FEDERAL CIRCUIT'S AFFIRMANCE OF IT, AND AS MR. JACOBS

19        MENTIONED, THEY EVEN, AS THE JURY HAS FOUND, THEY EVEN BROUGHT

20        OUT NEW -- AFTER THAT TIME, THEY BROUGHT OUT NEW PRODUCTS THAT

21        HAVE BEEN ADJUDGED TO BE INFRINGING PRODUCTS.

22             I AM -- I AM RESISTING, BELIEVE IT OR NOT, GIVING YOU THE

23        CLOSING ARGUMENT, BUT THE JURY GOT IT.  THE JURY GOT THE FACT

24        THAT NO ONE FROM SAMSUNG CAME AND SAID THEY HAD ANY REASONABLE

25        BELIEF THAT THEY WERE NOT INFRINGING PATENTS.  THEY DIDN'T COME
```

1      AND SAY "WE WEREN'T WARNED."  THEY DIDN'T SAY ANY OF THAT.

2          THE TRUTH OF THE MATTER HERE, IT'S SHOWN BY THEIR DESIGN

3      DOCUMENTS -- WE ALL REMEMBER THE MOMENTS OF THE TRIAL, AND I DO

4      REMEMBER WHEN YOUR HONOR LOOKED AT THAT DOCUMENT AND YOU SAID

5      TO THE PEOPLE AT SAMSUNG, "IF I HAD HAD THAT DOCUMENT, EXHIBIT

6      44, AT THE TIME OF THE PRELIMINARY INJUNCTION, THINGS MIGHT

7      HAVE BEEN DIFFERENT."

8          BUT OF COURSE YOU DIDN'T HAVE IT THEN, AND YOU DIDN'T HAVE

9      IT BECAUSE SAMSUNG WITHHELD IT.

10         BUT THERE HAS NEVER BEEN A CASE IN WHICH THE EVIDENCE WAS

11     SO STRONG THAT A SPECIFIC PRODUCT WAS TARGETED, A SPECIFIC

12     PRODUCT WAS COPIED, AND IT WAS DONE BY A PERSON WHO CLAIMS TO

13     HAVE THOUSANDS OF PATENTS, WHO HAD BEEN TOLD THAT THE PRODUCT

14     WAS COVERED BY THOUSANDS OF PATENTS, AND WHO DID IT IN ORDER TO

15     GET AN ADVANTAGE.

16         THAT IS, IF ANYTHING, EXACTLY THE FACTS OF THE SEC CASE

17     AND THE FEDERAL -- AND THE SUPREME COURT, UNDER A RECKLESSNESS

18     STANDARD, SAID THAT IS BLIND WILLFULNESS -- WILLFUL BLINDNESS.

19         AND SO IT WAS THEIR EVIDENCE IN THE RECORD -- AND IT'S A

20     DOUBLE GATE AND I CONCEDE THAT AND I'M ONLY DEFENDING THE JURY

21     VERDICT.

22         BUT DID THE JURY HAVE EVIDENCE IN FRONT THEM ON WHICH THEY

23     COULD HAVE DETERMINED, AS A MATTER OF FACT, THAT SAMSUNG HAD

24     THE MENTAL INTENT, THE STATE OF MIND THAT WAS WILLFUL?  THE

25     ANSWER IS, UNDER YOUR INSTRUCTION, THEY HAD MORE THAN ENOUGH

```
 1        AND THAT WAS THE FINDING THAT THEY MADE.

 2           THERE'S THE OBJECTIVE INTENT, AND I ONLY TOOK 30 SECONDS,

 3        SO MR. JACOBS WILL TAKE A MINUTE AND A HALF.

 4              MR. JACOBS:  BOTH OF THE TOPICS THAT I WANT TO

 5        DISCUSS VERY BRIEFLY ARE ISSUES THAT ARE SO SOUNDLY WITHIN YOUR

 6        JUDGMENT THAT OUR ARGUMENT -- IT'S WHAT YOU PERCEIVED.  DID YOU

 7        THINK THAT SAMSUNG PUT ON MERITORIOUS DEFENSES ON THE '381 WHEN

 8        THEIR OWN EXPERT DIDN'T EVEN LOOK AT THE SOURCE CODE?  DID YOU

 9        THINK THAT SAMSUNG PUT ON MERITORIOUS DEFENSES ON THE '915 WHEN

10        THEY REALLY HAD NO NON-INFRINGEMENT ARGUMENT WHATSOEVER, EXCEPT

11        ON ONE PRODUCT THAT THE JURY FOUND AGAINST THEM ON?

12           SO ON THE OBJECTIVE STANDARD, ON THE UTILITY PATENTS, WE

13        THINK WE MEET THE OBJECTIVE STANDARD.  WE THINK WE MEET IT BY

14        CLEAR AND CONVINCING EVIDENCE.

15           BUT IT'S, OF COURSE, WHAT YOU PERCEIVED OVER THE COURSE OF

16        THE LITIGATION.

17           ON THE TOPIC OF ENHANCEMENT, AGAIN, ENHANCEMENT IS AN AREA

18        VERY MUCH WITHIN YOUR DISCRETION.  HAVING CROSSED THE THRESHOLD

19        THAT YOU ADVERTED TO A FEW MINUTES AGO, ALL I WANT TO SAY IS

20        THIS:  WE'VE GIVEN YOU A COUPLE OF TOOLS FROM WHICH YOU COULD

21        DERIVE ENHANCEABLE NUMBERS, AND THERE'S A FUNDAMENTAL

22        DISTINCTION BETWEEN THE WAY WE DID IT AND THE WAY SAMSUNG IS

23        PROPOSING THAT YOU LOOK AT THE NUMBERS.

24           OUR NUMBERS ARE ALL ON THE FACE OF THE VERDICT.  THERE IS

25        NO REVERSE ENGINEERING THAT'S REQUIRED IN ORDER TO GET TO OUR
```

1    NUMBERS.

2          AND WE THINK THAT'S CRITICAL BECAUSE AS YOU'VE HEARD FROM

3    US, AS YOU'RE GOING TO HEAR FROM US, WE THINK THIS REVERSE

4    ENGINEERING EXERCISE IS DANGEROUS AND CONTRARY TO LAW.

5          SO AS WE LAID OUT FOR YOU IN OUR ENHANCEMENT PROPOSALS, WE

6    VIEW VERY CLOSELY AS TO WHAT ONE CAN OBSERVE JUST FROM THE FACE

7    OF THE VERDICT WITHOUT TRYING TO FIGURE OUT WHY THE JURY DID

8    WHAT IT DID.

9          THE COURT:  OKAY.  LET ME ASK, WITH REGARD TO

10   MR. HOGAN, I HAVE LEFT FOR THE HEARING SAMSUNG'S MOTION TO

11   COMPEL APPLE TO DISCLOSE WHEN IT FIRST LEARNED ABOUT

12   MR. HOGAN'S SEAGATE LITIGATION.

13         APPLE HAS GONE AHEAD IN ADVANCE OF THE HEARING AND GONE

14   AHEAD AND SUBMITTED THE DECLARATION OF MR. SELWYN.  IS YOUR

15   MOTION TO COMPEL NOW MOOT?

16         MR. QUINN:  YES, IT IS, YOUR HONOR.

17         THE COURT:  ALL RIGHT.  I THINK THAT ISSUE IS FULLY

18   BRIEFED.

19         I WOULD LIKE TO GO TO THE ISSUE OF INJUNCTION, AND

20   SOMETIMES -- SOME ISSUES I HAVE A TENTATIVE RULING ON, SOME

21   ISSUES I REALLY DON'T, AND SOME ISSUES I JUST NEED MORE

22   INFORMATION TO FILL OUT THE ORDER.

23         LET ME ASK -- AND WE'VE SORT OF COVERED THIS.  MAYBE I'LL

24   JUST SKIP THAT ONE.

25         BUT LET ME ASK, I THINK -- I'M NOT SURE WHO AT APPLE IS

1    HANDLING THIS ISSUE.

2        BUT IF YOU'RE NOT USING A TRADE DRESS YOURSELF -- AND BY

3    "YOURSELF" I MEAN APPLE -- THEN HOW WOULD SAMSUNG'S USE HARM

4    APPLE?  BECAUSE THE ONES THAT YOU ARE USING THE JURY FOUND TO

5    BE UNPROTECTABLE, SO --

6            MR. JACOBS:  WHEN THIS TOPIC COMES UP AND WE KICK IT

7    AROUND, I ASK THE FOLLOWING HYPOTHETICAL:  IF CHEVROLET,

8    GENERAL MOTORS CAME OUT WITH A 2012 FORD MUSTANG THAT LOOKS

9    LIKE THE 1965 FORD MUSTANG THAT I REBUILT, WOULD WE SAY THAT'S

10   OKAY BECAUSE FORD ISN'T USING THE FORD MUSTANG ANYMORE IN THE

11   SENSE THAT IT'S NOT THE '65 FORD MUSTANG?  IT'S NOT PRODUCING

12   THAT CAR ANYMORE?

13       AND THAT CAN'T BE RIGHT BECAUSE THOSE OF US WHO ARE FORD

14   MUSTANG LOVERS HAVE A STRONG SENSE OF WHAT THE LAW CALLS

15   RESIDUAL GOODWILL, AND THERE'S AMPLE CASE LAW ON THIS

16   PHENOMENON OF RESIDUAL GOODWILL.

17       THE IDEA THAT IN THE CASE OF APPLE THAT, HAVING COME OUT

18   WITH THIS ICONIC DESIGN, THE 3G IS GOING TO BE, AND THE 3GS

19   DESIGN IS GOING TO BE LINKED TO APPLE FOR AS FAR AS THE EYE CAN

20   SEE, WHEN SOMEBODY USES A PHONE THAT LOOKS LIKE THE 3G OR THE

21   3GS IN A MOVIE, IN A PRODUCT PLACEMENT, SOMEONE IS GOING TO

22   RECOGNIZE IT AS AN APPLE 3G OR 3GS UNLESS SAMSUNG IS ALLOWED TO

23   DILUTE; WHEN PEOPLE SEE APPLE PHONES ON THE STREET, THEY'RE

24   GOING TO LINK THEM, THE 3G OR 3GS, THEY'RE GOING TO LINK IT TO

25   APPLE AND THEY'RE GOING TO SAY, "OH, THERE GOES ANOTHER APPLE

1    USER" UNLESS SAMSUNG IS ALLOWED TO DILUTE.

2         AND THEN WE CHALLENGE THE -- I THINK WE CHALLENGE THIS

3    FACTUALLY.  APPLE CONTINUES TO SUPPORT THE 3G AND 3GS.  WHEN

4    APPLE RELEASES IOS UPDATES, THEY WORK WITH THE 3G AND 3GS.

5    APPLE IS CONTINUING TO PROVIDE REPLACEMENT 3GSS.

6         SO THESE PRODUCTS HAVE, HAVE LONGER LIVES THAN WHETHER

7    THEY'RE AVAILABLE RIGHT NOW IN AN APPLE STORE WOULD SUGGEST.

8         AND IT JUST CAN'T BE THAT MONTHS AFTER A PRODUCT IS NO

9    LONGER FOR SALE IN AN APPLE STORE, HAVING MADE THE -- HAVING

10   PROVED WHAT WE PROVED AT TRIAL, THAT SAMSUNG CAN NOW GO OUT AND

11   DILUTE.

12        AND IF THEY CAN'T GO OUT AND DILUTE, THEN THEY GET

13   ENJOINED BECAUSE DILUTION LAW IS VERY CLEAR.  WE DON'T DO THIS

14   KIND OF, THIS MORE CAREFUL ANALYSIS THAT WE'RE NOW UP IN THE --

15   THAT WE'RE NOW DOING IN THE PATENT WORLD TO DECIDE IF AN

16   INJUNCTION SHOULD ISSUE.

17        SO IT JUST CAN'T BE THAT HAVING WON A VERDICT ONLY THREE

18   MONTHS AGO, SAMSUNG CAN NOW BE FREE TO DILUTE BY SHIPPING 3GS

19   PRODUCTS, AND WE CITED CASES THAT SUPPORT THAT PROPOSITION.

20        THE AUTO BODY -- THE AUTO CASE IS ACTUALLY -- MY

21   AUTOMOBILE HYPOTHETICAL IS ACTUALLY IN THE CASE LAW BECAUSE

22   AUTOMOBILE DESIGNS ARE SO DISTINCTIVE.

23            THE COURT:  HOW DO YOU RECONCILE SAYING THAT YOU

24    CAN'T BE COMPENSATED FOR YOUR LOSS OF MARKET SHARE, SO YOU NEED

25    AN INJUNCTION; AND YET YOU CAN SAY, "BUT UNDER THE LANHAM ACT,

1       MY LOSS OF MARKET SHARE IS WORTH 400 MILLION"?

2               MR. JACOBS:  IT'S PARTIAL, YOUR HONOR.

3               THE COURT:  UH-HUH.

4               MR. JACOBS:  THE -- WHAT WE SHOWED IS THAT THE LOSS

5       OF MARKET SHARE IN THIS IMMEDIATE PERIOD, BASED ON THE PERIOD

6       THAT WAS COVERED BY THE MARKET DATA WE HAD IN THE TRIAL,

7       EXCEEDS THE AMOUNT OF ENHANCEMENT WE'RE SEEKING.

8           BUT THAT VELOCITY THAT SAMSUNG GAINED IN THE MARKET,

9       THAT'S HAPPENING TODAY AND TOMORROW AND THE NEXT DAY.  IT'S AN

10      ONSLAUGHT.  WE HAVE DOCUMENTS IN THE RECORD THAT TALK ABOUT HOW

11      SAMSUNG WAS GOING TO CAPTURE THE MARKET BY ISSUING OVER 100

12      ANDROID PRODUCTS A YEAR.  THAT WAS THE STRATEGY AND THAT'S THE

13      STRATEGY THEY'RE PURSUING.

14          AND THEY GOT THAT LEG ON THE MARKET THROUGH THE GALAXY

15      LINE IN 2010 AND 2011, THE DILUTING PRODUCTS.  THAT'S ALSO IN

16      THE RECORD.  IT WAS THE GALAXY LINE THAT GAVE SAMSUNG THAT LEG

17      UP, AND THAT CONTINUES -- THAT LEG UP, THAT 30-PLUS PERCENT OF

18      THE MARKET, UNLESS THEY SOMEHOW STUMBLE BADLY, THAT CONTINUES

19      FAR BEYOND THE PERIOD OF CALCULATION OF OUR ENHANCEMENT.

20          SO THAT'S THE ANSWER.  THERE'S A PROSPECTIVE ASPECT THAT

21      WE CAN'T CAPTURE BY ENHANCEMENT, AND THERE'S THE -- THERE'S THE

22      ELEMENT OF LOST MARKET SHARE DURING THE PERIOD THAT IS CAPTURED

23      BY OUR CALCULATIONS THAT WE SOUGHT TO CAPTURE THROUGH

24      ENHANCEMENT.

25              THE COURT:  ALL RIGHT.  LET ME ASK TWO QUESTIONS,

```
 1    AND I THINK I'M NOT GOING TO ASK THE QUESTION ABOUT PRODUCTS

 2    BEING OFF THE MARKET BECAUSE WE SORT OF COVERED THAT ALREADY.

 3              MR. JACOBS:  AND I THINK IT'S A DECISIONAL LAW

 4    QUESTION, YOUR HONOR.  THE CASE LAW SAYS THAT TAKING PRODUCTS

 5    OFF THE MARKET DOESN'T GET YOU OUT OF AN INJUNCTION.

 6         AND THE EDWARDS CASE, WHICH CAME DOWN RIGHT IN TIME TO

 7    HELP US WITH THIS INJUNCTION, RE-ENFORCES THAT PROPOSITION

 8    BECAUSE, REMEMBER, WHAT THE FEDERAL CIRCUIT IS REVERSING IS THE

 9    DISTRICT COURT JUDGE SAYING --

10              THE COURT:  IF IT'S OFF THE MARKET.  WHERE IS THE

11    IRREPARABLE HARM?  IT'S GONE.

12              MR. JACOBS:  THE INJUNCTION IS AGAINST THOSE MODELS

13    AND AGAINST INFRINGING DESIGNS OR FEATURES THAT ARE NOT MORE

14    THAN -- COLORABLE -- I'M BOBBLING OUR LANGUAGE.

15              THE COURT:  UM-HUM.

16              MR. JACOBS:  NOT MORE THAN COLORABLY DIFFERENT

17    INFRINGING DESIGNS OR FEATURES.

18         WE'RE GOING TO LOOK AT THE PRODUCTS THAT ARE ENJOINED TO

19    SEE WHETHER THE NEW PRODUCTS ARE NOT MORE THAN COLORABLY

20    DIFFERENT FROM THEM AS TO THE SCOPE OF THE INJUNCTION ON EACH

21    PRODUCT.

22              THE COURT:  AND YOU WANT THAT BECAUSE COLORABLY

23    DIFFERENT IS A LOWER STANDARD THAN HAVING TO DO A WHOLE OTHER

24    TRIAL?

25              MR. JACOBS:  OH, ABSOLUTELY.  IN FACT, THE WAY THIS
```

1    WILL WORK IS THAT SAMSUNG WILL FIGURE OUT WHETHER THEY'RE GOING

2    TO TRY TO COMPLY WITH THE INJUNCTION OR NOT, AND IF WE THINK

3    THEY HAVEN'T COMPLIED WITH THE INJUNCTION, WE'RE GOING TO HAIL

4    THEM BEFORE YOUR HONOR AND SAY THEY'RE VIOLATING THE

5    INJUNCTION.

6         HOPEFULLY, BY THE TIME YOUR HONOR IS DONE WITH THEM IN

7    THIS PROCEEDING, THEY WILL BE DETERRED FROM GOING TOO CLOSE TO

8    THE LINE AND WE WILL NOT NEED TO BE BACK IN FRONT OF YOU.

9              THE COURT:  LET ME -- I HAVE JUST TWO QUESTIONS FOR

10   SAMSUNG ON THE INJUNCTION AND THEN I'D LIKE TO END WITH APPLE'S

11   JURY MOTION, AND I'D LIKE TO FINISH BEFORE 2013.

12        SO -- OKAY.  SO FOR SAMSUNG, IS THE HARM FROM AN

13   INJUNCTION THE INCONVENIENCE OF RETAILERS WHO WOULD NOT BE ABLE

14   TO SELL THEIR EXISTING STOCK, AND IS THERE A SIGNIFICANT AMOUNT

15   OF THIS EXISTING STOCK OUT WITH RETAILERS NOW?

16        AND, YOU KNOW, OTHERWISE THERE SEEMS TO BE A TENSION TO

17   SAY "THEY'RE NOT SELLING, THEY'RE OFF THE MARKET, THIS IS A

18   MOOT POINT," AND YET TO SAY, "BUT WE WILL BE VERY HARMED IF YOU

19   GRANT AN INJUNCTION."  THERE'S A TENSION THERE.

20              MS. SULLIVAN:  YES.

21              THE COURT:  GO AHEAD, PLEASE.

22              MS. SULLIVAN:  I UNDERSTAND, YOUR HONOR, BUT WITH

23   RESPECT, THE BALANCE OF HARDSHIPS DOES, IN FACT, FAVOR SAMSUNG

24   BECAUSE, AS I DISCUSSED WITH YOUR HONOR BEFORE, THERE ARE THREE

25   PHONES THAT WE STILL ARE SELLING, THREE GALAXY S II PHONES.

```
1     THERE ARE 77,000 UNITS STILL OUT IN THE MARKET.

2          AND IT'S EXACTLY THE FEAR, UNCERTAINTY, AND DOUBT THAT

3     APPLE WANTS TO IMPOSE UPON THE RETAILERS THAT CREATES HARDSHIP.

4     IT CREATES A HARDSHIP TO SAMSUNG BECAUSE WE'VE CULTIVATED THOSE

5     RELATIONSHIPS WITH SUPPLIERS AND RETAILERS AND CARRIERS OVER

6     MANY YEARS.

7          AND YOU REMEMBER, YOUR HONOR, WHEN THE CIRCUIT SENT THE

8     PRELIMINARY INJUNCTION BACK AND YOU ENTERED THE TAB PRELIMINARY

9     INJUNCTION -- AND WE HAD STAYED MOTION PRACTICE ON THIS, YOUR

10    HONOR -- YOU'LL REMEMBER THAT APPLE WENT OUT AND TRIED TO RUN A

11    CAMPAIGN OF FEAR AGAINST A LOT OF RETAILERS, TRYING TO MAKE A

12    VERY BROAD CONSTRUCTION OF THE INJUNCTION AGAINST THEM.  SO

13    THAT'S WHERE WE WOULD LOCATE OUR HARM.

14         ON THE OTHER SIDE OF THE BALANCE, YOUR HONOR, APPLE CAN'T

15    POSSIBLY HAVE FUTURE HARM FROM PRODUCTS THAT HAVE BEEN

16    DISCONTINUED OR DESIGNED AROUND.

17         AND JUST TO GO BACK TO YOUR TRADE DRESS QUESTION, YOUR

18    HONOR, IT CERTAINLY CAN'T HAVE FUTURE HARM FOR TRADE DRESS THAT

19    IT NO LONGER USES, RIGHT?

20              THE COURT:  UM-HUM.

21              MS. SULLIVAN:  APPLE NO LONGER USES THE TWO TRADE

22    DRESSES THAT THE JURY FOUND WERE DILUTED, THE UNREGISTERED 3G

23    AND THE REGISTERED IPHONE.  THE UN --

24              THE COURT:  I'M SORRY TO INTERRUPT YOU.  IS THERE

25    STILL A SIGNIFICANT AMOUNT OF EXISTING STOCK OF THESE PRODUCTS
```

1        WITH YOUR RETAILERS?

2                MS. SULLIVAN:  77,000 UNITS -- ON THE SAMSUNG SIDE,

3        YOUR HONOR?

4                THE COURT:  YES, PLEASE.

5                MS. SULLIVAN:  AS I UNDERSTAND IT, THE RECENT NUMBER

6        IS 77,000 UNITS OF S II PHONES WITH RETAILERS.  SO, YES, WE

7        WOULD SUFFER HARDSHIP.

8            AND THEN THE SECOND POINT, YOUR HONOR, IS YOU HEARD

9        MR. JACOBS A MOMENT AGO SAY HE WANTS THIS NO COLORABLY

10       DIFFERENT LANGUAGE, AND THE POINT OF THAT OVERBROAD LANGUAGE IS

11       TO TRY TO USE THIS INJUNCTION GOING FORWARD TO INTIMIDATE

12       RETAILERS AND CARRIERS GOING FORWARD AND THAT WILL STRIKE AT

13       BOTH THE PUBLIC INTEREST AND THE BALANCE OF HARDSHIPS TO US.

14           SO THE VERY BREADTH OF THE LANGUAGE THAT APPLE HAS

15       PROPOSED IS PART OF THE PROBLEM GOING FORWARD.

16               THE COURT:  OKAY.  CAN I MOVE ON TO THE LAST ISSUE,

17       AND THAT'S APPLE'S NON-JURY.

18           I AM INCLINED -- I WOULD LIKE TO SAY THIS IS MOOT AND NOT

19       HAVE TO ADDRESS THE SUBSTANCE OF WAIVER TO EQUITABLE ESTOPPEL

20       AND UNCLEAN HANDS.

21           TELL ME A LITTLE BIT ABOUT -- YOU HAVE, WHAT IS THAT, THE

22       OMEPRAZOLE CASE.  THAT'S AN MDL?

23               MR. LEE:  YES.

24               THE COURT:  WAS THERE SOMETHING UNIQUE ABOUT THAT

25       ONE WHERE IT WOULD HAVE HAD EFFECTS FOR OTHER PARTIES?  BECAUSE

1    IT'S AN MDL, PRESUMABLY THERE'S LOTS AND LOTS OF LITIGATION IN

2    THAT CASE?

3              MR. LEE:  YOUR HONOR, I CAN GIVE YOU A MORE PRECISE

4    EXAMPLE, AND THAT'S THE BROADCOM/QUALCOMM CASE, WHERE EVEN

5    THOUGH THE JURY DETERMINED THE PATENT WAS NOT INFRINGED, THE --

6    JUDGE BREWSTER PROCEEDED TO DETERMINE THE WAIVER ISSUE.

7         HE HAD AN ADVISORY VERDICT, BUT HE PROCEEDED TO DETERMINE

8    IT, AND HERE'S THE REASON WHY.

9         THE CLAIMS THAT ARE DETERMINED TO BE NON-INFRINGED ARE THE

10   ASSERTED CLAIMS AND THE CLAIMS THAT WENT TO THE JURY.

11        THE REMEDY IN BROADCOM/QUALCOMM WAS TO RENDER THE PATENT

12   UNENFORCEABLE.

13        SO THE NON -- YOU KNOW, I WISH I -- GIVEN THE LATENESS OF

14   THE HOUR, I WISH I COULD SAY TO YOUR HONOR I'LL SAY TO YOU WHAT

15   YOU WANT, BUT THERE IS A DIFFERENCE BETWEEN THE TWO, AND THE

16   NON-INFRINGEMENT DETERMINATION GOES TO THE ASSERTED CLAIMS.

17        THE WAIVER DETERMINATION IN BROADCOM MADE THE PATENTS

18   UNENFORCEABLE.

19        IN FACT, WHEN IT WENT TO THE FEDERAL CIRCUIT, THE QUESTION

20   WAS NOT WHETHER THOSE PATENTS SHOULD BE UNENFORCEABLE, BUT

21   WHETHER THE REMEDIES SHOULD EXTEND BEYOND THOSE PATENTS.

22        THE FEDERAL CIRCUIT AFFIRMED A REMEDY THAT MADE THE ENTIRE

23   PATENT UNENFORCEABLE.

24        SO NOT ONLY WOULD SAMSUNG BE COLLATERALLY ESTOPPED FROM

25   ASSERTING THE CLAIMS THAT THEY ASSERTED AGAINST US, THE WAIVER

```
 1      DETERMINATION WOULD RENDER ALL OF THE CLAIMS OF THOSE PATENTS,

 2      WHETHER ASSERTED IN THIS PATENT OR NOT, UNENFORCEABLE AGAINST

 3      US.

 4              THE COURT:  WELL, I BELIEVE YOU ALL DISMISSED

 5      EVERYTHING ELSE WITHOUT PREJUDICE, UNDERSTANDING THAT IT WAS

 6      WITHOUT PREJUDICE.

 7          BUT WHAT'S YOUR CONCERN?  FUTURE LITIGATION, WHETHER IT'S,

 8      YOU KNOW, THIS CASE RESURRECTED OR SOMETHING ELSE?  I MEAN,

 9      IT'S REALLY NOT GOING TO HAVE AN EFFECT BASED ON THE JURY'S

10      VERDICT.

11              MR. LEE:  YOUR HONOR --

12              THE COURT:  IT'S REALLY NOT GOING TO MATTER, SO

13      WHY --

14              MR. LEE:  YOUR HONOR, IT DOES -- AND I PRESS ON ONLY

15      BECAUSE THIS IS PRECISELY WHAT WE ADDRESSED IN THE

16      BROADCOM/QUALCOMM CASE AS WELL WITH THE FEDERAL CIRCUIT.

17          IT HAS THE EFFECT THAT THESE PATENTS, WHICH WERE ASSERTED

18      AGAINST US, CANNOT BE ASSERTED AGAINST ANY OF OUR FUTURE

19      PRODUCTS.

20          YOUR HONOR WILL RECALL THESE ARE --

21              THE COURT:  WHY DON'T YOU RAISE IT -- I'M SORRY TO

22      INTERRUPT YOU -- WHY DON'T YOU RAISE THAT ISSUE, THOUGH, AT THE

23      TIME THERE IS A FUTURE PRODUCT AND AT THE TIME IN THE FUTURE

24      WHERE SAMSUNG IS ACTUALLY, YOU KNOW, RAISING THESE PATENTS

25      AGAINST YOUR PRODUCTS, YOUR FUTURE PRODUCTS?
```

1          MR. LEE:  BECAUSE IF YOUR HONOR PROCEEDED TO

2    DETERMINE THE ISSUE AND FOUND WAIVER -- AND THERE'S A

3    DIFFERENCE BETWEEN THE BREACH OF CONTRACT CLAIM THAT'S CITED BY

4    THE JURY AND WAIVER -- THEN WE WOULD NEVER GET TO THE POINT OF

5    HAVING TO BE BACK BEFORE YOU AGAIN AND HAVING TO RAISE IT

6    AGAIN.

7          THEY WOULD BE -- THOSE PATENTS WOULD BE UNENFORCEABLE AS A

8    RESULT OF THE WAIVER.

9          THEY WOULD BE UNENFORCEABLE AS TO US AND THEY WOULD BE

10   UNENFORCEABLE AS TO ACTUALLY ANYBODY ELSE BECAUSE THEY WOULD BE

11   COLLATERALLY ESTOPPED ON THE QUESTION OF WHETHER THEY COULD

12   ASSERT THOSE AS ESSENTIAL TO THE STANDARD.

13         SO THERE ARE -- TO GO BACK TO THE OMEPRAZOLE CASE THAT

14   YOUR HONOR MENTIONED, THERE REALLY ARE THREE LEVELS.  THERE'S

15   NON-INFRINGEMENT, WHICH IS CLAIM-BY-CLAIM; THERE'S A QUESTION

16   OF WHETHER THESE PATENTS COULD EVER BE ASSERTED AGAINST US

17   AGAIN IF THEY WERE DECLARED UNENFORCEABLE; AND THEN THERE'S A

18   QUESTION OF WHETHER THEY COULD BE ASSERTED AGAINST ANYBODY ELSE

19   IF THEY WERE HELD UNENFORCEABLE.

20         THAT IS, IN FACT, PRECISELY THE ISSUE THAT THE FEDERAL

21   CIRCUIT CONSIDERED IN THE BROADCOM/QUALCOMM CASE.  IT NARROWED

22   THE REMEDY --

23         THE COURT:  I DIDN'T THINK THAT BROADCOM/QUALCOMM

24   ADDRESSED THIS SORT OF MOOTNESS ISSUE THE WAY THAT OMEPRAZOLE

25   DID.

1          MR. LEE:  YOUR HONOR, ACTUALLY, YOUR HONOR, THE --

2     THE MOOTNESS CLAIM WAS NOT MADE BECAUSE -- AND I HAPPEN TO HAVE

3     TRIED THAT CASE AND HANDLED THE APPEAL -- IT'S BECAUSE OF

4     PRECISELY THE ARGUMENT I'M MAKING TO YOUR HONOR, WHICH IS, YES,

5     THERE WAS A NON-INFRINGEMENT DETERMINATION ON THE ASSERTED

6     CLAIMS, BUT THERE STILL WERE IMPLICATIONS FOR THE OTHER CLAIMS

7     AND WHETHER THEY COULD EVER BE ASSERTED BY QUALCOMM AGAINST

8     BROADCOM AGAIN, AND THAT'S WHY JUDGE BREWSTER PROCEEDED TO

9     DECIDE IT.

10         HE ACTUALLY --

11         THE COURT:  BUT THERE'S NOTHING SAYING THAT YOU HAVE

12    TO DECIDE IT.

13         MR. LEE:  I DON'T THINK THAT THERE'S ANYTHING -- LET

14    ME SAY TWO THINGS.

15         THE COURT:  YEAH.

16         MR. LEE:  I DON'T THINK THERE'S ANYTHING IN THE CASE

17    THAT SAYS YOU HAVE TO DECIDE IT.

18       ON THE OTHER HAND, WE WOULD SUGGEST THAT IT'S NOT MOOT

19    BECAUSE OF THE OTHER CLAIMS THAT ARE IN THE PATENT.

20         THE COURT:  I GUESS IT'S DIFFERENT SHADES OF

21    MOOTNESS.  I AGREE WITH YOU THAT IT'S NOT SUBJECT MATTER MOOT.

22       BUT WHETHER IT REALLY IS MOOT SINCE THE JURY CAME OUT, YOU

23    KNOW, CAME OUT IN YOUR FAVOR, THEN WHY DO I STILL NEED TO DO

24    THE EXTRA STEP OF RULING ON A BUNCH OF AFFIRMATIVE DEFENSES

25    WHERE IT'S REALLY NOT GOING TO MATTER?

```
1              MR. LEE:  YOUR HONOR --

2              THE COURT:  DO YOU SEE?

3              MR. LEE:  THE CANDID ANSWER IS YOU'RE CORRECT, IT'S

4      DIFFERENT SHADES OF MOOT.  I CAN'T TELL YOU THAT IF YOU

5      REJECTED MY ARGUMENT AND DECIDED THAT, IN FACT, IT WAS

6      SUFFICIENTLY MOOT THAT YOU WOULD EXERCISE YOUR DISCRETION NOT

7      TO CONSIDER IT NOW, THAT THAT WOULD BE AN ISSUE FOR THE FEDERAL

8      CIRCUIT.

9          YOU KNOW, IF WE GO UP THERE AND, IN FACT, THE

10     NON-INFRINGEMENT DETERMINATION IS SUSTAINED AFTER A TRIAL LIKE

11     THIS, IT MAY BE THAT THEY THINK SO AS WELL.

12         BUT I THINK, ANALYTICALLY --

13             THE COURT:  YEAH.

14             MR. LEE:  -- IT IS NOT RENDERED MOOT AND IRRELEVANT

15     BECAUSE OF THE OTHER CLAIMS.

16             THE COURT:  ALL RIGHT.  WELL, IN CASE I HAVE TO GO

17     THROUGH WITH ALL OF IT, LET ME -- I DO HAVE THREE QUESTIONS

18     ABOUT THE SUBSTANCE, WHICH -- LET ME -- CAN WE GET ANY

19     AGREEMENT THAT THE TECHNOLOGY IN SAMSUNG'S TWO PROPOSALS TO

20     ETSI IS THE SAME AS WHAT'S IN THE KOREAN APPLICATIONS, WHICH

21     THEN IS THE SAME AS WHAT BECAME THE '915 AND '516?  IS THAT --

22             MR. LEE:  I THINK YOU CAN FROM US.

23             THE COURT:  IS THERE ANY DISPUTE AS TO THAT?

24             MR. VERHOEVEN:  WELL, YOUR HONOR, YEAH, THERE IS A

25     DISPUTE --
```

```
1                    THE COURT:  OKAY.

2                    MR. VERHOEVEN:  -- BECAUSE IN THIS CASE THE JURY

3        FOUND THAT THERE IS NO INFRINGEMENT AND SO WHAT WE'VE GOT HERE

4        IS A SITUATION WHERE COUNSEL FOR APPLE IS SAYING ONE THING ON

5        ONE PART OF THIS CASE TO THE JURY, "WE DON'T INFRINGE, THESE

6        AREN'T REALLY ESSENTIAL, THESE DON'T EVEN -- WE DON'T EVEN DO

7        THIS STANDARD."

8                    THE COURT:  UM-HUM.

9                    MR. VERHOEVEN:  AND IN THE OTHER PART OF THE CASE,

10       THEY'RE REPRESENTING TO THE JURY, "WELL, THIS PROPOSAL THAT WAS

11       MADE IS EXACTLY THE SAME AS THE STANDARD."

12           SO OUT OF ONE SIDE OF THEIR MOUTH FOR THEIR

13       NON-INFRINGEMENT CASE, THEY'RE SAYING "WHAT WE DO ISN'T THE

14       STANDARD."

15                   THE COURT:  UM-HUM.

16                   MR. VERHOEVEN:  AND ON THE OTHER SIDE THEY'RE

17       SAYING, "WELL, IF YOU FIND THAT IT IS, THEN ALL THESE DEFENSES

18       APPLY."

19           WELL, THE JURY HERE, YOUR HONOR, PROPERLY IS FINDING --

20       THE JURY FOUND NON-INFRINGEMENT, SO FOR ALL PRACTICAL PURPOSE,

21       WE'RE DONE.  THESE DEFENSES ARE THEORETICAL AT THIS POINT.

22           AND I WOULD -- I THINK I'M IN AGREEMENT WITH MR. LEE IN

23       SAYING YOUR HONOR HAS DISCRETION HERE, SIMILAR TO IF YOU HAD A

24       JURY FINDING, OR A SUMMARY JUDGMENT LET'S SAY, YOUR HONOR, OF

25       NON-INFRINGEMENT ON A SINGLE PATENT IN A SINGLE PATENT CASE AND
```

```
1        YOU WERE ASKED TO GO TO TRIAL ON VALIDITY.

2              EVEN THOUGH, WITH THE ACCUSED PRODUCTS AT ISSUE, THERE'S

3        CLEARLY -- IT'S NOT GOING TO MATTER BECAUSE YOU'VE ALREADY

4        FOUND THERE'S NON-INFRINGEMENT.

5                    THE COURT:  UM-HUM.

6                    MR. VERHOEVEN:  WELL, THAT'S WITHIN YOUR DISCRETION.

7              AND SIMILARLY, THESE SORT OF ISSUES ARE WITHIN YOUR

8        DISCRETION.  SO IF YOUR HONOR IS INCLINED TO SAY, "THIS IS FOR

9        ANOTHER DAY.  THIS IS AN ADVISORY OPINION.  THIS IS SOME SORT

10       OF SHADE OF MOOT OR ADVISORY OPINION," YOU'RE CERTAINLY WITHIN

11       YOUR DISCRETION.

12                   THE COURT:  UM-HUM.

13                   MR. VERHOEVEN:  AND HERE I WOULD SUBMIT IN THIS

14       PARTICULAR SITUATION, COUNSEL'S --

15             ARE YOU READING MY NOTES?

16             (LAUGHTER.)

17                   MR. LEE:  NO.  I'M TRYING TO FIND OUT WHAT --

18             HE'S CALLING ME "COUNSEL."  I THOUGHT HE KNEW MY NAME.

19                   MR. VERHOEVEN:  MR. LEE.

20             (LAUGHTER.)

21                   MR. VERHOEVEN:  HERE, IN THIS SITUATION, COUNSEL IS

22       EVEN MORE FOR EXERCISING THAT DISCRETION AND NOT GOING INTO IT.

23             WHY?  BECAUSE THE JURY HERE EXPRESSLY FOUND THAT THERE WAS

24       NO BREACH THAT'S -- HE WAS ASKED WHETHER SAMSUNG BREACHED ITS

25       CONTRACTUAL OBLIGATIONS, THAT'S A QUOTE FROM THE JURY VERDICT
```

```
 1        FORM UNDER ETSI, AND THE JURY FOUND NO.

 2             THE COURT:  UM-HUM.

 3             MR. VERHOEVEN:  SO IN ORDER FOR YOU TO COME AROUND

 4        THROUGH THE EQUITABLE GUISE AND SAY, "OKAY, WELL, THERE'S ALL

 5        OF THESE EQUITABLE VIOLATIONS," THE FACTUAL PREDICATE WOULD BE

 6        FOR YOU TO FIND A VIOLATION OF ETSI POLICY WHICH WOULD BE IN

 7        FACTUAL CONFLICT WITH THE JURY VERDICT, WHICH WOULD RAISE HUGE

 8        SEVENTH AMENDMENT CONCERNS.

 9             IF THE COURT GOES AROUND -- AFTER THE JURY HAS ALREADY

10        FOUND A FACTUAL PREDICATE THAT SUPPORTS ALL OF THESE EQUITABLE

11        CLAIMS, AS WELL AS THE BREACH OF CONTRACT CLAIM, IF THAT

12        FACTUAL PREDICATE, AS A MATTER OF FACT, IS FOUND NOT TO EXIST,

13        AND -- AND I CAN ADDRESS -- WE HAVE GOOD BASES SUPPORTING THAT

14        JURY FINDING, YOUR HONOR.

15             BUT IF THE -- I WON'T ADDRESS THOSE UNLESS YOU WANT TO

16        HEAR THEM.

17             BUT IF THE JURY FINDS THAT --

18             THE COURT:  UM-HUM.

19             MR. VERHOEVEN:  -- AND THEN MR. LEE COMES TO YOU AND

20        SAYS, "WELL, LET'S SECOND GUESS THE JURY THROUGH THE GUISE OF

21        EQUITY AND ARGUE THESE SAME FACTUAL PREDICATE ISSUES AND ASK

22        YOU, AS A JUDGE, TO FIND AS A MATTER OF EQUITY THESE AREN'T

23        AVAILABLE," THAT'S CODE FOR REVERSE OUR SEVENTH AMENDMENT RIGHT

24        TO A JURY BECAUSE YOU WOULD BE CONFLICTING THE FACTUAL

25        PREDICATE FINDINGS OF THE JURY, AND SO WE WOULD SUBMIT THAT'S
```

```
1    NOT APPROPRIATE.

2         AND THAT WAS ANOTHER REASON, I THINK, GIVEN YOUR -- I

3    DON'T THINK IT'S DISPUTED THAT YOU HAVE DISCRETION HERE --

4              THE COURT:  UM-HUM.

5              MR. VERHOEVEN:  -- FOR YOU TO EXERCISE THAT

6    DISCRETION, AND, OF COURSE, WE THINK IF YOU'RE -- IF YOUR HONOR

7    FEELS YOU'RE OBLIGATED TO DECIDE THIS, AND WE PUT THIS IN OUR

8    BRIEF, THAT THERE'S MANY, MANY REASONS THAT WE'VE PRESENTED TO

9    THE JURY IN THIS TRIAL WHY THERE WAS NO VIOLATION OF ETSI

10   POLICY.

11        AND REALLY QUICK, I FEEL COMPELLED AND I NEED TO ADDRESS

12   THE QUALCOMM CASE --

13             THE COURT:  UM-HUM.

14             MR. VERHOEVEN:  -- THAT MR. LEE IS REFERRING TO.

15        LET'S REMEMBER, THAT WAS A DIFFERENT STANDARD SETTING

16   ORGANIZATION.  LET'S REMEMBER IN THAT CASE THE COURT FOUND THAT

17   QUALCOMM HID ITS PARTICIPATION IN THAT ORGANIZATION, UNLIKE

18   THIS CASE.

19        LET'S REMEMBER IN THAT CASE THE COURT FOUND THAT THERE WAS

20   A CAREFULLY ORCHESTRATED PLAN TO INTENTIONALLY DECEIVE THE JVT,

21   WHICH IS COMPLETELY FACTUALLY NOT IN THIS CASE.

22        IN FACT, THE ONLY EXPERT ON THIS, MR. WALKER, TESTIFIED

23   THAT HE HAD NO OPINION AS TO WHETHER THERE WAS ANY INTENT --

24             THE COURT:  UM-HUM.

25             MR. VERHOEVEN:  -- TO DECEIVE HERE.
```

1          AND SO WE'RE TALKING ABOUT A DIFFERENT STANDARD, DIFFERENT

2     STANDARD SETTING ORGANIZATION, DIFFERENT FACTUAL SITUATION, AND

3     IT CERTAINLY IS NOT IN ANY WAY CONTROLLING TO YOUR HONOR.

4               MR. LEE:  YOUR HONOR, LET ME SAY THESE THREE THINGS.

5               THE COURT:  UM-HUM.

6               MR. LEE:  THE FIRST IS, RESPECTFULLY, MR. VERHOEVEN

7     IS INCORRECT.  THERE ARE TWO OPINIONS IN BROADCOM/QUALCOMM AT

8     THE DISTRICT COURT.

9          ONE IS DETERMINING THE CASE TO BE EXCEPTIONAL AS A RESULT

10    OF LITIGATION MISCONDUCT.

11         THERE IS A SEPARATE OPINION ON WAIVER.  THE COURT

12    PROCEEDED TO DECIDE THE WAIVER ISSUE EVEN THOUGH THERE WAS A

13    NON-INFRINGEMENT VERDICT, AND THERE IS A GOOD POLICY REASON TO

14    DO THAT, AND THAT POLICY REASON COULDN'T BE CLEARER THAN IT WAS

15    IN THIS CASE.

16         THE DANGER OF SOMEONE FILING PATENTS, GOING TO A PATENT --

17    A STANDARD SETTING ORGANIZATION, PARTICIPATING IN THE STANDARD,

18    TRYING, AS BEST THEY COULD, TO GET THEIR TECHNOLOGY INTO THE

19    STANDARD AND NOT DISCLOSING IT IS NOT JUST THAT SOME DAY A JURY

20    MAY FIND IT TO BE ESSENTIAL OR NON-ESSENTIAL.

21         IT IS THAT THEY CAN FILE A LAWSUIT, REQUEST AN INJUNCTION,

22    THREATEN YOU WITH THAT INJUNCTION BEFORE THERE'S BEEN A

23    DETERMINATION OF ESSENTIALITY, AND SAY "GIVE ME 2.4 PERCENT OF

24    THE VALUE OF YOUR PRODUCTS."

25         THAT'S PRECISELY WHY BROADCOM/QUALCOMM PROCEEDED TO DECIDE

1      THAT ISSUE.  THAT'S PRECISELY WHY THE FEDERAL CIRCUIT SAID IT

2      WAS COMPLETELY APPROPRIATE TO GO TO THAT ISSUE.

3           TO ANSWER YOUR HONOR'S QUESTION, THE PRIORITY APPLICATION,

4      THE CLAIMED PRIORITY DATE OF THE U.S. APPLICATIONS WAS THE

5      KOREAN APPLICATIONS.  SAMSUNG CLAIMED THAT PRIORITY.

6           SO THERE ARE THE KOREAN APPLICATIONS, THEY ARE THE

7      PRIORITY BASIS FOR THE U.S. APPLICATIONS, AND THEY CLAIMED,

8      RIGHT UP UNTIL THE DAY THE JURY RENDERED THE VERDICT, THAT THEY

9      WERE ESSENTIAL.

10          AND THE CASE LAW RECOGNIZES THAT THERE DOESN'T HAVE TO BE

11     AN ULTIMATE DETERMINATION OF ESSENTIALITY BEFORE YOU GET TO A

12     PROBLEM, THAT THE FIDDLING AND DIDDLING, THE MANIPULATION OF A

13     STANDARD SETTING ORGANIZATION THE WAY THAT SAMSUNG DID IS

14     PRECISELY WHAT THESE RULES WERE DESIGNED TO PREVENT.

15          NOW, ONE OF THE THINGS THAT MR. VERHOEVEN SAID IS THE

16     JURY'S DETERMINATION ON BREACH OF CONTRACT REQUIRES THAT YOUR

17     HONOR -- YOUR HONOR TO DISMISS ON THE MERITS, I GUESS, THE

18     NON-JURY CLAIMS.

19          THAT'S NOT TRUE.  THE CONTRACT CLAIM, AS YOUR HONOR

20     INSTRUCTED THE JURY, REQUIRES PROOF OF HARM.

21          THE WAIVER CLAIM DOES NOT.

22          AND IF YOUR HONOR LOOKS AT BROADCOM, NOT AT THE DISTRICT

23     COURT'S DECISION, BUT AT THE FEDERAL CIRCUIT DECISION, WHICH IS

24     548 F.3D 1004, YOU WILL SEE THAT THERE ARE JUST TWO

25     REQUIREMENTS, BOTH OF WHICH ARE ESTABLISHED HERE.  THEY'RE

1    ESTABLISHED HERE AS A MATTER OF UNDISPUTED FACT.  THEY'RE, IN

2    FACT, PRECISELY WHAT JUDGE CRABB HAD RECENTLY FOUND WERE WORTHY

3    OF SUMMARY JUDGMENT.

4         AND WHEN MR. VERHOEVEN ALLUDES THE DEFENSES THEY OFFERED,

5    THOSE DEFENSES HAVE NOTHING TO DO WITH THE NONDISCLOSURE

6    OBLIGATION THAT WAS BREACHED BY SAMSUNG.  ONE OF THEM FOCUSES

7    ON A DIFFERENT SENTENCE OF 4.1, THE FIRST SENTENCE.

8         THAT'S NOT THE SENTENCE THAT WE CLAIM A BREACH ON.  THAT'S

9    NOT THE SENTENCE THAT JUDGE CRABB RELIED UPON.

10        THEY RELIED UPON A CONFIDENTIALITY PROVISION THAT HAS

11   NOTHING TO DO WITH THE FACTS OF THIS CASE.

12        AND IF YOU THINK ABOUT THEIR ARGUMENT, YOUR HONOR, IT

13   REALLY BORDERS, TO QUOTE MS. SULLIVAN, ON THE ABSURD.

14        THEIR CLAIM THAT YOU COULD FILE A CONFIDENTIAL PATENT

15   APPLICATION, KEEP IT CONFIDENTIAL, GO TO THE STANDARDS BODY,

16   PITCH YOUR TECHNOLOGY, GET IT INTO THE STANDARD, AND THEN TWO

17   YEARS LATER DISCLOSE THAT YOU HAVE A PATENT WHEN IT ISSUES,

18   THAT'S EXACTLY WHAT THESE RULES ARE TRYING TO PREVENT AND

19   THEY'RE SOMEHOW SUGGESTING THAT THE CONFIDENTIALITY PROVISIONS

20   OF THE RULES PREVENT THAT.

21        AND THE LAST ARGUMENT THEY MAKE TO YOU IS ON SECTION 14.1,

22   WHICH HAS NOTHING TO DO WITH THESE CLAIMS.

23             THE COURT:  SO LET ME JUST QUICKLY -- SINCE YOU

24   AGREE THAT I HAVE DISCRETION NOT TO DECIDE IT, I'M PROBABLY NOT

25   GOING TO DECIDE IT.

```
 1              BUT IN THE OFF CHANCE THAT I DO HAVE TO LOOK AT THIS

 2    SUBSTANTIVELY, I JUST WANT TO ASK YOU A COUPLE MORE QUESTIONS.

 3              MR. LEE:  SURE.

 4              THE COURT:  IS IT YOUR POSITION THAT ETSI'S GENERAL

 5    RELIANCE ON ITS MEMBERS ADHERING TO THE ETSI POLICIES IS

 6    SUFFICIENT TO ESTABLISH -- IS SUFFICIENT FOR EQUITABLE

 7    ESTOPPEL?

 8              MR. LEE:  YES.  AND I WOULD SAY TWO THINGS, YOUR

 9    HONOR.

10         I THINK THAT ETSI'S RELIANCE UPON ITS MEMBERS TO FULLY --

11    TO COMPLY WITH THE RULES AND TO FULFILL THEIR OBLIGATIONS IS

12    SUFFICIENT.

13         I ALSO THINK, AND I THINK JUDGE CRABB ALLUDES TO THIS, THE

14    RELIANCE OF PEOPLE WHO THEN MANUFACTURE AND MAKE PRODUCTS

15    COMPLIANT WITH THE STANDARD IS -- THEIR RELIANCE UPON ETSI

16    STANDARD PROCEDURES AND, IN FACT, PEOPLE WHO PARTICIPATED IN

17    THEM DID SO FAIRLY AND SQUARELY IN COMPLIANCE WITH THE RULES.

18              THE COURT:  DID THE SAMSUNG INVENTORS WHO ATTENDED

19    THE ETSI MEETINGS KNOW ABOUT THEIR PATENT APPLICATIONS?

20              MR. LEE:  I THINK THE RECORD WOULD INDICATE YES,

21    YOUR HONOR.

22              THE COURT:  WHERE IS THAT IN THE RECORD?

23              MR. LEE:  I THINK YOU HAVE THE -- LET ME GET YOU THE

24    PRECISE CITATIONS, BUT I THINK WE PROVIDED YOU THE CHRONOLOGY

25    OF THE FILING OF THE APPLICATIONS, THE ATTENDANCE AT THE
```

1      MEETINGS, SEVERAL JUST --

2             THE COURT:  WELL, I MEAN, I KNOW THE -- I REMEMBER

3      THE CHRONOLOGY, BUT I DON'T REMEMBER THAT THERE WAS ANY

4      EVIDENCE THAT THOSE INVENTORS HAD TO SIGN OR MAKE ANY

5      DECLARATIONS WITH THEIR KOREAN PATENT APPLICATIONS.

6          IT IS POSSIBLE THAT THEY DIDN'T EVEN KNOW THAT THEIR

7      COMPANY WAS APPLYING FOR THESE PATENT APPLICATIONS WHEN THEY

8      WENT AHEAD AND ATTENDED THESE ETSI MEETINGS.

9             MR. LEE:  YOUR HONOR WILL RECALL THAT, AND WE PUT

10     THIS IN THROUGH DR. WILLIAMS ON HIS CROSS-EXAMINATION, THE

11     TESTIMONY WAS THAT THESE INVENTORS WERE NOT THE DESIGNERS OF

12     THE PRODUCTS.  THEY WERE STANDARDS ENGINEERS WHO WENT TO THE

13     STANDARDS MEETINGS AND CAME BACK AND THEIR WHOLE JOB WAS TO

14     DRAFT PATENT APPLICATIONS THAT WENT TO PORTIONS OF THE

15     STANDARD.

16         SO THE -- AND NONE OF THEM WERE CALLED TO TESTIFY.

17         SO THE ONLY EVIDENCE YOU HAVE IN THE RECORD BEFORE YOU NOW

18     IS EVERY SINGLE ONE OF THESE INVENTORS WAS A STANDARDS

19     ENGINEER.

20         STANDARDS ENGINEERS FOR QUALCOMM WERE NOT DESIGN OR

21     PRODUCT ENGINEERS.  THEY WERE PEOPLE WHO WENT TO THE MEETINGS,

22     WHO ATTENDED THE MEETINGS, AND THEN THEIR JOB WAS TO COME HOME

23     AND PREPARE PATENT APPLICATIONS.

24         I THINK THAT'S THE ONLY EVIDENCE IN THE RECORD, YOUR

25     HONOR.

1          THE COURT:  ALL RIGHT.  LET ME ASK SOMEBODY FROM

2    SAMSUNG, MR. VERHOEVEN, WHAT'S YOUR RESPONSE TO THAT?  DID THE

3    INVENTORS HAVE TO SIGN ANYTHING THAT WOULD --

4          MR. VERHOEVEN:  NO.  FIRST -- YOUR LAST QUESTION,

5    APPLE INTENTIONALLY DID NOT CALL THESE INVENTORS OR PRESENT ANY

6    OF THEIR TESTIMONY TO THE JURY, SO THE ANSWER IS THERE'S NO

7    RECORD EVIDENCE.

8          THE REFERENCE TO MR. WILLIAMS IS VERY PUZZLING TO ME.  I

9    THINK THERE WERE SOME CROSS-EXAMINATION QUESTIONS IN WHICH HE

10   SAID, "I DON'T KNOW ANYTHING ABOUT THAT."  SO THAT CLEARLY IS

11   NOT GOING TO SUPPORT ANY ARGUMENT.

12         CLEARLY ON EQUITABLE ESTOPPEL, YOUR HONOR, IT CANNOT BE

13   ARGUED THAT APPLE HAD ANY KNOWLEDGE OF THESE PATENTS OR RELIED

14   ON THEM GIVEN THE TIME FRAME.

15         SO BASICALLY WHAT THIS BOILS DOWN TO, THE WAY I SEE IT,

16   YOUR HONOR, IS MR. LEE IS ASKING YOU TO CREATE NEW LAW

17   INTERPRETING THE ETSI POLICIES AND ARGUE, EVEN THOUGH IT'S MOOT

18   AT THIS POINT, ARGUE FOR AN ADVISORY OPINION THAT ANY TIME

19   ANYBODY DISCLOSES THESE APPLICATIONS AFTER A STANDARD HAD BEEN

20   ADOPTED, THAT ALL OF THE ELEMENTS OF ESTOPPEL HAVE BEEN MET.

21         IT'S A GRANDIOSE, FAR REACHING ADVISORY OPINION THAT WOULD

22   CAPTURE A LARGE AMOUNT OF APPLE'S OWN CONDUCT, WHICH WE

23   SUBMITTED THROUGH MR. TEECE, SHOWING APPLE ROUTINELY SUBMITTED

24   ITS IPR AFTER STANDARDS HAD BEEN ADOPTED.

25         THERE ARE -- UNDER THE RECORD EVIDENCE, MR. WALKER

```
 1     TESTIFIED THAT HE WAS A WORKING GROUP MEMBER IN ETSI FOR
 2     SEVERAL YEARS AND ATTENDED REPEATEDLY WORKING GROUPS AND NEVER
 3     ONCE SAW ANYONE DISCLOSE IPR THROUGH THE WORKING GROUP
 4     MECHANISM.
 5          IT WOULD -- BY THE WAY, YOUR HONOR, ETSI IS GOVERNED BY
 6     FRENCH LAW.  NO FRENCH LAW EXPERT TESTIFIED.  MR. WALKER IS NOT
 7     A LAWYER, MUCH LESS A FRENCH LAWYER, YOUR HONOR.
 8          SO THEY'RE ASKING YOU NOT ONLY TO MAKE AN ADVISORY
 9     OPINION, BUT TO DO SO UNDER FRENCH LAW AND WHAT THE
10     IMPLICATIONS OF FRENCH LAW WOULD BE UNDER AMERICAN LAW WITH
11     ABSOLUTELY NO EVIDENCE.
12          SO THIS IS -- THIS REQUEST, IN OUR VIEW, YOUR HONOR, IS
13     ASKING THE COURT TO DO WHAT IT SHOULDN'T DO, WHICH IS TO GO
14     BEYOND THE CONCRETE ISSUES BEFORE THE COURT AND MAKE SOME SORT
15     OF ADVISORY OPINION INTERPRETING A FOREIGN JURISDICTION'S
16     POLICIES UNDER ETSI WHEN YOU DON'T NEED TO AND THAT WOULD BE
17     INAPPROPRIATE.
18               THE COURT:  LET ME ASK YOU ONE LAST QUESTION.
19               MR. VERHOEVEN:  YES, YOUR HONOR.
20               THE COURT:  I MEAN, I -- AT THIS POINT I STILL AM
21     PLANNING NOT TO EXERCISE MY DISCRETION, AT LEAST, THAT'S MY
22     TENTATIVE RIGHT NOW.  I DON'T WANT TO WADE INTO THIS WHEN I
23     DON'T FEEL LIKE I HAVE TO, BUT IF I HAVE TO, AT WHAT LEVEL
24     WITHIN SAMSUNG WOULD SOMEONE HAVE TO KNOW ABOUT THE PATENT
25     APPLICATION BEFORE THE DISCLOSURE OBLIGATION IS TRIGGERED?
```

```
 1              MR. VERHOEVEN:  WELL, WE --

 2              THE COURT:  DOES IT HAVE TO BE, LIKE, ONE SPECIFIC

 3    PERSON THAT KNEW EXACTLY ABOUT IT AND WE -- IS THERE SOME

 4    IMPUTED KNOWLEDGE?  LIKE AT WHAT LEVEL WOULD THAT DISCLOSURE

 5    OBLIGATION BE TRIGGERED?

 6              MR. VERHOEVEN:  THAT'S AN ISSUE, YOUR HONOR, THAT NO

 7    EVIDENCE HAS BEEN SUBMITTED ON.

 8         SO, YOU KNOW, I'M HESITANT TO, AS A LAWYER, JUST OPINE ON

 9    THIS.  THERE'S BEEN NO RECORD EVIDENCE SUBMITTED ON THIS AT

10    ALL.

11         THE ONLY EVIDENCE SUBMITTED AT TRIAL ON THE ETSI POLICIES

12    WAS MR. WALKER, AND MR. WALKER TESTIFIED THAT HE HAD NO OPINION

13    THAT IT WAS A VIOLATION OF SECTION 14, WHICH IS THE SECTION IN

14    ETSI THAT CONCERNS THE POLICIES.

15         HE ALSO -- AS YOUR HONOR MAY RECALL, SECTION 4 -- THERE'S

16    A GUIDE TO INTERPRETING THE POLICIES THAT WE PUT INTO EVIDENCE

17    THAT TALKED ABOUT SECTION 4.1, AND IT EXPRESSLY SAYS THAT THE

18    ETSI MEMBERS COULD NOT AGREE ON THE TIMELINESS OF THIS AND WHAT

19    IT MEANS TO BE TIMELY.

20         AND THE ONLY THING THEY COULD AGREE ON THAT WOULD

21    CONSTITUTE A BREACH OF ETSI POLICY WAS IF THERE WAS AN

22    INTENTIONAL DELAY, INTENT, AND THAT BRINGS ME BACK TO QUALCOMM

23    WHERE THE COURT FOUND INTENTIONAL ACTIVITY.

24         HERE MR. WALKER SAID HE HAD NO OPINION AS TO WHETHER THERE

25    WAS ANY INTENTIONAL DELAY, AND HE ADMITTED IN CROSS-EXAMINATION
```

1    AS WELL THAT ETSI HAD NOT FOUND ANY INTENTIONAL DELAY, EVER, IN

2    THE TIME HE'D BEEN THERE FOR ANYBODY.

3         AND SO, YOU KNOW, WE'RE GOING OUT HERE INTO THE CLOUDS AND

4    ASKING THE COURT TO MAKE ADVISORY OPINIONS ABOUT HOW TO

5    INTERPRET THIS STUFF WHEN THERE'S -- IT'S FRENCH LAW, FIRST OF

6    ALL, AND THERE'S NO EVIDENCE ON THAT, AND THERE'S NO CONCRETE

7    FACTS FOR THE COURT TO FOCUS ON.

8         FOR EXAMPLE, YOUR OWN QUESTION IS ALMOST A HYPOTHETICAL

9    BECAUSE WE DON'T HAVE ANY RECORD EVIDENCE OF OTHER PEOPLE BEING

10   AWARE AND SUBMITTING THINGS.  THEY DIDN'T EVEN SUBMIT THE

11   DEPOSITION TESTIMONY FROM THE INVENTORS.

12        SO IT'S -- IT'S THEIR BURDEN ON THESE DEFENSES, YOUR

13   HONOR, AND WE DON'T THINK THEY MET IT.

14             THE COURT:  OKAY.  ALL RIGHT.

15             MR. LEE:  YOUR HONOR, I UNDERSTAND THE DIRECTION

16   YOUR DISCRETION MAY BE HEADED, BUT IN CASE YOU DO, TO ANSWER

17   YOUR QUESTION MORE PRECISELY, MR. WILLIAMS DID NOT CLAIM TO BE

18   BRAIN DEAD ON THIS ISSUE.  HE ACTUALLY, AT PAGE 2750, DESCRIBES

19   PRECISELY WHAT STANDARD ENGINEERS WERE AND THE FACT THAT THE

20   INVENTORS WERE STANDARD ENGINEERS.

21        AND THEN, YOUR HONOR, IN THE PORTION OF THE VIDEO CLIP

22   THAT WE PLAYED FROM MR. JUNWON LEE, HE SAID THAT THESE PEOPLE

23   WHO ATTEND THE STANDARD SETTING MEETINGS, QUOTE, "THEY USE

24   OUTSIDE PEOPLE TO DRAFT THE APPLICATION, BUT THESE ARE THE

25   PEOPLE WHO ARE RESPONSIBLE FOR CONTROLLING THE OUTSIDE PEOPLE

```
 1        TO MAKE A DRAFT."

 2             "QUESTION:  IS THEIR GOAL TO TRY TO DRAFT APPLICATIONS

 3        THAT WILL COVER STANDARDS?

 4             "THE WITNESS:  YOU CAN SAY THAT."

 5             SO THAT'S THE EVIDENCE IN THE RECORD, YOUR HONOR.

 6                  THE COURT:  ALL RIGHT.  I DO REMEMBER THAT.

 7                  MR. VERHOEVEN:  ONE SENTENCE, YOUR HONOR.

 8             HE WAS TALKING ABOUT -- HE WAS CROSSING HIM ABOUT

 9        TESTIMONY HE GAVE IN DEPOSITION ABOUT A DIFFERENT STANDARD

10        SETTING ORGANIZATION, AND IT WAS ONLY IN CROSS-EXAMINATION.

11                  THE COURT:  ALL RIGHT.  LET ME ASK, WHEN IS THIS

12        CASE GOING TO RESOLVE?  IS THERE SOME END POINT HERE?

13             (LAUGHTER.)

14                  THE COURT:  WHAT -- I MEAN, I'M SORRY.  THIS IS NOT

15        A JOKE.  I'M BEING SERIOUS.  WHAT -- ARE THERE SOME ADDITIONAL

16        DATA POINTS THAT YOU'RE WAITING ON?  WHEN IS THIS GOING TO

17        RESOLVE?  IS THERE SOME EVENT?  IS THERE --

18                  MR. MCELHINNY:  THIS IS MY -- I MEAN, I HAVE NO

19        INSIDE INFORMATION ABOUT WHAT'S GOING ON, BUT I -- MY

20        UNDERSTANDING IS, FRANKLY, YOUR HONOR, WHAT I TOLD YOU WHEN I

21        FIRST MET YOU IN THE SPRING OF 2011 IN THIS COURTROOM, OR DOWN

22        THE HALL IN THE COURTROOM, WHEN I TOLD YOU THAT THIS WOULDN'T

23        RESOLVE UNTIL BOTH THE LAW WAS MADE CLEAR AND THE ABILITY OF

24        THIS COURT TO ENFORCE THE LAW, AND WILLINGNESS TO ENFORCE THE

25        LAW WAS MADE CLEAR.
```

1        AND AT THAT TIME I WAS ASKING YOU FOR AN EXPEDITED TRIAL,

2    AND YOU GAVE US AN EXPEDITED TRIAL, AND WE HAD A TERRIFIC TRIAL

3    WITH A HARD WORKING JURY.  YOU SAW THEM WORKING AS HARD -- YOU

4    SAW THEM MORE THAN WE DID, BUT A VERY HARD WORKING AND VERY

5    THOUGHTFUL JURY, AND THEY DELIVERED A VERDICT THAT WAS CLEAR AS

6    TO INFRINGEMENT.

7        I'VE ALWAYS TALKED ABOUT THIS PANOPLY OF RIGHTS, THAT IT'S

8    NOT A PARTICULAR PATENT, THAT IT STRETCHES.

9        AND --

10           THE COURT:  SO THEN TELL ME, WHAT SUBSTANTIVE AREA

11    OF THE LAW ARE YOU ALL WANTING TO MAKE LAW ON SO I HAVE SOME

12    IDEA OF WHERE IS THIS GOING?

13           MR. MCELHINNY:  I THINK THE PRACTICAL --

14           THE COURT:  YOU'VE MADE LAW ON INJUNCTIONS.  I DON'T

15    KNOW.  YOU WANT TO MAKE LAW ON TRADE DRESS AND DESIGN PATENTS?

16    I MEAN, WHERE IS THIS -- I THINK IT'S A FAIR QUESTION.

17           MR. MCELHINNY:  I THINK THE --

18           THE COURT:  SO --

19           MR. MCELHINNY:  I THINK THE PRACTICAL ANSWER TO

20    THAT --

21           THE COURT:  YES.

22           MR. MCELHINNY:  -- IS A REMAINING AREA IN WHICH LAW

23    NEEDS TO BE MADE --

24           THE COURT:  OKAY.

25           MR. MCELHINNY:  -- IS REMEDIES.

1        THE QUESTION IS -- I MEAN, WE TRIED THIS CASE TO YOU AS

2    WELL AS TO SAMSUNG.  I TOLD THE JURY THIS IN THE CLOSING, AND

3    I'LL TELL YOU THIS, TOO.

4        THESE ARE -- FOR SAMSUNG, THESE ARE DOLLARS AND CENTS

5    DECISIONS.  THEY MAKE THE DECISION EVERY DAY HOW CLOSE THEY'RE

6    GOING TO GET TO THE LINE AND WHETHER OR NOT WHATEVER THE --

7    WHENEVER THE COURTS CAN CATCH UP TO THEM AND WHAT HAPPENS WHEN

8    THEY DO IS A MATHEMATICAL CALCULATION IN TERMS OF WILLFULNESS,

9    TREBLE DAMAGES, ALL OF THOSE THINGS.

10        AND THEY HAVE PLACED THE BET, SUCCESSFULLY SO FAR IF YOU

11    LOOK AT WHAT MARKET SHARE HAS HAPPENED SINCE I TALKED TO YOU,

12    IF YOU LOOK AT WHAT'S GOING ON, SUCCESSFULLY SO FAR -- AND I

13    TOLD YOU THIS WOULD HAPPEN -- THAT EVENTUALLY IT WOULD BECOME

14    THIS COURT AND THE POWER OF THIS COURT TO ESTABLISH A LINE,

15    WHICH THE JURY HAS DONE, AND TO ENFORCE IT.

16        AND THAT'S WHY WE'RE HERE ON THESE ISSUES NOW, BECAUSE IF

17    THE ANSWER IS, "CONGRATULATIONS, YOU GOT A BILLION DOLLAR

18    JUDGMENT.  OUT OF THE $7 BILLION IN REVENUES THAT WE GOT, YOU

19    ENDED UP WITH A BILLION DOLLAR JUDGMENT AND THAT'S IT," THAT IS

20    A SLAP ON THE WRIST BECAUSE IT IS THE GOING FORWARD CONDUCT, IT

21    IS THE GOING FORWARD CONDUCT THAT WOULD NOW -- IT'S GOING TO

22    FALL TO YOUR HONOR, AND IT'S GOING TO FALL TO THEIR JUDGMENTS.

23        YOU ASKED WHY IT'S NOT COLORABLY DIFFERENT.  THE REASON

24    THAT LANGUAGE IS SO CRITICALLY IMPORTANT IS BECAUSE IT SETS A

25    MINDSET AND A BOUNDARY ABOUT HOW DO WE COMPLY WITH THIS COURT'S

1    ORDER?

2         SO WHEN WE GET YOUR ORDERS NOW, BOTH PARTIES WILL, WILL BE

3    ABLE TO GO BACK AND THEY WILL ASSESS WHETHER OR NOT THE

4    AMERICAN SYSTEM THAT WE HAVE GONE THROUGH PROVIDES A REMEDY TO

5    CHANGE BEHAVIORS, AND THEN BASED ON THAT, THEY WILL RECALCULATE

6    WHETHER THE COURTS ARE THE WAY OR THEY'RE NOT THE WAY OR

7    PROTECTING INTELLECTUAL PROPERTY IS THE WAY OR THEY WILL MAKE A

8    DETERMINATION THAT A LICENSE AGREEMENT -- YOUR HONOR HAS BEFORE

9    YOU ANOTHER LICENSE AGREEMENT.

10        I MEAN, AT THE END OF SIX YEARS AND ALL OF REST OF THAT,

11   BY WHEN EXCLUSIONARY ORDERS -- WHEN REMEDIES STARTED TO BECOME

12   CLEAR, THEN THE PARTIES SAT DOWN AND THAT'S WHAT'S GOING TO

13   HAPPEN HERE.

14        BUT IF IT ENDS UP -- I'LL BE FRANK.  IF IT ENDS UP THAT WE

15   GET A NEW TRIAL ON DAMAGES AND THERE'S NO INJUNCTION AND

16   THERE'S NO -- IF YOU DIDN'T SEE THE SAME CASE THAT THE JURY

17   SAW, THEN I'M NOT SURE -- I'M NOT SURE HOW WE GET TO A

18   RESOLUTION FROM THERE.

19        THAT'S THE CLOSING ARGUMENT I TOLD YOU I WOULDN'T GIVE.

20             MR. VERHOEVEN:  WELL, YOUR HONOR, I'M NOT GOING TO

21   GO ON AND ON AND GIVE A LONG SPEECH, BUT AS YOU KNOW, OUR VIEW

22   IS DRAMATICALLY DIFFERENT.

23        WE SEE WHAT APPLE IS DOING AS AN INTENTIONAL ENGAGEMENT IN

24   THERMONUCLEAR WAR, IT WORKED THROUGHOUT THE WORLD, AND WITH THE

25   RESULTS-ORIENTED ATTEMPT TO COMPETE THROUGH THE COURTHOUSE

1        INSTEAD OF THE MARKETPLACE.

2            AND I HEAR TALK ABOUT BOUNDARIES AND -- YOU KNOW, WE SEE

3        IT DIFFERENTLY.  YOU KNOW, AFTER APPLE GOT THEIR PRELIMINARY

4        INJUNCTION, THEY WENT TO ALL OF OUR CUSTOMERS AND MISUSED THE

5        COLORABLY DIFFERENT LANGUAGE AND TOLD THEM ALL THEY COULDN'T

6        SELL ANY OF OUR PHONES.

7            THIS IS, IN OUR VIEW, APPLE ATTEMPTING TO USE THE COURTS

8        AND ANY RESULTS THEY GET, THROUGH THE COURTS, TO ENGAGE IN A

9        CAMPAIGN TO CLOUD OUR NAME AND TO HURT US, OUR ABILITY TO

10       COMPETE FAIRLY IN THE MARKETPLACE ON THE MERITS THROUGH THREATS

11       OF INJUNCTIONS, THROUGH TAKING -- THROUGH MISINTERPRETING COURT

12       ORDERS LIKE THEY DID IN LONDON WHEN THEY WERE SUPPOSED TO POST

13       SOMETHING, LIKE THEY DID WITH THE PRELIMINARY INJUNCTION AFTER

14       IT WAS GRANTED TO OUR CUSTOMERS.

15           SO WE DON'T THINK THEY'RE TRYING TO ESTABLISH BOUNDARIES,

16       YOUR HONOR.  WE THINK THEY'RE TRYING TO CLOUD THINGS AND USE

17       THE COURTHOUSE TO COMPETE WITH US.

18           BUT THAT WASN'T THE QUESTION YOU ASKED US.  THAT'S MY

19       RESPONSE TO MR. MCELHINNY.

20           THE QUESTION YOU ASKED IS, ARE THE PARTIES GOING TO TALK?

21       ARE THEY GOING TO TALK SETTLEMENT?  WHEN?  WHAT DO THEY NEED?

22           AND FROM OUR PERSPECTIVE, YOUR HONOR, WE'RE WILLING TO

23       TALK.  OKAY?  WE ARE WILLING.

24           THE BALL IS IN THEIR COURT.

25               THE COURT:  WELL, I DON'T WANT TO ORDER ANYONE TO

1    MEET AGAIN BECAUSE THAT HASN'T PROVEN VERY EFFECTIVE SO FAR,

2    BUT IS THERE ANYTHING ELSE THAT CAN BE DONE TO FACILITATE THAT

3    PROCESS?

4              MR. VERHOEVEN:  I THINK THE ANSWER HAS TO BE

5    ANSWERED BY COUNSEL FOR APPLE, YOUR HONOR.

6              THE COURT:  I MEAN, I'VE SAID THIS ALL ALONG.  I

7    THINK IT'S TIME FOR GLOBAL PEACE AND -- LET ME HEAR, WHAT -- IS

8    THERE ANYTHING THAT THE COURT CAN DO?  I MEAN, I'M MORE THAN

9    PREPARED TO ISSUE ORDERS AND YOU'LL TAKE THIS UP ON APPEAL.  WE

10   WILL SEE WHAT HAPPENS.  WE WILL KEEP GOING.

11        BUT IF THERE'S ANY WAY THAT THIS COURT CAN IN SOME WAY

12   FACILITATE SOME TYPE OF RESOLUTION, I'D LIKE TO DO THAT.  I

13   THINK IT WOULD BE GOOD FOR CONSUMERS, IT WOULD BE GOOD FOR THE

14   INDUSTRY, I THINK IT WOULD BE GOOD FOR THE PARTIES.

15        SO LET ME HEAR.

16             MR. MCELHINNY:  MAGISTRATE JUDGE SPERO HAS BEEN

17   TRYING TO RESOLVE THIS CASE -- THE LAST CONTACT I HAD FROM HIM

18   WAS A REQUEST TO SEE WHETHER OR NOT IT WOULD MAKE SENSE FOR THE

19   EXECUTIVES TO MEET.

20        APPLE AGREED TO THAT.  THE MEETING NEVER HAPPENED.  I'M

21   NOT PRIVY TO WHAT HIS CONVERSATION WAS WITH SAMSUNG, BUT APPLE

22   AGREED TO THAT AND THAT MEETING DIDN'T HAPPEN.

23        SO MR. VERHOEVEN CAN GIVE HIS SPEECHES AND HE CAN TALK

24   ABOUT WHAT OUR STRATEGY IS.  THEY ARE AN ADJUDICATED WILLFUL

25   INFRINGER, AND THAT'S NEW.

1    BUT IN TERMS OF YOUR HONOR'S QUESTION, I THINK THE -- THE

2    PERSON TO ASK THE QUESTION TO IS MAGISTRATE JUDGE SPERO.  HE'S

3    DOING A TERRIFIC -- HE CARES ENORMOUSLY.  HE IS TRYING VERY,

4    VERY HARD.  BUT HE IS THE PERSON WHO HAS BEEN TALKING DIRECTLY

5    TO THE EXECUTIVES ON BOTH SIDES AND HE HAS THE BEST INFORMATION

6    AND HE'S VERY GOOD AT HIS JOB.

7    THE COURT:  I KNOW THAT.

8    OKAY.  WELL --

9    MR. QUINN:  YOUR HONOR, I KNOW THE COURT HAD SAID

10   THE ISSUE REGARDING THE JUROR, JUROR HOGAN, WAS FULLY BRIEFED.

11   COULD I HAVE JUST A COUPLE MOMENTS?

12   THE COURT:  GO AHEAD, PLEASE.

13   MR. QUINN:  YOUR HONOR, WHAT DO WE KNOW ABOUT THE

14   FOREMAN IN THIS CASE, FOREMAN VELVIN HOGAN?  I MEAN, WE KNOW

15   THAT HE WAS DISHONEST ON AN IMPORTANT QUESTION IN JURY

16   SELECTION.  WE KNOW THAT.

17   AND WE KNOW ALSO FROM INTERVIEWS HE HAS GIVEN THAT HE VERY

18   MUCH WANTED TO BE ON THIS JURY.  HE TOLD REPORTERS THAT THIS

19   WAS THE HIGH POINT OF HIS CAREER, THE HIGH POINT OF HIS LIFE

20   EXCEPT FOR THE BIRTH OF HIS CHILDREN.  HE SAID THAT HE DIDN'T

21   THINK HE WOULD GET ON THE JURY.  HE GOT ON, AND WHEN HE GOT ON,

22   HE WAS VERY GRATEFUL.

23   SO THIS IS A JUROR, YOUR HONOR, WHO ANSWERED AN IMPORTANT

24   QUESTION ABOUT WHETHER -- THAT THIS COURT ASKED, A DIRECT

25   QUESTION ABOUT WHETHER HE HAD EVER BEEN INVOLVED IN LAWSUITS

1    AND FAILED TO GIVE THE KEY INFORMATION ABOUT THE SUIT THAT HE

2    HAD HAD WITH SAMSUNG'S PARTNER, SEAGATE.

3         AND WE KNOW ALSO THAT THIS WAS INTENTIONAL.  HE

4    DELIBERATELY WITHHELD IT.

5         HOW DO WE KNOW THAT?  HE HAS NEVER, EVER CLAIMED THAT HE

6    FORGOT ABOUT THAT SUIT, AT NO TIME.  WHEN HE WAS LATER

7    INTERVIEWED BY REPORTERS IN PUBLISHED REPORTS ABOUT WHY HE

8    DIDN'T BRING THIS UP WHEN IT BECAME AN ISSUE, HE NEVER CLAIMED

9    THAT HE HAD FORGOTTEN ABOUT IT.

10        INSTEAD HE GAVE TWO DIFFERENT, INCONSISTENT EXPLANATIONS

11   ACCORDING TO THE PRESS REPORTS:  FIRST, THAT HE THOUGHT THAT

12   THE QUESTION THAT YOUR HONOR ASKED WAS LIMITED TO ONLY IN THE

13   LAST TEN YEARS.

14        THAT WAS -- THERE'S NOTHING TO THAT.  THAT WASN'T YOUR

15   HONOR'S QUESTION.  THE TEN YEAR LIMITATION WAS NOWHERE IN THE

16   RECORD IN JURY SELECTION.  IN FACT, HE TESTIFIED ABOUT HIS JURY

17   SERVICE 40 YEARS BEFORE.

18        HE HEARD OTHER JURORS TALK ABOUT LITIGATION THEY HAD BEEN

19   INVOLVED IN THAT WAS LONGER THAN TEN YEARS.

20        HE ALSO GAVE THE INCONSISTENT EXPLANATION THAT HE HAD NOT

21   SPECIFICALLY BEEN ASKED BY YOUR HONOR TO DISCLOSE EVERY SINGLE

22   CASE HE HAD BEEN INVOLVED IN.

23        AGAIN, THE QUESTION WAS OPEN-ENDED, EVER ANY LAWSUIT.

24        SO HE WAS DISHONEST.  HE WAS DELIBERATELY DISHONEST.  WE

25   KNOW THAT.

 1          THIS WAS -- IT'S AN IMPORTANT ISSUE.  IT WAS ONE YEAR AGO

 2     THAT THIS PARTNERSHIP BETWEEN SAMSUNG AND SEAGATE WAS VERY

 3     WIDELY PUBLICIZED, PICKED UP AS HEADLINE NEWS IN NEWSPAPERS

 4     AROUND THE WORLD WHERE SAMSUNG BECAME SEAGATE'S LARGEST

 5     SHAREHOLDER, 12.5 PERCENT, BECOMING THE ONLY PUBLIC COMPANY IN

 6     THE UNITED STATES WHERE SAMSUNG HOLDS AN INTEREST; WHERE

 7     SAMSUNG HAD A DIRECTOR, A REPRESENTATIVE ON THE BOARD OF

 8     DIRECTORS, THE ONLY PUBLIC COMPANY IN THE UNITED STATES WHERE

 9     SAMSUNG IS ON THE BOARD OF DIRECTORS; WHERE SEAGATE BECAME THE

10     PROVIDER TO SAMSUNG FOR DISK DRIVES.

11          YOUR HONOR, THAT'S THE AREA WHERE MR. HOGAN SAID HE HAS

12     WORKED FOR 33 YEARS, IN DISK DRIVES.  THAT'S IN THE RECORD.

13          AND SAMSUNG PROVIDES SEAGATE WITH MOTORS AND FLASH DRIVES.

14          WITH ALL THAT AND A PRIOR LAWSUIT IN WHICH HE HAD SUED

15     SEAGATE FOR FRAUD AND HAD BEEN FORCED TO FILE BANKRUPTCY TO

16     PROTECT HIS HOME, HE DID NOT MENTION -- HE DID NOT DISCLOSE

17     THAT, EVEN THOUGH HE HADN'T FORGOTTEN IT.  HE REMEMBERED IT.

18          THIS IS A REMARKABLE FACT THAT AFTER THE TRIAL, WHEN A

19     JOURNALIST -- WHEN JOURNALISTS ASKED HIM, "WHY DIDN'T YOU

20     MENTION THIS?" OUT POPS THESE EXPLANATIONS.  "WELL, I THOUGHT

21     IT WAS LIMITED TO TEN YEARS.  I THOUGHT THAT I DIDN'T HAVE TO

22     MENTION EVERY CASE."

23          HE TOLD THE REPORTERS WHAT HE DID NOT TELL THIS COURT.  WE

24     NEVER HAD AN OPPORTUNITY, THE COURT NEVER HAD AN OPPORTUNITY TO

25     ASK HIM ABOUT THAT.

1        NOW, I THINK -- AND I WON'T SPEND THE TIME TO GO INTO IT,

2     I THINK BECAUSE OF THE CLOSENESS OF THE RELATIONSHIP, THE FACT

3     THAT HE HAD SUED FOR FRAUD, THE FACT THAT THIS SENT HIM INTO

4     BANKRUPTCY, I THINK WE HAVE A CASE HERE THAT HE COULD HAVE

5     BEEN, SHOULD HAVE BEEN EXCUSED FOR CAUSE.  WE DIDN'T HAVE A

6     CHANCE TO DEVELOP THAT.

7        BUT WE DON'T HAVE TO GO THAT FAR BECAUSE UNDER THE DYER

8     CASE, THIS WAS, IN JUDGE KAZINSKI'S OPINION, YOUR HONOR, THIS

9     WAS NOT A JUROR WHO WAS INDIFFERENT TO JURY SERVICE.  THIS WAS

10    A JUROR WHO WANTED TO BE ON THE JURY.

11       IN THE DYER CASE, JUDGE KAZINSKI DRAWS A DISTINCTION

12    BETWEEN INDIFFERENCE AND IMPARTIALITY AS TWO DIFFERENT THINGS,

13    AND HE SAYS THOSE ARE THE TWO HALLMARKS OF THE UNBIASSED JUROR,

14    IMPARTIALITY AND INDIFFERENCE TO SERVICE.

15       AND AN INDIVIDUAL -- AND THIS IS JUDGE KAZINSKI'S WORDS --

16    AN INDIVIDUAL WHO LIES IN ORDER TO IMPROVE HIS CHANCES HAS TOO

17    MUCH -- TO IMPROVE HIS CHANCES OF SERVING HAS TOO MUCH AT STAKE

18    TO BE CONSIDERED INDIFFERENT.  SUCH A JUROR, SUCH A JUROR IS A

19    JUROR IN NAME ONLY, QUOTING JUSTICE CARDOZO IN THE CLARK CASE.

20       THE REASON WHY SUCH A JUROR WHO REALLY WANTS TO BE ON THE

21    CASE AND WILL BE DISHONEST IN ORDER TO GET ON THE CASE, THE

22    REASON WHY THAT PERSON WANTS TO BE ON THE JURY DOESN'T MATTER.

23    THAT'S WHAT JUDGE KAZINSKI SAYS.  HE SAYS IT DOESN'T MATTER IF

24    THEY'RE MOTIVATED BY AN OVERACTIVE SENSE OF CIVIC DUTY, BY A

25    DESIRE TO AVENGE PAST WRONGS, BY THE HOPE OF WRITING A MEMOIR,

1    BY THE HOPE OF SETTING THE RECORD STRAIGHT IN U.S. PATENT LAW,

2    IT DOESN'T MATTER.

3         THE POINT IS THEY COME ON THE JURY ALREADY WITH AN AGENDA,

4    AND WHAT JUDGE KAZINSKI SAID IS THE PROBLEM WITH THAT, THE

5    JUROR WHO IS NOT INDIFFERENT, IS THAT THAT JUROR IS

6    PARTICULARLY INCLINED NOT TO LISTEN TO THE COURT'S

7    INSTRUCTIONS.

8         AND I SUBMIT THAT'S EXACTLY WHAT HAPPENED HERE.  WE'VE ALL

9    SEEN IN THE PRESS REPORTS HIS EXPLANATION ABOUT HOW INITIALLY

10   THE JURY WAS DEADLOCKED, PERHAPS FAVORING SAMSUNG, BUT IF --

11   BECAUSE HE WAS INVOLVED -- IF HE HADN'T BEEN INVOLVED, THE

12   RESULT MIGHT HAVE BEEN DIFFERENT.

13        BUT HE THOUGHT ABOUT IT OVERNIGHT, HE SAID HE HAD AN

14   AH-HAH MOMENT, AND HE THEN EXPLAINED TO THE JURORS THAT IN

15   LOOKING AT INFRINGEMENT, THE TEST IS, DOES IT HAVE THE SAME

16   LOOK AND FEEL, THAT IT CAN'T BE INFRINGED -- THAT IT WOULD BE

17   INFRINGING UNLESS IT -- TO BE NON-INFRINGING, IT HAS TO BE

18   ENTIRELY DIFFERENT, THAT THE PRIOR ART IS NOT INVALIDATING

19   UNLESS THE PRODUCTS ARE INTERCHANGEABLE, THAT THE PRIOR ART

20   MUST BE CURRENTLY IN USE.

21        WE BRING THAT UP, YOUR HONOR, NOT TO INVADE THE BLACK BOX

22   OF THE JURY AND TO COLLATERALLY ATTACK THE VERDICT BASED UPON

23   THE SUBSTANCE OF THE DISCUSSIONS.

24        WE BRING THAT UP TO SHOW THAT, IN FACT, THE DANGER THAT

25   JUDGE KAZINSKI IDENTIFIED OF PUTTING IN THE JURY BOX A JUROR

```
 1        WHO IS NOT INDIFFERENT, BUT DESPERATELY WANTS TO SERVE, THAT

 2        THEY WON'T LISTEN TO THE COURT'S INSTRUCTIONS, THAT'S EXACTLY

 3        WHAT HAPPENED HERE.  IT'S EXACTLY WHAT HAPPENED HERE.

 4            AND SUCH A JUROR WAS A JUROR IN NAME ONLY.  UNFORTUNATELY,

 5        HE BECAME THE FOREPERSON.

 6                THE COURT:  LET ME ASK A QUESTION.  MR. HOGAN

 7        DISCLOSED THAT HE HAD WORKED FOR SEAGATE.  WHY DIDN'T YOU ALL

 8        ASK A QUESTION, DURING VOIR DIRE, ABOUT HIS RELATIONSHIP WITH

 9        SEAGATE?

10                MR. QUINN:  WE HAD NO REASON TO THINK THAT HE HAD

11        ANY TYPE OF LEGAL ISSUE WITH SEAGATE, YOUR HONOR.  HE ANSWERED

12        THE COURT'S -- THE WAY IT WAS LEFT, HE LED US TO BELIEVE THAT

13        HE DIDN'T HAVE ANY LITIGATION WITH SEAGATE.

14            THE COURT ASKED -- I MEAN, THAT WOULD HAVE BEEN VERY

15        IMPORTANT FOR US TO KNOW IF HE HAD HAD A LITIGATION WITH

16        SEAGATE.  OBVIOUSLY THAT'S SOMETHING THAT WE WOULD HAVE

17        FOLLOWED UP ON AND WOULD LIKELY HAVE BROUGHT UP AS A CHALLENGE

18        FOR CAUSE.

19            I THINK WE'RE ENTITLED TO RELY ON THE ANSWERS HE GAVE IN

20        THE COURTROOM AT THE TIME.

21            SO WE'RE LEFT WITH THE IMPRESSION, GIVEN LIMITED TIME IN

22        VOIR DIRE, THAT HE HAD -- THAT THERE WEREN'T ANY ISSUES BETWEEN

23        HIM AND SEAGATE, CERTAINLY NOT ANY LEGAL ISSUES, AND THAT'S THE

24        WAY IT WAS LEFT.

25            THIS -- THIS IS A MAN WHO SAYS HE WANTED TO GET ON THE
```

1    JURY.

2         THE DYER CASE IS DIFFERENT.  THE REASON -- THE BASIS FOR

3    CONCLUDING THAT THE JUROR WAS OVEREAGER IN THE DYER CASE WAS --

4    WERE THE UNTRUTHS THAT THE JUROR TOLD, AND PIECING THOSE

5    TOGETHER, JUDGE KAZINSKI CONCLUDED, THIS IS SOMEBODY WHO WAS

6    TOO EAGER TO GET ON THIS JURY.  THEY TOLD THESE UNTRUTHS.

7         HERE WE DON'T NEED THAT.  HE HAS TOLD MEMBERS OF THE PRESS

8    THAT, AS I SAID, THAT THIS WAS THE MOST IMPORTANT EVENT OF HIS

9    LIFE EXCEPT FOR THE BIRTH OF HIS CHILDREN, THAT HE WANTED TO

10   GET ON, THAT HE FEARED HE WOULDN'T GET ON, THAT HE WAS GRATEFUL

11   TO HAVE GOTTEN ON THE JURY.

12        HE KNEW, I SUBMIT -- THIS IS A MAN WHO WORKED IN DISK

13   DRIVES FOR 36 YEARS -- HE KNEW ABOUT THE RELATIONSHIP BETWEEN

14   SEAGATE AND SAMSUNG AND HE DIDN'T BRING THAT UP BECAUSE HE

15   WANTED TO GET ON THE JURY.

16        NOW, WE HAVEN'T HAD A CHANCE TO QUESTION HIM ABOUT THAT,

17   BUT I WOULD SAY THAT UNDER THE DYER CASE, JUDGE KAZINSKI SAID

18   ANY DOUBTS REGARDING BIAS HAVE TO BE RESOLVED AGAINST THE,

19   AGAINST THE JUROR.

20        IN THAT CASE DYER -- THE COURT -- THE COURT IN DYER SAID

21   THAT IF THE COURT IS CONFRONTED WITH A COLORABLE CLAIM OF A

22   JUROR BIAS, IT MUST UNDERTAKE AN INVESTIGATION.

23        AND IN THE HARD I CASE, THE FIRST HARD CASE, HARD VERSUS

24   BURLINGTON, THE NINTH CIRCUIT SAID THAT "WHERE THERE EXISTS A

25   POSSIBILITY OF DISHONESTY, WHICH IS SUFFICIENT TO MAKE THE

1    FAILURE" -- "WHERE THERE EXISTS A POSSIBILITY OF DISHONESTY

2    WHICH IS SUFFICIENT TO MAKE A FAILURE TO HAVE CONDUCTED A

3    HEARING AN ABUSE OF DISCRETION."

4         SO AT A MINIMUM WE SUBMIT, YOUR HONOR, THE COURT NEEDS TO

5    HOLD A HEARING HERE.

6         AND WHAT WE'RE ASKING ARE TWO THINGS:  THAT FOREMAN HOGAN

7    BE BROUGHT IN AND WE HAVE AN OPPORTUNITY TO QUESTION HIM ABOUT

8    THESE THINGS; AND THAT THE OTHER JURORS -- SECOND, THAT THE

9    OTHER JURORS ALSO BE BROUGHT IN AND WE HAVE A CHANCE TO

10   QUESTION THEM ABOUT WHAT HE SAID AND WHAT THE IMPACT AND --

11   WHAT IMPACT THIS HAD ON THE JURY DELIBERATIONS WAS.

12        WE SUBMIT -- I FRANKLY THINK, YOUR HONOR, IT WOULD BE AN

13   ABUSE OF THE COURT'S DISCRETION AT THIS POINT NOT TO HOLD A

14   HEARING.

15        THANK YOU, YOUR HONOR.

16            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

17        VERY BRIEFLY.

18            MR. LEE:  YOUR HONOR, LET ME RESPOND TO IT THIS WAY,

19   AND IT MAY ADDRESS A NUMBER OF THINGS THAT YOUR HONOR HAS

20   ADDRESSED DURING THE COURSE OF THE DAY.

21        WHAT SAMSUNG HAS TOLD YOU IS THE JURY FOREMAN LIED, NOT

22   TRUE; THAT HE WAS DISHONEST, NOT TRUE, SUCH THAT THEY CAN

23   SATISFY THE MCDONOUGH STANDARD OF THE SUPREME COURT OR THE HARD

24   STANDARD OF THE NINTH CIRCUIT FOR A HEARING.  THEY CAN DO

25   NEITHER.

```
 1           BUT IN THE SAME BREATH THEY TELL YOU THAT THIS JURY WAS

 2     PHENOMENALLY DILIGENT, PHENOMENALLY PRECISE, PHENOMENALLY

 3     DETAILED, AND YOU SHOULD GO WITH THE DETAIL, EXCEPT WHERE IT

 4     DOESN'T FIT AND THEY CAN RE-ENGINEER IT.

 5           AND THEN SPEAKING OUT OF ANOTHER PART OF THEIR MOUTH, THEY

 6     SAY, BUT IF IT'S AMBIGUOUS, THE BENEFIT OF THE DOUBT GOES TO

 7     SAMSUNG.

 8           YOUR HONOR, THEY HAVE IT PRECISELY WRONG ON ALL THREE

 9     COUNTS, AND HERE'S THE REASON.  MCDONOUGH SAYS WE'VE GOT TO

10     HAVE A TWO-PART TEST, WHICH MR. QUINN DOESN'T MENTION.  IT SAYS

11     THE JUROR HAS TO BE DISHONEST, NOT INCOMPLETE, NOT MISTAKEN,

12     BUT DISHONEST TO THE EXTENT OF BEING IN BAD FAITH.

13           IT SAYS, IN ADDITION, YOU HAVE TO SHOW THAT IT WOULD HAVE

14     LED TO A DISMISSAL FOR CAUSE.

15           DYER, THE EXTRAORDINARY CASE THAT MR. QUINN REFERS TO, WAS

16     A CIRCUMSTANCE IN WHICH -- IT WAS A MURDER CASE -- THE JUROR

17     LIED ABOUT WHETHER ANY RELATIVE HAD EVER BEEN THE VICTIM OF A

18     CRIME, AND IT TURNED OUT THAT HER BROTHER HAD BEEN BRUTALLY

19     MURDERED IN A WAY THAT WAS VERY CLOSE TO THE TRIAL.

20           IT IS SO FAR FROM WHAT MR. HOGAN IS CLAIMED TO HAVE DONE

21     AS TO BE A LITTLE BIT ABSURD.

22           THEY CAN'T SATISFY THOSE STANDARDS NO MATTER WHAT THEY

23     CLAIM.

24           THE MOST PREPOSTEROUS PART, YOUR HONOR, IS THIS:  THEY'RE

25     CLAIMING THAT MR. HOGAN LIED ABOUT AN EVENT THAT OCCURRED 19
```

1    YEARS AGO; THAT HE HARBORED A GRUDGE FOR 19 YEARS; THAT HE KNEW

2    THAT, 11 MONTHS AGO, SAMSUNG HAD ENTERED INTO A STOCK

3    TRANSACTION TO ACQUIRE 10 PERCENT; AND THAT IT WAS HIS GOAL IN

4    LIFE TO GET ON THE JURY, TO INJURE THAT SHAREHOLDER, TO GET

5    BACK AT SEAGATE FOR SOMETHING THAT HAPPENED 19 YEARS AGO.

6         THAT DOESN'T MAKE ANY SENSE.  MR. HOGAN WAS ASKED THIS

7    QUESTION:  "HAVE YOU OR ANY MEMBER OF YOUR FAMILY EVER BEEN

8    INVOLVED IN A LAWSUIT?"  HE RAISED HIS HAND AND SAID YES.  HE

9    WAS ASKED ABOUT THE LAWSUIT.  HE DESCRIBED IT.  HE WAS

10   INDIVIDUALLY VOIR DIRED BY MR. PRICE FOR TWO AND A HALF PAGES

11   AND NEVER ASKED ABOUT SEAGATE OR ANY ADDITIONAL LAWSUITS.

12        ALL OF THE RULES THAT WE'VE TALKED ABOUT TODAY, YOUR

13   HONOR, THE MCDONOUGH STANDARD THAT REQUIRES DISHONESTY TO THE

14   EXTENT OF BAD FAITH, THAT WOULD HAVE LED TO THE DISMISSAL FOR

15   CAUSE, THE HARD STANDARD THAT SAYS NO EVIDENTIARY HEARING,

16   UNLESS THE COURT CONCLUDES ON THE PRESENT RECORD IT AFFECTED

17   THE OUTCOME OF THE CASE, AND THE LAW THAT MR. MCELHINNY AND

18   MR. JACOBS REFERRED TO THAT SAYS YOU DON'T REVERSE ENGINEER

19   JURY VERDICTS ARE ALL FOR A VERY SIMPLE REASON.

20        WE BELIEVE IN THE INTEGRITY OF JURY VERDICTS.  WE BELIEVE

21   IN WHAT THEY'VE DONE.

22        THE DIFFERENCE FROM NOW AND JULY IS SAMSUNG HAS BEEN

23   FOUND, BY EIGHT FOLKS WHO SAT HERE FOR FOUR WEEKS, TO BE AN

24   ADJUDICATED, WILLFUL INFRINGER.

25        THEY DON'T GET THE BENEFIT OF THE DOUBT ANY LONGER.  THEY

```
1    DON'T GET THE BENEFIT OF THE DOUBT IN CALLING MR. HOGAN A LIAR.

2         HE'S NOT, AND I THINK IT'S OUTRAGEOUS THAT HE'S BEING

3    CALLED A LIAR.

4         THEY DON'T GET THE BENEFIT OF THE DOUBT ON AMBIGUITIES,

5    AND THEY DON'T GET THE BENEFIT OF THE DOUBT ON RE-ENGINEERING.

6         THANK YOU, YOUR HONOR.

7              MR. QUINN:  MAY I MAKE TWO POINTS FROM HERE?

8              THE COURT:  GO AHEAD, PLEASE.

9              MR. QUINN:  ONE, MCDONOUGH DOESN'T APPLY SINCE THAT

10   DEALS WITH THE CIRCUMSTANCE OF THE HONEST BUT MISTAKEN JUROR,

11   AND IN THAT CIRCUMSTANCE YOU HAVE TO SHOW THAT IT WOULD HAVE

12   BEEN -- A TRUTHFUL ANSWER WOULD HAVE GIVEN GROUNDS FOR A

13   CHALLENGE FOR CAUSE.  THAT'S HOW IT'S BEEN INTERPRETED BY THE

14   NINTH CIRCUIT IN DYER AND IN THE FIELDS CASE SINCE THEN.  SO

15   FIRST OFF, MCDONOUGH HAS NO APPLICATION HERE.

16        TWO, THE FACT THAT HE DID DISCLOSE ONE LAWSUIT IS

17   IRRELEVANT.  I'LL JUST QUOTE JUSTICE CARDOZO FROM THE CLARK

18   VERSUS U.S. CASE, "THE JUROR COUNTED OFF A FEW PAST JOBS WHEN A

19   PREVIOUS EMPLOYMENT WAS RELEVANT, AND CHECKED HERSELF AT THE

20   VERY POINT WHERE THE COUNT, IF COMPLETED, WOULD BE LIKELY TO

21   BAR HER FROM THE BOX."

22        FOREMAN HOGAN MENTIONED A PREVIOUS LAWSUIT, WHICH HE'S

23   NEVER CLAIMED HE FORGOT -- INDEED HE'S GIVEN INCONSISTENT

24   ANSWERS ABOUT WHY HE DIDN'T DISCLOSE IT TO THE COURT -- BUT

25   DIDN'T MENTION THE ONE -- MENTIONED ONE, BUT DIDN'T MENTION THE
```

1    ONE THAT WOULD HAVE MADE A DIFFERENCE.

2         THIS IS A JUROR WHO HAD AN AGENDA AND, FRANKLY, WE -- IT'S

3    UNFORTUNATE THAT HE GOT ON THE JURY.

4         I TAKE NO PLEASURE -- AS SOMEONE WHO WORKS A LOT WITH

5    JURIES, I TAKE NO PLEASURE IN SAYING THAT A JUROR ENGAGED IN

6    MISCONDUCT AND SAID SOMETHING THAT WAS -- GAVE AN ANSWER THAT

7    WAS NOT HONEST, BUT THAT IS CLEARLY WHAT HAPPENED HERE AND IT

8    MADE A DIFFERENCE.

9         THANK YOU, YOUR HONOR.

10             MR. MCELHINNY:   JUST 30 SECONDS, YOUR HONOR, AS A

11   POINT OF PERSONAL PRIVILEGE ON THIS ISSUE.

12        I DON'T KNOW VELVIN HOGAN.  I'VE NEVER SPOKEN TO HIM,

13   NEVER SAID A WORD TO HIM.  I HAVE NO FACTS WHATSOEVER.

14   MR. LEE, THIS IS HIS MOTION.

15        BUT AS YOUR HONOR KNOWS, THIS IS A HARD FOUGHT CASE.

16   THERE ISN'T A PLEADING THAT GETS FILED IN THIS CASE THAT

17   DOESN'T ACCUSE MY FIRM OR MY CLIENT OF SOME TYPE OF HEINOUS

18   CONDUCT, AND WE HAVE THICK SKINS AND THAT SORT OF ROLLS OFF.

19        WHEN MR. QUINN ATTACKS THE COURT IN THIS CASE AND ISSUES

20   HIS PRESS RELEASE, YOUR HONOR WILL BE ABLE TO HANDLE THAT

21   ATTACK.  YOU HAVE THE INSTRUMENTS AT YOUR COMMAND TO DEAL WITH

22   THAT KIND OF AN ATTACK.

23        VELVIN HOGAN IS NOT INVOLVED IN THIS CASE.  WE PULLED HIM

24   IN TO BE A JUROR.  HE HAS BEEN ACCUSED IN THE PRESS, ON A

25   COMPLETELY BASELESS MOTION WITH ABSOLUTELY NO FACTUAL BASIS

1    WHATSOEVER, AND SO THE ONE THING I WOULD LIKE TO ASK IS THAT

2    WHEN YOUR HONOR WRITES THIS -- FRANKLY, WHEN I READ IN THE

3    PRESS THAT WE HAD JURORS IN A PATENT CASE THAT SAID THAT BEING

4    ON THIS CASE WAS THE BEST THING THAT EVER HAPPENED TO THEM IN

5    THEIR LIVES, I THOUGHT THAT WAS A TRIBUTE TO YOU, IT WAS A

6    TRIBUTE TO MR. VERHOEVEN, AND IT WAS A TRIBUTE TO MR. LEE.

7         I THOUGHT THAT WAS A TERRIFIC THING.  I THOUGHT THE COURT

8    SHOULD DO AN OUTREACH FILM TO SAY "COME AND BE ON OUR JURIES

9    AND YOU WILL ENJOY IT."

10        BUT MR. DOUGLAS CAN'T -- MR. HOGAN CANNOT DEFEND HIMSELF.

11   THEY WENT TO THE PRESS WITH THESE ATTACKS.  HE WILL NEVER GET A

12   CHANCE TO ANSWER THEM.

13        SO MY PERSONAL PRIVILEGE IS WHEN YOUR HONOR WRITES THE

14   ORDER HERE, THAT YOU KEEP THAT IN MIND.  IT'S NOT ENOUGH TO SAY

15   THE MOTION WAS FRIVOLOUS UNDER THESE STANDARDS, THAT THERE WAS

16   NO BASIS, BUT THAT YOU TAKE THE TIME, IF YOU AGREE, TO MAKE IT

17   CLEAR TO THE PUBLIC, BECAUSE MR. HOGAN WILL NEVER GET THE

18   CHANCE, THAT THIS MOTION WAS JUST ANOTHER -- AN UNPROFESSIONAL

19   MOTION IN A CASE IN WHICH NO STONE IS LEFT UNTURNED.

20             THE COURT:  ALL RIGHT.  WELL, I WANT TO THANK ALL OF

21   YOU FOR YOUR PATIENCE TODAY AND FOR ALL OF THE HELPFUL

22   INFORMATION YOU PROVIDED.  I WILL TRY TO GET THESE ORDERS OUT

23   AS QUICKLY AS I CAN.

24        THANK YOU ALL.

25        I ALSO WOULD LIKE TO THANK AMY KNIGHT BURNS AND

1          ASHER HODES FOR THEIR WORK.

2               ALL RIGHT.   THANK YOU ALL.

3                    MR. VERHOEVEN:   THANK YOU, YOUR HONOR.

4                    MR. MCELHINNY:   THANK YOU, YOUR HONOR.

5                    MR. LEE:   THANK YOU, YOUR HONOR.

6                    MR. QUINN:   THANK YOU, YOUR HONOR.

7               (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE

8          CONCLUDED.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18                   DATED:  DECEMBER 18, 2012

19

20

21

22

23

24

25