1  ARNOLD & PORTER LLP
   MICHAEL J. BAKER (No. 56492)
2  mike.baker@aporter.com
   GABRIEL N. WHITE (No. 258257)
3  gabriel.white@aporter.com
   Three Embarcadero Center, 7th Floor
4  San Francisco, California  94111-4024
   Telephone: 415.471.3100
5  Facsimile: 415.471.3400

6  Attorneys for Non-Party,
   IDC RESEARCH, INC.
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

| | |
|---|---|
| 11  APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| 12                        Plaintiff, | **DECLARATION OF CRAWFORD DEL PRETE IN SUPPORT OF NON-PARTY IDC RESEARCH, INC.'S ADMINISTRATIVE MOTION TO SEAL** |
| 13            v. | |
| 14  SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 18                        Defendants. | |

**PUBLIC VERSION**

I, Crawford Del Prete, declare as follows:

1. I am Executive Vice President, Worldwide Research Products and Chief Research Officer for IDC Research, Inc. (d.b.a. International Data Corporation) ("IDC"). I work at the company's headquarters in Framingham, Massachusetts. I submit this declaration in support of IDC's Administrative Motion to Seal. I know the following to be true of my own personal knowledge and, if called upon as a witness, could and would testify competently thereto.

2. IDC is a provider of market intelligence, advisory services, and events for the information technology, telecommunications, and consumer technology markets. Among the services provided, IDC distributes "trackers," which provide up-to-date market size, vendor share and forecasts for hundreds of technology markets around the globe. More than 1,000 IDC analysts provide global, regional, and local expertise on technology and industry opportunities and trends in over 110 countries worldwide. For more than 48 years, IDC has provided strategic insights to help our clients achieve their key business objectives.

3. IDC's "Worldwide Quarterly Mobile Phone Tracker" fills the demand for detailed and timely information on the total mobile phone and smartphone markets for handset vendors, software developers, service providers, component suppliers, and investors. It provides insightful analysis through quarterly market share data by region.

4. The geographic scope of the Worldwide Quarterly Mobile Phone Tracker is:

   a. Asia/Pacific (excluding Japan), available by 14 countries
   b. Canada
   c. Central and Eastern Europe, available by 6 countries
   d. Japan
   e. Latin America, available by 11 countries
   f. Middle East and Africa, available by 10 countries
   g. United States
   h. Western Europe, available by 16 countries.

5. IDC's tracker data is developed using a rigorous methodology that includes well-planned and well-coordinated local, regional, and worldwide data cross-checks, combined with a

proprietary advanced data consolidation and data analysis platforms managed by IDC's Worldwide Tracker organization. Data sources used in the process of determining IDC's tracker numbers include, but are not limited to,

    a. In country local vendor interviews

    b. Distribution data feeds

    c. Worldwide and regional vendor guidance

    d. ODM data

    e. In-country local channel partner discussions

    f. Import records

    g. Feedback from component suppliers

    h. Vendor briefings and public financial reports.

6. In short, each edition of IDC's Worldwide Quarterly Mobile Phone Tracker represents extensive work product that resulted from countless hours of employee time.

7. It is extremely important to IDC's business that access to its trackers, including the Worldwide Quarterly Mobile Phone Tracker, be limited to customers that have paid for it. Toward that end, IDC includes standard language in each of its customer contracts that requires the customer to obtain IDC's express written permission before the customer distributes, promotes, or otherwise uses a tracker for any use external to the customer. A true and correct copy of IDC's General Terms and Conditions, which contains that contractual obligation, is attached hereto as Exhibit A.

8. Apple purchased from IDC a version of the "Worldwide Quarterly Mobile Phone Tracker 2012Q2" (the "Tracker"), subject to the standard language requiring the customer to obtain IDC's express written permission before the customer distributes, promotes, or otherwise uses a tracker for any use external to the customer.

9. IDC has repeatedly advised the parties of the highly sensitive nature of the Tracker, and has consistently withheld consent for both Apple and Samsung to disclose it publicly, either in a public filing or at a trial or hearing in this litigation, or any other forum.

10. IDC gave its permission for Apple to produce and use the Tracker in response to a discovery request from Samsung in this litigation, on the express condition that the material be marked "Highly Confidential—Attorney's Eyes Only." A true and correct copy of the "Fourth Amended Content Use Agreement" entered into by Apple and IDC with respect to the Tracker is attached hereto as Exhibit B.

11. Pursuant to the Agreement between Apple and IDC, IDC's consent to use the Tracker in the litigation is "**null and void** if at any time, for any reason, the IDC Content is no longer afforded the protections set forth in the Protective Order . . . ." A true and correct copy of the "Content Use Agreement" entered into by Apple and IDC with respect to the Tracker is attached hereto as Exhibit C.

12. It is IDC's understanding that Apple, consistent with its contractual obligations to IDC, produced the Tracker to Samsung under the highest level of protection allowed under the Protective Order.

13. I am informed that, rather than withdrawing the document following the Court's denial of its motion to file it under seal, which IDC has requested Samsung do, Samsung has notified IDC that it now intends to file the Tracker as a public document.

14. Public disclosure of the Tracker, for example by its filing in this matter as a publically available document, would materially and adversely impact IDC's commercial interests in at least two ways.

15. First, should these materials be made public, prospective customers would have no need to purchase them from IDC. The current list price for the Tracker purchased from IDC by Apple is over $400,000. The data and analysis contained therein remains extremely current, and it is therefore especially valuable to IDC and its potential customers.

16. Second, public disclosure of the Tracker would provide a windfall to IDC's competitors and thereby place IDC at a competitive disadvantage. Again, these materials represent extensive work product that resulted from countless hours of employee time. Disclosure of the Tracker would give this information away to IDC's competitors, and thereby enable them to, at no cost, benefit from IDC's hard work and investment.

17. For all of the foregoing reasons, I believe it is critical to IDC's business interests that the Tracker described above remain confidential and not be included in the public file for this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___20___ day of December, 2012, in Framingham, Massachusetts.

_____
CRAWFORD DEL PRETE

# Exhibit A

# Confidential Exhibit (Being Lodged Under Seal)

# **Exhibit B**

# Confidential Exhibit (Being Lodged Under Seal)

# **Exhibit C**

# Confidential Exhibit (Being Lodged Under Seal)