# Exhibit A

# EXHIBIT 1

# FILED UNDER SEAL

Confidential

1              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
2                 SAN JOSE DIVISION

3

   APPLE INC., a California      )
4  corporation,                  )
                                 )
5                   Plaintiff,   )
                                 )
6  vs                            )Case No. 11-CV-01846-LHK
   SAMSUNG ELECTRONICS CO.,      )
7  LTD., a Korean corporation;   )
   SAMSUNG ELECTRONICS AMERICA,  )
8  INC., a New York              )
   corporation, SAMSUNG          )
9  TELECOMMUNICATIONS            )
   AMERICA, LLC, a Delaware      )
10 Limited Liability company,    )
                                 )
11                  Defendants.  )
   _____ )
12

13    VIDEOTAPED DEPOSITION OF KARANSHER SINGH, Ph.D
14                "CONFIDENTIAL"
15             December 3, 2012
16             AT:  10:00 a.m.
17

18                 Taken at:
19             Morrison & Foerster
        Edinburgh Tower, 33/F - The Landmark
20                Hong Kong SAR
21

22

   Court Reporter:
23 Jeanne Bullis
   RPR, CSR
24 Reporter: 55957
25

Confidential

Page 372

1    WHEREUPON,

2                    KARANSHER SINGH

3    having been first duly sworn as noted above, was examined

4    and testified as follows:                              10:22

5    EXAMINATION BY MR. BRIGGS:                              10:22

6        Q.  Good morning, Dr. Singh.                        10:22

7        A.  Good morning.                                   10:22

8        Q.  I'm handing you what has been marked as         10:22

9    Exhibit No. 1.  This is a copy of your declaration      10:22

10   that you submitted in support of Apple's permanent      10:22

11   injunction motion.  Do you recognize this document?     10:22

12       (Exhibit 1 marked for identification.)

13   BY MR. BRIGGS:                                          10:22

14       A.  Yes, I do.                                      10:22

15       Q.  So you recognize this as your declaration?      10:23

16       A.  Yes.                                            10:23

17       Q.  And you signed this on November 9th, 2012?      10:23

18       A.  I believe so, yes.                              10:23

19       Q.  When did you start writing this declaration?    10:23

20       A.  I would say shortly -- well, I started to       10:23

21   work on it shortly after Mr. Gray, Samsung's expert,    10:23

22   filed a declaration sort of asking -- well, against an  10:23

23   injunction.  So I started working on it shortly after   10:24

24   that.                                                   10:24

25       Q.  Now, did you write this declaration?            10:24

Confidential



Confidential

Page 402

1       Q.  Now, would you agree with me that fingers        11:17

2   touching a touchscreen are input points?                 11:17

3       MR. MONACH:  Objection.  Vague.                       11:18

4       A.  In a very general sense, typically, yes.  But    11:18

5   if you were to -- if you were, for instance, to put       11:18

6   two fingers like that (Indicating), that would            11:18

7   typically be observed on the device as a single input    11:18

8   point.                                                    11:18

9       So while often we talk about fingers over here,      11:18

10  the patent actually specifically talks about what the     11:18

11  device sees, which are distinct input points.             11:18

12  BY MR. BRIGGS:                                            11:19

13      Q.  What does the claim talk about?                   11:19

14      A.  The claim talks about --                          11:19

15      MR. MONACH:  Objection, vague.  Best                  11:19

16  evidence rule.                                            11:19

17      A.  The claim talks about what's in the claim, I      11:19

18  guess.                                                    11:19

19  BY MR. BRIGGS:                                            11:19

20      Q.  Doesn't the claim talk about input points        11:19

21  applied to the touch-sensitive display?                   11:19

22      A.  That's right.                                     11:19

23      Q.  It's right in the plain language of the          11:19

24  claims.                                                   11:19

25      A.  Yes.                                              11:19

Confidential

Page 403

1      Q.  So if I have one finger touching the screen,        11:19

2   that would be one input point.                             11:19

3      A.  Right.                                              11:19

4      Q.  If you have two fingers touching the screen,        11:19

5   that would be two input points; correct?                   11:19

6      A.  That's right.  I said generally, that is            11:19

7   true.                                                      11:19

Confidential

```
 7       Q.  And when you say "two input touches," are you      11:21
 8   talking about two input touches applied to the             11:21
 9   touchscreen, or are you talking about two touches as       11:21
10   interpreted by the device?                                 11:21
11       A.  Well, I believe the claims and the patent          11:21
12   essentially relate to the device.  We talk about input     11:21
13   touches.  I have a research paper where people operate     11:22
14   these devices with anodes.  So we're talking about the     11:22
15   device here.                                               11:22
16       Q.  Okay, so you're talking about how the device       11:22
17   interprets what is touching the screen; is that            11:22
18   correct?                                                   11:22
19       MR. MONACH:  Objection.  Vague.                        11:22
20       A.  Well, in the context of everything that we've      11:22
21   been talking about right now, in the context of the        11:22
22   claim, we're talking about the device, yes.                11:22
23   BY MR. BRIGGS:                                             11:22
24       Q.  Let's assume -- I understand that's your           11:22
25   interpretation of the claim, but let's assume that the     11:22
```

Confidential

Page 405

1    interpretation of the claim were different, and that    11:22

2    the claim is actually talking about input points that    11:23

3    are applied physically to the touchscreen.    11:23

6        MR. MONACH:  Objection.  Vague and    11:23

7    ambiguous, incomplete hypothetical.    11:23

8        A.  No, because physical input points on the    11:23

9    device need to have a physical separation on the    11:23

10    device.    11:23

11    BY MR. BRIGGS:    11:23

15        MR. MONACH:  Objection.  Incomplete    11:23

16    hypothetical.    11:23

17        A.  Well, hypothetically if you had Siamese    11:24

18    fingers, you potentially could have them both mapped    11:24

19    to a single input touch.  So that would be a single    11:24

20    input point, not ...    11:24

21    BY MR. BRIGGS:    11:24

22        Q.  Now, you don't need Siamese fingers; correct?    11:24

23        MR. MONACH:  Objection.  Vague and    11:24

24    ambiguous.    11:24

25        A.  You need to -- well, you need to be able to    11:24

Confidential

Page 406

1    have a single input touch which physically map to the        11:24

2    same device location.                                         11:24

3    BY MR. BRIGGS:                                                11:24

7        MR. MONACH:  Objection.  Lack of foundation,             11:25

8    incomplete hypothetical with respect to the                   11:25

9    hardware, the distance, etcetera.                             11:25

13   BY MR. BRIGGS:                                                11:25

14       Q.  So going back to my question, the answer is          11:25

15   "yes"?                                                        11:25

16       MR. MONACH:  Objection.  Vague and                       11:25

17   ambiguous.                                                    11:25

Confidential

Page 407

1   BY MR. BRIGGS:                                    11:26

6       A.  In this --                                11:27

7       MR. MONACH:  Objection -- hold on.            11:27

8       A.  Excuse me.                                11:27

9       MR. MONACH:  Objection.  Vague and            11:27

10  ambiguous, assumes facts not in evidence, calls   11:27

11  for a legal conclusion about a method in the      11:27

12  claim that relates to instructions.               11:27

20      And so it doesn't matter in any case when you  11:28

21  talk about two fingers close together or two fingers  11:28

22  apart and so on, because the claim that we're talking  11:28

23  about here is, it's a machine claim.  It deals with a  11:28

24  set of instructions.  It is the instructions that  11:28

25  operate on the number of input touches that the device  11:29

Confidential

Page 408

| | | |
|---|---|---|
| 1 | interprets. | 11:29 |
| 2 | BY MR. BRIGGS: | 11:29 |
| 3 | Q.  Okay, I understand that, but let me ask the | 11:29 |
| 4 | question a different way. | 11:29 |
| 5 | A.  Okay. | 11:29 |

| | | |
|---|---|---|
| 9 | MR. MONACH:  Objection.  Lack of foundation, | 11:29 |
| 10 | incomplete hypothetical. | 11:29 |

| | | |
|---|---|---|
| 24 | MR. MONACH:  Same objection.  Lack of | 11:30 |
| 25 | foundation, incomplete hypothetical, asked and | 11:30 |

Confidential

Page 409

1    answered in a previous question.                          11:30

Confidential

4    Now, in that case, would there be infringement of       11:33

5  the '915 patent, based on your analysis?                  11:33

6    MR. MONACH:  Object to the form of the                  11:33

7  question as an incomplete hypothetical, outside           11:33

8  the scope of the reply declaration and the scope          11:33

9  of the deposition permitted.  Object to asking            11:33

10  Apple's expert to make seat-of-the-pants opinions        11:33

11  for Samsung's benefit about how they might               11:33

12  attempt to design around the patent.  That's not         11:33

13  what he is here for.                                      11:33

14    MR. BRIGGS:  Your speaking objections are              11:33

15  getting a little lengthy, Mr. Monach.                     11:33

16    MR. MONACH:  Well, if you would restrict               11:33

17  your questions to the opinions that he's offered,         11:33

18  which is what you told the judge you needed to            11:34

19  ask him questions about and why you needed to             11:34

20  have this supplemental discovery, then you should        11:34

21  do that instead of asking him questions about how        11:34

22  might we do something different than what we did          11:34

23  and what might be the results of that.  That is           11:34

24  not an issue --                                           11:34

25    MR. BRIGGS:  I'm asking him about --                    11:34

Confidential

Page 411

1     MR. MONACH:  No, you're asking him how might    11:34

2  -- "We understand you think this fringes.  How    11:34

3  about if we tweaked it like this, how about if we    11:34

4  tweaked it like that?  What if we did something    11:34

5  else."    11:34

6     MR. BRIGGS:  Is it your position I cannot    11:34

7  ask him that question?    11:34

8     MR. MONACH:  I didn't instruct him not to    11:34

9  answer.  My position is --    11:34

10     MR. BRIGGS:  Then --    11:34

11     MR. MONACH:  -- that it's objectionable and    11:34

12  it's clearly beyond the scope.    11:34

13     MR. BRIGGS:  Cease the speaking objections.    11:34

14     MR. MONACH:  It is beyond -- for the reasons    11:34

15  stated, it is clearly beyond the scope of the    11:34

16  deposition that was permitted.  It is also an    11:34

17  incomplete hypothetical and vague and ambiguous.    11:34

18     A.  In the hypothetical scenario that you're    11:35

19  suggesting, there would be a few things:  One, in    11:35

20  general, if you're suggesting it as a sort of    11:35

21  potential design around claim C, firstly, just in    11:35

22  terms of quality, the quality of a design-around, I    11:35

23  think that would be -- that potentially would be quite    11:35

24  problematic.  I think the quality of the functionality    11:35

25  would be quite compromised just because thresholds,    11:35

Confidential

Page 412

1   you know, no matter how small or large they are, can    11:35

2   be very tricky.                                          11:35

3        As you know, there are all kinds of people that    11:35

4   operate these devices:  Children with small fingers to  11:35

5   people with big fat fingers.  And so these distances     11:35

6   could result, I imagine, in a lot of user frustration.  11:36

7   But that set aside, I mean, that's just speculative on  11:36

8   that front.                                              11:36

9        On the actual limitations in the claim limitation  11:36

10  of C, I would have to look and conclusively analyze      11:36

11  such a design-around, just as I've done for the          11:36

12  current modified Samsung code.  So it's -- you know, I   11:36

13  would not be able to give you a conclusive answer on     11:36

14  that without actually looking at an actual               11:36

15  implementation.  But I -- you know, off the top of my    11:36

16  head, I don't think it would be a very good design,      11:36

17  period.                                                  11:36

18  BY MR. BRIGGS:                                           11:36

19       Q.  But you also think it wouldn't infringe here   11:36

20  either; right?                                           11:36

21       MR. MONACH:  Objection, misstates the prior        11:36

22  testimony.  Objection, vague and ambiguous,             11:36

23  outside the scope of the discovery that was             11:37

24  permitted.  Object to asking the witness to form        11:37

25  new opinions unrelated to the particular issue          11:37

Confidential

Page 413

| | |
|---|---|
| 1 | he's opined upon here today. | 11:37 |
| 2 | A.  No, I didn't say -- I didn't say that it | 11:37 |
| 3 | would not infringe.  In fact, I said that I would | 11:37 |
| 4 | perform a new analysis based on the new code and how | 11:37 |
| 5 | it was structured and exactly how it matched up with | 11:37 |
| 6 | the claim language and so on. | 11:37 |
| 7 | BY MR. BRIGGS: | 11:37 |

15      Q.  Correct, but in my hypothetical --          11:38

16      A.  Yes, in your hypothetical.                   11:38

17      MR. MONACH:  Hang on.                            11:38

18  BY MR. BRIGGS:                                      11:38

23      Q.  The code.                                    11:38

24      A.  In some new code, okay.                      11:38

25      Q.  Right.                                       11:38

Confidential

Page 414

1     A.  Okay.                    11:38

8     Now, in that case, a scale would not occur;    11:38

9  correct?                          11:39

10     MR. MONACH:  Objection.  Lack of foundation,  11:39

11  incomplete hypothetical.  Objection beyond the    11:39

12  scope of the discovery permitted, and you're     11:39

13  asking the witness to opine at the deposition on  11:39

14  some hypothetical different code than what       11:39

15  Samsung has provided in discovery.           11:39

23     And so, you know, any new code would need to be  11:39

24  provided as a very clear new working design, which I'd  11:39

25  be very happy to analyze were such a design presented  11:39

Confidential

Page 415

1    to me.                                                    11:40

2    BY MR. BRIGGS:                                            11:40

3        Q.  Now, let's turn back to the code you             11:40

4    reviewed, the modified Samsung code you reviewed.        11:40

5        A.  Okay.                                            11:40

25   BY MR. BRIGGS:                                            11:41

Confidential





Confidential

Page 418





Confidential

Page 481

1               CERTIFICATE OF REPORTER

2

3        I, JEANNE BULLIS, RPR, CSR, hereby certify

4   that the testimony of the witness, KARANSHER SINGH, Ph.D.,

5   in the foregoing transcript taken on the 3rd day of

6   December, 2012, was recorded by me in machine shorthand and

7   was thereafter transcribed by me; and that the foregoing

8   transcript is a true and accurate verbatim record of the

9   said testimony.

10       Before completed of the deposition, review of the

11   transcript (X) was ( ) was not requested.  If requested,

12   any changes made by the deponent (and provided to the

13   reporter) during the period allowed are appended hereto

14       I further certify that I am not a relative,

15   employee, counsel or financially involved with any

16   of the parties to the within cause, nor am I an

17   employee or relative of any counsel for the parties,

18   nor am I in any way interested in the outcome of the

19   within cause.

20

21   Signed:       ................................

22   Name:         Jeanne Bullis

23   Date:         12/3/2012

24

25