UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| Plaintiff, | ORDER RE: INDEFINITENESS |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

In this patent case, a jury found that Samsung had infringed several of Apple's patents, including Claim 50 of U.S. Patent No. 7,864,163 ("the '163 Patent") and four design patents: No. D618,677 ("the D'677 Patent"); No. D593,087 ("the D'087 Patent"); No. D604,305 ("the D'305 Patent"); and No. D504,889 ("the D'889 Patent"). Samsung now argues that Claim 50 of the '163 Patent and all four design patents are invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112. *See* Motion on Samsung's Non-Jury Claims, ECF No. 1988 ("Mot.").[1] Apple

---

[1] Samsung also argues that its infringement was not willful, and that Apple's patents are invalid for obviousness. Because Samsung also addressed these arguments in its motion for judgment as a matter of law, the Court does not address them in this Order.

1

Case No.: 11-CV-01846-LHK
ORDER RE: INDEFINITENESS

opposed this motion, ECF No. 2027 ("Opp'n"), and Samsung filed a reply. ECF No. 2042 ("Reply"). This Court will first address the '163 Patent, and will then address the design patents.

## I.   '163 INDEFINITENESS

As an initial matter, this claim is not waived. Apple asserts that this argument is waived because Samsung did not seek claim construction of the term "substantially centered" or include the indefiniteness issue in its pretrial statement. However, failure to seek construction of a term during claim construction does not constitute waiver of an indefiniteness argument. For one thing, under this District's Patent Local Rules, the parties were limited in the number of terms for which they could seek construction.[2] *See* Pat. Loc. R. 4-1 (limiting parties to a total of 10 terms). Thus, failure to include a term at that stage cannot reasonably constitute a waiver. Further, Samsung has continued to raise the issue, first in invalidity contentions and in later in arguing for a jury instruction. *See* Pierce Reply Decl. Exh. 2 at 53 (invalidity contentions); ECF No. 1809 (proposed jury instruction). During trial, Apple agreed that Samsung could "make a JMOL on that" and "let the Court determine it." *See* Tr. at 3336:18-25. Finally, this Court specifically included indefiniteness of the '163 Patent as a topic Samsung could address in a non-jury brief. ECF No. 1965. There is no question that Apple has been on notice of Samsung's assertion of this claim. Accordingly, the Court finds that it is appropriate for Samsung to raise the issue now.

In order to be valid, a patent claim must "particularly point [] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The purpose of this definiteness requirement is "to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Patent claims are invalid for indefiniteness when they are not "amenable to construction," or are "insolubly ambiguous." *Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

Samsung contends that the term "substantially centered" in the '163 Patent is an indefinite

---

[2] Although the parties originally identified 10 claim terms for construction, by the time of the *Markman* hearing, the parties stipulated to the construction of two terms and asked the Court to construe only eight terms. *See* Order Construing Disputed Claim Terms, ECF No. 849, at 1.

1   term of degree, which cannot be construed because no objective anchor is provided in the

2   specification.  Claim 50, the only claim at issue in this litigation, reads:

> A portable electronic device, comprising:
> a touch screen display;
> one or more processors;
> memory; and
> one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:
> instructions for displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
> instructions for detecting a first gesture at a location on the displayed portion of the structured electronic document;
> instructions for determining a first box in the plurality of boxes at the location of the first gesture;
> instructions for enlarging and translating the structured electronic document so that the first box is **substantially centered** on the touch screen display;
> instruction for, while the first box is enlarged, a second gesture is detected on a second box other than the first box; and
> instructions for, in response to detecting the second gesture, the structured electronic document is translated so that the second box is **substantially centered** on the touch screen display.

U.S. Patent No. 7,864,163 B2 (emphasis added).

The imprecise claim term at issue here, "substantially," is a word of degree. *See, e.g., LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359 (Fed. Cir. 2001) (considering the term "substantially completely wetted"); *Exxon*, 265 F.3d at 1377 (considering the phrase "to increase substantially").  "When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984).  If the specification does not provide a standard for imposing a more precise construction of the term, the Federal Circuit has ruled that imposing a more precise construction would be error.  *See Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005); *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1360 (Fed. Cir. 2003).

For example, in *Playtex*, the Federal Circuit, quoting *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004), stated that "substantial" implies "approximate" rather than "perfect."  400 F.3d at 907.  The *Playtex* Court further stated that, "the definition of 'substantially flattened surfaces' adopted by the district court introduces a numerical tolerance to

the flatness of the gripping area surfaces of the claimed applicator. That reading contradicts the recent precedent of this court, interpreting such terms of degree." *Id.* The *Playtex* Court then discussed *Cordis*, 339 F.3d at 1360. In *Cordis*, the Federal Circuit held that: "The patents do not set out any numerical standard by which to determine whether the thickness of the wall surface is 'substantially uniform.' The term 'substantially,' as used in this context, denotes approximation." In refusing "to impose a precise numeric constraint on the term 'substantially uniform thickness,'" the *Cordis* Court held that "the proper interpretation of this term was 'of largely or approximately uniform thickness' unless something in the prosecution history imposed the 'clear and unmistakable disclaimer' needed for narrowing beyond this plain-language interpretation." *Playtex,* 400 F.3d at 907 (quoting *Cordis*, 339 F.3d at 1361).

Similarly, in *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003), the Federal Circuit held that the phrase "generally parallel" envisions "some amount of deviation from exactly parallel." The *Anchor Wall* Court also noted that "words of approximation, such as 'generally' and 'substantially,' are descriptive terms 'commonly used in patent claims "to avoid a strict numerical boundary to the specified parameter."'" *Id*. at 1310-11 (internal citations omitted). Furthermore, the Court noted that "nothing in the prosecution history of the #015 patent family clearly limits the scope of 'generally parallel' such that the adverb 'generally' does not broaden the meaning of parallel." *Id.* at 1311.

In *Liquid Dynamics Corp*., 355 F.3d at 1369, the Federal Circuit construed a claim with the phrases a "substantial helical flow" and a "substantially volume filling flow" as "all flow patterns that are generally, though not necessarily perfectly, spiral, and that fill much, though not necessarily all, of the tank's volume." The Court held that, "Because the plain language of the claim was clear and uncontradicted by anything in the written description of the figures, the district court should not have relied upon the written description, the figures, or the prosecution history to add limitations to the claim." *Id.* at 1368.

Other Federal Circuit cases have also held that the term "substantially" does not require a strict numerical boundary. "We note that like the term 'about,' the term 'substantially' is a descriptive term commonly used in patent claims to 'avoid a strict numerical boundary to the

4

Case No.: 11-CV-01846-LHK
ORDER RE: INDEFINITENESS

specified parameter.""" *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995)). "Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention." *Verve, LLC v. Crane Cams, Inc.,* 311 F.3d 1116, 1120 (Fed. Cir. 2002). Thus, the law is clear that a court need not, and indeed may not, construe terms of degree to give them greater precision, absent a standard for imposing a more precise construction in the specification.

In the instant case, the Court finds no standard for measuring the precise boundaries of "substantially centered" in the specification. Accordingly, under Federal Circuit precedent, it would be inappropriate for this Court to issue a construction of "substantially centered" that gives it greater precision.

The Federal Circuit has never suggested, however, that this lack of precision constitutes a lack of construability, so as to render a term of degree indefinite. Indeed, the Federal Circuit has construed such terms of degree. In so doing, the Federal Circuit has taken one of two approaches. In some cases, the Federal Circuit relies on the commonly understood meaning of other terms of degree. *See, e.g.*, *Cordis*, 339 F.3d at 1360 ("substantially uniform thickness" construed as "of largely or approximately uniform thickness"); *Anchor Wall*, 340 F.3d at 1311 ("generally parallel" construed as "some amount of deviation from exactly parallel"). In other cases, the Federal Circuit points to some contrasting example to provide an indication of what is *not* meant by the term. *See, e.g., Playtex*, 400 F.3d at 909 ("substantially flattened surfaces" construed as "surfaces, including flat surfaces, materially flatter than the cylindrical front portion of the applicator"). In none of these cases has the Federal Circuit found that the term of degree was not amenable to construction or insolubly ambiguous.

Samsung has not attempted to argue that a court would be unable to issue such a plain meaning-based construction of the term "substantially centered."[3] Instead, Samsung has argued

---

[3] Neither party requested construction of the term "substantially centered." Moreover, Samsung did not make any noninfringement, anticipation, or obviousness argument that depended on a disputed interpretation of the term "substantially centered." *Cf. O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (noting that claim construction

5

Case No.: 11-CV-01846-LHK
ORDER RE: INDEFINITENESS

that the fact that the Court cannot issue a more *precise* construction, based on the lack of an objective standard in the specification, makes it impossible to construe the term *at all*, thus rendering the term indefinite. However, as the cases cited above demonstrate, this is simply not the law. The Federal Circuit has explained that "[e]xpressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention." *Verve*, 311 F.3d at 1120. Samsung has not contended, and this Court does not find, that the term "substantially centered" as used in this patent is not amenable to construction consistent with the Federal Circuit's constructions of terms of degree.

The parties have also presented extrinsic evidence that the term "substantially centered" can be understood by persons of ordinary skill in the art. The Federal Circuit has explained that although courts "have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, such as expert testimony." *Datamize*, 417 F.3d at 1348 (internal quotation marks and citation omitted). The opinion of an expert can illuminate the meaning of an ambiguous term of degree. *See Datamize*, 417 F.3d at 1353-54; *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1218 (Fed. Cir. 1991). The testimony of an inventor can also shed light on the meaning of a term insofar as the inventor is a person of ordinary skill in the art, but testimony about the inventor's subjective state of mind cannot bear on definiteness. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1360 (Fed. Cir. 2011) (considering an inventor's testimony as testimony of one of skill in the art); *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1370 (Fed. Cir. 2004) (noting a district court's proper rejection of inventor testimony concerning subjective intent).

Regarding "substantially centered," Apple's expert, Dr. Karan Singh, testified that "a person of ordinary skill in the art, or actually even a -- a person, a layman, would tell you that visually it's by and large centered." Declaration of John Pierce in support of Samsung's Reply

---

was required where the parties had an actual dispute about whether or not the term "only if" permitted any exceptions).

("Pierce Decl."), Exh. 1, Singh 4/26/12 Depo. Tr. 119:11-21.  Dr. Singh also explained that "by and large, it's something that a person of ordinary skill in the art will have no problem understanding."  Singh 8/10/12 Trial Tr. 1901:17-19.

Similarly, Samsung's expert, Mr. Gray, testified during his deposition that he had determined that some of Samsung's accused products were capable of substantial centering as contemplated in the '163 Patent:

> So of the products that I -- that I have tested, except for -- except for the tab -- I think the tab 10.1.  Then at least on one occasion in the boxes that I tested, my best recollection today is that there were none of the products which were incapable of centering in at least one direction under some circumstances when that first gesture selected a box.  My recollection -- or "substantially centered" is the language.  But not in all cases, there's cases where they don't.  But there are some -- some cases where at least they did center it at some -- as best I can recollect, or at least approximate a centering of it.
> And, in fact, let me rephrase.  I think that my recollection is that even in the tab 10.1, there is occasions when -- when it when it enlarged and substantially centered.

Declaration of Nathan Sabri in support of Apple's Opposition ("Sabri Decl."), Exh. 3, Gray 5/4/12 Depo. Tr. 181:24-182:14.  Mr. Gray further testified that a second box in some of the Samsung accused products was "substantially centered" on the touch screen display:

> I believe that I have observed on at least some of the accused devices the ability to, while a first box is enlarged, select a -- select a second box.  And then in response to detecting the second gesture, that that second box is substantially centered -- translated so that the second box is substantially centered on the touch screen display.

Sabri Decl., Exh. 3, Gray 5/4/12 Depo. Tr. 185:16-22.  However, at trial, Mr. Gray testified that "I don't know when something is substantially center [sic].  I know when something is fully centered or not centered, but 'substantially centered' is ambiguous.  How would a patent – how would an engineer understand how to make something substantially centered or not?"  Gray 8/15/12 Trial Tr. 2922:19-25.

The Court recognizes that "[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention."  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1373 (Fed. Cir. 2008) (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (quoting *SmithKline*

7

Case No.: 11-CV-01846-LHK
ORDER RE: INDEFINITENESS

*Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005). Nonetheless, Mr. Gray's ability during his deposition to determine whether parts of the accused Samsung products were substantially centered or not supports the conclusion that "substantially centered" is not insolubly ambiguous.

In sum, the Federal Circuit's cases establish that precise construction is not required, or even permissible, when a patent uses a term of degree such as "substantially," and the specification does not provide a standard for measuring the precise boundaries of that term of degree. Moreover, the evidence suggests that persons of ordinary skill in the art can understand the meaning of the term "substantially centered." Accordingly, the Court finds that the term "substantially centered" is not indefinite.

## II.   DESIGN PATENT INDEFINITENESS

Apple claims that Samsung's design patent indefiniteness defense, like the utility patent indefiniteness defense, is waived. Apple asserts that Samsung cannot argue design patent indefiniteness now, because Samsung submitted an interrogatory response to a question about invalidity defenses that did not provide any details about the defense. Opp'n at 3. Apple further explains that Judge Grewal then struck expert testimony that included material beyond what was disclosed in that interrogatory response. ECF No. 1144.

This failure to disclose relevant evidence does not constitute waiver of the claim. Indeed, Samsung has continued to raise this issue, from its answer, ECF No. 80 at ¶ 278, through summary judgment briefing, ECF No. 931-1 at 15, and at trial, in its proposed jury instructions, ECF No. 1694 at 123-24. Thus, Apple has been on notice of this defense throughout the litigation. Accordingly, the Court properly entertains Samsung's motion at this time.

Samsung argues that all four of the design patents at issue in this case – the D'889, D'305, D'677, and D'087 Patents – are indefinite, for a variety of reasons.

### A.   LEGAL STANDARD

The standard for indefiniteness is explained above. The definiteness requirement applies to design patents as well as utility patents. *See Litton Systems, Inc. v. Whirlpool Corp*, 728 F.2d 1423,1440-41 (Fed. Cir. 1984) (overruled on other grounds by *Egyptian Goddess, Inc. v. Swisa,*

8

*Inc.*, 543 F.3d 665 (Fed. Cir. 2008)).  Thus, even in design patents, "[c]laims are considered indefinite when they are not amenable to construction or are insolubly ambiguous . . . Indefiniteness requires a determination whether those skilled in the art would understand what is claimed." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007).

There is little clear precedent on the question of how this standard is to be applied to design patents.  Courts considering the question have analyzed whether "a person of skill in the art" would get "an overall understanding of the total substance of the designs." *Antonious v. Spalding & Evenflo Companies, Inc.*, 217 F.3d 849 (Fed. Cir. 1999) (unpublished); *see also Seed Lighting Design Co., Ltd. v. Home Depot*, C 04-2291, 2005 WL 1868152 (N.D. Cal., Aug. 3, 2005) (considering whether a person skilled in the art would understand the bounds of a design patent claim from inconsistent drawings); *HR U.S. LLC v. Mizco Int'l, Inc.*, CV-07-2394, 2009 WL 890550 (E.D.N.Y., Mar. 31, 2009) (design patent would be indefinite where "the overall appearance of the design is unclear").

As indefiniteness is intimately linked to claim construction, the cases discussing claim construction in design patents bear on the indefiniteness analysis.  Further, the test for infringement certainly bears on the test for indefiniteness, since the ultimate inquiry for indefiniteness is whether a person having ordinary skill in the art could tell what is claimed – and therefore, what infringes. *See LNP Engineering*, 275 F.3d at 1360.  Design patents protect "overall designs" rather than individual specific features.  *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1239-41 (Fed. Cir. 2009); *see also Egyptian Goddess,* 543 F.3d at 665 (noting the risk that a verbal description will lead a jury to "plac[e] undue emphasis on particular features of the design and. . . focus on each individual described feature in the verbal description rather than on the design as a whole").  Design patents are infringed when "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  Further, the Federal Circuit has explained that in construing design patent claims, a district court "[i]s not obligated to issue a detailed verbal description of the design," *Egyptian Goddess,* 543 F.3d at 680, but "can usefully guide the finder of fact by addressing a number of other issues that bear on the

scope of the claim. Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines; assessing and describing the effect of any representations that may have been made in the course of the prosecution history; and distinguishing between those features of the claimed design that are ornamental and those that are purely functional." *Id.* (internal citations omitted). It is with these parameters in mind that the Court considers whether the design patents now at issue allow "those skilled in the art [to] understand what is claimed." *Young*, 492 F.3d at 1346.

To prevail on its indefiniteness defense, Samsung must show by clear and convincing evidence that a designer of ordinary skill in the art would not understand what is claimed. *See Datamize*, 417 F.3d at 1348. This is a high standard, necessary to give effect to the statutory presumption of validity afforded to issued patents. *See* 35 U.S.C. § 282.

**B.  DISCUSSION**

Samsung has made a range of arguments about why the various design patents are indefinite. Specifically, Samsung argues that the D'889 Patent is indefinite for four reasons: (1) drawings showing the design oriented in different directions make it impossible to know which way the design is supposed to be oriented or where features actually appear; (2) the use of broken lines is inconsistent, making it difficult to tell which elements are claimed and which are not; (3) the use of surface shading is different in different pictures, making it unclear what type of surface is being represented; and (4) the 035 Mockup[4] and iPad 2 are both said to embody the design, while the original iPad is not. Samsung then presents a single argument for indefiniteness of the D'305 Patent: that the use of color in one drawing but not another makes it impossible to tell whether color is necessary for the claim. Finally, Samsung presents two arguments for indefiniteness of the related D'677 and D'087 Patents: (1) that the drawing does not make clear whether the "lozenge" shape and rectangular shape are beneath the surface, a break in the surface, or resting on top of the surface; and (2) that the lack of shading on the D'087 drawing makes it impossible to see that there is, in fact, a display area below a transparent surface.

---

[4] The 035 Mockup is a model Apple produced of one of its designs. It was admitted at trial as DX741.

Several of Samsung's arguments concern use of drafting techniques (broken lines and shading). In support of its argument that inconsistent use of broken lines is per se indefinite, Samsung cites *In re Blum*, 374 F.2d 904 (C.C.P.A. 1967). The court in *Blum* noted that "[d]otted and broken lines may mean different things in different circumstances" and that "in each case it must be made entirely clear what they do mean" to avoid indefiniteness. *Id.* at 907. This case, however, precedes *Young, Datamize, Exxon*, and other cases explaining that a claim need only be amenable to construction to be definite, and precedes *Egyptian Goddess*, which explains the responsibilities of district courts in construing design patent claims, including construing the use of drafting techniques. Further, it makes clear that it "is the examiner's responsibility to obtain such definiteness." *Blum*, 374 F.2d at 907. Here, when the patent has already issued, the patent comes with a strong presumption of validity. Thus, there is no per se rule that inconsistent use of dotted lines renders a patent invalid.

Indeed, the Court's claim construction of the design patents shows that these features *are* amenable to construction. ECF No. 1425 (construing the use of broken lines, oblique lines, and shading in all four of the design patents). Similarly, the Federal Circuit found no difficulty in interpreting the claimed designs in the D'677, D'087, and D'889 Patents. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012) (preliminary injunction opinion). Given that this Court and the Federal Circuit have construed the claims in these patents, they are not "insolubly ambiguous" or "not amenable to construction." *Young*, 492 F.3d at 1346.

Moreover, the Federal Circuit has explicitly recognized that it is appropriate for district courts to issue interpretations of drafting conventions, *see Egyptian Goddess*, 543 F.3d at 680. If the use of drafting conventions had to be facially obvious for the patent to be valid, no such interpretations would ever be necessary. Further, the law is clear that the fact that claim construction is necessary does not render the patent indefinite. *See, e.g.*, *Exxon*, 265 F. 3d at 1375 (patent is not indefinite even if claim construction is quite difficult). Accordingly, the patents are not per se indefinite due to their inconsistent use of drafting techniques including shading and broken lines.

1    Regarding the differently oriented drawings in the D'889 Patent, the Court sees nothing
2    inconsistent about these drawings.  They show a device facing different directions, but there is no
3    place in which an identifiable feature of the design appears in two different places in two different
4    figures, taking into account the rotation of the object depicted.  The fact that a feature may be
5    invisible in one of the figures due to the resolution and orientation of the drawing does not make it
6    impossible to determine whether or not the feature is part of the design.  Samsung argues that the
7    "environmental features" in Figures 1-4 are "switched to different sides" in Figures 5-8.  Mot. at 6.
8    Without any further specifics in Samsung's argument, the Court cannot be certain as to what
9    features Samsung intends to refer, but having examined the drawings, the Court sees no
10   inconsistency.  There is a circular hole on one edge and a rectangular opening on another edge
11   visible in Figure 2; the same features are visible in the same relative places in Figures 6 and 8,
12   though the entire object is rotated.  Further, contrary to Samsung's assertion, there is simply no
13   requirement that a claimed design must have a particular preferred orientation; indeed, Samsung
14   cites no law even suggesting that there is.  The fact that the D'889 Patent shows a design in
15   different orientations merely shows that the particular orientation – landscape or portrait, head-on
16   or perspective – is not part of what is claimed.

17   Samsung also argues that the fact that the iPad 2 and the 035 Mockup both embody the
18   D'889 Patent necessarily renders the patent indefinite.  But the law is clear that the same design
19   patent can have multiple embodiments.  *See Antonious*, 217 F.3d at 7; *In re Rubinfield*, 270 F.2d
20   391, 391 (C.C.P.A. 1959).  Thus, the fact that both of these objects are said to embody the design
21   does not necessarily propose a definiteness problem.  Samsung seems to suggest that if two objects
22   as different as the iPad 2 and the 035 Mockup can both embody the patented design, where the
23   original iPad does not, the patent simply must be indefinite.  But Samsung presents no evidence to
24   support its assertion that the 035 Mockup and iPad2 are less similar in relevant ways than the
25   original iPad and iPad2, and a mere assertion in a brief that objects are similar or dissimilar cannot
26   serve as a basis for invalidating a patent.  Given the strong presumption of validity accompanying
27   issued patents, this Court cannot find, based on Samsung's bald assertion, that the similarities and
28   differences between these three articles and the patent itself warrant a finding of indefiniteness.

12

1  Next, Samsung claims that because only one of the figures in the D'305 Patent is in color, there is no possible way to know whether color is part of the claimed design. As Samsung acknowledges, the Model of Patent Examining Procedure explains that color drawings are allowed where "color is an integral part of the claimed design." MPEP 1503.02(V). Thus, by including a color drawing, Apple has made clear that color *is* necessary to the design. The regulations governing color drawings make clear that they are to be used only rarely and only where necessary to convey what is claimed. *See* 37 C.F.R. § 1.84(a)(2). Nowhere do the regulations say that if one drawing is in color, all drawings must be in color, and Samsung cites no authority for that proposition. Given the presumption of validity afforded to issued patents, *see Datamize,* 417 F.3d at 1347, the Court declines to adopt a rule requiring all depictions of the design to be in color in order for color to be part of the claimed design.

Samsung next argues that the D'677 and D'087 Patents are indefinite because it is unclear whether the lozenge and rectangle shapes are below, in, or on top of the surface. But it does not matter "whether the lozenge and rectangle features on the front faces are *below* a surface, material breaks *on* the surface, or features drawn on *top* of a continuous surface," Mot. at 8, as long as any of those could produce interchangeable visual effects that would appear "substantially the same to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. As this Court explained in its Claim Construction Order, a design patent protects an overall visual impression, and "it will be for the jury to decide whether the accused device's 'lozenge-shaped element would appear as it does in the figures.'" ECF No. 1425 at 7. In other words, the design patent need not specify how the lozenge shape is created. It need only provide the visual standard for comparison. It may be possible to produce the same overall visual impression with the lozenge in any one of those three positions, relative to the smooth surface. This fact does not render the design patent indefinite; it simply means that there may be more than one way to manufacture an article that embodies the claimed design.

Finally, Samsung argues that Apple's "named inventors and other witnesses" testified "that they could not understand the designs reflected in Apple's patents." Reply at 3 n.1 (citing exhibits to Pierce Reply Decl.). Generally, the witnesses to whom Samsung points express a lack of

13

Case No.: 11-CV-01846-LHK
ORDER RE: INDEFINITENESS

familiarity with the conventions used in the drawings, or a lack of understanding about what design patents are.  However, the witnesses' reluctance to verbally interpret the drawings presented in depositions as parts of patents subject to intense litigation does not, in and of itself, establish indefiniteness.  Rather, the testimony Samsung cites consistently indicates a lack of familiarity with design patent conventions.  *See, e.g.*, Pierce Reply Decl. Exh. 10 ("Q: And why is it you can't ascertain that?  Is there not enough information in the drawings here to tell you?  A: I don't understand the language of the patent drawing."); *id.* Ex. 12 ("Q: And in some instances you said you couldn't make that judgment based on the drawings.  Do you recall that?  A: Yes.  Q: Why is that, sir?  A: I—I can't – I can't interpret patent drawing.")  Witnesses' ignorance of drafting conventions, which are detailed in the Manual of Patent Examining Procedure (*see* Mot. at 7; Opp'n at 7), does not establish that the patents cannot be construed so as to clearly delineate what design is claimed.  Further, definiteness does not require that persons of skill in the art be able to clearly describe the designs in words; they must simply be able to replicate the patented design and understand what is claimed.  Here, the testimony to which Samsung points demonstrates a general unease among some witnesses with the concept of design patents – not an inability to understand or replicate the claimed designs.

Further, Apple presents some trial testimony of witnesses who *were* able to interpret the drawings.  Most notably, Samsung's design expert, Itay Sherman, testified that the designs were obvious and functional (*see, e.g.*, Tr. 2578:10-21; 2579:8-20; 2581:22-25).  As Apple points out, it would be difficult to have an opinion that a given design was obvious without understanding what the design actually was.

Taken together, Samsung's arguments, which all concern the quality and specificity of the drawings, are in contrast to the types of defects that courts have found constituted design patent indefiniteness.  For example, in *Seed Lighting*, the lamp was depicted with a base that had one shape in one drawing and a completely different shape in another drawing.  2005 WL 1868152 at *9.  The difference could not be attributed to the way in which the design was represented; there were unambiguously two different shapes in the two different pictures.  The Federal Circuit in *Antonious* confirms that where the ambiguities concern representation, and not the actual article, a

14

Case No.: 11-CV-01846-LHK
ORDER RE: INDEFINITENESS

court need not find indefiniteness. 217 F.3d at 7-8 (no indefiniteness where discrepancies between drawings may be due to differing use of perspective). The distinction between drafting inconsistencies and actual ambiguity is especially relevant here, where the Court has been able to construe the drafting techniques, as the Federal Circuit has stated that district courts may do. *See Egyptian Goddess*, 543 F.3d at 680. In sum, all of Samsung's alleged sources of indefiniteness concern how the design is represented, rather than the nature of the design itself. These ambiguities are not fatal to patents that this Court must view with a strong presumption of validity. Accordingly, Samsung has not established indefiniteness by clear and convincing evidence, and Apple's design patents remain valid.

### III. CONCLUSION

For the reasons stated above, the Court finds that neither the '163 Patent nor Apple's design patents are invalid for indefiniteness.

**IT IS SO ORDERED.**

Dated: January 29, 2013

_____
LUCY H. KOH
United States District Judge