United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation, | Case No.: 11-CV-01846-LHK |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

On August 24, 2012, after a thirteen day trial and approximately three full days of deliberation, a jury in this patent case reached a verdict. *See* ECF No. 1931. Samsung now seeks judgment as a matter of law to overturn certain of the jury's findings. In the alternative, Samsung moves for a new trial. *See* Samsung's Motion for Judgment as a Matter of Law, New Trial And/Or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59 ("Mot."), ECF No. 2013. Apple filed an opposition ("Opp'n"), ECF No. 2050, and Samsung filed a Reply ("Reply"), ECF No. 2131. For the reasons discussed below, the Court GRANTS Samsung's motion for judgment as a matter of law that claims 15 and 16 of Samsung's U.S. Patent No. 7,447,516 ("the '516 Patent") are not exhausted. The Court also GRANTS judgment as a matter of law that Samsung's acts of patent infringement were not willful. However, for the reasons discussed below, the Court

1

1  DENIES Samsung's motion for judgment as a matter of law in all other respects, and DENIES

2  Samsung's motion for a new trial.[1]

3  **I.      LEGAL STANDARD**

4       Federal Rule of Civil Procedure 50 permits a district court to grant judgment as a matter of

5  law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to

6  that reached by the jury." *Ostad v. Oregon Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003).

7  A party seeking judgment as a matter of law after a jury verdict must show that the verdict is not

8  supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would

9  accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366

10  (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992)).

11       A new trial is appropriate under Rule 59 "only if the jury verdict is contrary to the clear

12  weight of the evidence." *DSPT Int'l, Inc. v. Nahum*, 624 F. 3d 1213, 1218 (9th Cir. 2010).  A court

13  should grant a new trial where necessary "to prevent a miscarriage of justice." *Molski v. M.J.*

14  *Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

15  **II.     ANALYSIS**

16       **A.      The Jury Reasonably Found Apple's Design Patents to be Valid and Infringed**

17       **1.      Infringement**

18       Samsung moves for judgment as a matter of law that Samsung's accused devices do not

19  infringe U.S. Patent No. D593,087 ("the D'087 Patent"), U.S. Patent No. D618,677 ("the D'677

20  Patent"), and U.S. Patent No. D604,305 ("the D'305 Patent").  *See* Mot. at 4-7.  In the alternative,

21  Samsung moves for a new trial on infringement of Apple's design patents.  *Id.*

22       Samsung argues that there is no evidence to support the jury's findings of design patent

23  infringement.  Samsung cites evidence that would have supported a jury finding of non-

24  infringement.  Specifically, Samsung points to evidence of similarities between Apple's design

25  patents and the prior art that might limit the scope of the design patents, thus rendering Samsung's

26

27  ───────────────

[1] Samsung has also moved for remittitur or a new trial on damages.  These claims will be addressed
in a separate order.

28

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

1    designs outside of the scope of Apple's patents.  *See* Mot. at 5-7.  However, other evidence in the

2    record supports the jury's finding of infringement.  Specifically, the jury was presented with the

3    design patents, accused devices, and prior art, and was appropriately instructed on the

4    "substantially the same" standard for infringement and the role of prior art in analyzing design

5    patent infringement.  *See* Final Jury Instruction No. 46.  Furthermore, the jury heard expert

6    testimony supporting the conclusion that Samsung devices infringed Apple's design patents.  *See*

7    Tr. 1049:6-1064:11 (Apple design expert Peter Bressler's testimony on substantial similarity

8    between Samsung's accused phones and the D'087 and D'677 Patents); Tr. 1371:18-1381:23

9    (Apple design expert Dr. Susan Kare's testimony on substantial similarity between Samsung's

10   accused phones and the D'305 Patent).  The phones themselves, along with the expert testimony,

11   constitute substantial evidence in the record to support the jury's finding of infringement.  Given

12   this evidence, the jury's conclusion of infringement was not against the clear weight of the

13   evidence.

14          Samsung also argues that the Court inappropriately failed to instruct the jury to factor out

15   functional design elements.  As a preliminary matter, Samsung raised this objection during the

16   briefing on the final jury instructions, and therefore this argument is not waived.  *See* Reply at 6, n.

17   7.  However, a "filtering" instruction of the type Samsung requested is not required.  The Federal

18   Circuit has explained that a court may aid a jury in determining design patent infringement by

19   construing the claims,  *see Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir.

20   2008) (en banc), and that claim construction may, but need not, include listing functional elements

21   that should be factored out of the claimed design.  *See Richardson v. Stanley Works, Inc.*, 597 F. 3d

22   1288, 1293-94 (Fed. Cir. 2010) (construing a design patent by factoring out functional elements in

23   the context of a bench trial).  However, claim construction is a matter of law for the Court.  The

24   cases do not suggest that this type of claim construction is appropriate when instructing a jury.  The

25   cases engaging in such explicit filtering analysis generally do so in contexts in which a court then

26   rules directly on infringement, such as summary judgment or a bench trial.  *See, e.g., Richardson*,

27   597 F.3d 1288 (bench trial).  Indeed, *Egyptian Goddess* warns of the risks of providing an element-

28   by-element construction to a jury, as such instruction could divert the jury's attention from "the

3

design as a whole." *Id.*; *see also* 543 F.3d at 680.  Moreover, the Court determined in considering

Samsung's request for a jury instruction that Samsung had not shown that the allegedly functional

design elements were actually functional under the Federal Circuit's "dictated by function"

standard, particularly in light of Apple's evidence that alternative designs existed.  *See Richardson*,

597 F.3d at 1294 (applying the "dictated by function" standard during design patent claim

construction).  *See also* PX163-168 (alternative designs created by Apple); PX10, PX148, PX150,

PX2277, PX2278 (alternative designs created by third parties).

In sum, the Court appropriately instructed the jury, and there is substantial evidence in the

record to support the jury's ultimate finding of infringement of the D'087, D'677, and D'305

Patents.  Moreover, the jury's verdict was not against the clear weight of the evidence.

Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that none of

Samsung's accused phones infringe Apple's design patents, and DENIES Samsung's motion in the

alternative for a new trial.

### 2.  Invalidity

Samsung also moves for judgment as a matter of law that Apple's D'087, D'677, and

D'305, Patents, as well as U.S. Patent No. D504,889 ("the D'889 Patent") are invalid, or in the

alternative for a new trial.  *See* Mot. at 7-8.  Samsung argues that no reasonable jury could have

found Apple's design patents valid.

#### a.  Functionality

First, Samsung argues that the patents are invalid because the patented designs are

functional.  It was Samsung's burden at trial to establish invalidity by clear and convincing

evidence.  Samsung points to expert testimony identifying some allegedly functional elements of

the designs.  However, invalidity requires not just some functional elements, but that the overall

design is "primarily functional."  *See PHG Techs. v. St. John Companies, Inc.*, 469 F. 3d 1361,

1366 (Fed. Cir. 2006).  A design is primarily functional if "the appearance of the claimed design is

'dictated by' the use or purpose of the article."  *Id.* (quoting *L.A. Gear, Inc. v. Thom McAn Shoe

Co.*, 988 F. 2d 1117, 1123 (Fed. Cir. 1993)).  Expert testimony of the type Samsung identifies,

stating that individual design elements confer specific functional benefits (e.g., that round corners

4

**United States District Court**
For the Northern District of California

1  "help you move things in and out of your pocket," Tr. 680:9-15), does not constitute clear and

2  convincing evidence that the overall patented designs are dictated by function.  Samsung has not

3  identified any other evidence of functionality directed at the designs as a whole.  Accordingly, the

4  Court cannot say that the jury's finding that Samsung had not met its burden to establish

5  functionality was unsupported by substantial evidence, or was against the clear weight of the

6  evidence.  Samsung's motion for judgment as a matter of law or a new trial on the question of

7  design patent functionality is DENIED.

8  b.   D'677 and D'087 Obviousness

9  Second, Samsung argues that the D'677 and D'087 Patents are invalid for obviousness.[2]

10  "Because obviousness is a mixed question of law and fact, we first presume that the jury resolved

11  the underlying factual disputes in favor of the verdict and leave those presumed findings

12  undisturbed if they are supported by substantial evidence."  *Kinetic Concepts*, 688 F.3d at 1357.

13  The factual inquiries underlying the obviousness inquiry are: (1) the scope and content of the prior

14  art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in

15  the art; and (4) any relevant secondary considerations, such as commercial success, long felt but

16  unsolved needs, and the failure of others.  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007)

17  (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *Aventis Pharma S.A. v. Hospira,*

18  *Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012).  "Then we examine the ultimate legal conclusion of

19  obviousness de novo to see whether it is correct in light of the presumed jury fact findings."

20  *Kinetic Concepts*, 688 F.3d at 1357.  The jury found the D'688 and D'087 Patents valid.  Thus, the

21  Court will first examine whether substantial evidence supported the jury's underlying factual

22  conclusions that there was a significant gap between the prior art and the patents, and that there

23  were persuasive secondary indicia of non-obviousness.

25  [2] Samsung appropriately addressed obviousness as a legal conclusion in the context of its motion
26  on non-jury claims.  However, the Court addresses obviousness in this Order, along with other
   invalidity arguments, because obviousness turns on the jury's implied findings of fact in support of
27  non-obviousness, which the Court evaluates under the "substantial evidence in the record"
   standard.  *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1357 (Fed. Cir.
28  2012).

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

In addressing a claim of obviousness in a design patent, "the ultimate inquiry. . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Titan Tire Corp. v. Case New Holland, Inc.,* 566 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Durling v. Spectrum Furniture Co., Inc.,* 101 F.3d 100, 103 (Fed.Cir.1996)). "To determine whether 'one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design,' the finder of fact must employ a two-step process." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (quoting *Titan Tire*, 566 F.3d at 1381). "First, 'one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Id.* at 1329 (quoting *Durling,* 101 F.3d at 103). "Second, 'other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design.'" *Id.* "However, the 'secondary references may only be used to modify the primary reference if they are so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" *Id.* at 1329-30 (quoting *Durling,* 101 F.3d at 103).

To support Samsung's claim that the D'677 and D'087 Patents are obvious, Samsung cites expert Itay Sherman's testimony that these patents are obvious over two Japanese patents, a Korean patent (K'547), and the LG Prada, individually or in combination. Mr. Sherman's expert testimony consisted of identification of similarities between the prior art and the D'677 and D'087 Patents, followed by a bare assertion that a designer of ordinary skill would have found it obvious to combine the identified prior art to create the D'677 and D'087 Patents. *See, e.g.*, Tr. 2595:7-22 (Sherman testimony that it would have been obvious to combine the two Japanese patents to create the D'087 Patent). However, Mr. Sherman acknowledged that some differences between the prior art and the D'677 and D'087 exist. For example, Mr. Sherman admitted that one of the Japanese patents, JP'638, has a curved front face rather than a flat front face. *See* Tr. 2582:5-7. Other differences are apparent from the evidence, although Mr. Sherman did not specifically acknowledge them in his testimony. For example, the Korean patent K'547 discloses a screen that is much smaller in comparison to the overall front face than the screen in the D'677 and D'087

1    Patents, particularly in the shorter dimension.  *See* DX727.002 (K'547 disclosure of the front face).

2    Thus, there was substantial evidence in the record to support the jury's implicit factual finding that

3    there existed a significant gap between any primary reference in the prior art and the D'677 and

4    D'087 Patents.  As Samsung bears the burden on this issue, the Court cannot say that the jury's

5    implied finding that these gaps were significant was not supported by the record.

6            Furthermore, Apple cites substantial evidence in the record of objective indicia of non-

7    obviousness, including design awards, other accolades, and alleged copying by Samsung.  *See*

8    Opp'n at 7 (citing Tr. 508:4-509:4 (testimony on design awards); PX135.1 ("iPhone is pretty" was

9    top reason for invention of the year award); PX44.122, .PX44.127, and .PX44.131 (evidence of

10   Samsung copying)).  Pursuant to *Kinetic Concepts*, the Court understands that in reaching the

11   ultimate legal conclusion of non-obviousness, the jury made implied findings of fact accepting this

12   evidence of secondary indicia of non-obviousness.  The Court finds that the jury's implied finding

13   that secondary indicia support non-obviousness is supported by substantial evidence in the record.

14           In light of these factual findings, the Court must now consider whether, as a matter of law,

15   it would have been obvious to a designer of ordinary skill in the art to bridge the significant gap the

16   jury implicitly found.  The Court notes that Mr. Sherman did not identify the required primary and

17   secondary reference.  *See* Tr. 2580:5-2586:7; 2588:4-2589:22 (Mr. Sherman's testimony about

18   prior art).  Nor did he attempt to explain why it would have been obvious for a designer of ordinary

19   skill to take whichever of these prior art designs might have been a primary reference and combine

20   it with the relevant element of a secondary reference or otherwise modify it to arrive at the patented

21   designs.  Instead, Samsung offers only the bare *ipse dixit* of Mr. Sherman, who is not himself an

22   industrial designer, that it would have been obvious for an ordinary designer to bridge the gaps

23   between various pieces of prior art and the patents.  This testimony does not satisfy the Federal

24   Circuit's articulated requirements for obviousness in design patents.  *See Apple*, 678 F.3d at 1329-

25   20.  Samsung did not present any other testimony on obviousness for these two design patents.

26   Thus, the Court finds no persuasive evidence of obviousness in the record.

27           In sum, the jury's implied factual findings of a significant gap and indicia of non-

28   obviousness are supported by substantial evidence in the record.  In light of the gaps between the

7

1    prior art and the D'677 and D'087 Patents, the secondary indicia of non-obviousness, and the lack

2    of evidence about a secondary reference or how the identified gap might be bridged, the Court

3    finds that the D'677 and D'087 are not invalid for obviousness.

              c.      D'889 Obviousness

5         Third, Samsung moves for judgment as a matter of law that the D'889 Patent is obvious

6    over two prior art references: the Fidler tablet and TC1000 tablet.  The Federal Circuit previously

7    ruled that "the Fidler reference, with or without the TC1000, cannot serve to render the D'889

8    patent invalid for obviousness" because its similarity to the claimed design is at "too high a level of

9    abstraction."  *Apple*, 678 F.3d at 1332.  Thus, the Federal Circuit ruled that neither the Fidler tablet

10   nor the TC1000 tablet was an appropriate primary reference.  *See id.*  Although the Federal

11   Circuit's ruling at the preliminary injunction stage does not necessarily preclude a finding of

12   obviousness in light of additional evidence presented at trial, the jury agreed with the Federal

13   Circuit and concluded that the D'889 Patent was not obvious.  This Court now considers whether

14   the factual record could support the jury's conclusion.

15        In reaching its finding that the D'889 Patent was valid, the jury made implicit findings of

16   fact about the scope of the prior art.  In particular, there was significant evidence before the jury

17   that these two prior art references and the D'889 patent differ in several respects, including the

18   Fidler tablet's curved front face, and the Fidler tablet's inclusion of a screen frame that is

19   asymmetric and not flush with the screen.  The TC1000 is more different still.  *Kinetic Concepts*

20   requires this Court to credit the jury's implicit finding that these gaps are significant.  In light of

21   these implicit findings of fact, supported by the record and in accord with the Federal Circuit's

22   reasoning in *Apple*, 678 F.3d 1314, neither the Fidler tablet, nor the still more divergent TC1000,

23   can serve as a primary reference for obviousness.  Accordingly, the Court finds that as a matter of

24   law, the Fidler tablet and the TC1000 do not render the D'889 Patent obvious, and the Court

25   DENIES Samsung's corresponding motion for judgment as a matter of law or a new trial.

26            d.      D'677 Double Patenting

27        Fourth, Samsung argues that the D'677 Patent is invalid for double-patenting over the

28   D'087 Patent.  35 U.S.C. § 101 states that an inventor may obtain "a patent" for an invention.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

1    Accordingly, the statute "permits only one patent to be obtained for a single invention."

2    *Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010)

3    (quoting *In re Lonardo,* 119 F.3d 960, 965 (Fed. Cir. 1997)).  However, § 101 "only prohibits a

4    second patent on subject matter identical to an earlier patent."  *Geneva Pharms., Inc. v.*

5    *GlaxoSmithKline PLC,* 349 F.3d 1373, 1377 (Fed. Cir. 2003).  Accordingly, courts developed the

6    doctrine of obviousness-type double patenting to "prevent the extension of the term of a patent . . .

7    by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims

8    of the first patent."  *Boehringer Ingelheim*, 592 F.3d at 1346 (quoting *In re Longi,* 759 F.2d 887,

9    892 (Fed. Cir. 1985)).

10    The Federal Circuit has explained that "a patentee may [assure the validity of a patent by

11    filing] a disclaimer after issuance of the challenged patent or during litigation, [and] even after a

12    finding that the challenged patent is invalid for obviousness-type double patenting."  *See*

13    *Boehringer Ingelheim*, 592 F.3d at 1347 (citing *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.

14    3d 1368, 1975 (2005)).  Apple has now filed a terminal disclaimer with the P.T.O., limiting the

15    term of the D'677 Patent to the duration of the earlier-expiring D'087 Patent.  *See* ECF No. 2162.

16    Accordingly, under *Boehringer*, Apple has assured the validity of the D'677 Patent as against

17    Samsung's claim of double patenting over the D'087 Patent.  For this reason, Samsung's motion

18    for judgment as a matter of law that the D'677 Patent is invalid on the basis of double patenting is

19    DENIED.

20    **B.    Apple's Registered iPhone Trade Dress and Unregistered iPhone 3G Trade Dress are Protectable and Diluted**

21    Samsung moves for judgment as a matter of law that Apple's registered iPhone Trade Dress

22    and unregistered iPhone 3G Trade Dress are not protectable and not diluted.  *See* Mot. at 8-12.  In

23    the alternative, Samsung moves for a new trial on trade dress.  *Id.*

24    **1.    Functionality**

25    Samsung argues that Apple's registered iPhone Trade Dress and unregistered iPhone 3G

26    Trade Dress are not protectable because they are functional.  As a preliminary matter, Apple's

27    registered iPhone Trade Dress is presumed valid, and therefore non-functional, while Apple's

28

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

**United States District Court**
For the Northern District of California

unregistered iPhone 3G Trade Dress is presumed functional.  *See* 15 U.S.C.A. § 1125; Final Jury Instruction No. 62.

There are two types of functionality: utilitarian functionality and aesthetic functionality. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001).  A finding of either type of functionality would defeat protectability.  Under the traditional, utilitarian functionality test, a trade dress is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device."  *Id*.  In applying this test, the Ninth Circuit assesses four factors: "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available."  *Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)); *see also Au-Tomotive Gold, Inc.*, *v. Volkswagen of America*, 457 F.3d 1062, 1072 n.8 (9th Cir. 2006) (acknowledging the four factor test applied by the Ninth Circuit).

Samsung argues that the record lacks substantial evidence to support the jury's findings that: (1) Apple had established nonfunctionality for its unregistered iPhone 3G trade dress; and (2) that Samsung had not proven functionality for Apple's registered iPhone trade dress.[3]  Apple cites evidence disputing utilitarian functionality under all four *Disc Golf* factors.  As to the first factor, "whether advertising touts the utilitarian advantages of the design," Apple cites Apple executive Phil Schiller's testimony that Apple's advertising used a "product as hero" pitch that does not tout design utility.  *See* Opp'n. at 8 (citing Tr. 654:24-655:1).  As to the second factor, "whether design results from a comparatively simple or inexpensive method of manufacture," Apple cites the testimony of Apple design executive Christopher Stringer that Apple encountered difficulties in manufacturing iPhones, suggesting that the designs were *not* especially simple to manufacture.  *See* Mot. at 8 (citing Tr. 494:15-495:21).  As to the third factor, whether the design yields utilitarian

---

[3] As the designs in the iPhone and iPhone 3G trade dress are similar and apply to different versions of the same product, the iPhone, the parties rely on the same evidence in analyzing the functionality of both trade dresses.  The Court will do the same.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

1  advantage, Apple cites Mr. Stringer's testimony that the iPhone design was selected from among

2  alternative designs because "[i]t was the most beautiful" rather than for some functional purpose.

3  *See* Opp'n. at 8 (citing Tr. 493:14-15).  As to the fourth factor, Apple cites actual alternative phone

4  body designs (*see* Opp'n. at 8 (citing PX10)), and the testimony of Apple's expert Susan Kare on

5  alternative phone screen designs.  *See* Opp'n. at 8 (citing Tr. 1400:6-1401:1).  This body of

6  evidence is sufficient to support a jury's finding that Apple had proven utilitarian nonfunctionality

7  for its unregistered iPhone 3G trade dress and that Samsung had not proven utilitarian functionality

8  for Apple's registered iPhone trade dress.

9      Furthermore, there is substantial evidence to support the jury's finding of protectiblity

10  because the asserted iPhone Trade Dresses lack "aesthetic functionality."  *See Au-Tomotive Gold*,

11  457 F.3d at 1072.  A trade dress has aesthetic functionality only if limiting competitors' use of the

12  trade dress would impose a "significant non-reputation-related competitive disadvantage."  *See id.*

13  (citing *TrafFix*, 532 U.S. at 33).  The Supreme Court in *TrafFix* explained that such significant

14  disadvantage arises where there is a "competitive necessity" to infringe or dilute.  532 U.S. at 32-

15  33.

16      Samsung argues that Apple admitted aesthetic functionality when Apple witnesses testified

17  that the beauty of the iPhone is a factor in its success.  *See* Mot. at 9 (citing testimony of Apple

18  design executive Mr. Stringer, Tr. 484:1-11; Apple executive Mr. Schiller, Tr. 602:8-19; 625:4-

19  626:4; 635:24-636:5; and 721:3-7).  However, Samsung elsewhere identifies evidence that few

20  consumers are primarily motivated by design considerations such as aesthetics.  *See, e.g.*, Mot. at

21  19 (citing DX592.023; PX69.43 (surveys showing that only between 1% and 5% of purchasers are

22  motivated by phone design and appearance).  Samsung cannot credibly argue that consumers are

23  not motivated by aesthetics in hoping to avoid an injunction or damages award, and simultaneously

24  argue that aesthetics are a significant motivator in hopes of invalidating Apple's trade dress.

25  Although, as Samsung points out, the evidence in the record shows that some fraction of

26  consumers may be motivated in some part by smartphone design and aesthetics, on balance, the

27  evidence introduced by both Apple and Samsung concerning the limited role of aesthetics in

28  purchasing decisions is sufficient to support the jury's implicit finding that Samsung did not need

11

to infringe Apple's trade dress in order to compete with the iPhone, as would be required for a finding of aesthetic functionality.  *See TrafFix*, 532 U.S. at 32-33.

Accordingly, the Court finds that there is substantial evidence in the record to support the jury's findings that: (1) Apple rebutted the presumption that the unregistered iPhone 3G Trade Dress is functional, and (2) Samsung failed to rebut the presumption that the registered iPhone Trade Dress is non-functional.  Samsung's motion for a new trial or judgment as a matter of law that Apple's trade dresses are invalid for functionality is DENIED.

### 2.      Secondary Meaning and Fame

To be protectable, a trade dress must have secondary meaning such that the purchasing public associates the trade dress with a particular source.  *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F. 2d 512, 517 (9th Cir. 1989) (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987)).  Further, a trade dress cannot be diluted unless it is famous such that it is "truly prominent and renowned" among the general public.  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).  Apple bears the burden of showing dilution for both registered and unregistered trade dress.  *See* 15 U.S.C. § 1125; Final Jury Instruction No. 65.

Although secondary meaning and fame are different issues, here they rise and fall on largely the same evidence.  Samsung argues that Apple has failed to show that its registered iPhone Trade Dress and unregistered iPhone 3G Trade Dress have acquired secondary meaning and are famous.  Apple has introduced: (1) survey expert testimony (Tr. 1578:24-1585:5 (Dr. Hal Poret's testimony that his surveys showed consumers associated iPhones with Apple); Tr. 1695:17-1695:22 (Apple expert Dr. Kent Van Liere, same); (2) iPhone advertisements from 2007 through 2010, including iPhone 3G advertisements from 2008 (PX11, 12, 127); (3) television show clips from 2007 through 2010 (PX14); (4) media reviews of the original iPhone from 2007 (PX 133, 135); (5) advertising expenditures (PX16 ("Advertising Expenditures (U.S.)"); Tr. 653:24-654:1 (Mr. Schiller testimony estimating $120-130 in advertising expenses between October 2009 and June 2010)); and (6) fact witness testimony (Tr. 639:8-640:3 (Mr. Schiller's testimony on product as hero advertising)).  This significant pool of evidence represents substantial evidence in the record from which the jury could infer both secondary meaning and fame.  Accordingly,

12

United States District Court
For the Northern District of California

1    Samsung's motion for judgment as a matter of law or a new trial on grounds that Apple's trade

2    dress was not protectable or famous is DENIED.

3             **3.    Other Elements of Dilution**

4             Trademark dilution is caused by the use in commerce of a mark that "impairs the

5    distinctiveness" or "harms the reputation" of a famous mark.  15 U.S.C. §1125(c).  "Dilution refers

6    to the whittling away of the value of a trademark when it's used to identify different products."

7    *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (citation and quotation marks

8    omitted).  While many dilution claims refer to trade names, the dilution statute explicitly applies

9    dilution protection to trade dress.  *See* 15 U.S.C. §1125(c)(4).  To establish a claim of trade dress

10   dilution, in addition to proving fame, a plaintiff must show that (1) the defendant is "making use of

11   the [trade dress] in commerce," (2) the defendant's "use began after the [trade dress] became

12   famous," and (3) the defendant's use of the trade dress is "*likely* to cause dilution by blurring" or

13   by "tarnishment."  *See Jade Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (emphasis

14   added).

15            Samsung does not dispute that substantial evidence supported a finding that Samsung used

16   the asserted Apple trade dresses "in commerce."  Instead, Samsung argues that Samsung is entitled

17   to judgment as a matter of law or a new trial on dilution because the evidence did not show that the

18   asserted trade dresses had become famous prior to Samsung's first sale of the accused diluting

19   phones in July 2010.  *See* Mot. at 10-11.  However, Apple's substantial advertising and press

20   coverage prior to release of Samsung's phones (PX11; PX12; PX 16; PX127; PX133; PX135; Tr.

21   639:8-640:3; Tr. 653:24-655:1), taken together with Apple's later-collected survey evidence (Tr.

22   1578:24-1585:5; Tr. 1695:17-22), provides substantial evidentiary support for the jury's finding

23   that Apple's trade dresses were famous before Samsung's first sale of an accused diluting phone in

24   July, 2010.

25            Samsung also argues that Apple has not provided evidence of likely dilution, and that

26   Samsung's evidence of 25 third-party iPhone-like smartphones in the market "undermines any

27   finding of likely dilution" by Samsung's accused devices.  *See* Mot. at 11.  However, Apple

28   presented significant evidence that dilution by blurring was likely, including: (1) actual accused

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

1   Samsung products that allegedly have iPhone-like appearances; (2) press reports discussing the

2   similar appearances of the iPhone and the accused products (PX6); (3) testimony by Apple expert

3   Dr. Winer that Samsung's phones dilute Apple's trade dresses by blurring (Tr. 1521:14-24); (4)

4   evidence of copying by Samsung (Tr. 1506:16-1507:2 (Dr. Winer testimony on Samsung

5   copying)); PX36.20 (Samsung believed the iPhone was "a revolution"); PX44 (Samsung's

6   "Relative Evaluation Report on S1, iPhone"); and (5) testimony of Apple's expert Dr. Van Liere

7   that 37-38% of consumers associated Apple and Samsung smartphones.  Tr. 1691:13-1696:2.  This

8   collection of evidence constitutes substantial evidence in the record to support the jury's finding of

9   dilution by blurring.  Accordingly, Samsung's motion for judgment as a matter of law or a new

10   trial on grounds that Apple did not establish a likelihood of dilution is DENIED.

11   Finally, an award of damages for trade dress dilution requires a finding that the dilution was

12   willful, i.e. that Samsung "willfully intended to trade on the recognition" of Apple's trade dresses.

13   15 U.S.C. §1125(c).  Here, it is undisputed that Samsung was aware of the iPhone design.

14   Samsung argues that Apple has not submitted evidence that could support the jury's verdict of

15   willful dilution.  However, Apple has submitted evidence that Samsung viewed the iPhone as

16   revolutionary (PX36.20), and that Samsung attempted to create similar products (PX44).  This

17   constitutes substantial evidence in the record to support the jury's finding that Samsung willfully

18   intended to trade on the recognition of Apple's trade dresses.  Accordingly, Samsung's motion for

19   a new trial or judgment as a matter of law on grounds that Apple did not present evidence of willful

20   dilution is DENIED.

21   In sum, Apple has identified substantial evidence in the record of trade dress non-

22   functionality, trade dress secondary meaning, trade dress fame prior to the release of Samsung's

23   accused devices, likelihood of dilution, and willful dilution.  Moreover, the jury's findings were not

24   against the clear weight of the evidence.  Accordingly, the Court DENIES Samsung's motion for

25   judgment as a matter of law that Apple's registered iPhone Trade Dress and unregistered iPhone3G

26   Trade Dress are not protectable and not diluted, and DENIES Samsung's motion in the alternative

27   for a new trial.

28   **C.      Utility Patents**

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

### 1.    Infringement

Samsung moves for judgment as a matter of law that no accused Samsung device infringes any of Apple's utility patent claims. *See* Mot. at 13-15.  In the alternative, Samsung also moves for judgment as a matter of law or a new trial on infringement of claim 8 of Apple's U.S. Patent No. 7,844,915 ("the '915 Patent") and claim 19 of U.S. Patent No. 7,469,381 ("the '381 Patent").   In order to find infringement, the jury had to find that each infringing Samsung product met every limitation of each of the infringed patent claims.  *See Pennwalt Corp. v. Durand-Wayland Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (en banc).  Samsung argues that Apple did not offer sufficient evidence of utility patent infringement to support the jury's findings.

Samsung's first argument applies to all of the jury's infringement findings for the '915 and '381 Patents.  Samsung argues it was insufficient for Apple's experts to perform an element-by-element infringement analysis of one Samsung device and then simply show the jury videos of other Samsung devices performing the same patented user-interface ("UI") operation.  The Court cannot agree.  Apple's experts Dr. Karan Singh and Dr. Ravin Balakrishnan testified that certain UI operations necessarily infringed all of the required elements.  Thus, showing that those same UI operations were performed by different devices is the logical equivalent of showing that all of the required elements were performed on each device performing those UI operations.  Furthermore, having had the patented UI operations demonstrated by Dr. Singh and Dr. Balakrishnan, the jurors entered the jury room with both an understanding of how the accused UI features were alleged to work *and* actual working products, which the jurors could test to confirm whether the devices infringed the UI utility patents.  Thus, the combination of the testimony and the devices themselves constituted substantial evidence in the record to support a finding of infringement, and the jury's finding of infringement was not against the clear weight of the evidence.  Samsung's motion for judgment as a matter of law that Apple did not establish infringement for each accused product and Samsung's motion for a new trial on this basis are accordingly DENIED.

### a.    Claim 8 of the '915 Patent

Samsung also moves for judgment as a matter of law that Samsung did not infringe claim 8 of the '915 Patent.  Claim 8 of the '915 Patent claims a device performing a method for scrolling and scaling objects on a touch screen using gestures.  Specifically, claim 8 recites:

> A machine readable storage medium storing executable program instructions which when executed cause a data processing system to perform a method comprising:
> receiving a user input, the user input is one or more input points applied to a touch-sensitive display that is integrated with the data processing system;
> creating an event object in response to the user input;
> determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;
> issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;
> responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and
> responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

'915 Patent, 23:65-24:21.

Samsung makes three arguments to support its motion for judgment as a matter of law or a new trial on '915 Patent infringement.  First, Samsung argues that Samsung's software does not satisfy the "invoking" limitation because the MotionEvent object in Samsung's code, which directly stores the user's touch data in the operating system, does not directly cause the scroll or gesture to occur as required by the claim limitation, but that instead the MotionEvent data is used by another program, WebView object, which actually causes the scroll or gesture operation to occur.  *See* Mot. at 14 (citing Tr. 2911:6-2912:1 (noninfringement testimony of Samsung expert Mr. Gray)).  This argument, however, is premised upon a claim construction that the Court has already rejected, that the claimed "event object" that detects the user touch must directly cause the scroll or gesture.  Instead, the Court ruled that causation with intervening events still meets the claim limitation of "invoke[ing] a scroll or gesture operation."  *See* ECF No. 1158.  Accordingly, this intervening step does not defeat Apple's claim of infringement.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

Second, Samsung argues that some Samsung devices do not perform the "gesture" operation required by the claim in response to a two finger touch. *See* Mot. at 14. Samsung explains that these devices instead perform a "scroll" operation. *Id.* As a preliminary matter, Samsung's expert Mr. Gray testified as to only one such specific device, the Samsung Galaxy Tab 10.1. *See* Tr. 2912:2-19. Thus, even if this argument were persuasive, it would apply only to the Galaxy Tab 10.1, and not to any of the other accused devices. Samsung's motion on this basis is DENIED as to all accused devices except the Galaxy Tab 10.1.

Regarding the Galaxy Tab 10.1, Apple's expert Dr. Singh testified that the operation performed by the Samsung Galaxy Tab 10.1 in response to the two finger touch was not, in fact, a "scroll" as Samsung contends, but a simultaneous scroll and scale ("translate" and "scale," in Dr. Singh's words). Tr. 1863:1-1864:16. The plain language of the claim requires a finger scroll that is "interpreted as the gesture operation" that leads to "scaling" of the view on the touch screen. This plain language does not exclude the possibility that a gesture operation causes both scaling and some other event, such as simultaneous scrolling. Thus, Dr. Singh's testimony could have supported a jury's finding that the Galaxy Tab 10.1 did, in fact, perform scaling in resonse to a gesture operation, as defined by the claim, and thus did infringe. Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that claim 8 of the '915 Patent is not infringed.

Finally, Samsung argues that a new trial is necessary to resolve inconsistencies in the jury verdict. *See* Mot. at 14. Specifically, Samsung argues that the jury found no '915 Patent infringement by the Galaxy Ace, running Android 2.2.1, and by the Intercept and Replenish, running Android 2.2.2., but that the jury found '915 Patent infringement by many other accused devices that run the exact same software. *Id.* In opposition, Apple argues: (1) that Samsung waived its objection by failing to raise this argument before the jury was dismissed; (2) that the verdicts are not inconsistent because the jury may have tested the three non-infringing phones in a manner that would give a false non-infringement conclusion; and (3) that any inconsistency does not merit a new trial in this case.

As to Apple's first argument, waiver by Samsung, the Court finds that Samsung did not waive its right to object to inconsistencies in the jury verdict. In fact, it was clear that Samsung

17

was reserving its right to raise any additional inconsistencies.  Tr. 4316:18-21.  ("Johnson: That's it *for right now* your honor." (emphasis added); "The Court:  *At this point* . . . , no further inconsistencies; right?" (emphasis added)).

Apple also argues that the verdicts are not inconsistent.  However, Apple implicitly admits that the verdicts are factually inconsistent.  Specifically, Apple suggests that the jury simply made a mistake in analyzing the Ace, Intercept, and Replenish in the jury room, perhaps "test[ing] them on a 'mobile' website that did not allow two-finger scaling and therefore concluded that those particular devices did not infringe."  Opp'n at 12.  Thus, Apple implicitly agrees that all the devices running a particular Android version either infringe or do not infringe together, and that the jury's findings are factually inconsistent.

Apple argues that these factual inconsistencies do not merit a new trial.  Courts are not obligated to set aside a verdict wherever there is any sort of inconsistency.  Indeed, the Ninth Circuit allows courts to set aside verdicts on grounds of inconsistency only when absolutely necessary.  "The question is whether the verdict can be reconciled on any reasonable theory consistent with the evidence."  *Ward v. City of San Jose,* 967 F.2d 280, 286 (9th Cir. 1991).  Thus, "[w]hen faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial."  *Toner for Toner,* 828 F.2d at 512.

In *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1034 (9th Cir. 2003), the Ninth Circuit undertook a comprehensive analysis of the law on inconsistent verdicts.  In upholding a jury's verdict that a corporate defendant was liable where the only individual acting on behalf of the corporation was not, the Ninth Circuit explained that seeming inconsistencies in a jury's understanding of facts does not warrant a new trial.  *Id.* at 1030.  Only verdicts that entail two legal conclusions that cannot logically coexist, such as an award of damages and a finding of no liability, rather than a mere inconsistent view of facts, warrant the Court's intervention.  *See id.* at 1034 ("Unless one legal conclusion is the prerequisite for another, inconsistencies between them must stand."); *see also Duhn Oil Tool*, *Inc. v. Cooper Cameron Corp*, 818 F. Supp. 2d 1193 (E.D. Cal.,

1  2011) (jury's verdicts that independent patent claim is obvious, but dependent claim is not, are

2  inconsistent and require new trial).

3       Here, an infringement finding for one product is not the legal prerequisite for an

4  infringement finding of another product, even if the products are identical in all relevant respects.

5  Rather, this situation is analogous to *Zhang*, where a finding that the corporation was liable

6  logically should also have meant that the individual through which the corporation acted was

7  liable, but the two liability determinations, while depending on the same facts, were legally

8  independent of one another.  In *Zhang*, the Ninth Circuit held that the verdicts, though apparently

9  factually inconsistent, must stand.  *Id.* at 1030.  The same is true here.  Accordingly, a new trial to

10  resolve inconsistencies is inappropriate as to '915 Patent infringement.  Therefore, the Court

11  DENIES Samsung's motion for a new trial as to infringement of claim 8 of the '915 Patent.

b.  Claim 19 of the '381 Patent

13       Samsung also moves for judgment as a matter of law that Samsung did not infringe claim

14  19 of the '381 Patent.  Claim 19 of the '381 Patent claims a device performing a method of

15  bouncing back when a user scrolls an object such as a web page off the end of a display screen.

16  Specifically, claim 19 recites:

17       A device, comprising:
     a touch screen display;
18       one or more processors;
     memory; and
19       one or more programs, wherein the one or more programs are stored in the memory
          and configured to be executed by the one or more processors, the programs
20              including:
     instructions for displaying a first portion of an electronic document;
21       instructions for detecting a movement of an object on or near the touch
              screen display;
22       instructions for translating the electronic document displayed on the touch
23              screen display in a first direction to display a second portion of the
              electronic document, wherein the second portion is different from the
24              first portion, in response to detecting the movement;
     instructions for displaying an area beyond an edge of the electronic
25              document and displaying a third portion of the electronic document,
26              wherein the third portion is smaller than the first portion, in response
              to the edge of the electronic document being reached while
27              translating the electronic document in the first direction while the
28              object is still detected on or near the touch screen display; and

19

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

instructions for translating the electronic document in a second direction
until the area beyond the edge of the electronic document is no
longer displayed to display a fourth portion of the electronic
document, wherein the fourth portion is different from the first
portion, in response to detecting that the object is no longer on or
near the touch screen display.

'381 Patent, 36:59-37:22.

Samsung argues that the "hold still" function of its phones is not a bounce-back feature as claimed by the '381 Patent, and that therefore its phones do not infringe. *See* Mot. at 14-15. Apple does not dispute that the "hold still" function is not claimed by the '381 Patent, but cites Apple expert Dr. Balakrishnan's testimony that in addition to the "hold still" function, the accused Samsung phones also perform the claimed bounce-back function, and that the accused phones contain the software instructions for performing the bounce-back function. *See* Opp'n. at 13 (citing Tr. 1751:21-1757:21).

Samsung argues that the Court has already ruled that the '381 Patent requires that the bounce-back function occur every time the user scrolls past the edge of the electronic document, and that therefore even if the accused phones do sometimes display the bounce-back feature or contain software instructions for that feature, they do not infringe. *See* Mot. at 14-15. However, this Court's prior ruling did not concern claim 19, but rather claim 1 of the '381 Patent, a method claim. *See* ECF No. 452 at 58-60. Thus, that ruling does not control here. The jury found that some Samsung products infringe claim 19 of the '381 Patent, which claims not a method, but an apparatus with instructions for performing the bounce-back function. The plain language of the claim does not require that the instructions operate to perform the function in every instance. Thus, the jury could reasonably have interpreted the claim language to require only that a device contain the instructions for the bounce-back feature, which Dr. Balakrishnan testified that Samsung's devices did. Accordingly, there is substantial evidence in the record to support the jury's findings of infringement as to claim 19 of the '381 Patent, and this finding of infringement was not against the clear weight of the evidence. Therefore, the Court DENIES Samsung's motion for judgment as a matter of law that Samsung's accused devices do not infringe claim 19 of the '381 Patent, and DENIES Samsung's motion for a new trial on this basis.

20

### 2.   Validity

Samsung seeks judgment as a matter of law that all three of Apple's asserted utility patents are invalid on grounds of anticipation, obviousness, or both.[4]  A patent claim is invalid by reason of anticipation under 35 U.S.C. § 102 "if each and every limitation is found either expressly or inherently in a single prior art reference." *Bristol-Myers Squibb Co. v Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001).  Whether a patent is anticipated is a question of fact. *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1297 (Fed. Cir. 2010). Anticipation must be shown by clear and convincing evidence. *Id.* at 1292.

As with design patents, as discussed above, a utility patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009).  The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *KSR Int'l*, 550 U.S. at 406 (2007) (citing *Graham*, 383 U.S. at 17-18); *Aventis*, 675 F.3d at 1332.  Though obviousness is ultimately a question of law for the Court to decide de novo, the Court treats with deference the implied findings of fact regarding obviousness made by the jury. *Kinetic Concepts*, 688 F.3d at 1356-57. "A party seeking to invalidate a patent on the basis of obviousness must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Id.* at 1360.

### a.   Claim 8 of the '915 Patent

---

[4] Samsung has also moved for a new trial on validity.  However, Samsung's motion for a new trial is based upon Samsung's allegation that despite correct instruction, the jury applied an incorrect legal standard to evaluate patent validity.  This argument has already been addressed in the Court's Order re: Juror Misconduct. *See* ECF No. 2198.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

**United States District Court**
For the Northern District of California

1  Samsung moves for judgment as a matter of law that claim 8 of the '915 Patent is invalid

2  based on two pieces of prior art: (1) the DiamondTouch with FractalZoom; and (2) the Nomura

3  patent application.[5]  *See* Mot. at 12.  First, Samsung argues that the DiamondTouch with

4  FractalZoom included all the elements of claim 8 of the '915 Patent, rendering claim 8 invalid for

5  anticipation.  Although Samsung's expert Stephen Gray testified that this prior art contained all the

6  elements of claim 8 of the '915 Patent (Tr. 2897:12-2902:5:25), Apple's expert Dr. Singh gave

7  contrary testimony (Tr. 3623:7-3625:5).  Specifically, Dr. Singh testified that: (1) the

8  DiamondTouch does not contain an "integrated" "touch-sensitive display;" (2) the DiamondTouch

9  treats a three-finger input the same as a one-finger input, thereby failing to distinguish between a

10  "single input point" and "two or more input points"; and (3) Mr. Gray never identified a "view

11  object" that was associated with an "event object."  Though conflicting with Mr. Gray's testimony

12  to some extent, this testimony is sufficient to support the jury's finding that Samsung has not

13  proven anticipation by clear and convincing evidence.

14  Moreover, in finding the patent valid, the jury made implied findings that these gaps

15  between the prior art and claim 8 of the '915 Patent were significant.  Samsung has failed to

16  identify evidence suggesting that it would have been obvious to a person of ordinary skill in the art

17  to bridge these gaps, such as testimony or documentary evidence as to how or why the gap would

18  have been bridged.  Thus, the Court cannot find that Samsung has met its burden to establish

19  obviousness by clear and convincing evidence.   Therefore, the Court DENIES Samsung's motion

20  for judgment as a matter of law that claim 8 of the '915 Patent is invalid over the DiamondTouch

21  with FractalZoom prior art.

22  Samsung also argues that the Nomura patent application includes all elements of claim 8 of

23  the '915 Patent, and thus renders claim 8 invalid for anticipation.  *See* Mot. at 12.  Claim 8 covers a

24  user interface created by a specific programming technique.  However, Dr. Singh testified that

25  Nomura does not include "events, objects, [or] views," as required by claim 8.  Thus, Nomura may

26  disclose a similar user interface, but one that is implemented using different programming

27  ───────────────
[5] Samsung does not move for judgment as a matter of law that claim 8 of the '915 Patent is invalid
28  based on the Han reference, but Apple's opposition discusses the Han reference.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

1    techniques than claim 8 of the '915 Patent.  Tr. 3625:10-3626:24.  As with the DiamondTouch, Dr.

2    Singh's testimony about the Nomura reference supports the jury's finding of non-anticipation.

3        Furthermore, the jury's finding of validity indicates that the jury made an implied finding of

4    fact affirming Dr. Singh's testimony that the gap between Nomura and the '915 Patent was

5    significant.  The Court must give that finding deference.  *See Kinetic Concepts*, 688 F.3d 1342,

6    1356.  In light of the lack of clear Samsung evidence as to why such a gap would be obvious to

7    bridge, the Court finds claim 8 of the '915 Patent non-obvious as a matter of law.  Accordingly, the

8    Court DENIES Samsung's motion for judgment as a matter of law that claim 8 of the '915 Patent is

9    invalid based on the Nomura prior art.

10                    b.    Claim 19 of the '381 Patent

11        Samsung also moves for judgment as a matter of law that claim 19 of the '381 Patent is

12    invalid because of the TableCloth and LaunchTile prior art references, based upon testimony to

13    that effect from Samsung's expert Dr. van Dam.  *See* Mot. at 12.

14        Apple argues that the jury's finding of non-anticipation was supported by the testimony of

15    Dr. Balakrishnan.  Dr. Balakrishnan testified that TableCloth does not respond to the edge of an

16    electronic document as required by claim 19.  *See* 3631:14-3634:19.  Instead, he testified that

17    TableCloth simply snaps back to the original position when the user's finger is lifted off the touch-

18    screen, regardless of whether a document edge has been crossed.  *Id.*  This testimony alone is

19    sufficient to support the jury's finding that TableCloth does not anticipate claim 19.  Similarly, Dr.

20    Balakrishnan testified that TableCloth snaps back not only until space beyond the edge of an

21    electronic document is no longer displayed, but rather all the way to the document's original

22    position, before it was moved at all.  *Id.*  Yet claim 19 explicitly excludes this type of snapping

23    back to the original position ("wherein the fourth portion is different from the first portion").

24    Again, this testimony is sufficient to support the jury's finding of validity.

25        Dr. Balakrishnan also provided testimony sufficient to support the jury's finding that

26    LaunchTile does not anticipate claim 19.  He testified that LaunchTile fails to meet the limitations

27    of claim 19 of the '381 Patent because LaunchTile does not respond "to the edge of the electronic

28    document being reached," as required by the claim.  Tr. 3634:20-3635:18.  Instead, Dr.

23

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

1   Balakrishnan testified that LaunchTile tracks the center of the document.  *Id.*  Dr. Balakrishnan

2   also testified that LaunchTile will simply move to center a displayed document, but that such

3   centering will not necessarily be "in a second direction" as required by claim 19.  *See id.* ("If it's

4   more than a sixth of the way, it goes to the next set of tiles.").  Furthermore, Dr. Balakrishnan

5   testified that LaunchTile sometimes also demonstrated situations in which LaunchTile will not

6   move past an edge (the so-called "frozen screen problem"), and situations in which LaunchTile

7   allows dragging far past an edge (the so-called "desert fog problem").  Tr. 3635:19-3636:8.  The

8   emergence of these two problems supports Dr. Balakrishnan's testimony that although LaunchTile

9   may sometimes appear to be responding to an edge as required by claim 19, in fact it is not.  In

10  sum, Dr. Balakrishnan's testimony constituted substantial evidence in the record to support the

11  jury's finding of non-anticipation.  Accordingly, Samsung's motion for judgment as a matter of law

12  that claim 19 of the '381 Patent is invalid for anticipation is DENIED.

13          The Court also finds that claim 19 is not obvious in light of Tablecloth and LaunchTile.  In

14  finding validity, the jury implicitly found that the gaps identified by Dr. Balakrishnan were

15  significant.  Samsung's expert Dr. van Dam testified only that Tablecloth rendered claim 19

16  obvious because a person of ordinary skill in the art would "understand the advantage of this

17  snapping back behavior."  Tr. 2872:23-25.  Dr. van Dam also testified that LaunchTile rendered the

18  '381 Patent "obvious because, again, you can see every element there."  Tr. 2873:6-7.  These bare

19  assertions by Dr. van Dam are insufficient to prove by clear and convincing evidence that it would

20  have been obvious to bridge the gaps between Tablecloth or LaunchTile and claim 19.

21  Accordingly, in light of the jury's implied findings of fact and Samsung's minimal evidence as to

22  obviousness, the Court finds claim 19 of the '381 Patent non-obvious as a matter of law.

23  Therefore, the Court DENIES Samsung's motion for judgment as a matter of law that claim 19 of

24  the '381 Patent is invalid.

25                          c.   Claim 50 of the '163 Patent

26          Claim 50 of U.S. Patent No. 7,864,163 ("the '163 Patent") claims a touch screen device

27  with tap-to-zoom functionality.  Specifically, claim 50 recites:

28          A portable electronic device, comprising:

24

a touch screen display;
one or more processors;
memory; and
one or more programs, wherein the one or more programs are stored in the memory
    and configured to be executed by the one or more processors, the one or
    more programs including:
    instructions for displaying at least a portion of a structured electronic
        document on the touch screen display, wherein the structured
        electronic document comprises a plurality of boxes of content;
    instructions for detecting a first gesture at a location on the displayed portion
        of the structured electronic document;
    instructions for determining a first box in the plurality of boxes at the
        location of the first gesture;
    instructions for enlarging and translating the structured electronic document
        so that the first box is substantially centered on the touch screen
        display;
    instruction for, while the first box is enlarged, a second gesture is detected
        on a second box other than the first box; and
    instructions for, in response to detecting the second gesture, the structured
        electronic document is translated so that the second box is
        substantially centered on the touch screen display.

'163 Patent, 29:14-40.

Samsung argues that claim 50 of the '163 Patent is invalid based on LaunchTile, and two additional references, Agnetta and Robbins. In support of this argument, Samsung cites the testimony of Mr. Gray. *See* Mot. at 12-13. Apple's expert Dr. Singh gave rebuttal testimony as to LaunchTile and Agnetta, explaining that neither LaunchTile nor Agnetta "enlarge[s] a structured electronic document" as required by claim 50. Tr. 3615:19-3616:4. Instead, Dr. Singh testified that to the extent any structured electronic document exists, LaunchTile and Agnetta *replace* that structured electronic document with new content. *Id.* This testimony is sufficient to support the jury's finding that Samsung did not prove anticipation by LaunchTile or Agnetta by clear and convincing evidence. As to the Robbins reference, Mr. Gray did not address all the limitations of claim 50 on direct examination. *See* Tr. 3619:4-3620:10 (Dr. Singh testimony that Mr. Gray had neglected to explain how all claim elements were present in Robbins). The incomplete nature of Mr. Gray's testimony supports the jury's finding that Samsung did not prove anticipation over Robbins by clear and convincing evidence. Tr. 2919:17-2922:6. Accordingly, Samsung's motion for judgment as a matter of law that claim 50 is invalid for anticipation is DENIED.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

Furthermore, Mr. Gray admitted that he gave no testimony as to obviousness of claim 50 of the '163 Patent. Tr. 2924:12-17 (admitting that "anticipation is all [Mr. Gray] spoke to"). Indeed, because the jury implicitly found, as Dr. Singh testified, that there are differences between the prior art and Apple's utility patents, Samsung had the burden of showing that these gaps would have been obvious to bridge. Samsung failed to offer such evidence. Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that claim 50 of the '163 Patent is invalid for obviousness over the LaunchTile, Agnetta, and Robbins references.

**D.      Willfulness**

To establish willful patent infringement,[6] "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk. . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (internal citation omitted). Thus, the willfulness inquiry is a two-prong analysis, requiring an objective inquiry and a subjective inquiry. The objective inquiry is a question for the Court, and the subjective inquiry is a question for the jury. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

Because both prongs must be established for the Court to make an ultimate finding of willfulness, failure on either prong defeats a claim of willfulness. Thus, where the jury found willfulness, the Court must also find willfulness. If the Court finds no objective willfulness, the inquiry is at an end, and the Court need not consider whether the jury's finding of subjective willfulness was supported by substantial evidence. Conversely, if the jury found no subjective

---

[6] This standard applies only to patents. To the extent that the parties suggest that the Court should consider willfulness regarding trade dress dilution, the Court declines to do so. Willfulness is part of dilution inquiry, and a finding of willfulness is required to award remedies for trade dress dilution. Accordingly, the jury's findings on willfulness as to trade dress dilution are addressed in the section on trade dress, and are not independently considered here, in the discussion of willful patent infringement.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

willfulness, the Court need not consider objective willfulness, as the willfulness claim must fail either way.[7]

Here, the Court sent the subjective prong of willfulness to the jury, and the jury found that Samsung's infringement was subjectively willful for five of the seven patents (three utility patents and two design patents). *See* Final Jury instruction No. 59; Amended Jury Verdict, ECF No. 1890, at 9. Thus, for these five patents, the Court must find the objective prong also satisfied in order to make an ultimate finding of willfulness.[8]

To establish objective willfulness, Apple must prove by clear and convincing evidence that there was an "objectively high likelihood that its actions constituted infringement of a valid patent." *Bard*, 682 F.3d at 1005 (citing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 1319 (Fed. Cir. 2010)). If Samsung had an objectively reasonable defense to infringement, its infringement cannot be said to be objectively willful. *See Spine Solutions*, 620 F.3d at 1319 ("The 'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement."); *Bard*, 682 F.3d at 1006 (objective willfulness determination "entails an objective assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity that are not necessarily dependent on the factual circumstances of the particular party accused of infringement"). The Court will consider each patent in turn.

### 1.     '381 Patent

First, the Court finds that Samsung had an objectively reasonable defense to infringement of claim 19 of the '381 Patent. Specifically, Samsung had a reasonable defense that this claim was invalid for anticipation by Tablecloth. At summary judgment, Samsung presented evidence that Tablecloth was invented and may have been in public use more than one year prior to the filing of

---

[7] Of course, a jury's finding of no subjective willfulness must also be supported by substantial evidence in the record. This question was briefed in Apple's motion for judgment as a matter of law, and is addressed in this Court's separate Order on that motion.

[8] Apple argues that Samsung inappropriately argued non-willfulness in Samsung's motion on non-jury claims. Although the Court addresses willfulness in this Order, in light of *Bard*, it was appropriate for Samsung to raise the objective prong of willfulness in Samsung's motion on non-jury claims.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

**United States District Court**
For the Northern District of California

1     the '381 Patent's parent provisional application, thus qualifying as prior art under § 102(b).  *See*

2     Decl. of Adam Bogue in support of Samsung's motion for summary judgment, ECF No. 933, at ¶¶

3     8-12.  Samsung also presented a date stamp on the files for the Tablecloth software showing its

4     invention before the '381 Patent application was filed.  *See* Decl. of Bill Trac in support of

5     Samsung's summary judgment reply, ECF No. 1068, at ¶ 28 & Exh. 25; Order Denying

6     Samsung's Motion for Summary Judgment, ECF No. 1158, at 13-16 (citing Samsung's evidence).

7          Further, Samsung presented an expert's declaration opining that Tablecloth disclosed all of

8     the limitations of claim 19.  *See* Decl. of Andries Van Dam in support of Samsung's motion for

9     summary judgment, ECF No. 937, at §§51-82.  Similar evidence was presented at trial.  *See* Tr.

10    2276:17-2299:16  (Adam Bogue testifying about DiamondTouch and Tablecloth); *id.* at 2846:10-

11    2847:2; 2855:1-2858:22 (Dr. van Dam testifying about Tablecloth's disclosure of claim elements).

12    Though the evidence was not sufficient to establish anticipation as a matter of law, nor to persuade

13    the jury of anticipation by clear and convincing evidence, there was certainly an objectively

14    reasonable argument for anticipation.[9]  Accordingly, the Court finds that, objectively, Samsung's

15    infringement of the '381 Patent was not willful, due to its reasonable reliance on an invalidity

16    defense.  Because the objective willfulness prong is not satisfied, the Court need not examine the

17    jury's finding on subjective willfulness.  Samsung's motion for judgment as a matter of law that its

18    infringement of claim 19 of the '381 Patent was not willful is GRANTED.

19          2.      '163 Patent

20          Regarding the '163 Patent, Samsung again had an objectively reasonable defense.

21    Specifically, Samsung had a reasonable defense that claim 50 of the '163 Patent was invalid for

22    indefiniteness.  Indeed, although the Court has ultimately found the term "substantially centered"

---

[9] Samsung has also directed the Court to the PTO's recent non-final action rejecting claims 1-20 for anticipation in an ex parte reexamination.  *See* ECF No. 2079.  However, the Federal Circuit "has stressed that initial rejections by the PTO of original claims that were later confirmed on reexamination is so commonplace that they hardly justify a good faith belief in the invalidity of the claims."  *Hoescht Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996); *id.* at 1584 (stating that a grant of a request for reexamination does not establish a likelihood of patent invalidity); *see also Q.G. Prods. v. Shorty, Inc.*, 992 F.2d 1211, 1213 (Fed. Cir. 1993) (noting that initial patent "rejections often occur as a part of the normal application process").  Accordingly, the Court does not rely on the PTO's non-final action in ruling on Samsung's motion.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

1    definite, see Order re:Indefiniteness, ECF No. 2218, Samsung's position, as argued in Samsung's

2    motion on non-jury claims, was objectively reasonable, and raised close questions of law

3    concerning the definiteness requirement in the context of terms of degree.  Because the objective

4    willfulness prong is not satisfied, the Court need not examine the jury's finding on subjective

5    willfulness.  Samsung's motion for judgment as a matter of law that its infringement of claim 50 of

6    the '163 Patent was not willful is GRANTED.

7           3.     '915 Patent

8           As to the '915 Patent, Samsung had an objectively reasonable defense that claim 8 was

9    invalid for obviousness.  As explained above in resolving Samsung's motion for judgment as a

10   matter of law on obviousness, the '915 Patent distinguishes between one-finger scrolling and two-

11   finger gestures.  There is no dispute that DiamondTouch does both one-finger scrolling and two-

12   finger gestures.  The DiamondTouch, however, treats a two-finger touch as unique, and a single

13   finger or a three-or-four-finger touch as the same.  The '915 Patent, in contrast, treats one-finger

14   touches as unique, and two, three, or four-finger touches as the same.   Though this jury did not, a

15   jury could reasonably have found that the gap between DiamondTouch's function and the '915

16   Patent (i.e., whether the one-finger or the two-finger touch is unique) was not significant.  Thus, it

17   was objectively reasonable for Samsung to contend that treating all multiple-finger touches the

18   same, instead of treating a two-finger touch as unique, would have been obvious to a person having

19   ordinary skill in the art.

20          Samsung had an additional objectively reasonable (though ultimately unsuccessful)

21   obviousness defense to infringement of the '915 Patent.  Apple distinguished another prior art

22   reference, the Nomura patent application, on the grounds that the Nomura reference and the '915

23   Patent used different programming methods.  Apple explains that the Nomura reference did not

24   disclose the use of object-oriented programming, and that the '915 Patent added this feature.  Tr.

25   3625:10-3626:24 (Apple expert Dr. Singh testifying that the Nomura reference does not disclose

26   "events, objects, [or] views," and explaining "you can easily replace events with, with polling in a

27   device. . . procedural programming and languages can replace objects, . . . and you can have a

28   single block of display logic instead of views.")  Samsung argues that any such gap in

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

programming technique would have been obvious to a person of ordinary skill in the art.  Samsung

had an objectively reasonable argument that the unique aspect of the '915 patent was not the

programming techniques used to implement it, but rather the user interface aspect, and accordingly,

it would be obvious to implement the same user interface with different underlying programming.[10]

Because the objective willfulness prong is not satisfied, the Court need not examine the jury's

finding on subjective willfulness.  Samsung's motion for judgment as a matter of law that its

infringement of claim 8 of the '915 Patent was not willful is GRANTED.

          4.        D'677 and D'305 Patents

        Turning to the two design patents that the jury found that Samsung had willfully infringed,

the D'677 and D'305 Patents, the Court finds that Apple has not met its burden to show by clear

and convincing evidence that there was an objectively high likelihood that Samsung's actions

would infringe valid design patents.  Leaving aside the question of whether Samsung actually knew

about the patents (as this question was part of the jury's subjective analysis), the Court finds that

Samsung would have been reasonable to rely on its noninfringement defenses.

        Apple argues that Samsung had no reasonable noninfringement defense for either the D'677

or the D'305 Patent.  *See* Apple's Brief on Nonjury Claims, ECF No. 1981, at 13.  For the D'677

Patent, Apple relies on this Court's finding, at the preliminary injunction stage, that the Samsung

Galaxy S 4G and Samsung Infuse likely infringed the D'677 Patent.  However, for both products,

the Court noted that it was "a close question," ECF No. 452 at 26, 27.  The Court pointed out

differences such as the "four small functional buttons at the bottom, and a camera lens at the top of

the front face" of the Galaxy S 4G, which could "take on greater significance" in light of the prior

art.  *Id.* at 25.  And with regard to the Infuse, the Court noted "the addition of buttons and writing,"

and the fact that the "Infuse 4 appears broader and longer, with a larger screen face relative to the

rest of the front face, and sharper corners" than the D'677 Patent.  *Id. at 27.*  Thus, the Court's

ultimate conclusion, after careful consideration, that infringement was likely does not render

---

[10] Here, Samsung has directed the Court to another non-final PTO action rejecting claim 8 of the
'915 Patent.  *See* ECF No. 2202.  For the reasons explained above, the Court does not consider this
PTO non-final action in ruling on Samsung's present motion.

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

1    Samsung's reliance on an infringement defense unreasonable.  Indeed, the closeness of the

2    question suggests that noninfringement was indeed a reasonable defense.  Accordingly, the Court

3    finds that Apple has not met its burden to establish that there was an objectively high likelihood

4    that Samsung's actions would constitute infringement of the D'677 Patent, and Samsung's motion

5    for judgment as a matter of law that its infringement was not willful is GRANTED.

6            Regarding the D'305 Patent, Apple does not present any specific evidence as to the

7    unreasonableness of Samsung's infringement defense.  Instead, Apple relies on general evidence

8    that "some of the accused products" were very similar to the D'305 Patent.  Apple's Mot. for

9    Damages Enhancements at 13.  Apple points to one internal Samsung document (PX44.131) noting

10   a "[s]trong impression that iPhone's icon concept was copied."  The document includes a side-by-

11   side comparison of an iPhone and a phone labeled "GTi9000."  The document does not mention

12   the D'305 patent.  Further, the document actually points out some differences between the

13   Samsung phone and the iPhone in the form of suggestions for how the Samsung product could be

14   made to look more iPhone-like: "Insert effects of light for a softer, more luxurious icon

15   implementation.  Make the edge curve more smooth to erase the hard feel.  Remove a feeling that

16   iPhone's menu icons are copied by differentiating design."  PX44.131.  Thus, even where aware of

17   the similarities, Samsung had also identified several differences.  As noted above, individual

18   differences such as those Samsung has identified can take on a greater significance in the

19   infringement analysis when compared with the prior art, thus providing further reason to believe

20   that a design with such differences does not infringe.  *See Crocs, Inc. v. Int'l Trade Comm'n*, 598

21   F.3d 1294, 1303 (Fed. Cir. 2010).  PX44 therefore does not provide convincing evidence that

22   Samsung's infringement defense for the D'305 Patent was unreasonable.

23           Apple's other piece of evidence regarding Samsung's noninfringement defense is a single

24   quotation from *Wired* magazine noting that "[t]he Vibrant's industrial design is shockingly similar

25   to the iPhone 3G."  PX6.1.  The discussion in the passage cited by Apple is largely focused on the

26   exterior of the phone, not the user interface or icons covered by the D'305 Patent, though it does

27   mention that "the square icons are, again, very similar in their looks to the iPhone 3G's."  *Id.*  The

28   Vibrant is one of the phones accused of infringing the D'305 patent.  However, all Apple has

31

presented here is one industry reporter's assessment that the icons are "very similar" in their looks. This article provides some limited evidence that one phone, the Vibrant, had the potential to infringe the D'305 Patent. It does not, however, make clear whether the similarity is in individual icons themselves, the layout of the icons, or, as would be more relevant to the question of design patent infringement, the overall visual impression of the home screen. The fact that the Vibrant's square icons are similar to the iPhone's would not necessarily mean that the Vibrant would infringe the D'305 Patent.

As this is the sum total of Apple's arguments and evidence that Samsung's infringement was willful, the Court cannot conclude that Apple has met its burden to show willfulness by clear and convincing evidence. In light of Samsung's reasonable, if ultimately unsuccessful, noninfringement defense, Apple simply has not established that there was an objectively high likelihood that Samsung's actions would constitute infringement of the D'305 Patent. This finding makes it unnecessary for the Court to review Samsung's invalidity defenses, as Samsung needed only one reasonable defense on which to rely, in order to defeat the objective willfulness inquiry. Accordingly, Samsung's motion for judgment as matter of law that Samsung did not willfully infringe the D'305 Patent is GRANTED.

### E.       SEC's Liability

The Defendants in this case are three Samsung entities: the Samsung Korean parent company, Samsung Electronics Corporation ("SEC"); and two United States subsidiaries, Samsung Telecommunications America ("STA") and Samsung Electronics America ("SEA"). The jury found SEC liable for both direct infringement and inducing infringement by STA and SEA. Samsung moves for judgment as a matter of law that SEC did not directly infringe or induce infringement, and in the alternative for a new trial. Samsung also moves for a new trial on damages on the grounds that damages were improperly calculated as a global figure for SEC and its United States subsidiaries based upon the finding that SEC was liable for patent infringement.

As to direct infringement, Samsung argues that the Korean parent company, SEC, does not commit patent infringement in the United States because when SEC sells the accused devices to the subsidiaries, title to the accused devices is transferred to STA and SEA before the SEC ships the

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

devices. "Mere knowledge that a product will ultimately be imported into the United States is insufficient to establish liability [for direct patent infringement] under section 271(a)." *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377. However, Samsung's 30(b)(6) witness Justin Denison testified that STA and SEA collect orders in the United States, that SEC manufactures the accused devices, and that SEC then ships the accused devices to Chicago and Dallas. Tr. 793:25-795:12. Furthermore, Apple's financial expert Terry Musika testified that STA and SEA buy phones from SEC, which STA and SEA resell in the United States. Tr. 2068:14-2069:16. The jury could reasonably infer that this exchange involves more than "mere knowledge." Indeed, STA and SEA are based in the United States, and SEC ships the phones directly into the United States, albeit having first transferred title to STA and SEA. *See* Tr. 790:17-795:12 (Denison testimony). This is the same arrangement found sufficient to constitute direct infringement in *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* [*Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994)] and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States.")

Furthermore, substantial evidence suggests that SEC exerted a high degree of control over SEA and STA activities in the United States, including setting wholesale prices and analyzing product returns. *See, e.g.*, Tr. 796:14-18 (Denison testimony that "there's a lot of conversations back and forth [that] could be construed as directions [from SEC to STA]"); PX204 at 188:9-17 ("SEC [and not STA] sets the wholes price"); PX59.2 ("Headquarters" personnel lead STA employees investigating Tab returns at Best Buy); Tr. 793:17-24 (Denison testimony that SEC is referred to as "HQ or headquarters"). This control is further evidence that the sale of infringing phones in the United States by SEA or STA can be considered infringement in the United States by SEC. Accordingly, substantial evidence in the record supports the jury's finding that SEC directly infringed Apple's patents. Therefore, the Court DENIES Samsung's motion for judgment as a matter of law that SEC did not commit direct infringement, and DENIES Samsung's motion for a

1    new trial on damages on the grounds that the damages figure was based upon the incorrect finding

2    of SEC liability.

3        Having found that SEC is directly liable for infringement, the Court need not reach the

4    question of whether the jury's findings of inducement for these same products and patents was also

5    supported by substantial evidence.  Inducement can only occur where there is direct infringement

6    by another.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1274 (Fed. Cir.

7    2004).  Here, for every patent and product for which the jury found direct infringement by STA or

8    SEA (and thus for which inducement is possible), the jury also found, and the Court affirmed,

9    direct infringement by SEC.  Thus, SEC's liability has been conclusively established; an additional

10   finding on an alternative theory of liability will not change the outcome.  Accordingly, the Court

11   need not reach the question of whether substantial evidence supported the jury's finding that SEC

12   induced infringement by STA or SEA.

**F.    Samsung's Affirmative Case**
        **1.    Claims 10 and 15 of the '941 Patent**

14

15       Samsung moves for judgment as a matter of law that Apple's accused devices infringe

16   claims 10 and 15 of the U.S. Patent No. 7,675,941 ("the '941 Patent").  Samsung also moves for

17   judgment as a matter of law that the asserted claims are not exhausted as to Apple's accused

18   devices.  The Court has granted Apple's motion for judgment as a matter of law that claims 10 and

19   15 of the '941 Patent are invalid for anticipation.  *See* Order granting in part and denying in part

20   Apple's motion for judgment as a matter of law, ECF No. 2219.  Accordingly, the Court does not

21   reach Samsung's motions as to the '941 Patent.

                **2.    Claims 15 and 16 of the '516 Patent**

22

23       Samsung moves for judgment as a matter of law that Apple's accused devices infringe

24   claims 15 and 16 of the '516 Patent, and that these claims are not exhausted as to Apple's accused

25   devices.  Samsung alleges that claims 15 and 16 of the '516 Patent are embodied by Intel chipsets

26   which were sold to Apple, and used in Apple's accused devices.  The jury found that Samsung's

27   chip patents were exhausted, but not infringed.  Pursuant to the jury instructions, the jury, in

28   finding exhaustion, made implicit findings of fact: (1) that Intel's sales to Apple were authorized

**United States District Court**
For the Northern District of California

34

United States District Court

For the Northern District of California

1   by Samsung; (2) that those sales occurred in the United States; and (3) that if the accused products

2   infringe, it is because the baseband chips substantially embody the '516 and/or '941 Patents.  *See*

3   Final Jury Instruction No. 34.  The Court will consider exhaustion first, and will then turn to the

4   question of infringement.

5          Regarding the first requirement for exhaustion, authorization, there is substantial evidence

6   in the record to support the jury's conclusion that Intel was licensed to sell its chips directly or

7   indirectly to Apple (*see* PX81.11, PX81.23 (Samsung licenses to Intel allowing indirect sales by

8   Intel); Tr. 3543:12-24 (Apple expert Richard Donaldson testifying that license language allowing

9   Intel to sell "indirectly" allowed sales through Intel subsidiaries).  Apple's expert Tony Blevins

10  testified that Intel indeed sold the chips indirectly to Apple, through an Intel subsidiary based in the

11  United States, Intel Americas.  *See* PX78 (Intel Americas invoices); Tr. 3170:1-4 (Blevins

12  testimony on Intel Americas).  This is exactly the type of sale that Mr. Donaldson testified was

13  authorized by the Samsung/Intel license agreement.  Thus, Mr. Donaldson's testimony, combined

14  with Mr. Blevins's testimony, constitutes substantial evidence in the record that Intel's sales to

15  Apple were authorized.

16          Samsung argues that Apple failed to present evidence that Intel took any affirmative action

17  to sublicense Intel Americas, and thus that Samsung's authorizations to Intel did not extend to Intel

18  America.  Samsung cites *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 222 (D. Del., 2001),

19  in support of the argument that an affirmative act of sublicensing to Intel Americas would be

20  necessary.  However, the terms of the Samsung/Intel license agreement do not require any

21  particular action on the part of Intel in order to license a subsidiary.  In *Broadcom*, a sublicensed

22  subsidiary was required to undertake obligations to the licensor, including cross-licensing any

23  patents held by the subsidiary.  In contrast, here there is no term in the sublicensing provision of

24  the Samsung/Intel agreement that requires an Intel subsidiary to undertake any obligations to

25  Samsung.  *See* PX81.11-12, PX81.23.  Instead, extension of sublicenses to subsidiaries is a right

26  granted to Intel, with the only limitations being the duration of Intel's own license and the

27  requirement to inform Samsung of any licenses upon Samsung's request.  *See id.*  Indeed, Apple

28  argues that Intel was not required to take any affirmative action when sublicensing under the terms

35

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

of Intel's contract with Samsung, citing language allowing "indirect" sales by Intel, and testimony that Intel Americas "send[s] invoices and collect[s] payments for Intel products." *See* Opp'n at 27. Thus, the lack of affirmative sublicensing activity does not undermine the jury's finding that Intel's sales to Apple through Intel Americas were authorized by Samsung.

Regarding the second exhaustion requirement, there is substantial evidence in the record that the authorized sales to Apple occurred in the United States. Location of sale is determined based upon where the essential activities of the sale occurred. *MEMC*, 420 F.3d at 1375-77. Apple offered evidence that both parties to the sales were based in the United States, and that payment occurred in the United States. *See* PX78 (Intel Americas invoices). Furthermore, the jury could reasonably infer that the negotiations between the two United States corporations occurred in the United States. This is sufficient evidence to conclude that the sale occurred in the United States.

Regarding the third requirement, Samsung argues that Apple did not present sufficient evidence to satisfy the embodiment requirement for exhaustion, given that the jury found that Apple's products did not infringe Samsung's chip patents. Infringement is not necessarily required for patent exhaustion. However, for a patent to be exhausted by sale of a non-infringing product, the "only and intended use" of that non-infringing product must be infringing. *See Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 628 (2008). Here, the jury found that Apple's accused devices do not infringe claims 15 and 16 of the '516 Patent. Without infringement or evidence of infringing use, there can be no exhaustion. Accordingly, the Court GRANTS Samsung's motion for judgment as a matter of law that claims 15 and 16 of the '516 Patent are not exhausted. This ruling does not change the outcome in this case because of the jury's non-infringement finding.

The Court need not reach the question of whether Apple's accused devices infringe the '516 Patent as a matter of law, because a finding of infringement would satisfy the final requirement for exhaustion – embodiment -- and thus render the patent exhausted. Thus, there would be no liability. Because a ruling on Samsung's motion as to infringement of the '516 Patent cannot change the outcome of this case, the Court does not reach the issues raised in that motion.

   3.   **Samsung's User Interface Patents: Claim 1 of the '460 Patent; Claim 10**

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

**of the '893 Patent; and Claim 9 the '711 Patent**

Samsung moves for judgment as a matter of law that Apple's accused devices infringe claim 1 of U.S. Patent No. 7,577,460 ("the '460 Patent"); claim 10 of U.S. Patent No. 7,456,893 ("the '893 Patent"); and claim 9 of U.S. Patent No. 7,698,711 ("the '711 Patent").  All three of these asserted claims include a limitation involving the use of "modes."  *See* '460 Patent, claim 1 ("E-mail transmission sub-mode"); '893 Patent claim 10 ("photographing mode;" "stored-image display mode"); '711 Patent claim 9 ("MP3 mode").  Apple witnesses testified that Apple's products generally use "apps" rather than "modes."  *See* Tr. 3196:15-3197:5 (Dr. Dourish); Tr. 3181:2-8 (Dr. Kim); Tr. 3297:4-7; 3304:12-3306:4 (Dr. Srivastava); Tr. 3232:9-3233:8 (Dr. Givargis).  *Cf.* Tr. 2482:15-2483:2 (Samsung expert Dr. Yang testifying that "application programs and modes are different").  Samsung argues that, in spite of this testimony, the record lacked substantial evidence to support the jury's findings that the accused Apple devices use "apps" instead of "modes."  Samsung cites contrary testimony, including a statement by an Apple expert that could be interpreted as using "app" and "mode" interchangeably.  *See* Mot. at 29 (citing Tr. 3244:8-15).  The existence of competing testimony on the distinction between "apps" and "modes" does not entitle Samsung to judgment as a matter of law; it is for the jury to weigh this competing testimony and decide whether the evidence showed that the two were different.

Moreover, there is substantial expert testimony in the record to support the jury's conclusion that even if Apple's products do use modes for some purposes, Apple's products do not include any of the *claimed* modes.  *See* Tr. 3305:5-9 (Dr. Srivastava explaining that "Apple products do not have the portable phone mode; they do not have a camera mode; they do not have the first E-mail transmission sub-mode; they do not have the second E-mail transmission sub-mode; they do not have the display sub-mode."); Tr. 3180:19-3181:8 (Dr. Kim explaining that the iPhone's "modes," such as airplane mode, are different from the iPhone's "apps"); Tr. 3232:25-3233:1 (Dr. Givargis explaining the difference between "MP3 mode" on a Samsung device and a music-playing app on an Apple device).  Thus, the record contains substantial evidence to support the jury's finding that Apple's devices do not use the "modes" defined in Samsung's patents.  As infringement requires the accused device to satisfy every limitation of the asserted claim, this

37

substantial evidence that the "mode" limitation was not satisfied for any of the patents is sufficient to sustain the jury's finding of non-infringement.  Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that the asserted claims of the '460, '893, and '711 Patents are infringed because there is sufficient evidence in the record that Apple's accused devices do not implement their relevant user interfaces using the claimed "modes."

### G.    The Trial was not manifestly unfair.

Samsung argues that: (1) the trial time limitation prejudiced Samsung; (2) allowing Apple to point out to the jury which Samsung witness were not called prejudiced Samsung; (3) Samsung's witnesses were barred from making some arguments, where Apple's witnesses were allowed to make other arguments; (4) Samsung was required to lay foundation for documents while Apple was not; (5) Samsung was forbidden to play advertisements while Apple was not; and (6) Samsung could not use depositions to cross-examine Apple's witnesses while Apple was allowed to used deposition testimony during cross examination.  *See* Mot. at 30.

None of these arguments merits a new trial.  First, Samsung was offered the option of bifurcating its affirmative case, but chose not to do so.  *See* ECF No. 1329 at 2 (minute order and case management order following July 24, 2012 hearing).  Furthermore, Samsung and Apple had equal trial time and chose how to best allocate their allotted time.  *Id.*  Samsung cannot now argue that its own litigation strategy created a manifest injustice that requires a new trial.  As the Court observed, "Samsung made a strategic decision to spend more time to cross-examine Apple witnesses during Apple's affirmative case than Apple used to present its affirmative case." 3250:22-3251:1.

Second, Ninth Circuit and other precedent allows parties to point out each other's absent witnesses, as discussed in this Court's Order denying Samsung's Motion to Exclude Examination and Comment on Absent Witnesses , ECF No. 1721.  The Court did not simply grant the parties carte blanche to discuss absent witnesses, but warned the parties that it would not tolerate "abuse" of missing witness arguments and continued to rule on missing witness argument objections on a case-by-case basis.  *See id.*  Moreover, Samsung pointed out in cross-examining one of Apple's experts that the expert could have, but did not, consult with Apple's inventors.  Tr. 1878:9-15 ("By

38

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   the way, are you aware that many of the inventors are working for Apple and they're readily

2   accessible to you if you wanted to speak to them and ask them about their invention and what led

3   to it and their insights and that sort of thing?  Were you aware of that that, that's available to you as

4   an expert for Apple?").  Accordingly, Samsung has not established that it was unfairly prejudiced

5   by Apple's absent witness arguments.

6          Regarding Samsung's third argument, that Samsung witnesses were unfairly prevented

7   from making their arguments where Apple witnesses were not, the Court excluded untimely

8   disclosed arguments regardless of which side had failed in its duty to disclose.  The Court applied

9   uniform standards in excluding testimony.  *See, e.g*, exclusion of the entire testimony of Apple's

10   proposed witness Edward Sittler for untimely disclosure by Apple, ECF No. 1662 at 1; exclusion

11   of testimony about the '915 Patent, the '381 Patent, and the D'308 Patent by Apple's witness Scott

12   Forstall because of Apple's untimely disclosure, ECF No 1563 at 6.

13          Similarly, regarding Samsung's fourth argument, both parties were required to lay

14   foundation for admitted documents.  *See, e.g.*, Tr. 2484:21-2485:3 (sustaining Samsung's objection

15   for lack of foundation); Tr. 1958:2-5 (requiring Apple to lay foundation before proceeding).

16          Regarding Samsung's fifth argument, that Samsung's advertisements were unfairly

17   excluded where Apple's were admitted, Apple's advertisements were relevant evidence for

18   secondary meaning and fame, elements of Apple's trade dress claims.  *See* Final Jury Instructions

19   Nos. 63 (Secondary Meaning); 66 (Fame).  Samsung has not established that its advertisements

20   were similarly relevant.

21          Finally, both parties were allowed to use deposition testimony, and the exclusions and

22   admissions cited by Samsung were admitted or excluded based upon whether the theories being

23   introduced by the parties had been disclosed timely or untimely during discovery.  Samsung was

24   allowed to play deposition testimony on cross-examination of witnesses where appropriate.  *See,*

25   *e.g.*, Tr 1103:2-6 (deposition testimony played in open court during Samsung's cross-examination

26   of Apple witness Peter Bressler).

27          Accordingly, the trial was fairly conducted, with uniform time limits and rules of evidence

28   applied to both sides.  A new trial would be contrary to the interests of justice.

1

## IV.    CONCLUSION

2       For aforementioned reasons, the Court GRANTS Samsung's motion for judgment as a

3   matter of law that claims 15 and 16 of the '516 Patent are not exhausted.  The Court also grants

4   judgment as a matter of law that Samsung's acts of patent infringement were not willful.  However,

5   for the reasons discussed below, the Court DENIES Samsung's motion for judgment as a matter of

6   law in all other respects, and DENIES Samsung's motion for a new trial.

7   **IT IS SO ORDERED.**

8   Dated: January 29, 2013                  

9                                            LUCY H. KOH
                                             United States District Judge
10

11

United States District Court
For the Northern District of California