1  HAROLD J. MCELHINNY (CA SBN 66781)       WILLIAM F. LEE
   hmcelhinny@mofo.com                       william.lee@wilmerhale.com
2  MICHAEL A. JACOBS (CA SBN 111664)         WILMER CUTLER PICKERING
   mjacobs@mofo.com                          HALE AND DORR LLP
3  RACHEL KREVANS (CA SBN 116421)            60 State Street
   rkrevans@mofo.com                         Boston, MA 02109
4  JENNIFER LEE TAYLOR (CA SBN 161368)       Telephone: (617) 526-6000
   jtaylor@mofo.com                          Facsimile: (617) 526-5000
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482     MARK D. SELWYN (SBN 244180)
   Telephone:  (415) 268-7000                mark.selwyn@wilmerhale.com
7  Facsimile:  (415) 268-7522                WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
8                                            950 Page Mill Road
                                             Palo Alto, California 94304
9  Attorneys for Plaintiff and              Telephone: (650) 858-6000
   Counterclaim-Defendant APPLE INC.         Facsimile: (650) 858-6100

10

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15  APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK (PSG)

16                     Plaintiff,                **APPLE'S RENEWED MOTION TO
                                                 SEAL**
17         v.

18  SAMSUNG ELECTRONICS CO., LTD., a
    Korean corporation; SAMSUNG
19  ELECTRONICS AMERICA, INC., a New
    York corporation; and SAMSUNG
20  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company,
21
                       Defendants.
22

23

24

25

26

27

28

1    In accordance with Civil Local Rules 7-11 and 79-5, and General Order No. 62, Apple

2    submits this renewed motion to seal relating to certain documents ordered filed publicly in the

3    Court's February 1 Order (Dkt. No. 2222).  Apple requests that the Court permit the following

4    documents or portions thereof to be filed under seal:

5        1.  Exhibits 1, 7, and 10 to the Price Declaration in Support of Samsung's Opposition

6            to Apple's 37(b)(2) Motion (Dkt. No. 801).

7        2.  Exhibit C to the Price Declaration in Support of Samsung's Supplemental

8            Response to Apple's 37(b)(2) Motion (Dkt. No. 857).

9        3.  Samsung's Motion to Strike (Dkt. No. 934).

10       4.  Exhibits P, Q, R, S, T, U, V, W, Y, Z, AA, BB, CC, DD, FF and GG to the Price

11           Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934).

12       5.  Exhibits U and X to the Ward Declaration in Support of Samsung's Motion to

13           Strike (Dkt. No. 934).

14       6.  Exhibit 34 to the Pernick Declaration in Support of Apple's Motion to Strike (Dkt.

15           No. 939).

16       7.  Exhibits 1-5 to the Supplemental Price Declaration (Dkt. 984).

17       8.  Exhibits 1-5 to the Corrected Supplemental Price Declaration (Dkt. 990).

18       9.  Second Supplemental Price Declaration (Dkt. 994).

19       10. Exhibits B-E to the Second Supplemental Price Declaration (Dkt. 994).

20       11. Exhibits A, B and C to the Musika Declaration in Support of Apple's Opposition

21           to Samsung's Motion to Strike (Dkt. No. 996).

22       12. Exhibits 9, 24, 25, 26, 28 and 32 to the Pernick Declaration in Support of Apple's

23           Opposition to Samsung's Motion to Strike (Dkt. No. 996).

24    As discussed further below, some of the Apple confidential financial information included

25    in the request stated above is identical to information that is presently the subject of Apple's

26    appeal to the Federal Circuit.  For the reasons stated below, Apple requests that the Court order

27    the information filed under seal or, if the Court denies Apple's renewed motion to seal, stay the

28

1   disclosure of any information until a ruling by the Federal Circuit on the related appeal.  Oral

2   argument in that appeal has been scheduled for March 26, 2013.

3   　　　　Also discussed further below, many of these exhibits are license agreements between

4   Apple and third parties, which Apple seeks to seal in full for the reasons set forth below.  Apple

5   has sent notice to each of the license counterparties affected by the February 1, 2013 Order that

6   the Court denied, without prejudice, Apple's initial motion to seal these agreements.  Apple

7   requests the Court defer ruling on this renewed motion to seal, at least as it relates to any third

8   party information, for an additional two weeks to allow any third parties that wish to be heard an

9   opportunity to make a submission to the Court.

10  **I.**　　**THE COURT SHOULD SEAL FINANCIAL AND CAPACITY INFORMATION,**
11  **　　　THIRD PARTY RESEARCH DATA, AND ROYALTY AND PAYMENT**
    **　　　INFORMATION IN LICENSES**

12  　　　　The Court should grant Apple's renewed motion to seal the material listed above,

13  narrowly chosen from over 300 documents at issue in the February 1 Order.  The "good cause"

14  standard applies with respect to the non-dispositive motions underlying the motions to seal

15  addressed in the February 1 Order.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135

16  (9th Cir. 2003); *Philips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th

17  Cir. 2002).

18  　　　　**A.**　　　**The Court should seal detailed capacity and financial information**

19  　　　　Apple's confidential financial information and capacity details qualify as trade secret,

20  and certainly meet the "good cause" standard.  Apple seeks to seal the following documents

21  because they contain sensitive financial and/or capacity information:

22  　　　　　　•　Exhibit 1 to the Price Declaration in Support of Samsung's Opposition to Apple's

23  　　　　　　　37(b)(2) Motion (Dkt. No. 801), consisting of 171 pages of gross margin reports,

24  　　　　　　　should be sealed in its entirety.

25  　　　　　　•　Exhibit 7 to the Price Declaration in Support of Samsung's Opposition to Apple's

26  　　　　　　　37(b)(2) Motion (Dkt. No. 801), consisting of a report with product-line specific

27  　　　　　　　and reseller-specific sales information should be sealed in its entirety.

28

- Exhibit 10 to the Price Declaration in Support of Samsung's Opposition to Apple's 37(b)(2) Motion (Dkt. No. 801), consisting of a detailed search engine revenue report setting out specific search engine revenue for each individual search engine provider, divided into individual months, should be sealed in its entirety.

- Exhibit C to the Price Declaration in Support of Samsung's Supplemental Response to Apple's 37(b)(2) Motion (Dkt. No. 857), consisting of the Expert Report of Terry L. Musika, should be sealed in part as identified in the Declaration of Erica Tierney in Support of Apple's Renewed Motion to Seal ("Tierney Declaration"). It contains financial and capacity information, as well as third-party information as discussed below.

- Exhibit A to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of the Rebuttal Expert Report of Terry L. Musika, should be sealed in part as identified in the Tierney Declaration.  It contains financial information, as well as third-party and licensing information as discussed below.

- Exhibit B to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of excerpts from the Expert Report of Terry L. Musika discussed above as Exhibit C to the Price Declaration, should be sealed in part as identified in the Tierney Declaration.  It contains both financial and capacity information.

- Exhibit C to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of excerpts from the deposition transcript of Mark Buckley, should be sealed in part as identified in the Tierney Declaration.

- Exhibit 34 to the Pernick Declaration in Support of Apple's Motion to Strike (Dkt. No. 939), consisting of the May 11 Supplemental Expert Report of Michael J. Wagner, should be sealed in part as identified in the Tierney Declaration.

1      • Exhibit 32 to the Pernick Declaration in Support of Apple's Opposition to

2          Samsung's Motion to Strike (Dkt. No. 996), consisting of excerpts from the

3          April 20, 2012 Corrected Expert Report of Michael J. Wagner, should be sealed in

4          part as identified in the Tierney Declaration.

5      The Court has previously approved sealing of capacity information, including the exact

6  information at issue in Price Ex. C, which consists of the Musika expert report.  (Dkt. No. 1649

7  at 12-13.)  As the Court held at that time:

8              [D]isclosure of this information would cause substantial
             competitive harm to Apple.  Competitors and suppliers armed with
9             knowledge of Apple's capacity would be able to alter their business
             and pricing models to gain an unfair advantage over Apple in such
10            a way that would harm its competitive standing.  Suppliers, for
             instance, could predict when Apple would most need to increase
11            supply and leverage this knowledge to exact substantial price
             increases.  Similarly, competitors could lower their prices during
12            periods when Apple has excess capacity and is therefore most
             vulnerable to a price cut.  Although Apple seeks to seal *past*
13            capacity data, such data is cyclical and would allow competitors
             and suppliers to discover the patterns in Apple's capacity that
14            would make it easy to predict Apple's current and future capacity
             constraints.
15

16  (*Id.* at 4 (internal quotations and citations omitted).)

17      Apple's sensitive financial information also warrants sealing.  Trade secrets, as defined in

18  the Restatement of Torts, include information used in a business that gives an advantage over

19  competitors who do not know or use it.  *Restatement (First) of Torts* § 757, cmt. B.  Detailed

20  profits and costs are precisely this type of information.  *See, e.g.*, *SI Handling Sys., Inc. v.*

21  *Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (concluding that data relating to profit margin

22  constituted trade secrets); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1230 (Pa.

23  Super. Ct. 1989) (finding profit margin data protectable as trade secret).  For this reason, courts

24  consistently recognize that detailed financial information constitutes a trade secret and a

25  compelling need exists for maintaining its confidentiality.  *See AMC Tech., LLC v. Cisco Sys.*,

26  2012 U.S. Dist. LEXIS 9934 (N.D. Cal. Jan. 27, 2012) (finding compelling reasons to seal

27  information that would have allowed public to determine profit margins); *TriQuint*

28  *Semiconductor v. Avago Techs. Ltd.*, 2011 U.S. Dist. LEXIS 143942, at *10, 11, 21 (D. Ariz.

1  Dec. 12, 2011) (sealing confidential financial information including market analysis information,

2  cost information, capacity information and profit margins for specific products).  The irreparable

3  harm that would result from disclosure of trade secrets is undeniable. *See Am. Standard Inc. v.*

4  *Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (recognizing harms of disclosure of confidential

5  business information to competitors and collecting cases). Indeed, "[a] trade secret once lost is, of

6  course, lost forever." *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999)

7  (quotation omitted).  And vigorous protection of such information is essential to maintaining a

8  competitive business environment.   *See Rockwell Graphic Sys., Inc. v. DEV Indus. Inc.*, 925 F.2d

9  174, 180 (7th Cir. 1991).

10       Apple takes extensive steps to protect the secrecy of its critical financial and capacity

11  information.  (Tierney Decl. ¶ 11.)   Even within Apple, very few people have access to this

12  information.  Access is on a "need to know" basis and must be approved in advance by one of

13  Apple's Vice Presidents of Finance.  (Dkt. No. 1502 ¶ 3.)  The list of approved individuals is

14  reviewed quarterly to remove employees who no longer require access do not receive that

15  information.  (*Id.*)  On the rare occasions that Apple must disclose its non-public financial and

16  capacity information to those outside Apple, it marks the information "confidential" and

17  distributes it subject to highly restrictive nondisclosure agreements or protective orders.  (*Id.*)

18       Apple goes to such lengths because, like its capacity information, the financial

19  information that Apple seeks to keep confidential is competitively sensitive and derives enormous

20  value from the fact that it is not shared with the general public or others who could derive

21  economic benefit from this data – Apple's competitors and suppliers.  (Dkt. No. 1502 at ¶¶ 4-8;

22  Tierney Decl. ¶ 11.)  Apple's competitors could use profits and margins data to undercut Apple's

23  prices by determining the products for which Apple has substantial profits, low costs, and wide

24  margins and thus would be most susceptible to a price cut.  (Dkt. No. 1502 at ¶ 7; Tierney Decl.

25  ¶ 11.)  Competitors' products—particularly if released with pricing designed to take advantage of

26  unfair knowledge of Apple's bottom line—will substantially affect demand for Apple's products.

27  Competitors could use the information to develop a slightly less advanced smartphone or tablet

28  and sell that product successfully at a price strategically below Apple's margins.  The facts of this

1   case substantiate this risk, as Samsung may be in a position to undercut Apple's prices for

2   smartphones and tablets, having already economized on design costs by free-riding off Apple's

3   innovation.  Moreover, Apple's suppliers could use quarterly profits, costs, and margins data to

4   determine when Apple has the lowest margins and is thus more vulnerable to a cost increase.

5   (Dkt. No. 1502 at ¶ 8; Tierney Decl. ¶ 11.)

6          Because Apple's confidential financial data constitute invaluable trade secrets, and a

7   compelling need exists for maintaining their confidentiality, Apple meets the "good cause"

8   standard for sealing.  *See, e.g., Jazz Photo*, 439 F.3d at 1357-1358 (affirming order denying

9   competitor access to a trial to avoid disclosure of confidential "documents and information

10  relating to [litigant's] customers, suppliers, manufacturing  processes, financial condition, and the

11  quantity and value of its imports"); *TriQuint Semiconductor*, 2011 WL 6182346, at *2-4, 6-7

12  (sealing confidential financial information including market analysis information, cost

13  information, capacity information, and profit margins for specific products).  In light of the great

14  volume of information already disclosed, there is no public need for disclosure of Apple's

15  narrowly identified trade secret information.  Any further disclosure would provide

16  "comparatively little value to the public in terms of enhancing its 'understanding [of] the judicial

17  process.'"  *Richardson v. Mylan Inc.*, 2011 WL 837148, at *2 (S.D. Cal. Mar. 9, 2011) (noting

18  that sealed portions of record "do not include any information vital to understanding the nature of

19  the underlying proceedings"); *see also MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1106

20  (D. Ariz. 2010) (moving party demonstrated good cause to seal licensing agreement in patent

21  infringement case in part since "public has a diminished need for th[e] document because it is

22  'only tangentially related to the underlying cause of action'" (*quoting Kamakana*, 447 F.3d

23  at 1179)).

24         Product-line specific information, i.e., financial details with information as to specific

25  versions of a given product, is also critically sensitive and valuable.  (Dkt. No. 1502 ¶ 7; Tierney

26  Decl. ¶ 12.)  Product line sales and revenue information reveal to competitors what Apple's most

27  and least successful products are, and therefore provide unfair intelligence into which markets are

28  ripe for competition and which markets may be more difficult to approach.  (Dkt. No. 1502 ¶ 7;

1   Tierney Decl. ¶ 12.)  Highly specific search engine revenue is analogous and confidential for the

2   same reason; revealing precisely how much Apple receives in individual quarters from individual

3   search engines would competitively damage Apple by revealing to its competitors what its most

4   and least successful search engine relationships are, and provide intelligence into which markets

5   they should focus their competitive efforts.  (Tierney Decl. ¶ 12.)

6          **B.     The Court should seal third party confidential research data**

7          Portions of the Musika expert report, filed as Exhibit C to the Price Declaration in Support

8   of Samsung's Supplemental Response to Apple's 37(b)(2) Motion (Dkt. No. 857) and discussed

9   above with respect to the financial and capacity information in the same document, contain

10  market share data from third-party IDC.  The Court has previously agreed that publication of

11  extensive IDC data would significantly harm IDC's competitive standing, as IDC sells this data.

12  (Dkt. No. 1649 at 10.)  Specifically, Exhibits 11.1, 12, 12.1, and 13.1 of the Musika Expert

13  Report contain full datasheets from market analysis reports prepared by IDC.  The public interest

14  in access to these charts is low, as they extend to market shares held by nonparties to their

15  litigation.  The risk of commercial harm to IDC from their publication is severe, as each report

16  sold by a company such as IDC typically costs thousands of dollars and public disclosure

17  completely supplants the market for that report.  (Tierney Decl. ¶ 15.)

18         **C.     The Court should seal license agreements and information in other**
           **documents that reflect license royalty and payment terms**
19
           Apple seeks to seal the following portions of documents because they contain royalty and
20
    payment terms from third party licenses:
21
              •   Exhibit T to the Price Declaration in Support of Samsung's Motion to Strike (Dkt.
22
                  No. 934), consisting of a discovery letter, should be sealed as to the discussion of
23
                  Apple's license agreement negotiations and draft license agreement with a third
24
                  party on page 3 and the dollar amount listed on page 4.
25
              •   Samsung's Motion to Strike (Dkt. No. 934) should be sealed as to the discussion
26
                  of Apple's license agreement negotiations and draft license agreement with a third
27
                  party on pages 13-14 and the dollar amount listed on page 14.
28

- Exhibit U to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934), consisting of an excerpt from the Rebuttal Expert Report of Terry L. Musika, should be sealed as to the dollar amount listed on page 13.

- Second Supplemental Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 994) should be sealed as to the discussion of the contents of Apple's draft license agreement with a third party in paragraph 2(a).

- Exhibit A to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of the Rebuttal Expert Report of Terry L. Musika, should be sealed as to the dollar amount and discussion of Apple's license agreement with a third party in paragraphs 46, 48 and 49. It also contains financial information and should be sealed in part as identified in the Tierney Declaration.

- Exhibits P, Q, R, S, Y, Z, AA, BB, CC and DD to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) are all license agreements between Apple and third parties and should be sealed in full.

- Exhibit U to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) contains emails between Apple and a third party negotiating a license agreement and should be sealed in full.

- Exhibit V to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) is a draft license agreement between Apple and a third party and should be sealed in full.

- Exhibit W to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) is a draft license agreement between Apple and a third party and should be sealed in full.

- Exhibits FF and GG to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) are both Made for iPod Licenses and should be sealed in full.

- Exhibits 1-5 to the Supplemental Price Declaration (Dkt. 984) are all license agreements between Apple and third parties and should be sealed in full.

- Exhibits 1-5 to the Corrected Supplemental Price Declaration (Dkt. 990) are all license agreements between Apple and third parties and should be sealed in full.

- Exhibits B-E to the Second Supplemental Price Declaration (Dkt. 994) are all license agreements between Apple and third parties and should be sealed in full.

- Exhibits 24, 25, and 26 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996) are all license agreements between Apple and IBM.  All three should be sealed in part as identified in the Tierney Declaration.  Redacted versions of Exhibits 25 and 26 were approved under the "compelling reasons" standard during trial (Dkt. 1660). Exhibit 24 has been redacted in a manner consistent with the redactions in Exhibits 25 and 26.

- Exhibit 28 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996) is a license agreement between Apple and Nokia.  It should be sealed in part as identified in the Tierney Declaration. This agreement was also submitted under seal in connection with the parties' post-trial briefing, and the Court, applying the "compelling reasons" standard applicable at that stage of the case, ordered that only "pricing, royalty, and payment terms" could be redacted (Dkt. 2168.)  Accordingly, Apple is submitting a proposed redacted version of the Nokia license pursuant to discussions with Nokia seeking to seal royalty terms, payment terms, and terms related to the calculation of royalties and payments.

The license agreements at issue in this motion to seal were all attached to non-dispositive motions and therefore only a showing of "good cause" is required.  Under the "good cause" standard, Apple's license agreements with third parties should be sealed in full.  (Dkt. 1649 at 16.) This Court sealed in full the license agreements attached as Exhibits 2-6 and 13 to the Price Declaration in Support of Samsung's Reply in Support of its Motion to Strike because these "agreements contain a whole host of terms (e.g. termination conditions, side- agreements, waivers) that are irrelevant to matters in this litigation" and "disclosure of these full documents

1    could result in significant competitive harm to the licensing parties as it would provide insight

2    into the structure of their licensing deals, forcing them into an uneven bargaining position in

3    future negotiations." (Dkt. 1649 at 16; *see also* Dkt. 2168 at 6 (explaining why license

4    agreements attached to permanent injunction motion could not be sealed in full, unlike those

5    attached to motion to strike).)  For the same reasons the license agreements attached to

6    Samsung's Reply in Support of its Motion to Strike were sealed in full, the license agreements,

7    draft license agreements and negotiation related emails attached to Samsung's Motion to Strike,

8    Supplemental Declarations in Support of Samsung's Motion to Strike and Apple's Opposition to

9    Samsung's Motion to Strike should all be sealed. (Tierney Decl. ¶¶ 30-32.)

10       For the same reasons, the discussions of "pricing terms, royalty rates, and minimum

11   payment terms" in a discovery letter, Samsung's Motion to Strike, and the Rebuttal Expert Report

12   of Terry L. Musika should be sealed.   (Tierney Decl. ¶ 33.) (*See also* Dkt. 1649 at 10 (sealing

13   "pricing terms, royalty rates, and minimum payment terms of the licensing agreements" in trial

14   exhibits).)  The discussion of Apple's license agreement negotiations and draft license agreement

15   with a third party in a discovery letter, Samsung's Motion to Strike and the Second Supplemental

16   Price Declaration in Support of Samsung's Motion to Strike should also be sealed for the same

17   reasons as the underlying draft license agreements and negotiation emails.  (Tierney Decl. ¶ 31.)

18       Apple has notified each of the third parties affected by the February 1, 2013 Order that the

19   Court denied, without prejudice, Apple's initial motion to seal these agreements in full.  Apple

20   requests that the Court defer ruling on this motion, at least with respect to third party information,

21   for an additional two weeks in order to afford any third parties that wish to be heard an

22   opportunity to make a submission to the Court.

23       **D.     Source Code**

24       Apple seeks to seal the following portions of a document that contains information about

25   Apple's source code:

26       • Exhibit X to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt.

27         No. 934), consisting of an excerpt from the Rebuttal Expert Report of Tony

28         Givargis, should be sealed in part as identified in the Tierney Declaration.

1      &bull; Exhibit 9 to the Pernick Declaration in Support of Apple's Opposition to

2         Samsung's Motion to Strike (Dkt. No. 996), consistent of an excerpt from the

3         Expert Report of Woodward Yang, should be sealed in part as identified in the

4         Tierney Declaration.

5       This Court has previously allowed Apple to seal trial exhibits containing source code.

6 (Dkt. No. 1649 at 8; Dkt. 2046 at 3.)  In compliance with this Court's February 1 Order, Apple's

7 renewed motion to seal portions of Exhibit X to the Ward Declaration in Support of Samsung's

8 Motion to Strike (Dkt. No. 934) and Exhibit 9 to the Pernick Declaration in Support of Apple's

9 Opposition to Samsung's Motion to Strike (Dkt. No. 996) is narrowly tailored to the discussions

10 of Apple's propriety source code and highly confidential technical information that is closely

11 related to Apple's source code.  Apple is not moving to seal the information in these two

12 documents that was discussed in open court during the trial.

13       As detailed in the declarations from Henri Lamiraux, Apple's Vice President of iOS Apps

14 & Frameworks and Beth Kellerman, a Litigation eDiscovery Manager, which Apple submitted in

15 support of sealing trial exhibits (Dkt. Nos. 1504, 1505), Apple's source code is highly

16 confidential. Apple's source code is clearly the type of information that qualifies as a trade secret.

17 *See Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal.

18 2011). Apple's declarants confirmed that Apple derives independent economic value from its

19 source code, and that Apple goes to extraordinary lengths to maintain the secrecy and security of

20 its source code. (Dkt. Nos. 1504 ¶¶ 5-8, 1505 ¶¶ 4-9.) If Apple's source code were subject to

21 disclosure and copying, it would amount to a transfer of Apple's investment in developing the

22 iOS source code from it to a competitor, providing an unfair competitive advantage. (Dkt.

23 No. 1505 ¶¶ 6-9.)  Apple respectfully requests that the Court confirm that, consistent with the

24 prior Court Orders, Apple be permitted to file a redacted version of Exhibit X to the Ward

25 Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) and Exhibit 9 to the Pernick

26 Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996).

27 (Tierney Decl. ¶¶ 36-38.)

28

1    **II.    IF SEALING IS DENIED, THE COURT SHOULD STAY THE EFFECT OF ITS ORDER PENDING APPEAL**

2          Apple respectfully requests that if the Court denies sealing of any of the materials that are

3    the subject of this motion, the Court continue its practice of staying effect of its order pending

4    appeal.  (Dkt. No. 2047 at 7.)  As the Court has previously held, once information is publicly filed,

5    "what once may have been trade secret no longer will be.  Thus, the parties may be irreparably

6    injured absent a stay.  In contrast, the public interest, which favors disclosure of relevant

7    information in order to understand the proceedings, is not unduly harmed by a short stay."  (*Id.*)

8

9    Dated: February 15, 2013                    MORRISON & FOERSTER LLP

10

11                                        By:    */s/ Richard S.J. Hung*
                                                  RICHARD S.J. HUNG
12
                                               Attorneys for Plaintiff
13                                             APPLE INC.