# EXHIBIT K
# FILED UNDER SEAL

CONFIDENTIAL OUTSIDE COUNSEL ONLY PURSUANT TO PROTECTIVE ORDER

Page 260

```
1            UNITED STATES DISTRICT COURT
2           NORTHERN DISTRICT OF CALIFORNIA
3                 SAN JOSE DIVISION
4   APPLE INC., a California
    Corporation,
5
             Plaintiff,              Case No.
6
      vs.                            11-CV-01846-LHK
7
    SAMSUNG ELECTRONICS CO., LTD.,
8   a Korean business entity;
    SAMSUNG ELECTRONICS AMERICA,
9   INC., a New York corporation;
    SAMSUNG TELECOMMUNICATIONS
10  AMERICA, LLC, a Delaware
    Limited liability company,
11
              Defendants.
12
13
14
15       CONFIDENTIAL OUTSIDE COUNSEL ONLY
16          PURSUANT TO PROTECTIVE ORDER
17
18     VIDEOTAPED DEPOSITION OF JONATHAN IVE
19           San Francisco, California
20          Tuesday, February 7, 2012
21        (Volume II - Pages 260 - 335)
22
23  REPORTED BY:
24  CYNTHIA MANNING, CSR No. 7645, CLR, CCRR
25  JOB NO. 46227
```

TSG Reporting - Worldwide    877-702-9580

CONFIDENTIAL OUTSIDE COUNSEL ONLY PURSUANT TO PROTECTIVE ORDER

Page 261

```
 1          Tuesday, February 7, 2012
 2                 3:52 p.m.
 3
 4
 5      Deposition of JONATHAN IVE, taken on
 6  behalf of Defendants, at 50 California Street,
 7  San Francisco, California, before Cynthia
 8  Manning, Certified Shorthand Reporter No. 7645,
 9  Certified LiveNote Reporter, California Certified
10  Realtime Reporter.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 262

```
 1  APPEARANCES:
 2
 3  FOR PLAINTIFF:
 4
        MORRISON & FOERSTER, LLP
 5      BY:  MICHAEL A. JACOBS, ESQ.
             FRANCIS C. HO, ESQ.
 6      425 Market Street
        San Francisco, California 94105
 7      415.268.7455
        mjacobs@mofo.com
 8      fho@mofo.com
 9
10
11  FOR DEFENDANTS:
12      QUINN EMANUEL URQUHART & SULLIVAN, LLP
        BY:  MICHAEL T. ZELLER, ESQ.
13           SCOTT B. KIDMAN, ESQ.
             SCOTT C. HALL, ESQ.
14      865 S. Figueroa Street
        10th Floor
15      Los Angeles, California 90017
        213.443.3000
16      michaelzeller@quinnemanuel.com
        scottkidman@quinnemanuel.com
17      scotthall@quinnemanuel.com
18
19  ALSO PRESENT:
20      Erica Tierney, Esq., Apple Inc.
21      Tim Zurloff, Videographer
22
23
24
25
```

Page 263

```
 1      SAN FRANCISCO, CALIFORNIA;
 2      Tuesday, February 7, 2012; 3:52 P.M.
 3
 4       THE VIDEOGRAPHER:  This is the start of
 5  Disk No. 1 of the videotaped deposition of    15:52
 6  Jonathan Ive, in the matter of Apple
 7  Incorporated, versus Samsung Electronics Company,
 8  et al., in the   United States District Court,
 9  Northern District of California, San Jose
10  Division, Case No. 11-CV-01846 LHK.            15:52
11       This deposition is being held at 50
12  California Street, San Francisco, California on
13  February 7th, 2012, at approximately 4:53 p.m.
14       MR. JACOBS:  3:53.
15       THE VIDEOGRAPHER:  3:53.  Sorry.          15:53
16       My name is Tim Zurloff.  I'm the legal
17  video specialist from TSG Reporting,
18  Incorporated, headquartered at 747 Third Avenue,
19  New York,    New York.
20       The court reporter is Cynthia Manning,    15:53
21  in association with TSG Reporting.
22       Will counsel please introduce
23  yourselves.
24       MR. ZELLER:  Mike Zeller for Samsung.
25       MR. HALL:  Scott Hall for Samsung.        15:53
```

Page 264

```
 1       MR. KIDMAN:  Scott Kidman for Samsung.    15:53
 2       MR. JACOBS:  Michael Jacobs for Apple.
 3       MR. HO:  Francis Ho for Apple.
 4       MS. TIERNEY:  Erica Tierney for Apple.
 5       THE VIDEOGRAPHER:  Will the court          15:53
 6  reporter please swear in the witness.
 7
 8           JONATHAN IVE,
 9       having first been duly sworn, testified
10       as follows:                                15:53
11
12       MR. ZELLER:  And so we have it on the
13  record, what we're doing here is we are now
14  switching over to the Northern District of
15  California deposition portion of Mr. Ive's day.  15:53
16       And for the record, I hadn't finished
17  my questioning in the ITC proceeding.  But in
18  light of the fact that the witness is recovering
19  from a cold or flu, as well as the fact that we
20  don't want to overtax him, I decided I would     15:54
21  switch over.
22       Obviously, I'm reserving my rights in
23  terms of what we do going forward on the
24  remainder of the ITC proceedings.  But in the
25  interest of addressing and acting pursuant to    15:54
```

CONFIDENTIAL OUTSIDE COUNSEL ONLY PURSUANT TO PROTECTIVE ORDER

Page 269

1  Q. And does the -- is it that the same         16:01
2  problem exists where it's the ink for the black
3  mask and it's just not noticeable, or do these
4  bubbles not appear when black is being used?
5      A. There's -- basically what this issue    16:01
6  relates to is the value. So not the hue, but the
7  value of the ink. So when I say "value," I'm
8  talking from light to dark.
9          And so it is a challenge for a very
10 pure white mask where you're having to laminate  16:02
11 these different elements together. It's less of
12 a challenge for all of the literally thousands of
13 colors that are darker in value.
14         And so from -- I couldn't say exactly
15 where in the spectrum of value from black to     16:02
16 white. But certainly, when you're in all of the
17 mid values, this -- this particular issue is --
18 isn't a challenge.
19         So from, you know, relatively light
20 grays all the way through the values to black,   16:03
21 and then all of the colors that would share that
22 gradation in -- in value, it wouldn't be a
23 problem.
24     Q. And then by the time you get to pure
25 white on the other end of the spectrum, that's   16:03

Page 270

1  when this problem becomes more readily apparent?  16:03
2      A. We noticed the problem when we were
3  trying to create with ink the very purest white
4  borders. That's when we noticed this problem.
5      Q. And then -- and maybe this is outside     16:03
6  your bailiwick. And if it is, please let me
7  know.
8          And then ultimately, how was that --
9  how was that problem resolved? What was done to
10 fix it so that -- and by the way -- I should step 16:04
11 back for a moment.
12         Ultimately, Apple did release to market
13 a white iPhone 4?
14     A. Yes. We released the white iPhone 4
15 and the white iPhone 4S.                          16:04
16         And to answer your question about what
17 actually resolved this problem.
18         At some point, I'm sure I knew. I
19 don't recall what the exact solution was.
20     Q. You mentioned that this -- this issue     16:04
21 or problem was first detected because of stress
22 tests that were done.
23         Do you recall that?
24     A. Yes. My recollection was different
25 parts of the system go through a series of        16:05

Page 271

1  different tests. I don't recall what the test    16:05
2  was that exacerbated this issue or is a catalyst
3  to -- to the -- to the problem.
4      Q. Is there somebody in the company who
5  you're aware of was principally tasked with      16:05
6  trying to figure out the solution to this?
7      A. My recollection, there were two people
8  who were working to resolve this challenge. And
9  there was Steve Zadesky and I recall Jeff
10 Williams talking about this issue.               16:06
11     Q. And I take it from your prior answer,
12 in terms of how this was resolved, I take it you
13 don't know where in the process it was --
14 ultimately some kind of solution was found,
15 whether it was in manufacturing or materials or  16:06
16 whatever the case may be?
17     A. I know that the -- the ink layers
18 remained the same. I know that the ditto
19 component remained the same. Therefore my best
20 guess, but it's a nonexpert guess, was that it   16:06
21 would have been to do with the material used for
22 the lamination or the actual process of
23 laminating.
24     Q. And in your answers, you've talked
25 about "lamination." If you could, please tell us 16:07

Page 272

1  for the record what you mean by that term.       16:07
2      A. In this context when I use the word
3  "laminating," it is the -- essentially the gluing
4  together of two parts.
5          So the two parts I'm referring to        16:07
6  specifically in this context are the cover glass
7  that has the -- in this case the white mask
8  borders, and that is glued together to another
9  piece of glass which I referred to as the ditto.
10 And it's -- yes, it's the joining, the gluing    16:07
11 together of those two parts.
12     Q. I'm going to show you some various
13 models, and I'll put Post-It flags on them for
14 the exhibit number so we don't permanently affix
15 something to them.                                16:08
16         MR. ZELLER: So let's call, for the
17 record, Exhibit 1461 [sic] a three-dimensional
18 model that has a label on the back "Microsoft
19 Zune HD," and on the front it has a sticker that
20 says "Sample 34".                                 16:08
21         MR. JACOBS: Was it 1451?
22         THE WITNESS: Thank you.
23         (Deposition Exhibit 1451 was marked for
24     identification)
25 //

CONFIDENTIAL OUTSIDE COUNSEL ONLY PURSUANT TO PROTECTIVE ORDER

Page 277

1   Q.  And generally speaking, what's your                16:14
2   understanding of the purpose of having those
3   rapid prototypes or SLAs of the competitor
4   products at the division meeting?
5       A.  There is a -- a dedicated part of that         16:15
6   division meeting that I would estimate to
7   represent perhaps 1 or 2 percent, in terms of
8   time.  The division meetings are two hours, so
9   there is a very small part of the division
10  meeting where the -- we would cover any                16:15
11  announcements of competitive relevant products to
12  that division.
13      Q.  And why is it that the competitor
14  device is being represented through a rapid
15  prototype or an SLA as opposed to the actual          16:16
16  device itself?
17          MR. JACOBS:  Objection; form.
18          THE WITNESS:  We would look at a --
19  when there is an announcement, the announcement
20  typically would comprise a list of technical          16:16
21  specifications.
22          And generally, there would be an
23  overall description of dimensions that would
24  relate to the display that would relate to the
25  product.  And sometimes there would be a -- a         16:16

Page 278

1   photograph.  It's difficult to tell whether it's      16:17
2   a photograph of an object or whether it's a -- a
3   computer-realistic rendering of an object.
4           And so this part of a division meeting,
5   the -- typically, there would be a single page       16:17
6   that describes what the product specifications
7   are, its capabilities, its size, its weight.
8           And accompanying that one piece of
9   paper there would be this model, this -- this
10  rapid prototype -- that gave those people in the     16:17
11  room who can't really visualize a set of
12  dimensions on a piece of paper.  They don't
13  understand what that would mean.
14          So I think it -- it gives a very
15  rough -- and you can see from the model that it's    16:18
16  a very -- very quick and rough model.
17          It gives them an idea of what the
18  product size is.  It doesn't communicate very
19  often color or weight or material.  It really
20  exists as a diagram, I think -- a                    16:18
21  three-dimensional diagram -- to help people
22  understand this is what this product is.
23      Q.  And approximately how often do the
24  devices division meetings occur?
25      A.  Typically, they would occur every two         16:19

Page 279

1   weeks.  Unfortunately, during Steve Jobs' illness    16:19
2   there could be many weeks where we wouldn't meet.
3       Q.  In these devices division meetings, is
4   that where -- is it a cross-functional meeting?
5   Is that the idea, where you get people from          16:19
6   different groups together to talk about issues?
7       A.  Yes.  The division meetings would be
8   the heads of -- not all of the functional groups,
9   but a number of the functional groups.
10      Q.  And typically, what -- what groups           16:20
11  attended the devices division meetings?
12      A.  Well, there would be -- so at -- that
13  would vary, in terms of where we are in time, so
14  I'll describe a typical division meeting that
15  would be, for example -- in the time frame, for      16:20
16  example, of the 4, the iPhone 4.
17      Q.  Sure.
18      A.  So that would be Steve Jobs.
19          There would be Phil Schiller, who was
20  the head of marketing.                               16:21
21          There would be Greg Joswiak, who was
22  also a head of marketing, a VP of marketing,
23  reporting to Phil Schiller.
24          There would be the head of engineering
25  for the devices, and that's -- that's now            16:21

Page 280

1   changed.  But at that point in time that would       16:21
2   have been Mark Papermaster.
3           There would be Rubin, who we talked
4   about earlier, who is responsible for the antenna
5   design.                                              16:21
6           There would be, in this time frame,
7   Jeff Williams, Steve Zadesky, who is the head of
8   product design.
9           Achim -- I'm afraid I can't recall his
10  surname.  He's the -- essentially the head of        16:22
11  program management.
12          And then sometimes there would be
13  myself.  I didn't attend all of these division
14  meetings.
15          And sometimes there would be Scott           16:22
16  Forstall, who is the -- the head of software for
17  the iOS devices.
18      Q.  And for those devices division meetings
19  that you attended, was there any kind of agenda
20  that was usually circulated as part of that so       16:22
21  people would know what was going to be discussed
22  at the meeting?
23      A.  I think there was an agenda that the
24  head of engineering would have, that I was not
25  aware of.  But that provided -- that agenda          16:23

CONFIDENTIAL OUTSIDE COUNSEL ONLY PURSUANT TO PROTECTIVE ORDER

## Page 329

```
1    time is 6:06 p.m.                    18:06
2       (Time noted:  6:06 p.m.)
```

## Page 330

```
 2            DECLARATION UNDER PENALTY OF PERJURY
 3
 4       I, JONATHAN IVE, do hereby certify under
 5  penalty of perjury that I have read the foregoing
 6  transcript of my deposition taken on February 7,
 7  2012; that I have made such corrections as appear
 8  noted herein in ink, initialed by me; that my
 9  testimony as contained herein, as corrected, is
10  true and correct.
11
12       DATED this        day of
13  2012, at              , California.
14
15
16
17
18            JONATHAN IVE
```

## Page 331

```
 2  IN THE MATTER OF:  Apple Inc v. Samsung Electronics
                        Company Limited
 3
 4
 5  DATE: Tuesday, February 07, 2012
 6  WITNESS: Jonathan Ive
 7  Reason codes:
 8      1. To clarify the record.
        2. To conform to the facts.
 9      3. To correct transcription errors.
10
        Page       Line        Reason
11
12      From                to
13
        Page       Line        Reason
14
15      From                to
16
        Page       Line        Reason
17
18      From                to
19
        Page       Line        Reason
20
21      From                to
22
23
24
25              JONATHAN IVE
```

## Page 332

```
 2  STATE OF CALIFORNIA  )
 3       :ss
 4  COUNTY OF SAN MATEO  )
 5       I, CYNTHIA MANNING, a Certified Shorthand
 6  Reporter of the State of California, do hereby
 7  certify:
 8       That the foregoing proceedings were taken
 9  before me at the time and place herein set forth;
10  that any witnesses in the foregoing proceedings,
11  prior to testifying, were placed under oath; that
12  a verbatim record of the proceedings was made by
13  me using machine shorthand which was thereafter
14  transcribed under my direction; further, that the
15  foregoing is an accurate transcription thereof.
16       I further certify that I am neither
17  financially interested in the action, nor a
18  relative or employee of any attorney of any of
19  the parties.
20
21       IN WITNESS WHEREOF, I have subscribed
22  my name this 7th day of February 2012.
23
24
25       CYNTHIA MANNING, CSR No. 7645, CCRR, CLR
```