1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
14 INC. and SAMSUNG TELECOMMUNICATIONS
   AMERICA, LLC

15                  UNITED STATES DISTRICT COURT

16        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17
   APPLE INC., a California corporation,          CASE NO. 11-cv-01846-LHK
18
                 Plaintiff,                       **SAMSUNG'S OPPOSITION TO APPLE
19                                                INC.'S MOTION FOR ADVERSE
          vs.                                     INFERENCE JURY INSTRUCTIONS
20                                                DUE TO SAMSUNG'S SPOLIATION OF
   SAMSUNG ELECTRONICS CO., LTD., a                EVIDENCE**
21 Korean business entity; SAMSUNG
   ELECTRONICS AMERICA, INC., a New              Date:   June 26, 2012
22 York corporation; SAMSUNG                      Time:   10:00 a.m.
   TELECOMMUNICATIONS AMERICA,                    Place:  Courtroom 5, 4th Floor
23 LLC, a Delaware limited liability company,     Judge:  Hon. Paul S. Grewal

24               Defendant.

25

26                         **FILED UNDER SEAL**

27

28

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES TO BE DECIDED .....................................................1

II.   PRELIMINARY STATEMENT .........................................................................1

III.  FACTUAL BACKGROUND ..............................................................................5

    A.    Samsung's Electronic Data Systems ......................................................5

        1.    SEC's Electronic Data System Is Designed To Serve A Global Business Based In Korea .......................................................................5

        2.    SEC's mySingle Email Interface Enables Employees To Preserve Email ....5

        3.    SEC Employees Can Also Use Microsoft Outlook To Preserve Email..........6

    B.    Samsung Reasonably and in Good Faith Fulfilled Its Preservation Obligations .......7

        1.    SEC Issued Timely Litigation Holds in April and May 2011 .......................7

        2.    SEC Undertook Significant Efforts To Ensure Compliance With The Litigation Hold Notice .....................................................................8

IV.   ARGUMENT .....................................................................................................9

    A.    Legal Standard .......................................................................................9

    B.    Apple's Motion Misstates And Distorts The Facts................................10

        1.    Apple Fails to Establish Intentional Destruction of Emails Concerning the Design and Development of the Accused Products .............................10

        2.    The Charts Set Forth In Paragraph 4 and Exhibit 8 of the Esther Kim Declaration Do Not Support the Conclusion That Samsung Spoliated Evidence .....................................................................12

    C.    Apple Fails to Establish Any of the Legal Elements it Must Prove to Establish Spoliation .......................................................................14

        1.    Apple Has Failed to Establish that Samsung Destroyed Email Evidence It Had an Obligation to Preserve......................................................14

        2.    Apple Cannot Establish That Samsung Destroyed Evidence With A Culpable State Of Mind .....................................................................19

        3.    Apple Has Not Shown That Any Documents Destroyed After The Filing Of The Complaint Were Relevant To Its Claims........................................23

    D.    Apple Is Not Entitled To The Inferences It Seeks ................................24

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACORN v. County of Nassau*,
  2009 WL 605859 (E.D.N.Y. Mar. 9, 2009) ........................................................ 22, 23

*Akiona v. United States*,
  938 F.2d 158 (9th Cir. 1991) ........................................................................... 19

*Anderson v. Cryovac, Inc.*,
  862 F.2d 910 (1st Cir.1988) ............................................................................. 20

*Arthur Andersen LLP v. United States*,
  544 U.S. 696 (2005) ........................................................................................ 15

*Brodle v. Lochmead Farms, Inc*,
  2011 WL 4913657 (D. Or. Oct. 13, 2011) ...................................................... 9, 10

*Cacace v. Meyer Marketing*,
  2011 WL 1833338 (S.D.N.Y. May 12, 2011) ............................................ 18, 22, 23

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*,
  244 F.R.D. 614 (D. Colo. 2007) ...................................................................... 21

*Carderella v. Napolitano*,
  2012 WL 767311 (9th Cir. Mar. 12, 2012) ...................................................... 15

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .......................................................................................... 20

*Coburn v. PN II, Inc.*,
  2010 WL 3895764 (D. Nev. Sept. 30, 2010) ............................................ 15, 17, 22

*Consolidated Aluminum Corp. v. Alcoa, Inc.*,
  244 F.R.D. 335 (M.D. La. 2006) .................................................................. 9, 21, 23

*Convolve, Inc. v. Compaq Computer Corp.*,
  223 F.R.D. 162 (S.D.N.Y. 2004) ...................................................................... 23

*Denim North America Holdings, LLC v. Swift Textiles, LLC*,
  816 F. Supp. 2d 1308 (M.D. Ga. 2011) ............................................................ 21

*Dong Ah Tire & Rubber Co., Ltd v. Glasforms, Inc.*,
  2008 WL 4298331 (N.D. Cal. Sept. 19, 2008) ................................................ 10

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc*,
  2009 WL 1949124 (N.D. Cal. July 2, 2009) .................................................... 17

*FTC v. Lights of America Inc.*,
  2012 WL 695008 (C.D. Cal. Jan. 20, 2012) ............................................ 15, 16, 17, 25

*Faas v. Sears, Roebuck & Co.*,
  532 F.3d 633 (7th Cir. 2008) ............................................................................ 20

*Fjelstad v. American Honda Motor Co.*,
    762 F.2d 1334 (9th Cir. 1985) ............................................................................................ 20

*Fractus v. Samsung Electronics Co., Ltd.*,
    Case No. 6:09-cv-203-LED (E.D. Tex. May 20, 2011) ................................................. 3, 20

*Glover v. BIC Corp.*,
    6 F.3d 1318 (9th Cir. 1993) ................................................................................................ 19

*Gonzalez v. Las Vegas Metropolitan Police Department*,
    2012 WL 1118949 (D. Nev. Apr. 2, 2012) ................................................................. 15, 24

*Gumbs v. Int'l Harvester, Inc.*,
    718 F.2d 88 (3d Cir. 1983) .................................................................................................. 20

*Hamilton v. Signature Flight Support Corp.*,
    2005 WL 3481423 (N.D. Cal. Dec. 20, 2005) ............................................. 10, 23, 24, 25

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
    497 F. Supp. 2d 627 (E.D. Pa. 2007) .................................................................................. 25

*In re Hechinger Inv. Co. of Del., Inc.*,
    489 F.3d 568 (3d Cir. 2007) ................................................................................................ 20

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
    591 F. Supp. 2d 1038 (N.D. Cal. 2006) ......................................................................... 15, 23

*IO Group, Inc. v. GLBT Ltd.*,
    2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) ....................................................... 10, 16, 19

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694, 102 S. Ct. 2099 (1982) ................................................................................ 22

*Keithley v. Homestore.com, Inc.*,
    2008 WL 4830752 (N.D. Cal. Nov. 6, 2008) ....................................................................... 9

*Kinnally v. Rogers Corp.*,
    2008 WL 4850116 (D. Ariz. Nov. 7, 2008) ................................................................. 17, 22

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ................................................................................................ 23

*Kullman v. New York*,
    2012 WL 1142899 (N.D.N.Y April 4, 2012) ..................................................................... 23

*MOSAID Technologies, Inc. v. Samsung Electronics Co., Ltd.*,
    348 F. Supp. 2d 332 (D.N.J. 2004) ................................................................................... 3, 20

*Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc*,
    306 F.3d 806 (9th Cir 2002) ................................................................................................ 24

*Micron Tech., Inc. v. Rambus, Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011) ........................................................................................... 20

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ......................................................... 9, 22, 24, 25

*National Ass'n of Radiation Survivors v. Turnage*,
   115 F.R.D. 543 (N.D. Cal. 1987) ................................................................................22

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*,
   685 F. Supp. 2d 456 (S.D.N.Y. 2010) .........................................................................19

*Perez v. Vezer Industrial Professional, Inc.*,
   2011 WL 5975854 (E.D. Cal. Nov. 29, 2011) ..............................................18, 24, 25

*Pinstripe, Inc. v. Manpower, Inc.*,
   2009 WL 2252131 (N.D. Okla. July 29, 2009) ............................................................22

*Poux v. County of Suffolk*,
   2012 WL 1020302 (E.D.N.Y. Mar. 23, 2012) .......................................................22, 23

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
   264 F.R.D. 517 (N.D. Cal. 2009) ................................................................................15

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
   306 F.3d 99 (2d Cir. 2002) ..........................................................................................22

*Rimkus Consulting Group, Inc. v. Cammarata*,
   688 F. Supp. 2d 598 (S.D. Tex. 2010) ......................................................................9, 20

*Sampson v. City of Cambridge, Md.*,
   251 F.R.D. 172 (D. Md. 2008) .....................................................................................22

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
   425 F.3d 708 (9th Cir. 2005) ..................................................................................15, 19

*Strom v. City of Crescent City*,
   2010 WL 2231799 (N.D. Cal. June 1, 2010) ...............................................................18

*Tetsuo Akaosugi v. Benihana Nat'l Corp.*,
   2012 WL 929672 (N.D. Cal. March 19, 2012) ............................................................10

*Thompson v. U.S. Dept. of Housing and Urban Dev.*,
   219 F.R.D. 93 (D. Md. 2003) .........................................................................................9

*Twitty v. Salius*,
   455 Fed. App'x. 97 (2d Cir. 2012) .........................................................................22, 25

*United States v. $40,955.00 in U.S. Currency*,
   554 F.3d 752 (9th Cir. 2009) ........................................................................................15

*United States v. Kitsap Physicians Service*,
   314 F.3d 995 (9th Cir. 2002) ........................................................................................15

*World Courier v. Barone*,
   2007 WL 1119196 (N.D. Cal. April 16, 2007) ............................................................20

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ...........................................................15, 16, 18, 22

I.    STATEMENT OF ISSUES TO BE DECIDED

    1.    Whether Apple has met its burden of establishing each element of spoliation.

    2.    Whether Apple, even if it could meet its burden (it has not), has also established that it is entitled to the extreme sanction of the adverse inferences it seeks.

II.   PRELIMINARY STATEMENT

    This motion literally mirrors the one Apple filed – and lost – earlier this month in the parallel action it commenced last July before the International Trade Commission ("ITC").  There, as here, Apple asserted (in nearly identical words) that the failure to disable the two-week auto-delete function on Samsung's mySingle email system automatically gave rise to spoliation and warranted adverse inferences.   There, as here, Apple claimed that the failure of certain custodians to produce a greater volume of email than Apple expected justified a finding that relevant emails were destroyed.   And, as here, Apple asserted that the production of certain isolated emails satisfied its burden to show that any destroyed emails would have been relevant to its claims.   Some of the names were different; the arguments identical.   After considering the evidence submitted by both sides, and following the position advocated by ITC Staff, the presiding Administrative Law Judge rejected each and every one of Apple's contentions:

    •    *First*, the ALJ expressly found that the mySingle system, including its two-week auto delete function, was "permissible" as a general matter.   (Declaration of Thomas R. Watson ("Watson Decl."), Ex. 1 (Order No. 19, at 6 (May 11, 2012).)

    •    *Second*, the ALJ concluded that, "beyond Apple's rather speculative accusations, I can find no proof Samsung destroyed any potentially relevant emails after the institution of this Investigation.   On the contrary, I do find proof that Samsung took reasonable steps to preserve documents by instituting a litigation hold and instructing its relevant employees to err on the side of preservation when retaining documents."   (*Id.*)

    •    *Third*, the ALJ found that, based on the evidence Samsung provided, it "has specifically disproven the great majority if not all of the factual allegations relating to spoliation that Apple made in its Motion for Sanctions."   (*Id.*)

    •    *As a result*, the ALJ found that "Apple has not adequately established that Samsung did not satisfy its duty to preserve evidence.   Rather, as mentioned, I find Samsung took reasonable and appropriate steps to preserve evidence and did not, either negligently or purposefully destroy evidence based upon the record before me.   Therefore, I do not find that Samsung intended to impair Apple's ability to prosecute its infringement claims in this Investigation, which is a necessary prerequisite to a finding of bad faith

and thus the granting of an adverse inference for spoliation."   (*Id.*)

Having lost in one court, Apple now seeks a second bite.[1]  If anything, this motion is even weaker than the one Apple lost before the ITC, as it is based on even *less* evidence that is even *less* specific than what was included in the ITC motion.  Samsung has recently amended its transparency disclosures to reflect more precise information as to exactly who received a litigation hold notice on what date.  Those disclosures, and the declarations from the Samsung and Quinn Emanuel attorneys involved in this process, make clear that Samsung has, from the outset, taken seriously its obligation to preserve and produce relevant evidence.  After drafting a litigation hold notice on April 21, 2011, Samsung attorneys began meeting with key employees and supervisors to personally explain the requirement to preserve evidence.  Over a three day period in late April, meetings were held with more than 300 employees.  Each of these employees was instructed to preserve evidence.  Those who were managers were instructed to explain the details they had learned about document preservation to all of the employees who reported to them.   Between April 22, 2011 and May 3, 2011, litigation hold notices were sent to over 2,300 employees at SEC, as well as to all of the employees at Samsung's STA and SEA affiliates.  Ten in-house Samsung attorneys, along with eight partners, thirty-three associates, and fifty-six contract review attorneys at Quinn Emanuel and five different document vendors (with thirty-one of their own associates), have worked together to produce over twelve million pages of documents, including over 80,000 emails, gathered from more than 380 witnesses.[2]  Further, Samsung has produced over 1 terabyte of source code – the equivalent of over 58 million pages – in the ITC and N.D. Cal. cases, and Apple has deposed 163 Samsung witnesses, questioning them about over 2,700 exhibits.[3]

---

[1]   Apple's continued pursuit of this satellite issue is unsurprising based on the fact that Apple's counsel made clear that it intended to litigate spoliation nearly a year ago, before even a single witness was deposed in this lawsuit.  Declaration of Esther Kim in Support of Apple Inc's Mot. for Adverse Inference Jury Instructions Due to Samsung's Spoliation of Evidence ("E. Kim Decl."), Ex. 33.

[2]   To date, Samsung has produced over 9,880,000 pages of documents in the ITC Investigations (794/796) and an additional over 2,150,000 pages of documents in the N.D. Cal. suit, which are the subject of the parties' cross-use agreement. (Declaration of Alex Binder ("Binder Decl."), ¶ 5.)

[3]   This Court recently recognized the "largely unchecked problem" of e-discovery, and adopted the Federal Circuit's Model Order on E-Discovery in Patent Cases, which would limit discovery of email to *five custodians* (Watson Decl., Ex. 2, (Fed. Cir. Adv. Council, Model Order Regarding E-Discovery In Patent Cases, ¶ 10).  *DCG Sys, Inc. v. Checkpoint Techs., LLC*, 2011 WL 5244356 (N.D. Cal. 2011).  *See also In re Google Litig.*, 2011 WL 6113000 (N.D. Cal. 2011) (adopting order in

1   Apple argues that the possibility that there might have been even more evidence gathered had

2   Samsung used a different email system preserving even more evidence justifies the extreme remedies

3   it seeks.   That is not the law.   In over 500 patent and intellectual property cases since 2004 involving

4   Samsung's use of its mySingle system, not once has any party successfully claimed, as Apple argues

5   here, that the system's two-week retention policy constitutes *per se* spoliation.   Samsung's mySingle

6   system permits individuals to save emails and other electronic documents, so that those emails are not

7   subject to the two-week policy.   Samsung also allows its employees to use Outlook to save emails,

8   which does not have the two-week deletion function.[4]

9       As the ALJ found with regard to Apple's ITC motion, there is not a shred of evidence that any

10  of the witnesses Apple calls out in its motion destroyed relevant documents they were required to

11  preserve, or that anyone else at Samsung did, much less that there was a bad faith scheme orchestrated

12  by Samsung to destroy relevant documents to gain a litigation advantage.   In the absence of evidence,

13  as it did in the ITC, Apple resorts to misrepresenting previous cases involving Samsung and implies

14  that courts have held the mySingle system was deficient and that reliance on it would constitute

15  willful spoliation.   Not so.   Apple cites the *Fractus* case, but fails to mention that there the court

16  explicitly rejected Fractus' request for an adverse inference.   Apple relies on the *MOSAID* decision,

17  but in that case no litigation hold was put in place.   And Apple invokes an unauthenticated press

18  release from Korea's Fair Trade Commission (which constitutes rank hearsay), but neglects to point

19  out that the decision had nothing to do with the destruction of emails, the mySingle system, or any

20  form of alleged infringement of intellectual property rights.

21      The inferences Apple seeks require it to prove that Samsung perpetrated a scheme to destroy

22

23  connection with third party discovery).   Apple's approach here stands in stark contrast to the Model
    Order, and to the admonition of Federal Circuit Chief Judge Randall R. Rader that "[t]he goal of this
24  Model Order is to streamline e-discovery, particularly email production, and requires litigants to focus
    on the proper purpose of discovery—the gathering of material information—rather than on unlimited
25  fishing expeditions,"  Watson Decl., Ex. 3.
    [4]   As a leading expert in this area has concluded based on a review of Samsung's data preservation
26  practices and their implementation in this action, "Samsung had, at all times material hereto, a
    reasonable records management and legal hold . . . process, and . . . timely executed this process for
27  this matter."   (M. James Daley Decl., ¶ 16.)   Samsung's system serves not only to protect
    confidential business information in a company with hundreds of thousands of employees, but also to
28  protect the individual right to privacy enshrined, after decades of military rule, in Korean law.

1   evidence it was obligated to preserve, including evidence of alleged copying of Apple's products and

2   technology, to gain a litigation advantage.   Apple must prove that the intentionally destroyed

3   evidence (and there was none) was relevant to the issues in this case, causing so much prejudice that

4   the Court should instruct the jury that, Samsung "in bad faith" failed to preserve "large volumes of

5   relevant emails and other documents" which may be presumed to have been favorable to Apple's

6   case; and that it if it "finds infringement of any Apple patent, trademark, or trade dress, that the jury

7   may infer that the infringement was intentional, willful, and without regard to Apple's rights."   (Mot.

8   at 15.)   Apple cannot meet any element of the applicable test.

9          First, the preservation obligation at issue in this motion arose no earlier than April 15, 2011,

10   when Apple filed its Complaint.   The majority of documents that Apple cites in its motion are dated

11   prior to April 15, 2011, and relate to steps in the design and development process that took place long

12   before Apple filed its Complaint.   Remarkably, despite claiming that Samsung's duty to preserve

13   attached the moment Apple filed its complaint, Apple itself waited two months or more after filing its

14   complaint to issue litigation hold notices to many of the named inventors of its asserted patents.

15          Second, even if Apple could establish that some evidence was destroyed after April 15, 2011 –

16   and it cannot – there is no basis for finding that Samsung acted in bad faith, or with any intent to

17   impair Apple's ability to prove its case, which is what the inferences Apple seeks require.

18          Third, Apple has not come close to showing that any evidence willfully destroyed at the time

19   Samsung was required to preserve it (and there was none) was also relevant to its claims.   Not only

20   were the majority of the accused products at issue here released prior to April 15, 2011, but in every

21   case that Apple calls out, the custodians either explained that they preserved emails; or that the same

22   emails were available from others; or that they were not working on projects relevant to this case.

23   Each of the criticisms Apple levels against Samsung as to the supposed numerical inadequacy of the

24   productions could also be applied – many times over – to Apple itself, which produced even fewer

25   documents from its own key custodians.

26          Finally, there is no basis to support the conclusion that Apple was so gravely prejudiced by the

27   (unproven) destruction of relevant documents that only the adverse inferences it seeks will cure the

28   prejudice.   Apple can point to no topic as to which there has not been both extensive document

1    production and comprehensive deposition testimony.   As a matter of law, mere speculation, which is

2    all that Apple offers, and that is at odds with the voluminous record, is not enough.   Samsung

3    respectfully submits that Apple's motion should be denied.

4    **III.    FACTUAL BACKGROUND**

5          **A.    Samsung's Electronic Data Systems**

6                **1.    SEC's Electronic Data System Is Designed To Serve A Global Business**
                        **Based In Korea**
7

8          Samsung Electronics Co., Ltd. ("SEC") operates a global electronics business with 175,486

9    employees, including over 42,000 employees doing research and development.   (Declaration of Han-

10   Yeol Ryu ("Ryu Decl."), ¶¶ 10, 11.)   SEC researches, develops, manufacturers, and markets products

11   in several industries, including the semiconductor, LCD, mobile communications, and computer

12   businesses.   (*Id.* ¶ 11.)   In contrast to SEC, the two other Samsung affiliates that are parties to this

13   action – Samsung Electronics America, Inc. ("SEA") and Samsung Telecommunications, LLC

14   ("STA") – respectively have approximately 850 and 2,243 employees,[5] and are operated in the

15   context of their respective scale, lines of business, and geographic distribution.   SEA operates in the

16   United States, Canada, and Mexico, while STA, which distributes communications products, operates

17   only in the United States.   SEC must operate and maintain an electronic data system capable of

18   supporting a workforce 56 times larger than STA's and SEA's workforce combined, engaged in the

19   highly confidential tasks of developing and manufacturing cutting edge products in highly competitive

20   industries.   SEC's systems are designed both to preserve privacy as provided by Korean law and to

21   protect SEC's valuable business information.   (*See* B. Kim Decl., n.2.)

22                **2.    SEC's mySingle Email Interface Enables Employees To Preserve Email**

23         In 2001, SEC began using the mySingle system. (Ryu Decl., ¶ 3.)   SEC employees access

24   their SEC email accounts through a web-based interface for the mySingle system.   (*Id.* ¶ 3.)   The

25   mySingle system stores employees' emails on mySingle servers in 'inbox' and 'sent' folders in the

26   system, rather than on their hard drives, which avoids the danger that confidential business

27   information will be misappropriated in the event the computer itself is lost or stolen.   (*Id.* ¶ 4.) The

28   _____
     [5]   Watson Decl., Ex. 33.

1   14-day retention period was adopted in 2001, because of both the costs of a longer period (extending

2   retention by even 16 days, for a total of 30, given the number of employees involved, would cost SEC

3   an additional $35,983,193 U.S.D. per year)[6] and the need to protect SEC's confidential business

4   information.   SEC has more than 42,000 employees doing research and development alone; theft or

5   inadvertent disclosure of their work would seriously harm SEC's business.   (*Id.* ¶ 11.)   The 14-day

6   retention period reduces the amount of information that could inadvertently be disclosed through

7   misdirected email, or stolen through unauthorized access or hacking into an employee's email account

8   on the system.   (*Id.* ¶¶ 4, 11.)[7]

9       Although email is deleted from the mySingle server after 14 days, the mySingle interface

10   provides employees with a means to preserve email on their computer.   First, the mySingle interface

11   has a "Save All" button that employees click to save all email in their 'inbox' and their 'sent' folders

12   to the hard drive on their computer; clicking that button every two weeks saves all email.   (Ryu Decl.

13   ¶ 5.)   Second, the mySingle interface enables employees to select individual emails or groups of

14   emails and to save them to the employee's hard drive.   (*Id.* ¶ 6.)   Reviewing this system, M. James

15   Daley, a recognized expert on record preservation, concluded that "[a] 14 day automatic email

16   deletion policy helps reduce the high cost of managing electronic data, helps ensure information

17   security with respect to strategic corporate information assets, and helps maintain data privacy and

18   protection."   (Daley Decl., ¶ 8.)   Apple has offered no conflicting expert opinion.

19       **3.   SEC Employees Can Also Use Microsoft Outlook To Preserve Email**

20       SEC also provides employees with the option to use the Microsoft Outlook email client

21

22   [6]   The additional cost to SEC in Korean Won would be 39,981,326,352 per year.   (Ryu Decl., ¶ 10.)
     Based on a currency conversion rate of 1 Korean Won equaling 0.0009 U.S. dollars, 39,981,326,352
     Korean Won equals 35,983,193 U.S. dollars.

23   [7]   The retention policy is one of a number of steps that SEC has adopted to protect confidential
     business information.   SEC also directs employees to keep hard copies of SEC business documents in

24   secure locations in their offices.   Private security forces monitor the security of SEC's facilities 24
     hours a day.   Each employee must walk through a metal detector when exiting the premises, and all

25   bags, briefcases, and purses are checked through an x-ray machine.   Any unauthorized memory
     devices or electronic devices having memory functionality (e.g., USB drives, hard drives, CD/DVDs,

26   cell phones, MP3 players) are strictly prohibited from being taken out of the premises.   Likewise, all
     cell phones and MP3 players must also be registered, and each device must either have cameras taped

27   with tamper-proof tape or the device must have special software that disables the cameras.   The
     Mobile Communications Business Unit even uses special paper that is capable of triggering the metal

28   detectors, if a print-out is carried outside the premises.   (Ryu Decl., ¶¶ 12-14.)

1    software to view and archive emails they receive on their local drive if they seek to do so.   (Ryu

2    Decl., ¶ 7.)   No special authorization is required to use Outlook to view and archive email.[8]   (*Id.*)

3    Employees who use this feature can configure Outlook to personally retain indefinitely the email

4    downloaded from the mySingle server.   (*Id.* ¶ 8.)

5         **B.**    <u>**Samsung Reasonably and in Good Faith Fulfilled Its Preservation Obligations**</u>

6            **1.**    <u>**SEC Issued Timely Litigation Holds in April and May 2011**</u>

7           Samsung's in-house legal team during the relevant period included lawyers with extensive

8    experience in U.S. laws including in patent litigation, among them a former partner and a former

9    associate from Quinn Emanuel, a Harvard Law School graduate who previously worked at Howrey,

10   former attorneys from the Jones Day and McDermott firms, an LLM graduate of Wake Forest

11   University admitted to the bar in New York, and a JD graduate of Santa Clara University School of

12   Law.[9]   Working with outside counsel, these lawyers undertook the task both of determining the

13   proper scope of the litigation hold notice and identifying the proper recipients – in the case of SEA

14   and STA, smaller affiliates, a far easier task (all of the employees were immediately notified); in the

15   case of SEC, a task which required the compiling of lists of thousands of the hundreds of thousands of

16   employees who might have information relevant to the claims. (Ryu Decl., ¶ 10; H. Kang Decl., ¶¶

17   11.)

18          Apple filed this action on April 15, 2011.   The final version of the litigation hold notice,

19   detailing the scope of the documents to be preserved, was completed on April 21, 2011.   (Hankil

20   Kang Decl., ¶ 7.)   Samsung began distributing these notices the next day. (*Id.*)   Between April 22

21

---

22   [8]   Apple contends that SEC requires employees to receive "permission from the employee's
     department head" to use Outlook to view and archive email.   (Mot. at 3 n.3.)   Whether the product of
23   a mistranslation or a misunderstanding, SEC's 30(b)(6) deponent was translated as using the word
     "permission" in reference to employees using Outlook.   (Watson Decl., Ex. 32, 2/10/12 Kyu Hyuk
24   Lee Dep. Tr. at 165:4-7.) (stating that "[i]n order to install an Outlook linked to My Single, you have
     to get permission").   Mr. Lee may have been referring to the use of Outlook to *send* email.   For
25   security reasons, SEC requires employees to obtain special authorization to use Outlook to *send* email,
     but there is no such requirement for employees to use Outlook to view and archive email.   (Ryu
26   Decl., ¶ 7; Declaration of Kyu Hyuk Lee, ¶ 4.)
     [9]   The procedures followed by Samsung's in-house and outside counsel clearly involve privileged
27   communications.   In order to avoid any claim of privilege waiver, Samsung has summarized its
     specific efforts in this Memorandum.   Should the Court desire any further detail, Samsung stands
28   ready to provide such additional details required by the Court.

1   and May 3, as Samsung's Amended Disclosures detail, litigation hold notices were sent not only to *all*

2   of the employees of the smaller STA and SEA units, but to over 2,300 SEC employees.  (Watson

3   Decl., Ex. 33.)   Over the succeeding weeks, and in light of the lawsuit Samsung filed against Apple

4   on April 27, 2011, Samsung sent additional and amended litigation hold notices to a total of over

5   2,700 SEC employees.  (*Id.*)  With the filing of the related ITC action, Samsung sent thousands of

6   additional notices.  (H. Kang Decl. ¶¶ 18-20; Watson Decl., Ex. 33.)

7          The litigation hold notice instructed recipients that "**if you have any doubt** as to whether you

8   should preserve particular documents, **you are instructed to retain them**.  Please distribute this

9   message to anyone else who may have any such relevant documents."  (Watson Decl., Ex. 33 at Ex.

10  A.)   The notice also emphasized "it is important that you do not destroy or discard any potentially

11  responsive documents **AND PRESERVE ANY SUCH RELEVANT DOCUMENTS**."   (*Id.*)

12          **2.    SEC Undertook Significant Efforts To Ensure Compliance With The**
                    **Litigation Hold Notice**
13

14          Contrary to Apple's mischaracterization of SEC's 30(b)(6) deponent testimony (repeated

15  almost verbatim from the ITC motion) that Samsung has "done nothing" to ensure compliance, (Mot.

16  at 4), SEC undertook a comprehensive and extensive approach.   Kyu Hyuk Lee testified that:

17          with respect to document retention requests, we impress upon our people as to how
            important that is and how it ought to be carried out.   And, indeed, our counsel within
18          the IP legal team as well as outside counsel all get involved in this, and notices are sent
            out, people are brought up to speed as to those aspects and the respective department
19          heads are all sufficiently notified as to this.

20  (Watson Decl., Ex. 5 (3/8/12 Kyu Hyuk Lee Dep. Tr. at 19:6-13).)   Mr. Lee also testified about how

21  the litigation hold was reiterated:   "[O]n numerous occasions that IP legal team attorneys and outside

22  attorneys provided numerous explanations about the notice and also regarding the notice's

23  importance, necessity and methodology of preservation . . . ."  (*Id.* at 33:4-8.)

24          Young-jo Lim, a Director of the IP Legal Team, held four follow-up meetings in the last week

25  of April, 2011 with over 300 employees intended to educate key employees about the system of

26  discovery in U.S. litigation and the requirements for document preservation of the SEC computer

27  system.  (Declaration of Young-jo Lim ("Lim Decl."), ¶¶ 4-9; Declaration of Giho Ro ("Ro Decl."),

28  ¶¶ 4-9.)   The topics covered the issuance of litigation hold notices and the obligation of each person

with information pertaining to the subjects in the litigation hold notice to actively save emails and other electronic documents, and that the mySingle and Microsoft Outlook email systems enable users to select emails and save them.  (Lim Decl., ¶ 6; Ro Decl., ¶ 6.)  Instructions were given that employees should contact the IP Legal Team if they had any questions about how to do so.  (*Id.*)  Instructions were also given at these meetings that every executive should provide a directive to their junior managers on their duties to preserve evidence.  (Lim Decl., ¶¶ 7, 8; Ro Decl., ¶¶ 7, 8.)[10]  As the ITC ALJ found, contrary to Apple's arguments, "Samsung took reasonable steps to preserve documents by instituting a litigation hold and instructing its relevant employees to err on the side of preservation when retaining documents."   (Watson Decl., Ex. 1 (Order No. 19, at 6).)

## IV.     ARGUMENT

### A.     Legal Standard

"[A]n adverse inference instruction is a harsh remedy," *Keithley v. Homestore.com, Inc.*, 2008 WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008), that should only be granted in extraordinary circumstances, even where spoliation has been established.[11]  "A party seeking this sanction must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Brodle v. Lochmead Farms, Inc*, 2011 WL 4913657, at *5 (D. Or. Oct. 13, 2011) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006)).  "The party requesting sanctions bears the burden of proving, by a preponderance of the evidence, that spoliation took place."

---

[10]   Outside counsel participated in these efforts.  On May 2 through 4, 2011, four Quinn Emanuel partners and one associate traveled to Korea and, in conjunction with SEC's in-house counsel, met with SEC employees in Seoul, Seocho, and Suwon.  (H. Kang Decl., ¶ 12; Declaration of Sara Jenkins ("Jenkins Decl."), ¶ 10.)  During those meetings, the topics included the duty to preserve documents and SEC's document collection efforts.  (*Id.*; *see also* Hankil Kang Decl., ¶ 12.)

[11]   *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 619 (S.D. Tex. 2010) (adverse inferences are "among the most severe sanctions a court can administer"); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 340 (M.D. La. 2006) (adverse inference sanctions are "drastic"); *Thompson v. U.S. Dept. of Housing and Urban Dev.*, 219 F.R.D. 93, 100-01 (D. Md. 2003) (adverse inference sanctions are "extreme" and "not to be given lightly").

1    *Tetsuo Akaosugi v. Benihana Nat'l Corp.*, 2012 WL 929672, at *3 (N.D. Cal. March 19, 2012).[12]

2        Satisfaction of the three-part test is required, but not necessarily sufficient, to entitle a party to

3    an adverse inference instruction. "Courts determine the proper sanction for destruction of evidence on

4    a case-by-case basis[,]" *Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423, at *3 (N.D.

5    Cal. Dec. 20, 2005), and consider "'(1) the degree of fault of the party who altered or destroyed the

6    evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser

7    sanction that will avoid substantial unfairness to the opposing party and, where the offending party is

8    seriously at fault, will serve to deter such conduct by others in the future.'"   *Id.* (citation omitted).

9    Courts have rejected requests for an adverse inference instruction, even where the three-part test has

10   been satisfied, where the degree of fault and level of prejudice do not justify the remedy.   *Id.*, at *6-9.

11        **B.    Apple's Motion Misstates And Distorts The Facts**

12        As it did in the ITC, Apple calls out some 30 of the hundreds of witnesses in this case and

13   speculates that they may have destroyed evidence.   Upon closer examination, however, it is clear that

14   Apple's speculation is just that; Apple offers no proof, indeed no actual evidence, establishing that

15   any of them destroyed anything relevant to this case, much less that they did so as part of a scheme

16   perpetrated by Samsung to prejudice Apple.

17        **1.    Apple Fails to Establish Intentional Destruction of Emails Concerning the
             Design and Development of the Accused Products**

18

19        As to each of the six custodians Apple highlights on pages 4 through 6 of its motion, the

20   evidence refutes Apple's speculation that relevant evidence was improperly destroyed:

21        •    Won Pyo Hong.   Dr. Hong is an Executive Vice President and the head of Global
             Product Strategy for Samsung Mobile Communications Division.   (Watson Decl., Ex.

22           6 (4/19/12 Won Pyo Hong Tr. 10:16-20, 15:10-14).)   Dr. Hong has never worked as a
             product designer for Samsung, and was not the designer of any of the accused

23           products.   (Declaration of Won Pyo Hong, ¶ 4.)   Apple did not ask a single question
             of Dr. Hong concerning the steps he took to preserve documents.   Dr. Hong

24           confirmed he did not intentionally destroy any relevant emails.   (Won Pyo Hong
             Decl., ¶ 6). Apple cites three emails that Dr. Hong purportedly did not preserve

25           mentioning an Apple product.   Two of these emails pre-date Apple's complaint, and

26   ─────────────────────
     [12]   *Brodle*, 2011 WL 4913657 at *5; *IO Group, Inc. v. GLBT Ltd.*, 2011 WL 4974337 at *8 (N.D.

27   Cal. Oct. 19, 2011) (noting that party seeking adverse inference must demonstrate the three elements
     required to obtain an adverse inference); *Dong Ah Tire & Rubber Co., Ltd v. Glasforms, Inc.*, 2008

28   WL 4298331, at *4 (N.D. Cal. Sept. 19, 2008) (same).

─────────────────────

were therefore not subject to any duty to preserve.   (E. Kim Decl., Ex. 2; Ex. 8 at 1.)
The third document is a routine benchmarking document analyzing both HTC and
Apple products.   (E. Kim Decl., Ex. 8 at 2.)   When asked why Samsung makes
product comparisons, Dr. Hong testified that Samsung does not intend to copy
competitor product offerings, but instead looks at all competitors (not just Apple) "to
make sure our product is – better deliver functions, performance, and also hopefully
better cost."   (*Id.* at 58:21-61:1.)   The allegedly destroyed document is not at all
probative of copying, the subject of Apple's requested instruction.[13]

• <u>MinHyouk Lee</u>.   Mr. Lee is a Vice President in Samsung's Product Design Group
who worked on the design of the Galaxy S products.   (Watson Decl., Ex. 7 (3/2/12
MinHyouk Lee Tr. 7:7-11:8, 21:1-18).)   Mr. Lee testified that he *automatically* saves
his emails as part of his work, preserved them in compliance with the litigation hold
notice, and did not delete any emails after receiving the notice.   (Watson Decl., Ex. 8
(3/3/13 MinHyouk Lee ITC Tr. 82:2-83:16, 86:13-88:18, 87:7-12, 88:10-18 ).)   Mr.
Lee's work on the accused Galaxy S products ended no later than the release date of
each product, between June 2010 and February 2011 – months before any obligation to
preserve arose.   (Watson Decl., Ex. 9 .)   Not surprisingly, Apple identifies just one
email that Mr. Lee allegedly failed to preserve; this email predates Apple's complaint
by several months.   (E. Kim Decl., Ex 8 at 1.)

• <u>Joon-Il Choi</u>.   Mr. Choi is a Senior Manager of Samsung's R&D Development
Management Group.   (Watson Decl., Ex. 10 (3/8/12 Joon-Il Choi Tr. (N.D. Cal.)
6:21, 10:15-17).)   He testified during his ITC deposition that he has used Outlook to
save all his emails since late 2010 or early 2011.   (Watson Decl., Ex. 11 (3/20/12 Joon
Il Choi ITC Tr. 33:21-35:24.).)   Apple cites just one email that Mr. Choi allegedly
failed to preserve.   (E. Kim Decl., Ex. 3.)   However, Samsung produced a copy of
this email sourced to Mr. Choi.   (Binder Dec., ¶ 11, Ex. 1) The email is not evidence
of copying any patented Apple features, the subject of Apple's requested instruction.[14]

• <u>Don-Joo Lee</u>.   Mr. Lee is the Executive Vice President of Global Sales and Marketing
at SEC's Mobile Communications Division.   (Watson Decl., Ex. 12 (2/17/12 Don Joo
Lee Tr. (ITC) 9:3-5).)   As with Dr. Hong, Mr. Lee is not involved in the design and
development of Samsung products.   (*Id.* at 16:7-15, 17:14-23.)   Apple did not ask a
single question of Mr. Lee concerning the steps he took to preserve documents.
Apple cites just four emails as evidence that Mr. Lee failed to preserve documents,
ignoring the fact that these emails are dated well before Samsung's obligation to
preserve evidence arose.   (E. Kim Decl., Ex. 4 (email dated 3/29/11); Ex. 5 (dated
1/12/11); Ex. 8 (emails dated 3/8/11 and 3/11/11).)[15]   Furthermore, Mr. Lee is not
involved in the design and development of Samsung products.   (Ex. 12, Lee Dep. at

---

[13]   Mr. Hong received a litigation hold on May 24, 2011.   (Watson Decl., Ex. 33 at Ex. S.)   Mr.
Hong had previously been mistakenly identified as having received a litigation hold notice in August
2010.   Mr. Hong did not receive the August 2010 notice.

[14]   In any event, Mr. Choi did in fact preserve this email.   Due to a processing error, some of Mr.
Choi's emails were not included in his initial custodial production.   (Declaration of Raymond Warren
at ¶¶ 4-5.)   This error has since been corrected.   (*Id.*)   This email was part of the supplemental
production.   (Binder Decl., Ex. 1.)

[15]   Mr. Lee received a litigation hold on May 24, 2011.   (Watson Decl. Ex. 33 at Ex. S.)   Mr. Lee
had previously been mistakenly identified as having received a litigation hold notice in August 2010.
Mr. Lee did not receive the August 2010 notice.

16:7-15, 17:14-23.)   It is very unlikely that Mr. Lee would possess any documents regarding to the design decisions underlying Apple's willful infringement claim.

- **Ioi Lam.**   Ioi Lam is a Software Engineer for STA.   (Watson Decl., Ex. 13 (3/8/12 Ioi Lam Tr. 6:20-21, 8:2-8).)   Mr. Lam was deposed about Samsung's bounce and double-tap to zoom effects for the browser that is accused as infringing Apple's patents-in-suit.   Samsung was already shipping products that incorporated the accused bounce and double-tap to zoom effects before the duty to preserve attached—*i.e.,* the accused Galaxy Tab 7.0, which was released in the United States on May 3, 2011. (Watson Dec., Ex. 9 at .)   As an employee of STA, during all relevant time periods, Mr. Lam used Outlook and did not use mySingle for his email and all of his emails were preserved.   (Lam Decl. ¶ 5.)   Apple's spoliation claim regarding Mr. Lam is focused solely on two emails that Samsung produced from a different custodian that listed Mr. Lam as a sender or recipient that were not also produced listing Mr. Lam as a custodian.   (Mot. at 5.)   In fact, these emails were mistakenly de-duplicated against emails from his colleagues. (Jenkins Dec., ¶ 15.)   These emails were not only produced by Samsung, but they also been retained by Mr. Lam.

- **Nara Cho.**   Mr. Cho is a Senior Manager for Samsung's wireless business division. (Watson Decl., Ex. 14 (1/14/12 Nara Cho Tr. 6:20-9:21).)   Mr. Cho was never questioned about what he did to preserve documents.   With respect to Mr. Cho's purported failure to produce documents concerning the Galaxy Tab 10.1, Mr. Cho testified that he did not have any input into the industrial design of Samsung's tablet products, and that his day-to-day job responsibilities at Samsung are to simply "define the functions [of the tablets] in consultation with development teams."   (*Id.* at 6:20-9:21, 7:23-8:5, 12:12-23.)   Apple deposed multiple witnesses who, unlike Mr. Cho, were involved with the design of the Galaxy 10.1 tablet, and who produced hundreds or thousands of emails.   (*See, e.g.*, Watson Decl., Ex. 15 (1/14/12 Junho Park N.D. Cal. Dep. Tr. at 24:20-25); Binder Decl., ¶ 14 (2,358 emails produced from Junho Park).)

**2.   The Charts Set Forth In Paragraph 4 and Exhibit 8 of the Esther Kim Declaration Do Not Support the Conclusion That Samsung Spoliated Evidence**

As it did in the ITC, Apple attempts to prove spoliation by calling out – here, in Paragraph 4 and Exhibit 8 of the Esther Kim Declaration – witnesses who it claims did not produce as many emails as they expected.   Again, what it fails to point out is that many of these witnesses worked on products whose development were completed before Apple filed its Complaint, and before Samsung had an obligation to preserve evidence; and that in all events, Apple received voluminous evidence on the design-related topics related to their work.

*Touchscreen Witnesses* (Dong Sub Kim and Jong Dae Park) – The touchscreen controller and touchscreen panel hardware is implicated by three Apple patents – the '607 patent, the '129 patent, and the '828 patent.   Only a single claim of the '607 patent is still being asserted in this lawsuit.

1  (Dkt. 902.)   Further, the primary investigation, design and development of the accused touchscreen

2  controller and panel, the features relevant to the '129 and '828 patents, occurred in 2008 and 2009.

3  (Watson Decl., Ex. 16, 2/29/12 Heon-Seok Lee Dep. Tr. 82:13-88:13.)   Only one product accused of

4  infringing the '607 patent, the Galaxy Tab 10.1, was released after the start of this lawsuit.   The touch

5  sensor IC for the Tab 10.1, however, received final approval no later than February 25, 2011,   (*Id.* at

6  55:24-57:8; Ex. 17; Jong-Dae Park Decl. ¶ 6.) – before Samsung had a duty to preserve documents.

7  (*Id.*)   And Dong Sub Kim, who is called out for not producing enough emails on this subject,

8  specifically testified that the decision to move to a capacitive touchscreen from a resistive touchscreen

9  (which Apple claims Samsung copied), was made before he arrived in the visual lab group.   (Watson

10  Decl., Ex. 18, 2/28/12 Dong Sub Kim Tr. 18:3-21, 31:21-32:13.)

11       *Design Witnesses* (Hangil Song, Hyoung Shin Park, and Seogguen Kim) –   Both Mr. Song

12  and Ms. Park worked on products that were completed before the filing of the complaint.   (Watson

13  Decl., Ex. 19, 2/8/2012 Hangil Song ITC Tr. 14:13-21, 16:15-17:13, 18:1-16, 23:4-24:11; Ex. 20,

14  2/29/2012 Hyoung Shin Park Tr. 62:7-63:11.)   In addition to the fact that Mr. Kim received a timely

15  litigation hold notice for this case (Watson Decl., Ex. 33 at Ex. S.), Apple has presented no evidence

16  that Mr. Kim has deleted any responsive emails.   Moreover, emails that were sent to or received from

17  each of the design witnesses were produced from the custodial files of other Samsung witnesses (E.

18  Kim Decl., Ex. 8; Binder Decl. ¶ 19.)

19       *R&D Witness* (Seunghwan Cho) –   Mr. Cho is the Executive Vice President of the Advanced

20  Software R&D Team 2.   (Watson Decl., Ex. 21, 4/19/2012 Seunghwan Cho Tr. at 8:1-8.) His work

21  on the hardware for the Galaxy S phone was completed prior to the filing of the complaint.   (*Id.* at

22  15:25-17:10.)   Apple sought no information on document retention or destruction during Mr. Cho's

23  deposition.   As an EVP, Mr. Cho does not have regular, direct knowledge about the design of the

24  accused hardware or software.   Apple obtained discovery from at least 10 hardware designers who

25  have more direct knowledge as to these issues, and at least 12 other witnesses who would have more

26  direct knowledge about the User Experience (UX) issues.   (Binder Decl., ¶¶ 15-16.)

27       *Licensing / Negotiation Witness* (YoungSoon Lee) – YoungSoon Lee, who Apple calls out for

28  not producing emails, is a Senior Engineer in Samsung's Intellectual Property Center who works at

1    the direction of attorneys and communicates with them through email.   (Declaration of YoungSoon

2    Lee, ¶ 5.)   Ms. Lee attended a single meeting with Apple in the fall of 2010 concerning utility

3    patents.   (Watson Decl., Ex. 25 (2/7/2012 YoungSoon Lee Tr.) 11:12-14:6, 16:2-8, 23:17-21, 22:2-

4    26:10.)   Ms. Lee testified that she was not involved with any other meetings with Apple and has no

5    non-privileged knowledge of any licensing discussions with Apple.   (*Id.* at 30:7-47:12.)

6           *User Experience Witness* (Sungsik Lee) – Mr. Lee was a principal designer in the UX team for

7    the Galaxy S and Galaxy Tab, (Watson Decl. Ex. 22, 3/1/12 SungSik Lee Tr. at 9:7-12; 25:17-18),

8    from 2009 until he was promoted to vice president in December 2010, (*id.* at 30:18-21).   Any

9    documents relating to Mr. Lee's work as a principal designer would pre-date Samsung's preservation

10   obligation.   Moreover, Mr. Lee testified about an email he wrote ***that was produced*** that "[t]he point

11   is not to create the same UX as that of the iPhone, but, rather, to learn from the iPhone's wisdom and

12   to acknowledge the industry standard…."   (*Id.* at 65:15-23.)   Apple did not question Mr. Lee about

13   document destruction or preservation during his deposition.

14          *Witnesses Listed in Exhibit 8* – Additionally, buried in Apple's submission is overreaching

15   speculation that witnesses spoliated evidence simply because Apple did not receive multiple copies of

16   the same email from every possible custodian.   (*See* E. Kim Decl., Ex. 8.)   Apple goes as far as to

17   suggest that President Jong Kyun Shin – a witness that the Court has already recognized is irrelevant

18   to this case since he did not have a "personal role [in] strategic design decision[s]" that would even

19   warrant a deposition (Dkt. 850 at 9) – purposely destroyed evidence.   Apple's claim is without merit.

20   Apple has failed to demonstrate that any of them destroyed evidence with a culpable state of mind.

21   (*See* Watson Decl., Ex. 4.)

22          **C.**     **Apple Fails to Establish Any of the Legal Elements it Must Prove to Establish**
                       **Spoliation**

23

24          **1.**     **Apple Has Failed to Establish that Samsung Destroyed Email Evidence It**
                       **Had an Obligation to Preserve**

25          Apple must prove that Samsung had an obligation to preserve the disputed evidence "*at the*

26   *time*" it was allegedly destroyed.   In this case, as Apple admits (Mot. at 10), that time was *after* April

27

28

15, 2011, when Apple filed its complaint in this action.[16]  Yet Apple makes no effort in its motion to limit either its allegations, or the sanctions it seeks, to documents allegedly destroyed after this date, which is especially significant because of how many of the accused products at issue here were released prior to April 2011.  (Watson Decl., Ex. 9.)  Instead, following the rejected arguments raised in the ITC, Apple's attack is directed to Samsung's pre-existing and long-established electronic data preservation policy.

As the Supreme Court has noted, "[d]ocument retention policies, which are created in part to keep certain information from getting into the hands of others, including the Government, are common in business.   It is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances."  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005) (quotations and internal citations omitted).[17]  "*Thus, a party can only be sanctioned for destroying evidence if it had a duty to preserve it.*'"  *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (emphasis added).

The mySingle system was adopted for legitimate business purposes more than a decade before this complaint was filed.  Apple offers no evidence that Samsung's use of the mySingle email program was anything other than its typical document retention policy, instituted under ordinary

---

[16]  Apple seeks to penalize Samsung for its voluntary decision to send out a limited litigation hold notice to certain employees when it began general licensing discussions with Apple in 2010, turning Samsung's positive efforts – not followed by Apple itself – against it.   The law makes clear that the duty to preserve at issue here was not triggered until Apple filed its precise claims.  *See, e.g., FTC v. Lights of America Inc.*, 2012 WL 695008, at *3 (C.D. Cal. Jan. 20, 2012) (holding that FTC had no duty to preserve based on institution of investigation or upon issuance of a civil investigative demand because litigation at that point was neither "probable" or "more than a possibility") (citing *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 524 (N.D. Cal. 2009)).

[17]  *See Gonzalez v. Las Vegas Metropolitan Police Department*, 2012 WL 1118949, at *6 (D. Nev. Apr. 2, 2012) (citing *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009)( "The Ninth Circuit has held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business."). *See also Carderella v. Napolitano*, 2012 WL 767311, at *1 (9th Cir. Mar. 12, 2012); *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002); *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005); *Coburn v. PN II, Inc.*, 2010 WL 3895764, at *3 (D. Nev. Sept. 30, 2010) ("The destruction of emails as part of a regular good-faith function of a software application may not be sanctioned absent exceptional circumstances").  "A legitimate consequence of a document retention policy is that relevant information may be kept out of the hands of adverse parties."  *Hynix Semiconductor, Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006) (*rev'd on other grounds*, 645 F.3d 1336 (Fed. Cir. 2011) (holding, *inter alia*, that the district court erred in applying the standard on reasonable foreseeability)).

1    circumstances for business purposes.   Samsung's expert Mr. Daley confirms that "[a]utomatic

2    document destruction technologies, based upon date sent, are a standard feature of most email

3    systems" and that "it is reasonable to use automated email managers to help administer a company's

4    overall records management program, notwithstanding the existence of legal holds, provided that

5    employees are given notice of the legal hold, and the ability to manually preserve relevant information

6    in a separate location."   (Daley Decl., ¶ 11-12)   The ITC ALJ agreed the auto-delete function was

7    "permissible."   (Watson Decl., Ex. 1 (Order No. 19, at 6).)

8            Apple misleadingly asserts that the mere failure to suspend the automatic delete function in

9    mySingle by itself constitutes spoliation.   (Mot. at 10 (citing *Zubulake IV*).)   But *Zubulake* held

10   nothing of the sort.   As the parenthetical Apple quotes makes clear, it was *the failure to implement a*

11   *litigation hold*, in addition to the failure to suspend the routine retention/destruction policy, that the

12   Court found to give rise to a spoliation finding.   220 F.R.D. at 218.   Similarly, in *IO Group*, the

13   "Defendants did not suspend the automatic deletion function until July 2011, *over a year* after the

14   lawsuit was filed."   2011 WL 4974337, at *7 (emphasis in original).   Apple cites no case where a

15   party that timely implements a litigation hold, as Samsung did here,[18] has been sanctioned for

16   spoliation merely because it failed to suspend its routine policy for retention of electronic evidence.

17   *FTC*, 2012 WL 695008 at *5 (rejecting argument that FTC's 45-day auto-delete policy gives rise to

18   spoliation, and noting "[t]he auto-delete system is a function of the computer information system's

19   finite storage capacity and the desire to avoid needless retention of documents, which slows the

20   system").

21           Apple's only other argument is that Samsung must have destroyed evidence because of the

22   limited number of emails produced by individual Samsung custodians.   (Mot. at 11.)   But as

23   Samsung has explained above, there are legitimate reasons why the custodians Apple has identified

24

25   [18]    The short delay between the filing of the complaint on April 15, the drafting of the hold notice on
     April 21, and its transmission to the various custodians from April 22 to May 3 (as detailed in the
26   amended disclosures served by Samsung) does not affect the analysis or give rise to spoliation.
     Otherwise, Apple would also be deficient in its efforts, having not sent a single hold notice until April
27   29, 2011.   (Binder Decl. Exs. 2-3.)   There is no evidence – and Apple does not call out any – that
     any relevant documents were destroyed in that intervening period, much less that they were destroyed
28   intentionally, causing Apple the sort of prejudice that would justify the inferences it seeks.

1    would not have a greater number of relevant emails to produce.   In any case, a party's "protest that, in

2    essence, it should have received more emails from a specific time period, is insufficient to support a

3    claim that [its opponent] intentionally destroyed relevant evidence to be gained from the emails."

4    *Coburn*, 2010 WL 3895764, at *6; *see also Kinnally v. Rogers Corp.*, 2008 WL 4850116, at *6 (D.

5    Ariz. Nov. 7, 2008) (spoliation cannot be shown based on "a mere lack of production").   Indeed, even

6    in the *absence* of a litigation hold, "[m]ere speculation that documents must have been destroyed in

7    the absence of a litigation hold is insufficient to show spoliation."   *FTC*, 2012 WL 695008, at *4

8    (finding no spoliation where custodians who did not receive hold notice confirmed "that they took

9    measures to preserve all relevant emails related to this case" including storing emails in archive

10   folder).   It is not enough for Apple to claim that unproduced emails "must have existed" absent any

11   additional showing that they in fact existed and were discarded.   *Dong Ah Tire & Rubber Co., Ltd. v.*

12   *Glasforms, Inc*, 2009 WL 1949124, at *7 (N.D. Cal. July 2, 2009).

13             If spoliation were a simple numbers game, then Apple itself would be guilty.   Apple produced

14   just a handful of emails from key witnesses, notwithstanding their testimony that they frequently use

15   email as part of their work.   (Binder Decl., ¶ 20.)   For instance, focusing just on the Apple's named

16   inventors, Apple produced:

17             •        only 14 emails from the custodial files of Bartley Andre;

18             •        only 18 emails, and 94 documents total, from the custodial files of Shin Nishibori;

19             •        only 15 emails, and 62 documents total, from the custodial files of Rico Zorkendorfer;

              •        only 15 emails, and 38 documents total, from the custodial files of Chris Stringer;

20            •        only 32 emails from the custodial files of Matthew Rohrbach;

21            •        only 36 emails from the custodial files of Eugene Whang; and

22            •        only 45 emails from the custodial files of Jonathan Ive.   (*Id.*)[19]

23             The same flaws infect Apple's claim that emails were destroyed because certain emails were

24   [19]   Despite claiming that Samsung was under a duty to preserve documents no later than the instant

25   Apple filed its complaint, Apple lagged in sending litigation hold notices to relevant witnesses.   Four

     Apple design witnesses did not receive litigation hold notices until January 11, 2012.   (Binder Decl.

26   at ¶25, Exs. 2 and 3.)   One inventor, Brian Huppi, did not receive a notice at all until February 23,

     2012.   (*Id.*)   In fact, Apple did not complete delivery of over a quarter of its litigation hold notices

27   until after January 30, 2012 (*Id.* at ¶27.)   Steve Jobs, a named inventor on 8 patents, never received a

     hold notice.   (*Id.* at ¶24.)   This problem exists with respect to other witnesses, not just named

28   inventors.   Despite identifying numerous individual in their initial disclosures, Apple did not instruct

     them to preserve documents until September, December, and in some cases January 2012.   (*Id.* ¶ 29.)

not produced from multiple sources. (Mot. at 6 (citing Ex. 8 to E. Kim Decl.))   In particular, Apple points to fourteen emails sent or received by a particular custodian which were not produced from that custodian's files.   By that measure, Apple has engaged in spoliation on a far wider scale than anything alleged against Samsung.   Again, focusing only on Apple's inventors, Apple produced

- 2,028 emails listing Stephan Lemay as sender or recipient, compared to just 40 emails from Mr. Lemay's custodial files.

- 2,042 emails listing former CEO Steve Jobs as sender or recipient, compared to just 51 emails from Mr. Jobs' custodial files.   Mr. Jobs did not receive a litigation hold notice;

- 1,676 emails listing Scott Forstall as sender or recipient, compared to just 172 emails from Mr. Forstall's custodial files, and Mr. Forstall did not receive a litigation hold notice until June 28, 2011; and

- 759 emails listing lead designer Jonathan Ive as sender or recipient, compared to just 45 emails from Mr. Ive's custodial files.

(Binder Decl., ¶¶ 21, Exs. 2 and 3.)[20]

As ITC Judge Pender recognized, "finding spoliation requires some specific proof of spoliation, not mere speculation or arguments framed in terms of generalities."   (Watson Decl., Ex. 1 at 5.)   This Court should reject Apple's efforts to establish "spoliation" and secure adverse inferences where its motion is based on a pre-existing and reasonable document retention program, and is not limited, as it must be, to the failure to retain documents after April 15, 2011 when Apple filed its complaint.   *See Strom v. City of Crescent City*, 2010 WL 2231799, at *4 (N.D. Cal. June 1, 2010) (no adverse inference where party failed to provide any evidence that data was destroyed after the defendant had notice of the litigation); *Cacace v. Meyer Marketing*, 2011 WL 1833338, at *5 (S.D.N.Y. May 12, 2011) (sanctions denied where "plaintiffs have not identified any relevant documents that were lost, destroyed, or significantly altered after defendants' duty to preserve arose in March 2006").

---

[20]   Apple's attempt to prove spoliation based on emails actually produced not only is inconsistent with its own actions, but more importantly is fundamentally flawed as a legal matter.   Spoliation requires proof that "'*unique,* relevant evidence'" subject to a preservation obligation was destroyed. *Perez v. Vezer Industrial Professional, Inc.*, 2011 WL 5975854, at *6 (E.D. Cal. 2011) (emphasis added) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)).   Emails that have been produced by other custodians are not "unique."

## 2.   Apple Cannot Establish That Samsung Destroyed Evidence With A Culpable State Of Mind

Apple asks this Court to instruct the jury that "Samsung acted in bad faith in failing to preserve the relevant documents," and that any infringement can, based on alleged spoliation, be considered "intentional" and "willful."  (Mot. at 15).  Yet Apple then proceeds to argue that – notwithstanding the absolute clarity of the inferences it seeks – it need only prove that Samsung was negligent.

Apple does not cite a single Ninth Circuit case (nor can Samsung locate any) that has affirmed the imposition of an adverse inference instruction where a party was found to have acted only negligently.  Instead, the Ninth Circuit has made clear that, while bad faith may not be required to support an adverse inference remedy, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993), "[a] party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant."  *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (reversing adverse inference ruling where plaintiffs failed to show "any bad faith in the destruction of the records, nor even that the government was on notice that the records had potential relevance to the litigation" and noting no intent to cover up information).  Similarly, the Ninth Circuit in *State of Idaho* reversed a $50,000 discovery sanction for spoliation where there was no indication that the party "intentionally destroyed records with knowledge that those records were relevant to this litigation."  425 F.3d at 720.[21]  The Ninth Circuit also has clearly explained that an adverse inference is not appropriate "[w]hen relevant evidence is lost accidentally or for an innocent reason."  *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc*, 306 F.3d 806, 824 (9th Cir. 2002) (affirming district court rejection of inference based on "the absence of bad faith or intentional conduct by Defendants").  *See also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 470-71 (S.D.N.Y. 2010) (willfulness or bad faith required to deem facts admitted and willfulness or recklessness required to impose a rebuttable mandatory presumption).[22]  In short, the Ninth Circuit has never upheld an adverse inference instruction where a

---

[21]   *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir. 1985), cited by Apple on page 9 of its motion for the proposition that negligence is sufficient to warrant sanctions under Federal Rule of Civil Procedure 37, did not involve an adverse inference remedy, and in any event, as discussed in footnote 20, *infra*, there is no basis for finding a violation of Rule 37 here.

[22]   In *IO Group*, relied upon by Apple, the Court found that the "Defendants' conduct amounts to

1   party "should have known" destroyed evidence might be relevant, but did not in fact know that to be

2   the case.[23]

3        Moreover, to give the particular "bad faith" instruction that Apple is actually seeking, the

4   district court must find that the spoliating party "'intended to impair the ability of the potential

5   defendant to defend itself.'"   *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir.

6   2011) (reversing and instructing that "[o]n remand, the district court should limit its bad faith analysis

7   to the proper inquiry") (citations omitted).   "The fundamental element of bad faith spoliation is

8   advantage-seeking behavior by the party with superior access to information necessary for the proper

9   administration of justice."   *Id.*[24]   Apple offers no evidence of any such behavior.   Its reliance on

10  prior Samsung cases, as noted earlier, is contradicted by the facts and holdings of those cases: in

11  *MOSAID*, no litigation hold notice was issued.   *MOSAID Tech. Inc. v. Samsung Elecs. Co., Ltd.*, 348

12  F. Supp. 2d 332, 333-34 (D.N.J. 2004).   In *Fractus*, the court explicitly *rejected* the request for an

13  adverse inference.   (Watson Decl., Ex. 31 (*Fractus v. Samsung Elecs. Co., Ltd.*, Case No. 6:09-cv-

14  203-LED, Hearing Tr. at 99:13-100:15)).   Apple's reliance on a press release from Korea's Fair

15  Trade Commission asks this Court to rely on rank hearsay in an unauthenticated document that is

16  inherently one-sided.   Given Apple's willingness to rely on such sources, it is unsurprising that Apple

17  omits key facts.   ==Apple repeatedly quotes language about the "files containing Korean roadmap==

18  ==iPhone countermeasure" in the KFTC press release as though it relates to this case; but the KFTC==

19

___

20  willfulness" before imposing an adverse inference instruction.   2011 WL 4974337 at *8.   *See also World Courier v. Barone*, 2007 WL 1119196, at * 1, 2 (N.D. Cal. April 16, 2007) (defendant's
21  admitted destruction of hard drive was "at least negligent, and *more likely knowingly willful*") (emphasis added).
22  [23]   *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991) (attorneys fees as sanctions are appropriate where "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons");
23  *Rimkus Consulting*, 688 F. Supp. 2d at 615 ("the Supreme Court's decision in *Chambers* may also require a degree of culpability greater than negligence").
24  [24]   *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 644 (7th Cir. 2008) ("A document is destroyed in bad faith if it is destroyed 'for the purpose of hiding adverse information.'"); *In re Hechinger Inv. Co.*
25  *of Del., Inc.,* 489 F.3d 568, 579 (3d Cir. 2007) (noting that bad faith requires a showing that the litigant "intentionally destroyed documents that it knew would be important or useful to [its opponent]
26  in defending against [the] action"); *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 925 (1st Cir.1988) (finding bad faith "where concealment was knowing and purposeful," or where a party "intentionally
27  shred[s] documents in order to stymie the opposition"); *Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 96 (3d Cir. 1983) (noting that an adverse inference from destruction of documents is permitted only
28  when the destruction was "intentional, and indicates fraud and a desire to suppress the truth").

investigation involved cell phone pricing in Korea, not any form of alleged infringement of intellectual property rights or any other issue in this case.  (Declaration of Heontae Son, ¶¶ 7-8.) Apple also misleadingly portrays the alleged conduct in the KFTC investigation as related to the conduct Apple contends supports it motion, but the KFTC investigation did not involve the destruction of emails or the mySingle system.  (*Id.* ¶ 9.)

"'The obligation to preserve electronic data and documents requires reasonable and good faith efforts to retain information that may be relevant to pending or threatened litigation.  However, it is unreasonable to expect parties to take every conceivable step to preserve all potentially relevant data.'"  *Consol. Aluminum*, 244 F.R.D. at 345 n.18.  In *Consolidated Aluminum*, for example, the defendant did not suspend its routine "destruction policy until two and a half (2 1/2) years after sending its demand letter" to the plaintiff and "approximately twenty (20) months after [the plaintiff] filed" its action.  244 F.R.D. at 342.  At the time of its demand letter, defendant only instructed four employees to preserve emails.  *Id.* at 344-45.  Even after the plaintiff filed its complaint, the defendant did not expand the number of employees who were instructed to preserve e-mails, including eleven critical employees whose electronic data were lost.  *Id.* at 342, 345.

Nonetheless, the court held that the plaintiff had failed to demonstrate the defendant intentionally destroyed evidence, noting that: (1) the defendant instructed key personnel to preserve documents; (2) the defendant produced emails from personnel who had preserved data that would have otherwise been destroyed by the routine destruction policy; and (3) some of the evidence the plaintiff sought would have been destroyed before the litigation became foreseeable.  *Consol. Aluminum*, 244 at 345, n. 20, 21.  "At most," the court found, "[the plaintiff] has shown that [the defendant] negligently failed to preserve emails, which might have had some relevance to this lawsuit, by failing to timely inform employees of their duty to preserve."  *Id.* at 346.  The request for an adverse inference was denied.  *Id.* at 347.[25]

---

[25]   *See also Denim North America Holdings, LLC v. Swift Textiles, LLC*, 816 F. Supp. 2d 1308, 1328-29 (M.D. Ga. 2011) (plaintiff routinely destroyed emails shortly after they were received and did not change its policy after litigation became reasonably foreseeable but "generally kept the e-mails he thought were important"; no adverse inference because  destruction of evidence "as part of a routine practice (or even haphazardly)" does not amount to bad faith or intentional destruction.) *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630, 635 (D. Colo. 2007) (no adverse

1    In *Kinnally*, *supra*, the court explicitly addressed the cases repeatedly cited by Apple both in

2    the ITC and in support of this motion:

> In cases where courts have found spoliation, there was a clear showing of destruction of evidence.   In *Napster*, 462 F. Supp. 2d at 1066, there was evidence of an explicit destruction policy that was not suspended, resulting in unquestionable destruction of relevant email evidence.   In *Zubulake*, 220 F.R.D. at 220, defendant expressly acknowledged that backup tapes under their control and containing relevant evidence were missing.   In *National Ass'n of Radiation Survivors*, 155 F.R.D. 543, 557 (N.D. Cal. 1987) (sic (*see* 115 F.R.D. 543, 557 (N.D. Cal. 1987)), there were "no questions that relevant documents were destroyed and are not permanently lost."   The district court in *Residential Funding*, 306 F.3d at 110, originally held that "purposely sluggish" behavior was enough to warrant an adverse inference instruction due to spoliation.   The Second Circuit held that the district court applied the wrong standard because "the evidence at issue was apparently not destroyed, but merely not timely produced."   *Id.* at 112.

10   2008 WL 4850116, at *6.

11    Here, Apple has not made "a clear showing of destruction of evidence" much less one

12   supported by a conscious policy decision by the Company to seek a litigation advantage by flouting its

13   own preservation rules.   Its complaints that Samsung might have "done more" by is insufficient as a

14   matter of law to establish "bad faith."[26]

15

16   inference even though a party failed to suspend its "routine practice of wiping clean the computer hard drives of former employees" because no bad faith);   *ACORN v. County of Nassau*, 2009 WL 605859, at *4 (E.D.N.Y. Mar. 9, 2009) (loss of emails resulting from failure to instruct systems personnel to suspend routine destruction of emails and other electronic data "at most, negligent"); *Poux v. County of Suffolk*, 2012 WL 1020302, at *20 (E.D.N.Y. Mar. 23, 2012) (evidence established at most that failure to preserve electronic data due to normal recycling of tapes was negligent); *Twitty v. Salius*, 455 Fed. App'x. 97, 99-100 (2d Cir. 2012) (no sanctions where destruction at most negligent and no showing of prejudice); *Sampson v. City of Cambridge, Md.,* 251 F.R.D. 172, 182 (D. Md. 2008) (denying sanctions where defendant's efforts to retain documents, while "not exemplary" did "not rise to the level of bad faith"); *Pinstripe, Inc. v. Manpower, Inc.*, 2009 WL 2252131, at *3-4 (N.D. Okla. July 29, 2009) (no adverse inference even though party failed to issue litigation hold drafted by counsel and failed to monitor compliance with the oral instructions given to party managers); *Cacace*, 2011 WL 1833338, at *4 (no sanctions where archived email folder accidentally deleted from email servers).

[26]    Apple speculates without any evidence that "some emails that were destroyed were likely subject to the Court's September 28, 2011, December 22, 2011, and January 15, 2012, discovery orders" (Mot. at 12 n.7) and that Samsung should also be sanctioned under Federal Rule of Civil Procedure 37.   This is hardly the "clear and convincing evidence" required to support an award of sanctions. *Coburn*, 2010 WL 3895764, at *3.   Apple does not explain which portion of these orders was violated, let alone provide a basis for asserting that evidence within the scope of those orders was destroyed after those orders were issued.   Nor does Apple even attempt to explain how the inferences it seeks as a sanction relate to the claims that were at issue in those Orders.    *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107 (1982) (sanctions under Rule 37(b)(2) must be "just" and "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery").

3.     <u>**Apple Has Not Shown That Any Documents Destroyed After The Filing Of The Complaint Were Relevant To Its Claims**</u>

The third element which Apple must establish is that the destroyed evidence was relevant to the party's claim or defense such that a reasonable fact finder could find that it would support that claim or defense.[27] "The duty to preserve evidence, once it attaches, does not extend beyond evidence that is relevant and material to the claims at issue in the litigation." *Hynix*, 591 F. Supp. 2d at 1067.

The Second Circuit case Apple relies on, *Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998), makes clear that the moving party must make "some showing indicating that the destroyed evidence would have been relevant to the contested issue." *Id*. at 127. "[W]here the moving party fails to 'provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to [the spoliator] or would have been relevant to the issues of this lawsuit,' spoliation sanctions are not warranted because the moving party relies on 'pure speculation as to the content of these materials." *Hamilton*, 2005 WL 3481423, at *8. "This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would have been harmful to him." *Consol. Aluminum Corp.*, 244 F.R.D. at 346 n.23. As the court explained in *Kullman v. New York*, "unsupported conjecture and speculation" that the missing evidence would have resembled the produced evidence "do not justify the issuance of an adverse inference instruction." 2012 WL 1142899, at *2 (N.D.N.Y. Apr. 4, 2012).[28]

Here, Apple simply points to a selection of what it calls "copying documents and emails" and claims that because "some emails that were not destroyed were relevant and favorable to Apple . . .

---

[27]     Apple is not entitled to any presumption of relevance. The *Hynix* case Apple cites for this addresses the question of prejudice once spoliation is shown, in the context of an unclean hands defense. 591 F. Supp. 2d at 1060. Nowhere does the court hold that a party seeking an adverse inference is relieved of its burden to establish relevance as an element of spoliation.

[28]     *See also ACORN*, 2009 WL 605859, at *5-6 (rejecting relevance arguments based on assertion that destroyed evidence would have been similar to 5 produced emails); *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 176 (S.D.N.Y. 2004) (denying adverse inference where substance of the deleted communication was only described in the most general terms); *Poux*, 2012 WL 1020302, at *20 (denying sanctions where moving party failed to show relevance); *Cacace*, 2011 WL 1833338, at *5 (sanctions denied where "plaintiffs have not identified any relevant documents that were lost, destroyed, or significantly altered after defendants' duty to preserve arose in March 2006").

1   the destroyed emails therefore also were likely relevant and favorable to Apple."  (Mot. at 13-14.)

2   That is hardly sufficient to satisfy Apple's burden to show relevance, especially where Apple is

3   seeking highly specific factual inferences, including that any infringement found by the jury "was

4   intentional, willful, and without regard to Apple's rights."

5   ### D. Apple Is Not Entitled To The Inferences It Seeks

6   Even if Apple had satisfied the minimum three requirements for an adverse inference

7   instruction, which it has not, the circumstances here do not justify the "harsh" inferences Apple seeks.

8   Any destruction of relevant evidence – and Apple has not shown any at all – would have been

9   inadvertent, meaning the "degree of fault" factor "weighs in favor of denying [Apple's] motion for

10   sanctions.  *Hamilton*, 2005 WL 3581423, at *7.

11   Consideration of prejudice also weighs against an adverse inference remedy.  "To be

12   actionable, the spoliation of evidence must damage the right of a party to bring an action."  *Gonzalez*,

13   2012 WL 1118949, at *6.  "The court's prejudice determination examines whether the spoliating

14   party's action impairs the non-spoliating party's ability to go to trial or threatens to interfere with the

15   rightful decision of the case."  *Id*.  Because Apple has not shown that Samsung acted willfully, "the

16   presumption of prejudice is not appropriate."  *Napster*, 462 F. Supp. 2d at 1076; *Perez*, 2011 WL

17   5975854, at *9.

18   Courts have rejected adverse inference instructions where a party failed to show how it had

19   been prejudiced by the allegedly missing evidence.  For example, in *Medical Laboratory*

20   *Management Consultants*, the Ninth Circuit affirmed the district court's refusal to give an adverse

21   inference instruction where there was other available evidence from which the plaintiff could prove its

22   claims.  306 F.3d at 825.  In *Gonzalez*, the court refused an adverse inference instruction where the

23   destruction of a surveillance tape did not prejudice the plaintiff, given defendants' concessions of

24   points the plaintiff sought to prove using the tapes.  2012 WL 1118949, at *8.  In *Hamilton*, the

25   court found insufficient plaintiff's showing of prejudice where the moving party failed to present

26   "actual evidence" in support of its position that the retained portion of a video that had been partially

27   destroyed was inaccurate, and given "other evidence available" showing the existing video was

28

1    accurate.   2005 WL 3481423, at *8.[29]

2              Apple has not offered "actual evidence" of the supposedly "extreme" prejudice it claims.

3    Mot. at 14.   Nor can it.   Samsung has produced at least twelve million pages of documents for use in

4    this case, including over 80,000 emails, gathered from over 380 Samsung employees.   This includes

5    over 70,000 pages of documents and emails from the very custodians Apple has identified here and on

6    the very topics addressed in this motion.   (Binder Decl., ¶18.)

7              Instead, Apple merely points to emails that *were produced* to claim that other similar emails

8    would have been helpful to its case.   But "the fact that these emails were available through other

9    sources lessens the likelihood of prejudice . . . ."   *FTC*, *supra*, 2012 WL 695008, at *5 n.8.[30]   "Both

10   the existence and potential prejudice of the alleged lost correspondence is speculative."   *Id*.

11   Wishful thinking as to what might have been, unsupported by either relevant testimony or other

12   evidence, cannot establish the sort of prejudice warranting the extreme inferences sought here, which

13   would relieve Apple of its obligation to prove its case.   Because Apple has not proffered any actual

14   evidence of prejudice, it is not entitled to an adverse inference remedy, even assuming it had

15   established the requirements for such an instruction, which it has not.[31]

16

17

18

19

20

21

22   _____

23   [29]   *See also Napster*, 462 F. Supp. 2d at 1075 ("The fact that a number of Hummer's Napster-related
     emails have been obtained by plaintiffs from other sources, furthermore, bears on the degree to which
24   plaintiffs have been prejudiced"); *Twitty*, 455 Fed. App'x at 97, 99-100 (holding that party suffered no
     prejudice since missing evidence would have been cumulative to evidence produced); *Healthcare
25   Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d. 627, 641 (E.D. Pa. 2007)
     (holding that party suffered no prejudice since it obtained relevant information); *Perez*, 2011 WL
26   5975854, at *9 (rejecting issue preclusion sanction "[g]iven the lack of deliberate, bad faith conduct . .
     . and demonstrable prejudice to plaintiffs").
     [30]   Indeed, as noted above, the production of these very emails negates a finding of spoliation in the
27   first instance.
     [31]   Because Apple has not shown that Samsung engaged in egregious conduct "any lesser sanction
28   would also be inappropriate."   *Hamilton*, 2005 WL 3481423, at *9.

DATED: May 29, 2012          Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Vicotria F. Maroulis*

Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG TELECOMMUNICATIONS AMERICA,
LLC