1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Cal. Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
8  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
9
   Michael T. Zeller (Cal. Bar No. 196417)
10 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100

13 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
14 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

15

16                    UNITED STATES DISTRICT COURT

17          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation,        | CASE NO. 11-cv-01846-LHK
19 |     Plaintiff,                               |
20 |     vs.                                      | **SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR CLARIFICATION REGARDING THE COURT'S MAY 4, 2012 ORDER**
21 | SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG
22 | ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG              | Date: June 19, 2012
                                                                              Time: 10:00 a.m.
23 | TELECOMMUNICATIONS AMERICA,                  | Place: Courtroom 5, 4th Floor
   | LLC, a Delaware limited liability company,   | Judge: Hon. Paul S. Grewal
24 |     Defendants.                              |
25

26

27                          **FILED UNDER SEAL**

28

## I. INTRODUCTION

Apple's Opposition to Samsung's Motion for Clarification makes one thing clear: it is Apple—not Samsung—that seeks to rewrite the Court's May 4, 2012 Order. The Order expressly permits Samsung to rely on "the versions of code produced on or before December 31, 2011." Apple simply ignores this aspect of the Order. Several versions of the source code produced by Samsung on or before December 31, 2011 included blue glow source code. Although Apple claims that Samsung "fails to establish" this fact, Apple does not deny it or provide any evidence that this fact is not true. Because this code was timely produced under the Court's December 22 Order, the Court should clarify that Samsung rely on this timely produced source code evidence of its design arounds to the '381 patent.

Furthermore, the Court should clarify that its May 4 Order is limited to source code and does not apply to other evidence of design arounds. As Apple would have it, Samsung would be precluded from using non-code design around evidence regardless of whether such evidence was subject to the December 31 source code production deadline, and regardless of whether it was timely produced. Apple's December motion to compel and the Court's December 22 Order and are directed to source code, and have nothing to do with non-source code evidence. The May 4 Order also says nothing of witness testimony, documentary evidence, or physical devices. Moreover, Apple claims that Samsung is precluded from using this evidence for any purpose—not just the purpose addressed by the parties in the briefing and hearing on Apple motion for sanctions—despite the complete lack of prejudice to Apple.

## II. ARGUMENT

### A. The Order Permits Samsung to Introduce Timely Produced Source Code as Evidence of Its Design-Around Efforts.

The May 4 Order permits Samsung to rely on "versions of code produced on or before December 31, 2011." (Dkt. No. 898 at 9.) At the same time, however, the Order precludes Samsung from "offering any evidence of its design-around efforts" for the '381 patent. (*Id.*) In light of the fact that Samsung's December 30 production of source code included blue glow source code, these two provisions of the Order cannot be reconciled. If Samsung is to rely on timely

produced source code, which the Order permits, it will necessary offer evidence of its design-around efforts for the '381 patent, which the Order purports to forbid.    Apple makes no attempt to reconcile these two provisions, and simply ignores the provision of the Order permitting Samsung to rely on timely produced code.    In so doing, Apple effectively concedes that clarification is necessary.

**Galaxy S II.**    Samsung produced source code for one variant of the Galaxy S II because Apple's Infringement Contentions and interrogatory responses failed to make any distinction between Galaxy S II variants with respect to the '381 patent.    (Reply Declaration of Mark Tung In Support of Samsung's Motion For Clarification ("Tung Reply Decl.") Exs. 1-2.)    Apple waited until March 8, 2012—the day fact discovery closed—to reveal that it accuses some Galaxy S II variants of infringing the '381 patent, but not others.    (Tung Reply Decl. Ex. 3.)    In any event, the source code for the T-Mobile edition of the Galaxy S II remains relevant to this case because Samsung seeks a declaration of non-infringement as to all products at issue in this litigation, including this product.    (Dkt. No. 80 at ¶¶ 116-119.)

**Exhibit 4G/Galaxy Tab 10.1.**    Apple does not *deny* that Samsung timely produced blue glow source code.    Instead, Apple makes carefully worded assertions that Samsung "fails to establish" this fact.[1]    For avoidance of doubt, Samsung has provided the supporting Declaration of Dr. Jeffrey Johnson ("Johnson Decl.").    Dr. Johnson makes clear that Samsung's December 30 production of source code included blue glow source code as implemented on at least four products—including the Exhibit 4G and Galaxy Tab 10.1.    (Johnson Decl. ¶¶ 8-12.)    Dr. Johnson identifies the specific Android versions and source code modules that include blue glow source code.    (*Id.*)    Dr. Johnson further confirms that the blue glow source code, as it exists in

---

[1]  Apple's attack on the credibility of Dr. Mark Tung, counsel for Samsung, is unfounded. Contrary to Apple's assertion that Dr. Tung "lacks personal knowledge" of the contents of Samsung's December 30 source code production, Dr. Tung did in fact participate in the source code review described in his declaration.    (Dkt. No. 922-3.)

Samsung's December 30 production, is substantially identical to the generic version of blue glow source code produced on January 23, 2012.   (*Id.* at ¶ 13.)

The portions of Dr. Balakrishnan's expert report cited by Apple are not to the contrary. As an initial matter, Dr. Balakrishnan's expert report is not sworn testimony.   More generally, Dr. Balakrishnan's report only addresses the source code for Exhibit 4G's Gallery application and Galaxy Tab 10.1's Browser application.   (Dkt. 986-03 at ¶¶ 78, 86, 95, 192, 230) (under seal.) He does not address the source code for other applications running on the accused devices, nor does he address the specific source code modules identified by Dr. Johnson as containing blue glow.   Nowhere in his report does Dr. Balakrishnan state that blue glow is absent in the source code he reviewed.   In light of Dr. Johnson's testimony—and without any affirmative denial from Apple—there can be no doubt that Samsung's December 30 source code production included blue glow source as implemented in these products.   (Johnson Decl. ¶¶ 8-12.)

**Epic 4G.**   As with the Exhibit 4G and Galaxy Tab 10.1, Apple does not deny that Samsung's December 30 source code production included blue glow source code for the Epic 4G. Samsung is continuing its investigation regarding the issues raised in Apple's opposition, and will update Apple and the Court once it receives complete information.   In any event, there is no dispute that the version of Epic 4G source code produced prior to the Court's December 31, 2011 deadline included the blue glow source code .   (Johnson Decl. ¶ 11.)   The May 4 Order, by its own terms, permits Samsung to rely on this timely produced source code.

**B.     The May 4 Order Permits Samsung to Use Non-Source Code Evidence.**

The May 4 Order was limited to *source code*—just as the relevant parts of the December 22 Order were limited to *source code*.   In the motion to compel that lead to the December 22 Order, Apple sought only "source code and necessary configuration files" for certain features of the accused products.   Apple did not seek "all documents" relating to Samsung's design arounds, nor did it seek any documents related to design arounds other than "source code and necessary configuration files."   None of the requests for production that Apple included in its December motion to compel even mentioned design arounds.   Indeed, Apple's design around-related

1   requests for production were the subject of a different motion to compel Apple filed on January
2   13, 2012.   (*See* Dkt. 613-1 at 8-10.)   The Court set a deadline of February 3, 2012 for the
3   production of these documents—a deadline which Samsung fully complied with.   Under Apple's
4   interpretation, however, the May 4 Order would apply to all of these documents and other non-
5   source code evidence, even though the December 22 Order was expressly limited to source code.

6        Apple's experts have in fact admitted that source code is unnecessary to determine
7   infringement.   At the preliminary injunction stage, Dr. Balakrishnan concluded that the accused
8   products infringe the '381 without reviewing source code.   (*See, e.g.,* Dkt. No. 91 at ¶ 104)
9   (stating that he observed the physical products performing the claimed methods, and therefore the
10  accused "must have instructions for performing those methods . . .").   Dr. Balakrishnan's March
11  22, 2012 expert report concludes that each of the 27 accused products infringe the '381 patent
12  based on his inspection of physical devices; he discusses the source code of only four products,
13  and only to "confirm" his conclusion.[2]   (Dkt. No. 986-03 at ¶¶ 78, 86, 95, 192, 230); *see also*
14  Tung Reply Decl. Ex. 4, Balakrishnan Tr. at 36:17-23, 39:12-22) (admitting that he did not review
15  source code for every accused device but, instead, "looked at representative examples" of the
16  source code.)   Furthermore, at his April 20, 2012 deposition, Dr. Balakrishnan expressed
17  opinions regarding infringement based solely on inspection of physical devices presented as
18  exhibits, and never testified that source code was necessary to reach or confirm that opinion.
19  (Tung Reply Decl. Ex. 4 at 59:8-60:7.)

20       Apple's claim that it was prevented "from engaging in discovery" relating to blue glow as
21  implemented in other products is simply not true.   Samsung's Motion For Clarification highlights
22  just some of the ways in which Apple conducted extensive discovery regarding Samsung's design-
23  arounds—including deposition questioning of numerous fact witnesses, seeking and obtaining
24  voluminous documentary evidence, inspecting physical devices that implement design-arounds,

---

[2]  Similarly, Dr. Singh's conclusion that Apple's products practice the '163 patent is based on Dr. Singh's inspection of physical products—citing source code only to "confirm" this conclusion. (Tung Reply Decl. Ex. 5 at ¶¶ 33-35.)

1 and propounding interrogatories directed at Samsung's design-arounds and non-infringing
2 alternatives.  (*See* Dkt. 922-03.)   The May 4 Order makes no mention of oral testimony,
3 documentary evidence, or physical devices, and Apple suffered no prejudice with respect to this
4 timely produced non-source code evidence.

### C. The May 4 Order Permits Samsung to Introduce Timely Produced Evidence of Design-Arounds and Non-Infringing Substitutes For Purposes Other Than Determining Liability for Infringement.

Samsung's design-around efforts and non-infringing substitutes are relevant for purposes other than rebutting Apple's infringement claims.   Apple faults Samsung's for "not explain[ing] why it did not present this argument in its original papers."   But the reason is simple: Samsung did not present this argument in opposing Apple's Motion for Sanctions because Apple only sought sanctions "for purposes of assessing infringement."   The May 4 Order acknowledges as much (*see* Dkt. 898 at 4), but contains certain language that would arguably preclude evidence for purposes other than determining whether or not Samsung is liable for infringement.   Clarification is therefore necessary.   The Court should clarify that the relief granted Apple by the May 4 Order is limited to that which Apple requested, and does not preclude Samsung from using timely produced evidence for purposes which even Apple admits were not the subject of the briefing and hearing on its motion for sanctions.[3]

Apple claims that Samsung should be precluded from offering any evidence of design-arounds for purposes other than determining whether Samsung is liable for infringement because it cannot determine "which [product] versions implemented any Samsung design-arounds, and when those design-arounds were implemented."   (Dkt. No. 986 at 8-9.)   As discussed below, however, the issue of when any alleged infringement began and ended is irrelevant to issues such as injunctive relief and the appropriate measure of damages for infringement.   In the absence of any credible claim of prejudice, Samsung should be allowed to rely on timely produce source code and non-source code evidence of design arounds and non-infringing substitutes for these purposes.

---

[3] Contrary to Apple's suggestion on pages 8-9 of its opposition, Samsung does not seek to rely on source code produced after December 31, 2012 for any purpose.

### i. **Injunctive Relief**

Should Apple successfully obtain a judgment that the asserted patents are valid and infringed, the May 4 Order should not be construed as precluding Samsung from demonstrating that the accused products—as they exist at the time of any injunction-related proceedings—no longer incorporate the features found to infringe Apple's patents. Injunctive relief is prospective in nature. *See, e.g., Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.") (citation omitted); Wright & Miller, Fed. Prac. & Pro. § 2948.1 ("There must be a likelihood that irreparable harm *will* occur. . . . A *presently existing* actual threat must be shown.") (emphasis added). If the accused devices no longer incorporate the features found to infringe, any injury suffered by Apple would exist entirely in the past; there would be no presently existing threat of irreparable harm. At what point in the past Samsung modified the accused products, or which precise version or update first implemented modified features, is irrelevant. The only issue is whether, at the time the Court is considering whether to issue an injunction, the accused products *presently* incorporate the infringing features.

The same is true in the event Apple ever initiates contempt proceedings on any injunction that does issue. Contempt proceedings require the Court to evaluate "whether the newly accused product is so different from the product previously found to infringe that it raises a fair ground of doubt as to the wrongfulness of the defendant's conduct." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (emphasis added) (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)). Again, Apple's asserted inability to determine the precise point in time that the adjudged products were modified is irrelevant. The Court must simply compare "the features relied upon to establish infringement and the modified features" as they exist at the time of the contempt proceedings. *Id.* at 883. The Federal Circuit has made clear that this analysis is distinct from the infringement analysis. *See id.*

//

//

### ii. The Appropriate Measure of Damages For Infringement

Even if the May 4 Order precludes Samsung from arguing that its design-arounds cut short the period of infringement, evidence of actual and potential non-infringing substitutes is relevant to what measure of damages Apple is entitled to recover for any infringing activity that occurred during that period. The availability of a non-infringing substitute—even one that has not yet been implemented at the time of judgment—defeats a patentee's claim for lost profits and serves as a basis for awarding a lower reasonable royalty rate. *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1350-54 (Fed. Cir. 1999); *Smithkline Diagnostics Inc. v. Helena Labs. Corp.*, 1989 WL 418791, *6 (E.D. Tex. June 30, 1989) *aff'd*, 926 F.2d 1161 (Fed. Cir. 1991) ("A willing licensee, in a hypothetical negotiation with a willing licensor, would be less inclined to agree to a high royalty because of the availability of such non-infringing alternatives . . ."). Because a design-around or non-infringing substitute is relevant to these issues regardless of the precise date when it was implemented by Samsung—and even if never implemented by Samsung at all—Apple can claim no prejudice from Samsung's use of timely produced source code and non-code evidence of design-arounds and non-infringing alternatives to show that technical alternatives were available to it.

## III. CONCLUSION

For the foregoing reasons, Samsung respectfully requests the Court to clarify that pursuant to its May 4, 2012 Order, Samsung is permitted introduce at trial:

1. Versions of source code produced on or before December 31, 2011 as evidence of Samsung's design-around efforts; and
2. Evidence of design-arounds and non-infringing alternatives to the '381 and '163 patents other than source code produced after December 31, 2011.

| | | |
|---|---|---|
| 1 | DATED: June 5, 2012 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | By  */s/ Victoria F. Maroulis* |
| | | Charles K. Verhoeven |
| 4 | | Kevin P.B. Johnson |
| | | Victoria F. Maroulis |
| 5 | | Michael T. Zeller |
| 6 | | Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |