# EXHIBIT 7
# UNDER SEAL

Confidential Business Information
Pursuant to Protective Order

Page 1

1          UNITED STATES INTERNATIONAL TRADE COMMISSION

2                    WASHINGTON, D.C.

3

4

5   In the Matter of:

6   CERTAIN ELECTRONIC DIGITAL

    MEDIA DEVICES AND COMPONENTS    Inv. No.   337-TA-796

7   THEREOF

    _____/

8

9

10

11          CONFIDENTIAL BUSINESS INFORMATION

12          PURSUANT TO THE PROTECTIVE ORDER

13

14

15   VIDEOTAPED DEPOSITION OF CHRISTOPHER J. STRINGER

16              REDWOOD SHORES, CALIFORNIA

17            WEDNESDAY, FEBRUARY 15, 2012

18

19

20

21

22

23   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24   CSR LICENSE NO. 9830

25   JOB NO. 46383

Confidential Business Information
Pursuant to Protective Order

Page 3

1   A P P E A R A N C E S:

2

3         FOR APPLE INC.:

4         MORRISON & FOERSTER

5         By:  MICHAEL A. JACOBS, Esq.

6              FRANCIS C. HO, Esq.

7         425 Market Street

8         San Francisco, California 94105

9

10

11

12

13        FOR SAMSUNG ELECTRONICS CO. LTD:

14        QUINN EMANUEL URQUHART & SULLIVAN

15        By:  MICHAEL T. ZELLER, Esq.

16             SCOTT HALL, Esq.

17        865 South Figueroa Street

18        Los Angeles, California 90017

19

20

21

22

23        ALSO PRESENT:   Cyndi Wheeler, Apple, Inc.

24                        Sean McGrath, Videographer

25

Confidential Business Information
Pursuant to Protective Order

Page 78

1    to this moment.

2        Q    And I take it you have no idea what it's

3    based on; right?

4        A    I still do not fully understand it.

5        Q    Well, you'll agree with me that certainly by

6    January of 2010, there were publicly known designs

7    that had a continuous transparent surface on the -- on

8    an electronic device; right?

9            MR. JACOBS:  Objection; form; relevance.

10           THE WITNESS:  I'm pretty sure that's the

11   case.  I mean, looking at '678, which was dating back

12   into '07; so yes.

13           MR. ZELLER:  Q.  You'll agree with me that

14   even prior to 2006, there were existing public designs

15   that showed a continuous transparent surface on an

16   electronic device; correct?

17       A    So now I'm referring to patent '889, which

18   has a filing date of 2004, so yes.

19       Q    You'll also agree with me that prior to 2006,

20   public existing devices -- I'm sorry.  Strike that.

21           You'll also agree with me that prior to 2006,

22   publicly known electronic device designs showed a

23   smooth or flush transition between the display screen

24   and the rest of the front face of the device; right?

25           MR. JACOBS:  Objection; form; relevance.

Confidential Business Information
Pursuant to Protective Order

1      THE WITNESS:  I'm familiar with the

2  aforementioned iPod patent that has a similar claim.

3      MR. ZELLER:  All right.

4    Q    And you'll also agree with me that the -- in

5  your view, the '889 design patent, which was public by

6  2005, showed a smooth or flush transition between the

7  display screen and the rest of the front face of the

8  device; right?

9      MR. JACOBS:  Objection -- objection; form;

10  relevance.

11      THE WITNESS:  So as I'm recalling and

12  understanding the question you're asking me, does the

13  iPad design patent '889 have a smooth, continuous

14  transparent front surface that's flush to the housing,

15  yes, that's what I see.

16      MR. ZELLER:  All right.

17    Q    Do you have any knowledge or understanding as

18  to why Apple did not say in response to the patent

19  office's rejection --

20    A    Of course, as I was unfamiliar with this

21  discussion, I have no knowledge of either side's

22  statements in any respect.

23    Q    I'm sorry.  I didn't quite finish the

24  question, so let me -- let me -- just for the record,

25  let me -- let me complete the question.

Confidential Business Information
Pursuant to Protective Order

Page 80

1      Do you have any knowledge or information as
2  to why Apple, in response to the patent office's
3  Office Action here, when it was initially rejection --
4  rejecting the '678 design patent, didn't say to the
5  patent office that it believed the '889 design patent,
6  which was already public by 2005, showed a continuous
7  transparent surface and a substantially smooth or
8  flush transition between the display screen and the
9  rest of the front face of the device?
10      MR. JACOBS:  Objection; form; relevance.
11      THE WITNESS:  Patent law is not my specialty.
12  I have no idea what the representatives were thinking
13  at this time or saying.
14      MR. ZELLER:  And I'm not asking you as a
15  patent lawyer or a specialist or anything else.
16      Q   I'm just -- I'm asking:  Do you have any
17  knowledge or information as to why Apple did not say
18  that at that time?
19      MR. JACOBS:  Objection; form; relevance;
20  asked and answered.
21      THE WITNESS:  I certainly feel that I'm
22  reviewing the work of a different department, and I
23  cannot attest to any action that they took in this
24  case in this time frame.  I do not know anything about
25  this document.

Confidential Business Information
Pursuant to Protective Order

Page 369

1    page of text for this patent.  It's a little further

2    in, and you'll see there's a heading.  It says

3    "Bezeless Electronic Display."

4        A    Okay.

5        Q    And you'll see that there is a section called

6    "Background of the Invention."

7        A    Yes.

8        Q    And then there's that heading or number

9    "0004."

10       A    I see that.

11       Q    And it says here:

12            "An electronic display such as flat panel

13   monitors used with computers or flat panel televisions

14   generally have a bezel or frame surrounding a display

15   screen or portion of the electronic display."

16            Do you see that?

17       A    Yes.

18       Q    And then you'll see the next heading which is

19   "Summary of the Invention."

20       A    I see that.

21       Q    And you'll see here it says:

22            "The invention provides a bezeless electronic

23   display comprising an electronic display device having

24   an image displaying portion and a cover position

25   adjacent to the electronic display device that are

Confidential Business Information
Pursuant to Protective Order

Page 370

1    mounted in an assembly without a bezel."

2         Do you see that?

3    A   Uh-huh.

4    Q   Sorry.  That's a yes?

5    A   Yes, it is.

6    Q   And then if you turn the page, you'll see

7    that there is a -- a section called "Brief Description

8    of the Drawings."

9    A   I see that.

10    Q   And it says here:

11         "Figure 2 is a perspective view of the

12    electronic display depicted in Figure 1 when no image

13    is displayed."

14         Do you see that?

15    A   Yes.

16    Q   So directing your attention back to exhibit,

17    excuse me, Figure 2, which is on sheet two of ten.

18    A   Yes.

19    Q   Based on the description that we talked

20    about, this language in the text, do you generally

21    understand that this is depicting the front surface of

22    this electronic display device?

23         MR. JACOBS:  Objection; form.

24         THE WITNESS:  Yes.

25         MR. ZELLER:  Q.  And you see that, based on

Confidential Business Information
Pursuant to Protective Order

Page 371

1    the figure that you see, as well as the language that

2    we read, that this depicts a front surface of an

3    electronic display device that is flat and continuous

4    from edge to edge on that front surface; right?

5         MR. JACOBS:  Objection; form.

6         THE WITNESS:  Flatness has to be an

7    assumption, and I can see that the edges appear to be

8    delineated by -- actually, I'm assuming that they're

9    delineating a single plane, but it's an assumption to

10   believe this is flat just based on just looking at

11   this view.

12        If I were to look at other views in

13   conjunction, I would concur.

14        MR. ZELLER:  Sure.

15   Q    We'll get to some more in just a moment?

16   A    Okay.

17   Q    But just based on -- based on your

18   understanding of what you see here in Figure 2, you do

19   see that -- that it appears to be a -- what you're

20   referring to as a single plane --

21        MR. JACOBS:  Objection; form.

22        MR. ZELLER:  Q.  -- that front surface?

23   A    I have knowledge of other views that indicate

24   that this is a single plane, so that sways me to

25   believe this is a single plane.

Confidential Business Information
Pursuant to Protective Order

Page 372

1    Q    If you take a look at -- going back to the

2    text here, you see where it's discussing Figure 3 and

3    Figure 4?

4    A    Yes.

5    Q    And it says:

6         "Figure 3 is a schematic cross-sectional side

7    view of the electronic display depicted in Figure 1."

8         And then it says:

9         "Figure 4 is a schematic cross-sectional side

10   view of an embodiment of and electronic display in

11   accordance with the invention."

12        Do you see that?

13   A    Yes.

14   Q    And then if you look at Figures 3 and 4, do

15   you see that the display surface is flat?

16        MR. JACOBS:   Objection.

17        THE WITNESS:   Figure which?

18        MR. ZELLER:   Q.   Figures 3 and 4.

19   A    I'm a bit confused as to why there are

20   differences between Figures 3 and 4.

21   Q    One figure is a cross-sectional view of

22   Figure 1 and another one is Figure 4 is an embodiment,

23   another embodiment of the invention, it says.

24   A    Okay.   All right.

25        So your question was?

Confidential Business Information
Pursuant to Protective Order

Page 373

1    Q    Do you recognize, from looking at the

2  cross-sectional view, that the display surface of

3  the -- of this electronic display that's shown here

4  is, in fact, flat?

5    A    Are you referring to the surface that has

6  the -- the -- this in red, "200"?

7    Q    Right.

8    A    That does appear to be flat.

9    Q    And if you look at, then, Figure 2, you'll

10  see that there's a -- a line with a line 200 --

11    A    That's right.

12    Q    -- pointing to that front display surface.

13    A    Yes.

14    Q    Directing your attention to Figure 2, based

15  on the information that we've talked about and based

16  on what you see here in this publication, do you

17  recognize that Figure 2 shows an electronic display

18  device that has a flat front surface that runs from --

19  continuously from edge to edge?

20          MR. JACOBS:  Objection; form.

21          THE WITNESS:  Yeah, using those assumptions

22  do allow me to think this shows a continuous front

23  surface from edge to edge.

24          MR. JACOBS:  Mike, just given the hour, I

25  think we'll go another ten minutes, and then we'll

Confidential Business Information
Pursuant to Protective Order

Page 374

1    call this.

2         MR. ZELLER:  Q.  That's your understanding of

3    what's depicted here in Figure 2?

4    A    Yes.

5         MR. ZELLER:  36 is next?

6         THE REPORTER:  Uh-huh.

7         MR. ZELLER:  Would you please mark as

8    Exhibit 36 a three-page document which is a printout

9    from "RCD On-line."

10        (Document marked Stringer Exhibit 36

11         for identification.)

12        THE WITNESS:  Thank you.

13        MR. ZELLER:  Q.  And please let me know when

14   you've had an opportunity to review Exhibit 36.

15   A    Okay.

16   Q    First, have you seen Exhibit 36, apart from

17   deposition preparation?

18   A    I have never seen Exhibit 36.

19   Q    Do you see from the images that are here on

20   the first page that this represents an electronic

21   display device that has a flat continuous surface on

22   the front that runs from edge to edge?

23        MR. JACOBS:  Objection; form.

24        THE WITNESS:  I'm assuming that this is --

25   this is a product that is borne from that, the patent

Confidential Business Information
Pursuant to Protective Order

Page 379

CERTIFICATE OF REPORTER

I, ANDREA M. IGNACIO HOWARD, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a Certified Shorthand Reporter of the State of California, and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings which took place;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of February, 2012.

_____

ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

# EXHIBIT 8
# UNDER SEAL

Confidential - Pursuant to ITC Protective Order

Page 1

1           UNITED STATES INTERNATIONAL TRADE COMMISSION

2                        WASHINGTON D.C.

3

4       In the Matter of:              )
                                       )
5       CERTAIN ELECTRONIC             )    Investigation No.
        DIGITAL MEDIA DEVICES          )    337-TA-796
6       AND COMPONENTS THEREOF         )

7

8       _____

9

10

11                        CONFIDENTIAL

12            PURSUANT TO ITC PROTECTIVE ORDER

13

14      VIDEOTAPED DEPOSITION OF DANIEL JOHN COSTER

15              San Francisco, California

16              Tuesday, February 7, 2012

17

18

19

20

21

22      By:  SUZANNE F. BOSCHETTI

23      CSR License 5111

24      Job No. 45573

25

Confidential - Pursuant to ITC Protective Order

Page 3

1    A P P E A R A N C E S:

2

3

4

5       QUINN EMANUEL URQUHART & SULLIVAN

6       Attorneys for Apple Inc.:

7            50 California Street

8            San Francisco, California 94111

9       BY:   ALBERT P. BEDECARRE, ESQ.

10

11

12      MORRISON & FOERSTER

13      Attorneys for Samsung Electronics Co., LTD:

14           425 Market Street

15           San Francisco, California 94105

16      BY:   MARK W. DANIS, ESQ.

17

18

19   Also Present:

20      NICK KASIMATIS, Videographer

21      ERICA TIERNEY, ESQ., Apple Inc.

22

23

24

25

Confidential - Pursuant to ITC Protective Order

Page 270

1      Q      Did the iPhone have a camera in that

2   location, the upper left of the back?

3      A      Yes.

4      Q      Does that influence your understanding of

5   this drawing in Figure 2?

6      A      It's so vague, I can't tell.

7      Q      What's so vague?

8      A      The drawing.

9      Q      Okay.  How about the Figure 4, the same

10  question with regard to the circular feature at the

11  top left corner?

12     A      I can't tell.  I'm sorry.

13     Q      And can you tell whether that circular

14  feature is under some other element that's depicted

15  by the rounded corner rectangle that seems to touch

16  on part of that element?

17     A      No.

18     Q      In Figure 4 do you understand what is

19  depicted by the dotted line that crosses the bottom

20  quarter of the -- of the figure?

21     A      No.

22     Q      If you look at Figure 2, does that help you

23  at all to understand what that dotted line might

24  depict?

25     A      No.

Confidential - Pursuant to ITC Protective Order

Page 271

1    Q    Did the original iPhone have a different

2 kind of material in the bottom quarter or so of the

3 back?

4    A    Yes.

5    Q    And what was that?

6    A    Plastic.

7    Q    What was the reason for it?

8    A    I don't know.

9    Q    Do you recall it having something to do

10 with the antenna?

11    A    No.

12    Q    Do you -- looking at Figure 2, do you think

13 that that depicts the dividing line between two

14 materials on the back of the iPhone?

15    A    It might do.

16        (Ms Tierney enters room.)

17 BY MR. BEDECARRE:

18    Q    Now, the circular feature in Figure 3, what

19 do you understand that to depict?

20    A    I think it's a vent.

21    Q    Well, now, let me point you to the bottom

22 of Figure 3.  There's a circular feature with a

23 dotted line that you pointed out earlier.

24    A    Yes.

25    Q    Do you believe that's a vent?

Confidential - Pursuant to ITC Protective Order

1      A     Yes.  I think so.

2      Q     And to your understanding, that's not part

3   of the claimed drawing because it's a dotted line,

4   correct?

5            MR. DANIS:  Objection.  Legal conclusion.

6            THE WITNESS:  That's what it says on the

7   drawing, in the -- thank you.

8            (Deposition Exhibit 15 marked by the court

9            reporter.)

10  BY MR. BEDECARRE:

11     Q     If you could grab Exhibit 2 from that pile

12  on your left and have it with you when I talk about

13  Exhibit 15, that would be helpful.

14     A     Thank you.

15           MR. BEDECARRE:  So for the record,

16  Exhibit 15 is a portion of the file history that

17  related to U.S. Patent D558,757 and it is marked

18  with Bates numbers APL-ITC796 3903 and the last page

19  in the collection is 3931.  But again, it's not

20  consecutive from the first page to the last.  It's

21  just an excerpt.

22  BY MR. BEDECARRE:

23     Q     Can I ask you to turn to the third page of

24  Exhibit 15, please.

25     A     Yes.

Confidential - Pursuant to ITC Protective Order

1      Q      Do you see your signature on the left-hand

2  side in the middle of that page?

3      A      Yes.

4      Q      Do you understand this to be another

5  declaration for original U.S. patent application

6  that you signed and submitted to the United States

7  Patent Office?

8      A      Yes.

9      Q      And was the information in this application

10  accurate and truthful, to the best of your

11  understanding at the time?

12      A      Yes.

13      Q      And were you a first and joint inventor of

14  the subject matter that was claimed in the patent

15  application?

16      A      Yes.

17      Q      So let's turn back to Exhibit 2.  And

18  that's a copy of the '757 patent, and the

19  declaration that -- that we just looked at as

20  Exhibit 15 relates to the application that led to

21  this patent being issued.  Okay?

22      A      Thank you.

23      Q      All right.  So if we're looking at

24  Exhibit 2, can you tell me what is disclosed in the

25  patent?

Confidential - Pursuant to ITC Protective Order

Page 295

C E R T I F I C A T E

STATE OF CALIFORNIA      )

                         ) ss.:

COUNTY OF SAN MATEO      )


        I, SUZANNE F. BOSCHETTI, a Certified

Shorthand Reporter for the State of California, do

hereby certify:

        That DANIEL JOHN COSTER, the witness whose

deposition is hereinbefore set forth, was duly

sworn by me and that such deposition is a true

record of the testimony given by such witness.

        I further certify that I am not related to

any of the parties to this action by blood or

marriage; and that I am in no way interested in the

outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set my

hand this 8th day of February, 2012.




        - - - - - - - - - - - - - - - - - - - - - - - -

        SUZANNE F. BOSCHETTI

# EXHIBIT 9
# UNDER SEAL

1          UNITED  STATES  INTERNATIONAL  TRADE  COMMISSION

2                          WASHINGTON,  D.C.

3

4     In  the  Matter  of:

                                              Investigation  No.

5     CERTAIN  ELECTRONIC  DIGITAL

      MEDIA  DEVICES  AND  COMPONENTS        337-TA-796

6     THEREOF

7

8

9

10

11

12              CONFIDENTIAL  BUSINESS  INFORMATION

13              PURSUANT  TO  THE  PROTECTIVE  ORDER

14

15          VIDEOTAPED  DEPOSITION  OF  EVANS  HANKEY

16                San  Francisco,  California

17                Thursday,  March  15,  2012

18

19

20

21

22

23     REPORTED  BY:

24     CYNTHIA  MANNING,  CSR  No.  7645,  CLR,  CCRR

25     JOB  NO.  47502

Confidential Business Information

Page 3

1    APPEARANCES:

2

3    FOR COMPLAINANT APPLE INC.:

4        MORRISON & FOERSTER, LLP
         BY:  MICHAEL JACOBS, ESQ.

5            PATRICK ZHANG, ESQ.
         425 Market Street

6        San Francisco, California 94105-2482
         415.268.6538

7        mjacobs@mofo.com

8

9

10   FOR RESPONDENTS SAMSUNG ELECTRONICS COMPANY,
     LTD., SAMSUNG ELECTRONICS AMERICA, INC..

11   SAMSUNG TELECOMMUNICATIONS AMERICA, LLC:

12       QUINN EMANUEL URQUHART & SULLIVAN, LLP
         BY:  SCOTT B. KIDMAN, ESQ.

13       865 S. Figueroa Street
         10th Floor

14       Los Angeles, California 90017
         213.443.3000

15       scottkidman@quinnemanuel.com

16

17

18   ALSO PRESENT:

19       Cyndi Wheeler, Esq., Apple Inc.

20       Alexi Dias, Videographer

21

22

23

24

25

Page 92

1    Q.   And what's that understanding based on?

2    A.   Excuse me?

3    Q.   What's that understanding based on?

4    A.   That is how I read the diagonal-shape

5    lines that you asked me about.

6    Q.   And are you -- are you basing that

7    reading of these diagonal lines on anything in

8    particular?

9    A.   Am I basing -- I have a knowledge of --

10   a basic knowledge of patents.

11   Q.   Of design patents?

12   A.   Of design patents.

13   Q.   And design patent drawings?

14   A.   Design patent drawings.

15   Q.   And do you feel like you're in a

16   position to interpret design patent drawings?

17   A.   I do not think --

18        MR. JACOBS:  Objection to form.

19        THE WITNESS:  -- I'm -- I do not think

20   I'm an expert of design patent drawings.

21   BY MR. KIDMAN:

22   Q.   But you have an understanding as to

23   what's shown in design patent drawings?

24   A.   I understand what -- your question

25   about Figure 1 of the diagonal lines.  That is

Confidential Business Information

Page 93

1   based on my limited knowledge of design patent

2   drawings.

3        Q.   If you look at what you've called the

4   top surface that's shown in Figure 1 --

5        A.   Uh-huh.

6        Q.   -- and up at the top there is a

7   lozenge-shape opening; is that correct?

8        A.   Correct.

9        Q.   And what does that lozenge-shape

10  opening depict?

11            MR. JACOBS:  Objection; form.

12            THE WITNESS:  I don't understand your

13  question.

14  BY MR. KIDMAN:

15       Q.   Do you have any understanding as to

16  what's -- what's depicted by the lozenge-shape

17  opening on the front surface?

18            MR. JACOBS:  Same objection.

19  BY MR. KIDMAN:

20       Q.   In Figure 1?

21       A.   The lozenge-shape opening on -- in

22  Figure 1 is depicting a hole through the glass,

23  is what I read from that.

24       Q.   Do you see that there is a -- at the

25  bottom of the top surface that's shown in Figure

Confidential Business Information

Page 94

1    1, there is a circle and a broken line.

2            Do you see that?

3        A.   I do see that.

4        Q.   Do you know what that depicts?

5        A.    It depicts potentially a feature that

6    is not being claimed by this patent.

7        Q.   And do you have any understanding as to

8    what that feature is?

9        A.   Are you asking me what the feature is

10   on the iPhone?  Or --

11       Q.   What the feature is that's being

12   depicted by this broken line that's not being

13   claimed in Figure 1 of the '678 patent?

14       A.    In my memory of iPhone 1, that is the

15   hole that -- that feature is a hole in the glass

16   where a menu button resides.

17       Q.   If you look at the top surface in

18   Figure 1, do you see that there is a solid

19   rectangular line that's below the lozenge-shape

20   opening and above the circle that's shown in the

21   broken line?

22       A.   I do see that.

23       Q.   Do you know what that depicts?

24            MR. JACOBS:  Objection; form.

25            THE WITNESS:  In my memory of iPhone 1

Confidential Business Information

1    and also looking at this patent, I think that

2    that depicts an area of the glass in which is

3    clear so that the display module sitting directly

4    behind it can show through.

5    BY MR. KIDMAN:

6        Q.   And can you tell from looking at Figure

7    1 if that area that depicts where the display

8    module shows through, can you tell if that --

9    that area is recessed below the top surface?

10           MR. JACOBS:   Objection; form.

11           THE WITNESS:   Can you repeat the

12   question, please?

13   BY MR. KIDMAN:

14       Q.   Sure.

15           I had asked you about the area that's

16   depicted by the solid rectangular line that's

17   below the -- between the lozenge-shape opening

18   and the circle that's shown with broken lines.

19           Do you remember that?

20       A.   Yes.  Yes.

21       Q.   And you described that as being the

22   area where the display module is shown on the top

23   surface; correct?

24       A.   Correct.

25       Q.   And can you tell if that rectangular

Confidential Business Information

Page 214

1    STATE OF CALIFORNIA    )

2                :ss

3    COUNTY OF SAN MATEO    )

4            I, CYNTHIA MANNING, a Certified Shorthand

5    Reporter of the State of California, do hereby

6    certify:

7            That the foregoing proceedings were taken

8    before me at the time and place herein set forth;

9    that any witnesses in the foregoing proceedings,

10   prior to testifying, were placed under oath; that

11   a verbatim record of the proceedings was made by

12   me using machine shorthand which was thereafter

13   transcribed under my direction; further, that the

14   foregoing is an accurate transcription thereof.

15           I further certify that I am neither

16   financially interested in the action, nor a

17   relative or employee of any attorney of any of

18   the parties.

19

20           IN WITNESS WHEREOF, I have subscribed

21   my name this 15th day of March 2012.

22

23

24       CYNTHIA MANNING, CSR No. 7645, CCRR, CLR

25

# EXHIBIT 10
# UNDER SEAL

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 1

1      UNITED STATES INTERNATIONAL TRADE COMMISSION

2                   WASHINGTON, D.C.

3

4    In the Matter of:

                                    Investigation No.
5    CERTAIN ELECTRONIC DIGITAL

     MEDIA DEVICES AND COMPONENTS     337-TA-796

6    THEREOF

7

8

9

10         CONFIDENTIAL ATTORNEYS' EYES ONLY

11         PURSUANT TO THE PROTECTIVE ORDER

12

13

14      VIDEOTAPED DEPOSITION OF DANIELE DE IULIIS

15           San Francisco, California

16         Wednesday, February 22, 2012

17

18

19

20

21

22

23    REPORTED BY:

24    CYNTHIA MANNING, CSR No. 7645, CLR, CCRR

25    JOB NO. 45581

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 3

1    APPEARANCES:

2

3    FOR COMPLAINANT APPLE INC.:

4

     MORRISON & FOERSTER
5    BY:  HAROLD J. McELHINNY, ESQ.
     425 Market Street
6    San Francisco, California 94105

7

8

9

10   FOR RESPONDENTS SAMSUNG ELECTRONICS COMPANY,
     LTD., SAMSUNG ELECTRONICS AMERICA, INC., and
11   SAMSUNG TELECOMMUNICATIONS AMERICA, LLC:

12       QUINN EMANUEL URQUHART & SULLIVAN
         BY:  SCOTT B. KIDMAN, ESQ.
13       865 South Figueroa Street
         Los Angeles, California 90017

14

15

16

17   ALSO PRESENT:
18       Danielle Coleman, Esq., Apple Inc.
19       Lisa Olle, Esq., Apple Inc.
20       Pete Sais, Videographer
21

22

23

24

25

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 213

1    just maybe circle that line that we're talking

2    about?

3        A.    Circle?

4        Q.    Or indicate it with an arrow, yes, and

5    label that A.

6        A.    (Witness complies.)

7        Q.    So the dashed line that we've labeled

8    as A -- first of all, does that look like a

9    dashed line to you?

10       A.    Yes.

11       Q.    And do you know what that particular

12   line depicts --

13           MR. McELHINNY:  Objection.

14   BY MR. KIDMAN:

15       Q.    -- in the '678 patent?

16       A.    I don't.

17       Q.    And above the dashed line that we've

18   labeled A is a -- is a second dashed line.

19           Do you see that?

20       A.    I do.

21       Q.    And do you know what that second dashed

22   line depicts in the '678 patent?

23           MR. McELHINNY:  Objection.

24           THE WITNESS:  I don't.

25   //

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 214

1    BY MR. KIDMAN:

2        Q.   And looking at Figure 1, if you look at

3    the front face of the device, do you see a series

4    of diagonal lines?

5        A.   I do.

6        Q.   And do you know what those diagonal

7    lines depict in the '678 patent?

8            MR. McELHINNY:   Objection.

9            THE WITNESS:   I don't.

10   BY MR. KIDMAN:

11       Q.   And looking at the chin of the device,

12   there is a circle in dashed lines.

13           Do you see that?

14       A.   I do.

15       Q.   And do you know what that circle and

16   dashed lines depict in the '678 patent?

17           MR. McELHINNY:   Objection.

18           THE WITNESS:   I don't.

19   BY MR. KIDMAN:

20       Q.   If you turn the page to Figure 3, and

21   Figure 3 is described in the patent as a front

22   view of the device.  And do you see in Figure 3 a

23   solid rectangular line that is above the dashed

24   circular line in the chin and below the

25   lozenge-shaped opening that's in the forehead?

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 215

1        A.    I see the rectangle.

2        Q.    And do you know what that rectangle

3    depicts in the '678 patent?

4             MR. McELHINNY:  Objection.

5             THE WITNESS:  I don't know what that

6    depicts.

7    BY MR. KIDMAN:

8        Q.    And then do you see a second solid line

9    that -- well, let me focus you.

10            Do you see a dashed line that runs

11   around the perimeter of the front of the device

12   shown in Figure 3?

13       A.    This line here (indicating)?

14       Q.    The outermost --

15       A.    Yes --

16       Q.    -- dashed line.

17       A.    -- I see it.

18       Q.    Okay.  And then inside of that

19   outermost dashed line is a second dashed line

20   that runs contiguous with the outermost dashed

21   line.

22            Do you see that?

23            MR. McELHINNY:  Objection.

24            THE WITNESS:  I don't know if I would

25   use "contiguous."  It's -- yeah, it's not

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 216

1    contiguous.  I see this dashed line.

2    BY MR. KIDMAN:

3        Q.   You see the outermost dashed line and

4    then to the interior you see a second dashed

5    line --

6        A.   I do.

7        Q.   -- also follows the same outline as

8    that first same dashed line; correct?

9        A.   Yes.

10       Q.   And then do you also see a solid line

11   that follows the same path as that second dashed

12   line?

13       A.   I see that line.

14       Q.   And do you know what that -- what that

15   solid line represents or depicts in the '678

16   patent?

17            MR. McELHINNY:  Objection.

18            THE WITNESS:  I don't know what that

19   depicts.

20   BY MR. KIDMAN:

21       Q.   How is it that you recognize the design

22   that's shown in the '678 patent as being the

23   original iPhone?

24       A.   I can see that it is a representation

25   of the iPhone when I look at all the images, but

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 217

1    as to what each specific line represents, as I

2    said earlier, I'm not a patent lawyer or patent

3    draftsperson, and I don't know what those lines

4    may or may not represent.

5         Q.   Do you know what invention is claimed

6    by the '678 patent?

7              MR. McELHINNY:  Objection.

8              THE WITNESS:  I don't recall.

9    BY MR. KIDMAN:

10        Q.   If you take a look at Figure 1, does

11   Figure 1 show a continuous glass surface on the

12   front of the device?

13             MR. McELHINNY:  Objection.

14             THE WITNESS:  I don't know.

15   BY MR. KIDMAN:

16        Q.   Does Figure 1 show a continuous flat

17   surface on the top of the device?

18             MR. McELHINNY:  Objection.

19             THE WITNESS:  I don't know.

20   BY MR. KIDMAN:

21        Q.   In connection with the design for what

22   became the original iPhone, did you create or

23   explore designs that had corners with different

24   radii, using those terms that we've been using,

25   than what appeared in the original iPhone that

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 218

1   was brought to market?

2        A.   Sorry, could you repeat that last part?

3        Q.   Sure.

4             In connection with the design of the

5   original iPhone, did you create designs in which

6   the -- which had corners with different radii

7   than the corners in the iPhone that was actually

8   brought to market?

9        A.   We explored different design

10  directions, and part of that exploration would be

11  looking at what you're referring to as corner

12  radii.

13       Q.   And in your view, did those design

14  exploration -- explorations that had corners with

15  different radii have a -- a -- strike that.

16            In your view, did changing the radii of

17  the corners in these alternatives designs that

18  were explored change the overall visual

19  impression of the design of the device?

20            MR. McELHINNY:  Objection.

21            THE WITNESS:  As I've said earlier, you

22  can't take in isolation one component of the

23  design without taking into account the rest of

24  the design.

25  //

Confidential Attorneys' Eyes Only
Pursuant to the Protective Order

Page 254

1          :SS

2    COUNTY OF SAN MATEO  )

3          I, CYNTHIA MANNING, a Certified Shorthand

4    Reporter of the State of California, do hereby

5    certify:

6          That the foregoing proceedings were taken

7    before me at the time and place herein set forth;

8    that any witnesses in the foregoing proceedings,

9    prior to testifying, were placed under oath; that

10   a verbatim record of the proceedings was made by

11   me using machine shorthand which was thereafter

12   transcribed under my direction; further, that the

13   foregoing is an accurate transcription thereof.

14         I further certify that I am neither

15   financially interested in the action, nor a

16   relative or employee of any attorney of any of

17   the parties.

18

19         IN WITNESS WHEREOF, I have subscribed

20   my name this 22nd day of February 2012.

21

22   _____

23   CYNTHIA MANNING, CSR No. 7645, CCRR, CLR

24

25              I N D E X

# EXHIBIT 11
# UNDER SEAL

Confidential Business Information Pursuant to Protective Order

1       UNITED  STATES  INTERNATIONAL  TRADE  COMMISSION

2                   WASHINGTON,  D.C.

3

4    In  the  Matter  of:

                              Investigation  No.

5    CERTAIN  ELECTRONIC  DIGITAL

     MEDIA  DEVICES  AND  COMPONENTS      337-TA-796

6    THEREOF

7

8

9

10        CONFIDENTIAL  BUSINESS  INFORMATION

11        PURSUANT  TO  THE  PROTECTIVE  ORDER

12

13

14    VIDEOTAPED  DEPOSITION  OF  MATTHEW  ROHRBACH

15          San  Francisco,  California

16        Thursday,  February  23,  2012

17

18

19

20

21

22

23   REPORTED  BY:

24   CYNTHIA  MANNING,  CSR  No.  7645,  CLR,  CCRR

25   JOB  NO.  45582

Confidential Business Information Pursuant to Protective Order

Page 3

1    APPEARANCES:

2

3    FOR COMPLAINANT APPLE INC.:

4

         MORRISON & FOERSTER, LLP
5        BY:  JENNIFER LEE TAYLOR, ESQ.
         425 Market Street
6        San Francisco, California 94105
         415.268.7000
7        jtaylor@mofo.com

8

9

10   FOR RESPONDENTS SAMSUNG ELECTRONICS COMPANY,
     LTD., SAMSUNG ELECTRONICS AMERICA, INC., and
11   SAMSUNG TELECOMMUNICATIONS AMERICA, LLC:
12       QUINN EMANUEL URQUHART & SULLIVAN, LLP
         BY:  SCOTT B. KIDMAN, ESQ.
13       865 S. Figueroa Street
         10th Floor
14       Los Angeles, California 90017
         213.443.3000
15       scottkidman@quinnemanuel.com

16

17   ALSO PRESENT:
18       Lisa Olle, Esq., Apple Inc.
19       Pete Sais, Videographer

20

21

22

23

24

25

Confidential Business Information Pursuant to Protective Order

Page 137

1    '678 patent show a design of an electronic

2    device?

3               MS. TAYLOR:  Asked and answered.

4               THE WITNESS:  Yes.

5    BY MR. KIDMAN:

6        Q.   And do you recognize the design that is

7    shown in the figures of the '678 patent as being

8    any version of the iPhone?

9               MS. TAYLOR:  Asked and answered.

10              THE WITNESS:  I am not sure.

11   BY MR. KIDMAN:

12       Q.   Do you recognize the design that is

13   shown in the figures of the '678 patent as being

14   any part of any version of the iPhone?

15              MS. TAYLOR:  Asked and answered.

16              THE WITNESS:  Yeah.  I'm not sure.

17   BY MR. KIDMAN:

18       Q.   And is there some reason that you are

19   not sure that you can articulate for me?

20       A.   The reason is I'm -- I'm not -- I don't

21   understand the drawing.

22              I understand the design, but not -- not

23   the drawing and the -- the patent.

24       Q.   When you say you understand the design,

25   what design are you referring to?

Confidential Business Information Pursuant to Protective Order

Page 138

1          A.     I'm not sure which design it's

2    referring to.

3          Q.     You said that you understand the

4    design.  Okay?  And when you've said that you

5    understand the design, what I'm trying to

6    understand is what design were you referring to?

7          A.     Like the -- this design of the -- of

8    the iPhone that we shipped, like -- I understand

9    this three-dimensional object, this product

10   (indicating).  But I don't really understand this

11   (indicating).

12         Q.     And when you say "this," you're talking

13   about the figures in the '678 patent?

14         A.     Right.

15         Q.     Look at Figure 3 of the '678 patent.

16         A.     Okay.

17         Q.     Do you see the circular dashed line at

18   the bottom of the figure?

19         A.     Yes.

20         Q.     Do you know what that represents?

21              MS. TAYLOR:  Calls for a legal

22   conclusion.

23              THE WITNESS:  No.

24   BY MR. KIDMAN:

25         Q.     Do you know what it shows?

Confidential Business Information Pursuant to Protective Order

1        MS. TAYLOR:  Same objection.

2        THE WITNESS:  Do I know what it shows?

3    BY MR. KIDMAN:

4        Q.   Yes.

5        A.   No.

6        Q.   And do you see at the top of Figure 3

7    there's -- there's an elongated oval shape?

8             Do you see that?

9        A.   Yes.

10        Q.   And do you know what that shows?

11        A.   I don't know what that shows.

12        Q.   And below that elongated oval shape do

13    you see a solid rectangular line?

14        A.   Yes.

15        Q.   And do you know what that solid

16    rectangular line shows in Figure 3?

17        A.   No, I don't know what that rectangular

18    line shows.

19        Q.   Is it your understanding that that

20    solid rectangular line shows the active area of

21    the display of the iPhone?

22        A.   I don't know if it shows that.

23        Q.   Do you have any understanding at all

24    that that's what is shown there in Figure 3?

25        A.   No, I don't know that that's what's

Confidential Business Information Pursuant to Protective Order

Page 140

1    being shown with that line.

2        Q.   What was new or original about the

3    design shown in the '678 patent at the time it

4    was thought up?

5            MS. TAYLOR:  Calls for a legal

6    conclusion.

7            THE WITNESS:  I don't know.

8    BY MR. KIDMAN:

9        Q.   Do you know when the design that's

10   shown in the -- well, strike that.

11           Do you know when the design that is

12   shown in the '678 patent was conceived of?

13           MS. TAYLOR:  Same objection.

14           THE WITNESS:  No, I don't.

15   BY MR. KIDMAN:

16       Q.   Do you know when the design that's

17   shown in the '678 patent was completed?

18           MS. TAYLOR:  Same objection.

19           THE WITNESS:  No, I don't.

20   BY MR. KIDMAN:

21       Q.   Well, you said that you do understand

22   the design of the original iPhone; correct?

23       A.   Yeah, I think so.

24       Q.   And you would agree with me that the

25   original iPhone, the front surface of the

Confidential Business Information Pursuant to Protective Order

Page 258

1    STATE OF CALIFORNIA   )

2          :ss

3    COUNTY OF SAN MATEO   )

4         I, CYNTHIA MANNING, a Certified Shorthand

5    Reporter of the State of California, do hereby

6    certify:

7         That the foregoing proceedings were taken

8    before me at the time and place herein set forth;

9    that any witnesses in the foregoing proceedings,

10   prior to testifying, were placed under oath; that

11   a verbatim record of the proceedings was made by

12   me using machine shorthand which was thereafter

13   transcribed under my direction; further, that the

14   foregoing is an accurate transcription thereof.

15        I further certify that I am neither

16   financially interested in the action, nor a

17   relative or employee of any attorney of any of

18   the parties.

19

20        IN WITNESS WHEREOF, I have subscribed

21   my name this 23rd day of February 2012.

22

23

24        CYNTHIA MANNING, CSR No. 7645, CCRR, CLR

25

# EXHIBIT 12
# UNDER SEAL

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 1

1       UNITED STATES INTERNATIONAL TRADE COMMISSION

2                    WASHINGTON, D.C.

3

4    In the Matter of:

                                   Investigation No.

5    CERTAIN ELECTRONIC DIGITAL

     MEDIA DEVICES AND COMPONENTS     337-TA-796

6    THEREOF

7

8

9

10                 HIGHLY CONFIDENTIAL

11          CONFIDENTIAL BUSINESS INFORMATION

12           PURSUANT TO THE PROTECTIVE ORDER

13

14

15    VIDEOTAPED DEPOSITION OF BARTLEY K. ANDRE

16            Redwood Shores, California

17          Wednesday, February 29, 2012

18

19

20

21

22

23    REPORTED BY:

24    CYNTHIA MANNING, CSR No. 7645, CLR, CCRR

25    JOB NO. 45583

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 3

```
 1    APPEARANCES:
 2
 3    FOR COMPLAINANT APPLE INC.:
 4         MORRISON & FOERSTER, LLP
           BY:  ALISON M. TUCHER, ESQ.
 5         425 Market Street
           San Francisco, California 94105
 6         415.268.7000
           atucher@mofo.com
 7
 8
      FOR RESPONDENTS SAMSUNG ELECTRONICS COMPANY,
 9    LTD., SAMSUNG ELECTRONICS AMERICA, INC., and
      SAMSUNG TELECOMMUNICATIONS AMERICA, LLC:
10
           QUINN EMANUEL URQUHART & SULLIVAN, LLP
11         BY:  ALBERT P. BEDECARRE, ESQ.
           50 California Street
12         San Francisco, California 94111
           415.875.6600
13         albedecarre@quinnemanuel.com
14
15
16    ALSO PRESENT:
17         Erica Tierney, Apple Inc.
18         Aric Kerhoulas, Videographer
19
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 275

1    electronic device --

2        A.    Mm-hmm.

3        Q.    -- taking into account that there are

4    dotted lines that aren't part of the claimed

5    design, but if you take it all together, can you

6    look at Figure 1 and tell me what is depicted?

7            MS. TUCHER:  Objection; vague and calls

8    for a legal conclusion.

9            THE WITNESS:  It looks like it could be

10   an iPhone.

11   BY MR. BEDECARRE:

12       Q.    Does it look like a particular iPhone

13   to you?

14           MS. TUCHER:  Objection; vague and calls

15   for a legal conclusion.

16           THE WITNESS:  The dotted line parts

17   look like they could be any iPhone but an

18   iPhone 4.  And the solid line parts, it seems

19   like it could be any iPhone.

20   BY MR. BEDECARRE:

21       Q.    Is it your understanding that the

22   design that's depicted in Figure 1 is limited to

23   the rounded rectangular shape that is drawn at

24   least in part in solid lines?

25           MS. TUCHER:  Objection; calls for a

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 276

1   legal conclusion.

2            THE WITNESS:  I feel like you're asking

3   me to interpret the patent drawing.

4   BY MR. BEDECARRE:

5        Q.   I'm asking you for your understanding,

6   if you know what is disclosed there.

7            MS. TUCHER:  Same objection.

8            THE WITNESS:  Yeah.  I don't -- I don't

9   feel comfortable interpreting the -- the drawing.

10  BY MR. BEDECARRE:

11       Q.   Looking at Figure 1, can you tell

12  whether the top surface of the depicted

13  electronic device is completely flat from top to

14  bottom and edge to edge?

15       A.   I can't tell that from the -- from the

16  drawing.

17       Q.   Okay.  If you look at the remaining

18  figures, Figures 5 and 6 and 7 and 8, for

19  example, can you tell me whether the top surface

20  of the device is completely flat from top to

21  bottom and edge to edge?

22            MS. TUCHER:  Objection; vague and

23  compound, and asks the witness to interpret

24  drawings he said he's not completely comfortable

25  interpreting.

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 277

1          THE WITNESS:  I think the only thing I

2   could say, looking at the drawing, is that there

3   -- that the front face is not proud.

4   BY MR. BEDECARRE:

5          Q.   So it -- it's either co-planar with the

6   trim piece, or it is inset to the trim piece in

7   this depiction; correct?

8          A.   Inset or a negative shape.

9          Q.   What's a negative shape?

10         A.   Like a convex lens.

11         Q.   Concave?

12         A.   Concave.

13         Q.   Goes down?

14         A.   Yeah.

15         Q.   Are you familiar with any Apple iPhone

16   designs that have a concave top surface?

17         A.   Apple designs that we ship?

18         Q.   Yes.

19         A.   IPhone designs?

20         Q.   Yes.

21         A.   No.

22         Q.   Do you know of any

23   commercially-released products that have a convex

24   top surface, meaning that it's -- it's rounded,

25   proud of the edges?

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 278

1        MS. TUCHER:  Objection; vague.  Are we
2   talking just about iPhones?
3        MR. BEDECARRE:  Yes.
4        THE WITNESS:  Any -- any convex
5   positive iPhones?
6   BY MR. BEDECARRE:
7        Q.   Yes.
8        A.   No, I don't know of any.
9        Q.   And not just what's disclosed in this
10  patent.  I'm just talking about Apple iPhones for
11  the moment.
12       A.   That we sold?
13       Q.   That you've sold.
14       A.   I don't know of any.
15       Q.   Okay.  And do you have an understanding
16  of why the top glass is flat as opposed to
17  concave or convex?
18       A.   Because it looks good.
19       Q.   Any other reasons?
20       A.   It's sort of the center of the design.
21       Q.   What is the center of the design?
22       A.   I think the sheared shape and the flat
23  display.
24       Q.   Are you aware of whether or not convex
25  touch surfaces are more expensive to produce than

HIGHLY CONFIDENTIAL - CONFIDENTIAL BUSINESS INFORMATION

Page 300

1    STATE OF CALIFORNIA   )

2              :ss

3    COUNTY OF SAN MATEO   )

4         I, CYNTHIA MANNING, a Certified Shorthand

5    Reporter of the State of California, do hereby

6    certify:

7         That the foregoing proceedings were taken

8    before me at the time and place herein set forth;

9    that any witnesses in the foregoing proceedings,

10   prior to testifying, were placed under oath; that

11   a verbatim record of the proceedings was made by

12   me using machine shorthand which was thereafter

13   transcribed under my direction; further, that the

14   foregoing is an accurate transcription thereof.

15        I further certify that I am neither

16   financially interested in the action, nor a

17   relative or employee of any attorney of any of

18   the parties.

19

20        IN WITNESS WHEREOF, I have subscribed

21   my name this 29th day of February 2012.

22

23

24        CYNTHIA MANNING, CSR No. 7645, CCRR, CLR

25

# EXHIBIT 13
# UNDER SEAL

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

Page 1

1     UNITED STATES INTERNATIONAL TRADE COMMISSION

2              WASHINGTON, D.C.

3

4   In the Matter of:

5   CERTAIN ELECTRONIC DIGITAL     Investigation No.

     MEDIA DEVICES AND COMPONENTS   337-TA-796

6   THEREOF

     ----------------------------/

7

8

9

10

11

12    CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO

13            PROTECTIVE ORDER

14   VIDEOTAPED DEPOSITION OF RICO ZORKENDORFER

15        San Francisco, California

16        Friday, February 10, 2012

17

18

19

20

21

22

23   Reported by:

     LORRIE L. MARCHANT, CSR No. 10523

24           RPR, CRR, CCRR, CLR

25   JOB NO. 45576

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

1          A P P E A R A N C E S:

2

3    FOR THE CLAIMANT APPLE, INC.:

4          MORRISON & FOERSTER

5          BY:  JENNIFER LEE TAYLOR, ESQ.

6          425 Market Street

7          San Francisco, California 94105

8

9

10

11

12   FOR THE SAMSUNG RESPONDENTS:

13          QUINN, EMANUEL, URQUHART, OLIVER & HEDGE

14          BY:  ALBERT P. BEDECARRE, ESQ.

15          50 California Street

16          San Francisco, California 94111

17

18

19

20

21   ALSO PRESENT:

22          Lisa Olle, Apple Counsel

23          Gary Brewer, Videographer

24

25

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

Page 213

1       A.    Yep.

2       Q.    So anything in these drawings that's dashed

3   is not supposed to be part of the claimed invention.

4             Looking at the part with solid lines, are

5   you able to determine what is depicted?

6       A.    I can't.

7       Q.    Does this look like any design that you

8   have seen at Apple?

9       A.    I can't tell based on -- based on those

10  drawings.

11      Q.    Well, does it -- I mean, to your

12  understanding sitting here today, is the design

13  of -- disclosed in the '678 patent embodied in any

14  of Apple's released products?

15            MS. TAYLOR:  Objection.  Calls for a legal

16  conclusion.

17            THE WITNESS:  I assume it is, but I -- I

18  wouldn't be able to -- to tell you based on -- based

19  on the pictures in front of me.

20            BY MR. BEDECARRE:

21      Q.    So what would you need to know beyond the

22  pictures and the description and the claim that are

23  found in the patent to determine whether or not a

24  design embodies this patent?

25      A.    What I would need in addition to that?

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

Page 214

1      Q.    Yes.

2      A.    Some -- some -- I guess some drawings, some

3   photographs that I could interpret.

4      Q.    How about the figures of this patent?

5      A.    I -- I can't read those.  Yeah.

6      Q.    Can you interpret the drawings in this

7   patent?

8      A.    I can't.

9      Q.    Can you tell me whether or not, in Figure

10   3, the diagonal lines that run in three -- the

11   series of three across the depicted device have some

12   significance?

13          MS. TAYLOR:  Objection.  Calls for a legal

14   conclusion.

15          THE WITNESS:  I have no idea.

16          BY MR. BEDECARRE:

17      Q.    If you look at Figures 5 and 6, which are,

18   in this order, top and bottom views, according to

19   the patent, can you state whether or not the device

20   disclosed here has a continuous, flat, clear top

21   surface?

22          MS. TAYLOR:  Objection.  Conclusion.

23          THE WITNESS:  I can't.

24          BY MR. BEDECARRE:

25      Q.    Can you determine whether it has a

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

1    continuous, flat top surface?

2            MS. TAYLOR:  Same objection.

3            THE WITNESS:  I can't.

4            BY MR. BEDECARRE:

5        Q.   Are you able to identify any inventions of

6    your own disclosed in the figures of the '678

7    patent?

8            MS. TAYLOR:  Same objection.

9            THE WITNESS:  I can't.

10           BY MR. BEDECARRE:

11       Q.   Can you identify anything in the '678

12   patent figures that depicts an invention of someone

13   from -- among the other named inventors on the

14   patent?

15           MS. TAYLOR:  Same objection.

16           THE WITNESS:  I can't.

17           BY MR. BEDECARRE:

18       Q.   Did you review any prior art, as we were

19   discussing it earlier, in relationship to the

20   application for this particular patent?

21       A.   I don't think so.

22       Q.   Do you know of anyone else that did?

23       A.   I wouldn't know.

24       Q.   Do you recall any meetings or dealings with

25   patent counsel to apply for this patent?

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

Page 216

1    A.   I don't.

2    Q.   You don't --

3    A.   I don't remember.

4    Q.   Do you have any understanding of when the

5  designs depicted in this patent, United States

6  Patent '678, were embodied in a form that was fixed,

7  meaning that you had -- that these designs were

8  actually complete?

9         MS. TAYLOR:  Objection.  Calls for a legal

10  conclusion.

11        THE WITNESS:  I don't.

12        BY MR. BEDECARRE:

13    Q.   Same question for the other patent, '757.

14        MS. TAYLOR:  Same objection.

15        THE WITNESS:  I don't.

16        BY MR. BEDECARRE:

17    Q.   Do you know if anyone from your group drew

18  the figures that are in the '678 patent?

19    A.   I don't.

20    Q.   Do you believe any of them did?

21    A.   I don't think so.

22        MR. BEDECARRE:  That's all I have.  Thank

23  you for your patience.

24        THE VIDEOGRAPHER:  Is that it, everyone?

25        MS. TAYLOR:  Yes.

CONFIDENTIAL BUSINESS INFORMATION PURSUANT TO PROTECTIVE ORDER

Page 218

1                          CERTIFICATE

2

       STATE OF CALIFORNIA  )
3                           :  ss
       COUNTY OF SONOMA     )

4

5        I, Lorrie L. Marchant, a Certified Shorthand

6    Reporter, a Registered Professional Reporter, a

7    Certified Realtime Reporter, and a Certified

8    Realtime Professional within and for the State of

9    California, do hereby certify:

10        That RICO ZORKENDORFER, the witness whose

11    deposition is herein set forth, was duly

12    sworn/affirmed by me and that such deposition is a

13    true record of the testimony given by such witness.

14        I further certify that I am not related to any

15    of the parties to this action by blood or marriage

16    and that I am in no way interested in the outcome of

17    this matter.

18        In witness whereof, I have hereunto set my hand

19    this 10th day of February, 2012.

20

21

22

23    ----------------------------------------------

      LORRIE L. MARCHANT, CSR, RPR, CRR, CLR, CCRR
24    CSR No. 10523

25