# EXHIBIT O
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

```
 1
 2             UNITED STATES DISTRICT COURT
 3           NORTHERN DISTRICT OF CALIFORNIA
 4                  SAN JOSE DIVISION
 5
 6   APPLE INC., a California
     corporation,
 7
                Plaintiffs,
 8
                Vs.                    Civil Action No.
 9                                     11-CV-01846-LHK
     SAMSUNG ELECTRONICS CO.,
10   LTD., a Korean business
     entity, SAMSUNG ELECTRONICS
11   AMERICA, INC., a New York
     corporation and SAMSUNG
12   TELECOMMUNICATIONS AMERICA
     LLC, a Delaware limited
13
                Defendants.
14   ~~~~~~~~~~~~~~~~~~~~~~~~~~
     AND RELATED CROSS ACTIONS.
15   _____
16
17      **Highly Confidential - Attorney's Eyes Only**
18            VIDEOTAPED DEPOSITION OF EXPERT
19                 TONY D. GIVARGIS, PH.D.
20                  Los Angeles, California
21                  Monday, April 23, 2012
22
23   Reported By:
24   Jeanese Johnson, CSR No. 11635, CLR
25   Job No. 48793
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
 4       April 23, 2012
 5       9:11 a.m.

 8       Videotaped Deposition of Expert
 9   TONY D. GIVARGIS, PH.D., held at the
10   offices of Quinn Emanuel, 865 So. Figueroa
11   Street, 10th Floor, Los Angeles, California,
12   before Jeanese Johnson, CSR No. 11635,
13   Certified LiveNote Reporter, of the State
14   of California.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

1

2  A P P E A R A N C E S:

3

4

5     WILMERHALE

6     Attorneys for Plaintiff

7         399 Park Avenue

8         New York, New York  10022

9     BY:    VICTOR F. SOUTO, ESQ.

10            ALI H. SHAH, PH.D.

11

12    QUINN EMANUEL URQUHART & SULLIVAN

13    Attorneys for Defendant

14        555 Twin Dolphin Drive

15        Redwood Shores, California  94065

16    BY:    VICTORIA F. MAROULIS, ESQ.

17            KENNETH K. SUH, ESQ.

18

19

20  ALSO PRESENT:

21

22     COURTNEY BATES, Legal Video Specialist

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 122

1  Exhibit 12, in front of you.
2       A.  Okay.
3       Q.  Do you recognize Exhibit 12 as the
4  article by Mahmoud that is referenced in your
5  report?
6       A.  Yes.
7       Q.  You cite this article for the
8  proposition paragraph 127 that something called
9  midlets is a form of Applet; is that correct?
10      A.  Yes.
11      Q.  And for a definition of midlet, you
12 are relying on a Java tutorial, also referenced
13 in your report; is that right?
14      A.  No.
15      Q.  What are you relying on in your
16 report, with respect to the definition of midlet?
17      A.  I also rely on my own knowledge and
18 understanding of -- of midlet is.
19      Q.  Isn't it correct, sir, that you never
20 brought up midlets in your first report in the
21 claim construction phase of this case?
22      A.  That is correct.  I did not discuss
23 midlets.
24      Q.  And the Court did not discuss midlets
25 as part of its Claim Construction Order?

1     A.  I -- I don't know.
2     Q.  To the extent you reviewed the
3  Court's Claim Construction Order that we
4  previously marked as exhibit -- an exhibit today,
5  you did not see any reference to midlets;
6  correct?
7     A.  I do not recall seeing a reference to
8  midlet, but if you want me to...
9     Q.  I'll represent to you that it
10 doesn't.
11    A.  Okay.
12    Q.  And I'm just asking if you have a
13 different recollection.
14        Let's mark another exhibit as
15 Exhibit 13.
16        (Exhibit 13, an article entitled.
17         Introduction Tools Application
18          Development, is marked by the
19         Deposition Officer)
20        MR. SOUTO:  Thank you.
21    Q.  Dr. Givargis, do you recognize
22 Exhibit 13?
23    A.  No, I do not recognize it as being
24 something I have seen before.
25    Q.  I'll take it back from you, if you

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 124

1   don't recognize it.
2           MR. SOUTO:  Are you withdrawing it as
3   an exhibit?
4           MS. MAROULIS:  I am.  There might be
5   some confusion because I understood this to be
6   something he's relying on.  But if he's not, I'll
7   take it back.
8           MR. SOUTO:  Okay.  Well, okay.  I'm
9   going to give you back all of the exhibits.
10  Thank you.
11      Q.  Okay.  Let's get back to the Mahmoud
12  article.
13          Do you see, in this first statement
14  of the -- the first sentence of the abstract, it
15  says:  "The Mobile Media API is an optional
16  package that supports multimedia application on
17  J2ME enabled devices."
18      A.  Yes, that's what it said.
19      Q.  Does it suggest to you that this
20  feature is optional, it does not always appear in
21  the phone?
22      A.  The MMAPI is a framework that would
23  need to be -- to be incorporated into an
24  environment, yeah.
25      Q.  Do you have any evidence whether the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 137

1   edition of Java, will have those -- those code
2   repositories pre-installed.
3        Q.   I'm sorry.  You mentioned the
4   "repository."
5             What is the repository?
6        A.   The imports.
7        Q.   Um-hmm.
8        A.   Are importing a number of classes
9   that are part of the Micro Edition.  And the word
10  "Micro Edition" occurs in the full name of these
11  classes.  And any phone equipped with a Java
12  Micro Edition, JME or J2ME, would have these
13  libraries of, say, pre-installed.
14       Q.   When you import these items, does it
15  give you access to the module?
16       A.   What do you mean by "module"?
17       Q.   Module or a group of files.
18       A.   This particular statement give us
19  access to the classes that are part of the
20  framework.
21       Q.   Are these four lines of code part of
22  the MMA -- MMAPI?
23       A.   Yes.
24       Q.   You opined in your report that taking
25  the code from the Mahmoud Article 1 could convert

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 138

1  the code samples into an Applet; is that right?
2      A.  The code in Mahmoud is a midlet,
3  which we've -- which I defined to be consistent
4  with an Applet.
5      Q.  Are you opining that one can take the
6  code and design an Applet, using that code?
7      A.  This code listing is the entire code
8  listing for a player Applet.
9      Q.  What makes you think that the person
10 applying that code can take that code and design
11 an Applet and a phone -- a mobile phone?
12     A.  A person of ordinary skill will be
13 familiar with Applets, will be familiar with
14 Java, and will be able to use this code as-is to
15 play music on a mobile phone.
16     Q.  Would the person need to make any
17 modifications before a mobile phone could support
18 Java Applet?
19     A.  I believe -- I didn't understand the
20 question.
21     Q.  Would a person of ordinary skill need
22 to modify this code before putting in the phone
23 in order to use the Java Applets?
24     A.  The code is a complete player midlet
25 Applet.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 139

1    A phone equipped with the MMAPI will
2 support execution of this program.
3    Q.  And again, we don't see anywhere in
4 your report whether the prior art devices you
5 reviewed and analyzed for your report have or can
6 support an MMPI; correct?
7            MR. SOUTO:  Objection to form.
8            THE WITNESS:  That is incorrect.  I
9 -- I state in my report whether the devices do
10 support Java.  That is the Java Micro Edition, as
11 well as the mobile MMAPI.
12    Q.  Other than that one statement in your
13 report, that didn't have any citation.  You
14 didn't have any evidence in your report that
15 these phones could support such code.
16            MR. SOUTO:  Objection to form.
17            THE WITNESS:  The statement that I
18 have in my report, my understanding and knowledge
19 in how these phones operate and that they do
20 incorporate these technology.
21    Q.  But again, without any citation to
22 references, authorities, articles or patents;
23 correct?
24    A.  I have no citation next to the
25 statement in the record, but I -- as I said

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 140

1  earlier, would I need to review all of the
2  citations that were included as part of my report
3  to -- to answer that question, exactly.
4       Q.  The Mahmoud code, or what purports to
5  be code in this article, is for a midlet not an
6  Applet; is that correct?
7       A.  The Mahmoud code example -- and is
8  specifically about a midlet -- and in my report
9  clarify that MIDlets are Applets.  They are very
10 similar to Applet's, with the only restriction
11 being that of the amount of privileges or access
12 to resource.
13      Q.  And again, in your declaration in
14 support of claim construction proceedings, and
15 your deposition in connection with that
16 declaration, you never brought up a term midlet;
17 right?
18          MR. SOUTO:  Objection to form.
19          THE WITNESS:  No, I did not discuss
20 MIDlets, at that time, in that report.
21      Q.  You can set this document aside.
22          (Exhibit 14, United States Patent No.
23           6,526,041 is marked by the Deposition
24            Officer)
25          THE WITNESS:  Thank you.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 188

1    Q.   Yes.
2         Is it correct that your two
3    non-Infringement arguments are the alleged lack
4    of Applets and the alleged lack of MP3 mode?
5    A.   Yes.
6    Q.   Did you review, in preparation of
7    your report, Apple's responses to
8    non-Infringement Interrogatories?
9    A.   May I see the document to...
10        (Exhibit 24, Apple Inc.'s
11           Supplemental Objections and Responses
12           to Samsung's First Set of
13           Interrogatories, is marked by the
14           Deposition Officer)
15   Q.   I'm handing you what's been marked as
16   Exhibit 24 identification.
17        If you please turn to page 20 of this
18   document.
19        Are you there?
20   A.   Yes.
21   Q.   Do you recognize this document as
22   Apple's response to Samsung's Interrogatory
23   regarding its non-infringement contentions?
24   A.   Yes.
25   Q.   On -- have you seen it before?

Page 189

1   A.   Just one second.
2        I believe I may have seen this --
3   reviewed it before, yes.
4   Q.   Do you see that it discusses the
5   non-infringement argument regarding alleged lack
6   of Applets but does not discuss the alleged lack
7   of MP3 mode; correct?
8   A.   Correct.
9   Q.   This response also does not discuss
10  the springboard module discussed in your report;
11  correct?
12  A.   That is correct, yes.
13  Q.   In preparing your report on
14  non-infringement, did you examine Apple's user
15  guide?
16  A.   Which Apple user guides?
17  Q.   Any Apple user guides.
18  A.   I am -- I carefully reviewed the
19  audio session programming guide from Apple.  I
20  also reviewed the iPhone app programming guide
21  from Apple, and the AV foundation programming
22  information guide from Apple.
23           (Exhibit 25, iPhone User Guide, is
24              marked by the Deposition Officer)
25  Q.   I'm going to hand you what's been