# Exhibit N
# Filed Under Seal

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
sarajenkins@quinnemanuel.com

January 6, 2012

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
**VIA ELECTRONIC MAIL**

Peter Kolovos
WilmerHale
60 State Street
Boston, MA 02109

Re:     Apple Inc. v. Samsung Elecs. Co., No. 11-cv-1846-LHK (N.D. Cal.)

Dear Peter:

I write in response to your December 13, 2011 letter concerning the search terms Samsung used to locate responsive documents from the files of the named inventors.  Generally speaking, your suggestions to "improve" those searches are overbroad or duplicative.  A good search term distinguishes between responsive and non-responsive documents and does not hit 90% of a custodian's documents.  Samsung's search terms were chosen to capture all relevant documents while avoiding the undue burden associated with Apple's suggested broad searches, which would capture, for example, every e-mail with an attachment and every document referencing an e-mail.  With respect to your specific concerns, we respond as follows:

- **'055 and '871 patents**.  Samsung has not yet produced documents from custodians Hye-Young Lee and Pyung-soo Kim, the inventors of the '055 and '871 patents, but will timely do so.

- **Korean language search terms**.  You assert that Samsung has "effectively designed its searches to exclude Korean language documents."  That accusation is completely unfounded as evidenced by the thousands of Korean language documents Samsung has

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo  100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000  FAX +49(0) 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow  125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667

<u>**Highly Confidential - Attorneys' Eyes Only**</u>

Peter Kolovos
January 6, 2012

produced to date.  Samsung conducted extensive interviews on the topic of document
collection with each deponent, including time devoted to identifying and refining search
terms.  Samsung used Korean equivalents of the search terms applied to the inventors'
files whenever it was necessary or appropriate.  Note also that the submissions to the
standards-setting organizations are in English.

- **3GPP related search terms**.  Apple believes Samsung should have searched for "WG1,"
  as well as any standards that Samsung claims a patent is essential to, such as, for
  example, "25.212" and "25.322."  But, although it did not necessarily have to, Samsung
  ran searches for "TSG-RAN Working Group1" and "TSGR" for both the '410 and '001
  patents.  Samsung is not obligated, or physically able, to search for every conceivable
  variation of every potential search term associated with 3GPP.  Rather, Samsung selected
  a discrete set of search terms to reasonably identify responsive documents.

- **Patent Number Search terms.**  You complain of Samsung's search terms based on
  patent numbers, but each of Samsung's searches for patent numbers included the entire
  patent number with and without commas and the application number.  Apple provides no
  reason to believe these terms are insufficient.  Again, while alternative formats do exist,
  Samsung is neither obligated nor able to search for every conceivable variation of a
  search term, many of which are overbroad and would hit on non-responsive documents.
  Moreover, Apple itself neglected to search for *any* patent numbers *at all* in its own
  searches of its own inventors.

- **Managers, patent prosecutors, members of Samsung's IP group**.  Apple's proposal
  would not sufficiently limit the search to documents relevant to the patents-at-issue.
  While inventors communicate daily with these individuals on irrelevant topics, it would
  be impossible for them to communicate meaningfully on a relevant topic without using
  one of the other search terms.  That is, the addition of these names would not hit
  responsive documents that were not otherwise found using Samsung's technology-
  tailored search terms.

- **'711 patent**. As to the '711 patent, Samsung searched using patent and application
  numbers and key terms in the patent, including "audio processor unit" or (indication and
  "music file") or "music background play object" or ("application module" and "applet")
  or "interface for music play" or ("portable terminal" and MP3) or "Multi-tasking
  apparatus and method in portable terminal" or "MP3BGM."  Apple's suggestions for
  broadening the search either would be duplicative or significantly overbroad.  For
  example, "cell* phone," "mobile phone," and "mobile device," would clearly capture
  documents with no relation to the patented invention and would duplicate the results of
  Samsung's tailored search.  Moreover, while Apple may now consider the terms
  "background music," "standby music," and "standby mode music," to be "commonly-

H‍IGHLY C‍ONFIDENTIAL - A‍TTORNEYS' E‍YES O‍NLY

Peter Kolovos
January 6, 2012

used terms," Samsung applied search terms based on terms in common use during the relevant time, as evidenced by the use of those terms, which may not coincide with the terminology used in the patent itself.

- **'460 patent.**  As to the '460 patent, Samsung searched using patent and application numbers and key terms in the patent, including "digital image processing," and "reproduction mode."  Samsung tailored these terms to retrieve documents reasonably related to the claimed technology. Your suggestion that omitting the term "e-mail" was an "egregious" failure, is almost undeserving of response.  Although "e-mail" appears in the claim language of the '460 patent, it is not tailored to the particular invention and would capture many nonresponsive documents because it is an extremely common term. Similarly, Apple's suggestions for "obvious" terms, such as "camera," "attach*," "enclose*," and "mode" are clearly overbroad and not reasonably limited to the patented technology.  They would, for example, capture every email that included an "attachment" and every communication referring to something "enclosed."

- **'893 patent**.  As to the '893 patent, Samsung searched using patent and application numbers and key terms in the patent, including "index value," "image," and "mobile visual phone."  Samsung tailored these terms to retrieve documents reasonably related to the claimed technology.  Again, Apple's suggestions are overbroad and not reasonably limited to the patented technology.

- **'516 patent**.  As to the '516 patent, Apple's suggested terms are entirely too broad and generic.  In fact, Samsung initially attempted to use some of these terms, but they returned tens of thousands of irrelevant documents.  For example, "E-DCH," "DCH," "E-DPDCH," "DPDCH," and "E-DPCCH" are identifiers for specific channel types and hit too many irrelevant documents, including thousands of standards proposals that have nothing to do with the patented invention.  Similarly, "transmit power" and "transport format," by themselves, are far too generic.  In contrast, Samsung chose search terms that combined concepts in useful and specific ways to capture documents relevant to the '516 patent.

- **'001 patent**.  As to the '001 patent, Apple suggests Samsung needs to break up the terms "radio frame matchers" and "radio frame segmenter" into boolean searches, e.g., ("radio" near5 "frame" near5 "match*") or ("radio" near5 "frame" near5 "segment*").  But Apple does not explain why the terms run by Samsung are inadequate.  For example, Apple does not point to any contemporaneous documents that only could be identified through these boolean searches, i.e., would not be found using Samsung's search terms, "radio frame matchers" and "radio frame segmenter."  Similarly, Apple does not point to any documents that only could be identified using Apple's suggested variations, including, "fill* bits," "padding bits," "physical channel segment," ("segment*" near25 ("interleav*"

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Peter Kolovos
January 6, 2012

or "transport channel" or ("serial" near5 "data"))), ("multiplex* near25 ("radio frame" or "data frame" or "transport channel" or ("serial" near5 "data"))).  Finally, although Samsung ran searches for the foreign counterparts of the '410 and '001 patents, Apple contends boolean searches should have been run using ("KR" near5 "26221") instead of "1999-26221."  Again, Samsung is not required to or capable of searching for every conceivable variation of a search term.

- **'941 patent**.  As to the '941 patent, Apple's suggested terms are again too generic. "Header near5 PDU" or "RLC near5 PDU" would return too many irrelevant documents to be useful.  In fact, Samsung's were more than satisfactory and themselves returned many irrelevant documents.  Similarly, Apple's suggestion that Samsung search the documents for terms related to the "patent objectives," such as "VoIP," is ludicrous.  A search for those terms would return an overwhelming portion of irrelevant documents. Samsung chose search terms that, while broad, touch on concepts particular to the patents in order to capture documents relevant to the '941 patent, while excluding irrelevant documents.

- **'604 patent**.  As to the '604 patent, Apple's suggested terms are broad enough that they would appear in most graduate level textbooks on digital communications.  They are (again) basic concepts, not at all specific to the '604 patent.  Given the field in which the custodians work, Apple's terms are not helpful.  For example, Apple's suggested terms "channel cod*," "bit stream," and "bit error rate" are much too generic to be useful, and the terms "turbo cod*," "transport block," and "superframe" are too general for the specific invention claimed.  In contrast, Samsung chose search terms that, while broad, touched on concepts particular to the patent in order to capture documents relevant to the '604 patent.  Indeed, some of Apple's general terms are included in Samsung's tailored search terms.  Additionally, despite the aforementioned document collection interviews, we have no reason to believe that Samsung used the term "trbk."  If Apple has reason to believe that a search for this term would produce responsive documents that have not already been produced, please provide that reason.

- **'410 patent**.  As to the '410 patent, Apple suggests Samsung should have run the term "demultiplexer."  But Apple does not suggest, nor could it credibly suggest, that a reasonable portion of documents containing the word "demultiplexer" would be relevant to this case.  Just to illustrate the breadth of the use of the term, there are over 25,000 U.S. patents containing the word "demultiplexer," and that number includes inventions directed to prosthetics, radiation, cameras, ink jet printers, and digital TVs among other technologies.  Apple also suggests searches for "repetition," "puncture*," and "rate matching."  The term "repetition" appears in over 100,000 U.S. patents, and Apple does not explain why its proposed search terms should have been selected over the ones run by Samsung.

4

<u>**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**</u>

Peter Kolovos
January 6, 2012

- **'792 patent**.  As to the '792 patent, Apple's suggested terms are (again) so broad that they would appear in any graduate level textbooks in the field of digital communication.  They are basic concepts, not at all specific to the '792 patent.  Given the field in which the custodians work, Apple's terms are not helpful.  For example, "interleav*," "QAM," "quadrature amplitude modulation," and "constellation" are much too generic.  Interleavers are used in almost all modern transceivers and QAM describes most modulation schemes in use.  Additionally, "systematic bit" is not specific to the claimed invention, and the relevance of "systematic cod*" is not apparent on its face. In contrast, Samsung chose search terms that, while broad, touch on concepts particular to the patent in order to capture documents relevant to the '792 patent.

- **'867 patent**.  As to the '867 patent, Samsung searched using patent and application numbers and key terms in the patent, including "primary scrambling code," "secondary scrambling code," "m-sequence generator," "((K-1)*M+K+1)," "downlink scrambling code generator," "mask function," "masking function," "I-channel component," "Q-channel component," and "generator polynomial of degree 18."  You attempt to cast Samsung's list as "grossly inadequate" by selectively listing only two of these terms.  In fact, the terms you suggest were included in Samsung's search terms, and you have suggested only variations on those terms.  Yet again, Samsung is neither obligated nor able to search for every conceivable variation of each search term.

We hope this satisfies your concerns.  Please let me know if you have any further questions.


Very truly yours,

*/s/ Sara Jenkins*


Sara Jenkins