# Exhibit S

# Filed Under Seal

**In The Matter Of:** ORIGINAL

*APPLE INC.,*

*v.*

*SAMSUNG ELECTRONICS CO.,*

*YOUNG-BUM KIM - Vol. 1*
November 11, 2011

*HIGHLY CONFIDENTIAL*
*ATTORNEYS' EYES ONLY*

**MERRILL CORPORATION**
LegaLink, Inc.
101 Arch Street
3rd Floor
Boston, MA 02110
Phone: 617.542.0039
Fax: 617.542.2119

```
 1        A.    I would think about six to seven times on
 2   average.
 3        Q.    So I just want to make sure I understand.
 4   For approximately four or five years you attended
 5   about four times a year, and since then you have
 6   attended approximately six times a year?
 7        A.    Yes.  In other words, right after I joined
 8   the company the frequency was less than thereafter.
 9        Q.    So is it fair to say you have attended
10   approximately 50 meetings?
11             MR. MACK:  Objection.  Calls for
12   speculation.
13             THE WITNESS:  I think about approximately
14   either case, based on the number of years I worked
15   at the company.
16             MS. HERRIOT:  Q.  Did you ever attend RAN
17   plenary meetings?
18        A.    Approximately one, according to my
19   recollection.
20        Q.    And did you attend working group meetings?
21        A.    Yes, I did.
22        Q.    Which working groups did you participate
23   in?
24             MR. MACK:  Objection.  Vague.
25             THE WITNESS:  It was 3GPP RAN working
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM KIM - 11/11/2011

Page 61

```
 1    group one.
 2            MS. HERRIOT:  Q.  Any other working
 3    groups?
 4        A.    Yes, I have, although not frequently.
 5        Q.    And what are they?
 6        A.    They were RAN 2 and RAN 4.
 7        Q.    What language were these meetings
 8    conducted in that you attended?
 9        A.    In english.
10        Q.    And did you understand what was said?
11        A.    For the most part I did.
12        Q.    Did you make submissions to the working
13    group in English?
14            MR. MACK:  Objection.  Vague.
15            THE WITNESS:  Any submissions in writing?
16            MS. HERRIOT:  Q.  Mm-hmm.
17        A.    Yes.
18        Q.    Have you ever prepared any reports at
19    Samsung about your activities at 3GPP?
20        A.    Yes, I have.
21        Q.    Did you prepare reports about particular
22    meetings?
23        A.    I have prepared those in the past.
24        Q.    How frequently?
25        A.    I don't have an exact recollection as to
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM  KIM - 11/11/2011

Page 62

```
 1    the frequency, but over a certain time period I
 2    believe, according to my recollection, that I had
 3    prepared approximately one out of two meetings that
 4    I attended for the standards -- standard meetings.
 5        Q.    Is he saying that he did it approximately
 6    half the time, or are you saying that you did it for
 7    one meeting total?
 8        A.    I'm not saying that I prepared
 9    approximately half the meetings that I personally
10    attended, but I'm saying that would have been the
11    case during a certain time period, which I don't
12    quite recall what that was right now.
13        Q.    Would that have been the time period
14    around when you were coming up with the idea for the
15    '516 patent?
16            MR. MACK:  Objection.  Vague.  Calls for
17    speculation.
18            THE WITNESS:  That is my recollection.
19            MS. HERRIOT:  Counsel, to the extent these
20    have not already been produced, we request that they
21    be produced.
22            MR. MACK:  It's my understanding they have
23    been produced, but we will check.
24            MS. HERRIOT:  Q.  Have you ever held a
25    leadership position within 3GPP?
```

Merrill Corporation - Boston
617-542-0039                              www.merrillcorp.com/law

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM  KIM  -  11/11/2011

Page 63

```
 1              MR. MACK:  Objection.  Vague.
 2              THE WITNESS:  No, I have not.
 3              MS. HERRIOT:  Q.  Are you familiar with
 4   the procedures that are used in the working groups?
 5              MR. MACK:  Objection.  Vague.
 6              THE WITNESS:  I believe I am familiar with
 7   those, based on my past experience related to that.
 8              MS. HERRIOT:  I'd like to introduce
 9   Exhibit 5.
10              (Deposition Exhibit 5
11               was marked for identification.)
12              MS. HERRIOT:  Q.  You have heard the
13   chairmen of working groups call the -- read the call
14   for IPR at the beginning of the working group
15   meetings that you attended; correct?
16              MR. MACK:  Objection.  Form.
17              MS. HERRIOT:  If you require it, it's in
18   Korean at the back, as well.  The last couple of
19   pages are in Korean at the very back of this big
20   packet.  The page in front of that.
21              THE WITNESS:  Yes, I have heard about it.
22              MS. HERRIOT:  Q.  And the meeting minutes
23   that I just handed you, those are the meeting
24   minutes for the RAN working group number 39.  And
25   you attended this meeting; correct?
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM KIM - 11/11/2011

Page 78

1        MR. MACK:  Objection.  Vague.
2        THE WITNESS:  For instance, if an
3   individual prepares a proposal, people who work in
4   the related subject would have a meeting.  There
5   would be an actual physical meeting or meetings
6   conducted among those people, or sometimes the
7   information is exchanged via e-mail.
8        MS. HERRIOT:  Q.  And then -- so are those
9   meetings and e-mails about creating the proposal, or
10  is that after someone has finished drafting it?
11       MR. MACK:  Objection.  Vague.  Compound.
12       THE WITNESS:  I think it applies to both.
13  It can happen in the course of creation of idea or
14  ideas or after the completion of such a written
15  proposal.
16       MS. HERRIOT:  Q.  And what is the purpose
17  of a review after the proposal has been drafted?
18       MR. MACK:  Objection.  Vague.  Calls for
19  speculation.
20       THE WITNESS:  The purpose will be
21  typically to see if there will be any items or
22  aspects that could be supplemented or improved on
23  technologically, or from technical aspect.
24       MS. HERRIOT:  Q.  During the review of a
25  potential submission is there any discussion about

```
 1   whether Samsung has a patent or a patent application
 2   that covers the proposal?
 3             MR. MACK:  Objection.  Vague.  And I will
 4   caution the witness not to reveal the contents of
 5   any attorney-client privileged communications.
 6             THE WITNESS:  Yes, I do recall that
 7   happening.
 8             MS. HERRIOT:  Q.  If you were to create a
 9   proposal that was not currently covered by a patent,
10   might there be a discussion that Samsung should seek
11   a patent covering the proposal?
12             MR. MACK:  Objection.  Form.  Calls for
13   speculation.  Incomplete hypothetical.
14             THE WITNESS:  That will be a -- possible
15   under such process.
16             MS. HERRIOT:  Q.  Who is usually involved
17   in the internal review process for reviewing
18   potential submissions?
19             MR. MACK:  Objection.  Vague.
20             THE WITNESS:  The people who are listed in
21   the '516 patent are included.
22             MS. HERRIOT:  Q.  Who else would be
23   involved?
24        A.   Based on my recollection, I think the
25   people who worked within the same department would
```

```
 1    be involved.
 2        Q.   And would anybody else be involved?
 3        A.   Not that I can recall.
 4        Q.   What about with other proposals you have
 5    been involved in?
 6             MR. MACK:  Objection.  Vague.
 7             MS. HERRIOT:  Q.  Who would be involved
 8    with those proposals other than the people who
 9    initially drafted them?
10        A.   That would vary, depending on the proposal
11    each time.  But at least amongst the people who work
12    on RAN 1 within Samsung exchange information.
13        Q.   Would there be anybody involved in the
14    process other than the Samsung representatives at
15    the RAN 1?
16        A.   Not to my recollection.
17        Q.   If somebody other than yourself initially
18    drafts a proposal, do you have any role in reviewing
19    that proposal before it is presented to 3GPP?
20             MR. MACK:  Objection.  Vague.  Incomplete
21    hypothetical.
22             THE WITNESS:  Although I am not officially
23    given such a role, there would be an exchange of
24    views amongst colleagues who work together.
25             MS. HERRIOT:  Q.  Do you remember whether
```

1   any proposals were rejected inside Samsung and not
2   proposed to 3GPP?
3           MR. MACK:  Objection.  Vague.  Calls for
4   speculation.
5           THE WITNESS:  That happened occasionally,
6   as far as I recall.
7           MS. HERRIOT:  Q.  Do you recall why they
8   were rejected?
9           MR. MACK:  Same objections.
10          THE WITNESS:  If a written proposal gets
11  rejected, the primary reason, concern, would be a --
12  the level of perfection, the level of completeness
13  from a technical perspective is low.
14          MS. HERRIOT:  Q.  Does Samsung have any
15  written policies or procedures related to
16  participation at standard setting organizations?
17          MR. MACK:  Objection.  Vague.  And I will
18  caution the witness not to reveal the contents of
19  any attorney-client privileged communications.
20          THE WITNESS:  Not to my knowledge, no.
21          MS. HERRIOT:  Q.  Have you seen any
22  written materials about participating at standard
23  setting organizations?
24          MR. MACK:  Objection.  Vague.  Same
25  instruction.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM  KIM - 11/11/2011

Page 82

```
 1              THE WITNESS:  When you say written
 2   materials about participating, could you be a little
 3   more specific, please?
 4              MS. HERRIOT:  Q.  Any written documents at
 5   Samsung about participation in, attendance,
 6   submitting of proposals, anything like that, at
 7   standard setting organizations?
 8              MR. MACK:  Objection.  Compound.  Same
 9   instruction.
10              THE WITNESS:  Typically speaking, in order
11   to participate in a standard meeting, one needs to
12   go through a procedure that involves a business trip
13   in the company.
14              MS. HERRIOT:  Q.  I understand that you
15   would probably travel on a trip in order to attend
16   the meeting.  But before you attend is there any
17   written materials or meetings or trainings relating
18   to that attendance?
19              MR. MACK:  Objection.  Vague.  Compound.
20              THE WITNESS:  First of all, there is no
21   official document related to that, but there may be
22   some document related to or reflecting a meeting
23   internally.
24              MS. HERRIOT:  Q.  And what would those
25   internal meetings be about?
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM KIM - 11/11/2011

Page 83

```
 1        A.   I would think there may be documents that
 2   are prepared at a meeting that is held in order to
 3   improve a proposal, like I mentioned before.
 4        Q.   So those would be maybe draft proposals,
 5   then.  Is that what you are talking about?
 6        A.   That would be included as well.
 7        Q.   What else would be included?
 8        A.   At the time of a review, a meeting, the
 9   said meeting may be conducted with just one agenda,
10   but sometimes more than one agenda.
11             As I recall, upon the conclusion of such a
12   meeting there would be a record that is kept that
13   summarizes what's discussed in the meeting.
14             MS. HERRIOT:  To the extent that it hasn't
15   already yet been produced, we request that be
16   produced.
17        Q.   Does Samsung have an IPR policy?
18             MR. MACK:  Objection.  Calls for
19   speculation.  Calls for a legal conclusion.
20             THE WITNESS:  I don't quite understand as
21   to what you mean when you say IPR policy.
22             MS. HERRIOT:  Q.  Does Samsung have a
23   policy relating to intellectual property rights?
24             MR. MACK:  Objection.  Vague.  Calls for
25   speculation.
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
YOUNG-BUM KIM - 11/11/2011

Page 84

```
 1              THE WITNESS:  I don't have an
 2   understanding as to Samsung's policy, official
 3   policy.
 4              MS. HERRIOT:  Q.  Do you remember if
 5   Samsung made a proposal to 3GPP relating to scaling
 6   power in a UMTS network using enhanced data
 7   channels?
 8         A.   Yes, I do.
 9              MS. HERRIOT:  I'd like to introduce --
10              What is it, Exhibit 7?
11              -- Exhibit 7 into the record.
12              (Deposition Exhibit 7
13              was marked for identification.)
14              MS. HERRIOT:  Q.  I'm showing you a change
15   request entitled "T doc R1-050565."  Have you seen
16   this document before?
17              MR. MACK:  Objection.  Instruct the
18   witness not to answer to the extent it would reveal
19   attorney-client privileged communications.  But to
20   the extent you have seen this document outside
21   meetings with counsel, you can answer.
22              THE WITNESS:  As I sit here today, I don't
23   exactly recall having this document before.
24              However, I believe there would be a
25   relationship between seeing the title of this
```