# EXHIBIT A

| | |
|---|---|
| HAROLD J. MCELHINNY (CA SBN 66781) <br> hmcelhinny@mofo.com <br> MICHAEL A. JACOBS (CA SBN 111664) <br> mjacobs@mofo.com <br> RACHEL KREVANS (CA SBN 116421) <br> rkrevans@mofo.com <br> JENNIFER LEE TAYLOR (CA SBN 161368) <br> jtaylor@mofo.com <br> MORRISON & FOERSTER LLP <br> 425 Market Street <br> San Francisco, California 94105-2482 <br> Telephone: (415) 268-7000 <br> Facsimile: (415) 268-7522 <br><br> Attorneys for Plaintiff and <br> Counterclaim-Defendant APPLE INC. | WILLIAM F. LEE <br> william.lee@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 60 State Street <br> Boston, MA 02109 <br> Telephone: (617) 526-6000 <br> Facsimile: (617) 526-5000 <br><br> MARK D. SELWYN (SBN 244180) <br> mark.selwyn@wilmerhale.com <br> WILMER CUTLER PICKERING <br> HALE AND DORR LLP <br> 950 Page Mill Road <br> Palo Alto, California 94304 <br> Telephone: (650) 858-6000 <br> Facsimile: (650) 858-6100 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 11-cv-01846-LHK (PSG) <br><br> **APPLE'S CORRECTED RENEWED MOTION TO SEAL** |

APPLE'S CORRECTED RENEWED MOTION TO SEAL
CASE NO. 11-CV-01846-LHK (PSG)
sf-3249262

In accordance with Civil Local Rules 7-11 and 79-5, and General Order No. 62, Apple submits this renewed motion to seal relating to certain documents ordered filed publicly in the Court's February 1 Order (Dkt. No. 2222).  Apple requests that the Court permit the following documents or portions thereof to be filed under seal:

1. Exhibits 1, 7, and 10 to the Price Declaration in Support of Samsung's Opposition to Apple's 37(b)(2) Motion (Dkt. No. 801).
2. Exhibit C to the Price Declaration in Support of Samsung's Supplemental Response to Apple's 37(b)(2) Motion (Dkt. No. 857).
3. Samsung's Motion to Strike (Dkt. No. 934).
4. Exhibits P, Q, R, S, T, U, V, W, Y, Z, AA, BB, CC, DD, FF and GG to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934).
5. Exhibits U and X to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934).
6. Exhibit 34 to the Pernick Declaration in Support of Apple's Motion to Strike (Dkt. No. 939).
7. Exhibits 1-5 to the Supplemental Price Declaration (Dkt. 984).
8. Exhibits 1-5 to the Corrected Supplemental Price Declaration (Dkt. 990).
9. Second Supplemental Price Declaration (Dkt. 994).
10. Exhibits B-E to the Second Supplemental Price Declaration (Dkt. 994).
11. Exhibits A, B and C to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996).
12. Exhibits 9, 23, 24, 25, 26, 28 and 32 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996).

As discussed further below, some of the Apple confidential financial information included in the request stated above is identical to information that is presently the subject of Apple's appeal to the Federal Circuit.  For the reasons stated below, Apple requests that the Court order the information filed under seal or, if the Court denies Apple's renewed motion to seal, stay the

disclosure of any information until a ruling by the Federal Circuit on the related appeal. Oral argument in that appeal has been scheduled for March 26, 2013.

Also discussed further below, many of these exhibits are license agreements between Apple and third parties, which Apple seeks to seal in full for the reasons set forth below. Apple has sent notice to each of the license counterparties affected by the February 1, 2013 Order that the Court denied, without prejudice, Apple's initial motion to seal these agreements. Apple requests the Court defer ruling on this renewed motion to seal, at least as it relates to any third party information, for an additional two weeks to allow any third parties that wish to be heard an opportunity to make a submission to the Court.

### I. THE COURT SHOULD SEAL FINANCIAL AND CAPACITY INFORMATION, THIRD PARTY RESEARCH DATA, AND ROYALTY AND PAYMENT INFORMATION IN LICENSES

The Court should grant Apple's renewed motion to seal the material listed above, narrowly chosen from over 300 documents at issue in the February 1 Order. The "good cause" standard applies with respect to the non-dispositive motions underlying the motions to seal addressed in the February 1 Order. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *Philips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002).

#### A.  The Court should seal detailed capacity and financial information

Apple's confidential financial information and capacity details qualify as trade secret, and certainly meet the "good cause" standard. Apple seeks to seal the following documents because they contain sensitive financial and/or capacity information:

- Exhibit 1 to the Price Declaration in Support of Samsung's Opposition to Apple's 37(b)(2) Motion (Dkt. No. 801), consisting of 171 pages of gross margin reports, should be sealed in its entirety.
- Exhibit 7 to the Price Declaration in Support of Samsung's Opposition to Apple's 37(b)(2) Motion (Dkt. No. 801), consisting of a report with product-line specific and reseller-specific sales information should be sealed in its entirety.

- Exhibit 10 to the Price Declaration in Support of Samsung's Opposition to Apple's 37(b)(2) Motion (Dkt. No. 801), consisting of a detailed search engine revenue report setting out specific search engine revenue for each individual search engine provider, divided into individual months, should be sealed in its entirety.
- Exhibit C to the Price Declaration in Support of Samsung's Supplemental Response to Apple's 37(b)(2) Motion (Dkt. No. 857), consisting of the Expert Report of Terry L. Musika, should be sealed in part as identified in the Declaration of Erica Tierney in Support of Apple's Renewed Motion to Seal ("Tierney Declaration"). It contains financial and capacity information, as well as third-party information as discussed below.
- Exhibit A to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of the Rebuttal Expert Report of Terry L. Musika, should be sealed in part as identified in the Tierney Declaration. It contains financial information, as well as third-party and licensing information as discussed below.
- Exhibit B to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of excerpts from the Expert Report of Terry L. Musika discussed above as Exhibit C to the Price Declaration, should be sealed in part as identified in the Tierney Declaration. It contains both financial and capacity information.
- Exhibit C to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of excerpts from the deposition transcript of Mark Buckley, should be sealed in part as identified in the Tierney Declaration.
- Exhibit 34 to the Pernick Declaration in Support of Apple's Motion to Strike (Dkt. No. 939), consisting of the May 11 Supplemental Expert Report of Michael J. Wagner, should be sealed in part as identified in the Tierney Declaration.

- Exhibit 32 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of excerpts from the April 20, 2012 Corrected Expert Report of Michael J. Wagner, should be sealed in part as identified in the Tierney Declaration.

The Court has previously approved sealing of capacity information, including the exact information at issue in Price Ex. C, which consists of the Musika expert report. (Dkt. No. 1649 at 12-13.) As the Court held at that time:

> [D]isclosure of this information would cause substantial competitive harm to Apple.  Competitors and suppliers armed with knowledge of Apple's capacity would be able to alter their business and pricing models to gain an unfair advantage over Apple in such a way that would harm its competitive standing.  Suppliers, for instance, could predict when Apple would most need to increase supply and leverage this knowledge to exact substantial price increases.  Similarly, competitors could lower their prices during periods when Apple has excess capacity and is therefore most vulnerable to a price cut.  Although Apple seeks to seal *past* capacity data, such data is cyclical and would allow competitors and suppliers to discover the patterns in Apple's capacity that would make it easy to predict Apple's current and future capacity constraints.

(*Id.* at 4 (internal quotations and citations omitted).)

Apple's sensitive financial information also warrants sealing.  Trade secrets, as defined in the Restatement of Torts, include information used in a business that gives an advantage over competitors who do not know or use it.  *Restatement (First) of Torts* § 757, cmt. B.  Detailed profits and costs are precisely this type of information.  *See, e.g.*, *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (concluding that data relating to profit margin constituted trade secrets); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1230 (Pa. Super. Ct. 1989) (finding profit margin data protectable as trade secret).  For this reason, courts consistently recognize that detailed financial information constitutes a trade secret and a compelling need exists for maintaining its confidentiality.  *See AMC Tech., LLC v. Cisco Sys.*, 2012 U.S. Dist. LEXIS 9934 (N.D. Cal. Jan. 27, 2012) (finding compelling reasons to seal information that would have allowed public to determine profit margins); *TriQuint Semiconductor v. Avago Techs. Ltd.*, 2011 U.S. Dist. LEXIS 143942, at *10, 11, 21 (D. Ariz.

Dec. 12, 2011) (sealing confidential financial information including market analysis information, cost information, capacity information and profit margins for specific products). The irreparable harm that would result from disclosure of trade secrets is undeniable. *See Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (recognizing harms of disclosure of confidential business information to competitors and collecting cases). Indeed, "[a] trade secret once lost is, of course, lost forever." *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (quotation omitted). And vigorous protection of such information is essential to maintaining a competitive business environment. *See Rockwell Graphic Sys., Inc. v. DEV Indus. Inc.*, 925 F.2d 174, 180 (7th Cir. 1991).

Apple takes extensive steps to protect the secrecy of its critical financial and capacity information. (Tierney Decl. ¶ 11.) Even within Apple, very few people have access to this information. Access is on a "need to know" basis and must be approved in advance by one of Apple's Vice Presidents of Finance. (Dkt. No. 1502 ¶ 3.) The list of approved individuals is reviewed quarterly to remove employees who no longer require access do not receive that information. (*Id.*) On the rare occasions that Apple must disclose its non-public financial and capacity information to those outside Apple, it marks the information "confidential" and distributes it subject to highly restrictive nondisclosure agreements or protective orders. (*Id.*)

Apple goes to such lengths because, like its capacity information, the financial information that Apple seeks to keep confidential is competitively sensitive and derives enormous value from the fact that it is not shared with the general public or others who could derive economic benefit from this data – Apple's competitors and suppliers. (Dkt. No. 1502 at ¶¶ 4-8; Tierney Decl. ¶ 11.) Apple's competitors could use profits and margins data to undercut Apple's prices by determining the products for which Apple has substantial profits, low costs, and wide margins and thus would be most susceptible to a price cut. (Dkt. No. 1502 at ¶ 7; Tierney Decl. ¶ 11.) Competitors' products—particularly if released with pricing designed to take advantage of unfair knowledge of Apple's bottom line—will substantially affect demand for Apple's products. Competitors could use the information to develop a slightly less advanced smartphone or tablet and sell that product successfully at a price strategically below Apple's margins. The facts of this

case substantiate this risk, as Samsung may be in a position to undercut Apple's prices for smartphones and tablets, having already economized on design costs by free-riding off Apple's innovation. Moreover, Apple's suppliers could use quarterly profits, costs, and margins data to determine when Apple has the lowest margins and is thus more vulnerable to a cost increase. (Dkt. No. 1502 at ¶ 8; Tierney Decl. ¶ 11.)

Because Apple's confidential financial data constitute invaluable trade secrets, and a compelling need exists for maintaining their confidentiality, Apple meets the "good cause" standard for sealing. *See, e.g., Jazz Photo*, 439 F.3d at 1357-1358 (affirming order denying competitor access to a trial to avoid disclosure of confidential "documents and information relating to [litigant's] customers, suppliers, manufacturing processes, financial condition, and the quantity and value of its imports"); *TriQuint Semiconductor*, 2011 WL 6182346, at *2-4, 6-7 (sealing confidential financial information including market analysis information, cost information, capacity information, and profit margins for specific products). In light of the great volume of information already disclosed, there is no public need for disclosure of Apple's narrowly identified trade secret information. Any further disclosure would provide "comparatively little value to the public in terms of enhancing its 'understanding [of] the judicial process.'" *Richardson v. Mylan Inc.*, 2011 WL 837148, at *2 (S.D. Cal. Mar. 9, 2011) (noting that sealed portions of record "do not include any information vital to understanding the nature of the underlying proceedings"); *see also MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1106 (D. Ariz. 2010) (moving party demonstrated good cause to seal licensing agreement in patent infringement case in part since "public has a diminished need for th[e] document because it is 'only tangentially related to the underlying cause of action'" (*quoting Kamakana*, 447 F.3d at 1179)).

Product-line specific information, i.e., financial details with information as to specific versions of a given product, is also critically sensitive and valuable. (Dkt. No. 1502 ¶ 7; Tierney Decl. ¶ 12.) Product line sales and revenue information reveal to competitors what Apple's most and least successful products are, and therefore provide unfair intelligence into which markets are ripe for competition and which markets may be more difficult to approach. (Dkt. No. 1502 ¶ 7;

Tierney Decl. ¶ 12.)  Highly specific search engine revenue is analogous and confidential for the same reason; revealing precisely how much Apple receives in individual quarters from individual search engines would competitively damage Apple by revealing to its competitors what its most and least successful search engine relationships are, and provide intelligence into which markets they should focus their competitive efforts.  (Tierney Decl. ¶ 12.)

### B. The Court should seal third party confidential research data

Portions of the Musika expert report, filed as Exhibit C to the Price Declaration in Support of Samsung's Supplemental Response to Apple's 37(b)(2) Motion (Dkt. No. 857) and discussed above with respect to the financial and capacity information in the same document, contain market share data from third-party IDC.  The Court has previously agreed that publication of extensive IDC data would significantly harm IDC's competitive standing, as IDC sells this data.  (Dkt. No. 1649 at 10.)  Specifically, Exhibits 11.1, 12, 12.1, and 13.1 of the Musika Expert Report contain full datasheets from market analysis reports prepared by IDC.  The public interest in access to these charts is low, as they extend to market shares held by nonparties to their litigation.  The risk of commercial harm to IDC from their publication is severe, as each report sold by a company such as IDC typically costs thousands of dollars and public disclosure completely supplants the market for that report.  (Tierney Decl. ¶ 15.)

### C. The Court should seal license agreements and information in other documents that reflect license royalty and payment terms

Apple seeks to seal the following portions of documents because they contain royalty and payment terms from third party licenses:

- Exhibit T to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934), consisting of a discovery letter, should be sealed as to the discussion of Apple's license agreement negotiations and draft license agreement with a third party on page 3 and the dollar amount listed on page 4.

- Samsung's Motion to Strike (Dkt. No. 934) should be sealed as to the discussion of Apple's license agreement negotiations and draft license agreement with a third party on pages 13-14 and the dollar amount listed on page 14.

- Exhibit U to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934), consisting of an excerpt from the Rebuttal Expert Report of Terry L. Musika, should be sealed as to the dollar amount listed on page 13.
- Second Supplemental Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 994) should be sealed as to the discussion of the contents of Apple's draft license agreement with a third party in paragraph 2(a).
- Exhibit A to the Musika Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consisting of the Rebuttal Expert Report of Terry L. Musika, should be sealed as to the dollar amount and discussion of Apple's license agreement with a third party in paragraphs 46, 48 and 49. It also contains financial information and should be sealed in part as identified in the Tierney Declaration.
- Exhibits P, Q, R, S, Y, Z, AA, BB, CC and DD to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) are all license agreements between Apple and third parties and should be sealed in full.
- Exhibit U to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) contains emails between Apple and a third party negotiating a license agreement and should be sealed in full.
- Exhibit V to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) is a draft license agreement between Apple and a third party and should be sealed in full.
- Exhibit W to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) is a draft license agreement between Apple and a third party and should be sealed in full.
- Exhibits FF and GG to the Price Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) are both Made for iPod Licenses and should be sealed in full.
- Exhibits 1-5 to the Supplemental Price Declaration (Dkt. 984) are all license agreements between Apple and third parties and should be sealed in full.

- Exhibits 1-5 to the Corrected Supplemental Price Declaration (Dkt. 990) are all license agreements between Apple and third parties and should be sealed in full.
- Exhibits B-E to the Second Supplemental Price Declaration (Dkt. 994) are all license agreements between Apple and third parties and should be sealed in full.
- Exhibit 23 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996) is a Made for iPod License and the cover email transmitting it.  All but the first page of the exhibit (the cover email) should be sealed.
- Exhibits 24, 25, and 26 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996) are all license agreements between Apple and IBM.  All three should be sealed in part as identified in the Tierney Declaration.  Redacted versions of Exhibits 25 and 26 were approved under the "compelling reasons" standard during trial (Dkt. 1660). Exhibit 24 has been redacted in a manner consistent with the redactions in Exhibits 25 and 26.
- Exhibit 28 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996) is a license agreement between Apple and Nokia.  It should be sealed in part as identified in the Tierney Declaration. This agreement was also submitted under seal in connection with the parties' post-trial briefing, and the Court, applying the "compelling reasons" standard applicable at that stage of the case, ordered that only "pricing, royalty, and payment terms" could be redacted (Dkt. 2168.)  Accordingly, Apple is submitting a proposed redacted version of the Nokia license pursuant to discussions with Nokia seeking to seal royalty terms, payment terms, and terms related to the calculation of royalties and payments.

The license agreements at issue in this motion to seal were all attached to non-dispositive motions and therefore only a showing of "good cause" is required.  Under the "good cause" standard, Apple's license agreements with third parties should be sealed in full.  (Dkt. 1649

at 16.) This Court sealed in full the license agreements attached as Exhibits 2-6 and 13 to the Price Declaration in Support of Samsung's Reply in Support of its Motion to Strike because these "agreements contain a whole host of terms (e.g. termination conditions, side- agreements, waivers) that are irrelevant to matters in this litigation" and "disclosure of these full documents could result in significant competitive harm to the licensing parties as it would provide insight into the structure of their licensing deals, forcing them into an uneven bargaining position in future negotiations." (Dkt. 1649 at 16; *see also* Dkt. 2168 at 6 (explaining why license agreements attached to permanent injunction motion could not be sealed in full, unlike those attached to motion to strike).)  For the same reasons the license agreements attached to Samsung's Reply in Support of its Motion to Strike were sealed in full, the license agreements, draft license agreements and negotiation related emails attached to Samsung's Motion to Strike, Supplemental Declarations in Support of Samsung's Motion to Strike and Apple's Opposition to Samsung's Motion to Strike should all be sealed. (Tierney Decl. ¶¶ 30-32.)

For the same reasons, the discussions of "pricing terms, royalty rates, and minimum payment terms" in a discovery letter, Samsung's Motion to Strike, and the Rebuttal Expert Report of Terry L. Musika should be sealed.  (Tierney Decl. ¶ 33.) (*See also* Dkt. 1649 at 10 (sealing "pricing terms, royalty rates, and minimum payment terms of the licensing agreements" in trial exhibits).)  The discussion of Apple's license agreement negotiations and draft license agreement with a third party in a discovery letter, Samsung's Motion to Strike and the Second Supplemental Price Declaration in Support of Samsung's Motion to Strike should also be sealed for the same reasons as the underlying draft license agreements and negotiation emails.  (Tierney Decl. ¶ 31.)

Apple has notified each of the third parties affected by the February 1, 2013 Order that the Court denied, without prejudice, Apple's initial motion to seal these agreements in full.  Apple requests that the Court defer ruling on this motion, at least with respect to third party information, for an additional two weeks in order to afford any third parties that wish to be heard an opportunity to make a submission to the Court.

### D. Source Code

Apple seeks to seal the following portions of a document that contains information about Apple's source code:

- Exhibit X to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934), consisting of an excerpt from the Rebuttal Expert Report of Tony Givargis, should be sealed in part as identified in the Tierney Declaration.

- Exhibit 9 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996), consistent of an excerpt from the Expert Report of Woodward Yang, should be sealed in part as identified in the Tierney Declaration.

This Court has previously allowed Apple to seal trial exhibits containing source code. (Dkt. No. 1649 at 8; Dkt. 2046 at 3.)  In compliance with this Court's February 1 Order, Apple's renewed motion to seal portions of Exhibit X to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) and Exhibit 9 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996) is narrowly tailored to the discussions of Apple's propriety source code and highly confidential technical information that is closely related to Apple's source code.  Apple is not moving to seal the information in these two documents that was discussed in open court during the trial.

As detailed in the declarations from Henri Lamiraux, Apple's Vice President of iOS Apps & Frameworks and Beth Kellerman, a Litigation eDiscovery Manager, which Apple submitted in support of sealing trial exhibits (Dkt. Nos. 1504, 1505), Apple's source code is highly confidential. Apple's source code is clearly the type of information that qualifies as a trade secret. *See Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011). Apple's declarants confirmed that Apple derives independent economic value from its source code, and that Apple goes to extraordinary lengths to maintain the secrecy and security of its source code. (Dkt. Nos. 1504 ¶¶ 5-8, 1505 ¶¶ 4-9.) If Apple's source code were subject to disclosure and copying, it would amount to a transfer of Apple's investment in developing the iOS source code from it to a competitor, providing an unfair competitive advantage. (Dkt.

No. 1505 ¶¶ 6-9.) Apple respectfully requests that the Court confirm that, consistent with the prior Court Orders, Apple be permitted to file a redacted version of Exhibit X to the Ward Declaration in Support of Samsung's Motion to Strike (Dkt. No. 934) and Exhibit 9 to the Pernick Declaration in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. No. 996). (Tierney Decl. ¶¶ 36-38.)

## II.   IF SEALING IS DENIED, THE COURT SHOULD STAY THE EFFECT OF ITS ORDER PENDING APPEAL

Apple respectfully requests that if the Court denies sealing of any of the materials that are the subject of this motion, the Court continue its practice of staying effect of its order pending appeal. (Dkt. No. 2047 at 7.) As the Court has previously held, once information is publicly filed, "what once may have been trade secret no longer will be. Thus, the parties may be irreparably injured absent a stay. In contrast, the public interest, which favors disclosure of relevant information in order to understand the proceedings, is not unduly harmed by a short stay." (*Id.*)

Dated: February ~~15~~20, 2013            MORRISON & FOERSTER LLP

                                          By:    */s/ Richard S.J. Hung*
                                                 RICHARD S.J. HUNG

                                          Attorneys for Plaintiff
                                          APPLE INC.