Exhibit 13

FILED UNDER SEAL

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL: (650) 801-5000  FAX: (650) 801-5100

WRITER'S INTERNET ADDRESS
victoriamaroulis@quinnemanuel.com

April 29, 2012

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER
VIA ELECTRONIC MAIL

Marc J. Pernick
Morrison & Foerster
755 Page Mill Road
Palo Alto, CA 94304-1018

Re:     Apple v. Samsung, Case No. 11-CV-1846-(N.D. Cal.)

Dear Marc:

I write in response to your letter of April 12, 2012 concerning Apple's threatened motion to strike portions of Samsung's expert reports.  After considering the issues raised in your letter, Samsung agrees to withdraw some portions of its reports, as explained below.  Many of the alleged deficiencies in Samsung's contentions and interrogatory responses, however, are unfounded, and Samsung will not withdraw expert opinion based on that material.  In some instances, Apple has not provided sufficient information about its position to permit Samsung to make an informed decision whether or not to withdraw those portions of its experts' reports.  Finally, in addition to addressing Apple's allegations, I have highlighted several instances where Apple's own experts opine on issues that Apple failed to properly disclose during discovery.  Samsung is continuing to review Apple's reports and reserves the right to raise additional deficiencies in the future.

**Samsung's Utility Patent Invalidity Reports**

For many of the Samsung invalidity reports, Apple offers only bare allegations that references in the reports were not properly disclosed in Samsung's Invalidity Contentions.  Because Apple

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666  FAX +7 495 797 3667

<u>**CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER**</u>

fails to provide sufficient detail to support its position, Samsung cannot respond adequately to the substance, if any, of these claims.  Nevertheless, Samsung will attempt to provide a response below.  Samsung requests that Apple provide more information to permit the parties to resolve some or all of these matters without court intervention.

### 1.  The Darrell Report

With respect to Mr. Darrell's opinions on the '891 patent, Samsung disagrees that the Court's March 27 Order requires Samsung to withdraw references to videos of Steve Jobs demonstrating Mac OS X at Macworld 2000 from the Darrell Report.  These videos are provided by way of background to demonstrate the state of technology at the time the '891 patent was filed.  However, Samsung agrees it will not argue that the '891 patent is anticipated or rendered obvious by Mac OS X in accordance with the Court's order.[1]

With respect to Mr. Darrell's opinions regarding the '002 patent, Samsung agrees to withdraw the portions of the Darrell Report that reference SuperClock, namely ¶¶ 25, 117-128 and Ex. E.

### 2.  The Gray Report (the '915 Patent)

Samsung does not agree to withdraw any portion of the Gray Report.  Apple's laundry-list of complaints is clearly an attempt to manufacture an alleged problem where none exists.

As Apple is aware, most of these references are part of the MERL DiamondTouch system that Samsung disclosed in its invalidity contentions and produced to Apple in discovery.  Apple was therefore on notice that the DiamondTouch system is prior art to the '915 patent, and its attempt to strike particular evidence related to the DiamondTouch system (source code, executable files, and documentation) is groundless.  Thus, the following evidence is relevant and admissible:

- UbiTable: "Impromptu Face-to-Face Collaboration on Horizontal Interactive Surfaces." (Gray Report ¶ 150.);

- Sanders, T. "Touch-screen gamers ex-static at NextFest" V3.co.uk. (*Id.* ¶ 151.);

- D. Wigdor et al., Table-centric interactive spaces for real-time collaboration: solutions, evaluation, and application scenarios. (*Id.* ¶ 152.);

---

[1]   While Samsung does not intend to argue invalidity based on this reference in accordance with the Court's order, Samsung reserves its rights to have its PTO expert Nichols Godici rely on technical aspects of Dr. Darrell's report concerning Mac OS X in connection with Apple's failure to disclose Mac OS X to the United States Patent and Trademark Office.  The Court's March 27 order did not address use of MacOS X for purposes other than invalidity.

<u>CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER</u>

- DiamondTouch SDK source code, including but not limited to source code produced at MERL-Drive/diamondtouch/DiamondTouch/SDK/dtsdk2_1_ source/dtsdk2/. (Appendix 3 at 1, 5-18, 20, Appendices 3.4, 3.6.);

- Mandelbrot or Fractal Zoom source code and executables. (Gray Report ¶¶ 145, 153, 154, 156, 161-165, 213, Appendix 3 at 1, 5-18, 20, Appendices 18-20, 22.);

- Video demonstration of the Mandelbrot Application. (*Id.* ¶¶ 163, 164.);

- Clifton Forlines and Chia Shen, DTLens: Multi-user Tabletop Spatial Data Exploration. (*Id.* ¶ 173, Ex. O.);

- DTLens source code and executables. (*Id.* ¶¶ 145, 172-177, 213.);

- DTLens video. (*Id.* ¶¶ 174, 176.);

- DTMouse source code and executables. (*Id.* ¶¶ 145, 153, 156, 178-182, 213.);

- DTMouse documentation, including but not limited to documentation produced at MERL-Drive/diamondtouch/people/shipman/dtsdk/dtsdk2stuff1203/ dtsdk2_stage/dtsdk2_0/doc/. (*Id.* ¶ 179.);

- Video demonstration of the DTMouse Application at (*Id.* ¶¶ 180, 181.);

- DTFlash source code and executables. (*Id.* ¶¶ 145, 153, 156, 184, 186, 187,213, 224, 226, 228, 234.);

- "Tablecloth DTFlash webpage." (*Id.* ¶ 187.);

- Mark S. Hancock *et al.*, Rotation and Translation Mechanisms for Tabletop Interaction, printed as MERL Technical Report No. TR2005-118 ("MERL-TR2005-118"). (*Id.,* Ex. R.); and

- Oscar de Bruijn et al. Interactive Coffee Table for Opportunistic Browsing. (Ex. T.)

The remaining references that Apple cites are background references that provide context for understanding the '915 patent.  They discuss such basic principles as animation, object-oriented programming, and general understanding of snapback behavior, and are necessary for Mr. Gray to describe basic computer and animation principles to a lay audience.  Apple cites no authority holding that such background information—which is strictly expert testimony and necessary to understand technical subject matter—must be disclosed during fact discovery.  Apple is certainly not prejudiced by the inclusion of the following background references:

- Ferg, Event-Driven Programming: Introduction, Tutorial, History. (*Id.* ¶ 100.);

- Windows 3.11. (*Id.* ¶¶ 109, 231.);

- Smalltalk—Alan Kay, The Early History of Smalltalk. (Gray Report ¶¶ 110-12, 231.);

- Xerox 8010. (*Id.* ¶ 110.);

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER

- Animation: From Cartoons to the User Interface, Bay-Wei Chang and David Ungar. (*Id.* ¶ 119, Ex. I.);

- T.R. Henry et al., Integrating gesture and snapping into a user interface toolkit. (*Id.* ¶ 121, Ex. J.); and

- Autodesk, AutoCAD and Adobe Illustrator. (*Id.* ¶ 121.)

### 3.  The Van Dam Report (the '381 Patent)

Samsung agrees to withdraw the following portions of the Van Dam Report[2] referencing the Glimpse system: ¶¶ 43 (p. 17), 89 (p. 46), 111-112 (p. 51-52), 114 (p. 52), Exs. 3-4.  Samsung will also withdraw portions of the following paragraphs discussing Glimpse: ¶¶ 30 (p. 10), 33 (p. 11), 34 (p. 12), 47 (p. 18), 88 (p. 46), 92 (p. 46-47), and 99 (p. 50).  Samsung will not, however, withdraw paragraph 113 (p. 52), which describes Dr. Van Dam's understanding of legal principles.

Samsung will not withdraw any additional references.  Apple improperly seeks to strike source code and documentation referring to prior art disclosed in Samsung's invalidity contentions, namely LaunchTile and XNav.  Apple was on notice that LaunchTile and XNav are prior art references to the '381 patent.  Thus, the following evidence is clearly relevant and admissible:

- Amy K. Karlson et al., "AppLens and Launch Tile: Two Designs for One Handed Thumb Use on Small Devices."  (Van Dam Report  ¶¶ 42, 84.); and

- XNav source code and executables.  (*Id.* ¶ 84.)

Likewise, U.S. Pat. No. 5,495,566 (A. Kwatinetz, cited at ¶¶ 47, 50) is cited on the face of the '381 patent and is part of the prosecution history.  Thus, it is clearly relevant and admissible.

The rest of the references Apple cites merely provide background references and context for understanding the '381 patent.   They discuss such basic principles as animation, GUIs, elasticity, and damped motion, and describe basic computer and animation principles to a lay audience.  Such information is strictly expert testimony that need not be disclosed in fact discovery, and Apple is not prejudiced by the inclusion of the following background references:

- Bruce H. Thomas, Ph.D. Thesis: "Animating Direct Manipulation in Human Computer Interfaces." (Van Dam Report ¶¶ 47, 49.);

- Bruce H. Thomas & Paul Calder, "Animating Direct Manipulation Interfaces." (*Id.* ¶¶ 47-49.);

- U.S. Pat. No. 6,111,577 to Zilles *et al.* (*Id.* ¶¶ 47, 48.);

---

[2] Page numbers are provided to avoid ambiguity due to formatting errors in the Van Dam Report.

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER

- Masui et. al, Elastic Graphical Interfaces for Precise Data Manipulation. (*Id.* ¶ 47.); and

- U.S. Pat. No. 6,677,965 to C. Ullman *et al.* (*Id.*)


### 4. **The Von Herzen Reports**

   a. *The '607 Patent*

Samsung agrees to withdraw references to U.S. Pat. No. 7,030,860.  Samsung will not withdraw any discussion of the ClearPad device, however, which was referenced in Samsung's Patent Local Rule 3-3 and 3-4 disclosures at Exhibit P-9.

Samsung will not withdraw references to U.S. Pat. No. 5,113,041 to Blonder *et al.* ("Blonder"). Blonder is just one of many possible examples which clarify that a "virtual ground charge amplifier" is explicitly or inherently disclosed in the Perski '455, Rekimoto, and Mulligan '160 references.  Blonder was also disclosed in Samsung's Invalidity Contentions regarding the '129 patent (Exhibit V-3), which is closely related to the '607 patent.

   b. *The '129 Patent*

Samsung agrees to withdraw references to the Cirque GlidePoint system, but not the related Gerpheide '658 patent, which was referenced in Samsung's Patent Local Rule 3-3 and 3-4 disclosures at Ex. V-4.

Samsung will not withdraw reference to U.S. Pat. No. 7,053,886 ("Shin").  Shin is just one of many examples which clarifies that an LCD emitting a modulated Vcom signal is explicitly or inherently disclosed in the prior art references.  Shin demonstrates that the use of an LCD touchscreen emitting a modulated Vcom signal would have resulted in a combination of prior art references according to known methods to yield predictable results, as stated in Samsung's Invalidity Contentions.  These invalidity contentions placed Apple on notice that an LCD emitting a modulated Vcom signal is an obvious variation.

   c. *The '828 Patent*

Samsung will not agree withdraw references to U.S. Patent No. 6,184,926 ("Khosravi"). Khosravi is a background reference that provides context for understanding the '828 patent. Khosravi is one of many patents which discuss basic principles of proximity images, segmenting, and mathematical ellipse fitting.  Such background is necessary to describe these principles to a lay audience.  Apple, having admitted that the Khosravi reference was disclosed in Samsung's Invalidity Contentions, cannot claim prejudice from its inclusion in the Von Herzen report.

<u>C</u><small>ONFIDENTIAL</small>--<u>S</u><small>UBJECT TO</small> <u>P</u><small>ROTECTIVE</small> <u>O</u><small>RDER</small>

**<u>Samsung's Utility Patent Infringement Reports</u>**

Samsung agrees to withdraw expert opinions regarding infringement of the iPhone 4S. However, Samsung does not agree to withdraw opinions regarding all other matter.  Apple alleges in vague and general terms that Samsung's infringement theories were insufficiently disclosed in Samsung's Infringement Contentions.  However, Apple provides no specific explanation of how any particular passage was not previously disclosed, offering only a list of reports followed by paragraphs and exhibits that Apple seeks to exclude.  Because Apple fails to provide any details supporting its arguments, Samsung cannot respond adequately to the substance, if any, of these claims.  Samsung believes that all of its infringement theories were properly disclosed in its Infringement Contentions.  If Apple seeks to pursue this matter further, Samsung requests that Apple provide more information supporting its allegations to permit the parties to resolve some or all of these matters without court intervention.

**<u>Apple's Utility Patent Reports</u>**

Apple's infringement reports contain numerous references and infringement theories that were not adequately disclosed in Apple's Infringement Contentions.  This is particularly true under Apple's overbroad interpretation of the Patent Local Rules, which would apparently bar experts from explaining basic technical principles within their area of expertise.  If Apple persists in this position, Samsung reserves the right to strike Apple's expert reports on similar grounds.

In any event, Apple's experts have opined on matters that, under any interpretation, constitutes a breach of the Patent Local Rules.  Patent Local Rules 3-1 to 3-3 require Apple to identify with particularity (a) each patent in suit that is alleged infringed; (b) each instrumentality accused under each claim; and (c) where each limitation of each asserted claim is found.  Apple instead made no disclosure and never once sought leave from the court's to include these new infringement theories, instead disclosing them for the first time in its expert reports.

### 1.  The Snoeren Report (the '002 Patent)

The Snoeren Report accuses the "Notification Panel" feature on Samsung's products of infringing the '002 patent.  The Notification Panel is a screen that slides down from Samsung Phones to display e-mails, text messages, and other information.  However, this theory was absent from Apple's Infringement Contentions, which identified only the "Status Bar" – the strip displaying the clock and battery – as the allegedly infringing feature.  (*See* Apple's Infringement Contentions at Ex. 1, 2, and 3.)  Apple never attempted to amend its infringement contentions to include any infringement theories relating to the "Notification Panel."  Samsung requests that Apple withdraw all portions of the Snoeren Report basing infringement on either the Notification Panel or any combination of the Notification Panel and the Status Bar.

C<small>ONFIDENTIAL</small>--S<small>UBJECT TO</small> P<small>ROTECTIVE</small> O<small>RDER</small>

### 2. The Maharbiz Report (the '607 and '129 Patents)

The Maharbiz Report accuses Samsung of infringing the '607 and '129 patents based on the touchscreens on Samsung's tablet devices.  For the '129 patent, the Maharbiz Report accuses both the Galaxy Tab 7.0 and the Galaxy Tab 10.1 devices of infringing claims 1, 3, 5, 7, 9-10, 12, 14, 16, 24, 26, and 28.  However, Apple's Infringement Contentions do not identify the Galaxy Tab 7.0 as infringing any of claims 1, 3, 5, 7, 9-10, 12, 14, or 16.  (*See* Apple's Infringement Contentions at Ex. 20.)  Samsung requests that Apple withdraw all portions of the Maharbiz Report that discuss infringement of those claims by the Galaxy Tab 7.0.

In addition, the Maharbiz Report relies on two Scanning Electron Microscopy (SEM) Reports that were never disclosed by Apple during the course of discovery, even though such reports are responsive to a number of Samsung's discovery requests, including Samsung's Interrogatory No. 16, which seeks "all facts RELATING TO studies, including formal or informal analysis, investigation . . . or other information or reports that relate to, support, or refute YOUR claims in this action, including, for each such study, when it was commissioned, conducted, and completed, by whom it was conducted, and its conclusions."  Apple's refusal to disclose or produce the SEM Reports in violation of the Federal Rules of Civil Procedure has caused substantial unfair prejudice to Samsung.  Accordingly, Samsung asks that Apple withdraw these two SEM Reports and all portions of the Maharbiz Report that discuss said SEM Reports.

### 3. The Singh Report (the '163 Patent)

The Singh Report accuses Samsung of infringing, *inter alia*, claims 2, 4-13, 17, 18, and 27-42 of the '163 patent.  In the Singh Report, Apple accuses Samsung of indirect infringement based on these claims.  However, Apple failed to identify which claims were indirectly infringed.  Patent Local Rule 3-1(d) requires Apple to identify, for each claim which is alleged to be indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement.  (*See* Apple Inc.'s Disclosure of Asserted Claims and Infringement Contentions at Ex. 10, 11 and 12.)  Apple provides nothing at all, other than a boilerplate discussion accusing all products of indirect infringement and reserving its rights to amend its infringement contentions based on additional information.  (*See id.* at 3.)  Apple never attempted to amend its infringement contentions to include indirect infringement.  Samsung asks that Apple withdraw all portions of the Singh Report that discuss indirect infringement of claims 2, 4-13, 17, 18, and 27-42 of the '163 patent.

### 4. The Givargis Reports (the '711 Patent)

The Givargis Invalidity Report relies on a document that was not disclosed in Apple's Invalidity Contentions or at any time during the claim construction proceeding.  Dr. Givargis opines that "Java midlet applications" are Java applets, relying on a document he refers to as a "Java Tutorial."  (*See* Givargis Invalidity Report at ¶ 127 (*citing* APLNDC-WH-A0000025002); Deposition Tr. of Tony Givargis ("Givargis Depo.") at 122:7-124:10; 137:24-140:20.)  Please

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER

confirm that Apple will withdraw all portions of Dr. Givargis' Invalidity Report that relate to these materials.

Likewise, in the Givargis Non-Infringement Report, Dr. Givargis alleges for the first time that the accused Apple devices do not infringe because they allegedly lack a MP3 mode and a standby mode.  (*See* Givargis Depo at 188:21-189:12; 201:5-204:2; 226:4- 229:24; Givargis Non-Infringement Report at ¶¶ 30, 63-65.)  Dr. Givargis alleges that "springboard" and the iPod app evidence that the accused devices do not have a MP3 mode or standby mode.  (*See* Givargis Depo. at 188:21-189:12; 201:5-204:2; 226:4- 229:24.)  Apple failed to disclose this theory in response to Samsung's contention interrogatories, and thus these portions of Dr. Givargis' report is improper.  Please confirm that Apple will withdraw these portions of Dr. Givargis' report.

## 5.      Balci Reports (the '871 Patent)

In the Balci Invalidity Report, Dr. Balci relies on the references below, despite Apple's failure to disclose them to Samsung prior to the close of discovery.

- Encyclopedia Britannica (2012), "Text Messaging," http://www.britannica.com/EBchecked/ topic/1099476/text-messaging;

- R.S. Pressman (2010), Software Engineering: A Practitioner's Approach, Seventh Edition, McGraw-Hill;

- Harvey M. Deitel, An Introduction to Operating Systems (2d ed. 1990);

- Wikipedia, "Mobile Operating System," http://en.wikipedia.org/wiki/ Mobile_operating_system; and

- Kyocera Wireless Corporation (2001), "Kyocera's Smartphone QCP 6035 Product Brochure."

(*See* Balci Invalidity Report at ¶ 33, 36, 38, 41, and 44.)  Given that Dr. Balci's invalidity analysis relies heavily on the apparent state of the technology at the relevant time, *see, e.g.,* Balci Invalidity Report at ¶ 67, reliance on such references is improper.

In the Balci Non-Infringement Report Dr. Balci argues for the first time that the accused Apple products do not have a "display window."  (*See, e.g.,* Balci Non-Infringement Report at ¶¶ 51, 58.)  Further, for the first time, Dr. Balci identifies springboard and various other source code references as evidence that the accused Apple products do not infringe the '871 Patent.  (*See id.* at ¶¶ 29, 64, and 98.)

<u>**C**ONFIDENTIAL--**S**UBJECT TO **P**ROTECTIVE **O**RDER</u>

<u>**Samsung's Design-Related Invalidity Reports**</u>

As you know, the parties discussed Samsung's contention interrogatory responses at the parties' meet and confer on March 14, 2012.  At that meeting, Apple agreed that it would not file a motion to strike if Samsung supplemented its responses by March 19, 2012.  Samsung did so, providing a level of detail that far exceeded Apple's responses to Samsung's contention interrogatories, which Apple served just nine days prior.  Apple's experts—both in their opening reports and their rebuttal reports—took advantage of Samsung's transparency.  Any decision by Apple now to renege on its agreement would be in bad faith.

**1. Lucente Report**

Apple seeks to strike portions of the Lucente report discussing functionality and lack of distinctiveness.  (Pernick Ltr. at 10.)  Samsung disclosed the basis for these defenses in a timely manner and long before the end of discovery.  For example, on February 29, 2012, Samsung served its response to Interrogatory No. 38, setting forth the specific functional aspects of Apple's asserted design patents, including the functionality of the icons, grid, dock and other features shown in the D'790, D'305 and D'334 patents.  This response also describes in detail the functional aspects of features that comprise Apple's asserted trade dress and trademarks.

Apple also seeks to strike portions of the Lucente report that explain why the D'790, D'305 and D'334 patents are anticipated or obvious.  Samsung noted in its response to Interrogatory No. 12, served on December 19, 2011, that the D'790, D'305 and D'334 patents are anticipated and/or obvious, and referenced certain document demonstrating as much.  Samsung's supplemental response to this interrogatory provided specific art references that render the patents invalid, as discussed in Mr. Lucente's report.  Apple received this response before opening expert reports were due and weeks before Apple's rebuttal expert report on invalidity was due.  Apple was therefore not harmed by the timing of Samsung's disclosures.

**2. Sherman Report**

Apple seeks to strike all theories, opinions, and arguments that Apple's asserted design patents are anticipated, obvious, indefinite, or functional.  But Samsung disclosed its bases for these defenses in a timely manner.  Apple was on notice of Samsung's bases for invalidity and has suffered no prejudice.

    a.    *Invalidity Based On Anticipation/Obviousness*

Samsung responded to Interrogatory No. 12 on December 19, 2011, that the prior art, alone or in combination, rendered the D'889, D'677, D'087 and D'270 patents anticipated and/or obvious, and cited documents demonstrating that.  At Apple's request, Samsung supplemented its response in great detail, providing specific descriptions and images of prior art that render the design patents invalid, as well as further arguments about anticipation and obviousness

<u>C</u>ONFIDENTIAL--<u>S</u>UBJECT TO <u>P</u>ROTECTIVE <u>O</u>RDER

consistent with Mr. Sherman's report.  This response was served before opening expert reports were due and weeks before Apple's rebuttal expert report on invalidity was due.  Apple was therefore not harmed by the timing of Samsung's disclosure.

Moreover, much of the specific prior art identified in your letter, and used in Mr. Sherman's report, was identified by Bates number in Samsung's discovery responses and/or produced well in advance of the discovery deadline, including:

- KR-30-0304213 – produced on Sept. 11, 2011;

- Space Odyssey 2001 (1968) – produced on Sept. 11, 2011;

- "Tomorrow People" (1973-79) – produced on Sept. 11, 2011;

- EU Registration 000569157-0005 – produced on Sept. 11, 2011;

- JP D1280315 – produced on Sept. 11, 2011;

- US D504889 – produced on Sept. 11, 2011;

- US D500,037 – produced on Sept. 11, 2011;

- US D497364 – produced on Dec. 16, 2011;

- US D514590 – produced on Dec. 16, 2011;

- US D560192 – produced on Dec. 15, 201;

- Samsung F700 – produced on Dec. 16, 2011;

- JP D1204221 – produced on Jan. 12, 2012;

- JP D1295003 – produced on Jan. 12, 2012;

- KR-30-0394921 – produced on Jan. 12, 2012;

- KR-30-0452985 – produced on Jan. 12, 2012;

- EU registered design 000048061-0001 – produced on Jan. 12, 2012;

- US D534516 – produced on Jan. 12, 2012;

- Documents produced on Feb. 3, 2012, labeled SAMNDCA00321457-321656;

- iRiver U10 – produced on Feb. 13, 2012;

- Nokia Fingerprint concept phone – produced on Feb. 13, 2012;

- Samsung K3 – produced on Feb. 13, 2012;

- US 6919678 – produced on March 1, 2012; and

- Olympus MR500 – produced on March 8, 2012.

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER

Moreover, certain prior art that Apple seeks to strike, such as the 035 Prototype, has been in Apple's possession throughout this case and has been the subject of motion practice and deposition questions. Apple cannot plausibly claim prejudice by the inclusion of the 035 Prototype in Samsung's expert reports.

       b.    *Invalidity Based On Indefiniteness*

Samsung identified its basis for asserting invalidity due to indefiniteness in response to Interrogatory No. 12, served on December 19, 2011. Samsung then supplemented its response to identify specific examples of how Apple's asserted patents are indefinite, with citation to testimony from Apple's own inventors. This supplemental response was served before opening expert reports were due and weeks before Apple's rebuttal expert report on invalidity was due. Apple was therefore not harmed by the timing of Samsung's disclosure.

       c.    *Invalidity Based On Functionality*

Samsung described in detail the basis for its defense of invalidity due to functionality in response to Interrogatory No. 38. This response identifies the specific functional aspects of Apple's asserted design patents, trade dress and trademarks, including, among other things, the overall industrial design and lack of ornamentation, rectangular shape, flat and transparent front surface, rounded edges, inset display screen, borders around the display screen, placement and shape of the receiver hole, and bezel, as mentioned in Mr. Pernick's letter. Samsung's response likewise addresses the functionality of the features of Apple's D'270 design patent, as well as the GUI features of Apple's asserted trade dress and trademarks. Samsung served this response well in advance of the close of discovery on February 29, 2012. Apple therefore has no basis for seeking to strike portions of the Lucente Report that are consistent with this response.

   **3.  Lehto Report**

Apple seeks to strike portions of the Lehto Report that explain why Apple's asserted design patents, asserted trade dress and asserted trademarks are functional. But Samsung described in detail the basis for its functionality defense in its response to Interrogatory No. 38. As explained above, this response identifies the specific functional aspects of Apple's asserted design patents, trade dress and trademarks. Samsung served this response well in advance of the close of discovery on February 29, 2012. Apple therefore has no basis for seeking to strike portions of the Lehto Report that are consistent with this response.

   **4.  Godici Report**

Apple seeks to strike portions of the Godici Report discussing the narrow scope of Apple's design patents or why the design patents are ambiguous. Samsung identified the basis for its double-patenting and indefiniteness defenses in its response to Interrogatory No. 12, served on December 19, 2011. At Apple's request, Samsung supplemented its response by identifying

C̲O̲N̲F̲I̲D̲E̲N̲T̲I̲A̲L̲-̲-̲S̲U̲B̲J̲E̲C̲T̲ ̲T̲O̲ ̲P̲R̲O̲T̲E̲C̲T̲I̲V̲E̲ ̲O̲R̲D̲E̲R̲

specific patents that were nearly identical to the asserted design patents, which support Samsung's double-patenting defense and narrowing construction of the asserted design patents. Samsung also provided specific examples of how Apple's asserted patents were indefinite, with citation to testimony from Apple's own inventors.  This supplemental response was served on Apple before opening expert reports were due and weeks before Apple's rebuttal expert report on invalidity was due.  Apple was therefore not harmed by the timing of Samsung's disclosure.

**Apple's Design-Related Expert Reports**

At the parties' meet and confer on April 13, 2012, Apple stated that your letter and the contemplated motion to strike are based on the "principle" that responses to contention interrogatories are equivalent to invalidity and infringement contentions under the Local Rules. Below are several instances from Apple's opening expert reports where Apple has failed to abide by this principle.  Accordingly, Apple should agree to withdraw those portions of its expert reports that rely on arguments or theories that Apple failed to disclose in response to Samsung's contention interrogatories.

1. **Bressler Report**

The Bressler Report cites numerous examples of alternatives to the designs claimed in Apple's design patents that Apple failed to disclose in response to Interrogatories 68 and 72, including:

- Coby Kyros. (*Id.* ¶¶ 51, 358.);

- Sony Reader. (*Id.* ¶ 56.);

- Freescale smartbook concept. (*Id.* ¶¶ 56, 360.);

- Panasonic Toughbook Tablet. (*Id.* ¶¶ 56, 360.);

- Panasonic Toughpad. (*Id.* ¶¶ 56, 360.);

- T-Mobile My-Touch. (*Id.* ¶¶ 68, 81, 341.);

- Ematic Touch Screen MP3 Video Player. (*Id.* ¶ 81.);

- Coby MP826. (*Id.* ¶ 92.);

- Memorex TouchMP. (*Id.* ¶ 92.); and

- All Samsung devices other than the Samsung M7600 Beat DJ and Samsung F700. (*See, e.g., id.* ¶¶ 64-67, 77-80, 89-91, 338-340, and 342-344.)

Similarly, Apple's interrogatory responses state only that Apple intended to rely on certain alternative designs considered by Apple.  Other than those attached as exhibits to the Stringer Declaration, Apple made no attempt to identify these designs with the specificity it has demanded from Samsung.  Instead, Apple stated only that the alternative designs were in the native design files and mockups produced for inspection, or in printouts produced to Samsung.

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER

This response left Samsung to guess which devices Apple considers viable alternatives.  But Mr. Bressler specifically identifies APLNDC-Y0000149044-45 (¶¶ 50, 352), APLNDC-Y0000149048-49 (*id.*), and APLNDC-Y0000149051-052, 059 & 062.  (¶¶ 62, 75, 327.)

Apple's response to Interrogatory No. 68 states only that Apple's designs are non-functional because they are more "challenging and expensive" to manufacture than other smartphone and tablet designs.  This response in this regard is pure boilerplate and fails to identify what challenges Apple purportedly faced, or what elements were more expensive to manufacture.  Samsung should not be forced to learn for the first time via expert report the examples and evidence that Apple contends shows its designs are non-functional.  Because of Apple's failure, the portions of the Bressler report discussing ease and cost of manufacturing should be withdrawn.  (*See, e.g.*, Bressler Rpt. at ¶¶ 328, 329 and 352.)

Furthermore, while Apple's contention interrogatory responses only state that Apple's products have a "unique appearance," Mr. Bressler articulates a detailed theory relating to what makes the appearance of Apple's products unique or distinctive—facts that support Apple's contentions but were not disclosed in its contention interrogatory responses.  (*See id.* ¶¶ 34, 60, 73, and 86.)

Interrogatory No. 72 required Apple to state fully and in detail all facts supporting its contention of design patent infringement.  Apple responded by copying and pasting pictures of the accused devices next to the figures of the design patents, and stating the accused devices are substantially the same.  Mr. Bressler's conclusion regarding infringement, however, relies on theories and facts that Apple failed to disclose in response to Interrogatory No. 72.  First, Mr. Bressler cites product reviews and evidence that allegedly shows consumer confusion, despite the fact that consumer confusion was not disclosed in response to Interrogatory No. 72.  (*See id* at ¶¶ 104, 136.)  Second, Mr. Bressler identifies differences between the asserted design patents and prior art cited by Samsung, notwithstanding Apple's failure to disclose its intention to rely on a comparison between the prior art and the Apple patents.  (*See id* at ¶¶ 110-127, 141-143, 191-193, 255-259.)  Therefore, these parts of the Bressler report should be withdrawn.

Lastly, although not cited by Apple in support of its design-related contentions, Mr. Bressler cites several museums and exhibitions that have featured the iPhone.  (*Id.* ¶ 38.)

## 2.  Kare Report

Like Mr. Bressler, Susan Kare cites a number of devices as alternative designs that were not disclosed in Apple's response to Interrogatory No. 69.  These devices include the following:

- Sony Experia Arc S. (Kare Rpt. ¶ 45.);

- Sony Xperia Neo V. (*Id.*);

- Blue Bee concept. (*Id.*);

- Synaptics FuSE. (*Id.*);

C<small>ONFIDENTIAL</small>--S<small>UBJECT TO</small> P<small>ROTECTIVE</small> O<small>RDER</small>

- Pantech Pocket. (*Id.*);

- MeeGo concept. (*Id.*, Ex. 10); and

- KDDI Infobar. (*Id.*)

Additionally, in discussing Apple's registered icon trademarks, Ms. Kare addresses Apple's "Camera" icon, noting that the image is the subject of U.S. Trademark Reg. No. 3,983,841.  (*Id.* at ¶ 53, 54 and 62.)  Ms. Kare further discusses Samsung icons that Apple has never before identified as being subject to a trademark claim.  (*See id.* at ¶¶ 63 and 64.)  Please immediately confirm that none of Apple's trademark claims are based on the Camera icons or asserted against the Samsung icons for the Email, Gmail and Talk applications.

### 3.  Winer Report

Interrogatory No. 69 required Apple to state all grounds for its contention that the Apple trade dress and trademarks were famous and had acquired secondary meaning.  Likewise, Interrogatory No. 70 required Apple to state all grounds for its contention that Samsung has diluted the Apple trade dress.  Mr. Winer's report, however, advances the following theories, arguments, and facts in support of Apple's dilution-related contentions, despite Apple's failure to timely disclose them in response to these interrogatories:

- Apple's "Product as Hero" Advertising Strategy. (Winer Rpt., ¶¶ 47, 48, 52, 89, 105.);

- Third-party estimates of the value of Apple's brand. (*Id.* ¶¶ 38, 39, 45, 75 – 79.);

- Apple's selectiveness in pursuing product placements and advertising mediums. (*Id.* at ¶¶ 48, 51, 52, and 54.);

- Samsung's "copying" as evidence of fame or distinctiveness. (*Id.* at ¶ 92.); and

- Consumer associations of Samsung products with Apple as an indication that the look and feel of Apple products is famous. (*Id.* at ¶¶ 172 and 182.)

Likewise, Interrogatory No. 71 required Apple to state all grounds for its contention that Samsung has infringed the asserted trademarks and trade dress.  Although not disclosed in response to this interrogatory, Mr. Winer advances the following theories, arguments, and facts:

- Research by Samsung concerning the strength of the Apple trade dress, in connection with the first *Sleekcraft* factor. (*Id.* at ¶¶ 172 110, 141 and 145.);

- Competition between Samsung and Apple for the same market share, in connection with the second and fifth *Sleekcraft* factors. (*Id.* at ¶¶ 96, 112, 114 – 116, 147 – 150.); and

- Retail stores where both Samsung and Apple products are sold, as well as the relative placement of Samsung and Apple products in stores and on websites, in connection with the fifth *Sleekcraft* factor. (*Id.* at ¶¶ 123 and 158.)

CONFIDENTIAL--SUBJECT TO PROTECTIVE ORDER

### 4. Urbach Report

Interrogatory No. 69 required Apple to detail the grounds for its contention that the Apple trade dress is famous or has acquired secondary meaning.  Mr. Urbach's report, however, bases its conclusions on several facts, theories and arguments that Apple failed to disclose in response to this interrogatory, including:

- Museums and exhibitions featuring Apple products. (Urbach Rpt. ¶¶ 34, 48 – 51.);

- Apple's consistency between the designs of different products and product generations. (*Id.* at ¶¶ 35 and 45 – 47.);

- Apple's product packaging. (*Id.* at ¶ 36.); and

- Consumer experience at Apple Stores. (*Id.* at ¶ 38.)

### 5. Sood Report

The Sood Report improperly relies on many of the same materials that the Winer and Urbach Reports rely on, and should be withdrawn for the same reasons.  This includes the following:

- Apple's "Product as Hero" Advertising Strategy. (Sood Rpt., ¶¶ 44, 66, 67.);

- Third-party estimates of the value of Apple's brand; (*Id.* ¶¶ 31, 57-61.);

- Apple's product packaging. (*Id.* ¶ 36.);

- Consumer experience at Apple Stores. (*Id.* ¶ 38.); and

- Museums and exhibitions featuring Apple products. (*Id.* ¶ 56.)

## Apple's Expert Reports on Damages

### 1. Licensing

Apple's production of licensing information related to its iPhone, iPad, and iPod Touch products, including information related to patent licenses, has been confusing, misleading, untimely and incomplete.  All told, Apple has produced eight different versions of its licensing charts and purported to claw back five of them.  The first sets of charts, produced prior to the March 23, 2012 deposition of Mark Buckley, were radically different than the subsequently produced sets, produced after Mr. Buckley's deposition.  As Apple's person most knowledgeable on licensing issues, the questioning of Mr. Buckley about these licensing charts was of obvious importance. Nevertheless, starting on March 8, 2012—the last day of fact discovery—Apple began producing "replacement" licensing charts that doubled the number of licensors, added hundreds of millions of dollars in iPhone and iPad royalty payments for the same time periods covered by the earlier versions, and added licensing and royalty information for the iPod for the first time.

<u>C<small>ONFIDENTIAL</small>--S<small>UBJECT TO</small> P<small>ROTECTIVE</small> O<small>RDER</small></u>

On March 13, 2012, Apple purported to claw back all prior versions of the licensing charts, further obstructing the analysis of Samsung's experts. Although Apple produced another series of replacement charts on March 15, 2012, it clawed them back the evening of March 21, 2012— the night before expert reports were due—and produced yet another series of replacement charts. Then, Apple clawed back the March 21 charts and produced yet another series of licensing charts on April 11, 2012, three weeks after Samsung served its expert report on damages. That same day Apple served, for the first time, a privilege log for the clawed back licensing charts.

Despite Apple's untimely and contradictory productions of licensing information, Apple's counsel aggressively questioned Dr. O'Brien about Apple's patent licenses and insisted that Apple had produced all patent licenses related to the iPhone, iPad, and iPod Touch. Apple concedes that it failed to produce all licenses underlying its charts, but claims it is not required to do so because the charts include non-patent licenses. Even if withholding those licenses was proper, Apple has deprived Samsung of any means to test its methodology and representations by its untimely productions and dubious redactions. Apple failed to identify the nature of the licenses in the charts, redacted the identify of licensors and technologies at issue in previous versions of the charts, and doubled the number of licensors identified in the chart only after the close of discovery, depriving Samsung of the ability to question Mr. Buckley or any other Apple witness about the new charts.

In any event, it does not appear that Apple has produced all patent licenses related to the accused products. For example, Apple provided its damages expert, Terry Musika, patent licenses that lack Bates numbers from the N.D. Cal. or ITC cases.[3]  Moreover, Apple appears to have entered into a cross-licensing agreement with non-practicing entity, Digitude Innovations, but has produced no such agreement or identified it in its charts. Further, Apple identifies "ROVI" as a licensor in its charts for "Software and Entertainment Metadata," which likely includes patent licenses, but failed to produce those licenses. Apple also identifies "PREMIER" as a licensor for "Playlist Functionality" for the iPad, APLNDC-Y0000236386-R, but has redacted out the reference to PREMIER in the iPhone licensing chart, APLNDC-Y0000236372-R.

Because of Apple's untimely, contradictory, and incomplete production of licensing information for patents related to the iPhone, iPad, and iPod Touch, Samsung will move under Rule 37(c) to preclude Apple from introducing evidence or testimony regarding the licensing information produced after Mr. Buckley's deposition and the reasonable royalty portions of all of Apple damages reports

### 2. Manufacturing Capacity

On February 22, 2012, the day before the deposition of Mark Buckley, Apple's designee on financial topics, Apple produced two tables that purport to demonstrate that it had capacity to

---

[3]  Exh. 3, pg. 2, to the Rebuttal Expert Report of Terry L. Musika, CPA.

C<small>ONFIDENTIAL</small>--S<small>UBJECT TO</small> P<small>ROTECTIVE</small> O<small>RDER</small>

make additional iPhones and iPads.  Exhibit 15 to Mr. Buckley's deposition relates to iPad sales; Exhibit 16 relates to iPhone sales.  Not only did the timing of the production violate Court orders, but Apple failed to produce the documents underlying the "capacity" tables.  Since Mr. Buckley's deposition, Samsung has requested that Apple produce the documents it used to prepare the tables.  Apple refuses to do so.

Exhibits 15 and 16 are not the product of Apple simply extracting information from its accounting system and organizing it into tables.  Mr. Buckley testified that the information from the tables was pulled from various documents and the product of the "expertise" of the people in Apple's "operations finance" team.  (*See* Feb. 23 Depo Tr. of Mark Buckley, at 179:3-18; 198:12-18.)  Apple's refusal to produce these documents means that Samsung lacks information vital to any analysis of the accuracy of Apple's tables.  Thus, in stark contrast to the position it has taken on Samsung's financial documents, Apple expects Samsung to simply rely on Apple's self-serving construction of information about its capacity to meet the increased demand Apple contends would have existed for its products had Samsung not allegedly infringed Apple's patents.

The importance of this issue is paramount.  Apple's damages expert, Terry Musika, acknowledges that any award of lost profits necessarily depends on an analysis of Apple's ability to meet the alleged extra demand.  Indeed, Mr. Musika relies on Exhibits 15 and 16 to conclude that Apple could meet excess demand and is therefore entitled to over $583 million in lost profits.  Samsung is entitled to test the tables by evaluating the documents on which they are purportedly based.

Because Apple has failed to produce documentation underlying Exhibits 15 and 16, Samsung will move under Rule 37 to exclude the tables and preclude Apple from introducing any evidence or testimony regarding its manufacturing capacity, including the opinions of Terry Musika on this issue.

*                    *                    *

Please note that the examples described above are not an exhaustive list of Samsung's objections to Apple's opening expert reports.  Samsung further reserves all rights with respect to Apple's rebuttal expert reports.  This letter is intended only to respond to the concerns raised in your April 12, 2012 letter, and to point to representative examples of similar deficiencies in Apple's expert reports.  We look forward to discussing these issues with you further.

Very truly yours,

*/s/ Victoria F. Maroulis*

Victoria F. Maroulis