Exhibit 20

FILED UNDER SEAL

Highly Confidential - Attorneys' Eyes Only

Page 1

1                    UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4    APPLE INC., a California      )
     corporation,                  )
5                 Plaintiff,       )
                                   )
6    vs.                           ) Case No. 11-cv-01846-LHK
                                   )
7    SAMSUNG ELECTRONICS CO.,      )
     LTD., a Korean business       )
8    entity; SAMSUNG ELECTRONICS   )
     AMERICA, INC., a New York     )
9    corporation; SAMSUNG          )
     TELECOMMUNICATIONS AMERICA,   )
10   LLC, a Delaware limited       )
     liability company,            )
11                Defendants.      )
     _____)

12

13

14            H I G H L Y   C O N F I D E N T I A L

15           A T T O R N E Y S'   E Y E S   O N L Y

16

17        VIDEOTAPED DEPOSITION OF STEPHEN GRAY

18                 Palo Alto, California

19                 Friday, May, 4, 2012

20

21

22   BY:  HEIDI BELTON, CSR, RPR, CRR, CCRR

23   CSR LICENSE NO. 12885

24   JOB NO. 49273

25

Highly Confidential - Attorneys' Eyes Only

Page 2

1    May, 5, 2012
2    8:57 a.m.
3
4    Videotaped deposition of STEPHEN GRAY, held
5    at the offices of Morrison & Foerster, LLP,
6    755 Page Mill Road, Palo Alto, California,
7    before Heidi Belton, CSR, RPR, CRR, CCRR.
8    CSR License No. 12885
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1    A P P E A R A N C E S:
2
3       FOR THE PLAINTIFF APPLE INC.:
4       MORRISON & FOERSTER
5       425 Market Street
6       San Francisco, California 94105
7       By:  Andrew E. Monach, Esq.
8          Mark E. Melahn, Esq.
9
10
11
12
13       FOR DEFENDANT:  SAMSUNG ELECTRONICS CO., LTD.
14       QUINN EMANUEL URQUHART & SULLIVAN
15       555 Twin Dolphin Drive
16       Redwood Shores, California 94065
17       By:  Victoria F. Maroulis, Esq.
18
19
20    and
21       QUINN EMANUEL URQUHART & SULLIVAN
22       51 Madison Avenue
23       New York, New York 10010
24       By: Guy Eddon, Esq.
25

Page 4

1    A P P E A R A N C E S   C O N T' D:
2    and
3       QUINN EMANUEL URQUHART & SULLIVAN
4       865 S. Figueroa Street
5       Los Angeles, California 90017
6       By: Patrick Schmidt, Esq.
7
8
9
10       Also Present:  Shawn Phillips, videographer
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1          PALO ALTO, CALIFORNIA
2          FRIDAY, MAY 4, 2012
3          8:57 a.m.
4          (Whereupon Exhibit 1 marked
5          for identification.)
6       THE VIDEOGRAPHER:  This is the start of tape
7    labeled number 1 of the videotaped deposition of Steven
8    Gray.  In the matter Apple, Incorporated versus Samsung
9    Electronics Company, Limited, et al., in the
10    United States District Court, Northern District of       08:56:57
11    California, San Jose Division.  Number 12-CV-00630-LHK
12    [sic].
13       This deposition is being held at 755 Page Mill
14    Road, Palo Alto, California on May 4, 2012 at
15    approximately 8:57 a.m.                                  08:57:19
16       My name is Sean Phillips.  I'm the legal video
17    specialist from TSG Reporting, Incorporated,
18    headquartered at 747 Third Avenue, New York, New York.
19    The court reporter is Heidi Belton, in association with
20    TSG Reporting.                                           08:57:38
21       Will counsel please introduce yourself.
22       MR. MONACH:  Andrew Monach, representing
23    Apple.
24       MR. MELAHN:  Mark Melahn, representing Apple.
25       MS. MAROULIS:  Victoria Maroulis, counsel for     08:57:51

Highly Confidential - Attorneys' Eyes Only

Page 6

1    Samsung.  With me are my colleagues Patrick Schmidt and    08:57:52
2    Guy Eddon.
3            And note for the record that we need to
4    correct the case number; it's a different case.
5            MR. MONACH:  It should be 1846.  What did you    08:58:04
6    say?  You said 630?  It should be case number
7    11-cv-01846-LHK.
8            MS. MAROULIS:  That's correct.
9            MR. MONACH:  Thank you.
10           THE VIDEOGRAPHER:  Okay.  I'll read that case    08:58:19
11   number on again.
12           11-cv-01846-LHK.
13           Will the court reporter please swear in the
14   witness.
15           (Whereupon, the witness, STEPHEN GRAY,    08:58:31
16       having been duly sworn, testified as follows:)
17           EXAMINATION
18   BY MR. MONACH:
19       Q.  Good morning, sir.
20       A.  Good morning.    08:58:42
21       Q.  Could you state and spell your name for the
22   record, please.
23       A.  My name is Steven Gray.  Spelling is
24   S-T-E-P-H-E-N, G-R-A-Y.
25       Q.  Mr. Gray, where do you live?    08:58:53

Page 7

1        A.  I live in Solana Beach, California.    08:58:55
2        Q.  And what is your profession?
3        A.  I'm a consultant.
4        Q.  Do you have a company?
5        A.  I do.  The name of my company is Gray & Yorg,    08:59:05
6    LLC.
7        Q.  How long has that company been in existence?
8        A.  Gray & Yorg, or its predecessors, have been in
9    existence since 1984.
10       Q.  And what are the general areas of your    08:59:22
11   consulting?
12       A.  My consulting is primarily concerned with high
13   technology-related subjects in a variety of different
14   consulting roles.
15       Q.  How much of your consulting practice on    08:59:42
16   average over the last five years in terms of revenues
17   has been related to litigation?
18       A.  I think by "how much," you're asking me sort
19   of as a percentage of my --
20       Q.  Yes.    08:59:55
21       A.  -- consulting revenues?
22       Q.  Mm-hmm.
23       A.  The majority of it.  80 percent probably.
24           And let me be a little careful about that.
25   It's litigation or litigation-related matters.  In some    09:00:06

Page 8

1    cases I'm engaged in litigation-related matters, but    09:00:10
2    they don't necessarily have to do with a specific
3    litigation.
4        Q.  And that's been about 80 percent fluctuating
5    over the last five years of your practice?    09:00:23
6        A.  I think over the last five years of my
7    practice I would say that the average probably is
8    80 percent.  I have not done a specific calculation, but
9    that's my best estimate.
10       Q.  And what about for the previous decade before    09:00:39
11   that?  If we go back to 15 years ago to five years ago,
12   how much of your revenues -- what percentage revenues
13   were from litigation?
14           MS. MAROULIS:  Objection; calls for
15   speculation.    09:00:51
16           THE WITNESS:  So in the previous 15 -- in the
17   previous 15 years to the last five years, my best
18   estimate -- and it's probably more speculation than
19   estimate -- but probably I would say it would be
20   10 percent of my income came from litigation-related    09:01:11
21   matters -- of my consulting income came from
22   litigation-related matters.
23   BY MR. MONACH:
24       Q.  Were you retained as an expert witness in this
25   case, Samsung -- Apple versus Samsung?    09:01:25

Page 9

1        A.  I've been retained in this case in the Apple v    09:01:29
2    Samsung matter, yes.
3        Q.  By whom?
4        A.  By Samsung.
5        Q.  Okay.  When were you retained?    09:01:37
6        A.  My best recollection is that I was retained
7    in -- commencing either in December of 2011 or in
8    January of 2012.  I'm not sure exactly when I first
9    started, but I think it was in December or January.
10       Q.  Who first contacted you about this case?    09:02:00
11       A.  I believe that I was first contacted about
12   this Apple v Samsung matter in -- by a representative
13   from a company known as Silicon Valley Expert Witness
14   Group.
15       Q.  And what did they tell you?    09:02:31
16       A.  They suggested -- the representative from
17   Silicon Valley Expert Witness Group told me that there
18   was a matter between Apple and Samsung; that it had to
19   do with technologies that -- with which I was familiar,
20   and that if I -- they asked me then if I would be    09:02:55
21   interested in being considered as a potential expert in
22   that matter.
23       Q.  And what was the next communication you had
24   about working as a consultant or expert witness for
25   Samsung?    09:03:12

Highly Confidential - Attorneys' Eyes Only

Page 10

1    A.  Probably the next -- I'm not exactly sure the    09:03:21
2  exact number of steps that took place in the
3  conversations that I had leading up to the engagement
4  with -- in the Apple v Samsung matter.  However, if it
5  took its normal course of events, probably the next    09:03:33
6  communication would have been conveyance to me via
7  e-mail of the patents that were involved in the matter,
8  and asking me to confirm that my background was suitable
9  for opining on the subject matter of the patents.
10        That would probably have been the next -- the    09:03:57
11  next step that took place.
12    Q.  What patents were sent to you?
13        MS. MAROULIS:  I'm actually going to object to
14  this line of questioning going further because under the
15  new rules, the communication between attorney and expert    09:04:10
16  are privileged.
17        MR. MONACH:  Not if it's information that he
18  relied on.  And your folks have asked the same
19  questions.  So --
20        MS. MAROULIS:  He's here to testify to    09:04:19
21  particular patents.  That's the patent that --
22        MR. MONACH:  Are you instructing him not to
23  answer if he received anything else from counsel?
24        MS. MAROULIS:  I'm instructing him to -- he
25  can answer which patents he received.  But if you're    09:04:27

Page 11

1  going to continue exploring communications between    09:04:30
2  counsel and expert, I'm will instruct him.  So I'm
3  giving you fair warning.
4  BY MR. MONACH:
5    Q.  What patents did you receive?    09:04:37
6    A.  Well, interestingly, I don't recollect what
7  patents there were that I've received.  My best
8  recollection is, though, that among the patents, if
9  there was more than two, would have been the '915 patent
10  and the '163.  But I do not remember exactly which    09:04:50
11  patents were sent to me.  It -- just to be clear, it
12  could have just been one of those two patents; I'm not
13  sure.
14        I just don't remember specifically how that
15  transpired.    09:05:03
16    Q.  Do you remember if you received patents in
17  addition to the '915 and the '163?
18        MS. MAROULIS:  Objection; calls for
19  speculation.
20        THE WITNESS:  Let me just go back and finish.    09:05:10
21        What I'm relaying to you here is what the
22  normal course of events would be.  I'm not vividly
23  remembering exactly how the steps took place.  So -- but
24  to answer your question regarding whether or not I had
25  received any other patents, I don't remember directly.    09:05:24

Page 12

1  But my -- I just don't remember directly if there were    09:05:27
2  other patents or not.
3  BY MR. MONACH:
4    Q.  Okay.  Did you start working on both the '915
5  and the '163 essentially simultaneously, or did you    09:05:36
6  first start working on one and then add a second patent?
7    A.  I think your question is relating to -- it
8  kind of leaps forward in time, yeah, until after I had
9  been engaged and so on.  Am I understanding your
10  question correctly as to when I was engaged?    09:05:56
11    Q.  That wasn't the question I asked, but that's a
12  perfectly good question.
13        When were you engaged?
14        MS. MAROULIS:  Objection; asked and answered.
15        THE WITNESS:  I think it was either in    09:06:04
16  December or January.  The reason that I'm asking your --
17  or I'm asking about the engagement is I didn't start
18  working on the patents until after I was engaged.  And I
19  believe the engagement was in -- it commenced in
20  December or January.    09:06:19
21  BY MR. MONACH:
22    Q.  What were you engaged to do?
23    A.  I was retained by Samsung to consult on the
24  matter at hand as a consulting expert and potentially as
25  a testifying expert, was how I was -- how I was retained    09:06:36

Page 13

1  by Samsung.    09:06:39
2    Q.  And when you were retained; was it your
3  understanding that you were to work on both the '915 and
4  '163 patents or something else?
5    A.  My best recollection was that I was asked to    09:06:52
6  work on the '915 and the '163 patent and that there was
7  a -- there was -- there had been some discussion --
8  again, this is after I had been retained -- there had
9  been some discussion related to potentially working on
10  another patent, but that never moved forward.  And I    09:07:12
11  don't -- I'm not -- again, like I say, I don't vividly
12  remember, but I think there was a -- some discussion of
13  another patent.  And to be clear, that was -- this
14  was -- leading up to the engagement, there was
15  discussion regarding this.    09:07:40
16    Q.  What was the subject matter of the other
17  patent?
18        MS. MAROULIS:  I think I'm going to instruct
19  the witness on this because he's not a testifying expert
20  on any other patent other than the '915 and the '163.    09:07:50
21  So if the answer is anything, "I don't know" -- anything
22  other than "I don't know," I will instruct him.  But if
23  it is "I don't know," let's clean up the record.
24        THE WITNESS:  Would you mind repeating the
25  question?  I --    09:08:04

Highly Confidential - Attorneys' Eyes Only

Page 14

BY MR. MONACH:                                    09:08:06
2     Q.  My question was, what was the subject matter
3  of the other patent?
4     A.  I don't recollect the subject matter of the
5  other patent specifically.                     09:08:13
6     Q.  When you were retained and then started
7  working on the '915 and '163, was it your understanding
8  that you were going to address validity only or validity
9  and non-infringement?  Just non-infringement?  What was
10  the scope of your assignment at that time?     09:08:35
11     A.  My best recollection is that the scope of my
12  assignment was both -- was to consult on both invalidity
13  and on non-infringement.
14     Q.  We've marked as Gray Exhibit No. 1 a copy of
15  an expert report of Steven Gray regarding invalidity of   09:09:03
16  patents '915 and '163.  Do you have that, sir?
17     A.  I do.
18     Q.  Is that a copy of your invalidity report in
19  this case, excluding the various appendices and
20  exhibits?                                       09:09:22
21     A.  So the front material of this -- on the
22  document Exhibit 1 indicates that it is the "Expert
23  Report of Stephen Gray Regarding Invalidity" of the '915
24  and '163 patent.  On page 112, there is a -- that's my
25  signature; so I believe it is the report that I   09:09:52

Page 15

submitted in this matter, absent, as you say, the   09:09:57
2  exhibits and appendices.
3     Q.  Okay.  And then did you also do a rebuttal
4  report regarding non-infringement of the '915 and '163
5  patents?                                        09:10:13
6     A.  I did.
7         MR. MONACH:  Let's mark that as Exhibit 2.
8         (Whereupon Exhibit 2 marked
9          for identification.)
10  BY MR. MONACH:                                  09:10:27
11     Q.  Mr. Gray, could you take a look at Exhibit 2
12  and tell me if that's a copy of your non-infringement.
13  Report in this case.
14     A.  I think I got an extra copy.
15         (Addressing Ms. Maroulis)  Oh, do you want   09:10:41
16  that one?
17         So, again, the report Exhibit 2 is the
18  "Rebuttal Report" -- "Rebuttal Expert Report of Stephen
19  Gray Regarding non-infringement of Asserted Claims" of
20  the patents at issue, is on the cover.  And on page 75   09:10:59
21  is my signature.
22         So I believe, again, absent any appendices or
23  exhibits, that this is the rebuttal report --
24     Q.  Were there any --
25     A.  -- that I submitted in this matter.       09:11:15

Page 16

Q.  I'm sorry.  Were there any exhibits or   09:11:16
2  appendices to your rebuttal report?
3     A.  Well, that's a good question.
4         I don't recollect -- I think that the -- I
5  think that the -- well, without going through the   09:11:31
6  report, my best -- my best recollection is that the --
7  that I included with this rebuttal report an exhibit
8  that had to -- that reflected the materials that I
9  considered.
10     Q.  Well, the reason I asked you, sir --     09:11:51
11     A.  That's my best recollection, anyway.
12     Q.  -- is there's a reference to Exhibit 1 in the
13  rebuttal report of materials considered, as well as a
14  reference to Appendix 1 which was in the -- attached to
15  the first report.  No Exhibit 1 was delivered to us.   09:12:05
16  And we asked counsel last night to please give us
17  Exhibit 1 because we hadn't received it and we were told
18  that it's a typo, there is no exhibit to -- I'm happy to
19  accept a stipulation on this point rather than waste
20  time on it.  Is there an Exhibit 1 or not of materials   09:12:22
21  that -- that you looked at for the non-infringement
22  report?
23     A.  There is either an Appendix 1 or an Exhibit 1.
24  I don't know what the -- how it's referred to in here.
25  But it is the list of materials considered.  I believe   09:12:39

Page 17

that there is -- or I think that was the intention,   09:12:45
2  anyway, that I had, when I submitted the report that
3  there would be a list of the materials considered.
4         MR. MONACH:  Counsel, we haven't received any
5  such exhibit or appendix for the rebuttal report.  It's   09:12:55
6  a little bit late now for producing it.
7         MS. MAROULIS:  I understand that.
8         MR. MONACH:  We were told there was no such
9  exhibit.
10         MS. MAROULIS:  Mr. Hecht had replied last   09:13:06
11  night that there was no separate Exhibit 1; it was a
12  reference to Appendix 1 which you already have.  I will
13  double-check during the break with my colleagues.
14         MR. MONACH:  All right.  Let's mark as
15  Exhibit 3 a document labeled Appendix 1 and then a list   09:13:24
16  of materials.
17         (Whereupon Exhibit 3 marked
18          for identification.)
19  BY MR. MONACH:
20     Q.  Mr. Gray, is what's been marked as Deposition   09:13:52
21  Exhibit No. 3 the Appendix 1 from your invalidity report
22  listing the materials that you considered for that
23  report?
24     A.  I see the issue.  Yeah.  I see what happened
25  I'm sorry.  You have a question pending?        09:14:38

Highly Confidential - Attorneys' Eyes Only

Page 18

1    Q.  Yes.                              09:14:40
2    A.  The question pending is is Exhibit 3 a list of
3 the materials considered from my invalidity report?
4    Q.  Yes, sir.
5    A.  Is that the question?  Okay.  And -- so let me   09:14:52
6 just look through it.
7        Yeah.  Yes.  I think that Exhibit 3 represents
8 a list of materials considered from my invalidity
9 report.
10       MR. MONACH:  All right.  Let me show you what   09:15:25
11 we've marked as Deposition Exhibit 4, labeled "Appendix
12 2" from your invalidity report.
13              (Whereupon Exhibit 4 marked
14               for identification.)
15 BY MR. MONACH:                          09:15:48
16    Q.  Sir, is that a copy of your current CV?
17    A.  I believe this -- I believe that Exhibit --
18 Appendix 2, Exhibit 4 is a copy of my current CV as of
19 some date that I've updated it.  And it was relatively
20 recent, probably as of March of this year.  So I think   09:16:26
21 the answer to your question is that this is the document
22 that I -- if someone asked me for my CV, I believe this
23 was the document that if I were to go to my computer and
24 print it out, this is the document that you'd get, yes.
25    Q.  All right.  And if you turn to page 5 of your   09:16:45

Page 19

1 Appendix 2, your CV, there commences a list of   09:16:53
2 litigation support experience, which then runs to page
3 11, correct?
4    A.  Yes, that's accurate.  I -- on page 5 starts
5 my litigation support experience in my CV and it runs to   09:17:13
6 11.
7    Q.  It looks like there are more than 50 items
8 listed there; do you see that?
9    A.  I think you've counted them.  I'll accept
10 your -- there could be 50 in here.  I'm not -- I haven't   09:17:30
11 counted them, but there could be 50.
12    Q.  Okay.  In how many of these litigation support
13 experience matters have you actually given testimony in
14 court?
15    A.  Let me just make sure that by "testimony in   09:17:43
16 court" do you mean testimony at trial or in hearings and
17 that sort of thing?
18    Q.  In trial or in a hearing.
19    A.  Trial or a hearing.
20       MS. MAROULIS:  Objection; compound.   09:17:52
21       THE WITNESS:  I have given testimony in a
22 court at trial or by hearing I believe on eight separate
23 occasions.
24 BY MR. MONACH:
25    Q.  Can you tell me briskly what those eight were?   09:18:09

Page 20

1    A.  One was -- do you want to know the parties?   09:18:16
2 Or what would you like me to try to tell you?
3    Q.  They should all be included on this list on
4 your CV; is that correct?
5    A.  I believe so.                     09:18:25
6    Q.  Okay.  Which of the eight did you testify?
7    A.  So in Catalina Marketing v Coupons, which is
8 on page 5.  So page 6, Bedrock v Softlayer.  On page 6,
9 DataTreasury v U.S. Bank.  On page 6, ICR v Harpo.  On
10 page 7, i4i v Microsoft.  On page 7, MathWorks v COMSOL.   09:19:13
11 On page 9, Waltrip Associates v Kevin Kimberlin and
12 Spencer Trask Ventures.
13       How many is that?
14    Q.  That's eight.
15    A.  That's eight.  Good.             09:19:58
16       MS. MAROULIS:  Pretty good.
17 BY MR. MONACH:
18    Q.  Let me check that.  1, 2, 3, 4, 5, 6.  It
19 might be 7.
20    A.  That's not good, because from my mind's eye, I   09:20:12
21 counted 8.  Let me see.
22       Maybe there are 7.  I think there are seven.
23 I think that's accurate.  Sorry.
24    Q.  Other than your -- other than your work in
25 this case, have you ever done any work for a Samsung   09:20:37

Page 21

1 entity?                                 09:20:40
2    A.  I remember doing some work for a Samsung
3 entity.  I'm trying to remember the nature of it.  I'm
4 trying to see if it's on here.
5       MS. MAROULIS:  You may say yes or no to this.   09:21:09
6 And if it's testifying, you can explain further.  But if
7 it's consulting, you should let him know.
8       THE WITNESS:  So my best recollection is that
9 I have worked with Samsung once in the past.
10 BY MR. MONACH:                          09:21:31
11    Q.  On what matter?
12    A.  I don't believe it was a litigation matter.  I
13 believe it was a consulting matter.
14    Q.  What was the nature of the consulting that you
15 did for Samsung?                        09:21:42
16       MS. MAROULIS:  Mr. Gray, were you retained as
17 a consulting expert for Samsung?
18       THE WITNESS:  No, I don't -- my best
19 recollection is -- is that I was not retained as a
20 consulting expert for Samsung, no.      09:21:55
21       My best recollection was that this had to do
22 with device drivers in UNIX.
23 BY MR. MONACH:
24    Q.  When was that?
25    A.  I can remember a phone conference at -- in an   09:22:18

Highly Confidential - Attorneys' Eyes Only

Page 22

1  airport, but I can't remember the year. I would say      09:22:21
2  within the last three or four years. It probably
3  wasn't -- it was at least three years ago. It might
4  have been as many as five. But I think it was at least
5  three years ago.      09:22:33
6      Q. Other than this case, Catalina Marketing and
7  Soverain versus JCPenny, have you done any work for --
8  other work for Quinn Emanuel?
9      A. No, I don't -- I don't recollect having done
10  any work for Quinn Emanuel other than this case,      09:22:48
11  Catalina Marketing and Soverain.
12      Q. Okay. You have a bachelor's degree from Cal
13  Poly in economics in 1973; is that correct?
14      A. I have -- yes, I have received a bachelor of
15  science degree from Cal Poly in 1973.      09:23:09
16      Q. In economics?
17      A. In economics, yes.
18      Q. Do you have any other degrees other than that
19  one?
20      A. I have no degree other than my bachelor's of      09:23:19
21  science degree in economics from Cal Poly.
22      Q. Have you -- since 1973, have you taken any
23  courses in computer science or computer programming?
24      A. I took -- I've taken -- I took courses early
25  in my career regarding programming that were offered      09:23:40

Page 23

1  by -- yes, I've taken courses that were -- in computer      09:23:42
2  programming.
3      Q. Early in your career?
4      A. Early in my career, correct.
5      Q. And what types of programming languages did      09:23:51
6  you use when you had that training?
7      A. Assembler language, Pascal, COBOL. Those are
8  the ones I remember.
9      Q. Is it correct that none of those three
10  languages is what's known as an object-oriented      09:24:13
11  language?
12      A. There are --
13      MS. MAROULIS: Objection; compound.
14      THE WITNESS: There are -- well, Assembler is
15  pretty much not an object-oriented language. There are      09:24:24
16  object versions of -- of COBOL, and there's object
17  versions of -- and Pascal can be written in a way that
18  obtains object orientation.
19  BY MR. MONACH:
20      Q. When you were studying Pascal and COBOL, were      09:24:39
21  you studying object-oriented variance of those languages
22  or not?
23      A. My best recollection is that at the time I was
24  taking the courses -- or took courses in Pascal and
25  COBOL, that those were not object versions of      09:24:54

Page 24

1  those languages.      09:24:59
2      Q. What does the term "object-oriented
3  programming language" mean to your?
4      MS. MAROULIS: Objection; vague.
5      THE WITNESS: I'm sorry. The question was?      09:25:12
6  Restate it again, please.
7  BY MR. MONACH:
8      Q. Yeah. What does the term "object-oriented
9  programming language" mean to your?
10      MS. MAROULIS: Same objection.      09:25:19
11      THE WITNESS: The term "object-oriented
12  programming language" to me means programming languages
13  with constructs that enable object-oriented programs to
14  be written easily -- more easily than with
15  nonobject-oriented languages.      09:25:39
16  BY MR. MONACH:
17      Q. What do you mean by an "object-oriented
18  program"?
19      A. Programs that primarily deal with data and
20  functions as objects.      09:25:51
21      Q. What do you mean by an "object" in that
22  context?
23      A. Objects are software entities that contain
24  functions and data. They have state and behaviors. And
25  the object-oriented programs -- or object-oriented      09:26:10

Page 25

1  programming provides for the manipulation of those      09:26:15
2  objects via the programming constructs.
3      Q. What are some of the generic names for
4  non-object-oriented programs?
5      MS. MAROULIS: Objection; vague.      09:26:32
6      THE WITNESS: For example, procedure --
7  procedural programs.
8  BY MR. MONACH:
9      Q. Do you know of any others?
10      A. "Sequential programming" is also a term used.      09:26:43
11  Those are the two that come to mind.
12      Q. As of January 2007, had you done any
13  programming for touch-sensitive computers or touch
14  sensors?
15      MS. MAROULIS: Objection; vague.      09:27:16
16      THE WITNESS: So as of 2007, I had worked on
17  projects that had touch-sensitive user interface
18  components associated with them.
19      And you asked me about programming. The
20  programming that I had done -- that I did was more along      09:27:42
21  the lines of analyzing the software rather than having
22  produced any fresh programs.
23  BY MR. MONACH:
24      Q. When you say the projects had touch-sensitive
25  user interface components associated with them, what do      09:27:55

Highly Confidential - Attorneys' Eyes Only

Page 26

1  you mean?                                          09:27:59
2      A.  So what I mean by "touch-sensitive user
3  interface components" is that the system involved had a
4  touch-sensitive user interface that was -- that enabled
5  access to the functions of the -- of the devices or the   09:28:17
6  systems via the touch-sensitive interface.
7      Q.  You mean like a touch-sensitive touch pad on a
8  laptop?
9      A.  I'm not sure precisely what you're asking me.
10  If you're asking me is a touch-sensitive pad on a laptop   09:28:34
11  a touch-sensitive device, it is.
12      Q.  What were the touch-sensitive devices in this
13  project that you worked on prior to 2007?
14      MS. MAROULIS:  Objection; asked and answered.
15      THE WITNESS:  So these are user interface         09:28:52
16  devices that -- or user interfaces that were associated
17  with systems that allowed for user access to the
18  functions of the system through the user interface.
19  BY MR. MONACH:
20      Q.  And I'm asking you to be more precise.  You've   09:29:06
21  told me a couple of times they had touch-sensitive user
22  interfaces.  What were they?  What was the hardware?
23  What was the software?
24      A.  Oh --
25      MS. MAROULIS:  Objection; asked and answered.   09:29:17

Page 27

1  Compound.
2      THE WITNESS:  So one of -- these were user
3  interfaces that were attached to electronic printing and
4  reprographic systems at Xerox Corporation.
5  BY MR. MONACH:                                     09:29:35
6      Q.  Controlled pads that were touch-sensitive?
7      MS. MAROULIS:  Objection; vague.
8      THE WITNESS:  I'm not sure what you mean when
9  you -- when you're using the word "control pad."
10  BY MR. MONACH:                                    09:29:47
11      Q.  Why don't you tell me what the Xerox
12  touch-sensitive interfaces were.
13      A.  So one of them was a touch screen user
14  interface for the control of a reprographic system which
15  essentially was a user interface into a computer which   09:30:01
16  implemented the user interface for the device.  The
17  other was a touch-sensitive pad, if you will, that was
18  backlit had the ability to control a copier.
19      Q.  Were these touch-sensitive pads and screens at
20  Xerox that you worked with multi-touch devices, or did   09:30:28
21  they interpret just a single touch on a control pad?
22      MS. MAROULIS:  Objection; vague.  Compound.
23      THE WITNESS:  My best recollection is that
24  these devices were devices in which one would do single
25  touch to make selections for various user interface   09:30:53

Page 28

1  options which obtained access to the functions of the   09:30:59
2  electronic reprographic system or the electronic
3  printer.
4  BY MR. MONACH:
5      Q.  Was this touch control pad in lieu of physical   09:31:07
6  buttons?  For example, there might be numbers on a
7  screen or "start copying" icons on the screen and you
8  touch those and get the response you're requesting?
9      MS. MAROULIS:  Objection; vague and confusing.
10      THE WITNESS:  So in one case the user         09:31:26
11  interface allowed for the user to control the functions
12  of the copying device through the touch pad.  In another
13  case it provided a user interface for job control on the
14  electronic reprographic system.  I think that's
15  responsive to your question.                       09:31:49
16  BY MR. MONACH:
17      Q.  Since January 2007 have you done any
18  programming of touch-sensitive devices?
19      A.  My best recollection is that since January of
20  2007 I have not done any programming of touch-sensitive   09:32:10
21  devices.
22      Q.  Other than work you've done on this case,
23  since January of 2007 have you done any work at all
24  relating to touch-sensitive devices or touch-sensitive
25  interfaces?                                        09:32:27

Page 29

1      MS. MAROULIS:  Objection; vague.               09:32:38
2      THE WITNESS:  My -- since 2007.  I believe the
3  answer to that question did not -- well, I believe the
4  answer is that since 2007 I have worked on projects
5  which utilized touch-sensitive user interface         09:32:48
6  components, yes.
7  BY MR. MONACH:
8      Q.  What projects?
9      A.  Well, the project you're referring to, my best
10  recollection is the user interface for the electronic   09:33:01
11  reprographic system spanned the period you're talking
12  about.
13      Q.  Other than what you already testified about
14  for Xerox, since January of 2007 have you done any work
15  relating to -- other than work on this case -- relating   09:33:15
16  to touch screen interfaces or touch screen programs?
17      MS. MAROULIS:  Objection; vague.
18      THE WITNESS:  My best recollection, sitting
19  here, is that I -- other than the projects that I have
20  already mentioned to you around the 2007 time frame, I   09:33:31
21  have not done any further work with touch-sensitive
22  devices.
23  BY MR. MONACH:
24      Q.  Have you taken any courses relating to
25  object-oriented computer languages or object-oriented   09:33:44

Highly Confidential - Attorneys' Eyes Only

---

Page 30

1  computer programming?                      09:33:48
2      A.  I don't remember having taken any.  I've
3  taught some, but I don't remember having taken any
4  courses, no.
5      Q.  Okay.  What courses have you taught concerning   09:34:06
6  object-oriented languages or programming?
7      A.  I gave -- courses.  I have taught in the form
8  of a seminar, I think would be better -- the description
9  of systems that were object-oriented systems.
10     Q.  What systems?  What systems did you describe   09:34:24
11 in your seminar?
12     A.  Oh.  The -- the systems that we were referring
13 to are systems that have to do with, again, electronic
14 reprographics and -- well, primarily electronic
15 reprographics systems and job management systems.   09:34:40
16     Q.  And those were for Xerox as well?
17     A.  That's correct.  I believe that the only
18 people attending those -- those seminars or courses were
19 Xerox employees.
20     Q.  Other than seminars you gave about   09:34:58
21 reprographic systems and job management systems to Xerox
22 employees, have you taught any courses on
23 object-oriented programs or object-oriented programming
24 languages?
25     A.  I do not believe, other than the projects that   09:35:20

---

Page 31

1  I have already identified, that I have taught any other   09:35:22
2  courses -- object-oriented programming or object
3  orientation.
4      Q.  Have you personally written any programs using
5  an object-oriented programming language?   09:35:34
6      A.  I have certainly analyzed a lot of programs.
7  But I have -- my best recollection is that the only
8  thing that I have done with respect to object-oriented
9  programs is modify some.  I have not written any from
10 scratch.                                    09:35:52
11     Q.  And under what circumstances did you modify
12 object-oriented programs?
13     A.  Primarily just for assignments that I had.
14 One assignment in particular was in a litigation matter.
15 Another assignment was for a customer who was in the --   09:36:07
16 how best do I describe it?  They were in the electronic
17 commerce business.  There was a client that I worked --
18 couple of clients that I worked for where
19 object-oriented programming was an issue.  And I
20 modified and analyzed some of those programs.   09:36:27
21     Q.  Was the analysis -- other than that one
22 e-commerce instance that you just described, was your
23 analysis of object-oriented programs all litigation
24 consulting?
25     A.  Sitting here now, my best recollection is that   09:36:54

---

Page 32

1  those were -- that the two that I had mentioned to you   09:36:58
2  are the examples of having done software -- development
3  on for object-oriented software.  And that the other
4  analysis that I performed was with respect to
5  litigation-related matters.                 09:37:13
6      Q.  Okay.  And for the litigation-related analysis
7  object-oriented programs, in what languages were those
8  programs you analyzed written?
9      A.  Java, C++.  I believe those are the two that
10 come to mind.                               09:37:43
11     Q.  So you've never written a program -- written
12 or modified a program in Android; is that correct?
13     A.  Have I -- so I have reviewed software in
14 Android; I have not written or modified Android
15 software.                                   09:38:06
16     Q.  Other than this case, in what instances have
17 you reviewed Android software?
18     A.  I'm just going to give you the -- if you don't
19 mind, I'll just give you the name of the case as opposed
20 to --                                       09:38:29
21     Q.  All right.
22     A.  So in Deep9 v Barnes & Noble.  I've also
23 reviewed Android software.
24     Q.  Which page is that on your CV?
25     A.  Oh.                                09:38:42

---

Page 33

1      Q.  On the top of --                   09:38:42
2      A.  The citation starts on page 5 and then runs
3  through the top of page 6.
4      Q.  Other than Deep9 versus Barnes & Noble and
5  this case, have you ever reviewed Android software?   09:38:59
6      A.  I believe that the only times that I -- I
7  believe other than this case and the Deep9 v Barnes &
8  Noble are the only two cases where I have reviewed
9  Android code.  I believe that to be the case.  I think
10 that's accurate.                            09:39:44
11     Q.  Did you, in fact, review Android code in this
12 case?
13     A.  I -- I looked at Android -- in this matter --
14 in Apple v Samsung I have looked at Android code in
15 this -- yes, I've looked at Android code in this matter.   09:39:55
16     Q.  What Android code did you look at?
17     A.  Code related to the subject matter at hand,
18 including user interface components.  That's primarily
19 the code that I looked at.
20     Q.  Can you tell me either by the methods that you   09:40:19
21 looked at or the Bates numbers of printed-out source
22 code pages specifically what code you looked at in this
23 case?
24     A.  Well, I reviewed the code cited in this case
25 by -- in the Singh report.  And I think prior to that,   09:40:44

---

Highly Confidential - Attorneys' Eyes Only

Page 34

1  also some modules out of Android were also reviewed that   09:40:52
2  have -- that had both that have to do with Samsung's
3  products.
4      Q.  Did you review all of the Samsung source code
5  that was cited in the Singh report?  And to be clear,   09:41:11
6  I'm including the -- not just the body of the report but
7  also the claim charts which were attached to them.
8      MS. MAROULIS:  If you need to actually look at
9  the Singh report, you can ask counsel to hand it to you.
10     THE WITNESS:  I'm trying to remember what --   09:41:34
11 you know, what?  I should probably look at the report,
12 primarily because I don't remember exactly all of the
13 materials that are cited as being considered in the
14 Singh report.  So it's hard for me to remember whether I
15 did or didn't.   09:41:52
16     MR. MONACH:  Okay.
17         (Whereupon Exhibit 5 marked
18          for identification.)
19 BY MR. MONACH:
20     Q.  Would you please look through the report and   09:42:43
21 tell me if you read all the code that's cited in there.
22     A.  (Witness reviews document.)
23     Q.  You can skip the portions for the '891.  My
24 question was intended to be related to the '915 and
25 the --   09:50:09

Page 35

1      A.  I was going to ask --   09:50:09
2      Q.  -- '163.
3      A.  I was just going to ask you if it was all
4  right to skip the '891.
5      Q.  Yes.   09:50:17
6      A.  So having looked through the pages, which you
7  asked me to do, with regard to the code that's been
8  cited in the Singh report, my -- my best recollection is
9  that all of -- that the function -- or the methods,
10 rather, that are identified here that I've reviewed, the   09:50:29
11 vast majority of the methods that are in there, there
12 may be an exception or two, but I -- my best
13 understanding, sitting here right now, is I've reviewed
14 every method that was identified in the Singh report --
15 in the Singh report proper.   09:50:48
16     Q.  Okay.
17     A.  There are -- let me just finish just a little
18 bit.
19         There are references in there to multi-page
20 excerpts from the Android code base.  And I don't know   09:50:57
21 that I can sit here and say that I've reviewed every
22 line of code in that entire identified excerpt.  But the
23 function call -- there are the methods that have been
24 identified in the Singh report.  My best recollection,
25 sitting here, is that I've identified all of those --   09:51:16

Page 36

1      Q.  Okay.   09:51:20
2      A.  -- or at least the vast majority of them.
3         (Whereupon Exhibit 6 marked
4          for identification.)
5  BY MR. MONACH:   09:51:23
6      Q.  All right.  We've marked as deposition
7  Exhibit 6, Exhibit 17 from the Singh infringement
8  report, which is a claim chart for one of the accused
9  phones.  I'd like you to take a look at that and tell me
10 whether you've read all the source code that's   09:51:41
11 referenced in that Dr. Singh Exhibit 17.
12     A.  Okay.  So having thumbed through Exhibit 17 --
13 I'm sorry -- Exhibit 17, which is Exhibit 6 to my
14 deposition, I don't -- I believe that I have reviewed --
15 well, let me say it the way I want to say it.   09:54:28
16         The methods that are identified in this
17 exhibit and some of the files -- file names, as well,
18 all seem familiar to me.  So it is my best
19 understanding, sitting here, that I have reviewed
20 these -- these files and methods.  There may be an odd   09:54:45
21 one that I hadn't, but I believe that I have.  So I
22 think it's -- for the preponderance of the methods
23 identified and the files identified in Exhibit 6 to my
24 deposition, I believe I've reviewed that code.
25     Q.  All right.  At page -- starting at page 2   09:55:04

Page 37

1  above the pictures and then continuing on pages 3 and 4   09:55:08
2  of Singh Exhibit 17, Exhibit 6 to your deposition,
3  Dr. Singh discusses source code that allows for creating
4  an event object and response to user input.  Do you see
5  that?   09:55:28
6      A.  The -- yes.  I believe that the -- yeah, this
7  is -- let me just get oriented here.  We're in Claim 1.
8  And the limitations creating an event object in response
9  to the user input, which is in the left-hand column.
10 And it -- I think that what is intended to be that the   09:55:47
11 right-hand column described how that takes place --
12     Q.  Okay.
13     A.  -- for a couple of products -- or at least one
14 product.
15     Q.  For the Samsung Galaxy S II?   09:56:00
16     A.  For the Galaxy S II.  I just noticed it's just
17 the one product, right.
18     Q.  Is there -- in your opinion, is there anything
19 factually inaccurate about Dr. Singh's discussion of the
20 way in which user input is processed for creating an   09:56:13
21 event object?
22     MS. MAROULIS:  Objection; vague.
23     THE WITNESS:  Can I get a clarification?
24 You're asking me not necessarily about the text, not
25 related to the code but the code itself?  Or are you   09:56:48

Highly Confidential - Attorneys' Eyes Only

Page 38

1  asking me the general question regarding anything that I   09:56:52
2  might disagree with in the writeup generally?
3  BY MR. MONACH:
4      Q.  I'm asking you, first of all, is the writeup
5  in regular type, not bold type, that starts, "On the   09:57:01
6  Galaxy S II user input is processed" -- do you see that?
7  And then there's a description of Samsung code.  Do you
8  see that?
9      A.  That's on page 3?
10     Q.  Yes, sir.                          09:57:17
11     A.  Okay.
12     Q.  Is there anything factually incorrect with
13  that paragraph in this exhibit of Dr. Singh's?
14     A.  Thanks for the clarification.
15         MS. MAROULIS:  Objection; vague.   09:57:29
16         THE WITNESS:  Thank you for the clarification.
17  I'll just focus on that.  Thank you.
18         So on page 3 of Exhibit 6 to my deposition, a
19  statement is made that the device -- that "the user
20  input is processed by the device driver, which passes   09:58:43
21  the input into user space and parses it" into a
22  MotionEvent object, with which I have -- with which I
23  agree.  "The object is an event created by the method
24  InputConsumer::PopulateMotionEvent."
25         Without looking at that code, I'm -- I'm not   09:59:03

Page 39

1  clear that PopulateMotionEvent creates the object.  But   09:59:07
2  there's a citation there.  But I don't recollect
3  directly whether or not it creates the object or whether
4  it populates the object.
5      Q.  Your recollection is it does one or the other?   09:59:24
6         MS. MAROULIS:  Objection; assumes facts.
7         THE WITNESS:  My recollection is that the
8  populate MotionEvent method is involved with getting the
9  data into the MotionEvent object in some way.  Let's --
10  if I can leave it at that.                  09:59:39
11         There are references here to analogous code in
12  Android 2.2 and 2.1, which I -- for -- with respect to
13  "vibrant" and "captivate" respectively that I -- I
14  don't -- I'd have to look at the code just to see if
15  it -- if it does the comparable events -- comparable   10:00:02
16  things.
17  BY MR. MONACH:
18      Q.  Did you look at Android 2.2 and 2.1 code in
19  preparing your non-infringement rebuttal report?
20      A.  My best recollection is that in some cases I   10:00:17
21  looked at Android 2.2 and 2.1 code in some cases.  I'm
22  not sure that I looked at it in each and every case.
23  But I remember looking -- I do recall looking at it in
24  some.
25      Q.  As you sit here today for your deposition, do   10:00:32

Page 40

1  you have any opinion that there are errors or that it's   10:00:38
2  incorrect to describe the code cited in Android 2.1 and
3  2.2 as analogous to this Galaxy S II code?
4         MS. MAROULIS:  Objection; vague.  Assumes
5  facts.                                     10:00:55
6         THE WITNESS:  Just as a sort of a low-level
7  matter, I've always been curious about what is meant by
8  "analogous code."  But what I -- so I'm not really sure
9  what that term means.  If I -- if I looked at the code,
10  I probably could come to a pretty quick understanding of   10:01:15
11  whether or not the -- the functions or the methods that
12  have been identified in -- in the identified code are
13  the same in Android 2.1 and 2.2.  So I don't -- I don't
14  know how to answer that question directly.  But I
15  don't -- I think I could tell pretty quickly.   10:01:39
16  BY MR. MONACH:
17      Q.  Okay.  You don't recall whether you, in fact,
18  looked at the code to see whether you thought it was
19  analogous or performed the same function?
20      A.  Are you suggesting that analogous means   10:01:51
21  performed the same function?
22      Q.  I don't --
23      A.  Okay.
24      Q.  Did you look at it for any purpose, that
25  vibrant and captivate code, to determine how similar it   10:01:59

Page 41

1  was or wasn't to the specific citations about the   10:02:02
2  Galaxy S II Android 2.3 code?
3         MS. MAROULIS:  Objection; vague.
4         THE WITNESS:  So I'm -- sitting here today
5  don't remember specifically if I did this.  But,   10:02:17
6  however, having said that, this would be something that
7  I probably would have looked at.  But I don't remember
8  looking specifically at those two.  So I just would have
9  to look at them again.
10         However, that would be typically something   10:02:28
11  that I would look at to see whether "populate
12  MotionEvent" and the "initialize" operated in any
13  different way with respect to getting the data into the
14  MotionEvent object.
15  BY MR. MONACH:                             10:02:39
16      Q.  Is it fair to say that if you felt they were
17  different in Android 2.2 and 2.1, you would have made
18  mention of that in your rebuttal report?
19         MS. MAROULIS:  Objection; incomplete
20  hypothetical.  Assumes facts.              10:02:49
21         THE WITNESS:  I'm uncertain that I would have
22  identified every difference between them in my -- in my
23  expert report.  I'm uncertain that I would have done
24  that.  Again, if there had been -- I think the answer is
25  that if there had been something -- sort of   10:03:14

Highly Confidential - Attorneys' Eyes Only

Page 42

1  course-grained error of some kind, I probably would have   10:03:20
2  identified it. But I couldn't sit here today telling
3  you that I have analyzed it in sufficient detail to
4  ensure that there is no deviations that wouldn't give me
5  pause or make me reconsider the differences. So I just   10:03:34
6  can't make that claim.
7  BY MR. MONACH:
8      Q.  Let's go to the next regular-type bullet point
9  on page 3 of Dr. Singh's, Exhibit 17, talking about the
10  Galaxy S II source code where he begins that portion by   10:03:47
11  saying, "On the Galaxy S II, the WebView class's
12  onTouchEvent() method interprets the input points."
13      Do you see that?
14      A.  I do.
15      Q.  And it goes on to say, "If one input point is   10:04:02
16  detected, the contact is interpreted as a scroll
17  operation in an onTouchEvent().  If two or more input
18  points are detected, a contact is interpreted as a
19  gesture operation via a call to
20  mScaleDetector.onTouchEvent()."   10:04:18
21      Do you see that?
22      A.  I do see the -- I see the section that you
23  just read, yes.
24      Q.  Is that a factually accurate description of
25  the Android Samsung Galaxy S II code?   10:04:32

Page 43

1      MS. MAROULIS:  Objection; vague.   10:04:38
2      THE WITNESS:  So I'm going to go through this
3  -- rather than go through the whole thing and remember
4  what I identified as going through it, I'm going to go
5  through it a little piece at a time, if that's okay with   10:04:54
6  you.
7      MR. MONACH:  That's fine.
8      THE WITNESS:  So the statement, "The
9  onTouch...method distinguishes between a single input
10  point...and two or more input points," my best   10:05:01
11  recollection is that the onTouchEvent() does a test to
12  make a determination as to whether or not the
13  MotionEvent object variable getPointerCount is equal to
14  1 or greater than 1.  And the getPointerCount, my best
15  recollection is that that is the number of touches that   10:05:25
16  were associated with a particular motion object.
17      So that's the test that is done.
18      The issue that I have is whether or not the
19  method distinguishes between it or just performs these
20  tests.  But nonetheless, those tests, my best   10:05:41
21  recollection, are performed in the onTouchEvent().
22  Which I, again, could confirm if I saw the code.  But
23  I'm pretty sure that's how it operates.
24  BY MR. MONACH:
25      Q.  Going on to the next part, is it factually   10:05:58

Page 44

1  correct that if one input point is detected, it's   10:06:01
2  interpreted as a scroll operation and onTouchEvent()?
3      MS. MAROULIS:  Objection; vague.
4      THE WITNESS:  So the sentence says, "If one
5  input point is detected, the contact is interpreted as a   10:06:19
6  scroll event in an onTouchEvent()."
7      I think I would probably want to look at the
8  code in more detail regarding that particular piece and
9  trace it.  I know that onTouchEvent() pregates these two
10  tests regarding getPointerCount and makes -- and   10:06:41
11  these -- the tests are comprised of deciding whether or
12  not getPointerCount is equal to 1 or greater than 1.
13  The question is whether or not onTouchEvent() then goes
14  further to interpret that as a -- as a scroll event or
15  a -- or a gesture.   10:07:04
16  BY MR. MONACH:
17      Q.  So did --
18      A.  So.
19      Q.  Did you --
20      A.  Yes.  I'm not sure that that happens in   10:07:11
21  onTouchEvent exclusively.  That may spill over multiple
22  other methods that are called from onTouchEvents.  I
23  don't recollect.
24      MS. MAROULIS:  Counsel, please don't interrupt
25  the witness.  You need to let him finish and then the   10:07:23

Page 45

1  court reporter needs to write it down.   10:07:26
2  BY MR. MONACH:
3      Q.  Is it correct that whether it happens
4  exclusively in the onTouchEvent() or in the
5  onTouchEvent() and other places, that in the Galaxy S II   10:07:30
6  code that a distinction is made between the one touch
7  versus more than one touch?
8      MS. MAROULIS:  Objection; vague.  Compound.
9      THE WITNESS:  My best recollection with
10  respect to the Galaxy S II code -- source code is that   10:07:49
11  the test for pointer count, being equal to 1 or being
12  equal to greater than 1 -- or being greater than 1,
13  rather, yields different code paths through the Android
14  code.  Further than that, I'd probably want to -- it
15  does yield different code paths.  There's different   10:08:15
16  methods that are invoked during the -- based upon the
17  value of that count -- of that pointer count.
18  BY MR. MONACH:
19      Q.  Is it correct that if more than one input
20  point is detected, the Galaxy S II code branches to the   10:08:32
21  mScaleDector.onTouchEvent(), as described by Dr. Singh?
22      MS. MAROULIS:  Objection; incomplete
23  hypothetical.
24      THE WITNESS:  I'm sorry.  Would you mind
25  repeating the question?  I kind of lost the thread.   10:08:51

Highly Confidential - Attorneys' Eyes Only

Page 46

1   BY MR. MONACH:                              10:08:53
2       Q.  Is it correct -- you talked before about
3   whether there was one touch point or more than one touch
4   point, but code going to different branches in your
5   previous answer.  Is it correct that if the -- if there   10:09:04
6   are two or more input points, that the branch that's
7   taken in the Galaxy S II code goes to the
8   mScaleDector.onTouchEvent()?
9           MS. MAROULIS:  Same objection.
10          THE WITNESS:  I don't remember the code that   10:09:24
11  well.  I don't remember it.  But whether or not the
12  branch includes the mScaleDector.onTouchEvent() method
13  and invocation if the getPointerCount is greater than 1,
14  I'm just -- I'm not sure.  It might be.
15  BY MR. MONACH:                              10:09:46
16      Q.  Is it true that if you take the path with the
17  greater-than-1 input point, whether it's called
18  "mScaleDector.onTouchEvent()" or something else, that it
19  leads you to a scaling operation in the code?
20          MS. MAROULIS:  Objection; vague.  Incomplete   10:10:05
21  hypothetical.
22          THE WITNESS:  My best recollection of the code
23  now is that -- is that if the pointer count is greater
24  than 1, the code -- the code can then invoke functions
25  under some circumstances -- certain circumstances, which   10:10:28

Page 47

1   go to a -- have to do with scaling.  The code does   10:10:32
2   follow a path that does have to do with scaling.  And
3   there may be other ways in which the code path also is
4   invoked -- invokes scaling methods or scaling-related
5   methods.  But if the pointer count is greater than 1,   10:10:53
6   there are -- it would not -- my best recollection is --
7   is that a scaling -- methods related to scaling might be
8   invoked after that, yes.
9   BY MR. MONACH:
10      Q.  And is it also correct that if the pointer   10:11:12
11  count is 1 in the on-touch event, that the different
12  path that is taken does not include this scaling
13  operation?
14          MS. MAROULIS:  Objection; incomplete
15  hypothetical.                              10:11:27
16          THE WITNESS:  My best recollection, sitting
17  here, is that the onTouchEvent() method contains code
18  that based upon the value of getPointerCount being equal
19  to 1 or being greater than 1 takes alternate code paths.
20          When getPointerCount is equal to 1, I don't   10:11:58
21  remember whether or not a scaling method under some
22  circumstances can or cannot be invoked -- or methods
23  related to scaling operations can or cannot be invoked.
24  I don't -- I don't remember that off the top of my head.
25  BY MR. MONACH:                              10:12:23

Page 48

1       Q.  Is it correct that if you take the path with   10:12:23
2   the 1 touch -- 1 pointer count in the onTouchEvent(),
3   that the code takes a path that ultimately leads to a
4   scrolling operation?
5           MS. MAROULIS:  Objection; vague.  Incomplete   10:12:44
6   hypothetical.
7           THE WITNESS:  My best recollection, sitting
8   here now, is that the -- is that if the pointer count is
9   equal to 1, a method is invoked.  And I don't remember
10  the name of the method.  I know where -- I can see it,   10:13:04
11  but I don't remember the name.  And in the event that
12  the pointer count is greater than 1, that same method
13  ultimately gets invoked.  So I'm not sure whether or not
14  it will always yield panning -- excuse me -- whether the
15  touch -- or the pointer count being equal to 1 will   10:13:28
16  always yield panning or scrolling, and whether the
17  pointer count being greater than 1 will always yield
18  scaling.  Because they both end up calling the same
19  function, although some other intermediate steps are
20  performed -- different intermediate steps are performed   10:13:47
21  before the -- the call to this one method that I can't
22  recollect.
23  BY MR. MONACH:
24      Q.  Can you identify any method that's called by
25  the one single input point path that yields a scaling or   10:14:00

Page 49

1   a rotating operation?                      10:14:08
2           MS. MAROULIS:  If you need to see the code,
3   you can ask for the code.  Unless you can answer without
4   it.
5           THE WITNESS:  I don't -- I don't recollect,   10:14:24
6   sitting here right now, whether or not -- I don't
7   recollect that I've got your question right.  But
8   assuming that your question is that if the -- if the
9   pointer count is equal to 1, is there any case -- if the
10  question is, is there any case under which a -- methods   10:14:39
11  relating to scaling operations might be invoked, I can't
12  answer that question sitting here right now.  I just
13  don't recall.
14  BY MR. MONACH:
15      Q.  You don't recall any?                 10:14:51
16      A.  I don't -- I don't recall either way.
17      Q.  What about rotation?  Is it possible to do a
18  rotation operation if the pointer count in the
19  onTouchEvent() is 1?
20          MS. MAROULIS:  Objection; calls for   10:15:06
21  speculation.  Incomplete hypothetical.
22          Again, if you need any reference material, you
23  can ask for it.
24          THE WITNESS:  My best recollection, sitting
25  here right now, is that if the pointer count is equal to   10:15:17

Highly Confidential - Attorneys' Eyes Only

Page 50

1    1 -- I'm not aware of any -- let me say it this way.    10:15:22
2    I'm unaware of -- sitting here right now, of any methods
3    which are invoked if the pointer count is equal to 1 in
4    the onTouchEvent() method that results in rotation
5    operations. I just don't recollect. I'm unaware of    10:15:49
6    any.
7         MS. MAROULIS: Counsel, we've been going on
8    for about an hour and 15 minutes. Do you want to take a
9    five-minute break?
10        MR. MONACH: Sure.    10:16:00
11        THE VIDEOGRAPHER: The time is 10:16 a.m. And
12   we are off the record. I'm going to mark this as the
13   end of disk 1 in the deposition of Stephen Gray.
14        (Recess taken from 10:16 a.m. to 10:26 a.m.)
15        THE VIDEOGRAPHER: This marks the beginning of    10:27:04
16   disk 2 in the deposition of Stephen Gray. The time is
17   10:27 a.m. And we are back on the record.
18   BY MR. MONACH:
19        Q. Mr. Gray, does Exhibit 1, your invalidity
20   report, reflect all of the opinions you intend to offer    10:27:19
21   or may offer in this case on validity of the -- or
22   invalidity of the '915 and '163 patents?
23        A. My invalidity report was -- my invalidity
24   report reflects -- reflected opinions that I held at the
25   time that I wrote the invalidity report. There may be    10:27:52

Page 51

1    other things that I'm asked to consider or other    10:27:58
2    opinions may emerge as facts emerge or deposition
3    testimony occurs, which could alter those opinions. So
4    I don't know if I'll have any other opinions or not.
5         Q. Are there -- as you sit here today, given the    10:28:17
6    facts you're aware of, any deposition testimony that
7    you're aware of, does Exhibit 1, your invalidity report,
8    reflect all the opinions that you're aware of at this
9    time that you may offer on invalidity of the '915 and
10   '163?    10:28:37
11        A. I believe, sitting here today, I'm unaware of
12   any other opinions that I have that aren't reflected in
13   the -- in my rebuttal report. I might mention that --
14        Q. I'm sorry. I asked you about your opening
15   report.    10:28:58
16        A. I'm sorry. My opening report, my invalidity
17   report.
18        Q. Okay.
19        A. One thing I would mention, though, and I
20   should have mentioned this when you first introduced the    10:29:04
21   exhibit, in reading through my report over the last
22   couple of days, I've identified an error or two that I
23   need to clean up when you get a chance. Doesn't have to
24   be now.
25        Q. Why don't we do that now.    10:29:19

Page 52

1         A. Okay.    10:29:20
2         Q. What errors have you identified in reviewing
3    your invalidity report?
4         A. There is one error having to do with the --
5    with the date of a prior art reference. I can't    10:29:35
6    remember -- I'm not recollecting the date, but it was --
7    it was incorrectly identified as January 20 -- let me
8    see if I can find it.
9         So on paragraph 305, page 86 of my invalidity
10   report, Exhibit 1, the date -- a date -- it says, "On    10:30:54
11   January 20, 2011, the examiner issued a notice of
12   allowability." That date's incorrect. I have to go
13   back to the file. Oh, this is with regard to -- oh,
14   this is with regard to the '163. And the date's wrong.
15   I'm not sure what that date is. I'd have to go back to    10:31:31
16   the -- excuse me. I'd have to go back to the file
17   history to determine what that date should have been.
18   But the first date, the January 20th, 2011 date, is
19   incorrect.
20        Q. Are you aware, as you sit here today, of any    10:31:46
21   other errors in your invalidity report?
22        A. Yes. There's another error in the
23   indefiniteness section pertaining to the '915 patent,
24   paragraph 266 on page 75. There's a sentence -- the
25   paragraph 266 doesn't make sense. Something --    10:32:29

Page 53

1    something happened in the drafting or something. But it    10:32:37
2    doesn't -- it doesn't make sense.
3         The first sentence reads -- well, let's start
4    with the second sentence. The second sentence says,
5    "Each of the independent claims recites 'the event    10:32:48
6    object invokes a...operation.' In my 35 years of
7    systems experience, I have never observed a system where
8    an event object invoked a method."
9         That's not true. That's the inaccuracy. It    10:33:10
10   goes on to say that -- it goes on to make some claim
11   about it.
12        Then there is a reference to a Platzer
13   deposition that -- the sentence leading into that says,
14   "Additionally, one of the inventors of the '915 patent,
15   Mr. Platzer, agreed with me at his deposition." And    10:33:30
16   there's a quote. And it doesn't follow the rest of the
17   paragraph in 266. I saw this over the last couple of
18   days when I was rereading my report. And it -- it is
19   inaccurate.
20        Q. What should it say?    10:33:49
21        A. Well, I don't -- I'm not sure -- I don't
22   have -- I'm not sure exactly what it -- but what I think
23   it should have said is that -- something to the effect
24   that "In my 35 years of experience, I've never observed
25   a system where an event object invoked a method that    10:34:05

Highly Confidential - Attorneys' Eyes Only

Page 54

1    performed scrolling or zooming operations" would be an    10:34:12
2    accurate statement. But the way it's phrased they is
3    just not accurate. And factually I don't think it's
4    correct. So 266 I think is -- needs some revision. And
5    if asked by the attorneys for Samsung, I'll update it.    10:34:31
6        Q.   Are there any other errors in your invalidity
7    report that you're aware of today?
8        A.   Those two errors I discovered over the last
9    couple of days in reviewing the report; and those are
10   the two that I know about now. There may be others, but    10:34:50
11   those are the two that I've come across now.
12       Q.   All right. Let's turn to your
13   non-infringement rebuttal report, Deposition Exhibit 2.
14       As you sit here today, does that report
15   accurately express all of the opinions on    10:35:10
16   non-infringement that you may offer at trial, given what
17   you know today?
18       A.   Given what I know today, sitting here, I
19   believe that Exhibit 2, my rebuttal report regarding
20   non-infringement, contains the opinions of -- that I'm    10:35:40
21   aware of today.
22       Again, as facts emerge and other information
23   comes to light, I do want to make sure I reserve the
24   right to modify it should something occur that
25   changes -- materially changes my opinion about    10:36:02

Page 55

1    something. But sitting here today, I'm unaware of any    10:36:04
2    opinions that I hold that aren't -- that are material
3    that aren't reflected in the rebuttal report.
4        Q.   Are you aware of any errors in your
5    non-infringement rebuttal report?    10:36:19
6        A.   Well, I can't find it right at the moment.
7    But we -- well, actually we've already identified an
8    issue regarding Appendix 1 in Exhibit 1, which I think
9    is an error in the report. I don't know which paragraph
10   it's on. I can't --    10:37:39
11       Q.   It's early in the report. But aside from
12   that -- aside from whether there's a separate exhibit of
13   materials considered for the rebuttal report, is there
14   anything you're aware of today that's inaccurate or an
15   error in your rebuttal report?    10:37:55
16       A.   Sitting here today, I'm -- I did not -- while
17   reading through the reports over the last couple of
18   days, I did not identify any errors -- any other errors
19   that come to mind.
20       MS. MAROULIS: Counsel, to clarify the record,    10:38:10
21   there's no additional appendix or Exhibit 1.
22       MR. MONACH: Okay.
23       MS. MAROULIS: It is -- we're set.
24       MR. MONACH: Thank you.
25       Q.   Mr. Gray, could you turn back to your    10:38:19

Page 56

1    Deposition 6, Exhibit 17, claim charts on the '915    10:38:21
2    prepared by Dr. Singh.
3        A.   Can I just have one -- just 30 seconds here?
4    Let me just make sure of something.
5        Yes, I'm back on -- I'm back -- now have in    10:38:55
6    front of me Exhibit 6 to my deposition.
7        Q.   All right. Could you turn to pages 6 and 7 of
8    Exhibit 17 to the Singh infringement report, please.
9        A.   I'm there.
10       Q.   Looking at the first bullet point on page 6,    10:39:21
11   Dr. Singh says, "On the Galaxy S II, if one input point
12   is detected, WebView's onTouchEvent() will issue a
13   scroll call to doDrag() or doFling()."
14       Do you see that?
15       A.   I see that on page 6, yes.    10:39:43
16       Q.   Is that factually accurate or not?
17       MS. MAROULIS: Objection; vague.
18       THE WITNESS: My -- well, with what I
19   recollect of onTouchEvent(), I think -- I'm not sure
20   that onTouchEvent() calls doDrag() or doFling(). So I    10:40:22
21   just -- I'd have to say that at this point I'm not sure.
22   I probably -- if I looked at the code, I could see
23   there's a code cite here. But I just don't remember if
24   doDrag() -- I mean, I remember doDrag() and doFling(); I
25   just don't remember if they're called from    10:40:44

Page 57

1    onTouchEvent().    10:40:46
2    BY MR. MONACH:
3        Q.   Do you recall that they're called either
4    directly or with perhaps an intermediate step by
5    onTouchEvent() when there's one input point?    10:40:53
6        MS. MAROULIS: Objection; vague. Compound.
7    Incomplete hypothetical.
8        THE WITNESS: So when -- kind of going back
9    just a little bit. When the pointer's -- the getPointer
10   value is equal to 1, there is a processing -- there's    10:41:10
11   processing that continues. And when that value is equal
12   to 1, my best recollection just is I don't -- I don't
13   remember -- I know there's a different processing path
14   when that value is equal to 1. I just don't remember if
15   onTouchEvent() actually does the invocation of doDrag()    10:41:31
16   and doFling(). I just don't recall.
17   BY MR. MONACH:
18       Q.   Do you recall if that branch that the code
19   takes if 1 input point is directed leads to doDrag() or
20   doFling()?    10:41:49
21       MS. MAROULIS: Objection; assumes facts.
22   Vague.
23       THE WITNESS: So what I -- if the value of the
24   pointer count is equal to 1, there is a code path that
25   is taken in onTouchEvent() which may ultimately call    10:42:08

Highly Confidential - Attorneys' Eyes Only

Page 58

1    doDrag() or doFling() based upon conditions that -- a     10:42:17
2    variety of different conditions.  And it may do that
3    by -- I'm not sure whether or not it's called directly
4    an onTouchEvent() or not.  I just don't remember.
5         But there is a code path -- my best     10:42:32
6    recollection is that there is a code path when the
7    pointer is equal to 1 that yields an opportunity to
8    invoke either doDrag() or doFling().
9    BY MR. MONACH:
10        Q.  And if you go to the next set of bullet     10:42:48
11   points, about halfway down the page where it describes
12   calling doFling() for a scroll operation -- do you see
13   that?  Just so our record is clear, the first bullet
14   point under the bold in the middle of page 6 says, "On
15   the Galaxy S II, the onTouchEvent() method calls     10:43:10
16   doFling() for a scroll operation."  And then it goes on
17   to describe overscroller.fling(), mScrollerX,
18   mScrollerY, and so on.  Do you see that?
19        A.  I'm on page 6.  And I do see the sentence that
20   starts with "On the Galaxy S II, the onTouchEvent()     10:43:27
21   method calls doFling()."
22        Q.  Okay.  Are you aware of any factual errors in
23   that first bullet point describing doFling() and
24   overscroller.fling?
25        A.  Again, given my uncertainty regarding whether     10:43:50

Page 59

1    or not onTouchEvent() actually invokes doFling(), given     10:43:55
2    that, my best recollection is that -- is that the
3    doFling() method does invoke overscroller.fling.  So
4    given that as a proviso, that I don't -- I'm not sure --
5    I think -- I think it would be easy to determine.     10:44:20
6         But my best recollection is that doFling() --
7    that the doFling() method does invoke the
8    overscroller.fling method.
9         Q.  And does the overscroller.fling method invoke
10   mScrollerX and mScrollerY, which then results in a --     10:44:36
11   the appearance of a fling on the display?
12        MS. MAROULIS:  Objection; compound.  Vague.
13   Assumes facts.
14        THE WITNESS:  So on page 6, the sentence
15   reads, "Overscroller.fling itself calls mScrollerX and     10:45:02
16   mScrollerY, each of which is responsible for scrolling
17   in one axis."
18        I don't recall, sitting here, if
19   overscroller.fling -- you used the word "invoke."  This
20   exhibit refers to it as a "call."  And I'm wondering if     10:45:29
21   mScrollerX and mScrollerY are data elements.  So we
22   probably have arrived at my -- the limit of my
23   memorization of the code.  I should probably look at the
24   code to determine that.
25   BY MR. MONACH:     10:45:43

Page 60

1         Q.  Is it your recollection that the overscroller     10:45:53
2    results in a scrolling of the information that's
3    displayed?
4         MS. MAROULIS:  Objection; vague.  Calls for
5    speculation.     10:46:12
6    BY MR. MONACH:
7         Q.  I'm not saying it does it by itself, but the
8    overscroller and methods and functions that it calls,
9    directly or indirectly ultimately results in a scroll
10   operation.     10:46:24
11        MS. MAROULIS:  Objection; vague.  Compound.
12   Calls for speculation.
13        THE WITNESS:  The notion that it -- that it --
14   that overscroller -- well, so couple of answers.  Let
15   me -- first of all, under some circumstances,     10:46:38
16   overscroller -- the overscroller.fling method can set
17   the conditions for which -- under which an application
18   might -- might perform some scroll operation.  But at
19   the end of the day, the -- that -- the actual operation
20   that is performed is kind of application-dependent.  And     10:47:05
21   so overscroller.fling in all of its associated methods
22   and code paths that it takes may yield conditions under
23   which an application could perform scroll operation.
24   BY MR. MONACH:
25        Q.  Is it correct to say that overscroller creates     10:47:30

Page 61

1    a necessary but not sufficient condition for scrolling     10:47:36
2    in the Galaxy S II?  For example, if the application
3    forbids scrolling, it would -- might trump that.  But is
4    my statement accurate?
5         MS. MAROULIS:  Objection; vague.  Calls for     10:47:50
6    legal conclusion.
7         THE WITNESS:  If you would read the first part
8    of your question, I'll try to answer it.
9    BY MR. MONACH:
10        Q.  Yeah.  Is it correct to say that the     10:47:58
11   overscroller creates a necessary but what may not be a
12   sufficient condition for scrolling?  You need it to
13   scroll, but the application -- particular application
14   may trump that and forbid scrolling?
15        MS. MAROULIS:  Objection; vague.  Calls for     10:48:18
16   legal conclusion.  Compound.
17        THE WITNESS:  So my understanding is that --
18   my recollection is that overscroller.fling sets up a
19   condition -- not exclusively -- but sets up a condition
20   under which an event or a -- an action may be understood     10:48:41
21   by an application that could be interpreted or could be
22   allowed as a fling or might be excluded by that
23   application as a fling.
24   BY MR. MONACH:
25        Q.  Isn't the code we're discussing, overscroller,     10:48:55

Highly Confidential - Attorneys' Eyes Only

Page 62

1    in an application; namely, in the Web browser?        10:48:57
2          MS. MAROULIS:  Objection; vague.
3          THE WITNESS:  I believe it is in WebView.
4    BY MR. MONACH:
5        Q.  Which is an application -- part of the browser    10:49:07
6    application?
7        A.  It's -- it's a -- it's code that enables the
8    use of the browser.
9        Q.  So in the case of the Web browser in the
10   Samsung Galaxy S II, overscroller enables scrolling,    10:49:25
11   right?
12         MS. MAROULIS:  Objection; vague.
13         THE WITNESS:  Well, it depends on how -- it
14   depends on how the application -- or how the mobile app
15   is actually intending to use the browser functionality   10:49:44
16   that is supported in WebView.
17         But to answer your question there -- as I
18   said, there are -- this sets up the conditions under
19   which an application could perform the scroll.
20   BY MR. MONACH:                                    10:50:03
21       Q.  Is it correct that overscroller does not set
22   the conditions for scaling?
23         MR. MONACH:  Objection; vague.
24         THE WITNESS:  Sitting here now, I don't
25   recollect whether overscroller.fling has -- and its    10:50:28

Page 63

1    associated methods -- ever -- has any -- has any    10:50:41
2    relationship to scaling.  I just -- that code path is
3    not -- that's one I'd have to trace to see if there's
4    ever any condition under which the overscroller.fling
5    method invokes anything to do -- any other methods that    10:51:02
6    may have to do with scrolling.  That's too broad a
7    question for me.
8    BY MR. MONACH:
9        Q.  Could you look at the bullet point that starts
10   at the bottom of page 8 of Dr. Singh's Exhibit 17 and    10:51:14
11   then continues on to page 9.  It starts, "On the
12   Galaxy S II" --
13       A.  Oh, I'm sorry.  I was reading something else.
14   I'm sorry.  Go ahead.  I lost track.  Please tell me --
15   where do you want me to be?                        10:51:32
16       Q.  Bottom of page 8 --
17       A.  Yes.
18       Q.  -- of Dr. Singh's Exhibit 17 claim chart.
19       A.  I'm there.
20       Q.  He says, "On the Galaxy S II, the            10:51:42
21   onTouchEvent() method called the 'mScaleDector
22   onTouchEvent() method' to perform the scaling zoom
23   operation using the MotionEvent object information which
24   includes the two or more input points touching the
25   screen."                                          10:52:02

Page 64

1          Do you see that?                          10:52:04
2        A.  I do.
3        Q.  Is that factually accurate?
4          MS. MAROULIS:  Objection; vague.
5          THE WITNESS:  So the mScaleDector        10:52:38
6    onTouchEvent() invoked by the WebView on-- -- by the
7    WebView onTouchEvent() may, under some circumstances,
8    lead to other method invocations which may cause some
9    applications to perform, under certain circumstances,
10   scaling operations.  And it can be done -- this method    10:53:26
11   invocation can be -- that method invocation leading to
12   the zooming operation can be performed using two or more
13   touch points touching the screen.
14   BY MR. MONACH:
15       Q.  I'd like for you to just read to yourself the    10:53:57
16   portion of Dr. Singh's claim chart on page 9 of his
17   Exhibit 17 beginning with the "onTouchEvent() calls
18   setContext," and then ending with the sentence talking
19   about scaling "the WebView and all of its child views."
20         Do you see that section?                    10:54:21
21       A.  Yes, I do.
22       Q.  And my question for you is whether you -- as
23   you're sitting here today, can you identify anything in
24   that portion of Dr. Singh's exhibit that is factually
25   incorrect?                                        10:54:40

Page 65

1          MS. MAROULIS:  Objection; vague.  Calls for    10:54:41
2    speculation.
3          THE WITNESS:  The passage that you've asked me
4    to look at, starting with the "As" -- yes.  Starting
5    with the, "As the user moves his fingers relative to one    10:55:47
6    another," there are several method invocations that are
7    identified in that passage.  And I think I probably
8    should look at the actual code to see -- to confirm that
9    the operations are performed in this manner.  But your
10   question is, sitting here, without having looked at the    10:56:17
11   code, is there anything that I know of that would lead
12   me to believe that there is an error?  And I just -- I
13   can't make the determination, sitting here today, with
14   this particular set of --
15   BY MR. MONACH:                                    10:56:31
16       Q.  Didn't you testify earlier today that you did
17   review all of the code that Dr. Singh cited in this
18   claim chart?
19       A.  I did -- I -- well, I think what my testimony
20   was that I -- that I reviewed -- with some possible    10:56:44
21   exceptions that I reviewed --
22       Q.  All or virtually all?
23         MS. MAROULIS:  Objection; misstates testimony.
24         Please don't cut the witness off.
25         THE WITNESS:  I think the word that I used was    10:56:53

Highly Confidential - Attorneys' Eyes Only

Page 66

1  the word "preponderance" of the code that I reviewed --   10:56:54
2  that I did review that was in this exhibit. And -- but
3  I didn't -- it was not meant to imply that I memorized
4  it. So it would probably be better under -- for this
5  set of calls, this set of functions for me -- or this   10:57:13
6  set of functions and operations, for me to actually look
7  at the code to see if the method invocation is as he
8  describes here.
9  BY MR. MONACH:
10  Q.  Is it fair to say that if you didn't call out   10:57:27
11  an error in your report concerning this discussion of
12  the Galaxy S II code operation, that you did not note
13  either any errors or any material errors in Dr. Singh's
14  analysis?
15  MS. MAROULIS:  Objection; assumes facts.   10:57:47
16  Incomplete hypothetical.
17  THE WITNESS:  I think what's fair to say is
18  that -- is that I didn't identify in my report any
19  material errors in Dr. Singh's analysis. Whether or not
20  I had -- I think that's as far as I can actually go is   10:58:08
21  that I didn't, that I recollect, identify any method
22  invocation or code path errors regarding this section in
23  my report. I don't remember doing that. That's what I
24  can say.
25  BY MR. MONACH:   10:58:30

Page 67

1  Q.  Did you identify, as far as you can recall,   10:58:32
2  any method invocation or code path errors that Dr. Singh
3  had made in your rebuttal report?
4  MS. MAROULIS:  Objection; the document speaks
5  for itself.   10:58:45
6  THE WITNESS:  Without looking through my
7  report, it would be hard for me to definitively state
8  whether or not I mentioned any code path errors or not.
9  So I could do that. But sitting here now, I don't -- I
10  don't recollect identifying any in my report. But I   10:59:20
11  can't say definitively.
12  BY MR. MONACH:
13  Q.  All right. How many hours did you spend
14  working on your invalidity report?
15  A.  Oh, invalidity report. Sorry. Reset.   10:59:43
16  Q.  Exhibit 1.
17  A.  Yes.
18  I don't recollect -- I don't remember how many
19  hours that my time log would reflect that I worked on
20  the matter generally. So I guess the answer is I really   11:00:06
21  can't -- I don't know how many hours I worked on the
22  invalidity report with any -- with any degree of
23  certainty. I don't remember the number. You know --
24  no, I don't.
25  Q.  Approximately how many hours have you worked   11:00:34

Page 68

1  from retention in this matter up to now?   11:00:36
2  MS. MAROULIS:  Objection; calls for
3  speculation.
4  THE WITNESS:  I knew that was coming. So I
5  don't know -- I don't know how many hours I've actually   11:01:01
6  worked on this matter since retention. Let's see. I
7  would say that overall it's probably someplace around
8  400 hours maybe. But that's -- that's a 50 percent --
9  no, not 50 percent. 20 percent error and -- you know,
10  chance there.   11:01:44
11  BY MR. MONACH:
12  Q.  Okay. 400, plus or minus 80 hours, is your
13  best estimate?
14  A.  That's my best estimate, sitting here, yeah.
15  Q.  And what hourly rate do you charge?   11:01:53
16  A.  My hourly rate on this matter is 3- -- let me
17  see -- $370 per hour.
18  Q.  In terms of the proportion of time you spent
19  on invalidity versus non-infringement in this case,
20  what's your best estimate?   11:02:23
21  MS. MAROULIS:  Objection; calls for
22  speculation.
23  THE WITNESS:  I think I would probably
24  estimate it at 60/40. 60 percent of my -- well, so let
25  me be a little more precise. Other than leading up to   11:02:48

Page 69

1  the last -- the last few days leading up to my   11:02:51
2  deposition, so up to the preparation of the reports, I
3  would say the division is probably 60 percent on
4  invalidity and 40 percent on the non-infringement.
5  BY MR. MONACH:   11:03:04
6  Q.  Who wrote the invalidity report?
7  A.  I wrote -- I wrote -- it's my report. I wrote
8  the report.
9  Q.  Did you write all of it?
10  A.  It's all my report. The invalidity report --   11:03:17
11  certain textual information was offered by attorneys
12  regarding, say, for example, legal understandings, which
13  I edited and put into my report. I
14  requested comment on the report at various -- at various
15  times during the report. So that was also offered from   11:03:48
16  the attorneys. But nonetheless, I edited and put the
17  information in the report myself. Or if not myself, on
18  the keyboard sitting in the same room with the attorneys
19  as that -- as that information was edited and placed
20  into the report.   11:04:08
21  Q.  Did you follow that same process on the
22  non-infringement report?
23  A.  Yes. The same process -- same basic process
24  of initially creating the report and then augmenting it
25  over time completing the report with the attorneys   11:04:22

Highly Confidential - Attorneys' Eyes Only

Page 70

```
1   was -- is the same process.            11:04:27
2        MR. MONACH:  Okay.  Let's have marked as the
3   next exhibit, I believe it's 7; is that right?
4        THE VIDEOGRAPHER:  Correct.
5        MR. MONACH:  A document entitled "Samsung's  11:04:43
6   Patent Local Rule 3-3 and 3-4 disclosures."
7            (Whereupon Exhibit 7 marked
8             for identification.)
9   BY MR. MONACH:
10       Q.  Mr. Gray, I'm going to focus you first on the  11:05:08
11  section relating to the '915 patent which starts at page
12  24 of Exhibit 7.  But my first -- my question to you is
13  going to be whether you've seen this document or any
14  portions of it before?
15       A.  So I've thumbed through this report, Exhibit 7  11:06:17
16  to my deposition, pretty rapidly.  And I don't ever
17  recollect having seen the cover page on this report.
18  And having thumbed through it, I don't remember seeing
19  any of the data that's in here.  I don't remember ever
20  seeing any of that data.            11:06:36
21       Q.  Okay.  Let me direct you specifically to
22  page 28 of Deposition Exhibit 7 under "Anticipation."
23  Do you have that page, sir?
24       A.  Yes, I got it.
25       Q.  And --                       11:06:57
```

Page 71

```
1        A.  I'm currently on page 28, number 4,   11:06:57
2   "Anticipation."
3        Q.  All right.  And do you see where this document
4   says, "Some or all of the asserted claims of the '915
5   patent are invalid as anticipated under 35 U.S.C. 102 in  11:07:09
6   view of each of the prior art references identified
7   above and in the claim charts included in Exhibit J,
8   which identifies specific examples of where each
9   limitation of the asserted claim is found in the prior
10  art references"?                     11:07:27
11       Do you see that?
12       A.  I -- yes, I read the sentence along with you.
13       MS. MAROULIS:  Let the record reflect that we
14  do not have Exhibit J before us.
15       MR. MONACH:  Let the record reflect that you  11:07:38
16  are about to.
17  BY MR. MONACH:
18       Q.  So you don't recall seeing previously this
19  reference to an Exhibit J; is that right?
20       A.  That's correct.  I don't remember seeing  11:07:50
21  any -- seeing this sentence in the past with respect to
22  Exhibit J.
23       Q.  Okay.  Well, there are various attachments
24  called J1 through J6 to Exhibit J.  And I want to start
25  with Exhibit J1, "Samsung's Invalidity Claim Charts for  11:08:08
```

Page 72

```
1   MERL DiamondTouch Table System."         11:08:17
2        So let's mark that as deposition Exhibit 8.
3            (Whereupon Exhibit 8 marked
4             for identification.)
5   BY MR. MONACH:                        11:08:34
6        Q.  Just looking at the first page -- and feel
7   free to look at anything more if you need to -- have you
8   seen deposition Exhibit 8, Exhibit J1 to Samsung's
9   invalidity contentions before today?
10       A.  I, sitting here today, don't recollect having  11:09:54
11  seen Exhibit J1, which is 8 to my deposition prior to
12  today.
13       Q.  Do you recognize some of the numbered items
14  listed in the materials cited as being exhibits that you
15  relied on in your invalidity report?     11:10:20
16       MS. MAROULIS:  Objection; vague.
17       THE WITNESS:  Reviewing some of the materials
18  cited on the front -- first page of Exhibit 8 to my
19  deposition, at least some of those materials cited I
20  believe I relied upon in the development of my  11:11:02
21  invalidity report.
22  BY MR. MONACH:
23       Q.  Okay.  Which ones?
24       MS. MAROULIS:  If you need to reference your
25  report, you may do so, if that helps.    11:11:17
```

Page 73

```
1        THE WITNESS:  So that actually brings up a  11:11:22
2   question.  Are you talking about materials relied upon
3   or materials -- you're just talking about the general
4   case of materials relied upon; is that correct?
5   BY MR. MONACH:                        11:11:36
6        Q.  Materials that -- of these eight numbered
7   items in Exhibit J1 of Samsung's invalidity contentions,
8   Deposition Exhibit 8.
9        Did you rely on -- not just review and
10  discard, but did you specifically rely on any of these  11:11:56
11  in concluding that the '915 patent is invalid?
12       A.  So I believe that my Exhibit 3 to my
13  invalidity report also identifies a list of materials
14  cited on the first page.  And I believe that there is --
15  that at least some of these documents are also cited on  11:12:33
16  the first page of my Exhibit 3 to the invalidity report.
17  So I think the answer to your question is at least some
18  of those, yes.
19       Q.  And can you identify the overlap, which ones
20  are both in J1 and your Exhibit 3 from memory?  Or would  11:12:49
21  you need to review your Exhibit 3?
22       A.  Well, in order to be definitive, I think I
23  should probably look at Exhibit 3.  I could guess, but I
24  don't think that's what you want me to do.
25       MS. MAROULIS:  Please don't.          11:13:03
```

Highly Confidential - Attorneys' Eyes Only

Page 74

1      MR. MONACH: Let's mark as deposition        11:13:06
2  Exhibit 9, Appendix 3 from your invalidity report.
3              (Whereupon Exhibit 9 marked
4               for identification.)
5  BY MR. MONACH:                                  11:13:23
6      Q. Mr. Gray, do you recognize what we've marked
7  as Deposition Exhibit 9 as Appendix 3 to your invalidity
8  report?
9      A. I have briefly reviewed Exhibit 9 --
10 Deposition Exhibit 9 and I believe it to be Appendix 3   11:14:12
11 to my invalidity report.
12     Q. And does Appendix 3 to your invalidity report
13 list all of the publications, videos, or machines that
14 you are relying on for your opinion that the '915 patent
15 is anticipated by the MERL DiamondTouch system?         11:14:42
16     A. I believe these -- the -- on page 1 of
17 Exhibit -- or, Appendix 3, rather, to my invalidity
18 report identifies the materials that are cited in the
19 claim charts that are the -- comprise most of the
20 document. The question as to whether or not I           11:15:16
21 considered anything else -- I know you mentioned before
22 you don't mean consider and throw away, but whether or
23 not there was anything else that informed me regarding
24 my report, I wouldn't go that far. But I would say that
25 these are the materials that I believe are cited in this  11:15:32

Page 75

1  appendix.                                       11:15:36
2      So I don't know. Does that answer your
3  question?
4      Q. Certainly it's close enough for now.
5      A. All right.                               11:15:49
6      Q. So let's do a comparison here of the materials
7  cited in Samsung's invalidity contention and the
8  materials you cite in Appendix 3 of your report. Your
9  citation number 1, Dietz and Leigh, "DiamondTouch: A
10 Multi-Touch User [sic] Technology" is in both charts,    11:16:14
11 right?
12     MS. MAROULIS: Objection; documents speak for
13 themselves. Misleading.
14 BY MR. MONACH:
15     Q. Number 2 on Exhibit J1 and number 1 on          11:16:24
16 Appendix 3?
17     A. Yes. Number 2 on Exhibit J1 is the same --
18 yes, is the same as number 1 on my Appendix 3.
19     Q. Okay. And number 3 in Exhibit J1 is the same
20 as your number 2 in your Appendix 3, right?             11:16:46
21     MS. MAROULIS: Objection; documents speak for
22 themselves.
23     THE WITNESS: "DiamondTouch SDK: Support for
24 Multi-User, Multi-Touch Applications, TR48," yes --
25 "TR2002-48" -- is on the materials cited in my appendix,  11:17:05

Page 76

1  as well as on the materials cited in Exhibit 8 to my     11:17:12
2  deposition.
3  BY MR. MONACH:
4      Q. Okay. Number 3 on your appendix, Marcus
5  Hancock, is not in Exhibit J1, correct?                 11:17:24
6      MS. MAROULIS: Objection; documents speak for
7  themselves. Misleading.
8      THE WITNESS: Exhibit -- or in the materials
9  cited list in my Appendix 3, there -- the third entry in
10 my materials cited in appendix 3, a paper by Hancock,    11:17:44
11 does not appear to be cited in Exhibit 8 to my
12 deposition on page 1 under the title of "Materials
13 cited."
14 BY MR. MONACH:
15     Q. All right. And number 4 cited on the            11:18:08
16 invalidity contentions and Appendix 3 of your report is
17 the same document, "MERL Technical Report, TR2005-130,"
18 right?
19     A. Exhibit 3, "Materials cited," number 4, is the
20 same as Exhibit J1 "Materials cited" number 4, an        11:18:28
21 article of Ed Tse.
22     Q. And number 5 on the invalidity contention J1
23 and your Appendix 3 are the same, right?
24     MS. MAROULIS: Objection; documents speak for
25 themselves.                                     11:18:45

Page 77

1      THE WITNESS: Yes, materials cited in my           11:18:49
2  Appendix 3, number 5, appears to be the same as the
3  citation in J1 number 5 in the materials cited.
4  BY MR. MONACH:
5      Q. Citations 6 and 7 in your Appendix 3 are not    11:19:02
6  in Exhibit J1, correct?
7      MS. MAROULIS: Objection; documents speak for
8  themselves. Misleading.
9      THE WITNESS: The materials cited in Appendix
10 3, items 6 and 7, do not appear to be listed under       11:19:18
11 materials cited in Exhibit J1.
12 BY MR. MONACH:
13     Q. Is the video cited number 8 in Exhibit 3 as
14 the MERL video the same as the video cited in number 6
15 in Exhibit J1?                                  11:19:45
16     MS. MAROULIS: Objection; documents speak for
17 themselves.
18     THE WITNESS: So on my Exhibit 3, the
19 materials cited, the number 8 appears to be the same as
20 the materials cited in Exhibit J1 number 6.             11:20:03
21 BY MR. MONACH:
22     Q. All right. Is video number 9 in Exhibit 3
23 mentioned -- the Mandelbrot video mentioned in
24 Exhibit J1?
25     MS. MAROULIS: Objection; documents speak for       11:20:28

Highly Confidential - Attorneys' Eyes Only

Page 78

1 themselves.                              11:20:29
2     THE WITNESS: Exhibit -- or in "MATERIALS
3 Cited," number 9 in Exhibit 3 to my invalidity report is
4 not listed in the materials cited on Exhibit 8, J1 --
5 Exhibit 8 to my deposition under "Materials cited" on    11:21:02
6 J1.
7 BY MR. MONACH:
8     Q. Item 10, Edward Tse video, is number 10 in
9 your Appendix 3 is the same as item 7 in Exhibit J1,
10 right?                                   11:21:20
11    A. Exhibit 10 -- under "Materials cited" in
12 Exhibit 3 to my invalidity report, number 10 appears to
13 be the same citation as under -- in -- on J1 number 7.
14    Q. All right. And then item 11 in your Appendix
15 3 of your invalidity report, "DiamondTouch II 88cm    11:21:50
16 Engineering Prototype," that's the same thing cited as
17 number 8 in the invalidity contentions, right?
18    A. Number 11 in Appendix 3 to my invalidity
19 report is the same -- in the "Materials cited" is same
20 as the entry number 8 in the "Materials cited" on    11:22:22
21 Exhibit J1 which is Exhibit 8 to my deposition.
22    Q. All right. And item 12 in Appendix 3 to your
23 deposition, the "MERL Mandelbrot source code," that's
24 not listed in Exhibit J1, is it?
25     MS. MAROULIS: Objection; document speaks for    11:22:38

Page 79

1 itself. Misleading.                      11:22:41
2     THE WITNESS: I don't see the "MERL Mandelbrot
3 source code" identified as item 12 under the "Materials
4 cited" in my Appendix -- in the Appendix 3 to my
5 invalidity report identified in Exhibit J1 under the    11:23:03
6 "Materials cited."
7 BY MR. MONACH:
8     Q. And item 13, the Clifton Forlines deposition
9 is in Appendix 3 to your report but not in the
10 invalidity contentions, correct?        11:23:17
11    MS. MAROULIS: Objection; the deposition was
12 taken after the documents. That's when Exhibit 8 was
13 created.
14    THE WITNESS: So I want to make -- say two
15 things. First of all, number 13 under "Materials cited"    11:23:32
16 in Exhibit 3 to my invalidity report is not listed in
17 the materials cited on -- J1, Exhibit 8 to my
18 deposition.
19    The other thing I wanted to mention, though,
20 it's -- my statements only pertain to mapping between    11:23:48
21 the two materials cited. I haven't gone through the
22 rest of the materials to see if there's something else
23 in here that pops up that maybe didn't make it to the
24 materials cited. I'm not making -- you used a little
25 different question there. You made it a little broader.    11:24:07

Page 80

1 Rather than just mapping the materials cited to    11:24:10
2 materials cited; you broadened the question a little bit
3 to say that it isn't in J1. I don't know that these
4 aren't in J1; I just know in the materials cited,
5 they're not. They don't map. That's all I meant.    11:24:20
6 BY MR. MONACH:
7     Q. All right. And is it correct that of the 13
8 items under "Materials cited" in your Appendix 3, the
9 only one that was created after the spring of 2011 is
10 the Clifton Forlines deposition?        11:24:38
11    MS. MAROULIS: Objection; calls for
12 speculation.
13    THE WITNESS: I believe your question is that
14 of the 13 items identified in my -- in Exhibit 3 to my
15 invalidity report, is the only one that was made -- the    11:25:14
16 only one that was in existence after sometime in 2011,
17 is the Clifton Forlines deposition. I just note that
18 there are no dates on the materials cited, so I really
19 can't answer that question. I'm not sure when those --
20 I don't -- I was looking for dates and -- oh, well,    11:25:40
21 there's something in 2006, 2002. There are some dates
22 in here. Some dates can be deduced -- I'm not -- I
23 don't know how to answer the question. I can't answer
24 it definitively. I can see that some items in the
25 materials cited to Appendix 3 do have text associated    11:26:00

Page 81

1 with them, which would lead me to believe that they were    11:26:05
2 created prior to 2011. But I really don't have the
3 identifiable dates on them.
4 BY MR. MONACH:
5     Q. All right. You may want to make a note of    11:26:16
6 these or -- as I go through -- which in particular items
7 on Appendix 3. But I'm going to ask you whether any of
8 the -- whether certain of the materials listed in
9 Appendix 3 standing alone, in your view, disclose all of
10 the claim limitations of any of the claims of the '915    11:26:36
11 patent.
12    So let's start with -- I'll ask you, first,
13 all of them together if you can see if you can answer
14 that question.
15    Is -- I want to ask you, do you -- is it your    11:26:57
16 opinion that any of the following materials cited
17 standing alone disclose each and every limitation of any
18 claim in the '915 patent, "Materials cited," number 1,
19 Dietz and Leigh?
20    MS. MAROULIS: Objection; vague and confusing.    11:27:19
21    THE WITNESS: I believe the question is
22 does -- does Dietz and Leigh -- number 1 in the
23 "Materials cited" on my Appendix 3 -- does it disclose
24 each and every limitation of the -- of any asserted
25 claim? Is that -- is that the question?    11:27:44

Highly Confidential - Attorneys' Eyes Only

Page 82

BY MR. MONACH:                                          11:27:45
2    Q.  Yes, sir.
3    A.  Okay.  I just want to make sure I had the
4  question right.
5       Sitting here today, I don't -- I really don't   11:29:33
6  know whether the article -- the MERL TR2003-125 report
7  to Dietz and Leigh, standing alone, I just don't know if
8  it would -- if it would disclose all of the -- each and
9  every limitation of any specific claim that has been
10  asserted in this matter.  I just -- I don't know.  I'd   11:30:01
11  have to go back and kind of do a mapping to make a
12  determination.  And I don't know.
13    Q.  What about for item number 2, Alan Esenther,
14  Forlines, et al., "MERL Technical report TR2002-48"?
15  That doesn't disclose each and every limitation of any   11:30:24
16  asserted claim of the '915, does it?
17       MS. MAROULIS:  Objection; vague and confusing.
18       THE WITNESS:  So sitting here, I'm unable to
19  answer the question as to whether or not number 2 in
20  under "Materials cited" in Appendix 3 to my invalidity   11:32:04
21  report, which is TR2002-48, would disclose each and
22  every limitation of any of the asserted claims.  I'm
23  just unable to answer the question without -- without
24  trying to actually map what was disclosed in TR2002-48
25  and comparing it to the claims of -- that had been       11:32:30

Page 83

asserted.  I just don't know how to answer that.  I      11:32:33
2  don't have an answer to that.
3       MS. MAROULIS:  Counsel, we've been going over
4  an hour.  Should we take a five-minute break?
5       MR. MONACH:  Okay.                               11:32:45
6       THE VIDEOGRAPHER:  The time is 11:32 a.m.  And
7  we're off the record.
8       (Recess taken from 11:32 a.m. to 11:43 a.m.)
9       THE VIDEOGRAPHER:  The time is 11:43 a.m.  And
10  we're back on the record.                              11:43:07
11       (Whereupon Exhibit 10 marked
12        for identification.)
13  BY MR. MONACH:
14    Q.  Mr. Gray, we've had marked as deposition
15  Exhibit 10, Exhibit Q from your invalidity report       11:43:13
16  document entitled "DiamondTouch:  A Multi-User Touch
17  Technology," by Dietz and Leigh, which I believe is the
18  same as item number 1 in the materials cited in your
19  Appendix 3.  Do you see that?
20    A.  I do.  I see that the document you handed me,    11:43:39
21  yes, is TR2003-125, which, by the way, was October of
22  2003, those dates we were referring to.
23    Q.  All right.  If you look at the second page of
24  this article, there's a figure showing and how the
25  DiamondTouch table works; and there's some text on that  11:43:58

Page 84

subject.  Do you see that?                               11:44:03
2    A.  We're on page 2, figure 2?
3    Q.  Yes, sir.
4    A.  I see page 2, figure 2 in this document, yes,
5  I do.                                                   11:44:13
6    Q.  And the way that the DiamondTouch system
7  worked, that it had a table with antennas on the table
8  and then an insulating layer on top.  And then
9  individual users sat in conductive chairs -- metal
10  conductive chairs that were receivers, and then there   11:44:35
11  the antenna picked up their touches, transmitted those
12  to a computer, and then a projector above the table
13  shone down to create an image on the table?
14       MS. MAROULIS:  Objection; compound.  Vague.
15       THE WITNESS:  I believe that you're asking me:   11:45:05
16  Is that primarily the way that this -- the DiamondTouch
17  system operated?  Right.  Let me say that the system is
18  comprised of a touch-sensitive table.  It has antennas.
19  The signals are sent through the users who are touching
20  the table through their chairs to a CPU that is          11:45:33
21  controlling other components of the system, including
22  the protector for displaying of the information, yes.
23  BY MR. MONACH:
24    Q.  And this document doesn't say anything about
25  panning or scaling or scrolling -- I'm sorry --          11:46:02

Page 85

scrolling or scaling, does it?                           11:46:07
2       MS. MAROULIS:  Objection; calls for
3  speculation.
4       THE WITNESS:  I've briefly reviewed the
5  document, Exhibit Q to my invalidity report TR2003-125.  11:49:01
6  And although there are user interface elements discussed
7  in the report, I with a quick view here do not identify
8  any that are related to panning or zooming.
9  BY MR. MONACH:
10    Q.  You didn't see anything in your Exhibit Q        11:49:30
11  discussing distinguishing between one-finger or
12  multi-finger inputs, did you?
13       MS. MAROULIS:  Objection; calls for
14  speculation.
15       Feel free to review as much of the document as    11:49:46
16  you need.
17  BY MR. MONACH:
18    Q.  Well, if you're going to review it again, I
19  want you to confirm for me, if you would, that there's
20  nothing about event objects and nothing about           11:49:55
21  distinguishing between one- and two-finger inputs in
22  your Exhibit Q.
23       MS. MAROULIS:  Objection; compound.
24       THE WITNESS:  So there -- well -- okay.  I got
25  it.                                                     11:50:15

Highly Confidential - Attorneys' Eyes Only

Page 86

1    So on page -- well, pages are hard to come by.    11:51:13
2    So on page 4 -- although the pages aren't
3 numbered, let me identify the page.  It is the page that
4 in the upper left-hand column shows figure 5, which is,
5 I think, physically the fourth page of the -- of the    11:51:53
6 actual document.  The following paragraph says, "This
7 leads to an interesting use of the device.  A single
8 user might touch two points to define a bounding box.
9 This is a very natural way of selecting a rectangular
10 area."    11:52:17
11 BY MR. MONACH:
12    Q.  My question --
13    A.  "In practice" --
14    Q.  I'm sorry.  I thought you were finished.
15    A.  I was determining whether to read this.    11:52:35
16    "In practice, we have found two modes of
17 operation to be useful:  When the coupled area is small,
18 assume that the user is indicating a point; when it
19 spans a larger area, assume that the user is trying to
20 specify a bounding box."    11:52:51
21    I believe that's -- that specifically
22 addresses the question of single- or multi-point
23 touches.
24    Q.  Where do you see anything about single-point
25 in what you just read?    11:53:09

Page 87

1    MS. MAROULIS:  Objection; asked and answered.    11:53:11
2    THE WITNESS:  The sentence that says -- oh,
3 single point.  Well, it says when the -- "This is a very
4 natural way of selecting a rectangular area.  In
5 practice, we have found two modes of operation to be    11:53:25
6 useful.  When the coupled area is small, assume the" --
7 "assume that the user is indicating a point.  When it
8 spans a larger area, assume that the user is trying to
9 specify a bounding box."
10    So that -- when it's a small area that the    11:53:44
11 antenna has picked up, assume that it's a point, a
12 single point.  But if the user touches two points to
13 define a bounding box, that's over a larger area.
14 That's what I was referring to.
15 BY MR. MONACH:    11:54:01
16    Q.  Did you find anything else -- anything in here
17 that says the system distinguishes between touch with
18 one point versus two points or anything that says
19 that there is object-oriented programming in this
20 device?    11:54:19
21    A.  So with respect to the first part of your
22 question, I think we just talked about the one-point,
23 two-point idea.  But let me go back to the -- to the
24 second part of your question which has to do with
25 object-oriented programming.    11:54:42

Page 88

1    That's what I was looking for.    11:56:22
2    So -- so in -- with respect -- here we have
3 this problem again.  The page --
4    MS. MAROULIS:  You can just refer to pages
5 from the front.    11:56:39
6    THE WITNESS:  Yeah, that's what I will do.
7    So on page 7 -- in the second column of page
8 7, halfway down, "The concept of virtual personal work
9 areas can be expended" -- "extended to special
10 privileged objects.  A privileged object is an icon that    11:57:03
11 allows only certain classes of users to perform certain
12 operations on that object.  For example, a plumber and
13 an electrician may be viewing the same house plan, but
14 only the plumber can modify the pipes and only the
15 electrician can modify the wiring."    11:57:25
16    With respect to -- this is a -- kind of a
17 typical manner in which object-oriented systems would be
18 described extending to privileged objects.  Object is an
19 icon that only allows certain classes of users to
20 perform.  That's language generally associated with    11:57:46
21 object-oriented programming.
22    That's the reference that I find in
23 the document TR2003-125 that alludes to object-oriented
24 programming.
25 BY MR. MONACH:    11:58:08

Page 89

1    Q.  Could you allow a user sitting in chair A and    11:58:09
2 a user sitting in chair B access only to certain
3 physical objects on the tabletop without using
4 object-oriented programming?
5    MS. MAROULIS:  Objection; incomplete    11:58:22
6 hypothetical.
7    THE WITNESS:  The question is if -- I think
8 that the question is:  Could a system like that be
9 implemented in a manner that didn't employ
10 object-oriented programming?  Or said another way, would    11:58:48
11 the -- would object-oriented programming be the only way
12 in which a system like this could be implemented?
13    You know, I'm not -- I'm not aware of anything
14 that -- that would prohibit this system from being
15 programmed and without using object-oriented    11:59:10
16 programming.  So, I mean, object-oriented programming
17 would be an appropriate way.  Object-oriented
18 programming using -- can be performed using
19 non-object-oriented programming languages.
20    So I'm really not sure how to answer your    11:59:29
21 question other than to say that object-oriented methods
22 would be the way in which this would be this -- a system
23 like this would be -- would lend itself to being
24 developed.
25 BY MR. MONACH:    11:59:46

Highly Confidential - Attorneys' Eyes Only

Page 90

1    Q.  Now that you've had the opportunity to review   11:59:47
2    this Exhibit Q a couple of times in response to
3    questions, would you agree that it does not disclose all
4    of the limitations of any of the asserted claims of the
5    '915 patent?                              12:00:01
6        A.  I will answer your question.  There was
7    another question that I don't think I ever answered.
8    The question had to do with an event object.  Is there
9    anything in here that discloses an event object?  So
10   the -- the manner in which the signals are conveyed from   12:00:30
11   the table to the CPU of the system would generate a --
12   would generate an event object inherently.
13       Q.  Why do you say that?
14       A.  It's the manner in which those -- that data
15   would be conveyed into the system in the form of an   12:01:01
16   event object from the touches on the antennas, would be
17   my -- my opinion.
18       Q.  What's that opinion based on?
19       A.  Just a reading of this -- my opinion regarding
20   the use of an event object to convey the information   12:01:20
21   from the user to the CPU of the system is just based
22   upon my reading of this document.
23       Q.  Is it your opinion that the DiamondTouch
24   system as described in here has to use an event object
25   as the data structure for conveying a touch on the   12:01:45

Page 91

1    tabletop to the CPU?                       12:01:49
2        MS. MAROULIS:  Objection; vague.
3        THE WITNESS:  I suppose -- given the other
4    aspects of it which appear to be object-oriented in
5    design regarding the application, then I think it would   12:02:18
6    be most likely that an object-oriented approach would be
7    taken to conveying the signals to the -- to the CPU.
8    Specifically, are there -- in software generally --
9    there are generally lots of ways to do things.
10   BY MR. MONACH:                             12:02:43
11       Q.  So even though an event object would be a
12   reasonable or likely way to do it, it could be done in
13   other ways?
14       A.  I --
15       MS. MAROULIS:  Objection; calls for   12:02:52
16   speculation.
17       THE WITNESS:  I can -- I can imagine a system
18   that was -- that was constructed which might do it in
19   other ways.  I don't think that's the case here.
20   BY MR. MONACH:                             12:03:07
21       Q.  So we've talked a little bit about items 1 and
22   2 on your Exhibit 3.  I want to see if I can deal with
23   these as a group.  Exhibit -- items listed 4, 5, 8, 10,
24   and 11 in your Appendix 3.  Do you see those?  Those are
25   the ones -- those are the other ones we identified as   12:03:26

Page 92

1    being in both J1 -- the J1 list and Appendix 3.  Can   12:03:29
2    you -- is it your opinion that any of those I just
3    listed -- references 4, 5, 8, 10, and 11 in your
4    Appendix 3 -- standing alone, discloses each and every
5    limitation of any asserted claim of the '915 patent?   12:03:50
6        A.  I -- without -- without actually looking at
7    them, it would be -- I don't have a way to know one way
8    or the other whether they would disclose a -- claims of
9    any of the asserted claims in this matter -- of the '915
10   patent.  I'd have to look at that.          12:04:25
11       Q.  You don't know whether any of them discloses
12   all of the limitations of any of the claims of the '915;
13   is that correct?
14       MS. MAROULIS:  Objection; vague.  Misleading.
15       THE WITNESS:  I would need to review the   12:04:36
16   specific documents in order to make a determination as
17   to whether any of 5, 8, 10, and 11 -- is that right --
18   5, 8, 10, and 11?
19   BY MR. MONACH:
20       Q.  4, 5, 8, 10, and 11.               12:04:56
21       A.  Oh, 4, 5, 8, 10, and 11.  Yes, I'd have to --
22   well, one of them is not a document -- I'd have to
23   review the documents -- 4, 5, 8, and 10.  And then 11 is
24   a different matter because it's the system itself.  So
25   I'd have to review the documents in order to make a   12:05:16

Page 93

1    determination as to whether or not the document revealed   12:05:18
2    or disclosed all of the -- all of the limitations of any
3    claim in this -- in the '915 asserted claims.
4        Q.  Absent reviewing them now one by one, you
5    can't say -- you have no opinion one way or the other   12:05:44
6    about whether any of those four references discloses all
7    the limitations of any of the asserted claims; is that
8    right?
9        A.  Well -- so, I mean, that's a slightly
10   different question.  Of the -- these claims -- these   12:06:00
11   documents, materials cited on Appendix 3 to my
12   invalidity report are the documents that comprise the
13   DiamondTouch system.  So if you said "any," then I
14   suppose 4 -- between 4, 5, 8, and -- no, 4, 5 -- yeah.
15   4, 5, 8, and 10, I'd have to consider those as a whole.   12:06:27
16   When you said "any," it would include all -- and to
17   determine whether or not they disclose each and every
18   claim of any of the asserted claims -- '915 asserted
19   claims.
20       Again, it's to be viewed as a system.  So with   12:06:45
21   all of them combined, that would be something that I
22   would need to analyze.
23       Q.  That wasn't my question whether all of them
24   combined disclose collectively all the elements of
25   the -- of an asserted claim.               12:07:03

Highly Confidential - Attorneys' Eyes Only

Page 94

1    Are you aware of any -- whether any -- meaning    12:07:06
2    each by itself -- of references 4, 5, 8, and 10 in
3    Appendix 3 to your report, standing alone, discloses all
4    the limitations of any asserted claim of the '915
5    patent?    12:07:22
6        MS. MAROULIS:  Objection; compound.
7        THE WITNESS:  Without reviewing the documents,
8    I would not be able, sitting here today, to make a
9    determination as to whether or not -- or not that I did.
10   BY MR. MONACH:    12:07:37
11       Q.  All right.  And is it also correct that,
12   sitting here today, you don't know whether the
13   combination of reference 1, 2, 4, 5, 8, 10, and 11 of
14   your Appendix 3 collectively discloses all the
15   limitations of any asserted claim?    12:07:59
16       MS. MAROULIS:  Objection; misstates testimony.
17       THE WITNESS:  So I would have to consider 4,
18   5, 8, and 10, and 11 as a whole in order to properly
19   answer your question.  But sitting here today, I have no
20   reason to believe that they either would or that they    12:08:21
21   wouldn't.
22       May I also mention something else?  I spent
23   some time here reviewing Q.  And it dawned on me after
24   I -- just now -- that what I had done was looked at Q
25   without considering the cited references that are part    12:08:39

Page 95

1    of Q.  I presume -- I think I answered your question    12:08:44
2    based upon this Exhibit Q as a discrete document, not
3    including its tributary -- or its reference documents.
4        Did I answer your question properly?
5    BY MR. MONACH:    12:09:03
6        Q.  I think so.  But would your -- would your
7    answers change based on -- I'm not sure what you're
8    referring to as "things cited in here in Exhibit Q."
9    You're saying the 20 footnote references?
10       A.  Right.  Right.  What I -- what I'm really    12:09:23
11   referring to is that if you consider Exhibit Q and all
12   of its references, the answer probably is -- well, may
13   be different than if you only consider Exhibit Q as a
14   discrete document without its references.  And I just
15   wanted -- I answered the question as if it was just this    12:09:44
16   document and not the other documents.  It just dawned on
17   me I should give that clarification.
18       MR. MONACH:  Okay.  The way you answered it is
19   fine.
20       Let's have marked as next in order Exhibit M    12:09:56
21   from your invalidity report.
22       THE VIDEOGRAPHER:  It will be Exhibit 11.
23           (Whereupon Exhibit 11 marked
24            for identification.)
25   BY MR. MONACH:    12:10:09

Page 96

1        Q.  Exhibit 11 for your deposition is Exhibit M to    12:10:20
2    your invalidity report, correct?
3        A.  I'm sorry.  Yes.  That actually was an easy
4    question.  I got confused.
5        Q.  To get more numbers in here, it's also cited    12:10:37
6    reference 4 in the Appendix 3 to your invalidity report,
7    right?  The Tse, Shen, and Greenberg MERL Technical
8    Report?
9        A.  The document -- Exhibit 11 to my deposition,
10   Exhibit M to my invalidity report, is number 4 in    12:10:56
11   "Materials Cited" in Exhibit 3 to my invalidity report.
12   And it is a document titled "Enabling Interaction with
13   Single-User Applications through Speech and Gestures on
14   a Multi-User Tabletop," to Tse, Shen, Greenberg, and
15   Forlines.    12:11:21
16       Q.  All right.  I want to direct your attention to
17   the end of section 3 of this paper which is on the fifth
18   page, and then mainly to carry over to the top of the
19   next page above section 4.
20       A.  Oh.    12:11:50
21       Q.  You're on the right page.  So this shows
22   the -- Figure 1 shows the DiamondTouch table and then
23   the DiamondTouch software developer kit and gesture
24   engine and then these receivers that are transmitting
25   information to Microsoft SAP1 [sic], right?  Is that how    12:12:15

Page 97

1    you understand that?    12:12:20
2        A.  SAPI, I think it is.
3        Q.  SAPI.  Thank you.
4        A.  Yes.
5        Q.  Which is actually the thing I wanted to ask    12:12:27
6    you about.
7        If you turn over to the next page, it's
8    talking about how this DiamondTouch -- this particular
9    DiamondTouch application -- or two applications -- one
10   for Google Earth and one for World of Warcraft interacts    12:12:46
11   with the Microsoft computers, right?
12       A.  Ask that question, please?  Sorry.
13       Q.  Sure.  So the -- as you understand this report
14   about the DiamondTouch running Google Earth and World of
15   Warcraft, the DiamondTouch table, which we've talked    12:13:13
16   about earlier, gets touch information using these -- the
17   antenna and receiver system we talked about in
18   connection with the other document, right?
19       MS. MAROULIS:  Objection; document speaks for
20   itself.    12:13:30
21       THE WITNESS:  We did -- you -- we had spoken
22   about the DiamondTouch table that receives touches from
23   users through the antennas in the table.
24   BY MR. MONACH:
25       Q.  And do you understand -- since you relied on    12:13:40

Highly Confidential - Attorneys' Eyes Only

Page 98

1  this document, do you understand that this is talking        12:13:43
2  about the same tabletop system with the antennas and the
3  overhead protector down onto the table?
4      A.  Yes.  It's my understanding that this is the
5  same system that I used to create my invalidity --        12:13:54
6  Appendix 3 to my report.
7      Q.  Right.  And after gathering that input data as
8  described in section 3, towards the end of section 3 it
9  then says, "We use the Microsoft Send Input facility to
10 relay the gesture and speech input actions to the        12:14:21
11 locations of the mapped UI elements (Figure 1, rows 1,
12 2, and 3).  Thus, speech and gestures are mapped and
13 transformed into one or more traditional GUI actions as
14 if the user had performed the interaction sequence via
15 the mouse and keyboard."        12:14:43
16     Do you see that?
17     A.  I do.
18     Q.  So I'll use sort of layman's terms here, and
19 if you feel the need to correct them, please do.  But is
20 what this is describing is that the DiamondTouch system        12:14:54
21 gets touch information and then they are -- then that
22 touch information is translated or mapped -- for lack of
23 a better term -- to the traditional Microsoft PC system
24 so that a Microsoft computer will interpret the actions
25 like keyboard entry, mouse click, et cetera.        12:15:20

Page 99

1      MS. MAROULIS:  Objection; document speaks for        12:15:25
2  itself.
3      THE WITNESS:  So the document talks about an
4  integration of the DiamondTouch tabletop, SDK, the
5  gesture engine, as well as Microsoft speech recognition        12:16:57
6  software and requisite processing equipment.  And -- and
7  what it does is this application integrates all of those
8  things.
9      I think your question is, does the -- if I
10 understood correctly what your question was, does the        12:17:24
11 keyboard information -- or does the touch information
12 that occurs on the DiamondTouch system flow through the
13 Microsoft SAPI software in order to be associated with
14 the applications?  And I think the answer to that is no.
15 My reading of it is that the DiamondTouch table        12:17:47
16 generates -- still generates its signals, which are then
17 sent to the DiamondTouch gesture engine, and that the
18 Microsoft SAPI or speech application programmer
19 interface handles the speech commands, and that that all
20 gets integrated in order to manage the execution of the        12:18:13
21 game or the Google Earth application.  I think that's
22 how this all works.
23 BY MR. MONACH:
24     Q.  So I was asking about, I think, a different
25 portion of this cycle that's shown in the chart        12:18:27

Page 100

1  application mapping Microsoft Send Input application and        12:18:30
2  group lab widget in combination with the text saying,
3  "We then use the Microsoft Send Input facility to relay
4  the gesture and speech input actions, and then speech
5  and gestures are mapped and transformed into one or more        12:18:48
6  traditional GUI actions as if the user had performed the
7  interaction sequence via the mouse and keyboard."
8      A.  Right.  Right.  And I do understand that.  So,
9  I mean, what happens is that the application mapping
10 takes the signals from both the speech -- the SAPI --        12:19:05
11 the speech application programmers interface, as well as
12 the DiamondTouch gestures, and integrates it in the
13 application mapping layer which then is sent -- that's
14 what I was referring to -- through the -- using
15 Microsoft Send Input to the application itself which now        12:19:23
16 pushes information back out.
17     So that is how this system is constructed.
18     Q.  So in order, for example, to pan in this
19 system, you have a touch gesture which then gets sent
20 to -- through the Microsoft Send Input facility.  And        12:19:44
21 that touch gesture is transformed into a traditional GUI
22 action as if it had been done on a mouse or a keyboard,
23 correct?  And that's how the Microsoft system
24 understands and responds?
25     MS. MAROULIS:  Objection; compound.        12:20:06

Page 101

1  Confusing.        12:20:08
2      THE WITNESS:  The only -- the scenario that
3  you have described, I think is accurate up to the point
4  of -- of scrolling -- the scrolling part of it.  Well,
5  depends -- it depends on which application we're        12:20:28
6  referring to.  I'm not sure exactly.  I'd have to go
7  back and read through this more carefully.  But I'm not
8  sure exactly how the scrolling would work.  But I
9  believe generally your -- the general high-level
10 scenario that you have described there is appropriate,        12:20:49
11 is proper.
12 BY MR. MONACH:
13     Q.  So does this document disclose or not disclose
14 an event object invoking a scrolling operation or a
15 gesture operation?        12:21:16
16     A.  Well, there are -- again, without -- without
17 spending a bit more but studying a little more closely,
18 it would appear as though there are two objects that
19 would be -- at least two -- that would be created from
20 the DiamondTouch tabletop.  One would be the objects        12:22:42
21 having to do with the mapping of the input that comes
22 from the tabletop through the gesture engine into the
23 application mapping layer.  And another, which is then
24 created that maps through this Microsoft Send Input
25 functionality into the application where those inputs        12:23:04

Highly Confidential - Attorneys' Eyes Only

Page 102

1    are resolved in favor of a -- of application actions          12:23:07
2    that are pertinent to the specific application.
3         So it would be -- it would probably be two
4    objects related to the events which were driven by the
5    DiamondTouch tabletop.  At least two.          12:23:25
6         Q.  And my question was whether -- now that you've
7    clarified this -- whether that first input -- let's
8    assume it's an event object -- it may or may not be --
9    but if it is an event object, the touching of the
10   tabletop, under the scenario you've just described, does          12:23:41
11   that event object invoke -- as you understand that term
12   is used in the '915 -- any scroll or gesture operation?
13        MS. MAROULIS:  Objection; vague.  Incomplete
14   hypothetical.
15        THE WITNESS:  I -- without -- without actually          12:24:05
16   doing a deeper level of analysis, it would be hard for
17   me to say conclusively that the event object is invoking
18   an operation that performs the scroll or the panning
19   operation, without looking at it in more detail.
20   BY MR. MONACH:          12:24:27
21        Q.  You can't tell one way or the other?
22        A.  Right.  There's some -- yes.  In this
23   particular instance there is some indirection there that
24   makes it -- I'd have to look at it in more detail.  I
25   can't tell one way or the other.          12:24:42

Page 103

1         MR. MONACH:  Let's mark as the next exhibit,          12:24:43
2    the '915 patent, as Exhibit 12.
3              (Whereupon Exhibit 12 marked
4               for identification.)
5    BY MR. MONACH:          12:24:49
6         Q.  The claims of the '915 patent recall
7    looking -- I mean, require -- say, looking at Claim 1 as
8    an example; it's also in Claim 8 -- the machine readable
9    storage program, that the independent claims of the '915
10   patent require "User input points apply to a          12:25:59
11   touch-sensitive display that is integrated with the data
12   processing system."
13        Do you see that?
14        MS. MAROULIS:  Objection; calls for legal
15   conclusion.          12:26:15
16        THE WITNESS:  Claim 1 or Claim 8?
17   BY MR. MONACH:
18        Q.  Let's do Claim 8; that's fine.
19        A.  I see that.  I see the limitation you're
20   referring to.          12:26:32
21        Q.  The claim limitation?
22        A.  Yes.  Top of column 24?
23        Q.  Yeah.  Does the DT -- the MERL DT system that
24   we just looked at in connection with a couple of
25   exhibits have a touch-sensitive display?          12:26:47

Page 104

1         A.  The MERL system has a touch-sensitive surface          12:26:54
2    upon which the information is displayed -- upon which
3    information is displayed.
4         Q.  But does it, in your opinion, have or have not
5    a touch-sensitive display, as that term is used in the          12:27:14
6    '915 patent?
7         MS. MAROULIS:  Objection; asked and answered.
8         THE WITNESS:  So the tabletop is the display.
9    The projection of that display comes from a projector.
10   So the source of the data or light that is projected          12:27:38
11   onto the display surface is the same surface as the
12   touch table.  So that in the case of the MERL
13   DiamondTouch system, the display surface and the --
14   it -- the display surface is the touch surface, the
15   touch-sensitive -- it is a touch-sensitive display.          12:28:04
16   They're merged.
17   BY MR. MONACH:
18        Q.  If you go to a movie theater and a movie is
19   projected onto a screen, what is the display, in your
20   view; a projector, the screen, or the two of them          12:28:20
21   together?
22        MS. MAROULIS:  Objection; compound and
23   incomplete hypothetical.
24        THE WITNESS:  So -- so the screen without the
25   projector is not a display.  The projector without a          12:28:34

Page 105

1    screen is not a display.  So the display is the          12:28:39
2    combination of the information source, the light source
3    and the surface under which it can be observed.  So to
4    me it's the combination is the way I think about it.
5    BY MR. MONACH:          12:28:54
6         Q.  Okay.  What is your understanding of the
7    meaning of the term "integrated display" that is
8    integrated with a data processing system?
9         A.  So when I use the term "integrated," it has to
10   do with a collection of interoperable components which          12:29:22
11   are -- which cooperate to perform some computing
12   function of one kind or another.  So an integrated
13   system is a collection of computing components --
14   election of components which are interoperable for the
15   purposes of some -- performing some computing function.          12:29:44
16        Q.  So anything that can communicate with
17   something else, you would say those two things are
18   integrated?
19        MS. MAROULIS:  Objection; misstates testimony.
20        THE WITNESS:  The components that can -- is          12:30:03
21   a -- components can which, is the way you used -- posed
22   the question -- I would not -- the ability to
23   communicate is not the same as the actual communication.
24   So the components integrated an interoperable -- in
25   other words, communicating to use -- go back to your          12:30:24

Highly Confidential - Attorneys' Eyes Only

Page 106

1   communicate -- are an integrated system when they are   12:30:27
2   interoperable to perform some computing function.
3          MR. MONACH: I think we're out of tape, so
4   it's now our lunch break.
5          THE WITNESS: Lunch break by definition.   12:30:39
6          THE VIDEOGRAPHER: The time is 12:30 p.m. And
7   this marks the end of disk 2 in the deposition of
8   Stephen Gray. We're off the record.
9          (Recess taken from 12:30 p.m. to 1:16 p.m.)
10         THE VIDEOGRAPHER: This marks the beginning of   13:16:07
11  disk 3 in the deposition of Stephen Gray. The time is
12  1:16 p.m. And we are back on the record.
13  BY MR. MONACH:
14    Q.  Mr. Gray, I want to go back to your definition
15  of touch-sensitive display that is integrated with the   13:16:24
16  data processing system in Claim 8 of the '915.
17         Is it your testimony that a display and a data
18  processing system are integrated so long as they are
19  interoperable to perform some computing function?
20         MS. MAROULIS: Objection; assumes facts.   13:16:50
21         THE WITNESS: I think what I -- what I tried
22  to say was interoperable for the purposes of performing
23  some computing operation.
24  BY MR. MONACH:
25    Q.  All right. So is it your position that the   13:17:09

Page 107

1   '915 -- as the term "integrated" is used in the '915   13:17:14
2   patent, that it would cover a touch-sensitive display
3   that communicates over the Internet to a data processing
4   system in another country, for example?
5          MS. MAROULIS: Objection; incomplete   13:17:35
6   hypothetical.
7          THE WITNESS: If there's a touch-sensitive
8   display, it is communicating over the Internet in some
9   way, so it's got a computer that is associated with it
10  or some kind of a communications facility, and it's   13:18:00
11  communicating with another -- like a server, for
12  example, and in another location, another physical
13  location. Does that comprise an integrated system?
14  BY MR. MONACH:
15    Q.  As that -- as that term is used in Claim 8 of   13:18:15
16  the '915 patent.
17         MS. MAROULIS: Objection; calls for a legal
18  conclusion.
19         THE WITNESS: So Claim 8 is a machine-readable
20  storage medium --   13:18:57
21         MR. MONACH: Mm-hmm.
22         THE WITNESS: -- that is integrated -- that
23  has a touch-sensitive display that is integrated with
24  the data processing system. So the system that you have
25  described, one that has a touch-sensitive display, a   13:19:14

Page 108

1   communications capability, an Internet connection, and a   13:19:20
2   server in some other location, is a system, but it's not
3   a system in the context of Claim 8 which is a
4   machine-readable storage medium storing executable
5   program instructions.   13:19:37
6          So it -- in other words, the integrated
7   display, the touch-sensitive display that is integrated
8   with the data processing system is in the context of the
9   preamble to Claim 8 which says "a machine-readable
10  storage medium."   13:19:55
11  BY MR. MONACH:
12    Q.  I'm not sure I understood your answer. Let's
13  try it again.
14         What limitation, what narrowing of the claim
15  is added by requiring that the touch-sensitive display   13:20:18
16  be integrated with the data processing system, in your
17  view?
18         MS. MAROULIS: Objection; calls for a legal
19  conclusion.
20         THE WITNESS: That they're interoperable.   13:20:28
21  BY MR. MONACH:
22    Q.  So for a claim covering a machine-implemented
23  method that does something or a machine-readable storage
24  medium that does something useful, you have to have
25  interoperable elements, right? That's a given, right?   13:20:49

Page 109

1          MS. MAROULIS: Objection; calls for a legal   13:20:55
2   conclusion.
3          THE WITNESS: Well, a machine-readable storage
4   medium could be a single component. It doesn't --
5   wouldn't necessarily require interoperability. But in   13:21:05
6   this particular case, this is a machine-readable storage
7   medium that includes a touch-sensitive display that is
8   integrated with the data processing system.
9   BY MR. MONACH:
10    Q.  And is it your view that any touch-sensitive   13:21:23
11  display that is interoperable with a data processing
12  system is integrated with the data processing system?
13         MS. MAROULIS: Objection; vague.
14         THE WITNESS: A touch-sensitive display that
15  is interoperable with a data processing system for the   13:21:47
16  purposes of performing some computing operation, some
17  defined computing operations, is an interoperable --
18  yes, that's an integrated system. It isn't necessarily
19  an integrated system as described in the '163 -- I mean,
20  the '915, excuse me. But it is -- I mean, there's   13:22:11
21  further limitations that would context -- I guess the
22  preamble is not a limitation -- but a context under
23  which that has to happen.
24  BY MR. MONACH:
25    Q.  So what's your understanding -- what -- what   13:22:23

Highly Confidential - Attorneys' Eyes Only

Page 110

1  claim construction did you use in your analysis of Claim   13:22:29
2  8 on the meaning of a touch-sensitive display that is
3  integrated with the data processing system in the
4  context of Claim 8?
5     A.  So it is a data -- a machine-readable storage   13:22:47
6  medium in a data processing system that is integrated
7  with a touch-sensitive display, that that is the --
8  that's -- that meant that, for example, a system like
9  DiamondTouch, where the display is integrated with the
10  rest of the data processing system, then comprises a   13:23:13
11  data processing system that meets the limitations or
12  meets the context in the limitations of the preamble to
13  Claim 8 and the first limitation of Claim 8.
14     Q.  And is there anything in either the
15  specification itself or the file history that supports   13:23:33
16  the definition that you just gave?
17     MS. MAROULIS:  If you need to review file
18  history, you can ask for that.
19     MR. MONACH:  Objection to the coaching.
20     THE WITNESS:  Well, it probably would be   13:23:51
21  worthwhile to at least look through the specification a
22  little bit more to see if there's anything specific that
23  would -- that would lead -- lead me to that.  I mean, in
24  that -- I mean, I'm more than willing to do that.
25  BY MR. MONACH:   13:24:06

Page 111

1     Q.  Go ahead, if you can do that quickly.   13:24:06
2        But before you do that, as you're sitting here
3  today without reviewing, do you recall anything in the
4  specification that supports the definition you just gave
5  of what a display integrated with the data processing   13:24:20
6  system means?
7     A.  The reason that I offered to review the
8  specification is that I do recollect something in the
9  specification which would support my -- my argument.  So
10  I'd --   13:24:38
11     Q.  Go ahead.
12     A.  That's my position.  But that's the reason I
13  offered.  So let me give you some -- let me put
14  something -- a partial response to your answer.  I have
15  to leave a finger to mark something so I can come back   13:27:35
16  and get it.
17     Q.  Go ahead.
18     A.  So in the -- no, that's okay.  Thank you,
19  though.
20        In the '915, column 4, line 56, "The present   13:27:44
21  disclosure can relate to an apparatus for performing one
22  or more operations described herein.  This apparatus may
23  be specially constructed for the required purposes, or
24  it may comprise a general purpose computer selectively
25  activated or reconditioned by a computer program stored   13:28:07

Page 112

1  in the computer."   13:28:10
2        So there's -- we're talking about
3  general-purpose computing componentry that can be
4  configured to perform the operations.  Let me -- that's
5  one.  I may --   13:28:26
6        Paragraph column 5, line 56, "At least certain
7  embodiments of the disclosure may be part of a digital
8  media player such as a portable music and/or video media
9  player, which may include a media processing system to
10  present the media, a storage device to store the media,   13:29:19
11  and may further include a radio frequency transceiver;
12  e.g., an RF transceiver, for a cellular telephone
13  coupled with an antenna system in the media processing
14  system."
15        Column 6, line 20.  "Embodiments of the   13:29:53
16  disclosure described herein maybe part of other types of
17  data processing systems such as, for example,
18  entertainment systems."
19        "Wireless device" -- excuse me.  Column 20,
20  line 20.  "Wireless device 3070 may also include a   13:32:26
21  digital processing system to control a digital RF
22  transceiver and to manage the voice digital data and
23  media signal.  Digital processing system 3103 may be a
24  general purpose processing device such as a
25  microprocessor or controller, for example."   13:32:53

Page 113

1        "Digital processing system" -- excuse me.  In   13:32:56
2  20 -- column 20, line 28, "Data processing system 3103
3  may also include other devices, as are known in the art
4  to interface with other components of wireless device
5  3070."   13:33:20
6        Column 20, line 43.  "Wireless device 3070 may
7  also include one or more input devices, coupled to the
8  digital processing system 3103, to accept user inputs."
9  Input device 3105 may be, for example, one or more of a
10  key pad, a touch pad, touch screen, a pointing device in   13:34:03
11  combination with a display device or similar input
12  device.
13        So there may be more.
14     Q.  So you've identified all the places in the
15  specification you can find that you think support your   13:35:06
16  definition of "integrated," right?
17     A.  I -- what I think -- what I've identified in
18  the specification are some of -- there may be more --
19  areas that support the idea that integration can include
20  the combination of multiple computing components   13:35:29
21  interoperable with one another that are -- that are
22  interoperable to perform some computing function.
23     Q.  Is it true that all of the examples and the
24  figures shown in the '915 patent are integrated devices
25  in the sense that there's one physical structure,   13:35:51

Highly Confidential - Attorneys' Eyes Only

Page 114

1  physical housing that has the touch screen, the          13:35:53
2  computer, et cetera, all in one self-contained device
3  like a cell phone, a tablet computer, a laptop computer?
4       MS. MAROULIS:  Objection; document speaks for
5  itself.                                                  13:36:09
6       THE WITNESS:  I think your question was if
7  the -- or do the figures convey that?
8       MR. MONACH:  Yes.
9       THE WITNESS:  Okay.  I thought I heard
10 "specification."  Sorry.                                 13:36:19
11      Well, to me -- and the specification may --
12 you may have to refer to the specification.  But figure
13 31 could be implemented in a variety of ways.  There's
14 nothing about figure 31 that conveys that it's all
15 housed in a -- in the same system.  In fact, it has --   13:36:56
16 it's a functional block diagram that has blocks that
17 have a variety of different components which may be
18 connected or not.  And figure 3- -- I mean -- excuse me.
19 I didn't say that very clearly.  It has a series of
20 components which are connected but are not necessarily    13:37:19
21 housed in the same box.  And figure 32 also conveys
22 something that -- conveys a system for which there is
23 no -- there isn't any clear description of that system
24 as one that is all contained in the same physical
25 housing, I think, is what you referred to it as.         13:37:46

Page 115

1       These, again, could be connected to the bus or   13:37:49
2  these I/O devices don't need to be connected to the bus
3  at all which could be external peripherals, so could the
4  sensors for user activities.  These -- both of these
5  diagrams seem to me to look kind of like the way the --  13:38:03
6  some of the systems -- some other systems operate, which
7  would be not all housed in one -- one simple box.
8  BY MR. MONACH:
9       Q.  Isn't it true that the specification describes
10 figure 31 in column 20 as an embodiment of wireless      13:38:27
11 device 3070, which is shown in figure 30B?
12      MS. MAROULIS:  Objection; calls for legal
13 conclusion.
14      THE WITNESS:  Could you repeat?  Column 20 --
15 BY MR. MONACH:                                           13:38:45
16      Q.  Column 20, about line 8.  It says, "Figure 31
17 shows an embodiment of a wireless device 3070 which
18 includes the capability for wireless communications."
19 And then it says, "It may be embedded in any of the
20 devices shown in" -- and then it lists these various     13:39:03
21 figures, right?
22      A.  Yes.
23      Q.  So isn't that -- isn't that just showing a
24 diagram of the component layouts within a self- -- these
25 self-contained devices like 30A and 30B?                 13:39:17

Page 116

1       A.  Except -- so I agree that -- that line 8 --   13:39:22
2  starting at line 8 of column 20 says, "Figure 31 shows
3  an embodiment of wireless device 3070."  But if you read
4  down through the rest of column 20, it talks about
5  variety of different configurations.  It offers other    13:39:46
6  alternative configurations of 31- -- 3070, rather.  So
7  that -- and that's where I get part of my support for
8  it.
9       Q.  Okay.  If the Court were to construe
10 "integrated" in Claim 8 of the '915 patent as requiring   13:40:02
11 that the touch-sensitive display and the computer are in
12 a -- in one physical housing, would you agree that the
13 DiamondTouch and SmartSkin systems would not embody the
14 elements of Claim 8, all the elements of Claim 8?
15      MS. MAROULIS:  Objection; incomplete             13:40:33
16 hypothetical.  Assumes facts.  Calls for legal
17 conclusion.
18      THE WITNESS:  I think that we're -- I'd have
19 to obviously look at the construction and think about
20 the construction in that context.  So sitting here right  13:40:47
21 now, I -- I suppose it would be premature to try to make
22 a judgment about what the construction is or what the
23 judge might say.  So I --
24 BY MR. MONACH:
25      Q.  I wasn't asking you to assume --            13:40:58

Page 117

1       MS. MAROULIS:  I'm sorry.  You're cutting off   13:41:00
2  the witness.  I think --
3  BY MR. MONACH:
4       Q.  I thought you had finished your answer.
5       A.  Um --                                          13:41:05
6       Q.  I asked you -- just so we're clear, I asked
7  you, assuming the Court made a claim construction that
8  said integration, touch-sensitive display, and the --
9  and the computer system as in Claim 8 requires that they
10 be in single housing, would you agree that if that      13:41:21
11 happens, that neither the MERL DT system nor the Sony
12 SmartSkin would meet that limitation?
13      MS. MAROULIS:  Objection; calls for legal
14 conclusion.  Compound.  Assumes facts.
15      THE WITNESS:  My only -- the only statement     13:41:40
16 I'd make is that if that -- if that were -- if that
17 construction were made by the Court, then I would have
18 to consider DiamondTouch and SmartSkin in the context of
19 that new construction.
20 BY MR. MONACH:                                           13:41:59
21      Q.  But you can't give an answer one way or the
22 other, sitting here today under oath; is that -- is that
23 your testimony?
24      MS. MAROULIS:  Objection; asked and answered.
25      THE WITNESS:  The specific configuration, I'd   13:42:09

Highly Confidential - Attorneys' Eyes Only

Page 118

1  have to analyze it carefully.            13:42:13
2  BY MR. MONACH:
3      Q.  All right.  In paragraph 33 of your rebuttal
4  report, Exhibit 2, you say at line 2, "Rather, some
5  accused products permit scrolling (e.g., panning) with   13:42:45
6  one or more input points (e.g., two-finger scroll,
7  three-finger scroll, etc.)."
8          Do you see that?
9      A.  Yes, I do.  33 -- paragraph 33, line 2, yes.
10 I see that.                               13:43:06
11     Q.  Of your non-infringement rebuttal report.
12         Which accused products are you asserting
13 permit scrolling with one or more input points and which
14 do not?
15     A.  So I don't know that I would -- I can't        13:43:28
16 remember all of the products off the top of my -- off
17 the top of my head that -- I mean, I can't identify the
18 specific products.
19     Q.  Well, I may have misread this.  So you say,
20 "Some accused products permit scrolling (e.g., panning)  13:43:41
21 with one or more input points (e.g., two-finger scroll,
22 three-finger scroll, etc.)."
23         Can you identify any accused products that
24 fall in that category?
25         MS. MAROULIS:  Objection; vague.  Asked and    13:44:01

Page 119

1  answered.                                 13:44:04
2          THE WITNESS:  I recall identifying eight
3  different products of the accused products which
4  permitted scrolling with one or more input points.  I'm
5  just sitting here today unable to recall the names of    13:44:33
6  the products --
7  BY MR. MONACH:
8      Q.  Well --
9      A.  -- that did that.  But I do remember there
10 were -- that I identified at least eight.    13:44:47
11     Q.  Of those eight products, which ones permitted
12 scrolling with more than one finger?
13         MS. MAROULIS:  Objection; calls for
14 speculation.
15         THE WITNESS:  Maybe I didn't answer the        13:45:09
16 question you were asking.  I thought you were asking me
17 how many products did allow scrolling with more than one
18 finger.  You didn't ask me how many; you asked me which.
19         MR. MONACH:  Mm-hmm.
20         THE WITNESS:  What I answered was that I know   13:45:21
21 of -- that there were eight products that allowed for
22 scrolling with more than one input point.
23 BY MR. MONACH:
24     Q.  Were there any products other than Samsung
25 tablet products that you believe allow scrolling with    13:45:34

Page 120

1  more than one-finger touch?                  13:45:40
2      A.  Yes, there were some of the, quote, phone
3  products which also allowed for scrolling with more than
4  one touch.
5      Q.  Which phones?                        13:46:02
6      A.  I've got to back-circle.  I don't remember the
7  names -- the specific names of the phones.  I -- well,
8  if -- I can certainly produce that list and give it to
9  the attorneys for Samsung if that's something that would
10 be worthwhile.  I just don't remember the names of them.  13:46:18
11     Q.  Were some of the eight products that you say
12 scrolled with two-finger or three-finger touches
13 tablets?
14     A.  My recollection is that at least one of the
15 products that allowed for scrolling with more than one   13:46:37
16 touch point was a tablet, yes.  But I don't remember if
17 there was more than one.  But I remember there was at
18 least one.
19     Q.  How many products did you test to determine
20 whether they would permit scrolling or panning with more  13:46:57
21 than one finger input?
22     A.  I suppose a boxful is not a quantity that
23 you're looking for, but there was a large box.  I'd
24 be -- yeah, I'd be estimating how many were there in
25 that box.  This was a box that had a lot of Samsung       13:47:21

Page 121

1  products that were in it that specifically got tested to  13:47:23
2  determine whether or not multi-finger scrolling was
3  permitted.  And therein -- I would estimate at least 15,
4  maybe 25.  But there was a lot of products in that box.
5      Q.  Was it your understanding that this box of     13:47:42
6  phones and tablets that you tested was all of the
7  accused products in this case that relate to the '915
8  patent?
9          MS. MAROULIS:  Objection; calls for
10 speculation.                              13:47:54
11         THE WITNESS:  I'm not -- sitting here today, I
12 can't tell you that it was -- that it was intended to be
13 all of the -- what is it, 31 products that had been
14 accused?  I just don't know the answer to that question.
15 I don't think it was intended to be all of them.  But    13:48:09
16 I'm not sure.
17 BY MR. MONACH:
18     Q.  When you detected this behavior that you're
19 calling two-finger or three-finger panning or scrolling,
20 could you also detect some change in the scale or some    13:48:25
21 jitteriness in change in size on the display?
22         MS. MAROULIS:  Objection; vague.
23         THE WITNESS:  So in -- in some -- with some of
24 the products, in some of the direction -- in some
25 movements, some jittery -- as you've termed it --        13:48:50

Highly Confidential - Attorneys' Eyes Only

Page 122

1  jittery behavior transpired.  And I think it's fair to        13:48:54
2  say that under certain circumstances it was possible
3  with a multi-finger scroll to also get some change in
4  the display zoom.  That -- again, I guess it would be
5  best termed -- jittery is probably a pretty good answer    13:49:15
6  to that.  So I think it was possible.  But in those same
7  products, if -- if the scrolling was of a certain type,
8  then you didn't get the jittery nature or the change in
9  the zoom when you were trying to scroll with using
10  multiple points, multiple fingers.                         13:49:33
11  BY MR. MONACH:
12      Q.  Did you put your fingers next to one another
13  or did you spread them apart when you attempted to do
14  what you called "multi-finger scrolling"?
15      A.  I remember doing both and obtaining results,       13:49:43
16  which showed that multi-finger scrolling on some
17  products was -- you know, on some products you could get
18  multi-finger scrolling with fingers spread apart and
19  together.  I remember that.
20      Q.  And were there some of these eight products         13:50:04
21  where you could only get what you've called "scrolling"
22  by placing your fingers right -- two fingers next to one
23  another?
24      A.  I don't remember if any of them were only --
25  were only available to do that -- if -- I don't remember   13:50:20

Page 123

1  if any of the products only scrolled using multiple       13:50:24
2  touch points when your fingers were placed close
3  together.  I don't recall.
4      Q.  Okay.  On the eight accused products that you
5  say would do scrolling when more than one finger was      13:50:41
6  touching the screen, did you have that -- did you
7  observe that behavior for all applications or only for
8  one application?
9      A.  It varied.  The applications varied.  In some
10  cases, it was multiple applications.  I remember it       13:51:08
11  being multiple applications for some of the products.  I
12  don't know if it was multiple applications for all of
13  the products.  But I do remember it being multiple
14  applications for some of the products.
15      Q.  Were there some of the products that you           13:51:28
16  tested where you could cause what you've described as a
17  multi-finger scrolling in one application, but could not
18  get multi-finger scrolling with a different application
19  using the same product?
20      A.  My best recollection of this was that I did        13:52:04
21  not test -- I don't think I tested all of the products
22  with all of the applications.  And I -- I guess I'm --
23  sitting here now, I'm not sure how many of the products
24  fell into the two categories that you've described,
25  products that -- that only allowed for the multi-finger   13:52:24

Page 124

1  scrolling in a single application versus multi-finger     13:52:28
2  scrolling with multiple applications.  I just don't have
3  the numbers.  I don't.
4      Q.  Did you take any videos of your testing of
5  these products, as you've described, to see if they       13:52:42
6  would do some scrolling with a multi-finger touch?
7      A.  I have not taken any videos yet regarding the
8  scrolling -- the multi-finger scrolling on the eight
9  products.  And by the way, with respect to the eight
10  products, the eight products that I'm referring to are    13:53:04
11  products that for which -- well, let me step back a
12  little bit.
13           This was not a -- the purpose of this exercise
14  was not to provide a detailed elaborate scientific
15  approach to determining whether or not the products      13:53:24
16  allowed for multi-touch points -- multi-touch point
17  scrolling.  It would not surprise me to go back and find
18  that more than the eight products allowed for
19  multi-touch scrolling.  This was a fairly informal
20  testing that we went -- you know, that was performed in   13:53:44
21  order to try to determine whether or not -- kind of get
22  a gross number of how many products allowed for this.
23  So --
24      Q.  When you said "that we went through," who is
25  "we"?                                                     13:53:56

Page 125

1      A.  Some of the attorneys also picked up products      13:53:57
2  and tried to perform the multi-touch scrolling.
3      Q.  Did you make any list of what products you
4  tested and what the reaction was or what the performance
5  was on what you've called "multi-finger scrolling"?       13:54:14
6      A.  A list was made of the products that -- again,
7  in our somewhat informal testing that did provide for
8  multi-finger scrolling.  A list was made of those
9  products.
10      Q.  And that wasn't described or attached to your     13:54:33
11  rebuttal report, was it?
12      A.  The list of products that performed
13  multi-finger scrolling was not attached to my rebuttal
14  report.
15      Q.  Why not?                                          13:54:46
16      A.  So, again, stepping back a little bit.
17  This -- there's two periods under which the multi-finger
18  scrolling -- the informal multi-finger scrolling testing
19  took place.  One was before I submitted my rebuttal
20  report and some was after.  The testing before I         13:55:09
21  submitted my report, a list was not compiled and the
22  breadth of products was not tested as thoroughly as the
23  test that was performed after my report was submitted.
24      Q.  And the eight products that you've described
25  is -- you've testified to some multi-finger              13:55:33

Highly Confidential - Attorneys' Eyes Only

Page 126

1  scrolling is a combination of your report testing and      13:55:38
2  post-report testing; is that right?
3      A.  No, that's incorrect.  The list of eight is --
4  was compiled in the post-report -- the informal
5  post-report testing.  The pre-report -- pre-report      13:55:55
6  submission testing, a list was not compiled.  Also the
7  number of products -- the same number of products were
8  not tested.
9      Q.  I'm trying to get at the eight products that
10 you say you've tested that you determined there was some   13:56:15
11 multi-finger scrolling.  Is that number of eight the
12 total number in which you recall observing that behavior
13 from your pre-report and post-report testing?
14     A.  No.  The post-report testing -- the
15 post-report submission testing is the informal testing   13:56:36
16 that yielded the list of eight products.
17     Q.  All right.  Did you -- are there any
18 additional products that you contend perform multi-touch
19 scrolling other than those eight that you -- whether you
20 tested them before and they were different products, you   13:57:00
21 tested them before and they were the same products?  I'm
22 trying to find out what the universe of products your --
23 as you sit here today, you're contending to multi-finger
24 scrolling.
25     A.  That's a good question.  I'm -- I don't      13:57:13

Page 127

1  remember -- I can't, sitting here today, identify --      13:57:17
2  well, I can't sit here today and declare that the
3  products -- the pre-report submission, informal product
4  testing products did not overlap with the post-report
5  informal product testing.  But I think maybe what      13:57:38
6  you're -- maybe what -- this will help.  I know that
7  they weren't counted twice.  Whatever products were --
8  that comprised the pre-report multi-finger touch scroll
9  sensing are not -- were not identified in the list.  So
10 the list of eight comes from the post-report testing.      13:57:59
11     Q.  What I want to know and what I'm entitled to
12 know, sir, is whether you're going to come back later
13 and say, oh, I tested 10 that had this behavior, 10
14 different phones before the report, 8 after, and so the
15 total is 18.                                   13:58:16
16     It's a very simple question.
17     Of all the tests you've done, how many phones
18 had what you're calling "multi-finger scrolling"?
19     MS. MAROULIS:  Objection; asked and answered.
20 Please don't yell at the witness.                   13:58:28
21 BY MR. MONACH:
22     Q.  Is it eight -- I'm not yelling -- is it eight?
23 Is it less than eight or is it more than eight, to the
24 best of your recollection?
25     A.  Right.  So what -- I was trying to answer.      13:58:38

Page 128

1      There was only -- there are eight products      13:58:40
2  that I identified that are in the post-report informal
3  testing and there's a list of those eight.  That is the
4  eight that have been identified so far.  I am not
5  including in that eight any pre-report multi-finger      13:58:54
6  scroll testing that was performed.  There's none of
7  those included in the eight.  It is only the eight.
8      Q.  Were there any phones in addition to the eight
9  you've described as being on the post-report testing
10 list that you contend perform multi-finger scrolling?   13:59:10
11     A.  Ask that again.  I lost it.
12     Q.  Are there any phones other than the eight you
13 say you put in a list after your report that you contend
14 do multi-finger scrolling?  Are there any phones other
15 than those eight that you're aware of that you believe   13:59:33
16 perform multi-finger scrolling?
17     A.  Right.  And I -- apparently I've not answered
18 this.  I thought I answered it a couple of times, but
19 apparently I didn't.
20     The pre-report testing, I can't identify the      13:59:48
21 products.  There was no list ever made.  So the eight
22 products that were done in the post-report informal
23 testing are the eight.  There are -- whatever -- the
24 ones that I observed pre-report testing, I couldn't
25 identify -- I can't identify by name.  So the only      14:00:03

Page 129

1  products that -- on the list of eight, are the ones that   14:00:05
2  were identified post-report submission.
3      Q.  Did any of the pre-report phones that you
4  tested perform, in your view, multi-finger scrolling?
5      A.  Yes, there were phones in the pre-report      14:00:25
6  testing that performed multi-finger scrolling.
7      Q.  How many?
8      A.  I -- like I say, I don't know.
9      MS. MAROULIS:  Objection; asked and answered.
10     THE WITNESS:  Sorry.                   14:00:36
11     The -- my report says that there were some.
12 And so I don't know the number.  I just -- I don't know
13 the number.  There were some.
14 BY MR. MONACH:
15     Q.  Okay.  At page 6 of your non-infringement      14:00:50
16 report, you say that "Dr. Singh" -- "Singh's report
17 fails to show that the accused products performed
18 several of the key limitations present in each of the
19 independent claims of the '915 patent."
20     Do you see that?  It's in paragraph 32.      14:01:15
21     A.  32?  Yes.
22     Q.  And then you have bolded, "The number of touch
23 inputs are not exclusively used to determine whether to
24 scroll or scale."
25     Do you see that?                   14:01:34

Highly Confidential - Attorneys' Eyes Only

Page 130

1    A.  I do see that.                    14:01:34
2    Q.  Does that word "exclusively" appear anywhere
3  in the claim language of the '915 patent?
4        MS. MAROULIS:  Object; and calls for legal
5  conclusion.  Document speaks for itself.    14:01:44
6        THE WITNESS:  Well, so the language of the
7  '915 provides for a determination as to whether or not a
8  user is using one-touch point to scroll and multi-touch
9  points to scale or rotate.  So -- so when I say the
10  number of touch points are not exclusively used, what   14:02:22
11  I'm referring to in that -- in that phrasing is the
12  claim language of the '915.
13  BY MR. MONACH:
14    Q.  What claim language?  Let's focus on Claim 8.
15        MS. MAROULIS:  It's Exhibit 12.        14:02:38
16        THE WITNESS:  I'm going -- yeah, I got it down
17  here.  I'm better organized than I look.
18    Column 24, line 6.  The third limitation
19  under -- in Claim 8, "Determining whether the event
20  object invokes a scroll or gesture operation by       14:03:26
21  distinguishing between a single input point applied to
22  the touch-sensitive display and two or more input points
23  applied to the touch-sensitive display."
24    I read that as providing an "or"; it either is
25  one input point to provide -- to apply -- that is    14:03:55

Page 131

1  interpreted as a scroll operation and two or more that   14:03:59
2  are interpreted as a gesture operation.
3  BY MR. MONACH:
4    Q.  And your interpretation of that is that if
5  you're touching with more than one finger, it precludes   14:04:14
6  any scrolling at all?
7        MS. MAROULIS:  Objection; vague.  Incomplete
8  hypothetical.
9        THE WITNESS:  That's -- the way that I read
10  that claim, is that one finger is a scroll and multiple   14:04:31
11  fingers -- or two or more input points are a gesture --
12  are a gesture -- yield a gesture operation.  So let
13  me -- I didn't say that very clearly.
14    One input point is interpreted as a scroll
15  operation, and multiple input -- more than -- two or   14:04:53
16  more input points are interpreted as a gesture
17  operation.
18  BY MR. MONACH:
19    Q.  In your examination of the accused products
20  before and after your report, did you find any accused   14:05:09
21  product that would perform a gesture operation with only
22  one finger touching the screen?
23    A.  So the -- so I think -- your question is, is
24  there -- did I observe any products with one finger
25  touching the screen that produced something other than   14:05:53

Page 132

1  something that could be interpreted as a scroll   14:05:56
2  operation?  The answer to that question is yes.
3    Q.  What did you observe?
4    A.  Double tap on a screen that -- that tap to
5  zoom.                            14:06:09
6    Q.  Other than the double-tap-to-zoom behavior,
7  did you observe any -- anything that would be -- that
8  you would consider to be a gesture operation based on
9  one finger being in constant contact with the screen?
10        MS. MAROULIS:  Objection; calls for legal   14:06:29
11  conclusion.
12        THE WITNESS:  Other than single tap to zoom
13  and single tap to de-zoom and so on.
14    So a single finger that produced something
15  other than double tap to zoom that produced a gesture   14:06:42
16  operation.
17    Well, my recollection is that on some of the
18  products -- this may not be exactly responsive to your
19  question, but I think it is -- on some of the products
20  in some of the applications, there are some other zoom   14:07:05
21  functions which can be executed with one finger.
22  BY MR. MONACH:
23    Q.  Could you give -- could you be specific,
24  please?
25    A.  I could see that one coming.        14:07:25

Page 133

1    It's like there's a magnifying glass or       14:07:26
2  there's something on there -- I remember vaguely in one
3  of the products where there's a magnifying glass that
4  you can manipulate with one finger that provides for
5  some zooming.                        14:07:41
6    Q.  Anything else?
7    A.  Those are the examples that I remember that
8  allow for gesture operations to be performed with one
9  finger.
10    Q.  Okay.  At paragraph 42 of your rebuttal report   14:07:49
11  you say, "The MotionEvent object never invokes a scroll
12  or gesture operation," right?
13    A.  Page 42, did you say?
14    Q.  Mm-hmm.  So paragraph 42, page 9.
15    A.  Oh, paragraph 42.                14:08:11
16    Yes, the sentence on -- in paragraph 42 says,
17  "However" -- on line 7 -- "However, the MotionEvent
18  object never invokes a scroll or gesture operation."
19    Q.  What definition of "invoke" are you using in
20  offering that opinion?                14:08:39
21    A.  So when I use the term "invoke," the term I'm
22  using it means "call," similarly to the way -- well, it
23  doesn't matter.
24    Q.  So is it your interpretation of "invoke" that
25  there can't be any intervening steps between the motion   14:09:08

Highly Confidential - Attorneys' Eyes Only

Page 134

1   of that object detecting the number of fingers and the          14:09:13
2   execution of a scroll or gesture operation that invoking
3   requires an immediate call by that event object with no
4   steps in between?
5        MS. MAROULIS:  Objection; vague and compound.          14:09:32
6   Assumes facts.
7        THE WITNESS:  My reading, yeah, it's
8   invoking -- yes.  That is -- the reading that I have
9   when I read the patent, what I read was that this
10  object -- the event object invokes a scroll or gesture          14:09:56
11  operation.  And that invocation is a call of a function
12  to perform that -- to perform that operation.
13  BY MR. MONACH:
14       Q.  But where -- where did you get the -- how did
15  you come to the conclusion that invoking requires that          14:10:13
16  the call happen immediately with no intervening steps,
17  as opposed to saying, I'm taking path A, which will
18  ultimately lead to a scroll operation, or path B that
19  will ultimately lead to a gesture operation?
20       MS. MAROULIS:  Objection; vague.          14:10:32
21       THE WITNESS:  So in my reading and
22  understanding of other patents -- and I'm not an
23  attorney, so I could have this wrong -- but the language
24  that would support -- in my mind, the language that I
25  would kind of expect to see is something that might say          14:10:52

Page 135

1   that the event object causes a scroll or event -- scroll          14:10:56
2   or gesture operation.  That would be the language that I
3   would look for.  But the language is actually fairly
4   crisp.  It says "invoke."  And it just seems to me, when
5   I read it, that that's what it meant.  Invoke, meant          14:11:15
6   essentially calling the scroll or gesture operation.
7   BY MR. MONACH:
8        Q.  As opposed to providing data to the method
9   that calls it?
10       MS. MAROULIS:  Objection; vague.          14:11:31
11  BY MR. MONACH:
12       Q.  In your view, that's not encompassed by the
13  literal claim of the patent, right?
14       MS. MAROULIS:  Objection; vague.  Calls for
15  legal conclusion.          14:11:40
16       THE WITNESS:  So an invocation or a call -- an
17  invocation of a method has -- contains within it
18  arguments or parameters, and those parameters can point
19  to data.  But the invocation actually occurs in -- in
20  some other -- from the software.  The data might          14:12:02
21  accompany it -- a data element could accompany it, but
22  that's not the invocation.  The invoker is the software
23  entity that is invoking the method or making the call.
24  BY MR. MONACH:
25       Q.  If the court interprets "invoke" to mean          14:12:16

Page 136

1   causes the operation, to be executed, would you agree          14:12:21
2   that the accused Samsung products do invoke a scroll
3   call and a gesture call based on the information in the
4   event object?
5        MS. MAROULIS:  Objection; calls for          14:12:44
6   speculation.  Incomplete hypothetical.  Calls for legal
7   conclusion.
8        THE WITNESS:  I think -- well -- so I -- if
9   the Court were to determine that invoke really means
10  causes to be invoked, if that's what they meant and          14:13:07
11  that's what it is -- I got that part -- that part I'm
12  down with.  But what I would -- what I would then do is
13  apply that construction to the language of the claims
14  and apply it also to the software that's been identified
15  in the Singh report of the source code -- that's been          14:13:28
16  identified in the Singh report, to make the
17  determination as to whether or not the motion -- the
18  event object, which has been identified in the single
19  report as the MotionEvent object -- causes the
20  invocation.          14:13:45
21       My recollection, sitting here, is that with
22  respect to the code which is performing the steps -- the
23  determining steps, that the MotionEvent object is data
24  that is contained as parameters on some of the method
25  invocations that cause a scroll or gesture operation.          14:14:07

Page 137

1   So my best recollection is that the MotionEvent object          14:14:15
2   doesn't cause it; it is -- it is used in the invocation
3   by other -- by other things that cause it.
4   BY MR. MONACH:
5        Q.  Okay.  If the definition of event object          14:14:26
6   invokes a scroll or gesture operation, is the data
7   contained it used to determine whether you do a scroll
8   or a gesture, would you agree or disagree that the
9   accused products meet that claim limitation?
10       MS. MAROULIS:  Objection; calls for          14:14:51
11  speculation.  Calls for legal conclusion.  Incomplete
12  hypothetical.
13       THE WITNESS:  So data with -- my sitting here
14  now and my recollection of the code, data in the event
15  object is used to determine -- in the -- the data is          14:15:10
16  used in the determining step.  If -- you recall this
17  morning we talked about the pointer or the data --
18  number of events or -- I forget the element name.  That
19  comes from the MotionEvent object.  So the data is used
20  in some sense in the -- in the code itself.          14:15:36
21       Now, we talked a little bit this morning about
22  how that code -- what the code does, but that data is
23  used in the code now.
24  BY MR. MONACH:
25       Q.  Is there anything in the SmartSkin reference          14:15:57

Highly Confidential - Attorneys' Eyes Only

Page 138

1  cited in your invalidity report that indicates that          14:16:04
2  SmartSkin has an event object that determines whether
3  there's one or two input points, and based on that
4  invokes a scroll or gesture operation?
5      MS. MAROULIS:  Objection; compound.          14:16:21
6      THE WITNESS:  So please read the question
7  again.  I'm sorry.
8  BY MR. MONACH:
9      Q.  Yeah.  SmartSkin's another tabletop multi-user
10 touch-sensitive table, right?          14:16:37
11     A.  I agree.  SmartSkin shows -- illustrates
12 another one of the --
13     Q.  And like --
14     A.  -- touch-sensitive tables.
15     Q.  And like the DT system, it has a projector          14:16:48
16 that shines down on this tabletop, right?
17     A.  That's -- there is at least one configuration
18 that has a projector that light shines down to create
19 the display upon which the touch-sensitive operations
20 take place.          14:17:09
21     Q.  Okay.  And do you recall that in -- in the
22 SmartSkin system, the scrolling speed increases with the
23 number of fingers in contact with the surface?
24     MS. MAROULIS:  Objection; calls for
25 speculation.          14:17:23

Page 139

1      THE WITNESS:  I think -- yes.  I can't          14:17:30
2  remember; is that Han, or is that -- I think that is
3  SmartSkin; yes, that's true.
4  BY MR. MONACH:
5      Q.  Okay.  So --          14:17:35
6      A.  I think so.
7      MS. MAROULIS:  If you want him to look at the
8  document that you're reading from, you should give it to
9  him.
10     MR. MONACH:  And if I do, I will do that,          14:17:42
11 Counsel.
12     Q.  And so it's not your position that SmartSkin
13 by itself embodies all of the claim limitations of any
14 claim in the '915 patent, is it?
15     A.  My best recollection here, without looking at          14:18:01
16 the claim chart, is that SmartSkin is combined with
17 other elements to -- to meet the -- or to invalidate the
18 '915 asserted claims.  I'm not handy enough with the
19 claim charts, sitting here right now, to remember which
20 claims exactly require combinations.          14:18:23
21     Q.  But testifying here today, are you -- are you
22 contending or are you not contending that SmartSkin
23 anticipates any claim of the '915 patent?
24     A.  Well, I'd have to look -- I'd have to look at
25 my exhibit.  I don't recollect.          14:18:46

Page 140

1      Q.  And by that exhibit, are you referring to          14:18:48
2  Appendix 4?
3      A.  It would be -- I'm sorry.  Appendix 4, yes.
4  That's the confusion about appendices and exhibits.
5          (Whereupon Exhibit 13 marked     14:19:11
6          for identification.)
7      MR. MONACH:  That was marked as number 13; is
8  that right?
9      THE VIDEOGRAPHER:  Correct.
10 BY MR. MONACH:          14:19:20
11     Q.  Mr. Gray, is your Appendix 4, your invalidity
12 claim chart on the Sony SmartSkin system, Deposition
13 Exhibit 13?
14     A.  Appears -- Exhibit 13 to my deposition,
15 Deposition Exhibit 13, does appear to be Appendix 4 to          14:19:43
16 my invalidity report.
17     Q.  So I'd like to direct your attention to what
18 you've called limitation 1B on page 5.  Do you have
19 that, sir?
20     A.  I have -- yes, I have 1B on page 5 of          14:20:31
21 Exhibit 4 in front of me.
22     Q.  It says, "To the extent the SmartSkin system
23 does not disclose creating an event object in response
24 to the user input, data regarding the user input event
25 must be preserved in order for subsequent processing to          14:20:47

Page 141

1  occur.  Therefore, inherently, the SmartSkin system had          14:20:49
2  to store the user input data in an event object or other
3  similar structure."
4      Do you see that?
5      A.  I do.          14:20:59
6      Q.  So are you contending or not contending that
7  SmartSkin anticipates that limitation?
8      A.  My contention is that SmartSkin anticipates
9  the 1B limitation because the event object -- the event
10 inputs would have to be preserved in a -- in an event          14:21:25
11 object or in a similar structure containing the event
12 object.
13     Q.  You're not aware of any evidence that the
14 SmartSkin system, in fact, creates an event object; is
15 that right?          14:21:41
16     A.  Well, the input data would have to be
17 preserved in order for the SmartSkin to perform its
18 functions.  I don't believe -- no, I don't believe -- we
19 did not have -- I did not have access to the source code
20 for it.  So what I've said is that it -- is that it          14:22:04
21 would have to store that information.  Therefore
22 inherently the SmartSkin system would store the -- the
23 input input -- input information or input data in an
24 event object or an event object within a similar
25 structure.          14:22:23

Highly Confidential - Attorneys' Eyes Only

Page 142

1    Q.  Would you look at paragraph 47 of your     14:22:23
2  invalidity report.  Do you have that?
3        MS. MAROULIS:  I'm sorry.  Invalidity or
4  non-infringement?
5        MR. MONACH:  Invalidity.              14:22:49
6        MS. MAROULIS:  You're looking at
7  non-infringement.  Wrong report.
8        THE WITNESS:  Wrong report.  Sorry.
9  BY MR. MONACH:
10    Q.  If the definition of "inherently present" is  14:23:14
11  necessarily present, do you believe that the Sony
12  SmartSkin inherently has an event object?
13    A.  So just -- just to be clear, the paragraph 47
14  says, "inherently that it, i.e., necessarily present or
15  implied."                              14:23:41
16        Given that definition that I have in my --
17  well, that's not what you asked me.
18        If you said that the definition of
19  "inherently" is necessarily present -- well, actually,
20  the answer's the same -- then I believe, yes, that   14:23:52
21  SmartSkin anticipates element 1B of the '915.
22    Q.  All right.  And that's because it must have an
23  event object or other similar structure?
24    A.  It must store the user input data in an event
25  object or an event object within a similar structure,  14:24:16

Page 143

1  yes.                              14:24:20
2    Q.  So --
3    A.  In other words, there's going to be a
4  collection of input data stored in the -- in an
5  object -- a data element, data object that is -- that   14:24:28
6  contains the event information.  It's either
7  freestanding or it's in some similar structure.
8    Q.  Under the picture, figure 12, you quote from
9  SmartSkin.  And you say, "The scrolling speed increases
10  with the number of fingers in contact with the surface."  14:24:52
11  Do you see that?
12    A.  Yes.
13    Q.  So your opinion is that SmartSkin scrolls when
14  there are multiple fingers touching the surface, right?
15    A.  Yes.                          14:25:16
16    Q.  So given that, is it your opinion that
17  SmartSkin does or does not anticipate claim limitation
18  1C, "Determining whether the event object invokes a
19  scroll or gesture operation by distinguishing between a
20  single input point applied to the touch-sensitive     14:25:33
21  display that is interpreted as the scroll and two or
22  more input points applied to the touch-sensitive display
23  that are interpreted as the gesture operation"?
24        MS. MAROULIS:  Objection; vague.
25        THE WITNESS:  Well, I'd have to go back and   14:26:44

Page 144

1  look to see.  The reference above SmartSkin at 117 says  14:26:45
2  that the user can use one finger for panning or two or
3  more fingers for simultaneous panning and scaling.  Then
4  another reference down here says that -- that multiple
5  fingers can control the speed of the scroll by using   14:27:04
6  more than -- multiple -- a number of fingers.  So I'd
7  have to go back and read that or study that again.
8  BY MR. MONACH:
9    Q.  So you have no opinion on whether it meets
10  this claim limitation based on your own claim chart; is  14:27:24
11  that correct?
12    A.  Well, sitting here right now, it seems to me
13  that I'd need to go back and review that.
14    Q.  Okay.  Do you recall the prior art reference
15  that sometimes is called "Yasihuro" and other times   14:27:46
16  "Nomura"?  My guess is his family name is Nomora and the
17  given name is Yasihuro.  But be that as it may, do you
18  recall that reference?
19    A.  I do.
20    Q.  Is it your opinion that Yasihuro discloses   14:28:00
21  each and every limitation of any claim of the '915
22  patent?
23    A.  My best recollection is that Yasihuro is
24  combined with other prior art references for some of the
25  claims.  I don't remember if it -- if it anticipates any  14:28:26

Page 145

1  one claim.  But my recollection is that it does.  I    14:28:34
2  should look at my exhibit or my appendix to make it
3  clear.
4        MR. MONACH:  Why don't you mark as Exhibit 14
5  his Appendix 5.                        14:28:44
6        (Whereupon Exhibit 14 marked
7          for identification.)
8  BY MR. MONACH:
9    Q.  Mr. Gray, is it your understanding that for a
10  prior art reference to "anticipate," that it needs to   14:29:06
11  enable the --
12        MS. MAROULIS:  Can we get a copy of 5.
13  BY MR. MONACH:
14    Q.  -- that it needs to enable the invention to a
15  person of ordinary skill in the art?             14:29:18
16    A.  So refresh my memory on "enablement."  Just
17  give me -- I mean, I can go back and look at my report.
18        MS. MAROULIS:  You can refer to your report.
19        THE WITNESS:  Let me refer to my report.
20  BY MR. MONACH:                        14:29:42
21    Q.  The reason I asked is, in the section on
22  "anticipation," you didn't say anything about
23  enablement.  At page 19 of your report, you describe
24  your understanding of written description and
25  enablement.                          14:30:02

Highly Confidential - Attorneys' Eyes Only

Page 146

1    A.  So with -- again, with the review of my      14:30:22
2   understanding of the -- you know, my legal understanding
3   that's been provided to me by counsel and under which I
4   have performed my analysis -- and, again, the meaning of
5   enablement, being I'm further informed by counsel that a   14:30:34
6   claimed invention must be enabled.  "A claimed invention
7   is not enabled and therefore unpatentable if the
8   specification does not teach those of ordinary skill in
9   the art how to make and use the invention as it is
10  claimed without undue experimentation."                 14:30:54
11      Q.  All right.  So now I want to -- I want you to
12  turn to your legal standard for anticipation in your
13  invalidity report at page 14, paragraphs 46 through 48.
14  You understand, as you say in paragraph 47, that a prior
15  art reference anticipates "if all elements of the claim   14:31:22
16  are disclosed in that prior art reference, either
17  explicitly or inherently."  Do you see that?
18      A.  I do.
19      Q.  In order to anticipate -- in doing your
20  analysis about whether prior art references anticipate   14:31:35
21  claims in Apple's patents or don't, did you understand
22  that the prior art reference had to be enabling of all
23  the limitations of the invention as that term "enabling"
24  or "enablement" was used in your paragraph 70, that
25  would allow a person of ordinary skill to make and use   14:32:01

Page 147

1   the invention as claimed without undue experimentation?   14:32:04
2       MS. MAROULIS:  Objection; calls for legal
3   conclusion.
4       THE WITNESS:  So in the analysis of the prior
5   art, I did apply the standards, as described here in my   14:32:13
6   legal understandings, including anticipation and
7   enablement.  I did apply those.
8   BY MR. MONACH:
9       Q.  Well, you don't -- okay.  You don't mention
10  anything about enablement when you're talking about       14:32:28
11  anticipation.  I think this -- the question can be
12  answered yes or no.  In your analysis of prior art
13  references and you're concluding that they anticipated
14  an Apple invention, was it your understanding that the
15  prior art reference to anticipate had to enable the       14:32:52
16  invention?
17      MS. MAROULIS:  Objection.
18  BY MR. MONACH:
19      Q.  Yes or no?
20      MS. MAROULIS:  Objection; asked and answered.   14:32:58
21  You don't have to answer yes or no; you have to give a
22  truthful response.
23      THE WITNESS:  My -- what I attempted to say
24  was that my analysis of the prior art references did
25  include -- in the context of anticipation -- did include   14:33:12

Page 148

1   an analysis of whether the prior art reference did      14:33:17
2   enable a person of ordinary skill in the art to
3   implement the invention without undue experimentation.
4   I did consider that in my analysis of the prior art
5   reference.                                   14:33:30
6   BY MR. MONACH:
7       Q.  You included that as a -- one of the
8   requirements for "anticipation"?
9       A.  In my analysis.
10      MS. MAROULIS:  Objection; asked and answered.   14:33:38
11  BY MR. MONACH:
12      Q.  Yes?
13      MS. MAROULIS:  And, Counsel, we should take a
14  break.  Is this a good time before you dive into your --
15      MR. MONACH:  Sure.                  14:33:45
16      MS. MAROULIS:  -- next exhibit?
17      MR. MONACH:  Sure.
18      THE VIDEOGRAPHER:  The time is 2:33 p.m.  And
19  we're off the record.
20      (Recess taken from 2:33 p.m. to 2:47 p.m.)   14:33:54
21          (Whereupon Exhibit 15 marked
22              for identification.)
23      THE VIDEOGRAPHER:  The time is 2:47 p.m.  And
24  we're back on the record.
25  BY MR. MONACH:                          14:47:02

Page 149

1       Q.  Mr. Gray, do you have Deposition Exhibit 15 in   14:47:03
2   front of you, the '163 patent?
3       A.  Yes, I do.
4       Q.  All right.  I'd like to direct your attention
5   to the claims at the end of the patent.  Let's use       14:47:15
6   independent Claim 50.  Would you agree that all of the
7   Samsung accused devices are portable electronic devices
8   comprising a touch screen display, one or more
9   processors, memory, and one or more programs wherein one
10  or more programs are stored in memory and configured to   14:47:45
11  be executed by the one or more processors"?
12      MS. MAROULIS:  Objection; calls for legal
13  conclusion.  Compound.
14      THE WITNESS:  I believe that sitting here
15  today, yes, my understanding of the accused Samsung       14:48:09
16  products are portable electronic devices with the
17  touch-sensitive display, one or more processors memory,
18  and one or more programs that are stored in the memory
19  and configured to be executed by the one or more
20  processors.                                 14:48:28
21  BY MR. MONACH:
22      Q.  All right.  What accused products did you
23  examine in connection with your non-infringement report
24  of the '163 patent?
25      MS. MAROULIS:  Objection; vague.          14:48:51

Highly Confidential - Attorneys' Eyes Only

Page 150

1    THE WITNESS:  I believe the -- I mean, I have    14:48:57
2    observed -- or I have analyzed several of the products.
3    I'm trying to think specifically in the context of the
4    '163.
5    Sitting here right now, it's hard for me to    14:49:17
6    distinguish what I have analyzed exclusively in the '163
7    or exclusively in the '915.  I think I'm more
8    comfortable with the idea that I've analyzed numerous
9    products that -- and both of them analyzed in the
10   context of the -- of the '915 and the '163.    14:49:32
11   BY MR. MONACH:
12   Q.  In Claim 50, to continue beyond the part we
13   discussed earlier, the next limitation says,
14   "instructions for displaying at least a portion of a
15   structured electronic document on the touch screen    14:49:54
16   display."
17   In your analysis of the '163 patent, how did
18   you interpret structured electronic document"?
19   A.  So in my -- I'm going to -- I have a good
20   definition in here, in my report.    14:50:20
21   Well, I mean, I'll -- I can find it.  It's --
22   basically it's a -- a structured electronic document is
23   a document -- two dimensional information space that has
24   content and structure commingled.  The structure
25   provides or adds meaning to the -- to the content.  And    14:50:55

Page 151

1    let me -- if you'd like, I'll -- I can get the --    14:51:01
2    MS. MAROULIS:  Your discussion of '163 starts
3    on page 77.
4    THE WITNESS:  So if you don't mind, I'm going
5    to read it into the record.    14:51:29
6    "As understood" -- this is on page 78 of my
7    invalidity report in paragraph 274, starting at line 12.
8    "As understood by those in the art, a structured
9    electronic document refers to any type of
10   two-dimensional information space containing embedded    14:51:49
11   coding that provides some meaning or structure to the
12   document."
13   BY MR. MONACH:
14   Q.  "Embedded coding" refers to coding that is in
15   the electronic document itself; is that right?    14:52:20
16   A.  That's correct.  Data elements that are within
17   the document that -- that are -- that comprise the
18   structure.
19   Q.  All right.  Is a Web page an example of a
20   structured electronic document as that term is used in    14:52:43
21   the '163 patent?
22   A.  Well, in HTML -- a document expressed in HTML,
23   which is the language that is used to display -- create
24   a Web page -- excuse me -- which is the language that is
25   used to contain the data in the control information in    14:53:07

Page 152

1    order to allow a browser to display a Web page.  The    14:53:16
2    HTML is an example of a structured electronic document.
3    Web page itself is a rendering of that HTML
4    file onto a display space, presentation space.
5    Q.  All right.  And are there various tags in HTML    14:53:37
6    documents that are used to define the structure of that
7    document?
8    A.  Yes.  There are tags that are -- that are --
9    that surround the content that provide the meaning or
10   the structure to the document.    14:54:01
11   Q.  What are some --
12   A.  There are tags -- let me -- actually, I want
13   to finish that.  I did pause.  Not your fault.
14   So -- so the tags are of two kinds.  Some tags
15   are -- are simply tags that are used for the manner --    14:54:16
16   to describe the manner in which the page would be
17   displayed.  Other tags are informational.  Some are
18   both.
19   Q.  What are some examples of tags that are used
20   in HTML documents?    14:54:36
21   A.  An easy one to think about is the header.  The
22   H1 tag.  So an H1 says -- tells the -- is contained in
23   the HTML page.  It surrounds a set of content and is
24   used to identify a heading in a particular document.
25   The heading then is understood by the rendering    14:55:00

Page 153

1    entity -- the browser, for example -- to then be    14:55:05
2    displayed on the presentation space in some form, maybe
3    in 14-point Helvetica font.  But the V1 is a good
4    example of a tag.
5    Q.  What's a body tag in HTML?    14:55:26
6    A.  The -- in HTML the documents -- the body tag
7    actually contains -- surrounds the HTML content and
8    structure information for the body of the HTML document.
9    Q.  And how is that used for the browser by
10   displaying the HTML page?    14:55:48
11   A.  It indicates to the browser where to find
12   information which is to be displayed.  The commencement
13   of that information to be displayed.
14   Q.  What's a DIV tag?  D-I-V?
15   A.  DIV tag.  The DIV tag simply surrounds content    14:56:04
16   and is used to delineate content for a particular
17   processing purpose.
18   Q.  Such as?
19   A.  A script application might look for a
20   particular DIV tag to do some sort of special processing    14:56:27
21   to the text that's within a -- between DIV tags.
22   Q.  Do -- are tags used to direct, in some way,
23   how the browser will lay out different elements of a Web
24   page?
25   MS. MAROULIS:  Objection; vague.    14:56:51

Highly Confidential - Attorneys' Eyes Only

## Page 154

1    THE WITNESS:  The tags can be used to inform    14:56:54
2  the browser as to what the author's intent was with
3  respect to the way a particular HTML file will be
4  rendered into the presentation space creating a Web
5  page. So it conveys -- the tags convey the author's    14:57:09
6  intent.
7        The browser interprets those tags and to
8  create the pages that are then displayed on the
9  presentation space.
10  BY MR. MONACH:                              14:57:22
11    Q.  What is a cascading style sheet?
12    A.  So style sheets give meaning to the tags,
13  which are used for display purposes by a browser.  So
14  that -- we -- I mentioned a few moments ago that H1 tag
15  talks about a top-level header.  The style sheet will    14:57:55
16  explain what H1 means to the browser.  So I mentioned an
17  example of 14-point Helvetica.  A different style sheet
18  may say that the header -- the heading, H1, is a -- is
19  20-point Times Roman.  So the style sheet provides
20  information to the browser with respect to rendering an    14:58:24
21  HTML page.
22        A cascading style sheet -- cascading style
23  sheet is one where -- where it resolves overlapping or
24  potentially conflicting instructions that were to be
25  applied to the HTML page and it essentially enforces a    14:58:44

## Page 155

1  set of rules which are used to determine how, if there    14:58:50
2  are conflicting instructions, as to how to display
3  something or handle it that which of the rules will
4  prevail.
5    Q.  Are there other HTML elements such as images,    14:59:02
6  headings, text?
7    A.  Yes, there are other tags in HTML which
8  provide for the definition of images, headings, as we've
9  talked about, areas where script can be executed,
10  programs within the -- you know, small programs within    14:59:25
11  the HTML file.  So there are lots of -- there are
12  numerous tags, all of which are used in the processing
13  of the HTML documents.
14    Q.  All right.  And can those other tags or HTML
15  elements like images, headings, and text be grouped    14:59:45
16  within a DIV tag?
17    A.  Yes.  As I mentioned, the DIV tag delineates
18  certain portions of an HTML file for processing
19  purposes.
20    Q.  And does the grouping of tags like headlines    15:00:11
21  and images and text within a DIV tag have to be visible
22  by some -- delineated by some specific border on the
23  screen that's visible to the user?
24        MS. MAROULIS:  Objection; vague.
25        MR. MONACH:  I'll rephrase it.    15:00:36

## Page 156

1  BY MR. MONACH:                              15:00:37
2    Q.  So does there have to be any precise visible
3  boundary drawn on the screen to indicate the logical
4  grouping of tags within a DIV tag?
5    A.  No.  There are -- there is no obligation on --    15:01:00
6  there's no requirement on the part of a browser to take
7  information -- data, including tags and content -- that
8  is delineated by a set of DIV tags.  And there's no
9  obligation on the part of the browser to render that
10  page with some visible delineation -- there's no    15:01:24
11  obligation in a page just generally.  DIV tags can be
12  used in a variety of different ways.  Oftentimes that
13  happens, but there's no obligation.
14    Q.  All right.  In the context of the '915
15  patent -- and let's just stay with -- I'm sorry -- '163    15:01:52
16  patent.  Thank you.  '163 patent.  Let's stick with
17  Claim 50.  The next phrase says, "wherein the structured
18  electronic document comprises a plurality of boxes of
19  content."
20        Sticking with our context -- our context of an    15:02:14
21  HTML document that could be displayed on a Web browser,
22  what do you understand a "box of content" to be?
23    A.  So in my -- when I read -- read the patent,
24  it -- the way I read it is that this box of content
25  that -- these boxes of content which comprise the    15:02:44

## Page 157

1  structured electronic document are -- are collections of    15:02:47
2  images, text, other hypertext links, a variety of things
3  that are delineated and rendered with some distinct,
4  distinct boundary around them.  In other words, they're
5  visibly separable from other boxes.  So box A and box B    15:03:09
6  have different delineated boundaries.  If there are --
7  in a document that only has box A and box B.
8    Q.  What do you mean by a "delineated boundary"?
9  Can white space between two blocks of text or between a
10  block of text and an image meet your understanding of a    15:03:36
11  box of content?
12    A.  So in my view, if the -- yes, if -- I think I
13  understand your question.  In my view, white space could
14  provide that delineation, that delineation between boxes
15  of content.  Preferable delineation would be some sort    15:03:57
16  of a line, right, or something that specifically
17  identifies it.  But I can imagine a document where white
18  space could be -- could be the delineation.
19    Q.  What about the author's logical grouping of
20  tags, for example, a DIV tag, DIV tag 1 versus DIV tag    15:04:19
21  2, each of which contains information?  Would -- could a
22  box of content in a structured electronic document in
23  the '163 patent refer to that?
24        MS. MAROULIS:  Objection; calls for legal
25  conclusion.    15:04:44

Highly Confidential - Attorneys' Eyes Only

## Page 158

1   THE WITNESS: So the DIV tags by themselves do   15:04:49
2   not necessarily yield an electronic -- a structured
3   electronic document presentation that would provide the
4   physical boundary or the delineation between the boxes.
5   It doesn't have to. The DIV tag boundaries could be   15:05:06
6   used by a browser to separate to control, to allow for
7   boxes of content, but it isn't a -- it isn't a
8   requirement of the DIV tags, it's a requirement of how
9   the DIV tags are applied.
10  BY MR. MONACH:
11      Q.  So would you agree or disagree that an   15:05:35
12  author's grouping of HTML content in different areas
13  could constitute a box of content for purposes of the
14  '163 patent?
15      A.  I think I followed.  Would you mind repeating?   15:06:03
16      Q.  I'll re- -- it wasn't a very good question.
17  Let me rephrase it.
18      Does the box of content in the '163 patent
19  require a visible separation of one box from another on
20  the screen, or could it refer to a logical separation   15:06:35
21  contained in the underlying code of the structured
22  electronic document that doesn't necessarily show up as
23  distinct visible areas on the screen?
24      MS. MAROULIS: Objection; calls for legal
25  conclusion.  Incomplete hypothetical.   15:07:01

## Page 159

1   THE WITNESS: I don't -- sitting here right   15:07:25
2   now, my opinion is in the context of the '163 patent,
3   the DIV tag controls do not have to yield a
4   structured -- the presentation of an HTML document where
5   the individual DIV contained content elements are   15:07:45
6   separated visibly on the rendered Web page.  It doesn't
7   have to be -- doesn't have to be that way.
8   BY MR. MONACH:
9       Q.  I'm not sure you answered my question, so let
10  me try again.   15:08:10
11      A.  Frankly, I'm not sure either.
12      Q.  You've talked -- we've already talked about a
13  couple of different understandings of yours of what a
14  box of content could be, one that is visibly delineated
15  with a boundary line; another one that's visibly   15:08:27
16  delineated, for example, by spacing of two areas on the
17  screen.
18      And my question is under the '163 patent, does
19  a box of content require that it be -- that the box be
20  visibly segregated from -- or separated from other   15:08:51
21  boxes, or could a box of content be separated from other
22  boxes of content by the logical construction of the Web
23  page?
24      MS. MAROULIS: Objection; compound.  Calls for
25  legal conclusion.   15:09:07

## Page 160

1   THE WITNESS: I think that the boxes of   15:09:15
2   content in the '163 patent, which are selectable, need
3   to be delineated visibly in order for the -- for the
4   selection to take place.  So in my view, the -- the
5   delineation, the visible delineation is a requirement in   15:09:39
6   order -- for the boxes in the -- that are referred to in
7   the '163 patent.
8   BY MR. MONACH:
9       Q.  The patent goes on to say -- well, let me back
10  up a second.   15:10:00
11      Do the accused devices that you looked at have
12  the ability to display at least a portion of a
13  structured electronic document on the touch screen
14  display?
15      MS. MAROULIS: Objection; calls for a legal   15:10:21
16  conclusion.
17      THE WITNESS: The devices that -- that I
18  looked at, the accused devices that I looked at, I think
19  all -- yeah, all had the ability to display at least a
20  portion of a structured electronic document on a   15:10:37
21  display.
22  BY MR. MONACH:
23      Q.  Did they have the ability to display at least
24  a portion of a structured electronic document on the
25  touch screen display wherein the structured electronic   15:10:48

## Page 161

1   document comprised a plurality of boxes of content?   15:10:51
2       MS. MAROULIS: Objection; calls for legal
3   conclusion.
4       THE WITNESS: The accused devices that I
5   analyzed had the ability to display structured   15:11:04
6   electronic document divided into boxes which were
7   visibly separated on the display of the device, yes.
8   BY MR. MONACH:
9       Q.  Okay.  Did the accused products that you
10  examined have the ability to detect a first-finger   15:11:32
11  gesture at a location on the displayed portion of the
12  structured electronic document?
13      MS. MAROULIS: Objection; calls for a legal
14  conclusion.
15      THE WITNESS: Are we -- I'm sorry.  Are we   15:11:51
16  on -- can you read the question again?
17      MR. MONACH: Yeah.
18  BY MR. MONACH:
19      Q.  Did the Samsung accused products that you
20  examined have the ability to detect a first gesture at a   15:12:00
21  location on the displayed portion of the structured
22  electronic document, as recited in Claim 50?
23      MS. MAROULIS: Same objection.
24      THE WITNESS: Well, there is a -- so it --
25  it -- I guess the question is: What is the -- you know,   15:12:23

Highly Confidential - Attorneys' Eyes Only

Page 162

1    the boxes -- what the claim language says is,        15:12:29
2    "Instructions for detecting a first gesture at a
3    location on the displayed portion of the structured
4    electronic document."
5        I think in the -- within the -- within Claim     15:12:41
6    50 it did have the ability to detect a first gesture at
7    a location on a displayed portion of a structured
8    electronic document.  However, there's a -- there's an
9    issue that I want to kind of go back to.  That's why I
10   wanted you to reread the question.                   15:13:00
11       In the previous limitation, the limitation
12   says, "instructions for displaying at least a portion of
13   a structured electronic document on a touch screen
14   display wherein the structured electronic document
15   comprises a plurality of boxes of content."  I guess we  15:13:14
16   did talk about that, sorry.
17       Q.  Right.
18       A.  I took us back to 19.
19       Q.  So moving on to the next limitation of Claim
20   50.  Did -- in these -- in the situations where the  15:13:28
21   Samsung-accused products were displaying at least a
22   portion of a structured electronic document with a
23   plurality of boxes of content that were, in your view,
24   visibly distinct from one another, did those devices
25   have the ability to determine a first box of this     15:13:53

Page 163

1    plurality of boxes at the location of the first gesture?  15:13:59
2        MS. MAROULIS:  Objection; calls for legal
3    conclusion.  Compound.
4        THE WITNESS:  So this one gets a little -- a
5    little interesting.  Plurality.  When I read "plurality  15:14:15
6    of boxes" at the first -- at the same location -- let me
7    just read it.  "Instructions for determining a first box
8    in the plurality of boxes at the location of a first
9    gesture."
10       When I read that, what always occurs to me is    15:14:37
11   a collection of boxes which are all coincident at the
12   point of selection on the display.  Is it needs -- in
13   other words, in order to meet this limitation -- in
14   fact, I think in my report I talk about -- about the
15   nested boxes problem.  I have box A.  Within box A is  15:14:59
16   box B.  Within box B is box C.  And I select the middle
17   of box C.  That's what this -- what this particular
18   first gesture has to resolve.  How do I know which of
19   the boxes that are in a plurality -- that are a
20   plurality of boxes in that exact location?            15:15:20
21   BY MR. MONACH:
22       Q.  Okay.  What --
23       A.  I don't --
24       Q.  Sorry.
25       A.  I just wanted to finish.                      15:15:26

Page 164

1        I don't know if the devices that I examined     15:15:28
2    have the ability to select a first box in a plurality of
3    boxes at the location of the first gesture --
4        Q.  Is --
5        A.  -- in the model I just gave.  That's what I  15:15:40
6    was trying to do.
7        Q.  Well, is it your understanding -- you've done
8    lots of patented cases as a litigation consultant and
9    expert witness, right? --
10       A.  There's lots -- yeah, I've done -- I've done  15:15:54
11   my share.
12       Q.  And is it your understanding that in
13   interpreting the meaning of a patent, one of the things
14   you should do is interpret it in light of the
15   specification and the preferred embodiments that are  15:16:04
16   shown in the specification?
17       MS. MAROULIS:  Objection; calls for legal
18   conclusion.
19       THE WITNESS:  Well --
20   BY MR. MONACH:                                        15:16:12
21       Q.  Is that your understanding, sir?
22       A.  My understanding is that the specification can
23   provide light on the claims.  But the claims is what
24   the -- is what the property is.
25       Q.  Okay.  If you look at figure 5(a) of the '163  15:16:20

Page 165

1    patent that's depicting a plurality of boxes of content  15:16:25
2    shown on a display -- boxes of content of a structured
3    electronic document, right?
4        A.  Um --
5        MS. MAROULIS:  Objection; document speaks for    15:16:49
6    itself.
7        THE WITNESS:  I -- yes, I will accept your
8    assertion that this is -- this is a structured
9    electronic document that has a series of what they refer
10   to as "blocks" but they appear to be boxes of content.  15:17:01
11   BY MR. MONACH:
12       Q.  You understand the blocks in figure 5(a) and
13   the boxes in the claim to be talking about the same
14   thing; is that right?
15       MS. MAROULIS:  Objection --                       15:17:11
16       THE WITNESS:  Well, this --
17       MS. MAROULIS:  -- document speaks for itself.
18       THE WITNESS:  Certainly this is an -- this is
19   one which would -- this is an example of a document for
20   which the claim applies.                              15:17:24
21   BY MR. MONACH:
22       Q.  All right.  And this shows a plurality of
23   boxes of content arranged adjacent to one another with
24   some delineation amongst the different boxes, right?
25       MS. MAROULIS:  Objection; document speaks for    15:17:40

Highly Confidential - Attorneys' Eyes Only

Page 166

1  itself.                                    15:17:42
2        THE WITNESS: There are, it looks like, eight
3  boxes in the middle of this figure 5(a), all of which
4  appear to be content which is delineated by lines and,
5  in some cases, by white space.            15:17:58
6  BY MR. MONACH:
7     Q. All right. And do you see any boxes or blocks
8  of content in figure 5(a) that -- where one box is
9  nested inside another box, is nested inside a third box?
10    A. No, I don't -- in figure 5(a), I don't see an  15:18:16
11 example of my nested -- my nested boxes example.
12 However, Claim 50 requires that the portable electronic
13 device contain instructions for determining a first box
14 in the plurality of boxes at the location of the first
15 gesture. My only --                      15:18:45
16    Q. Isn't --
17    A. My -- let me just finish. My only point is
18 the selection of block 5, for example, on figure 5(a) is
19 not an instruction for determining a first box in the
20 plurality of boxes at the location of the first gesture  15:19:02
21 because there's not a plurality of boxes at the first
22 location.
23    Q. Well --
24    A. There's one box.
25    Q. -- there's a plurality of boxes on the touch  15:19:11

Page 167

1  screen, right, in figure 5(a)?             15:19:13
2        MS. MAROULIS: Objection; vague.
3        THE WITNESS: There are eight blocks, at least
4  that are referred to -- that I think we can agree, at
5  least for the purposes of this conversation, are  15:19:26
6  intended to be the boxes.
7  BY MR. MONACH:
8     Q. The plurality of boxes?
9     A. There are plurality of boxes. But can I --
10    Q. And then isn't what this claim --     15:19:33
11       MS. MAROULIS: You're interrupting the witness
12 again, sir --
13       MR. MONACH: No, I'm not.
14       MS. MAROULIS: -- please let him finish. You
15 need to --                                 15:19:38
16       MR. MONACH: Please stop interrupting me.
17 BY MR. MONACH:
18    Q. And isn't what this claim limitation is saying
19 is at the location of the first gesture where there are
20 a plurality of boxes, you're determining which of the  15:19:46
21 plurality of boxes were touched?
22       MS. MAROULIS: Mr. Gray, did you finish your
23 previous answer or do you need to supplement your
24 previous answer?
25       THE WITNESS: I think -- thank you. I think I  15:19:59

Page 168

1  can answer the -- I can answer it from here on.  15:20:00
2        MS. MAROULIS: Go ahead and please take your
3  time to answer exactly how you'd like to.
4        THE WITNESS: In -- let's assume for the
5  moment that dotted box 3923 on figure 5(a) is a touch.  15:20:09
6  BY MR. MONACH:
7     Q. I don't think I need to assume it; I think
8  it's described in the specification, right?
9     A. I think it's described as such.
10    Q. All right.                           15:20:25
11    A. There are not a plurality of boxes at 3923;
12 there's only one box at 3923. So my point is, is that
13 the claim in Claim 50 says, "The instructions for
14 determining a first box in the plurality of boxes at the
15 location of the first gesture"; there isn't a plurality  15:20:42
16 of boxes at block 5 in the circle identified as 3923.
17 There is a plurality of boxes on -- in figure 5(a). But
18 the -- but block 5 is a single box. It is not a
19 plurality of boxes at the location. That's my only
20 point.                                     15:21:04
21    Q. Isn't the purpose -- reading on to the next
22 limitation -- of determining the first box is so that
23 the system knows which of the box -- which of the boxes
24 on the screen should be enlarged and translated?
25       MS. MAROULIS: Objection; calls for  15:21:24

Page 169

1  speculation.                               15:21:24
2        THE WITNESS: So we sort of got into in --
3  into this by you asking me whether or not the Samsung
4  devices that I had analyzed performed the steps -- the
5  step, rather -- of determining a first box in a  15:21:43
6  plurality of boxes at a location of a first gesture. It
7  was that I said I couldn't determine that the accused
8  Samsung devices could do such a thing.
9        However, having said that, assuming that a --
10 that within a plurality of boxes at a first location  15:22:01
11 that the machine can distinguish between those boxes,
12 the next step -- the purpose for distinguishing between
13 those boxes is to enlarge and translate the structured
14 electronic document so that it is substantially centered
15 on the touch screen display. That is the purpose of  15:22:18
16 that step.
17       MR. MONACH: We need to change the tape.
18       THE VIDEOGRAPHER: This marks the end of disk
19 3 in the deposition of Stephen Gray. The time is
20 3:22 p.m. And we're off the record.        15:22:30
21       (Recess taken from 3:22 p.m. to 3:34 p.m.)
22       THE VIDEOGRAPHER: This marks the beginning of
23 disk 4 in the deposition of Stephen Gray. The time is
24 3:34 p.m. And we are back on the record.
25 BY MR. MONACH:                             15:33:59

Highly Confidential - Attorneys' Eyes Only

Page 170

1    Q.  Mr. Gray, is your non-infringement opinion on   15:33:59
2  the '163 patent based in part upon your belief that
3  figure 5(a) does not show determining a first box in the
4  plurality of boxes at the location of the first gesture?
5         MS. MAROULIS:  Objection; vague.         15:34:26
6         THE WITNESS:  I think I would say that
7  non-infringement opinion is based in part on the fact
8  that I don't -- I can't -- I don't believe that the
9  Samsung devices can discriminate between a bunch of -- a
10  series of boxes that are all at the same location.   15:34:50
11  Figure 5 doesn't -- doesn't provide any light on the
12  claimed element that you're talking about.  In other
13  words, figure 5 doesn't show the example that I'm
14  referring to with the nested boxes.
15  BY MR. MONACH:                          15:35:05
16    Q.  Right.  And your conclusion, even though
17  figure 5 doesn't show the nested boxes, is that Claim 50
18  requires that there be a determination among nested
19  boxes; is that right?
20         MS. MAROULIS:  Objection; assumes facts.   15:35:17
21  Asked and answered.
22         THE WITNESS:  I believe the plain language --
23  I mean, the language in 50 says, yeah, that it needs to
24  be determining a first box in the plurality of boxes at
25  the location of the first gesture.  I -- I think that's   15:35:32

Page 171

1  in the claim.                           15:35:35
2  BY MR. MONACH:
3    Q.  And that that requires nested boxes as opposed
4  to determining among boxes that are adjacent to one
5  another?                               15:35:44
6         MS. MAROULIS:  Objection; asked and answered.
7         THE WITNESS:  I believe, as a non-infringement
8  argument, yes, that I'm making -- that I'm making that
9  argument, yes.
10  BY MR. MONACH:                          15:35:54
11    Q.  Could you turn to column 19 of the '163 patent
12  beginning -- could you read lines 15 and 16 of column 19
13  into the record, please.
14    A.  "A first box in the plurality of boxes" --
15  excuse me.  Let me start over.           15:36:17
16         "A first box (e.g., Block 5 3914-5, Figure 5A)
17  in the plurality of boxes is determined at the location
18  of the first gesture."
19    Q.  So isn't that -- isn't that saying, sir, right
20  in the patent, that determining a first box in the   15:36:35
21  plurality of boxes at the location of the first gesture
22  includes what's shown in figure 5A; namely, touching a
23  first -- touching a box that is not nested with other
24  boxes?
25         MS. MAROULIS:  Objection; vague.         15:37:00

Page 172

1         THE WITNESS:  So there's two things.  The   15:37:04
2  first -- two things that I'd say.  First, the column 19
3  and the lines you asked me to read are an embodiment.
4  Claim 50 is -- is the claim.  I don't -- my
5  understanding is that you can't read what's in the   15:37:21
6  embodiment into the claims.  And so, yes, that they're
7  talking about an embodiment where a first box in the
8  plurality of boxes as shown in figure 5 is performed by
9  them.  But the claim language says something more than
10  that.                                 15:37:42
11  BY MR. MONACH:
12    Q.  But the column 19, lines 15 and 16 that you
13  just read into the record, uses the same language that's
14  in the claim, right?
15         MS. MAROULIS:  Objection.  Please take your   15:37:53
16  time to read the portion of the specification.
17         Counselor, you're rushing the witness.  You're
18  pressuring him to answer sooner than he is ready.
19  Please don't do that.
20         THE WITNESS:  There is overlap -- I mean, I   15:38:06
21  think -- there's overlap between the two -- the
22  languages, it's not exactly the same.  There's overlap
23  between the two pieces of language.  But, again, my -- I
24  go back to the claim itself.  And the claim has this --
25  has this slightly different language which is talking   15:38:39

Page 173

1  about a plurality of boxes at the location of the first   15:38:41
2  gesture.  And 19 is talking about a first box in the
3  plurality of boxes, right?  They're not the plurality of
4  boxes at the first location.  It says -- 19 -- in column
5  19 it says, "A first box in the plurality of boxes is   15:38:59
6  determined at the location of the first gesture."
7  That's different than saying, as it does in Claim 50,
8  that instructions for determining a first box in the
9  plurality of the boxes at the location of the first
10  gesture.  They're slightly different.  So one's an   15:39:19
11  embodiment.  And the other, the claim, is more specific.
12  That -- I think that's the difference I'm trying to
13  point out.
14  BY MR. MONACH:
15    Q.  In light of the fact that the example in   15:39:32
16  figure 5 is described as the patent has a first box in
17  the plurality of boxes is determined at the location of
18  the first gesture, is it reasonable to construe Claim 50
19  when it says detecting a first -- determining a first
20  box in the plurality of boxes at the location of the   15:39:52
21  first gesture means when there are multiple boxes on the
22  screen, the system determines from the plurality of
23  boxes on the screen which box is at the location of the
24  first gesture?
25         MS. MAROULIS:  Objection; vague and confusing.   15:40:12

Highly Confidential - Attorneys' Eyes Only

---

Page 174

1    THE WITNESS:  The claim talks about boxes at   15:40:21
2  the same location.  The claim says, "Instructions for
3  determining a first box in the plurality of the boxes at
4  the location of the first gesture."  It is
5  specifically -- in the way I read the claim, being more   15:40:35
6  forceful about that than, I mean -- it seems to me that
7  that's saying there's a plurality of boxes at the
8  location of the first gesture.  I -- this isn't -- we're
9  not back to two touch points; it's a single touch point,
10  and it's saying that there's a plurality of boxes at   15:40:54
11  that specific location, not as in claim 5 or in column
12  19, which talks about a plurality of boxes that allows
13  me to select one.
14  BY MR. MONACH:
15    Q.  Isn't the plurality of boxes that's referred   15:41:06
16  to in this location the same plurality of boxes of
17  content that are displayed on a portion of structure --
18  displayed on the screen --
19    MS. MAROULIS:  Objection --
20  BY MR. MONACH:   15:41:19
21    Q.  -- in the earlier limitation?
22    MS. MAROULIS:  Objection; vague.
23    THE WITNESS:  The plur-- are you referring
24  to the plurality -- excuse me -- the plurality of boxes
25  in the claim?   15:41:29

---

Page 175

1  BY MR. MONACH:   15:41:30
2    Q.  In claim -- at an earlier limitation in Claim
3  50, it says you're "displaying at least a portion of a
4  structured electronic document on the touch screen where
5  it comprises a plurality of boxes of content."  Isn't   15:41:41
6  the plurality of boxes in -- later in the claim, that we
7  were just discussing, simply referring to that
8  structured electronic document that has a plurality of
9  boxes of content?
10    MS. MAROULIS:  Objection; vague.   15:41:57
11  BY MR. MONACH:
12    Q.  And the location of the first -- determining a
13  first box at the location of the first gesture is simply
14  that -- what box -- what box is it where I've touched?
15    A.  In the claim the instructions for displaying   15:42:16
16  at least a portion of a structured electronic document
17  wherein the structured electronic document comprises a
18  plurality of box -- boxes could be the case, as is
19  illustrated in figure 5A.  It could also be the case of
20  the nested boxes that I'm referring to.  Both of those   15:42:36
21  configurations of boxes meet the limitation of
22  structured electronic documents comprising a plurality
23  of boxes of content.
24    The description of the structured electronic
25  document comprises -- comprising a plurality of boxes   15:42:52

---

Page 176

1  does not describe how the boxes are configured.  5A   15:42:55
2  configures them in separate -- as separate boxes.  The
3  model -- the claim language seems to be talking about a
4  plurality of boxes at a single location.  In order to
5  have a plurality of boxes at a single location, I   15:43:15
6  suppose one could have them butted up against one
7  another or could have them nested in one another.  All
8  of those configurations of boxes meet the limitation of
9  a structured electronic document comprising a plurality
10  of boxes of content.   15:43:34
11    Q.  Given that the only embodiment in the patent
12  shows adjacent boxes and doesn't show any nested
13  boxes -- let me stop there.  Do you agree with that,
14  that the -- the only embodiments in the patent show
15  adjacent boxes of content and there's not a single   15:43:56
16  mention of nested boxes of content?
17    MS. MAROULIS:  Please take your time to review
18  the specifications, the figures that you need to.
19    THE WITNESS:  So would you agree with me that
20  figure 5B -- I got to think of your question -- figure   15:44:34
21  5B shows a keyboard.  And for the sake of discussion,
22  QWERTY are each content within a box.  What would
23  happen -- the edge case that seems to be what the claim
24  language pertains to is if someone selected the space
25  directly between Q and W, that the patent requires that   15:45:04

---

Page 177

1  the -- Claim 50 -- requires that the portable electronic   15:45:09
2  device determine the first box in the plurality of boxes
3  at that location between Q and W.  So there is -- well,
4  there is an example --
5  BY MR. MONACH:   15:45:31
6    Q.  And then enlarges and centers.  Is there any
7  example in the patent showing that if you touch between
8  two keys on a keyboard, that the purpose of this patent
9  and the purposes of this invention is to then enlarge
10  and center one of the keys on the virtual keyboard?   15:45:41
11    MS. MAROULIS:  Mr. Gray, did you finish your
12  previous answer?  You seemed like you were still talking
13  when counsel cut you off.
14    THE WITNESS:  I don't know if I finished it,
15  but I forgot what I was going to finish.   15:45:51
16    MS. MAROULIS:  All right.  Counselor, I really
17  ask you to stop cutting the witness off.
18    MR. MONACH:  I didn't.
19    MS. MAROULIS:  It's very important that you
20  not --   15:45:58
21    MR. MONACH:  I did not cut him off.  He
22  stopped and I posed a question to him.
23    MS. MAROULIS:  The video will show that.
24    MR. MONACH:  It absolutely will.
25    MS. MAROULIS:  Please give him time to finish.   15:46:06

---

Highly Confidential - Attorneys' Eyes Only

Page 178

1  You can ask the questions then after.          15:46:07
2      Could you please read the question again,
3  court reporter.  Thank you.
4      (Record read.)
5  BY MR. MONACH:                                  15:46:46
6    Q.  Could you answer that question, please, sir?
7    A.  The part of the question that I didn't answer
8  was -- was the nested -- nested boxes.  And if -- if you
9  like, I can walk through the specification to try to
10 find any reference to nested boxes.  But I -- is that   15:46:58
11 what you want me to do?
12   Q.  No.  I want you to answer the question.
13     Are you aware of any examples of nested boxes
14 in the '163 specification or figures?
15   A.  I understand your question now.  And, no, I'm  15:47:12
16 not aware of any reference to nested boxes in the
17 specification.  The only place that I can see where
18 we're talking about the potential for nested boxes or
19 boxes that are adjacent to one another without
20 delineation is in the claim language, which is         15:47:27
21 instructions for determining a first box in the
22 plurality of boxes at the location of the first gesture.
23 That's the only place I can see it.
24   Q.  Would your interpretation that you've given of
25 Claim 50 for determining a first box in the plurality of  15:47:44

Page 179

1  boxes at the location of the first gesture exclude the   15:47:48
2  embodiment shown in figure 5 of the patent?
3      MS. MAROULIS: Objection; calls for legal
4  conclusion.
5      THE WITNESS:  In the case where the plurality  15:48:17
6  of boxes were not configured in such a manner where --
7  that there -- where there were multiple boxes at the
8  first -- at the location of the first gesture, then
9  discriminating between -- making a selection of a box as
10 in selecting box 5 in figure 5A, that would be fine.  I  15:48:34
11 mean, in other words, the language of the claim does not
12 preclude a configuration of boxes such as that seen in
13 figure 5A.
14 BY MR. MONACH:
15   Q.  Okay.  So is it now your opinion that if --    15:48:52
16 that touching box 5 or block 5 as shown in figure 5
17 where it's not overlapping or nested and that -- the
18 system that identifies block 5 has been touched, I'm
19 going to enlarge and substantially center it, is it your
20 belief that that behavior and instructions for that     15:49:19
21 behavior are covered by those limitations in Claim 50?
22     MS. MAROULIS: Objection; incomplete
23 hypothetical.
24     THE WITNESS:  I don't think that the only
25 configuration of boxes to which Claim 50, the limitation  15:49:39

Page 180

1  regarding selection at a location is exclusively       15:49:43
2  regarding nested boxes or adjacent boxes, that it also
3  covers -- it could also be used to cover configuration
4  of boxes which aren't overlapped or nested.
5  BY MR. MONACH:
6    Q.  Okay.  With that understanding, do the          15:50:01
7  Samsung-accused products detect a -- determine a first
8  box in the plurality of boxes at the location of the
9  first gesture and enlarge and translate the first box?
10     MS. MAROULIS: Objection; compound. Calls for  15:50:33
11 legal conclusion.
12     THE WITNESS:  What I have observed in the
13 Samsung devices that I have analyzed is the ability
14 by -- at least some of them, I think all of them -- to
15 allow for the selection of a box in a configuration of  15:50:51
16 boxes that is comparable -- comparable to the
17 configuration of boxes on 5A and then -- and -- in
18 figure 5A on the patent.
19     And then based upon a first gesture that
20 provides for the selection of that box to then enlarge  15:51:13
21 and translate that box so that the first box -- so that
22 the first box -- I've observed it where the first box is
23 substantially centered.  I've observed it where the
24 first box isn't substantially centered.  So -- and by
25 the way, I'm not quite sure what "substantially          15:51:38

Page 181

1  centered" means, but I presume we'll get there.        15:51:40
2  BY MR. MONACH:
3    Q.  But you at least concluded that in some cases
4  when this first gesture was made on a first box, that
5  the Samsung-accused products did enlarge and translate  15:51:52
6  that box of content so that it was substantially
7  centered on the screen?  You've observed that?
8      MS. MAROULIS: Objection; compound.  Vague.
9      THE WITNESS:  Can -- yes.  I've observed it in
10 my operation of the devices.  And I believe that there  15:52:08
11 is video support for that, too, which was offered in the
12 Singh report that shows where a box was shifted -- at
13 least in one direction -- to be centered.  I believe it
14 was one of the videos as well, at least one of the
15 videos.                                                 15:52:24
16 BY MR. MONACH:
17   Q.  In all of the Samsung-accused products that
18 you tested, did they have the capability of doing what
19 you've just described, of determining a first box in a
20 layout that's similar to figure 5A and in response to   15:52:43
21 that first gesture enlarging, translating, and
22 substantially centering that content?
23     MS. MAROULIS: Objection; compound.
24     THE WITNESS:  So of the products that I --
25 that I have tested, except for -- except for the tab --  15:53:01

Highly Confidential - Attorneys' Eyes Only

Page 182

1  I think the tab 10.1.  Then at least on one occasion in   15:53:11
2  the boxes that I tested, my best recollection today is
3  that there were none of the products which were
4  incapable of centering in at least one direction under
5  some circumstances when that first gesture selected a   15:53:30
6  box.  My recollection -- or "substantially centered" is
7  the language.  But not in all cases; there's cases where
8  they don't.  But there are some -- some cases where at
9  least they did center it at some -- as best I can
10  recollect, or at least approximate a centering of it.   15:53:52
11  And, in fact, let me rephrase.  I think that
12  my recollection is that even in the tab 10.1, there is
13  occasions when -- when it when it enlarged and
14  substantially centered.  There's a further claim down
15  here that talks about enlarging to the width of the   15:54:15
16  display; and I think that's not the claim we're talking
17  about.
18  So I'll rephrase that.  Let me correct that.
19  That even in the case of the tab 10.1, I think
20  it -- at least in certain conditions -- enlarged and   15:54:27
21  substantially centered the box that was at the first
22  location of the first gesture.
23  BY MR. MONACH:
24  Q.  Okay.  Is it your interpretation of -- let's
25  stick with Claim 50, that if the -- that -- I'll start   15:54:51

Page 183

1  over.   15:55:03
2  Can a portable electronic device have
3  instructions for doing all these steps we've been
4  talking about for the first box for, say, some
5  applications and not others?  And if so, would that   15:55:25
6  still be covered by the claim?  Or is it your position,
7  that for every structured electronic document in every
8  application, that one would have to observe the claimed
9  behavior for the claim to be met?
10  MS. MAROULIS:  Objection; vague and compound.   15:55:51
11  THE WITNESS:  I think that to the -- that when
12  a portable electronic device executes instructions that
13  allow for the enlarging and substantial centering of a
14  box of content selected from a structured electronic
15  document, in one application at least supports the idea   15:56:27
16  that it can perform that function.  Whether it performs
17  them in all applications or not, there may -- is --
18  that's not what I think is required.  There may be some
19  applications where it doesn't, in which case those would
20  be non-infringing operations, correct?  But there may   15:56:46
21  be -- but at least in some cases -- in some limited set
22  of cases, there would be infringing operations, the way
23  that this happens to be structured.
24  BY MR. MONACH:
25  Q.  Okay.  Let's go to the next limitation of   15:56:57

Page 184

1  Claim 50.  Instructions for "while the first box is   15:57:02
2  enlarged, a second gesture is detected on a second box
3  other than the first box and instructions for response
4  to detecting the second gesture, the structured
5  electronic document is translated so the second box is   15:57:17
6  substantially centered on the touch screen display."
7  Have you observed Samsung-accused products
8  performing those steps?
9  MS. MAROULIS:  Objection; vague and compound.
10  THE WITNESS:  My best recollection is that --   15:57:59
11  that at least on one product, I have observed the
12  ability to select a second box other than the first box
13  with a second gesture.  And -- and then I have observed
14  that that second box that was selected was enlarged and,
15  in some cases, at least probably substantially centered   15:58:26
16  on the touch screen display.
17  BY MR. MONACH:
18  Q.  Have you testified --
19  MS. MAROULIS:  Counsel, I'll note for the
20  record that the language you read is subject to the   15:58:36
21  "Certificate of Correction," the specific lines that you
22  read.  So perhaps you want to rephrase your question
23  using the language as the patent's issued.
24  MR. MONACH:  Okay.  Thank you.  Let me try
25  that again.   15:59:52

Page 185

1  Q.  The corrected version of the claim language   15:59:52
2  I'm not sure changes the meaning, but a corrected
3  version is, "While the first box is enlarged, a second
4  gesture on a second box other than the first box
5  instructions for in response to detecting the second   16:00:20
6  gesture translating the structured electronic document
7  so that the second box is substantially centered on the
8  touch-sensitive display."
9  You've observed that behavior, while the first
10  box is enlarged, there's a second gesture on a second   16:00:38
11  box other than the first box.  And in response to
12  detecting the second gesture, translating the structured
13  electronic document so the second box is substantially
14  centered, right?
15  MS. MAROULIS:  Objection; vague.   16:00:53
16  THE WITNESS:  I believe that I have observed
17  on at least some of the accused devices the ability to,
18  while a first box is enlarged, select a -- select a
19  second box.  And then in response to detecting the
20  second gesture, that that second box is substantially   16:01:15
21  centered -- translated so that the second box is
22  substantially centered on the touch screen display.
23  BY MR. MONACH:
24  Q.  Have you tested any of the accused products
25  that Dr. Singh opines infringe the '163 patent that are   16:01:32

Highly Confidential - Attorneys' Eyes Only

Page 186

1  incapable of -- while the first box is enlarged --       16:01:40
2  detecting a touch on the second box, and in response,
3  translating the structured electronic document so the
4  second box is substantially centered?
5       MS. MAROULIS:  Objection; vague.        16:01:56
6       THE WITNESS:  So my -- you'll recall a little
7  earlier in the day we were talking about some testing
8  that I had performed on a variety of different machines.
9  It is -- sitting here today -- and I characterize that
10  as informal testing.  Sitting here today, I don't know    16:02:15
11  that I tested on all of those machines the ability to
12  detect the second gesture and do the -- the basic -- the
13  tap-to-scroll gesture.  I don't know that I did test it
14  on there.  So I can't -- with the same level of
15  authority -- say that there were those eight devices       16:02:32
16  that didn't do something; I didn't quite go that far
17  here.  But I don't recollect observing any of the
18  Samsung products, the accused products that were
19  incapable of responding to a second gesture with a tap
20  to scroll.                      16:02:49
21  BY MR. MONACH:
22       Q.  "Tap to scroll" and "substantially centering"
23  on the second box of the electronic document?
24       A.  Well --
25       MS. MAROULIS:  Objection; compound.  Vague.    16:02:59

Page 187

1       THE WITNESS:  And I almost interrupted you in    16:03:00
2  your question.  So let me think about that.
3       We're -- the issue is substantially centering.
4  And I -- I'd -- you know, the -- the observation that I
5  made was that they -- that in some cases, they certainly   16:03:14
6  were substantially centered; and in other cases they
7  weren't.  But it also -- it also leads me to the
8  following; that is, that "substantially centered" seems
9  to me to be an issue.  What does "substantially
10  centered" mean?  So I hate to admit or I hate to say      16:03:30
11  they were substantially centered, because "substantially
12  centered" is a term that I think is confusing in the
13  claim.  And so I don't want to try to sound as though I
14  understand exactly what it means in all cases, because I
15  don't.                        16:03:44
16       So other than that, yes, it did appear to do
17  the tap-to-scroll operation, which in some cases looked
18  as though it substantially centered the second box.
19  BY MR. MONACH:
20       Q.  Do you remember any instances in which you    16:03:58
21  tested a Samsung-accused product with this second tap or
22  a second gesture on a second box and the -- you
23  concluded that the device was incapable of substantially
24  centering the second box when it translated the
25  electronic document?               16:04:23

Page 188

1       MS. MAROULIS:  Objection; vague.  Calls for    16:04:24
2  legal conclusion.
3       THE WITNESS:  I believe that there are --
4  there are cases where the Samsung device in the
5  tap-to-zoom feature does not substantially center.  I am    16:04:43
6  not sitting here today prepared to say that it never
7  substantially centers or is incapable of substantially
8  centering, but there are cases where it doesn't
9  substantially center.
10  BY MR. MONACH:                  16:04:58
11       Q.  On the seconded tap?
12       A.  On the tap-to-zoom.  I'm sorry.
13  Tap-to-scroll.
14       MR. MONACH:  All right.  Let's have marked as
15  next in order --                   16:05:44
16       THE VIDEOGRAPHER:  Exhibit 16.
17       (Whereupon Exhibit 16 marked
18       for identification.)
19       MR. MONACH:  Mr. Gray, we've marked as
20  Exhibit 16 a translation and an original Korean    16:06:15
21  document, slides produced by Samsung dated -- the
22  original slide as Bates number SAMNDCA 00203880 dated
23  either March 2 or February 3, 2010.  It says "2010.3.2"
24  and then a translation.
25       MS. MAROULIS:  I'm going to object to the    16:06:50

Page 189

1  translation, which -- in case we need to submit    16:06:51
2  translation of our own later on.
3       MR. MONACH:  Okay.  We have a certified
4  translation on the front here.
5       Q.  Have you seen this document before?        16:07:03
6       A.  I believe what you're asking me is have I seen
7  the translated version?  So --
8       Q.  You've seen the translation of the text and
9  then the figures taken from the Samsung document that
10  are in Deposition Exhibit 16, right?        16:07:27
11       A.  Well -- well, what I'm not -- I believe that I
12  have seen -- I don't know that I've seen -- well -- so I
13  don't need to get -- to confuse the issue further.  I
14  have seen a translation of the document ending in 203880
15  for these pages.  I'm not sure if this is the        16:08:04
16  translation I've already seen.  That's the only case.
17  I'm trying to think.  But I've seen something that is a
18  translation of 20 -- 2 -- 203880.
19       Q.  All right.  So 203880 in translation has a
20  cover page, "Relative Evaluation Report on S1, iPhone,    16:08:22
21  March 2, 2010."  Do you see that?
22       A.  Do I have that?  Oh, I'm sorry.  I do.  This
23  is the page you're referring to?
24       Q.  Yes, sir.
25       A.  Yes, it's -- yes.  Okay, great.  I see that.    16:08:46

Highly Confidential - Attorneys' Eyes Only

Page 190

1    Q. All right. And then do you understand that    16:08:52
2    this is a comparison of the iPhone and a Samsung phone
3    under development?
4    A. I don't --
5        MS. MAROULIS: Objection; calls for    16:09:08
6    speculation. Lacks foundation.
7        THE WITNESS: My understanding is that this is
8    a presentation -- presentation material that was -- that
9    was put together by the product engineering group that
10   does contain information that in some cases compares    16:09:26
11   behaviors -- or that reports on behaviors of the
12   iPhone and on -- of the iPhone, which is an Apple
13   product, and the S1, which I believe is a predecessor --
14   is a Samsung phone.
15   BY MR. MONACH:    16:09:46
16   Q. Okay. And you understand that the product
17   engineering team is a Samsung product -- Samsung product
18   engineering team, right?
19       MS. MAROULIS: Objection; lacks foundation.
20       THE WITNESS: Well, I think what I read from    16:10:03
21   the page of the translation of 203880 is that within the
22   product engineering team, this is the software
23   inspection group.
24   BY MR. MONACH:
25   Q. Of Samsung?    16:10:13

Page 191

1    A. I believe it to be of Samsung, yes, I do.    16:10:14
2    Q. All right. Could you turn to the page with
3    the heading "53. Browsing_Web Browser."
4    A. I'm on page 203937, which is "53. Browsing_Web
5    Browser."    16:10:34
6    Q. And the text says, "When double-tapped, only
7    enlargement/shrinkage are supported. A quick transition
8    to an enlarged screen is not possible. iPhone: When
9    a different spot is double-tapped after being enlarged,
10   the screen moves to a different screen. S1: When a    16:10:46
11   different spot is double-tapped, the screen shrinks back
12   to the original screen."
13       Do you see that?
14   A. I do see those lines that are on this
15   document -- on this page, yes.    16:10:59
16   Q. Do you understand for the iPhone "When a
17   different spot is double-tapped after being enlarged,
18   the screen moves to a different screen" to be referring
19   to the behavior of a structured electronic document as
20   described in the '163 patent? You've enlarged by --    16:11:16
21   you've enlarged a structured electronic document. And
22   then when you make a second tap on a different spot, the
23   screen translates?
24       MS. MAROULIS: Objection; assumes facts.
25   Calls for speculation. Lacks foundation.    16:11:29

Page 192

1        THE WITNESS: So I believe what this is    16:11:37
2    referring to is that when a -- when an iPhone -- when a
3    structured electronic document is -- I think this is --
4    I mean, I'll accept your assertion that it's a
5    structured electronic document; I have no reason to    16:11:50
6    believe that it isn't. That when that's expanded or
7    enlarged, that in the iPhone -- on the iPhone column
8    here it looks as though what the text says is that when
9    a different point is tapped after enlarging, the screen
10   moves to the tapped screen and shows the enlarged    16:12:08
11   screen.
12       So I think what it -- what it is referring to
13   is that when somebody has expanded or enlarged a
14   structured electronic document to double tap on that,
15   then provides you another expansion or a second zoom    16:12:23
16   level on that document. So I think what it's combining
17   is the manual -- for example, the de-pinch and then a
18   double tap. So you get two different zoom levels, is I
19   think what it's talking about.
20   BY MR. MONACH:    16:12:41
21   Q. You don't think this is referring to -- when
22   it says the screen moves, you don't think that's
23   referring to translating?
24       MS. MAROULIS: Objection; calls for
25   speculation. Lacks foundation.    16:12:47

Page 193

1        THE WITNESS: Well, I think it's -- I think    16:12:52
2    it's enlarging. It's not necessarily translating.
3    Translating is the animated scroll, right?
4    BY MR. MONACH:
5    Q. Well, in discussing the S1, they -- this    16:13:02
6    document refers to only enlargement and shrinkage are
7    supported. And in both of the references to the
8    iPhone, they talk about the screen moves. Do you see
9    that?
10       MS. MAROULIS: Objection; document speaks for    16:13:18
11   itself.
12       THE WITNESS: I do see that on the iPhone it
13   says that the screen moves to a different screen. And I
14   see that on the i1 -- S1, rather, they're talking about
15   when a different spot is double-tapped, the screen    16:13:31
16   shrinks back to the original screen. I see both of
17   those. And I understand that there -- that these
18   comments are related in some way to the two side-by-side
19   adjacent boxes are that labeled "iPhone" and "S1."
20   BY MR. MONACH:    16:13:50
21   Q. Is it a fair reading of this document that the
22   Samsung group is talking about their S1 in response to
23   tapping only doing enlarging and shrinking, and the
24   Apple product having the ability to translate when a
25   second spot is tapped?    16:14:15

Highly Confidential - Attorneys' Eyes Only

Page 194

1    MS. MAROULIS: Objection; lacks foundation.    16:14:16
2    Calls for speculation.
3    THE WITNESS: Seems to me that the comments
4    regarding S1 pertains to double tapping that either
5    enlarges or shrinks; and that on the iPhone, they're    16:14:38
6    talking about a post -- some sort of post -- or -- an
7    enlargement of the screen and then double tapping --
8    excuse me -- enlargement of a portion of that structured
9    electronic document. And then when it double taps, it
10   does another enlargement, the screen moves to a    16:15:02
11   different screen which is also, I note, enlarged. So it
12   shows a different screen with an enlargement of the
13   first enlarged screen, a second zoom level.
14   BY MR. MONACH:
15   Q. Could the first enlargement on the iPhone in    16:15:21
16   the slide, which I just showed you, result from a double
17   tap on a box of content?
18   MS. MAROULIS: Objection; vague. Calls for
19   speculation. Lacks foundation.
20   THE WITNESS: Well, I mean -- I mean, could --    16:15:51
21   I mean, is it possible? I mean, I don't -- here's what
22   it looks to me. It looks to me as though this zoomed
23   document, the -- okay. So let's try to use some
24   language that we can -- that might make the record
25   reasonable.    16:16:05

Page 195

1    On the iPhone column, the left-hand side,    16:16:06
2    the back screen looks as though this has already been
3    expanded, but it doesn't look as though it has been a
4    double tap to zoom in the context of the '163 where a
5    box has been -- a box of content has been enlarged and    16:16:21
6    substantially centered, which is -- because if you look
7    at that -- at that first screen, there's text running
8    off the side. So it looks as though something has been
9    enlarged but not enlarged in the sense of the '163 that
10   takes the box of content and isolates it and puts it    16:16:43
11   into a substantially centered position. So to me what
12   it looks like is that somehow that has been enlarged.
13   I'm not familiar enough with the behavior of
14   the iPhone to know whether if you go to -- if there's
15   some application or some mode of operation on the    16:17:00
16   iPhone that allows you to simply double tap any place
17   on a -- on an electronic document even if it didn't have
18   boxes of content and have it zoom. I'm just not
19   familiar enough with the operation of the iPhone to
20   know that. But that could have happened. The double    16:17:15
21   tap could have been what created this. It could just as
22   well have been a de-pinch, from what I can see here.
23   BY MR. MONACH:
24   Q. On this same slide in this Samsung document,
25   it says "Improvement. Need to supplement the    16:17:28

Page 196

1    double-tapping enlargement/shrinkage feature."    16:17:35
2    Do you see that?
3    A. I see that language on the bottom of 203937.
4    Q. Are you aware of whether any supplementation
5    of the double-tapping enlargement/shrinkage feature was    16:17:50
6    performed after the creation of this document?
7    MS. MAROULIS: Objection; assumes facts.
8    Calls for speculation. Lacks foundation.
9    THE WITNESS: Well, this -- what they're
10   talking about here is supplementing the double-tapping    16:18:14
11   enlargement/shrinkage feature. I'm unaware of any
12   supplement -- well, I'm not -- I'm unaware of any
13   activity that Samsung undertook in response to or in
14   regard to this -- to this chart on 203937. I'm unaware
15   of anything that they've done. Moreover, I'm not quite    16:18:39
16   sure what they mean by "supplement." It may mean that
17   they have other features that they want to include. But
18   if it's -- if what this is talking about is tap to zoom,
19   that's -- again, that's not key to the '163. So I
20   don't -- I'm not sure.    16:19:05
21   But -- so I don't know. I don't know of any
22   supplementation that was performed. I don't know what
23   "supplementation" is referring to, what the nature of it
24   might be. Just seems as though they have decided that
25   there is something that needs to be done to their    16:19:18

Page 197

1    double-tapping enlargement shrinkage feature. But it's    16:19:21
2    unclear how -- what it was and if it was related at all
3    to what the iPhone did. I don't know.
4    BY MR. MONACH:
5    Q. Could you turn to page 72 of your infringement    16:19:30
6    rebuttal report at paragraph 421, please.
7    A. Page 72, did you say?
8    Q. Yes, sir.
9    A. Okay.
10   Q. In your paragraph 421, referring to this    16:19:59
11   document we've just been discussing, the 203937, is the
12   Korean language version of this document -- of the
13   document we were just discussing. You say, "My
14   understanding is, however, that the investigation of
15   this document is continuing, and I reserve the right to    16:20:25
16   supplement this report in the event further information
17   comes to light." Do you see that?
18   A. I do.
19   Q. So you submitted this report on -- I think it
20   was April 16 or something? April 16, right? So in the    16:20:41
21   intervening, roughly, three weeks, has more
22   investigation concerning this document been performed?
23   A. I'm unaware of any further investigation of
24   this document that has been performed. It was my
25   understanding that -- that some other work was going to    16:21:05

50

Highly Confidential - Attorneys' Eyes Only

Page 198

1    be done or -- and I think it might have had to do with    16:21:08
2    translations. But I'm not -- I'm not sure. I just --
3    I'm not aware of any -- whether or not any work has been
4    done.
5        Q.   What did you mean by "the investigation of    16:21:19
6    this document is continuing"?
7        MS. MAROULIS:   Objection; asked and answered.
8        THE WITNESS:   So my understanding -- in other
9    words, information supplied to me by other attorneys is
10   that investigation of this document is continuing. It    16:21:31
11   is -- I'm unaware of what the investigation or what kind
12   of investigation it is comprised of. But I
13   understand -- I understood at the time and I have no
14   reason to believe that that -- anything different now,
15   that the investigation of this document is continuing.    16:21:47
16   BY MR. MONACH:
17       Q.   But you haven't received any additional
18   information about it; is that correct?
19       A.   I believe that's correct. I -- no, I know
20   that that's correct. I haven't received any other    16:21:57
21   information.
22       MR. MONACH:   Thank you. Let's mark as
23   Exhibit 17, Appendix 7 from your invalidity report.
24            (Whereupon Exhibit 17 marked
25             for identification.)    16:22:24

Page 199

1    BY MR. MONACH:    16:22:24
2        Q.   Mr. Gray, is what we've marked as Exhibit 17
3    Appendix 7 to your invalidity report dealing with the
4    '163 patent?
5        A.   Appendix 7 -- Exhibit 17 -- deposition Exhibit    16:23:06
6    17 which is Appendix 7 -- was labeled "Appendix 7" does
7    appear to be Appendix 7 to my invalidity report.
8        Q.   And this deals with a computer program known
9    as LaunchTile or XNav; is that correct?
10       A.   Right. It is. It's a system.    16:23:34
11       Q.   It's a program that runs on a Hewlett-Packard
12   Pocket PC; is that right?
13       A.   I think it ran on -- well, some versions run
14   on Hewlett-Packard Pocket PC; there were some versions
15   that ran on a Sony device of some kind. But it was --    16:24:00
16   they were both portable electronic devices.
17       Q.   Did you personally operate the LaunchTile or
18   XNav program, or did you just see videos of other people
19   using the program, or neither?
20       A.   I think I -- I think I used both programs.    16:24:22
21   I'm kind of forgetting now. Yeah, I think I used
22   both of -- I think -- excuse me. I think I used XNav on
23   a Sony device. And I believe I used LaunchTile on -- on
24   a -- on one of these litmus paper pocket PCs. I think
25   that's true.    16:24:45

Page 200

1        Q.   Had you used either XNav or LaunchTile before    16:24:47
2    you got involved as a consultant in this case?
3        A.   I don't recollect having used them -- using
4    either LaunchTile or XNav prior to becoming a consultant
5    on this case, no.    16:25:07
6        Q.   What is the World view? And I'll just call it
7    LaunchTile. If there's any material difference for
8    XNav, then please explain it in response to the
9    question. Okay?
10       A.   That's fine with me.    16:25:23
11       Q.   All right. In LaunchTile is there a view
12   called the World View?
13       MS. MAROULIS:   Objection; vague.
14       THE WITNESS:   Yes, in LaunchTile the -- there
15   is a view that is referred to as the world view.    16:25:36
16   BY MR. MONACH:
17       Q.   What is that?
18       A.   The world view is a structured electronic
19   document that is a 6-by-6 matrix of structured
20   electronic documents that are shown -- or that -- boxes    16:25:51
21   of content, really, but they are structured electronic
22   documents -- that is shown on the high-level user
23   interface of the device. So if you look on page 2 of
24   Exhibit 17, there's a -- there are pictures of two
25   different -- there are two different depicts of the    16:26:18

Page 201

1    world view --    16:26:22
2        Q.   All right.
3        A.   -- which is 6-by-6 matrix.
4        Q.   And correct me if I misunderstood you. Did
5    you testify that the 6-by-6 world view is itself a    16:26:29
6    structured electronic document?
7        A.   Yes. That is my testimony, that the -- that
8    the 6-by-6 world view is a structured electronic
9    document comprised of structured electronic documents.
10       Q.   So it's your testimony that these individual    16:26:59
11   tiles in the world view are not merely boxes of content,
12   but they are separate structured electronic documents
13   themselves; is that right?
14       A.   In my view that these are -- that the tiles
15   are both boxes of content -- boxes of content, and as    16:27:26
16   well as structured electronic documents.
17       Q.   Is there any support you're aware of in the
18   '163 patent that plurality -- the plurality of boxes of
19   content in a structured electronic document can
20   themselves be structured electronic -- separate    16:27:54
21   structured electronic documents?
22       A.   Is there any -- would you repeat that, please?
23       Q.   Yeah. Is there any support you're aware of in
24   the '163 patent that the boxes of content in a
25   structured electronic document can themselves be    16:28:15

Highly Confidential - Attorneys' Eyes Only

Page 202

1  separate structured electronic documents distinct from a   16:28:19
2  structured electronic document in which they're
3  contained?
4       MS. MAROULIS:  Objection; vague.  Please feel
5  free to refer to Exhibit 15.   16:28:30
6       THE WITNESS:  Let me take a look.
7       So what I'm -- two things.  I looked for -- in
8  the specification -- any evidence to suggest that the
9  boxes of content could not be a structured electronic
10 document.  And I find nothing in here that suggests that   16:32:31
11 the boxes of content couldn't be structured electronic
12 documents on their own.  But further, on column 19 --
13 yeah.  On column 19, line -- starting at line 17, it's a
14 discussion about a render tree, and about the nodes on
15 the render tree, and about the various kinds of nodes   16:33:05
16 that -- that the render tree could contain in it.  The
17 render tree in the specification is used as a mechanism
18 for identifying the boxes of content and being able to
19 traverse to get to the boxes of content.
20      So let me put this into the record.  "In some   16:33:26
21 embodiments, the structured electronic document has an
22 associated render tree with the plurality of nodes and
23 determining the first box at the location of the first
24 gesture comprises:  Traversing down the render tree to
25 determine a first node in the plurality of nodes that   16:33:43

Page 203

1  corresponds to the detected location of the first   16:33:46
2  gesture, traversing up the render tree from the first
3  node to the closest parent node that contains a logical
4  grouping of content and identifying content
5  corresponding to the closest parent node as the first   16:34:00
6  box.  In some embodiments, the logical grouping of
7  content comprises a paragraph, an image, a plug-in
8  object, or a table.  In some embodiments the closest
9  parent node is replaced inline, a block, an inline block
10 or an inline table."   16:34:19
11      In those embodiments that we're talking about,
12 this logical grouping containing a paragraph, an image,
13 a plug-in, or a table, at least all of those could be --
14 can be -- could clearly be structured electronic
15 documents.  There's no preclusion about that.   16:34:35
16      Paragraphs have structure.  Images can be
17 configured.  A JPEG image, for example, has structure.
18 A plug-in object -- I'm not sure what they mean by a
19 "plug-in object," but certainly tables have structure.
20 So all -- in all of those instances, the render tree   16:34:55
21 nodes enable structured electronic documents to be part
22 of the -- the -- system.
23      So to answer your question, there is support
24 for it and nothing to preclude it.
25 BY MR. MONACH:   16:35:09

Page 204

1  Q.  In your Appendix 7, depo Exhibit 17, on page 4   16:35:10
2  you show the -- a transition from the world view of 36
3  tiles to what's called a "zone view" of four tiles,
4  right?
5  A.  That's correct.   16:35:35
6  Q.  Are you asserting that that change in the
7  display is -- meets the enlarging, translating, and
8  substantially centering a first-box limitation as
9  recited in Claim 50 of the '163 patent?
10 A.  The -- with respect to claim 2B, there is a --   16:36:04
11 a first box which is selected from the world view that
12 then is -- is enlarged and substantially centered.  The
13 world view is a collection of four boxes surrounding
14 what they call the "blue dot."
15 Q.  Do you mean -- I'm sorry.  Did you mean zone   16:36:28
16 view?
17 A.  Sorry.  Did I say --
18 Q.  You said "world view."
19 A.  Did I say "world view" too many times?  The
20 world view is the 6-by-6 matrix.  The selection of one   16:36:37
21 of the -- one of the boxes within a four-box matrix
22 surrounding the blue dot in the world view creates a
23 zone view.  The zone view is -- what gets enlarged and
24 substantially centered.  So the -- this is a a -- this is
25 a box within the world view which becomes centered and   16:37:01

Page 205

1  enlarged in the zone view.   16:37:05
2  Q.  Does -- would you agree that Claim 50
3  requires -- I'm looking at the -- sort of the middle of
4  the claim near line 32 -- that what is required is
5  enlarging and translating the structured electronic   16:37:22
6  document so that the first box is substantially
7  centered?
8       MS. MAROULIS:  Objection; vague.  Calls for
9  legal conclusion.
10      THE WITNESS:  I think you have -- with the   16:37:37
11 proviso there maybe alterations in the language.  But I
12 think you've -- you've correctly read the limitation
13 starting at line 31.
14      MS. MAROULIS:  We've been going for over an
15 hour.   16:37:53
16      THE WITNESS:  Would you like to take a break
17 soon?
18      MR. MONACH:  Let me just finish up with this.
19      MS. MAROULIS:  Okay.
20 BY MR. MONACH:   16:37:57
21 Q.  Is it your opinion that in the transition from
22 the world view to the zone view shown on page 4 of your
23 Appendix 7, that what has been enlarged and translated
24 is the same structured electronic document that is shown
25 in the world view?   16:38:30

Highly Confidential - Attorneys' Eyes Only

Page 206

1    A.  No.  The document which is being shown in the    16:38:32
2  zone view on page 4 is a box of content from the
3  structured electronic document shown in the world view.
4    Q.  Which is -- so the thing shown on the right is
5  a different structured electronic document than the    16:39:00
6  structured electronic document shown in the world view,
7  right?
8      MS. MAROULIS:  Objection; vague.
9      THE WITNESS:  I thought I said something
10  different, so let me try again.    16:39:16
11      The selection of -- of the box shown in --
12  okay.  In the world view on the left, there is
13  identified in red a first box.  Selection of that box by
14  a first gesture enlarges and centers that box of content
15  in the zone view shown on the right.    16:39:38
16  BY MR. MONACH:
17    Q.  But there is no enlarging and translating of
18  the structured electronic document shown on the left;
19  rather, the distinct -- in your view -- structured
20  electronic documents in those four tiles are enlarged    16:39:57
21  and centered?
22      MS. MAROULIS:  Objection; vague.  Assumes
23  facts.
24  BY MR. MONACH:
25    Q.  Is that right?    16:40:06

Page 207

1    A.  I believe that the enlarged and centered zone    16:40:11
2  view is a box of content found on the world view.  It is
3  comprised of individual tiles or structured electronic
4  documents on their own.  But it is from -- it is derived
5  or created from an enlargement of the world view    16:40:29
6  structured electronic document into the zone view.
7  BY MR. MONACH:
8    Q.  So the world view electronic document, the
9  36-tile document is not enlarged as an entity and then
10  translated to center those four boxes, right?    16:40:48
11      MS. MAROULIS:  Objection; vague.
12      THE WITNESS:  I don't have any reason to
13  believe that -- well, let me say it slightly
14  differently.  I'm not sure, sitting here today, exactly
15  what the -- the software performed with respect to    16:41:15
16  enlarging and centering.  But given what the functions
17  are that are intended for LaunchTile, there is no reason
18  for me, sitting here today, to believe that the
19  structured electronic document that is -- that is the
20  world view is not enlarged and the portion of it that    16:41:34
21  was selected in that box of content simply enlarged and
22  translated into the zone view.
23  BY MR. MONACH:
24    Q.  Let's look at the content from these four
25  boxes that are shown in the center of the world view and    16:41:46

Page 208

1  then are shown in -- on the right in the zone view.    16:41:53
2      On one -- for example, the upper right-hand
3  tile inside the red line you've drawn looks like an
4  e-mail icon.  Do you see that?
5    A.  In the -- yes.  In -- in the first -- if    16:42:10
6  you're referring to the -- well, go ahead.  Which one
7  are we pointing at?
8    Q.  Right.  So in the box that you've drawn in the
9  world view and labeled the first box, in the upper
10  right-hand corner, there is a tile that looks like it    16:42:26
11  has an e-mail icon.  Do you see that?
12    A.  I do.
13    Q.  Right.  And that is the -- that's a tile for
14  the e-mail application in LaunchTile, right?
15    A.  I believe that -- yes, I believe that -- well,    16:42:44
16  it is a -- it is an icon derived from the e-mail
17  structured electronic document that underlies it.  But
18  yes, it is a --
19    Q.  And then if you look on the right in the zone
20  view, you don't see a blowup or an enlargement of that    16:42:55
21  e-mail.  What you see is a different level of detail.
22  You have a listing of individual e-mails within the
23  e-mail file.  There's different content, correct?
24      MS. MAROULIS:  Objection; misstates the
25  document.    16:43:15

Page 209

1      THE WITNESS:  I don't -- I would not say that    16:43:20
2  it is different.  Well, I'd say that both the upper
3  right -- upper right-hand corner of the zone view and
4  the upper right-hand corner of the first box are derived
5  from the same document.  They're different    16:43:33
6  manifestations of the same document, but they are
7  derived from the same structured electronic document
8  which is the rendering of the e-mail system.  It's
9  just -- based upon the screen real estate, it's a
10  different manifestation.    16:43:48
11  BY MR. MONACH:
12    Q.  It's different content.  It's not simply an
13  enlarging of the images that are shown in the tile in
14  the world view; it is a -- looking at different data and
15  displaying different data rather than displaying the    16:44:04
16  same thing in a larger font size or a larger image,
17  right?
18      MS. MAROULIS:  Objection; argumentative.
19  Misstates the document.
20      THE WITNESS:  Let me agree that it is not a    16:44:14
21  magnification of what's in the -- in the upper
22  right-hand corner of the first box of the world view.
23  It is not a magnification -- the upper right-hand corner
24  of the zone view is not a magnification of the original.
25  That's accurate.    16:44:28

Highly Confidential - Attorneys' Eyes Only

Page 210

BY MR. MONACH:                            16:44:29
2    Q.  And that's true for at least the box with the
3  phone and the box with the calendar, right?  In fact, if
4  you look at the calendar, it's not -- the text isn't
5  enlarged, it's shrunk, and there's additional detail     16:44:41
6  that's provided, right?
7          MS. MAROULIS:  Objection; misstates the
8  document.
9          THE WITNESS:  The -- yes, there's a
10  difference -- there is a different manifestation of the  16:44:53
11  data in the world view than there is in the zone view.
12  But they both relate to the same structured electronic
13  document baseline.  It's comparable to the manner in
14  which different browsers render different HTML pages --
15  excuse me -- different browsers render the same HTML     16:45:12
16  page differently.
17          MR. MONACH:  All right.  Why don't we take a
18  break.
19          MS. MAROULIS:  Okay.
20          THE WITNESS:  Okay.                   16:45:21
21          THE VIDEOGRAPHER:  The time is 4:45 p.m.  And
22  we're off the record.
23          (Recess taken from 4:45 p.m. to 4:59 p.m.)
24          THE VIDEOGRAPHER:  The time is 4:59 p.m.  And
25  we're back on the record.                    16:59:25

Page 211

BY MR. MONACH:                            16:59:26
2    Q.  Mr. Gray, continuing with the deposition of
3  the LaunchTile system.  In your comparison of LaunchTile
4  with the claims of the '163 patent at page 5, you show
5  the user tapping on one of the four tiles within what    16:59:50
6  you've called "Enlarged Box 1," right?
7    A.  Yes.
8    Q.  So it's -- it's not a second box in the sense
9  that it is different from the first box, but it's rather
10  a subset of what you've called the "first box," right?   17:00:10
11    A.  The first box is the 2-by-2 matrix.
12    Q.  Mm-hmm.
13    A.  The second box is -- is one of the entries
14  within the 2-by- -- the 2-by-2 matrix.
15    Q.  So you're --                          17:00:34
16    A.  So the -- and I -- and the claim language,
17  it's -- well, the first box is enlarged detecting a
18  second gesture on a second box other than the first box.
19    Q.  Right.  So let's focus on that for a second.
20  If the -- what you're calling the second box is, in      17:00:47
21  fact, part of the first box, how can it be a second box
22  other than the first box as contemplated by the '163
23  patent?
24    A.  So --
25          MS. MAROULIS:  Objection; vague.  Incomplete  17:01:02

Page 212

1  hypothetical.                             17:01:03
2          THE WITNESS:  So what I'm trying to convey is
3  the first box is a 2-by- -- is a box of content that
4  comprises four individual tiles.  That's the first box.
5  The second box is one of those tiles which is in the     17:01:21
6  first box.  The first box is the four tiles.  The second
7  box is one of those tiles within the four.
8  BY MR. MONACH:
9    Q.  Part of the first box?
10    A.  So --                                17:01:31
11          MS. MAROULIS:  Objection; vague.
12  BY MR. MONACH:
13    Q.  What you've identified as the second box is
14  part of what you identified as the first box?
15    A.  What I've identified as the second box is     17:01:43
16  within the boundaries of the first box.  But it's -- but
17  they are different boxes.
18    Q.  All right.  And you have shown they gesture on
19  what you're calling the second box, in fact, launches
20  that application, right?                     17:02:07
21    A.  The -- yes.  Well, it enlarges and expands the
22  second box, which -- which is -- the selection of the
23  second box in the zone view enlarges and translates that
24  second box into the box -- they're labeled "LaunchTile
25  application view" which is an expansion and enlargement   17:02:35

Page 213

1  of that box.                              17:02:40
2    Q.  Does it, in fact, enlarge and translate the
3  structured electronic document?  So to be clear, in --
4  as modified by the certificate of correction, in Claim
5  50, the last limitation says, "This response to          17:03:02
6  detecting the second gesture" -- which is on the second
7  box -- "translating the structured electronic document
8  so that the second box is substantially centered."
9          So in the move from the LaunchTile zone view
10  to tapping on the e-mail box and launching the           17:03:25
11  LaunchTile application, is the system, in fact,
12  translating the four-box, box number 1?
13          MS. MAROULIS:  Objection; vague and confusing.
14          THE WITNESS:  The -- my view, the selection of
15  the second box from the LaunchTile zone view, the system 17:03:50
16  responds to that second gesture by -- in this case --
17  enlarging and centering the -- that box.
18  BY MR. MONACH:
19    Q.  But is it enlarging and centering -- is it
20  enlarging and translating a four-square box or not?  Or  17:04:11
21  is it, in fact, substituting for that four-square box a
22  view of the launched application program?
23          MS. MAROULIS:  Objection; vague and compound.
24          THE WITNESS:  It's substituting the
25  four-square box -- it's enlarging a second box which is   17:04:29

Highly Confidential - Attorneys' Eyes Only

Page 214

1  within the bounds of the -- of the 2-by-2 box. It is      17:04:34
2  enlarging and centering that in the -- in the LaunchTile
3  application view. It is an expansion of that box.
4  BY MR. MONACH:
5      Q. Okay. But -- and it is not an enlargement and      17:04:48
6  translation of a structured electronic document
7  consisting of these four squares of content, correct?
8      A. That is -- what it is doing -- yes. What it
9  is doing is enlarging and expanding the -- it happens to
10 be enlarging, but it's scrolling into position the upper   17:05:13
11 right-hand quadrant of the original first box, which is
12 the 2-by-2 matrix. It's not expanding the entire --
13 entirety of the first box. This is --
14     Q. Right.
15     A. -- the second box.                                  17:05:30
16     Q. And you cannot scroll or pan when you're in
17 the LaunchTile application view to see any of the
18 adjacent LaunchTile zone view boxes, yes?
19     MS. MAROULIS: Objection; compound.
20     THE WITNESS: My best recollection of the way    17:05:54
21 that this operates is that -- is that -- let me think.
22 I don't -- sitting here right now, I don't remember
23 certainly whether or not there is the ability to slide
24 back to the other view. But I think not. I think -- so
25 let me -- sorry.                                            17:06:32

Page 215

1      I believe that from the selected second box,     17:06:34
2  which has been expanded and centered on page 5, is
3  labeled the "LaunchTile application view," that is --
4  from there, I don't know of a navigation path back to
5  the first box other than to go back up to the world view    17:06:51
6  and then select the zone again.
7  BY MR. MONACH:
8      Q. If you're working on a computer running
9  Windows and it has Microsoft Word and you double click
10 on the Microsoft Word icon so that the application is      17:07:17
11 launched and replaces whatever has been on the screen
12 previously, covers it up, would you consider that to be
13 enlarging and translating a structured electronic
14 document?
15     MS. MAROULIS: Objection; incomplete             17:07:34
16 hypothetical.
17     THE WITNESS: Would I consider it to be
18 enlarging and translating a structured electronic
19 document?
20     MR. MONACH: Mm-hmm.                              17:07:46
21     THE WITNESS: I would not consider that --
22 hadn't considered it before, but I would not, sitting
23 here right now, consider it enlarging and translating a
24 structured electronic document. What I think that is is
25 analogous to selecting one of these pieces of mail from     17:08:00

Page 216

1  the LaunchTile application view and opening that up.       17:08:05
2  The LaunchTile application view -- or the box labeled
3  "LaunchTile application view" is the second box that was
4  in the zone view and is derived from the same data and
5  was in the world view as well. So the expansion of the     17:08:20
6  world view -- of the 4-by-4 matrix to bring up -- so it
7  gets expanded and centered on the screen. And the
8  selection -- that's the first box. The gesture
9  selecting the second box then yields the expansion and
10 essentially centering to create the LaunchTile            17:08:41
11 application view.
12     If I were to now select one of those e-mail --
13 one of those e-mails that's on that page and then go
14 into the e-mail reader, that then would be analogous to
15 selecting Microsoft Word which then is an application,     17:08:56
16 which now you're off on the races.
17 BY MR. MONACH:
18     Q. Does tapping on what you call the "second box"
19 launch the e-mail application in LaunchTile view or not?
20     A. I think that the system, the way it's set up,  17:09:09
21 is that the e-mail application was opened at world view,
22 it's opened at zone view, and it's opened further at
23 LaunchTile application view.
24     MR. MONACH: Let's mark as the next exhibit --
25 I believe it's Exhibit 18.                                 17:09:31

Page 217

1      THE VIDEOGRAPHER: Correct.                        17:09:33
2      MR. MONACH: Appendix 8 from your invalidity
3  report.
4          (Whereupon Exhibit 18 marked
5          for identification.)                          17:09:38
6  BY MR. MONACH:
7      Q. Mr. Gray, is the Robbins '349 patent one of
8  the pieces of prior art you've relied on in opining that
9  the -- at least some of the claims of the '163 patent
10 are invalid?                                               17:10:20
11     A. Yes. Robbins '349 is one of the pieces of
12 prior art that I believe invalidates some of the
13 asserted claims of the '163.
14     Q. Could you describe briefly how the Robbins
15 invention works.                                           17:10:46
16     MS. MAROULIS: Objection; vague. Calls for a
17 narrative.
18     THE WITNESS: The Robbins invention takes
19 large -- creates a -- allows for the display of a large
20 data set on a relatively small display surface and uses   17:11:01
21 a variety of techniques to segment that large
22 information space to allow for access to the -- to
23 details or to finer levels of detail regarding that
24 large information space.
25 BY MR. MONACH:                                             17:11:28

Highly Confidential - Attorneys' Eyes Only

Page 218

1    Q.  Is the segmentation in Robbins something that    17:11:35
2  is an overlay that's separate and distinct from a
3  structured electronic document?
4        MS. MAROULIS:  Objection; vague.
5        THE WITNESS:  So Robbins talks about different    17:12:01
6  regular segmentation or methods in some cases, though,
7  there are a variety of segmentation methods.  In
8  particular, one of the segmentation methods that's used
9  is one where it relies upon data associated with the
10  information space such as usage information for -- to    17:12:24
11  provide its segmentation algorithm.  So there are a
12  variety of different techniques, including one that
13  relies upon the underlying data or usage data related to
14  the information space, which is structured data within
15  the information space.                                   17:12:50
16  BY MR. MONACH:
17    Q.  Is it correct, as reflected on the bottom of
18  page 1 and the top of page 2 of your appendix 8
19  discussing Robbins, that Robbins can use any type of
20  document such as pictures, calender, images,            17:13:21
21  spreadsheets, reports, maps, books, text, Web pages,
22  et cetera, in performing this segmentation of the
23  viewable content?
24        MS. MAROULIS:  Objection; vague and compound.
25        THE WITNESS:  Well, at the bottom of page 1,      17:13:42

Page 219

1  it says that the content can include but is not limited   17:13:43
2  to a variety of types of information spaces.  The data
3  set can be received by a segmentation component which
4  can divide the viewable content; e.g., parent view in
5  any number of segments, subsectors, or child views.      17:14:00
6        So, yes, a variety of different documents can
7  be displayed.  And the segmentation -- the data set can
8  be received by a segmentation component which goes back
9  to my statement I made a moment ago, that there are a
10  variety of different segmentation techniques that can    17:14:20
11  be -- that are utilized by Robbins.
12  BY MR. MONACH:
13    Q.  And the segmentation technique can be
14  performed on a document that itself is not a structured
15  electronic document, for example, right?                 17:14:33
16        MS. MAROULIS:  Objection; incomplete
17  hypothetical.
18        THE WITNESS:  Well, I think that -- I can
19  envision a usage of Robbins where the information space
20  is not a structured -- perhaps is not a structured       17:15:02
21  electronic document, perhaps a pure image file.  But --
22  or perhaps a picture, a photograph of some kind, that
23  has -- well, no, a paragraph would never work.  Perhaps
24  some kind of image file that is straight bitmap with
25  no -- no structure at all; just a bitmap.  I suppose     17:15:25

Page 220

1  it could be applied to those -- to documents which are   17:15:30
2  not structured electronic documents.
3  BY MR. MONACH:
4    Q.  And it also could be -- the segmentation could
5  be imposed on a structured electronic document in a way  17:15:39
6  that's different from the underlying structure of the
7  document, right --
8        MS. MAROULIS:  Objection; incomplete
9  hypothetical.
10  BY MR. MONACH:                                           17:15:52
11    Q.  -- in the Robbins invention?
12    A.  The Robbins invention does not -- uses a
13  variety of different segmentation techniques, some of
14  which do not rely upon the underlying structure of the
15  electronic document.                                     17:16:07
16    Q.  Is it correct that Robbins provides for the
17  segmentation component to divide a document into any
18  number of segments or sectors?
19    A.  I think -- I'm not sure that there is a --
20  there is unlimited number of segments.  I don't know if  17:16:42
21  there's an unlimited number of -- I don't know if, in a
22  practical sense, there is an unlimited number of
23  segments to which a structured electronic document could
24  be divided.  But I think that the number of segments is
25  somewhat under the user control.  There's probably some  17:17:02

Page 221

1  practical limit under which it makes no more sense to     17:17:04
2  try to squeeze it up.
3    Q.  All right.  You can't, say, have fewer -- you
4  can't make so many segments that each one is smaller
5  than a pixel, for example?                                17:17:14
6    A.  That's an example.  You can't do sub-pixel
7  segmentation, correct.
8    Q.  Okay.  So the -- if I understand you
9  correctly, the segmentation in Robbins is not -- even
10  though one could use information from the underlying      17:17:33
11  document if one wanted, that there's no necessary
12  derivation of the segmentation in Robbins from the
13  structure of the underlying document; is that right?
14        MS. MAROULIS:  Objection; vague.
15        THE WITNESS:  Could you read that one back?  I     17:17:55
16  kind of lost it.  Sorry.
17  BY MR. MONACH:
18    Q.  Is it correct that the segmentation in Robbins
19  is not necessarily dependent upon or derived in any way
20  from the structure of an underlying electronic document?  17:18:07
21    A.  I believe that there are modes of operation
22  for Robbins where the segmentation would not necessarily
23  depend upon the underlying structure of an electronic
24  document.  There are modes of operation where the
25  segmentation can be performed in those ways.  But         17:18:31

Highly Confidential - Attorneys' Eyes Only

Page 222

1 there's also modes of operation that do rely upon the      17:18:34
2 underlying structure to provide -- to provide the
3 segmentation.
4      Q.  Where it's determined by the underlying
5 structure or the user has the option of taking      17:18:46
6 information from the underlying structure?
7      MS. MAROULIS:  Objection; vague and compound.
8      THE WITNESS:  It's based upon the
9 underlying -- underlying structure.
10 BY MR. MONACH:      17:18:59
11      Q.  And what example is there in Robbins of that?
12      A.  For example, usage of the -- of the
13 underlying -- let me -- so there's a -- figure 14 in the
14 patent shows -- figure 14 shows a series of alternate --
15 it's not in the chart, I don't think -- shows a series      17:19:33
16 of alternate segmentation methods which are -- which can
17 be applied, some of which rely -- some of which are
18 generated externally and overlaid; and some of which
19 rely upon the structure data.
20      Q.  Can you point to any example in your claim      17:20:02
21 chart in Appendix 8 or in the Robbins patent -- and
22 we're checking to see if we have a copy of the Robbins
23 patent here -- that uses something besides the segments
24 or sectors that are the segmentation component output
25 for enlargement or translation of the view of the      17:20:26

Page 223

1 document?      17:20:29
2      A.  So if we go to the bottom of page 4 of
3 deposition Exhibit 18, it says, "Turning now to figure
4 14, different types of segmentation are demonstrated.
5 For example, the display screen and/or the content      17:20:47
6 located thereon can be divided into equal area,
7 non-overlapping segments, 1410; equal area overlapping
8 segments whereby the adjoining areas have overlap when
9 zoomed in, 1420; equal area positioned to correspond
10 with highest density areas of the data set, 1430;      17:21:09
11 nonequal area positioned and sized to more closely
12 correspond with highest density areas of the data set;
13 and/or nonequal area and arbitrary aspect ratio regions
14 that adapt to underlying data and usage."
15      So I think those are the examples that talk      17:21:29
16 about the variety of different segmentation techniques,
17 some of which, for example, density areas and arbitrary
18 aspect ratio regions adapting to underlying data and
19 usage are what I'm referring to.
20      Q.  Does any of those examples that you just read      17:21:50
21 require that the segmentation or any subsequent
22 enlarging or translation is exclusively dependent upon
23 the structure of the underlying electronic document or a
24 box identifying a box among a plurality of boxes in the
25 structured electronic document -- in the claim      17:22:19

Page 224

1 electronic document?      17:22:19
2      MS. MAROULIS:  Objection; vague and compound.
3      THE WITNESS:  I think there are -- there are
4 three areas that I would refer to.  In the text that I
5 just read, the one labeled "1430," the one labeled      17:22:28
6 "1440," and the one labeled "1450" are three that --
7 that rely upon the structure of the -- associated with
8 the data set.
9 BY MR. MONACH:
10      Q.  And it's the user's option either to ignore      17:22:56
11 the -- that underlying data or to use it or to use it,
12 in part, in Robbins, right?
13      MS. MAROULIS:  Objection; calls for
14 speculation.
15      THE WITNESS:  I don't, sitting here now,      17:23:23
16 remember with respect to Robbins whether or not what --
17 I believe the user had -- has some discretion over the
18 control -- has some discretion.  But I believe in other
19 cases the data set drives how the segmentation occurs.
20 I believe both were available.  But I'm -- I'm not sure      17:23:38
21 of that.  It's my best recollection sitting here now.
22 BY MR. MONACH:
23      Q.  Where in Robbins, if anywhere, does it
24 disclose while a first box is enlarged, detecting a
25 second gesture on a second box other than the first box      17:24:06

Page 225

1 and in response to detecting the second gesture      17:24:09
2 translating the structured electronic document so that
3 the second box is substantially centered on the touch
4 screen display?
5      MS. MAROULIS:  Objection; vague.      17:24:19
6      THE WITNESS:  I think an illustration of that
7 is shown on page -- an illustration showing the ability
8 of Robbins to select a first box with a first gesture
9 which is enlarged and translated into the user interface
10 space and then allow for the selection of a second box      17:24:57
11 with a second gesture is illustrated -- is partially
12 illustrated by figure labeled "B" on page 4 numbered
13 1420.
14      Let me explain.
15      What's being shown here is -- is overlapping      17:25:16
16 segmentation with adjoining areas.  So, for example, if
17 the -- if the center -- the segment in the middle were
18 selected, it would select the segment in the middle with
19 a variety of adjacent -- or boxes that surround that
20 segment.  A second gesture -- let me step back.  The      17:25:38
21 first gesture to the center of -- of figure 1420 would
22 select that first segment with the adjacent boxes around
23 it.  Then selection of any of those second boxes with a
24 second gesture would -- would zoom to those adjacent
25 sectors.  So you get an enlargement and a centering with      17:26:03

Highly Confidential - Attorneys' Eyes Only

Page 226

1   the first gesture, and a tap to scroll with the second   17:26:07
2   gesture to one of the adjacent gestures.
3       MR. MONACH:  Let's mark as Exhibit 19, Exhibit
4   DD from your invalidity report, which is the Robbins
5   '349 patent.   17:26:27
6           (Whereupon Exhibit 19 marked
7                 for identification.)
8   BY MR. MONACH:
9       Q.  Do you have a copy of the Robbins patent
10  marked Exhibit 19 in front of you, sir?   17:27:10
11      A.  I have Exhibit 19 which appears to be a copy
12  of Robbins '349 patent.
13      Q.  Okay.  Is there somewhere in this patent that
14  specifically shows all of the steps of Claim 50 being
15  performed, and, if so, could you walk me through that,   17:27:35
16  please?
17      MS. MAROULIS:  Objection; vague.  Calls for a
18  narrative.
19      THE WITNESS:  So I believe my -- in my claim
20  chart -- so I'm not -- maybe I don't understand the   17:28:23
21  question.  I believe in my claim chart, that the
22  description shown for claim 2 shows and describes how
23  Robbins meets each limitation of claim 2.
24      I didn't say that very clearly.
25      In Exhibit 18, Deposition Exhibit 18 --   17:28:51

Page 227

1       MR. MONACH:  I do, sir.   17:28:55
2       THE WITNESS:  Okay.
3   BY MR. MONACH:
4       Q.  So where -- where in your claim chart or in
5   the patent does it show enlarging a first box of a   17:29:33
6   structured electronic document -- enlarging and
7   translating the first box to be substantially centered,
8   and while that is enlarged, making a gesture to a second
9   box which is -- so that the underlying electronic
10  document is translated so the second box is   17:29:57
11  substantially centered?
12      MS. MAROULIS:  Objection; vague and compound.
13      THE WITNESS:  So 2A, which is displaying at
14  least a portion -- at a portable electronic device with
15  a touch screen display, displaying at least a portion of   17:30:18
16  a structured electronic document comprising a plurality
17  of boxes is shown at Figure 300.  And the accompanying
18  text in 2A describes how that works.
19  BY MR. MONACH:
20      Q.  Does the structured electronic document itself   17:30:37
21  have a plurality of boxes, or is it a document on which
22  a grid or set of boxes has been overlain --
23      MS. MAROULIS:  Objection; vague and compound.
24  BY MR. MONACH:
25      Q.  -- in what you're showing in 2A?   17:30:58

Page 228

1       A.  So I believe that the figure shown labeled as   17:31:15
2   "Figure 300" is an example taken from the patent which
3   shows a portable handheld device with a structured
4   electronic document upon -- in this particular example
5   upon which a grid has been overlaid -- a 9-segment grid   17:31:32
6   has been overlaid on it that is -- that has -- where a
7   grid has been overlaid -- a segmentation or grid has
8   been overlaid on it.
9       So that's what I think 300 is.
10      Looking at 3 -- looking at, now, figure 14, we   17:31:56
11  can see that there are a variety of different ways in
12  which segmentation can occur.  So the figure -- the
13  example in the claim chart, which is Figure 300, is
14  shown -- is illustrated in figure 14 by the segmentation
15  known as A.  But if you walk across the page, by the   17:32:24
16  time you get to C, which is "equal area partitioned
17  corresponding with highest density areas of the data
18  set," you can tell that the -- it has a description of a
19  data -- of a segmentation based upon the data that
20  underlies -- the structured data that underlies the data   17:32:46
21  set.
22  BY MR. MONACH:
23      Q.  Okay.  So if I'm understanding you correctly,
24  figure 14A through E shows that the user can impose
25  different types of segmentation on the same underlying   17:32:59

Page 229

1   electronic document, right?  And then future navigation   17:33:05
2   on that document is determined by whatever type of
3   segmentation the user has imposed?
4       MS. MAROULIS:  Objection; vague and compound.
5       Counselor, you have five minutes left.   17:33:24
6       THE WITNESS:  I disagree.  I believe that --
7   that what figure 14 shows is the range of segmentation
8   techniques which are available and described in the
9   Robbins -- in the Robbins disclosure, there are a
10  variety of segmentation techniques, some of which may be   17:33:45
11  user-imposed; others which maybe driven by the data set
12  that underlies the data -- the -- excuse me -- the
13  structured data that underlies the data set.
14  BY MR. MONACH:
15      Q.  Do you --   17:34:00
16      A.  So I'm not agreeing that these are
17  user-imposed sessions, but, rather, they can be
18  segmentation choices given by the underlying data.
19      Q.  Is there anyplace in the Robbins patent or in
20  your claim chart that you believe shows a first -- well,   17:34:18
21  a first box has been enlarged and substantially centered
22  that a gesture on a second box causes the second box to
23  be substantially centered?
24      MS. MAROULIS:  Objection; asked and answered.
25      THE WITNESS:  I -- yes.  I think that -- and   17:34:51

Highly Confidential - Attorneys' Eyes Only

---

Page 230

1  the answer's yes.  I think the description in 2B and 2C   17:34:53
2  in my -- in Exhibit 18 -- Deposition Exhibit 18 show a
3  selection of the first segment.  And while that first
4  box is enlarged, selection of a second segment to -- I
5  mean, a second box which then will enlarge and center   17:35:24
6  that -- or, rather, center -- I shouldn't say -- or
7  zoom.  Tap to zoom.  So the first one is a tap to zoom.
8  The second gesture is a tap to scroll.
9  BY MR. MONACH:
10     Q.  Please identify for me in your chart the first   17:35:41
11  box that's enlarged and substantially centered.  Where
12  is that?
13        MS. MAROULIS:  Objection; asked and answered.
14        THE WITNESS:  In the description for 2B,
15  detecting a first gesture and determining the first box,   17:36:01
16  there's a -- an illustration there which the
17  illustration is labeled "340."  And the text supports
18  the fact that the segment 6 has been enlarged and it's
19  substantially centered.
20  BY MR. MONACH:                      17:36:18
21     Q.  Where is the second box if you look at page
22  340 -- or Figure 340?
23     A.  So in 2B, there isn't a second box shown.
24  When we go to 2C, which is a description of the ability
25  to enlarge and then show second boxes which are   17:36:32

---

Page 231

1  available as a second gesture, the illustration at 1420   17:36:39
2  shows an equal overlapping segmentation of adjoining
3  areas prior to the first gesture.
4     Q.  Do you have anyplace where after a first
5  gesture that enlarges the first box, you can still see   17:36:57
6  the second box and then tap on the second box to
7  substantially center it?
8        MS. MAROULIS:  Objection; asked and answered.
9        THE WITNESS:  Well, I don't have an
10  illustration -- I don't have an illustration in the   17:37:12
11  claim chart that shows a first box with second boxes
12  which would -- which are available for a second gesture.
13  But I believe that the second describes -- describes the
14  method by which that second box with a second gesture
15  could be selected or preselected.   17:37:31
16  BY MR. MONACH:
17     Q.  By pressing on a number key?
18     A.  Well, one of the methods that -- that can be
19  used -- well, the input component, 230, can be any one
20  of a touch pad, key pad, pointing device, stylus,   17:37:47
21  joystick or D pad.
22        MS. MAROULIS:  Okay.  We're at seven hours, so
23  I think we're done with the deposition.
24        MR. MONACH:  Okay.  All right.  Thank you.
25        MS. MAROULIS:  I don't have any questions for   17:38:02

---

Page 232

1  the witness.                      17:38:03
2        We'll reserve the right to review and sign.  I
3  believe there was some discussion of code, so we'll put
4  it under protective order for now and we'll dedesignate
5  it as needed.                      17:38:12
6        Thank you, everyone.
7        THE VIDEOGRAPHER:  This marks the end of disk
8  4 of 4 and concludes today's deposition of Stephen Gray.
9  The time is 5:38 p.m.  And we're off the record.
10        (The proceeding adjourned at 5:38 p.m.)
11
12
13        _____
14        STEPHEN GRAY
15
16
17  Subscribed and sworn to before me
18  this      day of      2012.
19
20  _____
21
22
23
24
25

---

Page 233

1        CERTIFICATE
2  STATE OF CALIFORNIA    )
3                        ) ss.:
   COUNTY OF CONTRA COSTA )
4
5     I, Heidi Belton, a Certified Shorthand
6  Reporter, a Registered Professional Reporter,
7  a Certified Realtime Reporter, and a
8  Certified Realtime Professional within and
9  for the State of California, do hereby
10  certify:
11     That STEPHEN GRAY, the witness whose
12  deposition is herein before set forth, was
13  duly sworn by me and that such deposition is
14  a true record of the testimony given by such
15  witness.
16     I further certify that I am not related to
17  any of the parties to this action by blood or
18  marriage and that I am in no way interested
19  in the outcome of this matter.
20     In witness whereof, I have hereunto set my
21  hand this 5th day of May, 20112.
22  _____
23     HEIDI BELTON, CSR, RPR, CRR, CCRR
24     Certified Shorthand Reporter No. 12885
25

Highly Confidential - Attorneys' Eyes Only

Page 234

1          INDEX TO EXAMINATION
2
3     WITNESS: STEPHEN GRAY, VOLUME I
4
5   EXAMINATION:                    PAGE
6   BY MR. MONACH                     6
7
8          INDEX TO EXHIBITS
9       STEPHEN GRAY, VOLUME I
10    Apple Inc. vs. Samsung Electronics Co.
11
12
13  PLAINTIFF'S                     PAGE
14
15  Exhibit 1    Document titled "Expert Report of    5
               Stephen Gray, Regarding
16             Invalidity of U.S. Patent Nos.
               7,844,915 and 7,864,163
17
18  Exhibit 2    Document titled "Rebuttal Expert    15
               Report of Stephen Gray Regarding
19             Non-Infringement of Asserted
               Claims of U.S. Patent Nos.
19             7,844,915 and 7,864,16
20
21  Exhibit 3    Document titled "Appendix 1" from    17
               Mr. Gray's invalidity report
22  Exhibit 4    Document titled "Appendix 2"    18
23  Exhibit 5    Document titled "Expert Report of    34
               Karan Singh, Ph.D. Regarding
24             Infringement of U.S. Patents Nos.
               7,864,163, 7,844,915 and
25             7,853,891"

Page 235

1   Exhibit 6    Document titled "Exhibit 17,"    36
               from the Singh infringement
2              report
3   Exhibit 7    Document titled "Samsung's Patent    70
               Local Rule 3-3 and 3-4
4              Disclosures"
5   Exhibit 8    Document titled "Exhibit J-1,    72
               Samsung's Invalidity Claim Charts
6              for MERL DiamondTouch Table
               System"
7
               Exhibit 9    Document titled "Appendix 3," to    74
8              Mr. Gray's invalidity report
9   Exhibit 10   Document titled "DiamondTouch: a    83
               Multi-User Technology," by Dietz
10             and Leigh
11  Exhibit 11   Document titled "Exhibit M," to    95
               Mr. Gray's invalidity report
12
               Exhibit 12   U.S. Patent 7,844,915    103
13
               Exhibit 13   Document titled "Appendix 4," to    140
14             Mr. Gray's invalidity report
15  Exhibit 14   Document titled "Appendix 5"    145
16  Exhibit 15   U.S. Patent 7,864,163    148
17  Exhibit 16   Collection of certified    188
               translated Korean documents
18
19  Exhibit 17   Document titled "Appendix 7,"    198
               from Mr. Gray's invalidity report
20  Exhibit 18   Document titled "Appendix 8,"    217
               from Mr. Gray's invalidity report
21
22  Exhibit 19   Document titled "Exhibit DD,"    226
23             from the Robbins patent
24
25

Page 236

1   NAME OF CASE: Apple Inc. v Samsung Electronics Co.
2   DATE OF DEPOSITION: Friday, May, 4, 2012
3   NAME OF WITNESS: STEPHEN GRAY
4   Reason Codes:
5      1. To clarify the record.
       2. To conform to the facts.
6      3. To correct transcription errors.
7   Page _____ Line _____ Reason _____
    From _____ to _____
8
    Page _____ Line _____ Reason _____
9   From _____ to _____
10  Page _____ Line _____ Reason _____
    From _____ to _____
11
    Page _____ Line _____ Reason _____
12  From _____ to _____
13  Page _____ Line _____ Reason _____
    From _____ to _____
14
    Page _____ Line _____ Reason _____
15  From _____ to _____
16  Page _____ Line _____ Reason _____
    From _____ to _____
17
    Page _____ Line _____ Reason _____
18  From _____ to _____
19  Page _____ Line _____ Reason _____
    From _____ to _____
20
    Page _____ Line _____ Reason _____
21  From _____ to _____
22  _____
23          STEPHEN GRAY
24
25

Highly Confidential - Attorneys' Eyes Only

**A**

**ability (19)**
27:18 105:22 160:12
160:19,23 161:5,10
161:20 162:6,25
164:2 180:13
184:12 185:17
186:11 193:24
214:23 225:7
230:24
**able (2)**
94:8 202:18
**absent (3)**
15:1,22 93:4
**absolutely (1)**
177:24
**accept (5)**
16:19 19:9 113:8
165:7 192:4
**access (6)**
26:5,17 28:1 89:2
141:19 217:22
**accompany (2)**
135:21,21
**accompanying (1)**
227:17
**accurate (11)**
19:4 20:23 33:10
42:24 54:2,3 56:16
61:4 64:3 101:3
209:25
**accurately (1)**
54:15
**accused (26)**
36:8 118:5,12,20,23
119:3 121:7,14
123:4 129:17
131:19,20 136:2
137:9 149:7,15,22
160:11,18 161:4,9
161:19 169:7
185:17,24 186:18
**action (3)**
61:20 100:22 233:17
**actions (6)**
98:10,13,24 100:4,6
102:1
**activated (1)**
111:25
**activities (1)**
115:4
**activity (1)**
196:13
**actual (4)**

60:19 65:8 86:6
105:23
**adapt (1)**
223:14
**adapting (1)**
223:18
**add (1)**
12:6
**added (1)**
108:15
**addition (2)**
11:17 128:8
**additional (4)**
55:21 126:18 198:17
210:5
**Additionally (1)**
53:14
**address (1)**
14:8
**addresses (1)**
86:22
**Addressing (1)**
15:15
**adds (1)**
150:25
**adjacent (12)**
165:23 171:4 176:12
176:15 178:19
180:2 193:19
214:18 225:19,22
225:24 226:2
**adjoining (3)**
223:8 225:16 231:2
**adjourned (1)**
232:10
**admit (1)**
187:10
**adopted (1)**
69:13
**ago (6)**
8:11,11 22:3,5 154:14
219:9
**agree (15)**
38:23 90:3 116:1,12
117:10 136:1 137:8
138:11 149:6
158:11 167:4
176:13,19 205:2
209:20
**agreed (1)**
53:15
**agreeing (1)**
229:16
**ahead (6)**

63:14 111:1,11,17
168:2 208:6
**airport (1)**
22:1
**al (2)**
5:9 82:14
**Alan (1)**
82:13
**algorithm (1)**
218:11
**allow (11)**
89:1 119:17,25 133:8
146:25 152:1 158:6
180:15 183:13
217:22 225:10
**allowability (1)**
52:12
**allowed (10)**
26:17 28:11 61:22
119:21 120:3,15
123:25 124:16,18
124:22
**allows (6)**
37:3 88:11,19 174:12
195:16 217:19
**alludes (1)**
88:23
**alter (1)**
51:3
**alterations (1)**
205:11
**alternate (3)**
47:19 222:14,16
**alternative (1)**
116:6
**Alto (4)**
1:18 2:6 5:1,14
**AMERICA (2)**
1:8,9
**analogous (7)**
39:11 40:3,8,19,20
215:25 216:14
**analysis (17)**
31:21,23 32:4,6 66:14
66:19 102:16 110:1
146:4,20 147:4,12
147:24 148:1,4,9
150:17
**analyze (2)**
93:22 118:1
**analyzed (11)**
31:6,20 32:8 42:3
150:2,6,8,9 161:5
169:4 180:13

**analyzing (1)**
25:21
**Andrew (2)**
3:7 5:22
**Android (23)**
32:12,14,14,17,23
33:5,9,11,13,14,15
33:16 34:1 35:20
39:12,18,21 40:2,13
41:2,17 42:25 45:13
**and/or (3)**
112:8 223:5,13
**Angeles (1)**
4:5
**animated (1)**
193:3
**answer (52)**
10:23,25 11:24 13:21
18:21 29:3,4 40:14
41:24 46:5 49:3,12
61:8 62:17 67:20
73:17 75:2 80:19,23
80:23 81:13 82:19
82:23 83:1,2 89:20
90:6 94:19 95:4,12
99:14 108:12
111:14 117:4,21
119:15 121:14
122:5 127:25 132:2
147:21 167:23,24
168:1,1,3 172:18
177:12 178:6,7,12
203:23
**answered (26)**
12:14 26:14,25 87:1
90:7 95:1,15,18
104:7 117:24 119:1
119:20 127:19
128:17,18 129:9
147:12,20 148:10
159:9 170:21 171:6
198:7 229:24
230:13 231:8
**answers (2)**
60:14 95:7
**answer's (2)**
142:20 230:1
**antenna (4)**
84:11 87:11 97:17
112:13
**antennas (5)**
84:7,18 90:16 97:23
98:2
**anticipate (5)**

143:17 145:10 146:19
146:20 147:15
**anticipated (3)**
71:5 74:15 147:13
**anticipates (6)**
139:23 141:7,8
142:21 144:25
146:15
**anticipation (8)**
70:22 71:2 145:22
146:12 147:6,11,25
148:8
**anyplace (2)**
229:19 231:4
**anyway (2)**
16:11 17:2
**apart (2)**
122:13,18
**app (1)**
62:14
**apparatus (2)**
111:21,22
**apparently (2)**
128:17,19
**appear (10)**
76:11 77:10 91:4
101:18 130:2
140:15 165:10
166:4 187:16 199:7
**appearance (1)**
59:11
**appears (5)**
77:2,19 78:12 140:14
226:11
**appendices (5)**
14:19 15:2,22 16:2
140:4
**appendix (76)**
16:14,23 17:5,12,15
17:21 18:11,18 19:1
55:8,21 74:2,7,10
74:12,17 75:1,8,16
75:18,20,25 76:4,9
76:10,16,23 77:2,5
77:9 78:9,14,18,22
79:4,4,9 80:8,25
81:7,9,23 82:20
83:19 91:24 92:1,4
93:11 94:3,14 96:6
98:6 140:2,3,11,15
145:2,5 198:23
199:3,5,6,6,7 204:1
205:23 217:2
218:18 222:21

Highly Confidential - Attorneys' Eyes Only

234:20,22 235:7,13
235:15,18,20
**Apple (16)**
1:4 3:3 5:8,23,24 8:25
9:1,12,18 10:4
33:14 147:14
190:12 193:24
234:10 236:1
**Apple's (1)**
146:21
**application (53)**
60:17,23 61:2,13,13
61:21,23 62:1,5,6
62:14,19 91:5 97:9
99:7,18,21 100:1,1
100:9,11,13,15
101:5,23,25 102:1,2
123:8,17,18 124:1
153:19 183:8,15
195:15 208:14
212:20,25 213:11
213:22 214:3,17
215:3,10 216:1,2,3
216:11,15,19,21,23
**applications (17)**
64:9 75:24 96:13 97:9
99:14 123:7,9,10,11
123:12,14,22 124:2
132:20 183:5,17,19
**application-depend...**
60:20
**applied (8)**
130:21,23 143:20,22
154:25 158:9 220:1
222:17
**applies (1)**
165:20
**apply (6)**
103:10 130:25 136:13
136:14 147:5,7
**approach (2)**
91:6 124:15
**appropriate (2)**
89:17 101:10
**approximate (1)**
182:10
**approximately (2)**
5:15 67:25
**April (2)**
197:20,20
**arbitrary (2)**
223:13,17
**area (14)**
86:10,17,19 87:4,6,8

87:10,13 223:6,7,9
223:11,13 228:16
**areas (15)**
7:10 88:9 113:19
155:9 158:12,23
159:16 223:8,10,12
223:17 224:4
225:16 228:17
231:3
**argument (3)**
111:9 171:8,9
**argumentative (1)**
209:18
**arguments (1)**
135:18
**arranged (1)**
165:23
**arrived (1)**
59:22
**art (23)**
52:5 71:6,10 113:3
144:14,24 145:10
145:15 146:9,15,16
146:20,22 147:5,12
147:15,24 148:1,2,4
151:8 217:8,12
**article (3)**
76:21 82:6 83:24
**aside (1)**
55:11,12
**asked (36)**
9:20 10:18 12:11,14
13:5 16:10,16 18:22
25:19 26:14,25 35:7
51:1,14 54:5 65:3
87:1 104:7 117:6,6
117:24 118:25
119:18 127:19
129:9 142:17
145:21 147:20
148:10 170:21
171:6 172:3 198:7
229:24 230:13
231:8
**asking (17)**
7:18 10:8 12:16,17
26:9,10,20 37:24
38:1,4 84:15 99:24
116:25 119:16,16
169:3 189:6
**aspect (2)**
223:13,18
**aspects (1)**
91:4

**Assembler (2)**
23:7,14
**asserted (21)**
15:19 71:4,9 81:24
82:10,16,22 83:1
90:4 92:5,9 93:3,7
93:18,18,25 94:4,15
139:18 217:13
234:18
**asserting (2)**
118:12 204:6
**assertion (2)**
165:8 192:4
**assignment (4)**
14:10,12 31:14,15
**assignments (1)**
31:13
**associated (13)**
25:18,25 26:16 43:16
60:21 63:1 80:25
88:20 99:13 107:9
202:22 218:9 224:7
**Associates (1)**
20:11
**association (1)**
5:19
**assume (10)**
86:18,19 87:6,7,8,11
102:8 116:25 168:4
168:7
**assumes (14)**
39:6 40:4 41:20 57:21
59:13 66:15 106:20
116:16 117:14
134:6 170:20
191:24 196:7
206:22
**assuming (3)**
49:8 117:7 169:9
**attached (5)**
16:14 27:3 34:7
125:10,13
**attachments (1)**
71:23
**attempted (2)**
122:13 147:23
**attending (1)**
30:18
**attention (3)**
96:16 140:17 149:4
**attorney (2)**
10:15 134:23
**attorneys (8)**
54:5 69:11,16,18,25

120:9 125:1 198:9
**augmenting (1)**
69:24
**authority (1)**
186:15
**author's (4)**
154:2,5 157:19
158:12
**available (5)**
122:25 224:20 229:8
231:1,12
**Avenue (2)**
3:22 5:18
**average (2)**
7:16 8:7
**aware (20)**
50:1 51:6,7,8 52:20
54:7,21 55:4,14
58:22 89:13 94:1
128:15 141:13
178:13,16 196:4
198:3 201:17,23
**axis (1)**
59:17
**a.m (11)**
2:2 5:3,15 50:11,14
50:14,17 83:6,8,8,9

───────────────
**B**
───────────────
**B (7)**
89:2 134:18 157:5,7
163:16,16 225:12
**bachelor (1)**
22:14
**bachelor's (2)**
22:12,20
**back (44)**
8:11 11:20 50:17
52:13,15,16 55:25
56:5,5 57:8 82:11
83:10 87:23 100:16
101:7 105:25
106:12,14 111:15
124:11,17 125:16
127:12 143:25
144:7,13 145:17
148:24 160:9 162:9
162:18 169:24
172:24 174:9
191:11 193:16
195:2 210:25
214:24 215:4,5
219:8 221:15
225:20

**background (1)**
10:8
**backlit (1)**
27:18
**back-circle (1)**
120:6
**Bank (1)**
20:9
**Barnes (3)**
32:22 33:4,7
**base (1)**
35:20
**based (17)**
45:16 47:18 58:1
90:18,21 95:2,7
132:8 136:3 138:3
144:10 170:2,7
180:19 209:9 222:8
228:19
**baseline (1)**
210:13
**basic (2)**
69:23 186:12
**basically (1)**
150:22
**Bates (2)**
33:21 188:22
**Beach (1)**
7:1
**becoming (1)**
200:4
**Bedrock (1)**
20:8
**beginning (5)**
50:15 64:17 106:10
169:22 171:12
**begins (1)**
42:10
**behavior (12)**
121:18 122:1 123:7
126:12 127:13
132:6 179:20,21
183:9 185:9 191:19
195:13
**behaviors (3)**
24:24 190:11,11
**belief (2)**
170:2 179:20
**believe (86)**
9:11 12:19 14:25
15:22 16:25 18:17
18:17,22 19:22 20:5
21:12,13 29:2,3
30:17,25 32:9 33:6

Highly Confidential - Attorneys' Eyes Only

33:7,9 36:14,21,24
37:6 51:11 54:19
62:3 65:12 70:3
72:20 73:12,14
74:10,16,25 80:13
81:1,21 83:17 84:15
86:21 94:20 101:9
119:25 128:15
141:18,18 142:11
142:20 149:14
150:1 170:8,22
171:7 181:10,13
185:16 188:3 189:6
189:11 190:13
191:1 192:1,6
198:14,19 199:23
207:1,13,18 208:15
208:15 215:1
216:25 217:12
221:21 224:17,18
224:20 226:19,21
228:1 229:6,20
231:13 232:3
**Belton (5)**
1:22 2:7 5:19 235:5
233:23
**best (52)**
8:9,17 9:6 11:7 13:5
14:11 16:6,6,11
21:8,18,21 23:23
27:23 28:19 29:9,18
31:7,16,25 35:8,12
35:24 36:18 39:20
43:10,14,20 45:9
46:22 47:6,16 48:7
49:24 57:12 58:5
59:2,6 68:13,14,20
122:5 123:20
127:24 137:1
139:15 144:23
182:2,9 184:10
214:20 224:21
**better (4)**
30:8 66:4 98:23
130:17
**beyond (1)**
150:12
**bit (10)**
17:6 35:18 57:9 80:2
91:21 101:17
110:22 124:12
125:16 137:21
**bitmap (2)**
219:24,25

**block (10)**
114:16 157:10 166:18
168:16,18 171:16
179:16,18 203:9,9
**blocks (6)**
114:16 157:9 165:10
165:12 166:7 167:3
**blood (1)**
233:17
**blowup (1)**
208:20
**blue (2)**
204:14,22
**body (4)**
34:6 153:5,6,8
**bold (2)**
38:5 58:14
**bolded (1)**
129:22
**books (1)**
218:21
**border (1)**
155:22
**bottom (6)**
63:10,16 196:3
218:17,25 223:2
**boundaries (3)**
157:6 158:5 212:16
**boundary (5)**
156:3 157:4,8 158:4
159:15
**bounding (4)**
86:8,20 87:9,13
**bounds (1)**
214:1
**box (217)**
86:8,20 87:9,13
114:21 115:7
120:23,25,25 121:4
121:5 156:22,24
158:13,18,19
159:14,19,19,21
162:25 163:7,15,15
163:16,16,16,17
164:2 166:8,9,9,13
166:19,24 168:5,12
168:14,18,22,23
169:5 170:3,24
171:14,16,20,23
172:7 173:2,5,8,16
173:20,23 174:3
175:13,14,14,18
176:22 177:2

178:21,25 179:9,10
179:16 180:8,9,15
180:20,21,21,22,22
180:24 181:4,6,12
181:19 182:6,21
183:4,14 184:1,2,3
184:5,12,12,14
185:3,4,4,7,10,11
185:11,13,18,19,20
185:21 186:1,2,4,23
187:18,22,24
194:17 195:5,5,10
202:23 203:6
204:11,25 205:6
206:2,11,13,13,14
207:2,21 208:8,9
209:4,22 210:2,3
211:6,8,9,10,11,13
211:17,18,18,20,21
211:21,22 212:3,3,4
212:5,6,6,7,9,13,14
212:15,16,19,22,23
212:24,24 213:1,7,8
213:10,12,15,17,20
213:21,25,25 214:1
214:3,11,13,15
215:1,5 216:2,3,8,9
216:18 223:24,24
224:24,25,25 225:3
225:8,10 227:5,7,9
227:10 229:21,22
229:22 230:4,5,11
230:15,21,23 231:5
231:6,6,11,14
**boxes (146)**
156:18,25 157:5,14
158:4,7 159:21,22
160:1,6 161:1,6
162:1,15,23 163:1,6
163:8,11,15,19,20
164:3 165:1,2,10,13
165:23,24 166:3,7
166:11,14,20,21,25
167:6,8,9,20,21
168:11,14,16,17,19
168:23 169:6,10,11
169:13 170:4,10,14
170:17,19,24 171:3
171:4,14,17,21,24
172:8 173:1,3,4,5,9
173:17,20,21,23
174:1,3,7,10,12,15
174:16,24 175:5,6,9
175:18,20,21,23,25

176:1,2,4,5,8,10,12
176:13,15,16 177:2
178:8,10,13,16,18
178:19,22 179:1,6,7
179:12,25 180:2,2,4
180:8,16,17 182:2
193:19 195:18
200:20 201:11,15
201:15,18,24 202:9
202:11,18,19
204:13,21 207:10
207:25 212:17
214:18 223:24
225:19,22,23
227:17,21,22
230:25 231:11
**boxful (1)**
120:22
**branch (3)**
46:6,12 57:18
**branches (2)**
45:20 46:4
**breadth (1)**
125:22
**break (8)**
17:13 50:9 83:4 106:4
106:5 148:14
205:16 210:18
**briefly (3)**
74:9 85:4 217:14
**bring (1)**
216:6
**brings (1)**
73:1
**briskly (1)**
19:25
**broad (1)**
63:6
**broadened (1)**
80:2
**broader (1)**
79:25
**browser (21)**
62:1,5,8,9,15 152:1
153:1,9,11,23 154:2
154:7,13,16,20
156:6,9,21 158:6
191:3,5
**browsers (2)**
210:14,15
**Browsing_Web (2)**
191:3,4
**bullet (6)**
42:8 56:10 58:10,13

58:23 63:9
**bunch (1)**
170:9
**bus (2)**
115:1,2
**business (2)**
1:7 31:17
**butted (1)**
176:6
**buttons (1)**
28:6

---
**C**

**C (8)**
1:14 3:1 4:1,1 32:9
163:16,17 228:16
**Cal (3)**
22:12,15,21
**calculation (1)**
8:8
**calendar (2)**
210:3,4
**calender (1)**
218:20
**California (13)**
1:2,4,18 2:6 3:6,16
4:5 5:1,11,14 7:1
233:2,9
**call (18)**
35:23 42:19 48:21
56:13 57:25 59:20
66:10 133:22 134:3
134:11,16 135:16
135:23 136:3,3
200:6 204:14
216:18
**called (17)**
44:22 46:17 48:24
56:25 57:3 58:3
63:21 71:24 122:14
122:21 125:5
140:18 144:15
200:12 204:3 211:6
211:10
**calling (7)**
48:18 58:12 121:19
127:18 135:6
211:20 212:19
**calls (63)**
8:14 11:18 49:20
56:20 58:15,21
59:15 60:4,8,12
61:5,15 64:17 65:1
66:5 68:2,21 80:11

Highly Confidential - Attorneys' Eyes Only

85:2,13 91:15
103:14 107:17
108:18 109:1
115:12 116:16
117:13 119:13
121:9 130:4 132:10
135:9,14 136:5,6
137:10,11 138:24
147:2 149:12
157:24 158:24
159:24 160:15
161:2,13 163:2
164:17 168:25
179:3 180:10 188:1
190:5 191:25
192:24 194:2,18
196:8 205:8 217:16
224:13 226:17
**capability (3)**
108:1 115:18 181:18
**captivate (2)**
39:13 40:25
**career (3)**
22:25 23:3,4
**careful (1)**
7:24
**carefully (2)**
101:7 118:1
**carry (1)**
96:18
**cascading (3)**
154:11,22,22
**case (48)**
1:6 6:4,4,6,10 8:25
9:1,10 14:19 15:13
20:25 22:6,10 28:10
28:13,22 29:15
32:16,19 33:5,7,9
33:12,23,24 39:22
49:9,10 50:21 62:9
68:19 73:4 91:19
104:12 109:6 121:7
175:18,19 176:23
179:5 182:19
183:19 189:1,16
200:2,5 213:16
236:1
**cases (23)**
8:1 33:8 39:20,21
123:10 164:8 166:5
181:3 182:7,7,8
183:21,22 184:15
187:5,6,14,17 188:4
188:8 190:10 218:6

224:19
**Catalina (3)**
20:7 22:6,11
**categories (1)**
123:24
**category (1)**
118:24
**cause (5)**
64:8 123:16 136:25
137:2,3
**causes (5)**
135:1 136:1,10,19
229:22
**CCRR (3)**
1:22 2:7 233:23
**cell (1)**
114:3
**cellular (1)**
112:12
**center (12)**
177:10 179:19 182:9
188:5,9 207:10,25
225:17,21 230:5,6
231:7
**centered (40)**
169:14 180:23,24
181:1,7,13 182:6,14
182:21 184:6,15
185:7,14,21,22
186:4 187:6,8,10,11
187:12,18 195:6,11
204:12,24,25 205:7
206:21 207:1 213:8
215:2 216:7 225:3
227:7,11 229:21,23
230:11,19
**centering (15)**
181:22 182:4,10
183:13 186:22
187:3,24 188:8
204:8 207:16
213:17,19 214:2
216:10 225:25
**centers (3)**
177:6 188:7 206:14
**certain (13)**
46:25 64:9 69:11 81:8
88:11,11,19 89:2
112:6 122:2,7
155:18 182:20
**certainly (7)**
31:6 75:4 120:8
165:18 187:5
203:19 214:23

**certainty (1)**
67:23
**certificate (3)**
184:21 213:4 233:1
**certified (6)**
189:3 233:5,7,8,24
235:17
**certify (2)**
233:10,16
**cetera (3)**
98:25 114:2 218:22
**chair (2)**
89:1,2
**chairs (3)**
84:9,10,20
**chance (2)**
51:23 68:10
**change (7)**
95:7 121:20,21 122:3
122:8 169:17 204:6
**changes (3)**
54:25,25 185:2
**characterize (1)**
186:9
**charge (1)**
68:15
**chart (18)**
36:8 63:18 64:16
65:18 99:25 139:16
140:12 144:10
196:14 222:15,21
226:20,21 227:4
228:13 229:20
230:10 231:11
**charts (8)**
34:7 56:1 71:7,25
74:19 75:10 139:19
235:5
**check (1)**
20:18
**checking (1)**
222:22
**child (2)**
64:19 219:5
**choices (1)**
229:18
**circle (1)**
168:16
**circumstances (9)**
31:11 46:25,25 47:22
60:15 64:7,9 122:2
182:5
**citation (5)**
33:2 39:2 75:9 77:3

78:13
**citations (2)**
41:1 77:5
**cite (2)**
56:23 75:8
**cited (62)**
33:24 34:5,13,21 35:8
40:2 65:17 72:14,18
72:19 73:14,15
74:18,25 75:7,25
76:1,9,10,11,13,15
76:19,20 77:1,3,9
77:11,13,14,19,20
78:3,4,5,11,16,19
78:20 79:4,6,15,17
79:21,24 80:1,2,4,8
80:18,25 81:16,18
81:23 82:20 83:18
93:11 94:25 95:8
96:5,11 138:1
**claim (134)**
34:7 36:8 37:7 42:6
53:10 56:1 63:18
64:16 65:18 71:7,9
71:25 74:19 81:10
81:18,25 82:9,16
92:5 93:3,18,25
94:4,15 103:7,8,16
103:16,18,21
106:16 107:15,19
108:3,9,14,22 110:1
110:1,4,13,13
116:10,14,14 117:7
117:9 130:3,12,14
130:14,19 131:10
135:13 137:9
139:13,14,16,19,23
140:12 143:17
144:10,10,21 145:1
146:15 149:6
150:12 156:17
161:22 162:1,5,19
165:13,20 166:12
167:10,18 168:13
168:13 170:17
171:1 172:4,4,9,14
172:24,24 173:7,11
173:18 174:1,2,5,11
174:25 175:2,2,6,15
176:3,23 177:1
178:20,25 179:11
179:21,25 182:14
182:16,25 183:6,9
184:1 185:1 187:13

204:9,10 205:2,4
211:16 213:4
222:20 226:14,19
226:21,22,23 227:4
228:13 229:20
231:11 235:5
**claimed (2)**
146:6,6,10 147:1
170:12 183:8
**claims (31)**
15:19 53:5 71:4 81:10
82:22,25 90:4 92:8
92:9,12 93:3,7,10
93:18,19 103:6,9
129:19 136:13
139:18,20 144:25
146:21 149:5
164:23,23 172:6
211:4 217:9,13
234:19
**clarification (4)**
37:23 38:14,16 95:17
**clarified (1)**
102:7
**clarify (2)**
55:20 236:5
**classes (2)**
88:11,19
**class's (1)**
42:11
**clean (2)**
13:23 51:23
**clear (10)**
11:11 13:13 34:5 39:1
58:13 114:23 117:6
142:13 145:3 213:3
**clearly (4)**
114:19 131:13 203:14
226:24
**click (2)**
98:25 215:9
**client (1)**
31:17
**clients (1)**
31:18
**Clifton (3)**
79:8 80:10,17
**close (2)**
75:4 123:2
**closely (2)**
101:17 223:11
**closest (3)**
203:3,5,8
**coaching (1)**

Highly Confidential - Attorneys' Eyes Only

110:19
**COBOL (4)**
23:7,16,20,25
**code (92)**
33:9,11,14,15,16,17
33:19,22,22,24 34:4
34:21 35:7,20,22
36:10,24 37:3,25,25
38:7,25 39:11,14,18
39:21 40:2,3,8,9,12
40:18,25 41:2 42:10
42:25 43:22 44:8
45:6,10,10,13,14,15
45:20 46:4,7,10,19
46:22,24,24 47:1,3
47:17,19 48:3 49:2
49:3 56:22,23 57:18
57:24 58:5,6 59:23
59:24 60:22 61:25
62:7 63:2 65:8,11
65:17 66:1,7,12,22
67:2,8 78:23 79:3
136:15,22 137:14
137:20,22,22,23
141:19 158:21
232:3
**Codes (1)**
236:4
**coding (3)**
151:11,14,14
**coincident (1)**
163:11
**colleagues (2)**
6:1 17:13
**collection (6)**
105:10,13 143:4
163:11 204:13
235:17
**collections (1)**
157:1
**collectively (2)**
93:24 94:14
**column (27)**
37:9,11 86:4 88:7
103:22 111:20
112:6,15,19 113:2,6
115:10,14,16 116:2
116:4 130:18
171:11,12 172:2,12
173:4 174:11 192:7
195:1 202:12,13
**combination (7)**
94:13 100:2 105:2,4
113:11,20 126:1

**combinations (1)**
139:20
**combined (4)**
93:21,24 139:16
144:24
**combining (1)**
192:16
**come (9)**
25:11 32:10 40:10
54:11 55:19 86:1
111:15 127:12
134:15
**comes (6)**
54:23 101:21 104:9
127:10 137:19
197:17
**comfortable (1)**
150:8
**coming (2)**
68:4 132:25
**commands (1)**
99:19
**commenced (1)**
12:19
**commencement (1)**
153:12
**commences (1)**
19:1
**commencing (1)**
9:7
**comment (1)**
69:14
**comments (2)**
193:18 194:3
**commerce (1)**
31:17
**commingled (1)**
150:24
**communicate (3)**
105:16,23 106:1
**communicates (1)**
107:3
**communicating (3)**
105:25 107:8,11
**communication (4)**
9:23 10:6,15 105:23
**communications (4)**
11:1 107:10 108:1
115:18
**company (6)**
1:10 5:9 7:4,5,7 9:13
**comparable (5)**
39:15,15 180:16,16
210:13

**compares (1)**
190:10
**comparing (1)**
82:25
**comparison (3)**
75:6 190:2 211:3
**compiled (3)**
125:21 126:4,6
**completing (1)**
69:25
**component (7)**
109:4 115:24 219:3,8
220:17 222:24
231:19
**componentry (1)**
112:3
**components (16)**
25:18,25 26:3 29:6
33:18 84:21 105:10
105:13,14,20,21,24
113:4,20 114:17,20
**compound (34)**
19:20 23:13 27:1,22
45:8 57:6 59:12
60:11 61:16 84:14
85:23 94:6 100:25
104:22 117:14
134:5 138:5 149:13
159:24 163:3
180:10 181:8,23
183:10 184:9
186:25 213:23
214:19 218:24
222:7 224:2 227:12
227:23 229:4
**comprise (6)**
74:19 93:12 107:13
111:24 151:17
156:25
**comprised (7)**
44:11 84:18 127:8
161:1 198:12 201:9
207:3
**comprises (9)**
110:10 156:18 162:15
175:5,17,25 202:24
203:7 212:4
**comprising (5)**
149:8 175:22,25
176:9 227:16
**computer (20)**
18:23 22:23,23 23:1
27:15 29:25 30:1
84:12 98:24 107:9

111:24,25 112:1
114:2,3,3 116:11
117:9 199:8 215:8
**computers (2)**
25:13 97:11
**computing (11)**
105:11,13,15 106:2
106:19,23 109:16
109:17 112:3
113:20,22
**COMSOL (1)**
20:10
**concept (1)**
88:8
**concerned (1)**
7:12
**concerning (3)**
30:5 66:11 197:22
**concluded (2)**
181:3 187:23
**concludes (1)**
232:8
**concluding (2)**
73:11 147:13
**conclusion (30)**
61:6,16 103:15
107:18 108:19
109:2 115:13
116:17 117:14
130:5 132:11
134:15 135:15
136:7 137:11 147:3
149:13 157:25
158:25 159:25
160:16 161:3,14
163:3 164:18
170:16 179:4
180:11 188:2 205:9
**conclusively (1)**
102:17
**condition (5)**
61:1,12,19,19 63:4
**conditions (7)**
58:1,2 60:17,22 62:18
62:22 182:20
**conductive (2)**
84:9,10
**conference (1)**
21:25
**configuration (7)**
117:25 138:17 179:12
179:25 180:3,15,17
**configurations (4)**
116:5,6 175:21 176:8

**configured (6)**
112:4 149:10,19
176:1 179:6 203:17
**configures (1)**
176:2
**confirm (4)**
10:8 43:22 65:8 85:19
**conflicting (2)**
154:24 155:2
**conform (1)**
236:5
**confuse (1)**
189:13
**confused (1)**
96:4
**confusing (7)**
28:9 81:20 82:17
101:1 173:25
187:12 213:13
**confusion (1)**
140:4
**connected (4)**
114:18,20 115:1,2
**connection (5)**
97:18 103:24 108:1
149:23
**consider (13)**
51:1 74:22 93:15
94:17 95:11,13
117:18 132:8 148:4
215:12,17,21,23
**considered (12)**
9:21 16:9,13,25 17:3
17:22 18:3,8 34:13
55:13 74:21 215:22
**considering (1)**
94:25
**consisting (1)**
214:7
**constant (1)**
132:9
**constitute (1)**
158:13
**constructed (3)**
91:18 100:17 111:23
**construction (9)**
110:1 116:19,20,22
117:7,17,19 136:13
159:22
**constructs (2)**
24:13 25:2
**construe (2)**
116:9 173:18
**consult (2)**

Highly Confidential - Attorneys' Eyes Only

12:23 14:12
**consultant (5)**
7:3 9:24 164:8 200:2
200:4
**consulting (13)**
7:11,12,14,15,21 8:21
12:24 21:7,13,14,17
21:20 31:24
**contact (6)**
42:16,18 44:5 132:9
138:23 143:10
**contacted (2)**
9:10,11
**contain (5)**
24:23 151:25 166:13
190:10 202:16
**contained (7)**
114:24 136:24 137:7
152:22 158:21
159:5 202:3
**containing (3)**
141:11 151:10 203:12
**contains (7)**
47:17 54:20 135:17
143:6 153:7 157:21
203:3
**contemplated (1)**
211:22
**contend (3)**
126:18 128:10,13
**contending (7)**
126:23 139:22,22
141:6,6
**content (75)**
150:24,25 152:9,23
153:7,15,16 156:7
156:19,22,24,25
157:11,15,22 158:7
158:12,13,18 159:5
159:14,19,21,22
160:2 161:1 162:15
162:23 165:1,2,10
165:23 166:4,8
174:17 175:5,9,23
176:10,15,16,22
181:6,22 183:14
194:17 195:5,10,18
200:21 201:11,15
201:15,19,24 202:9
202:11,18,19 203:4
203:4,7 206:2,14
207:2,21,24 208:23
209:12 212:3 214:7
218:23 219:1,4

223:5
**contention (3)**
75:7 76:22 141:8
**contentions (5)**
72:9 73:7 76:16 78:17
79:10
**context (17)**
24:22 108:3,8 109:21
109:22 110:4,12
116:20 117:18
147:25 150:3,10
156:14,20,20 159:2
195:4
**continue (2)**
11:1 150:12
**continues (2)**
57:11 63:11
**continuing (6)**
37:1 197:15 198:6,10
198:15 211:2
**CONTRA (1)**
233:3
**control (13)**
27:9,14,18,21 28:5,11
28:13 112:21 144:5
151:25 158:6
220:25 224:18
**Controlled (1)**
27:6
**controller (1)**
112:25
**controlling (1)**
84:21
**controls (1)**
159:3
**conversation (1)**
167:5
**conversations (1)**
10:3
**convey (4)**
90:20 114:7 154:5
212:2
**conveyance (1)**
10:6
**conveyed (2)**
90:10,15
**conveying (2)**
90:25 91:7
**conveys (4)**
114:14,21,22 154:5
**cooperate (1)**
105:11
**copier (1)**
27:18

**copy (10)**
14:14,18 15:12,14
18:16,18 145:12
222:22 226:9,11
**copying (2)**
28:7,12
**corner (5)**
208:10 209:3,4,22,23
**corporation (3)**
1:4,9 27:4
**correct (51)**
6:4,8 19:3 20:4 22:13
23:4,9 30:17 32:12
44:1 45:3,19 46:2,5
47:10 48:1 54:4
60:25 61:10 62:21
70:4 71:20 73:4
76:5 77:6 79:10
80:7 92:13 94:11
96:2 98:19 100:23
140:9 144:11
151:16 182:18
183:20 198:18,19
198:20 199:9 201:4
204:5 208:23 214:7
217:1 218:17
220:16 221:7,18
236:6
**corrected (2)**
185:1,2
**correction (2)**
184:21 213:4
**correctly (5)**
12:10 99:10 205:12
221:9 228:23
**correspond (2)**
223:9,12
**corresponding (2)**
203:5 228:17
**corresponds (1)**
203:1
**COSTA (1)**
233:3
**counsel (17)**
5:21,25 10:23 11:2
16:16 17:4 34:9
44:24 50:7 55:20
83:3 139:11 146:3,5
148:13 177:13
184:19
**Counselor (3)**
172:17 177:16 229:5
**count (16)**
45:11,17,17 46:23

47:5,11 48:2,8,12
48:15,17 49:9,18,25
50:3 57:24
**counted (4)**
19:9,11 20:21 127:7
**country (1)**
107:4
**COUNTY (1)**
233:3
**couple (12)**
26:21 31:18 37:13
51:22 53:17 54:9
55:17 60:14 90:2
103:24 128:18
159:13
**coupled (4)**
86:17 87:6 112:13
113:7
**Coupons (1)**
20:7
**course (2)**
10:5 11:22
**courses (12)**
22:23,24 23:1,24,24
29:24 30:4,5,7,18
30:22 31:2
**course-grained (1)**
42:1
**court (14)**
1:1 5:10,19 6:13
19:14,16,22 45:1
116:9 117:7,17
135:25 136:9 178:3
**cover (5)**
15:20 70:17 107:2
180:3 189:20
**covered (2)**
179:21 183:6
**covering (1)**
108:22
**covers (2)**
180:3 215:12
**CPU (5)**
84:20 90:11,21 91:1,7
**create (6)**
84:13 98:5 138:18
151:23 154:8
216:10
**created (8)**
38:23 79:13 80:9 81:2
101:19,24 195:21
207:5
**creates (7)**
39:1,3 60:25 61:11

141:14 204:22
217:19
**creating (6)**
37:3,8,20 69:24
140:23 154:4
**creation (1)**
196:6
**crisp (1)**
135:4
**CRR (3)**
1:22 2:7 233:23
**CSR (5)**
1:22,23 2:7,8 233:23
**curious (1)**
40:7
**current (2)**
18:16,18
**currently (1)**
71:1
**customer (1)**
31:15
**cut (3)**
65:24 177:13,21
**cutting (2)**
117:1 177:17
**CV (7)**
18:16,18,22 19:1,5
20:4 32:24
**cycle (1)**
99:25

---

**D**

**D (3)**
1:14 4:1 231:21
**data (83)**
24:19,24 39:9 41:13
59:21 70:19,20
90:14,25 98:7
103:11 104:10
105:8 106:16,17
107:3,24 108:8,16
109:8,11,12,15
110:3,5,6,10,11
111:5 112:17,22
113:2 135:8,19,20
135:21 136:23
137:6,13,14,15,19
137:22 140:24
141:2,16,23 142:24
143:4,5,5 151:16,25
156:7 209:14,15
210:11 216:4
217:20 218:9,13,13
218:14 219:2,7

---

Highly Confidential - Attorneys' Eyes Only

222:19 223:10,12
223:14,18 224:8,11
224:19 228:17,19
228:19,20,20
229:11,12,13,13,18
**DataTreasury (1)**
20:9
**date (10)**
18:19 52:5,6,10,10,15
52:17,18,18 236:2
**dated (2)**
188:21,22
**dates (6)**
80:18,20,21,22 81:3
83:22
**date's (2)**
52:12,14
**dawned (2)**
94:23 95:16
**day (4)**
60:19 186:7 232:18
233:21
**days (5)**
51:22 53:18 54:9
55:18 69:1
**DD (2)**
226:4 235:21
**deal (2)**
24:19 91:22
**dealing (1)**
199:3
**deals (1)**
199:8
**decade (1)**
8:10
**December (4)**
9:7,9 12:16,20
**decided (1)**
196:24
**deciding (1)**
44:11
**declare (1)**
127:2
**dedesignate (1)**
232:4
**deduced (1)**
80:22
**deeper (1)**
102:16
**Deep9 (3)**
32:22 33:4,7
**DEFENDANT (1)**
3:13
**Defendants (1)**

1:11
**define (3)**
86:8 87:13 152:6
**defined (1)**
109:17
**definition (12)**
106:5,14 110:16
111:4 113:16
133:19 137:5
142:10,16,18
150:20 155:8
**definitive (1)**
73:22
**definitively (3)**
67:7,11 80:24
**degree (5)**
22:12,15,20,21 67:22
**degrees (1)**
22:18
**Delaware (1)**
1:10
**delineate (1)**
153:16
**delineated (9)**
155:22 156:8 157:3,6
157:8 159:14,16
160:3 166:4
**delineates (1)**
155:17
**delineation (10)**
156:10 157:14,14,15
157:18 158:4 160:5
160:5 165:24
178:20
**delivered (1)**
16:15
**demonstrated (1)**
223:4
**density (4)**
223:10,12,17 228:17
**depend (1)**
221:23
**dependent (2)**
221:19 223:22
**depends (4)**
62:13,14 101:5,5
**depicting (1)**
165:1
**depicts (1)**
200:25
**depo (1)**
204:1
**deposition (64)**
1:17 2:4 5:7,13 17:20

18:11 36:6,14,24
37:2 38:18 39:25
50:13,16 51:2,6
53:13,15 54:13 56:1
56:6 69:2 70:16,22
72:2,8,11,19 73:8
74:1,7,10 76:2,12
78:5,21,23 79:8,11
79:18 80:10,17
83:14 96:1,9 106:7
106:11 140:12,14
140:15 149:1
169:19,23 189:10
199:5 211:2 223:3
226:25 230:2
231:23 232:8
233:12,13 236:2
**derivation (1)**
221:12
**derived (6)**
207:4 208:16 209:4,7
216:4 221:19
**describe (8)**
30:10 31:16 40:2
58:17 145:23
152:16 176:1
217:14
**described (26)**
31:22 37:11 45:21
88:18 90:24 98:8
101:3,10 102:10
107:25 109:19
111:22 112:16
123:16,24 124:5
125:10,24 128:9
147:5 168:8,9
173:16 181:19
191:20 229:8
**describes (7)**
58:11 66:8 115:9
226:22 227:18
231:13,13
**describing (2)**
58:23 98:20
**description (11)**
30:8 38:7 42:24
114:23 145:24
175:24 226:22
228:18 230:1,14,24
**design (1)**
91:5
**detail (7)**
42:3 44:8 102:19,24
208:21 210:5

217:23
**detailed (1)**
124:14
**details (1)**
217:23
**detect (6)**
121:20 161:10,20
162:6 180:7 186:12
**detected (9)**
42:16,18 44:1,5 45:20
56:12 121:18 184:2
203:1
**detecting (13)**
134:1 162:2 173:19
184:4 185:5,12,19
186:2 211:17 213:6
224:24 225:1
230:15
**determination (9)**
43:12 65:13 82:12
92:16 93:1 94:9
130:7 136:17
170:18
**determine (18)**
40:25 52:17 59:5,24
93:17 120:19 121:2
124:21 129:23
136:9 137:7,15
155:1 162:25 169:7
177:2 180:7 202:25
**determined (6)**
126:10 171:17 173:6
173:17 222:4 229:2
**determines (2)**
138:2 173:22
**determining (26)**
86:15 124:15 130:19
136:23 137:16
143:18 163:7
166:13,19 167:20
168:14,22 169:5
170:3,24 171:4,20
173:8,19 174:3
175:12 178:21,25
181:19 202:23
230:15
**developed (1)**
89:24
**developer (1)**
96:23
**development (3)**
32:2 72:20 190:3
**deviations (1)**
42:4

217:23
**device (35)**
21:22 26:11 27:16
28:12 38:19,20 86:7
87:20 112:10,19,20
112:24 113:4,6,9,10
113:11,12 114:2
115:11,17 116:3
161:7 166:13 177:2
183:2,12 187:23
188:4 199:15,23
200:23 227:14
228:3 231:20
**devices (33)**
26:5,12,16 27:20,24
27:24 28:18,21,24
29:22 113:3,7,24
115:2,20,25 149:7,7
149:16 160:11,17
160:18 161:4
162:24 164:1 169:4
169:8 170:9 180:13
181:10 185:17
186:15 199:16
**de-pinch (2)**
192:17 195:22
**de-zoom (1)**
132:13
**diagram (2)**
114:16 115:24
**diagrams (1)**
115:5
**DiamondTouch (32)**
72:1 74:15 75:9,23
78:15 83:16,25 84:6
84:16 90:23 93:13
96:22,23 97:8,9,14
97:15,22 98:20 99:4
99:12,15,17 100:12
101:20 102:5
104:13 110:9
116:13 117:18
235:6,9
**Dietz (6)**
75:9 81:19,22 82:7
83:17 235:9
**difference (4)**
41:22 173:12 200:7
210:10
**differences (1)**
42:5
**different (75)**
6:4 7:13 41:13,17
45:13,15,15 46:4
47:11 48:20 57:13

TSG Reporting - Worldwide   877-702-9580

Highly Confidential - Attorneys' Eyes Only

58:2 79:25 92:24
93:10 95:13 99:24
114:17 116:5 119:3
123:18 126:20
127:14 153:23
154:17 156:12
157:6 158:12
159:13 165:24
172:25 173:7,10
186:8 191:9,10,11
191:17,18,22 192:9
192:18 193:13,15
194:11,12 198:14
200:25,25 206:5,10
208:21,23 209:2,5
209:10,12,14,15
210:10,14,14,15
211:9 212:17 218:5
218:12 219:6,10
220:6,13 223:4,16
228:11,25
**differently (2)**
207:14 210:16
**digital (7)**
112:7,21,21,22,23
113:1,8
**dimensional (1)**
150:23
**direct (5)**
70:21 96:16 140:17
149:4 153:22
**directed (1)**
57:19
**direction (3)**
121:24 181:13 182:4
**directly (8)**
11:25 12:1 39:3 40:14
57:4 58:3 60:9
176:25
**disagree (4)**
38:2 137:8 158:11
229:6
**discard (1)**
73:10
**disclose (14)**
81:9,17,23 82:8,15,21
90:3 92:8 93:17,24
101:13,13 140:23
224:24
**disclosed (3)**
82:24 93:2 146:16
**discloses (7)**
90:9 92:4,11 93:6
94:3,14 144:20

**disclosure (4)**
111:21 112:7,16
229:9
**disclosures (2)**
70:6 235:4
**discovered (1)**
54:8
**discrete (2)**
95:2,14
**discretion (2)**
224:17,18
**discriminate (1)**
170:9
**discriminating (1)**
179:9
**discussed (2)**
85:6 150:13
**discusses (1)**
37:3
**discussing (7)**
61:25 85:11 175:7
193:5 197:11,13
218:19
**discussion (10)**
13:7,9,12,15 37:19
66:11 151:2 176:21
202:14 232:3
**disk (7)**
50:13,16 106:7,11
169:18,23 232:7
**display (73)**
59:11 84:22 103:11
103:25 104:5,8,9,11
104:13,14,15,19,25
105:1,1,7 106:15,17
107:2,8,23,25 108:7
108:7,15 109:7,11
109:14 110:2,7,9
111:5 113:11
116:11 117:8
121:21 122:4
130:22,23 138:19
143:21,22 149:8,17
150:16 151:23
152:1,4 154:13
155:2 160:12,14,19
160:21,23,25 161:5
161:7 162:14
163:12 165:2
169:15 182:16
184:6,16 185:8,22
204:7 217:19,20
223:5 225:4 227:15
**displayed (16)**

60:3 104:2,3 152:17
153:2,12,13 154:8
156:21 161:11,21
162:3,7 174:17,18
219:7
**displaying (10)**
150:14 153:10 162:12
162:21 175:3,15
209:15,15 227:13
227:15
**distinct (6)**
157:4 158:23 162:24
202:1 206:19 218:2
**distinction (1)**
45:6
**distinguish (2)**
150:6 169:11
**distinguishes (3)**
43:9,19 87:17
**distinguishing (5)**
85:11,21 130:21
143:19 169:12
**District (4)**
1:1,2 5:10,10
**DIV (20)**
153:14,15,15,20,21
155:16,17,21 156:4
156:8,11 157:20,20
157:20 158:1,5,8,9
159:3,5
**dive (1)**
148:14
**divide (2)**
219:4 220:17
**divided (3)**
161:6 220:24 223:6
**division (3)**
1:2 5:11 69:3
**document (199)**
14:22 17:15 18:21,23
18:24 34:22 67:4
70:5,13 71:3 74:20
76:17 78:25 83:16
83:20 84:4,24 85:5
85:15 86:6 88:23
90:22 92:22 93:1
95:2,14,16 96:9,12
97:18,19 98:1 99:1
99:3 101:13 114:4
130:5 139:8 150:15
150:18,22,23 151:9
151:12,15,17,20,22
152:2,7,10,24 153:8
156:18,21 157:1,7

157:17,22 158:3,22
159:4 160:13,20,24
161:1,6,12,22 162:4
162:8,13,14,22
165:3,5,9,17,19,25
169:14 175:4,8,16
175:17,25 176:9
183:7,15 184:5
185:6,13 186:3,23
187:25 188:21
189:5,9,14 191:15
191:19,21 192:3,5
192:14,16 193:6,10
193:21 194:9,23
195:17,24 196:6
197:11,12,13,15,22
197:24 198:6,10,15
200:19 201:6,9,19
201:25 202:2,10,21
205:6,24 206:1,3,5
206:6,18 207:6,8,9
207:19 208:17,25
209:5,6,7,19 210:8
210:13 213:3,7
214:6 215:14,19,24
218:3,20 219:14,15
219:21 220:5,7,15
220:17,23 221:11
221:13,20,24 223:1
223:23,25 224:1
225:2 227:6,10,16
227:20,21 228:4
229:1,2 234:15,17
234:20,22,23 235:1
235:3,5,7,9,11,13
235:15,18,20,21
**documents (38)**
73:15 75:12,21 76:6
76:24 77:7,16,25
79:12 92:16,23,25
93:11,12 94:7 95:3
95:16 152:6,20
153:6 155:13
175:22 200:20,22
201:9,12,16,21
202:1,12 203:15,21
206:20 207:4 219:6
220:1,2 235:17
**doDrag (8)**
56:13,20,24,24 57:15
57:19 58:1,8
**doFling (15)**
56:13,20,24 57:16,20
58:1,8,12,16,21,23

59:1,3,6,7
**doing (10)**
21:2 66:23 102:16
122:15 146:19
181:18 183:3
193:23 214:8,9
**Dolphin (1)**
3:15
**dot (2)**
204:14,22
**dotted (1)**
168:5
**double (12)**
132:4,15 192:14,18
194:4,7,9,16 195:4
195:16,20 215:9
**double-check (1)**
17:13
**double-tapped (5)**
191:6,9,11,17 193:15
**double-tapping (4)**
196:1,5,10 197:1
**double-tap-to-zoom...**
132:6
**Dr (18)**
36:11 37:3,19 38:13
42:9 45:21 56:2,11
63:10,18 64:16,24
65:17 66:13,19 67:2
129:16 185:25
**drafting (1)**
53:1
**drawn (3)**
156:3 208:3,8
**Drive (1)**
3:15
**driven (2)**
102:4 229:11
**driver (1)**
38:20
**drivers (1)**
21:22
**drives (1)**
224:19
**DT (4)**
103:23,23 117:11
138:15
**duly (2)**
6:16 233:13
**D-I-V (1)**
153:14

_____

**E**
_____

**E (11)**

Highly Confidential - Attorneys' Eyes Only

1:14,15,15,15 3:1,1
3:7,8 4:1,1 228:24
**earlier (6)**
65:16 97:16 150:13
174:21 175:2 186:7
**early (4)**
22:24 23:3,4 55:11
**Earth (3)**
97:10,14 99:21
**easily (2)**
24:14,14
**easy (3)**
59:5 96:3 152:21
**economics (4)**
22:13,16,17,21
**Ed (1)**
76:21
**Eddon (2)**
3:24 6:2
**edge (1)**
176:23
**edited (3)**
69:13,16,19
**Edward (1)**
78:8
**effect (1)**
53:23
**eight (43)**
19:22,25 20:6,14,15
73:6 119:2,10,11,21
120:11 122:20
123:4 124:8,9,10,18
125:24 126:3,9,11
126:16,19 127:10
127:22,22,23,23
128:1,3,4,5,7,7,8,12
128:15,21,23 129:1
166:2 167:3 186:15
**either (19)**
9:7 12:15 16:23 33:20
49:16 57:3 58:8
66:13 94:20 110:14
130:24 143:6
146:16 159:11
188:23 194:4 200:1
200:4 224:10
**elaborate (1)**
124:14
**election (1)**
105:14
**electrician (2)**
88:13,15
**electronic (124)**
27:3 28:2,2,14 29:10

30:13,14 31:16
149:7,16 150:15,18
150:22 151:9,15,20
152:2 156:18 157:1
157:22 158:2,3,22
160:13,20,24,25
161:6,12,22 162:4,8
162:13,14,22 165:3
165:9 166:12
169:14 175:4,8,16
175:17,22,24 176:9
177:1 183:2,7,12,14
184:5 185:6,13
186:3,23 187:25
191:19,21 192:3,5
192:14 194:9
195:17 199:16
200:18,20,21 201:6
201:8,9,12,16,19,20
201:21,25 202:1,2,9
202:11,21 203:14
203:21 205:5,24
206:3,5,6,18,20
207:3,6,8,19 208:17
209:7 210:12 213:3
213:7 214:6 215:13
215:18,24 218:3
219:15,21 220:2,5
220:15,23 221:20
221:23 223:23,25
224:1 225:2 227:6,9
227:14,16,20 228:4
229:1
**Electronics (6)**
1:7,8 3:13 5:9 234:10
236:1
**element (5)**
135:21 137:18 142:21
143:5 170:12
**elements (14)**
59:21 85:6 93:24
98:11 108:25
116:14,14 139:17
146:15 151:16
153:23 155:5,15
159:5
**Emanuel (5)**
3:14,21 4:3 22:8,10
**embedded (3)**
115:19 151:10,14
**embodies (1)**
139:13
**embodiment (9)**
115:10,17 116:3

172:3,6,7 173:11
176:11 179:2
**embodiments (8)**
112:7,15 164:15
176:14 202:21
203:6,8,11
**embody (1)**
116:13
**emerge (3)**
51:2,2 54:22
**employ (1)**
89:9
**employees (2)**
30:19,22
**enable (6)**
24:13 145:11,14
147:15 148:2
203:21
**enabled (3)**
26:4 146:6,7
**enablement (7)**
145:16,23,25 146:5
146:24 147:7,10
**enables (2)**
62:7,10
**enabling (3)**
96:12 146:22,23
**encompassed (1)**
135:12
**enforces (1)**
154:25
**engaged (6)**
8:1 12:9,10,13,18,22
**engagement (4)**
10:3 12:17,19 13:14
**engine (4)**
96:24 99:5,17 101:22
**engineering (5)**
78:16 190:9,17,18,22
**enlarge (9)**
169:13 177:9 179:19
180:9,20 181:5
213:2 230:5,25
**enlarged (42)**
168:24 182:13,20
184:2,14 185:3,10
185:18 186:1 191:8
191:9,17,20,21
192:7,10,13 194:11
194:13 195:5,9,9,12
204:12,23 205:1,23
206:20 207:1,9,20
207:21 210:5 211:6
211:17 224:24

225:9 227:8 229:21
230:4,11,18
**enlargement (13)**
193:6 194:7,8,10,12
194:15 197:1 207:5
208:20 212:25
214:5 222:25
225:25
**enlargement/shrink...**
191:7 196:1,5,11
**enlarges (6)**
177:6 194:5 206:14
212:21,23 231:5
**enlarging (24)**
181:21 182:15 183:13
192:9 193:2,23
204:7 205:5 206:17
207:16 209:13
213:17,19,20,25
214:2,9,10 215:13
215:18,23 223:22
227:5,6
**ensure (1)**
42:4
**entertainment (1)**
112:18
**entire (2)**
35:22 214:12
**entirety (1)**
214:13
**entities (1)**
24:23
**entitled (3)**
70:5 83:16 127:11
**entity (6)**
1:8 21:1,3 135:23
153:1 207:9
**entries (1)**
211:13
**entry (3)**
76:9 78:20 98:25
**envision (1)**
219:19
**equal (21)**
43:13 44:12 45:11,12
47:18,20 48:9,15
49:9,25 50:3 57:10
57:11,14,24 58:7
223:6,7,9 228:16
231:2
**equipment (1)**
99:6
**error (9)**
42:1 51:22 52:4,22

55:9,15 65:12 66:11
68:9
**errors (16)**
40:1 52:2,21 54:6,8
55:4,18,18 58:22
66:13,13,19,22 67:2
67:8 236:6
**Esenther (1)**
82:13
**Esq (5)**
3:7,8,17,24 4:6
**essentially (5)**
12:5 27:15 135:6
154:25 216:10
**estate (1)**
209:9
**estimate (8)**
8:9,18,19 68:13,14,20
68:24 121:3
**estimating (1)**
120:24
**et (5)**
5:9 82:14 98:25 114:2
218:22
**Evaluation (1)**
189:20
**event (53)**
37:4,8,21 38:23 44:6
44:14 47:11 48:11
53:5,8,25 61:20
85:20 90:8,9,12,16
90:20,24 91:11
101:14 102:8,9,11
102:17 130:19
134:3,10 135:1,1
136:4,18 137:5,14
137:17 138:2
140:23,24 141:2,9,9
141:10,11,14,24,24
142:12,23,24,25
143:6,18 197:16
**events (5)**
10:5 11:22 39:15
102:4 137:18
**evidence (2)**
141:13 202:8
**exact (2)**
10:2 163:20
**exactly (14)**
9:8 10:1 11:10,23
34:12 53:22 101:6,8
132:18 139:20
168:3 172:22
187:14 207:14

Highly Confidential - Attorneys' Eyes Only

**examination (4)**
6:17 131:19 234:1,5
**examine (1)**
149:23
**examined (3)**
161:10,20 164:1
**examiner (1)**
52:11
**example (43)**
25:6 28:6 61:2 69:12
88:12 100:18 103:8
107:4,12 110:8
112:17,25 113:9
151:19 152:2 153:1
153:4 154:17
157:20 159:16
165:19 166:11,11
166:18 170:13
173:15 177:4,7
192:17 203:17
208:2 219:15 221:5
221:6 222:11,12,20
223:5,17 225:16
228:2,4,13
**examples (8)**
32:2 71:8 113:23
133:7 152:19
178:13 223:15,20
**exception (1)**
35:12
**exceptions (1)**
65:21
**excerpt (1)**
35:22
**excerpts (1)**
35:20
**exclude (1)**
179:1
**excluded (1)**
61:22
**excluding (1)**
14:19
**exclusively (10)**
44:21 45:4 61:19
129:23 130:2,10
150:6,7 180:1
223:22
**excuse (13)**
48:14 52:16 109:20
112:19 113:1
114:18 151:24
171:15 174:24
194:8 199:22
210:15 229:12

**executable (1)**
108:4
**executed (5)**
132:21 136:1 149:11
149:19 155:9
**executes (1)**
183:12
**execution (2)**
99:20 134:2
**exercise (1)**
124:13
**exhibit (209)**
5:4 14:14,22 15:7,8
15:11,17 16:7,12,15
16:17,18,20,23 17:5
17:9,11,15,17,21
18:2,7,11,13,17,18
34:17 36:3,7,7,11
36:12,13,13,17,23
37:2,2 38:13,18
42:9 50:19 51:7,21
52:10 54:13,19 55:8
55:12,21 56:1,6,8
59:20 63:10,18
64:17,24 66:2 67:16
70:3,7,12,15,22
71:7,14,19,22,24,25
72:2,3,8,8,11,18
73:7,8,12,16,20,21
73:23 74:2,3,7,9,10
74:17 75:15,17,19
76:1,5,8,11,19,20
77:6,11,13,15,18,20
77:22,24 78:2,3,4,5
78:9,11,12,21,21,24
79:5,12,16,17 80:14
83:11,15,15 85:5,10
85:22 90:2 91:22,23
95:2,8,11,13,20,22
95:23 96:1,1,9,10
96:11 103:1,2,3
118:4 130:15
139:25 140:1,5,13
140:14,15,21 145:2
145:4,6 148:16,21
149:1 188:16,17,20
189:10 198:23,24
199:2,5,5 200:24
202:5 204:1 216:24
216:25 217:4 223:3
226:3,3,6,10,11,25
226:25 230:2,2
234:15,17,20,22,23
235:1,1,3,5,5,7,9,11

235:11,12,13,15,16
235:17,18,20,21,21
**exhibits (8)**
14:20 15:2,23 16:1
72:14 103:25 140:4
234:8
**existence (3)**
7:7,9 80:16
**expanded (5)**
192:6,13 195:3 215:2
216:7
**expanding (2)**
214:9,12
**expands (1)**
212:21
**expansion (5)**
192:15 212:25 214:3
216:5,9
**expect (1)**
134:25
**expended (1)**
88:9
**experience (5)**
19:2,5,13 53:7,24
**experimentation (3)**
146:10 147:1 148:3
**expert (20)**
8:24 9:13,17,21,24
10:15 11:2 12:24,25
13:19 14:15,22
15:18 21:17,20
41:23 164:9 234:15
234:17,23
**explain (4)**
21:6 154:16 200:8
225:14
**explicitly (1)**
146:17
**exploring (1)**
11:1
**express (1)**
54:15
**expressed (1)**
151:22
**extended (1)**
88:9
**extending (1)**
88:18
**extent (1)**
140:22
**external (1)**
115:3
**externally (1)**
222:18

**extra (1)**
15:14
**eye (1)**
20:20
**e-commerce (1)**
31:22
**e-mail (13)**
10:7 208:4,11,14,16
208:21,23 209:8
213:10 216:12,14
216:19,21
**e-mails (2)**
208:22 216:13
**e.g (7)**
112:12 118:5,6,20,21
171:16 219:4

**F**

**F (2)**
1:14 3:17
**facility (4)**
98:9 100:3,20 107:10
**fact (15)**
33:11 40:17 114:15
141:14 163:14
170:7 173:15
182:11 210:3
211:21 212:19
213:2,11,21 230:18
**facts (18)**
39:6 40:5 41:20 51:2
51:6 54:22 57:21
59:13 66:15 106:20
116:16 117:14
134:6 170:20
191:24 196:7
206:23 236:5
**factual (1)**
58:22
**factually (8)**
37:19 38:12 42:24
43:25 54:3 56:16
64:3,24
**fails (1)**
129:17
**fair (6)**
11:3 41:16 66:10,17
122:1 193:21
**fairly (2)**
124:19 135:3
**fall (1)**
118:24
**familiar (4)**
9:19 36:18 195:13,19

**family (1)**
144:16
**far (5)**
66:20 67:1 74:24
128:4 186:16
**fault (1)**
152:13
**favor (1)**
102:1
**feature (5)**
188:5 196:1,5,11
197:1
**features (1)**
196:17
**February (1)**
188:23
**feel (4)**
72:6 85:15 98:19
202:4
**fell (1)**
123:24
**felt (1)**
41:16
**fewer (1)**
221:3
**fifth (1)**
96:17
**Figueroa (1)**
4:4
**figure (56)**
83:24 84:2,4 86:4
96:22 98:11 114:12
114:14,18,21
115:10,11,16 116:2
143:8 164:25
165:12 166:3,8,10
166:18 167:1 168:5
168:17 170:3,11,13
170:17 171:16,22
172:8 173:16
175:19 176:20,20
179:2,10,13,16
180:18 181:20
222:13,14 223:3
225:12,21 227:17
228:1,2,10,12,13,14
228:24 229:7
230:22
**figures (6)**
113:24 114:7 115:21
176:18 178:14
189:9
**file (12)**
36:17 52:13,16

Highly Confidential - Attorneys' Eyes Only

110:15,17 152:4
154:3 155:11,18
208:23 219:21,24
**files (3)**
36:17,20,23
**find (12)**
52:8 55:6 87:16 88:22
113:15 124:17
126:22 131:20
150:21 153:11
178:10 202:10
**fine (5)**
43:7 95:19 103:18
179:10 200:10
**finer (1)**
217:23
**finger (15)**
111:15 119:12,18
120:21 123:5 131:5
131:10,22,24 132:9
132:14,21 133:4,9
144:2
**fingers (15)**
65:5 122:10,12,18,22
122:22 123:2
131:11 134:1
138:23 143:10,14
144:3,5,6
**finish (12)**
11:20 35:17 44:25
152:13 163:25
166:17 167:14,22
177:11,15,25
205:18
**finished (3)**
86:14 117:4 177:14
**first (168)**
9:8,10,11 12:6 16:15
38:4 51:20 52:18
53:3 56:10 58:13,23
60:15 61:7 70:10,12
72:6,18 73:14,16
79:15 81:12 87:21
102:7 110:13
161:20 162:2,6,25
163:1,6,7,8,18
164:2,3 166:13,14
166:19,20,21
167:19 168:14,15
168:22 169:5,6,10
170:3,4,24,25
171:14,16,18,20,21
171:23 172:2,2,7
173:1,2,4,5,6,8,9,16

173:18,19,19,21,24
174:3,4,8 175:12,13
175:13 177:2
178:21,22,25 179:1
179:8,8 180:7,9,9
180:19,21,22,22,24
181:4,4,19,21 182:5
182:21,22 183:4
184:1,3,12 185:3,4
185:9,11,18 186:1
194:13,15 195:7
202:23,23,25 203:1
203:2,5 204:11
205:6 206:13,14
208:5,9 209:4,22
211:9,10,11,17,18
211:21,22 212:3,4,6
212:6,9,14,16
214:11,13 215:5
216:8 224:24,25
225:8,8,21,22 226:1
227:5,7 229:20,21
230:3,3,7,10,15,15
231:3,4,5,11
**first-box (1)**
204:8
**first-finger (1)**
161:10
**five (7)**
7:16 8:5,6,11,17 22:4
229:5
**five-minute (2)**
50:9 83:4
**fling (3)**
59:11 61:22,23
**flow (1)**
99:12
**fluctuating (1)**
8:4
**focus (4)**
38:17 70:10 130:14
211:19
**Foerster (2)**
2:5 3:4
**folks (1)**
10:18
**follow (3)**
47:2 53:16 69:21
**followed (1)**
158:15
**following (3)**
81:16 86:6 187:8
**follows (1)**
6:16

**font (2)**
153:3 209:16
**footnote (1)**
95:9
**forbid (1)**
61:14
**forbids (1)**
61:3
**forceful (1)**
174:6
**forget (1)**
137:18
**forgetting (1)**
199:21
**forgot (1)**
177:15
**Forlines (5)**
79:8 80:10,17 82:14
96:15
**form (3)**
30:7 90:15 153:2
**forth (1)**
233:12
**forward (2)**
12:8 13:10
**found (4)**
71:9 86:16 87:5 207:2
**foundation (7)**
190:6,19 191:25
192:25 194:1,19
196:8
**four (12)**
22:2 93:6 204:3,13
206:20 207:10,24
211:5 212:4,6,7
214:7
**fourth (1)**
86:5
**four-box (2)**
204:21 213:12
**four-square (3)**
213:20,21,25
**frame (1)**
29:20
**Francisco (1)**
3:6
**Frankly (1)**
159:11
**free (3)**
72:7 85:15 202:5
**freestanding (1)**
143:7
**frequency (1)**
112:11

**fresh (1)**
25:22
**Friday (3)**
1:19 5:2 236:2
**front (8)**
14:21 56:6 72:18 88:5
140:21 149:2 189:4
226:10
**function (12)**
35:9,23 40:19,21
48:19 105:12,15
106:2,19 113:22
134:11 183:16
**functional (1)**
114:16
**functionality (2)**
62:15 101:25
**functions (14)**
24:20,24 26:5,18 28:1
28:11 40:11 46:24
60:8 66:5,6 132:21
141:18 207:16
**further (15)**
10:14 21:6 29:21
44:14 45:14 109:21
112:11 146:5
182:14 189:13
197:16,23 202:12
216:22 233:16
**future (1)**
229:1

---

**G**

**G (1)**
1:14
**Galaxy (20)**
37:15,16 38:6 40:3
41:2 42:10,11,25
45:5,10,20 46:7
56:11 58:15,20 61:2
62:10 63:12,20
66:12
**game (1)**
99:21
**gathering (1)**
98:7
**general (6)**
7:10 38:1 73:3 101:9
111:24 112:24
**generally (7)**
38:2 67:20 88:20 91:8
91:9 101:9 156:11
**general-purpose (1)**
112:3

**generate (2)**
90:11,12
**generated (1)**
222:18
**generates (2)**
99:16,16
**generic (1)**
25:3
**gesture (109)**
42:19 44:15 96:23
98:10 99:5,17 100:4
100:19,21 101:15
101:22 102:12
130:20 131:2,11,12
131:12,16,21 132:8
132:15 133:8,12,18
134:2,10,19 135:2,6
136:3,25 137:6,8
138:4 143:19,23
161:11,20 162:2,6
163:1,9,18 164:3
166:15,20 167:19
168:15 169:6 170:4
170:25 171:18,21
173:2,6,10,18,21,24
174:4,8 175:13
178:22 179:1,8
180:9,19 181:4,21
182:5,22 184:2,4,13
185:4,6,10,12,20
186:12,13,19
187:22 202:24
203:2 206:14
211:18 212:18
213:6,16 216:8
224:25 225:1,8,11
225:20,21,24 226:1
226:2 227:8 229:22
230:8,15 231:1,3,5
231:12,14
**gestures (5)**
96:13,14 98:12 100:5,12
226:2
**getPointer (1)**
57:9
**getPointerCount (7)**
43:13,14 44:10,12
46:13 47:18,20
**getting (2)**
39:8 41:13
**give (14)**
16:16 32:18,19 42:4
95:17 111:13
117:21 120:8

Highly Confidential - Attorneys' Eyes Only

132:23 139:8
145:17 147:21
154:12 177:25
**given (18)**
19:13,21 51:5 54:16
54:18 58:25 59:1,4
91:3 108:25 142:16
143:16 144:17
176:11 178:24
207:16 229:18
233:14
**giving (1)**
11:3
**glass (2)**
133:1,3
**go (41)**
8:11 11:20 18:23 42:8
43:2,3,4 47:1 52:12
52:15,16 58:10
63:14 66:20 74:24
81:6 82:11 87:23
101:6 104:18
105:25 106:14
111:1,11,17 124:17
143:25 144:7,13
145:17 162:9 168:2
172:24 183:25
186:16 195:14
208:6 215:5 216:13
223:2 230:24
**goes (8)**
42:15 44:13 46:7
53:10,10 58:16
160:9 219:8
**going (32)**
10:13,14 11:1 13:18
14:8 16:5 32:18
35:1,3 43:2,4,4,25
46:4 50:7,12 57:8
70:10,13 81:7 83:3
85:18 127:12
130:16 143:3
150:19 151:4
177:15 179:19
188:25 197:25
205:14
**good (13)**
6:19,20 12:12 16:3
20:15,16,20 122:5
126:25 148:14
150:19 153:3
158:16
**Google (3)**
97:10,14 99:21

**Gray (46)**
1:17 2:4 5:8 6:15,23
6:25 7:5,8 14:14,15
14:23 15:11,19
17:20 21:16 50:13
50:16,19 55:25
70:10 74:6 83:14
106:8,11,14 140:11
145:9 149:1 167:22
169:19,23 170:1
177:11 188:19
199:2 211:2 217:7
232:8,14 233:11
234:3,9,15,18 236:3
236:23
**Gray's (6)**
234:21 235:8,11,14
235:19,20
**great (1)**
189:25
**greater (10)**
43:14 44:12 45:12,12
46:13,23 47:5,19
48:12,17
**greater-than-1 (1)**
46:17
**Greenberg (2)**
96:7,14
**grid (5)**
227:22 228:5,5,7,7
**gross (1)**
124:22
**group (7)**
9:14,17 91:23 100:2
190:9,23 193:22
**grouped (1)**
155:15
**grouping (7)**
155:20 156:4 157:19
158:12 203:4,6,12
**guess (8)**
67:20 73:23 109:21
122:4 123:22
144:16 161:25
162:15
**GUI (3)**
98:13 100:6,21
**Guy (2)**
3:24 6:2
**G-R-A-Y (1)**
6:24

_____

**H**

**H (2)**

1:14,14
**halfway (2)**
58:11 88:8
**Han (1)**
139:2
**Hancock (2)**
76:5,10
**hand (4)**
12:24 33:17 34:9
233:21
**handed (1)**
83:20
**handheld (1)**
228:3
**handle (1)**
155:3
**handles (1)**
99:19
**handy (1)**
139:18
**happen (3)**
109:23 134:16 176:23
**happened (3)**
17:24 53:1 195:20
**happens (7)**
44:20 45:3 100:9
117:11 156:13
183:23 214:9
**happy (1)**
16:18
**hard (5)**
34:14 67:7 86:1
102:16 150:5
**hardware (1)**
26:22
**Harpo (1)**
20:9
**hate (2)**
187:10,10
**head (2)**
47:24 118:17
**header (3)**
152:21 154:15,18
**heading (4)**
152:24,25 154:18
191:3
**headings (3)**
155:6,8,15
**headlines (1)**
155:20
**headquartered (1)**
5:18
**heard (1)**
114:9

**hearing (3)**
19:18,19,22
**hearings (1)**
19:16
**Hecht (1)**
17:10
**Heidi (5)**
1:22 2:7 5:19 233:5
233:23
**held (3)**
2:4 5:13 50:24
**help (1)**
127:6
**helps (1)**
72:25
**Helvetica (2)**
153:3 154:17
**hereunto (1)**
233:20
**Hewlett-Packard (2)**
199:11,14
**high (1)**
7:12
**highest (3)**
223:10,12 228:17
**high-level (2)**
101:9 200:22
**history (3)**
52:17 110:15,18
**hold (1)**
55:2
**hour (1)**
50:8 68:17 83:4
205:15
**hourly (2)**
68:15,16
**hours (8)**
67:13,19,21,25 68:5,8
68:12 231:22
**house (1)**
88:13
**housed (3)**
114:15,21 115:7
**housing (4)**
114:1,25 116:12
117:10
**HTML (26)**
151:22,22 152:2,3,5
152:20,23 153:5,6,7
153:8,10 154:3,21
154:25 155:5,7,11
155:13,14,18
156:21 158:12
159:4 210:14,15

**hypertext (1)**
157:2
**hypothetical (22)**
41:20 45:23 46:21
47:15 48:6 49:21
57:7 66:16 89:6
102:14 104:23
107:6 116:16 131:8
136:6 137:12
158:25 179:23
212:1 215:16
219:17 220:9
**H1 (5)**
152:22,22 154:14,16
154:18

_____

**I**

**icon (6)**
88:10,19 208:4,11,16
215:10
**icons (1)**
28:7
**ICR (1)**
20:9
**idea (4)**
87:23 113:19 150:8
183:15
**identifiable (1)**
81:3
**identification (19)**
5:5 15:9 17:18 18:14
34:18 36:4 70:8
72:4 74:4 83:12
95:24 103:4 140:6
145:7 148:22
188:18 198:25
217:5 226:7
**identified (39)**
31:1 35:10,14,22,24
35:25 36:16,23,23
40:12,12 41:22 42:2
43:4 51:22 52:2,7
55:7 65:7 71:6 79:3
79:5 80:14 91:25
113:14,17 119:10
127:9 128:2,4 129:2
136:14,16,18
168:16 206:13
212:13,14,15
**identifies (5)**
71:8 73:13 74:18
157:17 179:18
**identify (17)**
48:24 55:18 64:23

Highly Confidential - Attorneys' Eyes Only

**inaccuracy (1)**
53:9
**inaccurate (3)**
37:19 53:19 55:14
**incapable (5)**
182:4 186:1,19
187:23 188:7
**include (12)**
47:12 93:16 112:9,11
112:20 113:3,7,19
147:25,25 196:17
219:1
**included (5)**
16:7 20:3 71:7 128:7
148:7
**includes (5)**
46:12 63:24 109:7
115:18 171:22
**including (8)**
33:18 34:6 84:21 95:3
128:5 147:6 156:7
218:12
**income (2)**
8:20,21
**incomplete (22)**
41:19 45:22 46:20
47:14 48:5 49:21
57:7 66:16 89:5
102:13 104:23
107:5 116:15 131:7
136:6 137:11
158:25 179:22
211:25 215:15
219:16 220:8
**Incorporated (2)**
5:8,17
**incorrect (6)**
38:12 40:2 52:12,19
64:25 126:3
**incorrectly (1)**
52:7
**increases (2)**
138:22 143:9
**indefiniteness (1)**
52:23
**independent (4)**
53:5 103:9 129:19
149:6
**INDEX (2)**
234:1,8
**indicate (1)**
156:3
**indicates (3)**
14:22 138:1 153:11

**indicating (2)**
86:18 87:7
**indirection (1)**
102:23
**indirectly (1)**
60:9
**individual (6)**
84:9 159:5 201:10
207:3 208:22 212:4
**inform (1)**
154:1
**informal (10)**
124:19 125:7,18
126:4,15 127:3,5
128:2,22 186:10
**information (47)**
10:17 54:22 60:2
63:23 69:11,17,19
84:22 90:20 96:25
97:16 98:21,22
99:11,11 100:16
104:2,3 105:2 136:3
141:21,23 143:6
150:23 151:10,25
153:8,12,13 154:20
156:7 157:21
190:10 197:16
198:9,18,21 217:22
217:24 218:10,10
218:14,15 219:2,19
221:10 222:6
**informational (1)**
152:17
**informed (2)**
74:23 146:5
**infringe (1)**
185:25
**infringement (5)**
36:7 56:8 197:5
234:24 235:1
**infringing (1)**
183:22
**inherently (8)**
90:12 141:1,22
142:10,12,14,19
146:17
**initialize (1)**
41:12
**initially (1)**
69:24
**inline (3)**
203:9,9,10
**input (63)**
37:4,9,20 38:6,20,21

42:12,15,17 43:9,10
44:1,5 45:19 46:6
46:17 48:25 56:11
57:5,19 63:24 98:7
98:9,10 100:1,3,4
100:15,20 101:21
101:24 102:7
103:10 113:7,9,11
118:6,13,21 119:4
119:22 120:21
130:21,22,25
131:11,14,15,16
138:3 140:24,24
141:2,16,23,23,23
141:23 142:24
143:4,20,22 231:19
**InputConsumer (1)**
38:24
**inputs (6)**
85:12,21 101:25
113:8 129:23
141:10
**inside (3)**
166:9,9 208:3
**inspection (1)**
190:23
**instance (2)**
31:22 102:23
**instances (3)**
32:16 187:20 203:20
**instruct (3)**
11:2 13:18,22
**instructing (2)**
10:22,24
**instruction (1)**
166:19
**instructions (19)**
108:5 150:14 154:24
155:2 162:2,12
163:7 166:13
168:13 173:8 174:2
175:15 178:21
179:20 183:3,12
184:1,3 185:5
**insulating (1)**
84:8
**integrated (29)**
99:20 103:11 105:7,8
105:9,12,18,24
106:1,15,18 107:1
107:13,22,23 108:6
108:7,16 109:8,12
109:18,19 110:3,6,9
111:5 113:16,24

116:10
**integrates (2)**
99:7 100:12
**integration (3)**
99:4 113:19 117:8
**intend (1)**
50:20
**intended (6)**
34:24 37:10 121:12
121:15 167:6
207:17
**intending (1)**
62:15
**intent (2)**
154:2,6
**intention (1)**
17:1
**interaction (3)**
96:12 98:14 100:7
**interacts (1)**
97:10
**interested (2)**
9:21 233:18
**interesting (2)**
86:7 163:5
**interestingly (1)**
11:6
**interface (22)**
25:17,25 26:3,4,6,15
26:18 27:14,15,16
27:25 28:11,13 29:5
29:10 33:18 85:6
99:19 100:11 113:4
200:23 225:9
**interfaces (6)**
26:16,22 27:3,12
28:25 29:16
**intermediate (3)**
48:19,20 57:4
**Internet (3)**
107:3,8 108:1
**interoperability (1)**
109:5
**interoperable (13)**
105:10,14,24 106:2
106:19,22 108:20
108:25 109:11,15
109:17 113:21,22
**interpret (5)**
27:21 44:14 98:24
150:18 164:14
**interpretation (4)**
131:4 133:24 178:24
182:24

66:18,21 67:1 73:19
85:7 86:3 118:17,23
127:1 128:20,25,25
152:24 230:10
**identifying (5)**
67:10 119:2 202:18
203:4 223:24
**ignore (1)**
224:10
**II (21)**
37:15,16 38:6 40:3
41:2 42:10,11,25
45:5,10,20 46:7
56:11 58:15,20 61:2
62:10 63:12,20
66:12 78:15
**illustrated (4)**
175:19 225:11,12
228:14
**illustrates (1)**
138:11
**illustration (7)**
225:6,7 230:16,17
231:1,10,10
**image (8)**
84:13 157:10 203:7
203:12,17 209:16
219:21,24
**images (8)**
155:5,8,15,21 157:2
203:16 209:13
218:20
**imagine (2)**
91:17 157:17
**immediate (1)**
134:3
**immediately (1)**
134:16
**implement (1)**
148:3
**implemented (4)**
27:16 89:9,12 114:13
**implied (1)**
142:15
**imply (1)**
66:3
**important (1)**
177:19
**impose (1)**
228:24
**imposed (2)**
220:5 229:3
**Improvement (1)**
195:25

Highly Confidential - Attorneys' Eyes Only

**interpreted (12)**
42:16,18 44:2,5 61:21
131:1,2,14,16 132:1
143:21,23
**interpreting (1)**
164:13
**interprets (3)**
42:12 135:25 154:7
**interrupt (1)**
44:24
**interrupted (1)**
187:1
**interrupting (2)**
167:11,16
**intervening (3)**
133:25 134:16 197:21
**introduce (1)**
5:21
**introduced (1)**
51:20
**invalid (3)**
71:5 73:11 217:10
**invalidate (1)**
139:17
**invalidates (1)**
217:12
**invalidity (82)**
14:12,15,18,23 17:21
18:3,8,12 50:19,22
50:23,23,25 51:7,9
51:16 52:3,9,21
54:6 67:14,15,22
68:19 69:4,6,10
71:25 72:9,15,21
73:7,13,16 74:2,7
74:11,12,17 75:7
76:16,22 78:3,12,15
78:17,18 79:5,10,16
80:15 82:20 83:15
85:5 93:12 95:21
96:2,6,10,11 98:5
138:1 140:11,16
142:2,3,5 146:13
151:7 198:23 199:3
199:7 217:2 226:4
234:16,21 235:5,8
235:11,14,19,20
**invention (14)**
145:14 146:6,6,9,23
147:1,14,16 148:3
177:9 217:15,18
220:11,12
**inventors (1)**
53:14

**investigation (8)**
197:14,22,23 198:5
198:10,11,12,15
**invocation (14)**
46:13 57:15 64:11,11
66:7,22 67:2 134:11
135:16,17,19,22
136:20 137:2
**invocations (3)**
64:8 65:6 136:25
**invoke (15)**
46:24 58:8 59:3,7,9
59:19 102:11
133:19,21,24 135:4
135:5,25 136:2,9
**invoked (13)**
45:16 47:4,8,22,23
48:9,13 49:11 50:3
53:8,25 64:6 136:10
**invoker (1)**
135:22
**invokes (11)**
47:4 53:6 59:1 63:5
130:20 133:11,18
134:10 137:6 138:4
143:18
**invoking (6)**
101:14 102:17 134:2
134:8,15 135:23
**involved (4)**
10:7 26:3 39:8 200:2
**iPhone (19)**
189:20 190:2,12,12
191:8,16 192:2,7
193:8,12,19 194:5
194:15 195:1,14,16
195:19 197:3
**isolates (1)**
195:10
**issue (10)**
15:20 17:24 31:19
43:18 55:8 56:12
162:9 187:3,9
189:13
**issued (2)**
52:11 184:23
**item (8)**
78:8,9,14,22 79:3,8
82:13 83:18
**items (10)**
19:7 72:13 73:7 77:10
80:8,14,24 81:6
91:21,23
**i.e (1)**

142:14
**I/O (1)**
115:2
**i1 (1)**
193:14
**i4i (1)**
20:10

_____ **J** _____

**J (5)**
71:7,14,19,22,24
**January (12)**
9:8,9 12:16,20 25:12
28:17,19,23 29:14
52:7,11,18
**Java (1)**
32:9
**JCPenny (1)**
22:7
**jitteriness (1)**
121:21
**jittery (4)**
121:25 122:1,5,8
**job (4)**
1:24 28:13 30:15,21
**Jose (2)**
1:2 5:11
**joystick (1)**
231:21
**JPEG (1)**
203:17
**judge (1)**
116:23
**judgment (1)**
116:22
**J-1 (1)**
235:5
**J1 (30)**
71:24,25 72:8,11 73:7
73:20 75:15,17,19
76:5,20,22 77:3,6
77:11,15,20,24 78:4
78:6,9,13,21,24
79:5,17 80:3,4 92:1
92:1
**J6 (1)**
71:24

_____ **K** _____

**Karan (1)**
234:23
**Kevin (1)**
20:11
**key (5)**

113:10 129:18 196:19
231:17,20
**keyboard (9)**
69:18 98:15,25 99:11
100:7,22 176:21
177:8,10
**keys (2)**
177:8,10
**Kimberlin (1)**
20:11
**kind (19)**
12:8 42:1 45:25 57:8
60:20 82:11 88:16
105:12 107:10
115:5 124:21
134:25 162:9
198:11 199:15,21
219:22,24 221:16
**kinds (2)**
152:14 202:15
**kit (1)**
96:23
**knew (1)**
68:4
**know (70)**
13:21,22,23 16:24
20:1 21:7 25:9
34:11 35:20 40:14
44:9 48:10 51:4
54:10,17,18 55:9
57:13 65:11 67:21
67:23 68:5,5,9
74:21 75:2 80:3,4
80:23 82:6,7,10,12
83:1 89:13 92:7,11
94:12 118:15
119:20 121:14
122:17 123:12
124:20 127:6,11,12
129:8,12,14 146:2
155:10 161:25
163:18 164:1
177:14 186:10,13
187:4 189:12
195:14,20 196:21
196:21,22 197:3
198:19 215:4
220:20,21
**known (5)**
9:13 23:10 113:3
199:8 228:15
**knows (1)**
168:23
**Korean (4)**

1:7 188:20 197:12
235:17

_____ **L** _____

**L (3)**
1:14,14,15
**lab (1)**
100:2
**labeled (15)**
5:7 17:15 18:11
193:19 199:6 208:9
212:24 215:3 216:2
224:5,5,6 225:12
228:1 230:17
**lack (1)**
98:22
**lacks (7)**
190:6,19 191:25
192:25 194:1,19
196:8
**language (39)**
23:7,11,15 24:3,9,12
31:5 88:20 130:3,6
130:12,14 134:23
134:24 135:2,3
136:13 151:23,24
162:1 170:22,23
172:9,13,23,25
176:3,24 178:20
179:11 182:7
184:20,23 185:1
194:24 196:3
197:12 205:11
211:16
**languages (12)**
23:5,10,21 24:1,12,15
29:25 30:6,24 32:7
89:19 172:22
**laptop (3)**
26:8,10 114:3
**large (5)**
120:23 217:19,19,21
217:24
**larger (5)**
86:19 87:8,13 209:16
209:16
**late (1)**
17:6
**launch (1)**
216:19
**launched (2)**
213:22 215:11
**launches (1)**
212:19

Highly Confidential - Attorneys' Eyes Only

**launching (1)**
213:10
**LaunchTile (26)**
199:9,17,23 200:1,4,7
200:11,14 207:17
208:14 211:3,3
212:24 213:9,11,15
214:2,17,18 215:3
216:1,2,3,10,19,23
**lay (1)**
153:23
**layer (3)**
84:8 100:13 101:23
**layman's (1)**
98:18
**layout (1)**
181:20
**layouts (1)**
115:24
**lead (7)**
64:8 65:11 81:1
110:23,23 134:18
134:19
**leading (6)**
10:3 13:14 53:13
64:11 68:25 69:1
**leads (5)**
46:19 48:3 57:19 86:7
187:7
**leaps (1)**
12:8
**leave (2)**
39:10 111:15
**left (3)**
206:12,18 229:5
**left-hand (3)**
37:9 86:4 195:1
**legal (33)**
5:16 61:6,16 69:12
103:14 107:17
108:18 109:1
115:12 116:16
117:13 130:4
132:10 135:15
136:6 137:11 146:2
146:12 147:2,6
149:12 157:24
158:24 159:25
160:15 161:2,13
163:2 164:17 179:3
180:11 188:2 205:9
**Leigh (6)**
75:9 81:19,22 82:7
83:17 235:10

**lend (1)**
89:23
**let's (32)**
13:23 15:7 17:14 39:9
42:8 53:3 54:12
68:6 70:2 72:2 74:1
75:6 81:12 95:20
102:7 103:1,18
108:12 130:14
149:5 156:15,16
168:4 182:24
183:25 188:14
194:23 198:22
207:24 211:19
216:24 226:3
**level (5)**
102:16 186:14 192:16
194:13 208:21
**levels (2)**
192:18 217:23
**liability (1)**
1:10
**License (2)**
1:23 2:8
**lieu (1)**
28:5
**light (9)**
54:23 104:10 105:2
138:18 164:14,23
170:11 173:15
197:17
**limit (2)**
59:22 221:1
**limitation (38)**
71:9 81:17,24 82:9,15
82:22 92:5 103:19
103:21 108:14
109:22 110:13
117:12 130:18
137:9 140:18 141:7
141:9 143:17
144:10,21 150:13
162:11,11,19
163:13 167:18
168:22 174:21
175:2,21 176:8
179:25 183:25
204:8 205:12 213:5
226:23
**limitations (15)**
37:8 81:10 90:4 92:12
93:2,7 94:4,15
109:21 110:11,12
129:18 139:13

146:23 179:21
**limited (4)**
1:10 5:9 183:21 219:1
**line (33)**
10:14 35:22 111:20
112:6,15,20 113:2,6
115:16 116:1,2
118:4,9 130:18
133:17 151:7
157:16 159:15
202:13,13 205:4,13
208:3 236:7,8,10,11
236:13,14,16,17,19
236:20
**lines (7)**
25:21 166:4 171:12
172:3,12 184:21
191:14
**links (1)**
157:2
**list (27)**
16:25 17:3,15 18:2,8
19:1 20:3 73:13
74:13 76:9 92:1
120:8 125:3,6,8,12
125:21 126:3,6,16
127:9,10 128:3,10
128:13,21 129:1
**listed (9)**
19:8 72:14 77:10 78:4
78:24 79:16 81:8
91:23 92:3
**listing (2)**
17:22 208:22
**lists (1)**
115:20
**literal (1)**
135:13
**litigation (11)**
7:17,25 8:3,13 19:2,5
19:12 21:12 31:14
31:23 164:8
**litigation-related (6)**
7:25 8:1,20,22 32:5,6
**litmus (1)**
199:24
**little (18)**
7:24 17:6 35:17 43:5
57:9 68:25 79:24,25
80:2 91:21 101:17
110:22 124:12
125:16 137:21
163:4,5 186:6
**live (2)**

6:25 7:1
**LLC (2)**
1:10 7:6
**LLP (1)**
2:5
**Local (2)**
70:6 235:3
**located (1)**
223:6
**location (50)**
107:12,13 108:2
161:11,21 162:3,7
163:1,6,8,20 164:3
166:14,20,22
167:19 168:15,19
169:6,10 170:4,10
170:25 171:17,21
173:1,4,6,9,17,20
173:23 174:2,4,8,11
174:16 175:12,13
176:4,5 177:3
178:22 179:1,8
180:1,8 182:22
202:23 203:1
**locations (1)**
98:11
**log (1)**
67:19
**logical (7)**
156:3 157:19 158:20
159:22 203:3,6,12
**long (2)**
7:7 106:18
**look (45)**
15:11 18:6 33:16 34:8
34:11,20 36:9 39:14
39:18 40:24 41:9,11
44:7 59:23 63:9
65:4,8 66:6 72:7
73:23 83:23 92:10
102:24 110:21
115:5 116:19
130:17 135:3 139:7
139:24,24 142:1
144:1 145:2,17
153:19 164:25
195:3,6 200:23
202:6 207:24
208:19 210:4
230:21
**looked (22)**
16:21 33:13,14,15,19
33:21,22 35:6 39:21
39:22 40:9,18 41:7

56:22 65:10 94:24
103:24 160:11,18
160:18 187:17
202:7
**looking (20)**
38:25 39:23,23 41:8
56:10 67:6 72:6
80:20 88:1 92:6
102:19 103:7,7
120:23 139:15
142:6 205:3 209:14
228:10,10
**looks (10)**
19:7 166:2 192:8
194:22,22 195:2,8
195:12 208:3,10
**Los (1)**
4:5
**lost (4)**
45:25 63:14 128:11
221:16
**lot (3)**
31:6 120:25 121:4
**lots (4)**
91:9 155:11 164:8,10
**low-level (1)**
40:6
**lunch (2)**
106:4,5

---

**M**

**M (4)**
95:20 96:1,10 235:11
**machine (2)**
103:8 169:11
**machines (3)**
74:13 186:8,11
**machine-implemen...**
108:22
**machine-readable (7)**
107:19 108:4,9,23
109:3,6 110:5
**Madison (1)**
3:22
**magnification (3)**
209:21,23,24
**magnifying (2)**
133:1,3
**mail (1)**
215:25
**majority (3)**
7:23 35:11 36:2
**making (6)**
79:24 135:23 171:8,8

Highly Confidential - Attorneys' Eyes Only

179:9 227:8
**manage (2)**
99:20 112:22
**management (2)**
30:15,21
**Mandelbrot (3)**
77:23 78:23 79:2
**manifestation (2)**
209:10 210:10
**manifestations (1)**
209:6
**manipulate (1)**
133:4
**manipulation (1)**
25:1
**manner (9)**
65:9 88:17 89:9 90:10
90:14 152:15,16
179:6 210:13
**manual (1)**
192:17
**map (2)**
80:5 82:24
**mapped (4)**
98:11,12,22 100:5
**mapping (8)**
79:20 80:1 82:11
100:1,9,13 101:21
101:23
**maps (2)**
101:24 218:21
**March (3)**
18:20 188:23 189:21
**Marcus (1)**
76:4
**mark (13)**
3:8 5:24 15:7 17:14
50:12 72:2 74:1
103:1 111:15 145:4
198:22 216:23
226:3
**marked (32)**
5:4 14:14 15:8 17:17
17:20 18:11,13
34:17 36:3,6 70:2,7
72:3 74:3,6 83:11
83:14 95:20,23
103:3 140:5,7 145:6
148:21 188:14,17
188:19 198:24
199:2 217:4 226:6
226:10
**Market (1)**
3:5

**Marketing (3)**
20:7 22:6,11
**marks (6)**
50:15 106:7,10
169:18,22 232:7
**Maroulis (246)**
3:17 5:25,25 6:8 8:14
10:13,20,24 11:18
12:14 13:18 15:15
17:7,10 19:20 20:16
21:5,16 23:13 24:4
24:10 25:5,15 26:14
26:25 27:7,22 28:9
29:1,17 34:8 37:22
38:15 39:6 40:4
41:3,19 43:1 44:3
44:24 45:8,22 46:9
46:20 47:14 48:5
49:2,20 50:7 55:20
55:23 56:17 57:6,21
59:12 60:4,11 61:5
61:15 62:2,12 64:4
65:1,23 66:15 67:4
68:2,21 71:13 72:16
72:24 73:25 75:12
75:21 76:6,24 77:7
77:16,25 78:25
79:11 80:11 81:20
82:17 83:3 84:14
85:2,13,23 87:1
88:4 89:5 91:2,15
92:14 94:6,16 97:19
99:1 100:25 102:13
103:14 104:7,22
105:19 106:20
107:5,17 108:18
109:1,13 110:17
114:4 115:12
116:15 117:1,13,24
118:25 119:13
121:9,22 127:19
129:9 130:4,15
131:7 132:10 134:5
134:20 135:10,14
136:5 137:10 138:5
138:24 139:7 142:3
142:6 143:24
145:12,18 147:2,17
147:20 148:10,13
148:16 149:12,25
151:2 153:25
155:24 157:24
158:24 159:24
160:15 161:2,13,23

163:2 164:17 165:5
165:15,17,25 167:2
167:11,14,22 168:2
168:25 170:5,20
171:6,25 172:15
173:25 174:19,22
175:10 176:17
177:11,16,19,23,25
179:3,22 180:10
181:8,23 183:10
184:9,19 185:15
186:5,25 188:1,25
190:5,19 191:24
192:24 193:10
194:1,18 196:7
198:7 200:13 202:4
205:8,14,19 206:8
206:22 207:11
208:24 209:18
210:7,19 211:25
212:11 213:13,23
214:19 215:15
217:16 218:4,24
219:16 220:8
221:14 222:7 224:2
224:13 225:5
226:17 227:12,23
229:4,24 230:13
231:8,22,25
**marriage (1)**
233:18
**material (7)**
14:21 49:22 55:2
66:13,19 190:8
200:7
**materially (1)**
54:25
**materials (63)**
16:8,13,20,25 17:3,16
17:22 18:3,8 34:13
55:13 72:14,17,19
73:2,3,4,6,13 74:18
74:25 75:6,8,25
76:1,8,10,12,19,20
77:1,3,9,11,19,20
78:2,4,5,11,19,20
79:3,6,15,17,21,22
79:24 80:1,2,4,8,18
80:25 81:8,16,18,23
82:20 83:18 93:11
96:11
**MathWorks (1)**
20:10
**matrix (8)**

200:19 201:3 204:20
204:21 211:11,14
214:12 216:6
**matter (31)**
5:8 9:2,12,18,22 10:4
10:7,9 12:24 13:16
14:2,4 15:1,25
21:11,12,13 31:14
33:13,15,17 40:7
67:20 68:1,6,16
82:10 92:9,24
133:23 233:19
**matters (6)**
7:25 8:1,21,22 19:13
32:5
**mean (43)**
19:16 24:3,9,17,21
26:1,2,7 27:8 56:24
74:22 89:16 93:9
100:9 103:7 109:19
109:20 110:23,24
114:18 118:17
135:25 145:17
150:1,21 157:8
170:23 172:20
174:6 179:11
187:10 192:4
194:20,20,21,21
196:16,16 198:5
203:18 204:15,15
230:5
**meaning (10)**
94:1 105:7 110:2
146:4 150:25
151:11 152:9
154:12 164:13
185:2
**means (10)**
24:12 40:9,20 111:6
133:22 136:9
154:16 173:21
181:1 187:14
**meant (7)**
40:7 66:3 80:5 110:8
135:5,5 136:10
**mechanism (1)**
202:17
**media (7)**
112:8,8,9,10,10,13,23
**medium (7)**
107:20 108:4,10,24
109:4,7 110:6
**meet (7)**
117:12 137:9 139:17

157:10 163:13
175:21 176:8
**meets (5)**
110:11,12 144:9
204:7 226:23
**Melahn (3)**
3:8 5:24,24
**memorization (1)**
59:23
**memorized (1)**
66:3
**memory (6)**
73:20 145:16 149:9
149:10,17,18
**mention (7)**
41:18 51:13,19 79:19
94:22 147:9 176:16
**mentioned (10)**
29:20 32:1 51:20 67:8
74:21 77:23,23
154:14,16 155:17
**merely (1)**
201:11
**merged (1)**
104:16
**MERL (14)**
72:1 74:15 76:17
77:14 78:23 79:2
82:6,14 96:7 103:23
104:1,12 117:11
235:6
**met (1)**
183:9
**metal (1)**
84:9
**method (40)**
35:14 38:23 39:8
42:12 43:9,19 46:12
47:17,21 48:9,10,12
48:21,24 50:4 53:8
53:25 58:15,21 59:3
59:7,8,9 60:16 63:5
63:21,22 64:8,10,11
65:6 66:7,21 67:2
108:23 135:8,17,23
136:24 231:14
**methods (26)**
33:20 35:9,11,23
36:16,20,22 40:11
44:22 45:16 47:4,5
47:7,22 49:10 50:2
60:8,21 63:1,5
89:21 218:6,7,8
222:16 231:18

Highly Confidential - Attorneys' Eyes Only

**microprocessor (1)**
112:25
**Microsoft (18)**
20:10 96:25 97:11
98:9,23,24 99:5,13
99:18 100:1,3,15,20
100:23 101:24
215:9,10 216:15
**middle (6)**
58:14 163:16 166:3
205:3 225:17,18
**Mill (2)**
2:6 5:13
**mind (9)**
13:24 25:11 32:10,19
45:24 55:19 134:24
151:4 158:15
**mind's (1)**
20:20
**minus (1)**
68:12
**minutes (2)**
50:8 229:5
**Misleading (5)**
75:13 76:7 77:8 79:1
92:14
**misread (1)**
118:19
**misstates (6)**
65:23 94:16 105:19
208:24 209:19
210:7
**misunderstood (1)**
201:4
**Mm-hmm (6)**
7:22 107:21 119:19
133:14 211:12
215:20
**mobile (1)**
62:14
**mode (1)**
195:15
**model (2)**
164:5 176:3
**modes (5)**
86:16 87:5 221:21,24
222:1
**modified (4)**
31:20 32:12,14 213:4
**modify (5)**
31:9,11 54:24 88:14
88:15
**modules (1)**
34:1

**moment (3)**
55:6 168:5 219:9
**moments (1)**
154:14
**Monach (288)**
3:7 5:22,22 6:5,9,18
8:23 10:17,22 11:4
12:3,21 14:1 15:7
15:10 17:4,8,14,19
18:10,15 19:24
20:17 21:10,23
23:19 24:7,16 25:8
25:23 26:19 27:5,10
28:4,16 29:7,23
34:16,19 36:5 38:3
39:17 40:16 41:15
42:7 43:7,24 44:16
45:2,18 46:1,15
47:9,25 48:23 49:14
50:10,18 55:22,24
57:2,17 58:9 59:25
60:6,24 61:9,24
62:4,20,23 63:8
64:14 65:15 66:9,25
67:12 68:11 69:5
70:2,5,9 71:15,17
72:5,22 73:5 74:1,5
75:14 76:3,14 77:4
77:12,21 78:7 79:7
80:6 81:4 82:1 83:5
83:13 84:23 85:9,17
86:11 87:15 88:25
89:25 91:10,20
92:19 94:10 95:5,18
95:25 97:24 99:23
101:12 102:20
103:1,5,17 104:17
105:5 106:3,13,24
107:14,21 108:11
108:21 109:9,24
110:19,25 114:8
115:8,15 116:24
117:3,20 118:2
119:7,19,23 121:17
122:11 127:21
129:14 130:13
131:3,18 132:22
134:13 135:7,11,24
137:4,24 138:8
139:4,10 140:7,10
142:5,9 144:8 145:4
145:8,13,20 147:8
147:18 148:6,11,15
148:17,25 149:21

150:11 151:13
154:10 155:25
156:1 158:10 159:8
160:8,22 161:8,17
161:18 163:21
164:20 165:11,21
166:6 167:7,13,16
167:17 168:6
169:17,25 170:15
171:2,10 172:11
173:14 174:14,20
175:1,11 177:5,18
177:21,24 178:5
179:14 180:5 181:2
181:16 182:23
183:24 184:17,24
185:23 186:21
187:19 188:10,14
188:19 189:3
190:15,24 192:20
193:4,20 194:14
195:23 197:4
198:16,22 199:1
200:16 203:25
205:18,20 206:16
206:24 207:7,23
209:11 210:1,17
211:1 212:8,12
213:18 214:4 215:7
215:20 216:17,24
217:2,6,25 218:16
219:12 220:3,10
221:17 222:10
224:9,22 226:3,8
227:1,3,19,24
228:22 229:14
230:9,20 231:16,24
234:6
**morning (4)**
6:19,20 137:17,21
**Morrison (2)**
2:5 3:4
**motion (3)**
43:16 133:25 136:17
**MotionEvent (13)**
38:22 39:8,9 41:12,14
43:13 63:23 133:11
133:17 136:19,23
137:1,19
**mouse (4)**
98:15,25 100:7,22
**move (1)**
213:9
**moved (1)**

13:10
**movements (1)**
121:25
**moves (8)**
65:5 191:10,18
192:10,22 193:8,13
194:10
**movie (2)**
104:18,18
**moving (1)**
162:19
**mScaleDector (2)**
63:21 64:5
**mScaleDector.onTo...**
45:21 46:8,12,18
**mScaleDetector.on...**
42:20
**mScrollerX (4)**
58:17 59:10,15,21
**mScrollerY (4)**
58:18 59:10,16,21
**multiple (17)**
44:21 113:20 122:10
122:10 123:1,10,11
123:12,13 124:2
131:10,15 143:14
144:4,6 173:21
179:7
**multi-finger (28)**
85:12 121:2 122:3,14
122:16,18 123:17
123:18,25 124:1,6,8
125:5,8,13,17,18,25
126:11,23 127:8,18
128:5,10,14,16
129:4,6
**multi-page (1)**
35:19
**multi-point (1)**
86:22
**multi-touch (9)**
27:20 75:10,24
124:16,16,19 125:2
126:18 130:8
**multi-user (5)**
75:24 83:16 96:14
138:9 235:9
**music (1)**
112:8

_____
N
_____

**N (7)**
1:14,14,15,15 3:1 4:1
4:1

**name (13)**
5:16 6:21,23 7:5
32:19 48:10,11
128:25 137:18
144:16,17 236:1,3
**names (6)**
25:3 36:17 119:5
120:7,7,10
**narrative (2)**
217:17 226:18
**narrowing (1)**
108:14
**natural (2)**
86:9 87:4
**nature (4)**
21:3,14 122:8 196:23
**navigation (2)**
215:4 229:1
**near (1)**
205:4
**necessarily (13)**
8:2 37:24 109:5,18
114:20 142:11,14
142:19 158:2,22
193:2 221:19,22
**necessary (3)**
61:1,11 221:11
**need (26)**
6:3 34:8 44:25 49:2
49:22 51:23 61:12
72:7,24 73:21 85:16
92:15 93:22 98:19
110:17 115:2
144:13 160:2
167:15,23 168:7
169:17 176:18
189:1,13 195:25
**needed (1)**
232:5
**needs (7)**
45:1 54:4 145:10,14
163:12 170:23
196:25
**neither (2)**
117:11 199:19
**nested (23)**
163:15 166:9,9,11,11
170:14,17,18 171:3
171:23 175:20
176:7,12,16 178:8,8
178:10,13,16,18
179:17 180:2,4
**never (8)**
13:10 32:11 53:7,24

Highly Confidential - Attorneys' Eyes Only

133:11,18 188:6
219:23
**new (7)**
1:8 3:23,23 5:18,18
10:15 117:19
**night (2)**
16:16 17:11
**Noble (3)**
32:22 33:4,8
**node (5)**
202:25 203:3,3,5,9
**nodes (5)**
202:14,15,22,25
203:21
**Nomora (1)**
144:16
**Nomura (1)**
144:16
**nonequal (2)**
223:11,13
**nonobject-oriented ...**
24:15
**non-infringement (...**
14:9,9,13 15:4,12,19
16:21 39:19 54:13
54:16,20 55:5 68:19
69:4,22 118:11
129:15 142:4,7
149:23 170:1,7
171:7 234:18
**non-infringing (1)**
183:20
**non-object-oriente...**
25:4 89:19
**non-overlapping (1)**
223:7
**normal (2)**
10:5 11:22
**Northern (2)**
1:2 5:10
**Nos (3)**
234:16,19,24
**note (6)**
6:3 66:12 80:17 81:5
184:19 194:11
**notice (1)**
52:11
**noticed (1)**
37:16
**notion (1)**
60:13
**number (66)**
5:7,11 6:4,6,11 10:2
43:15 67:23 71:1

75:9,15,15,17,18,19
75:20 76:4,15,19,20
76:22 77:2,3,13,14
77:19,20,22 78:3,8
78:12,13,17,18,20
79:15 81:18,22
82:13,19 83:18
96:10 124:22 126:7
126:7,11,12 129:12
129:13,22 130:10
134:1 137:18
138:23 140:7
143:10 144:6
188:22 213:12
219:5 220:18,20,21
220:22,24 231:17
**numbered (4)**
72:13 73:6 86:3
225:12
**numbers (4)**
28:6 33:21 96:5 124:3
**numerous (2)**
150:8 155:12

---
**O**

**O (4)**
1:14,15,15 4:1
**oath (1)**
117:22
**object (74)**
10:13 23:16,16,18
24:21 31:2 37:4,8
37:21 38:22,23 39:1
39:3,4,9 41:14
43:13,16 53:6,8,25
63:23 88:10,12,18
90:8,9,12,16,20,24
91:11 101:14 102:8
102:9,11,17 130:4
130:20 133:11,18
134:1,3,10,10 135:1
136:4,18,19,23
137:1,5,15,19 138:2
140:23 141:2,9,11
141:12,14,24,24
142:12,23,25,25
143:5,5,18 188:25
203:8,18,19
**objection (193)**
8:14 11:18 12:14
19:20 23:13 24:4,10
25:5,15 26:14,25
27:7,22 28:9 29:1
29:17 37:22 38:15

39:6 40:4 41:3,19
43:1 44:3 45:8,22
46:9,20 47:14 48:5
49:20 56:17 57:6,21
59:12 60:4,11 61:5
61:15 62:2,12,23
64:4 65:1,23 66:15
67:4 68:2,21 72:16
75:12,21 76:6,24
77:7,16,25 78:25
79:11 80:11 81:20
82:17 84:14 85:2,13
85:23 87:1 89:5
91:2,15 92:14 94:6
94:16 97:19 99:1
100:25 102:13
103:14 104:7,22
105:19 106:20
107:5,17 108:18
109:1,13 110:19
114:4 115:12
116:15 117:13,24
118:25 119:13
121:9,22 127:19
129:9 131:7 132:10
134:5,20 135:10,14
136:5 137:10 138:5
138:24 143:24
147:2,17,20 148:10
149:12,25 153:25
155:24 157:24
158:24 159:24
160:15 161:2,13,23
163:2 164:17 165:5
165:15,25 167:2
168:25 170:5,20
171:6,25 172:15
173:25 174:19,22
175:10 179:3,22
180:10 181:8,23
183:10 184:9
185:15 186:5,25
188:1 190:5,19
191:24 192:24
193:10 194:1,18
196:7 198:7 200:13
202:4 205:8 206:8
206:22 207:11
208:24 209:18
210:7 211:25
212:11 213:13,23
214:19 215:15
217:16 218:4,24
219:16 220:8

221:14 222:7 224:2
224:13 225:5
226:17 227:12,23
229:4,24 230:13
231:8
**objects (10)**
24:20,23 25:2 85:20
88:10,18 89:3
101:18,20 102:4
**object-oriented (39)**
23:10,15,21,25 24:2,8
24:11,13,17,25,25
29:25,25 30:6,9,23
30:23 31:2,5,8,12
31:19,23 32:3,7
87:19,25 88:17,21
88:23 89:4,10,11,15
89:16,17,21 91:4,6
**obligation (4)**
156:5,9,11,13
**observation (1)**
187:4
**observe (5)**
123:7 131:24 132:3,7
183:8
**observed (15)**
53:7,24 105:3 128:24
150:2 180:12,22,23
181:7,9 184:7,11,13
185:9,16
**observing (2)**
126:12 186:17
**obtained (1)**
28:1
**obtaining (1)**
122:15
**obtains (1)**
23:18
**obviously (1)**
116:19
**occasion (1)**
182:1
**occasions (2)**
19:23 182:13
**occur (3)**
54:24 141:1 228:12
**occurs (5)**
51:3 99:12 135:10
163:10 224:19
**October (1)**
83:21
**odd (1)**
36:20
**offer (4)**

50:20,21 51:9 54:16
**offered (6)**
22:25 69:11,15 111:7
111:13 181:11
**offering (1)**
133:20
**offers (1)**
116:5
**offices (1)**
2:5
**Oftentimes (1)**
156:12
**oh (15)**
15:15 26:24 30:12
32:25 52:13,13
63:13 67:15 80:20
87:2 92:21 96:20
127:13 133:15
189:22
**okay (71)**
6:10 9:5 12:4 15:3
18:5 19:12 20:6
22:12 30:5 32:6
34:16 35:16 36:1,12
37:12 38:11 40:17
40:23 43:5 51:18
52:1 55:22 58:22
68:12 70:2,21 71:23
72:23 75:19 76:4
82:3 83:5 85:24
95:18 105:6 111:18
114:9 116:9 123:4
129:15 133:10
137:5 138:21 139:5
144:14 147:9 161:9
163:22 164:25
179:15 180:6
182:24 183:25
184:24 189:3,25
190:16 194:23
197:9 200:9 205:19
206:12 210:19,20
214:5 221:8 226:13
227:2 228:23
231:22,24
**once (1)**
21:9
**ones (8)**
23:8 72:23 73:19
91:25,25 119:11
128:24 129:1
**one's (1)**
173:10
**one-finger (2)**

Highly Confidential - Attorneys' Eyes Only

85:11 120:1
one-point (1)
87:22
one-touch (1)
130:8
onTouch (1)
43:9
onTouchEvent (31)
42:12,17 43:11,21
44:2,6,9,13,21 45:4
45:5 47:17 48:2
49:19 50:4 56:12,19
56:20 57:1,5,15,25
58:4,15,20 59:1
63:21,22 64:6,7,17
onTouchEvents (1)
44:22
on-touch (1)
47:11
opened (3)
216:21,22,22
opening (3)
51:14,16 216:1
operate (2)
115:6 199:17
operated (2)
41:12 84:17
operates (2)
43:23 214:21
operation (59)
42:17,19 44:2 46:19
47:13 48:4 49:1,18
53:6 58:12,16 60:10
60:18,19,23 63:23
64:12 66:12 86:17
87:5 101:14,15
102:12,18,19
106:23 109:16
130:20 131:1,2,12
131:15,17,21 132:2
132:8,16 133:12,18
134:2,11,12,18,19
135:2,6 136:1,25
137:6 138:4 143:19
143:23 181:10
187:17 195:15,19
221:21,22 222:1
operations (15)
47:23 49:11 50:5 54:1
64:10 65:9 66:6
88:12 109:17
111:22 112:4 133:8
138:19 183:20,22
opines (1)

185:25
opining (2)
10:9 217:8
opinion (22)
37:18 40:1 54:25
74:14 81:16 90:17
90:18,19,23 92:2
93:5 104:4 133:20
143:13,16 144:9,20
159:2 170:1,7
179:15 205:21
opinions (10)
50:20,24 51:2,3,4,8
51:12 54:15,20 55:2
opportunity (2)
58:7 90:1
opposed (4)
32:19 134:17 135:8
171:3
option (2)
222:5 224:10
options (1)
28:1
order (19)
73:22 92:16,25 94:18
95:20 99:13,20
100:18 124:21
140:25 141:17
146:19 152:1 160:3
160:6 163:13 176:4
188:15 232:4
ordinary (4)
145:15 146:8,25
148:2
organized (1)
130:17
orientation (2)
23:18 31:3
oriented (1)
37:7
original (6)
188:20,22 191:12
193:16 209:24
214:11
outcome (1)
233:19
output (1)
222:24
overall (1)
68:7
overhead (1)
98:3
overlaid (5)
222:18 228:5,6,7,8

overlain (1)
227:22
overlap (6)
73:19 127:4 172:20
172:21,22 223:8
overlapped (1)
180:4
overlapping (5)
154:23 179:17 223:7
225:15 231:2
overlay (1)
218:2
overscroller (9)
60:1,8,14,16,25 61:11
61:25 62:10,21
overscroller.fling (1...
58:17,24 59:3,8,9,15
59:19 60:16,21
61:18 62:25 63:4
─────────────
           P
P (4)
3:1,1 4:1,1
pad (12)
26:7,10 27:9,17,21
28:5,12 113:10,10
231:20,20,21
pads (2)
27:6,19
page (120)
2:6 5:13 14:24 15:20
18:25 19:2,4 20:8,8
20:8,9,10,10,11
32:24 33:2,3 36:25
36:25 38:9,18 42:9
52:9,24 56:10,15
58:11,14,19 59:14
63:10,11,16 64:16
70:11,17,22,23 71:1
72:6,18 73:14,16
74:16 76:12 83:23
84:2,4 86:1,2,3,3,5
88:3,7,7 96:18,19
96:21 97:7 129:15
133:13,14 140:18
140:20 145:23
146:13 151:3,6,19
151:24 152:1,3,16
152:23 153:10,24
154:5,21,25 156:10
156:11 159:6,23
189:20,23 190:21
191:2,4,15 197:5,7
200:23 204:1

205:22 206:2
210:16 211:4 215:2
216:13 218:18,18
218:25 223:2 225:7
225:12 228:15
230:21 234:5,13
236:7,8,10,11,13,14
236:16,17,19,20
pages (11)
33:22 35:6 37:1 56:7
86:1,2 88:4 154:8
189:15 210:14
218:21
Palo (4)
1:18 2:6 5:1,14
pan (2)
100:18 214:16
panning (11)
48:14,16 84:25 85:8
102:18 118:5,20
120:20 121:19
144:2,3
paper (3)
76:10 96:17 199:24
paragraph (25)
38:13 52:9,24,25
53:17 55:9 86:6
112:6 118:3,9
129:20 133:10,14
133:15,16 142:1,13
146:14,24 151:7
197:6,10 203:7,12
219:23
paragraphs (2)
146:13 203:16
parameters (3)
135:18,18 136:24
parent (4)
203:3,5,9 219:4
parses (1)
38:21
part (23)
43:25 61:7 62:5 87:21
87:24 94:25 101:4
112:7,16 116:7
136:11,11 150:12
156:6,9 170:2,7
178:7 203:21
211:21 212:9,14
224:12
partial (1)
111:14
partially (1)
225:11

particular (17)
10:21 31:14 43:16
44:8 61:13 65:14
81:6 97:8 102:23
109:6 152:24
153:16,20 154:3
163:17 218:8 228:4
parties (2)
20:1 233:17
partitioned (1)
228:16
Pascal (4)
23:7,17,20,24
passage (2)
65:3,7
passes (1)
38:20
patent (96)
10:21 11:9 12:6 13:6
13:10,13,17,20 14:3
14:5,24 52:23 53:14
70:6,11 71:5 73:11
74:14 81:11,18 90:5
92:5,10 94:5 103:2
103:6,10 104:6
107:2,16 113:24
116:10 121:8
129:19 130:3 134:9
135:13 139:14,23
144:22 149:2,5,24
150:17 151:21
156:15,16,16,23
159:2,18 160:2,7,9
164:13 165:1 170:2
171:11,20 173:16
176:11,14,25 177:7
177:8 179:2 180:18
185:25 191:20
199:4 201:18,24
204:9 211:4,23
217:7,9 222:14,21
222:23 226:5,9,12
226:13 227:5 228:2
229:19 234:16,19
235:3,12,16,22
patented (1)
164:8
patents (22)
10:7,9,12,21,25 11:5
11:7,8,11,12,16,25
12:2,18 13:4 14:16
15:5,20 50:22
134:22 146:21

234:24
**patent's (1)**
184:23
**path (18)**
46:16 47:2,3,12 48:1
48:3,25 57:13,24
58:5,6 63:2 66:22
67:2,8 134:17,18
215:4
**paths (4)**
45:13,15 47:19 60:22
**Patrick (2)**
4:6 6:1
**pause (2)**
42:5 152:13
**PC (3)**
98:23 199:12,14
**PCs (1)**
199:24
**pending (2)**
17:25 18:2
**people (2)**
30:18 199:18
**percent (10)**
7:23 8:4,8,20 68:8,9,9
68:24 69:3,4
**percentage (2)**
7:19 8:12
**perfectly (1)**
12:12
**perform (22)**
60:18,23 62:19 63:22
64:9 88:11,20
105:11 106:2,19
112:4 113:22 125:2
126:18 128:10,16
129:4 131:21
134:12,12 141:17
183:16
**performance (1)**
125:4
**performed (32)**
32:4 40:19,21 43:21
48:20,20 54:1 60:20
64:12 65:9 89:18
98:14 100:6 124:20
125:12,23 128:6
129:6,17 133:8
146:4 169:4 172:8
186:8 196:6,22
197:22,24 207:15
219:14 221:25
226:15
**performing (7)**

105:15 106:22 109:16
111:21 136:22
184:8 218:22
**performs (3)**
43:19 102:18 183:16
**period (1)**
29:11
**periods (1)**
125:17
**peripherals (1)**
115:3
**permit (4)**
118:5,13,20 120:20
**permitted (3)**
119:4,11 121:3
**person (3)**
145:15 146:25 148:2
**personal (1)**
88:8
**personally (2)**
31:4 199:17
**pertain (1)**
79:20
**pertaining (1)**
52:23
**pertains (2)**
176:24 194:4
**pertinent (1)**
102:2
**Phillips (2)**
4:10 5:16
**phone (6)**
21:25 114:3 120:2
190:2,14 210:3
**phones (11)**
36:9 120:5,7 121:6
127:14,17 128:8,12
128:14 129:3,5
**photograph (1)**
219:22
**phrase (1)**
156:17
**phrased (1)**
54:2
**phrasing (1)**
130:11
**physical (8)**
28:5 89:3 107:12
113:25 114:1,24
116:12 158:4
**physically (1)**
86:5
**Ph.D (1)**
234:23

**picked (3)**
84:11 87:11 125:1
**picture (2)**
143:8 219:22
**pictures (3)**
37:1 200:24 218:20
**piece (2)**
43:5 44:8
**pieces (4)**
172:23 215:25 217:8
217:11
**pipes (1)**
88:14
**pixel (1)**
221:5
**place (10)**
10:2,11 11:23 37:11
125:19 138:20
160:4 178:17,23
195:16
**placed (2)**
69:19 123:2
**places (2)**
45:5 113:14
**placing (1)**
122:22
**plain (1)**
170:22
**Plaintiff (2)**
1:5 3:3
**PLAINTIFF'S (1)**
234:13
**plan (1)**
88:13
**Platzer (2)**
53:12,15
**player (2)**
112:8,9
**please (32)**
5:21 6:13,22 16:16
24:6 34:20 44:24
56:8 63:14 65:24
73:25 97:12 98:19
127:20 132:24
138:6 167:14,16
168:2 171:13
172:15,19 176:17
177:25 178:2,6
197:6 200:8 201:22
202:4 226:16
230:10
**plug-in (4)**
203:7,13,18,19
**plumber (2)**

88:12,14
**plur (1)**
174:23
**plurality (71)**
156:18 161:1 162:15
162:23 163:1,5,5,8
163:19,20 164:2
165:1,22 166:14,20
166:21,25 167:8,9
167:20,21 168:11
168:14,15,17,19
169:6,10 170:4,24
171:14,17,21 172:8
173:1,3,3,5,9,17,20
173:22 174:3,7,10
174:12,15,16,24,24
175:5,6,8,18,22,25
176:4,5,9 177:2
178:22,25 179:5
180:8 201:18,18
202:22,25 223:24
227:16,21
**plus (1)**
68:12
**pocket (3)**
199:12,14,24
**point (43)**
16:19 42:8,15 43:10
44:1,5 45:20 46:3,4
46:17 48:25 56:10
56:11,21 57:5,19
58:14,23 63:9 86:18
87:3,7,11,12,18
101:3 119:22
120:16 124:16
130:8,21,25 131:14
135:18 143:20
163:12 166:17
168:12,20 173:13
174:9 192:9 222:20
**pointer (17)**
45:11,17 46:23 47:5
47:10 48:2,8,12,15
48:17 49:9,18,25
50:3 57:24 58:7
137:17
**pointer's (1)**
57:9
**pointing (3)**
113:10 208:7 231:20
**points (26)**
42:12,18 43:10 46:6
58:11 63:24 64:13
86:8 87:12,18

103:10 118:6,13,21
119:4 122:10 123:2
124:16 130:9,10,22
131:11,16 138:3
143:22 174:9
**Poly (3)**
22:13,15,21
**pops (1)**
79:23
**populate (2)**
39:8 41:11
**PopulateMotionEv...**
38:24 39:1
**populates (1)**
39:4
**portable (10)**
112:8 149:7,16
166:12 177:1 183:2
183:12 199:16
227:14 228:3
**portion (22)**
42:10 64:16,24 99:25
150:14 160:12,20
160:24 161:11,21
162:3,7,12,22
172:16 174:17
175:3,16 194:8
207:20 227:14,15
**portions (3)**
34:23 70:14 155:18
**posed (2)**
105:21 177:22
**position (6)**
106:25 111:12 139:12
183:6 195:11
214:10
**positioned (2)**
223:9,11
**possible (6)**
49:17 65:20 122:2,6
191:8 194:21
**post (2)**
194:6,6
**post-report (12)**
126:2,4,5,13,14,15
127:4,10 128:2,9,22
129:2
**potential (2)**
9:21 178:18
**potentially (3)**
12:24 13:9 154:24
**practical (2)**
220:22 221:1
**practice (6)**

Highly Confidential - Attorneys' Eyes Only

7:15 8:5,7 86:13,16
  87:5
**preamble (3)**
  108:9 109:22 110:12
**precise (3)**
  26:20 68:25 156:2
**precisely (1)**
  26:9
**preclude (2)**
  179:12 203:24
**precludes (1)**
  131:5
**preclusion (1)**
  203:15
**predecessor (1)**
  190:13
**predecessors (1)**
  7:8
**Preferable (1)**
  157:15
**preferred (1)**
  164:15
**pregates (1)**
  44:9
**premature (1)**
  116:21
**preparation (1)**
  69:2
**prepared (2)**
  56:2 188:6
**preparing (1)**
  39:19
**preponderance (2)**
  36:22 66:1
**preselected (1)**
  231:15
**present (8)**
  4:10 111:20 112:10
  129:18 142:10,11
  142:14,19
**presentation (8)**
  152:4 153:2 154:4,9
  158:3 159:4 190:8,8
**preserved (3)**
  140:25 141:10,17
**pressing (1)**
  231:17
**pressuring (1)**
  172:18
**presume (2)**
  95:1 181:1
**pretty (7)**
  20:16 23:15 40:10,15
  43:23 70:16 122:5

**prevail (1)**
  155:4
**previous (8)**
  8:10,16,17 46:5
  162:11 167:23,24
  177:12
**previously (2)**
  71:18 215:12
**pre-report (10)**
  126:5,5,13 127:3,8
  128:5,20,24 129:3,5
**primarily (7)**
  7:12 24:19 30:14
  31:13 33:18 34:12
  84:16
**print (1)**
  18:24
**printed-out (1)**
  33:21
**printer (1)**
  28:3
**printing (1)**
  27:3
**prior (24)**
  26:13 33:25 52:5 71:6
  71:9 72:11 81:2
  144:14,24 145:10
  146:14,16,20,22
  147:4,12,15,24
  148:1,4 200:4 217:8
  217:12 231:3
**privileged (4)**
  10:16 88:10,10,18
**probably (30)**
  7:23 8:7,18,19 10:1,5
  10:10 18:20 22:2
  34:11 40:10 41:7
  42:1 44:7 45:14
  56:22 59:22,23 65:7
  66:4 68:7,23 69:3
  73:23 95:12 102:3
  110:20 122:5
  184:15 220:25
**problem (2)**
  88:3 163:15
**procedural (1)**
  25:7
**procedure (1)**
  25:6
**proceeding (1)**
  232:10
**process (4)**
  69:21,23,23 70:1
**processed (3)**

37:20 38:6,20
**processing (35)**
  57:10,11,13 99:6
  103:12 105:8
  106:16,18 107:3,24
  108:8,16 109:8,11
  109:12,15 110:3,6
  110:10,11 111:5
  112:9,13,17,21,23
  112:24 113:1,2,8
  140:25 153:17,20
  155:12,18
**processors (4)**
  149:9,11,17,20
**produce (1)**
  120:8
**produced (5)**
  25:22 131:25 132:14
  132:15 188:21
**producing (1)**
  17:6
**product (16)**
  37:14,17 119:11
  123:19 127:3,5
  131:21 184:11
  187:21 190:9,13,16
  190:17,17,22
  193:24
**products (91)**
  34:3 37:13 118:5,12
  118:16,18,20,23
  119:3,3,6,17,21,24
  119:25 120:3,11,15
  120:19 121:1,4,7,13
  121:24 122:7,17,17
  122:20 123:1,4,11
  123:13,14,15,21,23
  123:25 124:5,9,10
  124:10,11,15,18,22
  125:1,3,6,9,12,22
  125:24 126:7,7,9,16
  126:18,20,21,22
  127:3,4,7 128:1,21
  128:22 129:1,17
  131:19,24 132:18
  132:19 133:3 136:2
  137:9 149:16,22
  150:2,9 161:9,19
  162:21 180:7 181:5
  181:17,24 182:3
  184:7 185:24
  186:18,18
**profession (1)**
  7:2

**Professional (2)**
  233:6,8
**program (11)**
  24:18 32:11,12 103:9
  108:5 111:25 199:8
  199:11,18,19
  213:22
**programmed (1)**
  89:15
**programmer (1)**
  99:18
**programmers (1)**
  100:11
**programming (33)**
  22:23,25 23:2,5 24:3
  24:9,12,12 25:1,2
  25:10,13,19,20
  28:18,20 30:1,6,23
  31:2,5,19 87:19,25
  88:21,24 89:4,10,11
  89:16,16,18,19
**programs (22)**
  24:13,19,25 25:4,7,22
  29:16 30:23 31:4,6
  31:9,12,20,23 32:7
  32:8 149:9,10,18
  155:10,10 199:20
**prohibit (1)**
  89:14
**project (2)**
  26:13 29:9
**projected (2)**
  104:10,19
**projection (1)**
  104:9
**projector (7)**
  84:12 104:9,20,25,25
  138:15,18
**projects (6)**
  25:17,24 29:4,8,19
  30:25
**proper (2)**
  35:15 101:11
**properly (2)**
  94:18 95:4
**property (1)**
  164:24
**proportion (1)**
  68:18
**protective (1)**
  232:4
**protector (2)**
  84:22 98:3
**Prototype (1)**

78:16
**provide (12)**
  124:14 125:7 130:25
  152:9 155:8 157:14
  158:3 164:23
  170:11 218:11
  222:2,2
**provided (3)**
  28:13 146:3 210:6
**provides (9)**
  25:1 130:7 133:4
  150:25 151:11
  154:19 180:20
  192:15 220:16
**providing (2)**
  130:24 135:8
**proviso (2)**
  59:4 205:11
**publications (1)**
  74:13
**pure (1)**
  219:21
**purpose (9)**
  40:24 111:24 112:24
  124:13 153:17
  168:21 169:12,15
  177:8
**purposes (9)**
  105:15 106:22 109:16
  111:23 154:13
  155:19 158:13
  167:5 177:9
**pushes (1)**
  100:16
**put (8)**
  69:13,16 111:13
  122:12 128:13
  190:9 202:20 232:3
**puts (1)**
  195:10
**p.m (18)**
  106:6,9,9,12 148:18
  148:20,20,23
  169:20,21,21,24
  210:21,23,23,24
  232:9,10

_____
**Q**

**quadrant (1)**
  214:11
**quantity (1)**
  120:22
**question (96)**
  11:24 12:7,10,11,12

Highly Confidential - Attorneys' Eyes Only

11:24 12:7,10,11,12
13:25 14:2 16:3
17:25 18:2,5,21
24:5 28:15 29:3
34:24 38:1 40:14
44:13 45:25 49:7,8
49:10,12 61:8 62:17
63:7 64:22 65:10
70:12 73:2,17 74:20
75:3 79:25 80:2,13
80:19,23 81:14,21
81:25 82:4,19,23
86:12,22 87:22,24
89:7,8,21 90:6,7,8
93:10,23 94:19 95:1
95:4,15 96:4 97:12
99:9,10 102:6
105:22 114:6
119:16 121:14
126:25 127:16
131:23 132:2,19
138:6 147:11
157:13 158:16
159:9,18 161:16,25
162:10 176:20
177:22 178:2,6,7,12
178:15 184:22
187:2 200:9 203:23
226:21
**questioning (1)**
10:14
**questions (4)**
10:19 90:3 178:1
231:25
**quick (3)**
40:10 85:7 191:7
**quickly (2)**
40:15 111:1
**Quinn (5)**
3:14,21 4:3 22:8,10
**quite (3)**
180:25 186:16 196:15
**quote (3)**
53:16 120:2 143:8
**QWERTY (1)**
176:22

**R**
**R (3)**
1:15 3:1 4:1
**races (1)**
216:16
**radio (1)**
112:11

**ran (2)**
199:13,15
**range (1)**
229:7
**rapidly (1)**
70:16
**rate (2)**
68:15,16
**ratio (2)**
223:13,18
**reaction (1)**
125:4
**read (41)**
6:10 34:21 36:10
42:23 61:7 64:15
71:12 86:15,25
101:7 116:3 130:24
131:9 134:9,9 135:5
138:6 144:7 151:5
156:23,23,24
161:16 163:5,7,10
171:12 172:3,5,13
172:16 174:5 178:2
178:4 184:20,22
190:20 205:12
221:15 223:20
224:5
**readable (1)**
103:8
**reader (1)**
216:14
**reading (12)**
51:21 55:17 63:13
90:19,22 99:15
134:7,8,21 139:8
168:21 193:21
**reads (2)**
53:3 59:15
**ready (1)**
172:18
**real (1)**
209:9
**really (10)**
40:8 67:20 80:18 81:2
82:5 89:20 95:10
136:9 177:16
200:21
**Realtime (2)**
233:7,8
**reason (21)**
12:16 16:10 94:20
111:7,12 145:21
192:5 198:14
207:12,17 236:4,7,8

236:10,11,13,14,16
236:17,19,20
**reasonable (3)**
91:12 173:18 194:25
**rebuttal (26)**
15:3,18,18,23 16:2,7
16:13 17:5 39:19
41:18 51:13 54:13
54:19 55:3,5,13,15
67:3 118:3,11
125:11,13,19
133:10 197:6
234:17
**recall (22)**
39:23 40:17 49:13,15
49:16 57:3,16,18
59:18 67:1 71:18
103:6 111:3 119:2,5
123:3 126:12
137:16 138:21
144:14,18 186:6
**receive (1)**
11:5
**received (12)**
10:23,25 11:7,16,25
16:17 17:4 22:14
198:17,20 219:3,8
**receiver (1)**
97:17
**receivers (2)**
84:10 96:24
**receives (1)**
97:22
**Recess (6)**
50:14 83:8 106:9
148:20 169:21
210:23
**recited (2)**
161:22 204:9
**recites (1)**
53:5
**recognition (1)**
99:5
**recognize (2)**
72:13 74:6
**recollect (22)**
11:6 14:4 16:4 22:9
39:2 44:23 48:22
49:5,7 50:5 56:19
62:25 66:21 67:10
67:18 70:17 72:10
111:8 139:25
182:10 186:17
200:3

**recollecting (1)**
52:6
**recollection (52)**
9:6 11:8 13:5 14:11
16:6,11 21:8,19,21
23:23 27:23 28:19
29:10,18 31:7,25
35:8,24 39:5,7,20
43:11,15,21 45:9
46:22 47:6,16 48:7
49:24 57:12 58:6
59:2,6 60:1 61:18
120:14 123:20
127:24 132:17
136:21 137:1,14
139:15 144:23
145:1 182:2,6,12
184:10 214:20
224:21
**reconditioned (1)**
111:25
**reconsider (1)**
42:5
**record (29)**
6:3,22 13:23 50:12,17
55:20 58:13 71:13
71:15 83:7,10 106:8
106:12 148:19,24
151:5 169:20,24
171:13 172:13
178:4 184:20
194:24 202:20
210:22,25 232:9
233:14 236:5
**rectangular (2)**
86:9 87:4
**red (2)**
206:13 208:3
**Redwood (1)**
3:16
**refer (9)**
88:4 114:12 145:18
145:19 157:23
158:20 165:9 202:5
224:4
**reference (26)**
16:12,14 17:12 49:22
52:5 53:12 71:19
72:24 88:22 94:13
95:3 96:6 137:25
144:1,4,14,18
145:10 146:15,16
146:22 147:15
148:1,5 178:10,16

**referenced (1)**
36:11
**references (16)**
35:19 39:11 71:6,10
92:3 93:6 94:2,25
95:9,12,14 144:24
146:20 147:13,24
193:7
**referred (6)**
16:24 114:25 160:6
167:4 174:15
200:15
**referring (26)**
29:9 30:12 83:22
87:14 95:8,11
100:14 101:6
103:20 124:10
130:11 140:1
170:14 174:23
175:7,20 189:23
191:18 192:2,12,21
192:23 196:23
197:10 208:6
223:19
**refers (4)**
59:20 151:9,14 193:6
**reflect (5)**
50:20 51:8 67:19
71:13,15
**reflected (5)**
16:8 50:24 51:12 55:3
218:17
**reflects (1)**
50:24
**refresh (1)**
145:16
**regard (4)**
35:7 52:13,14 196:14
**regarding (27)**
11:24 13:15 14:15,23
15:4,19 22:25 38:1
44:8,10 54:19 55:8
58:25 66:22 69:12
74:23 90:19 91:5
124:7 140:24 180:1
180:2 194:4 217:23
234:15,18,23
**regions (2)**
223:13,18
**Registered (1)**
233:6
**regular (2)**
38:5 218:6
**regular-type (1)**

Highly Confidential - Attorneys' Eyes Only

42:8
**relate (3)**
111:21 121:7 210:12
**related (13)**
7:17 13:9 33:17 34:24
37:25 47:7,23 85:8
102:4 193:18 197:2
218:13 233:16
**relating (7)**
12:7 28:24 29:15,15
29:24 49:11 70:11
**relationship (1)**
63:2
**relative (2)**
65:5 189:20
**relatively (2)**
18:19 217:20
**relay (2)**
98:10 100:3
**relaying (1)**
11:21
**relied (7)**
10:18 72:15,20 73:2,4
97:25 217:8
**relies (2)**
218:9,13
**rely (7)**
73:9,10 220:14 222:1
222:17,19 224:7
**relying (1)**
74:14
**remember (60)**
11:10,14,16,25 12:1
13:12 21:2,3,25
22:1 23:8 30:2,3
34:10,12,14 39:23
41:5,7 43:3 46:10
46:11 47:21,24 48:9
48:11 52:6 56:23,24
56:25 57:13,14 58:4
66:23 67:18,23
70:18,19 71:20
118:16 119:9 120:6
120:10,16,17
122:15,19,24,25
123:10,13 127:1
133:2,7 139:2,19
144:25 187:20
214:22 224:16
**remembering (1)**
11:23
**render (11)**
156:9 202:14,15,16
202:17,22,24 203:2

203:20 210:14,15
**rendered (3)**
154:4 157:3 159:6
**rendering (4)**
152:3,25 154:20
209:8
**repeat (2)**
115:14 201:22
**repeating (3)**
13:24 45:25 158:15
**rephrase (5)**
155:25 158:17 182:11
182:18 184:22
**replaced (1)**
203:9
**replaces (1)**
215:11
**replied (1)**
17:10
**report (178)**
14:15,18,23,25 15:4
15:13,17,18,18,23
16:2,6,7,13,15,22
17:2,5,21,23 18:3,9
18:12 33:25 34:5,6
34:9,11,14,20 35:8
35:14,15,24 36:8
39:19 41:18,23
50:20,23,24,25 51:7
51:13,15,16,17,21
52:3,10,21 53:18
54:7,9,13,14,19
55:3,5,9,11,13,15
56:8 66:11,18,23
67:3,7,10,14,15,22
69:6,7,8,10,10,13
69:14,15,17,20,22
69:24,25 70:15,17
72:15,21,25 73:13
73:16 74:2,8,11,12
74:18,24 75:8 76:16
76:17 78:3,12,15,19
79:5,9,16 80:15
82:6,14,21 83:15
85:5,7 93:12 94:3
95:21 96:2,6,8,10
96:11 97:13 98:6
118:4,11 125:11,14
125:20,21,23 126:1
127:14 128:13
129:11,16,16
131:20 133:10
136:15,16,19 138:1
140:16 142:2,7,8

145:17,18,19,23
146:13 149:23
150:20 151:7
163:14 181:12
189:20 197:6,16,19
198:23 199:3,7
217:3 226:4 234:15
234:18,21,23 235:2
235:8,11,14,19,20
**reporter (8)**
5:19 6:13 45:1 178:3
233:6,6,7,24
**Reporting (2)**
5:17,20
**reports (4)**
55:17 69:2 190:11
218:21
**representative (2)**
9:12,16
**representing (2)**
5:22,24
**represents (1)**
18:7
**reprographic (6)**
27:4,14 28:2,14 29:11
30:21
**reprographics (2)**
30:14,15
**requested (1)**
69:14
**requesting (1)**
28:8
**require (7)**
103:7,10 109:5
139:20 158:19
159:19 223:21
**required (3)**
111:23 183:18 205:4
**requirement (4)**
156:6 158:8,8 160:5
**requirements (1)**
148:8
**requires (9)**
117:9 134:3,15
166:12 170:18
171:3 176:25 177:1
205:3
**requiring (2)**
108:15 116:10
**requisite (1)**
99:6
**reread (1)**
162:10
**rereading (1)**

53:18
**reserve (3)**
54:23 197:15 232:2
**Reset (1)**
67:15
**resolve (1)**
163:18
**resolved (1)**
102:1
**resolves (1)**
154:23
**respect (16)**
31:8 32:4 39:12 41:13
45:10 71:21 87:21
88:2,16 124:9
136:22 154:3,20
204:10 207:15
224:16
**respectively (1)**
39:13
**responding (1)**
186:19
**responds (2)**
100:24 213:16
**response (18)**
28:8 37:4,8 90:2
111:14 140:23
147:22 181:20
184:3 185:5,11,19
186:2 193:22
196:13 200:8 213:5
225:1
**responsible (1)**
59:16
**responsive (2)**
28:15 132:18
**rest (4)**
53:16 79:22 110:10
116:4
**Restate (1)**
24:6
**result (1)**
194:16
**results (5)**
50:4 59:10 60:2,9
122:15
**retained (11)**
8:24 9:1,5,6 12:23,25
13:2,8 14:6 21:16
21:19
**retention (2)**
68:1,6
**revealed (1)**
93:1

**revenues (4)**
7:16,21 8:12,12
**review (18)**
33:11 34:4 65:17 66:2
73:9,21 85:15,18
90:1 92:15,23,25
110:17 111:7
144:13 146:1
176:17 232:2
**reviewed (18)**
32:13,17,23 33:5,8,24
34:1 35:10,13,21
36:14,19,24 65:20
65:21 66:1 74:9
85:4
**reviewing (7)**
52:2 54:9 72:17 93:4
94:7,23 111:3
**reviews (1)**
34:22
**revision (1)**
54:4
**RF (2)**
112:12,21
**right (151)**
17:14 18:10,25 32:21
35:4,13 36:6,25
37:17 49:6,7,12,25
50:2 54:12,24 55:6
56:7 62:11 67:13
70:3 71:3,19 75:5
75:11,20 76:15,18
76:23 77:22 78:10
78:14,17,22 80:7
81:5 82:4 83:23
84:17 92:17 93:8
94:11 95:10,10 96:7
96:16,21,25 97:11
97:18 98:7 100:8,8
102:22 106:25
108:25,25 113:16
115:21 116:20
118:3 122:22 126:2
126:17 127:25
128:17 133:12
135:13 138:10,16
139:19 140:8
141:15 142:22
143:14 144:12
146:11 149:4,22
150:5 151:15,19
152:5 155:14
156:14 157:16
159:1 162:17 164:9

TSG Reporting - Worldwide   877-702-9580

Highly Confidential - Attorneys' Eyes Only

159:1 162:17 164:9
165:3,14,22,24
166:7 167:1 168:8
168:10 170:16,19
171:19 172:14
173:3 177:16
185:14 188:14
189:10,19 190:1,18
191:2 193:3 197:15
197:20 199:10,12
200:11 201:2,13
204:4 206:4,7,15,25
207:10 208:1,8,13
208:14,19 209:3,17
210:3,6,17 211:6,10
211:19 212:18,20
214:14,18,22
215:23 219:15
220:7 221:3,13
224:12 229:1
231:24 232:2

**right-hand (8)**
37:11 208:2,10 209:3
209:4,22,23 214:11

**Road (2)**
2:6 5:14

**Robbins (32)**
217:7,11,14,18 218:1
218:5,19,19 219:11
219:19 220:11,12
220:16 221:9,12,18
221:22 222:11,21
222:22 224:12,16
224:23 225:8 226:4
226:9,12,23 229:9,9
229:19 235:22

**roles (1)**
7:14

**Roman (1)**
154:19

**room (1)**
69:18

**rotate (1)**
130:9

**rotating (1)**
49:1

**rotation (3)**
49:17,18 50:4

**roughly (1)**
197:21

**rows (1)**
98:11

**RPR (3)**
1:22 2:7 233:23

**Rule (2)**
70:6 235:3

**rules (3)**
10:15 155:1,3

**run (1)**
199:13

**running (3)**
97:14 195:7 215:8

**runs (4)**
19:2,5 33:2 199:11

**rushing (1)**
172:17

---

**S**

**S (25)**
1:15,15 3:1 4:1,4
37:15,16 38:6 40:3
41:2 42:10,11,25
45:5,10,20 46:7
56:11 58:15,20 61:2
62:10 63:12,20
66:12

**sake (1)**
176:21

**SAMNDCA (1)**
188:22

**Samsung (55)**
1:7,8,9 3:13 5:8 6:1
8:25,25 9:2,4,12,18
9:25 10:4 12:23
13:1 20:25 21:2,9
21:15,17,20 33:14
34:4 37:15 38:7
42:25 54:5 62:10
119:24 120:9,25
136:2 149:7,15
161:19 169:3,8
170:9 180:13
186:18 188:4,21
189:9 190:2,14,17
190:17,25 191:1
193:22 195:24
196:13 234:10
236:1

**Samsung's (8)**
34:2 70:5 71:25 72:8
73:7 75:7 235:3,5

**Samsung-accused (6)**
162:21 180:7 181:5
181:17 184:7
187:21

**San (3)**
1:2 3:6 5:11

**SAPI (5)**

97:2,3 99:13,18
100:10

**SAP1 (1)**
96:25

**sat (1)**
84:9

**saw (2)**
43:22 53:17

**saying (10)**
42:11 60:7 95:9 100:2
134:17 167:18
171:19 173:7 174:7
174:10

**says (46)**
44:4 52:10 53:4,13
56:11 58:14 63:20
71:4 86:6 87:2,3,17
98:9 108:9 115:16
115:19 116:2
129:11 133:16
135:4 140:22
142:14 144:1,4
150:13 152:22
156:17 162:1,12
168:13 170:23
172:9 173:4,5,19
174:2 175:3 188:23
191:6 192:8,22
193:13 195:25
213:5 219:1 223:3

**scale (3)**
121:20 129:24 130:9

**scaling (20)**
46:19 47:1,2,4,7,7,12
47:21,23 48:18,25
49:11 62:22 63:2,22
64:10,19 84:25 85:1
144:3

**scaling-related (1)**
47:4

**scenario (3)**
101:2,10 102:10

**Schmidt (2)**
4:6 6:1

**science (3)**
22:15,21,23

**scientific (1)**
124:14

**scope (2)**
14:10,11

**scratch (1)**
31:10

**screen (69)**
27:13 28:7,7 29:16,16

63:25 64:13 104:19
104:20,24 105:1
113:10 114:1 123:6
131:22,25 132:4,9
149:8 150:15
155:23 156:3
158:20,23 159:17
160:13,25 162:13
167:1 168:24
169:15 173:22,23
174:18 175:4 181:7
184:6,16 185:22
191:8,10,10,11,12
191:18,18,23 192:9
192:10,11,22 193:8
193:13,13,15,16
194:7,10,11,12,13
195:2,7 209:9
215:11 216:7 223:5
225:4 227:15

**screens (1)**
27:19

**script (2)**
153:19 155:9

**scroll (51)**
42:16 44:2,6,14 56:13
58:12,16 60:9,18,23
61:13 62:19 102:12
102:18 118:6,7,21
118:22 122:3,9
127:8 128:6 129:24
130:8,20 131:1,10
131:14 132:1
133:11,18 134:2,10
134:18 135:1,1,6
136:2,25 137:6,7
138:4 143:19,21
144:5 186:20,22
193:3 214:16 226:1
230:8

**scrolled (2)**
120:12 123:1

**scrolling (65)**
48:4,16 54:1 59:16
60:2 61:1,3,12,14
62:10 63:6 84:25
85:1 101:4,4,8,14
118:5,13,20 119:4
119:12,17,22,25
120:3,15,20 121:2
121:19 122:7,14,16
122:18,21 123:5,17
123:18 124:1,2,6,8
124:8,17,19 125:2,5

125:8,13,18,18
126:1,11,19,24
127:18 128:10,14
128:16 129:4,6
131:6 138:22 143:9
214:10

**scrolls (1)**
143:13

**SDK (2)**
75:23 99:4

**Sean (1)**
5:16

**second (94)**
12:6 53:4,4 83:23
87:24 88:7 160:10
184:2,2,4,5,12,13
184:14 185:3,4,5,7
185:10,10,12,13,19
185:20,20,21 186:2
186:4,12,19,23
187:18,21,22,22,24
191:22 192:15
193:25 194:13
211:8,13,18,18,19
211:20,21 212:5,6
212:13,15,19,22,23
212:24 213:6,6,8,15
213:16,25 214:15
215:1 216:3,9,18
224:25,25 225:1,3
225:10,11,20,23,24
226:1 227:8,10
229:22,22 230:4,5,8
230:21,23,25 231:1
231:6,6,11,12,13,14
231:14

**seconded (1)**
188:11

**seconds (1)**
56:3

**section (10)**
42:22 52:23 64:20
66:22 70:11 96:17
96:19 98:8,8 145:21

**sectors (3)**
220:18 222:24 225:25

**see (88)**
17:24,24 19:8 20:21
21:4 37:4 38:6,8
39:14 40:18 41:11
42:13,21,22,22
48:10 49:2 52:8
56:14,15,22 58:12
58:18,19 63:3 64:1

Highly Confidential - Attorneys' Eyes Only

64:20 65:8 66:7
68:6,17 71:3,11
79:2,22 80:24 81:13
83:19,20 84:1,4
85:10 86:24 91:22
91:24 98:16 103:13
103:19,19 110:22
118:8,10 124:5
129:20,25 130:1
132:25 134:25
141:4 143:11 144:1
146:17 166:7,10
178:17,23 189:21
189:25 191:13,14
193:8,12,14,16
195:22 196:2,3
197:17 199:18
208:4,11,20,21,22
214:17 222:22
228:11 231:5
**seeing (5)**
70:18,20 71:18,20,21
**seen (13)**
70:13,17 72:8,11
179:12 189:5,6,8,12
189:12,14,16,17
**segment (8)**
217:21 225:17,18,20
225:22 230:3,4,18
**segmentation (38)**
218:1,6,7,8,11,22
219:3,7,8,10,13
220:4,13,17 221:7,9
221:12,18,22,25
222:3,16,24 223:4
223:16,21 224:19
225:16 228:7,12,14
228:19,25 229:3,7
229:10,18 231:2
**segments (9)**
219:5 220:18,20,23
220:24 221:4
222:23 223:7,8
**segregated (1)**
159:20
**select (11)**
163:16 164:2 174:13
184:12 185:18,18
215:6 216:12 225:8
225:18,22
**selectable (1)**
160:2
**selected (9)**
176:24 182:5 183:14

184:14 204:11
207:21 215:1
225:18 231:15
**selecting (6)**
86:9 87:4 179:10
215:25 216:9,15
**selection (17)**
160:4 163:12 166:18
179:9 180:1,15,20
204:20 206:11,13
212:22 213:14
216:8 225:10,23
230:3,4
**selections (1)**
27:25
**selectively (1)**
111:24
**self (1)**
115:24
**self-contained (2)**
114:2 115:25
**seminar (2)**
30:8,11
**seminars (2)**
30:18,20
**Send (6)**
98:9 100:1,3,15,20
101:24
**sense (8)**
52:25 53:2 113:25
137:20 195:9 211:8
220:22 221:1
**sensing (1)**
127:9
**sensors (2)**
25:14 115:4
**sent (6)**
10:12 11:11 84:19
99:17 100:13,19
**sentence (13)**
44:4 52:24 53:3,4,4
53:13 58:19 59:14
64:18 71:12,21 87:2
133:16
**separable (1)**
157:5
**separate (10)**
17:11 19:22 55:12
158:6 176:2,2
201:12,20 202:1
218:2
**separated (4)**
159:6,20,21 161:7
**separation (2)**

158:19,20
**sequence (2)**
98:14 100:7
**Sequential (1)**
25:10
**series (5)**
114:19 165:9 170:10
222:14,15
**server (2)**
107:11 108:2
**sessions (1)**
229:17
**set (27)**
55:23 58:10 60:16
62:21 65:14 66:5,5
66:6 152:23 155:1
156:8 183:21
216:20 217:20
219:3,7 223:10,12
224:8,19 227:22
228:18,21 229:11
229:13 233:12,20
**setContext (1)**
64:18
**sets (3)**
61:18,19 62:18
**seven (2)**
20:22 231:22
**share (1)**
164:11
**Shawn (1)**
4:10
**sheet (6)**
154:11,15,17,19,22
154:23
**sheets (1)**
154:12
**Shen (2)**
96:7,14
**shifted (1)**
181:12
**shines (2)**
138:16,18
**shone (1)**
84:13
**Shores (1)**
3:16
**Shorthand (2)**
233:5,24
**show (14)**
18:10 129:17 158:22
170:3,13,17 176:12
176:14 177:23
204:2 211:4 227:5

230:2,25
**showed (2)**
122:16 194:16
**showing (5)**
83:24 115:23 177:7
225:7 227:25
**shown (32)**
99:25 113:24 115:11
115:20 164:16
165:2 171:22 172:8
179:2,16 200:20,22
205:22,24 206:1,3,4
206:6,11,15,18
207:25 208:1
209:13 212:18
225:7,15 226:22
227:17 228:1,14
230:23
**shows (23)**
86:4 96:21,22 115:17
116:2 138:11
165:22 176:12,21
181:12 192:10
194:12 222:14,14
222:15 226:14,22
228:3,24 229:7,20
231:2,11
**shrinkage (2)**
193:6 197:1
**shrinking (1)**
193:23
**shrinks (3)**
191:11 193:16 194:5
**shrunk (1)**
210:5
**sic (3)**
5:12 75:10 96:25
**side (2)**
195:1,8
**side-by-side (1)**
193:18
**sign (1)**
232:2
**signal (1)**
112:23
**signals (5)**
84:19 90:10 91:7
99:16 100:10
**signature (2)**
14:25 15:21
**Silicon (2)**
9:13,17
**similar (9)**
40:25 113:11 141:3

141:11,24 142:23
142:25 143:7
181:20
**similarly (1)**
133:22
**simple (2)**
115:7 127:16
**simply (7)**
152:15 153:15 175:7
175:13 195:16
207:21 209:12
**simultaneous (1)**
144:3
**simultaneously (1)**
12:5
**Singh (25)**
33:25 34:5,9,14 35:8
35:14,15,24 36:7,11
37:2,3 45:21 56:2,8
56:11 65:17 67:2
129:16 136:15,16
181:12 185:25
234:23 235:1
**Singh's (10)**
37:19 38:13 42:9
63:10,18 64:16,24
66:13,19 129:16
**single (22)**
27:21,24 43:9 48:25
86:7,22 87:3,12
109:4 117:10 124:1
130:21 132:12,13
132:14 136:18
143:20 168:18
174:9 176:4,5,15
**single-point (1)**
86:24
**Single-User (1)**
96:13
**sir (19)**
6:19 14:16 16:10 18:4
18:16 38:10 70:23
82:2 84:3 127:12
140:19 164:21
167:12 171:19
178:6 189:24 197:8
226:10 227:1
**sit (8)**
35:21 39:25 42:2 51:5
52:20 54:14 126:23
127:2
**sitting (55)**
29:18 31:25 35:13,25
36:19 41:4 47:16

Highly Confidential - Attorneys' Eyes Only

48:7 49:6,12,24
50:2 51:11 54:18
55:1,16 59:18 62:24
64:23 65:10,13 67:9
68:14 69:18 72:10
82:5,18 89:1,2 94:8
94:12,19 111:2
116:20 117:22
119:5 121:11
123:23 127:1
136:21 137:13
139:19 144:12
149:14 150:5 159:1
186:9,10 188:6
207:14,18 214:22
215:22 224:15,21
**situations (1)**
162:20
**size (2)**
121:21 209:16
**sized (1)**
223:11
**skill (4)**
145:15 146:8,25
148:2
**skip (2)**
34:23 35:4
**slide (4)**
188:22 194:16 195:24
214:23
**slides (1)**
188:21
**slightly (4)**
93:9 172:25 173:10
207:13
**small (5)**
86:17 87:6,10 155:10
217:20
**smaller (1)**
221:4
**SmartSkin (25)**
116:13 117:12,18
137:25 138:2,11,22
139:3,12,16,22
140:12,22 141:1,7,8
141:14,17,22
142:12,21 143:9,13
143:17 144:1
**SmartSkin's (1)**
138:9
**Softlayer (1)**
20:8
**software (19)**
24:23 25:21 26:23

32:2,3,13,15,17,23
33:5 91:8 96:23
99:6,13 135:20,22
136:14 190:22
207:15
**Solana (1)**
7:1
**somebody (1)**
192:13
**someplace (1)**
68:7
**somewhat (2)**
125:7 220:25
**Sony (5)**
117:11 140:12 142:11
199:15,23
**soon (1)**
205:17
**sooner (1)**
172:18
**sorry (32)**
16:1 17:25 20:23 24:5
36:13 45:24 51:14
51:16 63:13,14
67:15 84:25 86:14
96:3 97:12 114:10
117:1 129:10 138:7
140:3 142:3,8
156:15 161:15
162:16 163:24
188:12 189:22
204:15,17 214:25
221:16
**sort (10)**
7:18 19:17 40:6 41:25
98:18 153:20
157:15 169:2 194:6
205:3
**sound (1)**
187:13
**source (13)**
33:21 34:4 36:10 37:3
42:10 45:10 78:23
79:3 104:10 105:2,2
136:15 141:19
**Soverain (2)**
22:7,11
**space (20)**
38:21 150:23 151:10
152:4,4 153:2 154:4
154:9 157:9,13,18
166:5 176:24
217:22,24 218:10
218:14,15 219:19

225:10
**spaces (1)**
219:2
**spacing (1)**
159:16
**spanned (1)**
29:11
**spans (2)**
86:19 87:8
**speak (7)**
75:12,21 76:6,24 77:7
77:16,25
**speaks (10)**
67:4 78:25 97:19 99:1
114:4 130:5 165:5
165:17,25 193:10
**special (2)**
88:9 153:20
**specialist (1)**
5:17
**specially (1)**
111:23
**specific (16)**
8:2,8 41:1 71:8 82:9
92:16 102:2 110:22
117:25 118:18
120:7 132:23
155:22 173:11
174:11 184:21
**specifically (14)**
11:14 14:5 33:22 41:5
41:8 70:21 73:10
86:21 91:8 121:1
150:3 157:16 174:5
226:14
**specification (22)**
110:15,21 111:4,8,9
113:15,18 114:10
114:11,12 115:9
146:8 164:15,16,22
168:8 172:16 178:9
174:8,17 202:8,17
**specifications (1)**
176:18
**specify (2)**
86:20 87:9
**speculation (26)**
8:15,18 11:19 49:21
60:5,12 65:2 68:3
68:22 80:12 85:3,14
91:16 119:14
121:10 136:6
137:11 138:25
169:1 190:6 191:25

192:25 194:2,19
196:8 224:14
**speech (10)**
96:13 98:10,12 99:5
99:18,19 100:4,4,10
100:11
**speed (3)**
138:22 143:9 144:5
**spell (1)**
6:21
**Spelling (1)**
6:23
**Spencer (1)**
20:12
**spend (1)**
67:13
**spending (1)**
101:17
**spent (2)**
68:18 94:22
**spill (1)**
44:21
**spoken (1)**
97:21
**spot (6)**
191:9,11,17,22
193:15,25
**spread (2)**
122:13,18
**spreadsheets (1)**
218:21
**spring (1)**
80:9
**squares (1)**
214:7
**squeeze (1)**
221:2
**ss (1)**
233:2
**standard (1)**
146:12
**standards (1)**
147:5
**standing (5)**
81:9,17 82:7 92:4
94:3
**start (10)**
5:6 12:4,6,17 28:7
53:3 71:24 81:12
171:15 182:25
**started (2)**
9:9 14:6
**starting (7)**
36:25 65:4,4 116:2

151:7 202:13
205:13
**starts (8)**
19:4 33:2 38:5 58:20
63:9,11 70:11 151:2
**state (5)**
6:21 24:24 67:7 233:2
233:9
**statement (6)**
38:19 43:8 54:2 61:4
117:15 219:9
**statements (1)**
79:20
**States (2)**
1:1 5:10
**stay (1)**
156:15
**step (8)**
10:11 57:4 124:11
137:16 169:5,12,16
225:20
**Stephen (20)**
1:17 2:4 6:15 14:23
15:18 50:13,16
106:8,11 169:19,23
232:8,14 233:11
234:3,9,15,18 236:3
236:23
**stepping (1)**
125:16
**steps (3)**
10:2 11:23 48:19,20
133:25 134:4,16
136:22,23 169:4
183:3 184:8 226:14
**Steven (3)**
5:7 6:23 14:15
**stick (2)**
156:16 182:25
**Sticking (1)**
156:20
**stipulation (1)**
16:19
**stop (3)**
167:16 176:13 177:17
**stopped (1)**
177:22
**storage (9)**
103:9 107:20 108:4
108:10,23 109:3,6
110:5 112:10
**store (5)**
112:10 141:2,21,22
142:24

TSG Reporting - Worldwide    877-702-9580

**stored (4)**
111:25 143:4 149:10
149:18
**storing (1)**
108:4
**straight (1)**
219:24
**Street (2)**
3:5 4:4
**structure (32)**
90:25 113:25 141:3
141:11,25 142:23
142:25 143:7
150:24,24 151:11
151:18 152:6,10
153:8 174:17
203:16,17,19
219:25 220:6,14
221:13,20,23 222:2
222:5,6,9,19 223:23
224:7
**structured (102)**
150:15,18,22 151:8
151:20 152:2
156:17 157:1,22
158:2,21 159:4
160:13,20,24,25
161:5,12,21 162:3,7
162:13,14,22 165:2
165:8 169:13 175:4
175:8,16,17,22,24
176:9 183:7,14,23
184:4 185:6,12
186:3 191:19,21
192:3,5,14 194:8
200:18,19,21 201:6
201:8,9,12,16,19,20
202:11,21 203:14
203:21 205:5,24
206:3,5,6,18,19
207:3,6,19 208:17
209:7 210:12 213:3
213:7 214:6 215:13
215:18,24 218:3,14
219:14,20,20 220:2
220:5,23 223:25,25
225:2 227:6,16,20
228:3,20 229:13
**study (1)**
144:7
**studying (3)**
23:20,21 101:17
**style (7)**

154:11,12,15,17,19
154:22,22
**stylus (1)**
231:20
**subject (7)**
10:9 13:16 14:2,4
33:17 84:1 184:20
**subjects (1)**
7:13
**submission (4)**
126:6,15 127:3 129:2
**submit (1)**
189:1
**submitted (7)**
15:1,25 17:2 125:19
125:21,23 197:19
**Subscribed (1)**
232:17
**subsectors (1)**
219:5
**subsequent (2)**
140:25 223:21
**subset (1)**
211:10
**substantial (1)**
183:13
**substantially (45)**
169:14 179:19 180:23
180:24,25 181:6,22
182:6,14,21 184:6
184:15 185:7,13,20
185:22 186:4,22
187:3,6,8,9,11,11
187:18,23 188:5,7,7
188:9 195:6,11
204:8,12,24 205:6
213:8 225:3 227:7
227:11 229:21,23
230:11,19 231:7
**substituting (2)**
213:21,24
**sub-pixel (1)**
221:6
**sufficient (3)**
42:3 61:1,12
**suggest (1)**
202:8
**suggested (1)**
9:16
**suggesting (1)**
40:20
**suggests (2)**
87:18 202:10
**suitable (1)**

10:8
**SULLIVAN (3)**
3:14,21 4:3
**supplement (5)**
167:23 195:25 196:12
196:16 197:16
**supplementation (3)**
196:4,22,23
**supplementing (1)**
196:10
**supplied (1)**
198:9
**support (13)**
19:2,5,12 75:23 111:9
113:15,19 116:7
134:24 181:11
201:17,23 203:23
**supported (3)**
62:16 191:7 193:7
**supports (4)**
110:15 111:4 183:15
230:17
**suppose (6)**
91:3 93:14 116:21
120:22 176:6
219:25
**sure (46)**
9:8 10:1 11:13 19:15
26:9 27:8 39:22
40:8 43:23 44:20
46:14 48:13 50:10
52:15 53:21,22
54:23 56:4,19,21
58:3 59:4 80:19
82:3 89:20 95:7
97:13 101:6,8
108:12 121:16
123:23 148:15,17
159:9,11 180:25
185:2 189:15
196:16,20 198:2
203:18 207:14
220:19 224:20
**surface (10)**
104:1,11,11,13,14,14
105:3 138:23
143:10,14 217:20
**surprise (1)**
124:17
**surround (2)**
152:9 225:19
**surrounding (2)**
204:13,22
**surrounds (3)**

152:23 153:7,15
**swear (1)**
6:13
**sworn (3)**
6:16 232:17 233:13
**system (96)**
26:3,18 27:14 28:2,14
29:11 53:7,25 72:1
74:15 84:6,17,17,21
87:17 89:8,12,14,22
90:11,15,21,24
91:17 92:24 93:13
93:20 97:17 98:2,5
98:20,23 99:12
100:17,19,23
103:12,23 104:1,13
105:8,13 106:1,16
106:18 107:4,13,24
107:24 108:2,3,8,16
109:8,12,12,15,18
109:19 110:3,6,8,10
110:11 111:6 112:9
112:13,14,21,23
113:1,2,8 114:15,22
114:23 117:9,11
138:15,22 140:12
140:22 141:1,14,22
168:23 173:22
179:18 199:10
203:22 209:8 211:3
213:11,15 216:20
235:6
**systems (20)**
26:6,17 27:4 30:9,9
30:10,10,12,13,15
30:15,21,21 53:7
88:17 112:17,18
115:6,6 116:13
**S-T-E-P-H-E-N (1)**
6:24
**S1 (8)**
189:20 190:13 191:10
193:5,14,19,22
194:4

_____
**T**

**T (4)**
1:14,15,15 4:1
**tab (4)**
181:25 182:1,12,19
**table (21)**
72:1 83:25 84:7,7,12
84:13,18,20 90:11
96:22 97:15,22,23

98:3 99:15 104:12
138:10 203:8,10,13
235:6
**tables (2)**
138:14 203:19
**tablet (3)**
114:3 119:25 120:16
**tabletop (12)**
89:3 91:1 96:14 98:2
99:4 101:20,22
102:5,10 104:8
138:9,16
**tablets (2)**
120:13 121:6
**tag (18)**
152:22 153:4,5,6,14
153:15,15,20
154:14 155:16,17
155:21 156:4
157:20,20,20 158:5
159:3
**tags (26)**
152:5,8,12,14,14,15
152:17,19 153:21
153:22 154:1,5,7,12
155:7,12,14,20
156:4,7,8,11 157:20
158:1,8,9
**take (17)**
15:11 36:9 46:16 48:1
50:8 83:4 124:4
138:20 148:13
156:6 160:4 168:2
172:15 176:17
202:6 205:16
210:17
**taken (20)**
22:22,24 23:1 29:24
30:2,3 46:7 47:12
50:14 57:25 79:12
83:8 91:7 106:9
124:7 148:20
169:21 189:9
210:23 228:2
**takes (8)**
37:11 47:19 48:3
57:19 60:22 100:10
195:10 217:18
**talk (4)**
162:16 163:14 193:8
223:15
**talked (10)**
46:2 87:22 91:21
97:15,17 137:17,21

Highly Confidential - Attorneys' Eyes Only

155:9 159:12,12
**talking (27)**
29:11 42:9 64:18 73:2
   73:3 97:8 98:1
   112:2 147:10
   165:13 170:12
   172:7,25 173:2
   176:3 177:12
   178:18 182:16
   183:4 186:7 192:19
   193:14,22 194:6
   196:10,18 203:11
**talks (7)**
99:3 116:4 154:15
   174:1,12 182:15
   218:5
**tap (22)**
132:4,4,12,13,15
   186:19,22 187:21
   188:11 191:22
   192:14,18 194:17
   195:4,16,21 196:18
   226:1 230:7,7,8
   231:6
**tape (3)**
5:6 106:3 169:17
**tapped (3)**
192:9,10 193:25
**tapping (6)**
193:23 194:4,7 211:5
   213:10 216:18
**taps (1)**
194:9
**tap-to-scroll (3)**
186:13 187:17 188:13
**tap-to-zoom (2)**
188:5,12
**taught (5)**
30:3,5,7,22 31:1
**teach (1)**
146:8
**team (3)**
190:17,18,22
**Technical (3)**
76:17 82:14 96:7
**technique (1)**
219:13
**techniques (7)**
217:21 218:12 219:10
   220:13 223:16
   229:8,10
**technologies (1)**
9:19
**Technology (3)**

75:10 83:17 235:9
**technology-related ...**
7:13
**TELECOMMUNI...**
1:9
**telephone (1)**
112:12
**tell (14)**
9:15 15:12 19:25 20:2
   27:11 33:20 34:21
   36:9 40:15 63:14
   102:21,25 121:12
   228:18
**telling (1)**
42:2
**tells (1)**
152:22
**term (17)**
24:2,8,11 25:10 40:9
   98:23 102:11 104:5
   105:7,9 107:1,15
   133:21,21 146:23
   151:20 187:12
**termed (2)**
121:25 122:5
**terms (3)**
7:16 68:18 98:18
**test (7)**
43:11,17 45:11
   120:19 123:21
   125:23 186:13
**tested (18)**
121:1,6 123:16,21
   125:4,22 126:8,10
   126:20,21 127:13
   129:4 181:18,25
   182:2 185:24
   186:11 187:21
**testified (4)**
6:16 29:13 125:25
   184:18
**testify (4)**
10:20 20:6 65:16
   201:5
**testifying (4)**
12:25 13:19 21:6
   139:21
**testimony (15)**
19:13,15,16,21 51:3,6
   65:19,23 94:16
   105:19 106:17
   117:23 201:7,10
   233:14
**testing (25)**

124:4,20 125:7,18,20
   126:1,2,5,6,13,14
   126:15,15 127:4,5
   127:10 128:3,6,9,20
   128:23,24 129:6
   186:7,10
**tests (5)**
43:20,20 44:10,11
   127:17
**text (20)**
37:24 80:25 83:25
   100:2 153:21 155:6
   155:15,21 157:2,9
   157:10 189:8 191:6
   192:8 195:7 210:4
   218:21 224:4
   227:18 230:17
**textual (1)**
69:11
**thank (13)**
6:9 38:16,17 55:24
   97:3 111:18 156:16
   167:25 178:3
   184:24 198:22
   231:24 232:6
**Thanks (1)**
38:14
**theater (1)**
104:18
**thereon (1)**
223:6
**thing (11)**
19:17 31:8 43:3 51:19
   78:16 79:19 97:5
   165:14 169:8 206:4
   209:16
**things (13)**
39:16 51:1 79:15 91:9
   95:8 99:8 105:17
   137:3 157:2 164:13
   172:1,2 202:7
**think (145)**
7:18 8:6 9:9 12:7,15
   13:12,18 15:14 16:4
   16:5 17:1 18:7,20
   19:9 20:22,23 22:4
   28:14 30:8 33:9,25
   36:22 37:10 40:15
   41:24 44:7 53:22
   54:3,4 55:8 56:19
   59:5,5 65:7,19,25
   66:17,20 68:23
   73:17,22,24 86:5
   87:22 89:7 90:7

91:5,19 95:1,6 97:2
99:9,14,21,24 101:3
   105:4 106:3,21
   113:15,17 114:6,25
   116:18,19 117:2
   121:15 122:1,6
   123:21 127:5
   131:23 132:19
   136:8 139:1,2,6
   147:11 150:3,7
   152:21 157:12
   158:15 160:1,18
   162:5 163:14 167:4
   167:25,25 168:7,7,9
   170:6,25 172:21
   173:12 176:20
   179:24 180:14
   182:1,11,16,19
   183:11,18 187:2,12
   189:17 190:20
   192:3,12,16,19,21
   192:22 193:1,1
   197:19 198:1
   199:13,20,20,21,22
   199:22,24 205:10
   205:12 214:21,24
   214:24 215:24
   216:20 219:18
   220:19,24 222:15
   223:15 224:3 225:6
   228:9 229:25 230:1
   231:23
**third (4)**
5:18 76:9 130:18
   166:9
**thoroughly (1)**
125:22
**thought (7)**
40:18 86:14 114:9
   117:4 119:16
   128:18 206:9
**thread (1)**
45:25
**three (7)**
22:2,3,5 23:9 197:21
   224:4,6
**three-finger (4)**
118:7,22 120:12
   121:19
**throw (1)**
74:22
**thumbed (3)**
36:12 70:15,18
**tile (4)**

208:3,10,13 209:13
**tiles (11)**
201:11,14 204:3,3
   206:20 207:3 211:5
   212:4,5,6,7
**time (32)**
12:8 14:10 16:20
   23:23 29:20 43:5
   50:11,16,25 51:9
   67:19 68:18 69:25
   83:6,9 94:23 106:6
   106:11 148:14,18
   148:23 168:3
   169:19,23 172:16
   176:17 177:25
   198:13 210:21,24
   228:16 232:9
**times (8)**
26:21 33:6 69:15 90:2
   128:18 144:15
   154:19 204:19
**title (1)**
76:12
**titled (17)**
96:12 234:15,17,20
   234:22,23 235:1,3,5
   235:7,9,11,13,15,18
   235:20,21
**today (39)**
39:25 41:4 42:2 51:5
   51:11 52:20 54:7,14
   54:17,18,21 55:1,14
   55:16 64:23 65:13
   65:16 72:9,10,12
   82:5 94:8,12,19
   111:3 117:22 119:5
   121:11 126:23
   127:1,2 139:21
   149:15 182:2 186:9
   186:10 188:6
   207:14,18
**today's (1)**
232:8
**told (4)**
9:17 16:17 17:8 26:21
**top (9)**
33:1,3 47:24 84:8
   96:18 103:22
   118:16,17 218:18
**top-level (1)**
154:15
**total (2)**
126:12 127:15
**touch (59)**

Highly Confidential - Attorneys' Eyes Only

25:13 26:7 27:13,21
27:25 28:5,8,12
29:16,16 45:6,7
46:3,3 48:2,15
64:13 83:16 86:8
87:17 90:25 97:16
98:21,22 99:11
100:19,21 104:12
104:14 113:10,10
114:1 120:1,4,16
123:2 124:6 127:8
129:22 130:10
149:8 150:15
160:13,25 162:13
166:25 168:5
169:15 174:9,9
175:4 177:7 184:6
184:16 185:22
186:2 225:3 227:15
231:20
**touched (3)**
167:21 175:14 179:18
**touches (7)**
43:15 84:11 86:23
87:12 90:16 97:22
120:12
**touching (12)**
63:24 64:13 84:19
102:9 123:6 131:5
131:22,25 143:14
171:22,23 179:16
**touch-sensitive (51)**
25:13,17,24 26:2,4,6
26:7,10,11,12,21
27:6,12,17,19 28:18
28:20,24,24 29:5,21
84:18 103:11,25
104:1,5,15,15
106:15 107:2,7,23
107:25 108:7,15
109:7,10,14 110:2,7
116:11 117:8
130:22,23 138:10
138:14,19 143:20
143:22 149:17
185:8
**trace (2)**
44:9 63:3
**track (1)**
63:14
**traditional (4)**
98:13,23 100:6,21
**training (1)**
23:6

**transceiver (3)**
112:11,12,22
**transcription (1)**
236:6
**transformed (3)**
98:13 100:5,21
**transition (3)**
191:7 204:2 205:21
**translate (6)**
169:13 180:9,21
181:5 193:24 213:2
**translated (12)**
98:22 168:24 184:5
185:21 187:24
189:7 205:23
207:10,22 225:9
227:10 235:17
**translates (2)**
191:23 212:23
**translating (18)**
181:21 185:6,12
186:3 192:23 193:2
193:3 204:7 205:5
206:17 213:7,12,20
215:13,18,23 225:2
227:7
**translation (14)**
188:20,24 189:1,2,4,8
189:14,16,18,19
190:21 214:6
222:25 223:22
**translations (1)**
198:2
**transmitted (1)**
84:11
**transmitting (1)**
96:24
**transpired (2)**
11:15 122:1
**Trask (1)**
20:12
**traverse (1)**
202:19
**traversing (2)**
202:24 203:2
**tree (8)**
202:14,15,16,17,22
202:24 203:2,20
**trial (5)**
19:16,18,19,22 54:16
**tributary (1)**
95:3
**tried (2)**
106:21 125:2

**true (8)**
46:16 53:9 113:23
115:9 139:3 199:25
210:2 233:14
**trump (2)**
61:3,14
**truthful (1)**
147:22
**try (12)**
20:2 61:8 108:13
116:21 124:21
159:10 178:9
184:24 187:13
194:23 206:10
221:2
**trying (15)**
21:3,4 34:10 82:24
86:19 87:8 122:9
126:9,22 127:25
150:3 164:6 173:12
189:17 212:2
**TR2002-48 (4)**
75:25 82:14,21,24
**TR2003-125 (4)**
82:6 83:21 85:5 88:23
**TR2005-130 (1)**
76:17
**TR48 (1)**
75:24
**Tse (4)**
76:21 78:8 96:7,14
**TSG (2)**
5:17,20
**turn (9)**
18:25 54:12 55:25
56:7 97:7 146:12
171:11 191:2 197:5
**Turning (1)**
223:3
**twice (1)**
127:7
**Twin (1)**
3:15
**two (57)**
11:9,12 25:11 32:1,9
33:8 35:12 41:8
42:17 43:10 44:9
46:6 51:22 54:8,10
54:11 63:24 64:12
79:14,21 86:8,16
87:5,12,18 97:9
101:18,19 102:3,5
104:20 105:17
122:22 123:24

125:17 130:22
131:1,11,15 138:3
143:21 144:2
150:23 152:14
157:9 159:16 172:1
172:2,21,23 174:9
177:8 192:18
193:18 200:24,25
202:7
**two-dimensional (1)**
151:10
**two-finger (5)**
85:21 118:6,21
120:12 121:19
**two-point (1)**
87:23
**type (6)**
38:5,5 122:7 151:9
218:19 229:2
**types (5)**
23:5 112:16 219:2
223:4 228:25
**typical (1)**
88:17
**typically (1)**
41:10
**typo (1)**
16:18

_____
**          U          **

**UI (1)**
98:11
**ultimately (6)**
48:3,13 57:25 60:9
134:18,19
**Um (2)**
117:5 165:4
**unable (3)**
82:18,23 119:5
**unaware (9)**
50:2,5 51:11 55:1
196:11,12,14
197:23 198:11
**uncertain (2)**
41:21,23
**uncertainty (1)**
58:25
**unclear (1)**
197:2
**underlies (5)**
208:17 228:20,20
229:12,13
**underlying (21)**
158:21 218:13 220:6

220:14 221:10,13
221:20,23 222:2,4,6
222:9,9,13 223:14
223:18,23 224:11
227:9 228:25
229:18
**understand (21)**
17:7 97:1,13,25 98:1
100:8 102:11
146:14,21 156:22
157:13 165:12
178:15 187:14
190:1,16 191:16
193:17 198:13
221:8 226:20
**understanding (30)**
12:9 13:3 14:7 35:13
36:19 40:10 61:17
98:4 105:6 109:25
121:5 134:22 145:9
145:24 146:2,2
147:14 149:15
157:10 164:7,12,21
164:22 172:5 180:6
190:7 197:14,25
198:8 228:23
**understandings (3)**
69:12 147:6 159:13
**understands (1)**
100:24
**understood (7)**
61:20 99:10 108:12
151:6,8 152:25
198:13
**undertook (1)**
196:13
**undue (3)**
146:10 147:1 148:3
**United (2)**
1:1 5:10
**universe (1)**
126:22
**UNIX (1)**
21:22
**unlimited (3)**
220:20,21,22
**unpatentable (1)**
146:7
**update (1)**
54:5
**updated (1)**
18:19
**upper (9)**
86:4 208:2,9 209:2,3

86:4 208:2,9 209:2
209:3,4,21,23
214:10
**URQUHART (3)**
3:14,21 4:3
**usage (6)**
218:10,13 219:19
222:12 223:14,19
**use (22)**
23:6 62:8,15 86:7
90:20,24 98:9,18
100:3 105:9,25
110:1 133:21 144:2
146:9,25 149:5
194:23 218:19
221:10 224:11,11
**useful (3)**
86:17 87:6 108:24
**user (58)**
25:17,25 26:2,4,15,16
26:17,18,21 27:2,13
27:15,16,25 28:10
28:11,13 29:5,10
33:18 37:4,9,20
38:6,19,21 65:5
75:10 85:6 86:8,18
86:19 87:7,8,12
89:1,2 90:21 98:14
100:6 103:10 113:8
115:4 130:8 140:24
140:24 141:2
142:24 144:2
155:23 200:22
211:5 220:25 222:5
224:17 225:9
228:24 229:3
**users (5)**
84:9,19 88:11,19
97:23
**user's (1)**
224:10
**user-imposed (2)**
229:11,17
**uses (4)**
172:13 217:20 220:12
222:23
**utilized (2)**
29:5 219:11
**U.S (6)**
20:9 234:16,19,24
235:12,16
**U.S.C (1)**
71:5

**V**
**v (14)**
9:1,12 10:4 20:7,8,9,9
20:10,10,11 32:22
33:7,14 236:1
**vague (84)**
24:4 25:5,15 27:7,22
28:9 29:1,17 37:22
38:15 40:4 41:3
43:1 44:3 45:8
46:20 48:5 56:17
57:6,22 59:12 60:4
60:11 61:5,15 62:2
62:12,23 64:4 65:1
72:16 81:20 82:17
84:14 91:2 92:14
102:13 109:13
118:25 121:22
131:7 134:5,20
135:10,14 143:24
149:25 153:25
155:24 167:2 170:5
171:25 173:25
174:22 175:10
181:8 183:10 184:9
185:15 186:5,25
188:1 194:18
200:13 202:4 205:8
206:8,22 207:11
211:25 212:11
213:13,23 217:16
218:4,24 221:14
222:7 224:2 225:5
226:17 227:12,23
229:4
**vaguely (1)**
133:2
**validity (3)**
14:8,8 50:21
**Valley (2)**
9:13,17
**value (6)**
45:17 47:18 57:10,11
57:14,23
**variable (1)**
43:13
**variance (1)**
23:21
**varied (2)**
123:9,9
**variety (19)**
7:13 58:2 114:13,17
116:5 156:12 157:2
186:8 217:21 218:7

218:12 219:2,6,10
220:13 223:16
225:19 228:11
229:10
**various (8)**
14:19 27:25 69:14,14
71:23 115:20 152:5
202:15
**vast (2)**
35:11 36:2
**Ventures (1)**
20:12
**version (4)**
185:1,3 189:7 197:12
**versions (5)**
23:16,17,25 199:13
199:14
**versus (9)**
5:8 8:25 22:7 33:4
45:7 68:19 87:18
124:1 157:20
**vibrant (2)**
39:13 40:25
**Victoria (2)**
3:17 5:25
**video (10)**
5:16 77:13,14,14,22
77:23 78:8 112:8
177:23 181:11
**videographer (21)**
4:10 5:6 6:10 50:11
50:15 70:4 83:6,9
95:22 106:6,10
140:9 148:18,23
169:18,22 188:16
210:21,24 217:1
232:7
**videos (6)**
74:13 124:4,7 181:14
181:15 199:18
**videotaped (3)**
1:17 2:4 5:7
**view (86)**
71:6 81:9 85:7 104:20
108:17 109:10
129:4 135:12
157:12,13 160:4
162:23 200:6,11,12
200:15,15,18 201:1
201:5,8,11,14 204:2
204:3,11,13,16,18
204:19,20,22,23,23
204:25 205:1,22,22
205:25 206:2,3,6,12

206:15,19 207:2,2,5
207:6,8,20,22,25
208:1,9,20 209:3,14
209:22,24 210:11
210:11 212:23,25
213:9,14,15,22
214:3,17,18,24
215:3,5 216:1,2,3,4
216:5,6,11,21,22,23
219:4 222:25
**viewable (2)**
218:23 219:4
**viewed (1)**
93:20
**viewing (1)**
88:13
**views (2)**
64:19 219:5
**virtual (2)**
88:8 177:10
**virtually (1)**
65:22
**visible (8)**
155:21,23 156:2,10
157:3 158:19,23
160:5
**visibly (8)**
157:5 159:6,14,15,20
160:3 161:7 162:24
**vividly (2)**
11:22 13:11
**voice (1)**
112:22
**VOLUME (2)**
234:3,9
**vs (2)**
1:6 234:10
**V1 (1)**
153:3

**W**
**W (2)**
176:25 177:3
**walk (3)**
178:9 226:15 228:15
**Waltrip (1)**
20:11
**want (29)**
15:15 20:1 36:15 44:7
45:14 50:8 54:23
63:15 71:24 73:24
79:14 81:5,15 82:3
85:19 91:22 96:16
106:14 127:11

139:7 146:11,11
152:12 162:9
178:11,12 184:22
187:13 196:17
**wanted (6)**
79:19 95:15 97:5
162:10 163:25
221:11
**Warcraft (2)**
97:10,15
**warning (1)**
11:3
**wasn't (7)**
12:11 22:3 41:1 93:23
116:25 125:10
158:16
**waste (1)**
16:19
**way (45)**
23:17 36:15 37:20
39:9 41:13 49:16
50:1 54:2 83:21
84:6,16 86:9 87:4
89:10,11,17,22
91:12 92:7,7 93:5
95:18 102:21,25
105:4,21 107:9
115:5 117:21 124:9
131:9 133:22
153:22 154:3
156:24 159:7 174:5
180:25 183:22
193:18 214:20
216:20 220:5
221:19 233:18
**ways (8)**
47:3 91:9,13,19
114:13 156:12
221:25 228:11
**Web (12)**
62:1,9 151:19,24
152:1,3 153:23
154:4 156:21 159:6
159:22 218:21
**WebView (6)**
42:11 62:3,16 64:6,7
64:19
**WebView's (1)**
56:12
**weeks (1)**
197:21
**went (2)**
124:20,24
**weren't (2)**

Highly Confidential - Attorneys' Eyes Only

**we'll (4)**
181:1 232:2,3,4
**we're (26)**
37:7 55:23 61:25 83:7
83:10 84:2 101:5
106:3,8 112:2
116:18 117:6
148:19,24 169:20
174:8 178:18
182:16 187:3
203:11 210:22,25
222:22 231:22,23
232:9
**we've (17)**
14:14 18:11 36:6 50:7
55:7 74:6 83:3,14
91:21 97:15 155:8
159:12 183:3
188:19 197:11
199:2 205:14
**whereof (1)**
233:20
**white (4)**
157:9,13,17 166:5
**widget (1)**
100:2
**width (1)**
182:15
**willing (1)**
110:24
**Windows (1)**
215:9
**wireless (8)**
112:19,20 113:4,6
115:10,17,18 116:3
**wiring (1)**
88:15
**witness (227)**
6:14,15 8:16,24 9:13
9:17,24 11:20 12:15
13:19,24 19:21 21:8
21:18 23:14 24:5,11
25:6,16 26:15 27:2
27:8,23 28:10 29:2
29:18 34:10,22
37:23 38:16 39:7
40:6 41:4,21 43:2,8
44:4,25 45:9,24
46:10,22 47:16 48:7
49:5,24 56:18 57:8
57:23 59:14 60:13
61:7,17 62:3,13,24
64:5 65:3,24,25
66:17 67:6 68:4,23

72:17 73:1 75:23
76:8 77:1,9,18 78:2
79:2,14 80:13 81:21
82:18 84:15 85:4,24
87:2 88:6 89:7 91:3
91:17 92:15 94:7,17
97:21 99:3 101:2
102:15 103:16
104:8,24 105:20
106:5,21 107:7,19
107:22 108:20
109:3,14 110:20
114:6,9 115:14
116:18 117:2,15,25
119:2,15,20 121:11
121:23 127:20
129:10 130:6,16
131:9 132:12 134:7
134:21 135:16
136:8 137:13 138:6
139:1 142:8 143:25
145:19 147:4,23
149:14 150:1 151:4
154:1 158:1 159:1
160:1,17 161:4,15
161:24 163:4 164:9
164:19 165:7,16,18
166:2 167:3,11,25
168:4 169:2 170:6
170:22 171:7 172:1
172:17,20 174:1,23
176:19 177:14,17
179:5,24 180:12
181:9,24 183:11
184:10 185:16
186:6 187:1 188:3
190:7,20 192:1
193:1,12 194:3,20
196:9 198:8 200:14
202:6 205:10,16
206:9 207:12 209:1
209:20 210:9,20
212:2 213:14,24
214:20 215:17,21
217:18 218:5,25
219:18 221:15
222:8 224:3,15
225:6 226:19 227:2
227:13 229:6,25
230:14 231:9 232:1
233:11,15,20 234:3
236:3
**wondering (1)**
59:20

**word (8)**
27:9 59:19 65:25 66:1
130:2 215:9,10
216:15
**words (8)**
105:25 108:6 143:3
157:4 163:13
170:13 179:11
198:9
**work (18)**
13:3,6 20:24,25 21:2
22:7,8,10 28:22,23
29:14,15,21 88:8
101:8 197:25 198:3
219:23
**worked (12)**
21:9 25:16 26:13
27:20 29:4 31:17,18
67:19,21,25 68:6
84:7
**working (8)**
9:24 12:4,6,18 13:9
14:7 67:14 215:8
**works (4)**
83:25 99:22 217:15
227:18
**world (36)**
97:10,14 200:6,12,15
200:18 201:1,5,8,11
204:2,11,13,18,19
204:20,22,25
205:22,25 206:3,6
206:12 207:2,5,8,20
207:25 208:9
209:14,22 210:11
215:5 216:5,6,21
**worthwhile (2)**
110:21 120:10
**wouldn't (4)**
42:4 74:24 94:21
109:5
**write (2)**
45:1 69:9
**writeup (2)**
38:2,4
**written (9)**
23:17 24:14 31:4,9
32:8,11,11,14
145:24
**wrong (4)**
52:14 134:23 142:7,8
**wrote (5)**
50:25 69:6,7,7,7

**X**

**Xerox (7)**
27:4,11,20 29:14
30:16,19,21
**XNav (6)**
199:9,18,22 200:1,4,8

**Y**

**Y (4)**
1:14,15,15,15
**Yasihuro (4)**
144:15,17,20,23
**yeah (21)**
12:8 17:24 18:7 24:8
37:6 61:10 68:14
88:6 93:14 103:23
120:24 130:16
134:7 138:9 160:19
161:17 164:10
170:23 199:21
201:23 202:13
**year (2)**
18:20 22:1
**years (12)**
7:16 8:5,6,11,11,17
8:17 22:2,3,5 53:6
53:24
**yell (1)**
127:20
**yelling (1)**
127:22
**yield (8)**
45:15 48:14,16,17
60:22 131:12 158:2
159:3
**yielded (1)**
126:16
**yields (4)**
45:13 48:25 58:7
216:9
**Yorg (2)**
7:5,8
**York (5)**
1:8 3:23,23 5:18,18

**Z**

**zone (23)**
204:3,15,23,23 205:1
205:22 206:2,15
207:1,6,22 208:1,19
209:3,24 210:11
212:23 213:9,15
214:18 215:6 216:4
216:22

**zoom (17)**
63:22 122:4,9 132:5
132:12,15,20
192:15,18 194:13
195:4,18 196:18
225:24 230:7,7,7
**zoomed (2)**
194:22 223:9
**zooming (4)**
54:1 64:12 85:8 133:5

**$**

**$370 (1)**
68:17

**0**

**00203880 (1)**
188:22
**08:56:57 (1)**
5:10
**08:57:19 (1)**
5:15
**08:57:38 (1)**
5:20
**08:57:51 (1)**
5:25
**08:57:52 (1)**
6:1
**08:58:04 (1)**
6:5
**08:58:19 (1)**
6:10
**08:58:31 (1)**
6:15
**08:58:42 (1)**
6:20
**08:58:53 (1)**
6:25
**08:58:55 (1)**
7:1
**08:59:05 (1)**
7:5
**08:59:22 (1)**
7:10
**08:59:42 (1)**
7:15
**08:59:55 (1)**
7:20
**09:00:06 (1)**
7:25
**09:00:10 (1)**
8:1
**09:00:23 (1)**
8:5

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| **09:00:39 (1)** 8:10 | **09:06:36 (1)** 12:25 | **09:13:06 (1)** 17:10 | **09:22:18 (1)** 21:25 | **09:28:34 (1)** 26:10 |
| **09:00:51 (1)** 8:15 | **09:06:39 (1)** 13:1 | **09:13:24 (1)** 17:15 | **09:22:21 (1)** 22:1 | **09:28:52 (1)** 26:15 |
| **09:01:11 (1)** 8:20 | **09:06:52 (1)** 13:5 | **09:13:52 (1)** 17:20 | **09:22:33 (1)** 22:5 | **09:29:06 (1)** 26:20 |
| **09:01:25 (1)** 8:25 | **09:07:12 (1)** 13:10 | **09:14:38 (1)** 17:25 | **09:22:48 (1)** 22:10 | **09:29:17 (1)** 26:25 |
| **09:01:29 (1)** 9:1 | **09:07:40 (1)** 13:15 | **09:14:40 (1)** 18:1 | **09:23:09 (1)** 22:15 | **09:29:18 (1)** 27:1 |
| **09:01:37 (1)** 9:5 | **09:07:50 (1)** 13:20 | **09:14:52 (1)** 18:5 | **09:23:19 (1)** 22:20 | **09:29:35 (1)** 27:5 |
| **09:02:00 (1)** 9:10 | **09:08:04 (1)** 13:25 | **09:15:25 (1)** 18:10 | **09:23:40 (1)** 22:25 | **09:29:47 (1)** 27:10 |
| **09:02:31 (1)** 9:15 | **09:08:06 (1)** 14:1 | **09:15:48 (1)** 18:15 | **09:23:42 (1)** 23:1 | **09:30:01 (1)** 27:15 |
| **09:02:55 (1)** 9:20 | **09:08:13 (1)** 14:5 | **09:16:26 (1)** 18:20 | **09:23:51 (1)** 23:5 | **09:30:28 (1)** 27:20 |
| **09:03:12 (1)** 9:25 | **09:08:35 (1)** 14:10 | **09:16:45 (1)** 18:25 | **09:24:13 (1)** 23:10 | **09:30:53 (1)** 27:25 |
| **09:03:21 (1)** 10:1 | **09:09:03 (1)** 14:15 | **09:16:53 (1)** 19:1 | **09:24:24 (1)** 23:15 | **09:30:59 (1)** 28:1 |
| **09:03:33 (1)** 10:5 | **09:09:22 (1)** 14:20 | **09:17:13 (1)** 19:5 | **09:24:39 (1)** 23:20 | **09:31:07 (1)** 28:5 |
| **09:03:57 (1)** 10:10 | **09:09:52 (1)** 14:25 | **09:17:30 (1)** 19:10 | **09:24:54 (1)** 23:25 | **09:31:26 (1)** 28:10 |
| **09:04:10 (1)** 10:15 | **09:09:57 (1)** 15:1 | **09:17:43 (1)** 19:15 | **09:24:59 (1)** 24:1 | **09:31:49 (1)** 28:15 |
| **09:04:19 (1)** 10:20 | **09:10:13 (1)** 15:5 | **09:17:52 (1)** 19:20 | **09:25:12 (1)** 24:5 | **09:32:10 (1)** 28:20 |
| **09:04:27 (1)** 10:25 | **09:10:27 (1)** 15:10 | **09:18:09 (1)** 19:25 | **09:25:19 (1)** 24:10 | **09:32:27 (1)** 28:25 |
| **09:04:30 (1)** 11:1 | **09:10:41 (1)** 15:15 | **09:18:16 (1)** 20:1 | **09:25:39 (1)** 24:15 | **09:32:38 (1)** 29:1 |
| **09:04:37 (1)** 11:5 | **09:10:59 (1)** 15:20 | **09:18:25 (1)** 20:5 | **09:25:51 (1)** 24:20 | **09:32:48 (1)** 29:5 |
| **09:04:50 (1)** 11:10 | **09:11:15 (1)** 15:25 | **09:19:13 (1)** 20:10 | **09:26:10 (1)** 24:25 | **09:33:01 (1)** 29:10 |
| **09:05:03 (1)** 11:15 | **09:11:16 (1)** 16:1 | **09:19:58 (1)** 20:15 | **09:26:15 (1)** 25:1 | **09:33:15 (1)** 29:15 |
| **09:05:10 (1)** 11:20 | **09:11:31 (1)** 16:5 | **09:20:12 (1)** 20:20 | **09:26:32 (1)** 25:5 | **09:33:31 (1)** 29:20 |
| **09:05:24 (1)** 11:25 | **09:11:51 (1)** 16:10 | **09:20:37 (1)** 20:25 | **09:26:43 (1)** 25:10 | **09:33:44 (1)** 29:25 |
| **09:05:27 (1)** 12:1 | **09:12:05 (1)** 16:15 | **09:20:40 (1)** 21:1 | **09:27:16 (1)** 25:15 | **09:33:48 (1)** 30:1 |
| **09:05:36 (1)** 12:5 | **09:12:22 (1)** 16:20 | **09:21:09 (1)** 21:5 | **09:27:42 (1)** 25:20 | **09:34:06 (1)** 30:5 |
| **09:05:56 (1)** 12:10 | **09:12:39 (1)** 16:25 | **09:21:31 (1)** 21:10 | **09:27:55 (1)** 25:25 | **09:34:24 (1)** 30:10 |
| **09:06:04 (1)** 12:15 | **09:12:45 (1)** 17:1 | **09:21:42 (1)** 21:15 | **09:27:59 (1)** 26:1 | **09:34:40 (1)** 30:15 |
| **09:06:19 (1)** 12:20 | **09:12:55 (1)** 17:5 | **09:21:55 (1)** 21:20 | **09:28:17 (1)** 26:5 | **09:34:58 (1)** 30:20 |

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| **09:35:20 (1)** | **09:50:57 (1)** | 45:11,12,12 46:13 | **10:02:39 (1)** | **10:08:53 (1)** |
| 30:25 | 35:20 | 46:24 47:5,11,19,19 | 41:15 | 46:1 |
| **09:35:22 (1)** | **09:51:16 (1)** | 47:20 48:2,2,9,12 | **10:02:49 (1)** | **10:09:04 (1)** |
| 31:1 | 35:25 | 48:15,17 49:9,19 | 41:20 | 46:5 |
| **09:35:34 (1)** | **09:51:20 (1)** | 50:1,3,13,19 51:7 | **10:03:14 (1)** | **10:09:24 (1)** |
| 31:5 | 36:1 | 52:10 55:8,8,21 | 41:25 | 46:10 |
| **09:35:52 (1)** | **09:51:23 (1)** | 57:10,12,14,19,24 | **10:03:20 (1)** | **10:09:46 (1)** |
| 31:10 | 36:5 | 58:7 67:16 74:16 | 42:1 | 46:15 |
| **09:36:07 (1)** | **09:51:41 (1)** | 75:9,15,18 76:12 | **10:03:34 (1)** | **10:10:05 (1)** |
| 31:15 | 36:10 | 81:18,22 83:18 | 42:5 | 46:20 |
| **09:36:27 (1)** | **09:54:28 (1)** | 91:21 94:13 96:22 | **10:03:47 (1)** | **10:10:28 (1)** |
| 31:20 | 36:15 | 98:11,11 103:7,16 | 42:10 | 46:25 |
| **09:36:54 (1)** | **09:54:45 (1)** | 157:20 211:6 | **10:04:02 (1)** | **10:10:32 (1)** |
| 31:25 | 36:20 | 213:12 218:18,25 | 42:15 | 47:1 |
| **09:36:58 (1)** | **09:55:04 (1)** | 234:15,20 236:5 | **10:04:18 (1)** | **10:10:53 (1)** |
| 32:1 | 36:25 | **1B (4)** | 42:20 | 47:5 |
| **09:37:13 (1)** | **09:55:08 (1)** | 140:18,20 141:9 | **10:04:32 (1)** | **10:11:12 (1)** |
| 32:5 | 37:1 | 142:21 | 42:25 | 47:10 |
| **09:37:43 (1)** | **09:55:28 (1)** | **1C (1)** | **10:04:38 (1)** | **10:11:27 (1)** |
| 32:10 | 37:5 | 143:18 | 43:1 | 47:15 |
| **09:38:06 (1)** | **09:55:47 (1)** | **1:16 (2)** | **10:04:54 (1)** | **10:11:58 (1)** |
| 32:15 | 37:10 | 106:9,12 | 43:5 | 47:20 |
| **09:38:29 (1)** | **09:56:00 (1)** | **10 (21)** | **10:05:01 (1)** | **10:12:23 (2)** |
| 32:20 | 37:15 | 8:20 78:8,8,11,12 | 43:10 | 47:25 48:1 |
| **09:38:42 (2)** | **09:56:13 (1)** | 83:11,15 91:23 92:3 | **10:05:25 (1)** | **10:12:44 (1)** |
| 32:25 33:1 | 37:20 | 92:17,18,20,21,23 | 43:15 | 48:5 |
| **09:38:59 (1)** | **09:56:48 (1)** | 93:15 94:2,13,18 | **10:05:41 (1)** | **10:13:04 (1)** |
| 33:5 | 37:25 | 127:13,13 235:9 | 43:20 | 48:10 |
| **09:39:44 (1)** | **09:56:52 (1)** | **10.1 (3)** | **10:05:58 (1)** | **10:13:28 (1)** |
| 33:10 | 38:1 | 182:1,12,19 | 43:25 | 48:15 |
| **09:39:55 (1)** | **09:57:01 (1)** | **10:00:02 (1)** | **10:06:01 (1)** | **10:13:47 (1)** |
| 33:15 | 38:5 | 39:15 | 44:1 | 48:20 |
| **09:40:19 (1)** | **09:57:17 (1)** | **10:00:17 (1)** | **10:06:19 (1)** | **10:14:00 (1)** |
| 33:20 | 38:10 | 39:20 | 44:5 | 48:25 |
| **09:40:44 (1)** | **09:57:29 (1)** | **10:00:32 (1)** | **10:06:41 (1)** | **10:14:08 (1)** |
| 33:25 | 38:15 | 39:25 | 44:10 | 49:1 |
| **09:40:52 (1)** | **09:58:43 (1)** | **10:00:38 (1)** | **10:07:04 (1)** | **10:14:24 (1)** |
| 34:1 | 38:20 | 40:1 | 44:15 | 49:5 |
| **09:41:11 (1)** | **09:59:03 (1)** | **10:00:55 (1)** | **10:07:11 (1)** | **10:14:39 (1)** |
| 34:5 | 38:25 | 40:5 | 44:20 | 49:10 |
| **09:41:34 (1)** | **09:59:07 (1)** | **10:01:15 (1)** | **10:07:23 (1)** | **10:14:51 (1)** |
| 34:10 | 39:1 | 40:10 | 44:25 | 49:15 |
| **09:41:52 (1)** | **09:59:24 (1)** | **10:01:39 (1)** | **10:07:26 (1)** | **10:15:06 (1)** |
| 34:15 | 39:5 | 40:15 | 45:1 | 49:20 |
| **09:42:43 (1)** | **09:59:39 (1)** | **10:01:51 (1)** | **10:07:30 (1)** | **10:15:17 (1)** |
| 34:20 | 39:10 | 40:20 | 45:5 | 49:25 |
| **09:50:09 (2)** | | **10:01:59 (1)** | **10:07:49 (1)** | **10:15:22 (1)** |
| 34:25 35:1 | _____ | 40:25 | 45:10 | 50:1 |
| **09:50:17 (1)** | **1** | **10:02:02 (1)** | **10:08:15 (1)** | **10:15:49 (1)** |
| 35:5 | **1 (78)** | 41:1 | 45:15 | 50:5 |
| **09:50:29 (1)** | 5:4,7 14:14,22 16:12 | **10:02:17 (1)** | **10:08:32 (1)** | **10:16 (2)** |
| 35:10 | 16:14,15,17,20,23 | 41:5 | 45:20 | 50:11,14 |
| **09:50:48 (1)** | 16:23 17:11,12,15 | **10:02:28 (1)** | **10:08:51 (1)** | **10:16:00 (1)** |
| 35:15 | 17:21 20:18 37:7 | 41:10 | 45:25 | 50:10 |
| | 43:14,14 44:12,12 | | | |

Highly Confidential - Attorneys' Eyes Only

Page  34

| | | | | |
|---|---|---|---|---|
| **10:26 (1)** | **10:35:40 (1)** | **10:44:20 (1)** | **10:51:42 (1)** | **11 (18)** |
| 50:14 | 54:20 | 59:5 | 63:20 | 19:3,6 78:14,18 91:24 |
| **10:27 (1)** | **10:36:02 (1)** | **10:44:36 (1)** | **10:52:02 (1)** | 92:3,17,18,20,21,23 |
| 50:17 | 54:25 | 59:10 | 63:25 | 94:13,18 95:22,23 |
| **10:27:04 (1)** | **10:36:04 (1)** | **10:45:02 (1)** | **10:52:04 (1)** | 96:1,9 235:11 |
| 50:15 | 55:1 | 59:15 | 64:1 | **11-cv-01846-LHK (3)** |
| **10:27:19 (1)** | **10:36:19 (1)** | **10:45:29 (1)** | **10:52:38 (1)** | 1:6 6:7,12 |
| 50:20 | 55:5 | 59:20 | 64:5 | **11:00:06 (1)** |
| **10:27:52 (1)** | **10:37:39 (1)** | **10:45:43 (1)** | **10:53:26 (1)** | 67:20 |
| 50:25 | 55:10 | 59:25 | 64:10 | **11:00:34 (1)** |
| **10:27:58 (1)** | **10:37:55 (1)** | **10:45:53 (1)** | **10:53:57 (1)** | 67:25 |
| 51:1 | 55:15 | 60:1 | 64:15 | **11:00:36 (1)** |
| **10:28:17 (1)** | **10:38:10 (1)** | **10:46:12 (1)** | **10:54:21 (1)** | 68:1 |
| 51:5 | 55:20 | 60:5 | 64:20 | **11:01:01 (1)** |
| **10:28:37 (1)** | **10:38:19 (1)** | **10:46:24 (1)** | **10:54:40 (1)** | 68:5 |
| 51:10 | 55:25 | 60:10 | 64:25 | **11:01:44 (1)** |
| **10:28:58 (1)** | **10:38:21 (1)** | **10:46:38 (1)** | **10:54:41 (1)** | 68:10 |
| 51:15 | 56:1 | 60:15 | 65:1 | **11:01:53 (1)** |
| **10:29:04 (1)** | **10:38:55 (1)** | **10:47:05 (1)** | **10:55:47 (1)** | 68:15 |
| 51:20 | 56:5 | 60:20 | 65:5 | **11:02:23 (1)** |
| **10:29:19 (1)** | **10:39:21 (1)** | **10:47:30 (1)** | **10:56:17 (1)** | 68:20 |
| 51:25 | 56:10 | 60:25 | 65:10 | **11:02:48 (1)** |
| **10:29:20 (1)** | **10:39:43 (1)** | **10:47:36 (1)** | **10:56:31 (1)** | 68:25 |
| 52:1 | 56:15 | 61:1 | 65:15 | **11:02:51 (1)** |
| **10:29:35 (1)** | **10:40:22 (1)** | **10:47:50 (1)** | **10:56:44 (1)** | 69:1 |
| 52:5 | 56:20 | 61:5 | 65:20 | **11:03:04 (1)** |
| **10:30:54 (1)** | **10:40:44 (1)** | **10:47:58 (1)** | **10:56:53 (1)** | 69:5 |
| 52:10 | 56:25 | 61:10 | 65:25 | **11:03:17 (1)** |
| **10:31:31 (1)** | **10:40:46 (1)** | **10:48:18 (1)** | **10:56:54 (1)** | 69:10 |
| 52:15 | 57:1 | 61:15 | 66:1 | **11:03:48 (1)** |
| **10:31:46 (1)** | **10:40:53 (1)** | **10:48:41 (1)** | **10:57:13 (1)** | 69:15 |
| 52:20 | 57:5 | 61:20 | 66:5 | **11:04:08 (1)** |
| **10:32:29 (1)** | **10:41:10 (1)** | **10:48:55 (1)** | **10:57:27 (1)** | 69:20 |
| 52:25 | 57:10 | 61:25 | 66:10 | **11:04:22 (1)** |
| **10:32:37 (1)** | **10:41:31 (1)** | **10:48:57 (1)** | **10:57:47 (1)** | 69:25 |
| 53:1 | 57:15 | 62:1 | 66:15 | **11:04:27 (1)** |
| **10:32:48 (1)** | **10:41:49 (1)** | **10:49:07 (1)** | **10:58:08 (1)** | 70:1 |
| 53:5 | 57:20 | 62:5 | 66:20 | **11:04:43 (1)** |
| **10:33:10 (1)** | **10:42:08 (1)** | **10:49:25 (1)** | **10:58:30 (1)** | 70:5 |
| 53:10 | 57:25 | 62:10 | 66:25 | **11:05:08 (1)** |
| **10:33:30 (1)** | **10:42:17 (1)** | **10:49:44 (1)** | **10:58:32 (1)** | 70:10 |
| 53:15 | 58:1 | 62:15 | 67:1 | **11:06:17 (1)** |
| **10:33:49 (1)** | **10:42:32 (1)** | **10:50:03 (1)** | **10:58:45 (1)** | 70:15 |
| 53:20 | 58:5 | 62:20 | 67:5 | **11:06:36 (1)** |
| **10:34:05 (1)** | **10:42:48 (1)** | **10:50:28 (1)** | **10:59:20 (1)** | 70:20 |
| 53:25 | 58:10 | 62:25 | 67:10 | **11:06:57 (2)** |
| **10:34:12 (1)** | **10:43:10 (1)** | **10:50:41 (1)** | **10:59:43 (1)** | 70:25 71:1 |
| 54:1 | 58:15 | 63:1 | 67:15 | **11:07:09 (1)** |
| **10:34:31 (1)** | **10:43:27 (1)** | **10:51:02 (1)** | **10010 (1)** | 71:5 |
| 54:5 | 58:20 | 63:5 | 3:23 | **11:07:27 (1)** |
| **10:34:50 (1)** | **10:43:50 (1)** | **10:51:14 (1)** | **102 (1)** | 71:10 |
| 54:10 | 58:25 | 63:10 | 71:5 | **11:07:38 (1)** |
| **10:35:10 (1)** | **10:43:55 (1)** | **10:51:32 (1)** | **103 (1)** | 71:15 |
| 54:15 | 59:1 | 63:15 | 235:12 | **11:07:50 (1)** |

Highly Confidential - Attorneys' Eyes Only

71:20
**11:08:08 (1)**
71:25
**11:08:17 (1)**
72:1
**11:08:34 (1)**
72:5
**11:09:54 (1)**
72:10
**11:10:20 (1)**
72:15
**11:11:02 (1)**
72:20
**11:11:17 (1)**
72:25
**11:11:22 (1)**
73:1
**11:11:36 (1)**
73:5
**11:11:56 (1)**
73:10
**11:12:33 (1)**
73:15
**11:12:49 (1)**
73:20
**11:13:03 (1)**
73:25
**11:13:06 (1)**
74:1
**11:13:23 (1)**
74:5
**11:14:12 (1)**
74:10
**11:14:42 (1)**
74:15
**11:15:16 (1)**
74:20
**11:15:32 (1)**
74:25
**11:15:36 (1)**
75:1
**11:15:49 (1)**
75:5
**11:16:14 (1)**
75:10
**11:16:24 (1)**
75:15
**11:16:46 (1)**
75:20
**11:17:05 (1)**
75:25
**11:17:12 (1)**
76:1
**11:17:24 (1)**

76:5
**11:17:44 (1)**
76:10
**11:18:08 (1)**
76:15
**11:18:28 (1)**
76:20
**11:18:45 (1)**
76:25
**11:18:49 (1)**
77:1
**11:19:02 (1)**
77:5
**11:19:18 (1)**
77:10
**11:19:45 (1)**
77:15
**11:20:03 (1)**
77:20
**11:20:28 (1)**
77:25
**11:20:29 (1)**
78:1
**11:21:02 (1)**
78:5
**11:21:20 (1)**
78:10
**11:21:50 (1)**
78:15
**11:22:22 (1)**
78:20
**11:22:38 (1)**
78:25
**11:22:41 (1)**
79:1
**11:23:03 (1)**
79:5
**11:23:17 (1)**
79:10
**11:23:32 (1)**
79:15
**11:23:48 (1)**
79:20
**11:24:07 (1)**
79:25
**11:24:10 (1)**
80:1
**11:24:20 (1)**
80:5
**11:24:38 (1)**
80:10
**11:25:14 (1)**
80:15
**11:25:40 (1)**

80:20
**11:26:00 (1)**
80:25
**11:26:05 (1)**
81:1
**11:26:16 (1)**
81:5
**11:26:36 (1)**
81:10
**11:26:57 (1)**
81:15
**11:27:19 (1)**
81:20
**11:27:44 (1)**
81:25
**11:27:45 (1)**
82:1
**11:29:33 (1)**
82:5
**11:30:01 (1)**
82:10
**11:30:24 (1)**
82:15
**11:32 (2)**
83:6,8
**11:32:04 (1)**
82:20
**11:32:30 (1)**
82:25
**11:32:33 (1)**
83:1
**11:32:45 (1)**
83:5
**11:43 (2)**
83:8,9
**11:43:07 (1)**
83:10
**11:43:13 (1)**
83:15
**11:43:39 (1)**
83:20
**11:43:58 (1)**
83:25
**11:44:03 (1)**
84:1
**11:44:13 (1)**
84:5
**11:44:35 (1)**
84:10
**11:45:05 (1)**
84:15
**11:45:33 (1)**
84:20
**11:46:02 (1)**

84:25
**11:46:07 (1)**
85:1
**11:49:01 (1)**
85:5
**11:49:30 (1)**
85:10
**11:49:46 (1)**
85:15
**11:49:55 (1)**
85:20
**11:50:15 (1)**
85:25
**11:51:13 (1)**
86:1
**11:51:53 (1)**
86:5
**11:52:17 (1)**
86:10
**11:52:35 (1)**
86:15
**11:52:51 (1)**
86:20
**11:53:09 (1)**
86:25
**11:53:11 (1)**
87:1
**11:53:25 (1)**
87:5
**11:53:44 (1)**
87:10
**11:54:01 (1)**
87:15
**11:54:19 (1)**
87:20
**11:54:42 (1)**
87:25
**11:56:22 (1)**
88:1
**11:56:39 (1)**
88:5
**11:57:03 (1)**
88:10
**11:57:25 (1)**
88:15
**11:57:46 (1)**
88:20
**11:58:08 (1)**
88:25
**11:58:09 (1)**
89:1
**11:58:22 (1)**
89:5
**11:58:48 (1)**

89:10
**11:59:10 (1)**
89:15
**11:59:29 (1)**
89:20
**11:59:46 (1)**
89:25
**11:59:47 (1)**
90:1
**112 (1)**
14:24
**117 (1)**
144:1
**12 (8)**
78:22 79:3 103:2,3
   130:15 143:8 151:7
   235:12
**12-CV-00630-LHK ...**
5:11
**12:00:01 (1)**
90:5
**12:00:30 (1)**
90:10
**12:01:01 (1)**
90:15
**12:01:20 (1)**
90:20
**12:01:45 (1)**
90:25
**12:01:49 (1)**
91:1
**12:02:18 (1)**
91:5
**12:02:43 (1)**
91:10
**12:02:52 (1)**
91:15
**12:03:07 (1)**
91:20
**12:03:26 (1)**
91:25
**12:03:29 (1)**
92:1
**12:03:50 (1)**
92:5
**12:04:25 (1)**
92:10
**12:04:36 (1)**
92:15
**12:04:56 (1)**
92:20
**12:05:16 (1)**
92:25
**12:05:18 (1)**

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| 93:1 | 97:15 | 102:1 | 1:23 2:8 233:24 | 110:10 |
| **12:05:44 (1)** | **12:13:30 (1)** | **12:23:25 (1)** | **13 (10)** | **13:23:33 (1)** |
| 93:5 | 97:20 | 102:5 | 79:8,15 80:7,14 140:5 | 110:15 |
| **12:06:00 (1)** | **12:13:40 (1)** | **12:23:41 (1)** | 140:7,13,14,15 | **13:23:51 (1)** |
| 93:10 | 97:25 | 102:10 | 235:13 | 110:20 |
| **12:06:27 (1)** | 98:1 | **12:24:05 (1)** | **13:16:07 (1)** | **13:24:06 (2)** |
| 93:15 | **12:13:43 (1)** | 102:15 | 106:10 | 110:25 111:1 |
| **12:06:45 (1)** | 98:5 | **12:24:27 (1)** | **13:16:24 (1)** | **13:24:20 (1)** |
| 93:20 | **12:13:54 (1)** | 102:20 | 106:15 | 111:5 |
| **12:07:03 (1)** | 98:10 | **12:24:42 (1)** | **13:16:50 (1)** | **13:24:38 (1)** |
| 93:25 | **12:14:21 (1)** | 102:25 | 106:20 | 111:10 |
| **12:07:06 (1)** | 98:15 | **12:24:43 (1)** | **13:17:09 (1)** | **13:27:35 (1)** |
| 94:1 | **12:14:43 (1)** | 103:1 | 106:25 | 111:15 |
| **12:07:22 (1)** | 98:20 | **12:24:49 (1)** | **13:17:14 (1)** | **13:27:44 (1)** |
| 94:5 | **12:14:54 (1)** | 103:5 | 107:1 | 111:20 |
| **12:07:37 (1)** | 98:25 | **12:25:59 (1)** | **13:17:35 (1)** | **13:28:07 (1)** |
| 94:10 | **12:15:20 (1)** | 103:10 | 107:5 | 111:25 |
| **12:07:59 (1)** | **12:15:25 (1)** | **12:26:15 (1)** | **13:18:00 (1)** | **13:28:10 (1)** |
| 94:15 | 99:1 | 103:15 | 107:10 | 112:1 |
| **12:08:21 (1)** | **12:16:57 (1)** | **12:26:32 (1)** | **13:18:15 (1)** | **13:28:26 (1)** |
| 94:20 | 99:5 | 103:20 | 107:15 | 112:5 |
| **12:08:39 (1)** | **12:17:24 (1)** | **12:26:47 (1)** | **13:18:57 (1)** | **13:29:19 (1)** |
| 94:25 | 99:10 | 103:25 | 107:20 | 112:10 |
| **12:08:44 (1)** | **12:17:47 (1)** | **12:26:54 (1)** | **13:19:14 (1)** | **13:29:53 (1)** |
| 95:1 | 99:15 | 104:1 | 107:25 | 112:15 |
| **12:09:03 (1)** | **12:18:13 (1)** | **12:27:14 (1)** | **13:19:20 (1)** | **13:32:26 (1)** |
| 95:5 | 99:20 | 104:5 | 108:1 | 112:20 |
| **12:09:23 (1)** | **12:18:27 (1)** | **12:27:38 (1)** | **13:19:37 (1)** | **13:32:53 (1)** |
| 95:10 | 99:25 | 104:10 | 108:5 | 112:25 |
| **12:09:44 (1)** | **12:18:30 (1)** | **12:28:04 (1)** | **13:19:55 (1)** | **13:32:56 (1)** |
| 95:15 | 100:1 | 104:15 | 108:10 | 113:1 |
| **12:09:56 (1)** | **12:18:48 (1)** | **12:28:20 (1)** | **13:20:18 (1)** | **13:33:20 (1)** |
| 95:20 | 100:5 | 104:20 | 108:15 | 113:5 |
| **12:10:09 (1)** | **12:19:05 (1)** | **12:28:34 (1)** | **13:20:28 (1)** | **13:34:03 (1)** |
| 95:25 | 100:10 | 104:25 | 108:20 | 113:10 |
| **12:10:20 (1)** | **12:19:23 (1)** | **12:28:39 (1)** | **13:20:49 (1)** | **13:35:06 (1)** |
| 96:1 | 100:15 | 105:1 | 108:25 | 113:15 |
| **12:10:37 (1)** | **12:19:44 (1)** | **12:28:54 (1)** | **13:20:55 (1)** | **13:35:29 (1)** |
| 96:5 | 100:20 | 105:5 | 109:1 | 113:20 |
| **12:10:56 (1)** | **12:20:06 (1)** | **12:29:22 (1)** | **13:21:05 (1)** | **13:35:51 (1)** |
| 96:10 | 100:25 | 105:10 | 109:5 | 113:25 |
| **12:11:21 (1)** | **12:20:08 (1)** | **12:29:44 (1)** | **13:21:23 (1)** | **13:35:53 (1)** |
| 96:15 | 101:1 | 105:15 | 109:10 | 114:1 |
| **12:11:50 (1)** | **12:20:28 (1)** | **12:30 (2)** | **13:21:47 (1)** | **13:36:09 (1)** |
| 96:20 | 101:5 | 106:6,9 | 109:15 | 114:5 |
| **12:12:15 (1)** | **12:20:49 (1)** | **12:30:03 (1)** | **13:22:11 (1)** | **13:36:19 (1)** |
| 96:25 | 101:10 | 105:20 | 109:20 | 114:10 |
| **12:12:20 (1)** | **12:21:16 (1)** | **12:30:24 (1)** | **13:22:23 (1)** | **13:36:56 (1)** |
| 97:1 | 101:15 | 105:25 | 109:25 | 114:15 |
| **12:12:27 (1)** | **12:22:42 (1)** | **12:30:27 (1)** | **13:22:29 (1)** | **13:37:19 (1)** |
| 97:5 | 101:20 | 106:1 | 110:1 | 114:20 |
| **12:12:46 (1)** | **12:23:04 (1)** | **12:30:39 (1)** | **13:22:47 (1)** | **13:37:46 (1)** |
| 97:10 | 101:25 | 106:5 | 110:5 | 114:25 |
| **12:13:13 (1)** | **12:23:07 (1)** | **12885 (3)** | **13:23:13 (1)** | **13:37:49 (1)** |

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| 115:1 | 119:15 | 124:1 | 128:15 | **14:06:42 (1)** |
| **13:38:03 (1)** | **13:45:21 (1)** | **13:52:42 (1)** | **13:59:48 (1)** | 132:15 |
| 115:5 | 119:20 | 124:5 | 128:20 | **14:07:05 (1)** |
| **13:38:27 (1)** | **13:45:34 (1)** | **13:53:04 (1)** | **14 (10)** | 132:20 |
| 115:10 | 119:25 | 124:10 | 145:4,6 146:13 | **14:07:25 (1)** |
| **13:38:45 (1)** | **13:45:40 (1)** | **13:53:24 (1)** | 222:13,14 223:4 | 132:25 |
| 115:15 | 120:1 | 124:15 | 228:10,14 229:7 | **14:07:26 (1)** |
| **13:39:03 (1)** | **13:46:02 (1)** | **13:53:44 (1)** | 235:15 | 133:1 |
| 115:20 | 120:5 | 124:20 | **14A (1)** | **14:07:41 (1)** |
| **13:39:17 (1)** | **13:46:18 (1)** | **13:53:56 (1)** | 228:24 | 133:5 |
| 115:25 | 120:10 | 124:25 | **14-point (2)** | **14:07:49 (1)** |
| **13:39:22 (1)** | **13:46:37 (1)** | **13:53:57 (1)** | 153:3 154:17 | 133:10 |
| 116:1 | 120:15 | 125:1 | **14:00:03 (1)** | **14:08:11 (1)** |
| **13:39:46 (1)** | **13:46:57 (1)** | **13:54:14 (1)** | 128:25 | 133:15 |
| 116:5 | 120:20 | 125:5 | **14:00:05 (1)** | **14:08:39 (1)** |
| **13:40:02 (1)** | **13:47:21 (1)** | **13:54:33 (1)** | 129:1 | 133:20 |
| 116:10 | 120:25 | 125:10 | **14:00:25 (1)** | **14:09:08 (1)** |
| **13:40:33 (1)** | **13:47:23 (1)** | **13:54:46 (1)** | 129:5 | 133:25 |
| 116:15 | 121:1 | 125:15 | **14:00:36 (1)** | **14:09:13 (1)** |
| **13:40:47 (1)** | **13:47:42 (1)** | **13:55:09 (1)** | 129:10 | 134:1 |
| 116:20 | 121:5 | 125:20 | **14:00:50 (1)** | **14:09:32 (1)** |
| **13:40:58 (1)** | **13:47:54 (1)** | **13:55:33 (1)** | 129:15 | 134:5 |
| 116:25 | 121:10 | 125:25 | **14:01:15 (1)** | **14:09:56 (1)** |
| **13:41:00 (1)** | **13:48:09 (1)** | **13:55:38 (1)** | 129:20 | 134:10 |
| 117:1 | 121:15 | 126:1 | **14:01:34 (2)** | **14:10:13 (1)** |
| **13:41:05 (1)** | **13:48:25 (1)** | **13:55:55 (1)** | 129:25 130:1 | 134:15 |
| 117:5 | 121:20 | 126:5 | **14:01:44 (1)** | **14:10:32 (1)** |
| **13:41:21 (1)** | **13:48:50 (1)** | **13:56:15 (1)** | 130:5 | 134:20 |
| 117:10 | 121:25 | 126:10 | **14:02:22 (1)** | **14:10:52 (1)** |
| **13:41:40 (1)** | **13:48:54 (1)** | **13:56:36 (1)** | 130:10 | 134:25 |
| 117:15 | 122:1 | 126:15 | **14:02:38 (1)** | **14:10:56 (1)** |
| **13:41:59 (1)** | **13:49:15 (1)** | **13:57:00 (1)** | 130:15 | 135:1 |
| 117:20 | 122:5 | 126:20 | **14:03:26 (1)** | **14:11:15 (1)** |
| **13:42:09 (1)** | **13:49:33 (1)** | **13:57:13 (1)** | 130:20 | 135:5 |
| 117:25 | 122:10 | 126:25 | **14:03:55 (1)** | **14:11:31 (1)** |
| **13:42:13 (1)** | **13:49:43 (1)** | **13:57:17 (1)** | 130:25 | 135:10 |
| 118:1 | 122:15 | 127:1 | **14:03:59 (1)** | **14:11:40 (1)** |
| **13:42:45 (1)** | **13:50:04 (1)** | **13:57:38 (1)** | 131:1 | 135:15 |
| 118:5 | 122:20 | 127:5 | **14:04:14 (1)** | **14:12:02 (1)** |
| **13:43:06 (1)** | **13:50:20 (1)** | **13:57:59 (1)** | 131:5 | 135:20 |
| 118:10 | 122:25 | 127:10 | **14:04:31 (1)** | **14:12:16 (1)** |
| **13:43:28 (1)** | **13:50:24 (1)** | **13:58:16 (1)** | 131:10 | 135:25 |
| 118:15 | 123:1 | 127:15 | **14:04:53 (1)** | **14:12:21 (1)** |
| **13:43:41 (1)** | **13:50:41 (1)** | **13:58:28 (1)** | 131:15 | 136:1 |
| 118:20 | 123:5 | 127:20 | **14:05:09 (1)** | **14:12:44 (1)** |
| **13:44:01 (1)** | **13:51:08 (1)** | **13:58:38 (1)** | 131:20 | 136:5 |
| 118:25 | 123:10 | 127:25 | **14:05:53 (1)** | **14:13:07 (1)** |
| **13:44:04 (1)** | **13:51:28 (1)** | **13:58:40 (1)** | 131:25 | 136:10 |
| 119:1 | 123:15 | 128:1 | **14:05:56 (1)** | **14:13:28 (1)** |
| **13:44:33 (1)** | **13:52:04 (1)** | **13:58:54 (1)** | 132:1 | 136:15 |
| 119:5 | 123:20 | 128:5 | **14:06:09 (1)** | **14:13:45 (1)** |
| **13:44:47 (1)** | **13:52:24 (1)** | **13:59:10 (1)** | 132:5 | 136:20 |
| 119:10 | 123:25 | 128:10 | **14:06:29 (1)** | **14:14:07 (1)** |
| **13:45:09 (1)** | **13:52:28 (1)** | **13:59:33 (1)** | 132:10 | 136:25 |

Highly Confidential - Attorneys' Eyes Only

Page  38

**14:14:15 (1)**
137:1
**14:14:26 (1)**
137:5
**14:14:51 (1)**
137:10
**14:15:10 (1)**
137:15
**14:15:36 (1)**
137:20
**14:15:57 (1)**
137:25
**14:16:04 (1)**
138:1
**14:16:21 (1)**
138:5
**14:16:37 (1)**
138:10
**14:16:48 (1)**
138:15
**14:17:09 (1)**
138:20
**14:17:23 (1)**
138:25
**14:17:30 (1)**
139:1
**14:17:35 (1)**
139:5
**14:17:42 (1)**
139:10
**14:18:01 (1)**
139:15
**14:18:23 (1)**
139:20
**14:18:46 (1)**
139:25
**14:18:48 (1)**
140:1
**14:19:11 (1)**
140:5
**14:19:20 (1)**
140:10
**14:19:43 (1)**
140:15
**14:20:31 (1)**
140:20
**14:20:47 (1)**
140:25
**14:20:49 (1)**
141:1
**14:20:59 (1)**
141:5
**14:21:25 (1)**
141:10

**14:21:41 (1)**
141:15
**14:22:04 (1)**
141:20
**14:22:23 (2)**
141:25 142:1
**14:22:49 (1)**
142:5
**14:23:14 (1)**
142:10
**14:23:41 (1)**
142:15
**14:23:52 (1)**
142:20
**14:24:16 (1)**
142:25
**14:24:20 (1)**
143:1
**14:24:28 (1)**
143:5
**14:24:52 (1)**
143:10
**14:25:16 (1)**
143:15
**14:25:33 (1)**
143:20
**14:26:44 (1)**
143:25
**14:26:45 (1)**
144:1
**14:27:04 (1)**
144:5
**14:27:24 (1)**
144:10
**14:27:46 (1)**
144:15
**14:28:00 (1)**
144:20
**14:28:26 (1)**
144:25
**14:28:34 (1)**
145:1
**14:28:44 (1)**
145:5
**14:29:06 (1)**
145:10
**14:29:18 (1)**
145:15
**14:29:42 (1)**
145:20
**14:30:02 (1)**
145:25
**14:30:22 (1)**
146:1

**14:30:34 (1)**
146:5
**14:30:54 (1)**
146:10
**14:31:22 (1)**
146:15
**14:31:35 (1)**
146:20
**14:32:01 (1)**
146:25
**14:32:04 (1)**
147:1
**14:32:13 (1)**
147:5
**14:32:28 (1)**
147:10
**14:32:52 (1)**
147:15
**14:32:58 (1)**
147:20
**14:33:12 (1)**
147:25
**14:33:17 (1)**
148:1
**14:33:30 (1)**
148:5
**14:33:38 (1)**
148:10
**14:33:45 (1)**
148:15
**14:33:54 (1)**
148:20
**14:47:02 (1)**
148:25
**14:47:03 (1)**
149:1
**14:47:15 (1)**
149:5
**14:47:45 (1)**
149:10
**14:48:09 (1)**
149:15
**14:48:28 (1)**
149:20
**14:48:51 (1)**
149:25
**14:48:57 (1)**
150:1
**14:49:17 (1)**
150:5
**14:49:32 (1)**
150:10
**14:49:54 (1)**
150:15

**14:50:20 (1)**
150:20
**14:50:55 (1)**
150:25
**14:51:01 (1)**
151:1
**14:51:29 (1)**
151:5
**14:51:49 (1)**
151:10
**14:52:20 (1)**
151:15
**14:52:43 (1)**
151:20
**14:53:07 (1)**
151:25
**14:53:16 (1)**
152:1
**14:53:37 (1)**
152:5
**14:54:01 (1)**
152:10
**14:54:16 (1)**
152:15
**14:54:36 (1)**
152:20
**14:55:00 (1)**
152:25
**14:55:05 (1)**
153:1
**14:55:26 (1)**
153:5
**14:55:48 (1)**
153:10
**14:56:04 (1)**
153:15
**14:56:27 (1)**
153:20
**14:56:51 (1)**
153:25
**14:56:54 (1)**
154:1
**14:57:09 (1)**
154:5
**14:57:22 (1)**
154:10
**14:57:55 (1)**
154:15
**14:58:24 (1)**
154:20
**14:58:44 (1)**
154:25
**14:58:50 (1)**
155:1

**14:59:02 (1)**
155:5
**14:59:25 (1)**
155:10
**14:59:45 (1)**
155:15
**140 (1)**
235:13
**1410 (1)**
223:7
**1420 (4)**
223:9 225:13,21
231:1
**1430 (2)**
223:10 224:5
**1440 (1)**
224:6
**145 (1)**
235:15
**1450 (1)**
224:6
**148 (1)**
235:16
**15 (12)**
8:11,16,17 50:8 121:3
148:21 149:1
171:12 172:12
202:5 234:17
235:16
**15:00:11 (1)**
155:20
**15:00:36 (1)**
155:25
**15:00:37 (1)**
156:1
**15:01:00 (1)**
156:5
**15:01:24 (1)**
156:10
**15:01:52 (1)**
156:15
**15:02:14 (1)**
156:20
**15:02:44 (1)**
156:25
**15:02:47 (1)**
157:1
**15:03:09 (1)**
157:5
**15:03:36 (1)**
157:10
**15:03:57 (1)**
157:15
**15:04:19 (1)**

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| 157:20 | 162:5 | 166:20 | 171:15 | 176:1 |
| **15:04:44 (1)** | **15:13:00 (1)** | **15:19:11 (1)** | **15:36:35 (1)** | **15:43:15 (1)** |
| 157:25 | 162:10 | 166:25 | 171:20 | 176:5 |
| **15:04:49 (1)** | **15:13:14 (1)** | **15:19:13 (1)** | **15:37:00 (1)** | **15:43:34 (1)** |
| 158:1 | 162:15 | 167:1 | 171:25 | 176:10 |
| **15:05:06 (1)** | **15:13:28 (1)** | **15:19:26 (1)** | **15:37:04 (1)** | **15:43:56 (1)** |
| 158:5 | 162:20 | 167:5 | 172:1 | 176:15 |
| **15:05:35 (1)** | **15:13:53 (1)** | **15:19:33 (1)** | **15:37:21 (1)** | **15:44:34 (1)** |
| 158:10 | 162:25 | 167:10 | 172:5 | 176:20 |
| **15:06:03 (1)** | **15:13:59 (1)** | **15:19:38 (1)** | **15:37:42 (1)** | **15:45:04 (1)** |
| 158:15 | 163:1 | 167:15 | 172:10 | 176:25 |
| **15:06:35 (1)** | **15:14:15 (1)** | **15:19:46 (1)** | **15:37:53 (1)** | **15:45:09 (1)** |
| 158:20 | 163:5 | 167:20 | 172:15 | 177:1 |
| **15:07:01 (1)** | **15:14:37 (1)** | **15:19:59 (1)** | **15:38:06 (1)** | **15:45:31 (1)** |
| 158:25 | 163:10 | 167:25 | 172:20 | 177:5 |
| **15:07:25 (1)** | **15:14:59 (1)** | **15:20:00 (1)** | **15:38:39 (1)** | **15:45:41 (1)** |
| 159:1 | 163:15 | 168:1 | 172:25 | 177:10 |
| **15:07:45 (1)** | **15:15:20 (1)** | **15:20:09 (1)** | **15:38:41 (1)** | **15:45:51 (1)** |
| 159:5 | 163:20 | 168:5 | 173:1 | 177:15 |
| **15:08:10 (1)** | **15:15:26 (1)** | **15:20:25 (1)** | **15:38:59 (1)** | **15:45:58 (1)** |
| 159:10 | 163:25 | 168:10 | 173:5 | 177:20 |
| **15:08:27 (1)** | **15:15:28 (1)** | **15:20:42 (1)** | **15:39:19 (1)** | **15:46:06 (1)** |
| 159:15 | 164:1 | 168:15 | 173:10 | 177:25 |
| **15:08:51 (1)** | **15:15:40 (1)** | **15:21:04 (1)** | **15:39:32 (1)** | **15:46:07 (1)** |
| 159:20 | 164:5 | 168:20 | 173:15 | 178:1 |
| **15:09:07 (1)** | **15:15:54 (1)** | **15:21:24 (2)** | **15:39:52 (1)** | **15:46:46 (1)** |
| 159:25 | 164:10 | 168:25 169:1 | 173:20 | 178:5 |
| **15:09:15 (1)** | **15:16:04 (1)** | **15:21:43 (1)** | **15:40:12 (1)** | **15:46:58 (1)** |
| 160:1 | 164:15 | 169:5 | 173:25 | 178:10 |
| **15:09:39 (1)** | **15:16:12 (1)** | **15:22:01 (1)** | **15:40:21 (1)** | **15:47:12 (1)** |
| 160:5 | 164:20 | 169:10 | 174:1 | 178:15 |
| **15:10:00 (1)** | **15:16:20 (1)** | **15:22:18 (1)** | **15:40:35 (1)** | **15:47:27 (1)** |
| 160:10 | 164:25 | 169:15 | 174:5 | 178:20 |
| **15:10:21 (1)** | **15:16:25 (1)** | **15:22:30 (1)** | **15:40:54 (1)** | **15:47:44 (1)** |
| 160:15 | 165:1 | 169:20 | 174:10 | 178:25 |
| **15:10:37 (1)** | **15:16:49 (1)** | **15:33:59 (2)** | **15:41:06 (1)** | **15:47:48 (1)** |
| 160:20 | 165:5 | 169:25 170:1 | 174:15 | 179:1 |
| **15:10:48 (1)** | **15:17:01 (1)** | **15:34:26 (1)** | **15:41:19 (1)** | **15:48:17 (1)** |
| 160:25 | 165:10 | 170:5 | 174:20 | 179:5 |
| **15:10:51 (1)** | **15:17:11 (1)** | **15:34:50 (1)** | **15:41:29 (1)** | **15:48:34 (1)** |
| 161:1 | 165:15 | 170:10 | 174:25 | 179:10 |
| **15:11:04 (1)** | **15:17:24 (1)** | **15:35:05 (1)** | **15:41:30 (1)** | **15:48:52 (1)** |
| 161:5 | 165:20 | 170:15 | 175:1 | 179:15 |
| **15:11:32 (1)** | **15:17:40 (1)** | **15:35:17 (1)** | **15:41:41 (1)** | **15:49:19 (1)** |
| 161:10 | 165:25 | 170:20 | 175:5 | 179:20 |
| **15:11:51 (1)** | **15:17:42 (1)** | **15:35:32 (1)** | **15:41:57 (1)** | **15:49:39 (1)** |
| 161:15 | 166:1 | 170:25 | 175:10 | 179:25 |
| **15:12:00 (1)** | **15:17:58 (1)** | **15:35:35 (1)** | **15:42:16 (1)** | **15:49:43 (1)** |
| 161:20 | 166:5 | 171:1 | 175:15 | 180:1 |
| **15:12:23 (1)** | **15:18:16 (1)** | **15:35:44 (1)** | **15:42:36 (1)** | **15:50:01 (1)** |
| 161:25 | 166:10 | 171:5 | 175:20 | 180:5 |
| **15:12:29 (1)** | **15:18:45 (1)** | **15:35:54 (1)** | **15:42:52 (1)** | **15:50:33 (1)** |
| 162:1 | 166:15 | 171:10 | 175:25 | 180:10 |
| **15:12:41 (1)** | **15:19:02 (1)** | **15:36:17 (1)** | **15:42:55 (1)** | **15:50:51 (1)** |

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| 180:15 | 171:12 172:12 188:16 | 189:10 | 193:25 | 198:10 |
| **15:51:13 (1)** | 188:17,20 189:10 | **16:08:04 (1)** | **16:14:16 (1)** | **16:21:47 (1)** |
| 180:20 | 197:20,20 235:17 | 189:15 | 194:1 | 198:15 |
| **15:51:38 (1)** | **16:00:20 (1)** | **16:08:22 (1)** | **16:14:38 (1)** | **16:21:57 (1)** |
| 180:25 | 185:5 | 189:20 | 194:5 | 198:20 |
| **15:51:40 (1)** | **16:00:38 (1)** | **16:08:46 (1)** | **16:15:02 (1)** | **16:22:24 (2)** |
| 181:1 | 185:10 | 189:25 | 194:10 | 198:25 199:1 |
| **15:51:52 (1)** | **16:00:53 (1)** | **16:08:52 (1)** | **16:15:21 (1)** | **16:23:06 (1)** |
| 181:5 | 185:15 | 190:1 | 194:15 | 199:5 |
| **15:52:08 (1)** | **16:01:15 (1)** | **16:09:08 (1)** | **16:15:51 (1)** | **16:23:34 (1)** |
| 181:10 | 185:20 | 190:5 | 194:20 | 199:10 |
| **15:52:24 (1)** | **16:01:32 (1)** | **16:09:26 (1)** | **16:16:05 (1)** | **16:24:00 (1)** |
| 181:15 | 185:25 | 190:10 | 194:25 | 199:15 |
| **15:52:43 (1)** | **16:01:40 (1)** | **16:09:46 (1)** | **16:16:06 (1)** | **16:24:22 (1)** |
| 181:20 | 186:1 | 190:15 | 195:1 | 199:20 |
| **15:53:01 (1)** | **16:01:56 (1)** | **16:10:03 (1)** | **16:16:21 (1)** | **16:24:45 (1)** |
| 181:25 | 186:5 | 190:20 | 195:5 | 199:25 |
| **15:53:11 (1)** | **16:02:15 (1)** | **16:10:13 (1)** | **16:16:43 (1)** | **16:24:47 (1)** |
| 182:1 | 186:10 | 190:25 | 195:10 | 200:1 |
| **15:53:30 (1)** | **16:02:32 (1)** | **16:10:14 (1)** | **16:17:00 (1)** | **16:25:07 (1)** |
| 182:5 | 186:15 | 191:1 | 195:15 | 200:5 |
| **15:53:52 (1)** | **16:02:49 (1)** | **16:10:34 (1)** | **16:17:15 (1)** | **16:25:23 (1)** |
| 182:10 | 186:20 | 191:5 | 195:20 | 200:10 |
| **15:54:15 (1)** | **16:02:59 (1)** | **16:10:46 (1)** | **16:17:28 (1)** | **16:25:36 (1)** |
| 182:15 | 186:25 | 191:10 | 195:25 | 200:15 |
| **15:54:27 (1)** | **16:03:00 (1)** | **16:10:59 (1)** | **16:17:35 (1)** | **16:25:51 (1)** |
| 182:20 | 187:1 | 191:15 | 196:1 | 200:20 |
| **15:54:51 (1)** | **16:03:14 (1)** | **16:11:16 (1)** | **16:17:50 (1)** | **16:26:18 (1)** |
| 182:25 | 187:5 | 191:20 | 196:5 | 200:25 |
| **15:55:03 (1)** | **16:03:30 (1)** | **16:11:29 (1)** | **16:18:14 (1)** | **16:26:22 (1)** |
| 183:1 | 187:10 | 191:25 | 196:10 | 201:1 |
| **15:55:25 (1)** | **16:03:44 (1)** | **16:11:37 (1)** | **16:18:39 (1)** | **16:26:29 (1)** |
| 183:5 | 187:15 | 192:1 | 196:15 | 201:5 |
| **15:55:51 (1)** | **16:03:58 (1)** | **16:11:50 (1)** | **16:19:05 (1)** | **16:26:59 (1)** |
| 183:10 | 187:20 | 192:5 | 196:20 | 201:10 |
| **15:56:27 (1)** | **16:04:23 (1)** | **16:12:08 (1)** | **16:19:18 (1)** | **16:27:26 (1)** |
| 183:15 | 187:25 | 192:10 | 196:25 | 201:15 |
| **15:56:46 (1)** | **16:04:24 (1)** | **16:12:23 (1)** | **16:19:21 (1)** | **16:27:54 (1)** |
| 183:20 | 188:1 | 192:15 | 197:1 | 201:20 |
| **15:56:57 (1)** | **16:04:43 (1)** | **16:12:41 (1)** | **16:19:30 (1)** | **16:28:15 (1)** |
| 183:25 | 188:5 | 192:20 | 197:5 | 201:25 |
| **15:57:02 (1)** | **16:04:58 (1)** | **16:12:47 (1)** | **16:19:59 (1)** | **16:28:19 (1)** |
| 184:1 | 188:10 | 192:25 | 197:10 | 202:1 |
| **15:57:17 (1)** | **16:05:44 (1)** | **16:12:52 (1)** | **16:20:25 (1)** | **16:28:30 (1)** |
| 184:5 | 188:15 | 193:1 | 197:15 | 202:5 |
| **15:57:59 (1)** | **16:06:15 (1)** | **16:13:02 (1)** | **16:20:41 (1)** | **16:32:31 (1)** |
| 184:10 | 188:20 | 193:5 | 197:20 | 202:10 |
| **15:58:26 (1)** | **16:06:50 (1)** | **16:13:18 (1)** | **16:21:05 (1)** | **16:33:05 (1)** |
| 184:15 | 188:25 | 193:10 | 197:25 | 202:15 |
| **15:58:36 (1)** | **16:06:51 (1)** | **16:13:31 (1)** | **16:21:08 (1)** | **16:33:26 (1)** |
| 184:20 | 189:1 | 193:15 | 198:1 | 202:20 |
| **15:59:52 (2)** | **16:07:03 (1)** | **16:13:50 (1)** | **16:21:19 (1)** | **16:33:43 (1)** |
| 184:25 185:1 | 189:5 | 193:20 | 198:5 | 202:25 |
| **16 (9)** | **16:07:27 (1)** | **16:14:15 (1)** | **16:21:31 (1)** | **16:33:46 (1)** |

Highly Confidential - Attorneys' Eyes Only

| | | | | |
|---|---|---|---|---|
| 203:1 | 207:15 | 160:2,7 164:25 | 214:15 | 219:1 |
| **16:34:00 (1)** | **16:41:34 (1)** | 170:2 171:11 | **17:05:54 (1)** | **17:14:00 (1)** |
| 203:5 | 207:20 | 178:14 185:25 | 214:20 | 219:5 |
| **16:34:19 (1)** | **16:41:46 (1)** | 191:20 195:4,9 | **17:06:32 (1)** | **17:14:20 (1)** |
| 203:10 | 207:25 | 196:19 199:4 | 214:25 | 219:10 |
| **16:34:35 (1)** | **16:41:53 (1)** | 201:18,24 204:9 | **17:06:34 (1)** | **17:14:33 (1)** |
| 203:15 | 208:1 | 211:4,22 217:9,13 | 215:1 | 219:15 |
| **16:34:55 (1)** | **16:42:10 (1)** | **17 (22)** | **17:06:51 (1)** | **17:15:02 (1)** |
| 203:20 | 208:5 | 36:7,11,12,13 37:2 | 215:5 | 219:20 |
| **16:35:09 (1)** | **16:42:26 (1)** | 42:9 56:1,8 63:10 | **17:07:17 (1)** | **17:15:25 (1)** |
| 203:25 | 208:10 | 63:18 64:17 198:23 | 215:10 | 219:25 |
| **16:35:10 (1)** | **16:42:44 (1)** | 198:24 199:2,5,6 | **17:07:34 (1)** | **17:15:30 (1)** |
| 204:1 | 208:15 | 200:24 202:13 | 215:15 | 220:1 |
| **16:35:35 (1)** | **16:42:55 (1)** | 204:1 234:20 235:1 | **17:07:46 (1)** | **17:15:39 (1)** |
| 204:5 | 208:20 | 235:18 | 215:20 | 220:5 |
| **16:36:04 (1)** | **16:43:15 (1)** | **17:00:10 (1)** | **17:08:00 (1)** | **17:15:52 (1)** |
| 204:10 | 208:25 | 211:10 | 215:25 | 220:10 |
| **16:36:28 (1)** | **16:43:20 (1)** | **17:00:34 (1)** | **17:08:05 (1)** | **17:16:07 (1)** |
| 204:15 | 209:1 | 211:15 | 216:1 | 220:15 |
| **16:36:37 (1)** | **16:43:33 (1)** | **17:00:47 (1)** | **17:08:20 (1)** | **17:16:42 (1)** |
| 204:20 | 209:5 | 211:20 | 216:5 | 220:20 |
| **16:37:01 (1)** | **16:43:48 (1)** | **17:01:02 (1)** | **17:08:41 (1)** | **17:17:02 (1)** |
| 204:25 | 209:10 | 211:25 | 216:10 | 220:25 |
| **16:37:05 (1)** | **16:44:04 (1)** | **17:01:03 (1)** | **17:08:56 (1)** | **17:17:04 (1)** |
| 205:1 | 209:15 | 212:1 | 216:15 | 221:1 |
| **16:37:22 (1)** | **16:44:14 (1)** | **17:01:21 (1)** | **17:09:09 (1)** | **17:17:14 (1)** |
| 205:5 | 209:20 | 212:5 | 216:20 | 221:5 |
| **16:37:37 (1)** | **16:44:28 (1)** | **17:01:31 (1)** | **17:09:31 (1)** | **17:17:33 (1)** |
| 205:10 | 209:25 | 212:10 | 216:25 | 221:10 |
| **16:37:53 (1)** | **16:44:29 (1)** | **17:01:43 (1)** | **17:09:33 (1)** | **17:17:55 (1)** |
| 205:15 | 210:1 | 212:15 | 217:1 | 221:15 |
| **16:37:57 (1)** | **16:44:41 (1)** | **17:02:07 (1)** | **17:09:38 (1)** | **17:18:07 (1)** |
| 205:20 | 210:5 | 212:20 | 217:5 | 221:20 |
| **16:38:30 (1)** | **16:44:53 (1)** | **17:02:35 (1)** | **17:10:20 (1)** | **17:18:31 (1)** |
| 205:25 | 210:10 | 212:25 | 217:10 | 221:25 |
| **16:38:32 (1)** | **16:45:12 (1)** | **17:02:40 (1)** | **17:10:46 (1)** | **17:18:34 (1)** |
| 206:1 | 210:15 | 213:1 | 217:15 | 222:1 |
| **16:39:00 (1)** | **16:45:21 (1)** | **17:03:02 (1)** | **17:11:01 (1)** | **17:18:46 (1)** |
| 206:5 | 210:20 | 213:5 | 217:20 | 222:5 |
| **16:39:16 (1)** | **16:59:25 (1)** | **17:03:25 (1)** | **17:11:28 (1)** | **17:18:59 (1)** |
| 206:10 | 210:25 | 213:10 | 217:25 | 222:10 |
| **16:39:38 (1)** | **16:59:26 (1)** | **17:03:50 (1)** | **17:11:35 (1)** | **17:19:33 (1)** |
| 206:15 | 211:1 | 213:15 | 218:1 | 222:15 |
| **16:39:57 (1)** | **16:59:50 (1)** | **17:04:11 (1)** | **17:12:01 (1)** | **17:20:02 (1)** |
| 206:20 | 211:5 | 213:20 | 218:5 | 222:20 |
| **16:40:06 (1)** | **163 (49)** | **17:04:29 (1)** | **17:12:24 (1)** | **17:20:26 (1)** |
| 206:25 | 11:10,17 12:5 13:4,6 | 213:25 | 218:10 | 222:25 |
| **16:40:11 (1)** | 13:20 14:7,16,24 | **17:04:34 (1)** | **17:12:50 (1)** | **17:20:29 (1)** |
| 207:1 | 15:4 35:2 50:22 | 214:1 | 218:15 | 223:1 |
| **16:40:29 (1)** | 51:10 52:14 109:19 | **17:04:48 (1)** | **17:13:21 (1)** | **17:20:47 (1)** |
| 207:5 | 149:2,24 150:4,6,10 | 214:5 | 218:20 | 223:5 |
| **16:40:48 (1)** | 150:17 151:2,21 | **17:05:13 (1)** | **17:13:42 (1)** | **17:21:09 (1)** |
| 207:10 | 156:15,16 157:23 | 214:10 | 218:25 | 223:10 |
| **16:41:15 (1)** | 158:14,18 159:2,18 | **17:05:30 (1)** | **17:13:43 (1)** | **17:21:29 (1)** |

Highly Confidential - Attorneys' Eyes Only

223:15
**17:21:50 (1)**
223:20
**17:22:19 (2)**
223:25 224:1
**17:22:28 (1)**
224:5
**17:22:56 (1)**
224:10
**17:23:23 (1)**
224:15
**17:23:38 (1)**
224:20
**17:24:06 (1)**
224:25
**17:24:09 (1)**
225:1
**17:24:19 (1)**
225:5
**17:24:57 (1)**
225:10
**17:25:16 (1)**
225:15
**17:25:38 (1)**
225:20
**17:26:03 (1)**
225:25
**17:26:07 (1)**
226:1
**17:26:27 (1)**
226:5
**17:27:10 (1)**
226:10
**17:27:35 (1)**
226:15
**17:28:23 (1)**
226:20
**17:28:51 (1)**
226:25
**17:28:55 (1)**
227:1
**17:29:33 (1)**
227:5
**17:29:57 (1)**
227:10
**17:30:18 (1)**
227:15
**17:30:37 (1)**
227:20
**17:30:58 (1)**
227:25
**17:31:15 (1)**
228:1
**17:31:32 (1)**

228:5
**17:31:56 (1)**
228:10
**17:32:24 (1)**
228:15
**17:32:46 (1)**
228:20
**17:32:59 (1)**
228:25
**17:33:05 (1)**
229:1
**17:33:24 (1)**
229:5
**17:33:45 (1)**
229:10
**17:34:00 (1)**
229:15
**17:34:18 (1)**
229:20
**17:34:51 (1)**
229:25
**17:34:53 (1)**
230:1
**17:35:24 (1)**
230:5
**17:35:41 (1)**
230:10
**17:36:01 (1)**
230:15
**17:36:18 (1)**
230:20
**17:36:32 (1)**
230:25
**17:36:39 (1)**
231:1
**17:36:57 (1)**
231:5
**17:37:12 (1)**
231:10
**17:37:31 (1)**
231:15
**17:37:47 (1)**
231:20
**17:38:02 (1)**
231:25
**17:38:03 (1)**
232:1
**17:38:12 (1)**
232:5
**18 (10)**
127:15 216:25 217:4
  223:3 226:25,25
  230:2,2 234:22
  235:20

**1846 (1)**
6:5
**188 (1)**
235:17
**19 (17)**
145:23 162:18 171:11
  171:12 172:2,12
  173:2,4,5 174:12
  202:12,13 226:3,6
  226:10,11 235:21
**1973 (3)**
22:13,15,22
**198 (1)**
235:18
**1984 (1)**
7:9

---

**2**

**2 (39)**
15:7,8,11,17 18:12,18
  19:1 20:18 36:25
  50:16 54:13,19
  75:15,17,20 82:13
  82:19 84:2,2,4,4
  91:22 94:13 98:12
  106:7 118:4,4,9
  157:21 188:23
  189:18,21 200:23
  218:18 226:22,23
  234:17,22 236:5
**2A (3)**
227:13,18,25
**2B (4)**
204:10 230:1,14,23
**2C (2)**
230:1,24
**2-by (2)**
211:14 212:3
**2-by-2 (4)**
211:11,14 214:1,12
**2.1 (6)**
39:12,18,21 40:2,13
  41:17
**2.2 (6)**
39:12,18,21 40:3,13
  41:17
**2.3 (1)**
41:2
**2:33 (2)**
148:18,20
**2:47 (2)**
148:20,23
**20 (16)**
52:7,11 68:9 95:9

112:15,19,20 113:2
  113:2,6 115:10,14
  115:16 116:2,4
  189:18
**20th (1)**
52:18
**20-point (1)**
154:19
**2002 (1)**
80:21
**2003 (1)**
83:22
**2006 (1)**
80:21
**2007 (10)**
25:12,16 26:13 28:17
  28:20,23 29:2,4,14
  29:20
**2010 (2)**
188:23 189:21
**2010.3.2 (1)**
188:23
**2011 (6)**
9:7 52:11,18 80:9,16
  81:2
**20112 (1)**
233:21
**2012 (7)**
1:19 2:1 5:2,14 9:8
  232:18 236:2
**203880 (4)**
189:14,18,19 190:21
**203937 (4)**
191:4 196:3,14
  197:11
**217 (1)**
235:20
**226 (1)**
235:21
**230 (1)**
231:19
**24 (3)**
70:12 103:22 130:18
**25 (1)**
121:4
**266 (4)**
52:24,25 53:17 54:4
**274 (1)**
151:7
**28 (3)**
70:22 71:1 113:2

---

**3**

**3 (77)**

17:15,17,21 18:2,7
  20:18 37:1 38:9,18
  42:9 68:16 73:12,16
  73:20,21,23 74:2,7
  74:10,12,17 75:8,16
  75:18,19,20 76:4,9
  76:10,16,19,23 77:2
  77:5,10,13,18,22
  78:3,9,12,15,18,22
  79:4,9,16 80:8,14
  80:25 81:7,9,23
  82:20 83:19 91:22
  91:24 92:1,4 93:11
  94:3,14 96:6,11,17
  98:6,8,8,12 106:11
  114:18 169:19
  188:23 228:10
  234:20 235:7 236:6
**3-3 (2)**
70:6 235:3
**3-4 (2)**
70:6 235:3
**3:22 (2)**
169:20,21
**3:34 (2)**
169:21,24
**30 (1)**
56:3
**30A (1)**
115:25
**30B (2)**
115:11,25
**300 (4)**
227:17 228:2,9,13
**305 (1)**
52:9
**3070 (7)**
112:20 113:5,6
  115:11,17 116:3,6
**31 (8)**
114:13,14 115:10,16
  116:2,6 121:13
  205:13
**3103 (3)**
112:23 113:2,8
**3105 (1)**
113:9
**32 (4)**
114:21 129:20,21
  205:4
**33 (3)**
118:3,9,9
**34 (1)**
234:23

Highly Confidential - Attorneys' Eyes Only

**340 (3)**
230:17,22,22
**349 (4)**
217:7,11 226:5,12
**35 (3)**
53:6,24 71:5
**36 (2)**
204:2 235:1
**36-tile (1)**
207:9
**3914-5 (1)**
171:16
**3923 (4)**
168:5,11,12,16

**—— 4 ——**

**4 (45)**
1:19 5:2,14 18:11,13
18:18 20:18 37:1
71:1 76:15,19,20
86:2 91:23 92:3,20
92:21,23 93:14,14
93:14,15 94:2,13,17
96:6,10,19 111:20
140:2,3,11,15,21
169:23 204:1
205:22 206:2 223:2
225:12 232:8,8
234:22 235:13
236:2
**4-by-4 (1)**
216:6
**4:45 (2)**
210:21,23
**4:59 (2)**
210:23,24
**40 (1)**
69:4
**400 (2)**
68:8,12
**42 (5)**
133:10,13,14,15,16
**421 (2)**
197:6,10
**425 (1)**
3:5
**43 (1)**
113:6
**46 (1)**
146:13
**47 (3)**
142:1,13 146:14
**48 (1)**
146:13

**49273 (1)**
1:24

**—— 5 ——**

**5 (50)**
2:1 18:25 19:4 20:8
20:18 33:2 34:17
76:22 77:2,3 86:4
91:23 92:3,17,18,20
92:21,23 93:14,14
93:15 94:2,13,18
112:6 140:18,20
145:5,12 166:18
168:16,18 170:11
170:13,17 171:16
172:8 173:16
174:11 179:2,10,16
179:16,18 211:4
215:2 234:15,23
235:15
**5A (9)**
171:16,22 175:19
176:1 179:10,13
180:17,18 181:20
**5B (2)**
176:20,21
**5th (1)**
233:21
**5(a) (10)**
164:25 165:12 166:3
166:8,10,18 167:1
168:5,17 170:3
**5:38 (2)**
232:9,10
**50 (29)**
19:7,10,11 68:8,9
149:6 150:12
156:17 161:22
162:6,20 166:12
168:13 170:17,23
172:4 173:7,18
175:3 177:1 178:25
179:21,25 182:25
184:1 204:9 205:2
213:5 226:14
**51 (1)**
3:22
**53 (2)**
191:3,4
**555 (1)**
3:15
**56 (2)**
111:20 112:6

**—— 6 ——**

**6 (29)**
20:8,8,9,18 33:3 36:3
36:7,13,23 37:2
38:18 56:1,6,7,10
56:15 58:14,19
59:14 77:5,10,14,20
112:15 129:15
130:18 230:18
234:6 235:1
**6-by-6 (5)**
200:19 201:3,5,8
204:20
**60 (2)**
68:24 69:3
**60/40 (1)**
68:24
**630 (1)**
6:6

**—— 7 ——**

**7 (27)**
20:10,10,19,22 56:7
70:3,7,12,15,22
77:5,10 78:9,13
88:7,8 133:17
198:23 199:3,5,6,6
199:7 204:1 205:23
235:3,18
**7,844,915 (4)**
234:16,19,24 235:12
**7,853,891 (1)**
234:25
**7,864,16 (1)**
234:19
**7,864,163 (3)**
234:16,24 235:16
**70 (2)**
146:24 235:3
**72 (3)**
197:5,7 235:5
**74 (1)**
235:7
**747 (1)**
5:18
**75 (2)**
15:20 52:24
**755 (2)**
2:6 5:13
**77 (1)**
151:3
**78 (1)**
151:6

**—— 8 ——**

**8 (59)**
20:21 63:10,16 72:2,3
72:8,11,18 73:8
76:1,11 77:13,19
78:4,5,17,20,21
79:12,17 91:23 92:3
92:17,18,20,21,23
93:14,15 94:2,13,18
103:8,16,18 106:16
107:15,19 108:3,9
110:2,4,13,13
115:16 116:1,2,10
116:14,14 117:9
127:14 130:14,19
217:2 218:18
222:21 235:5,20
**8:57 (3)**
2:2 5:3,15
**80 (4)**
7:23 8:4,8 68:12
**83 (1)**
235:9
**86 (1)**
52:9
**865 (1)**
4:4
**88cm (1)**
78:15
**891 (2)**
34:23 35:4

**—— 9 ——**

**9 (12)**
20:11 63:11 64:16
74:2,3,7,9,10 77:22
78:3 133:14 235:7
**9-segment (1)**
228:5
**90017 (1)**
4:5
**915 (56)**
11:9,17 12:4 13:3,6
13:20 14:7,16,23
15:4 34:24 50:22
51:9 52:23 53:14
56:1 70:11 71:4
73:11 74:14 81:10
81:18 82:16 90:5
92:5,9,12 93:3,18
94:4 102:12 103:2,6
103:9 104:6 106:16
107:1,1,16 109:20
111:20 113:24

116:10 121:7
129:19 130:3,7,12
139:14,18,23
142:21 144:21
150:7,10 156:14
**94065 (1)**
3:16
**94105 (1)**
3:6
**95 (1)**
235:11

TSG Reporting - Worldwide    877-702-9580