Exhibit 23

FILED UNDER SEAL

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>       Plaintiff,<br><br>   vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>       Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**EXPERT REPORT OF WOODWARD YANG REGARDING THE INFRINGEMENT OF U.S. PATENT NOS. US 7,577,460, US 7,456,893, US 7,698,711 AND US 7,079,871** |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    QUALIFICATIONS ...............................................................................................1

III.   COMPENSATION .................................................................................................3

IV.    OVERVIEW OF OPINIONS .................................................................................3

V.     CLAIM CONSTRUCTION AND INFRINGEMENT .........................................5

VI.    BACKGROUND OF PATENTED TECHNOLOGY ...........................................7

VII.   U.S. PATENT NO. 7,577,460 .............................................................................10

       A.     Infringement of U.S. Patent No. 7,577,460 ............................................12

       B.     Response to Apple's Non-Infringement Contentions as to the '460 Patent...........13

VIII.  U.S. PATENT NO. 7,456,893 .............................................................................15

       A.     Infringement of U.S. Patent No. 7,456,893 ............................................17

       B.     Response to Apple's Non-Infringement Contentions as to the '893 Patent...........18

IX.    U.S. PATENT NO. 7,698,711 .............................................................................20

       A.     Infringement of U.S. Patent No. 7,698,711 ............................................22

       B.     Response to Apple's Non-Infringement Contentions as to the '711 Patent...........23

X.     U.S. PATENT NO. 7,079,871 .............................................................................24

       A.     Infringement of U.S. Patent No. 7,079,871 ............................................25

       B.     Response to Apple's Non-Infringement Contentions as to the '871 Patent...........26

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

Apple.  In 2011, it was widely publicized that approximately 25% of the iPhone 4's hardware is purchased from Samsung.  In 2012, Apple began selling its newest iPad, the iPad HD, using Samsung's touchscreen technology.

## VII.   U.S. PATENT NO. 7,577,460

41.   The '460 patent application was filed on July 26, 2006 and issued on August 18, 2009, but claims priority to a Korean application filed on March 31, 1999.  The '460 patent is directed to the convergence of three digital technologies—e-mail, digital telephony, and digital photography—on a single device.  In particular, the patent is directed to the performance of three core functions on the device:  (i) transmitting an email displaying a message only (i.e., without any image); (ii) transmitting an email displaying an image and a message; and (iii) displaying images stored on the device in sequence.  As set forth in the background of the invention:  "A user can therefore photograph an object or images as needed in business and store the photographs on the device.  The MVP (mobile video phone) may also function as a radio transmitter and therefore the user can transmit/receive a desired image without logging into a personal computer (PC)."

42.   Claim 1 of the '460 patent claims the performance of these three core functions through performance of a five step method.  Using 1999 terminology, the preamble of claim 1 specifies that this claimed method is a "data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera."  However, today in 2012, this preamble can now be more easily described as a data transmitting method for a camera phone.  The preamble further specifies that this claimed method "comprises the following steps."  I am informed that "comprises" is open-ended transitional language, meaning that infringement requires proof of each of the claimed steps.

43.   Claim 1 next describes the performance of the three core functions of a camera phone in five steps (i.e. steps one through five can be found in the '460 patent in column 14; line 27, line 31, line 36, line 38, and line 41, respectively).  Although performance of these steps in the recited sequence would certainly infringe the patent, I do not understand claim 1 to require

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

that these five claimed steps be performed in sequence.  Rather, I understand the patent to permit the performance of the three claimed, core functions in any sequence.  Notably, unlike claim 1 of the '893 patent (which is discussed below), the preamble of claim 1 of the '460 patent does ***not*** specify that the claimed method "consist[s] of the *sequential* steps."

44.     Steps one (line 27) and four (line 38) of claim 1 describe transmitting an email with a message only.  I understand the patent to require logically the performance of step one before the performance of step four.  Specifically, step one of claim 1 requires the device to enter a specific user state (i.e. a "sub-mode") for sending text (i.e. non-image email).  In this specific user state, the device is able to receive incoming phone calls and otherwise performs like a regular portable phone.  Step four of claim 1 clearly implies that the device in this first sub-mode also has a user interface for inputting the address of the receiving party and the text message, such that the email can actually be transmitted.

45.     Steps two (line 31) and five (line 41) of claim 1 describe an alternative method for transmitting an email with a message and an image.  I understand the patent to require logically the performance of step two before the performance of step five.  Specifically, step two requires that the device enter a second, different specific user state (i.e. "second E-mail transmission sub-mode") for sending email with an image.  In this second, different state, or "second sub-mode," the device should allow the display of the most recently captured image from the camera mode.  Step two further requires that this second e-mail transmission state is entered through a display sub-mode, in which previously captured and/or stored images can be displayed.  Step five of claim 1 requires transmitting an email with an image in the second sub-mode.  Similar to step four, step five implies that the device in this second sub-mode also has a user interface for inputting the address of the receiving party and the text message.  However, step five also requires that the image displayed also be included in the email that is finally transmitted

46.     Step three of claim 1 (line 36) describes a third core function of a camera phone: sequentially displaying the images stored on the device.  This is an important core function for

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

the device since it enables a user to sequentially browse and select previously captured or other images stored in memory using scroll keys for convenient subsequent email transmission.

A.  **Infringement of U.S. Patent No. 7,577,460**

47.     I understand that Apple manufactures, sells, offers for sale and/or imports the iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, and iPod Touch (4th Generation).  It is my opinion that these products infringe claim 1 of the '460 patent.  These '460 Accused Devices include each and every element recited in claim 1, either literally or equivalently.  My detailed analysis of how these products infringe claim 1 of the '460 patent is provided in **Exhibit 1** to this Report.

48.     Notably, with respect to the infringing features of the '460 Accused Devices, I understand from Apple's interrogatory responses that iOS version 4 software produced by Apple in this case is representative of all commercially released versions of iOS 4 software, namely 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5.  I further understand that, for these infringing features, iOS version 5 software produced by Apple in this case is representative of iOS 5.0 and 5.0.1 software.  I understand that, with respect to the infringing features of the '460 Accused Devices, there are no material differences between commercially released versions of iOS 4 software and that there are no material differences between commercially released versions of iOS 5.0 and 5.0.1 software.  Finally, based on Apple's interrogatory responses, I understand that the relevant software and corresponding source code of all commercially released versions of iOS 4 software have been available and are the same on all '460 Accused Products, with the exception of the iPhone 4S, and that all commercially released versions of iOS 5 software have been available and are the same on all '460 Accused Products.

49.     Therefore, it is my understanding that my infringement analysis applies with equal force and relevance for all '460 Accused Products.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

## B.  Response to Apple's Non-Infringement Contentions as to the '460 Patent

50.     I have reviewed Apple's contentions that its devices do not practice the '460 patent, as set forth in Apple's Supplemental Objections and Responses to Samsung's First Set of Interrogatories (No. 12), dated March 8, 2012.  In my opinion, Apple's contentions do not establish non-infringement of the '460 patent.

51.     Apple first contends that its accused devices do not infringe claim 1 of the '460 patent because they do not practice the "modes" and "sub-modes" recited by the claims.  In particular, Apple contends that the accused devices do not practice a "first E-mail transmission sub-mode," a "second E-mail transmission sub-mode," a "portable phone mode," a "camera mode," or a "display sub-mode."  Rather, according to Apple, the accused devices run "separate programs referred to as 'apps' that allow a user to capture, display and email images, and send email messages (Camera, Photos and Mail apps)."

52.     Although Apple does not attempt to explain how a person of ordinary skill in the art would understand the term "mode" or "sub-mode" in claim 1 of the '460 patent, it is clear to me that Apple is employing an unduly restrictive understanding of the terms.  Specifically, Apple suggests that the '460 Accused Devices use "apps," which is irreconcilable with a device that uses modes or sub-modes.  For a person of ordinary skill in the art, however, the terms "mode" and "sub-mode" are not so narrow.  Rather, a "mode" generally describes a specific user state in which certain functions are available to a user.  Furthermore, a "sub-mode" describes another set of functions which might be available upon subsequent selection to enter a "sub-mode" from the current "mode."  Thus, claim 1 of the '460 patent is directed to two distinct ways in which e-mail transmission is available, i.e., a "first E-mail transmission sub-mode" and a "second E-mail transmission sub-mode."  The claim further specifies that the "first E-mail transmission sub-mode" can be accessed within a "portable phone mode" (i.e., in which portable phone functions are available), while the "second E-mail transmission sub-mode" can be accessed within a "display sub-mode" (i.e., in which image display functions are available).  In turn, this "display

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

sub-mode" is also accessible from within the "portable phone mode."  As set forth in Exhibit 1 to this report, the '460 Accused Devices practice the modes required by claim 1 of the '460 patent.

53.     Next, in order to avoid Samsung's allegations of indirect infringement, Apple contends that "Samsung's infringement contentions fail to allege any facts suggesting that Apple intended to induce others to infringe the '460 patent, that Apple intended for users to carry out the steps described in the infringement contentions, or that any users would actually carry out those steps (which, in any event, would not constitute direct infringement)."

54.     To support these contentions, Apple interprets Samsung's infringement contentions as asserting infringement *only* if the required steps of claim 1 are performed in the recited sequence.  As an initial matter, it is my opinion that Apple's devices can perform the claimed steps in the recited sequence.  In point of fact, however, I do not understand that the steps in Claim 1 of the '460 Patent must be performed in sequence in order to infringe.

55.     Indeed, an interpretation of Claim 1 that restricted it to requiring sequential performance of steps would be inconsistent with the invention disclosed by the '460 patent.  I am further informed that, absent restrictive claim language or other restrictions in the specification or prosecution history of a patent, method claims generally do *not* require the performance of the claimed steps in the recited sequence.  I have reviewed the claims, specification, and prosecution history of the '460 patent for an indication that claim 1 should be limited to sequential performance of steps.  In my opinion, nothing in the intrinsic record of the '460 patent restricts performance of the three claimed functionalities of claim 1 to the recited sequence.

56.     In fact, this requirement would be inconsistent with a person of ordinary skill in the art's understanding of the '460 patent.  Rather, the figures and specification of the patent disclose the option for a user to send an email through either of two sub-modes.  In the first sub-mode, the device enters the first sub-mode and transmits an email message without an image.  In the second sub-mode, the device transmits an email message displaying an image.  Nowhere in the figures or elsewhere in the '460 patent does the patent suggest that these two modes of transmission must be performed at the same time.  Thus, the specification of the '460 patent does

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

not, as Apple alleges, require a user "to run and switch between two or three different applications at once in order to send two email messages at the same time."

## VIII.   U.S. PATENT NO. 7,456,893

57.     The '893 patent application was filed on June 27, 2005 and issued on November 25, 2008, but claims priority to a Korean application filed on March 15, 2005.  The '893 patent is directed to a method and apparatus for "bookmarking" an image in a digital photo album.  The claimed invention for controlling a digital image processing system returns a user to the same bookmarked image in a digital image photo album even after capturing new images.  The invention marks a departure from the default mode on digital cameras practiced in the art, which always returned a user to the last image captured upon returning to a digital photo album.  This default mode resulted in users losing their place in a digital image photo album, forcing the user to tediously flip back to their place in a digital image photo album.  As explained in the Background of the Invention: "…when a user temporarily switches from the stored-image display mode to another operating mode (e.g., a photographing mode), the user has to again sequentially display files that were already displayed to find his or her most recently viewed stored image."  The invention of the '893 was to enable the user of a camera-phone to quickly and conveniently find "his or her most recently viewed stored image," even after switching between the viewing and photographing modes.

58.     Claim 1 of the '893 patent is a method claim directed to this digital bookmarking feature.  Using 1999 terminology, the preamble of claim 1 requires performance of a "method of controlling a digital image processing apparatus that, in a photographing mode, processes and stores an input image in a recording medium and, in a reproduction mode, displays at least one image file of a plurality of image files that are stored in the recording medium, the method consisting of the sequential steps."  Today in 2012, however, this preamble is best understood as requiring a single device that can photograph and display images and store a plurality of images.  I further understand that the single device performs the claimed method in a sequence of six steps, labeled (a) through (f).

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

DATED:  March 22, 2012          Respectfully submitted,

Woodward Yang

# EXHIBIT 1

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

<u>Expert Report of Woodward Yang – Exhibit 1A-1</u>

**INFRINGEMENT OF U.S. PATENT NO. 7,577,460**

| Asserted Claim | Evidence of Infringement |
|---|---|
| A data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera, comprising the steps of: | Each Accused Device is a camera phone.  It has a camera function and a portable phone function, and can function as both.<br><br>User manuals for the Accused Devices indicate that the devices have integrated cameras and have both a camera function and a portable phone function.[1]<br><br> |
| entering a first E-mail transmission sub-mode upon | Each Accused Device awaits an incoming phone call in the portable phone mode (i.e., home active screen).  From the portable phone mode, a user can enter a first e-mail transmission sub-mode by |

---

[1]   See, e.g., Ex. 6; http://www.apple.com/uk/iphone/features/ (last accessed March 21, 2012).

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| | |
|---|---|
| user request for E-mail transmission while operating in a portable phone mode, the first e-mail transmission sub-mode performing a portable phone function; | selecting the Mail app and further sub-selecting to compose an email to send (i.e., compose email active screen).[2]  In portable phone mode, the Accused Devices can continue to receive a call or FaceTime request.<br><br>User manuals for the Accused Devices reflect that each Accused Device has a first e-mail transmission sub-mode.[3]<br><br>Furthermore, source code for the Accused Devices reflects a first email transmission sub-mode within Mail app.[4] |
| entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second e-mail transmission sub-mode displaying an image most recently captured in a camera mode; | Each Accused Device has a second, different email transmission sub-mode within Photos app that permits sending email with an image.[5]  The Photos app is a display sub-mode that can display the image most recently captured in a camera mode.<br><br>Alternately, yet another second email transmission sub-mode can be entered through the Camera app, which will display an image most-recently captured and can be sub-selected for sending email with an image.[6]<br><br>User manuals for the Accused Devices reflect that each Accused Device has a second e-mail transmission sub-mode.[7]<br><br>Furthermore, source code for the Accused Devices reflects a second email transmission sub-mode within Photos app.[8] |

---

[2]  See, e.g., Ex. 1A-2, step one.

[3]  See, e.g., Ex. 6.

[4]  See, e.g., APLNDC-WH-SC0000007930, 7990-7994, 9559-9586, 9606-9635, 9683-9778, 9795-9810, 9779-9787, 9857-9898, 9907-9921, 9935-9940, 9948-9987, 9999-10001, 10052-10090, 10108-10125, 10091-10100.

[5]  See, e.g., Ex. 1A-2, step two.

[6]  See, e.g., Ex. 1A-2, step two.

[7]  See, e.g., Ex. 6.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| | |
|---|---|
| sequentially displaying other images stored in a memory through the use of scroll keys; | Each Accused Device can sequentially display images stored in memory through the use of scroll keys or swiping within the display sub-mode (i.e., Photos app active screen) or camera sub-mode (i.e., Camera app active screen).[9] |
| | User manuals for the Accused Devices reflect that each Accused Device sequentially displays stored images through use of scroll keys or swiping.[10] |
| | Use of swiping on iPhone 4S is insubstantially different from use of scroll keys.[11]  Under the doctrine of equivalents, swiping meets this claim element.  Source code for the Accused Devices reflect that the differences between use of scroll keys and swiping are insubstantial.[12] |
| transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode; | Each Accused Device sends email from within the first email transmission mode (text email) to the addressee and with the message when the send button is actuated.[13] |
| | Source code for the Accused Devices reflects the transmission of an email in the first email transmission mode.[14] |
| and transmitting the address of the other party and the message | Each Accused Device sends email from within the second email transmission mode (image email) |

---

[8]   See, e.g., APLNDC-WH-SC000000235-247, 7653-7674, 7675-7694, 7628-7652, 7626-7627, 7623-7625, 7462-7508, 7459-7461, 7320-7369, 7370-7419, 7420-7431, 9779-9787, 10091-10100.

[9]   See, e.g., Ex. 1A-2, step three.

[10]   See, e.g., Ex. 6.

[11]   See, e.g., Ex. 1A-2, step three.

[12]   See, e.g., APLNDC-WH-SC00000079-126.

[13]   See, e.g., Ex. 1A-2, step four.

[14]   See, e.g., APLNDC-WH-SC0000007930, 7990-7994, 9559-9586, 9606-9635, 9683-9778, 9795-9810, 9779-9787, 9857-9898, 9907-9921, 9935-9940, 9948-9987, 9999-10001, 10052-10090, 10108-10125, 10091-10100.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

| | |
|---|---|
| received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode. | to the addressee and with the message and image when the send button is actuated.[15]<br><br>Source code for the Accused Devices reflects the transmission of an email in the second email transmission mode.[16] |

---

[15]  See, e.g., Ex. 1A-2, step five.

[16]  See, e.g., APLNDC-WH-SC000000235-247, 7653-7674, 7675-7694, 7628-7652, 7626-7627, 7623-7625, 7462-7508, 7459-7461, 7320-7369, 7370-7419, 7420-7431, 9779-9787, 10091-10100.

**Expert Report of Woodward Yang – Exhibit 1A-2**

**INFRINGEMENT OF U.S. PATENT NO. 7,577,460**

| Claim 1 |
|---|
| Preamble |

 →     

| Each Accused Device functions as a camera. | Each Accused Device also functions as a phone. |
|---|---|

1

**Step one**





The Accused Devices can continue to receive a call or FaceTime request.

**Step two**

Example 1:





Example 2:



**Step three**

Example 1:

Example 2:

**Step four**



**Step five**