Exhibit 30

FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC.,  a California corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 11-cv-01846-LHK |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD., a | § | |
| Korean corporation; SAMSUNG | § | |
| ELECTRONICS AMERICA, INC., a New | § | |
| York corporation; and SAMSUNG | § | |
| TELECOMMUNICATIONS AMERICA, | § | |
| LLC, a Delaware limited liability company, | § | |
| | § | |
| Defendants. | § | |

## EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA

### PART B

## I.    EXAMINATION OF U.S. PATENT D593,087

1.    The D'087 patent is titled "Electronic Device" and was issued on May 26, 2009 to Andre et al.  See Exhibit B I.1

2.    The D'087 patent claims six (6) embodiments.

3.    In the table below, I examine the Figures of the D'087 patent.

# Table B I

## EXAMINATION OF U.S. PATENT D593,087

| Description | Claimed Design | Exhibit Reference |
|---|---|---|
| Fig. 1 is a front perspective view of an electronic device in accordance with the present invention; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 2 is a rear perspective view of the electronic device in Fig. 1; |  | Nothing is claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 3 is a front view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 4 is a rear view thereof; |  | Nothing is claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 5 is a top view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 6 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 7 is a left side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 8 is a right side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |

| Fig. 9 is a front perspective view of another embodiment of an electronic device in accordance with present invention; |  | For an enlargement of this image, see Exhibit B I.1. |
|---|---|---|
| Fig. 10 is a rear perspective view of the electronic device in figure 9 |  | Nothing is claimed in this field.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 11 is a front view thereof; |  | For an enlargement of this image, see Exhibit BI.1. |
| Fig. 12 is a rear view thereof; |  | Nothing is claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 13 is a top view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 14 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 15 is a left side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 16 is a right side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 17 is a front perspective view of another embodiment of an electronic device in accordance with the present invention; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 18 is a rear perspective view of the electronic device in figure 17; |  | Nothing claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |

3

| | | |
|---|---|---|
| Fig. 19 is a front view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 20 is a rear view thereof; |  | Nothing is claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 21 is a top view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 22 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 23 is a left side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 24 is a right side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 25 is a front perspective view of another embodiment of an electronic device in accordance with the present invention; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 26 is a rare perspective view of the electronic device in figure 25; |  | Nothing is claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 27 is a front view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 28 is a rear view thereof; |  | Nothing is claimed in this view.  For an enlargement of this image, see Exhibit B I.1. |
| Fig. 29 is a top view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |

| Fig. 30 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
|---|---|---|
| Fig. 31 is a left side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 32 is a right side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 33 is a front perspective view of another embodiment of an electronic device in accordance with the present invention; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 34 is a rear perspective view of the electronic device in figure 33; |  | There is nothing claimed in this view. For an enlargement of this image, see Exhibit B I.1. |
| Fig. 35 is a front view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 36 is a rear view thereof; |  | There is nothing claimed in this view. For an enlargement of this image, see Exhibit B I.1. |
| Fig. 37 is a top view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 38 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 39 is a left side view thereof; |  | For an enlargement of this image, see Exhibit B I.1. |

| | | |
|---|---|---|
| Fig. 40 is a right side view thereof; | | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 41 is a front perspective view of another embodiment of the electronic device in accordance with the present invention; | | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 42 is a rear perspective view of the electronic device in figure 41; | | Nothing is claimed in this view. For an enlargement of this image, see Exhibit B I.1. |
| Fig. 43 is a front view thereof; | | For an enlargement of this image, see Exhibit BI.1. |
| Fig. 44 is a rear view thereof; | | Nothing is claimed in this view. For an enlargement of this image, see Exhibit B I.1. |
| Fig. 45 is a top view thereof; | | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 46 is a bottom view thereof; | | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 47 is a left side view thereof; and, | | For an enlargement of this image, see Exhibit B I.1. |
| Fig. 48 is a right side view thereof. | | For an enlargement of this image, see Exhibit B I.1. |

4.    The components and shapes claimed in the D'087 patent are old and well known.

Apple did not invent any of the following elements claimed in the D'087 patent:

6

4.1 a bezel that surrounds a rectangular product with four equally rounded corners;

4.2 a rectangle;

4.3 an oblong;

4.4 a circle.

5. Because the D'087 patent is merely a combination of well-known and very old elements, the most the D'087 patent may claim is that specific combination depicted in the drawings. However, as described below, my opinion that the accused products are not substantially similar to the D'087 is not dependent on the scope being limited to specific design drawings.

6. Since the D'087 patent has six embodiments, my subsequent infringement analysis will address the embodiment, that in my opinion, is closest to the accused product.

## II. EXAMINATION OF THE PRIOR ART

1. There is a plethora of prior art to the D'087 patent. In the table below, I present a single view of numerous prior art examples that an ordinary observer, with knowledge of the prior art, would be aware of.

| Table B II | |
|---|---|
| **EXAMINATION OF PRIOR ART TO U.S. PATENT D593,087** | |
| **Prior Art** | **My Comments** |
|  KR 30-0418547 For an enlargement of this image, see Exhibit B II.1. | This prior art example has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front planar face, a rectangle centered on the front face and a small oblong shape near the top edge that is centered horizontally on the front face. |



| | |
|---|---|
| JP D1285057<br>For an enlargement of this image, see Exhibit B II.2. | This prior art example has a rectangular form with four equally curved corners and a curved trim piece or bezel that covers a portion of the front face. |
| KR 30-0398307<br>For an enlargement of this image, see Exhibit B II.3. | This prior art example has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front face, a rectangle centered on the front face and a small oblong shape near the top edge that is centered horizontally on the front face. |
| KR 30-0452985<br>For an enlargement of this image, see Exhibit B II.4. | This prior art example has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front planar face, a rectangle centered on the front face and a small oblong shape near the top edge that is centered horizontally on the front face. |
| European Union RCD 000569157-0005<br>For an enlargement of this image, see Exhibit B II.5. | This prior art example has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front planar face, a rectangle centered on the front face and a small oblong shape near the top edge that is centered horizontally on the front face. |
| JP D1142127<br>For an enlargement of this image, see Exhibit B II.6. | This prior art example has a rectangular form with four equally curved corners combined with a rectangle centered on the front face. |



| | |
|---|---|
| JP D1250487<br>For an enlargement of this image, see Exhibit B II.7. | This prior art example has a rectangular form with four equally curved corners combined with curved edges on all four sides that form a trim piece or bezel that covers a portion of the front face. |
| JP D1280315<br>For an enlargement of this image, see Exhibit B II.8. | This prior art example has a rectangular form with four equally curved corners combined with a rectangle centered on the front face. |
| JP D1241383<br>For an enlargement of this image, see Exhibit B II.9. | This prior art example has a rectangular form with four equally curved corners combined with  a curved bezel that covers a portion of the front face and a rectangle centered on the front face. |
| KR 30-0304213<br>For an enlargement of this image, see Exhibit B II.10. | This prior art example has a rectangular form with four equally curved corners combined with a trim piece or bezel that covers a portion of the front face. |



| | This prior art example has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front face, a rectangle centered on the front face, and a small oblong shape near the top edge that is centered horizontally on the front planar face. |
|---|---|
| JP D1241638<br><br>For an enlargement of this image, see Exhibit B II.11 | |
| U.S. Patent D560,192<br><br>For an enlargement of this image, see Exhibit B II.12 | This prior art example has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front face, a rectangle centered on the front face, and a small oblong shape near the top edge that is off-centered horizontally on the front face. |

2.      It is obvious that each of the discrete elements disclosed in the D'087 patent are well known and have been used in some combinations in prior art phones or electronic devices.

     a.    For the remainder of this report, I will focus on two of these prior art references in comparison to the D'757 patent: (1) Korean Registered Design KR 30-0398307 registered to Bluebird Soft Co., Ltd. on November 7, 2005, and published on November 15, 2005; and (2) Japanese design patent ) JP D1241638 registered to Sharp Corporation on April 15, 2005, and published on June 6, 2005.

## III.    COMPARISON OF THE PRIOR ART WITH THE DESIGN CLAIMED IN U.S. PATENT D593,087

1.      I now compare the eight figures of one of the embodiments of the D'087 patent with corresponding views of KR Registered Design 30-0398307 in Table B III (a) and JP D1241638 in Table B III (b).

# Table B III (a)

### COMPARISON OF KR REGISTERED DESIGN 30-0398307
### PRIOR ART TO U.S. PATENT D593,087

| U.S. Patent D593,087 | KR Design 30-0398307 | My Comments |
|---|---|---|
| <br>Fig. 41 |  | In this view, the KR'307 design has a rectangular form with four equally curved corners combined with a curved trim piece or bezel that covers a portion of the front face and the same overall shape and proportions as the D'087 design. For an enlargement of these images, see Exhibit B III (a).1. |
| <br>Fig. 42 | NA | There is nothing claimed in this view of the D'087 patent.  Because no part of this view is claimed, nothing in this view should be compared. For an enlargement of these images, see Exhibit B III (a).2. |
| <br>Fig. 43 |  | In this view, the KR'307 design has a rectangular form with four curved corners with the same overall shape and proportions as the D'087 design. For an enlargement of these images, see Exhibit B III (a).3. |
| <br>Fig. 44 |  | There is nothing claimed in this view of the D'087 patent.  Because no part of this view is claimed, nothing in this view should be compared. For an enlargement of these images, see Exhibit B III (a).4. |

| | | |
|---|---|---|
| Fig. 45 | | In this view, the KR'307 design has sides that are a continuous curve that is tangent to the back plane and terminates as an edge at the trim piece or bezel.  It also has a trim piece or bezel with parallel top and bottom edges.  For an enlargement of these images, see Exhibit B III (a).5. |
| Fig. 46 | | In this view, the KR'307 design has sides that are a continuous curve that is tangent to the back plane and terminates as an edge at the trim piece or bezel.  It also has a trim piece or bezel with parallel top and bottom edges. For an enlargement of these images, see Exhibit B III (a).6. |
| Fig. 47 | | In this view, the KR'307 design has a form with ends that are a continuous curve that is tangent to the back plane and terminates as an edge at the trim piece or bezel.  It also has a trim piece or bezel with parallel edges.  For an enlargement of these images, see Exhibit B III (a).7. |
| Fig. 48 | | In this view, the KR'307 design has a form with ends that are a continuous curve that is tangent to the back plane and terminates as an edge at the trim piece or bezel.  It also has a trim piece or bezel with parallel edges.  For an enlargement of these images, see Exhibit B III (a).8. |

# Table B III (b)

## COMPARISON OF JP D1241638 PRIOR ART TO U.S. PATENT D593,087

| U.S. Patent D593,087 | JP D1241638 | My Comments |
|---|---|---|
| <br>Fig. 41 |  | In this view, the JP D1241638 design patent has a bezel/trim piece surrounding a clear rectangular front surface with rounded corners; an outline of a rectangle with sides that are close to but visibly separated from the outer rectangular shape and with top and bottom edges that are spaced further apart from the top and bottom edges of the clear rectangle; and a small oblong horizontally centered within the space from the top of the product to the top of the inner rectangle.  Because no part of the D'087 is claimed other than the front surface and bezel, only the front surface and bezel should be compared.  For an enlargement of these images, see Exhibit B III (b).1. |
| <br>Fig. 42 | NA | There is nothing claimed in this view of the D'087 patent.  Because no part of this view is claimed, nothing in this view should be compared.<br>For an enlargement of these images, see Exhibit B III (b).2. |

13

| | | |
|---|---|---|
|   Fig. 43 |  | In this view, the JP D1241638 design patent has a bezel/trim piece surrounding a clear rectangular front surface with rounded corners; an outline of a rectangle with sides that are close to but visibly separated from the outer rectangular shape and with top and bottom edges that are spaced further apart from the top and bottom edges of the clear rectangle; and a small oblong horizontally centered within the space from the top of the product to the top of the inner rectangle.  For an enlargement of these images, see Exhibit B III (b).3. |
|   Fig. 44 |  | There is nothing claimed in this view of the D'087 patent.  Because no part of the D'087 is claimed other than the front surface, nothing in this view should be compared.  For an enlargement of these images, see Exhibit B III (b).4. |
|   Fig. 45 |  | A front bezel/trim piece with curved sides is visible in this view of the JP D1241638 prior art.  Because no part of the D'087 is claimed other than the bezel/trim piece, only the bezel/trim piece should be compared.  For an enlargement of these images, see Exhibit B III (b).5. |
|   Fig. 46 |  | A front bezel/trim piece with curved sides is visible in this view of the JP D1241638 prior art.  Because no part of the D'087 is claimed other than the bezel/trim piece, only the bezel/trim piece should be compared.  For an enlargement of these images, see Exhibit B III (b).6. |



| | | A front bezel/trim piece with curved sides is visible in this view of the JP D1241638 prior art. Because no part of the D'087 is claimed other than the bezel/trim piece, only the bezel/trim piece should be compared. For an enlargement of these images, see Exhibit B III (b).7. |
| Fig. 47 | | |
| | | A front bezel/trim piece with curved sides is visible in this view of the JP D1241638 prior art. Because no part of the D'087 is claimed other than the bezel/trim piece, only the bezel/trim piece should be compared. For an enlargement of these images, see Exhibit B III (b).8. |
| Fig. 48 | | |

## IV. MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY ACE PRODUCT WITH U.S. PATENT D593,087

1. In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Galaxy Ace product.

2. In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

15

# Table B IV

## INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY ACE PRODUCT WITH U.S. PATENT D593,087



| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung Galaxy Ace Product |
|---|---|---|---|
| Fig. 41 | | | |

In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  There is a small rectangular element centered in the in the space below the bottom of the inner rectangle which is not found in the D'087 patent.  Because no part of the D'087 is claimed other than the bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B IV.1.

| | NA | NA | |
|---|---|---|---|
| Fig. 42 | | | |

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B IV.2.



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  There is a small rectangular element centered in the in the space below the bottom of the inner rectangle which is not found in the D'087 patent.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B IV.3.

Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B IV.4.

Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width and occupies nearly the entire height of the product.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IV.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is

narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width and occupies half the entire height of the product. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IV.6.



Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width and occupies nearly the entire width of the product. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IV.7.



Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that occupies nearly the entire width of the product and varies in width. There is also an oblong element within the bezel/trim piece that is not found in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.   For enlargement of these images, see Exhibit B IV.8.

3.      This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Galaxy Ace product leads me to conclude that:

3.1      there are substantial differences between the accused product and the design shown in the D'087 patent;

18

3.2   the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.3   an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Ace is substantially similar to the design depicted in the D'087 patent.

## V.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG INFUSE 4G (SGH-1997) PRODUCT WITH U.S. PATENT D593,087

1.   In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Galaxy Infuse 4G product.

2.   In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

| Table B V | | | |
|---|---|---|---|
| **INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY INFUSE 4G (SGH-1997) PRODUCT WITH U.S. PATENT D593,087** | | | |
| **U.S. Patent D593,087** | **KR Registered Design 30-0398307 Prior Art** | **JP D1241638 Prior Art** | **Accused Samsung Galaxy Infuse 4G Product** |
|  Fig. 41 |  |  |  |

In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Thus, the accused product has a



substantially different visual appearance than the D'087 design.   Because no part of the D'087 is claimed other than the bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B V.1.

Fig. 42

NA

NA

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B V.2.

Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them.  The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B V.3.

Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B V.4.

20



Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that occupies nearly the entire height of the product. There is also a circular element within the bezel/trim piece that is not found in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B V.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that occupies nearly the entire height of the product. There is also an oblong element within the bezel/trim piece that is not found in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B V.6.

Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that occupies nearly the entire width of the product and varies in width. There is also an oblong element within the bezel/trim piece that is not found in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B V.7.



Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that occupies nearly the entire width of the product and varies in width.  There is also an oblong element within the bezel/trim piece that is not found in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B V.8.

3.    This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Galaxy Infuse 4G product leads me to conclude that:

    3.1    there are substantial differences between the accused product and the design shown in the D'087 patent;

    3.2    the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

    3.3    an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Infuse 4G product is substantially similar to the design shown in the D'087 patent.

## VI.    MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S i9000 (SHW-M1105) PRODUCT WITH U.S. PATENT D593,087

1.    In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Galaxy S i9000 (SHW-M1105) product.

2.    In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.



| Table B VI |
|---|
| **INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S i9000 (SHW-M1105) PRODUCT WITH U.S. PATENT D593,087** |

| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung Galaxy S i9000 Product |
|---|---|---|---|
| Fig. 41 | | | |
| In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve, but is faceted over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  There is a small rectangular element centered in the in the space below the bottom of the inner rectangle which is not found in the D'087 patent.  Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B VI.1. | | | |
| Fig. 42 | NA | NA | |
| There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B VI.2. | | | |



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because the prior art has four equal corners while the accused product has four unequal corners, and also because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  There is a small rectangular element centered in the in the space below the bottom of the inner rectangle and it also has a small circular element to the right of the oblong element, which is not found in the D'087 patent.  Thus, the accused product has a substantially different visual appearance than the D'087 design. For enlargement of these images, see Exhibit B VI.3.

Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B VI.4.

Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width and occupies a small portion of the entire height of the product.  There is also a small circular element to the right of the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B VI.5.



Fig 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width and occupies a greater portion of the entire height of the product. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VI.6.

Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VI.7.

Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VI.8.

3.     This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Galaxy S i9000 (SHW-M1105) product leads me to conclude that:

3.1     there are substantial differences between the accused Samsung Galaxy S i9000 (SHW-M1105) product and the claimed design of the D'087 patent;

3.2     the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.3     an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy S i9000 (SHW-M1105) product is substantially similar to the design shown in the D'757 patent.

## VII.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY FASCINATE (SCH 1500) (a/k/a SHOWCASE i500, SHOWCASE GALAXY S, AND MESMERIZE) PRODUCT(S) WITH U.S. PATENT D593,087

1.     In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Galaxy Fascinate (SCH 1500) (a/k/a Showcase i500, Showcase Galaxy S, and Mesmerize) Product(s).

2.     In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

| Table B VII |
|---|
| **INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY FASCINATE (SCH-1500) (a/k/a SHOWCASE i500, SHOWCASE GALAXY S, AND MESMERIZE) PRODUCT(S) WITH U.S. PATENT D593,087** |

| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung Galaxy Fascinate Product |
|---|---|---|---|



Fig. 41

In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  There are four elements near the bottom of the front face, all much like the KR'307 and unlike the blank face of the D'087 patent. Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B VII.1.

NA                                NA

Fig. 42

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B VII.2.

Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused

product is substantially more similar to the JP'638 than it is to the D'087 patent.  There are four elements near the bottom of the front face, all much like the KR'307 and unlike the blank face of the D'087 patent.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B VII.3.



Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B VII.4.

Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow black bezel/trim piece below a chrome trim piece that provides a substantially different visual impression from the D'087 design.  There is also a small circular element to the right of the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B VII.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow black bezel/trim piece below a chrome trim piece that provides a substantially different visual impression from the D'087 design.  There is also a small circular element to the left of the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B VII.6.



Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow black bezel/trim piece below a chrome trim piece that provides a substantially different visual impression from the D'087 design.  There is also a small rectangular element in the lower portion, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B VII.7.



Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow black bezel/trim piece below a chrome trim piece that provides a substantially different visual impression from the D'087 design.  There is also a small rectangular element in the lower portion, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B VII.8.

3.      This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Galaxy Fascinate product leads me to conclude that:

3.1      there are substantial differences between the accused Samsung Galaxy Fascinate (SCH 1500) (a/k/a Showcase i500, Showcase Galaxy S, and Mesmerize) product(s) and the claimed design of the D'087 patent;

29

3.2　the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.3　an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Fascinate (SCH 1500) (a/k/a Showcase i500, Showcase Galaxy S, and Mesmerize) product(s) are substantially similar to the design shown in the D'087 patent.

## VIII.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY PREVAIL (SPH-M820) PRODUCT WITH U.S. PATENT D593,087

1.　In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Galaxy Prevail (SPH-M820) product.

2.　In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

| Table B VIII | | | |
|---|---|---|---|
| INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY PREVAIL (SPH-M820) PRODUCT WITH U.S. PATENT D593,087 | | | |
| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung Galaxy Prevail Product |
| Fig. 41 | | | |
| In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element | | | |

horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  There are four elements near the bottom of the front face, all much like the KR'307 and unlike the blank face of the D'087 patent.  Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B VIII.1.



NA                    NA

Fig. 42

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B VIII.2.



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product was barely visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them.  The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B VIII.3.



Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B VIII.4.



Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width. There is also a small circular element to the left of the center, which is not shown in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VIII.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width. There is also a small rectangular element at the center, which is not shown in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VIII.6.

Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width. There are also small rectangular and oblong elements along the center, which is not shown in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VIII.7.



Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width. There is also a small oblong element along the center of the lower portion, which is not shown in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B VIII.8.

3.   This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Galaxy Prevail (SPH-M820) product leads me to conclude that:

3.1   there are substantial differences between the accused product and the design shown in the D'087 patent;

3.2   the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.3   an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Prevail (SPH-M820) is substantially similar to the design shown in the D'087 patent.

## IX.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S 4G (SGH-T959V) (a/k/a VIBRANT) PRODUCT(S) WITH U.S. PATENT D593,087

1.   In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Galaxy S 4G (SGH-T959V) (Vibrant) product.

2.   In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

33



# Table B IX

## INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S 4G (VIBRANT) PRODUCT(S) WITH U.S. PATENT D593,087

| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung Galaxy S 4G (Vibrant) Product |
|---|---|---|---|
| Fig. 41 | | | |
| In this view, the KR'307 and JP'638 prior art is more similar to the '087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that is faceted.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared. For enlargement of these images, see Exhibit B IX.1. | | | |
| Fig. 42 | NA | NA | |
| There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B IX.2. | | | |



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece and instead has a faceted bezel/trim piece.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  For enlargement of these images, see Exhibit B IX.3.

Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B IX.4.

Fig. 45

In this view, all that is claimed in the '087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that is sculptural and varies in width.  There is also a small circular element to the right of the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IX.5.



Fig. 46

In this view, all that is claimed in the '087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that is sculptural and varies in width.  There is also a small circular element to the right of the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IX.6.

Fig. 47

In this view, all that is claimed in the '087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IX.7.

Fig. 48

In this view, all that is claimed in the '087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that varies in width.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B IX.8.

3.    This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Galaxy S 4G (SGH-T959V) (Vibrant) product leads me to conclude that:

3.1    there are substantial differences between the accused product and the design shown in the D'087 patent;

3.2    the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.3    an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy S 4G (SGH-T959V) (Vibrant) product is substantially similar to the design shown in the D'757 patent.

## X.    MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II (SGH-I777) PRODUCT WITH U.S. PATENT D593,087

1.    In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung S II (SGH-I777) product.

2.    In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

### Table B X

**INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II (SGH-I777) PRODUCT WITH U.S. PATENT D593,087**

| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung S II (SGH-I777) Product |
|---|---|---|---|
| <br>Fig. 41 |  |  |  |
| In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a | | | |

37

==highlight==bezel/trim piece that does  not curve over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B X.1.==highlight==



Fig. 42                    NA                    NA

==highlight==There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B X.2.==highlight==

Fig. 43

==highlight==In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B X.3.==highlight==



Fig. 44

There is nothing claimed in this view of the D'087 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit B X.4.

Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow bezel/trim piece that is black and blends into the black color of the back portion. There is also a small circular element to the right of the center, which is not shown in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B X.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow bezel/trim piece that is black and blends into the black color of the back portion. There is also a small circular element to the right of the center, which is not shown in the D'087 design. Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B X.6.

Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow bezel/trim piece that is black and blends into the black color of the back portion,

making the bezel/trim piece indistinguishable from the rest of the product.  There is also a small rectangular shape above the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.    For enlargement of these images, see Exhibit B X.7.



Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a narrow bezel/trim piece that is black and blends into the black color of the back portion, making the bezel/trim piece indistinguishable from the rest of the product.  There is also a small rectangular shape above the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B X.8.

3.      This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung S II (SGH-I777) product leads me to conclude that:

3.4      there are substantial differences between the accused product and the design shown in the D'087 patent;

3.5      the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.6      an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II (SGH-I777) is substantially similar to the design depicted in the D'087 patent.

## XI.      MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG EPIC TOUCH (SPH-D710) PRODUCT WITH U.S. PATENT D593,087

1.      In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung Epic Touch (SPH-D710) product.

2.  In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

| Table B XI | | | |
|---|---|---|---|
| **INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG EPIC TOUCH (SPH-D710) PRODUCT WITH U.S. PATENT D593,087** | | | |
| **U.S. Patent D593,087** | **KR Registered Design 30-0398307 Prior Art** | **JP D1241638 Prior Art** | **Accused Samsung Epic Touch (SPH-D710) Product** |



Fig. 41

In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design. Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared. For enlargement of these images, see Exhibit B XI.1.



|   | NA | NA |   |
|---|---|---|---|

Fig. 42

There is nothing claimed in this view of the D'087 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit B XI.2.

41



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them.  The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B XI.3.



Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B XI.4.



Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a wide bezel/trim piece that is tall and occupies the majority of the products height.  There is also a small circular element to the right of the center, which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XI.5.



Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a wide bezel/trim piece that occupies the entire products height.  There is also a trapezoidal shape in the center which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XI.6.

Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a wide bezel/trim piece that varies in width.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XI.7.

Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a wide bezel/trim piece that varies in width.  There is also an elongated oblong shape below the center which is not shown in the D'087 design.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit B XI.8.

3.    This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung Epic Touch (SPH-D710) product leads me to conclude that:

43

3.7     there are substantial differences between the accused product and the design shown in the D'087 patent;

3.8     the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.9     an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Epic Touch (SPH-D710) is substantially similar to the design depicted in the D'087 patent.

## XII.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II SKYROCKET (SGH-I727) PRODUCT WITH U.S. PATENT D593,087

1.     In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung S II Skyrocket (SGH-I727) Product.

2.     In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.



### Table B XII

**INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II SKYROCKET (SGH-I727) PRODUCT WITH U.S. PATENT D593,087**

| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung S II Skyrocket (SGH-I727) Product |
|---|---|---|---|
| Fig. 41 | | | |

In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different

from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B XII.1.



Fig. 42          NA          NA

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B XII.2.



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'087 design.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B XII.3.



Fig. 44



There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B XII.4.

Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XII.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XII.6.

Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XII.7.



Fig. 48

The dominant feature of a bezel is very narrow in the D'087 patent and curves inward.  The prior art bezel also curves inward but is more substantial, while the bezel bezel/trim piece does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XII.8.

3.     This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung S II Skyrocket (SGH-I727) product leads me to conclude that:

    3.10    there are substantial differences between the accused product and the design shown in the D'087 patent;

    3.11    the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

    3.12    an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II Skyrocket (SGH-I727) is substantially similar to the design depicted in the D'087 patent.

## XIII.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II I9100 (INTERNATIONAL) PRODUCT WITH U.S. PATENT D593,087

1.     In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the D'087 patent with the prior art and the accused Samsung S II I9100 (International) Product.

2.     In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to these prior art references than it is to the D'087 design when viewing the figures of the D'087 design.

# Table B XIII

### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II I9100

### (INTERNATIONAL) PRODUCT WITH U.S. PATENT D593,087

| U.S. Patent D593,087 | KR Registered Design 30-0398307 Prior Art | JP D1241638 Prior Art | Accused Samsung S II I9100 (International) Product |
|---|---|---|---|
|  Fig. 41 | | | |

In this view, the KR'307 and JP'638 prior art is more similar to the D'087 patent than is the accused product since they both have curved bezel trim pieces while the accused product has a bezel/trim piece that does not curve over the front face of the product.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them.  The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the KR'307 than it is to the D'087 patent.  There is a small rectangular element centered in the in the space below the bottom of the inner rectangle which is not found in the D'087 patent.  Because no part of the D'087 is claimed other than the Bezel/trim piece and the front surface, only the front surfaces and bezel/trim pieces should be compared.  For enlargement of these images, see Exhibit B XIII.1.

| | NA | NA | |
| Fig. 42 | | | |

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B XIII.2.



Fig. 43

In this view, the KR'307 and JP'638 prior art is substantially more similar to the D'087 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  Additionally, the accused product lacks the curved bezel/trim piece that is visually pronounced in both the D'087 patent and the prior art.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the KR'307 and/or JP'638 designs, and substantially different from the D'087 that has almost no gap between them. The size of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'638 than it is to the D'087 patent.  There is a small rectangular element centered in the in the space below the bottom of the inner rectangle which is not found in the D'087 patent.  Thus, the accused product has a substantially different visual appearance than the D'087 design.  For enlargement of these images, see Exhibit B XIII.3.

Fig. 44

There is nothing claimed in this view of the D'087 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit B XIII.4.

Fig. 45

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XIII.5.

Fig. 46

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XIII.6.



Fig. 47

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XIII.7.



Fig. 48

In this view, all that is claimed in the D'087 patent is the curved front bezel/trim piece which is narrow and of constant width, similar to that disclosed in KR'307, while the accused product has a bezel/trim piece that does not curve over the front face of the product and is black and blends in with the back portion, making the bezel/trim piece indistinguishable.  Thus, the accused product does not practice what the D'087 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit B XIII.8.

4.     This detailed visual comparison between the D'087 patented design, a prior art example and the accused Samsung S II I9100 (International) product leads me to conclude that:

3.13    there are substantial differences between the accused product and the design shown in the D'087 patent;

3.14    the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'087 patent;

3.15    an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II I9100 (International) is substantially similar to the design shown in the D'087 patent.

## XIV.        MY CONCLUSIONS REGARDING INFRINGEMENT OF THE D593,087

1.    Because there are substantial differences in the overall appearance of the Samsung Galaxy Ace product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

2.    Because there are substantial differences in the overall appearance of the Samsung Infuse 4G product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

3.    Because there are substantial differences in the overall appearance of the Samsung Galaxy S i9000 product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

4.    Because there are substantial differences in the overall appearance of the Samsung Galaxy Fascinate (a/k/a Showcase i500, Showcase Galaxy S, and Mesmerize) product(s) when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

5.    Because there are substantial differences in the overall appearance of the Samsung Galaxy Prevail product when compared to each and every view of the

sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

6. Because there are substantial differences in the overall appearance of the Samsung Galaxy S 4G (a/k/a Vibrant) product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

7. Because there are substantial differences in the overall appearance of the Samsung S II (SGH-I777) product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

8. Because there are substantial differences in the overall appearance of the Samsung Epic Touch (SPH-D710) product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

9. Because there are substantial differences in the overall appearance of the Samsung S II Skyrocket (SGH-I727) product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

10. Because there are substantial differences in the overall appearance of the Samsung S II i9100 (International) product when compared to each and every view of the sixth embodiment of the D'087 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC.,  a California corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 11-cv-01846-LHK |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD., a | § | |
| Korean corporation; SAMSUNG | § | |
| ELECTRONICS AMERICA, INC., a New | § | |
| York corporation; and SAMSUNG | § | |
| TELECOMMUNICATIONS AMERICA, | § | |
| LLC, a Delaware limited liability company, | § | |
| | § | |
| Defendants. | § | |

## EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA

### PART C

## I.    EXAMINATION OF U.S. PATENT D618,677

1.    The '677 patent is titled "Electronic Device" and was issued on June 29, 2010 to Andre et al.  See Exhibit C I.1

2.    The '677 patent claims one (1) embodiment.

3.    In the table below, I examine the Figures of the '677 patent.

# Table C I

## EXAMINATION OF U.S. PATENT D618,677

| Description | D'677 Design | Exhibit Reference |
|---|---|---|
| Fig. 1 is a front perspective view of an electronic device in accordance with the present invention; |  | For an enlargement of this image, see Exhibit C I.1. |
| Fig. 2 is a rear perspective view thereof; |  | For an enlargement of this image, see Exhibit C I.1. |
| Fig. 3 is a front view thereof; |  | For an enlargement of this image, see Exhibit C I.1. |
| Fig. 4 is a rear view thereof; |  | For an enlargement of this image, see Exhibit C I.1. |
| Fig. 5 is a top view thereof; |  | For an enlargement of this image, see Exhibit C I.1. |
| Fig. 6 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit C I.1. |

| | | |
|---|---|---|
| Fig. 7 is a left side view thereof; and, | | For an enlargement of this image, see Exhibit C I.1. |
| Fig. 8 is a right side view thereof. | | For an enlargement of this image, see Exhibit C I.1. |

4.      As a starting point, I know that Apple did not invent the following elements claimed in the '677 patent:

5.1      a clear and reflective rectangle with rounded corners;

5.2      a black and reflective rectangle on the frontal plane of an electronic device;

5.3      a rectangle within a rectangle;

5.4      an oblong shape.

5.      Because the D'677 patent is merely a combination of well-known and very old elements, the most that the D'677 patent may claim is that specific combination depicted in the drawings.  Thus, it is my opinion that the claim of the D'677 patent is very narrow and the scope of the D'677 patent must be limited to the specific design depicted in the drawings.  However, as described below, my opinion that the accused products are not substantially similar to the D'677 is not dependent on the scope being limited to specific design drawings.

## II.      EXAMINATION OF THE PRIOR ART

1.      There is a plethora of prior art to the '677 patent.  In the table below, I present a single view of numerous prior art examples that an ordinary observer, with knowledge of the prior art, would be aware that many electronic devices are produced in black.

3

## Table C II

### EXAMINATION OF PRIOR ART TO U.S. PATENT D618,677

| Prior Art | My Comments |
|---|---|
| <br><br>LG Prada<br><br>For an enlargement of this image, see Exhibit C II.1. | This prior art example has a flat clear rectangle with rounded corners on the front black surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
| <br><br>Samsung K3 MP3 Player<br>02/12/2006 itechnews<br><br>For an enlargement of this image, see Exhibit C II.2. | This prior art example has a flat clear rectangle with rounded corners on the front black surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle. |
| <br><br>KR 30-0398307<br><br>For an enlargement of this image, see Exhibit C II.3. | This prior art example has a flat rectangle with equally rounded corners on the front surface of an electronic device surrounded.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |



| | |
|---|---|
| KR 30-0452985<br><br>For an enlargement of this image, see Exhibit C II.4. | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
| European Union RCD 000569157-0005<br><br>For an enlargement of this image, see Exhibit C II.5. | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
| JP D1142127<br><br>For an enlargement of this image, see Exhibit C II.6. | This prior art example has a flat rectangular form with evenly rounded corners.  There is an outline of an inset rectangle centered in the front face of the product. |

| | |
|---|---|
| <br><br>Sharp SoftBank 825SH<br><br>For an enlargement of this image, see Exhibit C II.7. | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
| <br><br>JP D12241638<br><br>For an enlargement of this image, see Exhibit C II.8. | This prior art example has a largely flat clear rectangle with rounded corners on the front surface.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
| <br><br>JP D1241383<br><br>For an enlargement of this image, see Exhibit C II.9. | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle. |

| | |
|---|---|
|  **JP D1204221** **For an enlargement of this image, see Exhibit C II.10.** | **This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There are small oblong elements centered horizontally within the space from the top of the product to the top of the inner rectangle and within the space from the bottom of the product to the bottom of the inner rectangle.** |
|  LG Chocolate (LG KG800)  For an enlargement of this image, see Exhibit C II.11. | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
|  **Olympus m:robe MR-100** **For an enlargement of this image, see Exhibit C II.12.** | **This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.** |



Nokia Fingerprint (2004 Nokia Design Contest)

For an enlargement of this image, see Exhibit C II.13.

This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small circular element centered horizontally within the space from the top of the product to the top of the inner rectangle.



iRiver U10

For an enlargement of this image, see Exhibit C II.14.

This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with two opposite sides that are adjacent to the clear rectangle but with two other edges that are spaced farther apart from the remaining edges of the clear rectangle.



KR-30-0394921

For an enlargement of this image, see Exhibit C II.15.

This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with two opposite sides that are adjacent to the clear rectangle but with two other edges that are spaced farther apart from the remaining edges of the clear rectangle.



| | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle with sides that are adjacent to the clear rectangle but with top and bottom edges that are spaced apart from the top and bottom edges of the clear rectangle.  There is a small oblong element centered horizontally within the space from the top of the product to the top of the inner rectangle. |
| U.S. Patent D534,516 For an enlargement of this image, see Exhibit C II.16. | |
| U.S. Patent D504,889 For an enlargement of this image, see Exhibit C II.17. | This prior art example has a flat clear rectangle with rounded corners on the front surface of an electronic device.  There is an outline of an inset rectangle centered in the front face of the product. |

2.  Each of the discrete elements disclosed in the D'677 patent are well known and have been used in some combinations in prior art electronic devices.

3.  For the remainder of this report, I will focus on two of these prior art references in comparison to the D'677 patent:  (1) Japanese design patent JP D1204221 registered to Toshiba Corporation on March 19, 2004, and published on May 10, 2004; and (2) Japanese design patent JP D1241638 registered to Sharp Corporation on April 15, 2005, and published on June 6, 2005.

## III.  COMPARISON OF THE PRIOR ART WITH THE DESIGN CLAIMED IN U.S. PATENT D618,677

1.  I now compare the eight figures of the D'677 patent with corresponding views of the prior art JP D1204221 in Table C III (a) and JP D1241638 in Table C III (b).

# Table C III (a)

## COMPARISON OF JP D1204221 DESIGN PATENT PRIOR ART TO U.S. PATENT D618,677

| U.S. Patent D618,677 | JP D1204221 Prior Art | My Comments |
|---|---|---|
| <br>Fig. 1 |  | In this view, the JP D1204221 design patent has a clear rectangular front surface with rounded corners; an outline of a rectangle sides that are close to but visibly separated from the outer rectangular shape and with top and bottom edges that are spaced further apart from the top and bottom edges of the clear rectangle; and a small oblong horizontally centered within the space from the top of the product to the top of the inner rectangle. Because no part of the D'677 is claimed other than the front surface, only the front surface should be compared.  For an enlargement of these images, see Exhibit C III (a).1. |
| <br>Fig. 2 |  | There is nothing claimed in this view of the D'677 patent.  For that reason, nothing in this view should be compared.<br>For an enlargement of these images, see Exhibit C III (a).2. |
| <br>Fig. 3 |  | In this view, the JP D1204221 design patent has a clear rectangular front surface with rounded corners; an outline of a rectangle with sides that are close to but visibly separated from the outer rectangular shape and with top and bottom edges that are spaced further apart |

10

| | | |
|---|---|---|
| | | from the top and bottom edges of the clear rectangle; and a small oblong horizontally centered within the space from the top of the product to the top of the inner rectangle.  For an enlargement of these images, see Exhibit C III (a).3. |
| Fig. 4 |  | There is nothing claimed in this view of the D'677 patent.  For that reason, nothing in this view should be compared.  For an enlargement of these images, see Exhibit C III (a).4. |
| Fig. 5 |  | The thin edge of the clear front surface of the JP D1204221 is visible in this view.  No other part of the D'677 is claimed.  For that reason, nothing other than the front surface should be compared.  For an enlargement of these images, see Exhibit C III (a).5. |
| Fig. 6 |  | The thin edge of the clear surface of the JP D1204221 is visible in this view.  No other part of the D'677 is claimed.  For that reason, nothing other than the front surface should be compared.  For an enlargement of these images, see Exhibit C III (a).6. |
| Fig. 7 |  | The thin edge of the clear front surface of the JP D1204221 is visible in this view.  No other part of the D'677 is claimed.  For that reason, nothing other than the front surface should be compared.  For an enlargement of these images, see Exhibit C III (a).7. |



| | | |
|---|---|---|
| Fig. 8 | | ==The thin edge of the clear front surface of the JP D1204221 is visible in this view.  No other part of the D'677 is claimed.  For that reason, nothing other than the front surface should be compared.  For an enlargement of these images, see Exhibit C III (a).8.== |

# Table C III(b)

### COMPARISON OF JP D1241638 DESIGN PATENT PRIOR ART TO
### U.S. PATENT D618,677

| U.S. Patent D618,677 | JP D1241638 | My Comments |
|---|---|---|
| Fig. 1 | | In this view, the JP D1241638 design patent has a clear rectangular front surface with rounded corners; an outline of a rectangle with sides that are close to but visibly separated from the outer rectangular shape and with top and bottom edges that are spaced further apart from the top and bottom edges of the clear rectangle; and a small oblong horizontally centered within the space from the top of the product to the top of the inner rectangle.  Because no part of the D'677 is claimed other than the front surface, only the front surface should be compared.  For an enlargement of these images, see Exhibit C III (b).1. |

| | | |
|---|---|---|
| Fig. 2 | NA | There is nothing claimed in this view of the D'677 patent. Because no part of this view is claimed, nothing in this view should be compared.  For an enlargement of these images, see Exhibit C III (b).2. |
| Fig. 3 | | In this view, the JP D1241638 design patent has a clear rectangular front surface with rounded corners; an outline of a rectangle with sides that are close to but visibly separated from the outer rectangular shape and with top and bottom edges that are spaced further apart from the top and bottom edges of the clear rectangle; and a small oblong horizontally centered within the space from the top of the product to the top of the inner rectangle.  For an enlargement of these images, see Exhibit C III (b).3. |
| Fig. 4 | | There is nothing claimed in this view of the D'677 patent. Because no part of the D'677 is claimed other than the front surface, nothing in this view should be compared.  For an enlargement of these images, see Exhibit C III (b).4. |

| | | |
|---|---|---|
| Fig. 5 | | The thin edge of the front clear surface of the JP D1241638 is visible in this view.  Because no part of the D'677 is claimed other than the front surface, only the front surface should be compared.  For an enlargement of these images, see Exhibit C III (b).5. |
| Fig. 6 | | The thin edge of the front clear surface of the JP D1241638 is visible in this view.  Because no part of the D'677 is claimed other than the front surface, only the front surface should be compared.  For an enlargement of these images, see Exhibit C III. (b).6. |
| Fig. 7 | | The thin edge of the front clear surface of the JP D1241638 is visible in this view.  Because no part of the D'677 is claimed other than the front surface, only the front surface should be compared.  For an enlargement of these images, see Exhibit C III (b).7. |
| Fig. 8 | | The thin edge of the front clear surface of the JP D1241638 is visible in this view.  The side cut view demonstrates that the entire front face is clear because the display is shown underneath that surface.  Because no part of the D'677 is claimed other than the front surface, only the front surface should be compared.  For an enlargement of these images, see Exhibit C III (b).8. |

14

IV.   **MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY ACE (SHW-M240S) PRODUCT WITH U.S. PATENT D618,677**

1.   In the table below, I provide a visual comparison of the figures of the '677 patent with the prior art and the accused Samsung Galaxy Ace product.

2.   In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing all the claimed portions of figures of the D'677 design.

| Table C IV |
|---|
| **INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY ACE (SHW-M240S) PRODUCT WITH U.S. PATENT D618,677** |

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Galaxy Ace Product |
|---|---|---|---|
|  Fig. 1 |  |  |  |
| In this view, the accused product is substantially more similar to the JP'221 and/or JP'638 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP '221 and JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  There is a rectangle within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that is not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  For enlargement of these images, see Exhibit C IV.1. | | | |
|  Fig. 2 | NA | NA |  |

15

There is nothing claimed in this view of the '677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C IV.2.



Fig. 3

In this view, the JP'221 and/or JP'638 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is barely visible. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 design, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a rectangular feature within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that is not present in the D'677 design. Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C IV.3.

Fig. 4

There is nothing claimed in this view of the '677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C IV.4.

Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it. The top edge of the clear surface on the front face is also visible from this view in

16

the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C IV.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C IV.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C IV.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it. The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art. However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face. Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit C IV.8.

3.  This detailed visual comparison between the '677 patented design, a prior art example and the accused Samsung Galaxy Ace (SHW-M240S) product leads me to conclude that:

    3.1  there are substantial differences between the Samsung Galaxy Ace product and the design shown in the '677 patent;

    3.2  the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

    3.3  an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Ace product is substantially similar to the design depicted in the '677 patent.

4.  Additionally, I understand that an ordinary observer test is not limited to a specific point in time, but must be viewed during the entire useful life of a product: "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[1]

_____
[1] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

5.      Therefore, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused Samsung Galaxy Ace product during its normal use.



Fig. 3                                          Samsung Galaxy Ace

6.      Clearly, the accused Samsung Galaxy Ace product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer with knowledge of the prior art would not believe the accused Samsung Galaxy Ace product is substantially similar to the design depicted in theD'677 patent.

## V.      MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG INFUSE 4G PRODUCT WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of the design shown in the D'677 patent with the prior art and the accused Samsung Galaxy Infuse 4G (SGH-I997) product

2.      In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing all the claimed portions of figures of the D'677 design.

## Table C V

### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY INFUSE 4G PRODUCT WITH U.S. PATENT D618,677

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Galaxy Infuse 4G Product |
|---|---|---|---|
|  Fig. 1 | | | |

In this view, the accused product is substantially more similar to the JP'221 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C V.1.

| | | NA | |
|---|---|---|---|
|  Fig. 2 | | | |

There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C V.2.



Fig. 3

In this view, the JP'221 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design. Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C V.3.

Fig. 4

There is nothing claimed in this view of the '677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C V.4.

Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it. The top edge of the clear surface on the front plane is also visible from this view

21

in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C V.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C V.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For

| | | | |
|---|---|---|---|
| enlargement of these images, see Exhibit C V.7. | | | |
| \n\nFig. 8 | | | |
| In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C V.8. | | | |

3.      This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung Galaxy Infuse 4G (SGH-I997) product leads me to conclude that:

    3.1      there are substantial differences between the accused product and the design shown in the '677 patent;

    3.2      the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

    3.3      an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Infuse 4G (SGH-I997) product is substantially similar to the design depicted in the D'677 patent.

4.      Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to

those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[2]

5.      Therefore, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.




Fig. 3                    Samsung Galaxy Infuse 4G

6.      Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## VI.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S I9000 PRODUCT WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the '677 patent with the prior art and the accused Samsung Galaxy S i9000 product.

---

[2] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

2.    The question this infringement analysis attempts to answer is: would an ordinary observer, familiar with the prior art, believe the accused product is visually more similar to the patented design than the  prior art.

# Table C VI

### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S i9000 PRODUCT WITH U.S. PATENT D618,677

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Galaxy S i9000 Product |
|---|---|---|---|
| <br>Fig. 1 | | | |

In this view, the accused product is substantially more similar to the JP'221 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  In addition, there is a rectangular shape within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that is not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C VI.1.

| | NA | NA | |
|---|---|---|---|
| <br>Fig 2 | | | |

There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C VI.2.



Fig. 3

In this view, the JP'221 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C VI.3.

Fig. 4

There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C VI.4.

Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no

part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VI.5.



Fig 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit C VI.6.

Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VI.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VI.8.

3. This detailed visual comparison between the '677 patented design, prior art examples and the accused Samsung Galaxy S i9000 product leads me to conclude that:

3.1 there are substantial differences between the accused product and the design shown in the '677 patent;

3.2 the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

3.3 an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy S i9000 product is substantially similar to the design depicted in the '677 patent.

4. Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[3]

---

[3] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

5.      Therefore, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.

   

Fig. 3                             Samsung Galaxy S i9000

6.      Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## VII.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY FASCINATE (SCH-1500) (a/k/a SHOWCASE i500, SHOWCASE GALAXY S AND MESMERIZE) PRODUCT(S) WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of the design shown in the D'677 patent with the prior art and the accused Samsung Galaxy Fascinate product.

2.      In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing all the claimed portions of figures of the D'677 design.

29

## Table C VII

**INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY FASCINATE (SCH-1500) (a/k/a SHOWCASE i500, SHOWCASE GALAXY S AND MESMERIZE) PRODUCT(S) WITH U.S. PATENT D618,677**

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Galaxy Fascinate Product |
|---|---|---|---|
|  Fig. 1 |  |  |  |
| In this view, the accused product is substantially more similar to the JP'221 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C VII.1. | | | |
|  Fig. 2 | NA | NA |  |
| There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C VII.2. | | | |



In this view, the JP'221 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C VII.3.

Fig. 4

There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C VII.4.

Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VII.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VII.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be

compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VII.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VII.8.

3.      This detailed visual comparison between the '677 patented design, prior art examples and the accused Samsung Galaxy Fascinate product leads me to conclude that:

3.1      there are substantial differences between the accused Samsung Fascinate, Mesmerize, and Showcase products and the design shown in the D'677 patent;

3.2      the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

3.3      an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Fascinate, Mesmerize, and Showcase products are substantially similar to the design depicted in the D'677 patent.

4.      Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to

33

those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[4]

5. Therefore, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.

 

Fig. 3               Samsung Galaxy Fascinate

6. Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## VIII. MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY PREVAIL PRODUCT WITH U.S. PATENT D618,677

1. In the table below, I provide a visual comparison of the design shown in the D'677 patent with the prior art and the Samsung Galaxy Prevail product.

2. In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing all the claimed portions of figures of the D'677 design.

---

[4] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

# Table C VIII

**INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY PREVAIL (SPH-M820) PRODUCT WITH U.S. PATENT D618,677**

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Galaxy Prevail Product |
|---|---|---|---|
|  Fig. 1 | | | |
| In this view, the accused product is substantially more similar to the JP'221 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C VIII.1. | | | |
| Fig. 2 | NA | NA | |
| There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C VIII.2. | | | |



Fig. 3

In this view, the JP'221 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design. Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C VIII.3.

Fig. 4

There is nothing claimed in this view of the '677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C VIII.4.

Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it. The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art. However, in this view of the accused product, the edge of

the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VIII.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VIII.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VIII.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C VIII.8.

3.    This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung Galaxy Prevail (SPH-M820)  product leads me to conclude that:

3.1    there are substantial differences between the accused product and the design shown in the D'677 patent;

3.2    the design shown in the D'677 patent is closer in its overall appearance to the prior art examples than it is to the accused product;

3.3    an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Prevail product is substantially similar to the design depicted in the D'677 patent.

4    Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[5]

---

[5] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

5       Therefore, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.

 

Fig. 3                              Samsung Galaxy Prevail

6       Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## IX.    MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S 4G (A/K/A VIBRANT) PRODUCT(S) WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of eight figures of the sixth embodiment claimed in the '677 patent with the prior art and the accused Samsung Galaxy S 4G (Vibrant) product.

2.      The question this infringement analysis attempts to answer is: would an ordinary observer, familiar with the prior art, believe the accused product is visually more similar to the patented design than the prior art.

39

## Table C IX

**INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY S 4G (SGH-T959V) (A/K/A VIBRANT) PRODUCT(S) WITH U.S. PATENT D618,677**

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Galaxy S 4G Product |
|---|---|---|---|
| <br>Fig. 1 |  |  |  |

In this view, the accused product is substantially more similar to the JP'221 and JP'638 prior art than it is to the D'677 patent. The curvature radius of the rounded top corners is different than the curvature radius of the bottom corners of the front face of the accused product, but they are equal in the D'677 patent. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a small circular feature on the upper right corner of the accused product, but not the D'677 design. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design. Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. For enlargement of these images, see Exhibit C IX.1.

| <br>Fig. 2 | NA | NA |  |

There is nothing claimed in this view of the '677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C IX.2.



| | | | |
|---|---|---|---|
| Fig. 3 | | | |

In this view, the JP'221 and JP'638 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The curvature radius of the rounded top corners is different than the curvature radius of the bottom corners of the front face of the accused product, but they are equal in the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  There is a small circular feature on the upper right corner of the accused product, but not the D'677 design.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C IX.3.



| | | | |
|---|---|---|---|
| Fig. 4 | | | |

There is nothing claimed in this view of the '677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C IX.4.

| | | | |
|---|---|---|---|
| Fig. 5 | | | |

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front face is also visible from this view in

the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit C IX.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front face is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit C IX.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front face is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit C IX.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front face is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit C IX.8.

3.  This detailed visual comparison between the '677 patented design, prior art examples and the accused Samsung Galaxy S 4G (SGH-T959V) (Vibrant) product leads me to conclude that:

3.1  there are substantial differences between the accused Samsung Galaxy S 4G (SGH-T959V) (Vibrant) products and the design shown in the D'677 patent;

3.2  the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patents;

3.3  an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy S 4G and Vibrant products are substantially similar to the design depicted in the D'677 patent.

4  Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to

those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[6]

5       Therefore, as part of my infringement analysis, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.



Fig. 3                    Samsung Galaxy Prevail

6       Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## X.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II (SGH-I777) PRODUCT WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of the eight figures claimed in the D'677 patent with the prior art and the accused Samsung S II (SGH-I777) product.

---

[6] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

2.    In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing the claimed portions of all figures of the D'677 design.

# Table C X

### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II (SGH-I777) PRODUCT WITH U.S. PATENT D618,677

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung S II (SGH-I777) Product |
|---|---|---|---|
|  Fig. 1 | | | |

In this view, the accused product is substantially more similar to the JP'221 and JP'638 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C X.1.

| | NA | NA | |
|---|---|---|---|
| Fig. 2 | | | |

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would

not find any substantial similarities.  For enlargement of these images, see Exhibit C X.2.



Fig. 3

In this view, the JP'221 and JP'638 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C X.3.

Fig. 4

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C X.4.

Fig. 5

46

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C X.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C X.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C X.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C X.8.

3.  This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung S II (SGH-I777) product leads me to conclude that:

3.1  there are substantial differences between the accused product and the design shown in the D'677 patent;

3.2  the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

48

3.3     an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II (SGH-I777) product is substantially similar to the design depicted in the D'677 patent.

4.     Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product: "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[7]

5.     Therefore, as part of my infringement analysis, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.



Fig. 3            Samsung S II (SGH-I777)

6.     Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

---

[7] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

## XI.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II (SGH-T989) PRODUCT WITH U.S. PATENT D618,677

1.   In the table below, I provide a visual comparison of eight claimed in the D'677 patent with the prior art and the accused Samsung S II (SGH-T989) product.

2.   In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing the claimed portions of all figures of the D'677 design.

### Table C XI

**INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II (SGH-T989) PRODUCT WITH U.S. PATENT D618,677**

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung S II (SGH-T989) Product |
|---|---|---|---|
|  Fig. 1 | | | |

In this view, the D'677 design is substantially more similar to the JP'221 prior art than the accused product, while the accused product has a bottom edge of the outside rectangle that is curved, not straight.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C XI.1.



| | NA | NA | |
| | | | |
| Fig. 2 | | | |

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C XI.2.

Fig. 3

In this view, the D'677 design is substantially more similar to the JP'221 prior art than the accused product, while the accused product has a bottom edge of the outside rectangle that is curved, not straight.  In this view, the JP'221 prior art design also is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C XI.3.

Fig. 4

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C VI.4.



Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XI.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XI.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XI.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XI.8.

3.  This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung S II (SGH-T989) product leads me to conclude that:

    3.1  there are substantial differences between the accused product and the design shown in the D'677 patent;

    3.2  the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

    3.3  an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II (SGH-T989) product is substantially similar to the design depicted in the D'677 patent.

4.  Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[8]

5.  Therefore, as part of my infringement analysis, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.



Fig. 3              Samsung S II (SGH-T989)

---

[8] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

6      Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## XII.  MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG EPIC TOUCH (SPH-D710) PRODUCT WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of the eight figures claimed in the D'677 patent with the prior art and the accused Samsung Epic Touch (SPH-D710) product.

2.      In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing the claimed portions of all figures of the D'677 design.

| Table C XII | | | |
|---|---|---|---|
| INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG EPIC TOUCH (SPH-D710) PRODUCT WITH U.S. PATENT D618,677 | | | |
| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung Epic Touch (SPH-710) Product |
|   Fig. 1 |  |  |  |

In this view, the accused product is substantially more similar to the JP'221 prior art than it is to the D'677 patent. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design. Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C XII.1.



Fig. 2    NA    NA

There is nothing claimed in this view of the D'677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C XII.2.



Fig. 3

In this view, the JP'221 prior art design is substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design. Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C XII.3.



Fig. 4

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C XII.4.

Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XII.5.

Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XII.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XII.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XII.8.

3.      This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung Epic Touch (SPH-D710) product leads me to conclude that:

3.1      there are substantial differences between the accused product and the design shown in the D'677 patent;

3.2      the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

3.3      an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Epic Touch (SPH-D710) product is substantially similar to the design depicted in the D'677 patent.

4       Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[9]

5       Therefore, as part of my infringement analysis, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.

---

[9] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370



Fig. 3                    Samsung Epic Touch (SPH-D710

6      Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## XIII.  MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II SKYROCKET (SGH-I727) PRODUCT WITH U.S. PATENT D618,677

1.      In the table below, I provide a visual comparison of then eight figures claimed in the D'677 patent with the prior art and the accused Samsung S II Skyrocket (SGH-I727) product.

2.      In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing the claimed portions of all figures of the D'677 design.

# Table C XIII

## INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II SKYROCKET (SGH-I727) PRODUCT WITH U.S. PATENT D618,677

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung S II Skyrocket (SGH-I727) Product |
|---|---|---|---|
|  Fig. 1 | | | |

In this view, the D'677 design is substantially more similar to the JP'221 prior art than the accused product, while the accused product has a bottom edge of the outside rectangle that is curved, not straight. The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design. In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design. Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared. Thus, the accused product has a substantially different visual appearance than the D'677 design. For enlargement of these images, see Exhibit C XIII.1.

| | NA | NA | |
|---|---|---|---|
|  Fig. 2 | | | |

There is nothing claimed in this view of the D'677 patent. Therefore an ordinary observer would not find any substantial similarities. For enlargement of these images, see Exhibit C XIII.2.



Fig. 3

In this view, the D'677 design is substantially more similar to the JP'221 prior art than the accused product, while the accused product has a bottom edge of the outside rectangle that is curved, not straight.  In this view, the JP'221 prior art design is also substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them.  The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C XIII.3.



Fig. 4

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C XIII.4.



Fig. 5

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIII.5.



Fig. 6

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIII.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIII.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIII.8.

3.    This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung S II Skyrocket (SGH-I727) product leads me to conclude that:

3.1    there are substantial differences between the accused product and the design shown in the D'677 patent;

3.2    the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

3.3     an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II Skyrocket (SGH-I727) product is substantially similar to the design depicted in the D'677 patent.

4       Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[10]

5       Therefore, as part of my infringement analysis, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.



Fig. 3                  Samsung S II Skyrocket (SGH-I727)

6       Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

---

[10] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

## XIV.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II I9100 (INTERNATIONAL) PRODUCT WITH U.S. PATENT D618,677

1.   In the table below, I provide a visual comparison of then eight figures claimed in the D'677 patent with the prior art and the accused Samsung S II I9100 (International) product.

2.   In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'677 design when viewing the claimed portions of all figures of the D'677 design.

### Table C XIV

#### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG S II I9100 (INTERNATIONAL) PRODUCT WITH U.S. PATENT D618,677

| U.S. Patent D618,677 | Japanese Design Registration No. 1204221 | Japanese Design Registration No. 1241638 | Accused Samsung S II I9100 (International) Product |
|---|---|---|---|
|  Fig. 1 | | | |

In this view, the accused product is substantially more similar to the JP'221 prior art than it is to the D'677 patent.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent. In addition, there is a rectangular shape within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that is not present in the D'677 design. Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C XIV.1.



| | NA | NA | |
| --- | --- | --- | --- |
| Fig. 2 | | | |

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C XIII.2.

| Fig. 3 | | | |

In this view, the D'677 design is substantially more similar to the JP'221 prior art than the accused product, while the accused product has a bottom edge of the outside rectangle that is curved, not straight.  In this view, the JP'221 prior art design is also substantially more similar to the D'677 design than the accused product is, because in normal frontal viewing conditions the inner rectangular shape of the accused product is not visible.  The gap between the inner rectangular element and the outer edge of the overall rectangular front face of the accused product is substantially similar to the JP'221 and/or JP'638 designs, and substantially different from the D'677 that has almost no gap between them. The location of the small oblong element horizontally centered within the space close to the top of the accused product is substantially more similar to the JP'221 than it is to the D'677 patent.  There is a small circular feature on the upper left corner of both the JP'221 and the accused product, but not the D'677 design.  In addition, there are four elements within the space from the bottom of the product to the bottom of the inner rectangle in the accused product that are not present in the D'677 design.  Thus, the accused product has a substantially different visual appearance than the D'677 design.  For enlargement of these images, see Exhibit C XIV.3.

| Fig. 4 | | | |

There is nothing claimed in this view of the D'677 patent.  Therefore an ordinary observer would not find any substantial similarities.  For enlargement of these images, see Exhibit C XIII.4.

| | | | |
|---|---|---|---|
| Fig. 5 | | | |

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIV.5.

| | | | |
|---|---|---|---|
| Fig. 6 | | | |

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIV.6.



Fig. 7

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIV.7.



Fig. 8

In this view, the thin edge of the clear surface on the front plane of the D'677 design is visible as a solid line above the top of the unclaimed trim piece or bezel that is shown by a dotted line underneath it.  The top edge of the clear surface on the front plane is also visible from this view in the JP'221 and/or JP'638 prior art.  However, in this view of the accused product, the edge of the clear front face is not visible because the trim piece or bezel protrudes above the clear front face and therefore blocks any view of the edge of the clear surface on the front face.  Because no part of the D'677 is claimed other than the front surface, only the front surfaces should be compared.  Thus, the accused product does not practice what the D'677 design teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit C XIV.8.

3.      This detailed visual comparison between the D'677 patented design, prior art examples and the accused Samsung S II I9100 (International) product leads me to conclude that:

    3.4      there are substantial differences between the accused product and the design shown in the D'677 patent;

    3.5      the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'677 patent;

    3.6      an ordinary observer, with knowledge of the prior art would not believe the accused Samsung S II I9100 (International) product is substantially similar to the design depicted in the D'677 patent.

4.      Additionally, I understand that an ordinary observer test is not limited to a limited specific point in time, but must be viewed during the entire useful life of a product:  "Thus we hold that the "ordinary observer" analysis is not limited to those features visible at point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product."[11]

5.      Therefore, as part of my infringement analysis, I present a side by side comparison of Figure 3 of the D'677 patent with a comparable view of the accused product during its normal use.



Fig. 3                        Samsung S II I9100 (International)

---

[11] *Contessa Food Products, Inc. v. ConAgra, Inc.*, 282 F.3d 1370

6. Clearly, the accused product has a substantially different overall ornamental appearance than that claimed in the D'677 patent, and therefore an ordinary observer would not find the accused product to be substantially similar to the D'677 patent.

## XV. MY CONCLUSIONS REGARDING INFRINGEMENT OF THE D618,677

1. Because there are substantial differences in the overall appearance of the Samsung Galaxy Ace (SHW-M240S) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

2. Because there are substantial differences in the overall appearance of the Samsung Infuse 4G (SGH-1997) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

3. Because there are substantial differences in the overall appearance of the Samsung Galaxy S i9000 (SHW-M1105) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

4. Because there are substantial differences in the overall appearance of the Samsung Galaxy Fascinate (SCH-1500) (a/k/a Showcase i500, Showcase Galaxy S, and Mesmerize) product(s) when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

5. Because there are substantial differences in the overall appearance of the Samsung Galaxy Prevail (SPH-M820) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary

observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

6.      Because there are substantial differences in the overall appearance of the Samsung Galaxy S 4G (SGH-T959V) (a/k/a Vibrant) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

7.      Because there are substantial differences in the overall appearance of the Samsung S II (SGH-I777) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

8.      Because there are substantial differences in the overall appearance of the Samsung S II (SGH-T989) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

9.      Because there are substantial differences in the overall appearance of the Samsung Epic Touch (SPH-D710) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

10.     Because there are substantial differences in the overall appearance of the Samsung S II Skyrocket (SGH-I727) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

11.     Because there are substantial differences in the overall appearance of the Samsung S II I9100 (International) product when compared to each and every view of the sixth embodiment of the '677 patent, it is clear than an ordinary

observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 11-cv-01846-LHK |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., a | § | |
| Korean corporation; SAMSUNG | § | |
| ELECTRONICS OF AMERICA, INC., a New, | § | |
| York corporation; and SAMSUNG | § | |
| TELECOMMUNICATIONS AMERICA, | § | |
| LLC, a Delaware limited liability company, | § | |
| | § | |
| Defendants. | § | |

## EXPERT REPORT OF ROBERT JOHN ANDERS, IDSA

## PART E

## I.   EXAMINATION OF U.S. PATENT D504,889

1.   The D'889 patent is titled "Electronic Device" and was issued on May 10, 2005 to Andre et al.  See Exhibit E I.1

2.   In the table below, I examine the Figures of the D'889 patent.

# Table E I

## EXAMINATION OF U.S. PATENT D504,889

| Description | Claimed Design | My Comments |
|---|---|---|
| Fig. 1 is a top perspective view of an electronic device in accordance with the present design; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 2 is a bottom perspective thereof; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 3 is a top view thereof; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 4 is a bottom view thereof; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 5 is a left side view thereof; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 6 is a right side view thereof; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 7 is an upper side view thereof; |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 8 is a lower plan view thereof; and |  | For an enlargement of this image, see Exhibit E I.1. |
| Fig. 9 is an exemplary diagram of the use of the electronic device thereof the broken lines being shown for illustrative purposes only and form no part of the claimed invention.. |  | For an enlargement of this image, see Exhibit E I.1. |

3.    I note that the views of the drawings are improperly labeled and drawn.  Figures 1-4 establish the orientation of the claimed design, so that the product is established as being oriented with the longest dimension in a horizontal position. The remaining views, figures 5 through 8 should be consistent with figures 1-4, yet they are not.

    3.1    Fig. 5 is described as a left side view, which should be of the short side, based on the orientation of Figures 1-4, yet it is drawn as the upper side view facing the wrong direction.

    3.2    Fig. 6 is described as a right side view which should be of the short side, based on the orientation of Figures 1-4, yet it is drawn as the bottom side view.

    3.3    Fig. 7 is described as an upper side view which should be of the long side, based on the orientation of Figures 1-4, yet it is drawn as the left side view facing in the wrong direction.

    3.4    Fig. 8 is described as a lower side view which should be of the long side, based on the orientation of Figures 1-4, yet it is drawn as the right side view.

4.    Furthermore, Figures 5-8 are oriented improperly, in that they are all facing in the same direction, which they can't be.  These figures of the side views should have been orientated as depicted in other patents, for example, U.S. Patent D 593,087.

5.    Accordingly, because of the inconsistent presentation of the various views in this patent, I have serious questions about the validity of this patent and believe it to be indefinite, (U.S.C. 35 §112 [b]).

6.    The components and shapes claimed in the D'889 patent are old and well known. Apple did not invent any of the following elements claimed in the D'889 patent:

    6.1    a thin, flat rectangular product with a proportion of 4:5;

    6.2    of consistent thickness, with equally rounded corners having a flat, clear face; and

    6.3    sides that abut the front face at right angles and connect to the bottom face with a radius that is greater than the radius of the four corners when viewed from the front or rear.

3

## II.  EXAMINATION OF THE PRIOR ART

1. There is a plethora of prior art to the D'889 patent.  In the table below, I present a single view of numerous prior art examples that an ordinary observer, with knowledge of the prior art, would be aware of.

<table>
<tr><td colspan="2"><strong>Table E II</strong><br><br><strong>EXAMINATION OF PRIOR ART TO U.S. PATENT D622,270</strong></td></tr>
<tr><td><strong>Prior Art</strong></td><td><strong>My Comments</strong></td></tr>
<tr>
<td><br>1994 Fidler Tablet with Flush Glass<br>For an enlargement of this image, see Exhibit E II.1.</td>
<td>This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face covered with a clear plane.</td>
</tr>
<tr>
<td><br>JP D1104685<br>For an enlargement of this image, see Exhibit E II.2.</td>
<td>This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face.</td>
</tr>
<tr>
<td><br>U.S. Patent D461,802<br>For an enlargement of this image, see Exhibit E II.3.</td>
<td>This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face covered with a clear plane.</td>
</tr>
<tr>
<td><br>U.S. Patent D532,791<br>For an enlargement of this image, see Exhibit E II.4.</td>
<td>This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face covered with a clear plane.</td>
</tr>
</table>



| | |
|---|---|
| **1988 Student Tablet Design for Apple** **For an enlargement of this image, see Exhibit E II.5.** | **This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face covered with a clear plane.** |
| JP D1142127 For an enlargement of this image, see Exhibit E II.6. | This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face covered with a clear plane. |
| Compact TC1000 For an enlargement of this image, see Exhibit E II.7. | This prior art example is a flat, rectangular product with four equally curved corners, having a clear front face. |
| **U.S. Patent D333,574** **For an enlargement of this image, see Exhibit E II.8.** | **This prior art example is a rectangular product with four equally curved corners having a clear plane that abuts a bezel/side on the perimeter with a smaller rectangle on the front surface..** . |
| **U.S. Patent D500,037** **For an enlargement of this image, see Exhibit E II.9** | **This prior art example is a rectangular product with four equally curved corners having a clear plane that abuts a bezel/side on the perimeter. I also understand there is a smaller rectangular mask positioned behind the clear material.** |

5



| | |
|---|---|
| JP D1178470<br>For an enlargement of this image, see Exhibit E II.10 | This prior art example is a rectangular product with four equally curved corners having a clear plane that abuts a subdominant feature of a bezel/side on the perimeter. |
| 1994 Fidler with Inset Glass Tablet<br>For an enlargement of this image, see Exhibit E II.11 | This prior art example is a rectangular product with four equally curved corners and a smaller rectangular shape centered on the front face covered with a clear plane. |

2. It is obvious that each of the discrete elements disclosed in the D'889 patent are well known and have been used in some combinations in prior art tablets or electronic devices.

## III. COMPARISON OF THE PRIOR ART WITH THE DESIGN CLAIMED IN U.S. PATENT D504,889

1. I now compare the nine figures of the D'889 patent with the available with corresponding views of the prior art 1994 Fidler Tablet with Flush Glass in Table E III (a); Compaq TC 1000 in Table E III (b); U.S. Patent D500,037 in Table E III (c); and 1994 Fidler Tablet with Inset Glass in Table E III (d).

| Table E III (a) | | |
|---|---|---|
| COMPARISON OF U. S. PATENT D504,889 TO 1994 FIDLER TABLET WITH FLUSH GLASS | | |
| **U.S. Patent D504,889** | **Fidler Tablet with Flush Glass 1994 Prior Art** | **My Comments** |
| <br>Fig. 1 |  | In this view, the Fidler tablet has a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product. For ease of visually comparing the shapes and proportions of the product with the D'889 patent drawing, the image was created positioning the product in the same orientation as the patent drawing. For an enlargement of these images, see Exhibit E III (a).1. |
| <br>Fig. 2 |  | In this view, the Fidler tablet is a thin flat rectangular product with four equally curved corners combined with a rectangular area defined on the back face with edges a distance away from the edges of the product.  For an enlargement of these images, see Exhibit E III(a).2. |
| <br>Fig. 3 |  | In this view, the Fidler tablet has a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product. For ease of visually comparing the shapes and proportions of the product with the D'889 patent drawing, the image was created positioning the product in the same orientation as the patent drawing. For an enlargement of these images, see Exhibit E III(a).3. |

| | | |
|---|---|---|
| Fig. 4 |  | In this view, the Fidler tablet is a flat rectangular product with four equally curved corners combined with a rectangular area defined on the back face with edges a distance away from the edges of the product. For ease of visually comparing the shapes and proportions of the product with the D'889 patent drawing, the image was created positioning the product in the same orientation as the patent drawing. For an enlargement of these images, see Exhibit E III (a).4. |
| Fig. 5 |  | In this view, because Fig. 5 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (a).5. |
| Fig. 6 |  | In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (a).6. |
| Fig. 7 |  | In this view, because Fig. 7 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (a).7. |
| Fig. 8 |  | In this view, because Fig. 8 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (a).8. |



| | | |
|---|---|---|
| Fig. 9 | NA | There is no comparable view available.  For an enlargement of these images, see Exhibit E III (a).9. |



## Table E III (b)

### COMPARISON OF U. S. PATENT D504,889 TO COMPAQ TC 1000 PRIOR ART

| U.S. Patent D504,889 | Compaq TC 1000 Prior Art | My Comments |
|---|---|---|
| Fig. 1 | | In this view, the Compaq tablet has a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product.  For an enlargement of these images, see Exhibit E III (b).1. |
| Fig. 2 | | In this view, the Compaq tablet is a thin flat rectangular product with four equally curved corners combined with a rectangular area defined on the back face with edges a distance away from the edges of the product.  For an enlargement of these images, see Exhibit E III (b).2. |



| Fig. 3 | | In this view, the Compaq tablet has a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product. The overall proportions of the Compaq tablet are substantially similar to the design of the D'889 patent. For an enlargement of these images, see Exhibit E III (b).3. |
| Fig. 4 | | In this view, the Compaq tablet has numerous features while the D'889 design discloses no features. The overall proportions of the Compaq tablet are substantially similar to the design of the D'889 patent. For an enlargement of these images, see Exhibit E III (b).4. |
| Fig. 5 | | In this view, because the Fig. of the D'889 patent is improperly drawn, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III(b).5. |
| Fig. 6 | | In this view, because the Fig. of the D'889 patent is improperly drawn, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (b).6. |
| Fig. 7 | | In this view, because the Fig. of the D'889 patent is improperly drawn, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (b).7. |



| | | In this view, because the Fig. of the D'889 patent is improperly drawn, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (b).8. |
| Fig. 8 | | |
| | | There is no comparable view available. For an enlargement of these images, see Exhibit E III (a).9. |
| Fig. 9 | | |

## Table E III (c)

### COMPARISON OF U. S. PATENT D504,889 TO

### U.S. PATENT D500,037 PRIOR ART

| U.S. Patent D504,889 | U. S. Patent D500,037 Prior Art | My Comments |
|---|---|---|
| Fig. 1 | | In this view, the D'037 patent has a rectangular form with four equally curved corners having a flat, clear face that abuts the bezel/side. For an enlargement of these images, see Exhibit E III (c).1. |



| | | |
|---|---|---|
| Fig. 2 | | In this view, the D'037 patent has a rectangular form with four equally curved corners having a flat, featureless back.<br>For an enlargement of these images, see Exhibit E III (c).2. |
| Fig. 3 | | In this view, the D'037 patent has a rectangular form with four equally curved corners having a flat, clear face that abuts the bezel/side.  The overall proportions of the D'037 patent are substantially similar to the design of the D'889 patent.  For an enlargement of these images, see Exhibit E III (c).3. |
| Fig. 4 | | In this view, the D'037 patent has a rectangular form with four equally curved corners having a flat, featureless back.  The overall proportions of the D'037 patent are substantially similar to the design of the D'889 patent.  For an enlargement of these images, see Exhibit E III (c).4. |
| Fig. 5 | | In this view, because Fig. 5 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art.  For an enlargement of these images, see Exhibit E III (c).5. |

| | | |
|---|---|---|
| Fig. 6 |  | In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art.  For an enlargement of these images, see Exhibit E III (c).6. |
| Fig. 7 |  | In this view, because Fig.7 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art.  For an enlargement of these images, see Exhibit E III (c).7. |
| Fig. 8 |  | In this view, because Fig. 8 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art.  For an enlargement of these images, see Exhibit E III (c).8. |
| Fig. 9 |  | I include this Fig. 3 of the '037 patent to document that behind the clear front is a mask containing a smaller rectangular shape, that matches the inner rectangular shape disclosed in Fig. 3 of the D'889 patent.  For an enlargement of these images, see Exhibit E III (c).9. |

## Table E III (d)

### COMPARISON OF U. S. PATENT D504,889 TO 1994 FIDLER TABLET WITH INSET GLASS

| U.S. Patent D504,889 | Fidler Tablet with Inset Glass 1994 Prior Art | My Comments |
|---|---|---|
| <br>Fig. 1 |  | In this view, the Fidler tablet has a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product. For an enlargement of these images, see Exhibit E III (d).1. |
| <br>Fig. 2 |  | In this view, the Fidler tablet is a thin flat rectangular product with four equally curved corners combined with a rectangular area defined on the back face with edges a distance away from the edges of the product. For an enlargement of these images, see Exhibit E III (d).2. |
| <br>Fig. 3 |  | In this view, the Fidler tablet has a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product. For an enlargement of these images, see Exhibit E III (d).3. |
| <br>Fig. 4 |  | In this view, the Fidler tablet is a flat rectangular product with four equally curved corners combined with a rectangular area defined on the back face with edges a distance away from the edges of the product. For an enlargement of these images, see Exhibit E III (d).4. |

| | | |
|---|---|---|
| <br>Fig. 5 |  | In this view, because Fig. 5 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (d).5. |
| <br>Fig. 6 |  | In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (d).6. |
| <br>Fig. 7 |  | In this view, because Fig. 7 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (d).7. |
| <br>Fig. 8 |  | In this view, because Fig. 8 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art. For an enlargement of these images, see Exhibit E III (d).8. |
| <br>Fig. 9 | NA | There is no comparable view available.  For an enlargement of these images, see Exhibit E III (a).9. |

## IV.   MY INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY TABLET 10.1 PRODUCT WITH U.S. PATENT D504,889

1.   In the table below, I provide a visual comparison of nine figures of the design claimed in the D'899 patent with the prior art and the accused Samsung Galaxy Tablet 10.1 product.

2.   In my opinion, an ordinary observer familiar with the prior art would believe the accused product is visually more similar to the prior art than it is to the D'889 design when viewing all the claimed portions of figures of the D'889 design.

## Table E IV

### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY TABLET 10.1 PRODUCT WITH U.S. PATENT D504,889

| U.S. Patent D504,889 | Fidler Tablet with Flush Glass 1994 | Compact TC 1000 | Accused Samsung Galaxy Tablet 10.1 Product |
|---|---|---|---|
| <br>Fig. 1 |  |  |  |

In this view, all the tablet designs have a rectangular form with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product.  While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing.  The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6.  The appearance of the dark frame around the periphery of the accused product presents a substantially different overall appearance from the design in the D'889 patent.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore created a substantially different visual appearance from this vew.  For enlargement of these images, see Exhibit E IV.1.



Fig. 2

In this view, the prior art tablet designs and the accused product have features on the back face that is not shown in the D'889 design. While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing. The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6. The ornamental design along the top edge of the accused product presents a substantially different overall appearance from the design in the '889 patent. Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit E IV.2.



Fig. 3

In this view the prior art designs are substantially more similar to the D'889 design with a rectangular form of similar proportions with four equally curved corners combined with a rectangular area defined on the front face with edges a distance away from the edges of the product. While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing. The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6. Thus, the accused product has a substantially different visual overall appearance than the D'889 design. For enlargement of these images, see Exhibit E IV.3.



Fig. 4

In this view the prior art designs are substantially more similar to the D'889 design with a rectangular form of similar proportions with four equally curved corners. While the D'889

design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing.  ==The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6.  Also, the Fidler Flush Glass Tablet is more similar to the D'889 design that has no features on the back, while the Compaq TC 1000 and the accused product have substantial features.==  Thus, the accused product has a substantially different overall visual appearance than the D'889 design.  For enlargement of these images, see Exhibit E IV.4.



Fig. 5

==In this view, because Fig. 5 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product.==  Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius.  Instead, the accused product has edges that consist of a large radius tangent to a smaller radius.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E IV.5.



Fig. 6

==In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product.==  Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius.  Instead, the accused product has edges that consist of a large radius tangent to a smaller radius.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E IV.6.



Fig. 7

==In this view, because Fig. 7 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product.==  Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius.  Instead, the accused product has edges that consists of a large radius tangent to a smaller radius.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E IV.7.



| | | | |
|---|---|---|---|
| Fig. 8 | | | |

In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product. Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius. Instead, the accused product has edges that consist of a large radius tangent to a smaller radius. Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit E IV.8.

| | | | |
|---|---|---|---|
| Fig. 9 | NA | NA | NA |

For enlargement of this image, see Exhibit E IV.9.

## Table E V

### INFRINGEMENT ANALYSIS OF THE ACCUSED SAMSUNG GALAXY TABLET 10.1 PRODUCT WITH U.S. PATENT D504,889

| U.S. Patent D504,889 | Fidler Tablet with Inset Glass 1994 | U. S. Patent D500,037 | Accused Samsung Galaxy Tablet 10.1 Product |
|---|---|---|---|
| Fig. 1 | | | |

In this view, the 'D'037 patent is closer to the D'889 patent because it is readily seen that the clear front face extends to the bezel, while the accused product has a distinctive smaller rectangle within the area between the inner rectangle and the bezel. While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four

sides and extends onto a portion of the back housing.  <mark>The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6.  The appearance of the dark frame around the periphery of the accused product presents a substantially different overall appearance from the design in the D'889 patent.</mark>  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E V.1.



Fig. 2

<mark>In this view, the prior art tablet designs and the accused product have features on the back face that are not shown in the D'889 design.</mark>  While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing.  The ornamental design along the top edge of the accused product presents a substantially different overall appearance from the design in the '889 patent.  <mark>The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6.</mark>  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E V.2.



Fig. 3

<mark>In this view the D'037 patent prior art designs is substantially more similar to the D'889 design with a rectangular form of similar proportions with four equally curved corners in which the clear front face extends to the bezel surround.</mark>  While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing.  <mark>The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6.</mark>  Thus, the accused product has a substantially different visual overall appearance than the D'889 design.  For enlargement of these images, see Exhibit E V.3.



Fig. 4

In this view the prior art designs are substantially more similar to the D'889 design with a rectangular form of similar proportions with four equally curved corners and no features. While the D'889 design has a back housing that wraps to the front such that one integral piece forms the back and sides, the accused product has a separate back housing in combinations with an uneven bezel that form all four sides and extends onto a portion of the back housing. The D'889 design has a proportion of 4:5, while the accused product is differently proportioned with a ratio of almost 4:6. The ornamental design along the top edge of the accused product presents a substantially different overall appearance from the design in the '889 patent. Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit E V.4.



Fig. 5

In this view, because Fig. 5 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product. Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius. Instead, the accused product has edges that consist of a large radius tangent to a smaller radius. Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view. For enlargement of these images, see Exhibit E V.5.



Fig. 6

In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product. Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have

edge portions that are perpendicular to the base and joined by a single radius.  Instead, the accused product has edges that consist of a large radius tangent to a smaller radius.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E V.6.



Fig. 7

In this view, because Fig. 7 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product.  Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius.  Instead, the accused product has edges that consist of a large radius tangent to a smaller radius.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E V.7.

Fig. 8

In this view, because Fig. 6 of the D'889 patent is improperly labeled, I cannot make an analysis of that design with that of the prior art and the accused product.  For enlargement of these images, see Exhibit E V.8.

Fig. 9

I include Fig. 3 of the D'037 patent to indicate that a mask containing a smaller rectangular opening is positioned behind the clear front that is identical to that disclosed in the D'889 patent.  Nevertheless, I note that the accused product is substantially thinner than the design of the D'889 patent, and does not have edge portions that are perpendicular to the base and joined by a single radius.  Instead, the accused product has edges that consist of a large radius tangent to a smaller radius.  Thus the accused product does not practice what the D'889 patent teaches, and the accused product therefore creates a substantially different visual appearance from this view.  For enlargement of these images, see Exhibit E IV.9.

3.    This detailed visual comparison between the D'889 patented design, a prior art example and the accused Samsung Galaxy Tablet 10.1 product highlights the following facts:

   3.1    The D'889 is invalid due to Indefiniteness, 35 U.S.C. §112 (b);

   3.2    there are substantial differences between the accused product and the design shown in the D'889 patent;

   3.3    the accused product is closer in its overall appearance to the prior art examples than it is to the design shown in the D'889 patent;

   3.4    an ordinary observer, with knowledge of the prior art would not believe the accused Samsung Galaxy Tablet 10.1 product is substantially similar to the design shown in the D'889 patent.

## V.   MY CONCLUSIONS REGARDING INFRINGEMENT OF THE D504,889 PATENT

1.    Because there are substantial differences in the overall appearance of the Samsung Galaxy Tablet 10.1 product when compared to each and every view of the D'889 patent, it is clear than an ordinary observer, with knowledge of the prior art would not find the accused product to be substantially similar to that patent.