# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   11-cv-01846-LHK<br><br>**EXPERT REPORT OF RAVIN BALAKRISHNAN, PH.D. REGARDING INFRINGEMENT OF U.S. PATENT NO. 7,469,381** |

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | QUALIFICATIONS | 1 |
| III. | MATERIALS CONSIDERED | 4 |
| IV. | LEGAL PRINCIPLES | 6 |
| V. | DETAILED OPINION REGARDING THE '381 PATENT | 9 |
| | A. The '381 Patent | 10 |
| | B. Person of Ordinary Skill in the Art | 12 |
| | C. Apple's Practice Of The '381 Patent | 12 |
| | D. Samsung's Emulation Of Apple And The Features Of The '381 Patent | 13 |
| | E. Samsung's Knowledge of the '381 Patent | 17 |
| | F. Samsung's Infringement of Claim 1 of the '381 Patent | 17 |
| | G. Samsung's Infringement of Claim 2 of the '381 Patent | 27 |
| | H. Samsung's Infringement of Claim 3 of the '381 Patent | 28 |
| | I. Samsung's Infringement of Claim 4 of the '381 Patent | 28 |
| | J. Samsung's Infringement of Claim 5 of the '381 Patent | 28 |
| | K. Samsung's Infringement of Claim 6 of the '381 Patent | 29 |
| | L. Samsung's Infringement of Claim 7 of the '381 Patent | 30 |
| | M. Samsung's Infringement of Claim 8 of the '381 Patent | 30 |
| | N. Samsung's Infringement of Claim 9 of the '381 Patent | 32 |
| | O. Samsung's Infringement of Claim 10 of the '381 Patent | 33 |
| | P. Samsung's Infringement of Claim 11 of the '381 Patent | 34 |
| | Q. Samsung's Infringement of Claim 13 of the '381 Patent | 35 |
| | R. Samsung's Infringement of Claim 14 of the '381 Patent | 36 |
| | S. Samsung's Infringement of Claim 15 of the '381 Patent | 37 |
| | T. Samsung's Infringement of Claim 16 of the '381 Patent | 38 |
| | U. Samsung's Infringement of Claim 17 of the '381 Patent | 39 |
| | V. Samsung's Infringement of Claim 18 of the '381 Patent | 41 |
| | W. Samsung's Infringement of Claim 19 of the '381 Patent | 42 |
| | X. Samsung's Infringement of Claim 20 of the '381 Patent | 51 |
| | Y. Difficulty of Design Around | 58 |
| | Z. Non-Infringement Contentions | 59 |
| | AA. Supplementation | 62 |

Apple v. Samsung
Confidential – Attorneys' Eyes Only

## I. INTRODUCTION

1. I, Ravin Balakrishnan, Ph.D., have been asked by counsel for Apple Inc. ("Apple") to provide an opinion in the above-captioned case. I understand that Apple has alleged that Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") have infringed various patents assigned to Apple. I have been asked to provide opinions as to whether Samsung has infringed United States Patent No. 7,469,381 ("the '381 patent"). My opinions as to the '381 patent are set forth below in this report and in the accompanying exhibits.

2. I submit this expert report in compliance with Federal Rule of Civil Procedure 26(a)(2). I reserve the right to supplement or amend this report pursuant to Rule 26(e) and as otherwise provided if additional data or other information that affects my opinions becomes available. I expect to testify at trial regarding the matters expressed in this report and any supplemental reports that I may prepare for this litigation. I also may prepare and rely on audiovisual aids to demonstrate various aspects of my testimony at trial. I also expect to testify with respect to any matters addressed by any expert testifying on behalf of Samsung, if asked to do so.

3. I am being compensated at my standard consulting rate of $430 per hour for my work in connection with this action. I am separately being reimbursed for any out-of-pocket expenses. My compensation is not based in any way on the outcome of the litigation or the nature of the opinions that I express.

## II. QUALIFICATIONS

4. Here, I provide a brief summary of my qualifications. My qualifications are stated more fully in my curriculum vitae, which is attached to this report as Exhibit 1.

5. I earned my B.Sc. (1st Class Honours) degree in computer science from the University of New Brunswick, Canada, in May 1993. Subsequently, I received my M.Sc. and Ph.D. degrees in computer science from the University of Toronto, Canada, in January 1997 and February 2001, respectively.

6. As an undergraduate, I worked as a research assistant in the human interface lab, working with different kinds of novel input technologies, including touch input systems for three dimensional data interaction. Since then, I have either trained or worked in the field of human-computer interfaces, including interfaces for touch sensitive input devices, multi degree-of-freedom input devices, two-handed input, multi-touch input, haptic feedback interfaces, tablet-based input, large and small scale displays, and interactive 3D graphics.

7. I have published over one hundred refereed publications in the field of human-computer interaction. I have further presented numerous conference abstracts, posters, talks, and demonstrations in my field. I am a named inventor on fourteen issued patents in my area of work, plus an additional seven pending (though not yet issued) patents.

8. I joined the University of Toronto faculty in July 2001 as an Assistant Professor. In 2006, I was promoted to Associate Professor with tenure, and in 2011 was promoted to full Professor. As a professor, I have taught numerous undergraduate and graduate courses in topics related to human-computer interaction. Ten Ph.D. students and twenty research masters students have completed their degrees and research under my supervision, and seven postdoctoral fellows have completed their research training under my supervision. In addition to these graduate students and postdoctoral fellows, I currently supervise one postdoctoral fellow, six Ph.D. students, and two Masters students. In addition to my professorship, I also hold the Canada Research Chair in Human-Centered Interfaces in the Department of Computer Science, and I co-direct the Dynamic Graphics Project laboratory.

9. My research at The University of Toronto has involved nearly every broad aspect of human-computer interaction and data visualization. For instance, I have done significant work in the areas of input devices, sensing technologies, and interaction techniques, in particular touch and multi-touch interaction, gestural, sketching, and multi degree-of-freedom interaction, interfaces to small and/or mobile computers, and interfaces to displays of the future. As another example, I have done work in the evaluation of user interfaces, including associated metrics and predictive models of human performance. I have previously served as a visiting researcher at Mitsubishi Electric Research Laboratories. My research program has been funded by leading

companies such as Microsoft, IBM, and Hewlett-Packard and also organizations such as the National Sciences and Engineering Research Council of Canada and also the Sloan Foundation.

10. I have also served on the organizing and paper reviewing committees of many leading conferences in my field, and have taken on editorial roles for leading technical journals in fields pertinent to my research. For example, I am currently an Associate Editor of "ACM Transactions on Computer-Human Interfaces" (the premier journal in the field), and until recently was an Associate Editor of the journal "IEEE Transactions on Visualization and Computer Graphics." Similarly, I have been the Papers Chair for the ACM UIST Symposium on User Interface Software and Technology, and have served multiple times as an Associate Chair for the premier ACM CHI Conference on Human-Computer Interaction.

11. I have also received major awards and honors in my field, including:

- Alfred P. Sloan Research Fellowship.
- Nine best paper awards and honorable mentions at the leading conferences in my field.
- Ontario Premier's Research Excellence Award, which included a $100,000 research grant.
- Election to the ACM SIGCHI Academy in 2011, which honors the principal leaders in the research field of human-computer interaction.

12. As set forth in my CV, I have over twenty years of experience studying and teaching computer programming. I have been a professor of computer science for over ten years. I can read and program using both procedural and object-oriented programming languages fluently, including the C, C++, Objective C and Java languages.

13. I have previously testified as an expert during administrative proceedings before the International Trade Commission and by deposition in connection with those same proceedings. I have also submitted reports or testified in connection with proceedings before United States District Courts and one foreign court. Specifically, I have submitted reports or testified in:

- In re Certain Electronic Digital Media Devices and Components Thereof, Inv. No. 337-TA-796, on behalf of complainant Apple.

- In re Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers, Inv. No. 337-TA-794, on behalf of respondent Apple.
- In re Certain Mobile Devices, and Related Software Thereof, Inv. No. 337-TA-750, on behalf of complainant Apple.
- In re Certain Video Game Machines and Related Three-Dimensional Pointing Devices, Inv. No. 337-TA-658, on behalf of respondent Nintendo.
- In re Certain Electronic Devices With Multi-Touch Enabled Touchpads And Touchscreens, Inv. No. 337-TA-714, on behalf of respondent Apple.  During that proceeding, the parties stipulated, and Chief Administrative Law Judge Paul J. Luckern acknowledged, that I was an expert in the field of computer user input devices.
- In re Certain Portable Electronic Devices and Related Software, Inv. No. 337-TA-797, on behalf of complainant Apple.
- Apple Inc. v. Samsung Electronics Co. Ltd., et al., 12-cv-630-LHK (N.D. Cal.) on behalf of plaintiff Apple.
- Apple Inc. v. Samsung Electronics Co. Ltd., et al., 11-cv-1846-LHK (N.D. Cal.) on behalf of plaintiff Apple.
- Mobilemedia Ideas LLC v. Apple Inc., 10-cv-258 (D. Del.) on behalf of defendant Apple.
- Apple Inc. v. Samsung Electronics Co. Ltd., et al., KG ZA 11-730 and KG ZA 11-731 (District Court of the Hague).

### III.   MATERIALS CONSIDERED

14.   In forming my opinions and views expressed in this report, I have considered a number of different sources of information that are identified in the attached Exhibit 2, and referenced in my report.

15.   I reviewed the '381 patent, its prosecution file history, and the file history for Reexamination Application No. 90/090,963.  I also reviewed portions of the deposition transcript

claims or, put otherwise, is not a staple article of commerce that has substantial non-infringing uses.

## V.     DETAILED OPINION REGARDING THE '381 PATENT

36.     I understand that in this lawsuit, Apple has accused Samsung of infringing the '381 patent. In particular, Apple alleges that Samsung infringes claims 1-11 and 13-20 of the '381 patent (collectively, the "Asserted Claims").

37.     Specifically, I understand Apple has alleged that certain products that are made, manufactured, produced, or sold by Samsung infringe the '381 patent, including at least the Captivate; Continuum; Droid Charge; Epic 4G; Exhibit 4G; Fascinate; Galaxy Ace; Galaxy Prevail; Galaxy S (i9000); Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy S 4G; Galaxy S Showcase (i500); Galaxy Tab 7.0; Galaxy Tab 10.1; Gravity Smart; Gem; Indulge; Infuse 4G; Intercept; Mesmerize; Nexus S; Nexus S 4G; Replenish; Sidekick; and Vibrant. I will refer to these products individually by their names, or in the following collective forms:

- "Accused Products (Gallery)" mean the Captivate; Continuum; Droid Charge; Epic 4G; Exhibit 4G; Fascinate; Galaxy Ace; Galaxy Prevail; Galaxy S (i9000); Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy S 4G; Galaxy S Showcase; Galaxy Tab 7.0; Galaxy Tab 10.1; Gravity Smart; Indulge; Infuse 4G; Mesmerize; Nexus S; Nexus S 4G; Replenish; Sidekick; and Vibrant.

- "Accused Products (Contacts)" mean the Captivate; Continuum; Droid Charge; Epic 4G; Exhibit 4G; Fascinate; Galaxy Ace; Galaxy S (i9000); Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy S 4G; Galaxy S Showcase (i500); Gem; Gravity Smart; Indulge; Infuse 4G; Mesmerize; Sidekick; and Vibrant.

- "Accused Products (Browser)" mean the Exhibit 4G; Galaxy Ace; Galaxy S II (i9100, AT&T, and Epic 4G Touch variants); Galaxy Tab 7.0; Galaxy Tab 10.1; and Gravity Smart.

- "Accused Products (ThinkFree Office)" mean the Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G,

Galaxy S Showcase, Galaxy Tab 7.0, Indulge, Intercept, Mesmerize, Replenish, and Sidekick.

38. I understand that other Samsung products contain similar features and functions, and therefore also infringe the '381 patent.

39. If I am called as an expert witness, I expect to testify regarding general background and technical matters relating to the subject matter of the '381 patent and its claims, including the operation of graphical user interfaces. I further expect to testify regarding matters pertaining to Samsung's infringement of the '381 patent. I have been asked to analyze the '381 patent and the Samsung devices and provide technical teaching and opinions regarding that patent.

40. The explanation of my opinion regarding infringement of the Asserted Claims of the '381 patent includes (1) the claim chart attached hereto as Exhibit 3, and (2) the videos on the produced herewith as Exhibits V1-V9, which are an integral part of my report, and which provide documentary and demonstrative proof of infringement of each of the Asserted Claims. (Exhibit V1 – Captivate gallery video; Exhibit V2 – Captivate contacts list video; Exhibit V3 – Vibrant gallery video; Exhibit V4 – Vibrant contacts list video; Exhibit V5 – Exhibit 4G phone gallery video; Exhibit V6 – Exhibit 4G phone contacts list video; Exhibit V7 – Exhibit 4G phone ThinkFree Office video; Exhibit V8 – Galaxy Tab 10.1 gallery video; Exhibit V9 – Galaxy Tab 10.1 web browser video.) These exhibits are intended to be exemplary and not exhaustive. The discussion below concerning infringement is meant to be read together with the material in Exhibits 3 and V1-V9. I also incorporate by reference my declaration in support of Apple's Motion for a Preliminary Injunction (Dkt. No. 91), as well as the exhibits thereto.

41. It is my opinion that the Samsung devices infringe the asserted apparatus claims of the '381 patent, and that any user operating the Samsung devices for their intended purpose, including to view electronic documents, would infringe the method claims.

**A. The '381 Patent**

42. U.S. Patent no. 7,469,381 C1 is titled List Scrolling and Document Translation, Scaling and Rotation on a Touch-Screen Display. The filing date of the patent application

74. An image being viewed on these Samsung devices may be too large to be seen in its entirety, or may be magnified, or zoomed in on, such that the entire image cannot be seen all at once. When this occurs, a user will see only portions of the image, and will need to scroll or translate the image to view the remainder. Accordingly, these Samsung devices can display a first portion of an electronic document, such as a digital photograph. By way of example, the Exhibit 4G phone is capable of displaying a first portion of an electronic document, as depicted below.



Figure 1:
Displaying "first portion" of electronic document

(Ex. 3.)

75. Each of the other Accused Products (Gallery) can also display a first portion of an electronic document, as demonstrated in Exhibits 3, V1, V3, V5, and V8. It is my opinion that the ordinary and intended use of all these Samsung devices meets this claim limitation.

76. **Claim 1, Element [c]: "detecting a movement of an object on or near the touch screen display; in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion;"**

77. The ordinary and intended use of all the Accused Products (Gallery) meets this claim limitation. When a user is viewing a photograph in the Gallery application of these devices, and places a finger on the touch sensitive screen and moves it, the Samsung devices detect that movement, and translate the electronic document, or in this case, the photograph, in the same direction, resulting in the display of another portion of the photograph which is different

Apple v. Samsung
Confidential – Attorneys' Eyes Only

1  from the first portion.  By way of example, when running the Gallery application, the Exhibit 4G

2  phone is capable of detecting the movement of a finger on its touch screen, and in response,

3  scrolling the photograph in the same direction, thus displaying a second, different portion of the

4  photograph, as depicted below.



(Ex. 3.)

78.  The source code for the Gallery application on the Exhibit 4G phone confirms what I experienced while using this device.  The detection of a user's finger and translation of the electronic document are performed in the following source code modules: RenderView.java, GLSurfaceView.java, GridLayer.java, and GridInputProcessor.java.  (SAMNDCA-C000007890-7999.)  As noted above, the Exhibit 4G phone runs Android 2.3.  Based on my inspection of Samsung source code for each major release of Android running on Samsung phones accused of infringing the claims of the '381 patent, similar code for devices running Android 2.2 can be found, for example, at SAMNDCA-C000008045 - 8180.  Similar source code for devices running Android 2.1 can be found, for example, at SAMNDCA-C000007702-7746.

79.  Each of the other Accused Products (Gallery) can also detect the movement of a finger on their touch screens, and in response, scroll a photograph in the direction of the finger movement, displaying a second, different portion of the photograph, as demonstrated in Exhibits 3, V1, V3, V5, and V8.  It is my opinion that the ordinary and intended use of all these Samsung devices meets this claim limitation.

80. To the extent that this limitation is not met literally, in my opinion it is met under the doctrine of equivalents because the Accused Products (Gallery) are insubstantially different from the device as recited in claim 1.

81. In particular, the devices with touch screen displays perform substantially the same function of translating an electronic document in a first direction to display a second portion of the electronic document, substantially the same way by displaying the movement of an electronic document to display another portion of the electronic document, to achieve substantially the same result of showing a second portion of the electronic document following movement in a direction.

82. Moreover, translating a document in a first direction based on the movement of a human finger with minor irregularity is not substantially different from doing so based on an absolutely precise movement. Translating a document in a first direction based on the movement of a human finger operates to perform substantially the same function (translating the document), in substantially the same way (by detecting the movement of an object), to obtain substantially the same result (translation of a document in a first direction) as translating based on the movement of an object with absolute precision.

83. **Claim 1, Element [d]: "in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display: displaying an area beyond the edge of the document, and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion; and"**

84. The ordinary and intended use of all the Accused Products (Gallery) meets this claim limitation. Like its physical counterpart, a digital photograph displayed on the Samsung devices has a rectangular shape bounded by four edges. As the user scrolls around the image to view each portion, he may, while scrolling in one direction, encounter the edge of the photograph, but perhaps not realizing it, attempt to continue scrolling in the same direction beyond the edge. When this occurs, the photograph will keep scrolling in the same direction and, as it is scrolled, a black region will fill in the area beyond the edge of the photograph, in effect providing a visual

indication that the image does not extend any further and that the edge of the image has been reached.

85. By way of example, the Exhibit 4G phone, in response to reaching an edge of a photograph, while a finger continues to move the photograph in the same direction, will display a black region beyond the edge of the photograph, and thereby display a smaller third portion of the photograph, as depicted below.



(Ex. 3.)

86. The source code for the Gallery application on the Exhibit 4G phone confirms what I experienced while using this device. The detection of a user's finger and translation of the electronic document are performed in the following source code modules: RenderView.java, GLSurfaceView.java, GridLayer.java, and GridInputProcessor.java. (SAMNDCA-C000007890-7999; *see also* SAMNDCA-C000008045 - 8180; SAMNDCA-C000007702-7746.) The GridInputProcessor.java file identifies the edge of the photograph and displays an area beyond the edge of the photograph.

87. Each of the other Accused Products (Gallery) exhibits the same behavior. The Gallery application on each of these products, in response to reaching an edge of a photograph while scrolling, and while a finger continues to move the photograph in the same direction, will also display a black region beyond the edge of the photograph, and thereby display a smaller third portion of the photograph, as demonstrated in Exhibits 3, V1, V3, V5, and V8. It is my opinion that the ordinary and intended use of all these Samsung devices meets this claim limitation.

88. To the extent that this limitation is not met literally, in my opinion it is met under the doctrine of equivalents because the Accused Products (Gallery) are insubstantially different from the device as recited in claim 1.

89. In particular, the devices with touch screen displays perform substantially the same function of displaying an area beyond the edge of the electronic document in response to an edge of the electronic document being reached while translating the electronic document in the first direction, substantially the same way by displaying an area beyond the edge of the electronic document when a user attempts to move the electronic document beyond its edge, to achieve substantially the same result of showing an area beyond the edge of the electronic document.

90. In addition, displaying black in an area beyond the edge of a document on a screen by not illuminating the area is not substantially different from doing so by filtering or blocking light in the area. An AMOLED screen displaying black operates to perform substantially the same function (displaying a black area), in substantially the same way (avoiding emission of light), to obtain substantially the same result (showing a black area) as a screen that displays black by filtering or blocking light.

91. **Claim 1, Element [e]: "in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion."**

92. The ordinary and intended use of all the Accused Products (Gallery) meets this claim limitation. In the Gallery application on these Samsung devices, once the user encounters the edge of a photograph, if he continues to move his finger in the same direction, more of the area beyond the edge of the photograph will be revealed as long as the user keeps his finger on or near the touch screen device. Eventually, either because he has reached the edge of the touch screen itself or otherwise wants to stop scrolling, the user will lift his finger off the screen, thereby terminating contact. When this happens, the photograph will scroll back to cover the area beyond the edge that was previously displayed.

Apple v. Samsung
Confidential – Attorneys' Eyes Only

1      93.      By way of example, the Exhibit 4G phone, in response to detecting that the finger is no longer on the touch screen, will scroll the photograph in the other direction until the area beyond the edge of the photograph is no longer displayed. What is then displayed constitutes a fourth portion of the photograph that is different from the first portion, as depicted below.



(Ex. 3.)

94.      The entire sequence is depicted below in a side by side comparison. None of the portions of the photograph as represented in Figures 1 – 4 is identical to another displayed portion.

   

Figure 1: Displaying "first portion" of electronic document

Figure 2: Displaying "second portion" by moving in first direction in response to finger movement

Figure 3: Displaying "area beyond edge" and smaller "third portion" while moving in first direction

Figure 4: When finger is lifted, document is moved in second direction to display "fourth portion" with no "area beyond edge"

95.     The source code for the Gallery application on the Exhibit 4G confirms what I experienced while using this device.  The detection of a user's lifting of his finger from the touch screen and translation of the electronic document in a second direction are performed in the following source code modules: GridInputProcessor.java and GridCameraManager.java.  (SAMNDCA-C000007967-8007; *see also* SAMNDCA-C000008045-8180; SAMNDCA-C000007730-7746; SAMNDCA-C000007781-7786.)

96.     Each of the other Accused Products (Gallery), in response to detecting that the finger is no longer on the touch screen, will scroll the photograph in the other direction until the area beyond the edge of the photograph is no longer displayed.  What is then displayed is a fourth portion of the photograph that is different from the first portion, as demonstrated in Exhibits 3, V1, V3, V5, and V8.  It is my opinion that the ordinary and intended use of all these Samsung devices meets this claim limitation.

97.     To the extent that this limitation is not met literally, in my opinion it is met under the doctrine of equivalents because the Accused Products (Gallery) are insubstantially different from the device as recited in claim 1.

98.     In particular, the devices with touch screen displays perform substantially the same function of translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, substantially the same way by translating the electronic document so that it returns to fill the screen, to achieve substantially the same result of not showing an area beyond the edge of the electronic document.

99.     Based on the foregoing analysis of documents and the operation of the Accused Products (Gallery), as indicated in more detail in the accompanying exemplary claim chart, I conclude that each and every element of claim 1 is met by the ordinary and intended use of these Samsung devices.  Therefore, the ordinary and intended use of these Samsung devices infringes that claim.

100.    Though my analysis is based on the plain and ordinary meaning of the term "edge of the electronic document," even under Samsung's construction ("a boundary of the electronic

Y0000066850.)

188. **Claim 19, Element [d]: "one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the programs including:"**

189. It is my opinion that each of these devices satisfies this element of claim 19.

190. As described above in the discussion of claim 1, these devices run a number of programs such as the "Gallery," "Contacts," "Browser," and "ThinkFree Office" applications. These programs are stored in the memory of the Samsung devices, and are configured to be executed by the processors in the Samsung devices. In addition, by way of example, Samsung describes in the user manual for the Exhibit 4G phone the process of launching and using the Gallery application:



(APLNDC-Y0000066418.)

191. Because these devices perform the elements described in claims 1 and 19, they must have instructions for performing those methods and a storage medium for those instructions as recited in those claims. As noted above, all of the aforementioned Samsung devices use the Android software platform. As the publicly available source code and documentation for the Android software platform available on the Android developers website (http://developer.android.com) confirm, this software platform includes executable instructions for displaying electronic documents, as described above.

192. Moreover, as discussed above, I have also confirmed that these products contain programs and instructions for performing the methods discussed above. For example, the source code for detecting a user's finger movement, translating an electronic document, detecting a user's lifting of his finger from the touch screen, and translating an electronic document in a second direction can be found in the following source code modules for the Exhibit 4G phone's Gallery application: RenderView.java, GLSurfaceView.java, GridLayer.java, and

1  GridInputProcessor.java, and GridCameraManager.java. (SAMNDCA-C000007890-8007.) As
2  another example, the source code for detecting a user's finger movement, translating an electronic
3  document, detecting a user's lifting of his finger from the touch screen, and translating an
4  electronic document in a second direction can be found in the following source code modules in
5  the Galaxy Tab 10.1's Browser application: WebView.java and View.java. (SAMNDCA-
6  C000003501 – 3549.)
7       193.    Based on my inspection of Samsung source code for each major release of
8  Android running on the Samsung products accused of infringing the claims of the '381 patent
9  (Android 2.1, 2.2, 2.3, and 3.1), I have determined that each such product includes similar
10 computer code that detects a user's finger, translates an electronic document, and displays an area
11 beyond the edge of the electronic document.
12      194.    Accordingly, executable instructions for performing the infringing functionalities
13 are stored in memory on these devices.
14      195.    **Claim 19, Element [e]: "instructions for displaying a first portion of an**
15 **electronic document;"**
16      196.    It is my opinion that each of the aforementioned Samsung devices satisfies this
17 element of claim 19.
18      197.    As depicted in Exhibit 3, and by way of example, the Exhibit 4G phone can
19 display a first portion of an electronic document such as a photograph through its Gallery
20 application. Because the Exhibit 4G phone performs this element of claim 19, it must have
21 instructions for displaying a first portion of an electronic document such as a photograph. What I
22 observed on the device is further confirmed by my inspection of the source code for the Gallery
23 application in the Exhibit 4G phone, discussed above.
24      198.    Each of the other aforementioned devices can also display a first portion of an
25 electronic document, as demonstrated in Exhibit 3, and therefore must also have instructions for
26 doing so.
27      199.    **Claim 19, Element [f]: "instructions for detecting a movement of an object on**
28 **or near the touch screen display; instructions for translating the electronic document**

1  for displaying electronic documents, as described above.  Accordingly, executable instructions for
2  performing the infringing functionalities are stored on a computer readable medium on the
3  aforementioned devices.

4  230.  Moreover, as noted above, I have also confirmed that the aforementioned devices
5  contain programs and instructions for performing the methods discussed above.  For example, the
6  source code for detecting a user's finger movement, translating an electronic document, detecting
7  a user's lifting of his finger from the touch screen, and translating an electronic document in a
8  second direction can be found in the following source code modules for the Exhibit 4G phone's
9  Gallery application: RenderView.java, GLSurfaceView.java, GridLayer.java, and
10 GridInputProcessor.java, and GridCameraManager.java.  (SAMNDCA-C000007890-8007.)  As
11 another example, the source code for detecting a user's finger movement, translating an electronic
12 document, detecting a user's lifting of his finger from the touch screen, and translating an
13 electronic document in a second direction can be found in the following source code modules for
14 the Galaxy Tab 10.1's Browser application: WebView.java and View.java.  (SAMNDCA-
15 C000003501 – 3549.)

16 231.  Based on my inspection of Samsung source code for each major release of
17 Android running on the Samsung products accused of infringing the claims of the '381 patent
18 (Android 2.1, 2.2, 2.3, and 3.1), I have determined that each such product includes similar
19 computer code that detects a user's finger, translates an electronic document, and displays an area
20 beyond the edge of the electronic document.

21 232.  **Claim 20, Element [a]: "display a first portion of an electronic document;"**

22 233.  It is my opinion that each of the aforementioned Samsung devices satisfies this
23 element of claim 20.

24 234.  As depicted in Exhibit 3, and by way of example, the Exhibit 4G phone can
25 display a first portion of an electronic document such as a photograph.  Because the Exhibit 4G
26 phone performs this element of claim 20, it must have a computer readable storage medium with
27 executable instructions for displaying a first portion of an electronic document such as a
28 photograph.

**AA. Supplementation**

267. I reserve the right to supplement this report with new information and/or documents that may be discovered or produced in this case, or to address any new claim constructions offered by Samsung or ordered by the Court.

268. In connection with my anticipated testimony in this action, I may use as exhibits various documents produced in this case that refer or relate to the matters discussed in this report. In addition, I may have demonstrative exhibits prepared to assist in the presentation of my testimony and opinions as set forth or cited in my report.

Dated: March 22, 2012

_____
RAVIN BALAKRISHNAN