QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | **SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR RULE 37(b)(2) SANCTIONS FOR SAMSUNG'S ALLEGED VIOLATION OF JANUARY 27, 2012 DAMAGES DISCOVERY ORDER** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Date:   April 3, 2012<br>Time:   10:00 a.m.<br>Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |
| Defendant. | |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

1. Apple's Requests for Production ("RFPs") of Samsung Financial Documents and Samsung's Offer to Produce Information and Documents Responsive to Apple's RFPs ........................................................ 2

2. Apple Rejects Samsung's Compromise and Moves to Compel .................... 3

3. Samsung's Opposition to Apple's Motion to Compel .............................. 5

4. The Court's January 27, 2012 Discovery Order ........................................ 5

5. Samsung's Compliance with the January 27, 2012 Discovery Order .......... 6

6. Apple's Repeated Late Production of Documents Ordered Produced By February 3rd Pursuant to the January 27, 2012 Order ........................... 9

ARGUMENT ........................................................................................................................... 11

I. LEGAL STANDARD ................................................................................................. 11

II. SAMSUNG COMPLIED WITH THE COURT'S DISCOVERY ORDER ..................... 12

A. Samsung Complied With The Order to Produce ................................................ 12

B. Apple's Assertions About Errors in the February Spreadsheet Are Either Erroneous or Mooted by Samsung's Subsequent Production of Revised and Supplemental Spreadsheets ................................................................. 13

1. The February Spreadsheet (and the Subsequent Spreadsheets) Properly and Accurately Respond to Apple's Request for a Spreadsheet Drawn From Samsung's System of Record of Accounting Information ............................................................. 14

2. The Spreadsheet Does Not Improperly Omit Information About Five Galaxy Products ...................................................................... 14

(a) Galaxy S II Skyrocket, Galaxy S II Epic 4G, and Galaxy Tab 10.1 LTE ............................................................................ 15

(b) Galaxy S II (T–Mobile edition) and Galaxy S II (AT&T edition) ............................................................................... 16

3. Samsung Has Already Produced the Supplemental Spreadsheets Providing Line Item Detail for Operating Expenses ................................... 17

4. Samsung Is Providing Information Correlating Specific Phone Models with Specific Carriers .......................................................... 17

|   | 5. | Samsung Is Explaining Why Sections Do Not "Add Down" ...................... 17 |

| | 6. | Samsung Has Already Produced the Revised Spreadsheet in Which the Sum of the 29 Product Tabs Equals the Amounts Shown on the Total Tab ...................................................................................................... 18 |

| | 7. | Samsung's Accounting Representative Has Already Explained Why the Product Sales Figures in the Spreadsheets Are Not "Missing or Illogical".............................................................................................................. 18 |

| | 8. | Samsung's Accounting Representative Has Already Explained in His Deposition and Does So Again in His Declaration Samsung's Method for Allocating Expenses to Specific Products................................ 19 |

| C. | Apple's Other Assertions that Samsung Has Withheld Documents It Was Ordered to Produce Are Equally Meritless ............................................................ 20 |

| | 1. | Samsung Neither Committed Nor Was Ordered to Produce Costed Bills of Materials for the Accused Products................................................. 20 |

| | 2. | Flux Analysis Reports are Clearly Not Encompassed Within the Order............................................................................................................ 21 |

| | 3. | "Pumi" Reports Are Not Encompassed Within the Order ......................... 21 |

| III. | ANY TECHNICAL VIOLATION OF THE DISCOVERY ORDER THAT THE COURT MIGHT FIND WAS NOT COMMITTED WILLFULLY, IN BAD FAITH, OR THROUGH FAULT SO AS TO CREATE "EXTREME CIRCUMSTANCES" JUSTIFYING THE EVIDENTIARY AND PROCEDURAL SANCTIONS REQUESTED BY APPLE ...................................................................... 22 |

| CONCLUSION ................................................................................................................................ 25 |

# TABLE OF AUTHORITIES

**Page**

## Cases

*Computer Task Group, Inc. v. Brotby*,
  364 F.3d 1112 (9th Cir. 2004)..........................................................................................11, 24

*Fair Housing of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002)......................................................................................................11

*In re Heritage Bond Litig.*,
  223 F.R.D. 527 (C.D. Cal. 2004) ................................................................................................11

*Lundy Enterprises, LLC v. Wasau Underwriters Insurance Company*,
  No. 06-3509, 2010 WL 323571 (E.D. La. Jan. 21, 2010)....................................................24, 25

## Statutes

Fed. R. Civ. P. 26(a)(1)(A)(iii)..........................................................................................................24

Fed. R. Civ. P. 37(b)(2)(A)(i) - (ii) ...................................................................................................11

Fed. R. Civ. P. 37(b)(2)(A) ......................................................................................................11, 22, 24

Fed. R. Civ. P. 37(c)..........................................................................................................................24

# PRELIMINARY STATEMENT

Samsung has fully complied with its obligations under the Federal Rules of Civil Procedure and the Court's January 27 Order.   Samsung offered to produce and did produce, pursuant to the Order, documents concerning revenue, cost of goods sold ("COGS"), operating expenses, profitability, and U.S. market launch dates, along with audited financial statements. The Court should reject Apple's complaint – that it did not get the laundry list of unnecessary financial documents that Samsung never offered to produce and the Court never compelled Samsung to produce – and deny Apple's request for sanctions.

Apple's motion lacks merit for a number of reasons.   First, Apple disingenuously points to its proposed order which the Court never adopted.   Instead, the Court ordered Samsung to produce what Samsung offered as a compromise in its January 10 letter.   To seek sanctions on the rest of the relief that Apple sought, but did not obtain, constitutes a collateral attack on the Court's January 27 order and violates Samsung's rights.

Second, in its motion to compel which led to the January 27 Order, Apple sought a comprehensive electronic spreadsheet containing various financial data.   Samsung produced the very type of comprehensive Excel spreadsheet that Apple had requested.   It contained a vast amount of financial data concerning the specific categories for which Samsung had agreed to produce documents.   Apple is not entitled to complain that it does not like the content of Samsung's financial records.   Nor can it seek sanctions because of the alleged inconsistencies or incompleteness of the information.   Any questions regarding such alleged inconsistencies can be resolved by depositions, which is what Apple had a full opportunity to do when it questioned Samsung's 30(b)6 witnesses.   Moreover, Samsung supplemented and clarified the spreadsheet in order to meet Apple's ever-increasing demands and attempt to resolve the issue short of motion practice.   Such good-faith efforts cannot constitute the basis for sanctions.

Third, in addition to the reliable and informative spreadsheet, Samsung has produced a multitude of other regularly kept business records documenting various pertinent aspects of Samsung's financial performance associated with the accused products.   Thus, Apple's suggestion that all Samsung effectively has done is produce one spreadsheet is simply incorrect.

1      Finally, to the extent that Samsung has produced any compelled documents after the

2  February 3, 2012 deadline, it did so in good faith to provide Apple greater detail and to correct

3  discrepancies or errors discovered in its earlier productions (just like Apple has done).   Apple

4  itself has repeatedly produced key financial documents under the same Order late, in some cases

5  almost five weeks late.   In no event has Samsung disobeyed the Order willfully, in bad faith or

6  through fault, and thus no "extreme circumstances" exist here that would justify the evidentiary

7  and procedural sanctions requested.   For all these reasons, Apple's motion should be denied.

8                    **BACKGROUND**

9      **1.**      **Apple's Requests for Production ("RFPs") of Samsung Financial**

10          **Documents and Samsung's Offer to Produce Information and**

11          **Documents Responsive to Apple's RFPs**

12      In August and October 2011, Apple served RFPs seeking wide-ranging categories of

13  financial documents from Samsung.[1]   On January 10, 2012, Samsung's counsel wrote a letter to

14  Apple's counsel describing what had been produced up to that time, and what further categories of

15  financial documents Samsung agreed to produce as a way of resolving the parties' dispute about

16  outstanding RFPs:

17    **Financial Documents**

18    Samsung has confirmed that much of the financial information Apple seeks has
already been produced to Apple in the ITC and N.D. Cal. matters. Specifically,
19    Samsung has produced documents showing per-product total sales and units sold to
each carrier, as well as profits, and documents sufficient to show pricing information
20    on a weekly basis. Samsung also has produced annual business plans which include
P/L statements indicating operating expenses, administrative expenses, and R&D
21    expenses. These business plans also indicate per-month sales quantities for
smartphones and tablets, net and gross sales, costs of goods sold, and gross margins.
22    Samsung has also produced weekly reports from carriers which summarize
advertising and marketing expenses.   Samsung will be supplementing this
23    production for completeness shortly.

24    In addition to this prior production, to the extent it has not already been produced,
Samsung further agrees to supplement this production with responsive, non-
25    privileged documents reflecting U.S. (and where appropriate, worldwide) units by
month or quarter from product release to 2011 for the accused products, U.S. (and
26    where appropriate, worldwide) revenue by month or quarter from product release to
2011 for the accused products, responsive, nonprivileged documents showing gross
27    profit, cost of goods sold, operating costs and profitability for the accused products,
non-public audited financial reports from each of the Samsung defendant entities,

28

[1]  Dkt. No. 759-04a; Dkt. No. 759-04b.

documents sufficient to show the date each accused product became available to U.S. markets (at least for accused products that were actually sold or offered for sale in the U.S.), and any non-privileged IP valuations for the patents-in-suit. We anticipate substantially completing this production by February 3. If we are able to produce this information sooner, we will do so.[2]

### 2.    Apple Rejects Samsung's Compromise and Moves to Compel

Apple rejected Samsung's compromise proposal and, on January 11, 2012, moved to compel.[3]   In its motion, Apple complained that the financial reports Samsung had previously produced were "not drawn consistently from Samsung's system of records, and no single type of report exists in sufficient numbers to cover the relevant period."[4]   In his declaration in support of Apple's motion, Erik Olson discussed Samsung's system of records at length, noting that:

> Samsung uses an electronic database, as its 'system of record' to keep track of accounting and financial data.   Such systems store data and can routinely be used to prepare financial statements or financial reports through an electronic interface. Such reports can be prepared either based on a standardized template or prepared based on ad hoc criteria selected by a user.   Such systems reduce the need to 'print' certain financial data as a hard copy.   Nonetheless, they are designed to provide consistent, and often immediate, access to updated reports for members of a company's finance and management team.[5]

Apple emphasized the fact that "Samsung has the ability to generate reports reflecting financial data simply by pressing a few buttons,"[6] making it clear that the target of its discovery requests was reports generated by Samsung's electronic system of records (which, as explained below, Samsung in fact produced).

In connection with its motion to compel, Apple submitted a proposed order consisting of nine pages of various document categories for which Apple sought to compel production.[7]   More than two pages of the proposed order covered categories of requested financial documents. Specifically, Apple moved to compel eight separate categories of financial documents:

> A.    Documents evidencing Samsung's U.S. and worldwide revenue, unit sales and selling price for the accused products (smartphones and tablets), including:

---

[2]    Dkt. No. 642-05 at 1-2.
[3]    Apple Inc.'s Motion to Compel Production of Documents and Things, January 11, 2012 (Dkt. No. 613-01) ("Motion to Compel"), at 19:14-15, Declaration of Christopher E. Price ("Price Decl."), Ex. 12.
[4]    Dkt. No. 613-01 at 19:14-15, Price Decl., Ex. 12.
[5]    Declaration of Erik J. Olson in Support of Motion to Compel (Dkt. No. 615), ¶ 4, Price Decl., Ex. 13.
[6]    Dkt. No. 613-01 at 21:13-14, Price Decl., Ex. 12.
[7]    Dkt. No. 616.

1. Samsung's U.S. and worldwide revenues for the accused products (1) per smartphone or tablet (2) per carrier (3) per quarter.

2. Samsung's U.S. and worldwide unit sales for the accused products (1) per smartphone or tablet (2) per carrier (3) per quarter.

3. Samsung's U.S. and worldwide average selling price for the accused products (1) per smartphone or tablet (2) per carrier (3) per quarter.

B.    Documents sufficient to show the date when each accused product was introduced into the U.S. market.

C.    Reports showing gross profit and Samsung's cost of goods sold:

1. For each accused product, costed bills of materials and financial reports provided to U.S. or corporate management reflecting Samsung's calculation of its gross margin for the accused products from June 2009 to the present.

2. To the extent the reports are not prepared on a product-by-product basis, reports reflecting gross margins or gross profit consolidated for the accused products, for tablets and for smartphones or for Galaxy S and Galaxy SII line of phones as reflected on a quarterly or monthly basis.

3. Based on standard accounting and financial conventions, these reports should show both standard costs for the components that make up the phones and allocations of other expenses (such as freight, variances, and manufacturing overhead) to calculate a consolidated cost of goods sold.

D.    Reports reflecting operating costs and profitability with respect to smartphones:

1. Consolidated reports provided to U.S. and corporate management reflecting any expenses not included in costs of goods sold that Samsung incurs or allocates to U.S. smartphone or tablet products, including any research and development expenses, sales and marketing expenses, and general and administrative expenses.

2. Consolidated reports that reflect how such expenses for the accused products compare to U.S. expenses for mobile phones more generally and/or to worldwide expenses.

3. Consolidated reports on operating profit for any of the accused phones, for smartphones, and for mobile phones more broadly reflecting the foregoing expenses.

E.    Audited or unaudited financial reports for each entity named as a defendant in this case and for each Samsung entity that sells any of the accused products, audited (or, if audited are unavailable, unaudited) financial reports (including at a minimum an income statement, balance sheet, cash flow statement and all associated notes) for each quarter or fiscal year ending on or after March 31, 2009.

F.    Documents relating to any financial valuation of the intellectual property in suit. The foregoing should include any reports on in-process research and development calculations that include technology related to any accused products,

any valuation used for balance sheet valuations, amortization, or a write-off of intangible assets.

G.     Documents sufficient to show relevant expense for research and development and to design around any patent, including:

1. Any consolidated reports on the expense Samsung incurred to develop any of the accused products.

2. Any reports or financial information that reflect the actual or projected expense to design around any patent.

H.     Any quarterly, annual or multi-year business plans prepared for the accused products or the divisions of Samsung that sell the accused products.[8]

### 3.     Samsung's Opposition to Apple's Motion to Compel

On January 17, 2012, Samsung filed its opposition to Apple's motion.[9]   In its opposition, Samsung reaffirmed that it had already agreed to produce the following categories of financial documents to resolve the dispute over Apple's outstanding RFPs:

- U.S. (and where the same products are sold elsewhere, worldwide) units from the time of the product's release or first sale to 2011 for the accused products;

- U.S. (and where the same products are sold elsewhere, worldwide) revenue from the time of the product's release or first sale to 2011 for the accused products;

- documents showing cost of goods sold, operating expenses, and profitability for the accused products;

- non-public audited financial reports from each of the Samsung defendant entities;

- documents sufficient to show the date each accused product became available to U.S. markets (at least for accused products that were actually sold or offered for sale in the U.S.); and any non-privileged IP valuations for the patents-in-suit.[10]

### 4.     The Court's January 27, 2012 Discovery Order

On January 27, 2012, this Court issued its Order Re Discovery Motions ("Order") resolving motions filed by both parties.    In Section D.4 of that Order, entitled "**Sales and financial information relevant to establishing damages**," the Court ruled as follows:

Apple seeks a number of categories of sales and marketing information, including U.S. and worldwide sales and revenues, selling price per accused product, gross margin, expenses and operating profit, and Samsung's audited or unaudited financial reports.   Apple argues that Samsung's production to date has provided scattered and piecemeal financial information that does not offer any consistent record for Apple to draw from.   Samsung does not dispute that sales and profitability information is

---

[8]   Dkt. No. 616.
[9]   Dkt. No. 642-3.
[10]   Dkt. No. 642-3 at 14.

1    relevant to Apple's damages, if any.   Samsung has agreed to supplement its
2    production to date and provide responsive documents to all of the categories listed by
     Apple.[fn 34]

3    **The court finds Samsung's proposed production to be sufficient to meet Apple's
     legitimate requests for this category of documents.**[11]
4

5    Footnote 34 of the Order reads:   "*See* Docket No. 642 at 14; Docket No. 642-1 (Jan. 10 letter)."[12]

6    "Docket No. 642 at 14" is page 14 of Samsung's opposition to Apple's motion to compel, in

7    which Samsung listed the six categories of documents and information that it had offered to

8    produce in its January 10 letter.   "Docket No. 642-1 (Jan. 10 letter)" is the January 10 letter from

9    Samsung's counsel.

10        Notably, the Court did not quote from or cite to the two pages worth of categories of

11   documents or information specified in Apple's proposed order.   Nor did the Court refer at all to

12   any comments about any topic made by either party or the Court at the January 19, 2012 hearing

13   on Apple's motion.[13]

14        The Order compelled production of the pertinent information and documents to begin on a

15   rolling basis and conclude by February 3, 2012.[14]

16        **5.        Samsung's Compliance with the January 27, 2012 Discovery Order**

17        Samsung has abided by the Court's Order directing Samsung to produce the categories of

18   financial documents it had agreed to produce, which the Court specifically found to be sufficient

19   to meet Apple's requests for financial documents.   Samsung's combined productions in this

20

21

22   ──────────────────
     [11]   Dkt. No. 673 at 15:14-23 (emphasis added).
23   [12]   *Id.* at 15 n.34.
     [13]   *Id.* at 15:14-23.   In that regard, Apple includes several snippets of comments made at the
24   hearing by Samsung's counsel to suggest that Samsung's counsel agreed at the hearing to produce
     every single document requested by Apple.   *See, e.g.,* Motion at 5:4-10, 8:23-27.   Apart from the
25   fact that the Court's Order did not incorporate any representation made by Samsung's counsel at
     the hearing, it is clear that Samsung's counsel's representations about what Samsung had agreed to
26   produce matched exactly what Samsung had agreed to produce in its January 10th letter and in its
     opposition.   Samsung's counsel said precisely that at the hearing:   "So everything that he's
27   saying is wrong with our offer, I don't agree with.   And I think the offer speaks for itself which is
     in the January 10th letter and also listed again in our opposition brief."   Transcript of Proceedings,
     CV-11-1846-LHK, January 19, 2012, at 169:5-9, Declaration of Erik J. Olson ("Olson Decl.")
28   (Dkt. No. 759-4), Price Decl., Ex. 8.
     [14]   Dkt. No. 673 at 2:5-7.

action and in the two ITC actions[15] total over 12,000 pages worth of financial documents,

including spreadsheets containing information from Samsung's accounting database, weekly sales

reports generated internally and by carriers, monthly closing reports, annual business plans, P/L

statements, and audited financial statements.[16]   Samsung's production of documents falling within

the categories of documents covered by the Order are summarized as follows:

- **Documents Reflecting Sales and Revenue Information**.   On February 3, 2012, Samsung produced a comprehensive Excel spreadsheet with detailed sales information per month, per quarter, and per accused model for each defendant – and worldwide – from May 2010 to December 2011, including quantity of units sold, average selling price, and net revenue ("the February Spreadsheet").[17]   Additionally, Samsung has produced numerous documents created in the ordinary course of business reflecting sales and revenue, including monthly and weekly sales reports, and documents showing per-product quantities sold and unit prices for every domestic sale to carriers or distributors from January 2010 to December 2011.[18]

- **Cost of Goods Sold, Operating Expenses, and Profitability**.   Samsung's February Spreadsheet shows cost of goods sold, operating expenses and operating profit for each of the accused products.[19]   In response to Apple's requests for more minute detail concerning operating expenses, Samsung produced two supplemental

---

[15]   Apple's Motion distinguishes between documents produced with ITC Bates numbers and those with N.D. Cal. Bates numbers.   *See, e.g.,* Motion at 15:8-20.   This is a distinction with no difference.   The protective order in this action provides that documents produced in the two ITC actions pending between the parties are automatically deemed produced in this action.   Dkt. No. 687 at ¶ 22.   Thus, Apple's attempt to isolate Samsung's production of financial documents with N.D. Cal. Bates numbers paints an incomplete and misleading picture of Samsung's production.

[16]   Declaration of Joby Martin ("Martin Decl."), ¶ 2 & Ex. 1.

[17]   Declaration of Timothy Sheppard ("Sheppard Decl."), ¶ 10.   The February Spreadsheet, as well as the later revised and supplemental spreadsheets described below, were created from Samsung's SAP database, the primary repository of Samsung's financial and sales data. Sheppard Decl., ¶¶ 31-32.   As explained in the Sheppard Declaration, the financial spreadsheets produced by Samsung are based on data comprised of millions of individual transactions or items, which are electronically maintained; Samsung does not maintain paper back-up documentation for such transactions/items.   Samsung's typical sales and financial reports do no not contain all of the information Apple seeks on a regular basis.   Sheppard Decl., ¶¶ 32, 35.   Therefore, in order to satisfy Apple's requests for per-product data, the pertinent information had to be pulled from the SAP database.   *Id.*   Notwithstanding Apple's generalized complaint that the February Spreadsheet is "litigation-driven," the data comes directly from the accounting system used by Samsung in the ordinary course of its business, and was produced without modification or manipulation.   *Id.*   In his deposition, Jaehwang Sim, an SEC vice president who heads the management support team, confirmed that the data in the financial spreadsheets produced by Samsung comes from Samsung's SAP system, the information is maintained on the SAP system pursuant to routine accounting procedures in accordance with GAAP, and the information is audited on a regular basis.   Deposition of Jaewhang Sim, March 10, 2012 ("Sim Depo."), at 8:11-25, 35:6-12, 103:12-104:16, Declaration of John S. Gordon ("Gordon Decl."), ¶ 9 & Ex. 6.

[18]   Martin Decl., ¶ 7 & Ex. 2.

[19]   Sheppard Decl., ¶¶ 10-11.   SEC does not track gross margin on a per product basis.   *See* Sim Depo. at 150:17-153:11.   For STA and SEA, gross margin per product can be easily calculated from the spreadsheets by deducting cost of goods sold from net revenue.   Sheppard Decl., ¶ 11.

spreadsheets on March 8, 2012 ("the Supplemental Spreadsheets").[20]   The Supplemental Spreadsheets break out the operating expense line item into additional sub-categories, such as labor costs, depreciation, logistics costs, marketing, paid commission, insurance, and others.[21]   In addition to the two Supplemental Spreadsheets, Samsung produced business plans and P/L statements for the divisions that are responsible for the accused products.[22]   These documents contain detailed information concerning cost of goods sold, operating expenses, administrative expenses, materials and manufacturing costs, labor costs, transportation and freight costs, warehouse and inventory fees, and R&D expenses.[23]

- **Non-public audited financial reports**.   Samsung has produced non-public audited financial reports prepared by accounting firm KPMG and provided to corporate management for STA and SEA covering the years 2010 and 2011.[24]   There are no such reports prepared for SEC.

- **Documents sufficient to show when each accused product became available to U.S. markets**.   Samsung has produced internal weekly sales reports, as well as weekly reports from carriers, which show domestic launch dates for each of the accused products.[25]   In addition, Samsung provided Apple with this information—for both the accused products, as well as products embodying the Samsung patents-in-suit—in response to Apple's Interrogatory No. 14.[26]

- **Non-privileged valuations for the patents-in-suit**.   After conducting a reasonable search, Samsung has determined that it does not possess any non-privileged valuations for the patents-in-suit.

Samsung has revised the February spreadsheet on several occasions to provide Apple with greater clarity, detail, and accuracy.   On February 10, 2012, Samsung produced a supplemental spreadsheet to distinguish between three identical products sharing the same model number but sold under different product names (the Mesmerize, the Fascinate, and the Showcase).[27]   On February 28, 2012, Samsung produced a revised spreadsheet ("the Revised Spreadsheet") to add the 3G version of the Galaxy Tab 7.0 (as opposed to the WiFi version), and to correct a discrepancy in the "Total" tab, making it consistent with the amounts in the 29 product tabs.[28]   Finally, as noted above, Samsung produced the Supplemental Spreadsheets, which contain more detailed information about the breakdown of operating expenses.[29]   They also contain some slightly different numbers to correct an error that Samsung discovered.   Samsung realized that the

---

[20]   Martin Decl., ¶ 6.
[21]   Sheppard Decl., ¶ 30.
[22]   Martin Decl., ¶ 8 & Ex. 3.
[23]   Id.
[24]   Id., ¶ 9 & Ex. 4.
[25]   Id., ¶ 10 & Ex. 5.
[26]   Id., ¶ 11 & Ex. 6.
[27]   Id., ¶ 4.
[28]   Id., ¶ 5.
[29]   Id., ¶ 6.

1   February and Revised Spreadsheets mistakenly contained financial results from some partly

2   owned Chinese subsidiaries that are not defendants and are not involved in the litigation because

3   they do not manufacture or distribute any of the accused products.   As a result of discovering the

4   need to remove the Chinese companies' profit/loss and COGS information from the earlier

5   spreadsheets, Samsung essentially "zeroed out" the profit/loss and COGS information for the

6   uninvolved Chinese subsidiaries on the Supplemental Spreadsheets so they do not contain

7   financial information for those subsidiaries.[30]   The effect of the removal of the Chinese

8   subsidiaries' financial results from the Supplemental Spreadsheets was about a 1% difference in

9   the overall result of sales in the earlier spreadsheets (but as to a particular product, the change

10  could possibly be greater--up to 5%).[31]

11       Samsung has, in fact, produced more than just the specific categories of documents it

12  agreed, and was accordingly ordered, to produce.   Samsung recently produced Charts of Accounts

13  showing a variety of overhead expenses for STA's Wireless Terminals Division—documents

14  which Apple has explicitly admitted were not covered by the January 27th Order.[32]   Samsung also

15  recently produced Global Consolidation Reports, showing statements of comprehensive income,

16  changes in equity, and cash flows.[33]   Samsung also supplemented its previous production of

17  monthly closing reports.[34]

18       **6.      Apple's Repeated Late Production of Documents Ordered Produced By**

19           **February 3rd Pursuant to the January 27, 2012 Order**

20       Apple has belatedly produced numerous financial documents that the Court ordered Apple

21  to produce by February 3, 2012.[35]   Examples of such late production include the following:

22

23  [30]   Sim Depo. at 35:13-36:25, 43:20-45:21; 114:1-115:15, 183:15-185:2, Gordon Decl., Ex.
    6.

24  [31]   Sim Depo. at 45:22-48:23; Gordon Decl., Ex. 6.
    [32]   Martin Decl., ¶¶ 12-13 & Exs. 7-8.

25  [33]   *Id.*, ¶ 14 & Ex. 9.
    [34]   *Id.*, ¶ 15.

26  [35]   Dkt. No. 673 at 2:5-7, 21:11-22 (ordering Apple to produce by February 3, 2012 relevant
    financial documents needed to assess damages, as well as business plans and strategies requested

27  by Samsung).   The Court also ordered Apple to perform queries of its financial system of record
    to the level of granularity requested by Samsung, including providing data on a model or product

28  basis if possible).   Samsung's requests for production, Nos. 6-8, 25, 29, 42-44, 54-55, 69, 116,
    130-134, 175, and 252-54 were repeated in its motion to compel.   Dkt. No. 603 at 26-40.

- **March 8 Production of Financial Documents**.   From March 8 to 9, almost five weeks after the February 3rd deadline, Apple produced approximately 40,000 documents, comprised of over 470,000 pages.   While Samsung's review of this production is ongoing, to date it has revealed that various financial documents encompassed by the Court's Order have just now been produced.   This includes gross margin reports that identify material costs, management costs, marketing costs, and gross margins for Apple's iPhone products, as well as reports of Apple earnings from search engines on the iPhone.[36]

- **March 8 Production of a New Version of Apple's Licensing Royalty Chart**.   A particularly egregious example is Apple's late production of a chart purportedly showing the royalties Apple has paid to licensors in relation to its iPhone, iPad, and iPod products.   Apple produced an early version of this chart before the February 23, 2012 deposition of its Rule 30(b)(6) witness on financial topics, Mark Buckley.[37] More than two weeks later, on the last day of discovery, and more than a month after the February 3rd deadline, Apple produced another version of the chart that dramatically differs from the earlier version.[38]   The latest chart more than doubled the number of licensors, added hundreds of millions in royalty payments for 2011Q2 through 2012Q1, and added over $640 million in iPhone and iPad royalty payments for the same time periods supposedly covered by the earlier version.   All told, the latest chart reports $1,421,423,746 more in iPhone royalty payments, $215,402,640 more in iPad royalty payments, and $365,124,247 more in iPod royalty payments than the earlier version.[39]

- **March 7 Production of Sales Information**.   On March 7, 2012, Apple produced over a month late a responsive document entitled "iPhone Units by Channel/Carrier/Reseller."[40]   The document contains sales information on a per-unit basis broken down by the carrier, channel, and reseller of Apple's products. This information was produced two weeks *after* the deposition of Apple's 30(b)(6) witness on financial topics.

- **February 16, 2012 Production of Financial Documents**.   On February 16, 2012, almost two weeks after the February 3rd deadline, Apple produced bills of materials and other financial information, including quarterly revenue, costs of goods sold, operating expenses, gross margin, operating margin, research and development costs and capital expenditures for the iPhone, iPod Touch, and iPad.[41]   Apple admitted in

---

[36]   APLNDC-Y0000148289-8458, Price Decl., Ex. 1; 3/8/2012 email from Ken MacCardle, Price Decl., Ex. 2; APLNDC-Y0000232431-2446, Price Decl., Ex. 10; 3/8/2012 (10:45 p.m.) email from Mollie B. Gabrys, Price Decl., Ex. 11.

[37]   Exhibit 18 to the February 23, 2012 Deposition Transcript of Mark Buckley, Price Decl., Ex 3.

[38]   APLNDC-Y0000232396-2430 (Apple Inc. Royalties Chart), Price Decl., Ex. 4; 3/8/2012 (10:05 p.m.) email from Mollie B. Gabrys, Ex. 5.

[39]   To add insult to injury, Apple's forensic accountant, Eric Roberts, complains in his declaration that Samsung has not provided a revised spreadsheet in native Excel format. Declaration of Eric R. Roberts in Support of Motion to Enforce January 27, 2012 Order as to Financial Documents ("Roberts Decl.") at 2 n.1.   The fact of the matter is that after Samsung originally produced to Apple a spreadsheet in native electronic format, Apple refused to produce any document in native format if it can be printed out in legible paper form.   Feb. 10, 2012 letter from Jason Bartlett to Diane Hutnyan, Price Decl., Ex. 6.   Samsung is more than willing to resume producing spreadsheet documents in native format so long as Apple reciprocates.   Thus far, however, Apple has refused.

[40]   "iPhone Units by Channel/Carrier/Reseller," APLNDC-WH-A0000024846-4851, Price Decl., Ex. 7; March 7, 2012 letter from Matthew Hoff to Rachel Kassabian, Ex. 8.

[41]   Feb. 23, 2012 letter from Jason Bartlett to Diane C. Hutnyan, Price Decl., Ex. 9, at 10.

response to Samsung's meet and confer letter that these documents were responsive to the Court's January 27 Order but produced, for the most part, almost two weeks after February 3.[42]

## ARGUMENT

## I.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(b)(2)(A), if a party fails to obey a discovery order, the court may issue "further just orders" that may include, among other specified sanctions, the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . . .

Fed. R. Civ. P. 37(b)(2)(A)(i) - (ii).

Under Ninth Circuit law, such harsh evidentiary or procedural sanctions are "appropriate only in 'extreme circumstances' and where the violation is 'due to willfulness, bad faith, or fault of the party.'"   *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); *see also In re Heritage Bond Litig.*, 223 F.R.D. 527, 530 (C.D. Cal. 2004) (preclusion of defenses or evidence as sanction under Rule 37(b)(2) is "appropriate only in extreme circumstances and where the violation is due to willfulness, bad faith, or fault of the party.") (*quoting Fair Housing of Marin*).

In deciding whether to grant a motion for sanctions under Rule 37(b)(2)(A) for noncompliance with a discovery order, a court should consider five factors:   "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."   *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004).   "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default.   Therefore, it is the third and fifth factors that are decisive."   *Id.*

---

[42]      *Id.*, Price Decl., Ex. 9, at 10.   In the letter, Apple claimed that it had previously produced these documents in the '794 ITC matter and therefore, "is already in the possession of Samsung's counsel."

1  **II.       SAMSUNG COMPLIED WITH THE COURT'S DISCOVERY ORDER**

2         The overwhelming thrust of Apple's Motion is that Samsung supposedly violated the

3  Court's Order because Samsung did not produce various specific types of documents that Apple

4  requested and listed in its proposed order.[43]   Apple even goes so far as to say that the Order

5  required Samsung to "produce everything responsive to Apple's request."[44]

6         Apple's Motion suffers from a fundamental misconception:   it is written as though the

7  Court had signed Apple's lengthy and micro-detailed proposed order (or adopted those two pages

8  of the proposed order *in toto*), and required Samsung to produce every specific type of document

9  that Apple wanted.   That is not what happened.   Instead, the Court found that the categories of

10 documents Samsung had agreed to produce (the six categories quoted above), which address each

11 category of documents the Court described as being sought by Apple ("sales and marketing

12 information, including U.S. and worldwide sales and revenues, selling price per accused product,

13 gross margin, expenses and operating profit, and Samsung's audited or unaudited financial

14 reports") were sufficient to satisfy Apple's need for documents to calculate alleged damages.[45]

15        **A.       Samsung Complied With The Order to Produce**

16        Samsung has produced what it agreed to produce and what the Court accordingly ordered

17 it to produce.   That production supplied Apple with each of the categories of documents the

18 Court described as being sought by Apple – sales and marketing information, pricing, gross

19 margin, expenses, operating profit, and financial statements.

20        As explained above in detail in Section 5 of Background, Samsung has produced

21 comprehensive spreadsheets, which contain information extracted from Samsung's financial

22 database of record (SAP), along with other documents, which provide Apple admissible evidence

23 showing the following aspects of Samsung's financial operations:

24        (1) detailed worldwide sales information per month, per quarter, and per accused model for

25 each defendant, including quantity of each model sold, average selling price per unit, and net

26 revenue;

---

27     [43]   *See, e.g.,* Motion at 6:3-10, 10:8-20, 11:11-26, 12:1-9, 13:13-14:9.

28     [44]   *Id.* at 13:22-25.
       [45]   *See* Dkt. No. 673 at 15:14-23.

(2) cost of goods sold, operating expenses and operating profit for each accused product;

(3) a detailed breakdown of numerous line items comprising subcategories of operating expenses (such as labor costs, depreciation, marketing, insurance, etc.), even though not part of what Samsung originally agreed or was ordered to produce;

(4) for the divisions responsible for the accused products, business plans and profit and loss statements containing detailed information concerning cost of goods sold, operating expenses, administrative expenses, materials and manufacturing costs, labor costs, transportation and freight costs, warehouse and inventory fees, and R&D expenses;

(5) audited financial statements; and

(6) internal and carrier weekly reports, as well as an answer to Apple's Interrogatory No. 5, showing launch dates for the accused products, which allow Apple to see when each accused product became available on the U.S. market.

Thus, Apple has gotten the documents Samsung agreed to produce and the Court ordered Samsung to produce.   In fact, in response to Apple's requests, Samsung has produced *more* than what it was ordered to produce.   It is evident that Apple is simply dissatisfied with the result of its previous motion to compel and is artificially and unfairly attempting to construe that order to be much broader than it is.

**B.      Apple's Assertions About Errors in the February Spreadsheet Are Either Erroneous or Mooted by Samsung's Subsequent Production of Revised and Supplemental Spreadsheets**

Apple raises throughout its Motion, and in the Declaration of Eric Roberts, a plethora of attacks on the February Spreadsheet.   We address here the primary criticisms Apple raises in its brief and rely on the accompanying Timothy Sheppard Declaration to address the remaining criticisms that Roberts asserts in his declaration but Apple does not discuss in its Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1. The February Spreadsheet (and the Subsequent Spreadsheets) Properly and Accurately Respond to Apple's Request for a Spreadsheet Drawn From Samsung's System of Record of Accounting Information

Apple complains that Samsung should not have produced the spreadsheets it did, and should instead have produced materials created in the ordinary course of business or given to management or the "more detailed documents created by Samsung's financial professionals that Apple's proposed order identified."[46]   It is Apple, not Samsung, playing a game of bait-and-switch.   As explained in Background Section 2 above, Apple expressly demanded in its underlying motion to compel, spreadsheets comprised of financial data extracted from Samsung's electronic database constituting its system of record.[47]   That is exactly what Samsung produced. Samsung, in the ordinary course of business, does not generate sales and financial reports with the information Apple seeks on a per-model basis for the accused products.   Therefore, the information Apple requested needed to be pulled from Samsung's system of record (the SAP database), and placed into spreadsheets for production to Apple, which is exactly what Apple demanded in its underlying motion to compel.   The data is accurate, comes directly from the accounting system used by Samsung in the ordinary course of its business, is maintained pursuant to GAAP, is regularly audited, and has been produced without modification or manipulation.   The February Spreadsheet, along with the Revised Spreadsheet produced February 28th and the Supplemental Spreadsheets (providing operating expense detail) produced March 8th, thus represent a true and accurate picture of Samsung's sales of the accused and practicing products during the relevant period.[48]

### 2. The Spreadsheet Does Not Improperly Omit Information About Five Galaxy Products

Apple claims that the February Spreadsheet is incomplete in that it does not cover the following five products:   the Galaxy S II Skyrocket, the Galaxy S II Epic 4G, the Galaxy S II (T–Mobile edition), the Galaxy S II (AT&T edition), and the Galaxy Tab 10.1 LTE (collectively, "the

---

[46]   Motion at 10:21-11:2.
[47]   *See* Dkt. Nos. 613-01, 15.
[48]   Sheppard Decl., ¶ 32; Sim Depo. at 8:11-25, 35:6-12, 103:12-104:16; Gordon Decl., Ex. 6.

1   five devices").[49]   Apple is wrong.   First, three devices – the Galaxy S II Skyrocket, Galaxy S II

2   Epic 4G and Galaxy Tab 10.1 LTE – were not accused instrumentalities covered by Apple's

3   motion to compel.   And second, the February Spreadsheet (and also the Revised Spreadsheet) in

4   fact cover the remaining two devices – the Galaxy S II T-Mobile edition and the Galaxy S II

5   AT&T edition.

6         **(a)      Galaxy S II Skyrocket, Galaxy S II Epic 4G, and Galaxy Tab 10.1 LTE**

7         In Apple's August 2011 Disclosure of Asserted Claims and Infringement Contentions

8   served pursuant to Patent Local Rules 3-1 and 3-2, Apple identified 26 specific devices.   None of

9   the five devices was mentioned, even though Apple did identify other Galaxy devices (the Galaxy

10   S (i9000) and Galaxy S 4G).[50]   In Apple's August 2011 Addendum to its Disclosure of Asserted

11   Claims and Infringement Contentions, Apple identified one additional specific device – the

12   Galaxy S II (which accounts for two of the five devices -- the Galaxy S II (T–Mobile edition) and

13   the Galaxy S II (AT&T edition)).   None of the remaining three devices was identified.[51]

14         Thus, it is clear that the Court's Order[52] did not cover three of the five Galaxy devices

15   Apple complains about in its motion.   The fact that the three devices were not covered by Apple's

16   motion to compel or the Order is made even clearer by Apple's attempt on March 4th, *after* it filed

17   its sanctions motion, to add two of the three devices – the Galaxy S II Skyrocket and the Galaxy S

18   II Epic 4G Touch – to the list of accused instrumentalities by serving an amended interrogatory

19   answer.   Such an amendment obviously would not be necessary if the Skyrocket and Epic 4G

20   Touch devices were already covered by either the Disclosure of Asserted Claims and Infringement

---

23   [49]   Motion at 11:3-8; Dkt. No. 759-2.

24   [50]   Apple's Disclosure of Asserted Claims and Infringement Contentions, served August 26, 2011, Gordon Decl., Ex. 1.   Patent Local Rule 3-1(b) requires the "Disclosure of Asserted Claims and Infringement Contentions" to contain, *inter alia*, the following information:   "Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware. This identification shall be as specific as possible.   Each product, device, and apparatus shall be identified by name or model number, if known."   Obviously the three devices had specific names and/or model numbers that Apple never mentioned in its Disclosures.

[51]   Apple's Addendum to its Disclosure of Asserted Claims and Infringement Contentions, served August 26, 2011, Gordon Decl., Ex. 2.

28   [52]   Dkt. No. 673 at 15:14-23.

1   Contentions or the Addendum to that Disclosure.[53]   It is frankly outrageous that Apple has moved

2   for sanctions on the basis that Samsung's did not produce documents concerning products that

3   Apple never alleged to be infringing until well after the Court's Discovery Order, in fact, not even

4   until *after Apple had already filed its sanctions motion.*

5                    **(b)      Galaxy S II (T–Mobile edition) and Galaxy S II (AT&T edition)**

6            The February Spreadsheet produced in native format by Samsung on February 3rd contains

7   a tab entitled "Galaxy S II" with an accompanying worksheet entitled "Galaxy S II/2 (GT-

8   I9100)."[54]   That tab contains information for the two Galaxy S II devices – the Galaxy S II (T-

9   Mobile edition) and the Galaxy S II (AT&T edition).[55]   On February 28, 2012, Samsung

10  produced the Revised Spreadsheet, which contained the same information for the Galaxy II S

11  devices.[56]   Furthermore, Apple deposed Samsung's Rule 30(b)(6) accounting representative,

12  Timothy Sheppard, about both spreadsheets (identified as Exhibits 1920 and 1922 in his

13  deposition).[57]   While Apple now complains that the original and Revised Spreadsheets contain no

14  information on the Galaxy S II (T-Mobile edition) and Galaxy S II (AT&T edition), Apple never

15  bothered to ask Samsung in meet and confer[58] and never bothered to ask Mr. Sheppard at his

16  deposition,[59] whether the Galaxy II S tab in the spreadsheets covers both the T-Mobile and the

17  AT&T editions of the Galaxy S II device.   In fact, as explained above, the tab does.

18           In short, contrary to Apple's contention, the February Spreadsheet is not incomplete with

19  respect to the five Galaxy devices.

20

21

22

---

23        [53]     *See* Apple's Amended Objections and Response to Samsung Electronics Co., Ltd.'s
      Interrogatory No. 5 to Apple, Inc., served March 4, 2012, Gordon Decl., Ex. 3, at 10:1-2, 8-9, 16-
24    17.   Additional proof of the point is found in Apple's proposed January 2012 stipulation, which
      was never executed, and which would have added the Galaxy S II Skyrocket as an accused
25    instrumentality.   Stipulation and [Proposed] Order Regarding Adding Accused Products, Gordon
      Decl., ¶ 6 & Ex. 4.
26        [54]     Martin Decl., ¶ 3.
          [55]     Sheppard Decl., ¶ 14.
27        [56]     Martin Decl., ¶ 5; Sheppard Decl., ¶ 14.
          [57]     Gordon Decl., ¶ 7.
28        [58]     Martin Decl., ¶ 21.
          [59]     Gordon Decl., ¶ 7.

**3.**   **Samsung Has Already Produced the Supplemental Spreadsheets Providing Line Item Detail for Operating Expenses**

Apple complains that the February Spreadsheet fails to contain specific line item detail for operating expenses.[60]   Samsung agreed to produce operating expense documents and information and did so timely.   However, in response to Apple's requests for more minute detail concerning operating expenses, Samsung produced Supplemental Spreadsheets on March 8, 2012.[61]   The Supplemental Spreadsheets break out the operating expense line item into additional sub-categories such as labor costs, depreciation, logistics costs, marketing, paid commission, insurance, and others.[62]

**4.**   **Samsung Is Providing Information Correlating Specific Phone Models with Specific Carriers**

Apple demands to know which models were sold by which carriers.[63]   Apple had the opportunity to question Mr. Sheppard at his February 29th deposition about which accused smart phones are sold to which carriers.   It failed to do so (even though Apple's counsel ended the deposition less than five hours after it began).   Had counsel asked Mr. Sheppard, he could and would have explained that 25 of the 28 accused products are each sold to only one carrier and he would have identified those carriers.[64]   However, to avoid yet another dispute, Samsung is voluntarily producing the specific information to Apple.[65]

**5.**   **Samsung Is Explaining Why Sections Do Not "Add Down"**

Apple complains that the totals of the rows labeled "Consolidate" in the February Spreadsheet do not equal the totals of the rows labeled "Manufacture."[66]   However, the explanation for that is simple:   the rows labeled "Manufacture" contain data relating to SEC's manufacture of the products *sold to* STA, SEA, and other sales subsidiaries, and for direct sale of the accused products by SEC.   The rows labeled "Consolidate" contain data representing the total

---

60   Motion at 11:18-26.
61   Martin Decl., ¶ 5.
62   Sheppard Decl., ¶ 30.
63   Motion at 12:1-9.
64   Sheppard Decl., ¶¶ 15-16.
65   *Id.*, ¶ 16 & Ex. D.
66   Motion at 12:21-22.

quantity, sales, and average selling price of the accused products *sold by* STA, SEA, other sales subsidiaries, and SEC.   Because there will typically be a two- to three-month lag time between the date SEC sells the products to STA, SEA, and SEC's other sales subsidiaries, and the date those sales subsidiaries then turn around and sell those products to carriers and resellers, the totals in the two columns, while accurate and closely corresponding, will not match up exactly.[67] Apple's counsel did not question Mr. Sheppard about this issue at deposition.   Had he done so, Mr. Sheppard could have explained that the discrepancy between the "Consolidate" totals and "Manufacture" totals in the various spreadsheets does not reflect any inaccuracy in the data, but merely a timing difference between sales by SEC and sales by STA and SEA.[68]

### 6. Samsung Has Already Produced the Revised Spreadsheet in Which the Sum of the 29 Product Tabs Equals the Amounts Shown on the Total Tab

That was a discrepancy as noted by Apple,[69] and it was corrected in the Revised Spreadsheet produced on February 28, 2012.

### 7. Samsung's Accounting Representative Has Already Explained Why the Product Sales Figures in the Spreadsheets Are Not "Missing or Illogical"

Apple does not specify which of the nine bullet points in paragraph 5 of Mr. Roberts' declaration it is alluding to as the support for its critique that "product sales figures in many cases are allegedly missing or illogical,"[70] and it provides no explanation of the specific criticism that it has here.[71]   As best as Samsung can divine, Apple is possibly alluding to bullet points 5-9 of that paragraph, but those do not specifically reference any succeeding paragraphs that actually explain

---

[67]   Sheppard Decl., ¶ 17.
[68]   Sheppard Decl., ¶ 18.
[69]   Motion at 12:24-25.
[70]   Motion at 12:26-27.
[71]   Apple does the same thing, even more egregiously, with respect to the conclusory allegation that the February Spreadsheet "fails to provide the information necessary for Apple to complete a comprehensive damage analysis (Roberts Decl. ¶¶ 5-6)."   (Motion at 7:1-3)   As noted above, paragraph 5 of Mr. Roberts' declaration is a collection of bullet point summary assertions without reference to any of the paragraphs of his declaration that provide any detailed explanation or analysis of the criticism made in conclusory fashion in paragraph 5.   Paragraph 6 is already addressed herein.

1   in detail the criticism.   Based on Samsung's best guess, the criticisms Apple is raising here are the

2   ones that Mr. Sheppard answers in paragraphs 20-27 of his accompanying declaration.

3         **8.      Samsung's Accounting Representative Has Already Explained in His**

4                **Deposition and Does So Again in His Declaration Samsung's Method**

5                **for Allocating Expenses to Specific Products**

6         Apple criticizes Samsung because the February Spreadsheet does not itself explain how

7   Samsung allocates costs and expenses to the accused products.[72]   At Mr. Sheppard's deposition,

8   Apple's counsel questioned him extensively about Samsung's expense allocation methodology.

9   Mr. Sheppard explained that Samsung uses a three-step allocation method:

10              First, any expenses that are incurred specifically with respect to a particular model

11                  are allocated to that model;

12              Second, costs that are not specific to a given model are allocated to various cost

13                  centers.   So, for example, the lease of a building will be allocated to various cost

14                  centers.   If that allocation can be undertaken on the basis of usage, that method

15                  will be used.   For example, if the sales team that works with Sprint takes up 2,000

16                  square feet of a 4,000 foot building, half of the rent will be allocated to that Sprint

17                  sales team.   Alternatively, if the usage methodology is not practical, the revenue

18                  method will be used.

19              Third, the final step is to then take common cost centers, for example, the HR

20                  department or the accounting group and allocate those costs across devices.

21         As evident from the above explanation, the allocation methodology underlying Samsung's

22   spreadsheets is not something that could be easily explained within the spreadsheets themselves or

23   within any financial documents.   Mr. Sheppard provided a detailed explanation of Samsung's

24   allocation methodology at his deposition (and again in his declaration).   He also explained that

25   the above-described allocation methodology is used in Samsung's normal business practice.[73]

26

27   _____

28   [72]   Motion at 15:8-20.
     [73]   Sheppard Decl., ¶¶ 23-24, *see also* Sim Depo. at 8:11-25, 120:24-121:9; 122:19-123:8,
     Gordon Decl., Exh. 6.

C.      **Apple's Other Assertions that Samsung Has Withheld Documents It Was Ordered to Produce Are Equally Meritless**

1.      **Samsung Neither Committed Nor Was Ordered to Produce Costed Bills of Materials for the Accused Products**

Apple claims that Samsung reneged on its purported promise to produce "costed" bills of materials.[74]   The short answer to that complaint is that Samsung did not promise, and it had no obligation, to produce such documents.

Up until the time Apple moved to compel production of financial documents, the parties' discussion of bills of materials was in the context of Apple's requests for source code and documents showing the structure and operation of Samsung's products' touchscreens—not financial documents.[75]   In a letter Apple sent just prior to the parties' January 6, 2012 lead counsel meet and confer on its motion to compel, Apple explained that it requested bills of materials in satisfaction of RFP No. 240, which sought documents "concerning the design, manufacture, specifications and operation *of the touch screens (including the display and touch sensor panels)* on the Products at Issue."[76]   At the lead counsel meet and confer, the only discussion of bills of materials related to the touchscreens of the accused products.[77]

Then, in Samsung's January 10, 2012 letter sent after the meet and confer, Samsung's counsel committed in the "**Technical Documents**" section of the letter (on page 2) to "produce bills of materials for the accused products' touchscreens."   The letter mentions nothing at all in the "**Financial Documents**" section of the letter (on page 1) about bills of materials, and says nothing in either section about producing "costed" bills of materials, containing a breakdown of cost for every component of a device.[78]   Samsung's opposition to Apple's motion to compel tracked the January 10 letter—committing to produce bills of materials for the accused products' touchscreens in satisfaction of Apple's requests for technical documents, and mentions nothing

---

[74]   Motion at 5:7-9.
[75]   Martin Decl., ¶¶ 16-17 & Exs. 10-11.
[76]   *Id.*, at ¶¶ 18-19 & Exs. 12-13 (emphasis added).
[77]   *Id.*, at ¶ 20.
[78]   Dkt. No. 642-05 at 1-2.

1  about costed bills of material.[79]   At the hearing on Apple's motion, counsel for Samsung never

2  mentioned "costed" bills of materials or agreed to produce "costed" bills of materials.[80]

3  Similarly, the Court's January 27th Order mentions bills of materials only in the section of the

4  Order concerning technical documents, not in the section concerning financial documents.[81]

5      Samsung never obligated itself to produce costed bills of materials and the Court did not

6  order it to produce them.   Samsung produced non-costed bills of materials and it produced

7  voluminous information about the costs and expenses to manufacture the accused products.   It has

8  done all it was required to do with respect to producing such product cost information.

9          **2.      Flux Analysis Reports are Clearly Not Encompassed Within the Order**

10      Apple claims that Samsung prepares monthly "flux analysis reports" in Excel spreadsheet

11  format that it supposedly was obligated to produce.[82]   That claim is groundless.   The deposition

12  testimony that Apple relies on (pages 28:11-31:12 of Mr. Sheppard's January 24, 2012 deposition)

13  demonstrates that the flux analysis reports were not encompassed within the January 27th Order.

14  The flux analysis reports list general ledger accounts that are being closed, and compares them

15  with prior numbers, such as forecasted or budgeted numbers, and then provides an explanation of

16  any material differences.[83]   Such reports are not covered by the Order and are not essential in any

17  case in preparing damages opinions as to particular accused products.   They are not accused

18  product-specific; they are at the broad level of general ledger accounts for the company.

19          **3.      "Pumi" Reports Are Not Encompassed Within the Order**

20      Apple also claims "Pumi" reports are covered by the order.[84]  "Pumi" reports are probably

21  even less encompassed within the Order than flux analysis reports are.   Mr. Sheppard's deposition

22  testimony makes clear that Pumi reports are merely *forecasts* of profitability, not actual

23  profitability results: "So the Pumi reflects just a simple forecast of profitability at a handset level.

24

25      [79]    Dkt. No. 642 at 7:6-11, 14:3-15:8.
       [80]    Transcript of Proceedings, CV-11-1846-LHK, January 19, 2012, at 168:22-169:3, Olson
26  Decl. (Dkt. No. 759-4), Ex. 8.
       [81]    Dkt. No. 673 at 11:11-17 & n.23, 15:14-23.
27      [82]    Motion at 13:7-8, 12-15.
       [83]    Deposition of Timothy Sheppard, January 24, 2012 ("Sheppard 1/24/12 Depo."), at 30:7-
28  31:12, Olson Decl., Ex. 9.
       [84]    Motion at 13:9-15.

1  An actual result is – is not possible."[85]   Such reports were not promised by Samsung or ordered

2  by the Court to be produced.

3  **III.    ANY TECHNICAL VIOLATION OF THE DISCOVERY ORDER THAT THE**

4  **COURT MIGHT FIND WAS NOT COMMITTED WILLFULLY, IN BAD FAITH,**

5  **OR THROUGH FAULT SO AS TO CREATE "EXTREME CIRCUMSTANCES"**

6  **JUSTIFYING THE EVIDENTIARY AND PROCEDURAL SANCTIONS**

7  **REQUESTED BY APPLE**

8      This is very clearly not a case in which it would be appropriate to impose the draconian

9  sanctions sought by Apple, which include (but are not limited to):   (1) precluding Samsung from

10 offering at trial its own essential damages-related evidence, or from cross-examining Apple's

11 damages experts about any matters addressed in their required expert reports, (2) reversing the

12 Court's operative Discovery Order, and now compelling the production of every category of

13 documents listed in Apple's harassing proposed discovery order, instead of the categories offered

14 by Samsung in its Opposition and January 10 letter, as originally ordered, and (3) allowing

15 Apple's damages experts to offer opinions at trial outside of any type of written report or

16 deposition concerning any documents listed in Apple's proposed discovery order.   Under Rule

17 37(b)(2)(A), such harsh and potentially case-dispositive sanctions should be imposed only under

18 "extreme circumstances" in which a party violated a discovery order willfully, in bad faith, or

19 through fault.   Imposition of such sanctions here would be manifestly unjust, as explained below.

20     Apple asserts that purported delay in production by Samsung has prejudiced Apple by

21 preventing it from obtaining the documents and information necessary for its experts to prepare

22 their reports by March 22, 2012.[86]   Apple's assertion is groundless for a number of reasons.

23 First, Apple is responsible for the timing of its Motion.   After the parties reached an impasse at

24 the February 14, 2012 meet and confer, Apple waited two weeks to file the instant motion.[87]

25

26

27

28

---

[85]  Sheppard 1/24/12 Depo. at 78:14-16, Olson Decl., Ex. 9.
[86]  Motion at 14:13-16:18.
[87]  Martin Decl., ¶ 22.

1   Second, Apple did not even attempt to discuss with Samsung a stipulation for an expedited

2   briefing schedule that could possibly have allowed its Motion to be heard much sooner than April

3   3rd.   In fact, Apple never even informed Samsung that it would be filing this Motion.[88]

4   Third, Apple has repeatedly ignored the Court's February 3rd production deadline and has

5   not been sanctioned, even though Apple has been almost five weeks late in producing a large

6   number of financial documents going to the heart of Samsung's damages calculations, *e.g.,* (a)

7   reports showing gross margin, (b) a licensing royalty chart showing more than twice the number

8   of licenses and significantly more revenue than the original chart did, (c) per-unit sales

9   information, and (d) information about quarterly revenue, costs of goods sold, operating expenses,

10  gross margin, operating margin, research and development costs and capital expenditures.

11  Moreover, Apple is in no position to complain about perceived inaccuracies and inconsistencies in

12  Samsung's production, much less Samsung's production of updated financial information.   As

13  discussed above, Apple produced a dramatically different royalty chart two weeks *after* its Rule

14  30(b)(6) designee was deposed on financial topics, adding hundreds of millions of dollars in

15  royalty payments to licensors relating to the iPhone, iPad, and iPod.[89]

16  Finally, Apple has had since early February virtually all the financial information

17  necessary to calculate damages.   The production of corrected (or, at Apple's request, more

18  detailed) spreadsheets hardly constitute the type of egregious conduct that would warrant the

19  extraordinary and harsh sanctions Apple seeks here.   Apple has repeatedly missed deadlines

20  because of having to fix errors or provide greater detail to comply with the Court's Order, and the

21  Court has imposed no evidentiary or procedural sanctions on Apple.   In any event, the clarifying,

22  correcting, or more fully detailed documents about which Apple complains have been produced at

23  least 2-3 weeks before expert reports are due, and the case is still months from trial.

24  Apple has not demonstrated that the information and documents produced by Samsung

25  will not allow Apple's damages experts, working diligently, to finish their reports by March 22nd.

26  And even if Apple's experts swear that they cannot do so, they certainly have not established that

27  ───────────────
        [88]   *Id.*, ¶ 23.

28      [89]   *Compare* Exhibit 18 to the February 23, 2012 Deposition Transcript of Mark Buckley,
    Price Dec., Ex 3 *with* APLNDC-Y0000232396-2430 (Apple Inc. Royalties Chart), Price Decl., Ex.
    4.

a brief extension of time to complete their reports would destroy the Court's scheduling of the case.   By no means has Apple shown that there is a high risk of prejudice caused by any conduct of Samsung that arguably could be considered sanctionable, and that no less drastic sanctions are available to address any delay in production that might have occurred.   Under such circumstances, Rule 37(b)(2)(A) sanctions should not be imposed.   *See Computer Task Group*, 364 F.3d at 1115.

*Lundy Enterprises, LLC v. Wasau Underwriters Insurance Company*, No. 06-3509, 2010 WL 323571, at *1, *3 (E.D. La. Jan. 21, 2010), cited by Apple in support of its sanctions request does not warrant any different result.   First, it is an unpublished Eastern District of Louisiana case, consisting of a short order that does not cite a single judicial authority as support for its ruling; it hardly constitutes persuasive authority for this Court.   Second, the order there was premised on the "automatic sanction" of exclusion under Rule 37(c) for failing to comply with Rule 26(a)(1)(A)(iii).[90]   *Id.* at *2.   No such rule of automatic exclusion applies here because Rule 37(c) does not apply; Samsung is not alleged to have failed to comply with Rule 26(a) or (e) as required for application of the presumptive automatic exclusion sanction of Rule 37(c).   Unlike Rule 37(c), Rule 37(b)(2)(A) is a rule of discretion without any presumed automatic exclusion of evidence.   Third, the order there is bereft of any analysis that would provide this Court guidance in applying Rule 37(b)(2)(A).   There is no discussion of whether the court found that the plaintiff making the claim in fact possessed the back-up documentation, and if he did not, how he could have prepared the spreadsheets, and if he did, why he did not produce it.[91]   Nor is there any discussion of whether the plaintiff extracted all of the data contained in his spreadsheets from some company database or other system of records kept in the ordinary course and as a regular practice of his business, much less whether that data was kept according to GAAP and was regularly audited.   Such a showing, made by Samsung in this case, provides more than a

---

[90]   Rule 26(a)(1)(A)(iii) requires a party claiming damages to produce "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based . . . ."

[91]   The court simply made the conclusory statement that the plaintiff had "not demonstrated that the failure to provide the foundational evidence for the spread sheets is harmless or is substantially justified," as required to avoid automatic exclusion under Rule 37(c) for violations of Rule 26(a) or (e).   *Id.* at *3.

1   sufficient foundation for use of the spreadsheets at trial.   In short, *Lundy Enterprises* provides no

2   basis for imposing the harsh sanctions requested by Apple.

### CONCLUSION

4         For the reasons stated, Apple's Motion for Sanctions should be denied.

DATED: March 12, 2012              Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:      */s/ Victoria Maroulis*
                                   Charles K. Verhoeven
                                   Kevin P.B. Johnson
                                   Victoria F. Maroulis
                                   Michael T. Zeller

                                   Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
                                   SAMSUNG ELECTRONICS AMERICA, INC. and
                                   SAMSUNG TELECOMMUNICATIONS AMERICA,
                                   LLC