# EXHIBIT 12

# FILED UNDER SEAL

1   HAROLD J. MCELHINNY (CA SBN 66781)        WILLIAM F. LEE
    hmcelhinny@mofo.com                        william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)          WILMER CUTLER PICKERING
    mjacobs@mofo.com                           HALE AND DORR LLP
3   JENNIFER LEE TAYLOR (CA SBN 161368)        60 State Street
    jtaylor@mofo.com                           Boston, MA 02109
4   ALISON M. TUCHER (CA SBN 171363)           Telephone: (617) 526-6000
    atucher@mofo.com                           Facsimile: (617) 526-5000
5   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
6   JASON R. BARTLETT (CA SBN 214530)          MARK D. SELWYN (SBN 244180)
    jasonbartlett@mofo.com                     mark.selwyn@wilmerhale.com
7   MORRISON & FOERSTER LLP                    WILMER CUTLER PICKERING
    425 Market Street                          HALE AND DORR LLP
8   San Francisco, California  94105-2482      950 Page Mill Road
    Telephone:  (415) 268-7000                 Palo Alto, California 94304
9   Facsimile:  (415) 268-7522                 Telephone: (650) 858-6000
                                               Facsimile: (650) 858-6100
10

11  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.
12

13

14                   UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                         SAN JOSE DIVISION

17  APPLE INC., a California corporation,      Case No. 11-cv-01846-LHK

18               Plaintiff,                    **APPLE INC.'S MOTION TO
                                               COMPEL PRODUCTION OF**
19        v.                                   **DOCUMENTS AND THINGS**

20  SAMSUNG ELECTRONICS CO., LTD., a
    Korean corporation; SAMSUNG ELECTRONICS
21  AMERICA, INC., a New York corporation; and  Date:     January 18, 2012
    SAMSUNG TELECOMMUNICATIONS                   Time:     2:00 p.m.
22  AMERICA, LLC, a Delaware limited liability   Place:    Courtroom 5, 4th Floor
    company,                                     Judge:    Hon. Paul S. Grewal
23
                 Defendants.
24

25                       **SUBMITTED UNDER SEAL**

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

NOTICE OF MOTION AND MOTION .......................................................................................... 1

RELIEF REQUESTED ..................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .............................................................................. 1

APPLE'S CIVIL L.R. 37-2 STATEMENT ..................................................................................... 1

APPLE'S CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(a)(1) ................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ............................................................................................................... 1

II.     BACKGROUND ................................................................................................................. 2

III.    LEGAL STANDARDS ...................................................................................................... 5

IV.     ARGUMENT ...................................................................................................................... 6

      A.      Samsung Should Be Ordered to Produce Technical Documents
            Relevant to Apple's Utility Patent Infringement Case. ........................................... 6

      B.      Samsung Should Be Ordered to Produce Documents Regarding its
            Efforts to Design Around Apple's Patents ................................................................. 8

      C.      Samsung Should Be Ordered to Produce Documents Relevant to
            Apple's Design Patent, Trademark, and Trade Dress Infringement
            Case. ............................................................................................................................ 10

            1.      Documents Demonstrating Alternative Designs ....................................... 10

            2.      Documents Demonstrating Satisfaction of the *Sleek-Craft*
                Factors. ....................................................................................................... 14

      D.      Samsung Should Be Ordered to Produce Marketing and Advertising
            Documents Relevant to Apple's Showing of Irreparable Harm. .......................... 18

      E.      Samsung Should Be Ordered to Produce Financial Information
            Relevant to Apple's Showing of Damages. ............................................................. 19

V.      CONCLUSION ................................................................................................................. 23

**TABLE OF AUTHORITIES**

Page(s)

CASES

*3Com Corp. v. D-Link Sys. Inc*,
  No. C 03-2177 VRW
  2007 WL 949596 (N.D. Cal. Mar. 7, 2007)................................................................. 20

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979).................................................................................... 14

*Best Lock Corp. v. ILCO Unican Corp.*,
  94 F.3d 1563 (Fed. Cir. 1996).................................................................................. 11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
  489 U.S. 141 (1989)........................................................................................... 10–11

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002)................................................................................ 19

*Disc Golf Ass'n v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998)................................................................................. 11

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)............................................................................................... 18

*In re ATM Fee Antitrust Litig.*,
  233 F.R.D. 542 (N.D. Cal. 2005).............................................................................. 22

*Medtronic Sofamore Danek USA, Inc. v. Globus Medical, Inc.*,
  637 F. Supp. 2d 290 (E.D. Pa. 2009) ....................................................................... 19

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
  No. C 08-5016 SBA,
  2010 U.S. Dist. LEXIS 97011 (N.D. Cal. Sept. 16, 2010) ...................................... 10

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23 (2001)........................................................................................... 10, 11

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
  529 U.S. 205 (2000)......................................................................................... 10, 11

STATUTES

15 U.S.C.
  § 1117.................................................................................................................. 19
  § 1125(a)(3)........................................................................................................ 10

35 U.S.C.
   § 284 ................................................................................................................... 19
   § 289 ................................................................................................................... 19

**OTHER AUTHORITIES**

Fed. R. Civ. P.
   Rule 34 ................................................................................................................. 5

Local Rules
   Rule 3-4 ............................................................................................................ 1, 6
   Rule 3-4(a) .......................................................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Apple filed this action, which includes utility patent, design patent, trade dress, trademark, and unfair competition claims, in April 2011.  Since that time, the disparity between the parties' compliance with their discovery obligations as to Apple's claims has been striking—and growing.

Apple has produced no fewer than 870,000 pages of documents to Samsung in support of Apple's affirmative case.  It also has made 48 individuals available for deposition, and Samsung has taken these depositions.  By contrast, until Apple moved to compel several weeks ago, Samsung produced essentially *no* documents after the preliminary injunction phase responsive to Apple's document requests relating to Apple's claims.  The production Samsung *failed* to make included documents falling within such basic categories as technical, marketing, and financial documents, all of which Apple indisputably needs, and is entitled to, to support its claims.  When this Court issued an Order on December 22, 2011, compelling Samsung to produce certain categories of documents by December 31, Samsung proceeded to miss that deadline by several days.  And in contrast to the 48 depositions that Samsung has taken relating to Apple's affirmative case, Samsung has resisted scheduling 26 of the 38 depositions that Apple has noticed, and will not even tell Apple which of these it will not schedule.  (Declaration of Mia Mazza in Support of Apple's Motion to Compel ("Mazza Decl.") ¶¶ 2-8.)

Rather than devote its attention to producing documents or scheduling depositions (or meeting this Court's deadlines), Samsung instead has engaged in a letter writing campaign—both to demand items from Apple, and to resist production of items it deems "not ripe" for discussion. For example, despite claiming it was unable to comply with this Court's December 22, 2011 Order because it was resource-constrained over the holidays, between December 22, 2011 (the date of the Court's Order) and December 31, 2011 (the Court's first deadline under that Order), four different Samsung attorneys sent 13 letters demanding Apple's immediate production of various items.  Since January 1, 2012, Samsung has sent numerous communications to Apple in which Samsung claimed not to understand Apple's requests, claimed they are "not ripe," asserted that they are overbroad without identifying a specific, narrowed scope of production Samsung

1    would agree to, or offered to produce documents but with additional conditions and soft or far-off

2    deadlines.  (Mazza Decl. ¶¶ 9-10.)

3         Samsung's pattern of tardiness and delay has only escalated in the six days that have

4    passed since the parties' lead counsel meeting on January 5.  The letter that Samsung promised it

5    would send on January 6, setting forth Samsung's best positions regarding the documents Apple

6    seeks, did not come until 7:45 p.m. on January 10, the date the parties had stipulated to file their

7    motions.  Samsung's January 10 letter contained empty promises of partial productions weeks

8    after Apple needs them.  And this very morning, Samsung produced 476 Korean-language

9    documents from the files of a witness whose deposition had begun.  (Mazza Decl. ¶¶ 11-12.)  And

10   this evening, Samsung produced 5,287 Korean language documents (totaling 32,469 pages) from

11   the files of a witness being deposed in 62 hours.

12        Samsung's gamesmanship causes Apple grave concern.  With the fact discovery cut-off

13   less than two months away, Samsung must produce more than empty promises and letters.  The

14   information Apple seeks via this motion represents a voluntary narrowing of numerous document

15   requests that Apple propounded over the past four months.  These are critical documents required

16   by Apple to prove the various components of its case—from patent infringement and validity, to

17   trademark and trade dress infringement, to damages and irreparable harm.  Samsung has never

18   asserted that the documents sought by this motion are irrelevant or otherwise objectionable,

19   except at the margins.  Samsung should be ordered to produce these documents immediately.

20   **II.      BACKGROUND**

21        **Apple's First Motion to Compel, and Samsung's Limited Production.**  To date,

22   Samsung's production in Apple's affirmative case has focused exclusively on the narrow

23   categories of documents it has been specifically ordered by the Court to produce.  Samsung's

24   production during the preliminary injunction phase was paltry, necessitating that Apple move to

25   compel documents relating to its preliminary injunction motion.  On September 28, 2011, the

26   Court ordered Samsung to produce (among other things) relevant survey documents by

27   October 7, 2011.  (Dkt. No. 267.)  Samsung missed that deadline entirely, producing responsive

28

1   documents as late as October 12, 2011 (one day before the preliminary injunction hearing).

2   (Mazza Decl. ¶ 3.)

3        Samsung then stopped producing documents for Apple's offensive case.  Although

4   attorneys for each party met and conferred weekly and exchanged numerous letters on discovery

5   subjects between each meeting, nearly two months passed during which Samsung did not produce

6   a *single* additional document (other than some missing attachments) responsive to Apple's

7   document requests relating to its claims against Samsung.  Meanwhile, Samsung took the

8   depositions of 48 patent prosecutors and Apple inventors, and Apple produced thousands of

9   documents in daily batches in conjunction with those depositions.  (Mazza Decl. ¶¶ 4-5.)

10       **Apple's Second Motion to Compel, and Samsung's Continued Delays with Its**

11   **Production.**  Samsung's next production began on December 7, 2011, the day before Apple filed

12   (as it had told Samsung a week earlier it would do) a motion to compel production of various

13   categories that Samsung should have already produced.  (*Id.* ¶ 4.)  The Court's resulting Order,

14   filed December 22, 2011, required Samsung to produce, within 9 days, any remaining documents

15   required under the September 28 Order but not produced before the Preliminary Injunction

16   hearing.  (Dkt. No. 537.)

17       Samsung could not meet this production deadline.  When it sought an extension, Samsung

18   exposed the true extent of its non-production and efforts to delay.  Samsung's extension request

19   revealed that the volume of documents withheld from Samsung's Preliminary Injunction

20   production in October was so enormous that it was "physically impossible" to produce it all by

21   December 31.  (Dkt. No. 554.)  In fact, per Samsung's motion, Samsung required an *additional* 9

22   days to complete the production.  (*Id.*)  Samsung's supporting declaration revealed that it had not

23   begun making a concerted effort to collect and produce the documents required under the Court's

24   September 28, 2011 Order until December 22.  (Dkt. No. 554-1 at 2:18–3:5 (admitting that

25   Samsung waited until after December 22 Order to commit resources necessary for completing

26   production, including engaging new discovery vendor and hiring additional attorneys).)  Samsung

27   plainly had been sitting on these documents, but did not produce them until *again* ordered to do

28   so.

1    Despite claiming that the extension was necessary because its attorneys were working

2  "straight through the holidays . . . in Samsung's attempt to meet the Court's deadlines" (Dkt. No.

3  554-1 at 2-3), the conduct of Samsung's attorneys proved otherwise.  Between December 22 and

4  December 31, counsel for Samsung sent a barrage of letters and emails that, for example,

5  expressed Samsung's dissatisfaction with the parties' weekly meet-and-confer calls, demanded

6  various items of alleged prior art from Apple, and insisted that Apple withdraw the confidentiality

7  designation of certain produced photographs.  (Mazza Decl. ¶ 9.)  Samsung plainly was electing

8  to advance its own document demands ahead of Apple's—and instead of complying with the

9  Court's Orders.

10    **The Parties' Lead Trial Counsel Meet and Confer, and Samsung's Failed Promises.**

11    With the close of discovery rapidly approaching, Apple has noticed the depositions of 38

12  Samsung witnesses.  At least two of these witnesses are software programmers who helped

13  develop and write the source code for the allegedly infringing "rubber banding" feature claimed

14  by U.S. Patent No. 7,469,381.  (Mazza Decl. ¶ 6.)  Twenty of these individuals are industrial or

15  graphical user interface designers, identified by Samsung (or within its documents) as being

16  involved in the design of the Samsung products at issue.  (*Id.*)  Other noticed deponents were

17  involved in the hardware redesign of the Galaxy Tab 10.1.  (*Id.*)  Still others were identified on

18  documents showing Samsung's analysis of Apple's products.  (*Id.*)  To date, Samsung has

19  provided dates for only 12 of these witnesses.  (*Id.* ¶ 8.)

20    This list of deponents is just the initial list of individuals whom Apple would like to

21  depose.  Apple plans to depose additional Samsung witnesses with knowledge relevant to Apple's

22  trademark and trade dress claims, damages issues, and other claims.  (*Id.* ¶ 7.)

23    Because of the sparsity of Samsung's document production, however, Apple has had

24  difficulty both preparing for these depositions and identifying additional relevant deponents.  (*Id.*)

25  To take effective depositions and to make its case generally, Apple requires technical, marketing,

26  and financial documents.  As with its production of survey documents, however, Samsung's

27  production of these documents has been grossly inadequate.

28

1    Lead trial counsel for both parties met in person on January 5, 2012 to try to crystallize

2    each party's positions on numerous outstanding discovery issues and resolve at least some of

3    those issues.  As explained in the Declaration of Harold J. McElhinny filed herewith, the parties

4    agreed at the end of the meeting to exchange letters memorializing their final positions on the

5    issues by January 6, 2012.  But January 6, 7, 8, and 9 passed without Samsung's promised letter

6    clarifying its positions.  (Mazza Decl. ¶ 11.)  And when Samsung finally provided the agreed

7    letter on January 10 at 7:45 p.m., Samsung merely made noncommittal promises to "substantially

8    complete" portions of its production in the relevant categories by far-off dates.  (*Id.* Ex. A.)

9    Apple thus had no choice but to file this third motion to compel.

10   **III.    LEGAL STANDARDS**

11   A party is entitled to seek discovery of "any nonprivileged matter that is relevant to any

12   party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "A party seeking discovery may move for an

13   order compelling . . . production, or inspection.  This motion may be made if: . . . a party fails to

14   respond that inspection [of such documents or tangible things] will be permitted—or fails to

15   permit inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).

16   Patent Local Rule 3-4(a) provides for the automatic production of source code and

17   technical documents concurrently with the defendants' invalidity contentions.  It states:  "With

18   the Invalidity Contentions, the party opposing a claim of patent infringement shall produce or

19   make available for inspection and copying:  (a) Source code, specifications, schematics, flow

20   charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects

21   or elements of an Accused Instrumentality identified by the patent claimant in its Patent

22   L.R. 3-1(c) chart."

23

24

25

26

27

28

## IV.   ARGUMENT

### A.   Samsung Should Be Ordered to Produce Technical Documents Relevant to Apple's Utility Patent Infringement Case.[1]

The Court's December 22 Order required Samsung to produce all technical documents sought by Apple's previous motion to compel.  (Dkt. No. 537 at 2.)  The exception was documents responsive to 14 document requests for which "there [wa]s no indication that the parties met and conferred."  (*Id.* at 2 & n.2.)  As to these categories, the Court noted that Apple could re-raise them with the Court "after an appropriate meet and confer."  (*Id.* at 2-3.)  The documents sought by those 14 requests, broadly speaking, relate to the evolution, features, and updates of software for certain Samsung products and the design and manufacturing of hardware for those products.  (McElhinny Decl. Ex. C.)

As directed by the Court, Apple (through its lead trial counsel) met and conferred with Samsung regarding the 14 remaining categories of technical documents.  (*Id.* ¶ 5.)  In the spirit of compromise, Apple had voluntarily proposed substantial limitations to those categories.  (McElhinny Decl. Ex. C.)  (A complete list of the specific, narrowed categories of technical documents Apple seeks from Samsung at this time is set forth in Section I of Apple's Proposed Order submitted herewith.)  Samsung rejected Apple's proposed compromise.  (*See* Mazza Decl. Ex. A.)

The Court should order Samsung to complete, by no later than January 23, 2012, its production of all technical documents in all the narrowed categories identified in Apple's Proposed Order filed herewith.  As explained in Apple's previous motion, Samsung was obligated under Patent Local Rule 3-4 to provide these documents by October 7, 2011, the date it served its invalidity contentions.  (Dkt. No. 467-1 at 6-9.)  Yet, over three months after that deadline, Samsung still refuses to produce them.  Samsung's delay has already prejudiced Apple's ability to

---

[1] The documents discussed in this section are responsive to Requests for Production Nos. 193, 225-227, 229-231, 233-235, 240, and 243-245, served on October 26, 2011.

1  prepare for depositions of Samsung's technical witnesses, which commence January 11, 2012

2  (the day of this submission).  (Mazza Decl. ¶ 12.)  Even after these documents are produced,

3  Apple's counsel will need time to review and analyze them before being able to use them

4  effectively at the depositions.  It would be grossly unfair to permit Samsung to continue

5  withholding the requested technical documents from Apple.

6      Samsung has disputed the relevance of some, but not all, of the document categories

7  identified above and in its Proposed Order.  (Mazza Decl. Ex. B.)  All those categories, however,

8  seek documents that are highly relevant and narrowly tailored to Apple's allegations.  For

9  example, Apple is entitled to know which versions of the operating systems, touchscreen control

10  systems, and software applications on the accused devices include the accused functionalities,

11  because this information goes to the heart of Apple's patent infringement claims.  As another

12  example, Apple is entitled to technical specifications for the screens (including LED and LCD

13  screens) and touch screen controllers (including those produced by Atmel Corporation) in the

14  accused Samsung products, as that information is directly relevant to Samsung's infringement of

15  Apple's touchscreen hardware patents.

16      All of this information is undoubtedly well-documented internally at Samsung.  In

17  contrast, it would be unduly burdensome, if not impossible, for Apple to glean this information

18  based solely on teardowns of publicly-available versions of the accused products or on inspection

19  of Samsung's piecemeal source code production (which does not and cannot show the evolution

20  of the accused functionalities in Samsung's products over time).  (Mazza Decl. ¶ 13.)  Indeed,

21  Samsung's production of source code to date underscores the impossibility of reconstructing the

22  requested technical information without a complete production from Samsung.  Its limited

23  production to date appears to include, at most, just a single version of software for each accused

24  device.  (*Id.*)

25      Similarly, Apple is entitled to documents sufficient to show how updates to the operating

26  systems, applications, and touchscreen control systems on the accused devices affected the

27  accused functionalities.  Samsung has pushed out to consumer devices a number of software

28  updates that have affected accused functionalities on Samsung's products.  (Mazza Decl. ¶ 13.)

1   Samsung's internal documentation of such software updates is therefore not only critical to

2   demonstrating infringement, but will also be important for calculating damages based on the

3   duration of infringement.

4          Moreover, this update information is practically impossible for Apple to obtain on its own,

5   as Apple cannot "undo" software updates that are applied to Samsung's products.  (*Id*.)  Thus,

6   Apple would lose its ability to analyze an earlier version of Samsung's software on a device each

7   time it wished to assess the impact of an update.  (*Id*.)  Equally problematic is the fact that the

8   various iterations of software updates, rendered obsolete by newer updates and versions of the

9   software, are not readily publicly available.  (*Id*.)  This is particularly true for the earlier-released

10  accused devices that are no longer actively supported or maintained.  (*Id*.)  Samsung's relevance

11  objection is therefore meritless.[2]

12         For these reasons, the Court should order Samsung to produce, by January 23, 2012, all

13  technical documents within the specific, narrowed categories identified in Section I of the

14  accompanying Proposed Order.

15     **B.     Samsung Should Be Ordered to Produce Documents Regarding its Efforts to
16             Design Around Apple's Patents**

17         Following the initiation of this lawsuit, Samsung attempted to design around Apple's '381

18  patent by incorporating a "blue glow" functionality into its products as a substitute for the '381

19  patent's "rubber-banding" feature.  On November 29, 2011, Apple informed Samsung that there

20  were no documents produced by Samsung regarding such "blue glow" functionality, and

21  requested that Samsung provide a date certain for completing its production of such documents,

22  as well as all other design around documents responsive to Apple's document requests.  (Mazza

23  _____

24         [2]  During the meet and confer process, Samsung also pointed to Apple's obligation to
    produce technical documents in response to Samsung's document requests.  (Mazza Decl. Ex. B.)
25  Samsung cannot excuse itself from complying with Apple's requests by pointing to alleged
    deficiencies in Apple's document production.  The Court expressly rejected this tactic in its
26  December 22, 2012 Order, observing that "If Samsung believes that Apple is not complying with
    its own discovery obligations ... Samsung is free to raise such failures before the court in an
    appropriately noticed motion."  (Dkt. No. 537 at 2 n.1.)

27

28

Decl. Ex. K.)  Samsung replied over a month later, stating that it had located no "blue glow" documents, although its investigation was "ongoing."  (*Id.* Ex. L.)  Apple followed-up again, reiterating that it had requested *all* design around documents, not just documents regarding "blue glow."  (*Id.* Ex. M.)  Samsung ignored Apple's request for design around documents other than "blue glow."

Despite later claiming that every document relating to this issue was privileged, Samsung eventually relented, recognizing that it must produce documents related to its "blue glow" design around effort, and agreed to produce "non-privileged" documents.  (*Id.* Ex. N.)  Nevertheless, Samsung's attempt to limit its production to a single design around effort is improper.  Samsung's documents regarding any other attempts to design around Apple's patents are responsive to multiple document requests propounded by Apple and must be produced.

Samsung's knowledge of Apple's patents in suit, its efforts to avoid infringement of those patents, and its attempts to design around those patents are relevant to, among other issues, the willfulness of Samsung's infringement and the determination of a reasonable royalty rate for a license to Apple's patents.  *See, e.g., Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 707 F. Supp. 2d 737, 751 (N.D. Ohio 2010) (considering evidence of a design around in assessing willfulness); *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 627 (E.D. Tex. 2009) ("the costs of switching to an alternative design is a factor that the parties would consider in arriving at an appropriate ongoing royalty rate").  Such documents may also impact the scope of infringement in this case, as the implementation of design arounds could affect the universe of accused products and functionalities.  Relevant documents in this category would include not only internal documents at Samsung showing implementation of design arounds like the "blue glow" functionality, but also communications with third parties such as Google, which produces portions of the Android code base.

The Court should order Samsung to produce all documents relating to Samsung's design around efforts by no later than January 23, 2012.  (*See* Proposed Order § II.)  Samsung does not and cannot dispute that it has, indeed, incorporated features into its products in response to this lawsuit, and that such functionalities reflect an attempt to design around Apple's patents.  Nor

1   does Samsung dispute that any documents relating to such design around efforts are responsive to

2   Apple's document requests.  Samsung's position that no such documents have been located

3   demonstrates its continuing failure to search in good faith, because Samsung could not have

4   conceived, designed, and implemented its design around functionalities without creating any

5   documentary record of such efforts.  Given the shortened time frame for discovery in this action,

6   Apple should not be forced to wait patiently for responsive documents that Samsung should be

7   able to identify and collect in short order.

8           **C.     Samsung Should Be Ordered to Produce Documents Relevant to Apple's**
            **Design Patent, Trademark, and Trade Dress Infringement Case.**
9

10          The Court should order Samsung to produce the specific, narrowed categories of

11   documents described in Sections III and IV of the accompanying Proposed Order relating to

12   Apple's design patents, trademarks, and trade dress.  As discussed below, those documents

13   (including marketing and advertising documents) are relevant because they demonstrate

14   alternative designs of Samsung's products and/or may support elements of Apple's trademark and

15   trade dress claims.

16          **1.     Documents Demonstrating Alternative Designs[3]**

17          To prevail on its trademark and trade dress claims, Apple is required to prove that its

18   unregistered trade dress has acquired distinctiveness and is not functional and that its unregistered

19   trademark is distinctive.  15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement

20   under this chapter for trade dress not registered on the principal register, the person who asserts

21   trade dress protection has the burden of proving that the matter sought to be protected is not

22   functional"); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("This burden

23   of proof gives force to the well-established rule that trade dress protection may not be claimed for

24   _____

25          [3] The documents discussed in this section are responsive to one or more of the following
     Requests for Production, the earliest of which was served on July 12, 2011:  Nos. 1, 11-12, 18,
26   21, 26-27, 30, 36, 43, 157-58, 160-164, 167, 192, 194-96, 198, 203, 204, 210-214, 260, 360-67,
     392, 422-23, 449-51, 453, and 467.
27

28

1   product features that are functional"); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205,

2   216 (2000) ("[I]n an action for infringement of unregistered trade dress under § 43(a) of the

3   Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of

4   secondary meaning"); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, No. C 08-5016 SBA,

5   2010 U.S. Dist. LEXIS 97011, at *7-8 (N.D. Cal. Sept. 16, 2010) ("Where the mark is not

6   registered ... a plaintiff must establish that its mark either is inherently distinctive, or has acquired

7   distinctiveness through secondary meaning").

8          In addition, to the extent that Samsung is challenging the validity of Apple's design

9   patents and registered trade dress on the basis that they are functional (and, for the trade dress,

10  lack distinctiveness), Apple will need to come forward with evidence that the trade dress and

11  designs are not functional and have acquired distinctiveness.  *Bonito Boats, Inc. v. Thunder Craft

12  Boats, Inc.*, 489 U.S. 141, 148 (1989) ("To qualify for protection, a design must present an

13  aesthetically pleasing appearance that is not dictated by function alone"); *TrafFix Devices*, 532

14  U.S. at 29; *Wal-Mart Stores*, 529 U.S. at 216.  Relevant evidence on these issues includes the

15  availability of alternative designs, the ease and cost of manufacture, whether the design yields a

16  utilitarian advantage, and whether utilitarian advantages of the designs are touted in advertising.

17  *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (listing factors

18  relevant to determination of functionality in trade dress cases); *Best Lock Corp. v. ILCO Unican

19  Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("[a] design is not dictated solely by its function when

20  alternate designs for the article of manufacture are available").

21         Samsung has taken the position that Apple's designs are merely functional or lack

22  distinctiveness, and that they are obvious and/or anticipated in light of the prior art.  (Dkt. No. 80

23  §§ 122, 126, 133, 138, 139-40, 145, 149, 154, 278-80, 282; Samsung's Opposition to Apple's

24  Motion for a Preliminary Injunction, filed under seal Aug. 22, 2011, at 9-10, 14-16.)  Apple

25  propounded categories of documents relevant to these issues, including documents that fall within

26  the broad categories below:

27

28

- trademark, trade dress, and design patent search reports relating to any element of Apple's asserted trade dress or asserted trademarks [relevant to obviousness/anticipation and distinctiveness];

- documents discussing the distinctiveness of Apple's designs for the Apple Products at Issue [relevant to distinctiveness];

- documents relating to the design and development of GUI designs and the external hardware design for Samsung's smartphone and tablet products [relevant to distinctiveness, functionality, and Samsung's intent];

- documents relating to the design and development of the earphone or speaker slot design for all mobile phone products offered for sale by Samsung [relevant to functionality];

- sketchbooks, CAD drawings (or other schematics used by Samsung in designing its products), and physical models depicting designs created on or after January 1, 2000, that depict designs for any Samsung mobile phone product, tablet product, or touchscreen digital media player [relevant to functionality];

- minutes, notes, specifications, or requirements communicated to the designers, project management reports, and reports to executives relating to the external hardware design or the GUI for all Samsung smartphones or tablet computers; and

- documents sufficient to show all model numbers, code names, or other internal designations used to refer to each of Samsung's Products at Issue.

A complete list of the specific, narrowed categories of design, trademark, and trade dress documents Apple seeks from Samsung at this time is set forth in Section III of Apple's Proposed Order submitted herewith.

Apple followed up on its requests in a letter dated January 3, 2012, and lead trial counsel for the parties met and conferred on the requests on January 5, 2012. (McElhinny Decl. ¶¶ 6, 7.) Samsung rejected Apple's request that Samsung complete production of the requested materials by January 23, 2012, and refused to provide a date certain for such production. (*Id.*)

Samsung continues to make baseless objections to the requests. For example, Samsung objects that it should not be required to produce documents in the requested categories to the extent they relate to non-accused products because such documents are irrelevant, or the production would be unduly burdensome. (Mazza Decl. Ex. C.) As explained above, however, Samsung has argued that the designs that Apple has accused of infringement are dictated by

1   function—which means that the same functions cannot be performed through any other design.

2   To the extent that Samsung has used alternative designs to perform the same function—whether

3   the alternative was used in an accused product or a non-accused product—those designs are

4   directly relevant to an issue that Samsung raised.[4]   Moreover, designer discussions of alternative

5   designs will likely include references to issues related to the functionality determination,

6   including ease and cost of manufacture, or utilitarian advantages or disadvantages of the design.

7   Samsung's own smartphone and tablet design files will provide admissions that, in fact, many

8   different designs can be used for smartphones and tablet computers because Samsung has sold

9   products with significantly different designs.

10      Samsung has also argued that Apple's evidence of alternative third-party designs cannot

11   be considered true alternative designs because those third-party designs "would adversely affect

12   the utility of the specified article."  (*See* Dkt. No. 452 at 13.)  Evidence that Samsung has

13   included or considered those same third-party designs for its own mobile phones and tablet

14   computers is required for Apple to respond to Samsung's argument that the third-party designs

15   affect the utility of the articles.  There is no better place to obtain evidence on this point than

16   Samsung's own design files, which may show that a design that Samsung claims is not feasible

17   was actually produced by Samsung itself.

18      Samsung cannot be permitted to raise the issue of functionality and then shield its files

19   from discovery on the grounds of relevancy or burden.  Indeed, when it suits Samsung's

20   purposes, Samsung has produced documents and things that relate to non-accused devices (such

21   as models of the F700 mobile phone (Mazza Decl. ¶ 17)), while simultaneously, and

22   inconsistently, arguing that Apple should not be permitted to take discovery of other non-accused

23   products.

24   _____

25      [4]  Separately, Samsung has a practice of designing a core product, such as the Galaxy S phone, and then offering that product under a variety of names with only slight design

26   modifications.  (Mazza Decl. ¶ 16 & Ex. D.)  Given this practice, documents from the design history of non-accused products may be directly relevant to the design of accused products if their

27   design originated with the same core product.

28

1    For these reasons, the Court should order Samsung to produce, by January 23, 2012, the

2   documents relevant to alternative designs specified in Section III of Apple's Proposed Order.

3   There is no dispute that this material is directly relevant to Apple's trademark, trade dress, and

4   design patent claims.  Samsung should not be left to its own devices to decide if and when it will

5   produce this relevant material.  By attempting to excuse itself from the Court's December 31,

6   2011 deadline—and waiting to raise that request with Apple just 2 days before that deadline—

7   Samsung has proven itself unwilling to abide even by timetables established by the Court.  In

8   light of this conduct, neither the Court nor Apple can reasonably have any confidence that

9   Samsung, if given discretion to set its own timetable, will produce the requested material in a

10   timely manner.

11         **2.         Documents Demonstrating Satisfaction of the *Sleek-Craft* Factors.[5]**

12    To prove trademark and trade dress infringement, Apple needs to establish elements

13   related to the eight-factor *Sleekcraft* test that the Ninth Circuit applies when considering

14   likelihood of confusion.  Those factors are: (1) the similarity of the parties' marks; (2) the

15   relatedness of the parties' goods or services; (3) the marketing channels used; (4) the strength of

16   the plaintiff's mark; (5) evidence of actual confusion; (6) the defendant's intent in selecting its

17   mark; (7) the degree of care likely to be exercised by purchasers; and (8) the likelihood of

18   expansion into other markets.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.

19   1979).

20    Samsung has argued that Apple's trademarks and trade dress are weak, that the products

21   are not competitive because Samsung products do not use the iOS operating system and therefore

22   do not compete with Apple products, that the products appeal to distinct, sophisticated customers,

23   that the products do not look similar, and that Samsung did not act willfully.  (Dkt. No. 80

24   _____

25         [5] The documents discussed in this section are responsive to one or more of the following
     Requests for Production, the earliest of which was served on July 12, 2011:  Nos. 1, 11-12, 18,
26   21, 26-27, 30, 36, 43, 157-58, 160-164, 167, 192, 194-96, 198, 203, 204, 210-214, 360-67, 392,
     422-23, 449-51, and 453.

27

28

§§ 122, 126, 133, 138, 139-40, 145, 149, 154, 278-80, 282; Samsung's Opposition to Apple's Motion for a Preliminary Injunction, filed under seal Aug. 22, 2011, at 31-32.)  Apple propounded document requests relevant to each of the *Sleekcraft* factors, including the specific factors Samsung is contesting.  The documents fall within the broad categories below:

- trademark, trade dress, and design patent search reports relating to any element of Apple's asserted trade dress or asserted trademarks [relevant to strength];

- surveys [relevant to strength, actual confusion, and Samsung's intent];

- documents relating to the design and development of GUI designs and the external hardware design for Samsung's Products at Issue (*i.e.*, all Galaxy phone and tablet products and all products identified in Apple's Amended Complaint) [relevant to Samsung's intent];

- documents discussing actual or potential consumer confusion between the parties' Products at Issue [relevant to confusion];

- marketing, market analysis, and advertising strategy documents relating to the Apple or Samsung Products at Issue [relevant to channels of trade, consumer sophistication, and Samsung's intent];

- documents evidencing or referencing U.S. and global media plans for any of Samsung's Products at Issue [relevant to channels of trade, consumer sophistication, and Samsung's intent];

- copies of U.S. advertisements for Samsung Products at Issue, and drafts of such advertisements [relevant to Samsung's intent, channels of trade, similarity of trade dress and/or trademarks, similarity of products];

- copies of all advertisements for all Samsung products that mention, target or evoke Apple or its products [relevant to Samsung's intent]; and

- documents reflecting retail outlets and scripts or sales points for Samsung's Products at Issue, and any incentives that Samsung offers in connection with the sale of Samsung's Products at Issue [relevant to channels of trade and Samsung's intent].

A complete list of the specific, narrowed categories of design, trademark, and trade dress documents (including marketing and advertising documents) Apple seeks from Samsung at this time is set forth in Sections III and IV of Apple's Proposed Order submitted herewith.

As with the design documents, Samsung objects on relevance and burden grounds to the production of documents in the categories set forth above that go beyond the accused products.

1    For example, Samsung objects to the production of advertising that is not limited to products

2    specifically accused of infringing Apple's trade dress or trademarks.  However, Samsung is

3    currently running, or has recently run, advertisements that refer to Apple, that mock Apple, or that

4    copy Apple's ads or use actresses who have appeared in Apple's advertisements, all to trade on

5    Apple's goodwill.  (Mazza Decl. Ex. E.)  These advertisements are relevant to Samsung's

6    intent—they support Apple's claim that Samsung is a copier and not an innovator, and that

7    Samsung is specifically targeting Apple with its copying.[6]  All such advertisements should be

8    produced, regardless of the product being advertised.

9         Moreover, Apple's request for the production of all U.S. ads for Samsung's Galaxy

10   products and all accused products is specifically tailored to seek documents relevant to the case.

11   As mentioned above, Samsung develops a core product (such as the Galaxy S or the Galaxy SII)

12   and then builds multiple models with minor variations from the core product.  (Mazza Decl. ¶ 16

13   & Ex. D.)  Because of the close association between the products, and because of Samsung's

14   practice of creating different model names for such products, Samsung should produce all U.S.

15   advertisements for all Galaxy products, including non-accused products.

16        As for advertisements for all accused products, the essence of Apple's complaint is that

17   Samsung is copying everything that Apple does—with its touchscreen technology, its GUI, its

18   hardware designs, and its ads.  Accordingly, Samsung should produce all U.S. advertisements for

19   all accused products so that Apple can see how the products are being presented to the public and

20   which features are being touted.  Not only is this relevant to Samsung's intent, it is also relevant

21   to irreparable harm because Samsung has argued Apple needs to tie the specific patented features

22   to consumer demand (Samsung's Opposition to Apple's Motion for a Preliminary Injunction,

23

24   ───────────────

25        [6] Samsung made the same overbreadth objection to Apple's request for product placement
     requests.  (Mazza Decl. ¶ 19 & Ex. F.)  Apple is moving to compel such requests only for the
26   Samsung Products at Issue, which obviates any burden objection that Samsung may have.  (*See*
     Proposed Order, § IV.)  Samsung has not objected to the production of those documents, but also
27   has not provided a date certain by which it will produce those documents.

28

1   filed under seal Aug. 22, 2011, at 31-33), and advertisements are used to create that consumer

2   demand.

3        With respect to surveys, it has become manifestly clear that Samsung's production

4   remains incomplete, despite this Court's Orders to produce them.  (Dkt. No. 267 at 4 (ordering

5   Samsung to produce "all survey documents that reference the Apple products currently alleged by

6   Apple to embody one or more [of] the ornamental or utility features claimed in the patents").)

7   For example, Apple has learned of one survey, sent by Samsung to purchasers of Samsung

8   products, that concerns customer usage of and preferences for various Apple products, including

9   the Apple products at issue.  (Mazza Decl. ¶ 20.)  Apple brought this survey to Samsung's

10  attention on November 29, 2011, and again on January 8, 2012.  (*Id.* Exs. G & H.)  Samsung's

11  belated January 10 letter asserts that this survey "plainly has nothing to do with this lawsuit,"

12  because it was sent to customers of Samsung products that are not accused in this case of

13  infringement.  (*Id.* Ex. A.)  The Court's Order to produce surveys, however, was not limited to

14  surveys sent to purchasers of the accused products.  It included "all survey documents that

15  reference the Apple products currently alleged by Apple to embody one or more the ornamental

16  or utility features claimed in the patents."  (Dkt. No. 267 at 4.)  The fact that Samsung views this

17  survey as wholly irrelevant raises a grave concern that Samsung *still* has not produced all of the

18  survey documents it was required to produce on October 7 (and then December 31.)  This is

19  especially true where Samsung represented to the Court that it was "physically impossible" to

20  complete its production of surveys by December 31 (Dkt. No. 554), but now states that its

21  production of surveys is in fact complete.

22       The Court has already admonished Samsung that failure to produce the survey documents

23  identified in the September 28 Order would subject Samsung to sanctions.  At a minimum,

24  Samsung should be ordered to produce immediately all documents relating to the survey

25  described above, and to any other similar surveys withheld by Samsung, as well as all of the other

26  specific, narrowed categories of documents (including marketing and advertising documents)

27  relating to Apple's design patent, trademark, and trade dress claims identified in Sections III and

28  IV of the accompanying Proposed Order.

1

### D.     Samsung Should Be Ordered to Produce Marketing and Advertising Documents Relevant to Apple's Showing of Irreparable Harm.[7]

2

3          To obtain a permanent injunction, Apple will be required to show that it will be

4    irreparably harmed by the continued sale of Samsung's infringing products.  *eBay Inc. v.*

5    *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  The marketing, market research, and

6    advertising documents described in Section IV of the accompanying Proposed Order are directly

7    relevant to that showing and should be produced by Samsung.

8          Samsung has argued that continued sales of its infringing products will not cause

9    irreparable harm because Apple's products do not compete with Samsung's products, the

10   infringing features are not the reason that consumers buy the products, and any injunction of

11   Samsung's infringing products will result in increased sales of third-party Android products, not

12   Apple products.  (Samsung's Opposition to Apple's Motion for a Preliminary Injunction, filed

13   under seal Aug. 22, 2011, at 30-33.)  Apple propounded requests for production of documents

14   within many categories of documents relevant to these issues, including documents that fall

15   within the broad categories below:

16   - marketing strategy documents, including market analyses, market share analyses, and
17     competitor analyses;

18   - copies of all advertisements for Samsung products that mention, target or evoke Apple
19     or its products; and

20   - documents reflecting retail outlets and scripts or sales points for Samsung's products
     at issue, and any incentives that Samsung offers in connection with the sale of
21     Samsung's products at issue.

22   A complete list of the specific, narrowed categories of marketing, market analysis, and

23   advertising documents Apple seeks from Samsung at this time is set forth in Section IV of

24   Apple's Proposed Order submitted herewith.

25   _____

26   [7] These documents discussed in this section are responsive to one or more of the following
     Requests For Production, the earliest of which were served on August 3, 2011: Nos. 16, 29, 32,
27   42, 220, and 468.

28

1    Samsung has not objected to the production of these categories of documents except to the

2    extent that Samsung claims that it is not clear which documents Apple is targeting with its request

3    for advertisements for Samsung products that "target" or "evoke" Apple or its products.  (Mazza

4    Decl. Ex. F.)  The type of documents Apples seeks in this category, such as ads depicting what

5    are obviously Apple customers standing in long lines, and their relevance has already been

6    addressed above.  (Mazza Decl ¶ 18 & Ex. E.)  The parties, through their lead trial counsel, met

7    and conferred regarding these requests on January 5, 2012.  (McElhinny Decl. ¶ 6.)  Samsung did

8    not agree to produce documents relating to these issues.  (*Id.*)  The Court should order Samsung

9    to produce, by January 23, 2012, the specific, narrowed marketing, market research, and

10   advertising documents specified in Section IV of Apple's Proposed Order.  There is no dispute

11   that this material is directly relevant to Apple's claims and to showing irreparable harm.

**E.    Samsung Should Be Ordered to Produce Financial Information Relevant to Apple's Showing of Damages.[8]**

14   The Court should order Samsung to produce the specific, narrowed categories of sales and

15   financial information identified in Section V of the accompanying Proposed Order because data

16   regarding Samsung's sales and profitability is indisputably relevant.  For example, Samsung's

17   sales of the accused products are an act of infringement.  Under 35 U.S.C. § 289 and 15 U.S.C.

18   § 1117, Apple is entitled to recover Samsung's "total profit" for Samsung's design patent

19   infringement and its profits due to infringement of Apple's trade dress.  *See* 35 U.S.C. § 289;

20   *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1290 (Fed. Cir. 2002).  Further, under

21   35 U.S.C. § 284, Samsung's profitability information is relevant to determining a reasonable

22   royalty.  *See, e.g.*, *Medtronic Sofamore Danek USA, Inc. v. Globus Medical, Inc.*, 637 F. Supp. 2d

23   290, 311 (E.D. Pa. 2009) (considering "the established profitability of the product made under the

24   patent; its commercial success; and its current popularity" under the *Georgia Pacific* factors).

---

[8] The documents and information discussed in this section are responsive to at least the following Requests for Production propounded by Apple as early as August 3, 2011:  Nos. 34, 41, 42, 44, 47, 260-267, 276, 278, 283, 461, and 462.

1    Thus, the discovery Apple seeks—information on sales, gross margin, various expenses and

2    operating profit—reflects highly relevant, discoverable data.

3         Unable to dispute this, Samsung nonetheless withholds this information based on a series

4    of misguided excuses.  First, Samsung claims it has already produced numerous financial reports.

5    (Mazza Decl. Ex I.)  Samsung has produced some, but its piecemeal production consists of

6    random, unconnected, and often inconsistent information.  For example, the produced reports

7    reflect partial information limited by carrier or vendor or limited to a single division or containing

8    some but not all divisions.  (Declaration of Erik J. Olson in Support of Apple's Motion to Compel

9    Production of Documents and Things ("Olson Decl.") ¶ 5).  The reports are occasionally

10   inconsistent, are not drawn consistently from Samsung's system of records, and no single type of

11   report exists in sufficient numbers to cover the relevant period.  (*Id.*)  This scattered, fragmented

12   material is no substitute for the systematic production of data tied to Samsung's general ledger

13   from which Samsung prepared its financial statements and on which management relies to run the

14   business.  (*Id.* ¶ 6.)

15        Second, Samsung improperly seeks to limit its production solely to information that

16   Samsung has specifically tied to an individual accused product.  While that information must be

17   produced, the vast majority of line items included in Samsung's income statement are not tracked

18   on an individual product basis.  (Olson Decl. ¶ 7.)  To understand how such expenses should (or

19   should not) be allocated to calculate Samsung's profits requires a production of Samsung's

20   financial data on a broader basis.   (*Id.*)

21        Samsung also objects to Apple's requests for worldwide sales and profit data, arguing that

22   such requests are overbroad because sales outside the United States do not infringe.  At least one

23   Court in this District has held that this type of data is relevant and has ordered production of

24   worldwide data on sales and profits despite essentially the same objection.  *3Com Corp. v. D-Link*

25   *Sys. Inc*, No. C 03-2177 VRW, 2007 WL 949596, at *3-4 (N.D. Cal. Mar. 7, 2007) (holding that

26   "worldwide profits and sales are relevant to a reasonable royalty calculation").  Of course, Apple

27   does not contend that foreign sales infringe.  If Samsung already allocated each relevant U.S.

28   expense or deduction to a specific smartphone, worldwide data would be unnecessary.  Samsung

1   does not.  Thus, experts will need to evaluate how any unallocated expenses should be treated.

2   (Olson Decl. ¶ 8.)  To do so, Apple's financial expert will need broader consolidated data on all

3   of Samsung's sales and expenses in the United States and worldwide.  (*Id.*)  Moreover, the

4   broader data is needed to untangle the highly complex financial structure created by transfer

5   pricing, internal reallocations, and other intercompany transfers that artificially increase or

6   diminish the revenues and profits of individual subsidiaries.  (*Id.*)

7        Samsung also objects to Apple's requests on the grounds that Samsung must only produce

8   documents maintained "in the ordinary course of business."  (Mazza Decl. Ex. I.)  By this,

9   Samsung apparently means that it need not produce comprehensive financial information

10  contained in its accounting and operational databases unless it was previously printed out by an

11  employee.  But discovery is not limited to information captured in hard copy.  Samsung tracks,

12  retains and uses financial data on a daily basis even if it is not circulated in printed form.  (Olson

13  Decl. ¶ 4.)  Samsung has the ability to generate reports reflecting financial data simply by

14  pressing a few buttons.  (*Id.*)  In fact, Tim Sheppard, a financial employee at Samsung

15  Telecommunications America ("STA"), recently testified that STA generates a profit and loss

16  statement on a monthly basis, but does *not* send it to Samsung Electronic Corporation ("SEC")

17  because Samsung uses an interconnected global accounting system.  (Mazza Decl. Ex. J.)  STA

18  simply notifies SEC "that we've closed the books," and then SEC "can extract any data they

19  wish."[9]  (*Id.* at 318:13-16.)  Samsung cannot avoid highly relevant discovery simply because it

20  uses an electronic interface to access the data rather than distributing a printed page.  If this were

21  an appropriate basis for resisting discovery, 90 percent of e-mail would be immune from

22  discovery.

23        Samsung further objects that production may require Samsung to produce information

24  about entities that are not named as defendants in this case.  (Mazza Decl. Ex. I.)  However,

25  _____

26        [9] Mr. Sheppard also testified that Samsung can generate statements indicating the average
    selling price per phone, gross margin by phone, and unit sales.  (Mazza Decl. Ex. J.)

27

28

1    discovery is not limited in this way.  Samsung must produce any consolidated information that is

2    in its control.  *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544 (N.D. Cal. 2005) ("[A]

3    corporation must produce documents possessed by a subsidiary that the parent corporation owns

4    or controls") (quoting *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870

5    F.2d 1450, 1452 (9th Cir. 1989)).  Plainly STA and SEC control this data, which Samsung uses to

6    calculate its profits.

7              For all these reasons, Apple requests that the Court order Samsung to produce, from its

8    general ledger or system of record, the specific, narrowed categories of sales and financial

9    information and documents identified in Section V of the accompanying Proposed Order.  This

10   material includes, among other things:

11             1.      Samsung's U.S. and worldwide revenues, unit sales, and average selling price for

12   the accused products (1) per smartphone or tablet, (2) per carrier, and (3) per month;

13             2.      Documents and information from Samsung's system of record that reflect

14   Samsung's gross and operating profits, costs of goods sold, research and development costs, sales

15   and marketing expenses, general and administrative expenses, other operating costs, and business

16   plans for every Samsung division that sells smartphones, mobile phones and tablets in the United

17   States and the same data prepared worldwide (so that Apple can tie them to Samsung's

18   consolidated financials); and

19             3.      Samsung's audited or unaudited financial reports for Samsung entities that sell any

20   of the accused products.

21             Apple requests that the Court's Order require that Samsung produce this information by

22   no later than January 23, 2012.  Given that the initial exchange of expert reports is set for

23   March 22, 2012, it is imperative that Apple timely receive documents containing such

24   information.

25

26

27

28

1   **V.      CONCLUSION**

2         For the reasons discussed above, the Court should grant Apple's motion, and order

3   Samsung to produce all of the specific, narrowed categories identified in the accompanying

4   Proposed Order, by January 23, 2011.

5
    Dated:  January 11, 2012                    MORRISON & FOERSTER LLP
6

7
                                         By:     /s/ Michael A. Jacobs
8                                                Michael A. Jacobs

9                                                Attorneys for Plaintiff
                                                 APPLE INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28