QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**DECLARATION OF TIMOTHY SHEPPARD IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR RULE 37(b)(2) SANCTIONS FOR SAMSUNG'S ALLEGED VIOLATION OF JANUARY 27, 2012 DAMAGES DISCOVERY ORDER**<br><br>Date: April 3, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

**FILED UNDER SEAL**

SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
OPPOSITION TO APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS

1    I, Timothy Sheppard, declare:

2    1.    I have personal knowledge of the facts set forth in this declaration, and if called as

3 a witness, I could and would testify to the facts stated herein.   This declaration is made in support

4 of Samsung's Opposition to Apple's Rule 37(b)(2) Motion Re Samsung's Alleged Violation of

5 January 27, 2012 Damages Discovery Order.

6    2.    I am the Vice President of Finance and Operations at Samsung

7 Telecommunications America, LLC ("STA").   In that position, I am the senior-most finance

8 person at STA other than STA's CFO.   I am responsible for all accounting operations at STA and

9 also for both forward and reverse logistics.   Forward logistics is the process involved in

10 physically shipping products to customers, while reverse logistics is the process of receiving and

11 repairing products that are in need of repair.   I have held my position at STA for four years.

12    3.    Prior to joining Samsung, I had already worked for over 15 years in various

13 financial roles in the private sector.   Immediately prior to joining Samsung, I was the Financial

14 Controller for a venture capital company in Dallas, Best Merchant Partners.   Prior to that, I

15 worked for 10 years for a software company called i2 Technologies, ultimately holding the

16 position of Vice President of Finance.

17    4.    I have degree in mechanical engineering from the Imperial College of Science,

18 Technology and Medicine in London, England, and a Masters in Business Administration from the

19 Edinburgh Business School, Scotland.   I also hold the equivalent of a CPA certification in the

20 United Kingdom.

21    5.    As a result of my position at STA, I am intimately familiar with how STA and

22 Samsung Electronics America, Inc. ("SEA") maintain their financial and sales data, and the

23 reports generated therefrom.   I have also spoken with Mr. GiHo Ro, a Senior Manager in the

24 Business Operations Group, Mobile Communications Business, Samsung Electronics Co., Ltd.

25 ("SEC") (collectively with STA and SEA, "Samsung"), who was involved in gathering the

26

27                                              -2-                    Case No. 11-cv-01846-LHK
                                       SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
28                                              MOTION FOR RULE 37(B)(2) SANCTIONS

1  spreadsheets discussed herein and is familiar with SEC's financial reports.    I thus believe the
2  statements herein with respect to SEC are true and correct.

3        6.    I have reviewed Apple's Motion for Sanctions against Samsung, and the
4  Declaration of Eric R. Roberts in support thereof ("Roberts Declaration").    Apple's Motion and
5  the Roberts Declaration contain a number of incorrect statements and allegations about the sales
6  spreadsheets that Samsung has produced in compliance with the Court's Order of January 27,
7  2012.    It appears that most of these statements are the result of Apple filing its Motion and the
8  Roberts Declaration before taking my deposition on February 29, 2012, which addressed and
9  explained many of the questions raised.    Because my deposition was taken the day after Apple
10  filed its Motion, had Apple waited just two days to file its Motion, it seems much of the parties'
11  and the Court's time and resources could have been spared.

12        7.    In addition, on February 28, 2012, the same day Apple filed its Motion – but before
13  the Motion was filed – Samsung produced a revised version of the original spreadsheet that is
14  attached in hard copy as Exhibit A to the Roberts Declaration.    A hard copy of the revised
15  spreadsheet (bates numbered SAMNDCA00354292-SAMNDCA0035385) is attached as Exhibit
16  A hereto.    I will refer to the spreadsheet that is attached as Exhibit A to the Roberts Declaration
17  as the "Original Spreadsheet," and the spreadsheet that is attached as Exhibit A hereto as the
18  "Revised Spreadsheet."    The Revised Spreadsheet is almost identical to the Original Spreadsheet,
19  but addresses some of the very issues raised in the Roberts Declaration.

20        8.    On the same day that Samsung produced the Revised Spreadsheet, it also produced
21  a new 215-page sales spreadsheet, which is attached in hard copy as Exhibit B hereto
22  (SAMNDCA0035386-SAMNDCA00354600) ("Practicing Products Spreadsheet").    While the
23  Original and Revised Spreadsheets provide detailed sales and financial data regarding the accused
24  Samsung products, the Practicing Products Spreadsheet provides detailed financial and sales data
25  about additional products that practice the Samsung patents-in-suit.

26

27                          -3-                Case No. 11-cv-01846-LHK
SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
28                                         MOTION FOR RULE 37(B)(2) SANCTIONS

9.      Apple's counsel questioned me extensively about all of these spreadsheets during my deposition on February 29, 2012.   (See Ex. C, 37:9-101:7.)   Accordingly, had Apple waited two days to file its Motion so it could hear my answers to their questions about the spreadsheets, it would have known that the Original Spreadsheet, which is the subject of the Roberts Declaration, had been revised to address some of the issues raised therein.   Apple would have also received answers to many – if not all – of Mr. Roberts' questions through my deposition.   Nonetheless, for the benefit of both the Court and Apple, I will attempt to address these issues yet again here. Before I do so, however, I will provide some background on the contents of the spreadsheets.

10.      Both the Original Spreadsheet and the Revised Spreadsheet are in Excel format and provide detailed sales and financial information per month, per quarter, and per model for each defendant – and worldwide – from May 2010 to December 2011.   The information contained in the spreadsheets includes: quantity of units sold, net revenue, average selling price, cost of goods sold, operating expenses and operating profit.   Each of these data points is provided per month and per quarter in a separate worksheet for each of the 28 accused products (and one practicing product), and is broken out for each individual defendant:   STA, SEA and SEC.   In addition, the first worksheet in the Revised Spreadsheet shows the totals for each data point included in each of the worksheets for the individual accused products.

11.      The Practicing Products Spreadsheet follows the same format and includes the same type of data as in the Original and Revised Spreadsheets, except that it covers an additional 40 products that Samsung contends practice the Samsung patents-in-suit and which are not already included in the Original and Revised Spreadsheets.

12.      Accordingly, in all, Samsung has provided the following sales and financial data on 69 individual products (28 accused products and 41 practicing products) per month, per quarter, and per defendant:   quantity of units sold, net revenue, average selling price, cost of goods sold, operating expenses and operating profit.   In addition, although not specifically broken out, gross

-4-

1  margin per product for STA and SEA can be easily calculated from the spreadsheets by deducting
2  cost of goods sold from net revenue.

3          13.     The first purported problem that Mr. Roberts raises with respect to the Original
4  Spreadsheet is that "[a]ll accused product models are not included."   (Roberts Decl., 2:7.)   Mr.
5  Roberts, however, actually identifies only the following five models as "missing":   the Galaxy S
6  II Skyrocket, the Galaxy S II Epic 4G, the Galaxy S II (T-Mobile edition), the Galaxy S II (AT&T
7  edition), and the Galaxy Tab 10.1 LTE.   (*Id.*, 2:7-10.)

8          14.     It is my understanding that the Galaxy S II Skyrocket, the Galaxy S II Epic 4G and
9  the Galaxy Tab 10.1 LTE are not accused in this case.   Moreover, with respect to the Galaxy S II
10  (T-Mobile edition) and the Galaxy S II (AT&T edition), these models are in fact included in both
11  the Original Spreadsheet and the Revised Spreadsheet under the heading "Galaxy S II/2 (GT-
12  I9100)."   (See Exhibit A to the Roberts Decl., p. 15; see also Exhibit A hereto,
13  SAMNDCA00354333-SAMNDCA00354335.)   Although he had the opportunity to do so (he
14  questioned me for less than five hours), Apple's counsel did not question me about this issue
15  during my deposition.   Had he done so, I certainly would have explained this to him, and Mr.
16  Roberts would have realized that Samsung had in fact produced the information Apple seeks about
17  the two Galaxy S II models described above.

18          15.     The second purported problem that Mr. Roberts raises with the Original
19  Spreadsheet is that "[t]here is no information whatsoever regarding sales by carrier."   (Roberts
20  Decl., 2:11.)   However, Mr. Roberts then immediately admits that "some smartphones may only
21  be sold to specific carriers."   (*Id.*, 2:11-12.)   This is exactly the case here.   Of the 25 accused
22  smart phone models for which Samsung produced detailed sales and financial data in the Original
23  and Revised Spreadsheets, all but the Galaxy S II as noted above, the I500, the Gem and the
24  Indulge are each sold exclusively to just one carrier.

25          16.     Again, Apple's counsel had the opportunity during my deposition to ask me to
26  identify each carrier to which each model was sold.   He did not do so.   Had he asked me, I

27                                          -5-                    Case No. 11-cv-01846-LHK
                          SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
28                                 MOTION FOR RULE 37(B)(2) SANCTIONS

1 | certainly would have identified which models are sold to which carriers, and he would have

2 | realized that Samsung had indeed produced the information that Apple seeks.   I have prepared

3 | and attached hereto as Exhibit D, a table which does just that.

4 |        17.     The third purported problem raised by Mr. Roberts with respect to the Original

5 | Spreadsheet is what he calls "the document does not add down."   (Roberts Decl., 2:14-16.)   By

6 | this, Mr. Roberts means that the totals of the rows labeled "Consolidate" do not equal the totals of

7 | the rows labeled "Manufacture."   However, the explanation for this is simple:   the rows labeled

8 | "Manufacturing" contain data relating to SEC's manufacture of the products *sold to* STA, SEA,

9 | other sales subsidiaries, and for direct sale of the accused products by SEC.   The rows labeled

10 | "Consolidate" contain data representing the total quantity, sales, and average selling price of the

11 | accused products *sold by* STA, SEA, other sales subsidiaries, and SEC.   Because there will

12 | typically be a two- to three-month lag time between the date SEC sells the products to STA, SEA

13 | and SEC's other sales subsidiaries, and the date those sales subsidiaries then sell the products to

14 | carriers and resellers, the totals in the "Consolidate" and "Manufacture" rows, while accurate and

15 | closely corresponding, will not match up exactly.

16 |        18.     Although he certainly could have done so, Apple's counsel did not question me

17 | about this issue during my deposition.   Again, if he had done so, I would have explained that the

18 | discrepancy between the "Consolidate" totals and "Manufacture" totals in the spreadsheets do not

19 | reflect any inaccuracy in the data, but merely a timing difference between sales by SEC and sales

20 | by STA and SEA.

21 |        19.     The fourth issue Mr. Roberts raises regarding the Original Spreadsheet is what he

22 | calls "the document does not add across."   (Roberts Decl., 2:17-18.)   By this, he seems to mean

23 | that the amounts in the "Total" worksheet do not equal the sum of the individual product

24 | worksheets.   This issue has been corrected in the Revised Spreadsheet.

25 |        20.     The fifth purported problem that Mr. Roberts raises with the Original Spreadsheet

26 | is that "[t]here is no indication whether some or all of certain sales (HQ Direct Sales) are made in

27 |

28 |

1    or to the U.S."   (*Id.*, 2:19-20.)   My understanding is that Apple recently deposed Jae-Hwang
2    Sim, Vice President of the Business Operations Group at SEC, and that Mr. Sim explained that the
3    HQ Direct Sales are not made in the United States.   Had Apple waited to file its Motion until
4    after deposing Mr. Sim, Mr. Roberts would have had the information he seeks.

5        21.   The sixth purported problem that Mr. Roberts raises is that the amounts in the
6    Original Spreadsheet "cannot be reconciled to audited financial statements or to publicly available
7    information because no summary or other data are provided as to sales and expenses of non-
8    accused products."   (Roberts Decl., 2:21-23.)   As an initial matter, it is not clear to which
9    "audited financial statements" or "publically available information" Mr. Roberts is referring, or
10   what type of reconciliation he wishes to undertake.   More importantly, contrary to Mr. Roberts'
11   assertion, it is my understanding that Samsung has produced detailed sales information on non-
12   accused products, as discussed in the accompanying declaration of Joby Martin.   This includes
13   detailed sales and expense data in the Practicing Products Spreadsheet for 40 of the Samsung
14   practicing products.   (See Exhibit B.)   Together with the Revised Spreadsheet, Samsung has
15   thus produced detailed sales and financial data on 69 individual products.

16       22.   Mr. Roberts' seventh purported problem with the Original Spreadsheet is that "no
17   details are provided as to the detailed composition of costs."   (Roberts Decl., 3:1.)   However, as
18   I testified during my deposition, the primary cost of goods incurred by STA and SEA with respect
19   to the accused products is the price paid to SEC to acquire the products.   Indeed, although he
20   could have, Apple's counsel did not even ask me at deposition about other cost items that STA
21   and SEA incur, which are insignificant in any event.   (*See* Ex. C, 60:5-12.)

22       23.   The eighth purported problem discussed in Mr. Roberts' declaration is that the
23   Original Spreadsheet does not provide an "explanation of expense allocations," and "there is no
24   way to determine how this compares to Samsung's normal business practice."   (Roberts Decl.,
25   3:5-7.)   However, Apple's counsel questioned me extensively about Samsung's expense

26

27                                        -7-                    Case No. 11-cv-01846-LHK
28                              SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
                                        MOTION FOR RULE 37(B)(2) SANCTIONS

1   allocation methodology during my deposition.    (See Ex. C, 60:17-69:24, 89:6-99:14.)    In

2   essence, I explained that Samsung uses a three step allocation method:

3               First, any expenses that are incurred specifically with respect to a particular model

4               are allocated to that model;

5               Second, costs that are not specific to a given model are allocated to various cost

6               centers.    So, for example, the lease of a building will be allocated to various cost

7               centers.    If that allocation can be undertaken on the basis of usage, that method

8               will be used.    For example, if the sales team that works with Sprint takes up two

9               thousand square feet of a four thousand square foot building, half of the rent will be

10              allocated to that Sprint sales team.    Alternatively, if the usage methodology is not

11              practical, the revenue method will be used.

12              The third and final step is to then take common cost centers, for example, the HR

13              department or the accounting group and allocate those costs across devices.

14      24.     As is evident from the above explanation, the allocation methodology underlying

15  Samsung's spreadsheets is not something that could have been easily explained within the

16  spreadsheets themselves.    Instead, I provided a detailed explanation during my deposition.    I

17  also explained in my deposition that the above-described allocation methodology is used in

18  Samsung's normal business practice.    (See Ex. C, 65:10-21, 96:12-98:7.)

19      25.     Mr. Roberts' ninth purported problem with the Original Spreadsheet is that

20  "[c]ertain product tabs show negative quantities and negative sales, and in some cases, negative

21  quantities yet positive sales."    (Roberts Decl., 3:8-9.)    Mr. Roberts describes this as "illogical"

22  and "very difficult to account for in the manner presented in the document."    (Id., 3:9-10.)

23  Again, however, if Mr. Roberts had withheld judgment until after my deposition, he would have

24  understood there are many logical explanations for these negative values.

25      26.     For example, in paragraph 19 of his declaration, Mr. Roberts "suggests that the

26  document [i.e., Original Spreadsheet] is an unreliable collection of financial data" because, among

27                                          -8-                    Case No. 11-cv-01846-LHK

                                    SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
28                                          MOTION FOR RULE 37(B)(2) SANCTIONS

1   other things, "[t]he Acclaim tab shows negative sales in units and dollars for Q3 2011 and

2   negative costs of sales for certain periods even though there are positive sales and cost of sales in

3   subsequent periods."   (Roberts Decl., 78:15-16, 19-21.)

4         27.      However, as I explained in my deposition, the negative sales and units and dollars

5   for Q3 2011 likely represents the return of defective units – known as DOA units – which then

6   resulted in a reversal of sales, a reversal of cost of goods sold, and a negative contribution for the

7   period.   I also explained that the positive sales and cost of sales in the subsequent period likely

8   represents a small number of units that STA was able to ship back to the carriers, possibly after

9   repairs.   (Ex. C, 72:23-76:10.)   This is a typical occurrence in STA's business.

10         28.      Similarly, as evidence of purported unreliability, Mr. Roberts complains that

11   "[t]he Galaxy Tab 7.0 was introduced in the fall of 2010 but no sales are shown on the Galaxy Tab

12   7.0 until Q4 2010."   (Roberts Decl., 7:17-18.)   But, as I explained in my deposition, the Original

13   Spreadsheet did not contain the Galaxy Tab 7.0 model that was sold in 2010.   (See Ex. C, 99:15-

14   101:7.)   The Revised Spreadsheet was updated to include that model and thus has the data that

15   Mr. Roberts seeks.

16         29.      Notably, even though he certainly had the opportunity to do so, Apple's counsel did

17   not question me during deposition regarding any of the alleged "other issues" that Mr. Roberts

18   lists in paragraph 19 of his declaration.

19         30.      Mr. Roberts also complains that the Original Spreadsheet did not provide sufficient

20   detail regarding the types of expenses covered by the "expense" line item.   However, Samsung

21   has produced (I believe in response to Apple's requests), two additional spreadsheets (attached

22   hereto as Exhibits E and F) that provide even greater granularity on the types of expenses reported

23   in the prior spreadsheets.   With respect to STA and SEA, these spreadsheets are otherwise

24   identical to the previous spreadsheets, but merely break out the "expense" line items into

25   additional sub-categories (**G&A**: labor cost, depreciation, others; **Sales Expense**: logistics cost,

26

27                                          -9-                    Case No. 11-cv-01846-LHK

1   marketing, paid commission, insurance, others; and **Others**) so as to show greater detail on

2   operating expenses, as requested by Apple.

3       31.   In paragraph 18 of his declaration, Mr. Roberts asserts that, "[g]iven testimony that

4   Samsung's U.S. subsidiaries carefully monitor profitability to be in conformity with transfer

5   pricing rules and agreements with the IRS, it is difficult to understand the claimed operating losses

6   on accused products in 2011 for STA (losses of over $24 million) and SEA (losses of over $7

7   million)." (Roberts Decl., 7:6-10.)   Although Apple's counsel did not question me about this

8   during my deposition, the explanation is actually quite simple:   the Advance Pricing Agreements

9   between STA, SEA and the IRS apply to the entire operating profits of SEA and STA as a whole.

10  In contrast, the Original and Revised Spreadsheets show STA's and SEA's operating profits only

11  for the accused products.   There is no inconsistency between the fact that STA and SEA made

12  operating profits with respect to sales of all of their products, but made an operating loss with

13  respect to only the subset of accused products.   Indeed, the Revised Spreadsheet shows that STA

14  made a relatively large operating profit on the accused products in 2010 (approximately $32

15  million).

16      32.   Accordingly, Mr. Roberts' assertion that "[t]his suggests an effort to

17  disproportionately allocate expenses to the accused products and thereby artificially lower STA's

18  profits on the accused profits" is utterly false.   As explained above, the expenses reflected in the

19  spreadsheets were allocated according to Samsung's normal business practices, which seek to do

20  so on a fair and reasonable basis.   Indeed, Mr. Roberts assertion is proven false by the fact that

21  STA generated an approximately $11 million operating loss in 2008, and a $49 million operating

22  loss in 2010, on the products in the Practicing Products Spreadsheet .   (See Ex. B at 1.)   The fact

23  that STA incurred operating losses on the accused products in 2011 thus does not demonstrate any

24  attempt to misallocate operating expenses so as to lower STA's profits.   It just demonstrates that

25  STA sometimes generates operating losses.

26

27                              -10-                 Case No. 11-cv-01846-LHK

28                                      

33.     On the basis of these purported problems – each of which was either addressed in the Revised Spreadsheet, explained in deposition, or could have been so explained had I been asked – Mr. Roberts opines that "it is impossible to determine how the Spreadsheet was prepared and whether there is verifiable support for the numbers included on it."   (Roberts Decl., 8:13-14.) This is simply false.   As I explained in my deposition, and as I believed was explained in Mr. Sim's deposition, all the data in the spreadsheet comes directly from Samsung's SAP database, which is the primary repository of Samsung's financial and sales data.

34.     My understanding is that Apple previously complained that Samsung's production of financial data was "scattershot" and disjointed.   However, Samsung, in the ordinary course of business, does not generate sales and financial reports with the information Apple seeks on a per-model basis for the accused and practicing products.   Therefore, the information Apple requested had to be pulled from our system of record (the SAP database), and placed into spreadsheets. The data, however, is accurate, comes directly from the accounting system used by Samsung in the ordinary course of its business, and has been produced without modification or manipulation. The spreadsheets thus represent a true and accurate picture of Samsung's sales of the accused and practicing products during the relevant period.   I don't understand how Apple can complain that our prior production was scattershot, but then also complain that the spreadsheets are "litigation-driven" after we go to great lengths to attempt to gather in only one or two documents all the information Apple seeks concerning 69 products for each of the three defendants.

35.     Finally, it is my understanding that Apple has now requested that Samsung add even more detail to the spreadsheets.   Specifically, Apple has requested that the spreadsheets be reproduced to the level of detail found in Exhibit 1926 to my deposition, a Global Consolidation Package Report.   However, Apple's request shows a fundamental misunderstanding of the way large businesses maintain their financial data.   The financial spreadsheets described in this declaration are based on data comprised of millions of individual transactions or items, which are electronically maintained; Samsung does not maintain paper back-up documentation for such

-11-
Case No. 11-cv-01846-LHK
SHEPPARD DECLARATION IN SUPPORT OF SAMSUNG'S
MOTION FOR RULE 37(B)(2) SANCTIONS

1  transactions.   Reproducing the spreadsheets to the level of detail found in Exhibit 1926 would

2  result in spreadsheets containing hundreds, if not thousands, of individual line items, and the

3  spreadsheets would be thousands of pages long.   Indeed, the data would be so voluminous it

4  would not even fit in a spreadsheet.   That is why Samsung uses a financial database (SAP) to

5  store this data.

6        I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8        Executed on this 12th day of March, 2012, at Dallas, Texas.

9

10                                      By

11                                            Timothy Sheppard

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              -12-              Case No. 11-cv-01846-LHK

28