# Exhibit 4
# (Submitted Under Seal)

Highly Confidential - Attorneys' Eyes Only

Page 1

1             UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5   APPLE INC., a California          )
6   Corporation,                      )
7            Plaintiff,                )
8   vs.                               ) No. 11-CV-01846-LHK
9   SAMSUNG ELECTRONICS CO., LTD,     )
10  a Korean business entity;         )
11  SAMSUNG ELECTRONICS AMERICA,      )
12  INC., a New York corporation;     )
13  SAMSUNG TELECOMMUNICATIONS        )
14  AMERICA, LLC, a Delaware          )
15  limited liability company,        )
16           Defendants.               )
17                                     )
18

19      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

20

21   VIDEOTAPED DEPOSITION OF BRIAN VON HERZEN, Ph.D.
22             FRIDAY, APRIL 27, 2012

23

24  REPORTED BY:   JANIS JENNINGS, CSR 3942, CLR, CCRR

25  TSG Job # 49052

Highly Confidential - Attorneys' Eyes Only

Page 2

```
 7      DEPOSITION OF BRIAN VON HERZEN, Ph.D.,
 8  taken on behalf of the Plaintiff, at Morrison &
 9  Foerster LLP, 425 Market Street, San Francisco,
10  California, commencing at 9:22 a.m., Friday,
11  April 27, 2012, before Janis L. Jennings,
12  Certified Shorthand Reporter No. 3942, CLR,
13  CCRR.
```

Page 3

```
 1  APPEARANCES OF COUNSEL:
 2
 3   FOR THE PLAINTIFF APPLE INC.:
 4      MORRISON & FOERSTER
 5      BY: MATTHEW I. KREEGER, ESQ.
 6      425 Market Street
 7      San Francisco, California  94105
 8
 9
10
11
12      MORRISON & FOERSTER
13      BY: JOSEPH K. KANADA, ESQ.
14      755 Page Mill Road
15      Palo Alto, California  94304
```

Page 4

```
 1  APPEARANCES:
 2
 3   FOR THE DEFENDANTS SAMSUNG:
 4      QUINN EMANUEL URQUHART & SULLIVAN
 5      BY: BRIAN MACK, ESQ.
 6      50 California Street
 7      San Francisco, California  94111
 8
 9
10
11
12      QUINN EMANUEL URQUHART & SULLIVAN
13      BY: KETAN PATEL, ESQ.
14      51 Madison Avenue
15      New York, New York  10010
16
17
18
19
20  ALSO PRESENT:
21      SHAWN PHILLIPS, Videographer
```

Page 5

```
 1          San Francisco, California; Friday, April 27, 2012
 2                  9:22 a.m.
 3                  --o0o--
 4          (Exhibits 1, 2 and 3 were marked for
 5      identification off the record and attached   09:17:57
 6      hereto.)
 7          THE VIDEOGRAPHER:  This is the start of
 8  tape labeled No. 1 in the videotaped deposition of
 9  Brian Von Herzen in the matter Apple Incorporated
10  versus Samsung Electronics Company Limited, et al.,   09:22:33
11  in the United States District Court of the Northern
12  District of California, San Jose Division,
13  No. 11-CV-01846-LHK.
14          This deposition is being held at
15  425 Market Street, San Francisco, California on       09:22:53
16  April 27th, 2012 at approximately 9:22 a.m.
17          My name is Shawn Phillips.  I'm the legal
18  video specialist from TSG Reporting, Incorporated,
19  headquartered at 747 Third Avenue, New York,
20  New York. The court reporter is Janis Jennings in     09:23:15
21  association with TSG Reporting.
22          Will counsel please introduce yourself.
23          MR. KREEGER:  Matthew Kreeger, Morrison &
24  Foerster, representing Apple.  With me today is
25  Joe Kanada.                                           09:23:29
```

Page 94

1  branches and other features. So to that extent,
2  it's inconclusive what one of ordinary skill would
3  call those given the complexity of the structures.
4      Q. When you say the only images you've seen
5  about the accused products' electrodes you saw three  14:02:34
6  weeks ago, what are you talking about?
7      A. I was referring to some reports of
8  structures -- images of structures that were
9  supposedly taken from Samsung accused products less
10 than three weeks before this report was due.  14:02:52
11     Q. You're talking about images that came with
12 the Maharbiz report?
13     A. In reference to the structures that you
14 seem to be asking questions about, regarding --
15     Q. I'm just asking about your knowledge of  14:03:08
16 what the electrodes looked like in the accused
17 products. The first time you had any knowledge of
18 that was when you received the Maharbiz report?
19     A. Well, I was -- I was asked to read the
20 Maharbiz report, and -- and I was instructed that  14:03:24
21 the burden of proof is on Apple to demonstrate that
22 particular elements are met. And if by the Atmel
23 designs you were referring to particular structures,
24 I was commenting simply that those structures were
25 highly complex in nature and topology.  14:03:45

Page 95

1      Q. All right. We're past that issue. Now
2  I'm just -- I'm asking about -- what's the source of
3  your knowledge about the electrode structure in the
4  accused products?
5      A. My understanding is that the electrode --  14:03:55
6  the electrodes in the accused products utilize a
7  projective capacitance, mutual capacitance
8  technology to detect multiple touches.
9      Q. Right. I'm sorry. My question was a
10 little unclear. I'm not so much asking what  14:04:20
11 it look -- what the electrodes looked like, I'm
12 asking what is the basis for your knowledge of what
13 the electrodes looked like.
14     A. The basis for my knowledge of the
15 appearance of the electrodes was based on my  14:04:39
16 analysis in rebuttal to the evidence that was
17 presented in the Maharbiz report and other reports.
18 And the other evidence that I've listed in my expert
19 report.
20     Q. So you didn't, yourself, perform any study  14:05:07
21 to analyze the electrode configuration in the
22 accused products beyond looking at the evidence that
23 was presented in the Maharbiz report?
24     A. I have not yet had the opportunity to
25 conduct an electron microscope scan of the surface  14:05:23

Page 96

1  of those Samsung products. I wish I had. I feel as
2  though I have not had sufficient time to either
3  review the third-party reports that were conducted
4  or even to validate their authenticity.
5          The reality is that I was given far too  14:05:39
6  little time to even, you know, conduct a technical
7  evaluation of the third-party images that were
8  taken, their accuracy, and I'm -- I'm concerned
9  about the reliability of those reports based upon
10 the inadequate amount of time that I had to really  14:06:05
11 analyze those.
12     Q. Did you inform the lawyers that you're --
13 that you're working with that you felt you needed
14 more time to perform the task?
15     A. I did speak with the lawyers about this  14:06:19
16 topic, and I was very concerned that there was no
17 notice that this third-party testing was done in
18 advance, and I had no ability to discuss it with --
19 I believe it was Ian from -- was it EAS [sic]? --
20 a firm in Silicon Valley that was doing the imaging.  14:06:40
21 So I didn't have the opportunity to interview that
22 person. I didn't have the opportunity to look at
23 the test equipment to analyze the performance or its
24 accuracy or even to validate that the objects that
25 were being taken pictures -- that were -- pictures  14:06:59

Page 97

1  were being taken were, in fact, the accused
2  products. I didn't get a chance to do any of that.
3      Q. When were you retained in this matter?
4      A. Several months ago.
5      Q. Was there anything to prevent you from  14:07:07
6  doing your own independent analysis of the accused
7  products between the time you were retained and now?
8      A. Well, there certainly was an opportunity.
9  My understanding was that such testing analysis
10 would be something that we would be given fair  14:07:25
11 notice of and could actually discuss with the people
12 conducting the testing to understand the exact
13 nature of the testing and what type of experiments
14 were being performed.
15     Q. Did you -- leaving aside what you received  14:07:42
16 from Mr. Maharbiz and his report, did you ever at
17 any time ask the attorneys with whom you were
18 working that you would like to perform your own
19 testing of the accused products?
20     A. I discussed the idea of doing testing with  14:07:58
21 the attorneys.
22     Q. When did you have those discussions?
23     A. Those discussions would have occurred
24 within the last month or so.
25     Q. And why didn't you discuss it before then?  14:08:09

Page 98

1  A.  Well, we were focused at an earlier date
2  on the development of the invalidity analysis for
3  the '607 patent, the '129 patent and the '828
4  patent, among other activities.
5  Q.  Did you ask to speak with any or view      14:08:35
6  any -- start again.
7      Did you ask to speak with any Samsung or
8  Atmel engineers to try to learn about the structure
9  and design of the accused products?
10  A.  I had the opportunity to review some of    14:08:47
11  the testimony of those engineers in my analysis.
12  Q.  Yes.  But did you ask to speak with any of
13  the Samsung or Atmel engineers in order to
14  understand more about how the accused products are
15  constructed?                                   14:09:04
16  A.  I discussed speaking with -- the notion of
17  speaking with one -- one or more of those engineers,
18  I believe, over the last couple months of my work in
19  this area.
20  Q.  And what were you told in response to      14:09:15
21  that?
22      MR. MACK:  I'd just like to caution you
23  not to reveal any privileged material that we may
24  have revealed to you, but if it's forming the basis
25  of the opinions in the report, anything that we told 14:09:49

Page 99

1  you, you may -- you may answer.
2      THE WITNESS:  I recall discussing the
3  possibility of obtaining supplemental information as
4  needed to -- to supplement the information that was
5  already provided in the testimony.  And in general,  14:10:55
6  that was determined to be a possibility, but of
7  course, given the time scale of this case, that that
8  can sometimes be difficult to do in a timely way.
9  BY MR. KREEGER:
10  Q.  What about additional documentation from   14:11:20
11  either Samsung or Atmel about the design of the
12  accused products?  Did you ever ask for any of that?
13  A.  No.  I recall reviewing an abundance of
14  documentation that I received from Samsung and Atmel
15  that was produced in this case, and I've used that   14:12:01
16  produced information as the basis for forming the
17  opinions in my report.
18  Q.  You consider that sufficient to understand
19  the structure and design of the accused products in
20  order to render your opinions?                 14:12:13
21      MR. MACK:  Objection.  Vague.
22      THE WITNESS:  My opinions regarding the
23  non-infringement of the '607 patent was based upon
24  the reports submitted by Dr. Maharbiz and by third
25  parties, as well as the produced documents in this   14:12:59

Page 100

1  case.  And I utilized that information and the
2  produced documents to rebut technically the
3  arguments that were presented.
4      MR. KREEGER:  Can you read the question
5  back, please.                                  14:13:16
6      (Record read as follows:
7        "Q.  You consider that sufficient to
8        understand the structure and design of the
9        accused products in order to render your
10       opinions?")                              14:12:14
11     MR. MACK:  Objection.  Vague.  Asked and
12  answered.
13     THE WITNESS:  My understanding is that
14  Apple has the burden to demonstrate evidence
15  supporting infringement of any of the claims of the  14:13:51
16  '607, and based upon the evidence prevented --
17  presented, I found that the burden of proof was not
18  met in this case.
19  BY MR. KREEGER:
20  Q.  I don't really know if you've -- if you're 14:14:09
21  having trouble with my question.  I'll try phrasing
22  it slightly differently because I don't believe
23  you've really answered it.
24      In forming your opinion in this case, were
25  there facts about the structure or design of the    14:14:19

Page 101

1  accused products that you felt you needed to have
2  but you didn't have?
3  A.  Yes.
4  Q.  And did you ask the counsel with whom
5  you're working to try to obtain those facts from     14:14:47
6  either Samsung or Atmel?
7  A.  Well, you're presuming they only come from
8  Samsung or Atmel.  That's actually not a complete
9  presumption because we had third-party reports that
10 came in.  I had inadequate time to review those      14:15:01
11 reports, to talk with those parties, and to actually
12 validate the testing procedure that was utilized.
13     And, therefore, on that basis, I have
14 concerns about the third-party reports since, in
15 fact, those reports leave a lot to be determined and 14:15:15
16 to understand about those products.  And I did not
17 have a sufficient time to conduct a thorough
18 technical review of those third-party reports or to
19 talk with the people who -- who wrote those reports.
20 Q.  As to the facts about the structure and    14:15:32
21 design of the accused products that you felt you
22 didn't have, did you ask counsel to try to obtain
23 those facts from either Samsung or Atmel?
24     MR. MACK:  Objection.  Vague.
25     THE WITNESS:  I asked Samsung counsel to    14:15:46

Page 102

1  determine the extent to which we could validate the
2  veracity of the third-party reports in the severely
3  limited time that was provided.
4  BY MR. KREEGER:
5     Q.  Did you obtain any additional information    14:16:41
6  from either Samsung or Atmel that would help you
7  understand the facts that you felt you needed to
8  understand about the structure and design of the
9  accused products?
10        MR. MACK:  Objection.  Vague as to time.    14:16:59
11        MR. KREEGER:  I'll be more precise.
12  BY MR. KREEGER:
13     Q.  After you asked Samsung's counsel to
14  determine the extent to which they -- you could
15  validate these issues that you had, did you obtain    14:17:14
16  any additional information from either Samsung or
17  Atmel that would help you understand the structure
18  and design of the accused products?
19     A.  No.  In the two weeks provided, I did not
20  obtain additional information from Samsung and Atmel    14:17:36
21  outside of the documents that were produced in this
22  case, and they're listed in my references.  In
23  particular, I was not able to communicate with the
24  party -- third parties that were conducting the
25  testing of the accused products.           14:17:56

Page 103

1     Q.  I'm puzzled about your comment about two
2  weeks.  The Maharbiz report that you're referring to
3  was served on March 22nd, wasn't it?
4     A.  Yes.  I'm referring to the couple weeks
5  that we had to write the report, practically    14:18:16
6  speaking, from the time that we received the report
7  and I had a chance to look at it to the time where
8  we needed to be completing our write-up of the -- of
9  the non-infringement analysis.
10    Q.  And that's between March 22nd and April    14:18:33
11  16th?
12    A.  Those are the two dates, yes.  And, you
13  know, I'm referring to the time period in between
14  those two dates.
15    Q.  Did you instruct counsel that you wanted    14:18:44
16  to obtain more information from Ian Ward or the
17  laboratory that performed the teardowns that were
18  referenced in the March 22nd report?
19    A.  Yes.  I wanted to speak with them and
20  to -- and to verify the report methodology and the    14:19:08
21  test methodology and other technical aspects of the
22  testing.
23    Q.  And when did you express this concern to
24  counsel for Samsung?
25    A.  That would have been in the week after the    14:19:20

Page 104

1  receipt of the reports, once I've had a chance to --
2  I had a chance to read the report and fully -- and
3  understand it and understand what the -- the key
4  technical information was and where it was coming
5  from.                                      14:19:36
6     Q.  That would have been sometime in the week
7  after March -- between March 22nd and March 29th?
8     A.  Yes, near the end of March.  And that
9  would give us presumably a couple weeks, but that --
10  that's all the time that we had to follow up.    14:19:47
11    Q.  Do you know if any request was made to
12  obtain more information from Ian Ward or his
13  laboratory?
14    A.  I didn't receive any additional
15  information.                               14:20:00
16    Q.  All right.  I'd like to turn to another
17  topic, which has to do with the virtual ground
18  amplifier.  I'm sorry.  I want to be precise about
19  this.  Virtual ground charge amplifier.
20    A.  Very good.                          14:20:36
21    Q.  In your view, what is a "virtual ground
22  charge amplifier" as used in the '607 patent?
23    A.  I believe that one of the inventors of the
24  '607 stated it very well when he said that the
25  virtual ground charge amplifier is "an operational    14:21:11

Page 105

1  amplifier that couples at least one of its inputs to
2  ground."  I believe it was Mr. Huppi.
3     Q.  So that's your understanding of what the
4  term means?
5     A.  As used -- he described that fairly well    14:21:29
6  in the context of the patent.
7     Q.  Do you believe that the circuit shown in
8  Figure 13 is a virtual ground charge amplifier?  By
9  "Figure 13," I mean Figure 13 of Exhibit 4, the '607
10  patent.                                    14:22:10
11    A.  I believe that it's one example of a
12  virtual ground charge amplifier.
13    Q.  Prior to signing your April 16th report,
14  Exhibit 3, did you have an opportunity to
15  communicate with any Samsung engineers or Atmel    14:23:04
16  engineers to determine whether the accused products
17  contain a virtual ground charge amplifier?
18    A.  I have not spoken directly with Samsung or
19  Atmel engineers.  I've relied upon the evidence in
20  my report and the -- the testimony of the Samsung    14:23:39
21  and Atmel engineers that are cited in my report.
22    Q.  I understand you've indicated what you're
23  relying on in your report.  My question is, did you
24  have an opportunity to speak with anyone from
25  Samsung or Atmel to clarify whether they, in fact --    14:23:55

Highly Confidential - Attorneys' Eyes Only

Page 194

CERTIFICATE OF REPORTER

I, JANIS JENNINGS, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: April 28, 2012

_____
JANIS JENNINGS
CSR NO. 3942, CLR, CCRR

Page 195

I N D E X

FRIDAY, APRIL 27, 2012

WITNESS
BRIAN VON HERZEN, Ph.D.

PAGE
EXAMINATION BY MR. KREEGER . . . . . . . . . 6

Page 196

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Expert Report of Dr. Brian Von Herzen on the Invalidity of U.S. Patents 7,663,607 and 7,920,129 | 5 |
| Exhibit 2 | Corrected Expert Report of Dr. Brian Von Herzen on the Invalidity of U.S. Patents 7,663,607 and 7,920,129 | 5 |
| Exhibit 3 | Rebuttal Expert Report of Dr. Brian Von Herzen Regarding Non-Infringement of U.S. Patents 7,663,607 and 7,920,129 | 5 |
| Exhibit 4 | United States Patent 7,663,607; APLNDC00022435 - 22466 | 37 |
| Exhibit 5 | Kokai Unexamined Patent Application Bulletin; APLNDC-Y0000238875 - 8897 | 65 |

Page 197

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 6 | Samsung's Second Supplemental Objections and Responses to Apple's Sixteenth Set of Interrogatories | 106 |
| Exhibit 7 | Application Note QTAN0049 mxT224 Power and Speed Considerations; ATMEL-HTC00000056 - 73 | 121 |
| Exhibit 8 | maXTouch 224-channel Touchscreen Sensor IC; ATMEL-HTC00000374 - 419 | 123 |
| Exhibit 9 | maXTouch PCB/FPCB Layout Guidelines; 12 pages | 128 |
| Exhibit 10 | Atmel mXT1386 Evaluation Kit User Guide | 132 |
| Exhibit 11 | Atmel mXT1386 Evaluation Kit Server Application Reference | 133 |

Highly Confidential - Attorneys' Eyes Only

Page 198

```
 1            E X H I B I T S
 2
 3  NO.         DESCRIPTION            PAGE
 4
 5  Exhibit 12  maXTouch 1386-channel Touchscreen
 6              Controller Summary;
 7              ATMEL-SAMSUNG00001188 - 1199      135
 8
 9  Exhibit 13  United States Patent No. 7,372,455   141
10
11  Exhibit 14  Initial Determination on Violation
12              of Section 337 and Recommended
13              Determination on Remedy and Bond     143
14
15  Exhibit 15  United States Patent No. 6,970,160   165
16
17  Exhibit 16  Rebuttal Expert Report of Dr. Brian
18              Von Herzen on the Non-Infringement
19              of U.S. Patent 7,812,828        172
20
21  Exhibit 17  Expert Report of Brian Von Herzen,
22              Ph.D. Regarding Invalidity and
23              Enforceability of U.S. Patent
24              No 7,812,828                    189
25
```

Page 199

```
 1  NAME OF CASE:
 2  DATE OF DEPOSITION:
 3  NAME OF WITNESS:
 4  Reason Codes:
 5      1. To clarify the record.
 6      2. To conform to the facts.
 7      3. To correct transcription errors.
 8  Page _____ Line _____ Reason _____
 9  From _____ to _____
10  Page _____ Line _____ Reason _____
11  From _____ to _____
12  Page _____ Line _____ Reason _____
13  From _____ to _____
14  Page _____ Line _____ Reason _____
15  From _____ to _____
16  Page _____ Line _____ Reason _____
17  From _____ to _____
18  Page _____ Line _____ Reason _____
19  From _____ to _____
20  Page _____ Line _____ Reason _____
21  From _____ to _____
22  Page _____ Line _____ Reason _____
23  From _____ to _____
24
25              _____
```