HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION FOR ADVERSE INFERENCE JURY INSTRUCTIONS DUE TO SAMSUNG'S SPOLIATION OF EVIDENCE**<br><br>Date:    June 21, 2012<br>Time:   10:00 a.m.<br>Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Paul S. Grewal |

**SUBMITTED UNDER SEAL**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

I. SAMSUNG DESTROYED EVIDENCE IT WAS OBLIGATED TO PRESERVE ......... 2

    A. Samsung's Duty to Preserve Arose Before April 2011 .......................................... 2

    B. Samsung Destroyed Emails It Was Obligated to Preserve .................................... 3

    C. Samsung Destroyed "iPhone Countermeasure Related Report Materials" In Connection with Its Obstruction of the KFTC Investigation ................................ 6

II. SAMSUNG ACTED WITH A CULPABLE STATE OF MIND ...................................... 7

    A. Bad Faith Is Not Required ..................................................................................... 7

    B. Samsung Acted With a Culpable State of Mind .................................................... 8

III. SAMSUNG DESTROYED EVIDENCE RELEVANT TO APPLE'S CLAIMS ............ 12

IV. THE COURT SHOULD ISSUE ADVERSE INFERENCE INSTRUCTIONS ............... 13

V. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)
**CASES**

*AdvantaCare Health Partners, LP v. Access IV*,
  2004 U.S. Dist. LEXIS 16835 (N.D. Cal. Aug. 17, 2004)........................................................ 13

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979)................................................................................................. 10

*Byrd v. ABC Prof'l Tree Serv.*,
  2011 U.S. Dist. LEXIS 60189 (M.D. Tenn. June 6, 2011) ....................................................... 6

*Consol. Aluminum Corp. v. Alcoa, Inc.*,
  244 F.R.D. 335 (M.D. La. 2006).......................................................................................... 8, 9

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
  2008 U.S. Dist. LEXIS 111150 (N.D. Cal. Sept. 19, 2008) .................................................... 13

*FTC v. Lights of Am. Inc.*,
  2012 WL 695008 (C.D. Cal. Jan. 20, 2012) ................................................................. 2, 8, 10

*Glover v. BIC Corp.*,
  6 F.3d 1318 (9th Cir. 1993)................................................................................................ 8, 13

*Gonzalez v. Las Vegas Metro. Police Dep't*,
  2012 U.S. Dist. LEXIS 46601 (D. Nev. Apr. 2, 2012) ........................................................... 15

*Hamilton v. Signature Flight Support Corp.*,
  2005 U.S. Dist. LEXIS 40088 (N.D. Cal. Dec. 20, 2005) ...................................................... 15

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
  591 F. Supp. 2d 1038 (N.D. Cal. 2006), *rev'd on other grounds*,
  645 F.3d 1336 (Fed. Cir. 2011)............................................................................................. 12

*IO Grp. v. GLBT Ltd.*,
  2011 U.S. Dist. LEXIS 120819 (N.D. Cal. Oct. 19, 2011)....................................................... 9

*Keithley v. Homestore.com, Inc.*,
  2008 U.S. Dist. LEXIS 92822 (N.D. Cal. Nov. 6, 2008).......................................................... 8

*Kronisch v. United States*,
  150 F.3d 112 (2d Cir. 1998).................................................................................................. 12

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993)............................................................................................... 10

*Medical Lab. Mgmt. Consultants v. ABC*,
   306 F.3d 806 (9th Cir. 2002) .................................................................................................. 15

*Micron Technology, Inc. v. Rambus Inc.*,
   645 F.3d 1311 (Fed. Cir. 2011) ......................................................................................... 13, 15

*MOSAID Techologies, Inc. v. Samsung Electronics Co.*,
   348 F. Supp. 2d 332 (D.N.J. 2004) ............................................................................... 1, 7, 8, 9

*Powertech Technology Inc. v. Tessera, Inc.*,
   660 F.3d 1301 (Fed. Cir. 2011) .............................................................................................. 15

*Premier Displays & Exhibits v. Cogswell*,
   2009 U.S. Dist. LEXIS 119462 (C.D. Cal. Dec. 23, 2009) ................................................... 4, 5

*Religious Technology Center v. Netcom On-Line Comm. Serv., Inc.*
   1997 WL 34605244 (N.D. Cal. Jan. 6, 1997) ......................................................................... 11

*U.S. v. Vidacak*,
   553 F.3d 344 (4th Cir. 2009) .................................................................................................... 6

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.
   Copyright Litig.)*
   462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006) ..................................................................... 9, 11

*Zeigler v. Fisher-Price, Inc.*,
   302 F. Supp. 2d 999 (N.D. Iowa 2004) ..................................................................................... 6

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) .................................................................................... 2, 9, 11

**STATUTES**

15 U.S.C. § 1117 ............................................................................................................................ 10

Fed. R. Evid. 803(8) ......................................................................................................................... 6

**INTRODUCTION**

Samsung does not contest that it has continued to use an email system that automatically and permanently deletes emails after two weeks, even for employees who received litigation hold notices, and has not implemented any systematic controls to ensure that employees take the necessary steps to preserve all relevant emails before they are automatically deleted. Samsung characterizes its conduct as a "mere failure to suspend the automatic delete function." (Opp. at 16.) Yet courts have issued adverse inference instructions precisely because of comparable failures—including in a case against Samsung. In *MOSAID Techology, Inc. v. Samsung Electronics Co.*, 348 F. Supp. 2d 332 (D.N.J. 2004), the court issued "spoliation inference" instructions because, after the litigation was filed, Samsung "never placed a 'litigation hold' or 'off switch' on its document retention policy concerning email," which, "[u]nchecked . . . allowed e-mails to be deleted, or at least to become unaccessible, on a rolling basis." *Id*. at 333-34, 340.

Notwithstanding the adverse inference instructions issued in *MOSAID*, Samsung failed to suspend auto-deletion of emails after litigation was filed in the *Fractus* case. (Dkt. No. 895-2, Ex. 37 (filed under seal) (May 20, 2011 trial transcript referring to Samsung's continued policy of deleting email every two weeks after lawsuit was filed).) Once again, Samsung has adhered to its auto-deletion policy in this case, long after it first had notice of Apple's claims in August 2010, and to this day. Adverse inference instructions are warranted here, as they were in *MOSAID* and numerous other cases in which parties failed to suspend auto-deletion policies when under a duty to preserve.

Samsung relies heavily on an order from the ITC, yet Samsung previously took the position that the motion filed in this Court "is a different motion and asks for different remedies." (Dkt. No. 899-3 at 1.) Moreover, in the ITC, the ALJ did not adopt an adverse inference because he did not find the bad faith that he concluded was necessary for him to do so; here, in contrast, the Court is determining whether to instruct the jury that it can adopt an adverse inference, and bad faith is not required.

Further, Samsung barely even acknowledges its deliberate destruction of documents concerning "iPhone countermeasure" materials in connection with obstructing a Republic of

Korea's Fair Trade Commission ("KFTC") investigation. Adverse inference instructions are warranted in light of that spoliation as well.

## I. SAMSUNG DESTROYED EVIDENCE IT WAS OBLIGATED TO PRESERVE

### A. Samsung's Duty to Preserve Arose Before April 2011

Samsung asserts that its "preservation duty . . . arose no earlier than April 15, 2011, when Apple filed its Complaint," and the "majority of documents that Apple cites in its motion are dated prior to April 15, 2011, and relate to steps in the design and development process that took place long before Apple filed its Complaint." (Opp. at 4.) The only case that Samsung cites for this proposition contradicts its position. *See FTC v. Lights of Am. Inc.*, No. SACV 10-1333, 2012 WL 695008, at *2 (C.D. Cal. Jan. 20, 2012) ("The obligation to preserve relevant evidence attaches when litigation is 'pending or reasonably foreseeable.'") (cited in Opp. at 2 n.16);[1] *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("duty to preserve attached at the time that litigation was reasonably anticipated") (cited in Opp. at 18 n.20).

Here, soon after Apple's on August 4, 2010 presentation to Samsung about its infringement of Apple's patents (Dkt. No. 128 (Lutton Decl., filed under seal) ¶¶ 2-4), Samsung issued litigation hold notices to some employees, stating "there is a reasonable likelihood of future patent litigation between Samsung and Apple unless a business resolution can be reached." (Dkt. No. 895-2 Ex. 9 at A-1.) As Apple's motion noted, Samsung thereby "acknowledged its obligation to preserve documents related to Apple's claims . . . in August 2010" (Mot. at 10); thus, Samsung is wrong that Apple "admits" that the preservation duty arose in April 2011. (Opp. at 14-15 (citing Mot. at 10).) Samsung offers no basis to conclude that it did not anticipate litigation when it issued those hold notices (and fails to identify any other date at which it *did* anticipate litigation). That Apple did not also issue litigation holds in August 2010 (Opp. at 15 n.16) is irrelevant. Apple negotiated with Samsung in good faith after first apprising Samsung of

---

[1] *Lights of America* does not support Samsung. In that case, the court rejected the defendants' contention that the FTC's duty to preserve attached when it first initiated an investigation against them, because an investigation was merely the procedure the FTC used to obtain information about a product, before it could decide whether litigation was warranted. 2012 WL 695008, at *3, 11-12.

its infringement claims, and it was only after Samsung announced a new round of infringing products in Spring 2011 that Samsung made clear to Apple that it would not stop copying Apple's products. (Dkt. No. 128 (Lutton Decl., filed under seal) ¶¶ 18-22.) Samsung, in contrast, was planning those new infringing products throughout that period, and therefore cannot claim that it did not anticipate litigation. (*See*, *e.g.*, Opp. at 4 (describing pre-complaint documents as "relat[ing] to steps in the design and development process); *see also* Dkt. No. 175 (Opp. to Mot. for Prelim. Injunct. (filed under seal) at 4 (taking position that parties' settlement negotiations ended in November 2010).) Moreover, Samsung does not contend that Apple automatically deletes emails after 14 days, or at all.

### B. Samsung Destroyed Emails It Was Obligated to Preserve

Samsung does not contest that its mySingle email system automatically deletes emails after 14 days, and that Samsung did not disable that function for any employee, even those who received litigation hold notices. Nor does Samsung contest that it has no systematic controls or company-wide oversight procedures to ensure that employees take all the necessary steps to preserve relevant emails before they are automatically deleted. Apple demonstrated that some custodians did not preserve all relevant emails, because they failed to preserve emails that they sent or received that were produced by other custodians. (Mot. at 4-6.) As Apple argued, those documents are likely only the tip of the iceberg, as Apple cannot possibly know how many other documents these custodians (and others) failed to preserve.[2] (*Id.*) Indeed, Samsung identifies even more instances in which other custodians produced emails that were not preserved by a custodian who sent or received the emails. (Dkt. No. 987-39 ¶ 19.)

Samsung falls far short of demonstrating that, despite the auto-delete function, it somehow preserved all emails it was obligated to preserve.

---

[2] Samsung does not contend that Apple uses an email system that automatically deletes emails. Accordingly, while Samsung's custodians' failure to preserve emails when Samsung has continued to use an email system that automatically deletes emails after 14 days is highly relevant, Samsung's assertion that some Apple witnesses did not produce some emails has no relevance whatsoever.

1    First, Samsung does not contest Apple's showing that some custodians failed to preserve
2    emails created between August 2010 and April 2011, but argues the failure to preserve does not
3    matter because it had no duty to preserve them.  (Opp. at 4, 14-15.)  That argument fails because
4    all of the documents were created *after* Samsung issued its initial litigation hold notices
5    acknowledging that litigation was reasonably foreseeable.  (Mot. at 4-6.)

6    Second, Samsung argues that those custodians' failures to preserve documents created
7    before April 2011 does not matter because they supposedly had not received the August 2010
8    litigation hold notice.  (Opp. at 10-14.)  This argument flatly contradicts the four versions of the
9    transparency disclosures Samsung previously served in this case, all of which listed these
10   custodians as recipients of the August 2010 notice.  (Dkt. No. 895-2 Ex. 9; Declaration of
11   Esther Kim in Support of Samsung's Reply in Support of Motion for Adverse Inference
12   Instructions ("Kim Reply Decl.") Exs. 1-3 (listing Don Joo Lee, Minhyouk Lee, Seogguen Kim,
13   Seunghwan Cho, Sungsik Lee, and Won Pyo Hong in Ex. S).)  *After Apple filed its motion*,
14   Samsung filed a new amended disclosure, omitting those same custodians from the list of those
15   who received the August 2010 hold notice.  (Dkt. No. 987-37 (filed under seal) Ex. 33, at Ex. T;
16   Dkt. No. 987-43 Ex. 4.)  The Court should not credit this after-the-fact change.  *See*, *e.g.*, *Premier*
17   *Displays & Exhibits v. Cogswell*, No. SACV 09-354, 2009 U.S. Dist. LEXIS 119462, at *22-29
18   (C.D. Cal. Dec. 23, 2009) (applying "sham affidavit" rule and disregarding declaration
19   contradicting earlier deposition testimony).  Even if credited, that Samsung has now abandoned
20   its four prior disclosures further demonstrates that Samsung has not paid adequate attention to its
21   preservation obligations (and disclosures to Apple).  Regardless, Samsung had an obligation to
22   preserve relevant evidence once litigation was reasonably foreseeable; if Samsung failed to do so
23   because it did not send hold notices to the right people, that is Samsung's problem, not Apple's.

24   Third, contradicting the testimony of its twice-deposed corporate witness on document
25   retention, Kyu Hyuk Lee, Samsung identifies new facts about its mySingle email system and the
26   availability of Outlook to SEC employees.  The Court should disregard Samsung's new facts.
27   *See*, *e.g.*, *Premier Display*, 2009 U.S. Dist. LEXIS 119462, at *22-29.
28

APPLE'S REPLY ISO MOTION FOR ADVERSE INFERENCE JURY INSTRUCTIONS          4
CASE NO. 11-CV-01846-LHK (PSG)
sf-3153518

Even if considered, the new facts do not show that Samsung preserved all relevant emails before they were automatically deleted or that Samsung took steps to ensure that employees took steps to preserve relevant emails before they were deleted.  As to Outlook, Mr. Lee testified that "Outlook is not automatically given to each employee of Samsung," and that "in order to install an Outlook linked to My Single," Samsung requires employees to receive "permission from his or her department."  (Dkt. No. 895-2 Ex. 11 at 164:19-165:21.)  Samsung now contradicts that testimony and asserts that Samsung only "requires employees to obtain special authorization to use Outlook to *send* email." (Opp. at 7 n.8.)  At most, Samsung's new evidence shows that SEC employees *can* get Outlook installed, but still need to have it "configured to retain indefinitely the email downloaded from the mySingle server."  (Dkt. No.  987-47 (filed under seal) ¶ 8.)  Samsung remains conspicuously silent as to how many SEC employees, or how many employees who received litigation hold notices, have Outlook installed on their computers, much less have it configured to retain email indefinitely.  (Mot. at 3 n.3.)

As to mySingle, Samsung now contends it has "save all" functionality.  (Opp. at 6.)  Mr. Lee, who never mentioned this feature in his two depositions, now declares that he "had previously not been aware of it."  (Dkt. No. 987-62 (filed under seal) ¶ 4.)  That Samsung's corporate witness on document retention was unaware of this feature demonstrates that this feature is not widely known.  Indeed, no Samsung deponent mentioned the "save all" feature in mySingle and only one declarant states that he used it.  (Dkt. No. 987-50 (filed under seal) ¶ 5.)

Finally, Samsung offers declarations from custodians referenced in Apple's motion, who state that they did not "intentionally delete any evidence that may have been relevant."  (*See*, *e.g.*, Dkt. No. 987-43 (filed under seal) ¶ 6; Dkt. No. 987-58 (filed under seal) ¶ 6; Dkt. No. 987-45 (filed under seal) ¶ 5.)  That is a far cry from stating that they took steps to identify all potentially relevant emails and preserve them (much less what steps they took to do so).[3]

---

[3] In conjunction with its opposition, Samsung belatedly produced 1,989 emails and corresponding attachments from Joon-Il Choi's custodial files, including the email cited in Apple's motion and others discussing comparisons and copying of Apple products.  (Kim Reply Decl. ¶ 8 & Ex. 5.)  That Samsung had not produced the emails, even though Mr. Choi had not

(Footnote continues on next page.)

### C. Samsung Destroyed "iPhone Countermeasure Related Report Materials" In Connection with Its Obstruction of the KFTC Investigation

Apple's motion emphasized Samsung's deliberate destruction of "Korean roadmap iPhone countermeasure related report materials," as well as "all the relevant files that came up in a search for SKT-related files," as documented in the KFTC press release. (Mot. at 1-2, 6-7, 11, 13-14; Dkt. No. 895-2 Ex. 1.) *Samsung does not deny the destruction.* (*See* Dkt. No. 987-48 (filed under seal).)

Contrary to Samsung's characterization (Opp. at 20), the KFTC document is not hearsay. It is a government report that relies on Samsung Vice President Jong In Kim's admissions quoted above, which were stated in an email he sent to EVP Won Pyo Hong. (Dkt. No. 895-2 Ex. 1 at 5; *id.* Ex. 24 at S-ITC-003006126; Mot. at 6-7.) These statements are admissible as party admissions in a report of an official investigation that Samsung has not denied. *See*, *e.g.*, *U.S. v. Vidacak*, 553 F.3d 344, 351 (4th Cir. 2009) (International Criminal Tribunal investigation records admissible under Fed. R. Evid. 803(8)); *Byrd v. ABC Prof'l Tree Serv.*, No. 1:10-DV-0047, 2011 U.S. Dist. LEXIS 60189 at *11 n.3 (M.D. Tenn. June 6, 2011) (government press release admissible under Rule 803(8) as "factual findings resulting from an investigation made pursuant to authority granted by law"); *Zeigler v. Fisher-Price, Inc.*, 302 F. Supp. 2d 999, 1021 (N.D. Iowa 2004) (consumer agency press release admissible as party admission and as agency report under Rule 803(8)(C)). Indeed, EVP Hong *admits* he "received notice" from Vice President Kim of his actions "as described in the KFTC press release." (Dkt. No. 987-58 (filed under seal) ¶ 5.)

Samsung alleges that the destroyed documents were limited to "cell phone pricing in Korea," and were not relevant to issues in this case. (Opp. at 20-21.) Yet Samsung's "iPhone

---

(Footnote continued from previous page.)

destroyed them, is hardly evidence of preservation or good faith. As to Ioi Lam, who was one of the key software engineers responsible for the bounce and double-tap features incorporated into the accused Galaxy Tab and who produced only 18 emails, Samsung now asserts that his documents were "were mistakenly de-duplicated against emails from his colleagues." (Opp. at 12.) Yet Samsung had represented that it was *not* removing duplicate documents in its productions. (Kim Reply Decl. Exs. 6-9.) Samsung fails to show that any of the witnesses identified in Apple's motion preserved all relevant documents. (*See id.* Ex. 4.)

countermeasure" documents, and the "SKT-related files" (apparently referring to SK Telecom, the largest Korean carrier) likely address issues such as what iPhone features are most appealing to consumers; whether Samsung should offer similar features; and whether Samsung's smartphones are similar to Apple's. Indeed, Samsung has produced communications with U.S. carriers that address these highly relevant issues.[4] Samsung sells basically the same infringing "Galaxy S" smartphones in Korea and the U.S. Thus, Samsung should have preserved and produced its "iPhone countermeasure" communications with both Korean and U.S. carriers.

The destruction of documents in connection with the KFTC investigation is an independent, sanctionable act of bad faith spoliation; that it did not involve "the mySingle system" (Opp. at 21) is irrelevant. It also shows that Samsung executives knew of this destruction, and undermines EVP Hong's assertion that he did not "intentionally delete" relevant evidence, given that he was informed of this destruction yet produced *no emails and merely 18 documents*. (*See* Mot. at 4-5, 7; Dkt. No. 987-58 (filed under seal) ¶ 6.)

## II.   SAMSUNG ACTED WITH A CULPABLE STATE OF MIND

### A.   Bad Faith Is Not Required

Samsung asserts that Apple must show that Samsung engaged in a "scheme" to destroy relevant evidence "to gain a litigation advantage," and argues that it did not act in bad faith.[5] (Opp. at 3-4.) Ninth Circuit law is clear that "a finding of 'bad faith' is not a prerequisite to [adverse inference instructions]." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "Simple notice of 'potential relevance to the litigation'" is enough. *Id.* Consistent with this

---

[4] (*See*, *e.g.*, Dkt No. 895-2 Ex. 34 at SAMNDCA10247537-538 (T-Mobile noted that Samsung's UI needs to be competitive "with other high-end phones in the U.S. market"; Samsung's icons "need improvement"; and "iPhone maintains a lively, vivid experience, largely due to the 'pop' of their icons"); *id.* Ex. 35 at SAMNDCA10247374 (Samsung Mobile President JK Shin hears comments from carriers like, "Let's make something like the iPhone"); *see also* Kim Reply Decl. Ex. 10 at SAMNDCA 00044700 (Google told Samsung that its P1 and P3 tablets are "too similar" to iPad, so Samsung should "make it noticeably different, starting with the front side").)

[5] In sanctioning Samsung for failing to suspend its auto-deletion of emails, the *MOSAID* court rejected a similar argument, stating, "Samsung provides no, and this Court did not find any case law in [the Third Circuit] that requires a finding of bad faith before allowing a spoliation inference." 348 F. Supp. 2d at 337.

authority, district courts in this circuit have awarded corrective adverse inference sanctions based on a showing of negligence, gross negligence, or conscious disregard for discovery obligations, including where a party has failed to suspend the automatic deletion of emails after litigation is filed. (*See* Mot. at 7-8, 13-15 (citing cases).

Indeed, Samsung has cited authority holding that "[t]he 'culpable state of mind' [required for adverse inference sanctions] includes negligence." *Lights of Am.* 2012 WL 695008, at *2; *Keithley v. Homestore.com, Inc.*, No. C-03-04447, 2008 U.S. Dist. LEXIS 92822 at *27 (N.D. Cal. Nov. 6, 2008) ("In drawing an adverse inference, a court need not find bad faith arising from intentional, as opposed to inadvertent, conduct."). Its out-of-circuit case law on culpability (Opp. at 9 & 21) is not persuasive because, unlike the Ninth Circuit, those other circuits require bad faith for adverse inference sanctions. *See*, *e.g.*, *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006) ("gross negligence" not enough because Fifth Circuit requires "'bad faith' or intentional conduct by the spoliating party").

### B.     Samsung Acted With a Culpable State of Mind

Although bad faith is not required, Samsung's destruction of documents in connection with the KFTC investigation was clearly in bad faith. Samsung does not contend otherwise.

Samsung's failure to suspend its auto-delete policy for employees whom Samsung identified as likely to have relevant documents also establishes the requisite culpability. Although bad faith is not required, Samsung did act in bad faith by continuing to use its auto-delete function after: (1) it had been sanctioned for doing so in the *MOSAID* case; (2) the plaintiff in the *Fractus* case had raised Samsung's auto-deletion of emails; and (3) Apple had specifically raised the issue with Samsung at the outset of this case. Samsung's attempt to distinguish *MOSAID* as issuing sanctions based on Samsung's failure to implement a litigation hold is disingenuous. (Opp. at 20.) The reference to a litigation hold in that case concerns the auto-deletion of email; Samsung was sanctioned for failing to "place[] a 'litigation hold' or 'off switch' *on its document retention policy concerning email*," which, "[u]nchecked . . . allowed

1  e-mails to be deleted, or at least to become unaccessible, on a rolling basis." *MOSAID*, 348 F.
2  Supp. 2d at 332 (emphasis added).[6]

3  After litigation is anticipated, the failure to turn off automatic deletion amounts to a
4  conscious disregard of discovery obligations that justifies adverse inference instructions. *See*
5  *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright*
6  *Litig.)*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) ("even if Hummer's 'long standing policies'
7  included deleting emails, Hummer was required to cease deleting emails once the duty to preserve
8  attached in May 2000"); *IO Grp. v. GLBT Ltd.*, No. C-10-1282, 2011 U.S. Dist. LEXIS 120819,
9  at *19-20 (N.D. Cal. Oct. 19, 2011) (party "consciously disregarded" its discovery obligations by
10 failing to turn off its automated deletion function); *Zubulake*, 220 F.R.D. at 218.  Here, Samsung
11 not only failed to suspend auto-deletion, it failed to ensure that employees take appropriate steps
12 to preserve relevant emails before they are automatically deleted.

13 Samsung is wrong that the defendant in *Zubulake* "fail[ed] to implement a litigation hold."
14 (Opp. at 16.)  In fact, the defendant had specifically instructed its employees to preserve relevant
15 evidence, but the court held that the duty to preserve requires both suspending any "routine
16 document retention/destruction policy *and* put[ting] in place a 'litigation hold.'" 220 F.R.D.
17 at 218 (emphasis added).  Thus, the court found that the destruction of relevant documents
18 pursuant to the defendant's regular document destruction practices showed a sufficiently culpable
19 state of mind to warrant adverse inference instructions.  *Id.*  Samsung attempts to distinguish *IO*
20 *Group* on the ground that the defendant "did not suspend the automatic deletion function until
21 July 2011, *over a year* after the lawsuit was filed" (Opp. at 16), but Samsung has *never* suspended
22 its automatic deletion function for any employee.

---

[6] *Fractus* shows that Samsung had notice of the impropriety of continuing to auto-delete emails when under a preservation duty.  That the *Fractus* court summarily denied a request to issue adverse inference instructions with no reasons given (Dkt. No. 987-35 Ex. 31) hardly demonstrates that Samsung's use of its auto-delete policies when it is under a duty to preserve is permissible.  *Fractus* is from a district court within the Fifth Circuit, which requires a showing of bad faith before allowing a spoliation inference.  *See*, *e.g.*, *Consol. Aluminum*, 244 F.R.D. at 344.

APPLE'S REPLY ISO MOTION FOR ADVERSE INFERENCE JURY INSTRUCTIONS  
CASE NO. 11-CV-01846-LHK (PSG)  
sf-3153518

9

Samsung cites *Lights of America*, but there, the party accused of spoliation submitted sworn declarations stating that all relevant documents had been preserved, and the moving party presented no evidence that relevant documents had been destroyed. *See* 2012 WL 695008, at *3. In contrast, Samsung admits that custodians failed to preserve relevant emails. (Dkt. No. 987-39 ¶ 19.) And many of Samsung's declarants do not address whether they saved all relevant documents (Don-Joo Lee, Minhyouk Lee, Sungsik Lee, and Won Pyo Hong), while some others (Nara Cho, Joo Hyuk Kang, Kang Hyun Lee, Mincheol Shin, Se-Hyun Cho, Wooup Kwon, and YoungSoon Lee) state that they followed the instructions of the litigation hold notices, but fall short of asserting that they took steps to preserve all relevant documents.

That Samsung's document policies may serve a "legitimate business purpose" does not establish that Samsung lacked a culpable state of mind when it continued its auto-deletion. (Opp. at 15-16.) This motion does not challenge document destruction policies in the normal course of business; it concerns a party's obligations *after* litigation is anticipated. Similarly, Samsung addresses the costs of suspending the auto-delete function for all employees, but not for the subset of employees Samsung identified as having relevant documents.[7] And while Samsung cites the Federal Circuit's Model Order on E-Discovery in Patent Cases (Opp. at 2 n.3), those limits would not control here, where deliberate copying is probative of Apple's trade dress claims. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993); 15 U.S.C. § 1117.

Samsung asserts that it educated employees about the need to preserve documents once Apple filed its complaint, but makes no such showing for the period when litigation was reasonably foreseeable. While Samsung's education efforts were insufficient on that ground alone, its limited evidence is lacking even as to the period Samsung addresses. Samsung asserts that it held four meetings in April 2011 at which the 317 attendees were instructed to save emails

---

[7] Samsung claims that Korean law might prohibit saving an employees' emails without consent (Dkt. No. 987-65 (filed under seal) ¶ 2), but that does not mean Samsung has to automatically delete their emails after 14 days. Nor does Samsung show that it could not gain consent from employees in order to implement a proper preservation program.

1  and were informed that "the mySingle and Microsoft Outlook email systems enable users to
2  select emails and save them." (Dkt. No. 987-46 (filed under seal) ¶ 6; Dkt. No. 987-60 (filed
3  under seal ¶ 6.) Yet Samsung does not show that attendees were informed (or reminded) that
4  emails on mySingle would be automatically deleted after 14 days; that they must take action
5  before the 14-day period expired for each email; or how to save emails using mySingle. Indeed,
6  while Samsung's brief makes much ado about the "Save All" feature in mySingle, only one of
7  Samsung's declarants states that he was aware of this feature and used it. (Dkt. No. 987-50 (filed
8  under seal) ¶ 5.) And no Samsung witness testifies that Samsung implemented any follow-up
9  procedures to confirm that employees were taking necessary steps to require that each relevant
10 email was saved before the end of the 14-day auto-deletion period. Nor does Samsung offer
11 evidence of any instructions that were provided to employees who received hold notices but did
12 not attend the four April 2011 meetings.
13        Further, Samsung cannot establish lack of culpability from its declarants' statements that
14 they did not "intentionally" destroy relevant documents. It is Samsung's culpability, not the
15 intent of individual employees, that is at issue. *See, e.g., In re Napster*, 462 F. Supp. 2d at 1070
16 (deciding question of whether investment company had violated duty to preserve); *Zubulake*,
17 220 F.R.D. at 218 (discussing whether UBS had violated its duties). Samsung's adherence to its
18 auto-deletion policies after previous sanctions and warnings, even for employees who received
19 litigation hold notices, and its failure to implement any systematic controls to ensure that
20 employees take all the necessary steps to preserve relevant emails before they are automatically
21 deleted, provide evidence of at least grossly negligent if not reckless misconduct and bad faith.
22 As the relevant case law holds, Samsung's actions were sufficiently culpable to justify an adverse
23 inference instruction.
24        Finally, Apple objects to the inadmissible opinions of Samsung's putative expert attorney
25 (Dkt. No. 987-65 (filed under seal)) as to the reasonableness of Samsung's conduct. *See*, *e.g.*,
26 *Religious Tech. Ctr. v. Netcom On-Line Comm. Servs., Inc.*, No. C-95-20091, 1997 WL
27 34605244, at *8 (N.D. Cal. Jan. 6, 1997) (sustaining objections to attorney declarations in
28

connection with preliminary injunction, stating "interpretations and explanations of the law are not proper subjects of expert testimony").

### III. SAMSUNG DESTROYED EVIDENCE RELEVANT TO APPLE'S CLAIMS

Apple showed that it is entitled to a presumption that the destroyed evidence was favorable to Apple. (Mot. at 9-10, 13 (citing cases).) Samsung attempts to distinguish only one of Apple's cited cases, *Hynix Semiconductor, Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006), *rev'd on other grounds*, 645 F.3d 1336, 1344-47 (Fed. Cir. 2011), on the ground that the court addressed the spoliation issue in the context of its discussion of unclean hands. But that context does not change the meaning of its clear holding that "if spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation" because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." 591 F. Supp. 2d at 1060.

Even without the presumption, Apple has produced sufficient evidence to show that destroyed documents were potentially relevant to the lawsuit. *See Kronisch v. U.S.*, 150 F.3d 112, 128 (2d Cir. 1998) (party must produce only "some evidence suggesting" that the documents were potentially relevant). Indeed, Samsung establishes the relevance of the documents discussed in Apple's motion by describing them as "relate[d] to steps in the design and development process." (Opp. at 4.) Moreover, Samsung's production of documents from other custodians establishes that they were relevant and responsive.

Nor does Samsung rebut the relevance of specific examples referenced in Apple's motion. For example, in response to Apple's showing that Minhyouk Lee, the principal designer of the Galaxy S, produced *no* emails, Samsung argues that he was not obligated to preserve emails because his work on the Galaxy S was completed in February 2011, before the complaint was filed. (Opp. at 11.) That argument fails because Samsung *was* obligated to preserve documents before the complaint was filed, as shown above. Other custodians produced more than 75 emails related to the Galaxy S sent or received by Mr. Lee and dated after August 23, 2010 (including two dated after April 15, 2011), none of which he preserved. (Kim Reply Decl. ¶ 13.) Similarly, Samsung does not contest the relevance of emails to and from Ioi Lam regarding the pre-

APPLE'S REPLY ISO MOTION FOR ADVERSE INFERENCE JURY INSTRUCTIONS  12
CASE NO. 11-CV-01846-LHK (PSG)
sf-3153518

1  complaint decision to implement the bounce and double-tap features incorporated into the
2  accused Galaxy Tab on May 3, 2011.  (Opp. at 12.)  Moreover, Samsung ignores emails to and
3  from Mr. Lam comparing these features to competitors' products after release of the Galaxy Tab.
4  (Dkt. No. 895-2 Exs. 6-7.)

5  Samsung argues that Won Pyo Hong, who produced no emails and only 18 documents,
6  would not have relevant emails because he "never worked as a product designer for Samsung, and
7  was not the designer of any of the accused products."  (Opp. at 10.)  Yet the Court already found
8  that Dr. Hong has "unique, firsthand knowledge" regarding his "orders [to make] side-by-side
9  comparisons of Apple and Samsung products for design presentations."  (Dkt. No. 850 at 9-10.)
10 Similarly, while Samsung asserts that Don-Joo Lee would not have relevant documents because
11 he was "not involved in the design and development of Samsung products" (Opp. at 11), the
12 Court previously ordered Samsung to produce "[f]rom the custodial files of Lee Don-Joo, all
13 documents relating to the redesign of the Galaxy Tab 10.1 following Apple's announcement of
14 the iPad 2 on or about March 2, 2011."  (Dkt. No. 267 at 3.)  The fact that Samsung produced 420
15 non-custodial copies of his emails confirms that Mr. Lee did indeed possess relevant information.
16 (Dkt. No. 987-39 ¶ 19; *see also* Kim Reply Decl. Ex. 4.)

17 **IV.    THE COURT SHOULD ISSUE ADVERSE INFERENCE INSTRUCTIONS**

18 Adverse inference instructions are considered a "lesser" sanction and a "corrective
19 procedure" that help restore the prejudiced party to the position it would have occupied had the
20 evidence not been destroyed.  *Glover*, 6 F.3d at 1329; *see AdvantaCare Health Partners, LP v.*
21 *Access IV*, C-03-04496, 2004 U.S. Dist. LEXIS 16835 (N.D. Cal. Aug. 17, 2004)*; Dong Ah Tire*
22 *& Rubber Co., Ltd. v. Glasforms, Inc.,* No. C 06-3359, 2008 U.S. Dist. LEXIS 111150, at *12
23 (N.D. Cal. Sept. 19, 2008).  As shown in Section II.B, courts have issued such instructions where,
24 as here, a party has failed to suspend its document destruction policies—specifically including the
25 auto-deletion of emails—while under a duty to preserve evidence.

26 Samsung claims that, to give the particular "bad faith" instruction that Apple requests,
27 "the district court must find that the spoliating party intended to impair the ability of the potential
28 defendant to defend itself," citing *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326

1    (Fed. Cir. 2011). (Opp. at 20.) But *Micron* addressed the requirements for terminating sanctions,
2    not adverse inference instructions. As discussed above, Samsung's conduct, including its
3    continued auto-deletion of emails while under a duty to preserve evidence, despite having been
4    sanctioned before for doing exactly that, and its willful destruction of evidence in response to the
5    KFTC's investigation, establishes bad faith.

6    Samsung is wrong that Apple has suffered no prejudice because any documents would
7    have been cumulative to documents produced. Apple points to documents that should have been
8    produced from certain custodians to expose that they once possessed relevant documents that they
9    did not preserve, not because Apple wants more copies of the same documents. While Apple can
10   present evidence of ***duplicative*** documents that were destroyed by pointing to copies in the
11   possession of other custodians, there is no way for Apple to do so for the ***unique*** documents that
12   were destroyed and in the possession of only these custodians (or that that multiple custodians
13   failed to preserve). In light of Samsung's previous representations that documents were not de-
14   duplicated across custodians, there is only one inference to raise from the fact that duplicative
15   copies of documents were not produced from these custodians: they were not produced because
16   they were destroyed.

17   The prejudice to Apple from the destruction of unique documents is obvious. This Court
18   has ruled that Samsung's strategy of denying copying renders copying evidence highly probative.
19   (Dkt. No. 267 at 3.) Copying evidence also is relevant to issues such as non-obviousness and
20   willfulness. Samsung's destroyed evidence could include even stronger or more direct evidence
21   that Samsung deliberately copied Apple's designs, or could address additional features at issue.
22   Apple should have had the full panoply of copying evidence so that it could select the best
23   evidence for its affirmative case, as well as to have the full evidence available to rebut Samsung's
24   response.

25   Moreover, even where others have produced documents, the failure of particular
26   custodians to preserve them may prejudice Apple's ability to establish admissibility and relevance
27   where a particular witness disclaims knowledge of the document or the events described therein.
28   This too appears to be Samsung's strategy. (*See, e.g.*, Dkt. No. 799-2 (filed under seal) at 11-

12 & 14-15 (discussing witnesses' forgetfulness of key documents and events they describe, citing Dkt. No. 799-4 Ex. 40 at 88 & 112-121; Ex. 6 at 34-36; Ex. 7 at 74-77).) The jury should be instructed that it can infer that the destroyed evidence would have shown that Samsung deliberately copied each of Apple's designs and features at issue into the accused products.[8]

Finally, the ITC decision on which Samsung so heavily relies is not binding on this Court. *See*, *e.g.*, *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1308 (Fed. Cir. 2011) (an ITC decision, even one addressing same issues as subsequent litigation, has no preclusive effect). Indeed, Samsung itself stated that the motion in this Court "is a different motion and asks for different remedies." (Dkt. No. 899-3 at 1.) Nor is it persuasive authority, as the ALJ determined that he would not adopt an adverse inference because he did not find the bad faith that he concluded was necessary for him to do so. (Dkt. No. 987-5 (filed under seal) Ex. 1 at 6 (citing *Micron Tech.* 645 F.3d at 1326-28).) Here, in contrast, the Court is determining whether to instruct the jury that it may draw an adverse inference, and bad faith is not required to warrant an instruction. Moreover, as discussed above, the *Micron Technologies* case on which the ALJ relied involved terminating sanctions and does not apply here. Further, Apple had no reply brief or oral argument in the ITC case to show, as it does here, the myriad failings in Samsung's opposition arguments and evidence.

## V. CONCLUSION

The Court should grant Apple's motion and issue adverse inference jury instructions as a sanction for Samsung's spoliation of evidence.

---

[8] Samsung's cited authority on prejudice is inapposite. *See Gonzalez v. Las Vegas Metro. Police Dep't*, No. 2:09-cv-00381, 2012 U.S. Dist. LEXIS 46601, at *24 (D. Nev. Apr. 2, 2012) (defendants had produced precise information that plaintiff claimed she did not receive); *Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 824 (9th Cir. 2002) (no prejudice from accidental loss of laboratory slides where plaintiff had access to digital images of slides and to medical records concerning slides); *Hamilton v. Signature Flight Support Corp.*, No. C-05-0490, 2005 U.S. Dist. LEXIS 40088, at *23-24 (N.D. Cal. Dec. 20, 2005) (no prejudice from destruction of portions of surveillance video showing altercation where missing video footage was irrelevant to plaintiff's claims and plaintiff had two eye witnesses who saw entire incident).

| | | |
|---|---|---|
| Dated: June 5, 2012 | | MORRISON & FOERSTER LLP |
| | By: | */s/ Michael A. Jacobs* |
| | | Michael A. Jacobs |
| | | Attorneys for Plaintiff<br>APPLE INC. |