# Exhibit 11
# (Submitted Under Seal)

```
                CONFIDENTIAL BUSINESS INFORMATION - SUBJECT TO PROTECTIVE ORDER
 1                          UNITED STATES DISTRICT COURT
                           NORTHERN DISTRICT OF CALIFORNIA
 2                                SAN JOSE DIVISION
     _____
 3
     APPLE, INC., a California corporation,
 4
     Plaintiff,
 5
     v.                                              Civil Action No.
 6                                                   11-CV-01846-LHK

 7   SAMSUNG ELECTRONICS CO., LTD.,
     a Korean business entity;
 8   SAMSUNG ELECTRONICS AMERICA, INC.,
     a New York corporation; and
 9   SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
     a Delaware limited liability company,
10
     Defendants.
11   _____

12            *** CONFIDENTIAL BUSINESS INFORMATION ***
                     SUBJECT TO PROTECTIVE ORDER
13

14              VIDEOTAPED PERSONAL DEPOSITION OF:

15

16                           DONGSUB KIM

17

18

19                        February 28, 2012

20                           Kim & Chang

21                        Seoul, South Korea

22                       9:59 a.m. - 1:27 p.m.

23

24

25
```

```
 1   APPEARANCES:

 2
     For the Plaintiff, Apple, Inc.:
 3
                 MORRISON & FOERSTER, LLP
 4               By:  Karl J. Kramer, Esq.
                 755 Page Mill Road
 5               Palo Alto, California 94304-1018
                 (650) 813-5600
 6


 7
     For the Defendants, the Samsung entities:
 8
                 QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
 9               By:  Evette D. Pennypacker, Esq.
                 555 Twin Dolphin Drive
10               5th Floor
                 Redwood Shores, California 94065
11               (650) 801-5000


12
     Also present:
13
                 Samantha Kim, Morrison & Foerster, LLP
14               Albert Kim, Lead Interpreter
                 Laura Sunwoo, Check Interpreter
15               Peter Au, Videographer
                 Lisa A. Knight, Court Reporter
16

17

18

19

20

21

22

23

24

25
```

```
 1   operation, to observe its structures, or to observe its
 2   functions?
 3              MS. PENNYPACKER:  Objection, vague,
 4   compound, and foundation.
 5       A.   Yes, I have.
 6   BY MR. KRAMER:
 7       Q.   Could you describe for us all such instances
 8   that you can recall today.
 9              MS. PENNYPACKER:  Vague, calls for a
10   narrative.
11       A.   My role, itself, sir, has to do with the
12   development of displays and touch devices.  And if and
13   when Apple or any other competitors of ours put out a
14   product, then we need to gain an understanding as to the
15   optical performance and, let's say, thicknesses thereof,
16   what have you, as to the present state of things.  And
17   that is part of our efforts to reinforce our overall
18   competitiveness within the market.
19              And for those reasons, we conduct benchmarking
20   type of analysis as to new products put out by companies
21   like Apple and others, such as LG here domestically or
22   Taiwan's HTC, Asus, and whoever have you.  And we conduct
23   such activities.
24   BY MR. KRAMER:
25       Q.   Could you describe for us the specific
```

1  have a mutual capacitance touchscreen prior to the
2  introduction of the Apple iPhone, correct?
3             MS. PENNYPACKER:  Asked and answered,
4  misstates testimony.
5      A.    Well, again, with respect to the particular
6  time frame you're talking about, sir, I was engaged in the
7  development of phones that were oriented towards the
8  Korean domestic market.  And at that time, as it were,
9  what I was working on really were sort of medium- to
10 low-priced feature phone types of models.  And, you know,
11 at least none of the phones -- none of the models that I
12 was working on came with a mutual capacitance touchscreen.
13 That is my answer.
14  BY MR. KRAMER:
15     Q.    You mentioned that you are in charge of a group
16 that works on displays and touch devices.  Do you recall
17 that?
18     A.    That is correct.
19     Q.    Is that department, today, limited to the
20 Korean market or any particular market?
21     A.    To answer your -- well, to further facilitate
22 your understanding, sir, first of all, when I first came
23 on board with the company way back when, I worked on
24 wireless pagers.  And I think I did that for about a good
25 seven years.  I did that out of the Gumi facility in North

1  instances that you recall of Samsung testing or observing
2  the structures or functions of an Apple iPhone?
3             MS. PENNYPACKER:  Vague, calls for a
4  narrative.
5       A.   Well, the question as -- that was rather broad
6  for my purposes.  Could you perhaps summarize that again
7  for my purposes?
8   BY MR. KRAMER:
9       Q.   I am asking whether he can recall for us and
10 recount for us any recollection he has of specific
11 instances in which the Samsung employees, including
12 himself, have done testing or observation of an Apple
13 iPhone.
14            MS. PENNYPACKER:  Vague, calls for a
15 narrative.
16      A.   Well, I'm not sure if I can quite recall
17 anything specific, but given that I am basically in charge
18 of our display lab, it's as I indicated just a moment ago,
19 sir.
20            With respect to certain optical performances,
21 we are in the position of necessarily having to find out
22 about what such may be, for we want to learn about those
23 optical characteristics.  And what we do is to employ the
24 use of particular measurement types of devices or
25 apparatuses and do some testing or measurements as to our

```
 1   Galaxy Tab, you know, telephone, and what have you, in
 2   terms of the overall brightness, contrast ratio,
 3   et cetera, et cetera.
 4           And so as such, we measure things with respect
 5   to the optical performances of devices.  And with respect
 6   to products as have already been released, on occasion, I,
 7   yes, recall that I had had -- well, I had instructed some
 8   of my subordinates really to undertake some measurements
 9   as to certain structures or thicknesses by basically
10   disassembling certain products.
11    BY MR. KRAMER:
12      Q.    Sir, have you ever seen an Apple patent or
13   patent application?
14           MS. PENNYPACKER:  Objection, vague.  And I
15   also caution the witness not to reveal any
16   attorney-client privilege if the answer would require
17   you to.
18      A.    I personally have not.
19    BY MR. KRAMER:
20      Q.    Have you ever been at a meeting where there was
21   discussion about Apple patents or Apple patent
22   applications?
23           MS. PENNYPACKER:  Same objection.  And I
24   also reiterate my caution to the witness not to reveal
25   any attorney-client privilege if the answer requires
```

```
 1   returned.
 2             MR. KRAMER:  Something in writing would be
 3   good.
 4             MS. PENNYPACKER:  That's fine.
 5             MR. KRAMER:  Okay.
 6             THE VIDEOGRAPHER:  Going off the record at
 7   13:27.  This brings to close the deposition of
 8   Mr. DongSub Kim.
 9             (Time noted:  1:27 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                      C E R T I F I C A T E

 2     SEOUL              )
                          )
 3     SOUTH KOREA        )

 4                   I, Lisa A. Knight, Registered Merit
       Reporter and Certified Realtime Reporter, do hereby
 5     certify that the aforementioned witness was first duly
       sworn by me pursuant to stipulation of counsel to
 6     testify to the truth; that I was authorized to and did
       report said deposition in stenotype; and that the
 7     foregoing pages are a true and correct transcription
       of my shorthand notes of said deposition.
 8
                     I further certify that said deposition was
 9     taken at the time and place hereinabove set forth and that
       the taking of said deposition was commenced and completed
10     as hereinabove set out.

11                   I further certify that I am not attorney or
       counsel of any of the parties, nor am I a relative or
12     employee of any attorney or counsel of any party connected
       with the action, nor am I financially interested in the
13     action.

14                   The foregoing certification of this
       transcript does not apply to any reproduction of the same
15     by any means unless under the direct control and/or
       direction of the certifying reporter.
16

17
                     IN WITNESS WHEREOF, I have hereunto set my
18     hand this 29th day of February, 2012.

19
                              [signature: Lisa K. Knight]
20
                        _____
21                      LISA A. KNIGHT
                        Certified Realtime Reporter
22                      Registered Merit Reporter
                        Realtime Systems Administrator
23

24

25
```