UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) | Case No.: 11-CV-01846-LHK |
| | ) | |
| Plaintiff, | ) | ORDER RE: DAMAGES |
| v. | ) | |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., A | ) | |
| Korean corporation; SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC., a New York | ) | |
| corporation; SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this patent case, a jury found that a range of Samsung products infringe several of

Apple's design and utility patents, and that several Samsung products dilute Apple's trade dress.

The jury awarded $1,049,343,540.00 in damages, and provided a breakdown of this award by

Samsung product.  In their post-trial motions, the parties have raised a number of issues concerning

the damages in this case.  Specifically, Apple has requested additur, supplemental damages, and

prejudgment interest, *see* Apple's Motion for Judgment as a Matter of Law ("Apple JMOL"), ECF

No. 2002, and Samsung has moved for a new trial on damages or for remittitur, *see* Samsung's

Motion for Judgment as a Matter of Law ("Samsung JMOL"), ECF No. 2013.  The Court will

address each of these requests in turn.

I.      **ADDITUR**

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

United States District Court
For the Northern District of California

Apple has requested that the Court increase the damages award for five products because the jury awarded less than the amount calculated by Samsung's damages expert.[1]  *See* Apple JMOL at 18.  However, there is a longstanding rule that the Seventh Amendment prohibits a judicial increase in a damages award made by a jury.  *See Dimick v. Scheidt*, 293 U.S. 474, 486-87 (1935).  Apple argues that that prohibition does not apply here because there is no dispute about the proper amount of damages.  That is simply not the case.  The amount of damages is heavily disputed here, as evidenced by extensive testimony provided by both parties concerning the proper amount of compensation.  The jury was "not bound to accept the bottom line provided by any particular damages expert," *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1002 (9th Cir. 2006), but rather was free to evaluate the testimony of both sides' experts in arriving at its award.  It is not the proper role of the Court to second-guess the jury's factual determination as to the proper amount of compensation.  Accordingly, Apple's motion for an increase in the jury's damages award is DENIED.

## II.    SUPPLEMENTAL DAMAGES

Apple seeks an award of supplemental damages for infringing sales not considered by the jury.  The Court agrees that an award of supplemental damages is necessary here.  Section 284 requires that the Court award compensation for every infringing sale, and the Federal Circuit has held that where the jury does not make an award, the Court must do so.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010).  The parties do not dispute that there are sales for which the jury did not make an award, because they occurred after the trial had concluded.  Because the Court must make an award for any sale for which the jury did not, an award of supplemental damages is required.

There are three primary issues the Court must address in resolving Apple's request for supplemental damages: (1) the date from which the award should begin; (2) whether the law permits supplemental damages for post-verdict sales where an award of infringer's profits is made

---

[1] Apple also suggests that the Court should ignore the product-by-product amounts provided by the jury, and should consider only the aggregate total amount.  However, Apple provides no authority for the argument that the Court should not consider the jury's specific findings.  The Court will thus consider the jury's award for each product.

United States District Court
For the Northern District of California

1   pursuant to 35 U.S.C. § 289; and (3) the proper method for calculating post-verdict damages in a

2   case where the jury made no determination as to royalty rate.

3            First, regarding the date from which the award should be made, Apple argues that the

4   supplemental damages award should include sales beginning on July 1, 2012, because the evidence

5   presented to the jury ran only through June 30, 2012.  Samsung argues that the jury considered all

6   the sales made through the date of the verdict, whether or not explicit evidence of those sales was

7   presented at trial, and thus, the supplemental damages award should begin on August 25, 2012 (the

8   day after the verdict).  There is no clear statement in the case law as to which approach is correct.

9   While it is true that the jury did not hear evidence of sales between June 30 and August 24, it is

10  also possible that the jury considered this fact in arriving at its ultimate award.  Thus, there are

11  reasons to support either date.  However, the Federal Circuit recently affirmed a portion of a

12  district court order refusing to grant supplemental damages for sales made before the verdict.  The

13  Court explained that the Plaintiff "could have-but did not-argue to the jury that its suggested

14  amount . . .should be proportionally increased for the two months not accounted for in the sales

15  data," and that "[u]nder these circumstances, awarding additional amounts of damages incurred

16  before trial would be an improper invasion of the jury's province to determine actual damages and

17  an inappropriate use of 35 U.S.C. § 284 to enhance inadequate compensatory damages." *Presidio*

18  *Components Inc. v. Am. Technical Ceramics Corp.*, 08-CV-335-IEG, 2010 WL 3070370 (S.D. Cal.

19  Aug. 5, 2010) *aff'd in part, vacated in part*, 2012 WL 6602786 (Fed. Cir. Dec. 19, 2012) (internal

20  citation omitted).  The same is true here; nothing precluded Apple from arguing that the jury

21  should consider sales from June 30 through August 24, or from presenting evidence on how to

22  estimate such sales.  Thus, consistent with the *Presidio Components* decision, the Court intends to

23  calculate the supplemental damages award beginning on August 25, 2012, the day after the verdict.

24           Second, regarding the question of whether a supplemental damages award is appropriate

25  where the jury's award was made, at least in part, pursuant to § 289, the law is not clear.  Both

26  parties have made arguments, but neither party has cited, and the Court is not aware of, any cases

27  squarely addressing the issue of whether supplemental damages are appropriate for an award of

28  infringer's profits made under § 289.

3

**United States District Court**
For the Northern District of California

1   Samsung argues that no supplemental damages may be awarded where the jury's award

2   included infringer's profits under § 289, because the purpose of supplemental damages is purely to

3   compensate the plaintiff, where an award of infringer's profits goes beyond compensation.  This

4   argument is belied by the approach courts have taken to enhancements in the context of

5   supplemental damages.  Specifically, courts have allowed a supplemental damages award pursuant

6   to § 284 to be doubled for continuing willful infringement.  *See Aero Products Int'l, Inc. v. Intex*

7   *Recreation Corp.*, 02 C 2590, 2005 WL 1498667 (N.D. Ill. June 9, 2005).  This outcome is clearly

8   inconsistent with Samsung's contention that supplemental damages serve solely to compensate.

9   Moreover, courts have recognized that supplemental damages serve to prevent the "inefficient and

10   unhelpful" outcome of a second suit being filed to collect damages for post-verdict, pre-judgment

11   sales.  *Hynix Semiconductor Inc. v. Rambus Inc.* 609 F.Supp.2d 951, 961 (N.D. Cal. 2009).

12   Damages under § 289 would be available in a follow-on suit, and so should be available in this

13   procedure designed to avoid such a suit.

14   Moreover, although § 289 does not contain § 284's explicit instruction that "[w]hen the

15   damages are not found by a jury, the court shall assess them," § 289 does specify that "[n]othing in

16   this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed

17   patent has under the provisions of this title."  However, in cases where both design and utility

18   patents are infringed in a single product, an award made pursuant to § 289 compensates plaintiffs

19   for both types of infringement.  *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277,

20   1291 (Fed. Cir. 2002).  A prohibition on supplemental damages where an award is made pursuant

21   to § 289 would thus run afoul of this requirement that other patent remedies, which include

22   supplemental damages, remain available.

23   In sum, the purposes of supplemental damages and the text of §§ 284 and 289 indicate that

24   supplemental damages are, indeed, available for awards made pursuant to § 289, in addition to

25   awards made pursuant to § 284.

26   Finally, regarding the proper method for calculating supplemental damages,  as other courts

27   in this district have noted, the cases discussing supplemental damages in the patent context are few.

28   *See Hynix*, 609 F. Supp. 2d at 960.  In most of those cases, a jury determined what the appropriate

4

United States District Court
For the Northern District of California

1  royalty rate would be, allowing the court to simply apply the jury's stated methodology to the

2  proven or estimated post-verdict sales.  *See, e.g.*, *Finjan*, 626 F.3d at 1212 ("The district court

3  granted Finjan additional damages by multiplying the jury's royalty rates against previously

4  uncalculated sales."); *Hynix*, 609 F. Supp. 2d at 964 ("Although the existing case law on

5  supplemental damages does not explain why, it recommends applying the royalty rates determined

6  by the jury."); *see also Presidio Components*, 2012 WL 6602786.  Here, the jury did not make a

7  finding as to the appropriate royalty rate, and the Court cannot now do so without trenching on

8  Samsung's Seventh Amendment right to a jury trial on that issue.  *See Boston Scientific Corp. v.*

9  *Johnson & Johnson*, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008) ("Even if there were evidence

10  sufficient for the Court, as opposed to the jury, to determine a reasonable royalty, doing so at this

11  point would violate BSC's Seventh Amendment rights.").  However, in applying the same royalty

12  rate used by the jury, courts have explained that the rationale for continuing the jury's award, rather

13  than using some other method, is that there is an "absence of any meaningful distinction between

14  pre-verdict and post-verdict infringement."  *Hynix*, 609 F. Supp. 2d at 965.  Under this rationale, it

15  would be appropriate for the Court to attempt to award supplemental damages consistent with the

16  jury's award.

17         In this case, Apple has proposed dividing the jury's total damages award for all products by

18  the total number of sales for all products to determine a per-sale amount, which the Court could

19  then multiply by the number of post-verdict sales.  The Court does not find this type of averaging

20  appropriate, as the jury's awards for different products differed significantly, and only a few of the

21  products for which the jury made an award have remained on the market post-verdict.  Rather, it

22  would be more appropriate to determine the per-sale amount on a product-by-product basis, and

23  use that per-sale amount to determine the supplemental damages amount for each product that has

24  remained on the market for any post-verdict period.  Because the jury returned an award for each

25  product separately, the Court can simply divide the jury award for each product by that product's

26  number of sales to calculate this per-product amount.

27         This leaves the question of the actual number of post-verdict sales.  Apple has proposed an

28  elaborate method of estimating the appropriate number of sales.  The Court finds that there is no

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

1    need to estimate because the parties can present evidence of the actual number of sales.  Moreover,

2    courts have found it appropriate to delay orders for the submission of such evidence and hearings

3    thereon pending the resolution of appeals, to "avoid potentially unnecessary expenditures of time

4    and money in preparing such an accounting."  *Intron, Inc. v. Benghiat*, 2003 WL 22037710, at *16

5    (D. Minn. 2003); *see also Eolas Technologies, Inc. v. Microsoft Corp.*, 2004 WL 170334 at *8

6    (N.D. Ill. 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005) ("I grant the

7    motion and will require an accounting after any appeal in this case is terminated.").  In the instant

8    case, one of this Court's post-trial orders has already been appealed to the Federal Circuit, and the

9    parties have indicated that more appeals are anticipated.  Moreover, as discussed above, there are

10   complex issues with regard to supplemental damages for which there is no clear precedent.  Thus,

11   proceeding without the Federal Circuit's guidance may cause unnecessary expenditures of time and

12   resources.  Given the number and complexity of the issues in this case that remain unresolved, the

13   Court finds that it would be appropriate to delay the consideration of evidence of actual post-

14   verdict sales until after the completion of the appeals in this case.

15   **III.    PREJUDGMENT INTEREST**

16          The purpose of prejudgment interest is to "compensate[] the patent owner for the use of its

17   money between the date of injury and the date of judgment."  *Oiness v. Walgreen Co.*, 88 F.3d

18   1025, 1033 (Fed. Cir. 1996).  The Court has considerable discretion in awarding prejudgment

19   interest in patent cases.  *See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969

20   (Fed. Cir. 1986).  However, "prejudgment interest should ordinarily be awarded absent some

21   justification for withholding such an award."  *General Motors Corp. v. v. Devex Corp.*, 461 U.S.

22   648, 657 (1983).  Although *Devex* addressed a royalty award under § 284, the Federal Circuit has

23   also upheld awards of prejudgment interest on awards of infringer's profits under § 289.  *See*

24   *Catalina Lighting*, 295 F.3d at 1292.

25          Several of the products for which the jury made a damages award here involved not just

26   patent infringement, but also Lanham Act claims, and thus resulted in damages awards that,

27   pursuant to *Aero Products Intern., Inc. v. Intex Recreation Corp.*, 466 F.3d 1000 (Fed. Cir. 2006),

28   compensate Apple for both trade dress dilution and patent infringement.  The law is not clear on

6

United States District Court
For the Northern District of California

1   whether prejudgment interest may be awarded for Lanham Act claims.  The Ninth Circuit has

2   suggested that prejudgment interest is not available for Lanham Act claims not involving

3   counterfeiting.  *See Moscow Distillery Cristall v. Pepsico, Inc.*, 141 F.3d 1177 (9th Cir. 1998)

4   ("Prejudgment interest is available under the Lanham Act only for counterfeiting.").  On the other

5   hand, the Ninth Circuit has also upheld an award of prejudgment interest in a Lanham Act case that

6   did not involve counterfeiting.  *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 514

7   (9th Cir. 1989).

8       However, the Court sees no need to resolve this conflict here.  An award that is made to

9   compensate both for trade dress dilution and for patent infringement is, in part, an award for patent

10   infringement.  *See Aero Products*, 466 F.3d at 1019.  Because prejudgment interest is clearly

11   appropriate for this award based on patent infringement, the Court finds that there would be no

12   reason to forbid prejudgment interest simply because the award also compensates for a Lanham

13   Act violation, even if the Lanham Act did not separately authorize prejudgment interest.  Thus, the

14   Court finds that Apple is entitled to prejudgment interest.

15       The parties have proposed two different rates for calculating interest.  Apple has proposed

16   the prime rate.  Apple JMOL at 29.  Samsung suggests that the lower 52-week Treasury bill rate

17   would be more appropriate here.  Samsung Opp'n at 30.  In determining the appropriate rate, courts

18   have considered whether, during the period of infringement, the plaintiff "borrowed money at a

19   higher rate, what that rate was, or that there was a causal connection between any borrowing and

20   the loss of the use of the money awarded as a result of [the defendant's] infringement."  *Laitram*

21   *Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).  Such factors would make an award at a

22   higher rate more appropriate.  Here, Apple maintains substantial cash reserves and there is no

23   evidence that Apple borrowed any money because it was deprived of the damages award.  Thus

24   here, as in *Laitram*, the Court finds that the 52-week Treasury Bill Rate is sufficient.

25       The parties also disagree about the appropriateness of compounding: Apple is in favor of

26   annual compounding, and Samsung objects to any compounding.  The Federal Circuit has

27   explained that "the determination whether to award simple or compound interest similarly is a

28   matter largely within the discretion of the district court," and that both simple and compound

7

1   interest awards have been upheld. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 557

2   (Fed. Cir. 1984). Apple has submitted expert evidence that compounding is appropriate here, *see*

3   Robinson Decl. at ¶ 18 & Exh. 4, and Samsung has presented no evidence to the contrary. The

4   Court finds that compounding more closely approximates the actual borrowing costs Samsung

5   would have faced. Accordingly, when the appeals are resolved, and the final damages amount

6   settled, the Court will award prejudgment interest at the 52-week Treasury Bill Rate, compounded

7   annually.

8   **IV.     JURY'S DAMAGES AWARD**

9         **A.     Permissibility of examining nature of award**

10        Samsung argues that it is apparent, from the damages amount the jury returned, that some

11  of the awards rested on impermissible legal theories. Apple argues that the Court should not

12  consider how the jury arrived at its award, but should rather only look at the final number, and

13  consider whether that number could have been supported by the evidence in the record as a whole.

14        Apple is correct that courts are generally required to give great deference to jury awards,

15  and to uphold them where they are supportable by the evidence in the record. *See Los Angeles*

16  *Mem'l Coliseum Comm'n v. NFL,* 791 F.2d 1356 (9th Cir. 1985); *Yeti by Molly Ltd. v. Deckers*

17  *Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,

18  563 F.3d 1358 (Fed. Cir. 2009). These cases address the general question of whether a damages

19  award is supported by sufficient evidence in the record. However, the Ninth Circuit case most

20  analogous to the present case recognized an exception to this general principle of deference in

21  cases where it is readily apparent from the numbers that the jury applied an impermissible legal

22  theory in arriving at its award. *See In Re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir.

23  2006). In *First Alliance Mortgage*, the Ninth Circuit observed that the jury's damages number was

24  the precise numerical average "to the dollar" of the amounts proposed by the two competing

25  damages experts. *Id.* at 1002. One of the experts, however, presented a theory that the Court had

26  ruled legally impermissible. Though the Court gave a curative instruction, explicitly telling the

27  jury that it was not allowed to apply that theory, the amount of the award made plain that the jury

28  had applied the impermissible theory anyway. Because the award was clearly based in part on an

8

impermissible legal theory, the Ninth Circuit held that it had been error for the district court to "bend over backwards" to identify some conceivable theory on which the jury might properly have made the same award. The Federal Circuit has applied similar reasoning (though never in a case dispositive manner). *See Lucent Technologies v. Gateway*, 580 F.3d 1303 (Fed. Cir. 2009).

In this case, it is apparent that the jury awarded 40% of Apple's expert Terry Musika's calculation of Samsung's profits for a wide range of products, and in some cases, added the same expert's calculation for Apple's lost profits. Moreover, it is clear that for several products, the jury awarded exactly half of the reasonable royalty award proposed by Mr. Musika. As in *First Alliance Mortgage*, these numbers are "to the dollar;" it is thus quite apparent how the jury arrived at them. Indeed, Apple does not dispute this inference in its opposition, relying instead on the purported impermissibility of acknowledging what is apparent. The chart below details the formulas the jury apparently used. All percentages correspond to an exact and consistent percentage of the amount Mr. Musika testified was warranted for each category.

| Samsung Product | Jury Award | Formula |
|---|---|---|
| Captivate | $80,840,162 | 40% of Samsung's Profits |
| Continuum | $16,399,117 | 40% of Samsung's Profits |
| Droid Charge | $50,672,869 | 40% of Samsung's Profits |
| Epic 4G | $130,180,896 | 40% of Samsung's Profits |
| Exhibit 4G | $1,081,820 | 50% of Apple's Royalties |
| Fascinate | $143,539,179 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |
| Galaxy Ace | $0 | n/a (no award) |
| Galaxy Prevail | $57,867,383 | 40% of Samsung's Profits |
| Galaxy S (i9000) | $0 | n/a (no award) |
| Galaxy S 4G | $73,344,668 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

United States District Court
For the Northern District of California

| Galaxy S II AT&T | $40,494,356 | 40% of Samsung's Profits |
|---|---|---|
| Galaxy S II i9100 | $0 | n/a (no award) |
| Galaxy S II T-Mobile | $83,791,708 | 40% of Samsung's Profits |
| Galaxy S II Epic 4G Touch | $100,326,988 | 40% of Samsung's Profits |
| Galaxy S II Skyrocket | $32,273,558 | 40% of Samsung's Profits |
| Galaxy S II Showcase | $22,002,146 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |
| Galaxy Tab | $1,966,691 | 50% of Apple's Royalties |
| Galaxy Tab 10.1 WiFi | $833,076 | n/a (no calculation apparent) |
| Galaxy Tab 10.1 4G LTE | $0 | n/a (no award) |
| Gem | $4,075,585 | 40% of Samsung's Profits |
| Indulge | $16,011,184 | 40% of Samsung's Profits |
| Infuse 4G | $44,792,974 | 40% of Samsung's Profits |
| Intercept | $0 | n/a (no award) |
| Mesmerize | $53,123,612 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |
| Nexus S 4G | $1,828,297 | 50% of Apple's Royalties |
| Replenish | $3,350.256 | 50% of Apple's Royalties |
| Transform | $953,060 | 50% of Apple's Royalties |
| Vibrant | $89,673,957 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |

Under *First Alliance Mortgage*, this Court cannot ignore the import of these numbers, even if the evidence as a whole could have supported an award of a similar, or even higher, amount. Accordingly, the Court will consider which of these awards entailed the use of an impermissible legal theory, and what the appropriate response is.

### B. Appropriate Response to Excessive Award

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

1    When a Court detects an error in the jury's damages verdict, the Court has two choices: the

2    Court may order a new trial on damages, or the Court may reduce the award to a supportable

3    amount.  If the Court chooses the latter option, known as remittitur, the prevailing party then has

4    the option of demanding a new trial on damages or accepting the reduced award.  *See, e.g., Hynix*

5    *Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905-RMW (July 14, 2006), 2006 WL 1991760.

6         The Court generally may not award any amount lower than the maximum amount that

7    would have been supportable by the evidence.  *See D & S Redi-Mix v. Sierra Redi-Mix &*

8    *Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982) ("Although this circuit has not stated its

9    position, others consistently approve remitting the judgment to the maximum amount sustainable

10   by the proof.  This rule prevents the court's substitution of its judgment for that of the jury.  We

11   adopt this standard.") (internal citations omitted).  The Federal Circuit also uses this so-called

12   "maximum recovery rule."  *See  Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 519 (Fed.

13   Cir. 1995) ("When calculating an amount to remit, in order to encourage use of the efficient

14   remittitur option, we will follow the 'maximum recovery rule,' which requires that the

15   determination be based on the highest amount of damages that the jury could properly have

16   awarded based on the relevant evidence.").  The theory underlying this practice is that it carries out

17   the jury's intention to the extent permissible by law, and thus remains consistent with both parties'

18   Seventh Amendment right to a jury trial.  *See Dimick*, 293 U.S. at 486 ("Where the verdict is

19   excessive, the practice of substituting a remission of the excess for a new trial is not without

20   plausible support in the view that what remains is included in the verdict along with the unlawful

21   excess-in that sense that it has been found by the jury-and that the remittitur has the effect of

22   merely lopping off an excrescence.").

23        However, there is an exception to this rule, wherein the Court may remit an excess amount

24   where the excess is readily identifiable as such, even if the resulting award does not necessarily

25   correspond to the maximum amount supportable by the evidence.  *See, e.g., Cornell Univ. v.*

26   *Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 292 (N.D.N.Y. 2009) *amended*, 01-CV-1974, 2009 WL

27   1405208 (N.D.N.Y. May 15, 2009) (Rader, J., by designation) (multiplying jury's explicitly stated

28   royalty rate by lower royalty base Court found as a matter of law); *Joiner Sys., Inc. v. AVM Corp.,*

11

United States District Court
For the Northern District of California

1   *Inc.*, 517 F.2d 45, 49 (3d Cir. 1975) (jury calculated damages per square feet and number of square

2   feet; Court found a lower number of square feet supportable by evidence, and multiplied jury's

3   amount per square foot by the new, smaller number of square feet).  Though the jury in the present

4   case did not make an explicit finding as to what percentage of Apple's requested amount it deemed

5   appropriate for each product, it is apparent from the amount of the award, which is "to the dollar"

6   an exact and consistent percentage of Mr. Musika's amount.  *See First Alliance Mortgage*, 471

7   F.3d 977.  Thus, this multiplier is analogous to a jury's finding of an appropriate royalty rate.

8   Accordingly, where the Court can detect a specific amount that ought to be subtracted from the

9   award because of an identifiable error while otherwise preserving the jury's findings as to

10  damages, the Court may offer Apple the option of remittitur in that amount, or a new trial.

11         The Court will now consider each of Samsung's allegations of error in the jury's award, and

12  will determine which of these responses is appropriate for each situation.

13         **C.       Specific allegations of error**

14                 **1.       Design Patent / Trade dress apportionment**

15         First, Samsung argues that for Apple to be entitled to Samsung's profits for design patent

16  infringement, Apple was required to prove which portions of Samsung's profits were earned by the

17  patented design features.  Samsung reasons that Apple's expert presented a damages calculation for

18  all of Samsung's profits on the design-patent-infringing products, but that Apple never proved that

19  Samsung's alleged acts of design patent infringement were responsible for all of Samsung's profits.

20  Thus, Samsung argues, each award that includes an award of Samsung's profits for design patent

21  infringement must be set aside.

22         This argument is clearly foreclosed by Federal Circuit precedent.  As explained in *Nike Inc.*

23  *v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1442–43 (Fed. Cir.1998), Congress specifically drafted

24  the design patent remedy provisions to remove an apportionment requirement that the Supreme

25  Court had imposed.  Thus, there is simply no apportionment requirement for infringer's profits in

26  design patent infringement under § 289.

27         Next, Samsung argues that Apple presented no evidence that could have supported the

28  jury's award of Samsung's profits for trade dress dilution.  However, there are no products for

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

1    which the jury found trade dress dilution without design patent infringement.  Thus, the jury's

2    award for these products could be supported by design patent infringement alone, which, as

3    explained above, does not require apportionment.  Therefore, even if there were no evidence to

4    support a trade dress dilution award, the award as a whole would be supportable on the basis of

5    design patent infringement.  Because the award as a whole is supportable irrespective of

6    Samsung's trade dress apportionment theory, the Court need not consider whether there was

7    sufficient evidence in the record to independently justify the jury's award for these products on the

8    basis of trade dress dilution.  In sum, the Court finds that the jury's award is not excessive on the

9    basis of apportionment for design patent or trade dress damages.

10                              **2.       Entitlement to lost profits**

11          Samsung next argues that Apple has not established entitlement to lost profits, and that

12    accordingly, all of the awards that include a lost profits component must be set aside.  "To recover

13    lost profits, 'a patent owner must prove a causal relation between the infringement and its loss of

14    profits.'  In other words, the burden rests on the patentee to show a reasonable probability that 'but

15    for' the infringing activity, the patentee would have made the infringer's sales."  *Crystal*

16    *Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001)

17    (quoting *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218, 27 USPQ2d 1671,

18    1674 (Fed.Cir.1993)).  The Court's task here is to review whether there is sufficient evidence to

19    support a jury's lost profit award.  *See Crystal Semiconductor*, 246 F.3d at 1355-57 ("Between

20    Crystal's unadjusted market share, the testimony of TriTech's and OPTi's experts, and the

21    testimonies of Crystal's other fact witnesses, the record supplied sufficient evidence to support the

22    jury's 35% lost profit award"); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir.

23    2003) ("We agree with Ericsson that substantial evidence supports the jury's damages award for

24    lost profits due to lost sales.").

25          Here, Apple presented the testimony of Apple's damages expert, Terry Musika.  Mr.

26    Musika provided detailed evidence regarding how the market would likely have behaved absent

27    Samsung's infringement, including: (1) the market share of various smartphone manufacturers,

28    based on data collected and analyzed by independent research firm IDC (including Apple,

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

**United States District Court**
For the Northern District of California

1  Samsung, and other manufacturers, to whom he assigned the largest market share) (PX25A1.8; Tr.

2  2084:23-2085:9); (2) Apple's capacity to manufacture additional phones and tablets (PX25A1.14-

3  15; Tr. 2085:13-2086:3); and (3) consumer demand, based on both expert survey evidence and fact

4  witness testimony (Tr. 2076:3-2077:8). The Federal Circuit has noted that it "has affirmed lost

5  profit awards based on a wide variety of reconstruction theories where the patentee has presented

6  reliable economic evidence of 'but for' causation." *Crystal Semiconductor*, 246 F.3d at 1355. Mr.

7  Musika's opinion reconstructs the market based on market share, capacity, and demand, thus

8  demonstrating how many additional sales Apple would likely have made, but for Samsung's

9  infringement. This constitutes exactly the type of economic evidence of causation that the Federal

10  Circuit requires in sustaining an award of lost profits. Accordingly, the Court finds that the record

11  supported a jury award of lost profits. The Court thus declines to set aside the jury's damages

12  awards that include Apple's lost profits on the grounds that Apple has not proven entitlement to

13  lost profits.

14  ### 3. The Galaxy Prevail: Award of Samsung's Profits

15  For the Galaxy Prevail, the jury awarded $57,867,383, which is 40% of Apple's calculation

16  of Samsung's profits. The Galaxy Prevail, however, was found to infringe only utility patents. As

17  the Court instructed the jury, infringer's profits are not a legally permissible remedy for utility

18  patent infringement. *See* Final Jury Instruction Nos. 36 (utility patent lost profits); 40 (utility

19  patent reasonable royalty); 54 (design patent defendant's profits); 55 (design patent lost profits); 56

20  (design patent reasonable royalty). Accordingly, as in *First Alliance Mortgage*, it is apparent that

21  the jury failed to follow the Court's instructions on the law, and awarded damages based on a

22  legally impermissible theory. This award cannot stand.

23  The jury's award was apparently based on Samsung's profits, which is an impermissible

24  type of compensation for utility patent infringement. Thus, rather than including some identifiable

25  portion of excess, such as particular sales for which there should have been no damages, the entire

26  award was tainted. Further, the jury did not award the full amount Apple requested for Samsung's

27  lost profits, but rather awarded only 40% of Apple's requested amount of $142,893,684. Thus, it

28  does not appear that awarding the full amount that Apple requested for either of the two

14

1    permissible forms of compensation for utility patents (Apple's lost profits, for which Apple

2    requested $8,573,370, or a reasonable royalty, for which Apple provided no calculation), which is

3    the usual method for calculating a remittitur, could reasonably be thought to represent the jury's

4    award, stripped only of the impermissible excess.  *Cf. Dimick*, 293 U.S. at 486.  Accordingly, the

5    Court cannot reasonably and fairly calculate an appropriate remittitur.

6           Nor can the Court, having identified the impermissible legal theory on which the jury made

7    its award, turn a blind eye or "bend over backwards" to find a possible permissible justification for

8    the amount awarded.  *See First Alliance Mortgage*, 471 F.3d at 977.  Accordingly, the Court

9    hereby ORDERS a new trial on damages for the Galaxy Prevail.

                                    **4.    Notice dates**

11          Samsung next contends that a new trial is warranted, or, in the alternative, that the Court

12   should remit the jury's award, because the jury based its awards on Mr. Musika's calculations that

13   used a notice date that was not supported by any evidence at trial.  This argument is essentially two

14   separate motions: (1) a motion for judgment as a matter of law that the evidence does not support

15   any notice dates earlier than the filing of the relevant complaints for any patent except the '381

16   Patent; and (2) a motion for new trial on damages or remittitur because the jury made its award

17   based on incorrect early notice dates.  The Court will address the question of appropriate notice

18   dates first, and will then consider what effect this may have on the damages award.

19          Under 35 U.S.C. § 287(a), there can be no damages award where a defendant did not have

20   actual or constructive notice of the patent or registered trade dress at issue.  Thus, it is improper to

21   award damages for sales made before the defendant had notice of the patent, and an award that

22   includes damages for sales made before notice of any of the intellectual property ("IP") infringed is

23   excessive as a matter of law.  Moreover, different types of IP allow for different types of damages

24   awards.  Specifically, damages for utility patent infringement may take the form of lost profits or a

25   reasonable royalty, *see* 35 U.S.C. § 284; damages for trade dress dilution may take the form of lost

26   profits and/or infringer's profits, *see* 15 U.S.C. § 1125; and damages for design patent infringement

27   may include lost profits, a reasonable royalty, or infringer's profits, *see* 35 U.S.C. § 289.

28   Accordingly, it is also erroneous to award infringer's profits for a time period where the defendant

15

1    had notice only of utility patents, because infringer's profits are not an authorized form of damages

2    for utility patent infringement.

3         The parties dispute whether Apple had given Samsung notice of each of the patents prior to

4    the filing of the complaint and the amended complaint, which the parties agree gave Samsung

5    notice of all of the asserted IP.  Regarding the '381 Patent, Apple has presented evidence that

6    Apple specifically put Samsung on notice of that patent in a meeting between Apple and Samsung

7    on August 4, 2010.  *See* PX52.12-PX52.16 (Apple's presentation listing specific patents, including

8    the '381 Patent).  Samsung argues that there is no evidence that Apple gave Samsung actual notice

9    of alleged infringement of any specific patents other than the '381 Patent prior to the filing of the

10   complaint on April 15, 2011, which gave notice of three Apple patents and Apple's registered trade

11   dress, or the amended complaint on June 16, 2011, which gave notice of all the remaining Apple

12   patents.  Apple argues that the August 4, 2010 meeting put Samsung on sufficient notice of all of

13   the asserted IP, even though the specific list of patents included only the '381 Patent.

14        Section 287 requires not only notice that a product allegedly infringes some unspecified

15   patents, but notice of what specific patent the product is accused of infringing.  This notice can be

16   accomplished by marking the patented product with the patent number ("constructive notice").  *See*

17   35 U.S.C. § 287(a); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008); *Funai*

18   *Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).  Alternatively, a

19   notice can be delivered directly to the accused infringer ("actual notice").  *Funai*, 616 F.3d at 1373.

20   Like constructive notice, actual notice appears to require that the accused infringer be informed of

21   the specific patents it is accused of infringing.  *See, e.g.*, *Minks*, 436 F.3d at 1366-67 (conducting

22   notice analysis for a specific patent); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346-47 (Fed. Cir.

23   2001) (same).

24        Apple contends that notice need not identify the specific patent at issue.  However, Apple

25   cites only one case finding actual notice without actual disclosure of a specific patent number, a

26   1992 case from the District of Massachusetts that does not itself cite any case holding that actual

27   notice is possible without an actual patent number.  *See Ceeco Machinery Manufacturing, Ltd. v*

28   *Intercole, Inc.*, 817 F.Supp. 979 (D. Mass. 1992).

16

As an initial matter, *Ceeco* was an unusual case.  The *Ceeco* Court explained that:

To the extent that [the plaintiff's] warning was less explicit than would typically be required, [the defendant] appears to be largely responsible . . .  By [defendant's] own admission, [defendant] continued to reassure [plaintiff] that it had not purchased [an accused machine] well after it in fact had.  The provision for giving actual notice would be rendered meaningless if defendants could evade such notice by deliberately concealing their infringement.

817 F. Supp. at 987.  In other words, the plaintiff did not give specific notice because the defendant continued to lie to the plaintiff to deliberately conceal defendant's infringement.  There are no allegations of such deception here.

Furthermore, the *Ceeco* Court reasoned that if a defendant knows that its product is accused of infringing some unspecified patent that also covers a known competitor product, that defendant has sufficient notice of the patent, even without specific knowledge of the actual patent at issue.  This reasoning is unpersuasive, and has never been adopted by the Federal Circuit.  This kind of non-specific notice is insufficient because a patent may have a broad or narrow scope, and a product may be covered by a multitude of patents, and also include many unpatented features.  Mere notice that some unknown patent allegedly covers some aspect of both the accused product and the competitor product does not provide meaningful notice as to what patented territory the accused device is alleged to infringe upon.  The wide variety of patents covering the complex products in this very case illustrates this problem well.  In sum, the Court finds that where a plaintiff relies on actual, rather than constructive notice, the notice must include the specific patents at issue.

Apple argues that Samsung received actual notice for all of its asserted acts of infringement at the August 4, 2010 meeting between the parties.  However, Apple cites no evidence whatsoever that any patent-in-suit other than the '381 Patent was specifically identified during the meeting.  Instead, Apple points to general comparisons drawn at that meeting between the industrial design and user interfaces of the iPhone 3GS and the Galaxy S, as well as references to general "user interface" patents.  *See* PX52 (Apple's presentation).  A side-by-side comparison of the iPhone 3GS and the Galaxy S that implies that the iPhone 3GS embodies some unspecified design and utility patents that may be infringed by the Galaxy S, however, does not provide notice of the

17

specific patents alleged to be infringed, as required to satisfy § 287(a)'s notice requirement. Accordingly, the Court finds that the August 4, 2010 date is not supported by evidence in the record for any patent other than the '381 Patent.

Apple does not suggest that any notice occurred between the August 4, 2010 meeting and the filing of the original complaint on April 15, 2011. The original complaint gave Samsung notice of the '915 and D'677 Patents. Thus, the correct notice date for the '915 and D'677 Patents is April 15, 2011.

Apple also does not suggest any notice occurred on any date between the April 15, 2011 filing of the original complaint, and the filing of the amended complaint on June 16, 2011. The amended complaint gave Samsung notice of the '163, D'305, D'889, and D'087 Patents. Thus, the correct notice date for the '163, D'305, D'889, and D'087 Patents is June 16, 2011.

In sum, Samsung is entitled to judgment as a matter of law that the earliest notice dates supported by the evidence are: August 4, 2010 for the '381 patent; April 15, 2011 for the '915 and D'677 Patents; and June 16, 2011 for the'163, D'305, D'889, and D'087 Patents.

The damages numbers Mr. Musika presented to the jury were based on the August 4, 2010 notice date for all patents. See PX25A at 4, 5. Thus, the jury's awards for patent infringement, which are based on Mr. Musika's numbers using the early notice dates, may have contained some amount of excess compensation covering the period before Samsung had notice of the relevant IP, depending on the combination of IP infringed. The following chart indicates the correct notice dates, available remedies, and infringing products for each form of IP:

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

| IP | Notice Date | Available Remedies[2] | Products Infringing |
|---|---|---|---|
| '381 Patent | August 4, 2010 | Reasonable Royalty or Lost Profits | Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S i9000, Galaxy S 4G, Galaxy S II AT&T, Galaxy S II i9100, Galaxy Tab, Galaxy Tab 10.1 WiFi, Gem, Indulge, Infuse 4G, Mesmerize, Nexus S 4G, Replenish, Transform, Vibrant |
| '915 Patent | April 15, 2011 (original complaint) | Reasonable Royalty or Lost Profits | Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Prevail, Galaxy S i9000, Galaxy S 4G, Galaxy S II AT&T, Galaxy S |

[2] A reasonable royalty represents the minimum amount of permissible damages for utility and design patent infringement. *See* 35 U.S.C. § 284. Plaintiffs are entitled to lost profits instead of a reasonable royalty only if they can prove that but for the infringement, they would have earned those profits. *See Crystal Semiconductor*, 246 F.3d at 1354 ("[A] patentee may obtain lost profit damages for that portion of the infringer's sales for which the patentee can demonstrate 'but for' causation and reasonable royalties for any remaining infringing."). In addition, for design patent infringement, 35 U.S.C. § 289 also provides "an alternate remedy" of infringer's profits, s*ee Nike*, 138 F.3d at 1439, which a plaintiff may seek in lieu of lost profits or a reasonable royalty.

Trade dress damages may include infringer's profits *and* actual damages, which often take the form of lost profits. 15 U.S.C. § 1117.

In addition, the Federal Circuit has explained that a plaintiff may be compensated only once for each sale, even if more than one form of infringement has occurred. *See Catalina Lighting,* , 295 F.3d at 1277 (utility patents and design patents infringed); *Aero Products*, 466 F.3d 1000 (utility patent and trademark infringed). However, as Mr. Musika explained to the jury, Tr. 2092:14-25, there are many sales of each product, and it is permissible to award different forms of compensation for different sales. Thus, an award may be comprised of, for instance, part infringer's profits and part lost profits, as long as there is only one award for each infringing product sold.

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

| | | | II i9100, Galaxy S II T-Mobile, Galaxy Tab, Galaxy Tab 10.1 WiFi, Gem, Indulge, Infuse 4G, Mesmerize, Nexus S 4G, Transform, Vibrant |
|---|---|---|---|
| D'677 Patent | April 15, 2011 (original complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | Fascinate, Galaxy S i9000, Galaxy S 4G, Galaxy S II AT&T, Galaxy S II i9100, Galaxy S II T-Mobile, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S Showcase i500, Infuse 4G, Mesmerize, Vibrant |
| Registered Trade Dress | April 15, 2011 (original complaint) | Infringer's Profits and Lost Profits (actual damages) | Fascinate, Galaxy S 4G, Galaxy S II AT&T, Galaxy S Showcase i500, Mesmerize, Vibrant |
| D'889 Patent | June 16, 2011 (amended complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | None |
| D'087 Patent | June 16, 2011 (amended complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | Galaxy S i9000, Galaxy S 4G, Vibrant |
| D'305 Patent | June 16, 2011 (amended complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy S i9000, Galaxy S 4G, Galaxy S Showcase i500, Gem, Indulge, Infuse 4G, Mesmerize, Vibrant |
| Unregistered trade dress | N/A | Infringer's Profits and Lost Profits (actual damages) | Fascinate, Galaxy S i9000, Galaxy S Showcase i500, Mesmerize, Vibrant |

Apple has provided to the Court and to the jury the numbers necessary to calculate the

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

infringer's profits and reasonable royalty awards based on Mr. Musika's damages numbers, but with later notice dates. Thus, the Court can, for some products, calculate how much of the jury's award compensated for the sales before Samsung had notice of the relevant IP.  Indeed, where the award simply compensated for too many sales, the situation is analogous to cases in which the jury used a royalty base that was not supported by the evidence, and the Court found it permissible to multiply the royalty rate by the correct royalty base.  *See Cornell Univ.*, 609 F. Supp. 2d at 292. For the products where this type of error occurred, the Court can calculate the appropriate remittitur by multiplying the corrected maximum damages amount, adjusted per Mr. Musika's instructions (*see* Tr. at 2073:21-2074:19; 2163:24-2164:7) to remove the sales before Samsung had notice, by the multiplier used by the jury.

However, for other products, the jury awarded an impermissible *form* of damages for some period of time, because Samsung had notice only of utility patents for some period, but an award of infringer's profits was made covering the entire period from August 4, 2010 to June 15, 2012.  For these products, the Court cannot remedy the problem by simply subtracting the extra sales.

The products fall into four distinct categories, depending on the combination of IP infringed and award made.  The Court will discuss each in turn.

### a.    Unregistered Trade Dress Dilution Does Not Require Notice, Thus There Is No Excess Damages Award

Damages for dilution of unregistered trade dress do not require notice for an award of damages.  *See PAF S.r.l. v. Lisa Lighting Co., Ltd.*, 712 F. Supp. 394, 401 (S.D.N.Y. 1989) ("Moreover, the holder of a legal trademark, in this case unregistered trade dress, 'is under no obligation to give advance notice of its rights to an infringer before seeking damages or injunctive relief for infringement.'"); *see also* 4 Callmann on Unfair Comp., Tr. & Mono. § 23:79 (4th Ed.) ("[S]tatutory notice is irrelevant to claims for infringement of an unregistered mark under § 43(a) of the Lanham Act or under state law.").  Moreover, infringer's profits are a permissible remedy for dilution of registered and unregistered trade dresses.  *See* 15 U.S.C. § 1117(a).  Thus, for any product for which the jury found dilution of unregistered trade dress, there can be no excess on the basis of notice dates, because an award of Samsung's profits, the highest amount sought by Apple,

21

United States District Court
For the Northern District of California

would be permissible for the entire period requested by Apple, from August 4, 2010 through the beginning of trial, based on trade dress dilution alone.  Because the award is per sale, rather than per type of IP, *see Aero Products,* 466 F.3d at 1000, as long as the award of infringer's profits is authorized for any given sale, there is no need for the award to be separately authorized for each type of IP.  There is thus no excess due to notice dates for the following products, all of which were found to dilute Apple's unregistered trade dress: Fascinate, Galaxy S 4G, Galaxy S II Showcase, Mesmerize, and Vibrant.  Accordingly, the jury's award of $381,683,562 for these 5 products stands.

### b.  Impermissible Infringer's Profits Award

Next, there are 8 phones for which the jury awarded 40% of Samsung's profits for the entire period, but for which, during some of the damages period, infringer's profits was not an authorized remedy.  These phones are: Gem, Indulge, Infuse 4G, Galaxy SII AT&T, Captivate, Continuum, Droid Charge, and Epic 4G.  All eight of these phones were found to infringe the '381 Patent, for which the correct notice date is August 4, 2010, and one or more design patents, for which the correct notice dates are later.  However, an award based on infringer's profits was made for the entire time, without accounting for the fact that from August 4, 2010 until the filing of the relevant complaint, only a utility patent was infringed, and thus only an award of a reasonable royalty or Apple's lost profits was legally permissible.

The law requires the jury to award some amount of damages for each infringing sale.  *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court *shall* award the claimant damages adequate to compensate for the infringement, but *in no event* less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.") (emphasis added).  Thus, some of the jury's award of Samsung's profits had to compensate for sales between August 4, 2010 and April 15, 2011.  However, as explained above, infringer's profits are not a permissible remedy for utility patent infringement.  Thus, for these 8 phones, there is clearly a component of the award that is based on an impermissible legal theory, exactly as there was in *First Alliance Mortgage.*  The awards for these 8 phones, accordingly, cannot stand.

For all of these products, Apple alleged infringement of a design patent in the April 15,

1    2011 original complaint or the June 16, 2011 amended complaint.  An award of infringer's profits

2    is thus authorized as of the time Samsung had notice of the relevant design patent.  It is only the

3    award from August 4, 2010 to the time of the filing of the relevant complaint that is excessive.

4    However, the Court cannot simply trim off the period of the award before notice of the design

5    patents, because the jury found that these 8 products infringed the '381 Patent, for which there *was*

6    notice as of August 4, 2010.  If the Court were to simply subtract all of the award made for the

7    period before notice of the design patents, Apple would not be compensated for the sales made

8    when Samsung had notice of the '381 Patent – a scenario that would run afoul of § 284's

9    requirement that there be compensation for each infringing sale.  Thus, to determine an appropriate

10   remittitur, the Court would first have to subtract the award of Samsung's profits for the period

11   made before notice of any design patent, and would then have to add an award to compensate for

12   infringement of the '381 Patent for the period between August 4, 2010 and the appropriate notice

13   date for each product.

14          However, as with the Galaxy Prevail, the Court cannot determine an appropriate award to

15   replace the jury's impermissible award of Samsung's profits for this time period.  Using the

16   maximum amount supported by the evidence for one of the permissible forms of compensation (i.e.

17   a reasonable royalty or Apple's lost profits) would be inconsistent with the jury's awards of 40% of

18   Mr. Musika's calculation of Samsung's profits for these products, or for products for which a

19   reasonable royalty was awarded, 50% of Mr. Musika's calculation of a reasonable royalty.  Indeed,

20   using the *maximum* amount the evidence could have supported for Apple's lost profits or a

21   reasonable royalty might even result in an award *greater* than that made by the jury using the

22   impermissible method – an outcome clearly inconsistent with the Seventh Amendment.

23          Moreover, Mr. Musika did not testify as to how the jury (or the Court) could calculate

24   Apple's lost profits for a shorter time period.  Although he did offer testimony as to how to

25   calculate a reasonable royalty for a shorter time period, *see* Tr. 2074:4-19, the sales data the parties

26   provided is broken down only by quarter, and is not sufficiently specific to allow the Court to

27   calculate the correct amount for sales in quarters where notice occurred in the middle of the

28   quarter.  Thus, the Court cannot calculate the appropriate amount of Apple's lost profits or a

                                                     23

reasonable royalty for the '381 Patent for the relevant time period before notice of the other patents. Accordingly, there is no readily identifiable amount that the Court could remit to remedy this problem.

Nor would it be appropriate for the Court to leave the award intact despite the apparent error, simply because there exists some theory on which the jury might have made such an award. Such a ruling would entail precisely the type of "bending over backward" forbidden by *First Alliance Mortgage*. As the Court can neither calculate an appropriate remittitur nor leave the award intact, the only remaining possibility is to conduct a new trial on damages for these 8 products.

Furthermore, it was Apple's strategic decision to submit an expert report using an aggressive notice date for all of the patents. The need for a new trial could have been avoided had Apple chosen a more circumspect strategy or provided more evidence to allow the jury or the Court to determine the appropriate award for a shorter notice period. Accordingly, the Court ORDERS that a new trial be conducted on the amount of damages for the Gem, Indulge, Infuse 4G, Galaxy SII AT&T, Captivate, Continuum, Droid Charge, and Epic 4G, and strikes $383,467,143 from the jury's award.

### c. Infringer's Profits Permissible But Damages Period Too Long

For an additional 3 phones, the jury used Mr. Musika's calculations that assumed the August 4, 2010 notice dates for all patents, but none of these phones infringed the '381 Patent, the only Patent for which the August 4, 2010 date was supported. All three of these phones did, however, infringe the D'677 Patent, meaning that Samsung's profits *are* a permissible remedy beginning with the filing of the original complaint. In other words, these phones are similar to the 8 phones discussed above, but they were not found to infringe the '381 Patent, so there is no need to determine an appropriate award for the gap between August 4, 2010 and the filing of the relevant complaint, and the Court can simply subtract the damages awarded for the extra days without the need to substitute an alternative award. These 3 phones are: Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy S II T-Mobile.

24

Samsung had notice of the D'677 Patent by April 15, 2011 (the date of filing of Apple's original complaint, which included the D'677 Patent). Thus, to remedy any overcompensation, the Court would need to subtract any amount awarded for the period between August 4, 2010 and April 15, 2011. However, the numbers underlying Mr. Musika's calculations show that these products were not sold before April 15, 2011. Specifically, JX1500, the table which the parties agreed showed sales and revenue per quarter for each accused phone, shows that the Galaxy S II Epic 4G Touch was first sold in the third quarter of 2011, and the Galaxy S II Skyrocket and Galaxy S II T-Mobile were both first sold in the fourth quarter of 2011 – both *after* the original complaint was filed, giving Samsung notice of the D'677 Patent. Thus, for products for which there were no sales prior to June 15, 2011, there were no damages awarded for the period prior to that date. Consequently, none of the sales that went into Mr. Musika's calculation of Samsung's profits for these three phones was made before Samsung had notice. Accordingly, there is no excess for these three phones, and the jury's award stands. Samsung's motion for a new trial on damages or remittitur for Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy S II T-Mobile is DENIED. The jury's award of $216,392,254 for these products stands.

### d. Reasonable Royalty Awarded But Damages Period Too Long

Finally, for five phones, (Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform), the jury awarded amounts that represent exactly half of Mr. Musika's reasonable royalty calculations. However, these numbers were, as described above, based on incorrect notice dates for several of the patents.

For these phones, the Court could, in theory, adjust Mr. Musika's reasonable royalty amounts to account for the proper notice dates for each patent, and then calculate half of that number for each of the five phones to arrive at an amount consistent with the jury's award, but adjusted for correct notice dates. Mr. Musika provided the per-unit royalty rate for each patent, *see* PX25A1 at 16, and the parties jointly provided the number of units of each product sold per quarter. *See* JX1500.

However, the two later notice dates that apply for the design patents (April 15, 2011 and June 16, 2011) both fall somewhere in the middle of the second quarter of 2011, and thus do not

United States District Court
For the Northern District of California

correspond with the dates on which quarters begin or end.  The parties have presented no evidence of sales in more specific time frames, so as to permit an accurate apportionment of Samsung's sales throughout the second quarter of 2011.  As the sales of these products may not have been evenly distributed throughout the quarter, the evidence is not sufficient to support even a pro-rated award for the sales in the second quarter of 2011, because such an award might include sales for which Samsung had no notice.  Moreover, calculating a reasonable royalty beginning with the third quarter of 2011 would leave Apple uncompensated for some number of sales occurring during the second quarter of that year.  Thus, the Court can neither calculate a pro-rated award for the second quarter of 2011 nor begin the award with the third quarter of 2011.

Because the award is excessive but the Court cannot accurately calculate the correct number of sales on which to base a remittitur, the Court ORDERS a new trial for the Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform, and strikes $9,180,124 from the award.

## CONCLUSION

Apple's motion for an increase in the jury's damages award is DENIED.  The Court declines to determine the amount of prejudgment interest or supplemental damages until after the appeals in this case are resolved.

Because the Court has identified an impermissible legal theory on which the jury based its award, and cannot reasonably calculate the amount of excess while effectuating the intent of the jury, the Court hereby ORDERS a new trial on damages for the following products: Galaxy Prevail, Gem, Indulge, Infuse 4G, Galaxy SII AT&T, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform.  This amounts to $450,514,650 being stricken from the jury's award.  The parties are encouraged to seek appellate review of this Order before any new trial.

The jury's award stands for the Galaxy Ace, Galaxy S (i9000), Galaxy S II i9100, Galaxy Tab 10.1 WiFi, Galaxy Tab 10.1 4G LTE, Intercept, Fascinate, Galaxy S 4G, Galaxy S II Showcase, Mesmerize, Vibrant, Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy S II T-Mobile.  The total award for these 14 products is $598,908,892.

**IT IS SO ORDERED.**

United States District Court
For the Northern District of California

Dated: March 1, 2013, 2013

_____

LUCY H. KOH
United States District Judge

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES