QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S ADMINISTRATIVE MOTION SEEKING APRIL 3 CASE MANAGEMENT CONFERENCE** |

**PRELIMINARY STATEMENT**

Apple's Motion pays lip service to the Court's express request that the parties seek appellate guidance regarding its Damages Order before any new trial, but then argues that such a course of action is not possible. It is. Apple ignores precedent holding that it is proper to enter a Rule 54(b) judgment in a patent case where there is a final determination as to some accused products and not others. As discussed below and in Samsung's Motion for Entry of Partial Judgment Pursuant to Rule 54(b) and for Stay Pending Appeal ("Motion for Partial Judgment"), Dkt. 2281, all of the requisites for entering a Rule 54(b) judgment are met here. Contrary to Apple's claim that doing so would cause undue delay, a Rule 54(b) judgment will help ensure that there is, at most, one new trial in this case, and will ensure that the Federal Circuit can consider liability and remedies together in a consolidated appeal that will give guidance for any new trial.

Apple asserts that preparation for the new trial will be simple and can take place in short order. That is incorrect. The contours of the new trial still need to be determined and will involve the resolution of complex issues, including critical Constitutional issues. For example, under the Seventh Amendment, Samsung has a right to a new trial on liability and damages for products that will be the subject of the new trial under the Seventh Amendment. As a result, the trial will not be nearly so limited as Apple assumes. In addition, Apple's expert witness Mr. Musika has died. Assuming that Apple intends to introduce a new expert witness, new expert reports, depositions and related motion practice will have to precede any new trial. In contrast, entering a Rule 54(b) judgment first and allowing any appeal(s) to run their course is the more efficient course of action.

**ARGUMENT**

**I.  ENTRY OF A RULE 54(B) PARTIAL JUDGMENT IS APPROPRIATE HERE**

Apple's request that the Court proceed to schedule a new trial is based on the flawed premise that appellate review is not possible until the new trial takes place. As explained in detail in Samsung's Motion for Partial Judgment, the Court can enter partial final judgment now because certain claims have been finally resolved. The Court has resolved all issues—as to both liability *and* damages—relating to the jury's verdict on Apple's claims against 14 accused products and on Samsung's counterclaims (Dkts. 2219, 2220, 2221, 2271).

Apple opposes Samsung's request for entry of a Rule 54(b) judgment by arguing that "Apple's claims for relief relating to the '381, '915, and '163 utility patents and the D'677 and D'305 design patents have not been 'finally resolved,' because they are all subject to the new trial on damages as to certain products." Dkt. 2283, at 3.  But that is incorrect, for a "claim" can be brought against a specific product or set of products, leading to a final judgment as to that product. In *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,* 2010 WL 4115427 (N.D. Ill. 2010), *aff'd* 683 F.3d 1356 (Fed. Cir. 2012), for example, the district court entered partial final judgment under Rule 54(b) as to a subset of the products accused of infringing a patent.  In ruling that a Rule 54(b) judgment was final as to those products, the court relied on the fact that the parties had "treated" the infringement claims as to the two sets of products as "separate claims." *Id.* at *6. *See also Pelligrini v. Analog Devices, Inc.,* 375 F.3d 1113, 1115 n.3, 1118 (Fed. Cir. 2004) (affirming grant of partial summary judgment of noninfringement under Rule 54(b) as to some accused products that contained a chip manufactured outside the United States while other products remained unadjudicated:  "The district court granted partial summary judgment under Rule 54(b) only on the question whether Analog's accused ADMC chips manufactured outside the United States and never shipped to or from the United States infringed the '069 patent as a matter of law."); *Gottesman v. General Motors Corp.*, 401 F.2d 510, 511-12 (2d Cir. 1968) (per curiam) (denying motion to dismiss appeal from order entering final judgment under Rule 54(b) on claims as to one class of products in a derivative action alleging same causes of action with respect to several classes of products: "We believe that there are separate claims here.  Each product involves separate markets and commercial considerations.  Different exhibits, proof and witnesses will be necessary; different sets of operative facts will determine the result.  Therefore, Rule 54(b) is applicable; the judgment is final and appealable.").  The same is true here where both parties tried the case on a product-by-product basis, and the verdict form on which the jury returned its verdict was expressly particularized on a product-by-product basis (*see* Dkt. 1931).

The cases Apple cites to oppose a Rule 54(b) judgment are inapposite.  *W.L. Gore & Assocs. v. Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 864-65 (Fed. Cir. 1992), does not even discuss or address whether a "claim" can be made against particular accused products,

but simply held that a patent infringement claim was final for purposes of a Rule 54(b) judgment even though an affirmative defense of patent misuse had not been adjudicated. In *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 153 Fed. App'x 730, 731 (Fed. Cir. 2005) (unpublished), the Federal Circuit held that "no claim for relief has been fully decided" as required under Rule 54(b) where the district court had granted partial summary judgment on the issues of "infringement of Aspex's patent and . . . invalidity of the patent," but "damages, willfulness, and injunctive relief" remained pending. Here, in contrast, the Court has resolved all issues of both liability and remedy with respect to 14 Samsung products. Similarly, in *Monument Mgmt. Ltd. P'ship I v. Pearl*, 952 F.2d 883 (5th Cir. 1992) (per curiam), the Fifth Circuit dismissed an appeal of a Rule 54(b) judgment on an inverse condemnation claim where the district court had adjudicated only the plaintiff's request for damages due to the decreased value of its *business*, not the plaintiff's request for damages due to the decreased value of its *leasehold*. *Id.* at 884-85. The Fifth Circuit held that entry of the Rule 54(b) judgment was improper because, while the "summary judgment disposed of most of the elements of damages arising from [the] inverse condemnation claim . . . it did not dispose of that claim in its entirety." *Id.* at 885. Here, in contrast, damages (as well as liability) for 14 products have been fully resolved and Apple's claims as those products are therefore final.

Apple also claims that the fact that prejudgment interest and post-verdict damages have not been calculated means the judgment is not final. This too is incorrect. Apple cites to *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956), for the general proposition that finality is required before entry of a Rule 54(b) judgment. Dkt. 2283, at 3. But *Mackey* contains no discussion of whether prejudgment interest or post-verdict damages are required for finality. And, as this Court correctly recognized, case law supports the proposition that a court can enter a final judgment even if it has not quantified the amount of post-verdict supplemental damages. *See* Dkt. No. 2271, at 6 (citing *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *16 (D. Minn. Aug. 29, 2003)); *Eolas Technologies, Inc. v. Microsoft Corp.*, 2004 WL 170334, at *8 (N.D. Ill. Jan 15, 2004), *vacated in part on other grounds*, 339 F.3d 1325 (Fed. Cir. 2005). For this reason, the Court recognized that "proceeding without the Federal Circuit's guidance may cause unnecessary expenditures of time and resources" and that it would calculate supplemental damages and

1  prejudgment interest when appeals are resolved.  Dkt. No. 2271, at 6, 26.  Nonetheless, should the
2  Court choose, the calculation of prejudgment interest using the rate set forth in the Court's Order
3  Re: Damages is a calculation that the Court can conduct before entering a partial judgment; it is no
4  reason to avoid entry of judgment.  Dkt. 2271, at 6-8.

5  II.   **ENTERING PARTIAL JUDGMENT PURSUANT TO RULE 54(B) WOULD BE**
6        **EFFICIENT AND FAIR**

7  Apple's Motion raises no serious challenge to the obvious value of securing Federal
8  Circuit review of key issues that would directly affect a new trial.  Samsung's Motion for Partial
9  Judgment contains a detailed recitation of many issues that will be resolved on appeal that will
10 have an impact on the new trial.  A few examples are instructive.  The nine products as to which
11 judgment is final and the Court let a damages award stand implicate a total of six Apple patents
12 (D'677, D'087, D'305, '381, '915, and '163).  Five of these six patents (all but the '087) underlie
13 Apple's claims against one or more of the products at issue in the new trial that the Court has
14 ordered.  On appeal from partial final judgment under Rule 54(b), Samsung intends to challenge
15 the validity of those patents.  Should the Federal Circuit agree that any of these patents is invalid,
16 then no award of damages would be permissible based on those patents, and the scope of any new
17 damages trial, if stayed to await that outcome, would be narrower and any such new trial as to
18 infringement of those patents might become moot.  Likewise, should the Federal Circuit agree
19 with Samsung's challenges to certain of the Court's damages rulings, including its rejection of any
20 requirement of a causal link between the infringement of the design and the profits disgorged, that
21 would change the instructions to be given as to the eight products ordered for new trial in which
22 either or both the D'677 and/or D'305 patents are implicated (Gem, Indulge, Infuse 4G, Galaxy S
23 II AT&T, Captivate, Continuum, Droid Charge, Epic 4G).

24 Apple claims (not through a percipient witness, but instead through an improper attorney
25 declaration) that Samsung introduced an allegedly infringing new product after the trial.  That
26 allegation is false.  Apple includes a picture of what it misnames as the "New Galaxy SII (Net 10
27 and Straight Talk)" as purported evidence of its claim, Dkt. 2283, at 5, but, as demonstrated by the
28 attached declaration of Corey Kerstetter, the phones in question are not new at all, but are versions

of the accused Galaxy S II (AT&T) that are re-branded by third party TracFone, which sells them under the names Net 10 and Straight Talk. Kerstetter Decl., ¶ 4. Contrary to Apple's claim, Samsung had begun shipping these phones to TracFone before the jury verdict in this case. *Id.*, ¶ 5. Moreover, Samsung ceased selling black versions of the TracFone Galaxy S II on October 19, 2012, long before the December 6, 2013 permanent injunction hearing. *Id.*

### III. APPLE'S PROPOSAL REGARDING THE NEW TRIAL IS UNREASONABLE

Even apart from the threat of a wasted trial posed by Apple's request to proceed with a new trial before any appeals, Apple oversimplifies what needs to take place before any new trial, including by ignoring complex issues that this Court would need to resolve before any such trial.

#### A. The Seventh Amendment Requires That Certain Infringement Issues Be Tried To The Jury Deciding Damages

Before a new trial can proceed, the parties will first need to submit briefing regarding the scope of any new trial. In its portion of the draft joint statement previously submitted to Samsung, Apple itself acknowledged that "[t]he liability and damages issues for all of these claims are thus so intertwined that they should be heard in a single appeal." Declaration of Robert J. Becher, Ex. A, at 4. That certain liability and damages are "so intertwined" means that those liability and damages issues must be heard by a single jury as a matter of Constitutional law. The Seventh Amendment's Reexamination Clause prohibits a second jury from revisiting the findings of the first: a jury can be instructed to apply an earlier verdict, but where the first jury's findings are not clearly stated, and the second jury would have to either guess at what the first jury found or reexamine the same factual issues to do its job (potentially reaching inconsistent conclusions), a broadened retrial is required. This is the case here as to the claims of infringement of the D'677, D'305 and '381 patents that underlie in substantial part the damages issues to be retried.

Under the Seventh Amendment's Reexamination Clause, a partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931); *see Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981). In *Gasoline Products,* the Supreme Court reversed a lower court order

limiting a new trial to damages and remanded for a new trial on liability as well because "the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty which would amount to a denial of a fair trial." *Gasoline Products*, 283 U.S. at 500.  In *Hasbrouck*, the Ninth Circuit concluded that errors in damages jury instructions required not only a new trial on damages, but also a new trial on liability because "proof of injury" went to both issues, and this "overlap between proof of injury for liability purposes and for damage calculation purposes" meant those issues had to be tried together.[1]  663 F.2d at 934.

Precisely such overlap exists here.  The Court has ordered a damages retrial as to 14 products based in part on the jury's findings that those products infringed the D'677, D'305, and/or '381 patents.  As to these claims, the jury's general verdicts of infringement do not reveal what *scope* of infringement was found.  As to the '381 patent, the jury could have found that one, two or three separate applications of Samsung's phones infringed, and as to the design patents the jury could have found that Samsung's phones fully or only partially infringed Apple's claimed designs.  The answers to those questions dictate the scope of infringement that *must* be known by the damages jury to assess either lost profits or a reasonable royalty, both of which Apple sought at the last trial and will presumably seek again.  PX25A1.4-5.  Because the first jury made unknown and unknowable determinations at to the scope of Samsung's infringement and the second jury must know these answers to decide damages, a *single* jury must decide both damages and infringement as to these patents and products.

***Damages and Infringement for the '381 Patent Are Interwoven***.  The Galaxy SII (AT&T) and the Exhibit 4G were both found to infringe the '381 patent, as were 11 other products

---

[1] Ninth Circuit law governs this issue. *See Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1369-75 (Fed. Cir. 2008) (regional circuit law applied in analyzing Reexamination Clause issue).  Other Circuits apply the Seventh Amendment similarly.  *See, e.g. Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 966-67 (10th Cir. 2009) (new trial on damages had to also include liability issues because the general verdict did not identify the specific forms of fraud on which the first jury found liability and a "new jury could not calculate [counterclaimant's] damages without resolving the specifics of that liability").

which are subject to the Court's new trial order (all but the Transform). But as to these two accused products, the Court and the parties do not and cannot know what infringement was actually found by the first jury. Apple argued that *three separate* applications on the Galaxy SII (AT&T)—the Web Browser, Gallery and Contacts applications—and two on the Exhibit 4G—the Web Browser and Gallery applications—*independently* infringed this patent. RT 1728:3-1751:18; 4118:1-8. While Samsung proposed a verdict form that would have required the jury to specify which application(s), if any, were found to be infringing, Dkt. 1825-2 at 3-5, the verdict form given to the jury includes no such specificity. Dkt. 1890; RT 3848:6-3849:4. The first jury thus could have found that one, two, or all three of these applications infringe—and there is no way to know what findings the jury actually made.

But any award of lost profits or reasonable royalty damages—measures of damages that the second jury might opt for even though the first jury relied principally on infringer's profits—depends upon that determination. To obtain lost profits, "a patent owner must prove a causal relation between the infringement and its loss of profits," *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993), meaning that the jury must first define the scope of infringement in order to assess this causal connection. The Court expressly instructed the first jury that, to award lost profits, "you must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products," Dkt. 1903, Inst. No. 36, and the jury clearly must know which feature(s) of the accused products infringe in order to assess the extent to which Samsung's profits derived from its use of the patented invention.[2] The same is true with respect to a reasonable royalty award. To obtain such a remedy, "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features,"

---

[2] Similarly, Apple is required to show "that there were no non-infringing substitutes for each of the infringing products, or, if there were, the number of the sales of each product made by [Samsung] that Apple would have made despite the availability of other non-infringing substitutes," in order to obtain lost profits. Dkt. 1903, Inst. No. 37. For the jury to assess whether there were non-infringing substitutes, it must know the feature(s) of the accused product that infringe in the first place.

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011), and the Court's jury instructions expressly required the jury to consider the extent of infringement in assessing a royalty. Dkt. No. 1903, Inst. 41 (Factor 11: "The extent to which the infringer has made use of the invention and any evidence probative of the value of that use"; Factor 13: "The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."). The first jury decided the extent of infringement—one, two or three applications on Samsung's phones—but it is impossible to know what it found in that regard. Because the new jury would have to reexamine those (unknown) findings to award damages, which is Constitutionally impermissible, a single jury must decide both damages and infringement as to this patent and these products.

***Damages and Infringement for the D'677 and D'305 Patents Are Interwoven.*** Two of the 14 products subject to the Court's new trial order were found to infringe the D'677 patent (the Galaxy S II (AT&T) and the Infuse 4G), and seven were found to infringe the D'305 patent (the Captivate, Continuum, Droid Charge, Epic 4G, Gem, Indulge, and the Infuse 4G). Here as well, the jury's findings of infringement—that Samsung's phones infringed Apple's asserted patented designs—do not disclose what scope of infringement was found or how much use the accused products made of Apple's alleged designs. Here as well, a new jury could award damages only by reexamining the unknown findings of the first jury, which it is not permitted to do.

**1.** <u>**The extent of Samsung's use of Apple's designs.**</u> A new jury necessarily will be called upon to decide the extent of Samsung's use of Apple's claimed designs to award damages. Case law requires an analysis of the extent to which an infringer's use of the patented invention drives demand for the accused products. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). As this Court similarly instructed, to award lost profits, the jury "must determine which profits derive from the patented invention that Samsung sells, and not from other features of the infringing products". Dkt. 1903, Inst. No. 36; *see also id.*, Inst. No. 55 (lost profits instruction for design patents incorporating Instruction No. 36). The *Georgia-Pacific* factors applicable to Apple's reasonable royalty request also require the jury to consider "[t]he extent to which the

1  infringer has made use of the invention and any evidence probative of the value of that use." Dkt.
2  1903, Inst. No. 41 (Factor 11).  That is why Apple's late damages expert made clear at trial that he
3  relied upon purported evidence of how Samsung "used Apple's Intellectual Property" in reaching
4  his conclusions.  RT 2081:7-14 (Musika); Dkt. 927-05 (Musika Opening Report), at 40, ¶ 124 & p.
5  85, ¶ 254.  But while the new jury necessarily must know the extent of Samsung's use of Apple's
6  designs to award damages, the prior jury's findings on that issue are unknown.  All we know is
7  that the first jury found *sufficient* similarities for there to be infringement under the Court's
8  instructions, but those instructions did not require that Samsung's products be replicas of Apple's
9  designs or use those designs fully to infringe.  Dkt. 1903, Inst. 46.  Because a *range* of different
10 designs could have been deemed infringing under the Court's instructions, the first jury's general
11 verdicts of infringement cannot tell any new damages jury *how much* of Apple's designs any
12 accused product uses.  And because this factual question must be answered by the damages jury
13 and cannot be discerned from the first jury's verdicts, these intertwined infringement and damages
14 issues should be retried to a single jury.

15      **2.**     **_The novelty of the patented designs._**  Novelty is another issue that is material to
16 infringement and damages as to Apple's asserted design patents.  Lost profits requires
17 consideration of whether there were "non-infringing substitutes for each of the infringing
18 products," which turns on the uniqueness of the patented design itself.  Dkt. 1903, Inst. No. 37; *see*
19 *also id.*, Inst. No. 55 (lost profits instruction for design patents incorporating Instruction No. 37).
20 The *Georgia-Pacific* reasonable royalty factors expressly require the jury to consider how unique
21 and novel Apple's asserted patents are.  Dkt. 1903, Inst. No. 41 (Factor 9:  "The utility and
22 advantages of the patented property over the old modes or devices, if any, that had been used for
23 working out similar results"; Factor 10:  "The nature of the patented invention, the character of the
24 commercial embodiment of it as owned and produced by the licensor, and the benefits to those
25 who have used the invention."); *see also id.*, Inst. No. 56 (reasonable royalty instruction for design
26 patents incorporating Instruction No. 41).  Novelty also goes directly to infringement issues.  The
27 parties litigated the novelty of Apple's designs at trial both through comparisons to prior art and
28 by debating whether Apple's claimed design attributes were generic.  RT 1110:23-1121:4, 1175:1-

4 (Bressler) (Apple's expert admitting prior art disclosed many similar features to D'677 patent, referencing DX511, DX727, DX728 and JX1093); RT 1438:13-19; 1440:7-12; 1452:17-25; 1455:2-1456:8; 1475:25-1476:7 (Kare) (Apple's expert admitting color green for go, clock image, phone symbol, and use of colorful matrix of icons to communicate device functions are not unique to D'305 patent).  The jury's general verdicts of infringement do not reveal its findings as to how novel and unique Apple's designs are or are not, and thus the Seventh Amendment requires that this question, in the context of both infringement and damages, be answered by a single jury.

**B.      The Parties Will Need To Submit Additional Expert Reports And Engage In Additional Discovery And Motion Practice Before A New Trial**

In addition to resolution of the constitutional issues, there is substantial additional work that needs to take place before any trial, including further discovery and motion practice.  Apple's expert witness, Terry Musika, whose work has been central to all of the damages calculations, passed away late last year.  Apple states in its Motion that it intends to designate a substitute expert witness on damages.  Dkt. 2283, at 4.  Assuming Apple is permitted to do so, that new witness, at a minimum, will need to do a report; Samsung will be entitled to take discovery and submit expert report(s) in response; and either or both sides may seek further discovery and challenge the other's experts.  As for the rules governing trial, Apple's argument that the Court can use the July pretrial order, the prior jury instructions and other applicable rulings, "with limited revisions," Dkt. 2283, at 4, is one Samsung will oppose.  Decisions about the jury instructions, the pretrial order and other evidentiary rulings should be made after the parties submit briefing on these subjects directed at the issues to be tried.  The best way to assure that those decisions are made in accord with Federal Circuit law, and to avoid yet another new trial after this one, is to grant Samsung's Motion For Partial Judgment and to stay any new trial.

**CONCLUSION**

For the above reasons, the proper and most efficient course is to enter Rule 54(b) partial final judgment, and the Court should not set a status conference to schedule a new trial.

DATED: March 22, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kathleen M. Sullivan
Kevin P.B. Johnson
Victoria F. Maroulis
Susan R. Estrich
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC